Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                :

**In re**                             :          **Chapter 11 Case No.**
                                :

**GENERAL MOTORS CORP.**, *et al.*,   :        **09-_____ (___)**
                                :

                 **Debtors.**     :        **(Jointly Administered)**
                                :
-------------------------------------------------------------x

**MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 342(a), AND 521(a)(1), FED. R. BANKR. P. 1007(a) AND 2002(a), (d), (f), AND (*l*), AND LOCAL BANKRUPTCY RULE 1007-1 (I) WAIVING REQUIREMENT TO FILE LISTS OF CREDITORS AND EQUITY SECURITY HOLDERS AND (II) APPROVING FORM AND MANNER OF NOTIFYING CREDITORS OF COMMENCEMENT OF DEBTORS' CHAPTER 11 CASES AND FIRST MEETING OF CREDITORS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        General Motors Corporation ("GM") and certain of its subsidiaries, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),

respectfully represent:

<b><u>Background</u></b>

        1.      On the date hereof (the "Commencement Date"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"Bankruptcy Code").  The Debtors are authorized to continue to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee, examiner, or statutory creditors' committee has been appointed in

these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting

joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

### General Motors' Businesses

3.      For over one hundred years, GM, together with its approximately 463

direct and indirect wholly-owned subsidiaries (collectively, "General Motors" or the

"Company"), has been a major component of the U.S. manufacturing and industrial base, as well

as the market leader in the automotive industry.  The Company's brands have been the standard

bearer in the development of the American automotive industry, having produced some of the

most striking and memorable automotive designs, including: Corvette, Riviera, and Eldorado.

Over many years, the Company has supplied one in five vehicles sold in the United States.  It is

the largest original equipment manufacturer ("OEM") in the country and the second largest in the

world.  General Motors' highly-skilled engineering and development personnel also designed

and manufactured the first lunar roving vehicle driven on the moon.  Today, the Company

continues as a leading global technology innovator.  Currently, it is setting the automotive

industry standard for "green" manufacturing methods.

4.      William C. Durant founded General Motors in 1908 to implement his

vision of one company growing through the creation and management of multiple brands.

General Motors began as a holding company for Buick Motor Company, and, by 1916, the

Company's brands included Chevrolet, Pontiac (then known as Oakland), GMC, Oldsmobile,

and Cadillac.  Under Mr. Durant's successor, Alfred P. Sloan, Jr., General Motors adopted the

groundbreaking strategy of "a car for every purse and purpose," which revolutionized the automotive market by dividing it into distinct price segments, ranging from low-priced to luxury. Based on that strategy, the Company proceeded to build an automotive manufacturing giant offering distinctive brands and models for each market segment.

5.      Over the past century, the Company grew into a worldwide leader in products and services related to the development, manufacture, and marketing of cars and trucks under various brands, including:  Buick, Cadillac, Chevrolet, GMC, Daewoo, Holden, HUMMER, Opel, Pontiac, Saab,[1] Saturn, Vauxhall, and Wuling.  The Company has produced nearly 450,000,000 vehicles globally and operates in virtually every country in the world.  The recent severe economic downturn has had an unprecedented impact on the global automotive industry.  Nevertheless, particularly in the United States, the automotive industry remains a driving force of the economy.  It employs one in ten American workers and is one of the largest purchasers of U.S.-manufactured steel, aluminum, iron, copper, plastics, rubber, and electronic and computer chips.  Almost 4% of the United States gross domestic product, and nearly 10% of U.S. industrial production by value, are related to the automotive industry.

6.      GMAC LLC ("GMAC") is a global finance company that provides a range of financial services, including customer vehicle financing to the Company's customers and automotive dealerships and other commercial financing to the Company's dealers.

7.      The Company's automotive operations include four automotive segments – GM North America, GM Europe, GM Latin America/Africa/Mid-East, and GM Asia Pacific – each of which functions as independent business units with coordinated product development and functional support.  Each geographic region has its own management team, subject to

---

[1] As a result of the global economic crisis and its effect in the automotive industry, Saab commenced reorganization proceedings in Sweden in February 2009.

oversight by the Company.  Substantially all of General Motors' worldwide car and truck deliveries (totaling 8.4 million in 2008) are marketed through retail dealers in North America and through distributors and dealers outside North America, most of which are independently owned. In addition to the products sold to dealers for consumer retail sales, General Motors sells cars and trucks to fleet customers, including rental car companies, commercial fleet companies, leasing companies, and governmental units.

8.      As of March 31, 2009, General Motors employed approximately 235,000 employees worldwide, of whom 163,000 (69%) were hourly employees and 72,000 (31%) were salaried employees.  In the United States, approximately 62,000 (68%) of the employees were represented by unions.  The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") represents the largest portion of General Motors' U.S. unionized employees (totaling approximately 61,000 employees).

9.      As of March 31, 2009, General Motors had consolidated global recorded assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively. Global revenues recorded for fiscal year 2008 aggregated approximately $150 billion.

### The Economic Downturn and the U.S. Treasury Loan

10.     In 2008, the Company was confronted by the worst economic downturn and credit market conditions since the Great Depression of the 1930s.  Consumers were faced with illiquid credit markets, rising unemployment, declining incomes and home values, and volatile fuel prices.

11.     This economic turmoil resulted in significant financial stress on the automotive industry.  In the last quarter of 2008, new vehicle sales in the United States plummeted to their lowest per capita levels in fifty years.  The Company's revenues fell precipitously, thereby draining liquidity that, one year prior, had been considered adequate to

fund operations.  As a result of the impending liquidity crisis, the Company was compelled to

seek financial assistance, on a secured basis, from the federal government in order to sustain the

Company's operations and avoid the potential for systemic failure throughout the domestic

automotive industry, with an attendant effect on hundreds of thousands of jobs and the sequential

shutdown of numerous ancillary businesses.

12.    The federal government recognized the potentially devastating negative

effect of a GM failure on the U.S. economy.  On December 31, 2008, GM and the United States

Department of the Treasury (the "U.S. Treasury") entered into an agreement (the "U.S. Treasury

Loan Agreement") that provided GM with emergency financing of up to $13.4 billion pursuant

to a secured term loan facility (the "U.S. Treasury Facility").  A number of the Company's

domestic subsidiaries guaranteed GM's obligations under the U.S. Treasury Facility and also

guaranteed each of the other guarantors' obligations that were entered into concurrently with the

U.S. Treasury Facility.  The U.S. Treasury Facility is secured by a first priority lien on and

security interest in substantially all the assets of GM and each of the guarantors that were

previously unencumbered, as well as a junior priority lien on encumbered assets, subject to

certain exceptions.  The U.S. Treasury Facility is also collaterally secured by a pledge of the

equity interests held by GM and the guarantors in certain foreign subsidiaries, subject to certain

exceptions.

13.    The U.S. Treasury Facility required that the Company develop a plan to

transform GM and demonstrate future viability.  On February 17, 2009, in order to address this

condition, GM submitted a proposed viability plan (the "Long-Term Viability Plan") to the

automobile task force appointed by President Obama to deal with the issues confronting the

automobile industry and advise him and the Secretary of Treasury in connection therewith (the

"Presidential Task Force").

### The U.S. Treasury-Sponsored Program for GM

14.    On March 30, 2009, President Obama announced that the Long-Term

Viability Plan did not meet the federal government's criteria to establish GM's future viability

and, as a result, did not justify a substantial new investment of taxpayer dollars. The President

outlined a series of actions that GM would have to undertake to receive additional federal

assistance. In conjunction with this announcement, in the interests of the Company's receiving

further support from the U.S. Treasury, G. Richard Wagoner, Jr., who had been CEO since June

1, 2000, agreed to resign as Chairman and CEO of GM. In addition, Kent Kresa, a director since

2003, was appointed as Chairman of the Board, and it also was announced that a majority of the

Board would be replaced over the next few months because it "will take new vision and new

direction to create the GM of the future." Barack H. Obama, U.S. President, Remarks on the

American Automotive Industry at 4 (Mar. 30, 2009) [hereinafter *Presidential Remarks*].

15.    President Obama also stated that the U.S. Treasury would extend to the

Company adequate working capital for a period of sixty days while it worked with the Company

to develop, propose, and implement a more aggressive viability plan that would include a

"credible model for how not only to survive, but to succeed in th[e] competitive global market."

*Id.* The President observed that the Company needs a "fresh start to implement the restructuring

plan" it develops, which "may mean using our [B]ankruptcy [C]ode as a mechanism to help [it]

restructure quickly and emerge stronger." *Id.* at 5. President Obama explained:

> What I'm talking about is using our existing legal structure as a
> tool that, with the backing of the U.S. Government, can make it
> easier for General Motors . . . to *quickly* clear away old debts that
> are weighing [it] down so that [it] can get back on [its] feet and

onto a path to success; a tool that we can use, even as workers stay
on the job building cars that are being sold.

What I'm not talking about is a process where a company is simply
broken up, sold off, and no longer exists.  We're not talking about
that.  And what I'm *not talking about is a company that's stuck in
court for years, unable to get out*.

*Id.* at 5-6 (emphasis added).

16.    The U.S. Government set a deadline of June 1, 2009 for the Company to
demonstrate its viability plan to achieve the foregoing objectives.  Consistent with the
President's guidance, the Company began a deeper, more surgical analysis of its business and
operations in an effort to develop a viability plan that would accommodate the needs of its
secured creditors and other stakeholders by quickly achieving (i) sustainable profitability, (ii) a
healthy balance sheet, (iii) a more aggressive operational transformation, and (iv) technology
leadership.  The U.S. Treasury indicated that, if an out-of-court restructuring was not achievable
in that timeframe, then the Company should consider undertaking a new, more aggressive plan
using an expedited, Bankruptcy Court-supervised process to implement the purchase of the
Company's assets by a U.S. Treasury-sponsored purchaser pursuant to section 363 of the
Bankruptcy Code (the "363 Transaction").  The purchaser would immediately take ownership of
the purchased assets as "New GM" free from the entanglement of the bankruptcy cases.
Although the U.S. Treasury has committed to provide debtor in possession financing for the
Company to implement the sale and to support the new enterprise, it requires that the sale of
assets occurs promptly to preserve value and avoid the devastating damage the industry would
suffer if the business operations were not promptly extricated from the bankruptcy process.

17.    The U.S. Treasury will provide the financing to create New GM.  The U.S.
Treasury also indicated that if such a transaction were consummated, it would assure that New
GM had adequate financing and a capital structure that would assure New GM's long-term

viability.  The U.S. Government consistently has emphasized that a fundamental premise of its

approach is that a quick approval of the 363 Transaction as the tool for restructuring will avoid

potentially fatal revenue perishability by restoring confidence in GM employees, its customers,

its vendors, as well as the communities that depend on GM.  New GM will be perceived by

consumers as a reliable, economically sound automobile company that will stand behind its

products and extend value to the purchasing public.

18.    On April 22, 2009, the U.S. Treasury Loan Agreement was amended to

increase the availability under the U.S. Treasury Facility by $2 billion to $15.4 billion.  GM

borrowed the additional $2 billion in working capital loans on April 24, 2009.

19.    As part of the Company's efforts to rationalize its business and to balance

large vehicle inventories, on April 24, 2009, the Company announced that it would temporarily

shut down certain production facilities starting on May 4, 2009 for a period not to exceed twelve

weeks (the "Temporary Shutdown").  As of the Commencement Date, certain of the Company's

assembly facilities remain operating, while other assembly facilities continue to be shut down.  A

number of those assembly facilities that currently are shut down are expected to resume

operations by July 13, 2009 if the 363 Transaction is approved.

20.    On May 22, 2009, the U.S. Treasury Loan Agreement was amended to

increase the U.S. Treasury Facility by $4 billion to $19.4 billion.  GM borrowed the additional

$4 billion in working capital loans on May 22, 2009.

**The Exchange Offer**

21.    In an effort to achieve long-term viability without resort to the bankruptcy

process and its negative effect on revenue, on April 27, 2009, GM launched a public exchange

offer for the approximately $27 billion of its unsecured bonds (the "Exchange Offer").  The

Company believed that the Exchange Offer would provide the least intrusive means to

restructure its indebtedness for the future success of the Company. The Company, however, did announce in connection with the Exchange Offer that if it did not receive enough tenders to consummate the Exchange Offer, it would likely seek to achieve the joint goals of the Company and the U.S. Treasury, as the Company's largest secured creditor, by initiating cases under the Bankruptcy Code.

22.    The Exchange Offer expired on May 26, 2009 without achieving the threshold of required tendered acceptances.

### The 363 Transaction

23.    Recognizing that the Exchange Offer might not be successful, the Company and the U.S. Treasury determined that it would be in the best interests of the Company and its stakeholders to prepare for the implementation of the 363 Transaction on a contingency basis while the Exchange Offer was being solicited.

24.    Consistent therewith, over the past several weeks, GM and its Debtor subsidiaries (the "Sellers") have been engaged in negotiations with the U.S. Treasury with respect to the 363 Transaction. These negotiations culminated in the proposed Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the U.S. Treasury, dated as of June 1, 2009 (the "MPA"). The 363 Transaction, as embodied in the MPA, contemplates that substantially all of GM's assets, including the capital stock of the majority of its subsidiaries, will be sold to the Purchaser to effect the transformation to New GM and preserve both the viability of the GM enterprise and the U.S. automotive industry. The assets excluded from the sale will be administered in the chapter 11 cases for the benefit of the stakeholders in the chapter 11 cases. From and after the closing, the Purchaser or one or more of its subsidiaries will provide the Sellers and their remaining subsidiaries with services reasonably required by the Sellers and such subsidiaries to wind down or otherwise

dispose of the excluded assets and administer the chapter 11 cases.  As part of the 363

Transaction, the Debtors, the Purchaser, and the UAW have reached a resolution addressing the

ongoing provision of certain employee and retiree benefits.

25.     The Debtors intend to use the chapter 11 process to expeditiously

consummate the 363 Transaction and establish New GM as an economically viable OEM,

serving its customers, employees, suppliers, and the interests of the nation.  The MPA is a critical

element of the program adopted by the U.S. Treasury to rehabilitate the domestic automotive

industry.  The 363 Transaction furthers public policy by avoiding the fatal damage to the

industry that would occur if New GM is unable to immediately commence bankruptcy-free

operations.

26.     Notably, both the Government of Canada and the Government of Ontario,

through Export Development Canada ("EDC"), Canada's export trading agency, have agreed to

participate in the DIP financing provided by the U.S. Treasury to assure the long-term viability

of GM's North American enterprise.

27.     The gravity of the circumstances cannot be overstated.  The need for speed

in approving and consummating the 363 Transaction is crucial.  The business and assets to be

transferred are extremely sensitive and will be subject to major value erosion unless they are

quickly sold and transferred to New GM.  Any delay will result in significant irretrievable

revenue perishability to the detriment of all interests and will exacerbate consumer resistance to

readily accept General Motors products.  Expeditiously restoring and maintaining consumer

confidence is a prerequisite to the successful transformation and future success of New GM.

28.     The expedited approval and execution of the 363 Transaction is the

foundation of the U.S. Government's objective "to create the GM of the future," and to preserve

and strengthen the U.S. automotive industry and the tens of thousands of jobs involved.  To

paraphrase President Obama's remarks, the 363 Transaction "is our best chance to make sure

that the cars of the future are built where they've always been built – in Detroit and across the

Midwest – to make America's auto industry in the 21st century what it was in the 20th century –

unsurpassed around the world."  *Presidential Remarks* at 7.

## Jurisdiction

29.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

30.    By this Motion, pursuant to section 105(a) of the Bankruptcy Code, the

Debtors request entry of an order:  (i) waiving the requirements to file a list of creditors on the

Commencement Date and a list of equity security holders within 15 days of the Commencement

Date, as set forth in section 521(a)(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(1) and

(a)(3), Rule 1007-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"Local Rules"), and General Orders M-133, M-137, M-138, and M-192 (the "Standing Orders")

of the United States Bankruptcy Court for the Southern District of New York (collectively, the

"Notice Rules"), and (ii) authorizing the Debtors to implement certain procedures (the

"Procedures") for notifying creditors of the commencement of these chapter 11 cases and of the

meeting of creditors to be held pursuant to section 341 of the Bankruptcy Code (the "Notice of

Commencement").  The proposed form of Notice of Commencement is annexed hereto as

Exhibit A.

## **Cause Exists to Waive the Requirement to File the List of Creditors**

31.     Pursuant to the Notice Rules, a list of creditors must accompany a

chapter 11 petition unless the Debtors file their schedules of assets and liabilities simultaneously

with the petitions.  Contemporaneously herewith, the Debtors have filed a motion for an

extension of the time to file schedules of assets and liabilities, schedules of executory contracts

and unexpired leases, and statements of financial affairs (the "Schedules").  Because the Debtors

have not filed the Schedules on the Commencement Date, without further relief, the Notice Rules

would require the Debtors to file a list of creditors and their addresses.

32.     The Debtors intend to file a motion to retain and employ Garden City

Group, Inc., as the notice and claims processing agent (the "Notice and Claims Agent") in these

chapter 11 cases pursuant to 28 U.S.C. § 156(c), which empowers the Court to use outside

facilities or services pertaining to the provision of notices and other administrative information to

parties in interest when the costs are paid from the assets of the estates.  The Debtors propose

that, pursuant to section 342(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a) and (f),

as soon as practicable after the Commencement Date, the Debtors furnish their consolidated list

of creditors to the Notice and Claims Agent so that the Notice and Claims Agent may mail the

Notice of Commencement to the parties identified thereon.[2]

33.     In addition to the mailing by the Notice and Claims Agent of the Notice of

Commencement, the Debtors propose to publish, as soon as practicable, the Notice of

Commencement substantially in the form of Exhibit A (i) once in (a) the global edition of *The*

*Wall Street Journal*, (b) the national edition of *The New York Times*, (c) the global edition of *The*

---

[2] Pursuant to the Standing Orders, the Debtors have conferred with the Clerk of the Court and the Clerk has instructed the Debtors not to file a list of creditors.  The Clerk has instructed the Debtors to provide the list of creditors to the Notice and Claims Agent as proposed herein.

*Financial Times*, (d) the national edition of *USA Today*, (e) *Detroit Free Press/Detroit News*, (f)

*Le Journal de Montreal*, (g) *Montreal Gazette*, (h) *The Globe and Mail*, and (i) *The National*

*Post*, and (ii) on the website of the Debtors' claims and noticing agent, The Garden City Group,

Inc., at http:://www.gmcourtdocs.com.[3]

### Cause Exists to Waive the Requirement to File the List of Equity Security Holders and Provide Notice of Commencement to Equity Security Holders

34.    GM is one of the largest publicly traded companies in the world.

Approximately 610,505,273 shares of GM's common stock are traded on public exchanges.  The

Debtors submit that preparing a list of GM's equity security holders with last known addresses

and sending notice to all parties on such list would prove extremely expensive and time-

consuming and serve little or no beneficial purpose.  The Debtors further submit that, if it

becomes necessary for such equity security holders to file proofs of interests, the Debtors will

provide them with notice of the deadline therefor and an opportunity to assert such interests.

Thus, equity security holders will not be prejudiced.

35.    In light of the foregoing, the Debtors submit that ample cause exists for

the Court to waive the requirements under the Notice Rules with respect to lists of equity

security holders and under Bankruptcy Rule 2002(d) with respect to mailing the Notice of

Commencement to all equity security holders.

36.    Section 105(a) of the Bankruptcy Code also empowers the Court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."  11 U.S.C. § 105(a).  The Debtors submit that the relief requested is appropriate in these

---

[3] The Court has authority under Bankruptcy Rule 2002(*l*) to "order notice by publication if it finds notice by mail is impracticable."  Fed. R. Bankr. P. 2002(*l*).  The Debtors submit that publication of the Notice of Commencement is the most practical method by which to notify those creditors who do not receive the Notice of Commencement by mail and other parties in interest of the commencement of these chapter 11 cases and constitutes an efficient use of the estates' resources.

chapter 11 cases and is within the Court's equitable powers under section 105 of the Bankruptcy Code.

**<u>Notice</u>**

37.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for EDC, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis), (vii) the attorneys for the UAW, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, and (xi) the attorneys for the ad hoc bondholders committee.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

38.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
June 1, 2009

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT A**

**PROPOSED FORM OF NOTICE OF COMMENCEMENT**

### UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

### Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 11 bankruptcy case concerning the debtors listed below was filed on June 1, 2009.

You may be a creditor of the Debtors. **This notice lists important deadlines.**  You may want to consult an attorney to protect your rights.  **You are not being sued or forced into bankruptcy.**  All documents filed with the Court, including lists of the Debtors' assets and liabilities, will be available for inspection at the Office of the Clerk of the Bankruptcy Court and on the Court's website, www.nysb.uscourts.gov, as well as by written request from the Debtors' Noticing Agent, The Garden City Group, Inc., (GM Claims Agent, P.O. Box 9386, Dublin, Ohio 43017-4286 (regular mail); GM Claims Agent, 105 Maxess Road, Melville, New York 11747 (overnight or hand delivery)), and on its website http://www.gmcourtdocs.com.  Note that you need a PACER password and login to access documents on the Court's website (a PACER password is obtained by accessing the PACER website, http://pacer.psc.uscourts.gov).

NOTE: The staff of the Bankruptcy Clerk's Office, the Office of the United States Trustee, and the Debtors' Noticing Agent cannot give legal advice.

### See Reverse Side for Important Explanations

| Debtors: | Case Number: | Tax ID Number: |
|---|---|---|
| Chevrolet-Saturn of Harlem, Inc. | 09-_____ (___) | 20-1426707 |
| General Motors Corporation | 09-_____ (___) | 38-0572515 |
| Saturn, LLC | 09-_____ (___) | 38-2577506 |
| Saturn Distribution Corporation | 09-_____ (___) | 38-2755764 |

| All other names used by the Debtors in the last 8 years: | Attorney for Debtors |
|---|---|
| <u>Chevrolet-Saturn of Harlem, Inc.</u><br>    CKS of Harlem<br><u>General Motors Corporation</u><br>    GMC Truck Division and NAO Fleet Operations<br>    GM Corporation-GM Auction Department<br>    National Car Rental<br>    National Car Sales<br>    Automotive Market Research<br><u>Saturn, LLC</u><br>    Saturn Corporation<br>    Saturn Motor Car Corporation<br>    GM Saturn Corporation<br>    Saturn Corporation of Delaware | **Harvey R. Miller**<br>**Stephen Karotkin**<br>**Joseph H. Smolinsky**<br>**WEIL, GOTSHAL & MANGES LLP**<br>**767 Fifth Avenue**<br>**New York, New York 10153**<br>**Telephone: (212) 310-8000**<br>**Facsimile: (212) 310-8007** |

### Meeting of Creditors

Date:    July 27, 2009        Time:        1 P.M.        Location:

### Deadline to File a Proof of Claim

Notice of deadline will be sent at a later time.

### Creditor with a Foreign Address:

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts:

Notice of deadline will be sent at a later time.

### Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property.  Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.  If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized.  Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:**<br>Vito Genna<br>Clerk of the United States Bankruptcy Court<br>One Bowling Green, New York, New York 10004<br>Telephone: 212-668-2870 | **For the Court:**<br><br>Clerk of the Bankruptcy Court: |
|---|---|
| **Hours Open:**  8:30 am to 5:00 pm | Date: _____, 2009 |

NY2:\1991693\11\16_ST11!.DOC\72240.0635

| EXPLANATIONS | B9F (Official Form 9F ) (12/08) |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered.  Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan.  A plan is not effective until confirmed by the court.  You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan.  You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing.  Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the Clerk of the Bankruptcy Court cannot give legal advice.  Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362.  Common examples of prohibited actions include contacting the debtor by telephone, mail, or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures.  Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time, and location listed on the front side.  *The debtor's representative must be present at the meeting to be questioned under oath by the trustee and by creditors.*  Creditors are welcome to attend, but are not required to do so.  The meeting may be continued and concluded at a later date without further notice.  The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim.  If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office.  If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim.  If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on a plan.  The court has not yet set a deadline to file a Proof of Claim.  If a deadline is set, you will be sent another notice.  A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain.  For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadline for filing claims will be set in a later court order and will apply to all creditors unless the order provides otherwise.  If notice of the order setting the deadline is sent to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. *See* Bankruptcy Code § 1141 (d).  A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 1141 (d) (6) (A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side.  The bankruptcy clerk's office must receive the complaint and any required filing fee by that deadline. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side.  You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |
| | Refer To Other Side For Important Deadlines and Notices |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                        :

In re                        :          Chapter 11 Case No.
                        :

**GENERAL MOTORS CORP.**, *et al.*,    :          09-_____ (___)
                        :

              Debtors.      :          (Jointly Administered)
                        :

-------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 342(a), AND 521(a)(1), FED. R. BANKR. P. 1007(a) AND 2002(a), (d), (f) AND (*l*), AND LOCAL BANKRUPTCY RULE 1007-1 (I) WAIVING REQUIREMENT TO FILE LISTS OF CREDITORS AND EQUITY SECURITY HOLDERS AND (II) APPROVING FORM AND MANNER OF NOTIFYING CREDITORS OF COMMENCEMENT OF DEBTORS' CHAPTER 11 CASES AND FIRST MEETING OF CREDITORS

Upon the Motion, dated June 1, 2009 (the "<u>Motion</u>"),[1] of General Motors

Corporation and certain of its subsidiaries, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), pursuant to sections 105(a), 342(a), and

521(a)(1) of title 11, United States Code (the "<u>Bankruptcy Code</u>"), Rules 1007(a), 2002(a), (d),

(f), and (*l*) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rule 1007-1

of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), and

General Orders M-133, M-137, M-138, and M-192 (the "<u>Standing Orders</u>"), for entry of an order

(i) waiving the requirements to file lists of creditors and equity security holders and

(ii) approving the proposed form and manner of notifying creditors of the commencement of

these chapter 11 cases and of the first meeting of creditors pursuant to section 341 of the

Bankruptcy Code (the "<u>341 Meeting</u>"), all as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York of Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to (i) the Office of the United States Trustee for the Southern District of New York,

(ii) the attorneys for the U.S. Treasury, (iii) the attorneys for EDC; (iv) the attorneys for the

agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under

GM's prepetition amended and restated secured revolving credit agreement, (vi) the holders of

the fifty largest unsecured claims against the Debtors (on a consolidated basis), (vii) the

attorneys for the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America, (viii) the attorneys for the International Union of Electronic,

Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America,

(ix) the United States Department of Labor, (x) the attorneys for the National Automobile

Dealers Association, and (xi) the attorneys for the ad hoc bondholders committee, and it

appearing that no other or further notice need be provided; and a hearing having been held to

consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing

and all of the proceedings had before the Court; and the Court having found and determined that

the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the requirements under section 521(a)(1) of the Bankruptcy Code, Bankruptcy Rule 1007(a)(1), Local Rule 1007-1, and the Standing Orders that the Debtors file lists of their creditors with the Court are waived; and it is further

ORDERED that the requirements under Bankruptcy Rule 1007(a)(3), Local Rule 1007-1, and the Standing Orders that the Debtors file lists of their equity security holders with the Court are waived; and it is further

ORDERED that, as soon as practicable after entry of an order authorizing the engagement of a noticing and claims agent in these cases (the "Notice and Claims Agent"), the Debtors shall furnish to the Notice and Claims Agent a consolidated list containing the names and last known addresses of the Debtors' creditors (the "List of Creditors"); and it is further

ORDERED that the notice of the commencement of these chapter 11 cases and of the 341 Meeting, substantially in the form annexed hereto as Exhibit "A" (the "Notice of Commencement") is approved; and it is further

ORDERED that on or before the date that is twenty (20) days prior to the date on which the 341 Meeting is to be held, the Debtors, with the assistance of the Notice and Claims Agent, shall mail the Notice of Commencement to all parties identified on the Debtors' List of Creditors; and it is further

ORDERED that the requirement under Bankruptcy Rule 2002(d) for mailing the Notice of Commencement to all equity security holders is waived; and it is further

ORDERED that, pursuant to Bankruptcy Rule 2002(*l*), the Debtors, with the assistance of the Notice and Claims Agent, shall cause the Notice of Commencement to be published (i) once in (a) the global edition of *The Wall Street Journal*, (b) the national edition of *The New York Times*, (c) the global edition of *The Financial Times*, (d) the national edition of

*USA Today*, (e) *Detroit Free Press/Detroit News*, (f) *Le Journal de Montreal*, (g) *Montreal*

*Gazette*, (h) *The Globe and Mail*, and (i) *The National Post*, and (ii) on the website of the

Debtors' claims and noticing agent, The Garden City Group, Inc., at

http://www.gmcourtdocs.com; and it is further

   ORDERED that the form and manner of notice as provided herein are reasonably

calculated to inform interested parties of these chapter 11 cases and are hereby approved; and it

is further

   ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
   _____, 2009


            _____
            United States Bankruptcy Judge

## EXHIBIT A

**PROPOSED FORM OF NOTICE OF COMMENCEMENT**

## UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

### Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 11 bankruptcy case concerning the debtors listed below was filed on June 1, 2009.

You may be a creditor of the Debtors. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. **You are not being sued or forced into bankruptcy.** All documents filed with the Court, including lists of the Debtors' assets and liabilities, will be available for inspection at the Office of the Clerk of the Bankruptcy Court and on the Court's website, www.nysb.uscourts.gov, as well as by written request from the Debtors' Noticing Agent, The Garden City Group, Inc., (GM Claims Agent, P.O. Box 9386, Dublin, Ohio 43017-4286 (regular mail); GM Claims Agent, 105 Maxess Road, Melville, New York 11747 (overnight or hand delivery)), and on its website http://www.gmcourtdocs.com. Note that you need a PACER password and login to access documents on the Court's website (a PACER password is obtained by accessing the PACER website, http://pacer.psc.uscourts.gov).

NOTE: The staff of the Bankruptcy Clerk's Office, the Office of the United States Trustee, and the Debtors' Noticing Agent cannot give legal advice.

### See Reverse Side for Important Explanations

| Debtors: | Case Number: | Tax ID Number: |
|---|---|---|
| Chevrolet-Saturn of Harlem, Inc. | 09-_____ (___) | 20-1426707 |
| General Motors Corporation | 09-_____ (___) | 38-0572515 |
| Saturn, LLC | 09-_____ (___) | 38-2577506 |
| Saturn Distribution Corporation | 09-_____ (___) | 38-2755764 |

| All other names used by the Debtors in the last 8 years: | Attorney for Debtors |
|---|---|
| Chevrolet-Saturn of Harlem, Inc.<br>  CKS of Harlem<br>General Motors Corporation<br>  GMC Truck Division and NAO Fleet Operations<br>  GM Corporation-GM Auction Department<br>  National Car Rental<br>  National Car Sales<br>  Automotive Market Research<br>Saturn, LLC<br>  Saturn Corporation<br>  Saturn Motor Car Corporation<br>  GM Saturn Corporation<br>  Saturn Corporation of Delaware | **Harvey R. Miller**<br>**Stephen Karotkin**<br>**Joseph H. Smolinsky**<br>**WEIL, GOTSHAL & MANGES LLP**<br>**767 Fifth Avenue**<br>**New York, New York 10153**<br>**Telephone: (212) 310-8000**<br>**Facsimile: (212) 310-8007** |

### Meeting of Creditors

Date:    July 27, 2009    Time:    1 P.M.    Location:

### Deadline to File a Proof of Claim

Notice of deadline will be sent at a later time.

### Creditor with a Foreign Address:

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts:

Notice of deadline will be sent at a later time.

### Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:** | **For the Court:** |
|---|---|
| Vito Genna<br>Clerk of the United States Bankruptcy Court<br>One Bowling Green, New York, New York 10004<br>Telephone: 212-668-2870 | Clerk of the Bankruptcy Court: |
| **Hours Open:**  8:30 am to 5:00 pm | **Date: _____, 2009** |

| EXPLANATIONS | B9F (Official Form 9F ) (12/08) |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the Clerk of the Bankruptcy Court cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail, or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time, and location listed on the front side. *The debtor's representative must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is *not* listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on a plan. The court has not yet set a deadline to file a Proof of Claim. If a deadline is set, you will be sent another notice. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadline for filing claims will be set in a later court order and will apply to all creditors unless the order provides otherwise. If notice of the order setting the deadline is sent to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. *See* Bankruptcy Code § 1141 (d). A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 1141 (d) (6) (A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that deadline. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |
| Refer To Other Side For Important Deadlines and Notices | |