Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                      :
In re                                 :          Chapter 11 Case No.
                                      :
GENERAL MOTORS CORP., et al.,         :          09-_____ (___)
                                      :
                 Debtors.             :          (Jointly Administered)
                                      :
-------------------------------------------------------------x
```

**MOTION OF THE DEBTORS PURSUANT**
**TO 11 U.S.C. §§ 105(a) AND 362 FOR ENTRY OF**
**(I) INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION**
**PROCEDURES REGARDING RESTRICTIONS ON CERTAIN TRANSFERS OF**
**INTERESTS IN THE DEBTORS AND (II) ORDER SCHEDULING A FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("GM") and certain of its subsidiaries, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),

respectfully represent:

**Preliminary Statement**

1.    The Debtors request entry of interim and final orders authorizing the

Debtors to establish procedures to protect the potential value of the Debtors' net operating loss

carryforwards ("NOLs") and certain other tax attributes, including foreign tax credit and other

excess credit carryforwards (collectively with the NOLs, the "Tax Attributes").   The proposed procedures are designed to provide notification to holders of each class of stock of GM ("GM Stock") of the injunction described herein prohibiting the acquisition of ownership of such stock above a certain threshold, by making available to all holders of GM Stock (a) notice substantially in the form annexed hereto as Exhibit A (the "Interim Procedures Notice"), to be effective *nunc pro tunc* to the date this Motion was filed (the "Motion Date") and (b) notice substantially in the form annexed hereto as Exhibit B (the "Final Procedures Notice").

## Background

2.    On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the "Bankruptcy Code").   The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.

3.    Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## General Motors' Businesses

4.    For over one hundred years, GM, together with its approximately 463 direct and indirect wholly-owned subsidiaries (collectively, "General Motors" or the "Company"), has been a major component of the U.S. manufacturing and industrial base, as well as the market leader in the automotive industry.   The Company's brands have been the standard bearer in the development of the American automotive industry, having produced some of the most striking and memorable automotive designs, including: Corvette, Riviera, and Eldorado.

Over many years, the Company has supplied one in five vehicles sold in the United States.   It is the largest original equipment manufacturer ("OEM") in the country and the second largest in the world.   General Motors' highly-skilled engineering and development personnel also designed and manufactured the first lunar roving vehicle driven on the moon.   Today, the Company continues as a leading global technology innovator.   Currently, it is setting the automotive industry standard for "green" manufacturing methods.

5.        William C. Durant founded General Motors in 1908 to implement his vision of one company growing through the creation and management of multiple brands. General Motors began as a holding company for Buick Motor Company, and, by 1916, the Company's brands included Chevrolet, Pontiac (then known as Oakland), GMC, Oldsmobile, and Cadillac.   Under Mr. Durant's successor, Alfred P. Sloan, Jr., General Motors adopted the groundbreaking strategy of "a car for every purse and purpose," which revolutionized the automotive market by dividing it into distinct price segments, ranging from low-priced to luxury. Based on that strategy, the Company proceeded to build an automotive manufacturing giant offering distinctive brands and models for each market segment.

6.        Over the past century, the Company grew into a worldwide leader in products and services related to the development, manufacture, and marketing of cars and trucks under various brands, including:   Buick, Cadillac, Chevrolet, GMC, Daewoo, Holden, HUMMER, Opel, Pontiac, Saab,[1] Saturn, Vauxhall, and Wuling.   The Company has produced nearly 450,000,000 vehicles globally and operates in virtually every country in the world.   The recent severe economic downturn has had an unprecedented impact on the global automotive industry.   Nevertheless, particularly in the United States, the automotive industry remains a

---

[1]  As a result of the global economic crisis and its effect in the automotive industry, Saab commenced reorganization proceedings in Sweden in February 2009.

driving force of the economy.   It employs one in ten American workers and is one of the largest

purchasers of U.S.-manufactured steel, aluminum, iron, copper, plastics, rubber, and electronic

and computer chips.   Almost 4% of the United States gross domestic product, and nearly 10% of

U.S. industrial production by value, are related to the automotive industry.

7.      GMAC LLC ("GMAC") is a global finance company that provides a

range of financial services, including customer vehicle financing to the Company's customers

and automotive dealerships and other commercial financing to the Company's dealers.

8.      The Company's automotive operations include four automotive segments

– GM North America, GM Europe, GM Latin America/Africa/Mid-East, and GM Asia Pacific –

each of which functions as independent business units with coordinated product development

and functional support.   Each geographic region has its own management team, subject to

oversight by the Company.   Substantially all of General Motors' worldwide car and truck

deliveries (totaling 8.4 million in 2008) are marketed through retail dealers in North America and

through distributors and dealers outside North America, most of which are independently owned.

In addition to the products sold to dealers for consumer retail sales, General Motors sells cars

and trucks to fleet customers, including rental car companies, commercial fleet companies,

leasing companies, and governmental units.

9.      As of March 31, 2009, General Motors employed approximately 235,000

employees worldwide, of whom 163,000 (69%) were hourly employees and 72,000 (31%) were

salaried employees.   In the United States, approximately 62,000 (68%) of the employees were

represented by unions.   The International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America (the "UAW") represents the largest portion of

General Motors' U.S. unionized employees (totaling approximately 61,000 employees).

10.     As of March 31, 2009, General Motors had consolidated global recorded assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively. Global revenues recorded for fiscal year 2008 aggregated approximately $150 billion.

### The Economic Downturn and the U.S. Treasury Loan

11.     In 2008, the Company was confronted by the worst economic downturn and credit market conditions since the Great Depression of the 1930s.   Consumers were faced with illiquid credit markets, rising unemployment, declining incomes and home values, and volatile fuel prices.

12.     This economic turmoil resulted in significant financial stress on the automotive industry.   In the last quarter of 2008, new vehicle sales in the United States plummeted to their lowest per capita levels in fifty years.   The Company's revenues fell precipitously, thereby draining liquidity that, one year prior, had been considered adequate to fund operations.   As a result of the impending liquidity crisis, the Company was compelled to seek financial assistance, on a secured basis, from the federal government in order to sustain the Company's operations and avoid the potential for systemic failure throughout the domestic automotive industry, with an attendant effect on hundreds of thousands of jobs and the sequential shutdown of numerous ancillary businesses.

13.     The federal government recognized the potentially devastating negative effect of a GM failure on the U.S. economy.   On December 31, 2008, GM and the United States Department of the Treasury (the "U.S. Treasury") entered into an agreement (the "U.S. Treasury Loan Agreement") that provided GM with emergency financing of up to $13.4 billion pursuant to a secured term loan facility (the "U.S. Treasury Facility").   A number of the Company's domestic subsidiaries guaranteed GM's obligations under the U.S. Treasury Facility and also guaranteed each of the other guarantors' obligations that were entered into concurrently with the

U.S. Treasury Facility.   The U.S. Treasury Facility is secured by a first priority lien on and security interest in substantially all the assets of GM and each of the guarantors that were previously unencumbered, as well as a junior priority lien on encumbered assets, subject to certain exceptions.   The U.S. Treasury Facility is also collaterally secured by a pledge of the equity interests held by GM and the guarantors in certain foreign subsidiaries, subject to certain exceptions.

14.    The U.S. Treasury Facility required that the Company develop a plan to transform GM and demonstrate future viability.   On February 17, 2009, in order to address this condition, GM submitted a proposed viability plan (the "Long-Term Viability Plan") to the automobile task force appointed by President Obama to deal with the issues confronting the automobile industry and advise him and the Secretary of Treasury in connection therewith (the "Presidential Task Force").

**The U.S. Treasury-Sponsored Program for GM**

15.    On March 30, 2009, President Obama announced that the Long-Term Viability Plan did not meet the federal government's criteria to establish GM's future viability and, as a result, did not justify a substantial new investment of taxpayer dollars.   The President outlined a series of actions that GM would have to undertake to receive additional federal assistance.   In conjunction with this announcement, in the interests of the Company's receiving further support from the U.S. Treasury, G. Richard Wagoner, Jr., who had been CEO since June 1, 2000, agreed to resign as Chairman and CEO of GM.   In addition, Kent Kresa, a director since 2003, was appointed as Chairman of the Board, and it also was announced that a majority of the Board would be replaced over the next few months because it "will take new vision and new direction to create the GM of the future."   Barack H. Obama, U.S. President, Remarks on the American Automotive Industry at 4 (Mar. 30, 2009) [hereinafter *Presidential Remarks*].

16.    President Obama also stated that the U.S. Treasury would extend to the

Company adequate working capital for a period of sixty days while it worked with the Company

to develop, propose, and implement a more aggressive viability plan that would include a

"credible model for how not only to survive, but to succeed in th[e] competitive global market."

*Id.*   The President observed that the Company needs a "fresh start to implement the restructuring

plan" it develops, which "may mean using our [B]ankruptcy [C]ode as a mechanism to help [it]

restructure quickly and emerge stronger."   *Id.* at 5.   President Obama explained:

> What I'm talking about is using our existing legal structure as a
> tool that, with the backing of the U.S. Government, can make it
> easier for General Motors . . . to *quickly* clear away old debts that
> are weighing [it] down so that [it] can get back on [its] feet and
> onto a path to success; a tool that we can use, even as workers stay
> on the job building cars that are being sold.
>
> What I'm not talking about is a process where a company is simply
> broken up, sold off, and no longer exists.   We're not talking about
> that.   And what I'm *not talking about is a company that's stuck in
> court for years, unable to get out.*

*Id.* at 5-6 (emphasis added).

17.    The U.S. Government set a deadline of June 1, 2009 for the Company to

demonstrate its viability plan to achieve the foregoing objectives.   Consistent with the

President's guidance, the Company began a deeper, more surgical analysis of its business and

operations in an effort to develop a viability plan that would accommodate the needs of its

secured creditors and other stakeholders by quickly achieving (i) sustainable profitability, (ii) a

healthy balance sheet, (iii) a more aggressive operational transformation, and (iv) technology

leadership.   The U.S. Treasury indicated that, if an out-of-court restructuring was not achievable

in that timeframe, then the Company should consider undertaking a new, more aggressive plan

using an expedited, Bankruptcy Court-supervised process to implement the purchase of the

Company's assets by a U.S. Treasury-sponsored purchaser pursuant to section 363 of the

Bankruptcy Code (the "363 Transaction").   The purchaser would immediately take ownership of the purchased assets as "New GM" free from the entanglement of the bankruptcy cases. Although the U.S. Treasury has committed to provide debtor in possession financing for the Company to implement the sale and to support the new enterprise, it requires that the sale of assets occurs promptly to preserve value and avoid the devastating damage the industry would suffer if the business operations were not promptly extricated from the bankruptcy process.

18.    The U.S. Treasury will provide the financing to create New GM.   The U.S. Treasury also indicated that if such a transaction were consummated, it would assure that New GM had adequate financing and a capital structure that would assure New GM's long-term viability.   The U.S. Government consistently has emphasized that a fundamental premise of its approach is that a quick approval of the 363 Transaction as the tool for restructuring will avoid potentially fatal revenue perishability by restoring confidence in GM employees, its customers, its vendors, as well as the communities that depend on GM.   New GM will be perceived by consumers as a reliable, economically sound automobile company that will stand behind its products and extend value to the purchasing public.

19.    On April 22, 2009, the U.S. Treasury Loan Agreement was amended to increase the availability under the U.S. Treasury Facility by $2 billion to $15.4 billion.   GM borrowed the additional $2 billion in working capital loans on April 24, 2009.

20.    As part of the Company's efforts to rationalize its business and to balance large vehicle inventories, on April 24, 2009, the Company announced that it would temporarily shut down certain production facilities starting on May 4, 2009 for a period not to exceed twelve weeks (the "Temporary Shutdown").   As of the Commencement Date, certain of the Company's assembly facilities remain operating, while other assembly facilities continue to be shut down.

A number of those assembly facilities that currently are shut down are expected to resume operations by July 13, 2009 if the 363 Transaction is approved.

21.    On May 22, 2009, the U.S. Treasury Loan Agreement was amended to increase the U.S. Treasury Facility by $4 billion to $19.4 billion.   GM borrowed the additional $4 billion in working capital loans on May 22, 2009.

## The Exchange Offer

22.    In an effort to achieve long-term viability without resort to the bankruptcy process and its negative effect on revenue, on April 27, 2009, GM launched a public exchange offer for the approximately $27 billion of its unsecured bonds (the "Exchange Offer").   The Company believed that the Exchange Offer would provide the least intrusive means to restructure its indebtedness for the future success of the Company.   The Company, however, did announce in connection with the Exchange Offer that if it did not receive enough tenders to consummate the Exchange Offer, it would likely seek to achieve the joint goals of the Company and the U.S. Treasury, as the Company's largest secured creditor, by initiating cases under the Bankruptcy Code.

23.    The Exchange Offer expired on May 26, 2009 without achieving the threshold of required tendered acceptances.

## The 363 Transaction

24.    Recognizing that the Exchange Offer might not be successful, the Company and the U.S. Treasury determined that it would be in the best interests of the Company and its stakeholders to prepare for the implementation of the 363 Transaction on a contingency basis while the Exchange Offer was being solicited.

25.    Consistent therewith, over the past several weeks, GM and its Debtor subsidiaries (the "Sellers") have been engaged in negotiations with the U.S. Treasury with

respect to the 363 Transaction.   These negotiations culminated in the proposed Master Sale and

Purchase Agreement with Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser

sponsored by the U.S. Treasury, dated as of June 1, 2009 (the "MPA").   The 363 Transaction, as

embodied in the MPA, contemplates that substantially all of GM's assets, including the capital

stock of the majority of its subsidiaries, will be sold to the Purchaser to effect the transformation

to New GM and preserve both the viability of the GM enterprise and the U.S. automotive

industry.   The assets excluded from the sale will be administered in the chapter 11 cases for the

benefit of the stakeholders in the chapter 11 cases.   From and after the closing, the Purchaser or

one or more of its subsidiaries will provide the Sellers and their remaining subsidiaries with

services reasonably required by the Sellers and such subsidiaries to wind down or otherwise

dispose of the excluded assets and administer the chapter 11 cases.   As part of the 363

Transaction, the Debtors, the Purchaser, and the UAW have reached a resolution addressing the

ongoing provision of certain employee and retiree benefits.

26.     The Debtors intend to use the chapter 11 process to expeditiously

consummate the 363 Transaction and establish New GM as an economically viable OEM,

serving its customers, employees, suppliers, and the interests of the nation.   The MPA is a

critical element of the program adopted by the U.S. Treasury to rehabilitate the domestic

automotive industry.   The 363 Transaction furthers public policy by avoiding the fatal damage

to the industry that would occur if New GM is unable to immediately commence bankruptcy-free

operations.

27.     Notably, both the Government of Canada and the Government of Ontario,

through Export Development Canada ("EDC"), Canada's export trading agency, have agreed to

participate in the DIP financing provided by the U.S. Treasury to assure the long-term viability of GM's North American enterprise.

28.    The gravity of the circumstances cannot be overstated.   The need for speed in approving and consummating the 363 Transaction is crucial.   The business and assets to be transferred are extremely sensitive and will be subject to major value erosion unless they are quickly sold and transferred to New GM.   Any delay will result in significant irretrievable revenue perishability to the detriment of all interests and will exacerbate consumer resistance to readily accept General Motors products.   Expeditiously restoring and maintaining consumer confidence is a prerequisite to the successful transformation and future success of New GM.

29.    The expedited approval and execution of the 363 Transaction is the foundation of the U.S. Government's objective "to create the GM of the future," and to preserve and strengthen the U.S. automotive industry and the tens of thousands of jobs involved.   To paraphrase President Obama's remarks, the 363 Transaction "is our best chance to make sure that the cars of the future are built where they've always been built – in Detroit and across the Midwest – to make America's auto industry in the 21st century what it was in the 20th century – unsurpassed around the world."   *Presidential Remarks* at 7.

## Jurisdiction

30.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

31.    By this Motion, the Debtors request, pursuant to sections 105(a) and 362 of the Bankruptcy Code, entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Order" or the "Orders") authorizing the

Debtors to establish procedures as set forth herein to protect the potential value of the Tax
Attributes.    A copy of each of the proposed Orders is annexed hereto as <u>Exhibit C</u> and <u>Exhibit
D,</u> respectively.    The proposed procedures (the "<u>Procedures</u>") would apply with respect to GM
Stock and any options or similar interests to acquire such stock.    The Procedures would impose
restrictions and notification requirements, to be effective *nunc pro tunc* to the Motion Date.
Parties would be notified of the Procedures through publication of (i) the Interim Procedures
Notice, which describes the trading restrictions and notification requirements established in the
Interim Order and (ii) the Final Procedures Notice, which sets forth the procedures described
herein as approved on a final basis.

<u>**Tax Attributes**</u>

32.    The Debtors estimate that, as of the date hereof, the Debtors have
incurred, for U.S. federal income tax purposes, (i) consolidated NOLs in excess of $16 billion
and (ii) foreign tax credit and other excess credit carryforwards in excess of $5 billion.    In
addition, the Debtors have substantial tax basis in their assets.

33.    The Debtors' Tax Attributes are valuable assets of the Debtors' estates
because the Internal Revenue Code of 1986, as amended (the "<u>Tax Code</u>"), generally permits
corporations to carry over their losses and tax credits to offset future income, thereby reducing
the tax liability of the Debtors and, following the 363 Transaction, also New GM in future
periods.    *See* 26 U.S.C. §§ 39, 172 and 904(c).    The Debtors' Tax Attributes potentially allow
the Debtors and (as contemplated by the 363 Transaction) New GM to significantly reduce future
U.S. federal income tax liability, depending upon future operating results of the Debtors and/or
the amount realized upon the subsequent disposition or wind-down of the assets not transferred
in the 363 Transaction, and absent any intervening limitations prior to the effective date of a
chapter 11 plan of reorganization.    These savings could substantially enhance the Debtors' and

New GM's cash position for the benefit of all parties in interest and contribute to the Debtors'

and New GM's efforts toward a successful reorganization.

34.    The ability of the Debtors and New GM to use the Debtors' Tax Attributes

to reduce future tax liability is subject to certain statutory limitations.    Sections 382 and 383 of

the Tax Code limit a corporation's use of its NOLs, tax credits and certain other tax attributes to

offset future income or tax after the corporation experiences an "ownership change."    For

purposes of section 382, an ownership change generally occurs when the percentage of a loss

corporation's equity held by one or more "5% shareholders" (as such term is defined in section

382) increases by more than 50 percentage points over the lowest percentage of stock owned by

such shareholder(s) at any time during the relevant testing period (usually three years).    A

section 382 ownership change *prior* to the effective date of a chapter 11 plan and, particularly,

prior to the 363 Transaction, would effectively eliminate the ability of the Debtors and New GM

to use the Debtors' Tax Attributes, thereby resulting in a significant loss of value.    However, the

limitations imposed by section 382 in the context of an ownership change pursuant to a

confirmed plan of reorganization or applicable bankruptcy court order are significantly more

relaxed than those applicable outside chapter 11.    *See* 26 U.S.C. §§ 382(l)(5), (6).    Moreover,

the limitations imposed by section 382 may not apply to an ownership change that is pursuant to

a restructuring plan described in section 382(n).    *See* 26 U.S.C. § 382(n).    Although the

application of section 382 (n) to an ownership change occurring in connection with the

consummation of a restructuring plan may be favorable, qualifying for the benefits of section

382 (n) does not undo any annual limitation imposed in connection with an ownership change

occurring prior to the 363 Transaction or the effective date of the plan of reorganization, as

applicable.

35.     Accordingly, consistent with the automatic stay in these cases, the Debtors need the ability to preclude certain transfers of, and monitor and possibly object to other changes in the ownership of, GM Stock to ensure that a 50% change of ownership does not occur prior to the effective date of a chapter 11 plan.

**Proposed Trading and Other Disposition Procedures**

36.     To preserve the potential value of the Tax Attributes and ensure that the Debtors receive the full benefits of the automatic stay, the Debtors propose the following restrictions, notification requirements, and/or other procedures of the Interim Order, effective as of the Motion Date:

(a)     *GM Stock Ownership, Acquisition, and Disposition*

(1)     Notice of Substantial GM Stock Ownership.  Any person or Entity (as such term is defined in section 382 of the Code, including persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition) that beneficially owns, at any time on or after the Motion Date, GM Stock in an amount sufficient to qualify such person or Entity as a Substantial Equityholder (as hereinafter defined) shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for any statutory committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), a Notice of Substantial Stock Ownership (a "Substantial Ownership Notice"), in the form annexed hereto as Exhibit E, which describes specifically and in detail the GM Stock ownership of such person or Entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Interim Order or the Final Order, as applicable, and (b) ten (10) days after that person or Entity qualifies as a Substantial Equityholder.  At the holder's election, the Substantial Ownership Notice to be filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns.

(2)     Acquisition of GM Stock or Options.  At least fifteen (15) business days prior to the proposed date of any transfer of equity securities (including Options, as hereinafter defined, to acquire such securities) that would result in an increase in the amount of GM Stock beneficially owned by any person or Entity that currently is or subsequently becomes a Substantial Equityholder or that would result in a person or Entity

becoming a Substantial Equityholder (a "Proposed Equity Acquisition Transaction"), such person, Entity or Substantial Equityholder (a "Proposed Equity Transferee") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate GM Stock (an "Equity Acquisition Notice"), in the form annexed hereto as Exhibit F, which describes specifically and in detail the proposed transaction in which GM Stock is to be acquired. At the holder's election, the Equity Acquisition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to purchase or otherwise acquire.

(3)     Disposition of GM Stock or Options.   At least fifteen (15) business days prior to the proposed date of any transfer or other disposition of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of GM Stock beneficially owned by a Substantial Equityholder or that would result in a person or Entity ceasing to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction," and together with a Proposed Equity Acquisition Transaction, a "Proposed Equity Transaction"), such person, Entity, or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Sell, Trade, or Otherwise Transfer GM Stock (an "Equity Disposition Notice," and together with an Equity Acquisition Notice, an "Equity Trading Notice"), in the form annexed hereto as Exhibit G, which describes specifically and in detail the proposed transaction in which GM Stock would be transferred.   At the holder's election, the Equity Disposition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4)     Objection Procedures.   The Debtors and the Creditors' Committee shall have ten (10) business days after the filing of an Equity Trading Notice (the "Equity Objection Deadline") to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of equity securities (including Options to acquire such securities) described in such Equity Trading Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

(i)      If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

(ii)     If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and the Creditors' Committee provide written authorization to the Proposed Equity Transferee or the Proposed Equity Transferor, as the case may be, approving the Proposed Equity Transaction, prior to the Equity Objection Deadline, then such Proposed Equity Transaction may proceed solely as specifically described in the Equity Trading Notice.   Any further Proposed Equity Transaction must be the subject of additional notices as set forth herein with an additional fifteen (15) business day waiting period.

(5)    <u>Unauthorized Transactions in GM Stock or Options</u>.   Effective as of the date of the filing of this Motion and until further order of the Court to the contrary, any acquisition, disposition or other transfer of equity securities (including Options to acquire such securities) of the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

(6)    <u>Definitions</u>.   For purposes of this Motion and the Order, the following terms have the following meanings:

(i)     <u>Substantial Equityholder</u>.   A "Substantial Equityholder" is any person or Entity that beneficially owns at least 27,000,000 shares of GM's common stock ("<u>GM Common Stock</u>") (representing approximately 4.5% of all issued and outstanding shares of GM's common stock).

(ii)    <u>Beneficial Ownership.</u>   "Beneficial ownership" (or any variation thereof of GM Stock and Options to acquire GM Stock) shall be determined in accordance with applicable rules under section 382 of the Tax Code, the U.S. Department of Treasury regulations ("<u>Treasury Regulations</u>") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock, and (C) in certain cases, the ownership of an Option to acquire GM Stock.

    (iii)   <u>Option</u>.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest regardless of whether it is contingent or otherwise not currently exercisable; and

    (iv)   <u>GM Stock</u>.  "GM Stock" shall mean GM Common Stock.  For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire GM Stock may be treated as the owner of such GM Stock.

**(b)**    ***Noncompliance with the Trading Procedures.***

Any purchase, sale, or other transfer of equity securities in the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* and shall confer no rights on the transferee.

**(c)**    ***Debtors' Right to Waive.***

The Debtors may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Motion, provided that pending and after the 363 Transaction, the Debtors shall not grant any waiver without the written consent of New GM, which consent shall not be unreasonably withheld.

**The Tax Attributes Are Property of the Debtors' Estates;
Thus, the Automatic Stay Bars Any Equity Transfers That Would
<u>Diminish or Limit the Debtors' Interest in the Tax Attributes</u>**

37.    Section 362(a) of the Bankruptcy Code operates as a stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Accordingly, "where a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."  *Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991).

38.    It is well established that a debtor's NOLs are property of the debtor's estate which is protected by section 362 of the Bankruptcy Code.  *See Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998)

("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them.").   The United States Court of Appeals for the Second Circuit, in its seminal *Prudential Lines* decision, affirmed the application of the automatic stay and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction for the stock of its debtor subsidiary because doing so would have adversely affected the subsidiary's ability to use its NOLs under the special relief provisions of section 382 of the Tax Code.   928 F.2d 565.   The Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate."   Moreover, "[a] paramount and important goal of Chapter 11 is the rehabilitation of the debtor by offering breathing space and an opportunity to rehabilitate its business and eventually generate revenue." Including the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* at 573 (internal citations omitted); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).   In *Prudential Lines*, the Second Circuit further held that the parent corporation's attempt to claim a worthless stock deduction in stock of its debtor subsidiary effectively would eliminate the value of the debtor's NOLs and thus, would be an act to exercise control over estate property in violation of section 362 of the Bankruptcy Code.   *Prudential Lines*, 928 F.2d at 573-574.

            39.      In *Prudential Lines,* the parent corporation's interest in its worthless stock deduction was intertwined with the debtor's NOLs.   The Second Circuit determined that, if the parent were permitted to take a worthless stock deduction, it would have an adverse impact on

the debtor subsidiary's ability to carry forward its NOLs.    Therefore, the Second Circuit noted

that, "despite the fact that the [parent corporation's] action is not directed specifically at [the

debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over

property of the estate."    *Id.*

   40. The Second Circuit also held that the permanent injunction was supported

by the court's equitable powers pursuant to section 105(a) of the Bankruptcy Code, which

authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of " the Bankruptcy Code.    Because the NOLs were valuable assets of

the debtor, the Second Circuit refused to disturb the bankruptcy court's determination that

elimination of the right to apply its NOLs to offset income on future tax returns would impede

the debtor's reorganization.    *Prudential Lines*, 928 F.2d at 574.

   41. Similarly, in *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993),

the chapter 11 debtors moved to prohibit the transfer of their stock that could have an adverse

effect on their ability to use NOLs.    The court held that the NOLs qualified as property of the

estate and issued an injunctive order to enforce the automatic stay and protect the assets of the

debtors' estates.    Significantly, the court granted the relief requested even though the

stockholders did not state any intent to sell their stock and even though the debtors did not show

that a sale was pending that would trigger the prescribed ownership change under section 382 of

the Tax Code.    *Id.* at 927.    Despite the "ethereal" nature of the situation, the court observed that

"[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of

benefit to creditors and will assist debtors in their reorganization process.    This asset is entitled

to protection while debtors move forward toward reorganization."    *Id*. (emphasis added).    The

court also concluded that, because the debtors were seeking to enforce the stay, they did not have

to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C.
> § 362(a)(3) do not involve such factors as lack of an adequate
> remedy at law, or irreparable injury, or loss and a likelihood of
> success on the merits.   The key elements for a stay . . . are the
> existence of property of the estate and the enjoining of all efforts
> by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

42.     In short, it is well established by courts in this Circuit, as well as other

Circuits, that it is well settled that the automatic stay under section 362(a)(3) of the Bankruptcy

Code enjoins actions that would adversely affect a debtor's NOLs and other tax attributes.

These actions, including the trading of stock in and claims against a debtor, may be determined

to be null and void *ab initio*.

### The Proposed Procedures Are
### Necessary and in the Best Interests of the Debtors, Their Estates, and Creditors

43.     The proposed procedures are necessary to preserve the ability of the

Debtors and (as contemplated by the 363 Transaction) potentially New GM to use the Debtors'

Tax Attributes, which are valuable assets of the Debtors' estates, while providing latitude for

trading in interests below specified levels.   The Debtors' ability to meet the requirements of the

tax laws to preserve their Tax Attributes may be seriously jeopardized unless procedures are

established to ensure that trading in certain interests in the Debtors are either precluded or

closely monitored and made subject to Court approval.   However, the Debtors recognize that

trading in GM Stock below specified levels may not, under certain circumstances, pose a serious

risk to the Debtors' Tax Attributes, and thus the Debtors (with the consent of New GM) preserve

the ability to waive in writing, in appropriate circumstances, any and all restrictions, stays, and

notification procedures contained in this Motion.

44.    Absent an ownership change under section 382 of the Tax Code prior to the 363 Transaction, the Debtors may transfer a substantial portion of the Tax Attributes to New GM as a result of the 363 Transaction, and may utilize any remaining Tax Attributes to offset future income and eliminate future income tax liability in connection with the wind-down or disposition of their remaining assets.   Thus, the Tax Attributes are valuable assets of the Debtors' estates and are entitled to the protection of the automatic stay, and the exercise of this Court's equitable powers under section 105(a) is appropriate.

45.    The relief requested herein is narrowly tailored to permit certain stock trading to continue, subject to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws.   The Debtors hereby are seeking only to enforce the provisions of the automatic stay in connection with certain types of stock trading that pose a serious risk under the ownership change tests and to monitor (with limited circumspections) other types of trading that potentially pose a serious risk.

46.    The proposed restrictions on stock trading are crucial because once an interest is transferred the transaction arguably might not be reversible for tax purposes, though it should be null and void under Bankruptcy Code section 362.   Accordingly, once a transfer acts to limit the Debtors' ability to use their Tax Attributes under section 382 of the Tax Code, such ability may be permanently lost.   The relief requested is, therefore, critical to prevent an irrevocable loss of the Debtors' use of their Tax Attributes.

47.    It is in the best interests of the Debtors and their stakeholders to restrict stock trading that could result in an ownership change under section 382 of the Tax Code before the effective date of a plan of reorganization.   If such an ownership change occurs, the valuation for determining the annual amount of useable NOLs would be zero.   However, the limitations

imposed by section 382 in the context of an ownership change pursuant to a confirmed plan of

reorganization or applicable bankruptcy court order are significantly more relaxed than those

applicable outside of chapter 11.   *See* 26 U.S.C. §§ 382(1)(5), (6).   Moreover, the limitations

imposed by section 382 may not apply to an ownership change that is pursuant to a restructuring

plan described in section 382(n).   *See* 26 U.S.C. § 382(n).

48.   Under section 382(n) of the Tax Code, a corporation is not subject to the

annual limitation imposed by section 382 with respect to an ownership change occurring

pursuant to a restructuring plan that (A) is required under a loan agreement or a commitment for

a line of credit entered into with the United States Department of Treasury under the Emergency

Economic Stabilization Act of 2008 ("2008 EESA"), and (B) is intended to result in a

rationalization of the costs, capitalization, and capacity with respect to the manufacturing

workforce of, and suppliers to, the corporation and its subsidiaries.   The Debtors believe this

general rule potentially applies to the 363 Transaction.   Although the application of section

382(n) to an ownership change may be favorable, section 382(n) does not undo any annual

limitation imposed in connection with a change in ownership occurring prior to the requisite

restructuring.

### The Interim Approval Should Be Granted

49.   The granting of interim approval will benefit the Debtors and their

stakeholders by preventing the loss of the Tax Attributes pending determination of final approval

of the requested procedures while allowing holders of GM Stock and other parties in interest

ample time to consider the proposed procedures.   Absent granting the interim relief requested

herein, the Debtors may be irreparably harmed by the mere filing of this Motion.   If the Debtors

filed this Motion in accordance with the notice procedures set forth in the applicable Bankruptcy

Rules and Local Rules, it is possible that a flurry of equity and claims trading would immediately

follow.   Parties holding GM Stock may rush to transfer their interests in the Debtors before any

prohibition on trading is approved by this Court.   Such trading would put the Debtors' Tax

Attributes in jeopardy and be counterproductive to the Debtors' objectives in seeking the relief

requested herein.   Accordingly, the Debtors request that the procedures proposed herein be

approved on an interim basis and that a hearing be scheduled to consider entry of the Final

Order.

       50.    Within three (3) business days of the entry of the proposed Interim Order,

the Debtors propose to send the Interim Procedures Notice describing the authorized trading

restrictions and notification requirements to (i) the Office of the United States Trustee for the

Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for

EDC, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v)

the attorneys for the agent under GM's prepetition amended and restated secured revolving credit

agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors, (vii) the

attorneys for the UAW, (viii) the attorneys for the International Union of Electronic, Electrical,

Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the

United States Department of Labor, (x) the attorneys for the National Automobile Dealers

Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) any record-holder

listed with the transfer agent for GM Stock, and (xiii) any person or Entity who has filed

Schedule 13D or Schedule 13G with the SEC since January 1st, 2008 with regard to the

beneficial ownership of GM Stock (collectively, the "Notice Parties").   Within three (3)

business days of receipt of the Interim Procedures Notice, any nominee holders shall either

provide the Debtors' proposed official notice and claims agent, The Garden City Group, Inc.,

with the last known names and addresses of their clients who are beneficial owners of GM Stock

(who will in turn mail the Interim Procedures Notice to the beneficial owners so identified), or send the Interim Procedures Notice to all beneficial holders of GM Stock known to the nominee holder.    The Debtors also propose to publish the Interim Procedures Notice on the Bloomberg newswire service and in the national editions of *The Wall Street Journal* and *The New York Times*, and post such Interim Procedures Notice on the website of the Debtors' proposed official notice and claims agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com.

51.    The Interim Procedures Notice will provide that the deadline to file an objection ("Objection") to the Motion shall be 5:00 p.m. (prevailing Eastern Time) seven (7) business days prior to the date of the hearing to consider, on a final basis, the relief requested in the Motion (the "Objection Deadline").    An Objection shall be considered timely if it is (i) filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, and (ii) actually received by (a) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (Attn:   Lawrence S. Buonomo, Esq.); (b) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn:   Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (c) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn:   Matthew Feldman, Esq.); (d) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn:   John J. Rapisardi, Esq.); (e) the attorneys for the Creditors Committee; (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn:   Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee for the Southern District of New York (Attn:   Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004.

52.    Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 noon (prevailing Eastern Time) no later than two (2) business days before the date of the hearing to consider the Final Order.

53.    If no Objections are timely filed and served, as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court the proposed Final Order, which Final Order shall be submitted and may be entered with no further notice or opportunity to be heard afforded to any party.   If an Objection is timely filed, a hearing will be held at the U.S. Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, at least twenty (20) days after service of the Interim Procedures Notice.

54.    Until the Court enters a Final Order, any acquisition or disposition of GM Stock as of the date of the Motion in violation of the procedures set forth above shall be null and void *ab initio* as an act in violation of the automatic stay prescribed by section 362 of the Bankruptcy Code and pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code.

55.    Following the entry of the Final Order, the Final Procedures Notice describing the authorized trading restrictions and notification requirements would be sent to the Notice Parties.   Upon receipt of the Final Procedures Notice, any nominee holders, who have not done so already, shall either provide the Debtors' proposed official notice and claims agent, The Garden City Group, Inc., with the last known names and addresses of their clients who are beneficial owners of GM Stock (who will in turn mail the Final Procedures Notice to the beneficial owners so identified), or send the Final Procedures Notice to all beneficial holders of GM Stock known to the nominee holder.   The Final Procedures Notice would be posted on the Bloomberg newswire service and in the national editions of *The Wall Street Journal* and *The*

*New York Times*, and on the website of the Debtors' proposed official notice and claims agent,

The Garden City Group, Inc., at http://www.gmcourtdocs.com.

       56.     The Debtors submit that the foregoing constitutes a sufficient and cost-

effective way of providing notice of the interim and final procedures described herein.   The

foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by

providing the counterparties with notice and an opportunity to object and be heard at a hearing.

*See, e.g.*, *Harada v. DBL Liquidating Trust (In re Drexel Burnham Lambert Group, Inc.)*, 160

B.R. 729, 733 (S.D.N.Y. 1993) (indicating that an opportunity to present objections satisfies due

process); *see also Atamian v. U.S. Dep't of Educ. (In re Atamian),* 368 B.R. 375, 378 (Bankr. D.

Del. 2007), *aff'd,* No. 05-20040 (MFW), 2008 WL 853462 (D. Del. Mar. 31, 2008), *aff'd*, No.

08-2026, 2008 WL 5007392 (3d Cir. Nov. 26, 2008) ("Rule 9014 does not require a hearing,

only an opportunity for a hearing.").   Furthermore, the proposed notice procedures protect the

due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to

unwarranted administrative expenses.   Similar notice and objection procedures were approved

in the cases discussed above.

### Notice

       57.     Notice of this Motion has been provided to (i) the Office of the United

States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury,

(iii) the attorneys for EDC, (iv) the attorneys for the agent under GM's prepetition secured term

loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated

secured revolving credit agreement, (vi) the holders of the fifty largest unsecured claims against

the Debtors (on a consolidated basis), (vii) the attorneys for the UAW, (viii) the attorneys for the

International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—

Communications Workers of America, (ix) the United States Department of Labor, (x) the

attorneys for the National Automobile Dealers Association, and (xi) the attorneys for the ad hoc

bondholders committee, (xii) any transfer agent(s) for GM Stock, and (xiii) any person or Entity

who has filed Schedule 13D or Schedule 13G with the SEC since January 1st, 2008 with regard

to the beneficial ownership of GM Stock.   The Debtors submit that, in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

58.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       June 1, 2009

 /s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

## Interim Procedures Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                        :

In re                       :          Chapter 11 Case No.
                        :

GENERAL MOTORS CORP., *et al.*,  :         **09-_____ (___)**
                        :

            **Debtors.**      :          **(Jointly Administered)**
                        :
---------------------------------------------------------------x

NOTICE OF INTERIM
ORDER ESTABLISHING NOTIFICATION
PROCEDURES AND APPROVING RESTRICTIONS ON
CERTAIN TRANSFERS OF INTERESTS IN THE DEBTORS' ESTATES

TO ALL PERSONS OR ENTITIES WITH EQUITY INTERESTS IN THE DEBTORS[1]:

        PLEASE TAKE NOTICE that on June 1, 2009 (the "Commencement Date"), General Motors Corporation ("GM") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors") commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   Section 362(a) of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

        PLEASE TAKE FURTHER NOTICE that on June ___, 2009 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), having jurisdiction over this chapter 11 case, upon motion of the Debtors (the "Motion"), entered an interim order (i) finding that the Debtors' net operating loss carryforwards ("NOLs") and certain other tax attributes, including their foreign tax credit and other excess credit carryforwards (together with the NOLs, the "Tax Attributes") are property of the Debtors' estates and are protected by section 362(a) of the Bankruptcy Code; (ii) finding that trading in GM common stock (the "GM Stock") could severely limit the Debtors' ability to use the Tax Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"); and (iii) approving the procedures as set forth herein to preserve the Tax Attributes pursuant to sections 105(a) and 362(a) of the Bankruptcy Code *retroactively effective as of the Commencement Date* (the "Interim Order").   **ANY ACQUISITION IN VIOLATION OF THE RESTRICTIONS SET FORTH BELOW SHALL BE NULL AND VOID *AB INITIO* AS AN ACT IN VIOLATION OF THE AUTOMATIC STAY UNDER SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE.**

---

[1]  All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion.

PLEASE TAKE FURTHER NOTICE that the following procedures and restrictions have been approved by the Bankruptcy Court and shall apply to holding and trading in GM Stock:

(1)    <u>Notice of Substantial GM Stock Ownership</u>.   Any person or Entity (as such term is defined in section 382 of the Code, including persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition) that beneficially owns, at any time on or after the Motion Date, GM Stock in an amount sufficient to qualify such person or Entity as a Substantial Equityholder (as hereinafter defined) shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for any statutory committee of unsecured creditors appointed in these cases (the "<u>Creditors' Committee</u>"), a Notice of Substantial Stock Ownership (a "<u>Substantial Ownership Notice</u>"), in the form annexed hereto as <u>Exhibit E</u>, which describes specifically and in detail the GM Stock ownership of such person or Entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Interim Order or the Final Order, as applicable, and (b) ten (10) days after that person or Entity qualifies as a Substantial Equityholder.   At the holder's election, the Substantial Ownership Notice to be filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns.

(2)    <u>Acquisition of GM Stock or Options</u>.   At least fifteen (15) business days prior to the proposed date of any transfer of equity securities (including Options, as hereinafter defined, to acquire such securities) that would result in an increase in the amount of GM Stock beneficially owned by any person or Entity that currently is or subsequently becomes a Substantial Equityholder or that would result in a person or Entity becoming a Substantial Equityholder (a "<u>Proposed Equity Acquisition Transaction</u>"), such person, Entity or Substantial Equityholder (a "<u>Proposed Equity Transferee</u>") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate GM Stock (an "<u>Equity Acquisition Notice</u>"), in the form annexed hereto as <u>Exhibit F</u>, which describes specifically and in detail the proposed transaction in which GM Stock is to be acquired.   At the holder's election, the Equity Acquisition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to purchase or otherwise acquire.

(3)     Disposition of GM Stock or Options.   At least fifteen (15) business days prior to the proposed date of any transfer or other disposition of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of GM Stock beneficially owned by a Substantial Equityholder or that would result in a person or Entity ceasing to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction," and together with a Proposed Equity Acquisition Transaction, a "Proposed Equity Transaction"), such person, Entity, or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Sell, Trade, or Otherwise Transfer GM Stock (an "Equity Disposition Notice," and together with an Equity Acquisition Notice, an "Equity Trading Notice"), in the form annexed hereto as Exhibit G, which describes specifically and in detail the proposed transaction in which GM Stock would be transferred.   At the holder's election, the Equity Disposition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4)     Objection Procedures.   The Debtors and the Creditors' Committee shall have ten (10) business days after the filing of an Equity Trading Notice (the "Equity Objection Deadline") to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of equity securities (including Options to acquire such securities) described in such Equity Trading Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

(i)     If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

(ii)     If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and the Creditors' Committee provide written authorization to the Proposed Equity Transferee or the Proposed Equity Transferor, as the case may be, approving the Proposed Equity Transaction, prior to the Equity Objection Deadline, then such Proposed Equity Transaction may proceed solely as specifically described in the Equity Trading Notice.   Any further Proposed Equity Transaction

must be the subject of additional notices as set forth herein with an additional fifteen (15) business day waiting period.

(5)     <u>Unauthorized Transactions in GM Stock or Options.</u>   Effective as of the date of the filing of this Motion and until further order of the Court to the contrary, any acquisition, disposition or other transfer of equity securities (including Options to acquire such securities) of the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

(6)     <u>Definitions.</u>   For purposes of this Motion and the Order, the following terms have the following meanings:

   (i)     <u>Substantial Equityholder.</u>   A "Substantial Equityholder" is any person or Entity that beneficially owns at least 27,000,000 shares of GM's common stock ("<u>GM Common Stock</u>") (representing approximately 4.5% of all issued and outstanding shares of GM's common stock).

   (ii)    <u>Beneficial Ownership.</u>   "Beneficial ownership" (or any variation thereof of GM Stock and Options to acquire GM Stock) shall be determined in accordance with applicable rules under section 382 of the Tax Code, the U.S. Department of Treasury regulations ("<u>Treasury Regulations</u>") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock, and (C) in certain cases, the ownership of an Option to acquire GM Stock.

   (iii)   <u>Option.</u>   An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest regardless of whether it is contingent or otherwise not currently exercisable; and

   (iv)    <u>GM Stock</u>.   "GM Stock" shall mean GM Common Stock.   For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire GM Stock may be treated as the owner of such GM Stock.

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE WILL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED ACQUISITION OR OTHER TRANSFER OF GM STOCK IN VIOLATION OF THE INTERIM ORDER WILL BE NULL AND VOID *AB INITIO* AND MAY LEAD TO CONTEMPT, COMPENSATORY DAMAGES, PUNITIVE DAMAGES, OR SANCTIONS BEING IMPOSED BY THE BANKRUPTCY COURT.**

**THE DEBTORS MAY WAIVE, IN WRITING, ANY AND ALL RESTRICTIONS, STAYS, AND NOTIFICATION PROCEDURES CONTAINED IN THE INTERIM ORDER, PROVIDED THAT PENDING AND AFTER THE 363 TRANSACTION, THE DEBTORS SHALL NOT GRANT ANY WAIVER WITHOUT THE WRITTEN CONSENT OF NEW GM, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD.**

PLEASE TAKE FURTHER NOTICE that any person or entity desirous of acquiring an interest restricted by the Interim Order may request relief for cause at any time and the Debtors may oppose such relief.

PLEASE TAKE FURTHER NOTICE that, if timely objections are received, there shall be a hearing held on _____, 2009 at 10:00 a.m. to consider, on a final basis, the relief requested in the Motion.   The hearing may be adjourned without notice by an announcement of the adjourned date at the hearing.

PLEASE TAKE FURTHER NOTICE that **RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED** with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York and served upon:   (a) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (Attn:   Lawrence S. Buonomo, Esq.); (b) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn:   Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (c) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn:   Matthew Feldman, Esq.); (d) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn:   John J. Rapisardi, Esq.); (e) the attorneys for the Creditors Committee; (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee for the Southern District of New York (Attn:   Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004, **SO AS TO BE RECEIVED NO LATER THAN 5:00 P.M. (PREVAILING EASTERN TIME) SEVEN (7) BUSINESS DAYS PRIOR TO THE DATE OF THE HEARING TO CONSIDER, ON A FINAL BASIS, THE RELIEF REQUESTED IN THE MOTION**.

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

Dated:  New York, New York
        June __, 2009

_____
United States Bankruptcy Judge

**Exhibit B**

**Final Procedures Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                :

In re                       :          Chapter 11 Case No.
                                :

GENERAL MOTORS CORP., *et al.*,   :          09-_____ (___)
                                :

             Debtors.      :          (Jointly Administered)
                                :

-------------------------------------------------------------x

## NOTICE OF FINAL
## ORDER ESTABLISHING NOTIFICATION
## PROCEDURES AND APPROVING RESTRICTIONS ON
## CERTAIN TRANSFERS OF INTERESTS IN THE DEBTORS' ESTATES

TO ALL PERSONS OR ENTITIES WITH EQUITY INTERESTS IN THE DEBTORS[1]:

          PLEASE TAKE NOTICE that on June 1, 2009 (the "Commencement Date"), General Motors Corporation ("GM") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors") commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Section 362(a) of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

          PLEASE TAKE FURTHER NOTICE that on _____, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), having jurisdiction over this chapter 11 case, upon motion of the Debtors (the "Motion"), entered an interim order (i) finding that the Debtors' net operating loss carryforwards ("NOLs") and certain other tax attributes, including their foreign tax credit and other excess credit carryforwards (together with the NOLs, the "Tax Attributes") are property of the Debtors' estates and are protected by section 362(a) of the Bankruptcy Code; (ii) finding that trading in GM common stock (the "GM Stock") could severely limit the Debtors' ability to use the Tax Attributes for purposes of title 26 of the United States Code (the "Tax Code"); and (iii) approving the procedures set forth below to preserve the Tax Attributes pursuant to sections 105(a) and 362(a) of the Bankruptcy Code (the "Final Order"). **ANY ACQUISITION IN VIOLATION OF THE RESTRICTIONS SET FORTH BELOW SHALL BE NULL AND VOID *AB INITIO* AS AN ACT IN VIOLATION OF THE AUTOMATIC STAY UNDER SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE.**

          PLEASE TAKE FURTHER NOTICE that the following procedures and restrictions have been approved by the Bankruptcy Court and shall apply to holding and trading in GM Stock:

---

[1] All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion.

(1)    Notice of Substantial GM Stock Ownership.    Any person or Entity (as such term is defined in section 382 of the Code, including persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition) that beneficially owns, at any time on or after the Motion Date, GM Stock in an amount sufficient to qualify such person or Entity as a Substantial Equityholder (as hereinafter defined) shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for any statutory committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), a Notice of Substantial Stock Ownership (a "Substantial Ownership Notice"), in the form annexed hereto as Exhibit E, which describes specifically and in detail the GM Stock ownership of such person or Entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Interim Order or the Final Order, as applicable, and (b) ten (10) days after that person or Entity qualifies as a Substantial Equityholder.    At the holder's election, the Substantial Ownership Notice to be filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns.

(2)    Acquisition of GM Stock or Options.    At least fifteen (15) business days prior to the proposed date of any transfer of equity securities (including Options, as hereinafter defined, to acquire such securities) that would result in an increase in the amount of GM Stock beneficially owned by any person or Entity that currently is or subsequently becomes a Substantial Equityholder or that would result in a person or Entity becoming a Substantial Equityholder (a "Proposed Equity Acquisition Transaction"), such person, Entity or Substantial Equityholder (a "Proposed Equity Transferee") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate GM Stock (an "Equity Acquisition Notice"), in the form annexed hereto as Exhibit F, which describes specifically and in detail the proposed transaction in which GM Stock is to be acquired.    At the holder's election, the Equity Acquisition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to purchase or otherwise acquire.

(3)    Disposition of GM Stock or Options.    At least fifteen (15) business days prior to the proposed date of any transfer or other disposition of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of GM Stock beneficially owned by a Substantial Equityholder or that would result in a person or Entity ceasing

to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction," and together with a Proposed Equity Acquisition Transaction, a "Proposed Equity Transaction"), such person, Entity, or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Sell, Trade, or Otherwise Transfer GM Stock (an "Equity Disposition Notice," and together with an Equity Acquisition Notice, an "Equity Trading Notice"), in the form annexed hereto as Exhibit G, which describes specifically and in detail the proposed transaction in which GM Stock would be transferred.   At the holder's election, the Equity Disposition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4)     Objection Procedures.   The Debtors and the Creditors' Committee shall have ten (10) business days after the filing of an Equity Trading Notice (the "Equity Objection Deadline") to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of equity securities (including Options to acquire such securities) described in such Equity Trading Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

     (i)     If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

     (ii)     If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and the Creditors' Committee provide written authorization to the Proposed Equity Transferee or the Proposed Equity Transferor, as the case may be, approving the Proposed Equity Transaction, prior to the Equity Objection Deadline, then such Proposed Equity Transaction may proceed solely as specifically described in the Equity Trading Notice.   Any further Proposed Equity Transaction must be the subject of additional notices as set forth herein with an additional fifteen (15) business day waiting period.

(5)     Unauthorized Transactions in GM Stock or Options.   Effective as of the date of the filing of this Motion and until further order of the Court to the contrary, any acquisition, disposition or other transfer of equity securities

(including Options to acquire such securities) of the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

(6)    Definitions.    For purposes of this Motion and the Order, the following terms have the following meanings:

(i)    Substantial Equityholder.    A "Substantial Equityholder" is any person or Entity that beneficially owns at least 27,000,000 shares of GM's common stock ("GM Common Stock") (representing approximately 4.5% of all issued and outstanding shares of GM's common stock).

(ii)    Beneficial Ownership.    "Beneficial ownership" (or any variation thereof of GM Stock and Options to acquire GM Stock) shall be determined in accordance with applicable rules under section 382 of the Tax Code, the U.S. Department of Treasury regulations ("Treasury Regulations") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock, and (C) in certain cases, the ownership of an Option to acquire GM Stock.

(iii)    Option.    An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest regardless of whether it is contingent or otherwise not currently exercisable; and

(iv)    GM Stock.    "GM Stock" shall mean GM Common Stock.    For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire GM Stock may be treated as the owner of such GM Stock.

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE WILL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED ACQUISITION, DISPOSITION OR OTHER TRANSFER OF GM STOCK IN VIOLATION OF THE FINAL ORDER WILL BE NULL AND VOID *AB INITIO* AND MAY LEAD TO CONTEMPT, COMPENSATORY**

**DAMAGES, PUNITIVE DAMAGES, OR SANCTIONS BEING IMPOSED BY THE BANKRUPTCY COURT.**

**THE DEBTORS MAY WAIVE, IN WRITING, ANY AND ALL RESTRICTIONS, STAYS, AND NOTIFICATION PROCEDURES CONTAINED IN THE FINAL ORDER, PROVIDED THAT PENDING AND AFTER THE 363 TRANSACTION, THE DEBTORS SHALL NOT GRANT ANY WAIVER WITHOUT THE WRITTEN CONSENT OF NEW GM, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD.**

PLEASE TAKE FURTHER NOTICE that any person or entity desirous of acquiring an interest restricted by the Final Order may request relief for cause at any time and the Debtors may oppose such relief.

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

Dated: New York, New York
   June___, 2009

        _____
        United States Bankruptcy Judge

## Exhibit C

## Proposed Interim Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                    :

In re                        :           Chapter 11 Case No.

                    :

GENERAL MOTORS CORP., *et al.*,   :        09-_____ (___)

                    :

             Debtors.     :        (Jointly Administered)

                    :

---------------------------------------------------------------x

## INTERIM ORDER PURSUANT TO
## SECTIONS 105(a) AND 362 OF THE BANKRUPTCY
## CODE (I) ESTABLISHING NOTIFICATION PROCEDURES AND
## APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF INTERESTS
## IN THE DEBTORS' ESTATES, AND (II) SCHEDULING A FINAL HEARING

Upon the Motion, dated June 1, 2009 (the "<u>Motion</u>"),[1] of General Motors

Corporation and certain of its subsidiaries, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), pursuant to sections 362 and 105(a) of

title 11, United States Code (the "<u>Bankruptcy Code</u>"), for entry of an interim order (the "<u>Interim</u>

<u>Order</u>") to (i) establish notification procedures and approve restrictions on certain transfers of

interests in the Debtors' estates, as more fully described in the Motion, and (ii) schedule a final

hearing; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York of Any and All Proceedings Under

Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

having been provided to (i) the Office of the United States Trustee for the Southern District of

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for EDC; (iv) the attorneys

for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent

under GM's prepetition amended and restated secured revolving credit agreement, (vi) the

holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis),

(vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America, (viii) the attorneys for the International Union of Electronic,

Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America,

(ix) the United States Department of Labor, (x) the attorneys for the National Automobile

Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) any transfer

agent(s) for GM Stock, and (xiii) any person or Entity who has filed Schedule 13D or Schedule

13G with the SEC since January 1st, 2008 with regard to the beneficial ownership of GM Stock;

and it appearing that no other or further notice need be provided; and a hearing having been held

to consider the relief requested in the Motion (the "Hearing"); and upon the record of the

Hearing and all of the proceedings had before the Court; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates, creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is:

FOUND that the Debtors' net operating loss carryforwards ("NOLs") and certain

other tax attributes, including their foreign tax credit and other excess credit carryforwards

(together with the NOLs, the "Tax Attributes") are property of the Debtors' estates and are

protected by section 362(a) of the Bankruptcy Code; and it is further

FOUND that unrestricted trading in GM Stock (as hereinafter defined) before the

Debtors' emergence from chapter 11 could severely limit the Debtors' ability to use the Tax

Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"), as

set forth in the Motion; and it is further

FOUND that the notification procedures and restrictions on certain transfers of

GM Stock are necessary and proper to preserve the Tax Attributes and are therefore in the best

interests of the Debtors, their estate, and their creditors; and it is further

FOUND that the relief requested in the Motion is authorized under sections

105(a) and 362 of the Bankruptcy Code.

THEREFORE, IT IS:

ORDERED that the Motion is granted as provided herein on an interim basis,

nunc pro tunc to the date on which the Debtors commenced their chapter 11 cases; and it is

further

ORDERED that until further order of this Court to the contrary, any acquisitions,

dispositions, or trading in violation of the restrictions set forth herein shall be null and void *ab

initio* as an act in violation of the automatic stay prescribed in section 362 of the Bankruptcy

Code and pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy

Code; and it is further

ORDERED that the following procedures and restrictions shall apply to trading in

GM Stock and are approved:

**(b)    *GM Stock Ownership, Acquisition, and Disposition***

(1)    <u>Notice of Substantial GM Stock Ownership</u>.    Any person or Entity (as such term is defined in section 382 of the Code, including persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition) that beneficially owns, at any time on or after the Motion Date, GM Stock in an amount sufficient to qualify such person

or Entity as a Substantial Equityholder (as hereinafter defined) shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for any statutory committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), a Notice of Substantial Stock Ownership (a "Substantial Ownership Notice"), in the form annexed hereto as Exhibit E, which describes specifically and in detail the GM Stock ownership of such person or Entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Interim Order or the Final Order, as applicable, and (b) ten (10) days after that person or Entity qualifies as a Substantial Equityholder.   At the holder's election, the Substantial Ownership Notice to be filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns.

(2)    Acquisition of GM Stock or Options.   At least fifteen (15) business days prior to the proposed date of any transfer of equity securities (including Options, as hereinafter defined, to acquire such securities) that would result in an increase in the amount of GM Stock beneficially owned by any person or Entity that currently is or subsequently becomes a Substantial Equityholder or that would result in a person or Entity becoming a Substantial Equityholder (a "Proposed Equity Acquisition Transaction"), such person, Entity or Substantial Equityholder (a "Proposed Equity Transferee") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate GM Stock (an "Equity Acquisition Notice"), in the form annexed hereto as Exhibit F, which describes specifically and in detail the proposed transaction in which GM Stock is to be acquired.   At the holder's election, the Equity Acquisition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to purchase or otherwise acquire.

(3)    Disposition of GM Stock or Options.   At least fifteen (15) business days prior to the proposed date of any transfer or other disposition of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of GM Stock beneficially owned by a Substantial Equityholder or that would result in a person or Entity ceasing to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction," and together with a Proposed Equity Acquisition Transaction, a "Proposed Equity Transaction"), such person, Entity, or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and

the attorneys for the Creditors' Committee, a Notice of Intent to Sell, Trade, or Otherwise Transfer GM Stock (an "Equity Disposition Notice," and together with an Equity Acquisition Notice, an "Equity Trading Notice"), in the form annexed hereto as Exhibit G, which describes specifically and in detail the proposed transaction in which GM Stock would be transferred.   At the holder's election, the Equity Disposition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4)    Objection Procedures.   The Debtors and the Creditors' Committee shall have ten (10) business days after the filing of an Equity Trading Notice (the "Equity Objection Deadline") to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of equity securities (including Options to acquire such securities) described in such Equity Trading Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

    (i)    If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

    (ii)    If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and the Creditors' Committee provide written authorization to the Proposed Equity Transferee or the Proposed Equity Transferor, as the case may be, approving the Proposed Equity Transaction, prior to the Equity Objection Deadline, then such Proposed Equity Transaction may proceed solely as specifically described in the Equity Trading Notice.   Any further Proposed Equity Transaction must be the subject of additional notices as set forth herein with an additional fifteen (15) business day waiting period.

(5)    Unauthorized Transactions in GM Stock or Options.   Effective as of the date of the filing of this Motion and until further order of the Court to the contrary, any acquisition, disposition or other transfer of equity securities (including Options to acquire such securities) of the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

(6)    Definitions.    For purposes of this Motion and the Order, the following
terms have the following meanings:

(i)    Substantial Equityholder.    A "Substantial Equityholder" is any
person or Entity that beneficially owns at least 27,000,000 shares
of GM's common stock ("GM Common Stock") (representing
approximately 4.5% of all issued and outstanding shares of GM's
common stock).

(ii)    Beneficial Ownership.    "Beneficial ownership" (or any variation
thereof of GM Stock and Options to acquire GM Stock) shall be
determined in accordance with applicable rules under section 382
of the Tax Code, the U.S. Department of Treasury regulations
("Treasury Regulations") promulgated thereunder and rulings
issued by the Internal Revenue Service, and, thus, to the extent
provided in those rules, from time to time shall include, without
limitation, (A) direct and indirect ownership (*e.g.*, a holding
company would be considered to beneficially own all stock owned
or acquired by its subsidiaries), (B) ownership by a holder's family
members and any group of persons acting pursuant to a formal or
informal understanding to make a coordinated acquisition of stock,
and (C) in certain cases, the ownership of an Option to acquire GM
Stock.

(iii)    Option.    An "Option" to acquire stock includes any contingent
purchase, warrant, convertible debt, put, stock subject to risk of
forfeiture, contract to acquire stock, or similar interest regardless
of whether it is contingent or otherwise not currently exercisable;
and

(iv)    GM Stock.    "GM Stock" shall mean GM Common Stock.    For
the avoidance of doubt, by operation of the definition of beneficial
ownership, an owner of an Option to acquire GM Stock may be
treated as the owner of such GM Stock.

*(c)*    ***Noncompliance with the Trading Procedures.***

Any purchase, sale, or other transfer of equity securities in the Debtors in
violation of the procedures set forth herein shall be null and void *ab initio* and
shall confer no rights on the transferee.

*(d)*    ***Debtors' Right to Waive.***

The Debtors may waive, in writing, any and all restrictions, stays, and notification
procedures contained in this Interim Order, provided that pending and after the
363 Transaction, the Debtors shall not grant any waiver without the written
consent of New GM, which consent shall not be unreasonably withheld.

and it is further;

ORDERED that any person or Entity acquiring and/or disposing of GM Stock in violation of the restrictions set forth herein, or failing to comply with the "Notice of Substantial Stock Ownership," "Equity Acquisition Notice," "Equity Disposition Notice" requirements, as may be the case, shall be subject to such sanctions as the Court may consider appropriate pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code; and it is further

ORDERED that the notices substantially in the form annexed to the Motion as Exhibit E, Exhibit F, and Exhibit G are approved; and it is further

ORDERED that nothing in this Interim Order shall preclude any party-in-interest from seeking appropriate relief from the provisions of this Interim Order; and it is further

ORDERED that the Debtors shall use reasonable efforts to publish on the Bloomberg newswire service a notice informing potential purchasers that GM Stock is subject to the provisions of this Interim Order; and it is further

ORDERED that within three (3) business days of the entry of this Interim Order, the Debtors shall serve notice of the entry of this Interim Order substantially in the form annexed to the Motion as Exhibit A describing the authorized trading restrictions and notification requirements (the "Interim Procedures Notice") and this Interim Order to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for EDC; (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis), (vii) the attorneys for the International

Union, United Automobile, Aerospace and Agricultural Implement Workers of America,

(viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and

Furniture Workers—Communications Workers of America, (ix) the United States Department of

Labor, (x) the attorneys for the National Automobile Dealers Association, (xi) the attorneys for

the ad hoc bondholders committee, (xii) any record-holder listed with the transfer agent for GM

Stock, and (xiii) any person or Entity who has filed Schedule 13D or Schedule 13G with the SEC

since January 1st, 2008 with regard to the beneficial ownership of GM Stock.   Within three (3)

business days of receipt of the Interim Procedures Notice and Interim Order, any nominee

holders shall either provide the Debtors' notice and claims agent, The Garden City Group, Inc.,

with the last known names and addresses of their clients who are beneficial owners of GM Stock

(who will in turn mail the Interim Procedures Notice and Interim Order to the beneficial owners

so identified), or send the Interim Procedures Notice and Interim Order to all beneficial holders

of GM Stock known to the nominee holder; and it is further

ORDERED that the Debtors shall post the Interim Procedures Notice on the

website of its notice and claims agent, The Garden City Group, Inc., at

http://www.gmcourtdocs.com. Additionally, the Debtors shall submit a notice of the entry of this

Interim Order for publication on the Bloomberg newswire service and arrange for publication of

such notice in the national editions of *The Wall Street Journal* and *The New York Times*; and it is

further

ORDERED that nothing herein shall preclude any person or Entity desirous of

purchasing or transferring any interest from requesting relief from this Interim Order in this

Court subject to the Debtors' rights to oppose such relief; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that any objection to the relief requested in the Motion must, by 5:00 p.m. (prevailing Eastern Time) seven (7) business days prior to the date of the hearing to consider to consider, on a final basis, the relief requested in the Motion (the "Objection Deadline"), be: (i) filed with the Court, One Bowling Green, New York, New York, and (ii) actually received by (a) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (Attn:   Lawrence S. Buonomo, Esq.); (b) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn:   Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (c) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn:   Matthew Feldman, Esq.); (d) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn:   John J. Rapisardi, Esq.); (e) the attorneys for the Creditors Committee; (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn:   Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee for the Southern District of New York (Attn:   Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; and it is further

ORDERED that if timely Objections are received there shall be a hearing held on _____, 2009 at 10:00 a.m. to consider, on a final basis, the relief requested in the Motion; and it is further

ORDERED that if no Objections are timely filed, served, and received in accordance with this Interim Order, the Debtors shall submit to the Court a final order granting the relief requested in the Motion; and it is further

ORDERED that the requirements set forth in this Interim Order are in addition to the requirements of Bankruptcy Rule 3001(e), applicable securities, corporate, and other laws, and do not excuse compliance therewith; and it is further

ORDERED that the relief granted in this Interim Order is intended solely to permit the Debtors to protect, preserve and maximize the value of its Tax Attributes. Accordingly, except to the extent the Interim Order expressly conditions or restricts trading in interests in the Debtors, nothing in this Interim Order or in the Motion shall or shall be deemed to prejudice, impair or otherwise alter or affect the rights of any holders of interests in the Debtors, including in connection with the treatment of any such interests under any plan of reorganization or any applicable bankruptcy court order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
       June ____, 2009

_____
United States Bankruptcy Judge

## Exhibit D

## Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                      :

In re                                :           **Chapter 11 Case No.**
                                        :

**GENERAL MOTORS CORP.,** *et al.*,   :          **09-_____ (___)**
                                        :

                     **Debtors.**      :          **(Jointly Administered)**
                                        :
-----------------------------------------------------------------x

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362 ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF INTERESTS IN THE DEBTORS' ESTATES

Upon the Motion, dated June 1, 2009 (the "Motion"),[1] of General Motors

Corporation and certain of its subsidiaries, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 362 and 105(a) of

title 11, United States Code (the "Bankruptcy Code"), for entry of a final order (the "Final

Order") to (i) establish notification procedures and approve restrictions on certain transfers of

interests in the Debtors' estates, as more fully described in the Motion, and (ii) schedule a final

hearing; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy

Judges for the Southern District of New York of Any and All Proceedings Under Title 11, dated

July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

having been provided to (i) the Office of the United States Trustee for the Southern District of

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for EDC; (iv) the attorneys

for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent

under GM's prepetition amended and restated secured revolving credit agreement, (vi) the

holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis),

(vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America, (viii) the attorneys for the International Union of Electronic,

Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America,

(ix) the United States Department of Labor, (x) the attorneys for the National Automobile

Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) any transfer

agent(s) for GM Stock, and (xiii) any person or Entity who has filed Schedule 13D or Schedule

13G with the SEC since January 1st, 2008 with regard to the beneficial ownership of GM Stock;

and it appearing that no other or further notice need be provided; and a hearing having been held

to consider the relief requested in the Motion (the "Hearing"); and upon the record of the

Hearing and all of the proceedings had before the Court; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

estates, creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is:

FOUND that the Debtors' net operating loss carryforwards ("NOLs") and certain

other tax attributes, including their foreign tax credit and other excess credit carryforwards

(together with the NOLs, the "Tax Attributes") are property of the Debtors' estates and are

protected by section 362(a) of the Bankruptcy Code; and it is further

FOUND that unrestricted trading in GM Stock (as hereinafter defined) before the Debtors' emergence from chapter 11 could severely limit the Debtors' ability to use the Tax Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"), as set forth in the Motion; and it is further

FOUND that the notification procedures and restrictions on certain transfers of GM Stock are necessary and proper to preserve the Tax Attributes and are therefore in the best interests of the Debtors, their estates, and their creditors; and it is further

FOUND that the relief requested in the Motion is authorized under sections 105(a) and 362 of the Bankruptcy Code; and it is further

FOUND that on _____, the Court signed an Interim Order pursuant to sections 362 and 105(a) of the Bankruptcy Code (i) establishing notification procedures and approving restrictions on certain transfers of interests in the Debtors' estates, and (ii) scheduling a final hearing.   This Final Order will supersede the Interim Order.

THEREFORE, IT IS:

ORDERED that the Motion is granted as provided herein on a final basis; and it is further

ORDERED that the provisions of this Final Order shall be effective, nunc pro tunc, to the date on which the Debtors commenced their chapter 11 cases; and it is further

ORDERED that all objections to the Motion not previously withdrawn are overruled; and it is further

ORDERED that any acquisition or disposition of GM Stock in violation of the restrictions set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay prescribed in section 362 of the Bankruptcy Code and pursuant to this Court's equitable

power prescribed in section 105(a) of the Bankruptcy Code.   For purposes of this Final Order,

any trades made before the entry of the Interim Order shall not be subject to this Final Order; and

it is further

ORDERED that the following procedures and restrictions shall apply to trading in

GM Stock and are approved:

  *(a)*   *GM Stock Ownership, Acquisition, and Disposition*

   (1)   <u>Notice of Substantial GM Stock Ownership</u>.   Any person or Entity (as such term is defined in section 382 of the Code, including persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition) that beneficially owns, at any time on or after the Motion Date, GM Stock in an amount sufficient to qualify such person or Entity as a Substantial Equityholder (as hereinafter defined) shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for any statutory committee of unsecured creditors appointed in these cases (the "<u>Creditors' Committee</u>"), a Notice of Substantial Stock Ownership (a "<u>Substantial Ownership Notice</u>"), in the form annexed hereto as <u>Exhibit E</u>, which describes specifically and in detail the GM Stock ownership of such person or Entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Interim Order or the Final Order, as applicable, and (b) ten (10) days after that person or Entity qualifies as a Substantial Equityholder.   At the holder's election, the Substantial Ownership Notice to be filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns.

   (2)   <u>Acquisition of GM Stock or Options</u>.   At least fifteen (15) business days prior to the proposed date of any transfer of equity securities (including Options, as hereinafter defined, to acquire such securities) that would result in an increase in the amount of GM Stock beneficially owned by any person or Entity that currently is or subsequently becomes a Substantial Equityholder or that would result in a person or Entity becoming a Substantial Equityholder (a "<u>Proposed Equity Acquisition Transaction</u>"), such person, Entity or Substantial Equityholder (a "<u>Proposed Equity Transferee</u>") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate GM Stock (an "<u>Equity Acquisition Notice</u>"), in the form annexed hereto as <u>Exhibit F</u>, which describes specifically and in detail the proposed transaction in which GM Stock is to be acquired.   At

the holder's election, the Equity Acquisition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to purchase or otherwise acquire.

(3)     Disposition of GM Stock or Options.   At least fifteen (15) business days prior to the proposed date of any transfer or other disposition of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of GM Stock beneficially owned by a Substantial Equityholder or that would result in a person or Entity ceasing to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction," and together with a Proposed Equity Acquisition Transaction, a "Proposed Equity Transaction"), such person, Entity, or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Sell, Trade, or Otherwise Transfer GM Stock (an "Equity Disposition Notice," and together with an Equity Acquisition Notice, an "Equity Trading Notice"), in the form annexed hereto as Exhibit G, which describes specifically and in detail the proposed transaction in which GM Stock would be transferred.   At the holder's election, the Equity Disposition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4)     Objection Procedures.   The Debtors and the Creditors' Committee shall have ten (10) business days after the filing of an Equity Trading Notice (the "Equity Objection Deadline") to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of equity securities (including Options to acquire such securities) described in such Equity Trading Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

(i)     If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

(ii)    If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and

the Creditors' Committee provide written authorization to the Proposed Equity Transferee or the Proposed Equity Transferor, as the case may be, approving the Proposed Equity Transaction, prior to the Equity Objection Deadline, then such Proposed Equity Transaction may proceed solely as specifically described in the Equity Trading Notice.   Any further Proposed Equity Transaction must be the subject of additional notices as set forth herein with an additional fifteen (15) business day waiting period.

(5)     <u>Unauthorized Transactions in GM Stock or Options</u>.   Effective as of the date of the filing of this Motion and until further order of the Court to the contrary, any acquisition, disposition or other transfer of equity securities (including Options to acquire such securities) of the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

(6)     <u>Definitions</u>.   For purposes of this Motion and the Order, the following terms have the following meanings:

(i)     <u>Substantial Equityholder</u>.   A "Substantial Equityholder" is any person or Entity that beneficially owns at least 27,000,000 shares of GM's common stock ("<u>GM Common Stock</u>") (representing approximately 4.5% of all issued and outstanding shares of GM's common stock).

(ii)    <u>Beneficial Ownership.</u>   "Beneficial ownership" (or any variation thereof of GM Stock and Options to acquire GM Stock) shall be determined in accordance with applicable rules under section 382 of the Tax Code, the U.S. Department of Treasury regulations ("<u>Treasury Regulations</u>") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock, and (C) in certain cases, the ownership of an Option to acquire GM Stock.

(iii)   <u>Option</u>.   An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest regardless of whether it is contingent or otherwise not currently exercisable; and

      (iv)    <u>GM Stock</u>. "GM Stock" shall mean GM Common Stock. For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire GM Stock may be treated as the owner of such GM Stock.

and it is further;

**(b)**    ***Noncompliance with the Trading Procedures.***

Any purchase, sale, or other transfer of equity securities in the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* and shall confer no rights on the transferee.

**(c)**    ***Debtors' Right to Waive.***

The Debtors may waive, in writing, any and all restrictions, stays, and notification procedures contained in this Final Order, provided that pending and after the 363 Transaction, the Debtors shall not grant any waiver without the written consent of New GM, which consent shall not be unreasonably withheld.

and it is further;

ORDERED that any person or Entity acquiring and/or disposing of GM Stock in violation of the restrictions set forth herein, or failing to comply with the "Notice of Substantial Stock Ownership," "Equity Acquisition Notice," and "Equity Disposition Notice" requirements, as may be the case, shall be subject to such sanctions as the Court may consider appropriate pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code; and it is further

ORDERED that the notices substantially in the form annexed to the Motion as <u>Exhibit E</u>, <u>Exhibit F</u>, and <u>Exhibit G</u> are approved; and it is further

ORDERED that nothing in this Final Order shall preclude any party-in-interest from seeking appropriate relief from the provisions of this Final Order; and it is further

ORDERED that the Debtors shall use reasonable efforts to publish on the Bloomberg newswire service a notice informing potential purchasers that GM Stock is subject to the provisions of this Final Order; and it is further

ORDERED that within three (3) business days of the entry of this Final Order, the

Debtors shall serve notice of the entry of this Final Order substantially in the form annexed to the

Motion as <u>Exhibit B</u> describing the authorized trading restrictions and notification requirements

(the "<u>Final Procedures Notice</u>") and this Final Order to (i) the Office of the United States Trustee

for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys

for EDC; (iv) the attorneys for the agent under GM's prepetition secured term loan agreement,

(v) the attorneys for the agent under GM's prepetition amended and restated secured revolving

credit agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors (on a

consolidated basis), (vii) the attorneys for the International Union, United Automobile,

Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the

International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—

Communications Workers of America, (ix) the United States Department of Labor, (x) the

attorneys for the National Automobile Dealers Association, and (xi) the attorneys for the ad hoc

bondholders committee, (xii) any record-holder listed with the transfer agent for GM Stock, and

(xiii) any person or Entity who has filed Schedule 13D or Schedule 13G with the SEC since

January 1st, 2008 with regard to the beneficial ownership of GM Stock (collectively, the "<u>Notice</u>

<u>Parties</u>").   Within three (3) business days of receipt of the Final Procedures Notice and Final

Order, any nominee holders shall either provide the Debtors' notice and claims agent, The

Garden City Group, Inc., with the last known names and addresses of their clients who are

beneficial owners of GM Stock (who will in turn mail the Final Procedures Notice and Final

Order to the beneficial owners so identified), or send the Final Procedures Notice and Final

Order to all beneficial holders of GM Stock known to the nominee holder; and it is further

ORDERED that the Debtors shall post the Final Procedures Notice on the website of its notice and claims agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com. Additionally, the Debtors will submit a notice of the entry of this Final Order for publication on the Bloomberg newswire service and arrange for publication of such notice in the national editions of *The Wall Street Journal* and *The New York Times*; and it is further

ORDERED that nothing herein shall preclude any person or Entity desirous of purchasing or transferring any interest from requesting relief from this Final Order in this Court subject to the Debtors' rights to oppose such relief; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion; and it is further

ORDERED that the requirements set forth in this Final Order are in addition to the requirements of Bankruptcy Rule 3001(e), applicable securities, corporate, and other laws, and do not excuse compliance therewith; and it is further

ORDERED that the relief granted in this Final Order is intended solely to permit the Debtors to protect, preserve and maximize the value of its NOLs and certain other tax attributes.   Accordingly, except to the extent the Final Order expressly conditions or restricts trading in interests in the Debtors, nothing in this Final Order or in the Motion shall or shall be deemed to prejudice, impair or otherwise alter or affect the rights of any holders of interests in the Debtors, including in connection with the treatment of any such interests under any plan of reorganization or any applicable bankruptcy court order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
_____, 2009

_____
United States Bankruptcy Judge

**<u>Exhibit E</u>**

**<u>Notice of Substantial Stock Ownership</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                     :

In re                                 :         **Chapter 11 Case No.**
                                       :

**GENERAL MOTORS CORP.,** *et al.*,    :         **09-_____ (____)**
                                       :

               **Debtors.**        :         **(Jointly Administered)**
                                       :
------------------------------------------------------------------x

## NOTICE OF SUBSTANTIAL STOCK OWNERSHIP

PLEASE TAKE NOTICE THAT [Name of Shareholder] (the "Filer") hereby provides notice (the "Notice"), that, as of [Date], [Name of Shareholder] beneficially owns _____ shares of General Motors Corporation ("GM") common stock (the "GM Common Stock"), and/or Options to acquire _____ shares of GM Common Stock, which represents ___% of the total amount of the GM Common Stock currently outstanding.

PLEASE TAKE FURTHER NOTICE THAT the taxpayer identification number of [Name of Shareholder] is _____.

PLEASE TAKE FURTHER NOTICE THAT the following table sets forth the following information:

1.    In the case of shares of GM Common Stock and/or Options to acquire GM Common Stock that are owned directly by the Filer, the table below sets forth (i) the number of such shares and/or Options; and (ii) the date(s) on which such shares and/or Options were acquired.

2.    In the case of shares of GM Common Stock and/or Options to acquire GM Common Stock that are not owned directly by the Filer but are nonetheless beneficially owned by the Filer, the table below sets forth (i) the name(s) of each record or legal owner of such shares and/or Options beneficially owned by the Filer, (ii) the number of such shares and/or Options; and (iii) the date(s) on which such shares and/or Options were acquired.

| *Name of Owner* | *Number of Shares of GM Common Stock Owned* | *Number of Shares subject to Options Owned* | *Date(s) Acquired* |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, [Name of Shareholder] hereby declares that it has examined this Notice and accompanying attachments (if

any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order,[1] this Notice is being filed with the Court and served upon the Debtors, the attorneys for the Debtors and the attorneys for the Creditors' Committee.

For purposes of this Notice, (i) "beneficial ownership" (or any variation thereof of GM Common Stock and Options to acquire GM Common Stock) shall be determined in accordance with applicable rules under section 382 of Internal Revenue Code of 1986, as amended, the U.S. Department of Treasury regulations ("Treasury Regulations") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock and (C) in certain cases, the ownership of an Option (as defined below) to acquire GM Common Stock; and (ii) an "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

[IF APPLICABLE] I am represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____
(Name of Shareholder)

By:_____
    Name:_____
    Title:_____

Address:_____

_____

Telephone:_____
Facsimile:_____

Date: _____

---

[1] All terms not expressly defined in this Notice shall be construed to have the same meaning as such terms have in the Order.

## **Exhibit F**

## **Equity Acquisition Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **GENERAL MOTORS CORP.,** *et al.*, | : | **09-_____ (___)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## NOTICE OF INTENT TO PURCHASE, ACQUIRE
## OR OTHERWISE ACCUMULATE GM STOCK

PLEASE TAKE NOTICE THAT [Name of Prospective Acquirer] (the "Filer") hereby provides notice (the "Notice") of (i) its intention to purchase, acquire or otherwise accumulate directly one or more shares of General Motors Corporation ("GM") common stock ("GM Common Stock") and/or Options (as defined below) to acquire shares of GM Common Stock and/or (ii) a proposed purchase or acquisition of shares of GM Common Stock and/or Options to acquire GM Common Stock that would result in an increase in the number of shares of GM Common Stock or Options to acquire GM Common Stock that are beneficially owned (as defined below) by the Filer (any proposed transaction described in (i) or (ii), a "Proposed Transfer").

PLEASE TAKE FURTHER NOTICE THAT the following table sets forth the following information:

1.    If the Proposed Transfer is directly by the Filer of shares of GM Common Stock and/or Options to acquire GM Common Stock, the table below sets forth (i) the number of shares of GM Common Stock and/or Options to acquire GM Common Stock proposed to be purchased or acquired; and (ii) the date(s) of such Proposed Transfer.

2.    If the Proposed Transfer is by a person or Entity other than the Filer, but the Proposed Transfer nonetheless would increase the number of shares of GM Common Stock and/or Options to acquire GM Common Stock that are beneficially owned by the Filer, the table below sets forth (i) the name(s) of each such person or Entity; (ii) the number of shares and/or Options that is the subject of the Proposed Transfer to be so purchased or acquired; and (iii) the date(s) of such Proposed Transfer.

| Name of Acquirer | Number of Shares of GM Common Stock to be Transferred | Number of Shares Subject to Options to be Transferred | Date(s) of Proposed Transfer |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT the following table summarizes the Filer's beneficial ownership of GM Common Stock and/or Options to acquire GM Common Stock assuming the Proposed Transfer is approved and consummated as described above.  The table sets forth, as of immediately following the Proposed Transfer, (i) the number of Shares of GM Common Stock (or Options to acquire GM Common Stock) that would be owned <u>directly</u> by the Filer and (ii) in the case of any beneficial ownership by the Filer of shares and/or Options that would be owned by another person or Entity as record/legal owner, the name(s) of each prospective record/legal owner and the number of shares and/or Options that would be owned by each such record/legal owner:

| Name of Owner | Number of Shares of GM Common Stock to be Owned | Number of Shares subject to Options to be Owned |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT if the Proposed Transfer is directly by the Filer and such Proposed Transfer would result in (i) an increase in the beneficial ownership of shares of GM Common Stock and/or Options to acquire GM Common Stock by a person or Entity (other than the Filer) that currently is a Substantial Equityholder or (ii) a person or Entity (other than the Filer) becoming a Substantial Equityholder, the following table sets forth (i) the name of each such person or Entity; (ii) the number of shares of GM Common Stock and/or Options to acquire GM Common Stock that are beneficially owned by such person or Entity prior to the Proposed Transfer; and (iii) the number of shares of GM Common Stock and/or Options to acquire GM Common Stock that would be beneficially owned by such person or Entity immediately following the Proposed Transfer.

| Name of beneficial owner | Number of Shares/Options prior to Proposed Transfer | Number of Shares/Options following Proposed Transfer |
|---|---|---|
|  |  |  |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT the taxpayer identification number of the Filer is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, the Filer hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, this Notice is being filed with the Court[1] and served upon the Debtors and the attorneys for the Debtors.

PLEASE TAKE FURTHER NOTICE that the Debtors have **ten (10) business days** after the filing of this Notice to object to the Proposed Transfer described herein.   If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court.   If the Debtors do not object within such ten (1o) business day period, or if the Debtors provide written authorization approving the Proposed Transfer prior to the end of such ten (10) business day period, then such Proposed Transfer may proceed solely as specifically described in this Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions that may result in the Filer increasing its beneficial ownership of shares of GM Common Stock and/or Options to acquire GM Common Stock will each require an additional notice filed with the Court to be served in the same manner as this Notice.

For purposes of this Notice, (i) "beneficial ownership" (or any variation thereof of GM Common Stock and Options to acquire GM Common Stock) shall be determined in accordance with applicable rules under section 382 of Internal Revenue Code of 1986, as amended, the U.S. Department of Treasury regulations ("Treasury Regulations") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock and (C) in certain cases, the ownership of an Option (as defined below) to acquire GM Stock; (ii) an "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable, (iii) "Substantial Equityholder" means any person or Entity that beneficially owns a number of shares of Gm Common Stock representing 4.5% or more of all issued and outstanding shares GM Common Stock; and (iv) "Entity" has the meaning given to it in Treasury Regulations section 1.382-3(a) and shall include persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition.

---

[1]  All terms not expressly defined in this Notice shall be construed to have the same meaning as such terms have in the Order.

     [IF APPLICABLE] I am represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____

(Name of Prospective Acquirer)

By:_____
    Name:_____
    Title:_____

Address:_____
        _____
        _____
Telephone:_____
Facsimile:_____

Date: _____

**<u>Exhibit G</u>**

**<u>Equity Disposition Notice</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                             :

In re                           :         Chapter 11 Case No.
                             :

GENERAL MOTORS CORP., *et al.*,    :        09-_____ (___)
                             :

            Debtors.       :         (Jointly Administered)
                             :

------------------------------------------------------------------x

## NOTICE OF INTENT TO SELL, TRADE,
## OR OTHERWISE TRANSFER GM STOCK

PLEASE TAKE NOTICE THAT [Name of Prospective Seller] (the "Filer")
hereby provides notice (the "Notice") of (i) its intention to sell, trade or otherwise transfer
directly one or more shares of General Motors Corporation ("GM") common stock ("GM
Common Stock") and/or Options (as defined below) to acquire shares of GM Common Stock
and/or (ii) a proposed purchase or acquisition of shares of GM Common Stock and/or Options to
acquire GM Common Stock that would result in an decrease in the number of shares of GM
Common Stock or Options to acquire GM Common Stock that are beneficially owned (as
defined below) by the Filer (any proposed transaction described in (i) or (ii), a "Proposed
Transfer").

PLEASE TAKE FURTHER NOTICE THAT the following table sets forth the
following information:

1.    If the Proposed Transfer is directly by the Filer, the table below sets forth (i)
the number of shares of GM Common Stock and/or Options to acquire GM Common Stock
proposed to be sold or transferred; and (ii) the date(s) of such Proposed Transfer.

2.    If the Proposed Transfer is by a person or Entity other than the Filer, but the
Proposed Transfer nonetheless would decrease the number of shares of GM Common Stock
and/or Options to acquire GM Common Stock that are beneficially owned by the Filer, the table
below sets forth (i) the name(s) of each such person or Entity; (ii) the number of shares and/or
Options that are the subject of the Proposed Transfer; and (iii) the date(s) of such Proposed
Transfer.

| Name of Transferor | Number of Shares of GM Common Stock to be Transferred | Number of Shares Subject to Options to be Transferred | Date(s) of Proposed Transfer |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT the following table summarizes the Filer's beneficial ownership of GM Common Stock and/or Options to acquire GM Common Stock assuming the Proposed Transfer is approved and consummated as described above.  The table sets forth, as of immediately following the Proposed Transfer, (i) the number of Shares of GM Common Stock (or Options to acquire GM Common Stock) that would be owned <u>directly</u> by the Filer and (ii) in the case of any beneficial ownership by the Filer of shares and/or Options that would be owned by another person or Entity as record/legal owner, the name(s) of each prospective record/legal owner and the number of shares and/or Options that would be owned by each such record/legal owner:

| Name of Owner | Number of Shares of GM Common Stock to be Owned | Number of Shares subject to Options to be Owned |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT if the Proposed Transfer is directly by the Filer and such Proposed Transfer would result in (i) a decrease in the beneficial ownership of shares of GM Common Stock and/or Options to acquire GM Common Stock by a person or Entity (other than the Filer) that currently is a Substantial Equityholder or (ii) a person or Entity (other than the Filer) ceasing to be a Substantial Equityholder, the following table sets forth (i) the name of each such person or Entity; (ii) the number of shares of GM Common Stock and/or Options to acquire GM Common Stock that are beneficially owned by such person or Entity prior to the Proposed Transfer; and (iii) the number of shares of GM Common Stock and/or Options to acquire GM Common Stock that would be beneficially owned by such person or Entity immediately following the Proposed Transfer.

| Name of beneficial owner | Number of Shares/Options prior to Proposed Transfer | Number of Shares/Options following Proposed Transfer |
|---|---|---|
|  |  |  |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE THAT the taxpayer identification number of the Filer is _____.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, the Filer hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, this Notice is being filed with the Court[1] and served upon the Debtors and the attorneys for the Debtors.

PLEASE TAKE FURTHER NOTICE that the Debtors have **ten (10) business days** after the filing of this Notice to object to the Proposed Transfer described herein. If the Debtors file an objection, such Proposed Transfer will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such ten (1o) business day period, or if the Debtors provide written authorization approving the Proposed Transfer prior to the end of such ten (10) business day period, then such Proposed Transfer may proceed solely as specifically described in this Notice.

PLEASE TAKE FURTHER NOTICE that any further transactions that may result in the Filer increasing its beneficial ownership of shares of GM Common Stock and/or Options to acquire GM Common Stock will each require an additional notice filed with the Court to be served in the same manner as this Notice.

For purposes of this Notice, (i) "beneficial ownership" (or any variation thereof of GM Common Stock and Options to acquire GM Common Stock) shall be determined in accordance with applicable rules under section 382 of Internal Revenue Code of 1986, as amended, the U.S. Department of Treasury regulations ("Treasury Regulations") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock and (C) in certain cases, the ownership of an Option (as defined below) to acquire GM Stock; (ii) an "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable, (iii) "Substantial Equityholder" means any person or Entity that beneficially owns a number of shares of GM Common Stock representing 4.5% or more of all issued and outstanding shares GM Common Stock; and (iv) "Entity" has the meaning given to it in Treasury Regulations section 1.382-3(a) and shall include persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition.

[IF APPLICABLE] I am represented by [name of the law firm], [address], [phone], (Attn: [name]).

Respectfully submitted,

_____
(Name of Filer)

---

[1] All terms not expressly defined in this Notice shall be construed to have the same meaning as such terms have in the Order.

By:_____

    Name:_____

    Title:_____

Address:_____

        _____

        _____

Telephone:_____

Facsimile:_____

Date: _____