<u>**EXHIBIT B**</u>

**SALE ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **GENERAL MOTORS CORP.,** *et al.,* | : | **09-_____ (___)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

## ORDER (I) AUTHORIZING SALE OF ASSETS PURSUANT TO MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (III) GRANTING RELATED RELIEF

Upon the motion, dated June 1, 2009 (the "Motion"), of General Motors

Corporation ("GM") and certain of its subsidiaries, as debtors in possession in the above-

captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 105, 363, and 365

of title 11, United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for, among other things, entry

of an order authorizing and approving (A) that certain Master Sale and Purchase Agreement,

dated as of June 1, 2009, by and among GM and its Debtor subsidiaries (collectively, the

"Sellers") and Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by

the United States Department of the Treasury (the "U.S. Treasury"), together with all related

documents and agreements as well as all exhibits, schedules, and addenda thereto (the "MPA"), a

copy of which is annexed hereto as Exhibit "A"; (B) the sale of the Purchased Assets[1] to the

Purchaser free and clear of liens, claims, encumbrances, and interests, including rights or claims

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion or the MPA.

based on any successor or transferee liability; (C) the assumption and assignment of the

Assumable Executory Contracts; (D) the establishment of certain Cure Amounts; and (E) the

UAW Retiree Settlement Agreement; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York of Any and

All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with this Court's Order,

dated June __, 2009 (the "Sale Procedures Order"), and it appearing that no other or further

notice need be provided; and a hearing having been held on June 30, 2009, to consider the relief

requested in the Motion (the "Sale Hearing"); and upon the Affidavit of Frederick A. Henderson

Pursuant to Local Bankruptcy Rule 1007-2 (the "Henderson Affidavit"), the record of the

Hearing, and all of the proceedings had before the Court; and the Court having reviewed the

Motion and any objections thereto (the "Objections") and found and determined that the relief

sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and

their estates, as contemplated by Bankruptcy Rule 6003 and is in the best interests of the

Debtors, their estates and creditors, and other parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

      FOUND AND DETERMINED THAT:

      A.      The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to

this proceeding pursuant to Fed. R. Bankr. P. 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    This Court has jurisdiction over the Motion, the MPA, and the 363 Transaction pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

D.    The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code as supplemented by Bankruptcy Rules 2002, 6004, and 6006.

E.    As evidenced by the affidavits and certificates of service and Publication Notice previously filed with the Court, in light of the exigent circumstances of these chapter 11 cases and the wasting nature of the Purchased Assets and based on the representations of counsel at the Sale Procedures Hearing and the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Procedures, the 363 Transaction, the Assumption and Assignment Procedures, the UAW Retiree Settlement Agreement, and the Sale Hearing have been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), and 6006(c) and in compliance with the Sale Procedures Order; (ii) such notice was good and sufficient, reasonable, and appropriate under the particular circumstances in these chapter 11 cases, and reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, about the Sale Procedures, the sale of the Purchased Assets, the 363 Transaction, and the assumption and assignment of the Assumable Executory Contracts, and to reach all UAW-Represented Retirees about the UAW Retiree Settlement Agreement and the assumption by GM of that certain Letter Agreement, dated May

29, 2009, between GM, the International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America (the "UAW") and Stember, Feinstein, Doyle & Payne, LLC (the

"UAW Claims Agreement") relating thereto; and (iii) no other or further notice of the Motion,

the 363 Transaction, the Sale Procedures, the Assumption and Assignment Procedures, the UAW

Retiree Settlement Agreement, the UAW Claims Agreement, and the Sale Hearing or any

matters in connection therewith is or shall be required.  With respect to parties who may have

claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors

(including, but not limited to, potential contingent warranty claims against the Debtors), the

Publication Notice was sufficient and reasonably calculated under the circumstances to reach

such parties.

    F.  As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the

Sale Hearing, in light of the exigent circumstances presented, (a) the Debtors have adequately

marketed the Purchased Assets and conducted the sale process in compliance with the Sale

Procedures Order; (b) a reasonable opportunity has been given to any interested party to make a

higher or better offer for the Purchased Assets; (c) the consideration provided for in the MPA

constitutes the highest or otherwise best offer for the Purchased Assets and provides fair and

reasonable consideration for the Purchased Assets; (d) the 363 Transaction will provide a greater

recover for the Debtors' creditors than would be provided by any other practical available

alternative, including liquidation under chapters 7 or 11 of the Bankruptcy Code; (e) no other

entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or

their estates; (f) the consideration to be paid by the Purchaser under the MPA exceeds the

liquidation value of the Purchased Assets; and (g) the Debtors' determination that the MPA

constitutes the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

G.      The actions represented to be taken by the Sellers and the Purchaser are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest.

H.      Approval of the MPA and consummation of the 363 Transaction at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

I.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets pursuant to the 363 Transaction prior to, and outside of, a plan of reorganization and for the immediate approval of the MPA and the 363 Transaction because, among other things, the Debtors' estates will suffer immediate and irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  In light of the exigent circumstances of these chapter 11 cases and the risk of deterioration in the going concern value of the Purchased Assets pending the 363 Transaction, time is of the essence in (i) consummating the 363 Transaction, (ii) preserving the viability of the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, their creditors, employees, the automotive industry, and the national economy that would be threatened by protracted proceedings in these chapter 11 cases.

J.      The consideration provided by the Purchaser pursuant to the MPA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery to the Debtors' estates than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

K.    The 363 Transaction must be approved and consummated as promptly as practicable in order to preserve the viability of the business to which the Purchased Assets relate as a going concern.

L.    In light of the extensive prepetition negotiations culminating in the MPA, the Purchaser's commitment to consummate the 363 Transaction is clear without the need to provide a good faith deposit.

M.    Each Debtor (i) has full corporate power and authority to execute the MPA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the MPA, (iii) has taken all corporate action necessary to authorize and approve the MPA and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the MPA which may be waived by the Purchaser, to consummate such transactions.

N.    The consummation of the 363 Transaction outside of a plan of reorganization pursuant to the MPA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The 363 Transaction does not constitute a sub rosa plan of reorganization.

O.    The MPA and the 363 Transaction were negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Sellers nor the Purchaser has engaged in any conduct that would cause or permit the MPA to be avoided under 11 U.S.C. § 363(n).

P.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

Q.      The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

R.      The Debtors, the Purchaser, and the UAW, as the exclusive collective bargaining representative of the Debtors' employees and the authorized representative of the UAW-Represented Retirees under section 1114(c) of the Bankruptcy Code, engaged in good faith negotiations in conjunction with the 363 Transaction regarding the funding of "retiree benefits" within the meaning of section 1114(a) of the Bankruptcy Code and related matters. Conditioned upon the consummation of the 363 Transaction and approval of the Bankruptcy Court, the Purchaser and the UAW have entered into that certain Retiree Settlement Agreement, dated _____, 2009 (the "UAW Retiree Settlement Agreement"), which resolves the ongoing provision of certain retiree benefits. Under the UAW Retiree Settlement Agreement, the Purchaser has agreed to make contributions of cash, stock, and warrants of New GM, as well as to transfer the assets of an existing voluntary employees' beneficiary association sponsored by GM and to be acquired by the Purchaser in the 363 Transaction, to a new voluntary employees' beneficiary association sponsored by the UAW (the "New VEBA"), which will have the obligation to fund certain health and welfare benefits for the Debtors' retirees and surviving spouses represented by the UAW (the "UAW-Represented Retirees"). GM and the UAW, as the authorized representative of the UAW-Represented Retirees, as well as the representatives for the class of plaintiffs in a certain class action against GM (the "Class Representatives"), through class counsel, Stemper, Feinstein, Doyle and Payne LLC ("Class Counsel"), negotiated in good faith the UAW Claims Agreement, which requires the UAW and the Class Representatives to take further actions to effectuate the extinguishment of certain claims against the Debtors, among

others, relating to retiree benefits in the event the 363 Transaction is consummated and the Bankruptcy Court approves, and the Purchaser becomes fully bound by, the UAW Retiree Settlement Agreement, subject to reinstatement of such claims to the extent of any adverse impact to the rights or benefits of UAW-Represented Retirees under the UAW Retiree Settlement Agreement resulting from any reversal or modification of the 363 Transaction, the UAW Retiree Settlement Agreement, or the approval of the Bankruptcy Court thereof.

S.      Concomitantly with the 363 Transaction, the Debtors will assume and assign to the Purchaser modified and duly ratified collective bargaining agreements entered into by and between the Debtors and the UAW (the "UAW CBA Assignment"). The Debtors, the Purchaser, the UAW and Class Representatives intend that their actions in connection with the UAW Retiree Settlement Agreement and related undertakings incorporate the compromise of certain claims and rights and shall be deemed to satisfy the requirements of 29 U.S.C. § 186(c)(2).

T.      The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the consummation of the Sale (the "Closing"), and (iii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first

refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor or transferee liability to the extent permitted by law.

U.    The Purchaser would not have entered into the MPA and would not consummate the 363 Transaction contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets to the Purchaser, the assignment of the Assumable Executory Contracts to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser were not, except as otherwise provided in the MPA, free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of such liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability.

V.    The Sellers may sell the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those (i) holders of liens, claims, encumbrances, and other interests, including rights or claims based on

any successor or transferee liability, and (ii) non-Debtor parties to the Assumable Executory

Contracts who did not object, or who withdrew their Objections, to the 363 Transaction or the

Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Those (i) holders of liens, claims, encumbrances, or other interests, including rights or claims

based on any successor or transferee liability, and (ii) non-Debtor parties to the Assumable

Executory Contracts who did object fall within one or more of the other subsections of section

363(f) of the Bankruptcy Code and are adequately protected by having their liens, claims,

encumbrances, and other interests, if any, including rights or claims based on any successor or

transferee liability, attach to the cash proceeds of the 363 Transaction ultimately attributable to

the property against or in which they claim a lien, claim, encumbrance, or other interest,

including rights or claims based on any successor or transferee liability.

       W.     Under the MPA, GM is transferring all title and interest in Memphis, TN

SPO Warehouse and White Marsh, MD Allison Transmission Plant (the "TPC Property") to the

Purchaser pursuant to section 363(f) of the Bankruptcy Code free and clear of all liens, claims,

encumbrances, and interests, including any liens on the TPC Property under the Tennessee

Master Lease and Open End Leasehold Deeds of Trust, dated as of November 18, 1999, between

General Motors Corporation and Wilmington Trust Company, not in its individual capacity but

solely as Owner Trustee under the Trust Agreement dated as of May 28, 1999 ("Wilmington

Trust Company") and the related agreements and the Maryland Master Lease and Mortgages,

dated as of September 8, 1999, between General Motors Corporation and Wilmington Trust

Company and the related agreements (the "TPC North Agreement"). The TPC North Agreement

is a secured financing, and Wilmington Trust Company shall be entitled to a lien equal to the

value of the TPC Property in the proceeds received by the Sellers under the 363 Transaction as

adequate protection under section 363(e) of the Bankruptcy Code. If the Debtors and

Wilmington Trust Company are unable to agree to the value of the TPC Property for the purpose of determining the amount of Wilmington Trust Company's secured claim, the Debtors or Wilmington Trust Company shall file a motion with this Court seeking a determination of the amount of Wilmington Trust Company's secured claim.

X.    The Purchaser would not have entered into the MPA and would not consummate the 363 Transaction if the sale of the Purchased Assets was not free and clear of all liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability other than Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (collectively, the "Retained Liabilities") that expressly are not assumed by the Purchaser, as set forth in the MPA. The Purchaser will not consummate the 363 Transaction unless this Court expressly orders that none of the Purchaser, its affiliates, their present or contemplated members or shareholders (other than the Debtors as the holder of equity in the Purchaser), or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability or Retained Liabilities.

Y.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumable Executory Contracts to the Purchaser in connection with the consummation of the 363 Transaction, and the assumption and assignment of the Assumable Executory Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assumable Executory Contracts being assigned to, and the liabilities being assumed by, the Purchaser are an integral part of the Purchased Assets

being purchased by the Purchaser, and, accordingly, such assumption and assignment of the

Assumable Executory Contracts and liabilities are reasonable, enhance the value of the Debtors'

estates, and do not constitute unfair discrimination

> Z.    For the avoidance of doubt, and notwithstanding anything else in this

Order to the contrary:

- The Debtors are neither assuming nor assigning to the Purchaser the agreement to provide certain retiree medical benefits specified in (i) the Memorandum of Understanding Post-Retirement Medical Care, dated September 26, 2007, between the Company and the UAW, and (ii) the Settlement Agreement, dated February 21, 2008, between the Company and the UAW;

- the Agreement between the UAW and General Motors Corporation, dated September 26, 2007 (effective October 15, 2007) (the "UAW CBA") shall be assumed by the Debtors and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code.  Assumption and assignment of the UAW CBA is integral to the 363 Transaction and the MPA, are in the best interests of the Debtors and their estates, creditors, employees, and retirees, and represent the exercise of the Debtors' sound business judgment;

- the UAW, as the exclusive collective bargaining representative of employees of the Purchaser and the "authorized representative" of the UAW-Represented Retirees under section 1114(c) of the Bankruptcy Code, GM, and the Purchaser engaged in good faith negotiations in conjunction with the 363 Transaction regarding the funding of retiree health benefits within the meaning of section 1114(a) of the Bankruptcy Code.  Conditioned upon the consummation of the 363 Transaction, the UAW and the Purchaser have entered into the UAW Retiree Settlement Agreement, which, among other things, provides for the financing by the Purchaser of modified retiree health care obligations for the Class and Covered Group (as defined in the UAW Retiree Settlement Agreement) through contributions by the Purchaser to the New VEBA (as defined in the UAW Retiree Settlement Agreement).  The Debtors, the Purchaser, and the UAW specifically intend that their actions in connection with the UAW Retiree Settlement Agreement and related undertakings incorporate the compromise of certain claims and rights and shall be deemed to satisfy the requirements of 29 U.S.C. § 186(c)(2);

- the Debtors' sponsorship of the Existing Internal VEBA (as defined in the UAW Retiree Settlement Agreement) shall be transferred to the Purchaser under the MPA.

AA.    The Debtors have (i) cured and/or provided adequate assurance of cure (through the Purchaser) of any default existing prior to the date hereof under any of the Assumable Executory Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumable Executory Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of future performance under the Assumable Executory Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.  The Assumption and Assignment Procedures are fair, appropriate, and effective and, upon the payment by the Purchaser of all Cure Amounts and approval of the assumption and assignment for a particular Assumable Executory Contract thereunder, the Debtors shall be forever released from any and all liability under the Assumable Executory Contract.

BB.    The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.  The Debtors' non-Debtor Affiliates have acknowledged and agreed to the 363 Transaction and, as required by, and in accordance with, the MPA and the Transition Services Agreement, transferred any legal, equitable, or beneficial right, title, or interest they may have in or to the Purchased Assets to the Purchaser.

CC.    The Debtors currently maintain certain privacy policies that govern the use of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) in conducting their business operations.  The 363 Transaction may contemplate the transfer of certain personally identifiable information to the Purchaser in a manner that may not be consistent with certain aspects of their existing privacy policies.  Accordingly, on June __, 2009,

the Court directed the U.S. Trustee to promptly appoint a consumer privacy ombudsman in

accordance with section 332 of the Bankruptcy Code, and such ombudsman was appointed on

June __, 2009. The Court has given due consideration to the facts, including the exigent

circumstances surrounding the conditions of the sale of personally identifiable information in

connection with the 363 Transaction. No showing has been made that the sale of personally

identifiable information in connection with the 363 Transaction violates applicable

nonbankruptcy law.

DD.     This Order constitutes approval, pursuant to Bankruptcy Rule 9019, of the

compromise and settlement embodied in the UAW Retiree Settlement Agreement, and such

compromise and settlement meets all of the requirements set forth in Bankruptcy Rule 9019.

EE.     This Order constitutes a final order within the meaning of 28 U.S.C.

§.158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds

that there is no just reason for delay in the implementation of this Order and expressly directs

entry of judgment as set forth herein.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

### General Provisions

1.     The Motion is granted in its entirety, and entry into and performance

under, and in respect of, the MPA and the 363 Transaction is approved, as further described

herein.

2.     All Objections to the Motion or the relief requested therein that have not

been withdrawn, waived, or settled, and all reservation of rights included in such Objections are

overruled on the merits.

**Approval of the MPA**

3.      The MPA, and all the terms and conditions thereof, is approved.

4.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the MPA and consummate the 363 Transaction pursuant to, and in accordance with, the terms and conditions of the MPA and this Order.

5.      The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the MPA, together with all additional instruments and documents that the Sellers or the Purchaser deem necessary or appropriate to implement the MPA and effectuate the 363 Transaction, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Purchased Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the MPA.

6.      This Order and the MPA shall be binding in all respects upon all known and unknown creditors of, and equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability, all non-Debtor parties to the Assumable Executory Contracts, all successors and assigns of the Purchaser, each Seller and their Affiliates and subsidiaries, the Purchased Assets, and any trustees appointed in the Debtors' chapter 11 cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the MPA or this Order.

## Transfer of Purchased Assets Free and Clear

7.        Except for the Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser in accordance with the MPA, and, upon the Closing, shall be, free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, and all such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, shall attach to the net proceeds of the 363 Transaction in the order of their priority, with the same validity, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses a Seller may possess with respect thereto.

8.        Except as expressly permitted or otherwise specifically provided by the MPA or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

9.    The transfer of the Purchased Assets to the Purchaser pursuant to the MPA constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, other than the Assumed Liabilities.

10.    On the Closing of the 363 Transaction, each of the Sellers' creditors and any other holder of a lien, claim, encumbrance, or other interest, including rights or claims based on any successor or transferee liability, is authorized and directed to execute such documents and take all other actions as may be necessary to release its lien, claim, encumbrance, or other interest in the Purchased Assets, if any, as such lien, claim, encumbrance, or other interest may have been recorded or may otherwise exist.

11.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a lien, claim, encumbrance, or other interest in the Sellers or the Purchased Assets shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens, claims, encumbrances, or other interests, which the person or entity has with respect to the Sellers or the Purchased Assets or otherwise, then (a) the Sellers are authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers or the Purchased Assets, and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever in the Sellers or the Purchased Assets.

12.      All persons or entities in possession of any of the Purchased Assets are directed to surrender possession of such Purchased Assets to the Purchaser or its respective designees at the time of Closing of the 363 Transaction.

13.      Following the Closing of the 363 Transaction, no holder of any lien, claim, encumbrance, or other interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any such lien, claim, encumbrance, or other interest, or based on any actions the Debtors may take in their chapter 11 cases.

14.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the MPA and this Order.

15.      To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the 363 Transaction contemplated by the MPA.

### Approval of the UAW Retiree Settlement Agreement

16.      The UAW Retiree Settlement Agreement, the transactions contemplated therein, and the terms and conditions thereof, are approved.  The Debtors, the Purchaser, and the UAW are authorized to perform their obligations under, or in connection with, the implementation of the UAW Retiree Settlement Agreement and comply with the terms of the UAW Retiree Settlement Agreement pursuant to, and in accordance with, the terms and conditions of the UAW Retiree Settlement Agreement and this Order, including the obligation of the Purchaser to reimburse the UAW for certain expenses relating to the 363 Transaction and the transition to the New VEBA arrangements.  The Trust Amendments are approved and the VEBA

Trust Agreement is reformed accordingly (as such terms are defined in the UAW Retiree Settlement Agreement)

17.     In accordance with the terms of the UAW Retiree Settlement Agreement, (a) as of the Closing, the requirement of Section 15 of the Settlement Agreement, dated July 31, 2008, in the class action styled *Int'l Union, UAW, et al. v. General Motors Corp.*, Civil Action No. 07-14074 (E.D. Mich. filed Sept. 9, 2007) to amend the General Motors Hourly-Rate Employees Pension Plan shall be terminated and void, and (b) on the later of December 31, 2009, or the Closing of the 363 Transaction, (i) the committee and the trustees of the Existing External VEBA (as hereinafter defined) are directed to transfer to the New VEBA all assets and liabilities of the voluntary employees' beneficiary association established pursuant to the settlement agreement in the class action styled *UAW et al. v. General Motors Corp.*, No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006), *aff'd, Int'l Union, UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) (the "Existing External VEBA") within fifteen (15) days thereafter, and coverage under the Existing External VEBA as to the Class and Covered Group (each as defined in the UAW Retiree Settlement Agreement) shall terminate upon the completion of such transfer, and (ii) all obligations and liabilities of the Purchaser relating to retiree medical benefits for the Class and Covered Group shall terminate, and the Purchaser shall not thereafter have any such obligations and liabilities, in each case as provided in and in accordance with Section 5(D) of the UAW Retiree Settlement Agreement.

## Approval of GM's Assumption of the UAW Claims Agreement

18.     Pursuant to section 365 of the Bankruptcy Code, GM's assumption of the UAW Claims Agreement is approved, and GM, the UAW, and the Class Representatives are authorized to perform their obligations under, or in connection with, the implementation of the UAW Claims Agreement and comply with the terms of the UAW Claims Agreement pursuant

to, and in accordance with, the terms and conditions of the UAW Claims Agreement and this

Order.

### Assumption and Assignment to the Purchaser of Assumable Executory Contracts

19.    Pursuant to sections 105(a), 363, and  365 of the Bankruptcy Code and

subject to and conditioned upon the Closing of the 363 Transaction, the Debtors' assumption and

assignment to the Purchaser of the Assumable Executory Contracts is approved, and the

requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed

satisfied.

20.    The Debtors are authorized and directed in accordance with sections

105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of

the Assumption Effective Date, as provided by, and in accordance with, the Sale Procedures

Order and the MPA, the Assumable Executory Contracts free and clear of all liens, claims,

encumbrances, or other interests of any kind or nature whatsoever, including rights or claims

based on any successor or transferee liability, other than the Assumed Liabilities, and (ii) execute

and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably

deems may be necessary to assign and transfer the Assumable Executory Contracts and Assumed

Liabilities to the Purchaser.

21.    The Assumable Executory Contracts shall be transferred and assigned to,

pursuant to the Sale Procedures Order and the MPA, and thereafter remain in full force and

effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assumable

Executory Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of

the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and,

pursuant to section 365(k) of the Bankruptcy Code.  The Sellers shall be relieved from any

further liability with respect to the Assumable Executory Contracts after such assumption and

assignment to the Purchaser.  Each Assumable Executory Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.  The Debtors may assume each of their respective Assumable Executory Contracts in accordance with section 365 of the Bankruptcy Code.  The Debtors may assign each Assumable Executory Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumable Executory Contract that prohibits or conditions the assignment of such Assumable Executory Contract or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumable Executory Contract, constitute unenforceable antiassignment provisions which are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assumable Executory Contract have been satisfied.  At such time as provided in the Sale Procedures Order and the MPA, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Purchased Contract.  Any portion of any of the Debtors' unexpired leases of nonresidential real property that purport to permit the respective landlords thereunder to cancel the remaining term of any such leases if the Sellers discontinue their use or operation of the Leased Real Property are void and of no force and effect and shall not be enforceable against the Purchaser, its assignees and sublessees, and the landlords under such leases shall not have the right to cancel or otherwise modify such leases or increase the rent, assert any Claim, or impose any penalty by reason of such discontinuation, the Sellers' cessation of operations, the assignment of such leases to the Purchaser, or the interruption of business activities at any of the leased premises.

22.    All undisputed defaults or other obligations of the Sellers under the Purchased Contracts arising or accruing prior to the Assumption Effective Date (without giving

effect to any acceleration clauses or any default provisions of the kind specified in section

365(b)(2) of the Bankruptcy Code) shall be cured at the Assumption Effective Date or as soon

thereafter as practicable by payment of the Cure Amounts (as hereinafter defined) by the

Purchaser, and upon paying such amounts the Purchaser shall have no further liability or

obligation arising or accruing prior to the date of the Closing, except for disputed Cure Amounts

and as otherwise expressly provided in the MPA.  The Database maintained by the Debtors with

respect to the Assumable Executory Contracts, which is referenced and is accessible as set forth

in the Assumption and Assignment Notice, reflects the sole amounts necessary under section

365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumable Executory

Contracts (the "Cure Amounts"), and no other amounts are or shall be due to the non-Debtor

parties in connection with the assumption by the Debtors and assignment to the Purchaser of the

Assumable Executory Contracts.

23.    Each non-Debtor party to an Assumable Executory Contract is forever

barred, estopped, and permanently enjoined from (a) asserting against the Debtors or the

Purchaser, their successors or assigns, or their respective property, any default arising prior to, or

existing as of, the Closing, or, against the Purchaser, any counterclaim, defense, setoff, or other

Claim asserted or assertable against the Sellers and (ii) imposing or charging against the

Purchaser or its Affiliates any rent accelerations, assignment fees, increases, or any other fees as

a result of the Sellers' assumption and assignment to the Purchaser of the Assumable Executory

Contracts.  The validity of such assumption and assignment of the Assumable Executory

Contracts shall not be affected by any dispute between the Sellers and any non-Debtor party to

an Assumable Executory Contract.

24.    Except as provided in the MPA or this Order, after the Closing, the

Debtors and their estates shall have no further liabilities or obligations with respect to any

Assumed Liabilities other than certain Cure Amounts as provided in the MPA, and all holders of

such Claims are forever barred and estopped from asserting such Claims against the Debtors,

their successors or assigns, and their estates.

25.    The failure of the Sellers or the Purchaser to enforce at any time one or

more terms or conditions of any Assumable Executory Contract shall not be a waiver of such

terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and

condition of the Assumable Executory Contracts.

26.    The assignments of each of the Assumable Executory Contracts are made

in good faith under sections 363(b) and (m) of the Bankruptcy Code.

### Additional Provisions

27.    Except for the Assumed Liabilities expressly set forth in the APA, none of

the Purchaser, its successors or assigns, or any of their respective affiliates shall have any

liability for any Claim that arose prior to the Closing Date, relates to the production of vehicles

prior to the Closing Date, or otherwise is assertable against the Debtors or is related to the

Purchased Assets prior to the Closing Date.  The Purchaser shall not be deemed, as a result of

any action taken in connection with the MPA or any of the transactions or documents ancillary

thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to:

(i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with

respect to any obligations arising under the Purchased Agreements from and after the Closing);

(ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation

or substantial continuation of the Debtors or the enterprise of the Debtors.  Without limiting the

foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious

liabilities of any kind or character for any Claims, including, but not limited to, under any theory

of successor or transferee liability, de facto merger or continuity, environmental, labor and

employment, and products or antitrust liability, whether known or unknown as of the Closing,

now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or

unliquidated.

28.    Effective upon the Closing and except as otherwise provided by

stipulation filed with or announced to the Court with respect to a specific matter, all persons and

entities are forever prohibited and enjoined from commencing or continuing in any manner any

action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or

other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with

respect to any (i) Claim other than Assumed Liabilities, or (ii) successor or transferee liability of

the Purchaser for any of the Debtors, including, without limitation, the following actions:  (a)

commencing or continuing any action or other proceeding pending or threatened against the

Debtors as against the Purchaser, or its successors, assigns, affiliates, or their respective assets,

including the Purchased Assets; (b) enforcing, attaching, collecting, or recovering in any manner

any judgment, award, decree, or order against the Debtors as against the Purchaser, its

successors, assigns, affiliates, or their respective assets, including the Purchased Assets; (c)

creating, perfecting, or enforcing any lien, claim, interest, or encumbrance against the Debtors as

against the Purchaser or its successors, assigns, affiliates, or their respective assets, including the

Purchased Assets; (d) asserting any setoff, right of subrogation, or recoupment of any kind for

any obligation of any of the Debtors as against any obligation due the Purchaser or its

successors, assigns, affiliates, or their respective assets, including the Purchased Assets; (e)

commencing or continuing any action, in any manner or place, that does not comply, or is

inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or

actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or

refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets.

29.    Except for the Assumed Liabilities, or as expressly permitted or otherwise specifically provided for in the MPA or this Order, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Sellers arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in this Order and the MPA, the Purchaser shall not be liable for any Claims against the Sellers or any of their predecessors or Affiliates, and the Purchaser shall have no successor, transferee, or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Sellers or any obligations of the Sellers arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing.  The Purchaser has given substantial consideration under the MPA for the benefit of the holders of liens, claims, encumbrances, or other interests.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders liens, claims, encumbrances or other interests against the Sellers or their respective assets.

30.    The consideration provided by the Purchaser for the Purchased Assets under the MPA shall be deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

31.    The consideration provided by the Purchaser for the Purchased Assets under the MPA is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

32.    If there is an Agreed G Transaction (determined no later than the due date, with extensions, of GM's tax return for the taxable year in which the 363 Transaction occurs), (i) the MPA shall, and hereby does, constitute a "plan" of GM and the Purchaser solely for purposes of sections 368 and 354 of the Tax Code, and (ii) the 363 Transaction, as set forth in the MPA, and the subsequent liquidation of the Sellers, are intended to constitute a tax reorganization of GM pursuant to section 368(a)(1)(G) of the Tax Code.

33.    This Order (a) shall be effective as a determination that, except for the Assumed Liabilities, at Closing, all liens, claims, encumbrances, and other interests of any kind or nature whatsoever existing as to the Sellers with respect to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated, and that the conveyances described in this Order have been effected, and (b) shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

34.    Each and every federal, state, and local governmental agency or
department is authorized to accept any and all documents and instruments necessary and
appropriate to consummate the transactions contemplated by the MPA.

35.    Any amounts that become payable by the Sellers to the Purchaser pursuant
to the MPA (and related agreements executed in connection therewith, including, but not limited
to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative
expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code
and (b) be paid by the Debtors in the time and manner provided for in the MPA without further
Court order.

36.    The transactions contemplated by the MPA are undertaken by the
Purchaser without collusion and in good faith, as that term is used in section 363(m) of the
Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization
provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363
Transaction (including the assumption and assignment of any of the Assumable Executory
Contracts), unless such authorization is duly stayed pending such appeal.  The Purchaser is a
purchaser in good faith of the Purchased Assets and is entitled to all the protections afforded by
section 363(m) of the Bankruptcy Code.

37.    Subject to further Court order and consistent with the terms of the MPA
and the Transition Services Agreement, the Debtors and the Purchaser are authorized to, and
shall, take appropriate measures to maintain and preserve, until the consummation of any chapter
11 plan for the Debtors, (a) the books, records, and any other documentation, including tapes or
other audio or digital recordings and data in, or retrievable from, computers or servers relating to
or reflecting the records held by the Debtors or their affiliates relating to the Debtors' business,
and (b) the cash management system maintained by the Debtors prior to the Closing pursuant to

the order of the Court entered on June ___, 2009 (Docket No. ____), as such system may be necessary to effect the orderly administration of the Debtors' estates.

38.    Nothing in this Order or the MPA releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental statutes or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Order.  Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

39.    No law of any state or other jurisdiction, including any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the 363 Transaction, the MPA, the Motion, and this Order.

40.    The terms and provisions of the MPA and this Order shall be binding in all respects upon, and shall inure to the benefit of the Debtors, their estates, and their creditors, the Purchaser and its respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting a lien, claim, encumbrance, or other interest in the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

41.    The failure to specifically include any particular provisions of the MPA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the MPA be authorized and approved in its entirety.

42.    The MPA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

43.    The provisions of this Order are nonseverable and mutually dependent on each other.

44.    Pursuant to Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten days after its entry and shall be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the 363 Transaction immediately upon entry of this Order.

45.    This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the MPA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed by or to the Debtors, (c) resolve any disputes arising under or related to the MPA, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets.

Dated: New York, York
      [_____ __], 2009



                                  _____

                                  United States Bankruptcy Judge

EXHIBIT A

**MASTER SALE AND PURCHASE AGREEMENT**

TO BE INSERTED