# EXHIBIT C

## SALE PROCEDURES ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re                                          :         Chapter 11 Case No.
                                               :
**GENERAL MOTORS CORP., et al.,**              :         09-_____ (___)
                                               :
                        **Debtors.**           :         **(Jointly Administered)**
                                               :

-------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 AND FED. R. BANKR. P. 2002,**
**6004, AND 6006 (I) APPROVING PROCEDURES FOR SALE**
**OF DEBTORS' ASSETS PURSUANT TO MASTER SALE AND PURCHASE**
**AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC,**
**A U.S. TREASURY-SPONSORED PURCHASER;**
**(II) SCHEDULING BID DEADLINE AND SALE HEARING DATE;**
**(III) ESTABLISHING ASSUMPTION AND ASSIGNMENT PROCEDURES;**
<u>**AND (IV) FIXING NOTICE PROCEDURES AND APPROVING FORM OF NOTICE**</u>

Upon the motion, dated June 1, 2009 (the "<u>Motion</u>"),[1] of General Motors

Corporation ("<u>GM</u>") and certain of its subsidiaries, as debtors in possession in the above-

captioned chapter 11 cases (collectively, the "<u>Debtors</u>" or the "<u>Company</u>"),[2] pursuant to sections

105, 363, and 365 of title 11, United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002,

6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for,

among other things, entry of an order, (A) approving the proposed sale procedures annexed

hereto as Exhibit "A" (the "<u>Sale Procedures</u>"); (B) scheduling a bid deadline and sale hearing

date; (C) establishing procedures for assuming and assigning the Assumable Executory

Contracts; and (D) fixing notice procedures and approving forms of notice; and upon any

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Sale Procedures, or the MPA, as applicable.

[2] The Debtors and their respective Tax ID numbers are as follows:  General Motors Corporation, Tax ID No. 38-0572515; Saturn, LLC, Tax ID No. 38-2577506; Saturn Distribution Corporation, Tax ID No. 38-2755764; and Chevrolet-Saturn of Harlem, Inc., Tax ID No. 20-1426707.

objections to the Motion (the "Objections"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York of Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury (the "U.S. Treasury"), (iii) the attorneys for Export Development Canada ("EDC"), (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis), (vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, and (xi) the attorneys for the ad hoc bondholders committee, and it appearing that no other or further notice need be provided; and a hearing having been held on June [___], 2009, to consider the relief requested in the Motion (the "Sale Procedures Hearing"); and upon the Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 (the "Henderson Affidavit"), the record of the Sale Procedures Hearing, and all of the proceedings had before the Court; and the Court having reviewed the Motion and any Objections and found and determined that the relief sought in the Motion as provided herein is necessary to avoid immediate and irreparable harm to the Debtors

and their estates, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the

Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

FOUND AND DETERMINED THAT:[3]

A.    The Debtors have articulated good and sufficient reasons for this Court to

grant the relief requested in the Motion regarding the sale process, including the Court's (i)

approval of the Sale Procedures, (ii) approval of the Assumption and Assignment Procedures,

(iii) approval of and authorization to serve the Sale Notice, the Assumption and Assignment

Notice, and the UAW Retiree Notice (each as hereinafter defined), and (iv) approval of and

authorization to publish the Publication Notice (the "Sale Procedures Relief").

B.    The Debtors have articulated good and sufficient reasons for, and the best

interests of their estates will be served by, this Court scheduling a subsequent hearing (the "Sale

Hearing") to consider whether to grant the remainder of the relief requested in the Motion,

including the approval of the sale of substantially all the assets (the "Purchased Assets") of the

Sellers in accordance with either the (i) proposed Master Sale and Purchase Agreement, dated as

of June 1, 2009, substantially in the form annexed to the Motion as Exhibit "A" (together with all

exhibits and agreements attached thereto, the "MPA"),[4] by and among GM and its Debtor

subsidiaries (collectively, the "Sellers") and Vehicle Acquisition Holdings LLC (the

"Purchaser"), a purchaser sponsored by the U.S. Treasury, or (ii) such other Marked Agreement

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[4] Copies of the Motion and the MPA (without certain commercially sensitive attachments) may be obtained by accessing the website established by the Debtors' proposed claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com.

that may constitute the Successful Bid (the "Replacement Agreement"), free and clear of all

liens, claims, encumbrances, and interests, including rights or claims based on any successor or

transferee liability (with the same to attach to the proceeds therefrom) pursuant to section 363 of

the Bankruptcy Code (the "363 Transaction").

        C.     The Purchased Assets are "wasting assets" that will not retain going

concern value over an extended period of time. As such, the Debtors' estates will suffer

immediate and irreparable harm if the relief requested in the Motion is not granted on an

expedited basis consistent with the provisions set forth herein and in the MPA.

        D.     The notice of the Sale Hearing (the "Sale Notice"), a copy of which is

annexed hereto as Exhibit "B," is reasonably calculated to provide parties in interest with proper

notice of the proposed sale of the Purchased Assets, the Sale Procedures, the 363 Transaction,

and the Sale Hearing.

        E.     Publication of the Publication Notice, substantially in the form annexed

hereto as Exhibit "C," as set forth herein is reasonably calculated to provide all unknown

creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant

to this Order with proper notice of the proposed sale of the Purchased Assets, the Sale

Procedures, the 363 Transaction, and the Sale Hearing.

        F.     The Assumption and Assignment Notice, a copy of which is annexed

hereto as Exhibit "D," is reasonably calculated to provide all counterparties to the Assumable

Executory Contracts with proper notice of the potential assumption and assignment of their

respective executory contracts or Leases, any Cure Amounts relating thereto, and the

Assumption and Assignment Procedures.

        G.     The UAW Special Retiree Notice (as defined below) including the Cover

Letter to UAW-Represented Retirees describing the 363 Transaction and the UAW Retiree

Settlement Agreement and the notice (together, the "UAW Retiree Notice") to the retirees of the Debtors and of certain retirees of Delphi Corporation ("Delphi"), a former unit of GM, including certain retirees of former Delphi units and former GM units, and their respective surviving spouses, who are eligible to receive, now or in the future, Retiree Medical Benefits ( as defined in the UAW-Retiree Settlement Agreement) (collectively, the "UAW-Represented Retirees"), copies of which are annexed hereto as Exhibit "E," are reasonably calculated to provide the UAW-Represented Retirees with proper notice of the 363 Transaction, the Sale Procedures, the Sale Hearing, and the UAW Retiree Settlement Agreement.

H.    The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Guidelines for the Conduct of Asset Sales established by the Bankruptcy Court on September 5, 2006 pursuant to General Order M-331.

I.    The 363 Transaction includes the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code).  As such, the transfer of personally identifiable information shall not be effective until a Consumer Privacy Ombudsman is appointed and issues its findings and the Court has an opportunity to review the findings and issue any rulings that are appropriate.

J.    Due, sufficient, and adequate notice of the relief requested in the Motion and granted herein has been given to parties in interest.

K.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Sale Procedures Relief requested in the Motion is granted as provided herein.

2.    The Objections are overruled except as otherwise set forth herein.

3.    The Sale Procedures, which are incorporated herein by reference, are approved and shall govern all bids and sale procedures relating to the Purchased Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Sale Procedures.

4.    The deadline for submitting a Qualified Bid shall be June 22, 2009 (the "Bid Deadline"), as further described in the Sale Procedures.

5.    The deadline for objecting to (i) approval of the 363 Transaction, including the sale of the Purchased Assets free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability (or for UAW-Represented Retirees to object to the UAW Retiree Settlement Agreement), (ii) any Cure Amounts, and/or (iii) the assumption by the Debtors and assignment to the Purchaser of an Assumable Executory Contract (as defined in the MPA) pursuant to the MPA, shall be June 19, 2009, at 5:00 p.m. (Eastern Time) (the "Objection Deadline"), *provided, however,* that in the event the Sale Procedures result in a Successful Bidder other than the Purchaser, the deadline for objecting to the sale of the Purchased Assets to such Successful Bidder shall be at the Sale Hearing.

6.    The Purchaser shall constitute a Qualified Bidder for all purposes and in all respects with respect to the Sale Procedures and is not required to make a Good Faith Deposit.

7.    The Court shall conduct the Sale Hearing on June 30, 2009, at __:00 _.m. (Eastern Time), at which time the Court will consider approval of the 363 Transaction to the Successful Bidder and approval of the UAW Retiree Settlement Agreement. In the event the

Successful Bidder is not the Purchaser, non-Debtor parties to the Assumable Executory

Contracts may raise objections to adequate assurance of future performance at the Sale Hearing.

8.    The Debtors are authorized to conduct the 363 Transaction (or other

similar transaction if the Successful Bidder is a party other than the Purchaser) without the

necessity of complying with any state or local bulk transfer laws or requirements.

9.    The notices described in subparagraphs (a)-(d) below are approved and

shall be good and sufficient, and no other or further notice shall be required if given as follows:

(a)    The Debtors (or their agent) serve, within three (3) days after entry of this Order (the "Mailing Deadline"), by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a copy of this Order upon: (i) the attorneys for the U.S. Treasury, (ii) the attorneys for Export Development Canada, (iii) the attorneys for the agent under the Debtors' prepetition secured term loan agreement, (iv) the attorneys for the agent under the Debtors' prepetition amended and restated secured revolving credit agreement (v) the attorneys for the statutory committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors Committee") (if no statutory committee of unsecured creditors has been appointed, the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis), (vi) the attorneys for the UAW, (vii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America; (viii) the United States Department of Labor; (ix) the attorneys for the National Automobile Dealers Association, (x) the attorneys for the ad hoc bondholders committee; (xi) any party who, in the past three years, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transaction contemplated in the MPA, (xii) non-Debtor parties to the Assumable Executory Contracts, (xiii) all parties who are known to have asserted any lien, claim, encumbrance, or interest in or on the Purchased Assets, (xiv) the Securities and Exchange Commission, (xv) the Internal Revenue Service, (xvi) all applicable state attorneys general, local environmental enforcement agencies, and local regulatory authorities, (xvii) all applicable state and local taxing authorities, (xviii) the Federal Trade Commission, (ixx) all applicable state attorneys general, (xx) United States Attorney General/Antitrust Division of the Department of Justice, (xxi) the U.S. Environmental Protection Agency and similar state agencies, (xxii) the United States Attorney's Office, (xxiii) all dealers with current agreements for the sale or leasing of GM brand vehicles, (xxiv) the Office of the United States Trustee for the Southern District of New York,

and (xxv) all entities that requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and

(b)   On or before the Mailing Deadline, the Debtors (or their agent) serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, the Sale Notice, substantially in the form annexed hereto as Exhibit "B," upon (i) all other known creditors and (ii) all equity security holders of the Debtors of record as of May 27, 2009.

(c)   On or before the Mailing Deadline, the Debtors (or their agent) serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a notice of the assumption and assignment of the Assumable Executory Contracts and the proposed cure amounts relating to the Assumable Executory Contracts (the "Assumption and Assignment Notice"), substantially in the form annexed hereto as Exhibit "C," upon the non-Debtor parties to the Assumable Executory Contracts.

(d)   On or before the Mailing Deadline, the Debtors (or their agent) serve by first-class mail, postage prepaid, or other method reasonably calculated to provide notice, a notice of the 363 Transaction and the UAW Retiree Settlement, as well as a cover letter from the UAW describing the UAW Retiree Settlement Agreement and communicating the UAW's support of the 363 Transaction, including the UAW Retiree Settlement Agreement (collectively, the "UAW Retiree Notice"), substantially in the form annexed hereto as Exhibit "E," upon (i) the UAW, (ii) the attorneys for the UAW, and (iii) all of the UAW-Represented Retirees.  On the Mailing Deadline or as soon as practicable thereafter, the Debtors will cause the MPA, the Motion, the Sale Procedures Order, the UAW Retiree Notice, and the UAW Retiree Settlement Agreement, including all exhibits thereto (other than those containing commercially sensitive information), to be published on the website of the Debtors' proposed claims and noticing agent, The Garden City Group, Inc., at http:/www.gmcourtdocs.com, in an area dedicated to retiree-related information (this website disclosure and the UAW Retiree Notice, collectively the "UAW Special Retiree Notice").

(e)   On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Publication Notice to be published (i) once in (a) the global edition of *The Wall Street Journal*, (b) the national edition of *The New York Times*, (c) the global edition of *The Financial Times*, (d) the national edition of *USA Today*, (e) *Detroit Free Press/Detroit News*, (f) *Le Journal de Montreal*, (g) *Montreal Gazette*, (h) *The Globe and Mail*, and (i) *The National Post*, and (ii) on the website of the Debtors' proposed claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com.

10.    The following procedures (the "Assumption and Assignment Procedures") shall govern the assumption and assignment of the Assumable Executory Contracts in connection with the sale of the Purchased Assets to the Purchaser:[5]

Determination of Assumable Executory Contracts

- The Sellers shall maintain a schedule (the "Schedule") of Executory Contracts and Leases that the Purchaser has designated as Assumable Executory Contracts. From the date of the MPA until thirty (30) days after the Closing Date (or a later date if mutually agreed upon by the Sellers and the Purchaser) (the "Executory Contract Designation Deadline"), the Purchaser may (i) designate any additional Executory Contracts or Leases as Assumable Executory Contracts and add such Assumable Executory Contracts to the Schedule or (ii) remove any Assumable Executory Contract from the Schedule, in which case the Executory Contract or Lease shall cease to be an Assumable Executory Contract. The right of the Purchaser to add or remove Executory Contracts and Leases from the Schedule is subject to certain exceptions.[6]

- For each Assumable Executory Contract, the Purchaser must determine, prior to the Executory Contract Designation Deadline, the date on which it seeks to have the assumption and assignment become effective, which date may be the Closing or a later date (the "Proposed Assumption Effective Date").

- In addition to the Schedule, the Sellers shall maintain a secure website (the "Contract Website") that the non-Debtor counterparty to an Assumable Executory Contract can access to find current information about the status of its respective Executory Contract or Lease. The Contract Website contains, for each Assumable Executory Contract, (i) an identification of each Assumable Executory Contract that the Purchaser has designated for assumption and assignment and (ii) the Cure Amounts that must be paid to cure any prepetition defaults under such respective Assumable Executory Contract as of the Commencement Date. The information on the Contract Website shall be made available to the non-Debtor counterparty to the Assumable Executory Contract (the "Non-Debtor Counterparty"), but shall not otherwise be publicly available.

---

[5] If a party other than the Purchaser is the Successful Bidder, or if a transaction other than the 363 Transaction is consummated, then these Assumption and Assignment Procedures may be modified by further order of this Court.

[6] For example, if an Assumable Executory Contract has already been assumed and assigned, it cannot be removed from the Schedule.

Procedures for Providing Notice of Assumption and Assignment

- Following the designation of an Executory Contract or Lease as an Assumable Executory Contract, the Debtors shall provide notice (the "Assumption and Assignment Notice") to the Non-Debtor Counterparty to the Assumable Executory Contract, substantially in the form annexed hereto as Exhibit "D," setting forth (i) instructions for accessing the information on the Contract Website relating to such Non-Debtor Counterparty's Assumable Executory Contract and (ii) the procedures for objecting to the proposed assumption and assignment of the Assumable Executory Contract.

Procedures for Filing Objections to Assumption and Assignment and Cure Amounts

- Objections, if any, to the proposed assumption and assignment of the Assumable Executory Contracts (the "Contract Objections") must be made in writing, filed with the Court, and served on the Objection Deadline Parties (as defined below) so as to be received no later than ten (10) days after the date of the Assumption and Assignment Notice (the "Contract Objection Deadline") and must specifically identify in the objection the grounds therefor.  The "Objection Deadline Parties" are (i) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (Attn:  Lawrence S. Buonomo, Esq.); (ii) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn:  Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (iii) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn:  Matthew Feldman, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the attorneys for the Creditors Committee; (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn:  Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (vii) the Office of the United States Trustee for the Southern District of New York (Attn:  Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004.

- Unless a Contract Objection is filed and served before the Contract Objection Deadline, the Non-Debtor Counterparty shall be deemed to have consented to the assumption and assignment of its respective Assumable Executory Contract and the respective Cure Amount and shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Sellers, their estates, or the Purchaser.

Procedures for Resolving Objections

- If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date, the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable

following resolution of such disputed Cure Amount:  To resolve the Cure Objection, the Debtors, the Purchaser, and the objecting Non-Debtor Counterparty may meet and confer in good faith to attempt to resolve any such objection without Court intervention.  A call center has been established by the Debtors for this purpose.  If the Debtors determine that the Cure Objection cannot be resolved without judicial intervention, then the Cure Amount will be determined as follows:  (a) with respect to Assumable Executory Contracts pursuant to which the non-Debtor counterparty has agreed to an alternative dispute resolution procedure, then, according to such procedure; and (b) with respect to all other Assumable Executory Contracts, by the Court at the discretion of the Debtors either at the Sale Hearing or such other date as determined by the Court.

- If a timely Contract Objection is filed that objects to the assumption and assignment on a basis other than the Cure Amount, the Debtors, the Purchaser, and the objecting Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.  If the Debtors determine that the objection cannot be resolved without judicial intervention, then, at the discretion of the Sellers and the Purchaser, the objection shall be determined by the Court at the Sale Hearing or such other date as determined by the Court.  If the Court determines at such hearing that the Assumable Executory Contract should not be assumed and assigned, then such Executory Contract or Lease shall no longer be considered an Assumable Executory Contract.

- If the Debtors, the Purchaser, and the non-Debtor Counterparty resolve any Contract Objection, they shall enter into a written stipulation (the "Assumption Resolution Stipulation"), which stipulation is not required to be filed with or approved by the Court.

Effective Date of Assumption

- All Assumable Executory Contracts will be assumed and assigned to the Purchaser on the date (the "Assumption Effective Date") that is the later of (i) the Proposed Assumption Effective Date and (ii) the Assumption Resolution Date (as defined below).  The "Assumption Resolution Date" shall be, (i) if no Contract Objection has been filed on or prior to the Contract Objection Deadline or the only Contract Objection that has been filed on or prior to the Contract Objection Deadline is a Cure Objection, the business day after the Contract Objection Deadline, or (ii) if a Contract Objection other than a Cure Objection has been filed on or prior to the Contract Objection Deadline, the date of the Assumption Resolution Stipulation or the date of a Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract.

- Contingent upon the approval of the 363 Transaction and concurrently with the consummation of the 363 Transaction (without prejudice to the conditions set forth in the MPA), (i) the UAW Collective Bargaining Agreement shall be deemed to be an Assumable Executory Contract as to which the Assumption and Assignment Notice need not be sent and which will not be listed on the Schedule or the Contract Website (ii) the Debtors shall assume and assign the UAW Collective Bargaining Agreement

to the Purchaser as of the Closing Date, and each non-Debtor party to the UAW
Collective Bargaining Agreement shall be deemed to have consented to such
assumption and assignment.

11.    Except as otherwise provided in paragraph 10 hereof with respect to
Assumable Executory Contracts, in order to be considered, an objection to the 363 Transaction
(or for UAW-Represented Retirees, the UAW Retiree Settlement Agreement), must be filed with
the Court and served upon the following so as to be received by the Objection Deadline:  (i)
Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New
York 10153 (Attn:  Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky,
Esq.); (ii) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit,
Michigan 48265 (Attn:  Lawrence S. Buonomo, Esq.); (iii) Cadwalader, Wickersham & Taft
LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281
(Attn:  John J. Rapisardi, Esq.); (iv) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room
2312, Washington, D.C. 20220 (Attn:  Matthew Feldman, Esq.); (v) Vedder Price, P.C.,
attorneys for EDC, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn:  Michael J.
Edelman, Esq. and Michael L. Schein, Esq.); (vi) the attorneys for the Creditors Committee; (vii)
the UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn:  Daniel W. Sherrick,
Esq.); (viii) Cleary Gottlieb Steen & Hamilton LLP, attorneys for the UAW, One Liberty Plaza,
New York, New York 10006 (Attn: James L. Bromley, Esq.); (xi) Cohen, Weiss and Simon
LLP, attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn:  Babette
Ceccotti, Esq.); and (xii) the Office of the United States Trustee for the Southern District of New
York (Attn:  Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York
10004.  Contract Objections and Cure Objections must be filed and served in accordance with
the procedure set forth in paragraph 10 herein.

12.     The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, to the consummation and performance of the 363 Transaction contemplated by the MPA or a Participation Agreement, if any (including the transfer free and clear of all liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability, of each of the Purchased Assets transferred as part of the 363 Transaction), the approval of the UAW Retiree Settlement Agreement, or the assumption and assignment of any Executory Contract or Lease.

13.     The U.S. Trustee is directed to appoint a Consumer Privacy Ombudsman pursuant to sections 332 and 363(b)(1) of the Bankruptcy Code as soon as practicable.

14.     Notwithstanding any possible applicability of Bankruptcy Rules 6004 or 6006, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to this Order.

Dated: New York, York
       June [___] 2009

_____
United States Bankruptcy Judge

# EXHIBIT A

## SALE PROCEDURES

## SALE PROCEDURES

By motion dated June 1, 2009 (the "Motion"), General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), sought, among other things, approval of the process and procedures through which it will determine the highest or otherwise best price for the purchase of substantially all the assets (the "Purchased Assets") of the Debtors (the "Sellers"). On June __, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Sale Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Purchased Assets through the process and procedures set forth below (the "Sale Procedures").

On June 30, 2009, as further described below, in the Motion, and in the Sale Procedures Order, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing"), at which the Debtors shall seek entry of an order (the "Sale Order") authorizing and approving the sale of the Purchased Assets (the "363 Transaction") pursuant to either (i) that certain Master Sale and Purchase Agreement (the "MPA") between the Sellers and Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"), substantially in the form annexed as Exhibit "A" to the Motion, or (ii) a different Successful Bid (as defined below).

## Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in purchasing the Purchased Assets (a "Potential Bidder") must first deliver the following materials to the Debtors (with a copy to the Purchaser):

(i) An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors; and

(ii) The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the 363 Transaction, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors, and (y) a written commitment acceptable to the Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the 363 Transaction.

A "Qualified Bidder" is a Potential Bidder whose Financials (or the Financials of its equity holder(s), if applicable) demonstrate the financial capability to consummate the 363 Transaction, whose bid meets all of the Bid Requirements described below *and* that the Debtors, in their discretion but after consulting with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), and the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors Committee") determine is likely to consummate the 363 Transaction, if selected as the Successful Bidder, after taking into account all relevant legal, regulatory, and business considerations. The Purchaser is a Qualified Bidder and is not required to make a Good Faith Deposit (as defined below).

Within two (2) business days after the Debtors and the Purchaser receive from a Potential Bidder all the materials required by subparagraphs (i) and (ii) above, the Debtors shall determine, in consultation with their advisors, the UAW, and the Creditors Committee, and shall notify the Purchaser and the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.

## Obtaining Due Diligence Access

To obtain due diligence access or additional information regarding the Purchased Assets or the Sellers, a Qualified Bidder (other than the Purchaser) must first provide the Debtors with a written nonbinding expression of interest (the "Expression of Interest") regarding (i) the Qualified Bidder's proposed 363 Transaction, (ii) the purchase price range, (iii) the structure and financing of the 363 Transaction, (iv) any conditions to closing that it may wish to impose, and (v) the nature and extent of additional due diligence it may wish to conduct. If the Debtors, in their business judgment, determine that a Qualified Bidder that has submitted an Expression of Interest is reasonably likely to make a bona fide offer that would result in greater value being received for the benefit of the Sellers' estates than under the MPA (a "Qualifying Expression of Interest"), then the Debtors shall afford such Qualified Bidder reasonable due diligence, including the ability to access information from a confidential electronic data room concerning the Purchased Assets (the "Data Room").

Neither the Debtors nor any of their affiliates (or any of their respective representatives) are obligated to furnish any information relating to the Sellers, the Purchased Assets, and/or the 363 Transaction to any person except the Purchaser or another Qualified Bidder who makes a Qualifying Expression of Interest. The Debtors shall give the Purchaser any confidential memoranda (the "Confidential Memoranda") containing information and financial data with respect to the Purchased Assets and access to all due diligence information provided to any other Qualified Bidder.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. If the Debtors determine that due diligence material requested by a Qualified Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Qualified Bidder, the Debtors shall post such materials in the Data Room and provide notification of such posting by electronic transmission to the Qualified Bidders and not previously provided to the Purchaser.

Unless the Debtors determine otherwise, the availability of additional due diligence to a Qualified Bidder will cease after the Bid Deadline (as defined below).

## Bid Deadline

**The deadline for submitting bids by a Qualified Bidder shall be June 22, 2009, at 5:00 p.m. (Eastern Time) (the "Bid Deadline")**

Prior to the Bid Deadline, a Qualified Bidder that desires to make a bid shall deliver (i) one written copy of its bid and (ii) two copies of the MPA that has been marked to show amendments and modifications to the MPA, including price and terms, that are being

proposed by the Qualified Bidder (a "Marked Agreement"), to (a) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.), (b) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (c) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (d) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (e) the attorneys for the Creditors Committee; (f) the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel W. Sherrick, Esq.); (g) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromely, Esq.); (h) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (i) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.)

### Due Diligence from Bidders

The Debtors and their advisors shall be entitled to due diligence from a Qualified Bidder, upon execution of a confidentiality agreement that is reasonably satisfactory to the Debtors. Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors. Failure of a Qualified Bidder to fully comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by the Qualified Bidder is not a Qualified Bid.

### Bid Requirements

A bid must be a written irrevocable offer from a Qualified Bidder (i) stating that the Qualified Bidder offers to consummate a 363 Transaction pursuant to the Marked Agreement, (ii) confirming that the offer shall remain open until the closing of a 363 Transaction to the Successful Bidder (as defined below), (iii) enclosing a copy of the Marked Agreement, and (iv) including a certified or bank check, or wire transfer, in the amount of $500 million to be held in escrow as a good-faith deposit (the "Good Faith Deposit").

In addition to the foregoing requirements, a bid or bids must:

(a) provide that the Qualified Bidder (i) agrees to the assumption by the Debtors and assignment to such Qualified Bidder of any collective bargaining agreements entered into by and between the Debtors and the UAW with the exception of (a) the agreement to provide certain retiree medical benefits specified in the Memorandum of Understanding Post-Retirement Medical Care, dated September 26, 2007, between the Company and the UAW; and (b) the Settlement Agreement, dated February 21, 2008, between the Company and the UAW, and (ii) will enter into the UAW Retiree Settlement Agreement;

(b) be on terms that are not materially more burdensome or conditional than the terms of the MPA;

(c) not be conditioned on obtaining financing or the outcome of unperformed due diligence by the bidder;

(d) not request or entitle the bidder to any breakup fee, expense reimbursement, or similar type of payment; and

(e) fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

A timely bid received from a Qualified Bidder and that meets the requirements set forth above (the "Bid Requirements") will be considered a Qualified Bid if the Debtors, in consultation with their advisors, the UAW, and the Creditors Committee, reasonably believe that such bid would be consummated if selected as the Successful Bid (as defined below). For all purposes hereof, the Purchaser's offer to acquire the Purchased Assets pursuant to the MPA shall constitute a Qualified Bid.

## Acceptance of Qualified Bids

The Debtors shall present to the Bankruptcy Court at the Sale Hearing the Qualified Bid that the Debtors, in their business judgment, determine, in consultation with their advisors, the UAW, and the Creditors Committee, would provide the highest or best offer for the Purchased Assets and is in the best interests of the Debtors and their estates in the Debtors' chapter 11 cases (the "Successful Bid," and the bidder with respect thereto, the "Successful Bidder"). At the Sale Hearing, certain findings will be sought from the Bankruptcy Court, including that (i) the Successful Bidder was selected in accordance with these Bidding Procedures, and (ii) consummation of the 363 Transaction as contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Sellers and their estates in these chapter 11 cases.

In the event that, for any reason, the Successful Bidder fails to close the 363 Transaction contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, the Debtors shall be authorized to close with the Qualified Bidder that submitted the bid that the Debtors in their business judgment determined, in consultation with their advisors, the UAW, and the Creditors Committee, would provide the next highest or otherwise best value for the Purchased Assets and is otherwise in the best interests of the Debtors after the Successful Bid (the "Next Highest Bidder").

## Return of Good Faith Deposit

Except as otherwise provided in this paragraph with respect to the Successful Bidder and the Next Highest Bidder, the Good Faith Deposits of all Qualified Bidders required to submit such a deposit under the Bidding Procedures shall be returned upon or within one (1) business day after entry of the Sale Order. The Good Faith Deposit of the Successful Bidder required to submit such a deposit under the Bidding Procedures shall be held until the closing of

the 363 Transaction and applied in accordance with the Successful Bid.  The Good Faith Deposit of the Next Highest Bidder shall be retained in escrow until 48 hours after the closing of the 363 Transaction.  Pending the closing of the 363 Transaction, the Good Faith Deposit of the Successful Bidder and the Next Highest Bidder shall be maintained in an interest-bearing escrow account.  If the closing does not occur, the disposition of Good Faith Deposits shall be as provided in the Successful Bid and Next Highest Bid, as applicable.

## EXHIBIT B

## FORM OF SALE NOTICE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
**GENERAL MOTORS CORP.,** *et al.,*     :    09-_____ (___)
                                        :
                        **Debtors.**    :    (Jointly Administered)
                                        :
--------------------------------------------------------------x

**NOTICE OF SALE HEARING TO SELL SUBSTANTIALLY ALL
OF DEBTORS' ASSETS PURSUANT TO MASTER SALE AND PURCHASE
AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC,
A U.S. TREASURY -SPONSORED PURCHASER**

PLEASE TAKE NOTICE THAT upon the motion (the "Motion"), of General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), dated June 1, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued an order dated June __, 2009 (the "Sale Procedures Order"), among other things, (i) scheduling a hearing (the "Sale Hearing") to approve (a) the Master Sale and Purchase Agreement, dated as of June 1, 2009 (the "MPA"), by and among GM and its Debtor subsidiaries (collectively, the "Sellers") and Vehicle Acquisition Holdings LLC. (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"), with respect to the sale of substantially all the Debtors' assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances, and other interests, and subject to higher or better offers (the "363 Transaction"); (b) the assumption, assignment, and sale to the Purchaser pursuant to the MPA of certain executory contracts and unexpired leases of personal property and nonresidential real property (the "Assumable Executory Contracts"); and (c) the settlement agreement, dated _____, 2009 (the "UAW Retiree Settlement Agreement"), between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"); (ii) approving certain procedures for the submission and acceptance of any competing bids (the "Sale Procedures"); (iii) approving a procedure for the assumption, assignment, and sale to the Purchaser pursuant to the MPA of the Assumable Executory Contracts; (iv) approving the form and manner of notice of the Motion and the relief requested therein and of the Sale Hearing; and (v) setting a deadline for the filing of objections, if any, to the relief requested in the Motion.

A.    THE MASTER SALE AND PURCHASE AGREEMENT

The total consideration under the MPA for the sale of the Purchased Assets is equal to the sum of (i) a credit bid in the amount of the outstanding indebtedness owed to the Purchaser as of the closing pursuant to secured loans extended by the U.S. Treasury, less approximately $7.7 billion (estimated to be $48.7 billion at July 31, 2009); (ii) the surrender of a warrant to purchase GM shares previously issued to the U.S. Treasury in connection with the secured loans extended by the U.S. Treasury; (iii) the issuance to GM of shares of common stock

of the Purchaser representing approximately 10% of the fully diluted equity interests of the
Purchaser as of the closing of the sale); (iv) the issuance to GM of warrants to purchase up to
15% of the shares of common stock of the Purchaser, with the initial exercise prices for equal
amounts of the warrants based on $15 billion and $30 billion equity values of the Purchaser. The
warrants will be exercisable through the seventh and tenth anniversaries of issuance,
respectively, and GM may elect partial and cashless exercises; and (v) the assumption by the
Purchaser of certain assumed liabilities, all as set forth more fully in the MPA, a copy of which is
annexed to the Motion as Exhibit "A." In addition, if the aggregate amount of allowed general
unsecured claims against the Debtors exceeds $35 billion, as estimated by an order of the
Bankruptcy Court (which the Debtors may seek at any time), GM will receive an additional 2%
of the fully diluted equity interests of the Purchaser as of the Closing of the sale.

B.      THE SALE HEARING

        The Sale Hearing will be held before the Honorable Robert E. Gerber, United
States Bankruptcy Judge, in Courtroom _____ of the United States Bankruptcy Court for the
Southern District of New York, One Bowling Green, New York, New York 10004-1408, on
June 30, 2009, at __:__ a.m. (Eastern Time). The Sale Hearing may be adjourned without notice
by an announcement of the adjourned date at the Sale Hearing.

        **RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN
THE MOTION SHALL BE FILED** with the Clerk of the Bankruptcy Court and served upon:
(a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New
York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky,
Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World
Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) the attorneys
for the Creditors Committee; (d) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the
UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (e)
Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New
York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export
Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael
J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee
for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st
Floor, New York, New York 10004, **SO AS TO BE RECEIVED NO LATER THAN JUNE
19, 2009, AT 5:00 P.M. (EASTERN TIME) (the "Objection Deadline").**

        The failure of any person or entity to file a response or objection on or before the
Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief
requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any
objection to the Sale Procedures, the Motion, the 363 Transaction, the approval of the UAW
Retiree Settlement Agreement, and the Debtors' consummation of the 363 Transaction.

C.      COPIES OF THE MOTION AND SALE PROCEDURES ORDER

        This Notice provides only a partial summary of the relief sought in the Motion
and the terms of the Sale Procedures Order. Copies of the Motion, the MPA (excluding certain
commercially sensitive information), and Sale Procedures Order are available for inspection (i)
by accessing (a) the website of the Bankruptcy Court at http://www.nysb.uscourts.gov, or (b) the

website of the Debtors' claims and noticing agent, The Garden City Group, Inc., at
http://www.gmcourtdocs.com or (ii) by visiting the Office of the Clerk of the Bankruptcy Court,
United States Bankruptcy Court, Southern District of New York, One Bowling Green, New
York, New York 10004-1408. Copies also may be obtained by faxing a written request to the
attorneys for the Debtors, Weil, Gotshal & Manges LLP (Attn: Russell Brooks, Esq.) at 212-
310-8007.

Dated:  New York, New York
        June __, 2009

                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtors
                                and Debtors in Possession

## EXHIBIT C

## FORM OF PUBLICATION NOTICE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
**GENERAL MOTORS CORP.,** *et al.,*      :        09-_____ (___)
                                        :
                        **Debtors.**     :        **(Jointly Administered)**
                                        :
-----------------------------------------------------------x

### NOTICE OF SALE HEARING TO SELL SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY -SPONSORED PURCHASER

PLEASE TAKE NOTICE THAT upon the motion (the "Motion"), of General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), dated June 1, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued an order dated June __, 2009 (the "Sale Procedures Order"), among other things, (i) scheduling a hearing (the "Sale Hearing") to approve (a) the Master Sale and Purchase Agreement, dated as of June 1, 2009 (the "MPA"), by and among GM and its Debtor subsidiaries (collectively, the "Sellers") and Vehicle Acquisition Holdings LLC. (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"), with respect to the sale of substantially all the Debtors' assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances, and other interests, and subject to higher or better offers (the "363 Transaction"); (b) the assumption, assignment, and sale to the Purchaser pursuant to the MPA of certain executory contracts and unexpired leases of personal property and nonresidential real property (the "Assumable Executory Contracts"); and (c) the settlement agreement, dated _____, 2009 (the "UAW Retiree Settlement Agreement"), between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"); (ii) approving certain procedures for the submission and acceptance of any competing bids (the "Sale Procedures"); (iii) approving a procedure for the assumption, assignment, and sale to the Purchaser pursuant to the MPA of the Assumable Executory Contracts; (iv) approving the form and manner of notice of the Motion and the relief requested therein and of the Sale Hearing; and (v) setting a deadline for the filing of objections, if any, to the relief requested in the Motion.

A.    THE MASTER SALE AND PURCHASE AGREEMENT

The total consideration under the MPA for the sale of the Purchased Assets is equal to the sum of (i) a credit bid in the amount of the outstanding indebtedness owed to the Purchaser as of the closing pursuant to secured loans extended by the U.S. Treasury, less approximately $7.7 billion (estimated to be $48.7 billion at July 31, 2009); (ii) the surrender of a warrant to purchase GM shares previously issued to the U.S. Treasury in connection with the secured loans extended by the U.S. Treasury; (iii) the issuance to GM of shares of common stock

of the Purchaser representing approximately 10% of the fully diluted equity interests of the Purchaser as of the closing of the sale); (iv) the issuance to GM of warrants to purchase up to 15% of the shares of common stock of the Purchaser, with the initial exercise prices for equal amounts of the warrants based on $15 billion and $30 billion equity values of the Purchaser. The warrants will be exercisable through the seventh and tenth anniversaries of issuance, respectively, and GM can elect partial and cashless exercises; and (v) the assumption by the Purchaser of certain assumed liabilities, all as set forth more fully in the MPA, a copy of which is annexed to the Motion as Exhibit "A." In addition, if the aggregate amount of allowed general unsecured claims against the Debtors exceeds $35 billion, as estimated by an order of the Bankruptcy Court (which the Debtors may seek at any time), GM will receive an additional 2% of the fully diluted equity interests of the Purchaser as of the Closing of the sale.

B.    THE SALE HEARING

The Sale Hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Courtroom _____ of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, on June 30, 2009, at __:__ a.m. (Eastern Time). The Sale Hearing may be adjourned without notice by an announcement of the adjourned date at the Sale Hearing.

**RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED** with the Clerk of the Bankruptcy Court and served upon: (a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) the attorneys for the Creditors Committee; (d) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (e) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004, **SO AS TO BE RECEIVED NO LATER THAN JUNE 19, 2009, AT 5:00 P.M. (EASTERN TIME) (the "Objection Deadline").**

The failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the 363 Transaction, the approval of the UAW Retiree Settlement Agreement, and the Debtors' consummation of the 363 Transaction.

C.    COPIES OF THE MOTION AND SALE PROCEDURES ORDER

This Notice provides only a partial summary of the relief sought in the Motion and the terms of the Sale Procedures Order. Copies of the Motion, the MPA (excluding certain commercially sensitive information), and Sale Procedures Order are available for inspection (i) by accessing (a) the website of the Bankruptcy Court at http://www.nysb.uscourts.gov, or (b) the

website of the Debtors' claims and noticing agent, The Garden City Group, Inc., at
http://www.gmcourtdocs.com or (ii) by visiting the Office of the Clerk of the Bankruptcy Court,
United States Bankruptcy Court, Southern District of New York, One Bowling Green, New
York, New York 10004-1408. Copies also may be obtained by faxing a written request to the
attorneys for the Debtors, Weil, Gotshal & Manges LLP (Attn: Russell Brooks, Esq.) at 212-
310-8007.

BY ORDER OF THE COURT

Dated: New York, New York
   June __, 2009

      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Debtors
      and Debtors in Possession

## EXHIBIT D

## FORM OF ASSUMPTION AND ASSIGNMENT NOTICE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                              :          Chapter 11 Case No.
                                                   :
GENERAL MOTORS CORP., *et al.*,                    :          09-_____ (___)
                                                   :
                       Debtors.                    :          (Jointly Administered)
                                                   :
-------------------------------------------------------------x

### NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO

PLEASE TAKE NOTICE THAT:

      1.     By motion dated June 1, 2009 (the "Motion"), General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"),[1] sought, among other things, authorization and approval of (a) the sale of substantially all the Debtors' assets pursuant to that certain Master Sale and Purchase Agreement and related agreements (the "MPA") among the Debtors (the "Sellers") and Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury") (the "363 Transaction"), free and clear of liens, claims, encumbrances, and interests, (b) certain proposed procedures to govern the sale process and provide for the submission of any competing bids for substantially all the Debtors' assets (the "Sale Procedures"), (c) the assumption and assignment of certain executory contracts and unexpired leases of personal property and of nonresidential real property (collectively, the "Leases") in connection with the 363 Transaction, (d) that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") to be executed at the closing of the 363 Transaction (the "UAW Retiree Settlement Agreement"), and (e) scheduling a final hearing for approval of the 363 Transaction (the "Sale Hearing").[2]

---

[1] The Debtors and their respective Tax ID numbers are as follows: General Motors Corporation, Tax ID No. 38-0572515; Saturn, LLC, Tax ID No. 38-2577506; Saturn Distribution Corporation, Tax ID No. 38-2755764; and Chevrolet-Saturn of Harlem, Inc., Tax ID No. 20-1426707.

[2] Copies of the Motion and the MPA (without certain commercially sensitive attachments) may be obtained by accessing the website established by the Debtors' claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com.

2.      The MPA, which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of substantially all the Debtors' assets, defined as the "Purchased Assets" in Section 2.2(a) of the MPA, including the Assumable Executory Contracts (as defined below), subject to higher or better offers.

3.      The MPA contemplates, and the proposed order approving the Motion (the "Sale Order"), if approved, shall authorize the assumption and assignment to the Purchaser of certain executory contracts and Leases pursuant to section 365 of title 11, United States Code (the "Bankruptcy Code").  The Sellers maintain a schedule containing executory contracts and Leases that the Debtors may assume and assign to the Purchaser (collectively, the "Assumable Executory Contracts"). You are receiving this Notice because you are a party to one or more of the Assumable Executory Contracts.

4.      **THE SCHEDULE CONTAINS A LIST OF ASSUMABLE EXECUTORY CONTRACTS THAT MAY BE ASSUMED. THE PURCHASER RESERVES THE RIGHT UNDER THE MPA TO EXCLUDE ANY ASSUMABLE EXECUTORY CONTRACT FROM THE LIST OF ASSUMABLE EXECUTORY CONTRACTS TO BE ASSUMED AND ASSIGNED BY NO LATER THAN THE DESIGNATION DEADLINE THAT IS THIRTY (30) DAYS AFTER THE CLOSING OF THE 363 TRANSACTION OR SUCH LATER DATE AS DISCUSSED IN PARAGRAPH 10 BELOW.**

5.      The Debtors maintain a secure website which contains information about your contracts, including amounts that the Debtors believe must be paid to cure all prepetition defaults under the respective contracts as of the Commencement Date in accordance with section 365(b) of the Bankruptcy Code (the "Cure Amounts").  In order to view the Cure Amount for the Assumable Executory Contract to which you are a party, you must log onto http://www.contractnotices.com (the "Contract Website").  To log on, please use the user name and password provided to you on this notice.  The username and password will enable you to access the Cure Amount for the particular Assumable Executory Contract to which you are a party.

5.      Please review the Cure Amount for your Assumable Executory Contract. In some instances, additional terms or conditions of assumption and assignment with respect to a particular Assumable Executory Contract is provided.

6.      Objections, if any, to the proposed assumption and assignment of the Assumable Executory Contracts, including, but not limited to, objections related to adequate assurance of future performance or whether applicable law excuses the non-Debtor counterparty to the Designated Agreement (the "Non-Debtor Counterparty") from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code (an "Assignment Objection") or to the proposed Cure Amount (a "Cure Amount Objection," and together with an Assignment Objection, an "Objection") must be made in writing and filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") so as to be received **no later than ten (10) days after the date of this Notice** (the "Objection Deadline") by (i) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (Attn:  Lawrence S. Buonomo, Esq.); (ii) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (iii) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the attorneys for the Creditors Committee; (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (vii) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004.

7.    Upon the filing of an Assignment Objection challenging the ability of the Debtors to assume or assign an Assumable Executory Contract (a "Disputed Designation") or a Cure Amount Objection asserting an amount higher than the proposed Cure Amount indicated in the Database (a "Disputed Cure Cost"), the Debtors, the Purchaser, and the objecting Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such Objection without Bankruptcy Court intervention. If the Debtors, Purchaser, and the Non-Debtor Counterparty determine that the Objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid with respect to the Disputed Cure Cost will be determined as follows: (a) with respect to Assumable Executory Contracts pursuant to which the Non-Debtor Counterparty has agreed to an alternative dispute resolution procedure, then, according to such procedure; and (b) with respect to all other Assumable Executory Contracts, by the Bankruptcy Court at the discretion of the Debtors either at the Sale Hearing or such other date as determined by the Bankruptcy Court, unless the Debtors, the Purchaser, and the Non-Debtor Counterparty to the Assumable Executory Contract agree otherwise; if the Bankruptcy Court determines at such hearing that the Assumable Executory Contract should not be assumed and assigned, then such contract or Lease shall no longer be considered a Assumable Executory Contract; *provided, however,* that after such determination is made, the Debtors may redesignate such Assumable Executory Contract and propose a new Cure Amount in accordance with these Assumption and Assignment Procedures, including providing the applicable Non-Debtor Counterparty with a new notice of assumption and assignment of such Assumable Executory Contract setting forth the redesignation of the Assumable Executory Contract.

8.    If you agree with the respective Cure Amount(s) listed in the Database with respect to your Assumable Executory Contract(s), and otherwise do not object to the Debtors' assumption and assignment of your Assumable Executory Contract, you are not required to take any further action.

9.    Unless an Objection is filed and served before the Objection Deadline, you shall be deemed to have consented to the assumption and assignment of your Assumable Executory Contract and the Cure Amount(s) for your Assumable Executory Contract(s), and you shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, or the Purchaser.

11.    Up to the date that is thirty (30) days following the closing of the 363 Transaction, or if such date is not a Business Day (as defined in the MPA), the next Business Day, or such other later date as mutually agreed upon by the Purchaser and the Debtors (the "Designation Deadline"), the Purchaser may, in its sole discretion, subject to certain limitations

specified in the MPA (applicable only as between the parties thereto), exclude any of the Assumable Executory Contracts by providing notice on the Contract Website. Upon such designation, the contract or Lease referenced therein shall no longer be considered a Assumable Executory Contract, shall not be deemed to be, or to have been, assumed or assigned, and shall remain subject to assumption, rejection, or assignment by the Debtors. Until the Designation Deadline, the Purchaser also may, subject to certain limitations specified in the MPA (applicable only as between the parties thereto) designate additional contracts or Leases as Assumable Executory Contracts to be assumed and assigned by providing notice to the affected Non-Debtor Counterparties indicating that the Debtors intend to assume and assign additional Assumable Executory Contracts and referring them to the contract website for a list of the newly Assumable Executory Contracts and the respective Cure Amounts for such Assumable Executory Contracts as of the Commencement Date. The Contract Website shall be updated from time to time to reflect the then current status of your contract as well as the effective date, if any, of the assumption and assignment of particular contracts.
‘

       12.    The Debtors' decision to assume and assign the Assumable Executory Contracts is subject to Bankruptcy Court approval and consummation of the 363 Transaction, and, absent such consummation, each of the Assumable Executory Contracts will not be assumed or assigned to the Purchaser and shall in all respects be subject to further administration under the Bankruptcy Code. All Assumable Executory Contracts will be assumed and assigned to the Purchaser on the date that is the later of (i) the date designated by the Purchaser and (ii) the date following expiration of the objection deadline if no objection, other than to the Cure Amount, has been timely filed, or, if an objection, other than to the Cure Amount, has been filed the date of the Assumption Resolution Stipulation. Until the Assumption Effective Date, assumption and assignment thereof is subject to the Purchaser's rights to modify the designation of Assumable Executory Contracts as set forth in paragraph 10 above. Except as otherwise provided by the MPA, the Purchaser shall have no rights in and to a particular Assumable Executory Contract until such time as the particular Assumable Executory Contract is assumed and assigned in accordance with the procedures set forth herein.

       13.    The inclusion of any document on the list of Designated Agreements shall not constitute or deemed to be a determination or admission by the Debtors or the Purchaser that such document is, in fact, an executory contract or Lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

       14.    Any Assignment Objection or Cure Amount Objection shall not constitute an objection to the relief generally requested in the Motion (e.g., the sale of the Purchased Assets by the Debtors to the Purchaser free and clear of liens, claims, encumbrances, and interests), and parties wishing to object to the relief generally requested in the Motion must file and serve a separate objection in accordance with the procedures approved and set forth in the order of the Bankruptcy Court approving the Sale Procedures.

       15.    If a party other than the Purchaser is determined to be the highest and best bidder for the assets to be sold pursuant to the 363 Transaction, you will receive a separate notice providing additional information regarding the treatment of your contract(s) or Lease(s); *provided, however*, that if the applicable Cure Amount has been established pursuant to the procedures set forth in this Notice, it shall not be subject to further dispute if the new purchaser seeks to acquire such contract or Lease.

16.    This Notice is subject to the full terms and conditions of the Motion, the order of the Bankruptcy Court approving the Sale Procedures, and the Assumption and Assignment Procedures set forth in the order approving the Sale Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

17.  If you have questions about the Assumable Executory Contracts or proposed Cure Amounts, you may call 1-888-409-2329 (in the United States) or 1-586-947-3000 (outside the United States) (the "Call Center").

Dated:  New York, New York
        June __, 2009

_____

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT E

**FORM OF UAW RETIREE NOTICE**

### A Message to UAW GM Retirees

Dear Brothers and Sisters,

As we all know, GM is engulfed in a severe crisis. GM's staggering losses during 2008 and 2009 have forced the company to file for bankruptcy. The Company has also been forced to rely on loans from the federal government in order to maintain its operations. In this environment, we are fighting every day to preserve and protect to the greatest extent possible our hard-won gains, particularly for the retirees, and surviving spouses of retirees, who helped build this industry with your years of loyal service.

Last December, after a lengthy process that included congressional hearings and petitioning the White House, the federal government granted GM a short-term emergency operating loan in order to avoid an immediate liquidation of the company at that time. As part of that loan, GM was required to submit a restructuring plan to the Treasury Department by February 17, 2009. On March 30, President Obama announced that the company's February 17 plan didn't go far enough in reducing costs and laying the groundwork for sustainability. He said GM would have to identify additional cost savings and debt reductions if GM were to receive additional financial support. The Treasury Department's auto task force also required deeper concessions from UAW members, retirees and other company stakeholders.

On May 28, GM announced that the Treasury Department would provide additional financial support in connection with a court-supervised restructuring of GM, in accordance with the terms of a broad restructuring agreement worked out between Treasury, GM, the UAW and representatives of GM's bondholders.

The agreement under which the Treasury Department will extend this new financial support includes a new schedule of contributions to the trust fund that will provide retiree medical benefits beginning in 2010. It also includes modifications to the collective bargaining agreement for active employees. The UAW active workforce ratified that agreement May 29. Based on these agreements, the United States government will provide a total of over $50 billion in financial support to allow GM to complete its restructuring.

GM's recent bankruptcy filing is part of the agreement reached with the Treasury Department. The goal of the bankruptcy filing is to allow for swift court approval of the restructuring so that the company can move forward to implement the agreements between the parties.

### Proposed Sale

To complete the restructuring, a new company will be formed which will purchase the operating assets of GM. If approved by the Bankruptcy Court, the new company will enter into the agreements with the UAW covering both active and retired workers. The initial ownership of the new corporation will be allocated as follows:

 ➢ 72.5% --  United States and Canadian Governments

 ➢ 17.5% --  UAW Retiree Benefits Trust Fund

> 10%  -- Bondholders

As part of the approval of the proposed sale, the Bankruptcy Court will also be asked to approve the new UAW Retiree Settlement Agreement, summarized below. As described more fully in Paragraph 6 of the attached document, if the court approves both the sale and the UAW Retiree Settlement Agreement, responsibility for providing retiree benefits for the duration of 2009, and for making the contributions to the VEBA, will shift to the new company (which will then own GM's operating assets).

Attached to this letter is a formal notice from the Bankruptcy Court regarding the proposed sale. As described in that notice, the Bankruptcy Court will soon hold a hearing to consider the proposed sale and the UAW Retiree Settlement Agreement.

**Pension Plan Continues Without Change**

The restructuring agreements provide that the new company will take over responsibility for the GM UAW pension plan. That plan will continue operations and pension benefits will be continued at their current level.

**Retiree Medical Benefits**

Retiree medical benefits were one of the most significant issues addressed in 2007 bargaining. The 2007 National UAW-GM Agreement established a new Trust Fund (called a "Voluntary Employees' Beneficiary Association" or "VEBA"), which is responsible for retiree medical benefits starting on January 1, 2010. The 2007 Agreement established a series of cash contributions by the Company to the VEBA, beginning on January 1, 2010.

In order for GM to receive the necessary government support -- which will allow the company to complete its restructuring and continue operations into the future -- we were required to support a series of changes to the retiree medical and VEBA agreements.

In this difficult situation, we were able to preserve the core medical benefits for retirees. These were hard fought issues and the changes described below are certainly painful. But if we had not agreed to support these changes, the U.S. Treasury would not have provided the additional support to GM. Without this critical government support, GM's near term future would be in serious peril and GM would face almost certain liquidation.

The following summarizes the principal features of the proposed agreement.

**Existing Internal VEBA Assets Transferred in January 2010.** Along with the new payment structure described below, in January 2010 the VEBA will receive the assets of an internal trust fund maintained at GM (called the "Internal VEBA"). The value of the assets in that fund is currently approximately $10 billion. GM had sought to use these assets to cover the cost of benefits prior to the January 1, 2010 implementation, which would have depleted these assets and diminished the cash balance in the new VEBA. We successfully resisted these efforts and

the new VEBA will therefore receive the full value of these Internal VEBA assets on January 1, 2010 as outlined in the 2007 agreement.

The assets in the Internal VEBA have been invested by GM on the VEBA's behalf since January 1, 2008. The value of these assets has been negatively impacted by conditions in the investment market during 2008 and so far in 2009. These assets will continue to be invested during the balance of 2009 and will be transferred to the new VEBA on January 1, 2010.

**New $2.5 Billion Note.** Under the new funding structure, the VEBA will receive a new Note, payable in cash, with a principal amount of $2.5 billion. Cash payments under the new Note (including accrued interest) will be $1.384 billion payable in each of 2013, 2015 and 2017.

**New $6.5 Billion in Preferred Stock.** The VEBA will also receive Preferred Stock in the new company with a face value of $6.5 billion. This Preferred Stock includes a 9% cash dividend payment structure, under which $585 million is payable annually for as long as the VEBA holds this stock. This dividend payment must be made before the new company can pay any dividends to the holders of its common stock. If the company delays payment of the dividends on the Preferred Stock, it will not be allowed to pay dividends to its common shareholders until it becomes current on the VEBA's Preferred Stock dividend obligations. While this preference over the common shareholders makes it likely the new company will consistently pay the preferred dividend, there is a risk that market conditions or other factors beyond the control of the UAW may result in the company delaying these preferred dividends for some period of time.

**VEBA to own Significant GM Common Stock.** Another requirement of the Treasury Department loans was that a portion of the value received by the VEBA be in the form of common stock. To meet that requirement, the VEBA will receive an initial allocation of 17.5% of the stock in the new company. The United States and Canadian Governments will receive 72.5% of the initial stock, and bondholders will receive 10%.

The VEBA will also have the right to designate a member of GM's Board of Directors, with UAW consent. The VEBA will be required to vote its GM shares in the same proportion as the votes of other shareholders.

The overall restructuring of GM will eliminate a tremendous portion of GM's other debt obligations. With a greatly improved balance sheet, as well as significant restructuring of business operations, there is a realistic prospect that the stock in the new company will represent significant value in the future. If and when that occurs, a significant portion of that value will be captured by the VEBA through this stock ownership.

**Warrants.** In addition to the direct ownership of the Preferred and Common Stock described above, the new VEBA will also receive a Warrant, which represents the right to an additional 2.5% of the Common Stock of the new company, with a strike price determined by an aggregate $75 billion equity value for the new company. This will allow the VEBA to realize additional value if the total value of the stock of the new company exceeds that value at any point prior to expiration of the new Warrant.

The new VEBA agreement includes mechanisms for the VEBA to sell the Common and Preferred Stock, as well as the new Warrants, to other parties under certain conditions.

**Pension Pass Through Eliminated.**  One funding mechanism under the 2007 Agreement was called the "Pension Pass Through."  Under that arrangement, the new VEBA was scheduled to impose an additional monthly contribution requirement, and the GM pension benefits were to increase by a corresponding amount.  This mechanism has been eliminated and its value is instead reflected in the new Note and other instruments described above.

**Mitigation VEBA Assets Transferred.**  Under the existing agreements, an independent VEBA is currently providing dental benefits and certain "mitigation" payments (i.e. covering a significant portion of the co-pays, deductibles and contributions that retirees would otherwise be required to pay under the 2005 agreement).  Under the 2007 Agreement and the proposed new agreement, the assets in this existing independent VEBA (called the "Mitigation VEBA") will be transferred into the new VEBA on January 1, 2010.  It is expected that the assets in the Mitigation VEBA will be approximately $700 million on January 1, 2010 but the actual balance will depend on investment performance and other factors during the balance of 2009.  As explained below, the dental benefits currently provided by the Mitigation VEBA will be eliminated in accordance with the proposed new agreement.

**VEBA Committee can adjust benefits beginning in 2010.**  As under the 2007 Agreement, the VEBA will be governed by an 11-member Committee, including 5 members appointed by the UAW and 6 Independent Members.  Under the 2007 Agreement, that Committee had the authority, starting on January 1, 2012, to adjust benefits so that benefit levels can be kept consistent with the assets in the Trust.  Under the proposed agreement, the Committee will be allowed to make necessary benefit adjustments beginning when the VEBA assumes responsibility on January 1, 2010.

## Immediate Changes in Benefit Levels Required

Under the 2007 Agreement, GM remained responsible for providing retiree medical benefits through the end of 2009, with the new VEBA taking over responsibility on January 1, 2010.  In the discussions over the last several weeks, the company sought an "early implementation" of this transition.  Had we agreed to that approach, the assets of the VEBA would have been depleted to pay benefits for the remainder of 2009.

We succeeded in avoiding this depletion of the VEBA's assets during 2009.  The new company will therefore continue to provide retiree medical benefits for the balance of 2009 until the new VEBA takes over responsibility.  In exchange, however, the Treasury Department insisted that the benefits be immediately reduced to reflect GM's difficult financial situation.  In order to maintain the support of the Government, therefore, we were required to agree to the following changes in benefits.  These changes will be effective on July 1, 2009 (or later if court approval is delayed beyond that date).

| Prescription Drug Co-Pays | Retail (34 day supply)<br>• $10 Generic<br>• $25 Brand<br><br>Mail Order (90 day supply) |
|---|---|

|  | • $20 Generic<br>• $50 Brand |
|---|---|
| Catastrophic Plan for retirees and surviving spouses who fail to pay required monthly contributions | No longer offered.   Retirees and surviving spouses currently in Catastrophic Plan will be given opportunity to join regular plan. |
| Coverage for Erectile Dysfunction (ED) medications (e.g. Viagra, Cialis, Levitra) | No longer offered, except in prior authorized cases of Pulmonary Arterial Hypertension |
| Coverage for the Proton Pump Inhibitor drug class (e.g. omeprazole, Prilosec, Zegerid, Nexium, Achiphex, Prevacid, Protonix) | No longer offered, except in prior authorized cases of Barrett's Esophagitis and Zoellinger-Ellison Syndrome |
| Vision Program | No longer offered |
| Dental Program | No longer offered |
| Emergency Room Co-Pay | $100 (waived if admitted) |
| Medicare Part B Special Benefit ($76.20 per month for retirees enrolled in Medicare) | No longer offered by health plan.<br><br>This modification is not applicable to approximately 24,800 retirees and surviving spouses who retired or began receiving surviving spouse benefits before October 1979, and whose benefit is provided through the pension trust.  The payments will continue for these pre-1979 retirees and surviving spouses. |
| "Low Income Retirees" (less than $8,000 annual pension and monthly basic benefit rate of less than $33.33) | Monthly contribution requirement of $11 (flat rate regardless of family status)<br><br>In all other respects, these retirees and surviving spouses will be included in same plan as other retirees and surviving spouses. |
| Monthly Contribution Requirements (General Retirees) | No Change (currently $11/single and $23/ family) |
| Deductible and Co-Pay Requirements (General Retirees) | No Change (currently $164 annual deductible and $273 annual (single) out-of-pocket maximum) |
| Sponsored Dependents and Principally Supported Children | Consistent with changes made to the active medical program, the retiree medical program will not allow the designation of new "sponsored dependents" or "principally supported children."  The provisions allowing new dependents to be added as a result of adoption or legal guardianship will continue in effect. |

## The Future Outlook

In the early years of the VEBA's existence, it is unlikely that the VEBA will be able to sell the stock in the new company. The new VEBA will therefore be required to use the $10 billion in immediate contributions from the Internal VEBA at GM, along with the assets of the Mitigation VEBA and the $585 million annual cash dividend payment on the Preferred Stock, to provide retiree medical benefits during 2010 and 2011. Because of the uncertainty regarding the long-term value of the stock, the Committee will likely be required to make further adjustments in the benefit levels for 2010 and 2011. The extent of those future adjustments will depend on many factors, including investment returns in the Internal and Mitigation VEBA's during the remaining months of 2009, and whether the dividends on the new $6.5 billion in Preferred Stock are delayed.

If the stock can be sold in 2012 or thereafter for significant value, the Committee will be able to take that new value into account and restore some or all of the benefits that are being reduced under these arrangements. In other words, if the current restructuring efforts are successful and the company returns to viability, the UAW retirees stand to reap the benefit of that recovery through the VEBA's significant stock ownership.

We urge your support for these proposed agreements. In these difficult circumstances, we believe they provide the best possible protection for your retiree benefits.

In solidarity,

| | | |
|---|---|---|
| Ron Gettelfinger | Cal Rapson, *Vice President* | Bill Payne |
| *UAW President* | *and Director, UAW GM Department* | *Counsel to the Class* |

---

### Important Notes

For further information about the proposed agreement and the process for court review of the proposed agreements and the proposed sale, please refer to the enclosed legal notice. Full and complete copies of the proposed retiree health agreement can be found on the website referred to in that notice.

**If you support the proposed agreement, you do not need to take any action at this time. Information about the modified medical plan will be sent to you following court approval. If you wish to object to the proposed agreements, you must file a written objection as described in the enclosed legal notice.**

Counsel to the Class Representatives participated in negotiation of the 2007 retiree medical agreements which were approved by the District Court for the Eastern District of Michigan on July 31, 2008. Although the Class Representatives are not formal parties to the new agreements described above, Counsel to the Class Representatives has reviewed the proposed agreements and is in full support of the efforts to obtain Bankruptcy Court approval of the new agreements. Counsel for the Class has entered an appearance in the Bankruptcy case and will be supporting approval of the proposed agreements.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
In re                                         :      Chapter 11 Case No.
                                              :
GENERAL MOTORS CORP., *et al.*,               :      09-_____ (___)
                                              :
                              Debtors.        :      (Jointly Administered)
                                              :
------------------------------------------------------------x

### NOTICE TO DEBTORS' RETIREES REPRESENTED BY
### THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
### AGRICULTURAL IMPLEMENT WORKERS OF AMERICA OF SALE OF DEBTORS'
### ASSETS AND APPROVAL OF UAW RETIREE SETTLEMENT AGREEMENT

PLEASE TAKE NOTICE THAT:

      1.     By motion dated June 1, 2009 (the "Motion"), General Motors
Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the
"Debtors" or the "Company"),[1] have sought, among other things, authorization and approval of
(a) the sale of substantially all the Debtors' assets pursuant to that certain Master Sale and
Purchase Agreement and related agreements (the "MPA") among the Debtors (the "Sellers") and
Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United
States Department of the Treasury (the "U.S. Treasury") (the "363 Transaction"), free and clear
of liens, claims, encumbrances, and other interests, (b) certain proposed procedures to govern the
sale process and provide for the submission of any competing bids for substantially all the
Debtors' assets (the "Sale Procedures"), (c) the assumption and assignment of certain executory
contracts and unexpired leases of personal property and of nonresidential real property
(collectively, the "Leases") in connection with the 363 Transaction, (d) that certain settlement
agreement between the Purchaser and the International Union, United Automobile, Aerospace
and Agricultural Implement Workers of America ("UAW") consented to by representatives of
members of the "Class" of the Debtors' retirees and surviving spouses represented by the UAW
such representatives, the "Class Representatives") to be executed at the closing of the 363
Transaction (the "UAW Retiree Settlement Agreement"), and (e) scheduling a hearing for
approval of the 363 Transaction and the UAW Retiree Settlement Agreement (the "Sale
Hearing").[2]

---

[1] The Debtors and their respective Tax ID numbers are as follows:  General Motors Corporation, Tax ID No. 38-
0572515; Saturn, LLC, Tax ID No. 38-2577506; Saturn Distribution Corporation, Tax ID No. 38-2755764; and
Chevrolet-Saturn of Harlem, Inc., Tax ID No. 20-1426707.

[2] Copies of the Motion and the MPA (without certain commercially sensitive attachments) may be obtained by
accessing the website established by the Debtors' claims and noticing agent, The Garden City Group, Inc., at
http://www.gmcourtdocs.com.

2.    The Sale Hearing is scheduled to be conducted on June 30, 2009 at __:__
_.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of New
York, Alexander Hamilton Custom House, One Bowling Green, Room ___, New York, New
York 10004 (the "Bankruptcy Court"), before the Honorable Robert E. Gerber, United States
Bankruptcy Judge, to consider the approval of the MPA or any higher or better offer by a
Successful Bidder (as defined in the Sale Procedures) and approval of the UAW Retiree
Settlement Agreement. If the Purchaser is the Successful Bidder, the Debtors anticipate seeking
entry of an order approving the 363 Transaction substantially in the form of the order attached to
the Motion as Exhibit "B" (the "Sale Order"). The Sale Hearing may be adjourned or
rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

3.    Coverage of Retiree Medical Benefits (as defined in the UAW Retiree
Settlement Agreement) will continue to be provided to UAW-Represented Retirees (as defined in
the Sale Procedures Order) and their eligible dependents without interruption by either GM or
the Purchaser up until December 31, 2009, in accordance with the terms of agreements
negotiated and agreed to by the UAW, which include certain benefit reductions to take effect on
July 1, 2009 (or, if later, Bankruptcy Court approval, if needed).

4.    Contingent upon the Bankruptcy Court's approval of the 363 Transaction,
and concurrently with the sale of the Debtors' assets pursuant to the 363 Transaction, the Debtors
will assume and assign to the Purchaser any collective bargaining agreements entered into by and
between the Debtors and the UAW (the "UAW CBA Assignment"), with the exception of (a) the
agreement to provide certain retiree medical benefits specified in the Memorandum of
Understanding Post-Retirement Medical Care, dated September 26, 2007, between the Company
and the UAW ("MOU"); and (b) the Settlement Agreement, dated February 21, 2008, between
the Company and the UAW (the "2008 Settlement Agreement"), which was approved by the
United States District Court for the Eastern District of Michigan in the class action styled *Int'l
Union, UAW, et al. v. General Motors Corporation*, Civil Action No. 07-14074 (E.D. Mich. filed
Sept. 9, 2007) (final order entered July 31, 2008).

5.    The Purchaser has agreed, among other things, to enter into the proposed
UAW Retiree Settlement Agreement, pursuant to which the Purchaser will make contributions to
a voluntary employee beneficiary association trust (the "New VEBA") in respect of non-pension
retiree benefits to the UAW-Represented Retirees on terms that differ from the terms of the
MOU and the 2008 Settlement Agreement. Among other things, the UAW Retiree Settlement
Agreement provides for the funding of the New VEBA with a combination of (i) shares of the
Purchaser's common stock representing 17.5% of the aggregate common equity interest in the
Purchaser; (ii) a promissory note of the Purchaser in the principal amount of $2.5 billion, payable
in three equal cash installments on July 15 of 2013, 2015, and 2017; (iii) shares of the
Purchaser's cumulative perpetual preferred stock in the amount of $6.5 billion, with a 9%
dividend per annum, payable quarterly in cash; (iv) warrants to acquire newly issued shares of
the Purchaser representing 2.5% of the Purchaser's common equity outstanding at December 31,
2009, issuable at any time prior to December 31, 2015; and (v) the assets held in the existing
voluntary employee beneficiary association trust sponsored by the Sellers and to be transferred to
the Purchaser, which at March 31, 2009 had a value of approximately $9.4 billion.

6.    In addition, GM, the UAW, and the Class Representatives have entered into an agreement, dated May 29, 2009 (the "UAW Claims Agreement"), pursuant to which the UAW and Class Representatives agreed, subject to the consummation of the 363 Transaction and the UAW Retiree Settlement Agreement becoming effective following approval of the Bankruptcy Court, to take further actions to release claims against GM and its subsidiaries, and their employees, officers, directors, and agents, relating to retiree medical benefits pursuant to the MOU, Settlement Agreement, and UAW collective bargaining agreements, *provided* that such claims may be reinstated if the rights or benefits of the UAW-Represented Retirees under the UAW Retiree Settlement Agreement are adversely impacted by reason of any reversal or modification of the Bankruptcy Court's approval of the 363 Transaction or UAW Retiree Settlement Agreement.

7.    The UAW is the authorized representative of the UAW-Represented Retirees for purposes of approval of the UAW Retiree Settlement Agreement and the UAW Claims Agreement pursuant to section 1114 of the United States Bankruptcy Code. At the Sale Hearing, the Debtors will request approval by the Bankruptcy Court of the UAW Retiree Settlement Agreement, the UAW CBA Assignment, and the assumption by GM of the UAW Claims Agreement, in each case as an agreement with the UAW, as the authorized representative of the UAW-Represented Retirees.

8.    A copy of the MPA (without certain commercially sensitive attachments) and the Motion (including the proposed Sale Order), the Sale Procedures Order as entered by the Bankruptcy Court (with the Sale Procedures attached), and the UAW Retiree Settlement Agreement, including all exhibits thereto, may be obtained (i) by accessing (a) the website of the Bankruptcy Court at http://www.nysb.uscourts.gov, or (b) the website of the Debtors' claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com/ or (ii) by visiting the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408. Copies also may be obtained by faxing a written request to the attorneys for the Debtors, Weil, Gotshal & Manges LLP (Attn: Russell Brooks, Esq.) at 212-310-8007.

9.    **Responses or objections, if any, to the relief sought in the Motion, including the approval of the UAW Retiree Settlement Agreement, and the assumption of the UAW Claims Agreement must be made in writing and filed with the Clerk of the Bankruptcy Court and served upon (a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) the attorneys for the Creditors Committee; (d) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: A. Richard Susko, James L. Bromley, Esq.); (e) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004., so as to be received no later than June 19, 2009, at 5:00 p.m. (Eastern Time) (the "Objection Deadline").**

10.     The failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief requested in the Motion, including approval of the UAW Retiree Settlement Agreement, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the 363 Transaction, and the UAW Retiree Settlement Agreement, and the Debtors' consummation of the 363 Transaction.

11.     This Notice is subject to the full terms and conditions of the Motion, the Sale Procedures Order, the MPA, and the UAW Retiree Settlement Agreement, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

12.     If you have questions about the 363 Transaction or the UAW Retiree Settlement Agreement, you may call 1-800-489-4646 (the "Call Center").

Dated:  New York, New York
         June __, 2009


                                    _____
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession