## EXHIBIT F

## FORM OF UAW RETIREE NOTICE

## A Message to UAW GM Retirees

Dear Brothers and Sisters,

As we all know, GM is engulfed in a severe crisis. GM's staggering losses during 2008 and 2009 have forced the company to file for bankruptcy. The Company has also been forced to rely on loans from the federal government in order to maintain its operations. In this environment, we are fighting every day to preserve and protect to the greatest extent possible our hard-won gains, particularly for the retirees, and surviving spouses of retirees, who helped build this industry with your years of loyal service.

Last December, after a lengthy process that included congressional hearings and petitioning the White House, the federal government granted GM a short-term emergency operating loan in order to avoid an immediate liquidation of the company at that time. As part of that loan, GM was required to submit a restructuring plan to the Treasury Department by February 17, 2009. On March 30, President Obama announced that the company's February 17 plan didn't go far enough in reducing costs and laying the groundwork for sustainability. He said GM would have to identify additional cost savings and debt reductions if GM were to receive additional financial support. The Treasury Department's auto task force also required deeper concessions from UAW members, retirees and other company stakeholders.

On May 28, GM announced that the Treasury Department would provide additional financial support in connection with a court-supervised restructuring of GM, in accordance with the terms of a broad restructuring agreement worked out between Treasury, GM, the UAW and representatives of GM's bondholders.

The agreement under which the Treasury Department will extend this new financial support includes a new schedule of contributions to the trust fund that will provide retiree medical benefits beginning in 2010. It also includes modifications to the collective bargaining agreement for active employees. The UAW active workforce ratified that agreement May 29. Based on these agreements, the United States government will provide a total of over $50 billion in financial support to allow GM to complete its restructuring.

GM's recent bankruptcy filing is part of the agreement reached with the Treasury Department. The goal of the bankruptcy filing is to allow for swift court approval of the restructuring so that the company can move forward to implement the agreements between the parties.

### Proposed Sale

To complete the restructuring, a new company will be formed which will purchase the operating assets of GM. If approved by the Bankruptcy Court, the new company will enter into the agreements with the UAW covering both active and retired workers. The initial ownership of the new corporation will be allocated as follows:

   ➢ 72.5% --   United States and Canadian Governments

   ➢ 17.5% --   UAW Retiree Benefits Trust Fund

➢ 10%  --  Bondholders

As part of the approval of the proposed sale, the Bankruptcy Court will also be asked to approve the new UAW Retiree Settlement Agreement, summarized below. As described more fully in Paragraph 6 of the attached document, if the court approves both the sale and the UAW Retiree Settlement Agreement, responsibility for providing retiree benefits for the duration of 2009, and for making the contributions to the VEBA, will shift to the new company (which will then own GM's operating assets).

Attached to this letter is a formal notice from the Bankruptcy Court regarding the proposed sale. As described in that notice, the Bankruptcy Court will soon hold a hearing to consider the proposed sale and the UAW Retiree Settlement Agreement.

**Pension Plan Continues Without Change**

The restructuring agreements provide that the new company will take over responsibility for the GM UAW pension plan. That plan will continue operations and pension benefits will be continued at their current level.

**Retiree Medical Benefits**

Retiree medical benefits were one of the most significant issues addressed in 2007 bargaining. The 2007 National UAW-GM Agreement established a new Trust Fund (called a "Voluntary Employees' Beneficiary Association" or "VEBA"), which is responsible for retiree medical benefits starting on January 1, 2010. The 2007 Agreement established a series of cash contributions by the Company to the VEBA, beginning on January 1, 2010.

In order for GM to receive the necessary government support -- which will allow the company to complete its restructuring and continue operations into the future -- we were required to support a series of changes to the retiree medical and VEBA agreements.

In this difficult situation, we were able to preserve the core medical benefits for retirees. These were hard fought issues and the changes described below are certainly painful. But if we had not agreed to support these changes, the U.S. Treasury would not have provided the additional support to GM. Without this critical government support, GM's near term future would be in serious peril and GM would face almost certain liquidation.

The following summarizes the principal features of the proposed agreement.

**Existing Internal VEBA Assets Transferred in January 2010.** Along with the new payment structure described below, in January 2010 the VEBA will receive the assets of an internal trust fund maintained at GM (called the "Internal VEBA"). The value of the assets in that fund is currently approximately $10 billion. GM had sought to use these assets to cover the cost of benefits prior to the January 1, 2010 implementation, which would have depleted these assets and diminished the cash balance in the new VEBA. We successfully resisted these efforts and

the new VEBA will therefore receive the full value of these Internal VEBA assets on January 1, 2010 as outlined in the 2007 agreement.

The assets in the Internal VEBA have been invested by GM on the VEBA's behalf since January 1, 2008. The value of these assets has been negatively impacted by conditions in the investment market during 2008 and so far in 2009. These assets will continue to be invested during the balance of 2009 and will be transferred to the new VEBA on January 1, 2010.

**New $2.5 Billion Note.** Under the new funding structure, the VEBA will receive a new Note, payable in cash, with a principal amount of $2.5 billion. Cash payments under the new Note (including accrued interest) will be $1.384 billion payable in each of 2013, 2015 and 2017.

**New $6.5 Billion in Preferred Stock.** The VEBA will also receive Preferred Stock in the new company with a face value of $6.5 billion. This Preferred Stock includes a 9% cash dividend payment structure, under which $585 million is payable annually for as long as the VEBA holds this stock. This dividend payment must be made before the new company can pay any dividends to the holders of its common stock. If the company delays payment of the dividends on the Preferred Stock, it will not be allowed to pay dividends to its common shareholders until it becomes current on the VEBA's Preferred Stock dividend obligations. While this preference over the common shareholders makes it likely the new company will consistently pay the preferred dividend, there is a risk that market conditions or other factors beyond the control of the UAW may result in the company delaying these preferred dividends for some period of time.

**VEBA to own Significant GM Common Stock.** Another requirement of the Treasury Department loans was that a portion of the value received by the VEBA be in the form of common stock. To meet that requirement, the VEBA will receive an initial allocation of 17.5% of the stock in the new company. The United States and Canadian Governments will receive 72.5% of the initial stock, and bondholders will receive 10%.

The VEBA will also have the right to designate a member of GM's Board of Directors, with UAW consent. The VEBA will be required to vote its GM shares in the same proportion as the votes of other shareholders.

The overall restructuring of GM will eliminate a tremendous portion of GM's other debt obligations. With a greatly improved balance sheet, as well as significant restructuring of business operations, there is a realistic prospect that the stock in the new company will represent significant value in the future. If and when that occurs, a significant portion of that value will be captured by the VEBA through this stock ownership.

**Warrants.** In addition to the direct ownership of the Preferred and Common Stock described above, the new VEBA will also receive a Warrant, which represents the right to an additional 2.5% of the Common Stock of the new company, with a strike price determined by an aggregate $75 billion equity value for the new company. This will allow the VEBA to realize additional value if the total value of the stock of the new company exceeds that value at any point prior to expiration of the new Warrant.

The new VEBA agreement includes mechanisms for the VEBA to sell the Common and Preferred Stock, as well as the new Warrants, to other parties under certain conditions.

**Pension Pass Through Eliminated.** One funding mechanism under the 2007 Agreement was called the "Pension Pass Through." Under that arrangement, the new VEBA was scheduled to impose an additional monthly contribution requirement, and the GM pension benefits were to increase by a corresponding amount. This mechanism has been eliminated and its value is instead reflected in the new Note and other instruments described above.

**Mitigation VEBA Assets Transferred.** Under the existing agreements, an independent VEBA is currently providing dental benefits and certain "mitigation" payments (i.e. covering a significant portion of the co-pays, deductibles and contributions that retirees would otherwise be required to pay under the 2005 agreement). Under the 2007 Agreement and the proposed new agreement, the assets in this existing independent VEBA (called the "Mitigation VEBA") will be transferred into the new VEBA on January 1, 2010. It is expected that the assets in the Mitigation VEBA will be approximately $700 million on January 1, 2010 but the actual balance will depend on investment performance and other factors during the balance of 2009. As explained below, the dental benefits currently provided by the Mitigation VEBA will be eliminated in accordance with the proposed new agreement.

**VEBA Committee can adjust benefits beginning in 2010.** As under the 2007 Agreement, the VEBA will be governed by an 11-member Committee, including 5 members appointed by the UAW and 6 Independent Members. Under the 2007 Agreement, that Committee had the authority, starting on January 1, 2012, to adjust benefits so that benefit levels can be kept consistent with the assets in the Trust. Under the proposed agreement, the Committee will be allowed to make necessary benefit adjustments beginning when the VEBA assumes responsibility on January 1, 2010.

## Immediate Changes in Benefit Levels Required

Under the 2007 Agreement, GM remained responsible for providing retiree medical benefits through the end of 2009, with the new VEBA taking over responsibility on January 1, 2010. In the discussions over the last several weeks, the company sought an "early implementation" of this transition. Had we agreed to that approach, the assets of the VEBA would have been depleted to pay benefits for the remainder of 2009.

We succeeded in avoiding this depletion of the VEBA's assets during 2009. The new company will therefore continue to provide retiree medical benefits for the balance of 2009 until the new VEBA takes over responsibility. In exchange, however, the Treasury Department insisted that the benefits be immediately reduced to reflect GM's difficult financial situation. In order to maintain the support of the Government, therefore, we were required to agree to the following changes in benefits. These changes will be effective on July 1, 2009 (or later if court approval is delayed beyond that date).

| Prescription Drug Co-Pays | Retail (34 day supply)<br>• $10 Generic<br>• $25 Brand<br><br>Mail Order (90 day supply) |

|  | • $20 Generic<br>• $50 Brand |
| --- | --- |
| Catastrophic Plan for retirees and surviving spouses who fail to pay required monthly contributions | No longer offered. Retirees and surviving spouses currently in Catastrophic Plan will be given opportunity to join regular plan. |
| Coverage for Erectile Dysfunction (ED) medications (e.g. Viagra, Cialis, Levitra) | No longer offered, except in prior authorized cases of Pulmonary Arterial Hypertension |
| Coverage for the Proton Pump Inhibitor drug class (e.g. omeprazole, Prilosec, Zegerid, Nexium, Achiphex, Prevacid, Protonix) | No longer offered, except in prior authorized cases of Barrett's Esophagitis and Zoellinger-Ellison Syndrome |
| Vision Program | No longer offered |
| Dental Program | No longer offered |
| Emergency Room Co-Pay | $100 (waived if admitted) |
| Medicare Part B Special Benefit ($76.20 per month for retirees enrolled in Medicare) | No longer offered by health plan.<br><br>This modification is not applicable to approximately 24,800 retirees and surviving spouses who retired or began receiving surviving spouse benefits before October 1979, and whose benefit is provided through the pension trust. The payments will continue for these pre-1979 retirees and surviving spouses. |
| "Low Income Retirees" (less than $8,000 annual pension and monthly basic benefit rate of less than $33.33) | Monthly contribution requirement of $11 (flat rate regardless of family status)<br><br>In all other respects, these retirees and surviving spouses will be included in same plan as other retirees and surviving spouses. |
| Monthly Contribution Requirements (General Retirees) | No Change (currently $11/single and $23/family) |
| Deductible and Co-Pay Requirements (General Retirees) | No Change (currently $164 annual deductible and $273 annual (single) out-of-pocket maximum) |
| Sponsored Dependents and Principally Supported Children | Consistent with changes made to the active medical program, the retiree medical program will not allow the designation of new "sponsored dependents" or "principally supported children." The provisions allowing new dependents to be added as a result of adoption or legal guardianship will continue in effect. |

## The Future Outlook

In the early years of the VEBA's existence, it is unlikely that the VEBA will be able to sell the stock in the new company. The new VEBA will therefore be required to use the $10 billion in immediate contributions from the Internal VEBA at GM, along with the assets of the Mitigation VEBA and the $585 million annual cash dividend payment on the Preferred Stock, to provide retiree medical benefits during 2010 and 2011. Because of the uncertainty regarding the long-term value of the stock, the Committee will likely be required to make further adjustments in the benefit levels for 2010 and 2011. The extent of those future adjustments will depend on many factors, including investment returns in the Internal and Mitigation VEBA's during the remaining months of 2009, and whether the dividends on the new $6.5 billion in Preferred Stock are delayed.

If the stock can be sold in 2012 or thereafter for significant value, the Committee will be able to take that new value into account and restore some or all of the benefits that are being reduced under these arrangements. In other words, if the current restructuring efforts are successful and the company returns to viability, the UAW retirees stand to reap the benefit of that recovery through the VEBA's significant stock ownership.

We urge your support for these proposed agreements. In these difficult circumstances, we believe they provide the best possible protection for your retiree benefits.

In solidarity,

| | | |
|---|---|---|
| Ron Gettelfinger | Cal Rapson, *Vice President* | Bill Payne |
| *UAW President* | *and Director, UAW GM Department* | *Counsel to the Class* |

---

**Important Notes**

For further information about the proposed agreement and the process for court review of the proposed agreements and the proposed sale, please refer to the enclosed legal notice. Full and complete copies of the proposed retiree health agreement can be found on the website referred to in that notice.

**If you support the proposed agreement, you do not need to take any action at this time. Information about the modified medical plan will be sent to you following court approval. If you wish to object to the proposed agreements, you must file a written objection as described in the enclosed legal notice.**

Counsel to the Class Representatives participated in negotiation of the 2007 retiree medical agreements which were approved by the District Court for the Eastern District of Michigan on July 31, 2008. Although the Class Representatives are not formal parties to the new agreements described above, Counsel to the Class Representatives has reviewed the proposed agreements and is in full support of the efforts to obtain Bankruptcy Court approval of the new agreements. Counsel for the Class has entered an appearance in the Bankruptcy case and will be supporting approval of the proposed agreements.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                  :
In re                                             :    Chapter 11 Case No.
                                                  :
GENERAL MOTORS CORP., *et al.*,                   :    09-_____ (___)
                                                  :
                       Debtors.                   :    (Jointly Administered)
                                                  :
------------------------------------------------------------------x

### NOTICE TO DEBTORS' RETIREES REPRESENTED BY THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA OF SALE OF DEBTORS' ASSETS AND APPROVAL OF UAW RETIREE SETTLEMENT AGREEMENT

PLEASE TAKE NOTICE THAT:

1.  By motion dated June 1, 2009 (the "Motion"), General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"),[1] have sought, among other things, authorization and approval of (a) the sale of substantially all the Debtors' assets pursuant to that certain Master Sale and Purchase Agreement and related agreements (the "MPA") among the Debtors (the "Sellers") and Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury") (the "363 Transaction"), free and clear of liens, claims, encumbrances, and other interests, (b) certain proposed procedures to govern the sale process and provide for the submission of any competing bids for substantially all the Debtors' assets (the "Sale Procedures"), (c) the assumption and assignment of certain executory contracts and unexpired leases of personal property and of nonresidential real property (collectively, the "Leases") in connection with the 363 Transaction, (d) that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") consented to by representatives of members of the "Class" of the Debtors' retirees and surviving spouses represented by the UAW such representatives, the "Class Representatives") to be executed at the closing of the 363 Transaction (the "UAW Retiree Settlement Agreement"), and (e) scheduling a hearing for approval of the 363 Transaction and the UAW Retiree Settlement Agreement (the "Sale Hearing").[2]

---

[1] The Debtors and their respective Tax ID numbers are as follows: General Motors Corporation, Tax ID No. 38-0572515; Saturn, LLC, Tax ID No. 38-2577506; Saturn Distribution Corporation, Tax ID No. 38-2755764; and Chevrolet-Saturn of Harlem, Inc., Tax ID No. 20-1426707.

[2] Copies of the Motion and the MPA (without certain commercially sensitive attachments) may be obtained by accessing the website established by the Debtors' claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com.

2. The Sale Hearing is scheduled to be conducted on June 30, 2009 at __:__ _.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room ___, New York, New York 10004 (the "Bankruptcy Court"), before the Honorable Robert E. Gerber, United States Bankruptcy Judge, to consider the approval of the MPA or any higher or better offer by a Successful Bidder (as defined in the Sale Procedures) and approval of the UAW Retiree Settlement Agreement. If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of an order approving the 363 Transaction substantially in the form of the order attached to the Motion as Exhibit "B" (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

3. Coverage of Retiree Medical Benefits (as defined in the UAW Retiree Settlement Agreement) will continue to be provided to UAW-Represented Retirees (as defined in the Sale Procedures Order) and their eligible dependents without interruption by either GM or the Purchaser up until December 31, 2009, in accordance with the terms of agreements negotiated and agreed to by the UAW, which include certain benefit reductions to take effect on July 1, 2009 (or, if later, Bankruptcy Court approval, if needed).

4. Contingent upon the Bankruptcy Court's approval of the 363 Transaction, and concurrently with the sale of the Debtors' assets pursuant to the 363 Transaction, the Debtors will assume and assign to the Purchaser any collective bargaining agreements entered into by and between the Debtors and the UAW (the "UAW CBA Assignment"), with the exception of (a) the agreement to provide certain retiree medical benefits specified in the Memorandum of Understanding Post-Retirement Medical Care, dated September 26, 2007, between the Company and the UAW ("MOU"); and (b) the Settlement Agreement, dated February 21, 2008, between the Company and the UAW (the "2008 Settlement Agreement"), which was approved by the United States District Court for the Eastern District of Michigan in the class action styled *Int'l Union, UAW, et al. v. General Motors Corporation*, Civil Action No. 07-14074 (E.D. Mich. filed Sept. 9, 2007) (final order entered July 31, 2008).

5. The Purchaser has agreed, among other things, to enter into the proposed UAW Retiree Settlement Agreement, pursuant to which the Purchaser will make contributions to a voluntary employee beneficiary association trust (the "New VEBA") in respect of non-pension retiree benefits to the UAW-Represented Retirees on terms that differ from the terms of the MOU and the 2008 Settlement Agreement. Among other things, the UAW Retiree Settlement Agreement provides for the funding of the New VEBA with a combination of (i) shares of the Purchaser's common stock representing 17.5% of the aggregate common equity interest in the Purchaser; (ii) a promissory note of the Purchaser in the principal amount of $2.5 billion, payable in three equal cash installments on July 15 of 2013, 2015, and 2017; (iii) shares of the Purchaser's cumulative perpetual preferred stock in the amount of $6.5 billion, with a 9% dividend per annum, payable quarterly in cash; (iv) warrants to acquire newly issued shares of the Purchaser representing 2.5% of the Purchaser's common equity outstanding at December 31, 2009, issuable at any time prior to December 31, 2015; and (v) the assets held in the existing voluntary employee beneficiary association trust sponsored by the Sellers and to be transferred to the Purchaser, which at March 31, 2009 had a value of approximately $9.4 billion.

6. In addition, GM, the UAW, and the Class Representatives have entered into an agreement, dated May 29, 2009 (the "UAW Claims Agreement"), pursuant to which the UAW and Class Representatives agreed, subject to the consummation of the 363 Transaction and the UAW Retiree Settlement Agreement becoming effective following approval of the Bankruptcy Court, to take further actions to release claims against GM and its subsidiaries, and their employees, officers, directors, and agents, relating to retiree medical benefits pursuant to the MOU, Settlement Agreement, and UAW collective bargaining agreements, *provided* that such claims may be reinstated if the rights or benefits of the UAW-Represented Retirees under the UAW Retiree Settlement Agreement are adversely impacted by reason of any reversal or modification of the Bankruptcy Court's approval of the 363 Transaction or UAW Retiree Settlement Agreement.

7. The UAW is the authorized representative of the UAW-Represented Retirees for purposes of approval of the UAW Retiree Settlement Agreement and the UAW Claims Agreement pursuant to section 1114 of the United States Bankruptcy Code. At the Sale Hearing, the Debtors will request approval by the Bankruptcy Court of the UAW Retiree Settlement Agreement, the UAW CBA Assignment, and the assumption by GM of the UAW Claims Agreement, in each case as an agreement with the UAW, as the authorized representative of the UAW-Represented Retirees.

8. A copy of the MPA (without certain commercially sensitive attachments) and the Motion (including the proposed Sale Order), the Sale Procedures Order as entered by the Bankruptcy Court (with the Sale Procedures attached), and the UAW Retiree Settlement Agreement, including all exhibits thereto, may be obtained (i) by accessing (a) the website of the Bankruptcy Court at http://www.nysb.uscourts.gov, or (b) the website of the Debtors' claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com/ or (ii) by visiting the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408. Copies also may be obtained by faxing a written request to the attorneys for the Debtors, Weil, Gotshal & Manges LLP (Attn: Russell Brooks, Esq.) at 212-310-8007.

9. **Responses or objections, if any, to the relief sought in the Motion, including the approval of the UAW Retiree Settlement Agreement, and the assumption of the UAW Claims Agreement must be made in writing and filed with the Clerk of the Bankruptcy Court and served upon (a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) the attorneys for the Creditors Committee; (d) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: A. Richard Susko, James L. Bromley, Esq.); (e) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004., so as to be received no later than June 19, 2009, at 5:00 p.m. (Eastern Time) (the "Objection Deadline").**

10. The failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief requested in the Motion, including approval of the UAW Retiree Settlement Agreement, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the 363 Transaction, and the UAW Retiree Settlement Agreement, and the Debtors' consummation of the 363 Transaction.

11. This Notice is subject to the full terms and conditions of the Motion, the Sale Procedures Order, the MPA, and the UAW Retiree Settlement Agreement, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

12. If you have questions about the 363 Transaction or the UAW Retiree Settlement Agreement, you may call 1-800-489-4646 (the "Call Center").

Dated: New York, New York
       June __, 2009

                                              Harvey R. Miller
                                              Stephen Karotkin
                                              Joseph H. Smolinsky

                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone: (212) 310-8000
                                              Facsimile: (212) 310-8007

                                              Attorneys for Debtors
                                              and Debtors in Possession