**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                :
In re                                           :        Chapter 11 Case No.
                                                :
**STEVE & BARRY'S**                             :
**MANHATTAN LLC, et al.,**                      :        08-12579 (ALG)
                                                :
         Debtors.                               :        (Jointly Administered)
                                                :
----------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004, 6006 AND 9014 (i) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (ii) APPROVING ASSET PURCHASE AGREEMENT; (iii) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (iv) AUTHORIZING THE CONDUCT OF STORE CLOSING SALES; (v) APPROVING AGENCY AGREEMENTS; AND (vi) GRANTING RELATED RELIEF**

Upon the amended motion (the "Motion"), dated July 16, 2008, of Steve & Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking:

(I)    an order (the "Bidding Procedures Order"), among other things, (A) approving procedures for (i) submitting bids for any or all of the Debtors' assets or businesses, (ii) conducting an auction with respect to any assets or businesses on which the Debtors receive more than one bid; (B) authorizing the Debtors to enter into a "stalking horse" agreement with a bidder or bidders; (C) approving procedures for the assumption and assignment of contracts and leases to any purchaser(s) of the Debtors' assets, and/or to

resolve any objections thereto; and (D) scheduling an auction and a hearing to approve any such sale; and

(II)  an order (the "Sale Order"), among other things, (A) authorizing the sale of all or substantially all of the Debtors' assets, free and clear of liens, claims and encumbrances; (B) authorizing the assumption, assignment and sale of the Debtors' contracts and leases; (C) approving either or both of (i) an asset purchase agreement for the sale of all or some of the Debtors' assets, and/or (ii) an agency agreement for the liquidation of all or some of the Debtors' inventory, with the party or parties submitting the highest or otherwise best bids; (D) affording the protections under section 363(m) to the successful bidder(s) as good faith purchasers; (E) authorizing the conduct of store closing sales notwithstanding any restrictions in restrictive documents that may impair the Debtors' ability to conduct store closing sales; and (F) exempting the Debtors' store closing sales from certain federal, state, and local laws, statutes, rules, and ordinances related to store closing and liquidation sales;

and the Court having entered the Bidding Procedures Order on August 5, 2008, among other things, authorizing the Debtors to enter into the following agreements with BH S&B Holdings, LLC (the "Purchaser" and "Agent") and Hilco Merchant Resources, LLC, on behalf of a joint venture composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (together, the "Sub-Agent"):

(i)  that certain Asset Purchase Agreement dated as of August 4, 2008, among the Debtors, Purchaser and Agent annexed to the Motion (as has been or may

be amended, the "Asset Purchase Agreement") for the Debtors' sale of the

Purchased Assets (as defined in the Asset Purchase Agreement) to Purchaser,

including without limitation (a) the assumption, assignment and sale, from

time to time from the Closing Date (as defined in the Asset Purchase

Agreement) through the Designation Deadline (defined in the Asset Purchase

Agreement as January 31, 2009, or such later date as the Bankruptcy Court

may authorize), of the Purchased Contracts and Purchased Leases (as such

terms are defined in the Asset Purchase Agreement) to Purchaser (the

"Purchaser Assumed Contracts") and of the Designee Contracts and

Designee Leases (as such terms are defined in the Asset Purchase

Agreement) to Purchaser's designee (the "Designee Assumed Contracts"

and, together with the Purchaser Assumed Contracts, the "Assumed

Contracts"), and (b) the right to act as the exclusive agent of the Debtors for

the limited purposes of marketing and disposing of the Real Property Leases

that have not yet been designated as Purchased Leases, Designee Leases or

Excluded Leases from and after the Closing Date through the Applicable

Lease Marketing Period (as all such terms are defined in the Asset Purchase

Agreement), and thereafter to designate the ultimate assignee of all of the

Debtors' right, title and interest in and to such Real Property Leases, all

pursuant to and as described in the Asset Purchase Agreement (the "Asset

Sale");

(ii)    that certain Agency Agreement dated as of August 4, 2008, as has been or

may be amended from time to time, between the Debtors and Agent annexed

to the Asset Purchase Agreement as Exhibit D (the "Agency Agreement")

for the sale by the Agent of the GOB Assets (as defined in the Asset

Purchase Agreement) in store closing sales to be conducted through not later

than November 30, 2008 (or such later date as provided in the Agency

Agreement) at certain of the Debtors' retail locations, in conjunction with the

sale of the Purchased Assets under the Asset Purchase Agreement; and

(iii)    a Standby Agency Agreement dated as of August 4, 2008 between the

Debtors and Agent annexed to the Asset Purchase Agreement as Exhibit G

(as has been or may be amended, the "Standby Agency Agreement" and,

together with the Agency Agreement, the "Agency Agreements") for the sale

by the Agent of substantially all of the Debtors' inventory and owned

furniture, fixtures and equipment in store closing sales to be conducted

through not later than November 30, 2008 (or such later date as provided in

the Standby Agency Agreement) at all of the Debtors' retail locations, in the

event the Asset Purchase Agreement is terminated (the store closing sales

under either the Agency Agreement or the Standby Agency Agreement are

referred to herein as the "Store Closing Sales"; and the Asset Sale, the Store

Closing Sales and all other transactions contemplated by the Asset Purchase

Agreement and Agency Agreements are collectively referred to herein as the

"Sale");

and an auction having been scheduled for and conducted on August 18, 19 and 20, 2008 (the

"Auction") in accordance with the Bidding Procedures Order; and the Debtors having served on

August 8, 2008, in accordance with the Bidding Procedures Order, Assignment Schedules and

Adequate Assurance Packages (as such terms are defined in the Bidding Procedures Order) upon each non-Debtor counterparty to the Debtors' executory contracts and unexpired leases which the Debtors may seek to assume and assign (collectively, the "Assumption and Assignment Notices"); and the Debtors having determined that the Asset Purchase Agreement together with the Agency Agreements (collectively, the "Agreements") constitute the highest and best bid for the Purchased Assets and the GOB Assets (collectively, the "Assets"); and a hearing having commenced on August 21, 2008 and as was continued from time to time (the "Sale Approval Hearing") to consider, among other things:

> (i) approval of (a) the sale of the Purchased Assets, including the sale of the right to dispose of the GOB Assets, to Purchaser pursuant to the Asset Purchase Agreement, and (b) the sale of the Merchandise and Owned FF&E (as such terms are defined in the Agency Agreements) and other Assets to be sold in the Store Closing Sales (collectively, "Store Closing Assets") by Agent pursuant to the Agency Agreements, in each case, free and clear of all liens, claims, encumbrances, and other Interests (as hereinafter defined), with such Interests to transfer, affix and attach to the Purchase Price (as defined in the Asset Purchase Agreement) and other amounts to be received by the Debtors under the Agreements (the "Sale Proceeds") with the same priority, force and effect, all as more fully set forth herein;

> (ii) authorizing the assumption and assignment of the Purchaser Assumed Contracts to Purchaser pursuant to and as provided for in the Asset Purchase Agreement; and

> (iii) authorizing the conduct of the Store Closing Sales;

and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.) and the General Order M-331 of the Board of Judges of the Southern District of New York for the Guidelines for the Conduct of Asset Sales, dated September 5, 2006 (Bernstein, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) counsel for General Electric Capital Corporation ("GECC") and counsel for PrenSB LLC ("PrenSB"), as agents for the Debtors' prepetition secured lenders and participants (collectively, the "Prepetition Secured Lenders"); (iii) all known creditors of the Debtors; (iv) entities who have affirmatively requested notice under Bankruptcy Rule 2002, (v) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Assets, (vi) counsel to the official committee of unsecured creditors (the "Committee"), (vii) all parties that have either expressed an interest in purchasing the Assets or who the Debtors believe may express an interest in purchasing the Assets, (viii) all parties to the Debtors' executory contracts and unexpired leases which the Debtors may seek to assume and assign in connection with the Sale, and (ix) all affected federal and local regulatory and taxing authorities, including the Internal Revenue Service; and it appearing that no other or further notice need be provided; and the Court having considered the Motion and the Agreements, the objections thereto, the statements of counsel and any testimony or offer of proof as to the testimony on the record at the Sale Approval Hearing; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein:

NOW, THEREFORE, upon the entire record of the Sale Approval Hearing and this case; and after due deliberation thereon; and good cause appearing therefor, IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Motion or the Agreements, as the case may be.

D.      The Court has jurisdiction over the Motion and the proposed Sale pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

E.      The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules.

F.      As evidenced by the affidavits of service and publication previously filed with the Court (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Approval Hearing, and the proposed Sale (including without limitation the Store Closing Sales and the assumption, assignment and sale of the Purchaser Assumed Contracts), has been provided to all

persons entitled thereto in accordance with sections 102(1), 363 and 365 of the Bankruptcy

Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, the Bidding Procedures Order, and the

Agreements, (ii) such notice was good and sufficient, and appropriate under the particular

circumstances, and (iii) no other or further notice of the Motion, the Sale Approval Hearing, or

the proposed Sale is or shall be required.

      G.     In accordance with the Assignment Procedures set forth in the Bidding

Procedures Order, on August 8, 2008, the Debtors filed and served the Assumption and

Assignment Notices upon each non-Debtor counterparty to the Debtors' executory contracts and

unexpired leases which the Debtors may seek to assume and assign in connection with the Sale.

The service of such Assumption and Assignment Notices was good, sufficient, and appropriate

under the circumstances and no further notice need be given in respect of the proposed

assumption and assignment of the Purchaser Assumed Contracts.  Non-debtor counterparties to

such Purchaser Assumed Contracts have had a reasonable opportunity to object to the proposed

cure amounts and the assumption and assignment of such contracts.

      H.     As demonstrated by (i) the testimony and other evidence proffered or adduced at

the Sale Approval Hearing and (ii) the representations on the record at the Sale Approval

Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance

with the Bidding Procedures Order, fairly, and with adequate opportunity for interested parties to

submit bids.

      I.     After giving effect to the provisions of the Bankruptcy Code and this Order, each

Debtor (i) has full corporate power and authority to execute the Agreements and all other

documents contemplated thereby, and the Sale by the Debtors has been duly and validly

authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate

power and authority necessary to consummate the transactions contemplated by the Agreements, (iii) has taken all corporate action necessary to authorize and approve the Agreements and the consummation by such Debtors of the Sale, and (iv) no consents or approvals, other than those expressly provided for in the Agreements, are required for the Debtors to consummate the Sale.

J.    Emergent circumstances and sound business reasons exist for Debtors' Sale of the Assets pursuant to the Agreements.  Entry into the Agreements and consummation of the Sale constitute the exercise by the Debtors of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale pursuant to sections 105, 363 and 365 of the Bankruptcy Code.  Such business reasons include, but are not limited to, the facts that (a) there is substantial risk of deterioration of the value of the Assets if the Sale is not consummated quickly; (b) the Agreements constitute the highest or best offer for the Assets; (c) the Agreements and the closing thereon will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business; and (d), unless the Sale is concluded and the Store Closing Sales conducted expeditiously as provided for in Motion and pursuant to the Agreements, creditors' recoveries may be diminished.

K.    The Agreements and the Sale contemplated thereby were negotiated and have been and are undertaken by the Debtors, the Purchaser, and the Agent at arms'-length, without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Auction was conducted in accordance with the Bidding Procedures Order, at which the Purchaser and Agent were declared the highest and/or best bidder, was conducted in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser and the

Agent have each proceeded in good faith in all respects in connection with this proceeding in that: (a) the Purchaser and the Agent each recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets and conducting the Store Closing Sales, respectively; (b) the Purchaser and the Agent each complied with the provisions in the Bidding Procedures Order; (c) the Purchaser and the Agent agreed to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures Order; and (d) all payments to be made by the Purchaser and the Agent and other agreements or arrangements that have been or may be entered into by the Purchaser or the Agent in connection with the Sale have been disclosed.  As a result of the foregoing, the Debtors, the Purchaser, and the Agent are entitled to the protections of section 363(m) of the Bankruptcy Code.

L.      The Debtors conducted the Auction in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Auction established in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer for the Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher and better offer for the Assets.  The Agreements constitute the highest and best offer for the Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Agreements constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.      Neither the Debtors, the Purchaser nor the Agent have violated section 363(n) of the Bankruptcy Code by any action or inaction or engaged in any conduct that would cause or permit any of the Agreements or the Sale to be avoided pursuant thereto.  Specifically, the

Purchaser and the Agent each have not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.  Steven Shore and Barry Prevor have agreed to participate as investors in the Purchaser, as set forth on the record at the Sale Approval Hearing.  Such action does not prevent the Court from finding that the Purchaser is a good faith purchaser and has not violated section 363(n) of the Bankruptcy Code.

N.    The consideration provided by the Purchaser and the Agent for the Assets is the highest or otherwise best offer received by the Debtors and is fair and reasonable.  The Agreements represent a fair and reasonable offer for the Assets under the circumstances of these chapter 11 cases.  No other person or entity or group of entities, other than the Purchaser and Agent, has offered any amount for the Assets that would give greater economic value to the Debtors' estates.  A sale of the Assets other than one free and clear of Interests would impact materially and adversely on the Debtors' estates, will yield substantially less value for the Debtors' estates, with less certainty than the available alternatives and thus the alternative would be of substantially less benefit to the estates of the Debtors.

O.    Based upon the record of the Sale Approval Hearing, actual written notice of the Sale Approval Hearing, the Motion and the Sale (and a reasonable opportunity to object thereto) has been afforded to all interested persons and entities, including:  (i) the U.S. Trustee; (ii) counsel for the agents for the Prepetition Secured Lenders; (iii) all known creditors of the Debtors; (iv) all affected federal and local regulatory and taxing authorities, including the Internal Revenue Service; (v) all parties known to be asserting a lien on any of the Assets; (vi) all counterparties to unexpired real property leases and executory contracts potentially to be assumed and assigned; (vii) all entities known to have expressed an interest in acquiring any of the Assets; (viii) all attorney generals in states in which any of the Debtors does business; and

(ix) all other parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of July 15, 2008.

P.      Neither the Purchaser nor the Agent has a common identity of incorporators, directors or equity holders with any of the Debtors, and is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code; provided, however, that as disclosed in the Declaration of Scott Sozio in Connection with BH S&B Holdings, LLC's Offer to Purchase Substantially All Assets of the Debtors, dated as of August 20, 2008, and at the Sale Approval Hearing, Steven Shore and Barry Prevor, who are equity holders and directors of the Debtors, will hold a significant minority interest in the Purchaser.

Q.      The Debtors are the sole and lawful owner of the Assets.  The transfer of the Assets pursuant to the Sale to the Purchaser and to the purchasers in the Store Closing Sales will be legal, valid, and effective transfers of the Assets, and will vest the respective purchasers with all right, title, and interest of the Debtors to the Assets (including the claims and causes of action of the estates being transferred pursuant to the Agreements) free and clear of all interests, including, but not limited to, those (A) that purport to give to any party a right or option to effect any forfeiture, modification, right of first offer or refusal, or termination of the Debtors' or the Purchaser's interest in the Assets, or any similar rights, (B) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing (as defined in the Asset Purchase Agreement), and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of use, hypothecations, easements, servitudes, restrictive covenants, leases, subleases, covenants, rights of way, options, claims (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), restrictions, encroachments,

encumbrances or charges of any kind or nature, if any, including, but not limited to, any

restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of

ownership and (ii) all debts arising in any way in connection with any agreements, acts, or

failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as

that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties,

options, rights, contractual or other commitments, restrictions, interests and matters of any kind

and nature, whether known or unknown, contingent or otherwise, whether arising prior to or

subsequent to the commencement of these cases pursuant to chapter 11 of the Bankruptcy Code,

and whether imposed by agreement, understanding, law, equity or otherwise, including but not

limited to the liens and security interests (including adequate protection liens and security

interests) of the Prepetition Secured Lenders and claims otherwise arising under doctrines of

successor liability (collectively, "Interests"), with all such Interests attaching to the Sale

Proceeds in the same order of priority and with the same force and effect as such Interests

enjoyed with respect to the Assets.

      R.     The Debtors may sell the Assets free and clear of all Interests of any kind or

nature whatsoever because, in each case, one or more of the standards set forth in

section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests in

any Assets which did not object, or which withdrew their objections, to the Sale or the Motion

are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those

holders of Interests in any Assets who did object fall within one or more of the other subsections

of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests,

if any, attach to the Sale Proceeds ultimately attributable to the property against or in which they

claim an Interest.

S.      Subject to entry of this Order, each of the Prepetition Revolver Agent, the

Prepetition Term Loan Agent (each as defined in the order of the Court entered on August 5,

2008, approving the Debtors' use of cash collateral (the "Cash Collateral Order")), the

Prepetition Secured Lenders and the Committee have consented to the Sale.

T.      The Purchaser and the Agent would not have entered into the Agreements, and

would not consummate the transactions contemplated thereby, thus adversely affecting the

Debtors, their estates, and their creditors, if the sale of the Purchased Assets to the Purchaser, the

assumption and assignment of the Purchaser Assumed Contracts to the Purchaser and all

amounts due to the Agent pursuant to the Agency Agreements were not free and clear of all

Interests of any kind or nature whatsoever, or if the Purchaser or the Agent would, or in the

future could, be liable for any of the Interests.

U.      The Purchaser and the Agent will not consummate the transactions contemplated

by the Agreements unless the Agreements specifically provide, and the Bankruptcy Court

specifically orders, that none of the Purchaser, the Agent, or the affiliates, members or

shareholders of the Purchaser and the Agent will have any liability whatsoever with respect to or

be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or

otherwise, directly or indirectly, any Interest or Excluded Liability (as defined in the Asset

Purchase Agreement).

V.      The Debtors have demonstrated that it is an exercise of their sound business

judgment to assume and assign the Assumed Contracts in connection with the consummation of

the Sale, and the assumption, assignment and sale of the Assumed Contracts is in the best

interests of the Debtors, their estates, and their creditors.  The Assumed Contracts being assigned

to the Purchaser or its designee, and the Assumed Liabilities being assumed by the Purchaser, are

an integral part of Purchased Assets being purchased under the Asset Purchase Agreement and, accordingly, such assumption, assignment and sale of Assumed Contracts and Assumed Liabilities are reasonable, enhance the value of the Debtors' estates, and do not constitute unfair discrimination.

W.    The Purchaser has (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Purchaser Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchaser Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Purchaser has demonstrated adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

X.    The Sale constitutes the sale of substantially all of the Debtors' assets to Purchaser.  Any license or other contract that by its terms permits assignment of the contract without the non-Debtor counterparty's consent in connection with the sale of substantially all of the Debtors' assets, therefore, is assignable to Purchaser in connection with the Sale.

Y.    The Sale must be approved and consummated promptly in order to preserve the viability of the business subject to the Sale as a going concern, to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale..

ORDERED, ADJUDGED AND DECREED THAT:

<u>General Provisions</u>

1.    The Motion is granted, as further described herein.

2.    All objections and responses concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Approval Hearing and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, they, and all reservations of rights (except as set forth herein) or relief requested therein, are overruled and denied.  The Committee's objections to the Motion hereby are deemed withdrawn.

Approval of the Asset Purchase Agreement

3.    The Asset Purchase Agreement, a copy of which is annexed hereto as Exhibit A, and all of the terms and conditions thereof, is approved.

4.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Asset Purchase Agreement, and consummate the Asset Sale, pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement.

5.    The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, all without cost to the Debtors.

<u>Transfer of Purchased Assets</u>

6.      Except as expressly permitted or otherwise specifically provided for in the Asset Purchase Agreement or this Order, upon Closing and payment of the amounts set forth in Section 3.1(b)(i) of the Asset Purchase Agreement (the "<u>Initial Payment</u>"), pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser, and shall be free and clear of all Interests of any kind or nature whatsoever with all such Interests of any kind or nature whatsoever to attach to the Sale Proceeds in the order of their priority, and with the same validity, force and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

7.      The transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

8.      If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then, upon Closing and payment of the Initial Payment (a) the Debtors are authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Purchaser is authorized to file, register, or otherwise record a

certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute

conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature

whatsoever.  On the Closing Date, this Order shall be construed and shall constitute for any and

all purposes a full and complete general assignment, conveyance and transfer of the Debtors'

interests in the Purchased Assets.  Each and every federal, state, and local governmental agency

or department is hereby directed to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

9.     Following the Closing Date (as defined in the Asset Purchase Agreement),

except as expressly permitted by the Asset Purchase Agreement or by this Order, all persons and

entities, including, but not limited to, the Debtors, employees, former employees, all debt

security holders, equity security holders, administrative agencies, governmental, tax and

regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract

parties, lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in

possession of any of the Purchased Assets at any time, trade creditors and all other creditors,

holding Interests of any kind or nature whatsoever against or in the Debtors or in the Debtors'

interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or

unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior

or subordinated), arising under or out of, in connection with, or in any way relating to, the

Debtors, the Purchased Assets, the operation of the Debtors' business before the Closing Date or

with respect to any Interests arising out of or related to the Sale, shall be and hereby are forever

barred, estopped and permanently enjoined from commencing, prosecuting or continuing in any

manner any action or other proceeding of any kind relating to or connection with the Debtors, the

Purchased Assets, or the operation of the Debtors' business before the Closing Date against

Purchaser, its property, its successors and assigns, alleged or otherwise, its affiliates or such

Purchased Assets.  Following the Closing Date, no holder of an Interest in the Debtors shall

interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or

related to such Interest, or any actions that the Debtors may take in their chapter 11 cases.

> 10.    Notwithstanding anything in this Order or the Agreements, the Purchaser's

rights to acquire goods pursuant to Section 2.1(c) of the Asset Purchase Agreement shall remain

subject to any rights, liens and claims warehousemen, customers brokers, freight forwarders,

carriers and shippers may have under applicable non-bankruptcy law with respect to such goods.

> 11.    Subject to the Interests attaching to the Sale Proceeds as provided for in

Paragraph 6 of this Order, this Order (a) shall be effective as a determination that, on the Closing

Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to

the Closing Date have been unconditionally released, discharged and terminated, and that the

conveyances described herein have been effected, and (b) shall be binding upon and shall govern

the acts of all entities including without limitation, all filing agents, filing officers, title agents,

title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Purchased

Assets.

> 12.    On the Closing Date and subject to the Interests attaching to the Sale

Proceeds as provided for in Paragraph 6 of this Order, each of the Debtors' creditors is

authorized and directed to execute such documents and take all other actions as may be

reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

13.    Neither the Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the Asset Purchase Agreement: (a) be a successor to the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser under the Asset Purchase Agreement shall not result in (i) the Purchaser, its affiliates, members, or shareholders as such, or the Purchased Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser, its affiliates, members, or shareholders as such, or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) Purchaser, its affiliates, members, or shareholders as such, or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Asset Purchase Agreement.  Without limiting the effect or scope of the foregoing, as a result of the closing of the transaction contemplated by the Asset Purchase Agreement, the Purchaser shall have no successor liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to,

liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, and liabilities under the Worker Adjustment Retraining Notification Act ("WARN Act") or any similar state or local law, or with respect to Equal Employment Opportunity Commission or state-level employee claims arising with respect to any of the Debtors' employees prior to the Closing, or arising after the Closing with respect to any employees that are not Transferred Employees (as defined in the Asset Purchase Agreement) at the time such liability arises.

Assumption, Assignment and Sale<br>of Assumed Contracts

14.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption, assignment and sale to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Purchaser Assumed Contracts, as modified by the terms of any lease modification, cure, consent and other agreements (the "Lease Assignment Agreements"), is approved, and the requirements of sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code with respect thereto are deemed satisfied.  The Lease Assignment Agreements hereby are approved and the Purchaser Assumed Contracts are hereby assumed according to their terms, as amended by the Lease Assignment Agreements to the extent applicable.

15.    The Debtors are authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, conditioned and effective upon the Closing of the Sale, the Purchaser Assumed Contracts identified on Exhibit B hereto free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the

Purchaser such documents or other instruments as may be necessary to assign and transfer the Purchaser Assumed Contracts and Assumed Liabilities to the Purchaser.

16.    The Debtors are authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to assume and assign to the Purchaser free and clear of all Interests of any kind or nature whatsoever any additional Purchaser Assumed Contracts identified by Purchaser following the date of this Order that were listed on the Assumption and Assignment Notices and as to which no objection to Assignment (as opposed to an objection to cure amounts) was timely filed by the counterparty to such contract in accordance with the Bid Procedures Order; provided, that such Assumption and Assignment shall be effective following the provision of notice to such counterparty of such Assumption and Assignment and to Purchaser in accordance with the Assignment Procedures.  Any dispute regarding cure amounts that has been preserved by the filing of an objection in accordance with the Bid Procedures Order or cure amounts arising and relating to the period from and after August 18, 2008 shall be resolved in accordance with Paragraph 19 of this Order.

17.    Subject to either compliance with the Assignment Procedures set forth in the Bidding Procedures Order or the consent of the non-Debtor party to an Assumed Contract, the Debtors are authorized in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser any Purchaser Assumed Contracts not identified on the Assumption and Assignment Notices, and (b) assume and assign to the Purchaser's designee any Designee Assumed Contracts, in each case free and clear of all Interests of any kind or nature whatsoever, and to execute and deliver to the Purchaser or its designee such documents or other instruments as may be necessary to assign and transfer such Assumed Contracts.

18.    (i) With respect to the Purchaser Assumed Contracts identified on Exhibit B hereto, (ii) subject to Paragraph 16 of this Order, with respect to Purchaser Assumed Contracts identified on the Assumption and Assignment Notices but not listed on Exhibit B hereto, and (iii) subject to Paragraph 17 of this Order, with respect to Purchaser Assumed Contracts not identified in the Assumption and Assignment Notices and Designee Assumed Contracts, (a) the Assumed Contracts shall be transferred and assigned to, and following the assumption and assignment shall and shall be deemed valid and binding and remain in full force and effect for the benefit of, the Purchaser or its designee in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser or its designee; (b) each such Assumed Contract is an executory contract of the Debtors under section 365 of the Bankruptcy Code; (c) the Debtors may assume each such Assumed Contract in accordance with Section 365 of the Bankruptcy Code; (d) the Debtors may assign each such Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Sellers and assignment to the Purchaser or its designee of each such Assumed

Contract have been satisfied and (f) upon (i) Closing, with respect to Purchaser Assumed

Contracts identified on Exhibit B, (ii) assumption and assignment, with respect to any additional

Purchaser Assumed Contracts identified by Purchaser following the date of this Order, provided

such Purchaser Assumed Contracts were listed on the Assumption and Assignment Notices, or

(iii) compliance with the Assignment Procedures set forth in the Bidding Procedures Order or the

consent of the non-Debtor party to an Assumed Contract, with respect to Purchaser Assumed

Contracts not identified on the Assumption and Assignment Notices and Designee Assumed

Contracts, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser or its

designee, as appropriate, shall be fully and irrevocably vested in all right, title and interest of

each such Assumed Contract.

19.     If an objection is or has been filed pursuant to the Bidding Procedures

Order with respect to the cure amount under any Assumed Contract, the dispute with respect to

the cure amount may be resolved consensually, if possible, by the parties, or, if the parties are

unable to resolve their dispute, by the Court.  During the pendency of a dispute relating to cure

amount under an Assumed Contract, at Purchaser's option in its sole discretion, Purchaser may

(i) pay the undisputed cure amount and escrow any reasonably disputed cure amount pending

agreement of the parties or further order of the Court, in which case the pendency of the dispute

relating to the cure amount shall not prevent or delay the assumption or assumption and

assignment of such Assumed Contract, or (ii) pay the cure amount as and when either agreed

upon by the parties consensually or finally determined by the Court as provided in Section 2.5(f)

of the Asset Purchase Agreement, in which case assumption and assignment of the Assumed

Contract shall not be effective immediately and, during the interim, in accordance with section

2.5(h) of the Asset Purchase Agreement, Purchaser shall be Debtors' agent-in-fact for the sole

purpose of allowing Purchaser to continue to operate under such contract or lease.  If, after

determination by the Bankruptcy Court of the cure amount in respect of any Purchased Contract

or Purchased Lease, Purchaser exercises its right under Section 2.5(f) of the Asset Purchase

Agreement to redesignate such Purchased Contract or Purchased Lease as an Excluded Contract

or Excluded Lease, any cure amounts paid by the Purchaser with respect to such Excluded

Contract or Excluded Lease shall be returned by the non-Debtor counterparty within three

business days of receiving notice of such redesignation.

      20.    To the extent any license or permit that is necessary for the operation of

the business is determined not to be an executory contract assumable and assignable under

section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary

license or permit promptly after the Closing and such licenses or permits of the Debtors shall

remain in place for the Purchaser's benefit until new licenses and permits are obtained.

      21.    The cure amounts set forth on <u>Exhibit B</u> and any cure amounts once

resolved by agreement or by the Court (collectively, the "<u>Cure Amounts</u>") are the true, correct,

final and fixed amounts, and only amounts, that are required to be paid upon assumption of the

Assumed Contracts pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code (except as

otherwise has been or may be agreed to in a signed writing between the Debtors and the lease

counterparty) and the Purchaser is directed to pay such amounts under sections 105, 363(b) and

365 of the Bankruptcy Code upon assumption of such Assumed Contracts.  The Cure Amounts

shall not be subject to further dispute or audit (except as otherwise has been or may be agreed to

in a signed writing between the Debtors and the lease counterparty), including any based on

performance prior to the time of assumption, assignment and sale, irrespective of whether such

Assumed Contract contains an audit clause.  The payment of the applicable Cure Amounts (if

any) shall (a) effect a cure of all monetary and nonmonetary defaults existing under the Assumed

Contracts as of the date of assumption and assignment, (b) compensate for any actual pecuniary

loss to such non-Debtor party resulting from such default, and (c) together with the assumption

of the Assumed Contracts by the Debtor, constitute adequate assurance of future performance

thereof.

22.    Purchaser has demonstrated adequate assurance of future performance

with respect to the Purchaser Assumed Contracts and has satisfied the requirements of the

Bankruptcy Code, including, without limitation, sections 365(b)(1) and (3) and 365(f)(2)(B) to

the extent applicable.

23.    There shall be no rent accelerations, assignment fees, increases or any

other fees charged to the Purchaser or its designee as a result of the assumption, assignment and

sale of the Assumed Contracts.  The validity of the assumption, assignment and sale to the

Purchaser or its designee shall not be affected by any dispute between any of the Debtors or their

affiliates and another party to an Assumed Contract regarding the payment of any amount,

including any cure amount under the Bankruptcy Code.

24.    Any party that may have had the right to consent to the assignment of its

Assumed Contract is deemed to have consented to such assignment for purposes of Section

365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if it failed to object to the assumption and

assignment.

25.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, each

non-Debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently

enjoined from raising or asserting against the Debtors, the Purchaser, the Purchaser's designees,

their affiliates or the property of any of them: (i) any fee, monetary or nonmonetary default,

breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising

under or related to the Assumed Contract existing as of the date of assumption and assignment or

arising by reason of the Closing (other than the Cure Amounts or such other amount as has been

or may be agreed to in a signed writing between the Debtors and the lease counterparty),

including without limitation under any Purchased Lease with respect to any tenant improvement

obligations, recoupment rights with respect to tenant improvement payments, rent, percentage

rent, common area charges, real estate taxes or utilities or other charges owing under the

Purchased Lease (including any amounts owed to the landlord pursuant to any "true-up"

provisions with respect to any of the foregoing for any portion of the current lease year which

elapsed prior to the Closing), and (ii) any condition to assignment or objection to the assumption

and assignment of such non-Debtor party's Assumed Contracts.

26.    Except as provided in the Asset Purchase Agreement or this Order, after

the Closing, the Debtors and their estates shall have no further liabilities or obligations with

respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped

from asserting such claims against the Debtors, their successors or assigns, their property or their

assets or estates.

Approval of the Agency Agreements

27.    The Debtors are hereby authorized and empowered to enter into the

Agency Agreements, and the Agency Agreements are each hereby approved, and it is further

ordered that all amounts payable to the Agent under the Agency Agreements shall be payable to

the Agent without the need for any application of the Agent therefor or a further order of the

Court.

28.    The Debtors, their officers, employees, and agents and the Agent are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Store Closing Sales, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agency Agreements, and to take all further actions as may be required under the Agency Agreements for the purpose of conveying any liens on the Merchandise and Owned FF&E (as such terms are defined in the Agency Agreements) and other Assets to be sold in the Store Closing Sales (collectively, "Store Closing Assets") pursuant to the applicable Agency Agreements to the Agent, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agency Agreements.  The Agent and the Debtors are hereby authorized to take or refrain from taking any and all steps necessary to effectuate, consummate and/or implement the terms of this Order.

29.    The Debtors are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales at the Closing Stores (as defined in the Agency Agreements) identified in accordance with the Agency Agreements.

30.    Except as otherwise provided in the Agency Agreements, pursuant to section 363(f) of the Bankruptcy Code, the Assets sold pursuant to the Agency Agreements shall be sold free and clear of any and all Interests, with such Interests attaching to the Sale Proceeds.

31.    Except as specified in the Agency Agreements, nothing in this Order or the Agency Agreements and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by the Agent of any liabilities or obligations of the Debtors, including, without limitation, severance, termination pay, pension, profit sharing or any other employee benefit plans, any collective bargaining or employment agreement, compensation or retiree medical and other benefits and obligations or any obligation, claim or

amount under the WARN Act or COBRA, or any liability to such employees as a joint or

successor employer, taxes, Interests, "adequate protection" obligations, mortgage obligations or

legal fees incurred by professionals retained in the Debtors' cases, liability to any landlords

under the store leases for reimbursement of prior construction work, rent concession, allowances

or the like, whether known or unknown, disputed or undisputed, contingent or non-contingent,

liquidated or unliquidated.

<u>Store Closings and the Conduct of the Store Closing Sales</u>

32.    Any restrictions in any Restrictive Documents (as defined in this

Paragraph) that may impair the Debtors' ability to conduct the Store Closing Sales shall not

apply to such sales.  Specifically, the Closing Stores will be located on properties that are leased

by the Debtors.  In certain cases, the contemplated Store Closing Sales may be inconsistent with

certain provisions of such leases or other documents with respect to any such leased premises,

including (without limitation) reciprocal easement agreements, agreements containing covenants,

conditions and restrictions (including, without limitation, "go-dark" provisions and landlord

recapture rights), or other similar documents or provisions (collectively, the "<u>Restrictive</u>

<u>Leases</u>").  In addition, promotional sales of certain Merchandise bearing licensed trademarks at

the contemplated Store Closing Sales may be inconsistent with certain provisions of the Debtors'

trademark licenses relating to such Merchandise (the "<u>Restrictive Licenses</u>" and, together with

the Restrictive Leases, the "<u>Restrictive Documents</u>").

33.    The Closing Stores may "go-dark" during the Store Closing Sales and

remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the

contrary, and any "continuous operation" or similar clause in any of the leases (or any lease

provision that purports to increase the rent or impose any penalty for going dark) may not be

enforced to hinder or interrupt the Store Closing Sales (and the going dark under such leases shall not be a basis to cancel or terminate the leases).

34.    Except as to the States (as to which no injunction shall apply whatsoever), and except as expressly provided for herein or in the Sale Guidelines, no person or entity, including but not limited to any landlord, licensor, creditor, or federal or Local Governmental Unit (as defined below), (i) served with a copy of the Motion or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs) of such Store Closing Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors, and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the Debtors' landlords for the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.  This Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, the landlords or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.  No Governmental Units (as defined in Bankruptcy Code

section 101(27)) shall be bound by this injunctive provision unless it was either previously

served with the Motion or subsequently served with this Order, and has had an opportunity to

object as provided in this Order, and failed to timely file an objection.

35.     Subject to applicable state and local public health and safety laws (the

"Safety Laws"), and applicable tax, labor, employment, environmental, and consumer protection

laws, including consumer laws regulating deceptive practices and false advertising (collectively,

the "General Laws"), but excluding Liquidation Sale Laws (as defined below), the Debtors and

the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to

implement the Agency Agreements and to conduct the Store Closing Sales without the necessity

of a further order of this Court as provided by the Agency Agreements, including, but not limited

to, advertising the Store Closing Sales as provided in the sale guidelines attached to the Agency

Agreements (the "Sale Guidelines"), which Sale Guidelines are hereby approved in the forms

annexed hereto as Exhibit C.

36.     The Store Closing Sales at the Closing Stores shall be conducted by the

Debtors and the Agent without the necessity of compliance with any federal, state or local law,

statute, regulation, or ordinance, lease provision or licensing requirement affecting store closing,

"going out of business", liquidation or auction sales, or establishing licensing or permitting

requirements, waiting periods, time limits, or bulk sale restrictions, or affecting advertising,

including signs, banners, and posting of signage (collectively, the "Liquidation Sale Laws"),

except to the extent set forth in the Sale Guidelines.  The Debtors and the Agent shall be entitled

to use sign walkers, hang signs and/or interior or exterior banners advertising the Store Closing

Sales in accordance with the Sale Guidelines (or as otherwise agreed between the Debtors, the

Agent and the respective landlords), including, without limitation, advertising the Store Closing

Sales as "store closing," "sale on everything" or similar themed sales (to the extent permitted by

the applicable Agency Agreement) and by means of media advertising, A-frames, banners, and

similar signage, without further consent of any person and without compliance with the

Liquidation Sale Laws.  Provided that the use of banners and sign walkers is done in a safe and

responsible manner, such sign walkers and banners, in and of themselves, shall not be deemed to

be in violation of Safety Laws and/or General Laws.

      37.     Notwithstanding any restrictions in the Agency Agreements on the

Agent's ability to conduct the Store Closing Sales in compliance with applicable laws or store

leases and except as otherwise provided in this Order, each and every federal, state or local

agency, department or Governmental Unit with regulatory authority over the Store Closing Sales

and all newspapers and other advertising media in which the Store Closing Sales is advertised

shall consider this Order as binding authority that no further approval, license, or permit of any

Governmental Unit shall be required for the conduct of the Store Closing Sales, unless and until

there is a further order of this Court.

      38.     State and/or Local authorities shall not fine, assess, or otherwise penalize

the Debtors, the Agent or any of the landlords of the Closing Stores for conducting or advertising

the Store Closing Sales in a manner inconsistent with state or Local law; provided, however, that

the Store Closing Sales are conducted and advertised in a manner contemplated by this Order,

the Sale Guidelines, and the Agency Agreements.

      39.     As and to the extent set forth in the Agency Agreements, the Debtors

and/or the Agent (as the case may be), are authorized and empowered to transfer the Store

Closing Assets among the Closing Stores.  In addition, following the Closing of the Asset

Purchase Agreement, Purchaser shall have the right to direct the transfer of GOB Assets to be transferred from Closing Stores to such Purchaser's locations as Purchaser and Agent shall agree.

40.    Absent further order of this Court, the Agent shall not supplement the Store Closing Sale with augmented merchandise (the "Augmented Merchandise").  The term Augmented Merchandise does not include inventory in the Debtors' distribution centers, their stores, in transit among stores and the distribution centers, or on order by the Debtors.

41.    Gift certificates, gift cards, and merchandise credits issued by the Debtors prior to the Sale Commencement Date (as defined in the Agency Agreements) may be accepted and honored by the Agent during the Sale Term as and to the extent provided in the applicable Agency Agreement.

42.    Nothing in this Order shall be deemed to bar any Governmental Unit from enforcing Safety Laws and General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or Agent's right to assert that any such laws are not in fact Safety Laws or General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise; provided, however, that the Governmental Unit shall in the first instance present the matter to this Court for resolution or request that the Governmental Unit be permitted to proceed with the matter in the applicable non-bankruptcy forum; provided, further, however, that the Governmental Unit shall provide the Debtors and the Agent with reasonable notice and opportunity to cure any such alleged violation absent extenuating circumstances and/or to oppose the relief sought by such Governmental Unit.  The Debtors and/or the Agent do not waive the right to argue that the conduct was in compliance with this Order and/or any applicable law, or preempted by applicable law.

43.      If there is a dispute (a "Reserved Dispute") over the enforceability of a
Liquidation Sale Law, resolution of such Reserved Dispute will take place before this Court, as
provided herein and shall only operate prospectively.

44.      Any time before the twentieth (20th) day following the service of this
Order as provided for above, any Local Governmental Unit may assert a Reserved Dispute by
sending a notice explaining the nature of the dispute to Debtors' and Agent's counsel at the
applicable addresses set forth in the Agency Agreements.  If the Debtors, the Agent and the
objecting Local Governmental Unit (as the case may be, the "Objecting Party") are unable to
resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Party's notice,
either party may file a motion with the Court requesting a resolution of the dispute (a "Dispute
Resolution Motion").  If such a Dispute Resolution Motion is timely filed, the Debtors and the
Agent shall each be entitled to assert that the provisions in question are preempted or otherwise
rendered unenforceable by the Bankruptcy Code or applicable federal law and/or that neither the
terms of this Order nor the conduct of the Store Closing Sales violates the Liquidation Sale Law.
The timely filing of a Dispute Resolution Motion will not affect the finality of this Order or limit
or interfere with the ability to conduct or to continue to conduct the Store Closing Sales pursuant
to this Order and the Agency Agreements, absent further order of this Court.  By timely filing a
Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional,
procedural or substantive argument that it might heretofore have been entitled to raise.
Notwithstanding anything in the foregoing, any Local Governmental Unit may assert a Reserved
Dispute at any time during the pendency of the Store Closing Sale by filing a Dispute Resolution
Motion; provided, however, that the Agent shall be entitled to continue to conduct the Store
Closing Sales pending resolution of the Reserved Dispute by an order of the Court.

45.     Nothing herein shall be deemed to constitute a ruling on whether any nonbankruptcy state law, regulation, or rule applicable to the Store Closing Sales is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies.

46.     Other than as expressly provided for in the Agency Agreements, the Agent shall not be liable for any claims against the Debtors based, in whole or in part, directly or indirectly, on any theory of law or equity.  Notwithstanding anything in this Order to the contrary, the term "Agent" shall also mean the "Sub-Agent" as such term is used in the Agency Agreement.

47.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreements and the payment of such sale taxes is the responsibility of the Debtors.  The Agent shall collect and remit sales taxes as and to the extent provided in the Agency Agreements.

48.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Agent shall accept return of any goods that contains a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period prescribed by the Debtors' return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Store Closing Sales, in which case such items must be returned within twenty-one (21) days of purchase), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

49.    The Debtors, the Agent, and each of their respective officers, employees and agents shall be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Agency Agreements and the related actions set forth therein.

50.    The Agent shall have the right to use the Closing Stores and all related store services, furniture, fixtures, equipment and other assets of the Debtors as designated in the Agency Agreements for the purpose of conducting the Store Closing Sales, free of any interference of any entity or person, subject to compliance with the Sale Guidelines and this Order.

51.    The Purchaser shall grant to the Agent a limited license and right to use until the Sale Termination Date the trade names, logos and customer and mailing lists relating to and used in connection with the operation of the Closing Stores, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agency Agreements and the Sale Guidelines.

52.    Subject to the terms of the Agency Agreements, any amounts due to the Agent pursuant to the Agency Agreements shall be free and clear of all Interests and shall be payable to the Agent out of the Proceeds (as defined in the Standby Agency Agreement) without further order of the Court and without the filing with the Court of fee applications.

53.    Effective upon Closing and payment of the Initial Payment, Agent and Purchaser are hereby granted pursuant to section 364(c) of the Bankruptcy Code, a first priority security interest in and lien upon the Merchandise (as defined in the Agency Agreements), the Proceeds (as defined in the Agency Agreements), and such other collateral set forth in the Agency Agreements (collectively, the "Collateral") to secure all obligations of the Debtors to

Agent and Purchaser under the Agency Agreements and the Asset Purchase Agreement;

provided, however, that (i) such lien shall be junior and subject to valid, preexisting liens and (ii)

until payment of the balance of the Remaining Purchase Price, if any (which payments shall be

made as provided for in the Asset Purchase Agreement) and Agent's reimbursement of Expenses

(as provided for under the Agency Agreements), the security interests granted to the Agent and

Purchaser shall remain junior to the liens of the Prepetition Secured Lenders in and to the

Collateral to the extent of the unpaid portion of the Remaining Purchase Price and Expenses.

The security interest granted to Agent and Purchaser under the Agency Agreements and the

Asset Purchase Agreement shall be deemed properly perfected without the need for further

filings or documentation.

> 54.    Within three (3) business days of the Debtors' receipt of a notice of the

Sale Termination Date for one or more of the Closing Stores pursuant to the Agency

Agreements, the Debtors shall electronically file with the Court a notice disclosing the Sale

Termination Date, and shall serve a copy of such notice on the affected landlord(s) for the

subject Closing Stores; provided, however, such notice shall not serve as a rejection of the lease

for such named Closing Store, and the Debtors shall have no obligation to serve such notice on

the unaffected landlords or any other party in interest.  In the event of an agreement between the

Debtors and the Agent to extend the Store Closing Sales at a Closing Store beyond November

30, 2008, the Debtors shall electronically file a notice of such extension, and mail a copy of such

notice to the affected landlord, counsel to each agent for the Prepetition Secured Lenders,

counsel to the official committee of unsecured creditors, the U.S. Trustee, the attorney general

for the state in which the subject Closing Store is located.  Absent consent of the affected

landlords, the Debtors shall file an expedited motion to extend the Store Closing Sales at the

Closing Stores, which motion shall be filed no later than November 21, 2008 on notice to

affected landlords with a hearing to be held on or before November 28, 2008 and the objection

deadline with respect thereto to be set at 4 p.m. the day prior to such hearing.

55.     The Owned FF&E remaining in the Closing Stores as of the Sale

Termination Date may, unless the affected lessor has been previously notified in writing by the

Debtors or the Agent to the contrary at least three (3) days prior to the Sale Termination Date, be

abandoned at the Closing Stores by the Debtors and/or the Agent; provided, however, that the

Debtors shall provide any known third party holding or asserting an Interest in such Owned

FF&E, including taxing authorities, with five (5) days' prior notice of such abandonment and if

such third party fails to remove such Owned FF&E or to make arrangements to remove such

Owned FF&E within such time as is deemed acceptable to the affected landlord prior to the

expiration of such five (5) day notice period, such Owned FF&E shall be deemed abandoned by

such third party and the affected landlord may dispose of such property without liability to any

party; provided, however, that the abandonment of Owned FF&E authorized herein shall not

impact the Debtors' obligation to leave the stores in an otherwise broom clean condition.

56.     Before any sale or abandonment of computers (including software) and/or

cash registers and any other point of sale equipment (collectively, "POS Equipment"), which

may contain Personally Identifiable Information, the Debtors shall remove or cause to be

removed the Personally Identifiable Information from the POS Equipment.

57.     This Order constitutes an authorization of conduct by the Debtors and the

Agent and nothing contained herein shall be deemed to constitute a ruling with regard to the

sovereign immunity of any State, and the failure of any State to object to the entry of this Order

shall not operate as a waiver with respect thereto.

58.    To the extent that the disposition of the Debtors' assets would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time, then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

59.    Nothing in this Order shall (a) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code.

Distribution of Sale Proceeds and Related Provisions

60.    The Sale Proceeds shall be distributed as follows:  (A) at the Closing (as defined in the Asset Purchase Agreement), first, $2.5 million, less amounts, if any, paid by the Debtors to estate professionals subsequent to the Commencement Date (which $2.5 million shall be free and clear of any and all liens, claims and encumbrances, including the liens and claims of the Prepetition Secured Lenders), shall be distributed to Weil, Gotshal & Manges LLP to be held in escrow on account of the Carve Out (as defined in the Cash Collateral Order); second, $780,000 shall be set aside pursuant to Paragraph 64 of this Order; third, such amount as necessary to permanently reduce the Prepetition Revolver Obligations (other than the Prepetition Participation Obligations) (each as defined in the Cash Collateral Order) until all such obligations, less $1,000,000, are indefeasibly paid in full shall be distributed to GECC; fourth,

the last $1,000,000 of the Prepetition Revolver Obligations (other than the Prepetition Participation Obligations) shall be distributed to an escrow account, subject to existing liens and further order of the Court (the "Creditor Escrow"); fifth, $250,000 of the Prepetition Term Loan Obligations shall be distributed to the Creditor Escrow; and sixth, the remainder of the Initial Payment shall be distributed to holder(s) of the Prepetition Term Loan Obligations to reduce the Prepetition Term Loan Obligations (as defined in the Cash Collateral Order); and (B) after the Closing, first, the remaining Sale Proceeds shall be distributed to holder(s) of the Prepetition Term Loan Obligations to permanently reduce the remainder of the Prepetition Term Loan Obligations until indefeasibly paid in full; and second, any and all remaining Sale Proceeds shall be distributed to the Debtors, subject to existing liens and further order of the Court.

61.    As disclosed at the Sale Hearing and as requested by the Purchaser, Steven Shore and Barry Prevor have agreed in good faith to purchase a junior last-out participation for $5 million at the time of the acquisition of the Prepetition Term Loan Obligations by the Purchaser, as set forth in an agreement between Steve Shore and Barry Prevor and Purchaser or an affiliate thereof (the "Participation Agreement" ), in the Prepetition Term Loan Obligations (which are being purchased by the Purchaser) in order to facilitate the Sale.  Notwithstanding anything in this Order to the contrary, such participation shall not on any basis be subject to attack, challenge, subordination, recharacterization, holdback or setoff by any party in interest (including by any trustee subsequently appointed in these cases) and shall be indefeasibly and timely paid in accordance with the distribution scheme set forth in Paragraph 60 hereof, subject only to the Participation Agreement.  Nothing in this Order in any way limits the Committee's rights to Challenge the liens of the Prepetition Junior Participants with respect to the Prepetition Revolver Facility as provided in paragraph 18 of the Cash Collateral Order.

62.    The Debtors agree to maintain their D&O Policies provided that within fifteen (15) business days of the Closing, the Prepetition Junior Participants shall pay all remaining outstanding amounts due with respect to director and officer insurance policies.

63.    The Purchaser shall make the Transferred Employees available to the Debtors at no cost to the Debtors or their estates for such time and to the extent reasonably necessary to assist the Debtors in performing the tasks on <u>Exhibit D</u> hereto, all to the extent such services do not materially interfere with such Transferred Employee's responsibilities to the Purchaser.

64.    There shall be set aside from the Sale Proceeds attributable to any sale located in the applicable jurisdiction of collateral subject to the Tax Authority Liens (as defined in the Cash Collateral Order) an amount equal to the claims (without double counting) of the Tax Authorities (as defined in the Cash Collateral Order and identified on Schedule D thereto, and which for purposes of this Order, shall include Chatham County Tax Commissioner) (as scheduled by the Debtors or as filed by the Tax Authorities) in a segregated account as adequate protection of the interests of the Tax Authorities.  The Tax Authority Liens shall attach to such sale proceeds to the same extent and with the same priority as the Tax Authority Liens had on such collateral as of the Commencement Date; provided that the Prepetition Agents' (as defined in the Cash Collateral Order) and Prepetition Secured Lenders' respective liens on such collateral shall continue to the same extent and with the same priority as such liens had on such collateral as of the Commencement Date.  Any such segregated funds may not be distributed other than by agreement between the Tax Authorities and the Debtors with the consent of the Prepetition Agents and Prepetition Secured Lenders, or by subsequent order of the Court upon notice and hearing.  Nothing herein shall constitute an allowance of the claims of the Tax Authorities, a cap

on the amounts the Tax Authorities may be entitled to receive, or a finding or ruling by this

Court that any such Tax Authority Liens are valid, senior, enforceable, prior, perfected or non-

avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not

limited to, the Debtors, the Statutory Committee, the Prepetition Agents (each as defined in the

Cash Collateral Order), and the Prepetition Secured Lenders to challenge the validity, priority,

enforceability, seniority, avoidability, perfection or extent of any such Tax Authority Liens

and/or security interests.

    65. This Order shall be without prejudice to the respective rights, obligations,

and/or claims of the Prepetition Secured Lenders under that certain Intercreditor Agreement

dated as of February 1, 2008 (as supplemented by that certain side letter between the Prepetition

Revolver Agent and Prepetition Term Loan Agent dated June 20, 2008) between the Prepetition

Revolver Agent and Prepetition Term Loan Agent (each as defined in the Cash Collateral Order).

Upon Closing, any such rights, obligations, and claims shall be deemed forever waived, barred,

and released.

Additional Provisions

    66. The Sale includes the transfer of "Personally Identifiable Information" (as

defined in Bankruptcy Code section 101(41A)).  The U.S. Trustee is directed to appoint a

Consumer Privacy Ombudsman under Bankruptcy Code sections 332 and 363(b)(1).  The

transfer of Personally Identifiable Information shall not be effective until a Consumer Privacy

Ombudsman is appointed, issues its findings, and the Court has an opportunity to review the

findings and issue any rulings that are appropriate.  Pursuant to Section 2.3(c) of the Asset

Purchase Agreement, the Purchaser shall cover any and all costs of a Consumer Privacy

Ombudsman.

67.     In accordance with Section 10.1(g) of the Asset Purchase Agreement, the Debtors are hereby authorized in their discretion and without further order of the Court to transfer the Intellectual Property (as defined in the Asset Purchase Agreement) set forth on Schedule 10.1(g)(ii) thereof to the Licensor (as defined in the Asset Purchase Agreement) in respect of the associated License (as defined in the Asset Purchase Agreement).

68.     Nothing in this Order shall be deemed to modify the Debtors' rights to seek Court approval of any extension as may be required pursuant to section 365(d)(4) of the Bankruptcy Code.

69.     Effective upon the Auction, the Committee released any and all claims and causes of action in respect of Prepetition Obligations (as defined in the Cash Collateral Order), other than claims or causes of action against the Prepetition Junior Participants or in connection with the Prepetition Participation Obligations.  The Challenge Period (as defined in the Cash Collateral Order) is hereby deemed to have expired, and the Challenge Period Termination Date (as defined in the Cash Collateral Order) is hereby deemed to have occurred.

70.     The Creditor Escrow and the funds therein shall be property of the Debtors' estates (as such term is defined in section 541 of the Bankruptcy Code).

71.     Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreements.

72.     This Court retains exclusive jurisdiction with regard to all matters, claims, rights, issues or disputes arising from or related to the implementation of this Order and the relief provided for herein and to enforce and implement the terms and provisions of the Agreements, all amendments thereto, any waivers and consents thereunder, and of each of the agreements

executed in connection therewith in all respects, including, but not limited to, retaining

jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery

of the Sale Proceeds or performance of other obligations owed to the Debtors, (c) resolve any

disputes arising under or related to the Agreements, except as otherwise provided therein,

(d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser and

Agent against (i) any of the Excluded Liabilities or (ii) any Interests in the Debtors or the

Purchased Assets, of any kind or nature whatsoever, attaching to the Sale Proceeds; (f) protect

the Debtors, the landlords and/or the Agent from interference with the Store Closing Sales; and

(g) resolve any disputes related to the Store Closing Sales or arising under the Agency

Agreements or the implementation thereof; provided, however, that in the event the Court

abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with

respect to the Agreements or this Order, such abstention, refusal, or lack of jurisdiction shall

have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any

other court having competent jurisdiction with respect to any such matter.

73.     The Purchaser and the Agent each is a party in interest and each of them

shall have the ability to appear and be heard on all issues related to or otherwise connected to the

Agreements and the conduct of the Store Closing Sales.

74.     The transactions contemplated by the Agreements are undertaken by the

Purchaser and the Agent in good faith, as that term is used in section 363(m) of the Bankruptcy

Code, and, accordingly, the reversal or modification on appeal of the authorization provided

herein to consummate the Sale shall not affect the validity of the sale of the Purchased Assets to

the Purchaser (including the assumption, assignment and sale of any of the Assumed Contracts),

any term or condition of such sale or the transactions contemplated thereby, or the sale of Store

Closing Assets by Agent in the Store Closing Sales, unless such authorization is duly stayed

pending such appeal.  In the absence of any person or entity obtaining a stay pending appeal, the

Debtors, on the one hand, and the Purchaser and the Agent, on the other hand, are authorized to

perform under the Agreements at any time, subject to the terms of the Agreements.  The

Purchaser is purchasing the Purchased Assets, and the Agent is conducting the Store Closing

Sales, in good faith.  Therefore, the Purchaser and the Agent shall each be afforded the

protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant

to the Agreements, if this Order or any authorization contained herein is reversed or modified on

appeal.

75.    The consideration provided by Purchaser and Agent for the Assets under

the Agreements (i) is fair and reasonable and may not be avoided under Bankruptcy Code section

363(n), and (ii) constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and

under the laws of the United States.

76.    All entities that are presently, or on the Closing Date may be, in

possession of some or all of the Assets in which the Debtors hold an interest hereby are directed

to surrender possession of the Assets either to (i) the Debtors before the Closing Date, or (ii) to

Purchaser and Agent on the Closing Date.

77.    Solely with respect to the objections filed by The Collegiate Licensing

Company, Rutgers, The State University of New Jersey and/or Syracuse University

("Licensors") and notwithstanding anything contained in this Order to the contrary, the

Licensors' and the licensees' rights as and between each other are preserved, and the Licensors

are not deemed to waive any claims against the licensees thereto, or against the Purchaser,

Agent, or Sub-Agent, including, but not limited to, claims relating to, or arising out of, any expiration of one or more of the Licensors, Licenses or applicable law.

78.    Any amounts payable by the Debtors under the Agreements or any of the documents delivered by the Debtors in connection with the Agreements, shall be paid in the manner provided in the Agreements without further order of this Court.

79.    The terms and provisions of the Agreements (including the Purchaser's acquisition of the estates' causes of action pursuant to Section 2.1(q) of the Asset Purchase Agreement) and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Purchaser, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an Interest in the Purchased Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement or in the Store Closing Assets to be sold by the Agent pursuant to the Agency Agreements, notwithstanding any subsequent appointment of any trustee(s), party, entity or other fiduciary under any section of any chapter of the Bankruptcy Code or, as to which trustee(s), party, entity or other fiduciary such terms and provisions likewise shall be binding.

80.    Nothing contained in any plan of reorganization or liquidation confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plans or in any other order in these chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agreements or the terms of this Order.

81.    The provisions of this Order and the Agreements and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtors, or which may be entered converting

the Debtors' cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Agreements as well as the rights and interests granted pursuant to this Order and the Agreements shall continue in this or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, the Purchaser, the Agent and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, and shall not be subject to rejection, revocation or avoidance.  Such binding effect is an integral part of this Order.  Any trustee appointed in these cases shall be and hereby is authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agreements, and the Purchaser and the Agent shall be and hereby are authorized to perform under the Agreements upon the appointment of a trustee without the need for further order of this Court.

82.     The failure specifically to include any particular provisions of the Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreements be authorized and approved.

83.     The Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and is filed on the docket with a statement of the Committee's "support" or no objection.

84.     To the extent, if any, anything contained in this Order conflicts with a provision in the Agreements or the Sale Guidelines, this Order shall govern and control.

85.     Notwithstanding the provisions of Interim Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), this Order shall not be stayed for ten days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors, Purchaser and Agent intend to close the Sale as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

86.     The provisions of this Order are nonseverable and mutually dependent.

87.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

88.     The requirement set forth in Local Bankruptcy Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

Dated:  August 22, 2008
        New York, New York

_/s/ Allan L. Gropper_____
UNITED STATES BANKRUPTCY JUDGE