UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                   :

        Refco Inc., et al.,               :

                          Debtors.    :

Chapter 11

Case No. 05-60006 (RDD)

(Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER AUTHORIZING THE DEBTORS TO SELL THE REGULATED COMMODITIES FUTURES MERCHANT BUSINESS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an Order (A) Authorizing the Debtors to Establish Notice, Bid and Sale Procedures for the Sale (the "Sale") of its Regulated Commodities Futures Merchant Business and the Assumption and Assignment of Certain Related Executory Contracts and Unexpired Leases (the "Acquired Business") and (B) Setting a Sale Hearing (the "Sale Order"); and the Court having considered the Motion and the "Execution Copy" of the Agreement[1] (annexed hereto), the objections and statements of counsel on the record at the November 10, 2005 hearing (the "Sale Hearing") and the modifications to and clarifications of the proposed Sale presented at the Hearing; and it appearing that the relief request in the Motion, as modified at the Sale Hearing, is in the best interests of the Debtors' bankruptcy estates, their

---

[1]   Headings shall not be construed to affect the substantive rights of parties, but are intended to serve as references only.  Capitalized terms used but not defined herein shall have the meaning set forth in the Agreement, dated as of November 13, 2005 by and among Man Financial Inc., as Buyer, and Refco Inc., Refco Group Ltd., LLC, Refco Global Holdings, LLC, Refco Global Futures LLC, Refco LLC, Refco (Singapore) PTE Limited, Refco Canada Co., Refco Overseas Ltd., and certain affiliates of Refco LLC as Sellers (the "Agreement").

creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing

therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Motion

under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. §

157(b)(2)(A).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§

1408 and 1409.

B.    **Statutory predicates**.  The statutory predicates for the relief sought in the

Motion are sections 105(a), 363, 365 and 1146(c) of the United States Bankruptcy Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.    **Procedures Order**.  This Court entered an Order (A) Authorizing the

Debtors to Establish Notice, Bid and Sale Procedures for the Sale of its Regulated Commodities

Futures Merchant Business and the Assumption and Assignment of Certain Related Executory

Contracts and Unexpired Leases and (B) Setting a Sale Hearing (the "Bid Procedures Order") on

October 26, 2005 and, at the request of the Official Committee of Unsecured Creditors (the

"Committee"), an order clarifying certain aspects of the Bid Procedures Order on November 5,

2005 (the "Clarifying Order" and together with the Bid Procedures Order, the "Procedures

Order").  The Bid Procedures Order and Clarifying Order have become final and non-appealable

orders.

D.    **Notice**.  As evidenced by the affidavits of service and publication filed

with this Court and based on representations of counsel at the Sale Hearing:  (i) due, proper,

timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale and the

transactions contemplated thereby, including the assumption and assignment of the customer accounts and the other executory contracts and unexpired leases of Refco LLC and the other Sellers to the Buyer (as such terms are defined below), has been provided in accordance with Bankruptcy Code sections 102(1), 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006; (ii) such notice was good, sufficient and appropriate under the circumstances and complied with the Procedures Order; and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale or the transactions contemplated thereby, is or shall be required.

E.    **Opportunity to Object**.  A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein has been given, in light of the exigent circumstances, to all interested persons and entities, including the following: (i) the Office of the United States Trustee; (ii) the Buyer; (iii) the Committee; (iv) the administrative agent (the "Agent") for the Debtors' prepetition lenders (the "Bank Group"); (v) all entities known to have expressed an interest in acquiring any of the Assets (defined below); (vi) all regulatory authorities or recording offices that have a reasonably known interest in the relief requested in the Motion; (vii) all known creditors of the Debtors and Refco LLC; and (viii) all other parties that had filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 2002 as of the date of the Notice.

F.    **Chapter 11 and Chapter 7 Procedures**.  The Agreement contemplates the sale of assets (the "Assets") owned by certain of the Debtors and of the non-Debtors Refco LLC ("Refco LLC"), Refco (Singapore) Pte. Ltd. ("Refco Singapore"), Refco Hong Kong Ltd. ("Refco Hong Kong"), Refco Overseas, Ltd. ("ROL"), Refco Taiwan, Ltd. ("Taiwan"), and Refco Canada Co. (collectively, together with other Refco affiliates becoming Sellers pursuant to the Agreement, the "Sellers"), to Man Financial Inc. or its designee (Man Financial Inc. and such

3

designee collectively, the "Buyer").  The Debtors have represented that if the Court approves the

Agreement in these cases, the Debtors intend to cause Refco LLC to file a petition under Chapter

7 of the Bankruptcy Code, and this Order is premised upon such representation.  After that

petition is filed, the Debtors will file a motion in the Chapter 7 case seeking expedited approval

of the sale of assets of Refco LLC pursuant to the Agreement and the transfer of customer

accounts consistent with 11 U.S.C. § 766(c) and (d) and 17 C.F.R. Part 190, the Chicago

Mercantile Exchange's (the "CME") rules, and the rules, bylaws and other applicable regulations,

orders and directives of the New York Mercantile Exchange, Inc. (the "NYMEX Rules").

                G.      **Free and Clear**.  Subject to the terms of this Sale Order, including

paragraph 5 hereof, the Debtors may sell the Assets owned by them free and clear of all Interests

(as defined herein) because each entity with an Interest in such Assets to be transferred by them

on the Closing Date  (i) has, subject to the terms and conditions of this Order, consented to the

Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable

proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the

provisions of section 363(f) of the Bankruptcy Code, and, therefore, in each case, one or more of

the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those

holders of Interests in the Debtors' Assets who did not object, or who withdrew their objections,

to the Sale Motion are deemed, subject to the terms of this Order, to have consented pursuant to

Bankruptcy Code section 363(f)(2).  All those holders of Interests in the Debtors' Assets,

including those who did object, are adequately protected by having their Interests, if any, attach

to the cash proceeds of the Sale ultimately attributable to the property of the Debtors against or

in which they claim an Interest, subject to the terms of such Interests with the same validity,

force and effect which they have against such Assets as of the Closing Date, subject to any rights,

claims and defenses the Debtors' estates and Sellers, as applicable, may possess with respect thereto.

        H.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the Agreement and the Sale have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, Sellers, their estates, their creditors and other parties in interest. Without limiting the foregoing, the Court finds that the Debtors' actions to cause Refco LLC and the other non-Debtor Sellers to perform the Agreement are in the best interests of the Debtors and such non-Debtor Sellers.

        I.    **Business Justification**.  The Sellers have demonstrated both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the Sale other than in the ordinary course of business pursuant to Bankruptcy Code section 363(b), in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and the Assets of the non-Debtor Sellers; the Sale will provide the means for the Sellers to maximize distributions to all of their creditors and for the regulated non-debtor Sellers, including Refco LLC, to protect their customers' accounts and property.  Entry of an order approving the Agreement and all the provisions thereof is a necessary condition precedent to the Buyer consummating the transactions contemplated by the Agreement.

        J.    **Arm's-Length Sale**.  The Agreement was negotiated, proposed and entered into by the Sellers and the Buyer without collusion, in good faith and from arm's-length bargaining positions after the conclusion of an open auction in which the Buyer was the winning bidder.  The Buyer is not an "insider" of any of the Sellers, as that term is defined in Bankruptcy Code section 101.  Neither the Sellers nor the Buyer have engaged in any conduct that would

cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n).

Specifically, the Buyer has not acted in a collusive manner with any person and the Purchase

Price was not controlled by any agreement among bidders.

        K.      **Good Faith Purchaser**.  The Buyer is a good faith purchaser under

Bankruptcy Code section 363(m) and, as such, is entitled to all of the protections afforded

thereby.  The Buyer will be acting in good faith within the meaning of Bankruptcy Code section

363(m) in closing the transactions contemplated by the Agreement.

        L.      **Consideration**.  The consideration provided by the Buyer to the Sellers

under the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets,

and (iii) constitutes reasonably equivalent value (as that term is defined in each of the Uniform

Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) and fair consideration under

the Bankruptcy Code and under the laws of the United States, any state, territory, possession or

the District of Columbia.

        M.      **No Intentional Fraudulent Transfer**.  The Agreement was not entered

into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or

under the laws of the United States, any state, territory, possession, or the District of Columbia.

Neither Buyer nor the Sellers are entering into the transactions contemplated by the Agreement

fraudulently.

        N.      **Free and Clear**.  The transfer of the Assets to the Buyer under the

Agreement will be a legal, valid, and effective transfer of the Assets, subject to all valid and

enforceable Interests in the Assets of the non-Debtor Sellers, and will vest the Buyer with all

right, title, and interest of the Debtors to the Assets free and clear of liens, mortgages, security

interests, conditional sales or other title retention agreements, pledges, claims, judgments,

demands, Excluded Liabilities, constructive trusts, and encumbrances (including, without

limitation, liens, claims, and encumbrances: (i) that purport to give to any party a right or option

to effect any forfeiture, modification or termination of the Debtors' interests in the Assets or the

Buyer's interests therein after Buyer's purchase thereof from the Debtors; (ii) in respect of taxes,

restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, but

not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of

any attributes of ownership, or (iii) arising under or with respect to environmental laws)

(collectively, the "Interests"), with all such non-assumed Interests to attach to the Debtors'

interest in the proceeds of the Sale (the "Sale Proceeds") with the same force and effect and in

the same order of priority as they had  as of the Closing Date, subject to any rights, claims and

defenses of the Debtors' estates or Sellers, as applicable, with respect thereto.

O.    **Scope of Authorization**  Notwithstanding anything to the contrary herein,

the Debtors are not authorized to sell and are not selling any interests in such Assets in which

they do not hold an interest, and are authorized to sell and are selling only their interests in the

Assets under the Agreement.

P.    **Not a Successor**.  The Buyer (a) is not a successor to the Sellers or Refco

LLC, (b) has not, de facto or otherwise, merged with or into the Debtors or Refco LLC, (c) is not

a continuation or substantial continuation of the Debtors or any enterprise of the Debtors or

Refco LLC, (d) does not have a common identity of incorporators, directors or equity holders

with any of the Debtors or Refco LLC, and (e) is not holding itself out to the public as a

continuation of the Sellers.

Q.    **Prompt Consummation of Sale**.  The Sale must be approved and

consummated promptly in order to preserve the viability of the businesses subject to the Sale as

going concerns, to maximize the value of the Debtors' estates and to protect the interests of the

customers of the non-Debtor Sellers.  The Sale is in contemplation of, and a necessary condition

precedent to, a reorganization plan for the Debtors and, accordingly, constitutes a transfer to

which Bankruptcy Code section 1146(c) applies.

    R.  **Additional Asset Sales**.  Authority under this Sale Order for the Debtors

to enter into and consummate the Initial Closing and Subsequent Closings, as provided in the

Agreement, without further Order of the Bankruptcy Court is a necessary condition precedent to

Buyer consummating the transactions contemplated by the Agreement.

    S.  **Contract Assignment in Best Interest**.  Subject to the right of any non-

Debtor contract party to object to the assumption and assignment of its contract or lease, as

provided herein, the Debtors have demonstrated that assuming and assigning certain executory

contracts and unexpired leases (the "Contracts") in connection with the Sale is an exercise of

their sound business judgment, and that such assumption and assignment is in the best interests

of the Debtors' estates.

    T.  **Cure of Defaults**.  The assumption and assignment procedures (the

"Assumption and Assignment Procedures") established in this Sale Order provide adequate

assurance of cure of any default existing before the date on which any such Contract is assumed

and assigned, within the meaning of Bankruptcy Code section 365(b)(1)(A).  The Assumption

and Assignment Procedures further provide an adequate opportunity for non-Debtor contract

parties to object to the proposed assumption and assignment of such Contracts and adequate

assurance of compensation to any counterparty to such Contracts for any of their actual

pecuniary losses resulting from any default arising prior to the date on which any such Contract

is assumed and assigned, within the meaning of Bankruptcy Code section 365(b)(1)(B).

8

U.    **Personally Identifiable Information**.  The Sale may include the transfer of "personally identifiable information," as defined in Bankruptcy Code section 101(41A). However, no "consumer privacy ombudsman" need be appointed because the Buyer has agreed to adopt the Sellers' privacy policy.  See 11 U.S.C. § 363(b)(1)(A).

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Motion is Granted**.  The Motion as modified on the record at the Sale Hearing is GRANTED as provided herein (other than with respect to matters previously addressed by the Procedures Order).

2.    **Chapter 7 Case**.  The Debtors are authorized to cause Refco LLC to file a Chapter 7 petition and to implement its performance of the Agreement.

3.    **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, are denied and overruled on the merits with prejudice.

4.    **Approval**.  The Agreement and all of the terms and conditions thereof, including, but not limited to, the sale of the Assets, execution of the Transition Services Agreement, and the indemnification provisions in exchange for the purchase price, as set forth in the Agreement, are hereby approved.

i.    **Chapter 7 Case**.  Before the Debtors and the non-Debtor Sellers consummate the Agreement, Refco LLC shall have commenced a Chapter 7 case, and Refco LLC and the Chapter 7 trustee in such case shall have complied with:

A.    The requirements of subchapter IV of Chapter 7 of the Bankruptcy Code necessary for the Sellers to consummate the Agreement;

B.    The applicable requirements of the Commodity Exchange Act and Title 17 of the Code of Federal Regulations, including Part 190 --"Bankruptcy;"

C.    The applicable requirements of the CME rules; and

D.    The applicable requirements of the NYMEX Rules.

ii.    **Chapter 7 Sale Order**.  Before the Debtors and the non-Debtor Sellers consummate the Agreement, Refco LLC shall have commenced a Chapter 7 case and an order in a form reasonably satisfactory to the Buyer shall have been entered therein that shall provide protections for Buyer comparable to those provided for herein, and shall also provide:

A.    That the proposed transfer, under Bankruptcy Code sections 766(c) and (d) and consistent with 17 C.F.R. Part 190, the CME rules, and the NYMEX Rules, of specifically identifiable customer securities, property, or commodity contracts of Refco LLC to the Buyer in accordance with this Agreement is approved;

B.    That the transfer referred to in clause "(A)" above may not be avoided, in accordance with Bankruptcy Code section 764(b); and

C.    For the assumption and assignment pursuant to Bankruptcy Code section 365 to Buyer, under the Agreement, of any executory contracts or unexpired leases to which Refco LLC is a party.

The foregoing notwithstanding, and without limiting Buyer's rights under the Agreement, nothing in section 4(ii) of this Order shall be construed to specifically direct the Chapter 7 trustee to act in a manner inconsistent with his or her independent fiduciary duty to administer Refco LLC's estate.

5.    **Authorization**.  Provided the requirements of paragraph 4 above are met, the Debtors are authorized under Bankruptcy Code sections 363(b) and (f) to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement; provided, however, that notwithstanding anything contained in the Agreement or this Order, in no event shall the Debtors transfer or sell to the Buyer (and the term "Assets" herein shall not include) any "securities" (as defined in section 101(49) of the Bankruptcy Code), any "customer property" (as defined in sections 741(4) and 761(10) of the Bankruptcy Code), other similar instruments, futures, forwards and options, or cash, owned or held by, or held on behalf of, directly or indirectly, Refco Capital Markets, Ltd. or Refco Securities LLC, wherever located; and provided further, that nothing contained in this limitation shall constitute a determination or ruling as to any party's rights in such securities, customer property, similar instruments, futures, forwards and options, if any, or cash.  Delivery by the Chapter 7 trustee under paragraph 4 hereof of such notice of the assumption and assignment of the customer accounts and the other executory contracts and unexpired leases of Refco LLC, as required by the Commodity Exchange Act and 17 C.F.R. Part 190, the CME rules, and the NYMEX Rules, together with the notice described in paragraph D above shall constitute good and sufficient notice for all purposes of the Bankruptcy Code, including sections 363(f) and 365.

6.    **Implementation**.  The Debtors are authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, along with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Buyer for the purpose of transferring the Assets to the Buyer or as may be necessary or appropriate to the performance of the obligations contemplated by the Agreement, as soon as reasonably possible.

7.      **Free and Clear**.  Except as expressly permitted or otherwise specifically provided for in the Agreement or this Order, pursuant to Bankruptcy Code sections 363(f) and 105(a), the Debtors' interests in the Assets shall be transferred to the Buyer and, as of the Closing Date, shall be free and clear of (a) all Interests, and (b) all debts arising under, relating to, or in connection with any acts of the Debtors, Excluded Liabilities, claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties, options, rights, contractual commitments, restrictions, set off or recoupment rights, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, claims and encumbrances (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of any of the Debtors' or the Buyer's interests in such Assets, or any similar rights, (ii) in respect of taxes, restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, "Claims"), with all such non-assumed Interests and Claims to attach to the Debtors' interests in the Sale Proceeds, in the order of their priority, with the same validity, force and effect which they have against the Assets as of the Closing Date, subject to any rights, claims and defenses the Debtors' estates and Sellers, as applicable, may possess with respect thereto.

8.      **No Liability for Liens or Excluded Liabilities**.  Except for the Assumed Liabilities, none of the Buyer or its Affiliates, Members or Shareholders of the Purchased Entities, or the Acquired Assets of the Debtors, will have any liability whatsoever with respect to

Excluded Liabilities or Liens on such Assets arising in respect thereof, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly.

9.      **Valid Transfer**.  The transfer of the Assets to the Buyer pursuant to the Agreement constitutes a legal, valid and effective transfer of the Debtors' interests in the Assets, and shall vest the Buyer with all right, title and interest of the Debtors' interests in and to the Assets free and clear of all Claims and Interests of any kind or nature whatsoever.

10.      **General Assignment**.  On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Assets or a bill of sale transferring good and marketable title in such Assets to the Buyer.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

11.      **Injunction**.  Except as expressly permitted by the Agreement or by this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses before the Closing Date or the transfer of the Debtors' interests in the Assets to the Buyer, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Buyer, its

property, its successors and assigns, its affiliates or the interests of the Debtors in such Assets,

such persons' or entities' Interests or Claims. Following the Closing Date, no holder of an

Interest in or Claim against the Debtors shall interfere with Buyer's title to or use and enjoyment

of the Debtors' interests in the Assets based on or related to such Interests or Claims, and all such

Claims and Interests, if any, shall be, and hereby are transferred and attached to the Debtors'

interests in the Sale Proceeds as provided in this Sale Order in the order of their priority, with the

same validity, force and effect which they have against such Assets as of the Closing Date,

subject to any rights, claims and defenses that the Debtors' estates and Sellers, as applicable, may

possess with respect thereto.

        12.    **No Successor Liability**.  Except for the Assumed Liabilities, the transfer

of the Assets to the Buyer under the Agreement shall not result in (i) the Buyer having any

liability or responsibility for any claim against the Debtors or against an insider of the Debtors,

or (ii) the Buyer having any liability or responsibility to the Sellers except as is expressly set

forth in the Agreement.  Without limiting the effect or scope of the foregoing, to the fullest

extent permitted by law, the transfer of the Assets from the Sellers to the Buyer does not and will

not subject the Buyer or its affiliates, successors or assigns or their respective properties

(including the Assets) to any liability for claims (as that term is defined in section 101(5) of the

Bankruptcy Code) against the Debtors or the Debtors' interest in such Assets by reason of such

transfer under the laws of the United States or any state, territory or possession thereof applicable

to such transactions.  Neither the Buyer nor its affiliates, successors or assigns shall be deemed,

as a result of any action taken in connection with the purchase of the Assets, to  (a) be a

successor to the Sellers; (b) have, de facto or otherwise, merged with or into the Sellers; or (c) be

a continuation or substantial continuation of the Sellers or any enterprise of the Sellers.  Neither

the Buyer nor its affiliates, successors or assigns is acquiring or assuming any liability, warranty

or other obligation of the Debtors, including, without limitation, any tax incurred but unpaid by

the Debtors before the Closing Date, including, but not limited to, any tax, any fine or penalty

relating to a tax, or any addition to a tax, whether or not previously assessed, fixed or audited,

whether or not paid, and whether or not contested before and adjudicated by a judicial or

administrative tribunal of competent jurisdiction, except as otherwise expressly provided in the

Agreement.

13.     **Authorization to Release Liens**.  If any Person that has filed any

financing statement, mortgage, mechanic's lien, lis penden or other document or instrument

evidencing liens or security interests or other encumbrances ("Liens") with respect to the

Debtors' interests in the Assets, shall have failed to deliver to the Debtors and Buyer prior to the

Closing, in proper form for filing and executed by the appropriate Person or Persons, termination

statements, instruments of satisfaction, releases of all such Liens which such Person has with

respect to such Assets then the Debtors are authorized to execute and file such statements,

instruments, releases and other documents on behalf of such Person appropriately limited in

scope to such Assets, and Buyer is authorized to file, register or otherwise record a certified copy

of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive

evidence of the release of all Liens on such Assets as of the Closing Date.

14.     **Release of Liens**.  This Order is and shall be effective as a determination

that all Liens shall be, and are, without further action by any person or entity, released with

respect to the Debtors' interests in the Assets as of the Closing Date.

15.     **Binding Effect of Sale Order**.  This Sale Order shall be binding upon and

shall govern the acts of all entities, including without limitation all filing agents, filing officers,

title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of

the Assets.

        16.    **Exemption from Stamp Taxes**.  The transactions contemplated by the

Agreement, and the execution, delivery and/or recordation of any and all documents or

instruments necessary or desirable to consummate the transactions contemplated by the

Agreement shall be, and hereby are, exempt from the imposition and payment of all recording

fees and taxes, stamp taxes, and/or sales, transfer or any other similar taxes, pursuant to section

1146(c) of the Bankruptcy Code, <u>provided</u> and on the condition that, the Debtors confirm a

chapter 11 plan for which the Sale was a necessary predicate on or before a reasonable period

after the closing of the Agreement.  The instruments transferring the Assets, and the Other Assets

shall contain the following endorsement:

> "Because this instrument has been authorized pursuant to Order of the United
> States Bankruptcy Court for the Southern District of New York relating to a chapter 11
> plan of the grantor, it is exempt from transfer taxes, stamp taxes or similar taxes pursuant
> to 11 U.S.C. § 1146(c) to the extent provided by such Order."

        17.    **Assignment of Contracts**.  Subject to the terms of the Agreement and this

Sale Order, in accordance with Bankruptcy Code sections 363, 365 and 105(a), the Debtors are

hereby authorized to assume and assign Contracts, including customer account agreements, to

which they are a party to the Buyer in accordance with the following procedures.

        18.    The Debtors may provide notice, together with the Notice of Assumption

and Assignment of, and Amounts Necessary to Cure Defaults under, Contracts and Leases

Proposed to be Assumed and Assigned to Potential Purchaser mailed on November 7, 2005 and

November 8, 2005 (an "Assumption Notice") to the counterparty to a Contract which the Debtors

seek to assume and assign, which shall include the prepetition cure amount, if any (the "Cure

Amount"), asserted by the Debtors with respect to such Contract, and the effective date of such

assumption and assignment (the "Assignment Effective Date").  The counterparty to such

Contract shall have ten days from the date the Assumption Notice is served to object to the Cure

Amount, if any, and to object to the assumption and assignment of the Contract.  If the

counterparty to the Contract does not file an objection by such deadline, the counterparty to the

Contract shall be deemed to consent to (i) the Cure Amount, if any, and (ii) the assumption and

assignment of the Contract, and the Contract shall be assumed and assigned as of the Assignment

Effective Date.  The Debtors shall pay any Cure Amount due on, or as soon as practicable, after

the Assignment Effective Date.

                19.    **Assumption and Cure Objections**.  In the event the counterparty to a

Contract files an objection to the cure amount or to the assumption and assignment of a Contract,

such objection shall be scheduled for a hearing at the convenience of the Court.  The Debtors

shall request such a hearing date or dates (each, an "Assumption Hearing") from the Court, will

provide any objecting party notice of such Assumption Hearing, and will state in the notice

whether such Assumption Hearing will be a status conference or an evidentiary hearing.  In the

event an objection is solely as to the appropriate Cure Amount, the Debtors shall pay the

undisputed portion of any Cure Amount upon, or as soon as practicable after, the Assignment

Effective Date, the Contract shall be deemed assumed and assigned as of the Assignment

Effective Date, and any disputed Cure Amounts shall be reserved pending final determination by

the Court as provided herein.[2]  The Debtors shall fund a reserve (the "Cure Reserve") equal to

the disputed portion of the Cure Amount, or such other amount as agreed to by the parties or set

by the Court.  The Debtors and the Contract counterparties shall have 90 days from the date of

assumption and assignment to informally resolve the cure dispute.  If a resolution cannot be

reached within such period, the Debtors shall notice the cure objection for a status conference to

be held at the convenience of the Court.  The sole source of recovery for a Contract

counterparty's cure claim against the Debtors shall be the funds reserved for such Contract in the

Cure Reserve.  The consent of the Buyer to the procedures set forth in this paragraph and the

preceding paragraph shall not affect any claim the Buyer may have under the Agreement relating

to or arising out of a failure by the Debtors to effectuate the assumption and assignment of any

particular Contract.

20.    **Bankruptcy Code Sections 365(b)(1) and 365(f)(2)**.  Subject to the

consents or Court determinations provided in paragraphs 17-19 hereof, the requirements of

sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with

respect to the Contracts.

21.    **Ipso Facto Clauses Ineffective**.  Upon Debtors' assignment of the

Contracts to the Buyer under the provisions of this Sale Order and any additional order

contemplated by paragraphs 17-19 hereof, no default shall exist under any Contract, and no

counterparty to any Contract shall be permitted to declare a default by the Buyer under such

Contract or otherwise take action against the Buyer as a result of any Debtor's financial condition,

bankruptcy or failure to perform any of its obligations under the Contract.

---

[2]    The Debtors reserve the right to withdraw a request to assume and assign any Contract.

22.     **Bankruptcy Code Section 363(n)**.  The consideration provided by the

Buyer for the Assets under the Agreement is fair and reasonable and may not be avoided under

Bankruptcy Code section 363(n).

23.     **Good Faith**.  The transactions contemplated by the Agreement are

undertaken by the Buyer in good faith, as that term is used in Bankruptcy Code section 363(m)

and, accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the Sale shall not affect the validity of the Sale to the Buyer, unless such

authorization is duly stayed pending such appeal.  The Buyer is a good faith purchaser of the

Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section

363(m).

24.     **Retention of Jurisdiction**.  This Court retains jurisdiction to enforce and

implement the terms of the Agreement, all amendments thereto, any waivers and consents

thereunder, and of each of the agreements executed in connection therewith in all respects,

including, but not limited to, retaining jurisdiction to (a) compel delivery of Assets to the Buyer,

(b) protect the Buyer against any of the Excluded Liabilities, (c) resolve any disputes arising

under or related to the Agreement, except as otherwise provided therein, and (d) interpret,

implement and enforce the provisions of this Sale Order.

25.     **Surrender of Possession**.  Subject to the requirements of Bankruptcy

Code section 365 as to executory contracts and unexpired leases, all entities who on the Closing

Date may be, in possession of some or all of the Assets in which a Debtor holds an interest are

directed to surrender possession of such Assets or Debtor's interest therein either to (i) the

Debtors immediately prior to the Closing Date, or (ii) to the Buyer on the Closing Date.

26.    **Administrative Priority Expense**.  Any amounts payable by the Debtors

under the Agreement or any of the documents delivered by the Debtors in connection with the

Agreement shall be paid in the manner provided in the Agreement without further order of this

Court, and shall not be discharged, modified or otherwise affected by any reorganization plan of

any of the Sellers or Debtors, except by agreement with Buyer, its successors, or assigns.

Without limiting the generality of the foregoing, Buyer's indemnities under and to the extent

provided in the Agreement are hereby granted a superpriority lien pursuant to Section 364(d) of

the Bankruptcy Code on all assets of the Debtors which are Sellers, as well as a superpriority

administrative claim against the estates of the Debtors which are Sellers, which superpriority lien

and superpriority claim shall (except as hereinafter provided) be senior and prior to all Liens

created on property of the Debtors which are Sellers after the date hereof and all claims for

expenses of administration of the Debtors which are Sellers under Section 503(b) of the

Bankruptcy Code, provided, however, that such superpriority liens and claims shall be subject

and subordinate to (i) all valid and perfected Liens existing on the date of commencement of

these cases and the Claims secured thereby, as well as any Liens and Claims provided as

adequate protection therefor, including, without limitation, all Liens and Claims of the Bank

Group, and (ii) any post-petition financing providing new funds to the Debtors.  If the order

approving the Sale in the Chapter 7 case of Refco LLC referred to in paragraph 4 of this Sale

Order provides that Buyer's indemnities are granted a super-priority lien pursuant to section

364(d) of the Bankruptcy Code on the assets of Refco LLC, as well as a super-priority

administrative claim against the estate of Refco LLC, which lien and claim shall not be junior to

any Lien or Claim against Refco LLC, then the aggregate amount of Buyer's indemnities over

and above the escrow holdback shall be limited to the sum of (x) the Purchase Price, to the extent

paid, (y) the $58,000,000 sum of the liquidated damages amounts that are estimates of

liquidation costs for certain geographically delimited operations of the Sellers, and (z) an

additional $100,000,000 estimate of the aggregate amount of absolute and contingent Assumed

Liabilities, it being understood that Sellers shall have the right to seek a further determination

from the Court as to the actual amount of such Assumed Liabilities, which shall be used instead

of such estimate for this purpose if such actual amount is determined by the Court to be less than

such estimate.  For avoidance of doubt, any superpriority granted pursuant to the preceding

sentence will not adversely affect the priority of the Liens and Claims of the Bank Group in

respect of their borrowers, their guarantors or the properties of the respective estates of their

borrowers or guarantors, as set forth in the proviso to the second sentence of this paragraph 26.

27.    **Binding on Successors**.  The terms and provisions of the Agreement and

this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors,

their estates, the Buyer and its respective affiliates, successors and assigns, and any affected third

parties, notwithstanding any subsequent appointment of any trustee(s) of the Debtors under any

chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall

be binding.

28.    **Bulk Sale Laws**.  No bulk sales law or any similar law of any state or

other jurisdiction shall apply in any way to any of the transactions under the Agreement.

29.    **Restricted Sale Proceeds**.  Each Debtor (and Refco LLC, when it

becomes a debtor under the Bankruptcy Code) shall deposit all amounts payable to it under the

Agreement (other than amounts to be deposited, if required, in the Escrow Account or the

Excepted Account Escrow, as defined in the Agreement) into a segregated investment account (a

"Proceeds Account"), and such proceeds shall be invested, subject to the terms of this Order, in

accordance with investment guidelines approved by the Court or guidelines otherwise reasonably

acceptable to the Agent, the Committee and the Debtors after notice to the Debtors, the Agent

and the Creditors Committee, and a hearing.

30.     **Fund Disbursements.**  Unless otherwise ordered by the Court or required

by the Agreement, none of the Debtors (and Refco LLC, when it becomes a debtor under the

Bankruptcy Code) shall make any disbursements of Sale Proceeds, except such Sellers may use

the proceeds of Assets sold by them to Buyer to pay allowed administrative expenses incurred by

them in the ordinary course of their respective businesses, including any pre-assumption

obligations under Bankruptcy Code section 365, and other amounts (including Cure Amounts) to

the extent authorized to be paid by order of the Court.

31.     **Allocation**.  The rights of all parties in interest in respect of the proper

allocation among the Sellers of Sale Proceeds and liabilities to Buyer in respect to the Agreement

are reserved, as among themselves (and without impairing or affecting in any way Buyer's rights

under the Agreement), subject to the further order of the Court.  The Debtors shall provide

proper notice, including to the Committee and the Agent of any proposed allocation of such

proceeds or liabilities, and, in the event of any dispute in respect of any such allocation, the

Debtors shall seek a Court order approving such allocation on notice to all parties in interest.

32.     **Notice of Certain Transactions**.  Except as required by the Agreement,

prior to any distribution of Sale Proceeds other than amounts permitted to be paid under

paragraph 30 of this Sale Order, or in connection with other matters required to be heard by the

Court in these cases, each Debtor and Seller will obtain Court approval on notice to parties in

interest, including the Agent and the Committee.

33. **Preservation of Certain Records**.  Subject to further order of the Court, the Debtor, the Sellers and the Buyer are hereby ordered to take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan for the Debtors, the books and records and any other documentation, including tapes or other audio or digital recordings and data in or retrievable from computers or servers, relating to or reflecting the accounts, property and trading records of the customers of the Debtors or of the non-Debtor Sellers whose accounts are a part of the Assets being sold under the Agreement or are excluded from the definition of "Assets" under paragraph 5 of this Sale Order.  In addition, the Debtors and the Committee shall promptly identify reasonable procedures for preserving information in the Sellers' possession related to potential claims that the Debtors may have against third parties, and the Sellers and the Buyer shall maintain and preserve such information, subject to further order of the Court until the consummation of any chapter 11 plan for the Debtors.

34. **Accounting**.  The Sellers shall provide to the other Debtors and to the Agent and the Committee a monthly accounting of the cash and cash investments of, and of disbursements by each Seller including without limitation, cash and cash investments maintained in the Proceeds Account.

35. **Sale Proceeds**.  Any and all valid and perfected Liens on the Assets of any Debtor that are transferred under the Agreement shall attach to any Sale Proceeds of such Assets immediately upon receipt of such proceeds by such Debtor (or any party acting on such Debtor's behalf) in the order of priority, and with the same validity, force and effect which they have against such Assets as of the Closing Date, subject to any rights, claims and defenses the Debtors' estates or the Sellers, as applicable, may possess with respect thereto, and, in addition to any limitations on the use of such proceeds pursuant to paragraph 30 or any other provision of

this Order, no such proceeds (whether maintained in a Proceeds Account or otherwise) shall be

used by the Debtors without the consent of the party or parties claiming an Interest therein or

further order of the Court after notice (to all parties that claim an Interest in such proceeds) and

hearing, consistent with the requirements of the Bankruptcy Code.

36.    **Non-material Modifications**.  The Agreement and any related

agreements, documents or other instruments may be modified, amended or supplemented by the

parties thereto, in a writing signed by such parties, and in accordance with the terms thereof,

without further order of the Court, provided that any such modification, amendment or

supplement does not have a material adverse effect on the Debtors' estates or the Bank Group

and has been agreed to between the Committee and the Debtors.

37.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan

confirmed in these cases (a "Plan") or any order confirming any such plan or in any other order

in these cases (including any order entered after any conversion of these cases to cases under

chapter 7 of the Bankruptcy Code) (a "Subsequent Order") shall alter, conflict with, or derogate

from, the provisions of the Agreement or this Order.  Notwithstanding any language in any such

Plan or Subsequent Order no such Plan or Subsequent Order will be construed to alter, conflict

with, or derogate from, the provisions of the Agreement or this Sale Order without the Buyer's

express written consent.

38.    **Failure to Specify Provisions**.  The failure specifically to include any

particular provisions of the Agreement in this Sale Order shall not diminish or impair the

effectiveness of such provisions, it being the intent of the Court that the Agreement be authorized

and approved in its entirety, _provided_, however that this Sale Order shall govern if there is any

inconsistency between the Agreement and this Sale Order.  Likewise, all of the provisions of this

Sale Order are nonseverable and mutually dependent.

      39.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rules

6004(g) and 6006(d), this Sale Order shall not be stayed for ten days after the entry hereof, but

shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in

closing the transactions referenced herein, and the Debtors and Buyer intend to close the Sale as

soon as practicable (subject to the conditions of the Agreement).  Therefore, any party objecting

to this Order must exercise due diligence in filing an appeal and pursuing a stay of this Sale

Order, or risk its appeal being foreclosed as moot.

Dated:  November 14, 2005
       New York, New York

                   /s/ ROBERT D. DRAIN
                   UNITED STATES BANKRUPTCY JUDGE