**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
: 
<u>In</u> <u>re</u> : Chapter 11 Case No.
: 
**BEARINGPOINT, INC., <u>et</u> <u>al.</u>,** : 09 - 10691 (REG)
: 
Debtors. : (Jointly Administered)
: 
-------------------------------------------------------------x

<u>ORDER PURSUANT TO SECTIONS 363(b), (f), AND (m), 365 AND 105(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004, 6006, AND 9014 (i)
APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN OF
THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS, (ii) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING
HORSE AGREEMENT IN CONNECTION THEREWITH, (iii) APPROVING THE
PAYMENT OF STALKING HORSE PROTECTIONS, (iv) APPROVING THE STALKING
HORSE AGREEMENT, (v) AUTHORIZING THE DEBTORS TO SELL CERTAIN OF
THE THEIR ASSETS, (vi) SETTING RELATED AUCTION AND HEARING DATES, (vii)
AUTHORIZING THE DEBTORS TO ENTER INTO AN ALLOCATION AGREEMENT,
AND (viii) APPROVING PROCEDURES RELATED TO
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND APPROVING THE FORM AND MANNER THEREOF</u>

Upon the motion (the "***Motion***"), dated March 23, 2009, of BearingPoint, Inc. ("***BearingPoint***") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for (i) approval of procedures (the "***Bidding Procedures***") in connection with the sale of BearingPoint's public services industry group, in whole or in part (the "***Bid Assets***"), (ii) authorization to enter into a Stalking Horse Agreement (as defined below) in connection therewith, (iii) approval of the payment of Stalking Horse Protections (as defined below), and (iv) the setting of related auction and sale hearing dates, all as more fully described in the Motion; and the Court having held on April 1, 2009 and April 2, 2009 a hearing to consider the relief requested herein (the "***Bidding***

*Procedures Hearing*") with the appearances of all interested parties noted in the record of the Bidding Procedures Hearing; and upon the record of the Hearing, and all of the proceedings before the Court, the Court finds and determines the following:

**FOUND AND DETERMINED THAT:**

      A.      The Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.      The Debtors have provided due and proper notice of the Motion and Hearing to the Notice Parties[1] in accordance with the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated March 5, 2009 [Docket No. 117], and no further notice is necessary. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and Stalking Horse Protections (as defined below)) has been afforded to all interested persons and entities, including but not limited to the Notice Parties.

      C.      The Debtors' proposed notice of the Bidding Procedures, the Auction and the hearing to approve any sale of the Debtors' Bid Assets (the "*Sale Approval Hearing*") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

---

[1] Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Motion.

    D.  The Bidding Procedures substantially in the form attached hereto as Exhibit A are fair, reasonable, and appropriate and are designed to maximize the recovery from any sale of the Debtors' Bid Assets (the "*Sale*"). The Bidding Procedures were negotiated in good faith between the Debtors and the Stalking Horse Bidder (as defined below).

    E.  The Debtors have demonstrated a compelling and sound business justification for authorization to (i) enter into the agreement, as amended as of April 3, 2009 which amendment shall be filed with the Court, (the "*Stalking Horse Agreement*") with Deloitte LLP ("*Deloitte*" or the "*Stalking Horse Bidder*"), attached as Exhibit C to the Motion, for the sale of the Bid Assets and (ii) pay the fee (the "*Break-Up Fee*") and expense reimbursement (the "*Expense Reimbursement*," and together with the Break-Up Fee, the "*Stalking Horse Protections*"), under the terms and conditions set forth in Section 7 of the Stalking Horse Agreement, as approved by this Order.

    F.  The Stalking Horse Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

    G.  The Debtors' payment of either or both (i) the Break-Up Fee and/or (ii) the Expense Reimbursement, under this Order and upon the conditions set forth in Section 7 of the Stalking Horse Agreement is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) and 507(a) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate and (d) material inducements for, and conditions necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to undertake any Sale.

H. On or about April 6, 2009, the Debtors will serve notice of the Auction and the Sale Approval Hearing (the "***Sale Notice***") on (i) the Notice Parties in accordance with the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, dated March 5, 2009 [Docket No. 117], and (ii) all interested bidders for the Bid Assets that have executed confidentiality agreements.

I. Entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties-in-interest herein.

J. The findings and conclusions set forth herein and as supplemented by the Court's decision at the conclusion of the Hearing on April 2, 2009 constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

K. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Bidding Procedures attached hereto as <u>Exhibit A</u> are APPROVED, fully incorporated into this Order and the Debtors are authorized and directed to act in accordance therewith. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

2. The objections of the Official Committee of Unsecured Creditors, Law Debenture Trust Company of New York, as Indenture Trustee and any other objections to the

Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order or on the record at the conclusion of the hearing on April 2, 2009, and all reservations of rights included in such objections, are overruled in all respects on the merits.

3. The form of Sale Notice attached to the Motion as <u>Exhibit E</u> is approved.

4. Service of the Sale Notice on the Notice Parties in the manner described herein and in the Motion constitutes good and sufficient notice of the Auction and the Sale Approval Hearing. No other or further notice is required.

5. To constitute a "***Qualified Bid***," a bid (other than the Stalking Horse Agreement) must be received by the Bid Deadline (as defined in the Bidding Procedures) and comply with the applicable provisions of the Bidding Procedures; <u>provided</u>, <u>however</u>, that if any such Qualified Bid is conditioned upon the assumption and assignment of Contracts (as defined below) or Leases (as defined below), then such offeror must identify such Contracts and/or Leases to be assumed and assigned and provide evidence of its ability to provide adequate assurance of future performance of such Contracts or Leases along with such Qualified Bid (an "***Adequate Assurance Package***"). The Stalking Horse Agreement is a Qualified Bid. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder.

6. The Auction shall be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **April 15, 2009 at 10:00 a.m. (Eastern Time)**.

7. <u>Objection Deadline to Sale Order(s)</u>. Objections to the relief sought in the Sale Order shall be in writing, filed and served in accordance with the Case Management Order #2, so as to be actually received by (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New

York, New York 10153, (Attn: Marcia L. Goldstein, Esq. and Alfredo R. Pérez, Esq.), as counsel to the Debtors, (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall St., 21st Floor, New York, New York 10004 (Attn: Serene Nakano, Esq.), (iii) Paul, Hastings, Janofsky & Walker LLP, Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Luc Despins, Esq. and Leslie A. Plaskon, Esq.), as counsel for Wells Fargo Bank, N.A., the administrative agent for the Debtors' prepetition secured lenders (the "*Agent*"), (iv) Bingham McCutchen LLP, 299 Park Avenue, New York, New York 10022 (Attn: Jeffrey Sabin, Esq., Neil W. Townsend, Esq. and Sabin Willett, Esq.), as counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "*Creditors' Committee*"), (v) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Robert T. Schmidt, Esq. and Thomas E. Molner, Esq.), as counsel to the Stalking Horse Bidder, and (vi) all parties on the Master Service List pursuant to the Case Management Order #2 (collectively, the "*Objection Notice Parties*") by **April 10, 2009 at 12:00 p.m. (Eastern Time)** by the Objection Notice Parties; provided, however, that objections as to the Auction or the selection of the highest or otherwise best bid shall be in writing, filed and served in accordance with the Case Management Order #2, so as to be actually received by the Objection Notice Parties by **April 16, 2009 at 12:00 p.m. (Eastern Time)**.

8.  The Sale Approval Hearing shall be held in the United States Bankruptcy Court for the Southern District of New York, Courtroom 621, One Bowling Green, New York, NY 10004, on **April 17, 2009 at 9:00 a.m. (Eastern Time)** or such other date and time that the Court may later direct; provided, however, that the Sale Approval Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

9. April 2, 2009 at 8:00 p.m. shall be deemed the date of entry of the Bidding Procedures Order for the purpose of section 3.06 of the Stalking Horse Agreement.

10. As soon as practicable upon entry of this Order, to the extent that such actions have not already been taken, the Debtors shall: (a) post a complete copy of the Stalking Horse Agreement, including all schedules, exhibits and amendments thereto except exhibits 2.12(r), 6.01(e)(1), 6.01(e)(2), and 6.01(e)(3) in the Debtors' virtual data room; and (b) notify any employee who has signed an agreement for future employment with the Stalking Horse Bidder (a "**Future Employment Agreement**") that such employee is not bound by the Future Employment Agreement until a Sale to the Stalking Horse Bidder is approved by the Court and closes and the Future Employment Agreement does not prevent the employee from engaging in discussions about future employment with other potential bidders for the Bid Assets.

11. As soon as practicable after the conclusion of the Auction, but no later than before the Sale Approval Hearing, the Debtors shall file a final form of order approving the Sale as agreed upon between the Debtors and the Successful Bidder(s).

12. <u>Stalking Horse Agreement</u>.  The Debtors are authorized to enter into the Stalking Horse Agreement.

13. The Stalking Horse Bidder shall be entitled to receive the Expense Reimbursement and/or the Break-Up Fee in accordance with the terms and conditions of the Stalking Horse Agreement, <u>provided</u>, <u>however</u> that under no circumstances will the Stalking Horse Bidder receive the Break-Up Fee if it is the Successful Bidder and the transaction contemplated by the Stalking Horse Agreement closes.  The Expense Reimbursement and Break-Up Fee, once earned in accordance with Section 7 of the Stalking Horse Agreement, shall (i) be administrative expenses in the Debtors' chapter 11 cases pursuant to sections 503(b), 507(a)(1)

and 507(b) of the Bankruptcy Code until paid to the Stalking Horse Bidder, <u>provided</u>, <u>however</u>, that (A) all such amounts shall have the priority and be paid solely in the manner set forth in Section 7 of the Stalking Horse Agreement and (B) payment of the Expense Reimbursement shall be subject to the Objection Rights as defined below.

14. In the event that an Expense Reimbursement is to be paid pursuant to the Stalking Horse Agreement, the Debtors and/or the Stalking Horse Bidder shall provide the Creditors Committee and Agent with the documentation supporting the expenses that make up the Expense Reimbursement and an itemized statement as to the amount requested (subject to redaction for confidentiality and privilege) (the "***Expense Reimbursement Documentation***"). Upon their receipt of the Expense Reimbursement Documentation, the Creditors Committee and the Agent shall have five days to object to any portion of the requested Expense Reimbursement on the basis that such expenses are not payable pursuant to the terms of the Stalking Horse Agreement (the "***Objection Rights***"). If no objection is filed within five days of receipt of the Expense Reimbursement Documentation, the requested Expense Reimbursement shall be paid pursuant to the terms of the Stalking Horse Agreement. If an objection is filed by the Creditors Committee or the Agent within five days of their receipt of the Expense Reimbursement Documentation (an "***Objection***"), the Debtors shall pay that portion of the Expense Reimbursement not subject to the Objection pursuant to the terms of the Stalking Horse Agreement. The Court will decide any Objection, after the Debtors and the Stalking Horse Bidder have been provided an opportunity to respond to same.

15. <u>Assignment Procedures</u>. The assignment procedures set forth in the Motion (the "***Assignment Procedures***") are hereby approved. As soon as practicable after the date this Order is entered, the Debtors will file with the Court an assignment schedule (the

"*Assignment Schedule*") identifying the Contracts and Leases that will be assumed and assigned pursuant to the Stalking Horse Agreement, under seal, and in the form and substance reasonably acceptable to the Stalking Horse Bidder. The Assignment Schedule may be supplemented at the request of the Stalking Horse Bidder. The Debtors will serve each of the non-debtor counterparties to the Contracts and Leases a notice, which shall be in form and substance reasonably acceptable to the Stalking Horse Bidder (the "*Notice of Assignment and Cure*"), by first class mail, that will include (i) the title of the Contract or Lease to be assumed, (ii) the name of the counterparty to the Contract or Lease, (iii) any applicable cure amounts, (iv) the identity of the assignee, and (v) the deadline by which any such Contract or Lease counterparty must object.

16. Any objections to the assumption and/or assignment of any Contract or Lease identified on the Notice of Assignment and Cure, including to the cure amount set forth on such notice, must be in writing, filed with the Court, and be actually received by the Notice Parties in accordance with the Case Management Order #2 no later than ten (10) days after the Assignment Schedule is mailed to the affected party (the "*Assignment and Cure Objection Deadline*"), and must set forth a specific default under the Contract or Lease and claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Notice of Assignment of Cure.

17. <u>Resolution of Objections to Assumption and/or Assignment of Contracts and Leases</u>. If no objections are received by the Assignment and Cure Objection Deadline, then the assumption and assignment are authorized and the cure amounts set forth on the Notice of Assignment and Cure shall be binding upon the nondebtor party to the Contract or Lease for all purposes and will constitute a final determination of total cure amounts required to be paid to the contract or lease counterparty in connection with any potential assignment of such Contract or

Lease to the Successful Bidder.  In addition, each non-debtor party to such unexpired Contract or Lease shall be forever barred from objecting to the cure information set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure or other amounts with respect to the Contract or Lease arising or relating to any period prior to such assumption or assignment.  If no objections to the assumption or assumption and assignment are received by the Assignment and Cure Objection Deadline, counsel for the Debtors may submit to the Court a declaration of no objection and a form of order (collectively, the "***Declaration of No Objection***") granting the requested assumption and/or assignment of the Contract or Lease, and serve such Declaration of No Objection on the counterparty to the Contract or Lease.  The order approving such assumption and/or assignment may then be entered by the Court twenty-four (24) hours after the Declaration of No Objection is filed.

    18. If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at a later date set by the Court.  The pendency of a dispute relating to cure amounts will not prevent or delay the assumption and assignment of any Contracts or Leases.  If an objection is filed only with respect to the cure amount listed on the Notice of Assignment and Cure, the Debtors may file a Declaration of No Objection as to assumption and assignment only and the dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court.  The Debtors intend to cooperate with the counterparties to Contracts or Leases to attempt to reconcile any difference in a particular cure amount.

    19. Nothing in Paragraphs 15 through 18 of this Order shall interfere with the applicability of the Anti-Assignment Act, 41 U.S.C. § 15 (the "***Act***") or otherwise affect the rights of the United States under the Act.

20. No agreement entered into by the Debtors concerning the allocation of the proceeds of the Sale to the assets purchased shall be binding on the Creditors' Committee, the Court or any other person not party to such agreement.  The Court shall retain final authority to resolve any dispute as to the allocation of proceeds of the sale for the purposes of (a) the distribution of such proceeds to the creditors' of the Debtors; and (b) the attachment of liens to such proceeds, and the rights of all parties with respect to these issues are expressly reserved.

21. Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

22. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

24. This Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.  To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

Dated: New York, New York
     *__April 7, 2009__*

                                     *s/ Robert E. Gerber*
                                    UNITED STATES BANKRUPTCY JUDGE

# **Exhibit A**

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "*Bidding Procedures*") to be employed in connection with an auction (the "*Auction*") for the sale (the "*Sale*") of (i) the assets included in the Stalking Horse Agreement (as defined below) (the "*Deloitte Bid Assets*") between Deloitte LLP ("*Deloitte*" or the "*Stalking Horse Bidder*") and BearingPoint, Inc. ("*BE*," and together with its debtor and non-debtor affiliates, "*BearingPoint*"); or (ii) all or any portion of the Deloitte Bid Assets plus any of the Debtors' assets not included in the Stalking Horse Agreement (together with the Deloitte Bid Assets, the "*Bid Assets*"). At a hearing following the Auction (the "*Sale Approval Hearing*"), the Debtors will seek entry of an order (the "*Sale Order*") from the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*") authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Debtors[1] determine to have made the highest or otherwise best bid (the "*Successful Bidder*").

## Assets to be Sold

By Motion dated March 23, 2009, the Debtors have requested authority to sell the Bid Assets, which are comprised in whole or in part of assets of BearingPoint's public services industry group. Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtors' rights, title and interest in and to any Bid Assets sold in connection with, or as a result of, the Sale shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and against in accordance with section 363 of the Bankruptcy Code.

## The Bidding Process

After consultation with the Agent and the Creditors' Committee, the Debtors shall: (i) determine whether any person is a Qualified Bidder (as defined below); (ii) provide reasonable assistance to Interested Parties in conducting their due diligence investigations subject to the provisions below; (iii) receive offers from proposed bidders; and (iv) negotiate any offers made to purchase the Bid Assets. Any person who wishes to participate in the Auction must be a Qualified Bidder. Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind to any person who has not executed a confidentiality agreement as provided for below. Notwithstanding the foregoing or anything else in these Bidding Procedures, the Stalking Horse Bidder is hereby deemed to be a Qualified Bidder for all

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Debtors' *Motion for Orders pursuant to Sections 363(b), (f), and (m), 365 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014 For (i) Approval of Procedures in Connection with the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (ii) Authorization to Enter Into a Stalking Horse Agreement in Connection Therewith, (iii) Approval of the Payment of Stalking Horse Protections, (iv) Approval of the Stalking Horse Agreement, (v) Authorization to Sell Certain of the Debtors' Assets, (vi) the Setting of Related Auction and Hearing Dates, (vii) Authorization to Enter into an Allocation Agreement, (viii) Approval of Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases and Form and Manner Thereof.*

purposes and at all times, and the bid embodied in the Stalking Horse Agreement (including any subsequent bids at the Auction) is hereby deemed to be a Qualified Bid (as defined herein) for the Bid Assets, for all purposes and at all times.

BE has entered into an agreement as amended (the "***Stalking Horse Agreement***") with Deloitte for the sale of the Deloitte Bid Assets, as described in the Motion and the Stalking Horse Agreement. The Stalking Horse Agreement is attached as Exhibit E to the Motion and has been filed on the main docket of these cases. Pursuant to the Stalking Horse Agreement and these Bidding Procedures, the Debtors have agreed to provide the Stalking Horse Bidder with the following bid protections: (i) a breakup fee in the amount of $10,500,000 (the "***Breakup Fee***"); and (ii) reimbursement of reasonable, documented out of pocket costs and expenses (including fees and expenses of counsel, financial advisors and other professionals and consultants, and Deloitte's share of the HSR Act filing fee) incurred by the Stalking Horse Bidder in connection with the Stalking Horse Agreement and the transactions contemplated thereby, in an amount not to exceed $1,500,000 (the "***Expense Reimbursement***"); provided, however, that in certain circumstances as set forth in the Stalking Horse Agreement where the Breakup Fee is not due and owing, the amount of the Expense Reimbursement may be up to $12,000,000. The Breakup Fee and the Expense Reimbursement will be paid as, when and to the extent provided in the Stalking Horse Agreement, and as approved by the Bankruptcy Court in the bidding procedures order.

To facilitate the Auction and assist the Debtors and other interested parties in assessing the terms of each bid, those prospective bidders who are interested in bidding on the Bid Assets must utilize the Stalking Horse Agreement and the Schedules and Exhibits thereto to prepare their bids and mark all proposed changes to such agreement and schedules as part of their bid.

**Bid Deadline**

Any person or entity wanting to participate in the Auction, other than the Stalking Horse Bidder, must submit a Qualified Bid (as defined below) for the Bid Assets on or before **April 13, 2009 at 4:00 p.m. (Eastern Time)** (the "***Bid Deadline***") in writing to (i) Greenhill & Co., LLC, 300 Park Avenue, New York, NY 10022 (Attn: Dhiren Shah, Bradley A. Robins, and Birger Kuno Berendes), investment bankers and financial advisors to the Debtors, and (ii) Paul, Hastings, Janofsky & Walker LLP, Park Avenue Tower, 75 East 55th Street, First Floor, New York, New York 10022 (Attn: Luc Despins, Esq. and Leslie A. Plaskon, Esq.), attorneys to the Agent. The Debtors shall deliver to the Stalking Horse Bidder and to counsel for the Creditors' Committee, Bingham McCutchen LLP, 399 Parke Avenue, New York, NY 10022 (Attn: Jeffrey Sabin, Esq. and Neil Townsend, Esq.) copies of all bids submitted to them for the purchase of any of their assets, in each case substantially contemporaneously with the Debtors' receipt thereof.

**Qualified Bids**

To qualify as a "Qualified Bidder" with respect to bids on the Bid Assets, a bidder must submit a "Qualified Bid" (as described below) by the Bid Deadline and: (i) offer to purchase the Bid Assets and assume some or all of the Assumed Liabilities (as defined in the

Stalking Horse Agreement); (ii) provide a copy of the Qualified Bidder's proposed Asset Purchase Agreement and the Schedules and Exhibits thereto, which shall be modified by the Qualified Bidder from the form of the Stalking Horse Agreement only to the extent necessary to reflect proposed changes, together with a marked copy of the Stalking Horse Agreement and Schedules and Exhibits thereto reflecting such changes; (iii) must not subject its bid to any conditions less favorable to the Debtors than those provided for in the Stalking Horse Agreement; (iv) agree to not revoke its bid until the closing of a purchase of the Bid Assets by the Successful Bidder and agree to serve as a Backup Bidder (as defined below); (v) stipulate or otherwise provide evidence that such Qualified Bidder's submission, execution, delivery and closing of the marked up versions of the Stalking Horse Agreement and the Schedules and Exhibits thereto has been authorized and approved by the Qualified Bidder's board of directors (or comparable governing body); (vi) state that such Qualified Bidder is financially capable of consummating the transactions contemplated by the Stalking Horse Agreement, and otherwise provide such other information that will allow the Debtors and their advisors to make a reasonable determination as to the Qualified Bidder's ability to consummate the transactions contemplated by the Stalking Horse Agreement, including the Adequate Assurance Package (as defined below); (vii) not seek any transaction or breakup fee, expense reimbursement, or similar type of payment; and (viii) be accompanied by a Good Faith Deposit (as defined below).

    A Qualified Bid with respect to the Bid Assets is one that: (i) is a proposal determined by the Debtors, in the good faith opinion of its board of directors, as the case may be, after consultation with the Debtors' investment bankers and financial advisors, the Agent, and counsel to the Creditors' Committee not to be materially more burdensome or conditional than the terms of the Stalking Horse Agreement and one that has a value greater than or equal to the sum of (x) the value, as reasonably determined by the Debtors' financial advisor, of the Stalking Horse Agreement plus (y) Twelve Million Dollars ($12,000,000) (i.e., the sum of the Breakup Fee and the maximum amount (in certain circumstances) of the Expense Reimbursement) plus (z) at least Two Million Five Hundred Thousand Dollars ($2,500,000); and (ii) is accompanied by such Qualified Bidder's Good Faith Deposit (by means of a certified bank check from a U.S. bank or by wire transfer of immediately available funds).

    Overbids above the initial $2,500,000 bid increment will be at the Debtors' discretion.

    If no timely Qualified Bid is submitted, the Debtors shall not hold the Auction, and instead shall request at the Sale Approval Hearing that the Bankruptcy Court approve the sale of the Bid Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.

    All Qualified Bids will be considered but the Debtors reserve the right to reject any and all bids other than the highest or otherwise best bid.  Bids will be evaluated on numerous grounds.

    Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Bid Assets that are the subject of

the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Bid Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

**Good Faith Deposits**

In addition to all other provisions hereof, in order to become a Qualified Bidder, all Bidders will be required to submit a good faith deposit (the "***Good Faith Deposit***") with the Debtors on or before the Bid Deadline. Such Good Faith Deposits shall be equal to five percent (5%) of the Qualified Bidder's proposed purchase price and should be payable to an Escrow Agent to be designated by the Debtors. Good Faith Deposits of all Qualified Bidders shall be held in a separate interest-bearing account for the Debtors' benefit until consummation of a transaction involving any other bidder for the Bid Assets. If a Successful Bidder fails to consummate an approved sale of the Bid Assets because of a breach or failure to perform on the part of such Successful Bidder, such bidder's deposit will be held by the Debtor subject to a ruling by the Bankruptcy Court that the Debtor should be permitted to retain such deposit on account of any damages caused by such bidder's breach. All other deposits will be returned promptly after the closing of the sale of the Bid Assets to the Successful Bidder (or, in the case of Deloitte, in accordance with the terms of the Stalking Horse Agreement). Notwithstanding anything herein to the contrary, the terms under which Deloitte provided a Good Faith Deposit and the terms of its use, release and return to Deloitte shall be governed by the Stalking Horse Agreement.

**Due Diligence**

The Debtors may afford any potential bidder the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline.

The Debtors either have provided or intend to use reasonable efforts to provide to all parties that have either expressed an interest in purchasing the Bid Assets or who the Debtors believe may have a legitimate interest in purchasing the Bid Assets (each an "***Interested Party***" and, collectively, the "***Interested Parties***"), certain information in connection with the proposed Sale, including, among other things, these proposed Bidding Procedures and the Stalking Horse Agreement, but the failure to deliver any such information to any Interested Parties shall not affect the validity, effectiveness or finality of the Auction or this sale process. Should any Interested Party desire additional or further information, such Interested Party will be required to enter into a confidentiality agreement satisfactory to the Debtors in their business judgment. Upon execution of the confidentiality agreement, the Interested Party will be given access (through a virtual data room or otherwise the "***Data Room***") to various financial data and other relevant and confidential information, subject to the Debtors right to exclude such access for competitive concerns. The Debtors may also permit Interested Parties who have entered

confidentiality agreements satisfactory to the Debtors to have reasonable access to employees to discuss the terms of future employment, and no prior agreements between any such employees and the Stalking Horse Bidder shall prevent any such discussions; provided, however, that no employee shall enter into any agreement for future employment with an Interested Party prior to the closing of the Sale that would prevent such employee from engaging in discussions with other Interested Parties or accepting offers of employment from any Successful Bidder.

**The Auction**

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an Auction. The Auction will be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **April 15, 2009, commencing at 10:00 a.m. (prevailing Eastern Time)** to determine the highest or otherwise best bid with respect to the Bid Assets. Any bidder submitting a Qualified Bid may appear and submit its highest or best bid at the Auction. The Auction may be adjourned by announcement at the Auction without further notice.

**Auction Procedures**

By 5:00 p.m. on the day preceding the start of the Auction, the Debtors will give all Qualified Bidders a copy of what they believe to be the highest or otherwise best Qualified Bid and will inform each Qualified Bidder who has expressed its intent to participate in the Auction the identity of all Qualified Bidders that may participate in the Auction. Only Qualified Bidders are eligible to participate in the Auction. The following parties shall be permitted to attend the Auction: (i) the Creditors' Committee and their respective counsel and advisors;(ii) the Agent and its professionals; and (iii) the Prepetition Secured Lenders and their professionals. Bidding at the Auction shall begin initially with the highest or otherwise best bid announced by the Debtors, after consultation with the Agent and consultation with the Creditors' Committee, and shall subsequently continue in such minimum increments as the Debtors determine after consultation with the Agent and the Creditors' Committee.

Bidding will continue with respect to the Auction until the Debtors (after consultation with the Agent and consultation with the Creditors' Committee) determine that they have received the highest or otherwise best bid for the Bid Assets. Any subsequent bids by Deloitte will be credited with the full amount of the Breakup Fee and the Expense Reimbursement. After the Debtors so determine, the Auction will be closed. The bidding at the Auction will be transcribed by a court reporter. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusive behavior with respect to the bidding, the Auction or the Sale.

The Debtors, after consultation with the Agent (at the direction of the required Prepetition Secured Lenders) and the Creditors' Committee, will then determine and announce which Qualified Bid has been determined to be the highest or otherwise best bid. In determining which Qualified Bid is the Successful Bid, the Debtors will consider, at each stage of the Auction, the net economic effect upon the Debtors' estates after the payment of the Breakup Fee or Expense Reimbursement, if applicable; provided, however, that economic considerations shall

not be the sole criteria upon which the Debtors may base their decision and the Debtors shall take into account all factors they believe to be relevant in an exercise of their business judgment.

**Breakup Fee and Expense Reimbursement**

In the event that the Stalking Horse Agreement is terminated under the circumstances described in the Stalking Horse Agreement to the extent approved in the bidding procedures order, the Debtors shall promptly, and in any event within one (1) Business Day, pay the Stalking Horse Bidder the Breakup Fee and the Expense Reimbursement as, when and to the extent provided in the Stalking Horse Agreement as approved by the bidding procedures order.

The Debtors' obligation to pay the Breakup Fee and the Expense Reimbursement shall be the joint and several obligation of the Debtors, shall survive termination of the Stalking Horse Agreement, dismissal or conversion of any of the Bankruptcy Cases, and confirmation of any plan of reorganization or liquidation, and shall constitute an administrative expense of the Debtors under Sections 503(b) and 507(a) of the Bankruptcy Code.

**Adequate Assurance Package**

If any Qualified Bid other than the Stalking Horse Bid requires the assumption and assignment of Contracts, then such offeror must identify such Contracts to be assumed and assigned and provide evidence of its ability to provide adequate assurance of future performance of such Contracts along with the Qualified Bid (an "***Adequate Assurance Package***").

**Reservation Of Rights**

### a.    **Determination of Highest and Best Bid**

The Debtors reserve the right to: (i) determine in their reasonable discretion (after consultation with the Agent and the Creditors' Committee), which bid is the highest or best bid; and (ii) reject at any time prior to entry of a Court order approving an offer other than the Stalking Horse Bid, without liability, any offer that the Debtors in their reasonable discretion (after consultation with the Agent and the Creditors' Committee) deem to be (w) inadequate or insufficient, (x) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, (y) not a Qualified Bid, or (z) contrary to the best interests of the Debtors and their estates.

The selection of a Successful Bidder shall be within the reasonable business judgment of the Debtors (after consultation with the Agent (at the direction of the required Prepetition Secured Lenders) and the Creditors' Committee) and subject to the approval of the Bankruptcy Court. Economic considerations shall not be the sole criteria upon which the Debtors may base their decision. The presentation of a particular bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Approval Hearing. At or before the Sale Approval Hearing, the Debtors, after consultation with the Agent and the Creditors' Committee, may impose such other terms and conditions on the

Qualified Bidders, other than the Stalking Horse Bidder, as the Debtors may determine to be in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

### b.     Modification of Bidding Procedures

The Debtors, in consultation with the Agent and the Creditors' Committee, reserve the right to (i) extend the deadlines set forth in these Bidding Procedures and/or adjourn the Auction and/or the Sale Approval Hearing in open court without further notice, (ii) withdraw any asset(s) (the "*Withdrawn Assets*") from the Sale at any time prior to or during the Auction to make subsequent attempts to market the same, and to request separate hearing(s) by this Court to approve the sale(s) of some or all of the Withdrawn Assets, (iii) reject any or all bids if, in the Debtors' reasonable business judgment, no bid is for a fair and adequate price, and (iv) seek approval of any separate agreement to sell some or all of the Withdrawn Assets at the Sale Approval Hearing, and (v) modify the Auction and the Bidding Procedures set forth herein, as may be determined to be in the best interests of the Debtors' estates or creditors; provided however, that no such action by the Debtors pursuant to this paragraph shall effect the economic interests, timing or other benefits to Deloitte under the Stalking Horse Agreement. Any such modification shall be announced prior to the start of the Auction. The Auction, the Bidding Procedures and all bids are subject to such other terms and conditions as are announced by the Debtors during the course of the Auction.

### c.     Closing with Stalking Horse or Backup Bidder

If for any reason the entity or entities that submit(s) the highest or otherwise best bid(s) fails to consummate the purchase of the Bid Assets, or any part thereof, the offeror of the second highest or best bid will automatically be deemed to have submitted the highest or best bid (the "*Backup Bidder*") and to the extent the Debtors consent (after consultation with the Agent (at the direction of the required Prepetition Secured Lenders) and the Creditors' Committee), the Debtors and such offeror are authorized to effect the sale of the Bid Assets to such offeror(s) as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the winning offeror, the Debtors reserve the right to seek all available damages from the defaulting offeror, including, but not limited to, with respect to the Good Faith Deposit. To the extent the Stalking Horse Bidder has terminated the Stalking Horse Agreement as provided therein, the Stalking Horse Bidder shall not be obligated to be a Backup Bidder.

### d.     Debtors' Secured Creditors

Nothing in these Bid Procedures shall or shall be deemed to (i) amend or modify the Interim Cash Collateral Stipulation, or the rights and remedies of the parties therunder or under applicable bankruptcy law, or (ii) except for their consent to the Stalking Horse Agreement or a topping bid thereunder, constitute the consent of the secured lenders to any other sale or disposition of their respective collateral. All rights under section 363(k) of the Bankruptcy Code are preserved; provided, however, that (i) if the secured lenders exercise such rights, the Stalking Horse Bidders shall be entitled to the Breakup Fee and the Expense Reimbursement pursuant to the Stalking Horse Agreement as approved by the bidding procedures order, and (ii) the secured lenders shall not have the right to (x) assign any such rights, (y) transfer or otherwise assign any interest in or any economic benefit from any such

rights to any person or entity, or (z) exercise any such rights in connection with or in anticipation of any transfer, disposal or other assignment of any of the Bid Assets or any interest therein.

**Sale Approval Hearing**

The Sale Approval Hearing will be held on **April 17, 2009 at 9:00 a.m**. at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, before the Honorable Robert E. Gerber, United States Bankruptcy Judge. The Sale Approval Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

Dated: April 3, 2009