**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                                  :
In re                                             :   Chapter 11
                                                  :
Chrysler LLC, et al.,                             :   Case No. 09-50002 (AJG)
                                                  :
              Debtors.                            :   (Jointly Administered)
-----------------------------------------------------------------x
```

### ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006, (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO PROVIDE CERTAIN BID PROTECTIONS, (C) SCHEDULING A FINAL HEARING APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF

This matter coming before the Court on the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 2002-1, 6004-1, 6006-1 and 9006-1(b) of the Local Rules for the United States Bankruptcy Court of the Southern District of New York (the "Local Bankruptcy Rules"), entry of (i) an order (a) approving bidding procedures attached hereto as Exhibit A (the "Bidding Procedures") for the sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined below), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other

---

[1] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion and all Exhibits thereto.

vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "CarCo Business"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "Purchased Assets") to the Purchaser (as defined below) and (b) scheduling a final hearing on the sale of the Purchased Assets and the approval of the UAW Retiree Settlement Agreement (the "Sale Hearing") and approving the form and manner of notice thereof; and (ii) after the Sale Hearing, an order (the "Sale Order") (a) authorizing the sale of the Purchased Assets, free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under any Assumed Agreement and all rights at law or in equity, excluding any Designated Agreement, all as more specifically set forth and defined in the Sale Motion and the proposed order approving the Sale Transaction (as so defined therein, "Claims") to the Successful Bidder (as such term is defined in the Bidding Procedures), (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases constituting part of the Purchased Assets and related procedures and (c) granting certain related relief, including approval of the UAW Retiree Settlement Agreement; the Court having conducted a hearing on the Motion on May 1, 4 and 5, 2009 (the "Bidding

Procedures Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Bidding Procedures attached to hereto as <u>Exhibit A</u>, (iii) all objections to the Bidding Procedures, (iv) the Affidavit of Ronald L. Kolka filed in support of the Debtors' first day papers (Docket No. 23), (v) the Declaration of Scott R. Garberding (Docket No. 49), (vi) the Declaration of Peter Grady (Docket No. 50), (vii) the Declaration of Frank Ewasyshyn (Docket No. 48), (viii) the Declaration of Robert Manzo (Docket No. 52), (ix) the Declaration of Tom W. LaSorda (Docket No. 51), (x) the Declaration of Bradley A. Robbins (Docket No. 173), (xi) the Declaration of James J. Arrigo (Docket No. 53), (xii) the Declaration of John Schendon (Docket No. 54), (xiii) the Supplemental Declaration of Robert Manzo (Docket No. 197) (xiv) the testimony provided at the Bidding Procedures Hearing by the aforementioned Declarants and Affiant, (xv) the Sale Notice attached hereto as <u>Exhibit B</u>, (xvi) the Publication Notice attached hereto as <u>Exhibit C</u>, (xvii) the Assignment Notice attached hereto as <u>Exhibit D</u>, (xviii) the UAW Retiree Notices attached hereto as <u>Exhibit E</u> and (ix) the arguments of counsel made, and the evidence proffered or adduced, at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtors' bankruptcy estates, their creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing;

        IT IS HEREBY FOUND AND DETERMINED THAT:

        A.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

        B.    As of the Petition Date, the CarCo Business has been idled and the Debtors have advised the Court that they believe they lack the financing and liquidity to reopen

and restart the CarCo Business for the production of 2010 vehicles unless a sale is consummated. The Sale Transaction is a multi-party arrangement that provides the financial wherewithal and the technical expertise to implement accelerated changes in the Debtors' production platform so as to reopen their domestic manufacturing facilities and domestic assembly plants in time to permit the production of 2010 vehicles.

    C.  The Debtors have articulated good and sufficient reasons for, and the best interests of their estates, creditors, employees, retirees and other parties in interest and stakeholders will be served by, this Court granting certain of the relief requested in the Motion relating to that certain Master Transaction Agreement, dated as of April 30, 2009 (the "Purchase Agreement"),[2] between and among Fiat S.p.A ("Fiat"), New CarCo Acquisition LLC (the "Purchaser"), a Delaware limited liability formed by Fiat, and Chrysler LLC and its Debtor subsidiaries, which, together with certain ancillary agreements, contemplates a set of related transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets to the Purchaser and, in connection therewith, approval of the UAW Retiree Settlement Agreement, including approval of: (1) the Bidding Procedures, including the minimum overbid amount of $100 million; (2) the procedures described below (the "Contract Procedures") for the determination of the amounts necessary to cure defaults under the Designated Agreements (the "Cure Costs") and to address any other disputes in connection with the assumption and assignment of the Designated Agreements pursuant to section 365 of the Bankruptcy Code; (3) the Breakup Fee described below and (4) the form, timing and manner of notice of the proposed sale, the Bidding Procedures, the Contract Procedures and the other matters described

---

[2] A copy of the Purchase Agreement, without its voluminous exhibits and schedules, is attached as Exhibit A to the Motion.

herein, including the form of notice of the proposed sale attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>"), the form of publication notice of the sale attached hereto as <u>Exhibit C</u> (the "<u>Publication Notice</u>"), the form of notice of the proposed assumption and assignment of the Designated Agreements attached hereto as <u>Exhibit D</u> (the "<u>Assignment Notice</u>") and the form of (i) special notice to Debtors' retirees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "<u>UAW</u>") and (ii) Cover Letter to UAW-Represented Retirees (as defined below) describing the proposed sale and the UAW Retiree Settlement Agreement, attached hereto collectively as <u>Exhibit E</u> (collectively, the "<u>UAW Retiree Notices</u>").

D.     Under the Purchase Agreement, Fiat is entitled to a fee in the amount of $35 million solely in the event that a bidder other than the Purchaser is selected as the Successful Bidder (as defined in the Bidding Procedures) for the Purchased Assets (the "<u>Breakup Fee</u>"). Other than the payment of the Breakup Fee, Fiat is not entitled to any other fees, expenses or compensation in the event that a bidder other than the Purchaser is selected as the Successful Bidder in the auction process described below.  The payment of the Breakup Fee, as set forth herein, is an essential inducement and condition relating to the Purchaser's and Fiat's entry into, and continuing obligations under, the Purchase Agreement.  The Breakup Fee (1) if triggered, shall be deemed to be an actual and necessary cost and expense of preserving these estates; (2) is reasonable and appropriate in light of the size and nature of the proposed transaction, the necessity to quickly consummate a sale for the Debtors and the considerable efforts and resources that have been and will be expended by the Purchaser pending the Sale Hearing; (3) has been negotiated by the parties and their respective advisors at arms' length and in good faith; and (4) is necessary to ensure that the Purchaser and Fiat will continue to pursue the

NYI-4173504v29                                              -5-

closing of the Sale. The Breakup Fee represents less than 1.75% of the cash portion of the purchase price to be paid by the Purchaser, is comparable to similar fees authorized in comparable transactions in this District, represents approximately 35% of the minimum excess value that would be realized by the Debtors' estates from a qualifying overbid under the Bidding Procedures and is commensurate to the benefit conferred by the Purchaser and Fiat upon the estates.

E. The Purchaser and the Debtors are relying on their mutual performance of their obligations set forth in Articles V, VI and VII of the Purchase Agreement, subject for the avoidance of doubt to the Debtors' right under Section 5.18 of the Purchase Agreement, to the extent these obligations relate to the period prior to the termination of the Purchase Agreement or the Closing Date (as defined in the Purchase Agreement and hereafter the "Closing Date"), whichever shall first occur. The Purchaser and the Debtors have entered into the Purchase Agreement expecting all parties to perform these obligations to provide the each other with reasonable assurances that they will be in the position to consummate the transactions contemplated by the Purchase Agreement in the event that the Purchaser is selected as the Successful Bidder.

F. Under the circumstances, and particularly in light of the extensive prior marketing of the Purchased Assets, the Bidding Procedures constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit and pursue higher and better offers for all or substantially all of the Purchased Assets.

G. The Purchased Assets are "wasting assets" that will not retain going concern value over an extended period of time. Given the wasting nature of the Purchased Assets, the Debtors' estates will suffer immediate and irreparable harm if the relief requested in

the Motion is not granted on an expedited basis consistent with the provisions set forth herein and the Purchase Agreement.

        H.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, this Court scheduling a Sale Hearing on an expedited basis to consider granting the remaining relief requested in the Motion, including approval of the Sale Transaction and the transfer of the Purchased Assets to the Purchaser (or another Successful Bidder) free and clear of all Claims, pursuant to section 363(f) of the Bankruptcy Code.

        I.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures, the Sale Hearing, the structure of the Sale Transaction and related implications on interested parties, including, without limitation, creditors, customers, suppliers and current and former employees.

        J.      The Assignment Notice is reasonably calculated to provide all counterparties to the Designated Agreements with proper notice of the potential assumption and assignment of their executory contracts or unexpired leases, any Cure Costs relating thereto and the Contract Procedures.

        K.      Publication of the Publication Notice as set forth herein is reasonably calculated to provide all potential warranty claimants and all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures and the Sale Hearing.

        L.      The UAW Retiree Notices are reasonably calculated to provide the Debtors' retirees and surviving spouses represented by the UAW, including members of

the "Class" as defined in the UAW Retiree Settlement Agreement (collectively, the "<u>UAW-Represented Retirees</u>") proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures, the Sale Hearing, the structure of the Sale Transaction, including, but not limited to, (1) the sale of the Purchased Assets free and clear of any interest the UAW or UAW-Represented Retirees may have in such Purchased Assets, (2) the UAW CBA Assignment and (3) the UAW Retiree Settlement Agreement.

M. The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines for the Conduct of Asset Sales adopted by this Court pursuant to General Order M-331.

N. The Sale Transaction includes the transfer of "Personally Identifiable Information" (as defined in section 101(41A) of the Bankruptcy Code). The transfer of Personally Identifiable Information shall not be effective until a Consumer Privacy Ombudsman is appointed, issues its findings and the Court has an opportunity to review the findings and issue any rulings that are appropriate.

O. Due, sufficient and adequate notice of the relief granted herein has been given to parties in interest.

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED to the extent set forth herein.

2. All objections to the relief requested in this Motion that have not been withdrawn, waived or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court or the terms of this Order, are overruled except as otherwise set forth herein.

3. The Bidding Procedures, which are attached hereto as <u>Exhibit A</u> and incorporated herein by reference, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Purchased Assets.

4. The failure specifically to include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5. Any person wishing to submit a higher or better offer for the Purchased Assets, or any portion thereof, must do so in accordance with the terms of the Bidding Procedures.

6. The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be May 20, 2009 for all Potential Bidders (the "<u>Bidding Deadline</u>"), as further described in the Bidding Procedures.

7. The deadline for objecting to the approval of the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), including the sale of the Purchased Assets free and clear of all Claims pursuant to section 363(f) of the Bankruptcy Code and approval of the UAW Retiree Settlement Agreement shall be May 19, 2009 at 4:00 p.m. (Eastern Time) (the "<u>Objection Deadline</u>") for all parties in interest, including, but not limited to the Debtors' prepetition senior secured lenders (the "<u>Senior Secured Lenders</u>"), the UAW and the official committee of unsecured creditors appointed in these cases (the "<u>Creditors' Committee</u>"); <u>provided</u>, <u>however</u>, that if a determination is made at the Sale Hearing that the Successful Bidder (as such term is

defined in the Bidding Procedures) is a bidder other than the Purchaser, parties in interest may object solely to such determination at the Sale Hearing.

8. The Purchaser shall constitute a Qualified Bidder (as defined in the Bidding Procedures) for all purposes and in all respects with regard to the Bidding Procedures.

9. As further described in the Bidding Procedures, if more than one Qualified Bid is timely received, a Court-supervised auction may be conducted at the outset of the Sale Hearing to determine the Successful Bidder.

10. The Court shall conduct the Sale Hearing on May 27, 2009 at 10:00 a.m. (Eastern Time) at which time the Court will consider approval of the Sale Transaction to the Successful Bidder and approval of the UAW Retiree Settlement Agreement. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing; provided, however, that the Sale Hearing shall not be deemed to have been held until it is substantially complete.

11. The Debtors are hereby authorized to conduct the Sale Transaction (or other similar transaction, if the Successful Bidder is a party other than the Purchaser) without the necessity of complying with any state or local bulk transfer laws or requirements.

12. The Sale Notice, the Publication Notice and the UAW Retiree Notices, substantially in the forms of Exhibit B, Exhibit C and Exhibit E to this Order, are hereby approved.

13. The manner of notice of the proposed sale, the Bidding Procedures and the Sale Hearing and approval of the UAW Retiree Settlement Agreement at such Sale Hearing as set forth in this paragraph 13 are approved in all respects. In particular, no other or further notice

of the proposed sale, the Bidding Procedures, the Sale Hearing and approval of the UAW Retiree Settlement Agreement at such Sale Hearing shall be required except as follows:

(a) within two business days after entry of this Order (the "Mailing Deadline"), the Debtors shall serve the Sale Notice by first-class mail, postage prepaid upon: (i) counsel to the U.S. Treasury; (ii) counsel to the UAW; (iii) counsel to the Purchaser; (iv) counsel to the administrative agent for the Senior Secured Lenders; (v) any party that, in the past year, expressed in writing to the Debtors an interest in acquiring the Purchased Assets, directly or through a merger or alliance; (vi) non-Debtor counterparties to all Designated Agreements; (vii) all parties who are known to assert Claims upon the Assets; (viii) the Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) all applicable state attorneys general, local environmental enforcement agencies and local regulatory authorities; (xi) all applicable state and local taxing authorities; (xii) the U.S. Trustee; (xiii) Federal Trade Commission; (xiv) United States Attorney General/Antitrust Division of Department of Justice; (xv) the U.S. Environmental Protection Agency and similar state agencies; (xvi) United States Attorney's Office; (xvii) the entities set forth in the Special Service List and the General Service List established in these cases; (xviii) counsel to Cerberus; (xix) counsel to Daimler; (xx) counsel to Export Development Canada; (xxi) all entities that have requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and (xxii) any other party identified on the creditor matrix in these cases.

(b) On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall submit the Publication Notice to be published one time in the national edition of *USA Today*, *The Wall Street Journal* and *The New York Times*, as well as the Worldwide Edition of *The Financial Times*.

(c) On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Publication Notice to be published on the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at http://www.chryslerrestructuring.com.

(d) On the Mailing Deadline, the Debtors shall serve the UAW Retiree Notices on all UAW-Represented Retirees by first-class mail, postage prepaid. In addition, on the Mailing Date, or as soon as practicable thereafter, the Debtors shall cause this Order, the Sale Motion, the Purchase Agreement, the UAW Retiree Settlement Agreement (including its exhibits) and that certain Equity Recapture Agreement executed in connection with the UAW Retiree Settlement Agreement to be posted on the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at http://www.chryslerrestructuring.com (together with the mailing of the UAW Retiree Notices as set forth in this subparagraph, "Notice to UAW-Represented Retirees").

14. The manner of notice of the proposed sale, the Bidding Procedures, the Sale Hearing and approval of the UAW Retiree Settlement Agreement, including the Notice to

NYI-4173504v29                           -11-

UAW-Represented Retirees is approved in all respects. In particular, no other or further notice of the proposed sale, the Bidding Procedures, the Sale Hearing or approval of the UAW Retiree Settlement Agreement shall be required other than effectuating the Notice to UAW-Represented Retirees approved herein.

15. To be considered, any objection to the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), including any objection to approval of the UAW Retiree Settlement Agreement, must (a) comply with the Bankruptcy Rules and the Local Bankruptcy Rules and (b) be made in writing and filed with this Court and served upon the following parties (collectively, the "Notice Parties") so as to be received by the Objection Deadline: (i) the Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan 48326-2766 (Attn: Holly E. Leese, Esq.); (ii) Jones Day, counsel to the Debtors, 222 East 41st Street, New York, New York 10017 (Attn: Corinne Ball, Esq. and Nathan Lebioda, Esq.) and 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.); (iii) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663 (Attn: Robert Manzo); (iv) Kramer Levin Naftalis & Frankel LLP, counsel to the Creditors' Committee, 1177 Avenue of the Americas New York, New York 10036 (Attn: Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (v) Simpson Thacher & Bartlett LLP, counsel to the administrative agent for the Senior Secured Lenders, 425 Lexington Avenue, New York, New York 10017 (Attn: Peter Pantaleo, Esq. and David Eisenberg, Esq.); (vi) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian S. Masumoto, Esq.); (vii) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312 Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (viii) United States Attorney's Office,

Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New York, New York 10281 (Attn:  John J. Rapisardi, Esq.); (ix) Vedder Price, P.C., counsel to Export Development Canada, 1633 Broadway, 47th Floor New York, New York 10019 (Attn:  Michael J. Edelman, Esq.); (x) the Purchaser and Fiat, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino, Italy (Attn:  Chief Executive Officer); (xi) Sullivan & Cromwell LLP, counsel to the Purchaser and Fiat, 125 Broad Street, New York, New York 10004 (Attn:  Scott D. Miller, Esq. and Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067 (Attn:  Hydee R. Feldstein, Esq.); (xii) International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn:  Daniel Sherrick, Esq.); (xiii) Cleary Gottlieb Steen & Hamilton LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn:  James L. Bromley, Esq.); (xiv) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St., New York, New York 10036 (Attn:  Babette Ceccotti, Esq.); (xv) Togut, Segal & Segal, LLP, conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn:  Albert Togut, Esq.); and (xvi) counsel to any other statutory committees appointed in these cases.

16. The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the sale of the Purchased Assets contemplated by the Purchase Agreement or a Marked Agreement (as defined in the Bidding Procedures), if any (including the transfer free and clear of all Claims of each of the Purchased Assets transferred as part of the Sale Transaction) or to the approval of the UAW Retiree Settlement Agreement.

17. The Minimum Overbid Purchase Price and Breakup Fee as set forth in the Purchase Agreement are hereby approved. If Fiat or the Purchaser becomes entitled to receive the Breakup Fee in accordance with the terms of the Purchase Agreement, (a) the Debtors' obligation to pay the Breakup Fee under the Purchase Agreement shall be a joint and several obligation of the Debtors and shall survive termination of the Purchase Agreement; (b) Fiat or the Purchaser (as applicable) shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the Breakup Fee, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code and have priority over and be senior to all other claims against the Debtors to the extent of the proceeds realized from the sale of the Purchased Assets to a Successful Bidder other than the Purchaser; (c) such Breakup Fee shall be payable immediately on the third business day following entry of an order approving a Successful Bidder other than the Purchaser or Fiat on the conditions and in accordance with the terms of the Purchase Agreement; and (d) the Debtors are authorized and directed to pay the Breakup Fee to Fiat immediately upon its becoming due without further order of this Court.

18. Other than Fiat's right to the Breakup Fee, no person or entity, shall be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment in connection with the Bidding Procedures.

19. The following procedures (the "<u>Contract Procedures</u>") shall govern the assumption and assignment of Designated Agreements in connection with the sale of the Purchased Assets to the Purchaser:[3]

---

[3] If a party other than the Purchaser is the Successful Bidder, or if a transaction other than the Sale Transaction is consummated for the sale of a substantial portion of the Debtors' operating assets, then these Contract Procedures may be modified if necessary by further order of this Court.

(a) <u>Initial Contract Designations</u>.  Not fewer than 13 days prior to the Sale Hearing, the Debtors shall file with this Court and shall serve on each non-debtor counterparty to an executory contract or unexpired lease with any of the Debtors (each, a "<u>Non-Debtor Counterparty</u>") that the Debtors may assume and assign to the Purchaser (the "<u>Initial Designated Agreements</u>"), by overnight delivery service, a notice of assumption and assignment of executory contracts and unexpired leases in substantially the form of the Assignment Notice attached hereto as <u>Exhibit D</u>.  The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Initial Designated Agreements and the corresponding Cure Costs under the Initial Designated Agreements as of April 30, 2009; <u>provided</u> <u>that</u> such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after April 30, 2009.  In addition, the Debtors shall serve a copy of the Assignment Notice on a Non-Debtor Counterparty's counsel of record in these chapter 11 cases as of the date of the Assignment Notice ("<u>Counsel of Record</u>").

(b) <u>Information in Assignment Notice</u>.  For each Designated Agreement, on the Assignment Notice, the Debtors shall either (i) indicate the proposed Cure Costs relating to such Designated Agreement or (ii) provide an amount representing the proposed Cure Costs for multiple Designated Agreements with the same Non-Debtor Counterparty, subject, upon request, to providing greater detail to a Non-Debtor Counterparty to identify on a contract-by-contract basis the proposed applicable Cure Costs to the extent reasonably available.  On an Assignment Notice, Designated Agreements may be listed individually or in groups of agreements with the Non-Debtor Counterparty, as long as the Non-Debtor Counterparty is provided with sufficient information to identify the contracts to be assumed.  The Assignment Notice also may identify any additional proposed terms or conditions of assumption and assignment.

(c) <u>Additional Contract Designations</u>.  In accordance with Section 2.10 of the Purchase Agreement, the Debtors may, at the Purchaser's request or with the Purchaser's consent, designate, up to the Agreement Designation Deadline, additional executory contracts and unexpired leases as agreements to be assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement (the "<u>Additional Designated Agreements</u>" and, together with the Initial Designated Agreements, the "<u>Designated Agreements</u>").  As used herein the "<u>Agreement Designation Deadline</u>" means, as applicable, (i) 30 days after the Closing Date with respect to the Dealer Agreements (as defined below), (ii) 60 days after the Closing Date for executory contracts and unexpired leases with the Debtors' production suppliers and (iii) 90 days after the Closing Date for all other agreements.  Upon determining that a specific executory contract or unexpired lease, or a group thereof, are Additional Designated Agreements, the Debtors, at the Purchaser's request, shall serve an Assignment Notice on each of the Non-Debtor Counterparties to such Additional Designated Agreements and their Counsel of Record, indicating (i) that the notice recipient is a Non-Debtor Counterparty to one or more executory contracts or unexpired leases with the Debtors that the Debtors intend to assume and assign to the Purchaser and (ii) the corresponding Cure Cost under the Additional Designated Agreements as of April 30, 2009; <u>provided</u> <u>that</u> such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after April 30, 2009.

NYI-4173504v29            -15-

(d)  Purchaser Confirmation Notice.  Prior to the Closing Date and no later than June 12, 2009 (the "Pre-Closing Deadline"), the Purchaser shall serve on all applicable Non-Debtor Counterparties a notice indicating those Designated Agreements with respect to which the Purchaser has made a final determination to take assignment of a Designated Agreement (a "Confirmation Notice"), subject only to Cure Costs not being established in an amount greater than the amounts in the Assignment Notice unless otherwise agreed upon in writing by the Purchaser.  Designated Agreements listed on a Confirmation Notice are referred to as "Confirmed Agreements."  The Purchaser may serve additional Confirmation Notices at any time through the Agreement Designation Deadline.  Until a Designated Agreement is listed on a Confirmation Notice, it shall not be considered to be either assumed or assigned and shall remain subject to assumption, rejection or redesignation hereunder.

(e)  UAW and GMAC Agreements.  Contingent upon the approval of the sale of the Purchased Assets to the Purchaser and concurrently with the consummation of the sale of the Purchased Assets (without prejudice to the conditions thereto set forth in the Purchase Agreement), (i) each of the UAW CBA Assignment and the GMAC MAFA Documents (as such term is defined in the Bidding Procedures attached hereto as Exhibit A) shall be deemed to be Confirmed Agreements as to which no Assignment Notice or Confirmation Notice shall be sent, (ii) the Debtors shall assign to Purchaser, and Purchaser shall be deemed to have assumed, each such agreement as of the Closing Date, and each non-Debtor party to each such agreement shall be deemed to have consented to such assumption and assignment and (iii) the Court order approving such sale shall reflect such assumption and assignment.

(f)  Direct Dealer Agreements.  Certain executory dealer agreements will be identified as Designated Agreements to be assumed and assigned.  Although most U.S. dealers have entered into standard uniform dealership agreements in the form of the Chrysler Corporation Sales and Service Agreement (the "Sales and Service Agreement"), some dealers are party to older agreements in the form of the Chrysler Direct Dealer Agreement (each, a "Direct Dealer Agreement").  If a Direct Dealer Agreement is identified as a Designated Agreement pursuant to the procedures above, then such Direct Dealer Agreement will only be assumed and assigned to the Purchaser if the counterparty to the Direct Dealer Agreement first agrees to modify such Direct Dealer Agreement and restate it in the form of the Sales and Service Agreement (each such modified Direct Dealer Agreement and Sales and Service Agreement, a "Dealer Agreement").  If the counterparty and the Debtors do not so modify and restate such Direct Dealer Agreement in the form of the Sales and Service Agreement, then notwithstanding any other provisions of these Contract Procedures, such Direct Dealer Agreement will not be assumed and assigned pursuant to these Contract Procedures.

(g)  Section 365 Objections.  Objections, if any ("Section 365 Objections"), to the proposed Cure Costs, or to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code, must be in

NYI-4173504v29                                -16-

writing and filed with this Court and served on the Notice Parties so as to be received no later than ten days after service of an Assignment Notice (the "Section 365 Objection Deadline").  Where a Non-Debtor Counterparty to a Designated Agreement files a Section 365 Objection meeting the requirements of this subparagraph (g), objecting to the assumption by the Debtors and assignment to the Purchaser of such Designated Agreement (the "Disputed Designation") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors, the Purchaser and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.

(h)    Section 365 Hearing.  If any of the Debtors, the Non-Debtor Counterparty or the Purchaser determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Court at an omnibus hearing established for such purpose that is on a date not less than ten days after the service of such objection or such other date as determined by the Court (a "Section 365 Hearing"), unless the Debtors, the Purchaser and the Non-Debtor Counterparty to the Designated Agreement in dispute agree otherwise.  Unless otherwise agreed by the parties, the Section 365 Hearing to consider objections relating to the Initial Designated Agreements shall be conducted on June 4, 2009 at 10:00 a.m., Eastern Time.  If the Court determines at a Section 365 Hearing that the Designated Agreement cannot be assumed and assigned, or establishes Cure Costs that the Purchaser is not willing to pay, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement.

(i)    Consent to Assumption and Assignment.  Any Non-Debtor Counterparty to a Designated Agreement who fails to file timely Section 365 Objection to the proposed Cure Costs or the proposed assumption and assignment of a Designated Agreement by the Section 365 Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreement, and such party shall be forever barred from objecting to the Cure Costs or such assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Purchaser.

(j)    Resolution of Assumption/Assignment Issues.  If the Non-Debtor Counterparty to a Designated Agreement fails to timely assert a Section 365 Objection as described in subparagraph (g) above, or upon the resolution of any timely Section 365 Objection by agreement of the parties or order of the Court approving an assumption and assignment, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the Purchaser and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects, subject to the conditions set forth in subparagraph (k) below.

(k)    Conditions on Assumption and Assignment.  The Debtors' decision to assume and assign the Designated Agreements is subject to Court approval and consummation of the Sale Transaction.  Accordingly, subject to the satisfaction of conditions in subparagraph (j) above to address any cure or assignment disputes, the

Debtors shall be deemed to have assumed and assigned to the Purchaser each of the Designated Agreements as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.  Assumption and assignment of the Designated Agreements also is subject to the Purchaser's rights set forth in subparagraphs (c) and (d) above.  The Purchaser shall have no rights in and to a particular Designated Agreement until such time as the particular Designated Agreement has been identified by the Purchaser as a Confirmed Agreement and is assumed and assigned in accordance with the procedures set forth herein.  Once assumed and assigned as a Confirmed Agreement under these Contract Procedures, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

(l)     Pre-Closing Assurance Letters.  From and after the Pre-Closing Deadline through the Closing Date, with respect to any Designated Agreement not listed in a Confirmation Notice that is a production supply contract or a dealer contract with respect to which the Non-Debtor Counterparty has determined that it must incur costs after the Pre-Closing Deadline to remain in a position to perform in accordance with the Designated Agreement upon assumption by the Purchaser, the Non-Debtor Counterparty may send a letter to the Debtors and to the Purchaser describing such additional costs under such agreement and seeking assurance of the Purchaser's intentions with respect to such agreement (an "Assurance Letter").  In response to an Assurance Letter, the Purchaser may either (i) provide a Confirmation Notice to the Non-Debtor Counterparty; (ii) elect not to deliver a Confirmation Notice at such time but to provide the Non-Debtor Counterparty with assurances that the Purchaser will advance the costs of any ongoing performance by the Non-Debtor Counterparty pending a final determination to assume the underlying Designated Agreement (such advances to be reflected by an appropriate credit against future payments to the Non-Debtor Counterparty under the Designated Agreement only in the event that such Designated Agreement becomes a Confirmed Agreement); or (iii) elect not to deliver a Confirmation Notice at such time but to agree in writing that the Non-Debtor Counterparty may temporarily suspend performance during this period without penalty (and, if applicable, upon assumption and assignment to the Purchaser, toll or delay subsequent deliveries as may be reasonably required to reflect the suspension of performance during such period).  If no response to an Assurance Letter is received within five business days, the Non-Debtor Counterparty may temporarily suspend performance of the agreement pursuant to clause (iii) above.  Any disputes relating to the foregoing shall be heard by the Bankruptcy Court.  For purposes of this paragraph, the Debtors and the Purchaser shall be contacted at the addresses identified in paragraph 15 above.

(m)     Post-Closing Assurances.  From and after the Closing Date through the applicable Agreement Designation Deadline, Non-Debtor Counterparties may serve a written request on the Debtors and the Purchaser for a final determination of the assumption or rejection of its executory contracts and unexpired leases.  Absent a favorable response within ten days, the Non-Debtor Counterparty may file a motion to compel assumption or rejection of such agreement, which may be heard on ten days' notice, subject to the Court's availability; provided, however, that in the event that  a

Non-Debtor Counterparty believes that it requires a more expeditious decision regarding assumption or rejection of its executory contract or unexpired lease, such Non-Debtor Counterparty shall be free to seek expedited relief from the Court, without regard to the ten-day periods referenced herein but subject to the legal standards and requirements applicable to requests for expedited consideration, provided further that in such event the counterparty shall give as much advance notice as reasonably practicable under the circumstances to the Debtors and the Purchaser. For purposes of this paragraph, the Debtors and the Purchaser shall be contacted at the addresses identified in paragraph 15 above.

(n)    Cure Payments. Except as may otherwise be agreed to by the parties to a Designated Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Purchaser shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the Closing Date, (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance with subparagraph (k) of these Contract Procedures or (iii) with respect to Dispute Cure Costs, the date the amount thereof is finally determined.

(o)    Rights Pending Assumption or Rejection. Nothing in these Contract Procedures limits, restricts or expands the rights of parties to executory contracts and unexpired leases pending assumption or rejection, including any rights to seek further relief from the Bankruptcy Court (including motions to compel a prompt final decision on assumption or rejection), or the rights of other parties in response to such requests.

(p)    Filing of Final List of Confirmed Agreements. As soon as reasonably practicable after the Agreement Designation Deadline, the Debtors shall file with the Court a final schedule indicating all Confirmed Agreements and the proposed Cure Costs relating to each Confirmed Agreement scheduled therein.

20.    Subject to the Debtors' rights under Section 5.18 of the Purchase Agreement, the Debtors are authorized to and directed to comply with their obligations and undertakings in Articles V, VI and VII of the Purchase Agreement until the earlier of the termination of the Purchase Agreement or the Closing Date. Furthermore, except with respect to the requirement pursuant to this Order that the Purchaser assume all GMAC MAFA Documents (as such term is defined in the Bidding Procedures attached hereto as Exhibit A) upon consummation of the sale of the Purchased Assets, nothing in this Order alters or amends the terms and conditions of, or the rights and obligations of the non-Debtor parties to, the Purchase Agreement, provided that all contracts that have not become Confirmed Contracts as of the

NYI-4173504v29                                -19-

Closing Date shall constitute "Excluded Contracts" for purposes of the Purchase Agreement (without any requirement to update the Company Disclosure Letter) until such time, if any, as such contracts subsequently have become Confirmed Contracts in accordance herewith.

21. The U.S. Trustee is directed to appoint a Consumer Privacy Ombudsman pursuant to sections 332 and 363(b)(1) of the Bankruptcy Code as soon as practicable.

22. Unless expressly set forth herein all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24. The Debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established and relief granted in this Order.

25. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York
       May 7, 2009

                                        s/Arthur J. Gonzalez
                                        UNITED STATES BANKRUPTCY JUDGE