Robert B. Weiss
Donald F. Baty, Jr.
Tricia A. Sherick
**HONIGMAN MILLER SCHWARTZ
AND COHN LLP**
660 Woodward Avenue
2290 First National Building
Detroit MI  48226
Telephone: (313) 465-7000
Fascimile:  (313) 465-8000

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                :

**In re**                                  :         **Chapter 11 Case No.**

**GENERAL MOTORS CORP.,** *et al.***,**     :         **09-_____ (___)**

            **Debtors.**               :         **(Jointly Administered)**

------------------------------------------------------------x

**MOTION BY DEBTORS
FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. § 365 AUTHORIZING THE REJECTION OF AIRCRAFT
AND AIRPORT LEASE AGREEMENTS AND FOR RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        General Motors Corporation ("GM") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully represent:

**Background**

        1.        On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.

2. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### General Motors' Businesses

3. For over one hundred years, GM, together with its approximately 463 direct and indirect wholly-owned subsidiaries (collectively, "General Motors" or the "Company"), has been a major component of the U.S. manufacturing and industrial base, as well as the market leader in the automotive industry. The Company's brands have been the standard bearer in the development of the American automotive industry, having produced some of the most striking and memorable automotive designs, including: Corvette, Riviera, and Eldorado. Over many years, the Company has supplied one in five vehicles sold in the United States. It is the largest original equipment manufacturer ("OEM") in the country and the second largest in the world.

4. As of March 31, 2009, General Motors employed approximately 235,000 employees worldwide, of whom 163,000 (69%) were hourly employees and 72,000 (31%) were salaried employees. In the United States, approximately 62,000 (68%) of U.S. employees were represented by unions. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") represents the largest portion of General Motors' U.S. unionized employees (totaling approximately 61,000 employees).

5. As of March 31, 2009, General Motors had consolidated global recorded assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively. Global revenues recorded for fiscal year 2008 aggregated approximately $150 billion.

## Jurisdiction

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7. The Debtors request entry of an order pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 authorizing: (i) the rejection of aircraft leases and an airport hangar lease more fully described below (collectively, the "Leases") with such rejection to be effective as of the later of (a) the date of this Motion and (b) the date on which possession of the leased aircrafts has been surrendered to the relevant lessor; (ii) AVN Air, LLC ("AVN"), as lessor, to provisionally apply certain security deposits (the "Security Deposits") held for the Leases; and (iii) the Debtors to execute certain documents necessary and desirable to reflect such rejection in the records of the Federal Aviation Administration (the "FAA").

## Facts Relevant to This Motion

8. Prior to the Commencement Date, GM was party to two aircraft lease agreements by and between Suntrust Corporation ("Suntrust") and GM (the "Suntrust Leases"). Copies of the Suntrust Leases are attached hereto as Exhibit A and Exhibit B, respectively. The Suntrust Leases are as follows:

(a) Aircraft Lease Agreement (N5101), dated as of September 27, 2001, pursuant to which GM leased a 1998 Gulfstream Aerospace G-V aircraft, consisting of the

following components: (i) an airframe bearing U.S. Registration Mark N5101 and manufacturer's serial number 550 and (ii) two BMW Rolls Royce model BR710 A1-10 engines bearing manufacturer's serial numbers 11211 and 11212.

(b)    Aircraft Lease Agreement (N5102), dated as of September 27, 2001, pursuant to which GM leased a 1998 Gulfstream Aerospace G-V aircraft, consisting of the following components: (i) an airframe bearing U.S. Registration Mark N5102 and manufacturer's serial number 551 and (ii) two BMW Rolls Royce model BR710 Al-lO engines bearing manufacturer's serial numbers 11235 and 11236.

9.    Prior to the Commencement Date, GM was also party to five aircraft lease agreements by and between AVN and GM (the "AVN Leases"). Copies of the AVN Leases are attached hereto as Exhibit C, Exhibit D, Exhibit E, Exhibit F, and Exhibit G, respectively. The AVN Leases are as follows:

(a)    Aircraft Lease Agreement (S/N 4013), dated as of September 1, 2005 and amended as of December 15, 2005 and December 21, 2007, pursuant to which GM leased a Gulfstream Aerospace Corporation, Model G-IV (also known as a G350 (G-IV-X)) Aircraft (the "AVN 4013 Lease"), which consists of the following components: (i) and airframe bearing U.S. Registration Mark N5113 and Manufacturer's Serial No. 4013 and (ii) two Rolls-Royce Tay Mk 611-8C engines bearing Manufacturer's Serial Nos. 85029 and 85030 respectively.

(b)    Aircraft Lease Agreement (S/N 4019), dated as of November 16, 2005 and amended as of December 15, 2005 and December 21, 2007, pursuant to which GM leased a Gulfstream Aerospace Corporation, Model G-IV (also known as a G350 (G-IV-X)) Aircraft (the "AVN 4019 Lease"), which consists of the following components: (i) an airframe

bearing U.S. Registration Mark N5115 and Manufacturer's Serial No. 4019 and (ii) two Rolls-Royce Tay Mk 611-8 engines bearing Manufacturer's Serial Nos. 85052 and 85053 respectively.

(c) Aircraft Lease Agreement (S/N 4016), dated as of September 20, 2005 and amended as of December 15, 2005 and December 21, 2007, pursuant to which GM leased a Gulfstream Aerospace Corporation, Model G-IV (also known as a G350 (G-IV-X)) Aircraft (the "AVN 4016 Lease"), which consists of the following components: (i) an airframe bearing U.S. Registration Mark N5114 and Manufacturer's Serial No. 4016 and (ii) two Rolls-Royce Tay Mk 611-8C engines bearing Manufacturer's Serial Nos. 85037 and 85036 respectively.

(d) Aircraft Lease Agreement (S/N 4023), dated as of December 19, 2005 and amended as of December 21, 2007, pursuant to which GM leased a Gulfstream Aerospace Corporation, Model G-IV (also known as a G350 (G-IV-X)) Aircraft (the "AVN 4023 Lease"), which consists of the following components: (i) an airframe bearing U.S. Registration Mark N5116 and Manufacturer's Serial No. 4023 an (ii) two Rolls-Royce Tay Mk 611-8C engines bearing Manufacturer's Serial Nos. 85043 and 85042 respectively.

(e) Aircraft Lease Agreement (S/N 4026), executed in two parts, dated as of September 29, 2005 and February 2, 2006 respectively, and amended as of December 21, 2007, pursuant to which GM leased a Gulfstream Aerospace Corporation, Model G-IV (also known as a G350 (G-IV-X)) Aircraft (the "AVN 4026 Lease"), consisting of the following components: (i) an airframe bearing U.S. Registration Mark N5117 and Manufacturer's Serial No. 4026 and (ii) two Rolls-Royce Tay Mk 611-8 engines bearing Manufacturer's Serial Nos. 85064 and 85065 respectively.

10. By that certain Trust Agreement (the "Trust Agreement"), dated as of December 14, 2005, between GM, as Remainder Participant, General Electric Capital Corporation ("GE Capital"), as beneficiary, solely in its capacity as agent for AVN and U.S. Bank and Trust National Association ("US Bank"), as Trustee, and a related Deposit Agreement (collectively, with the Trust Agreement, the "Trust Documents"), the Trustee holds deposits from GM for each of the AVN Leases (the "Security Deposits") in the following amounts: $2,678,763.36 for the AVN 4013 Lease; $2,678,863.52 for the AVN 4016 Lease; $2,678,763.36 for the AVN 4019 Lease; $2,678,760.35 for the AVN 4026 Lease; and $2,678,763.36 for the AVN 4023 Lease. Pursuant to the terms of the Trust Documents, the Security Deposits can be applied to the amounts outstanding under the AVN Leases.

11. Additionally, GM is party to a lease agreement, by and between GM and the Board of Country Road Commissioners of the County of Wayne, Michigan ("Wayne County"), dated as of July 5, 1984 (the "Airport Lease"), pursuant to which GM leases Hangar Building 530 and additional space on the premises at the Detroit Metropolitan Wayne County Airport located in Wayne, Michigan. A copy of the Airport Lease is attached hereto as Exhibit H.

12. The Leases are not among those assets proposed to be assumed and assigned in the Debtors' proposed sale of certain of their assets. Moreover, the Debtors wish to reject the Leases in the exercise of their business judgment. Accordingly, the Debtors have determined that rejecting the Leases and surrendering possession of the property to the relevant lessor is in the best interests of their estates.

13. Additionally, in order to facilitate the transfer of possession and operational control of the aircrafts to the relevant lessor, a termination of the aircraft leases

("Notice of Termination") must be filed with the FAA.  Accordingly, pursuant to this Motion, the Debtors also request authority to execute and file a Notice of Termination for the Leases and all other documentation necessary for surrender and control of the aircrafts under all applicable laws and regulations.

14. Finally, in order to minimize the accrual of claims against the Debtors' estates, the Debtors seek an order of this Court modifying the automatic stay to permit the Trustee and AVN to apply the Security Deposits provided under the Trust Documents.

**Basis for Relief Requested**

15. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a).  Courts routinely approve motions to assume, assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993) (stating that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); In re Gucci, 193 B.R. 411, 415 (S.D.N.Y. 1996) ("A bankruptcy court reviewing a trustee's decision to assume or reject an executory contract should apply its 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it.").

16. Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. See In re Riodizio, Inc., 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business judgment of the debtor's management"); accord Phar-Mor, Inc. v. Strouss Bldg. Assocs., 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor. . . . Courts should generally defer to a debtor's decision whether to reject an executory contract."). The "business judgment" test is not a strict standard; it merely require a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. See, e.g., Bregman v. Meehan (In re Meehan), 59 B.R. 380, 385 (E.D.N.Y. 1986) ("The business judgment test is a flexible one . . . . The primary issue under the business judgment test is whether rejection of the contract would benefit general unsecured creditors."); In re Helm, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("To meet the business judgment test, the debtor in possession must establish that rejection will benefit the estate."); Westbury Real Estate Ventures, Inc. v. Bradless, Inc. (In re Bradless Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's decision to assume or reject an executory contract, the court must examine the contract and circumstances and apply its best 'business judgment' to determine if the assumption or rejection would be beneficial or burdensome to the estate.").

17. The Leases are not necessary or valuable to the Debtors' business activities or the sale process. The Debtors also believe that given current market conditions, assuming and assigning the Leases would not be beneficial to their estates and that maintaining the Leases would unnecessarily deplete the assets of the Debtors' estates to the direct detriment of their creditors. Accordingly, in the sound exercise of their business judgment, the Debtors

NY2:\2001859\04\16WN704!.DOC\72240.0635    8

have determined that the rejection of the Leases, pursuant to section 365 of the Bankruptcy Code, effective as of the later of (a) the date of this Motion and (b) the date of surrender is in the best interests of their estates.

19. Further, in conjunction with the rejection of the Leases, the Debtors request that they be permitted to execute all documentation necessary to facilitate the transfer of possession and operational control of the aircrafts to the relevant lessors, including, but not limited to, the execution of the Notices of Termination. Such actions are consistent with the rejection of the Leases and will permit the lessors to more effectively remarket or redeploy the aircrafts to minimize damages and claims against GM while relieving GM of any liability to third parties asserted as a result of GM having an interest of record with the FAA in the aircrafts.

19. The Debtors also request that AVN be permitted to provisionally apply the Security Deposits in the manner contemplated by the Leases to minimize AVN's damages while preserving the right of the Debtors and all parties in interest to require the AVN to remarket and redeploy the aircrafts in the manner required under the Leases and/or applicable law and to fully account for the funds so applied, all as provided in the proposed order submitted herewith.

20. Finally, to promote the orderly and expeditious administration of the Debtors' estates, the Debtors request that this Court enter an order directing that AVN, GE Capital, Suntrust, and Wayne County, as applicable, be required to file proofs of claim in respect of any lease rejection damages within 45 days after the date of entry of an Order authorizing the rejection of the Leases and the other relief requested in this Motion.

## Notice

21. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury,

(iii) the attorneys for EDC, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the atttorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors, (vii) the attorneys for the UAW, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, and (xii) AVN, GE Capital, US Bank, Suntrust, and Wayne County.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

22. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       June 1, 2009

/s/ Robert B. Weiss
Robert B. Weiss
Donald F. Baty, Jr.
Tricia A. Sherick

HONIGMAN MILLER SCHWARTZ
AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit MI  48226
Telephone: (313) 465-7000
Fascimile: (313) 465-8000

Attorneys for Debtors
and Debtors in Possession