# Exhibit A

*

# AIRCRAFT LEASE
# (N5101)

dated as of September 27, 2001

between

**SUNTRUST LEASING CORPORATION,**
as Lessor

and

**GENERAL MOTORS CORPORATION,**
as Lessee

This is Counterpart No. __ of a total of 4 counterparts. Only Counterpart No. 1 shall be considered chattel paper for purposes of the Uniform Commercial Code and a security interest may be perfected only by possession of Counterpart No. 1.

_____

*Vedder, Price, Kaufman & Kammholz*
*Chicago, Illinois*

# TABLE OF CONTENTS

**Page**

Section 1.    Acceptance and Lease of Aircraft ........................................................... 1

Section 2.    Conditions to Closing; Closing Covenants ............................................ 1

Section 3.    Term and Rent ....................................................................................... 4

Section 4.    Limited Appointment of Agent ............................................................. 4

Section 5.    Representations, Covenants and Warranties .......................................... 4

Section 6.    Representations, Warranties and Agreements of Lessee ....................... 6

Section 7.    Net Lease ............................................................................................... 8

Section 8.    Return of Aircraft .................................................................................. 8

Section 9.    Liens ...................................................................................................... 11

Section 10.   Taxes ..................................................................................................... 11

Section 11.   Registration, Maintenance and Operation; Compliance and Use;
             Replacement Parts; Additions; Aircraft Marking ................................. 13

Section 12.   Inspection .............................................................................................. 15

Section 13.   Loss or Destruction ............................................................................... 16

Section 14.   Insurance ............................................................................................... 17

Section 15.   Indemnification ..................................................................................... 19

Section 16.   Assignment and Sublease ..................................................................... 20

Section 17.   Tax Indemnification .............................................................................. 22

Section 18.   Events of Default .................................................................................. 23

Section 19.   Remedies ............................................................................................... 23

Section 20.   Performance of Obligations of Lessee by Lessor ................................. 27

Section 21.   Intent ..................................................................................................... 27

Section 22.   Notices .................................................................................................. 27

Section 23.   Purchase Options; Obsolescence Termination; Like-Kind Exchange ... 27

Section 24.   Transaction Expenses ........................................................................... 31

Section 25.   Miscellaneous ....................................................................................... 31

Section 26.   AMENDMENTS .................................................................................. 33

Section 27.   Truth in Leasing .................................................................................... 33

i

Table of Contents
(continued)

EXHIBIT A      –    Definitions
    Lease Supplement No. 1
       Schedule No. 1 to Lease Supplement No. 1
       Schedule No. 2 to Lease Supplement No. 1
       Schedule No. 3 to Lease Supplement No. 1
EXHIBIT B      –    [INTENTIONALLY LEFT BLANK]
EXHIBIT C           Special Tax Indemnity Addendum

CHICAGO/#812613.8

This **AIRCRAFT LEASE** (N5101) (together with all Supplements, Exhibits and Certificates hereto, the "**Lease**") is made and entered into as of the 27th day of September, 2001 by and between **SUNTRUST LEASING CORPORATION**, a Virginia Commonwealth corporation ("**Lessor**"), and **GENERAL MOTORS CORPORATION**, a Delaware corporation ("**Lessee**"). Certain capitalized terms as used in this Lease are defined in Exhibit A hereto, and such definitions are hereby incorporated herein and made a part hereof as though set forth herein in full.

**Section 1.**    Acceptance and Lease of Aircraft.  Subject to the satisfaction of each condition set forth in Section 2.1, Lessor hereby agrees to purchase the Aircraft from the Lessee and to lease the same to Lessee and Lessee hereby agrees to lease the same from Lessor for the Basic Term hereof pursuant to the terms and conditions of this Lease.

**Section 2.**    Conditions to Closing; Closing Covenants.

2.1    Conditions Precedent-Lessor.  Lessor's obligations to purchase the Aircraft from the Lessee and to lease the Aircraft to Lessee, shall each be both subject to and conditioned upon all of the following conditions being satisfied:

(a)    Lessor receiving on or prior to the Acceptance Date, all of the following in form and substance reasonably satisfactory to it:

(i)    the Purchase Documents duly executed by Lessee and the Aircraft Purchase Agreement;

(ii)    four (4) duly executed originals of the Lease, including Lease Supplement No. 1 and all Schedules and Exhibits thereto executed by Lessee;

(iii)    a certificate or certificates, executed by the Lessee's secretary or other authorized officer certifying: (A) resolutions of Lessee's Board of Directors authorizing the execution, delivery and performance of this Lease, Lease Supplement No. 1, the Purchase Documents and the transactions contemplated hereby and thereby and (B) the name(s) of the person(s) authorized to execute and deliver such documents on behalf of Lessee together with specimen signature(s) of such person(s);

(iv)    certificate(s) of insurance as to the coverage required under Section 14 hereof;

(v)    evidence that FAA Counsel has received in escrow the executed FAA AC Form 8050-2 Aircraft Bill of Sale (the "**Bill of Sale**") in the name of Lessor and AC Form 8050-1 Aircraft Registration Application in the name of Lessor (the "**Registration Application**") (except for the pink copy which shall be available to be placed on the Aircraft upon acceptance thereof) and executed duplicates of the Lease and Lease Supplement No. 1, executed by Lessee all the foregoing being in proper form for filing with the FAA;

[Aircraft Lease (N5101)]

(vi)     an opinion of (a) Richard I. Petersen, Esq., in-house counsel for Lessee, and (b) Vedder, Price, Kaufman & Kammholz, special counsel for Lessee, in each case in form and substance reasonably satisfactory to Lessor;

(vii)     certificate(s) of good standing for Lessee from the States of Delaware and Michigan;

(viii)     UCC financing statements duly executed by Lessee in accordance with the Uniform Commercial Code in effect in the State of Delaware covering the Aircraft; and

(ix)     an opinion of FAA Counsel satisfactory to Lessor.

(b)     No material adverse change in the financial condition of Lessee has occurred since the date of the last financial statements furnished to Lessor as set forth on Schedule 2 to Lease Supplement No. 1 which materially impairs the ability of the Lessee to perform its obligations hereunder.

(c)     Receipt by Lessor of a satisfactory appraisal with respect to the Aircraft prepared by AMS, Inc.

(d)     Lessee's acceptance of the Aircraft on or before the Acceptance Date.

(e)     In addition to the above listed conditions precedent, Lessee covenants and agrees that upon satisfaction of all conditions precedent in Section 2.2 and Lessor's acknowledgment that all the conditions to the sale and lease as aforestated have been satisfied, Lessee shall release from escrow to Lessor the documents held by FAA Counsel on behalf of Lessee and shall authorize FAA Counsel to file and record all appropriate documentation, including, without limitation, the Lease and Lease Supplement No. 1, with the FAA on the Acceptance Date.

2.2     Conditions Precedent – Lessee.  Lessee's obligations to sell the Aircraft to Lessor and to lease the Aircraft from Lessor, shall each be both subject to and conditioned upon all of the following conditions being satisfied:

(a)     Lessee receiving on or prior to the Acceptance Date, all of the following in form and substance reasonably satisfactory to it:

(i)     the Purchase Documents duly executed by Lessor;

(ii)     four (4) duly executed originals of the Lease, including, Lease Supplement No. 1 and all Schedules and Exhibits thereto executed by Lessor;

(iii)     a certificate or certificates, executed by the Lessor's secretary or other authorized officer certifying:  (A) resolutions of Lessor's Board of Directors authorizing the execution, delivery and performance of this Lease, Lease Supplement No. 1, the Purchase Documents and the transactions contemplated hereby and thereby

2

and (B) the name(s) of the person(s) authorized to execute and deliver such documents on behalf of Lessor together with specimen signature(s) of such person(s);

   (iv) evidence that FAA Counsel has received in escrow the Registration Application in the name of Lessor (except for the pink copy which shall be available to be placed on the Aircraft upon acceptance thereof) and executed duplicates of the Lease and Lease Supplement No. 1, executed by Lessor, all the foregoing being in proper form for filing with the FAA;

   (v) an opinion of Michael Powers, Esq., in-house counsel for Lessor, in form and substance reasonably satisfactory to Lessee; and

   (vi) an opinion of FAA Counsel satisfactory to Lessee.

  (b) Receipt by Lessee of the Purchase Price under the Purchase Agreement.

  (c) Lessee shall have received evidence to Lessee's satisfaction that Lessor shall be registered in the State of Michigan to collect use tax and Lessor shall have provided Lessee a sale-for-resale exemption certificate as required in the State of Michigan in order that the initial sale of the Aircraft to Lessor shall be exempt from sales tax.

  (d) In addition to the above listed conditions precedent, Lessor covenants and agrees that upon satisfaction of all conditions precedent in Section 2.1 and Lessee's acknowledgment that all the conditions to the sale and lease as aforestated have been satisfied, Lessor shall release from escrow to Lessee the documents held by FAA Counsel on behalf of Lessor and shall authorize FAA Counsel to file and record all appropriate documentation, including, without limitation, the Lease and Lease Supplement No. 1, with the FAA on the Acceptance Date.

  2.3 <u>Conditions Subsequent</u>.  On or subsequent to the Acceptance Date, but not later than the date of the Aircraft's first flight under the leasehold conveyed herein, Lessee shall provide written confirmation to Lessor that a copy of the Registration Application has been placed within the Aircraft.

  In addition, if the Aircraft is more than 12,500 pounds maximum certificated takeoff weight, prior to the date of the Aircraft's first flight hereunder Lessee shall provide Lessor with written confirmation that:

  (a) a copy of this Lease, including Lease Supplement No. 1, has been placed within the Aircraft;

  (b) a copy of this Lease, including Lease Supplement No. 1, was mailed, within 24 hours following execution thereof, to the Flight Standards Technical Division of the FAA; and

  (c) Lessee has notified the FAA (such notification to have been given by telephone or in person to the FAA Flight Standards District Office, General Aviation District Office, Air Carrier District Office or International Field Office nearest the airport where such

3

flight will originate) concerning the first flight of the Aircraft under this Lease at least 48 hours prior to takeoff.

Section 3.    Term and Rent.

(a)    The leasing of the Aircraft by Lessor to Lessee shall commence on the Acceptance Date and end on the Expiration Date each as set forth on Lease Supplement No. 1, unless this Lease shall have been terminated or extended in accordance with the terms hereof.

(b)    No rent shall accrue during the period from the Acceptance Date to, but not including, the Commencement Date.  Thereafter, Lessee shall pay to Lessor as basic rent (herein referred to as "**Basic Rent**"), on the First Basic Rent Date and on each Basic Rent Date thereafter, to and including the Last Basic Rent Date (or, upon exercise of Lessee's early purchase option, the applicable Early Purchase Date), an amount, in arrears, equal to the Basic Rent set forth on Schedule 2 to Lease Supplement No. 1.

(c)    In addition, Lessee shall pay to Lessor the  following amounts (herein referred to as "**Supplemental Rent**" and, together with all Basic Rent, collectively as "**Rent**"): (i) any other amount payable hereunder which Lessee assumes the obligation to pay, or agrees to pay, under this Lease to Lessor; (ii) on the date provided herein, any amount payable hereunder as Casualty Value and/or any amounts due pursuant to Section 23 hereof plus any and all amounts regarding the same and (iii) interest at the Late Payment Rate for the number of days actually elapsed on any amount payable hereunder not paid when due.  Unless otherwise specified in this Lease to be paid on a particular date or within a relevant period, Supplemental Rent shall be paid within five (5) Business Days of demand.  The expiration or other termination or cancellation of Lessee's obligation to pay Basic Rent hereunder shall not terminate, cancel, limit or modify the obligations of Lessee with respect to Supplemental Rent, which shall survive such expiration or other termination or cancellation.

(d)    All payments of Rent or other amounts required hereunder shall be made to Lessor in immediately available United States funds on the date payable hereunder at its address set forth herein or at such other address or to such other Person as Lessor may direct by reasonable prior notice in writing to Lessee; provided that if any such date shall not be a Business Day, such payment shall be made on the next succeeding Business Day without adjustment.

Section 4.    Limited Appointment of Agent.  Lessor hereby appoints Lessee as Lessor's agent for the sole and limited purpose of accepting delivery of the Aircraft from Lessee under the Purchase Agreement.  The execution by Lessee of Lease Supplement No. 1 shall evidence that the Aircraft is leased under, and is subject to all of the terms, provisions and conditions of, this Lease and constitute Lessee's unconditional and irrevocable acceptance of the Aircraft for all purposes of this Lease.

Section 5.    Representations, Covenants and Warranties.  (a) Lessor (i) represents and warrants that it is a "citizen of the United States" as defined in Section 40102(a)(15) of the Federal Aviation Act, and (ii) warrants that during the term of this Lease, so long as no Event of Default has occurred, neither Lessor nor any other person acting through or on behalf of Lessor

4

[Aircraft Lease (N5101)]

shall take or cause to be taken any action that interrupts or interferes in any material way with Lessee's (or any permitted sublessee's) right to quiet enjoyment of, or Lessee's (or any permitted sublessee's) continuing possession, use or operation of the Aircraft.

(b)    Lessor hereby covenants and agrees that it will not directly or indirectly create, incur, assume or suffer to exist any Lessor's Lien on or with respect to the Aircraft, title thereto or any interest therein and that it will promptly notify Lessee of the existence of any such Lessor's Lien of which it is aware.  Lessor will promptly, at its own expense, take such action as may be necessary duly to discharge any Lessor's Lien with respect to the Aircraft, title thereto or any interest therein if the same shall arise at any time and agrees to indemnify and hold harmless Lessee for, from and against any loss, cost, expense or damage that may be suffered or incurred by Lessee as a result of the existence, or the failure by Lessor to discharge and satisfy, any such Lessor's Lien.

(c)    Lessor agrees that is in the event it shall cease to be a "citizen of the United States" within the meaning of Section 40102(a)(15) of the Federal Aviation Act and the Aircraft shall therefore be, or would therefore become, ineligible for registration in the name of the Lessor, then Lessor shall (at its own expense and without any reimbursement or indemnification from Lessee) as soon as reasonably practicable effect a voting trust or other similar arrangement or take any other action as may be necessary to prevent any deregistration or to maintain the United States registration of the Aircraft (without giving consideration to Section 47.9 of the Federal Aviation Regulations promulgated pursuant to the Federal Aviation Act).

(d)    Lessor further represents and warrants as follows:

(i)    Lessor is a corporation duly organized and existing in good standing under the laws of the Commonwealth of Virginia;

(ii)    this Lease has been duly authorized by all necessary corporate action on the part of Lessor, does not require any further shareholder approval, does not, except as provided in Section 6(g) below, require the approval of, or the giving notice to, any Federal, state, local or foreign governmental authority (including, without limitation, the Department of Transportation and/or the FAA) and does not contravene any law binding on Lessor or contravene any provision of, or constitute a default or result in the creation of any Lien under its certificate of incorporation or by-laws, or any agreement, indenture, or other instrument to which it is a party or by which it is bound; and

(iii)    this Lease has been duly executed and delivered by authorized officers of Lessor and constitutes a legal, valid and binding obligation of Lessor enforceable in accordance with its terms except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditor's rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or equity.

(e)    The representations, warranties and covenants set forth hereinabove is in lieu of all other warranties of Lessor, whether written, oral or implied, with respect to this Lease or the Aircraft, and Lessor shall not be deemed to have modified in any respect the obligations of

5

[Aircraft Lease (N5101)]

Lessee pursuant to Section 7 hereof, which obligations are and shall remain absolute, irrevocable and unconditional under all events and circumstances whatsoever. **LESSEE EXPRESSLY ACKNOWLEDGES THAT IT HAS SELECTED THE AIRCRAFT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES AND LESSEE EXPRESSLY AGREES THAT IT IS LEASING THE AIRCRAFT FROM LESSOR IN AN "AS IS, WHERE IS" CONDITION. LESSOR SHALL NOT BE DEEMED TO HAVE MADE, AND LESSOR HEREBY EXPRESSLY DISCLAIMS, ANY REPRESENTATION OR WARRANTY (EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS SECTION 5), EITHER EXPRESS OR IMPLIED, AS TO THE AIRCRAFT, ANY PART THEREOF, ANY RECORDS, OR ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN, CONDITION, CAPACITY OR DURABILITY OF THE AIRCRAFT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE, USE OR OPERATION, THE QUALITY OF THE MATERIALS OR WORKMANSHIP OF THE AIRCRAFT, ITS VALUE OR AIRWORTHINESS, TITLE, SAFETY, THE ABSENCE OF ANY PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT OR LATENT DEFECT (WHETHER OR NOT DISCOVERABLE BY LESSEE), COMPLIANCE OF THE AIRCRAFT WITH THE REQUIREMENTS OF ANY LAW, RULE, REGULATION OR STANDARD PERTAINING THERETO, OR THE CONFORMITY OF THE AIRCRAFT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE DOCUMENT RELATING THERETO OR ANY INTERFERENCE OR ANY COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, NOR SHALL LESSOR BE LIABLE, REGARDLESS OF ANY ACTUAL OR ALLEGED NEGLIGENCE OF LESSOR, FOR ANY DEFECTS, EITHER PATENT OR LATENT (WHETHER OR NOT DISCOVERABLE BY LESSEE), IN THE AIRCRAFT OR ANY PART THEREOF OR ANY DIRECT OR INDIRECT DAMAGE TO PERSONS OR PROPERTY RESULTING THEREFROM OR FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OR FOR STRICT OR ABSOLUTE LIABILITY IN TORT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, LESSEE HEREBY WAIVES ANY CLAIM (INCLUDING ANY CLAIM BASED ON STRICT OR ABSOLUTE LIABILITY IN TORT OR INFRINGEMENT) IT MIGHT HAVE AGAINST LESSOR FOR ANY LOSS, DAMAGE (INCLUDING, WITHOUT LIMITATION, DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGE) OR EXPENSE CAUSED BY THE AIRCRAFT OR BY LESSEE'S LOSS OF USE THEREOF FOR ANY REASON WHATSOEVER.**

Lessee acknowledges that Lessee, and not Lessor, has selected the Aircraft, the Airframe and the Engines. Lessee further acknowledges that the Lessor has not manufactured or supplied the Aircraft, the Airframe, or the Engines and that the Lessor acquired or will acquire the Aircraft and/or the right to possession thereto in connection with this Lease.

**Section 6.**      Representations, Warranties and Agreements of Lessee.  Lessee represents, warrants and agrees as follows:

6

[Aircraft Lease (N5101)]

     (a)    Due Organization. Lessee is a corporation duly organized and existing in good standing under the laws of the State of Delaware; and Lessee's organizational number is 0056825.

     (b)    Due Authorization; No Violation. The Lessee Documents have been duly authorized by all necessary corporate action on the part of Lessee, do not require any further shareholder approval, do not, except as provided in Section 6(g) below, require the approval of, or the giving notice to, any Federal, state, local or foreign governmental authority (including, without limitation, the Department of Transportation and/or the FAA) and do not contravene any law binding on Lessee or contravene any provision of, or constitute a default or result in the creation of any Lien other than a Permitted Lien under its certificate of incorporation or by-laws, or any agreement, indenture, or other instrument to which it is a party or by which it is bound.

     (c)    Enforceability. The Lessee Documents have been duly executed and delivered by authorized officers of Lessee and constitute the legal, valid and binding obligation of Lessee enforceable in accordance with their terms except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditor's rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or equity.

     (d)    Financial Statements. Lessee covenants and agrees as follows: (a) Lessee will furnish Lessor (i) within one hundred twenty (120) days after the end of each fiscal year of Lessee, a balance sheet of Lessee as at the end of such year, and the related statement of income and statement of cash flows of Lessee for such fiscal year, prepared in accordance with GAAP, all in reasonable detail and certified by independent certified public accountants of recognized standing selected by Lessee; (ii) within forty-five (45) days after the end of each quarter, a balance sheet of Lessee as at the end of such quarter, and the related statement of income and condensed statement of cash flows of Lessee for such quarter, prepared in accordance with GAAP; and (iii) within thirty (30) days after the date on which they are filed, all regular periodic reports, forms and other filings required to be made by Lessee to the Securities and Exchange Commission, if any. So long as Lessee is required to file annual reports on Securities and Exchange Commission ("**SEC**") forms 10-K and 10-Q, Lessee may provide a copy of the applicable Form 10-K or 10-Q within thirty days after its filing in lieu of providing the financial statements referred to above; provided further that the information required to be provided hereby will be considered provided if it is made available on Lessee's website or on the EDGAR database of the Securities and Exchange Commission.

     (e)    Furnishing of Information. Lessee agrees that it shall furnish from time to time to Lessor such information financial or otherwise, relating to Lessee, as Lessor shall reasonably request.

     (f)    Litigation. There are no proceedings pending or, to the knowledge of Lessee, threatened against or affecting Lessee or any of its property before any court, administrative officer or administrative agency which would, directly or indirectly, adversely affect or impair the title of Lessor to the Aircraft, or, except as described in Lessee's reports on Forms 10-K, 10-Q or 8-K filed with the SEC, which, if decided adversely, would materially, adversely affect the ability of Lessee to perform its obligations under the Lessee Documents.

7

[Aircraft Lease (N5101)]

(g)    Filing. Except for the registration of the Aircraft with the FAA and except for filing and/or recording of the applicable documents pursuant to the Federal Aviation Act, no further action, including filing or recording of any document (except for any financing statement under Article 9 of the UCC of applicable jurisdiction to be filed pursuant hereto) is necessary or advisable in order to establish and perfect Lessor's title to and interest in, the Aircraft, as against Lessee and/or any Person in any applicable jurisdiction.

(h)    Good Title. Lessor will be the owner of the Aircraft as of the Acceptance Date and will have good and marketable title to the Aircraft, free and clear of all Liens other than Permitted Liens (other than Lessor's Liens).

(i)    U.S. Citizen. Lessee is a "citizen of the United States" as defined in Section 40102(a)(15) of Title 49 of the United States Code.

(j)    Claims against Manufacturer. Lessee has no pending claims against the Manufacturer in respect of the warranties relating to the Aircraft under the Aircraft Purchase Agreement.

**Section 7.**    Net Lease. This Lease is a net lease, and Lessee acknowledges and agrees that Lessee's obligation to pay all Rent hereunder and the rights of Lessor in and to such Rent, shall be absolute, irrevocable and unconditional and shall not be subject to cancellation, termination, modification or repudiation by Lessee or any abatement, reduction, setoff, defense or counterclaim (collectively, "**Abatements**") for any reason or under any circumstance whatsoever, including, without limitation, Abatements due to any present or future claims of Lessee against Lessor, its successors and assigns whether under this Lease or otherwise, the Manufacturer or any other Person for whatever reason. Lessee hereby waives any and all existing and future claims to any Abatement against such Rent, and agrees to pay all such Rent regardless of any Abatement which may be asserted in connection with this Lease, the Aircraft or otherwise. Nothing set forth in this Section 7 shall limit or impair the ability or right of Lessee to pursue any claim it shall have against Lessor arising out of a breach by Lessor of its obligations hereunder by bringing an action for damages against Lessor. Except as otherwise expressly provided herein, this Lease shall not terminate, nor shall the obligations of Lessee be affected, by reason of any defect in or damage to, or any loss or destruction of, the Aircraft or any part thereof from whatsoever cause, or the invalidity or unenforceability or lack of due authorization of this Lease or lack of right, power or authority of Lessor to enter into this Lease, or for any other cause, whether similar or dissimilar to the foregoing, any present or future law or regulation to the contrary notwithstanding, it being the express intention of Lessor and Lessee that all Rent payable to Lessor hereunder shall be, and continue to be, payable in all events unless and until the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease.

**Section 8.**    Return of Aircraft.

(a)    Condition Upon Return. Unless purchased by Lessee, upon the expiration or other termination or cancellation of this Lease (whether following an Event of Default or otherwise), Lessee, at its own expense, will return the Aircraft to Lessor at the Primary Hangar Location or such other location as shall be mutually acceptable to Lessor and Lessee within the

8

[Aircraft Lease (N5101)]

continental United States and in the condition in which the Aircraft is required to be maintained pursuant to Section 11 hereof and any other applicable provisions of the Lease. Lessee shall not be relieved of any of its duties, obligations, covenants, or agreements under this Lease prior to the return of the Aircraft in the manner and condition required with respect to such return. The Aircraft, at Lessee's expense, upon redelivery pursuant hereto, (i) shall be duly certified by the FAA as an airworthy aircraft, (ii) shall be free and clear of all Liens and any Lessor's Liens, (iii) shall be in the same configuration (subject to Section 11(d) hereof) and in the same operating condition, ordinary wear and tear excepted, as when delivered to Lessee hereunder, (iv) shall be in good operating condition, in good physical condition and good appearance (ordinary wear and tear excepted) with all systems operating normally, (v) shall have no damage history other than damage which has been repaired in accordance with the provisions hereof and after making such repairs, the value of the Aircraft has not been significantly affected, (vi) shall be in compliance by terminating action with all airworthiness directives issued by the FAA and mandatory service bulletins issued by the Manufacturer, and (vii) shall be otherwise in the condition and repair required under this Lease.

(b)    Overhaul-General. At the time of such return, (i) the Airframe (including, without limitation, the landing gear on the Aircraft) shall not have been operated more than one-half of the allowable time between major airframe overhauls or major block maintenance before the next major airframe overhaul or major block maintenance, whichever shall then apply, in accordance with Lessee's then approved overhaul and/or maintenance program authorized by and performed to FAA requirements applicable to Lessee, (ii) each Engine shall not have been operated more than one-half of the allowable time between overhaul (both hot and cold sections as measured by reference to calendar, phase and/or periodic maintenance and/or inspection standards); said Engine overhaul to be performed in accordance with Lessee's then approved engine overhaul program authorized by and performed to FAA requirements applicable to Lessee, (iii) the landing gear on the Aircraft shall not have been operated more than one-half of the allowable time between overhaul; said landing gear overhaul to be performed in accordance with Lessee's then approved landing gear overhaul program authorized by and performed to FAA requirements applicable to Lessee, and (iv) the auxiliary power unit ("**APU**") on the Aircraft shall not have been operated more than one-half of the allowable time between overhaul; said APU overhaul to be performed in accordance with Lessee's then approved APU overhaul program authorized by and performed to FAA requirements applicable to Lessee.

(c)    Overhaul-Airframe. In the event that Lessee does not meet the conditions in clause (b)(i) above with respect to the Airframe, Lessee shall pay Lessor a dollar amount computed by multiplying (i) Lessee's then current cost for such major overhaul or major block maintenance as the case may be (such cost being the then current rates charged by an airframe overhaul facility selected by Lessee and reasonably acceptable to Lessor, together with all costs associated with such overhaul), by (ii) a fraction of which (x) the numerator shall be the excess of the number of hours since the last such major overhaul or major block maintenance, as the case may be, over fifty percent (50%) of the number of hours of allowable time between major overhauls or major block maintenance and (y) the denominator shall be the total number of hours of such allowable time.

(d)    Overhaul-Engine. In the event that Lessee does not meet the conditions in clause (b)(ii) hereof with respect to any Engine, Lessee shall pay to the Lessor with respect to

9

[Aircraft Lease (N5101)]

such Engine for which said conditions are not met the dollar amount per Engine obtained by multiplying (i) the ratio that the time accumulated since half time bears to the time allowable between overhaul by (ii) Lessee's then current cost for such overhaul of such Engine (such cost being the then current rates charged by an engine overhaul facility selected by Lessee and reasonably acceptable to Lessor, together with all reasonable costs associated with such overhaul).

(e)    Overhaul-Landing Gear.  In the event that Lessee does not meet the conditions in clause (b)(iii) hereof with respect to the landing gear on the Aircraft, Lessee shall pay to the Lessor with respect to the landing gear for which said conditions are not met the dollar amount obtained by multiplying (i) the ratio that the time accumulated since half time bears to the time allowable between overhauls by (ii) Lessee's then current cost for such overhaul of such landing gear (such cost referred being the then current rates charged by an overhaul facility selected by Lessee and reasonably acceptable to Lessor, together with all reasonable costs associated with such overhaul).

(f)    Overhaul-APU.  In the event that Lessee does not meet the conditions in clause (b)(iv) hereof with respect to the APU on the Aircraft, Lessee shall pay to the Lessor with respect to the APU the dollar amount obtained by multiplying (i) the ratio that the time accumulated since half time bears to the time allowable between overhauls by (ii) Lessee's then current cost for such overhaul of such APU (such cost referred being the then current rates charged by an overhaul facility selected by Lessee and reasonably acceptable to Lessor, together with all reasonable costs associated with such overhaul).

(g)    Records.  Upon the return of the Aircraft in accordance with this Section, Lessee shall deliver all Records to Lessor.

(h)    Survival.  The provisions of this Section 8 shall survive the expiration or other termination or cancellation of this Lease and the return of the Aircraft for any reason whatsoever.

(i)    Storage.  Upon the expiration or other termination of the Lease, Lessee will, if requested by Lessor, permit Lessor to store the Aircraft for a period of up to ninety (90) days at the Primary Hangar Location as described in Lease Supplement No. 1.  During the first thirty (30) days of the storage period Lessee will, at its own cost and expense (unless pursuant to Section 19), provide a secure parking area for the Aircraft at a location customary for the same and reasonably acceptable to Lessor, and will permit Lessor or any Person designated by Lessor, including the authorized representative or representatives of any prospective purchaser, lessee or user of the Aircraft to inspect the same.  Lessor shall bear the risk of loss and shall pay any and all expenses connected with insuring and maintaining the Aircraft during such storage period.  During the succeeding sixty (60) days of the storage period (unless pursuant to Section 19), storage insurance and maintenance of the Aircraft shall be at the sole cost and risk of the Lessor (except in the case of Lessee's gross negligence or willful misconduct); provided, however, that Lessee shall permit any Person designated by Lessor, including the authorized representative or representatives of any prospective purchaser, lessee or user of the Aircraft to inspect the same.  Lessee shall not be liable, except in the case of negligence or intentional misconduct of Lessee or

10

[Aircraft Lease (N5101)]

of its employees or agents, for injury to, or the death of, any person exercising, either on behalf of Lessor or any prospective purchaser, lessee or user, the rights of inspection granted hereunder.

(j)    Holdover Rent.  In the event Lessee fails to return the Aircraft to Lessor as required by and in accordance with the foregoing provisions of this Section 8 upon the expiration or other termination or cancellation of this Lease, Lessee agrees to pay Lessor Basic Rent for each day such failure shall continue at a per diem rate based upon the average Basic Rent (as determined on a per diem basis) payable during the Term.

(k)    Diminution Amount.  If at the time of the return of the Aircraft to Lessor, the actual average annual flight hours accumulated with respect to the Airframe (such product, the "**Actual Annual Hours**") for the period from the Acceptance Date to such return date (such period, the "**Operating Period**"), is greater than 900, then, (i) Lessor may, at its option, obtain an appraisal of the Aircraft by a nationally recognized independent appraiser selected by Lessor and reasonably acceptable to Lessee, to determine whether (A) the value of the Aircraft upon return would have been greater, if the average annual flight hours for the Airframe during the Operating Period, were 900, instead of the Actual Annual Hours, and (B) if so, the amount by which the Aircraft's value has been diminished as a result of such greater use (such amount, the "**Diminution Amount**"); and (ii) Lessee shall pay to Lessor within ten (10) days of Lessor's written demand therefor (which demand shall be accompanied by a copy of the appraiser's report containing such determination), an amount equal to the Diminution Amount.

**Section 9.**    Liens.  Lessee will not directly or indirectly, voluntarily or involuntarily, create, incur, assume or suffer to exist any Liens on or with respect to the Aircraft or any part thereof, Lessor's title thereto or any interest of Lessor or Lessee therein (and Lessee will promptly, at its own expense, take such action as Lessor deems necessary or advisable to duly discharge any such Lien), except Permitted Liens.  In the event that Lessee fails to take action to discharge or remove any such Lien, Lessor may take such action as it deems necessary or appropriate to discharge or remove such Lien.  Lessor shall provide Lessee with prompt notice of any such action taken.  Lessee shall reimburse Lessor on demand for any reasonable costs incurred by Lessor in connection with such action together with interest at the Late Payment Rate.  Lessor's rights hereunder are in addition to, and not in derogation of, any other rights which Lessor may have hereunder, at law or in equity.

**Section 10.**    Taxes.

(a)    General Obligations of Lessee.  Except as set forth in Section 10(b) below, Lessee agrees to (i) timely report, to the extent legally permissible (or if such reporting by Lessee is not legally permissible, then to prepare reports for timely filing by Lessor), (ii) pay when due and (iii) defend and indemnify Lessor against liability for all license and registration fees, assessments, and sales, use, property, excise, privilege, withholding and other taxes (including any related interest or penalties) or other charges or fees now or hereafter imposed by any governmental body or agency upon the Aircraft, or with respect to landing, airport use, manufacturing, ordering, shipment, purchase, ownership, delivery, installation, leasing, operation, possession, sale, use, return, or other disposition thereof or the rentals hereunder ("**Impositions**").

11

(b)     Exceptions to Indemnity.  Notwithstanding Section 10(a) above, Lessee shall have no obligation to report, pay or defend and indemnify Lessor with respect to (i) Impositions which are based on or measured by net income, capital or net worth or capital stock, or are in the nature of a doing business or franchise tax, (ii) Impositions which relate to activities in a jurisdiction imposing such Impositions which are unrelated to the transactions contemplated in this Lease, (iii) Impositions resulting from any voluntary or involuntary sale, assignment, transfer or other disposition by Lessor of any interest in the Aircraft (or any portion thereof), or this Lease or of Lessor, in each case, other than (a) a sale, assignment, transfer or other disposition in connection with Lessor's exercise of remedies while an Event of Default has occurred and is continuing, or (b) in connection with the exercise by Lessee of any right to purchase the Aircraft or any Engine under Sections 13 or 23 hereof, (iv) Impositions which are a result of any Lessor Lien, (v) Impositions which are attributable to the period after the return of the Aircraft in connection with the expiration of the Lease, (vi) Impositions which are attributable to Lessor's gross negligence or willful misconduct, and (vii) any Imposition which is being contested in accordance with the provisions of Section 10(e) hereof during the pendency of such contest.

(c)     After-Tax Basis.  The amount which Lessee is required to pay with respect to any Imposition indemnified against under this Section 10 shall be in an amount sufficient to restore Lessor on an after-tax basis to the same position Lessor would have been in has such Imposition not been incurred.

(d)     Timing of Payment.  Any amount payable to Lessor pursuant to this Section 10 shall be paid within ten (10) Business Days after receipt of a written demand therefore from Lessor accompanied by a written statement describing in reasonable detail the basis for such indemnity and the computation of the amount so payable; provided, however, that such amount need not be paid by Lessee prior to the earlier of (i) the date any Imposition is payable to the appropriate governmental body or agency or (ii) in the case of amounts which are being contested pursuant to Section 10(e), the date such contest is finally resolved.

(e)     Contest.  If a claim is made against Lessor for an Imposition with respect to which Lessee is liable for payment or indemnity under this Section 10, Lessor shall promptly give Lessee notice in writing of such claim; provided, however, that Lessor's failure to give notice will not relieve Lessee of its obligations hereunder to the extent Lessee is not prejudiced by such failure.  So long as (i) no Event of Default has occurred and is continuing, (ii) the contest of such Imposition does not involve any material danger of the sale, forfeiture or loss of the Aircraft or any interest therein, and (iii) if Lessor so requests, Lessee has provided Lessor with an opinion of independent tax counsel that a reasonable basis exists for contesting such claim, then Lessor at Lessee's written request will in good faith and at Lessee's expense, permit Lessee to contest in the name of Lessee or Lessor if allowable under applicable law (or if not so allowable itself contest) the validity, applicability or amount of such Imposition.

The provisions of this Section 10 shall survive the expiration or other termination or cancellation of this Lease and the return of the Aircraft for any reason whatsoever.

**Section 11.**     Registration, Maintenance and Operation; Compliance and Use; Replacement Parts; Additions; Aircraft Marking.

12

(a)    Registration, Maintenance and Operation. During the Term, Lessee, at its own cost and expense, shall (i) cause the Aircraft to be duly registered in the name of the Lessor under the Federal Aviation Act at all times; (ii) maintain, inspect, service, repair, overhaul and test the Airframe and each Engine in accordance with FAA approved and Manufacturer's recommended maintenance programs; (iii) maintain (in the English language) all Records and (iv) promptly furnish to Lessor such information as may be reasonably required to enable Lessor to file any reports required by any governmental authority as a result of Lessor's ownership of the Aircraft. All maintenance procedures required by Section 11, subparagraph (a) (ii) or any other provision of this Lease shall be performed in accordance with all FAA and Manufacturer's standards and procedures by properly trained, licensed, and certified maintenance sources and maintenance personnel utilizing replacement parts approved by the FAA and the Manufacturer, so as to keep the Airframe and each Engine in good operating condition, ordinary wear and tear alone excepted, and to enable the airworthiness certificate for the Aircraft to be continually maintained. Lessee shall comply with all laws, regulations, ordinances, judgments, decrees, directives, injunctions, writs, rules, regulations, orders, interpretations, licenses and permits ("**Applicable Laws**") applicable to the Lease and/or the Aircraft, its use or possession except for unintentional or nonrecurring violations which are cured promptly and which (A) do not involve any loss or reduction of coverage of insurance required under Section 14; (B) do not involve any material risk of the sale, forfeiture or loss of damage to the Aircraft or any interest therein; or (C) do not involve any material risk of Lessor being subject to civil or any risk of Lessor being subject to criminal penalties; provided that Lessee may in good faith diligently contest the validity or application of any such Applicable Laws (subject to compliance with clauses (A), (B) or (C)) in any manner which does not create a material risk of adversely affecting Lessor nor a material risk of adversely affecting the Aircraft or the rights of the Lessor hereunder.

(b)    Compliance and Use. Lessee shall operate the Aircraft (or cause the Aircraft to be operated) solely in a passenger configuration for which Lessee is duly authorized by the FAA and it will not operate or permit the Aircraft to be operated at any time or in any geographic area when or where insurance required by the provisions of Section 14 hereof shall not be in effect, or in a manner, for any time period, such that Lessor or except as provided in Section 16 hereof a third party shall be deemed to have "operational control" of the Aircraft. Throughout the Term, the possession, use and maintenance of the Aircraft shall be at the sole risk and expense of Lessee and the Aircraft shall be based at the Primary Hangar Location set forth in Schedule 2 to Lease Supplement No. 1. At all times the Aircraft will be operated only by duly qualified, currently certificated pilots as required by the insurance policies required under this Lease.

Lessor agrees that the Aircraft may be flown temporarily to any country in the world in connection with the conduct of Lessee's or any permitted sublessee's business; provided, however, that in no event may the Aircraft fly, be operated, used or located in, to or over any such country or area (1) which is excluded from or not specifically and fully covered by coverage by any insurance policy in effect with respect to the Aircraft or by any insurance policy required by the terms of Section 14 hereof; or (2) with which the United States maintains diplomatic sanctions or in a recognized and imminent area of hostility unless fully covered to Lessor's reasonable satisfaction by hull and liability insurance for war and allied perils (including perils of hijacking, confiscation, nationalization, seizure, detention, sabotage and political or terrorist acts).

13

[Aircraft Lease (N5101)]

     (c)    <u>Replacement Parts</u>. Except as otherwise provided in the succeeding paragraph (d) of this Section or upon the occurrence of an Event of Loss with respect to the Aircraft for which Lessee has fully performed its obligations pursuant to Section 13(a) hereof, Lessee, at its own cost and expense, will promptly replace all Parts which may from time to time become worn out, lost, stolen, taken, destroyed, seized, confiscated, requisitioned, damaged beyond repair or permanently rendered or declared unfit for use for any reason whatsoever. All Parts replaced in accordance with this Section 11(c) shall be free and clear of all Liens (except for Permitted Liens) and be in as good operating condition as and shall have a value and utility at least equal to the Parts replaced, assuming the replaced Parts were in the condition and repair required to be maintained by the terms and conditions of this Lease. Upon incorporation, installation or addition of such Parts to the Airframe or the Engines (i) title to such Parts shall thereupon vest in Lessor, free and clear of all Liens (other than Permitted Liens) (ii) such Parts shall become subject to this Lease and Lease Supplement No. 1 and be deemed part of the Airframe or Engines for all purposes of this Lease and (iii) title to any replaced Parts shall vest in Lessee **"AS-IS, WHERE-IS"**, free and clear of all Lessor Liens and shall no longer be deemed a Part under this Lease.

     (d)    <u>Additions</u>. Lessee, at its own expense, will make such alterations and modifications in and additions to the Aircraft as may be required from time to time to be made during the Term so as to comply with applicable law or the provisions of this Lease ("**Required Modifications**"). In addition, Lessee shall be entitled from time to time during the Term to acquire and install on the Aircraft at Lessee's own cost and expense (and Lessor hereby appoints Lessee to be Lessor's agent for such purpose, so long as no Event of Default has occurred and is continuing), any additional accessory, device or equipment as may be available at such time ("**Additions**") but only so long as such Additions (i) are ancillary to the Aircraft, (ii) will not impair the originally intended function or use of the Aircraft or diminish the value of the same, and (iii) do not violate the provisions of Revenue Procedure 2001-28, 2001-19 I.R.B. 1156 (as may hereafter be modified or superseded) or any section of the Code or the regulations promulgated thereunder or any administrative or judicial interpretations thereof. All Required Modifications incorporated or installed in or attached or added to the Airframe or Engine as the result of such alteration, modification or addition in accordance with the provisions of this Section 11(d) shall, without further act, become the property of, and title to such Parts shall vest in, Lessor. Notwithstanding the foregoing sentence Lessee may, at any time during the Term, so long as no Event of Default shall have occurred and be continuing, remove or suffer to be removed any Addition, provided that such Addition (i) is either (A) in addition to, and not in replacement of or substitution for, any Part originally incorporated or installed in or attached to the Airframe or any Engine at the time of delivery thereof to Lessee hereunder or any Part in replacement of or substitution for any such Part or (B) is replaced with the Part it replaced, (ii) is not required to be incorporated or installed in or attached or added to the Airframe or any Engine pursuant to the terms of Section 11(a) or (b) hereof or the first sentence of this Section 11(d) and (iii) can be removed from the Airframe or such Engine without impairing the condition or airworthiness or diminishing the value, utility or remaining useful life of such Airframe or such Engine, which Airframe or Engine would have had at such time had such alteration, modification or addition not occurred. Upon the removal thereof as provided above, such Addition shall no longer be deemed the property of Lessor or part of the Airframe or Engine from which it was removed. Any Addition not removed as above provided prior to the return to Lessor hereunder of the respective Airframe or Engine to which it is attached shall remain the property of Lessor.

14

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

Lessee shall repair all damage to the Aircraft resulting from such installation and removal of Additions so as to restore the Aircraft to its condition prior to installation, ordinary wear and tear excepted.

(e)    Aircraft Marking.  Lessee agrees, at its own cost and expense, to (i) cause the Airframe and the Engines to be kept numbered with the identification or serial number therefor as specified in Lease Supplement No. 1 hereof; (ii) prominently display on the Aircraft that "N" number, and only that "N" number, specified in Lease Supplement No. 1 or such other "N" number as has been approved in writing by the Lessor and duly recorded with the FAA; (iii) notify Lessor in writing thirty (30) days prior to making any change in the configuration of the Aircraft (other than changes in configuration mandated by the FAA or changes which are reasonably consistent with the configuration as of the Acceptance Date), from that in effect at the time the Aircraft is accepted by Lessee hereunder, and in the event of a change or modification of configuration (other than changes in configuration mandated by the FAA or changes which are reasonably consistent with the configuration as of the Acceptance Date), at the request of Lessor to restore the Aircraft to the configuration in effect on the Acceptance Date or, at Lessor's option to pay to Lessor an amount equal to the reasonable cost of such restoration and (iv) affix and maintain in the Airframe a two inch by four inch plaque in the cockpit adjacent to the airworthiness certificate and otherwise in a conspicuous position stating: "This property is owned by and leased from SunTrust Leasing Corporation" (the "**Aircraft Marking**") and such other markings as from time to time may be required by law or otherwise deemed necessary or advisable by Lessor in order to protect the title of Lessor to the Aircraft and the rights of Lessor under this Lease.  Lessee will not place the Aircraft in operation or exercise any control or dominion over the same until such Aircraft Markings have been placed thereon.  Lessee will replace promptly any such Aircraft Marking which may be removed, defaced or destroyed.

**Section 12.**    Inspection.  Lessor shall have the right, but not the duty, at Lessor's cost, to inspect the Aircraft, any component thereof and/or the Records, at any reasonable time and from time to time, wherever located, upon reasonable prior written notice to Lessee.  Upon request of Lessor, Lessee shall confirm to Lessor the location of the Aircraft and shall, at any reasonable time and from time to time, upon reasonable prior written notice to Lessee, make the Aircraft and/or the Records available to Lessor for inspection, provided that no such inspection shall materially interfere with Lessee's operations.  Any such inspection shall be limited to a visual, walk-around inspection; provided, however, that Lessor shall, subject to the foregoing, have the ability to undertake a more thorough inspection of the Aircraft, at Lessor's cost, in the event that, upon inspection of the Records, Lessor reasonably determines on a good faith basis that such an inspection is necessary to determine compliance by Lessee of its obligations hereunder.  Upon the written request of Lessor, Lessee shall give Lessor advance written notice of and an opportunity to be present at and visually inspect the Aircraft during any major overhaul or block maintenance scheduled to occur in the one hundred eighty (180) days following receipt by Lessee of Lessor's written request.  Nothing herein shall limit or restrict Lessor's right to inspect the Aircraft at Lessee's expense following the occurrence of an Event of Default.

**Section 13.**    Loss or Destruction.

(a)    Event of Loss with Respect to the Aircraft.  Upon the occurrence of any Event of Loss with respect to the Aircraft, Lessee shall notify Lessor of any such Event of Loss

15

[Aircraft Lease (N5101)]

within five (5) Business Days of the date thereof. On the next Basic Rent Date following the date of such notice (or, if such Event of Loss occurs after the Last Basic Rent Date, within thirty (30) days after such notice), Lessee shall pay to Lessor any Rent then due, plus the Casualty Value of the Aircraft determined as of the Basic Rent Date immediately following the date of such Event of Loss, together with interest at the Late Payment Rate for the period (if any) from the Basic Rent Date following the date of such notice through the date of payment. Upon making such payment and all Rent due and owing, Lessee's obligation to pay further Basic Rent for the Aircraft subsequent to such payment shall cease, but Lessee's obligation to pay Supplemental Rent as well as any other amounts due under this Lease, if any, for the Aircraft shall remain unchanged. Lessor shall be under no duty to Lessee to pursue any claim against any Person in connection with an Event of Loss, but Lessee may at its own cost and expense pursue the same provided that the pursuit of such claim does not compromise the rights of Lessor in any manner.

Following the payment of the Casualty Value of the Aircraft in accordance with the provisions of this subsection, Lessor shall, convey to Lessee (or as Lessee may direct) all of its right, title and interest in and to the Aircraft on an AS-IS, WHERE-IS BASIS WITHOUT ANY REPRESENTATION BY, OR RECOURSE OR WARRANTY TO, LESSOR, except as to the absence of Lessor's Liens. With respect to a Requisition of Use, Lessor agrees that Lessee shall receive and retain all amounts paid by any governmental authority up to the Casualty Value actually paid by Lessee hereunder, and any excess shall be paid over to, and retained by, Lessor and Lessee, as their respective interests may appear.

(b)     Event of Loss with Respect to an Engine. Upon an Event of Loss with respect to any Engine under circumstances in which there has not occurred an Event of Loss with respect to the Airframe upon which such Engine was installed, Lessee shall give Lessor prompt written notice thereof and shall within sixty (60) days after the occurrence of such Event of Loss, duly convey to Lessor title to a similar or better engine of the same make and model number as that suffering the Event of Loss. Such engine shall (i) be free and clear of all Liens, (ii) have a value, utility, and useful life (without regard to hours and cycles) at least equal to, and be in as good an operating condition as, the Engine with respect to which such Event of Loss has occurred, assuming such Engine was in the condition and repair required by the terms hereof immediately prior to the occurrence of such Event of Loss and (iii) be compatible with the other Engine. Lessee, at its own cost and expense, shall furnish Lessor with such documents to evidence such conveyance as Lessor shall request. Upon full compliance by Lessee with the terms of this paragraph, Lessor will transfer to Lessee, without recourse, representation or warranty of any kind whatsoever other than as to Lessor's Liens, all of Lessor's right, title and interest, if any, in and to the Engine with respect to which such Event of Loss has occurred. **SUCH TRANSFER SHALL BE "AS-IS, WHERE-IS" AND LESSOR SHALL NOT BE DEEMED TO HAVE MADE, AND LESSOR HEREBY DISCLAIMS, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE ENGINE SO TRANSFERRED TO LESSEE** other than as to Lessor's Liens. Each such replacement engine shall, after such conveyance, be deemed an "**Engine**" as defined herein and shall be deemed part of the same Aircraft as was the Engine replaced thereby. In connection with any such replacement, Lessee shall, at its own expense, (i) provide Lessor with a bill of sale warranting conveyance to Lessor of good title to such engine, (ii) cause a supplement hereto to be executed which shall subject such engine to this Lease, (iii) cause such supplement to be filed

16

[Aircraft Lease (N5101)]

with the FAA, (iv) cause a UCC financing statement, covering such engine, to be filed with the Secretary of State of the State of Delaware, (v) provide Lessor an opinion of FAA counsel reasonably satisfactory to Lessor, and (vi) provide Lessor with insurance certificates evidencing compliance with Section 14 in respect of such engine.  No Event of Loss with respect to an Engine shall result in any reduction or delay in the payment of Basic Rent or relieve Lessee of any obligation under this Lease.

(c)    Risk of Loss; no Release of Obligations.  Except as provided in this Section 13, Lessee shall bear the risk of loss and damage and shall not be released from its obligations hereunder in the event of any damage to the Aircraft or any part thereof or any Event of Loss relating thereto.

(d)    Engine Exchange.  Unless an Event of Default shall have occurred and upon not less than five (5) Business Days' prior written notice to Lessor, Lessee may, at its own cost, replace any Engine leased hereunder with another engine (the "**Exchanged Engine**"), and by delivering such documents, instruments, filings and other assurances, in each case, meeting the requirements of Section 13(b).  Such Exchanged Engine shall be deemed to be an "**Engine**" and Lessor and Lessee shall comply with the provisions of Section 13(b) with regard to the Exchanged Engine and the Engine so replaced.

**Section 14.**    Insurance.  Lessee shall, at its own cost and expense, maintain in full force and effect on a worldwide basis, for the entire Term or until the Aircraft is returned, if after the Expiration Date, the following insurance coverage with minimum limits as set forth below:

(a)    Aircraft Liability and Property Damage Insurance.  Aircraft liability insurance covering liability for bodily injury (including passengers) and property damage (including cargo) arising out of the ownership, maintenance or use of the Aircraft and liability under contractual agreements - $300,000,000 (or such higher amount as may from time to time be required by an applicable authority in any jurisdiction in which the Aircraft is flown) each occurrence.  Coverage shall include to the fullest extent commercially available, war and allied perils coverage, (including hijacking, confiscation, nationalization, seizure, detention, sabotage and political or terrorist acts).  The policy must be modified to provide the following additional coverage extensions:

(i)    The "use" provision of the policy must be amended to include carriage of passengers and cargo for hire.

(ii)    The "pilot warranty" provision of the policy must be on an "open" basis covering any pilot approved by the Lessee.

(iii)    Medical payments coverage for all reasonable expense of medical, surgical, ambulance, hospital, nursing, and related services and, in the event of death, reasonable funeral expense on behalf of passengers injured while riding in the Aircraft - $25,000 per passenger.

(iv)    Personal injury coverage - $25,000,000 each occurrence and annual aggregate.

17

[Aircraft Lease (N5101)]

(v)    Passenger voluntary settlement coverage for the benefit of each passenger who sustains bodily injury caused by an accident arising out of the ownership, maintenance or use of the Aircraft - $250,000 per passenger.

(b)    <u>Insurance Against Loss or Damage to the Aircraft</u>.  Ground and flight aircraft physical damage (hull) insurance covering the Casualty Value of the Aircraft (such amount determined at the Acceptance Date and at each anniversary thereof for the next succeeding year throughout the Term), on an agreed value basis, for "all risk" perils and to the fullest extent commercially available coverage for war and allied perils (including hijacking, confiscation, nationalization, seizure, detention, sabotage and political or terrorist acts). Coverage shall include any engines or parts while removed from the Aircraft.  Such insurance shall provide that any amount payable thereunder which exceeds $500,000 in the aggregate for any one loss shall be paid directly to Lessor as sole loss payee and not to Lessor and Lessee jointly (and so long as no Event of Default has occurred, such amounts shall be dispersed by Lessor to Lessee or other appropriate Persons in payment of the costs actually incurred with respect to repairs made to the Aircraft so as to restore it to operating condition, or shall be disbursed by Lessor as otherwise required by the Lease), and that, provided no Default or Event of Default has occurred and is continuing, any amount(s) of less than $500,000 in the aggregate for any one loss shall be paid to Lessee (and such amounts shall be applied by Lessee to pay the costs of such repairs).

(c)    <u>Lessor as Additional Insured; Evidence of Insurance</u>.  All policies of insurance procured by Lessee herein shall be written as primary policies, not contributing with nor in excess of coverage that Lessor may carry.  Such policies shall be amended to name Lessor as owner of the Aircraft and as additional insured.  The policy shall include a breach of warranty provision providing that coverage for such additional insured shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of Lessee or any other Person which results in a breach of any term, condition or warranty of the policy provided that the additional insured so protected has not caused, contributed to or knowingly condoned said act or omission.  In addition, such policies shall waive any rights of set-off, counterclaim, deduction or subrogation against the Lessor.  Annually on the anniversary of the Acceptance Date, Lessee shall provide Lessor with a certificate of insurance evidencing compliance with the requirements set forth above.  The certificates(s) shall provide that the Lessor will receive thirty (30) days' prior written notice (or such shorter period as shall then be generally available in the case of war risk insurance) from the insurer of any termination or material reduction in the amount or scope of coverage.  Such certificates shall be in a form acceptable to, and underwritten by insurance company(ies) reasonably satisfactory to Lessor.  In the event Lessee shall fail to maintain insurance as herein provided, Lessor may, at its option, provide such insurance, and Lessee shall, upon demand, reimburse Lessor for the cost thereof, together with interest at the Late Payment Rate from the date of payment through the date of reimbursement.

(d)    <u>Self-Insurance</u>.  Notwithstanding anything contained in this Section 14 to the contrary, and so long as no Event of Default shall have occurred, Lessee may, so long as Lessee's long-term, unsecured credit rating as assigned by Standard & Poors shall be better than "BBB" self insure (including by way of deductible/retentions) the insurance requirements set forth in this Section 14 to the extent provided under, and in a manner consistent with, Lessee's risk management program in effect from time to time.

18

[Aircraft Lease (N5101)]

**Section 15.**    <u>Indemnification</u>.  Lessee assumes liability for, and hereby agrees to indemnify, protect, save, defend and keep harmless Lessor, its agents, employees, officers, directors, shareholders, subsidiaries, affiliates, successors and assigns (each an "**Indemnitee**"), on a net after-tax basis, from and against any and all liabilities, obligations, losses, damages, penalties, claims (including, without limitation, claims involving or alleging product liability or strict or absolute liability in tort), actions, suits, demands, costs, expenses and disbursements (including, without limitation, legal fees and expenses) of any kind and nature whatsoever ("**Claims**") which may be imposed on, incurred by or asserted against such Indemnitee, but only to the extent such Indemnitee does not receive indemnification as to any such Claim by any other Person, in any way relating to or arising out of (i) any of the Lessee Documents, including without limitation, the performance or enforcement of any of the terms of this Lease or any document contemplated hereby or (ii) the Aircraft, including without limitation, the manufacture, inspection, construction purchase, pooling, interchange, acceptance, rejection, ownership, titling or re-titling, delivery, lease, sublease, possession, use, operation, maintenance, condition, registration or re-registration, sale, return, removal, repossession, storage or other disposition of the Aircraft or any part thereof or any accident in connection therewith (including, without limitation, latent and other defects, whether or not discoverable, and any Claim for patent, trademark or copyright infringement).

Notwithstanding the foregoing, Lessee shall not be required to indemnify such Indemnitee for (a) any Claim caused by the gross negligence or willful misconduct of such Indemnitee (which, for purposes of this clause (a) shall include such Indemnitee's agents, employees, officers, directors, shareholders, subsidiaries, affiliates and successors), (b) any Claim in respect of the Aircraft arising from acts or events which occur after (x) possession of the Aircraft has been redelivered to Lessor (which return and delivery shall be in full and complete compliance with the terms of this Lease, including, without limitation, Section 8) and (y) any and all other obligations of any kind whatsoever of the Lessee under this Lease have been fully paid and/or performed, as the case may be, unless any such Claims were caused by Lessee (or any stockholder, director, officer, employee, successor, assignee, agent or servant of the Lessee) or resulted or arose, directly or indirectly, from any acts, events or omissions of any kind whatsoever during the Term of this Lease or (c) any taxes (it being understood that Section 10 and Exhibit C hereof exclusively provide for Lessee's liability with respect to taxes).

The liability of Lessee to make indemnification payments pursuant to this Section 15 shall, notwithstanding any expiration or other termination or cancellation (whether voluntary, as the result of Default or Event of Default, or otherwise) of this Lease, continue to exist until such indemnity payments are irrevocably made by Lessee in full and received by such Indemnitee. Such Indemnitee shall give Lessee prompt written notice of any Claim hereby indemnified against, and Lessee shall be entitled to control the defense thereof, so long as no Event of Default has occurred; <u>provided</u>, the failure of such Indemnitee to provide such notice shall not relieve Lessee of its obligation to indemnify hereunder to the extent that Lessee has not been materially prejudiced by such Indemnitee's failure to provide prompt notice to Lessee. Lessee shall give Lessor prompt written notice of any Claim hereby indemnified against being brought against Lessor.

**Section 16.**    <u>Assignment and Sublease</u>.  **EXCEPT AS EXPRESSLY PERMITTED IN THIS SECTION 16, LESSEE SHALL NOT SELL, TRANSFER, ASSIGN, CHARTER,**

**SUBLEASE, CONVEY, PLEDGE, MORTGAGE OR OTHERWISE ENCUMBER ITS OR LESSOR'S INTEREST IN AND TO THE LEASE OR THE AIRCRAFT AND ANY SUCH SALE, TRANSFER, ASSIGNMENT, CHARTER, SUBLEASE, CONVEYANCE, PLEDGE, MORTGAGE OR ENCUMBRANCE, WHETHER BY OPERATION OF LAW OR OTHERWISE, WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR SHALL BE NULL AND VOID.  IN ADDITION, LESSEE SHALL NOT ENTER INTO ANY INTERCHANGE AGREEMENT AFFECTING THE AIRCRAFT OR RELINQUISH POSSESSION OF THE AIRFRAME OR ANY ENGINE OR INSTALL ANY ENGINE OR PART, OR PERMIT ANY ENGINE OR PART TO BE INSTALLED, ON ANY AIRFRAME OTHER THAN THE AIRFRAME LEASED HEREUNDER EXCEPT AS EXPRESSLY SET FORTH HEREIN.**  No acceptance, assignment, subletting, relinquishment or installation shall in any event relieve Lessee of primary, absolute and unconditional liability for its duties and obligations under this Lease.

Notwithstanding the foregoing, provided that no Event of Default has occurred and is continuing, Lessee may (i) subject the Aircraft to interchange agreements or similar arrangements entered into by Lessee in the ordinary course of its business, (ii) charter the Aircraft, and/or (iii) sublease the Aircraft (hereinafter a "**Sublease**") to a Sublessee from time to time pursuant to a Sublease that includes the following terms and conditions:

(a)    the term of any Sublease shall not exceed the then remaining Term of this Lease (after giving effect to any termination or cancellation); and

(b)    any Sublease shall be expressly subject and subordinate to this Lease and the rights of Lessor hereunder and in and to the Aircraft, including without limitation, Lessor's right to repossession pursuant to Section 19 hereof and to void such Sublease upon such repossession; and

(c)    the terms of any Sublease referred to in clause (iii) above (A) shall provide that the Sublessee thereunder may not further sublease or transfer its interests in the Aircraft, Airframe or Engines, (B) shall not have any terms inconsistent with the terms of this Lease, and (C) shall not include any purchase option or similar title transfer mechanism and shall otherwise be a "true" lease for commercial law purposes.  In addition, if, at the commencement or during the term of any Sublease referred to in clause (iii) above having a term in excess of 10 days, Lessee's long-term, unsecured credit rating as assigned by Standard & Poors shall fall below "BBB+" Lessee shall (x) cause such Sublease to be assigned, as collateral security, to Lessor pursuant to a collateral assignment in form and having substance reasonably satisfactory to the Lessor, (y) cause the applicable Sublessee to acknowledge in writing Lessor's rights under this Lease and subject and subordinate nature of such Sublease, and (z) cause such Sublease and assignment to be filed with the FAA.

No such interchange, chartering and/or subleasing by Lessee will reduce any of the obligations of Lessee hereunder or the rights of Lessor hereunder, and all of the obligations of Lessee hereunder shall be and remain primary and shall continue in full force and effect as the obligations of a principal and not of a guarantor or surety.

20

[Aircraft Lease (N5101)]

Lessor, may at any time and at its sole cost and expense, upon prior notice to Lessee, mortgage, grant a security interest in or otherwise transfer, sell or assign all or any part of its interest in this Lease or the Aircraft or any Rent or other sums due or to become due hereunder and Lessee shall perform all of its obligations under this Lease for the benefit of such assignee, lender, creditor, mortgagee, transferee or Person (hereinafter an "**Assignee**") that is (i) a "citizen of the United States" within the meaning set forth in 49 U.S.C. Section 40102(a)(15), (ii) an institutional investor (as defined below) or an affiliated company (as defined below), and (iii) not a competitor of Lessee; provided, however, that the interest of any such Assignee shall be subject to Lessee's rights of use and possession, and purchase options to the extent expressly provided hereunder. In the case of an assignment or other conveyance to a Person that is not an institutional investor or an affiliated company or is a competitor of, Lessee shall respond promptly to Lessor's request for its consent to such assignment or other conveyance and will not unreasonably withhold its consent to such assignment or other conveyance. Lessee agrees that the rights hereunder of any such Assignee shall not be subject to any defense, setoff, recoupment, abatement, reduction, claim or counterclaim (collectively the "**Defenses**") that Lessee has or may at any time have against Lessor for any reason whatsoever unless Assignee expressly assumes Lessor's obligations hereunder with respect thereto. Unless Lessor's obligations with respect to such Defenses are expressly assumed by Assignee, Lessee hereby waives any right to assert at any time any of the foregoing Defenses against any such Assignee. Lessee further agrees that any such Assignee shall have all of Lessor's rights hereunder, but none of the Lessor's obligations or duties. Lessor shall remain liable only with respect to any Defenses that are not assumed by such Assignee. Lessor and Lessee acknowledge and agree that any such assignment, transfer or sale shall not materially change Lessee's duties or materially increase its burdens or risks hereunder and that any such assignment, transfer or sale shall be permitted only if the assignment, transfer or sale would not materially affect the Lessee's interests hereunder. Lessee further agrees, if so directed in writing, to, among other things, pay all sums due or to become due hereunder directly to the Assignee or any other party designated in writing by Lessor or any such Assignee. Upon the request of Lessor or any Assignee, Lessee also agrees (i) to promptly execute and deliver to Lessor or to such Assignee an acknowledgment of assignment in form and substance satisfactory to the requesting party which, among other things, reaffirms the basic terms and conditions of this Lease and the other Lessee Documents, (ii) to comply with the reasonable demands of any such Assignee in order to perfect any such assignment or transfer and (iii) to include such Assignee as an additional insured on the liability insurance maintained by the Lessee pursuant to Section 14 hereof.

In addition, in the event that Lessor or any Affiliate thereof acquires or is acquired by, merges, or otherwise consolidates with, any competitor of Lessee, Lessor shall use reasonable efforts to transfer its interests in the Aircraft and this Lease to an unrelated third party meeting the criteria set forth above. If within six months following such acquisitions, merger or consolidation Lessor shall not have transferred its interest as aforesaid, then Lessee may on the next following Basic Rent Date, purchase the Aircraft and Lessor's interest in this Lease, each on an "**AS-IS, WHERE-IS**" basis, for a price equal to the current Casualty Value determined in accordance with Section 13 together with all other amounts then due and owing by Lessee hereunder. Lessee shall be responsible for all reasonable out-of-pocket expenses incurred by Lessor in connection with any such purchase and any sales taxes resulting therefrom.

For purposes of this Section 16:

21

[Aircraft Lease (N5101)]

(i)    "affiliated company" shall mean any company (the "Parent") then owning not less than 80% of the voting capital stock of Lessor, any company (the "Holding Company") then owning not less than 80% of the voting capital stock of the Parent, and any company not less than 80% of the voting capital stock of which is then owned, directly or indirectly, by the Holding Company, the Parent or Lessor or any entity with which Lessor merges or consolidates or which acquires substantially all of its assets.

(ii)    "institutional investor" means any of the following Persons existing under the laws of the United States of America or any state thereof (in the case of any banking institution or insurance company) that has capital, surplus and undivided profits (or the equivalent) of at least $50,000,000 or (in the case of any finance or leasing company or other Assignee) that has a net worth of at least $50,000,000 or (in the case of any Assignee) that has a net worth of at least $50,000,000 pursuant to a guaranty in form and substance reasonably satisfactory to Lessee:  (A) any bank, bank holding company, savings institution, trust company or national banking association acting for its own account or in a fiduciary capacity as trustee or agent under any pension, retirement, profit sharing or similar trust or fund, (B) any insurance company or fraternal benefit society, (C) any finance company or leasing company, or (D) any corporation, all of whose capital stock and other securities are owned by any of the foregoing or that owns all of the voting capital stock or other securities of any of the foregoing, provided the foregoing entity guarantees the obligations of such subsidiary or parent under the Lease Documents by an instrument satisfactory to Lessor and Lessee.

(iii)    "competitor" means any Person engaged in (or an Affiliate of any Person engaged in) the design, engineering, manufacture, assembly or distribution of motor vehicles, motor vehicle components or motor vehicle parts; for purpose of this definition, Lessee agrees to exclude General Electric Capital Corporation and its Affiliates and will agree to give due consideration to any request from Lessor to exclude other institutional investors from this definition, it being understood that Lessee will not unreasonably withhold its consent to so exclude such institutional investors which are not deemed by Lessee to be competitors (or Affiliates of competitors) with Lessee's core business activities, it being further understood that Lessee shall not be expected to consent to institutional investors whose Affiliates are deemed by Lessee to be competitors with Lessee's core business activities.

This Lease, including all agreements, covenants, representations and warranties, shall be binding upon and inure to the benefit of, and may be enforced by (a) Lessor and its successors, assigns (including, without limitation, all parties referred to in this Section 16), agents and servants and (b) Lessee and its successors and, to the extent expressly permitted by Lessor, assigns.

**Section 17.**    Tax Indemnification.  (See Special Tax Indemnity Addendum attached hereto as Exhibit C).

**Section 18.**    Events of Default.  The term "**Event of Default**", wherever used herein, shall mean the occurrence (after the lapse of any grace period expressly set forth herein) of any of the following events or circumstances (whatever the reason for such Event of Default and

22

[Aircraft Lease (N5101)]

whether it shall be voluntary or involuntary, or come about or be effected by operation of law, or be pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a)     Lessee shall fail to make any payment of Rent, Casualty Value and/or any amount due pursuant to Section 23 hereof within ten (10) days after any or all of the same shall become due and payable, or, within ten (10) days of demand, any other amount required to be paid herein or under any other agreement with Lessor; or

(b)     Lessee shall fail to keep in full force and effect any of the insurance required under this Lease, or shall operate the Aircraft at a time when, or at a place in which, such insurance shall not be in effect; or

(c)     Lessee shall fail to perform or observe any covenant, condition or agreement (other than those specifically referred to in this Section 18) required to be performed or observed by it under this Lease or any other Lessee Document and such failure shall continue for thirty (30) days after written notice thereof from Lessor to Lessee except that so long as (i) Lessee is diligently attempting to cure such failure and such failure if of such a nature that it can be cured by practical means within an additional 180 days but cannot be cured within such thirty-day period, and (ii) there exists no material risk of the sale, forfeiture or loss of the Aircraft or Lessor's rights, title or interests with respect thereto or imposition of civil or criminal penalties or other sanctions against Lessor, then such failure shall not constitute an Event of Default for an additional 180 days; or

(d)     any representation or warranty made by Lessee herein or in any certificate, agreement, statement or document furnished to Lessor in connection herewith, including without limitation, any financial information disclosed to Lessor, shall fail to be true and correct in any material respect and such failure shall continue unremedied for a period of thirty (30) days after Lessee shall have received written notice thereof from Lessor; or

(e)     the commencement of any bankruptcy, insolvency, arrangement, reorganization, receivership, liquidation or other similar proceeding by or against Lessee or any of its properties or businesses, the appointment of a trustee, receiver, liquidator or custodian for Lessee or any of its properties or businesses, if Lessee suffers the entry of an order for relief under Title 11 of the United States Code or the making by Lessee of a general assignment or deed of trust for the benefit of creditors (and, in the case of any involuntary proceeding, such proceeding is not dismissed within ninety (90) days of the commencement thereof).

**Section 19.**     Remedies.

(a)     Upon the occurrence of any Event of Default, Lessor may, at its option, declare the Lease to be in default (provided that no such declaration shall be a condition to any suit against Lessee for specific performance of a defaulted covenant or for damages in respect of such default upon such occurrence or at any time thereafter), and at any time thereafter, whether or not such Event of Default is continuing, Lessor may exercise any one or more of the following remedies, as Lessor in its sole discretion shall lawfully elect:

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

(i)    Proceed by appropriate court action, either at law or in equity, to enforce performance by Lessee of the applicable covenants of the Lease or to recover damages for breach thereof, including, without limitation, an action of specific performance or other equitable remedy for the purpose of recovering the Aircraft in the manner and condition required by Section 8 of the Lease.

(ii)    By notice, cancel or terminate the Lease, whereupon all rights of Lessee to the use of the Aircraft or any part thereof shall absolutely cease and terminate, but Lessee shall remain liable as hereinafter provided, and thereupon (A) Lessee, if so requested by Lessor, shall at its expense promptly return the Aircraft to the possession of Lessor at such place as Lessor shall designate and in the condition required upon the return thereof pursuant to and in accordance with the terms of the Lease and/or (B) Lessor, at its option, may enter upon the premises where the Aircraft is located and take immediate possession of and remove the same, together with any Engines and Parts by self-help, summary proceedings or otherwise without any liability of any kind whatsoever on the part of Lessor for or by reason of such entry or taking of possession, and Lessee hereby waives any cause of action it may have arising from, or in connection with, the foregoing and/or (C) Lessee will provide storage as set forth in the Lease. In addition, upon the written request of Lessor, Lessee, at its expense, will replace any engine installed on the Airframe with an Engine.

(iii)    Sell, re-lease or otherwise dispose of any or all of the Aircraft, whether or not in Lessor's possession, in a commercially reasonably manner at public or private sale with notice to Lessee (the parties agreeing that ten (10) days' prior written notice shall constitute adequate notice of such sale), with the right of Lessor to purchase and apply the net proceeds of such disposition, after deducting all costs of such disposition (including, but not limited to, costs of transportation, possession, storage, refurbishing, advertising and brokers' fees), to the obligations of Lessee pursuant to this sub-part (iii) or sub-part (iv), as applicable, with Lessee remaining liable for any deficiency and with any excess being retained by Lessor; or retain any or all of the Aircraft; and recover from Lessee damages, not as a penalty, but herein liquidated for all purposes as follows:

(A)    if Lessor elects to dispose of the Aircraft pursuant to a lease which is substantially similar to the Lease: an amount equal to the sum of (1) any accrued and unpaid Rent under the Lease as of the date of commencement (the "New Lease Commencement Date") of the term of the new lease and (2) (x) the present value as of the New Lease Commencement Date of the total Basic Rent for the then remaining term of the Lease, minus (y) the present value of the New Lease Commencement Date of the rent under the new lease applicable to that period of the new lease term which is comparable to the then remaining term of the Lease, and (3) any incidental damages allowed under Article 2A of the UCC ("Incidental Damages"), less expenses saved by Lessor in consequence of the Event of Default;

(B)    if Lessor elects to retain the Aircraft or to dispose of the Aircraft by re-lease (pursuant to a lease that is not substantially similar to the Lease), or otherwise: an amount equal to the sum or (1) any accrued and unpaid Rent as of the date

24

Lessor repossesses the Aircraft or such earlier date as Lessee tenders possession of the Aircraft to Lessor, (2) (x) the present value as of the date determined under clause (1) of the total Basic Rent for the then remaining term of the Lease, minus (y) the present value, as of that certain date which may be determined by taking into account Lessor's having a reasonable opportunity to repossess and remarket the Aircraft, of the "market rent" (as computed pursuant to Article 2A of the UCC) in the continental United States on that date, computed for the same lease term, and (3) any Incidental Damages (provided, however, that if the measure of damages provided is inadequate to put Lessor in as good a position as performance would have, the damages shall be the present value of the profit, including reasonable overhead, Lessor would have made from full performance by Lessee, together with any Incidental Damages, due allowance for costs reasonably incurred and due credit for payments or proceeds of disposition);

(C)    if Lessor has not repossessed the Aircraft, or if Lessor has repossessed the Aircraft or Lessee has tendered possession of the Aircraft to Lessor and Lessor is unable after reasonable effort to dispose of the Aircraft at a reasonable price or the circumstances reasonably indicate that such an effort will be unavailing: an amount equal to the sum of (1) accrued and unpaid Rent as of the date of entry of judgment in favor of Lessor, (2) the present value as of the date determined under clause (1) of the Basic Rent for the then remaining term of the Lease, and (3) any Incidental Damages. Lessor may dispose of the Aircraft at any time before collection of a judgment for damages. If the disposition is before the end of the remaining term of the Lease, Lessor's recovery against Lessee for damages will be governed by sub-part (iii)(A) or (B) (as applicable), and Lessor will cause an appropriate credit to be provided against any judgment for damages to the extent that the amount of the judgment exceeds the applicable recovery pursuant to sub-part (iii)(A) or (B).

(iv)    In lieu of the damages specified in sub-part (iii) above, Lessor may recover from Lessee, as liquidated damages for loss of a bargain and not as a penalty, an amount calculated as the sum of: (A) the Casualty Value of the Aircraft (determined as of the next Basic Rent Date after the date of the occurrence of the subject Event of Default), together with all other sums due hereunder as of such determination date; plus (B) the aggregate amount of all of the costs, charges and expenses referred to in the next succeeding sentence; minus (C) if Lessor has repossessed the Aircraft, any proceeds of any disposition by Lessor, as contemplated in sub-part (iii) above. Such proceeds shall be applied by Lessor (w) first, to pay all costs, charges and expenses, including the cost of discharging all Liens, on the Aircraft and all legal fees and disbursement incurred by Lessor as a result of the Event of Default and/or the exercise of its remedies with respect thereto, including, without limitation, in connection with the repossession, recovery, storage, repair, sale, re-lease or other disposition of the Aircraft, including reasonable attorneys' fees and costs incurred in connection therewith or otherwise resulting from the Event of Default, (x) second, to pay to Lessor an amount equal to any unpaid Rent due and payable and the liquidated damage amounts specified in clause (A) of this subpart (iv), to the extent not previously paid, (y) third, to pay to Lessor any interest accruing on the amounts covered by the preceding clause, at the Late Payment Rate, from and after the date the same become due and payable pursuant to the terms hereof through the date of payment, and (z) fourth, to reimburse Lessee for such amounts to the extent

paid by Lessee as liquidated damages pursuant to clause  (A) of this subpart (iv).  Any surplus remaining thereafter shall be retained by Lessor.

Lessee waives all its rights under laws governing such sale to the extent permitted by law.  Lessor may apply any deposit or other cash collateral or sale or remarketing proceeds of the Aircraft at any time to reduce any amounts due to Lessor.  Notwithstanding the foregoing, Lessor may at its option and in its sole discretion keep idle, lease, or use or operate all or part of the Aircraft without any liability whatsoever and may use Lessee's premises for storage pending lease or sale or for holding a sale without liability for rent or costs or any other matter whatsoever.  For purposes of computing liquidated damages under this Section 19 any amounts to be discounted to present value shall be so discounted to present value at the rate of 4.83% per annum.

If any Default or Event of Default occurs or if Lessee fails to perform or comply with any of its agreements contained herein, Lessor shall have the right, but shall not be obligated, to effect such performance or compliance and the amount of any out-of-pocket expenses and other reasonable expenses of Lessor incurred in connection with the performance of or compliance with such agreements, as the case may be, together with interest thereon at the Late Payment Rate, shall be payable by Lessee promptly upon demand, and any such action by Lessor shall not be deemed a cure or waiver of any Default or Event of Default hereunder.

(b)    Lessee shall be liable for all costs, charges and expenses, including legal fees and disbursements, incurred by Lessor by reason of the occurrence of any Event of Default, the exercise of any of Lessor's rights or remedies with respect thereto or otherwise.

(c)    Lessee hereby waives, to the maximum extent now or hereafter permitted by applicable law, for itself and for its successors or assigns any and all rights Lessee or Lessee's successors or assigns may have following an Event of Default under any bankruptcy, insolvency or similar laws, rules or regulations with respect to the continued possession or use of the Aircraft or relief from the payment of Rent therefor or otherwise with respect to the Lease.  Rejection of the Lease by any bankruptcy trustee or debtor-in-possession shall entitle Lessor to the immediate return of the Aircraft and to liquidated damages calculated in the manner provided for in Section 19(a) hereof with respect to an Event of Default.

(d)    No right or remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other right or remedy referred to above or otherwise available to Lessor at law or in equity, including, without limitation, such rights and/or remedies as are provided for in the UCC.  No express or implied waiver by Lessor of any Default or Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent Default or Event of Default.  The failure or delay of Lessor in exercising any rights granted it hereunder upon the occurrence of any of the contingencies set forth herein shall not constitute a waiver of any such right upon the continuation or reoccurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Lessor shall not exhaust the same or constitute a waiver of any other right provided for or otherwise referred to herein.  All remedies set forth herein shall survive the expiration, cancellation or other termination of the  Lease for any reason whatsoever.

26

[Aircraft Lease (N5101)]

(e)    To the extent permitted by applicable law, Lessee hereby waives any rights now or hereafter conferred by statute or otherwise that may require Lessor to sell, lease or otherwise use the Aircraft in mitigation of Lessor's damages as set forth in this Section or which may otherwise limit or modify any of Lessor's rights or remedies under this Section. To the extent permitted by applicable law, Lessee waives any an all rights and remedies conferred upon a lessee by Section 2A-508 to 2A-522 (inclusive) of the UCC, including, without limitation, any rights or Lessee (a) to cancel or repudiate the Lease or any of the other Lease Documents, (b) to reject or revoke acceptance of the Aircraft or any component thereof, and (c) to recover from Lessor any general or consequential damages, for any reason whatsoever.

Section 20.    Performance of Obligations of Lessee by Lessor. If any Event of Default occurs or if Lessee fails to perform or comply with any of its agreements contained herein, Lessor shall have the right, but shall not be obligated, to effect such performance or compliance and the amount of any out-of-pocket expenses and other reasonable expenses of Lessor incurred in connection with the performance of or compliance with such agreements, as the case may be, together with interest thereon at the Late Payment Rate, shall be payable by Lessee promptly upon demand and any such action by Lessor shall not be deemed a cure or waiver of any Event of Default hereunder. Lessor shall give prompt written notice to Lessee of any such action.

Section 21.    Intent. Title to the Aircraft shall at all times remain in Lessor and at no time during the Term shall title become vested in Lessee. Lessee shall acquire no right, title or interest in or to the Aircraft except the right to use the Aircraft pursuant to the terms of this Lease. Notwithstanding anything to contrary contained herein or otherwise, should a court of competent jurisdiction determine that this agreement is a grant of a security interest, then solely in that event and for the expressly limited purposes thereof, Lessee shall be deemed to have hereby granted and conveyed, and for such express purposes Lessee hereby grants and conveys to, Lessor a security interest and lien in this Lease, the Aircraft and any and all proceeds (including insurance proceeds) of any or all of the foregoing, to secure the prompt and full payment and performance as and when due of any and all obligations and indebtedness of Lessee to Lessor hereunder, now existing or hereafter created of any kind whatsoever. The security interest granted herein shall survive the termination, cancellation or expiration of this Lease by any Event of Default or otherwise and shall remain in full force and effect until such time as Lessee has no further obligations of any kind whatsoever under this Lease.

Section 22.    Notices. All communications and notices provided for herein shall be in writing and shall become effective upon hand delivery, upon delivery to an overnight delivery service or upon being sent by telecopy, and addressed to Lessor or Lessee at their respective addresses set forth under the signatures hereto or such other address as either party may hereafter designate by written notice to the other.

Section 23.    Purchase Options; Obsolescence Termination; Like-Kind Exchange.

(a)    End of Term Purchase Option. So long as (i) no Event of Default shall have occurred and be continuing under this Lease and (ii) this Lease shall not have been earlier terminated, Lessee shall be entitled, at its option, upon written notice to Lessor at least one hundred eighty (180) days prior to, but not more than two hundred forty (240) days prior to, the expiration of the Basic Term, to purchase the Aircraft at the expiration of the Basic Term for an

27

[Aircraft Lease (N5101)]

amount, payable in immediately available funds, equal to the fair market sales value of the Aircraft as of the end of the Basic Term determined in accordance with Section 23(b) hereof, plus any applicable sales, excise or other taxes imposed as a result of such sale (other than gross or net income taxes of Lessor attributable to such sale) and together with all Rent then due and owing. Lessor's sale of the Aircraft shall be on an **"AS-IS WHERE-IS" BASIS, WITHOUT ANY REPRESENTATION BY, OR RECOURSE OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER, TO LESSOR** (other than as to the absence of Lessor's Liens). Furthermore, such values shall be calculated utilizing the assumption that the total number of Airframe hours (including, without limitation, the landing gear and/or any other component with hourly overhaul schedules) accumulated from the Acceptance Date to the Expiration Date are equal to the lesser of (i) the actual number of hours thereon and (ii) nine hundred (900) hours for each year from the Acceptance Date to the Expiration Date.

       (b)    <u>Determination of Fair Market Sales Values</u>. If Lessee has elected to exercise its purchase option as provided in Section 23(a) hereof, then as soon as practicable following Lessor's receipt of the written notice from Lessee of Lessee's intent to exercise such option, Lessor and Lessee shall consult for the purpose of determining the fair market sales value (as defined below) of the Aircraft as of the end of the Basic Term, and any value agreed upon in writing shall constitute such fair market sales value of the Aircraft for the purposes of this Section 23. If Lessor and Lessee fail to agree upon such value prior to one hundred thirty-five (135) days before the expiration of the Basic Term, Lessee, at its sole cost, shall appoint a nationally recognized independent appraiser to determine fair market sales value of the Aircraft. In the event Lessor, acting reasonably, does not agree with the fair market value as determined by the first appraiser, Lessor, at its sole cost, shall appoint a nationally recognized independent appraiser to determine the fair market sales value of the Aircraft. If Lessee, acting reasonably, does not agree with the fair market value as determined by the second appraiser, the first appraiser and the second appraiser shall appoint a third nationally recognized independent appraiser to determine fair market sales value and the fair market sales value shall be the average of the first, second and third appraisals, provided that, if either party shall fail to appoint an appraiser within 10 days after a written request to do so by the other party, or if such two appraisers fail to appoint a third appraiser within 10 days after the date Lessee notifies Lessor of its disagreement with the fair market value as determined by the second appraiser, then either party may, within 10 days after such event, apply to the American Arbitration Association to make such appointment; provided further, however, that in calculating such average any appraisal which has a greater than fifteen percent (15%) variance above or below the second highest of the three appraisals shall be disregarded. Any determination as aforesaid shall be final, binding and conclusive. Lessee and Lessor shall pay equally the costs and expenses of any such third appraisal. For the purposes of this Section 23, "fair market sales value" shall be determined on the basis of, and shall equal in value, the amount which would be obtained in an arm's length transaction between an informed and willing buyer-user (who is neither a lessee in possession nor a used equipment dealer) and an informed and willing seller under no compulsion to sell and in such determination costs of removal of the Aircraft from its then location shall not be a deduction from such fair market sales value and it shall be assumed (whether or not the same be true) that the Aircraft has been maintained in accordance with the provisions of this Lease and would have been returned to Lessor in compliance with the requirements of Section 8 hereof or any other applicable Section.

28

[Aircraft Lease (N5101)]

(c)    Time to Exercise Option. Lessee shall be deemed to have waived the purchase option under Section 23(a) unless Lessee provides Lessor with written notice of its irrevocable election to exercise such option within fifteen (15) days after the applicable fair market sales value is determined (by agreement or appraisal).

(d)    Obsolescence Termination. (i) Provided no Event of Default shall have occurred, Lessee shall have the right to terminate this Lease with respect to the Aircraft on any Basic Rent Date (the "**Termination Date**") upon not less than one hundred twenty (120) days' prior written notice but no more than two hundred forty (240) days' prior written notice, to Lessor, which notice shall specify the Termination Date and be accompanied by a certificate of an officer of Lessee certifying that Lessee has determined in good faith that the Aircraft has become obsolete or surplus to Lessee's needs. On the Termination Date, the Aircraft shall be in the condition required pursuant to Section 8.

(ii)    If Lessee exercises its option pursuant to this Section 23(d), and unless Lessor has given Lessee notice of Lessor's election to retain the Aircraft, the Lessee shall act as the sales agent for the Lessor and shall use reasonable efforts in order to solicit third party bids or indications of interest for the Aircraft during such 120-day period and agree to sell the Aircraft on behalf of the Lessor. Lessor may, if it desires to do so, also seek to obtain such bids. In the event Lessee receives any bid, Lessee shall promptly, and in any event at least ten (10) Business Days prior to the proposed date of sale, certify to Lessor, in writing, the amount and terms of such bid, the proposed date of such sale and the name and address of the Person (who shall not be Lessee or any Affiliate of Lessee or any Person with whom Lessee or such Affiliate has an arrangement for the future use of the Aircraft by Lessee or such Affiliate) submitting such bid. In the event the Lessor receives any bid, the Lessor shall, at least ten (10) days prior to the proposed date of sale, certify to Lessee in writing the amount and terms of such bid, the proposed date of such sale and the name and address of the person submitting such bid. Upon Lessor's receipt of the payment of the purchase price for the Aircraft, together with all other amounts then due and owing hereunder, Lessor shall transfer its interest in the Aircraft to the purchaser on an "**AS-IS, WHERE-IS**" basis, without representation or warranty, express or implied, except as to the absence of Lessor's Liens. Lessor shall provide the purchaser with a bill of sale and such other documents as the purchaser or the Lessee may reasonably require in order to effect such transfer. Lessee shall be responsible for all reasonable out-of-pocket expenses incurred by Lessor in connection with such termination and any sales taxes resulting from any sale of the Aircraft pursuant to this Section 23. In the event of a sale of the Aircraft, the sale proceeds shall be paid as follows:

(A)    if the proceeds exceed the Termination Value for the Aircraft on the date of the expiration of the Term, the portion of the proceeds up to and including the amount of such Termination Value shall be paid to Lessor and the portion in excess of the amount of such Termination Value shall be paid to Lessor plus all unpaid Basic Rent due any time prior to the Termination Date and interest on such amount payable at the Late Payment Rate for the period from such Termination Date to the actual date of payment of such amount in full; or

29

(B)    if the proceeds are less than such Termination Value on the date of the expiration of the Term, Lessee shall pay to Lessor, in addition to the proceeds of such sale, an amount equal to the amount by which such Termination Value exceeds such proceeds plus all unpaid Basic Rent due any time prior to the Termination Date and interest on such amount payable at the Late Payment Rate for the period from such Termination Date to the actual date of payment of such amount in full.

(iii)    If Lessor shall elect to retain the Aircraft on the proposed Termination Date, Lessee shall return the Aircraft to Lessor in accordance with the provisions of Section 8 and Lessee shall pay to Lessor:

(A)    all unpaid Basic Rent due at any time prior to the Termination Date plus interest on such amount at the Late Payment Rate from and including the date on which any such amount was due to the date of payment of such amount in full; and

(B)    all Basic Rent due on such Termination Date; and

(C)    all Supplemental Rent due under the Lease.

(iv)    Unless and until the foregoing payments and performance have been made and/or observed in full by Lessee, Lessee's obligations under this Lease, including, without limitation, the obligation to pay Basic Rent for the Aircraft, shall continue in full force and effect.

(e)    Early Purchase Option.  (i) So long as no Event of Default shall have occurred and be continuing hereunder, Lessee shall be entitled, at its option, upon written notice to Lessor of at least one hundred twenty (120) but no more than one hundred eighty (180) days prior to the Early Purchase Date, to purchase the Aircraft on the Early Purchase Date.  Such early purchase by Lessee shall be effective upon the payment to the Lessor on the Early Purchase Date of an amount equal to the applicable Early Purchase Option Amount plus any other amounts payable pursuant to this Section 23(e).  Lessee shall be responsible for all reasonable out-of-pocket expenses incurred by Lessor in connection with any such purchase and any sales taxes resulting therefrom.

(ii)    On the Early Purchase Date, in addition to the Early Purchase Option Amount, Lessee shall also pay to Lessor, in immediately available funds, (i) the Basic Rent due for the Aircraft on the Early Purchase Date, plus (ii) all accrued and unpaid Rent then due and owing for the Aircraft.

(iii)    On the Early Purchase Date (but in no event prior to Lessor's receipt of the amounts specified in this Section), Lessor shall sell the Aircraft to Lessee on an "AS-IS, WHERE-IS" BASIS, WITHOUT ANY REPRESENTATION BY, OR RECOURSE OR WARRANTY, EITHER EXPRESS OR IMPLIED, TO, LESSOR (except as to the absence of Lessor's Liens).  Upon receipt of the amounts specified in the foregoing paragraph and upon consummation of the sale of the Aircraft, this Lease shall be deemed terminated.

30

[Aircraft Lease (N5101)]

(iv)    Unless and until the foregoing payments and performance have been made and/or observed in full by Lessee, Lessee's obligations under this Lease, including, without limitation, the obligation to pay Basic Rent for the Aircraft, shall continue in full force and effect.

(f)    Like-Kind Exchange.  Upon Lessor's prior written consent (such consent to be granted in Lessor's sole and absolute discretion), Lessee will have the option to exchange the Aircraft pursuant to a "like-kind exchange" transaction qualifying under Section 1031 of the Code; provided, however, that any such "like-kind exchange" shall not serve to extend the Term. The cost to Lessor of any replacement aircraft exchanged for the Aircraft will not exceed an amount satisfactory to Lessor. Any such like-kind exchange shall be subject to and conditioned upon mutually satisfactory documentation (including, without limitation, an opinion of tax counsel to Lessor), receipt by Lessor of a satisfactory appraisal and approval by Lessor's internal credit authorities. To the extent that Lessor benefits due to any such like-kind exchange, Lessor agrees to adjust the rents hereunder to share such benefits with Lessee on terms mutually agreeable to Lessor and Lessee.

**Section 24.**    Transaction Expenses.  Lessor shall pay, subject to a cap equal to .37% of Lessor's Cost (the "Transaction Expenses Cap") (i) all costs and expenses incurred by Lessor in connection with the preparation, execution and delivery of this Lease and all documents related hereto (including, without limitation, the reasonable fees and expenses of counsel to Lessor);  (ii) the reasonable fees and expenses of FAA Counsel incurred in connection with the execution and delivery of this Lease (including any filing fees); (iii) the fees and expenses of AMS, Inc. in connection with the appraisal delivered pursuant to Section 2.1(c) hereof; (iv) the fees of GMAC Business Credit, advisor to Lessee, and (v) the fees and expenses of counsel to Lessee incurred in connection with the preparation, execution and delivery of this Lease and all documents related hereto (collectively, the "Transaction Expenses").  Lessee shall be responsible for all Transaction Expenses in excess of the Transaction Expenses Cap and shall be responsible for the fees and disbursements of its counsel incurred in connection with the execution and delivery of this Lease.

**Section 25.**    Miscellaneous.

(a)    All agreements, indemnities, representations, covenants and warranties contained in this Lease or any agreement, document or certificate delivered pursuant hereto or thereto or in connection herewith or therewith shall survive the execution and delivery of this Lease and to the extent expressly provided for herein the expiration or other termination or cancellation of this Lease for any reason whatsoever.

(b)    Any provision of this Lease which may be determined to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, Lessee hereby waives any provision hereof prohibited or unenforceable in any respect.

31

[Aircraft Lease (N5101)]

(c)     This Lease, and each related instrument, document, agreement and certificate, collectively constitute, and are intended to collectively constitute, the complete and exclusive statement of the terms of the agreement between Lessor and Lessee with respect to the purchase and leasing of the Aircraft and cancel and supersede any and all prior or contemporaneous oral or written understandings, memoranda, negotiations, communications and agreements with respect thereto including, without limitation, any proposal letter, commitment letter and/or term sheet delivered to the Lessee by Lessor.

(d)     This Lease may be executed in any number of counterparts and by the different parties hereto on separate counterparts. Each counterpart of the Lease bears the following legend on the face and execution pages thereof: "This is Counterpart No. ___ of a total of 4 counterparts. Only Counterpart No. 1 shall be considered chattel paper for purposes of the Uniform Commercial Code and a security interest may be perfected only by possession of Counterpart No. 1." To the extent, if any, that this Lease constitutes chattel paper (as such term is defined in the UCC as in effect in any applicable jurisdiction) no security interest in this Lease may be created through the transfer or possession of any counterpart other than the counterpart marked "Counterpart No. 1".

(e)     The division of this Lease into sections, the provision of a table of contents and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Lease.

(f)     The actual dates of execution hereof by the parties hereto are respectively the dates set forth under the signatures hereto, however this Lease shall be effective as of the date first above written.

(g)     Lessee will promptly and duly execute and deliver to Lessor and any assignee, mortgagee and/or lender of the Lessor, such other documents and assurances, including, without limitation, such amendments to this Lease as may be required by Lessor (and by any assignee, mortgagee and/or lender of the Lessor), and UCC financing statements and continuation statements, and will take such further action as Lessor or any such assignee, mortgagee and/or lender may from time to time reasonably request in order to carry out more effectively the intent and purposes of this Lease and to establish and protect the rights and remedies created or intended to be created in favor of Lessor and of any such assignee, mortgagee and/or lender.

(h)     Time is of the essence in the payment and performance of all of Lessee's obligations under the Lease. This Lease shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to principles of conflicts of law or choice of law, including all matters of construction, validity and performance. Lessee hereby irrevocably consents and agrees that any legal action, suit or proceeding arising out of or in any way in connection with this Agreement may be instituted or brought in the courts of the State of New York or the United States District Court located in New York City, as Lessor may elect, and by execution and delivery of this Lease, Lessee hereby irrevocably accepts and submits to, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of any such court, and to all proceedings in such courts. To the extent permitted by applicable law, this Lease shall be deemed a "finance lease" under Section

32

[Aircraft Lease (N5101)]

2A-103(g) of the UCC.  LESSEE ACKNOWLEDGES AND AGREES THAT THIS LEASE IS A COMMERCIAL TRANSACTION.  LESSEE ALSO HEREBY KNOWINGLY AND FREELY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING HEREFROM OR IN RELATION HERETO.  Any action by Lessee against Lessor for any cause of action relating to this Lease shall be brought within one year after any such cause of action first arises.

Section 26.     AMENDMENTS.  NO TERM OR PROVISION OF THIS LEASE MAY BE AMENDED, ALTERED, WAIVED, DISCHARGED OR TERMINATED ORALLY, EXCEPT IN WRITING SIGNED BY A DULY AUTHORIZED OFFICER OF THE PARTY AGAINST WHOM THE ENFORCEMENT OF THE AMENDMENT, ALTERATION, WAIVER, DISCHARGE OR TERMINATION IS SOUGHT.

Section 27.     Truth in Leasing.  THE AIRCRAFT, AS EQUIPMENT, BECAME SUBJECT TO THE MAINTENANCE REQUIREMENTS OF PART 91 OF THE FEDERAL AVIATION REGULATIONS ("FARS") UPON THE REGISTRATION OF THE AIRCRAFT WITH THE FAA.  LESSEE CERTIFIES THAT DURING THE 12 MONTHS (OR PORTION THEREOF DURING WHICH THE AIRCRAFT HAS BEEN SUBJECT TO U.S. REGISTRATION) PRECEDING THE EXECUTION OF THIS LEASE, THE AIRCRAFT HAS BEEN MAINTAINED AND INSPECTED UNDER PART 91 OF THE FARS.  LESSEE CERTIFIES THAT THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED UNDER PART 91 OF THE FARS FOR OPERATIONS TO BE CONDUCTED UNDER THE LEASE.  UPON EXECUTION OF THIS LEASE, AND DURING THE TERM HEREOF, THE LESSEE, WHOSE NAME AND ADDRESS ARE SET FORTH IMMEDIATELY BELOW, ACTING BY AND THROUGH THE SIGNATORY HERETO, WHO EXECUTES THIS SECTION SOLELY IN HIS CAPACITY OF THE LESSEE SET FORTH BELOW HIS SIGNATURE, CERTIFIES THAT THE LESSEE SHALL BE RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THE LEASE, UNLESS, THE AIRCRAFT IS SUBLEASED TO AN AIR CARRIER OR AIR TAXI OPERATOR CERTIFICATED UNDER PART 121 OR PART 135, RESPECTIVELY, OF THE FARS. THE LESSEE FURTHER CERTIFIES THAT IT UNDERSTANDS ITS RESPONSIBILITIES FOR COMPLIANCE WITH APPLICABLE FARS,  PROVIDED HOWEVER,  THAT THE LESSEE SHALL NOT BE DEEMED TO BE RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT FOR SO LONG AS THE AIRCRAFT IS IN POSSESSION OF ANY SUBLESSEE THAT IS CERTIFICATED UNDER PART 121 OR PART 135 OF THE FARS.  AN EXPLANATION OF FACTORS BEARING ON OPERATIONAL CONTROL AND PERTINENT FARS CAN BE OBTAINED FROM THE NEAREST FEDERAL AVIATION FLIGHT STANDARD DISTRICT OFFICE, GENERAL AVIATION DISTRICT OFFICE OR AIR CARRIER DISTRICT OFFICE.

\* \* \*

33

[Aircraft Lease (N5101)]

**IN WITNESS WHEREOF**, the parties hereto have caused the Lease to be duly executed by the respective officers thereunto duly authorized.

**LESSOR:**
**SUNTRUST LEASING CORPORATION**

**LESSEE:**
**GENERAL MOTORS CORPORATION**

By:_____

   Title:

Print Name:_____

Date:_____

By:_____

   Title:

Print Name:_____

Date:_____

Address:   29 Susquehanna Ave.
            Towson, MD 21204

            _____
            Attention:  President
            Fax  (410) 307-6702

Address:   767 5th Avenue
            New York, NY 10153
            Attention:
            Fax

This is Counterpart No. __ of a total of 4 counterparts.  Only Counterpart No. 1 shall be considered chattel paper for purposes of the Uniform Commercial Code and a security interest may be perfected only by possession of Counterpart No. 1.

34

[Aircraft Lease (N5101)]

## EXHIBIT A

## DEFINITIONS

(a)    All references in the Lease to designated Sections and other subdivisions are to such designated Sections and other subdivisions only, and the words "herein," "hereof" and "hereunder" and other words of similar import refer to the Lease as whole and not to any particular Section or other subdivision.

(b)    Except as otherwise indicated, all the agreements and instruments defined herein or in the Lease shall mean such agreements and instruments as the same may from time to time be supplemented or amended, or as the terms thereof may be waived or modified to the extent permitted by, and in accordance with, the terms thereof.

(c)    The terms defined herein and in the Lease shall, for purposes of the Lease and all supplements, schedules and exhibits thereto, have the meanings assigned to them and shall include the plural as well as the singular as the context requires.

(d)    The following terms shall have the following meanings for all purposes of the Lease:

"**Abatements**" shall have the meaning set forth in Section 7 of the Lease.

"**Acceptance Date**" shall mean the date (which date shall be no later than the date designated as the "Last Acceptance Date" on Lease Supplement No. 1) on which Lessee has irrevocably and unconditionally accepted the Aircraft for lease under the Lease as evidenced by the execution and delivery of Lease Supplement No. 1 relating thereto dated such date.

"**Additions**" shall have the meaning set forth in Section 11 of the Lease.

"**Affiliate**" shall mean any Person controlling, controlled by, or under common control with Lessee, and for this purpose, "**control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of any such Person, whether through the legal or beneficial ownership of voting securities, by contract or otherwise.

"**Aircraft**" shall mean (i) the Airframe, (ii) the Engines, and (iii) to the extent applicable, the Records.

"**Aircraft Marking**" shall have the meaning set forth in Section 11(e) of the Lease.

"**Aircraft Purchase Agreement**" shall mean the outfitted Gulfstream V Sales Agreement, Addendum I and Riders, each dated November 21, 1995, together with the Amendment, dated February 2, 1999, each by and between General Motors Corporation and Gulfstream Aerospace Corporation.

"**Airframe**" shall mean (i) the airframe described in Lease Supplement No. 1, and, unless the context requires otherwise, shall not include the Engines and (ii) any and all Parts from time to time incorporated in, installed on or attached to such airframe and any and all Parts removed

EXHIBIT A
Page 1

[Aircraft Lease (N5101)]

therefrom so long as title thereto shall remain vested in Lessor in accordance with the applicable terms of this Lease after removal from the Aircraft.

"**Basic Rent**" shall have the meaning set forth in Section 3 of the Lease.

"**Basic Rent Dates**" shall have the meaning set forth in Schedule 2 to Lease Supplement No. 1 to the Lease.

"**Basic Term**" shall mean the term for which the Aircraft is leased under the Lease beginning on the Acceptance Date and ending on the Expiration Date.

"**Bill of Sale**" shall have the meaning set forth in Section 2 of the Lease.

"**Business Day**" shall mean any day other than a Saturday, Sunday or other day on which banks located in New York City or Baltimore are closed or are authorized to close.

"**Casualty Value**" shall have the meaning set forth from time to time on Schedule No. 3 to Lease Supplement No. 1 to the Lease.

"**Claims**" shall have the meaning set forth in Section 15 of the Lease.

"**Code**" shall mean the Internal Revenue Code of 1986, as amended.

"**Commencement Date**" shall have the meaning set forth in Schedule 2 to Lease Supplement No. 1 to the Lease.

"**Default**" shall mean an event or circumstance which, after the giving of notice or lapse of time, or both, would become an Event of Default.

"**Defenses**" shall have the meaning set forth in the penultimate paragraph of Section 16 of the Lease.

"**Early Purchase Date**" shall have the meaning set forth in Schedule 2 to Lease Supplement No. 1 to the Lease.

"**Early Purchase Option Amount**" shall be the amount payable by the Lessee in the event that it exercises its option to purchase the Aircraft pursuant to Section 23(e) hereof, and shall have the value set forth on Lease Supplement No. 1 to the Lease for the applicable Early Purchase Date.

"**Engine**" shall mean (i) each of the engines described and listed by manufacturer's serial numbers in Lease Supplement No. 1 whether or not thereafter installed on such Airframe or any other airframe from time to time; (ii) any engine which may from time to time be substituted, pursuant to the applicable terms of this Lease, for an Engine leased hereunder and (iii) in each case set forth in clauses (i) and (ii) hereof, with any and all Parts incorporated in or installed on or attached to such Engine or engine or any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the applicable terms of this Lease after

CHICAGO/#812613.8

removal from such Engine.  The term "**Engines**" means, as of any date of determination, all Engines leased hereunder.

"**Event of Default**" shall have the meaning set forth in Section 18 of the Lease.

"**Event of Loss**" with respect to the Aircraft, the Airframe or any Engine shall mean any of the following events with respect to such property (i) loss of such property or the use thereof due to theft, disappearance, destruction, damage beyond repair or rendition of such property permanently unfit for normal use for any reason whatsoever; (ii) any damage to such property which results in an insurance settlement with respect to such property on the basis of a total loss or constructive total loss; (iii) the condemnation, confiscation or seizure of, or requisition of title to or use of, such property by the act of any government (foreign or domestic) or of any state or local authority or any instrumentality or agency of the foregoing, which, in the case of a requisition for use, continues for more than 180 days (or, in the case of the U.S. government or any agency or instrumentation thereof, beyond the Expiration Date ("**Requisition of Use**"); or (iv) as a result of any rule, regulation, order or other action by any government (foreign or domestic) or governmental body (including, without limitation, the FAA or any similar foreign governmental body) having jurisdiction, the use of such property shall have been prohibited, or such property shall have been declared unfit for use, for a period of six (6) consecutive months, unless Lessee, prior to the expiration of six-month period, shall have undertaken and, in the opinion of the Lessor, shall be diligently carrying forward all steps which are necessary or desirable to permit the normal use of such property by Lessee or, in any event, if use shall have been prohibited, or such property shall have been declared unfit for use, for a period of twelve (12) consecutive months.  The date of such Event of Loss shall be the date of such theft, disappearance, destruction, damage, Requisition of Use, prohibition, or unfitness for use for the stated period.  An Event of Loss with respect to the Aircraft shall be deemed to have occurred if an Event of Loss occurs with respect to the Airframe.  An Event of Loss with respect to any Engine shall not, without loss of the Airframe, be deemed an Event of Loss with respect to the Aircraft.

"**Expiration Date**" shall have the meaning set forth in Schedule No. 2 to Lease Supplement No. 1 to the Lease.

"**FAA**" shall mean the United States Federal Aviation Administration and/or the Administrator of the Federal Aviation Administration and the Department of Transportation, or any person, governmental department, bureau, authority, commission or agency succeeding the functions of any of the foregoing.

"**FAA Counsel**" shall mean Messrs. Boston & Boston P.L.L.C., or such other counsel as Lessor may designate (which counsel shall be reasonably satisfactory to Lessor).

"**Federal Aviation Act**" shall mean Subtitle VII of Title 49 of the United States Code, as amended and recodified.

"**First Basic Rent Date**" shall have the meaning set forth in Schedule No. 2 to Lease Supplement No. 1 to the Lease.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

"**GAAP**" shall mean accounting principles generally accepted in the United States, consistently applied.

"**Impositions**" shall have the meaning set forth in Section 10 of the Lease.

"**Last Basic Rent Date**" shall have the meaning set forth in Schedule No. 2 to Lease Supplement No. 1 to the Lease.

"**Late Payment Rate**" shall mean the lesser of (i) a rate equal to the existing yield on U.S. Treasury Notes having a maturity of five years as determined by Telerate Page 7677 plus 200 basis points or (ii) the highest rate permitted by applicable law.

"**Lease Supplement No. 1**" shall mean a supplement to the Lease to be entered into on the Acceptance Date by Lessor and Lessee, which supplement shall be substantially in the form as attached to the Lease and identified as Lease Supplement No. 1.

"**Lessee Documents**" shall mean, collectively, the Lease, Lease Supplement No. 1, the Tax Addendum and the Purchase Documents to which Lessee is a party.

"**Lessor's Cost**" shall have meaning set forth in Schedule No. 2 to Lease Supplement No. 1 to the Lease.

"**Lessor's Liens**" shall mean any Liens created or granted or arising by or through Lessor with respect to Lessor's purchase or financing of the Aircraft or resulting from claims against Lessor not related to Lessor's ownership of the Aircraft.

"**Liens**" shall mean all liens, charges, security interests, and encumbrances of every nature and description whatever, including, without limitation, liens, charges, security interests and encumbrances with respect to Impositions, and rights of third parties under management, pooling, interchange, overhaul, repair or other similar agreements or arrangements.

"**Manufacturer**" means Gulfstream Aerospace Corporation.

"**Parts**" shall mean all appliances, avionics, parts, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature (other than complete Engines), which may from time to time be incorporated or installed in or attached to the Airframe or any Engine for so long as title thereto shall be vested in Lessor in accordance with the applicable terms of this Lease.

"**Permitted Liens**" shall mean (a) the respective rights of others under agreements or arrangements to the extent expressly provided by the terms of Section 16 of the Lease, (b) Lessor's Liens and (c) Liens for taxes either not yet due or being contested by Lessee in good faith, and if constituting Impositions, in accordance with Section 10(e), and inchoate materialmen's, mechanic's, workmen's, repairmen's, employee's or other like Liens arising in the ordinary course of business of Lessee for sums not yet delinquent or being contested in good faith with due diligence and by appropriate proceedings, and such non-payment or proceedings do not adversely affect Lessor's rights, title or interest in the Aircraft.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

"**Person**" shall mean any partnership, corporation, trust, association, joint venture, joint stock company, or non-incorporated organization or government or any department or agency thereof, or any other entity of any kind whatsoever.

"**Primary Hangar Location**" shall mean the location designated as such in Schedule No. 2 to Lease Supplement No. 1.

"**Purchase Agreement**" shall mean that certain Purchase Agreement (N5101) dated September 27, 2001, between Lessee and Lessor.

"**Purchase Documents**" shall mean the Purchase Agreement, the Bill of Sale, the Warranty Bill of Sale and such other documents as Lessor shall consider necessary or advisable in order to convey to Lessor title to the Aircraft as contemplated under the Lease, which documents shall be in form and substance satisfactory to Lessor.

"**Records**" means any and all logs, manuals, certificates, date and inspection, modification, maintenance, engineering, technical and overhaul records (including all computerized data, records and materials of any kind whatsoever) with respect to the Aircraft which are required to be maintained by applicable law or otherwise by the FAA or any other governmental agency or authority having jurisdiction with respect to the Aircraft, which Records shall be at all times the property of the Lessor after the Acceptance Date.

"**Recovery Period**" shall have the meaning set forth in Exhibit C to Lease Supplement No. 1 to the Lease.

"**Rent**" shall have the meaning set forth in Section 3 of the Lease.

"**Rent Commencement Date**" shall have the meaning set forth in Schedule No. 2 to Lease Supplement No. 1 to the Lease.

"**Required Modifications**" shall have the meaning set forth in Section 11 of the Lease.

"**Requisition of Use**" shall have the meaning set forth in the Event of Loss definition contained herein.

"**Sublease**" shall have the meaning set forth in Section 16 of the Lease.

"**Sublessee**" shall mean any solvent Person who shall be a sublessee or charterer of the Aircraft pursuant to Section 16 of the Lease.

"**Supplemental Rent**" shall have the meaning set forth in Section 3 of the Lease.

"**Tax Addendum**" shall mean that certain Special Tax Indemnity Addendum to Aircraft Lease (N5101), dated as of September 27, 2001, between Lessor and Lessee.

"**Term**" shall mean the Basic Term.

"**Termination Date**" shall have the meaning specified in Section 23(e) of the Lease.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

"**Termination Value**" shall have the meaning set forth from time to time on Schedule No. 4 to Lese Supplement No. 1 to the Lease.

"**UCC**" shall mean the Uniform Commercial Code as in effect in the applicable jurisdiction.

"**Warranty Bill of Sale**" shall mean a warranty bill of sale from the Lessee.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

## LEASE SUPPLEMENT NO. 1

**LEASE SUPPLEMENT** No. 1, dated _____ __, 2001 between **SUNTRUST LEASING CORPORATION**, as lessor ("**Lessor**"), and **GENERAL MOTORS CORPORATION**, as lessee ("**Lessee**"). Lessor and Lessee have heretofore entered into that certain Aircraft Lease (N_____) dated as of September __, 2001 (herein called the "Lease" and the defined terms therein being hereinafter used with the same meanings). The Lease provides for the execution of this Lease Supplement No. 1 for the purpose of leasing the Aircraft under the Lease as and when delivered by Lessor to Lessee in accordance with the terms thereof.

(a)     The Aircraft. Lessee hereby acknowledges, agrees and certifies that the Aircraft as set forth and described in Schedule No. 1 hereto is in Lessee's possession, has been inspected by Lessee to its complete satisfaction, has been found to be in good working order, repair and condition and fully equipped to operate as required under applicable law for its purpose, is of a size, design, capacity and manufacture selected by Lessee and suitable for Lessee's purposes, and is, as of the date set forth below, unconditionally, irrevocably and fully accepted by Lessee for lease under the Lease. Lessee hereby further unconditionally and irrevocably reaffirms its acknowledgments and agreements in the Lease. All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease.

(b)     Representation by Lessee. Lessee hereby represents and warrants to Lessor that on the date hereof:

(1)     The representations and warranties of Lessee set forth in the Lease were true and correct in all respects when made and are true and correct as of the date hereof, with the same force and effect as if the same had been made on this date except for those representations and warranties which relate to a specific date which shall have been true and correct in all material respects as of such date.

(2)     Lessee has satisfied or complied with all conditions precedent and requirements as set forth in the Lease and Lease Supplements which are required to be or to have been satisfied or complied with on or prior to the date thereof (or such conditions and requirements have been waived in writing by Lessor).

(3)     No Event of Default under the Lease has occurred and is continuing on the date hereof.

(4)     Lessee has obtained, and there are in full force and effect, such insurance policies with respect to the Aircraft, as such term is defined in the Lease, as are required to be obtained under the terms of the Lease.

(5)     The facts, terms, information, description, costs and values set forth in the attached Schedules No. 1, No. 2, No. 3 and No. 4 hereto are true, complete, accurate and correct.

(6)     The Lease shall be deemed a "finance lease" under Section 2A-103(g) of the UCC.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

Date of unconditional, irrevocable and final acceptance by Lessee:

_____ ___, _____.

**[The remainder of this page is intentionally left blank]**

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

**IN WITNESS WHEREOF**, Lessee has caused this Lease Supplement No. 1 to be duly executed by its officers thereunto duly authorized.

**SUNTRUST LEASING CORPORATION,**
as Lessor

By:_____
    Title:

Date:_____

**GENERAL MOTORS CORPORATION,**
as Lessee

By:_____
    Title:

Date:_____

This is Counterpart No. __ of a total of 4 counterparts. Only Counterpart No. 1 shall be considered chattel paper for purposes of the Uniform Commercial Code and a security interest may be perfected only by possession of Counterpart No. 1.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

## SCHEDULE NO. 1
## TO
## LEASE SUPPLEMENT NO. 1

<u>Description of Aircraft</u>.

**[Mgf.]** model [_____] aircraft which consists of the following components:

(a)    Airframe bearing FAA Registration Mark N____ and manufacturer's serial number.

(b)    two (2) **[Mgf.]** model [_____] engines bearing manufacturer's serial numbers ____ and ____ (each of which has 750 or more rated takeoff horsepower or the equivalent of such horsepower).

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

# SCHEDULE NO. 2
## TO
## LEASE SUPPLEMENT NO. 1

SCHEDULE 2 TO LEASE SUPPLEMENT NO. 1 HAS BEEN INTENTIONALLY OMITTED FROM LEASE SUPPLEMENT NO. 1 ON FILE WITH THE FAA.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

# SCHEDULE NO. 3
## TO
## LEASE SUPPLEMENT NO. 1

SCHEDULE 3 TO LEASE SUPPLEMENT NO. 1 HAS BEEN INTENTIONALLY OMITTED FROM LEASE SUPPLEMENT NO. 1 ON FILE WITH THE FAA.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

**SCHEDULE NO. 4**
**TO**
**LEASE SUPPLEMENT NO. 1**

SCHEDULE 4 TO LEASE SUPPLEMENT NO. 1 HAS BEEN INTENTIONALLY OMITTED FROM LEASE SUPPLEMENT NO. 1 ON FILE WITH THE FAA.

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

## EXHIBIT C

Special Tax Indemnity Addendum ("**Tax Addendum**") to Aircraft Lease (N____) dated as of _____, ___, (the "**Lease**") by and among **SUNTRUST LEASING CORPORATION**, as lessor ("**Lessor**"), and **GENERAL MOTORS CORPORATION** , as lessee ("**Lessee**").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease.

(a)    Lessor's Assumptions. In entering into the Lease and the transactions contemplated thereby, Lessor has assumed that it would be entitled, for Federal income tax purposes, to the tax benefits set forth in paragraph (f) below (collectively referred to as the "**Assumed Tax Benefits**"). Lessor has also assumed that its income would be taxed for Federal, state and local income tax purposes at a combined effective tax rate of 38.9% (the "**Assumed Tax Rate**")

(b)    Lessee's Tax Representations and Warranties. Lessee represents and warrants to Lessor that (i) on the Acceptance Date, the Aircraft will be considered placed in service within the meaning of Code Section 168, (ii) Lessee and each member of any group of corporations with which Lessee files consolidated, combined or unitary income or franchise tax returns will not claim any of the Assumed Tax Benefits for such purposes and will file such returns, execute such documents and take such other action as the Lease may require or Lessor may reasonably request to facilitate the realization by Lessor of the Assumed Tax Benefits stated in this Tax Addendum, (iii) as of the Acceptance Date, the Aircraft will not require any improvement, modification or addition (other than ancillary items of removable equipment of a kind that are customarily selected and furnished by purchasers and lessees of similar aircraft) in order to be rendered complete for its intended use by Lessee, (iv) all written information supplied by Lessee in response to a written request by any appraiser retained by Lessor to appraise the Aircraft, was complete and accurate at the time given and as of the Acceptance Date and (v) during the period beginning on the Acceptance Date and ending on December 31, 2006, the Aircraft will not (a) constitute "tax-exempt use property" within the meaning of Code Section 168(h)(1), (b) be used "predominantly outside the United States" within the meaning of Code Section 168(g) or (c) constitute "public utility property" within the meaning of Code Section 168(i)(10).

(c)    Indemnity. (A) if by reason of (i) any act or failure to act of Lessee (other than any such act or failure to act which is expressly permitted or required by the terms of the Lease or otherwise) or (ii) the breach of or inaccuracy of any of Lessee's representations and warranties set forth in paragraph (b) of this Tax Addendum, Lessor shall lose, shall not have the right to claim or there shall be disallowed or recaptured with respect to Lessor, all or a portion of the Assumed Tax Benefits with respect to the Aircraft or (B) if there shall be included in Lessor's gross income for Federal income tax purposes any amount on account of any addition, modification or improvement to or in respect of the Aircraft made or paid for by Lessee or as a result of any exchange of the Aircraft pursuant to Section 23(f) of the Lease, (any such loss, failure to have the right to claim, disallowance or recapture or inclusion referred to in clauses (A) and (B) of this paragraph (c) being hereinafter called a "**Tax Loss**"), Lessee shall pay to Lessor at Lessee's option, subject to the provisions of this Tax Addendum, either: (i) an amount or amounts that, after reduction by the net amount of all Federal, state and local taxes required to be

EXHIBIT C
Page 1

paid by Lessor with respect to the receipt of such amounts or amounts, equals the sum of (x) the aggregate additional Federal, state and local income taxes payable by Lessor as a result of such Tax Loss (computed in the case of a loss, inability to claim, disallowance or recapture of the Assumed Tax Benefits, at the Assumed Tax Rate), plus (y) an amount equal to any interest, fines, additions to tax or penalties as a result of such Tax Loss, or (ii) provided that no Event of Default has occurred and is continuing, additional Rent on each Basic Rent Date in such amounts as are necessary to maintain Lessor's after-tax economic yield and overall net after-tax cash flow.  In the event any indemnity payments shall be paid to Lessor under this Tax Addendum with respect to the Aircraft, the Casualty Value and/or Early Purchase Option Amount,  if applicable,  of the Aircraft shall be adjusted appropriately.  If as a result of a Tax Loss in which Lessee has indemnified Lessor hereunder, Lessor shall realize any deduction, credit, refund or other tax benefit which would not have been available if the Tax Loss had not occurred, Lessor shall pay to Lessee the amount of any resulting reduction in Federal income taxes, plus any additional Federal, state and local tax savings realized by Lessor as a result of any payment made pursuant to this sentence, within thirty (30) days after Lessor files a tax return or receives a refund which reflects such reduction in Federal income taxes; provided, however, that the amount paid by Lessor to Lessee shall not exceed the amount paid by Lessee to Lessor with respect to such Tax Loss, and no such payment shall be made so long as an Event of Default shall have occurred and be continuing.

(d)    Consolidated Tax Returns; Lessor's Assigns.  For purposes of this Tax Addendum, the term "**Lessor**" will include the corporation constituting Lessor, its successors in interest, each assignee and each of their respective successors in interest and assigns and any Consolidated Group (hereinafter defined) of which Lessor or any such assignee or any of their respective successors in interest or assigns is, or may become a member, and each member of such Consolidated Group, and the term "**Consolidated Group**" means an affiliated group (within the meaning of Section 1504 of the Code) that files consolidated returns for Federal income tax purposes.

(e)    Miscellaneous.  The indemnification obligations of Lessee under this Tax Addendum shall survive the expiration, termination or cancellation of the Lease and the Term. Provided that Lessee performs its indemnification obligations under this Tax Addendum in a timely manner, Lessor shall have no additional remedies with respect to the occurrence of a Tax Loss.

(f)    Exclusions.  Notwithstanding the foregoing, Lessor shall be responsible for, and shall not be entitled to indemnification for any Tax Loss hereunder to the extent such Tax Loss occurs as a result of any one or more of the following events: (i) the failure of Lessor to timely and properly claim the Assumed Tax Benefits, (ii) the failure of Lessor to have sufficient taxable income against which to benefit from the Assumed Tax Benefits, (iii) any event as a result of which Lessee or any person has paid Casualty Value or an amount equal to the fair market value of the Aircraft, in each case, in accordance with the Lease, (iv) a voluntary or involuntary disposition or transfer by the Lessor of all or any portion of its interest in the Aircraft other than pursuant to the exercise of remedies while an Event of Default has occurred and is continuing, (v) the failure of the Lease to be a "true lease" for Federal income tax purposes, unless such failure is a result of a breach of Lessee's representations and warranties contained in paragraph (b) of this Tax Addendum and (vi) any amendment or addition to, or change in, the Code, other

EXHIBIT C
Page 2

[Aircraft Lease (N5101)]

tax statutes, Treasury regulations, or administrative or judicial interpretation thereof, which is enacted, adopted or promulgated after the Acceptance Date.

(g)    Assumed Tax Benefits.  For purposes of this Tax Addendum, the term "**Assumed Tax Benefits**" shall mean the following:

Cost recovery deductions with respect to the Aircraft under Code Sections 167 and 168, computed using the following assumptions:

A.    Depreciation Method:  (commencing in Lessor's taxable year which includes the Acceptance Date) 200% declining balance method, switching to straight line method for the first taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year would yield a larger allowance.

B.    Recovery Period:  five years

C.    Convention:  half-year convention

D.    Basis:  100% of Lessor's Cost.

(h)    Payments.  Lessor shall promptly notify Lessee in writing of any such Tax Loss, which notice shall include a written demand certifying that there has been a Tax Loss, describing in reasonable detail the Tax Loss in question and the calculation of the payment due in respect thereof (which calculation shall include a computation of the amount of additional Rent in the event Lessee chooses to pay the indemnity in the form of additional Rent).  In the event such indemnity is not paid in the form of additional Rent, Lessee shall pay to Lessor the amount of such indemnity within thirty (30) days of the notice from Lessor of the Tax Loss; provided, however, that such payment shall be made no earlier than (i) the filing of the return which reflects such Tax Loss or (ii) upon receipt of Lessor of a 30-day letter or a notice of deficiency (as described in Section 6212 of the Code) from the Internal Revenue Service with respect to such Tax Loss; and provided, further, however, that in the event a Tax Loss is being contested in good faith under paragraph (i) of this Tax Addendum, such payment shall be made promptly after the contest is finally resolved.

(i)    Contest.  Lessor shall promptly notice Lessee of receipt from the Internal Revenue Service of a written proposal or final revenue agent's report, a 30-day letter or a notice of deficiency (as described in Section 6212 of the Code) in which an adjustment is proposed to the Federal income taxes of Lessor for which Lessee would be required to indemnify Lessor pursuant to this Tax Addendum, provided that the failure to give such notice shall not relieve Lessee of its obligations hereunder except to the extent that Lessee's contest rights hereunder are materially impaired as a result of such failure.  If Lessee, within 30 days of receipt of notice from Lessor requests the Lessor to do so, Lessor shall contest the proposed adjustment, shall consider in good faith any suggestion made by Lessee as to the method of pursuing such contest, and, provided Lessee is complying with its obligations under this paragraph (i), shall not, without the consent of Lessee, settle such proposed adjustment; provided, however, that Lessor shall not be obligated to contest such adjustment unless (i) Lessee provides Lessor with an opinion of independent counsel that a reasonable basis exists to contest the adjustment, (ii) no Event of

EXHIBIT C
Page 3

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

Default has occurred and is continuing under the Lease, (iii) Lessor has determined in good faith that the contest shall not result in a material risk of the loss or forfeiture of the Aircraft and (iv) the amount for which Lessee would be required to indemnify Lessor with respect to such proposed adjustment exceeds $25,000.  Lessor shall afford Lessee reasonable opportunities to consult with Lessor and shall keep Lessee reasonably informed of the nature of all actions taken to contest such proposed adjustment, and shall permit Lessee to participate in any proceedings, provided that Lessor shall have ultimate discretion to determine the nature (and forum) of (including the extent to which the proposed adjustment is contested at the administrative level), and shall control the prosecution of, all such actions.  If Lessor determines to contest any adjustment by paying the additional tax and suing for a refund, Lessee shall timely advance to Lessor, on an interest-free basis, an amount equal to the sum of any tax, interest, penalties and additions to tax required to be paid and shall indemnify Lessor against any adverse Federal income tax consequences resulting from such advance.  Upon receipt of any refund by Lessor of any amount paid in the form of an advance by Lessee, Lessor shall promptly pay to Lessee the amount of such refund, together with any interest of such refund received by Lessor which is attributable to the amount advanced by Lessee.

EXHIBIT C
Page 4

CHICAGO/#812613.8

[Aircraft Lease (N5101)]

**IN WITNESS WHEREOF,** the parties hereto have each caused this Tax Addendum to be duly executed by their respective officers, hereunto duly authorized.

**SUNTRUST LEASING CORPORATION,**
as Lessor


By:_____
    Name:
    Title:

Date:_____

**GENERAL MOTORS CORPORATION,**
as Lessee


By:_____
    Name:
    Title:

Date:_____

EXHIBIT C
Page 5

CHICAGO/#812613.8