**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
: 
In re                                                          :         Chapter 11 Case No.
:
**GENERAL MOTORS CORP.**, *et al.*,              :         09-50026 (REG)
:
Debtors.                        :         (Jointly Administered)
:
-----------------------------------------------------------------x

## ORDER PURSUANT TO
## 11 U.S.C. §§ 105, 362, 363, 364(b), 364(e), 365
## AND 503(b) AND FED. BANKR. P. RULES 2002, 4001, 6003, 6004
## AND 9014(1), AUTHORIZING THE DEBTORS TO ENTER INTO,
## AND APPROVING, RATIFICATION AGREEMENT WITH GMAC LLC
## (THE "RATIFICATION ORDER")

**Whereas**, the Court has before it the Motion (the "**Motion**")[1] of General Motors Corporation ("**GM**" or the "**Debtor**") and its affiliated debtors, each as debtors and debtors-in-possession (collectively, the "**Debtors**"), in the above-captioned case (the "**Cases**"), seeking, among other things, authorization to enter into, and approval of, that certain Ratification Agreement entered into between GM and GMAC LLC and certain of its affiliates (collectively, "**GMAC**"), made as of June 1, 2009 (the "**Ratification Agreement**"), pursuant to Sections 105, 362, 363, 364(b), 364(e), 365 and 503(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6003, 6004 and 9014(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 4001-2 and 9014-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"); and

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or where applicable the Ratification Agreement.

**Whereas**, the inter-related transactions and dealings between the Debtors, on the one hand, and GMAC, on the other hand, contribute significantly to the success of the Debtors and GMAC, usually generating efficiencies and enhanced results for each of them, including business opportunities and referrals, data and resource sharing, economies of scale, leveraging staff expertise, and administrative conveniences, all of which combined, result in highly valuable and significant organizational, operational, business and financial synergies; and

**Whereas**, GM and GMAC entered into that certain Master Services Agreement, dated as of November 30, 2006 (as amended, supplemented and otherwise modified prior to May 22, 2009, the "**Original MSA**") which, among other things, integrated and supplemented certain agreements under which the parties have provided various services and financial accommodations to one another as set forth therein, including, the terms and conditions more specifically set forth in the Specified Integrated Agreements (as defined therein); and

**Whereas**, on December 24, 2008, in connection with the conversion of GMAC Bank, a wholly owned subsidiary of GMAC, from a Utah industrial loan company to a Utah commercial bank, the Board of Governors of the Federal Reserve System approved the application of GMAC to become a bank holding company under Section 3 of the Bank Holding Company Act of 1956, as amended.  Pursuant to a letter agreement entered into between GM and GMAC, dated as of December 29, 2008 (the "**Letter Agreement**"), in connection with the approval, GM and GMAC agreed to amend and restate the Specified Integrated Agreements, including the Original MSA, in accordance with the terms set forth in the Letter Agreement; and

**Whereas**, to document more formally the terms set forth in the Letter Agreement, the parties entered into that certain Amended and Restated Master Services Agreement dated as of

May 22, 2009, and made effective as of December 29, 2008 (the "**MSA**"),[2] to, *inter alia*, memorialize certain modifications to the existing contractual arrangements and other business and financial course of dealings, which, together with the amendment of certain of the Specified Integrated Agreements (as defined and identified in the MSA, the "**Specified Integrated Agreements**"), and all implementing agreements arising under or relating to any of the Specified Integrated Agreements (the "**Implementing Agreements**"), (the MSA, the Specified Integrated Agreements and the Implementing Agreements, as such agreements have heretofore or may hereafter be amended, modified and supplemented, collectively referred to as the "**MSA Documents**"); and

**Whereas**, there are other existing contractual arrangements between the Debtors and GMAC that memorialize the ordinary course of business, financial and operating arrangements between the parties (collectively, as the same may be amended, modified and supplemented from time to time, the "**Other Agreements**," and, together with the MSA Documents, the "**Operative Documents**"); and

**Whereas**, GMAC has the right to seek the entry of an order of the Court compelling the Debtors to immediately assume or reject the Operative Documents and to refrain from providing any financial accommodations to or for the benefit of the Debtors thereunder, but has agreed to refrain from exercising such rights in consideration of the Debtors entering into the Ratification Agreement subject to the entry of this Order; and

**Whereas**, entry into the Ratification Agreement and continuation of the Operative Documents during the period from the date of filing of the Cases (the "**Commencement Date**")

---

[2] Contemporaneously with the filing of the Motion, the Debtors have filed a joint motion with GMAC requesting authority to file under seal the MSA and certain of the other main Operative Documents.

until (i) the closing of the Sale pursuant to the Sale Order (as each of those terms are defined below) or (ii) an event of termination occurs as set forth in Paragraph 12 below (the "**Interim Period**"), are essential to the continued operation of the Debtors' businesses and in the best interests of the Debtors' estates, creditors, and other parties in interest, for reasons including, among others, that the agreements at issue (a) are critical to the Debtors' ability to continue to operate their businesses as a going concern, both from the perspective of their ability to sell vehicles on a wholesale basis to their Dealers (as defined below) and for such Dealers to sell the Debtors' vehicles on a retail basis to their customers, and (b) are consistent with the long standing contractual arrangements under which the parties have conducted their businesses over the past many years in the ordinary course; and

**Whereas**, upon the Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2, dated June 1, 2009 (the "**Henderson Affidavit**"), the record of the hearing and all of the proceedings had before the Court (the "**Hearing**"), it appears that no alternative source of wholesale or retail financing is available to the Debtors to replace, at the levels required, the critical and necessary financing provided by GMAC under the Operative Documents; and

**Whereas**, it further appears that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York of Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.), (ii) this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (iii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and

**Whereas**, no previous application has been made, and after limited notice appropriate under the circumstances and Hearing, and due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY FOUND, ORDERED, ADJUDGED AND DECREED THAT:**

1. *Jurisdiction:* This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice:* The notice given by the Debtors of the Motion and the Hearing constitutes appropriate and sufficient notice under the circumstances and complies with Bankruptcy Rules 4001(a), (c) and 6003(b).

3. *Findings Regarding the Ratification Agreement:*

    (a) Good cause has been shown for the entry of this Order and the relief requested in the Motion is hereby granted.

    (b) The Debtors have an immediate need to continue their respective pre-petition financial and operating arrangements with GMAC pursuant to the terms set forth in the Operative Documents in order to, among other things, (i) permit the orderly continuation of the operation of their businesses, (ii) maintain business relationships, suppliers, wholesale dealerships and customers, (iii) provide their dealers (the "**Dealers**") with certain financing and services, including, but not limited to, (A) new and used vehicle inventory financing, (B) capital loans, (C) equipment loans, (D) real estate loans, (E) dealer insurance products and services, (F) remarketing services, and (G) electronic cash and drafting settlement systems (collectively, the "**Dealer Financing**"), (iv) provide certain retail financing to the Debtors' and the Dealers' fleet and retail customers (the "**Customers**"), including, but not limited to, (A) consumer retail financing, (B) commercial retail financing, and (C) commercial fleet financing (collectively, the "**Retail Financing**"), (v) obtain unsecured credit from GMAC, and (vi) perform such other and further acts as may be contemplated by, or required in

connection with, the Operative Documents. The Debtors' continued access to funding, financial arrangements, credit extensions and other arrangements provided under or enabled by the Operative Documents is vital to the preservation and maintenance of the going concern values of the Debtors. The Debtors have demonstrated their need to obtain post-petition financing pursuant to Bankruptcy Code Section 364 and Bankruptcy Rule 4001(c).

(c)    The Operative Documents are necessary to ensure the continued on-going business of the Debtors.

(d)    The Debtors and GMAC negotiated and entered into the Operative Documents and Ratification Agreement in good faith, at arm's length and without collusion. GMAC is a "good faith" lender within the meaning of Section 364(e) of the Bankruptcy Code.

(e)    The Debtors entering into the Ratification Agreement reflects the Debtors' exercise of prudent business judgment and is consistent with their fiduciary duties.

(f)    The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(c)(2) and 6003(b). The Debtors have demonstrated that, absent granting the relief sought by this Order, the Debtors' estate will be immediately and irreparably harmed. Entry into the Ratification Agreement and continuation of the Operative Documents is therefore in the best interest of the Debtors' estates and essential to a successful reorganization. Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

4.    *Authorization to Enter into the Ratification Agreement:*  Pursuant to Sections 363, 364(b) and 365 of the Bankruptcy Code, the Ratification Agreement is hereby approved in all respects and the Debtors are authorized to perform their obligations arising under the Ratification

Agreement and Operative Documents during the Interim Period.  As provided in the Ratification Agreement, the Debtors are authorized and directed to continue their prepetition financial and operating agreements and arrangements with GMAC pursuant to the terms set forth therein and in the Operative Documents.

(a) In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized during the Interim Period to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Ratification Agreement and Operative Documents, including, without limitation:

(i) The execution, delivery and performance during the Interim Period of the Ratification Agreement and Operative Documents, including any exhibits attached thereto, and any amendments, modifications and supplements thereunder, as may be required; and

(ii) The performance during the Interim Period of all other acts required under or in connection with the Ratification Agreement and Operative Documents, subject to Paragraph 7 below.

(b) The automatic stay of Section 362(a) of the Bankruptcy Code is hereby modified to the extent (but only to the extent) necessary to enable the counter-parties to the Ratification Agreement and Operative Documents to participate in, perform their obligations, exercise their rights and take actions in accordance with those agreements, subject to Paragraph 7 below.

(c) To the extent arising, accruing, payable or incurred during the Interim Period, the Debtors' obligations under the Ratification Agreement and Operative Documents shall constitute administrative expense claims pursuant to Section 503(b) of the Bankruptcy Code which shall be paid in the ordinary course of business in accordance with the provisions of the Ratification Agreement and Operative Documents.

(d) No payments made by the Debtors during the Interim Period pursuant to and in accordance with the Ratification Agreement and Operative Documents, except to the extent provided under the Operative Documents, shall be (i) stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code), or (ii) subject, in whole or in part, to any discharge, defense, reduction, setoff, recoupment, avoidance, disgorgement, counterclaim, or similar claim by the Debtors and their estates, which are hereby unconditionally waived and released by the Debtors and their estates.

5. *Conditions on the Ratification Agreement and Operative Documents:* As provided in Paragraph 4 above, during the Interim Period, the Ratification Agreement and Operative Documents shall continue in full force and effect between the parties in accordance with their terms, subject to the following requirements:

(a) At the hearing (the "**Sale Hearing**"), to approve the sale of all, or substantially all, of the Debtors' assets (the "**Sale**"), the Debtors shall seek an Order (the "**Sale Order**") pursuant to Section 365(a) of the Bankruptcy Code which provides for, among other things, (x) the full assumption by the Debtors and their assignment to and assumption by the Purchaser (as defined in the Ratification Agreement) of the Operative Documents and the Pre-Petition Obligations under the Operative Documents pursuant to,

*inter alia*, Section 365 of the Bankruptcy Code, and (y) the full release by the Debtors, their successors and assigns, and the Debtors' estates in favor of GMAC, as set forth in Section 5.2 of the Ratification Agreement.

(b) The Debtors' shall maintain warranty programs of new and used vehicles during the Interim Period in accordance with the Debtors' ordinary course of business practices prior to the Commencement Date, and the Debtors shall seek an Order of this Court authorizing the Debtors to continue to perform under their pre-petition warranty coverage with respect to new and used vehicles sold prior to the Commencement Date as well as with respect to new and used vehicles sold after the Commencement Date.

6. *Priority of Obligations:* At all times during the Interim Period, pursuant to Sections 364(b) and 503(b)(1) of the Bankruptcy Code, to the extent deemed necessary or applicable, all of the Debtors' obligations to GMAC, to the extent arising, accruing, payable or incurred during the Interim Period in the ordinary course, including, without limitation, claims for exposure reduction payments under Section 4 of the MSA, pursuant to the Operative Documents, shall constitute allowed administrative expense claims against the Debtors including, without limitation, all obligations of GM to GMAC arising under any vehicle repurchase agreement that (i) becomes due and payable during the Interim Period or (ii) becomes due and payable after the Interim Period with respect to a vehicle with an invoice date or GMAC floorplan advance date prior to the end of the Interim Period.

7. *Setoff:* GMAC's setoff rights against obligations owed by the Debtors to GMAC on the Commencement Date or during the Interim Period, arising under the Operative Documents shall be preserved; provided, however, that during the Interim Period GMAC is prohibited from exercising any setoff rights under the Operative Documents without first

obtaining an order from the Court authorizing their right to setoff. Further, GMAC shall provide at least three (3) business days notice to the Debtors, the other notice parties listed in Paragraph 13 below and the attorneys of any official committees formed in the Cases before seeking any such order from the Bankruptcy Court, provided that, during such period, GMAC shall not, to the extent of the amounts sought to be setoff, be required to make any payments otherwise due the Debtors or provide loans, advances, other financial accommodations or other extensions of credit to the Debtors during such period.

8.      *Preservation of Rights Granted Under the Order*:

(a)     Nothing contained herein shall limit GMAC's right to request adequate protection.

(b)     If an order dismissing or converting any of the Cases under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, this Order shall be binding on the Chapter 7 trustee appointed by the Court.

(c)     If any of all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity of any payments made or obligations of the Debtors arising, accruing, or incurred in favor of or payable to GMAC pursuant to the Operative Documents during the Interim Period, (ii) the validity or enforceability of the obligations of the Debtors to GMAC which, as provided in Paragraph 6 above, shall be treated as administrative expense claims, or (iii) GMAC's entitlement to all of the rights, remedies, privileges and benefits granted in Section 364(e) of the Bankruptcy Code, this Order and/or pursuant to the Ratification Agreement and/or Operative Documents, to the extent applicable.

(d) Neither the Motion nor this Order shall itself be deemed to constitute a post-petition assumption by the Debtors of the Operative Documents pursuant to section 365 of the Bankruptcy Code.

9. *Governing Law*: Except to the extent that the Bankruptcy Code applies, the Ratification Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, excluding any conflict of law provisions which would require applications of laws of another state.

10. *Order Governs*: In the event of any inconsistency between the provisions of this Order and the Ratification Agreement and/or Operative Documents, the provisions of this Order shall govern.

11. *Binding Effect; Successors and Assigns*  This Order, including all findings herein, shall be binding upon all creditors and parties in interest in these Cases, including, without limitation, the DIP Lenders, any Committee appointed in these Cases, the Debtors and their respective successors and assigns (including any estate representative or any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of GMAC, and the Debtors and their respective successors and assigns; *provided, however,* that GMAC shall have no obligation to perform under any of the Operative Documents or to permit the use of any financing, continue any financial arrangement or extend any financing or credit to any Chapter 7 trustee or similarly responsible person appointed for the estates of the Debtors.

12. *Termination*: The Interim Period shall terminate if any of the Events of Default as set forth in the Ratification Agreement occur, unless otherwise agreed to by the Debtors and GMAC.

13. *Notice:* The Debtors shall promptly mail copies of this Order, to the extent that ECF notice is not sufficient to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for EDC, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis), (vii) the attorneys for the UAW, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, and (xi) the attorneys for the ad hoc bondholders committee, and (xii) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York, 10169 (Attn.: Daniel Wallen, Esq., Jonathan N. Helfat, Esq. and Steven B. Soll, Esq.), attorneys for GMAC.

Dated: New York, New York
     *__June 1, 2009__*

                                                *__S/ Robert E. Gerber__*
                                            UNITED STATES BANKRUPTCY JUDGE