Hearing Date and Time: To Be Determined
Objections Due: To Be Determined

Benjamin P. Deutsch (BD-5435)
SCHNADER HARRISON SEGAL & LEWIS LLP
Counsel to the Committee of Consumer Victims of General Motors
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone: (212) 973-8000
Fax: (212) 972-8798

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
            :
In re:      :           Chapter 11
            :
GENERAL MOTORS CORP., et al.,   :   Case No. 09-50026 (REG)
            :
            Debtors.    :           (Jointly Administered)
----------------------------------------------------------------X

---

**MOTION OF AD HOC COMMITTEE OF CONSUMER VICTIMS OF GENERAL MOTORS FOR APPOINTMENT OF OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO 11 U.S.C. §1102(a)(2)**

---

The Ad Hoc Committee of Consumer Victims of General Motors (the "Ad Hoc Consumer Committee"), by and through its undersigned counsel, herby moves this Court, pursuant to Section 1102(a)(2) of the United States Bankruptcy Code (the "Bankruptcy Code") to enter an Order appointing an Official Committee of Tort Claimants. In support thereof, the Ad Hoc Consumer Committee respectfully represents as follows:

## BACKGROUND

1.    On June 1, 2009 (the "Petition Date"), General Motors Corp. and certain of its affiliates ("GM" or the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

PHDATA 3200062_1

2. On June 1, 2009, the Court entered an Order directing the joint administration of the Debtors' Chapter 11 cases. The Debtors' cases are consolidated for procedural purposes only.

3. GM is one of the "Big Three" U.S. automakers. Each year it sells millions of vehicles to American consumers, some of whom unfortunately suffer injuries, sometimes catastrophic, as a result of manufacturing defects and other legally culpable conduct on the part of the Debtors.

4. The Ad Hoc Consumer Committee was formed to advance the mutual interests of its members and others similarly with regard to the financial reorganization of Chrysler.

5. The Ad Hoc Consumer Committee has more than 300 members who each have tort claims involving personal injuries (including derivative claims and wrongful death actions) against GM. The members of Ad Hoc Consumer Committee are individuals who reside throughout the country. The personal injury claims held by the Ad Hoc Consumer Committee members are valued by the members and their counsel at a total of more than $1.25 Billion.

6. By letter dated April 7, 2009, counsel for the Ad Hoc Consumer Committee advised counsel for GM that the Ad Hoc Consumer Committee had been formed and requested an opportunity to discuss the concerns of the members of the Ad Hoc Committee with regard to Chrysler's restructuring. A true and correct copy of the April 7, 2009 letter is attached as Exhibit A.

7. By letter dated June 1, 2009, Counsel for the Ad Hoc Consumer Committee requested that the Trustee appoint an Official Committee of Tort Claimants. A true and correct copy of the June 1, 2009 letter is attached as Exhibit B.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

9. This is a core proceeding pursuant to 28 U.S.C. § 157.

10. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory predicate for the relief requested herein is 11 U.S.C. §1102(a)(2).

## RELIEF REQUESTED AND BASIS THEREFOR

12. By this Motion, the Ad Hoc Consumer Committee requests that the Court enter an Order directing the appointment of an Official Committee of Tort Claimants to represent and protect the interests of persons holding personal injury, asbestos, and environmental tort claims against the Debtors.

13. Section 1102(a)(2) of the Bankruptcy Code provides that "the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure the adequate representation of creditors or of equity security holders."

14. "The statute affords no test of adequate representation, leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." *In re Beker Industries Corp.*, 55 B.R. 945, 948 (Bankr. S.D. N.Y. 1985).

15. "Because each case is distinct, there is no hard and fast rule." *In re McLean Indus., Inc.*, 70 B.R. 852, 861 (Bankr. S.D.N.Y. 1987).

16. When evaluating whether an additional committee is necessary to ensure adequate representation, courts have examined a number of factors, including: the ability of the creditors' committee to function; the nature of the case; the standing and desires of various constituencies; the motivation of the movants; the cost incurred by the appointment of the additional committee;

and the tasks that a committee or separate committee is to perform. *See In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S. D. N.Y. 2002).

17. Large, complex cases "strongly indicate" the need for additional committees representing different interests. *See In re Beker Indus. Corp.*, 55 B.R. at 949; S*ee also In re Mansfield Ferrous Castings, Inc.*, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988) ("the size and complexity of debtor's bankruptcy proceedings weigh in favor of the appointment of an additional committee").

18. The formation of an additional committee separate and apart from the creditors committee that will be appointed by the United States Trustee is essential to the adequate representation of the tort claimants.

19. The tort claimants have mutual interests that are clearly distinct from those of unsecured bondholders, dealers, suppliers and other unsecured creditors.

20. GM has filed a motion seeking approval of a sale of substantially all of its assets free and clear of all products liability and other personal injury claims arising from vehicles sold by GM prior to the closing.

21. Under the proposed transaction, other unsecured claimant constituencies will not be left out in the cold. The unsecured bondholders will receive an ownership interest in the new GM company[1] and suppliers and dealers with assumed contracts will have their pre-petition claims satisfied by the new GM. Furthermore, in exchange for an obligation of $20.56 billion,

---

[1] The Affidavit of Frederick Henderson, CEO of GM, discloses only that the 10% of the equity interests in the New GM being contributed to the Debtors will be disposed of in the Debtors' Chapter 11 cases. However, it has been widely-reported that the unsecured bondholders will receive this equity stake in the new GM. *See* Exhibit C.

the UAW Voluntary Employee Beneficiary Association will receive 17.5% of new GM's common stock, a $2.5 billion note, $6.5 billion of preferred stock and additional consideration.

22. The Chrysler LLC ("Chrysler") Chapter 11 bankruptcy case is illustrative. In Chrysler, the debtors also sought a sale free and clear of tort claims. Although a tort claimant and an asbestos claimant were appointed to the official unsecured creditors' committee in the Chrysler case, the official committee, dominated by parties whose claims will be satisfied in one way or another through the sale transaction, supported the sale. The tort claimants, who are individuals with limited financial resources, were left alone to attempt to press an objection to the sale.

23. Tort claimants will also likely have special concerns regarding: (a) the circumstances under which relief from the stay will granted to permit the liquidation of personal injury claims in the forum where they are pending; (b) the extent that relief from the stay will be granted to permit the tort claimants to recover from insurance proceeds, to the extent that any are available; (c) the extent that insurance is to be required to be maintained by the proposed asset purchaser; and (d) any special procedures that the Debtors may seek to impose regarding the adjudication of personal injury claims.

24. The tort claimants are an economically fragile constituency. Many of the tort claimants' lives have been devastated by severe injuries suffered as a result of defects in vehicles manufactured by GM. Without a voice and a champion for their mutual cause funded by the Debtors' estates, the tort claimants could be left alone, unprotected and effectively disenfranchised.

25. For these reasons, the Ad Hoc Consumer Committee requests that the Court enter an order requiring the appointment of an Official Committee of Tort Claimants.

## NOTICE

26. Notice of this Motion has been given to: (a) the U.S. Trustee; (b) the 50 largest creditors; (c) counsel for the agent under GM's prepetition secured term loan agreement; (d) counsel to the agent under GM's prepetition amended and restated secured revolving credit agreement; (e) counsel to the UAW; (f) counsel to the U.S. Treasury; (g) counsel for the International Union of Electronic, Electrical Salaried, Machine and (h) counsel for the ad hoc bondholders committee. The Ad Hoc Consumer Committee submits that no other or further notice need be provided.

## NO PRIOR REQUEST

27. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Ad Hoc Committee of Consumer Victims of General Motors respectfully requests that the Court grant its motion for an Order requiring the United States Trustee to appoint an Official Committee of Tort Claimants.

SCHNADER HARRISON SEGAL
& LEWIS LLP

Dated: June 2, 2009

By: /s/ Benjamin P. Deutsch
Benjamin P. Deutsch (BD-5435)
bdeutsch@schnader.com
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone: (212) 973-8000
Fax: (212) 972-8798

- and -

Barry E. Bressler, Esquire
bbressler@schnader.com
Richard A. Barkasy, Esquire

rbarkasy@schnader.com
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Phone: (215) 751-2000
Fax:  (215) 751-2205

*Attorneys for the Ad Hoc Committee of
Consumer Victims of General Motors*