**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re: | :: | Chapter 11 |
|  | :: | Case No. 09-50026(REG) |
| General Motors Corporation, *et al.*, | :: |  |
|  | :: | (Jointly Administered) |
| Debtors. | :: |  |

------------------------------------------------------------------------ x

## INTERIM ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363, 364 AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 6004 (A) APPROVING A DIP CREDIT FACILITY AND AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT THERETO, (B) GRANTING RELATED LIENS AND SUPER-PRIORITY STATUS, (C) AUTHORIZING THE USE OF CASH COLLATERAL, (D) GRANTING ADEQUATE PROTECTION TO CERTAIN PRE-PETITION SECURED PARTIES AND (E) SCHEDULING A FINAL HEARING

THIS MATTER having come before this Court by the motion dated June 1, 2009

(the "Motion") of General Motors Corporation ("GM") and its affiliated debtors in the above-

captioned cases, as debtors and debtors-in-possession (collectively with GM, the "Debtors"),[1]

seeking, among other things, entry of an interim order (the "Interim Order"):

(i)       Authorizing the Debtors, pursuant to sections 105, 362, 363 and 364 of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 6004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001

of the Local Bankruptcy Rules for the Southern District of New York (the "Local

Bankruptcy Rules"), to enter into the Secured Superpriority Debtor-in-Possession Credit

Agreement, by and among General Motors Corporation, as borrower, and The United

---

[1]    The Debtors in these cases include: the Company, Saturn, LLC, Saturn Distribution Corporation, and Chevrolet-Saturn of Harlem, Inc.

States Department of the Treasury and Export Development Canada ("EDC"), as lenders (together, the "DIP Lenders"), in substantially the form annexed hereto as Exhibit 1 (as the same may be further amended, supplemented, restated or otherwise modified from time to time, and together with all related agreements and documents, the "DIP Credit Facility"), and to obtain interim post-petition financing on a secured and super-priority basis pursuant to the terms and conditions thereof, up to a maximum aggregate amount of $15 billion (the "Interim Commitment") and to obtain final post-petition financing on a secured and super-priority basis pursuant to the terms and conditions thereof, up to a maximum aggregate amount of $33.3 billion (the "Commitment");

(ii)    Authorizing the Debtors to execute and deliver the DIP Credit Facility and to perform such other acts as may be reasonably necessary or desirable in order to give effect to the provisions of the DIP Credit Facility, including the unconditional, joint and several guaranty of the obligations of GM under the DIP Credit Facility by each other Debtor (each, a "Guarantor" and collectively, the "Guarantors");

(iii)   Providing, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, that all obligations owing to the DIP Lenders under the DIP Credit Facility shall be accorded administrative expense status in each of these cases, and shall, subject only to the Carve-Out (as defined below), have priority over any and all other administrative expenses arising in these cases;

(iv)    Granting the DIP Lenders security interests in and liens on (the "DIP Liens") all property and assets of each of the Debtors, of every kind or type whatsoever, including tangible, intangible, real, personal or mixed, whether now owned or hereafter acquired or arising, wherever located; all property of the estates of each of the Debtors

within the meaning of section 541 of the Bankruptcy Code; and all proceeds, rents and products of the foregoing, with the exception of certain Excluded Collateral as defined in the DIP Credit Facility (collectively, "Property") as follows:

(A)     pursuant to section 364(c)(2) of the Bankruptcy Code, valid, perfected, first-priority security interests in and liens on all property and assets of the Debtors and their estates, of every kind or type whatsoever, tangible, intangible, real, personal or mixed, whether now owned or hereafter acquired or arising, wherever located; all property of the estates of each of the Debtors within the meaning of section 541 of the Bankruptcy Code; and all proceeds, rents and products of the foregoing other than Excluded Collateral that are not subject to non-avoidable, valid and perfected liens in existence as of the Petition Date (as defined herein) (or to non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code), in each case subject only to (1) the Permitted Liens (as defined in the DIP Credit Facility); (2) the Carve-Out; (3) the adequate protection liens granted in connection with the Prepetition Revolving Credit Agreement pursuant to paragraph 6(b)(1)(x) of the Interim Order (the "Prepetition Revolving Credit Agreement Order") Under 11 U.S.C. §§ 105, 361, 362, 363 and FED. R. BANKR. P. 2002, 4001 And 9014 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Revolver Secured Parties and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Prepetition

Revolving Credit Agreement Adequate Protection Liens"); and (4) the adequate protection liens granted in connection with the Prepetition Term Loan Agreement pursuant to paragraph 5(b)(i) of the Interim Order (the "Prepetition Term Loan Facility Order"; together with the Prepetition Revolving Credit Agreement Order, the "Prepetition Revolving and Term Loan Orders") Under 11 U.S.C. §§ 105, 361, 362, 363 and FED. R. BANKR. P. 2002, 4001 and 9014 (I) Granting Adequate Protection to Term Loan Secured Parties and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "Prepetition Term Loan Adequate Protection Liens"; together with the Prepetition Revolving Credit Agreement Adequate Protection liens, the "Prepetition Revolving And Term Adequate Protection Liens").

(B)     pursuant to section 364(c)(3) of the Bankruptcy Code, valid, perfected junior security interests in and liens on all Property that is subject to non-avoidable, valid and perfected liens in existence as of the Petition Date, or to non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code, subject only to the Carve-Out.

(v)     Authorizing the application of a portion of the proceeds of the DIP Credit Facility toward payment in full of all principal, interest, letter of credit reimbursement obligations (including obligations to cash collateralize undrawn letters of credit) and other amounts due or outstanding under (a) that certain Term Loan Agreement, dated as of November 29, 2006, among GM, Saturn Corporation and JPMorgan Chase Bank,

N.A., as administrative agent, and the lenders party thereto from time to time (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "Prepetition Term Loan Agreement") secured by a first-priority lien on certain Property (the "Prepetition Term Loan Collateral") and (b) that certain Amended and Restated Credit Agrement, dated as of July 20, 2006, among GM, General Motors of Canada, Limited, Saturn Corporation, Citicorp USA, Inc., as adminsitrative agent, and the lenders party thereto from time to time (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "Prepetition Revolving Credit Agreement" and, together with the Prepetition Term Loan Agreement, the "Prepetition Term and Revolving Facilities") secured by a first-priority lien on certain Property (the "Prepetition Revolving Credit Agreement Collateral"; together with the Prepetition Term Loan Collateral, the "Prepetition Term and Revolving Facilities Collateral").

(vi)    Authorizing the Debtors to use cash collateral of the Existing UST Secured Parties (as defined below) (the "Cash Collateral")

(vii)    Granting to the Adequate Protection Parties (as defined below), as adequate protection for the potential diminution in value of their respective liens on and security interests in Property, (A) a claim as contemplated by section 507(b) of the Bankruptcy Code (an "Adequate Protection Claim"), which Adequate Protection Claim shall have a priority immediately junior to the Super-priority Claim (as defined below) and pari passu with the super-priority claims granted under the Prepetition Revolving and Term Loan Orders, (B) liens on and security interests in (the "Adequate Protection

Liens"): the Property, only to the extent of and on account of any diminution in the value of the Adequate Protection Parties' interests in the Debtors' interests in the Property on and after the Petition Date, which Adequate Protection Liens shall have a priority immediately junior to the DIP Liens on the Property, and (C) reimbursement by the Debtors of all reasonable expenses incurred in the course of these chapter 11 cases by the Adequate Protection Parties and their respective professional advisors and counsel. "Adequate Protection Parties" shall mean the secured parties under (a) that certain Loan and Security Agreement, dated as of December 31, 2008, by and between GM and the United States Department of the Treasury ("U.S. Treasury") (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "TARP Loan Agreement") (the "TARP Loan Secured Parties") and (b) that certain Credit Agreement, dated as of April 2, 2009, between GM Supplier Receivables LLC and the U.S. Treasury (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "Supplier Receivables Facility", and together with the TARP Loan Agreement the "Existing UST Loan Agreements") (the "Supplier Receivables Facility Secured Parties", and, together with the TARP Loan Secured Parties and the Supplier Receivables Secured Parties, the "Existing UST Secured Parties"). For the avoidance of doubt, the Adequate Protection Liens shall be pari passu with the any adequate protection liens granted under the Prepetition Revolving and Term Loan Orders except the Prepetition Revolving And Term Adequate Protection Liens as detailed in paragraph A above.

(viii)    Authorizing and directing the Debtors to pay, without further order of this Court, the principal, interest, reasonable fees, expenses and other amounts (including the Additional Notes (as defined in the DIP Credit Facility)) payable to the DIP Lenders and their professional advisors and counsel under the DIP Credit Facility, as the same become due, including all reasonable expenses incurred in the course of these chapter 11 cases by the DIP Lenders and their professional advisors and counsel, all as and to the extent provided in the DIP Credit Facility (provided that copies of the invoices for reimbursement by the Debtors of such expenses and fees (if any) are to be provided to any Committee and the United States Trustee on a confidential basis); and

(ix)    Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Facility and this Interim Order; and

(x)    Scheduling a final hearing (the "Final Hearing") to be held and concluded within 25 days after the Petition Date, to consider entry of a final order (the "Final Order") authorizing, on a permanent basis, the relief granted in this Interim Order and certain other further relief as described in the Motion, and approving the notice of the Final Hearing.

This Court having considered the Motion, the DIP Credit Facility, the pleadings in support thereof and the pleadings in response thereto; and due and proper notice of the Motion having been provided in accordance with Bankruptcy Rules 2002, 4001, and 6004, and Local Bankruptcy Rule 4001; and a hearing pursuant to Bankruptcy Rule 4001(c)(2) having been held and concluded on June 1, 2009 (the "Interim Hearing") to consider the interim relief requested in the Motion; and all objections, if any, to the interim relief requested in the Motion having been

withdrawn, resolved or overruled on the merits by this Court; and it appearing that granting the interim relief requested in the Motion is appropriate, fair and reasonable and in the best interests of the Debtors, their estates, creditors and other parties in interest, and is essential for the Debtors' continued operations and necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing; and upon consideration of the evidence presented, proffered or adduced at the Interim Hearing and in the Affidavit of Frederick A. Henderson, which was filed pursuant to Local Bankruptcy Rule 1007-2 on the Petition Date, the Declaration of William C. Repko in Support of Debtors' Proposed Debtor in Possession Financing Facility, and any other evidence presented at the Interim Hearing; and upon the record of the Interim Hearing; and after due deliberation and consideration and good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    On June 1, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court, commencing these cases. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases, and no statutory committee (a "Committee") has been appointed in these cases.

B.    Jurisdiction and Venue. This Court has jurisdiction over these proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2). Venue for these cases and for the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Need for Post-petition Financing.  The Debtors have demonstrated a need

for immediate access to interim post-petition financing pursuant to sections 363 and 364 of the

Bankruptcy Code and Bankruptcy Rule 4001(c)(2).  In the absence of this immediate access, the

Debtors will be unable to continue operating their business, causing immediate and irreparable

loss or damage the Debtors' estates, to the detriment of the Debtors, their estates, their creditors

and other parties in interest in these cases.  The Debtors do not have sufficient unrestricted cash

and other financing available to operate their businesses, maintain the estates' properties, and

administer these cases absent the interim relief provided in this Interim Order.

D.      No Credit Available on More Favorable Terms.  Given the Debtors'

current financial condition, available assets and current and projected liabilities, as well as

current conditions in the automotive and credit markets, the Debtors are unable to obtain

financing from any other lender on terms more favorable than those provided by the DIP Lenders

in the DIP Credit Facility.  Other than pursuant to the DIP Credit Facility, the Debtors have been

unable to obtain credit that either (i) was allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense, (ii) would have priority over all other administrative

expenses specified in sections 503(b) and 507(b) of the Bankruptcy Code, (iii) would be secured

solely by a lien on property of the Debtors' estates that is not otherwise subject to a lien, or

(iv) would be secured only by a junior lien on property of the Debtors' estates that is subject to a

lien.

E.      Good Faith of DIP Lenders.  The Debtors chose the DIP Lenders as post-

petition lenders in good faith and after obtaining the advice of experienced counsel and other

professionals.  The Debtors and the DIP Lenders proposed and negotiated the terms of the DIP

Credit Facility in good faith, at arm's length, without collusion and with the intention that all

obligations owed under the DIP Credit Facility would be valid claims accorded the priority and secured by the liens set forth herein.   The loans and extensions of credit authorized in this Interim Order are supported by reasonably equivalent value and fair consideration and the terms of the DIP Credit Facility are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.   Any credit extended, loans made, or funds advanced to the Debtors pursuant to this Interim Order or the DIP Credit Facility is deemed to be so extended, made or permitted to be used in good faith by the DIP Lenders as required by and within the meaning of section 364(e) of the Bankruptcy Code.   As good faith lenders, the DIP Lenders' claims, super-priority status, security interests and liens and other protections arising from or granted pursuant to this Interim Order and the DIP Credit Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

F.      Waiver.   Subject to entry of the Final Order, each of the Debtors hereby forever releases, waives and discharges the Existing UST Secured Parties and DIP Lenders, together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties") from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, (1) the Existing UST Loan Agreements, (2) any aspect of the pre-petition relationship, or any pre-petition transaction, between any Debtor, on the one hand, and any Released Party, on the other hand, or (3) any acts or omissions by any or all of the Released Parties in connection with any pre-petition relationship or transaction with any Debtor or any affiliate thereof including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the liens and security interests granted to any Existing UST Secured Parties pursuant to the Existing

UST Loan Agreements, "lender liability" and similar claims and causes of action, any actions, claims or defenses arising under chapter 5 of the Bankruptcy Code or any other claims or causes of action.  The waivers described in this paragraph shall be binding on the Debtors immediately upon entry of this Interim Order, and shall be binding upon each Committee and all other parties in interest sixty (60) days after entry of the Final Order if, prior to the expiration of such sixty (60)-day period, such Committee or other party in interest has not commenced, or filed a motion with this Court for authority to commence, a proceeding asserting a claim or cause of action waived under this paragraph.

G.    Notice.  Due and proper notice of the Motion and the proposed form of this Interim Order has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for Export Development Canada, (iv) the Agent under and as defined in the Prepetition Term Loan Agreement, (v) the attorneys for the Agent under and as defined in the Prepetition Term Loan Agreement, (vi) the Agent under and as defined in the Prepetition Revolving Credit Agreement, (vii) the attorneys for the Agent under and as defined in the Prepetition Revolving Credit Agreement, (viii) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis), (ix) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (x) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (xi) the United States Department of Labor, (xii) the attorneys for the National Automobile Dealers Association, (xiii) the attorneys for the ad hoc bondholders committee, and (xiv) the Internal Revenue Service.  Such notice was in the Debtors' belief, the best notice available under the circumstances, and no other or further notice need be provided.

**BASED UPON THE FOREGOING FINDINGS AND CONCLUSIONS,
AND UPON THE MOTION AND THE RECORD MADE BEFORE THIS
COURT AT THE INTERIM HEARING, AND GOOD AND SUFFICIENT
CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent provided in this Interim Order, and the
Debtors are authorized, pursuant to section 364(c) of the Bankruptcy Code, to obtain interim
post-petition financing up to the maximum aggregate amount of the Interim Commitment, on a
super-priority and secured basis, pursuant and subject to the terms and conditions of the DIP
Credit Facility and this Interim Order including, without limitation, the budget annexed as
Exhibit 2 hereto.

2.      The Debtors are hereby authorized to (a) enter into the DIP Credit Facility
and are authorized and directed to perform all obligations under the DIP Credit Facility,
including paying the principal, interest, fees, expenses, and other amounts (including the
Additional Notes) due to the DIP Lenders and their professional advisors and counsel pursuant to
the DIP Credit Facility as the same become due, which payments shall not otherwise be subject
to the approval of this Court, and (b) unconditionally guaranty such payments on a joint and
several basis as provided in the DIP Credit Facility.

3.      Upon execution and delivery of the DIP Credit Facility and entry of this
Interim Order, the Debtors' obligations under the DIP Credit Facility (including the Additional
Notes) shall constitute valid and binding obligations of the Debtors, enforceable against each
Debtor in accordance with the terms thereof.  No obligation, payment, transfer or grant of
security under the DIP Credit Facility or this Interim Order shall be stayed, restrained, voided or
recovered under any provision of the Bankruptcy Code (including section 502(d) of the
Bankruptcy Code) or other applicable law, or shall be subject to any defense, reduction, setoff,
recoupment or counterclaim.

4.      Except for the Carve-Out, and subject to entry of the Final Order, no costs or expenses of administration of these cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under any chapter of the Bankruptcy Code, shall be imposed or charged against, or recovered from, the DIP Lenders or any of the Property under section 506(c) of the Bankruptcy Code or any similar principle of law, and each of the Debtors hereby waives for itself and on behalf of its estate any and all rights under section 506(c) of the Bankruptcy Code or otherwise to assert or impose, or seek to assert or impose, any such costs or expenses of administration against the DIP Lenders or the Property.

5.      The DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed super-priority administrative expense claim in each of these cases (the "Super-priority Claim") for all loans, reimbursement obligations and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Lenders under the DIP Credit Facility or hereunder, including, without limitation, all principal, accrued interest, costs, fees, expenses and all other amounts (including the Additional Notes) due under the DIP Credit Facility, which Super-priority Claim (a) shall have priority over any and all administrative expense claims and unsecured claims (including without limiation, all Adequate Protection Claims) against each Debtor or its estate in these cases, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses and claims of the kind specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, and (b) shall at all times be senior to the rights of each Debtor or its estate, and any successor trustee or other representative of any Debtor's estate in

these cases or in any subsequent proceeding or case under the Bankruptcy Code, to the extent permitted by law. The Super-priority Claims shall be subject and subordinate only to the Carve-Out.

6.      The DIP Lenders are hereby granted, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, continuing, valid, binding, enforceable, and automatically perfected DIP Liens in and on any and all of the Property, with the priorities set forth in paragraph (iv) above, to secure all repayment and other obligations of the Debtors under the DIP Credit Facility, including the Additional Notes. Except as expressly provided in the DIP Credit Facility or this Interim Order, the DIP Liens shall not be made subject to or pari passu with any lien on, or security interest in, the Property, and shall be valid and enforceable against any trustee appointed in these cases, in any successor case, or upon the dismissal of any of these cases. The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code. Except as provided in the DIP Credit Facility, this Interim Order, or as otherwise agreed to by the DIP Lenders, the Debtors shall not grant any liens on the Property junior to the DIP Liens. In addition, except as permitted in the DIP Credit Facility, this Interim Order, or as otherwise agreed to by the DIP Lenders, the Debtors shall not incur any debt with priority equal to or greater than the DIP Credit Facility. For the avoidance of doubt, notwithstanding anything to the contrary in this Interim Order or the DIP Credit Facility, the Permitted Liens shall include any valid, perfected prepetition senior liens in any property of the Debtors' estates (or non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected only as permitted by section 546(b) of the Bankruptcy Code), including but not limited to valid, perfected prepetition senior statutory and possessory liens, and recoupment and setoff rights. Further, nothing in this Interim Order or the DIP Credit Facility shall in any way impair the right of any

claimant with respect to any alleged reclamation right or impair the ability of a claimant to seek adequate protection with respect to any alleged reclamation right; provided, however, that nothing in this Interim Order or the DIP Credit Facility shall prejudice any rights, defenses, objections or counterclaims that the Debtors, the DIP Lenders, any agent under the Prepetition Term and Revolving Facilities, the agent under the TARP Loan Agreement, the Committee or any other party in interest may have with respect to the validity or priority of such asserted liens or rights, or the type (or amount), if any, of required adequate protection.

7.    Except as expressly agreed by the DIP Lenders, the obligations of the Debtors, including, without limitation, all obligations under the Additional Notes (as defined in the DIP Credit Facility), shall be unconditionally guaranteed on a joint and several basis by each of the entities listed on Schedule 1.1B to the DIP Credit Facility.  Except as otherwise agreed to by each DIP Lender, the obligations of the Debtors shall further be unconditionally guaranteed on a joint and several basis by each and every subsequently acquired or organized direct or indirect domestic subsidiary of any Debtor (other than General Motors of Canada Limited and direct and indirect subsidiaries of General Motors of Canada Limited), each of which shall be made a guarantor under the DIP Credit Facility immediately upon its acquisition and/or organization as provided in the DIP Credit Facility.

8.    The Adequate Protection Parties are hereby granted, pursuant to sections 361, 362, 363, 364 and 507 of the Bankruptcy Code, the Adequate Protection Claims and Adequate Protection Liens with the priorities set forth in paragraph (vii) hereof, in each case to the extent of any diminution in the value of the relevant Adequate Protection Party's interests in the Debtors' interests in the Property (including Cash Collateral) occurring on or after the Petition Date.

9.      The Debtors are hereby authorized to use the Cash Collateral in accordance with the Initial Budget, as defined in the DIP Credit Facility, until the DIP Lenders have exercised remedies as a result of an Event of Default under, and as defined in, the DIP Credit Facility.

10.     The DIP Liens, and the Super-priority Claim, Adequate Protection Liens and Adequate Protection Claims shall continue in any superseding case or cases for any or all of the Debtors under any chapter of the Bankruptcy Code, and such liens, security interests and claims shall maintain their priorities as provided in this Interim Order.  If an order dismissing any of these cases, pursuant to section 1112 of the Bankruptcy Code or otherwise, is at any time entered, such order shall provide that (A) the DIP Liens, and the Super-priority Claim, Adequate Protection Liens and Adequate Protection Claims shall continue in full force and effect, shall remain binding on all parties in interest in these cases, and shall maintain their priorities as provided in this Interim Order, until all obligations of the Debtors under the DIP Credit Facility (with respect to the DIP Liens and Super-priority Claim), and the Existing UST Loan Agreements (with respect to Adequate Protection Liens and Adequate Protection Claims) have been paid and satisfied in full.  Notwithstanding the dismissal of any or all of these cases, this Court shall retain jurisdiction with respect to enforcing the DIP Liens and Super-priority Claim and the DIP Lenders' rights with respect thereto, and the Adequate Protection Liens and Adequate Protection Claims, and the Adequate Protection Parties' rights with respect thereto.

11.     Except as provided in this Interim Order or in the DIP Credit Facility, the DIP Liens and the Super-priority Claim, Adequate Protection Liens and Adequate Protection Claims, and all rights and remedies of the DIP Lenders shall not be modified, impaired or discharged by the entry of an order or orders confirming a plan or plans of reorganization in any

or all of these cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, each Debtor

waives any discharge as to any remaining obligations under the DIP Credit Facility including,

without limitation, the Additional Notes.

        12.    This Interim Order shall be sufficient and conclusive evidence of the

validity, perfection and priority of the DIP Liens and the Adequate Protection Liens, without the

necessity of filing or recording any financing statement or other instrument or document, or the

taking of any other act that otherwise may be required under state or federal law, rule, or

regulation of any jurisdiction to validate or perfect the DIP Liens or the Adequate Protection

Liens or to entitle the DIP Lenders and the the Adequate Protection Parties to the priorities set

forth herien.  The DIP Liens and Super-priority Claim granted to the DIP Lenders pursuant to

this Interim Order and the DIP Credit Facility with respect to the property of the Debtors' estates

shall be perfected by operation of law upon entry of this Interim Order by the Court.  The

Debtors may execute, and the DIP Lenders or the Adequate Protection Parties, as applicable are

hereby authorized to file or record, financing statements or other instruments to evidence the DIP

Liens and the Adequate Protection Liens, and the Debtors are hereby authorized and directed,

promptly upon demand by any DIP Lender or Adequate Protection Party, to execute, file and

record any such statements or instruments as the DIP Lenders or such Adequate Protection Party

may request; provided, however, that no such execution, filing, or recordation shall be necessary

or required in order to create or perfect the DIP Liens or any Adequate Protection Lien, and

further, if the DIP Lenders or any Adequate Protection Party, each in its sole discretion, shall

choose to file such financing statements, mortgages, notices of lien or similar instruments or

otherwise confirm perfection of such liens, all such documents shall be deemed to have been

filed or recorded as of the Petition Date.  A certified copy of this Interim Order may, in the

discretion of the DIP Lenders or any Adequate Protection Party, as applicable, be filed with or recorded in any filing or recording office in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized to accept a certified copy of this Interim Order for filing and recording, and to deem this Interim Order to be in proper form for filing and recording.

13.    The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (A) the Debtors to grant the DIP Liens, the Super-priority Claim, the guaranties and other security provided for in the DIP Credit Facility, and to perform such acts as the DIP Lenders may request to assure the perfection and priority of the DIP Liens (B) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as any Adequate Protection Party may request to assure the perfection and priority of the Adequate Protection Liens, (C) the implementation of the terms of this Interim Order, (D) the repayment of Prepetition Term and Revolving Facilities as detailed in paragraph 18 hereof, and (E) immediately upon the occurrence of an event of default under the DIP Credit Facility or the maturity of the credit extensions provided thereunder, the exercise by the DIP Lenders of all rights and remedies under such agreement without further application to or order of this Court; provided, however, that prior to exercising any setoff of amounts held in any accounts maintained by any Debtor or enforcing any liens or other remedies with respect to the Property, the DIP Lenders shall provide to the Debtors (with copies to any Committee and the U.S. Trustee) five business days' prior written notice; provided further, however, that, upon receipt of any such notice, the Debtors may only make disbursements in the ordinary course of business and with respect to the Carve-Out, but may not make any other disbursements.  Upon the occurrence and during the continuance of an Event of Default under the DIP Credit Facility,

the DIP Lenders and their respective representatives shall be granted access to all locations in support of the enforcement and exercise of their remedies.

14.    Upon the occurrence and during the continuance of any Event of Default under the DIP Credit Facility, and subject to the five (5) business day notice provision set forth in paragraph 13 above, the DIP Lenders may compel any Debtor to exercise such Debtor's rights (if any) to sell any or all of the Property in its possession pursuant to section 363(b) of the Bankruptcy Code or any other applicable law, the DIP Lenders shall be entitled to exercise their right (if any) to credit bid the DIP Liens in any such sale pursuant to section 363(k), or other applicable provision of the Bankruptcy Code or other applicable law, and the Debtors shall use best efforts (subject to applicable law) to exercise their rights (if any) to sell such Property if requested by the DIP Lenders (pursuant to section 363 of the Bankruptcy Code or otherwise).

15.    As used in this Interim Order, "Carve-Out" means, following the occurrence and during the continuance of an Event of Default under the DIP Credit Facility, an amount sufficient for payment of (A) allowed professional fees and disbursements incurred by professionals retained by the Debtors and any Committee (after application of all outstanding retainers held by those professionals) and allowed expenses of Committee members in an aggregate amount not to exceed $20,000,000 (plus all such professional fees and disbursements and Committee member expenses that are unpaid after application of all outstanding retainers, and that were accrued or incurred prior to the occurrence of the Event of Default, to the extent allowed by this Court at any time), (B) fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of this Court (C) fees and disbursements incurred by a chapter 7 trustee (if any) not to exceed $2,000,000, and (D) additional fees expenses to incurred by a privacy ombudsman retained pursuant to section 332 of the Bankruptcy Code; provided, however, that, so long as an

Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable under 11 U.S.C. §§ 330 and 331, as the same may become due and payable, and the same shall not reduce the Carve-Out; provided further, however, that the Carve-Out shall not include any fees or disbursements related to the investigation of, preparation for, or commencement or prosecution of, any claims or proceedings against the DIP Lenders, the Adequate Protection Parties or EDC, in its capacity as lender under the Canadian Facility (as defined in the DIP Credit Facility) and on behalf of the Governments of Ontario and Canada, or the claims or security interests in or liens on the property granted under the Canadian Facility, or their claims or security interests in or liens on the Property granted under the DIP Credit Facility or this Interim Order.

16.    The DIP Lenders have acted in good faith in connection with the DIP Credit Facility and this Interim Order and their reliance on the provisions of this Interim Order when extending credit under the DIP Credit Facility will be in good faith.  Accordingly, if any provision of this Interim Order is hereafter modified, vacated, or stayed by subsequent order of this Court or any other court for any reason, the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

17.    The DIP Lenders may exercise their right (if any) to credit bid the loans and the Additional Notes under the DIP Credit Facility (pursuant to section 363(k) or other applicable provision of the Bankruptcy Code or other applicable law), in whole or in part, in connection with any sale or other disposition of some or all of the Property in these cases.

18.    (a) On the date of entry of the Final Order, the Debtors shall be authorized to apply and shall, within one business day thereof, apply the proceeds of the DIP Credit Facility to repay amounts outstanding under the Prepetition Term and Revolving Facilities as of the

repayment date (the "Payment Date"), including principal, accrued and unpaid interest, fees, letter of credit reimbursement obligations (including obligations to cash collateralize undrawn letters of credit) and any other amounts due or owed by the Debtors thereunder.

(b)    Upon payment ("Payment") of all obligations under the Prepetition Term and Revolving Facilities on the Payment Date, all commitments under each of the Prepetition Term and Revolving Facilities shall be deemed irrevocably terminated.  Further, upon Payment, the holders of such obligations (the "Prepetition Term and Revolving Secured Parties") shall have no further rights with respect to the Debtors, the DIP Lenders, the Property or any claims or liens relating thereto (all of which liens and claims shall be deemed automatically satisfied and released without further action), whether such claims or liens arise under the Prepetition Term Credit Agreement, Prepetition Revolving Credit Agreement, related documentation, or otherwise, and the Debtors and their estates shall have no further obligations to the Prepetition Term and Revolving Secured Parties in connection with the Prepetition Term and Revolving Facilities.

(c)    The Prepetition Term and Revolving Secured Parties' liens, claims and interests in the Property, any adequate protection claims or adequate protection liens, shall expire upon the Payment Date.  Without limiting the generality of the foregoing, upon Payment, the Prepetition Term and Revolving Secured Parties (i) authorize the Debtors to file Uniform Commercial Code termination statements, mortgage releases and all other documents necessary to evidence the release of the liens securing the obligations under the Prepetition Term and Revolving Facilities and (ii) will take all such action and deliver all such other instruments and documents as may be reasonably requested by the Debtors or the agents under the Prepetition Term and Revolving Facilities to effectuate or evidence the termination of all such claims of the

Prepetition Term and Revolving Secured Parties, in each case, at the sole cost and expense of the Debtors.

(d)    Effective upon entry of the Final Order, the Debtors (on behalf of their estates) and any successor thereto release the Prepetition Term and Revolving Secured Parties and each of their directors, officers, appointees, counsel, advisors and employees serving in any capacity or function, including as a fiduciary, agents, advisors, shareholders, subsidiaries, affiliates, heirs, executors, administrators, attorneys, advisors, successors and assigns from, against and with respect to any and all actual or potential demands, claims, actions, causes of action (including derivative causes of action), suits assessments, liabilities, losses, costs, damages, penalties, fees, charges, expenses and all other forms of liability whatsoever, in law or equity, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising under the Bankruptcy Code, state law or otherwise now existing or hereafter arising, directly or indirectly related to the Prepetition Term and Revolving Facilities and any and all dealings between the Prepetition Term and Revolving Secured Parties in connection with the Prepetition Term and Revolving Facilities.

(e)    Immediately upon the Payment, the DIP Lenders shall be deemed to have obtained a secured, non-avoidable, perfected security interest in and lien on the Prepetition Term and Revolving Facilities Collateral.

19.    Notwithstanding anything herein to the contrary, none of the proceeds of any extension of credit under the DIP Credit Facility shall be used in connection with (a) any investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders or Existing UST Secured Parties or EDC, in its capacity as lender under the Canadian Facility and on behalf of the

Governments of Ontario and Canada, (b) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders or Existing UST Secured Parties or EDC, in its capacity as lender under the Canadian Facility and on behalf of the Governments of Ontario and Canada, or any of their respective affiliates with respect to any loans, extensions of credit or other financial accommodations made to any Debtor prior to, on or after the Petition Date or (c) any loans, advances, extensions of credit, dividends or other investments to any person not a Borrower or Guarantor other than for certain permitted exceptions set forth in the DIP Credit Facility.

20.    INTENTIONALLY OMITTED.

21.    In the event of any inconsistency between the terms and conditions of the DIP Credit Facility and this Interim Order, the terms and conditions of this Interim Order shall control.

22.    The parties to the DIP Credit Facility may, from time to time, enter into waivers or consents with respect thereto without further order of this Court.  In addition, the parties to the DIP Credit Facility may, from time to time, enter into amendments with respect thereto without further order of this Court, provided, that, (A) the DIP Credit Facility, as amended, is not materially different from the form approved by this Interim Order; (B) notice of all amendments is filed with this Court; and (C) notice of all amendments (other than those that are ministerial or technical and do not adversely affect the Debtors) are provided in advance to counsel for any Committee, all parties requesting notice in these cases and the U.S. Trustee.  For purposes hereof, a "material" difference from the form approved by this Interim Order shall mean any difference resulting from a modification that operates to (1) shorten the maturity of the extensions of credit under the DIP Credit Facility or otherwise require more rapid principal

amortization than is currently required under the DIP Credit Facility, (2) increase the aggregate amount of any of the commitments thereunder, (3) increase the rate of interest or any other fees or charges payable thereunder (other than to the extent contemplated in the DIP Credit Facility as in effect on the date of the Final Order), (4) add specific new Events of Default (as defined in the DIP Credit Facility) or shorten the notice or grace period in respect to any Default (as defined in the DIP Credit Facility) or Event of Default currently in the DIP Credit Facility, (5) enlarge the nature and extent of default remedies available to the DIP Lenders or agents under the DIP Credit Facility following the occurrence and during the continuance of an Event of Default, (6) add additional financial covenants or make any financial covenant or other negative or affirmative covenant or representation and warranty more restrictive on the Debtors, or (7) otherwise modify the DIP Credit Facility in a manner materially less favorable to the Debtors and their estates.

23.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, and shall be deemed effective and enforceable immediately upon its entry and nunc pro tunc to the Petition Date.

24.    The rights, benefits, and privileges granted pursuant to this Interim Order (including, without limitation, the DIP Liens, Super-priority Claim, Adequate Protection Liens and Adequate Protection Claims granted herein) shall attach and be enforceable against the bankruptcy estate of any direct or indirect subsidiary of the Debtors that is a party to the DIP Credit Facility and which hereafter becomes a debtor in these procedurally consolidated cases automatically and without further court order on an interim basis and, subject to entry of the Final Order on notice, on a final basis.  Except as may be provided in the Final Order, such

subsidiary shall be deemed a "Debtor" hereunder effective as of the date such subsidiary files a petition and becomes a debtor in these cases.

25.     Except as otherwise provided in this Interim Order, the provisions of the DIP Credit Facility and the provisions of this Interim Order, including all findings of fact and conclusions of law set forth herein, shall, immediately upon entry of this Interim Order in these cases, become valid and binding upon the Debtors, the DIP Lenders, the Adequate Protection Parties, all other creditors of the Debtors, any Committee, and all other parties in interest in these cases and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of any Debtor's estate in these cases or in any subsequent chapter 7 case. In no event shall the DIP Lenders, whether in connection with the exercise of any rights or remedies under the DIP Credit Facility or otherwise, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Lenders do not consittute, within the meaning of 42 U.S.C. §§ 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).

26.     The Final Hearing shall be held on June 25, 2009 at 9:00 a.m. New York time, at the United States Bankruptcy Court for the Southern District of New York, or at such other time and place as this Court may determine. Nothing in this Interim Order shall be

construed as precluding this Court from entering a Final Order containing provisions inconsistent

with or contrary to any of the provisions of this Interim Order, subject to the DIP Lenders' rights

under section 364(e) of the Bankruptcy Code with respect to monies advanced prior to entry of

the Final Order.

27.    The Debtors shall serve copies of this Interim Order (which shall

constitute adequate notice of the Final Hearing), including notice that the Debtors will seek at the

Final Hearing a waiver of rights under section 506(c) of the Bankruptcy Code) within three (3)

business days after the date this Interim Order is entered in these cases, on the following:  (A) all

parties that received notice of the Interim Hearing, (B) any other party that has filed a request for

notices in these cases, (C) the U.S. Trustee, (D) counsel for any Committee, (E) all known

lienholders, and (F) the cash management banks with which the Debtors maintain deposit,

lockbox, concentration, disbursement and similar accounts.  Any party in interest objecting to the

relief requested by the Debtors at the Final Hearing shall file a written objection with this Court,

and shall serve a copy of the objection on (i) The Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004; (ii) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(iii) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan

48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, of

counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New

York, NY 10281; Attn: John J. Rapisardi, Esq.; (v) The U.S. Treasury, 1500 Pennsylvania

Avenue, N.W., Washington, D.C. 20220; Attn: Chief Counsel, Office of Financial Stability; (vi)

Vedder Price P.C., counsel to EDC, 1633 Broadway, 47th Floor, New York, NY 10019, Attn:

Michael J. Edelman, Esq. and Michael L. Schein, Esq. and McMillan LLP, counsel to EDC, Brookfield Place, Suite 4400, 181 Bay Street, Toronto, Ontario, Canada M5J 2T3, Attn: Peter A. Willis; (vii) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Peter V. Pantaleo, Esq., and David J. Mack, Esq., attorneys for the Revolver Agent; (viii) Morgan, Lewis & Bockius LLP, 101 Park Ave, New York, NY 10178, Attention: Richard S. Toder, Esq., Andrew D. Gottfried, Esq., and Richard S. Petretti, Esq., attorneys for the Term Loan Agent; (ix) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis); (x) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; (xi) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers— Communications Workers of America; (xii) the U.S. Department of Labor; (xiii) the attorneys for the National Automobile Dealers Association; (xiv) the United States Attorney's Office, Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, NY 10007; (xv) the attorneys for the ad hoc bondholders committee; and (xvi) counsel to any Committee; and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than June 19, 2009 at 4:00 p.m. New York time, and any response to such objections shall be filed and served no later than June 23, 2009 at 6:00 p.m. New York time.

28.    The Interim Hearing was held pursuant to Rule 4001 of the Federal Rule of Bankruptcy Procedure.

29.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the DIP Credit Facility and this Interim Order in all respects; provided, however, that in the event this Court abstains from exercising or declines to exercise jurisdiction with

respect to any matter provided for in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

Dated: June 2, 2009
      New York, New York

                                      */s/ Robert E. Gerber*
                                      HON. ROBERT E. GERBER
                                      UNITED STATES BANKRUPTCY JUDGE