UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                           :

In re                              :       Chapter 11 Case No.
                                           :

GENERAL MOTORS CORP., et al.,     :       09-_____ ( )
                                           :

Debtors.                   :      (Jointly Administered)
                                           :
------------------------------------------------------------x


STATE OF NEW YORK        )
                                )    ss:
COUNTY OF NEW YORK      )


## DECLARATION OF ALBERT KOCH

I, Albert A. Koch, make this Declaration under 28 U.S.C. Section 1746 and state:

       I am Vice Chairman and Managing Director of AlixPartners, LLP[1], an interim management and financial advisory firm with 14 offices throughout the United States, Europe and Asia. I make this Declaration in support of the debtor General Motors Corporation's, and its wholly-owned direct subsidiary, Chevrolet-Saturn of Harlem, Inc. and its wholly-owned indirect subsidiaries, Saturn Corporation and Saturn Distribution Corporation (collectively, "GM", the "Debtors", or the "Company") motion to approve the sale of substantially all of the Debtors' assets to a U.S. Treasury-sponsored purchaser. Except as otherwise indicated, my testimony in this Declaration is based upon my personal knowledge and experience acquired in the ordinary course of my profession, my review of relevant documents and information supplied to me by members of GM's management team or professionals retained by the Company, or my opinion based upon my experience and knowledge of the automotive industry and GM's businesses and financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

---

[1] The actual entity retained by the Debtors is AP Services, LLC, an affiliate of AlixPartners LLP.

## I.    *Qualifications*

I have considerable experience with Chapter 11 restructuring and other distressed company circumstances, principally advising debtors.  I have more than 40 years experience in restructuring, bankruptcy, finance, corporate acquisitions and accounting matters.  For the past 15 years I have focused exclusively on complex corporate restructurings and reorganizations for troubled companies both in court and out of court.

My significant recent reorganization and restructuring experience includes serving as the Chief Financial Officer of Kmart Corporation during its bankruptcy proceeding, serving as Chairman, President and CEO of Champion Enterprises where I led a turnaround that avoided a bankruptcy proceeding, serving as Chief Financial Officer of Oxford Health Plans where we obtained new capital and turned around the business that otherwise would have been placed into rehabilitation by the State of New York Insurance Commissioner and serving as President and CEO of Handleman Company where we are presently liquidating the business operations in a non-bankruptcy venue and where I have successfully sold all of the Company's operating assets, repaid the secured lenders, settled employee liabilities, paid most other unsecured obligations and am now collecting claims that will be settled following state mandated procedures.  All of the foregoing companies were SEC registrants during the period where my work was performed.

Additional restructuring engagements where I have played a role as a member of the engagement team or as an overseer to the work performed by my firm include Peregrine, Inc., New Century Financial, Safety-Kleen Corp., Calpine Corporation, AmeriServe Food Distribution Company, Breed Technologies, Inc. and Schwinn/GT Corporation.

I have provided extensive consulting, financial and restructuring services to the automotive industry since moving to Southeast Michigan in 1981.  In addition to my work for GM, I also have been an advisor to or part owner of numerous other companies that supply the OEM automotive industry including AZ Automotive, ASC, Inc., Peregrine, Inc., Breed Technologies, Teksid Automotive, UMi, Inc., Federal-Mogul Corp. and Ring Screw Works.

I hold a B.S. in Accounting from Elizabethtown College.  I am a Certified Public Accountant, a Certified Turnaround Professional and a Fellow of the American College of

Bankruptcy. I am a member of the American Bankruptcy Institute and the American Institute of Certified Public Accountants. I received the Elijah Watt Sells Gold Medal for attaining the highest grades in the United States when I took the CPA exam.

Prior to joining AlixPartners my most significant experience was as a partner for 14 years with Ernst & Young serving both in its National Office and as Managing Partner of that firm's Detroit office.

A copy of my curriculum vitae is annexed hereto as Exhibit A.

AlixPartners is recognized for its expertise in providing financial advisory and interim management services in financially distressed situations including advising debtors, creditors and other stakeholders in Chapter 11 situations and serving as financial advisor or interim managers in numerous cases.

AlixPartners has acted as financial advisor, crisis manager and corporate officer in both in-court and out-of-court restructurings of companies of various sizes from middle market to large multinational corporations across a wide variety of industries. The clients of AlixPartners include debtors, creditors, corporate parents, financial sponsors and trustees. The majority of our work is performed for debtors both in financial advisory and management roles.

AlixPartners has served a number of major restructurings over the years. In addition to those situations already mentioned some of these recent cases not in the automotive industry include Refco, Calpine, WorldCom, Bearingpoint, LyondellBassell, General Growth Properties, Mirant Energy, Toys 'R Us and Solo Cup.    AlixPartners has also served a number of automotive restructurings including BHM Technologies, Dana Corporation, Dura Automotive, Eurolites, Exide, Hayes Lemmerz, Motor Coach Industries, Oxford Automotive and Remy International, Inc.

## II.  *AlixPartners Services to GM*

I have personally worked extensively with GM over the past several years. This includes serving GM Powertrain in 1998 as it evaluated its strategic future and supporting the Vice

Chairman and CFO and the Corporate Controller of GM from May 2006 through December 2007 as they restructured the Finance organization. I have also served as the AlixPartners lead Managing Director to GM since December 2008. During this period the Company has developed viability plans, negotiated with numerous parties at interest and is now focused on consummating the sale of its business operations to a U.S. Treasury-sponsored purchaser. In this role I have participated actively in the Company's senior restructuring committee that has met about three times weekly to review all different aspects of the restructuring. The committee includes the President & CEO, CFO, General Counsel and a number of other Company executives and other professionals who have been assisting with the restructuring. It also included a week-long series of meetings where a deep dive into the Company's viability plan was presented to the CEO and CFO. My involvement also has included extensive participation in the Delphi situation as the Company has endeavored to find a solution. Other members of the AlixPartners' team have been involved in assisting with preparations for the 363 sale, developing operating plans to acquire select U.S. locations of Delphi, contract review protocol, identifying dealers whose contracts would be transitioned to wind down agreements, assisting with the mechanics of preparing for a bankruptcy filing, working with the Treasurer's office to improve cash forecasting and other tasks that assisted Company employees to prepare for and execute the restructuring. Supporting me with the ongoing GM engagement has been a team of approximately one hundred full and part-time employees working at various company locations around the world. As a result of our longstanding relationship with GM and the work described above, I and other AlixPartners professionals have developed a substantial knowledge of the Company, its manufacturing and distribution operations, and its key employees in the United States, Canada, Europe and Asia.

In connection with the GM Board's consideration as to whether to approve the 363 Transaction, I was asked to prepare an analysis that would estimate, under a hypothetical Chapter 7 liquidation of GM's assets as of June 1, 2009, the potential cash distributions to holders of claims against GM's estate ("the Liquidation Analysis"). The Liquidation Analysis is attached hereto as Exhibit B. The AlixPartners' team has been working at GM since December, 2008. The staff that assisted me in preparing the liquidation analysis was Ted Stenger, Marc Brown and Kurt Beckeman.

Ted Stenger is a Managing Director of AlixPartners LLP where he has worked since 1990 in advising debtors, lenders and equity holders in restructurings and bankruptcies both in-court and out-of-court. He also has served in interim roles as CEO, CRO, CFO and Treasurer. Mr. Stenger has served in numerous troubled company situations including Kmart Corporation, Dana Automotive, Fleming Companies, American Rice, Fruit of the Loom, Inc. and Allied Holdings, Inc. He earned a B.A. from Notre Dame University in 1979 and is a Certified Insolvency and Reorganization Advisor and a Fellow of the American College of Bankruptcy.

Marc Brown is a Director of AlixPartners LLP where he has worked for more than eight years in providing valuation, corporate finance and restructuring consulting to a wide variety of clients including many operating in the automotive industry. Marc graduated with high honors from the University of Illinois with a B.S. in Finance and holds an MBA with honors from the University of Chicago Graduate School of Business. In addition, he is a CFA charter holder and a member of the CFA institute, CFA Society of Chicago, Business Valuation Association and American Bankruptcy Institute.

Kurt Beckeman is a Director of AlixPartners LLP where he has worked since 2000. He has advised both debtors and secured lenders in restructurings and bankruptcies both in-court and out-of-court. Mr. Beckeman has acted as an advisor to numerous troubled companies including Federal-Mogul Corporation, Dura Automotive, Jitney Jungle and numerous other automotive tier two suppliers. He earned a B.A. from Michigan State University in 1993 and an MBA from the University of Chicago in 2000.

### III.    Compensation

The terms of AlixPartners' compensation are fully set forth in the Engagement Letter, dated May 29, 2009 and attached to this Declaration as Exhibit C. Prior to the Petition Date the Company paid AlixPartners total fees of $38.1 million and reimbursed expenses in the amount of $1.8 million for all services rendered.

At various times prior to the petition date AlixPartners received retainer amounts from GM that total $20 million. AlixPartners has agreed to waive any unpaid pre-Petition fees and

expenses that are in excess of the Retainer. As a result, AlixPartners is not owed any sums for services provided pre-Petition. AlixPartners intends for the unapplied portion of the Retainer to constitute a general security retainer for post-Petition services and expenses until the conclusion of these Chapter 11 cases, at which point AlixPartners will apply the Retainer against its then unpaid fees and expenses in respect of AlixPartners' fee applications filed in accordance with applicable provisions of the Bankruptcy Code. Any excess retainer will be refunded to the Company. On May 30, 2009, I was appointed Chief Restructuring Officer ("CRO"). The Debtors will file an application to retain AP Services, LLC to provide my services as CRO and to provide interim employees to assist me in fulfilling my responsibilities as CRO.

## IV.    Information Relied Upon

In preparing the Liquidation Analysis, I reviewed and relied upon various GM financial, operational and other records including internal estimates of value, market-related documents and analyses, third-party and market based data and analyses, as well as discussions with General Motors management, members of my own team and various other professionals.

## V.    Liquidation Analysis

### A.    Overview and Conclusion

The Liquidation Analysis was prepared to assess the liquidation recovery values available to various classes of creditors. This hypothetical analysis involves assessing the value that the Estate would recover through the wind-down and sale of the assets and using the proceeds of these sales to settle claims against the Debtors. I have estimated a range of recoveries depending largely upon whether the assets are liquidated at my high estimate or the low estimate. For purposes of this Declaration I will refer to the range of proceeds, costs to liquidate and recovery to the various creditors. A liquidation of a company can occur over varying periods; given the size and complexity of GM, I assumed a two-year period where the assets of the Company were wound-down and sold. My analysis assumes that the Debtors commence a liquidation under Chapter 7 of the U.S. Bankruptcy Code on June 1, 2009.

As set forth in the attached Liquidation Analysis, under a hypothetical liquidation scenario as of June 1, 2009, after accounting for liquidation costs, which I estimate to be between $2.0 and $2.7 billion, the total proceeds available for distribution to creditors would be between $6.5 billion and $9.7 billion.

Of the $6.5 to $9.7 billion in total proceeds estimated to be available for distribution to creditors under a liquidation scenario, GM's secured bank lenders, who in the aggregate hold $5.4 billion in secured claims under the Revolving Credit Facility and Term Loan, are estimated to recover between 26.3% and 77.1% of their claims. The U.S. Treasury, which holds $20.5 billion in senior claims under the U.S. Treasury Facility, is estimated to recover between 12.7% and 23.7% of those claims.

There will be no proceeds available for distribution to unsecured creditors.

B.    Significant Assumptions

The Liquidation Analysis is based on a variety of assumptions, which are set forth in our report and include:

1.    A liquidation of GM would be one of the largest and most complicated liquidations in history, and given that this would be the first major domestic OEM to liquidate in recent history, there is no relevant precedent.

2.    The liquidation of most of the assets would take place within two years.

3.    No DIP financing is available to the Debtors. The Liquidation Analysis assumes that the bankruptcy court approves the use of cash collateral to fund the liquidation of the Debtors' assets.

4.    The net book value of assets (excluding cash) is based on the March 31, 2009 balance sheet. The estimated cash and outstanding U.S. Treasury obligations are based on the Company's "Plan B" 13-Week Cash Forecast dated May 26, 2009.

5.    Given the current state of the U.S. and global economies, industry overcapacity both in North America and globally, and the sheer volume of GM's assets, among other things, GM's assets would be sold at depressed prices. These prices would likely be depressed further if additional OEM's or suppliers were also liquidating at the same time. We have considered the recent announcement by Chrysler of the shutdown and sale of certain manufacturing and assembly facilities and believe that it will likely drive proceeds to the lower end of our range of recoveries, or possibly below.

6.    The Liquidation Analysis assumes a Chapter 7 liquidation of the Debtors would result in liquidation or government intervention at many of the Debtor's foreign subsidiaries, resulting in little or no equity value. Certain other entities could potentially be sold at a distressed going concern value in order to maximize the value. The going concern value of the select non-debtor subsidiaries is based on a discussion with management and a review of certain historical and prospective financial information. The value of the non-debtor subsidiaries takes into consideration the impact of the U.S. Chapter 7 liquidation process, including the actions of foreign governments, the current status of the financial and automotive markets and the potential "damaged goods" or fire sale perception of potential bidders.

C.    Proceeds Available for Distribution to Creditors.

To determine the recovery to creditors I have estimated a range of recoveries from the sale of assets, a range of costs that will be incurred to wind down the Estate and monetize the assets, and the net proceeds available for distribution.

1.  Range of Recovery on the Major Asset Classes.

    a)  Accounts Receivable is comprised of receivables from GMAC, Floor Plan Lenders and other third-party receivables.  The net book value of Accounts Receivable of the Debtors was $1.31 billion as of March 31, 2009 and my analysis reflects a range of recovery of approximately $450 to $570 million.

    b)  Inventory is composed of Finished Goods, Raw Materials, Supplies and Other.  The net book value of the Debtors' inventory was $3.21 billion as of March 31, 2009.  My analysis indicates a recovery range of approximately $630 to $940 million.

    c)  Property, Plant & Equipment is comprised of Machinery and Equipment, Real Estate and Other.  These assets had a net book value of $17.7 billion as of March 31, 2009 and my analysis indicates a range of recovery of approximately $1.28 to $2.11 billion.

    d)  Other Assets is comprised of Operating Lease Assets, Restricted Cash, Derivative Assets and Other Current and Non-Current Assets.  Other Assets had a net book value of $4.10 billion as of March 31, 2009 and my estimated recovery of these assets ranges from approximately $250 to $430 million.

    e)  Technology and Trademarks are generally not carried on the balance sheet of the Debtors; my analysis assumes a recovery range of approximately $980 million to $1.19 billion.

    f)  Equity in Subsidiaries is composed of the residual equity interests of the Debtors in both domestic and foreign subsidiaries.  I estimate a recovery range of $3.51 to $4.46 billion for the Equity in Subsidiaries.

2.    Costs Associated with Wind Down

a)    Chapter 7 trustee fees include those fees associated with the appointment of a Chapter 7 trustee in accordance with section 326 of the U.S. Bankruptcy Code. Due to the size of the estimated distributions, the Chapter 7 trustee fees are estimated at 1% of the total proceeds generated from non-cash assets during the liquidation rather than the 3% maximum allowed under the U.S. Bankruptcy Code.

b)    Chapter 7 professional fees include the cost of liquidators, attorneys, accountants, brokers and other professionals retained by the Chapter 7 Trustee during the liquidation period. The Chapter 7 professional fees are estimated at 1.5% of the total proceeds generated from non-cash assets during the liquidation period.

c)    Wind down costs reflect the payment of corporate payroll and operating costs during liquidation, based upon the assumption that certain plant and corporate personnel will be retained to oversee the liquidation process. This includes the maintenance and closure of accounting records and the completion of certain administrative tasks including payroll, tax forms, and records. In addition, minimal staffing at the physical locations would be required to complete the closure of the facilities, disassemble the equipment, and oversee the sale process for equipment and real estate. Certain facility expenses would continue to be incurred until all of the facilities are liquidated.

3.    Creditor Recoveries

a)    The estimated proceeds available to be distributed to creditors, ranges between $6.5 and $9.7 billion after taking into consideration the costs associated with the wind-down of the estate. The Liquidation Analysis

assumes that there are no proceeds from the recoveries of any potential preferences, fraudulent conveyances, or other causes of action.

b) As of March 31, 2009 there was $4.47 billion dollars outstanding under the Revolving Credit Facility of which $600 million dollars was related to GM Canada collateral and was reflected on the GM Canada balance sheet. The Liquidation Analysis assumes the $600 million reflected on the GM Canada balance sheet is satisfied by the liquidation of the Canadian collateral. The Revolving Credit Facility's secured claim in relation to the Debtors is estimated to be $3.87 billion and is secured by a first priority lien on certain inventory and receivables of the Debtors and a pledge of 65% of the Debtors interest in its wholly owned Mexican subsidiary. The estimated recovery under the Liquidation Analysis on the Revolver Credit Facility's estimated secured claim of $3.87 billion is estimated to be between $2.7 and $3.0 billion or 70.2% to 77.1% recovery.

c) The Term Loan secured claim is estimated to be $1.47 billion and is secured by a first lien on certain machinery and equipment owned by the Debtors. Under the Liquidation Analysis, the estimated recovery on the Term Loans estimated $1.47 billion secured claim is estimated to be between $0.4 and $0.9 billion or 26.3% to 60.8% recovery.

d) The U.S. Treasury has an estimated secured claim of $20.55 billion under the First U.S. Treasury Facility. The estimated secured claim includes $19.40 billion currently outstanding under the facility as of May 26, 2009 and the estimated value of the Warrant Promissory Note of $1.15 billion. The First U.S. Treasury Facility is secured by guarantees of certain subsidiaries, security interests in certain assets and pledges of stock in domestic and foreign subsidiaries. Under the Liquidation Analysis, the U.S. Treasury's estimated

recovery is estimated to be between $2.6 and $4.9 billion or 12.7% to 23.7% recovery.

e)  Administrative and Priority Claims are estimated to be $2.8 billion and the estimated recovery is between $0.7 and $1.0 under the Liquidation Analysis or 26.8% to 34.1% recovery.

f)  General Unsecured Claims are assumed to be $116.5 billion and there is estimated to be no recovery under the Liquidation Analysis. The Liquidation Analysis assumes the General Unsecured claims are equal to those presented on the March 31, 2009 balance sheet. Certain contingent General Unsecured Claims that would likely occur in a Chapter 7 Liquidation such as lease and contract rejection claims, additional pension termination claims or other litigation claims have not been included in the General Unsecured Claims. The inclusion of such claims would likely significantly increase the estimated General Unsecured Claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 31st day of May, 2009

By: /s Albert A. Koch
Albert A. Koch

**EXHIBIT A**

Al Koch is a Vice Chairman and Managing Director with AlixPartners LLP, a global business advisory firm offering comprehensive services to improve corporate performance, execute corporate turnarounds, and provide litigation consulting and forensic accounting services. As one of the senior most members of the firm, Al has led a wide range of successful turnaround and restructuring engagements, including:

Interim CFO of the Kmart Corp., the largest retailer in history to file for bankruptcy. In this position, he provided leadership and credibility to the financial functions, led the development of a multi-year operating business plan and drove financial performance in conformity with that plan. Kmart emerged from Chapter 11 in May 2003. *Retailer Merchandiser* recognized Al and the Kmart executive team as the "Retail Executive of the Year" for their work on the Kmart restructuring.

President and CEO of Handleman Co., formerly a distributor of recorded music on compact disc and electronic video games. The company had experienced double-digit declines in revenue for several years and the market for recorded music had declined dramatically. Under his leadership, Handleman sold all of its operating assets and is currently (in 2009) going through a voluntary liquidation of its remaining business under state law.

Chairman, interim President and CEO at Champion Enterprises Inc., the world's largest builder of manufactured homes. In those roles, Al led a major financial and operational restructuring which saw the company's market capitalization nearly triple while operating results improved from a year-to-date loss to a profit.

Interim CFO of Oxford Health Plans Inc. During a crisis brought on by financial and accounting-systems failure, he led the effort to stabilize the company's financial functions, create credible reporting, and position Oxford to obtain $710 million of new capital, which provided the financial strength to assure the success of the ensuing operational turnaround.

Al previously served as the Chief Operating Officer of AlixPartners. Under his leadership, the firm quadrupled revenues, tripled its staff of professionals, and opened two new offices. He also expanded client services, adding a comprehensive bankruptcy administration practice, an information-technology (IT) turnaround practice, and professionals whose skills focus specifically on helping companies with early intervention to avoid crisis.

Al was formerly a partner with Ernst & Young for 14 years, including seven years as Managing Partner of the firm's Detroit office. He is a CPA and won the Sells Gold Medal for attaining the highest scores in the United States in that exam. Al holds a bachelor's degree in accounting from Elizabethtown College in Elizabethtown, Penn.. He is a Certified Turnaround Professional and a Fellow of the American College of Bankruptcy, its Treasurer and a member of its Board of Directors. He also is a member of the American Bankruptcy Institute, and the American Institute of CPAs.

He is a member of the SPX Corporation (NYSE) Board of Directors and a member of its Audit and Compensation Committees.  He also is Chairman of Polar Corporation, a privately held trucking products and services company.  Al was a Trustee of the Bloomfield Hills (Michigan) Board of Education for eight years and also served as a Trustee and Chairman of the Finance Committee of the Detroit Medical Center as well as in a variety of board positions at Harper Hospital, Grace Hospital and Detroit Receiving Hospital -- all part of the Detroit Medical Center, a major healthcare system in southeast Michigan.

**EXHIBIT B**



**GM Corporation**
**Liquidation Analysis**
**May 27, 2009**

Chicago Dallas Detroit Düsseldorf London Los Angeles Milan Munich New York Paris San Francisco Shanghai Tokyo

AlixPartners

2

# Executive Summary

## Liquidation Analysis Key Assumptions

1. The hypothetical Liquidation Analysis ("Liquidation Analysis") was prepared to assess the potential recovery creditors would receive under a Chapter 7 liquidation as of June 1, 2009.

2. The Liquidation Analysis was prepared based on a review of the Debtors' records, discussions with management and our prior experience. Estimates of liquidation values were determined primarily by assessing classes of assets as opposed to valuing specific assets.

3. Underlying the Liquidation Analysis are a number of estimates and assumptions regarding liquidation proceeds, that although developed and considered reasonable by Debtors' management and its professionals, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management.

4. An orderly wind-down of this magnitude and complexity would be unprecedented and fraught with considerable execution risk. In addition , the Debtor has material operations outside of the United States and would be subject to the laws of numerous foreign jurisdictions making liquidation very complex and difficult.

5. If the liquidation of the Company occurred it would be the first major domestic OEM to be liquidated in recent history and therefore no historical references are available.

6. This Liquidation Analysis assumes no other OEM or major supplier liquidates. If another OEM or major supplier were to liquidate at the same time the value of the assets could be adversely impacted.

7. The Liquidation Analysis assumes the Debtors commence a liquidation under chapter 7 of the U.S. Bankruptcy code on June 1, 2009. The Liquidation Analysis assumes the majority of the assets are sold in a 2 year period Based on the size and complexity of the Debtors the claim resolution and final disbursement would likely be longer than 2 years.

8. The Liquidation Analysis reflects the combined assets of the Debtors (GM Corporation, Saturn, Saturn Distribution Corp and Chevrolet -Saturn of Harlem, Inc). The Non-Debtor subsidiaries value is reflected as Investment in Subsidiaries.

3

# Liquidation Analysis Key Assumptions - Continued

9.  No DIP financing is available to the Debtors. The Liquidation Analysis assumes the bankruptcy court grants the Company the use of cash collateral to fund the liquidation and grants liens to the secured lenders in certain unencumbered assets.

10. The Liquidation Analysis assumes that at the time the wind-down process begins, disbursements are limited to expenditures related to the security, maintenance and disposal of the Debtors' assets.

11. The asset net book value (excluding cash and government funding) used in the Liquidation Analysis is based on the March 31, 2009 balance sheet provided by the Company.

12. The estimated cash and outstanding US Treasury obligations at the time of the liquidation are based on the "Plan B" 13-Week Cash Forecast dated May 26, 2009.

13. The Liquidation Analysis assumes a chapter 7 liquidation of the Debtors would result in liquidation or government intervention at many of the Debtors' foreign subsidiaries, resulting in little or no equity value. Certain other entities could potentially be sold on a going concern basis in order to maximize the value. The going concern value of the select non-debtor subsidiaries is based on discussions with management and a review of certain historical and prospective financial information. The value of non-debtor subsidiaries takes into consideration the impact of the U.S. chapter 7 liquidation process, the current status of the financial and automotive markets, and the potential "damaged goods" or fire sale perception of potential bidders.

14. The Liquidation Analysis includes an estimate of fees associated with the appointment of a chapter 7 trustee and compensation for the trustee incurred during the liquidation process in accordance with section 326 of the U.S. Bankruptcy Code. Due to the size of the estimated distributions, the chapter 7 trustee fees are estimated at 1% of the total proceeds generated from non-cash assets during the liquidation rather than the 3% maximum allowed under the U.S. Bankruptcy Code.

15. Chapter 7 professional fees include the cost of liquidators, attorneys, accountants, brokers and other professionals retained by the chapter 7 trustee during the liquidation period. The chapter 7 professional fees are estimated at 1.5% of the total proceeds generated from non-cash assets during the liquidation period.

4

# Liquidation Analysis Key Assumptions - Continued

16. Wind down costs reflect the payment of corporate payroll and operating costs during liquidation, based upon the assumption that certain plant and corporate personnel will be retained to oversee the liquidation process. This includes the maintenance and closure of accounting records and the completion of certain administrative tasks including payroll, tax forms, and records. In addition, minimal staffing at the physical locations would be required to complete the closure of the facilities, disassemble the equipment, and oversee the sale process for equipment and real estate. Certain facility expenses would continue to be incurred until all of the facilities are liquidated.

17. For presentation purpose the Liquidation Analysis assumes other secured obligations such as capital leases, secured municipal bonds, the GE Fleet Loan and synthetic lease obligations will receive the value of their collateral.

18. The Liquidation Analysis assumes the General Unsecured Claims are equal to those presented on the March 31, 2009 balance sheet. Certain contingent General Unsecured Claims that would likely occur in a hypothetical Chapter 7 Liquidation such as lease and contract rejection claims, additional pension termination claims or other litigation claims are not reflected on the March 31, 2009 balance sheet. If an estimate of these contingent claims were to be included it is likely the estimated General Unsecured Claim amount would increase.

19. The Liquidation Analysis is based on information available as of May 27, 2009. There is no obligation to revise or update the Liquidation Analysis.

5

# Executive Summary

**General Motors Corporation**
**Liquidation Analysis**
**Consolidated Debtors**
**As of June 1, 2009**

(In USD Billions)

| | Hypothetical Liquidation Value | | | Est. Claim | Hypothetical Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | Low | High | Midpoint | | Low | High | Midpoint |
| **ASSETS** | | | | | | | |
| Cash & Cash Equivalents | $ 2.0 | $ 2.0 | $ 2.0 | | | | |
| Accounts Receivable | 0.5 | 0.6 | 0.5 | | | | |
| Inventory | 0.6 | 0.9 | 0.8 | | | | |
| Property, Plant & Equipment | 1.3 | 2.1 | 1.7 | | | | |
| Other Assets | 0.2 | 0.4 | 0.3 | | | | |
| Equity in Subsidiaries | 3.5 | 4.5 | 4.0 | | | | |
| Intellectual Property | 1.0 | 1.2 | 1.1 | | | | |
| **Total Proceeds From Assets** | **$ 9.1** | **$ 11.7** | **$ 10.4** | | | | |
| | | | | | | | |
| **Costs Associated With Liquidation** | | | | | | | |
| Chapter 7 Trustee Fees | $ 0.1 | $ 0.1 | $ 0.1 | | | | |
| Other Professional Fees | 0.1 | 0.1 | 0.1 | | | | |
| Wind Down Costs | 2.5 | 1.8 | 2.2 | | | | |
| Total | $ 2.7 | $ 2.0 | $ 2.4 | | | | |
| | | | | | | | |
| **Estimated Net Proceeds Available for Distribution** | **$ 6.5** | **$ 9.7** | **$ 8.1** | | | | |
| | | | | | | | |
| **RECOVERIES** | | | | | | | |
| Revolving Credit Facility | | | | $ 3.9 | $ 2.7 | $ 3.0 | $ 2.8 |
| Recovery Rate | | | | | 70.2% | 77.1% | 73.7% |
| Term Loan | | | | $ 1.5 | $ 0.4 | $ 0.9 | $ 0.6 |
| Recovery Rate | | | | | 26.3% | 60.8% | 43.6% |
| First U.S. Treasury Facility | | | | $ 20.5 | $ 2.6 | $ 4.9 | $ 3.7 |
| Recovery Rate | | | | | 12.7% | 23.7% | 18.2% |
| | | | | | | | |
| Administrative and Priority Claims | | | | $ 2.8 | $ 0.7 | $ 1.0 | $ 0.9 |
| Recovery Rate | | | | | 26.8% | 34.1% | 30.5% |
| | | | | | | | |
| **General Unsecured Claims** | | | | **$ 116.5** | **$ -** | **$ -** | **$ -** |
| Recovery Rate | | | | | 0.0% | 0.0% | 0.0% |

**Asset Value**
- The value of the assets was based on a review of the March 31, 2009 balance sheet, discussions with management and other professionals.
- Equity in Subsidiaries reflects the estimated value of both foreign and domestic subsidiaries. The value of the subsidiaries was determined on a distressed going concern basis for subsidiaries considered to be solvent stand alone businesses.

**Costs Associated with Liquidation**
- Chapter 7 and Other Professional Fees were determined as a percentage of recovery value.
- Wind Down Costs reflect the estimated costs to secure, maintain and sell the estates assets.

**Secured Debt Recoveries**
- Secured debt recoveries are based on the recovery value of the collateral for each facility.
- The First US Treasury Facility claim is based on the current balance of $19.4 billion, plus the obligations under the Warrant Promissory Note.

**Administrative and Priority Claims**
- The estimated $2.8 billion of Administrative and Priority claims is primarily comprised of employee claims and s503(b)(9) claims. The Debtors and their advisors believe these estimates are conservative, and could be much higher, in the event of an actual Chapter 7 liquidation.

**General Unsecured Claims**
- The Liquidation Analysis assumes the General Unsecured Claims are equal to those presented on the March 31, 2009 balance sheet. Certain contingent General Unsecured Claims that would likely occur in a hypothetical Chapter 7 Liquidation such as lease/contract rejection claims, additional pension termination claims or other litigation claims are not reflected on the March 31, 2009 balance sheet. If an estimate of these contingent claims were to be included it is likely the estimated General Unsecured Claim amount would increase.

6

7

Asset Recovery and Wind Down Costs

8

# Asset Recovery Summary

**General Motors Corporation**
**Liquidation Analysis**
**Consolidated Debtors**
As of June 1, 2009

(In USD Billions)

| | Adj. Book Value | Estimated Recovery Percentage | | | Hypothetical Liquidation Value | | |
|---|---|---|---|---|---|---|---|
| | | Low | High | Midpoint | Low | High | Midpoint |
| **ASSETS** | | | | | | | |
| Cash and Cash Equivalents | $ 2.0 | 100% | 100% | 100% | $ 2.0 | $ 2.0 | $ 2.0 |
| Accounts Receivable | 1.3 | 34% | 44% | 39% | 0.5 | 0.6 | 0.5 |
| Inventories | 3.2 | 20% | 29% | 24% | 0.6 | 0.9 | 0.8 |
| Property, Plant & Equipment | 17.7 | 7% | 12% | 10% | 1.3 | 2.1 | 1.7 |
| Other Assets | 4.1 | 6% | 11% | 8% | 0.2 | 0.4 | 0.3 |
| Equity in Subsidiaries | N/A | | | | 3.5 | 4.5 | 4.0 |
| Intellectual Property | N/A | | | | 1.0 | 1.2 | 1.1 |
| **Total Proceeds From Assets** | | | | | $ 9.1 | $ 11.7 | $ 10.4 |
| **Costs Associated With Liquidation** | | | | | | | |
| Chapter 7 Trustee Fees | | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| Other Professional Fees | | | | | 0.1 | 0.1 | 0.1 |
| Wind Down Costs | | | | | 2.5 | 1.8 | 2.2 |
| Total | | | | | $ 2.7 | $ 2.0 | $ 2.4 |
| **Estimated Net Proceeds Available for Distribution** | | | | | $ 6.5 | $ 9.7 | $ 8.1 |

Notes:
• Adjusted book value is based on the March 31, 2009 balance sheet except for the Cash Balance, which is based on the Company's "Plan B" 13-week forecast dated May 26, 2009.

• The Company utilizes a U.S. cash pool account. The amount included in the above analysis represents the estimated cash available to the Company on June 1, 2009.

# Asset Recovery – Accounts Receivable

## Accounts Receivable
### (in USD Billions)

| | | Book Value at March 31, 2009 | Estimated Recovery % Low | Estimated Recovery % High | Estimated Recovery Low | Estimated Recovery High |
|---|---|---|---|---|---|---|
| GMAC | (1) | $ 0.32 | 0% | 0% | $ - | $ - |
| Non-GMAC Floor Plan Lenders | (2) | 0.41 | 34% | 48% | 0.14 | 0.20 |
| U.S. Government | (3) | 0.15 | 100% | 100% | 0.15 | 0.15 |
| Other | (4) | 0.43 | 38% | 53% | 0.16 | 0.23 |
| **Total** | | $ 1.31 | 34% | 44% | $ 0.45 | $ 0.57 |

(1) Assumes GMAC utilizes set-off rights, resulting in a net claim against the debtors.

(2) Comprised primarily of dealer inventory financed by non-GMAC lenders. Non-GMAC lender recoveries assume some set-off and reflect recent increases in delinquencies.

(3) These receivables are due from the Federal Government for fleet sales and thus assumed to be fully recoverable.

(4) Includes numerous miscellaneous receivables and receivables related to parts sold to third party wholesalers and retailers.

6

# Asset Recovery - Inventory

**Inventory**
*(in USD Billions)*

| | | Book Value at March 31, 2009 ( 5 ) | Estimated Recovery % | | Estimated Recovery | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| *Finished Goods* | ( 1 ) | $ 0.93 | 28% | 46% | $ 0.26 | $ 0.43 |
| *Raw Materials* | ( 2 ) | 1.82 | 19% | 26% | 0.34 | 0.46 |
| *Supplies* | ( 3 ) | 0.07 | 20% | 25% | 0.01 | 0.02 |
| *Other* | ( 4 ) | 0.39 | 4% | 8% | 0.02 | 0.03 |
| **Total** | | $ 3.21 | 20% | 29% | $ 0.63 | $ 0.94 |

( 1 )  This balance includes vehicles used by GM employees for evaluation as well as pre-driven vehicles repurchased from dealers. Recovery levels for these vehicles are adjusted to reflect decrease in value from usage and effects of a Chapter 7 liquidation on vehicle values.  Recovery is net of GE Fleet Loan of $125 million.

( 2 )  Balance includes both parts from suppliers, raw materials such as sheet metal, precious metals and service parts.  Precious metals reflect a high recovery based on the nature of the asset as well as recent GM sales of excess stock.  Recovery levels on other materials reflect scrap values adjusted for some continued demand for parts for existing vehicles in service.

( 3 )  This balance includes production supplies such as grease and cleaning agents which are assumed to be saleable.

( 4 )  The other balance is made up of several types of inventory. Approximately half of the balance reflects parts and new vehicles sold to "high risk" dealerships for which the revenue can not be recognized due to significant payment risk. The inventory is reflected on the GM balance sheet, but is owned and located at the individual dealers. The Liquidation Analysis assumes no recovery on these items.

( 5 )  A reduction in GM's book value of inventory of approximately $600 million related to the Company's LIFO reserve is not included in the figure shown above. If the LIFO reserve were included, hypothetical liquidation values would be unchanged while the estimated low and high recovery percentages of total inventory would increase to 24% and 36%, respectively.

# Asset Recovery – Plant, Property and Equipment

## Property, Plant & Equipment
### (in USD Billions)

| | | Book Value at March 31, 2009 (1) | Estimated Recovery % | | Estimated Recovery | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Machinery & Equipment | (2) | $ 11.30 | 6% | 11% | $ 0.62 | $ 1.24 |
| Real Estate | (3) | 5.70 | 12% | 15% | 0.66 | 0.86 |
| Other | (4) | 0.70 | 0% | 0% | - | - |
| **Total** | | $ 17.70 | 7% | 12% | $ 1.28 | $ 2.11 |

(1) Book values are net of accumulated depreciation.

(2) Includes signficant amounts of tooling which is expected to have de minimus value. Non-tooling M&E recovery is estimated based on discussions with management, recent sale experience and other market indications.

(3) Recovery levels reflect current depressed real estate market conditions as well as North American auto industry overcapacity. For manufacturing properties, recovery levels are further influenced by the age of the manufacturing facilities and potential for asset closure and remediation costs which would result in de minimus recoveries. Estimated recovery related to non-manufacturing is based on our review of internal estimates of fair market value of these properties adjusted for the effects of the liquidation.

(4) Balance consists of equipment on capital leases. The Liquidation Analysis assumes any proceeds from the sale of these assets would be used to satify the capital lease obligations.

11

# Asset Recovery – Other Assets

## Other Assets & Intellectual Property
*(in USD Billions)*

| | | Book Value at March 31, 2009 | Estimated Recovery % | | Estimated Recovery | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Operating Lease Assets | (1) | $ 1.53 | 0% | 0% | $ - | $ - |
| Restricted Cash | (2) | 0.97 | 0% | 5% | - | 0.05 |
| Derivative Assets | (3) | 0.04 | 90% | 100% | 0.03 | 0.04 |
| Other Current | (4) | 0.89 | 21% | 35% | 0.19 | 0.31 |
| Other Noncurrent | (5) | 0.68 | 4% | 6% | 0.02 | 0.04 |
| **Total** | | $ 4.10 | 6% | 11% | $ 0.25 | $ 0.43 |
| Technology and Trademarks | (6) | N/A | N/A | N/A | $ 0.98 | $ 1.19 |

(1)  Balance consists of the estimated residual value of vehicles sold to rental car companies with guaranteed buy-back provisions, and thus must be accounted for as capital leases. It is assumed that in the event of a Chapter 7 liquidation GM would reject the contracts and not repurchase the vehicles due to significant declines in residual values.

(2)  Minimal recovery assumed given cash is held against liabilities.

(3)  Currently in-the-money derivative contracts at fair market value as of May 23, 2009.

(4)  Balance consists primarily of prepaid expenses, deferred charges and certain vehicles not included in inventory. Assumed recovery level for vehicles is similar to that of other finished goods, while recoveries of prepaids is assumed to be minimal.

(5)  Balance consists primarily of deferred charges such as capitalized debt issuance costs. These assets are assumed to be unrealizable in the event of a Chapter 7 liquidation.

(6)  Recovery levels include potential proceeds for sales of Debtor owned brand names, including Chevrolet, Cadillac, Pontiac, Buick, GMC, Saturn and Hummer. A significant portion of the value is from the sale of the brands to foreign subsidaries. GM powertrain technology is also assumed to have market value. The remainder of technologies, such as GM's vehicle architecture are assume to have no value in the event of a liquidation due to specific uses of the technology and global overcapacity in the automotive industry.

Asset Recovery – Equity in Subsidiaries

**Equity in Subsidiaries**
*(in USD Billions)*

| | Note | Estimated Value | |
| --- | --- | --- | --- |
| | | Low | High |
| U.S. Operations | (1) | $  1.04 | $  1.50 |
| Foreign Operations | (2) | 2.46 | 2.96 |
| **Total Equity In Subsidiaries** | | **$  3.51** | **$  4.46** |

(1)  Includes GMAC carve-out assets, OnStar, real estate at non-debtor subsidiaries and equity in other domestic subsidiaries.

(2)  Includes GM Asia Pacific, GM Europe, GM Latin America and all other international operations. The proceeds from the sale of technology and brands utilized by the foreign entities have been reflected in the intellectual property value.

13

# Costs Associated with Liquidation

- **Chapter 7 Trustee Fees**
  - Fees include those fees associated with the appointment of a Chapter 7 trustee in accordance with section 326 of the Bankruptcy Code. Due to the size of the estimated distributions the Trustee fees are estimated at 1% of the total proceeds generated from non-cash assets during the liquidation rather than the 3% maximum allowed under the Bankruptcy Code.

- **Other Professional Fees**
  - Amounts include the cost of liquidators, attorneys, accountants, brokers and other professional retained by the Trustee during the liquidation period. The professional fees are estimated at 1.5% of the estimated proceeds generated from non-cash assets during the liquidation period.

- **Wind-Down Costs**
  - **Manufacturing** - Indirect labor costs required to secure manufacturing assets and buildings.
  - **Commercial** - Labor and costs required to maximize value of inventory and to mitgate Dealer issues.
  - **Engineering Costs** - Engineering costs relate to resources needed to identify intellectual property to maximize potential recovery.
  - **Corporate Overhead** - General expenses including accounting, legal, information systems and other expenses required for the Debtors to maintain records and assist in the orderly wind-down of the business.
  - **Holding Costs** – Include costs to secure and decommission facilities, real estate taxes, utilities and insurance.

| (Millions) | 2009 (1) Annual Run Rate | 2009 (2) Adjustments | 2009 Adj. Annual Run Rate | 2009 Base Qrtly Run Rate | Wind-Down Cost Assumed in Analysis — Months 1-3 | 4-6 | 7-9 | 10-12 | 13-24 | Total | WD Costs % of Run Rate — Months 1-3 | 4-6 | 7-9 | 10-12 | 13-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **High** | | | | | | | | | | | | | | | |
| Manufacturing | 10,872 | (5,030) | 5,842 | 1,461 | 277 | 40 | 3 | 3 | 12 | 335 | 19% | 3% | 0% | 0% | 0% |
| Engineering | 4,621 | (877) | 3,744 | 936 | 97 | 6 | - | - | - | 103 | 10% | 1% | 0% | 0% | 0% |
| Commercial | 6,078 | (2,319) | 3,759 | 940 | 66 | 6 | - | - | - | 72 | 7% | 1% | 0% | 0% | 0% |
| Other | 4,757 | (2,419) | 2,338 | 585 | 351 | 234 | 156 | 117 | 175 | 1,033 | 60% | 40% | 27% | 20% | 8% |
| | 26,328 | (10,645) | 15,683 | 3,921 | 791 | 286 | 159 | 120 | 187 | 1,543 | 20% | 7% | 4% | 3% | 1% |
| Holding Costs | | | | | 253 | 105 | 105 | 105 | 322 | 890 | | | | | |
| | | | | | 1,044 | 391 | 264 | 225 | 509 | 2,433 | | | | | |
| | | | | | | | Use | | | $ 2,500 | | | | | |
| **Low** | | | | | | | | | | | | | | | |
| Manufacturing | | | | 1,461 | 195 | 30 | 1 | 1 | 6 | 233 | 13% | 2% | 0% | 0% | 0% |
| Engineering | | | | 936 | 66 | 6 | - | - | - | 72 | 7% | 1% | 0% | 0% | 0% |
| Commercial | | | | 940 | 34 | 6 | - | - | - | 41 | 4% | 1% | 0% | 0% | 0% |
| Other | | | | 585 | 214 | 156 | 127 | 88 | 101 | 686 | 37% | 27% | 22% | 15% | 4% |
| | | | | 3,921 | 509 | 198 | 128 | 89 | 107 | 1,031 | 13% | 5% | 3% | 2% | 1% |
| Holding Costs | | | | | 228 | 83 | 83 | 83 | 253 | 729 | | | | | |
| | | | | | 737 | 281 | 211 | 172 | 360 | 1,760 | | | | | |
| | | | | | | | Use | | | $ 1,800 | | | | | |

**Notes:**
1) Amount is based on assumed structural cost run rate in Viability Plan. The amount includes significant cost cuts from the current run rate.
2) Adjustments to run rate are primarily the elimination of non-cash items, sales expenses, indirect purchases and benefit obligations.

15

# Creditor Recovery Analysis

# Hypothetical Recovery to Government Loans

**First US Treasury Facility**

The First U.S. Treasury Facility is secured by guarantees of certain subsidiaries, security interests in certain assets, pledges of stock in domestic and foreign subsidiaries, and a warrant agreement. The warrant agreement includes a warrant to the U.S. Treasury to purchase a quantity of GM common stock and a $749 million promissory note increasing by 6.67% of any additional borrowings with the same terms as the First U.S. Treasury Facility.

| (USD Billions) | | First U.S. Treasury Facility | |
|---|---|---|---|
| | | **Low** | **High** |
| Collateral Value | (1) | $ 4.2 | $ 5.7 |
| Share of Wind-Down Costs | (2) | (1.6) | (0.8) |
| Net Recovery | | 2.6 | 4.9 |
| **Recovery Rate** | | **12.7%** | **23.7%** |
| Estimated Claim | (3) | $ 20.5 | $ 20.5 |

**Notes:**
(1) Reflects asset recovery estimate of collateral for each loan
(2) Wind-Down costs were allocated based on recovery value
(3) Estimated claim is based on the current outstanding balance of $19.4 billion, plus the estimated obligation under the Warranty Promissory Note.

16

# Hypothetical Recovery to Senior Secured Creditors

**Revolving Credit Facility**
GM's obligations under the Revolving Credit Agreement are secured by first priority liens on certain inventory and receivables of GM and Saturn and 65% of GM's interests in its wholly-owned Mexican subsidiary, Controladora General Motors, S.A. de C.V., and second priority liens on the collateral securing GM's obligations under the First U.S. Treasury Loan Agreement.

**Secured Term Loan**
GM's obligations under the Term Loan Agreement are guaranteed by Saturn and secured by certain equipment and machinery owned by GM and Saturn.

**Other Secured Debt**
The Debtors additional secured obligations such as capital leases, certain municipal bonds, the GE Fleet Loan and synthetic lease obligations have been netted against the value of the assets that are secured by the obligation.

**The Liquidation Analysis assumes the Senior Secured Lenders allow their cash collateral to be used to fund the liquidation process**

| (USD Billions) | | Low | | | High | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Revolving Credit Facility | Secured Term Loan | | Revolving Credit Facility | Secured Term Loan |
| Collateral Value | (1) | $  3.1 | $  0.6 | | $  3.6 | $  1.2 |
| Share of Wind-Down Costs | (2) | (0.4) | (0.2) | | (0.6) | (0.3) |
| Net Recovery | | 2.7 | 0.4 | | 3.0 | 0.9 |
| **Recovery Rate** | | **70.2%** | **26.3%** | | **77.1%** | **60.8%** |
| Estimated Claim | (3) | $  3.9 | $  1.5 | | $  3.9 | $  1.5 |

**Notes:**
(1) Reflects asset recovery estimate of collateral for each loan
(2) Wind-Down costs were allocated based on recovery value
(3) Estimated claim is based on outstanding balance as of March 31, 2009. The Revolving Credit Facility does not include the Canadian portion of the loan of approximately $600 million. The Liquidation Analysis assumes the Canadian collateral is sufficient to cover the Canadian obligations.

17

# Hypothetical Recovery to Administrative and Priority Claims

(USD Billions)

| | | Low | High |
|---|---|---|---|
| Unencumbered Collateral | (1) | $ 1.2 | $ 1.3 |
| Share of Wind-Down Costs | (2) | (0.5) | (0.3) |
| Net Available for Administrative and Priority Claims | | $ 0.7 | $ 1.0 |
| Estimated Administrative and Priority Claims | (3) | $ 2.8 | $ 2.8 |
| **Recovery** | | 26.8% | 34.1% |
| Estimated Amounts Available for General Unsecured Claims | | $ - | $ - |
| Estimated General Unsecured Claims | (4) | $ 116.5 | $ 116.5 |
| **Estimated Recovery Rate** | | **0.0%** | **0.0%** |

| Type | Total |
|---|---|
| 503(b)9 | $ 0.9 |
| Employee Obligations | 1.4 |
| Priority Tax Obligation | 0.5 |
| Estimated Administrative and Priority Claims | $ 2.8 |

**Notes:**
(1) Reflects asset recovery estimate of collateral not encumbered by secured debt obligations.
(2) Wind-Down costs were allocated based on recovery value
(3) Estimated Administrative and Priority Claims

(4) The Liquidation Analysis assumes the General Unsecured Claims are equal to those presented on the March 31, 2009 balance sheet. Certain contingent General Unsecured Claims that would likely occur in a hypothetical Chapter 7 Liquidation such as lease/contract rejection claims, additional pension termination claims or other litigation claims are not reflected on the March 31, 2009 balance sheet. If an estimate of these contingent claims were to be included it is likely the estimated General Unsecured Claim amount would increase.

**EXHIBIT C**

  Chicago  Dallas  Detroit  New York  San Francisco  Washington, DC

May 29, 2009

Mr. Frederick A. Henderson
President and Chief Executive Officer
General Motors Corporation
300 Renaissance Center
Detroit, MI 48243

Re:  Agreement for Interim Management and Restructuring Services

Dear Mr. Henderson:

This letter, together with the attached Schedule(s), Exhibit and General Terms and Conditions, sets forth the agreement ("Agreement") between AP Services, LLC, a Michigan limited liability company ("APS"), and General Motors Corporation and certain of its affiliates (the "Company") for the engagement of APS to provide certain temporary employees as set forth on Exhibit A (the "Temporary Staff") to the Company to assist it in its restructuring as described below.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s), Exhibit and General Terms and Conditions.

This letter supersedes that certain engagement letter between AlixPartners, LLP ("AlixPartners"), an affiliate of APS, and the Company dated as of February 3, 2009 (the "AlixPartners Engagement Letter").  The AlixPartners Engagement Letter contemplated the execution of this Agreement, and the potential provision of Temporary Staff by APS to the Company in connection with its restructuring efforts, including any sale of its assets.

Generally, the engagement of APS, including any APS employees who serve in Executive Officer positions, shall be under the supervision of the Board of Directors of the Company and the direct supervision of its President and Chief Executive Officer ("CEO").  Neither the CRO (as defined below) nor any Temporary Staff are anticipated to act as directors of General Motors Corporation, either before or after the Transaction.

## OBJECTIVE AND TASKS

On or before May 31, 2009, APS will provide Mr. Al Koch to be appointed and serve as the Company's Chief Restructuring Officer ("CRO"), reporting directly to the Company's CEO.  Working collaboratively with the senior management team, the Board of Directors and other Company professionals, the CRO will assist the Company in evaluating and

$\Lambda P$Services LLC

Mr. Frederick A. Henderson
May 29, 2009
Page 2 of 41

implementing strategic and tactical options through the restructuring process, including any sale of its assets. In addition to the ordinary course duties of a CRO, the Temporary Staff roles will include working with the Company and its employees and other professionals to do the following:

- Assist the Company and its advisors in the negotiation and completion of the sale of assets and operations contemplated by the Company (the "Transaction") to a US Treasury sponsored purchaser ("New GM"). The Transaction is anticipated to be processed and consummated pursuant to section 363 of the United States Bankruptcy Code (the "Code").

- On behalf of the Company (the "Company" or "Oldco"), to support the negotiation of, and participate in the review of, the proposed structure of the Transaction, including the assets to be sold and transferred to New GM and the liabilities to be assumed by New GM as a part of the purchase price, and the negotiation and implementation of various transitional contractual relationships between Oldco and New GM. In performing services, APS will take into consideration (i) the management and resources that Oldco will need after the consummation of the Transaction, and (ii) the necessary transitional contractual relations between Oldco and New GM.

- As noted, prior to the closing of the Transaction, the CRO will report to the Company's CEO. As to the services to be performed by APS as described above, the CRO will communicate directly with the Chairman of the Board, and ultimately the entire Board of Directors, as necessary, in respect of any issues that APS considers germane to its assignments. APS will meet with and report directly to the Board on its progress and on the performance of its engagement.

- Upon the closing of the Transaction, the Board shall appoint Mr. Koch as the Chief Executive Officer (the "CEO") of Oldco and the remaining directors will select and appoint additional directors as appropriate to oversee the administration of Oldco. As CEO, Mr. Koch will report directly to the Board of Oldco. APS shall continue its engagement with OldCo in accordance with the terms of this agreement. If resolved by the Board:

  - Certain Temporary Staff may become officers of OldCo or officers or directors of OldCo's subsidiaries as requested by the Board and agreed to by APS.

  - Al Koch and the Temporary Staff will oversee the administration of the Company's bankruptcy case, including compliance with bankruptcy court reporting requirements and the discharge of obligations of the Company pursuant

APServices llc

Mr. Frederick A. Henderson
May 29, 2009
Page 3 of 41

to the Code, and at the direction of the Board, shall propose, file and implement a
plan of liquidation under chapter 11 in accordance with the Code.

– Al Koch and the Temporary Staff will seek to monetize assets, settle and
administer claims as soon as practicable.

• Assist the Company, as requested, in relation to its investments in subsidiaries and
affiliates and business counterparts and any other actions consistent with Code and
applicable authorities.

| STAFFING |
|---|

APS will provide the Company with the Temporary Staff set forth on Exhibit A, subject
to the terms and conditions of this Agreement, with the titles, pay rates and other
descriptions set forth therein.

The Temporary Staff may be assisted by or replaced by other professionals at various
levels, as required, who shall also become Temporary Staff. APS will keep the Company
informed as to APS' staffing and will not add additional Temporary Staff to the
assignment without first consulting with the Company to obtain Company concurrence
that such additional resources are required and do not duplicate the activities of other
employees or professionals.

If APS finds it desirable to augment its professional staff with independent contractors
(an "I/C") in this case, (i) APS will file, and require the I/C to file, 2014 affidavits
indicating that the I/C has reviewed the list of the interested parties in this case,
disclosing the I/C's relationships, if any, with the interested parties and indicating that the
I/C is disinterested; (ii) the I/C must remain disinterested during the time that the I/C is
retained and providing services to the Company; and (iii) the I/C must represent that
he/she will not work for or be employed by the Company or other parties in interest in
this case during the time APS is involved in providing services to the Company.

APS' standard practice is to charge for an I/C's services at the APS rate for a professional
of comparable skill and experience, which rate typically exceeds the compensation
provided by APS to such I/C. However, if the Company commences a case under the
Code, APS will charge a rate equal to the compensation provided by APS to the I/C.

| TIMING, FEES AND RETAINER |
|---|

In the event the Company commences a case under the Code, the Company will apply to
the Bankruptcy Court, on the date of filing or as soon thereafter as practicable, to obtain



Mr. Frederick A. Henderson
May 29, 2009
Page 4 of 41

approval of APS's retention and Retainer pursuant to section 363 of the Bankruptcy Code *nunc pro tunc* to the date of filing. It is understood that the terms and conditions of this Agreement and, in particular, the compensation, reimbursement, Success Fee, Discretionary Fee, and Break Fee (each as defined later) are subject to (a) prior approval of the Bankruptcy Court to be treated as administrative expenses of the bankruptcy case; (b) may be subject to a standard of reasonableness; and (c) that APS will file an application for Bankruptcy Court approval of the Second Payment of the Success Fee, the Discretionary Fee, and the Break Fee, as each is asserted to be due and payable. The Debtors will seek Bankruptcy Court approval of the First Payment of the Success Fee in connection with seeking approval of the Transaction.

The Company shall compensate APS for its services, and reimburse APS for expenses, as set forth on Schedule 1.

*        *        *

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to our continued relationship.

Sincerely yours,

AP SERVICES, LLC

*Fred Crawford*
Fred Crawford  by K

*A. A. Koch*
A. A. Koch

Acknowledged and Agreed to:

GENERAL MOTORS CORPORATION

By: _____*Fritz A Hen*_____

Its: _____*President & CEO*_____

Dated: _____*May 30, 2009*_____



AP Services, LLC
Employment by General Motors Corporation


Exhibit A


Temporary Staff
Individuals with Executive Officer Positions

| Name | Description | Hourly Rate |
|---|---|---|
| Al Koch | Chief Restructuring Officer | $835 |


Additional Temporary Staff
(subject to update)

| Name | APS Description of Title | Hourly Rate |
|---|---|---|
| Yoni Aidan | Vice President | €420 |
| Konstantinos Alexopoulos | Vice President | €520 |
| Stefano Aversa | Managing Director | $835 |
| Afshin Azhari | Director | $510 |
| Arnd Baur | Director | €555 |
| Kurt Beckeman | Director | $595 |
| Aleksandra Bozic | Vice President | $450 |
| Kyle Braden | Director | $555 |
| Garry Brown | Managing Director | $790 |
| Marc Brown | Director | $595 |
| Frank Browne | Associate | $265 |
| Susan Budd | Director | $510 |
| Martin Cairns | Director | £420 |
| Cliff Campbell | Director | $650 |
| Michelle Campbell | Director | $595 |
| Chris Capers | Director | $595 |
| Patrick Clark | Analyst | $260 |
| Thomas Clarke | Director | $510 |
| Bruce Conforto | Director | $595 |
| Christian Cook | Director | $595 |
| Fred Crawford | Managing Director | $835 |
| Rick Davidson | Director | $595 |
| Dennis DeBassio | Associate | $360 |

APServices LLC

| Name | APS Description of Title | Hourly Rate |
|---|---|---|
| Tony Flanagan | Managing Director | $730 |
| John Franks | Director | $510 |
| Dan Goldwin | Director | $555 |
| Alexandra Griffin | Analyst | $235 |
| Barb Gucfa | Director | $595 |
| James Guo | Vice President | CNY 2,750 |
| Jens Haas | Director | €555 |
| Scott Haeger | Director | $510 |
| David Hairston | Director | $595 |
| Michael Hartley | Director | $595 |
| David Hewish | Director | £460 |
| John Hoffecker | Managing Director | $835 |
| Elmar Kades | Director | €555 |
| Jan Kengelbach | Vice President | $500 |
| Susanna Kim | Paraprofessional | $180 |
| Carsten Koenig | Director | €555 |
| Tai Li | Director | $595 |
| Drew Lockard | Director | $510 |
| Olle Lundqvist | Director | €535 |
| Reese McNeel | Vice President | £290 |
| Natalie Meuche | Paraprofessional | $180 |
| Meade Monger | Managing Director | $835 |
| Tom Morrow | Managing Director | $685 |
| Jason Muskovich | Director | $595 |
| Bruce Myers | Managing Director | $790 |
| Ivo Naumann | Managing Director | CNY 5,250 |
| Michael O'Connor | Director | £485 |
| Christian Paul | Director | CNY 4,100 |
| Bobbie Phillips | Analyst | $235 |
| Vanessa Pogue | Paraprofessional | $180 |
| C.V. Ramachandran | Managing Director | $790 |
| Dan Ritter | Director | $510 |
| Gordon Schreur | Director | $595 |
| Axel Schulte | Managing Director | €675 |
| Vinzenz Schwegmann | Managing Director | €730 |
| Thomas Sedran | Managing Director | €785 |
| Ketav Shah | Director | $595 |
| Ted Stenger | Managing Director | $835 |
| Stephen Taylor | Managing Director | £575 |
| Michael Tyroller | Director | €555 |

APServices LLC

| Name | APS Description of Title | Hourly Rate |
| --- | --- | --- |
| Mark Wakefield | Director | $595 |
| Michael Weyrich | Managing Director | £545 |
| Richard Whitlock | Director | $510 |
| Jens-Ulrich Wiese | Director | €535 |
| Peter Williams | Vice President | £360 |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.



## SCHEDULE 1

### FEES AND EXPENSES

1. **Fees:** APS' fees will be based on the hours worked by APS personnel at APS' hourly rates, which are:

| | |
|---|---|
| Managing Directors | $ 685-995 |
| Directors | $ 510-685 |
| Vice Presidents | $ 350-500 |
| Associates | $ 260-360 |
| Analysts | $ 235-260 |
| Paraprofessionals | $ 180-200 |
| Independent Contractors | TBD |

Work performed by the Temporary Staff outside of North America will be charged at their local rates converted to U.S. dollars on the invoice date. APS reviews and revises its billing rates on January 1 of each year. The above rates will not be increased until January 1, 2010.

For those engagements where the Company requests that APS provide electronic discovery services – which may include the identification, preservation, collection, processing, hosting and production of electronically stored information – the following charges for processing, hosting and production will apply in addition to the Temporary Staff hourly fees associated with the identification, preservation and collection of electronically stored information:

**Processing**

| | | |
|---|---|---|
| Processing | | $750 per Gigabyte |
| TIFF Creation | | a.  $.05   per page |
| | OCR | c.  $.03   per page |

**Document Review**

| | |
|---|---|
| Attenex Document Mapper Analysis | $2,500 per Gigabyte |
| iCONECT Loading (waived if using with Attenex) | |
| TIFF images | $.02 per image |
| Native files | $75 per Gigabyte |
| Review Platform Licences | $150 per user/month |
| Storage of Hosted Data | $50 per Gigabyte/month |

**Production**

| | |
|---|---|
| Bates Number Endorsement | $.01 per stamp/page |
| Production Media | At Cost |

APServices llc

2. **Success Fee:** In addition to hourly fees, APS will be compensated for its efforts by the payment of a Success Fee as described below. The payment of the Success Fee, the Discretionary Fee (as defined below), and the Break Fee (as defined below) will be subject to the approval of the United States Department of the Treasury, or confirmation that such federal agency either has not objected, or will not object, to its payment. The Company understands and acknowledges that the Success Fee is an integral part of APS' compensation for the engagement.

If the Company completes a successful sale of a substantial portion of its assets to NewCo pursuant to Section 363 of the Code, the Company will pay APS a Success Fee of $13.0 million, and a discretionary fee in an amount to be determined at the Company's sole discretion (the "Discretionary Fee"), with the Discretionary Fee eligible for payment only if the bankruptcy case (i) yields extraordinarily positive results; and (ii) demonstrates that APS added significant value in achieving the consummation of the Transaction and the presentation of the Plan of Liquidation.

The payment of the Success Fee, subject to the conditions set forth in the attached letter under the title "Timing, Fees and Retainer," shall be due and payable as follows:

(a) $6.5 million at closing of the Transaction (the "First Payment"),

(b) $6.5 million on the first anniversary of the closing of the foregoing sale (the "Second Payment"); and

(c) The Discretionary Fee will be paid as and when directed by the Company.

Unless the Agreement is terminated by the Company for Cause (as defined below) or as explicitly set forth in this Section 2, APS shall remain entitled to the Success Fee that otherwise would be payable for the greater of 12 months from the date of termination of this Agreement, and the period of time that has elapsed from the date of this Agreement to the date of such termination.

Cause shall mean:

(a) a Temporary Staff member acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of General Motors Corporation after five (5) business days notice and opportunity to cure, that either (i) a Temporary Staff member is engaging in misconduct injurious to the Company, or (ii) a Temporary Staff member is breaching any of his or her material obligations under this Agreement, or (iii) a Temporary Staff member is willfully disobeying a lawful direction of the Board of Directors or senior management of the Company.

APServices llc

The Second Payment set forth above will be forfeited by APS (i) in the event that APS resigns without good reason or is terminated by the Company for Cause prior to the due date of the Second Payment or if, (ii) prior to its payment, Mr. Koch ceases to be CEO as a result of his voluntary resignation, death or disability, and APS fails to designate a reasonably acceptable replacement.

In the event that the anticipated sale to NewCo does not occur as planned, it is agreed that the Company and APS will negotiate in good faith to develop a replacement success fee formula that is patterned after that which was included in the AlixPartners Engagement Letter.   APS acknowledges that such good-faith negotiations may not result in the parties' agreement on a replacement success fee formula.

3.  **Expenses:**  In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse APS upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals,  postage, courier, routine black and white copying, telephone, messenger and facsimile charges, subject to the Company's expense policies.

4.  **Break Fee:**  A break fee (the "Break Fee") will be payable to APS in the event that APS is terminated other than for Cause, as defined in Section 2 of this Schedule 1, prior to payment of $6.5 million as set forth in 2(b) above or by APS due to a material breach of this Agreement by the Company.  The amount of such Break Fee shall be $6.5 million.  Any payment of the Break Fee shall be in full satisfaction and release of any amounts that might otherwise be payable under paragraph 2 (b) or (c) above.

5.  **Retainer:**  This will confirm that AlixPartners is holding a retainer in the amount of $20 million (the "Retainer") pursuant to the AlixPartners Engagement Letter.  Our billings for services rendered by AlixPartners and/or APS for the period ending May 31, 2009 will include actual time incurred through May 15, 2009 and an estimated billing for the period ending May 31, 2009.  It is agreed that such billings will be paid by wire transfer on or before May 29, 2009, provided that any invoice therefor is received by the Company on or prior to May 21, 2009.  In accordance with APS' standard terms and conditions, payment received for such invoice will replenish the Retainer to the agreed-upon amount.

At the inception of this Agreement, the full amount of the Retainer will be transferred from AlixPartners to APS.  If actual approved billings for May are less than the amount paid, then APS will adjust June billings to reflect this overage.  If actual approved time is more than the amount paid, then such difference will be charged to the Retainer, thereby permanently reducing the Retainer.



SCHEDULE 2

DISCLOSURES

APS has caused to be submitted for review, by its conflicts check system, the names of significant parties in interest in this case, as provided to APS by the Company. Additional parties in interest continue to be identified and this Schedule 2 may be updated by APS from time to time to disclose additional connections or relationships between APS and the interested parties.

APS completed a search of its client database for the past five years to determine whether it has had or has any relationships with the parties in interest provided by the Company thus far. Based on this search, APS knows of no fact or situation that would represent a conflict of interest for APS with regard to the Company. However, APS wishes to disclose the following:

- H&F Astro LLC and Hellman & Friedman Capital Associates V, LLC ("H&F Capital"), two private equity investment vehicles managed by Hellman & Friedman LLC ("H&F LLC", and collectively with H&F Astro LLC and H&F Capital, "H&F") own a controlling stake in AlixPartners, LLP ("AlixPartners"), an affiliate of AP Services, LLC ("APS"), which the Debtors engaged prepetition to provide certain advisory services. No material nonpublic information about the Debtors has been furnished by AlixPartners to H&F. AlixPartners' conflict checking system has searched the names of each managing director of H&F LLC and each portfolio company of H&F LLC (the "H&F Conflict Parties") against the list of Potential Parties in Interest, and AlixPartners has determined to the best of its knowledge that there are no resulting disclosures other than as noted herein. However, H&F, its members, affiliated fund entities or affiliates (collectively, the "H&F Entities") may have had, currently have or may in the future have business relationships or connections with the Debtors or other Potential Parties in Interest in matters related to or unrelated to the Debtors or their affiliates or these chapter 11 cases. The engagement will be performed solely by APS. AlixPartners operates independently of the H&F Entities, and does not share common employees or officers, except that certain H&F LLC managing directors or employees are on the Board of Directors of AlixPartners. AlixPartners' financial performance is not impacted by the success or failure of the H&F Entities. Accordingly, neither APS nor AlixPartners has undertaken to determine the existence, nature and/or full scope of any business relationships or connections that the H&F Entities may have with the Potential Parties in Interest, the Debtors or these chapter 11 cases, other than with respect to the H&F Conflict Parties. APS believes it continues to be disinterested and does not hold or represent an interest adverse to the estate with respect to the engagement, regardless of any direct or indirect relationship to or connection any of the H&F Entities may have with the Debtors.

- There are fifteen confidential clients of AlixPartners and/or APS, who are professionals in interest, suppliers, director affiliated companies, insurance providers, indenture trustees, investment bankers, executory contract counterparties, litigation parties, equity interest parties, utility providers, lenders, customers, bondholders, competitors and

APServices LLC

creditors to the Debtors. The confidential clients are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- AlixPartners is currently engaged by certain clients that may be suppliers to the Debtors, as more specifically described herein with respect to such individual clients. AlixPartners believes that these engagements do not present conflicts with respect to APS' proposed engagement by the Debtors. To alleviate potential conflict concerns, AlixPartners has developed guidelines in individual matters such as (i) informational barriers; and (ii) separate engagement teams. In addition, AlixPartners' and APS' professionals will continue to adhere to their confidentiality obligations with respect to individual engagements.

- A minor supplier to the Debtors is a current confidential client of AlixPartners. A managing director of AlixPartners is acting as Chief Restructuring Officer of the confidential client. AlixPartners believes that this engagement does not represent a conflict. In addition, AlixPartners' and APS' professionals will continue to adhere to their confidentiality obligations with respect to individual engagements.

- AlixPartners or an affiliate currently has a confidential pending client engagement with a supplier to the Debtors or an affiliate, in matters unrelated to the Debtors and their affiliates, except that the engagement indirectly involves a subsidiary of the Debtors. AlixPartners is not involved in negotiations with the subsidiary of the Debtors. AlixPartners believes that this engagement does not represent a conflict of interest between APS and the Debtors. In addition, professionals of AlixPartners and its affiliates will continue to adhere to their confidentiality obligations with respect to individual engagements.

- AlixPartners has previously represented GM and certain of its affiliates in numerous matters unrelated to this proceeding, in various capacities including financial advisor, officer, and litigation consultant.

- Many employees of AlixPartners have purchased GM vehicles under various published supplier discount programs; have financed vehicles and other purchases with GMAC financing on an arms-length basis, and have purchased other products and services offered to the public by General Motors Corporation ("GM"), its various divisions, and subsidiaries. These personal/consumer purchases may also occur in the future on an arms-length basis.

- We understand that Jay Alix, a minority equity holder and a former managing director of AlixPartners, and a former member of the Board of Directors of AlixPartners, may have entered into discussions with the Debtors regarding the potential engagement of Mr. Alix as a consultant to the Debtors. To our knowledge, while Mr. Alix consulted with the Debtors, he was not engaged by the Debtors and was not paid for his services.

- ABN AMRO and ABN AMRO Rothschild LLC ("ABN AMRO"), lenders, investment bankers and professionals in interest to the Debtors, are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. ABN AMRO

APServices LLC

is an indenture trustee, lender, bondholder, executory contract counterparty and collateral agent for vendors to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. ABN AMRO provides banking services to AlixPartners in matters unrelated to the Debtors and their affiliates.

- ACE American Insurance Company ("ACE"), an insurance provider to the Debtors, is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- AIG, AIG Global Investment Group and American International Group ("AIG"), bondholders, lenders and insurance providers to the Debtors, are affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. AIG has provided various types of insurance to AlixPartners in matters unrelated to the Debtors and their affiliates.

- American Axle & Manufacturing Holdings, a creditor to the Debtors, is the previous employer of a current AlixPartners employee.

- American Airlines, a director affiliated company to the Debtors, is a current and former client of AlixPartners and/or APS in matters unrelated to the Debtors and their affiliates. American Airlines was a customer to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. American Airlines is the previous employer of current AlixPartners employees.

- American Express Company ("American Express"), a director affiliated company to the Debtors, is a vendor to AlixPartners as well as a lender, bondholder, creditor and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. American Express is a member of a creditors' committee that was a former AlixPartners client in matters unrelated to the Debtors and their affiliates. American Express is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ameritech, a creditor to the Debtors, is a creditor, lender and vendor to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Ameritech was a member of a creditor's committee that retained AlixPartners in matters unrelated to the Debtors and their affiliates.

- Amoco Corporation, a director affiliated company to the Debtors, is a co-defendant and lessor to former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Amoco Corporation is an affiliated entity to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- AON Inc, an insurance provider to the Debtors, is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates. AON Inc. is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

APServices LLC

- Apollo Management, a limited partner with the Debtors in various investment fund vehicles, is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Apollo Management is the parent of a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- AT&T, AT&T Business Service, AT&T Calling Cards, AT&T Capital Services Inc, AT&T Collocation Pro Cabs, AT&T Corp., AT&T Datacomm Inc., AT&T Inc Legacy SBC, AT&T Southeast, AT&T Teleconference, AT&T VTNS, AT&T Worldnet and AT&T Yellow Pages ("AT&T"), utility providers and director affiliated companies to the Debtors, are creditors, executory contract counterparties, vendors, lenders and shareholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate of AT&T is a former APS client in matters unrelated to the Debtors and their affiliates. AT&T is a vendor and a current client of AlixPartners in matters unrelated to the Debtors and their affiliates.

- Austin Ventures, a limited partner with the Debtors in various investment fund vehicles, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Avenue CLO V (collectively "Avenue"), a lender to the Debtors, is a lender, bondholder, executory contract counterparty and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Avenue is a client related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Avis Budget Car Rental and Avis Budget Group (collectively, "Avis"), customers to the Debtors, are the previous employers of a current AlixPartners employee. Avis is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Banca Intesa, a lender to the Debtors, has provided banking services to AlixPartners Srl, an affiliate of AlixPartners and APS.

- Bank of America Securities, LLC and Bank of America, N.A., lenders to the Debtors, are current and former clients of AlixPartners, as well as executory contract counterparties, creditors and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Bank of Montreal, a lender to the Debtors, is a bondholder, lessor and lender to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Bank of Montreal is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Bank of Montreal is a co-client to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Bank of New York, BNY GCM (Belgium), BNY Mellon Wealth Management and Bank of New York Mellon Corporation, ("BNY"), lenders, shareholders, bondholders, professionals in interest and indenture trustees to the Debtors, are lenders, bondholders, creditors and indenture trustees to current and former AlixPartners and/or APS clients in

APServices LLC

matters unrelated to the Debtors and their affiliates. In addition, BNY is the previous employer of a current AlixPartners employee.

- Bank of Nova Scotia, a lender to the Debtors, was formerly a member of a bank group that retained AlixPartners as well as a creditor, lender and bondholder to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Bank One Corporation ("Bank One"), a director affiliated company to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. Bank One is a lender, creditor and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Barclays Bank, Barclays Bank of Kenya Limited, Barclays Bank PLC, Barclays Capital Inc. and Barclays Global Investors Limited ("Barclays Bank"), lenders, executory contract counterparties, bondholders, investment bankers and significant shareholders to the Debtors, and affiliated entities are creditors, significant shareholders, adverse parties, lenders and bondholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Barclays Bank is a vendor to AlixPartners and is a co-client to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Barclays Bank is also the previous employer of a current AlixPartners employee.

- Bell South, Bell South Corp., Bell South Long Distance, Bell South Telecommunications and Bell South Business Systems are utility providers to the Debtors. Bell South is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Bear Stearns, Bear Stearns International Limited and Bear Stearns & Co. Inc., lenders, professionals in interest and investment bankers to the Debtors, are lenders, bondholders, and professional in interests to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Blue Cross Blue Shield ("BCBS"), a creditor to the Debtors, is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates. BCBS is a vendor and insurance provider to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- BNP Paribas and BNP Paribas Securities Corp., lenders, bondholders and professionals in interest to the Debtors, were lenders, creditors, professionals in interest to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. BNP Paribas is a related party to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Bosch, Robert Stifung GmbH, a creditor to the Debtors, is affiliated with an entity that is a creditor, vendor and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Robert Bosch Tool

APServices LLC

Corporation, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Robert Bosch previously employed a current AlixPartners employee.

- BP Amoco p.l.c, BP Canada Energy Mktg Corp , BP Energy Co USA, BP PLC - Yorktown Virginia Refinery, BP PLC (formerly, BP PLC- Yorktown Virginia Refinery), BP Products N America Inc , BP Solar International Inc. and BP Trinidad & Tobago LLC (collectively, "BP"), director affiliated companies and utility providers to the Debtors, are current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates. An affiliate, BP Energy, is an executory contract counterparty and customer of current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Brown Rudnick LLP, a professional in interest in this bankruptcy matter, is opposing counsel and a professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Brown Rudnick LLP is plaintiff's counsel in threatened litigation against AlixPartners and APS.

- Brunswick Corporation, a customer to the Debtors, is a professional in interest and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Brunswick Corporation is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Burger King Corporation, a director affiliated company to the Debtors, is the previous employer of a current AlixPartners employee.

- Cadwalader, Wickersham & Taft LLP ("Cadwalader"), a professional in interest in this bankruptcy matter, is client counsel and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Cadwalader is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Canadian Imperial Bank of Commerce ("CIBC"), a lender to the Debtors, is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Other CIBC affiliated entities are lenders, bondholders, creditors, shareholders and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Carlyle Group, Carlyle High Yield Part 2008-1, Carlyle High Yield Part IX Ltd, Carlyle Partners IV, L.P. and Carlyle Partners V, L.P. (collectively, "Carlyle"), director affiliated companies and lenders to the Debtors, are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Carlyle affiliated entities have been lenders, creditors and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Caterpillar Inc Mstr Pen Tr, Caterpillar Logistics LLC, Caterpillar Logistics Services Inc., Caterpillar Logistics Services International NV, Caterpillar Logistics Supply Chain Services GMBG and Caterpillar Logistics Supply Chain Services Italia (collectively,

APServices llc

"Caterpillar"), lenders, equity interest parties and joint venture parties to the Debtors, are vendors, customers, adverse parties, lenders, creditors and director affiliated companies to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Chevrolet Austria GmbH, Chevrolet Belgium, Chevrolet Deutschland GmbH, Chevrolet Espana S.A., Chevrolet Euro Parts Center B.V., Chevrolet Europe GmbH, Chevrolet Finland OY, Chevrolet France S.A.S., Chevrolet Italia S.p.A., Chevrolet Nederland B.V., Chevrolet Of Novato, Inc., Chevrolet Poland Sp. Z.O.O., Chevrolet Portugal, LDA, Chevrolet S.A. De Ahorra Para Fines Determinados, Chevrolet Sales (Thailand) Ltd., Chevrolet Sociedad Anonima De Ahorro Para Fines Determinados, Chevrolet Southeast Europe Automobile LLC., Chevrolet Suisse S.A., Chevrolet Sverige AB, Chevrolet Turkiye Ticaret Ltd. Sti., Chevrolet UK Ltd. and Chevrolet-Saturn Of Harlem, Inc., equity interest parties to the Debtors, are affiliated with an entity that is the previous employer of a current AlixPartners employee.

- Chrysler LLC, a competitor to the Debtors, is affiliated with entities that were customers, adverse parties, vendors, lenders and executory contract counterparties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Chrysler, LLC is the previous employer of a current AlixPartners employee.

- Citibank N.A., Bangkok Branch, Citibank N.A., Taipei Branch, Citibank NA-N Y, Citibank, N.A., Citibank, N.A., Citibank, National Association (Las Vegas, NV), Citicorp Securities Services Inc., Citicorp USA, Inc., Citigroup and Citigroup CIB (collectively, "Citi"), executory contract counterparties, lenders, professionals in interest, indenture trustees, bondholders, investment bankers and creditors to the Debtors, and affiliated entities are creditors, lenders, bondholders, shareholders, adverse parties, professionals in interest and lessors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Citizens Savings Bank, a lender to the Debtors, is the previous employer of a current AlixPartners employee. Citizens Savings Bank is a creditor and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Coca-Cola Beverages PLC, Coca-Cola Company and Coca-Cola HBC (collectively, "Coca-Cola"), director affiliated companies to the Debtors, are affiliated with an entity that is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Coca-Cola is the previous employer of a current AlixPartners employee.

- Comerica Bank ("Comerica), a lender to the Debtors, is a former lender to AlixPartners and is also a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Comerica is a lender, creditor, co-defendant and bondholder to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Comerica is the previous employer of a current AlixPartners employee. Comerica provides banking services to AlixPartners.

APServices LLC

- Commerzbank AG, a lender to the Debtors, is an indenture trustee, lender, creditor and litigation party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Compaq Computer Corporation and Compaq Europe International, director affiliated companies to the Debtors, were client related parties to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Compaq Computer is an adverse party, lessee, and executory contract counterparty to former AlixPartners clients in matters unrelated to the Debtors and their affiliates.

- ConocoPhillips Company, a utility provider to the Debtors, is a creditor, executory contract counterparty and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, ConocoPhillips is a related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Continental AG, a creditor to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Continental AG is a vendor to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Cravath Swaine & Moore, a professional in interest in this bankruptcy matter, is opposing counsel, client counsel and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Cravath Swaine & Moore is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Cravath Swaine & Moore is a vendor to AlixPartners.

- Credit Suisse Securities (USA) LLC-Investment Arm ("CSS"), an investment banker and shareholder to the Debtors, is an affiliate of current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Other CSS affiliated entities are lenders, creditors, bondholders, shareholders, limited partners and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Credit Suisse, is the previous employer of a current AlixPartners employee.

- Daimler AG, a strategic alliance to the Debtors, is affiliated with entities that were customers, adverse parties, vendors, lenders and executory contract counterparties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Dana Holding Corporation, a creditor to the Debtors, is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Davidson Kempner Capital Management, a bondholder to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Davidson Kempner Capital Management is a lender to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

APServices LLC

- Davis Polk & Wardwell, a professional in interest in this bankruptcy matter, is a creditor, professional in interest and client counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Deloitte & Touche, Deloitte Touche Tohmatsu and Deloitte, LLP (collectively, "Deloitte"), professionals in interest in this bankruptcy matter and creditors to the Debtors, are vendors to AlixPartners, adverse to a former AlixPartners client, as well as professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Deloitte is a current client of AlixPartners in matters unrelated to the Debtors and their affiliates. Additionally, Deloitte affiliated entities previously employed several current AlixPartners employees.

- Delphi Corp., Delphi Energy And Engine Management Systems UK Overseas and Delphi ERISA Litigation (collectively, "Delphi"), creditors, customers and litigation parties to the Debtors and entities in which the Debtors own an equity interest, and affiliated entities, are creditors, vendors, co-defendants and customers of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Delphi is the previous employer of a current AlixPartners employee.

- The Department of the Treasury, a government agency to the Debtors, is an affiliate of an entity, the Internal Revenue Service ("IRS"), that is a creditor, adverse party, vendor and client through representative creditors' committee to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. The IRS is the previous employer of current AlixPartners employees. An affiliate, The Department of Justice ("DOJ") is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates. The DOJ has also been an adverse party and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Deutsche Bank, Deutsche Bank AG, Deutsche Bank AG London, Deutsche Bank Luxembourg S.A. as Fiscal Agent, Deutsche Bank Securities Inc. and Deutsche Bk-New York (collectively, "Deutsche Bank"), lenders, director affiliated companies, indenture trustees, creditors, investment bankers, professionals in interest and bondholders to the Debtors, are affiliated with entities that are shareholders, lenders, adverse parties, indenture trustees, creditors, limited partners and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Deutsche Bank is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Also, Deutsche Bank provides banking services to AlixPartners in matters unrelated to the Debtors and their affiliates.

- DirecTV Group, a director affiliated company to the Debtors, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Dresdner Bank, a lender to the Debtors, and affiliated entities are indenture trustees, lenders, lessors, members of bank group clients, professionals in interest and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

APServices LLC

- DTE Defiance LLC, DTE Energy, DTE Energy Services Inc., DTE Moraine, LLC, DTE Tonawanda LLC and DTE Tonawanda LLC (collectively, "DTE"), utility providers and executory contract counterparties to the Debtors, are affiliated with an entity that is the previous employer of a current AlixPartners employee.  DTE Energy is an executory contract counterparty to a former APS client in matters unrelated to the Debtors and their affiliates.

- Duke Energy, a utility provider and strategic alliance party to the Debtors, is a creditor, director affiliated company and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Eaton Vance Cdo IX Ltd, Eaton Vance Cdo VIII Ltd, Eaton Vance Cdo X PLC, Eaton Vance Fltg Rt Inc Tr, Eaton Vance Grayson & Co, Eaton Vance Instl Sr Ln Fd, Eaton Vance Loan Opp Fd Ltd, Eaton Vance Ltd Duration Inc Fund, Eaton Vance Medallion Floating, Eaton Vance Senior Inc Tr, Eaton Vance Sht Dur Div Inc Fd, Eaton Vance Sr Debt Pf, Eaton Vance Sr Debt Pf, Eaton Vance Sr Fltg Rt Tr and Eaton Vance Sr Inc Tr (collectively, "Eaton Vance"), lenders to the Debtors, and affiliated entities are lenders, creditors and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  In addition, Eaton Vance was part of a bank group for which AlixPartners performed services, in matters unrelated to the Debtors and their affiliates.

- EDS LLC, a utility provider to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. EDS is an adverse party and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  EDS is the previous employer of current AlixPartners employees.

- E.I. DuPont GP, DuPont Automotive, Dupont Safety & Protection and Dupont Coatings & Color Technologies Group (collectively, "DuPont"), directors affiliated companies to the Debtors, are affiliated with an entity that is a former client of AlixPartners in matters unrelated to the Debtors and their affiliates.  DuPont is a creditor, vendor, executory contract counterparty and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  DuPont is the previous employer of current AlixPartners employees.

- Entergy, a utility provider to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ericsson Inc., Ericsson LM Telephone Co., Ericsson NV/SA, Ericsson SpA and Ericsson Telecomunicacoes S.A. (collectively, "Ericsson"), director affiliated companies to the Debtors, are affiliated with an entity that is a client related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ernst & Young LLP ("E&Y"), New York, a professional in interest in this bankruptcy matter and director affiliated company to the Debtors, is an adverse party, vendor and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  E&Y is a vendor to AlixPartners and previously employed

APServices LLC

several current AlixPartners employees.  E&Y is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Erskine Bowles, a current member of the GM Board of Directors, was a former consultant to AlixPartners, but this role has terminated.  These positions did not overlap. Mr. Bowles completed his service with AlixPartners over two years ago.  He has no financial interest in AlixPartners and, to the best of our knowledge, has no financial interest or connection with any of AlixPartners' clients.

- Evergreen Core Plus Bd Fd, Evergreen Hi Yld Bd Tr, Evergreen High Income Fund, Evergreen Inc Adv Fd, Evergreen Multi-Sector Income, Evergreen Utly & Hi Inc Fd and Evergreen Va High Income Fd  (collectively, "Evergreen"), lenders to the Debtors, are affiliated to an entity that is a related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Fannie Mae, a director affiliated company to the Debtors, is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Federal Trade Commission, a government authority in this bankruptcy matter, is the previous employer of a current AlixPartners employee.

- Federal Mogul Corporation, a supplier to the Debtors, is a current client of AlixPartners in matters unrelated to the Debtors and their affiliates.  In addition, Federal Mogul previously employed a current AlixPartners employee.

- FIAT – GM Powertrain B.V., FIAT – GM Powertrain Polska Sp. z.o.o., Fiat Partecipazioni S.p.A. and Fiat-GM Powertrain Polska Sp Z o.o. (collectively, "FIAT"), joint venture parties and entities in which the Debtors own an equity interest, are affiliated with an entity that is the previous employer of a current AlixPartners employee. FIAT is a customer to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.  Fiat is also a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Fidelity Advr Sr I-Advr Hi In, Fidelity Advr Sr II-Advr Strt, Fidelity American Hi Yld Fd, Fidelity Ballyrock Clo II, Fidelity Ballyrock Clo III, Fidelity Canadian Asset All, Fidelity Cip LLC:Fid Fl Rate, Fidelity Management & Research Co., Fidelity Management & Research Company, Fidelity Puritan Tr-Puritan Fd, Fidelity Sch St Tr-Strt Inc Fd, Fidelity Summer St Tr-Cap & In and Fidelity Summer St-Cap & Inc Fd, (collectively, "Fidelity"), lenders, bondholders and shareholders to the Debtors, are affiliated with an entity that is a vendor to AlixPartners. In addition, Fidelity and affiliated entities are also lenders, lessors, adverse parties, director affiliated companies, executory contract counterparties, customers, lessees, bondholders and shareholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Fidelity is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

Page 21 of 41

- Fifth Third Bank, a lender to the Debtors, is a bondholder, creditor, lender, lessor and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Fifth Third Bank is a member in a bank group for which AlixPartners performed services in matters unrelated to the Debtors and their affiliates. Fifth Third Bank is a client-related party and a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- First Chicago NBD, a director affiliated company to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- First Union Corporation ("FU"), a director affiliated company to the Debtors, is a lender, limited partner, bondholder and director affiliated company to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Ford Motor Company ("Ford Motor"), a director affiliated company, competitor and strategic alliance party to the Debtors, and affiliated entities are customers, lenders, adverse parties, vendors, plaintiffs and client litigants to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Ford Motor is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Fortress Cr Invs I Ltd and Fortress Cr Invs II Ltd ("Fortress"), lenders to the Debtors, and affiliates are former clients of AlixPartners and/or APS in matters unrelated to the Debtors and their affiliates. Additionally, Fortress is a lender and shareholder to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Franklin Advisors, a bondholder to the Debtors, is a shareholder, creditor, co-plaintiff and lender to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- General Electric Capital Corporation, General Electric Co., GE Asset Management Inc., GE Capital, GE Capital Consumer Financial Services, GE Card Services, GE Commercial Finance, GE Corporate Financial Services, GE Fleet Services of GE Commercial Finance and GE Insurance Solutions (collectively, "GE"), bondholders, director affiliated companies, creditors, and lenders to the Debtors, are creditors, customers, lenders, vendors, litigation parties, adverse parties, lessors and bondholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. GE is a client-related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. General Electric Capital Corporation is the previous employer of a current AlixPartners employee.

- GM or its affiliated entitiesare creditors, adverse parties, shareholders, vendors, bondholders, customers and lenders to current and former clients of APS and/or AlixPartners.

AP Services LLC

- GMPT (General Motors Powertrain Europe), a division of a non-debtor affiliate of Debtors, is a current client of AlixPartners or its affiliates,providing consulting services to GMPT in matters that are not directly related to the restructuring of the Debtors.

- General Motors Corporation is the previous employer of numerous current AlixPartners employees.

- GMAC, GMAC Auto Lease Payment Corp., GMAC Auto Lease Purchase Corporation, GMAC Banque, GMAC Holding S.A. De C.V. and GMAC LLC (collectively, "GMAC"), customers, strategic alliance parties and equity interest parties to the Debtors, are former AlixPartners clients in matters unrelated to the Debtors and their affiliates. GMAC is an adverse party, creditor and lender to current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates. GMAC is the previous employer of a current AlixPartners employee.

- GMAM Investment Funds Trust and GMAM Real Estate I, LLC are lenders and equity interest parties to the Debtors. GMAM Investment Funds Trust is a related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Goldentree Ln. Opportunities III Ltd. and Goldentree Ln. Opportunities IV Ltd., lenders to the Debtors, are professionals in interests and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Goldman Sachs, Goldman Sachs Cr Parts LP, Goldman Sachs Group Inc., Goldman Sachs Group Inc. and Goldman Sachs-Abs Loans 2007 L (collectively, "Goldman Sachs"), lenders, director affiliated companies, professionals in interest and investment bankers to the Debtors, are affiliated with an entity that is a former client of AlixPartners as well as  lenders, litigants, lessees, bondholders, professionals in interest and shareholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Additionally, Goldman Sachs is the previous employer of current AlixPartners employees.

- Goodyear Tire & Rubber, a creditor to the Debtors, is a creditor to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Goodyear Tire & Rubber is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Graduate School of Business at the University of Chicago, a director affiliated company to the Debtors, is an affiliate to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate, The University of Chicago, is a bondholder to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Great American, an insurance provider to the Debtors, is affiliated with entities that are vendors, related parties, executory contract counterparties and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

APServices LLC

- Hartford Flting Rt Fd and Hartford-Fltg Bk Ln Sr Of Hart, lenders to the Debtors, are affiliated to entities that are creditors, bondholders, lenders, vendors, executory contract counterparties and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Hayes Lemmerz is a current client of APS, and Kevin Carmody of APS is acting as Chief Restructuring Officer of Hayes Lemmerz.  APS is not involved, however, in customer negotiations or other issues related to GM.  To alleviate any potential conflict concerns, APS has placed an information barrier between Hayes Lemmerz and GM  In addition, separate engagement teams have been established with instructions to make certain no information is shared between engagement teams.

- Haynes and Boone, a professional in interest in this bankruptcy matter, was a member of a creditors' committee for which AlixPartners worked, as well as client professional and vendor to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Haynes and Boone is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Heidrick & Struggles, a directors affiliated company to the Debtors, is a professional in interest to a former APS client and a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Hertz Corporation, a customer to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.  Hertz Corporation is a litigation party and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Hertz Corporation is a contract vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Hewlett-Packard ("HP"), a creditor and lender to the Debtors, is a lender, vendor, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  HP is the previous employer of a current AlixPartners employee.

- Highland Credit Opp CDO Ltd, Highland Floating Rate Fund, Highland Offshore Ptnrs LP and Highland-Pac Sel Fd Fltg Rt Ln, (collectively, "Highland"),       lenders to the Debtors, are lenders to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  An affiliate, Highland Capital, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.  An affiliate, Highland Capital, is the previous employer of a current AlixPartners employee.

- Honda, a competitor to the Debtors, and its affiliated entities are customers, creditors, vendors, co-defendants and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Honigman Miller Schwartz and Cohn, a professional in interest to the Debtors, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.  Honigman Miller Schwartz and Cohn is a professional in interest and client

AP Services LLC

counsel to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates, and is also a vendor to AlixPartners and/or APS.

- Houlihan Lokey ("Houlihan"), a professional in interest in this bankruptcy matter, is a professional in interest and investment banker to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Houlihan is an affiliate of a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- HSBC Finance Corp. and HSBC Financial Corp., ("HSBC"), lenders and strategic alliance parties to the Debtors, are lenders, creditors, indenture trustees and related parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. HSBC is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates.

- Hughes Electronics Corporation, a director affiliated company to the Debtors, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- ING Bank, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. ING affiliated entities were lenders, noteholders, creditors, bondholders, lessors and bank steering committee members to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Jack Smith, former chairman of GM, was a member of the AlixPartners' Advisory Board. Mr. Smith completed his service with AlixPartners over two years ago. He has no financial interest in AlixPartners and, to the best of our knowledge, has no financial interest or connection with any of AlixPartners' clients.

- Jenner & Block, a professional in interest in this bankruptcy matter, is an adverse party and client counsel to former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Jenner & Block is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Jerome B. York, a former director to the Debtors, was an officer to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Johnson Controls, a creditor to the Debtors, is a creditor and director affiliated company to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Johnson Controls is the previous employer of a current AlixPartners employee.

- Jones Day, a professional in interest in this bankruptcy matter, is client counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Additionally, Jones Day was counsel to the Creditors' Committee of a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Jones Day is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

APServices llc

- JP Morgan Chase, JP Morgan Whitefriars Inc, JPMorgan Chase & Co and JPMorgan Chase Bank (collectively, "JP Morgan"), lenders, professionals in interest and creditors to the Debtors, are affiliated with entities that are lenders, shareholders, vendors, bondholders and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  JP Morgan affiliated entities previously employed several current AlixPartners employees.

- KeyBank National Association, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.  In addition, KeyBank National Association is a creditor and lender to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Kirkland & Ellis LLP, a professional in interest in this bankruptcy matter, is counsel, adverse counsel and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Kirkland & Ellis is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates.  AlixPartners is a client of Kirkland & Ellis in matters unrelated to the Debtors and their affiliates.

- Kodak, a director affiliated company to the Debtors, and affiliates are adverse parties and executory contract counterparties to former AlixPartners clients in matters unrelated to the Debtors and their affiliates.  Affiliated entities are current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates.

- Kohlberg Kravis Roberts & Company ("KKR"), a director affiliated company to the Debtors, and affiliates are lenders, shareholders and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. KKR is a client related party and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- KPMG LLP, a professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.  KPMG is a professional in interest, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Additionally, KPMG previously employed several current AlixPartners employees.

- Lazard Group LLC and Lazard Ltd ("collectively, "Lazard"), professionals in interest in this bankruptcy matter and director affiliated companies to the Debtors, are creditors and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.   Lazard was a client through membership in a creditor's committee to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.   An affiliate, Lazard Freres, is the previous employer of a current AlixPartners employee.

- Lear Corporation ("Lear"), a creditor to the Debtors, is a customer and litigation party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Lear is a former AlixPartners client in matters unrelated to the

APServices LLC

Debtors and their affiliates. Lear is the previous employer of a current AlixPartners employee.

- Lehman Brothers Asset Management Inc, Lehman Brothers First Trust, Lehman Brothers High Income and Lehman Brothers (collectively, "Lehman Brothers"), shareholders, bondholders and lenders to the Debtors, are bondholders, shareholders and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Lehman Brothers previously employed a current AlixPartners employee. Lehman Brothers provided investment banking services to AlixPartners and affiliated entities. Lehman Brothers is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Lloyds, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate is a creditor, lender, insurer, litigation party, executory contract counterparty and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- M&T Bank, a lender to the Debtors, is a related party to a current AlixPartners client in matter unrelated to the Debtors and their affiliates.

- Magna International, a creditor to the Debtors, and affiliated entities are  former AlixPartners clients in matters unrelated to the Debtors and their affiliates. An affiliate of Magna Entertainment is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. In addition, an affiliate of Magna International, Magna PowerTrain, is a customer to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Marathon CLO I, Marathon CLO II Ltd and Marathon Financing I B V (collectively, "Marathon"), lenders to the Debtors, and affiliated entities are bondholders, significant shareholders and executory contract counterparties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Affiliated entities are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Marsh Inc., an insurance provider to the Debtors, is affiliated with an entity that is a creditor and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Marsh & McLennan, is a vendor to AlixPartners.

- MCI and MCI Worldcom ("MCI"), utility providers to the Debtors, and affiliated entities are creditors, litigation counterparties, executory contract counterparties and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. MCI is a former client of APS in matters unrelated to the Debtors and their affiliates. Verizon is a vendor to AlixPartners.

- Merrill Lynch & Co., Inc., Merrill Lynch Bank, Merrill Lynch Canada Finance Company, Merrill Lynch Cap Serv Inc, Merrill Lynch International & Co Cv, Merrill

ΛPServices LLC

Lynch International Limited, Merrill Lynch Preferred Capital Trust I, Merrill Lynch Preferred Capital Trust II, Merrill Lynch Preferred Capital Trust III, Merrill Lynch Preferred Capital Trust IV, Merrill Lynch Preferred Capital Trust V, Merrill Lynch Preferred Capital Trust VI, Merrill Lynch Preferred Funding I LP, Merrill Lynch Preferred Funding II LP, Merrill Lynch Preferred Funding III LP, Merrill Lynch Preferred Funding IV LP, Merrill Lynch Preferred Funding V LP and Merrill Lynch Pierce Fenner & Smith (collectively, "Merrill Lynch"), director affiliated companies, professionals in interest, lenders and investment bankers to the Debtors, are affiliated with entities that are current and former clients of AlixPartners, as well as lenders, bondholders, shareholders, limited partners, adverse parties and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Merrill Lynch is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Merrill Lynch is the previous employer of current AlixPartners employees.

- Metaldyne Corporation, a supplier to the Debtors, is a current AlixPartners client in that AlixPartners is providing financial advisory services in connection with Metaldyne Corporation's chapter 11 bankruptcy proceeding. AlixPartners is not assisting Metaldyne Corporation with any negotiations or other issues involving GM. To alleviate any potential conflict concerns, AlixPartners has placed an information barrier between Metaldyne Corporation and GM. In addition, separate engagement teams have been established with instructions to make certain no information is shared between engagement teams.

- Microsoft Global Finance ("Microsoft"), a lender to the Debtors, is a vendor, lender, and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Microsoft is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Minnesota Mining & Manufacturing, a director affiliated company to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Mizuho Corporate Bank, a lender to the Debtors, is a lender, creditor, and client professional to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Mizuho Corporate Bank previously employed a current AlixPartners employee.

- Morgan Lewis and Bockius, a professional in interest in this bankruptcy matter, is opposing counsel, lender and professional in interest to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Morgan Lewis and Bockius is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. The spouse of a current AlixPartners employee, is a partner at Morgan, Lewis & Bockius, in matters unrelated to this bankruptcy matter. The spouse is not working on this bankruptcy matter.

- Morgan Stanley, Morgan Stanley & Co. Incorporated, Morgan Stanley and Co. and Morgan Stanley Sr Fd Inc (collectively, "Morgan Stanley"), professionals in interest in

Page 28 of 41

APServices LLC

this bankruptcy matter, bondholders, director affiliated companies and lenders to the Debtors, are lenders, bondholders, creditors, shareholders and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Morgan Stanley is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Morgan Stanley is the previous employer of a current AlixPartners employee.

- Motorola Inc. ("Motorola"), a director affiliated company to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Motorola is a creditor, customer and related party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Motorola is the previous employer of current AlixPartners employees.

- National City Bank, a lender to the Debtors, is affiliated with an entity that is a former AlixPartners client in a matter unrelated to the Debtors and their affiliates. National City Bank is a member of a bank group for which AlixPartners performed services in matters unrelated to the Debtors and their affiliates and is a lender to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- National Union ("NU"), an insurance provider to the Debtors, is affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. NU has also provided various types of insurance to AlixPartners in matters unrelated to the Debtors and their affiliates.

- New York State Common Retirement Fund, a shareholder to the Debtors, is a joint venture party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Nordic Capital, a limited partner with the Debtors in various investment fund vehicles, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Northern Trust Company, Northern Trust Company Securities Lending and Northern Trust Investments, N.A. (collectively, "Northern Trust"), lenders, bondholders and shareholders to the Debtors, are bondholders and lenders to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Northern Trust Company is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Oak Hill Cr Part III, Oak Hill Cr Partners IV, Oak Hill Credit Partners V Ltd and Oak Hill Credit Ptnrs II Ltd (collectively, "Oak Hill"), lenders to the Debtors, and affiliated entities were creditors, bondholders and lenders to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Oak Hill Advisors, is the parent of a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

APServices LLC

- Oaktree - Emp Ret Fd City Of D, Oaktree - Gen Brd Pen Hlth Bnf, Oaktree - High Yield LP, Oaktree - Intl Paper Co Comngl, Oaktree - Pac Gas & Elec Post, Oaktree Cap Mgmt-Hi Yld Tr, Oaktree Capital Management LLC, Oaktree Loan Fund 2x (Cay) LP, Oaktree Loan Fund, L.P., Oaktree-Bill & Melinda Gates, Oaktree-DaimlerChrysler Corp M, Oaktree-High Yield Fd II LP, Oaktree-San Diego Cty Emp Ret and Oaktree-Tmct (collectively, Oaktree"), lenders, competitors and bondholders to the Debtors, are affiliated with entities that were adverse parties to a former AlixPartners client in a litigated matter as well as bondholders and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Oaktree-DaimlerChrysler, a former affiliation of Chrysler, LLC, is the previous employer of a current AlixPartners employee.

- Oppenheimer Sr Fltg Rt Fd, a lender to the Debtors, and affiliated entities are lenders, bondholders and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Oppenheimer & Co., is the previous employer of a current AlixPartners employee.

- Pacific Gas & Electric ("PG&E"), a utility provider to the Debtors, is an executory contract counterparty, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, PG&E was a member of the creditors committee to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Panamsat Corporation, a director affiliated company to the Debtors, is an affiliate to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Paul Weiss Rifkind & Garrison, a professional in interest in this bankruptcy matter, is clients' legal counsel and opposing counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Paul Weiss Rifkind & Garrison is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Peco Energy Services, a utility provider to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Peco Energy is a vendor to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Penske Automotive Group, Inc., Penske Corporation and Penske Logistics, creditors, customers and executory contract counterparties to the Debtors, are joint venture parties to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate, Penske Performance Transportation, is the previous employer of a current AlixPartners employee.

- Peregrine, Inc. became a client in 1998. Peregrine was a significant supplier to GM. The stock of Peregrine was acquired by an affiliate of AlixPartners with the support of GM. Peregrine's working capital funding was provided by GM. GM also provided an

AP Services LLC

indemnification and guaranty to AlixPartners.  AlixPartners currently has no claims against GM in connection with the indemnification and guaranty.

- Peugeot S.A., a creditor to the Debtors, is an affiliate to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Pfizer, Pfizer Foundation, Pfizer Global Pharmaceuticals and Pfizer Human Health, director affiliated companies to the Debtors, are affiliated with entities that are potential acquirers, adverse parties, customers, executory contract counterparties and related parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- PNC Leasing LLC ("PNC"), an executory contract counterparty to the Debtors, is a bondholder, lender, significant shareholder and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. PNC is a current and former AlixPartners and/or APS client and is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.  PNC is the previous employer of a current AlixPartners employee.

- PricewaterhouseCoopers LLP ("PWC"), a professional in interest in this bankruptcy matter, is a professional in interest, opposing counsel and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. PWC is the auditor for AlixPartners and provides audit, tax and related consulting services.  PWC is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.  PWC is the previous employer of a number of current AlixPartners employees.

- Qwest, a utility provider to the Debtors, is a customer, vendor, related party, litigant, and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.  Qwest is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Richards Layton & Finger, a professional in interest in this bankruptcy matter, was counsel to former AlixPartners clients in matters unrelated to the Debtors and their affiliates and is counsel to AlixPartners in matters unrelated to the Debtors and their affiliates.  Richards Layton & Finger is also a professional in interest to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Richards Layton & Finger provides legal services to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Robert A. Lutz, an officer to the Debtors,  is an officer, director and significant shareholder to a former AlixPartners and/or APS client in matters unrelated to this bankruptcy matter.

- Rockwood Holdings Inc. and Rockwood Specialties Group Inc. are strategic alliance parties to the Debtors.  Rockwood Holdings Inc is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

APServices LLC

- Rothschild LLP, a professional in interest in this bankruptcy matter, is a professional in interest, bondholder and related party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Rothschild LLP is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Royal Bank of Scotland, a lender to the Debtors, is a lender and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Royal Bank of Scotland is an executory contract counterparty to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ryder Logistics, a creditor to the Debtors, is an affiliate to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Ryder affiliated entities were vendors, lessors and creditors to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Sankaty Cr Opps Off Mtr IV LP, Sankaty Credit Opp IV LP, Sankaty High Yield Part II LP and Sankaty Hy Part III LP (collectively, "Sankaty"), lenders to the Debtors, are lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- SBC and SBC Internet Services ("SBC"), utility providers to the Debtors and affiliated entities, are vendors, creditors, executory contract counterparties, related parties and lessors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. SBC is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Sara Lee Corp., a director affiliated company to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Shell Energy North America, Shell Energy Canada and Shell Hydrogen B.V., (collectively, "Shell"), utility providers and strategic alliance parties to the Debtors, are affiliated with an entity that is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. An affiliate, Shell Oil, is a creditor and vendor to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Simpson Thacher & Bartlett, a professional in interest in this bankruptcy matter, is opposing counsel and client professional to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Simpson Thacher & Bartlett is counsel to Hellman & Friedman LLC as well as to its affiliated private equity funds, including the funds that hold a controlling stake in AlixPartners. Simpson Thacher & Bartlett is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. In addition, Simpson Thacher & Bartlett provides services to AlixPartners.

- Skadden, Arps, Slate, Meagher & Flom, a professional in interest in this bankruptcy matter, is a professional in interest and client counsel to current and former AlixPartners

**AP**Services LLC

and/or APS clients in matters unrelated to the Debtors and their affiliates. Skadden, Arps, Slate, Meagher & Flom, is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Societe Generale, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Sonnenschein Nath & Rosenthal, a professional in interest in this bankruptcy matter, is a creditor, adverse party and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Sonnenschein Nath & Rosenthal is the previous employer of a current AlixPartners employee.

- Southern California Edison, a utility provider to the Debtors, is a joint venture entity to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Southern California Edison is an insurance provider and creditor to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Sprint, a utility provider to the Debtors, is a creditor, vendor and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate of Sprint is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- SunTrust Leasing Corporation, an executory contract counterparty to the Debtors, is affiliated with entities that are creditors, bondholders, lenders and indenture trustees to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, SunTrust Bank, is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Suzuki, Suzuki Motor Corp. and Suzuki Motor Corporation, executory contract counterparties, strategic alliance parties, competitors, joint venture parties and miscellaneous equity interest parties to the Debtors, are affiliates to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Tenneco Automotive, a creditor to the Debtors, is affiliated with entities that are co-defendants, customers and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Tenneco Automotive is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Tenneco Automotive is the previous employer of a current AlixPartners employee.

- Texas Instruments, a director affiliated company to the Debtors, is a client related party and a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Texas Instruments is the previous employer of a current AlixPartners employee.

- Thomas H. Lee Partners, L.P., an investment as a limited partner to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

$\text{A\!P}$ Services LLC

- Time Warner Telecom, a utility provider to the Debtors, and affiliated entities, are litigation parties, vendors, adverse parties, creditors and director-affiliated companies to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, America On-Line, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Toyota Motor Corporation ("Toyota"), a competitor, strategic alliance party and executory contract counterparty to the Debtors, and affiliated entities are customers, creditors, vendors and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Toyota is the previous employer of a current AlixPartners employee.

- TRW Automotive Holdings Corporation, a creditor to the Debtors, is a customer and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, TRW Inc., is the previous employer of a current AlixPartners employee.

- U.S. Bank Card Services, a wholly owned subsidiary of U.S. Bank ("US Bank"), a director affiliated company to the Debtors, is a lender, creditor, indenture trustee and bondholder to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. US Bank is a client-related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- UBS AG, UBS AG London, UBS Global Asset Management (US) Inc. and UBS Securities LLC (collectively, "UBS"), lenders, bondholders and investment bankers to the Debtors, are creditors, customers, director affiliated companies, lenders, lessors and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. UBS is the previous employer of a current AlixPartners employee.

- The United States Department of Justice ("DOJ"), a government agency to the Debtors, is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates. The DOJ has also been an adverse party and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Union Pacific Railroad, a creditor and director affiliated company to the Debtors, is a creditor, customer, adverse party and lessor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Union Pacific Railroad is the previous employer of a current AlixPartners employee.

- Van Kampen Asset Management, a shareholder to the Debtors, is affiliated with entities that are former AlixPartners clients as well as lenders, bondholders, and retained professionals to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- VeraSun Energy Corporation, a strategic alliance party to the Debtors, is a current APS client in matters unrelated to the Debtors and their affiliates.

APServices LLC

- Verizon Business and Verizon Communications (collectively, "Verizon"), utility providers to the Debtors, are former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Other Verizon affiliated entities are creditors, executory contract counterparties and vendors to several current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Verizon is a vendor to AlixPartners.

- Vestar Capital Partners, an investment party as a limited partner to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Visant Corporation, Visant Holding Corporation and Visant Secondary Holdings Corporation, director affiliated companies to the Debtors, are affiliated to an entity that is the parent to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Wachovia Bank ("Wachovia"), a director affiliated company to the Debtors, is a lender, bondholder, creditor, adverse party, co-defendant and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Wachovia is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Weil, Gotshal & Manges LLP, a professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. AlixPartners is a client of Weil, Gotshal & Manges, LLP in matters unrelated to the Debtors and their affiliates.

- Wellington Management Company, a bondholder to the Debtors, is the previous employer of a current AlixPartners employee. Wellington Management Company was a lender, bondholder and shareholder to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Wells – 13702900, Wells – 13823100, Wells – 14945000, Wells – 16017000, Wells 16463700 La Dept W&Pwr Em, Wells 16959700-Jh Hi Yld, Wells 16959701-John Hancock In, Wells Cap Mgmt – 13923601, Wells Cap Mgmt 12222133 and Wells Cap Mgmt 1886650 (collectively, "Wells Fargo"), lenders to the Debtors, are affiliated entities to a former client of AlixPartners through membership in a bank group for which AlixPartners performed services in matters unrelated to the Debtors and their affiliates. Other Wells Fargo affiliated entities are lenders, creditors, lessors, bondholders, indenture trustees and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Wells Fargo is a related party to a current AlixPartners client and a vendor to AlixPartners, in matters unrelated to the Debtors and their affiliates. Wells Fargo is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- WestLB AG, a lender to the Debtors, is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. WestLB AG, is a joint

APServices LLC

venture party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Western Asset Management, a bondholder to the Debtors, is a lender and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Western Asset Management is a client related party to a current APS client in matters unrelated to the Debtors and their affiliates.

- White & Case, a professional in interest in this bankruptcy matter, is a professional in interest to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. White & Case is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. White & Case is also a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Wilmington Trust Company, a creditor, indenture trustee and executory contract counterparty to the Debtors, is a bondholder, creditor, lessor and indenture trustee to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Wilmington Trust Company is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Xerox Corporation, a director affiliated company to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. Xerox is an adverse party, lessee, customer and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- XM Satellite Radio Holdings and XM Satellite Radio, Inc. ("XM"), customers, strategic alliance parties and equity interest parties to the Debtors, are affiliates to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. XM is a co-defendant and director affiliated company to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.



**SCHEDULE 3**

**INSURANCE PROGRAM**

Company D&O policies

2007-2009
Primary carrier: AIG/American International Specialty Lines Insurance Company
Primary carrier policy number: 480-99-87 Limit: $485-500 million, depending on policy period

Tail policy to 2007-09 D&O policy (Tail policy to become effective December 15, 2009; policy period through December 15, 2015)
Primary carrier: AIG/American International Specialty Lines Insurance Company
Primary carrier policy number: 480-99-87 Limit: $325 million

DIP D&O policy
D&O Policies which shall be obtained from the same carrier, or a similar world-wide carrier, as the policies listed above and which, except for having a Limit of Liability of $50 million or such other amount as approved by the Bankruptcy Court, shall have coverage terms and conditions that essentially "follows form" of such policies (including endorsements 13, 14, and 15 thereto)

These General Terms and Conditions ("Terms") are incorporated into the Agreement between the Company and APS to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Company Responsibilities.

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by APS in connection with this Agreement.

APS' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

### Section 2. Retainer, Billing and Payments.

**Retainer and Billing.** APS will submit monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future. Payment will be due within 15 calendar days after receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to APS shall be payable upon receipt of invoice via wire transfer to APS' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Comerica Bank |
| | ABA #072000096 |
| Receiving Account: | AP Services, LLC |
| | A/C #1851-765410 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, APS will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, neither the Temporary Staff nor APS will be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. APS will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

Nothing in this agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between APS and the Company or its Board of Directors.

### Section 4. Confidentiality.

APS shall keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither APS nor the Temporary Staff will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, APS from making such disclosures of Information that APS reasonably believes is required by law or any regulatory requirement or authority, or to clear client conflicts. APS may make reasonable disclosures of Information to third parties in connection with the performance of APS' obligations and assignments hereunder. In addition, APS will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), generated by APS and the Temporary Staff in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to APS at any time in any manner or for any purpose without APS' prior approval except as required by law.

Because of the nature of the services provided by AlixPartners, from time to time, separate teams of AlixPartners professionals may concurrently represent clients that are adverse to each other, or which may be viewed by clients to be adverse. Despite any such concurrent representation, each AlixPartners team shall strictly preserve all client confidences, and not disseminate such information externally, except pursuant to the terms of this engagement letter, or to any AlixPartners professionals that are currently working for an entity adverse to the Company. The Company agrees that it does not consider

## GENERAL TERMS AND CONDITIONS

such concurrent representation of the Company and any adversary by separate AlixPartners teams to be inappropriate and, therefore, waives any objections to any such present or future concurrent representation.

### Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of APS, and the Company shall not acquire any interest therein. APS shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to APS by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that APS creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. APS may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining APS to provide the Temporary Staff solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

To the fullest extent as would be permitted for the Company's officers under the Delaware General Corporation Law and the Company's bylaws and procedures, the Company shall indemnify, hold harmless and defend APS and its affiliates and its and their partners, directors, officers, employees, and Temporary Staff (collectively, the "indemnitees") from and against all claims, liabilities, losses, expenses and damages to the extent of the most favorable indemnities provided by the Company to any of its officers, which shall be primary and any similar obligations of APS, its affiliates and insurers to the indemnitees for the same claims, liabilities, losses, expenses and damages shall be secondary, provided, however, that to the extent any matter for which indemnification is called for hereunder arises while the Company is under the protection of the Bankruptcy Code, indemnification of APS personnel who are not directors or officers of the Company shall be subject to the approval of the Bankruptcy Court. To the fullest extent as would be permitted for the Company's officers under the Delaware General Corporation Law and the Company's bylaws and procedures, the Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. However, to the extent any

matter for which indemnification is called for hereunder arises while the Company is under the protection of the Bankruptcy Code, indemnitees acknowledge that the Company's ability to pay damages and expenses may be limited by the Bankruptcy Court. In addition, the Company shall pay the costs of APS' professional time (APS' professional time will be reimbursed at APS' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an indemnitee may be required or agree to participate but in which it is not a party. At their own expense (unless the Company and indemnitee, in good faith, jointly believe that there is a conflict), the indemnitees may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

The Company shall specifically include and cover, as a benefit for their protection, Temporary Staff serving as directors or officers of the Company, subsidiaries or affiliates from time to time (the "Covered Individuals") under the Company's policy for directors' and officers' ("D&O") insurance in place at the applicable time, and as further described on Schedule 3 hereto (the "Insurance Program"), which shall be specifically primary to any other valid and collectible insurance that may apply to the Covered Individuals for the same claims, liabilities, losses, expenses and damages. The definition of subsidiaries or affiliates in the previous sentence shall not be greater than that provided in the Company's D&O insurance coverage. The Covered Individuals acknowledge and agree that the standard of conduct each must satisfy in order to be afforded the protections and benefits afforded by coverage under any Company D&O insurance policy shall be that provided for under the terms of such policy. The Company will maintain D&O insurance coverage in accordance with the Insurance Program. The Company disclaims a right to distribution from the D&O insurance coverage with respect to the Covered Individuals. In the event that the Company does not obtain or fund payments required by any of the Company's policies that comprise the Insurance Program, APS may, at its option, attempt to purchase a separate D&O policy that will cover the Covered Individuals only and that will have no more than $50 million of coverage. The cost of same shall be invoiced to the Company as an out -of -pocket cash expense. If APS is unable to purchase such D&O insurance, then APS reserves the right to terminate the Agreement.

APS is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against APS, whether or not APS is instrumental in procuring the third-party product or service.

APS shall not be liable to the Company except for actual damages resulting from bad faith, self-dealing, intentional misconduct or gross negligence, and notwithstanding anything to the contrary in this Section 7, the Company shall not be liable for indemnification against any claim, liability, loss, expense or damages resulting from bad faith, self-dealing, intentional misconduct or gross negligence by

an indemnitee, or any act which may not be indemnified under the Delaware General Corporation Law.

### Section 8.  Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration.  Each party shall appoint one non-neutral arbitrator.  The two party arbitrators shall select a third arbitrator.  If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA).  The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award.  The arbitrators may award costs and attorneys' fees to the prevailing party.  Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.  In the event the Company files under Chapter 11, the Company and APS agree that the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with this Agreement, including the indemnification provisions outlined in Section 7, above.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9.  Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination APS will be entitled to any fees and expenses due under the provisions of the Agreement, including Success Fee and Break Fee in accordance with Schedule 1.  Such payment obligation shall inure to the benefit of any successor or assignee of APS.

Sections 2, 4, 5, 7, 8, 9, 10 and 11 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10.  Non-Solicitation of Employees.

The Company acknowledges and agrees that APS has made a significant monetary investment recruiting, hiring and training its personnel.  During the term of this Agreement and for a period of two years after the date that APS last renders services pursuant to this Agreement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of APS' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of

APS' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to APS as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD).  The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse APS for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that APS has made in its Managing Directors, Directors, and other employees/consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that APS shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision.  If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

### Section 11.  General.

**Severability.**  If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.**  These Terms, the letter agreement into which they are incorporated and the Schedule(s) and Exhibit to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by APS and the Temporary Staff and may not be amended or modified in any respect except in a writing signed by the parties.  APS is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties

**Joint and Several.**  If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Limit of Liability.**  APS shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages.  APS' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to APS for services on this engagement (the "Liability Cap").  The Liability Cap is the total limit of APS' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by APS pursuant to this Agreement.  Any such claimants shall allocate any amounts payable by APS among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the

AP SERVICES, LLC
GENERAL TERMS AND CONDITIONS

Liability Cap.  Under no circumstances shall the aggregate of all such allocations or other claims against APS pursuant to this Agreement exceed the Liability Cap.

**Notices.**  All notices required or permitted to be delivered under the Agreement shall be sent, if to APS, to:

> AP Services, LLC
> 2000 Town Center, Suite 2400
> Southfield, MI  48075
> Attention:  General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party.   All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.