Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admission *Pro Hac Vice* pending)
Peter D'Apice
Jo E. Hartwick  (Admitted *Pro Hac Vice*)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

COUNSEL FOR AD HOC COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            )
In re                                                       )    Chapter 11
                                                            )
GENERAL MOTORS CORP., *et al.*,                             )
                                                            )    Case No. 09-50026
                                                            )
                                        Debtors.            )    Jointly Administered
------------------------------------------------------------x


## MOTION OF THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR AN ORDER (I) APPOINTING A LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS AND (II) DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS

The Ad Hoc Committee of Asbestos Personal Injury Claimants[1] (the

"Ad Hoc Committee") respectfully submits this Motion for an Order (I)

---

[1] The Ad Hoc Committee of Asbestos Personal Injury Claimants is comprised of William J. Lewis, a mesothelioma claimant with a settled but unpaid claim, represented by SimmonsCooper LLC; Maureen Tavaglione, Personal Representative of the Estate of Robert J. Tavaglione, represented by Waters & Kraus; Terry Roth, a lung cancer claimant, represented by Brayton Purcell LLP; Jene Moore, Sr., a mesothelioma claimant represented by Early Ludwick & Sweeney L.L.C.; Edward Levitch, a mesothelioma claimant represented by Paul & Hanley LLP; and asbestos personal injury claimants represented by Cooney and Conway; The Lanier Law Firm PLLC and Weitz & Luxemberg, P.C.  Steven Kazan, Kazan, McClain, Lyons, Greenwood & Harley, PLC, serves as an *ex officio member*.

Appointing a Legal Representative for Future Asbestos Personal Injury Claimants (a "Future Claimants' Representative") and (II) Directing the United States Trustee to Appoint an Official Committee of Asbestos Personal Injury Claimants (an "Asbestos Committee") as follows:

## INTRODUCTION

Automobile manufacturers are prominent among the industries whose historic use of asbestos continues to give rise to serious asbestos disease and even death. As recently as July 26, 2006, the Department of Labor, through its Occupational Safety & Health Administration, issued a warning regarding continuing asbestos exposure in automotive brake and clutch repair work[2]. Also in 2006, a jury in the Supreme Court of New York for Manhattan returned a $25,000,000 verdict against a group of defendants, including one of the big-three American automakers which was found to have acted with reckless disregard for failing to warn workers of the hazards of asbestos exposure from brake linings. The claimant in that case was a retired worker aged 73 who lost his right lung due to mesothelioma, a cancer caused by asbestos[3].

General Motors as the largest of the domestic automakers has the same type of liabilities. While it has not yet filed its bankruptcy schedules,

---

[2] Safety and Health Information Bulletin 07-26-2006, United States Department of Labor, Occupational Safety and Health Information Website, http://www.osha.gov/dts/shib/shib072606.html
[3] D'Ulisse v. Amchem Products, et al., (No. 113838/04, in the Supreme Court of New York County, New York, July 10, 2007)

2

General Motors' most recent Quarterly Report (Form 10-Q)[4] filed with the Securities and Exchange Commission admits that it has hired the firm of "Hamilton Rabinovitz & Associates, Inc., a firm specializing in estimating asbestos claims, to assist us in determining our potential liability for pending and unasserted future asbestos personal injury claims." After noting that their estimates are "inherently subject to certain uncertainties" and that their data sources and assumptions "may not prove to be reliable predictors with respect to claims asserted against us," General Motors states that its "liability recorded for asbestos-related matters was $627 million, $648 million and $628 million at March 31, 2009, December 31, 2008 and March 31, 2008 respectively."[5] General Motors' 2007 Annual Report to Shareholders noted that it had increased its reserve for asbestos liability to $637 million based upon an analysis of Hamilton Rabinovitz & Associates reflecting "a reasonable estimate of our probably liability for asbestos related claims projected to be asserted over the next ten years."[6] Experience suggests that these figures fall on the extreme low side of likely future asbestos liability. Thus the magnitude of General Motors' projected ongoing asbestos liability has been a matter of public knowledge and should have been addressed by both General Motors and the Auto Task Force in their restructuring activities.

---

[4] General Motors Corporation, Form 10-Q filed May 8, 2009 for the Period Ending March 31, 2009 at page 31.
[5] Id.
[6] 2007 Annual Report to Shareholders of General Motors Corporation at page109.

3

Dr. Francine Rabinovitz' reports to General Motors concerning its liabilities not only to known current asbestos claimants but also to unknown future claimants make it clear that those liabilities extend far into the future—doubtless much farther than the ten-year window examined by her. The peculiarly lethal nature of asbestos exposure—that its insidious process may not manifest itself until many years after the worker comes into contact with the dangerous fiber—guarantees the existence of a group of unknown claimants who will regrettably and inevitably fall victim to the disease after this bankruptcy case is concluded. It is for this reason that Congress enacted special bankruptcy protections for victims of exposure to asbestos.

In this case, the Debtors' bankruptcy strategy is predicated in large part on a sale of substantially all of GM's assets to Vehicle Acquisition Holdings LLC (the "Purchaser"). The Debtors' Sale Motion[7] makes it clear that it seeks findings and an order that will immunize both the Debtors themselves and non-debtor parties to the transaction from legitimate state law claims of present and future asbestos victims. Due Process concerns limit this Court's ability to enter an order affecting the rights of unknown future claimants absent appointment of a legal representative to protect their interests, since they cannot be bound by a reorganization of which they are unaware and in which they do not participate   It is for this very reason that

---

[7] Debtor' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k) and (m) and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 to (I) approve (A) the sale pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-sponsored purchaser, free and clear of liens, claims, encumbrances, and Other interests; (B) the assumption of certain executory contracts and unexpired leases; and (C) other relief; and (II) schedule sale approval hearing, dated June 1, 2009 (the "Sale Motion").

4

Congress included the requirement of the appointment of a Future Claimants' Representative ("FCR") in cases that attempt to address ongoing asbestos liability. See *In re Combustion Engineering*, 391 F.3d. 190, 234 ( 3d Cir. 2004)(section 524(g) requirements are to satisfy the due process rights of future claimants).

Thus, one of the prerequisites to any order that this Court may eventually enter enjoining future asbestos claims against any Debtor or non-debtor is the appointment of "a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands" against the Debtor. 11 U.S.C. § 524(g)(4)(B)(i). The appointment of a Future Claimants' Representative therefore facilitates availability of the relief that GM apparently seeks. The Future Claimants' Representative generally negotiates the terms of a compensatory trust, on the one hand, with those who will fund it and be protected by an injunction channeling asbestos claims, and, on the other hand, with current asbestos claimants whose claims may also be channeled to the trust for payment.

Current asbestos claimants are typically represented by an official committee that brings a great deal of accumulated expertise to the formulation of the complex medical and exposure criteria that inform the trust distribution procedures that are the basis for compensating this unique group of bankruptcy creditors. Appointment of an Official Committee of Asbestos Claimants (an "Asbestos Committee") is necessary to a successful

5

reorganization for several fundamental reasons: first, the medical and exposure criteria for recovery are unique to asbestos victims, making it impossible for a committee of general unsecured creditors to represent their interests. Second, appointment of an Asbestos Committee facilitates resolution of difficult and critical issues in the reorganization process. An Asbestos Committee can assist the debtor and the Future Claimants' Representative in analyzing and evaluating asbestos-related claims, in developing procedures for resolving and paying those claims and, if appropriate, in marshalling support for the Debtor's plan from its constituency. In fulfilling its highly specialized and unique role, an Asbestos Committee can result in a more efficient and more expeditious chapter 11, resulting in significant reductions in cost to the estates. A committee of general unsecured creditors cannot fulfill this role, and indeed has no incentive to do so, especially where members of the existing committee will receive literally billions of dollars worth of consideration if the closing of the proposed sale occurs. This conflict alone mandates a separate Asbestos Committee.

Enjoining future asbestos-related claims and channeling those claims to a trust pursuant to Section 524(g) of the Bankruptcy Code would also provide the proposed Purchaser with unassailable protections from such claims that are simply not possible without the creation of a trust. Similarly, to the extent that the trust is funded by the non-debtors who will benefit by a

channeling injunction, having current asbestos claims processed and paid by such a trust would result in a larger portion of estate funds being available to pay other unsecured claims.

### JURISDICTION AND VENUE

1. Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2009 (the "Petition Date").

2. By Order dated June 1, 2009, the Court granted the Debtors' motion for an order directing the joint administration of their bankruptcy cases. The Debtors' cases are not substantively consolidated.

3. Each of the Debtors continues to operate its business and manage its assets as a debtor-in-possession.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157.

5. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory basis for the relief requested is 11 U.S.C. § 524(g) and 1102(a)(2).

### APPOINTMENT OF A FUTURE CLAIMANTS' REPRESENTATIVE

7. Future interests are best protected "by requiring that fair and just recovery procedures be made available to future claimants and by ensuring that they receive vigorous and faithful representation." *Findley v.*

*Falise (In re Johns-Manville Corp.)*, 878 F. Supp. 473, 565 (S.D.N.Y. 1995) To ensure such "vigorous and faithful representation," a legal representative should take an "active and aggressive role" in protecting claimants "at every step [of the] litigation." Id. The future claims representative must also "review the fairness of" the proposed treatment of future claimants. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 827 (1999).

8. Section 524(g) of the Bankruptcy Code provides for the creation of a trust to "assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products. . . ." 11 U.S.C. § 524(g)(2)(B)(i)(I). Section 524(g) further provides for a "channeling" injunction that directs all present and future asbestos-related "demands" to the trust established pursuant to such section for liquidation and satisfaction of allowed amounts. 11 U.S.C. §524(g)(1).

9. A channeling injunction, however, is valid and enforceable against future asbestos claimants only if, "as part of the proceedings leading to issuance of such injunction, the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert [asbestos-related personal injury claims against the debtor]. . . ." 11 U.S.C. § 524(g)(4)(B)(i).

8

10. Pursuant to section 524(g)(4)(B)(i), the channeling injunction will be valid and enforceable against future asbestos claimants if, among other things, the Court appoints a Future Claimants' Representative. Thus, appointment of a Future Claimants' Representative is a condition precedent to implementation of a section 524(g) injunction through a confirmed plan of reorganization. Because a plan pursuant to section 524(g) is in the best interests of the Debtors, their estates, their creditors and other parties in interest—including the Purchaser, the Court should appoint a Future Claimants' Representative in this case to represent and protect the interests of the future asbestos claimants and satisfy the prerequisite for a channeling injunction under section 524(g).

## APPOINTMENT OF AN ASBESTOS COMMITTEE

### A. *The Official Committee as now Constituted Fails to Provide Adequate Representation of Victims of Asbestos Disease.*

11. By letter dated June 1, 2009, counsel for the Ad Hoc Committee of Asbestos Claimants requested the United States Trustee to appoint an Official Committee of Asbestos Personal Injury Claimants in these cases.

12. On June 3, 2009, the Organizational Meeting for the formation of official committee(s) was held in these cases. Numerous representatives of asbestos personal injury claimants attended the Organizational Meeting.

13. The United States Trustee appointed only one committee in these cases (the "Committee").[8] The Committee appointed by the United

---

[8] *See* Notice of Appointment of Committee of Unsecured Creditors filed June 4, 2009.

9

States Trustee is comprised of seven members. The vast majority of the members of the Committee hold unsecured commercial or trade claims against the Debtors arising out of voluntary credit arrangements with the Debtors.[9] Only one asbestos personal injury claimant was appointed to the Committee. Because members of the Committee owe fiduciary duties to all of the Committee's constituents, that lone asbestos personal injury claimant owes fiduciary duties to claimants with claims that could not possibly be more dissimilar to his own claim. The peculiar nature of asbestos disease and liability, the lengthy latency period involved between exposure and diagnosis, asbestos diseases' complex diagnostic issues, and the fact-sensitive nature of exposure evidence, the Court's limited jurisdiction to allow personal injury claims—as well as the asbestos claimants' rights to a jury trial on these issues—mark out asbestos claimants as fundamentally different from voluntary commercial creditors.

14. The existing official committee is inadequate to represent the interests of asbestos victims for a more obvious reason: certain members of the official committee apparently negotiated separate treatment, assuring that large consideration will be paid to them or their affiliates if the sale closes. For example, paragraph 26 of the Sale Motion makes it clear that

---

[9] The Official Committee of Unsecured Creditors appointed by the United States Trustee is comprised of Pension Benefit Guaranty Corporation, Wilmington Trust Company, Law Debenture Trust Company of New York, The Industrial Division of Communications Works of American, AFL-CIO, International Union UAW, United Steelworkers, Interpublic Group, DENSO International America, Inc., Inteva Products, LLC, Serra Chevrolet of Birmingham, Inc., Paddock Chevrolet, Saturn of Hempstead, Inc. Genoveva Bermudez, Kevin Schoenl and Mark Buttita — the sole personal injury asbestos claimant.

10

UAW and the Purchaser "have reached a resolution addressing the ongoing provision of certain employee and retiree benefits." Sale Motion at page 11. Under this "resolution", a vast number of common shares and at least $9 billion in notes and preferred stock will flow to the benefit of the UAW's constituents. Under these circumstances, the official committee suffers from a conflict with asbestos victims who have an interest in establishing a long-term fund addressing their unique claims .

B. *Adequate Representation of Creditors is the Touchstone of the Law Governing Committee Appointments.*

15. The court's authority to appoint additional committees derives from Section 1102(a)(2) of the Bankruptcy Code:

> On request of a party in interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors . . . .

11 U.S.C. § 1102(a)(2).

16. The Bankruptcy Code does not define "adequate representation," but leaves that determination to the discretion of the court. The seminal case in this Court is *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985). The Court there, after citing the statutory language, opened its analysis with the observation that "[t]he statute affords no test of adequate representation, leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." The *Beker* Court then went on to note that certain benchmarks have been developed to assist in the examination, quoting Collier:

11

> …in a large case, in which there are significant groups of creditors or equity security holders with conflicting claims which are likely to be affected by the plan of reorganization, the court should authorize the appointment of additional committees. Such committees should be composed of creditors or equity security holders representative of classes as a whole as opposed to dissident factions of particular classes.

Id. at 948-49.

*Beker* went on to explore a cost-benefit analysis for the appointment of additional committees, writing that the "exercise of discretion, however, also gives rise to a concern for cost." Id. at 949. But the Court held fast to the statutory test: "The statutory focus is on adequacy of representation." But once this is shown, the Court held, the burden shifts to the opponent of the motion:

> It thus appears that once the statutory tests are met, the burden shifts to the opponent of the motion to show that the cost of the additional committee sought significantly outweighs the concern for adequate representation and cannot be alleviated in other ways.

Id. at 949.

17.   The Court endorsed the view that "the size of a bankruptcy case strongly indicates the need for additional committees representing different interests." Id. at 950. Speaking of the complex nature of the case and the necessary involvement of debenture holders and shareholders in negotiating a successful exit from bankruptcy, the Court concluded in language that is particularly apt with respect to the asbestos claimants involved in this reorganization case:

> In short, this is not a case where the Debenture holders and shareholders will be asked merely to vote on a plan. This is a case

  requiring active participation by Debenture holders and shareholders to protect their interests.

Id. at 949. Because of the unique requirements of negotiating treatment of current and future asbestos claimants, a committee of asbestos claimants is necessary to assure the active participation of its constituents in the reorganization process.

  (i) *Inadequate Representation is More Likely in Large, Complex Cases Containing Dissimilar Classes of Creditors:*

  18. Courts, including this Court, have observed that "the concern for adequate representation is heightened in situations such as this where the U.S. Trustee has appointed one committee for jointly administered cases." *In re McLean Indus., Inc.*, 70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987). See also *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985). Notably, in *McLean* there were four jointly administered but not consolidated cases as compared to the forty-one jointly administered but not consolidated cases here. *See also In re Dow Corning Corp.*, 194 B.R. 121, 142 (Bankr. E.D. Mich. 1996) ("[A] large and complex bankruptcy case is more likely to have a need for an additional committee."). It is obvious that the instant case is large and complex, and that many issues that motivate other stakeholders are distinct from the interests of asbestos disease victims. It would be counterintuitive to suggest that in a case of this magnitude and complexity a single committee could articulate and urge the diverse needs of distinct creditor groups.

(ii). *The Chief Concern —Different Classes will be Treated Differently:*

19. This Court has previously stated that "the chief concern of adequacy of representation is whether it appears that different classes of debt and equity holders may be treated differently under a plan and need representation through appointment of additional committees." *In re The Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. 1990). Where asbestos creditors by definition will require different treatment under a plan of reorganization, the need for a separate committee is clear.

## CONCLUSION

20. The concern for adequate representation is heightened in cases such as these: large, complex cases involving dissimilar creditor groups and the unlikelihood that a committee of general unsecured creditors can in fact competently represent the interests of a category of claimants as significant and as unique as those whose lives have been poisoned or even taken by General Motors' use of asbestos.

21. The composition of the only official committee appointed in these cases endangers the ability of asbestos personal injury claimants to have a say in any decision-making and may effectively disenfranchise asbestos claimants, many of whom are old, infirm and of modest economic circumstances at best. These victims—for no one voluntarily undertook to suffer from asbestos disease—are not and cannot be adequately represented

14

by a committee of commercial creditors. Only through the appointment of an Official Committee of Asbestos Personal Injury Claimants will there be a body adequately exercising fiduciary duties to asbestos personal injury claimants. The benefit to the estate is large: the Asbestos Committee alongside the Future Claims Representative provides the ready mechanism to negotiate a successful exit from bankruptcy, with permanent injunctive protections for the Debtors and the Purchaser from asbestos-related litigation. The cost in the context of this huge industrial bankruptcy is small. The appointment of a Future Claimants' Representative to represent the interests of future asbestos claimants and the simultaneous appointment of an official committee to represent the unique interests of current asbestos victims would be major steps in moving this reorganization case forward.

## REQUEST FOR RELIEF

For all of the foregoing reasons, the Ad Hoc Committee of Asbestos Claimants respectfully requests the Court to appoint a Future Claimants' Representative, to direct the United States Trustee to appoint the members of the Ad Hoc Committee as an Official Committee of Asbestos Personal Injury Claimants and to grant it such other and further relief to which the Court finds it is entitled.

15

Dated: June 7, 2009        Respectfully submitted,

/s/ *Sander L. Esserman*

Sander L. Esserman
Robert T. Brousseau
Peter C. D'Apice
Jo E. Hartwick
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas  75201
(214) 969-4900


**COUNSEL FOR THE AD HOC
COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS**