Hearing Date and Time: To Be Determined
Objections Due: To Be Determined

Michael P. Richman (MR 2224)
Mark A. Salzberg (*pro hac vice* pending)
James Chadwick (*pro hac vice* pending)
Melissa Iachan (MI 1270)
PATTON BOGGS LLP
1185 Avenue of the Americas, 30th Floor
New York, NY 10036
(646) 557-5100 (Telephone)
(646) 557-5101 (Facsimile)

*Counsel For Unofficial Committee
Of Family & Dissident GM Bondholders*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                    )
In re                                               )    Chapter 11
                                                    )
GENERAL MOTORS CORP., *et al.*,                     )    Case No. 09-50026 (REG)
                                                    )
                              Debtors.              )    Jointly Administered
---------------------------------------------------------------X

**MOTION OF THE UNOFFICIAL COMMITTEE OF FAMILY & DISSIDENT GM
BONDHOLDERS FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO
APPOINT AN OFFICIAL COMMITTEE OF FAMILY & DISSIDENT GM BONDHOLDERS**

The Unofficial Committee of Family & Dissident GM Bondholders (the "F&D Committee"), by and through its undersigned counsel, hereby moves this Court, pursuant to Section 1102(a)(2) of the United States Bankruptcy Code (the "Bankruptcy Code"), to enter an Order directing the United States Trustee (the "Trustee") to appoint an Official Committee of Family & Dissident GM Bondholders (the "Official F&D Committee").[1] In support thereof, the F&D Committee respectfully represents as follows:

---

[1] The members of the F&D Committee, as more fully disclosed in the Rule 2019 Verified Statement filed contemporaneously herewith, are Harold A. John (chair), Mark Modica and Wade McGee. Their personal holdings

5735

## PRELIMINARY STATEMENT

1.      A majority of a relatively small group of institutional bondholders, holding (according to media accounts) more than half of approximately $27 billion in outstanding GM bond debt, reportedly "agreed" prior to the chapter 11 filings in these cases to the Debtors' plan to exchange their bond debt for 10% of the equity of a new GM (holding the "good" GM assets), and warrants to acquire another 15% of the equity.[2] Their reported support for that plan, which requires a significant reduction in the amounts that the F&D Committee believes bondholders should (and otherwise, would) receive based upon their ranking in GM's capital structure and proposed reorganization, was reportedly tallied by various people through email and telephone calls. While such an "agreement" has been touted as a template for all bondholders (including holders of billions of dollars worth who have not yet been heard from), and is now embedded in the transfer of assets scheme for which Debtors sought approval on June 1, there are significant questions (well beyond whether it is really supported even by a majority of the institutional bondholders, or by any of the non-institutional bondholders) about the economic realities of that plan. Among other questions not yet answered is the extent to which the institutions that reportedly are supporting that plan received contemporaneous bailout funding from the Government, and otherwise engaged in hedging strategies in anticipation of the "agreement," which separately or together could mean that in economic substance their "agreement" to the deal results in a far greater recovery to them than has been reported, and a far greater recovery to

---

aggregate approximately $2.3 million in face amount of GM bonds.

[2] Court filings in these cases refer to an Ad-Hoc GM Noteholders Group, and a smaller Informal Noteholder Group of these institutional holders, consisting of Franklin Templeton Investments, JMG Capital Management, LLC, Western Asset Management Company, Marathon Asset Management, and Eastbourne Capital Management, LLC, each of whom represents various Funds and Accounts.

2

5735

them than would be available to the other bondholders (including the bondholders to be represented by the F&D Committee).

2.  Why are these facts important to this motion for an order appointing an Official F&D Committee? Because the over 1,500 bondholders with whom the F&D Committee has been communicating (through two bondholder websites and related organizations) and hopes to represent as an official committee, with bondholdings believed to exceed $400 million at face value, consist in the main of family and non-institutional dissident bondholders who have had no opportunity to participate in negotiations, no access or means to engage in hedging strategies, no access to federal bailout funds, and no meaningful opportunity to have their important, distinct and different situation heard and represented in this case. A substantial number of these bondholders invested in GM bonds at or near par values with their pension funds and life savings. For many of them, as distinct from the institutional holders with the benefits described above, the relevant question is not how much money can be made on the deal, but how much of their life savings will be lost.[3] Because they are widely dispersed, and their holdings and means in many cases modest, they are highly deserving of the benefits of official committee recognition and representation in these cases. Given the significant economic differences and motivations, and the extensive participation by the institutional bondholders in the process to date, the family and dissenting GM bondholders are a distinctly different constituency of creditors at a huge disadvantage in this process. In the absence of official committee recognition of the F&D Committee, there is no reasonable expectation that any other constituency in this case would genuinely be representative of these bondholders' distinct situations or meaningfully represent

---

[3] Some members in this bondholder community did acquire bonds more recently at discounted values, and could therefore stand to gain rather than mitigate losses in life savings (ignoring of course the extent to which they previously lost money on prior GM bond purchases). However, the applicable legal principles and need for recognition and representation is the same. Neither the institutional bondholders nor the official creditors' committee can be said to represent their interests.

3

5735

their identifiable and important interests that are being materially and adversely affected by this case. In effect, these bondholders – which are more than 1,500 in number and comprise the overwhelming majority in number of holders of GM bonds – will have no effective means to participate in this case and protect their interests. Official committee recognition is the most effective means to assure that their voices can be heard and their rights vindicated.

3. This is precisely the kind of situation contemplated by section 1102(a)(2) of the Bankruptcy Code which authorizes this Court to direct the Trustee to appoint additional official committees of creditors "if necessary to assure adequate representation of creditors." The non-institutional family and dissident bondholders cannot be said in the present circumstances to be represented adequately (if at all) by the unofficial institutional bondholders' committee or the Official Committee of Unsecured Creditors, whose members include two institutional bondholders.[4] Moreover, in a case moving as quickly as is this one, the need for official committee action to provide a means for this widely dispersed group to keep up the pace and be heard is compelling. While the creation of an additional official committee will add to the administrative expenses of these estates, in view of the fact that most of the work of this committee must be completed within this very month, the added costs will be very modest; indeed when compared to the vast administrative expenses already incurred in these cases by the literal armies of lawyers and financial advisors retained by the estate, the costs of an Official F&D Committee will be miniscule. Conversely, and of equal benefit, representing this large group outside of an official committee on an individual basis would be cost-prohibitive and

---

[4] To the extent those bondholders, and other members of the official creditors' committee, were part of the bargaining process prior to these filings, they likely already have their minds made up about the case, the asset transfer plan, and the distribution scheme, again demonstrating that they cannot adequately represent the interests of the family and dissident holders. Additionally, it certainly appears from all negotiations to date, as well as the asset transfer plan, that the Debtors are treating the GM bondholders as though they are a distinct constituency from general unsecured creditors.

administratively burdensome for the parties and the Court. The benefits, in justice and equity, in amplifying the voices of parties too small to be heard individually or effectively, and in giving full airing to the important legal questions raised by the Debtors' asset transfer scheme, overwhelmingly outweigh any cost considerations.

## JURISDICTION AND VENUE

4. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 1, 2009 (the "Petition Date").

5. By Order dated June 1, 2009 [Docket No. 16], the Court granted the Debtors' motion for an order directing the joint administration of their bankruptcy cases. The Debtors' cases are not substantively consolidated.

6. Each of the Debtors continues to operate its business and manage its assets as a debtor-in-possession.

7. On June 3, 2009, the Trustee appointed an official committee of unsecured creditors (the "Unsecured Creditors' Committee").

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157.

9. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory basis for the relief requested is section 1102(a)(2) of the Bankruptcy Code.

## RELIEF REQUESTED

11. The F&D Committee seeks entry of an Order, substantially in the form attached hereto as Exhibit "A," directing the Trustee to appoint an Official F&D Committee.

5735

## BASIS FOR THE RELIEF REQUESTED

12.     Section 1102(a)(2) of the Bankruptcy Code provides that "the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure the adequate representation of creditors or of equity security holders." "The statute affords no test of adequate representation, leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985); *see also In re McLean Indus., Inc.*, 70 B.R. 852, 861 (Bankr. S.D.N.Y. 1987) ("Because each case is distinct, there is no hard and fast rule.").

13.     When evaluating whether an additional committee is necessary to ensure adequate representation, courts have examined a number of factors, including: the ability of the creditors' committee to function; the nature of the case; the standing and desires of various constituencies; the motivation of the movants; the cost incurred by the appointment of the additional committee; and the tasks that a committee or separate committee is to perform. *See In re Enron Corp.*, 279 B.R. 685 (Bankr. S.D.N.Y. 2002). Large, complex cases "strongly indicate" the need for additional committees representing different interests. *See In re Beker Indus.*, 55 B.R. at 949; *see also In re Mansfield Ferrous Castings, Inc.*, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988) (noting that "the size and complexity of the debtor's bankruptcy proceedings weigh in favor of the appointment of an additional committee").

14.     Here, the facts of this extremely fast-paced case strongly support the formation of an Official F&D Committee.

15.     *First*, the majority of the bondholders sought to be represented by the F&D Committee are not represented at all by the interests of the institutional bondholders (with whom

6

5735

GM and the U.S. Government have been directly negotiating), and cannot individually afford representation. The family and dissident bondholders represented by the F&D Committee should be heard as a distinct constituency in connection with the proposed distributions to all GM bondholders because they are so economically distinct from the institutional bondholders. Indeed, it is likely that because of hedging strategies and federal bailout funds, the larger institutional holders, who through their own committee participated in pre-filing negotiations and "accepted" the pending distribution plan, are to recover significantly more in relation to their holdings, and are under vastly different pressures to accept the proposed transaction, than the bondholders to be represented by the F&D Committee. The economics and motivations are fundamentally different, and the Court should hear from a separate official committee representing the family and dissident bondholders whose interests cannot be represented by the institutional bondholders. An official committee status confers upon the family and dissident bondholders not only a greater legitimacy of standing, but the means to employ their counsel of choice in leading that effort.

16.    ***Second,*** the Debtors' own actions make it imperative that an Official F&D Committee be appointed now. As of the date this Motion was submitted, only ten (10) days remain before the objection deadline for the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6009, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, A U.S. Treasury Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief, and (II) Schedule Sale Approval Hearing* (the "<u>Asset Transfer Motion</u>") [Docket No. 92]. The outcome of the Asset Transfer Motion will

5735

in large part dictate the distribution to be received by creditors and bondholders. Unless the Official F&D Committee is formed sufficiently prior to the objection deadline to allow papers to be prepared and filed in response to the Asset Transfer Motion, the family and dissident bondholders represented by the F&D Committee would be denied meaningful participation in these cases.

17. ***Third,*** the estates would not be negatively impacted by the formation of an Official F&D Committee. The added administrative expenses associated with the creation of an additional committee, especially in a case of this magnitude, are insignificant. In contrast, the benefits of having an independent committee speak to the Court and the parties on behalf of the thousands of Americans who bought GM bonds as a real savings strategy, rather than an investment play, significantly outweigh the modest costs of an additional committee.

18. By letter dated June 9, 2009, the F&D Committee requested, for the reasons set forth above, that the Trustee appoint the Official F&D Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. The Trustee's office informed undersigned counsel that it is, as of the filing of this Motion, considering the matter.

## NOTICE

19. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) the attorneys for the United States Treasury; (c) the attorneys for Export Development Canada; (d) the attorneys for the agent under GM's prepetition secured term loan agreement; (e) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement; (f) the holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis); (g) the attorneys for the UAW; (h) the attorneys for the International Union of Electronic, Electrical Salaried, Machine and Furniture Works –

Communications Workers of America, (i) the United States Department of Labor; (j) the attorneys for the National Automobile Dealers' Association; (k) the attorneys for the ad hoc bondholders committee; and (l) all parties included on the Court's ECF System. The F&D Committee submits that no other or further notice need be provided.

## NO PRIOR REQUEST

20. No prior request for the relief sought in this Motion has been made to this Court.

## WAIVER OF MEMORANDUM OF LAW

21. Authority for the relief requested is set forth herein; therefore the F&D Committee respectfully requests that the Court waive the requirement in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that the F&D Committee submit a separate memorandum of law.

WHEREFORE, the F&D Committee respectfully requests that the Court (a) enter an Order, substantially in the form attached hereto as Exhibit "A," granting the relief requested herein, and (b) grant such other and further relief as the Court deems proper.

Dated: June 9, 2009                                Respectfully submitted,

                                                        /s/ Michael P. Richman
                                                       Michael P. Richman (MR 2224)
                                                       Mark A. Salzberg (*pro hac vice* pending)
                                                       Melissa Iachan (MI 1270)
                                                       PATTON BOGGS LLP
                                                       1185 Avenue of the Americas, 30th Floor
                                                       New York, NY 10036
                                                       (646) 557-5180 (Telephone)
                                                       (646) 557-5101 (Facsimile)

                                                       *Counsel for Unofficial Committee*
                                                       *Of Family & Dissident GM Bondholders*

5735

# EXHIBIT A

5735

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            )
In re                                                       )    Chapter 11
                                                            )
GENERAL MOTORS CORP., *et al.*,                             )    Case No. 09-50026 (REG)
                                                            )
                                        Debtors.            )    Jointly Administered
------------------------------------------------------------X

**ORDER GRANTING MOTION OF THE UNOFFICIAL COMMITTEE OF FAMILY & DISSIDENT GM BONDHOLDERS FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN OFFICIAL COMMITTEE OF FAMILY & DISSIDENT GM BONDHOLDERS**

This matter coming before the Court on the Motion for an Order Directing the United States Trustee to Appoint an Official Committee of Family & Dissident GM Bondholders (the "Motion"); the Court having reviewed the Motion and having heard argument on the Motion, and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the hearing on the Motion was sufficient under the circumstances, (d) in light of the circumstances the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

5735

2.    The United States Trustee is directed pursuant to 11 U.S.C. § 1102(a)(2) to appoint an Official F&D Committee[5] within one (1) day of the date hereof.

Dated: New York, New York
    June __, 2009

_____
Honorable Robert E. Gerber
United States Bankruptcy Judge

---

[5] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

5735