J. Casey Roy (JCR 1248)
Assistant Attorney General
Texas State Bar No. 00791578
The Texas Attorney General's Office
P. O. Box 12548    MC-008
Austin, Texas  78711-2548
Telephone:  (512) 463-2173
Telecopy:  (512) 482-8341

ATTORNEYS FOR THE STATE OF TEXAS on behalf of
THE TEXAS DEPARTMENT OF TRANSPORTATION,
MOTOR VEHICLE DIVISION

Sale Approval Hearing Date: June 30, 2009 at 9:45 a.m.
Sale Motion Objection Deadline: June 19, 2009 5:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
In re:                                                         :    CHAPTER 11
                                                               :
**GENERAL MOTORS CORP.,** *et al.*,                            :    Case No. 09-50026 (REG)
                                                               :
                                                               :    **(Jointly Administered)**
                        Debtors.                               :
----------------------------------------------------------------X

## OBJECTION OF THE STATE OF TEXAS

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

THE STATE OF TEXAS, ON BEHALF OF THE TEXAS DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION ("Texas"), files this Limited Objection (the "Limited Objection") to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (a) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a.U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Other Relief; and (II) Schedule Sale Approval Hearing (the "Sale Motion") (Dkt. No. 92) and in support thereof shows:

## I. Preliminary Statement

General Motors Corporation and certain of its subsidiaries (collectively, "GM" or the "Debtors") have abused their bankruptcy-enhanced bargaining power, and forced their dealers to waive State laws designed to protect them from such oppressive acts. As the U.S Congress acknowledges, the "vast disparity in economic power and bargaining strength" between car dealers and car manufacturers "has enabled the factory to determine arbitrarily the rules by which the two parties conduct their business affairs" and makes "the dealer an easy prey for domination by the factory." S.Rep. No. 2073, 84th Cong., 2d Sess., 2 (1956). Coupled with the undeniable fact that "[t]he distribution and sale of motor vehicles in [Texas] vitally affects the general economy of the state and the public interest and welfare of its citizens" (TEX. OCC. CODE § 2301.001), the United States Supreme Court has recognized that States are "empowered to subordinate the franchise rights of automobile manufacturers to the conflicting rights of their franchisees where necessary to prevent unfair or oppressive trade practices." *New Motor Vehicle Board of Cal. v. Orrin W. Fox, Co.*, 439 U.S. 96, 107 (1978). Indeed, "[t]he disparity in bargaining power between automobile manufacturers and their dealers prompted Congress and some 25 States to enact legislation to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers." *Id.* at 100-01 (footnote omitted). Texas is one of those States. *See* TEX. OCC. CODE §§ 2301.001 *et seq.*

***GM to Dealers: Waive Texas Law or Lose Your Dealership.***

Before GM will agree to assume a dealer's franchise agreement, GM insists that the dealer must first "agree" to waive numerous protections in Texas law. This demand is contrary to federal law that requires a debtor to operate according to state law (28 U.S.C. § 959(b)), and contrary to Texas law which forbids the waiver of these protections (TEX. OCC. CODE § 2301.003(b)). GM

2

further conditions the assumption of a dealer agreement upon the dealer's consent to jurisdiction in this court regarding the franchise amendment – even though federal law relieves (Old) GM from liability under the franchise amendment upon discharge (11 U.S.C. § 365(k)), and despite Texas law which vests exclusive jurisdiction over such disputes in the Texas Department of Motor Vehicles (TEX. OCC. CODE § 2301.151).

***GM to this Court: Approve our Sale Motion and Preempt Texas Law***

By its Sale Motion, GM seeks this Court's seal of approval for its abusive and oppressive conduct. This Court should not, however, condone GM's strong arm tactics. Instead, this Court should affirm that the relationship between GM and its Texas dealers is governed by Texas law, and order that any provision of an amended franchise agreement that is contrary to Texas law is invalid and unenforceable.[1] Finally, should this Court approve GM's Sale Motion, the Court should clarify that it is not validating GM's attempt to evade Texas law by amending its dealer franchise agreements.

## II. Background

On June 1, 2009 (the "Petition Date"), GM filed voluntary petitions for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or "Code"). On the same day, GM filed its "Sale Motion" which seeks authorization from this Court to sell substantially all the assets of General Motors Corporation and certain of its subsidiaries as a going concern to a "Purchaser" (referred to in the Sale Motion as "New GM" or in other instances, the

---

[1] Other states have similar laws and similar concerns. *See, e.g.*, Donna Harris, "Louisiana says new GM may not get a state business license," AUTOMOTIVE NEWS (June 9, 2009).

"363 Acquirer") pursuant to a proposed Master Sale and Purchase Agreement and related agreements (as defined in the Sale Motion, the "MPA"). *See* Sale Motion at p. 2, ¶ 1; p. 8, ¶ 16.

According to the Sale Motion, GM plans to assume certain agreements that are currently in place with many (but not all) of its existing dealers (the "Dealer Agreements"), and to assign those agreements to New GM pursuant to 11 U.S.C. § 365. *Id.* at p. 10, ¶ 19. Before assuming these Dealer Agreements, however, GM requires their modification in accordance with a "Participation Agreement" (explained below). GM has demanded that dealers execute the Participation Agreement (without any changes) if the dealer wants its agreement to be assigned to New GM. *See* Exhibits "A" (cover letter) and "B" (Participation Agreement). This requirement was made quite clear in the cover letter accompanying the Participation Agreement. *See* Exhibit "A" at p. 1 ("In order for your Dealer Agreements to be assigned to the 363 Acquirer, you must execute the enclosed letter agreement.") (emphasis in original).

The "take it or leave it" ultimatum presents Texas GM dealers with a classic Hobson's choice: lose the protections of Texas law, or lose your business. And irony notwithstanding, the Participation Agreement contains an express provision by which each affected dealer "acknowledge(s) that its decisions and actions are entirely voluntary and free from any duress." *See* Exhibit "B," ¶ 9(f). The consequence of not signing the "no-duress" clause would be that the dealer would lose its business.

Since distributing its Participation Agreement GM has received numerous complaints from individual dealers, the Texas Automobile Dealers Association ("TADA"), the National Automobile Dealers Association ("NADA"), and the National Dealer Council. In response, GM agreed to amend certain portions of the Participation Agreement. *See* Exhibit "C." These revisions fail to preserve

4

many important state law protections afforded GM's dealers in violation of both federal and state law.

### III. Argument

**A.     Federal Law Prohibits GM From Circumventing Texas Law.**

Acting in its capacity as debtor-in-possession, GM has conditioned its assumption and assignment of Dealer Agreements upon its dealers' waiver of State law rights. Federal law is clear, however, that debtors-in-possession must comply with all applicable state laws. *See* 28 U.S.C. § 959(b). Section 959(b) provides, in pertinent part, that "a debtor in possession shall manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated. . ."[2] As one bankruptcy court has stated, "the mandate of section 959(b) . . . prohibits the use of bankruptcy as a ruse to circumvent applicable state consumer protection laws by those who continue to operate in the marketplace." *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 698 (Bankr. E.D. Cal. 1994). Another court has explained: "Implicit in Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business . . . ." *In re Quanta Resources Corp.*, 739 F.2d 912, 919 (3d Cir.1984), *aff'd sub nom., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986).

Citing Section 959(b), the United States Supreme Court has unequivocally stated that "Congress did not intend for the Bankruptcy Code to pre-empt all state laws," and that "Congress

---

[2]     GM acknowledges that "[t]he 363 Transaction preserves the value of the Purchased Assets and the benefits that result *from ongoing business operations*" and that "[t]he Debtors, their employees and creditors, and others that rely upon *the Company's continued business* will suffer immediate and irreparable harm if the 363 Transaction is not approved. . . ." *See* Sale Motion at p. 14, ¶¶ 33-34 (emphasis added).

did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers." *Midlantic Nat'l Bank*, 474 U.S. at 505. Rather, Congress enacted 28 U.S.C. § 959(b) to prohibit debtors in possession from violating valid state laws. *Id.* As one court explains:

> The purpose of bankruptcy is not to permit debtors or nondebtors to wrest competitive advantage by exempting themselves from the myriad of laws that regulate business. Bankruptcy does not grant the debtor a license to eliminate the marginal cost generated by compliance with valid state laws that constrain nonbankrupt competitors. The Congress has thus required that every debtor in possession and bankruptcy trustee manage and operate the debtor's property and business in compliance with state laws-good, bad, and indifferent-that apply outside of bankruptcy.

*White Crane,* 170 B.R. at 702. In sum, Section 959(b) simply stands "for the uncontroversial proposition that a trustee must carry out his duties in conformity with state law." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 593 (9th Cir. 1993).[3]

Nonetheless, as set forth below, GM's Sale Motion and its proposed form Participation Agreement together constitute an attempted end-run around important dealer-protection laws that should not be countenanced by this Court.[4]

---

[3] Indeed, Section 959(b) applies in many contexts. *See, e.g.*, *Gillis v. California*, 293 U.S. 62 (1934) (trustee must pay state tax); *Midlantic Nat'l Bank*, 474 U.S. 494 (aff'g *City of New York v. Quanta Res. Corp.* (*In re Quanta Res. Corp.*), 739 F.2d 912 (3d Cir. 1984)) (environmental laws); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579 (6th Cir. 1990) (landlord's state law duties); *Saravia v. 1736 18th St., N.W., LP*, 844 F.2d 823 (housing code); *Briarcliff v. Briarcliff Tenants Ass'n* (*In re Briarcliff*), 15 B.R. 864 (D.N.J. 1981) (rent control); *In re Synergy Dev. Corp.*, 140 B.R. 958 (Bankr. S.D.N.Y. 1992) (consumer protection); *Wengert Transp., Inc. v. Crouse Cartage Co.* (*In re Wengert Transp. Co.*), 59 B.R. 226 (Bankr. N.D. Iowa 1986) (certificate of public convenience and necessity).

[4] The State reserves the right to amend or supplement this Limited Objection to the extent that the Dealership Agreements, Participation Agreements or other applicable agreements subject to the Sale Motion are modified prior to the hearing on the Sale Motion.

**B.    GM Seeks To Evade Jurisdiction in Texas.**

Texas law clearly states that the Texas Department of Transportation, Motor Vehicle Division "has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction."  TEX. OCC. CODE § 2301.151(a).  Texas law likewise provides "[n]otwithstanding the terms of any franchise or any other law, an action or proceeding brought by a manufacturer, representative, converter, or distributor against a dealer must be brought in an appropriate forum in this state only, and the law of this state applies to the action or proceeding." TEX. OCC. CODE § 2301.478.

Contrary to the protections of Texas law, the Participation Agreement improperly attempts to vest this Court with continuing jurisdiction (presumably in perpetuity) over disputes related to the letter agreement. *See* Participation Agreement, ¶ 9(h) (as modified by Exhibit "C," ¶ 7) ("Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this letter agreement.").

In addition to violating the prohibition of Section 959(b), the Participation Agreement's attempt to instill jurisdiction in this Court violates the prohibition against a bankruptcy court's retention of jurisdiction, essentially *ad infinitum*, when such jurisdiction clearly does not exist. *See Concerto Software, Inc. v. Vitaquest Int'l, Inc.*, 290 B.R. 448, 454 (D. Me. 2003) (finding that the court lacked jurisdiction over dispute regarding contract assigned in bankruptcy because "case law provides that an assumption and assignment of an executory contract under section 365 substitutes the assignee for the debtor" and "[p]ursuant to section 365(k), the debtor is then 'relieved from any

7

liability for any breach of contract occurring after such assignment.'") (citations omitted). Moreover, "it is a fundamental proposition that parties cannot confer subject matter jurisdiction by agreement." *H & L Developers, Inc. v. Arvida/JMB Partners (In re H & L Developers, Inc.),* 178 B.R. 71, 75 n.6 (Bankr. E.D. Pa. 1994). In sum, upon assignment to New GM, the resolution of any dispute under the Dealership Agreements as modified by the Participation Agreement is a matter that should be resolved in accordance with state law. This is especially true when one considers that, "[t]here is nothing . . . that indicates that (a) state court will be unable to provide adequate relief in this situation." *Concerto Software,* 290 B.R. at 455.

**C.    GM Seeks to Free Itself from Texas Law Governing Franchise Modification and Termination.**

Texas law provides that a manufacturer "may not modify or replace a franchise if the modification or replacement would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide service to the public" without proper notice and the right to protest the modification. TEX. OCC. CODE § 2301.454. Texas law further provides that "[a]fter a protest is filed, the board shall determine whether the manufacturer . . . has established by a preponderance of the evidence that there is good cause for the proposed modification or replacement." TEX. OCC. CODE § 2301.454(d).

The Participation Agreements proposed by GM constitute a substantial modification to existing Dealership Agreements. Under the Participation Agreement, however, the single authority authorized to approve such a modification (*i.e.* the Texas Motor Vehicle Division) will never be given the opportunity because the Participation Agreement strips Texas dealers of any protest rights if such dealer wishes to continue to sell GM vehicles. *See, e.g.*, Participation Agreement at ¶ 6

("Release; Covenant Not to Sue; Indemnity").

### D. GM Seeks to Skirt Texas Laws Regarding New Vehicle Inventory.

Texas law provides that "[a] manufacturer . . . may not require or attempt to require a franchised dealer to order, accept delivery of, or pay anything of value, directly or indirectly, for a motor vehicle . . . unless the dealer *voluntarily* ordered or contracted for the item" TEX. OCC. CODE § 2301.451 (emphasis added).

The Participation Agreement, however, violates these provisions of Texas law. The Participation Agreement provides, in relevant part, "[t]o facilitate (the Dealer's) expected increased sales, Dealer shall, upon the written request from the 363 Acquirer, order and accept from the 363 Acquirer additional new Motor Vehicles of the Existing Model Lines to meet or exceed the sales guidelines provided by the 363 Acquirer relating to Dealer's increased sales expectations. . . ." *See* Participation Agreement at ¶ 3.

### E. GM Seeks To Deny Texas Dealers The Right To Market Other Brands.

Texas law prohibits a manufacturer from unilaterally deciding that a dealer cannot carry more than one manufacturer's product. TEX. OCC. CODE § 2301.472.

Paragraph 4 of the Participation Agreement, however, requires that (1) during the remaining term under the Dealership Agreements, the affected dealers abstain from selling any non-GM vehicles without the consent of GM or the 363 Acquirer (which consent may be granted or withheld by GM or the 363 Acquirer in their sole discretion), and (2) if the affected dealer is currently operating a non-GM dealership on the dealership's premises, the affected dealer must cease such operations on or before December 31, 2009. *See* Participation Agreement, ¶ 4.

**F.     GM Seeks to Dodge Texas Law Regarding Dealer Locations.**

Texas law grants existing dealerships the ability to protest the establishment or relocation of another dealer in the same line-make, if the protesting dealership is located within the same county or a 15-mile radius of the proposed dealership. TEX. OCC. CODE § 2301.652.

Paragraph 5 of the Participation Agreement, however, prohibits an affected dealer from protesting or challenging before a court or administrative agency the establishment or relocation of a motor vehicle dealership that is at least six (6) miles from the affected dealer's current location. GM's subsequent letter agreement amending the Participation Agreement adds a sentence to Paragraph 5(a) stating that the dealer is not being asked to waive the right to protest an increase in the number of dealerships for the existing model lines in the dealer's "contractual area of responsibility" as determined by GM. *See* Exhibit "C" at ¶ 5. Yet this amendment likewise conflicts with TEX. OCC. CODE § 2301.652(b). In a state the size of Texas, the statutorily-determined protest area is often very different from the manufacturer-determined responsibility area.

**G.     GM Seeks to Limit Texas Dealers Warranty Claims.**

Texas law provides that: "A manufacturer or distributor shall pay a dealer's claim for reimbursement for warranty work or dealer preparation and delivery work not later than the 30th day after the date of approval of the claim." TEX. OCC. CODE § 2301.404.

Paragraph 6 of the Participation Agreement, however, requires an affected dealer to waive all claims relating to warranty work except those for reimbursement for transactions occurring within 90 days prior to the date of the Participation Agreement.

**H.     GM Demands That Dealers Waive Their Texas Rights.**

The entirety of paragraph 6 of the Participation Agreement is at odds with section 2301.003's provisions indicating that an agreement to waive the terms of the Occupations Code is void and unenforceable, since paragraph 6 requires the affected dealers to waive essentially all claims against GM, the 363 Acquirer and others (including any claim that the assignment of the Dealer Agreements by GM to New GM is void, unenforceable or in violation of applicable law) and any claim that GM is taking action against a dealer without following the procedures required by section 2301.451-478 of the Occupations Code.

**I.      GM's Concept of "Compliance" Conflicts With Texas Law.**

Paragraph 7 of the Participation Agreement's requirement for dealer compliance with obligations under the Dealer Agreements "as supplemented by the terms of" the Participation Agreement violates section 2301.454's provisions regarding effective modification of a franchise, and may implicate the Occupations Code's requirements for the transfer of a dealership to a new owner pursuant to sections 2301.359, 2301.360 and 2301.458. In addition, subparagraph 7(b)'s agreement not to sue with respect to the rejection of certain existing/outstanding agreements violates sections 2301.003 and 2301.454 of the Occupations Code. Finally, paragraph 7(c)'s requirements for increased floor plan capability and increased sales and inventory expectations violate sections 2301.451 (prohibition against items not ordered) and 2301.467 (prohibition against unreasonable sales and service standards).

**J.      Conclusion**

GM's mandatory modifications to its Dealer Agreement unquestionably violate Texas law. Equally true is that federal law prevents GM from extracting the aforementioned concessions from

11

its dealers. Bankruptcy does not vest GM with the power to thwart both state and federal law, and this Court is duty-bound to ensure that the equitable remedy of bankruptcy is not used to achieve the inequitable result sought by GM.

### IV.  Memorandum of Law

Texas submits that the arguments and authorities set forth in this Limited Objection satisfy the requirements of Southern District of New York Bankruptcy Local Rule 9013-1(b).

WHEREFORE, the State of Texas, on behalf of the Texas Department of Transportation, Motor Vehicle Division, respectfully requests that the Court sustain its Limited Objection, and for such other and further relief as it may show itself to be entitled.

> Respectfully submitted,
>
> GREG ABBOTT
> Attorney General of Texas
>
> C. ANDREW WEBER
> First Assistant Attorney General
>
> DAVID S. MORALES
> Deputy Attorney General for Civil Litigation
>
> WILLIAM J. COBB III
> Special Assistant and Senior Counsel to the Attorney General
>
> JAMES P. DYER
> Special Assistant and Senior Counsel to the Attorney General
>
> RONALD R. DEL VENTO
> Assistant Attorney General
> Chief, Bankruptcy & Collections Division

                                        */s/   J. Casey Roy*
J. CASEY ROY
Texas State Bar No. 00791578
Assistant Attorney General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone:  (512) 463-2173
Telecopy: (512) 482-8341
E-mail:  *casey.roy@oag.state.tx.us*

ATTORNEYS FOR THE STATE OF TEXAS ON BEHALF OF THE TEXAS DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION

## CERTIFICATE OF SERVICE

      I hereby certify that on the 12th day of June, 2009, a true and correct copy of the foregoing was served on all those parties receiving notice via the Court's Electronic Case Filing System (through ECF) and the parties below via U. S. Mail First Class, postage prepaid on the following parties:

| | |
|---|---|
| Harvey Miller<br>Stephen Karotkin<br>Joseph H. Smolinsky<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY  10153 | John J. Rapisardi<br>Cadwalader Wickersham & Taft LLP<br>One World Financial Center<br>New York, NY  10281 |
| James L. Bromley<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY  10006 | Babette Ceccotti<br>Cohen Weiss and Simon LLP<br>330 W. 42nd Street<br>New York, NY  10036 |
| Michael J. Edelman<br>Michael L. Schein<br>Vedder Price PC<br>1633 Broadway  47th Fl.<br>New York, NY  10019 | Diana G. Adams<br>Office of U. S. Trustee<br>33 Whitehall Street, 21st Fl.<br>New York, NY  10004 |

David S. Jones
Matthew L. Schwartz
U. S. Attorney's Office
86 Chambers Street, 3rd Fl.
New York, NY  10007

*/s/   J. Casey Roy*
J. CASEY ROY
Assistant Attorney General