CLARK HILL PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Robert D. Gordon (Mich. Bar. No. P48627)
admitted *pro hac vice*
rgordon@clarkhill.com
(313) 965-8572

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 09-50026 (REG) |
| GENERAL MOTORS CORP, *et al.*, ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |
| ) | |

**LIMITED OBJECTION OF PLASAN U.S.A., INC. AND PLASAN U.S.A., LTD. TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO**

Plasan U.S.A., Inc. and Plasan U.S.A., Ltd. (collectively, "**Plasan**") submit this limited objection (the "**Objection**") and respectfully states as follows:

1. The above-captioned Debtors (collectively, as applicable, the "**Debtors**") served Plasan with *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* (the "**Cure Notice**"), dated June 5, 2009, in which the Debtors express their intention to assume and then to assign to Vehicle Acquisition Holdings LLC (the "**Purchaser**") certain contracts between Plasan and the Debtors.

2. Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the

5903378.1 0000/00000

trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). According to the United States Court of Appeals for the Second Circuit, "[i]f the debtor is in default on the contract, it will not be allowed to assume the contract unless, at the time of the assumption it, *inter alia*, (a) cures, or provides adequate assurance that it will promptly cure, the default, and (b) provides adequate assurance of its future performance of its obligations under the contract. . . . Congress's intent in imposing these conditions on the ability of the debtor to assume the contract was "to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2nd Cir. 1996) *(internal citations omitted).*

3.  The Cure Notice and a separate notice sent to individual contract counterparties contain User ID and Password information (the "**Contract Website Password Notice**") and direct such counterparties to consult the Contract Website[1] to determine the Cure Amount the Debtors propose for the Assumable Executory Contracts the Debtors have with such counterparty.

4.  Plasan received three separate Contract Website Password Notices, corresponding to Vendor Master ID 514725436 and Supplier Name Haklaei Sasa Agricultural Coop Ltd (the "**Haklaei Entry**"); Vendor Master ID 514721211 and Supplier Name Plasan Sasa Ltd. (the "**Plasan Sasa Entry**"); and Vendor Master ID 600357107 and Supplier Name Kibbutz Sasa (the "**Kibbutz Entry**" and, collectively with the Haklaei Entry and the Plasan Sasa Entry, the "**Entries**"). On the initial "Contracts" page of the Entries, respectively, the Haklaei Entry lists

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Cure Notice.

15 contracts, the Plasan Sasa Entry lists 44 contracts, and the Kibbutz Entry lists 41 contracts, for an aggregate of 104 contracts (collectively, the "**Plasan Contracts**").

5.    Over the 104 contracts, the Entries list three Counter Part Names: Plasan USA Inc., Plasan U.S.A., Ltd., and Kibbutz Sasa. All contracts listed under any of these names are contracts for which Plasan is the true counter party.

6.    Only the Haklaei Entry has any detail on its "Contract Cure Amount Details" page. Its approximately 51 rows pertain to deliveries of goods from Plasan to one or more Debtors, with such deliveries occurring under the aegis of various of the 104 contracts listed in the Entries.

7.    Rows 14 through 26 of such Contract Cure Amount Details page set forth pre-petition amounts owed to Plasan for deliveries made to the Debtors in the final days before the Commencement Date (the "**Final Deliveries**"). Since approximately April 27, 2009, Plasan has participated in the United States Department of the Treasury Auto Supplier Program (the "**Program**"), funded by the United States government and administered by Citibank N.A. ("**Citibank**"). Pursuant to the Program, Plasan submitted invoices to the Debtors, whereupon the Debtors transferred such payables to Citibank for payment to Plasan. Plasan is advised that the Debtors failed to effect the transfer of such payables with respect to the Final Deliveries. The aggregate amount of such unpaid payables is equal to the sum of the figures in the Amounts column of the Contract Cure Amount Details page corresponding with the Final Deliveries, which is approximately $203,794.28 (the "**Program-Related Cure Portion**").

8.    Finally, Plasan has become aware that Debtor General Motors Corporation ("**GM**") has on certain occasions underpayed for deliveries made prior to the Commencement

Date on contracts listed on the Entries, creating discrepancies between the amounts Plasan believes were due, and the amounts GM actually paid, in the aggregate amount of approximately $26,400.53 (collectively, the "**Service Parts Pricing Discrepancies**"). Plasan has been in discussions with GM with a view toward reconciling the Service Parts Pricing Discrepancies.

9.   The Debtors assert that $188,566.31 is the amount that that is sufficient to cure all pre-petition defaults (the "**Cure Amount**") for the Plasan Contracts.

10.   Plasan does not object *per se* to assumption of the Plasan Contracts and their assignment to Purchaser.

11.   Plasan objects to the Cure Notice inasmuch as the Cure Amount is incorrect and does not reflect all defaults under the Plasan Contracts as of June 1, 2009.

12.   An appropriate cure amount for the Plasan Contracts would include the Service Parts Pricing Discrepancies, and would thus be set at an amount no lower than $214,966.84.

13.   Plasan reserves its rights, in the event the Plasan Contracts are assumed, to assert a cure amount which includes both (a) the Cure Amount and the Service Parts Pricing Discrepancies, for an appropriate pre-petition cure amount not less than $214,966.84, plus (b) any appropriate cure amounts arising from post-petition work under the Plasan Contracts.

14.   Notwithstanding the foregoing, Plasan further reserves its rights, in the event the Plasan Contracts are not assumed, to assert any claims for damages, which claims may include all amounts allowable under applicable law.

15.   Plasan further objects to the adequacy and the accuracy of the Cure Notice insofar as there are other agreements with Plasan that may or will be assumed and assigned but which have not been included in the Cure Notice for any reason.

5903378.1 0000/00000

16. Plasan reserves the right to amend or supplement this Objection as additional facts are learned.

| | |
|---|---|
| Dated: June 12, 2009 | Respectfully submitted, |
| | CLARK HILL PLC |
| | /s/ Robert D. Gordon |
| | Robert D. Gordon (Mich. Bar No. P48627) |
| | 151 S. Old Woodward Avenue, Suite 200 |
| | Birmingham, Michigan 48009 |
| | (313) 965-8572 |
| | rgordon@clarkhill.com |
| | Counsel to Plasan U.S.A., Inc. and Plasan U.S.A., Ltd. |

5903378.1 0000/00000