Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

    and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone:  (804) 749-8861
Facsimile:  (804) 749-8862

**Hearing Date and Time**: 6/30/09 at 9:45 a.m.,
Or, As May Be Determined By The Court
**Objection Deadline**: 6/15/09

*Co-Counsel for CenterPoint Energy Services, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re:                                          :        Chapter 11
:
**GENERAL MOTORS CORP.,** *et al.*,             :        Case No. 09-50026 (REG)
:
         **Debtors.**       :        **(Jointly Administered)**
:
---------------------------------------------------------------x

**OBJECTION OF CENTERPOINT ENERGY SERVICES, INC. , TO DEBTORS'
NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY,
AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II)
<u>CURE AMOUNTS RELATED THERETO</u>**

      CenterPoint Energy Services, Inc. ("CES"), by and through their undersigned counsel, for

their Objection (the "Objection") to the Debtors' *Notice Of (I) Debtors' Intent To Assume And*

*Assign Certain Executory Contracts, Unexpired Leases Of Personal Property, And Unexpired*

*Leases Of Nonresidential Real Property And (II) Cure Amounts Related Thereto* (the "Assumption and Assignment Notice"), respectfully represent as follows:

## FACTS

### Procedural Facts

1. On June 1, 2009 (the "Petition Date"), General Motors Corporation and certain of its subsidiaries (the "Debtors") commenced their cases (the "Bankruptcy Cases") that are now pending in this Court by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C §§ 101 *et seq*. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. On the Petition Date, the Debtors filed *Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(b), (f), (k), And (m), And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To (I) Approve (A) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief; And (II) Schedule Sale Approval Hearing* (the "Sale Motion"). In the Sale Motion, the Debtors seek approval from the Court for certain procedures governing the sale of substantially all of the Debtors' assets (the "363 Transaction") to Vehicle Acquisition Holdings, LLC (the "Purchaser") – a purchaser sponsored by the United States Department of the Treasury. Further, and as part of the 363 Transaction, Debtors seek authority from the Court to assume and assign certain executory contracts to the Purchaser.

3. On June 2, 2009, the Court entered the *Order Pursuant To 11 U.S.C. §§ 105, 363 And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006 (I) Approving Procedures For Sale Of Debtors' Assets Pursuant To Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline And Sale Hearing Date; (III) Establishing Assumption And Assignment Procedures; And (IV) Fixing Notice Procedures And Approving Form Of Notice* (the "Sale Procedures Order").

4. In the Sale Procedures Order, the Court, *inter alia*, approved the Sale Motion and scheduled the Sale Hearing on June 30, 2009, at 9:45 a.m. Further, the Court approved the form of the Assumption and Assignment Notice attached as *Exhibit E* to the Sale Motion and ordered that any objections by a non-Debtor counter-party to the proposed assumable executory contract as set forth in the Assumption and Assignment Notice, including disputes concerning the applicable cure amount, must be filed and served by the Contract Objection Deadline which is defined as no later than ten (10) days after the date of the Assumption and Assignment Notice (the "Contract Objection"). The Court also ordered that if required, the Court shall resolve any timely filed Contract Objection either at the Sale Hearing or such other date as determined by the Court. Finally, as to the Debtors' proposal in the Sale Motion concerning the adequate assurance of future performance requirements of Section 365(f)(2)(B), the Court ruled that in the event the Purchaser is not the successful bidder then non-Debtor parties to an executory contract, assumed and assigned as part of the 363 Transaction, may raise their objections to adequate assurance of future performance at the Sale Hearing.

### **Facts Regarding Debtors' Assumption and Assignment Notice**

5. The facts surrounding CES's receipt of the Assumption and Assignment Notice are

as follows:

    A.    On or about June 11, 2009, CES received an Assumption and Assignment Notice from the Debtors dated June 5, 2009.

    B.    On or about June 12, 2009, CES received two more Assumption and Assignment Notices from the Debtors dated June 5, 2009 (hereinafter, the notices referenced in paragraph 5A. and B. will be referred to as the "CES Notices").

6.    The CES Notices refers CES to a secure website maintained by the Debtors that is supposed to contain information about CES's executory contract including the amounts that the Debtors believe must be paid to cure all pre-petition defaults under the agreement as of the Petition Date and in accordance with Section 365(b) of the Bankruptcy Code (the "Cure Amount").

7.    CES and their undersigned counsel have repeatedly accessed the Debtors' aforementioned website since receiving the CES Notices. To date, however, no information is available on the website concerning the Debtors' proposed Cure Amount pertaining to any of CES's agreements with the Debtors. The website also does not contain any reference to the delivery points for the contracts or any other information that would enable CES to determine the particular contract to which a notice refers.

8.    Based upon the foregoing, Debtors have provided CES with the CES Notices but have failed to provide CES with the Debtors' proposed Cure Amount.

9.    Accordingly and for the reasons that follow, CES files this Objection in order to preserve all of its rights and interests in CES's pre-petition agreement with the Debtors, as more fully described herein, pursuant to, but without limitation, Section 365 of the Bankruptcy Code (the "CES Contract").

**Facts Regarding The CES Contract**

10.     The CES Contract consists of the *Base Contract For Sale And Purchase Of Natural Gas* (the "Base Contract") and the applicable transaction confirmations (the "Shreveport Transaction Confirmation" and the "Wentzville Transaction Confirmation").  The Base Contract governs all of the transactions between the Debtors and CES for the purchase and sale of gas supply.  The Shreveport Transaction Confirmation sets forth the base load volume of gas that the Debtors purchase from CES under the Base Contract related to the Debtors' facility located in Shreveport, Louisiana (the "Shreveport Facility").  The Wentzville Transaction Confirmation sets forth the base load volume of gas that the Debtors purchase from CES under the Base Contract related to the Debtors' facility located in Wentzville, Missouri (the "Wentzville Facility").

11.     Section 12 of the Base Contract provides, in pertinent part, that the Base Contract shall remain in effect until cancelled by either party on 30 days notice or until the expiration of the latest delivery period of any transaction, whichever is later.

12.     The latest delivery period under the Shreveport Transaction Confirmation is June 30, 2009.  Accordingly, and by its own terms, the parties' obligations concerning the purchase and sale of gas commodity to the Shreveport Facility shall expire as of June 30, 2009, unless the Debtors and/or any purchaser of the Shreveport facility timely execute a new transaction confirmation with CES.

13.     The latest delivery period under the Wentzville Transaction Confirmation is October 31, 2009.  Accordingly, and by its own terms, the parties' obligations concerning the purchase and sale of gas commodity to the Wentzville Facility shall expire as of October 31, 2009, unless the Debtors and/or any purchaser of the Wentzville facility timely execute a new

transaction confirmation with CES.

14. The facts relevant to the Debtors' cure amount of the Base Contract in relation to the Shreveport Facility are as follows:

    A. Debtors' unpaid pre-petition amount which includes Debtors' payment obligations under the Base Contract and the Shreveport Transaction Confirmation in relation to the Shreveport Facility is $132,550.32.

    B. At this time, there is no post-petition amount currently due under the Base Contract and the Shreveport Transaction Confirmation in relation to the Shreveport Facility. Under CES's billing schedule for the Base Contract and the Shreveport Transaction Confirmation, CES will issue the first post-petition bill in early July 2009.

16. The facts relevant to the Debtors' cure amount of the Base Contract in relation to the Wentzville Facility are as follows:

    A. Debtors' unpaid pre-petition amount which includes Debtors' payment obligations under the Base Contract and the Wentzville Transaction Confirmation in relation to the Wentzville Facility is $81,501.47.

    B. At this time, there is no post-petition amount currently due under the Base Contract and the Wentzville Transaction Confirmation in relation to the Wentzville Facility. Under CES's billing schedule for the Base Contract and the Wentzville Transaction Confirmation, CES will issue the first post-petition bill in early July 2009.

## DISCUSSION

**A. THE COURT MUST DENY THE DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT UNDER THE CES NOTICES UNTIL DEBTORS CLARIFY THEIR INTENTIONS REGARDING THE BASE CONTRACT AND APPLICABLE TRANSACTION CONFIRMATIONS AND COMPLY WITH THE REQUIREMENTS OF SECTION 365 OF THE BANKRUPTCY CODE.**

As set forth above, the Debtors have only provided CES with the CES Notice but have failed to provide CES with any information concerning Debtors' proposed Cure Amount in

relation to the Base Contract. Further, the Base Contract represents the only executory contract at issue between the Debtors and CES in the Bankruptcy Cases. Moreover, under the applicable transaction confirmations, CES has provided uninterrupted pre-petition gas commodity and continues to provide uninterrupted post-petition gas commodity to two (2) facilities owned and/or operated by the Debtors in the states of Louisiana and Missouri.

Under the Bankruptcy Code, a debtor-in-possession may assign an executory contract in accordance with Section 365(f) which provides, in pertinent part, as follows:

> (2) The trustee may assign an executory contract . . . of the debtor only if–
> (A) the trustee assumes such contract . . . in accordance with the provisions of this section; and
> (B) adequate assurance of future performance by the assignee of such contract . . . is provided, whether or not there has been a default in such contract.

Therefore, Debtors may assign the Base Contract which includes the Shreveport Transaction Confirmation and the Wentzville Transaction Confirmation only if the Debtors have first assumed the Base Contract and provided adequate assurance of future performance by the assignee. To assume the Base Contract, Debtors must satisfy the following three requirements of assumption under Section 365(b)(1) which are summarized as follows: (A) curing, or providing adequate assurance that the Debtors will promptly cure, any default under Base Contract; (B) compensating CES for any actual pecuniary loss resulting from Debtors' default under the Base Contract; and, (C) providing adequate assurance of future performance under the Base Contract.

In interpreting a debtor's broad authority under Section 365 to assume or reject an executory contract prior to confirmation, the United States District Court for the Southern District of New York has made it clear that "under the law of bankruptcy a contract cannot be

7

assumed in part or rejected in part." *AGV Productions, Inc., v. Metro-Goldwyn-Mayer, Inc., and Orion Pictures Corp.*, 115 F.Supp.2d 378, 391 (S.D.N.Y. 2000); *see also Pieco, Inc. v. Atlantic Computer Systems, Inc. (In re Atlantic Computer Systems, Inc.)*, 173 B.R. 844, 849 (S.D.N.Y. 1994) (holding that "a debtor may not 'cherry pick' pieces of contracts it wishes to assume."). Accordingly, Debtors may not maintain the uninterrupted and continuous supply of gas commodity by CES to the Shreveport Facility and to the Wentzville Facility following the Closing Date of the 363 Transaction without first assuming and assigning the Base Contract in accordance with Section 365 of the Bankruptcy Code. More significantly, Debtors' assumption and assignment of the Base Contract would render the assignment of Debtors' rights and obligations related to all of the Debtors' facilities included within the Base Contract to the Purchaser. In other words, and as a matter of law, it is not an option for the Debtors to simply assume and assign the portions of the Base Contract only related to the Shreveport Facility without simultaneously assuming and assigning the remaining provisions of the Base Contract related to the Wentzville Facility.

The Debtors' issuance of the CES Notices suggests the Debtors' intention to maintain the continuous supply of gas commodity to the Shreveport Facility and to the Wentzville Facility after the Closing Date of the 363 Transaction, but the Debtors have failed to clarify this issue. Accordingly the Court should require the Debtors to clarify their intentions regarding the need for CES to continue providing gas commodity to the Shreveport Facility and to the Wentzville Facility after the Closing Date of the 363 Transaction and further identify any other contracts that the Debtors allege exist with CES. Further, Debtors' failure to provide a Cure Amount concerning the Base Contract in accordance with Section 365(b)(1)(A) of the Bankruptcy Code is

the primary basis for this Objection. As to Section 365(b)(1)(B), CES is currently reviewing all of its account information and other business records pertinent to the Base Contract. Accordingly, CES hereby expressly reserves all of its rights to supplement this Objection for purposes of enforcing Debtors' obligation to compensate CES for any actual pecuniary loss resulting from Debtors' defaults under the Base Contract. As to Section 365(b)(1)(C), CES agrees to abide by the Court's ruling under the Sale Procedures Order and as set forth herein.

WHEREFORE, and for the foregoing reasons, CES respectfully requests that this Court enter an order:

1. Requiring the Debtors to clarify their intention to maintain the continuous supply of gas commodity to the Shreveport Facility and to the Wentzville Facility after the Closing Date of the 363 Transaction and to fully identify any other contracts they allege exist with CES;

2. Requiring the Debtors as a condition to their assumption and assignment of the Base Contract to comply with the requirements of Sections 365(b)(1) and (f)(2) of the Bankruptcy Code by: (a) promptly paying CES the amounts owing under the Base Contract including the Shreveport Transaction Confirmation and the Wentzville Transaction Confirmation for all unpaid pre-petition gas commodity services and all unpaid post-petition gas commodity services provided by CES to the Debtors' Shreveport Facility and Wentzville Facility through the Closing Date of the 363 Transaction; and, (b) compensating CES for any actual pecuniary loss resulting from Debtors' default under the Base Contract including the Shreveport Transaction Confirmation and the Wentzville Transaction Confirmation; and,

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: Garden City, New York
       June 12, 2009

        MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

        By:   /s/ Jil Mazer-Marino
            Thomas R. Slome (TS-0957)
            Jil Mazer-Marino (JM-6470)

        990 Stewart Avenue
        Suite 300
        P.O. Box 9194
        Garden City, New York  11530-9194
        Telephone: (516) 741-6565
        Facsimile: (516) 741-6706

        And

        Russell R. Johnson III, Esq.
        John M. Merritt, Esq.
        LAW FIRM OF RUSSELL R. JOHNSON III, PLC
        2258 Wheatlands Drive
        Manakin-Sabot, Virginia  23103
        Telephone: (804) 749-8861
        Facsimile: (804) 749-8862

        *Co-Counsel for CenterPoint Energy Services, Inc.*

719570