**Hearing Date and Time: June 25, 2009 at 9:45 a.m. (Eastern Time)**
**Objection Date and Time: June 19, 2009 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-
Facsimile:  (212) 310-

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re:**                                                           :
                                                                     :          **Chapter 11**
                                                                     :
**GENERAL MOTORS CORP., *et al.*,**                 :          **Case No. 09-50026 (REG)**
                                                                     :
                                                                     :
                                                                     :          **Jointly Administered**
                           **Debtors.**                    :
                                                                     :
---------------------------------------------------------------x

**APPLICATION FOR AN ORDER PURSUANT TO**
**SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 2014(A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR**
**FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

## TABLE OF CONTENTS

**Page**

Jurisdiction and Venue.................................................................................................- 2 -

Relief Requested ..........................................................................................................- 2 -

Scope of Services .........................................................................................................- 4 -

Evercore's Disinterestedness .......................................................................................- 6 -

Professional Compensation...........................................................................................- 7 -

Fee Applications ..........................................................................................................- 11 -

Indemnification ............................................................................................................- 12 -

Standard Of Review......................................................................................................- 13 -

Basis for Relief .............................................................................................................- 14 -

Notice ...........................................................................................................................- 15 -

## TABLE OF AUTHORITIES

### CASES

In re Calpine Corp, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.)……………………………12, 14

In re Collins & Aikman Corp., Case No. 05-55927 (SWR) (Bankr. E.D. Mich.)………………12

In re Delphi Corporation, Case No. 05-4481 (RDD) (Bankr. S.D.N.Y)…………………………6

In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del.)……………………………...12, 14

In re Foamex Int'l, Inc., No. 05-12685 (KG) (Bankr. D. Del.)……………………………………12

In re Loews Cineplex Entertainment Corp., Case No. 01-40346 (ALG) (Bankr. S.D.N.Y.)...……3

In re Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y)………3, 12, 14

In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del.)…...……12, 14

In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y.)…...…………..…3

In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del.)…………………..…12

In re Parmalat U.S.A. Corp., Case No. 04-11139 (RDD) (Bankr. S.D.N.Y.)……...…………...3

In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y.)…………………………………...3

In re The Rowe Cos., Case No. 06-11142 (DOT) (Bankr. E.D. Va.)……………………………14

In re U.S. Airways, Inc., Case No. 02-83984 (SJM) (Bankr. E.D. Va.)……………………..12, 14

In re United Artists Theatre Co., Case No. 00-3514 (PJW) (Bankr. D. Del.)…………...……13

### FEDERAL STATUTES

11 U.S.C. § 328(a)…………………………………………………………............2, 11, 13, 14

28 U.S.C. § 1334…………………………………………………………………………..2

28 U.S.C. § 1408…………………………………………………...…………………..2

28 U.S.C. § 157(b)(2) ………………………………………...……………………..2

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "**Debtors**" and each, a "**Debtor**"),[1] hereby move for an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the employment and retention of Evercore Group L.L.C. and its affiliates ("**Evercore**") as investment banker and financial advisor to the Debtors, and, in support thereof, respectfully represent as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this application (the "**Application**") pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

2.      The Debtors seek entry of an order (a) authorizing the Debtors to retain Evercore to provide investment banking and financial advisory services in connection with the evaluation and possible implementation of strategic alternatives which may be available to the Debtors; (b) authorizing Evercore to continue to provide investment banking and financial advisory services to the Debtors in their capacity as interested parties in the Delphi Case (as defined below); (c) approving the terms of Evercore's employment, including the proposed fee structure and indemnification provisions set forth in the GM Engagement Letter (as defined

---

[1] In addition to General Motors Corporation, the other Debtors are Chevrolet-Saturn of Harlem, Inc., Saturn, LLC, and Saturn Distribution Corporation.

below), attached hereto as Exhibit A, *nunc pro tunc* to June 1, 2009 (the "**Petition Date**"); and (d) granting such other and further relief as the Court deems appropriate.

3.      Established in 1996, Evercore is a leading investment banking boutique and investment management firm. Evercore's Advisory business counsels its clients on mergers, acquisitions, divestitures, restructurings and other strategic transactions.  Evercore's Investment Management business comprises private equity investing, institutional asset management and wealth management. Evercore serves a diverse set of clients around the world from its offices in New York, San Francisco, Boston, Washington D.C., Los Angeles, Houston, London, Mexico City and Monterrey, Mexico.  Its corporate advisory and restructuring advisory groups have together advised on over $600 billion of transactions.  Its restructuring professionals provide investment banking and financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and out-of-court restructurings.

4.      The Debtors have selected Evercore as their investment banker and financial advisor because of its extensive general experience and knowledge in the restructuring advisory field.  Evercore professionals have actively been retained as investment bankers and financial advisors in a number of troubled company situations, including among others: Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2009), Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sep. 14, 2005), Parmalat U.S.A. Corp., Case No. 04-11139 (RDD) (Bankr. S.D.N.Y. Feb. 24, 2004), Loews Cineplex Entertainment Corp., Case No. 01-40346 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2001), and PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 23, 2008).

5.      Further reason for selecting Evercore is its knowledge of the Debtors' businesses and capital structure. Since Evercore's initial retention on June 23, 2008, it has worked closely with the Debtors' management, creditors, other professionals and advisors in exploring various strategic, financial and restructuring alternatives and otherwise assisting in preparing for the commencement of these chapter 11 cases. Consequently, the Debtors believe that Evercore has developed significant relevant experience and expertise regarding the Debtors and their current situation and is thus both well-qualified and uniquely suited to deal effectively and efficiently with any financial problems that may arise in the context of these cases. Indeed, if the Debtors were required to retain financial advisors other than Evercore in connection with these chapter 11 cases, the Debtors, their estates, and all parties in interest would be unduly prejudiced by the time and expenses necessary to familiarize the other financial advisors with the intricacies of the Debtors and their business operations.

6.      The Debtors submit that the retention of Evercore on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

7.      The employment of Evercore under the terms set forth in the GM Engagement Letter is appropriate and necessary to enable the Debtors to execute faithfully their duties as debtors and debtors-in-possession and to implement their restructuring and reorganization. The Debtors submit that Evercore is well-qualified and able to provide the following professional services, more fully described in the engagement letter dated May 29,

2009 (the "**GM Engagement Letter**").   Subject to further order of this Court, the Debtors

propose that Evercore provide the following services pursuant to the GM Engagement Letter:[2]

<blockquote>

(a)    Reviewing and analyzing the Debtors' businesses, operations, and financial projections;

(b)    Advising and assisting the Debtors in a Restructuring, Financing and/or Sale transaction, if the Debtors determine to undertake such a transaction;

(c)    Providing financial advice in developing and implementing a Restructuring, which would include:

> (i)    Assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (the "**Plan**");
>
> (ii)   Advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;
>
> (iii)  Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings under the Bankruptcy Code that are pending before this Court; and
>
> (iv)   Providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate.

(d)    Assisting the Debtors with Financing (including but not limited to DIP Financing and Other Financing), including:

> (i)    Structuring and effecting a Financing;
>
> (ii)   Identifying potential Investors and, at the Debtors' request, contacting such Investors; and,
>
> (iii)  Working with the Debtors in negotiating with potential Investors.

(e)    If the Debtors pursue a Sale, assisting the Debtors with:

> (i)    Structuring and effecting a Sale;

</blockquote>

---

[2] To the extent that the Application and the terms of the GM Engagement Letter are inconsistent, the terms of the GM Engagement Letter shall control.  Capitalized terms used in this Application without definition shall have the meanings ascribed to them in the GM Engagement Letter.

       (ii) Identifying interested parties and/or potential acquirers and at the Debtors' request, contacting such interested parties and/or potential acquirers; and

       (iii) Advising the Debtors in connection with negotiations with potential interested parties and/or acquirers and aiding in the consummation of a Sale transaction.

    (f)   Rendering an opinion (a "**Fairness Opinion**") to the Board of Directors of the Debtors as to the fairness, from a financial point of view, of the consideration to be paid or received by the Debtors in connection with a Master Sale and Purchase Agreement (the "**Agreement**"), with Vehicle Acquisition Holdings LLC ("**NewCo**"), which will provide for a sale of the Purchased Assets (as defined in the Agreement), pursuant to authorization that will be sought under section 363 of the Bankruptcy Code.

8.     In addition, the Debtors propose that Evercore continue to provide financial advisory services to the Debtors in their capacity as interested parties in the Delphi case (In re Delphi Corporation, Case No. 05-4481 (RDD) (Bankr. S.D.N.Y)) (the "**Delphi Case**").

9.     Evercore has indicated a desire and willingness to act in the Debtors' cases and render the necessary professional services as investment banker and financial advisor for the Debtors on the terms set forth in the GM Engagement Letter and described herein, and to subject itself to the jurisdiction of the Court.  Additionally, the Debtors have been advised by Evercore that it will endeavor to coordinate with the other professionals retained in these chapter 11 cases to eliminate unnecessary duplication or overlap of work.

### Evercore's Disinterestedness

10.    To the best of the Debtors' knowledge, information and belief, other than as set forth herein or in the declaration of William C. Repko (the "**Repko Declaration**"), attached as Exhibit B, neither Evercore nor any Evercore professional working on or connected to its engagement on the Debtors' behalf has any connection with the Debtors, their creditors, the

United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), or any other party with an actual or potential interest in the Debtors' cases or their attorneys or accountants.

11.    To the best of the Debtors' knowledge, information and belief, based on (and other than as set forth in) the Repko Declaration, Evercore does not hold or represent any interest adverse to the Debtors' bankruptcy estates.  The Debtors believe that Evercore is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code, and that the employment of Evercore is necessary and in the best interests of the Debtors, their estates, and their creditors.

12.    Evercore will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, Evercore will inform the Court.

## Professional Compensation

13.    As more fully described in the GM Engagement Letter, the Debtors have agreed that fees for services rendered by Evercore during these cases (the "**GM Fee Structure**") will be as follows:

(a)    A Monthly Fee of $400,000, payable on the 1st day of each month of the engagement, for a period of 24 months, commencing June 1, 2009 through (and including) May 1, 2011 and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a Plan or termination pursuant to Section 5 of the GM Engagement Letter.

(b)    A fee (a "**Fairness Opinion Fee**") in an amount of $6 million, which was paid on May 29, 2009.  50% of the Fairness Opinion Fee shall be creditable against the Sale Fee applicable to the "NewCo Transaction" (as defined below), subject to certain adjustments in the event that this Court fails to approve or allow all of Evercore's fees.

(c)    A Restructuring Fee, payable upon the consummation of any Restructuring, of $30 million, against which Evercore will credit

$14 million in certain monthly and other fees paid to Evercore prior to the Petition Date.

(d)    A fee (the "**Sale Fee**"), payable upon consummation of any Sale other than the NewCo Transaction, equal to the product of (a) the Aggregate Consideration[3] of a Sale and (b) applicable percentages set forth below.

| Incremental Aggregate Consideration | Percentage Fee for Incremental Portion |
| --- | --- |
| $250 million | 1.40% |
| $500 million | 0.90% |
| $800 million | 0.80% |
| $1.6 billion | 0.60% |
| $2.5 billion | 0.50% |
| $3 billion | 0.45% |
| $5 billion | 0.35% |
| $7.5 billion | 0.30% |
| $10 billion | 0.25% |
| $12.5 billion | 0.23% |
| $15 billion | 0.20% |
| $20 billion | 0.17% |
| $25 billion | 0.14% |

---

[3] "Aggregate Consideration" means total fair market value (determined at the time of the closing of a Sale by the Debtors and Evercore in good faith) of all consideration paid or payable to, or received by, directly or indirectly, the Debtors, their bankruptcy estates, their creditors and/or the security holders of the Debtors in connection with a Sale including all (i) cash, securities (equity or otherwise) and other property, (ii) indebtedness of the Debtors assumed, satisfied, or paid by a purchaser (including, without limitation, the amount of any indebtedness, securities or other property "credit bid" in any Sale) and any other indebtedness and obligations, including tax claims that will actually be paid, satisfied, or assumed by a purchaser from the Debtors or the security holders of the Debtors and (iii) amounts placed in escrow and deferred, contingent and installment payments.

| Incremental Aggregate Consideration | Percentage Fee for Incremental Portion |
|---|---|
| $30 billion and above | 0.12% |

Fifty percent (50%) of any Sale Fee shall be credited (without duplication) against any Restructuring Fee owed after other credits are applied to the Restructuring Fee, subject to certain adjustments in the event that this Court fails to approve or allow all of Evercore's fees.

(e)     A fee (the "**NewCo Transaction Fee**") equal to $30 million, payable upon consummation of the NewCo Transaction, against which Evercore will credit $17 million in certain monthly and other fees (including 50% of the Fairness Opinion Fee, as described above) paid to Evercore prior to the Petition Date. The NewCo Transaction Fee shall be payable upon closing of the transaction proposed by the Company as the NewCo Transaction, regardless of whether the buyer approved by this Court shall be NewCo or another bidder that has made a higher or otherwise better offer.

(f)     A fee or fees (collectively, the "**Financing Fee**"), payable upon consummation of any Financing and incremental to any Restructuring Fee or Sale Fee, as follows:

   (i)     A fee in the amount of $2.5 million for assisting the Debtors in the structuring and  implementation of debtor-in-possession ("**DIP**") Financing under the Bankruptcy Code (the "**DIP Structuring Fee**")

   (ii)     For any Financing other than a DIP Financing provided by the United States Government (the "**Other Financing**" and the corresponding fee, the "**Other Financing Fee**"), a 3% fee of the gross proceeds provided by such financing.

Fifty percent (50%) of any Financing Fee, but excluding any DIP Structuring Fee, shall be credited (without duplication) against any Restructuring Fee, subject to certain adjustments in the event that this Court fails to approve or allow all of Evercore's fees.

(g)     A fee (the "**Delphi Fee**") in the amount of $2 million for advisory services relating to the Delphi Case, payable upon (i) consummation of any plan of reorganization of Delphi Corporation or (ii) the sale or other transfer of all or substantially all of the assets or business of Delphi in a single transaction or

series of related transactions. The Delphi Fee is not creditable against any fee.

(h)    Notwithstanding the foregoing, the Debtors and Evercore have agreed that Evercore shall only be entitled to either (a) the NewCo Transaction Fee or (b) a Restructuring Fee and/or a Sale Fee, and not both (a) and (b). For the avoidance of doubt, if Evercore is entitled to the NewCo Transaction Fee, Evercore will not be entitled to any Restructuring Fee or Sale Fee.

14.    Evercore also will seek reimbursement for reasonable out-of-pocket expenses and other fees and expenses, including reasonable expenses of counsel, if any, as set forth in the GM Engagement Letter. Evercore will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors. If Evercore provides services to the Debtors for which a fee is not provided in the GM Engagement Letter, such services will, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of the GM Engagement Letter, and the Debtors and Evercore will agree upon a fee for such services based upon good faith negotiations.

15.    The overall compensation structure described herein and more fully in the GM Engagement Letter has been established to reflect the difficulty of assignments, the hours to be worked, the results to be achieved, the ultimate benefit to the Debtors, and the potential for an unfavorable outcome as a result of factors outside of Evercore's control. The compensation is comparable to the compensation generally charged by investment banking and financial advisory firms of similar stature to Evercore and for comparable engagements, both in and out of court.

16.    Although Evercore does not charge for its services on an hourly basis, Evercore will nonetheless maintain records (in summary format) of time spent by its professionals in connection with the rendering of services for the Debtors by category and the amount of time spent on each date by each such professional in rendering services on behalf of

the Debtors; provided, however, that Evercore seeks approval to maintain time records in half-hour increments.

17.    The Debtors acknowledge and agree that Evercore's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Evercore's engagement, were important factors in determining the fees set forth in the GM Engagement Letter and summarized above, and that the ultimate benefit to the Debtors of Evercore's services likely could not be measured merely by reference to the number of hours to be expended by Evercore's professionals in the performance of such services.

18.    In addition, given the numerous issues that Evercore may be required to address in the performance of its services hereunder, Evercore's commitment to the variable level of effort necessary to address all issues as they arise, and the market prices for Evercore's services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements in the GM Engagement Letter (including the Restructuring Fee in the GM Engagement Letter) are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

19.    As set forth in the Repko Declaration, Evercore has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of Evercore, as permitted by section 504 of the Bankruptcy Code.

## Fee Applications

20.    Evercore will file interim and final fee applications for allowance of its compensation and expenses, with respect to its services, in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern

District of New York, the guidelines established by the United States Trustee for the Southern District of New York, and further orders of this Court; provided, however, that Evercore shall not be subject to the standard of review under section 330 of the Bankruptcy Code. Evercore's applications for compensation and expenses will be paid by the Debtors upon approval by the Court.

### Indemnification

21.     Subject to the approval of the Court and as more fully described in the indemnification agreement dated September 5, 2008 and incorporated by reference in the GM Engagement Letter (the "**GM Indemnification Agreement**"), the Debtors will indemnify and hold Evercore and its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any, (each an "**Indemnified Person**") harmless from and against any and all claims, actions, investigations, or liabilities incurred by any of them in the performance of duties hereunder (including reasonable attorneys' fees and expenses in connection with any such controversies) other than as a primary result of such Indemnified Person's gross negligence, bad faith or willful misconduct.

22.     The Debtors and Evercore believe that the GM Indemnification Agreement is customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. See, e.g., In re Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 25, 2009); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 25, 2007); In re Calpine Corp, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Jan 17, 2006); In re

<u>Foamex Int'l, Inc.</u>, No. 05-12685 (KG) (Bankr. D. Del. Oct. 17, 2005); <u>In re Collins & Aikman Corp.</u>, Case No. 05-55927 (SWR) (Bankr. E.D. Mich. July 18, 2005); <u>In re Oakwood Homes Corp.</u>, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); <u>In re U.S. Airways, Inc.</u>, Case No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); <u>In re United Artists Theatre Co.</u>, No. 00-3514 (PJW) (Bankr. D. Del. Nov. 14, 2000).

23.    The terms and conditions of the GM Engagement Letter and the GM Indemnification Agreement were negotiated by the Debtors and Evercore at arm's-length and in good faith.  The Debtors respectfully submit that the indemnification provisions contained in the GM Indemnification Agreement, viewed in conjunction with the other terms of Evercore's proposed retention, are reasonable and are in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Evercore's services to successfully reorganize.  Accordingly, as part of this Application, the Debtors request that the Court approve the GM Indemnification Agreement.

## <u>Standard Of Review</u>

24.    The Debtors acknowledge and agree that Evercore's compensation under the GM Engagement Letter has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Evercore and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Evercore and that the actual time and commitment required of Evercore and its professionals to perform the investment banking and financial advisory services under the GM Engagement Letter may vary substantially from week to week or month to month.

**Basis for Relief**

25.    The Debtors seek approval of the GM Fee Structure and the GM
Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in
relevant part, that the Debtors "with the court's approval, may employ or authorize the
employment of a professional person under section 327 . . . on any reasonable terms and
conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage
fee basis, or on a contingent fee basis . . . ."   11 U.S.C. § 328(a).   Accordingly, section 328
permits the compensation of professionals, including investment bankers and financial advisors,
on more flexible terms that reflect the nature of their services and market conditions.

26.    The GM Fee Structure appropriately reflects the nature and scope of
services to be provided by Evercore, Evercore's substantial experience with respect to
investment banking and financial advisory services and the fee structures typically utilized by
Evercore and other leading investment banks and financial advisors that do not bill their clients
on an hourly basis.

27.    Similar fixed and contingency fee arrangements have been approved and
implemented by courts in other large chapter 11 cases.   See, e.g., In re Lyondell Chemical
Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 25, 2009); In re Calpine Corp.,
Case No. 05-60200 (Bankr. S.D.N.Y. May 1, 2006); In re FLYi, Inc., No. 05-20011 (Bankr. D.
Del. Jan. 17, 2006); In re New Century TRS Holdings, Inc., 07-10416 (Bankr. D. Del. Apr. 25,
2007); In re The Rowe Cos., Case No. 06-11142 (DOT) (Bankr. E.D. Va. Oct. 17, 2006); In re
U.S. Airways, Inc., 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002).

## Notice

28.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases, (vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) the U.S. Attorney's Office, S.D.N.Y., and (xiii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

**WHEREFORE,** the Debtors respectfully request that this Court enter an order, substantially in the form attached as Exhibit C, (i) authorizing the employment and retention of Evercore as investment banker and financial advisor to the Debtors *nunc pro tunc* to the Petition Date, (ii) authorizing Evercore to continue to provide investment banking and financial advisory services to the Debtors in their capacity as interested parties in the Delphi Case, and (iii) granting the Debtors such other relief as is just and proper.

Dated: New York, New York
        June 12, 2009

                                 GENERAL MOTORS CORPORATION
                                 (for itself and on behalf of its affiliated
                                 Debtors and Debtors in Possession)


                                 /s/ Walter G. Borst
                                 NAME: Walter G. Borst

                                 TITLE:  Treasurer

## **EXHIBIT A**

GM Engagement Letter

# EVERCORE GROUP L.L.C

September 5, 2008

Mr. Walter G. Borst
Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Walter:

 This engagement letter (this "Agreement") formalizes the arrangement between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein.

 Under the terms of this Agreement, Evercore will provide financial advisory services to the Company in connection with its strategic planning process, capital markets activities, and evaluation of strategic alternatives. Evercore will provide financial advisory services as customarily may be required in connection with engagements of this type.

 As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore a monthly retainer fee of $500,000, payable in arrears, beginning June 23, 2008. In the event Evercore is subsequently retained as financial advisor during the next 6 months on any strategic and financial alternatives involving a merger, sale of all or part of the equity, business or assets of the Company or other significant corporate transaction (a "Transaction"), the monthly retainer fees would be creditable against any success fee payable under the separate engagement, in whole or in part as determined solely by the Company after consultation with Evercore. The company also agrees to reimburse Evercore for its reasonable and customary expenses (including legal and other professional fees, expenses and disbursements) incurred in connection with its engagement.

 The Company recognizes and consents to the fact that (a) Evercore will use and rely on the accuracy and completeness of public reports and other information provided by others, including information provided by the Company, other parties and their respective officers, employees, auditors, attorneys or other agents in performing the services contemplated by this Agreement, and (b) Evercore does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

 The Company will provide to Evercore all information and data requested by Evercore that the Company reasonably deems appropriate in connection with Evercore's engagement. The Company will use its reasonable best efforts to ensure that any information heretofore or hereafter furnished to Evercore is and will be true and correct in all material respects and does not and will not omit any material fact required to make the

Letter to Mr. Walter Borst
General Motors Corporation
September 5, 2008
Page 2

information given to Evercore not misleading. The Company will use its reasonable best efforts to notify Evercore promptly of any material change or correction in information regarding the business or financial condition of the Company that it has provided to Evercore when it becomes aware of such material change or of an error necessitating such correction.

The Company agrees that any information or advice rendered by Evercore under this engagement shall be kept confidential by the management and Board of Directors of the Company, is solely for the use of the management and Board of Directors of the Company and may not be provided to, or relied upon by, others without the consent of Evercore. Evercore understands that the Company may need to share Evercore's information and advice with its attorneys, auditors or other advisers, and Evercore hereby consents to any such sharing, provided however, that no such third party may rely on such information or advice without the written consent of Evercore.

Evercore's engagement hereunder may be terminated by the Company or by Evercore at any time upon written notice and without liability or continuing obligation to the Company or to Evercore (except for any compensation earned and expenses incurred by Evercore prior to the date of termination and as specified below); provided that the Indemnification Agreement attached hereto as Schedule I will remain operative regardless of any such termination.

Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture, or partnership. Evercore shall at all times be and be deemed to be an independent contractor. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

This Agreement (including the Indemnification Agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

Letter to Mr.Walter Borst
General Motors Corporation
September 5, 2008
Page 3

The Company acknowledges that Evercore's affiliates engage in the private equity business, asset management business and related activities (collectively, "Non-Broker Dealer Businesses"). In the ordinary course of our Non-Broker Dealer Businesses, Evercore's affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of their customers, in debt or equity securities or senior loans of the Company or any other company that may be involved in a transaction with the Company. Evercore represents and warrants that it has reasonable policies and procedures in place to prevent its affiliates from using material, non-public information in Evercore's possession.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

The parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court. The parties irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens*.

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

*[Signature page follows]*

Letter to Mr. Walter Borst
General Motors Corporation
September 5, 2008
Page 4

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

EVERCORE GROUP L.L.C.

By: _____
[Name] William O. Hiltz
[Title] Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By: _____
[Name] Walter G. Borst
[Title] Treasurer

<u>Schedule I</u>

**Indemnification Agreement**

September 5, 2008

Mr. Walter G. Borst
Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Walter:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services to General Motors Corporation (the "Company") pursuant to the engagement letter, dated September 5, 2008, the Company and Evercore are entering into this Indemnification Agreement (this "Agreement"). It is understood and agreed that in the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's stockholders, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, the Company will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the reasonable out of pocket cost of any investigation and preparation) as and when they are incurred in connection therewith, provided that such reimbursement may be remitted to the Company as provided below.

The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, whether or not any pending or threatened claim, action, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any claim, action, proceeding or investigation in which the Company or an Indemnified Person is a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct.

The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment to have resulted primarily from such Indemnified Person's gross negligence, bad faith or

Indemnification Agreement
General Motors Corporation
September 5, 2008
Page 2

willful misconduct.  Each Indemnified Person shall promptly remit to the Company any amounts paid to such Indemnified Person under this Agreement in respect of losses, claims, damages, liabilities or expense that resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as relative fault of the Company and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations.  To the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services.  The Company and Evercore agree that it would not be just and equitable if contribution hereunder were determined by pro rata allocation or by any other method that does not take into account the equitable considerations referred to herein.  The Company's reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall promptly notify the Company in writing, and the Company shall be entitled, at its expense, and upon delivery of written notice to Evercore, to assume the defense thereof with counsel reasonably satisfactory to Evercore.  Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed in writing to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel in a timely manner or (iii) counsel has advised such Indemnified Person that in such action, claim, suit, proceeding or investigation there is a conflict of interest between the Company's position and the position of the Indemnified Person.  It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all such Indemnified Persons, which firm shall be designated in writing by Evercore.  The Company shall not be liable for any settlement or compromise of any claim, action, proceeding or investigation (or for any related

Indemnification Agreement
General Motors Corporation
September 5, 2008
Page 3

losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution is reasonably likely to be sought hereunder (whether or not Evercore or any other Indemnified Person is an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation.

No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York.

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

Indemnification Agreement
General Motors Corporation
September 5, 2008
Page 4

This Agreement shall remain in effect indefinitely, notwithstanding any termination of Evercore's engagement.

Very truly yours,

EVERCORE GROUP L.L.C.

By: _W. O. Hil_____

[Name] William O. Hiltz

[Title] Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By: _____

[Name] Walter G. Borst

[Title] Treasurer

DEC 23 2008 17:35  FR ASST TREASURER        281-674 3695 TO 912482674595        P.01/04

December 23, 2008

Mr. Adil Mistry
Assistant Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Adil:

This letter (this "Amendment") amends that certain engagement letter entered into between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (the "Company") dated September 5, 2008 (the "Agreement"), regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth therein.

Unless otherwise noted, all defined terms set forth in this Amendment shall have the same meaning as set forth in the Agreement. The Agreement shall continue in full force and effect in accordance with the provisions thereof, except that, effective as of the date hereof, the following sections of the Agreement are amended as follows:

1. The second full paragraph on page 1 of the Agreement is deleted in its entirety and replaced with the following:

> "Under the terms of this Agreement, Evercore will provide financial advisory services to the Company in connection with its strategic planning process, capital markets activities, and evaluation of strategic and financial alternatives, including the possibility of a debt exchange, reorganization, merger, sale or other significant transaction. Evercore will provide financial advisory services as customarily may be required in connection with engagements of this type. In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring or Other Transaction (both as defined below). Evercore shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice."

2. The third full paragraph on page 1 of the Agreement is deleted in its entirety and replaced with the following:

> "As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore, upon execution of this Amendment, the following fees in cash as and when set forth below:

Engagement Letter Amendment
General Motors Corporation
December 23, 2008
Page 2

1) Commencing on January 1, 2009, the Company agrees to pay Evercore a monthly retainer fee in the amount of $1,000,000, payable in advance, until termination of this Agreement (the "New Monthly Retainer Fee"). For the avoidance of doubt, the $500,000 monthly retainer payments due to Evercore under the original agreement dated September 5, 2008 (the "Old Monthly Retainer Fee") shall cease upon payment of the December 2008 Old Monthly Retainer Fee. The New Monthly Retainer Fees would be creditable against any Restructuring Fee as determined solely by the Company after consultation with Evercore, but in no case shall the amount creditable be greater than $4,000,000.; and

2) A restructuring fee (a "Restructuring Fee"), payable upon the consummation of any Restructuring (as defined below) according to the following schedule:

    a) 0.15% of the face value of Existing Obligations (as defined below) restructured for amounts up to $10,000,000,000;

    b) 0.10% of the face value of Existing Obligations restructured for amounts from $10,000,000,000 up to $20,000,000; and

    c) An additional $5,000,000 for any amount of the face value of Existing Obligations restructured above $20,000,000.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization including without limitation, cancellation, forgiveness, satisfaction, retirement, purchase and/or a material modification or amendment to the terms of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension liabilities, lease obligations, partnership interests and other liabilities (collectively, the "Existing Obligations") including pursuant to a sale, repurchase or an exchange transaction, a plan, or a solicitation of consents, waivers, acceptances or authorizations. For the avoidance of doubt, the term "Existing Obligations" shall exclude any amounts relating to the VEBA that the UAW may agree to restructure.

In the event that the Company undertakes any other significant transaction, such as a reorganization, restructuring, merger, sale of all or part of the equity, business or assets of the Company or other significant corporate transaction (an "Other Transaction"), the Company agrees that it will pay to Evercore a reasonable and customary Transaction fee, with the exact amount to be mutually agreed. Evercore understands that the Company is likely to work with more than one financial advisor in connection with an Other Transaction, with Evercore to receive not less than half of the total financial advisory fees paid by the Company in connection with such Other Transaction. The company also agrees to reimburse Evercore for its reasonable and customary expenses (including legal and other professional fees, expenses and disbursements) incurred in connection with its engagement."

Engagement Letter Amendment
General Motors Corporation
December 23, 2008
Page 3

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

*[signature page follows]*

DEC 23 2008 17:36  FR ASST TREASURER        312 412 3695 TO 912482674595         P.04/04

Engagement Letter Amendment
General Motors Corporation
December 23, 2008
Page 4

Very truly yours,

EVERCORE GROUP L.L.C.

By:

William Repko
Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By:

Adil Mistry
Assistant Treasurer

# EVERCORE GROUP L.L.C.

April 28, 2009

Mr. Adil Mistry
Assistant Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Adil:

This letter (the "Second Amendment") amends the engagement letter entered into between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (the "Company") dated September 5, 2008 (the "Agreement") and the letter amendment dated December 23, 2009 to the Agreement (the "Amendment"), regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth therein.

Because of the substantial work performed by Evercore in pursuit of a Transaction (as defined in the Agreement), including the evaluation and analysis of the Company's alternatives for financial restructuring and debt reduction, assistance in drafting the exchange offer prospectus, providing tactical advice in the structure of the exchange offer, providing extensive support with respect to submissions to the U.S. Treasury and assistance in due diligence performed by the U.S. Treasury and their advisors, assistance in negotiations with and due diligence performed by lenders and their advisors, assistance in due diligence performed by the UAW and its advisors, the evaluation of strategic alternatives for the Company and preparation for a potential bankruptcy filing, we have agreed that certain modifications to the compensation payable to Evercore are appropriate at this time.

Unless otherwise noted, all defined terms set forth in this Second Amendment shall have the same meaning as set forth in the Agreement. The Agreement shall continue in full force and effect in accordance with the provisions thereof, as previously amended by the Amendment, except that, effective as of the date hereof, the Agreement (as amended) is amended as follows:

GM agrees to pay Evercore two non-refundable cash fees as follows: (a) $5,000,000 on April 29, 2009; and (b) $5,000,000 upon the filing with the Securities and Exchange Commission of the first amendment to the Registration Statement with respect to the pending exchange offers or May 11, 2009, whichever occurs first. Such fees shall each be deemed an advance, and shall each be fully creditable, against any Restructuring Fee payable pursuant to the Agreement, as amended. For the avoidance of doubt, New Monthly Retainer Fees shall also be credited against any Restructuring Fee as contemplated by and subject to the cap included in the Amendment.

In no event shall the Company be required to pay more than $30,000,000 in the aggregate for Restructuring Fees (such maximum amount shall be prior to any and all amounts offset against Restructuring Fees pursuant to this Agreement, as amended,

including the non-refundable cash fees set forth above and any creditable New Monthly Retainer Fees).

The paragraphs on page 2 of the Amendment (which addressed the definition of "Restructuring" and the compensation payable to Evercore if an "Other Transaction" is consummated) are deleted in their entirety and replaced with the following:

> "As used in this Agreement, the term "Restructuring" shall mean, collectively, (a) any restructuring, reorganization and/or recapitalization that involves cancellation, forgiveness, satisfaction, retirement and/or purchase of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), unfunded pension liabilities including pursuant to a sale, repurchase or an exchange transaction (collectively, the "Existing Obligations") or (b) any merger, consolidation or other such sale of the Company or the sale of all or substantially all of its assets. The Company also agrees to reimburse Evercore for its reasonable and customary out-of-pocket expenses (including legal and other professional fees, expenses and disbursements) incurred in connection with its engagement."

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

*[signature page follows]*

Very truly yours,

EVERCORE GROUP L.L.C.

By:

William Repko
Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By:

Adil Mistry
Assistant Treasurer

May 29, 2009

Mr. Adil Mistry
Assistant Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Gentlemen:

This amended and restated engagement letter (this "Agreement"), executed as of the date above, is to formalize the arrangement between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (together with any direct or indirect subsidiaries, the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein.

This Agreement amends and restates the engagement letter dated September 5, 2008 between the parties, as amended (the "Original Engagement Letter"); provided, however, the Company's obligations to indemnify Evercore pursuant to the Indemnification Agreement, between the parties effective as of September 5, 2008 (the "Indemnification Agreement"), shall remain unaltered.

Pursuant to the Second Amendment, dated as of April 28, 2009, to the Original Engagement Letter and in connection with the services provided by Evercore, the Company (x) agreed to pay and paid to Evercore a portion of the Restructuring Fee (as defined below) equal to $5 million on April 29, 2009 and (y) agreed to pay and paid to Evercore another $5 million portion of the Restructuring Fee on May 14, 2009 (such fees, the "Forward Restructuring Fees").

Pursuant to the Original Engagement Letter and in connection with the services provided by Evercore, the Company agreed to pay and has paid to Evercore monthly retainer fees (such fees, the "Advisory Fees").

**Assignment Scope:**

The Company hereby retains Evercore as its financial advisor to provide the Company with general investment banking advice and to advise it in connection with any Restructuring, Financing and/or Sale transactions (each defined below) on the terms and conditions set forth herein.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization (including, but not limited to, a Restructuring pursuant to 11 U.S.C. §101 *et seq.*, as from time to time amended, and any other current or future federal statute or regulation that may be applicable to a Restructuring of the Company (11 U.S.C. §101 *et seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")) that involves cancellation, forgiveness, satisfaction, retirement and/or purchase of the Company's outstanding indebtedness (including bank debt, bond debt, preferred

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 2

stock, and other on and off balance sheet indebtedness), leases (both on and off balance sheet) and unfunded pension liabilities (collectively, the "Existing Obligations") or (b) any merger, consolidation, or other such sale of the Company or the sale of all or substantially all of its assets. For the avoidance of doubt, the term "Existing Obligations" shall exclude any amounts relating to the VEBA that the UAW may agree to restructure.

**Description of Services:**

1. Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent it deems such services necessary, appropriate and feasible:

   a. Reviewing and analyzing the Company's business, operations and financial projections;

   b. Advising and assisting the Company in a Restructuring, Financing and/or Sale transaction, if the Company determines to undertake such a transaction;

   c. Providing financial advice in developing and implementing a Restructuring, which would include:

      i. Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

      ii. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

      iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

      iv. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

   d. If the Company pursues a Financing, assisting the Company in:

      i. Structuring and effecting a Financing;

      ii. Identifying potential Investors (as defined below) and, at the Company's request, contacting such Investors; and,

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 3

    iii.  Working with the Company in negotiating with potential Investors.

As used in this agreement, the term "Financing" shall mean a private issuance, sale or placement of newly issued or treasury equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "Investor"), including any "debtor-in-possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or a rights offering or any loan or other financing or obligation, except to the extent issued to existing Investors of the Company in exchange for their existing securities.

It is understood that nothing contained herein shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

e.  If the Company pursues a Sale, assisting the Company in:

    i.  Structuring and effecting a Sale;

    ii.  Identifying interested parties and/or potential acquirors and, at the Company's request, contacting such interested parties and/or potential acquirors; and

    iii.  Advising the Company in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale transaction.

As used in this agreement, the term "Sale" shall mean, whether or not in one transaction, or a series of related transactions, (a) the disposition to one or more third parties whether or not pursuant to the Bankruptcy Code of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the Company by the existing security holders of the Company; or (b) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to the Bankruptcy Code, of which all or a portion of the business, assets or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction or ordinary course sales of inventory); or (c) an acquisition, merger, consolidation, sale, including a sale pursuant to the Bankruptcy Code, or other business combination pursuant to a successful "credit bid" of any securities by existing securities holders; or (d) the formation of a joint venture, partnership or similar entity, or any similar sale transaction.

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 4

    f.  Rendering an opinion (a "Fairness Opinion") to the Board of Directors of the Company as to the fairness, from a financial point of view, of the consideration to be paid or received by the Company in connection with a Master Sale and Purchase Agreement (the "MSPA") with Auto Acquisition LLC ("NewCo") and the other parties named therein, which will provide for a sale of the Purchased Assets (the "Purchased Assets"), as defined in the MSPA, pursuant to authorization that will be sought under section 363 of the Bankruptcy Code (11 U.S.C. §101, et seq.) (the "NewCo Transaction"). It is understood that the Opinion shall be in such form and with such assumptions and qualifications as determined appropriate by Evercore. It is further understood that Evercore will express no view, and assume no liability, as to the future distribution of the purchase price to holders of any securities of the Company or to any creditor or interest holder of the Company or to any class of creditors or interest holders of the Company; nor will Evercore evaluate or express any opinion as to the recovery that might be available to the holders of any securities of the Company or to any creditor or interest holder of the Company or to any class of creditors or interest holders of the Company in a bankruptcy proceeding or other restructuring, whether or not the Company proceeds with the NewCo Transaction. In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2.  As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore the following fees in cash as and when set forth below:

    a.  A monthly fee of $400,000 (a "Monthly Fee"), payable on the 1st day of each month of our engagement hereunder, for a period of 24 months, commencing June 1, 2009 through (and including) May 1, 2011 and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a Plan or termination pursuant to Section 5.

    b.  A fee (a "Fairness Opinion Fee") in an amount of $6 million, payable in cash on May 29, 2009. 50% of the Fairness Opinion Fee (the "Opinion Fee Credit") shall be creditable against the NewCo Transaction Fee (as defined below).

    c.  Restructuring and Sale Fees:

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 5

    i.    A fee (a "Restructuring Fee") equal to $30,000,000 payable upon the consummation of any Restructuring (as defined above). The full amount of the Forward Restructuring Fees (the "Forward Restructuring Fee Credit") shall be creditable (without duplication) against the Restructuring Fee on a dollar-for-dollar basis. $4,000,000 of the Advisory Fees (the "Advisory Fee Credit") shall be creditable (without duplication) against the Restructuring Fee on a dollar-for-dollar basis. The Financing Fee Credit (as defined below) shall be creditable against the Restructuring Fee (without duplication) on a dollar-for-dollar basis.

    ii.    A fee (a "Sale Fee"), payable upon consummation of any Sale (other than described in clause (d)(i) below), equal to the product of (a) the Aggregate Consideration (as defined below) of a Sale as set forth in Annex 1 and (b) applicable percentage, as set forth in Annex 1. The table attached as Annex 1 represents the applicable percentage as a fee for Aggregate Consideration received in connection with the Sale (for the avoidance of doubt, Aggregate Consideration of $5 billion would equate to a Sale Fee of $17.5 million (before taking into account any applicable credits).

           As used in this Agreement, the term "Aggregate Consideration" shall mean the total fair market value (determined at the time of the closing of a Sale by the Company and Evercore in good faith) of all consideration paid or payable to, or received by, directly or indirectly, the Company, its Bankruptcy estate, its creditors and/or the security holders of the Company in connection with a Sale including all (i) cash, securities (equity or otherwise) and other property, (ii) Company indebtedness assumed, satisfied, or paid by a purchaser (including, without limitation, the amount of any indebtedness, securities or other property "credit bid" in any Sale) and any other indebtedness and obligations, including tax claims that will actually be paid, satisfied, or assumed by a purchaser from the Company or the security holders of the Company and (iii) amounts placed in escrow and deferred, contingent and installment payments.

    iii.    50% of any Sale Fee (a "Sale Fee Credit") shall be creditable against any Restructuring Fee; provided, such Sale Fee credit shall be creditable only after the credit of the Forward Restructuring Fee Credit and the Advisory Fee Credit against the Restructuring Fee.

d.    A fee (the "NewCo Transaction Fee") equal to $30,000,000, payable upon consummation of the NewCo Transaction. The Forward Restructuring Fee Credit, the Advisory Fee Credit and the Opinion Fee Credit shall be creditable, in each case on a dollar-for-dollar basis, against the NewCo Transaction Fee. The NewCo Transaction Fee shall be payable upon closing of the transaction proposed by the Company as the NewCo Transaction, regardless of whether the buyer approved by the bankruptcy court shall be NewCo or another bidder that has made a higher or otherwise better offer.

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 6

e. A fee or fees (collectively, a "Financing Fee"), payable upon consummation of any Financing and incremental to any Restructuring Fee or Sale Fee as follows:

    i. A fee in the amount of $2,500,000 for assisting the Company in the structuring and implementation of debtor-in-possession ("DIP") Financing under the Bankruptcy Code (the "DIP Structuring Fee").

    ii. For any Financing other than a DIP Financing provided by the United States Government (the "Other Financing" and the corresponding fee, the "Other Financing Fee"), a 3% fee of the gross proceeds provided by such financing.

    iii. For the avoidance of doubt, no Financing Fee (other than the DIP Structuring Fee) shall be payable in connection with the NewCo Transaction.

50% of any Financing Fee, but excluding any DIP Structuring Fee, (the "Financing Fee Credit") shall be credited (without duplication) on a dollar-for-dollar basis against the Restructuring Fee.

f. In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company shall promptly reimburse to Evercore (a) all reasonable out-of-pocket expenses (including reasonable travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) reasonable fees and expenses of legal counsel, if any, in each case incurred by Evercore in connection with the services provided hereunder. Notwithstanding the foregoing, the Company's reimbursement of all reasonable fees and expenses of legal counsel shall be subject to the Company's Legal Staff Disbursement Guidelines. Evercore agrees to provide, in a timely manner, such detailed documentation of expenses as may be reasonably requested by the Company. The Company has previously advanced $100,000 for the expenses and fees of legal counsel to Evercore.

g. A fee ( the "Delphi Fee") in the amount of $2 million for advisory services relating to Delphi Corporation ("Delphi"), payable upon (i) consummation of any plan of reorganization of Delphi Corporation or (ii) the sale or other transfer of all or substantially all of the assets or business of Delphi in a single transaction or series of related transactions. For avoidance of doubt, the Delphi Fee is not creditable against any fee.

h. If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

i. Notwithstanding anything to the contrary in this Agreement, Evercore shall not be obligated to credit any fee against any other fee earned under this Agreement unless the Bankruptcy Court approves this Agreement and allows all fees provided for hereunder in their entirety; provided, however, that nothing herein shall permit Evercore to collect:

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 7

    1. in connection with the NewCo Transaction, aggregate fees in excess of the aggregate of the NewCo Transaction Fee, DIP Structuring Fee, Fairness Opinion Fee and Monthly Fees, in each case to the extent earned by Evercore and payable by the Company, if the Bankruptcy Court were to allow all such fees and the full amount of the Advisory Fee Credit, Forward Restructuring Fee Credit and Opinion Fee Credit were applied to such fees; or

    2. in connection with a Restructuring and/or Sale (other than the NewCo Transaction), aggregate fees in excess of the Restructuring Fee, Financing Fee, Sale Fees, Fairness Opinion Fee and Monthly Fees, in each case to the extent earned by Evercore and payable by the Company, if the Bankruptcy Court were to allow all such fees and the full amount of the Advisory Fee Credit, Forward Restructuring Fee Credit, Financing Fee Credit and Sale Fee Credit were applied to such fees.

j.   All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

k.   In addition, the Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(c), 2(d), 2(e) 2(g) and/or 2(h) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore. Notwithstanding the foregoing, the Company and Evercore acknowledge and agree that Evercore shall only be entitled to either (a) the NewCo Transaction Fee or (b) a Restructuring Fee and/or a Sale Fee, and not both (a) and (b). For the avoidance of doubt, if Evercore is entitled to the NewCo Transaction Fee, Evercore shall not be entitled to any Restructuring Fee or Sale Fee.

**Retention in Bankruptcy Code Proceedings:**

3.   In the event of the commencement of Chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this agreement in the event that the

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 8

Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the Bankruptcy Court, not subject to appeal, which order is acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale and/or Financing, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

**Other:**

4. Evercore's engagement hereunder is premised on the assumption that the Company will make available or cause to make available to Evercore all information and data that Evercore reasonably deems appropriate in connection with its activities (the "Information") on the Company's behalf and will not omit or withhold any material information unless required by applicable law. The Company will use its reasonable best efforts to ensure that any Information heretofore and hereafter furnished to Evercore is and will be true and correct in all material respects and does not and will not omit any material fact required to make Information not misleading. The Company will use its reasonable best efforts to notify Evercore promptly of any material change or correction in Information regarding the business or financial condition of the Company that it has provided to Evercore when it becomes aware of such material change or of an error necessitating such correction. The Company recognizes and consents to the fact that (a) Evercore will use and primarily rely on the Information and information available from generally recognized public sources in performing services contemplated by this Agreement without have independent verification of same and (b) Evercore does not assume responsibility for the accuracy and completeness of the Information or any such information. It is also understood that the Fairness Opinion may state that Evercore has not verified and can rely on any such information described in Section 4, including the Liquidation Analysis prepared by Alix Partners.

5. Evercore's engagement hereunder may be terminated by the Company or Evercore at any time without liability or continuing obligation to the Company or Evercore, except that following such termination of this Agreement, (a) Evercore shall remain entitled to any fees accrued and payable pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination and (b) in the case of termination by the Company, Evercore shall remain entitled to payment of all fees contemplated by Section 2 (subject to the terms and conditions therein, including application of any credits) hereof in respect to any Restructuring, Sale

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 9

and/or Financing announced or occurring during the period from the date hereof until 12 months following such termination. Notwithstanding the foregoing, other than the NewCo Transaction, nothing in this Agreement shall preclude the Company from engaging another firm to advise the Company regarding any Sale, and in such case, Evercore shall not be entitled to a Sale Fee in connection with such transaction. Upon the consummation of the NewCo Transaction, Evercore's engagement shall be terminated.

6.  Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the Indemnification Agreement , the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. Evercore shall at all times be and be deemed to be an independent contractor. Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Company or its Board of Directors. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

7.  As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. Such indemnification provisions are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification provisions shall survive any termination or completion of Evercore's engagement hereunder.

8.  The Company agrees that it is solely responsible for any decision regarding a transaction, regardless of the advice provided by Evercore with respect to such a transaction. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee the closing of a transaction and that Evercore is not in a position to guarantee the achievement or closing of a transaction.

9.  The Company recognizes that Evercore has been engaged only by the Company and that the Company's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company, is

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 10

authorized to rely upon the Company's engagement of Evercore or any statements, advice, opinions or conduct by Evercore. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring, Sale, Financing or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a transaction. Any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore; except as may be required pursuant to a subpoena, order, requirement or request of a court of competent jurisdiction or by a judicial or administrative or legislative body or committee (including disclosure obligations of the Company under applicable securities laws); provided that, the Company shall have promptly notified Evercore of the receipt or existence of any such subpoena, order, requirement or request. Notwithstanding the foregoing, the terms of this letter agreement may be disclosed (a) in any proceeding filed by or against it under title 11 of the Code or (b) to the United States Department of the Treasury.

10. In order to coordinate Evercore's efforts on behalf of the Company during the period of Evercore's engagement hereunder, the Company will promptly inform Evercore of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement.

11. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

12. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable fees and expenses of its counsel incurred in responding to such a request, subject to the Company's Legal Staff Disbursement Guidelines. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the Indemnification Agreement.

13. The Company agrees that Evercore shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 11

hereunder; provided, however, Evercore shall have obtained the Company's written consent prior to the placement or publication of any such advertisement.

14. The Company acknowledges that Evercore's affiliates engage in the private equity business, asset management business and related activities (collectively, "Non-Broker Dealer Businesses"). Subject to the maintenance of an appropriate "wall" between those persons working on transactional matters related to this Agreement and those persons connected with the Non-Broker Dealer Businesses, and any other appropriate precautions, in the ordinary course of Evercore's Non-Broker Dealer Businesses, Evercore's affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of customers, in debt or equity securities or senior loans of the Company or any other company that may be involved in a transaction with the Company.

15. The Company agrees to provide and procure all corporate, financial and other information regarding the Company and control persons, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act.

16. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

17. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan of the City of New York over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court. The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

*[Signature page to follow]*

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 12


If the foregoing correctly sets forth the understanding and agreement between Evercore and the
Company, please so indicate in the space provided below, whereupon this letter shall constitute a
binding agreement as of the date hereof.

Very truly yours,

Evercore Group L.L.C.

By: _____

William C. Repko
Senior Managing Director


Agreed to and Accepted as of the Date
May 29, 2009:

General Motors Corporation

By: _____

Adil Mistry
Assistant Treasurer

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 13

Annex 1
Asset Sale Fee Schedule

Asset Sale Fee Schedule representing the applicable percentage(s) as a fee for Aggregate Consideration received in connection with a Sale:

$30 billion and above - 0.12%
$25 billion - 0.14%
$20 billion - 0.17%
$15 billion - 0.20%
$12.5 billion - 0.23%
$10 billion - 0.25%
$7.5 billion - 0.30%
$5 billion - 0.35%
$3 billion - 0.45%
$2.5 billion - 0.50%
$1.6 billion - 0.60%
$800 million - 0.80%
$500 million - 0.90%
$250 million - 1.40%

If the amount of Aggregate Consideration obtained in a Sale falls between any two of the dollar amounts listed above, then the applicable percentage shall be interpolated on a straight-line basis between such two dollar amounts.

## **EXHIBIT B**

Repko Declaration

Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-
Facsimile:  (212) 310-

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                               :

**In re:**                             :

                               :        **Chapter 11**
                               :

**GENERAL MOTORS CORP.,** *et al.,*    :        **Case No. 09-50026-(REG)**
                               :

                               :        **Jointly Administered**
                 **Debtors.**     :

                               :
-------------------------------------------------------------x

**DECLARATION OF WILLIAM C. REPKO IN SUPPORT OF THE**
**APPLICATION FOR AN ORDER PURSUANT**
**TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 2014(a) AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C.**
**AS INVESTMENT BANKER AND FINANCIAL ADVISOR**
**<u>FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE</u>**

I, William C. Repko, make this Declaration under 28 U.S.C. § 1746 and state:

1.      I am a Senior Managing Director of Evercore Group L.L.C. ("**Evercore**"),

an investment banking firm that maintains offices at 55 East 52nd Street New York, NY 10055,

and I make this declaration (the "**Declaration**") on behalf of Evercore in connection with the

application dated June 1, 2009 (the "**Application**") of General Motors Corporation and certain of

its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and each, a

"**Debtor**"), (a) for authorization to employ and retain Evercore as investment banker and financial advisor for the Debtors *nunc pro tunc* to June 1, 2009 (the "**Petition Date**") and (b) for authorization to continue to provide investment banking and financial advisory services to the Debtors in their capacity as interested parties in the Delphi Case (as defined below).  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Evercore's Qualifications

2.      Established in 1996, Evercore is a leading investment banking boutique and investment management firm. Evercore's Advisory business counsels its clients on mergers, acquisitions, divestitures, restructurings and other strategic transactions.  Evercore's Investment Management business comprises private equity investing, institutional asset management and wealth management. Evercore serves a diverse set of clients around the world from its offices in New York, San Francisco, Boston, Washington D.C., Los Angeles, Houston, London, Mexico City and Monterrey, Mexico.   Its corporate advisory and restructuring advisory groups have together advised on over $600 billion of transactions.   Its restructuring professionals provide investment banking and financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and out-of-court restructurings.

3.      I have considerable experience with Chapter 11 restructurings and other distressed company circumstances.  I have over 35 years of restructuring experience, including in complex restructuring transactions involving large corporations, money center and investment banks, and other creditors on numerous Chapter 11 transactions and restructurings.  Evercore's professionals have been retained as investment bankers and financial advisors in a number of troubled company situations, including among others: Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2009), Northwest Airlines Corp., Case No. 05-17930

(ALG) (Bankr. S.D.N.Y. Sep. 14, 2005), <u>Parmalat U.S.A. Corp.</u>, Case No. 04-11139 (RDD) (Bankr. S.D.N.Y. Feb. 24, 2004), <u>Loews Cineplex Entertainment Corp.</u>, Case No. 01-40346 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2001), and <u>PRC, LLC</u>, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 23, 2008).

4.      Prior to the Petition Date, Evercore and I worked closely with the Debtors' management, financial staff and other professionals in the Debtors' restructuring efforts; analyzed the Debtors' liquidity and projected cash flows; acquainted ourselves with the Debtors' businesses, operations, properties and finances; advised the Debtors in their evaluation of financing alternatives and of their assessment of a potential combination with Chrysler LLC; assisted the Debtors in obtaining $13.4 billion in emergency financing under the Troubled Assets Relief Program; assisted the Debtors in the structuring and documentation of a proposed exchange offer; and assisted the Debtors in connection with preparations for commencement of these cases, including assisting in the Debtors' efforts to procure debtor-in-possession financing ("**DIP Financing**").

5.      As a result of this pre-petition work performed on behalf of the Debtors, Evercore and I acquired significant knowledge of the Debtors and their businesses. Likewise, in providing pre-petition services to the Debtors, Evercore's professionals have worked closely with the Debtors' management and other professionals. Accordingly, Evercore has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 cases.  Evercore is both well-qualified and uniquely able to represent the Debtors in these cases in a most efficient and timely manner.

### Disinterestedness of Evercore

6.      In connection with its proposed retention by the Debtors in these cases, Evercore undertook to determine whether it had any conflicts or relationships that might cause it

not to be disinterested or to hold or represent an interest adverse to the Debtors. As part of this inquiry, Evercore obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 cases, a summary of which is attached hereto as Schedule I. Evercore researched its electronic files and records and conducted an internal query of its professionals to determine Evercore's connections with the Debtors and any potential parties in interest.

7.    To the best of my knowledge, neither Evercore nor any professional employed by Evercore (i) is a creditor, equity security holder or insider of the Debtors; (ii) is or has been in the past two years a director, officer or employee of the Debtors; or (iii) has an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders. Accordingly, to the best of my knowledge, Evercore is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), as modified by section 1107(b) of the Bankruptcy Code. Evercore will conduct an ongoing review, and if any new relevant facts or relationships are discovered, Evercore will supplement its disclosure to the Court.

8.    Based on the results of Evercore's conflict search conducted to date, neither Evercore nor any Evercore professional working on or connected to this engagement on the Debtors' behalf, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties in interest identified on Schedule I, their respective attorneys, or the United States Trustee or any person employed in the Office of the United States Trustee, except in connection with Evercore's engagement by the Debtors or as otherwise disclosed or described herein.

9.    As part of its diverse practice, Evercore appears in numerous cases, proceedings and transactions involving attorneys, accountants, investment bankers and financial

4

consultants, some of whom may represent claimants and parties in interest in the Debtors' Chapter 11 cases. Furthermore, Evercore has in the past, and may in the future, be represented by attorneys and law firms in the legal community, some of whom may be involved in these proceedings. In addition, Evercore has in the past worked, and likely will in the future be working, with or opposite other professionals involved in these cases in matters unrelated to these cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors in matters upon which Evercore is to be employed.

10. Evercore has two U.S. affiliates that are in the asset-management business: Evercore Wealth Management, LLC ("**EWM**") and Evercore Asset Management, LLC ("**EAM**"). As part of its regular business operations, each of EWM and EAM acts as an investment adviser (whether on a discretionary or non-discretionary basis) for its clients, some of which may be creditors, equity holders or other parties-in-interest in these cases. Some of these client accounts may now or in the future hold debt or equity securities of the Debtors or other parties in interest in these cases. There is an information barrier in place between Evercore, on the one hand, and EWM and EAM, on the other, and Evercore has in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has or will be available to employees of EWM and EAM. Evercore's parent company also invests, directly or indirectly, in securities issued by various companies, which may include creditors, equity holders or other parties in interest in these cases; however, the parent company does not hold any equity or debt securities issued by the Debtors or their affiliates, nor will it acquire any such securities while Evercore remains employed by the Debtors.

11. Evercore also has four affiliated private-equity funds: Evercore Capital Partners I, Evercore Capital Partners II, Discovery Americas I, and Evercore Mexico Capital

Partners II (the "**Funds**").  The Funds invest, directly or indirectly, in securities issued by various companies, which may include creditors, equity holders or other parties in interest in these cases; however, the Funds do not hold any equity or debt securities issued by the Debtors or their affiliates, nor will they acquire any such securities while Evercore remains employed by the Debtors.  One of the Funds, among other assets, owns 20% of Iké Grupo Empresarial S.A. de C.V. A wholly-owned subsidiary of Iké Grupo Empresarial S.A. de C.V., Infoasist S.A. de C.V., is a party to two assistance service contracts with General Motors Corporation and General Motors de México, S. de R.L.  Certain institutional investors that are limited partners in the Funds also may be may be creditors, equity holders or other parties-in-interest in these cases.  In addition, the Funds may be co-investors with interested parties in these cases in certain investments.

12.    A senior managing director of Evercore's private-equity affiliate, who is not involved with this engagement, is a member of the board of directors of Caterpillar Inc.  Evercore understands that the Debtors own an equity interest in Caterpillar Inc. or one of its affiliates.  Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

13.    In 2006, Mizuho Securities Co., Ltd., its affiliate The Bridgeford Group, and Evercore Partners Inc. ("**Evercore Partners**"), the parent company of Evercore, formed a strategic alliance to provide cross-border merger-and-acquisition advisory services in the United States and Japan.  In 2008, Mizuho Corporate Bank, Ltd. purchased $120 million in principal amount of unsecured notes issued by Evercore Partners and warrants to purchase approximately 5.5 million shares common stock of Evercore Partners at $22 per share.  Mizuho Corporate Bank, Ltd. and Mizuho Securities Co., Ltd. also agreed to commit up to $150 million to be invested in funds affiliated with Evercore Partners.  At the same time, Evercore Partners and

6

Mizuho Securities Co., Ltd. entered into a new strategic alliance, strengthening the cross-border alliance entered into in 2006.  Evercore is informed and believes that Mizuho Corporate Bank, Ltd. is a secured creditor of the Debtors.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

14.    A senior managing director of Evercore's private-equity affiliate, who is not involved with this engagement, is a member of the board of directors of E.I. du Pont de Nemours and Company ("**Du Pont**").  Evercore understands that a member of the Debtors' board of directors also is a director of Du Pont.  A registered representative of Evercore is a trustee for Rand Corporation.  Evercore understands that a member of the Debtors' board of directors is a director of Rand Corporation.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

15.    An executive at Evercore, who is not involved with this engagement, is a member of the board of directors of Avis Budget Group, Inc. Evercore understands that Avis Budget Group, Inc is a customer of the Debtors.  Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

16.    Percy Barnevik, a former member of the board of directors of General Motors Corporation, currently subleases an office at Evercore's London office.  Mr. Barnevik rented the space in Evercore's London office prior to Evercore's acquiring its London office. Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

17.    Evercore and its affiliates have obtained directors' and officers' insurance coverage from certain carriers that are interested parties in these cases.  Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

18.    Certain professionals associated with the Firm own vehicles manufactured by the Debtor, may have related warranty claims, and have personal loans from GMAC LLC ("**GMAC**"), an entity in which the Debtors hold a 24.5% interest.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

19.    Certain professionals employed by Evercore have mortgages, consumer loans, investments, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are creditors, equity holders or other parties in interest in these cases or with funds sponsored by or affiliated with such parties.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

20.    Certain professionals employed by Evercore hold debt or equity securities issued by creditors, equity holders or other parties in interest in these cases.  To the best of my knowledge, (a) none of these professionals' holdings would be considered material from the perspective of the issuers of such securities; and (b) no professional employed by Evercore holds debt or equity securities issued by the Debtors.

21.    Certain professionals presently employed by Evercore were formerly employed by other investment-banking, financial-services or other professional-services firms that are among, or represent other parties that are among, the creditors, equity holders or other parties in interest in these cases.  While employed by other firms, certain professionals presently employed by Evercore represented creditors, equity holders or other parties in interest in these cases in connection with matters unrelated to the Debtors and these Chapter 11 cases.  Evercore does not believe that these matters create a conflict of interest regarding the Debtors or these Chapter 11 cases.

22.    Evercore may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the

8

Debtors and these Chapter 11 cases.  In connection therewith, specific disclosures are attached

hereto on Schedule II.

23.    To the best of my knowledge, Evercore has not been retained to assist any

entity or person other than the Debtors on matters relating to, or in connection with, the Debtors'

Chapter 11 cases.  If this Court approves the proposed employment of Evercore by the Debtors,

Evercore will not accept any engagement or perform any services for any entity or person other

than the Debtors in this situation.  Evercore will, however, continue to provide professional

services to entities or persons that may be creditors, equity holders or parties in interest in the

Debtors' Chapter 11 cases; provided, however, that such services do not relate to, or have any

direct connection with, the Debtors' Chapter 11 cases.

### Professional Services and Compensation

24.    The parties have entered into an agreement dated May 29, 2009 that would

govern the relationship between Evercore and the Debtors, a copy of which is attached as Exhibit

A to the Application  (the "**GM Engagement Letter**").

25.    Pursuant to the GM Engagement Letter, Evercore will provide such

investment banking and financial advisory services (the "**Financial Advisory Services**") as

Evercore and the Debtors shall deem appropriate and feasible in order to advise the Debtors in

the course of these Chapter 11 cases, including, but not limited to, the following (capitalized

terms not defined in the subsections below having the meanings assigned to them in the GM

Engagement Letter):

    a.    Reviewing and analyzing the Debtors' business, operations and
financial projections;

    b.    Advising and assisting the Debtors in a Restructuring, Financing
and/or Sale transaction, if the Debtors determine to undertake such a transaction;

   c. Providing financial advice in developing and implementing a Restructuring, which would include:

     i. Assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (the "**Plan**");

     ii. Advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the Plan;

     iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings under the Bankruptcy Code that are pending before this Court; and

     iv. Providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate.

   d. Assisting the Debtors with Financing (including but not limited to DIP Financing and Other Financing), including:

     i. Structuring and effecting a Financing;

     ii. Identifying potential Investors and, at the Debtors' request, contacting such Investors; and

     iii. Working with the Debtors in negotiating with potential Investors.

   e. If the Debtors pursue a Sale, assisting the Debtors with:

     i. Structuring and effecting a Sale;

     ii. Identifying interested parties and/or potential acquirers and, at the Debtors' request, contacting such interested parties and/or potential acquirers; and

     iii. Advising the Debtors in connection with negotiations with potential interested parties and/or acquirers and aiding in the consummation of a Sale transaction.

   f. Rendering an opinion (a "**Fairness Opinion**") to the Board of Directors of the Debtors as to the fairness, from a financial point of view, of the consideration to be paid or received by the Debtors in connection with a Master Sale and Purchase Agreement (the "**Agreement**"), with Vehicle Acquisition Holdings LLC ("**NewCo**"), which will provide for a sale of the Purchased Assets (as defined in the Agreement), pursuant to authorization that will be sought under section 363 of the Bankruptcy Code.

26.     In addition, Evercore will continue to provide Financial Advisory Services to the Debtors in their capacity as interested parties in the Delphi case (In re Delphi Corporation, Case No. 05-4481 (RDD) (Bankr. S.D.N.Y.)) (the "**Delphi Case**").

27.     Furthermore, Evercore is currently in discussions to advise the Debtors and certain of their non-debtor subsidiaries regarding a potential restructuring of the Debtors' European operations.  Evercore will file a supplemental disclosure if and when Evercore is formally retained to perform this work.

28.     In rendering the above-referenced services, Evercore will coordinate with other retained professionals in these bankruptcy cases to eliminate any duplication or overlap of work.

29.     Prior to the Petition Date, Evercore performed certain professional services for the Debtors in connection with their restructuring efforts beginning June 23, 2008. In connection with this engagement, prior to the Petition Date, Evercore received payments totaling $24,133,333.36 for fees and $397,034.80 for reimbursement of expenses, including an advance of $100,000 for the fees and expenses of legal counsel to Evercore.  Other than any unused amounts for legal fees and expenses, the full amount of such payments received has been applied to pre-petition services rendered.  Evercore has also performed certain professional services for the Debtors in connection with the Delphi Case beginning June 1, 2008.  In connection with this engagement, prior to the Petition Date, Evercore received payments totaling $6,000,000 for fees and $96,885.07 for reimbursement of expenses. The full amount of such payments received has been applied to pre-petition services rendered.  For both engagements, prior to the Petition Date, GM paid Evercore total fees of $30,133,333.36, reimbursed expenses in the amount of $493,919.87, including an advance of $100,000 for the fees and expenses of legal counsel to Evercore.  To the extent that Evercore has incurred expenses prior to the Petition

11

Date for which it has not been reimbursed, Evercore will waive any claim against the Debtors for such amounts.

30.    Evercore has agreed to represent the Debtors for compensation at the amounts agreed upon between the parties pursuant to the GM Engagement Letter (the "**GM Fee Structure**").    As more fully described in the GM Engagement Letter, in consideration of the services provided by Evercore, the Debtors have agreed to pay Evercore the following fees:

a.    A Monthly Fee of $400,000, payable on the 1st day of each month of the engagement, for a period of 24 months, commencing June 1, 2009 through (and including) May 1, 2011 and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a Plan or termination pursuant to Section 5 of the GM Engagement Letter;

b.    A fee (a "**Fairness Opinion Fee**") in an amount of $6 million, which was paid on May 29, 2009.  50% of the Fairness Opinion Fee shall be creditable against the Sale Fee applicable to the "NewCo Transaction" (as defined below), subject to certain adjustments in the event that this Court fails to approve or allow all of Evercore's fees;

c.    A Restructuring Fee, payable upon the consummation of any Restructuring, of $30 million, against which Evercore will credit $14 million in certain monthly and other fees paid to Evercore prior to the Petition Date;

d.    A Sale Fee, payable upon consummation of any Sale other than the NewCo Transaction, as set forth in greater detail in the GM Engagement Letter;

e.    Fifty percent (50%) of any Sale Fee shall be credited against the Restructuring Fee after other credits are applied to the Restructuring Fee, subject to certain adjustments in the event that this Court fails to approve or allow all of Evercore's fees;

f.    A fee (the "**NewCo Transaction Fee**") equal to $30 million, payable upon consummation of the NewCo Transaction, against which Evercore will credit $17 million in certain monthly and other fees (including 50% of the Fairness Opinion Fee, as described above) paid to Evercore prior to the Petition Date. The NewCo Transaction Fee shall be payable upon closing of the transaction proposed by the Company as the NewCo Transaction, regardless of whether the buyer approved by the bankruptcy court shall be NewCo or another bidder that has made a higher or otherwise better offer;

g.    A Financing Fee, payable upon closing of any Financing and incremental to any Restructuring Fee or Sale Fee, as set forth in greater detail in the GM Engagement Letter;

h.    Fifty percent (50%) of any Financing Fee, but excluding any DIP Structuring Fee (as defined in the GM Engagement Letter), shall be credited (without duplication) against the Restructuring Fee, subject to certain adjustments in the event that this Court fails to approve or allow all of Evercore's fees;

i.    A fee (the "**Delphi Fee**") in the amount of $2 million for advisory services relating to the Delphi Case, payable upon (i) consummation of any plan of reorganization of Delphi Corporation or (ii) the sale or other transfer of all or substantially all of the assets or business of Delphi in a single transaction or series of related transactions.  The Delphi Fee is not creditable against any fee;

j.    In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse to Evercore (a) all reasonable out-of-pocket expenses (including reasonable travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) reasonable fees and expenses of legal counsel, if any, in each case incurred by Evercore in connection with the services provided hereunder.  The payment of Evercore's post-petition expenses shall be subject to review by this Court;

k.    If Evercore provides services to the Debtors for which a fee is not provided in the GM Engagement Letter, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of the GM Engagement Letter, and the Debtors and Evercore will agree upon a fee for such services based upon good faith negotiations;

l.    Notwithstanding the foregoing, the Debtors and Evercore have agreed that Evercore shall only be entitled to either (a) the NewCo Transaction Fee or (b) a Restructuring Fee and/or a Sale Fee, and not both (a) and (b). For the avoidance of doubt, if Evercore is entitled to the NewCo Transaction Fee, Evercore will not be entitled to any Restructuring Fee or Sale Fee;

m.    In addition to the foregoing, the Debtors have agreed to the indemnification provisions incorporated by reference in the GM Engagement Letter.

31.    Evercore will seek compensation and reimbursement of expenses, as specified in the GM Engagement Letter, with the payment of such fees and expenses to be approved in accordance with section 328(a) and other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern

13

District of New York, the guidelines established by the United States Trustee for the Southern District of New York, and further orders of this Court for all services performed and expenses incurred after the Petition Date.

32.    Evercore has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of Evercore, as permitted by section 504 of the Bankruptcy Code.

33.    Based on its experience and independent analysis, Evercore believes that the GM Fee Structure is fair and reasonable.  Evercore believes that the GM Fee Structure appropriately reflects the nature and scope of the services to be provided by Evercore, its substantial experience with respect to financial advisory services, and the fee structures typically utilized by Evercore and other leading financial advisors.

Executed on June 12, 2009.

/s/ William C. Repko
William C. Repko

**SCHEDULE I**

**Potential Parties in Interest**

- Current Members of Board of Directors for General Motors Corporation
- Former Members of Board of Directors of General Motors Corporation (past 3 years)
- Affiliations of Current Members of Board of Directors of General Motors Corporation
- Current Officers of General Motors Corporation
- Former Officers of General Motors Corporation (past 3 years)
- Other Key Executives and Professionals of Affiliates
- Current Significant Shareholders (top 5%)
- Top 25 Shareholders
- Other names each of the Debtor entities are known as  (including trade names and aliases (up to 8 years) (a/k/a, d/b/a. f/k/a))
- Largest 50 Bondholders
- Top 100 Unsecured Creditors as of May 29, 2009 (other than individual bondholders)
- Utility Companies
- Insurance Providers
- Counterparties to Major Contracts (financing agreements, executory contracts, leases, and other agreements)
- Taxing Authorities
- Investments as a Limited Partnership
- Joint Venture Parties
- Former GM Entities
- Indenture Trustees (including any parties to GM municipal bond financing arrangements)
- Underwriting Investment Banks for GM's securities (for all securities issued or outstanding and for the prior 3 years, including investment banks used in private placement transactions)
- Governmental and State Regulatory Agencies
- Secured Creditors Other Than Major Secured Lenders
- Major Secured Lenders
- Professionals Employed
- Retention Applicants
- Major Customers
- Top 100 Suppliers
- Strategic Alliances
- Unions/Non-Debtor Parties to Collective Bargaining Agreements
- Major Litigation Claimants
- Professionals Retained by Significant Creditor Groups
- Entities in which GM owns an equity interest
- Judges for the United States Bankruptcy Court for the Southern District of New York
- United States Trustees for the Southern District of New York
- Current Members of Board of Directors of Saturn, LLC

- Affiliations of Current Members of Board of Directors of Saturn, LLC
- Former Members of Board of Directors of Saturn, LLC (past 3 years)
- Current Officers of Saturn, LLC
- Former Officers of Saturn, LLC (past 3 years)
- Current Members of Board of Directors of Saturn Distribution Corporation
- Affiliations of Current Members of Board of Directors of Saturn Distribution Corporation
- Former Members of Board of Directors of Saturn Distribution Corporation (past 3 years)
- Current Officers of Saturn Distribution Corporation
- Former Officers of Saturn Distribution Corporation (past 3 years)
- Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.
- Affiliations of Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.
- Former Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc. (past 3 years)
- Current Officers of Chevrolet-Saturn of Harlem, Inc.
- Former Officers of Chevrolet-Saturn of Harlem, Inc.

**SCHEDULE II**

1.        Evercore has relationships with and has represented the following entities and/or their affiliates in connection with matters unrelated to the Debtors:    American International Group, Inc.; Apollo Management, L.P.; Arcelormittal; AT&T Corporation; Avis Budget Group, Inc., Carlyle Group Ltd.; CenturyTel, Inc.; Chrysler LLC; Citigroup Inc.; Commonwealth Edison Company; Credit Suisse Group; CSX Corporation; Deutsche Bank Group; Duke Energy Corporation; Electronic Data Systems Corporation; First Data Corporation; Ford Motor Company; Frontier Communications Corp.; Goldman Sachs Group, Inc.; Harris Corporation; Lear Corporation; Northtrop Grumman Corporation; Oaktree Capital Management, L.P.; PanAmSat Corporation; PECO Energy Company; Rassini Frenos S.A. de C.V.; Sirius XM Radio Inc.; State of New Jersey; The Bank of New York Mellon Corporation; TI Automotive; Time Warner Telecom Inc.; and Visteon Corporation.   During the period from April 1, 2008 through March 31, 2009, fees received from CSX Corporation and Electronic Data Systems Corporation  each represented between 1.6 % and 3.8% of Evercore's gross revenues, and fees received from each of the other entities identified above accounted for less than 1% of Evercore's gross revenues.   Since March 31, 2009, Evercore has received fees from Frontier Communications Corporation that would have accounted for more than 1% of Evercore's gross revenues if they had been received during the period from April 1, 2008 through March 31, 2009.   Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

2.        A senior managing director at Evercore, while working at Bear Stearns, represented the Debtors as an interested party in the Delphi Case.   Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

3.      Evercore advised the board of directors of the Debtors in connection with the Debtors' sale of a 51% interest in GMAC in 2006.  Since that time, Evercore has advised GMAC regarding matters unrelated to the Debtors' restructuring, on account of which Evercore has not received fees or other compensation.  Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

4.      An associate at Evercore, while working for Jefferies & Company, Inc., represented the unsecured creditors committee in the Delphi Case.  Evercore does not believe that this relationship creates a conflict of interest regarding the Debtors or these Chapter 11 cases.

5.      A senior managing director at Evercore, while working at JP Morgan during the mid-1980s, worked on an assignment to sell the Debtors' Venezuelan assembly operations.

6.      Certain of Evercore's current and former clients are portfolio companies of private-equity funds.  Any such companies that have been identified to Evercore as creditors, equity holders or parties in interest in these cases are identified above, unless the engagement is confidential.  Evercore is informed and believes that the private-equity sponsors of certain of these clients may be among the creditors, equity holders or other parties in interest in these cases.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

7.      Evercore provides advisory services to certain clients, in matters unrelated to the Debtors, whose identity Evercore is currently unable to disclose due to confidentiality clauses in its engagement letters.  These clients may or may not be direct or indirect competitors and/or creditors of the Debtors.  Evercore believes that it would adversely affect the interests of

2

these clients if Evercore were to publicly disclose their names at this time.  Evercore does not

believe that its work for these clients will adversely affect the Debtors.  Fees received from each

of these undisclosed clients accounted for less than 1% of Evercore's gross revenues during the

period from April 1, 2008 through March 31, 2009.  Evercore does not believe that these

relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

        8.     Evercore has in the past worked with, continues to work with, has mutual

clients with, and/or employs professionals who are relatives of professionals at certain law,

accounting and investment-banking firms who are potential parties-in-interest in these cases or

who represent such parties, including, without limitation, Cravath Swaine & Moore LLP, Davis

Polk & Wardwell, Deloitte Touche Tohmatsu, Ernst & Young LLP, Jones Day, Kirkland & Ellis

LLP, Merrill Lynch, Morgan Stanley & Co. Inc., Morgan Lewis & Bockius LLP, Osler, Hoskin

& Harcourt LLP, Paul Weiss Rifkind Wharton & Garrison LLP, PricewaterhouseCoopers LLP,

Richards Layton & Finger, Simpson Thacher & Bartlett LLP, Skadden, Arps, Slate, Meagher &

Flom LLP, and Weil, Gotshal & Manges LLP.  Evercore does not believe that these relationships

create a conflict of interest regarding the Debtors or these Chapter 11 cases.

        9.     In addition to the professionals discussed above, from time to time

Evercore purchases goods and services from or otherwise makes payments to entities that are or

may be parties in interest in these cases or entities with names similar to those of parties in

interest.  These entities include the following:  American Express Company, AT&T, Bank of

America, Bank of New York, Bank of New York Mellon Corporation, Bank of New York

Mellon Wealth Management, Bank of Nova Scotia, Delta Air Lines Inc., Deutsche Bank, The

DIRECTV Group, Edison Electric Institute, Fidelity Management & Research Co., Ford Motor

Company, General Electric Capital Corporation, General Electric Company, Global Logistical

Services (Pty.) Ltd., GMAC LLC, JP Morgan Chase Bank, N.A., Lehman Brothers Asset Management Inc., the City of Los Angeles, the New Jersey Economic Development Authority, Resource Global Professionals, Sprint Nextel Corporation, State Street Bank & Trust Company of Connecticut, N.A., T. Rowe Price Associates, Inc., Time Warner Telecom, the United States Department of the Treasury, and Verizon Communications..  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

10.     The Debtors have numerous customers, creditors and other parties with whom they maintain business relationships.  In addition, there may be a number of smaller firms that are not listed as potential parties-in-interest.  Evercore may have advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtors or their Chapter 11 proceedings.  Evercore does not believe that these relationships create a conflict of interest regarding the Debtors or these Chapter 11 cases.

## **<u>EXHIBIT C</u>**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                :
**In re:**                        :
                :        **Chapter 11**
                :
**GENERAL MOTORS CORP.,** *et al.,*   :        **Case No. 09-50026 (REG)**
                :
                :
                :        **Jointly Administered**
           **Debtors.**     :
                :
-------------------------------------------------------------x

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS NUNC *PRO TUNC* TO THE PETITION DATE

        Upon the Application (the "**Application**") of General Motors Corporation and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and each, a "**Debtor**"), for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing and approving the employment and retention of Evercore Group L.L.C. ("**Evercore**") as their investment banker and financial advisor in the above-captioned chapter 11 cases, pursuant to the terms set forth in the Application; and upon the Declaration of William C. Repko, a Senior Managing Director of Evercore, filed in support of the Application, annexed to the Application as Exhibit B (the "**Repko Declaration**"), and the Court being satisfied, based on the representations made in the Application and in the Repko Declaration, that Evercore is a "disinterested person" as such term is defined in section 101(14)

of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither represents nor holds an interest adverse to the Debtors and their estates; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases, (vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) the U.S. Attorney's Office, S.D.N.Y., and (xiii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002; and it appearing that no other or further notice of the Application need be provided; and the relief requested being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at the hearing before the Court (the "**Hearing**"); and the Court having determined that the legal and

factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

      **ORDERED** that the Application is granted; and it is further

      **ORDERED** that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain Evercore as their investment banker and financial advisor, as of the Petition Date, on the terms set forth in the Application and the GM Engagement Letter; and it is further

      **ORDERED** that the terms of the GM Engagement Letter, including without limitation, the fee provisions and the indemnification provisions, are reasonable terms and conditions of employment and are approved; and it is further

      **ORDERED** that Evercore shall be compensated in accordance with the terms of the GM Engagement Letter pursuant to the standard of review under section 328(a) of the Bankruptcy Code and not subject to review under section 330(a) of the Bankruptcy Code; provided, however, that Evercore (a) shall only be required to maintain time records for services rendered post-petition, in half-hour increments and (b) shall not be required to provide or conform to any schedule of hourly rates; and it is further

      **ORDERED** that, notwithstanding anything contrary to the terms set forth above, the United States Trustee retains all rights to object to Evercore's interim and final fee applications (including expense reimbursement) on all grounds including but not limited to the reasonableness standard set forth in section 330 of the Bankruptcy Code; and it is further

      **ORDERED**, that all requests of Evercore for payment of indemnity pursuant to the GM Engagement Letter shall be made by means of an application (interim or final, as the

case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the GM Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Evercore be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

ORDERED, that in no event shall Evercore be indemnified if the Debtors or a representative of their estates, asserts a claim for, and a court determines by final order that such claim arose out of, Evercore's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED, that in the event that Evercore seeks reimbursement for attorneys' fees from the Debtors pursuant to the GM Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Evercore's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standards of §§ 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under § 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy Section 330(a)(3)(C) of the Bankruptcy Code; and it is further

      **ORDERED** that this Court will retain jurisdiction to construe and enforce the

terms of the Application, the GM Engagement Letter, and this order.

Dated:     New York, New York
          June ___, 2009

                                      _____
                                      UNITED STATES BANKRUPTCY JUDGE