| | |
|---|---|
| Thomas R. Slome, Esq. | **Hearing Date and Time**: 6/30/09 at 9:45 a.m., |
| Jil Mazer-Marino, Esq. | Or, As May Be Determined By The Court |
| MEYER, SUOZZI, ENGLISH & KLEIN, P.C. | **Objection Deadline**: 6/15/09 |
| 990 Stewart Avenue, Suite 300 | |
| P.O. Box 9194 | |
| Garden City, New York  11530-9194 | |
| Telephone: (516) 741-6565 | |
| Facsimile: (516) 741-6706 | |

and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone:  (804) 749-8861
Facsimile:  (804) 749-8862

*Co-Counsel for CenterPoint Energy Gas Transmission Company and CenterPoint Energy Arkla, a Division of CenterPoint Energy Resources Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re:**                                                  :   **Chapter 11**
:
**GENERAL MOTORS CORP.,** *et al.*,        :   **Case No. 09-50026 (REG)**
:
Debtors.              :   (Jointly Administered)
:
---------------------------------------------------------------x

**OBJECTION OF CENTERPOINT ENERGY GAS TRANSMISSION COMPANY AND CENTERPOINT ENERGY ARKLA, A DIVISION OF CENTERPOINT ENERGY RESOURCES CORP. TO DEBTORS' NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED <u>THERETO</u>**

CenterPoint Energy Gas Transmission Company ("CEGT") and CenterPoint Energy

Arkla, a Division of CenterPoint Energy Resources Corp. (collectively "CenterPoint"), by and

through their undersigned counsel, for their Objection (the "Objection") to each *Notice Of (I) Debtors' Intent To Assume And Assign Certain Executory Contracts, Unexpired Leases Of Personal Property, And Unexpired Leases Of Nonresidential Real Property And (II) Cure Amounts Related Thereto* (the "Assumption and Assignment Notice") that has been received by CenterPoint, respectfully represent as follows:

## FACTS

### Procedural Facts

1.     On June 1, 2009 (the "Petition Date"), General Motors Corporation and certain of its subsidiaries (the "Debtors") commenced their cases (the "Bankruptcy Cases") that are now pending in this Court by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C §§ 101 *et seq*. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.     On the Petition Date, the Debtors filed *Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(b), (f), (k), And (m), And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To (I) Approve (A) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief; And (II) Schedule Sale Approval Hearing* (the "Sale Motion"). In the Sale Motion, the Debtors seek approval from the Court for certain procedures governing the sale of substantially all of the Debtors' assets (the "363 Transaction") to Vehicle Acquisition Holdings, LLC (the "Purchaser") – a purchaser

2

sponsored by the United States Department of the Treasury. Further, and as part of the 363 Transaction, Debtors seek authority from the Court to assume and assign certain executory contracts to the Purchaser.

3. On June 2, 2009, the Court entered the *Order Pursuant To 11 U.S.C. §§ 105, 363 And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006 (I) Approving Procedures For Sale Of Debtors' Assets Pursuant To Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline And Sale Hearing Date; (III) Establishing Assumption And Assignment Procedures; And (IV) Fixing Notice Procedures And Approving Form Of Notice* (the "Sale Procedures Order").

4. In the Sale Procedures Order, the Court, *inter alia*, approved the Sale Motion and scheduled the Sale Hearing on June 30, 2009, at 9:45 a.m. Further, the Court approved the form of the Assumption and Assignment Notice attached as *Exhibit E* to the Sale Motion and ordered that any objections by a non-Debtor counter-party to the proposed assumable executory contract as set forth in the Assumption and Assignment Notice, including disputes concerning the applicable cure amount, must be filed and served by the Contract Objection Deadline which is defined as no later than ten (10) days after the date of the Assumption and Assignment Notice (the "Contract Objection"). The Court also ordered that if required, the Court shall resolve any timely filed Contract Objection either at the Sale Hearing or such other date as determined by the Court. Finally, as to the Debtors' proposal in the Sale Motion concerning the adequate assurance of future performance requirements of Section 365(f)(2)(B), the Court ruled that in the event the Purchaser is not the successful bidder then non-Debtor parties to an executory contract, assumed

and assigned as part of the 363 Transaction, may raise their objections to adequate assurance of future performance at the Sale Hearing.

### Facts Regarding Debtors' Assumption and Assignment Notice

5. The facts surrounding CenterPoint's receipt of the Assumption and Assignment Notice are as follows:

   A. On or about June 8, 2009, CEGT received an Assumption and Assignment Notice from the Debtors dated June 5, 2009 (the "CEGT Notice"); and,

   B. To date, Arkla has not received an Assumption and Assignment Notice from the Debtors. Accordingly, Arkla does not know Debtors' intentions regarding the assumption and assignment of the Arkla Transportation Agreement nor the Debtors' proposed Cure Amount.

6. The CEGT Notice refers CEGT to a secure website maintained by the Debtors that is supposed to contain information about CEGT's executory contract including the amount that the Debtors believe must be paid to cure all pre-petition defaults under the agreement as of the Petition Date and in accordance with Section 365(b) of the Bankruptcy Code (the "Cure Amount").

7. CenterPoint and their undersigned counsel have repeatedly accessed the Debtors' aforementioned website since receiving the CEGT Notice. To date, however, no information is available on the website concerning the Debtors' proposed Cure Amount pertaining to CEGT's agreement with the Debtors.

8. In addition, undersigned counsel for CenterPoint has called the Call Center, pursuant to paragraph 18 of the CEGT Notice, for information concerning Debtors' proposed Cure Amount pertaining to CenterPoint's executory contracts. In response, the Call Center

merely directs undersigned counsel to continue monitoring the Debtors' website for information concerning the Debtors' proposed Cure Amount.

    9.    Based upon the foregoing, Debtors have:

        A.    Expressed to CEGT that as part of the 363 Transaction Debtors intend to assume and assign their pre-petition utility transportation service agreement with CEGT that is formally identified as follows:

            1.    *Amended And Restated Firm (Rate Schedule FT) Transportation Service Agreement, TSA No. 1003039*, dated June 7, 2007, by and between CenterPoint Energy Gas Transmission Company and General Motors Corporation (the "CEGT Transportation Agreement").

            2.    Debtors, however, have not provided CEGT with the Debtors' proposed Cure Amount for the assumption and assignment of the CEGT Transportation Agreement as part of the 363 Transaction.

        B.    Failed to provide Arkla with any information concerning Debtors' intentions, including the proposed cure amount, for the assumption and assignment, as part of the 363 Transaction, of their pre-petition utility transportation service agreement with Arkla that is formally identified as follows:

            1.    *Transportation Agreement*, dated March 25, 2002, by and between Reliant Energy Arkla, a division of Reliant Energy Resources Corp. (the predecessor-in-interest to Arkla) and General Motors Corporation (the "Arkla Transportation Agreement").

    10.    Accordingly and for the reasons that follow, CenterPoint files this Objection in order to preserve all of its rights and interests in the CEGT Transportation Agreement and the Arkla Transportation Agreement pursuant to, but without limitation, Section 365 of the Bankruptcy Code.

**Facts Regarding The CEGT Transportation Agreement**

11. As set forth above, the Debtors and CEGT are parties to the CEGT Transportation Agreement. Under the CEGT Transportation Agreement, CEGT provided pre-petition and continues to provide post-petition gas commodity transportation services to the Debtors' facility located in Shreveport, Louisiana. Further, the CEGT Transportation Agreement became effective on June 1, 2002, as amended and restated on June 1, 2007, and terminates as of 11:59 p.m. on May 31, 2012. The Parties agreed, however, that the terms of the CEGT Transportation Agreement would continue and extend thereafter on a year-to-year basis unless terminated by either party upon at least 180 days written notice.

12. The facts relevant to the Debtors' cure amount of the CEGT Transportation Agreement are as follows:

   A. Debtors' unpaid pre-petition amount due under the CEGT Transportation Agreement is $20,678.07; and,

   B. At this time, there is no post-petition amount currently due under the CEGT Transportation Agreement. Under CEGT's billing schedule for the CEGT Transportation Agreement, CEGT will issue the first post-petition bill on or around July 2, 2009.

**Facts Regarding The Arkla Transportation Agreement**

13. As set forth above, the Debtors and Arkla are parties to the Arkla Transportation Agreement. Under the Arkla Transportation Agreement, Arkla also provided pre-petition and continues to provide post-petition gas commodity transportation services to the Debtors' facility located in Shreveport, Louisiana. Further, the Arkla Transportation Agreement became effective on July 1, 2002, and included an original term date of June 30, 2007. The Parties agreed, however, that the terms of the Arkla Transportation Agreement would continue and extend

thereafter on a month-to-month basis unless terminated by either party upon at least 30 days written notice.

14. The facts relevant to the Debtors' cure amount of the Arkla Transportation Agreement are as follows:

    A. Debtors' unpaid pre-petition amount due under the Arkla Transportation Agreement is $12,142.10; and,

    B. At this time, there is no post-petition amount currently due under the Arkla Transportation Agreement. Under Arkla's billing schedule for the Arkla Transportation Agreement, Arkla will issue the first post-petition bill on or around July 2, 2009.

## DISCUSSION

**A. DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF THE CEGT TRANSPORTATION AGREEMENT MUST BE DENIED FOR DEBTORS' FAILURE TO COMPLY WITH THE REQUIREMENTS OF SECTION 365 OF THE BANKRUPTCY CODE.**

Under the Bankruptcy Code, a debtor-in-possession may assign an executory contract in accordance with Section 365(f) which provides, in pertinent part, as follows:

> (2) The trustee may assign an executory contract . . . of the debtor only if–
> (A) the trustee assumes such contract . . . in accordance with the provisions of this section; and
> (B) adequate assurance of future performance by the assignee of such contract . . . is provided, whether or not there has been a default in such contract.

Therefore, Debtors may assign the CEGT Transportation Agreement only if the Debtors have first assumed that contract and provided adequate assurance of future performance by the assignee. To assume the CEGT Agreement, Debtors must satisfy the following three requirements of assumption under Section 365(b)(1): (A) curing, or providing adequate assurance that the trustee

will promptly cure, such default; (B) compensate CEGT for any actual pecuniary loss resulting from Debtors' default; and, (C) provide adequate assurance of future performance under the CEGT Transportation Agreement.

In accordance with the foregoing, Debtors may not maintain the uninterrupted and continuous provision of gas commodity transportation services under the CEGT Transportation Agreement following the Closing Date of the 363 Transaction without first assuming and assigning the CEGT Transportation Agreement in accordance with Section 365 of the Bankruptcy Code. Debtors' failure to provide a Cure Amount concerning the CEGT Transportation Agreement in accordance with Section 365(b)(1)(A) of the Bankruptcy Code is the primary basis of CEGT's Objection to the CEGT Notice. As to Section 365(b)(1)(B), CEGT is currently reviewing all of its account information and other business records pertinent to the CEGT Transportation Agreement. Accordingly, CEGT hereby expressly reserves all of its rights to supplement this Objection for purposes of enforcing Debtors' obligation to compensate CEGT for any actual pecuniary loss resulting from Debtors' default under the CEGT Transportation Agreement. As to Section 365(b)(1)(C), CEGT agrees to abide by the Court's ruling under the Sale Procedures Order and as set forth herein.

### B. DEBTORS SHOULD CONFIRM THEIR INTENTIONS REGARDING THE ARKLA TRANSPORTATION AGREEMENT.

Arkla understands that Debtors retain the sole prerogative as to whether to assume and assign the Arkla Transportation Agreement. Further, under the Executory Contract Designation Deadline provided in the Sale Procedures Order, the Purchaser also has been given authority to designate additional assumable executory contracts for a limited period of time following the

Closing Date. Given the Debtors' issuance of the CEGT Notice, however, Debtors' failure to deliver an Assumption and Assignment Notice to Arkla seems illogical because Arkla provides the gas commodity transportation services from the transport ending point under the CEGT Transportation Agreement to the delivery point for the Debtors' facility located in Shreveport, Louisiana. In other words, by the CEGT Notice and failure to provide any Assumption and Assignment Notice to Arkla, Debtors are thus far expressing their intention to assume and assign their rights to gas commodity transport up to the transport ending point under the CEGT Transportation Agreement located within the CenterPoint pipeline but no further.

**WHEREFORE**, and for the foregoing reasons, CenterPoint respectfully requests that this Court enter an order:

1. Requiring the Debtors as a condition to their assumption and assignment of the CEGT Transportation Agreement to comply with the requirements of Sections 365(b)(1) and (f)(2) of the Bankruptcy Code by: (a) promptly paying CEGT the amounts owing under the CEGT Transportation Agreement including all unpaid pre-petition services and all unpaid post-petition services provided by CEGT to the Debtors through the Closing Date of the 363 Transaction; and, (b) compensating CEGT for any actual pecuniary loss resulting from Debtors' default under the CEGT Transportation Agreement;

2. Requiring the Debtors to confirm their intentions regarding the Arkla Transportation Agreement and, as may be applicable, as a condition to their possible assumption and assignment of the Arkla Transportation Agreement to comply with the requirements of Sections 365(b)(1) and (f)(2) of the Bankruptcy Code by: (a) promptly paying Arkla the amounts owing under the Arkla Transportation Agreement including all unpaid pre-petition services and all

unpaid post-petition services provided by Arkla to the Debtors through the Closing Date of the 363 Transaction; and, (b) compensating Arkla for any actual pecuniary loss resulting from Debtors' default under the Arkla Transportation Agreement; and,

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: Garden City, New York
June 12, 2009

          MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

          By: /s/ Jil Mazer-Marino
              Thomas R. Slome (TS-0957)
              Jil Mazer-Marino (JM-6470)

          990 Stewart Avenue
          Suite 300
          P.O. Box 9194
          Garden City, New York 11530-9194
          Telephone: (516) 741-6565
          Facsimile: (516) 741-6706

          And

          Russell R. Johnson III, Esq.
          John M. Merritt, Esq.
          LAW FIRM OF RUSSELL R. JOHNSON III, PLC
          2258 Wheatlands Drive
          Manakin-Sabot, Virginia 23103
          Telephone: (804) 749-8861
          Facsimile: (804) 749-8862

          *Co-Counsel for CenterPoint Energy Gas Transmission Company and CenterPoint Energy Arkla, a Division of CenterPoint Energy Resources Corp.*

719588