Andrea Fischer, Esq.
Olshan Grunman Frome
Rosenzweig & Wolosky LLP
65 East 55th Street
New York, NY 10022
(212) 451-2300

and

Tiffany Strelow Cobb (*pro hac vice* admission pending)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
(614) 464-8322

*Counsel for Worthington Industries, Inc. et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| GENERAL MOTORS CORP., et al., | Case No. 09-50026 (REG) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF WORTHINGTON INDUSTRIES, INC. AND RELATED ENTITIES TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROEPRTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO**

Worthington Industries, Inc. ("Worthington Industries"), and certain of its

affiliates and subsidiaries, including but not limited to The Worthington Steel Company,

Worthington Steel of Michigan, Inc., Worthington Specialty Processing, Worthington Taylor,

1

LLC, ProCoil Company, LLC,[1] and The Gerstenslager Company (Worthington Industries and its related entities collectively, "Worthington"), by and through its undersigned counsel, hereby files this Limited Objection (the "Limited Objection") to the Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Notice"). In support of its Limited Objection, Worthington respectfully states:

## Background

1. On June 1, 2009 (the "Petition Date"), General Motors Corp. and three of its domestic direct and indirect subsidiaries (collectively, "GM") filed voluntary petitions for bankruptcy relief under Chapter 11 of the Bankruptcy Code.

2. Worthington is one of the world's largest steel processors. Worthington is a significant supplier to GM, and the two corporate families are co-contracting parties pursuant to hundreds of contracts.

3. On June 2, 2009, this Court entered its Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice (Dkt. No. 274) (the "Order"). The Order approved certain procedures (the "Contract Procedures") that govern the assumption and

---

[1] Worthington Specialty Processing, Worthington Taylor, LLC, and ProCoil Company, LLC are collectively referred to as "WSP".

2

assignment of contracts in connection with the sale of certain of GM's assets to Vehicle Acquisition Holdings LLC or another purchaser ("Purchaser").

   4. The Order requires GM to:

> maintain a secure website (the "Contract Website") that the non-Debtor counterparty to an Assumable Executory Contract can access to find current information about the status of its respective Executory Contract or Lease. The Contract Website contains, for each Assumable Executory Contract, (i) an identification of each Assumable Executory Contract that the Purchaser has designated for assumption and assignment and (ii) the Cure Amounts that must be paid to cure any prepetition defaults under such respective Assumable Executory Contract as of the Commencement Date. *The information on the Contract Website shall be made available to the non-Debtor counterparty to the Assumable Executory Contract* (the "Non-Debtor Counterparty"), but shall not otherwise be publicly available.

Order at 9 (emphasis added). Additionally, the Order provides,

> the Debtors shall provide notice . . . to the Non-Debtor Counterparty to the Assumable Executory Contract . . . setting forth (i) instructions for accessing the information on the Contract Website relating to such Non-Debtor Counterparty's Assumable Executory Contract and (ii) the procedures for objecting to the proposed assumption and assignment of the Assumable Executory Contract.

Id. at 10.

   5. The Order also approved the form of the Notice. The Notice, as approved by the Court, provides for the designation of additional Assumable Executory Contracts:

> Until the Designation Deadline, the Purchaser also may . . . designate additional Contracts or Leases as Assumable Executory Contracts to be assumed and assigned *by providing notice to the affected Non-Debtor Counterparties.* The Contract Website shall be updated from time to time to reflect the then current status of your Contract or Lease. . . .

Notice at ¶ 13 (emphasis added).

3

6. Under the Order and the Contract Procedures, any nondebtor counterparty with an objection to GM's proposed assumption and assignment of its contracts to Purchaser must file an objection on or within 10 days of the date of the Notice. Order at 10.

7. On or about June 5, 2009, GM sent a copy of the Notice, along with a User ID and Password for the Contract Website, to Worthington Industries, Inc., 200 W Old Wilson Bridge Rd., Worthington, OH 43085-2247. Although the undersigned had entered an appearance in this case prior to the mailing of the Notice, GM did not serve Worthington's counsel with the Notice, User ID and Password. Nor did GM serve the Notice on each of the nondebtor counterparties to Assumable Executory Contracts listed on the portion of the website accessible to Worthington. WSP also received separate Notices listing proposed cure amounts (the "WSP Notices").

8. The User ID and Password provided to Worthington Industries grant access to information concerning 435 contracts with a variety of nondebtor counterparties (the "Listed Counterparties").

9. The total cure amount listed (the "Listed Cure Amount") for Worthington on the Contract Website as of June 10, 2009 is $1,750,481.89. The Listed Cure Amount is ***currently overstated***.

10. Consequently, Worthington promptly advised GM of the error to ensure that an overpayment to Worthington does not result.

11. The Notice is solely addressed to "Worthington Industries." However, the Listed Counterparties to which the Notice relates identifies a) other Worthington related entities; and b) entities wholly unrelated to Worthington. As a result, the specifically listed, separate legal entities to which the Notice purports to relate were not served with the Notice as required

4

by the Order. Moreover, the Notice is at best ambiguous as to what specific legal entities it seeks to bind.

12. From and after the receipt of the Notice, the Listed Cure Amount has fluctuated and has overstated the aggregate cure amount owed to Worthington. For example, in less than 24 hours between June 9 and 10, 2009, the Listed Cure Amount changed several times, from a starting point of $1,744,630.19 to $1,752,004.50 (as of 3:15 p.m. on June 10).

13. As noted, Worthington advised GM of the overstated cure amount to alert it to apparent errors that would have otherwise resulted in an ***overpayment*** to Worthington. Worthington proposed to GM that the parties reconcile the overstated amount to a correct, lower cure figure and that the cure objection period be extended by agreement to avoid an unnecessary objection. In an e-mail response to Worthington's counsel dated June 9, 2009, counsel for GM indicated, "we expect that the cure amount will fluctuate prior to the deadline," but added that GM would not extend the objection deadline. Accordingly, Worthington is filing this Limited Objection as a purely protective measure.

14. As of the date of this Limited Objection, while the Listed Cure Amount is too high, if the cure amounts associated with the entities that are unrelated to Worthington are removed from the cure amount without further modification to the Contract Website, the Listed Cure Amount would be too low. At the business end, Worthington and GM have been amicably working together to reconcile the Listed Cure Amount. Indeed, GM has noted that the cure amounts will change daily to address inaccuracies. Accordingly, it is anticipated that this Limited Objection will become moot upon the reconciliation between the parties. Nonetheless, in light of the upcoming objection deadline, Worthington files this Limited Objection given the

5

currently fluctuating Listed Cure Amount and Worthington's inability to confirm in advance of that deadline the accuracy of a moving target.

15. With respect to the WSP Notices, GM and WSP are similarly reconciling records, and it is also believed that those efforts will ultimately lead to the withdrawal of this objection. At the time this Limited Objection was prepared, the WSP records reflect an aggregate cure amount that is approximately $76,000.00 more than the aggregate figure reflected in the WSP Notice.

### Limited Objection

16. The grounds for this Limited Objection are: (1) that *the aggregate cure amounts for Worthington's contracts are overstated*; (2) the Notice was not properly served on all "non-Debtor Counterparties" who are nonetheless listed on the Worthington Industries Contract Website; (3) that the list of contract counterparties whose information Worthington's User ID and Password allow Worthington to access (a) contains entities that are wholly unrelated to Worthington Industries and (b) is ambiguous as to which omitted Worthington Industries-related entities Debtors seek to bind by the Notice; (4) that the information on the Contract Website has fluctuated from and after Worthington Industries' receipt of the Notice, thereby rendering it impossible for Worthington to object to a fixed, proposed cure amount; and (5) that the aggregate cure amount listed for WSP's contracts is *understated* by approximately $76,000.

17. As of the date this Limited Objection was drafted, the Listed Cure Amount is *higher* than the aggregate, net cure amount actually owed to Worthington.[2]

---

[2] This statement assumes that a joint venture to which Worthington Industries is related, TWB Company LLC, is not included as one of the counterparties whose contracts are assumable as Worthington contracts. This assumption is based, in part, upon the understanding that TWB has been separately listed with assumable contracts under the umbrella of ThyssenKrupp.

6

18. Service of the Notice, when combined with the access provided by Worthington's User ID and Password, was insufficient. Worthington sympathizes with the scale of GM's contracts, the difficulty in notifying all nondebtor counterparties of the cure amounts on their contracts with GM, and the privacy concerns inherent in establishing the Contract Website. GM understandably sought to send a copy of the Notice to each *family* of nondebtor counterparties rather than to each separate legal entity with which GM does business. Nevertheless, the Order requires GM to "provide notice . . . to the Non-Debtor Counterparty to the Assumable Executory Contract." Order at 10. The Bankruptcy Rules provide, "Notices required to be mailed under Rule 2002 to a creditor . . . shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case." Fed. R. Bankr. P. 2002(g)(1). Worthington has entered an appearance in this case and asked that all notices be sent to the undersigned counsel. GM plainly did not follow either the Order or Rule 2002(g), instead serving a single notice on Worthington Industries covering most of the Worthington entities, and a single notice on Worthington Specialty Processing relating to one or more of the WSP entities.

19. Although the Listed Cure Amount was too high as of the date this Limited Objection was prepared, given the GM-acknowledged fluctuation of the proposed cure amount, Worthington further objects to the extent that a future fluctuation between now and the objection deadline results in a net cure amount lower than that reflected in Worthington's records.

20. In fact, any fluctuation in the cure amount between the date of the Notice and the objection deadline, without additional notice to Worthington, violates the Order. The Order requires the Contract Website to contain the cure amount for each Assumable Executory Contract. Order at 9. The Notice, the form of which the Order approved, permits additional contracts to be designated as Assumable Executory Contracts "by providing notice to the

7

affected Non-Debtor Counterparties." Notice at ¶ 13. Silently updating a list of several hundred contracts contained on a private website is not "notice." Indeed, the Contract Website does not offer a counterparty the option of receiving automated notices when information is updated and changed. It is critically important for counterparties to receive notice when contracts are added to the list, because the list proposes a cure amount for each contract—an amount that the Notice deems the counterparty to have accepted unless the counterparty objects prior to the deadline. Notice at ¶ 12. While Worthington appreciates that GM's additions to the list of contracts are an attempt at accuracy in a task which is difficult to perform quickly and accurately, the Order does not – and cannot – require counterparties to reconcile and object to a moving target, especially one which may continue to fluctuate up to the eve of (let alone beyond) the objection deadline, when the Notice requires objections to be received by parties in multiple cities by that objection deadline. Therefore, Worthington files this protective, Limited Objection while GM and Worthington continue to reconcile the figures to an accurate, agreed cure amount.

21. As explained above, WSP's records reflect an aggregate cure amount that is approximately $76,000 more than the aggregate figure currently listed through the WSP Notices. While WSP similarly anticipates that the reconciliation efforts between the parties will resolve this issue, this Limited Objection is filed to ensure that future fluctuations in the cure amount are consistent with WSP's records.

22. Other than the foregoing, Worthington does not object and, in fact, consents to GM's proposed assumption and assignment of Worthington's contracts to the Purchaser and, except as expressly stated herein, to the proposed cure amounts.

## **Conclusion**

23.    For the foregoing reasons, Worthington files its Limited Objection to the Notice.

Dated: New York, New York
       June 12, 2009

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP

By:    /s/ Andrea Fischer
        Andrea Fischer (AF 2591)
        Park Avenue Tower
        65 East 55th Street
        New York, New York 10022
        (212) 451-2300

and

VORYS, SATER, SEYMOUR AND PEASE LLP

By:    /s/ Tiffany Strelow Cobb
        Tiffany Strelow Cobb
        Vorys, Sater, Seymour and Pease LLP
        52 E. Gay Street
        P.O. Box 1008
        Columbus, OH 43216-1008
        (614) 464-8322

## CERTIFICATE OF SERVICE

I, Tiffany Strelow Cobb, am not party to this action and am over the age of 18, and certify under penalty of perjury that on June 12, 2009, caused true copies of the *Limited Objection of Worthington Industries, Inc. and Related Entities to Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto*, to be served by Overnight Mail service upon the below listed.

/s/ Tiffany Strelow Cobb
_____

Tiffany Strelow Cobb

## Service List

c/o General Motors Corporation
30009 Van Dyke Avenue
Warren, Michigan 48090-9025
(Attn: Warren Command Center, Mailcode 480-206-114)

Weil, Gotshal & Manges LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, NY 10153
(Attn: Harvey R. Miller, Esq.
Stephen Karotkin, Esq. and
Joseph H. Smolinsky, Esq.)

U.S. Treasury
Attorneys for Automobile Task Force
1500 Pennsylvania Avenue NW, Room 2312
Washington DC 20220
(Attn: Matthew Feldman, Esq.)

Cadwalader, Wickersham & Taft LLP
Attorney for the Purchaser
One World Financial Center
New York, NY 10281
(Attn: John J. Rapisardi, Esq.)

Kramer, Levin, Naftalis & Frankel LLP
Attorneys for the Creditors Committee
1177 Avenue of the Americas
New York, NY 10036
(Attn: Kenneth H. Eckstein)

Vedder Price, P.C.
Attorneys for Export Development Canada
1633 Broadway, 47th Floor
New York, NY 10019
(Attn: Michael J. Edelman, Esq.
Michael J. Schein, Esq.

Office of the U.S. Trustee
for the Southern District of New York
(Attn: Diana G. Adams, Esq.)
33 Whitehall Street, 21st Floor
New York, NY 10004