Mark E. Browning
Kimberly A. Walsh
Assistant Attorneys General
Collections Division-Bankruptcy Section
P. O. Box 12548
Austin, Texas 78711-2548
(512) 475-4883 / Fax: (512) 482-8341
ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **GENERAL MOTORS CORP., *et al.*,** | ***09-50026-REG*** |
| **Debtors.** | **(Jointly Administered)** |

**TEXAS COMPTROLLER'S LIMITED OBJECTION TO DEBTORS' § 363 SALE MOTION**

The Texas Comptroller of Public Accounts ("Texas Comptroller"), appearing through the Texas Attorney General's Office, responds as follows to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k) and (m) and 365, etc. (the "Motion") [docket item 92].

1. The Texas Comptroller is a secured creditor of General Motors Corp. ("GM"), having recorded statutory tax liens on or about December 10, 2008, in multiple counties in Texas in which GM owned substantial assets.

2. The Texas Comptroller has timely filed proofs of claim numbers 1, 2 and 3 for prepetition direct pay sales taxes, franchise tax and sales and use taxes. Such proofs of claim total $62,847,830.09 and are based, in large part, on tax audits that are partly disputed by GM.

3. Since no Texas property is identified on the list of "Certain Excluded Owned Real Property" in Exhibit F to the Motion, the Texas Comptroller assumes that the property securing its claims is proposed to be conveyed to the Purchaser (the "Purchased Assets").

4. The Master Sale and Purchase Agreement ("MPA") provides in Section 2.1 for the sale of Purchased Assets free and clear of liens other than Permitted Encumbrances. MPA Section 1.2 defines Permitted Encumbrances to include "liens for Taxes, the validity or amount of which is being contested in good faith by appropriate proceedings." The Texas Comptroller therefore assumes that the intent of the parties to the MPA is to sell the Purchased Assets, including property subject to the Texas Comptroller's perfected liens, with prepetition tax liens remaining in place as Permitted Encumbrances.

5. However, the MPA's definition of Permitted Encumbrances in Section 1.1 requires that "appropriate reserves have been established" for such encumbrances. Section 4.13 (o) of the MPA is a related representation and warranty of the Sellers that their most recent financial statements "reflect an adequate reserve for all Taxes payable by Sellers." The Texas Comptroller is unaware what reserves have been established for its secured tax claims or what the parties to the MPA deem to be "appropriate" or "adequate" reserves. The Texas Comptroller therefore requests that the amount of such reserves be disclosed, as well as the parties' positions as to the appropriateness or adequacy of such reserves, so that the Texas Comptroller can confirm that its liens are Permitted Encumbrances under the MPA and that its liens will therefore remain intact on the Texas portion of the Purchased Assets.

6. If for any reason the Texas Comptroller's liens are not considered to be Permitted Encumbrances under the MPA, so that they will not remain intact, then the Texas Comptroller

requests adequate protection for its secured claims, as paragraph 68 of the Motion acknowledges must be provided and as 11 U.S.C. § 363 (c) and (e) require.

7. It is also unclear to the Texas Comptroller whether its secured prepetition tax claims are Assumed Liabilities under Section 2.3(a)(v) of the MPA. That subsection includes within Assumed Liabilities "all Liabilities of Sellers ... (B) arising prior to the commencement of the Bankruptcy Cases to the extent approved by the Bankruptcy Court for payment by Sellers pursuant to a Final Order." On June 1, 2009, this Court entered an Order Pursuant to 11 U.S.C. §§ 363(b), 507(a)(8), 541 and 105(a) Authorizing Debtors to Pay Prepetition Taxes and Assessments. The Texas Comptroller's prepetition tax claims would therefore appear to be Assumed Liabilities under MPA § 2.3(a)(v) and the Texas Comptroller will look to the Purchaser for payment, once allowed claim amounts have been finally determined. If that is not the intent of the parties to the MPA, and the Sellers will pay the taxes, then another source of payment should be identified. In particular, since the bulk of the purchase price under the MPA consists of a credit bid, stock and warrants, the Texas Comptroller would note for the record that 11 U.S.C. § 1129(a)(9)(C)(as to any priority tax claims of the Comptroller) and 11 U.S.C. § 1129(b)(2)(A)(as to any secured claims of the Comptroller) require "cash" payment of its claims. Stock and warrants cannot be used to satisfy the Texas Comptroller's tax claims.

8. The proposed order approving the Motion contains, in Paragraphs 8 and 28, an apparent prohibition ("forever prohibited and enjoined") against any party's assertion of any setoff rights for any obligation of the Debtors "as against any obligation due the Purchaser." It also appears, pursuant to MPA § 2.2(a)(xiii), that the Purchaser will be acquiring all tax refund claims of the Debtors/Sellers. If the proposed order is intended to prevent a tax authority from offsetting any tax

liabilities for the prepetition period against any tax refund claims to be assigned to the Purchaser, the Texas Comptroller objects. Under 11 U.S.C. § 553(a), provisions of Title 11 "do not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." Although § 553(a) does refer to "[e]xcept as ... provided in section 363", that reference refers to a *creditor's* right to adequate protection of its setoff rights. 5 Collier on Bankruptcy (15th ed. rev.) ¶ 553.01; ¶ 553.06[5] and cases cited therein. There is no provision in § 363 for abrogating a creditor's setoff rights, and if the Motion and proposed order seek to abrogate tax creditors' setoff rights, the relief requested should be denied to that extent.

9. Paragraph 39 of the proposed Order contains a startling, unprecedented and wholly unsupportable provision: that "[n]o law of any state or other jurisdiction ... shall apply in any way to the transactions contemplated by the 363 Transaction, the MPA, the Motion and this Order." In other words, a bankruptcy court is being asked to repeal, in one fell swoop, all States' laws applying to any transaction referenced in the Motion, MPA and Order. That directly conflicts with 28 U.S.C. §§ 959(b) and 960, which require debtors in possession to comply with state laws, including tax laws, during Chapter 11. As to tax laws in particular, they do apply to § 363 sales in bankruptcy. The Supreme Court has so ruled, and no bankruptcy court – not even at the behest of General Motors or the executive branch of the United States government – can overrule the Supreme Court. California State Board of Equalization v. Sierra Summit, Inc., 109 S.Ct. 2228 (1989) squarely holds that states may tax § 363 sales in bankruptcy. While tax exemptions (such as "one time sale" exemptions) may be available under state law for some aspects of the contemplated sale, that is a

function of *state* law and *state* law determines the taxability of the transactions, as well as tax reporting requirements. As the Supreme Court held in Sierra Summit:

> Nothing in the plain language of the statute, its legislative history, or the structure of the Bankruptcy Code indicates that Congress intended to exclude taxes on the liquidation process from those taxes the States may impose on the bankruptcy estate.

109 S.Ct. at 2235. Paragraph 39 of the proposed Order conflicts with binding case law and cannot be entered as proposed.

10. The Texas Comptroller submits that the arguments and authorities set forth in this Limited Objection satisfy the requirements of Local Bankruptcy Rule 9013-1(b) and that submission of a separate memorandum of law should not be required.

Wherefore, the Texas Comptroller requests that any order granting the Motion (i) confirm that the Texas Comptroller's tax liens will be treated as Permitted Encumbrances under the MPA, including the satisfaction of reserve requirements, (ii) provide adequate protection to the Texas Comptroller to the extent, if any, that its collateral will not continue to be subject to its perfected tax liens, (iii) provide clarification of whether the Texas Comptroller's claims are Assumed Liabilities under the MPA, or whether some other identified source of payment is proposed by the parties to the MPA, (iv) preserve the Texas Comptroller's setoff rights, and (v) not purport to repeal or abrogate state tax laws . The Texas Comptroller also requests such further relief to which it may be entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES

Deputy Attorney General for Civil Litigation

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

*/s/ Mark Browning*
MARK BROWNING
KIMBERLY A. WALSH
Assistant Attorneys General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4883
Facsimile: (512) 482-8341

COUNSEL FOR TEXAS COMPTROLLER OF
PUBLIC ACCOUNTS