**DLA PIPER LLP (US)**
KAROL K. DENNISTON (*Pro hac vice* pending)
JENNIFER L. NASSIRI (Admitted *Pro hac vice*)
550 South Hope Street, Suite 2300
Los Angeles, CA  90071-2678
Tel:  (213) 330-7700
Fax:  (213)330-7701
karol.denniston@dlapiper.com
jennifer.nassiri@dlapiper.com


Attorneys for Hewlett-Packard Company,
Electronic Data Systems, LLC, an HP Company, and
certain of their affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
In re:                                                    :
                                                          :        **Chapter 11**
**GENERAL MOTORS CORP., et al.,**                          :
                                                          :        **Case No. 09-50026 (REG)**
                        Debtors.                          :        **(Jointly Administered)**
                                                          :
--------------------------------------------------------------x

**RESPONSE OF HEWLETT-PACKARD COMPANY AND ELECTRONIC DATA SYSTEMS, LLC TO NOTICES OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO**

Hewlett-Packard Company ("HP") and Electronic Data Systems, LLC ("EDS") and certain of

their affiliates (sometimes collectively "HP")[1] file this Response (the "Response") to the Notices of (I)

Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases of Personal

Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto

(the "Assignment Notices").  In support of this Response, HP states as follows:

## I.      BACKGROUND

A.      **General Motors' Bankruptcy Proceedings**

1.      On June 1, 2009 (the "Petition Date"), General Motors Corporation ("GM") and certain

---
[1]  This Response is filed on behalf of certain HP affiliates, a list of which is attached hereto as Exhibit "A."  Hewlett-Packard Financial Services has filed a separate response concurrently herewith.

of its subsidiaries and affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title

11 of the United States Code (the "Bankruptcy Code").

2.       On June 1, 2009, the Debtors filed their Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f),

(k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to

The Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, A U.S. Treasury-

Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) The

Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief;

and (II) Schedule Sale Approval Hearing (the "Sale Motion").  See Docket No. 92.

3.       On June 2, 2009, this Court entered an Order Approving Procedures for Sale of Debtors'

Assets Pursuant to The Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, A

U.S. Treasury-Sponsored Purchaser, Scheduling Bid Deadline and Sale Hearing Date, Establishing

Assumption and Assignment Procedures and Fixing Notice Procedures and Approving Form of Notice

Order (the "Sale Procedures Order").  See Docket  No. 274.  The hearing to approve the Sale Motion is set

for June 30, 2009.

4.       On or about June 8, 2009, EDS received an Assumption and Assignment Notice[2] (dated

June 5, 2009) directing EDS to a secure website which contains information about which contracts GM

intends to assume and assign as part of the sale ("EDS Proposed Assumed Contracts"), including amounts

that the Debtors believe must be paid to cure all pre-petition defaults ("Contract Website").

5.       On June 10 and June 11, 2009, HP was notified that the Debtors had issued over 50

separate Assumption and Assignment Notices, all dated June 5, 2009 directing HP to the Contract Website

to determine which HP contracts GM was attempting to assume and assign and the related cure amounts.

("HP Proposed Assumed Contracts").[3]  The EDS Proposed Assumed Contracts and the HP Proposed

---

[2] Undefined capitalized terms used herein shall have the same meaning as ascribed to such terms in the Sale Motion.
[3] Although the Supplier Call Center informed HP that it had mailed several Assumption and Assignment Notices to
HP on June 5, 2009, HP did not actually receive them until June 10 and June 11.

Assumed Contracts shall be collectively referred to as the HP Proposed Assumed Contracts.

6.    Based on information on the Contract Website, HP learned that Debtors intend to assume

and assign (A) 36,521 EDS executory contracts with a total cure amount that does not comport with HP's

books and records (the "Proposed EDS Cure Amount"); and (B) over 630 HP executory contracts with a

total cure amount that does not comport with HP's books and records (the "Proposed HP Cure Amount")

(collectively, with the Proposed EDS Cure Amount, the "Proposed Cure Amounts").

7.    Although GM has stated its intention to assume all HP and EDS executory contracts, HP

has been unable, despite best efforts, to confirm this information directly through the Contract Website.  HP

and EDS are working diligently with GM, the Supplier Call Center and outside counsel to confirm that all

executory contracts are to be assumed and that all such contracts have been accurately identified.

**B.    HP's Agreements With General Motors**

8.    On June 10, 2005, EDS, through Electronic Data Systems Corporation and EDS

Information Systems, L.L.C., entered into an Enterprise Service Agreement with GM ("EDS

ESA").  Subsequently, on July 1, 2005, HP entered into an ESA with GM ("HP ESA").  The EDS

ESA and the HP ESA shall be collectively referred to as the "ESA."[4]

9.    On August 26, 2008, HP completed its acquisition of Electronic Data Systems

Corporation and EDS Information Systems L.L.C. and now EDS is a wholly owned subsidiary of

HP.

10.    To address certain concerns related to HP's acquisition of EDS, on August 26,

2008, HP, EDS, and GM entered into Amendment One to ESA, which applies to both EDS and

HP.

11.    The ESA provides that all information technology services rendered by HP and

---

[4] Each ESA incorporates Standard Terms and Conditions for IT and Related Services.  The current version of which
is Version 29.

EDS to GM must be contracted for under the ESA.

12.    The ESA establishes a single global contracting structure for the sale of information technology and related services to GM.  Subject to the ESA, HP, EDS, and GM conduct business through a series of fully integrated contracts that cover multiple business units through multiple jurisdictions.  These contracts are identified as Global Service Contracts ("GSCs") and relate to each of GM's global process areas, including: Product Development; Manufacturing and Quality; Global Business Services; Global Purchasing and Supply Chain, Infrastructure and OnStar.

13.    EDS operates under nineteen (19) GSCs and HP operates under eight (8) GSCs.

14.    The GSCs were executed on January 24, 2006 and became effective on June 6, 2006.  The current term expires in  June, 2011.  Each GSC may be renewed for up to 3 years, in 6 month increments.  GM's affiliates throughout the world participate in the GSCs through multiple country Participation Agreements or Local Implementation Agreements.

15.    In addition to the GSCs, there are several other types of contracts between HP and GM that govern purchases of hardware and software licenses, the provision of non-information technology related services, and the continued provisions of some services initiated under agreements entered into between EDS and GM prior to the effective date of the GSCs.

16.    Pursuant to each GSC, GM issues hundreds of purchase orders for each year of the contract.  Once purchase orders are issued, invoices are generated as goods are shipped or services are performed.  Those invoices, on a line item basis, must be approved by GM.  GM reconciles HP invoices against purchase orders issued, approves payment to HP, and through this process triggers payment to HP.  Although a majority of HP's pre-petition invoices have been approved, there are several hundred invoices requiring reconciliation and processing through GM's accounting systems.  (The ESA, GSCs, non-IT agreements and purchase orders shall be

4

collectively referred to as the "HP Agreements.")  GM's Proposed Cure Amounts includes only

those invoices that have been approved through GM's accounting systems.  This contract

accounting and invoice reconciliation can not be completed prior to the Objection Deadline.  As a

result, the Proposed Cure Amounts cannot be verified by the Objection Deadline.

## II.     RESPONSE

17.     As of the date of this Response, despite ongoing efforts, HP has been unable to

fully reconcile the Proposed Cure Amounts  with information presently obtainable from the

Contract Website.  Because each day additional pre-petition invoices are approved, HP continues

to reconcile its own records with those of GM and the information contained on the Contract

Website in order to confirm the appropriate cure amount required to cure all defaults existing

under the HP Agreements prior to the assumption and assignment to the Purchaser.

18.     Furthermore, to the extent HP is holding a license of intellectual property on

behalf of a third party for the benefit of GM, HP is not consenting to the transfer of such license,

and reserves all rights, to the extent that HP is prevented from doing so under the applicable HP

licenses with such third party licensors.

19.     In addition, pursuant to the terms of the ESA, GM has agreed to guarantee payment

of its global affiliates for HP services rendered to that affiliate.  In connection with the Saab

reorganization proceeding pending in Sweden, there are unpaid amounts due and owing to HP.

HP requests that any unpaid amounts related to goods or services provided to Saab be cured prior

to assumption by the Debtors and assignment to the Purchaser.

20.     HP does not object to the assumption and assignment of the HP Agreements.  The Debtors

have failed, despite apparent diligence and good faith efforts, however, to provide HP with sufficient time

and complete information to (1) properly analyze the proposed assumption and assignment; (2) confirm

that all HP Agreements are being assumed and assigned;[5] (3) verify all such contracts have been accurately identified; and (4) confirm the accuracy of the Proposed Cure Amounts.  Given the constantly evolving data on the Contract Website as well as the additional invoices that have yet to be approved, it is impossible to make a determination by the Objection Deadline of the entirety of the pre-petition amounts owing under the HP Proposed Assumed Contracts.

21.    Without such information, HP cannot determine whether the Debtors have satisfied Section 365 of the Bankruptcy Code.  Based on the information provided to date by the Debtors (and based on HP's own independent diligence), however, the Proposed Cure Amounts are not adequate.

22.    Through this Response, HP requires assurances that all pre-petition unpaid amounts due and owing under the HP Proposed Assumed Contracts are paid in connection with the assumption and assignment of the HP Agreements.  Additionally, HP requires confirmation from the Debtors that, consistent with prior communications, they are seeking to assume and assign all HP Agreements to the Purchaser and that all such agreements have been accurately identified. Though the Debtors have stated that they intend to assume the Assumable Executory Contracts, a number of issues remain unresolved.  HP is, however, prepared to work in good faith to resolve the foregoing issues.  The purpose of this Response is solely to preserve HP's rights and objections in the event a resolution is not reached.

### III.    ARGUMENT

23.    According to Section 365(b)(1) of the Bankruptcy Code, if there has been a default in an executory contact, the debtor-in-possession may not assume such contract unless at the time of assumption of such contract, the debtor in possession:

> (A) cures, or provides adequate assurance that the [debtor-in-possession] will promptly cure, such default  .  .  .

---

[5] For example, out of the 36,521 EDS line items on the Contract Website, it is difficult to ascertain what agreements the Debtor is seeking to assume, since it appears the Debtors have only included purchase orders rather than individual GSCs.

> (B) compensates, or provides adequate assurance that the [debtor-in-possession] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

24.     Section 365(b)(1) of the Bankruptcy Code demands that both pre-petition and post-petition defaults must be cured.[6] See, e.g., In re Stoltz, 315 F.3d 80, 94-95 (2d. Cir. 2002); see also In re Burger Boys, Inc., 94 F.3d 755, 763 (2d Cir. 1996) ("§365(b) requires payment of all pre-petition and post-petition amounts due under an executory contract before assumption."); 3 COLLIER ON BANKRUPTCY § 365.05[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) ("The other party to the contract or lease that the trustee proposes to assume is entitled to insist that any defaults, whenever they may have occurred, be cured, that appropriate compensation be provided, and that, a past default having occurred, adequate assurance of future performance is available.").

25.     Accordingly, to assume the HP Proposed Assumed Contracts, Debtors must "(1) cure the defaults, or provide adequate assurance that it will promptly cure them; (2) compensate, or provide adequate assurance that the trustee will promptly compensate, the non-debtor party to the contract for any actual monetary loss caused by the debtor's default; and (3) provide adequate assurance of future performance under the contract." In re Wireless Data, Inc., 547 F.3d 484, 489 (2d. Cir. 2008); 11 U.S.C. § 365(b)(1).

26.     If the Debtors elect against immediately curing the pre-petition and post-petition defaults under the Assumable Executory Contracts, they must provide "adequate assurance that [they] will promptly cure" such defaults. See Wireless Data, 547 F.3d at 489; 11 U.S.C. §

---

[6]   To the extent that any post-petition amounts are owing as of the assumption and assignment of the HP Agreements and are not cured in connection with the Assumption Notices, HP reserves all rights.

7

365(b)(1)(A).

27.    Accordingly, HP objects to the Proposed Cure Amounts pursuant to Section 365 to the extent that the Proposed Cure Amount is less than 100% of the actual unpaid invoices and amounts accrued for pre-petition goods and services owing to HP.

28.    The Proposed Cure Amounts fail to cure the actual defaults existing under the HP Agreements.  In addition, the Debtors have failed, despite apparent diligence and good faith efforts to provide HP with sufficient time and complete information to (1) properly analyze the proposed assumption and assignment; (2) confirm that all HP Agreements are being assumed and assigned; (3) verify all such contracts have been accurately identified; and (4) confirm the accuracy of the Proposed Cure Amounts. Accordingly, HP reserves all rights to further object once the nature and extent of the HP Proposed Assumed Contracts are determined.

29.    Furthermore, to the extent HP is holding a license of intellectual property on behalf of a third party for the benefit of GM, HP is not consenting to the transfer of such license, and reserves all rights, to the extent that HP is prevented from doing so under the applicable HP licenses with such third party licensors.

## IV.    RESERVATION OF RIGHTS

30.    HP reserves all rights, including, but not limited to, the right to (a) amend, modify or supplement this Response as additional information becomes available or to provide any additional information as may be requested by the Court, the Debtors or the Purchaser in connection with its determination of the cure amount required to be paid pursuant to Section 365 of the Bankruptcy Code; (b)

///

///

///

///

object to any proposed assumption and assignment of the HP Agreements prior to or following the Sale

Hearing in the event the proposed assumption and assignment fails to satisfy the requirements of Section

365 of the Bankruptcy Code; and (c) object to the extent that the proposed assignee of any of the

HP Agreements is an entity other than the Purchaser.


Dated:  June 15, 2009                    **DLA PIPER LLP (US)**
                                         *Attorneys for Hewlett-Packard Company,*
                                         *Electronic Data Systems, LLC and certain of their*
                                         *affiliates.*


                                         By:   / s/ Jennifer L. Nassiri_____ ____ _____
                                              KAROL K. DENNISTON (*Pro hac vice* pending)
                                              JENNIFER L. NASSIRI (Admitted *Pro hac vice*)
                                              550 South Hope Street, Suite 2300
                                              Los Angeles, CA  90071-2678
                                              Tel:  (213) 330-7700
                                              Fax:  (213)330-7701
                                              karol.denniston@dlapiper.com
                                              jennifer.nassiri@dlapiper.com

# EXHIBIT "A"

# EXHIBIT A[1]

EDS
EDS Canada Inc.
EDS de Mexico SA DE CV
EDS SystemHouse Inc.
Edsel Field
Electronic Data Systems
Electronic Data Systems Corp.
Electronic Data Systems Corporation
Electronic Data Systems Corporation Company
Engineering Animation, Inc.
Hewlett Packard Canada Ltd.
Hewlett Packard Co.
Hewlett-Packard Financial Systems Payment Processing Agreement
Hewlett-Packard
Hewlett-Packard Corporation
Hewlett-Packard Development Corporation LP
Hewlett-Packard International Bank plc
Hewlett-Packard Leasing Ltd.
Hewlett-Packard Operations Mexico
Hewlett-Packard Philippines Corporation

---

[1] Hewlett-Packard Company ("HP") and Electronic Data Systems LLC ("EDS") do not make any admission as to the existence of any of the foregoing entities or their status as affiliates of HP or EDS.   To the extent any of these entities are validly existing entities of HP and EDS, HP and EDS reserve all rights in connection with any Notices of Assumption and Assignment that any of these entities received.

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 15th day of June, 2009, a true and correct copy of the foregoing

**<u>RESPONSE OF HEWLETT-PACKARD COMPANY AND ELECTRONIC DATA SYSTEMS LLC TO NOTICES OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO</u>**

was filed electronically. Notice of the filing will be served electronically through the Court's ECF System on parties requesting electronic service. In addition, this Response was served upon the following parties at the address listed below by personal delivery on June 15, 2009.

                         By:    /s/ Jennifer L. Nassiri

**<u>Via Personal Delivery</u>**

<u>*Debtors*</u>
c/o General Motors Corporation
30009 Van Dyke Avenue
Warren, Michigan 48090-9025
(Attn: Warren Command Center
Mailcode 480-206-114)

<u>*U.S. Treasury*</u>
U.S. Treasury
1500 Pennsylvania Avenue NW, Room 2312
Washington, D.C. 20220
(Attn: Matthew Feldman, Esq.)

<u>*Counsel for Debtors*</u>
Weil, Gothsal & Manges LLP
767 Fifth Avenue
New York, New York 10153
(Attn: Harvey R. Miller, Esq., Stephen
    Karotkin, Esq.,
and Joseph H. Smolinsky, Esq.)
harvey.miller@weil.com;
stephen.karotkin@weil.com
joseph.smolinsky@weil.com

<u>*Counsel for Purchaser*</u>
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
(Attn: John J. Rapisardi, Esq.)
john.rapisardi@cwt.com

<u>*Counsel for Creditors Committee*</u>
Gordon Z. Novod, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: (212) 715-3275
dcho@kramerlevin.com

<u>*Counsel for Export Development Canada*</u>
Vedder Price, P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(Attn: Michael J. Edelman, Esq. and Michael
    L. Schein, Esq.)
mjedelman@vedderprice.com
mschein@vedderprice.com

<u>*Office of the United States Trustee*</u>
Office of the United States Trustee
(Attn: Diana G. Adams, Esq.)
33 Whitehall Street, 21st Floor
New York, New York 10004.
diana.adams@usdoj.gov

The Honorable Robert E. Gerber
United States Bankruptcy Court
Southern District of New York
One Bowling Greet, Room 621
New York, NY 10004-1408