**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
In re                                                                   )    Chapter 11
                                                                            )    Case No. 09-50026 (REG)
**GENERAL MOTORS CORP., et. al.**              )    (Jointly Administered)
                                                                            )
    Debtors.                                                  )
_____)

**LIMITED OBJECTION OF T.V. MINORITY COMPANY, INC.,
(AND ITS WHOLLY OWNED SUBSIDIARY, INNOVATIVE LOGISTICS GROUP, INC.)
TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY,
AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY
AND (II) CURE AMOUNTS RELATED THERETO**

    T.V. Minority Company, Inc., (including its wholly owned subsidiary, Innovative Logistics Group, Inc.) and certain of its affiliates and subsidiaries (collectively, "TVM"), through their undersigned counsel, hereby submit this limited objection (the "Objection") to the Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contract, Unexpired Leased of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Costs Related Thereto (the "Assignment Notice"), served upon TVM by the above-captioned debtors and debtor-in-possession (collectively, the "Debtors") pursuant to this Court's Bidding Procedure Order [Docket No. 274].

**Background**

    1.    On June 8, 2009, and June 9, 2009, TVM was served with the Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto ("Notice"). The Notice indicated that TVM was also being served with a login and password so it could confirm the cure amount attendant to the assumption and assignment of the Lease.

1

2. That upon logging in to Debtor's website "Contract Notices", Supplier Details, on June 8, 2009, the Debtors identified $117,420.00 as the amount which they allege to be owing under the Assumed Contracts (the "Proposed Cure Amount").

3. That upon logging in to Debtor's website "Contract Notices", Supplier Details, on June 9, 2009, the Debtors identified $118,628.30 as the amount which they allege to be owing under the Assumed Contracts (the "Proposed Cure Amount").

4. It appears that the Debtors website (Contract Notices), Supplier Details, fluctuates on a daily basis, but is inaccurate as to what is owing under contracts to be assumed; likewise, the assumed contracts are incomplete and not wholly identified.

5. The Proposed Cure Amounts and contract identifiers are substantially inaccurate and as to the proposed cure amount, substantially less than what is actually owed under the Contracts to be assumed by the Debtor or pursuant to the Master Sale and Purchase Agreement and/or to be assigned to the Vehicle Acquisition Holdings, LLC (the Purchaser).

6. That pursuant to said "Notice", paragraph 7, "objections, if any, to the proposed assumption and assignment of the Assumable Executory Contracts (the 'Contract objections') including objections to the Cure Amount, must be made in writing and filed with the United States Bankruptcy Court for the Southern District of New York (the 'Bankruptcy Court') so as to be received **no later than ten (10) days after the date of this Notice** (the 'Objection Deadline')."

7. TVM and its affiliates and subsidiaries request their rights be preserved on the filing of this Limited Objection to the Assumable Executory Contracts and cure amounts until it has adequate time to review the information which appears to be incomplete at this time prior to the objection deadline.

**The Requirements of 11 U.S.C. §365**

8.  The Debtors are in default of their contracts with TVM and its wholly owned subsidiary, Innovative Logistics Group, Inc. The Debtors have failed to comply with the provisions of 11 U.S.C. §365, which states in pertinent part that:

> "(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform non-monetary obligations under an expired lease of real property...;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor or such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performances under such contract or lease."

9.  Payment of the Proposed Cure Amount fails to cure the existing default under the contracts sought to be assumed and assigned and therefore absent the consent of TVM the contracts may not be assumed and assigned.

**Limited Objection**

10. TVM does not object to the sale of Debtors' assets as contemplated in the Sale Motion, nor does it object, *per se*, to assumption of all of its executory contracts (some of which have yet to be identified by Debtor) with the Debtors and assignment thereof to the Purchaser. TVM does object, however, to the Assignment Notice to the extent that (1) the Proposed Cure Amount is incorrect even as to those amounts that were in default as of May 31, 2009, and (2) the Assignment Notice's improper definition of "Cure Amount" would permit assumption and assignment of certain of TVM's agreements without either the Purchaser or the Debtors satisfying all requirements attendant to assumption and assignment set forth in Bankruptcy Code §365(b) and (f), including the obligations to: (a) cure <u>all defaults</u> existing <u>at the time</u>

3

<u>executory contracts are assumed and assigned</u>; and (b) properly identify all existing executory contracts to be assumed and assigned; and (c) satisfy <u>all accrued obligations</u> that are not in default, but which nonetheless exist, <u>at the time executory contracts are assumed and assigned</u>.

11. Bankruptcy Code section 365(b)(1) makes it clear that defaults must be cured as off the time of assumption. Such defaults that must be cured include both pre-petition and post-petition defaults. *In re Stoltz*, 315 F.3d 80 (2d Cir. 2002); *In re Liljeberg Enters., Inc.*, 304 F.3d 410 (5th Cir. 2002); *In re Overland Park Fin. Corp.*, 236 F.3d 1246 (10th Cir. 2001); *In re Building Block Child Care Ctrs., Inc.*, 234 B.R. 762 (9th Cir. BAP 1999); *In re Tel-A-Communications Consultants, Inc*, 50 B.R. 250 (Bankr. D. Conn. 1985); *In re North American Rental*, 54 B.R. 574 (bankr. D. N.H. 1985).

12. TVM further objects to the Cure Amount proposed by the Debtors because it is substantially less than the amount that was in default on May 31, 2009. TVM has attempted to determine the basis of the discrepancy between its books and records and the Debtors' Proposed Cure Amount. However, due to the lack of detail provided by the Debtors, TVM does not have sufficient information to enable TVM to determine the basis of the discrepancy it has with the Debtors' Calculations. TVM's calculations of the amounts due under its contracts result in a cure amount substantially in excess of the Proposed Cure Amount that fluctuates on the Debtor's website; the amount owed to TVM and its wholly owned subsidiary, Innovative Logistics Group, Inc., may rage from $2,668,265.01 to $5,796,893.59.

13. TVM further objects to the identification by Debtor of the Assumed Executory Contracts which are incomplete or not properly described as between the parties.

14. Additionally, in the event that the purchaser is an entity other than that defined as Purchaser in the Assignment Notice, TVM hereby requests that the Debtors provide it with proof of adequate assurance that such alternative purchaser will perform the Debtors' obligations under the Assumed and/or Assigned Contracts.

4

**Attachments**

15. Attached as **Exhibit 1** is the GM SERVICE CONTRACT for Cross Docks which generally includes GENERAL TERMS AND CONDITIONS OF A SERVICE CONTRACT FOR LOGISTIC SERVICES BETWEEN DEBTOR AND INNOVATIVE LOGISTICS GROUP, INC., A WHOLLY OWNED SUBSIDIARY OF T.V. MINORITY COMPANY, INC.  The contents of **Exhibit 1** includes:  The signed Service Contract For Logistic Services, SERVICE PROVIDER-LOGISTICS GENERAL TERMS AND CONDITIONS, SERVICES SPECIAL TERMS LEAD LOGISTICS PROVIDER, SCOPE OF SERVICES, THE GM/LLP TRANSPORTATION SERVICE REQUIREMENT, SERVICES SPECIAL TERMS MATERIAL TRUCK, SERVICE PROVIDER-LOGISTICS GENERAL TERMS AND CONDITIONS (REVISED 9/28/07).

16. Also attached in **Exhibit 1** are the Pricing Summary Appendix Numbers:  16A-1, 2, 3, 4, 5, 6, 7, and 8, effective 1/1/09 through 12/31/2010.  However, due to privacy concerns, the actual amounts for services have been redacted.  Please note that each of these Pricing Summary Appendix Numbers identifies a **specific contractual location** providing services to Debtor.

17. Also included in **Exhibit 1** are the diesel fuel cost adjustment form DFCA and LLP Management Fee, Compensation and Terms, along with Appendix 21, Reports.

18. Although identified on the Debtor's website, attached as **Exhibit 2,** are redacted copies of Purchase Orders including:  TCBO5662, SHS63178, and SHB00788;  redacted from these documents are the Base Unit Pricing which is privileged and confidential.  Similar to these Purchase Orders are two other Purchase Orders identified on the website as SHR92134, and BG52730.  Obviously, Debtor believes that Purchase Orders are considered contractual arrangements that should be Assumed and/or Assigned and subject to further quantification and identification.  It is TVM's belief that Debtor plans on Assuming and/or Assigning all outstanding Purchase Orders in existence between Debtor and TVM as certain Executory Contracts.

19.     **Exhibit 3** are two separate lists of Invoices, Dates and Dollar Amounts that may still be owing depending on the fluctuation of payments that are made by the Debtor for the Assumption/Assignment of certain executory contracts. These Invoice numbers are generated by location including those identified in **Exhibit 1,** Pricing Summary Appendix Numbers 16A-1 through 8. It is TVM's position that all of these invoice identifiers are contracts to be assumed and/or assigned and paid in full.

## Cure Amount

20.     Attached as **Exhibit 3** are the two list of Invoices with amounts outstanding with reference to some Purchase Order numbers; because of the different Invoice numbers, Dates and Purchase Order numbers, none of which are essentially correctly identified on the Debtor's website, the same are being attached to reflect potential range of the cure amount for which TVM is seeking and which support TVM's position. It is believed that this matter can be resolved between the Debtor/GM, the new Purchaser and Creditor, TVM, in an agreeable fashion.

21.     As previously indicated, the proposed Cure Amount identified on the Debtor's website fluctuates on a daily basis. Therefore, based on its uncertainty, T.V. Minority Company, Inc., and its wholly owned subsidiary, Innovative Logistics Group, Inc., believes that Debtor may owe, subject to further payment fluctuations, an amount owing of approximately $2,668,265.01 up to and including $5,796,893.59.

22.     Obviously, as payments are made by Debtor, the Contracts Assumed and/or Assigned, these values may be subject to subsequent change.

WHEREFORE, T.V. Minority Company, Inc., respectfully requests that the Court: (1) deny the proposed assumption and assignment of TVM's executory contracts on the terms proposed by the Debtors and instead determine the appropriate amounts due to TVM under such contracts pursuant to §365(b) of the Bankruptcy Court; (2) require that the Proposed Sale Order approving the Sale Motion expressly provide that the Purchaser shall be liable for all

accrued liabilities arising under, and existing as of the time that, executory contracts are assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement and the Bid Procedures Order, including all defaults arising thereunder (which defaults must be cured in the time and manner set forth in the Bid Procedures Order) and all obligations that have accrued thereunder but are not then in default;  and (3) grant such other and further relief as is just and appropriate.

        s/Stephen B. Foley
        STEPHEN B. FOLEY, P.C.
        9900 Pelham Road
        Taylor, MI  48180
        (313) 295-2590
        sfoley@sbfpc.com
        P-27274

Dated:  June 11, 2009