FOLEY & LARDNER LLP

Thomas B. Spillane
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, Michigan  48226
(313) 234-7100
(313) 234-2800 fax

Frank W. DiCastri (*pro hac vice pending*)
777 East Wisconsin Avenue
Milwaukee, Wisconsin  53202
(414) 271-2400
(414) 297-4900 fax

*Attorneys for Webasto Roof Systems, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |

-----------------------------------------------------------------X

**OBJECTION OF WEBASTO ROOF SYSTEMS, INC. TO**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND CURE AMOUNTS RELATED THERETO**

Webasto Roof Systems, Inc. ("Supplier"), by its attorneys Foley & Lardner LLP, submits this objection (the "Objection") to the Debtors' assumption and assignment of certain executory contracts and the Debtor's proposed Cure Amounts related thereto.  In support of its Objection, Supplier states as follows:

**PRELIMINARY STATEMENT**

1. Supplier is in receipt of that certain Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Real Property, and Unexpired Leases

MILW_8855386.1

of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Assumption and Assignment Notice"), dated June 5, 2009, in which the Debtors designate certain agreements between Supplier and the Debtors (the "Assumable Executory Contracts") that may be assumed and assigned to Vehicle Acquisition Holdings LLC (the "Purchaser"). A true and accurate copy of the Assignment Notice is attached hereto as Exhibit A.

## ARGUMENT

### I.    The Proposed Cure Amount Is Inadequate

2.    The Debtors assert that the Cure Amount for the Assumable Executory Contracts is $2,090,485.45, as of June 15, 2009. The Debtors claim that this amount is sufficient to cure all defaults under the Assumable Executory Contracts as of June 1, 2009 (the "Commencement Date").

3.    "Cure Amounts" are defined in the Master Sale and Purchase Agreement as "all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by the applicable Seller and assignment to Purchaser of the Purchased Contracts."

4.    The proposed Cure Amount does not accurately reflect all prepetition defaults and all post-petition defaults that may arise prior to the closing on the sale. It is therefore insufficient.

5.    Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). Congress' intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an

2

executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). Resolution of claims of default arising under an assumed contract seeks to restore the debtor-creditor relationship to pre-default conditions, thereby bringing the contract back into compliance with its terms. *In re Wireless Data, Inc.*, 547 F.3d 484 (2d Cir. 2008).

6. The Debtors must cure all defaults under the Assumable Executory Contracts, including pre-petition defaults and post-petition defaults. In this instance, the Debtors' proposed Cure Amount would deprive Supplier of the full benefit of its bargain and would fail to restore the parties to pre-default conditions.

7. The correct cure amount is $2,513,040.23. This amount is subject to change, and Supplier reserves the right to submit additional amounts that may accrue after the date of this Objection.

II. **The Assumption and Assignment Notice Improperly Allows For the Assumable Executory Contracts to be Assumed Without Payment of the Cure Amount or Adequate Assurance of Prompt Cure**

8. Paragraph 8 of the Assumption and Assignment Notice provides in relevant part:

> If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable following resolution of such disputed Cure Amount.

9. The "Assumption Effective Date" is defined in Paragraph 14 of the Assumption and Assignment Notice as the later of the date proposed by the Debtors, which date may be the Closing or a later date, and "the date following expiration of the Objection Deadline if no

3

MILW_8855386.1

Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract."

10. Read carefully, the Assumption and Assignment Notice permits the Debtors to assume and assign the Assumable Executory Contracts before any disputes as to the proper Cure Amount are resolved. To the extent that the Debtors intend to take such a position against Supplier, the Debtors' actions would violate sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code. *See* 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A) (prohibiting assumption and assignment, respectively, unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract).

11. The Bankruptcy Code unequivocally requires that *before* a contract can be assumed or assigned, any defaults must either be cured or the Debtors must provide adequate assurance that a prompt cure will be provided. *See, e.g., In re Skylark Travel, Inc.*, 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990) ("[i]f the debtor wishes to assume the [contract] it must first cure the default as required by 11 U.S.C. § 365(b)"). If the Debtors take the position that Supplier's contracts are assumed and assigned to the Purchaser, notwithstanding a pending cure objection, they may also expect Supplier to render performance to the Purchaser in the interim. This would be unacceptable, and would violate the plain language of the Bankruptcy Code.

### III. Supplier's Post-Sale Lien Rights in Tooling Cannot be Stripped Through Assumption and Assignment of the Designated Agreements

12. Supplier is a supplier to the Debtors and has in its possession certain tooling which is or was used for the production of parts for the Debtors (the "<u>Tooling</u>"). Supplier has a perfected possessory lien interest in the Tooling, pursuant to the Michigan Special Tools Lien

Act, M.C.L. 570.541 et seq. (the "Special Tools Lien Act"), the Michigan Molder's Lien Act, M.C.L. 445.611 et seq. (the "Molder's Lien Act"), and/or other provisions of state law (together with the Special Tools Lien Act and the Molder's Lien Act, the "Lien Laws"). The Tooling is therefore Supplier's collateral to protect payment for the goods produced using the Tooling.

13. To the extent that the Supplier continues to produce parts using the Tooling for the Debtors, the Purchaser, or any assignee of the Assumable Executory Contracts, Supplier shall continue to benefit from a perfected security interest in the Tooling under the applicable Lien Laws. To the extent that the assumption and assignment of the Assumable Executory Contracts proposed in the Assumption and Assignment Notice could have the effect of stripping Supplier of its continuing rights under the Lien Laws, Supplier objects.

**IV.    Reservation of Rights Regarding Adequate Assurance of Future Performance**

14. Section 365(b)(1)(C) of the Bankruptcy Code provides that the trustee may not assume an executory contract in which there has been a default unless the trustee "provides adequate assurance of future performance under such contract." 11 U.S.C. § 365(b)(1)(C).

15. Where a debtor or its assignee fails to provide adequate assurance of future performance, assumption and assignment of the executory contract must be denied. *See, e.g., In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 65-66 (Bankr. S.D.N.Y. 2005) (debtor failed to provide adequate assurance of future performance, and therefore could not assume contract); *Skylark*, 120 B.R. at 355 (before debtor would be permitted to assume executory contract, debtor would be required to cure default and post bond or letter of credit).

16. To date, neither the Debtors, the proposed Purchaser, nor any other possible assignee has provided Supplier with adequate assurance of future performance under the Assumable Executory Contracts, including for amounts due Supplier post-petition but which are

5

not in default and thus not included in the Cure Amount. The Debtors must provide adequate assurance to Supplier for all amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount. While it appears that the Purchaser will agree to assume all liabilities under the Assumable Executory Contracts, whether or not the Assumable Executory Contracts will actually be assumed and assigned is not yet clear. Therefore, Supplier reserves all right with respect to adequate assurance for these amounts due and to object to assumption and assignment under section 365(b)(1)(C).

### V.     Preservation of Rights of Setoff and Recoupment

17.    Among Supplier's most valuable rights in its relationship with Debtors are its rights of setoff and recoupment. These rights arise under the contract between Supplier and Debtors, federal or state statutes, or common law.

18.    The Assumption and Assignment Notice fails to properly preserve the validity, extent or priority of such setoff or recoupment rights. These rights must be preserved as against Debtors and against Purchaser upon the assumption and assignment of the Supplier's contracts. The preservation of post-assignment rights of setoff and recoupment is just as significant an interest of Supplier as are its pre-assignment rights against Debtors.

### RELIEF REQUESTED

WHEREFORE, Supplier requests that the Court enter an order denying the Debtors' request to assume and assign the Assumable Executory Contracts unless and until the Debtors increase the Cure Amount and satisfy Supplier's other objections herein, and grant such other and further relief as the Court deems just and proper.

Dated: June 15, 2009    FOLEY & LARDNER LLP

　　　　　　　　　　　　　　　　s/   Frank W. DiCastri
　　　　　　　　　　　　　　　Frank W. DiCastri (*pro hac vice pending*)
　　　　　　　　　　　　　　　FOLEY & LARDNER LLP
　　　　　　　　　　　　　　　777 East Wisconsin Avenue
　　　　　　　　　　　　　　　Milwaukee, Wisconsin  53202
　　　　　　　　　　　　　　　(414) 271-2400
　　　　　　　　　　　　　　　(414) 297-4900 fax

　　　　　　　　　　　　　　　Thomas B. Spillane
　　　　　　　　　　　　　　　FOLEY & LARDNER LLP
　　　　　　　　　　　　　　　One Detroit Center
　　　　　　　　　　　　　　　500 Woodward Avenue, Suite 2700
　　　　　　　　　　　　　　　Detroit, MI 48226-3489
　　　　　　　　　　　　　　　Telephone: (313) 234-7100
　　　　　　　　　　　　　　　Facsimile: (313) 234-2800

　　　　　　　　　　　　　　　*Attorneys for Webasto Roof Systems, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                            :        Chapter 11
                                                  :
GENERAL MOTORS CORP., *et al.*,                   :        Case No. 09-50026 (REG)
                                                  :
                        Debtors                   :        Jointly Administered
                                                  :
---------------------------------------------------------------X

## CERTIFICATE OF SERVICE

      I hereby certify that on June 15, 2009, I caused the Objection Of Webasto Roof Systems, Inc. To Assumption And Assignment Of Certain Executory Contracts And Cure Amounts Related Thereto to be served via U.S. Mail on the following at the addresses set forth below:

| | |
|---|---|
| General Motors Corporation<br>Attn: Warren Command Center<br>Mail Code 480-206-114<br>30009 Van Dyke Avenue<br>Warren, Michigan 48090-9025 | Weil, Gotshal & Manges LLP<br>Attorneys for the Debtors<br>Attn: Harvey R. Miller, Esq.<br>Stephen Karotkin, Esq.<br>Joseph H. Smolinsky, Esq<br>767 Fifth Avenue<br>New York, New York 10153 |
| U.S. Treasury<br>Attn: Matthew Feldman, Esq.<br>1500 Pennsylvania Avenue NW<br>Room 2312<br>Washington, D.C. 20220 | Cadwalader, Wickersham & Taft LLP<br>Attn: John J. Rapisardi, Esq.<br>Attorneys for the Purchaser<br>One World Financial Center<br>New York, New York 10281 |
| Vedder Price, P.C.<br>Michael J. Edelman, Esq.<br>Michael L. Schein, Esq.<br>Attorneys for Export Development Canada<br>1633 Broadway, 47th Floor,<br>New York, New York 10019 | Office of the United States Trustee<br>Southern District of New York<br>Attn: Diana G. Adams, Esq.<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004 |

MILW_8855386.1

Kramer Levin Naftalis & Frankel LLP
Attorneys for the Official Committee of
Unsecured Creditors
Attn: Gordon Z. Novod, Esq.
1177 Avenue Of The Americas
New York, NY 10036

Dated:   June 15, 2009                                  FOLEY & LARDNER LLP

/s/ Frank W. DiCastri
Frank W. DiCastri
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900