| | |
|---|---|
| LATHAM & WATKINS LLP<br>George Royle<br>885 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: george.royle@lw.com<br><br>and<br><br>Douglas Bacon<br>Sears Tower, Suite 5800<br>233 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 876-7700<br>Facsimile: (312) 993-9767<br>Email: douglas.bacon@lw.com<br><br>Attorneys for GE Capital Corporation and its affiliates | EDWARDS ANGELL PALMER & DODGE LLP<br>Richard Hiersteiner<br>Jeanne P. Darcey<br>111 Huntington Avenue<br>Boston, MA 02199<br>Telephone: (617) 239-0100<br>Facsimile: (617) 227-4420<br><br>Attorneys for U.S. Bank National Association and U.S. Bank Trust National Association, as Owner Trustee |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **GENERAL MOTORS CORP., et al.** | ) Case No. 09-50026 (REG) |
| | ) |
| **Debtors.** | ) Jointly Administered |
| | ) |
| | ) |

**OBJECTION OF GE CAPITAL CORPORATION AND CERTAIN OF ITS AFFILIATES AND U.S. BANK, AS OWNER TRUSTEE ON ITS BEHALF, TO (I) DEBTORS' MOTION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND (II) TO NOTICE OF (A) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (B) CURE AMOUNTS RELATED THERETO**

GE Capital Corporation and certain of its affiliates (collectively, "GECC"), and U.S. Bank National Association and U.S. Bank Trust National Association (together, "US Bank"), as Owner Trustee on its behalf, by and through their undersigned counsel, submit this objection (the "Objection") to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), And (m),

And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To Approve (A) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief, dated June 1, 2009 (Docket No. 92) (the "Sale Procedures Motion") and, pursuant to the requirements of the Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings, LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice, dated June 2, 2009 (the "Sale Procedures Order") (Docket No. 274). In support of this Objection, GECC respectfully represents as follows:

## SUMMARY

1.  GECC or US Bank, as Owner Trustee on its behalf, leases more than four hundred million dollars worth of manufacturing equipment and other property to the Debtors. GECC is also a party to dozens of other executory contracts with the Debtors (collectively, the "Leases"). Despite the impending objection deadline, neither GECC nor the Owner Trustee has been provided with sufficient information to determine which of these agreements the Debtors propose to assume and assign to "New GM," or how the Debtors propose to adequately protect GECC's interests.

2.  Under the Debtors' Master Sale and Purchase Agreement (the "MPA"), "Old GM" proposes to transfer certain assets and contracts to New GM, which will continue as a

2

going concern. New GM has an indefinite and indeterminate period of time within which it may elect to acquire any assets or contracts of Old GM that it desires.

3. After reviewing the Debtors' pleadings and various notices provided by the Debtors, neither GECC nor the Owner Trustee has been able to determine (i) which of its contracts is proposed to be assumed and assigned to New GM, (ii) the proposed cure amounts, (iii) when the contracts will be assigned (or not), (iv) who will operate, possess, safeguard, and maintain GECC's equipment subject to the Leases until New GM makes a final decision regarding the contracts, or (v) what adequate protection will be provided to GECC or the Owner Trustee on its behalf pending completion of the transaction.

4. This Objection is filed to reserve all of GECC's and the Owner Trustee's rights with respect to any lease or executory contract the Debtors propose to assign to New GM pending: (i) clear identification of the contract, (ii) adequate notice regarding the terms and timing of such assumptions, including cure amounts, and (iii) adequate assurance of future performance.

## BACKGROUND

5. On June 1, 2009 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**The GM-GECC Relationship**

6. GECC provides equipment leases, financing programs, and an array of other financial services to a broad range of business and government clients across America and in 35 other countries. The services and funding GECC provides its customers promote the growth of

3

CH\1103703.6

industry in both wealthy and emerging nations, facilitate the development of infrastructure, and are essential to the economic well-being of many companies around the globe.

7.  In addition to providing financing to the Debtors of hundreds of millions of dollars worth of automobile manufacturing equipment and other property, GECC is a major customer of the Debtors, purchasing tens of thousands of vehicles from the Debtors each year.

8.  Among the numerous financial arrangements with the Debtors, beginning in 2001, GECC entered into a series of highly structured equipment sale-leaseback transactions involving GM and other parties (individually, a "Lease Transaction," and collectively, the "Lease Transactions").[1]  In total, GECC, GM and other parties executed numerous agreements culminating in six Lease Transactions of heavy automobile manufacturing equipment, including assembly, engine, rod and cam shaft line equipment, stamping presses and other related equipment (each an "Item of Equipment," and collectively, the "Equipment").  Four of the Lease Transactions were executed in 2001 and two were executed in 2003.

9.  The underlying structure of each Lease Transaction is virtually identical and was carefully crafted to establish the rights, interests, and obligations of each party.  More specifically, each Lease Transaction utilized a grantor trust as lessor.  Each trust was created pursuant to a separate trust agreement between GECC, as "Owner Participant," and US Bank, as "Owner Trustee."  As Owner Participant under each Lease Transaction, GECC is the sole beneficiary of the Owner Trust.  Essentially, GECC's purchase of the Equipment was financed by GECC depositing funds into the relevant trust (the "Owner Trust") in an amount equal to the cost of the Equipment.  The Owner Trust then purchased the Equipment from GM and leased the Equipment back to GM under the Lease Transactions.  The Owner Trust holds title to the

---

[1]  A more detailed description of each lease agreement is attached hereto as Exhibit A.

4

Equipment in trust for the benefit of the Owner Participant, and leases the Equipment to GM. The Owner Trustee cannot modify or amend the Lease Transactions without the direction or consent of GECC.

10. The Lease Transactions involve Equipment used in GM manufacturing plants in Michigan, New York, Louisiana, and Ohio. Four of the Lease Transactions cover Equipment in multiple GM manufacturing plants. The terms of the Lease Transactions range between 15 and 20 years. The rent under the Lease Transactions is due on a semi-annual basis.

11. The primary distinguishing feature among the four Lease Transactions executed in 2001 and the two Lease Transactions executed in 2003 was the element of leverage. The four Lease Transactions executed on December 18, 2001, (Series 2001 A-2, Series 2001 A-4, Series 2001 A-6 and Series 2001 A-8), each included a financing mechanism known as a "leveraged sale-leaseback" (the "Leveraged Leases"). The Leveraged Leases contained the same grantor trust structure as the other two Lease Transactions but included a leverage component that was implemented through the issuance by the Owner Trustee of debt to numerous institutional investors (the "Noteholders"). In the Leveraged Leases, GECC, as Owner Participant, made an equity investment to pay a portion, approximately 25%, of the equipment cost through the Owner Trust, and the Owner Trustee borrowed the balance from the Noteholders. In addition, the Owner Trustee granted a security interest in its rights to the Equipment and the rent under the lease agreements to an "Indenture Trustee" for the benefit of the Noteholders to secure such debt. In the Leveraged Leases, the cash flow from the lease rent payments from GM is sufficient to pay the principal of, and interest on, the debt to the Noteholders incurred to finance the purchase of the Equipment and provide an equity return to the Owner Participant.

5

12. In only one of the four Leveraged Leases is the Owner Trust the sole owner of the Equipment. The other three Leveraged Leases are structured such that the Owner Trust owns a 50% undivided interest in the Equipment for the benefit of the Owner Participant. The remaining 50% undivided interest in the Equipment under these three Leveraged Leases were financed in a concurrent, substantially identical, leveraged lease transaction involving an affiliate of Philip Morris Capital Corporation, as owner participant, and US Bank as Owner Trustee.

13. The size of these Lease Transactions can be partially demonstrated by length of the schedule attached to each lease agreement listing each Item of Equipment. Some Lease Transactions required several single-spaced pages to identify the hundreds of components associated with each Item of Equipment. A fully constructed engine line, for example, can include machinery as long as a football field that occupies a substantial portion of GM's massive manufacturing facilities.

14. In connection with each Lease Transaction, GECC commissioned an internationally recognized appraiser, American Appraisal Associates, to perform an appraisal of the Equipment. Each appraisal contains over one hundred pages of detailed analysis relating to the value of the Equipment. The appraisals estimated a remaining useful life of the Equipment between nineteen and thirty-five years depending on a number of circumstances, including the type of the Equipment, and other financial determinations. At the time these appraisals were performed, the fair market value of the Equipment under the six Lease Transactions amounted to a total combined cost of more than $618,000,000.

15. Each Lease Transaction was thoroughly integrated and intended to constitute a non-severable lease. In addition, each Lease Transaction was carefully negotiated and designed

6

to constitute a "true lease." The true lease nature of each Lease Transaction was supported by third-party opinions delivered at closing and the aforementioned appraisals.

16. The size, scope, and value of the Equipment is also reflected in the voluminous and complex nature of the operative documents under each Lease Transaction. Each Lease Transaction includes a myriad of covenants and compliance requirements and conditions with respect to, among other things, operation, maintenance, insurance, identification, alterations, relocation, and modifications. The extensive nature of the covenants and conditions is designed to protect and preserve GE's interest in the leased property. Furthermore, each Lease Transaction consists of at least ten operative transaction documents, the combined total of which amounts to more than a thousand pages for each Lease Transaction.

**Other Relationships**

17. GECC also has a number of other relationships with the Debtors, including the leasing of furniture and mobile equipment. GECC is a party in interest to leases of more than $44 million in furniture to the Debtors (the "Furniture Lease"). The furniture is located across several of GM's Michigan properties. The Debtors have not communicated with GECC regarding its plans for the Furniture Lease, and it is unknown whether the Debtors propose to assume and assign the Furniture Lease. GECC is also a party in interest to a lease of forklifts and other mobile equipment (the "Mobile Equipment Lease") to the Debtors. The forklifts and equipment are located throughout various manufacturing plants of the Debtors. The Debtors' counsel have informally indicated that the Debtors may assume and assign the Mobile Equipment Lease but have not definitively communicated with GECC regarding its plans for the Mobile Equipment Lease.

**The Debtors' Proposed Assumption and Assignment**

7

CH\1103703.6

18. On June 1, 2009, the Debtors moved the Court to (i) approve the MPA, (ii) approve the assumption and assignment of certain executory contracts and unexpired leases, and (iii) schedule a sale approval hearing (Docket No. 92).

19. On June 2, 2009, the Court entered the Sale Procedures Order, which approved the Debtors' Form of Notice of Assumption and Assignment, which was to be sent to counterparties to contracts designated as "Assumable Executory Contracts" within three days of the entry of the Sale Procedures Order. The Assumption and Assignment Notices (the "Assignment Notices") direct contractual counterparties to a GM-managed and password-protected website (the "Website"), "contractnotices.com," to learn the proposed cure amounts and the proposed "Assumption Effective Dates" and other terms of the assumption and assignment of their contracts.

20. GECC has received several Assignment Notices from the Debtors all of which are dated June 5, 2009. Each Assignment Notice provides GECC with access to the Website, in each case revealing different contracts and cure amounts. The Assignment Notices do not identify the contacts beyond the generic term "agreement" and an internal GM reference code. Moreover, these Assignment Notices provide a ten-day deadline, June 15, 2009, by which GECC must object to assert and preserve its rights. The Owner Trustee, the actual counterparty to the leases of the Equipment in the Lease Transactions received no Assignment Notices with respect to those transactions.

**OBJECTION**

**A.    GECC Cannot Determine Which Agreements The Debtors Propose To Assume**

21. GECC received Assignment Notices apparently for some, but not all of its contracts with the Debtors. The contracts listed on the Website are impossible for GECC to

8

CH\1103703.6

identify, as they are listed by "GM Contract ID" and other GM numbers that GECC cannot interpret. Furthermore, the Website lists no "Assumption Effective Dates" (despite language in Assignment Notices indicating such information would be available on the Website) or other information that would help GECC understand the Debtors' proposed treatment of its contracts.

22. By way of example, one Assignment Notice received by GECC, provided a user name and password for the Website. Upon entering the log-in information, the Website revealed eighty-four contracts, none of which GECC could identify. Additionally, the Lease Transactions, the Furniture Lease and the Mobile Equipment Lease were not clearly identified, creating further uncertainty regarding their status. Finally, the aggregate "cure amount" was listed as <u>negative</u> $3 million dollars.

23. Given the enormity of the Equipment and Lease Transactions at issue, GECC has not received an Assignment Notice that specifically identifies any of the Lease Transactions, nor has the Owner Trustee received an Assignment Notice with respect to any of the Lease Transactions.

24. Furthermore, even if the Debtors had provided GECC with relevant information regarding the contracts they propose to assign, GECC would probably still not know whether its contracts were being assigned. Under the MPA, New GM has until the date that is "thirty (30) calendar days following the Closing Date . . . <u>or if mutually agreed upon by the Parties, any later date up to and including the Business Day immediately prior to the date of the confirmation hearing for Sellers' plan of liquidation or reorganization</u>" (emphasis supplied) to (i) add other executory contracts to the schedule of Assumable Executory Contracts or (ii) remove contracts from the schedule of Assumable Executory Contracts. (MPA section 6.6(a)).

9

25.     The Debtors' purported notice to GECC falls well short of satisfying GECC's fundamental due process rights.  GECC faces an objection deadline of June 15, and cannot determine anything with respect to which contracts the Debtors seek to assign.  The notice provisions of the Bankruptcy Code and the provisions of section 365 require more from Debtors than non-committal and tentative plans before a party in interest loses its right to object. Furthermore, the Debtors' procedures for handling notices – allowing fewer than ten days after receipt of what is effectively a dysfunctional internet-based notice – does not satisfy even a minimal standard of due process.

**B.    GECC Cannot Determine Whether Its Interests Are Being Adequately Protected Or Who Is Providing Such Adequate Protection**

26.     The MPA appears to have been drafted to give New GM maximum flexibility in determining which assets and contracts to acquire.  To that end, New GM can assume a contract of Old GM at any time before Old GM emerges from bankruptcy or liquidates.  This creates an unacceptable amount of uncertainty for GECC regarding adequate protection of its extensive and valuable interests.

**(i)    GECC Is Entitled To Adequate Protection Of Its Interests In The Leased Equipment**

27.     Section 363(e) requires a bankruptcy court to prohibit or condition a debtor's use, sale or lease of property serving as collateral if such action is "necessary to provide adequate protection" of the creditor's interest in the collateral.  11 U.S.C. § 363(e).

28.     Pursuant to section 365(d)(5) of the Bankruptcy Code, the Debtors are responsible for payment of all of their post-petition obligations under the Lease Transactions, the Furniture Lease, and the Mobile Equipment Lease as and when due from the Petition Date through the date an order is entered approving the assumption or rejection of such leases.  Section 365(d)(5) of the Bankruptcy Code provides, in relevant part, that:

10

CH\1103703.6

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise…

11 U.S.C. §365(d)(5).

29.     Thus, under the plain language of section 365(d)(5) of the Bankruptcy Code, after sixty days the Debtors are required to pay rent under the Lease Transactions, the Furniture Lease, and the Mobile Equipment Lease and the payment of all future obligations under the Lease Transactions as and when due until the date this Court enters an order approving the assumption or the rejection of such leases.

30.     Section 365(d)(3) was intended to alter prior law, which gave bankruptcy courts broad discretion over the timing of payment of administrative expenses, by requiring obligations arising under leases to be paid "<u>at the time required in the lease</u>." See <u>In re Child World, Inc.</u>, 161 B.R. 571, 575 (S.D.N.Y. 1993) (emphasis supplied). Section 365(d)(5) was enacted with the same intention, except that it grants debtors a 60-day "breathing spell" during which no payments are due and permits bankruptcy courts to order otherwise after notice and hearing based on the equities of the case. Courts have held that section 365(d)(3), which is very similar to section 365(d)(5), should be interpreted in accordance with its literal language. <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241-42 (1989). See also <u>In re R.H. Macy & Co., Inc.</u>, 152 B.R. 869, 873 (Bankr. S.D.N.Y. 1993) (interpreting section 365 of the Bankruptcy Code in accordance with its plain meaning).

    **(ii)**    **The Debtors' Proposed Procedures For Assuming And Assigning Executory Contracts Do Not Adequately Protect GECC's Interests in the Leased Equipment**

31. As described above, Old GM proposes to assign unspecified executory contracts to New GM on a rolling basis. Indeed, the effective date of the assignment is not necessarily the Closing Date, but rather a "Proposed Assumption Effective Date," which is specific to each contract, and which the Debtors have stated they will "update[] from time to time" on the Website (Assignment Notice, para. 13).

32. Fundamental adequate protection problems result from the ability of New GM to assume the contracts of Old GM on a rolling basis. New GM will obtain possession and control of GECC's Equipment prior to assumption and assignment, despite having no legal rights in the Equipment. For example, Old GM could assume and assign a real property lease, or sell a fee interest in real property, to "New GM," but may delay the Assumption Effective Date for leased equipment located on subject property with GECC. The result, under the MPA, is that New GM would have no legal rights in respect of the leased equipment, but would nonetheless have possession and control of the Equipment.

33. As stated above, the Equipment subject to the Lease Transactions is extremely large and valuable and subject to a myriad of operation and maintenance covenants and other specific compliance requirements. However, Old GM may have no right (or obligation) to enter the real property now owned or controlled by New GM to maintain and protect GECC's Equipment pursuant to the requirements under the Lease Transactions. Moreover, GECC will be stayed from asserting its legal rights against Old GM and would not be able to access its property in the hands of New GM. GECC will be relegated to asserting its rights against a party (Old GM) that will no longer have possession or control of the Equipment.

34. The existence of comprehensive definitive agreements for all the Equipment is a baseline of adequate protection. Thus, GECC finds itself facing the untenable position of being

CH\1103703.6

precluded from asserting its rights to the Equipment against New GM based on the lack of contractual privity while simultaneously being deprived of adequate protection based on Old GM having transferred its custody and control to the real property on which the Equipment is situated. Consequently, New GM has the exclusive right to control and use the Equipment without being required to provide GECC with adequate protection. Affording Old GM with the ability to provide such a benefit to New GM, a non-debtor party, undermines a basic and fundamental tenet of the Bankruptcy Code to protect GECC's rights and interests as a creditor.

## CONCLUSION

35. GECC appreciates the size and complexity of this case and the enormity of the tasks before this Court and the Debtors. Nonetheless, GECC has very substantial legal and economic interests at stake that are of sufficient complexity and value that they warrant treatment consistent with fundamental principals of contract law and the Bankruptcy Code.

WHEREFORE, GECC and the Owner Trustee with respect to the Lease Transaction on its behalf and at its direction, respectfully request that this Court deny the Debtors' motion to assume and assign certain executory contracts, and to award such other and further relief as is just and equitable.

Dated: June 15, 2009
New York, NY

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ George Royle
  George Royle
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

-and-

Douglas Bacon
233 S. Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for GE Capital Corporation and its affiliates

-and-

**Edwards Angell Palmer & Dodge LLP**

By: /s/ Richard Hiersteiner
  Richard Hiersteiner
  Jeanne P. Darcey
111 Huntington Avenue
Boston, MA 02199
Telephone: (617) 239-0100
Facsimile: (617) 227-4420

Attorneys for U.S. Bank National Association (and U.S. Bank Trust National Association), as Owner Trustee, with respect to the Lease Transactions

**EXHIBIT A**

Equipment Lease Agreements:

1. GM Series 2001 A-2 Lease Agreement dated as of December 18, 2001 between U.S. Bank National Association, as successor in interest to State Street Bank and Trust Company of Connecticut, National Association, not in its individual capacity except as expressly stated herein, but solely as Owner Trustee, as Lessor, and General Motors Corporation, as Lessee.

2. GM Series 2001 A-4 Lease Agreement dated as of December 18, 2001 between U.S. Bank National Association, as successor in interest to State Street Bank and Trust Company of Connecticut, National Association, not in its individual capacity except as expressly stated herein, but solely as Owner Trustee, as Lessor, and General Motors Corporation, as Lessee.

3. GM Series 2001 A-6 Lease Agreement dated as of December 18, 2001 between U.S. Bank National Association, as successor in interest to State Street Bank and Trust Company of Connecticut, National Association, not in its individual capacity except as expressly stated herein, but solely as Owner Trustee, as Lessor, and General Motors Corporation, as Lessee.

4. GM Series 2001 A-8 Lease Agreement dated as of December 18, 2001 between U.S. Bank National Association, as successor in interest to State Street Bank and Trust Company of Connecticut, National Association, not in its individual capacity except as expressly stated herein, but solely as Owner Trustee, as Lessor, and General Motors Corporation, as Lessee.

5. GM Series 2003 B-1 Lease Agreement dated September 30, 2003 between U.S. Bank Trust National Association, a national banking association, not in its individual capacity except as expressly stated herein, but solely as Owner Trustee, as Lessor, and General Motors Corporation, as Lessee.

6. GM Series 2003 C-1 Lease Agreement dated December 10, 2003 between U.S. Bank Trust National Association, a national banking association, not in its individual capacity except as expressly stated herein, but solely as Owner Trustee, as Lessor, and General Motors Corporation, as Lessee.

CH\1103703.6