James A. Plemmons (*pro hac vice*)
Michael C. Hammer (*pro hac vice*)
DICKINSON WRIGHT PLLC
500 Woodward Ave., Suite 4000
Detroit, MI 48226
Tel: (313) 223-3500

Attorneys for Sumitomo Electric Wiring Systems, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                              :  Chapter 11
                                              :
In re:                                        :
                                              :  Case No. 09-50026 (REG)
GENERAL MOTORS CORP., et al.,                 :
                                              :  (Jointly Administered)
                        Debtors.              :
------------------------------------------------------------x
```

**SUMITOMO ELECTRIC WIRING SYSTEMS, INC.'S LIMITED OBJECTION TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. § § 105, 363(B), (F), (K) AND (M), AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006, TO (I) APPROVE (A) THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS, LLC, A U.S. TREASURY-SPONSORED PURCHASER, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) OTHER RELIEF; AND (II) SCHEDULE SALE APPROVAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Sumitomo Electric Wiring Systems, Inc., on behalf of itself and its owned or controlled subsidiaries, affiliates and related companies (collectively, "SEWS"), through its attorneys, Dickinson Wright PLLC, states as follows for its Objection:

1. On June 1, 2009, Debtors filed their *Motion Pursuant to 11 U.S.C. § § 105, 363(b), (f), (k) and (m), and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement With Vehicle Acquisition Holdings, LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims,*

Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing (the "Assumption Motion").

2.     On June 2, 2009, this Court entered its Order Pursuant to 11 U.S.C. § § 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 (I) Approving Procedures For Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice (the "Order").

3.     The Order established certain procedures pursuant to which the Debtors were to give affected parties notice that Debtors intended to assume their executory contracts and/or unexpired leases, as well as the amounts that the Debtors believed were required to "cure" defaults under those contracts and leases as required by 11 U.S.C. § 365(b) (the "Cure Procedures").

4.     On June 5, 2009, in accordance with the Cure Procedures, the Debtors filed and served their Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Cure Notice"). The Cure Notice advised that the Debtors maintained a secure website that contained information about contracts to be assumed and cure amounts that the Debtors believe will satisfy their obligations under 11 U.S.C. § 365(b).

5.     The secured website provided that Debtors intended to assume certain executory contracts (the "Executory Contracts") and tender a cure amount of $358,679.61 (as of June 12, 2009) (the "Debtors' Cure Amount") to SEWS.

6.    Although SEWS does not object to the assumption of the Executory Contracts *per se*, SEWS objects to the Debtors' Cure Amount.

7.    In fact, the amount required to pay the balance of the Executory Contracts and to cure defaults is no less than $9,163,121.23 *plus* $358,679.61.  Detail and support for this cure amount is provided in **Exhibit A** (further detail available).  In addition, the cure amount must include all accrued, non-defaulted obligations and any other amount due through the Assumption Effective Date.

8.    SEWS objects to the assumption and assignment of the Executory Contracts unless Debtors pay the amount of no less than $9,163,121.23 *plus* $358,679.61 and provide adequate assurance of future performance.[1]

**WHEREFORE** SEWS respectfully requests that this Court find that the amount required to cure the existing defaults under the Executory Contracts is no less than $9,163,121.23 *plus* $358,679.61 and deny the Debtors' assumption and assignment of the Executory Contracts unless this cure amount is promptly paid to SEWS.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/  Michael C. Hammer
James A. Plemmons (*pro hac vice*)
Michael C. Hammer (*pro hac vice*)
500 Woodward Ave., Suite 4000
Detroit, MI 48226
Tel: (313) 223-3500
Email: jplemmons@dickinsonwright.com
Email: mhammer@dickinsonwright.com

---

[1]    To the extent Debtors argue that SEWS' claims are subject to the cure dispute resolution process, SEWS objects that the Debtors should not have the right to determine unilaterally and without a strict deadline whether a given dispute is subject to alternative dispute resolution procedures, as this would allow Debtors to delay cure proceedings indefinitely.

3

Attorneys for Sumitomo Electric Wiring
Systems, Inc.

Dated: June 15, 2009

ANNARBOR  22802-1  10811Dv2

4

**EXHIBIT A**

6/12/2009

Sumitomo Electric Wiring Systems, Inc.

## Commercial Disputes With GM Relating To Pre-Petition Matters

| Item | Amount | Note |
|---|---|---|
| 1. GMX001 Equipment Amortization | $294,655.00 | Cost recovery shortage: $294,655<br><br>GM asked SEWS* to add tooling and equipment to increase production capacity. SEWS complied with GM's request. Invested amount was $420,000.<br>Volume drop caused un-recovered cost at $294,655.<br><br>* SEWS = Sumitomo Electric Wiring Systems, Inc. |
| 2. H3 Global Cancellation | $1,662,723.57 | Inventory: Raw Material $957,681.29, Finished Goods $361,842.28<br>Engineering cost: $343,200.00<br>GM cancelled all orders for H3 Global product in GM order system.<br>There is no plan for immediate production.<br>Additionally SEWS invested in the development for H3 diesel engine program.<br>The cancellation caused obsolescence and lack of amortization for SEWS. |
| 3. Obsolescence Claims (American Axle strike)<br><br>H2<br>H3<br>H3G | $2,372,323.10<br><br>$117,383.13<br>$2,094,048.88<br>$160,891.09 | Obsolescence disposal: $2,554,080.88<br>Recovered: -$181,757.78<br><br>American Axle strike caused losses as a result of obsolescence without proper notice. SEWS submit a claim to GM, but refund was $0.2M only. |
| 4. Unamortized ED&T<br><br>GMT345/Global745<br>H2<br>GMX222272 | $4,806,445.00<br><br>$2,069,987.00<br>$1,130,393.00<br>$1,606,065.00 | Cost: 14,321,664.00   Amortized: -9,515,219.00<br><br>SEWS was invested $14.3M in ED&T to support our sourced business.<br>Due to our inability to depreciate this ED&T over the quoted volumes<br>SEWS is current facing $4.8M deficit to our amortization plan. |
| 5. SEWS A/R different than Cure Amount<br>As shown on www.contractnotices.com<br>6/12/2009, 1:59PM(EST) | $26,974.56 | Cure Amount: $358,679.61<br>SEWS A/R: $385,654.17    --- Total A/R: 871,681.31 (as of 5/31/2009)<br>Deduction: GM/UST: -462,027.14, Payment on Jun 5: -24,000.00 |
| Total Amount | $9,163,121.23 | |

* items, #1 - #4, are claimed to GM by a letter on March 2, 2009.