Eric T. Ray
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone (205) 251-8100
Facsimile (205) 226-8799

Ref. Docket No.: 58
**Objection Deadline: June 15, 2009**
**Hearing Date: June 25, 2009**

*Attorney for Sierra Pacific Power Company*
*d/b/a NV Energy*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| General Motors Corp., *et al.,* | ) | Case No. 09-50026 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**OBJECTION OF SIERRA PACIFIC POWER COMPANY d/b/a NV ENERGY TO THE MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

Sierra Pacific Power Company d/b/a NV Energy ("NV Energy"), by and through its undersigned counsel, hereby objects to the Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 366 (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Objections by Utility Companies, and (III) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service (the "Utility Motion") (*Docket No. 58*). In support of its objection, NV Energy states as follows:

<u>INTRODUCTION</u>

1.    The Utility Motion disregards the significant changes made to 11 U.S.C. § 366 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Notwithstanding the manifest intent of Congress to protect the interests of utilities in chapter 11

bankruptcy cases, the Debtors have made only a token effort to provide adequate assurance of payment and the relief requested by the Utility Motion is violative of the new legislation in several respects. For the various reasons set forth in this objection, the Utility Motion should be denied.

## BACKGROUND

2.      On June 1, 2009 (the "Petition Date"), General Motors Corporation and its affiliated debtors in this jointly administered case (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

3.      NV Energy provides gas service to the Debtors under one account at the Debtors' premises on Echo Avenue in Reno, Nevada. The adequate assurance of payment required by NV Energy for this account is a cash deposit of $78,850, which amount is approximately equal to the charges for two months average service based on the Debtors' account history for the twelve months preceding the Petition Date.

4.      On the Petition Date, the Debtors filed the Utility Motion in which the Debtors request an order providing, among other things: (i) that a cash deposit in an amount equal to charges for the Debtors' average two-week historical usage (the "Proposed Deposit") constitutes adequate assurance of payment for purposes of section 366 of the Bankruptcy Code; (ii) that payment of the Proposed Deposit be required of the Debtors only upon the request of a utility; (iii) that a utility's acceptance of the Proposed Deposit waives any rights of the utility to request additional assurance of payment during the Debtors' bankruptcy case; (iv) that utilities be enjoined from altering, refusing or discontinuing service to, or discriminating against the Debtors

in connection with unpaid utility charges attributable to service provided prior to the Petition Date; and (v) that unless and until the Court enters an order compelling the Debtors to provide additional adequate assurance of payment, the Debtors' utilities are deemed to be adequately assured of payment.

5.      On the Petition Date, the Court entered an order granting the Utility Motion on an interim basis (the "Interim Order") (*Docket No. 101*).

## SECTION 366

6.      Section 366 of the Bankruptcy Code ("Section 366") was enacted originally to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for these essential services. See In re Hanratty, 907 F.2d 1418, 1424 (3d Cir. 1990).

7.      Despite the apparent protections afforded utilities under Section 366, judicial decisions interpreting the statute steadily eroded those protections in a manner that Congress apparently did not intend.  Therefore, when enacting BAPCPA, substantial modifications were made to the text of Section 366, which became effective in bankruptcy cases commenced on or after October 17, 2005.  Congress has clearly expressed in the new legislation that utilities are entitled to be treated in bankruptcy cases in a manner that is consistent with a plain reading of the phrase "adequate assurance of payment".   Section 366 now (i) grants utilities significant substantive rights concerning the security to which they are entitled and (ii) prescribes a new procedure that eliminates the need for first day motions, interim orders and other practices that were common prior to BAPCPA.

1043382.1

8.      Subsections (a) and (b) of Section 366 are substantively identical to their statutory predecessors.   However, subsection (c) of Section 366 is a new provision that unambiguously prohibits many of the practices that were common to cases filed prior to October 17, 2005 and which are proposed by the Debtors in this case.   "As with most issues arising under BAPCPA, the threshold inquiry is to determine precisely what was said, and left unchanged, as Congress amended the Code."  In re Astle, 338 B.R. 885, 857 (Bankr. D. Idaho 2006).  Subsection (c) of Section 366 provides as follows:

(c)(1)(A)  For purposes of this subsection, the term 'assurance of payment' means –

(i)      a cash deposit;
(ii)     a letter of credit;
(iii)    a certificate of deposit;
(iv)    a surety bond;
(v)     a prepayment of utility consumption; or
(vi)    another form of security that is mutually agreed on between the utility and the debtor or the trustee.
(B)      For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2)      Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A)  On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider –

(i)      the absence of security before the date of the filing of the petition;

(ii)     the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

        (iii)     the availability of an administrative expense priority.

(4)     Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

### SIGNIFICANCE OF SECTION 366

9.     Section 366 expressly and unambiguously prevents debtors from claiming that utilities are adequately assured of payment of postpetition charges simply by conceding that such charges are entitled to an administrative expense priority. Pursuant to 11 U.S.C. § 366(c)(1)(A), only tangible forms of security qualify as adequate assurance of payment unless the utility agrees otherwise.

10.     Section 366 effectively, if not purposefully, overrules the decision of the United States Court of Appeals for the Second Circuit in <u>Virginia Elec. & Power Co. v. Caldor, Inc.</u>, 177 F.3d 646 (2d Cir. 1997). <u>Caldor</u> held that adequate assurance of payment under pre-BAPCPA Section 366 could consist of non-tangible safeguards that were otherwise available to a utility under other provisions of the Bankruptcy Code or through the ordinary administration of a bankruptcy case. 177 F.3d at 652. The definition of "assurance of payment" in paragraph (c)(1) of Section 366 does not include the forms of assurance endorsed in <u>Caldor</u>.

11.     Paragraph (c)(2) of Section 366 establishes a new procedure by which debtors are to provide assurance of payment to a utility. Prior to BAPCPA, debtors were required to "furnish" adequate assurance of payment within 20 days of the petition date to avoid a disruption in service. However, paragraph (c)(2) of Section 366 now requires that one of the allowed forms of assurance of payment "that is satisfactory to the utility" be "received" by the utility within 30 days of the petition date to ensure continuous service. This purposeful revision of Section 366

now requires the debtor to timely deliver assurance of payment to a utility without imposing any burdens or other measures upon utilities, including first day motions, interim order, *ex parte* hearings and other court proceedings.

12.    Following delivery of a payment assurance to a utility, if the amount of the delivered assurance is deemed unreasonable by the debtor, 11 U.S.C. § 366(c)(3) authorizes a court, after notice and a hearing, to modify the amount of assurance required by and delivered to the utility.  Paragraph (c)(3) of Section 366 does not authorize a bankruptcy court to either (i) determine the "form" of adequate assurance that a utility may require, or (ii) establish the "amount" of assurance that is adequate prior to the utility "receiv[ing] from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility."  See 11 U.S.C. § 366(c)(3).  Court modification of the amount of an assurance of payment only arises after the adequate assurance payment referenced in Section 366 is received by the parties. See In re Viking Offshore, Inc., No. 08-31219-H3-11, 2008 WL 782449 at *3 (Bankr. S.D. Tex. March 20, 2008); In re Lucre, Inc., 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005); 11 U.S.C. § 366(c)(3)(A).

13.    Textually and in theory, Section 366(c) requires that a debtor timely communicate with its utility service providers (other than through the filing of a first-day motion) in an effort to reach an agreement within 30 days of the petition date to determine and deliver the amount of assurance deemed satisfactory by each utility.  During this 30 day period, three scenarios could occur: (1) the debtor and a utility will agree on the adequacy of payment assurance to be received by the utility to ensure uninterrupted service; (2) the debtor will deem the service provided by a utility to be unnecessary and will request that the service be terminated; or (3) the debtor will deliver to the utility the requested assurance of payment and then move the bankruptcy court to

modify the amount.  Regardless of the scenario, a bankruptcy court's involvement under Section 366, if any, should commence only after a debtor has delivered the adequate assurance required by the utility.

**THE UTILITY MOTION DOES NOT MEET THE REQUIREMENTS OF<br>SECTION 366**

14.     Many of the provisions of the Utility Motion conflict with both the letter and the intent of Section 366.

15.     First, the burden is on the Debtors to timely deliver a payment assurance that is <u>satisfactory to the utility</u>.  11 U.S.C. § 366(c)(2) (emphasis added).  Granting the Utility Motion would improperly shift the burden to the Debtors' utilities by making an advance determination that the proposed assurance was satisfactory.  <u>See</u> <u>In re Viking Offshore (USA) Inc.</u>, No. 08-31219-H3-16 2008 WL 782449 at *3 (Bankr. S.D. Tex. March 20, 2008).  "Section 366(c)(2) imposes no requirement that a utility come to court before altering, refusing or discontinuing service, though clearly Congress knew how to condition an action upon first seeking a hearing. Likewise nothing in section 366 suggests that the court may set a time limit within which a utility must contest a debtor's proposal of adequate assurance or that the court may prohibit a utility from thereafter demanding further or alternate assurance."  <u>In re Pilgrim's Pride Corporation</u>, No. 08-45664 (DML), 2009 Bankr. Lexis 2 at *5-6 (Bankr. N.D. Tex. Jan. 4, 2009) (internal citations omitted).

16.     Further, the Debtors make no effort in the Utility Motion to justify their conclusion that a mere two-week deposit is "adequate assurance of payment" and have made no attempts to discuss with NV Energy, as contemplated by Section 366, what amount of assurance it deems adequate.  Instead, the Debtors merely aver that they intend to pay postpetition utility

1043382.1

charges and that they maintain sufficient funding to enable them to make those payments.  This is nothing more than a re-packaging of the pre-BAPCPA argument that an administrative expense priority is adequate assurance of payment.  An administrative expense priority is not an assurance of payment, 11 U.S.C. § 366(c)(1)(B), and may not even be considered by the Court, 11 U.S.C. § 366(c)(3)(B)(iii), in determining whether an assurance of payment is adequate.  The Debtors' prediction that they can pay postpetition utility service is immaterial.

17.     Further, the Proposed Deposit wholly ignores the manner in which the NV Energy invoices the Debtors for their utility service.  NV Energy service meters are read on a monthly basis.  On the date that a meter is read, NV Energy has already delivered approximately thirty days of service for which no payment has been received (*Day 30*).  As a general rule, approximately two to three days after a meter is read, NV Energy issues an invoice (*Day 33*). Payment of the invoice is due upon receipt (*Day 35*), but is not delinquent until fifteen (15) days after issuance of the invoice (*Day 48*).  Once an invoice is delinquent, NV Energy is required by Rule 6 of the NV Energy Tariff to send a written notice of termination to the customer.  NV Energy cannot terminate service until the expiration of ten (10) days after delivery of the termination notice to a United States Post Office (*at the earliest, Day 58*).  Additional time invariably passes before service is actually terminated by NV Energy.  Therefore, NV Energy customarily provides businesses such as those of the Debtors with more than fifty-eight (58) days of utility service at a particular location before it can terminate service.  This very substantial risk has resulted in formal recognition by Rule 13 of NV Energy's Tariff that a deposit equal to two (2) months average gas service is reasonable and appropriate.

18.     Under virtually any canon of statutory construction, it is inconceivable that a deposit based upon 14 days average service is "adequate assurance of payment" for 58 or more

days of service. The Proposed Deposit should not be endorsed by this Court as being consistent with the requirements of Section 366.

19.    The Utility Motion is also flawed because the Debtors propose to furnish the Proposed Deposit only to those utilities that request it. See In re Viking Offshore, Inc., No. 08-31219-H3-11, 2008 WL 782449 at *3 (Bankr. S.D. Tex. March 20, 2008). This violates paragraph (c)(2) of Section 366 which authorizes service refusal, modification or termination if the utility "does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." *(emphasis added)*. Although 11 U.S.C. § 366(c)(3) authorizes a court to modify the amount of assurance of payment, it does not permit a debtor to shift the burden to utilities to have to request assurance of payment.

20.    The Utility Motion must also be denied because it couples acceptance of the Proposed Deposit by a utility with a waiver of the ability to request additional assurance of payment later in the bankruptcy case. Whether an assurance of payment is "adequate" at the inception of a bankruptcy case is not necessarily indicative of what will be adequate as the case progresses. Section 366 neither states nor implies that the acceptance of security at the commencement of a chapter 11 case is grounds for a waiver of a utility's statutory rights.

## RELIEF REQUESTED

21.    Based upon the foregoing, NV Energy requests that the Court enter an order (i) denying the Utility Motion and vacating the Interim Order; (ii) requiring the Debtors to provide NV Energy a cash deposit in the amount of $78,850, which amount is approximately equal to the charges for two months average service based on the Debtors' account history for the twelve

1043382.1

months preceding the Petition Date; and (iii) granting to NV Energy such other, further and additional relief as the Court deems proper.

Dated: June 15, 2009

/s/ Eric T. Ray
Eric T. Ray
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone (205) 251-8100
Facsimile (205) 226-8799

*Attorney for Sierra Pacific Power Company d/b/a NV Energy*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been filed and delivered via filing on the Court's CM/ECF system to all persons receiving notice thereunder and upon the following by U.S. mail, properly addressed and postage prepaid, on the 15th day of June, 2009:

Pablo Falabella, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153

Mr. Mike Demsky
General Motors Corporation
30200 Mound Road
Engineering Bldg., M/C 480-111-W65
Warren, MI  48090

United States Trustee
33 Whitehall Street, 21st Floor
New York, NY  10004


/s/ Eric T. Ray_____
Of Counsel

1043382.1