**KELLEY DRYE & WARREN LLP**
James S. Carr, Esq.
Eric R. Wilson, Esq.
101 Park Avenue
New York, New York 10178
Tel: 212-808-7800
Fax: 212-808-7897

*Attorneys for BP Canada Energy Marketing Corp. and BP Energy Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| GENERAL MOTORS CORP., *et al.*, | Case No. 09-50026 (REG) (Jointly Administered) |
| Debtors. | |

**OBJECTION OF BP CANADA ENERGY MARKETING CORP. AND BP ENERGY COMPANY TO THE MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

BP Canada Energy Marketing Corp. ("BP Canada") and BP Energy Company ("BP Energy" and, together with BP Canada, collectively, "BP"), by and through their counsel, Kelley Drye & Warren LLP, hereby object (the "Objection") to granting the relief requested by the above-captioned debtors (the "Debtors") in their Motion For Entry Of Order, Pursuant To §§ 105(a) And 366, (I) Approving Debtors' Proposed Form of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service (Docket No. 58) (the "Utility Motion"). In support of this Objection, BP represents as follows:

## PRELIMINARY STATEMENT

1. The Debtors seek to compel BP to continue to provide natural gas to certain of the Debtors' facilities (the "Facilities"), under at least three Base Contracts (defined below), by deeming BP a utility. Such relief should not and cannot be granted for the following reasons:

2. First, it is inappropriate of the Debtors to seek – by way of a utility order or otherwise – an injunction prohibiting BP from exercising its right to terminate the Base Contracts. Section 556 of the Bankruptcy Code expressly prohibits any injunction that seeks to compel BP to sell natural gas to the Debtors because all existing transactions under the Base Contracts are forward contracts. Section 556 of the Bankruptcy Code provides, among other things, that neither the automatic stay nor an "order of a court in any proceeding under this title," which includes the injunctive relief sought in the Utility Motion, applies to contracts between a debtor and a forward contract merchant under a forward contract.

3. Second, BP is not a utility subject to section 366 of the Bankruptcy Code. Section 366 of the Bankruptcy Code is not intended to create rights for debtors against entities that do not operate as monopolies. BP is merely a marketer of natural gas and the Debtors can obtain natural gas from other marketers and local distributors. As such, BP is not a monopoly.

## BACKGROUND

4. BP and the Debtors entered into at least three Base Contracts for Sale and Purchase of Natural Gas (the "Base Contracts").[1] This Base Contracts are the standard NAESB agreements used by BP in connection with sales of natural gas to its customers. The Base

---

[1] One of the Base Contracts was initially entered into by Noble Energy Marketing, Inc. ("Noble") and General Motors Corporation. Noble was acquired by BP Canada on January 1, 2006 and its interests in this contract were assumed by BP Canada.

Contracts set forth the terms and conditions for future sales of natural gas by BP to the Debtors through oral and/or written confirmations.[2]

5. On June 1, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the day after the Petition Date, the Debtors filed the Utility Motion. Exhibit A to the Utility Motion lists BP Canada and BP Energy as utilities that must continue to provide natural gas to the Debtors in accordance with section 366 of the Bankruptcy Code.

## OBJECTION

### A. The Base Contracts Are Forward Contracts That BP May Terminate At Will Without Further Court Order

6. The Base Contracts expressly provide that they are "forward contract" under the Bankruptcy Code. Specifically, each of the Base Contracts state that the transactions under the contract "constitute a 'forward contract' within the meaning of the United States Bankruptcy Code" and that the parties are each "'forward contract merchants' within the meaning of the United States Bankruptcy Code." *See* Base Contracts, Section 10.5. Thus, there should be no dispute over whether the Base Contracts are forward contracts.

7. The characterization of the Base Contracts as "forward contracts" is supported by the language of the Bankruptcy Code. Pursuant to section 101(25) of the Bankruptcy Code:

> The term "forward contract" means -
>
> (A) *a contract* (other than a commodity contract, as defined in section 761) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into, including, but not

[2] Due to the proprietary nature of some of the terms of the Base Contracts, redacted copies of the Base Contracts are attached hereto as Exhibit A. To the extent required, BP is prepared to submit under seal, unredacted versions to the Court.

> limited to, a repurchase or reverse repurchase transaction (whether or not such repurchase or reverse repurchase transaction is a "repurchase agreement," as defined in this section), consignment, lease, swap, hedge transaction, deposit, loan, option, allocated transaction, unallocated transaction, or any other similar agreement.

11 U.S.C. § 101(25).

8. The Base Contracts fall within this definition. All existing transactions under the Base Contracts cover purchases of natural gas, a freely traded commodity on the New York Mercantile Exchange and numerous private exchanges and marketplaces, having a maturity date more than two days into the future. Pursuant to all existing transactions under the Base Contracts, the Debtors purchase natural gas from BP upon written or oral confirmations of specified price and quantity, for delivery more than two days from the date of such agreement.

9. Further, in a "forward contract," the parties usually expect to make actual delivery. *In re Borden Chemicals and Plastics*, 336 B.R. 214, 218 (Bankr. D. Del. 2006) (*quoting In re Olympic Natural Gas Co.*, 294 F.3d at 741 (*citing Nagel v. ADM Investor Servs., Inc.*, 217 F.3d 436, 441 (7th Cir. 2000)) (holding that when eventual delivery of commodity is reasonably assured, the contract is a forward contract); *CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573, 579 (9th Cir. 1982) (stating that forward contract is "predicated upon the expectation that delivery of the actual commodity by the seller to the original contracting buyer will occur in the future"); *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 990 (8th Cir. 1999) ("[I]t is the contemplation of physical delivery of the subject commodity that is the hallmark of an unregulated cash-forward contract.") *see also See Natural Gas Distributors, LLC v. E.I. du Pont*, No. 07-2103, 2009 WL 325436 (4th Cir. Feb. 11, 2009). As such, the Base Contracts are

contracts for the "purchase, sale, or transfer of a commodity,"[3] with the underlying transactions having a maturity date more than two days into the future.[4]

10. Because all existing transactions under the Base Contracts fit squarely within the definition of a "forward contract," the safe harbor provisions of section 556 automatically apply and inquiry into extrinsic evidence is neither necessary nor appropriate. *See, e.g., Calyon New York Branch v. American Home Mortgage Corp.* (*In re American Home Mortgage Corp.*), 379 B.R. 503 (Bankr. D. Del. 2008) ("[I]f the definition of [the financial transaction] is met, the . . . safe harbor provisions apply, period.").

11. Similar contracts for the future sales of natural gas have been recognized in bankruptcy as being within the Bankruptcy Code's definition of "forward contracts" because they contain a hedging component. *See, e.g., In re Borden Chemicals and Plastics*, 336 B.R. at 221-22 (quoting the House Report: "the principal purpose [sic] a forward contract is to hedge against possible fluctuations in the price of a commodity," H.R. Rep. No. 101-484, at 4 (1990), U.S. Code Cong. & Admin. News 1990, pp. 223, 226, and the Senate Report: "[f]orward contracts play a central role in the movement of commodities among producers and users, as well as in the hedging of risks associated with these and other transactions").

---

[3] 11 U.S.C. § 101(25)(A). Section 101(25) of the Bankruptcy Code refers to section 761(8) for the definition of a commodity which in turn adopts the definition of "commodity" found in the Act. The Act is defined in section 761(1) as the Commodity Exchange Act. 7 U.S.C. § 1 *et seq.* In turn, section 1(a)(4) of the Commodity Exchange Act defines "commodity" to include natural gas. *In re Mirant Corp.*, 310 B.R. 548, 565 n.25 (Bankr. N.D. Tex. 2004); 5 Collier on Bankruptcy 556.02[2], at 556-5 (Lawrence P. King ed., 15th ed. 2002) ("Thus, the terms 'commodity contract' and 'forward contract,' taken together, seamlessly cover the entirety of transactions in the commodity and forward contract markets, whether exchange-traded, regulated, over-the-counter or private.").

[4] *See In re Mirant Corp.,* 310 B.R. at 565 n.26 (Bankr. N.D. Tex. 2004). The term "maturity" means the due date for the commencement of performance. Moreover, "maturity date" is not limited to a single date and the House Report on section 101(25) clearly contemplates a series of transactions. H.R. Rep. No. 101-484, p.4 (1990), U.S. Code Cong. & Admin. News 1990, pp. 223, 226 ("[A] forward contract merchant often has a series of forward contracts with the same customer, which are set off and 'netted out.' Legislation was enacted in 1982 to permit a non-defaulting forward contract merchant to terminate and net out forward contracts when the other party files a bankruptcy petition.").

12. BP is also a "forward contract merchant" as defined by section 101(26) of the Bankruptcy Code.[5] As held by the *Mirant* court, "a forward contract merchant is a person that, in order to profit, engages in the forward contract trade as a merchant or with a merchant." *In re Mirant*, 310 B.R. at 568. BP, in order to profit, engages in the forward contract trade, as a merchant and with other merchants.

13. Since all existing transactions under the Base Contracts are forward contracts entered into by forward contract merchants, special creditor protections mandated by Congress apply. Namely, BP is free to terminate the Base Contracts at will. Under section 556 of the Bankruptcy Code, "[t]he contractual right of a … forward contract merchant to cause the liquidation of a … forward contract because of a condition of the kind specified in section 365(e)(1) of this title [conditions relating to filing bankruptcy, insolvency or financial condition] . . . shall not be stayed, avoided, or otherwise limited by operation of any provision under this title or by the order of a court in any proceeding under this title." 11 U.S.C. § 556.

14. Thus, section 556 dictates that the rights of BP to terminate the Base Contracts remain undisturbed by either (i) the automatic stay or (ii) an "order of a court in any proceeding under this title," which includes any interim or final order granting the relief sought in the Utility Motion, that forbids BP from "altering, refusing, or discontinuing service to, or discriminating against, the Debtors solely on the basis of the commencement of these chapter 11 cases or a debt that is owed by the Debtors for services rendered prior to the Commencement Date." Because BP has the right to terminate the Base Contracts – as it is permitted to do without a court order

---

5 Section 101(26) of the Bankruptcy Code provides:

> "forward contract merchant" means a Federal reserve bank, or an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity; (as defined in section 761), or any similar good, article, service, right or interest which is presently or in the future becomes the subject of dealing in the forward contract trade.

(continued…)

under section 556 of the Bankruptcy Code – the utility order cannot and should not interfere with this right.

**B. <u>BP Is Not A Utility</u>**

15. Finally, BP is not a utility for purposes of section 366 of the Bankruptcy Code. Section 366 of the Bankruptcy Code provides:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

16. The Bankruptcy Code does not provide a definition of the term "utility." However, the legislative history of section 366 of the Bankruptcy Code indicates that Congress intended section 366 to apply only to those "utilities" that have a special position with respect to the debtor.[6] Utilities may include, for example, "an electric company, gas supplier, or telephone company that is a monopoly in the area so the debtor cannot easily obtain comparable services from another utility." House Report No. 95-595 at 350.

---

(…continued)
11 U.S.C. § 101(26).

[6] The legislative history to section 366 of the Bankruptcy Code states, in relevant part:

> This section gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility. The utility may not alter, refuse, or discontinue service because of the nonpayment of a bill that would be discharged in the bankruptcy case.

(continued…)

17. Courts have generally held that section 366 of the Bankruptcy Code only applies to traditional "utilities." *See One Stop Realtour Place, Inc. v. Allegiance Telecom, Inc.*, 268 B.R. 430, 436 (Bankr. E.D. Pa. 2001) (telephone company is within the meaning of a utility); *Kiriluk v. Chester Water Auth.*, 76 B.R. 979 (Bankr. E.D. Pa. 1987) (a provider of sewer service is a utility); *In re Gehrke*, 57 B.R. 97 (Bankr. D. Or. 1985) (an electric co-op association is a utility); *Good Time Charlie's Ltd. v. Black*, 25 B.R. 226 (Bankr. E.D. Pa. 1982) (shopping mall that supplied debtor with electricity was a utility). In each case, the debtor was dependent on the services provided by the utility and such services were unavailable from any other source. In other words, the utility enjoyed a monopolistic position.

18. BP does not have a monopoly over the sale of natural gas to the Debtors for the Facilities and there are other providers of natural gas that are available to the Debtors. Because BP is not a utility under section 366 of the Bankruptcy Code, the Court should exempt BP from the relief sought in the Utility Motion.

---

(…continued)
House Report No. 95-595, 95th Cong., 1st Sess. 350 (1977); *see* Senate Report No. 95-989, 95th Cong., 2d Sess. 60 (1978) (emphasis added).

19. **WHEREFORE**, BP Canada and BP Energy respectfully request that the Court find the relief sought in the Utility Motion is not applicable to either of BP Canada and BP Energy, and grant such other relief as may be just and proper.

Dated: New York, New York
June 15, 2009

**KELLEY DRYE & WARREN LLP**

By: */s/ James S. Carr*
James S. Carr, Esq.
Eric R. Wilson, Esq.
101 Park Avenue
New York, New York 10178
Tel: 212-808-7800
Fax: 212-808-7897

*Attorneys for BP Canada Energy Marketing Corp. and BP Energy Company*

**CERTIFICATE OF SERVICE**

I, Jordan A. Bergman hereby certify that on June 15, 2009, a true and correct copy of the *OBJECTION OF BP CANADA ENERGY MARKETING CORP. AND BP ENERGY COMPANY TO THE MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING* was filed via this Court's CM/ECF system and served on June 15, 2009 on those parties listed below via U.S. Mail.

General Motors Corporation
30200 Mound Rd.
Engineering Bldg, M/C 480-111-W65,
Warren, MI 48090
Attn: Mike Demsky

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Pablo Falabella

/s/ Jordan A. Bergman
Jordan A. Bergman

3