FOLEY & LARDNER LLP
Ann Marie Uetz *(Pro Hac Vice Pending)*
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Kyklos Bearing International*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |

----------------------------------------------------------------X

**OBJECTION OF KYKLOS BEARING INTERNATIONAL TO
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND CURE AMOUNTS RELATED THERETO**

Kyklos Bearing International ("Supplier"), by its attorneys Foley & Lardner LLP, hereby submits this objection (the "Objection") to the Debtors' assumption and assignment of certain executory contracts and the Debtor's proposed Cure Amounts related thereto. Supplier and Debtors continue to discuss resolution of this Objection; however, to preserve Supplier's position with respect to the assumption and assignment of its executory contracts, Supplier timely files this Objection with the Court. In support of its Objection, Supplier states as follows:

**PRELIMINARY STATEMENT**

1. Supplier is in receipt of that certain Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Real Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Assumption and

Assignment Notice"), dated June 5, 2009, in which the Debtors designate certain agreements (the "Assumable Executory Contracts") between Supplier and the Debtors that may be assumed and assigned to Vehicle Acquisition Holdings LLC (the "Purchaser").

2. As of this date, Supplier has not executed the essential supplier trade terms letter with GM. Therefore, Supplier has not consented to assumption of its contracts.

3. Supplier reserves its rights to object to any additional and/or amended notice of assumption and assignment received from the Debtors and/or the Purchaser and to any changes to the information contained on the secure website referenced in the Assumption and Assignment Notice.

## ARGUMENT

### I. The Proposed Cure Amount Is Inadequate

4. As of June 15, 2009, on the website referenced in the Assumption and Assignment Notice, the Debtors assert that the Cure Amount for the Assumable Executory Contracts is $1,127,684.12. The Debtors claim that this amount is sufficient to cure all prepetition defaults under the Designated Agreements as of June 1, 2009 (the "Commencement Date").

5. The proposed Cure Amount does not accurately reflect all prepetition defaults and is therefore insufficient.

6. The proposed Cure Amount does not include any post-petition defaults and is therefore insufficient.

7. Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). Congress'

2

intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). Resolution of claims of default arising under an assumed contract seeks to restore the debtor-creditor relationship to pre-default conditions, thereby bringing the contract back into compliance with its terms. *In re Wireless Data, Inc.*, 547 F.3d 484 (2d Cir. 2008).

8. Debtors must cure all defaults under the Assumable Executory Contracts, including pre-petition defaults and post-petition defaults.

9. The Debtors' proposed Cure Amount would deprive Supplier of the full benefit of its bargain and would fail to restore the parties to pre-default conditions.

10. The correct amount required to cure all prepetition and post-petition defaults is $1,135,219.49. This amount may be subject to change.

11. "Cure Amounts" are defined in the Master Sale and Purchase Agreement as "all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by the applicable Seller and assignment to Purchaser of the Purchased Contracts." The proposed Cure Amount does not include defaults accruing during the period after June 1, 2009. Supplier reserves the right to submit such additional amounts to be added to the amount stated in the paragraph above.

**II.    The Assumption and Assignment Notice Improperly Allows For the Assumable Executory Contracts to be Assumed Without Payment of the Cure Amount or Adequate Assurance of Prompt Cure**

12. Paragraph 8 of the Assumption and Assignment Notice provides in relevant part:

3

> If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable following resolution of such disputed Cure Amount.

13. The Assumption Effective Date is defined in Paragraph 14 of the Assumption and Assignment Notice as the later of the date proposed by the debtors, which date may be the Closing or a later date, and "the date following expiration of the Objection Deadline if no Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract."

14. The Assumption and Assignment Notice thus allows for the possibility that that the Assumable Executory Contracts will be assumed and assigned before a dispute as to the proper Cure Amount is resolved.

15. As noted above, Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A).

16. Further, Section 365(f)(2)(A) provides that the trustee may only assign a contract if "the trustee assumes such contract…in accordance with the provisions of this section." 11 U.S.C. § 365(f)(2)(A).

17. The Bankruptcy Code thus unequivocally requires that *before* a contract can be assumed or assigned, any defaults must either be cured or adequate assurance that a **prompt** cure

4

will be provided must be given. *See, e.g., In re Skylark Travel, Inc.*, 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990) ("[i]f the debtor wishes to assume the [contract] it must first cure the default as required by 11 U.S.C. § 365(b)").

19. The Assumable Executory Contracts should not be assumed and assigned to the Purchaser unless and until the Debtors or the Purchaser cure any defaults thereunder or give adequate assurance that a prompt cure will be provided.

### III. Reservation of Rights Regarding Adequate Assurance of Future Performance

19. Section 365(b)(1)(C) of the Bankruptcy Code provides that the trustee may not assume an executory contract in which there has been a default unless the trustee "provides adequate assurance of future performance under such contract." 11 U.S.C. § 365(b)(1)(C).

20. Where a debtor or its assignee fails to provide adequate assurance of future performance, assumption and assignment of the executory contract must be denied. *See, e.g., In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 65-66 (Bankr. S.D.N.Y. 2005) (debtor failed to provide adequate assurance of future performance, and therefore could not assume contract); *Skylark*, 120 B.R. at 355 (before debtor would be permitted to assume executory contract, debtor would be required to cure default and post bond or letter of credit).

21. To date, neither the Debtors, the proposed Purchaser, nor any other possible assignee has provided Supplier with adequate assurance of future performance under the Assumable Executory Contracts, including for amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount. The Debtors must provide adequate assurance to Supplier for all amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount. While it appears that the Purchaser will agree to assume all liabilities under the Assumable Executory Contracts, whether or not the Assumable Executory

5

Contracts will actually be assumed and assigned is not yet clear. Therefore, Supplier reserves all right with respect to adequate assurance for these amounts due and to object to assumption and assignment under section 365(b)(1)(C).

### IV. Supplier's Post-Sale Lien Rights in Tooling Cannot be Stripped Through Assumption and Assignment of the Designated Agreements

22. Supplier is a supplier to the Debtors and has in its possession certain tooling which is or was used for the production of parts for the Debtors (the "Tooling"). Supplier has a perfected possessory lien interest in the Tooling, pursuant to the Michigan Special Tools Lien Act, M.C.L. 570.541 et seq. (the "Special Tools Lien Act"), the Michigan Molder's Lien Act, M.C.L. 445.611 et seq. (the "Molder's Lien Act"), and/or other provisions of state law (together with the Special Tools Lien Act and the Molder's Lien Act, the "Lien Laws"). The Tooling is therefore Supplier's collateral to protect payment for the goods produced using the Tooling.

23. To the extent that the Supplier continues to produce parts using the Tooling for the Debtors, the Purchaser, or any assignee of the Assumable Executory Contracts, Supplier shall continue to benefit from a perfected security interest in the Tooling under the applicable Lien Laws.

24. To the extent that the assumption and assignment of the Assumable Executory Contracts proposed in the Assumption and Assignment Notice could have the effect of stripping Supplier of its continuing rights under the Lien Laws, Supplier objects.

### V. Preservation of Rights of Setoff and Recoupment

25. Among Supplier's most valuable rights in its relationship with Debtors are its rights of setoff and recoupment. These rights arise under the contract between Supplier and Debtors, federal or state statutes, or common law.

6

26.     The Assumption and Assignment Notice fails to properly preserve the validity, extent or priority of such setoff or recoupment rights. These rights must be preserved as against Debtors and against Purchaser upon the assumption and assignment of the Supplier's contracts. The preservation of post-assignment rights of setoff and recoupment is just as significant an interest of Supplier as are its pre-assignment rights against Debtors.

## RELIEF REQUESTED

WHEREFORE, Supplier requests that the Court enter an order denying the Debtor's request to assume and assign the Assumable Executory Contracts, and grant such other and further relief as the Court deems just and proper.

Dated:   June 15, 2009                    FOLEY & LARDNER LLP


/s/ Ann Marie Uetz
Ann Marie Uetz *(Pro Hac Vice Pending)*
FOLEY & LARDNER LLP
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Kyklos Bearing International*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
| In re: | : | Chapter 11 |
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |
---------------------------------------------------------------X

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2009, I caused the Objection Of Kyklos Bearing International To Assumption And Assignment Of Certain Executory Contracts And Cure Amounts Related Thereto to be served via U.S. Mail on the following at the addresses set forth below:

General Motors Corporation
Attn: Warren Command Center
Mail Code 480-206-114
30009 Van Dyke Avenue
Warren, Michigan 48090-9025

Weil, Gotshal & Manges LLP
Attorneys for the Debtors
Attn: Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq
767 Fifth Avenue
New York, New York 10153

U.S. Treasury
Attn: Matthew Feldman, Esq.
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C. 20220

Cadwalader, Wickersham & Taft LLP
Attn: John J. Rapisardi, Esq.
Attorneys for the Purchaser
One World Financial Center
New York, New York 10281

Vedder Price, P.C.
Michael J. Edelman, Esq.
Michael L. Schein, Esq.
Attorneys for Export Development Canada
1633 Broadway, 47th Floor,
New York, New York 10019

Office of the United States Trustee
Southern District of New York
Attn: Diana G. Adams, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004

8

Kramer Levin Naftalis & Frankel LLP
Attorneys for the Official Committee of
Unsecured Creditors
Attn: Gordon Z. Novod, Esq.
1177 Avenue Of The Americas
New York, NY 10036

Dated:   June 15, 2009                                    FOLEY & LARDNER LLP

/s/ Ann Marie Uetz
Ann Marie Uetz *(Pro Hac Vice Pending)*
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Kyklos Bearing International*

9