Hearing Date and Time: June 30, 2009 at 9:45 a.m.
Response Deadline: June 15, 2009

Ivan M. Gold
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
(415) 837-1515 (Telephone)
(415) 837-1516 (Facsimile)

Robert L. LeHane (RL 9422)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178-0002
(212) 808-7800 (Telephone)
(212) 808-7897 (Facsimile)

*Attorneys for LBA Realty Fund III – Company IX, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
**In re**                                                    :    **Chapter 11**
                                                             :
**GENERAL MOTORS CORP.,** *et al.,*    :    :    **Case No. 09-50026 (REG)**
                                                             :
**Debtors.**                                            :    **(Jointly Administered)**
---------------------------------------------------------------x

**LIMITED OBJECTION OF LBA REALTY FUND III – COMPANY IX, LLC
TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY,
AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY
AND (II) CURE AMOUNTS RELATED THERETO**

LBA Realty Fund III – Company IX, LLC ("Landlord"), by its undersigned counsel, hereby responds to the *Notice of (I) Debtor's Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* (hereinafter "Cure Notice"), dated June 5, 2009.

1

762774.01

As set forth below, Landlord does not object to the proposed assumption and assignment of the Lease in connection with the sale of Debtors' assets to the "new GM" but does object to certain aspects of the proposed sale transaction that fail to provide adequate assurance of future performance of accruing lease obligations and a cure of existing non-monetary defaults. Landlord further objects to the purported grant of occupancy rights to Purchaser prior to the designation of leases for assumption and assignment. In support thereof, Landlord respectfully states:

## BACKGROUND

1. General Motors Corporation and its affiliated co-debtors (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on June 1, 2009. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. On or about March 7, 2008, LBA Realty Fund III – Company IX, LLC, as landlord, and debtor General Motors Corporation ("Tenant"), as tenant, entered into that certain written Lease (the "Lease") for certain real property located at and commonly known as 301 Freedom Drive, City of Roanoke, Denton County, Texas (the "Premises"). The Premises have been developed with a 404,500 building, utilized by Tenant as a warehouse and distribution center. The initial term of the Lease is scheduled to expire March 31, 2018, with five (5) options to extend the term of the Lease of five (5) years each in favor of Tenant.

3. On June 1, 2009, Debtors filed their *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to The Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims,*

2

762774.01

*Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing* [Docket No. 92] (the "Sale Approval Motion").

4.      On June 2, 2009, this Court entered its Order approving Debtors' proposed bidding and sale procedures [Docket No. 274], which includes procedures regarding the proposed assumption and assignment of Debtors' leases and executory contracts.

5.      On June 5, 2009, the Debtors served the Cure Notice, identifying the Lease as among the "Assumable Executory Contracts"[1] that may be assumed and assigned to Vehicle Acquisition Holdings, LLC, the proposed Purchaser under the Master Sale and Purchase Agreement accompanying the Sale Approval Motion. Debtors assert that the amount necessary to cure defaults under the Lease is zero and Landlord agrees that "Basic Rent" under the Lease has been paid on a current basis. However, such Cure Notice fails to address non-monetary covenants under the Lease.

### DEBTORS MUST CURE EXISTING DEFAULTS AND PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE IN ORDER TO ASSUME AND ASSIGN THE LEASE

6.      Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume the lease. As on court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985). By its terms, Bankruptcy Code section 365(b)(1) is not limited to monetary obligations.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning defined in the Sale Approval Motion.

7. It is well-established that Debtors bear the ultimate burden of presentation and persuasion that a lease is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D.Tenn. 1990); *In re Memphis-Fridays Associates*, 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762, F.2d 1303, 1309 (5th Cir. 1990).

### Cure of Non-Monetary Defaults

8. Section 9(a) of the Lease provides, in part, that "Tenant, at its sole cost and expense, shall maintain the Demised Premises in good condition (ordinary wear and tear excepted) and make all necessary repairs thereto, of every kind and nature whatsoever, whether interior or exterior, ordinary or extraordinary, structural or nonstructural, or foreseen or unforeseen, in each case as required by Section 10 and on basis reasonably consistent with the operation and maintenance of commercial properties owned or leased by Tenant comparable in type and location to the Demised Premises subject, however, to the provisions of Section 18 (Destruction) and Section 19 (Eminent Domain)."

9. On or about March 30, 2009, the roof of the Premises sustained significant damages as a result of a severe hail storm. To date, Tenant has failed to effectuate repairs resulting from such damage. To Landlord's knowledge, the following items are in need of repair: (a) ninety-six (96) domed skylights sustained damage and need to be repaired or replaced, (b) the PVC roof to the Premises, which is under a 20-year warranty through 2021, sustained damage in that an approximately 100-foot section of the roof was blown away from the parapet wall and needs to be repaired, (c) copper piping that direct condensate from the heating, ventilation and air conditioning (HVAC) system was also blown away and there is approximately 200 feet of

4

copper pipe that needs to be repaired or replaced. Inspection of the roof as a result of the storm damage also revealed that roof drains are not being properly maintained, as evidenced by vegetation growing in the roof drains. Such items must be repaired in accordance with the terms of the Lease or Landlord must be provided with adequate assurance that such repairs will be promptly performed.

10. Section 16 of the Lease provides that Tenant shall obtain and maintain certain insurance coverage, as more particularly provided in the Lease, and provide evidence of such coverage through certificate(s) of insurance, naming Landlord as an additional insured under all liability policies (other than workers' compensation and employers liability). Tenant has failed to provide Landlord with a certificate of insurance in the proper form, evidencing that the proper entity name for Landlord is identified as an additional insured, notwithstanding written requests therefore. A copy of the most recent written request to Tenant that it provide an updated and corrected certificate of insurance, dated March 16, 2009, is attached hereto as Exhibit "1" and incorporated herein by this reference. A corrected insurance certificate must be provided.

11. Section 4(a) of the Lease provides, in pertinent part, that Tenant's use and occupancy of the Premises shall be "in compliance with any declarations, covenants, restrictions, agreements, rules, regulations and deed restrictions applicable to the Demised Premises...." The Premises are subject to the Amended and Restated Declaration of Covenants, Restrictions and Easements (the "Declaration") for Alliance Gateway Phase III Association (the "Association"). Dues and assessments owing to the Association, in the sum of $3,928.74, are currently due and unpaid and certain conditions at the Premises requiring modification or repair to comply with the Declaration remain unperformed. A copy of the March 14, 2008 correspondence from the Association to Tenant, describing conditions in need of remediation and/or repair is attached

hereto Exhibit "2" and incorporated herein by this reference.

## Adequate Assurance of Future Performance

12. Adequate assurance of future performance is clearly an element of the assumption and assignment process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(C), (f)(2). While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Industries, Inc.*, 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985). Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.*, 100 B.R. 147, 148-149 (Bankr. D.Conn. 1989). *See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3rd Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach.")

13. In addition to regularly accruing monthly "Basic Rent" under the Lease, which has been paid on a current basis, Tenant is responsible for payment of any real property taxes and assessments levied against the Premises or improvements thereon, as more particularly provided in Section 5 of the Lease. Real property taxes with respect to the Premises are billed by the Denton County Tax Assessor-Collector in arrears, with 2009 real property taxes and assessment to be billed in October or November 2009 and due in January 2010. The current estimate of the amount of 2009 real property taxes for the Premises is $257,360.88.

14. Landlord is entitled to adequate assurance that such real property tax obligations will be paid when billed in the future. In order to satisfy the adequate assurance requirements of

Bankruptcy Code section 365(b)(1)(C), and ensure that the assumption of the "is subject to all the provisions thereof..." (11 U.S.C. §365(b)(3)(C)), either such real property tax obligations, which are not due under the terms of the Lease, should either (i) be payable by any assignee of Tenant's interest in the Lease and any order establishing cure amounts should so provide notwithstanding Section 2.3(a)(xi) of the Master Sale and Purchase Agreement, which purports to limit the assumption of Debtors' liability (the "Assumed Liabilities") to "all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets *after the Closing*." (Emphasis added.) The "Purchased Assets" include "all Owned Real Property and Leased Real Property" (Section 2.2(a)(vi) of the Master Sale and Purchase Agreement), and thus, through the limitation on Assumed Liabilities, the Master Purchase and Sale Agreement seeks to preclude liability of the Purchaser for that portion of 2009 real property taxes attributable to pre-closing time periods, or (ii) Debtors must make arrangements for payment of any pre-closing pro-rated portion of accruing real property tax obligations by establishment of a segregated, reserve account for that purpose.

15. Under Section 365(k) of the Bankruptcy Code, a debtor is relieved from any liability under a contract if the contract is completely assigned to a third party. As a matter of law, however, the debtor is not entitled to the benefits and protections of Section 365(k) where the debtor does not assume and assign the contract *cum onere* – with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee, such as the Master Sale and Purchase Agreement here, attempts to limit the obligations assumed by the assignee only to obligations arising after the closing (see, e.g., Section 2.2(a)(vi) of Master Sale and Purchase Agreement), there has not been a complete assignment and the debtor is not entitled to the

762774.01

protections of Section 365(k). *Id.* at 81.

16.   Section 15 of the Lease contains a broad indemnification provision, generally providing that "Tenant shall indemnify, defend, protect and save harmless Landlord from and against any and all liability, damage, penalties or judgments arising from injury to person or property sustained by anyone in and about the Demised Premises resulting from any acts or omissions of Tenant, or Tenant's officers, agents, invitees, servants, employees, subtenants, assignees, or contractors..."[2] Claims may be asserted as a result of events or incidents that may have occurred at the Premises prior to any assignment, but which are not made known to Landlord, Debtors or any assignee until after the assignment. The Master Sale and Purchase Agreement purports to exclude Purchaser's liability for such indemnification claims,[3] contrary to the express terms of the Lease sought to be assumed and assigned and the requirements of Section 365 of the Bankruptcy Code. Accordingly, in order to cure possible pre-assignment non-monetary defaults and provide adequate assurance of future performance with respect to the indemnity and insurance obligations under the Lease, either (a) the assignee must be required to assume all responsibility for any and all such claims, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential future pre-assignment claims.

---

[2]   The Lease contains additional specific indemnification provisions with respect to such matters as compliance with laws (Section 10(b)(ii) of Lease), mechanics' liens (Section 11(a)) and use of hazardous materials (Section 23(c)(i)).

[3]   *See, e.g.,* Section 2.3(a)(xi) (purporting to exclude pre-closing liabilities for Purchaser's assumption of Leases) and Section 2.3(a)(viii) and 2.3(b)(iv)(purporting to exclude environmental liability for pre-closing conditions on Transferred Real Property from assumed obligations) of the Master Sale and Purchase Agreement.

8

762774.01

## PURCHASER'S "TEST DRIVE" OF UNASSUMED LEASE LOCATIONS IS INAPPROPRIATE AND SHOULD NOT BE APPROVED

17.     The Master Sale and Purchase Agreement between Debtors and Purchaser proposes that Purchaser have thirty (30) calendar days following the Closing Date (the "Executory Contract Designation Deadline") to determine and designate those Executory Contracts (which include unexpired nonresidential real property leases as defined in Section 1.01 of the Master Sale and Purchase Agreement) which it elects to assume. (Section 6.6 of Master Sale and Purchase Agreement). While the sale of lease designation rights has been approved in other Chapter 11 cases, *see, e.g, In re Ames Department Stores, Inc*, 287 B.R. 112, 117 (Bankr. S.D.N.Y. 2002); *In re Ernst Home Center, Inc.*, 209 B.R. 974 (W.D. Wash. 1997), the proposed Master Sale and Purchase Agreement goes further than a conventional designation rights arrangement and purports to grant the Purchaser relief far beyond that authorized by Bankruptcy Code section 365.

18.     There is no authority for Debtors and Purchaser to manufacture a new form of occupancy merely through contract provisions purporting to allow Purchaser to continue to operate at Debtors' leased properties, including the Premises, until such time as Purchaser elects to designate a particular lease for assignment to Purchaser. In the interim, "Purchaser shall be obligated to pay or cause to be paid all amounts due in respect of Seller's performance" under such leases. (Section 6.6(d) of Master Sale and Purchase Agreement.) Such an arrangement is nothing more than a *de facto* assignment of one or more leases contrary to any assignment restrictions (see Section 13(a) of Lease) and without compliance with the cure and adequate assurance requirements of Bankruptcy Code sections 365(b)(1)(A)-(B) and (f). Such arrangement also reflects an overly simplistic view of the nature of Tenant's lease obligations, ignoring ongoing repair and maintenance, indemnification and compliance with laws obligations

9

and the risk of loss in the event of damage or casualty.

19. There is no basis for a bankruptcy court to grant a non-debtor party rights to use and occupy real property leased by a debtor outside the parameters of Section 365. *See, e.g., In re Antwerp Diamond, Inc.*, 138 B.R. 865, 866-869 (Bankr. N.D. Ohio 1992). In *In re Antwerp Diamond*, the court faced a situation similar to that presented in the instant case. There, the court denied approval of a proposed sale of the debtor's assets where the purchaser would have been permitted to conduct going out of business sales in shopping center locations leased by the debtor because the sale would have constituted an implicit assignment of the leases without first satisfying the strictures of Bankruptcy Code section 365(b). *In re Antwerp Diamond, Inc., supra,* 138 B.R. at 866-69.

20  Purchaser should not be permitted a "test drive" through the creation of some new form of occupancy merely by the stroke of a pen, permitting it to operate at Debtor's locations whose leases are not assumed at Closing while it decides whether it wants to assume a particular lease. Accordingly, Section 6.6 of the Master Sale and Purchase Agreement should not be approved as presented.

762774.01

## **RESERVATION OF RIGHTS**

Given the nature of expedited relief sought by Debtors and Purchaser, Landlord reserves the right to make such other and further objections as may be appropriate based upon any new information provided by Debtor or the proposed Purchaser or upon any different relief requested by Debtor, or as may be developed through formal or informal discovery.

Dated: June 15, 2009

        Ivan M. Gold
        ALLEN MATKINS LECK GAMBLE MALLORY
        & NATSIS LLP
        Three Embarcadero Center, 12th Floor
        San Francisco, CA 94111-4074
        Telephone: (415) 837-1515
        Facsimile: (415) 837-1516
        E-mail: igold@allenmatkins.com

        -and-

        /s/ Robert L. LeHane
        Robert L. LeHane (RL 9422)
        KELLEY DRYE & WARREN LLP
        101 Park Avenue
        New York, NY 10178-0002
        Telephone: (212) 808-7800
        Facsimile: (212) 8080-837-1516
        E-mail: rlehane@kelleydrye.com

        *Attorneys for LBA Realty Fund III – Company IX, LLC*

# EXHIBIT 1



17901 Von Karman, Suite 460 | Irvine, California 92614
949.752.2220 | Fax 949.752.2516 | www.LBArealty.com

March 16, 2009

Mr. Les Ingram
General Motors Corporation
301 Freedom Drive
Roanoke, TX 76262

RE:   CERTIFICATE OF INSURANCE – 301 FREEDOM DRIVE, ROANOKE TX

Dear Les:

Our records indicate we do not have an updated insurance certificate for the above referenced locations with this; we ask that you please furnish, at your earliest convenience, to LBA, a certificate of insurance naming the following as additional insured's:

LBA Realty Fund III – Company IX, LLC
and LBA Realty, LLC
17901 Von Karman, Suite 460
Irvine, CA 92614

Please do not hesitate to contact me if you have any questions regarding the enclosed documents (949) 955-9394.

Sincerely,

Dionne Mulcahy
Senior Property Manager

Enclosure

# ACORD. EVIDENCE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY) 03/04/2009

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | PHONE (A/C, No, Ext): 313-393-6800  6509 | COMPANY |
|---|---|---|
| MARSH USA INC.<br>ATTN: SHIRLEY ANN MATLUKA<br>600 RENAISSANCE CENTER<br>SUITE 2100<br>DETROIT, MI 48243<br>013392-GM-PROP-09/160         TX | | Various - See Below |
| FAX (A/C, No): 313-393-6504 | E-MAIL ADDRESS: Shirley.A.Rogers@marsh.com | RECEIVED MAR 1 2 2009 |
| CODE: | SUB CODE: | |
| AGENCY CUSTOMER ID #: | | |

INSURED:
GENERAL MOTORS CORPORATION
INCLUDING ITS DIVISIONS AND SUBSIDIARIES
MAIL CODE 482-C19-C36
300 RENAISSANCE CENTER
DETROIT, MI 48265-3000

| LOAN NUMBER | POLICY NUMBER |
|---|---|
| | GIL501-09 |
| EFFECTIVE DATE | EXPIRATION DATE | CONTINUED UNTIL TERMINATED IF CHECKED |
| 03/01/2009 | 03/01/2010 | |

THIS REPLACES PRIOR EVIDENCE DATED:

## PROPERTY INFORMATION

LOCATION/DESCRIPTION
INSURED: GENERAL MOTORS CORPORATION - REAL AND PERSONAL PROPERTY LOCATED AT: SPO - 310 FREEDOM DRIVE, ROANOKE, TX 76262

LOSS PAYEE AND ADDITIONAL INSURED: LBA REALTY FUND III SPE AND LBA REALTY LLC
SEE ADDITIONAL INFORMATION PAGE

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE / PERILS / FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| ALL RISK OF PHYSICAL LOSS OR DAMAGE (Subject to Policy Terms and Conditions) | 18,365,283 | 500,000 |
| REPLACEMENT COST | | |
| AMOUNT OF INSURANCE EVIDENCED INCLUDES: | | |
| CONTENTS, FIXTURES, EQUIPMENT, IMPROVEMENTS & BETTERMENTS | | |
| BUSINESS INCOME / RENTAL VALUE | 1,334,685 | |
| BOILER & MACHINERY | | |
| FLOOD & EARTHQUAKE | | |
| WIND / HAIL | | |
| TERRORISM EXCLUDED | | |

## REMARKS (Including Special Conditions)

GENERAL INTERNATIONAL LIMITED (REINSURED BY THE FOLLOWING CARRIERS):

ARCH BERMUDA        LEXINGTON
AWAC                LLOYD'S OF LONDON
AXIS USA            MUNICH RE
GEP II              SCOR RE
HANNOVER RE

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

ADDITIONAL INTEREST       CHI-002197180-08

| NAME AND ADDRESS | | MORTGAGEE | X | ADDITIONAL INSURED |
|---|---|---|---|---|
| | | X LOSS PAYEE | | |
| LBA REALTY FUND III SPE | | LOAN # | | |
| C/O LBA REALTY LLC | | | | |
| 17901 VON KARMAN | | AUTHORIZED REPRESENTATIVE | | |
| SUITE 950 | | of Marsh USA Inc. | | |
| IRVINE, CA 92614 | | BY: John C Hurley | | |

*please correct*

ACORD 27 (2006/07)                                                                    © ACORD CORPORATION 1993-2006. All rights reserved.