FOLEY & LARDNER LLP
Ann Marie Uetz *(Pro Hac Vice Pending)*
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Jernberg Industries, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                                  :        Chapter 11
                                                        :
GENERAL MOTORS CORP., *et al.*,                         :        Case No. 09-50026 (REG)
                                                        :
                            Debtors                     :        Jointly Administered
                                                        :
---------------------------------------------------------------X

## OBJECTION OF JERNBERG INDUSTRIES, INC. TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND CURE AMOUNTS RELATED THERETO

Jernberg Industries, Inc., a subsidiary of HHI Forging, Inc. ("Supplier"), by its attorneys Foley & Lardner LLP, hereby submits this objection (the "Objection") to the Debtors' assumption and assignment of certain executory contracts and the Debtor's proposed Cure Amounts related thereto. Supplier and the Debtors have been and are negotiating concerning the assumption of contracts in this case. Supplier expects that these discussions will continue, and timely files this Objection to preserve all of its rights in this matter. In support of its Objection, Supplier states as follows:

### PRELIMINARY STATEMENT

1. Supplier is in receipt of that certain Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Real Property, and Unexpired Leases

DETR_1206464.2

of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "<u>Assumption and Assignment Notice</u>"), dated June 5, 2009, in which the Debtors designate certain agreements (the "<u>Assumable Executory Contracts</u>") between Supplier and the Debtors that may be assumed and assigned to Vehicle Acquisition Holdings LLC (the "<u>Purchaser</u>").  The Assumption and Assignment Notice incorrectly designated the counterparty as KPS Special Situations Fund LP.

2.    As of this date, Supplier has not executed the essential supplier trade terms letter with GM.  Therefore, Supplier has not consented to assumption of its contracts.

3.    Supplier reserves its rights to object to any additional and/or amended notice of assumption and assignment received from the Debtors and/or the Purchaser and to any changes to the information contained on the secure website referenced in the Assumption and Assignment Notice.

## ARGUMENT

### I.    The Proposed Cure Amount Is Inadequate

4.    In the exhibit to the Assignment Notice, the Debtors assert that the Cure Amount for the Assumable Executory Contracts is $100,000.  The Debtors claim that this amount is sufficient to cure all prepetition defaults under the Designated Agreements as of June 1, 2009 (the "<u>Commencement Date</u>").

5.    The proposed Cure Amount does not accurately reflect all prepetition defaults and is therefore insufficient.

6.    The proposed Cure Amount does not include any post-petition defaults and is therefore insufficient.

7.    Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the

2

trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). Congress' intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). Resolution of claims of default arising under an assumed contract seeks to restore the debtor-creditor relationship to pre-default conditions, thereby bringing the contract back into compliance with its terms. *In re Wireless Data, Inc.*, 547 F.3d 484 (2d Cir. 2008).

8. Debtors must cure all defaults under the Assumable Executory Contracts, including pre-petition defaults and post-petition defaults.

9. The Debtors' proposed Cure Amount would deprive Supplier of the full benefit of its bargain and would fail to restore the parties to pre-default conditions.

10. The correct amount required to cure all prepetition and post-petition defaults is approximately $1.1MM to $1.5MM. This amount may be subject to change.

11. "Cure Amounts" are defined in the Master Sale and Purchase Agreement as "all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by the applicable Seller and assignment to Purchaser of the Purchased Contracts." The proposed Cure Amount does not include defaults accruing during the period after June 1, 2009. Supplier reserves the right to submit such additional amounts to be added to the amount stated in the paragraph above.

**II.    The Assumption and Assignment Notice Improperly Allows For the Assumable Executory Contracts to be Assumed Without Payment of the Cure Amount or Adequate Assurance of Prompt Cure**

12. Paragraph 8 of the Assumption and Assignment Notice provides in relevant part:

3

> If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable following resolution of such disputed Cure Amount.

13.  The Assumption Effective Date is defined in Paragraph 14 of the Assumption and Assignment Notice as the later of the date proposed by the debtors, which date may be the Closing or a later date, and "the date following expiration of the Objection Deadline if no Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract."

14.  The Assumption and Assignment Notice thus allows for the possibility that that the Assumable Executory Contracts will be assumed and assigned before a dispute as to the proper Cure Amount is resolved.

15.  As noted above, Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A).

16.  Further, Section 365(f)(2)(A) provides that the trustee may only assign a contract if "the trustee assumes such contract…in accordance with the provisions of this section." 11 U.S.C. § 365(f)(2)(A).

17.  The Bankruptcy Code thus unequivocally requires that *before* a contract can be assumed or assigned, any defaults must either be cured or adequate assurance that a prompt cure

4

will be provided must be given. *See, e.g., In re Skylark Travel, Inc.*, 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990) ("[i]f the debtor wishes to assume the [contract] it must first cure the default as required by 11 U.S.C. § 365(b)").

18. The Assumable Executory Contracts should not be assumed and assigned to the Purchaser unless and until the Debtors or the Purchaser cure any defaults thereunder or give adequate assurance that a prompt cure will be provided.

### III. Reservation of Rights Regarding Adequate Assurance of Future Performance

19. Section 365(b)(1)(C) of the Bankruptcy Code provides that the trustee may not assume an executory contract in which there has been a default unless the trustee "provides adequate assurance of future performance under such contract." 11 U.S.C. § 365(b)(1)(C).

20. Where a debtor or its assignee fails to provide adequate assurance of future performance, assumption and assignment of the executory contract must be denied. *See, e.g., In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 65-66 (Bankr. S.D.N.Y. 2005) (debtor failed to provide adequate assurance of future performance, and therefore could not assume contract); *Skylark*, 120 B.R. at 355 (before debtor would be permitted to assume executory contract, debtor would be required to cure default and post bond or letter of credit).

21. To date, neither the Debtors, the proposed Purchaser, nor any other possible assignee has provided Supplier with adequate assurance of future performance under the Assumable Executory Contracts, including for amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount. The Debtors must provide adequate assurance to Supplier for all amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount. While it appears that the Purchaser will agree to assume all liabilities under the Assumable Executory Contracts, whether or not the Assumable Executory

5

Contracts will actually be assumed and assigned is not yet clear. Therefore, Supplier reserves all right with respect to adequate assurance for these amounts due and to object to assumption and assignment under section 365(b)(1)(C).

### IV. Supplier's Post-Sale Lien Rights in Tooling Cannot be Stripped Through Assumption and Assignment of the Designated Agreements

22. Supplier is a supplier to the Debtors and has in its possession certain tooling which is or was used for the production of parts for the Debtors (the "Tooling"). Supplier has a perfected possessory lien interest in the Tooling, pursuant to the Michigan Special Tools Lien Act, M.C.L. 570.541 et seq. (the "Special Tools Lien Act"), the Michigan Molder's Lien Act, M.C.L. 445.611 et seq. (the "Molder's Lien Act"), and/or other provisions of state law (together with the Special Tools Lien Act and the Molder's Lien Act, the "Lien Laws"). The Tooling is therefore Supplier's collateral to protect payment for the goods produced using the Tooling.

23. To the extent that the Supplier continues to produce parts using the Tooling for the Debtors, the Purchaser, or any assignee of the Assumable Executory Contracts, Supplier shall continue to benefit from a perfected security interest in the Tooling under the applicable Lien Laws.

24. To the extent that the assumption and assignment of the Assumable Executory Contracts proposed in the Assumption and Assignment Notice could have the effect of stripping Supplier of its continuing rights under the Lien Laws, Supplier objects.

### V. Preservation of Rights of Setoff and Recoupment

25. Among Supplier's most valuable rights in its relationship with Debtors are its rights of setoff and recoupment. These rights arise under the contract between Supplier and Debtors, federal or state statutes, or common law.

6

26. The Assumption and Assignment Notice fails to properly preserve the validity, extent or priority of such setoff or recoupment rights. These rights must be preserved as against Debtors and against Purchaser upon the assumption and assignment of the Supplier's contracts. The preservation of post-assignment rights of setoff and recoupment is just as significant an interest of Supplier as are its pre-assignment rights against Debtors.

**VI.    There is no Executory Contract Between Supplier and the Debtors**

27. The Debtors may only assume and assign a contract with Supplier if that contract actually existed on the petition date. COLLIER ON BANKRUPTCY § 365.02[2] (15th ed. Rev. 2009) ("Section 365 applies only if the contract is in existence at the commencement of the case."); *see also In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004)("It is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist.") (quoting from *In re Texscan Corp.*, 107 B.R. 227 (B.A.P. 9th Cir. 1989) aff'd, 976 F.2d 1269 (9th Cir. 1992)).

28. If a binding contract was never formed, there is no executory contract to be assumed or rejected by the debtor. *See In re Adler, Coleman Clearing Corp.*, 218 B.R. 13 (Bankr. S.D.N.Y. 1998). Contracts that have been effectively terminated prior to the filing of a chapter 11 petition cannot be revived by the bankruptcy court. *Matter of Benrus Watch Co., Inc.*, 13 B.R. 331 (Bankr. S.D.N.Y. 1981).

29. The contract between Supplier and the Debtors was terminated by Supplier prepetition in response to the Debtors' repudiation of the contract, and therefore there is no executory contract to be assumed and assigned by the Debtors. *See In re R. M. Cordova International, Inc.*, 77 B.R. 441 (Bankr. D.N.J. 1987) (debtor's prepetition communications to contract counterparties established "anticipatory repudiation" of contracts, and counterparties'

7

responses established that counterparties had effectively terminated contracts with debtor prepetition, so contracts were thus not "executory contracts" subject to assumption).

30. In an effort to seek assurances that HHI would be paid for its overdue invoices and that HHI would be paid for future parts that it was manufacturing and supplying to GM, on November 21, 2008, HHI sent GM a demand for adequate assurance of performance pursuant to MCL 440.2609. By its response letter dated November 25, 2008, GM did not provide the requested adequate assurance. In light of GM's inadequate response to HHI's November 21 demand for adequate assurance, HHI made a second request for assurance of performance by letter dated December 2, 2008. GM did not respond to HHI's December 2 demand for adequate assurance.

31. After GM's repeated refusal to provide HHI with adequate assurance of GM's due performance, on December 12, 2008, HHI sent GM a letter indicating that GM's failure to provide the requisite specific assurance to HHI and failure to pay the outstanding receivables constituted a repudiation the parties' Contracts. Pursuant to MCL 440.2610 and 440.2711, HHI terminated the Contracts with GM and any contractual obligations that HHI had to GM thereunder. Pursuant to that letter, the contract was terminated prepetition, and therefore there is no executory contract to be assumed or assigned. *See In re Eagle Creek Subdivision, LLC*, 397 B.R. 758 (Bankr. E.D.N.C. 2008) (nondebtor contract counterparty's prepetition termination letter was effective in extinguishing nondebtor's obligation to debtor and, thus, the contracts could not be assumed by debtor).

32. Accordingly, Debtors may not assume and assign as indicated in the Assumption Notice because there exist no enforceable executory contracts between Supplier and Debtors.

8

## **RELIEF REQUESTED**

WHEREFORE, Supplier requests that the Court enter an order denying the Debtor's request to assume and assign the Assumable Executory Contracts, and grant such other and further relief as the Court deems just and proper.

Dated:  June 15, 2009          FOLEY & LARDNER LLP
        New York, New York

                               /s/ Ann Marie Uetz

                               Ann Marie Uetz *(Pro Hac Vice Pending)*
                               FOLEY & LARDNER LLP
                               One Detroit Center
                               500 Woodward Avenue, Suite 2700
                               Detroit, MI 48226-3489
                               Telephone: (313) 234-7100
                               Facsimile: (313) 234-2800

                               *Attorneys for Jernberg Industries, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                            :        Chapter 11
                                                  :
GENERAL MOTORS CORP., *et al.*,                   :        Case No. 09-50026 (REG)
                                                  :
                        Debtors                   :        Jointly Administered
                                                  :
---------------------------------------------------------------X

## **CERTIFICATE OF SERVICE**

       I hereby certify that on June 15, 2009, I caused the *Objection Of Jernberg Industries, Inc. To Assumption And Assignment Of Certain Executory Contracts And Cure Amounts Related Thereto* to be served via U.S. Mail on the following at the addresses set forth below:

General Motors Corporation
Attn: Warren Command Center
Mail Code 480-206-114
30009 Van Dyke Avenue
Warren, Michigan 48090-9025

Weil, Gotshal & Manges LLP
Attorneys for the Debtors
Attn: Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq
767 Fifth Avenue
New York, New York 10153

U.S. Treasury
Attn: Matthew Feldman, Esq.
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C. 20220

Cadwalader, Wickersham & Taft LLP
Attn: John J. Rapisardi, Esq.
Attorneys for the Purchaser
One World Financial Center
New York, New York 10281

Vedder Price, P.C.
Michael J. Edelman, Esq.
Michael L. Schein, Esq.
Attorneys for Export Development Canada
1633 Broadway, 47th Floor,
New York, New York 10019

Office of the United States Trustee
Southern District of New York
Attn: Diana G. Adams, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004

10

Kramer Levin Naftalis & Frankel LLP
Attorneys for the Official Committee of
Unsecured Creditors
Attn: Gordon Z. Novod, Esq.
1177 Avenue Of The Americas
New York, NY 10036

Dated:   June 15, 2009                    FOLEY & LARDNER LLP

/s/ Ann Marie Uetz
Ann Marie Uetz *(Pro Hac Vice Pending)*
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Jernberg Industries, Inc*

11