**DORSEY & WHITNEY LLP**
250 Park Avenue
New York, New York 10177
(212) 415-9368
Eric Lopez Schnabel (ES 5553)

**PERKINS COIE LLP**
1201 Third Avenue, 40th floor
Seattle, Washington 98101
(206) 359-8410
Alan D. Smith (pro hac vice pending)

Counsel to Isuzu Motors Limited,
Isuzu Motors America LLC,
and other Isuzu entities as described

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

| | |
|---|---|
| In re | Chapter 11 Case No. |
| | 09-50026 (REG) |
| GENERAL MOTORS CORP., *et al.,* | Jointly Administered |
| Debtors | |

-------------------------------------------------------------

### LIMITED OBJECTION OF ISUZU ENTITIES
### TO ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
### AND TO CURE COSTS RELATED THERETO

Isuzu Motors Limited ("***Isuzu Japan***"), Isuzu System Service, Ltd. ("***ISS***"), LCV

Platform Engineering Corporation ("***LPEC***"), Isuzu Motors America LLC ("***ISZA LLC***"),

Isuzu Commercial Truck of America, Inc. ("***ICTA***"), Isuzu Manufacturing Services of

America, Inc. ("***IMSA***"), and DMAX, Ltd. ("***DMAX***" and, with ISZA LLC, ICTA, and

IMSA, the "***Isuzu North America parties***"; Isuzu Japan, LPEC, ISS and the Isuzu North

America parties are referred to collectively as the "***Isuzu entities***") hereby submit this

Limited Objection (the "***Objection***") to Debtors' Notices of (I) Intent to Assume and

Assign Certain Executory Contracts and (II) Cure Costs Related Thereto (the "***Notices of***

*Intent*"), served upon various of the Isuzu entities pursuant to this Court's Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006: (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice (the "*Bid Procedures Order*").

As set forth in more detail below, the Isuzu entities are party to over 1,500 agreements and open purchase orders with Debtors. Although the Isuzu entities do not object generally to the assumption and assignment of those agreements to Vehicle Acquisition Holdings LLC, a purchaser sponsored by the United States Department of the Treasury ("*Purchaser*"), the information supplied by Debtors to date has not enabled the Isuzu entities – despite considerable effort – to identify either the agreements that Debtors intend to assume and assign or the cure amounts attributable to those agreements. Accordingly, the Isuzu entities reserve all rights with respect to identification of the agreements, and object to assumption and assignment absent payment of all amounts due to the Isuzu entities under the assumed agreements as of the time of assumption. Further, the Isuzu entities reserve all rights to the extent there is a purchaser of Debtors' assets or assignment of contracts to any person other than Purchaser.

## BACKGROUND

1.    The Debtors commenced their voluntary Chapter 11 cases on June 1, 2009.

2.      On June 2, 2009, the Court entered the Bid Procedures Order, including

procedures regarding Debtors' assumption and assignment of executory contracts.

3.      Pursuant to the Bid Procedures Order, Debtors delivered a number of

Notices of Intent to various Isuzu North America parties.  Copies of the cover pages to

such Notices of Intent (with User IDs and passwords whited out) are appended hereto as

Exhibit A, along with copies of the printouts from the Debtors' "Contract Notices"

website to which suppliers such as the Isuzu North America parties were directed

pursuant to the Notices of Intent and accompanying User IDs and passwords (the "*GM*

*Contract Website*").  A copy of the full Notice of Intent, without the cover page (the

Notices of Intent are identical in each case referred to herein, other than the cover page),

may be found as Exhibit E.

4.      As can be seen from Exhibit A, each relevant page on the GM Contract

Website reached from instructions on the Notices of Intent sent to the Isuzu North

America parties has only one line, referencing an unidentified and unexplained

"Agreement" or "MIS Customer Agreement" or "Service Agreement" or "Real Property

Leases."  There are no entries in the columns entitled "GM Contract ID" or "Vendor ID."

There is an entry in the column entitled "Row ID" on each Notice of Intent but that entry

does not appear to match any identification number used by Debtors and the Isuzu

entities in the ordinary course of business (at least the Isuzu entities cannot identify the

number as having been used before in the parties' relationship).  It appears to be merely a

database identifier for GM's internal use only.

5.      In addition, Debtors delivered at least one Notice of Intent to Isuzu Japan.

A copy of the cover page to such Notice of Intent (with User ID and password whited

out) is appended hereto as Exhibit B, along with copies of the printouts from the GM

Contract Website reached from following the instructions on that Notice of Intent.  The

GM Contract Website to which Isuzu Japan was directed includes 1,454 entries,

including entries that on their face relate not only to Isuzu Japan, but also to various other

entities and dbas, including "Isuzu Commercial Truck of America," "Isuzu Commercial

Truck," "Isuzu Motors America Inc.," "Isuzu Motors America," and "Isuzu

Manufacturing Svcs of America."

6.        Each of those names is close (but not identical) to the name of one of the

Isuzu North America parties.  Certainly, the Isuzu North America parties (as well as

Isuzu Japan) have done considerable business with Debtors and would expect that

business to be reflected through a number of entries in the GM Contract Website.

However, the purportedly identifying columns ("Row ID," "GM Contract ID," and

"Vendor ID") contain entries that are not entirely consistent with the identification

systems used by Debtors and the Isuzu entities in the ordinary course of business.  After

considerable effort, Isuzu representatives have been able to identify many of the contracts

and match them to known agreements now in effect, but there are a number that simply

cannot be identified and others for which there is at least some question as to the whether

Isuzu's efforts have been availing.  One of the difficulties is that the "Vendor ID" column

in virtually every case simply uses the Isuzu Japan Duns code, without distinguishing

among the various Isuzu entities.  Another is that each of GM's line items apparently

relates to a single part number, and the line items are not organized by shipment (which is

how Isuzu's records are most easily tracked and how the parties commonly conducted

their prepetition business).

7.      Attached hereto as Exhibit C is a printout of the results obtained from

clicking on the "Click here to view Contract Cure Amount Details" button on the GM

Contract Website (the "*GM Cure Website*") for Isuzu Japan, as those results were

available on the morning of June 10, 2009.  There are only eight entries and a total of

$155,466.29 in Contract Cure Amounts.  The "identifying information" found from the

GM Cure Website – columns headed by the titles "Remit DUNS," "PO Number," and

"Document" – are, as far as the Isuzu entities can determine, not the same as those used

by Debtors and the Isuzu entities in the ordinary course of business and, indeed, are not

the same as those used on the GM Contract Website.

8.      Attached hereto as Exhibit D is a printout of the results obtained from the

GM Cure Website for Isuzu Japan, as those results were available on the morning of

June 15, 2009 (those results changed only approximately $41.00 from the evening of

June 10, 2009).  There are 134 entries and a total of $6,977,409.00 in Contract Cure

Amounts shown (although because some of the amounts are denominated in Japanese

Yen, it is not clear whether that total is indeed a U.S. Dollar total or some meaningless

combination of different currency denominations).  Again, the identifying information

does not appear to be the same as that used by Debtors and the Isuzu entities in the

ordinary course of business or the same as that used on the GM Contract Website.

9.      As a result of the foregoing, the Isuzu entities cannot determine what

contracts, purchase orders, and other agreements Debtors are attempting to assume and

assign.

10.     As a result of the foregoing, the Isuzu entities cannot determine what cure

amounts Debtors believe are payable under what contracts.  The Isuzu entities cannot in

many cases even determine what entities Debtors believe they owe.  The increase in cure

amounts experienced sometime during the day on June 10, while gratifying, does not

solve the problem in anywhere near its entirety.

11.     The Isuzu entities have attempted to clarify this situation through use of

the "Call Center" described in the Notices of Intent, and through contacts with Debtors'

business people familiar with the Isuzu entities and their businesses.  Despite those

attempts, the Isuzu entities have not been able to determine in many instances what

contracts are covered by the Notices of Intent or what cure costs are alleged to be payable

upon assumption of what contracts.

12.     According to the books and records of the Isuzu entities, Debtors owe

ISZA approximately $5,598,000 on account of prepetition obligations; Debtors owe

ICTA approximately $9,213,000 on account of prepetition obligations; Debtors owe

Isuzu Japan approximately 118,457,000 Japanese Yen [approximately $1,213,000 at

current currency exchange rates] on account of prepetition obligations; Debtors and/or

GM GTO (as defined below) owe LPEC approximately 479,145,000 Japanese Yen

[approximately $4,907,000 at current currency exchange rates] on account of prepetition

obligations; and Debtors and/or GM GTO owe LPEC approximately 1,540,000 Japanese

Yen [approximately $16,000 at current currency exchange rates] on account of

prepetition obligations.  All or virtually all of such prepetition obligations are believed to

be attributable to the executory contracts and other agreements between Debtors and the

Isuzu entities.

13.     One of the Notices of Intent was directed to Diesel Engineering

Manufacturing Services of America, Ltd., which is the former name of DMAX, an Ohio

6

limited liability company that is owned 60% by a GM affiliate and 40% by Isuzu Diesel

Services of America, Inc., a wholly-owned subsidiary of IMSA.  The Isuzu entities are

the only persons with an incentive to protect the interests of DMAX and therefore assert

this Objection on behalf of DMAX as well as themselves.

14.     The only contract noted on the Notice of Intent directed to DMAX is

"Real Property Leases," not otherwise defined.  The Isuzu entities are informed and

believe that there are numerous other agreements between GM entities and DMAX,

including without limitation a joint venture agreement, a limited liability company

operating agreement, distribution agreements, and open purchase orders.  As far as the

Isuzu entities can tell, there is no reference in any of the Notices of Intent to any such

agreements.  If Debtors intend to reject all such agreements, Debtors should so inform

DMAX and the Isuzu entities, but such message has not been communicated to date.

Given this uncertainty, the Isuzu entities, on behalf of DMAX, reserve all rights with

respect to all agreements to which DMAX is a party, including identification of the

agreements, cure amounts upon assumption or assignment, and identity (and adequate

assurances and other aspects) respecting a purchaser of DMAX if such purchaser is

anyone other than Purchaser.  The Isuzu entities are unable to quantify any cure costs

attributable to any assumed DMAX contracts because the DMAX finances are under the

dominion and control of GM entities.

15.     Isuzu Japan and Debtor General Motors Corporation are party to a Joint

Venture Agreement, Shareholders Agreement, Engineering Services Agreement –

Pickup, Engineering Services Agreement – Derivative, and other agreements relating to

LPEC.  Nondebtor GM entity GM Global Technology Operations, Inc. ("*GM GTO*") is

7

also a party to many of such agreements. As far as the Isuzu entities can tell, there is no

reference in any of the Notices of Intent to any agreements relating to LPEC, even though

Isuzu representatives have been informed that Debtors intend to assume all such

agreements and assign them to Purchaser. If Debtors intend to reject all such agreements,

Debtors should so inform LPEC and the Isuzu entities, but such message has not been

communicated to date (indeed, the opposite has been communicated). Given this

uncertainty, the Isuzu entities, on behalf of LPEC, reserve all rights with respect to all

agreements to which LPEC is a party, including identification of the agreements, cure

amounts upon assumption or assignment, and identity (and adequate assurances and other

aspects) respecting a purchaser of LPEC if such purchaser is anyone other than

Purchaser.

16.     Isuzu Japan and Debtor General Motors Corporation are or may be party

to various agreements relating to ISS. Nondebtor GM GTO is also a party to many of

such agreements. As far as the Isuzu entities can tell, there is no reference in any of the

Notices of Intent to any agreements relating to ISS. If Debtors intend to reject all such

agreements, Debtors should so inform ISS and the Isuzu entities, but such message has

not been communicated to date. Given this uncertainty, the Isuzu entities, on behalf of

ISS, reserve all rights with respect to all agreements to which ISS is a party, including

identification of the agreements, cure amounts upon assumption or assignment, and

identity (and adequate assurances and other aspects) respecting a purchaser of ISS if such

purchaser is anyone other than Purchaser.

17.     Although there does not appear to be any indication in the Motion or

related pleadings respecting what GM divisions and subsidiaries are being sold to

Purchaser, the Isuzu entities are aware from press reports and other sources that certain

GM divisions and subsidiaries will not be sold to Purchaser and instead will be sold to

third parties or closed down.  Among such other divisions are Opel, Saab, and medium

duty trucks.  As far as the Isuzu entities can tell, the Notices of Intent do not distinguish

between agreements relating to divisions and assets that will be sold to Purchaser and

agreements relating to such other divisions and subsidiaries.  Accordingly, the Isuzu

entities reserve all rights with respect to the distinctions Debtors may subsequently make

between agreements to be assigned to Purchaser and other agreements.

## LIMITED OBJECTION

A.    The Isuzu entities have no objection to assumption and assignment to

Vehicle Acquisition Holdings LLC, a purchaser sponsored by the United States

Department of the Treasury ("*Purchaser*") of any of the executory contracts and other

relationships between Debtors and the Isuzu entities, provided (a) Debtors adequately

identify what contracts are being assumed and assigned, and (b) appropriate cure

payments are made.  As noted above, neither clause (a) nor clause (b) has been satisfied

to date, and both are required under Section 365(b).

B.    The Isuzu entities reserve all rights with respect to any attempted

assumption without immediate assignment to Purchaser, and with respect to any

attempted assumption with assignment to any person other than Purchaser.  Without

limiting the generality of the foregoing, the Isuzu entities reserve all rights with respect to

assumability and assignability of any such agreements, including without limitation

adequate assurances of future performance, absent consent of the applicable nondebtor

Isuzu entity.  The Isuzu entities note that certain of the agreements at issue contain

9

licenses of intellectual property from Isuzu entities to Debtors or nondebtor GM entities, and the Isuzu entities do not consent to assignment of any such licenses to any person other than Purchaser.  Isuzu contends that it has the absolute right to decline consent to assumption or assignment of any such intellectual property license, and that although no reason need be given, reason exists for declination of consent where, as here, a purchaser may be a competitor of Isuzu who could misuse such intellectual property to Isuzu's detriment.

C.    The Isuzu entities specifically reserve all rights with respect to the cure amounts payable on account of assumption and assignment of any executory contracts, whether those contracts are assumed by Purchaser or by any other person or by no person.

D.    The Isuzu entities specifically object to any cure computations that do not include postpetition amounts owed as well as prepetition defaults.  Section 365(b)(1) unambiguously requires as much.

E.    Finally, the Isuzu entities are sensitive to Debtors' and Purchaser's need to close the 363 sale promptly, and it is appropriate to allow the parties some period of time in which to determine which executory contracts will be assumed and assigned, and which will be rejected.  Such determination ordinarily takes place _before_ closing of the transaction.  Here, Section 13 of each Notice of Intent states the MPA allows Purchaser thirty (30) days _after_ the closing to exclude any executory contracts (the "**Designation Deadline**").  The Isuzu entities do not believe that this additional thirty (30) days is necessary but would not object were that the end of Purchaser's and Debtors' designation period.  However, Section 13 purports to allow Purchaser and Debtors to extend the

10

Designation Deadline – without agreement of the affected contract parties, any further notice or hearing, or any other requirement – for as long as they want. This provision blatantly overreaches. The Designation Deadline should be at most thirty days after the closing, and it should not be extended. The nondebtor contracting parties have a need to know where they stand with "New GM" – parties make commitments; they make hiring and firing decisions, capital expenditures, and numerous other business plans based on anticipated levels of business. Section 13 as drafted puts every supplier at risk of long periods of uncertainty. It is inappropriate and its overreaching aspects should be addressed by this Court.

## PRAYER

WHEREFORE, the Isuzu entities respectfully request that the Court (i) deny Debtors' request to assume and assign to Purchaser any agreements between Debtors and any of the Isuzu entities unless and until Debtors specifically identify the agreements to be assumed and assigned and the Isuzu entities are paid the full cure amounts owed pursuant to Section 365(b)(1) as of the time of assumption; (ii) deny any attempt to assume and assign any agreements between Debtors and any of the Isuzu entities unless and until the proposed purchaser is identified, adequate assurances of future performance is given, and the conditions set forth in clause (i) are satisfied; (iii) clarify that the "Designation Deadline" as defined in the Notices of Intent shall be no later than thirty (30) days after closing of the 363 Transaction (all as defined in the Notices of Intent), and may not be extended by Purchaser or Debtors; and (iv) grant such other and further relief as may be just and proper.

11

DORSEY & WHITNEY


By:   /s/ Eric Lopez Schnabel
Eric Lopez Schnabel, ES 5553
250 Park Avenue
New York, NY  10177
(212) 415-9368

PERKINS COIE LLP


By:   /s/ Alan D. Smith
Alan D. Smith, pro hac vice pending
1201 Third Avenue, 40th floor
Seattle, WA  98101
(206) 359-8410

Attorneys for Isuzu Motors Limited, Isuzu
Motors America LLC, and other Isuzu
entities as described

Dated:  June 15, 2009