CARSON FISCHER, P.L.C.
Counsel for Lapeer Metal Stamping Companies, Inc.
4111 Andover Road, West-2nd Floor
Bloomfield Hills, MI 48302
(248) 644-4840
Patrick J. Kukla (P60465)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                        :

In re:                             :        Chapter 11
                                       :        Case No.: 09-50026 (REG)
GENERAL MOTORS CORPORATION, *et al.*,  :        (Jointly Administered)
                                       :

             Debtors.              :
-------------------------------------------------------------x

## LAPEER METAL STAMPING COMPANIES, INC.'S AMENDED OBJECTION TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE COSTS RELATED THERETO

**Lapeer Metal Stamping Companies, Inc.** ("**Lapeer**"), by and through its attorneys, Carson Fischer, P.L.C., hereby states its amended objection to the Debtors' proposed assumption and assignment of alleged executory contracts with Lapeer.

## INTRODUCTION

1.     On June 1, 2009 (the "**Petition Date**"), General Motors Corporation ("**GM**") and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.       On June 1, 2009, the Debtors filed a motion [Docket No. 92] (the "**Sale Motion**") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances, (b) approval of certain procedures for the solicitation of bids with respect to the sale and (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the sale transaction.

4.       On June 2, 2009, the Court entered an order approving the Debtors' proposed bidding procedures and establishing procedures for the assumption and assignment of executory contracts and unexpired leases [Docket No. 274] (the "**Sale Procedures Order**").

5.       With respect to the assumption and assignment of executory contracts and unexpired leases, the Sale Procedures Order provides that the Debtors are to serve each non-debtor party to an executory contract or unexpired lease that the Debtors intend to assume and assign to the purchaser, a notice of assumption and assignment of executory contracts and unexpired leases (the "**Assignment Notice**").

6.       Each Assignment Notice is to set forth instructions for accessing information from a contract website (the "**Contract Website**") containing the contracts to be assumed and assigned as well as the proposed cure amounts.

7.       On or around June 12, 2009, Lapeer received the *Notice of (i) Debtors Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure amounts Related Thereto* (the "**Lapeer Assignment Notice**"), which indicates that Debtors intend to assume and

2

assign 143 alleged agreements of Debtors with Lapeer (the "**Lapeer Contracts**") and

proposes an aggregate cure amount of $134,611.64 (the "**Proposed Cure Amount**").

## OBJECTION

8.    Lapeer previously ceased all business operations, has sold substantially all

of its operating assets and is in the process of liquidating its remaining assets.

9.    In connection with the sale of substantially all of its operating assets,

Lapeer entered into a certain Asset Purchase Closing Agreement with L&W, Inc. d/b/a

L&W Engineering Co., Inc. ("**L&W**") (the "**Asset Purchase Closing Agreement**"),

pursuant to which Lapeer sold and conveyed to L&W certain of Lapeer's assets which

were used in the manufacture of component parts for Debtors.  See, Affidavit of Peter J.

Martz, attached hereto as Exhibit 1, ¶¶ 2-3.

10.    In connection with the Asset Purchase Closing Agreement, Lapeer,

Debtors and L&W executed a certain Agreement Regarding Sale Transaction, dated

August 27, 2008, which stated, in pertinent part, "[Debtors]…hereby agree that upon

L&W's request for possession of specific "Bailment Assets" (as defined in the Bailment

Agreement which is part of the L&W Sale Documents) and Lapeer making such asset(s)

available to L&W for removal, Lapeer will have no further obligation to supply

[Debtors] the applicable component parts manufactured using such equipment."  See,

Exhibit 1, ¶¶ 4-5 and Exhibit A thereto.

11.    By December 23, 2008, all of Lapeer's assets utilized in production for

Debtors were made available and/or removed by L&W, and Lapeer had no further

obligations to supply Debtors with any component parts or to otherwise perform under any contracts or agreements with Debtors.  See, Exhibit 1, ¶¶ 6-7.

12.    As a result of the foregoing, there were not any executory contracts, unexpired leases of personal property, or unexpired leases of nonresidential real property in effect between the Debtors and Lapeer as of the Petition Date and, therefore, no such contracts exist which are capable of being assumed and assigned by the Debtors.  See, Exhibit 1, ¶8.

13.    Again, Lapeer has ceased all business operations and has sold, or is in the process of selling, its operating assets.  As a result, even if there were any existing executory contracts in existence between Debtors and Lapeer, which there are not, Lapeer would have no ability to perform any of the alleged Lapeer Contracts.  See, Exhibit 1, ¶9.

14.    Lapeer has no objection to the Debtors paying Lapeer on any outstanding invoices.  As of the time of this objection, however, Lapeer has been unable toreconcile with its records the alleged Lapeer Contracts and what amounts, if any, may remin owing by Debtors to Lapeer with respect thereto.

15.    Lapeer reserves the right to amend this objection and reserves the right to assert additional objections to the proposed assumption and assignment of the Lapeer Contracts at any hearing on this objection.

WHEREFORE, based upon the foregoing, Lapeer objects to Debtors' proposed assumption and assignment of the Lapeer Contracts and respectfully requests that this Court grant Lapeer such other and further relief as the Court deems just and proper.

CARSON FISCHER, P.L.C.
*Attorneys for Lapeer Metal*
*Stamping Companies, Inc.*

By:  /s/ Patrick J. Kukla
Patrick J. Kukla (P60465)
4111 Andover Road, West-2nd Flr.
Bloomfield Hills, MI  48302
Tele:  (248) 644-4840

Dated:  June 17, 2009

# Exhibit 1

CARSON FISCHER, P.L.C.
Counsel for Lapeer Metal Stamping Companies, Inc.
4111 Andover Road, West-2nd Floor
Bloomfield Hills, MI 48302
(248) 644-4840
Patrick J. Kukla (P60465)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :
In re:                                      :      Chapter 11
                                            :      Case No.: 09-50026 (REG)
GENERAL MOTORS CORPORATION, *et al.*,       :      (Jointly Administered)
                                            :
        Debtors.                            :
------------------------------------------------------------x

## <u>AFFIDAVIT OF PETER J. MARTZ</u>

STATE OF MICHIGAN          )
                           )      ss
COUNTY OF __OAKLAND__      )

I, Peter J. Martz, hereby state that the following is true to the best of my knowledge, information and belief:

1.      I am the President of Lapeer Metal Stamping Companies, Inc. ("Lapeer"). I am duly authorized to submit this Affidavit on behalf of Lapeer. All facts set forth in this Affidavit are based upon my personal knowledge and if I were called upon to testify, I could and would testify competently to the facts set forth herein.

2.      In my capacity as President of Lapeer, I am familiar with Lapeer's prior contracts and agreements with General Motors Corporation ("Debtors") as well as a

certain Asset Purchase Closing Agreement between Lapeer and L&W, Inc. d/b/a L&W Engineering Co., Inc. ("L&W") (the "Asset Purchase Closing Agreement").

3.    Pursuant to the Asset Purchase Closing Agreement, Lapeer sold and conveyed to L&W certain of Lapeer's assets which were used in the manufacture of component parts for Debtors.

4.    In connection with the Asset Purchase Closing Agreement, Lapeer, Debtors and L&W executed a certain Agreement Regarding Sale Transaction Between Lapeer Metal Stamping Companies, Inc. and L&W, Inc. d/b/a L&W Engineering Co., dated August 27, 2008.

5.    The Agreement Regarding Sale Transaction Between Lapeer Metal Stamping Companies, Inc. and L&W, Inc. d/b/a L&W Engineering Co. stated, in pertinent part, "[Debtors]...hereby agree that upon L&W's request for possession of specific "Bailment Assets" (as defined in the Bailment Agreement which is part of the L&W Sale Documents) and Lapeer making such asset(s) available to L&W for removal, Lapeer will have no further obligation to supply [Debtors] the applicable component parts manufactured using such equipment." See, Exhibit A hereto, ¶6.

6.    By December 23, 2008, all of Lapeer's assets utilized in production for Debtors were made available and/or removed by L&W and Lapeer had no further obligation to supply Debtors the applicable component parts manufactured using such equipment.

7.    As of December 23, 2008, Lapeer had no further obligations to supply Debtors with any component parts or to otherwise perform under any contracts or agreements with Debtors.

8.    As a result of the foregoing, there were not any executory contracts, unexpired leases of personal property, or unexpired leases of nonresidential real property in effect between the Debtors and Lapeer as of June 1, 2009, the date Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and, therefore, no such contracts exist which are capable of being assumed and assigned by the Debtors.

9.    Lapeer has ceased all business operations, has sold substantially all of its operating assets and is in the process of liquidating its remaining assets.  As a result, even if there were any existing executory contracts between Debtors and Lapeer, which there are not, Lapeer would have no ability to perform any of the 143 agreements alleged in the *Notice of (i) Debtors Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure amounts Related Thereto.*

Dated: June 17, 2009

_____
Peter J. Martz

Sworn to and subscribed before me, a notary public for the State of Michigan, County of OAKLAND , this 17 day of June, 2009.

CAROL A. KAISER
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Oct 24, 2015
ACTING IN COUNTY OF WAYNE

_____
Notary Public

3

# Exhibit A

## AGREEMENT REGARDING SALE TRANSACTION
## BETWEEN LAPEER METAL STAMPING COMPANIES, INC.
## AND L&W, INC. D/B/A L&W ENGINEERING CO.

This Agreement Regarding Sale Transaction Between Lapeer Metal Stamping Companies, Inc. and L&W, Inc. d/b/a L&W Engineering Co. ("Agreement"), dated August 27, 2008, is made by and between Lapeer Metal Stamping Companies, Inc. ("Lapeer"), General Motors Corporation, on behalf of itself and its affiliates (individually and collectively, "GM"), and Ford Motor Company, on behalf of itself and its affiliates (individually and collectively, "Ford").

### RECITALS

A.     Lapeer is entering into a certain Asset Purchase Closing Agreement and related documents (the "L&W Sale Documents"), with L&W, Inc. d/b/a L&W Engineering Co. ("L&W"), pursuant to which Lapeer will be selling and conveying to L&W certain of Lapeer's assets which are used in the manufacture of component parts for each of GM and Ford, respectively.

B.     Lapeer's execution and delivery of the L&W Sale Documents and Lapeer's performance of its obligations thereunder will inure to the respective financial benefit of each of GM and Ford.

C.     Among other things, the L&W Sale Documents contemplate that L&W will receive good title to the subject assets free and clear of any and all claims, liens and encumbrances, of any kind or nature, including, but not limited to, such security interests in and liens upon the same as may presently exist in favor of either or both of GM and Ford.

D.     The L&W Sale Documents further contemplate that L&W will bail certain of the purchased assets back to Lapeer, for Lapeer's continued use thereof during the "Transition Period" (as defined in the L&W Sale Documents), in order that Lapeer may continue to perform relevant manufacturing services for certain GM and Ford programs, respectively, during the Transition Period.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, it is hereby agreed by and between Lapeer, GM and Ford, as follows:

1.     GM and Ford, respectively, consent to Lapeer's execution and delivery of the L&W Sale Documents and to a Fourth Amendment to Forbearance Agreement with Comerica Bank ("Comerica") and to Lapeer's performance thereunder.  Subject to Lapeer and Comerica entering into the Fourth Amendment, in the form attached, GM and Ford will advance to Lapeer, by way of a surcharge, $1,250,000 (the "Surcharge").  GM

will pay 72% ($900,000) of the Surcharge, and Ford will pay 28% ($350,000) of the Surcharge. GM and Ford will pay their respective portions of the Surcharge to Lapeer within two (2) business days of the date of the Fourth Amendment. Comerica will apply the Surcharge in accordance with the Fourth Amendment. GM and Ford also consent to Comerica releasing its lien on the Purchased Assets (as defined in the L&W Sale Documents) upon the closing between Lapeer and L&W on the L&W Sale Documents (the "Closing").

2.      GM and Ford hereby authorize and instruct Comerica to reduce their respective Participations as defined in that certain Amended and Restated Accommodation Agreement, dated October 29, 2007, as entered into by and between GM, Ford, Lapeer, and Comerica, among others, as the same may have been amended (the "Accommodation Agreement"), to $1,250,000 in the aggregate - $900,000 (GM) and $350,000 (Ford), and to forgive the balance of their Participations.

3.      Except as otherwise amended by this Agreement, the parties' obligations under the Accommodation Agreement remain in full force and effect, including (i) Lapeer's obligations concerning the continued production of component parts during the Transition Period, and (ii) GM and Ford's permitted setoff rights.

4.      Subject to paragraph 5 below, Lapeer's obligations under any purchase orders or supply agreements with GM or Ford, including, without limitation, any revenue sharing agreement for scrap for steel purchased by Lapeer before and during the Transition Period, remain in full force and effect.

5.      GM and Ford each hereby authorize Lapeer to prepare and deliver for recording UCC Termination Statements to terminate and discharge any and all security interests of record in their favor with respect to (a) any and all indebtedness which is, or may be, due and owing by Lapeer to either or both of GM and Ford, respectively, and (b) the rights granted under that certain Access and Security Agreement dated July 26, 2007; provided, however, that, notwithstanding the foregoing, neither GM nor Ford will be required to terminate or discharge any security interests or liens corresponding to the GM CapX Loan or the Ford CapX Loan, respectively (as defined in the Accommodation Agreement), unless and until:

(a)     GM shall have received payment of the fair market value of the collateral securing the GM CapX Loan, which property is being sold and conveyed to L&W pursuant to the L&W Sale Documents, as such fair market value is reflected in the appraisal of Lapeer's equipment, dated September 5, 2007, previously furnished to L&W; and

(b)     Ford shall have received payment of the fair market value of the collateral securing the Ford CapX Loan, which property is being sold and conveyed to L&W pursuant to the L&W Sale Documents, as

such fair market value is reflected in the August 2008 Williams & Lipton Company "desktop" appraisal previously furnished to L&W.

Upon receipt of payment, as provided immediately above, GM and Ford, respectively, (i) authorize Lapeer to prepare and deliver for recording UCC Termination Statements for the GM CapEx Loan and the Ford CapEx loan, respectively, (ii) and will be deemed to have fully and forever waived and released any claims which might otherwise exist against Lapeer, or any guarantor of Lapeer's obligations, regarding any deficiency which might exist after the sale to L&W of the property securing the GM CapX Loan and the Ford CapX Loan, respectively.

6.    GM and Ford hereby agree that upon L&W's request for possession of specific "Bailment Assets" (as defined in the Bailment Agreement which is part of the L&W Sale Documents) and Lapeer making such asset(s) available to L&W for removal, Lapeer will have no further obligation to supply to the applicable customer the applicable component parts manufactured using such equipment.  GM and Ford will honor their inventory purchase obligations under the Accommodation Agreement for all component parts as they are resourced to L & W, without the need for notice of the occurrence of an "Inventory Purchase Trigger Date" from Lapeer or Comerica.

7.    This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof.  This Agreement may not be modified, altered or amended accept by an agreement, in writing, signed by all parties who would be affected thereby.

8.    The individuals executing this Agreement, as representatives of the respective parties, warrant that they have been duly authorized to execute and deliver this Agreement on behalf of the entity that they represent and that their signature binds such entity to the terms of this Agreement.  This Agreement will be binding on the parties' respective successors and assigns.  Comerica and L&W are intended and express third party beneficiaries of this Agreement and may enforce its terms.

9.    Should any provision of this Agreement be held invalid or unenforceable, the remainder of this Agreement will not be affected thereby.

10.    This Agreement may be executed in counterparts, and each of such counterparts together will constitute one valid, binding and enforceable Agreement.  For purposes of the due execution hereof, facsimile or electronic signatures will be deemed to be originals.

11.    This Agreement is made in, and will be governed by, and construed and enforced in accordance with the laws of the State of Michigan, without regard to conflict of laws principles.

- 3 -

GENERAL MOTORS CORPORATION,
on behalf of itself and its affiliates

By: _Joe De Sousa_____

Its: _Purchasing Manager_____

FORD MOTOR COMPANY,
on behalf of itself and its affiliates

By:_____

Its:_____

LAPEER METAL STAMPING COMPANIES, INC.

By:_____

Its:_____

- 4 -

GENERAL MOTORS CORPORATION,
on behalf of itself and its affiliates

By:_____

Its:_____

FORD MOTOR COMPANY,
on behalf of itself and its affiliates

By: *Lisa K. King*

Its: *Purchasing Director Global Stampings + Raw Materials.*

LAPEER METAL STAMPING COMPANIES, INC.

By:_____

Its:_____

DETROIT.3287366.3

- 4 -

GENERAL MOTORS CORPORATION,
on behalf of itself and its affiliates


By:_____

Its:_____


FORD MOTOR COMPANY,
on behalf of itself and its affiliates


By:_____

Its:_____


LAPEER METAL STAMPING COMPANIES, INC.


By:_____

Its:_____

DETROIT.3287366.3