ELECTRONICALLY FILED
7/29/2008 4:09 PM
CV-2008-900022.00
CIRCUIT COURT OF
GREENE COUNTY, ALABAMA
ETTA B. EDWARDS, CLERK

IN THE CIRCUIT COURT OF GREENE COUNTY, ALABAMA

| | |
|---|---|
| JACQUELINE EDWARDS, as Personal Representative and/or Administratrix of the Estate of Raymond Edwards, III deceased,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS CORPORATION, a foreign entity; LEGACY PONTIAC-GMC, INC., a domestic entity; DELPHI F/K/A IFG, a foreign entity; DELPHI F/K/A DELCO ELECTRONICS, LLC, a foreign entity; DELPHI AUTOMOTIVE SYSTEMS, LLC, a foreign entity; DELPHI AUTOMOTIVE SYSTEMS SERVICES, LLC, a foreign entity; TRW AUTOMOTIVE, a foreign entity; AUTOLIV ASP, INC., a foreign entity; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No.: 2008-900022<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**No. 1:** Whether singular or plural, that entity or those entities who or which issued, or had a duty to issue, warnings or instructions regarding the use or operation of the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith;

**No. 2:** Whether singular or plural, that entity or those entities who or which tested, inspected, approved, or issued any approval of the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith;

**No. 3:** Whether singular or plural, that entity or those entities, other than those entities described herein, whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit;

**No. 4:** Whether singular or plural, that entity or those entities who or which designed the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 5:** Whether singular or plural, that entity or those entities who or which manufactured or assembled the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 6:** Whether singular or plural, that entity or those entities who or which had any role in the distributive chain regarding the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 7:** Whether singular or plural, that entity or those entities who or which, prior to the occurrence made the basis of this lawsuit installed, repaired, designed, maintained, inspected,

assembled, modified, adjusted, serviced and/or performed any type of work to the vehicle and/or airbags involved in said occurrence, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 8:** Whether singular or plural, that entity or those entities who or which suggested or specified that the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment be used as it was being used at the time of the occurrence;

**No. 9:** Whether singular or plural, that entity or those entities who or which failed to warn or issued inadequate warnings or instructions regarding the use or operation of the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 10:** Whether singular or plural, that entity or those entities which provided product liability and/or general liability insurance coverage for the manufacturer and/or distributor of the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit at the time of said occurrence or at any time prior thereto;

**No. 11:** Whether singular or plural, that entity who or which installed, repaired, serviced, assembled, inspected, designed, adjusted, manufactured and/or modified the airbags, or any component part thereof, in the vehicle involved in the occurrence made the basis of this lawsuit;

**No. 12:** Whether singular or plural, that entity or those entities who or which was responsible for advertising the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof or any attendant equipment used or available for use therewith;

**No. 13:** Whether singular or plural, that entity or those entities who or which did any consulting work, i.e., advertising, engineering, etc., referable to the design, manufacture and/or assembly of the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 14:** Whether singular or plural, that entity or those entities, who or which tested, inspected, approved or issued any approval of the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith;

**No. 15:** Whether singular or plural, that entity or those entities who or which conducted safety inspections or analyses of or with reference to the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, any component parts thereof, or any attendant equipment used or available for use therewith and/or the design or manufacturing process of each said product including, including but not limited to, the products liability insurance carrier for the manufacturer or distributor of any of the aforesaid products;

**No. 16:** Whether singular or plural, that entity or those entities who or which provided any insurance coverage for the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, for the driver of the vehicle or for any of the named fictitious party defendants listed or described herein;

**No. 17:** Whether singular or plural, that entity or those entities that provided underinsured and/or uninsured motorist coverage to the plaintiff's decedent;

**No. 18:** Whether singular or plural, that entity or those entities who or which designed, manufactured, assembled, distributed, sold and/or leased the vehicle and/or airbags involved in the occurrence made the basis of this lawsuit, or any of the component parts thereof;

**No. 19:** Whether singular or plural, that entity or those entities who or which performed any repair work, alteration, adjustment, modification and/or maintenance on the vehicle and/or airbags and/or any component parts thereof involved in the occurrence made the basis of this complaint;

**No. 20:** Whether singular or plural, that entity or those entities who or which were the master or principal of the driver of the vehicle involved in the occurrence made the basis of this lawsuit;

**No. 21:** Whether singular or plural, that entity or those entities on whose behalf the vehicle involved in the collision made the basis of this lawsuit was being operated at the time of said occurrence;

**No. 22:** Whether singular or plural, that entity or those entities other than those entities described above whose negligence, wantonness or other actionable conduct contributed to cause the occurrence made the basis of this lawsuit;

**No. 23:** Whether singular or plural, that entity or those entities other than those entities described above, which is the successor in interest of any of those entities described above;

**No. 24:** Whether singular or plural, that entity or those entities other than those entities described above, which was the predecessor corporation of any of the entities described above.

Plaintiff avers that the identities of the fictitious party defendants are otherwise unknown to plaintiff at this time, or if their names are known to plaintiff at this time, their identities as proper party defendants are not known to plaintiff at this time, but their true names will be substituted by amendment when ascertained.

**Defendants.**

## AMENDED COMPLAINT

COMES NOW the plaintiff in the above styled cause and pursuant to Rule 15(a) and (c) of the Alabama Rules of Civil Procedure, hereby amends her Original Complaint filed on April 3, 2008, by: (1) substituting Delphi f/k/a IFG, Delphi f/k/a Delco Electronics, LLC, TRW Automotive, and Autoliv ASP, Inc. for fictitious party defendant numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 18 and 22: and (2) substituting Delphi Automotive Systems, LLC and Delphi Automotive Systems Services, LLC for fictitious party defendants numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 18, 22, and 23. These changes have been incorporated into the caption of this Amended Complaint. The Complaint, as amended, reads as follows:

3

## STATEMENT OF THE PARTIES

1. The plaintiff Jacqueline Edwards is the Personal Representative and/or Administratrix of the Estate of Raymond Edwards, III, deceased, and brings this action in such capacity. Plaintiff is a resident of Greene County, Alabama. Plaintiff brings this action pursuant to Alabama Code §6-5-410 et seq. for the wrongful death of Raymond Edwards, III.

2. Defendant General Motors Corporation is a foreign corporation, and at all times relevant hereto, was and is doing business in Greene County, Alabama. General Motors Corporation will be referred to herein as "GM".

3. Defendant Legacy Pontiac-GMC, Inc. is a domestic corporation incorporated in Greene County, Alabama, and at all times relevant hereto with its principal place of business in Greene County, Alabama. Legacy sold the vehicle made the subject of this case in Greene County, Alabama to Raymond Edwards, III on or about January 24, 2006. Legacy was also an agent of the defendant GM and/or fictitious party defendants 1-24 and was acting within the line and scope of the agency and/or with the express, implied and/or apparent authority of defendant GM and/or fictitious party defendants 1-24 in connection with the claims asserted herein by the plaintiff. Legacy Pontiac-GMC, Inc. will be referred to herein as "Legacy".

4. Defendants Delphi Automotive Systems, LLC and Delphi Automotive Systems Services, LLC are foreign entities and at all times relevant hereto, were doing business in Greene County, Alabama. Delphi Automotive Systems, LLC and Delphi Automotive Systems Services, LLC will be collectively referred to herein as "Delphi"

5. Defendant Delphi f/k/a IFG is a foreign entity, and at all times relevant hereto, was doing business in Greene County, Alabama (hereinafter referred to as "IFG"). Upon information and belief, defendant IFG was acquired by and/or changed its name to Delphi

4

following the date(s) the 1999 Pontiac Bonneville (V.I.N. 1G2HX52K6XH203646) made the subject of this case and/or its airbags and/or component parts were designed, manufactured, assembled, distributed, sold, marketed and/or advertised.

6.    Defendant Delphi f/k/a Delco Electronics, LLC is a foreign entity and at all times relevant hereto, was doing business in Greene County, Alabama (hereinafter referred to as "Delco"). Upon information and belief, defendant Delco was acquired by and/or changed its name to Delphi following the date(s) the 1999 Pontiac Bonneville (V.I.N 1G2HX52K6XH203646) made the subject of this case and/or its airbags and/or component parts were designed, manufactured, assembled, distributed, sold, marketed and/or advertised.

7.    TRW Automotive is a foreign entity that at all times relevant hereto, was doing business in Greene County, Alabama. TRW Automotive will be referred to herein as "TRW".

8.    Autoliv ASP, Inc. is a foreign corporation that at all times relevant hereto, was doing business in Greene County, Alabama. Autoliv ASP, Inc. will be referred to herein as "Autoliv".

9.    Fictitious party defendants Nos. 1-24, as identified and described by their respective roles and/or functions in the caption of this Complaint (and incorporated herein as if set out in full), wrongful conduct caused and/or contributed to cause the death of Raymond Edwards, III. Plaintiff avers that the identities of the fictitious party defendants herein are otherwise unknown to plaintiff at this time or, if their names are known to plaintiff their identities as proper party defendants are not known to plaintiff at this time, and their true names and/or identities will be substituted by amendment when ascertained.

5

## COUNT I

10. Plaintiff adopts and incorporates herein by reference all prior paragraphs of this Complaint.

11. On or about April 21, 2006, Raymond Edwards, III was operating a 1999 Pontiac Bonneville (V.I.N. 1G2HX52K6XH203646)(hereinafter "Bonneville" or "vehicle") on County Road 100 in Greene County, Alabama. While traveling west on County Road 100, Mr. Edwards was involved in a one-vehicle accident between Alabama Highway 39 and County Road 99. The vehicle left the roadway and crashed. However, due to the defective and unreasonably dangerous condition of the vehicle's driver's side and passenger side air bags, the air bags did not deploy, and as a proximate result, Mr. Edwards was caused to die the following day.

12. Defendants GM, Legacy, IFG, Delco, Delphi, TRW, Autoliv and/or fictitious party defendants 1-24 designed, manufactured, assembled, distributed, sold, marketed and/or advertised the Bonneville and/or the Bonneville's driver's and/or passenger's side air bags (hereinafter "air bags") and are or were in the business of designing, manufacturing, assembling, maintaining, repairing, servicing, marketing, distributing and/or selling those vehicles and/or air bags.

13. On the occasion made the basis of this suit, the Bonneville and/or air bags were in substantially the same condition as when designed, manufactured, distributed and/or sold and were being operated and/or used by Raymond Edwards, III in a manner that was intended and foreseeable by said defendants. The Bonneville and/or air bags were in a defective condition and/or in a condition that was unreasonably dangerous to Raymond Edwards, III and others. Said defendants knew or, in the exercise of reasonable care, should have known that the Bonneville and/or air bags were defective and unreasonably dangerous to the human body when

being used in a foreseeable manner. The defendants GM, Legacy, IFG, Delco, Delphi, TRW, Autoliv and/or fictitious party defendants 1-24 are liable to the plaintiff under the Alabama Extended Liability Manufacturer's Doctrine ("AELMD").

14. Defendants GM, Legacy, IFG, Delco, Delphi, TRW, Autoliv and/or fictitious party defendants 1-24 negligently, wantonly and/or recklessly designed, manufactured, assembled, sold, distributed, marketed and/or advertised the Bonneville and/or air bags and/or negligently, wantonly and/or recklessly failed to provide adequate warnings and instructions to drivers and users as to the Bonneville and/or air bags' dangerous characteristics and/or propensities.

15. Defendants GM, Legacy, IFG, Delco, Delphi, TRW, Autoliv and/or fictitious party defendants 1-24 expressly and/or impliedly warranted that the Bonneville and/or air bags involved in the occurrence made the basis of this Complaint were reasonably fit and suitable for the purpose for which the Bonneville and/or air bags were intended to be used. Plaintiff avers that said defendants breached said express and/or implied warranties in that said vehicle and/or air bags were not reasonably fit and suitable for the purposes for which said vehicle and/or air bags were intended to be used but, to the contrary, the vehicle and/or air bags and/or any attendant equipment used therewith were inherently dangerous, unstable, defective and/or unsafe.

16. As designers, manufacturers, distributors and sellers of the Bonneville and/or air bags that were in a defective condition rendering the Bonneville and/or air bags unreasonably dangerous to foreseeable members of the traveling public such as Raymond Edwards, III, defendants GM, Legacy, IFG, Delco, Delphi, TRW, Autoliv and/or fictitious party defendants 1-

7

24 are liable to the plaintiff under the law of strict products liability by virtue of the facts set forth herein.

17. As a proximate result of the above-described events, Raymond Edwards, III was caused to die.

**WHEREFORE, PREMISES CONSIDERED**, plaintiff demands judgment against the defendants, including fictitious party defendants, for punitive damages, in amounts to be determined by a struck jury, plus interest and costs.

## COUNT II

18. Plaintiff adopts and incorporates herein by reference all prior paragraphs of this Complaint.

19. Defendant Legacy and/or fictitious party defendants 1-24 negligently and/or wantonly repaired, maintained, inspected, adjusted, modified, altered, and/or serviced the Bonneville and/or air bags and/or any component parts thereof, involved in the occurrence made basis of the Complaint.

20. Defendant Legacy and/or fictitious party defendants 1-24 sold the Bonneville to Raymond Edwards, III when it knew or should have known that the Bonneville's air bags would not deploy in the event the vehicle was involved in a crash.

21. As a proximate result and/or consequence of the defendant Legacy and/or fictitious party defendants 1-24 said negligence and/or wantonness, Raymond Edwards, III, was caused to die.

**WHEREFORE, PREMISES CONSIDERED**, plaintiff demands judgment against the defendants, including fictitious party defendants, jointly and severally, for punitive damages in an amount to be determined by a struck jury, plus interest and costs.

## COUNT III

22.    Plaintiff adopts and incorporates herein by reference all prior paragraphs of this Complaint.

23.    Defendants IFG, Delphi and/or fictitious party defendants 1-24 designed, manufactured, assembled, distributed, sold, marketed and/or advertised the air bag modules used in the Bonneville's air bags and are or were in the business of designing, manufacturing, assembling, maintaining, repairing, servicing, marketing, distributing and/or selling those air bag modules.

24.    On the occasion made the basis of this suit, the air bag modules were in substantially the same condition as when designed, manufactured, distributed and/or sold and were being used by Raymond Edwards, III in a manner that was intended and foreseeable by said defendants. The air bag modules were in a defective condition and/or in a condition that was unreasonably dangerous to Raymond Edwards, III and others. Said defendants knew or, in the exercise of reasonable care, should have known that the air bag modules were defective and unreasonably dangerous to the human body when being used in a foreseeable manner. The defendants IFG, Delphi and/or fictitious party defendants 1-24 are liable to the plaintiff under the AELMD.

25.    Defendants IFG, Delphi and/or fictitious party defendants 1-24 negligently, wantonly and/or recklessly designed, manufactured, assembled, sold, distributed, marketed and/or advertised the air bag modules and/or negligently, wantonly and/or recklessly failed to provide adequate warnings and instructions to users as to air bag modules' dangerous characteristics and/or propensities.

9

26. Defendants IFG, Delphi and/or fictitious party defendants 1-24 expressly and/or impliedly warranted that the air bag modules involved in the occurrence made the basis of this Complaint were reasonably fit and suitable for the purpose for which the air bag modules were intended to be used. Plaintiff avers that said defendants breached said express and/or implied warranties in that said air bag modules were not reasonably fit and suitable for the purpose for which said air bag modules were intended to be used but, to the contrary, the air bag modules and/or any attendant equipment used therewith were inherently dangerous, unstable, defective and/or unsafe.

27. As designers, manufacturers, distributors and sellers of the air bag modules that were in a defective condition rendering the air bag modules unreasonably dangerous to foreseeable members of the traveling public such as Raymond Edwards, III, defendants IFG, Delphi and/or fictitious party defendants 1-24 are liable to plaintiff under the law of strict products liability by virtue of the facts set forth herein.

28. As a proximate result of the above-described events, Raymond Edwards, III was caused to die.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff demands judgment against the defendants, including fictitious party defendants, for punitive damages, in amounts to be determined by a struck jury, plus interest and costs.

## COUNT IV

29. Plaintiff adopts and incorporates herein by reference all prior paragraphs of this Complaint.

30. Defendants Delco, Delphi and/or fictitious party defendants 1-24 designed, manufactured, assembled, distributed, sold, marketed, and/or advertised the air bag sensors used

in the Bonneville's airbags and are or were in the business of designing, manufacturing, assembling, maintaining, repairing, servicing, marketing, distributing, and/or selling those air bag sensors.

31. On the occasion made the basis of this suit, the air bag sensors were in substantially the same condition as when designed, manufactured, distributed and/or sold and were being used by Raymond Edwards, III in a manner that was intended and foreseeable by said defendants. The air bag sensors were in a defective condition and/or in a condition that was unreasonably dangerous to Raymond Edwards, III and others. Said defendants knew or, in the exercise of reasonable care, should have known that the air bag sensors were defective and unreasonably dangerous to the human body when being used in a foreseeable manner. The defendants Delco, Delphi and/or fictitious party defendants 1-24 are liable to the plaintiff under the AELMD.

32. Defendants Delco, Delphi and/or fictitious party defendants 1-24 negligently, wantonly and/or recklessly designed, manufactured, assembled, sold, distributed, marketed and/or advertised the air bag sensors and/or negligently, wantonly, and/or recklessly failed to provide adequate warnings and instructions to users as to the air bag sensors' dangerous characteristics and/or propensities.

33. Defendants Delco, Delphi and/or fictitious party defendants 1-24 expressly and/or impliedly warranted that the air bag sensors involved in the occurrence made the basis of this Complaint were reasonably fit and suitable for the purpose for which the air bag sensors were intended to be used. Plaintiff avers that said defendants breached said express and/or implied warranties in that said air bag sensors were not reasonably fit and suitable for the purposes for which said air bag sensors were intended to be used but, to the contrary, the air bag sensors

and/or any attendant equipment used therewith were inherently dangerous, unstable, defective and/or unsafe.

34. As designers, manufacturers, distributors and sellers of the air bag sensors that were in a defective condition rendering the air bag sensors unreasonably dangerous to foreseeable members of the traveling public such as Raymond Edwards, III, defendants Delco, Delphi and/or fictitious party defendants 1-24 are liable to the plaintiff under the law of strict products liability by virtue of the facts set forth herein.

35. As a proximate result of the above-described events, Raymond Edwards, III was caused to die.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff demands judgment against defendants, including fictitious party defendants, for punitive damages, in amounts to be determined by a struck jury, plus interest and cost.

## COUNT V

36. Plaintiff adopts and incorporates herein by reference all prior paragraphs of this Complaint.

37. Defendant TRW and/or fictitious party defendants 1-24 designed, manufactured, assembled, distributed, sold, marketed and/or advertised the driver side air bag inflator used in the Bonneville's driver side air bag and are or were in the business of designing, manufacturing, assembling, maintaining, repairing, servicing, marketing, distributing and/or selling those driver side air bag inflators.

38. On the occasion made the basis of this suit, the driver side air bag inflator was in substantially the same condition as when designed, manufactured, distributed and/or sold and was being used by Raymond Edwards, III in a manner that was intended and foreseeable by said

12

defendants. The driver side air bag inflator was in a defective condition and/or in a condition that was unreasonably dangerous to Raymond Edwards, III and others. Said defendant knew or, in the exercise of reasonable care, should have known that the driver side air bag inflator was defective and unreasonable dangerous to the human body when being used in a foreseeable manner. The defendant TRW and/or fictitious party defendants 1-24 are liable to the plaintiff under the AELMD.

39. Defendant TRW and/or fictitious party defendants 1-24 negligently, wantonly and/or recklessly designed, manufactured, assembled, sold, distributed, marketed and/or advertised the driver side air bag inflator and/or negligently, wantonly and/or recklessly failed to provide adequate warnings and instructions to users as to driver side air bag inflator's dangerous characteristics and/or propensities.

40. Defendant TRW and/or fictitious party defendants 1-24 expressly and/or impliedly warranted that the driver side air bag inflator involved in the occurrence made the basis of this Complaint was reasonably fit and suitable for the purpose for which the driver side air bag inflator was intended to be used. Plaintiff avers that said defendant breached said express and/or implied warranties in that said driver side air bag inflator was not reasonably fit and suitable for the purpose for which said driver side air bag inflator was intended to be used but, to the contrary, the driver side air bag inflator and/or any attendant equipment used therewith was inherently dangerous, unstable, defective and/or unsafe.

41. As designers, manufacturers, distributors, and sellers of the driver side air bag inflator that was in a defective condition rendering the driver side air bag inflator unreasonably dangerous to foreseeable members of the traveling public such as Raymond Edwards, III,

13

defendant TRW and/or fictitious party defendants 1-24 are liable to plaintiff under the law of strict products liability by virtue of the facts set forth herein.

42.	As a proximate result of the above-described events, Raymond Edwards, III was caused to die.

**WHEREFORE, PREMISES CONSIDERED,** plaintiff demands judgment against the defendants, including fictitious party defendants for punitive damages, in amount to be determined by a struck jury, plus interest and costs.

## COUNT VI

43.	Plaintiff adopts and incorporates herein by reference all prior paragraphs of this Complaint.

44.	Defendant Autoliv and/or fictitious party defendants 1-24 designed, manufactured, assembled, distributed, sold, marketed, and/or advertised the passenger side air bag inflator used in the Bonneville's passenger's side air bag and are or were in the business of designing, manufacturing, assembling, maintaining, repairing, servicing, marketing, distributing, and/or selling those passenger side air bag inflators.

45.	On the occasion made the basis of this suit, the passenger side air bag inflator was in substantially the same condition as when designed, manufactured, distributed and/or sold and was being used by Raymond Edwards, III in a manner that was intended and foreseeable by said defendants. The passenger side air bag inflator was in a defective condition and/or in a condition that was unreasonably dangerous to Raymond Edwards, III and others. Said defendants knew or, in the exercise of reasonable care, should have known that the passenger side air bag inflator was defective and unreasonably dangerous to the human body when being used in a foreseeable

14

manner. The defendant Autoliv and/or fictitious party defendants 1-24 are liable to the plaintiff under the AELMD.

46. Defendant Autoliv and/or fictitious party defendants 1-24 negligently, wantonly and/or recklessly designed, manufactured, assembled, sold, distributed, marketed and/or advertised the passenger side air bag inflator and/or negligently, wantonly, and/or recklessly failed to provide adequate warning and instructions to users as to the passenger side air bag inflator's dangerous characteristics and/or propensities.

47. Defendant Autoliv and/or fictitious party defendant 1-24 expressly and/or impliedly warranted that the passenger side air bag inflator involved in the occurrence made the basis of this Complaint was reasonably fit and suitable for the purpose for which the passenger side air bag inflator was intended to be used. Plaintiff avers that said defendant breached said express and/or implied warranties in that said passenger side air bag inflator was not reasonably fit and suitable for the purpose for which said passenger side air bag inflator was intended to be used but, to the contrary, the passenger side air bag inflator and/or any attendant equipment used therewith was inherently dangerous, unstable, defective and/or unsafe.

48. As designers, manufacturers, distributors and seller of the passenger side air bag inflator that was in a defective condition rendering the passenger side air bag inflator unreasonably dangerous to foreseeable members of the traveling public such as Raymond Edwards, III, defendant Autoliv and/or fictitious party defendants 1-24 are liable to plaintiff under the law of strict products liability by virtue of the facts set forth herein.

49. As a proximate result of the above-described events, Raymond Edwards, III was caused to die.

**WHEREFORE, PRIMISES CONSIDERED,** plaintiff demands judgment against the defendants, including fictitious party defendants, for punitive damages, in amounts to be determined by a struck jury, plus interest and costs.

**CROSS, POOLE, GOLDASICH & FISCHER, LLC**

Silas G. Cross, Jr.          (CRO-049)
Justin L. Smith              (SMI-273)
Adam G. Cross                (CRO-093)
1416 Greensboro Avenue
Tuscaloosa, AL 35401
(205) 391-9932
(205) 391-9557 (facsimile)

**LAW OFFICES OF GENE T. MOORE, P.C.**

Gene T. Moore    w/ permission by JLS    (MOO-068)
1802 15th Street
Tuscaloosa, AL 35401
(205) 349-5413
(205) 349-2512 (facsimile)

## JURY DEMAND

Plaintiff demands a struck jury for the trial of this cause.

Silas G. Cross, Jr.          (CRO-049)
Justin L. Smith              (SMI-273)
Adam G. Cross                (CRO-093)

Gene T. Moore    w/ permission by JLS    (MOO-068)

16

**PLAINTIFF'S ADDRESS:**

Jacqueline Edwards
43 Edwards Road
Gainsville, AL 35464

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July 2008, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

*Attorney for General Motors Corporation*
Mr. Stanley A. Cash
Huie, Fernambucq & Stewart
2801 Highway 280 South, Suite 200
Birmingham, AL 35223

*Attorney for General Motors Corporation*
Mr. Franklin P. Brannen, Jr.
King & Spalding LLP
1180 Peachtree St.
Atlanta, GA 30309

and I hereby certify that I have sent the document via U.S. mail to the following non-AlaFile participants:

Legacy Pontiac-GMC, Inc.
c/o Shawn Castleman, Registered Agent
9153 Trudeau Avenue
Baton Rouge, LA 70806-8645

_____
Of Counsel

**NEWLY SUBSTITUTED DEFENDANTS TO BE SERVED BY CERTIFIED MAIL, RETURN RECIEPT REQUESTED, AS FOLLOWS:**

Delphi f/k/a IFG
c/o The Corporation Company, Registered Agent
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

Delphi f/k/a Delco Electronics LLC
c/o The Corporation Company, Registered Agent
2000 Interstate Park Dr. Suite 204

Montgomery, AL 36109

Delphi Automotive Systems Services LLC
c/o The Corporation Company, Registered Agent
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

Delphi Automotive Systems LLC
c/o The Corporation Company, Registered Agent
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109

TRW Automotive
World Headquarters
12025 Tech Center Dr.
Livonia, MI 48150

Autoliv ASP, Inc.
c/o The Corporation Company, Registered Agent
2000 Interstate Park Dr. Suite 204
Montgomery, AL 36109