09-50026-mg   Doc 1801-1   Filed 06/18/09   Entered 06/18/09 12:32:58   Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm   Pg 1 of 26
Case 2:07-cv-13888-DML-PJK   Document 35   Filed 03/30/2009   Page 1 of 26

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD A. HAYNOR,

          Plaintiff,                    Case Number 07-13888
                                            Honorable David M. Lawson

v.

GENERAL MOTORS CORPORATION,

          Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO AFFIRM PLAN ADMINISTRATOR'S DECISION AND GRANTING IN PART PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

The dispute in this case arises from the plaintiff's claim against defendant General Motors Corporation for total and permanent disability (T&PD) benefits under GM's Hourly-Rate Employees Pension Plan (HRP). Under the plan, an hourly worker may obtain such benefits if he becomes totally and permanently disabled prior to attaining age 65 and has at least ten years of credited service. The defendant's Pension Committee rejected the plaintiff's application for benefits because it found that the plaintiff had not accumulated sufficient credited service. The plaintiff does not dispute that he only actually worked as a GM hourly worker for about fourteen months; but he says he stopped working due to a work-related injury in 1978 for which he has been receiving workers' compensation benefits, and under a collective bargaining agreement in effect the plaintiff would continue to accumulate years of service while disabled. The defendant says that, according to company records, the plaintiff left employment in 1978 because he voluntarily quit, and therefore he has accumulated no credited service over the past three decades. The plaintiff filed his present complaint under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), asking the Court to overturn the decision of GM's Pension


EXHIBIT
A

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 2 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 2 of 26

Committee – the plan administrator of the HRP – denying T&PD benefits. The plaintiff since has filed two motions for summary judgment. GM has filed a motion for summary judgment to affirm the plan administrator's decision, arguing that the complaint is preempted by section 301 of the Labor Management Relations Act (LRMA), 29 U.S.C. § 185(a), and the plaintiff has failed to exhaust a series of administrative remedies required under collective bargaining agreements. The parties presented oral argument on October 23, 2008. The Court now finds that the LMRA does not bar the present action under ERISA, the plaintiff has exhausted his remedies in accordance with the plan provisions, the decision of the plan administrator that the plaintiff voluntarily quit his job instead of leaving work due to a disability is arbitrary and capricious, and the plaintiff is entitled to T&PD benefits, although the amount must be calculated. Therefore, the Court will deny the defendant's motion for summary judgment, grant the plaintiff's motions for summary judgment in part, and direct the defendant to calculate the plaintiff's benefits in accordance with this opinion within sixty days.

## I. Facts

Plaintiff Gerald Haynor, now 62, was an hourly employee at GM's now-closed Buick Fisher Body Plant in Flint, Michigan from August 26, 1977 through October 20, 1978. The circumstances of Haynor's departure from GM are the source of the benefits dispute in the present case. Haynor asserts that he never quit his job with the company and therefore accumulated twenty-seven years of service at GM after suffering a disabling work-related injury in 1978 and winning a workers' compensation claim filed in the Michigan Department of Labor, Bureau of Workers' Disability Compensation on June 28, 1979. GM vigorously but unsuccessfully contested the worker's compensation claim through all administrative tribunals and the Michigan courts. GM, on the other

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 3 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 3 of 26

hand, insists that Haynor quit his job voluntarily on October 20, 1978 "due to his failure to report

to work." Mot. of GM to Affirm the Bd. of Administration's Decision [dkt # 27], ¶ 1. In supporting

this position, GM relies on the single computer entry in Haynor's employee personnel file made on

October 20, 1978, which listed Haynor's employment status as "Voluntary Quit – Gave Notice."

A.R. 1. The author of the computer entry in question remains unidentified.

GM has taken the position that Haynor is not eligible for T&PD benefits because he has not

met the stated criteria; to be eligible, an employee would have to be "totally and permanently

disabled prior to attaining age 65" and have "at least 10 years of credited service." Dep. of Preston

Crabill, A.R. 259, p. 10. The defendant says that Haynor does not meet the second requirement.

GM officials – James LaLonde, assistant director for arbitration on contract administration for

General Motors, and Preston Crabill, director of pension plans and savings plans for GM – insist that

to challenge his status as "voluntary quit," the petitioner would have to go through the grievance

procedure under the 1976 GM-UAW Agreement, which was never utilized.

As an hourly employee of GM, Haynor was a member of the International Union, United

Auto Workers, and the terms and conditions of his employment and benefit entitlements were

governed by the GM-National Agreement and certain supplemental agreements. At the time Haynor

stopped working for the defendant, the 1976 GM-UAW National Agreement was in force, so the

substantive requirements for eligibility of an employee for pension benefits are contained in that

Agreement and the 1976 Supplemental Agreement Covering Pension Plan, which establishes the

GM Pension Plan and sets forth the procedure for administration of the Plan. A.R. 125-29. The

Supplemental Agreement Covering Pension Plan, a part of the 2003 Agreement between General

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 4 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 4 of 26

Motors Corporation and UAW, lays out the current procedure for exhausting administrative
remedies with respect to GM pension benefits.

However, GM points to other agreements, which, it contends, must govern the procedure the
plaintiff must follow for challenging the company's computer records designating him as a
"voluntary quit," thereby terminating his seniority. GM insists that the plaintiff must exhaust
remedies under at least two other procedures to reverse the designation before taking his claim to
the Pension Committee.

### A. GM-UAW Agreement

The 1976 GM-UAW National Agreement is the principal agreement governing the
relationship between a member of the UAW and GM. Among other things, it sets forth the seniority
accumulation rules and the company's policy regarding sick leaves of absence. The Agreement
states: "In compensable injury and legal occupational diseases cases, sick leave will be granted
automatically and seniority will accumulate for the full period of legal temporary disability." A.R.
55.

The GM-UAW Agreement provides for a four-step grievance procedure for adjudicating
employees' grievances. The employee first must take up the matter with his foreman. If the
foreman does not adjust the grievance, the employee must go to the Shop Committee. The third step
involves consideration by the Appeal Committee consisting of the UAW Regional Director, the
UAW Chairman of the Shop Committee, and two members of local or divisional management. The
final step is arbitration before an impartial umpire. 1976 GM-UAW Nat'l Agreement ¶¶ 28-55,
A.R., 27-35. "There shall be no appeal from the Umpire's decision, which will be final and binding
on the Union and its members, the employee or employees involved and the Corporation." A.R. 34.

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 5 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 5 of 26

B.  Intra-Union Remedy under Article 33 of the UAW Constitution

Article 33 of the UAW Constitution sets forth a mandatory procedure for union members'

appeals of disputes with their union:

> It shall be the duty of any individual or body, if aggrieved by any action, decision or
> penalty imposed, to exhaust fully the individual or body's remedy and all appeals
> under this Constitution and the rules of this Union before going to a civil court or
> governmental agency for redress.

Article 33(5) of UAW Constitution, A.R. 204.

The appeals process described in Article 33 covers appeals of "any action, decision, or

penalty by . . . (a) The International Union, its International Executive Board or any of its Officers,

Regional Directors or International Representatives; (b) Any administrative arm of the International

Union . . . , (c) A Local Union, or any of its units, committees, officers, committeepersons or

stewards; or (d) Any other subordinate body of the International Union." Article 33(1) of UAW

Constitution, A.R. 199.  The process for challenging the way a union official handles a member's

grievance requires an "appeal . . . first to the unit of an Amalgamated Local Union, then to the

Union; then to the International Executive Board and then to the Convention Appeals Committee

or where appropriate the Public Review Board." A.R. 90.

C.  1976 Supplemental Agreement Covering Pension Plan

The 1976 GM-UAW National Agreement contains a Supplemental Agreement Covering

Pension Plan, the most recent version of which was signed on September 18, 2003.  That agreement

describes the HRP and related administrative procedures.   Section 3(a) of the Supplemental

Agreement Covering Pension Plan establishes a central Board of Administration composed of six

members, "three appointed by the Corporation and three by the Union" to adjudicate employees'

claims for benefits under the Plan. A.R. 125-27.  The Board is directed to

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 6 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 6 of 26

work out matters such as but not limited to: (1) procedures for establishing Local
Pension Committees at the Divisions or plants involved; (2) the authority and duties
of such Local Pension Committees; (3) the procedures for reviewing applications for
pensions; (4) the handling of complaints regarding determination of age, service
credits, and computation of benefits; (5) procedures for making appeals to the Board;
(6) means of verifying service credits to which employees are entitled under the Plan;
(7) methods of furnishing information to employees regarding past and future service
credits; (8) the amount of time the Union members of the local committees may be
permitted to leave their work to attend meetings of the Local Pension Committees;
(9) how disputes over total and permanent disability claims will be handled,
including disputes, if any, with respect to whether a disabled pensioner engages in
gainful employment; (10) the review of pertinent information about the Plan for
dissemination to employees; (11) how pension payments will be authorized by the
Board.

A.R. 128.

The appeals procedure under this Agreement is discussed in Section 3(c):

Any employee who disputes a determination with respect to such employee's (i) age,
(ii) credited service under the Pension Plan, (iii) computation of pension benefits or
supplements under the Pension Plan, (iv) partial or complete suspension of
supplements, or (v) whether such employee is engaged in gainful employment except
for purposes of rehabilitation, may file with the Center a written claim on form BA
1, "Employee Claim to Pension Committee." Such claim shall be filed within 60
days, including 60th day of receipt of such determination.

A.R.194.

The Agreement further provides that, "[i]f the employee is denied a T&PD retirement for

reasons other than medical disqualification, the employee may appeal by initiating the procedure set

forth in Section K of this Appendix D within 180 day period. . . ." A.R. 185 (*see* Ex. D to GM's

Mot. for Summary Jmt. [dkt # 27]). In turn, section K provides: "When such claim is filed, the

Pension Committee shall review such claim with the employee, return one copy of the BA 1 form

to the employee with a written answer to the claim, and, if the claim is rejected, the reasons

therefor." A.R. 195 (Section K of the 3(c) Agreement). If the employee is not satisfied with the

Committee's decision, he may request the Committee to refer the matter to the Board of

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 7 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 7 of 26

Administration for decision, provided that he makes his request in writing. *Ibid.* The Board must keep the Pension Committee apprised of the decision in the referred case. Mot. of Def. General Motors to Affirm [dkt # 27], at 6.

The Supplemental Agreement at section 3(a)(9) provides that the decisions by the Pension Board of Administration are "final and binding." A.R. 196. However, that language is subject to a further proviso that allows a judicial remedy under ERISA:

> In the event the employee's appeal is denied, in whole or in part, the employee may follow the Voluntary Appeal Process under Appendix D, Paragraph B(3)(e)(3) of the Plan or the employee has the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act (ERISA) of 1974.

Appx. D, B, 3(e)(2), A.R. 186.

### D. Procedures followed by the plaintiff

The plaintiff first challenged the denial of pension benefits in 2004 when he filed a lawsuit in this Court alleging the same claims as in the present action. When GM pointed out that the plaintiff had administrative remedies available to him, he agreed to dismiss the case voluntarily without prejudice for failure to exhaust administrative remedies. *Haynor v. General Motors Corp.*, No. 04-10223 (E.D. Mich. 2006). In motions filed in that case, the defendant raised all the same preemption and exhaustion issues raised here. Without specifying the exact basis of his concession, the plaintiff agreed that he had not exhausted his claim, and on February 28, 2006, the Court entered an order of dismissal without prejudice.

Following the dismissal of the plaintiff's 2004 lawsuit, the plaintiff's attorney sent a letter to GM with Mr. Haynor's application for disability benefits, a copy of the Statement of Employee's Physician Form, and other documents intended to show that Haynor did not voluntarily quit his job at GM but rather suffered a permanent work-related disability. Having received no response,

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 8 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 8 of 26

Haynor's attorney contacted the Pension Board of Administration to seek total permanent disability

retirement. The plaintiff's attorney contacted the Board first on October 17, 2006, then on

December 29, 2006, and then again, on January 26, 2007 to request the "BA-1" form entitled

"Employee Claim to Pension Committee" that had to be filled out to initiate the Board's review.

In response to these inquiries, Lucy McDermott-Contreras, GM's client services manager at the GM

Benefit & Services Center, admonished:

> The nature of the documents you provided suggest [*sic*] that you might be contending
> that Mr. Haynor is eligible for credited service due to Workers Compensation
> payments. I do not see that he was ever on an approved Workers Compensation
> leave of absence as required by the HRP in order for credited service toward
> retirement to accrue.

Letter from Lucy McDermott-Contreras, Dec. 29, 2006, Ex. 3 to Pl.'s Cross Mot. for Summary Jmt.

[dkt # 18].

However, in response to Haynor's third request for a BA-1 form, Preston M. Crabill, director

of Pension & Savings Plans with GM, finally wrote to Haynor's attorney, attaching the requested

form, explaining:

> You may, of course[,] arrange for Mr. Haynor to prepare and submit the form BA-1.
> However, this matter is not at the point that such a Claim to Pension Committee is
> necessary. *We are still in the process of investigating whether or not Mr. Haynor's
> status was correctly reflected with his employment record. The answer to this
> question lies with the Workers Compensation Activity and Labor Relations.* Once
> we have the answer to this question, you will be advised in by [*sic*] letter from me
> as the Plan Administrator. Once you receive this final response and if there is still
> disagreement with regard to the eligibility of Mr. Haynor to apply for a T&PD
> retirement, then would be the appropriate time to file the BA-1 form.

Letter to Russell C. Babcock from Preston M. Crabill, Jan. 25, 2007, Ex. 4 to Pl.'s Cross Mot. for

Summary Jmt. [dkt # 18] (emphasis added).

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 9 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 9 of 26

On March 5, 2007, Crabill finally completed the "investigation" of Haynor's status and wrote

that Haynor was a "voluntary quit" as of October 20, 1978, and that as such, his rights under the

pension plans had not vested.   Crabill advised Haynor of his rights of appeal to the Pension

Committee within sixty days of the receipt of the letter: "The appeal process under the HRP allows

an employee to file an appeal when they dispute credited service under the HRP provisions of

computation of pension or supplements."  Letter to Russell C. Babcock from Preston M. Crabill,

March 5, 2007, Ex. 7 to Pl.'s Cross Mot. for Summary Jmt. [dkt # 18].

Following Crabill's advice, the plaintiff filed a BA-1 form to contest his employment status

and his eligibility for disability benefits on April 13, 2007.  Because the facility in Flint was closed,

GM and UAW agreed that GM-UAW Pension Board of Administration would hear the claim.

On June 19, 2008, the Board affirmed the Pension Committee's decision on the ground that

the plaintiff had accumulated only one year of credited service.  The Board wrote:

> The Board of Administration, after reviewing form BA-1 with supporting documents,
> and applicable provisions of the Plan, affirms the Pension Committee's decision.
> The Pension Board of Administration administers the appeal procedure set forth in
> Appendix D, Section K of the Supplemental Agreement Covering Pension Plan and
> has no authority to alter or reinstate seniority.  Rather, the grievance procedure set
> forth in the GM-UAW National Agreement would be the proper avenue for
> addressing seniority or the loss of seniority.

GM-UAW Bd. of Administration, June 19, 2008, A.R. 206.  In justifying its decision, the Board

explained:

> On August 25, 2004, Mr. Haynor filed a lawsuit seeking entitlement to total and
> permanent disability benefits under the HRP.   The Motion to Affirm the
> Administrator's Decision or in the Alternative for Summary Judgment filed by
> General Motors explained that because Plaintiff's employment status was a
> "voluntary quit," he must first file a grievance under the GM-UAW National
> Agreement to contest this status before he could claim benefits under the HRP.  It
> further appears that the Court, on February 28, 2006, dismissed Mr. Haynor's lawsuit
> because of his failure to exhaust administrative remedies.

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 10 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 10 of 26

*Id.*, A.R. 205.

The administrative record before the Board consisted of Haynor's employment history showing his status as "Voluntary Quit," GM's Motion to Dismiss or Affirm the Administrator's Decision filed in the 2004 case, affidavits from James W. LaLonde (to the effect of "Voluntary Quit – Gave Notice" entry), Preston M. Crabill (testifying to various administrative remedies in place), depositions of the same people, some other documents from the record of this Court's 2004 case, and the workers' compensation determinations at various levels of the Michigan administrative and court proceedings. A.R. 207-305.

The plaintiff did not take up the invitation to file a grievance or pursue an intra-union appeal. Instead, once he received the denial from the Board of Administration, he brought the present lawsuit seeking redress under ERISA. The parties then filed their cross-motions for summary judgment.

## II. LMRA preemption

GM argues that the plaintiff's claim is completely preempted under section 301 of the Labor Management Relations Act ("LMRA"). Citing *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994), and *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir. 1991), the defendant asserts that the present dispute implicates the terms of the collective bargaining agreement, which triggers LMRA preemption and bars suit in court unless the plaintiff also pleads and proves that the union breached its duty to the plaintiff of fair representation.

The Court disagrees.

It is true that Labor Management Relations Act governs "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a); *see*

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 11 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 11 of 26

*Brittingham v. General Motors Corp.*, 526 F.3d 272 (6th Cir. 2008). And "[c]omplete preemption

occurs in cases that fall within the scope of the LMRA." *Loftis v. United Parcel Service, Inc.*, 342

F.3d 509, 515 (6th Cir. 2003) (citing *Miller v. Norfolk and Western Ry. Co.*, 834 F.2d 556, 564 (6th

Cir. 1987). However,

> "not every dispute concerning employment, or tangentially involving a provision of
> a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the
> federal labor law." It is only "when resolution of a state-law claim is *substantially*
> dependent upon analysis of the terms of an agreement made between the parties in
> a labor contract, that [the] claim must either be treated as a § 301 claim . . . or
> dismissed as pre-empted by federal labor-contract law."

*Brittingham*, 526 F.3d at 278 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220

(1985)). The *Brittingham* court explained the rationale behind federal preemption of state law

claims relating to collective bargaining agreements as founded on the necessity of having nationally

uniform "labor-law principles" govern such disputes. *Ibid.* (quoting *Lingle v. Norge Div. of Magic

Chef, Inc.*, 486 U.S. 399, 405-06 (1988). In light of this precedent, the Sixth Circuit has formulated

a two-step approach for determining whether such claims are preempted by section 301. "'First, the

district court must examine whether proof of the state law claim requires interpretation of collective

bargaining agreement terms.'" *Ibid.* (quoting *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216

(6th Cir. 1994)). "The second step requires a court to 'ascertain whether the right claimed by the

plaintiff is created by the collective bargaining agreement or by state law.'" *Ibid.* Both criteria must

be satisfied to avoid preemption.

The plaintiff's claim plainly arises under the HRP, which was created by the collective

bargaining agreement. The problem with the defendant's argument is that the plaintiff has brought

no state law claims. His argument for relief is based solely on ERISA, a federal statute that itself

contains express preemption provisions based on the need for national uniformity. *See* 29 U.S.C.

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 12 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 12 of 26

§ 1144(a); *Allis-Chalmers Corp.*, 471 U.S. at 210-13. The Sixth Circuit has held that a claim for the

denial of benefits under an ERISA plan that is established by a collective bargaining agreement may

be brought under either ERISA, the LMRA, or both statutes. *Biros v. Spalding-Evenflo Co., Inc.*,

934 F.2d 740, 742 (6th Cir. 1991)). Therefore, the defendant's argument that the plaintiff's ERISA

claim is preempted by the LMRA is without merit. The cases cited by the defendant that find

LMRA preemption of state law claims and those dealing with hybrid section 301 claims do not

provide guidance on this issue because they do not involve claims asserted under ERISA. *See*

*DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994) (holding that LMRA preempted

plaintiff's state law claims against employer for sexual harassment, slander, tortious interference

with economic relations, conspiracy, and intentional infliction of emotional distress); *Jones v.*

*General Motors Corp.*, 939 F.2d 380 (6th Cir. 1991) (holding that an employee's state law claim

against employer for breach of settlement agreement arrived at by virtue of grievance process

established by the collective bargaining agreement was preempted by Labor Management Relations

Act). The LMRA does not preempt the plaintiff's present claim.

### III. Exhaustion of other contractual remedies

Citing *Clayton v. UAW*, 451 U.S. 679 (1981), the defendant argues that the principle of

exhaustion of administrative remedies in the context of grievance procedure and intra-union remedy

bars the plaintiff's claim for HRP benefits. The Sixth Circuit has held that in most cases remedies

provided by the UAW Constitution and grievance procedure provided under the GM-UAW National

Agreement must be exhausted before bringing a suit in federal court. *See Monroe v. Int'l Union,*

*UAW*, 723 F.2d 22 (6th Cir. 1983). And in the context of ERISA claims such as the present one, the

law is well settled that ERISA imposes a requirement of exhaustion of administrative remedies

before commencing litigation in court. *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994);

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 13 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 13 of 26

*see* 29 U.S.C. § 1133. However, "[w]hile 'application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court,' *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998), that discretion must be exercised 'to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile,' *id.* at 419; *see id.* at 420 ('[W]hen resort to the administrative review process would be an exercise in futility, the exhaustion of remedies doctrine shall not apply.')." *Dozier v. Sun Life Assur. Co. of Canada*, 466 F.3d 532, 534 (6th Cir. 2006).

There is no question that the plaintiff exhausted the administrative remedies required by the HRP. The first step calls for claim adjudication by the plan administrator after the employee submits form HRP-15, "Application for Total and Permanent Disability Benefits." Suppl. Agr. at 95, A.R. 184. Next, "[i]f the employee is denied a T&PD retirement for reasons other than medical disqualification, the employee may appeal by initiating procedure set forth in Section K of this Appendix D." *Id.* at 97, A.R. 195. That language refers to the appeal procedure through the Pension Committee, where "[a]ny employee who disputes a determination with respect to such employee's . . . (ii) credited service under the Pension Plan, (iii) computation of pension benefits or supplements under the Pension Plan . . . may file with the Center a written claim on form BA 1, "Employee Claim to Pension Committee." *Id.* at 117, A.R. 195. Then, the procedure described in Section K directs the aggrieved employee to the Board of Administration by completing form BA 2. And after that, the employee may either follow the Voluntary Appeal Process or bring a civil action under Section 502(a) of the ERISA. *Id.* at 98, A.R. 186.

Haynor did all of that, and then filed his lawsuit. GM now contends that it advised the plaintiff on multiple occasions that first, he must exhaust his remedies under the 1976 GM-UAW Nation Agreement, and then, to the extent he charges that his union unfairly represented him or did

-13-

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 14 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 14 of 26

not properly bring a grievance on his behalf, he must pursue his intra-union remedy under Article 33 of the UAW Constitution. After that, presumably he would have to exhaust his remedies under 1976 Supplemental Agreement Covering Pension Plan. The affidavits of Preston Crabill and James LaLonde attest, although without any references to controlling sources, that while the Board of Administration is the correct place to pursue the claims for pension benefits, it is not an appropriate forum to dispute factual issues underlying one's entitlement to such benefits on the basis of seniority.

The Court cannot accept the defendant's argument for several reasons. First, the plaintiff has exhausted his remedies as far as the ERISA claim is concerned. Second, based on the Plan documents and the defendant's conduct, it appears that the Pension Board actually had the authority to determine issues relating to credited service, which forms the basis of this dispute. Third, as explained in more detail below, GM already has had the opportunity to litigate the question whether the plaintiff voluntarily walked away from his job in October 1978 when it contested – and lost – the plaintiff's worker's compensation claim. Therefore, pursuing that same issue through several internal and administrative procedures would serve no useful purpose.

It is true that many courts insist on strict adherence to the administrative procedures set forth under a particular plan, *see, e.g., Phipps v. Metro. Life Ins. Co.*, 625 F. Supp. 1038 (S.D. Ohio 1985) (holding that employee could not sue due to failure to exhaust administrative remedies, even though the employee's request for internal review had become bogged down due to parties' inability to jointly agree on a doctor to perform another evaluation); however, compliance with all administrative procedures is not absolute. *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (6th Cir. 1975); *Gray v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 447 F.2d 1118, 1124 (6th Cir. 1971). In the case of a dispute by a member with his union, "[t]he primary benefit of requiring

-14-

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 15 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 15 of 26

initial submission of employee complaints against a union that refuses to help process a grievance against a company is that internal machinery can settle difficulties short of court action." *Ruzicka*, 523 F.2d at 311. There is no such dispute here between the plaintiff and the UAW. Haynor does not allege wrongful discharge or violation of fiduciary duties by the union, so as to require exhaustion of intra-union remedy or mandate the grievance procedure for wrongful termination disputes.

Moreover, it is unclear how an Umpire or any other decision maker in the hierarchical chain designated in the 1976 GM-UAW Agreement would be better equipped to determine Haynor's employment status after the workers' compensation appeal board's determination, when the Board of Administration is expressly entrusted with the responsibility of working out matters such as "the handling of complaints regarding the determination of age, service credits, and computation of benefits" and "means of verifying service credits to which employees are entitled under the Plan." Suppl. Agr. Covering Plan, A.R. 128. In fact, the evidence indicates that the Pension Board actually undertook the investigation and determination of this issue itself. For instance, in his letter on January 25, 2007, Crabill advised the plaintiff's counsel that the Committee is "still in the process of investigation whether or not Mr. Haynor's status was correctly reflected in his employment record." Letter to Russell C. Babcock from Preston M. Crabill, Jan. 25, 2007, Ex. 4 to Pl.'s Cross Mot. for Summary Jmt. [dkt # 18]. "Once we have the answer to this question," wrote Crabill, "you will be advised in by [*sic*] letter from me as the Plan Administrator." *Ibid.* Crabill added that Lucy McDemott-Contreras is "leading this investigation and is familiar with the case." *Ibid.* Further, Crabill wrote in his next correspondence to the plaintiff's counsel that, "[t]he appeal process under the HRP allows an employee to file an appeal when they dispute credited service under the HRP provisions of computation of pension or supplements. If Mr. Haynor wishes to file an appeal, he

09-50026-mg   Doc 1801-1   Filed 06/18/09   Entered 06/18/09 12:32:58   Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm   Pg 16 of 26
Case 2:07-cv-13888-DML-PJK   Document 35   Filed 03/30/2009   Page 16 of 26

should do than [sic] within 60 days of receipt of this letter." Letter to Russell C. Babcock from Preston M. Crabill, March 5, 2007, Ex. 7 to Pl.'s Cross Mot. for Summary Jmt. [dkt # 18].

Furthermore, requiring an employee to go through a four-step grievance procedure now (and potentially, through yet another intra-union procedure later) contravenes the Department of Labor policy expressed in 29 C.F.R. § 2560.503-1, which states: "The claims procedures of a plan that provides disability benefits will be deemed to be reasonable only if . . . the claims procedures do not contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of the Act." 29 C.F.R. §§ 2560.503-1(c)(2)-(d). According to the Secretary, reasonable claim procedures "do not contain any provision, and are not administered in any way, that unduly inhibits or hampers the initiation or processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3); *see Menz v. Procter & Gamble Health Care Plan*, 520 F.3d 865 (8th Cir. 2008) (holding that procedural irregularity resulting in more than two appeals during processing of ERISA participant's medical benefits claim and stemming from confusion as to which of two claims processors was responsible for administering claim, and which plan attempted to remedy by giving participant an additional appeal, did not warrant less deferential standard of review in ERISA benefits denial case).

"A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir.1990). That goal would be hindered, rather than advanced, by subjecting the petitioner to new rounds of administrative grievances. The Court finds that the plaintiff's efforts to exhaust his administrative remedies have been adequate.

IV. Review of Pension Board's decision

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 17 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009 ˙ Page 17 of 26

Turning to the merits of the Pension Board's decision to deny T&PD benefits, the parties

agree that the plan documents call for an "arbitrary-and-capricious" standard of review. "The

arbitrary or capricious standard [of review] is the least demanding form of judicial review of

administrative action. When it is possible to offer a reasoned explanation, based on the evidence,

for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos.*

*Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotes and citation omitted). An

administrator's decision will be upheld under the arbitrary and capricious standard "if it is the result

of a deliberate, principled reasoning process, and is rational in light of the plan's provisions."

*Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 165 (6th Cir. 2007) (internal citations

omitted). A decision reviewed according to this standard must be upheld if it is supported by

"substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140,

1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is

"rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.

1993).

Nevertheless, the administrator's decision may be arbitrary and capricious if it relies on an

interpretation of the plan that found no support in the text. *See Haus v. Bechtel Jacobs Co.*, 491 F.3d

557, 564 (6th Cir. 2007). "[T]he arbitrary-and-capricious standard of review is not a 'rubber stamp

[of] the administrator's decision.'" *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 165 (6th

Cir. 2007) (quoting *Jones v. Metro Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). In *Rochow v.

Life Insurance Company of North America*, 482 F.3d 860 (6th Cir. 2007), the Sixth Circuit found

that an administrator had acted arbitrarily and capriciously where he failed to "'review . . . the

quality and quantity of the . . . evidence and the opinions on both sides of the issues.'" *Id.* at 865

09-50026-mg   Doc 1801-1   Filed 06/18/09   Entered 06/18/09 12:32:58   Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm   Pg 18 of 26
Case 2:07-cv-13888-DML-PJK   Document 35   Filed 03/30/2009   Page 18 of 26

(quoting *McDonald v. W.S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). The court held that the administrator's denial of benefits failed under this standard.

Contrary to the plaintiff's assertion, the existence of a conflict of interest that arises from a plan administrator deciding issues in which the company has a financial interest does not require a different standard, although the conflict "shapes" the application of the arbitrary and capricious standard of review. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991) (holding that where a company pays plan beneficiaries from its own assets, its "perpetual conflict with its profit-making role as a business" must "shape[]" the "application of the [arbitrary and capricious] standard") (citing *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1561-63 (11th Cir. 1990)); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion.") (internal quotation and citations omitted).

The sole ground upon which the Pension Board denied the plaintiff's T&PD benefits application was his failure to accumulate ten years of credited service. However, the HRP plan documents specifically provide that service can be credited for the time an employee is absent from work because of occupational injury for which an employee receives workers' compensation:

> An employee who after October 1, 1950 shall be absent from work because of occupational injury or disease incurred in the course of such employee's employment with the Corporation, and on account of such absence receives Workmen's Compensation while on Corporation approved leave of absence shall be credited with 40 hours for each complete calendar week of such absence after September 1, 1961.

The GM Hourly-Rate Employees Pension Plan § 2(b)(2), A.R. 147.

No approval of the Company is required for a grant of sick leave if an employee suffers "compensable injury" or "legal occupational disease":

-18-

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 19 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 19 of 26

> In compensable injury and legal occupational disease cases, sick leave will be granted automatically and seniority will accumulate for the full period of legal temporary disability. Temporary employees disabled by compensable injury or legal occupational disease shall be given credit for the period of such disability toward acquiring seniority.

1976 GM-UAW Nat'l Agr. § 108, A.R. 55.

James LaLonde, Assistant Director of Arbitration and Contract Administration, opined that the compensable injury is not defined anywhere in the agreement, but rather, it is defined by the administrative agencies of the state, LaLonde's Dep., A.R. 251-52, that is, the workers' compensation bureau.

Another section of the GM-UAW National Agreement provides different treatment for workers absent due to sick leave due to illness, limiting accumulation of seniority "[i]f the employee is laid off for a continuous period equal to the seniority he had acquired at the time of such layoff period or eighteen (18) months whichever is longer. . . ." 1976 GM-UAW Nat'l Agr. § 64(e); *see also* 1976 GM-UAW Nat'l Agr. § 106, A.R. 55. Preston Crabill, who administers the provisions of the pension plan, explained the difference between injured workers and those absent due to illness:

> Under the terms of the 1976 agreement, that as long as the employee's status is that they're absent from work due to a compensable injury, then they continue to receive credited service on a 40-hour per week basis as is specified in the plan.

> If their status is sick leave of absence, then they only receive credited service in accordance with the provisions of the plan, which would be a maximum of 11 months of credited service [in the plaintiff's case].

Dep. of Preston Crabill, A.R. 261-62. Crabill confirmed that a person may accumulate years of service even while absent due to a work-related injury:

> If the person continued to be an employee, continued to be absent from work because of a compensable injury and their status continued to be off work and receiving

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 20 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 20 of 26

workers' compensation due to a compensable injury, then, yes, they would continue
to receive 40 hours of credited service for each week while absent.

Dep. of Preston Crabill, A.R. 262.

The Pension Board found that none of these provisions applied to the plaintiff because,
according to a computer record, the plaintiff voluntarily quit and did not leave work due to a
compensable injury. The plaintiff's receipt of workers' compensation benefits is well documented;
it is therefore puzzling that, having undertaken the investigation into Haynor's status at first, and
having engaged Ms. Contreras to inquire into the controversy surrounding the computer entry, the
defendant then abandoned these efforts and simply denied Haynor's request because "his contention
that he should have seniority reinstated is not a proper topic for the Pension Board of
Administration," and it has "no authority to alter or reinstate seniority." A.R. 206. Although the
Pension Committee claims to have considered only the "Memorandum of Law filed by General
Motors in support of its Motion to Affirm the Administrator's Decision, the Affidavits and
deposition testimony of James W. LaLonde and Preston M. Crabill, the Statement of General Motors
for the Case Management Status and Scheduling Conference, and the Order of Dismissal entered
on February 28, 2006," A.R. 206, the administrative record before the Board was much more
comprehensive than that. Apart from the documents named in the decision, it included a complete
file of decisions of various-level administrative agencies and of the Michigan Court of Appeals on
the issue of workers' compensation, the decisions that unanimously concluded that Haynor suffered
a work-related injury and entitled him to an open award of workers' compensation benefits.

That evidence shows that the plaintiff was injured in February 1978 when he fell down stairs
at work and in October 1978 when he suffered a repetitive motion injury. After the injury in

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 21 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 21 of 26

October of 1978, the plaintiff filed a workers' compensation claim with the Michigan Department

of Labor Bureau of Workers' Disability Compensation complaining that

> the injury or disablement occurred at Flint, Genesee County, Michigan, and in the
> following manner: Repetitive, strenuous standing, lifting, twisting, bending and
> stooping caused and/or precipitated and/or accelerated and/or aggravated claimant's
> left shoulder, left cervical area, low back and both lower extremities to a condition
> of disability prior to and at the time of claimant's last day worked.

Compl., Ex. # 1; Petition for Hrg., Bureau of Workers' Disability Compensation.

According to the plaintiff, his congenital and developmental spinal defects were aggravated

when, during a contract dispute, he had to work with welding guns that were positioned too far down

the assembly line and the plaintiff had to "fight the guns" that would spring back "constantly hitting

plaintiff's back, causing back and left shoulder problems" and "severe pain underneath [his]

shoulder blade." Compl., Ex. # 3; Workers' Compensation Appeal Bd. Decision, at 5. The plaintiff

also claims to have suffered back problems when "[o]n February 6, 1978, plaintiff stepped on a bolt

as he descended a steel staircase, caught his shoe, and fell down five or six steps, landing first on

his buttocks and then fell on his back." *Id.* at 6.

As a result of these incidents, Haynor began to complain increasingly about numbing of his

feet and experiencing intolerable pain in his back and shoulders. When, on the day of his alleged

resignation, the plaintiff was at work (he returned to work from a leave of absence on October 16,

1978, and his alleged resignation took place on October 20, 1978),

> defendant was short of help. Plaintiff was having a lot of physical difficulty but,
> first, could not get treatment at the medical facility, and, second, could not get relief
> later to go back to the medical facility. Even the help of the committee man was
> enlisted. After hours back and forth, he punched out. . .
> Plaintiff went immediately to the emergency room of Flint Osteopathic
> Hospital. After examination, he was sent home, and went to Dr. Buchanan the next
> day.
> The doctor's records contained a note, the significance of which he could not
> state, that, on January 29, 1979, plaintiff went back to defendant and was refused

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 22 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 22 of 26

work. The return to work was not Dr. Buchanan's idea; "Now, whether this means
he wanted to go back or thought maybe he would go back or wanted to try it if they
would give him a different job or something, I don't know." Thus, for all we do
know, the application would well have been for favored work.

According to testimony recorded on page 20 of the transcript of Dr.
Buchanan's deposition, sick leave was extended, in January 1979, to February 26,
1979. This does not, however, mean that plaintiff in fact recovered by the end of
February . . . .

*Id.* at 8-9.

The plaintiff was diagnosed with lumbar spinal stenosis causing nerve root irritation. In the

opinion of the plaintiff's doctor, "acute attacks [of the petitioner's condition] can be avoided by

avoiding repetitive motion." *Id.* at 11. The workers' compensation bureau granted the plaintiff's

request and on April 22, 1980 awarded the plaintiff retroactive "compensation at the rate of $159.00

per week for partial/total disability to said employee from 10-19-1978 to 4-22-1980 inclusive. . . ."

Compl., Ex. # 2; Decision, Bureau of Workers' Disability Compensation. In addition to an award

of retroactive compensation, the defendant was ordered to pay an open award – i.e., "compensation

at the rate of $159.00 until further order of the Bureau. . . ." *Ibid.*

GM appealed to the Workers' Compensation Appeal Board. The defendant's primary

arguments were that Haynor walked away from work within his capacity, after which he engaged

in the "activities with excavation and home remodeling while earning an estimated $7,500 after

October, 1978"; that Dr. Buchanan released plaintiff to return to work without any restrictions on

February 26, 1979; and that the plaintiff's health issues stem from his congenital and developmental

anomalies and traumas that occurred prior to his employment at the defendant's plant. Compl., Ex.

# 3; Decision of Workers' Compensation Appeal Bd. at 2. But the majority of the board's members

disagreed, and affirmed an award, stating

[t]his could well all have been true before plaintiff came to defendant but no work
or accident before the employment had resulted in any but temporary symptoms, if

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 23 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 23 of 26

that. Work and injury at defendant, on the other hand, did result in permanent symptomatology of varying degrees and, moreover, appear to have elevated him to a greater level of vulnerability.

*Id.* at 11. The appeal board described the plaintiff's complaint, confirming the plaintiff's diagnosis

of lumbar stenosis as a work-related injury:

> Plaintiff claimed that bending, twisting and lifting during production relief duties for the defendant included grasping for suspended welding guns that hit his upper back, with increasing shoulder pains and making the use of his left arm uncomfortable. . . . . After falling five to six steps on his buttocks and back at defendant's plant in February, 1978, plaintiff continued working through April, 1978, with increasing low back and leg symptoms that promoted wearing support hose and special shoes, with little relief of his symptoms. Although initially testifying to working continuously, plaintiff clarified that he was off on sick leave after April, 1978 until working four to five days in October, 1978, then leaving after being unable to tolerate increased symptoms from swinging the welding guns down and under shelf panels.
>
> . . .
>
> I find this record consistent with a nondisabling prior leg injury during strenuous construction activities by plaintiff prior, during and after his period of employment by defendant. . . We find that plaintiff's February, 1978 injury from falling down several steps increased his lumbar-cervical-leg symptoms prior to his taking sick leave in April, 1978.

Decision on Review, Workers' Compensation Appeal Board, A.R. 291-93.

The defendant then appealed to the Michigan Court of Appeals, which denied the application

for leave to appeal "for lack of merit in the grounds presented." Compl., Ex. 4, *Haynor v. General*

*Motors Corp.*, No. 81539, March 20, 1985. On December 17, 1985, the appellate court denied the

defendant's motion for reconsideration. *Haynor v. General Motors Corp.*, No. 81539, Dec. 17,

1985.

In light of the defendant's acknowledgment through its representatives LaLonde and Crabill

that a "compensable injury" is defined by the workers' compensation laws ("'compensable injury'

is not defined anywhere in the agreement, but rather, it is defined by the administrative agencies of

the state," LaLonde's Dep., A.R. 251-52; "[t]he answer to this question [of whether Mr. Haynor's

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 24 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 24 of 26

status was correctly reflected in his employment record"] lies with the Workers Compensation
Activity and Labor Relations," Letter to Russell C. Babcock from Preston M. Crabill, Jan. 25, 2007,
Ex. 4 to Pl.'s Cross Mot. for Summary Jmt. [dkt # 18]), it is virtually incomprehensible why the
defendant would rely on an anonymous computer entry to determine that the plaintiff voluntarily
quit instead of the administrative and judicial determinations of the State of Michigan that the
plaintiff left work due to a work-related injury. GM's argument that the plaintiff walked away from
his job was rejected by the workers' compensation appeal board.   Common law doctrines of
collateral estoppel and res judicata apply to final determinations by administrative agencies acting
in judicial capacity, *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991).
The failure of the Pension Board to recognize the force of those decisions would be irrational in light
of the plan's provisions even if they were not binding. *See Glenn v. MetLife*, 461 F.3d 660, 669 (6th
Cir. 2006) (holding that the plan administrator's failure to address the Social Security
Administration's finding of the claimant's disability rendered the decision arbitrary and capricious);
*Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 553 (6th Cir. 2008) (holding that a failure of an
ERISA plan administrator to address the Social Security Administration's determination that
claimant is "totally disabled" is "yet another factor that can render the denial of further long-term
disability benefits arbitrary and capricious").

As noted earlier, the Pension Committee and the Board of Administration are expressly
authorized to determine issues of credited service for the purposes of pension determination, and
they would certainly not hesitate to reduce the amount of pension benefits by the amount of workers'
compensation payments. *See* Suppl. Agr. App'x D (G), A.R. 194. The defendant attempts to
portray the issue as one of "seniority," but to the extent there is any difference between "seniority"
and "credited service," it is the latter that governs eligibility for benefits and the determination of

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 25 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 25 of 26

which is expressly included within the powers of the pension committee. The GM Hourly-Rate Employees Pension Plan, Eligibility for Retirement § 4(a), A.R. 133.

The Court finds, therefore, that the decisions of the Pension Committee and the Board of Administration denying the plaintiff's application for T&PD benefits on the basis of want of sufficient years of credited service is arbitrary and capricious. The evidence in the administrative record plainly shows that the plaintiff suffered a work-related injury, he left work due to that injury, he was determined to have a compensable injury by the State of Michigan's administrative and judicial departments, and Plan documents provide that he was accumulating more than ten years of credited service during his period of disability while he was receiving an open award.

### V. Conclusion

Because the decision of the defendant's HRP plan administrator was arbitrary and capricious, it will be reversed. The parties have not furnished information to the Court, and the Court cannot discern from the administrative record, the amount of benefits to which the plaintiff is entitled. That information will be required before a judgment can be entered. Therefore, the Court will direct the defendant to calculate the total and permanent disability benefits under GM's Hourly-Rate Employees Pension Plan benefits owed to the plaintiff through the current date and going forward.

Accordingly, it is **ORDERED** that the defendant's motion to affirm the plan administrator's decision [dkt #27] is **DENIED**.

It is further **ORDERED** that the plaintiff's motions for summary judgment, construed as motions to reverse the plan administrator's decision and award benefits [dkt #18, 32], are **GRANTED**.

It is further **ORDERED** that the defendant shall determine the amount of past due and current monthly benefits owed to the plaintiff under GM's Hourly-Rate Employees Pension Plan in

09-50026-mg    Doc 1801-1    Filed 06/18/09    Entered 06/18/09 12:32:58    Exhibit A -
Opinion and Order Denying Defendants Motion to Affirm Plan Adm    Pg 26 of 26
Case 2:07-cv-13888-DML-PJK    Document 35    Filed 03/30/2009    Page 26 of 26

accordance with this opinion and order and file a statement with the Court **on or before May 15,**

**2009**.

                                    s/David M. Lawson_____
                                    DAVID M. LAWSON
                                    United States District Judge

Dated:  March 30, 2009

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2009.

                s/Lisa M. Ware_____
                LISA M. WARE

</div>