# Exhibit B



# NATIONAL FUEL RESOURCES, INC.
## NATURAL GAS FIRM SALES PURCHASE ORDER
## National Grid - CITYGATE

| SELLER: | BUYER: |
|---|---|
| National Fuel Resources, Inc. | General Motors Corporation |
| **PAYMENTS & INQUIRIES TO:** | **INVOICES & INQUIRIES TO:** |
| Attn: Accounts Receivable<br>P.O. Box 9072<br>Williamsville, NY 14231<br>Phone: (716) 630-6786<br>Fax: (716) 630-6744 | Attn: Attn: Mr. Paul Mackey<br>Salina Industiral Park ADM03<br>Syracuse, New York 13206<br>Phone: (315) 487-9372<br>Fax: (315) 487-2064 |

| | |
|---|---|
| SERVICE LOCATION(S) & ACCOUNT NUMBER(S): | [Salina Industrial Park ADM03, Acct# 26751-96113] |
| QUANTITY: | Buyer's full natural gas requirements for the Service Location(s). |
| TERM: | **1 year** beginning on the first eligible meter reading date after **November 1, 2008**. Prior to the end of your contract term, you will receive new program terms and conditions. |
| TRANSPORTATION AGENCY ELECTION: | By signing below, Buyer elects and hereby authorizes Seller to act as Buyer's agent for nominations and transportation under this Contract. |
| PRICE: | **Monthly NYMEX (last three day average settlement price) plus $1.69 per Dth delivered to the Citygate (includes: (a) cost of gas; and (b) cost of delivery to Your Utility.) Your Utility transportation charges will be separately billed by National Grid. This price is subject to all applicable taxes and any utility imposed balancing charges.** |
| SECURITY: | **Buyer shall provide a Letter of Credit to Seller for any and all agreements by and between Buyer and Seller, including, but not limited to, this Purchase Order. Such Letter of Credit shall be effective for the entire term of this Purchase Order. The amount of the Letter of Credit shall be USD $1,800,000 (One Million Eight Hundred Thousand Dollars) beginning November 1, 2008 and ending May 31, 2009 and then in the amount of USD $250,000 (Two Hundred Fifty Thousand Dollars) beginning June 1, 2009 and ending October 31, 2009. Seller reserves the right to require security in addition to such Letter of Credit during the term of this Purchase Order.** |

**THE TERMS AND CONDITIONS ON THE FOLLOWING PAGE ARE A PART OF THIS CONTRACT**

This Agreement may be executed by facsimile.

| SELLER: | BUYER: |
|---|---|
| National Fuel Resources, Inc | General Motors Corporation |
| Signature: | Signature: [signature] |
| Name: Joseph N. Del Vecchio | Name: PAUL B. MACKEY |
| Title: Vice President | Title: Site Project Manager |
| Date: | Date: OCTOBER 24, 2008 |

**Terms and Conditions associated with NFR/Buyer's GAS PURCHASE ORDER for gas deliveries on National Grid.**

**Firm Sales**: Sales under this Contract shall be made on a "firm" basis. National Grid ("Utility") will still be responsible for your meter and all meter readings. Service hereunder is subject to applicable Utility tariff provisions and policies. If NFR fails to deliver the stated quantity of gas for reasons other than force majeure, as defined below, Buyer shall be entitled to damages equal to any incremental costs Buyer incurs for its gas supplies. **Except as provided herein neither party shall be liable to the other for incidental, consequential or punitive damages or lost profits**

**If I smell gas or have any safety-related questions, however, I will still call National Grid at 1-800-892-2345.**

1. **Quantity**: NFR will provide and Buyer will purchase from NFR Buyer's full natural gas requirements for the enrolled service location(s). NFR will rely on Buyer's consumption information (shown on Att. 1).

2. **Transportation and Agency**: Buyer hereby elects NFR as agent to arrange transportation of gas to Buyer on the interstate and/or intrastate pipelines and Utility pipeline system (collectively the "Transporting Pipelines") and authorizes NFR to receive all of Buyer's account(s) information, including service applications, historical consumption and payment information from the Utility. Title, and control of the gas shall pass from NFR to Buyer at the delivery point to the Utility.

3. **Billing and Payment**. Upon receipt of meter readings (and estimated readings) from the Utility, NFR will bill Buyer for gas delivered. The price does not include the Utility charges for delivering the gas from the interstate and/or intrastate pipeline to Buyer. The Utility will separately bill for their delivery charges and any applicable taxes. Buyer agrees to pay NFR's bill within fifteen (15) days after the invoice date. If Buyer's payment is late Buyer agrees to pay: interest at one and one-half percent per month from the date the payment is due; and a late payment fee of twenty ($20) dollars for each billing period Buyer fails to make payment by the payment due date; and all reasonable attorney fees, court costs, or other expenses which NFR incurs in collecting overdue payments. A fee of thirty-five ($35) dollars will be charged for any returned checks. If Buyer defaults on any of Buyer's obligations under this Contract, NFR may, in addition to other legal remedies, suspend deliveries or terminate this Contract. NFR will provide notification at least fifteen (15) days before discontinuation of supply service to allow Buyer the opportunity to pay the overdue bill or request service from another provider. If Buyer files for protection under Bankruptcy or similar laws, or if NFR learns of circumstances which NFR believes may render Buyer unable to make payment when due (which can include but shall not be limited to any credit insurance cancellation, any public expectation that Buyer (or Buyer's parent) may not be able to meet ongoing obligations, or any other public financial information associated with Buyer (or Buyer's parent) insecurity, etc.), NFR may demand a security deposit to secure payment for future service. Buyer will be entitled to a refund of any substantiated overcharges discovered within one (1) year after the billing date, if Buyer makes a claim within two (2) months of discovery. NFR has the right, at any time, even after the termination or expiration of this Contract, to bill and be paid for any Utility adjustments for service under this Contract. Should Buyer assign this Contract to any other Party then such other Party shall have assumed the Contract and agreed to be responsible for any outstanding unpaid charges under this Contract. NFR also is entitled to bill and be paid for any substantiated undercharges discovered within one (1) year after the original billing date if the corrected billing is made within two (2) months of the discovery. Should the Contract be terminated by either party, transfer to the Utility or service from another supplier will occur per Utility tariff and may take up to 45 days after notice, and until such transfer Buyer shall pay NFR for its gas supplies.

4. **Fixed Prices**: NFR and Buyer may agree to convert the pricing above to a fixed price for the remaining term of this contract, or for monthly increments, a portion or all of Buyer's volumes on Exhibit 1 to the Contract. NFR will trigger a fixed price only if the Parties agree on a fixed price and Buyer notifies NFR at least five business days prior to the beginning of the month of its intention to trigger the agreed on fixed price. Buyer's notice will be communicated by phone to Buyer's NFR sales representative or to NFR's risk management department at (716) 630-6736. An oral agreement to trigger will be binding. Such agreement shall be confirmed through; 1). NFR's receipt of a returned signed fax confirmation from Buyer; 2). NFR's receipt of a returned confirming e-mail from Buyer; or 3). a tape recording of the agreement, to be confirmed later by fax or e-mail from Seller. Buyer agrees to the possible tape recording of agreements and that any such tape recording shall be binding as to quantity and prices of such triggered volumes. Triggered volumes are the first volumes delivered to Buyer during the month. To provide Buyer with a Fixed Price, NFR will take positions in the futures market. Accordingly, NFR reserves the right to charge and Buyer agrees to pay any damages suffered by NFR as a result of Buyer terminating the Agreement before the end of the Term or otherwise failing to consume the fixed price gas. If no fixed price agreement is made for a particular month, or if a fixed price is not agreed to for all volumes in a month, the pricing provision(s) otherwise applicable will be used for such untriggered volumes. There shall be no tolerance on partial month triggered volumes. Force Majeure shall not affect Buyer's responsibility for losses related to fixed price triggered volumes described above.

5. **Damages**: Buyer recognizes that NFR will expend money to establish Buyer's account and that NFR anticipates certain revenues from serving Buyer under this Contract. Therefore, if Buyer breaches this Contract in any way, including, but not limited to by taking service from another Supplier before the end of any term of this Contract or by failing to take gas service from Seller during the Term, Buyer agrees to pay Seller for any and all damages which Seller incurs as a result of said breach. Seller's damages would include, but not be limited to, hedging costs and any basis differential for the remaining term of the Contract. In addition, if Buyer moves its business during the Term, Seller shall sell gas to Buyer at its new location under the same terms of this Contract, except that any fixed price shall be only for the amount originally agreed upon, and further, if there is a significant volume revision, Seller shall have the right to a market adjusted basis for such revised volumes.

6. **Taxes**: Unless Buyer's price indicates otherwise, the price does not include New York State import fees, Gross Receipts taxes, or any other federal, state, Indian or local taxes, including but not limited to sales, use or consumption taxes any of which now apply or are later enacted. If NFR is required to collect and pay such taxes on Buyer's behalf Buyer agrees to reimburse NFR the full amount of such taxes. If Buyer claims exemption from any such taxes, Buyer must provide NFR a proper exemption certificate. NFR reserves the right to amend Buyer's price if additional taxes or fees are imposed or otherwise become applicable.

7. **Force Majeure**: If either party is unable to perform its obligations under this Contract due to force majeure, performance of such obligations shall be suspended until the force majeure is corrected. The party claiming the inability shall give written notice to the other party as soon as practicable after occurrence of the force majeure. Force majeure means acts of God, strikes, lightning, fires, floods, explosions, storms or storm warnings, breakage or failure of pipelines or machinery associated with pipelines, freezing of wells or pipelines; laws, rules, regulations or orders of any government, agency, political subdivision or instrumentality thereof having jurisdiction; injunction or judicial restraints; failure of gas supply, failure or curtailment of firm transportation, and any other non-financial cause of a similar nature not within the control of the party claiming force majeure. Force Majure shall not excuse Buyer from damages related to fixed price positions.

8. **Entire Buyer, Law and Dispute Resolution**: These Terms and Conditions and the Purchase Order and Att. 1 represent the complete Contract between the parties and can only be amended in writing signed by both parties. However, NFR may modify any terms that do not affect Buyer's price (except as solely provided herein), payment terms or the length of this Contract at any time by notifying Buyer of the change. In addition, NFR may modify this Contract during the initial term if changes to the tariffs, rules, regulations, or laws adversely effect NFR's ability to economically operate the program. Should Buyer's utility class change, Buyer shall pay any costs (i.e. capacity costs) associated with such change. If any change affects Buyer's price, payment terms or the term of the Contract NFR will give Buyer written notice at least thirty (30) days before the change is effective. This Contract shall be governed by and construed in accordance with laws of the State of New York. The services provided by the Utility will continue to be protected by the State Commission's Nonresidential Rules. Should Buyer have any questions or require additional information regarding this Contract, Buyer can contact NFR at (716) 630-6786. Buyer may also request information from the New York State Public Service Commission at 1-800-342-3377 (Toll Free) or New York State Public Service Commission, Consumer Services Division, 3 Empire State Plaza, Albany, NY 12223. This Contract shall be construed in accordance with, and its provisions governed by, the laws of the State of New York. This Contract will be deemed to have been executed in Erie County, New York and any litigation which may arise under this Contract shall be commenced in a court of proper jurisdiction sitting in Erie County, New York.

Buyer's Initials: X

NYNFGnatlgnd "short form" 6-06

**General Motors Corporation**

**ATTACHMENT 1**

| NFR # | Account # | Service Location(s) | Historic Burnertip Volumes (Therms) | 26751-96113 |
|---|---|---|---|---|
| | 26751-96113 | Salina Industrial Park ADM03 | Jan | 91,490 |
| | | | Feb | 98,944 |
| | | | Mar | 77,016 |
| | | | Apr | 31,260 |
| | | | May | 8,570 |
| | | | Jun | 0 |
| | | | Jul | 0 |
| | | | Aug | 0 |
| | | | Sep | 0 |
| | | | Oct | 0 |
| | | | Nov | 74,700 |
| | | | Dec | 100,690 |
| | | | Total | 482,670 |

PAUL B. MACKEY
Name (Please Print)

[signature]
Signature

10/24/08
Date

# Energy Use History

You requested to view this data online, but you also have an option to download this data to a spreadsheet, located at the bottom of this window.

GENERAL MOTORS CORPORATION
1000 TOWN LINE RD
EAST SYRACUSE, NY 13057
Account Number: 2675196113

**Gas History: SC5MO—Large Volume Gas Transportation - Monthly Balancing** (SC5)
(Tax District=3128) 24 Records.

| End Date | Bill Code | Day Use | Billed Therms | Bill Detail Amt |
|---|---|---|---|---|
| 10/1/2008 | R | 030 | 0 | 353.85 |
| 9/1/2008 | R | 031 | 0 | 353.85 |
| 8/1/2008 | R | 031 | 0 | 353.85 |
| 7/1/2008 | R | 030 | 0 | 353.48 |
| 6/1/2008 | R | 031 | 8571 | 797.88 |
| 5/1/2008 | S | 030 | 31260 | 1987.1 |
| 4/1/2008 | R | 031 | 96273 | 5394.7 |
| 3/1/2008 | R | 029 | 123861 | 6840.69 |
| 2/1/2008 | R | 031 | 91485 | 5143.73 |
| 1/1/2008 | R | 031 | 100688 | 5626.1 |
| 12/1/2007 | R | 030 | 74698 | 4267.67 |
| 11/1/2007 | R | 031 | 26199 | 1723.17 |
| 10/1/2007 | R | 030 | 21038 | 1452.4 |
| 9/1/2007 | R | 031 | 19256 | 1358.91 |
| 8/1/2007 | R | 031 | 16023 | 1189.29 |
| 7/1/2007 | R | 030 | 30953 | 1972.59 |
| 6/1/2007 | R | 031 | 30284 | 1937.49 |
| 5/1/2007 | R | 030 | 45688 | 2745.66 |
| 4/1/2007 | R | 031 | 113000 | 6277.19 |
| 3/1/2007 | R | 028 | 140430 | 7716.3 |
| 2/1/2007 | R | 031 | 98056 | 5493.15 |
| 1/1/2007 | R | 031 | 96858 | 5430.29 |
| 12/1/2006 | R | 030 | 68281 | 3933.94 |
| 11/1/2006 | R | 031 | 49353 | 2940.06 |

**Download Data:**

Preferred data format: (•) Microsoft Excel ( ) Lotus 1-2-3

**Submit**

**Energy Market Menu**

**History Requests**
- > Energy Use History
- > Gas Daily History
- > Hourly Interval Data History
- > Lighting History
- > Credit History

**Daily Reports**
- > Enrollments/Drops/Changes
- > Discontinued Service
- > Billing Determinants
- > Exceptions
- > Lighting Bill Determinants
- > Eligible To Drop

**SupplierSelect**
- > Website Instruction Manual (pdf)
- > Customer Enrollment
- > Customer Drop
- > Transportation Services Applications

**Retail Access**
- > Customer Enrollment
- > Customer Drop
- > Account Verification Report
- > NYISO True-up Consumption Data
- > UFE Statistics


©2008 National Grid

*Updated 5/22/08* *lmp*

NIMO Capacity Release Calculation

**Customer Name: General Motors Corp**
**Account # 26751-96113**

| Current NIMO HDD | | | |
|---|---|---|---|
| **Month** | **Usage** | **HDD** | **# days** |
| Jan | 9,149.0 | 1115 | 31 |
| Feb | 12,386.0 | 1119 | 28 |
| Mar | 9,627.0 | 990 | 31 |
| Apr | 3,126.0 | 404 | 30 |
| May | 857.0 | 301 | 31 |
| Jun | 3,095.0 | 23 | 30 |
| Jul | 1,602.0 | 2 | 31 |
| Aug | 1,926.0 | 24 | 31 |
| Sep | 2,104.0 | 93 | 30 |
| Oct | 2,620.0 | 265 | 31 |
| Nov | 7,470.0 | 820 | 30 |
| Dec | 10,069.0 | 1137 | 31 |
| **Totals** | **64,031.0** | **6293** | |

| Annual Calculations | | |
|---|---|---|
| Baseload | 3528.000 | Sum of 2 lowest months (Jun -Sep) |
| Daily Baseload | 57.836 | Baseload/ #of days in 2 lowest months |
| Annual Baseload | 21110.164 | Daily Baseload *365 days |
| Total Load | 64031 | Total Annual Load |
| Thermal load | 42920.836 | Total Load- Annual Baseload |
| Thermal Response ***** | 6.820 | Total Thermal Load / Total Annual HDD |
| **MPDQ** | **569.367** | **Thermal Response * 75HDD + Daily Baseload** |
| **MPDQ grossed up for fuel** | **579.388** | |

| | | |
|---|---|---|
| DTI FT | 256.2150 | MPDQ*45% |
| GSS Storage Demand | 313.1517 | Difference between MPDQ and DTI FT |

******* If Thermal Response is negative please use calculation below.**

| Current NIMO HDD | | | |
|---|---|---|---|
| **Month** | **Usage** | **HDD** | **# days** |
| Jan | 9,149.0 | 1115 | 31 |
| Feb | 12,386.0 | 1119 | 28 |
| Mar | 9,627.0 | 990 | 31 |
| Apr | 3,126.0 | 404 | 30 |
| May | 857.0 | 301 | 31 |
| Jun | 3,095.0 | 23 | 30 |
| Jul | 1,602.0 | 2 | 31 |
| Aug | 1,926.0 | 24 | 31 |
| Sep | 2,104.0 | 93 | 30 |
| Oct | 2,620.0 | 265 | 31 |
| Nov | 7,470.0 | 820 | 30 |
| Dec | 10,069.0 | 1137 | 31 |
| **Totals** | **64031** | **6293** | |

| Summer Calculations (April thru October) | | |
|---|---|---|
| Daily Baseload | 38.758 | MPDQ*75% |
| Thermal Response | 0.000 | = ZERO |
| **MPDQ** | **51.677419** | **= Peak usage from Ap thru Oct / 31 days** |
| DTI FT | 38.7581 | MPDQ*75% |
| GSS Storage Demand | 0.000 | = ZERO |

| Winter Calculations (Nov thru March) | | |
|---|---|---|
| Daily Baseload | 232.9113 | MPDQ*75% |
| Thermal Response | 0.000 | = ZERO |
| **MPDQ** | **310.548387** | **= Peak usage from Ap thru Oct / 31 days** |
| DTI FT | 232.9113 | MPDQ*75% |
| GSS Storage Demand | 0.000 | = ZERO |