UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

GENERAL MOTORS CORP., et al

Debtors.

_____/

Case No.  09-50026-REG
Chapter 11
Jointly Administered

**LIMITED OBJECTION OF THE DEPARTMENT OF TREASURY OF
THE STATE OF MICHIGAN TO DEBTORS' PROPOSED
MASTER SALE AND PURCHASE AGREEMENT**

Now comes the Department of Treasury of the State of Michigan (Michigan Treasury) by and through its attorneys, Michael A. Cox, Attorney General, Julius Curling, Assistant Attorney General and Kathleen A. Gardiner, Assistant Attorney General and files this limited objection to Debtor's Proposed Master Sale and Purchase Agreement.  This objection is filed solely on behalf of the State of Michigan Department of Treasury and does not raise objections which other agencies of the State of Michigan may assert.

1. On June 1, 2009 General Motors Corp. and 3 of its affiliates filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.  On June 1, 2009 the Debtors filed a Motion for Sale of Property under Section 363(b) and attached, among other documents, Exhibit A - Proposed Master Sale and Purchase (MPA), and Exhibit B, Sale Order.

2. On June 2, 2009, the Sale Order, Order (I) Authorizing Sale of Assets Pursuant to Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief was signed approving the procedures for the sale and bid processes for Debtors'  plan to the

1

Purchaser what it considers its four core brands, Chevy, GMC, Buick and Cadillac.  The Purchaser is Vehicle Acquisition Holdings, LLC, a holding company from which will emerge a "new General Motors" which is supposed to be viable into the future.  A hearing was set for June 30, 2009 and a deadline for objections was set for June 19, 2009.

3.  The Michigan Treasury does not desire to delay the proposed sale, but objects to certain provisions in the Proposed Master Sale and Purchase Agreement (MPA) as it relates to taxes that may be owed to the Michigan Treasury.

4.  There is substantial tax debt due from Debtors to Michigan Treasury including tax debt due on filed returns, tax debt that will be due on returns to be filed, and furthermore, Michigan Treasury is in the midst of auditing several tax years for the Debtors, including entities that are included in the MPA.

5.  The State of Michigan has set forth certain requirements when the assets of a Company are sold.  MCL 205.27a(1) states:

> If a person liable for a tax administered under this act sells out his or her business or its stock of goods or quits the business, the person shall make a final return within 15 days after the date of selling or quitting the business. The purchaser or succeeding purchasers, if any, who purchase a going or closed business or its stock of goods shall escrow sufficient money to cover the amount of taxes, interest, and penalties as may be due and unpaid until the former owner produces a receipt from the state treasurer or the state treasurer's designated representative showing that the taxes due are paid, or a certificate stating that taxes are not due. Upon the owner's written waiver of confidentiality, the department may release to a purchaser a business's known tax liability for the purposes of establishing an escrow account for the payment of taxes. If the purchaser or succeeding purchasers of a business or its stock of goods fail to comply with the escrow requirements of this subsection, the purchaser is personally liable for the payment of the taxes, interest, and penalties accrued and unpaid by the business of the former owner. The purchaser's or succeeding purchaser's personal liability is limited to the fair market value of the business less the amount of any proceeds that are applied to balances due on secured interests that are superior to the lien provided for in section 29(1).

6. Debtors are responsible for filing a final return within 15 days of selling the assets of the business. Purchaser is required to escrow sufficient money to cover the amount of taxes, interest, and penalties as may be due and unpaid until Debtors produce a receipt from the Michigan State Treasurer or the Michigan State Treasurer's designated representative showing that the taxes due are paid, or a certificate stating that taxes are not due.

7. Public Act 122 of 1941 requires a business operating in Michigan to file a Registration for Michigan Taxes (Form 518) if that business would be required to pay a business tax in Michigan. Purchaser will have to be issued a new FEIN which will have to be registered in the State of Michigan.

8. Section 4.1(b) of the MPA says that "(b) all amounts of Tax required to be paid with respect to any Seller, Seller Group member or Purchased Subsidiary (whether or not shown on any Tax Return) have been timely paid or are being contested in good faith by appropriate proceedings and have been reserved for in accordance with GAAP in Parent's consolidated audited financial statements, (c) no deficiency for any amount of Tax has been asserted or assessed by a Taxing Authority in writing relating to any Seller, Seller Group member or Purchased Subsidiary that has not been satisfied by payment, settled or withdrawn, (d) there are no audits, Claims or controversies currently asserted or threatened in writing with respect to any Seller, Seller Group member or Purchased Subsidiary in respect of any amount of Tax or failure to file any Tax Return..." That statement is not strictly true. Although Michigan Treasury records show that the Debtors are current with most of their tax filings and payment of taxes, Michigan Treasury conducts an audit for every taxable period for the Debtors. Michigan Treasury is working with Debtors to complete audits for the 2002 through 2007 tax periods for use tax and Single Business Tax. Use tax returns have been filed for 2006 but have not yet been

paid or audited. The Michigan Business Tax return is due in December 2009 and it is expected that that return will subsequently be audited.

9. Although Debtors are selling a substantial amount of their valuable assets, it is unclear under the MPA whether Purchaser is assuming the tax liabilities which the Debtors and Purchaser may be liable for pursuant to Michigan law. Michigan Treasury needs written confirmation from Debtors and Purchaser regarding (1) who will be paying taxes due now and determined to be due in the future to the Michigan Treasury, (2) what arrangements are being made to ensure that funds will be available to pay the taxes to the Michigan Treasury, such as escrow arrangements, what funds will be available for payment and from which sources, etc. and (3) that payments will be made in cash. Stock, warrants and promissory notes cannot be used to satisfy Michigan Treasury's tax debts.

10. Under a Chapter 11 Plan, tax obligations to the extent that they are priority claims, must be paid in full. See 11 U.S.C. § 1129(a)(9)(C). It is unclear from the MPA whether the Debtors have the ability to fulfill that responsibility, and/or whether Purchaser will be assuming that responsibility. Michigan Treasury needs written confirmation from Debtors and Purchaser regarding (1) who will be paying in full those priority taxes due now and determined to be due in the future to the Michigan Treasury, (2) what arrangements are being made to ensure that funds will be available to pay the taxes to the Michigan Treasury, such as escrow arrangements, what funds will be available for payment and from which sources, etc. and (3) that payments will be made in cash. Stock, warrants and promissory notes cannot be used to satisfy Michigan Treasury's tax debts.

11. Until all audits have been completed it cannot be determined whether Debtor or Purchaser will be required to make any material adjustments in taxable income for any tax period.

12. The proposed order approving the Motion contains, in Paragraphs 8 and 28, an apparent prohibition ("forever prohibited and enjoined") against any party's assertion of any setoff rights for any obligation of the Debtors "as against any obligation due the Purchaser." It also appears, pursuant to MPA § 2.2(a)(xiii), that the Purchaser will be acquiring all tax refund claims of the Debtors/Sellers. If the proposed order is intended to prevent a tax authority from offsetting any tax liabilities for the prepetition period against any tax refund claims to be assigned to the Purchaser, the Michigan Treasury objects. Under 11 U.S.C. § 553(a), provisions of Title 11 "do not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." Although § 553(a) does refer to "[e]xcept as...provided in section 363" that reference refers to a *creditor's* right to adequate protection of its setoff rights. See 5 Collier on Bankruptcy (15th ed. rev.) ¶553.01, ¶ 5543.06[5] and cases cited therein. There is no provision in § 363 for abrogating a creditor's setoff rights, and if the Motion and proposed Order seek to abrogate tax creditors' setoff rights, the relief requested should be denied to that extent.

13. 28 U.S.C. §959(b) requires Debtors to maintain compliance with State governmental regulatory requirements under Federal bankruptcy law:

> (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

14. Paragraph 39 of the proposed Order contains a startling, unprecedented and wholly unsupportable provision: that "[n]o law of any state or other jurisdiction...shall apply in any way to the transactions contemplated by the 363 Transaction, the MPA, the Motion and this Order." In other words, a bankruptcy court is being asked to repeal, in one fell swoop, all States' laws applying to any transaction referenced in the Motion, MPA or Order. That directly conflicts with 28 U.S.C. §§ 959(b) and 960, which require debtors in possession to comply with state laws, including tax laws, during Chapter 11 proceedings. As to tax laws in particular, they do apply to § 363 sales in bankruptcy. The Supreme Court has so ruled, and no bankruptcy court – not even at the behest of General Motors or the executive branch of the United States government – can overrule the Supreme Court. *California Sate Board of Equalization v Sierra Summit, Inc.,* 109 S.Ct. 2228 (1989) squarely holds that states may tax § 363 sales in bankruptcy. State law determines the taxability of the transaction, as well as tax reporting requirements. As the Supreme Court held in *Sierra Summit,*

> Nothing in the plain language of the statute, its legislative history, or the structure of the Bankruptcy Code indicates that Congress intended to exclude taxes on the liquidation process from those taxes the Sates may impose on the bankruptcy estate.

See 109 S. Ct. at 2235. Paragraph 39 of the proposed Order conflicts with binding case law and cannot be entered as proposed.

15. The Michigan Treasury submits that the arguments and authorities set forth in this Limited Objection satisfy the requirements of Local Bankruptcy Rule 9013-1(b) and that submission of a separate memorandum of law should not be required.

CONCLUSION

6

Wherefore, the State of Michigan Department of Treasury respectfully requests that any order granting the Motion (1) confirm which entity, Debtors or Purchaser, will be responsible for the payment of any and all taxes due the Michigan Treasury for the tax periods 2002 through 2009, (2) Order that party determined by the Court to be responsible for the payment of said taxes due to the Michigan Treasury, whether the Debtors or the Purchaser, are/is required to escrow sufficient money to cover the amount of taxes, interest, and penalties as may be determined to be due and unpaid following the completion of the audits which are underway and those which are anticipated, until Debtors produce a receipt from the Michigan State Treasurer or the Michigan State Treasurer's designated representative showing that the taxes due are paid, or a certificate stating that taxes are not due, (3) preserve Michigan Treasury's setoff rights and (4) not purport to repeal or abrogate state tax laws.  Michigan Treasury also requests such further relief to which it may be entitled.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/Julius O. Curling
Julius O. Curling ( P58248)
/s/Kathleen A. Gardiner
Kathleen A. Gardiner (P45245)
Assistant Attorneys General
Revenue Division
3030 W. Grand Blvd Ste 10-220
Detroit, MI 48202
Telephone:  (313) 456-0140
curlingj@michigan.gov
gardinerk@michigan.gov

Dated:  June 18, 2009