Celeste R. Gill
Assistant Attorney General
Environment, Natural Resources and Agriculture Division
525 W. Ottawa, 6th Floor, G. Mennen Williams Bldg.
P.O. Box 30755
Lansing, MI  48909
Telephone:  517-373-7540
Facsimile:  517-373-1610
E-mail:  gillcr@michigan.gov

Attorney for the Michigan Department of Environmental Quality

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                                          :
IN RE:                                                           :
                                                                          :                      Chapter 11
          GENERAL MOTORS, CORP., *et al*,      :                      Case No. 09-50026 (REG)
                                                                          :                      (Jointly Administered)
                        Debtors.                                :
-----------------------------------------------------------x

**MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY'S
LIMITED OBJECTION TO THE DEBTORS' MOTION PURSUANT
TO 11 USC SECTIONS 105, 363(b), (f), (k), AND (m), AND 365 AND FED. R.
BANKR. P. 2002, 6004 AND 6006, TO (I) APPROVE (A) THE SALE PURSUANT
TO THE MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE
ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER,
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS; (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY  CONTRACTS AND UNEXPIRED LEASES; AND (C) OTHER RELIEF;
AND (II) SCHEDULE SALE APPROVAL HEARING**

The Michigan Department of Environmental Quality (MDEQ), by and through its

attorneys, Michael A. Cox, Attorney General, and Celeste R. Gill, Assistant Attorney General,

files this objection to the Debtors' Motion Pursuant to 11 USC Sections 105, 363(b), (f), (k), and

(m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant

to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S.

Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other

1

Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing (Motion).  MDEQ states the following in support of its objection:

## **BACKGROUND**

1.      On June 1, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, the cases have been joined and are being jointly administered under Case No. 09-50026.

2.      The Joint Debtors continue to operate the business and manage their bankruptcy estate properties pursuant to Sections 1107 and 1108 of the Bankruptcy Code, 11 USC Sections 1107 and 1108.

3.      Debtors, among other things, manufacture and assemble cars and trucks and their parts and accessories.  The Debtors own and/or operate a number of facilities in Michigan.

4.      Because of the nature of the operations, some of the Debtors' Michigan facilities, including those involved in the prospective sale, are either sites of environmental contamination with ongoing obligations, have environmental permits, or other obligations under state or federal environmental laws and regulations, including, but not limited to:  Part 201, Environmental Remediation, of the Michigan's Natural Resources and Environmental Protections Act (NRPEA), 1994 PA 451, as amended, Part 213 of the NREPA, Part 31, Water Resources Protection, of the NREPA, Part 55, Air Pollution Control, of the NREPA, Part 111, Hazardous Waste, of the NREPA, Part 115, Solid Waste, of the NREPA, the Comprehensive Environmental Response,

Compensation, and Liability Act (CERCLA), and the Resource Conservation and Recovery Act (RCRA) (collectively, the Environmental Obligations).[1]

5.   The MDEQ has incurred response activity costs at various GM facilities in Michigan and has also perfected statutory liens pursuant to MCL324.20138(1) to secure its past and future response activity costs.[2]

6.   Because of the environmental contamination, restrictions may have been placed on certain GM facilities to protect public health, safety, welfare, and the environment including restrictive covenants prohibiting the use of resources (e.g. groundwater), disturbance of soil, and others prohibiting tampering with or removal of exposure barriers or remedial systems.

7.   On or about June 1, 2009, Debtors (Sellers) entered into the Master Sale and Purchase Agreement with Vehicle Acquisition Holding Company, LLC a U.S. Treasury-Sponsored Purchaser (MPA) to sell substantially all of the assets of the Debtors.  MDEQ assumes that all except certain named excluded facilities will be transferred to the "New GM". The transferred facilities include many, of the properties on which the MDEQ has placed liens.

8.   On June 1, 2009, Debtors filed the Motion.  The Court entered the Bidding Procedures Order on June 2, 2009, approving the bidding procedures and scheduling the sales hearing for June 30, 2009 and the deadline for objecting to the Sales Motion as June 19, 2009.

9.   Section 2.3 of theMPA provides in part:

---

[1] MCL 324.20101 *et seq.*, MCL 324.21301 *et seq.*, MCL 324.3101 *et seq.*, MCL 324.5501 *et seq.*, MCL 324.11101 *et seq.,* MCL 324.11501 *et seq.,* 42 USC 9601 *et seq.*, and 42 USC 6921 *et seq.*, respectively.

[2] "Response activity costs" means all costs incurred in taking or conducting response activity including enforcement costs. "Response activity" means evaluation, interim response activity, remedial action, demolition, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment or the natural resources.  Response activity also includes health assessments or health effect studies carried out under the supervision, or with the approval of the department of public health and enforcement actions related to any response activity. MCL 324.20101(1)(ff) and (ee) respectively.

(a) The "Assumed Liabilities" shall consist only of the following Liabilities[3] of the Sellers:

* * *

(viii) all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, *other than those Liabilities described in Section 2.3(b)(iv)*, (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to the Purchaser's failure to comply with the Environmental Laws after the Closing;

10. Section 2.3(b)(iv) of the Purchase Agreement provides in part:

(iv) *all Liabilities (A) associated with noncompliance with Environmental Laws* (including for fines, penalties, damages and remedies); (B) arising out of, relating to, in respect of or in connection with the transportation, off-site storage or off-site disposal of any Hazardous Materials generated or located at any Transferred Real Property; (C) arising out of, relating to, in respect of or in connection with third-party Claims related to Hazardous Materials that were or are located at or that migrated or may migrate from any Transferred Real Property; (D) arising under Environmental Laws related to the Excluded Real Property; or (E) for environmental Liabilities with respect to real property formerly owned, operated or leased by the Sellers (as of the Closing), which, in the case of clauses (A), (B), and (C), arose prior to or at the Closing, and which, in the case of clause (D) and (E), arise prior to, at or after the Closing;   [Emphasis added.]

11. Section 9.19 of the MPA provides the following broad and ambiguous language:

*No Successor or Transferee Liability*.  Except where expressly prohibited under applicable Law or otherwise expressly ordered by the Bankruptcy Court, upon the Closing, neither Purchaser nor any of its Affiliates or stockholders shall be deemed to (a) be the successor of Sellers; (b) have, de facto, or otherwise, merged with or into Sellers; (c) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers; or (d) *other than as set forth in this Agreement, be liable for any acts or omissions* of Sellers in the conduct of Sellers' business or arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, neither Purchaser nor any of its Affiliates or stockholders shall be liable for any

---

[3] Under the MPA, "Liabilities" means any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those arising under any Law, Claim, Order, Contract or otherwise.

4

> Claims against Sellers or any of their predecessors or Affiliates, and *neither Purchaser nor any of its Affiliates or stockholders shall have any successor, transferee or vicarious Liability of any kind or character whether known or unknown as of the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to Sellers' business or any obligations of Sellers arising prior to the Closing, except as provided in this Agreement,* including Liabilities on account of any Taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of Sellers' business prior to Closing. [Emphasis added.]

12. The environmental liability provisions and the successor liability provisions of the MPA, a private agreement between the Debtors and the Purchaser, are broad and ambiguous and can be interpreted to release the Purchaser from all kinds of obligations that it would otherwise have as an owner or operator under non-bankruptcy (state and federal environmental) laws. As the Motion notes, the MPA also contains "Extraordinary Provisions". The MPA contemplates and the Motion, in paragraphs 48 and 67, requests authorization and approval of the "sale of the Purchased Assets pursuant to the MPA free and clear of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability," with "any such liens, claims, encumbrances, or interests to transfer and attach to the net proceeds of the sale."

13. In addition to approving the MPA, the Motion seeks authorization to remove any and all encumbrances on the Transferred Real Property, including presumably, those related to and required under the Environmental Laws or other agreements as part of environmental remedies designed to protect public health, safety, or welfare, or the environment.

**<u>OBJECTION</u>**

14. While the MDEQ does not oppose the proposed transaction and recognizes that it may be necessary in a macroeconomic sense, it does not believe that the Bankruptcy Court has authority to relieve any entity, including the purchaser of assets from a bankruptcy estate, of

5

obligations under laws designed to protect public health and safety. Therefore, the MDEQ files this limited objection to protect its interest in seeing that the environmental laws are complied with, environmental contamination is addressed, and any restrictions protective of public health, safety or welfare, or the environment at the Transferred Real Property are maintained. With regard to its liens, the MDEQ seeks to protect its secured interest and obtain adequate protection.

15. Section 363(f) of the Bankruptcy Code allows the sale of property free and clear of *interest* in the property *only if*:

(1) *applicable nonbankruptcy law permits* sale of such property free and clear of such interest;

(2) such entity *consents*;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in *bona fide dispute*; or

(5) such entity *could be compelled*, in a legal or equitable proceeding, *to accept a money satisfaction of such interest*. (emphasis added).

16. Compliance with the Environmental Obligations is not optional and applicable nonbankruptcy law does not permit such transfers free and clear of a state's interest in having the Environmental laws complied with. It is settled law that property of a bankruptcy estate cannot be abandoned or maintained in violation of State laws that protect public health and safety.[4] As discussed above, the proposed sales transaction involves transferring the Debtors' good assets (certain brands and facilities) to a "New GM" and liquidating the remaining assets. The transferred assets will include properties that are sites of environmental contamination. While

---

[4] *See, Midlantic National Bank v New Jersey Department of Environmental Protection*, 474 US 494 (1986), *In re Wall Tube & Metal Products, Co.*, 831 F2d 118, 122 (CA 6 1987), *Dep't of Environmental Resources v. Conroy*, 24 F3d 568 (CA 3 1994), *In re Torwico Electronics, Inc.*, 8 F3d 146 (CA 3 1993), and 28 USC § 959.

the Purchaser is expected to assume certain liabilities, the MPA appears to relieve the Purchaser of certain Environmental Obligations related to the assets it is acquiring, and does not provide the means for addressing existing contamination at the transferred property, thus potentially leaving those liabilities along with the "bad" or undesirable assets in the bankruptcy estate.

17. Nothing in Section 363 can be construed as releasing or relieving the Purchaser from any police or regulatory liability to a governmental entity as the owner or operator of property after the Closing date.[5] The Purchaser, as the purchaser of contaminated property from the Debtors, should not be permitted to own or operate property without having to comply with environmental laws that apply to all owners and operators of property, regardless of whether the property may have been contaminated by prior owners. This includes requirements to exercise "due care" with regard to existing contamination. For example, Section 20107a of the NREPA provides in part:

> (1) A person who owns[6] or operates[7] property that he or she has knowledge is a facility[8] shall do all of the following with respect to hazardous substances at the facility:
>
>> (a) Undertake measures as are necessary to prevent exacerbation of the existing contamination.

---

[5] See generally, *In re CMC Heartland Partners*, 966 F2d 1143 (7th Cir. 1992); *In re Torwico Electronics, Inc.*, 8 F3d 146 (3d Cir 1993).
[6] Owner means a person who owns a facility. MCL 324.20101(1)(z).
[7] Operator means a person who is in control of or responsible for the operation of the facility [with some exceptions]. MCL 324.20101(y).
[8] Facility means any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of Section 20120a(1)(a) or (17) or the cleanup criteria for unrestricted residential use under Part 213 has been released, deposited, disposed of, or other wise comes to be located. Facility does not include any area, place, or property at which response activities have been completed which satisfy the cleanup criteria for the residential category provided for in Sections 20120a(1)(a) and (17) or at which corrective action has been completed under Part 213 which satisfies the cleanup criteria for unrestricted residential use. MCL 324.20101(1)(o).

7

>    (b)   Exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects public health and safety.
>
>    (c)   Take reasonable precautions against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably could result from those acts or omissions.
>
> (2)  Notwithstanding any other provision of this part, a person who violates subsection (1) is liable for response activity costs and natural resources damages attributable to any exacerbation of existing contamination and any fines or penalties imposed under this part resulting from the violation of subsection (1) but is not liable for performance of additional response activities unless the person is otherwise liable under this part for performance of additional response activities.

18.    While it is true that 11 USC 105(a) gives the this Court authority "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Code], it does not allow the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law."[9]

19.    Presumably the proponent of the sale and the Court do not intend to create a situation that leads to a weakening in environmental protections. However, the MDEQ also has some general concerns because the sale of substantially all of GM's assets is occurring outside the normal Chapter 11 plan process with the stated goal of transferring all of the "good" assets to "New GM" and leave the "bad" assets and liabilities with "Old GM". To the extent the Purchaser believes it is leaving behind liabilities, including environmental liabilities, as described in the MPA, the concern is that there will not be sufficient value left in the estate to deal with GM's environmental liabilities. At this point it is unknown how any proposed plan will address them. "Because there is some danger that a section 363 sale might deprive parties of substantial rights

---

[9] *In re Metromedia Fiber Network, Inc.*, 416 F3d 136, 142 (2d Cir 2005), citing *New England Diaries, Inc v Dairy Mart Convenience Stores, Inc (In re Dairy Mart Convenience Stores, Inc)*, 351 F3d 86, 92 (2d Cir 2003) (internal quotations omitted).

inherent in the plan confirmation process, sales of substantial portions of a debtor's assets under section 363 must be scrutinized closely by the court."[10]

20. Purchaser will also have general obligation to comply with all environmental law, especially with respect to permits, licenses and other governmental authorizations (including those related to the handling of hazardous materials).[11] To the extent Paragraph 39 of the proposed Order invites this Court to nullify state law: "[n]o law of any state or other jurisdiction ... shall apply in any way to the transaction contemplated by the 363 Transaction, the MPA, the Motion and this Order," such request and action imposes on State Sovereignty, is contrary to 28 USC 959, and other legal authority cited herein, including decisions of the United States Supreme Court and must be rejected.

21. As state above, the language in the MPA and Motion is ambiguous, however it should be noted that the proposed Sales Order provides in, paragraph 38:

---

[10] Colliers on Bankruptcy – 15th Edition Rev. P. 363.02 citing, *Stephens Indus, Inc. v McClung*, 789 F2d 386 (6th Cir 1986); *In re Abbotts Dairies*, 788 F2d 143, 150 (3rd Cir 1986 ) (Section 363(b)(1) "mirrors the requirement of section 1129 that the bankruptcy court independently scrutinize the debtor's reorganization plan"); *Committee of Equity Security Holders v Lionel Corp. (In re Lionel Corp.)*, 722 F2d 1063 (2d Cir 1983)(sale requires business justification); *see also Western Auto Supply Co. v Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F3d 714 n.9 (1st Cir 1994) (collecting authorities)("[T]he order confirming a chapter 11 liquidation sale warrants special bankruptcy scrutiny."); *In re Public Serv Co*, 90 BR 575 (Bankr DNH 1988) (the more the sale or transaction affects the terms of the ultimate pan (sic), the more scrutiny is required).
[11] In order to continue to operate at the Debtors' various facilities, the Purchaser may have to comply with the terms of various Administrative Orders on Consent (AOCs) or Consent Orders or Judgments.

38. Nothing in this Sale Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of *any liability* to a governmental unit under environmental statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order. *Notwithstanding the foregoing sentence, nothing in this Sale Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Sale Order or for liabilities relating to off-site disposal of wastes by the Debtors prior to entry of this Sale Order.* Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law. (Emphasis added).

While this language is helpful in addressing some of the MDEQ's concerns, it still contains a certain level of ambiguity (e.g. what is a liability?) and when it is considered along with the environmental provisions of the MPA and Motion, discussed above, the possible outcome is just unacceptable.

22.  Bankruptcy Code, section 363(e) states that:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest

\* \* \*

23.  The MDEQ's interest in obtaining full compliance with the Environmental laws is not in dispute and it clearly does not consent to anything that purports to relieve or limit the Purchasers liability or obligation, with respect to the Purchased Assets, to comply with requirements that all owner or operators are subject to under the environmental laws.

24.  Finally section 363 of the Bankruptcy Code does not permit the sale of property free and clear of an interest if the holder of the interest could not be compelled to accept money

10

in satisfaction of such interest.[12] The MDEQ cannot be compelled to accept money in place of an owner or operator's obligation to comply with the legal requirement that apply to the owners or operators of property under the environmental laws.

25. Any Sales Order approving this transaction must make clear the Purchaser's understanding and intention to comply with any and all environmental laws and other obligations as the owner or operator of facilities including things such as due care, that may be related to pre-closing releases and liabilities of the Debtors, State permitting requirements, and that nothing will negate or remove restrictions on the use of the Transferred Real Property that were imposed to protect public health, safety, or welfare, or the environment.

26. To the extent the Purchaser seeks a judicial determination that is not a successor to "Old GM", it has not provided support for that contention, and it is too complicated an issue for such Summary Disposition.

27. As stated above, the MDEQ has perfected statutory liens securing not only its right to payment of past response activity costs incurred at various Michigan facilities, but also any future response activity costs it incurs at these facilities. At this point it is not clear whether the price the Purchased Assets are sold at is greater than the aggregate value of all liens. However, the MDEQ asserts it is entitled to adequate protection for its secured claims as 11 USC 363(e) requires. (See also, 11 USC 361).

28. MDEQ reserves the right to assert further objections to the Sales Motion at the scheduled hearing.

---

[12] *See, Gouveia v Tazbir*, 37 F3d 295 (7th Cir 1994). *See also, Zerand-Bernal, Inc. v Cox*, 23 F3d 159, 163 (7th Cir 1994) ("[N]o one believes... that a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price ... [or to] immunize such buyer from all state and federal laws that might reduce the value of the assets bought from the bankrupt").

## **MEMORANDUM OF LAW**

29.     Because the relevant authorities in support of the requested relief are cited in this Objection, the MDEQ requests that the requirement of a separate memorandum of law under Local Bankruptcy Rule 9013-1 (b) be deemed satisfied.

WHEREFORE, the MDEQ respectfully requests that this Court condition approval of the Sales Motion on and MPA to comply with the environmental laws and other obligations without condition or limitation, to require that any restrictions on the Transferred Real Property imposed to protect public health, safeguard the environment remain in place, and to provide adequate protections for the response activity costs secured by the MDEQ's statutory liens.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/    Celeste R. Gill
Celeste R. Gill (P52484)
(admitted Pro Hac Vice)
Assistant Attorney General
Environment, Natural Resources
and Agriculture Division
6th Floor, Williams Building
525 West Ottawa Street
P.O. Box 30755
Lansing, MI   48909
(517) 373-7540
E-mail:  gillcr@michigan.gov

Dated:  June 18, 2009

s: Chrysler, LLC/Objection to sales motion