Susan Przekop-Shaw
Dennis J. Raterink
Michigan Assistant Attorneys General
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-1176/Fax: (517) 241-7987
Attorneys for Michigan Workers' Compensation Agency and
Michigan Funds Administration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:                                             Case No. 09-50026 (REG)

**GENERAL MOTORS CORP.,** *et al.,*                Chapter 11

                            **Debtors.**          (Jointly Administered)

-----------------------------------------------------------x

## STATE OF MICHIGAN WORKERS' COMPENSATION AGENCY'S AND FUNDS ADMINISTRATION'S LIMITED OBJECTION TO DEBTORS' SALE MOTION

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The State of Michigan Workers' Compensation Agency and Funds Administration[1] (Agency and Funds), by and through their counsel, Mike Cox, Attorney General, Susan Przekop-Shaw and Dennis J. Raterink, Assistant Attorneys General, file this Limited Objection to the Debtors' Motion Pursuant to 11 U.S.C. § 105, 363 (b), (f), (k) and (m), and 365, and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings, LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and other Interests; (B) The

---

[1] This objection is filed solely on behalf of the State of Michigan Workers' Compensation Agency and Funds Administration and does not raise objections that other agencies of the State of Michigan may assert.

1

Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing" ("Debtors' Motion") [docket item 92].

## I. Preliminary Statement

The State of Michigan enacted the Worker's Disability Compensation Act (WDCA), MICH. COMP. LAWS § 418.101, *et seq* and MICH. ADMIN. CODE r. 418.1, *et seq* as amended, and in doing so, created a comprehensive mandatory workers' compensation scheme applicable to all Michigan employers and employees. This scheme includes an exclusive remedy through State administrative and judicial processes to address all questions arising under this scheme. MICH. COMP. LAWS 418.131. Thus, in filing this objection, neither the Agency nor Funds waives these State administrative and judicial processes. Any worker's compensation question created by Debtors in this federal bankruptcy must be resolved through Michigan's statutory processes consistent with Section 525 of the Bankruptcy Code.[2]

The Agency and Funds have no desire to delay the proposed sale. The Agency and Funds recognize that Debtors have stated that "[i]t is imperative that the 363 Transaction be expeditiously approved." (Debtors' Motion, ¶8, p 5) The Agency and Funds, however, need to ensure that Debtors' injured workers have a continued source of payment to compensate them for their injuries and to protect Michigan's self-insured program for the benefit of all other Michigan self-insured employers and their employees. Based upon figures provided to the Agency by the Debtors, Debtors' estimated total workers' compensation obligations in Michigan range from $1 billion to $1.5 billion, with yearly payment obligations of over $111 million. Therefore, the Agency and Funds must object to the relief sought by Debtors to sell substantially all of its assets "free and clear of all liens, claims encumbrances, and other interests . . ." as the Debtors' Motion,

---

[2] All statutory references are to the applicable section of the Bankruptcy Code, 11 U.S.C. ¶101 *et. seq.*

2

Master Sale and Purchase Agreement, and proposed Order do not provide sufficient commitment to pay Debtors' workers' compensation obligations. (Debtors' Motion, ¶ 48, p 21)

Specifically, the Agency and Funds object to the Debtors' Motion and Master Sale and Purchase Agreement as they do not: (1) provide a firm commitment by the Purchasing party to assume Debtors' workers' compensation obligations in Michigan, and (2) address, in any fashion, the impact of Debtors' pending transaction with Delphi Corporation on Debtors' workers' compensation obligations. Further, Debtors' proposed Order contains broad language that impermissibly attempts to vitiate state laws, as they pertain to the transaction at hand.

If the Motion, Master Sale and Purchase Agreement, and proposed Order are not amended to address these concerns, the Debtors' requested relief potentially: (1) violates Debtors' workers' compensation self-insurance authority in Michigan; (2) leaves Debtors' injured workers without a source of workers' compensation benefit payments; (3) decimates the Michigan' self-insurance fund program statutorily created as a means for the Michigan self-insured employers to operate in Michigan without acquiring workers' compensation insurance to cover their employees, and (4) violates 28 U.S.C. §959(b).

## II. Debtors' and Purchaser's Michigan Self-Insurance Status

1. In Michigan, all matters pertaining to workers' compensation are governed by the Workers' Compensation Disability Act (WDCA) MICH. COMP. LAWS § 418.101, *et seq.* The State of Michigan established the Agency and its Director, bestowed them with all powers granted under the WDCA, and charged them with enforcing the WDCA.

2. In Michigan, an employer has three ways in which it can fulfill its mandatory obligations under the WDCA. An employer can insure against liability by entering a contract and paying its premium with an insurer authorized to transact workers' compensation insurance business within this state (MICH. COMP. LAWS § 418.611(1)(b)); joining with other employers to

3

pool their workers' compensation obligations under conditions established by the Agency, (MICH. COMP. LAWS § 418.611(2)); or, acquiring the Agency's authority to be a self insurer (MICH. COMP. LAWS § 418.611(1)(a)).

3. Here, the Debtors have been self-insured in Michigan for many decades and have verbally assured the Agency that it would continue to meet its Michigan workers' compensation obligations in order to maintain that self-insured status. The Debtors' Motion and Master Sale and Purchase Agreement, however, lack detail to determine whether Debtors will continue to and Purchasers will meet their statutory obligations and in fact, includes language that suggests Debtors and Purchasers may no longer choose to honor such obligations.

A. <u>The Master Sale and Purchase Agreement does not create a sufficient commitment on behalf of the Purchaser to assume Debtors' workers' compensation obligations in Michigan.</u>

4. Debtors indicate that "subject to approval . . . the Sellers have reached an agreement with the Purchaser" (Debtors' Motion, ¶15, p 8) whereby "substantially all of the Sellers' assets . . . will be sold and transferred to the Purchaser, and that certain liabilities of the Sellers . . . will be assumed by the Purchaser." (Debtors' Motion, ¶ 16, p 8)

5. The Master Sale and Purchase Agreement (MPA), attached to Debtors' Motion as Exhibit A, details which of Debtors' specific assets will be purchased and which of Debtors' specific liabilities will be assumed by the Purchaser. Section 2.3(a) delineates those liabilities the Purchaser will assume and specifically includes Debtors' workers' compensation liabilities:

> The '<u>Assumed Liabilities</u>' shall consist only of the following Liabilities of Sellers:
>
> > (x)  all Liabilities of Sellers arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Seller, except for Retained Workers' Compensation Claims [Debtor's Motion, Exhibit A – Master Sale and Purchase Agreement, pp 26-27]

4

6.    Later, Section 2.3(b)(xii) describes which liabilities will be retained by Debtors, including certain workers' compensation claims:

> (xii)    all workers' compensation Claims set forth on **Exhibit G** and such additional workers' compensation Claims set forth on Section 2.3(b)(xii) of the Sellers' Disclosure Schedule ("Retained Workers' Compensation Claims") [Debtor's Motion, Exhibit A – Master Sale and Purchase Agreement, pp 27-28]

7.    Exhibit G to the MPA lists the following as "Certain Retained Workers' Compensation Claims":

> Alabama, Georgia, New Jersey, Oklahoma
> [Debtor's Motion, Exhibit A – Master Sale and Purchase Agreement, Exhibit G]

8.    Upon initial review of these MPA provisions, it might appear that the Purchaser has made a commitment to meet its statutory obligations in order to operate as a self-insured employer in Michigan by assuming all of Debtors' Michigan workers' compensation obligations. Any certainty that was potentially created in Section 2.3(a) and (b), however, is effaced by subsequent MPA provisions. Specifically, Section 6.5 of the MPA entitled "Supplements to Excluded Assets, Assumed Liabilities and Retained Liabilities," states, in part:

> (b)    Until the date that is two (2) Business Days prior to the Sale Hearing, Purchasers and Sellers may mutually agree and jointly designate in writing any workers' compensation Claims against any Seller they wish to designate or remove as an additional Retained Liability on Exhibit G or Section 2.3(b)(xii) of the Sellers' Disclosure Schedule. [Debtor's Motion, Exhibit A – Master Sale and Purchase Agreement, pp 59-60] (Emphasis added.)

9.    By providing an avenue to shift any workers' compensation obligations from an Assumed Liability of the Purchaser to a Retained Liability of the Debtor, the Purchaser has, in effect, made no commitment to assume any workers' compensation obligations in any state. Moreover, if the MPA is approved as proposed and the Sale parties are provided the ability to wait until two business days before the Sale hearing to shift these liabilities, they will have

effectively foreclosed the affected states from objecting to such actions that may readily violate the states' laws.

  B. <u>Debtors' have failed to adequately define or even discuss the effect of its pending transaction with Delphi Corporation.</u>

  10. One of Debtors' primary suppliers, Delphi Corporation (Delphi), filed its Chapter 11 bankruptcy in October of 2005 in the Southern District of New York. *In re: Delphi Corporation,* Case No. 05-44481. Delphi has recently filed pleadings indicating its intention to exit Chapter 11, either through the approval of its Plan of Reorganization or through a Section 363 sale of assets. Through either process, Delphi contemplates the sale of significant assets to Debtors. On June 16, 2009, Delphi filed a "Supplement to First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-in-Possession." Within that document, Delphi states:

> Under applicable bankruptcy law, GM must receive Bankruptcy Court approval to enter into and perform under the Master Disposition Agreement. Pursuant to the terms of the Master Disposition Agreement, Bankruptcy Court authorization must by obtained prior to July 15, 2009 or the Master Disposition Agreement terminates automatically. <u>GM is expected to file a motion on or about June 20, 2009 seeking authorization to enter into and perform under the Master Disposition Agreement,</u> and the hearing at which GM's motion will be considered is currently scheduled for July 13, 2009. [Exhibit 1 – Delphi Corporation's Supplement to First Amended Disclosure Statement, p S-xx. (Emphasis supplied.)]

  11. To date, neither New GM nor Old GM have filed any pleadings seeking approval or otherwise made mention of the pending Delphi sale transaction in any of its pleadings filed with this Court. Neither the Sale Motion nor the MPA makes any reference to the pending Delphi transaction or to the potential implications on Debtors' workers' compensation obligations in Michigan.

  12. In order to acquire and maintain self-insurer status in Michigan, an employer must demonstrate that it can meet <u>all present and future obligations</u> under the WDCA. Michigan treats

6

as present obligations any workers' compensation benefits coming due no matter when they occurred and thus, an entity that intends to continue the operations of a self-insured employer must pay for such obligations. MICH. COMP. LAWS § 418.611(5). Moreover, in order to maintain or acquire self-insured status, the Agency determines whether an employer demonstrates fiscal responsibility and viability. MICH. COMP. LAWS § 418.611(1)(a); MICH. ADMIN. CODE r. 408.43a (2007); r.408.43c (1999). If these requirements are not met, the Agency may deny or revoke an employer's self-insured authority - - leaving the employer the statutory obligation to acquire workers' compensation insurance in order to operate as an employer in Michigan.

13.     Without knowing the exact parameters of Debtors' final agreement with Delphi and Purchaser's intentions in regard to this transaction, including the full extent of the assumption of Delphi's workers' compensation obligations, the Agency and Funds have no option but to object to Debtors' Sale Motion.[3] If Delphi's pleadings are correct that Debtor will be filing documents in this case regarding the Delphi transaction by June 20, 2009, by the time the Agency and Funds can review the documents it will be too late to object to the Motion at hand.

14.     As the Purchaser has not made a firm commitment to assume all of Debtors' workers' compensation obligations, a significant possibility exists that the Debtors will retain the workers' compensation obligations. At this juncture, Debtors' retained assets may be insufficient to secure the payment of their workers' compensation obligations. Under such circumstances, the Agency may be statutorily obligated to immediately revoke the Debtors' self-insured authority. If Debtors' self-insured authority was revoked, the Debtors would be required

---

[3] Debtors currently are engaged in discussions with the Agency and Funds regarding its workers' compensation obligations created by the Delphi Transaction. Any questions arising out of this transaction are subject to the exclusive jurisdiction of Michigan's judicial and administrative process.

7

to immediately acquire workers' compensation insurance coverage in order to operate in Michigan. MICH. COMP. LAWS § 418.611 (1).

15.  Additionally, should the Purchaser fail to assume the entirety of Debtors' workers' compensation obligations, the workers' compensation benefits of transferred employees could be affected, as the Purchaser, being a new employer in Michigan, could be prohibited from obtaining self-insurance authority in Michigan:

> An employer that is in business less than 5 years shall not be considered for self-insured authority unless its workers' disability compensation liability will be guaranteed [sic] by a parent corporation or combinable affiliated entity that has been in business not less than 5 years and that would qualify for self-insured authority in Michigan. [MICH. ADMIN. CODE r. 408.43a(2) (2007)]

Without self insured status, the Purchaser would need to acquire workers' compensation insurance coverage in order to operate in Michigan.

### III. Debtors' proposed sale could leave Debtors' injured workers without a source of benefit payments.

16.  The Funds Administration is an entity made up of three funds: (1) The Second Injury Fund, (2) the Silicosis Dust Disease and Logging Fund and (3) the Self-Insurers' Security Fund, statutorily created to provide benefits under the WDCA to injured workers. MICH. COMP. LAWS §§ 418.501-418.561. The Self-Insurers' Security Fund is responsible for paying workers' compensation benefits to injured workers who were employed by any self-insured employer that became insolvent. MICH. COMP. LAWS § 418.537.

17.  Under the MPA, if the Sale parties decide to move Debtors' workers' compensation obligations, including those arising from the Delphi operations, to the "Retained Liabilities" category, and Debtors' retained assets are insufficient to pay its workers' compensation obligations, Michigan's Self-Insurers' Security Fund would be forced to assume Debtors' workers' compensation obligations.

18. If this Fund was required to assume Debtors' workers' compensation obligations, the Self-Insurers' Security Fund would be insolvent in a matter of weeks. Based upon figures provided to the Agency by the Debtor, Debtors' estimated total workers compensation obligations may exceed $1.5 billion, with yearly payment obligations of over $111 million. Even if the Funds Administration levies emergency assessments on existing self-insured employers, including Debtors themselves, the Self-Insurers' Security Fund's maximum possible balance would be approximately $9 million – substantially less than needed to cover the Debtors' statutory obligations of over $1.5 billion.

19. The concern about a source for payment of benefits applies not only to Debtors' injured employees, but to all injured employees in Michigan entitled to benefits from an insolvent self-insured employer. If the proposed sale order is approved and the Debtors are unable or unwilling to continue paying their workers' compensation obligations, the Self-Insurers' Security Fund would eventually become insolvent, leaving all eligible injured workers of Michigan's self-insured employers without a source of benefits.

**IV.    Debtors' Proposed Order is overly broad and could violate 28 U.S.C. §959(b).**

20. Debtors' proposed Sale Order contains language that is overly broad and impermissibly attempts to void state and federal laws. The order states, in part:

> No law of any state or other jurisdiction, including any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the 363 Transaction, the MPA, the Motion, and this Order." [Debtors' proposed Order (I) Authorizing Sale of Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holding LLC, a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief - ¶ 39, p 28 (Emphasis added)]

9

21.     Paragraph 15 of the Proposed Order provides:

> To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the purchased assets [*Id,* ¶ 15, p 18].

This language may be read to dictate a conclusion that any governmental action violates Section 525 – conclusions not necessarily contemplated or authorized by this Bankruptcy Code provision.

22.     While Paragraph 15 may be ambiguous, Paragraph 28 is not. It provides:

> [A]ll persons and entities are *forever* prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets with respect to any (i) Claim other than Assumed Liabilities, or (ii) successor or transferee liability of the Purchaser for any of the Debtors, including, without limitation, the following actions:
>
> . . .
>
> revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets. [*Id.*, ¶ 28, pp 24-25](Emphasis added).

This provision exceeds the limitations imposed by Section 525 for neither the Code nor any law permits an order that bars, let alone *forever* bars, Michigan from revoking or denying authorization for Purchaser to operate as a self-insured employer in Michigan.

23.     This proposed language directly conflicts with 28 U.S.C. §959(b), which requires all Debtors to maintain compliance with state governmental regulatory requirements under Federal Bankruptcy law:

> Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. [28 U.S.C. § 959(b)]

24.     Debtors' proposed language also contradicts Section 362(b)(4) and 28 U.S.C. § 1452(a) which except police and regulatory actions of government agencies from the automatic stay and bar their removal from the state courts.

25.     Debtors should not be able to preempt Michigan law through this proposed Order for no provision of the Bankruptcy Code preempts all applicable state law. "Implicit in Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business. . . .*In re Quanta Resources Corp.*, 739 F.2d 912, 919 (3d Cir. 1984), *aff'd sub nom., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986).

26.     Debtors' Motion and Master Sale and Purchase Agreement, if approved as proposed, could result in Debtors or purchaser lacking any method to secure their workers' compensation obligations in Michigan. Debtors' proposed Sale Order would allow it to violate state law without repercussion. Debtors cannot be provided with an avenue to avoid regulatory requirements that otherwise are applicable to all employers in Michigan. As recently stated by another bankruptcy court:

> As bankruptcy is not intended to be a safe haven from compliance with regulatory requirements generally applicable to the ongoing operations of a debtor, the compliance obligations of operating debtors include adherence to bonding and financial assurance requirements imposed by laws generally applicable to the business of the debtor. [*James Bickford v Lodestar Energy, Inc*, 310 BR 70 (ED Kentucky 2004)]

27.     Debtors therefore must take adequate steps to assure that their Michigan' statutory obligations are met and all state laws are followed. Otherwise, Debtors are violating federal law.

11

## V. Conclusion

28. The Agency and Funds submit that the arguments and authorities set forth in this Limited Objection satisfy the requirements of Local Bankruptcy Rule 9013-1(b) and that submission of a separate memorandum of law should not be required.

29. The Agency and Funds are filing the instant objection in the interests of time and as a courtesy to creditors, the Purchaser, and this Court. Significant legal concerns exist that Debtors' pleadings and proposed order as currently written violate Michigan law and that if approved, have devastating ramifications on Debtors' injured workers, Michigan's self-insured employers, and their employees. The Agency and Funds respectfully reserve their right to supplement this objection, in accordance with the deadlines set by this Court.

Respectfully submitted,

MIKE COX
Michigan Attorney General

Dated: June 18, 2009

/s/ Susan Przekop-Shaw
Susan Przekop-Shaw (P30496)
Dennis J. Raterink (P52678)
Michigan Assistant Attorneys General
Labor Division
P.O. Box 30736
Lansing, Michigan 48909
Telephone: (517) 373-1176
Fax: (517) 241-7987