# EXHIBIT C TO THE AFFIRMATION OF NORMAN W. BERNSTEIN

ENVIRONMENTAL CONSERVATION AND CHEMICAL CORPORATION

TRUST FUND AGREEMENT

# ENVIRONMENTAL CONSERVATION AND CHEMICAL CORPORATION
## TRUST FUND AGREEMENT

### Table of Contents

|  |  | Page |
|---|---|---|
| **SECTION 1:  PURPOSE, SETTLORS AND NAME** | | 1 |
| **1.01.** | TRUST FUND PURPOSE | 1 |
| **1.02.** | SETTLORS | 2 |
| **1.03.** | NAME OF TRUST | 4 |
| **SECTION 2:  DISPOSITIVE PROVISIONS** | | 4 |
| **2.01.** | USE OF INCOME AND PRINCIPAL | 4 |
| **2.02.** | PAYMENTS FROM THE TRUST FUND | 4 |
| **2.03.** | FUNDING THE TRUST | 5 |
| **2.04.** | PAYMENT TERMS | 8 |
| **2.05.** | CONTRIBUTIONS FROM PARTIES OTHER THAN SETTLORS | 8 |
| **2.06.** | NO TRANSFERABILITY OF INTEREST IN THE TRUST | 9 |
| **2.07.** | TIME OF TERMINATION OF TRUST | 9 |
| **2.08.** | DISTRIBUTION OF TRUST FUND UPON TERMINATION | 9 |
| **2.09.** | SETTLORS' RETAINED RIGHTS | 9 |
| **2.10.** | ACTIONS REQUIRING CONSENT OR DIRECTION OF SETTLORS | 10 |
| **2.11.** | METHOD OF VOTING | 11 |
| **2.12.** | DUTIES OF TRUSTEES | 12 |
| **SECTION 3:  TRUSTEES** | | 12 |
| **3.01.** | DESIGNATION OF TRUSTEES | 13 |

3.02.   REPLACEMENT OF TRUSTEES............................ 13

3.03.   EXONERATION FROM BOND.............................. 14

3.04.   COMPENSATION....................................... 14

3.05.   TRUST PROCEDURES................................... 14

3.06.   DECISIONS OF TRUSTEES.............................. 15

3.07.   ACCOUNTS........................................... 15

3.08.   LIABILITY.......................................... 17

3.09.   INDEMNITY OF TRUSTEES.............................. 17


SECTION 4:  TRUSTEES' POWERS                              18

4.01.   PAYMENT OF EXPENSES OF ADMINISTRATION............. 19

4.02.   INVESTMENT OF TRUST ESTATE........................ 19

4.03.   EXTENSION OF OBLIGATION AND NEGOTIATION
        OF CLAIMS......................................... 20

4.04.   REGISTRATION...................................... 20

4.05.   LOCATION OF ASSETS................................ 20

4.06.   RETENTION AND REMOVAL OF PROFESSIONAL
        AND EMPLOYEE SERVICES............................. 20

4.07.   AUTHORITY TO REPRESENT SETTLORS................... 22

4.08.   ADVISORY COMMITTEES............................... 23

4.09.   INSTITUTION OF LITIGATION......................... 23

4.10.   PERMITS AND APPROVALS............................. 25

4.11.   DELEGATION OF POWERS.............................. 26

4.12.   DISCRETION IN EXERCISE OF POWERS.................. 26

4.13.   POWERS OF TRUSTEES TO CONTINUE UNTIL
        FINAL DISTRIBUTION................................ 26

## SECTION 5:  MISCELLANEOUS                                    26

5.01.  HEADINGS.........................................  26

5.02.  PARTICULAR WORDS..................................  26

5.03.  SEVERABILITY OF PROVISIONS........................  27

5.04.  NOTICES UNDER THIS AGREEMENT......................  27

5.05.  COUNTERPARTS OF AGREEMENT.........................  28

5.06.  GOVERNING JURISDICTIONS...........................  28

5.07.  SUCCESSORS........................................  28

5.08.  CONSTRUCTION WITH CONSENT DECREE..................  29

5.09.  MISCELLANEOUS.....................................  29

5.10.  NO ADMISSION......................................  29

5.11.  EFFECTIVE DATE....................................  30

       ATTACHMENT 1......................................  32

       ATTACHMENT 2......................................  34

## ENVIRONMENTAL CONSERVATION AND CHEMICAL CORPORATION SITE

### TRUST FUND AGREEMENT

Agreement, made this _10th_ day of _September_ , 1991, by and among the parties listed on Attachment 1 hereto (hereinafter called the "Settlors"), and the Trustees listed on page 13 (hereinafter, together with any successors in office, called the "Trustees").

The Trustees shall have and hold the funds contributed to the Trust Fund created by this Agreement as provided herein, and all funds otherwise contributed to, or received by, the Trust Fund, together with the proceeds and reinvestments thereof (hereinafter collectively called the "Trust Fund"), and shall administer such funds in accordance with the provisions of this Agreement.

### FIRST:  PURPOSE, SETTLORS AND NAME

1.01.   TRUST FUND PURPOSE.   This Trust relates to the Environmental Conservation and Chemical Corporation ("ECC") Site located in Boone County, Indiana (the "ECC Site" or the "Facility").   The purpose of this Trust is to fulfill the obligations of Settlors under the Consent Decree which was entered on _September 10_ , 1991, in United States of America, State of Indiana v. Environmental Conservation and Chemical Corporation, et al., Civil Action No. 83-1419 C (S.D. Ind.) (hereinafter referred to as the "Consent Decree").   All terms used herein which are defined in the Consent Decree shall have the same meanings herein.

To fulfill this purpose, the Trustees shall review the terms of the Consent Decree and take such appropriate actions as are authorized herein or in the Consent Decree to effectuate the Consent Decree.

The provisions of this Trust Agreement and the rights granted to the Trustees hereunder shall not diminish, alter or modify the rights or obligations of Settlors pursuant to the Consent Decree.

The payments provided for herein are and shall be construed to be payments made in settlement of the claims made against the Settlors by Plaintiffs for damages caused by the alleged releases and threatened releases of hazardous substances at and from the Facility.[1]  The payments into the Trust Fund are not by way of a fine or penalty or in lieu of any fine or penalty. Settlors neither expected nor intended those alleged releases to occur. By executing this Trust Agreement, Settlors do not admit, accept or intend to acknowledge any liability or fault with respect to any matter arising out of or relating to the Facility.

1.02.    SETTLORS.  In accordance with the terms of the Consent Decree each Settlor agrees to contribute funds to this Trust by check in such total amounts as are set forth on Attachment 1 hereto.  Settlors' payments to this Trust shall be due in such amounts and at such times as are set forth in written demands     for     contributions     issued     by     the     Trustees,

---
[1]    The United States takes no position as to the statements contained in this sentence.

pursuant to Sections 2.03 and 2.04 below. Each such contribution must be accompanied by a fully executed ECC Site Trust Fund Contribution Form, as set forth on Attachment 2 hereto.

Upon entry of the Consent Decree by the Court, each Settlor shall be respectively deemed to have qualified as a Settlor of this Trust and shall be fully bound by this Trust's terms. If, pursuant to the procedures set forth at Section I, Paragraphs 14 and 15, of the Consent Decree, any Settling Defendant withdraws from the Consent Decree due to the issuance of an amended Record of Decision ("ROD") that causes the ROD to differ materially from the Work, said Settling Defendant will be deemed to have withdrawn from the Consent Decree and from this Trust Agreement.

The percentage share applicable to each Settlor as shown on Attachment 1, or as adjusted as provided in Section 2.03, shall be known as the "Individual Settlor Percentage" for that Settlor. All signatories to this Trust Agreement acknowledge that the Individual Settlor Percentages set forth in Attachment 1 represents an agreement among the Settlors only as to the apportionment of their payment obligations under the Consent Decree. The signatories further acknowledge that, notwithstanding anything to the contrary in the Consent Decree or the Trust Agreement, any funds required to be paid by the Settlors under the Consent Decree or this Trust Agreement shall be made in accordance with the allocation percentages set forth in Attachment 1, as may be adjusted pursuant to Section 2.03. The signatories further

- 3 -

agree that, except as provided in Section 2.03, the future payment obligations of the Settlors shall be limited to the same proportion as set forth in Attachment 1.

1.03.  NAME OF TRUST.  The funds received by the Trustees from Settlors, or any other person or entity, together with the proceeds and reinvestments thereof and additions thereto, shall be known as the ECC Site Trust Fund (the "Trust Fund" or "Trust").

SECOND:  DISPOSITIVE PROVISIONS

The Trustees shall manage, invest and reinvest and distribute the Trust Fund as follows:

2.01.  USE OF INCOME AND PRINCIPAL.  During the term of the Trust, the Trustees shall use so much or all of the income and/or principal of the Trust Fund as is required to satisfy the Settlors' obligations set forth in the Consent Decree and as provided in this Trust Agreement.

2.02.  PAYMENTS FROM THE TRUST FUND.  To the extent not paid from other sources, the Trustees shall make from the Trust Fund (a) the payments required by Section V of the Consent Decree to be made by Settlors to have the Work performed, and (b) any other payments required to be made by Settlors in order to fulfill the terms of the Consent Decree.  The Trustees shall also pay the expenses described in Sections 3.03, 3.04 and 3.09 and Article Four hereof from the Trust Fund.

Until the ECC Site Section 468B Trust Fund created pursuant to Section XXIII.B and Appendix E of the Consent Decree has terminated, the Trustees shall seek payment of any of the amounts described above from the ECC Section 468B Trust Fund before making such payments from the Trust Fund.

Any payments to the United States under this Section shall be by certified check issued by the Trustees, made payable to "EPA Hazardous Substances Superfund" and referencing on the check "Envirochem Site No. 30", and shall be sent by certified mail, return receipt requested, to EPA Region V, Attn:   Superfund Accounting, P.O. Box 70753, Chicago, Illinois 60673, or to such other payee or address as the U.S. EPA designates in writing.  Any payments to the State of Indiana under this section shall be made in the same manner, made payable to "Indiana Department of Environmental Management," and shall be sent to Indiana Department of Environmental Management, Attn:   Cashier, 105 S.   Meridan St., Indianapolis, Indiana 46206-6026, or to such other payee or address as the State designates in writing.

2.03. <u>FUNDING THE TRUST</u>.   Settlors are obligated to ensure that the Trust has sufficient assets to satisfy the requirements of the Consent Decree.   Within 7 business days of entry of the Consent Decree, the Trustees shall make demand in writing for Settlors to contribute to this Trust an amount equal to the difference between the amount anticipated to be received from the ECC 468B Trust Fund and $5.7 million.   When necessary to satisfy the purpose of this Trust as set forth in Section 1.01, the

Trustees shall make demand in writing upon Settlors for additional contributions to this Trust in amounts determined by the Trustees as necessary and in sufficient time to allow for uninterrupted progress of the Work or Additional Work consistent with the terms of the Consent Decree and whenever necessary to assure that the assets of the Trust do not fall below the sum of $500,000 during the first four years that this Agreement is in effect. Each Settlor's additional contribution shall be in the same proportion as that established in Attachment 1 hereto, as may be modified pursuant to this Section.

If any Settlor shall ever be judicially adjudged a bankrupt and discharged from its debts and obligations, or defaults for any other reason on its obligations to pay under this Agreement, including specifically the obligations of the Consent Decree and this Trust Agreement (a "Discharged Party" or "Defaulting Party"), then the required contribution of such Discharged or Defaulting Party shall be reallocated by the Trustees among the remaining Settlors, with each such remaining Settlor assuming a share proportionate to its Individual Settlor Percentages excluding the Individual Settlor Percentage of any Discharged or Defaulting Party.

If after the effective date of this Trust Agreement, any person or entity qualifies as a Settlor by becoming a signatory to the Consent Decree approved by the parties to that Decree, and upon amendment of the Consent Decree to include the new Settlor as a Settling Defendant under the Decree, then the required

- 6 -

contribution and Individual Settlor Percentage of such new Settlor shall be calculated by the Trustees.  The new Settlor's Individual Percentage will be applied prospectively to future payment obligations and retrospectively to determine the new Settlor's obligation for past payments.  The amount due from the new Settlor for such past payments shall be paid within 30 days of receipt of notice from the Trustees of the amount due.  In addition, following such qualification of a new Settlor, the required contributions and Individual Settlor Percentages of the existing Settlors shall be reduced pro rata according to the size of their Individual Settlor Percentages such that the new Individual Settlor Percentages of all Settlors total 100 percent.  When the result of such recalculation of the existing Settlors' Individual Settlor Percentages is that existing Settlors are owed a credit on payments already made to the Trust, the Trustees shall elect, in their discretion, either to provide such existing Settlors with refunds from the Trust or with credit against any future payments still owed by the existing Settlors.

If funds are recovered through litigation instituted as provided in Section 4.09 of this Agreement, other than litigation to compel payment from an existing Settlor for failure to meet payment obligations under Sections 1.02 and 2.03 of this Agreement, the Trustees shall elect, in their discretion, either to distribute the funds recovered to the Settlors or to provide the Settlors with credit against any future payments still owed to or needed by the Trust to carry out its obligations, according

- 7 -

to the Settlors' Individual Settlor Percentages; provided,
however, that if a Settlor withdraws from litigation pursuant to
Section 4.09, such recovered funds are to be distributed or
credited to the remaining Settlors pro rata according to their
Individual Settlor Percentages.

The Trustees shall determine from time to time the amount
necessary to satisfy reasonably anticipated future expenses
necessary to fulfill the Settlors' obligations under the Consent
Decree and this Trust Agreement. The Trustees shall then assess
each Settlor a payment equal to each Settlor's Individual Settlor
Percentage of the amount of anticipated future expenses.

2.04. <u>PAYMENT TERMS</u>. By its execution of this Trust
Agreement, each Settlor agrees to satisfy all such contributions
required under Attachment 1 hereto and any additional contribution
demands made by the Trustees pursuant to Sections 2.02 and 2.03
within thirty (30) days of receipt of such written demand, it
being understood and agreed that as to any required contributions
which are not timely made, each late-paying Settlor will also be
liable for and pay to the Trust interest on the unpaid amount,
commencing on the 31st day after receipt of such written demand
and ending on the date that payment is made, at the rate of 1 1/2%
per month (or if such rate is determined to be usurious or
otherwise impermissible, the highest rate permitted by law),
together with expenses, attorneys' fees and costs incurred in
collecting any past due amount.

2.05. <u>CONTRIBUTIONS FROM PARTIES OTHER THAN SETTLORS</u>. The Trustees are authorized on behalf of Settlors to receive contributions to the Trust from persons or entities other than Settlors, including but not limited to contributions from the ECC 468B Trust Fund. Upon the receipt of such payments, the Trustees shall promptly deposit such payments into the Trust Fund.

2.06. <u>NO TRANSFERABILITY OF INTEREST IN THE TRUST</u>. The interest of Settlors in the Trust, and their obligation to provide funds under Section 2.03, is not transferable, except to a successor.

2.07. <u>TIME OF TERMINATION OF TRUST</u>. Subject to Section 2.08, this Trust shall terminate on the first to occur of (i) December 31, 2019, or (ii) the time immediately preceding the expiration of 21 years after the death of the survivor of the following persons: John Jordan Kyle or Marion S. Bernstein, or (iii) when the Work, or Additional Work, if any, required under the Consent Decree has been certified by the U.S. EPA as completed pursuant to the terms of the Consent Decree.

2.08. <u>DISTRIBUTION OF TRUST FUND UPON TERMINATION</u>. Upon termination of this Trust, the Trustees shall liquidate the assets of the Trust and thereupon distribute the entire remaining Trust Fund assets, including all accrued, accumulated and undistributed net income, to the Settlors in shares equal to their respective Individual Settlor Percentages determined pursuant to Section 2.03

at the time of termination.  Discharged or Defaulting Parties, as
described in Section 2.03 above, shall not be eligible to receive
any distributions under this Section.

    2.09.  SETTLORS' RETAINED RIGHTS.  For purposes of taking any
action under this Trust which requires the consent of or direction
from the Settlors, the Trustees may act only upon the consent of
those Settlors having fifty-one percent (51%) or more of the
Individual Settlor Percentages, as noted on Attachment 1, as those
percentages may be adjusted (1) pursuant to Section 2.03 hereof,
or (2) for purposes of this Section only, and subject to the
exception set forth below, to reflect the removal of those
Settlors not making a timely contribution as required by Sections
1.02 and 2.04 (hereafter referred to as "Non-Contributing
Settlors"), provided that no Settlor shall lose the right to vote
its Individual Settlor Percentage due to nonpayment of a
contribution required under Sections 2.02, 2.03 and 2.04 if (a)
within thirty (30) days of receipt of the Trustees' written demand
for contribution, the Settlor furnishes the Trustees with a
written resolution by the Settlors' governing board or board of
directors acknowledging an intention to make payment and (b)
either the required payment or the Settlors' final total payment
is made within ninety (90) days of receipt of the Trustees'
written demand.  Non-Contributing Settlors that fail to satisfy
the requirements of the immediately preceding clause shall regain

their status as Settlors and their appropriate Individual Settlor
Percentage upon paying the required contribution and interest as
provided in Sections 2.02, 2.03 and 2.04.

2.10.  <u>ACTIONS REQUIRING CONSENT OR DIRECTION OF SETTLORS</u>.
The following actions require the written consent or direction of
the holders of 67% of the Individual Settlor Percentages:

> 1.  Any alteration, amendment or revocation of
> this Trust Agreement.    Action under this
> paragraph may only be taken after notice of
> all Settlors as provided in Section 5.04;
> provided, however, that at all times prior to
> any such alteration, amendment, revocation or
> termination as provided in Section 2.07, the
> Trustees shall retain their authority under
> this Trust Agreement to make all provisions
> necessary to effectuate the terms of the
> Consent Decree, subject to Subparagraph (2)
> below; and provided, further, however, that
> the alteration or amendment shall not affect
> any Individual Settlor Percentage set forth on
> Attachment 1 except as may be explicitly
> authorized by Section 2.03; and
>
> 2.  All other decisions stated herein which
> are to be made by the holders of 67% of the
> Individual Settlor Percentages.

2.11.  <u>METHOD OF VOTING</u>.    Voting on any matter required or
permitted to be decided by the Settlors under this Trust Agreement
shall take place by submission to the Trustees of a written
statement by each Settlor participating in the vote that sets
forth the Settlor's vote on the issue in question.   The Trustees,
or any Settlor(s) who initiate(s) a request for a vote on an
issue, must provide written notice pursuant to Section 5.04 to all
Settlors that the vote will be taken; such notice must describe
the issue to be voted upon, list the address to which the
Settlors' written voting statements must be submitted, and provide

a deadline of no less than thirty (30) days by which the Settlors must cast their votes. Written notice of the result of each vote, including a statement of how each Settlor voted, shall be provided to the Settlors by the Trustees.

No vote shall be effective unless at least fifty-one percent (51%) of the total Individual Settlor Percentages (exclusive of the shares of Non-Contributing Settlors who are not entitled to vote) shall have been cast unless a greater majority is required as otehwise set forth herein. If a quorum has not participated in a particular vote, the Trustees or any Settlor may call for a second vote within forty-five (45) days after the deadline for the initial vote expires. Notice of a second vote shall be given in the manner described in the second sentence of the preceding paragraph, and shall state the results of the initial vote and explain why a second vote is required.

Notwithstanding the terms of the preceding two paragraphs, a vote may be taken in the case of an emergency through a telephone poll of the Settlors conducted by the Trustees or the Settlors requesting approval of the Majority Settlors for a particular action. In such an emergency situation, written confirmation of the vote and its outcome shall be provided to each Settlor by the Trustees as soon as practicable after the vote.

2.12. DUTIES OF TRUSTEES. The Trustees shall act on behalf of the Settlors, subject to the provisions of this Agreement, in the performance of all duties or obligations required of the Settlors under the Consent Decree with respect to the conduct,

- 12 -

management, or supervision of the Work at the Envirochem Site. This Agreement shall not be construed to confer upon Trustees any authority to carry on any business for profit or to divide the gains therefrom among the Settlors.

### THIRD:  TRUSTEES

The appointment of successor Trustees, provisions governing resignation and compensation of the Trustees, and the general rules governing the relationship of the Trustees as among themselves and as to interested or third parties are as follows:

3.01.    DESIGNATION OF TRUSTEES.    The Trust Fund will be administered by four (4) Trustees.   The original Trustees of the Trust are as follows:

1.  Norman W. Bernstein

2.  John M. Kyle, III

3.  Timothy L. Harker

4.  Roy O. Ball

3.02.    REPLACEMENT OF TRUSTEES.   A Trustee may resign at any time upon providing sixty (60) days prior written notice of such resignation to all other Trustees; provided, however, that each Trustee agrees to continue to serve for a reasonable period of time to provide an opportunity for a successor Trustee to be named and qualified hereunder.   A successor or substitute Trustee will be selected by the holders of 67% of the Individual Settlor Percentages.    The Settlors shall move promptly to fill any vacancies among the four Trustee positions.

- 13 -

Any individual Trustee shall cease to be a Trustee of this Trust upon the existence of an inability of the individual Trustee to perform hereunder, or upon his death, resignation or adjudication as an incompetent, or at such time as he becomes unable to discharge the duties of Trustee.

Any Trustee may be removed at any time with or without cause by the written agreement of the holders of 67% of the Individual Settlor Percentages. A new Trustee shall be selected in the same manner as if the Trustee had resigned.

Any successor Trustee shall qualify by a duly acknowledged acceptance of this Trust, delivered to the other Trustees and to Settlors. Any successor Trustee shall have all the rights, powers, duties and obligations herein granted to the original Trustees.

3.03. <u>EXONERATION FROM    BOND</u>. No bond or other security shall be exacted or required of any Trustee appointed by this Trust Agreement. Following at least thirty (30) days prior written notice to Settlors, the Trustees may acquire and pay from the Trust Fund any accident, liability, or other insurance, bonds, etc., reasonably necessary for the administration of this Trust, including insurance protecting the Trustees themselves from liability to third persons or to any Settlor.

3.04. <u>COMPENSATION</u>. The compensation of the Trustees for services performed by them as Trustees in their capacity as Trustees shall be such amount as the Settlors may hereafter determine and shall be paid from the Trust Fund. In addition, the

- 14 -

Trustees shall be entitled to be reimbursed from the Trust Fund for out-of-pocket expenses reasonably incurred in connection with the administration of this Trust. Payment to any firm or entity performing services for the Trust in which a Trustee may have an interest shall be governed by Section 4.06.

3.05. <u>TRUST PROCEDURES</u>. The Trustees shall determine the procedures by which they shall perform their duties. The Trustees may form subcommittees or designate individual Trustees to carry out specific duties. Pursuant to Section 4.11 below, the Trustees may designate a third party or third parties to be responsible for the day-to-day operation and administration of the Trust Fund and the performance of the duties assigned to the Trustees under this Agreement or the Consent Decree. The Trustees may permit voting by proxy (which may be another Trustee or any representative of an absent Trustee, but the appointing Trustee shall not thereby be released from his fiduciary obligations), meetings by telephone, and such other procedures as they shall decide in their discretion are appropriate.

3.06. <u>DECISIONS OF TRUSTEES</u>. In all matters the decision of a majority of the Trustees entitled to vote thereon shall control. The Trustees may vote orally at meetings or in telephone conferences among the Trustees, or in writing by mail. It is recognized that, in accordance with Section 4.06, matters may arise in which a given Trustee may have or appear to have an interest. In that event, that Trustee shall disqualify himself

from participation in that matter. In the event of a deadlock on a matter requiring a vote by the Trustees, the Trustees shall refer the matter for decision by Settlors.

3.07.    ACCOUNTS.    The Trustees shall present an accounting to Settlors within 45 days of the end of each six (6) month period ending on June 30 and December 31 respectively following the effective date of the Consent Decree. If fewer than 90 days exist between the effective date of the Consent Decree and the date on which the first accounting period described in the preceding sentence expires, the accounting for that initial period of fewer than 90 days may be combined with the first full six-month accounting owed to Settlors by the Trustees. The Notice procedures in Section 5.04 below shall be followed with respect to all such accounting reports. Each accounting shall show the financial condition of the Trust Fund, including, without limitation, income and expenses of the Trust Fund for the reporting period (including expenses incurred pursuant to Sections 3.03 and 3.04), and shall also include a narrative account of all activities related to the Facility that were paid by the Trust Fund during the reporting period. Each accounting shall also include cash flow projections for the next accounting period.

At the request of the holders of 67% of the Individual Settlor Percentages, the accounting of the Trustees shall be submitted for such professional accounting examination as the Majority Settlors may deem appropriate. If any Settlor objects to

- 16 -

the Trustees' accounts, it shall deliver written notice of its objection to the Trustees, and the Trustees shall promptly respond in writing to such objection.

No later than February 14 in each year in which this Trust Agreement is in effect, the Trustees shall provide each Settlor with such information as may be necessary to calculate that Settlor's tax liability or eligibility for tax deductions in connection with the Settlor's contributions to the Trust Fund. In addition to the foregoing, within thirty (30) days after each of the contribution deadlines set forth in written demands issued by the Trustees pursuant to Section 2.03, the Trustee shall prepare and mail to each Settlor a Schedule K-1 listing all Settlors of this Trust and the total amount of the then-current contributions of each, together with each Settlor's percentage share of the total Trust assets contributed by all Settlors. The accounting and other information required to be provided herein, may be provided by a bank or other financial institution selected by the Trustees to extent delegated by the Trustees.

3.08.    <u>LIABILITY</u>.    Each Trustee shall be liable only for acts or omissions involving willful bad faith or reckless disregard of his or her duties under this Trust Agreement. No Trustee shall be responsible for the acts or omissions of any prior Trustee, successor Trustee, or Co-Trustee. Nor, in particular, shall any Trustee be liable in regard to the exercise

- 17 -

or nonexercise of any powers and discretionary acts delegated by the Trustee or Trustees pursuant to the provisions of this Trust Agreement.

3.09.    <u>INDEMNITY OF TRUSTEES</u>.    Each Trustee, whether initially named or appointed as a successor Trustee, acts as a Trustee only and not personally; and in respect of any contract, obligation or liability made or incurred by the Trustees or any of them hereunder in good faith, all persons shall look solely to the Trust and not to the Trustees personally.  The Trustees shall not incur any liability, personal or corporate, of any nature in connection with any act or omission made in good faith in the administration of the Trust or otherwise pursuant to this Trust Agreement.  Each Settlor agrees that the Trustees may use the funds in the Trust to purchase such insurance that is reasonably necessary to indemnify the Trustees from any and all liability that may arise out of this Trust, this Trust Agreement and the Trustee's good faith conduct as Trustees, excepting only such liability as may be imposed on the Trustees pursuant to Section 3.08.  Additionally, the Trustees whether initially named or appointed as successor Trustees shall be indemnified and held harmless either by the Trust or by the Settlors, in the event insurance is unavailable or inadequate (in amount, scope of coverage or otherwise).  This indemnification and hold harmless provision shall also cover all expenses reasonably incurred by such Trustee in defense of the aforementioned acts or omissions of the Trustees except that this indemnification shall not cover liability and expenses as may be imposed on the Trustees pursuant

- 18 -

to Section 3.08 hereunder.  In the event a Trustee is sued for matters related to its service as Trustee, the Trust in the discretion of a disinterested majority of the Trustees (or if there be none, then by the vote of the Settlors) may be used to reimburse a Trustee for all or a portion of its expenses and costs of defending such suit, including reasonable attorneys' fees and the amount of any judgment or amount paid in settlement.

### FOURTH:  TRUSTEES' POWERS

The Trustees shall have, with respect to the Trust Fund, all powers granted to a Trustee or to a personal representative under the laws governing this Trust, except as limited by the following specific fiduciary powers, all of which are to be exercised by the Trustees in a fiduciary capacity in the best interests of this Trust and the Settlors, in the Trustees' discretion and in accordance with the terms of the Consent Decree, namely:

4.01.  PAYMENT OF EXPENSES OF ADMINISTRATION.  To incur and pay any and all charges, taxes and expenses upon or connected with the Trust Fund or in the discharge of their fiduciary obligations under this Trust Agreement.

4.02.  INVESTMENT OF TRUST ESTATE.  Consistent with this Trust's purpose as set forth in Section 1.01, to invest and reinvest all or any part of the Trust Fund, including any undistributed income therefrom, exclusively in the investments hereinafter listed:  direct obligations of the United States, obligations guaranteed by agencies of the United States government, municipal or other bonds with at least an "A" rating,

- 19 -

trust funds which invest solely in United States direct or
guaranteed obligations, bank accounts, certificates of deposit to
the extent they are issued by banks insured by the federal
government, and common trust funds or money market funds investing
in short term insured or at least "A" rated municipal or other
bonds.

Investments shall be sufficiently liquid to enable the Trust
to fulfill the purpose of the Trust and to satisfy obligations as
they become due. Nothing in this Section shall be construed as
authorizing the Trustees to carry on any business or to divide the
gains therefrom. The sole purpose of this Section is to authorize
the investment of the Trust Fund (or any part thereof) as may be
reasonably prudent pending use of the Trust Fund for the purposes
of this Trust.

4.03. <u>EXTENSION OF OBLIGATIONS AND NEGOTIATION  OF CLAIMS</u>.
Except for the payment obligations set forth in Sections 1.02 and
2.04 or for such actions as may be inconsistent with the terms of
the Consent Decree, and, subject to at least thirty (30) days'
prior written notice to Settlors, the Trustees have the power to
renew or extend the time of payment of any obligation, secured or
unsecured, payable to or by this Trust, for as long a period or
periods of time and on such terms as they shall determine to
adjust, settle, compromise and arbitrate claims or demands in
favor of or against this Trust, including claims for taxes, upon
such terms as they deem advisable.

- 20 -

4.04.    REGISTRATION.    To hold any bonds, securities and/or other property in the name of a nominee, in a street name, or by other title-holding device, with indication of a trust.

4.05.    LOCATION OF ASSETS.    To keep any property belonging to the Trust Fund at any place in the United States.

4.06.    RETENTION AND REMOVAL OF PROFESSIONAL AND EMPLOYEE SERVICES.    To employ attorneys, accountants, banks, custodians, engineers, contractors, clerks, investment counsel and agents or employees (including any firm or entity in which they may have an interest) as they shall deem advisable and to make such payments therefore as they shall deem reasonable for the implementation of the purposes of this Trust.    The employment by the Trustees of a firm or entity in which a Trustee may have an interest shall not be deemed a conflict.    In such a case, however, the Trustee having such an interest shall not participate in any decision regarding the compensation of such firm or entity.    The Trustees shall have the authority to dismiss any agent, employee or professional for any reason or for no reason, except a reason prohibited by law.

Upon engagement of counsel by the Trustees, each Settlor agrees that:  (1) it will not claim or assert that, based solely on said counsel's past or present representation of a Settlor, said counsel has a conflict of interest in performing legal services authorized by the Trustees and arising out of the ECC Site; (2) it will not claim or assert, either (a) based solely on said counsel's representation of any other person or entity in a matter pending as of the date of receiving notice of intent to

- 21 -

hire said counsel or in a matter subsequently commenced, or (b) based solely on said counsel's representation of the Trustees under the terms of this Agreement, that said counsel has a conflict of interest caused by the current or subsequent representation of the other person or entity unless the subject matter relating to said representation arises out of or is connected to the ECC Site and involves or could involve any confidential information or facts obtained from the Settlor during the term of this Agreement which have not been made available to other Settlors or their representatives; (3) in the event that any conflict develops in the performance of work authorized by the Trustees by said counsel and the performance of work authorized by a Settlor that has retained that counsel, the Settlor consents to that counsel's continued performance of the work authorized by the Trustees; and (4) if a Settlor fails to make any payments required by this Agreement, it will raise no objection to the continued representation by said counsel of the Trustees in connection with any legal services arising out of the ECC Site.

4.07.    <u>AUTHORITY TO REPRESENT SETTLORS</u>.    To represent Settlors with regard to any matter concerning this Trust or its purpose before any federal, state or local agency or authority which has authority or attempts to exercise authority over the actions required by the Consent Decree or over any matter which concerns the Consent Decree or this Trust Agreement, provided that written notice of such matter is provided to the Settlors as soon as practicable.    The provisions of this Section shall encompass, but

not be limited to, the Trustees' representation of Settlors in any Dispute Resolution procedures under Section XIII of the Consent Decree; in connection with the periodic reviews provided for in Section VIII of the Consent Decree; in any proceeding relating to force majeure as provided under Section XIII of the Consent Decree, and in any other proceedings or activities that have the potential of significantly affecting the amount of contributions owed by any Settlors to the Trust Fund. The foregoing authority to represent Settlors may be delegated by the Trustees to such persons as the Trustees designate. Any individual Settlor may, at its option, choose to represent itself directly in any such proceeding in lieu of being represented by the Trustees or their designee.

Nothing in this Section authorizes the Trustees to represent the Settlors in any matter that presents the potential for adjusting the Individual Settlor Percentages set forth in Attachment 1, except when such potential adjustments would be made pursuant to the provisions of Section 2.03.

4.08.    <u>ADVISORY COMMITTEES</u>.    To    establish    advisory committees composed of representatives of Settlors to serve for such period of time and for such purposes as the Trustees shall determine.

4.09.    <u>INSTITUTION OF LITIGATION</u>.    Subject to at least thirty (30) days prior written notice to the Settlors, unless emergency conditions require shorter advance notice, and solely in order to advance the purpose of the Trust Fund as described in

Section 1.01, to institute litigation in the name of the Trust on behalf of all Settlors, upon obtaining approval of or direction from the 67% of the Individual Settlor Percentage against any person or entity, including any person or entity that has failed, in whole or part, to make any payments owed in accordance with this Agreement or that has failed, in whole or part, to make any payments owed pursuant to the Environmental Conservation and Chemical Corporation Site Section 468B Trust Fund Agreement. The advance notice to Settlors by the Trustees regarding such litigation shall include an explanation of the proposed litigation's purpose and necessity, and a preliminary non-binding estimate of its anticipated cost. Settlors, by agreeing to this Trust Agreement, assign their right to such claims to the Trustees and authorize the Trustees to file suit in the name of the Trust upon obtaining the approval of the holders of 67% of the Individual Settlor Percentages concerning the institution of any such litigation; provided, however, that if the Trustees reach an affirmative decision not to institute such litigation or the holders of 67% of the Individual Settlor Percentages fail to approve such litigation, then nothing in this Section shall prevent any Settlor, at its option, from initiating such litigation in its own behalf.

Any Settlor may direct the Trustees to remove it as a party to any litigation initiated by the Trustees by providing written instructions to that effect to the Trustees; provided, however, that except as provided in the following sentence, nothing in this

- 24 -

Section limits the Trustees' entitlement to use of the Trust to pay the expenses incurred in such litigation.  In the case of litigation proposed and commenced by the Trustees for the sole purpose of recovering damages or seeking some other type of affirmative monetary relief and not by way of defense, counterclaim or third party claim, (hereafter "a Trustee suit solely for monetary relief"), a Settlor that has directed the Trustees to remove it as a party to that suit will not be liable for any of the costs, fees or other expenses of the suit which are incurred after the date that the Trustees receive written notice that the Settlor will not be entitled to share in any amount recovered as a result of the suit.  Whenever any Settlor has directed the Trustees to remove it as a party to a Trustee suit solely for monetary relief, the Trustees may not use the Trust to pay any fees, costs or other expenses incurred in connection with the suit after the date on which the Trustees received written notice that the Settlor has removed itself as a party to the suit. In such a case, the Trustees shall keep separate financial records regarding all fees, costs and other expenses incurred in connection with the suit after the date of receipt of written notice of a Settlor's withdrawal as a party, and those fees, costs and other expenses will be charged to the Settlors who remain parties to the suit in a share proportionate to their Individual Settlor Percentages as compared to the total Individual Settlor Percentages excluding the Individual Settlor Percentage of any Settlor who has removed itself as a party to the suit.  Settlors

- 25 -

who remove themselves from litigation under the terms of this Section shall remain fully liable for all contributions owed to the Trust pursuant to Sections 1.02 and 2.03.

4.10.    PERMITS AND APPROVALS.    To apply for the issuance, assignment, or renewal of all necessary permits and approvals for performance of the Work (and Additional Work, if necessary) and to assure compliance with all obligations under such permits.

4.11.    DELEGATION OF POWERS.    To delegate to other persons such ministerial or other powers and duties as they may deem to be advisable.

4.12.    DISCRETION IN EXERCISE OF POWERS.    To do any and all other acts which they shall deem proper to effectuate the purposes to be served by this Trust Agreement.

4.13.    POWERS OF TRUSTEES TO CONTINUE UNTIL FINAL DISTRIBUTION.    The Trustees' powers shall continue until final distribution of the principal and income of the Trust Fund under Section 2.08, which shall occur as soon as possible after termination of the Trust.

FIFTH:  MISCELLANEOUS

Miscellaneous Provisions applicable to this Trust Agreement are as follows:

5.01.    HEADINGS.    The section headings set forth in this Trust Agreement are inserted for convenience of reference only and shall be disregarded in the construction or interpretation of any of the provisions of this Trust Agreement.

- 26 -

5.02.    <u>PARTICULAR WORDS</u>.    Any word contained in the text of this Trust Agreement shall be read as the singular or plural as the context may require, and, unless otherwise specifically stated, the word "person" shall be taken to mean and include an individual, partnership, association, government entity, company, or corporation.    Masculine gender shall include the feminine gender.

5.03.    <u>SEVERABILITY OF PROVISIONS</u>.    If any provision of this Trust Agreement or its application to any person or in any circumstances shall be held invalid or unenforceable, the application of such provision to any person in circumstances other than those as to which it is invalid or unenforceable and the other provisions of this Trust Agreement shall not be affected by such invalidity or unenforceability.

5.04.    <u>NOTICES UNDER THIS AGREEMENT</u>.    Any notice required by this Trust Agreement to be given to Settlors shall be deemed to have been properly given when mailed, postage prepaid, by registered or certified mail, to the persons to be notified as set forth by the Settlors in their Attachment 2 forms submitted at the time of making their contributions to the Trust Fund.    Any Settlor may change that address by delivering notice thereof in writing to the Trustees.    The Trustees shall endeavor to maintain a current listing of all Settlors' addresses, and shall make that listing available upon request to any Settlor.    Any notice required by this Trust Agreement to be delivered to any other person shall be deemed to have been properly delivered when mailed, postage

- 27 -

prepaid, by registered or certified mail, to the person to be notified at the last known address of such person, according to the records of the Trustees.

All notices and payments required to be transmitted to the Trustees shall be sent to the following address unless the Trustees notify the Settlors otherwise:  Norman W. Bernstein; Shea & Gould, 1775 Pennsylvania Avenue, N.W., Washington, D.C.  20006.

5.05.   COUNTERPARTS OF AGREEMENT.  This Trust Agreement has been executed for the convenience of the parties hereto in counterparts, any one of which for all purposes shall be deemed to have the status of an executed original and all of which shall constitute but one and the same instrument.

5.06.   GOVERNING JURISDICTION.  This Trust is initially an Indiana trust and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of the State of Indiana.  The Trustees may, however, at any time, change the situs of this Trust to another jurisdiction if such change has the prior approval of the 67% of the Individual Settlor Percentages. In such event, this Trust shall become a trust existing under the laws of such new jurisdiction and shall thereafter be administered in accordance with the laws of such new jurisdiction.

5.07.   SUCCESSORS.  Except as provided in Section 2.06, this Trust Agreement and the obligations created hereby shall not be transferable or assignable by any party hereto, and if any successor entity succeeds to the obligations of any party hereto

- 28 -

by operation of law, then this Trust Agreement shall be in all respects fully binding upon, and enforceable against, such successor entity.

5.08.   CONSTRUCTION WITH CONSENT DECREE.   This Trust Agreement shall be construed and interpreted in the context of the Consent Decree, and to the extent that the provisions hereof may conflict with those of the Consent Decree, the Consent Decree shall control.

5.09.   MISCELLANEOUS.   The Settlors intend that this Trust be treated as a grantor trust for federal income tax purposes and that each Settlor, except any Discharged Party or Defaulting Party, shall be treated as the owner of that portion of the Trust equal to that Settlor's Individual Settlor Percentage as determined as of the end of each calendar year.   The Trust shall operate on an accounting year which coincides with the calendar year.   The interest of any Settlor in the Trust shall not be subject to anticipation or assignment nor to the claims of any creditor of any Settlor, and any interest reserved to any Settlor shall be made available to the Settlor only upon termination of this Trust pursuant to Section 4 herein.

5.10.   NO ADMISSION.   By executing this Trust Agreement, Settlors do not admit, accept or intend to acknowledge any liability or fault with respect to any matter arising out of or relating to the Envirochem Site.

- 29 -

5.11.   **EFFECTIVE DATE.** The Trust Agreement shall be effective on the effective date of the Consent Decree. At such time, each Settlor that has submitted a signature page and has signed the Consent Decree shall be respectively deemed to have qualified as a Settlor under this Trust and shall be fully bound by its terms.

IN WITNESS WHEREOF, the undersigned, as Settlors, and the undersigned, as Trustees, have as of the day and year first above written, executed this Trust Agreement in agreement with the provisions thereof.

Attest:

_____
    Trustee

Attest:

_____
    Trustee

Attest:

_____
    Trustee

Attest:

_____
    Trustee

- 30 -

5.11.    <u>EFFECTIVE DATE</u>.  The    Trust    Agreement    shall    be
effective on the effective date of the Consent Decree.  At such
time, each Settlor that has submitted a signature page and has
signed the Consent Decree shall be respectively deemed to have
qualified as a Settlor under this Trust and shall be fully bound
by its terms.

IN WITNESS WHEREOF, the undersigned, as Settlors, and the
undersigned, as Trustees, have as of the day and year first above
written,  executed  this  Trust  Agreement  in  agreement  with  the
provisions thereof.

Attest:

_____
    Trustee

Attest:

_____
    Trustee

Attest:

_____
    Trustee

Attest:

_____
    Trustee

- 30 -

## SETTLOR'S CONSENT AND AUTHORIZATION

_____General Motors_____, by its duly
authorized representative, hereby consents to the foregoing Trust
Agreement and agrees to be bound by the terms and conditions
thereof and be a Settlor thereof.

By: _____
    Mark Hester
Company: __General Motors Corporation__

Title: __Attorney_____

Date: ___September 15, 1989_____

ATTACHMENT 1

| NAME OF COMPANY | PAYMENT EXPECTED TO BE DUE PURSUANT TO SECTION 1.02* | PERCENTAGE |
|---|---|---|
| Ahlstrom Filtration, Inc. (Southern Specialties)......... | $ 38,731 | 1.6418% |
| ALCOA (Aluminum Company of America Warrick Operations and Rea Magnet Wire Company)................................ | 126,563 | 5.3652% |
| American Telephone & Telegraph Company (and its subsidiaries, including Western Electric Co., Inc.).... | 54,416 | 2.3067% |
| A. O. Smith Corporation................................. | 23,145 | 0.7692% |
| Arvin Industries, Inc.................................. | 119,637 | 5.0716% |
| Batesville Casket Company, Inc......................... | 50,096 | 2.1236% |
| Beazer Materials and Services, Inc. (Koppers Company, Inc.) | 59,004 | 2.5013% |
| Bemis Company, Inc. (Bemis Bag)........................ | 61,137 | 2.5917% |
| Bridgestone/Firestone, Inc. (Firestone Industrial Products) | 64,029 | 2.7143% |
| Carpenter Body Works, Inc.............................. | 18,018 | 0.7638% |
| Chase Packaging Corporation (Chase Bag Company)........ | 11,269 | 0.4777% |
| The Cincinnati Varnish Company (Foy-Johnston, Inc.).... | 26,209 | 1.1111% |
| Emhart Industries, Inc. (USM and Bailey).............. | 56,147 | 1.9562% |
| Federal-Mogul Corporation.............................. | 24,791 | 1.0509% |
| Federal-Mogul Corporation (Switches, Inc.)............ | 3,438 | 0.1457% |
| Ford Motor Company..................................... | 84,629 | 3.5875% |
| Freightliner Corporation............................... | 92,797 | 3.4039% |
| General Electric Company including RCA................. | 117,222 | 4.9692% |
| General Motors Corporation (GKC-Delco Electronics/Delco) | 277,329 | 11.7563% |
| H C Industries, Inc.................................... | 10,929 | 0.4633% |
| Honeywell, Inc......................................... | 72,372 | 3.0679% |
| Jones Chemicals, Inc................................... | 104,001 | 3.8788% |
| The Kendall Company.................................... | 76,342 | 3.2362% |
| Kimberly-Clark Corporation (Brown-Bridge Division)..... | 50,127 | 2.1249% |
| Kurfees Coatings, Inc. (Louisville Varnish Company).... | 19,978 | 0.8469% |
| Lenk Company........................................... | 92,515 | 3.9218% |
| Ludlow Corporation..................................... | 114,673 | 4.3313% |
| Marathon Petroleum Company (Marathon Oil).............. | 30,081 | 0.9572% |
| Marathon Pipe Line Company............................. | 37,161 | 1.2574% |
| Mobil Oil Corporation.................................. | 88,065 | 3.7332% |

| | | |
|---|---:|---:|
| Potter Paint Company of Indiana, Inc................ | 16,163 | 0.4732% |
| Pratt & Lambert, Inc................................ | 60,451 | 2.5626% |
| RCA with GE......................................... | 54,878 | 2.3264% |
| Solvents Recovery Service of New England & New Jersey | | |
| (SRS and on behalf of C.R. Bard, Inc.)............. | 119,502 | 5.0659% |
| Standard Paints, Inc............................... | 11,010 | 0.3608% |
| Stolle Corporation................................. | 13,854 | 0.5873% |
| Union Carbide Chemicals and Plastics Company, Inc. | | |
| (Union Carbide Corporation)........................ | 78,584 | 3.3313% |
| Waste Research & Reclamation Company, Inc.......... | 56,996 | 2.2042% |
| Whittaker Corporation (Dayton Coatings and Chemicals). | 22,687 | 0.9617% |

* Subject to final adjustment based on payments actually received from the 468B Trust Settlers

-33-

## ATTACHMENT 2

## ENVIRONMENTAL CONSERVATION AND CHEMICAL CORPORATION SITE TRUST FUND

### CONTRIBUTION FORM

TO:  <u>Environmental Conservation and Chemical Corporation Site
Trust Fund Trustees</u>

    1.   The undersigned hereby contributes $_____ to the
Environmental Conservation and Chemical Corporation Site Trust
Fund.

    2.  For purposes of receiving any notices pursuant to Section
5.04 of the Trust Agreement, the address of the undersigned or its
authorized agent to receive said notices shall be as follows until
written notice to the contrary is delivered to the Trustees:

_____

_____

_____

    The undersigned does not hereby admit, accept, or intend to
acknowledge any liability or fault with respect to any matter
arising out of or relating to the Environmental Conservation and
Chemical Corporation Site.

_____
Company

_____
Signatory

_____
Title of Signatory

_____
Date

- 34 -