Hearing Date and Time: June 30, 2009 at 9:45 a.m. (ET)
Response Deadline:  June 19, 2009 at 5:00 p.m. (ET)

Gregory T. Casamento (GC 5273)
Sarah M. Chen (SC 7509)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue, 26th Floor
New York, New York  10022
Telephone: (212) 947-4700
Facsimile:  (212) 947-1202

Thomas A. Connop (Admitted *Pro Hac Vice*)
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| GENERAL MOTORS CORP., *et al.*, | Case No.: 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**TEXAS AUTOMOBILE DEALERS ASSOCIATION'S
MEMORANDUM OF LAW IN SUPPORT OF OBJECTION
OF THE STATE OF TEXAS TO DEBTORS' 363 SALE MOTION**

On June 12, 2009, the State of Texas, on Behalf of the Texas Department of Transportation, Motor Vehicle Division ("Texas"), filed a limited objection ("Texas' Objection" – Dkt. No. 712) to Debtors' "Motion to Approve 363 Sale."  (Dkt. No. 92.)[1]  The Texas

---

[1] The full title of the Motion to Approve 363 Sale is: "Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (i) Approve (a) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Other Relief; and (ii) Schedule Sale Approval Hearing."

1

Automobile Dealers Association ("TADA") files this Memorandum of Law in Support of Texas' Objections.

The TADA is a non-profit association that represents the interests of franchised motor vehicle and truck dealers in Texas. Approximately 94% of the franchised motor vehicle dealers in Texas are members of TADA. Among the many objectives and purposes of the TADA are to promote the best interests of franchised motor vehicle and truck dealers consistent with the public good and to support laws and policies that benefit association members, the automotive industry and the public.

The TADA concurs with and supports the State of Texas' objection that GM's Motion to Approve 363 Sale abrogates Texas laws governing the dealer-manufacturer relationship. GM is attempting to take advantage of its bankruptcy filing to force dealers to enter into agreements that violate Texas law. GM does this with the express threat that if a dealer does not "voluntarily" enter into GM's unilaterally imposed illegal agreements, the dealer will lose its franchise.

The TADA supports Texas' request that this Court should not sanctify agreements GM seeks to impose on its dealers that violate Texas law. This Court should affirm that Texas law governs the relationship between GM and its Texas dealers. Further, this Court should hold that any provision of GM's new agreements that purport to waive the terms of Chapter 2301 of the Texas Occupations Code is void and any provision that is inconsistent with Chapter 2301 of the Texas Occupations Code is unenforceable.

## PRELIMINARY STATEMENT

**A.    GM's Master Sale and Purchase Agreement Mandates the Imposition of Terms to its Dealer Agreements that Violate State Law.**

General Motors Corporation and certain of its subsidiaries (together, "GM" or "Debtors") filed a Motion to Approve 363 Sale. (Dkt. No. 92.) GM seeks Court approval of the sale of substantially all of its assets under Section 363 of the Bankruptcy Code pursuant to a proposed Master Sale and Purchase Agreement ("MPA"). Under the MPA, the assets to be transferred to the purchaser include contracts between Debtors and independent automobile dealers.

According to its Motion to Approve 363 Sale, GM intends to assume certain agreements with dealers that will remain in business, but only if those dealers agree to the terms of a "Participation Agreement" imposed by GM.[2] The MPA requires GM to use its reasonable best efforts to enter into a Participation Agreement that would modify the Debtors' Continuing Brand Dealer Agreements with certain dealers associated with Continuing Brands. MPA § 6.7(b). Each Continuing Brand Dealer Agreement, as modified by the Participation Agreement, would constitute an Assumable Executory Contract that would be transferred to the purchaser under the MPA. MPA § 2.2(a)(x); *see also* Motion to Approve 363 Sale at ¶ 19.

After distributing the Participation Agreements on June 1, 2009, GM received numerous questions, comments and complaints concerning those agreements. In response, GM issued a letter supplement to the Participation Agreement dated June 9, 2009 (the "June 9 letter"). *See* Exhibit C to Texas' Objection. In the June 9 letter, GM purports to clarify certain issues and to amend certain terms and conditions of the Participation Agreement. Even after these purported

---

[2] A copy of a Participation Agreement is attached to Texas' Objection as Exhibit B. Correspondence transmitting the Participation Agreement is attached to Texas' Objection as Exhibit A.

3

modifications, the Participation Agreement violates Texas law in numerous respects as shown below.

GM also intends to assume certain agreements with dealers whose franchises will be terminated, but only if those dealers agree to the terms of a Wind-Down Agreement imposed by GM.[3] The MPA requires GM to use its reasonable best efforts to enter into Deferred Termination Agreements[4] with (i) those dealers who were not offered the opportunity (or who were offered and declined) to enter into a Participation Agreement; and (ii) those dealers associated with Discontinued Brands. MPA § 6.7(a). Each Deferred Termination Agreement would constitute an Assumable Executory Contract under the MPA. MPA § 2.2(a)(x); *see also* Motion to Approve 363 Sale at ¶ 20.

Thus, under the MPA, which is the subject of GM's Motion to Approve 363 Sale, GM will assume and assign to a purchaser (the "363 Acquirer") some, but not all, of its existing dealer agreements. But, as to those dealer agreements GM says it will assume and assign, GM will require modifications that violate state and federal law. If a dealer refuses the unilaterally-imposed, illegal terms of the modified agreements, it faces rejection of its dealer agreement. Notwithstanding the violations of state and federal law, GM has offered no modification to the terms of the Wind-Down Agreement. The violations of Texas law imposed by the Wind-Down Agreement are set forth below.

**B.     GM is required to comply with Texas law.**

The Texas legislature has recognized that "[t]he distribution and sale of motor vehicles in [Texas] vitally affects the general economy of the state and the public interest and welfare of its

---

[3] Attached hereto as Exhibit A is a copy of a Wind-Down Agreement distributed by GM.

[4] TADA assumes that the MPA reference to "Deferred Termination Agreements" means the Wind-Down Agreements that GM distributed to its dealers.

4

citizens." Tex. Occ. Code Ann. § 2301.001 (Vernon 2004). Thus, as an exercise of the state's police power, Texas requires manufacturers, such as GM or the 363 Acquirer, to obtain a license in order to engage in business in Texas. Tex. Occ. Code Ann. §§ 2301.001, 2301.251(a)(1). GM's license is subject to each provision of Chapter 2301 and all rules issued by the Motor Vehicle Board of the Texas Department of Transportation (the "Board"). Tex. Occ. Code Ann. § 2301.263. To obtain a license to do business in Texas, a manufacturer, such as GM or the 363 Acquirer, also must certify that it will comply with Texas Occupations Code §§ 2301.401-2301.406 and 2301.451 – 2301.476. Tex. Occ. Code Ann. § 2301.259(c).

Notwithstanding its obligations under Texas law, GM seeks this Court's approval of Participation Agreements and Wind-Down Agreements that violate Texas law. As shown below, these agreements violate Texas law and are void and unenforceable. In accordance with federal law, this Court should not grant GM's Motion to Approve 363 Sale to the extent it contemplates the assumption or assignment of agreements that violate Texas law.

## ARGUMENT

**A.    The Method by which GM seeks to Modify its Dealer Agreement and the Terms of GM's Participation Agreement and Wind-Down Agreement Violates the Texas Occupations Code.**

**1.    The Terms of GM's Participation Agreement Violate Texas Law.**

For those dealers that will continue in business with GM, GM purports to impose new terms, stated in a "Participation Agreement," under threat of the loss of their dealerships, with no right of protest. Before addressing the specific terms GM seeks to impose and the provisions of the Texas Occupations Code those terms would violate, TADA first points out that the method by which GM seeks to modify the dealer agreements itself violates state law. Under Texas law, a manufacturer "may not modify or replace a franchise if the modification or replacement would adversely affect to a substantial degree the dealer's sales, investment, or obligations to provide

5

service to the public" unless it provides notice, with specific statements concerning a dealer's right to protest, 60 days before the date of the modification. Tex. Occ. Code Ann. § 2301.454(a) and (b) (Vernon 2004). Contrary to Texas law, GM sent the Participation Agreement on June 1, 2009, to selected dealers and imposed a June 12, 2009 deadline to execute the agreement. The modified agreement would be effective on the date a dealer executed and delivered the Participation Agreement to GM. The notice GM provided did not comply with Texas law and GM has deprived dealers of their statutory rights to protest the modification to the Motor Vehicle Board. *See* Tex. Occ. Code Ann. § 2301.454(b)(2) and (c). Finally, if a protest is filed, the Texas Motor Vehicle Board is vested with the exclusive authority to "determine whether the manufacturer . . . has established by a preponderance of the evidence that there is good cause for the proposed modification . . . " Tex. Occ. Code § 2301.454(d). GM's Participation Agreement purports to divest the Motor Vehicle's Board of its exclusive authority regarding modifications.

Not only does GM's method of modification violate Texas law, the substantive terms of the Participation Agreement violate the sections of the Texas Occupations Code identified below:

| **Contract Modification Imposed by GM in the Participation Agreement, as modified by the June 9 letter:** | **Relevant Section of Texas Occupations Code Violated by GM's Proposed Terms:** |
|---|---|
| ¶ 2. <u>Sales Performance</u>. As originally worded, the Participation Agreement provided that the 363 Acquirer will impose as yet undefined sales quotas that a dealer "must meet." As modified by the June 9 letter, GM provides that in the first quarter of 2010, GM will convene a "GM Reinvention Business Plan" meeting, at which GM and the dealer "will agree" upon "appropriate sales targets". | § 2301.467(1): "Notwithstanding the terms of any franchise, a manufacturer … may not … require adherence to unreasonable sales or service standards." |

6

| **Contract Modification Imposed by GM in the Participation Agreement, as modified by the June 9 letter:** | **Relevant Section of Texas Occupations Code Violated by GM's Proposed Terms:** |
|---|---|
| ¶ 3. <u>New Vehicle Inventory</u>. The Participation Agreement provides that the 363 Acquirer will impose new inventory requirements and dealers "shall, upon written request from the 363 Acquirer, order and accept from the 363 Acquirer additional new Motor Vehicles … " The June 9 letter purports to explain and soften this requirement; however, it remains unchanged, as the dealer must meet GM's sales expectations. | § 2301.451: "A manufacturer … may not require or attempt to require a franchised dealer to order, accept delivery of, or pay anything of value, directly or indirectly, for a motor vehicle … unless the dealer voluntarily ordered or contracted for the item." <br><br> § 2301.467(1): "Notwithstanding the terms of any franchise, a manufacturer, distributor, or representative may not: (1) require adherence to unreasonable sales or service standards;…". |
| ¶ 4. <u>Exclusivity</u>. The Participation Agreement originally provided that for the remaining term of a dealer's franchise, the dealer would be prohibited from operating a non-GM dealership on the Dealership Premises. The June 9 letter modifies the foregoing by now requiring the dealer to cease all "non-GM Dealership Operations" in the "GM Showroom" [an undefined term] by December 31, 2009, and meet before December 31, 2009 to "mutually agree" to what extent non-GM operations shall be permitted on the Dealership Premises at all. | § 2301.472(a): "Notwithstanding the terms of any franchise, a manufacturer … may not deny or withhold approval of a franchised dealer's application to add a line-make …" |
| ¶ 5. <u>No Protest</u>. The Participation Agreement provided that a Dealer would be prohibited from protesting the relocation or establishment of another dealership of an Existing Model Line unless the new dealership is within 6 miles from the dealer's Dealership Premises. Pursuant to the June 9 letter, a dealer purportedly now may protest GM's <u>increase</u> in the "number of dealerships for the Existing Model Line(s) in the Dealer's contractual area of responsibility" from the number located in that area as of the date of the June 9 letter. (Emphasis added.) | § 2301.652(b): Franchised dealers have the right (subject to Section 2301.652(c)) to protest the relocation or establishment of a dealership of the same line-make if the proposed dealership is in the same county, or within 15 miles of the existing dealership. |
| ¶ 9(h). <u>Jurisdiction</u>. The June 9 letter makes no substantive modification to this term of the Participation Agreement, which provides that | § 2301.151: "The [Motor Vehicle Board of the Texas Department of Transportation] has the exclusive original jurisdiction to regulate those |

7

| **Contract Modification Imposed by GM in the Participation Agreement, as modified by the June 9 letter:** | **Relevant Section of Texas Occupations Code Violated by GM's Proposed Terms:** |
|---|---|
| dealer "hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this letter agreement." | aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction." |

## 2. The Terms of GM's Wind-Down Agreement Violate Texas Law.

For a dealer GM has determined it will not continue to do business with, GM similarly purports to impose new terms, stated in a "Wind-Down Agreement," under threat of the loss of its dealership, with no right of protest. As with the Participation Agreement, GM's imposition of the Wind-Down Agreement is itself a violation of state law. The substantive terms of the Wind-Down Agreement also violate the Texas Occupations Code:

| **Contract Modification Imposed by GM in the Wind-Down Agreement:** | **Relevant Section of Texas Occupations Code Violated by GM's Proposed Terms:** |
|---|---|
| ¶ 2. <u>Termination of Dealer Agreement</u>. Under the Wind-Down Agreement, GM imposes termination of the dealer's franchise no earlier than January 1, 2010 and no later than October 31, 2010. Except that termination may occur after 12/31/09, and prior to 10/31/10, on 30 days written notice. If the dealer has sold all new vehicle inventory prior to 12/31/09, then the dealer may request termination. | § 2301.453: The Texas Occupations Code provides that notwithstanding the terms of any franchise, a manufacturer may not "directly or indirectly force or attempt to force a franchised dealer" to terminate or discontinue its franchise except in accordance with specified notice and with the right to protest. |
| ¶ 4. <u>Complete Waiver of All Termination Assistance Rights</u>. GM purports to absolve itself of any requirement to repurchase any motor vehicles, parts or special tools, or signage. | § 2301.465(b)(1) - (5): "Notwithstanding the terms of a franchise, after the termination of a franchise, a manufacturer … shall pay to a franchised dealer … the following amounts …" – followed by provisions requiring repurchase of new motor vehicle inventory of the current or prior model year, with less than 6,000 miles, parts, signs, and special tools. |

8

| **Contract Modification Imposed by GM in the Wind-Down Agreement:** | **Relevant Section of Texas Occupations Code Violated by GM's Proposed Terms:** |
|---|---|
| ¶ 5. <u>Release; Covenant Not to Sue; Indemnity</u>. GM requires a dealer to release all claims "of every kind and nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreements)" which dealer may have as of the date of the execution of the Wind-Down Agreement. | § 2301.003(a) and (b): The terms and conditions of a franchise are subject to this chapter and "[a]n agreement to waive the terms of this chapter is void and unenforceable. A term or condition of a franchise inconsistent with this chapter is unenforceable." |
| ¶ 6(a). <u>Subject Dealership Operations</u>. A dealer is prohibited from purchasing any motor vehicles from GM or the 363 Acquirer. | § 2301.452(a): "A manufacturer … shall deliver in a reasonable quantity and within a reasonable time to a franchised dealer who holds a franchise for a motor vehicle sold or distributed by the manufacturer … any new motor vehicle or part or accessory for a new motor vehicle as covered by the franchise …" |
| ¶ 6(c). <u>Subject Dealership Operations</u>. "Dealer shall not, and shall have no right to, propose to GM or the 363 Acquirer, as applicable … or consummate a change in Dealer Operator, a change in ownership, or … a transfer of the dealership business …". | § 2301.458: Except as provided in Sections 2301.359 or 2301.360, a manufacturer may not "fail to give effect to or attempt to prevent the sale or transfer of" a dealer, dealership or franchise.<br><br>§ 2301.359(e): "A manufacturer … may not unreasonably withhold approval of an application filed [to sell or otherwise transfer a franchise]." |
| ¶ 7. <u>No Protest</u>. GM requires a dealer to waive any right to protest "any establishment or relocation whatsoever of motor vehicle dealerships for any of the Existing Model Lines." | § 2301.652(b): Franchised dealers have the right (subject to Section 2301.652(c)) to protest the relocation or establishment of a dealership of the same line-make if the proposed dealership is in the same county, or within 15 miles of the existing dealership. |
| ¶ 13. <u>Continuing Jurisdiction</u>. "By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto." | § 2301.151: "The [Motor Vehicle Board of the Texas Department of Transportation] has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction." |

9

| **Contract Modification Imposed by GM in the Wind-Down Agreement:** | **Relevant Section of Texas Occupations Code Violated by GM's Proposed Terms:** |
|---|---|
|  | § 2301.478(a): "Notwithstanding the terms of any franchise or any other law, an action or proceeding brought by a manufacturer … against a dealer must be brought in an appropriate forum in this state only, and the law of this state applies to the action or proceeding." |
| ¶ 15. <u>Governing Law</u>. "This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan." | § 2301.478(a): ". . . [T]he law of this state applies to the action or proceeding." |

### B.     Federal Law Requires GM to Comply with Texas Law.

GM seeks unilaterally to impose new terms in its franchise agreements with its dealers. The new terms are contrary to and inconsistent with provisions of Texas law that are designed, in part, to recognize the interests of automobile dealers within the state. The imposition of such terms violates federal law, which requires debtors-in-possession, like GM, to comply with all applicable state law: "… a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State in which such property is situated*, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959 (emphasis added).

As Section 959 makes clear, "[t]he purpose of bankruptcy is not to permit debtors or nondebtors to wrest competitive advantage by exempting themselves from the myriad of laws that regulate business. Bankruptcy does not grant the debtor a license to eliminate the marginal cost generated by compliance with valid state laws that constrain nonbankrupt competitors." *In re White Crane Trading Co.*, 170 B.R. 694, 702 (Bankr. E.D. Cal. 1994). Thus, a debtor-in-possession may not use bankruptcy as a ruse to "circumvent" applicable state law. *Id*. at 698. As this court put it,

10

> The goals of the federal bankruptcy laws, the rehabilitation of the debtor and the maximization of the estate for the benefit of creditors, 'do not authorize transgression of state laws setting requirements for the operation of the business even if the continued operation of the business would be thwarted by applying state law.'

*In re Friarton Estates Corp.*, 65 B.R. 586, 590 (Bankr. S.D.N.Y. 1986) (quoting *In re Quanta Res. Corp.*, 739 F.2d 912, 919 (3d Cir. 1984), *aff'd sub nom*, *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494 (1986)).

Contrary to the premise of GM's Participation and Wind-Down Agreements, "[b]ankruptcy does not grant a debtor greater rights than those it would receive outside of bankruptcy." *In re Synergy Dev. Corp.*, 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992). A debtor, like GM, may not use its bankruptcy filing "as a sword to stop the State from enforcing its police or regulatory powers." *Id.* Rather, a debtor must comply with valid state laws. *Id.*[5]

Granting GM's Motion to Approve 363 Sale necessarily would sanction the illegal agreements that GM seeks to force its dealers to sign. Bankruptcy courts, however, have no authority to sanctify a debtor's violation of state laws. For example, in *Gillis v. California*, 293 U.S. 62, 64-65 (1934), a receiver for an oil company sought court authority to continue doing business without complying with state bonding and licensing requirements. Citing the predecessor of 28 U.S.C. § 959, the Supreme Court held that the bankruptcy court was powerless to authorize non-compliance with the state licensing requirements, regardless whether it would require the receiver to cease operations the receiver argued were essential to the conservation of assets and the general purposes of the receivership. *Id.* at 65-66; *see also In re Lauriat's, Inc.*, 219 B.R. 648, 649 (Bankr. D. Mass. 1998) (bankruptcy court lacked authority to exempt debtors

---

[5] Although section 365 of the Bankruptcy Code permits a debtor like GM to reject executory contracts, the provision relieves debtors of only *private* contractual obligations; it does not relieve a debtor from complying with state law regulating the conduct of its business or relieve a debtor of public obligations imposed by law. *Saravia v. 1736 18th St., N.W., Ltd. P'ship.*, 844 F.2d 823, 825 (D.C. Cir. 1988).

11

from state law requirements regarding closing-out sales regardless whether such exemption would permit debtors to maximize recovery for the estate); *In re Dolly Madison Indus., Inc.*, 504 F.2d 499, 503-04 (3d Cir. 1974) (holding bankruptcy court had no jurisdiction to order reinstatement of debtor's certificate of authority to do business in violation of state law).

GM's Participation and Wind-Down Agreements plainly violate state law. GM seeks this Court's approval of its violations of federal law by seeking approval of its 363 Sale in which those agreements would be assumed and assigned to the 363 Acquirer.

## CONCLUSION

For the reasons stated herein, TADA requests that the Court sustain the State of Texas' Objection to GM's Motion to Approve 363 Sale.

Date:  June 19, 2009.

Respectfully submitted

/s/ Sarah M. Chen _____
Gregory T. Casamento (GC 5273)
Sarah M. Chen (SC 7509)
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue, 26th Floor
New York, New York  10022
Telephone: (212) 947-4700
Facsimile:  (212) 947-1202

Thomas A. Connop (Admitted *Pro Hac Vice*)
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800