Hearing Date and Time: June 25, 2009 at 9:45 a.m.
Objections Due: June 19, 2009 at 4:00 p.m.

Benjamin P. Deutsch (BD-5435)
SCHNADER HARRISON SEGAL & LEWIS LLP
Counsel to the Ad Hoc Committee of Consumer Victims of General Motors
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone: (212) 973-8000
Fax: (212) 972-8798
BDeutsch@Schnader.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
In re:                                                            :    Chapter 11
                                                                  :
GENERAL MOTORS CORP., *et al.*,                                   :    Case No. 09-50026 (REG)
                                                                  :
                              Debtors.                            :    (Jointly Administered)
------------------------------------------------------------------X

**OBJECTION OF AD HOC COMMITTEE OF CONSUMER VICTIMS OF GENERAL MOTORS TO THE APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS**

The Ad Hoc Committee of Consumer Victims of General Motors (the "Ad Hoc Consumer Committee"), by and through its undersigned counsel, hereby objects to the Debtors' Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. ("Evercore") as Investment Banker and Financial Advisor For the Debtors *Nunc Pro Tunc* to the Petition Date (the "Application"). In support thereof, the Ad Hoc Consumer Committee respectfully represents as follows:

PHDATA 3203881_1

## BACKGROUND

1.   On June 1, 2009 (the "Petition Date"), General Motors Corp. and certain of its affiliates ("GM" or the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.   GM is one of the "Big Three" U.S. automakers. Each year it sells millions of vehicles to American consumers, some of whom unfortunately suffer injuries, sometimes catastrophic, as a result of manufacturing defects and other legally culpable conduct on the part of the Debtors.

3.   The Ad Hoc Consumer Committee was formed to advance the mutual interests of its members and others similarly with regard to the financial reorganization of GM.

4.   The Ad Hoc Consumer Committee has more than 300 members who each have product liability tort claims involving personal injuries (including derivative claims and wrongful death actions) against GM. The members of Ad Hoc Consumer Committee are individuals who reside throughout the country.

5.   The Debtors have filed a motion seeking approval of the sale of substantially all of GM's core operating assets to a purchaser sponsored by the United States Treasury ("New GM") free and clear of all products liability and other personal injury claims arising, past and future, from vehicles sold by GM prior to the closing of the sale.

## **OBJECTION**

6. The employment of Evercore under the terms set forth in the GM Engagement Letter[1] is not in the best interest of the Debtors' estates.

7. In considering the retention of a financial advisor under Section 328 of the Bankruptcy Code, "the court reviews the terms and conditions of compensation to see if they are reasonable from a prospective viewpoint." *In re XO Communications, Inc.*, 398 B.R. 106, 112 (Bankr. S.D.N.Y. 2008).

8. "However, in a prepackaged bankruptcy case, much of the restructuring effort occurs prior to filing" and "by the time of the retention hearing, there are few unknown facts remaining concerning the financial advisor's contribution to the transaction." *Id*. "Therefore, as more of the relevant facts, including the outcome of certain efforts become known prior to the section 328 hearing – and less needs to be viewed prospectively, the section 328 analysis as to whether the terms and conditions of compensation are reasonable merges into the section 330 analytical structure concerning reasonableness." *Id*. at 114. "[A]t the time of the analysis, the Court examines the reasonableness of the services as those services were performed and their impact on the outcome in attempting to achieve the desired goal." *Id*.

9. The fees sought by Evercore are staggering.

10. Evercore was paid $30,627,252 by the Debtors before the Petition Date which amounts have been applied by Evercore to pre-petition services rendered. (Repko Declaration ¶

---

[1] The "GM Engagement Letter" means the engagement letter referred to in paragraph 7 of the Application. Unless otherwise defined herein, any other capitalized terms utilized in this Objection have the same meaning ascribed to them in the GM Engagement Letter.

PHDATA 3203881_1


29). The Debtors have not identified any of the specific pre-petition services rendered by Evercore.

11. If Evercore's retention is approved on the terms proposed by the Debtors, Evercore would receive extremely lucrative additional compensation:

(a) <u>Monthly Fees</u> - - Evercore would receive a monthly fee of $400,000 per month, payable in advance, for a period of 24 months commencing June 1, 2009, totaling $9.6 Million;

(b) <u>Fairness Opinion Fee</u> - - The GM Engagement Letter provides for Evercore to be paid a Fairness Opinion Fee of $6 Million;

(c) <u>DIP Structuring Fee</u> - - Under the GM Engagement Letter, Evercore would receive a $2.5 million fee for assisting the Debtors with its DIP financing;

(d) <u>Delphi Fee</u> - - Evercore would receive a $2 Million fee for advisory services related to Delphi Corporation;

(e) <u>Transaction Fee</u> - - If the New GM transaction is consummated, Evercore would be paid a Transaction Fee of $30 Million, less certain credits;

(f) <u>Sale Fee</u> -- If any sale (broadly defined) other than the NewCo Transaction is consummated, Evercore would receive a Sale Fee based upon a percentage of the Aggregate Consideration for the transaction, which amount would be determined by GM and Evercore, not the Court; and

(g) <u>Restructuring Fee</u> -- Evercore would be paid a $30 million Restructuring Fee upon consummation of a "restructuring, reorganization and/or recapitalization" of GM, against which certain credits would be applied.

12. Further, under the GM Retention Letter, Evercore is entitled to be reimbursed for all of the fees and expenses of its legal counsel.

13. The compensation sought by Evercore is disproportionate to any benefit that has been or could be conferred on the Debtors' estates by Evercore's services.

14. Evercore should not receive a success bonus of any sort arising from the completion of the proposed "sale" to the New GM.

15. The terms of the "sale" transaction were largely dictated by the United States Treasury in its role as TARP lender, DIP lender and majority owner of New GM. As a result, it is clear that Evercore neither procured the "buyer" nor had any material impact on the terms of the transaction, which were agreed to pre-petition. It should not receive a success bonus for a transaction that was driven by the United States Treasury and which would have been proposed with or without Evercore's involvement.

16. Moreover, GM has not explained why the in excess of $30 million already received by Evercore is not adequate compensation for the services it rendered to GM pre-petition in connection with the proposed "sale" to New GM.

17. Similarly, since the Debtors contend that funding from the United States Treasury is the only DIP financing available to GM, Evercore should not receive a separate fee for facilitating the Debtors' DIP loan.

18. Under the circumstances of this case, it is unconscionable for GM -- with the blessing of the United States Treasury -- to seek payment to Evercore of millions of dollars of exorbitant and unnecessary fees and bonuses where, in contrast, the claims of consumers who have suffered, or will in the future suffer, life-altering injures as a result of flaws in GM vehicles be left behind in old GM.

19. In addition, GM has agreed to indemnify Evercore (and its members, partners, officers, directors, advisors, representatives, employees agents, affiliates or controlling persons) for liability arising from Evercore's negligence in providing services to the Debtors and their estates. Consumers injured by defects in GM vehicles and GM's other unsecured creditors should not bear the ultimate burden of any harm done to the Debtors' estates by Evercore.

20. The proposed order provides that only the U.S. Trustee shall retain the right to object to Evercore's interim and final fee applications, depriving all other parties in interest, including the members of the Ad Hoc Committee, their due process rights and an opportunity to be heard.

WHEREFORE, the Ad Hoc Committee of Consumer Victims of General Motors respectfully requests that the Application be denied.

|  |  |
|---|---|
| | SCHNADER HARRISON SEGAL<br>& LEWIS LLP |
| Dated: June 17, 2009 | By: /s/ Benjamin P. Deutsch<br>Benjamin P. Deutsch (BD-5435)<br>bdeutsch@schnader.com<br>140 Broadway, Suite 3100<br>New York, NY 10005-1101<br>Phone: (212) 973-8000<br>Fax: (212) 972-8798<br><br>- and -<br><br>Barry E. Bressler, Esquire<br>bbressler@schnader.com<br>Richard A. Barkasy, Esquire<br>rbarkasy@schnader.com<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Phone: (215) 751-2000<br>Fax: (215) 751-2205<br><br>*Attorneys for the Ad Hoc Committee of<br>Consumer Victims of General Motors* |