**Hearing Date:  June 25, 2009, at 9:45 a.m. (Eastern Time)**
**Objection Deadline: June 19, 2009, at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
**In re**                                 :     Chapter 11 Case No.
:
**GENERAL MOTORS CORP.,** *et al.*,       :     09-50026 (REG)
:
Debtors.                  :     (Jointly Administered)
:
-------------------------------------------------------------x

**DEBTORS' OMNIBUS OBJECTIONS TO THE
MOTIONS OF THE (I) AD HOC COMMITTEE OF
CONSUMER VICTIMS AND (II) AD HOC COMMITTEE
OF ASBESTOS CLAIMANTS SEEKING THE APPOINTMENT
OF ADDITIONAL COMMITTEES OF UNSECURED CREDITORS
<u>AND THE APPOINTMENT OF A FUTURE CLAIMANTS' REPRESENTATIVE</u>**

WGM_TRAILER

## TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................... ii
The Motions To Appoint Additional and Separate Committees and an FCR Should Be Denied ........................................................................................................................ 1
Background ........................................................................................................................ 4
The Interests of the Debtors' Unsecured Tort and Asbestos Claimants Are Adequately Represented By The Official Committee ........................................................................ 5
Appointment Of A Future Claimants' Representative Is Not Necessary ......................... 12
Conclusion ........................................................................................................................ 13

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Albero v. S.E.C. (In re Johns-Manville Corp.)*, 68 B.R. 155 (Bankr. S.D.N.Y. 1986),
   *appeal dismissed sub nom. Dubin v. SEC (In re Johns-Manville Corp.)*, 824 F.2d 176
   (2d Cir. 1987)..................................................................................................................5

*In re Barney's, Inc.*, 197 B.R. 431 (Bankr. S.D.N.Y. 1996)........................................................11

*In re Chrysler, LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), *aff'd*, *In re Chrysler, LLC*,
Case No. 09-2311-bk (2d Cir. June 5, 2009) ...............................................................3, 13

*In re Dana Corp.*, 344 B.R. 35 (Bankr. S.D.N.Y. 2006) .......................................5, 6, 7, 8, 9, 13

*In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other
grounds*, 212 B.R. 258 (E.D. Mich. 1997).......................................................5, 9, 10, 11

*Dubin v. SEC (In re Johns-Manville Corp.)*, 824 F.2d 176 (2d Cir. 1987) ....................................8

*In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002), *aff'd sub nom. Mirant Ams.
   Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, 2003
   U.S. Dist. LEXIS 18149 (S.D.N.Y., Oct. 9, 2003) ................................................... 5, 7, 8

*In re Hills Stores*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) .................................................................7

*In re Kalvar Microfilm, Inc.*, 195 B.R. 599 (Bankr. D. Del. 1996) ..........................................5, 6

*Locks v. United States Trustee*, 157 B.R. 89 (W.D. Pa. 1993) .....................................................13

*In re McLean Indus., Inc.*, 70 B.R. 852 (Bankr. S.D.N.Y. 1987) .........................................5, 6, 10

*In re Sharon Steel Corp.*, 100 B.R. 767 (Bankr. W.D. Pa. 1989) ................................................10

## FEDERAL STATUTES

11 U.S.C. § 503(b)(5) ......................................................................................................................5
11 U.S.C. § 524(g) ...........................................................................................................2, 3, 12, 13
11 U.S.C. § 1102(a)(1)...................................................................................................................11
11 U.S.C. § 1102(a)(2).................................................................................................................1, 5
11 U.S.C. § 1102(b) .......................................................................................................................10
11 U.S.C. § 1109..............................................................................................................................8
11 U.S.C. § 1141(a)(3).....................................................................................................................3

**DEBTORS' OMNIBUS OBJECTIONS TO THE
MOTIONS OF THE (I) AD HOC COMMITTEE OF
CONSUMER VICTIMS AND (II) AD HOC COMMITTEE
OF ASBESTOS CLAIMANTS SEEKING THE APPOINTMENT
OF ADDITIONAL COMMITTEES OF UNSECURED CREDITORS
AND THE APPOINTMENT OF A FUTURE CLAIMANTS' REPRESENTATIVE**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("**GM**") and its affiliated debtors (collectively, the "**Debtors**"), in opposition to the motions filed by (i) a group of tort claimants acting as the Ad Hoc Committee of Consumer Victims of General Motors (the "**Ad Hoc Tort Claimants**") pursuant to section 1102(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**"), requesting the appointment of an additional committee of tort claimants dated June 2, 2009 (the "**Tort Claimants' Motion**") [Docket No. 287]; and (ii) a group of asbestos personal injury claimants acting as the Ad Hoc Committee of Asbestos Personal Injury Claimants (the "**Ad Hoc Asbestos Claimants**," and together with the Ad Hoc Tort Claimants, the "**Movants**") pursuant to section 1102(a)(2) of the Bankruptcy Code, requesting (a) the appointment of an additional committee of asbestos claimants, and (b) the appointment of a future asbestos claimants' representative (the "**FCR**") dated June 7, 2009 (the "**Asbestos Claimants' Motion**") [Docket No. 478], respectfully represent:

**The Motions to Appoint Additional and
Separate Committees and an FCR Should Be Denied**

1.    On June 3, 2009, two days after the commencement of the instant chapter 11 cases, the United States Trustee (the "**U.S. Trustee**") appointed a committee of fifteen unsecured creditors (the "**Official Committee**") for these jointly administered chapter 11 cases. Two tort claimants and one asbestos personal injury claimant were appointed to the Official Committee. Nevertheless, both the Ad Hoc Tort Claimants and the Ad Hoc Asbestos Claimants request the

formation of additional and separate committees to represent solely their claimed respective interests.

2. Prior to the organizational meeting of general unsecured claimants convened by the U.S. Trustee and the appointment of the Official Committee, and perhaps without knowing that two tort claimants would be appointed to the Official Committee, the Ad Hoc Tort Claimants filed the Tort Claimants' Motion, which requested a separate committee of unsecured tort claimants to "protect the interests of persons holding personal injury, asbestos, and environmental tort claims against the Debtors." Tort Claimants' Motion ¶ 12. Relying solely on the fact that these chapter 11 cases are large in size, the Ad Hoc Tort Claimants posit that an additional committee is needed so that "tort claimants [are] not left alone, unprotected and effectively disenfranchised." *Id.* ¶ 24. The request of the Ad Hoc Tort Claimants is without merit.

3. The Ad Hoc Asbestos Claimants, knowing that the Official Committee included an asbestos claimant (*see* Asbestos Claimants' Motion ¶ 13), filed the Asbestos Claimants' Motion, which requested the formation of an additional and separate committee of unsecured asbestos claimants to represent asbestos claimants –both present and future. *Id.* ¶¶ 7, 14. The Ad Hoc Asbestos Claimants' request is premised entirely on the application of section 524(g) of the Bankruptcy Code to these cases. As such, the request is fatally defective. By its terms, section 524(g) is only applicable if the Debtors were to propose and confirm a plan of reorganization that would enjoin and discharge asbestos-related claims and channel such claims to an established fund. As publicly announced, subject to approval of the Debtors' pending motion to sell substantially all of its assets, pursuant to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to

Approve The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free and Clear Of Liens, Claims, Encumbrances, and Other Interests; And Any Other Relief, dated June 1, 2009, the Debtors do not currently intend to confirm a plan of reorganization or propose any channeling order.  Contrary to the argument of the Ad Hoc Asbestos Claimants, section 524(g) of the Bankruptcy Code does not apply to sales under section 363 of the Bankruptcy Code, as recently decided by Bankruptcy Judge Gonzalez in similar circumstances in the chapter 11 cases of Chrysler, LLC, *In re Chrysler, LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), *aff'd*, *In re Chrysler, LLC*, Case No. 09-2311-bk (2d Cir. June 5, 2009).  Further, pursuant to section 1141(a)(3), the Debtors will not receive a discharge.  Patently, these case are not asbestos-driven.  They were not commenced as a result of asbestos claims.  Such claims, even if allowable, represent a small percentage of the total liabilities of the Debtors.  The appointment of additional and separate committees of unsecured tort and asbestos claimants and the appointment – at this time - of a legal representative for potential future asbestos claimants is not warranted or in the best interests of these cases.  The Movants are adequately represented by the Official Committee.

4.    The Official Committee, which includes tort and asbestos claimants, adequately represents the interests of all unsecured creditors of the Debtors.  The Movants have failed to provide *any* evidence that their interests are not adequately represented by the Official Committee.

5.    The Tort Claimants' Motion and the Asbestos Claimants' Motion should both be denied.

**Background**

6.      On June 1, 2009, GM, a worldwide leader in products and services related to the development, manufacture, and marketing of cars and trucks, filed for chapter 11 with the clear intent to preserve its going concern value for the benefit of all of its creditors.  To achieve this purpose, GM entered into a transaction with its largest secured creditor, the United States Department of the Treasury (the "**U.S. Treasury**"), to sell substantially all of its assets to Vehicle Acquisition Holdings LLC, an entity sponsored by the U.S. Treasury (the "**363 Transaction**").

7.      The fifteen members appointed to the Official Committee on June 3, 2009 by the U.S. Trustee are:

| Committee Member | Affiliation with General Motors |
|---|---|
| 1. Pension Benefit Guaranty Corporation (PBGC) | Guarantor of pension benefit plans |
| 2. Wilmington Trust Company | Indenture Trustee for bondholders |
| 3. Law Debenture Trust Co. of New York | Indenture Trustee for bondholders |
| 4. The Industrial Division of Communications Workers of America, AFL-CIO | Collective bargaining representative |
| 5. International Union UAW | Collective bargaining representative |
| 6. United Steelworkers | Collective bargaining representative |
| 7. Interpublic Group | Trade service creditor |
| 8. Denso International America, Inc. | Supplier creditor |
| 9. Inteva Products, LLC | Supplier creditor |
| 10. Serra Chevrolet of Birmingham, Inc. | Dealer |
| 11. Paddock Chevrolet | Dealer |
| 12. Saturn of Hempstead, Inc | Dealer |
| 13. Mark Buttita | Asbestos claimant |
| 14. Genoveva Bermudez c/o Cohen & Associates | Tort claimant |
| 15. Kevin Schoenl | Tort claimant |

## The Interests of the Debtors' Unsecured Tort and Asbestos Claimants
## Are Adequately Represented by the Official Committee

8.  The appointment of an additional committee under section 1102(a)(2) is considered an "extraordinary remedy." *See In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002), *aff'd sub nom. Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y., Oct. 9, 2003); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006). In requesting an additional committee, the applicant has the burden of proving that the appointment of an additional committee is necessary to insure "adequate representation" of the moving party. *See Enron*, 279 B.R. at 685; *In re Dow Corning Corp.*, 194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997). The Movants have not met their burden of establishing lack of adequate representation of their creditor constituencies.

9.  The determinative factors in determining the adequacy of representation by a statutory committee of unsecured creditors are:

> (a) The ability of the committee to function;
> (b) The nature of the case;
> (c) The standing and desires of the various constituencies;
> (d) The ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503(b)5;
> (e) The delay and additional cost that would result if the court grants the motion;
> (f) The tasks that a committee or separate committee is to perform; and
> (g) Other factors relevant to the adequate representation issue.

*Enron*, 279 B.R. at 684; *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996); *In re McLean Indus., Inc.*, 70 B.R. 852, 860 (Bankr. S.D.N.Y. 1987); *Albero v. S.E.C. (In re Johns-Manville Corp.)*, 68 B.R. 155, 159 (Bankr. S.D.N.Y. 1986), *appeal dismissed sub nom.*

*Dubin v. SEC (In re Johns-Manville Corp.)*, 824 F.2d 176 (2d Cir. 1987).  No one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case.  *See Dana*, 344 B.R. at 38; *Kalvar Microfilm*, 195 B.R. at 601.

       10.  These factors were recently reiterated in the *Dana* case, where the court denied the motion of an ad hoc committee of personal injury claimants, represented by the same law firm that represents the Ad Hoc Asbestos Claimants (i.e., Stutzman, Bromberg, Esserman & Plifka, P.C. ("**Stutzman**")), for the appointment of an official committee of asbestos claimants.  *Id.* at 38.  Given that the *Dana* decision is a recent, well-reasoned decision in this District with facts somewhat similar to the instant cases, it is surprising that none of the Movants cited this decision in their respective Motions.

       *(a) Ability of the Committee to Function*

       11.  A statutory committee has a fiduciary duty to protect the interests of all unsecured creditors, including all tort and asbestos claimants, as pointed out in *Dana.*  344 B.R. at 38.  In *Dana*, the Court rejected the argument made by the moving party that because it had only one representative on the *Dana* committee, the other members of that committee would be dominant and overpower its representative.  *Id.*  The *Dana* court noted that the different interests of the membership of a statutory committee need not be aligned and that the presence of potential conflicts among the different interests of committee members does not necessitate the appointment of additional creditors' committees to provide adequate representation.  *Id.*; *see also McLean Indus.*, 70 B.R. at 861.  The issue is whether the Official Committee is representative of the different kinds of unsecured creditor claims involved in the chapter 11 cases.  Therefore, the membership of a statutory committee need not be an exact replica of the creditor body.  *See*

*Dana*, 344 B.R. at 39; *Enron*, 279 B.R. at 690; *In re Hills Stores*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992).

12. Both Movants make the same argument that was rejected in *Dana* and the other decisions noted above –that the Official Committee will fail to adequately represent each of their creditor constituents, because their interests are outnumbered and they are somehow different from other creditors. Contrary to the Movants' assertions, however, they are adequately represented as members of the Official Committee. Tort claimants have two seats on the Official Committee, and asbestos claimants have one. The Movants have not cited a single instance where the ability of the Official Committee to function has been impaired, and no such complaints have been made. *See Dana*, 344 B.R. at 39. The Official Committee has been very active. It has interacted with the Debtors as to all aspects of creditor interests, including tort and asbestos claims. This Official Committee is functioning as Congress intended.

*(b) Nature of the Case*

13. The Movants' assertion that the large size of these chapter 11 cases warrant the appointment of additional unsecured committees is simply wrong. The Debtors' cases are not asbestos-driven. These cases were motivated by the need to sell substantially all of the Debtors' assets in an extremely short period of time to minimize, as much as possible, the revenue perishibility and value erosion that might otherwise occur to maximize value and benefit all of its economic stakeholders. These unique circumstances mandate particular sensitivity to events that might cause an unnecessary delay to the 363 Transaction, which, ultimately, will affect *all* parties in interest. A similar argument was rejected in *Dana* and, likewise, should be rejected in these chapter 11 cases. *Dana*, 344 B.R. at 39. Absent a strong showing that the Movants'

creditor constituencies are not adequately represented by the Official Committee, the Motions must fail.

*(c) The Standing and Desires of the Constituencies*

14. The Movants' argument that their interests are completely different than those of the other members of the Official Committee is not accurate or decisive. While claims represented by a creditors' committee may be different, the objective of a creditors' committee is universal, i.e., maximization of creditor recoveries. The Movants fail to show how their interests are different from those of other general unsecured claimants. *Dana*, 344 B.R. at 39.

*(d) Ability to Continue Participating and Recover Costs*

15. The Movants are represented by sophisticated, competent counsel. Their voices will likely be heard in these cases. *See* 11 U.S.C. § 1109(b); *Dubin v. SEC (In re Johns-Manville Corp.)*, 824 F.2d 176, 179-81 (2d Cir. 1987); *Dana* 344 B.R. at 40; *Enron*, 279 B.R. at 693.

16. Notably, the attorneys for the Ad Hoc Tort Claimants did not need appointment of a separate official committee to actively participate in the chapter 11 cases in *In re Chrysler, LLC,* Ch. 11 Case No. 09-50002 (AJG) ("**Chrysler**"). Schnader Harrison Segal & Lewis represented an ad hoc committee of tort claimants, called the "Ad Hoc Committee of Chrysler Victims," and played a very active role in the Chrysler chapter 11 cases, notwithstanding the lack of statutory committee status.

17. Attorneys for the Ad Hoc Asbestos Claimants in these chapter 11 cases – Stutzman— likewise played a very active role in Chrysler's chapter 11 cases without the necessity of the appointment of a statutory committee. Indeed, the client represented by Stutzman was an individual member of Chrysler's statutory creditors' committee, Ms. Patricia Pascale.

18.  The Movants' requests, reduced to their essentials, are nothing more than an attempt to impose the costs of their respective professionals on the Debtors and other economic stakeholders.  That objective does not constitute a basis or justification for the appointment of additional and separate committees of unsecured tort and asbestos claimants.

*(e)  Additional Cost to the Debtors Is Not Justified*

19.  The costs of additional committees can be "substantial since the appointment [] is closely followed by applications to retain attorneys and accountants." *Dow Corning*, 194 B.R. at 143.  The additional costs to be incurred by the Debtors' cannot be justified, *Dana*, 344 B.R. at 40, and will only serve to delay the consummation of the 363 Transaction to the disadvantage of all economic stakeholders.  The appointment of additional and separate tort claimant and asbestos claimant committees will undoubtedly lead to duplicative efforts and potential litigation in these cases and would add no value to the administration of the cases.

*(f)  Other Considerations: Time Is of the Essence*

20.  At this critical stage of the chapter 11 cases, the appointment of additional committees would substantially prejudice all claimants by potentially delaying the 363 Transaction.  As noted in the Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2, dated June 1, 2009 ([Docket No. 21]), time is of the essence in the consummation of the 363 Transaction.  Any delay in the transfer of the Debtors' business and assets will have a significant negative impact on the ability to effectuate the 363 Transaction, the preservation of going-concern values, the retention of hundreds of thousands of jobs, and protection of community interests.  The Debtors' ability to sustain financing is limited and conditioned upon the consummation of the 363 Transaction.  The Movants are adequately represented by the Official Committee.  Thus, the appointment of additional and separate committees of unsecured

claimants who are adequately represented by the Official Committee is not justified or consistent with the Bankruptcy Code.

21. The Movants rest their arguments on the dogmatic and unsupported assertions that (a) large and complex cases warrant additional committees (Ad Hoc Tort Claimants' Motion ¶ 17, Ad Hoc Asbestos Claimants' Motion ¶¶ 18, 20), and (b) their particular special groups are disenfranchised because they do not dominate the Official Committee. *Id.* ¶ 21; Ad Hoc Tort Claimants' Motion ¶ 24.

22. The Movants misconceive the applicable principles of law. It is not necessary for the Official Committee to be an exact reflection of its designated constituents, only that each group of unsecured creditors has a meaningful voice on the committee in relation to their posture in the case. *See Dow Corning Corp.*, 194 B.R. at 141. Both GM's tort and asbestos claimants are ably and adequately represented by the Official Committee, which includes tort and asbestos claimants that are members of the Official Committee. Indeed, the Official Committee, as appointed by the U.S. Trustee, is patently representative of the different kinds of claims involved in the chapter 11 cases, as contemplated by section 1102(b) of the Bankruptcy Code.

23. As discussed above, it is not necessary that the objectives of each type of claimant represented by an Official Committee be aligned or compatible. It is common, indeed expected, that members of an Official Committee will have a variety of interests and objectives, some of which may be diametrically opposed to those of other creditor members. *See In re McLean Indus.*, 70 B.R. at 861 ("creditors committees often contain creditors having a variety of view-points. Some members may favor liquidation; others may favor continuation of the business . . ."); *see also In re Sharon Steel Corp.*, 100 B.R. 767, 777 (Bankr. W.D. Pa. 1989) ("It is universally recognized that intercreditor conflicts inhere in any committee").

24. Conflicts of opinions within the membership of a statutory committee are insufficient to justify the appointment of additional unsecured creditors' committees. The Bankruptcy Code recognizes that there may and will be disagreements within a statutory committee as to strategies, tactics, and objectives. *See In re Barney's, Inc.*, 197 B.R. 431, 444 (Bankr. S.D.N.Y. 1996). To the extent there are disagreements, the committee process facilitates resolution without the high potential for additional litigation and controversy between committees. *Id.* The Bankruptcy Code contemplates that "conflicting groups of creditors have a voice through adequate representation on the committee," with the ultimate objective to "strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished." *In re Dow Corning*, 194 B.R. at 141.

25. The Official Committee was appointed by the U.S. Trustee after substantial deliberation following a lengthy meeting of interested creditors on June 3, 2009. Following interviews of various claimants for committee membership, the U.S. Trustee determined, in the exercise of her authority under section 1102(a)(1) of the Bankruptcy Code, that a committee of fifteen creditor members should be appointed in these chapter 11 cases, comprised of creditors representing:

      (a) GM's pension benefit plans,
      (b) bondholder claims,
      (c) trade and supplier claims,
      (d) organized labor claims,
      (e) dealers,
      (f) asbestos claimants, and
      (g) tort claimants

would provide adequate representation of the diverse creditor interests in the Debtors.

26. Since June 3, 2009, the Official Committee has been an effective representative body for all of the Debtors' unsecured creditors. It has engaged experienced professionals and is effectively discharging its statutory responsibilities. Despite the conscious and careful selection of the Official Committee members by the U.S. Trustee to provide adequate representation of all unsecured creditor interests in the chapter 11 cases, including GM's tort and asbestos claimants, the Movants request the appointment of additional and separate committees of unsecured creditors because they are purportedly "unique." The Movants' requests are factually and legally insufficient. They do not warrant the imposition of additional and unnecessary expenses upon the Debtors. It would encourage others to seek additional committees of unsecured creditors. There is no justification established for the appointment of additional committees of tort and asbestos claimants.

### **Appointment of a Future Claimants' Representative Is Not Necessary**

27. These are not asbestos-driven cases. The ten-year forecast of the Debtors' nominal potential asbestos liabilities total $643 million. As disclosed in GM's Form 10-Q, as of March 31, 2009, the Debtors had consolidated global recorded assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively. Accordingly, potential asbestos claims exposure constitutes approximately 0.5% of the Debtors' total liabilities.

28. Notwithstanding the fact that the Debtors are not proposing to use section 524(g) of the Bankruptcy Code for injunctive or channeling purposes, the Ad Hoc Asbestos Claimants assert that "a plan pursuant to section 524(g) is in the best interests of the Debtors, their estates, their creditors and other parties in interests –including the [p]urchaser [in the 363 Transaction] . . . ." Ad Hoc Asbestos Claimants' Motion ¶ 10.

29. Section 524(g)(1)(A) provides, in part, that

> [a]fter notice and hearing, a court that enters an order confirming a *plan of reorganization* under chapter 11 *may* issue, in connection with such order, an injunction [] to supplement the injunctive effect of a discharge . . . .

11 U.S.C. § 524(g)(1)(A) (emphasis added).

30. Section 524(g) of the Bankruptcy Code only applies in the context of a plan of reorganization. After consummation of the 363 Transaction, the Debtors intend to propose a plan of liquidation. In that context, section 524(g) of the Bankruptcy Code is not applicable, and a legal representative for future asbestos claimants is not mandatory. *See Locks v. United States Trustee*, 157 B.R. 89 (W.D. Pa. 1993) (under a liquidating chapter 11 plan that provided only for the prepetition claimants, appointment of a future claimants representative is not mandatory based on the divergent goals of liquidations versus reorganization).

31. The argument by the Ad Hoc Asbestos Claimants is the same argument (articulated by the same attorneys) that was made, and expressly rejected by the *Chrysler* court, which concluded "section 524(g) is inapplicable to a free and clear sale under section 363(f) [of the Bankruptcy Code]." 405 B.R. 84, __ (Bankr. S.D.N.Y. 2009). The *Dana* court also rejected a similar argument: "No plan has been filed in these cases and at this early triage stage, there has been no indication [] that the Debtors plan to implement a section 524(g) trust." *Dana*, 344 B.R. at 39. There is no current intent, in these cases, to implicate section 524(g) or implement a trust pursuant to that section.

32. The Ad Hoc Asbestos Claimants' request to appoint an FCR at this early stage of these cases should be denied.

## Conclusion

33. The Official Committee adequately represents all unsecured creditors of the Debtors, including all tort and asbestos claimants. In the perspective of the applicable

determinative factors, the requests of the Ad Hoc Tort Claimants and the Ad Hoc Asbestos Claimants for the appointment of additional and separate committees of unsecured tort and asbestos claimants should be denied. In addition, at this early stage of these chapter 11 cases, there is no mandatory requirement or need for the appointment of a legal representative for potential future asbestos claimants.

WHEREFORE the Debtors respectfully request that the Motions be denied and that the Court grant to the Debtors such other and further relief as is just.

Dated: New York, New York
June 19, 2009

/s/ Harvey R. Miller
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession