Suzanne Hepner
LEVY RATNER, P.C.
80 Eighth Avenue, Eighth Floor
New York, New York 10011

Counsel for United Steelworkers

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | ) | |
| | ) | **Chapter 11 Case No.** |
| **GENERAL MOTORS CORP.,** *et al.,* | ) | |
| | ) | **09-50026** |
| **Debtors.** | ) | |
| | ) | **(Jointly Administered)** |
| ———————————————————— | ) | |

## DECLARATION OF DENNIS BINGHAM

I, **Dennis Bingham,** pursuant to 28 U.S.C. § 1746, furnish this declaration in support of the Objection To Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(b), (f), k), AND (m), And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To (I) Approve (A) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief; And (II) Schedule Sale Approval Hearing:

1.      I am president of United Steelworkers Local 87L, a labor organization which, along with the United Steelworkers International Union, represents approximately 6,000 retirees who worked for General Motors Corporation ("GM" or "Debtor") and/ or its spun off successor, Delphi Corporation ("Delphi"). I worked for GM from July 1, 1962 through the 1999 spin-off of Delphi, and I have worked for Delphi since 1999.

2.    I have been the president of Local Union 87L since 1989. In my capacity as a local union president, I am familiar with the history of bargaining with GM and Delphi.

3.    United Steelworkers is the largest industrial union in North America, representing approximately 850,000 workers in the United States, Canada, and the Caribbean. USW represents employees in nearly every sector of the industrial economy.

4.    Here, United Steelworkers is the authorized representative for purposes of Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114, of approximately 6,200 retirees, spouses, surviving spouses and dependents receiving retiree benefits pursuant to collective bargaining agreements between USW and GM. The retirees represented by USW worked at two facilities located in and around Dayton, Ohio, namely, the Home Avenue and Vandalia plants. I am an employee of the Home Avenue plant. In 1999, GM spun-off the Home Avenue and Vandalia plants, along with numerous other facilities, to Delphi.

5.    For decades, the USW has been the bargaining agent of workers employed at two facilities in Dayton, Ohio – the Vandalia and Home Avenue plants – that were once owned by GM and now are owned by Delphi Corporation ("Delphi"). The Home Avenue plant bargaining unit were originally organized by the United Rubber Workers ("URW") in 1937, while in or around 1961 the URW became the bargaining agent at the Vandalia plant. The URW merged with the USW in 1995. The workers are represented today by the USW and its Local Union 87L.

6.    The USW (and, before the merger, the URW) and GM were parties to National Agreements covering the Dayton employees; the GM-USW National Agreements were largely patterned after the National Agreements that GM entered with the United Auto Workers ("UAW"), which represented the vast majority of GM's workers, and the International Union of

2

Electrical Workers ("IUE-CWA"), which represented far fewer GM workers than the UAW but more than the USW.

7.     The GM-USW National Agreements established a host of benefits, including pension benefits and retiree health and life insurance programs. The USW employees participated in the same pension plan as the UAW and other unionized workers, and USW retirees received the same retiree health and life insurance benefits as UAW retirees.

8.     On or around May 28, 1999, GM spun-off its parts making business to Delphi, which included the two Dayton plants represented by the USW. Upon the creation of Delphi, USW ceased to represent active GM employees, which lead USW to be concerned about whether the USW retirees would continue to receive the same retiree benefits as those represented by labor organizations that continued to represent active GM workers. In light of USW's concern, GM and USW entered into a letter agreement dated December 10, 1999, in which GM agreed, in relevant part, as follows:

> General Motors acknowledges the Union's concern and provides assurance that those employees, retirees and surviving spouses who retire on or before January 1, 2000, will in the future, be extended the identical provisions of the GM Hourly Pension Plan, Life and Disability Benefits and Health Care Programs that are provided to other represented hourly employees and retirees who continue to be covered under such GM benefit programs. (Emphasis added).

A copy of the December 10, 1999 letter agreement is attached hereto as Exhibit 1.

9.     In addition, GM and the USW entered into a Benefit Guarantee Agreement dated December 31, 1999 ("Benefit Guarantee") wherein GM agreed to guarantee the pension and retiree insurance benefits of the USW-represented employees who were employed by GM prior to the spin-off but who retired from Delphi after the date of the transaction. GM agreed to

similar terms with the other unions representing its workers and retirees. Specifically, GM

agreed that

> the obligations as described in this letter will continue in effect
> with respect to each of the benefits described above, regardless of
> the expiration of any collective bargaining agreement, for as long
> as GM is providing the corresponding benefit to its hourly
> employees or retirees. This agreement may be modified only by
> mutual agreement of the parties.

(Benefit Guarantee, p. 3) (emphasis added). As it relates to retiree insurance, the Benefit

Guarantee provides that in the event that on or before October 18, 2007, Delphi "due to Financial

Distress fails or refuses to provide post-retirement medical benefits" or "due to Financial

Distress reduces the level of post-retirement medical benefits" to covered Delphi retirees "below

the level of benefits which, at that time, GM is providing to its hourly retirees,"

> GM shall guarantee such retired Covered Employees post-
> retirement medical benefits at the level and scope in effect for
> hourly GM retirees at the time of [the termination or reduction of
> benefits]. Further, any such coverage provided by GM shall be
> secondary to coverages, if any, provided by Delphi, any of its
> subsidiaries or affiliates, or any of their successor companies.

(Benefit Guarantee, pp. 1-2) (emphasis added). The Benefit Guarantee provides for a similar

commitment relative to retiree life insurance benefits. A true and correct copy of the Benefit

Guarantee is attached hereto as Exhibit 2.

        10.     Delphi filed its Chapter 11 case in October 2005 and, at some point in 2006,

entered into negotiations with each of the major labor unions representing its workers and/ or

retirees, including the USW. These negotiations continued into 2007. Because of the presence

of the Benefit Guarantee agreements, as well as the numerous other ties between GM and

Delphi, GM also participated in these negotiations. GM and Delphi first reached agreements

4

with the UAW and the IUE, and then, in August 2007, reached an agreement with the USW and

its Local Union 87L.

11.    The August 2007 agreement was several hundred pages in length and covered

myriad issues relating to the collective bargaining agreements and other agreements covered the

workers and retirees of the USW-represented Dayton plants. A key aspect of the agreement was

"Attachment B," which is entitled "Term Sheet – Delphi Pension Freeze and Cessation of OPEB,

and GM Consensual Triggering of Benefit Guarantee" ("Term Sheet"). The signatories to the

Term Sheet are GM, Delphi, the USW, and USW Local Union 87L. A copy of the Term Sheet is

attached hereto as Exhibit 3.

12.    The parties agreed that Delphi's cessation of benefits "will trigger . . . the Benefit

Guarantee as of the Cessation Date as set forth herein." (Exhibit 3, ¶ 15). And, as part of the

transition of retiree benefits from Delphi to GM, the Term Sheet provides that "GM agrees to

provide post-retirement medical and employer paid post-retirement life insurance" to covered

participants. (Exhibit 3, ¶ 17). Covered participants include those who retired prior to the

effective date of the Term Sheet under the 1999 Delphi-USW Master Agreement; persons who

on the effective date of the Term Sheet were eligible to retire from Delphi but had yet to do so;

and persons who obtained sufficient pension service to retire within 7 years of the effective date

pursuant to various normal, early and disability forms of pension benefits. (Exhibit 3, ¶ 17(A).

13.    Regarding the program of benefits to be provided, the parties further agreed that

"[a]ll post-retirement medical benefits provided with respect to Covered Employees by GM will

be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM

Health Care Program for Hourly Retirees" and that "GM will provide the applicable level of post

retirement medical benefits consistent with the terms" of a modified plan that GM and IUE-

CWA had negotiated "on the same basis as such benefits are provided to GM-IUE hourly

employees who retired from GM with eligibility to participate in the GM Health Care Program."

(Exhibit 3, ¶ 17(C)). GM until now has honored these contractual commitments. Other

provisions of the August 2007 settlement agreement described the plan design changes that were

to be made to the GM retiree benefit programs.

14.    The August 2007 agreement also included a letter dated August 16, 2007,

addressed to Dennis Bingham, President of USW Local Union 87L, by Dean W. Munger, GM's

Executive Director of Labor Relations, addressing future post-retirement health care coverage

("Future Coverage Letter"). A copy of the Future Coverage Letter is attached hereto as Exhibit

4.

15.    Similar to the letter agreed-to in 1999 relative to future benefits, the Future

Coverage Letter addresses the treatment of USW-represented GM retirees after the expiration of

the GM-UAW agreement in 2011, and provides, as follows:

> GM understands USW-Local 87L's concerns [regarding future
> benefits] and provides assurance that future changes to the post-
> retirement health care benefits for USW-Local 87L retirees and
> surviving spouses, who are considered GM retirees and surviving
> spouses and who have retired no later than [the date set forth in the
> USW-GM-Delphi Special Attrition Program] will be based on
> changes to the post-retirement health care benefits for former GM
> employees who were represented by the UAW who are considered
> GM retirees or surviving spouses ("UAW Retirees"). Changes to
> the post-retirement health care benefits for USW Retirees will be
> proportional to the changes to those benefits for UAW Retirees
> based on the differences between the USW-Local 87L Plan Design
> Changes dated August 16, 2007 and the UAW Plan Design
> Settlement Agreement dated December 16, 2005.

(Exhibit 4) (emphasis added).

16.    The August 2007 settlement agreement among GM, Delphi, USW and USW

Local Union 87L includes other provisions, including the transfer of certain pension assets and

liabilities from the Delphi pension plan to the GM pension plan and the creation of a Special

Attrition program which was designed to encourage Delphi employees to retire from

employment. A key element of the Special Attrition Program was the right of employees to

"check the box" and elect to receive post retirement health and life insurance benefits from GM.

17.    GM presented USW with an offer on June 8, 2009, that falls far short of parity

with the terms offered to the UAW. GM's proposal to USW is substantively similar to the

proposal tendered to IUE-CWA. Because New GM proposes not provide any form of benefits to

retirees who are Medicare eligible, according to information furnished by GM, approximately

4,100 of the USW Retirees will immediately lose any form of employer provided coverage

effective January 1, 2010, and more than 1,000 retirees between the ages of 60 and 64 will lose

coverage in the coming years.

18.    As with its offer to IUE-CWA, GM has asked that USW waive its claim, which,

according to data furnished by GM totals approximately $424 million. However, also according

to data furnished by GM, the actuarial value of the revised program is approximately 15% of the

current liabilities.

19.    Following the June 8 meeting, USW presented GM on June 10 with a

comprehensive information request. USW presented another information request on June 14.

GM responded in part to the information requests.

20.    The USW and GM met on June 17, 2009 in Detroit, Michigan. Representatives

of the IUE-CWA and the IBEW were also present. The USW and IUE-CWA presented GM

with a joint proposal. It is my understanding that the June 17 proposal is being submitted

separately in connection with the joint objection of the USW and IUE-CWA. GM rejected the

proposal. The USW stated at the end of the meeting that it was willing to continue bargaining with GM.

21.    I declare under penalty of perjury that the foregoing is true and correct.


Executed this _18_ day of June, 2009


_Dennis R. Bingham_
Dennis Bingham

**EXHIBIT 1**

7-11-06: 2:34PM:USWA Loc3: 87                                    :9372623542        # 2/ 5
    DEC 13 '99 17:25 FR EMPLOYEE BENEFITS    313 974 5007 TO 919372623542      P.12/12

**General Motors**

December 10, 1999

United Steelworkers of America,
 AFL-CIO/CLC - Local Union No. 87
21 Abbey Avenue
Dayton, Ohio 45417

Attention:  Mr. Dennis A. Bingham

Dear Mr. Bingham:

As a result of recent discussions regarding the separation of Delphi Automotive
Systems from General Motors Corporation, you have brought to our attention the
fact that those employees whom you represent or have represented and who
retire or have retired from General Motors Corporation on or before January 1,
2000, will receive their monthly pension benefits from the General Motors
Hourly-Rate Employees Pension Plan.  You have expressed concern regarding
the future treatment of such retirees (and eligible surviving spouses) insofar as
such retirees are covered under the GM Pension Plan rather than the Delphi
Pension Plan and that your union will not be bargaining over the GM Pension
Plan.

General Motors acknowledges the Union's concern and provides assurance that
those employees, retirees and surviving spouses who retire on or before
January 1, 2000, will in the future, be extended the identical provisions of the GM
Hourly Pension Plan, Life and Disability Benefits and Health Care Programs that
are provided to other represented hourly employees and retirees who continue to
be covered under such GM benefit programs.

Very truly yours,

GENERAL MOTORS CORPORATION


Thomas E. Utter
NA Labor Relations

*DB 12-13-99*

**EXHIBIT 2**

7-11-06; 2:34PM;USWA Local 87                                    :8372623542                    # 3/ 5

12/13/99

### Benefit Guarantee

During these negotiations, the Union raised concerns about the security of pensions, retiree medical, and certain other benefits described below for United Steelworkers of America (USWA) represented former GM employees who are now employed by Delphi Automotive Systems Corporation ("Delphi").

In order to address these concerns, GM guarantees the provision of the benefits listed below, to the extent described herein, to those USWA-represented Delphi employees who had unbroken seniority and were employed by GM under the terms of the 1996 GM-USWA National Agreement as of the spin-off of Delphi from GM on May 28, 1999 (the "Covered Employees"). (However, such guarantes do not apply to those Delphi USWA employees employed under competitive hire agreements unless such employees are at parity for wages and benefits as of May 28, 1999.)

a.    In the event that Delphi or its successor company(ies) has ceased doing business on or before June 1, 2004:

　　1.    Covered Employees at Delphi who are laid-off will be entitled to layoff benefits available to laid-off GM hourly employees under the GM hourly National Agreement and Supplemental Agreements. Further, any such benefits provided by GM shall be secondary to benefits provided by Delphi, any of its subsidiaries or affiliates, or any of their successor company(ies).

b.    In the event that Delphi or its successor company(ies) has ceased doing business, terminated its pension plan covering the Covered Employees and all other union-represented hourly-rate employees in the United States, or ceases to provide on-going credited service for the Covered Employees and all other union-represented hourly-rate employees in the United States under such pension plan due to Financial Distress, on or before October 18, 2007:

　　1.    GM will provide up to 7 years of credited service at the level and scope in effect at Delphi at such time to Covered Employees working at Delphi. Further, any such benefits provided by GM shall be secondary to benefits provided by Delphi, any of its subsidiaries or affiliates or any of their successor company(ies), or the PBGC. However, in no event shall GM provide pension benefits on such credited service at a level and scope that exceeds that being provided to hourly retirees of GM.

c.    In the event that Delphi or its successor company(ies) on or before October 18, 2007 (x) due to Financial Distress fails or refuses to provide post-retirement medical benefits to eligible Covered Employees and all other union-represented hourly-rate employees in the United States retired from Delphi, or (y) due to Financial Distress reduces the level of post-retirement medical benefits for eligible Covered Employees and all other union-represented hourly-rate employees in the United States retired from Delphi below the level of benefits which, at that time, GM is providing to its hourly retirees:

1.  GM shall guarantee such retired Covered Employees post-retirement medical benefits at the level and scope in effect for hourly GM retirees at the time of the event described in c.(x) or c.(y). Further, any such coverage provided by GM shall be secondary to coverages, if any, provided by Delphi, any of its subsidiaries or affiliates, or any of their successor company(ies):

2.  For purposes of this agreement, the term "post-retirement medical benefits" shall include hospital, surgical and medical benefits, Medicare Part B benefits, prescription drug benefits, dental, vision, and hearing benefits, and any other similar benefit for retirees which is now provided, by GM to its hourly retirees.

d.  In the event that Delphi or its successor company(ies) on or before October 18, 2007 (x) due to Financial Distress fails or refuses to provide post-retirement life insurance benefits to eligible Covered Employees and all other union-represented hourly-rate employees in the United States retired from Delphi, or (y) due to Financial Distress reduces the level of post-retirement life insurance benefits for eligible Covered Employees and all other union-represented hourly-rate employees in the United States retired from Delphi below the level of benefits which, at that time, GM is providing to its hourly retirees:

1.  GM shall guarantee such retired Covered Employees the level of post-retirement life insurance coverage equal to the amount in effect for hourly GM retirees at the time of the event described in clause d.(x) or d.(y). Further, such life insurance shall be subject to reduction in accordance with provisions of the plan covering hourly GM retirees in effect at such time. In addition, any such coverage provided by GM shall be secondary to coverage provided by Delphi, any of its subsidiaries or affiliates, or any of their successor companies.

e.  In the event that Covered Employees and all other union-represented hourly-rate employees in the United States on or before October 18, 2007 receive pension benefits at a level below that called for in any applicable Delphi/USWA agreement or pension plan due to Financial Distress:

1.  GM shall provide supplemental payments to such retired Covered Employees which, when combined with any pension benefits received (x) from a pension plan sponsored by Delphi, any of its subsidiaries or affiliates or any of their successor company(ies), (y) from the PBGC, and/or (z) from a pension plan sponsored by GM, result in the retired Covered Employees receiving pension benefits equal to those called for in the Delphi/USWA agreement applicable at such time.

2

7-11-08; 2:34PM;USWA Local 87                                    ;9372623542                # 5/ 6

## General Provisions

GM's obligations as described in this letter will continue in effect with respect to each of the benefits described above, regardless of the expiration of any collective bargaining agreement, for as long as GM is providing the corresponding benefit to its hourly employees or retirees. This agreement may be modified only by mutual agreement of the parties.

GM's obligations to provide a particular benefit under this letter shall not apply to the extent that Delphi provides a lower scope or level of such benefits to Covered Employees than that provided to hourly active or retired non-Covered Employees. In addition, in no event shall GM be required to provide benefits to Covered Employees at a level and scope that exceeds that being provided to hourly retirees of GM.

As used herein, the term "Financial Distress" means a risk affecting Delphi's continuing financial viability. The USWA cited companies it is aware of that another union representing GM employees has a bargaining relationship with, as examples of the type of situation they are concerned about when referencing Financial Distress. The parties also discussed a significant drop in the credit rating, reorganization in bankruptcy, and a qualified opinion by Delphi's auditors regarding Delphi's prospects as an on-going concern and agreed that these types of circumstances are nonexclusive examples of conditions associated with Financial Distress.

In the event that the Financial Distress is eliminated, and Delphi restores the benefits at issue to the level and scope in effect immediately before the reduction that triggered the guarantee, GM shall be relieved of its obligation for so long as Delphi continues to provide the restored level and scope of benefits.

GM's obligations as described in this letter will not be triggered by a short-term failure (i.e., less than 60 days) by Delphi to maintain the benefits and/or coverages described above, provided that Delphi is taking reasonable steps to cure such failure during such time.

3

**EXHIBIT 3**

**Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and
GM Consensual Triggering of Benefit Guarantee**

1) This Term Sheet sets forth the agreement of General Motors Corporation ("GM"),
Delphi Corporation, or any successor to Delphi as a result of the acquisition of
substantially all the stock or assets of Delphi Corporation or a merger of Delphi
Corporation, or any plan sponsor of the Delphi Hourly-Rate Employees Pension
Plan ("Delphi"), and the United Steel, Paper and Forestry, Rubber, Manufacturing,
Energy, Allied Industrial and Service Workers International Union and its Local
Union 87L ("USW") regarding the freeze of the 2003 Delphi Hourly-Rate
Employees Pension Plan ("Delphi HRP"), Delphi's cessation of post-retirement
health care benefits and employer-paid post-retirement life insurance benefits
(hereinafter referred to as "OPEB"), and the terms of a consensual triggering and
application of the Benefit Guarantee agreement between GM and the USWA, dated
December 13, 1999 and signed December 16, 17 and 22, 1999 ("Benefit
Guarantee"). For purposes of this Term Sheet, the term "Covered Employee" will
have the same meaning as in the Benefit Guarantee and does not include employees
who were employed under a competitive hire agreement unless they were at parity
for wages and benefits as of May 28, 1999, provided however, that USWA
represented employees who were employed as of May 28, 1999 and were initially
hired under a competitive hire agreement that provided for them to grow into full
parity for all purposes, including but not limited to all benefit participation on the
same basis as non-competitive hire employees and the ability to grow into full wage
parity, are also Covered Employees, provided further that USW represented
employees who retired on or before July 1, 2007 and are receiving Delphi paid post-
retirement health care benefits under the terms of the Delphi Health Care Program
for Hourly Employees will be considered a Covered Employee for purposes of the
OPEB provisions of this Term Sheet. Except as otherwise expressly stated herein,
the terms of the respective Delphi and GM employee benefit plans and programs
will govern. This Term Sheet does not, and is not intended to, constitute an
employee benefit plan under the meaning of ERISA. This Term Sheet supersedes
any and all previous letters, agreements and understandings that are not specifically
addressed herein pertaining to the matters set forth in this Term Sheet.

2) The parties acknowledge that this Term Sheet will become effective (the "Effective
Date") when all of the following events have occurred and as of the date when the
last of such events shall have occurred: (a) the entry of an approval order by the
Bankruptcy Court in Delphi's chapter 11 cases approving the USW-Delphi-GM
Memorandum of Understanding – Home Avenue – Delphi Restructuring and the
USW-Delphi-GM Memorandum of Understanding – Vandalia – Delphi
Restructuring which incorporates (among other subject matters) this Term Sheet and
approves modifications to the existing collective bargaining agreements between
Delphi and the USW resolving any Section 1113 and 1114 motions pending in the
Bankruptcy Court as between Delphi and the USW; (b) successful ratification by the
USW membership of such of the agreements referred to in the preceding clause as

are determined by the USW to require such ratification; (c) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them; and (d) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases (the "Plan") and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Term Sheet and the comprehensive settlement agreement between Delphi and GM.

**Pensions**

3) Pursuant to the Plan and this Term Sheet, Delphi will as of the first of the month next following the Effective Date or as soon as practicable thereafter in accordance with applicable law (the "Freeze Date"), amend the Delphi HRP so as to freeze benefit accruals for future credited service in the Delphi HRP, except as set forth in paragraph 4.b. of this Term Sheet.

4) With regard to such amendment and freeze of the Delphi HRP, Delphi will cause the frozen Delphi HRP to pay benefits in accordance with the terms of the Delphi HRP and applicable law. In this regard, the parties agree as follows:

a) Covered Employees, who are retired as of the Freeze Date, will continue to be eligible for and receive from the Delphi HRP all benefits, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP as of the date immediately preceding the Effective Date.

b) Delphi employees who are participants in the Delphi HRP (without regard to whether they are also "Covered Employees") who are participants in a USW-GM-Delphi Special Attrition Program, if such a program is agreed to and implemented (the "SAP"), and who are not retired or separated from service under the SAP as of the Freeze Date, will receive credited service in the Delphi HRP for all purposes, including but not limited to eligibility, vesting and future benefit accruals, as if there were no freeze, until the earlier of their retirement or separation from service under the terms of the SAP. For the avoidance of doubt, the Delphi HRP is solely responsible for all credited service for accrual, vesting and eligibility purposes for all Delphi participants in the SAP, including but not limited to participants in the pre-retirement program option. Further, all Delphi SAP participants will be eligible for and will receive full Delphi HRP benefits upon their retirement under the terms of the SAP, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP as of the date immediately preceding the Effective Date. SAP participants are not eligible to receive Delphi contributions or matching contributions under any Delphi defined contribution pension plan.

c) Covered Employees (other than those referred to in paragraph 4.b. of this Term Sheet) who are eligible to retire as of the Freeze Date will, upon their retirement, receive from the frozen Delphi HRP all benefits provided for in the Delphi HRP

under the terms in effect as of the date immediately preceding the Effective Date, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP.

d) Covered Employees (other than those referred to in paragraph 4.b. of this Term Sheet) who become eligible to retire after the Freeze Date, when taking into account Delphi credited service, their age at retirement, any GM credited service provided for under paragraph 8. of this Term Sheet, and any other applicable credited service (including credited service as recognized by the Delphi HRP in accordance with paragraph 5 of this Term Sheet), will upon their retirement receive from the Delphi HRP all benefits provided for in the Delphi HRP, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP under the terms in effect as of the date immediately preceding the Effective Date.

e) For the avoidance of doubt, Covered Employees referred to in paragraphs 4.c. and 4.d. of this Term Sheet, will, upon retirement, receive from the Delphi HRP in addition to any other applicable Delphi HRP benefits the:

    i. full amount of the 30 & out benefit through age 62 and one month, or the 80% date for those born on or before September 14, 1945, including, but not limited to, the full Early Retirement Supplement, in effect as of the date immediately preceding the Effective Date;

    ii. portion of the Interim Supplement (which is applicable in both 85 point and 60 & 10 retirements) in effect under the Delphi HRP based on the credited service accrued as of the date immediately preceding the Freeze Date and age at the time of retirement; and

    iii. portion of the Temporary Benefit (T&PD and mutual retirements) in effect under the Delphi HRP based on the credited service accrued as of the date immediately preceding the Freeze Date, not to exceed 30 years.

f) For the avoidance of doubt, no Delphi HRP participants, including the Covered Employees referred to in paragraphs 4.a. through 4.d. of this Term Sheet, will receive lump sum payments or any increase in benefits above the level of those provided for in the Delphi HRP as of January 1, 2007, except as may be mutually agreed by the USW and Delphi after the term of the extended 1999 USWA-Delphi Master Agreement, i.e. after September 14, 2011. Additionally, no new participants will be allowed to join the frozen Delphi HRP.

g) Until the Freeze Date, Covered Employees will continue to receive credited service in the Delphi HRP for all purposes, including but not limited to, eligibility, vesting, and future benefit accruals. During this period, such Covered Employees will not be eligible for any other corporation provided defined benefit or defined contribution pension benefits or accruals. At the expiration of this

period they will become eligible to participate in all benefit plans at their location on the same basis as other USW employees at such location.

h) Covered Employees who continue to be employed by Delphi, or any Delphi operation divested after October 8, 2005, after the period of time they are eligible to accrue credited service in the GM HRP under paragraph 8.a. of this Term Sheet will become eligible to receive any applicable Delphi contributions or matching contributions under any Delphi defined contribution pension plan following the expiration of such period.

5) After the Freeze Date, all Delphi HRP participants (other than those referred to in paragraph 4.b. of this Term Sheet), including, but not limited to, Covered Employees who are employed at a Delphi operation divested after October 8, 2005, who had not retired or separated from service as of the Freeze Date will, subject to the other terms of the Delphi HRP in effect as of the date immediately preceding the Effective Date, be treated in the Delphi HRP as active participants for all purposes, other than future benefit accruals based on additional credited service, for all periods of time on or after the Freeze Date and prior to retirement or separation from service from Delphi, GM, or any Delphi operation divested after October 8, 2005; provided, however, that for any Delphi operation divested after October 8, 2005 and prior to the Effective Date such active participant treatment is subject to paragraph 6 of this Term Sheet.

6) The Delphi HRP's ability to treat separated employees who are employed at a Delphi operation divested after October 8, 2005 and prior to the Effective Date, as active participants for all purposes other than future benefit accruals based on additional credited service in accordance with paragraph 5 of this Term Sheet is contingent upon Delphi obtaining all required governmental approvals (which Delphi is seeking). If Delphi does not obtain such governmental approvals, Delphi will provide an alternative to enable such participants to continue to accrue credited service for purposes of vesting and eligibility to retire the same as other similar active Delphi HRP participants. For separated employees employed at a Delphi operation divested after October 8, 2005 and prior to the Effective Date, such alternatives include, but are not limited to, temporarily leasing the employees to a successor employer or amending the frozen Delphi HRP on a retroactive basis (i.e., after the Effective Date) to recognize credited service with a successor employer for purposes of vesting and eligibility (but not benefit accrual).

7) In furtherance of the Plan, the parties agree that Delphi's action to freeze the Delphi HRP as set forth in paragraph 3. of this Term Sheet will trigger sections b. and e. of the Benefit Guarantee for Covered Employees as of the Freeze Date.

8) In accordance with GM's obligations under section b. of the Benefit Guarantee, GM and the USW agree that as of the Freeze Date the General Motors Hourly-Rate Employees Pension Plan ("GM HRP") will be amended to provide the following:

a) Covered Employees, who are Delphi employees as of the Freeze Date or Covered Employees who are employed at a Delphi operation divested after October 8, 2005 and prior to the Freeze Date (other than those referred to in paragraph 4.b. of this Term Sheet), will be eligible to accrue credited service under the GM HRP for all purposes, including but not limited to eligibility, vesting, and future benefit accruals for the seven (7) year period commencing on the Freeze Date. Any such benefits provided by the GM HRP shall be at the level and scope in effect at Delphi on the day immediately preceding the Effective Date and shall be secondary to benefits provided by Delphi, the Delphi HRP, any Delphi operation divested after October 8, 2005 or any benefit plan of such operation, any of their subsidiaries, affiliates or successors or associated pension plans, and/or the PBGC. In no event shall the GM HRP provide pension benefits on such credited service at a level and scope that exceeds that being provided to hourly retirees of GM. The amount of such credited service accrued will equal:

   i. the amount of credited service that, but solely for the Freeze, would have been earned after the Freeze Date under Article III of the Delphi HRP in effect as of the date immediately preceding the Effective Date; and

   ii. to the extent not taken into account in paragraph 8.a.(i) of this Term Sheet, the amount of credited service that, but solely for the Freeze and divestiture, would have been earned while working after the Freeze Date at any Delphi operation divested after October 8, 2005.

Nothing in this Term Sheet shall be deemed to require GM to grant credited service beyond that described in this section 8.a. Employees shall be provided only the amount of credited service earned as described in this section 8.a, and shall not receive credited service otherwise.

b) In regard to the credited service accrued in the GM HRP under paragraph 8.a. of this Term Sheet, the GM HRP will recognize Delphi HRP credited service accrued prior to the Freeze Date for purposes of vesting and eligibility to retire for any Covered Employee. No other Delphi HRP credited service will be recognized by the GM HRP.

c) The GM HRP benefit payable to a Covered Employee, who retires as a normal retirement under Article II, section 1. of the Delphi HRP and GM HRP, will be a Basic Benefit based on GM HRP credited service accrued under paragraph 8.a. of this Term Sheet and the rates in effect under the Delphi HRP as of the Effective Date.

d) The GM HRP benefit payable to a Covered Employee, who retires under Article II, section 2(a)(3) of the Delphi HRP and GM HRP with 30 or more years of credited service prior to age 62 and one month, will be a Basic Benefit payable beginning at age 62 and one month based on the number of years of credited

service accrued under the GM HRP under paragraph 8.a. of this Term Sheet and the rates in effect under the Delphi HRP as of the Effective Date.

e) The GM HRP benefit payable to a Covered Employee, who retires under the Delphi HRP and GM HRP prior to age 65 with 85 Points or age at least 60 with 10 or more years of credited service, under Article II, section 2(a)(1) or 2(a)(2) of the Delphi HRP and GM HRP or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the GM HRP, or for the Home Avenue plant only (including, but not limited to, those Covered Employees at the Home Avenue plant who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant), as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP, will consist of the following:

  i. the Basic Benefit based on the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet, age at time of retirement, and the rates in effect under the Delphi HRP as of the Effective Date. Such benefits from the GM HRP are payable beginning upon the date of retirement and will be redetermined, if applicable at age 62 and one month, under the terms of the Delphi HRP in effect as of the date immediately preceding the Effective Date; and

  ii. if applicable, an interim supplement based on the rates in effect under the Delphi HRP as of the date immediately preceding the Effective Date for the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet and age at time of retirement. The duration of such interim supplement is modified as set forth in the letter in the Delphi HRP entitled Social Security.

  iii. if applicable, a temporary benefit based on the rates in effect under the Delphi HRP as of the date immediately preceding the Effective Date for the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet. Provided, however, that such number of years of credited service when added to the number of years of credited service in the Delphi HRP will not exceed 30. The duration of such temporary benefit is modified as set forth in the letter in the Delphi HRP entitled Social Security.

f) Any Covered Employee who, after considering: i) the credited service accrued in the GM HRP under paragraph 8.a. of this Term Sheet; ii) the Delphi HRP credited service recognized in the GM HRP for eligibility to retire under paragraph 8.b. of this Term Sheet; and iii) age at retirement or separation from service from Delphi, or any Delphi operation divested after October 8, 2005, is not eligible for

retirement under the GM HRP as described in paragraph 8.c., 8.d., or 8.e. of this Term Sheet, will receive only a deferred vested benefit from the GM HRP based on the years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet. The Basic Benefit will be based on the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet, age at time of benefit commencement, and the rates in effect under the Delphi HRP as of the date immediately preceding the Effective Date. Additionally, if Delphi does not obtain all required government approvals referenced in paragraph 6 of this Term Sheet and does not otherwise treat a participant as an active participant as described in paragraph 6 of this Term Sheet, such participant will receive only a deferred vested benefit from the GM HRP based on the years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet. The Basic Benefit will be based on the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet, age at time of benefit commencement, and the rates in effect under the Delphi HRP as of the date immediately preceding Effective Date. Neither GM, or the GM HRP, will have any obligation to supplement the deferred vested amounts set forth above.

g) Provided that Delphi complies with its obligations set forth in sections 3, 4, and 5 of this Term Sheet, GM's adherence to the provisions of sections 8.a through 8.f of this Term Sheet shall constitute full compliance with its obligations under section b. of the Benefit Guarantee.

h) For the avoidance of doubt, for the purposes of paragraph 8 of this Term Sheet for Covered Employees who have not retired or separated from service from Delphi, GM, or any Delphi operation divested after October 8, 2005, the GM HRP will continue to recognize the growth in age of such Covered Employees during the period they are considered an active participant in the Delphi HRP pursuant to paragraph 5 of this Term Sheet. For purposes of such recognition of growth in age in the GM HRP, such Covered Employees will not be considered by the GM HRP to have separated from service from GM on a "time for time" basis during the period they are considered an active participant in the Delphi HRP pursuant to paragraph 5 of this Term Sheet.

9) Unless GM and the USW otherwise agree in future bargaining the benefit rate applicable to any service accrued in the GM HRP under paragraph 8.a. of this Term Sheet will be the rate in effect in the Delphi HRP on the Effective Date. Unless Delphi and the USW otherwise agree in future bargaining after the term of the extended 1999 USWA-Delphi Master Agreement, i.e., after September 14, 2011, the benefit rate applicable to service accrued in the Delphi HRP will be the rate in effect under the Delphi HRP on the date immediately preceding the Effective Date.

10) In regard to the triggering of section e. of the Benefit Guarantee as of the Freeze Date, no benefits will be paid pursuant to section e. of the Benefit Guarantee unless Delphi or the Delphi HRP fail to pay pension benefits to Covered Employees as set

forth in this Term Sheet. Any benefits provided pursuant to section e. of the Benefit Guarantee will when combined with any pension benefits received (x) from a pension plan sponsored by Delphi, any of its subsidiaries or affiliates or any of their successor company(ies), (y) from the PBGC, and/or (z) from a pension plan sponsored by GM, result in the retired Covered Employees receiving pension benefits equal to those called for in the USW-Delphi agreement applicable as of the date immediately preceding the Freeze Date.

11) In the event that anytime after the Freeze Date, the Delphi HRP is terminated or Delphi further amends the Delphi HRP in a manner that diminishes the benefits from the Delphi HRP to a level below those required by this Term Sheet, sections b. and e. of the Benefit Guarantee will continue in full force and effect with respect to such subsequent termination and/or amendment, regardless of whether such subsequent termination and/or amendment occurs before or after October 18, 2007.

12) For purposes of determining Base Hourly Rate in the Delphi HRP and the GM HRP for all Covered Employees who are SAP participants, the highest straight time hourly rate plus any cost-of-living allowance in effect during the last 13 consecutive pay periods the Covered Employee actually worked will be utilized. For all other Covered Employees, Base Hourly Rate for purposes of then Delphi HRP and GM HRP will be the higher of Base Hourly Rate calculated (a) on the day preceding the date they transition to employment under new terms and conditions of a USW-Delphi agreement or (b) on the date of retirement. The Delphi HRP and GM HRP benefit class code applied to a Covered Employee who becomes covered by new terms of an USW-Delphi agreement will be no lower than the benefit class code in effect for such employee on the date immediately preceding their becoming covered by such agreement.

13) The parties agree that, except as otherwise mutually agreed by the USW and Delphi after the term of the extended 1999 USWA-Delphi Master Agreement, i.e. after September 14, 2011, Delphi will not amend the frozen Delphi HRP or successor plan to allow for lump sum distributions, to provide a more lucrative benefit formula, or to provide for an expansion of credited service provisions or benefits. Additionally, at no time shall Delphi take such actions at levels exceeding those provided for in the GM HRP as the GM HRP may be amended from time to time, unless all GM and GM HRP obligations under sections b. and e. of the Benefit Guarantee are extinguished.

**OPEB**

14) Pursuant to the Plan and this Term Sheet, as of the Effective Date or as soon as practicable thereafter in accordance with applicable law and administrative requirements (the "Cessation Date"), Delphi will cease to provide, offer, or have any liability for OPEB to its USW represented hourly employees and retirees and their spouses, surviving spouses, dependents or other beneficiaries. The cessation will be administered on a "claims incurred" basis, and Delphi will therefore retain

responsibility for all claims incurred but either unfiled or unpaid as of the Cessation Date. This cessation will include elimination of the Special Benefit relating to Medicare Part B.

15) In furtherance of the Plan and this Term Sheet, the parties agree that Delphi's action to cease providing or offering OPEB on the basis referred to in paragraph 14 of this Term Sheet will trigger sections c. and d. of the Benefit Guarantee as of the Cessation Date as set forth herein. The parties further agree that the scope or manner in which GM satisfies its obligations under sections c. and d. of the Benefit Guarantee and this Term Sheet will not result in OPEB liability to Delphi. The parties further agree that GM will not satisfy its obligations under the Benefit Guarantee and this Term Sheet by reimbursing employees for COBRA continuation premiums.

16) The parties agree to fully cooperate with the efficient transfer of administrative responsibilities from Delphi to GM so that the Cessation Date will be the Effective Date or as soon as possible after the Effective Date, but in no case later than 3 months after the Effective Date (unless mutually agreed to by the parties). The parties further agree that there may be differing Cessation Dates for different portions of post-retirement medical plan benefits depending on the benefit and how quickly administrative responsibilities can be transferred. The parties further agree that the Cessation Date shall not occur unless and until GM is prepared to assume responsibility for all covered claims incurred on and after the Cessation Date, in order to assure a smooth transition of the obligation.

17) In full satisfaction of the GM's obligations under sections c. and d. of the Benefit Guarantee, GM agrees to provide post-retirement medical and employer paid post-retirement life insurance to eligible Covered Employees as described herein. The parties further agree that the Special Benefit described in Article 5 of the USW-Delphi health care agreement is a post-retirement medical benefit as defined in paragraph c.2 of the Benefit Guarantee, and is therefore covered by the Benefit Guarantee and the obligations set forth in the preceding sentence. The parties further agree as follows:

   A. This triggering of sections c. and d. of the Benefit Guarantee shall apply only to Covered Employees :

      i. who as of the Effective Date are retired from Delphi with eligibility for OPEB under the terms of the 1999 Delphi-USWA Master Agreements;

      ii. who as of the Effective Date are eligible to retire from Delphi on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out ) , or for the Home Avenue plant only

(including, but not limited to, those Covered Employees at the Home Avenue plant who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant), as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP, with OPEB under the terms of the 1999 USWA-Delphi Master Agreement in effect on the date immediately preceding the Effective Date; or

   iii.  who when considering all Delphi HRP credited service accrued prior to the Freeze Date and GM HRP credited service obtained pursuant to paragraph 8.a. of this Term Sheet, become eligible to retire on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out), or for the Home Avenue plant only (including, but not limited to, those Covered Employees at the Home Avenue plant who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant), as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the GM HRP, within 7 years of the Effective Date; or

   iv.  who when considering all Delphi HRP credited service accrued prior to the Freeze Date and GM HRP credited service obtained pursuant to paragraph 8.a. of this Term Sheet have ten (10) years of credited service within 7 years of the Effective Date and have attained age 55 within 7 years of the Effective Date.

B.  The parties agree that there is no triggering of sections c. and d. of the Benefit Guarantee for any Covered Employees other than those specifically identified in sub-paragraph A. of this paragraph of the Term Sheet.

C.  All post-retirement medical benefits provided with respect to Covered Employees by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees (provided however that the Covered Employees referenced in paragraph 17.A.(iv) of this Term Sheet, upon their retirement or separation from service from Delphi, GM, and any Delphi operation divested after October 8, 2005, will be treated for OPEB

purposes as if they are eligible to retire). As such GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151),,* on the same basis as such benefits are provided to GM-IUE hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

D. All employer-paid post-retirement Basic Life Insurance benefits provided with respect to Covered Employees by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees (provided however that the Covered Employees referenced in paragraph 17.A.(iv) of this Term Sheet, upon their retirement or separation from service from Delphi, GM, and any Delphi operation divested after October 8, 2005, will be treated for OPEB purposes as if they are eligible to retire) and will be at the level provided for Delphi USW retirees on the date immediately preceding the Effective Date, provided however that in no event shall GM be required to provide benefits to Covered Employees at a level and scope that exceeds that being provided for USW-represented hourly retirees of GM.

E. The parties also agree that, if any Covered Employee other than those specifically identified in sub-paragraph A of this paragraph of the Term Sheet does not return to GM for purposes of retirement under and subject to the terms of the SAP, he or she will be deemed ineligible for OPEB from GM or Delphi. Provided however, that if a Covered Employee meets all of the following conditions: (a) is on an approved Extended Disability Leave of Absence from Delphi as of the Effective Date; (b) cannot become eligible to retire with GM post-retirement medical and employer paid post-retirement life insurance pursuant to paragraph 17. A. of this Term Sheet; (c) has applied for a Total and Permanent Disability retirement under Article II, Section 3 of the Delphi HRP within 7 years of the Effective Date and if approved retires; (d) meets the requirements to retire with GM provided post-retirement medical and employer paid post-retirement life insurance under the provisions of paragraph 17 of this Term Sheet without regard to the reference to "within 7 years of the Effective Date" contained in paragraph 17.A. iii. of this Term Sheet; and (e) has unbroken seniority with Delphi when they retire; such Covered Employee will be treated as a flowback to GM "check the box" only for purposes of post-retirement medical and employer paid post-retirement life insurance. This provision addressing Covered Employees on Extended Disability Leave from Delphi will not apply to any other leave of absence, paid or unpaid, and does not impact any pension provision in this Term Sheet

**General Provisions**

18) It is the intent of the parties that, except as specifically required by this Term Sheet, no employee covered by this Term Sheet can simultaneously receive, earn or accrue credited service, pension contributions, OPEB contributions or eligibility in more than one pension or OPEB plan sponsored or funded by GM, Delphi, a successor company and/or any Delphi operation divested after October 8, 2005, i.e. no "double dip". As a result, the parties agree as follows:

   a) During the period of time a Covered Employee is eligible to accrue credited service in the GM HRP under paragraph 8.a. of this Term Sheet, such Covered Employee will not be eligible to receive Delphi contributions or matching contributions under any Delphi defined contribution pension plan, or receive accruals in or contributions to any other defined benefit or defined contribution pension plan that is established or maintained by Delphi, a successor company or any Delphi operation divested after October 8, 2005;

   b) Neither Delphi, a successor company, nor any Delphi operation divested after October 8, 2005 will provide any payments, contributions or accruals relating to OPEB to any Covered Employee who can attain eligibility to receive OPEB from GM pursuant to paragraph 17 of this Term Sheet; and

   c) Neither Delphi, a successor company, nor any Delphi operation divested after October 8, 2005 will provide any payments, contributions or accruals relating to OPEB to any Covered Employee or other employee who attains eligibility for GM provided or GM funded OPEB through any means.

19) Delphi, GM, and the USW agree to make all collective bargaining agreement, pension, and benefit plan amendments and modifications necessary to implement and comply with the terms contained herein.

20) This Term Sheet shall not be effective unless the confirmation order approving the Plan incorporates and approves all of the terms of this Term Sheet (including the releases provided for herein), does not include terms that are inconsistent with this Term Sheet, and provides that on the Effective Date, the USW, all employees and former employees of Delphi represented or formerly represented by the USW, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, waive and be deemed to have waived any and all claims of any nature, whether liquidated, un-liquidated, contingent, non-contingent, asserted, unasserted, existing and/or arising in the future against Delphi, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising from or related to any obligations of Delphi, GM and/or such employee benefits plans to

provide OPEB or pension benefits, or related in any way to the amendment and freeze of the Delphi HRP, the cessation of Delphi OPEB and the triggering of the Benefit Guarantee; provided however, that claims for benefits provided for under the provisions of this Term Sheet or ordinary course claims by participants and beneficiaries of the GM HRP, the GM Health Care Program for Hourly Employees, the GM Life and Disability Benefits Program for Hourly Employees, Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, arising after the Effective Date based on the denial or miscalculation of benefits under such plans are not waived. The parties acknowledge that Delphi and/or GM may seek additional waivers of other claims, other than ordinary course grievances and workers' compensation claims, in connection with the resolution of its current labor negotiations with the USW. The parties also acknowledge that (i) the consideration provided by GM in this Term Sheet constitutes a substantial contribution to the Plan, (ii) this contribution is necessary to the success of the Plan, and (iii) GM would not have made this contribution without obtaining the releases provided herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

21) Delphi and GM will cause a transfer of pension assets and liabilities from the Delphi HRP to the GM HRP. This transfer is part of the overall Delphi restructuring and is designed to improve the funding level of the Delphi HRP. The transfer will have no effect on accrued pension benefits for employees who either remain in the Delphi HRP or are transferred to the GM HRP. Such transfer will be in an amount agreed to between GM and Delphi and will be conducted in accordance with Section 414(l) of the Internal Revenue Code of 1986, as amended, and Section 208 of the Employee Retirement Income Security Act of 1974, as amended.

   a) Any such transfer will be subject to the Internal Revenue Service ("IRS") ruling issued to Delphi and GM on May 29, 2007 related to the transfer, as may be amended from time to time.

   b) The participants and their corresponding assets and liabilities to be included in the transfer will proceed in the following order to the extent necessary to achieve the amount of the transfer agreed upon by GM and Delphi.

      i) All UAW-represented employees who, before the date of the transfer ("the Transfer Date"), have flowed back to GM from Delphi (retired and active) or IUE-CWA represented employees who return to GM under a flowback or preferential hiring agreement.

      ii) Participants on a proportionate basis by union in any pre-retirement program ("PRP") option offered and selected as part of the UAW-GM-Delphi Special

Attrition Program, the IUE-CWA-GM-Delphi Special Attrition Program, any such Delphi PRP option included in any special attrition program negotiated with the USW, and any other PRP option in a special attrition program implemented prior to the Transfer Date. Within a given union, retired participants will be selected prior to active participants.

iii) Participants on a proportionate basis by union in the MSR option offered by Delphi to Delphi employees (the "Delphi MSR") in the UAW-GM-Delphi Special Attrition Program, the IUE-CWA-GM-Delphi Special Attrition Program, any such Delphi MSR option included in any special attrition program negotiated with the USW, and any other MSR option in a special attrition program implemented prior to the Transfer Date.

iv) The selection of retired or active PRP participants will be based on the highest seniority with Delphi as of the participant's retirement date for retired PRP participants, or the Transfer Date for active PRP participants. The selection of Delphi MSR participants will be based on the highest seniority with Delphi as of the participant's retirement date.

c) Except as otherwise agreed in future bargaining, the benefit payable by the GM HRP relating to the liability transferred to the GM HRP for a participant whose assets and liabilities were transferred will be based on the Delphi HRP rate in effect as of the Transfer Date. To the extent assets and liabilities associated with active flowbacks and PRP participants are included in the transfer, GM will assume the responsibility for recognizing all past and future benefit service for this population under the GM HRP, including but not limited to the payment of any early retirement supplement.

d) After the transfer, the Delphi HRP will not retain any obligations for or relating to the pension liabilities transferred.

22) Nothing in this Term Sheet shall be deemed to prevent the USW and Delphi, after the term of the extended 1999 USWA-Delphi Master Agreement, i.e., after September 14, 2011, from negotiating future changes in pension or other benefits payable to any Covered Employee.

23) The parties have developed a series of examples (the "Examples"), attached hereto as Appendix 1, to show the operation of the provisions of this Term Sheet. The Examples are incorporated herein and made part of this Term Sheet. For the Examples which include individuals whose assets and liabilities are transferred in the 414(l) transfer, the pension benefit amount to be paid from the Delphi HRP will be payable from the GM HRP.

24) In the event a situation involving the pension benefits of a Covered Employee arises that is not addressed by the terms of this Term Sheet or the examples that are a part

of this Term Sheet, the intent of the parties is as follows. The pension benefits provided under paragraph 8 of this Term Sheet when combined with pension benefits payable by Delphi plans and the PBGC will in the aggregate equal the benefits that would have been provided under the terms of the Delphi HRP in effect on the date immediately preceding the Effective Date, assuming the Delphi HRP was not frozen until expiration of a period of 7 years from the Freeze Date. In applying this paragraph all conditions set forth in this Term Sheet continue to apply. Neither GM nor the GM HRP will recognize Mutual Retirements from the Delphi HRP or any extra grants of age or credited service, or other acceleration of retirement eligibility by Delphi or the Delphi HRP, unless specifically agreed to in writing by GM in its sole discretion. Nothing in this paragraph shall expand any obligation under paragraph 8 of this Term Sheet or require GM or the GM HRP to provide more years of credited service to a Covered Employee than are provided for under paragraph 8.a. i and ii of this Term Sheet.

The parties, by their duly authorized officers and representatives, agree accordingly this 16th day of August, 2007.

| United Steelworkers | Delphi Corporation | General Motors Corp |
|---|---|---|

United Steelworkers of
America, Local 87L

| United Steelworkers of America, Local 87L | Delphi Corporation | General Motors Corp |
|---|---|---|
| *(signature)* Wayne C. ___ | | |
| *(signature)* Gary ___ | | |
| *(signature)* Steve Weller | | |
| *(signature)* Earl D. Shepard | | |

**EXHIBIT 4**

**Dean W. Munger**
**Executive Director**

August 16, 2007

Mr. Dennis A. Bingham
President, USW – Local 87L
21 Abbey Avenue
Dayton, Ohio  45417

Dear Mr. Bingham,

Subject:  Future Post-Retirement Health Care Coverage

During recent discussions between GM, Delphi and USW - Local 87L in regard to the Delphi bankruptcy, USW - Local 87L expressed concerns about the post-retirement health care coverage treatment of USW- Local 87L GM retirees after 2011 compared to other GM union retirees given that it no longer bargains with GM or represents GM active employees.

GM understands USW - Local 87L's concerns and provides assurance that future changes to the post-retirement health care benefits for USW - Local 87L retirees and surviving spouses, who are considered GM retirees and surviving spouses and who have retired no later than the date determined in the USW-Local 87L - GM - Delphi Special Attrition Program dated August 16, 2007 ("USW Retirees") will be based on changes to the post-retirement health care benefits for former GM employees who were represented by the UAW who are considered GM retirees or surviving spouses ("UAW Retirees").  Changes to the post-retirement healthcare benefits for USW Retirees will be proportional to the changes to those benefits for UAW Retirees based on the differences between the USW - Local 87L Plan Design Changes dated August 16, 2007 and the UAW Plan Design Settlement Agreement dated December 16, 2005.

Sincerely,

*D.W. Munga (jr)*