Thomas M. Kennedy
Susan M. Jennik
KENNEDY, JENNIK & MURRAY, P.C.
113 University Place, 7th Floor
New York, New York 10003
Telephone: (212) 358-1500
Facsimile: (212) 358-0207

Attorneys for IUE-CWA

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re                                                       :   Chapter 11
                                                            :
General Motors Corporation,                                 :   Case No. 09-50026 (REG)
                                                            :
                                   Debtors.                 :   (Jointly Administered)
                                                            :
------------------------------------------------------------X

### DECLARATION OF JAMES CLARK IN SUPPORT OF
### OBJECTION TO MOTION TO APPROVE SALE

James Clark declares as follows:

1. I am President of the IUE-CWA, a labor organization which represents 41,000 retirees, and their dependents, who worked for General Motors Corporation ("GM" or "the Debtors") and/or its spun off successor, Delphi Corporation ("Delphi"). I worked for GM from 1973 to 1999, and for Delphi from 1999 to 2001. I have been President of the IUE-CWA since 2005.

2. IUE-CWA has represented thousands of workers at GM since 1949 when the IUE was formed. The primary IUE-CWA concentration at GM was in the Packard Electric Division of GM which made electrical auto parts. The IUE-CWA represented other sectors of GM as

well, including at least one assembly plant in Dayton, Ohio at which automobiles were finally assembled and delivered to dealers for sale to customers. By the late 1990's, before the spin-off of the Packard Division to Delphi, IUE-CWA represented 18,000 active GM employees. Until December 23, 2008, the IUE-CWA also represented 4,000 employees at an automotive assembly plant in Dayton, Ohio who did the exact same jobs as UAW represented employees at other GM automotive assembly plants.

3. At all material times, the collective bargaining contracts between GM and the IUE-CWA required GM to provide lifetime retiree medical and life insurance to IUE-CWA represented employees. The availability of lifetime medical insurance was a critical component of the IUE-CWA collective bargaining relationship with GM.

4. In 1999, GM created and spun off Delphi and the IUE-CWA represented employees in the Delphi Packard Division became Delphi employees. Delphi assumed the obligation to provide retiree medical benefits to IUE-CWA members who transferred to Delphi but GM continued to be responsible for retiree medical and life insurance benefits for those already retired, those who retired before the date of January 1, 2000 and for those IUE-CWA represented employees who remained with GM. IUE-CWA and GM also negotiated a benefits guarantee in 1999 under which GM would again become responsible for all of the other post-employment benefits ("OPEB") assumed by Delphi if Delphi defaulted on its obligations with IUE-CWA before October 18, 2007 ("Benefit Guarantee"). A copy of the Benefit Guarantee is attached as Exhibit A.

5. In October, 2005, Delphi filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. *In re Delphi Corp.*, Case No. 05-44481 (S.D.N.Y. RDD). In 2007, in the

course of the Delphi bankruptcy, Delphi, GM and IUE-CWA negotiated a tripartite agreement under which GM acknowledged that the Benefit Guarantee had been triggered and agreed to again assume the obligation for IUE-CWA retirees from Delphi who were eligible for life-time retiree health care benefits and life insurance coverage. A copy of the Term Sheet is attached as Exhibit B.

6.  IUE-CWA has represented the employees at the GM Moraine, Ohio truck plant for many years. In 2007, GM and the IUE-CWA engaged in collective bargaining negotiations for a successor labor agreement. In those negotiations, GM demanded that the IUE-CWA agree to transfer GM's obligations for any retired IUE-CWA members to a retiree VEBA, similar to the VEBA that GM had created in negotiations with the UAW. GM advised IUE-CWA that it would not agree to any increased wages or benefits at the Moraine facility if IUE-CWA did not consent to a VEBA for all IUE-CWA GM represented retirees.

7.  As of December 31, 2007, the IUE-CWA represented approximately 41,000 potential retiree VEBA participants and their dependents, including retired GM and Delphi employees, active GM employees and active Delphi employees.

8.  The IUE-CWA requested that GM agree to pay the professional fees for actuaries and attorneys that would need to be incurred by it to meaningfully participate in VEBA negotiations. On January 31, 2008, GM and IUE-CWA reached an agreement on the payment of professional fees incurred by the IUE-CWA in the VEBA negotiations. IUE-CWA retained the firm of Buck Consultants to assist it in reviewing health plan and retiree census information and in developing a proposal for a retiree VEBA and retained the firm of Kennedy, Jennik & Murray, P.C. to represent it in negotiating a VEBA.

9.  After a series of telephone discussions and emails, representatives of GM and the IUE-CWA met on April 2, 2008 at a meeting in New York City at the GM building. At this meeting GM presented its first full VEBA proposal. GM had calculated the present value of the retiree health obligations owed to IUE-CWA represented employees as $3.2 billion. GM offered to provide $2.265 billion in funding to a VEBA that would assume responsibility for all IUE-CWA GM retiree medical costs as of January 1, 2012. The actuaries retained by IUE-CWA calculated the present value of the retiree health obligations owed to IUE-CWA represented employees as $4.7 billion. IUE-CWA presented a counterproposal for a VEBA that would be funded by GM with $4.3 billion.

10.  On May 13, 2008, Michael Raleigh ("Raleigh"), a representative of GM, and Thomas M. Kennedy ("Kennedy"), an attorney representing IUE-CWA, discussed the VEBA proposal. They discussed the appropriate buyout discount for retiree VEBAs and for the proposed IUE-CWA VEBA. Raleigh conveyed that the IUE-CWA proposal was too high and needed to be less than $3 billion.

11.  The IUE-CWA and GM next met on June 4, 2008 at the IUE-CWA headquarters in Dayton, Ohio. GM proposed a VEBA with funding of $2.433 billion. The IUE-CWA counter proposed a VEBA with funding of $2.75 billion.

12.  On June 30, 2008, Raleigh advised the IUE-CWA by telephone that the GM leadership was not in a position to accept the IUE-CWA proposal and that unless the IUE-CWA accepted the June 4, 2008 offer, GM could not continue the VEBA negotiations.

13.  On October 2, 2008, GM and IUE-CWA met again to bargain over a VEBA. The meeting took place in Detroit, Michigan and included top GM officials Fritz Henderson, Chief

Operating Officer, and Diana D. Trembly, GM's Vice President for Global Manufacturing and Labor Relations. The parties discussed an IUE-CWA proposal to increase the funding for the VEBA to include certain retirees of Delphi who would need health coverage from this VEBA.

14. On October 8, 2008, GM and IUE-CWA met again in New York to complete negotiations on a VEBA. At this meeting, GM and the IUE-CWA agreed upon a VEBA that would be funded with $2.433 billion commencing on January 2, 2012.

15. On October 16, 2008, GM and IUE-CWA entered into an Agreement Regarding Closure of the General Motors Moraine Assembly Plant ("Closing Agreement"). A copy is attached at Exhibit C.

16. On October 22, 2008, Edward Risko, Esq. ("Risko"), the attorney for GM, sent IUE-CWA a draft agreement incorporating the agreements that were finalized at the October 8, 2008 meeting.

17. On November 17, 2008, Risko provided Kennedy with another draft of the VEBA Agreement ("VEBA Agreement"). A copy is attached as Exhibit D. The VEBA Agreement provides for GM funding of approximately $2.5 billion dollars paid out through a combination of cash and a series of payments from 2010 through 2015.

18. On December 2, 2008, GM submitted to the Senate Banking Committee & House of Representatives Financial Services Committee its Restructuring Plan for Long-Term Viability which states at p. 17: "GM agreed with the UAW to shift the liability of paying for health care for hourly retirees from GM to an independent trust (VEBA), scheduled to occur on January 1, 2010. Additionally, GM and the IUE-CWA have recently agreed to a similar arrangement to become effective January 1, 2012, for their retirees." A copy is attached as Exhibit E.

19. On December 10, 2008, Kennedy sent an email to GM accepting the November 17, 2008 draft of the VEBA Agreement and asking GM to provide final copies for signature by the parties. A copy of the email is attached as Exhibit F.

20. After December 10, 2008, IUE-CWA made several inquiries on the status of the finalized VEBA MOU. To its surprise, on January 8, 2009, Risko wrote Kennedy that "given developments towards the end of the last year regarding GM's financial condition, GM is not in a position at this time to finalize the MOU."

21. On January 12, 2009, Kennedy responded:

> I have reviewed our emails and the meetings at which GM and IUE-CWA entered into the agreement concerning the IUE CWA GM VEBA. The VEBA agreement has been ratified by our membership. While we all regret GM's current financial difficulties, they are not a basis for eliminating or modifying this agreement. The terms of the MOU were the subject of hard bargaining as you know. As far as the IUE-CWA is concerned, GM has already finalized the VEBA MOU. Our email exchanges are adequate demonstration of an agreement. The only issue is how and when the MOU will be submitted to the Court for approval and GM has a contractual obligation to be cooperative in this submission. Please contact me to discuss the most expeditious manner to obtain this approval.

A copy of this email is attached as Exhibit G.

22. At no point in the many recurring collective bargaining negotiations between the IUE-CWA and GM over decades, or even in the more recent and tortured tripartite negotiations among GM, Delphi and IUE-CWA during the Delphi bankruptcy, did GM ever contend that the retiree health obligations owed to IUE-CWA members were not vested. The recent actions by GM guaranteeing the OPEB benefits of Delphi and accepting a triggering of that guarantee as part of the Delphi bankruptcy, are utterly inconsistent with an employer that is in any way doubtful of its continuing obligation to provide life-time medical benefits to the IUE-CWA

6

retirees. On September 25, 2008, GM, IUE-CWA and Delphi entered into the Implementation Agreement Regarding 414(l) Transfers, Implementation of Term Sheet, Delphi Pension Freeze and Cessation of OPEB, and Application of Releases ("Implementation Agreement"), in which GM reaffirmed its commitment to continue providing retiree medical benefits by agreeing that the Benefit Guarantee was triggered. A copy is attached as Exhibit H. The Implementation Agreement states:

> Other than as adjusted, conformed or modified by this Implementation Agreement, or as required to carry out this Implementation Agreement, the other terms and conditions of the Delphi HRP or the GM HRP, the Delphi or GM Hourly Health Care Program, the Delphi or GM Hourly Life and Disability Benefits Programs, the Term Sheet, and the Restructuring MOU, and any other agreement between and among the parties involving IUE-CWA-represented employees, retiree, surviving spouse or dependents remain unchanged.

23. Since January, 2009, GM has repudiated the VEBA Agreement that the parties had carefully negotiated throughout 2008. GM has refused to proceed with its December, 2008 VEBA agreement with the IUE-CWA, and has instead entered into an agreement with the UAW that starkly prefers UAW retirees over the similarly situated IUE-CWA retirees. Retirement health and life insurance benefits for UAW represented retirees will be provided by a VEBA funded by the new GM that will receive $10 billion or more in cash, a note for $2.5 billion paying interest at 9%, preferred stock in the new GM paying a dividend of 9% and 17.5% of the shares issued by the new GM with an opportunity to increase that stake to 20% of the new GM.

24. IUE-CWA has repeatedly requested clarification from GM concerning its treatment of IUE-CWA retirees since January, 2009. On May 26, 2009 the attorneys for IUE-CWA sent the following email to the attorneys for GM:

> The IUE-CWA, like the rest of the world, is of course aware of GM's financial problems. Your letter states that "now that GM has reached a tentative settlement with the UAW".

> In fact, as you know, the tentative settlement was reached last week. It is common knowledge that GM will file a Chapter 11 petition on or before June 1, at most 5 days from tomorrow. The negotiations with the UAW spanned months. How is it GM anticipates reaching a consensual agreement with the IUE CWA (not to mention the USWA) in that span of time when GM has not even made a proposal? The IUE-CWA will not allow its members to be treated as second class citizens as far as retiree health care is concerned. They worked just as hard in their decades of employment for GM as any other auto industry workers.
>
> We agreed upon a conference call between the GM and IUE CWA leadership on May 15 in order to understand how, if at all, GM desired to modify the agreement on retiree OPEB that we had previously reached. At that time we were told that the UAW negotiations had not concluded but that an agreement was moving quickly and that GM wanted to sit down with the IUE CWA to reach an agreement "immediately". We set up a meeting in Detroit for May 20. On May 19 we were told that the IUE CWA discussions were on hold because there was no UAW agreement yet. We finally had a conference call on the morning of May 21 in which we were told that no agreement had been reached with the UAW. By noon that day the news was reporting that an agreement had been reached on a VEBA between UAW and GM. In the afternoon of May 21 I emailed GM asking why IUE-CWA had to wait until next week to find out what was being offered by GM. On May 22 I wrote Frank to ask why GM was not making a proposal to the IUE-CWA. We still do not have a proposal at this date and it is clear to us that the strategy is to present to the IUE CWA a last minute take it or leave it proposal that will offer the union no time at all to explore, understand and negotiate any alternatives. These are complex financial issues that cannot be resolved overnight especially since GM has known for months that it would be filing for Chapter 11 if it was unable to reach an accord with its secured creditors. I find it difficult to believe that a mutually satisfactory solution can be reached if GM continues to delay even making a proposal to the IUE CWA. TK

A copy is attached as Exhibit I.

25. On May 27, 2009 a conference call was held between representatives of GM and IUE-CWA. Despite IUE-CWA's renewal of a request for a proposal to protect its retirees, GM stated that it had not been cleared by the Treasury Department to make a proposal regarding IUE-CWA retiree health or life insurance.

26. On June 5, 2009, GM made a proposal to the IUE-CWA to eliminate retiree medical benefits for nearly 60% of the retirees and their dependents who are now entitled to that

8

coverage ("June 5 Proposal"). A copy of this proposal is attached as Exhibit J. The June 5 Proposal eliminates retiree medical benefits entirely to all those over age 65 and those under 65 but eligible for Medicare. The June 5 Proposal also eliminates the Vision and Dental Programs and increases co-pays. Retirees would be required to make monthly contributions to the company to participate in the plan and would be subjected to extraordinarily high deductibles. For a family, the annual required contribution is $3,240 and the annual deductible is $5,000. Thus, a retiree would have to spend $8,000 in a single year before GM made any payment for medical benefits.

27. On June 11, 2009, GM responded in part to the information request that had been made by IUE-CWA in response to the GM offer. The GM response showed that GM's accumulated post-employment benefit obligation for IUE-CWA represented retirees was $2.868 billion as of December 31, 2008. (A copy is attached as Exhibit K.) That total benefit obligation consisted of $2.690 billion in post-retirement health care based on the current benefit plans and $178 million in post-retirement life insurance benefits. The health care benefit obligations were primarily (72%) owed to retirees post-65 years of age. Only 28% of the retiree health care obligations were owed to retirees younger than 65.

28 On a cost to cost basis, the drastically reduced plan of retiree health benefits GM proposed to IUE-CWA in June, 2008 is the equivalent of only 13% of the current plan. All of the post-65 participants are deprived of benefits entirely under the June 5 Proposal. The pre-65 participants have the value of their benefits cut by more than 50% from a value of $746 million to a value of $349 million. The proposal also calls for the elimination of dental and vision benefits which represents another reduction in benefit value of $18.9 million for retiree dental

benefits and $17.8 million in retiree vision benefits. As GM compared the variance between the existing retiree benefits for IUE-CWA represented retirees and the "2010 Plan", GM computed that their proposal reduced retiree benefits to the IUE-CWA represented retirees by $2,435 billion, an astonishing 85% reduction.

29.    If GM is allowed to sell all of its valued assets to the new GM in a transaction in which all of the value to be generated has been already allocated among the UAW, secured bond holders and unsecured bond holders, the IUE-CWA will be unable to defend its interests in any § 1114 proceeding even if it is successful since the old GM will not have any assets with which to provide the promised benefits even if ordered to do so by this Court.

30.    Attached as Exhibit L is an extract from the UAW publication to its new members that describes the agreement the UAW reached in May, 2009, to protect its retirees' health benefits.

31.    Attached as Exhibit M is the SEC 8K filing by GM on May 28, 2009 that describes the proposed 363(b) sale of assets by GM to New GM.

Dated: Dayton, Ohio
       June 17, 2009

_____
JAMES CLARK