UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

GENERAL MOTORS CORP., *et al.*,

Debtors.

CASE NO. 09-50026 (REG)

CHAPTER 11
(Jointly Administered)

---

**LIMITED OBJECTION TO DEBTOR'S MOTION TO APPROVE THE
SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF LIENS IN
ACCORDANCE WITH 11 U.S.C. §363**

The Schaefer Group, Inc. ("*Schaefer*"), a creditor in the above captioned case, by its attorneys, Hiscock & Barclay, LLP, hereby states its Limited Objections to the Debtor's motion to sell purchased assets free and clear of liens:

**Background**

1.   General Motors Corp. (the "*Debtor*") purchased 10 furnaces (the *"Furnaces"*) between 1995 and 2001 which are currently being maintained by the Debtor at its plant in Massena, New York.  The Furnaces were allegedly manufactured by Schaefer.

2.   On April 13, 2006, Jan E. Hondusky ("*Hondusky"*) was injured by the door on one of the Furnaces while performing his duties as an employee of the Debtor.  Hondusky commenced an action against Schaefer on July 29, 2008 in the Supreme Court of the State of New York,  St. Lawrence County.  On February 13, 2009, Schaefer commenced a third-party action for common law contribution and indemnity against the Debtor.  Hondusky's injuries are likely to be determined to meet the "Grave Injury" standard set forth in Section 11 of the N.Y. Worker's Compensation Law.

3. A protective order was issued by St. Lawrence County Supreme Court Justice David Demarest on December 1, 2006, ordering the Debtor to maintain one of the production castlines, which includes two of the Furnaces, including the furnace that Hondusky was allegedly using at the time of his injury. This Order remains in effect. Both paper discovery and a physical inspection of the plant have revealed that the Furnaces were moved and interchanged prior to Hondusky's injury. As of the Petition Date (as defined herein), the Debtor has failed, despite numerous pre-petition demands, to adequately identify the furnace that Hondusky was using at the time of his injury by serial number or another identifier. As such, the manufacturing, repair, reconstruction and maintenance records can not be identified. Further, the furnace door that injured Hondusky has since been removed and placed on one of the other Furnaces at the site and its whereabouts is unknown. Schaefer served a pre-petition demand for inspection of the furnace door that remains outstanding.

4. On June 1, 2009, the Debtor filed voluntary petitions (the *"Petition Date"*) for relief under Chapter 11 of Title 11 of the United States Code (the "*Code*") in the United States Bankruptcy Court for the Southern District of New York (the "*Court*").

5. On June 1, 2009 the Debtor filed a motion pursuant to 11 U.S.C. §§ 105, 363 and 365 (the *"Sale Motion"*). The Sale Motion sought, among other things, an Order approving the proposed sale procedures pursuant to which the Debtor would sell certain of its assets <u>in accordance with</u> the terms of the *"Master Sale and Purchase Agreement"*, a copy of which was attached to the Sale Motion.

6. On June 2, 2009, the Court entered an order setting forth, among other things, the sale procedures for the proposed sale of the assets (the "*Sale Procedures Order*"). Pursuant to

2

the Sale Procedures Order, objections to the sale of the assets, had to be filed on or before June 19, 2009.

## Limited Objection

*Failure by the Debtor to provide referenced schedules identifying assets to be sold:*

7. As indicated above, attached to the Sale Motion at Exhibit "A" was the Master Sale and Purchase Agreement. *See Sale Motion at ¶¶15 et sec.*

8. In turn, the Master Sale and Purchase Agreement outlines and details the proposed sale transaction, and, at Exhibit "F" attached thereto, lists the real property that is excluded from the Sale Motion (the ***"Excluded Real Property"***).

9. The Master Sale and Purchase Agreement further outlines, at Section 2.2(b) the assets which are to be excluded from the sale (collectively the ***"Excluded Assets"***), and states, in part:

> All Personal Property that is (A) located at the Transferred Real Property and identified on Section 2.2(b)(vi) of the Sellers' Disclosure Schedule, (B) located at the Excluded Real Property, **except for those items identified on Section 2.2(a)(vii) of the Sellers' Disclosure Schedule** or (C) subject to a Contract designated as an Excluded Contract (collectively, the "Excluded Personal Property") (*emphasis added*).

2.2(b)(vi).

10. The Sellers' Disclosure Schedule is not a part of the Master Sale and Purchase Agreement, nor is it part of the Court docket. Rather, it is located on a website created by the Debtor to warehouse such documents (the ***"Website"***).

11. The undersigned was able to locate a copy only after speaking with Debtor's counsel.

3

12. The Sellers' Disclosure Schedule, as filed on the Website, **does not contain** the referenced Section 2.2(a)(vii). As such, it is impossible for Schaefer to determine whether the Furnaces and other personal property are included or excluded from the purview of the Sale Motion.

13. Upon determining that Section 2.2(a)(vii) was not filed as part of the Sellers' Disclosure Schedule, the undersigned contacted Debtor's counsel to inquire as to its whereabouts and to further inquire as to how the deadline for objecting to the Motion could be prior to the filing of the referenced material.

14. The undersigned was advised that Section 2.2(a)(vii) of the Sellers' Disclosure Schedule was to have been filed last Friday but was not; and in fact, would not be filed before the objection deadline. Moreover, they were not able to advise what personal property would appear on Section 2.2(a)(vii) when and if it is ever filed.

15. The Debtor's failure to file Section 2.2(a)(vii) renders it impossible for any creditor, but more specifically Schaefer, to determine whether an objection is required in order to protect certain assets from sale.

16. In effect, the Debtor has filed a Motion which says, "we are selling personal property – but, despite stating as part of our Motion that we have identified the property to be sold on Section 2.2(a)(vii) of the Sellers' Disclosure Schedule, we are not going to provide you with that Section nor are we going to tell you what property we are selling. But, if you don't object we will sell the unidentified property free and clear."

17. Debtor has effectively forced every creditor to bear the time and expense to file an objection because the Debtor has, despite representing in its Sale Motion otherwise, failed to provide sufficient information to identify the property to be sold.

4

18.     There simply is insufficient information provided to determine whether Schaefer has an objection to the proposed sale.

**WHEREFORE**, the Schaefer Group Inc. respectfully requests that this Court deny entry of an Order which approves the sale of any personal property until the Debtor provides adequate disclosure identifying the property to be sold, or in the alternative, identifying the personal property to be excluded from the sale, such that the Schaefer Group Inc. has an opportunity to determine whether a further objection is appropriate; and grant the Schaefer Group Inc. any other and further relief this Court may deem proper and just.

Dated: June 19, 2009                                   **HISCOCK & BARCLAY, LLP**

                                                By:    /s/ Susan R. Katzoff
                                                       Susan R. Katzoff, Esq.
                                                       Attorneys for The Schaefer Group, Inc.
                                                       Office & Post Office Address
                                                       One Park Place
                                                       300 South State Street
                                                       Syracuse, New York 13202
                                                       Telephone: (315) 425-2880