FOLEY & LARDNER LLP
Thomas B. Spillane, Jr. (*admitted pro hac vice*)
John A. Simon (*admitted pro hac vice*)
Katherine R. Catanese (*admitted pro hac vice*)
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Technology Investment Partners, LLC*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                                        :    Chapter 11
                                                              :
GENERAL MOTORS CORP., *et al.*,                               :    Case No. 09-50026 (REG)
                                                              :
                                            Debtors           :    Jointly Administered
                                                              :
---------------------------------------------------------------X

### LIMITED OBJECTION OF TECHNOLOGY INVESTMENT PARTNERS TO (1) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND CURE AMOUNTS RELATED THERETO AND (2) SALE OF DEBTORS' ASSETS PURSUANT TO ORDER

Technology Investment Partners, LLC ("Lessor"), by its attorneys Foley & Lardner LLP, hereby submits this limited objection (the "Objection") to the Debtors' assumption and assignment of certain executory contracts and the Debtors' proposed Cure Amounts related thereto and the order approving the sale of the Debtors' assets. In support of its Objection, Lessor states as follows:

### PRELIMINARY STATEMENT

1.      Lessor leases information technology equipment and other personal property to the Debtors (the "Leased Equipment") and has numerous on-going leases with the Debtors.

2.     Upon information and belief, on or about June 5, 2009, the General Motors Corporation ("GM") sent out a Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Real Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Assumption and Assignment Notice"), in which the Debtors designated certain agreements (the "Assumable Executory Contracts") between its suppliers and lessors and the Debtors that may be assumed and assigned to Vehicle Acquisition Holdings LLC (the "Purchaser").

3.     On or about June 11, 2009, Lessor called GM's helpline and was told that the Assumption and Assignment Notice was sent to the Lessor, that the Lessor should have received it, and GM would sent out another Assumption and Assignment Notice.

4.     On June 12, 2009, the Lessor finally received the Assumption and Assignment Notice, which was dated June 5, 2009.

5.     The Assumption and Assignment Notice indicated that any objections needed to be filed "so to be received no later than 10 days after the date of the notice," which would be June 15, 2009 (the "Objection Deadline") even though Lessor did not actually receive the Assumption and Assignment Notice until June 12, 2009.

6.     The Debtors agreed to extend the June 15th deadline, allowing the Lessor until June 19, 2009 to object to the Assumption and Assignment Notice.

**ARGUMENT**

**I.     The Proposed Cure Amount Is Inadequate**

7.     On the website referenced in the Assignment and Assumption Notice, the Debtors assert that the Cure Amount for the Assumable Executory Contracts is $7,796.06.  The Debtors

2

claim that this amount is sufficient to cure all prepetition defaults under the Designated Agreements as of June 1, 2009 (the "Commencement Date").

8.      "Cure Amounts" are defined in the Sale Agreement as "all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by the applicable Seller and assignment to Purchaser of the Purchased Contracts."

9.      The proposed Cure Amount does not accurately reflect all prepetition and post-petition defaults and is, therefore, insufficient.  Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A).  Congress' intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996).  Resolution of claims of default arising under an assumed contract seeks to restore the debtor-creditor relationship to pre-default conditions, thereby bringing the contract back into compliance with its terms. *In re* Wireless Data, Inc., 547 F.3d 484 (2d Cir. 2008).

10.     Debtors must cure all defaults under the Assumable Executory Contracts, including pre-petition defaults and post-petition defaults.  The Debtors' proposed Cure Amount would deprive Lessor of the full benefit of its bargain and would fail to restore the parties to pre-default conditions.

11.     Lessor is attempting to calculate the correct amount required to cure all prepetition and post-petition defaults, and it unable to provide an exact cure amount at this time;

3

however, Lessor asserts that the amount is far greater than the $7,796.06 listed on GM's website. Lessor reserves the right to submit additional amounts to be added to the proper Cure Amount.

### A. The List of Leases that the Debtors Have Designated for Assumption and Assignment Is Neither Correct nor Complete and Should be Corrected.

12. The Debtors have listed only two leases on their website in reference to the Assumption and Assignment Notice.

13. Lessor is attempting to identify and reconcile the leases that the Debtors have listed on their website referenced in the Assumption and Assignment Notice as those that may be assumed and assigned to the Purchaser and will provide a list of theses leases once it is compiled. Given the short timing of the process, Lessor has not been able to fully reconcile these leases. Upon information and belief, the Debtors have not included on the website numerous leases that the Debtors intend to be assumed and assigned. The correct leases should be listed on such website (with attendant Cure Amounts) before Lessor is bound by any assumption and assignment or Cure Amounts with respect to such leases.

14. Lessor further reserves its rights to object to any additional and/or amended notice of assumption and assignment received from the Debtors and/or the Purchaser and to any changes to the information contained on the secure website referenced in the Assumption and Assignment Notice.

### B. The Assumption and Assignment Notice Improperly Allows For the Assumable Executory Contracts to be Assumed Without Payment of the Cure Amount or Adequate Assurance of Prompt Cure

15. Paragraph 8 of the Assumption and Assignment Notice provides in relevant part:

> If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall

4

nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable following resolution of such disputed Cure Amount.

16. The Assumption Effective Date is defined in Paragraph 14 of the Assumption and Assignment Notice as the later of the date proposed by the Debtors, which date may be the Closing or a later date, and "the date following expiration of the Objection Deadline if no Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract."

17. The Assumption and Assignment Notice thus allows for the possibility that that the Assumable Executory Contracts will be assumed and assigned before a dispute as to the proper Cure Amount is resolved.

18. As noted above, Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A).

19. Further, Section 365(f)(2)(A) provides that the trustee may only assign a contract if "the trustee assumes such contract…in accordance with the provisions of this section." 11 U.S.C. § 365(f)(2)(A).

20. The Bankruptcy Code thus unequivocally requires that *before* a contract can be assumed or assigned, any defaults must either be cured or adequate assurance that a prompt cure will be provided must be given. *See, e.g., In re* Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr.

5

S.D.N.Y. 1990) ("[i]f the debtor wishes to assume the [contract] it must first cure the default as required by 11 U.S.C. § 365(b)").

21.     The Assumable Executory Contracts should not be assumed and assigned to the Purchaser unless and until the Debtors or the Purchaser cure any defaults thereunder or give adequate assurance that a prompt cure will be provided.

**II.     Limited Objection to the Order Allowing Sale of Substantially all of Debtors' Assets**

By the Sale Order, the Debtors seek an order to approve the sale of substantially all of their assts (the "Purchased Assets") free and clear of liens, claims, interest and encumbrances, to the bidder making the highest and best offer. The Debtors attached as an exhibit to the Sale Motion a proposed Master Sale and Purchase Agreement, outlining the terms of the sale (the "Sale Agreement"). Section 2.2(a) of the Sale Agreement defines the Purchased Assets as "right, title and interest that Sellers posses and have the right to legally transfer in an to all of the properties, assets, rights, titles and interest of every kind and nature, owned, leased, use or held for use by Sellers."

22.     GM acquired no ownership interest in the Leased Equipment, but merely a right to use, from Lessor and should not be permitted to sell the Leased Equipment.

23.     GM does not have title to the Leased Equipment--only a leasehold interest. Therefore, GM cannot sell the Leased Equipment. GM should only be permitted to assume, assign, or reject the leases with Lessor.

24.     Lessor has been unable to determine if the Sale Order includes the Leased Equipment as part of the Purchased Assets in the upcoming sale. To the extent that the Debtors are seeking to sell any portion of the Leased Equipment, the Lessor objects.

6

25. Section 363(b) of the Bankruptcy Code governs a debtor's ability to sell property outside the ordinary course of business. Under that section, however, a debtor is authorized to sell <u>only</u> "property of the estate." *See* 11 U.S.C. § 364(b).

26. Property of the estate is defined in 11 U.S.C. § 541(a) to include only interests of the debtor in property as of the commencement of the bankruptcy case. Therefore, where a debtor does not hold an interest in property as of the date of the bankruptcy filing, that property cannot include property of the estate. See *In re* Shain, 47 B.R. 309, 314 (Bankr. E.D. N.Y. 1985). Accordingly, Debtors have no right to sell the Leased Equipment.

27. The Debtors may not have any intention of selling the Leased Equipment to the Purchaser. However, in an abundance of caution, the Lessor has chosen to file this limited objection.

28. The Debtors have not identified exactly what property is included in the Purchased Assets. Thus, it is unclear if the Debtors include the Lessor's Leased Equipment as part of the Purchased Assets.

29. Accordingly, the Lessor objects to the extent that the Debtors attempt to assert any ownership interest in the Leased Equipment in the Sale Order.

**RELIEF REQUESTED**

WHEREFORE, Technology Investment Partners, LLC requests that the Court enter an order denying the Debtors' request to assume and assign the Assumable Executory Contracts unless and until Technology Investment Partner's objections are satisfied, enter an order excluding the Leased Equipment from the Purchased Assets, and grant such other and further relief as the Court deems just and proper.

7

Dated: June 19, 2009                             FOLEY & LARDNER LLP

*/s/* John A. Simon
FOLEY & LARDNER LLP
Thomas B. Spillane, Jr. (*admitted pro hac vice*)
John A. Simon (*admitted pro hac vice*)
Katherine R. Catanese (*admitted pro hac vice)*
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Technology Investment Partners, LLC*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                            :     Chapter 11
                                                  :
GENERAL MOTORS CORP., *et al.*,                   :     Case No. 09-50026 (REG)
                                                  :
                         Debtors                  :     Jointly Administered
                                                  :
---------------------------------------------------------------X

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2009, I caused the *Limited Objection Of Technology Investment Partners To (1) Assumption And Assignment Of Certain Executory Contracts And Cure Amounts Related Thereto And (2) Sale Of Debtors' Assets Pursuant To Order* to be served via U.S. Mail on the following at the addresses set forth below:

General Motors Corporation
Attn: Warren Command Center
Mail Code 480-206-114
30009 Van Dyke Avenue
Warren, Michigan 48090-9025

Weil, Gotshal & Manges LLP
Attorneys for the Debtors
Attn: Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq
767 Fifth Avenue
New York, New York 10153

U.S. Treasury
Attn: Matthew Feldman, Esq.
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C. 20220

Cadwalader, Wickersham & Taft LLP
Attn: John J. Rapisardi, Esq.
Attorneys for the Purchaser
One World Financial Center
New York, New York 10281

Vedder Price, P.C.
Michael J. Edelman, Esq.
Michael L. Schein, Esq.
Attorneys for Export Development Canada
1633 Broadway, 47th Floor,
New York, New York 10019

Office of the United States Trustee
Southern District of New York
Attn: Diana G. Adams, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004

Kramer Levin Naftalis & Frankel LLP
Attorneys for the Official Committee of
Unsecured Creditors
Attn: Gordon Z. Novod, Esq.
1177 Avenue Of The Americas
New York, NY 10036

Dated:   June 19, 2009                                              FOLEY & LARDNER LLP

                                                                    */s/* John A. Simon
                                                                    FOLEY & LARDNER LLP
                                                                    Thomas B. Spillane, Jr. (*admitted pro hac vice*)
                                                                    John A. Simon (*admitted pro hac vice*)
                                                                    Katherine R. Catanese (*admitted pro hac vice*)
                                                                    One Detroit Center
                                                                    500 Woodward Avenue, Suite 2700
                                                                    Detroit, MI 48226-3489
                                                                    Telephone: (313) 234-7100
                                                                    Facsimile: (313) 234-2800

                                                                    *Attorneys for Technology Investment Partners, LLC*

10