Sale Approval Hearing Date: June 30, 2009 at 9:45 a.m.
Sale Objection Deadline: June 19, 2009 at 5:00 p.m.

Donn Rosenblum (Pro Hac Vice Pending)
Ohio Assistant Attorney General
Collections Enforcement Section
150 East Gay Street, 21st floor
Columbus, Ohio 43215
Telephone: (614) 728-5754
Facsimile: (877)-591-5768

John Patterson
Ohio Assistant Attorney General
Executive Agencies Section
30 East Broad Street, 26th floor
Columbus, Ohio 43215
Telephone: (614) 728-0468
Facsimile (866) 400-4889

Attorneys for the State of Ohio, Department of Public
Safety, Bureau of Motor Vehicles

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:                                          :        CHAPTER 11
                                                :
**GENERAL MOTORS CORP.,** *et al.*,             :        Case No. 09-50026 (REG)
                                                :
                                                :        **(Jointly Administered)**
                 **Debtors.**                   :
-----------------------------------------------------------------X

**OBJECTION OF THE STATE OF OHIO, DEPARTMENT OF PUBLIC SAFETY,**
**BUREAU OF MOTOR VEHICLES**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

THE STATE OF OHIO, ON BEHALF OF THE OHIO DEPARTMENT OF PUBLIC SAFETY, BUREAU

OF MOTOR VEHICLES ("OHIO"), files this Limited Objection (the "Limited Objection") to Debtors'

Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P.

2002, 6004, and 6006, to (I) Approve (a) the Sale Pursuant to the Master Sale and Purchase

Agreement with Vehicle Acquisition Holdings LLC, a.U.S. Treasury-Sponsored Purchaser, Free

and Clear of Liens, Claims, Encumbrances, and Other Interests; (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Other Relief; and (II) Schedule Sale Approval Hearing (the "Sale Motion") (Dkt. No. 92) and in support there states the following.

**I.  Preliminary Statement**

1.  General Motors Corporation and certain of its subsidiaries (collectively, "GM" or the "Debtors") have abused their bankruptcy-enhanced bargaining power, and forced their dealers to waive State laws designed to protect them from such oppressive acts.  As the U.S Congress acknowledges, the "vast disparity in economic power and bargaining strength" between car dealers and car manufacturers "has enabled the factory to determine arbitrarily the rules by which the two parties conduct their business affairs" and makes "the dealer an easy prey for domination by the factory." S.Rep. No. 2073, 84th Cong., 2d Sess., 2 (1956).  The United States Supreme Court has recognized that States are "empowered to subordinate the franchise rights of automobile manufacturers to the conflicting rights of their franchisees where necessary to prevent unfair or oppressive trade practices." *New Motor Vehicle Board of Cal. v. Orrin W. Fox, Co.*, 439 U.S. 96, 107 (1978).  Indeed, "the federal government and many states enacted motor vehicle franchise legislation to protect motor vehicle dealers from such abuses and essentially change the balance of economic power between these enterprises. In addition to passing restrictions on the bad faith termination of franchises many states also enacted legislation which prevents the oversaturation of a franchisee's market area with additional or relocated dealerships of the same brand. . . . Consequently, today the discretion of an administrative agency serves as a check upon the power of the automobile manufacturer to dictate the terms of the franchise relation." *Men-Guer Chrysler-Plymouth, Inc. v.*

*Chrysler Corp.*, 16 F.3d 1220 (6th Cir. 1994) (dissenting).

2. GM's Participation Agreement is completely counter to the purpose of having state franchise laws. It coerces dealers with less economic power into signing an unfair and oppressive agreement that gives dealers absolutely no protection. It is essential that this court deny GM's attempt to circumvent state regulation and act in contravention to state law and policy behind the existence of state franchise laws.

### *GM to Dealers: Waive Ohio Law or Lose Your Dealership.*

3. Before GM will agree to assume a dealer's franchise agreement, GM insists that the dealer must first "agree" to waive numerous protections in Ohio law. This demand is contrary to federal law that requires a debtor to operate according to state law (28 U.S.C. § 959(b)), and contrary to Ohio law which forbids the waiver of these protections. (O.R.C. § 4517.59 (N)). GM further conditions the assumption of a dealer agreement upon the dealer's consent to jurisdiction in this court regarding the franchise amendment – even though federal law relieves Debtors from liability under the franchise amendment upon discharge (11 U.S.C. § 365(k)), and despite Ohio law which vests exclusive jurisdiction over such disputes in the Motor Vehicle Dealer Board, an independent board which is part of the Ohio Department of Public Safety for administrative purposes. (O.R.C. §§ 4517.31- 4517.32).

### *GM to this Court: Approve our Sale Motion and Preempt Ohio Law*

4. By its Sale Motion, GM seeks this Court's seal of approval for its abusive and oppressive conduct. This Court should not, however, condone GM's strong arm tactics. Instead, this Court should affirm that the relationship between GM and its Ohio dealers is governed by Ohio law, and order that any provision of an amended franchise agreement that is contrary to Ohio law is

invalid and unenforceable.[1] Finally, should this Court approve GM's Sale Motion, the Court should clarify that it is not validating GM's attempt to evade Ohio law by amending its dealer franchise agreements.

**II. Background**

5.      On June 1, 2009 (the "Petition Date"), GM filed voluntary petitions for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or "Code"). On the same day, GM filed its "Sale Motion" which seeks authorization from this Court to sell substantially all the assets of General Motors Corporation and certain of its subsidiaries as a going concern to a "Purchaser" (referred to in the Sale Motion as "New GM" or in other instances, the "363 Acquirer") pursuant to a proposed Master Sale and Purchase Agreement and related agreements (as defined in the Sale Motion, the "MPA"). *See* Sale Motion at p. 2, ¶ 1; p. 8, ¶ 16.

6.      According to the Sale Motion, GM plans to assume certain agreements that are currently in place with many (but not all) of its existing dealers (the "Dealer Agreements"), and to assign those agreements to New GM pursuant to 11 U.S.C. § 365. *Id.* at p. 10, ¶ 19. Before assuming these Dealer Agreements, however, GM requires their modification in accordance with a "Participation Agreement" (explained below). GM has demanded that dealers execute the Participation Agreement (without any changes) if the dealer wants its agreement to be assigned to New GM. *See* Exhibits "A" (cover letter) and "B" (Participation Agreement). This requirement was made quite clear in the cover letter accompanying the Participation Agreement. *See* Exhibit "A" at p.

---

[1] 5.    Other states have similar laws and similar concerns. *See, e.g.*, Donna Harris, "Louisiana says new GM may not get a state business license," AUTOMOTIVE NEWS (June 9, 2009).

1 ("In order for your Dealer Agreements to be assigned to the 363 Acquirer, you <u>must</u> execute the enclosed letter agreement.") (emphasis in original).

7.      The "take it or leave it" ultimatum presents Ohio GM dealers with a classic Hobson's choice: lose the protections of Ohio law, or lose your business. And irony notwithstanding, the Participation Agreement contains an express provision by which each affected dealer "acknowledge(s) that its decisions and actions are entirely voluntary and free from any duress." *See* Exhibit "B," ¶ 9(f). The consequence of not signing the "no-duress" clause would be that the dealer would lose its business. Since distributing its Participation Agreement GM has received numerous complaints from individual dealers, the Ohio Automobile Dealers Association ("OADA"), the National Automobile Dealers Association ("NADA"), and the National Dealer Council. In response, GM agreed to amend certain portions of the Participation Agreement. *See* Exhibit "C." These revisions fail to preserve many important state law protections afforded GM's dealers in violation of both federal and state law.

**III. Argument**

**A.      Federal Law Prohibits GM From Circumventing Ohio Law.**

8.      Acting in its capacity as debtor-in-possession, GM has conditioned its assumption and assignment of Dealer Agreements upon its dealers' waiver of State law rights. Federal law is clear, however, that debtors-in-possession must comply with all applicable state laws. *See* 28 U.S.C. § 959(b). Section 959(b) provides, in pertinent part, that "a debtor in possession shall manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated. . ."[2] As one bankruptcy court has stated, "the mandate of section

---

[2]      GM acknowledges that "[t]he 363 Transaction preserves the value of the Purchased Assets and the benefits that result *from ongoing business operations*" and that "[t]he

5

959(b) . . . prohibits the use of bankruptcy as a ruse to circumvent applicable state consumer protection laws by those who continue to operate in the marketplace." *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 698 (Bankr. E.D. Cal. 1994). Another court has explained: "Implicit in Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business . . . ." *In re Quanta Resources Corp.*, 739 F.2d 912, 919 (3d Cir.1984), *aff'd sub nom., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986).

Citing Section 959(b), the United States Supreme Court has unequivocally stated that "Congress did not intend for the Bankruptcy Code to pre-empt all state laws," and that "Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers." *Midlantic Nat'l Bank*, 474 U.S. at 505. Rather, Congress enacted 28 U.S.C. § 959(b) to prohibit debtors in possession from violating valid state laws. *Id.* As one court explains:

> The purpose of bankruptcy is not to permit debtors or nondebtors to wrest competitive advantage by exempting themselves from the myriad of laws that regulate business. Bankruptcy does not grant the debtor a license to eliminate the marginal cost generated by compliance with valid state laws that constrain nonbankrupt competitors. The Congress has thus required that every debtor in possession and bankruptcy trustee manage and operate the debtor's property and business in compliance with state laws-good, bad, and indifferent-that apply outside of bankruptcy.

*White Crane,* 170 B.R. at 702. In sum, Section 959(b) simply stands "for the uncontroversial proposition that a trustee must carry out his duties in conformity with state law." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 593 (9th Cir. 1993).[3]

---

Debtors, their employees and creditors, and others that rely upon *the Company's continued business* will suffer immediate and irreparable harm if the 363 Transaction is not approved. . . ." *See* Sale Motion at p. 14, ¶¶ 33-34 (emphasis added).

[3] Indeed, Section 959(b) applies in many contexts. *See, e.g.*, *Gillis v. California*, 293 U.S. 62 (1934) (trustee must pay state tax); *Midlantic Nat'l Bank*, 474 U.S. 494 (*aff'g City of New*

6

9. Nonetheless, as set forth below, GM's Sale Motion and its proposed form Participation Agreement together constitute an attempted end-run around important dealer-protection laws that should not be countenanced by this Court.[4]

**B. GM Seeks To Evade Jurisdiction in Ohio.**

10. Under Ohio law, motor vehicle dealers are regulated by the Ohio Bureau of Motor Vehicles (OBMV) and the Motor Vehicle Dealers' Board ("the Board"). The Registrar of the OBMV is vested with the authority to issue and renew licenses for new motor vehicle dealers, as well as prescribe forms and promulgate rules to carry out this responsibility. *See* Ohio Revised Code (O.R.C.) §§ 4517.04, 4517.10, 4517.12.

11. The Board has the sole power to make rules and hear protests filed by dealers regarding franchise agreements with a manufacturer. Relevant sections of the Code provide; "the motor vehicle dealers board may make such reasonable rules as are necessary to carry out and effect its duties under this chapter, . . . and on protests filed under sections 4517.50, 4517.52, 4517.53, 4517.54, and 4517.56 of the Revised Code." O.R.C. § 4517.32 [5]; "the franchisee of the same line-

---

*York v. Quanta Res. Corp.* (*In re Quanta Res. Corp.*), 739 F.2d 912 (3d Cir. 1984)) (environmental laws); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579 (6th Cir. 1990) (landlord's state law duties); *Saravia v. 1736 18th St., N.W., LP*, 844 F.2d 823 (housing code); *Briarcliff v. Briarcliff Tenants Ass'n* (*In re Briarcliff*), 15 B.R. 864 (D.N.J. 1981) (rent control); *In re Synergy Dev. Corp.*, 140 B.R. 958 (Bankr. S.D.N.Y. 1992) (consumer protection); *Wengert Transp., Inc. v. Crouse Cartage Co.* (*In re Wengert Transp. Co.*), 59 B.R. 226 (Bankr. N.D. Iowa 1986) (certificate of public convenience and necessity).

4   The State reserves the right to amend or supplement this Limited Objection to the extent that the Dealership Agreements, Participation Agreements or other applicable agreements subject to the Sale Motion are modified prior to the hearing on the Sale Motion.

5 Referenced sections refer to Ohio Revised Code ("O.R.C."). provisions that grant dealers the right to file a protest and obtain a hearing before the motor vehicle dealers board when a franchisor attempts to add or relocate a dealer within an existing dealer's market area; when a franchisee objects to the reasonableness of a delivery and preparation obligations; when a

make may file with the board a protest against the establishment or relocation of the proposed new motor vehicle dealer." O.R.C. § 4517.50(A); "the reasonableness of the schedule shall be subject to the determination of the board when a franchisee or dealer organization files a notice of protest with the board." O.R.C. 4517.53; "Prior to the effective date of the proposed action, a franchisee receiving written notice from a franchisor proposing to terminate, discontinue, or not renew a franchise may file a protest with the board against the franchisor's proposed action. O.R.C. § 4517.54; and "the franchisee or prospective transferee may file a protest with the board against the franchisor's failure to approve the proposed sale or transfer." O.R.C. § 4517.56.

12.     Contrary to the protections of Ohio law, the Participation Agreement improperly attempts to take subject matter jurisdiction away from the Board and vest this Court with continuing jurisdiction (presumably in perpetuity) over disputes related to the letter agreement. *See* Participation Agreement, ¶ 9(h) (as modified by Exhibit "C," ¶ 7) ("Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this letter agreement.").

13.     In addition to violating the prohibition of Section 959(b), the Participation Agreement's attempt to instill jurisdiction in this Court violates the prohibition against a bankruptcy court's retention of jurisdiction, essentially *ad infinitum*, when such jurisdiction clearly does not exist. *See Concerto Software, Inc. v. Vitaquest Int'l, Inc.*, 290 B.R. 448, 454 (D. Me. 2003) (finding that the court lacked jurisdiction over dispute regarding contract assigned in bankruptcy because "case law provides that an assumption and assignment of an executory contract under section 365 substitutes the assignee for the debtor" and "[p]ursuant to section 365(k), the debtor is then 'relieved

---

franchisor notifies the franchisee of its intent to terminate, cancel, or not renew a franchise agreement; and when a franchisor attempts to block the sale of a franchise by the franchisee.

from any liability for any breach of contract occurring after such assignment.'") (citations omitted). Moreover, "it is a fundamental proposition that parties cannot confer subject matter jurisdiction by agreement." *H & L Developers, Inc. v. Arvida/JMB Partners (In re H & L Developers, Inc.),* 178 B.R. 71, 75 n.6 (Bankr. E.D. Pa. 1994). In sum, upon assignment to New GM, the resolution of any dispute under the Dealership Agreements as modified by the Participation Agreement is a matter that should be resolved in accordance with state law. This is especially true when one considers that, "[t]here is nothing . . . that indicates that (a) state court will be unable to provide adequate relief in this situation." *Concerto Software,* 290 B.R. at 455.

**C.    GM Seeks to Free Itself from Ohio Law Governing Franchise Modification and Termination.**

14.    Ohio law provides that "Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate or fail to continue or renew a franchise except for good cause." O.R.C. § 4517.54 (A). Upon receiving a notice of termination, cancellation, or non-renewal, Ohio law grants the dealer the opportunity to file a protest with the Board, and the Board has the sole authority to determine whether good cause exists. If after a hearing, the Board finds that good cause does not exist, the franchisor is prohibited from terminating, canceling or not renewing an agreement. *See* O.R.C. § 4517.54 (D). Ohio law further supplies guidance as to what and what does not constitute "good cause." Specifically "good cause" does not include: (1) refusal by the franchisee to purchase or accept delivery of new motor vehicles or other inventory; (2) the fact that the franchisee participates in the sale of another line-make of new motor vehicles, and (3) failure to achieve any unreasonable or discriminatory performance criteria. *See* O.R.C. § 4517.55.

15.    Contrary to Ohio law, the Participation Agreement requires dealers to waive their protest rights, as well as any other form of relief that may be available to dealers. *See, e.g.*,

9

Participation Agreement at ¶ 6 ("Release; Covenant Not to Sue; Indemnity"). GM on the other hand retains the ability to terminate its dealers on short notice and without cause of any kind because the Participation Agreement eliminates the only regulatory roadblocks. Specifically, the Participation Agreement requires dealers to purchase an increased amount of inventory, cease all non-GM dealership operations, and increases dealers' sales expectations. *See*, Participation Agreement at ¶ 2, 3, 4. Each of these provisions violates Ohio law, but dealer who breaches these conditions may be terminated under the Participation Agreement.

**D.    GM Seeks to Skirt Ohio Laws Regarding New Vehicle Inventory.**

16.    Ohio law provides that "no franchisor shall . . . coerce, or attempt to coerce, an franchisee to accept delivery of any motor vehicle, parts, accessories, or any other commodities connected therewith which are not ordered by said franchisee . . . ." O.R.C. § 4517.59. The Participation Agreement, however, violates this provision of Ohio law. It states, "[t]o facilitate [the Dealer's] expected increased sales, Dealer shall, upon the written request from the 363 Acquirer, order and accept from the 363 Acquirer additional new Motor Vehicles of the Existing Model Lines to meet or exceed the sales guidelines provided by the 363 Acquirer relating to Dealer's increased sales expectations. . . ." *See* Participation Agreement at ¶ 3.

17.    Dealers are essentially forced to purchase additional inventory regardless of what is actually needed under the guise of increased sales expectations. The fact is that while sales expectations may be increased, actual sales of GM vehicles may not necessarily increase in the amount projected by GM, and dealers will be stuck with additional inventory. It should be noted that GM will receive payment from its dealers for the additional inventory, but the dealers will not recoup their costs until the additional inventory is sold or service is rendered.

**E.    GM Seeks To Deny Ohio Dealers The Right To Market Other Brands.**

18.  Ohio law prohibits a manufacturer from unilaterally deciding that a dealer cannot carry more than one manufacturer's product. "Notwithstanding the terms, conditions, or provisions of any franchise or waiver, the following do not constitute sufficient good cause for terminating or failing to continue or renew a franchise . . . the fact that the franchisee or the owner of any interest, therein, owns, has investment in, participates in the management of, or holds a license for the sale of the same or any other line-make of new motor vehicles." O.R.C. § 4517.55.

19.  Paragraph 4 of the Participation Agreement requires that (1) during the remaining term under the Dealership Agreements, the affected dealers abstain from selling any non-GM vehicles without the consent of GM or the 363 Acquirer (which consent may be granted or withheld by GM or the 363 Acquirer in their sole discretion), and (2) if the affected dealer is currently operating a non-GM dealership on the dealership's premises, the affected dealer must cease such operations on or before December 31, 2009. *See* Participation Agreement, ¶ 4. Further, the Participation Agreement reserves to GM or the 363 Acquirer the ability to terminate the Dealer Agreement if Dealer fails to cease operating any non-GM dealership upon notice of default. This provision is a direct contradiction to provisions in Ohio law which prohibit the waiver of rights and specifically state that termination for this reason is not "good cause."

### F.  GM Seeks to Avoid Ohio Law Regarding Dealer Locations.

20.  Ohio law grants existing dealerships the ability to protest the establishment or relocation of another dealer in the same line-make, if the protesting dealership is located within a ten (10) mile radius of the proposed dealership. In its notice the franchisor must set forth the specific grounds for establishing or relocating operations within the relevant market area, and if a protest if filed the franchisor has the burden of showing the Board that "good cause" exists. *See* O. R.C. §

11

Pg 12 of 16

4517.50. The Code then gives guidance as to what the Board should consider in determining whether establishment or relocation should be denied. For example the Board should consider, whether there is adequate competition and convenient consumer care for motor vehicles of the same line-make and whether the franchisor has complied with the requirements of this chapter. *See* O.R.C. 4517.51.

21. Paragraph 5 of the Participation Agreement, however, prohibits an affected dealer from protesting or challenging before a court or administrative agency the establishment or relocation of a motor vehicle dealership that is at least six (6) miles from the affected dealer's current location. GM's subsequent letter agreement amending the Participation Agreement adds a sentence to Paragraph 5(a) stating that the dealer is not being asked to waive the right to protest an increase in the number of dealerships for the existing model lines in the dealer's "contractual area of responsibility" as determined by GM. *See* Exhibit "C" at ¶ 5. Yet this amendment likewise conflicts with O.R.C. § 4517.50. In a state as large as Ohio, the statutorily-determined protest area is often very different from the manufacturer-determined responsibility area.

**G.    GM Seeks to Limit Ohio Dealers Warranty Claims.**

22. Ohio law provides that: "Each franchisor shall compensate each of its franchisees for labor and parts used to fulfill warranty and recall obligations of repair and servicing at rates not less than the rates charged by the franchisee to its retail customers for like service and parts for nonwarranty work.." O.R.C. 4517.52. No franchisor shall "[f]ail to pay a franchisee within thirty days after approval by the franchisor of any claim by a franchisee for labor and parts made under sections 4517.52 and 4517.53 of the Revised Code." O.R.C. 4517.59 (J). Paragraph 6 of the Participation Agreement, however, requires an affected dealer to waive all claims relating to warranty work except those for reimbursement for transactions occurring within 90 days prior to the date of the Participation Agreement.

**H.     GM Demands That Dealers Waive Their Ohio Rights.**

23.     The entirety of paragraph 6 of the Participation Agreement is at odds with the Prohibited Acts of O.R.C. 4517.59. Section (N) provides that a franchisor cannot require or even request a franchisee to waive any rights in this section.  Since paragraph 6 requires the affected dealers to waive essentially all claims against GM, the 363 Acquirer and others (including any claim that the assignment of the Dealer Agreements by GM to New GM is void, unenforceable or in violation of applicable law) and any claim that GM is taking action against a dealer without following the procedures required by the Revised Code, Ohio dealers are being denied their rights.

**I.     GM's Concept of "Compliance" Conflicts With Ohio Law.**

24.     Paragraph 7 of the Participation Agreement's requirement for dealer compliance with obligations under the Dealer Agreements "as supplemented by the terms of" the Participation Agreement may implicate the Revised Code's requirements for the transfer of a dealership to a new owner pursuant to section 4517.56 (A-G). In addition, subparagraph 7(b)'s agreement not to sue with respect to the rejection of certain existing/outstanding agreements violates sections O.R.C. § 4517.59(N) and 4517.63 of the Revised Code.  Finally, paragraph 7(c)'s requirements for increased floor plan capability and increased sales and inventory expectations violate O.R.C. § 4517.59 (D) which provides that a franchisor cannot demand that a franchisee must increase sales and increase the amount of inventory ordered under the threat of termination of the franchise.

**J.     GM Fails to Act in Good Faith**

25.     Pursuant to O.R.C. 4517.59, "Notwithstanding the terms, provision, or conditions of any agreement, franchise, or waiver, no franchisor shall . . . in acting or purporting to act under the terms provisions, or conditions of a franchise or in terminating, canceling, or failing to renew a franchise, fail to act in good faith." Good faith is defined as "honesty in the conduct or transaction

13

concerned and the observance of reasonable commercial standards of fair dealing in the trade" as defined in O.R.C. 1301.01(S). This definition includes but is not limited to the duty to act in a fair and equitable manner so as to guarantee freedom from coercion, intimidation, or threats of coercion or intimidation. *See* OH Jur Autos § 176   GM's coercive tactics used to force dealers to sign the Participation Agreement, thereby allowing GM to avoid state regulation, and the specific provisions of the Participation Agreement do not add up to acting in good faith. GM has given its dealers two choices: (1) sign away your rights and waive any claim you have against GM, and GM will keep you on as a dealer; or (2) do not sign away you rights and do not waive your legitimate claims against GM, and GM will move to terminate you immediately.     Looking at the supplemental terms, the Participation Agreement grossly favors GM to the detriment of its dealers, it requires dealers to (1) meet increased sales expectations and order and accept additional inventory (*See* Participation Agreement ¶ 1); (2) cease all non-GM Dealership Operations at the Dealership Premises on or before December 31, 2009 (*See* Participation Agreement ¶ 4); (3) waive their right to protest or initiate any action against GM or the 363 Acquirer in the event a new motor vehicle dealership for an existing model line is established or relocated in the dealer's general vicinity (*See* Participation Agreement ¶5 (a)-(c)); and (4) release GM of any claims, demands, obligations, etc. (*See* Participation Agreement ¶ 6 (a)).

26.    On the other hand GM retains all of its rights under the Dealer Agreement and adds new ones in the Participation Agreement, (1) GM or the 363 Acquirer may relocate or establish representation for the sale of an existing model line at a site located in the vicinity of an existing dealership (*See* Participation Agreement ¶ 5(a)); and (2) GM reaffirms the Dealer Agreement provisions that require dealers to indemnify GM from and against any and all claims (*See* Participation Agreement ¶ 6 (b) and (d)). To summarize, if a dealer breaches the terms of the Dealer

14

Agreement or Participation Agreement, GM is entitled to a variety of remedies, including the ability to terminate a dealer agreement. However, there is no remedy for dealers because GM wipes away every law and regulation that ensures GM acts in good faith.

27. Finally, the letters sent by GM are dated June 1, 2009. Initially, the signed Participation Agreements needed to be signed and received by GM by June 12, 2009; this date was later extended to June 15, 2009. By signing the Participation Agreement the dealer agrees that "The parties to this letter agreement have been represented, or have had the opportunity to be represented, by counsel, and have been advised, or have had the opportunity to be advised, by counsel as to their rights, duties, and relinquishments hereunder and under applicable law. In executing this letter agreement, Dealer acknowledges that its decisions and actions are entirely voluntary and free from any duress." *See* Participation Agreement ¶ 9 (f). GM gave its dealers a total of fifteen (15) days to waive their rights or lose their business. This is not a reasonable amount of time for dealers to discuss these options with counsel or consider its alternatives.

**K.    Conclusion**

28. GM's mandatory modifications to its Dealer Agreement unquestionably violate Ohio law and are completely contrary to the purpose of having state franchise laws. The mandatory modifications place unreasonable demands on dealers and eliminate protections provided to dealers under state law. Equally true is that federal law prevents GM from extracting the aforementioned concessions from its dealers. Bankruptcy does not vest GM with the power to thwart both state and federal law, and this Court is duty-bound to ensure that the equitable remedy of bankruptcy is not used to achieve the inequitable result sought by GM.

**IV.  Memorandum of Law**

29.     Ohio submits that the arguments and authorities set forth in this Limited Objection satisfy the requirements of Southern District of New York Bankruptcy Local Rule 9013-1(b).

WHEREFORE, the State of Ohio, on behalf of the Ohio Department of Public Safety, Bureau of Motor Vehicles, respectfully requests that the Court sustain its Limited Objection, and for such other and further relief as it may show itself to be entitled.

Respectfully submitted,

Richard Cordray
Attorney General of Ohio

*/s/   Donn Rosenblum*
Donn Rosenblum (Pro Hac Vice Pending)
Ohio Assistant Attorney General
Collections Enforcement Section
150 East Gay Street, 21st flr
Columbus, Ohio 43215
Telephone:  (614) 728-5754
Facsimile: (877) 591-5768
*donn.rosenblum@ohioattorneygeneral.gov*

John Patterson
Ohio Assistant Attorney General
Executive Agencies Section
30 East Broad Street, 26th flr.
Telephone (614) 728-0468
Facsimile (866) 400-4889
John.patterson@ohioattorneygeneral.gov

Attorneys for State of Ohio,
Department of Public Safety, Bureau
of Motor Vehicles

16