Hearing Date and Time:  June 25, 2009 at 9:45 a.m.
Objection Deadline:  June 19, 2009 at 4:00 p.m.

Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

COUNSEL FOR AD HOC COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            )
In re                                                       )        Chapter 11
                                                            )
GENERAL MOTORS CORP., *et al.*,                             )
                                                            )        Case No. 09-50026 (REG)
                                                            )
                                    Debtors.                )        Jointly Administered
------------------------------------------------------------X

## OBJECTION OF THE AD HOC COMMITTEE
## OF PERSONAL INJURY ASBESTOS CLAIMANTS
## TO DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO §327(A) AND
## 328(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(A)
## AUTHORIZING THE EMPLOYMENT AND RETENTION OF EVERCORE
## GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR
## FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES........................................................................ ii

   A.  What Debtors seek in the Evercore Motion ....................................................1

   B.  Why the Ad Hoc Committee Objects to the Evercore Motion........................3

      (i)  Issues surrounding the reasonableness of Evercore's proposed
         compensation should be examined now.......................................................4

      (ii)  Evercore is being retained to "explore alternatives" for Debtors,
         but according to Debtors, there are no credible alternatives to
         the 363 Transaction.....................................................................................5

      (iii)  If the 363 Transaction is consummated, what will be left of the
         Debtors' businesses and operations for Evercore to "review and
         analyze" that merits the compensation sought in the Evercore
         Motion?.......................................................................................................6

      (iv)  Evercore is being retained to advise, assist and provide financial
         advice to the Debtors in a Restructuring, Financing or Sale
         Transaction, if such is undertaken, and yet the Debtors aver
         that no such event is feasible ....................................................................7

      (v)  Because the 363 Transaction has already been fully negotiated
         and analyzed by Debtors, who seek its prompt approval, the
         proposed $30 million Transaction Fee to Evercore is unreasonable .......8

      (vi)  The Indemnity Provision sought by the Debtors
         is impermissible under the circumstances ..............................................8

   REQUEST FOR RELIEF.................................................................................10

## TABLE OF AUTHORITIES

### CASES

*In re B.U.M. Int'l, Inc.* 229 F.3d. 824 (9th Cir. 2000) ...........................................4

*In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13
    (Bankr. S.D.N.Y. 1991)..............................................................................9

*In Re Mortgage & Realty Trust,* 123 B.R. 626
    (Bankr. C.D. Cal. 1991) ...........................................................................9

*In re N.W. Airlines Corp.*, 400 B.R. 393 (Bankr. S.D.N.Y. 2009).......................8

*In re XO Communications*, 398 B.R. 106 (Bankr. S.D.N.Y. 2008) ..................4, 8

### STATUTES

11 U.S.C. § 330 ....................................................................................................4

11 U.S.C. § 363 ....................................................................................................3

The Ad Hoc Committee of Asbestos Personal Injury Claimants[1] ("the **Ad Hoc Committee**") objects to Debtors' Application for an Order Pursuant to §327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors *Nunc Pro Tunc* to the Petition Date [Docket 954] (the "**Evercore Motion**") on the following grounds:

## A.    What Debtors seek in the Evercore Motion.

The Debtors seek entry of an order authorizing the retention of Evercore Group, L.L.C. and its affiliates ("Evercore") as Debtors' investment banker and financial advisor, to provide investment banking and financial advisory services in connection with "the evaluation and possible implementation of strategic alternatives which may be available to the Debtors" and "approving the terms of Evercore's employment, including the proposed fee structure and indemnification provisions set forth in the GM Engagement Letter," as defined in the Evercore Motion.  Evercore Motion at 2-3.

---

[1] The Ad Hoc Committee of Asbestos Personal Injury Claimants is comprised of William J. Lewis a mesothelioma claimant with a settled but unpaid claim, represented by SimmonsCooper LLC; Maureen Tavaglione, Personal Representative of the Estate of Robert J. Tavaglione, represented by Waters & Kraus; Terry Roth, a lung cancer claimant, represented by Brayton Purcell LLP; Jene Moore, Sr., a mesothelioma claimant represented by Early Ludwick & Sweeney L.L.C.; Edward Levitch, a mesothelioma claimant represented by Paul & Hanley LLP and Kenneth Knight, a mesothelioma claimant, represented by The Lanier Law Firm PLLC.   Asbestos personal injury claimants represented by Cooney and Conway and Steven Kazan, Kazan, McClain, Lyons, Greenwood & Harley, PLC, serve as an *ex officio members*.

1

If the 363 Transaction goes through, the compensation sought by Evercore is:

| | |
|---|---|
| Monthly Fee to May 1, 2011 | $400,000 |
| Monthly Fee after May 1, 2011 | $250,000 |
| Fairness Opinion Fee | $6,000,000 |
| NewCo Transaction Fee | $30,000,000 |
| Financing Fee | $2,500,000 +3% |
| Delphi Fee | $2,000,000 |

The services that Evercore is proposed to provide to Debtors will include: (a) reviewing and analyzing the Debtors' businesses, operations, and financial projections; (b) advising and assisting the Debtors in a Restructuring, Financing and/or Sale Transaction,[2] if the Debtors determine to undertake such transaction; (c) providing financial advice in developing and implementing a Restructuring; (d) assisting the Debtors with Financing; (e) assisting the Debtors with a Sale if the Debtors pursue a sale, including identifying and contacting interested parties and potential acquirers and advising the Debtors in connection with negotiations with potential interested parties and acquirers and aiding in the consummation of a Sale transaction; and (f) rendering a Fairness Opinion to the Board of Directors of the Debtors as to the fairness of the consideration to be paid or received by the Debtors in connection with the 363 Sale Transaction.  Evercore Motion at 5-6.

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed in the Evercore Motion.

B.    **Why the Ad Hoc Committee Objects to the Evercore Motion.**

The Ad Hoc Committee objects to the terms of the retention of Evercore as set forth in the Evercore Motion because the fees that Debtor proposes to pay to Evercore appear excessive and unreasonable for the proposed work involved, in light of the fact that the Debtors concurrently seek the expeditious approval of a §363 sale of substantially all of Debtors' assets.[3]  Specifically, if the Sale Motion is granted and the "363 Transaction", as defined in the Sale Motion, approved, substantially all of the Debtors assets will be sold.  Debtors nevertheless propose to pay Evercore a monthly fee of $400,000 through May 1, 2011, when the fee drops to $250,000 per month; a Fairness Opinion Fee of $6,000,000; a NewCo Transaction Fee equal to $30,000,000; a Financing Fee of $2,500,000 for assisting the Debtors in the restructuring and implementation of DIP financing and 3% of any gross proceeds provided by any financing other than the DIP Financing; and a Delphi Fee of $2,000,000 for advisory services relating to the Delphi case.

The Ad Hoc Committee objects to these proposed fees as not reasonable or justified in light of the fact that the 363 Transaction has been fully negotiated and analyzed, and if approved, then substantially all of the Debtors' assets may soon be sold, rendering it unclear just what it is Evercore will be "analyzing or reviewing" after the Sale.

---

[3] *See* Debtors' Motion Pursuant to Objection of the Ad Hoc committee of Asbestos Personal Injury Claimants to Debtors' Motion to Approve the Sale Pursuant to the Master Sale and Purchase Agreement of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests (the "**Sale Motion**").

Further, the Court should not approve *any* compensation for Evercore until it is clear what, if any, assets will be available for unsecured creditors if the 363 Transaction is approved and consummated.

      (i)    **Issues surrounding the reasonableness of Evercore's proposed compensation should be examined now.**

Because the Evercore Motion proposes that Evercore not be subject to the reasonableness standard of review under Section 330 of the Bankruptcy Code, Evercore Motion at 11-12, the reasonableness of the proposed compensation should be examined at the time of retention. *See In re XO Communications*, 398 B.R. 106, 109 n.2 (Bankr. S.D.N.Y. 2008). As part of that examination, the Debtors or Evercore should be required to disclose who at Evercore will receive how much of the proposed compensation, so that when an Evercore professional testifies in this case the parties will be able to discern whether that witness has an economic interest in the subject of his or her testimony.

Further, in determining whether to approve the retention and proposed compensation, the Court should condition its approval with an express reservation of the court's power to reexamine the compensation structure and compensation amount at any time, specifically reserving the right to approve any fees and expenses for reasonableness and benefit to the estates under 11 U.S.C. §330 and to order disgorgement of any unreasonable amounts. *See In re B.U.M. Int'l, Inc.* 229 F.3d. 824, 829 (9th Cir. 2000). Evercore should also be requested to comply with local rules regarding its fee applications.

**(ii)    Evercore is being retained to "explore alternatives" for Debtors, but according to Debtors, there are no credible alternatives to the 363 Transaction.**

The Debtors seek to retain Evercore in connection with the "evaluation and possible implementation of strategic alternatives that may be available to Debtors." Evercore Motion at 2.   However, in the Debtors' Sale Motion, the Debtors aver that other than the 363 Transaction, there *are* no other alternatives available to Debtors.  In the Sale Motion, Debtors seek to sell "substantially all the Debtors' assets," Sale Motion at 2, and aver that "there have been no credible proposals to purchase or invest in any of the Company's assets or to purchase the Company's total business," and the "363 Transaction" is the only realistic alternative for the Company to avoid liquidation of its assets...."  Sale Motion at 14.

Debtors reaffirm in the Sale Motion that "[a]bsent prompt confirmation that the sale has been approved and that the transfer of the assets will be implemented, it is highly probable that GM will have to liquidate.  There are no realistic alternatives available.  There are no merger partners, acquirers, or investors willing and able to acquire GM's business. Other than the U.S. Treasury and EDC, there are no lenders willing and able to finance the Company's continued operations.  Similarly, there are no lenders willing and able to finance the Company in a prolonged Chapter 11 case."  Sale Motion at 5.  "No debtor in possession financing is available in the absence of the 363 Transaction.  No entity — other than the U.S. Treasury — has the wherewithal or the inclination to provide such financing."  Sale Motion at 6.

Even the U.S. Treasury, which is now GM's largest secured creditor and the sponsor of the Purchaser under the 363 Transaction, "is unwilling to make an open-ended commitment of billions of taxpayer dollars to support a traditional Chapter 11 case — or to sponsor the purchase of what may be left of the Company at the end of such a case." Sale Motion at 6.

Therefore, it is not clear what "investment banking and advisory services in connection with the evaluation and possible implementation of strategic alternatives" Evercore will be performing for Debtors that would merit the compensation that the Evercore Motion sets forth.

    (iii)    **If the 363 Transaction is consummated, what will be left of the Debtors' businesses and operations for Evercore to "review and analyze" that merits the compensation sought in the Evercore Motion?**

If the 363 Transaction is consummated, substantially all of the assets, the businesses and the capital structure of the Sellers will be transferred promptly to a Purchaser.  The Sale Motion provides that: "the 363 Transaction as embodied in the MPA, contemplates that substantially all of the Sellers' assets, including substantially all of the equity interest of their directly-held subsidiaries and joint ventures (other than certain excluded entities) (the "Purchased Assets") will be sold and transferred to the Purchaser, and that certain liabilities of the Sellers (the "Assumed Liabilities") will be assumed by the Purchaser."  Sale Motion at 8.

Therefore, it is not at all evident that what will remain for Evercore "to review and analyze" after a 363 Transaction that justifies the fees proposed in the Evercore Motion.

(iv)    **Evercore is being retained to advise, assist and provide financial advice to the Debtors in a Restructuring, Financing or Sale Transaction, if such is undertaken, and yet the Debtors aver that no such event is feasible.**

As seen above, the Debtors aver in the Sale Motion that there are no credible, realistic alternatives to the 363 Transaction, that absent the 363 Transaction no DIP financing will be available and the Debtors will have to liquidate.  Thus, if the 363 Transaction fails, it is unclear just what Evercore will be doing that merits the high flat fees set forth in the Evercore Motion relating to restructuring, financing or any other sale.

Conversely, if the 363 Transaction is consummated, financing issues already have been resolved in connection with the 363 Transaction.  First, the "U.S. Treasury and EDC will provide a debtor-in-possession credit facility to the Sellers in order to fund operations pending the sale of the Purchased Assets."  Sale Motion at 11.  This pre-sale financing is already the subject of a pending motion of Debtors, and thus appears to have already been fully negotiated.

Second, in connection with the 363 Transaction, provision is already made for the assets left behind in the estates that "sufficient cash is to be made available to GM to fund the wind-down or other disposition of the Sellers' assets."  Sale Motion at 8.

Further, pursuant to a Transition Services Agreement to be entered into in connection with the 363 Transaction, "the Purchaser or one or more of its subsidiaries will provide the Sellers and their respective subsidiaries with certain transition services and support functions, as reasonably required by the Sellers to

7

(i) wind down and liquidate under the Bankruptcy Code and (ii) operate in Chapter 11 prior to liquidation." Sale Motion at 9.

Accordingly, if the 363 Transaction is consummated, financing issues have already been addressed and it is unclear what services Evercore will provide to the estate that justify the fees proposed in the Evercore Motion.

(v)    **Because the 363 Transaction has already been fully negotiated and analyzed by Debtors, who seek its prompt approval, the proposed $30 million Transaction Fee to Evercore is unreasonable.**

The Sale Motion presents a fully negotiated 363 Transaction. Debtor seeks the expeditious approval of the 363 Transaction. Sale Motion at 5. Evercore has evidently already been paid for its pre-petition work. Yet the Evercore Motion seeks to pay Evercore an additional $30 million NewCo Transaction Fee upon the consummation of the 363 Transaction. Evercore Motion at 9. The $30 million fee for a few weeks of post-petition work in connection with the already fully negotiated and pending 363 Transaction is on its face unreasonable. [4]

(vi)    **The Indemnity Provision sought by the Debtors is impermissible under the circumstances**

Pursuant to the terms of the GM Indemnification Agreement, the Debtors propose to "indemnify" and "hold harmless from and against any and all claims,

---

[4] *See In re XO Communications*, 398 B.R. at 112: ("[I]n a prepackaged bankruptcy case, much of the restructuring effort occurs prior to the filing. Therefore, by the time of the retention hearing, there are few unknown facts remaining concerning the financial advisor's contribution to the transaction… Thus, there is less that the parties have to view from a prospective basis in arriving at a determination of the reasonableness of the consideration to be paid."); *see also In re N.W. Airlines Corp.*, 400 B.R. 393, 400 (Bankr. S.D.N.Y. 2009) (denying a "completion fee" to the debtor's financial advisors for work that was in the nature of "general advisory services" that were "remote from the main action" and "carried out in tandem with other estate professionals", and where the financial advisor had "already been well compensated" in the bankruptcy case.).

actions, investigations, or liabilities incurred" by Evercore or any associated Indemnified Person "in performance of their duties hereunder" other than as a result of gross negligence, bad faith or willful misconduct. Evercore Motion at 12. The Debtors further state that such indemnification provisions are "customary" and "reasonable". Evercore Motion at 12.

However, while agreements to indemnify financial advisors employed in a bankruptcy case are not *per se* prohibited, they are to be discouraged because they undermine the Debtors' fiduciary duty to its creditors in the event that the estate would have a claim (*i.e.* an asset) against its financial advisor for negligence in connection with the performance of the advisor's professional duties. Further, such agreements are inconsistent with the idea that financial advisors are being employed on account of their special expertise, and that they will exercise the upmost care in the performance of their duties. *See In Re Mortgage & Realty Trust,* 123 B.R. 626, 630-31 (Bankr. C.D. Cal. 1991) This Court has further observed the following with regard to indemnification agreements:

> Simply stated, indemnification agreements are inappropriate. Moreover, we know that investment bankers carry coverage to protect themselves from malpractice liability. This expense, like professional fees to negotiate a retention, are part of an investment banker's overhead, usually more than adequately covered by a retention fee.

*In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991). Thus, while an indemnification agreement may be permissible where it is part of a retention agreement whose terms are, taken as a whole, both fair and reasonable and in the bests interests of the estate, the retention proposed in the

Evercore Motion is neither reasonable nor in the best interest of the estate, and so the requested indemnity provision is likewise inappropriate.

## REQUEST FOR RELIEF

For all of the foregoing reasons, the Ad Hoc Committee of Asbestos Claimants respectfully requests that the Court deny the Evercore Motion and grant the Ad Hoc Committee such other and further relief to which the Court finds it is entitled.

Dated:  June 19, 2009.

Respectfully submitted,


/s/ *Peter C. D'Apice*

Sander L. Esserman
Robert T. Brousseau
Peter C. D'Apice
Jo E. Hartwick
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas  75201
(214) 969-4900


**COUNSEL FOR THE AD HOC
COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS**