Hearing Date and Time:  **June 25, 2009 at 9:45 a.m.**
Objection Deadline:  **June 19, 2009 at 5:00 p.m.**

Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

COUNSEL FOR AD HOC COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                )
In re                                                           )          Chapter 11
                                                                )
GENERAL MOTORS CORP., *et al.*,                                 )
                                                                )          Case No. 09-50026 (REG)
                                                                )
                                              Debtors.          )          Jointly Administered
-----------------------------------------------------------------X

## OBJECTION OF THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO DEBTORS' MOTION TO APPROVE THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES...................................................................ii

PRELIMINARY STATEMENT..........................................................1

GROUNDS FOR THE OBJECTION ...................................................4

    A. *The Sale Motion purports to prevent present and future asbestos claimants from asserting their state-created rights against the non-debtor New GM, without complying with the statutory requirements of 11 U.S.C. §§ 524(g) and 1129*..............................................4

    B. *While Bankruptcy Code § 524(g) might provide a means of channeling claims away from a successor entity, a sale pursuant to 11 U.S.C. § 363 will not necessarily absolve New GM from legitimate state-law successor liability claims*....................................................9

    C. *Sale of substantially all of General Motors' assets requires heightened scrutiny and will reveal an impermissible sub rosa plan of reorganization*...............................12

    D. *11 U.S.C. § 363(f) does not authorize sales of property free and clear of any interest—only an interest in the particular property sold, i.e., in rem interests*.................................17

    E. *Debtors have not met and cannot meet their burden to demonstrate that the sale of substantially all of their assets as contemplated by the 363 Motion satisfies all the requirements of 11 U.S.C. § 363*.................................18

    F. *Debtors ask this Court to simply forego its integral role in the industrial reorganizations so clearly set out in Chapter 11 of the Bankruptcy Code*.............................................19

REQUEST FOR RELIEF ...................................................................21

## TABLE OF AUTHORITIES

### CASES

*Chicago Truck Drivers, Helper & Warehouse Workers Union*
  *(Indep.) Pension Fund v. Tasemkin, Inc.*,
  59 F.3d 48 (7th Cir. 1995) .......................................................................... 10

*Fairchild Aircraft, Inc. v. Campbell*, 184 B.R. 910, 917-18
  (Bankr. W.D. Tex. 1995), *vacated on other grounds*,
  220 B.R. 909 (Bankr. W.D. Tex. 1998) ....................................................... 17

*In re Am. Hardwoods, Inc.*,
  885 F.2d 621 (9th Cir. 1989) ......................................................................... 8

*In re Adelphia Commc'ns Corp.*,
  359 B.R. 54 (Bankr. S.D.N.Y. 2006) ............................................................. 8

*In re Braniff Airways, Inc.*,
  700 F.2d 935 (5th Cir. 1983),*reh'g denied*,
  705 F.2d 450 (5th Cir. 1983) ....................................................................... 13

*In re Channel One Communications, Inc.*,
  117 B.R. 493 (Bankr. E.D. Mo. 1990) .......................................................... 12

*In re Combustion Engineering, Inc.*,
  391 F.3d 190 (3d Cir. 2005) .......................................................................... 7

*In re Iridium Operating LLC*,
  478 F.3d 452 (2d Cir. 2007) ........................................................................ 13

*In re Lawrence United Corp.*,
  221 B.R. 661(Bankr. N.D.N.Y. 1998)........................................................... 17

*In re Momentum Mfg. Corp.*,
  25 F.3d 1132 (2d Cir. 1994) .......................................................................... 8

*In re Westpoint Stevens, Inc.*,
  333 B.R. 30 (S.D.N.Y. 2005)........................................................................ 14

*Lefever v. K.P. Hovnanian Enters., Inc.*,
  734 A.2d 290 (N.J. 1999)............................................................................. 11

*Sea Harvest Corp. v. Riviera Land Co.,*
    868 F.2d 1077 (9th Cir. 1989) ...................................................................... 7

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996) ...................................................................................... 7

## STATUTES

11 U.S.C. § 105(a) ..................................................................................................... 7

11 U.S.C. § 363 ............................................................................................... 2, 13, 19

11 U.S.C. § 363(b) ................................................................................................... 18

11 U.S.C. § 363(f) .......................................................................................... 17, 18, 19

11 U.S.C. § 524(g) ........................................................................... 2, 4, 6, 7, 8, 12

11 U.S.C. § 1124 ........................................................................................................ 5

11 U.S.C. § 1125 ........................................................................................................ 4

11 U.S.C. § 1125(a) .............................................................................................. 3, 20

11 U.S.C. § 1126 ........................................................................................................ 3

11 U.S.C. § 1129 .............................................................................................. 3, 4, 16

11 U.S.C. § 1129(a)(11) ............................................................................................ 3

## RULES

FED. R. BANKR. P. 9019 ........................................................................................... 16

## SECONDARY AUTHORITIES

2 COLLIER ON BANKRUPTCY ¶ 105.04 ...................................................................... 7

Steve Hargreaves, *GM plant closings: 20,000 job cuts*,
http://money.cnn.com/2009/06/01;news/companies/gm_facilities/index.htm?
postversion=2009060113 .......................................................................................... 3

Summary FAQ on GM's Chapter 11 Filing (June 3, 2009),
http://www.gmreinvention.com/index.php/site/progress_reports/0601_
Viability_SummaryFAQ/ (last visited June 18, 2009) ......................................9

The Ad Hoc Committee of Asbestos Personal Injury Claimants[1] (the

"**Ad Hoc Committee**") respectfully submits this Objection to Debtors' Motion

Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R.

Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) the Sale Pursuant to the

Master Sale and Purchase Agreement with Vehicle Acquisition Holdings

LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims,

Encumbrances, and Other Interests; (B) the Assumption and Assignment of

Certain Executory Contract and Unexpired Leases; and (C) Other Relief (the

"**Sale Motion**").[2]

## PRELIMINARY STATEMENT

The goals of bankruptcy are often laudable: saving jobs, preserving the

viability of the Debtors' business so as to maintain communities. Worthy

ends, however, do not justify a deviation from the numerous and detailed

protections embedded in the Bankruptcy Court to assure that any

modification of creditors' rights is ultimately fair, both in process and in

result. Here, perhaps acceding to political pressures, the Debtors have

---

[1] The Ad Hoc Committee of Asbestos Personal Injury Claimants is comprised of William J. Lewis a mesothelioma claimant with a settled but unpaid claim, represented by SimmonsCooper LLC; Maureen Tavaglione, Personal Representative of the Estate of Robert J. Tavaglione, represented by Waters & Kraus; Terry Roth, a lung cancer claimant, represented by Brayton Purcell LLP; Jene Moore, Sr., a mesothelioma claimant represented by Early Ludwick & Sweeney L.L.C.; Edward Levitch, a mesothelioma claimant represented by Paul & Hanley LLP and Kenneth Knight, a mesothelioma claimant represented by The Lanier Law Firm PLLC. Asbestos personal injury claimants represented by Cooney and Conway and Steven Kazan, Kazan, McClain, Lyons, Greenwood & Harley, PLC, serve as an *ex officio members*.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed in the Sale Motion and/or, as provided in footnote 1 of the Sale Motion, the Master Sale and Purchase Agreement and/or the Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2.

1

allowed themselves to stray beyond the limits established by the Bankruptcy Code.  The proposed sale of substantially all of General Motor's business will impair creditors' rights before they have the opportunity to assess the proposed transaction in the normal context of a disclosure statement and a plan of reorganization and the beneficial negotiation and balloting that are at the heart of Chapter 11.   They are effectively disenfranchised in the name of an "asset sale" under an inappropriate use of Bankruptcy Code §363.  It is the Debtors'  articulated intention to channel all present and future asbestos personal injury claims to Old GM and to shield New GM from "successor liability" claims without complying without the appointment of a future claims representative and the other express requirements mandated by Congress in 11 U.S.C. § 524(g).  In their haste to avoid the democratic requirements of Chapter 11 the Debtors do justice neither to their creditors nor to the Purchaser, who can only truly be protected from "successor liability" by implementation of a properly disclosed and balloted Chapter 11 plan of reorganization.

The Debtors have gone too far in attempting to oust the Bankruptcy Court from its proper role in a Chapter 11 reorganization.  The Debtors have crafted a detailed plan that is a sale in name only:  because it dictates how enterprise value will be allocated and locks in the terms of any conceivable plan that may be filed later, the sale motion constitutes an impermissible "sub rosa" plan of reorganization that would preempt the express provisions

of Chapter 11, especially of Bankruptcy Code Sections 1129, 1125 and 1126.

If the Sale Motion is approved, the Court will have been effectively excluded

from its crucial role in determining the adequacy of the disclosure made to

creditors, for the Sale Motion escapes the Court's scrutiny that is required

under Bankruptcy Code §1125.  The Debtors ask this Court to take their

disclosures at face value, without the finding of adequacy that this Court

must make under §1125.  Whether the  wholesale reorganization of the

Debtors' operating business with its corollary impairment of creditors' rights

is acceptable to creditors will never be known if this Court does not make the

findings required under Bankruptcy Code §1129.  Indeed, this Court is asked

to approve the reorganization of the Debtors' business without making the

finding that Congress requires every bankruptcy court to make before it

permits a "new GM" to exit its protection:  that the court-approved

reorganization is "not likely to be followed by the liquidation, or the need for

further financial reorganization, …unless such liquidation or reorganization

is proposed in the plan."  Bankruptcy Code §1129(a)(11).

General Motors is an operating business.  Unlike Chrysler, it does not

face the threat of an imminent shut-down of its operations, nor does it have a

suitor who threatens to abandon it on short notice.  According to press

reports, its plant shutdown and realignment plans are to proceed over a three

year period.  Steve Hargreaves, *GM plant closings:  20,000 job cuts*,

http://money.cnn.com/2009/06/01;news/companies/gm_facilities/index.htm?

postversion=2009060113.  GM is a public company whose common and preferred shares are trading in the market, demonstrating that there is equity in the enterprise.   There is time to give all stakeholders their day in court, and under such circumstances, the ordinary safeguards of bankruptcy reorganization should not be set aside in the name of expediency.

The members of the Ad Hoc Committee oppose the Sale Motion for the simple reason that it deprives them of their rights under the Bankruptcy Code and their entitlement to the findings of this Court that must be made under Sections 1125, 1129 and 524(g) before their rights may be impaired.

GROUNDS FOR THE OBJECTION

A.  ***The Sale Motion purports to prevent present and future asbestos claimants from asserting their state-created rights against the non-debtor New GM, without  complying with the statutory requirements of 11 U.S.C. §§ 524(g) and 1129 .***

The Sale Motion seeks approval of a transaction in which the "Purchaser," Vehicle Acquisition Holdings LLC ("**New GM**"), does not assume liability for any "Liabilities to third parties for death, personal injury, other injury to Persons or damages to property, in each case, arising out of asbestos exposure[.]"  Master Sale and Purchase Agreement at 29, Section 2.3 (b)(x).

"**Liabilities**" are defined as:

> any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those arising under any Law, Claim, Order, Contract or otherwise.

4

Master Sale and Purchase Agreement at 10.

"**Claims**" are defined to include "all rights, claims . . . investigations,

causes of action, choses in action, charges, suits, defenses, demands . . .

of any kind or nature . . . ." Master Sale and Purchase Agreement at 4.

This might be seen as simply "non-assumption" language, indicating

the liabilities that a purchaser does not wish to assume. But the Debtors'

plan to use the Sale Order to cut off substantive rights goes much farther,

impairing the claims of asbestos creditors within the meaning of Bankruptcy

Code §1124. For example, the proposed order granting the Sale Motion

provides that:

> the Purchased Assets shall be transferred to the Purchaser in
> accordance with the MPA, and, upon the Closing, shall be free
> and clear of all  lines, claims, encumbrances, and other interests
> of any kind or nature whatsoever, including rights or claims
> based on any successor or transferee liability, and all such liens,
> claims, encumbrances, and other interests, including rights or
> claims based on any successor or transferee liability, shall
> attached to the net proceeds of the 363 Transaction in the order
> of their priority, with the same validity, force, and effect that
> they now have as against the Purchased Assets . . . . .

Proposed Order (I) Authorizing the Sale of Assets Pursuant to Master Sale

and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S.

Treasury-Sponsored Purchaser; (II) Authorizing the Assumption and

Assignment of Certain Executory Contracts and Unexpired Leases in

Connection with the Sale; and (III) Granting Related Relief, Exhibit B to the

Sale Motion (the "**Sale Order**"), at 16, ¶7.  The Debtors even contemplate an injunction against the assertion of asbestos claims:

> all persons and entities . . . holding liens, claims, encumbrances and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets . . . are forever barred, estopped, and permanently enjoined from asserted against the Purchaser, its successor or assigns, its property, or the Purchased Assets, such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

Sale Order at 16, ¶8.

That the  Sale Motion seeks to preclude holders of asbestos personal injury claims from asserting those claims against New GM is clear. Master Sale and Purchase Agreement at 10 (defining "Claims") and 29, Section 2.3 (b)(x).  Pursuant to the proposed Sale Order, the Sale Order and the MPA will be "binding in all respects upon all known and unknown creditors."  Sale Order at 15, ¶6.  The Sale Order boldly attempts to enjoin even future unknown claimants without the appointment of a future claims representative required by Bankruptcy Code Section 524(g).   Like present asbestos personal injury claimants, they  would be "forever barred, estopped and permanently enjoined" from asserting such claims against New GM, its successors or assigns, its property or the Purchased Assets.  Sale Order at 17, ¶8.

Section 524(g) of the Bankruptcy Code *expressly* provides a *specific* mechanism by which a debtor's asbestos-related personal injury liabilities are

to be managed in a Chapter 11 proceeding.  The specific requirements of section 524(g) cannot be circumvented by the creative use of other provisions of the Bankruptcy Code.  In *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2005), the Third Circuit considered an appeal of a bankruptcy court order that sought to use section 105(a) of the Bankruptcy Code to extend an asbestos channeling injunction to include third-party actions against non-debtors where the alleged liability was not derivative of the debtor.  After noting that both the plain language of section 524(g) and its legislative history provided no specific authority to extend a channeling injunction to non-derivative third-party actions against non-debtors, the Third Circuit ultimately held that "§ 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237, n.50 (3d Cir. 2005).

In so holding, the Third Circuit stated as follows:

> Because § 524(g) expressly contemplates the inclusion of third parties' liability within the scope of a channeling injunction— ***and sets out the specific requirements that must be met in order to permit inclusion***—the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g).[3]

---

[3] This holding is also consistent with "the well-settled maxim that specific statutory provisions prevail over more general provisions," and the Third Circuit cited to this maxim as support for its conclusion that "the explicit limitations and requirements set forth in § 524(g) preclude the use of § 105(a) to extend application of the trust/injunction mechanism to … [certain] non-debtors." *In re Combustion Eng'g*, 391 F.3d at 237, n.49 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996) (interpreting the "the specific governs the general" canon of statutory construction as "a warning against applying a general provision when doing so would undermine limitations created by a more specific provision"); *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080 (9th Cir. 1989) (Section 105(a) "does not empower courts to issue orders that defeat rather than carry out the explicit provisions of the Bankruptcy Code[.]"); 2 COLLIER ON BANKRUPTCY, ¶ 105.04 at 105-

*Id.* at 236-37 (emphasis added).

In other words, third parties cannot be shielded from asbestos-related personal injury liability by any means other than pursuant to the requirements of section 524(g).

The Sale Order impermissibly purports to shield New GM, a third party, from asbestos-related personal injury liability outside of the exclusive mechanism Congress prescribed for dealing with such claims—11 U.S.C. § 524(g).   If entered, it would deprive claimants of their right to test the adequacy of disclosure and to vote upon a reorganization that affects them. As the Second Circuit Court of Appeals has observed:

> "Full and fair" disclosure is required during the *entire* reorganization process; it begins "on day one, with the filing of the Chapter 11 petition."

*In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (alterations in original) (citations omitted).   Indeed, this Court noted in *Adelphia Commc'ns Corp.*, 359 B.R. 54, 56 (Bankr. S.D.N.Y. 2006):  "The ability to vote on a reorganization plan is one of the most sacred entitlements that a creditor has in a chapter 11 case."  The relief sought by Debtors in the Sale Motion must, therefore, be denied.

---

15 n.5; *In re Am. Hardwoods, Inc.,* 885 F.2d 621, 625-26 (9th Cir. 1989) ("[S]ection 105 does not authorize relief inconsistent with more specific law.")).

**B.**    *While Bankruptcy Code §524(g) might provide a means of channeling claims away from a successor entity, a sale pursuant to 11 U.S.C. § 363 will not necessarily absolve New GM from legitimate state-law successor liability claims*

Courts are divided on whether a sale of assets in bankruptcy precludes claims based on successor liability.   It is counterintuitive to suggest abolishing successor liability where there is a sale of substantially all of the assets of a business, the very situation in which successor liability is most critical to creditors left abandoned by a bulk sale of the company that injured them.   That the "new" company will in fact be the successor to the "old" company is made clear from the Debtors' "Reinvention" website:

> Section 363 permits a company in chapter 11 to sell assets and I some cases substantially all its assets.  GM intends to use that ability to sell the strongest parts of its business to launch a new an successful enterprise.  The purchaser's business will be built upon only the strongest parts of our business—our employees; our best brands (Cadillac, Chevrolet, Buick, GMC), and the plants and other hard assets that those brands rely on; the contracts we need to secure supplies and keep our business moving; and the equity we own in our domestic and global subsidiaries.    The New GM will be led by GM's current management team.

Summary FAQ on GM's Chapter 11 Filing (June 3, 2009), http://www.gmreinvention.com/index.php/site/progress_reports/0601_ Viability_SummaryFAQ/ (last visited June 18, 2009).

The Seventh Circuit cautions against relying on cases that find a purchaser in a bankruptcy sale should be free of successor liability claims:

> To the extent that they suggest a blanket rule, however, these cases are flawed, and the analytic foundation on which they rely contains a number of cracks.  The cases stand for the proposition that it is desirable, perhaps even necessary, to shield purchasers of failing businesses from liability incurred by the predecessors.

> Such protection is viewed as a means of encouraging market growth and the fluidity of corporate capital. Fear of successor liability, this argument runs, would "chill" sales in bankruptcy and as a result harm employees of the failed concern who might have retained jobs with the successor business.
>
> . . .
>
> The second argument raised to preclude successor liability claims following bankruptcy is that the successorship doctrine frustrates the orderly scheme of the Bankruptcy Code by allowing some unsecured creditors to leapfrog over others.

*Chicago Truck Drivers, Helper & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 50-51 (7th Cir. 1995).

The Seventh Circuit found the first argument for protecting purchasers in bankruptcy sales from successor liability unpersuasive as the same argument "pertains equally well to companies nearing the brink of bankruptcy" and saw no reason to accord purchasers in bankruptcy protections unavailable to purchasers of other ailing companies that were not in bankruptcy. *Id.* at 50

Reversing the District Court's decision that the defendant could not be held liable, post bankruptcy, under successor liability theory, the Seventh Circuit noted that what happened to the successor, post-bankruptcy, would have no effect whatsoever on the bankruptcy proceeding—it would not affect the amount of property available for distribution to creditors as that property had already been distributed. *Id.* at 51.

Here, no one can realistically argue that failure to protect a purchaser from successor liability claims would "chill" the sale. The Debtors characterize the 363 Transaction as the "only available means to preserve

and maximize the value, viability, and continuation of the Company's

business and, by extension, preserve and provide jobs for the Company's

employees and others . . . ."  Sale Motion at 2, ¶2.  Because of the "economic

collapse and liquidity crisis," Sale Motion at 3, ¶3, the sale of the Debtors has

been as "chilled" as is possible.  If the Government is willing to invest in

perpetuating the business of GM, it no doubt will take it, warts and all.  It is

not for a Sale Motion to determine which liabilities are to received favored

treatment and which are to be abandoned.  In fact, as the Seventh Circuit

observed in *Chicago Truck Drivers*, successor liability claims asserted against

New GM will have no effect on the distributions made to creditors in this

bankruptcy case—those distributions already will have been made.

State courts also doubt the validity of bankruptcy court attempts to

preclude successor liability.  The Supreme Court of New Jersey affirmed the

decision of a lower appellate court that a claimant was not precluded from

bringing an action based on successor liability against a successor business

enterprise that had acquired a debtor's assets through a bankruptcy sale.

*Lefever v. K.P. Hovnanian Enters., Inc.*, 734 A.2d 290, 327 (N.J. 1999).   In so

holding, the New Jersey Supreme Court found:

> Although the asset purchase agreement between the
> [bankruptcy] trustee and the buyer at the bankruptcy sale
> expressly recites that the purchase "will no assume, undertake,
> acceptor be bound by or response for . . . ay liability or
> obligations of [the debtor and its principal] or their affiliates
> that arise or have arisen prior to the Closing Date," such
> disclaimers are ineffective in insulating the buyer from

11

> successor liability when other principles of law require the
> imposition of liability.

*Id.* at 319.

In *Lefever*, the debtor listed Lefever's claim in its schedules, but did not deal with the claim in the bankruptcy. *Id.* at 320.

Thus, since "successor liability" under state law may arise only upon New GM's assumption of the Debtor's business, this Court cannot guarantee it protection from successor liability, notwithstanding the express language to that effect that is included in the proposed Sale Order. In contrast, if New GM proposes and confirms a plan of reorganization that meets the requirements of 11 U.S.C. § 524(g), it has unassailable protection from current and future asbestos claims. Considering the scope of the Debtors' liabilities and payments to be made to other creditors, such protection could be obtained for a very modest expenditure. A plan of reorganization affording the protections for all parties that §524(g) makes possible can be accomplished within a relatively short period of time.

**C.    *Sale of substantially all of General Motors' assets requires heightened scrutiny and will reveal an impermissible sub rosa plan of reorganization.***

A debtor's sale of substantially all of its assets outside of the structure and requirements of a disclosure statement and plan of reorganization merits greater scrutiny than other sales. *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (such a transaction "must be closely scrutinized, and the proponent bears a heightened burden of proving the

elements necessary for authorization.")  Affording the 363 Transaction the appropriate scrutiny demonstrates that it is a prohibited *sub rosa* plan of reorganization.

A sale of a debtor's assets under 11 U.S.C. § 363 should not be approved if the terms of that sale constitute a *sub rosa* plan of reorganization.

> Under section 363(b) of the Code, "[t]he trustee, after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate."  The trustee is prohibited from such use, sale or lease if it would amount to a *sub rosa* plan of reorganization.  The reason *sub rosa* plans are prohibited is based on a fear that a debtor-in-possession will enter into transactions that will, in effect, "short circuit the requirements of [C]hapter 11 for confirmation of a reorganization plan."

*In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) (citations omitted).

Restructuring of the rights of a debtor's creditors is outside the scope of section 363.  A transaction characterized as a sale of estate property pursuant to section 363 of the Code should not be approved if the transaction has "the practical effect of dictating some of the terms of any future reorganization plan."  *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983), *reh'g denied*, 705 F.2d 450 (5th Cir. 1983).  As the Fifth Circuit noted in *Braniff*, reorganization of the debtor requires that the parties and court comply with the requirements of Chapter 11, including those of disclosure,

voting, meeting the best interests of creditors test and complying with the

absolute priority rule. *Id.*

> The District Court of the Southern District of New York agrees:
>
> Indeed, it is well established that section 363(b) is not to be utilized as a means of avoiding Chapter 11's plan confirmation procedures. Where it is clear from the terms of a section 363(b) sale would preempt or dictate the terms of a Chapter 11 plan, the proposed sale is beyond the scope of section 363(b) and should not be approved under that section.

*In re Westpoint Stevens, Inc.*, 333 B.R. 30, 52 (S.D.N.Y. 2005).

The district court in *Westpoint Stevens* found that the 363 sale at issue

impaired the claim satisfaction rights of objecting creditors and was an effort

to overcome anticipated objections to an attempt to cram down an equity

based plan; the court rejected such an attempted use of sections 363(b) and

105. *Id.* at 54.

However, as with the transactions found to be impermissible *sub rosa*

plans in *Braniff* and *Westpoint Stevens*, the 363 Transaction restructures the

rights of creditors. For example, as previously noted, the proposed Sale

Order alters creditors' rights by purportedly precluding successor liability

claims against New GM. Although Chapter 11 provides a means for altering

objecting creditors' rights, that alteration must occur through the plan

confirmation process, not pursuant to a section 363 sale. *See Westpoint*

*Stevens*, 333 B.R. at 34.

The 363 Transaction here allocates the enterprise value of GM to pay

the claims of certain favored creditors without the "inconveniences" of

14

disclosure, solicitation or voting.  For example, pursuant to the terms of the
Master Sale and Purchase Agreement, the holder of the largest secured,
noncontingent claim against the Debtors in the approximate amount of
$20,573,000,000[4], the United States Treasury, will credit bid the amount
owed by General Motors Corporation (**"GM"**) to the United States Treasury
under a Loan and Security Agreement dated December 31 2008 and certain
promissory notes issued by GM to the United States Treasury as additional
compensation for the extensions of creditor under that Loan and Security
Agreement.  In exchange for that bid and other components that constitute
the purchase price, New GM—Vehicle Acquisition Holdings LLC, a purchaser
sponsored by the United States Treasury—will acquire substantially all of
the assets of the Debtors.  Sale Motion at 9, ¶18.

Similarly, the International Union, United Automobile, Aerospace and
Agricultural Implement Workers of American (the "**UAW**") receives "favored
creditor" treatment.  The UAW is the holder of one the largest unsecured
claims against the Debtors in the amount of $20,560,000,000.[5]  Pursuant to
the Master Purchase Agreement and upon approval of the UAW Retiree
Settlement Agreement by the Court, New GM has agreed to provide 17.5% of
New GM's total outstanding common stock, a note from New GM in the
principal amount of $2.5 billion, shares of cumulative perpetual preferred

---

[4] Schedule 3 to the Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2, Consolidated List of Holders of 5 Largest Secured Claims.

[5] Schedule 2 to the Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2, Consolidated List of Holders of 50 Largest Unsecured Claims (Excluding Insiders).

stock of New GM in the amount of $6.5 billion, warrants to acquire 2.5% of

New GM's equity and the assets held in a VEBA sponsored by Sellers and to

be transferred to New GM for the New VEBA which will fund certain retiree

benefits for retirees represented by the UAW.  Sale Motion at 11-12, ¶26.

Just as the United States Treasury's claims are paid outside the

structure and attendant requirements of a plan of reorganization, the UAW

Retiree Settlement Agreement is to be approved as "part of the 363

Transaction," not as part of a plan of reorganization pursuant to Section 1129

or pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.  Sale

Motion at 11, ¶26.

If the 363 Transaction is approved, the Debtors are locked into a

liquidating plan.  In fact, according to the Debtors, assets excluded from the

363 Transaction "will be administered in the chapter 11 cases" and sufficient

cash will be made available to GM "to fund the wind-down or other

disposition of the Sellers' [remaining] assets."  Sale Motion at 8, ¶ 16.

Because the 363 Transaction, if approved, will dictate how the Debtors'

enterprise value is allocated and will lock the Debtors into a liquidating plan,

it is a *sub rosa* plan of reorganization.  For that reason, the Sale Motion

should be denied.

16

**D.      11 U.S.C. § 363(f) does not authorize sales of property free and clear of any interest—only any interest in the particular property sold, i.e., in rem interests.**

Section 363 of the Bankruptcy Code allows the sale, in certain circumstances, of property of a debtor-in-possession "free and clear of any interest in such property."   11 U.S.C. § 363(f).  The Second Circuit has not determined what an "interest" in property is within the meaning of Section 363(f).  *In re Lawrence United Corp.*, 221 B.R. 661, 668 (Bankr. N.D.N.Y. 1998).

Other courts, however, have found that *in personam* claims are not included in the phrase "any interest in such property" as that phrase is used in Section 363(f):

> Section 363(f) does not authorize sales free and clear of *any interest*, but rather of *any interests in such property*.  These three additional words define the real breadth of *any interests*. The sorts of interests impacted by a sale "free and clear" are *in rem* interests which have attached to the property.  Section 363(f) is not intended to extinguish *in personam* claims.  Were we to allow "any interests" to sweep up *in personam* claims as well, we would render the words "in such property" a nullity.  No one can seriously argue that *in personam* claims have, of themselves, an *interest in such property.*

*Fairchild Aircraft, Inc. v. Campbell*, 184 B.R. 910, 917-18 (Bankr. W.D. Tex. 1995), *vacated on other grounds,* 220 B.R. 909 (W.D. Tex. 1998).

Because holders of asbestos-related personal injury claims (and other tort claims) have *in personam* claims, the property cannot be sold free and clear of their claims, including successor liability claims.  Section 363 does not provide the Court with authority to order that:

17

> Effective upon the Closing and except as otherwise provided by stipulation filed with or announced to the Court with respect to a specific matter, all persons an entities are forever prohibited an enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceedings against the Purchase, its successors and assigns, or the Purchased Assets, with respect to any (i) Claim other than Assumed Liabilities, or (ii) successor or transferee liability of the Purchase for any of the Debtors . . . .

Sale Order at 24, ¶28.

> Similarly, Section 363 does not authorize the Court to order that:

> [T]he Purchaser shall have no successor, transferee, or vicarious liabilities of any kind or character . . . .

Sale Order at 25, ¶29.  Accordingly, the Sale Motion should be denied.

### E.    *Debtors have not met and cannot meet their burden to demonstrate that the sale of substantially all of their assets as contemplated by the 363 Motion satisfies all of the requirements of 11 U.S.C. § 363.*

As the Debtors acknowledge, a sale pursuant to 11 U.S.C. § 363(b) can be "free and clear of any interest in such property of an entity other than the estate" only if one of the five conditions set forth in 11 U.S.C. 363(f) is satisfied.  11 U.S.C. § 363(b) and (f).  Those conditions are:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which property is to be sold is grater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable
proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

According to the Debtors, if a specific lien, claim, encumbrance or other

interest does not satisfy the consent requirement of 11 U.S.C. § 363(f)(2),

"such lien, claim, encumbrance or other interest will be adequately protected

by attachment to the net proceeds of the sale. . . ." **Memorandum of Law in**

**Support of Sale Motion**[6] at 19.

The Debtors' fifty largest unsecured claims exceed $500 billion.  It is

inconceivable how those and other unsecured claims like those of asbestos

personal injury claimants can be adequately protected by attachment to the

net proceeds of the contemplated sale.

F.    *Debtors ask this Court to simply forego its integral role in the
industrial reorganizations so clearly set out in Chapter 11 of the
Bankruptcy Code.*

It may be pertinent to ask what remains of Chapter 11 if the Debtors

view of the breadth of Section 363 is correct.    What becomes of the

requirements of adequate disclosure" if a sale under Section 363 can be used

to reorganize an industrial giant with numerous creditor and equity

constituencies without a court ever having determined that the affected

creditors have received the type of information that is generally needed for

---

[6] Memorandum of Law in Support of Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (g), (k), (m)
and 365, and Fed. R. Bankr. P. 2002, 6004 and 6006 to (I) Approve (A) the Sale Pursuant to the Master
Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored
Purchaser, Free and Clear of Liens, Claims, Encumbrances and Other Interests; (b) the Assumption and
Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (III)
Schedule Sale Approval Hearing [Doc. No.  ].

intelligent decision-making?  It is impossible on a fair reading of the Motion and the Master Sale and Purchase Agreement by an ordinary creditor to determine the value of the assets being transferred out of the Debtors and the value of the assets being retained in the Debtors.  The documents are similarly opaque as to what the likely recovery to unsecured creditors will be if the sale goes forward.  One cannot discern what releases, if any, are given, or to whom.  Is this opacity what Congress intended when it required that a debtor disclose "adequate information" to its creditors before impairing their rights?  11 U.S.C. §1125(a).

Are bankruptcy courts to have no role in determining whether the elaborated protections of fair and equitable treatment in Bankruptcy Code §1129 are made irrelevant by a politically expedient "sale" to a hastily manufactured "purchaser"?  Is a court under a Section 363 sale motion really in any position to make the feasibility findings that courts take so seriously as their final pronouncement on the success or failure of a reorganization under their supervision?

The seriousness of these questions for the institutional integrity of the bankruptcy process suggest that the Motion should be denied, without prejudice to the Debtors refiling it as a plan of reorganization for General Motors Corporation.

## REQUEST FOR RELIEF

For all of the foregoing reasons, the Ad Hoc Committee of Asbestos

Claimants respectfully requests the Court to deny the Sale Motion and to

grant it such other and further relief to which the Court finds it is entitled.

Dated:  June 19, 2009                    Respectfully submitted,


                                         /s/ *Peter C. D'Apice*

                                         Sander L. Esserman (Admitted *pro hac vice*)
                                         Robert T. Brousseau (Admitted *pro hac vice*)
                                         Peter C. D'Apice
                                         Jo E. Hartwick (Admitted *pro hac vice*)
                                         STUTZMAN, BROMBERG,
                                         ESSERMAN & PLIFKA,
                                         A Professional Corporation
                                         2323 Bryan Street, Suite 2200
                                         Dallas, Texas  75201
                                         (214) 969-4900


                                         **COUNSEL FOR THE AD HOC
                                         COMMITTEE OF ASBESTOS
                                         PERSONAL INJURY CLAIMANTS**