UNITED STATES DISTRICT COURT
for the
Western District of Washington

# C09-5352 KLS

CLINTON M. TULLIS AND MARGARET L. TULLIS
and the palimony relationship thereof as Pro Se

    Plaintiffs

GENERAL MOTORS CORPORATION  and
CORNFORTH-CAMPBELL DEALERSHIP THEREOF

    Defendants

Case No. 08-2-04475-0

Civil Action

COMPLAINT

---

Come now, the Plaintiffs/Complainants representing themselves as Pro-Se, and for causes of action against the above named Defendants, hereby alleges as follows: *continuance of this case* *Superior court* *this case is removed from Pierce county Superior court* *1. to Federal court June 15 - 2009*

## PARTIES AND STATUS OF DEFENDANTS

1.1. At all times material hereto, Pro-Se Plaintiffs/Complainants, Clinton M. Tullis and Margaret L. Tullis

for more than "fifty three years" have been in total companionship.

1.2. Plaintiffs have resided at 16300-184th Ave., SE, city of Renton, County of King, State of Washington,

zip code: 98058-0903 since October of 1991 and within the State of Washington since 1954.

1.3. The No.2 conspiring Defendants are believed to be, and therefore alleged to be, all doing business

and officially responsible of performance of Cornforth-Campbell GMC Dealership, located at 400 Valley

Avenue N.E.;  PO Box 537; city of Puyallup, County of Pierce, State of Washington, zip code: 9 8 3 71.

1.3a. No.1 conspiring Defendants believed to be and therefore alleged to be General Motors Corporation,

PO Box 33172 in the city of Detroit, State of Michigan 48232-5172. Service request No.71-537248-740;

UNITED STATES DISTRICT COURT
for the
Western District of Washington

CLINTON M. TULLIS AND MARGARET L. TULLIS
and the palimony relationship thereof as Pro Se

Plaintiffs

GENERAL MOTORS CORPORATION   and
CORNFORTH-CAMPBELL DEALERSHIP THEREOF

Defendants

Case No. 08 – 2 – 04475 – 0

Civil Action

COMPLAINT

*continuance of this case*

*this case has been removed from Pierce County Superior Court.*

Come now, the Plaintiffs/Complainants representing themselves as Pro-Se, and for causes of action against the above named Defendants, hereby alleges as follows:

I.
## PARTIES  AND STATUS OF DEFENDANTS

1.1. At all times material hereto, Pro-Se Plaintiffs/Complainants, Clinton M. Tullis and Margaret L. Tullis

for more than "fifty three years" have been in total companionship.

1.2. Plaintiffs have resided at 16300-184th Ave., SE, city of Renton, County of King, State of Washington,

zip code: 98058-0903 since October of 1991 and within the State of Washington since 1954.

1.3. The No.2 conspiring Defendants are believed to be, and therefore alleged to be, all doing business

and officially responsible of performance of Cornforth-Campbell GMC Dealership, located at 400 Valley

Avenue N.E.;  PO Box 537; city of Puyallup, County of Pierce, State of Washington, zip code: 9 8 3 71.

1.3a. No.1 conspiring Defendants believed to be and therefore alleged to be General Motors Corporation,

PO Box 33172 in the city of Detroit, State of Michigan 48232-5172. Service request No.71-537248-740;

COMPLAINT  -  1

Phone No. 1-866-790-5700: Addressed to: General Manager.

**1.3b. Conspiracy:** A combination of two or more persons, etc. to commit a criminal or unlawful act or to commit a lawful act by Criminal or Unlawful Means; or a Combination of two or more persons to accomplish an unlawful purpose, or some purpose not in itself unlawful by an unlawful means.

**1.3c. Accessory:** One who aids or contributes in a secondary way or assists in or contributes to crime as a subordinate. See 216So. 2d 829,831 The failure to report the commission of a crime of a felony is sometimes itself a crime. An accessory does acts which facilitate others in commission or attempted commission of Crime or avoid apprehension for a crime.

**1.3d. COMPLICITY: Accomplice:** An individual who voluntarily engages with another in the commission or attempted commission of a crime. See 165 N.E. 2d 814; One who is liable for the identical offense charged against the Defendant, See 233 p2d 347, Liability is shared.

**1.3e. Criminal Liability:** of a Corporation: RCW 90.08.030.

**1.3f. Criminal Negligence:** A Person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.

1.4. All acts performed or denied to be performed of or by the Defendants to Plaintiffs as complained of

herein were committed by Employees or Officials of the Agency Dealership of Cornforth-Campbell,

backed by Mr. Good-wrench advertisements and responsibility of General Motors Corporation.

**1.4a. Vicarious Liability: imputation of Liability of one person for actions of another.**

1.5. All of the above acts along with the following in this brief; applied to various notifications of deliberate

neglect and or consequences of which, were performed and jointly responsible by the Defendants.

1.5a. Plaintiffs have incorporated exhibits with the Brief that make declarations and assurances for

perfected conditions of Plaintiffs Suburban purchased from the GMC Mr. Good Wrench affiliated Agency

of Cornforth Campbell and those declarations and assurances were absolute conspired lies not

becoming to supervision or affiliates inclusive of General Motors Corporation.

1.6. All acts of Plaintiffs/Complainants shall be referred to by the use of either phrase, of which we will

primarily apply singularly as Plaintiffs from hereon.

1.6a. All highlighted references to Plaintiffs designated and numbered Complaints in this brief, etc. are

facts of applicable laws resulting and explained as read from Black's Law Dictionary, Eighth edition, by

Bryan A. Garner, Editor in Chief; Purchased from Thompson - West Law and of which Plaintiffs also

coincide with the second edition of Steven H. Giffis, Professor of Law: Rutgers; The State University of

New jersey, School of Law, Newark; edited by Barron's Educational Series Inc. , Woodbury, New York;

London; Toronto; Sydney; and inclusive of Plaintiffs research at the King County Regional Justice

COMPLAINT -= 2

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th ave S E Renton, WA 98058-0903

Center Library, located in the city of Kent, Washington.

1.6a. The terms as produced and interjected to Plaintiffs by Defendants, are high-lighted in this brief, primarily intended to implement the benefit to a jury for the introduction to and fully qualifying the Criminal Infractions of Defendants in this case.    **Infractions: Breach, Violations**

1.6b. Thus, Defendants have created a series of Special Proceeding injuries, resulting in Unlimited Damages to Plaintiffs that cannot be denied.

## II. COMPLAINT AND CAUSE OF ACTION

2.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1 through 1.6b. herein.

2.2. Defendants Cornforth-Campbell; An affiliated General Motors Corporation Agency-Dealership, negotiated a sale to Plaintiff's on June 4, 2003, of a 1999 GMC 4 wheel drive Suburban.

2.3. The GMC Corporation, Agency Dealership of Cornforth-Campbell afforded Plaintiffs with: A General Motors Corporation High-lighted Advertisement of Mr. Good-Wrench, as a declaration of reliable Service, to be provided by the Agency personnel. **Subornation of perjury. Exhibit # 1: [Mr. Good Wrench]**

**2.3a. Perjury: Any False Swearing in a legal Instrument or legal setting that the Suborner knew or should have known that such oath or testimony would be false. A CRIME**

2.3b. This was an Egregious, Erroneously and Conversely implied sales pitch with questionable power of which the Agency: Cornforth-Campbell denied responsibility to comply. **To Define: See # 2.7a below.**

2.3c. This created Injury's to Plaintiffs that were performed or lacked performance as to be brought forward and explained within this Brief of Plaintiffs; verified by available exhibits and high-lighted copies of various Rules as explained within the above mentioned Law Book Dictionary's in compliance with rules afforded Plaintiffs by West Law on the 2007-2008 Rules of Courts within the State of Washington.

2.3d. Laws applicable to Defendants Performance and Criminal neglect.

2.4. Defendant Cornforth - Campbell issued an assurance as GMC with a logo heading of Nice is Better and as a "Quality Pre-owned Vehicle" with following assurances: 1. This Vehicle Has Passed A Rigid Inspection; 2. Has Been Reconditioned To The Highest Standards.    **Fraud in Fact: Exhibit # 2 & Exhibit # 9**

**2.4a. Fraud In Fact; Positive Fraud: Fraud: Willful Malicious Conduct: cannot take bankruptcy or find other means to hide values. Fraud embraces all the human ingenuity one can devise to get an advantage over another.**

2.4b.
**Abuse of Process: Fraud: Intentional deception resulting in injury to another and Derivative Tort: An action in Tort based on the criminal conduct of defendants which resulted in injury's to**

COMPLAINT - 3

**Plaintiffs, and for which injury's Plaintiffs seek compensation. The term also applies to liability imposed on the principal for wrongs committed by his agent.**

2.5. Defendants positively breached their Warranty and commitment disclosures of perfected conditions of the Suburban in general                                                                 **Exhibit # 2**

2.6. Defendants were informed and ignored the vehicle was to be used pulling a Recreational Trailer, 30 foot plus in length, owned by Plaintiffs, that weighed approximately 7,000 pounds (31/2 tons) unloaded.

2.7.The Defendants egregiously perpetrated to Plaintiff's of the GMC Suburban 4 wheel drive vehicle being in excellent, stable condition throughout. **Deceit: The Tort of Fraudulent Representation.** .

**2.7a. Egregious = Flagrant, Remarkably Bad Behaviour; Perpetrated = To Commit Something Bad, Especially Crime; Conversely = Wrongful Intent which can result in Punitive Damages. Erroneous = Wrong, Incorrect, Inaccurate.  Punitive: Damages in excess of normal damages.**

2.8. Defendants convinced Plaintiffs, if any mechanical problems should arise, the problems would be cured under the existing mileage warranty of which defendants bypassed in denial of inadequacies.

**2.8a. Continued Abuse of Process and Breach of Warranty.**                          **Exhibit # 2**

2.9. The Suburban was not yet equipped with a differentiator: (A transducer or circuit whose output is Proportional to the rate of change of the input signal). An electronic brake control unit: used to activate the Trailer brakes in unison with each application of the towing vehicle hydraulic brakes. This unit is mounted on the bottom inside edge of a towing vehicle dash board to the drivers right side for occasional testing and adjustment of trailer brakes response.

2.9a. Cornforth - Campbell Agency Purchased and installed an Electronic Trailer Brake Control, (Differentiator) onto the Dashboard of the Plaintiffs Suburban; and egregiously convincing Plaintiffs to believe the vehicle was conversely ready for Plaintiffs intended usage; thus binding Plaintiffs agreement to close the purchase of the Suburban vehicle.     **Despotism: A Criminal abuse of Discretion.**

2.9b. An Official of Cornforth-Campbell partially instructed Plaintiff on the use of the Differentiator in coordinating the Trailer brakes in unison with the application of the Suburban Hydraulic Brakes.

2.10. The Cornforth-Campbell GMC Salesman and Office personnel implied to Plaintiffs that the Agency did not have a manual for the new Differentiator, nor the GMC Suburban; and that they had prepared an order to acquire the respective manuals to be readily delivered in the very near future. **MoralCertainty**

2.10a. Plaintiffs later learned from a Recreational Trailer Dealership that the Differentiator should come from the factory with a manual explaining the use and comparison of capabilities of each differentiator.

COMPLAINT - 4

2.11. Plaintiffs made many trips in Vain, to Cornforth Campbell Agency to attempt to get some of the GMC Suburban mechanical problems corrected and to also get the manuals.

2.11a. No repairs were ever corrected and the Agency implied nothing but excuses to Defendants about the manuals being on order of which Plaintiffs have not received to this day.

2.11b1.If Plaintiffs would have received the book on the model of Differentiator placed into the Suburban by Cornforth-Campbell; Plaintiffs would not have accepted the purchase of the Suburban until a reliable Differentiator was installed.

2.11b2. Plaintiffs would not have any need to pursue this cause of action for injuries.

2.11b3.The subject installation, attached logo was "Activator" of which Plaintiffs have been advised was the name given to the first manufacturing of a trailer brake control, many years prior to Plaintiffs purchase of the GMC Suburban.

2.11b4. Later; Plaintiffs were informed by a Recreational Vehicle Dealership, that they had not used the subject "dangerous activator" as mounted into Plaintiffs Suburban by Cornforth Campbell; for about twenty years.

2.11c. This may have also negated Plaintiffs, in the trust of Cornforth-Campbell Vehicles, as has definitely been interposed as of date of discovery of the inadequacy of performance in mechanical repairs of the Suburban and of the subject limited brake control not being properly classified for unreliable usage of which became the unnecessary cause of serious injury's and a very dangerous collision that could very well have included many others as will be accentuated within this brief.

**2.11d. Constructive Fraud: The Defendants Constructive Fraud, results when a fiduciary obligation is breached, despite of the motives or intent and gives cause to Exemplary Damages.**

2.12. Three times, a mechanics coordinator (boss), took a drive to test the Suburban brakes of which Plaintiff complained; was on occasion, pulling the Suburban to the left front on applying to slow down.

2.12a. Each time the coordinator stated he could not get any wrong movement from his brake application.

2.12b. This statement was disappointing and not acceptable to Plaintiffs continuing discovery's, after learning the true deficiencies bypassed, and hidden by Cornforth-Campbell Agency Dealership of GMC. of which will be exposed throughout this Brief.          **Defendants  False Swearing**

2.13. The vehicle pitch to the left upon applying the brakes, was not, as **yet**, prominent, but occasionally happened to Plaintiffs

Clinton M  Tullis and Margaret L  Tullis
and the palimony relationship thereof as ProSe
16300-184th  avq  S E  Renton, WA  98058-0903

2.14. On one occasion a mechanic, General Motors Corporation Mr. Good-Wrench was told by his

coordinator, to remove the left front wheel and show the Rotor, Caliper and pads to Plaintiff.

2.14a.The mechanic stated  he did not want to take the time to pull off  the right front wheel as he

declared to Plaintiff that the two front wheel assemblies were appropriately the same. **Wrong Intent.**

2.14b. As will be shown later under following paragraphs; Amid other brake deficiencies, the front rotors

were improperly installed.

2.14b1. The Caliper Pins  were badly worn and not lubricated. This caused braking to oscellate.

2.14c.The mechanic conversely stated: It was one-heck of a job to unnecessarily pull off the back wheels.

2.14d. Plaintiff agreed that the left front rotor and pad did not look bad. The new pad was  deceiving.

2.14e. Unfortunately, Plaintiff had no comparison because of not being enabled to compare the right front

brake and thus could not deny the farce.

2.14f. The following definitions represent the total and purpose of the brakes assembly.

**The Calipers are the Cylinders holding the brake fluid that comes through filled brake lines from a small tank full of reserve brake fluid.The pressure applied by a vehicle driver to the brake pedal, forces the Calipers to press the pads that are attached to the Calipers and placed free on both sides of the Solid Round Rotors which are Attached to the Vehicle Wheels. The pads grip the rotors to slow down or stop the vehicle depending on the pressure applied by the Vehicle Driver. (Often called Disk Brakes and mostly used on passenger cars and trucks. Heavy Duty such as Freight Trucks still use the shoe type brake system of cylinders attached solidly to the axle assembly and which applies the pressure of the brake shoes on the inside of the brake drums attached to the wheels.**

2.15.Cornforth-Campbell: Mr. Good Wrench mechanic explained that all the vehicles brakes were in good

shape and the entire vehicle had been thoroughly inspected or repaired to a condition of excellence.

**Perjury: False Swearing: Statement of what one does not know to be true: Every unqualified statement of that which one does not know to be true is equivalent to that he knows to be false.**

2.15a1. Plaintiff later found that the newly installed metallic pad on the left front of the Suburban was

attached to the floating caliper on the axle frame with badly worn pins and approximately 3/16ths of an

inch thinner rotor than the right front rotor (always attached solid to the wheels) and the Pins had not

been lubricated.

2.15a2. This new metallic pad was disintegrating and dug chunks out of the left front rotor during  Plaintiffs

first trips of a few hundred miles to Idaho and then to the Oregon Coast in the summer month of July of

2003 and then to Spokane in the early spring of 2004 equaling about 1800 miles The left front brake was

really pulling hard left by then.

COMPLAINT  -  6

Clinton M  Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th avg  S E  Renton  WA  98058-0903

2.15a3. Prior to going to Spokane; Plaintiff had again appealed (the fourth time); to the shop supervisor for curing the Suburban brakes from pulling to the left on light or heavy application and was denied as was confirmed by Number 2.15 above; The day Plaintiffs received the response from the shop mechanic.

2.15a4. Plaintiffs obtained a Chilton mechanics manual and personally performed a complete brake job on front and rear of the suburban upon finding that the front Caliper pins were extremely worn. **Exhibit # 10**

2.15a5. The Pins mount the Calipers to the front axel and are required to slide back and forth very gently.

2.15a6. When the Caliper Pins are badly worn; they oscillate; thus are not totally cooperative in the slowing or stopping of the vehicle.

2.15a7. Plaintiff installed two new combination sets of calipers and Pins, for both front and both rear wheels and lubricated them as required by the Chilton Manual          **Exhibit # 6**

2,15a8. Plaintiff, not happy with the performance of the left front metallic break pad that broke off in chunks and charred the surface of the left front Rotor; Plaintiff then had the rotors polished by a city of Renton machinist and then installed new fiber pads and the brakes were excellent in response.

2.15a9. Plaintiff also found that the Cornforth-Campbell Agency Dealership of General Motors Corporation Mr. Good Wrench Mechanics diagnosis of the rear wheels being very difficult to remove was a sign of **Subornation of perjury**. The crime of procuring another to make a false oath.

2.15a10. The rear wheels did not appear as though they had been removed since leaving the factory and did not have new brake pads until Plaintiff installed them in April of 2004. **Receipts : Exhibit # 10**

2.16. In vain, Plaintiff complained about the headlights being extremely dim.

2.16a. On at least two occasions. Plaintiff Clinton received egregious implications by other Cornforth - Campbell Agency Personnel in the mechanics department, that they had brand new GMC Vehicles recently received from the factory with dim head lights and they indicated it was to be an expected performance.

2.16b. This appears to Plaintiffs as a slam at General Motors Corporation Assembled Products.

2.17.The Cornforth-Campbell personnel must think anyone purchasing from them must be novices.
**See Plaintiffs Mechanics Resume: Exhibit # 5.**

2,18. If Plaintiffs would have received the Electronic Brake Control Manual; Plaintiff would not have pulled the trailer the first 10 feet, until Plaintiff would take the Suburban to a Recreational Vehicle Dealer and have the newly installed activator replaced by a positive action differentiator.

COMPLAINT –7

Clinton M  Tullis and Margaret L  Tullis
and the palimony relationship thereof as ProSe
16300-184th ave  S E  Renton  WA  98058-0903

2.19. As will later be defined: Plaintiff is quite certain that if Plaintiff had not Purchased a Chilton mechanics manual from an Auto Parts dealer on the Suburban and then Personally performed a complete brake job on the suburban; Plaintiffs and most probably, several other emergency stopped Freeway I-5 travelers, would have succumbed in a horrible fiery death. **Chilton Manual: Exhibit # 6.**

2.20. Absolutely, None of the much needed repairs, were ever corrected by Cornforth Campbell GMC Mr. Good-Wrench; and the Agency implied nothing but excuses for repairs or the owner manual on the Suburban or the Actrivator for the Trailer Brake Control.    **Differentiator Manual Book: Exhibit # 3**

2.20a. The Activator installed and lack of a promised book on functioning and reliability is one of the major criminal factors in this law suit.                **Willful and Malicious Conduct**

2.21. After considerable driving and discovering the many needs and denials of those needs of repair and replacement contrary to Cornforth-Campbell Notices of perfect condition of the Suburban prior to sale;
                                                            **Exhibit # 2**

2.21a. Defendants theory and performance could not be trusted. Plaintiffs did not purchase the vehicle to set on display.

2.21b.The vehicle should not have been allowed on the road in its un-stable condition at time of Purchase.

2.22. The Flyers on the Suburban along with the denial of a differentiator manual and Sales and Mechanics departments Perjured Analysis of Brakes and Lights conditions along with vehicles faulty battery causing engine faltering, was criminal subversion and an absolute denial of Facts by Cornforth Campbell GMC Agency.                **Malpractice and Vicarious Liability**

**2.22a. Malpractice: A Professionals improper or immoral conduct in the performance of duties, either intentionally or through carelessness or ignorance.**

### III.
### DEFENDANTS DANGEROUS NEGLECT AND RESULTS

3.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 2.22a. herein.

3.2. In Early July of 2003; Plaintiff went to a Parts dealer and procured installation of two (2) new light bulbs to enhance night vision prior to Plaintiffs going on vacation to Silver Creek Hot Springs Resort on a mountain top above the Payette River, and about a hundred miles East of Boise, Idaho.

3.3. From Silver Creek, Plaintiffs left for the Oregon Coast to join our Youngest Daughter Melanie and Husband Ken and family of four children for one week of which we usually met and Camped at Bandon, Oregon for one week.

COMPLAINT – 8

3.4. Plaintiffs chose to drive along the Snake and then the Columbia Rivers to Portland, Oregon, then

South on the Freeway I-5 to Salem, Oregon; Then Westerly to the Coast and Bandon, Oregon.

3.4a. When we arrived at Pendleton, Oregon; It was a real clear night and Plaintiffs chose to drive through

the night and enjoy the beautiful Full-Moon.

3.4b. This was on a Sunday evening and the traffic was very scarce; mostly Trucks; whom kept signaling

all night to us to Dim our Lights of which were already on dim.

3.4c. We finally stopped at the Dalles, Oregon and camped in a station lot until day-light and then on to

Bandon in the early A.M.

3.4d. Plaintiff checked the Headlamp Lens to see if either one was broken. It had appeared as though the

Lens were broken during our driving of which was not the event.

3.4e. Upon arriving home at the end of the week and with no other night driving; Plaintiff then went back to

the Dealer from whom we had procured  our bulbs and then purchased mounting of two new Lens.

3.4f. The headlamps are called Lens. And the bulbs come separate except in a new lens purchase.

3.4g. Because of little night traveling at home; Plaintiff did not realize of the distorted head-lamps from age

or possible past heat exposure until truckers complained by blinking their lights and Plaintiffs passed

enough Oregon Trees to see the distorted lights were shinning partially on the road,  but mostly in the

trees.                                      **Headlight "Lens" Purchase Receipt: Exhibit # 10**

3.4h. No wonder they were dim. Thanks to Cornforth-Campbell and GMC Mr. Good-Wrench.

3.4i. Plaintiff did learn of the lights being dim and consequently had paid a parts dealership to install new

bulbs after complaining the fact to Cornforth-Campbell whom chose to ignore the dangers of dim or

distorted head-lights in abuse of General Motors declaration of Mr. Good Wrench of which appears to

only be considered as an "inspiration to buyers confidence".                 **Exhibit # 1**

3.5. The engine had stalled during warranty and about five miles from Plaintiffs residence; Plaintiff reacted

and coaxed the vehicle to a near by: Schucks Auto Parts Dealership at Covington, Washington.

3.5a. Plaintiff could not properly test the vehicle as it was turning dark; Plaintiff Clinton then called a tow

truck to move the vehicle to Plaintiffs residence where Plaintiff had equipment to analyze the problem.

3.6. The battery had a dead cell and would not take a charge.

3.6a. Plaintiff then checked the spark Plugs and determined need to install new spark plugs.

COMPLAINT- 9

Clinton M  Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th avq  S E  Renton, WA 98058-0903

3.6b. Plaintiff purchased and personally installed a Heavy duty battery and all new spark plugs.
**Exhibit # 10**

3.7. Plaintiffs soon found the GMC Suburban Vehicle had many other perpetrated performance problems.

3.8. Plaintiffs had found the battery life had been exceeded and was the cause of the engine erratic

actions; especially in starting the engine.

3.8a. Plaintiffs found the engine overheated to 280 degrees.

3.8b. Plaintiffs were told by Cornforth Campbell personnel in the mechanics Department, that the water

temperature of 280 degrees was good for the motor, thus declining service.     **Perjury**

3.8c. Plaintiffs purchased and installed a 180 degree thermostat and a new radiator cap and never again

witnessed any temperatures above 180 degrees.                   **Exhibit # 10**

3.9. Plaintiff reiterates that receipt of the trailer brake control (Differentiator) manual could have

informed Plaintiffs of an unacceptable, contemptible performance by Defendants in the installation of an

inferior Activator and again in procrastinating about not having a manual to explain the quality and use of

the Activator, as disclosure from the manual, could most probably, not have met Plaintiffs approval and

most probably negate the sale.                 **Differentiator Manual: Exhibit # 3.**

3.10. The Activator short response, caused a very serious wreck, severely injuring both Plaintiffs.

3.10a. Caused Plaintiff, Clinton M. Tullis to have  serious Body Injury's  involving casts and major

surgery's for most of two years.                 **Medical History: Exhibit # 8**

3.11. The surgery performed in 2005 was performed only after stabilizing Plaintiff: Clinton M. Tullis

Heart injury conditions maximized by the Collision.

3.11a.The surgery was to repair two huge lower inguinal "hernias" procured during the collision that were

caused to rupture during the collision and protruded Completely across Plaintiffs  lower stomach.

3.11b. Plaintiff; Clinton also pulled the ligaments loose from his left wrist in fighting to turn the Suburban

to the right and off the vehicle in front of which contained a young mother and her pre-teen daughter.

3.11c.Clinton wore a cast on his left arm for about one and one-half  (11/2) years and cannot

completely fold his left index finger as yet without pain.        **Medical Attention: Exhibit # 8**

3.12.The suburban Air bags had broken and Clinton thought Plaintiffs were going to die in a fire; fed by

almost forty gallons of gas procured in Vancouver, Washington on the way home from vacation on the

Oregon Coast. Clinton was determined not to take others with Plaintiffs, if at all possible. .

COMPLAINT - 10

3.13. As it turned out; the air bags exploding produced the only injury's

3.14. The collision severely reduced the mental and physical stamina required in Plaintiff Clinton Real

Estate Profession.

3.15. Plaintiff remains strained in catching up in Plaintiffs home yard and garden upkeep

3.16. All for which Plaintiffs are remaining suffering and most possibly will never fully recover.

3.17. Plaintiff: Margaret L. Tullis was severely injured with the air bags burst and the sudden impact of the

Suburban onto the pavement as Plaintiffs successfully escaped the vehicle we had contacted and

luckily, the right lane travelers recognized the lack of room to avoid contact and were able to clear

enough to allow Plaintiffs the room to steer off the contacted vehicle.

3.18. Plaintiff Margaret previously had a slight hernia of the upper stomach which expanded in the

collision and remains an increased problem with her hopes of curing, slightly shattered by being told

"that type" of operation is very dangerous.

3.19. Plaintiff Margaret spent a miserable night at the Centralia Hospital, even given excellent care.

3.20. All of the above mechanical problems could have easily been cured, if Defendants were capable

or serious of performing a proper analysis and considerations, in lieu of the Cornforth Campbell GMC

Agency dealership, employees procrastination and denial of proper service to Plaintiffs.

3.20a. The absolute responsibility of the Dealership and General Motors Corporation Criminal infractions.

**3.20b. Defendants actions resulting in this Lawsuit qualify as: Special Proceeding Damages. Damages beyond other damages; A Proceeding providing extraordinary Relief Such as Exemplary Damages.**

**3.21. Defendants Acts of Deceit: The Tort of Fraudulent Representation; Concealing Something or Making false Representation with an evil intent. (Scienter) when it causes injury to another. Willful - Malicious Conduct**

3.22. None of the egregious promises or mechanical corrections was ever performed by Cornforth

Campbell, regardless of being within the time frame of the Vehicle Warranty provided to Plaintiffs on

date of Purchase.

3.23. In regards to Plaintiffs Purchase from Cornforth-Campbell; The Agency "Declaration of Mr. Good-

Wrench" is void of proper supervision by General Motors Corporation. Apparently only utilized by

Defendants as a hot Sales Pitch. **Breach of Warranty: Exhibit # 2; & Mr. Good-Wrench: Exhibit # 1.**

3.24. The agency utilizing the GMC add of Mr. Good Wrench, along with the Agency denying the Electric

COMPLAINT - 11

Trailer Brake Control "supplied manual", was erroneously denying consideration to the Public and

Plaintiffs as severe endangerment.                           **Tortious Conduct**

IV.

## DEFENDANTS INEXCUSABLE NEGLECT AND EFFECTIVE COMPARISON

4.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 3.27a. herein.

4.2. After the collision and desperately needing the Trailer Brake Control for probable proof of all details;

4.3. Plaintiff called the people Plaintiffs had Purchased the Wilderness Trailer from and they informed us

of a Tacoma Dealership and address for us to see about a differentiator manual.

4.3a. Plaintiff went to the agency, of whom the private individual we purchased the trailer from, had in

fact originally purchased the Wilderness Trailer from and asked for their assist in locating us a manual

describing the particular differentiator that we were so reluctantly denied by Cornforth-Campbell Agency

city of Puyallup Dealership of General Motors Corporation and Mr. Good-Wrench.

4.3b. Plaintiffs performed three trips to a South Tacoma Recreational Vehicle dealer and a party working

in supplies had taken it upon himself to order and procure two (2) manuals for Plaintiffs dilemma.

**Exhibit # 3**

4.3c. Upon analyzing the information in the manual; Plaintiff (Clinton M. Tullis) was exonerated from

any blame whatsoever at the collision responsibility trial in Chehalis, Washington.    **Exhibit # 7**

4.4. Plaintiffs had used the trailer for vacations to the Oregon Coast and to Idaho Payette Lakes, for and

during the three previous years, prior to Plaintiffs purchasing the subject 1999 GMC Suburban.

4.5. Plaintiffs Son in Law: Ken Kalliainen, had pulled the trailer for those three years with his ¾ ton Ford

pickup, as Plaintiffs were vacationing with Ken and our youngest daughter "Melanie" and their family of

four children.

4.6. Each trip, Plaintiffs followed the Kalliainens and we did not encounter any problems; no matter how

rapidly Ken was forced to stop, or how rough the terrain we were negotiating, or how heavy the load.

4.6a. At that time; Plaintiffs loaded Wilderness Trailer had the load of at least six bicycles, family tents and

lots of Kalliainens family camping gear, general provisions, camping tools, cook-ware, mechanics tools,

wrecking bars for emergency use and often "some fire wood and parking blocks, along with tow chains,

work and dress clothes and bedding etc. on the trailer, readily sustaining necessary travel speed so as

not to delay or bother other vehicles traveling in back of us or wanting to pass us.

4.6b. The trailer load was much heavier than that pulled by Plaintiffs as the Kalliainens determined to pull

COMPLAINT - 12

a U-Haul Trailer for extra convenience of loading and unloading and two "side by side parking spaces.

4.6c..Plaintiffs were always within 200 feet behind the Kalliainens and Plaintiffs Trailer to vacation points, mostly on the Oregon Coast for the three years of 1999 - 2002 inclusive.

4.6d. Several times Ken had to brake down rapidly as someone coming towards us may be passing in a restricted area. Ken's differentiator (electric trailer brake control) always performed absolute response at any and all times in necessitating a stop, whether sudden or casual, no matter whether day or night or how badly or roughly Ken was challenged.

4.6e. Ken's trailer brake control had been installed upon purchase of his vehicle, by whom he purchased his ¾ ton vehicle from and never hesitated on any need to respond, during Ken's towing Plaintiffs 30 plus foot Wilderness Trailer for approximately four thousand miles of all types of terrain and road conditions, prior to Plaintiffs purchasing their own vehicle: (The subject 1999 GMC Four wheel drive Suburban from Cornforth-Campbell GMC Agency-Dealership).

4.6f.The Trailer Brakes were excellent and always responded to any demand.

4.7. The trailer was perfect for Plaintiffs, as it was large enough and constructed to have privacy when necessary, even when others visited or stayed in the fore half, which was often, and well loved and of which we readily joined prior to or after our rest. Plaintiffs and the Kalliainen family really miss the trailer.

4.8..Thus, Plaintiffs had been easy to convince that the GMC Suburban was capable of like performance.

4.9. Plaintiffs didn't dream of the GMC dealership; in applying a new " trailer brake differentiator"(Activator) on our acquired vehicle would perform any different.                    An absolute:  **Breach of Trust**

4.10. Plaintiffs became easy victims of  Cornforth-Campbell agency dealership Warranty's and GMC Corporation bragging Mr. Good Wrench.            **Willful Malicious Conduct & Vicarious Liability**

4.11.Cornforth Campbell **denied** their commitment to **Specific Performance**.  **Exhibit # 9: [Plaintiffs:**
                                                                                  **Letter to Dealer]**

4.12. Defendants GMC and Cornforth - Campbell have given Plaintiffs the opinion of the dealers believing: every one dealt with, must be unknowledgable as to the actual performance and upkeep in the vehicles they purchase. They also appeared to treat Plaintiffs as Aged and incapable of lengthy travel. Their overwhelming promises to Plaintiffs were deluded lack of consideration and appears to be perpetrated only for purposes of sales. =        **Criminal Acts** :
**Wash. App. Div. 2 1996. "Criminal Act" May be described as both affirmative act, or omission of possible and legally required performance.—State v. Chester, 918 P 2d. 514, 82 Wash App. 422,**

COMPLAINT - 13

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184ᵗʰ avg  S E  Renton WA 98058-0903

review granted 928 P. 2d 412, 130 Wash.2d 1016, affirmed 940 P2d 1374, 133 Wash. 2d 15.--Crim Law 26.

4.13. They also appear to believe that every one on the road stays near home or can vacation in a motel or hotel if they break down on the road and that any repairs they may need will only cost a few dollars even on holidays, weeks or week-ends, a short stay on their way, with Pleasure Time to spare, and not giving consideration of short vacations with defined essential procedures.

**Breach of Warranty Exhibit # 2**

4.14. Defendants unreasonably and thoughtlessly, seriously endangered Plaintiffs and Publics lives.

4.15. Should we look at the entire organization as being sadists, resolved to test results of their Fraud.

**Criminal Wrongful Intent**

**V.**
**HISTORY INCIDENTAL TO DEFENDANTS DECEPTION**

5.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 4.15.

5.2. Plaintiffs is quite positive; The improvement of the Suburban brakes by Plaintiff Clinton; Is the only reason that Plaintiffs and most probably others remain alive that were involved in or near Plaintiffs Collision on Northbound, Freeway I—5 near Centralia, Washington in July of 2004.

5.2a. The GMC Agency - Dealership of Cornforth-Campbell could have been the cause of the death of several people in that collision for their neglect of curing the malfunctioning GMC Suburban Brakes under Warranty.

5.2b. Plaintiffs, beyond a reasonable doubt, swear that it is highly probable that some of us would have perished in a fiery collision of which most likely would have included both vehicles in front of Plaintiffs and others already stopped bumper to bumper in the right Lane.

5.2c. Plaintiffs were in the left Lane where the two Parties contacted by Plaintiffs; were already bound together and only one-half off the left lane awaiting Authorities to analyze their prior collision.

5.2c1. NOTE: Those parties were right next to a concrete barrier and could not clear the road in entirety.

5.3. Defendants knew the (Activator), Trailer Electric Brake Control was questionable or they should have known. (Plaintiff is informed the manual becomes part of the Unit Purchase and the manual explains the ability of a differentiator to activate on demand or otherwise under certain circumstances.

5.3a. The manual gives a line for operation showing that the Activator installed by GMC Agency Dealership of Cornforth Campbell; was known to be slow in responding and was known to collapse during the first second of hard use.

**Exhibit # 3**

COMPLAINT – 14

Clinton M. Tullis and Margaret L. Tullis
and the palimony relationship thereof as ProSe
16300-184th avq S E Renton, WA 98058-0903

5.3b. The Book shows: At 60 Miles per hour, a vehicle travels at 88 feet per second; Plaintiffs were

Traveling at 50-55 miles per hour;

5.3b1. The vehicle speed appeared to drop to about 15 miles per hour in the first second of hard use;

Meaning the differentiator appeared to activate, then quit after the first 30 to 50 feet of travel.

5.3b2. Meaning the trailer brakes were not working after the first 30- 50 feet and  the trailer was pushing

the Suburban for the last 150 -185 feet.

5.3c. This is the way it felt to Plaintiffs and shows by the bent trailer ball hitch.        **Exhibit # 4**

53c1. The extra heavy duty ball hitch, bent forward for at least (1/2) one half of an inch.

53d. The Suburban suddenly felt as though Plaintiffs were floating on Air, from the immense pressure of

the Trailer without working brakes.

5.3e. The Trailer pushed so hard; The Trailers full length of: (2 Steel Channel Frames) folded in the center

and did so much incidental damage to the trailer, that the Trailer was not repairable: A total Loss.

5.4. This type of Differentiator had not been used for over twenty years by the Recreational Vehicle

Dealership, whom supplied Plaintiffs with the 2 books prior to Plaintiffs appearing in the Chehalis District

Court for determination of fault.                                        **Exhibit # 1.**

5.5. The heavily loaded trailer pushed the skidding Suburban for about (150 to 185) feet before the

Suburban left front wheel slowly climbed upon the center of a heavy 4-wheel drive vehicle # 2 that had

also collided into another heavy Pickup or Suburban # 1, in front of the vehicle Plaintiffs contacted.

5.5a. Plaintiffs Suburban; Vehicle N0 3; Suddenly tilted to the right and Plaintiff could see the left front

wheel very slowly climbing up over the rear bumper of the vehicle in the immediate front of Plaintiffs.

5.6. Margaret was leaning slightly forward and Plaintiff Clinton, grabbed her by the shoulder and pulled

her away from the right front doors glass window, just as the air bags broke and forced her back far

enough to be somewhat protected by the right door frame beside her seat.

5.6a. The Air Bags Exploded and Plaintiff thought we were on fire.

5.6b. Plaintiff could see a Blonde woman on the drivers side of a Red Pickup in front # 1 and a small

Blonde Girl on the right side of the Red Pickup in front; as Plaintiffs Suburban was now tilted to a 30 to

45 degree angle and Plaintiff was able to see down through their back window

5.6c. Plaintiff was certain we were to die in the fire and didn't want others to join us if possible to prevent.

COMPLAINT - 15

5.6d. Plaintiff defied the Air Bag and turned the Suburban Steering Wheel hard right, hoping to escape

the vehicle we climbed upon. Plaintiff again, applied extreme pressure on the Suburban Brakes.

5.6e. The Suburban Right Front Wheel Grabbed the Pavement and threw Plaintiffs to the right and off the

vehicle Plaintiffs had climbed upon; This working, also kept the Suburban from laying over on its side.

5.7. With Plaintiffs Engine still running, Plaintiffs slowly drove around the No. 2 attached vehicle to

a very slow stop along side of No. 1 vehicle.

5.7a. Plaintiffs Suburban Broke the frame just behind the back door and the Suburban Front Wheels also

broke their framework and each wheel now pointed in opposite directions.

5.8. Plaintiff Clinton climbed out of the Suburban and ran around to the right front door to assist Plaintiff

Margaret in getting out.

5.8a. Then seeing there was no fire, commenced helping Margaret towards the trailer where she could

lay in bed until an Ambulance could arrive.

5.8b. A lady Plaintiffs believes was Keri Knorr, driver of vehicle No. 1, immediately came to assist in

getting Margaret to the rear door of the Trailer and to get Margaret onto the bed and see if she could

help her relax in any way possible.

5.8c. The lady (Keri ?) asked Clinton if we had collided with No. 2 vehicle. Clinton answered with yes, we

had. slowly crawled upon vehicle No. 2. (Keri ?) stated she thought so as she had felt a slight thump.

5.9. The collisions were created by about a dozen vehicles in front making sudden stops, one just right

after the other and luckily only the left lane had any known collisions, as the vehicles in the right Lane,

were able to move aside soon enough to allow Plaintiffs the room to get off the contacted vehicles.

5.10. A long line of Vehicles ranging from 50 to 70 miles per hour and suddenly stopping is bound to

procure contact even though reactions from most drivers are comparatively instant.

5.11. Plaintiffs left two (2) wide lines of deeply burned Asphalt tracks for about two hundred (200)

feet in length from the Suburban Braking of which it could not capably stop prior to collision.

5.12. The differentiator manual, Plaintiff finally procured from a Recreational Vehicle Agency, after the

wreck (collision) absolutely states that the manufactures differentiator placed in Plaintiffs Vehicle; was

known to collapse within one to three seconds of heavy usage.          **Exhibit # 3**

5.13. Plaintiffs reiterate; The Recreational Vehicle Dealer; that afforded two books on the various

COMPLAINT – 16

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300·184th avq S E Renton WA 98058-0903

Differentiators inclusive of the type installed on Plaintiffs Suburban by Cornforth-Campbell; Had not supplied or used this type of Differentiator (termed as activator), for at least twenty years.

5.14. Plaintiffs were doing approximately 50-55 miles per hour when attempting to stop quickly of which at the very first, slowed to about one-third or 15 miles per hour, and then continued very slowly; slowing down and unbelievable at not completely stopping, but was like very slowly floating on air as Plaintiffs could feel the heavy pushing effect from the trailer.

5.15. Margaret got a bad beating, from the Air Bag Explosion and spent a very bad night at the Centrailia Hospital even though she had excellent care.

5.15a. Margaret became paranoid to travel on a Freeway and occasionally freaks out when she sees another vehicle in front of or coming towards us.

5.15b. Both Plaintiffs are remaining slowly improving in overcoming the physical set-backs.

5.15c. Our yard work and House maintenance has been neglected of which Plaintiff Clinton can only perform from two to three hours at a time, and which has also slowed down Plaintiffs planning Real Estate Projects.

5.16.The damaged trailer has a thin skin of aluminum or plastic siding on its entire exterior. This was only slightly dented to less than a quarter of an inch deep on only two (2) of the four (4) inch siding slats that rubbed number 2 vehicle for a length of about two (2) feet. A person could dent the trailer that much with his fingers.

5.17. Plaintiffs had not had any experience or knowledge of and with a differentiator. It had been about thirty years since Plaintiff pulled a "light over-night trailer" of a friends that insisted on our using it on a vacation trip to California, and did not have any trailer brakes.

5.18. Plaintiff needed reference of a book on the differentiator brake and comparable systems to be able to know what was sufficient or the most efficient and proper usage and reliability.

5.19. Plaintiff would have complied to change accordingly, Cornforth-Campbell and General Motors Corporation Mr. Good-Wrench assist that appears not to properly perform maintenance or repairs as per Warranty and perpetrated assurances to Purchasers of their GMC vehicles.

**VI.**
**CLAIM AND PRAYER FOR RELIEF**

6.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 5.21 herein

COMPLAINT – 17

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th ave S E Renton WA 98058-0903

6.2 Plaintiffs Pray for relief from this Court, for Summary Judgment in consideration of the Summation of

the evidence of indisputable facts of Injuries afflicted upon Plaintiffs referenced throughout Plaintiffs

Brief in this Law Suit against Defendants: General Motors Corporation, and trusted agency dealership

of Cornforth-Campbell in denial of declared specific performance and consequently performing criminal

fraud and derivative torts for which Plaintiffs deserve Special Proceeding damages for Injuries from the

many criminal infractions of Defendants non-becoming to the quality of leadership and responsibility,

rightfully expected by the Public for General Motors Corporation and Agency Dealership of Cornforth-

Campbell whom perpetrated Warranty's, and fictional assurances of conditions of Plaintiffs Purchase;

Then denying maintenance and influence of General Motors Corporation through their advertised "Mr.

Good-Wrench, thus severely endangering clients and the entire Publics safety and welfare.

6.3. Defendants continuously denied advertised expert maintenance and care  to assist Plaintiffs that

could or would have prevented Plaintiffs GMC Suburban from having a collision that very nearly could

have cost Plaintiffs and others their lives in a deadly fiery crash and resulted in Plaintiffs losses of severe

body injury's, loss of stamina, loss of time with family and friends and loss of income, for which

Defendants continually manipulated to avoid all visual rules of law pertaining to their acts of deceit

analogous to Defendants perpetrated warranty and assurances of genuine conditions of  the Suburban;

along with installation of a non-conforming, inadequate "trailer brake control" and refusing any factory

reference to its capabilities and rightfully concluded as criminal actions of an egregious Fiduciary.

6.4. The Suburban was not in a condition that it should be on the highway and Plaintiffs were assured that

it was in positively excellent condition.  The Suburban body was beautiful and deceitful.

6.5. The mechanical functions were negative, inclusive of the braking system being dangerous.

## VII.
### NOTE FOR MOTION

7.1. Plaintiffs re-allege each and every allegation contained in Paragraphs Nos. 1.1. through 6.3. herein.

7.2. Plaintiffs/Claimants motion for this Court to order summary judgment as special proceeding and

compensatory damages in summation of the crimes committed in this case; and giving consideration of

the overwhelming moral certainty of Plaintiffs/ Complainants beyond all reasonable doubt, of Derivative

torts continually, dangerously performed by Defendants; needlessly causing Plaintiffs/Complainants

injuries, including income and property losses of the past, present and future and for the crippling,

COMPLAINT - 18

ruinous, tortuous, personal, mental, physical and monetary injuries; of which can only be partially repaired or satisfied by monetary reparable damages from Defendants willful - malicious conduct and derivative torts to Plaintiffs; Properly amounting to payment to Plaintiffs by Defendants of eighty two million and no/100 Dollars ($82,000,000.00) for said Injuries prevailing; Applicable to the Defendants continuously manipulating with malice, to avoid all visual rules of law in specific performance as per advertisements and promises pertaining to their acts in denial of assist to Plaintiffs that could have prevented Plaintiffs from having a collision resulting in and continuing Plaintiffs multitude of serious Injuries.

7.3. On this _____ day of 200_____; This Court does hereby rule this case in favor of:

Clinton M. Tullis, ProSe and Margaret L. Tullis, ProSe and the community comprised thereof.

The Defendants known as: Cornforth-Campbell and General Motors Corporation are hereby ordered to pay what Plaintiffs ask for; in the sum of Eighty Two Million and No/100ths Dollars to be paid within _____ days from this _____ day of _____ 20_____ ,after which time interest will accrue @ 1&1/2 % per month from date of Court signature on this documented brief.

_____
Judge/Commissioner

_____
Clinton M. Tullis ProSe          date

_____
Margaret L. Tullis ProSe          date

_Clinton M. Tullis_
16300-184th ave.; S.E. Renton, Wa. 98058-0903
Phone and Fax (425) 226-7399

_Margaret L. Tullis_
16300-184th ave. S.E. Renton, Wa. 98058-0903
Phone & Fax:   425-226-7399

I _Tamra L Miller_ _____ being a
Notary Public in and for the State of Washington
do hereby swear that on this ___14___ day of
January, 2008; I witnessed the Tullis's
signatures on this portion of this document.
My commission expires on _4-15-2008_

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

Exhibits and locations in order.

| Numbers: | Definitions |
|---|---|
| 1. | Mr. Good Wrench |
| 2. | Warranty & Declarations of Conditions |
| 3. | Differentiator Book (Manual). |
| 4. | Bent Trailer Hitch |
| 5. | Plaintiffs mechanics resume |
| 6. | Chilton "Mechanics Manual" |
| 7. | Chehalis District Court |
| 8. | V.A. medical history |
| 9. | Letter to Cornforth-Campbell after several denials of Warranted service and disillusion cure for guaranty of perfect condition of vehicle |
| 10. | Headlamp Lens and Bulbs replacement |
|  | Brakes, Battery, and engine repair, parts, supplies, etc. |

| | | | |
|---|---|---|---|
| 2. 2.8a | # 2 | | |
| 2.3. | # 1 | 3.10 a. | # 8 |
| 2.4. | # 2 & 9 | 3.10 b. | # 3 |
| 2.5 b. | # 2 | 3.11 c, | # 8 |
| 2.10a. | # 3 | 3.11e.xxxx | # 3 |
| 2.14b 1. | # 6 | 3.23. | # 1 |
| 2.15a 4. | # 10 | 4.3 b. | # 3 |
| 2.15 a7. | #6 | 4.3 c. | # |
| | | 4.11. | # 9 |
| | | 4.12. Criminal Act of Washington | |
| 2.15a10 | # 10 | 4.13. | # 2 |
| 2.17 | # 5 | 5.3 a. | # 3 |
| 2.19 | # 6 | 5.3 c. | # 4 |
| 2.20 | # 3 | 5,4 | # 3 |
| 2.21 | # 2 | 5.7a. | # 3 |
| 3.4g. | # 10 | 5.7c. . | # 4 |
| 3.4L | # 1 | 5.8. | # 1 |
| 3.6b | # 10 | 5.12. | # 3 |
| 3.8c | # 10 | 5.16. | # 3 |
| 3.9 | # 3 | | |

Thirty Six  total exhibits.

OMPLAINT – 20

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th avę  S E  Renton  WA  98058-0903

fedex.com 1.800.GoFedEx 1.800.463.3339

**FedEx** Express **US Airbill**

8694 3634 5526    0200

**FedEx Retrieval Copy**

**1 From**

Date 6-15-09    Sender's FedEx Account Number

Sender's Name: Barbara

Company: CLINTON-M-+ WILLIS

Address: 1630 OOT 1 E A H E and S.E.

City: RENTON    State WA    ZIP 9E058-08%

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name: VITO - GENNA

Company: UNITED-STATES-BANKRUPTCY-COURT

Address: ONE Bowling Green New York New York

Address: 0-2-4 Bowling Green

City: New York New York 10804 ZIP 7140 8

Phone 212 668-2870

8694 3634 5526

**4a Express Package Service**

1 ☐ FedEx Priority Overnight
5 ☐ FedEx Standard Overnight
6 ☐ FedEx First Overnight
☐ FedEx 2Day
20 ☐ FedEx Express Saver

**4b Express Freight Service**

☐ FedEx 1Day Freight
8 ☐ FedEx 2Day Freight
83 ☐ FedEx 3Day Freight

**5 Packaging**

3 ☐ FedEx Pak
2 ☐ FedEx Envelope
3 ☐ FedEx Box
1 ☐ Other
4 ☐ FedEx Tube

**6 Special Handling**

1 ☐ SATURDAY Delivery
31 ☐ HOLD Saturday
☐ HOLD Weekday

Does this shipment contain dangerous goods?
4 ☐ No    ☐ Yes    ☐ Yes    6 ☐ Dry Ice
☐ Cargo Aircraft Only

**7 Payment** Bill to:

1 ☐ Sender
2 ☐ Recipient
3 ☐ Third Party
4 ☐ Credit Card
5 ☐ Cash/Check

Total Packages    Total Weight    16.89    520

**8 Residential Delivery Signature Options**

☐ No Signature Required
10 ☐ Direct Signature
34 ☐ Indirect Signature

Rev. Date 10/04 • Part #158102 • ©1994-2006 FedEx • PRINTED IN U.S.A. SRX

fedex.com 1.800.GoFedEx 1.800.463.3339