Maurice F. Curran
388 Bronxville Road
Bronxville, N. Y. 10708
914-337-3511

June 15, 2009

Re: General Motors Corp. *et al*
Case No. 09-50026

Clerk of the Bankruptcy Court
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York N. Y. 10004-1408

Honorable Sir:

Enclosed for filing is Objection of Maurice F. Curran, dated June 15, 2009, to the Debtors' Motion for Approval of the Section 363 Sale and the Master Sale and Purchase Agreement proposed by Debtors, said Motion dated June 1, 2009, together with Affirmation of service dated June 15, 2009.

Very truly yours,

*[signature: Maurice F. Curran]*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

In re:                                                    Chapter 11

GENERAL MOTORS CORP., *et al.*                            Case No. 09-50026 (REG)

          Debtors,                                        Jointly Administered

_____X


**OBJECTION OF MAURICE F. CURRAN, CUSTODIAN AND BENEFICIAL OWNER OF
I.R. A. PENSION FUND ,TO DEBTORS' MOTION FOR APPROVAL OF THE MASTER SALE
AND PURCHASE AGREEMENT ("MPA"), DATED JUNE 1, 2009, AS A VALID AND LEGALLY
ENFORCEABLE "363 TRANSACTION" UNDER THE U.S. BANKRUPTCY CODE**

The undersigned Claimant-Objectant, Maurice F. Curran, as Custodian and beneficial owner of a certain I.R.A. pension fund (Morgan Stanley Smith Barney account # 117 63551) gives notice to the Honorable Court and files with the Clerk of the Court his objection to the Debtors' proposed MPA, dated June 1, 2009, for which Debtors seek the Court's approval, as a valid and legally enforceable "363 Transaction" under the U.S. Bankruptcy Code. Said proposed sale of "substantially all the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests" under the MPA is scheduled for hearing before the U.S. Bankruptcy Court, S.D. N.Y. (Hon. Robert Gerber. U.S. B. J.) On June 30, 2009.

1

1. Upon information and belief, as Custodian of said I.R. A. fund, Claimant-Objectant is a listed unsecured debt-holder of Debtors and has been the recipient of the Notice of Sale hearing, dated June 2, 2009, received from Weil, Gotshal, and Manges LLP, attorneys for Debtors and Debtors in possession. Claimant-Objectant is the beneficial owner and holder of 1000 shares Preferred General Motors stock 7.25% (RGM), acquired Feb 7, 2002, and held to the present time in said pension fund, at a per share acquisition cost of $25($25,000 total cost). Claimant-Objectant also is the beneficial owner and holder of $50,000 General Motors corporate bonds, issued April 29, 1998, and acquired by said fund on August 31, 1998, at a cost of $49,992.50 (500 bonds purchased at a price of $99.975 per $100 bond). The aforestated establishes that said purchases of $25,000 GM preferred stock and $50,000 GM corporate bonds were not speculative investments; they were economically sound investments when made, with market value comparable to par value. General Motors' financial standing and position at the time said investments were made was investment-grade.

2. Claimant-Objectant objects to the aforestated "363 Transaction" sale for the reason that the subject sale transaction, if and when consummated, will, by its stated terms, have eliminated "substantially all the Debtors' assets [the 'Purchased Assets']" from the reorganization asset pool available to the unsecured bondholders and equity creditors, who continued to hold their respective positions in General Motors Corporation, when the chapter 11 filing was made on June 1, 2009.[1] The consummated "363 Transaction" sale sought by

---

[1] Under the exchange offer of April 27, 2009 General Motor Corp. offered the unsecured bondholders 225 shares of GM common stock for each $1000 principal amount of GM notes, amounting to $27,200,760,650. Under the proposed restructuring plan of April 27, 2009 the U. S. Treasury would have owned 50% of the New GM; the U.A.W. would have owned 40%, and would have also received $10 billion in cash over time in consideration for the $20 billion owed to its retiree health-care benefit trust; whereas the bondholders would exchange their $27.2 billion in bonds for 10% of the stock of the restructured GM. Cf. *The Wall Street Journal,* April 30, 2009, p.A14. The exchange offer was conditioned on acceptance of the exchange by 90 % of the outstanding GM notes. This did not happen, which led to the chapter 11 filing in the U. S. Bankruptcy Court on June 1, 2009.

2

Debtors, by its stated terms, will vitiate the position of the unsecured bondholders and equity creditors to share in the Debtors' reorganization assets on a non-preferential basis with the Debtors' stakeholders and other unsecured creditor classes. Claimant-Objectant respectfully submits that any such result obtained under the proposed Section 363 sale is contrary to the Rule of Law set forth in the U.S. Bankruptcy Code and violates the contractual and due process requirements of the United States Constitution. Claimant-Objectant submits that Debtors' claim that the Section 363 sale will "enhance the interests of the economic stakeholders" (Debtors' Motion To Approve Sale, June 1, 2009, id., para. 2, p.2) is patently fatuous, and without substance in reality. The disparate and preferential treatment afforded to the U.A.W. under the MPA and the UAW Retiree Settlement Agreement (Cf. Debtors' Motion To Approve Sale, id., para. 26, p. 11) constitutes an unjustified and unwarranted preference of one class of unsecured creditors, the U.A.W. and its retiree fund, over another unsecured creditor class—the unsecured bondholders and equity credit holders—not sanctioned under Section 363 of the Bankruptcy Code.

3. What's essentially lacking here is that the motion of the Debtor in possession does not demonstrate that the terms of the contemplated 363 sale are for the general good and benefit of the entire debtor estate. On their face the terms are heavily slanted in favor of one class of unsecured creditors (the U.A.W. and its affiliates) over another class of unsecured creditors (the unsecured bond holders and the equity creditors). Disparate treatment may prevail under certain circumstances, but not the preferential treatment in the extreme shown here. Under Section 363(b) of the Bankruptcy Code the Debtor in possession must "satisfy its fiduciary duty to the debtor, creditors and equity holders" ( In re Continental Air Lines, 780 F. 2d 1223, 1226 (5th Cir., 1986) in disposing of its assets under a Section 363 sale---for the benefit of the entire estate. It is beyond cavil that the Debtor in possession is required to justify the proposed sale transaction for the benefit of the entire estate. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir., 1983). Claimant Objectant submits there is no case for such justification made here; indeed, under the facts here, no such case could be made.

3

4. The Consolidated List of Creditors, filed with the bankruptcy petition on June 1, 2009, lists the U.A.W. as the number 2 creditor (unsecured) in the amount of $20.56 billion. Paragraph 26 of the Debtors' motion seeking approval of the 363 sale states, however, that the Purchaser under the 363 Plan, the New GM sponsored by the U.S. Treasury, "as part of the 363 Transaction" has " reached a resolution" with the U.A.W. to, inter alia, 1) transfer 17.5% of the New GM; 2) issue a note of $2.5 billion; 3) issue $6.5 billion shares of cumulative perpetual preferred stock in the New GM; and, 4) issue warrants to acquire 2.5% of GM's equity to the U.A.W. or its affiliate. No offer of any kind, "as part of the 363 Transaction" has been made to the unsecured bondholders or any other class of the Debtors' creditors. Upon information and belief, If the 363 sale is approved by the Court, the result is that the U.A.W. has surrendered its creditor position, or a major part of it, in the Old GM for a substantial equity and creditor position in the New GM. That is an enviable exchange, considering that the New GM under the 363 Plan will succeed to "substantially all" the assets of the Old GM, "free and clear of all liens, claims, encumbrances, and other interests" of the Old GM; as the Debtors' motion for approval puts it, the "New GM, to be established under the 363 Transaction, will be a new, reshaped business that is not entangled by financial and operating distress or bankruptcy" (Debtors' Motion for Approval of 363 Sale, id., Para. 7, p.4). Claimant- Objectant respectfully submits that the proposed 363 Plan is a shell game and a subterfuge for investing the preferred U.A.W. creditor class and the U.S. Treasury with the most desirable fruit of the bankrupt entity, but separate and apart from its attendant liabilities; and leaving the contaminated morsels to the other creditors of the bankrupt who have been closed off from such favored treatment. Can the Rule of Law under the Bankruptcy Code be so compromised and manipulated without just recourse?

5. The Debtors argue that there is an extraordinary and special justification for the transformation of the Old GM into the New GM, with the discriminatory result as

4

set forth in paragraph 4 supra; viz., that it "is a critical element of the program adopted by the United States Government to preserve the domestic automotive industry" with the New GM to serve as " a lynchpin of the domestic automotive industry so this nation once again can assume its place as the domicile of one of the leading manufacturers in the world"( Debtors' Motion to Approve 363 Sale,id.,para. 2, p.3). The avowed justification for the transformation of the Old GM into the New GM, with all its liabilities and contractual undertakings gone up in smoke, is the U.S.Government's decision to transform this failed bankrupt into a newly-minted, viable and fresh enterprise for the sake of the Union, its workers, and the national enterprise. There is nothing in the Bankruptcy Code that gives cause or justification for such an override of the Bankrupt's "fiduciary duty to the debtor, creditors and equity holders". When your Claimant- Objectant purchased $50,000 of GM bonds in 1998 and $25,000 of preferred GM stock in 2002, there was no mention made, nor was any condition inserted into the contractual arrangements, to the effect that GM's bargain with Claimant-Objectant was subject to being extinguished by a venture of the National Government, at some time in the future, to breathe new life into the fallen icon, by constructing an exception to the Bankruptcy Code. The Motion of Debtors for an Order Waiving the Filing of Lists of Creditors et al, filed June 1,2009, cites President Barack Obama's Remarks made March 30, 2009 that it "will take new vision and new direction to create the GM of the future"(id., para. 14, p.6). Neither the President, his appointed car czar, nor any functionary of the U.S. Treasury, ever said that the new vision and new direction would mean a usurpation of the Bankruptcy Code, a disruption of basic contractual rights, and a confiscation of property without due process of law.

6. The bottom line is that the Debtor in possession, in requesting approval of a 363 sale, has the primary and non-delegable obligation "to satisfy its fiduciary duty to the debtor, creditors, and equity holders". In seizing upon the 363 sale device, General Motors Corporation is preempted from favoring one stakeholder claim

5

over another, notwithstanding the essential reality that the U.S. Treasury, as the majority stakeholder, holds the controlling equity position.[2] If the U. S. Treasury's intention was to wipe out or substantially reduce the position of the G.M. unsecured bondholders in the New GM through the 363 transaction, it was in direct conflict with the Debtor in possession's fiduciary duty to utilize the entire bankrupt estate for the benefit of all its stakeholders on a non-discriminatory basis. Claimant-Objectant submits that, once the chapter 11 petition was filed, the fiduciary duty of the Debtors in bankruptcy must prevail over the special interest of the controlling stakeholder.

### Debtors' Motion To Approve The 363 Sale Should Be Denied In All Respects.

Respectfully submitted,

*[signature]*

MAURICE F. CURRAN

Claimant-Objectant
Custodian and Beneficial Owner
Smith Barney Pension Fund
388 Bronxville Road
Bronxville N. Y. 10708
914-337-3511

Dated: June 15, 2009
Yonkers, N. Y.

---

[2] Upon information and belief, originally General Motors Corporation contemplated a traditional filing, without the special 363 sale, that would have placed all of GM into a reorganization plan, requiring creditor approval. The plan to divide GM into the "old" and the "new" reportedly was made when a bankruptcy lawyer for President Obama's auto task force stated at a meeting that a traditional bankruptcy would take too long and "just wouldn't work here". (cf. report in *Wall Street Journal*, June 1, 2009, p. A15,col. 4)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

In re:                                            Chapter 11

GENERAL MOTORS CORP., *et al.*                    Case No. 09-50026 (REG)

                        Debtors,                  Jointly Administered

_____X

### AFFIRMATION OF SERVICE

Maurice F. Curran, a Claimant- Objectant to the Section 363 sale and the Master Sale and Purchase Agreement ("MPA"), dated June 1, 2009, which are the subject of the Debtors' Motion For Approval Of said Sale and said MPA, said motion dated June 1, 2009, and said Claimant-Objectant having filed with the Clerk of the Court his objection to the granting of said motion and the relief requested thereunder, said objection dated June 15, 2009; and the Notice of the Sale Hearing received by Claimant-Objectant from Weil, Gotshal & Manges LLP, attorneys for Debtors having recited that any objection to the relief sought by said motion shall be filed with the Court and a true copy served upon the respective attorneys for the respective parties, as specified in page 2 of said Notice;

Now, therefore, Maurice F. Curran affirms, under penalty of perjury, that on June 15, 2009 I caused to be served a true copy of said Objection, dated June 15, 2009, on Weill, Gotshal & Manges, LLP and each of the respective attorneys for the respective parties, as set forth on page 2 of said Notice (a copy of said page 2 of said Notice is annexed hereto), at the respective U.S. post offices stated in said Notice. I caused such service to

1

be made by enclosing true copies of the aforementioned Objection in properly addressed wrappers and caused them to be deposited in a depository under the exclusive care and custody of the U. S. Postal Service in the State of New York.

_____
MAURICE F.CURRAN

Dated: June 15, 2009

Yonkers., N.Y.

388 Bronxville Road

Bronxville, N. Y. 10708

914-337-3511

issuance to GM of shares of common stock of the Purchaser representing approximately 10% of the common stock of the Purchaser as of the closing of the sale; (iv) the issuance to GM of warrants to purchase up to 15% of the shares of common stock of the Purchaser on a fully diluted basis, with one half exercisable at any time prior to the seventh anniversary of issuance at an initial exercise price based on a $15 billion equity value of the Purchaser and the other half exercisable at any time prior to the tenth anniversary of issuance at an initial exercise price based on a $30 billion equity value of the Purchaser (GM can elect partial and cashless exercises of the warrants); and (v) the assumption by the Purchaser of certain assumed liabilities, all as set forth more fully in the MPA, a copy of which is annexed to the Motion as Exhibit "A." In addition, if the aggregate amount of allowed general unsecured claims against the Debtors exceeds $35 billion, as estimated by an order of the Bankruptcy Court (which the Debtors may seek at any time), GM will receive an additional 2% of the common stock of the Purchaser as of the closing of the sale.

B.    THE SALE HEARING

The Sale Hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Courtroom 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, on June 30, 2009, at 9:45 a.m. (Eastern Time). The Sale Hearing may be adjourned without notice by an announcement of the adjourned date at the Sale Hearing.

**RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED** with the Clerk of the Bankruptcy Court and served upon: (a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) the attorneys for the Creditors Committee; (d) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (e) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; and (h) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), **SO AS TO BE RECEIVED NO LATER THAN JUNE 19, 2009, AT 5:00 P.M. (EASTERN TIME) (the "Objection Deadline").**

The failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the 363 Transaction, the approval of the UAW Retiree Settlement Agreement, and the Debtors' consummation of the 363 Transaction.