Objection Deadline: June 19, 2009<br>Hearing Date: June 25, 2009

HANGLEY ARONCHICK SEGAL & PUDLIN
By:    Matthew A. Hamermesh (ID No. 82313)
        Joseph A. Dworetzky (ID No. 26968)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200                                    *Attorneys for NCR Corporation*

UNITED STATES BANKRUPTCY COURT<br>FOR THE SOUTHERN DISTRICT OF NEW YORK

| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| **GENERAL MOTORS CORPORATION.**, <u>et al</u>. | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Case No. 09-50026 (REG) |

**OBJECTION AND RESERVATION OF RIGHTS OF NCR
CORPORATION IN RESPONSE TO MOTION OF
DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO OBTAIN POSTPETITION FINANCING
AND RELATED RELIEF**

NCR Corporation objects to the Motion of Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 (I) Authorizing the Debtors to Obtain Postpetition Financing, Including on an Immediate, Interim Basis; (II) Granting Superpriority Claims and Liens; (III) Authorizing the Debtors to Use Cash Collateral; (IV) Granting Adequate Protection to Certain Prepetition Secured Parties; (V) Authorizing the Debtors to Prepay Certain Secured Obligations in Full Within 45 Days; and (VI) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "DIP Financing Motion") and reserves certain rights with respect thereto, and in support thereof states as follows:

## BACKGROUND

1. On June 1, 2009 (the "Petition Date"), General Motors Corporation ("GM") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

2. The Debtors also filed the DIP Financing Motion on the Petition Date. By the DIP Financing Motion, the Debtors seek authority to obtain postpetition financing and grant senior liens in certain of their assets pursuant to, *inter alia*, Section 364 of the Bankruptcy Code, 11 U.S.C. § 364.

3. NCR and GM have each previously been identified as potentially responsible parties ("PRPs"), along with numerous other parties, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and similar federal and state laws at several sites in, *inter alia*, Ohio and Kentucky. At each of these sites, to the extent GM has failed or in the future fails to comply with its obligations to undertake or contribute financially to cleanup efforts, government cost reimbursement or to pay natural resource damages, GM is or will become liable to NCR for cost recovery and contribution under statutory and/or common law.

4. For instance, both NCR and GM are alleged to have shipped wastes, including hazardous substances, to a National Priorities List site named the North Sanitary Landfill and also known as the "Valleycrest" landfill in Dayton, Ohio. At least fifteen years ago, federal and/or state environmental authorities asserted that NCR and GM, along with others, are PRPs for the cleanup of the Valleycrest site. Since that time, both NCR and GM have participated in and contributed financially to the investigation, removal and remediation of hazardous substances at the Valleycrest site.

5. On November 15, 2007, NCR and GM entered into a Settlement Agreement concerning their respective liability for cleanup at the Valleycrest site. This Settlement Agreement was effectuated through, *inter alia*, a Judgment, Order and Decree entered by the District Court in *Cargill, Inc. et al. v. ABCO Construction, et al.,* No. 3:98-cv-3601 (S.D. Ohio Nov. 21, 2007) (the "Valleycrest Order," a copy of which is attached hereto as Exhibit A). Among other things, the Settlement Agreement and the Valleycrest Order fixed the respective percentage liability of NCR and GM for various aspects of the cleanup of the site.

6. Because NCR had previously contributed more than its agreed share to the cleanup, however, the Settlement Agreement and the Valleycrest Order established as a separate and defined fund the "Total Overage," which consisted of the amount by which NCR had overcontributed. They required GM to maintain the Total Overage for NCR's benefit, and provided that interest would accrue on the Total Overage for NCR's benefit. To the extent NCR was required to contribute to future cleanup costs, they require GM to use the Total Overage to pay NCR's portion until the Total Overage is exhausted. Moreover, the Valleycrest Order established that "GM shall hold, on behalf of NCR, NCR's Total Overage" and "NCR will continue to own NCR's Total Overage." Valleycrest Order at 3.

7. As a result of the Settlement Agreement and the Valleycrest Order, GM holds NCR's cash property, whether in express trust, constructive trust or bailment.

8. As of the execution of the Settlement Agreement, the Total Overage included $1,820,260.85. NCR believes that the Total Overage is currently approximately $1,780,000.00.

9. NCR placed GM on notice of NCR's superior rights in the Total Overage by letter dated June 12, 2009. On June 18, 2009, counsel for GM advised telephonically that at present GM did not agree with NCR's position, necessitating this Objection.

## OBJECTION

10.     NCR objects to the DIP Financing Motion to the extent, if any, that it seeks to use the Total Overage or subordinate NCR's interest in it, without NCR's consent and without providing NCR adequate protection of its interest in the Total Overage, as collateral for the proposed postpetition financing.

11.     The Debtors' may claim that the Total Overage is property of the Debtors' estate within the meaning of the Bankruptcy Code.

12.     As set forth above, and as confirmed by a federal court's order, NCR has an ownership interest in the Total Overage, and GM holds the money not in its own right but rather as an express trustee, a constructive trustee, or a bailee.

13.     Pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

14.     In the DIP Financing Motion, the Debtors appear to seek to use all of their property, including, they would presumably argue, the Total Overage, to secure the proposed postpetition financing.

15.     Pursuant to Section 363, as set forth above, the Debtors cannot so use the Total Overage unless NCR consents to such use or the Debtors provide adequate protection for NCR's interest in the Total Overage.

4

16. NCR has not consented, and does not consent, to such use of the Total Overage.

17. Nor have the Debtors proposed any adequate protection for NCR's interest in the Total Overage. Indeed, while the Debtors have sought approval of adequate protection for certain secured creditors in connection with the DIP Financing Motion, they do not even purport to offer such protection to NCR.

18. In the absence of such consent or adequate protection, the Debtors may not use the Total Overage to secure the postpetition financing, and the DIP Financing Motion should, to that extent, be denied.

## RESERVATION OF RIGHTS

19. NCR reserves all of its rights, claims and interests, including, without limitation, with respect to the Total Overage and its ownership interest therein, the Settlement Agreement, the Valleycrest Order, any other similar agreements or orders relating to the Valleycrest site or any other site, and any rights to contribution or indemnification under applicable federal or state law, including, without limitation, that any such claims are entitled to administrative expense priority or are not dischargeable, any rights relating to executory contracts, any setoff or recoupment rights, and any right to seek adequate protection or relief from the automatic stay.

WHEREFORE, NCR Corporation respectfully requests that this Court enter an order consistent with this objection or otherwise conditioning approval of the DIP Financing Motion so as to protect fully NCR Corporation's aforementioned rights and interests.

        Respectfully submitted,

        HANGLEY ARONCHICK SEGAL & PUDLIN, P.C.

Dated: June 19, 2009        By:   /s/ Matthew A. Hamermesh
        Joseph A. Dworetzky
        Matthew A. Hamermesh
        One Logan Square, 27th Floor
        Philadelphia, PA  19103
        Telephone:   (215) 568-6200
        Telecopy:   (215) 568-0300

Attorneys for NCR Corporation