Objection Deadline: June 19, 2009
Hearing Date: June 30, 2009

HANGLEY ARONCHICK SEGAL & PUDLIN
By:   Matthew A. Hamermesh (ID No. 82313)
       Joseph A. Dworetzky (ID No. 26968)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200                             *Attorneys for NCR Corporation*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| **GENERAL MOTORS CORPORATION., <u>et al</u>.** | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Case No. 09-50026 (REG) |

**OBJECTION AND RESERVATION OF RIGHTS OF NCR CORPORATION IN RESPONSE TO DEBTORS' MOTION TO APPROVE THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

NCR Corporation objects to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(B), (F), (K), and (M), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing (the "Sale Motion") and reserves certain rights with respect thereto, and in support thereof states as follows:

## BACKGROUND

1. On June 1, 2009 (the "Petition Date"), General Motors Corporation ("GM") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

2. The Debtors also filed the Sale Motion on the Petition Date. By the Sale Motion, the Debtors seek authority from this Court to sell substantially all of their assets to Vehicle Acquisition Holdings, LLC (the "Purchaser") free and clear of all liens, claims, encumbrances and interests pursuant to, *inter alia*, Section 363 of the Bankruptcy Code, 11 U.S.C. § 363.

3. NCR and GM have each previously been identified as potentially responsible parties ("PRPs"), along with numerous other parties, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and similar federal and state laws at several sites in, *inter alia*, Ohio and Kentucky. At each of these sites, to the extent GM has failed or in the future fails to comply with its obligations to undertake or contribute financially to cleanup efforts, government cost reimbursement or to pay natural resource damages, GM is or will become liable to NCR for cost recovery and contribution under statutory and/or common law.

4. For instance, both NCR and GM are alleged to have shipped wastes, including hazardous substances, to a National Priorities List site named the North Sanitary Landfill and also known as the "Valleycrest" landfill in Dayton, Ohio. At least fifteen years ago, federal and/or state environmental authorities asserted that NCR and GM, along with others, are PRPs for the cleanup of the Valleycrest site. Since that time, both NCR and GM have participated in and contributed financially to the investigation, removal and remediation of hazardous substances at the Valleycrest site.

5.  On November 15, 2007, NCR and GM entered into a Settlement Agreement concerning their respective liability for cleanup at the Valleycrest site. This Settlement Agreement was effectuated through, *inter alia*, a Judgment, Order and Decree entered by the District Court in *Cargill, Inc. et al. v. ABCO Construction, et al.,* No. 3:98-cv-3601 (S.D. Ohio Nov. 21, 2007) (the "Valleycrest Order.") Among other things, the Settlement Agreement and the Valleycrest Order fixed the respective percentage liability of NCR and GM for various aspects of the cleanup of the site.

6.  Because NCR had previously contributed more than its agreed share to the cleanup, however, the Settlement Agreement and the Valleycrest Order established as a separate and defined fund the "Total Overage," which consisted of the amount by which NCR had overcontributed. They required GM to maintain the Total Overage for NCR's benefit, and provided that interest would accrue on the Total Overage for NCR's benefit. To the extent NCR was required to contribute to future cleanup costs, they require GM to use the Total Overage to pay NCR's portion until the Total Overage is exhausted. Moreover, the Valleycrest Order established that "GM shall hold, on behalf of NCR, NCR's Total Overage" and "NCR will continue to own NCR's Total Overage." Valleycrest Order at 3.

7.  As a result of the Settlement Agreement and the Valleycrest Order, GM holds NCR's cash property, whether in express trust, constructive trust or bailment.

8.  The Valleycrest Order is final and not subject to appeal

9.  As of the execution of the Valleycrest Order, the Total Overage included $1,820,260.85. NCR believes that the Total Overage is currently approximately $1,780,000.00.

10.  NCR placed GM on notice of NCR's superior rights in the Total Overage by letter dated June 12, 2009. On June 18, 2009, counsel for GM advised telephonically that at present

3

GM did not agree with NCR's position, necessitating this Objection with respect to the Total Overage.

## OBJECTION

### Treatment of the Total Overage

11. NCR objects to the Sale Motion to the extent, if any, that it seeks to transfer of the Total Overage to the Purchaser free and clear of NCR's ownership interest.

12. As set forth above, and as confirmed by a federal court's order, NCR has an ownership interest in the Total Overage, and GM holds the money not in its own right but rather as an express trustee, a constructive trustee, or a bailee.

13. Regrettably, the Sale Motion and the Master Sale and Purchase Agreement do not make it clear whether the Total Overage is one of the assets that GM proposes to transfer to the Purchaser.

14. On the one hand, the Master Sale and Purchase Agreement provides that all cash and all "restricted or escrowed cash and cash equivalents . . . other than Restricted Cash described in Section 2.2(b)(ii)" will be transferred to the Purchaser. *See* Master Sale and Purchase Agreement § 2.2(a)(i), (ii), at 21. The referenced section 2.2(b)(ii) provides, however, that GM will retain "Restricted Cash exclusively relating to the Excluded Assets and Retained Liabilities." *See id.* § 2.2(b)(ii), at 24. It appears, although NCR has not been able to confirm and therefore reserves its rights, that the liabilities of GM to NCR with which the Total Overage is associated are defined as Retained Liabilities. *See id.* § 2.3(b)(iv).

15. The Total Overage is, at a minimum, restricted cash. Accordingly, it appears that the Total Overage may be an Excluded Asset that aGM will retain subject to NCR's ownership interest.

4

16. To the extent that is the case, NCR does not object to GM's retention of the Total Overage and reserves all of its rights with respect to its ownership interest therein.

17. On the other hand, to the extent GM in fact is seeking to transfer the Total Overage to the Purchaser free and clear of NCR's interest, NCR objects to such a transfer because GM has not met the requirements therefor.

18. Under Section 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f), the Debtors may not sell their assets, such as the Total Overage, free and clear of any interests unless they meet certain strict criteria:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

19. GM has not established – and cannot establish – that the Master Sale and Purchase Agreement in its current form satisfies any of these requirements. Applicable nonbankruptcy law does not permit such a sale and NCR has not consented. The sale price does not exceed the aggregate value of all liens and interests in the property subject to the Master Sale and Purchase Agreement. The Total Overage and NCR's interest therein are the subject of a contract (the Settlement Agreement) and a court order (the Valleycrest Order) and therefore

5

cannot be subject to bona fide dispute. And GM and the Purchaser have not identified a money satisfaction of NCR's interest that NCR could be compelled to accept.

20. Accordingly, to the extent GM seeks to sell the Total Overage free and clear of NCR's interest, such a transfer is not permitted.

### Setoff, Recoupment, Successor Liability and Similar Rights

21. NCR also objects to the Sale Motion to the extent it seeks to relieve the Purchaser of any setoff and recoupment rights or successor liability claims NCR otherwise might have.

22. As noted above, NCR and GM have both been identified as PRPs at various sites. Notwithstanding the relief GM and the Purchaser seek in the Sale Motion, the Purchaser may in the future be held liable for cleanup costs at such sites as successor to GM. To the extent the Purchaser pays such liability and seeks contribution from NCR, NCR objects to the Sale Motion to the extent it seeks to wipe out without any compensation or adequate protection the setoff and reclamation rights NCR ordinarily would have in that situation.

23. As an initial point, setoff and recoupment rights are defenses, not interests subject to Section 363(f). Accordingly, the Bankruptcy Code simply does not allow a sale of assets free and clear of such rights.

24. To the extent this Court concludes that setoff and/or recoupment rights are interests subject to Section 363(f), however, GM has not satisfied any of the requirements of Section 363(f) so as to allow a sale of its assets free and clear of NCR's setoff rights.

25. Accordingly, this Court should deny the Sale Motion to the extent it seeks to transfer assets to the Purchaser free and clear of setoff, recoupment or similar rights.

26. Moreover, NCR objects to the Sale Motion to the extent it seeks to relieve the Purchaser of all successor liability. NCR's right to assert successor liability claims against the Purchaser is an interest that cannot be eliminated in a sale absent satisfaction of one of the

6

provisions of Section 363(f), as set forth above. As GM and the Purchaser have not satisfied any of these requirements – e.g., by providing monetary satisfaction or adequate protection of NCR's right to assert successor liability claims, or by obtaining NCR's consent – sale free and clear of NCR's successor liability interest is not permitted.

27. In addition, NCR objects to the release of the Purchaser from successor liability when the Purchaser and its affiliates themselves control the scope of that liability. The Purchaser is, according to the Sale Motion, sponsored and likely primarily controlled by the United States Government. Likewise, NCR's and GM's liability as PRPs under CERCLA and similar laws are based on claims made by the Environmental Protection Agency, an arm of the United States Government. It is manifestly unfair and an exercise of bad faith for the United States Government to simultaneously hold NCR liable for cleanup costs at various sites and eliminate any possibility of NCR seeking contribution from the Purchaser – an arm of the very same United States Government. It would be grossly inequitable and unfair for the Court to allow the government to act and this way, and to that extent the Sale Motion should be denied.

28. Finally, the Sale Motion should be denied to the extent it deprives NCR of the rights described above because the transfer GM and the Purchaser seek to effectuate would constitute an unlawful taking, prohibited under the Fifth Amendment to the United States Constitution. The Fifth Amendment prohibits the United States Government from taking "private property . . . for public use, without just compensation." The sale proposed in the Master Sale and Purchase Agreement is an action of the United States Government, as, among other things, the Purchaser is sponsored by and under the control of the United States Treasury, and GM's primary lender, which has driven this sale process, is likewise the United States Treasury. As set forth above, to the extent the Master Sale and Purchase Agreement purports

transfer GM's property free and clear of NCR's interests – whether its ownership interest in the Total Overage, setoff or recoupment rights, or the right to bring successor liability claims – no compensation has been offered for such deprivations of property.  Accordingly, the Fifth Amendment prohibits the sale of the assets free and clear of NCR's interests.

## RESERVATION OF RIGHTS

29. NCR reserves all of its rights, claims and interests, including, without limitation, with respect to the Total Overage and its ownership interest therein, the Settlement Agreement, the Valleycrest Order, any other similar agreements or orders relating to the Valleycrest site or any other site, and any rights to contribution or indemnification under applicable federal or state law, including, without limitation, that any such claims are entitled to administrative expense priority or are not dischargeable, any rights relating to executory contracts, any setoff or recoupment rights, and any right to seek adequate protection or relief from the automatic stay.

30. NCR joins in and incorporates all similar and applicable objections and arguments other parties assert to the Sale Motion and reserves the right to present those arguments at the hearing on the Sale Motion.

WHEREFORE, NCR Corporation respectfully requests that this Court enter an order consistent with this objection or otherwise conditioning approval of the Sale Motion so as to protect fully NCR Corporation's aforementioned rights and interests.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL & PUDLIN, P.C.

Dated: June 19, 2009    By:    /s/ Matthew A. Hamermesh
Joseph A. Dworetzky
Matthew A. Hamermesh
One Logan Square, 27th Floor
Philadelphia, PA  19103
Telephone:    (215) 568-6200
Telecopy:     (215) 568-0300

Attorneys for NCR Corporation