WINDELS MARX LANE & MITTENDORF, LLP  　　　　　Hearing: June 30, 2009 @ 9:45 a.m.
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: Leslie S. Barr (lbarr@windelsmarx.com)

*Attorneys for Lloyd A. Good, Jr.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re

GENERAL MOTORS CORP., et al.,

　　　　　　　　　　　　　　　　Debtors.
--------------------------------------------------------x

Chapter 11

Case No. 09-50026 (REG)

(Jointly Administered)

**OBJECTION OF LLOYD A. GOOD, JR. AND JOINDER WITH OBJECTION OF UNOFFICIAL COMMITTEE OF FAMILY & DISSIDENT GM BONDHOLDERS TO DEBTORS' PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

　　　　Lloyd A. Good, Jr., by his undersigned attorneys, objects to the Debtors' proposed sale of substantially all of their assets, and joins with the Objection filed by the Unofficial Committee of Family & Dissident GM Bondholders (the "F&D Committee"), and in support of these objections, respectfully represents:

**INTRODUCTION**

　　　　1.　　Mr. Good is 79 years of age, and over the past several years, purchased $480,000 of GM corporate bonds at a premium over par value.[1] The 363 Transaction (defined below) includes a number of agreements among the Debtors and its largest, most powerful creditors – the government, institutional bond holders and the labor unions – that if approved, will dispose

---

[1] A copy of Mr. Good's most recent account statement, redacted to omit confidential information, is attached as Exhibit A.

{10514909:2}

of all assets, provide those creditors with more favorable treatment of their claims than other similar creditors in these cases, and unfairly dictate the terms of what is in substance a plan of reorganization. To implement their scheme, the Debtors are using expedited sale procedures to avoid the substantive and procedural protections of the Bankruptcy Code regarding plans of reorganization that should be available to Mr. Good, the F&D Committee and other unsecured creditors. It is no justification for the Debtors to have bypassed the plan confirmation process where they had time to pre-package a plan and disclosure statement, solicit votes and ensure due process for all parties. Instead, they chose to ignore the basic rights of their investors to participate in the formulation and approval of a plan. Mr. Good and other similar creditors are entitled to this Court's protection to ensure that they obtain fair and equitable treatment under the Bankruptcy Code. As it stands, if the sale motion is granted, then the wealth that such creditors contributed to the Debtors will be transferred to the government, large financial institutions and other preferred creditors in a discriminatory fashion, leaving them without any opportunity to obtain fair and equitable treatment under the Bankruptcy Code. The Debtors' motion should be denied.

## BACKGROUND

2.     On June 1, 2009 (the "Petition Date"), General Motors Corporation ("GM") and its affiliates (the "Debtors") filed voluntary petitions with this Court under chapter 11 of title, 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

3.     Also on the Petition Date, the Debtors filed a motion (the "Motion") seeking, among other things, Court approval of the sale of substantially all of their assets and the assumption and assignment of certain executory contracts (the "363 Transaction"). (Docket No. 92).

4. On June 2, 2009, the Court entered an Order approving, among other things, sale bidding procedures and scheduling a hearing for June 30, 2009 to consider the Motion, and directing the Debtors to serve notice thereof (the "Sale Procedures Order"). (Docket No. 274). Among other things, the Sale Procedures Order gave parties only until June 19, 2009 to object to the 363 Transaction.

5. On June 19, 2009, the F&D Committee filed an Objection to the 363 Transaction, asserting that it is a *sub rosa* plan of reorganization proffered without articulated business justification (the "F&D Committee Objection").

## OBJECTION

6. Mr. Good objects to the 363 Transaction because (a) it contains provisions that render it a de facto plan, and (b) treats his claim in a manner that is neither fair nor equitable. The 363 Transaction does this by incorporating and combining agreements with the Debtors' most powerful creditors to provide them with extraordinary treatment of their claims that should be subject to the confirmation process and the required finding that the treatment is fair and equitable. Included among the terms being dictated without any opportunity for creditor participation is that the 363 Transaction keys the purchase price to the amount of allowed general unsecured claims so that the Purchaser will provide an additional 2% of its outstanding common stock if claims exceed the sum of $35 billion. (*See* Motion at para. 18). As part of the 363 Transaction, the Purchaser is devoting additional assets to resolve claims of the UAW, including common and preferred stock, warrants, a $2.5 billion note, and the assets held in a Debtor-sponsored trust to fund retiree benefits. (*See* Motion at para. 26). The Debtors will also receive a release of other UAW claims if the 363 Transaction is approved. (*See* Motion at para. 28).

7.      While the Debtors have not expressly so stated in the Motion, it would appear that they intend to use the 363 Transaction to substitute for a chapter 11 plan.  In the Proposed Master Sale and Purchase Agreement ("MPA"), the parties have agreed that the 363 Transaction qualifies the Debtors for favorable tax treatment under Internal Revenue Code § 368(a)(1)(G), which allows special tax treatment from the transfer of substantially all assets if it is made in connection with a chapter 11 plan.  (*See* MPA Section 6.16(g)).

8.      It also appears from news reports (*See* F&D Committee Objection) that the large institutional bondholders have also been negotiating with, and may have made an agreement with the Debtors in connection with the 363 Transaction concerning the treatment of their claims. News articles have also reported that the distributions to unsecured creditors, such as Mr. Good, will aggregate no more than 10% of their allowed claims, while the union is slated to receive 17.5%.  If true, this would further indicate the extent to which the Debtors' or proponents of the 363 Transaction intend to restrict the rights and dictate the terms of creditors by using the bankruptcy sale process as a *sub rosa* plan.

9.      Courts have approved over *sub rosa* plan objections transactions and settlements that "did not dispose of all of the debtor's assets, restrict creditors' rights to vote as they deemed fit on a plan of reorganization, or dictate the terms of a plan of reorganization." *In re Tower Automotive, Inc.*, 342 B.R. 158, at 163-164 (Bankr. S.D.N.Y. 2006) (citations omitted.) However, courts have refused to do so where all of a debtor's assets are transferred:

> In extreme circumstances, courts have refused to approve settlements or other transactions by a debtor, such as the sale of all or substantially all assets, without the benefit of a confirmed plan or court-approved disclosure statement and without an adequate business justification…. Such settlements encroached "on a right afforded creditors or equity holders in the chapter 11 process."

Id.  The *Tower Automotive* Court (also concerning union claims similar to those here)

{10514909:2}                                            4

decided that the union settlement, standing alone, was not a *sub rosa* plan because it did not dictate any of the terms of a future plan of reorganization, restructure the debtor's business or finances generally, or restrict rights of creditors in the chapter 11 process. Here, to the contrary, the Debtors and other proponents of the 363 Transaction precisely intend to dictate the terms of the restructuring of the business and restrict the rights of creditors in these chapter 11 cases. The proposed transaction thereby impermissibly encroaches on the rights of GM's bondholders and unsecured creditors.

10. The exigencies of GM's situation is not a legal justification for bypassing the chapter 11 process, particularly where the Debtors' sale process likely took about the same amount of time as a plan confirmation would take had it been as carefully negotiated and planned as this 363 Transaction. A pre-packaged plan confirmation process would take no more 30 days if the disclosure and confirmation hearings are consolidated, which is the same amount of time that the Debtors' sale process took (June 1, 2009 Petition Date to June 30, 2009 sale hearing date). "The need for expedition, however, is not a justification for abandoning proper standards." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 450, 88 S.Ct. 1157, 1176, 20 L.Ed.2d 1 (1968).

11. The Debtors rely upon the case of *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) to justify the sale of substantially all assets outside the strictures of a chapter 11 plan. *In re Lionel Corp.*, however, specifically holds that "…there must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b)." *In re Lionel Corp.*, 722 F.2d at 1070. Here, it is evident that the Debtors' primary motivation is the appeasement of their largest and most powerful constituents. The

government, institutional bond holders and labor unions are not the only stakeholders in these cases, and the interests and rights of all other creditors may not be disregarded as a matter of self-professed business judgment or political expediency.

12. In short, this Court should not permit the Debtors to restrict the rights of creditors by using expedited sale procedures to evade due process requirements. The restructuring of the Debtor should have been done through the chapter 11 plan process where creditors would be treated fairly and equitably, and have the right to participate in decisions made regarding the restructuring of the company and the treatment of their claims.

**WHEREFORE**, Mr. Good objects to the approval of the 363 Transaction, joins in the objection to the 363 Transaction filed by the F&D Committee, respectfully requests that the Court deny the Debtors' Motion, and grant such other and further relief as is just.

Dated: New York, New York
June 19, 2009

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP

By:  /s/ Leslie S. Barr

Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000
Fax. (212) 262-1215

*Attorneys for Lloyd A. Good, Jr.*

{10514909:2}    6