Steve Jakubowski
Elizabeth Richert
THE COLEMAN LAW FIRM
77 West Wacker Dr., Suite 4800
Chicago, Illinois 60601
Telephone: (312) 606-8641
Facsimile: (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorneys for Callan Campbell, Kevin Junso, *et al.,*
Edwin Agosto, Kevin Chadwick, *et al.,* and Joseph Berlingieri

Adina H. Rosenbaum
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
arosenbaum@citizen.org

Attorneys for Center for Auto Safety, Consumer Action,
Consumers for Auto Reliability and Safety, National Association of
Consumer Advocates, and Public Citizen

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
GENERAL MOTORS CORP., et al.,       :    09-50026 (REG)
                                    :
                Debtors.            :    (Jointly Administered)
                                    :
----------------------------------------------------------x
```

MEMORANDUM OF LAW IN SUPPORT OF THE LIMITED OBJECTION OF
CALLAN CAMPBELL, KEVIN JUNSO, *ET AL.,* EDWIN AGOSTO, KEVIN CHADWICK,
*ET. AL.,* JOSEPH BERLINGIERI, AND THE CENTER FOR AUTO SAFETY, *ET AL.,* TO
THE DEBTORS' 363 MOTION  FOR THE SALE OF THE "PURCHASED ASSETS"
FREE AND CLEAR OF POTENTIAL SUCCESSOR LIABILITY CLAIMS

Dated: June 19, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...................................................................................3

ARGUMENT ........................................................................................................3

I.     Neither the language of § 363(f) nor the policy underlying it authorize a sale "free and clear" of a product liability claimant's potential successor liability claims ..............................................3

     A.     § 363(f)'s plain meaning does not extend to successor liability choses in action................................................3

     B.     The Court should decline to follow the *Chrysler* court's opinion authorizing a sale "free and clear" of successor liability choses in action................................................9

II.     The Court lacks subject matter jurisdiction to enjoin post-closing disputes between products liability claimants and the successor Purchaser ....................................................14

III.     The Purchased Assets cannot be sold "free and clear" of successor liability for future tort and product liability claims................................................................18

CONCLUSION ..................................................................................................23

i

### TABLE OF AUTHORITIES

ARGUMENT ........................................................................................................3

    **I.**    **Neither the language of § 363(f) nor the policy underlying it authorize a sale "free and clear" of a product liability claimant's potential successor liability claims** ............................................3

        **A.**    **§ 363(f)'s plain meaning does not extend to successor liability choses in action** ................................................3

*Cases:*

*Barnhill v. Johnson,* 503 U.S. 393 (1992) ............................................8

*Butner v. United* States, 440 U.S. 48 (1979) .....................................7-8

*City of Chicago v. Environmental Defense Fund,* 511 U.S. 328 (1994) .............................4

*Cohen v. de la Cruz,* 523 U.S. 213 (1998) ..........................................4

*Conn. Nat'l Bank v. Germain,* 503 U.S. 249 (1992) ...............................5

*Dewsnup v. Timm,* 502 U.S. 410, 419 (1992) ......................................6

*Duncan v. Walker,* 533 U.S. 167 (2001) ..............................................5

*Forde v. Kee-Lox Mfg. Co., Inc.,* 584 F.2d 4 (2d Cir. 1978) ...................6

*Greene v. United States,* 79 F.3d 1348 (2d Cir. 1996) ............................5

*Keene Corp. v. United States,* 508 U.S. 200 (1993) ...............................5

*In re Trans World Airlines,* 322 F.3d 283 (3d Cir. 2003) .......................4

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville)* 837 F.2d 89 (2d Cir. 1988) ........................................................6

*Midlantic Nat'l Bank v. New Jersey Dep't of Environ. Protection,* 474 U.S. 494 (1986) .............................................................6

*N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513 (1984) ..........................5

*Precision Indus., Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp.),* 327 F.3d 537 (7th Cir. 2003) .....................4

*Ratzlaff v. United States*, 510 U.S. 135 (1994) ..................................................4

*Pennsylvania Public Welfare Dep't v. Davenport*, 495 U.S. 552 (1990) ...........6

*Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman)*,
196 B.R. 688 (Bankr. S.D.N.Y. 1996) ...............................................................6

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001) .......................................................5

*United Savings Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988) ...........................................................................................8

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989). ...........................3

**Statutes:**

11 U.S.C. § 363(f) .....................................................................................*passim*

11 U.S.C. § 362(d)(2) .........................................................................................8

11 U.S.C. § 1141(c) ........................................................................................4,5

**Other:**

Abstract of Submissions Made to National Bankruptcy Review Commission,
http://www.abiworld.org/AM/Template.cfm?Section=Submission_
Abstract&Template=/CM/ContentDisplay.cfm&ContentID=36636
(last visited, June 17, 2009) ...............................................................................5

H.R. Doc. No. 93-137, 93rd Cong., 1st Sess .................................................7

H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977)........7

S. Rep No. 2266, 95th Cong 1st Sess. (1977)................................................7

     B.     **The Court should decline to follow the *Chrysler* court's
opinion authorizing a sale "free and clear" of successor
liability choses in action.................................................................9**

**Cases:**

*American Living Sys. v. Bonapfel (In re All Am. Of Ashburn, Inc.)*,
56 B.R. 186 (Bankr. N.D. Ga.1986) ...................................................................9

*Anderson v. J.A. Interior Applications, Inc.,* No. 97-4552, 1
998 WL 708851 (N.D. Ill. 1998) ......................................................................13

*BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)............................................................12

*Butner v. United States*, 440 U.S. 48 (1979)........................................................................12

*Chicago Truck Drivers, Helpers and Warehouse Workers
Union Pension Fund v. Tasemkim*, 59 F.3d 48 (7th Cir. 1995).....................................13-14

*Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.)*,
184 B.R. 910 (Bankr. W.D. Tex. 1995), *vacated as moot on equitable grounds*,
220 B.R. 909 (W.D. Tex. 1998)..................................................................................10, 14

*Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*,
209 F.3d 252 (3d Cir. 2000)............................................................................................ 10

*Gross v. Trustees of Columbia Univ.*,
816 N.Y.S. 2d 695 (N.Y. Sup. 2006) ..............................................................................10

*In re Chrysler*, 405 B.R. 84 (Bankr. S.D.N.Y. May 31, 2009)...............................*passim*

*In re Eveleth Mines, LLC*, 312 B.R. 634 (Bankr. D. Minn. 2004)...........................*passim*

*In re Karta Corp.*, 342 B.R. 45 (S.D.N.Y. 2006) ...............................................................14

*In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996) ..............................*passim*

*In re TWA, Inc.*, 322 F.3d 283 (3d Cir.2003)..........................................................*passim*

*In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Ohio 1987)...................*passim*

*Kattula v. Republic Bank (In re LWD, Inc.)*, No. 5:08-CV-121-R,
2009 WL 367738 (W.D. Ky. Feb. 12, 2009) .................................................................10

*Kattula v. Republic Bank*, 2008 WL 4606076
(Mich. App.  Oct. 7, 2008)..............................................................................................10

*Lefever v. K.P. Hovnanian Enters., Inc.* 160 N.J. 307 (1999) ...............................10

*Michigan Empl. Sec. Comm. v. Wolverine Radio Co., Inc.
(In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir. 1991) .................................10

*Miller v. Level 3 Comms., LLC*, No. 03-4451,
2005 WL 1529419 (D.N.J. June 29, 2005).................................................................10

*Qualitech Steel*, 327 F.3d 537 (7th Cir. 2003) ..................................................10-11

*Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000) .....................................14

*Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.)*,
19 B.R. 323 (Bankr. W.D. Wash. 1982) .......................................................9,13

*Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1992) ...........................11, 14

## Statutes

11 U.S.C. § 363(f) ...............................................................................*passim*

11. U.S.C. § 541(a)(3), (4), (5), (7) .........................................................10

## Other:

BLACK'S LAW DICTIONARY, 816 (7th ed. 1999) ............................................10

**II.**    **The Court lacks subject matter jurisdiction to enjoin post-closing
disputes between products liability claimants and the
successor Purchaser** .........................................................**14**

## Cases:

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
372 F.3d 154 (3d Cir. 2004) ...............................................................16

*Cable Television Ass'n of New York v. Finneran*, 954 F.2d 91
(2nd Cir. 1992) ...............................................................................16

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) ....................................15

*Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851 (3d Cir. 1996) ..................16

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995) .............15

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) ...............17

*In re Johns-Manville Corp.*, 517 F.3d 52 (2nd. Cir. 2008)
*rev'd on other grounds* ......................................................................*passim*

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .........................................................................16

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982) ...........................................................................17

*Marshall v. Marshall*, 547 U.S. 293, 303 (2006)..................................................18

*Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ...............................................15, 17

*Ralls v. Docktor Pet Centers,* Inc., 177 B.R. 420, 423 (D. Mass. 1995) ...............17

*Travelers Indemnity Co. v. Bailey*, No. 08–295, 2009 WL 1685625
(June 18, 2009)...............................................................................................*passim*

*Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1992)..........................16

**Statutes:**

28 U.S.C. § 1334(b) ...............................................................................................15

28 U.S.C. § 157(a) .................................................................................................14

28 U.S.C. § 157(c)(1)..........................................................................................17-18

28 U.S.C. § 157(b)(5) .............................................................................................18

11 U.S.C. § 363(f)..................................................................................................15

**Other**

Michael H. Reed, *Successor Liability and Bankruptcy Sales Revisited—*
*A New Paradigm*, 61 Bus. Law. 179, 184 (2005) ...............................................17-18

**III.    The Purchased Assets cannot be sold "free and clear"
of successor liability for future tort and product
liability claims..........................................................................................18**

**Cases:**

*Epstein v. Official Comm. Of Unsecured Creditors of Estate of Piper Aircraft Corp.*
*(In re Piper Aircraft Corp.)*, 58 F.3d 1573 (11th Cir. 1995) ..............................19

*Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000) ........................................................19

*Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994)............................20

*In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991)......................................................20

*In re Pettibone Corp.*, 151 B.R. 166 (Bankr. N.D. Ill. 1993) ................................21

*In re Piper Aircraft Corp., 1*62 B.R. 619 (Bankr. S.D. Fla. 1994) ........................22

*In re UNR Indus., Inc.*, 725 F.2d 1111 (7th Cir. 1984)............................................................23

*Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.),*
198 B.R. 519 (Bankr. N.D. Ill. 1996) ............................................................22

*Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.),*
730 F.2d 367 (5th Cir. 1984) ............................................................22

*Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936 (3d Cir. 1985) ..................................20-21

*Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle Co.),*
210 B.R. 747 (Bankr. N.D. Ill. 1997) ............................................................21

*Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001)................................................22

### *Statutes:*

11 U.S.C. § 101(5)(A)............................................................19

11 U.S.C. § 363(f)............................................................*passim*

11 U.S.C. § 363(f)(5)............................................................20

Callan Campbell ("Campbell"), Kevin Junso, *et al.* ("Junso"), Edwin Agosto ("Agosto"), Kevin Chadwick, *et al.* ("Chadwick"), and Joseph Berlingieri ("Berlingieri," together with Campbell, Junso, Agosto, and Chadwick, the "Products Liability Claimants"), and the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizen (collectively, the "Consumer Organizations," and together with the Product Liability Claimants, the "Products Liability Claimant Advocates"), by and through their respective attorneys, submit this Memorandum of Law in support of their limited objection to the motion (the "363 Motion") of General Motors and certain of its subsidiaries (collectively, "GM" or "Debtors") for an order authorizing the sale of certain assets, including its Continuing Brands, to Vehicle Acquisition Holdings LLC, a U.S. Treasury-sponsored purchaser (the "Purchaser").[1]

## PRELIMINARY STATEMENT

More than 69 million GM passenger vehicles are on American roads today. In 2007, according to the National Highway Traffic Safety Administration's Fatal Analysis Reporting System, 9,985 occupants of GM vehicles were killed in fatal accidents; and a total of 14,828 people were killed that year as a result of motor vehicle crashes involving GM vehicles. Many thousands more are injured each year in GM vehicles. Many of these vehicles contain certain defects that have and will continue to be the subject of product liability lawsuits, including due to injuries and deaths from crushed roofs, exploding "side saddle" gas tanks, and collapsing seat backs.[2]

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Product Liability Claimant Advocates' limited objection, the Debtors' 363 Motion, or the Master Purchase Agreement ("MPA") attached to the 363 Motion.

[2]  Extensive background information on the nature of, and litigation associated with, design defects on these particular design defects can be found at http://www.autosafety.org/general-motors-roof-crush-

GM states in the 363 Motion that the sale "must be free and clear" of "rights or claims based on any successor or transferee liability." (363 Motion at 32-33). No business justification has been articulated, however, as to why the Purchaser is entitled to such relief, particularly when the "Old GM" will look and operate much like the "New GM" in the Continuing Brand businesses, and thus potentially satisfy the "mere continuation," "continuity of enterprise," or "product line exception" tests for successor liability under the laws of various states.

Although shedding potential successor liability claims provides expediency, it's not permitted under Bankruptcy Code section 363(f), which authorizes the sale of property free and clear only of "interests in" property to be sold, not *in personam* claims against the Purchaser under theories of successor liability. And while the *Chrysler* court authorized such relief in the sale of Chrysler's assets in the transaction with Fiat, if the Court undertakes its own independent analysis of *Chyrsler's* reasoning, it will conclude that *Chrysler* was wrongly decided on this point of law and that the cases it relied upon were flawed.

The Court should not approve the sale free and clear of successor liability claims for two additional reasons. First, this Court lacks jurisdiction to enjoin actions between non-debtor product liability claimants and the Purchaser post-closing since resolution of these claims will not affect the Debtors' estates. Second, due process does not permit debtors and purchasers to use a Section 363 sale to extinguish future claims that have not yet accrued because the injuries on which they will be based have not yet occurred. People who will one day have such claims cannot have received meaningful notice that the bankruptcy proceeding was resolving their rights or a meaningful opportunity to protect those rights, which otherwise might allow a state law cause of action for their injuries.

---

lawsuits (crushed roof cases), http://www.autosafety.org/general-motors-ck-fuel-fed-fire-litigation ("side saddle" gas tank cases), and http://www.autosafety.org/general-motors-seat-back-collapse-litigation-0 (seat back collapse cases).

Foreclosing the ability to hold the successor Purchaser liable under state successor liability laws will potentially harm thousands of people who have been or will be injured in vehicles represented by the Continuing Brands. Victims of vehicle accidents attributable to defects are injured in often life-changing ways. They may have incurred staggering medical bills because of the physical injuries they have suffered, lost income because of the time they could not work, and/or suffered the loss of family members in devastating accidents. They should not be deprived of the opportunity, because of expediency, to have their day in court as to whether the Purchaser, under the laws of the several states, remains liable for the injuries, pain and suffering they endure.

## STATEMENT OF FACTS

The Product Liability Claimant Advocates refer the Court to, and incorporate herein, the background facts set forth in their limited objection to the 363 Motion, filed contemporaneously herewith.

## ARGUMENT

I.   **Neither the language of § 363(f) nor the policy underlying it authorize a sale "free and clear" of a product liability claimant's potential successor liability claims.**

A.   **§ 363(f)'s plain meaning does not extend to successor liability choses in action.**

Code section 363(f) provides, in relevant part, that "the trustee may sell property ... free and clear of any interests in such property." Analyzing whether § 363(f) authorizes a sale "free and clear" of a products liability claimant's state law successor liability claims "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989).

The issue here turns on the phrase "*interests in such property*," the statutory language that describes what is released as part of a "free and clear" sale under § 363(f). In considering

3

the meaning of this phrase, the Court should presume that "equivalent words have equivalent meaning when repeated in the same statute." *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) (*citing Ratzlaff v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.")). As set forth in the attached **Exhibit A**, the phrase "interest(s) in property" appears 40 times in the Code. Notably, not once can the phrase "interest in property" be substituted with the word "claim" and make any sense. In this regard, the Seventh Circuit's opinion in *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp.)*, 327 F.3d 537 (7th Cir. 2003), is instructive. There, after citing to other times the phrase "interest in property" is used in the Code, the Court held that a leasehold was an "interest in property" because it was "not simply a right that is connected to or arising from the property, … but a (limited) right to the property itself." *Id.* at 545-46 (7th Cir. 2003) (distinguishing the 3rd Circuit's holding in *In re TWA*, 322 F.3d 283 (3d Cir. 2003)).

Notably, § 363(f) does not mention the word "claim." In contrast, § 1141(c) of the Bankruptcy Code provides that "property dealt with by the plan is free and clear of all *claims and interests … in* the debtor." (Emphasis added). Section 363 and 1141(c) are two mechanisms for transfer of estate property (one through a sale, the other through a plan). The difference between the words chosen by Congress in these two closely related sections shows that Congress did not intend a sale under § 363(f) to be free and clear of "*claims,*" but only of "*interests in* such property" because "'it is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.'" *City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 338 (1994) (*quoting Keene Corp. v. United States,* 508 U.S. 200, 208 (1993)); *see also N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 523 (1984) (where language in one provision shows that Congress knows how to draft to effect a

4

particular outcome, its failure to use that language elsewhere indicates that Congress intended

not to effect that outcome); *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) ("The

ancient maxim *expression unius est exclusio alterius* (mention of one impliedly excludes others)

cautions us against engrafting an additional exception to what is an already complex [statutory

scheme]."). Moreover, interpreting the term "interest" to include "claim" would render the term

"claim" in § 1141(c) superfluous. "'It is a cardinal principle of statutory construction,' that 'a

statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence,

or word shall be superfluous, void or insignificant.'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 31

(2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

      In addition, Congress had the opportunity to change the Code in considering the National

Bankruptcy Review Commission's 1997 recommendation that the differences between § 363(f)

and § 1141(c) be reconciled by expanding the "free and clear" language of § 363(f) to mirror the

language of § 1141(c). Yet, Congress chose not to do so.[3] Notably, in making this

recommendation, the Commission explained that "the difference in language between [the] two

sections raises a concern that the scope of protection regarding transfers pursuant to asset sales is

narrower than the protection afforded to transfers pursuant to a plan of reorganization." *See,*

*supra*, note 1. Yet in 2005, when Congress enacted massive revisions to the Code, both technical

and substantive, it did not amend § 363 to expand the "free and clear" language to encompass

"claims" generally that might have some connection with the property sold. *See Conn. Nat'l*

*Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must

presume that a legislature says in a statute what it means and means in a statute what it says

there.").

---

[3]   *See* Abstract of Submissions Made to National Bankruptcy Review Comm.:  http://www.abiworld.org/
AM/Template.cfm?Section=Submission_Abstract&Template=/CM/ContentDisplay.cfm&ContentID=36636 (last
visited, June 17, 2009).

The Court also should look to pre-Code practice for guidance in interpreting § 363(f)'s reference only to "interests in property" and not to "claims" generally. *Dewsnup v. Timm,* 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'"). As noted by the late Chief Judge Brozman in *Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman),* 196 B.R. 688 (Bankr. S.D.N.Y. 1996):

> The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *Midlantic Nat'l Bank v. New Jersey Dep't of Environ. Protection,* 474 U.S. 494, 501 (1986). This rule is followed with particular care in construing the Bankruptcy Code [which] should not be read to abandon past bankruptcy practice absent a clear indication that Congress intended to do so. *Pennsylvania Public Welfare Dep't v. Davenport,* 495 U.S. 552, 563 (1990). Thus, where the text of the Code does not unambiguously abrogate the pre-Code practice, court should presume Congress intended it to continue unless the legislative history dictates a contrary result. *Dewsnup v. Timm,* 502 U.S. 410, 418-20.

*Schulman,* 196 B.R at 697 n.10.

In *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville),* 837 F.2d 89 (2d Cir. 1988), the Second Circuit expounded on the pre-Code authority of a bankruptcy court "to approve settlements and to channel claims arising under the [insurance] policies to the proceeds of the settlement." *Id.* at 93. Notably, in each of the four examples given, the property was transferred free of true interests or encumbrances, but not of *in personam* claims. *Id.* Moreover, in the only case cited in which assets were sold free and clear of simple claims (civil rights claims, in particular), the Second Circuit affirmed the lower court's ruling *not* on the basis that a bankruptcy trustee has authority to sell assets free and clear of claims, but rather because there was in fact "no basis for plaintiff's claim" to hold the successor employer liable under the "substantial continuity of identity" test for successor liability. *Forde v. Kee-Lox Mfg. Co., Inc.,* 584 F.2d 4, 5-6 (2d Cir. 1978). In sum, therefore, nothing in pre-Code practice establishes the

6

notion that bankruptcy sales can be effectuated free and clear of claims against the purchaser based on theories of successor liability.

The legislative history to § 363(f) is also instructive in two ways.  First, it establishes, consistent with the judicial presumptions and pre-Code practice described above, that the new proposed Code section on "sales free of interests of third persons" "codifies case law insofar as it recognizes the right of the trustee to sell property of the estate free and clear of liens and other interests that can be reduced to dollars." H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., at § 5-203 (Sale of Property of the Estate), note 2.   The legislative history makes no reference to such sales being washed free of *in personam* claims for successor liability.  Second, the legislative history cannot sensibly be read to include the notion that a bankruptcy sale can be ordered free and clear of *in personam* claims.  Both the final House and Senate Reports on Section 363 provide:

> At a sale free and clear of other interests, any holder of any interest in the property being sold will be permitted to bid.  If that holder is the high bidder, he will be permitted to offset the value of his interest against the purchase price of the property.

H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977), pp. 345-46; S. Rep No. 2266, 95th Cong 1st Sess. (1977), p. 56.  One cannot substitute "claims against" for "interest in" and make any sense of the rights of such holder; it would be absurd to argue that a holder of a general unsecured claim has a right to credit bid its claims in an auction and "offset the value of his [claims] against the purchase price of the property."

Further support that § 363(f)'s use of the term "interests in property" does not include *in personam* claims for successor liability is found in *Butner v. United* States, 440 U.S. 48 (1979), which is best known for the proposition that—except where Congress has specifically chosen to exercise its power to fashion applicable rules of bankruptcy law—"Congress has generally left

the determination of property rights in the assets of a bankrupt's estate to state law." *Butner*

states:

> Propert y interests are created and defined by state law.  Unless some federal interest
> requires a different result, there is no reason why such interests should be analyzed
> differently simply because an interested party is involved in a bankruptcy proceeding.
> Uniform treatment of property interests by both state and federal courts within a State
> serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from
> receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Id.* at 55 (citation omitted).

*Barnhill v. Johnson,* 503 U.S. 393 (1992), took *Butner* one step further.  In holding that

the "transfer" of an "interest in property" had occurred at the time the debtor's check was

honored, not at the time the check was delivered, *Barnhill* establishes that a "nebulous right to

bring suit" is not an "interest in property":

> There is thus some force in petitioner's claim that he did, in fact, gain something when he
> received the check.  But at most, what petitioner gained was a chose in action against the
> debtor.  Such a right, however, cannot fairly be characterized as a conditional right to
> "property ... or an interest in property," where the property in this case is the account
> maintained with the drawee bank.  For as noted above, until the moment of honor the
> debtor retains full control over disposition of the account and the account remains subject
> to a variety of actions by third parties.  **To treat petitioner's nebulous right to bring
> suit as a "conditional transfer" of the property would accomplish a near-limitless
> expansion of the term "conditional."  In the absence of any right against the bank
> or the account, we think the fairer description is that petitioner had received no
> interest in debtor's property, not that his interest was "conditional."**

*Id.* at 400-401 (emphasis added).  Also instructive is *United Savings Assn. of Texas v. Timbers of*

*Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988), which held that "the 'interest in property'

protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure." *Id.*

at 371.

Reading "interest in property" as broadly as the Debtors request in their Motion,

however, would contravene the holdings of *Barnhill* and *Timbers* each of those cases involved

the same kind of "nebulous right" or "chose in action" that the Debtors here are seeking to enjoin

through its proposed "free and clear" sale, yet in neither of those cases were those rights

considered "interests in property."

**B. The Court should decline to follow the *Chrysler* court's opinion authorizing a sale "free and clear" of successor liability choses in action.**

In the recent decision in *In re Chrysler*, 405 B.R. 84 (Bankr. S.D.N.Y. May 31, 2009), the

court held that tort claims are "interests in such property" under § 363(f).  As explained below,

that decision was incorrect for several reasons.  First, a narrower reading that would exclude *in*

*personam* choses in action from the coverage of "interests in property" under § 363(f) is amply

supported by a long line of cases, including *In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr.

N.D. Ohio 1987), and *Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.)*, 19

B.R. 323 (Bankr. W.D. Wash. 1982).  The *Chrysler* decision cited these cases as authority for

extending § 363(f)'s coverage to *in personam* choses in action, but it fact, these cases support the

*opposite* conclusion.  *See White Motor*, 75 B.R. 948 ("General unsecured claimants, including

tort claimants, have no specific interest in a debtor's property.  Therefore, section 363 is

inapplicable for sales free and clear of such claims."); *Rubinstein*, 19 B.R. at 326 (Title VII

claimants are general unsecured creditors who lack "an interest in the specific property of the

estate being sold" under § 363(f)).

*American Living Sys. v. Bonapfel (In re All Am. Of Ashburn, Inc.)*, 56 B.R. 186 (Bankr.

N.D. Ga. 1986), upon which the *Chrysler* court also relied, did not conclude that *in personam*

claims are "interests in property" for purposes of § 363(f).  Rather, like *White Motor* and

*Rubinstein*, that case was decided without a single reference to the section's "interest in

property" language.  *Id.* at 190.

In fact, almost every case that has closely examined the language, history, and policies of

§ 363(f) has concluded that the section does not authorize sales "free and clear" of *in personam*

9

choses in action for successor liability.[4] *In re TWA*, 322 F.3d 283 (3d Cir. 2003), on which the

*Chrysler* court relied, is one of the few exceptions. *See also In re Leckie Smokeless Coal Co.,* 99

F.3d 573 (4th Cir. 1996).

For example, in the Seventh Circuit case of *Qualitech Steel,* Judge Posner, writing for a

unanimous panel, held that § 363(f)'s reference to "any interest" was "sufficiently broad to

include Precision's possessory interest as lessee," but rejected *TWA*'s more expansive definition

of "any interest" as meaning "a right that is connected to or arising from the property," stating:

> The Bankruptcy Code does not define "any interest," and in the course of applying
> section 363(f) to a wide variety of rights and obligations related to estate property, courts
> have been unable to formulate a precise definition. *Folger Adam Security, Inc. v.
> DeMatteis/MacGregor, JV,* 209 F.3d 252, 258 (3d Cir. 2000).… [We] conclude that the
> term "any interest" as used in section 363(f) is sufficiently broad to include Precision's
> possessory interest as a lessee. BLACK'S defines "interest" to mean "[a] legal share in
> something; all or part of a legal or equitable claim to or right in property." BLACK'S LAW
> DICTIONARY, 816 (7th ed. 1999). The right that a leasehold confers upon the lessee is one
> to possess property for the term of the lease. It is, therefore, not simply a right that is
> connected to or arising from the property, *see In re Trans World Airlines, Inc.,* 322 F.3d
> 283, 289-90 (3d Cir.2003), but a (limited) right to the property itself. That right readily
> may be understood as an "interest" in the property. This inclusive interpretation of the
> phrase "any interest" is consistent with the expansive use of that same phrase in other
> provisions of the Code. *See, e.g.,* 11. U.S.C. § 541(a)(3), (4), (5), and (7) (identifying
> various interests comprising property of the estate).

---

[4]   Federal cases include *Michigan Empl. Sec. Comm. v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132 (6th Cir. 1991) (agreeing with *White Motor* "that general unsecured claimants fall within the scope of those interests that can be discharged pursuant to section 363(f)"); *Kattula v. Republic Bank (In re LWD, Inc.),* No. 5:08-CV-121-R, 2009 WL 367738 at *4 (W.D. Ky. Feb. 12, 2009) (free and clear language of § 363 sale order enjoining successor liability claims "applies only to estate property … and does not contemplate protection against personal liability claims"); *Miller v. Level 3 Comms., LLC,* No. 03-4451, 2005 WL 1529419 at *9 (D.N.J. June 29, 2005) ("the Bankruptcy Court [free and clear sale] Order may not defeat application of the eight factors set forth by the Secretary of Labor [for evaluating whether an employer qualifies as a successor in interest for purposes of the Act"); In *re Eveleth Mines, LLC,* 312 B.R. 634 , 654 (Bankr. D. Minn. 2004) ("In the last instance, the reasoning of the [*TWA* and *Leckie*] opinions fails on an alternate basis: they do not take the inquiry back to where it belongs, the governance of state law in the defining of "interest."); *Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.),* 184 B.R. 910, 918 (Bankr. W.D. Tex. 1995), *vacated as moot on equitable grounds,* 220 B.R. 909 (W.D. Tex. 1998) ("Were we to allow 'any interests' to sweep up *in personam* claims … we would render the words 'in such property' a nullity. No one can seriously argue that *in personam* claims have, of themselves, an *interest in property.*").

State cases include: *Kattula v. Republic Bank,* 2008 WL 4606076 (Mich. App. Oct. 7, 2008) ("Section 363(f) is not intended to extinguish *in personam* liabilities."); *Lefever v. K.P. Hovnanian Enters., Inc.* 160 N.J. 307, 320 (1999) (products liability claimant had no "interest" in the sense of a lien or encumbrance on the property); *Gross v. Trustees of Columbia Univ.,* 816 N.Y.S. 2d 695 (N.Y. Sup. 2006) (follows *Lefever* in case applying NJ law).

*Qualitech Steel.,* 327 F.3d at 545-46 (citations omitted); *see also Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 163 (7th Cir. 1994) (in holding that bankruptcy court had no jurisdiction over post-confirmation products liability claim, noting that "[i]t is true that [the debtor's] assets were sold to [the purchaser] free from all liens and other encumbrances. And such a cleansing of the assets in the bankruptcy sale is a valid power of a bankruptcy court, 11 U.S.C. §§ 363(f), 1141(c). But the [claimants] are not attempting to enforce a lien.").

Thus, the *Chrysler* court erred in following *TWA* and authorizing the sale of Chrysler's assets free and clear of potential *in personam* or successor liability claims against New Chrysler. In *TWA*, the Third Circuit affirmed a bankruptcy court's order that a 363 sale to American Airlines of TWA's operating assets would be "free and clear" of both pending employment discrimination claims and rights under a travel voucher program established in settlement of a sex discrimination action initiated by TWA's flight attendants. However, not only did *TWA* misinterpret the phrase "interests in property" in § 363, but it —and *Leckie Smokeless Coal,*[5] the case upon which it primarily relies—failed to articulate coherent policy grounds authorizing such sales "free and clear" of all such claims.

As explained in *In Eveleth Mines, LLC,* 312 B.R. 634 (Bankr. D. Minn. 2004), the problem with both *TWA* and *Leckie* is that they "are built on an amorphously inclusive rationalization [that] posits a loose sort of 'but-for' causality that is thrown up to identify the straw-built 'interest' that then is vanquished." *Id.* at 654.

---

[5]    *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal),* 99 F.3d 573 (4th Cir. 1996) (debtor's assets could be sold "free and clear" of obligations under the Coal Industry Retiree Health Benefit Act of 1992, which imposed joint and several liability on any "successor in interest" to a covered coal producer).

*TWA* and *Leckie* adopt tortured reasoning to shoehorn the claim at issue into an "interest in property" that can be wiped out in a "free and clear" sale under § 363(f). They both reason that the successor liability claims at issue were an "interest in" the property transferred because had the debtor not deployed the assets sold in the particular manner that subjected it to the particular claim at issue, then the claimants would have had no claim upon which the successor could be liable. *See TWA,* 322 F.3d at 290 ("Had TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen. Further, TWA's investment in commercial aviation is inextricably linked to its employment of the ... claimants ... and its ability to distribute travel vouchers as part of the settlement agreement."); *Leckie,* 99 F.3d 573, 582 ("[I]f Appellees had never elected to put their assets to use in the coal-mining industry, and had taken up business in an altogether different area, the Plan and Fund would have no right to seek premium payments from them.").

This interpretation of "interest in such property," however, would render the term "interest in property" meaningless as it would be all-encompassing. After all, hardly any claim arises other than as a result of the debtor's particular use of the assets. As Justice Scalia warned in writing for the majority in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), a court should not "torture [the text] into meaning" for "such word-gaming would deprive the criterion of all meaning." *Id.* at 538 n.4.

Moreover, "the reasoning of these opinions fails" because, as explained above, "they do not take the inquiry back to where it belongs, the governance of state law in the defining of 'interest'." *Eveleth Mines,* 312 B.R. at 654. "As recognized in *Butner,*" the *Eveleth Mines* court concluded, "this is a matter of federalism." *Id.* (*citing Butner,* 440 U.S. at 52-56).

Equally flawed are the policy considerations relied upon by *TWA* and *Chrysler* in permitting sales free and clear of successor liability claims against the purchaser.  According to *TWA*, "allowing the claimants to seek a recovery from the successor entity while creditors which were accorded higher priority by the Bankruptcy Code obtained their recover from the limited assets of the bankruptcy estate would 'subvert the specific priorities which define Congressional policy for bankruptcy distribution to creditors.'"  *TWA*, 322 F.3d at 292 (*quoting New England Fish Co.*, 19 B.R. at 329).  Such a *per se* rule, however, was rejected by the Seventh Circuit in *Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkim*, 59 F.3d 48 (7th Cir. 1995), which stated:

> What imposition of successor liability would accomplish, and what the district court objected to, would be a second opportunity for a creditor to recover on liabilities after coming away from the bankruptcy proceeding empty-handed.  But a second chance is precisely the point of successor liability, and it is not clear why an intervening bankruptcy proceeding, in particular, should have a *per se* preclusive effect on the creditor's chances…. Instead of being dispositive, however, the availability of relief from the predecessor is a factor to be considered along with other facts in a particular case.  Here, those facts include the apparent nature of the acquisition of Old Tasemkin by New Tasemkin-which clearly had the effect, intended or not, of frustrating unsecured creditors while resurrecting virtually the identical enterprise.

*Id.* at 51.  *Cf. Anderson v. J.A. Interior Applications, Inc.,* No. 97-4552, 1998 WL 708851 (N.D. Ill. 1998) (rejecting concerns that successor claimants will elevate their priority rights by noting that "[c]reditors ahead of plaintiffs in the bankruptcy proceedings are thus entitled to the same distribution of assets regardless of whether plaintiffs recover anything from [the debtor's] successor").

*TWA* and *Chrysler* also rely on the notion that "the policy underlying section 363(f) is to allow a purchaser to assume only the liabilities that promote its commercial interests."  *Chrysler,* 405 B.R. at 111 (citing *New England Fish Co.* and *White Motor Credit*); *TWA,* 322 F.3d at 292-93 ("Absent entry of the Bankruptcy Court's order providing for a sale of TWA's assets free and

13

clear of the successor liability claims at issue, American may have offered a discounted bid.").

But here, the proposed sale is being effected primarily through a credit bid by GM's senior

secured lender of its debt, and no less consideration would flow to the estate if product liability

claims were allowed to go forward in states that allow such actions to be pursued against

successor purchasers of the assets. Regardless, it is inappropriate to release claims against a non-

debtor just because of its contributions to the debtor's estate. *See In re Karta Corp.,* 342 B.R.

45, 55 (S.D.N.Y. 2006) ("[C]onditioning of financial participation by non-debtors on releases …

is subject to … abuse.") *cf., Tasemkim,* 59 F.3d at 50-51 ("[T]he potential for chilling does not

vary as a function of a company's precise degree of distress, and there is no reason to accord the

purchasers of formally bankrupt entities some special measure of insulation from liability that is

unavailable to ailing but not yet defunct entities."); *Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d

159, 163 (7th Cir. 1992) (extinguishing state law rights in order to increase the value of the

debtors' property "would not only [] harm [] third parties…, but [would provide an] incentive to

enter bankruptcy for reasons that have nothing to do with bankruptcy").

    In sum, the Code's plain meaning does not support the result sought by GM here.

Although the proposed sale is presented as a needed step to preserve a company important to the

U.S. economy, "it was and is for the legislature to pass on [these] policy choice[s] … [for] the

job of the courts is limited to ascertaining what policy choice Congress *did* make, not what

policy choice Congress *should have* made." *Fairchild Aircraft,* 184 B.R. at 919 (emphasis in

original); *see also Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 24-25 (2000) ("Bankruptcy

courts are not authorized in the name of equity to make wholesale substitution of underlying law

controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code

itself provides.").

## II.   The Court lacks subject matter jurisdiction over post-closing disputes between products liability claimants and the successor Purchaser.

Bankruptcy courts are courts of limited jurisdiction.  Under § 1334(b), district courts have original jurisdiction over civil proceedings "arising under" title 11 or "arising in" or "related to" a case under title 11.  The district courts may in turn refer such cases to the bankruptcy judges for that district.  28 U.S.C. § 157(a).

GM is asking the Court to exercise jurisdiction to enjoin product liability claimants from bringing successor liability claims against the Purchaser after the § 363 sale closes.  This Court, however, does not have the subject-matter jurisdiction under 28 U.S.C. § 1334 to enjoin such suits because the outcomes of such actions are unrelated to this bankruptcy proceeding.  "Related to" jurisdiction exists when:

> [T]he *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . .* An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the bankrupt estate.

*Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (emphasis in original) (*quoting Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  Although "any effect" may appear to sanction a broad grant of authority, the *Celotex* Court warned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless."  514 U.S. at 308.

Generally, courts find "related to" jurisdiction exists over a third-party action when "the subject of the third-party dispute is property of the estate" or "the dispute over the asset would have an effect on the estate."  *In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008) (*quoting Feld v. Zale Corp. (In re Zale Corp.*), 62 F.3d 746, 753-54 (5th Cir. 1995)), *rev'd on other grounds, Travelers Indemnity Co. v. Bailey*, No. 08–295, 2009 WL 1685625 (June 18,

2009).[6]  Conversely, courts will not find "related to" jurisdiction exists over third-party actions

"when the asset in question is not property of the estate and the dispute has no effect on the

estate." *Johns-Manville Corp.*, 517 F.3d at 65.  Additionally, that an action between non-debtor

third-parties shares facts or other similarities with the debtor-creditor relationship is insufficient

to establish "related to" jurisdiction over the third-party action.  *Id.*

Here, the product liability claimants' successor liability claims—to the extent they exist

under applicable state law—will be asserted solely against the non-debtor Purchaser and thus

will not diminish the Debtors' estates.  *See Zerand-Bernal Group*, 23 F.3d at 162 (in holding that

product liability claim brought under state law theory of successor was not "related to" and did

not "arise under" the Bankruptcy Code, explaining that the claimants' action was "neither by nor

against the Debtor").  Further, such suits will not affect the Purchaser's offered acquisition price

because the Purchaser is obtaining the assets largely through a credit bid.  Therefore, the Court

does not have "related to" jurisdiction over such claims, and cannot enjoin them.

Moreover, "[s]ubject matter jurisdiction cannot be 'confered by consent' of the parties."

*Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d Cir.

2004) (*quoting Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996)); *Cable

Television Ass'n of New York v. Finneran*, 954 F.2d 91, 94 (2d Cir. 1992) ("[T]he parties may not

confer subject matter jurisdiction on the court by consent.") (*citing Insurance Corp. of Ireland,

Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  As such, the fact that the

363 sale is contingent upon entry of an order that enjoins successor liability claims is insufficient

---

[6]  On June 18, 2009, the Supreme Court reversed the Second Circuit's decision in *Johns-Manville*, but only based on the "narrow" holding that once the bankruptcy court's orders of 1986 became final on direct review, they became *res judicata* as to the parties. *Bailey*, 2009 WL 1685675, at *11.  The narrowness of the holding, coupled with the absence of any disagreement with the categorical statement in the dissent that " bankruptcy court has no authority … to adjudicate, settle, or enjoin claims against nondebtors that do not affect the debtor's estate, strongly suggests that were the issue on the bankruptcy court's authority to enjoin actions between non-debtors again was presented to the Second Circuit, its ruling on this issue would not change. *See Bailey*, 2009 WL 1685675, at *14 (Stevens, J., *dissenting*).

to establish "related to" jurisdiction, for "a debtor [cannot] create subject matter jurisdiction over any non-debtor third party by structuring a plan in such a way that it depend[s] upon thirty-party contributions." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 228-29 (3d Cir. 2004); *cf., Johns-Manville*, 517 F.3d at 66 (it is "inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate."), *rev'd on other grounds, Bailey, supra..* The Debtors' desire to facilitate a 363 sale "may not be used as a jurisdictional bootstrap when no jurisdiction otherwise exists." *Id.* at 68.

Even the outside chance that allowing these claims to proceed after the sale might, if successful, give rise to a claim by the Purchaser against the Debtors for breach of the MPA is not in itself sufficient to establish "related to" jurisdiction. *Cf., Pacor*, 743 F.2d at 995 (holding that a potential indemnity claim against the debtor did not give rise to "related to" jurisdiction over a third-party action because "[t]he fact remains that any judgment received by the [non-debtor plaintiff] could not itself result in even a contingent claim against [the debtor], since [the third-party defendant] would still be obligated to bring an entirely separate proceeding to receive indemnification.").

Finally, the Court lacks jurisdiction to enter the proposed Sale Order because a bankruptcy court does not have stand-alone powers to make determinations on common or state law questions. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 84 (1982). After the *Marathon* decision, Congress amended the law in 28 U.S.C. § 157(c)(1) to provide that bankruptcy judges may hear a non-core proceeding that is otherwise "*related to*" the bankruptcy case. *Ralls v. Docktor Pet Centers,* Inc., 177 B.R. 420, 423 (D. Mass. 1995). The determination of whether the Purchaser is a successor (*e.g.,* under theories of "mere continuation," "continuity

of enterprise," or "product line exception") are questions of state law.  *See generally* Michael H.

Reed, *Successor Liability and Bankruptcy Sales Revisited—A New Paradigm*, 61 BUS. LAW. 179,

184 (2005) ("The rights of common law successor liability claimants … usually are 'created and

defined' by state law and clearly appear to be substantive rights").  Such traditional state law

actions qualify under any measure as "non-core" matters as to which this Court may only submit

proposed findings of fact and conclusions of law to the district court (*see* 28 U.S.C. § 157(c)(1)),

assuming it can even hear the matter at all (*see* 28 U.S.C. § 157(b)(5)).  *Marshall v. Marshall*,

547 U.S. 293, 303 (2006) ("A bankruptcy court may exercise plenary power only over core

proceedings.  In noncore matters, a bankruptcy court may not enter final judgment; it has

authority to issue only proposed findings of fact and conclusions of law, which are reviewed *de
novo* by the district court").

Regardless, consideration of such issues is premature and not ripe for adjudication since

the facts needed to establish the purchaser's post-sale order conduct cannot possibly be

considered before the sale has even been consummated..  *See e.g., Bes Enterprises, Inc. v.

Natanzon*, No. 06-870, 2006 WL 3498419, at *5 (D. Md. Dec. 4. 2006) (motion to dismiss

denied because more facts were needed to establish the purchaser's post-sale order conduct).

### III.  The Purchased Assets cannot be sold "free and clear" of successor liability for future tort and product liability claims.

The Master Purchase Agreement and Proposed Sale Order contain language that purports

to release the purchaser from successor liability for future product liability and tort claims.  *See,

e.g.*, MPA at 94 (stating that Purchaser will not have any successor liability "whether now

existing or hereafter arising").  For two reasons, GM cannot be sold free and clear of claims that

have not yet arisen.  First, such future claims are not within the statutory language of § 363(f).

Second, due process principles do not allow GM to eliminate rights of future claimants, who

have not and could not have received meaningful notice that their rights in a future suit are being lost, and thus have had no opportunity to seek to preserve those rights.

To begin with, as discussed above, product liability claims in general are not "interests in such property" under the opening sentence of § 363(f).  But even if current claims could be considered  interests in such property under that section, future claims cannot.  People who have not yet suffered injury or loss because of GM's behavior cannot have an interest in its property because the injuries that would lead them to have such an interest have not yet even occurred.

Moreover, even if § 363(f) applied to "claims" (as opposed to "interests"), the future causes of actions of people who have not yet suffered a loss or injury due to the defect in their vehicles would not be covered.  "The term 'claim' means . . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).  A person who has not yet suffered a loss or injury has no right to payment of any kind from the debtor.  As the Seventh Circuit stated in *Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000), addressing a hypothetical remarkably similar to the case at hand:

> Suppose a manufacturer goes bankrupt . . . .   And suppose that ten million people own automobiles manufactured by it that may have the same defect that gave rise to [product liability] suits but, so far, only a thousand have had an accident caused by the defect.  Would it make any sense to hold that all ten million are tort creditors of the manufacturer and are therefore required, on pain of having their claims subordinated to early filer, to file a claim in the bankruptcy proceeding?  Does a pedestrian have a contingent claim against the driver of every automobile that might hit him?  We are not alone in thinking that the answer to these questions is "no."

*Id.* at 960.  *See also Epstein v. Official Comm. Of Unsecured Creditors of Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 58 F.3d 1573 (11th Cir. 1995) (holding that prepetition manufacture, design, sale, and distribution of airplanes was insufficient to establish a

"claim" for future victims in the bankruptcy proceeding because "there [was] no preconfirmation exposure to a specific identifiable defective product or any other preconfirmation relationship between [the manufacturer] and the broadly defined class of Future Claimants"); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1274 *(*5th Cir. 1994) (refusing to extend term "claimants" to include people "whom the record indicates were completely unknown and unidentified at the time [the company] filed its petition and whose rights depended entirely on the fortuity of future occurrences"); *In re Chateaugay Corp.*, 944 F.2d at 1003-04 ("Accepting as claimants those future tort victims whose injuries are caused by pre-petition conduct but do not become manifest until after confirmation, arguably puts considerable strain not only on the Code's definition of 'claim,' but also on the definition of 'creditor.'"); *cf., Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 944 (3d Cir. 1985) (claims for personal injuries that developed after a bankruptcy not dischargeable "claims" or "interests" under prior version of Bankruptcy Act).

Furthermore, even if future claims did meet the threshold requirement of "interests in property" under § 363(f), GM's assets cannot be sold free and clear of them unless one of the five conditions set forth in § 363(f) is met. Here, GM is relying on § 363(f)(5), which allows sale free and clear of claims that can be "compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Future claims—causes of action that have not yet even accrued—do not and cannot be made to fit within this paragraph. People with no current claim do not have an interest that can be reduced to a monetary value; they have not yet been injured, so they cannot know the nature or extent of an injury yet to occur. It would be impossible for GM to bring a proceeding against any future claimant to compel him or her to accept money in exchange for a claim that has not yet arisen. The plain meaning of the statute thus forecloses GM's effort to make the sale free and clear of these future claims.

20

The sale of GM "free and clear" of tort and product liability claims that have yet to arise also violates due process. Because people who will, but have not yet, suffered injury from defects in GM vehicles do not know that they will be injured in the future, they cannot be given either meaningful notice that their rights are being adjudicated or a meaningful opportunity to be heard. As the Third Circuit stated in *Schweitzer*, it would be "absurd" to expect a "person who had no inkling" that he would be injured by the debtor's product years in the future to file a claim in the debtor's bankruptcy proceedings to preserve his rights. 758 F.2d at 943; *see also In re Pettibone Corp.*, 151 B.R. 166, 172 (Bankr. N.D. Ill. 1993) ("[T]he argument implies that *uninjured* persons who wish to protect themselves in event of future injuries have the burden of monitoring national financial papers . . . to read notices about businesses they have no claims against because they are on notice of claim bar dates affecting any future injuries caused by such companies. Franz Kafka would have been able to accept such a legal principle in one of his stories; the Bankruptcy Code and the Fifth Amendment to the United States Constitution cannot.") (emphasis in original).

In its motion to approve the sale, GM requests that publication notice be deemed sufficient notice to those whose identities are unknown to the debtor. But the problem here is not just that GM has been unable to provide individualized notice to people with future claims; the problem is that people with future claims do not *themselves* know that they will be injured by defects in GM's products. Even if they saw a notice in a newspaper, people who have not yet been injured—some of whom may not even own a GM vehicle—would not know that the sale would affect them. These individuals have neither claims against nor knowledge that they will ever have a cause of action against GM. See *Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle Co.)*, 210 B.R. 747, 760 (Bankr. N.D. Ill. 1997), *aff'd,* 217 B.R. 790 (N.D. Ill.

1997) (holding that it would violate due process to bind future victims to terms of sale order because "without knowing today who will be injured tomorrow, notice to particular individuals who may be injured in the future cannot be given" and "it is "doubtful that any general warning would have motivated future victims to participate actively in the bankruptcy proceeding"); *Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.),* 198 B.R. 519, 538 ("Identifying persons who might come in close proximity to any of Kewanee's boilers that were manufactured imperfectly would have been impossible … [and] [w]hile a list could have been compiled of those who had purchased all the boilers, it is doubtful that notice to such parties and their employees could have reached all future victims of malfunctioning boilers or that anyone would have known what to do with notice of a bankruptcy as to which they then had no claim of injury.). And although some courts have sought to address the inability of people with future claims to be heard in court on those claims by providing for those people in the bankruptcy proceeding, GM has not done so here. *Cf., Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001) (holding that post-1994 asbestos claimants were not bound by settlement that purported to settle future claims but did not provide for recovery for injuries discovered after 1994).

Many courts have recognized the constitutional problem caused by attempting to discharge or foreclose future claims in a bankruptcy proceeding. *See In re Chateaugay*, 944 F.2d 997, 1003 (2d Cir. 1991) (recognizing the "enormous practical and perhaps constitutional problems" that would arise from considering future claims to be "claims" under the Bankruptcy Code); *Schweitzer*, 758 F.2d at 944 ("[A]n interpretation of 'interests' that included plaintiffs' future tort actions would raise constitutional questions."); *Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.)*, 730 F.2d 367, 375 (5th Cir. 1984) ("[L]ack of notice might well require us to find that the bankruptcy court's prior judgment was ineffective as to the [future claimants']

22

claims."); *In re UNR Indus., Inc.*, 725 F.2d 1111, 1119 (7th Cir. 1984) (stating that the difficulties of giving constitutionally adequate notice to the thousands of people exposed to asbestos sold by UNR but who had not yet developed asbestosis were "possibly insurmountable").  This Court should avoid the difficult constitutional questions that would arise from clearing the Purchaser of liability for claims that do not yet exist, and make clear that the sale does not release the claims of consumers who will be injured or suffer losses in the future as a result of defects in GM vehicles.

## CONCLUSION

The limits of the Bankruptcy Court's power will be on display in this case as never before.  Through this objection, the Product Liability Claimant Advocates ask the Court to respect the jurisdictional boundaries of the Court and the statutory directives of Congress and deny the Debtors' request to bar present and future product liability claimants from pursing claims against the Purchaser post-closing under applicable state law theories of successor liability.

Dated:  June 19, 2009

Respectfully submitted,

CALLAN CAMPBELL, KEVIN JUNSO, ET AL.,
EDWIN AGOSTO, KEVIN CHADWICK, ET AL., AND
JOSEPH BERLINGIERI

By:_____/s/ Steve Jakubowski_____
          One of Their Attorneys

Steve Jakubowski (IL ARDC# 6191960)
Elizabeth Richert (IL ARDC# 6275764)
THE COLEMAN LAW FIRM
77 West Wacker Drive, Suite 4800
Chicago, IL  60601
Tel:  (312) 606-8641
Fax:  (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorneys for Callan Campbell, Kevin Junso, *et al.,*
Edwin Agosto, Kevin Chadwick, *et al.* and Joseph
Berlingieri


CENTER FOR AUTO SAFETY, CONSUMER ACTION,
CONSUMERS FOR AUTO RELIABILITY AND SAFETY,
NATIONAL ASSOCIATION OF CONSUMER
ADVOCATES, AND PUBLIC CITIZEN

By:_____/s/ Adina H. Rosenbaum_____
          One of Their Attorneys

Adina H. Rosenbaum
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone:  (202) 588-1000
arosenbaum@citizen.org

Attorneys for Center for Auto Safety, Consumer
Action, Consumers for Auto Reliability and Safety,
National Association of Consumer Advocates, and
Public Citizen