**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**In re**

**GENERAL MOTORS CORPORATION,** *et al.*          **Case No. 09-50026 (REG)**
                                                  **(Jointly Administered)**

                                    **Debtors.**

_____

## LIMITED OBJECTIONS OF THE STATE OF NEW YORK TO DEBTORS' MOTION FOR AN ORDER APPROVING SALE OF ASSETS PURSUANT TO 11 U.S.C. § 363

The State of New York ("State") on behalf of the New York State Department of

Environmental Conservation ("DEC") respectfully submits the following limited objections to

the motion by the Chapter 11 debtors, General Motors Corporation and certain of its subsidiaries

("Old GM" or "Debtors"), for an order approving the sale of certain assets pursuant to, *inter alia*,

11 U.S.C. § 363 ("Sale Motion"). The relief requested in the Sale Motion, as reflected in the

Master Sale and Purchase Agreement ("MSPA") and the proposed order approving the sale, is

not authorized by 11 U.S.C. § 363 and improperly impairs the DEC's regulatory authority under

State and federal environmental laws. The requested relief also improperly purports to eliminate

the purchaser's liability as the owner and operator of real property under applicable State and

federal environmental laws and the compliance obligations imposed under those laws. Finally,

the motion asks the court to find that the purchaser is not the successor to Old GM, in the

absence of the requisite factual predicate for such a finding.

DEC does not otherwise object to the Sale Motion and its limited objection is only to

those portions of the sale that purport to determine successor liability, to eliminate the

Purchaser's environmental compliance obligations regarding the assets acquired, and to

1

disregard New York's environmental laws and regulations, which protect the State's citizens and natural resources.

Accordingly, DEC respectfully requests that the Court provide in the order approving the sale, language that makes clear that the order is not intended to affect the environmental liability or compliance obligations of the Debtors or the asset Purchaser, and does not impair the police and regulatory authority of any governmental entity under applicable State and federal environmental laws with respect to the assets transferred or excluded.  The court should also defer any finding with respect to whether the asset purchaser is a successor to Old GM.  Such a determination is more appropriately made in the context of a case or controversy in which such liability is asserted.

## Background

1.      On June 1, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  The Debtors at the same time filed the Sale Motion, which asks the Court to approve the sale of substantially all of the Old GM's assets as a going concern to a purchaser "sponsored" by the United States Treasury Department and described as "Vehicle Acquisition Holdings LLC."  The Debtors filed with the Sale Motion the MSPA and certain exhibits and schedules.  To date, the Debtors have not filed their schedules of assets and liabilities, nor their statement of financial affairs, and instead have sought leave to extend the time to file both.

2.      The real property assets of Old GM to be sold under the MSPA are not specified in the Sale Motion, but presumably include several sites located in New York that have on-going environmental compliance obligations and/or contamination.  These sites are in various regulatory stages of investigation, remediation and/or monitoring.  Some are under DEC

2

administrative orders, which obligate the performance of certain remedial and/or other

compliance measures imposed under State and/or federal environmental laws. These real

property assets are located throughout New York, including in Potsdam (St. Lawrence County),

Victory (Cayuga County), Syracuse (Onondaga County), Salina (Onondaga County), Henrietta

(Monroe County), Rochester (Monroe County), Lockport (Niagara County), North Tarrytown

(Westchester County), Buffalo (Erie County), Tonawanda (Erie County), and East Elmhurst

(Queens County) ("New York Sites").

   3.  Old GM has executed with DEC and is bound by numerous administrative orders

related to the New York Sites. Together with New York State environmental laws and

regulations, these legally enforceable orders govern the compliance obligations of Old GM and

any successor owner/operator at the New York sites. These compliance obligations include

investigating the nature and extent of contamination or other violations of law, the abatement of

such contamination or violations, remediation of impacts to environmental media, including soil,

sediment, surface and groundwater, and long term monitoring, inspection and maintenance of

remedial measures. New York law requires not only remedial measures at these sites, but also

long-term monitoring to assure that the measures undertaken continue to be effective for the

protection of public health and the environment. In addition, DEC often imposes "institutional

controls" at contaminated sites such as deed restrictions, for the purpose of preventing human

exposure to contaminants and to protect the public health.

## Excluded Assets

   4.  The MSPA contains a list of "Excluded Real Property" assets that are not

acquired as part of the sale (*see* MSPA, Exhibit F). The list of excluded property includes a New

York hazardous waste site known as the General Motors Central Foundry located in the Town of

3

Massena, St. Lawrence County, New York ("GM Massena").  Old GM owns and operates GM

Massena, which is bordered on the north by the St. Lawrence River, on the south by the Raquette

River, and on the east by the St. Regis Mohawk Indian Reservation (also known as the

Akwesasne Reservation).  During the time of Old GM's ownership and operation of the GM

Massena property, the company released hazardous substances to the environment, including

polychlorinated biphenyls ("PCBs").  The GM Massena facility performed aluminum die casting

for use in the manufacture of automobile components, including engines, transmissions and

cylinder heads.  As part of its operation, GM Massena used hydraulic fluids containing PCBs and

generated significant amounts of PCB-laden sludge and other PCB waste.  The PCB sludge and

waste was disposed in four lagoons located on the GM Massena property, where waste "solids"

were settled before the PCB waste was discharged into the St. Lawrence River.  PCBs

contaminated the entire GM Massena site as well as the St. Lawrence River, the Raquette River,

and other waterways.  PCBs also migrated from the GM Massena property to off-site areas,

including adjacent properties such as the Akwesasne Reservation.

5.      As a result of the nature and extent of contamination at GM Massena, the State

listed the site on the New York State Registry of Hazardous Waste Sites and classified it as one

posing a significant threat to human health and the environment pursuant to Environmental

Conservation Law ("ECL") Article 27, title 13.  The United States Environmental Protection

Agency ("EPA") listed the GM Massena site on the federal National Priority List ("NPL")

pursuant to 42 U.S.C. § 9605 and 40 C.F.R. Part 300.  The New York State Department of

Health ("DOH") found that GM Massena constitutes a serious public health hazard.  To address

the contamination, EPA with the State's concurrence issued two separate Records of Decision

("RODs") requiring clean up measures at the site and at off-site areas, and long term monitoring

4

and maintenance to assure the effectiveness of the remedial measures.  Pursuant to the two

RODs, Old GM then undertook remedial measures to clean up the contamination at the GM

Massena property and in certain off-site areas.  Those remedial measures and long term

monitoring and maintenance remain on-going at this time.

6.      Although Old GM undertook remedial measures at GM Massena pursuant to the

EPA RODs, significant contamination remains today in both on and off-site areas, including in

groundwater.  Thus, the remediation requirements set forth in the EPA RODs have not been fully

implemented or completed.  The current levels of contamination at GM Massena violate New

York law and DEC cleanup objectives and require further action.  For example, the PCB

contamination in groundwater exceeds acceptable levels.  *See* 6 NYCRR § 703.  There remains a

potential for human exposure to the contamination and the natural resources of the State continue

to be significantly impacted.  Migration of contaminated groundwater toward the St. Lawrence

River has not yet been controlled.  DOH continues to identify the GM Massena site as a public

health hazard due to the potential for ongoing human exposure, especially to PCB contamination.

In September 2007, the United States Department of Health and Human Services and DOH

issued an update of a prior assessment of the public health threat posed by the GM Massena site

and found that exposure to site-specific contaminants at levels of health concern may continue to

occur unless further actions are taken to reduce human exposures to PCBs.[1]  Further remedial

action is required.

7.      In a June 18, 2009 conference call with counsel for Old GM and the Purchaser,

the State inquired about funding to continue the environmental remediation requirements set

---

[1] *See* "Health Consultation, General Motors/Central Foundry Division Update, Town of Massena
EPA Facility ID: NYD091972554" (September 28, 2007) at p. 10.

5

forth in the GM Massena RODs and as required under New York law.  Counsel advised that

there was federal financing only for the "wind down" and "disposition" of the excluded assets

including GM Massena.  There apparently is no funding designated for Old GM to continue to

meet its environmental obligations at GM Massena.

### The Relief Requested

8.      The Debtors ask the Court to approve the asset sale "free and clear of all liens,

claims, encumbrances and other interests" pursuant to Section 363 (Memorandum of Law at 20-

21; Sale Motion ¶¶ 66-68).  Old GM and the Purchaser include within the meaning of "liens,

claims, encumbrances and other interests" any liability, including successor liability, for Old

GM's environmental compliance obligations after the Purchaser becomes the owner.  The

Debtors also seek to sell the assets free and clear of institutional controls essential to the public

health and safety.[2]

9.      MSPA § 2.3(b)(iv) provides that the "Purchaser shall not assume, or become

liable to pay, perform or discharge, *any Liability of any Seller*, whether occurring or accruing

before at or after the Closing, other than the Assumed Liabilities" (emphasis added).  The MSPA

goes on to specifically exclude

> all Liabilities (A) associated with noncompliance with
> Environmental Laws (including for fines, penalties, damages and
> remedies); (B) arising out of, relating to, in respect of or in
> connection with the transportation, off-site storage or off-site
> disposal of any Hazardous Materials generated or located at any
> Transferred Real Property; (C) arising out of, relating to, in respect
> of or in connection with third-party Claims related to Hazardous
> Materials that were or are located at or that migrated or may
> migrate from any Transferred Real Property; (D) arising under
> Environmental Laws related to the Excluded Real Property; or (E)

---

[2] Included within the definition of "encumbrances" are easements, covenants, and restrictions.
See MSPA § 1.1, p. 6 (defined terms). This would clearly affect the deed restrictions in place as
institutional controls at several GM sites.

> for [E]nvironmental Liabilities with respect to real property
> formerly owned, operated or leased by Sellers (as of the Closing),
> which, in the case of clauses (A), (B) and (C), arose prior to or at
> the Closing, and which, in the case of clause (D) and (E), arise
> prior to, at or after the Closing.

MSPA § 2.3(b)(iv).

10.    The Debtors thus seek to transfer the assets free and clear of all environmental
obligations, including remedies and institutional controls intended to ameliorate the harm already
done to New York State natural resources and to prevent future harm to New York's citizens, as
well as its natural resources.  It appears from the MSPA that Old GM and New GM have a clear
level of understanding that all environmental liabilities and compliance obligations are intended
to be not only adversely affected but entirely eliminated as a result of the sale.  *See, e.g.*, MSPA
§ 2.3(b)(iv).  This understanding, coupled with the fact that this may not be an "arm's length
transaction" despite the fact that the purchaser is "sponsored" by the United States (Sale Motion
¶¶ 1, 30), requires closer judicial scrutiny to determine whether it is consistent with both
bankruptcy and non-bankruptcy laws.

## The Relief Sought in the Motion is not Authorized

11.    The Debtors seek to sell real property assets free and clear of environmental
compliance obligations related to the acquired assets and of any successor liability of the
Purchaser (Sale Motion ¶ 48).  The Debtors also ask the Court to enter an order providing  that
"No law of any State or other jurisdiction . . . shall apply in any way to the transactions
contemplated by the Section 363 Transaction, the MPA, the Motion, and this Order."  (Proposed
Order ¶ 39).  This relief is not authorized by sections 105 or 363, or by non-bankruptcy law.  The
Bankruptcy Code does not allow the court to eliminate or otherwise affect the rights of

governmental entities to enforce the valid laws of a State and impose environmental or successor liability on a third-party asset purchaser if warranted.

12.    The result sought to be achieved in the Debtors' motion also conflicts with well-settled State and federal environmental laws that attribute liability to a party responsible for environmental contamination as an owner/operator of property or as a successor in interest.  The motion thus attempts to fix the Purchaser's future environmental and/or successor liability without a factual or legal basis.

### New York State Law

13.    Pursuant to ECL Article 27, DEC has jurisdiction over the administration and enforcement of the environmental laws and regulations that govern the storage, handling, release and threatened release of hazardous substances and wastes, petroleum, and other chemicals in the State of New York.  DEC also has jurisdiction over the administration and enforcement of Article 12 of New York Navigation Law ("NL"), governing the storage, handling and release of petroleum contaminants in the State.  NL § 170 *et seq*.  Further, DEC administers the New York State's Brownfield Cleanup Program.  ECL Article 27 (Title 14); 6 N.Y.C.R.R. § 375-3.  New York acts pursuant to its own statutory authority as well as delegated federal authority pursuant to, *inter alia*, the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*; ECL Article 27 (Titles 7 and 9); 6 N.Y.C.R.R. Part 373, and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*; ECL Article 27 (Title 13). In addition, the New York State Governor appointed the DEC Commissioner as the trustee of New York State's natural resources for purposes of restoring such resources and recovering damages.  The New York Sites and GM Massena are subject to the foregoing laws.

8

14.    A debtor may not "frustrate[e] necessary governmental functions by seeking refuge in bankruptcy court."  *State of New York v. Mirant New York, Inc.*, 300 B.R. 174, 178 (S.D.N.Y. 2003) (Section 362(b)(4) exception applied to DEC consent order requiring power plant to come into compliance with federal and State environmental laws).

### DEC's Interests are not Attached to the Assets

15.    In the first instance, section 363 is expressly designed to approve the sale of assets free and clear of liens, claims and encumbrances or other interests that are *attached to* the asset at the time the sale is approved.  Section 363 is not intended to be used to limit or fix either the Debtors' or the asset purchasers' future environmental liability under applicable State or federal laws.

16.    The State's authority to enforce State and federal environmental laws in the future cannot be construed as an "interest" within the meaning of section 363.  Under section 363(f), property of the estate may be sold "free and clear of *any interest in such property*."  11 U.S.C. § 363(f) (emphasis added).  The phrase "any interest in such property" refers to *in rem* interests in the property, such as a lien, mortgage, or form of co-ownership (*e.g.*, tenancy in common, joint tenancy, tenancy by the entirety).  It clearly does not refer to the State's regulatory authority to assure compliance with environmental laws in the future.

17.    Notably, the debtors and purchaser do not suggest that the State's environmental interests would attach to the proceeds of the sale, as Section 363 specifically provides for all other interests.  11 U.S.C. § 363(f).  Rather, they propose complete elimination of such interests.  This is entirely inconsistent not just with Section 363, but with the entire scheme of the Code.

18.    The fundamental issue before the court is whether State and federal environmental regulatory requirements imposed by law are "interests" that can be eliminated or

otherwise affected in an asset sale.  It is respectfully submitted that they are not.  Indeed,

Congress very specifically placed governmental entities in a different position than other entities

in a bankruptcy.  They remain largely unaffected by the bankruptcy when enforcing police and

regulatory authority.  *See* 11 U.S.C. § 362(b)(4) (exempting governmental entities from the

automatic stay when exercising police and regulatory authority).  Environmental regulation is the

classic example of the exercise of such authority.  Congress further protects State regulatory

authority by prohibiting the circumvention of State law in a bankruptcy.  *See* 28 U.S.C. § 959(b)

(requiring the operation and maintenance of estate assets in compliance with the laws of the State

in which the assets are located).  To the extent that the MPSA seeks court approval of a sale that

would eliminate or otherwise affect governmental authority, it is not authorized by either Section

363 or the broader scheme of the Code.

    19.    But if the environmental compliance obligations are found to be an "interest" that

can be eliminated as part of the sale, the State respectfully requests that the court prohibit or

condition the sale so that the State and all other governmental entities have adequate protection

pursuant to § 363(e) that such obligations imposed by law remain unaffected by the sale.

    20.    In *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163-164 (7th Cir. 1994), the

Seventh Circuit held that a bankruptcy court lacked the power to approve a 363 asset sale that

enjoined a products liability lawsuit against an asset purchaser arising well after the bankruptcy

case was over.  The Court stated that a section 363 asset sale cannot affect or extinguish the

rights of non-debtors or third parties that did not arise during the bankruptcy proceeding.  23

F.3d at 163.  Furthermore, the Court found that such a result would create an improper incentive

to file bankruptcy for reasons that have nothing to do with the Codes' equitable purposes.  *Id.*

Notably, the *Zerand* Court also found that a potential future cause of action did not constitute a "lien" or other interest in property within the meaning of section 363(f). *Id.*

21.     On the issue of what constitutes a "lien," "claim," "encumbrance" or "interest" from which an asset can be sold free and clear, *Ninth Ave. Remedial Group Remedial v. Allis-Chalmers Corp.*, 195 B.R. 716, 730-34 (N.D. Ind. 1996) is instructive as well.  There, the Court held that a bankruptcy court's approval of an asset sale free and clear did not discharge environmental claims brought against the purchaser under concepts of successor liability.  The Court said that section 363 applied only to *in rem* interests in property and did not affect a cause of action that had not arisen during the pendency of the bankruptcy.  195 B.R. at 730-33.  *See also Folger Adam Secur., Inc. v. Dematteis/MacGregor, JV,* 209 F.3d 252, 258 (3d Cir. 2000) (affirmative defenses to setoff are not "interests" in property under section 363).

## The Conditions of § 363(f) are not Met

22.     Bankruptcy Code § 363(f) permits a sale free and clear only if:  (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) the relevant interest is a lien and the price at which such property will be sold is greater than the aggregate value of all liens; (4) the interest is in bona fide dispute; or (5) the entity could be compelled in a court of law or equity to accept money in satisfaction of the interest.  *See* 11 U.S.C. § 363(f).  None of these elements is satisfied with respect to DEC's environmental interests.

23.     DEC does not consent, its interests are not liens, and the interests are not in dispute.  Thus only subsections (1) and (5) are relevant here.

24.     As set forth below, New York State law precludes the proposed sale if  it provides the owner has no liability.  New York law imposes such liability on owners.  *See* ¶¶ 27-31, *infra*.

Accordingly, 11 U.S.C. § 363(f)(1) (applicable non-bankruptcy law permits the sale)  is

unsatisfied.

25.    Likewise, the condition set in 11 U.S.C. § 363(f)(5) is not met.  The State of New

York could not be compelled to accept money in satisfaction of its interests.  *See, e.g., In Re*

*Torwico Electronics, Inc.*, 8 F.3d 146, 150-151 (3d Cir. 1993) (state's efforts to compel cleanup

of waste site that posed an ongoing hazard was not a "claim" and could not be reduced to

money), *cert. denied*, 511 U.S. 1046 (1994).  Indeed, the Debtors do not claim that the State must

accept money in satisfaction of its interests.  *See, e.g.,* Debtors' Memorandum of Law at p. 22

(*lienholders* could be compelled to accept monetary satisfaction) (emphasis added); Sale Motion

¶ 68 (same).  "This is not a situation where the state is attempting to get money from the debtor

but rather, it is an exercise of the state's inherent regulatory and police powers."  *Torwico*

*Electronics*, 8 F.3d at 151.

## Debtors in Possession Must Comply with Applicable State Laws

26.    Federal law also requires debtors in possession to comply with all applicable state

laws.  "A debtor in possession[] shall manage and operate the property in his possession . . .

according to the requirements of the valid laws of the State in which such property is situated."

28 U.S.C. § 959(b) (emphasis added).  *See, e.g.*, *In re Lauriat's Inc.*, 219 B.R. 648 (Bankr. D.

Mass. 1998) (denying motion to exempt debtors from Massachusetts state law pertaining to

closing-out sales); *In re Vega*, 163 B.R. 489, 25 Bankr. Ct. Dec. (CRR) 319 (Bankr. W.D. Tex.

1994) (trustee could sell HUD property free of liens but not free of HUD requirements relating to

purchaser's income level).  Accordingly, obligations arising under New York State

environmental laws or regulations may not be terminated through the device of a free and clear

asset sale.

12

27.     Nor can a subsequent owner or operator ignore State environmental laws. "[W]e do not question that anyone in possession of the site . . . must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State or refuse to remove the source of such conditions." *Ohio v. Kovacs,* 469 U.S. 274, 284-85 (1985).

### New GM will be Liable as Old GM's Successor

28.     The relief sought in the motion also conflicts directly with well-settled State and federal laws, which impose liability on current and former owners/operators, and their successors, of facilities not in compliance with State law. *See* Sale Motion ¶¶ 66-68 (seeking transfer free and clear of successor liability). Successor liability is an equitable exception to the general rule that an asset purchaser does not assume the seller's liabilities absent express agreement. Successor liability is determined by state law, not by federal or bankruptcy law.

29.     In New York, a buyer of a corporation's assets will be liable as its successor if either there was a merger or consolidation of the seller and the purchaser, or the purchaser is a mere continuation of the selling corporation. *State of New York v. National Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2005) (*citing Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45 (1983)). A determination on successor liability depends upon a factual showing that has not been made in the context of this motion.

30.     The Bankruptcy Code is not intended to usurp the power of the State to assure the protection of public health and the environment that is afforded by these laws. Nor is it intended to override these laws in the interest of a bankrupt entity. Accordingly, the Debtors' motion is contrary to applicable non-bankruptcy law and does not meet the criteria for approval under section 363(f)(1). *Accord In Re Quanta Resources Corp. v. City of New York*, 739 F.2d

13

912, 921-923 (3d Cir. 1984) (abandonment of contaminated property contravened applicable state law "and did so not merely technically, but with severely deleterious implications for the public safety").

### **Waiver of 10-Day Stay Period**

31.     The Debtors have asked the Court to waive the 10-day period provided for by Rules 6004(g) and 6006(d).  The State respectfully asks the Court to adhere to the time periods contemplated in the Rules, which are the shortest periods that will actually preserve the State's appellate rights in this complex matter, involving contaminated sites all over the State with a plethora of administrative orders, investigations and remedies in different stages of completion, a variety of ownership interests, and obligations involving a number of different remedies and controls.

### **Reservation of Rights**

The State reserves its rights to amend, supplement or withdraw its objection to the sale pending further discussions with counsel for the parties to the asset sale agreement.

### **Conclusion**

32.     For the foregoing reasons, the State respectfully requests that the court revise the sale order to protect the State's regulatory and compliance authority and delete any finding with respect to successor or other future liability of the asset purchaser.

ANDREW M. CUOMO
Attorney General of the
 State of New York


BY:     _____/s_____
        MAUREEN F. LEARY (ML-3866)
        _____/s_____

14

SUSAN L. TAYLOR (ST-1774)
Assistant Attorneys General
 of Counsel
New York State Department of Law
Environmental Protection Bureau
The Capitol
Albany, New York  12224
(518) 474-2432
(518) 474-7154

Dated:  Albany, New York
          June 19, 2009