Hearing Date and Time: **June 25, 2009 at 9:45 a.m.**
Response Deadline: **June 19, 2009**

Ivan M. Gold
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
(415) 837-1515 (Telephone)
(415) 837-1516 (Facsimile)

Robert L. LeHane (RL 9422)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178-0002
(212) 808-7800 (Telephone)
(212) 808-7897 (Facsimile)

*Attorneys for LBA Realty Fund III – Company IX, LLC
and Pru/SKS Brannan Associates LLC*


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **GENERAL MOTORS CORP.**, *et al*., | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x


**LIMITED OBJECTION OF LBA REALTY FUND III – COMPANY IX, LLC AND
PRU/SKS BRANNAN ASSOCIATES LLC TO MOTION OF DEBTORS FOR ENTRY
OF ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 507 (i)
AUTHORIZING USE OF CASH COLLATERAL, (ii) GRANTING ADEQUATE
PROTECTION TO THE REVOLVER SECURED PARTIES, (iii) GRANTING
ADEQUATE PROTECTION TO THE TERM LOAN SECURED PARTIES, AND (iv)
<u>SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**


LBA Realty Fund III – Company IX, LLC and Pru/SKS Brannan Associates LLC

(collectively "<u>Objecting Landlords</u>"), by their undersigned counsel, hereby submit their limited

objection to the *Motion of Debtors For Entry of Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection To The Revolver Secured Parties, (iii) Granting Adequate Protection To The Term Loan Secured Parties, and (iv) Scheduling a Final Hearing Pursuant To Bankruptcy Rule 4001* ("Cash Collateral Motion") [Docket No. 60], filed June 1, 2009.

Objecting Landlords do not generally object to Debtors' use of cash collateral of certain secured parties under Debtors' prepetition revolving credit facility, and authority to grant adequate protection (a) to the Debtors' prepetition revolving secured lenders against diminution in the value of cash collateral and other collateral of the revolving lenders, and (b) to certain prepetition term loan secured lenders under the Debtors' prepetition term loan against the diminution in the value of the term loan secured lenders' collateral, as requested in the Cash Collateral Motion, but objects to the Cash Collateral Motion and entry of a final order thereon to the extent Debtors seek to assign or transfer an interest in the Debtors' leasehold interests as part of the adequate protection liens, in direct contravention of the express terms of those leases and without first assuming such leases as provided by Bankruptcy Code section 365.

In support thereof, Objecting Landlords respectfully state:

## BACKGROUND

1.      General Motors Corporation and its affiliated co-debtors (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on June 1, 2009. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.      On or about March 7, 2008, LBA Realty Fund III – Company IX, LLC ("LBA Realty"), as landlord, and debtor General Motors Corporation, as tenant, entered into that certain written Lease (the "Roanoke Lease") for certain real property located at and commonly known as

301 Freedom Drive, City of Roanoke, Denton County, Texas (the "Roanoke Premises").  The Roanoke Premises have been developed with a 404,500 building, utilized by General Motors Corporation as a warehouse and distribution center.  The initial term of the Roanoke Lease is scheduled to expire March 31, 2018, with five (5) options to extend the term of the Roanoke Lease of five (5) years each in favor of General Motors Corporation, as tenant.

3.      Pru/SKS Brannan Associates LLC ("Pru/SKS") is the master landlord of certain office premises located at and commonly known as 475 Brannan Street, City and County of San Francisco, California.  General Motors Corporation subleases approximately 54,066 square feet of the third (3rd) and fourth (4th) floors of 475 Brannan Street from Platinum Technology, Inc. ("Sublandlord") pursuant to a written Sublease dated April 12, 2000 (the "San Francisco Sublease").  The term of the San Francisco Sublease is scheduled to expire on April 1, 2010.

4.      On June 1, 2009, Debtors filed their Cash Collateral Motion.  The Cash Collateral Motion seeks, as part of the authorization for Debtors to use cash collateral, to grant adequate protection liens in the form of first liens on all of Debtors' previously-unencumbered property and junior liens on substantially all of Debtors' assets.  (See, e.g., Cash Collateral Motion at ¶5(A)(iv)(b) and ¶5(B)(iii)(b).)

5.      On June 1, 2009, this Court entered its Interim Cash Collateral Order, granting the Cash Collateral Motion on an interim basis and scheduling a final hearing [Docket 180].  While the Cash Collateral Motion seeks to impose liens affecting their interests, neither of the Objecting Landlords received notice of the Cash Collateral Motion or resulting Interim Order, entered June 1, 2009.

**ARGUMENT**

6.      Bankruptcy Code section 365(d)(3) requires that the debtor "timely perform *all of the obligations of the debtor*, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." (Emphasis added.) *See In re Cukierman*, 265 F.3d 846, 850 (9th Cir. 2001)("Congress made the provision for trustee [or debtor-in-possession] compliance broad, extending it to cover all the obligations under a lease.").

7.      The Roanoke Lease provides, at Section 13(a) as follows:

> Except for licenses to Licensees, *Tenant may not assign and/or encumber this Lease (in whole or in part or parts),* or sublet any portion of the Demised Premises (each a "Transfer") without Landlord's prior written consent therefor (which consent shall also be applicable to the proposed use by any assignee or sublessee which is not an Affiliate of Tenant pursuant to Section 4(a), if Section 4(a) shall require such consent), which consent shall not be unreasonably withheld, conditioned or delayed. From time to time, Tenant may, however, without Landlord's consent but upon at least ten (10) business days prior written notice to Landlord, sublet the Demised Premises (in whole or in part or parts) to an Affiliate of Tenant, and may assign this Lease to an Affiliate of Tenant. Notwithstanding any such assignment or subletting Tenant shall remain liable for the performance of all of Tenant's obligations under this Lease.

(Emphasis added.)

8.      The San Francisco Sublease incorporates, among other thing, Section 12 of the Office Lease, dated November 30, 1998, between SKS Brannan Associates, LLC, predecessor-in-interest to Pru/SKS, as landlord, and Sublandlord, as tenant, as amended (the "San Francisco Master Lease"). In addition to similar restrictions on assignment and transfer as those contained in the Roanoke Lease, Section 12(i) of the San Francisco Master Lease provides as follows:

> Encumbrance of Lease. Notwithstanding any provision of this Lease to the contrary, *Tenant shall not mortgage, encumber or hypothecate this Lease or any interest herein without the prior written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion.* Any such act without the

>prior written consent of Landlord (whether voluntary or involuntary) shall, at Landlord's option, be void and/or, following the expiration of all applicable notice and cure periods, constitute an Event of Default under this Lease.

(Emphasis added.)

9. Notwithstanding these express contractual provisions, Debtors' Cash Collateral Motion seeks to encumber Debtors' leasehold interests as part of the broad grant of adequate protection liens. The problem with granting a security interest in the Debtors' leases, and the fundamental alteration of valid contractual restrictions on encumbrancing, is highlighted by the possible events which would follow enforcement of the adequate protection liens. Would debtors' lenders be entitled to foreclose on adequate protection liens securing leasehold interests? Following a foreclosure, lenders could potentially seek to sell and assign the Debtor's leases to another party. In that event, landlords would be denied both the benefit of their bargain when entering into the leases, as well as adequate assurance of future performance required by the Bankruptcy Code. The exercise of such remedies could create, among other things, uncertainty and the prospect of litigation over compliance with assignment restrictions, use clause provisions and other covenants of the leases. Even though Debtors contemplate payment of significant secured prepetition obligations within 45 days of the commencement of their Chapter 11 cases (funded by the U.S. Treasury's post-petition lending), the uncertainties created by adequate protections liens "cloud" landlords' interest in their respective leased premises and objections to such potential uncertainty are more than reasonable. This scenario is precisely what the Bankruptcy Code sought to avoid with the requirements of Section 365(b) and (f). Furthermore, the Debtors and their lenders may not rely on Section 365(f)(1) to circumvent the express provisions of the leases because Section 365(f) requires assumption of Debtors' leases as a condition to their assignment, which is not contemplated under the Cash Collateral Motion. There is simply no basis to allow Debtors and their lenders to avoid the strictures of Section 365 simply because of the "gravity of the circumstances" (Cash Collateral Motion at ¶32) and the need to provide collateral for adequate protection liens.

763053.01/SF
L4944-063/6-18-09/img/img

5

10. There is not even any assurance that the rejection of any of the leases would extinguish the security interest created by the adequate protection liens (*see, e.g., Matter of Austin Development Company*, 19 F.3d 1077, 1083-1084 (5th Cir. 1994)(security interest granted in lease not extinguished by rejection, noting conflict in case law), potentially leaving the leases encumbered for the duration of their terms.

11. The Cash Collateral Motion offers no authority permitting an assignment of Debtors' interest in its real property leaseholds, in the form of a pledge of the leases as collateral for adequate protection liens, contrary to express lease restrictions and Bankruptcy Code section 365(d)(3).

12. The Objecting Landlords submit that there is a less intrusive means to provide the Debtors' pre-petition lenders with a security interest in the value of Debtors' leases, if that is intended, without violating express provisions of the leases and without abrogating the protections afforded to landlords of nonresidential real property under the Bankruptcy Code.

13. A lien on the potential proceeds of the disposition of Debtors' leases more than adequately protects the lenders' interests, while remaining consistent with the terms of the underlying leases. The "bonus value" of the leases has been recognized as property of the bankruptcy estate (*see, e.g., In re Ernst Home Center, Inc.*, 209 B.R. 974, 985-986 (Bankr. W.D. Wash. 1997)) and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between the lenders' economic interests, Debtors' need for liquidity, and the landlords' rights under the leases and the Bankruptcy Code.

## JOINDER

To the extent not inconsistent with the foregoing, the Objecting Landlords join in any opposition to Debtors' Cash Collateral Motion filed by Debtors' other landlords.

## CONCLUSION

For the foregoing reasons, this Court should not enter a final order granting Debtors' pre-petition lenders the adequate protection liens described in the Cash Collateral Motion, insofar as they attempt to assign interests in the Debtors' leasehold interests in violation of the terms of the

underlying leases and Section 365 of the Bankruptcy Code.  Debtors' liquidity needs and its lenders' rights are more than adequately protected by limiting the scope of the adequate protection liens to the proceeds of the prospective disposition of Debtors' leasehold interests.

Dated: June 19, 2009

          Ivan M. Gold
          ALLEN MATKINS LECK GAMBLE MALLORY
          & NATSIS LLP
          Three Embarcadero Center, 12th Floor
          San Francisco, CA 94111-4074
          Telephone: (415) 837-1515
          Facsimile: (415) 837-1516
          E-mail: igold@allenmatkins.com

          -and-

          */s/ Robert L. LeHane*
          Robert L. LeHane (RL 9422)
          KELLEY DRYE & WARREN LLP
          101 Park Avenue
          New York, NY 10178-0002
          Telephone: (212) 808-7800
          Facsimile: (212) 8080-837-1516
          E-mail: rlehane@kelleydrye.com

          *Attorneys for LBA Realty Fund III – Company IX, LLC and Pru/SKS Brannan Associates LLC*