Hearing Date and Time: June 25, 2009 at 9:00 a.m.
Response Deadline: June 19, 2009

Ivan M. Gold
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
(415) 837-1515 (Telephone)
(415) 837-1516 (Facsimile)

Robert L. LeHane (RL 9422)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178-0002
(212) 808-7800 (Telephone)
(212) 808-7897 (Facsimile)

*Attorneys for LBA Realty Fund III – Company IX, LLC
and Pru/SKS Brannan Associates LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **GENERAL MOTORS CORP.,** *et al.*, | : : | **Case No. 09-50026 (REG)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

**LIMITED OBJECTION OF LBA REALTY FUND III – COMPANY IX, LLC AND
PRU/SKS BRANNAN ASSOCIATES LLC TO MOTION OF DEBTORS FOR ENTRY
OF AN ORDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 (i) AUTHORIZING
THE DEBTORS TO OBTAIN POSTPETITION FINANCING ON AN IMMEDIATE,
INTERIM BASIS, (II) GRANTING SUPERPRIORITY CLAIMS AND LIENS, ETC.**

LBA Realty Fund III – Company IX, LLC and Pru/SKS Brannan Associates LLC

(collectively "Objecting Landlords"), by their undersigned counsel, hereby submit their limited

objection to the *Motion Of Debtors For Entry of an Order Pursuant To 11 U.S.C. §§ 361, 362,

363 and 364 (i) Authorizing The Debtors To Obtain Postpetition Financing On An Immediate,*

763023.01/SF
L4944-063/6-18-09/img/img

1

*Interim Basis, (Ii) Granting Superpriority Claims and Liens, etc.* ("Financing Motion") [Docket No. 64], filed June 1, 2009.

Objecting Landlords certainly do not object to Debtors' efforts to obtain post-petition financing to meet their operating needs and avoid liquidation. Objecting Landlords object, however, to the Financing Motion and entry of a final order thereon to the extent Debtors seek to assign or transfer an interest in the Debtors' leasehold interests as part of the liens granted to the debtor-in-possession lender, in direct contravention of the express terms of those leases and without first assuming such leases as provided by Bankruptcy Code section 365.

In support thereof, Landlord respectfully states:

## BACKGROUND

1.   General Motors Corporation and its affiliated co-debtors (the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on June 1, 2009. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.   On or about March 7, 2008, LBA Realty Fund III – Company IX, LLC ("LBA Realty"), as landlord, and debtor General Motors Corporation, as tenant, entered into that certain written Lease (the "Roanoke Lease") for certain real property located at and commonly known as 301 Freedom Drive, City of Roanoke, Denton County, Texas (the "Roanoke Premises"). The Roanoke Premises have been developed with a 404,500 building, utilized by General Motors Corporation as a warehouse and distribution center. The initial term of the Roanoke Lease is scheduled to expire March 31, 2018, with five (5) options to extend the term of the Roanoke Lease of five (5) years each in favor of General Motors Corporation, as tenant.

3.   Pru/SKS Brannan Associates LLC ("Pru/SKS") is the master landlord of certain office premises located at and commonly known as 475 Brannan Street, City and County of San

763023.01/SF
L4944-063/6-18-09/img/img

2

Francisco, California. General Motors Corporation subleases approximately 54,066 square feet of the third (3rd) and fourth (4th) floors of 475 Brannan Street from Platinum Technology, Inc. ("Sublandlord") pursuant to a Sublease dated April 12, 2000 (the "San Francisco Sublease."). The term of the San Francisco Sublease is scheduled to expire on April 1, 2010.

4. On June 1, 2009, Debtors filed their Financing Motion. The Financing Motion seeks, as part of the broad definition of "Collateral" under the Secured Superpriority Debtor-In-Possession Credit Agreement (the "Credit Agreement"), to grant first-priority security interests in substantially all of Debtors' assets (see Financing Motion at ¶2(o)) and additional adequate protection liens to the extent of the diminution in value of the U.S. Treasury's interest in pre-petition collateral (see Financing Motion at ¶2(r)).

5. On June 2, 2009, this Court entered its *Interim Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant thereto, (B) Granting Related Liens and Super-Priority Status (C) Authorizing the Use of Cash Collateral, (D) Granting Adequate Protection to Certain Pre-Petition Secured Parties and (E) Scheduling a Final Hearing* [Docket 292]. While the Financing Motion seeks to impose a lien on their leases, neither of Objecting Landlords received notice from the Debtors of the Financing Motion or resulting Interim Order.

**ARGUMENT**

6. Bankruptcy Code section 365(d)(3) requires that the debtor "timely perform *all of the obligations of the debtor*, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." (Emphasis added.) *See In*

*re Cukierman*, 265 F.3d 846, 850 (9th Cir. 2001)("Congress made the provision for trustee [or debtor-in-possession] compliance broad, extending it to cover all the obligations under a lease.").

7. The Roanoke Lease provides, at Section 13(a) as follows:

> Except for licenses to Licensees, *Tenant may not assign and/or encumber this Lease (in whole or in part or parts)*, or sublet any portion of the Demised Premises (each a "Transfer") without Landlord's prior written consent therefor (which consent shall also be applicable to the proposed use by any assignee or sublessee which is not an Affiliate of Tenant pursuant to Section 4(a), if Section 4(a) shall require such consent), which consent shall not be unreasonably withheld, conditioned or delayed.  From time to time, Tenant may, however, without Landlord's consent but upon at least ten (10) business days prior written notice to Landlord, sublet the Demised Premises (in whole or in part or parts) to an Affiliate of Tenant, and may assign this Lease to an Affiliate of Tenant. Notwithstanding any such assignment or subletting Tenant shall remain liable for the performance of all of Tenant's obligations under this Lease.

(Emphasis added.)

8. The San Francisco Sublease incorporates, among other thing, Section 12 of the Office Lease, dated November 30, 1998, between SKS Brannan Associates, LLC, predecessor-in-interest to Pru/SKS, as landlord, and Sublandlord, as tenant, as amended (the "San Francisco Master Lease").  In addition to similar restrictions on assignment and transfer as those contained in the Roanoke Lease, Section 12(i) of the San Francisco Master Lease provides as follows:

> Encumbrance of Lease.  Notwithstanding any provision of this Lease to the contrary, *Tenant shall not mortgage, encumber or hypothecate this Lease or any interest herein without the prior written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion*.  Any such act without the prior written consent of Landlord (whether voluntary or involuntary) shall, at Landlord's option, be void and/or, following the expiration of all applicable notice and cure periods, constitute an Event of Default under this Lease.

(Emphasis added.)

9. Notwithstanding these express contractual provisions, Debtors' Financing Motion seeks to encumber Debtors' leasehold interests as part of the blanket grant of a senior security

interest in "Collateral" under the Credit Agreement. (See Recital paragraph (c), at page 1, of Credit Agreement.)

10. Apart from the potential impact of the imposition of an involuntary lien on the leasehold interest with respect to a landlord's own secured lending relationship, the problem with granting a security interest in the Debtor's leases, and the fundamental alteration of Debtor's leases with the Objecting Landlords, is highlighted by the events which would follow a default by Debtors under the postpetition financing. The lender (the U.S. Treasury) might be forced to foreclose on its collateral, including the proposed security interest in certain of Debtors' leases. In that event, landlords would be denied both the benefit of their bargain as well as adequate assurance of future performance required by the Bankruptcy Code. Following a foreclosure, the foreclosing lender could potentially seek to sell and assign the Debtors' leases to a third party, thereby creating, among other things, uncertainty and the prospect of litigation over compliance with assignment restrictions, use clause provisions and other covenants of the leases. These uncertainties "cloud" landlords' interest in the leased premises and landlord's objections to such uncertainty are more than reasonable. This scenario is precisely what the Bankruptcy Code sought to avoid with the requirements of Section 365(b) and (f). Furthermore, the Debtors and the U.S. Treasury may not rely on Section 365(f)(1) to circumvent the express provisions of the leases because Section 365(f) requires assumption of Debtors' leases as a condition to their assignment, which is not contemplated under the proposed financing. There is simply no basis to allow Debtors and their lenders to avoid the strictures of Section 365 simply because of the "gravity of the circumstances" (Financing Motion at ¶29) and the Debtors' need to grant a broad lien to secure critical debtor-in-possession financing.

11. There is not even any assurance that the rejection of any of the leases would extinguish the security interest created by the adequate protection liens (*see, e.g., Matter of Austin Development Company*, 19 F.3d 1077, 1083-1084 (5th Cir. 1994)(security interest granted in lease not extinguished by rejection, noting conflict in case law), potentially leaving the leases encumbered for the duration of their terms.

12. The Financing Motion offers no authority permitting an assignment of Debtors' interest in its real property leaseholds, in the form of a pledge of the leases as collateral for senior secured financing, contrary to express lease restrictions and Bankruptcy Code section 365(d)(3).

13. The Objecting Landlords submit that there is a less intrusive means to provide the Debtors' debtor-in-possession lender with a security interest in the value of Debtors' leases, if that is intended, without violating express provisions of the leases and without abrogating the protections afforded to landlords of nonresidential real property under the Bankruptcy Code.

14. A lien on the potential proceeds of the disposition of Debtors' leases more than adequately protects the lender's interests, while remaining consistent with the terms of the underlying leases. The "bonus value" of the leases has been recognized as property of the bankruptcy estate (*see, e.g., In re Ernst Home Center, Inc.*, 209 B.R. 974, 985-986 (Bankr. W.D. Wash. 1997)) and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between the lender's interests, the Debtors' significant need for financing, and the landlords' rights under the leases and the Bankruptcy Code.

## JOINDER

To the extent not inconsistent with the foregoing, the Objecting Landlords join in any opposition to Debtors' Financing Motion filed by Debtors' other landlords.

## CONCLUSION

For the foregoing reasons, this Court should not enter a final order granting the U.S. Treasury, as Debtors' debtor-in-possession lender, a senior security interest and adequate protection lien as described in the Financing Motion, insofar as they attempt to assign and encumber interests in the Debtors' leasehold interests in violation of the terms of the underlying leases and Section 365 of the Bankruptcy Code.

Debtors' liquidity needs and its lender's rights are more than adequately protected by limiting the scope of the adequate protection liens to the proceeds of the prospective disposition of Debtors' leasehold interests.

Dated: June 19, 2009

        Ivan M. Gold
        ALLEN MATKINS LECK GAMBLE MALLORY
        & NATSIS LLP
        Three Embarcadero Center, 12th Floor
        San Francisco, CA 94111-4074
        Telephone: (415) 837-1515
        Facsimile: (415) 837-1516
        E-mail: igold@allenmatkins.com

        -and-

        */s/ Robert L. LeHane*
        Robert L. LeHane (RL 9422)
        KELLEY DRYE & WARREN LLP
        101 Park Avenue
        New York, NY 10178-0002
        Telephone: (212) 808-7800
        Facsimile: (212) 8080-837-1516
        E-mail: rlehane@kelleydrye.com

        *Attorneys for LBA Realty Fund III – Company IX, LLC and Pru/SKS Brannan Associates LLC*

763023.01/SF
L4944-063/6-18-09/img/img