**<u>Exhibit B</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                         :
In re                                                    :                    **Chapter 11 Case No.**
                                                         :
**GENERAL MOTORS CORP.,** *et al.,*                      :                    **09-50026 (REG)**
                                                         :
                                    **Debtors.**         :                    **(Jointly Administered)**
                                                         :
------------------------------------------------------------x

<u>**ORDER PURSUANT 11 U.S.C. § 365 AUTHORIZING**</u>
<u>**REJECTION OF CERTAIN PROMOTIONAL SERVICES AGREEMENT**</u>

Upon the Motion, dated June 19, 2009 (the "**Motion**")[1], of General Motors

Corporation and its affiliated debtors, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 365(a) of title 11,

United States Code (the "**Bankruptcy Code**"), for entry of an order authorizing the Debtors to

reject that certain executory contract, dated February 7, 2009, with Reed Exhibitions (the

"**Executory Contract**"), all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§ 1334; and due and proper notice of the Motion having been provided, and it appearing that no

other or further notice need be provided; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings
ascribed to such terms in the Motion.

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that pursuant to section 365(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014, the Debtors are hereby authorized to reject the Executory Contract attached hereto as **Annex I**, effective as of Monday June 22, 2009 (the "**Rejection Date**"); and it is further

ORDERED that upon service of this Order upon the Counterparty to the Executory Contract, the Executory Contract shall be deemed rejected, effective as of the Rejection Date; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# Annex I

## The Executory Contract

# PROMOTIONAL AGREEMENT
### Between
## CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
## REED EXHIBITIONS

This Agreement, dated as of the date of the last signature herein, is entered into by and between CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION, a Delaware corporation, having a place of business at One Pepsi Way, Somers, NY 10589-8500 ("DIVISION") and REED EXHIBITIONS, a Connecticut corporation, having a place of business at 383 Main Ave., Norwalk, CT 06851 ("PROMOTER"). Each of DIVISION and PROMOTER may be referred to individually as a "party", or collectively, as the "parties". In consideration of the promises hereinafter made to each other, the parties hereto agree as follows:

1.    <u>PROMOTIONAL CONSIDERATIONS</u>

DIVISION agrees to provide the consideration listed on **Exhibit A** attached hereto. PROMOTER, for its part, agrees to provide the promotional services and other consideration to DIVISION listed on **Exhibit B** attached hereto. If vehicles are loaned to PROMOTER as part of the consideration identified on **Exhibit A** (the "Vehicle(s)"), then PROMOTER further agrees to the following terms and conditions:

    A.    PROMOTER agrees to obtain and maintain, at its own expense, comprehensive automobile liability insurance covering all owned, non-owned and hired vehicles (except for the Vehicles identified in Paragraph 1.D below) with limits of not less than $5,000,000 per occurrence combined single limit for personal injury and property damage, including all statutory coverage for all states of operation. The PROMOTER will also provide comprehensive (fire and theft) and collision coverage on the Vehicle(s). Prior to delivery of the Vehicle(s) the PROMOTER will provide DIVISION with a certificate of insurance evidencing General Motors Corporation as an additional insured, stating that such insurance is primary in coverage to any other insurance which may be available to General Motors Corporation, and providing at least thirty (30) days' prior written notice to DIVISION of cancellation, modification, or material change to the policy.

    B.    Upon receipt of the Vehicle(s), PROMOTER will execute and deliver to DIVISION a copy of the Loan of Vehicle Terms and Conditions and Vehicle Receipt (attached as **Exhibit C**). Unless otherwise agreed to by DIVISION in writing, the Vehicle(s) will only be used by PROMOTER or its officers, directors, employees, agents or subcontractors or individuals who are driving the Vehicle(s) while on business related to the activities contemplated under this Agreement. PROMOTER agrees to obtain from each individual permitted to drive a Vehicle a signed copy of General Motors Safe Driver Program Driver Conduct Requirements (attached as **Exhibit D**). PROMOTER will retain the executed copy for a period of three (3) years and will provide them to DIVISION at DIVISION's request. At delivery PROMOTER agrees to conduct an inspection of the

Vehicle(s). If there is any damage to any Vehicle(s), PROMOTER shall immediately
notify DIVISION and ESIS, DIVISION's insurance claims administrator, in writing, prior
to taking delivery of the Vehicle(s). PROMOTER hereby waives, on behalf of itself and
any party claiming by or through PROMOTER, and claim that damages to the Vehicle(s)
existed prior to delivery to PROMOTER, unless PROMOTER provides timely notice of
those damages as required under this paragraph.

   C.  At the end of the term of the loan, or earlier if requested by DIVISION,
PROMOTER will return the Vehicle(s) to the nearest DIVISION office or such other
location as designated by DIVISION, in the same condition as delivered, reasonable wear
and tear excepted (based on GM guidelines). Prior to return of the Vehicle(s),
DIVISION, or its insurance claims administrator, shall conduct an inspection of the
Vehicle(s). PROMOTER shall have a representative present at the inspection. If
PROMOTER fails to have a representative present at the inspection of the Vehicle(s),
PROMOTER expressly waives any right to contest the results of the inspection. If a
Vehicle must be recovered by DIVISION or requires repairs to restore it to the condition
in which it was delivered, then PROMOTER will pay DIVISION the costs to recover the
Vehicle and the costs of any damage based on a repair estimate by a certified appraisal
service or dealer. If, in DIVISION's opinion, a Vehicle cannot or should not be repaired
based upon General Motors Corporation's policy for repairing/scrapping damaged
vehicles, then the Vehicle must be returned to DIVISION and the PROMOTER will pay
DIVISION the Vehicle's value, based upon the following formula: The amount General
Motors Corporation would have received if the Vehicle had been sold at auction the
month the Vehicle was damaged based on a similar make and model year vehicle with
similar mileage, as determined by GM Remarketing Staff, Fleet and Commercial
Operations sale results report, less (i) the salvage value of the Vehicle(s) as determined
by DIVISION based on competitive salvage bid, or (ii) $4,000 if there are no salvage
bids.

   D.  Paragraphs 1.A., 1.B. and 1.C. of this Agreement do not apply to vehicles
identified in **Exhibit A** as loaned to PROMOTER for static display purposes only ("Static
Display Vehicles"). As to Static Display Vehicles, however, PROMOTER acknowledges
that the Vehicles are, and shall remain, the property of DIVISION. PROMOTER agrees
that: (a) the Static Display Vehicles are for static display purposes only, with the
exception of minimal driving to move the Static Display Vehicles a very short distance,
and not on any public roads; and (b) PROMOTER shall not tamper, disconnect, or
otherwise interfere with the operation of the odometer, emission control equipment, or
any other equipment. As to Static Display Vehicles, each party, on behalf of itself and
anyone holding under or through such party, waives all rights against the other for
damages to its premises and property.

## 2.  USE AND PROTECTION OF TRADEMARK AND OTHER INTELLECTUAL PROPERTY

PROMOTER and DIVISION acknowledge that each party owns certain names,
trademarks, service marks, copyrights and other intellectual property ("Marks"), and
owns or has certain merchandising rights in and to the Marks, and all goodwill associated

with or symbolized by the Marks. It is understood that in promoting PROMOTER's activities, PROMOTER and DIVISION may make various references to the activities and may display the Marks of PROMOTER and DIVISION, and pictures of the activities. Each party hereto grants to the other a nonexclusive, nontransferable license to use its Marks during the term of this Agreement and subject to the terms and conditions hereinafter set forth, solely in connection with advertising and promoting any event or activity incidental hereto.

PROMOTER and DIVISION must agree in writing as to the form and content of any promotional or advertising materials and the media in which such materials are to be used prior to their use, which approval the parties shall not unreasonably withhold; and such use may be subject to such reasonable conditions as either party may impose, including, but not limited to, conditions affording each party adequate protection of its Marks. Upon termination or expiration of this Agreement, both parties shall cease all use of the Marks of the other party as soon as practicable, but in any event within thirty (30) days unless the particular media which has been approved requires a longer lead time, but in no event longer than ninety (90) days.

Neither party will impugn, challenge or assist in any challenge to the validity of the other party's Marks, any registrations thereof, or the ownership thereof. Each party will be solely responsible for taking such actions as it deems appropriate to obtain trademark, service mark or copyright registration for its respective Marks. All uses of or references to the Marks shall inure to the benefit of the respective owner, and all rights with respect to the Marks not specifically granted in this Agreement shall be and are hereby reserved to the respective owner.

Neither party is granted any right or license under this Agreement to sell, or otherwise distribute for sale, any of the promotional or advertising materials, or items related thereto. If a party desires to sell, or distribute for sale, any of such materials or other merchandising or novelty items bearing the names, trademarks, copyrights or other intellectual property of the other party, then it shall request permission to do so from the other party, and if granted, the parties shall negotiate in good faith a separate licensing agreement covering such materials or items before they may be sold or distributed for sale.

3.    CONSUMER INFORMATION

If customer lists, databases or any other personally identifiable information (the "Databases") are given to DIVISION as part of the consideration identified on **Exhibit B,** then PROMOTER further represents and warrants that it has obtained all necessary permission and consent, in compliance with any applicable laws and regulations, to provide DIVISION with the Databases for any purpose the DIVISION, in its sole discretion, sees fit.

3

4.     Intentionally Omitted

5.     TERM; RIGHT OF FIRST REFUSAL

The term of this Agreement shall commence as of the signing of this Agreement by both
parties and end on the date set forth on **Exhibit A**, or if no date is indicated, upon
completion of the obligations of both parties. If the term of this Agreement is more than
one year, DIVISION may terminate this Agreement effective as of December 31 of any
year by giving PROMOTER written notice of the termination prior to October 1.

If PROMOTER intends to conduct comparable event(s) or promotional activities beyond
the term of this Agreement, PROMOTER shall provide to DIVISION a written proposal
for DIVISION to continue its sponsorship. PROMOTER shall provide the proposal prior
to, or within ninety (90) days after, expiration or termination of this Agreement.
DIVISION shall advise PROMOTER, in writing, within thirty (30) days of its receipt of
such proposal, whether or not it will participate on the terms contained in PROMOTER's
proposal. If DIVISION elects not to participate on the terms of the proposal and the
parties are unable to negotiate mutually acceptable terms, then PROMOTER shall be free
to negotiate with others; provided, however, that PROMOTER shall not offer terms to
others which are materially different than those previously offered to DIVISION, without
first offering such different terms to DIVISION. The parties' obligations contained in
this Section will survive the expiration or termination of this Agreement.

6.     INDEMNIFICATION

       A.     PROMOTER agrees to indemnify and hold harmless General Motors
Corporation, its officers, directors, agents, and employees, from and against any and all
claims, demands, obligations, causes of action and lawsuits and all damages, liabilities,
fines, judgments, costs (including settlement costs), and expenses associated therewith
(including the payment of reasonable attorney fees and disbursements), arising out of:
(1) the failure of PROMOTER, its employees or agents, to comply with the terms and
conditions of this Agreement; (2) the negligent acts or omissions of PROMOTER, its
employees, agents, or subcontractors; (3) DIVISION's use of PROMOTER's Marks as
authorized by this Agreement; (4) the services performed or actions taken by
PROMOTER, its employees or agents, in connection with this Agreement, including the
operation and management of any event or activity incidental thereto; or (5)
PROMOTER's use or possession of any Vehicles loaned to it by DIVISION.

       B.     DIVISION agrees to indemnify and hold harmless PROMOTER, its
officers, directors, agents and employees from and against any and all claims, demands,
obligations, causes of action and lawsuits and all damages, liabilities, fines, judgments,
costs (including settlement costs), and expenses associated therewith (including the
payment of reasonable attorney fees and disbursements), arising out of: (1) the failure of
DIVISION, its employees or agents, to comply with the terms and conditions of this
Agreement; (2) the negligent acts or omissions of DIVISION, its employees, agents, or
subcontractors, (3) PROMOTER's use of DIVISION's Marks as authorized by this

4

Agreement; or (4) defects in the design, assembly, or manufacture of any Vehicle loaned by DIVISION to PROMOTER.

    C.    The obligations to indemnify contained in this Section 6 will survive the expiration or termination of this Agreement.

7.    INSURANCE

    A.    PROMOTER shall maintain, during the term of this Agreement, at its own expense, the following kinds of insurance with minimum limits as set forth below:

| Kind of Insurance | Minimum Limits |
|---|---|
| (1) Commercial General Liability (including contractual liability) | $1,000,000 per occurrence combined single limit for personal injury and property damage |
|  | If spectator events are identified on **Exhibit B**, PROMOTER shall maintain spectator's liability insurance (either included in the Commercial General Liability or in a separate policy) in an amount not less than $5,000,000 per occurrence combined single limit for personal injury and property damage. |
| (2)   Workers Compensation | Statutory (for all states of operation) including Employer's Liability with limits of not less than $500,000 |

    B.    Prior to commencement of any activities described herein, PROMOTER shall furnish DIVISION with a certificate showing the applicable coverage, naming General Motors Corporation as an additional insured (except A(2) Workers Compensation), stating that such insurance is primary in coverage to any other insurance which may be available to General Motors Corporation, and providing at least thirty (30) days' prior written notice to DIVISION of cancellation, modification or material change to the policy. Such certificate shall be in a form acceptable to DIVISION and must be underwritten by an insurer satisfactory to DIVISION. PROMOTER's purchase of appropriate insurance coverage or the furnishing of the certificate shall not release PROMOTER from its obligations or liabilities under this Agreement.

8.    CANCELLATION FOR BREACH; INSOLVENCY

       A.    Either party may cancel this Agreement, without liability to the other
party, if the defaulting party: (1) repudiates or breaches any of the terms of this
Agreement; or (2) fails to make progress so as to endanger timely and proper completion
of its services; and does not correct such failure or breach within ten (10) days, or such
shorter period if commercially reasonable, after receipt of written notice from the non-
defaulting party specifying such failure or breach.

       B.    Either party may cancel this Agreement immediately, without liability to
the other party, upon the happening of any of the following or any other comparable
event: (1) insolvency of the other party; (2) filing of any petition by or against the other
party under any bankruptcy, reorganization or receivership law; (3) execution of an
assignment for the benefit of the other party's creditors; or (4) appointment of any trustee
or receiver of the other party's business or assets or any part thereof; unless such petition,
assignment or appointment be withdrawn or nullified within fifteen (15) days of such
event.

       C.    In the event this Agreement is canceled, each party shall cease using the
other party's Marks, and PROMOTER shall return those funds, if any, paid to it by
DIVISION for services which have not yet been performed. In addition, if vehicles are
loaned to PROMOTER, PROMOTER shall promptly return the vehicles to DIVISION.

       D.    The foregoing remedies are in addition to, and not in lieu of, any other
rights or remedies that a party may have at law or in equity; provided however, that in no
event will either party be liable to the other for incidental, consequential or punitive
damages arising out of a breach of this Agreement.

9.    FORCE MAJEURE

Any delay or failure of either party to perform its obligations hereunder shall be excused
to the extent that it is caused by an event or occurrence beyond its reasonable control
such as, by way of example and not by way of limitation, acts of God, actions by
governmental authority (whether valid or invalid), fires, floods, windstorms, explosions,
riots, natural disasters, wars, sabotage or labor problems; provided the party claiming
force majeure promptly notifies the other party of the event of force majeure, the
anticipated duration of the event of force majeure, and the steps being taken to remedy
the failure. Should the event of force majeure continue beyond thirty (30) days, or such
shorter time period as may be reasonable under the circumstances, either party may
terminate this Agreement, and DIVISION shall be entitled to a pro rata refund for
services not yet performed by PROMOTER.

10.    GOVERNING LAW; SEVERABILITY

This Agreement is to be governed by and construed according to the laws of the State of
Michigan, excluding any such laws which direct the application of laws of any other
jurisdiction. If any term of this Agreement is invalid or unenforceable under any statute,

regulation, ordinance, executive order or other rule of law, such term shall be deemed
reformed or deleted, but only to the extent necessary to comply with such statute,
regulation, ordinance, order or rule, and the remaining provisions of this Agreement shall
remain in full force and effect.

11.   COMPLIANCE WITH LAWS

Each party will perform its obligations under this Agreement in compliance with all
applicable laws, orders, or regulations of all appropriate jurisdictions.

12.   NO IMPLIED WAIVERS

Failure by either party at any time to require performance by the other party of any
provision hereof shall in no way affect the right to require full performance any time
thereafter, nor shall the waiver by either party of a breach of any provision of this
Agreement constitute a waiver of any succeeding breach of same or any other provision,
nor constitute a waiver of the provision itself.

13.   NO ASSIGNMENT

Neither party may assign its rights, nor delegate its obligations under this Agreement,
without the prior written approval of the other party.

14.   RELATIONSHIP OF THE PARTIES

PROMOTER and DIVISION are independent contracting parties, and nothing contained
in this Agreement shall be deemed to create a partnership, joint venture or agency
relationship between them, nor does it grant either party any authority to assume or create
any obligation on behalf of or in the name of the other.

15.   NOTICES

Any notice required or permitted to be given by either party under or in connection with
this Agreement shall be in writing and shall be deemed duly given when personally
delivered or sent by registered or certified mail, return receipt requested, postage prepaid,
expedited courier service, or by cable or facsimile, confirmed by letter, as aforesaid to the
addresses indicated in the introductory paragraph of this Agreement, unless otherwise
agreed to by the parties.

16.   ENTIRE AGREEMENT

This Agreement (i) contains the entire understanding of the parties hereto, (ii) supersedes
all prior agreements, and (iii) shall not be amended except by a written instrument
hereafter signed by all parties hereto. No waiver of any provision of this Agreement shall
be effective unless evidenced by a written instrument signed by the waiving party. THE
PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT, IN ENTERING IN TO
THIS AGREEMENT, THEY HAVE NOT IN ANY WAY RELIED UPON ANY ORAL

OR WRITTEN AGREEMENTS, UNDERSTANDINGS, REPRESENTATIONS OR
WARRANTIES, EXPRESS OR IMPLIED, NOT SPECIFICALLY SET FORTH IN
THIS AGREEMENT. The parties expressly waive application of any local, state, or
federal law, statute, or judicial decision allowing oral modifications, amendments, or
additions to this Agreement notwithstanding an express provision requiring a writing
signed by the parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed
by their duly authorized representatives on the dates indicated below.

|                      | **PROMOTER** |                      | **DIVISION**                        |
|----------------------|--------------|----------------------|-------------------------------------|
|                      | Reed Exhibitions |                  | Chevrolet Motor Division,           |
|                      |              |                      | General Motors Corporation          |

By: _____            By: _____

Print Name: _____            Print Name: John Konkel

Title: _____            Title: _____ RDMM

Date: _____            Date: _____

**Attachments:**
Exhibit A - DIVISION's Consideration
Exhibit B - PROMOTER's Consideration
Exhibit C - Loan of Vehicle Terms and Conditions and Vehicle Receipt
Exhibit D - General Motors Safe Driver Program Driver Conduct Requirements

8

## PROMOTIONAL AGREEMENT
### Between
## CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
## REED EXHIBITIONS

### EXHIBIT A

DIVISION agrees to the following:

1.  The term of this Agreement shall commence on the date of signing by both parties and end on June 2, 2009.

    DIVISION will be presenting sponsor of the Eastern Sports & Outdoor Show 2009 (the"Event") which will take place at the Pennsylvania Farm Show Complex & Expo Center (the "Venue") in Harrisburg, Pennsylvania from February 7, 2009 through February 15, 2009.

2.  DIVISION agrees to pay a total sponsorship fee of fifty thousand dollars ($50,000.00) (the "Fee") to PROMOTER. The Fee will be paid in installments. DIVISION may deduct any amounts owed by PROMOTER to DIVISION. Each installment will be payable within sixty five (65) days after DIVISION receives an invoice for the indicated payment. PROMOTER will issue invoices for each payment as follows:

    $37,500.00 to be invoiced on or after January 1, 2009.

    $12,500.00 to be invoiced on or after DIVISION's receipt of proof of performance binders acceptable to DIVISION as described in Exhibit B

3.  Provide descriptive artwork, graphic standards and Marks to be used by PROMOTER in all printed promotional material and wherever useful to maximize DIVISION exposure. Unless otherwise specified in Exhibit B, DIVISION requires seven (7) business days to complete review of materials. Artwork to be provided, as needed, by DIVISION's advertising agency, Campbell Ewald (the "AGENCY").

**PROMOTIONAL AGREEMENT**
**Between**
**CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION**
**And**
**REED EXHIBITIONS**

**EXHIBIT B**

PROMOTER agrees to provide DIVISION with the following:

1.  Prominent inclusion of one (1) 1-color, 1" x 3" DIVISION reference containing
    DIVISION's Marks, as supplied by AGENCY, on all on-line tickets, which will
    be produced and distributed by PROMOTER to approximately sixty thousand
    (60,000) people.

2.  Prominent inclusion of one (1) 4-color, 3" x 3" DIVISION reference containing
    DIVISION's Marks, as supplied by AGENCY, on all show maps, which will be
    produced and distributed by PROMOTER to approximately one hundred forty
    thousand (140,000) people.

3.  Prominent inclusion of one (1) 4-color, DIVISION advertisement, as supplied by
    AGENCY, in each of ten (10) regular PROMOTER e-mailings to be e-mailed by
    PROMOTER to approximately forty five thousand (45,000) individuals on
    PROMOTER's e-mailing list. DIVISION's presence shall constitute
    approximately five percent (5%) of each e-mail. PROMOTER represents and
    warrants that it is fully authorized and has obtained all necessary permission and
    consent in accordance with all applicable laws to use its mailing list for the
    purposes contemplated herein and for any mailing that includes DIVISION's
    Marks and/or advertising material. PROMOTER further represents and warrants
    that with regard to any e-mailing it distributes per this paragraph: a) PROMOTER
    shall be clearly identified as the sole sender of such e-mailing, and b)
    PROMOTER shall not reference, refer to, or otherwise utilize any DIVISION e-
    mailing lists in compiling its own e-mailing list.

4.  Prominent display of one (1) full-color, thirty-second (:30) advertisement (the
    "Feature") as supplied by AGENCY, featuring DIVISION and its products, on the
    17' x 20' jumbotron ("Jumbotron") located in a prominent area at the Venue.
    PROMOTER warrants to DIVISION that the Jumbotron shall display the Feature
    no less than three (3) times during each day of the Event.

5.  One (1) full-page, 1-color DIVISION-dedicated print advertisement in
    PROMOTER-produced Value Book to be distributed to an audience of at least
    one hundred forty thousand (140,000) people. DIVISION will be granted at least
    thirty (30) days notice of date of production of the Value Book and at least seven
    (7) days advance notice of deadlines to review and approve supplement copy
    specific to DIVISION and/or DIVISION's activities related to the Event.

10

6. One (1) full-page, 1-color DIVISION-dedicated print advertisement in PROMOTER-produced Exhibitor Manual to be distributed to an audience of at least one thousand two hundred (1,200) people. DIVISION will be granted at least thirty (30) days notice of the date of production of the Exhibitor Manual and at least seven (7) days advance notice of deadlines to review and approve supplement copy specific to DIVISION and/or DIVISION's activities related to the Event.

7. A minimum of six (6) five-second (:05) audio promotional announcements per day, for nine (9) days of the Event, for a combined total of fifty four (54) promotional announcements, regarding DIVISION's sponsorship of the Event. Verbiage will be supplied by AGENCY for broadcast by PROMOTER.

8. The right for DIVISION to utilize one (1) hospitality suite located at the Venue in order to accommodate up to three hundred (300) DIVISION-designated individuals at any one given time and up to one thousand four hundred (1,400) individuals in and out throughout the day. PROMOTER will be responsible for all related suite rental costs, including, but not limited to, the following: space rental and any facilities charges. DIVISION will be responsible for all food, beverage and staffing charges.

9. Five hundred (500) complimentary daily Event VIP tickets entitling each holder to entrance in the VIP areas at the Venue on the following dates: February 7, 2009 through February 15, 2009. These Event VIP tickets will be used by DIVISION for whatever purpose DIVISION, in its sole discretion, deems fit, including, but not limited to, consumer advertising and promotional purposes. All tickets must be sent to DIVISION's agency, R*Works, at the following address: One Pepsi Way, Somers, NY 10589, Attn: Karen Dougherty. While these tickets will be provided at no additional cost to DIVISION, the current purchase price for such tickets would be twelve dollars ($12.00) per ticket.

10. Ten (10) complimentary VIP parking passes entitling each holder to VIP parking at the Venue during each day of the Event. These VIP parking passes will be used by DIVISION for whatever purpose DIVISION, in its sole discretion, deems fit, including, but not limited to, consumer advertising and promotional purposes. All VIP parking passes must be sent to DIVISION's agency, R*Works, at the following address: One Pepsi Way, Somers, NY 10589, Attn: Karen Dougherty. While these tickets will be provided at no additional cost to DIVISION, the current purchase price for such passes would be four hundred fifty dollars ($450.00) per pass.

11. Twenty five (25) complimentary reserved VIP seating tickets entitling each holder to VIP seating at each event at the Venue. These VIP seating tickets will be used by DIVISION for whatever purpose DIVISION, in its sole discretion, deems fit, including, but not limited to, consumer advertising and promotional purposes. All tickets must be sent to DIVISION's agency, R*Works, at the following address:

11

One Pepsi Way, Somers, NY 10589, Attn: Karen Dougherty. While these tickets will be provided at no additional cost to DIVISION, the current purchase price for such tickets would be twenty dollars ($20.00) per ticket.

12. Prominent space for ten (10) 10' x 30' signs (the "Hall Banner Signs") featuring DIVISION's Marks and advertising material. The Hall Banner Signs will be located in mutually agreed upon areas at the Venue. PROMOTER warrants to DIVISION that the Hall Banner Signs will be on display throughout the duration of the Event and that they will contain exclusively whatever DIVISION Marks and advertising material DIVISION elects to produce. DIVISION will be responsible for the initial design, layout, fabrication, production, installment and maintenance of the Hall Banner Signs and the removal of them at the expiration or termination of this Agreement.

13. Prominent inclusion of DIVISION's Marks and advertising material, as supplied by AGENCY, on one (1) 4-color, double sided 20' x 30' sign (the "Double Sided Sign"). The Double Sided Sign will be located over the Heroes of Conservation display at the Venue. PROMOTER warrants to DIVISION that the Double Sided Sign will be on display throughout the duration of the Event and that it will contain the DIVISION's Marks and advertising exclusively. PROMOTER will be responsible for all expenses for the initial design, layout, fabrication, production, installment and maintenance of the Double Sided Sign and the removal of it at the expiration or termination of this Agreement.

14. Prominent inclusion of DIVISION's Marks and advertising material, as supplied by AGENCY, on one (1) 4-color, 6' x 8' sign (the "Billboard Sign"). The Billboard Sign will be located at the main ticket entrance at the Venue. PROMOTER warrants to DIVISION that the Billboard Sign will be on display throughout the duration of the Event and that it will contain the DIVISION's Marks and advertising exclusively. PROMOTER will be responsible for all expenses for the initial design, layout, fabrication, production, installment and maintenance of the Billboard Sign and the removal of it at the expiration or termination of this Agreement.

15. One (1) prominent space, measuring approximately sixty (60) feet by ninety (90) feet for a total of five thousand four hundred (5,400) square feet of display space, located at Booth #6330 in the Main Hall at the Venue, for DIVISION and/or a General Motors dealer group to use during the Event for whatever purpose DIVISION chooses, including, but not limited to, the display of its products and services. If DIVISION elects to display vehicles: (a) any vehicles displayed by DIVISION (the "DIVISION Display Vehicles") will be for static display purposes only; (b) DIVISION will arrange for appropriate transportation of the DIVISION Display Vehicles to and from the display location(s); (c) Specific models and option content will be determined by DIVISION; (d) DIVISION shall ensure that the vehicles are maintained in a clean condition while on display; (e) PROMOTER will be solely responsible for obtaining any necessary license or

permit for the display(s); (f) as to DIVISION Display Vehicles, each party, on behalf of itself and anyone holding under or through such party, waives all rights against the other for damages to its premises and property; and (g) DIVISION will remove the DIVISION Display Vehicles at specific date(s) and time(s) to be mutually agreed upon by the parties, but not later than midnight on the day this Agreement expires.

16. One (1) DIVISION-dedicated press release, discussing solely DIVISION's participation in the Event or related DIVISION news, as part of PROMOTER's Event press kits. The press kits will be produced and distributed by PROMOTER to approximately one hundred (100) media contacts. The press release will be exclusive to DIVISION and may not contain mentions of other sponsors. PROMOTER will be solely responsible for all costs related to the production and distribution of these releases/kits. PROMOTER will provide DIVISION with at least fifteen (15) days advance notice of deadlines to submit press release copy and/or photography specific to DIVISION.

17. Mention of DIVISION in a minimum of two (2) press releases inserted in each of PROMOTER's Event press kits. No fewer than one hundred (100) press kits will be produced and distributed by PROMOTER. PROMOTER will be solely responsible for all costs related to the production and distribution of these kits. These press kits may not be exclusive to DIVISION and may contain mentions of other sponsors. PROMOTER will provide DIVISION with at least fifteen (15) days advance notice of deadlines to submit press release copy and/or photography specific to DIVISION.

18. Mention of DIVISION in a minimum of ten (10) press releases regarding DIVISION and the Event. The press releases will be produced and distributed by PROMOTER to approximately one thousand one hundred (1,100) media contacts. PROMOTER will be solely responsible for all costs related to the production and distribution of the releases. The press releases may not be exclusive to DIVISION and may contain mentions of other sponsors. PROMOTER will provide DIVISION with at least fifteen (15) days advance notice of deadlines to submit press release copy and/or photography specific to DIVISION. PROMOTER will also provide an advance list of media recipients comprised of television, radio, print and Web-based contacts who will receive the releases.

19. The right for DIVISION to hire an unrestricted number of third-party vendor representatives to conduct research at the Venue during the Event. Such research activities will include, but not be limited to, such vendor representatives conducting on-site interviews and collecting phone numbers and other personal information, and, except as noted above, unless otherwise mutually agreed upon by the parties, will not be limited to a particular timeframe or area at the Venue.

20. The right for DIVISION and its affiliated companies to independently administer or hire, at their expense, a third-party vendor to administer a chance promotion at the Venue in conjunction with DIVISION's sponsorship of the Event.

21. Designation and prominent recognition of DIVISION as the official presenting sponsor of the Event during the Term of this Agreement. All public identification and recognition of this status shall be made as follows or as otherwise determined by DIVISION: "Eastern Sports and Outdoors Show Presented By Chevrolet."

22. Designation and prominent recognition of DIVISION as the official vehicle of the Event. All public identification and recognition of this official vehicle status shall be made as follows or as otherwise determined by DIVISION: "Chevrolet, Official Vehicle of the Eastern Sports and Outdoors Show."

23. Designation and prominent recognition of DIVISION as the official presenting sponsor of the Heros of Conservation during the Term of this Agreement. All public identification and recognition of this status shall be made as follows or as otherwise determined by DIVISION: "Heros of Conservation Presented By Chevrolet."

24. Two (2) proof of performance binders to include, but not be limited to, samples of printed materials, photographs of the Venue and Event showing the DIVISION signage, attendance, DIVISION's display areas, media affidavits, monthly site-logs for Internet impressions guaranteed, and any other materials that will show proof of PROMOTER's performance related to this Agreement. PROMOTER will ship the binders to DIVISION's agency, GM R*Works, at: One Pepsi Way, Somers, NY 10589 to the attention of Karen Dougherty.

## PROMOTIONAL AGREEMENT
### Between
### CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
### REED EXHIBITIONS

### EXHIBIT C

### PROMOTER Loan of Vehicle Terms and Conditions and Vehicle Receipt

{{-INSERT DIVISION-}} Motor Division of General Motors Corporation ("DIVISION") agrees to loan the following Vehicle(s) to {{-NAME OF PROMOTER-}} ("PROMOTER") from approximately {{-DATE-}} to {{-DATE-}}, upon the terms set forth below:

MAKE:

MODEL:

VIN:

PROMOTER's ADDRESS:

Insert Promoter's Address          Insert City                Insert State Insert Zip
(Street)                           (City)                     (State)    (Zip Code)

PHONE: Insert Promoter Contact's Phone Number

**Terms:**

1.    The Vehicle(s) is/are, and shall remain, the property of DIVISION.

2.    At delivery PROMOTER agrees to conduct an inspection of the Vehicle(s). If there is any damage to any Vehicle(s), PROMOTER shall immediately so notify DIVISION and ESIS, DIVISION's insurance claims administrator, in writing, prior to taking delivery of the Vehicle. PROMOTER hereby waives, on behalf of itself and any party claiming by or through PROMOTER, any claim that damages to the Vehicle existed prior to delivery to PROMOTER, unless PROMOTER provides timely notice of those damages as required under this paragraph.

3.    PROMOTER agrees that: (a) the Vehicle(s) will not be utilized illegally, improperly, for hire, as a public conveyance or in any manner for any political purpose whatsoever; (b) the Vehicle(s) shall be driven in a safe and prudent manner by insured, licensed drivers, twenty-one (21) years of age or older who meet the GM Safe Driver Program Driver Conduct Requirements (attached as **Exhibit D**) and who are officers, directors, employees, agents or subcontractors of

15

PROMOTER or who are driving the Vehicle(s) while on business related to the activities contemplated under this Agreement; (c) PROMOTER shall ensure that no-one modifies, disconnects, or otherwise interferes with the operation of the odometer, emission control equipment, or any other equipment; (d) PROMOTER acknowledges receipt of and will obtain from each driver of a Vehicle a signed **Driver Conduct Requirements** form and shall retain each executed form for three (3) years and provide them to DIVISION at DIVISION's request; (e) PROMOTER will report **ALL** incidents/crashes involving a Vehicle to ESIS (General Motors' insurance claims administrator) at 1-800-888-0154 and to DIVISION and will follow instructions provided in the glove compartment of the Vehicle; (f) without limiting or altering any insurance or indemnification obligations contained in this Agreement, PROMOTER will cooperate with DIVISION in the defense of any claims or lawsuits related to PROMOTER's use or possession of any Vehicle; (g) **PROMOTER will not make any repairs to a Vehicle without the explicit prior consent of ESIS**; (h) PROMOTER shall be responsible for all fines, forfeitures and penalties incurred by reason of the use of the Vehicle(s).

4.    DIVISION MAKES NO WARRANTY OTHER THAN THAT EXPRESSED IN ITS NEW VEHICLE LIMITED WARRANTY, A PRINTED COPY OF WHICH IS FURNISHED WITH THE VEHICLE. DIVISION authorizes PROMOTER to obtain, on DIVISION's behalf as owner of the Vehicle(s), such warranty service as is necessary and provided for under the new vehicle limited warranty. Ordinary operating expenses such as gas, oil, grease, tire repair and other incidentals are the responsibility of PROMOTER.

5.    PROMOTER agrees to defend, indemnify and hold DIVISION harmless from all claims, liability and expenses arising out of PROMOTER's use or possession of any Vehicle. In addition PROMOTER agrees to obtain and maintain, at its own expense, comprehensive automobile liability insurance (covering all owned, non-owned and hired vehicles) with limits of not less than $5,000,000 per occurrence combined single limit for personal injury and property damage, including all statutory coverage for all states of operation. PROMOTER will also provide comprehensive (fire and theft) and collision coverage on the Vehicle(s). **Prior to receipt of the Vehicle(s),** PROMOTER will provide DIVISION with a certificate of insurance evidencing General Motors Corporation as an additional insured, stating that such insurance is primary in coverage to any other insurance which may be available to General Motors Corporation, and providing at least thirty (30) days' prior written notice to DIVISION of cancellation, modification, or material change to the policy.

6.    At the end of the term of the loan, or earlier if requested by DIVISION, PROMOTER will return the Vehicle(s) to the nearest DIVISION office or such other location as designated by DIVISION, in the same condition as delivered, reasonable wear and tear excepted (based on GM guidelines). Prior to return of the Vehicle(s), DIVISION, or its insurance claims administrator, shall conduct an

inspection of the Vehicle(s). PROMOTER shall have a representative present at the inspection. If PROMOTER fails to have a representative present at the inspection of the Vehicle(s), PROMOTER expressly waives any right to contest the results of the inspection. If a Vehicle must be recovered by DIVISION or requires repairs to restore it to the condition in which it was delivered, then PROMOTER will pay DIVISION the costs to recover the Vehicle and the costs of any damage based on a repair estimate by a certified appraisal service or dealer. If, in DIVISION's opinion, a Vehicle cannot or should not be repaired based upon General Motors Corporation's policy for repairing/scrapping damaged vehicles, then the Vehicle must be returned to DIVISION and the PROMOTER will pay DIVISION the Vehicle's value, based upon the following formula: The amount General Motors Corporation would have received if the Vehicle had been sold at auction the month the Vehicle was damaged based on a similar make and model year vehicle with similar mileage, as determined by GM Remarketing Staff, Fleet and Commercial Operations sale results report, less (i) the salvage value of the Vehicle(s) as determined by DIVISION based on competitive salvage bid, or (ii) $4,000 if there are no salvage bids.

**Authorized PROMOTER Signature:** _____

**Print Name:** _____

**Title:** _____

**Date:** _____

## PROMOTIONAL AGREEMENT
### Between
### CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
### REED EXHIBITIONS

### EXHIBIT D

### General Motors Safe Driver Program Driver Conduct Requirements

I understand that the loan of this Vehicle is subject to the following terms, and verify that I am twenty-one (21) years of age or older, posses a valid operator's license, and will...

1. ...display such license to the vehicle key issuer at each Vehicle exchange, and will comply with all license restrictions.

2. ...never drive while impaired by alcohol, drugs, medication, illness, fatigue, or injury.

3. ...ensure the proper use of safety belts and child safety restraints for all occupants.

4. ...obey all applicable motor vehicle laws, codes, and regulations.

5. ...drive in a defensive manner, anticipating situations where incidents are likely to occur.

6. ...refrain, at all times, from using radar/laser detection devices.

7. ...plan trips by selecting the safest route, depart early enough to observe posted speed and traffic regulations, and will be mindful of current and forecasted weather conditions.

8. **...report all incidents/crashes involving the Vehicle to ESIS (General Motors' insurance claims administrator) at 1-800-888-0154 (direction is provided in the glove compartment of the vehicle) and to DIVISION.**

9. ...not permit any other person to operate the Vehicle.

Furthermore, by signing this receipt and acknowledgment, I verify that I have not been convicted within the past 36 months of any of the following motor vehicle violations:

1. Driving while operator's license is suspended, revoked, or denied.

2.  Vehicular manslaughter, negligent homicide, felonious driving or felony with a vehicle.

3.  Operating a vehicle while impaired, under the influence of alcohol or illegal drugs, or refusing a sobriety test.

4.  Failure to stop or identify under a crash (includes leaving the scene of a crash; hit and run; giving false information to an officer).

5.  Eluding or attempting to elude a law enforcement officer.

6.  Traffic violation resulting in death or serious injury.

7.  Any other significant violation warranting suspension of license.

**DRIVER's Signature:** _____

**Print Name:** _____

**Driver's License Number and State:** _____
                                    (Number)                (State)

**Date:** _____

19