ALSTON & BIRD LLP
J. William Boone
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

90 Park Avenue
New York, New York 10016
(212) 210-9400

*Counsel for Buehler Motor GMBH, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------------x

### OBJECTION OF BUEHLER MOTOR GMBH TO THE PROPOSED CURE AMOUNT SET FORTH IN THE NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO

Buehler Motor GMBH ("Buehler"), by and through its undersigned counsel hereby files this objection (the "Contract Objection") to the proposed Assumable Executory Contracts[1] and Cure Amounts set forth in the Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Assumption and Assignment Notice"). Buehler asserts this Contract Objection because the Assumption and Assignment Notice does not accurately state the Cure Amount due to Buehler.

In support of its Contract Objection, Buehler respectfully states as follows:

---

[1] Any capitalized term not herein defined has the meaning ascribed to it in the Sale Order (as defined below).

**Background**

1.      On June 1, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      The Debtors are parties to a proposed Master Sale and Purchase Agreement, dated June 1, 2009, with Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury, which contemplates the sale of substantially all of the Debtors' assets to the Purchaser.

3.      On June 1, 2009, the Bankruptcy Court entered the Interim Order Pursuant to 11 U.S.C. §§ 105, 363, and 364 Authorizing Debtors to (I) Pay Prepetition Claims of Certain Essential Suppliers, Vendors, and Service Providers, (II) Continue Troubled Supplier Assistance Program, and (III) Continue Participation in the United States Treasury Auto Supplier Support Program (Docket No. 175) (the "Interim Essential Supplier Order").

4.      On June 2, 2009, the Bankruptcy Court entered the Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Schedulinig Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice (Docket No. 274) (the "Sale Order").

5.      Buehler is a non-debtor counterparty to certain Assumable Executory Contracts proposed to be assumed and assigned, and the Assumption and Assignment Schedule provides

that the Cure Amount owing to Buehler pursuant to the Assumable Executory Contracts is $242,943.62.

6.      Buehler, a German-based supplier, did not receive the Assignment and Assumption Notice until June 10, 2009.  Counsel did not learn of the Assumption and Assignment Notice until the afternoon of June 12, 2009.  Furthermore, a German holiday on June 11, 2009 and the associated holiday weekend along with the time differential between the United States and Germany further exacerbated Buehler's inability to confirm whether the proposed Cure Amount was sufficient to cure all defaults under the Assumable Executory Contracts by the original deadline.

7.      Counsel for the Debtors agreed to an extension through June 20, 2009 for Buehler to file an objection to the proposed Cure Amount.

8.      According to Buehler's records and as shown on Exhibit "A" attached hereto, the Debtors are required to pay approximately $525,306.00 to cure amounts outstanding under the Assumable Executory Contracts.

9.      Buehler has both German and United States based operations and issues invoices in both Euros and U.S. Dollars.  The conversion rate complicates the process of matching up amounts due under each Assumable Executory Contract and makes it difficult to determine where exact discrepancies lie between the proposed Cure Amount and the amount Buehler's records show is required to cure amounts outstanding under the Assumable Executory Contracts. Moreover, the difference in currency may be one reason for the discrepancy between the proposed Cure Amount and the amount owing to Buehler under the Assumable Executory Contracts as it appears the Debtors may not have converted amounts shown due in Euros to U.S. Dollars.

10.    The Debtors do not appear to be distinguishing between Assumable Executory Contracts with Buehler (the German-based operation) and its wholly owned subsidiary Buehler Motor, Inc. (the U.S.-based operation), but rather the Debtors have listed all Assumable Executory Contracts under the Buehler Motor GMBH parent entity.    In comparing the listed Assumable Executory Contracts and the proposed Cure Amount, it appears to Buehler that the Debtors may intend for the proposed Cure Amount to cover both Buehler and Buehler Motor, Inc.

11.    Buehler has been advised by Debtors' representatives to expect to receive the Trade Agreement[2] today notifying Buehler of its status as an essential vendor under the Interim Essential Supplier Order.    Buehler plans to negotiate with the Debtors the terms of the Trade Agreement, including the amount to be paid to Buehler as an essential vendor.    Buehler recognizes that, to a certain extent, any payments made to it as an essential vendor will be treated as part of the Cure Amount under the terms of the Assumption and Assignment Procedures.

12.    Although initial discussions between Buehler and the Debtors have commenced, there has been insufficient time to complete such discussions to permit the parties to achieve a resolution.    Thus, Buehler must file this Contract Objection to preserve its rights because at the current time, the proposed Cure Amount does not appear to fully and finally compensate Buehler and cure all defaults under the applicable agreements and, as a result, the Debtors have failed to show that the proposed Cure comports with section 365(b) of the Bankruptcy Code.

**Objection**

13.    Pursuant to 11 U.S.C. § 365(b)(1), the Buehler Assumable Executory Contracts cannot be assumed by the Debtors and assigned to the Purchaser unless the Debtors cure all defaults under the Assumable Executory Contracts.    To assume an executory contract, a debtor

---

[2] This term has the meaning ascribed to it in the Interim Essential Supplier Order.

must satisfy the "statutory conditions designed to make the non-debtor contracting party whole," one such condition being curing any defaults under such executory contract prior to assumption. In re Wireless Data, Inc., 547 F.3d 484, 489 (2d Cir. 2008).  Thus, whether a debtor may assume a contract "depends on the debtor's ability to cure (or provide adequate assurance that it will promptly cure) all pre-petition defaults arising under that contract." Id. at 494.   The proposed Cure Amount asserted by the Debtors in the Assumption and Assignment Notice is significantly less than the amount reflected in the records of Buehler that will be required to satisfy amounts outstanding under the Assumable Executory Contracts.

14.      Moreover, the Assumable Executory Contracts cannot be assumed by the Debtors and assigned to the Purchaser unless the Debtors provide adequate assurance of future performance pursuant to 11 U.S.C. § 365(b)(1)(C).   The Debtors should confirm that any postpetition amounts owing under the Assumable Executory Contracts will continue to be timely paid by Debtors and/or the Purchaser or another bidder.

15.      Buehler notes that, subject to the reservation of its rights below, it intends to negotiate with the Debtors to resolve any outstanding issues with respect to the identified Assumable Executory Contracts and the proposed Cure Amount associated therewith prior to a hearing on this Contract Objection.

### **Reservation of Rights**

16.      Buehler hereby reserves all of its rights and available remedies under applicable law, including without limitation, its right to amend this Contract Objection to include any additional facts as may be determined by further investigation of the Assumable Executory Contracts.  Further, in the absence of full and complete cure of all obligations (prepetition and postpetition) arising under all applicable agreements between Buehler and the Debtors, Buehler

reserves any and all rights to assert any claim in the Bankruptcy Cases of the Debtors including any claim under sections 503(b)(9) and 546 of the Bankruptcy Code or under applicable state law.

### Relief Requested

17.     Buehler requests that the Court condition the assumption and assignment of the Assumable Executory Contracts upon payment of the full amounts owed by the Debtors under the Assumable Executory Contracts and confirmation by the Debtors that any postpetition amounts owing under the Assumable Executory Contracts will be timely paid by the Debtors and/or the Purchaser or another bidder.

Dated:  New York, New York
        June 19, 2009

Respectfully submitted,

ALSTON & BIRD LLP

/s/ J. William Boone
J. William Boone
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777
*Counsel for Buehler Motor GMBH, et al.*