Sale Approval Hearing Date: June 30, 2009 at 9:45 a.m.
        Sale Motion Objection Deadline: June 19, 2009 5:00 p.m.

FLORIDA ATTORNEY GENERAL BILL McCOLLUM
Russell S. Kent (Admitted *Pro Hac Vice*)
Ashley E. Davis (Admitted *Pro Hac Vice*)
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
Telephone:  (850) 414-3854
Facsimile:  (850) 488-9134

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
| In re: | : | CHAPTER 11 |
|---|---|---|
| | : | |
| **GENERAL MOTORS CORP.,** *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| | : | **(Jointly Administered)** |
| Debtors. | : | |
-----------------------------------------------------------------X

## OBJECTION OF THE FLORIDA ATTORNEY GENERAL

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

      The State of Florida, Department of Legal Affairs, Office of the Attorney General (the "Florida Attorney General"), by and through its undersigned counsel, hereby files this limited objection to "Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing" (the "Sale Motion") (Doc. 92) and respectfully states as follows:

## I. Introduction

Objector is the Attorney General of the State of Florida. As the State's chief legal officer, he is responsible for furthering the State's interest in upholding the valid laws of Florida, protecting the rights of automotive dealers and consumers within the State, and maintaining the regulatory authority of the State over automotive manufacturers and dealers. The Florida Attorney General acknowledges the objections that have been or will be raised by other states.

The Florida Attorney General respectfully submits that Debtors have misused their bankruptcy-enhanced bargaining power and forced automotive dealers to waive the very state laws that were designed to protect them from such overreaching conduct. Before New GM would agree to assume a dealer's franchise agreement or provide any compensation to a rejected dealer, Old GM insisted that the dealer must first "agree" to waive numerous protections in Florida law. This demand is contrary to federal law that requires a debtor to operate according to state law (28 U.S.C. § 959(b)) and contrary to Florida law which forbids the waiver of these protections (Fla. Stat. §§ 320.63(3), 320.64(17)). New GM further conditioned the assumption of a franchise agreement or the payment to a rejected dealer upon the dealer's consent to jurisdiction in this Court regarding the amended agreement – even though federal law relieves Old GM from liability under the franchise agreement upon discharge (11 U.S.C. § 365(k)) and despite Florida law which vests exclusive jurisdiction over such disputes in the Florida Department of Highway Safety & Motor Vehicles (the "Department") (Fla. Stat. §§ 320.63(3), 320.64(17), 320.64(31), 320.641).

Moreover, paragraphs 15 and 28(ii)(f) of the proposed sale order submitted by Debtors even appear to ask the Court to preclude governmental entities from taking any regulatory action against New GM. However, New GM will have to apply for licensure in Florida (and elsewhere). As part of its license application, New GM must file an affidavit with the Department

2

acknowledging that the terms or provisions of its franchise agreements are "not inconsistent with, prohibited by, or contrary" to Florida law (Fla. Stat. §§ 320.63(3)), an affidavit that New GM could not truthfully file in light of the Participation Agreement and the Wind-Down Agreement.[1] Florida law also clearly provides that franchise agreements "are of no force and effect" to the extent of any inconsistent terms or conditions. *Id.*

By the Sale Motion, Debtors seek the Court's approval for their overreaching, post-petition conduct. The Florida Attorney General respectfully submits that the Court should not condone such tactics but instead should affirm that the relationship between New GM and its Florida dealers will be governed by Florida law and order that any provision of an amended franchise agreement which is contrary to Florida law is invalid and unenforceable. Finally, in the event the Court approves the Sale Motion, it should clarify that such an approval does not validate the attempt to evade Florida law by amending the dealer franchise agreements.

Another purpose of this objection is to raise the Florida Attorney General's concerns over the lemon law rights of Florida consumers, which have not been adequately protected to date. Floridians who lease or purchase new GM vehicles that turn out to be defective should not have their rights prejudiced due to this bankruptcy filing.[2]

## II. Background

On June 1, 2009, General Motors Corporation and certain of its subsidiaries (collectively, "Old GM") filed voluntary petitions for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On the same day, Old GM sought authorization

---

[1] Likewise, "new" Chrysler must apply for licensure in Florida and other states. New Chrysler, however, simply assumed the existing dealer agreements for those dealers that it retained.

[2] This issue was satisfactorily resolved in the Chrysler bankruptcy but New GM has not provided similar protections.

to sell substantially all of its assets to "New GM" pursuant to, *inter alia*, a proposed Master Sale and Purchase Agreement. *See* Sale Motion at p. 2, ¶ 1; p. 8, ¶ 16. According to the Sale Motion, Old GM plans to have certain franchise agreements that are currently in place with many (but not all) of its existing dealers assumed and then assigned to New GM pursuant to 11 U.S.C. § 365. *Id.* at p. 10, ¶ 19.

Before these dealer agreements could be assigned, however, New GM required their modification in accordance with a "Participation Agreement" (explained below). Debtors demanded that dealers execute the Participation Agreement (without any changes) if the dealer wanted his or her agreement to be assigned to New GM. *See* Exhibits "A" (cover letter) and "B" (Participation Agreement). This requirement was made quite clear in the cover letter accompanying the Participation Agreement. *See* Ex. "A" at p. 1 ("In order for your Dealer Agreements to be assigned to the 363 Acquirer, you must execute the enclosed letter agreement.") (emphasis in original).

The "take it or leave it" ultimatum presents Florida GM dealers with a classic Hobson's choice: lose the protections of Florida law or lose your business. And irony notwithstanding, the Participation Agreement contains an express provision by which each affected dealer "acknowledge(s) that its decisions and actions are entirely voluntary and free from any duress." *See* Ex. "B," ¶ 9(f). The consequence of not signing the "no-duress" clause would be that the dealer would lose his or her business.

As a result of numerous complaints from individual dealers, the Florida Automobile Dealers Association, the National Automobile Dealers Association, and the National Dealer Council, certain portions of the Participation Agreement were amended. *See* Exhibit "C." These revisions, while helpful, fail to preserve many important state law protections afforded to dealers,

4

in violation of both federal and state law.

Old GM also sent dealers that it intended to reject a "Wind-Down Agreement" offering seventy thousand dollars ($70,000) and an extended wind-down period (between January 31, 2010 and October 31, 2010, at the discretion of New GM). *See* Exhibit "D." In return, the dealers would forfeit all of their rights under state law as well as the ability to order any new vehicles, with the stated alternative being the filing of an immediate motion to reject, without any accommodations. *Id.* Dealers are entitled to a more significant sum for terminations under Florida law, including when terminations are due to a manufacturer's bankruptcy, as well as important procedural protections. *See* Fla. Stat. § 320.64(36), as amended by Ch. 2009-93, §1, at 6 (Exhibit "E"); *see also* §§ 320.641, 320.6415, 320.642. Accordingly, the inconsistent terms of the Wind-Down Agreement would have "no force and effect" pursuant to section 320.64(3), Florida Statutes.

### III.  Argument

#### A.    Federal Law Prohibits GM From Circumventing Florida Law.

Acting as the debtor-in-possession, GM has conditioned the assumption and assignment of Dealer Agreements upon its dealers' waiver of state law rights. Federal law is clear, however, that debtors-in-possession must comply with all applicable state laws. *See* 28 U.S.C. § 959(b). Section 959(b) provides, in pertinent part, that "a debtor in possession shall manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated. . ." As one bankruptcy court has stated, "the mandate of section 959(b) . . . prohibits the use of bankruptcy as a ruse to circumvent applicable state consumer protection laws by those who continue to operate in the marketplace." *In re White Crane Trading Co.*, 170 B.R. 694, 698 (Bankr. E.D. Cal. 1994). Another court has explained: "Implicit in

5

Section 959(b) is the notion that the goals of the federal bankruptcy laws, including rehabilitation of the debtor, do not authorize transgression of state laws setting requirements for the operation of the business . . . ." *In re Quanta Resources Corp.*, 739 F.2d 912, 919 (3d Cir. 1984), *aff'd sub nom., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986).

Citing section 959(b), the United States Supreme Court has unequivocally stated that "Congress did not intend for the Bankruptcy Code to pre-empt all state laws," and that "Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers." *Midlantic Nat'l Bank*, 474 U.S. at 505. Rather, Congress enacted 28 U.S.C. § 959(b) to prohibit debtors-in-possession from violating valid state laws. *Id.* In sum, section 959(b) simply stands "for the uncontroversial proposition that a trustee must carry out his duties in conformity with state law." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 593 (9th Cir. 1993).

Nonetheless, as set forth below, the Sale Motion, the Participation Agreement, and the Wind-Down Agreement together constitute an attempted end-run around important dealer-protection laws that should not be countenanced by this Court. Filing a petition for relief under the Bankruptcy Code does **not** operate as a stay of a state's action to enforce its regulatory power. *See* 11 U.S.C. §362(b)(4). Similarly, state dealer laws are not preempted by section 365 of the Bankruptcy Code. Section 365 says nothing about abrogating statutory obligations that are independent of those contracts. Additionally, those statutory obligations are based upon important public policies protecting decades-long investments in brands and communities. Like consumer protection laws, such obligations to a protected party are not preempted by section 365, but are expressly preserved under 28 U.S.C. § 959. Moreover, attempting to amend the dealership agreements before their assumption and assignment eviscerates the requirement under

6

section 365(a) that executory contracts cannot be assumed in part and rejected in part. *See* 3 Collier on Bankruptcy § 350.03[1] (15th ed. rev. 2008). An executory contract must be assumed "as it existed prior to bankruptcy, with all of its benefits and burdens." *In re Village Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992).

**B.    GM Has Sought To Evade Regulation in Florida.**

The Department regulates the dealer-manufacturer relationship in Florida, including the process to amend or terminate dealership agreements, and is authorized to deny, suspend or revoke a manufacturer's license over many of the provisions of the Participation Agreement and the Wind-Down Agreement. *See* Fla. Stat. §§ 320.60-320.70. The provisions that are "contrary to, prohibited by, or otherwise inconsistent with" Florida dealer-manufacturer laws would be grounds for revocation or suspension of Old GM's license as well as grounds for denying New GM's license application once it is filed. *See* Fla. Stat. §§ 320.63(3), 320.64(17). Threatening to modify or modifying dealership agreements to adversely alter the rights or obligations of a dealer is prohibited. *See* Fla. Stat. § 320.64(9). Moreover, threatening dealers with rejection unless the non-negotiable amended agreements are signed also violates section 320.641, which requires notice and an opportunity to protest any adverse change to the dealership agreement and is grounds for licensure action. *See* Fla. Stat. §§ 320.64(7), 320.64(8). If a protest is filed by a dealer, the Department likewise has the authority to determine whether the manufacturer has met its burden to demonstrate that the modification to the franchise agreement is fair and not prohibited. *See* Fla. Stat. § 320.641(3).

**C.    GM Has Sought to Free Itself from Florida Law Governing Franchise Modification.**

Florida law also prohibits specific provisions of the Participation Agreement (as modified) in the following ways:

7

1. <u>Increased Vehicle Inventory</u>

Florida law prohibits a manufacturer from requiring or attempting to require a dealer to accept delivery of any vehicles or parts that the dealer did not order. *See* Fla. Stat. § 320.64(5). The Participation Agreement, however, requires dealers to order and accept additional new vehicles from New GM. Ex. "B," ¶ 3.

2. <u>Sales Performance and Facilities</u>

Florida law prohibits a manufacturer from requiring a dealer "to make substantial changes, alterations, or remodeling to…[its] sales or service facilities unless…reasonable and justifiable in light of the current and reasonably foreseeable projections of economic conditions, financial expectations, and the motor vehicle dealer's market for the [manufacturer]'s motor vehicles." Fla. Stat. § 320.64(10)(a). The Participation Agreement, however, requires dealers to increase floor plan capability to accommodate New GM's increased sales and inventory expectations. Ex. "B," ¶ 7(c).

3. <u>Exclusivity</u>

Florida law prohibits a manufacturer from refusing to allow or restricting a dealer from acquiring or adding a sales or service operation for another manufacturer's vehicles. *See* Fla. Stat. § 320.64(37). The Participation Agreement, as modified, however, prohibits dealers from selling non-GM vehicles in the showroom by the end of this year and New GM has also reserved the right to require "completely exclusive GM facilities." Ex. "B," ¶ 4; Ex. "C," ¶ 4.

4. <u>Warranty Claims</u>

Florida law requires a manufacturer to compensate dealers for maintenance or repairs under warranty within thirty (30) days of the warranty service, as well as attendant parts and labor. *See* Fla. Stat. §§ 320.696; *see also* Fla. Stat. 320.64(17) (incorporating this violation as

8

grounds for suspension, revocation or denial of a license). The Participation Agreement, however, requires dealers to waive these claims except for transactions within ninety (90) days prior to the date of the Participation Agreement. Ex. "B," ¶ 6(a).

  5. Dealer Locations

Florida law gives dealers the right to protest new or relocated dealers within twelve (12) or twenty (20) miles, depending on the county's population, or if the dealer can show it has sold twenty-five percent (25%) of its new vehicles to consumers within that distance from the new or relocated dealer's location during any twelve (12) month period within the preceding thirty-six (36) months. *See* Fla. Stat. § 320.642(3). The Participation Agreement, however, prohibits protests by dealers that are located at least six (6) miles from the new or relocated dealership for a period of four (4) years. Ex. "B," ¶ 5(a). The modification clarifying that a dealer retains the right to protest within his or her "contractual area of responsibility" is insufficient because protest rights under Florida law are not limited to that area. *See* Ex. "C," ¶ 5.

**D.    GM Has Failed to Preserve Consumer Lemon Law Rights.**

Under paragraph 2.3(a)(vii) of the Master Sale and Purchase Agreement ("MPA"), New GM is to assume "all liabilities arising under express…limited new vehicle warranties…delivered in connection with the sale of new…vehicles manufactured or sold by Sellers or Purchaser prior to or after the Closing." The Florida Attorney General has participated in attempts coordinated through the National Association of Attorneys General to clarify how this provision applies to state "lemon laws." Florida's lemon law provides repurchase or replacement relief for consumers who have purchased or leased defective new motor vehicles and further provides a state-administered arbitration procedure for resolution of such claims. While Debtors' counsel indicated during a June 15, 2009 conference call with several states that lemon law obligations

were viewed as an extension of the manufacturer's obligations under the written warranty and that it was anticipated that each of the states' lemon law processes would continue "seamlessly," no commitment to amending the MPA to make that clear has been forthcoming.

The potential failure of New GM to fully assume the liabilities arising under states' lemon laws would adversely affect consumers, in terms of both the relief available and the defects covered. Under the manufacturer's written limited warranty, a consumer's remedies are essentially limited to repair or replacement of defective, covered components. Like most state lemon laws, Florida's law (Chapter 681, Florida Statutes) expands the coverage of limited manufacturer warranties and provides for repurchase or replacement of the defective vehicle with recovery of certain additional statutorily-defined costs. These remedies are applicable to new or demonstrator motor vehicles *sold or leased* within the state and are mandatory once the consumer reaches a statutory repair threshold. These remedies are not provided by manufacturer limited warranties.

In light of the relationship between Old and New GM, the statements by the United States government promising that all warranty obligations would be honored, the representation of Debtors' counsel that it is the intent of the parties that the lemon law rights of consumers are to continue in a "seamless" manner, and considering the harm that consumers will suffer if deprived of their rights under state law, the Florida Attorney General objects to any sale order that does not expressly require assumption of such obligations and requests that the MPA be clarified to directly address this issue. The MPA should also be clarified to recognize New GM's lemon law obligations for *leased* vehicles, inasmuch as it now only refers to warranties delivered "in connection with the sale of vehicles manufactured or sold" by Sellers. MPA, §2.3(a)(vii).

### **IV.     Conclusion**

The Florida Attorney General respectfully submits that Debtors' attempt to use the bankruptcy proceeding to modify the applicability of state regulatory law and avoid the legitimate enforcement authority of state regulatory agencies is contrary to well-established law.  New GM is attempting to free itself from state regulation in a manner that it could not otherwise achieve (and should not be able to achieve through bankruptcy) to create an imbalanced relationship with its dealer network.  If this occurs, the result will be a regulatory landscape in which New GM operates without state regulations applicable to all other manufacturers, including "new" Chrysler.  Finally, the lemon law rights of consumers should not be prejudiced by this bankruptcy filing.

**WHEREFORE**, the Florida Attorney General respectfully requests that this Court sustain its Limited Objection.

Dated: 6/19/09

**Respectfully submitted,**

**BILL McCOLLUM**
Attorney General

/s/ Russell S. Kent
RUSSELL S. KENT
Special Counsel for Litigation
Florida Bar No. 20257
russell.kent@myfloridalegal.com
ASHLEY E. DAVIS
Assistant Attorney General
Florida Bar No. 48032
ashley.davis@myfloridalegal.com
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone:  (850) 414-3300
Facsimile:  (850) 488-9134