

# General Motors Corporation

June 9, 2009

Via Federal Express



To All GM Dealers in the US Who Received a Participation Agreement:

    First and foremost, thank you for your continued support and efforts on GM's behalf in these unprecedented and challenging times. As we indicated when we sent you the June 1, 2009 letter agreement (the "Participation Agreement"), GM wants your dealership to be part of GM's future and our whole focus is to try to improve, together, the GM dealer network. We are gratified that, through Monday, June 8, we have already received over half or 2,200 signed Participation Agreements back from dealers, indicating broad dealer support of our objectives for the dealer network.

    We have, however, received thoughtful and insightful questions and comments from individual dealers, the NADA and the National Dealer Council (the "NDC") regarding the Participation Agreement. In response, we have had discussions with the NADA and the NDC. As a result of those discussions, we are writing to provide clarity on several points addressed in the Participation Agreement, as well as to amend certain terms and conditions of the Participation Agreement. Again, our whole focus here is to work with GM dealers to insure that both GM and the dealer body are best positioned to compete in this challenging environment and more importantly in the future.

    1. Before we address specific portions of the Participation Agreement affected by this letter, it is important that our dealer body fully understands our reasoning for the Participation Agreement. Given the overall consolidation of GM's dealer network, improved and award winning product offerings by GM, and an anticipated improving US vehicle market over the next few years, dealers will have significant opportunities to increase sales. These sales increases are necessary to GM and the dealer networks' viability over the long term. Our intent is to assist dealers as much as possible to sell high quality vehicles and provide the best customer service in the industry. Our expectation for GM dealers is that they will perform to GM's sales and customer satisfaction requirements and, over time, improve their sales performance in line with increased market opportunities. In order to meet and exceed GM's expectations with respect to sales and customer satisfaction, dealers must have up-to-date, competitive facilities that are properly imaged. Further, dealers must align their facilities by GM's channel strategy to the fullest extent possible and eliminate non-GM line makes from their showrooms to place the proper customer focus on the Chevy, BG or Cadillac channels.

    2. Dealers, the NADA and the NDC have raised understandable questions about exactly how the sales expectations would be determined. We explained that we were unable to provide specific answers for individual dealerships now given that we don't yet know how many dealers will sign Participation Agreements and be part of our GM dealer network and footprint in the future. However, the process GM intends to use is to work with individual GM dealers to develop specific market plans, sales objectives and plans to meet or exceed those sales objectives over time. By working with our dealers on this critical issue, we expect that our dealers will not only maintain current sales levels, but will increase sales beyond those




EXHIBIT C

levels necessary for the viability of GM's dealer network. In terms of our process, at some point in the first quarter of 2010, we will hold a GM Reinvention business plan meeting with each dealer executing a Participation Agreement. At this meeting GM's channel representatives and the dealer will agree upon appropriate sales targets given the new dealer footprint in the market and other factors, including, but not limited to, dealer's competitive position in the market, dealer's historical market share, and dealer's market opportunity. We anticipate that this process will be substantially the same as the methods used by GM and dealers to set sales targets in the past. It is expected that the increased sales expectations will be implemented for the second half of the 2010 or 2011 calendar year. In addition, if the overall US vehicle market is operating well below forecast at that time, such information will be factored into the calculations for the dealer's sales expectations.

3. In addition to the questions regarding sales expectations, GM received questions regarding inventory expectations. Simply put, GM needs dealers to order adequate inventory to meet or exceed expected sales performance requirements determined by GM and dealer at the GM Reinvention business plan meeting. If the dealer is meeting sales expectations, there will be no reason for GM to question the dealer's ordering practices or inventory levels. If the dealer is not meeting or exceeding sales expectations, and ordering practices or inventory levels are contributing to this problem, GM needs the dealer's commitment to work diligently to address the situation. This issue is addressed in the Participation Agreement. On the other hand, if product availability is an issue, GM will work with the dealer to try to address that issue as well.

4. On the issue of exclusivity, it is assumed that the dealer will remove non-GM brands from the GM showroom by December 31, 2009 as provided in the Participation Agreement and will operate a showroom exclusive to GM products going forward. GM reserves the right to require in certain markets that dealer provide completely exclusive GM facilities on the dealership premises going forward. Of course, you have our commitment to work with you reasonably (1) to determine whether your dealership premises will be exclusive GM and (2) if you cannot reasonably meet the agreed date or dates for exclusivity. It is not our intent to be unreasonable or onerous with respect to exclusivity requirements, but to clearly provide an excellent customer experience for our mutual customers and to help increase sales of GM brands. While most continuing GM dealers operate out of excellent, imaged facilities, there are those that continue to operate out of dated, non-competitive facilities that do not properly represent GM's brands. This is not good for the dealer, GM or the other dealers in the same market. If a dealer's facility is not compliant, GM's channel representative and the dealer will meet and agree on the appropriate action to be taken by GM and the dealer. GM is fully aware of the current difficult conditions in the market, and any request by GM for dealers to invest in their facilities will take into account the realities of the market. To address the foregoing, we are hereby amending Section 4 of the Participation Agreement to delete the existing third sentence and insert the following in its place:

> "In the event that Dealer currently operates any non-GM dealership on the Dealership Premises, Dealer shall cease all non-GM Dealership Operations in the GM showroom at the Dealership Premises, on or before December 31, 2009, and Dealer and GM will meet as soon as practical but in all events by the end of 2009, to reasonably determine and mutually agree whether or not and the extent to which non-GM Dealership Operations may continue on the Dealership Premises other than the GM showroom."

In addition we are hereby amending Section 4 of the Participation Agreement to delete the existing fourth sentence and insert the following in its place:




"If Dealer fails to comply with its commitments under this Section 4, GM or the 363 Aquirer shall be entitled to all of their remedies pursuant to Article 13.2 of the Dealer Agreement."

5. In terms of waiving the right to protest in certain limited circumstances, we have frankly received a good deal of comment on this provision. First, we are well aware of the provisions of state franchise laws and a dealer's right to protest certain network actions. Accordingly, we drafted this provision to only apply within a limited time frame and outside the six mile provision set forth in the Dealer Agreement. The intent was to provide GM and our dealers the flexibility to move quickly during this period given the dramatically different dealer footprint. It is essential for GM and the dealer body that this flexibility is built into the Participation Agreement in order to secure a strong, vibrant dealer network now and in the future without the need to resort to the time consuming and costly protest procedures within the state process. However, GM does not intend to use this provision to increase the number of same line make dealers in a particular market over the number that exist today. This was a major concern of dealers, the NADA, and the NDC. To address this issue, we are hereby amending Section 5 of the Participation Agreement by adding the following sentence at the end of Section 5(a) thereof:

"Notwithstanding the foregoing, Dealer is not waiving any protest rights whatsoever in the event that GM seeks to increase the number of dealerships for the Existing Model Line(s) in Dealer's contractual area of responsibility from the number that are located in that area as of the date of this letter agreement."

Again, while it is important that GM retain flexibility in this area, GM believes such activity will be limited.

6. A number of concerns have been raised regarding the breach provision of the Participation Agreement. While it is appropriate that GM have remedies in the event of a breach by dealers of the Dealer Agreement, GM is not looking to terminate any Dealer Agreements for those dealers executing a Participation Agreement. Quite the opposite. We have spent considerable time, energy and money trying to retain your dealership in the network. However, to address certain concerns of the dealers, the NADA, and the NDC that the breach provision of the Participation Agreement would override state law protections for dealers, GM has agreed to delete that provision from the Participation Agreement and rely on the terms of the Dealer Agreement and state law in connection with any breach of the Dealer Agreement, as supplemented by the Participation Agreement, by dealer. Accordingly, Section 8 of the Participation Agreement is hereby deleted in its entirety and all other terms of the Participation Agreement, as modified by this letter agreement, including the numbering of all sections, shall remain in full force and effect.

7. Finally, a number of concerns have been raised about the choice of law provisions in Section 9(g) of the Participation Agreement. Accordingly, the choice of law provisions of Section 9(g) are hereby deleted and such provisions are replaced by the choice of law provision contained in Article 17.12 of the Dealer Agreement, the terms of which are specifically incorporated by reference and agreement into the Participation Agreement. In addition, Section 9(h) is hereby modified such that all terms of Section 9(h) after the words "letter agreement" are stricken and removed from the Participation Agreement.

8. If you have already executed and returned to GM your Participation Agreement, please execute this letter and return it to GM on or before **June 15, 2009**, and the terms of this letter shall be incorporated into the Participation Agreement. If you have not executed and returned your Participation Agreement to GM, please note the deadline for doing so remains **June 12, 2009**. Please execute the Participation Agreement and return it to GM on or before **June 12, 2009**, and also sign and return this

letter by **June 15, 2009**. We have enclosed a return Federal Express envelope, addressed to GM, for your convenience.

    I would like to personally congratulate you on being selected to move forward with the new GM. With our innovative and award winning product line for Chevrolet, Buick, Cadillac and GMC, and the strongest dealers in the GM network, we have an extraordinary opportunity to win in the market and create both great brand and franchise value, as well as a business that will make America proud. I am honored to be working with you in this mission.

    Sincerely,

    **Mark LaNeve, GMNA Vice President of Vehicle, Sales, Service and Marketing**

ACKNOWLEDGED AND AGREED TO BY:

By: _____

Name: _____
Title: _____

