Committee Substitute for Committee Substitute for
Committee Substitute for Senate Bill No. 2630

An act relating to motor vehicle dealerships; amending s. 320.64, F.S.; revising provisions prohibiting certain acts by a motor vehicle manufacturer, factory branch, distributor, or importer licensed under specified provisions; revising conditions and procedures for certain audits; making rebuttable a presumption that a dealer had no actual knowledge and should not have known that a customer intended to export or resell a motor vehicle; clarifying a dealer's eligibility requirements for licensee-offered program bonuses, incentives, and other benefits; requiring certain payments if a termination, cancellation, or nonrenewal of a dealer's franchise is the result of cessation of manufacture or distribution of a line-make or a bankruptcy or reorganization; amending s. 320.642, F.S.; revising provisions for establishing an additional motor vehicle dealership in or relocating an existing dealer to a location within a community or territory where the same line-make vehicle is presently represented by a franchised motor vehicle dealer or dealers; revising requirements for protests; amending s. 320.643, F.S.; revising provisions for a transfer, assignment, or sale of franchise agreements; prohibiting rejection of proposed transfer of interest in a motor vehicle dealer entity to a trust or other entity, or a beneficiary thereof, which is established for estate-planning purposes; prohibiting placing certain conditions on such transfer; revising provisions for a hearing by the department or a court relating to a proposed transfer; amending s. 320.696, F.S.; revising warranty responsibility provisions; providing for severability; amending s. 320.771, F.S.; conforming provisions relating to certificate of title requirements for recreational vehicle dealers; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1. Subsections (10), (25), (26), and (36) of section 320.64, Florida Statutes, are amended, and subsection (38) is added to that section, to read:

320.64 Denial, suspension, or revocation of license; grounds.—A license of a licensee under s. 320.61 may be denied, suspended, or revoked within the entire state or at any specific location or locations within the state at which the applicant or licensee engages or proposes to engage in business, upon proof that the section was violated with sufficient frequency to establish a pattern of wrongdoing, and a licensee or applicant shall be liable for claims and remedies provided in ss. 320.695 and 320.697 for any violation of any of the following provisions. A licensee is prohibited from committing the following acts:

(10)(a) The applicant or licensee has attempted to enter, or has entered, into a franchise agreement with a motor vehicle dealer who does not, at the time of the franchise agreement, have proper facilities to provide the ser-

vices to his or her purchasers of new motor vehicles which are covered by the new motor vehicle warranty issued by the applicant or licensee.

(b) Notwithstanding any provision of a franchise, a licensee may not require a motor vehicle dealer, by agreement, program, policy, standard, or otherwise, <s>to relocate,</s> to make substantial changes, alterations, or remodeling to, or to replace a motor vehicle dealer's sales or service facilities unless the licensee's requirements are reasonable and justifiable in light of the current and reasonably foreseeable projections of economic conditions, financial expectations, and the motor vehicle dealer's market for the licensee's motor vehicles.

(c)<s>(b)</s> A licensee may, however, <u>consistent with the licensee's allocation obligations at law and to its other same line-make motor vehicle dealers,</u> provide to a motor vehicle dealer a commitment to <u>supply</u> <s>allocate</s> additional vehicles or <u>provide</u> a loan or grant of money as an inducement for the motor vehicle dealer to <s>relocate,</s> expand, improve, remodel, alter, or renovate its facilities if <s>the licensee delivers an assurance to the dealer that it will offer to supply to the dealer a sufficient quantity of new motor vehicles, consistent with its allocation obligations at law and to its other same line-make motor vehicle dealers, which will economically justify such relocation, expansion, improvement, remodeling, renovation, or alteration, in light of reasonably current and reasonably projected market and economic conditions.</s> the provisions of the <u>commitment are</u> <s>increase in vehicle allocation, the loan or grant and the assurance, and the basis for them must be</s> contained in a <u>writing</u> <s>written agreement</s> voluntarily <u>agreed to</u> <s>entered into</s> by the dealer and <u>are</u> <s>must be</s> made available, on substantially similar terms, to any of the licensee's other same line-make dealers in this state <u>who voluntarily agree to make a substantially similar facility expansion, improvement, remodeling, alteration, or renovation</u> <s>with whom the licensee offers to enter into such an agreement</s>.

(d) Except as provided in paragraph (c), subsection (36), or as otherwise provided by law, this subsection does not require a licensee to provide financial support for, or contribution to, the purchase or sale of the assets of or equity in a motor vehicle dealer or a relocation of a motor vehicle dealer because such support has been provided to other purchases, sales, or relocations.

(e)<s>(c)</s> A licensee <u>or its common entity may</u> <s>shall</s> not <s>withhold a bonus, incentive, or other benefit that is available to its other same line-make franchised dealers in this state from, or</s> take or threaten to take any action that is unfair or adverse to a dealer who does not enter into an agreement with the licensee pursuant to paragraph <u>(c)</u> <s>(b)</s>.

<s>(d) A licensee may not refuse to offer a program, bonus, incentive, or other benefit, in whole or in part, to a dealer in this state which it offers to its other same line-make dealers nationally or in the licensee's zone or region in which this state is included. Neither may it discriminate against a dealer in this state with respect to any program, bonus, incentive, or other benefit. For purposes of this chapter, a licensee may not establish this state alone as a zone, region, or territory by any other designation.</s>

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

(f)(e) This subsection does Paragraphs (a) and (b) do not affect any contract between a licensee and any of its dealers regarding relocation, expansion, improvement, remodeling, renovation, or alteration which exists on the effective date of this act.

(f) Any portion of a licensee-offered program for a bonus, incentive, or other benefit that, in whole or in part, is based upon or aimed at inducing a dealer's relocation, expansion, improvement, remodeling, renovation, or alteration of the dealer's sales or service facility, or both, is void as to each of the licensee's motor vehicle dealers in this state who, nevertheless, shall be eligible for the entire amount of the bonuses, incentives, or benefits offered in the program upon compliance with the other eligibility provisions in the program.

(g) A licensee may set and uniformly apply reasonable standards for a motor vehicle dealer's sales and service facilities which are related to upkeep, repair, and cleanliness.

(h) A violation of paragraphs (b) through (g) is not a violation of s. 320.70 and does not subject any licensee to any criminal penalty under s. 320.70.

(25) The applicant or licensee has undertaken an audit of warranty, maintenance, and other service-related payments or incentive payments, including payments to a motor vehicle dealer under any licensee-issued program, policy, or other benefit, which previously have been paid to a motor vehicle dealer in violation of this section or has failed to comply with any of its obligations under s. 320.696. An applicant or licensee may reasonably and periodically audit a motor vehicle dealer to determine the validity of paid claims as provided in s. 320.696. Audits Audit of warranty, maintenance, and other service-related payments shall only be performed by an applicant or licensee only during for the 1-year period immediately following the date the claim was paid. Audit of incentive payments shall only be for an 18-month period immediately following the date the incentive was paid. After such time periods have elapsed, all warranty, maintenance, and other service-related payments and incentive payments shall be deemed final and incontrovertible for any reason notwithstanding any otherwise applicable law, and the motor vehicle dealer shall not be subject to any charge-back or repayment. An applicant or licensee may deny a claim or, as a result of a timely conducted audit, impose a charge-back against a motor vehicle dealer for warranty, maintenance, or other service-related payments or incentive payments only if An applicant or licensee shall not deny a claim or charge a motor vehicle dealer back subsequent to the payment of the claim unless the applicant or licensee can show that the warranty, maintenance, or other service-related claim or incentive claim was false or fraudulent or that the motor vehicle dealer failed to substantially comply with the reasonable written and uniformly applied procedures of the applicant or licensee for such repairs or incentives. An applicant or licensee may not charge a motor vehicle dealer back subsequent to the payment of a warranty, maintenance, or service-related claim or incentive claim unless, within 30 days after a timely conducted audit, a representative of the applicant or licensee first meets in person, by telephone, or by video teleconference with an officer or employee of the dealer designated by the motor vehicle dealer. At such

meeting the applicant or licensee must provide a detailed explanation, with supporting documentation, as to the basis for each of the claims for which the applicant or licensee proposed a charge-back to the dealer and a written statement containing the basis upon which the motor vehicle dealer was selected for audit or review. Thereafter, the applicant or licensee must provide the motor vehicle dealer's representative a reasonable period after the meeting within which to respond to the proposed charge-backs, with such period to be commensurate with the volume of claims under consideration, but in no case less than 45 days after the meeting. The applicant or licensee is prohibited from changing or altering the basis for each of the proposed charge-backs as presented to the motor vehicle dealer's representative following the conclusion of the audit unless the applicant or licensee receives new information affecting the basis for one or more charge-backs <u>and that new information is received within 30 days after the conclusion of the timely conducted audit</u>. If the applicant or licensee claims the existence of new information, the dealer must be given the same right to a meeting and right to respond as when the charge-back was originally presented. <u>After all internal dispute resolution processes provided through the applicant or licensee have been completed, the applicant or licensee shall give written notice to the motor vehicle dealer of the final amount of its proposed charge-back. If the dealer disputes that amount, the dealer may file a protest with the department within 30 days after receipt of the notice. If a protest is timely filed, the department shall notify the applicant or licensee of the filing of the protest and the applicant or licensee may not take any action to recover the amount of the proposed charge-back until the department renders a final determination, which is not subject to further appeal, that the charge-back is in compliance with the provisions of this section. In any hearing pursuant to this subsection, the applicant or licensee has the burden of proof that its audit and resulting charge-back are in compliance with this subsection.</u>

(26)  Notwithstanding the terms of any franchise agreement, including any licensee's program, policy, or procedure, the applicant or licensee has refused to allocate, sell, or deliver motor vehicles; charged back or withheld payments or other things of value for which the dealer is otherwise eligible under a sales promotion, program, or contest; prevented a motor vehicle dealer from participating in any promotion, program, or contest; or has taken or threatened to take any adverse action against a dealer, including charge-backs, reducing vehicle allocations, or terminating or threatening to terminate a franchise because the dealer sold or leased a motor vehicle to a customer who exported the vehicle to a foreign country or who resold the vehicle, unless the licensee proves that the dealer <u>knew or reasonably should have known</u> ~~had actual knowledge~~ that the customer intended to export or resell the motor vehicle. There is a <u>rebuttable</u> ~~conclusive~~ presumption that the dealer <u>neither knew nor reasonably should have known of its customer's intent to export or resell the vehicle</u> ~~had no actual knowledge~~ if the vehicle is titled or registered in any state in this country. <u>A licensee may not take any action against a motor vehicle dealer, including reducing its allocations or supply of motor vehicles to the dealer, or charging back a dealer for an incentive payment previously paid, unless the licensee first meets in person, by telephone, or video conference with an officer or other designated employee of the dealer. At such meeting, the licensee must provide a detailed</u>

<u>explanation, with supporting documentation, as to the basis for its claim that the dealer knew or reasonably should have known of the customer's intent to export or resell the motor vehicle. Thereafter, the motor vehicle dealer shall have a reasonable period, commensurate with the number of motor vehicles at issue, but not less than 15 days, to respond to the licensee's claims. If, following the dealer's response and completion of all internal dispute resolution processes provided through the applicant or licensee, the dispute remains unresolved, the dealer may file a protest with the department within 30 days after receipt of a written notice from the licensee that it still intends to take adverse action against the dealer with respect to the motor vehicles still at issue. If a protest is timely filed, the department shall notify the applicant or licensee of the filing of the protest and the applicant or licensee may not take any action adverse to the dealer until the department renders a final determination, which is not subject to further appeal, that the licensee's proposed action is in compliance with the provisions of this subsection. In any hearing pursuant to this subsection, the applicant or licensee has the burden of proof on all issues raised by this subsection.</u>

(36)(a) Notwithstanding the terms of any franchise agreement, in addition to any other statutory or contractual rights of recovery after the voluntary or involuntary termination, <u>cancellation, or nonrenewal</u> of a franchise, failing to pay the motor vehicle dealer, <u>as provided in paragraph (d)</u> ~~within 90 days after the effective date of the termination, cancellation, or nonrenewal~~, the following amounts:

1. The net cost paid by the dealer for each new car or truck in the dealer's inventory with mileage of 2,000 miles or less, or a motorcycle with mileage of 100 miles or less, exclusive of mileage placed on the vehicle before it was delivered to the dealer.

2. The current price charged for each new, unused, undamaged, or unsold part or accessory that:

a. Is in the current parts catalogue and is still in the original, resalable merchandising package and in an unbroken lot, except that sheet metal may be in a comparable substitute for the original package; and

b. Was purchased by the dealer directly from the manufacturer or distributor or from an outgoing authorized dealer as a part of the dealer's initial inventory.

3. The fair market value of each undamaged sign owned by the dealer which bears a trademark or trade name used or claimed by the applicant or licensee or its representative which was purchased from or at the request of the applicant or licensee or its representative.

4. The fair market value of all special tools, data processing equipment, and automotive service equipment owned by the dealer which:

a. Were recommended in writing by the applicant or licensee or its representative and designated as special tools and equipment;

b. Were purchased from or at the request of the applicant or licensee or its representative; and

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

　　c.　Are in usable and good condition except for reasonable wear and tear.

　　5.　The cost of transporting, handling, packing, storing, and loading any property subject to repurchase under this section.

　　(b) If the termination, cancellation, or nonrenewal of the dealer's franchise is the result of the bankruptcy or reorganization of a licensee or its common entity, or the result of a licensee's plan, scheme, or policy, whether or not publicly declared, which is intended to or has the effect of decreasing the number of, or eliminating, the licensee's franchised motor vehicle dealers of a line-make in this state, or the result of a termination, elimination, or cessation of manufacture or reorganization of a licensee or its common entity, or the result of a termination, elimination, or cessation of manufacture or distribution of a line-make, in addition to the above payments to the dealer, the licensee or its common entity, shall be liable to and shall pay the motor vehicle dealer for an amount at least equal to the fair market value of the franchise for the line-make, which shall be the greater of the value determined as of the day the licensee announces the action that results in the termination, cancellation, or nonrenewal, or the value determined on the day that is 12 months before that date. Fair market value of the franchise for the line-make includes only the goodwill value of the dealer's franchise for that line-make in the dealer's community or territory.

　　(c)(b)　This subsection does not apply to a termination, cancellation, or nonrenewal that is implemented as a result of the sale of the assets or corporate stock or other ownership interests of the dealer.

　　(d)　The dealer shall return the property listed in this subsection to the licensee within 90 days after the effective date of the termination, cancellation, or nonrenewal. The licensee shall supply the dealer with reasonable instructions regarding the method by which the dealer must return the property. Absent shipping instructions and prepayment of shipping costs from the licensee or its common entity, the dealer shall tender the inventory and other items to be returned at the dealer's facility. The compensation for the property shall be paid by the licensee or its common entity simultaneously with within 60 days after the tender of inventory and other items, provided that, if the dealer does not have has clear title to the inventory and other items and is not in a position to convey that title to the licensee, manufacturer or distributor. If the inventory or other items are subject to a security interest, the licensee may make payment for the property being returned may be made jointly to the dealer and the holder of any the security interest.

　　(38)　The applicant or licensee has failed or refused to offer a bonus, incentive, or other benefit program, in whole or in part, to a dealer or dealers in this state which it offers to all of its other same line-make dealers nationally or to all of its other same line-make dealers in the licensee's designated zone, region, or other licensee-designated area of which this state is a part, unless the failure or refusal to offer the program in this state is reasonably supported by substantially different economic or marketing considerations than are applicable to the licensee's same line-make dealers in this state. For purposes of this chapter, a licensee may not establish this state alone

CODING: Words stricken are deletions; words underlined are additions.

<u>as a designated zone, region, or area or any other designation for a specified territory. A licensee may offer a bonus, rebate, incentive, or other benefit program to its dealers in this state which is calculated or paid on a per vehicle basis and is related in part to a dealer's facility or the expansion, improvement, remodeling, alteration, or renovation of a dealer's facility. Any dealer who does not comply with the facility criteria or eligibility requirements of such program is entitled to receive a reasonable percentage of the bonus, incentive, rebate, or other benefit offered by the licensee under that program by complying with the criteria or eligibility requirements unrelated to the dealer's facility under that program. For purposes of the previous sentence, the percentage unrelated to the facility criteria or requirements is presumed to be "reasonable" if it is not less than 80 percent of the total of the per vehicle bonus, incentive, rebate, or other benefits offered under the program.</u>

A motor vehicle dealer who can demonstrate that a violation of, or failure to comply with, any of the preceding provisions by an applicant or licensee will or can adversely and pecuniarily affect the complaining dealer, shall be entitled to pursue all of the remedies, procedures, and rights of recovery available under ss. 320.695 and 320.697.

Section 2. Subsections (1) and (3) of section 320.642, Florida Statutes, are amended to read:

320.642 Dealer licenses in areas previously served; procedure.—

(1) Any licensee who proposes to establish an additional motor vehicle dealership or permit the relocation of an existing dealer to a location within a community or territory where the same line-make vehicle is presently represented by a franchised motor vehicle dealer or dealers shall give written notice of its intention to the department. <u>The</u> ~~Such~~ notice shall state:

(a) The specific location at which the additional or relocated motor vehicle dealership will be established.

(b) The date on or after which the licensee intends to be engaged in business with the additional or relocated motor vehicle dealer at the proposed location.

(c) The identity of all motor vehicle dealers who are franchised to sell the same line-make vehicle with licensed locations in the county <u>and</u> ~~or~~ any contiguous county to the county where the additional or relocated motor vehicle dealer is proposed to be located.

(d) The names and addresses of the dealer-operator and principal investors in the proposed additional or relocated motor vehicle dealership.

Immediately upon receipt of <u>the</u> ~~such~~ notice the department shall cause a notice to be published in the Florida Administrative Weekly. The published notice shall state that a petition or complaint by any dealer with standing to protest pursuant to subsection (3) must be filed not more than 30 days from the date of publication of the notice in the Florida Administrative

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

Weekly. The published notice shall describe and identify the proposed dealership sought to be licensed, and the department shall cause a copy of the notice to be mailed to those dealers identified in the licensee's notice under paragraph (c).

(3) An existing franchised motor vehicle dealer or dealers shall have standing to protest a proposed additional or relocated motor vehicle dealer <u>when</u> ~~where~~ the existing motor vehicle dealer or dealers have a franchise agreement for the same line-make vehicle to be sold or serviced by the proposed additional or relocated motor vehicle dealer and are physically located so as to meet or satisfy any of the following requirements or conditions:

(a) If the proposed additional or relocated motor vehicle dealer is to be located in a county with a population of less than 300,000 according to the most recent data of the United States Census Bureau or the data of the Bureau of Economic and Business Research of the University of Florida:

1. The proposed additional or relocated motor vehicle dealer is to be located in the area designated or described as the area of responsibility, or such similarly designated area, including the entire area designated as a multiple-point area, in the franchise agreement or in any related document or commitment with the existing motor vehicle dealer or dealers of the same line-make as such agreement existed upon October 1, 1988;

2. The existing motor vehicle dealer or dealers of the same line-make have a licensed franchise location within a radius of 20 miles of the location of the proposed additional or relocated motor vehicle dealer; or

3. Any existing motor vehicle dealer or dealers of the same line-make can establish that during any 12-month period of the 36-month period preceding the filing of the licensee's application for the proposed dealership, <u>the</u> ~~such~~ dealer or its predecessor made 25 percent of its retail sales of new motor vehicles to persons whose registered household addresses were located within a radius of 20 miles of the location of the proposed additional or relocated motor vehicle dealer; provided <u>the</u> ~~such~~ existing dealer is located in the same county or any county contiguous to the county where the additional or relocated dealer is proposed to be located.

(b) If the proposed additional or relocated motor vehicle dealer is to be located in a county with a population of more than 300,000 according to the most recent data of the United States Census Bureau or the data of the Bureau of Economic and Business Research of the University of Florida:

1. Any existing motor vehicle dealer or dealers of the same line-make have a licensed franchise location within a radius of 12.5 miles of the location of the proposed additional or relocated motor vehicle dealer; or

2. Any existing motor vehicle dealer or dealers of the same line-make can establish that during any 12-month period of the 36-month period preceding the filing of the licensee's application for the proposed dealership, such dealer or its predecessor made 25 percent of its retail sales of new motor vehicles to persons whose registered household addresses were located

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

within a radius of 12.5 miles of the location of the proposed additional or relocated motor vehicle dealer; provided such existing dealer is located in the same county or any county contiguous to the county where the additional or relocated dealer is proposed to be located.

Section 3.　Section 320.643, Florida Statutes, is amended to read:

320.643　Transfer, assignment, or sale of franchise agreements.—

(1)(a)　Notwithstanding the terms of any franchise agreement, a licensee shall not, by contract or otherwise, fail or refuse to give effect to, prevent, prohibit, or penalize or attempt to refuse to give effect to, prohibit, or penalize any motor vehicle dealer from selling, assigning, transferring, alienating, or otherwise disposing of its franchise agreement to any other person or persons, including a corporation established or existing for the purpose of owning or holding a franchise agreement, unless the licensee proves at a hearing pursuant to a complaint filed by a motor vehicle dealer under this section that the such sale, transfer, alienation, or other disposition is to a person who is not, or whose controlling executive management is not, of good moral character or does not meet the written, reasonable, and uniformly applied standards or qualifications of the licensee relating to financial qualifications of the transferee and business experience of the transferee or the transferee's executive management. A motor vehicle dealer who desires to sell, assign, transfer, alienate, or otherwise dispose of a franchise shall notify, or cause the proposed transferee to notify, the licensee, in writing, setting forth the prospective transferee's name, address, financial qualifications, and business experience during the previous 5 years. A licensee who receives such notice may, within 60 days following such receipt, notify the motor vehicle dealer, in writing, that the proposed transferee is not a person qualified to be a transferee under this section and setting forth the material reasons for such rejection. Failure of the licensee to notify the motor vehicle dealer within the 60-day period of such rejection shall be deemed an approval of the transfer. No such transfer, assignment assign, or sale shall be valid unless the transferee agrees in writing to comply with all requirements of the franchise then in effect, but with the ownership changed to the transferee.

(b)　A motor vehicle dealer whose proposed sale is rejected may, within 60 days following such receipt of such rejection, file with the department a complaint for a determination that the proposed transferee has been rejected in violation of this section. The licensee has the burden of proof with respect to all issues raised by the such complaint. The department shall determine, and enter an order providing, that the proposed transferee is either qualified or is not and cannot be qualified for specified reasons, or the order may provide the conditions under which a proposed transferee would be qualified. If the licensee fails to file such a response to the motor vehicle dealer's complaint within 30 days after receipt of the complaint, unless the parties agree in writing to an extension, or if the department, after a hearing, renders a decision other than one disqualifying the proposed transferee, the franchise agreement between the motor vehicle dealer and the licensee is shall be deemed amended to incorporate such transfer or amended in accordance with the determination and order rendered, effective upon com-

CODING: Words stricken are deletions; words underlined are additions.

pliance by the proposed transferee with any conditions set forth in the determination or order.

(2)(a) Notwithstanding the terms of any franchise agreement, a licensee shall not, by contract or otherwise, fail or refuse to give effect to, prevent, prohibit, or penalize, or attempt to refuse to give effect to, prevent, prohibit, or penalize, any motor vehicle dealer or any proprietor, partner, stockholder, owner, or other person who holds or otherwise owns an interest therein from selling, assigning, transferring, alienating, or otherwise disposing of, in whole or in part, the equity interest of any of them in such motor vehicle dealer to any other person or persons, including a corporation established or existing for the purpose of owning or holding the stock or ownership interests of other entities, unless the licensee proves at a hearing pursuant to a complaint filed by a motor vehicle dealer under this section that the such sale, transfer, alienation, or other disposition is to a person who is not, or whose controlling executive management is not, of good moral character. A motor vehicle dealer, or any proprietor, partner, stockholder, owner, or other person who holds or otherwise owns an interest in the motor vehicle dealer, who desires to sell, assign, transfer, alienate, or otherwise dispose of any interest in such motor vehicle dealer shall notify, or cause the proposed transferee to so notify, the licensee, in writing, of the identity and address of the proposed transferee. A licensee who receives such notice may, within 60 days following such receipt, notify the motor vehicle dealer in writing that the proposed transferee is not a person qualified to be a transferee under this section and setting forth the material reasons for such rejection. Failure of the licensee to notify the motor vehicle dealer within the 60-day period of such rejection shall be deemed an approval of the transfer. Any person whose proposed sale of stock is rejected may file within 60 days of receipt of such rejection a complaint with the department alleging that the rejection was in violation of the law or the franchise agreement. The licensee has the burden of proof with respect to all issues raised by such complaint. The department shall determine, and enter an order providing, that the proposed transferee either is qualified or is not and cannot be qualified for specified reasons; or the order may provide the conditions under which a proposed transferee would be qualified. If the licensee fails to file a response to the motor vehicle dealer's complaint within 30 days of receipt of the complaint, unless the parties agree in writing to an extension, or if the department, after a hearing, renders a decision on the complaint other than one disqualifying the proposed transferee, the transfer shall be deemed approved in accordance with the determination and order rendered, effective upon compliance by the proposed transferee with any conditions set forth in the determination or order.

(b) Notwithstanding paragraph (a), a licensee may not reject a proposed transfer of a legal, equitable, or beneficial interest in a motor vehicle dealer to a trust or other entity, or to any beneficiary thereof, which is established by an owner of any interest in a motor vehicle dealer for purposes of estate planning, if the controlling person of the trust or entity, or the beneficiary, is of good moral character.

(3) A licensee may not condition any proposed transfer under this section upon a relocation of a dealer, construction of any addition or modification

CODING: Words stricken are deletions; words underlined are additions.

<u>to, or any refurbishing or remodeling of any dealership structure, facility, or building of the existing motor vehicle dealer, or upon any modification of the existing franchise agreement, except for the change of ownership.</u>

<u>(4)</u><s>(3)</s>　During the pendency of any such hearing, the franchise agreement of the motor vehicle dealer shall continue in effect in accordance with its terms. The department shall expedite any determination requested under this section.

<u>(5)</u><s>(4)</s>　Notwithstanding the terms of any franchise agreement, the acceptance by the licensee of the proposed transferee shall not be unreasonably withheld. For the purposes of this section, the refusal by the licensee to accept<u>, in a timely manner,</u> a proposed transferee who satisfies the criteria set forth in subsection (1) or subsection (2) is presumed to be unreasonable.

<u>(6)</u><s>(5)</s>　It shall be a violation of this section for the licensee to reject or withhold approval of a proposed transfer unless the licensee can prove in any court of competent jurisdiction in defense of any claim brought pursuant to s. 320.697 that, in fact, the rejection or withholding of approval of the proposed transfer was <u>not in violation of or precluded by this section and was</u> reasonable. The determination of whether such rejection or withholding was <u>not in violation of or precluded by this section and was</u> reasonable shall be based on an objective standard. Alleging the permitted statutory grounds by the licensee in the written rejection of the proposed transfer shall not protect the licensee from liability for violating this section.

Section 4.　Subsection (6) of section 320.696, Florida Statutes, is amended to read:

320.696　Warranty responsibility.—

(6)　A licensee shall not recover or attempt to recover, directly or indirectly, any of its costs for compensating a motor vehicle dealer under this section<s>, including by decreasing or eliminating solely in this state or as it relates to any of its dealers, any bonuses or other incentive that the licensee has in effect nationally, regionally, or in a territory by any other designation; by reducing the dealer's gross margin for any of the licensee's products or services where the wholesale price charged to the dealer is determined by the licensee and the reduction is not in effect nationally or regionally; by imposing a separate charge or surcharge to the wholesale price paid by a dealer in this state for any product or service offered to or supplied by a licensee under a franchise agreement with the dealer; or by passing on to the dealer any charge or surcharge of a common entity of the licensee</s>.

Section 5.　<u>If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.</u>

Section 6.　Subsection (10) of section 320.771, Florida Statutes, is amended to read:

**11**

320.771 License required of recreational vehicle dealers.—

(10) EVIDENCE OF TITLE REQUIRED.—

<u>(a)</u> The licensee shall also have in his or her possession for each new recreational vehicle a manufacturer's invoice or statement of origin<s>, and for each used recreational vehicle a properly assigned certificate of title or registration certificate if the used recreational vehicle was previously registered in a nontitle state, from the time the recreational vehicle is delivered to the licensee until it has been disposed of by the licensee</s>.

<u>(b) For each used recreational vehicle in the possession of a licensee and offered for sale by him or her, the licensee either shall have in his or her possession or control a duly assigned certificate of title from the owner in accordance with the provisions of chapter 319, or a registration certificate if the used recreational vehicle was previously registered in a nontitle state, from the time when the vehicle is delivered to the licensee and offered for sale by him or her until it has been disposed of by the licensee, or shall have reasonable indicia of ownership or right of possession, or shall have made proper application for a certificate of title or duplicate certificate of title in accordance with the provisions of chapter 319. A dealer may not sell or offer for sale a vehicle in his or her possession unless the dealer satisfies the requirements of this subsection. Reasonable indicia of ownership shall include a duly assigned certificate of title; in the case of a new vehicle, a manufacturer's certificate of origin issued to or reassigned to the dealer; a consignment contract between the owner and the dealer along with a secure power of attorney from the owner to the dealer authorizing the dealer to apply for a duplicate certificate of title and assign the title on behalf of the owner; a court order awarding title to the vehicle to the dealer; a salvage certificate of title; a photocopy of a duly assigned certificate of title being held by a financial institution as collateral for a business loan of money to the dealer ("floor plan"); a copy of a canceled check or other documentation evidencing that an outstanding lien on a vehicle taken in trade by a licensed dealer has been satisfied and that the certificate of title will be, but has not yet been, received by the dealer; a vehicle purchase order or installment contract for a specific vehicle identifying that vehicle as a trade-in on a replacement vehicle; or a duly executed odometer disclosure statement as required by Title IV of the Motor Vehicle Information and Cost Savings Act of 1972 (Pub. L. No. 92-513, as amended by Pub. L. No. 94-364 and Pub. L. No. 100-561) and by 49 C.F.R. part 580 bearing the signatures of the titled owners of a traded-in vehicle.</u>

Section 7. This act shall take effect upon becoming a law.

Approved by the Governor May 28, 2009.

Filed in Office Secretary of State May 28, 2009.

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.