KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
Morton R. Branzburg (*Pro Hac Vice Admission Pending*)
Brian T. Crowley (BC-2778)
260 South Broad Street, Suite 400
Philadelphia, PA 19102
Telephone: (215) 568-6060

*Attorneys for Manufacturers and Traders Trust Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| GENERAL MOTORS CORP., *et al.*, | Case No. 09-50026 (REG) |
| Debtors. | Jointly Administered |

**MOTION OF MANUFACTURERS AND TRADERS TRUST COMPANY ("M&T BANK") FOR ENTRY OF ORDER (I) GRANTING M&T BANK RELIEF FROM THE AUTOMATIC STAY; OR (II) IN THE ALTERNATIVE GRANTING ADEQUATE PROTECTION OR THE TURNOVER OF CERTAIN PROPERTY**

TO:   THE HONORABLE JUDGE ROBERT E. GERBER,
        UNITED STATES BANKRUPTCY JUDGE:

Manufacturers and Traders Trust Company ("M&T Bank") files this motion (the "Motion") for entry of an order pursuant to sections 105, 361, and 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") granting M&T Bank relief from the automatic stay, or in the alternative granting M&T Bank adequate protection, or as a further alternative the turnover of property by General Motors Corporation and/or certain of its subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") to M&T Bank. In support of the Motion, M&T Bank respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      M&T Bank holds a perfected first priority security interest in and lien upon (the "Security Interest") twenty-seven motor vehicles (the "Vehicles"), more particularly described on **Exhibit A** attached hereto, to secure a indebtedness of Middletown Pontiac, Buick, GMS, LLC, a New York limited liability company ("Middletown Pontiac") to M&T Bank in an amount in excess of $1,767,951.89. The Vehicles were delivered to and are believed to be in the possession of the Debtors. By operation of law, M&T Bank's Security Interest is continuing.[1]

2.      Pursuant to the terms of a Dealer Sales and Service Agreement (the "Dealership Agreement"), the Debtors are obligated to provide "Termination Assistance" to their dealers, in this case Middletown Pontiac. (*See* §15 of the Dealership Agreement). That termination assistance includes the purchase of new and used motor vehicles (*see* §15.2.1 of the Dealership Agreement) in an amount equal to the net prices and charges paid to the Debtors and such payment may be paid to anyone having a security interest in the vehicles (*see* §15.2.3 of the Dealership Agreement). (A true and correct copy of excerpts from the Dealership Agreement are attached hereto as **Exhibit B**). The time period for such payment has expired or will expire in the immediate future and to date, the Debtors have not made payment to M&T Bank for the Vehicles.

3.      M&T Bank requests that this Court lift the automatic stay imposed pursuant to section 362 of the Bankruptcy Code, so M&T Bank may pursue its rights and remedies under applicable state law with respect to the Vehicles. In the alternative, M&T Bank seeks (i) adequate protection for its rights and interests in the Vehicles by way of payment for the same, or (ii) the immediate turnover of the Vehicles, by the Debtors.

---

[1] *See* New York Uniform Commercial Code Sections 9-315 and 9-507.

PHIL1 848478-5

## BACKGROUND

### A. Procedural Background

4. On June 1, 2009 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York.

5. On June 1, 2009, this Court entered an order providing for the joint administration of the Debtors respective chapter 11 cases.

6. On June 3, 2009, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors.

7. The Debtors continue to operate their businesses and manage their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed these cases.

### B. M&T Bank's Relationship to the Debtors

8. Prior to the Petition Date, M&T Bank extended financing to Middletown Pontiac for the acquisition of vehicles, pursuant to the terms of a secure floor plan financing agreement dated August 11, 2004 (the "Floor Plan Agreement"). The financing is further evidenced by *inter alia*, a promissory note dated August 11, 2004, in the principal amount of $5,450,000.00, executed by Middletown Pontiac in favor of M&T Bank (the "Grid Note"). The indebtedness of Middletown Pontiac to M&T Bank under the Grid Note is secured by, *inter alia*, a security interest evidenced by a security agreement dated August 11, 2004 (the "General Security Agreement"), which security interest was perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of New York (the "UCC-1 Financing Statement"). (True and correct copies of the General Security Agreement and the UCC-1 Financing Statement are attached hereto as **Exhibits C** and **D** respectively).

9. Middleton Pontiac used the floor plan financing to purchase the Vehicles.

10.  M&T Bank holds a perfected first priority security interest in and lien upon the Vehicles, which were manufactured by the Debtors, and sold by the Debtors to Middletown Pontiac.

11.  Middletown Pontiac has closed its dealership location in Middletown, New York and returned the Vehicles to the Debtors.

12.  Under the terms of the Dealership Agreement, the Debtors are obligated to provide termination assistance to Middletown Pontiac, including the purchase of the Vehicles, in an amount equal to the net prices and charges paid to the Debtors, and such payment may be paid to anyone having a security interest in the vehicles (*see* §15.2.3 of the Dealership Agreement).

13.  In reliance on the anticipated termination assistance, Middletown Pontiac turned over the Vehicles to the Debtors, who are believed to be in possession of the Vehicles or if the Vehicles have been sold, the proceeds of the Vehicles.

14.  Middletown Pontiac is in default of its obligations to M&T Bank, thereby entitling M&T Bank to take immediate possession of the Vehicles.

## **RELIEF REQUESTED**

15.  In accordance with sections 105, 361, and 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001, M&T Bank seeks an order from this Court lifting the automatic stay to permit M&T Bank to exercise its rights and remedies with respect to the Vehicles under applicable state law. In the alternative, pursuant to section 361 of the Bankruptcy Code, M&T Bank requests adequate protection for its rights and interests in the Vehicles or the immediate turnover of the Vehicles.

## ARGUMENT AND AUTHORITIES

A.   **The Automatic Stay Should Be Lifted Pursuant to 11 U.S.C. § 362(d)**

16.   M&T Bank is entitled to an order granting relief from the automatic stay so that it can exercise its rights to pursue its rights and remedies under applicable state law pursuant to section 362(d) of the Bankruptcy Code.[2]

17.   Here, M&T Bank is entitled to relief from stay (i) for cause, including a lack of adequate protection of its Security Interest in the Vehicles and (ii) because (a) the Debtors have no equity interest in the Vehicles and (b) the Vehicles are not necessary for an effective reorganization.

1.   **The Automatic Stay Should be Lifted for Cause Pursuant to 11 U.S.C. § 362(d)(1)**

18.   M&T Bank is entitled to relief from stay for lack of adequate protection of its Security Interest. The Debtors have not made any postpetition payments to M&T Bank or taken any further steps to prevent the diminution in value of the collateral, which secures M&T Bank's lien. It is believed that the Vehicles remain in the Debtors' possession and are diminishing in value with the passage of time. M&T Bank is entitled to relief from the automatic stay to pursue its rights and remedies under applicable state law, to, *inter alia*, obtain possession of the Vehicles.

2.   **The Automatic Stay Should be Lifted Pursuant to Section 362(d)(2)**

   a.   **The Debtors Lack Equity in the Vehicles**

19.   Based upon information and belief, the Debtors lack any equity in the Vehicles, and accordingly, M&T Bank is entitled to relief from stay under section 362(d)(2) of the Bankruptcy Code.

20.   The relevant test for determining the Debtors' equity in the Vehicles is to compare the aggregate of all claims secured by the Vehicles with the current fair market value of the Vehicles. *In re*

---

[2] Section 362(d) provides, in pertinent part:
(d) On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; (2) with respect to a stay of an act against property under subsection (a) of this section, if— (a) the debtor does not have an equity in such property; and (b) such property is not necessary to an effective reorganization . . . .

*Saint Peter's School*, 16 B.R. 404 (Bankr. S.D.N.Y. 1982); *In re Boca Development Associates*, 21 B.R. 624 (Bankr. S.D.N.Y. 1982).

21. M&T Bank easily satisfies its burden of demonstrating that the Debtor lacks equity in the Vehicles. *In re Kaplan Ash, LLC*, 264 B.R. 309, 321-22 (Bankr. S.D.N.Y. 2001) (noting that under section 362(g)(1), the movant bears the burden of showing the debtor's lack of equity). The term "equity" as used in section 362(d) means the difference between the value of the property and the total amount of the claim it secures. *Kaplan Ash*, 264 B.R. at 322.

22. The outstanding balance owed to M&T Bank by Middletown Pontiac is approximately $1,767,951.89 and would therefore far exceed the current fair market value of the Vehicles, which is believed to be approximately $667,017.84. Accordingly, the Debtors have no equity in the Vehicles.

  **b. The Vehicles are not Necessary for an Effective Reorganization of the Debtors**

23. The Debtors have the burden of establishing that the Vehicles are necessary for an "effective reorganization" of their estates. *See* 11 U.S.C. § 362(g) (the party opposing a motion for relief from stay has the burden of proof with respect to all issues except on the issue of the debtor's equity in property). Indeed, as the Second Circuit has noted,

> [t]o demonstrate "necessity," [the debtor] had to show that "the property is essential for an effective reorganization that is in prospect" and that there is a "reasonable possibility of a successful reorganization within a reasonable time."

*Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 886 (2d Cir. 1996) (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376 (1988)); *see also One Times Square Associates Limited Partnership v. Banque Nationale de Paris (In re One Times Square Associates Limited Partnership)*, 165 B.R. 773, 775 (S.D.N.Y. 1994); *In re Jason Realty, L.P.*, 59 F.3d 423, 430 (3d Cir. 1995) (debtor has burden "to demonstrate that there was 'a reasonable possibility of a successful reorganization within a reasonable time'") (internal citations omitted); *In re de Kleinman*, 156 B.R. 131, 137 (Bankr. S.D.N.Y. 1993); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988). Justice Scalia explained in the *Timbers* case that once

6

the creditor makes a showing of lack of equity in its collateral, the burden shifts to the debtor to show that the collateral is necessary for an effective reorganization. For a debtor to meet this burden, it must prove that that the property is essential for an effective reorganization and that there is "a reasonable possibility of a successful reorganization within a reasonable time period." 484 U.S. at 376 (quoting decision of the Fifth Circuit in *Timbers* at 808 F.2d 363, 370-71 and footnote 12-13).

24. The Debtors cannot meet their burden of proof on this issue. The Vehicles represent models which the Debtors likely hold in excess capacity due to the recent closure of its various dealerships. If the Vehicles remain in the Debtors' possession the Debtors will only be forced to sell the Vehicles at a greatly reduced price, for which M&T Bank will have a lien on any proceeds received by the Debtors.

25. As such, M&T Bank respectfully submits that the Debtors cannot satisfy their burden of demonstrating that the Vehicles are necessary to its reorganization. Accordingly, M&T Bank is also entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code.

**B.   Alternatively, the Debtors Must Provide M&T Bank with Adequate Protection Under Section 361 or the Turnover of the Vehicles**

26. In the event this Court does not lift the stay to allow M&T Bank to exercise its rights and remedies under applicable state law, M&T Bank, at a minimum, is entitled to adequate protection of its Security Interest. As noted, however, the Debtors have not provided M&T Bank with adequate protection for its Security Interest.

27. Absent such adequate protection, M&T Bank will be exposed to the risk created by the continued decline in the value of the Vehicles. Therefore, this Court should order the Debtors to provide M&T Bank with adequate protection of its Security Interest in the Vehicles by payment in accordance with section 361 of the Bankruptcy Code.

28. Section 361 of the Bankruptcy Code provides alternative mechanisms through which the value of M&T Bank's interest in the Vehicles may be adequately protected, including cash payments,

7

additional or replacement liens, or realization of the indubitable equivalent of the secured party's interest in property. 11 U.S.C. 361.

29. "Adequate protection compensates the secured creditor for the diminution in value of the collateral during the period in which the automatic stay prevents the creditor from repossessing the collateral." *Bluebird Partners, L.P. v. First Fid. Bank*, 896 F. Supp. 152, 154 (S.D.N.Y. 1995). *See In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Adequate protection is a question of fact and may be determined on a case-by-case basis. *See In re Realty Southwest Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985).

30. M&T Bank is entitled to adequate protection to compensate it for any depreciation, deterioration or diminution in the value of the Vehicles as they existed on the date the petition in bankruptcy was filed. *See Travelers Life Insurance and Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.)*, 98 B.R. 170, 173 (S.D.N.Y. 1989); Adequate protection therefore maintains the status quo for a creditor during the ongoing chapter 11 cases. *In re 354 East 66th Street Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995)

31. To protect the Security Interest in the Vehicles in the event the stay is not lifted, M&T Bank respectfully requests that this Court order the Debtors to provide adequate protection to M&T Bank by means of cash payment.

32. Finally, if this Court should also deny M&T Bank's request for adequate protection, M&T Bank respectfully requests that this Court order the Debtors to immediately turnover the Vehicles to M&T Bank.

## **CERTIFICATION**

33. Pursuant to this Court's Case Management Order, counsel for M&T Bank has attempted to communicate telephonically and by written correspondence with counsel for the Debtors. On June 16, 2009, counsel for M&T Bank called the New York office of Weil, Gotshal & Manges LLP, where counsel for M&T Bank was directed to the number for the Debtors' Noticing and Claims Agent. Counsel

for M&T Bank subsequently spoke to a representative of the claims agent and left a detailed message requesting that Debtors' counsel respond to M&T Bank's calls. On June 16, 2009, counsel for M&T Bank made additional efforts to reach Debtors counsel telephonically and left a message with an attorney purportedly assigned to the Debtors' case. Additionally, counsel for M&T Bank sent a letter to Debtors counsel on June 12, 2009. To date, counsel for M&T Bank has not received any response to its communications.

## NOTICE

34. Copies of the Motion and the supporting documents are being sent by facsimile, and/or hand, e-mail, Electronic Case Filing System, or overnight courier by June 22, 2009, upon: (i) the Office of the United States Trustee; (ii) all parties that have entered a notice of appearance; (iii) the counsel to the Official Committee of Unsecured Creditors; (iv) counsel to the Debtors; and (v) the twenty largest creditors as provided by the Debtors.

35. No previous request for the relief sought herein has been made by M&T Bank to this or any other Court.

## CONCLUSION

WHEREFORE, M&T Bank respectfully requests that this Court enter an order granting the relief requested herein and providing such further relief as this Court deems just and proper.

Dated: Philadelphia, Pennsylvania
June 19, 2009

                        KLEHR, HARRISON, HARVEY,
                        BRANZBURG & ELLERS LLP

                        By: _/s/Brian T. Crowley_
                            Morton R. Branzburg (*Pro Hac Vice Admission Pending*)
                            Brian T. Crowley (BC-2778)
                            260 South Broad Street, Suite 400
                            Philadelphia, PA 19102
                            Telephone: (215) 568-6060
                            Attorneys for Manufacturers and Traders Trust Company