UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____x
:       Chapter 11 Case No.
In re                                      :       09-50026 (REG)
GENERAL MOTORS CORP., ET AL.,              :       (Jointly Administered)
         Debtors                           :
_____x

**OBJECTION TO THE RELIEF REQUESTED AT SALE HEARING**

**TO SELL SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO**

**MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION**

**HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER**

To:        The Judge of this honorable court.

Jack M. Wilhelm, an equity owner in the Debtors, files his objection to the sale of substantially all of Debtors' assets pursuant to a Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury –Sponsored Purchaser, and, in support of his opposition states and avers as follows:

**Standing**

1. Jack M. Wilhelm is an owner of equity shares in the Debtor and acquired these shares several years ago, well before the bankruptcy of Debtors was contemplated;

**Summary of Opposition**

2. The equity owners of Debtors have not been afforded an adequate opportunity to participate in the formulation of the Debtors' proposal. The chairman of the board of Debtors was not selected by the shareholders, but rather selected by the United States government, the very entity to whom all of the Debtors' assets will be sold, pursuant to a private sale, without the benefit of adequate judicial review to determine the true value of the assets being conveyed. The proposed purchaser, the U.S. Government, is the very entity that selected the Debtors' management that is proposing this sale. A very real opportunity exists that this transaction is, in fact, self-dealing, and should, at the very least, be the subject of a thorough, objective review by this Court.

**Argument**

3. General Motors and its subsidiaries, one of the largest industrial giants in the world, has sought bankruptcy relief. Prior to seeking this relief, the United States Government invested billions of dollars in the Debtors in an unsuccessful attempt to afford the Debtors the ability to avoid the very bankruptcy protection for which they have applied. Also, prior to the filing of this bankruptcy proceeding, the chairman of the board and chief executive officer of Debtors that was elected by the equity holders was replaced by the United States Government, all without prior consultation or concurrence of the equity owners. There appears to be a very real possibility that the Government will never recover its investment in the Debtors. The management selected by the

U.S. Government has now proposed to convey *all* of the assets of the bankrupt to the U.S. Government, the very entity that placed the current management in power and into a position to make, what this equity owner believes, this poor proposal that is destined to hurt creditors and debtors, alike. And the far reaching dangerous long term effects on the United States economy, if this proposal is accepted (and even worse, perceived to be "rubber stamped"), may be too horrendous to contemplate.

4. It strains the imagination that this Court, or any entity for that matter, can, in less than thirty (30) days, prepare to decide the proper course for the disposition of the assets of one of the world's largest corporations. And without an adequate review, this Court runs the real risk of being perceived, and by association the entire United States judicial system being perceived, as a political tool of the Executive and Legislative branches of the United States government. Such a perception, whether accurate or not, stands to damage the United States economy and its citizens in a manner so horrendous that the damage cannot be adequately estimated.

5. The proposal contemplates that the assets of the Debtors will be sold by means of a private sale to the United States government, an entity that has invested billions of dollars in the Debtor within the last twelve (12) months and who personally selected the Debtor' management. The option of exploring the existence of *other* purchasers who are able to pay greater compensation for some, or all, of the Debtors' assets is being ignored.

6. At the very least, before the Debtors' proposal is considered, the following actions should be taken:
    a. The Debtors should be required to seek private bids, pursuant to a public auction, to purchase some or all of the Debtors' assets to assure that this private sale is, indeed, a market value sale;
    b. The Court should consult independent economic experts to determine whether the proposed sale is in the best interests of the Debtors' creditors and equity holders, as opposed to other alternatives that may be better (such as asset sales to private entities, managing the Debtors in a bankruptcy proceeding by a court appointed trustee, and the rejection of executory contracts);
    c. The Court should consider the best interests of the Debtors' creditors and equity holders consistent to existing federal bankruptcy law. No creditor, equity holder, employee group, pension fund, Government entity, or other special interest should be afforded an unusual preference or security in the acquisition of the Debtors' assets or the retirement of its credits. Existing bankruptcy law provides that secured creditors are compensated prior to unsecured creditors; that unsecured creditors are compensated prior to equity owners; and that onerous executory contracts may be rejected by the Debtors. These well established bankruptcy laws should not be disrupted, irrespective of who seeks the disruption; and
    d. The Court should ignore testimony that the conduct of the Debtors' bankruptcy proceedings in a manner consistent with all other bankruptcy proceedings will somehow be detrimental to the "overall public good." These "pundits" cannot predict the future; they have proven they cannot because these very "pundits" failed to predict the bankruptcy of Debtors and failed to predict that the billions of dollars invested in the Debtors by the Government within the past year would all be "for naught."

7. The sales proposal being reviewed by the Court is not one presented by the Debtors' equity owners. It is a proposal being presented by Debtors' management, and this is not a management selected by the equity owners. Rather, it is a management selected by the U.S. Government, the entity that will be acquiring the Debtors' assets at a private sale. Facially, the purchaser and the management of the Debtors are one and the same. Facially, it appears to be blatant self-dealing. Importantly, the equity owners have *never voted on the proposed sale and have never voted for the management that is proposing this sale.*

8. Jack Wilhelm encourages the Court to ignore arguments that the failure of Debtors will lead to the collapse of the United States economy. This is wild speculation. However, if speculation is to be considered by the Court, then the Court should consider the likelihood that a sale to the Government under circumstances inconsistent with the bankruptcy code will have real detrimental impact on the U.S. economy. Investors invest in U.S. businesses believing that their investments, whether made in Debtors, a "high-tech" company, an oil company, or whatever, will be afforded

the full protection of the laws of the United States. These laws include the protection of private property rights and the protections afforded to creditors and equity owners pursuant to the bankruptcy code. When, for public policy purposes or any other purpose, the judicial system ignores the laws of the land, investment in the United States becomes no more safe and no more judicious than an investment in a completely undeveloped and lawless country. The long term effects of such actions are unimaginatively horrendous. Investors simply will not invest if they perceive that their investments will be subject to the whims of the executive or legislative branches of the Government. The returns are better in undeveloped African and South American countries than in a lawless United States. Better to invest in a lawless country where the returns are high as opposed to a lawless country where the returns are low.

9. This equity owner of the Debtors, who has been ignored in the formulation of this plan, and, in a very real sense, all of the citizenry of the United States, are relying upon an impartial judicial proceeding that is thoughtfully and thoroughly undertaken, and a ruling by this honorable Court that is consistent with existing laws. There can be no special rules for special people.

10. This equity owner urges that the "pre-packaged" agreement reached without the consultation of the equity owners of Debtors should be rejected. The Court is urged to strictly enforce the bankruptcy laws and avoid giving any creditor, equity owner, or other special interest, a special place in the claims process, either outright or by a private sale to a select group of special interests.

WHEREFORE, for the reasons stated above, this equity owner voices his opposition to the subject sale.

Respectfully submitted,

*[signature]*

Jack M. Wilhelm
1201 Rio Grande, Suite 100
Austin, TX 78701
(512) 236-8400 (phone)
(512) 236-8404 (fax)
*pro se*

### Certificate of Service

I certify that a copy of the foregoing has been sent, by first class mail, postage prepaid, to the service list in this proceeding on this 16th day of June, 2009.

*[signature]*
Jack M. Wilhelm