Hearing Date and Time: June 30, 2009 at 9:45 a.m.
Objection Deadline: June 22, 2009 at 5:00 p.m.

Elihu Inselbuch, Esq.
Rita C. Tobin, Esq.
CAPLIN & DRYSDALE CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
(212) 319-7125

Peter Van N. Lockwood, Esq.
Ronald E. Reinsel, Esq. (*Admitted Pro Hac Vice*)
CAPLIN & DRYSDALE CHARTERED
1 Thomas Circle
Washington, D.C. 20005
(202) 862-5000

*Attorneys for Mark Buttita, personal representative of Salvatore Buttita*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| GENERAL MOTORS CORP., *et al.*, | Chapter 11<br>Case No. 09-50026-REG<br>(Jointly Administered) |
| Debtor. | |

**JOINDER AND FURTHER OBJECTION OF MARK BUTTITA TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§105, 363(b), (f), (k), AND (m), AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006, TO (I) APPROVE (A) THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY – SPONSORED PURCHASER, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) <u>OTHER RELIEF SALE APPROVAL HEARING</u>**

TO THE HONORABLE ROBERT E. GERBER, UNITED STATES BANKRUPTCY JUDGE:

MARK BUTTITA, in his capacity as the personal representative of Salvatore Buttita, and a member of the Official Unsecured Creditors Committee appointed in these cases, by and through his undersigned attorneys, hereby joins in the Objection of the Ad Hoc Committee of Asbestos Personal Injury Claimants (the "Ad Hoc Committee Objection") to Debtors' Motion to Approve the Sale Pursuant to Master Sale and Purchase Agreement of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests (the "Sale Motion") and additionally objects to the Sale Motion.

In support of this Objection Buttita represents as follows:

**FACTUAL BACKGROUND:**

1.  Mark Buttita is the son of Salvatore "Sam" Buttita ("Sam Buttita"), an automobile mechanic who died in 2008 as a result of the asbestos induced disease Mesothelioma. After service in the United States Navy during World War II, during which he served as Aviation Machinist Mate working as an aircraft mechanic, Sam Buttita went to work as an automobile mechanic. In 1949, he opened his own business doing radiator and auto repairs. In 1956, his business shifted to primarily auto repairs which continued until the late 1980's. His trade required that he worked with and around General Motors' products including asbestos containing brakes, clutch head gaskets, valve gaskets, transmission parts and other asbestos containing automobile or truck parts and equipment.

2.  On July 1, 2008, Sam Buttita had a chest x-ray taken that revealed a fluid build up in his lungs. A biopsy was taken and he was diagnosed with Mesothelioma, an

invariably fatal disease caused exclusively by exposure to asbestos. He died on August 30, 2008. Sam Buttita is survived by his wife Phyliss and their seven children, including Mark Buttita who was appointed as his personal representative. Their lawsuit for wrongful death and survival is pending against General Motors Corporation ("GM") in the Circuit Court of Cook County, Illinois which seeks estimated damages of at least $1,000,000.

3. On June 1, 2009, GM and certain of its subsidiaries (collectively, the "Debtors") filed the above-captioned, jointly administered Chapter 11 cases. On the same date, the Debtors filed the instant Sale Motion. The Debtors agreed to extend until June 22, 2009, the time for Buttita to file any objection to the Sale Motion.

4. On June 3, 2009, Mark Buttita, in his capacity as the personal representative of Sam Buttita, was appointed by the United States Trustee to serve on the Official Committee of Unsecured Creditors (the "Official Creditors Committee") in these cases. In that capacity, Buttita is a representative of the interests of all asbestos victims of GM, and acts as a fiduciary for all unsecured creditors in these cases.

5. Asbestos, as contained in various products marketed and sold by the Debtors, is an insidious and deadly health risk resulting in pneumo-pulmonary impairments, a variety of cancers and, in its most virulent form, invariably fatal Mesothelioma. There is an extremely long, multi-decade, latency period between initial exposure to asbestos and the manifestation of asbestos-related diseases. As a result, many, if not most, individuals exposed to GM's asbestos-containing products will not manifest their diseases for many years to come.

6.  As a result of its production, manufacturing, and sales of numerous asbestos-containing products, GM has been, and remains, a significant defendant in asbestos personal injury litigation. Based upon its most recent Form 10-K Disclosure, GM estimated its potential exposure for present and future asbestos-related claims as $648 million over the next ten years.[1] *See* General Motors Corp. Form 10-K filed March 5, 2009 at pp. 206-07.

7.  In the Sale Motion, the Debtors propose to approve the sale (the "Sale") of substantially all of their assets to Vehicle Acquisition Holdings LLC ("New GM"), an entity sponsored by the United States Treasury, established for the purpose of acquiring the on-going GM enterprise. The terms of the Sale are set forth in the Master Sale and Purchase Agreement (the "MPA"), dated as of June 1, 2009, by and among Old GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as sellers (the "Sellers") and New GM, as purchaser.

8.  Under the terms of the MPA, New GM is to acquire all properties, assets and rights of Old GM, with the exception of a limited number of excluded assets (respectively, the "Purchased Assets" and the "Excluded Assets"). The Purchased Assets expressly include all insurance policies of Old GM, with the exception of certain excluded policies that have yet to be identified. In addition, the existing management and employees of GM will become the management and employees of New GM which will continue to manufacture the same automobile product lines (less only certain "discontinued brands" which will, nonetheless, apparently be part of the Purchased

---

[1] Because of the long latency period for asbestos-related diseases, which may not be manifested for up to forty years, upon information and belief, this estimate is exceedingly understated.

Assets) and to market them to the public, through essentially the same dealer network (less only those dealers that it has unilaterally chosen to shed) and will continue to produce and sell them under the very same General Motors banner and brand names. In short, the proposed Sale is not merely a sale of the Debtors' principal assets, but rather is a complete transfer of the Debtors' entire on-going business enterprise which will continue in substantially the same form.

9.   Pursuant to the proposed Sale, New GM will selectively assume certain of the Debtors' existing and prospective future liabilities (the "Assumed Liabilities"), including liabilities for <u>product warranties</u> on new and used vehicles manufactured or sold by Old GM or New GM either <u>prior to or after</u> closing and new and re-manufactured parts and equipment manufactured or sold by Old GM or New GM. However, it will assume only <u>product liability claims</u> with respect to products delivered <u>at or after</u> the closing. Indeed, most liabilities will remain with Old GM (the "Retained Liabilities"), including specifically: (i) all product liability claims arising out of products delivered <u>prior</u> to the closing; (ii) all liabilities to third parties for death, personal injury, other injury to persons or damage to property, arising out of asbestos exposure; (iii) all liabilities to third parties for claims based upon contract, tort or any other basis; and (iv) all liabilities related to any implied warranty or other implied obligation under law without necessity of an express warranty or allegation, statement or writing by or attributable to Old GM.

10.   In their memorandum of law in support of the Sale Motion (the "<u>Memorandum in Support</u>"), the Debtors request that the bankruptcy court authorize the Sale free and

clear of all "liens, <u>claims</u>, encumbrances and other interests," including, specifically, "all successor liability claims." Memorandum in Support p. 21-22 (emphasis added). In addition, the Debtors have submitted a proposed order with respect to the Sale Motion (the "<u>Proposed Sale Order</u>") that contains several provisions directed at cutting off New GM's prospective successor liability under applicable state laws, including an explicit finding – and an order to similar effect – that the Debtors "may sell the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied". Proposed Sale Order ¶ V, 7.

11. Despite the reality of the transaction, the Proposed Sale Order additionally provides that New GM:

> shall not be deemed . . . to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchase Agreements from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

Proposed Sale Order ¶ 27.

12. Further, the Proposed Sale Order also putatively seeks to enjoin the assertion of asbestos and other not yet existing claims with respect to New GM:

> ...all persons and entities ...holding liens, claims, encumbrances and other interests of any kind or nature whatsoever, <u>including rights or claims based on successor</u>

6

or transferee liability, against of in a Seller or the Purchased Assets... are forever barred, estopped and permanently enjoined from asserting against the Purchaser, its successor or assigns, its property, or the Purchased Assets, such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

Proposed Sale Order ¶ 8 (emphasis added).

**BASIS OF OBJECTION**

Buttita joins in and adopts the objections and arguments contained in the Ad Hoc Committee Objection as though fully set forth herein.

In addition, Buttita additionally objects to the Sale Motion on the grounds that the proposed Sale, violates Section 363 to the extent that it seeks to affect the rights of present asbestos claimants and future asbestos demand holders, because it exceeds the permissible scope of Section 363 and additionally provides for an illegal injunction against future successor liability, including with respect to prospective claims which will arise only after the proposed Sale closes.

Particularly, with respect to presently unmanifested, unknown and unasserted injuries, which do not yet constitute "claims" within the meaning of the Bankruptcy Code, as well as presently asserted asbestos claims which do not constitute "interests" in the property which is the subject of the proposed Sale, the proposed injunction in favor of the Purchaser exceeds the authority granted to this court under the Bankruptcy Code.

Pursuant to Section 363(f) of the Bankruptcy Code, after notice and hearing, a debtor may be authorized to sell, other than in the ordinary course of

business, property of the state, "free and clear of <u>any interest in such property</u> of an entity other than the estate" if any one of the following five conditions is met:

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2) such entity consents;

    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4) such interest is in *bona fide* dispute; or

    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

As set forth in detail in the Ad Hoc Committee Objection, the asbestos-related personal injury claims of current asbestos claimants are not "interests in such property" that is the subject of the proposed Sale Motion. Accordingly, the proposed Sale can not isolate the Purchaser from prospective liability under applicable state law resulting from a finding that it has acquired the status of a successor to the Debtor.

Indeed, given that the contemplated transaction would constitute a transfer of essentially the entire on-going enterprise of the Debtors, without the benefit of the substantive and procedural safeguards of a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code, a finding that "New GM" will have acquired that status is particularly likely under the successor liability laws of the various states.[2]

---

[2] The substantive rules governing a finding of successor liability are complex and vary from state to state. *See generally* George W. Kuney, *A Taxonomy and Evaluation of Successor Liability*, 6 Fla. St. U. Bus. L. Rev. 9 (2007) (surveying

8

The Debtors improperly attempt to shield "New GM" from such liability by requesting that the Sale Order include various express findings and an explicit order expressly enjoining all persons (including "litigation claimants") holding "liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability" from asserting such liens, claims, encumbrances and other interests against New GM or the Purchased Assets.

However, even to the extent that "claims" may be read into the scope of § 363, the Court's power to sell free and clear is limited by its authority to affect claims and its equitable power to sell free and clear must be interpreted consistent with its power to discharge claims under a plan of reorganization which, pursuant to § 1141, is limited to claims arising <u>before</u> the confirmation of the plan. *In re White Motor Credit Corp.* 75 B.R. 944, 948-49 (Bankr. N.D. OH. 1987).

---

successor liability law in every U.S. jurisdiction); David W. Pollak, *Successor Liability in Asset Acquisitions*, 1742 PLI/Corp 133 (2008) (same).

  The commonly recognized grounds for such a finding against asset purchasers are (i) express or implied assumption of liability, (ii) continuation of the seller's business, (iii) in some jurisdictions, continuation of the seller's product line, (iv) *de facto* merger, and (v) fraud. *See* Kuney, *supra*, at 16-17; Pollak, *supra*, at 141-45; Restatement (Third) of Torts: Products Liability § 12 & cmt. a (1998). Many courts have adopted more expansive approaches of successor liability, often referring to the purchaser's continuation of the seller's business or product line, but sometimes invoking one of the other labels set forth above while taking a flexible approach. While the precise articulation of the law will vary by state, the transfer of substantially all of Old GM's assets to New GM and the many continuities between Old GM and New GM creates a substantial risk of successor liability.

While the definition of a "claim" under Bankruptcy Code § 101(5) is necessarily broad, it is not unlimited.[3] Despite the broad definition, a "claim" exists only if, *prior to the bankruptcy*, "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation – 'a right to payment' – under the relevant non-bankruptcy law." *LTV Steel Corp. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995) (citing *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992)) (emphasis added). A right to payment that occurs in the future based upon conduct that occurred prior to the petition date, such as the manufacture or sale of a product, is generally not found to be a claim. *See, e.g., Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prod. Corp.)*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) (future obligations do not become claims until all elements necessary to give rise to a legal obligation are present).[4]

Personal injury resulting from latent defects in GM products may not occur, and thus no "claim" for bankruptcy purposes may arise with respect to such product-related torts, until long after "Old GM" has confirmed a plan (or more likely liquidated what

---

[3] Section 101(5) defines a "claim" in pertinent part as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

[4] *See also, e.g., DuVoisin v. Anderson (In re Southern Industrial Banking Corp.)*, 66 B.R. 349 (Bankr. E.D. Tenn. 1986) (the prospective right to file a claim is not a contingent claim); *Rochez Bros. Inc. v. Sears Ecological App. Co. (In re Rochez Bros., Inc.)*, 326 B.R. 579 (Bankr. W.D. Pa. 2005) (claim does not accrue until property is actually recovered); *Grady v. A.H. Robins Co. (In re A.H. Robins Co.)*, 839 F.2d 198, 203 (4th Cir. 1988) (Dalkon Shield); *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 141 B.R. 552, 556 (Bankr.S.D.N.Y.1992), vacated on other grounds, 157 B.R. 220 (S.D.N.Y.1993) (asbestos), *In re Johns-Manville Corp.*, 36 B.R. 743, 750 (Bankr.S.D.N.Y.1984) (asbestos); *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft)*, 58 F.3d 1573, 1577 (11th Cir. 1995) (products liability).

remains of its estate) in these cases. Similarly, due to the long latency period for asbestos-related diseases, many, if not most, of the victims who have been exposed to asbestos as a result of GM's products or in its facilities prior to the commencement of these cases, will not manifest their resulting asbestos-related disease until years after these cases are fully administered and they thus do not yet have a "claim" that may be discharged, treated or otherwise dealt with in these cases.

Indeed, in crafting Bankruptcy Code § 524(g) to deal with the unique circumstances presented by the delayed manifestation of asbestos-related diseases, Congress defined the term "demand" to refer to such future arising asbestos injuries which it expressly recognized did not yet constitute a "claim" during the bankruptcy proceedings. *See* 11 U.S.C § 524(g)(5).[5]

It is the Debtors' stated intention that "[a]fter consummation of the 363 Transaction, the Debtors intend to propose a plan of liquidation."[6] Because a

---

[5] To the extent that New GM wishes to be permanently isolated from prospective future asbestos liability, 11 U.S.C. § 524(g) provides the exclusive means to obtain the requested injunctive relief. Old GM may not seek a backdoor extension of that authority by appeal to this court's general equitable powers under Section 105 of the Code. *See Combustion Engineering, Inc.*, 391 F.3d 190, 237, n. 50 (3rd Cir. 2005)(§ 105 can not be used to achieve a result not contemplated by the more specific provisions of § 524(g) which Congress established as the sole means for channeling of asbestos liability and providing injunctive relief from such liability for non-debtors). If and to the extent that the Debtors and the Purchaser do not wish to avail themselves of the requirements and procedures dictated by § 524(g) then they can not obtain its benefits through other means.

[6] *See* Debtors' Omnibus Response to the Motions of the (I) Ad Hoc Committee of Tort Victims; and (II) Ad Hoc Committee of Asbestos Claimants Seeking Appointment of Additional Committees of Unsecured Claimants and the Appointment of a Futures Representative, dated June 19, 2009 (Dkt. 1915)(citing *Locks v. United States Trustee*, 157 B.R. 89 (W.D.Pa. 1993) for the proposition that a liquidating chapter 11 plan provides only for the treatment of existing pre-petition claims).

liquidating plan can only provide for the treatment of presently existing claims and can not result in the discharge as to Old GM of not yet manifested future claims, the overly-broad injunctive relief and the requested findings and order against prospective successor liability as to New GM improperly exceeds even the scope relief that the Debtors could obtain in these cases and is specifically intended to leave the future claimants without any viable source for recovery.

Further, attempting to permanently bar such future asbestos demands, or other persons who in the future may incur product related injuries which have not yet occurred, from seeking recoveries against "New GM" as a successor to the Debtors violates basic notions of adequacy of notice and due process. It is simply not sufficient to rely on purported broad publication notice to cure such lack of due process where neither the injury nor the injured party yet exist. No matter how broad such present notice may be, it can not be effective as to not yet existent claimants who only in the future will hold cognizable claims.

For all of the foregoing reasons, as well as for the reasons set forth in the Ad Hoc Committee Objection, Buttita respectfully requests that the Sale Motion be denied.

CAPLIN & DRYSDALE, CHARTERED

By: _____
Elihu Inselbuch (EI-2843)

Counsel for Mark Buttita
375 Park Avenue, 35th Floor
New York, NY 10152-3500
(212) 319-7125
ei@capdale.com

Dated: June 22, 2009