Hearing Date: June 30, 2009 at 9:45 a.m. (Eastern Time)
Objections Due: June 22, 2009 at 5:00 p.m. (Eastern Time)

Roger Frankel
Richard H. Wyron
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

    - and -

Lorraine S. McGowen
Alyssa D. Englund
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Counsel to the Unofficial GM Dealers Committee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                            :     Chapter 11
                                                  :
**GENERAL MOTORS CORP.,** *et al.*,               :     Case No. 09-50026 (REG)
                                                  :
                Debtors.               :     Jointly Administered
------------------------------------------------------------ x

### RESERVATION OF RIGHTS OF THE UNOFFICIAL GM DEALERS COMMITTEE AND LIMITED OBJECTION TO THE FORM OF THE DEBTORS' PROPOSED 363 SALE ORDER

The Unofficial GM Dealers Committee (the "**Dealer Committee**"),[1] whose members are creditors and parties-in-interest herein, by and through their undersigned attorneys, hereby files

---

[1] The Unofficial GM Dealers Committee was formed prior to the Petition Date by the GM National Dealer Council (the "**NDC**") in coordination with the National Automobile Dealers Association ("**NADA**"). The NDC's dealer members, consisting of 15 GM dealers elected by all GM dealers, serve as liaisons with GM on virtually all matters pertaining to the sale and servicing of GM vehicles and represent the interests of GM dealers throughout the United

OHS East:160574651.4

this reservation of rights and limited objection to the above-captioned debtors' (the "**Debtors**") proposed Order (I) Authorizing Sale of Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief (the "**Proposed Sale Order**"),[2] and in support thereof states as follows:

1. The Dealer Committee does not object to the proposed 363 Transaction. The Dealer Committee does, however, have limited objections to the form of the Proposed Sale Order, and reserves its rights with respect to the form of that order submitted to the Court for entry.

2. First, although the Sale Procedures Order (and its exhibits) entered by this Court on June 2, 2009, sets out detailed procedures for notifying the holders of executory contracts whether their contacts are to be assumed and assigned, this procedure has not been followed with respect to the dealer agreements. The Debtors apparently intend that their process of having each dealer execute an agreement modifying its Dealer Sales and Service Agreement (such modification agreements are generally referred to in the MPA as Participation Agreements or Deferred Termination Agreements) would supplant the specific assumption and assignment procedures established in the Sale Procedures Order. Thus, although the Debtors reserved their rights in the various Participation and Deferred Termination Agreements with dealers to assume

---

States. The NDC formed the Dealer Committee, and retained counsel, to act as a voice for the dealer body's collective interests in connection with GM's restructuring efforts. The members of the Dealer Committee collectively sell and service vehicles under GM brands in locations all over the country. The Dealer Committee is co-chaired by Dudley Martin Chevrolet (whose principal is the NADA representative to the NDC) and Paddock Chevrolet, Inc. (whose principal is the Chair of the NDC). NADA serves as an *ex officio* member of the Dealer Committee.

[2] All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Debtors' 363 Motion and the Proposed Sale Order.

those agreements, and other agreements with dealers, and to assign such agreements to the Purchaser, the Debtors have not confirmed to each dealer precisely which agreements with that dealer the Debtors are assuming and assigning.[3] This issue may be even more troublesome because the Debtors and the Purchaser have reserved their rights to modify, for up to thirty days following closing, the list of contacts, including dealer agreements, which the Debtors intend to assume and assign. In other words, for up to thirty days after closing, the Debtors can put contracts on, and can take contacts off, "the list" at any time, at will, without Bankruptcy Court review or an opportunity for the affected counter-party to be heard.[4]

3. It is critical for dealers to know whether the Debtors intend to assume all of their agreements. A dealer's sales and service agreement is not simply one of many agreements to which a dealer is a party – it is a dealer's lifeblood, since without that agreement, a dealer can no longer function as a GM dealer. And, as described in footnote 3, there are a number of important related agreements to which one or more of the Debtors and a dealer may be a party. As a matter of simple fairness, the Debtors (a) should be required to notify each dealer precisely which of its agreements are being assumed, (b) fix the list of assumed contacts as of the time of the Sale Hearing, and (c) while they may be permitted to add to the list, should not be permitted to strike (or to consent to the Purchaser striking) a dealer from the list of assumed contracts after the Sale Hearing.

---

[3] The MPA defines "Continuing Brand Dealer Agreement" and "Discontinued Brand Dealer Agreement" as the relevant dealer sales and service agreement and all other agreements with the relevant dealer "that are related to the dealership operations of such dealer." (*See* MPA, definitions section at pages 4 & 5.) It is unclear if these definitions, which form the foundation of the definition of agreements to be assumed, include all agreements between a relevant dealer and the Debtors, including agreements the Debtors variously refer to as "Channel Agreements," "Termination Agreements," "Performance Agreements," "Target Market Agreements," and the like.

[4] The Debtors have indicated that they did not intend for the thirty day "kickout" provision to apply to dealer agreements. But the MPA provides, in section 6.6(a), that the Purchaser may not delete a dealer agreement from the

4.     Second, the Dealer Committee further objects to the Proposed Sale Order to the extent that language in that order would have the effect of eliminating rights of non-Debtor parties (including dealers) to Assumable Executory Contracts to pursue claims against the Purchaser based upon Assumed Liabilities.  For example, Paragraph 23 of the Proposed Sale Order provides, in relevant part, "Each non-Debtor party to an Assumable Executory Contract is forever barred, estopped, and permanently enjoined from (a) asserting . . . against the Purchaser, any counterclaim, defense, setoff, or other Claim asserted or assertable against the Sellers . . . ."  The Proposed Sale Order should be clarified so as to preserve unambiguously the rights of counterparties to assumed executory contracts with respect to Assumed Liabilities.[5]

5.     Third, the Proposed Sale Order provides, in a number of places, that the Purchaser shall have no successor or transferee liability.  (*See, e.g.*, proposed findings paragraphs T-V and X and decretal paragraphs 7-10, 20 and 27-28 of the Proposed Sale Order.)  In addition, the Proposed Sale Order provides for a blanket preemption of all state law.  (*See, e.g.*, decretal paragraphs 15 and 39 of the Proposed Sale Order.)  The Dealer Committee objects to the extent the proposed findings and decretal paragraphs provide for relief beyond that necessary and permitted under sections 363 and 365 of the Bankruptcy Code.

6.     The Dealer Committee understands that a number of objections are being filed with respect to the proposed 363 Transaction and the Proposed Sale Order, and anticipates that the Debtors will present to the Court a modified Sale Order.  The Dealer Committee hereby

---

list "unless Sellers have consented to such removal in writing (***such consent not to be unreasonably withheld, conditioned or delayed***)."  (Emphasis added.)  The Proposed Sale Order should be modified to clarify this point.

[5] The Dealer Committee suggests that the Proposed Sale Order include language providing that, notwithstanding any other provision thereof, nothing in the Order affects or limits any non-Debtor party's right to assert against the Purchaser any and all claims with respect to any Assumed Liability.

4

reserves its right to object to any modifications to the Proposed Sale Order (other than those set out above) and to the form of any proposed sale order presented to the Court.

WHEREFORE, for these reasons, the Dealer Committee respectfully reserves its rights and requests that this Court modify the Proposed Sale Order as set forth herein, and grant such other and further relief as the Court deems just and proper.

Dated: June 22, 2009
      New York, New York         **ORRICK, HERRINGTON & SUTCLIFFE LLP**

By:    */s/ Alyssa D. Englund*
      Roger Frankel
      Richard H. Wyron
      Orrick, Herrington & Sutcliffe LLP
      Columbia Center
      1152 15th Street, N.W.
      Washington, D.C. 20005-1706
      Telephone: (202) 339-8400
      Facsimile: (202) 339-8500

- and -

Lorraine S. McGowen
Alyssa D. Englund
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Counsel to the Unofficial GM Dealer Committee*

5