**Steve Jakubowski**
**Elizabeth Richert**
**THE COLEMAN LAW FIRM**
**77 West Wacker Dr., Suite 4800**
**Chicago, Illinois 60601**
**Telephone: (312) 606-8641**
**Facsimile: (312) 444-1028**
sjakubowski@colemanlawfirm.com

**Attorneys for Callan Campbell, Kevin Junso,** *et al.,*
**Edwin Agosto, Kevin Chadwick,** *et al.,* **and Joseph Berlingieri**

**Adina H. Rosenbaum**
**Allison M. Zieve**
**PUBLIC CITIZEN LITIGATION GROUP**
**1600 20th Street NW**
**Washington, DC 20009**
**Telephone: (202) 588-1000**
arosenbaum@citizen.org

**Attorneys for Center for Auto Safety, Consumer Action,**
**Consumers for Auto Reliability and Safety, National Association of**
**Consumer Advocates, and Public Citizen**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11 Case No.
                                                :
GENERAL MOTORS CORP., et al.,                   :    09-50026 (REG)
                                                :
                Debtors.                        :    (Jointly Administered)
                                                :
-----------------------------------------------------------------x
```

**LIMITED OBJECTION OF**
**CALLAN CAMPBELL, KEVIN JUNSO,** *ET AL.,* **EDWIN AGOSTO, KEVIN CHADWICK,**
*ET. AL.,* **JOSEPH BERLINGIERI, AND THE CENTER FOR AUTO SAFETY,** *ET AL.,* **TO**
**THE DEBTORS' 363 MOTION FOR THE SALE OF THE "PURCHASED ASSETS"**
<u>**FREE AND CLEAR OF POTENTIAL SUCCESSOR LIABILITY CLAIMS**</u>

**Dated: June 19, 2009**
**(as amended technically on June 22, 2009)**

Callan Campbell ("Campbell"), Kevin Junso, *et al.* ("Junso"), Edwin Agosto ("Agosto"), Kevin Chadwick, *et al.* ("Chadwick"), and Joseph Berlingieri ("Berlingieri," together with Campbell, Junso, Agosto, and Chadwick, the "Products Liability Claimants"), and the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizen (collectively, the "Consumer Organizations," and together with the Product Liability Claimants, the "Products Liability Claimant Advocates"), by and through their respective attorneys, submit this limited objection to the motion (the "363 Motion") of General Motors and certain of its subsidiaries (collectively, "GM" or "Debtors") for an order authorizing the sale of certain assets, including its Continuing Brands, to Vehicle Acquisition Holdings LLC, a U.S. Treasury-sponsored purchaser (the "Purchaser").[1]

### *Introduction*

1.    GM states in the 363 Motion that the sale "must be free and clear" of "rights or claims based on any successor or transferee liability." 363 Motion at 32-33. No business justification has been articulated, however, as to why the Purchaser is entitled to such relief, particularly when the "New GM" will look and operate much like the "Old GM" in the Continuing Brand businesses, and thus potentially satisfy the "mere continuation," "continuity of enterprise," or "product line exception" tests for successor liability under the laws of various states.

2.    While shedding potential successor liability claims provides expediency, it is not permitted under Bankruptcy Code section 363(f), which authorizes the sale of property free and clear only of "interests in" property to be sold, not *in personam* choses in action against the Purchaser under theories of successor liability. And while the *Chrysler* court authorized such

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Product Liability Claimant Advocates' limited objection, the Debtors' 363 Motion, or the Master Purchase Agreement ("MPA") attached to the 363 Motion.

2

relief in the sale of Chrysler's assets in the transaction with Fiat, for the reasons set forth below and in the supporting Memorandum of Law submitted herewith, if the Court undertakes its own independent analysis of *Chrysler's* reasoning, it should conclude, as we do, that *Chrysler* was wrongly decided.

### *The Sale Motion and Proposed Order*

3.      On June 1, 2009, General Motors and certain of its subsidiaries (collectively, "GM") filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code.  That same day, GM filed a motion for an order authorizing the sale under 11 U.S.C. § 363(f) of substantially all of its assets to Vehicle Acquisition Holdings LLC, a U.S. Treasury-sponsored purchaser ("Purchaser").

4.      The Sale Motion seeks approval of the sale "free and clear of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability," and requests findings that the Purchaser is not a successor or transferee and that no liabilities may be placed on it based on such a status.  Sale Motion at 20-21.  The Proposed Sale Order accompanying the Sale Motion indicates that GM contemplates selling its assets free and clear of both existing and future successor liability claims, stating that "the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Claims, including, but not limited to, under any theory of successor or transferee liability, . . . whether known or unknown as of the Closing, now existing, or hereafter arising . . . ."  Proposed Sale Order at 23-24; *see also id.* at 11 (requesting a finding that the Purchaser "would not consummate the 363 Transaction if the sale of the Purchased Assets was not free and clear of all liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability other than Assumed Liabilities, or if the

3

Purchaser would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability . . . .").

### *Parties to the Objection*

5.  The Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizen are non-profit organizations that work to protect consumers, including consumers who will be affected by this bankruptcy proceeding. The organizations are particularly interested in ensuring that the rights of consumers who will suffer injury or loss in the future due to defects in GM vehicles delivered prior to the Closing are protected in this proceeding, because those consumers, who do not know that they will be injured, have no meaningful opportunity to enter this proceeding to seek to preserve their own rights. The objectives of each of these organizations are as follows:

   a. **The Center for Auto Safety** is a non-profit consumer advocacy organization that, among other things, works for strong federal safety standards to protect drivers and passengers. The Center was founded in 1970 to provide consumers a voice for auto safety and quality in Washington, DC, and to help "lemon" owners fight back across the country. The Center advocates for auto safety before the Department of Transportation and in the courts.

   b. **Consumer Action** is a national non-profit education and advocacy organization serving more than 9,000 community based organizations with training, educational modules, and multi-lingual consumer publications since 1971. Consumer Action serves consumers nationwide by advancing consumer rights in the fields of credit, banking, housing, privacy, insurance, and utilities.

   c. **Consumers for Auto Reliability and Safety ("CARS")** is a national, award-winning non-profit auto safety and consumer advocacy organization dedicated to preventing motor vehicle-related fatalities, injuries, and economic losses. CARS has worked to enact legislation to protect the public and successfully petitioned the National Highway Traffic Safety Administration for promulgation of regulations to improve protections for consumers.

   d. **National Association of Consumer Advocates ("NACA")** is a non-profit association of attorneys and advocates whose primary focus is the protection and representation of consumers. NACA's mission is to promote justice for all consumers by maintaining a forum for communication, networking, and information sharing among consumer advocates across the country, particularly

regarding legal issues, and by serving as a voice for its members and consumers in the ongoing struggle to curb unfair or abusive business practices that affect consumers.

    e.    **Public Citizen**, a consumer advocacy organization, is a nonpartisan, non-profit group founded in 1971 with members nationwide. Public Citizen advocates before Congress, administrative agencies, and the courts for strong and effective health and safety regulation, and has a long history of advocacy on matters related to auto safety. In addition, through litigation and lobbying, Public Citizen works to preserve consumers' access to state-law remedies for injuries caused by consumer products, such as state product liability laws.

6. Callan Campbell is a GM tort victim. On August 17, 2004—a week before she was to start college—18 year old Callan was a front-seat passenger in a 1996 GMC Jimmy when the driver of the vehicle lost control while attempting to make a left turn. The vehicle entered a driver-side leading roll and rolled 1.5 times before ending on its roof. The roof collapsed over Callan's seat, partially paralyzing her. The strength to weight ratio of the GMC Jimmy roof is about 1.9, which is among the lowest of all GM vehicles. GM's own tests revealed that roof strengths in rollovers should be 3W to 4W. Callan's paralysis could have been avoided at a mere fifty dollar cost to GM.

7. Callan's medical bills total $200,000 for the life-saving treatment she received immediately after the crash. Additionally, Callan's parents have spent $160,000 renovating their home to accommodate Callan's physical and medical needs as a C6 incomplete quadriplegic. A life care planner has estimated Callan's current and future needs for extra doctor visits, medicine, durable equipment and home modifications at $4,518,831.00. An economist has predicted her work loss based on total disability at $4,120,538. Callan is also entitled to significant compensation for pain and suffering including loss of life's pleasures, loss of dignity and independence, loss of the use of her limbs, and disfigurement.

8. Kevin and Nikki Junso are the parents of Tyler, Matt, and Cole Junso. On April 25, 2006, Tyler and Kevin Junso were involved a single car rollover accident while driving a

5

2003 GMC Envoy. During the rollover, the windshield and side windows were knocked out, reducing the strength of the roof structure. The Envoy sustained catastrophic damage to the roof structure, which buckled violently inwardly toward Tyler and Kevin. Despite being belted, both occupants were partially ejected from the vehicle during the roll over. Seventeen year old Tyler, the driver, sustained massive skull and neck injuries and died at the scene of the accident. The evidence showed that Tyler's head was partially outside the vehicle during the roll over sequence, due to the broken window and lateral displacement of the roof structure, and made contact with both the ground and the roof during the accident. The paramedics found Kevin, the passenger, with his left leg out the windshield and his right leg out the passenger side window. Kevin sustained serious injuries to his arms and legs, which eventually led to the amputation of his right leg below the knee.

9. GM has been aware of the significant risks of "occupant excursion" if the safety mechanisms in its vehicles fail. Despite this knowledge, GM failed to introduce cost effective safety measures into its designs, which could have included side window plastics or laminates or seat belts resistant to excessive spool out. Not only has the Junso family lost a son as a result of GM's failure to correct the strength instabilities in its SUVs, but Kevin has also lost his right leg. To date, Kevin has incurred medical bills totaling $555,204.19, and his future medical expenses are predicted to exceed $800,000.

10. Joseph Berlingieri was parked in a driveway on September 21, 2006 when the driver side impact airbag in his 1998 Cadillac DeVille malfunctioned and deployed. The air bag struck Joseph in his left ear, arm, and shoulder causing trauma injuries including hearing loss, tinnitus, and other serious injuries. The vehicle had previously been recalled for faulty side airbags, and after its repair was warranted to Joseph as being free from defect and suitable for

6

purchase. However, the vehicle was not suitable for use, and was sold to Joseph despite the defective airbag mechanism.

11. Edwin Agosto was driving his 2000 Chevrolet Blazer on September 22, 2008, when he lost control of his vehicle causing him to cross the center line and strike a tree. After striking the tree, the car once again crossed the center line and collided with a guardrail where it finally came to rest. Edwin's airbags failed to deploy throughout the course of the entire accident. Because of that failure, Edwin suffered injuries including multiple spinous process fractures, a heavily comminuted fracture of the left scapula extending into his scapular spine and glenoid, multiple rib fractures, a humerus fracture, a subclavian vein injury, and a post traumatic subdural hygroma upon striking his head on the windshield. Due to these injuries, Edwin spent the next two and a half months of his life in a coma.

12. On July 4, 1994, Kevin Chadwick was driving his 1988 Chevrolet Beretta when a pick up truck ran a stop sign, and the vehicles crashed. The truck driver was killed and Kevin was paralyzed from the neck down. The injury was caused by a defective seat belt and a defectively designed hood latch and hood hinge system which allowed the hood to invade the passenger compartment and strike Kevin in the head causing the brain injury.

13. Callan Campbell, the Junso family, Joseph Berlingieri, Edwin Agosto and Chadwick Family all share one common bond—they have all been injured by a product defect in a GM vehicle. As a result of such injuries, each claimant has sustained damages and as such each claimant deserves their day in court to seek retribution for those damages. A sale of GM's assets free and clear of all claims of successor liability would deprive these individuals and tens of thousands more like them of the chance to seek justice for the wrongs that have been committed against them.

14. The foregoing parties are just a few of the many people who would be adversely affected by a sale free and clear of successor liability claims against the Purchaser. More than 69 million GM passenger vehicles are on American roads today. In 2007, according to the National Highway Traffic Safety Administration's Fatal Analysis Reporting System, 9,985 occupants of GM vehicles were killed in fatal accidents; and a total of 14,828 people were killed that year as a result of motor vehicle crashes involving GM vehicles. Many thousands more are injured each year in GM vehicles. Many of these vehicles contain certain defects that have and will continue to be the subject of product liability lawsuits, including due to injuries and deaths from crushed roofs, exploding "side saddle" gas tanks, and collapsing seat backs.[2]

### *Relief Requested*

15. Through this objection, the Objectors ask the Court to respect the jurisdictional boundaries of the Court and the statutory directives of Congress and deny the Debtors' request to bar present and future product liability claimants from pursing claims against the Purchaser post-closing under applicable state law theories of successor liability.

16. GM claims in its Sale Motion that the "363 Transaction is the only realistic alternative for the Company to avoid liquidation of its assets," the "Purchaser is the only entity capable of purchasing the Purchased Assets and closing the 363 Transaction," and that, "in the exercise of sound business judgment . . . the 363 Transaction is the only means of preserving value and continuing the transformed business for the benefit of all economic stakeholders and in the national interest." Sale Motion at pp 6-7, 14. The Objectors do not deny that the 363 sale itself is necessary or proper; their objection is limited to the requested findings and orders

---

[2] Extensive background information on the nature of, and litigation associated with, design defects on these particular design defects can be found at http://www.autosafety.org/general-motors-roof-crush-lawsuits (crushed roof cases), http://www.autosafety.org/general-motors-ck-fuel-fed-fire-litigation ("side saddle" gas tank cases), and http://www.autosafety.org/general-motors-seat-back-collapse-litigation-0 (seat back collapse cases).

8

intended to bar present and future product liability claims against the successor Purchaser under state law theories of successor liability.

17. For the reasons set forth below, and in our supporting Memorandum of Law, the Objectors request that the Court strike or modify as appropriate the following provisions affecting the product liability claimants' rights to pursue successor liability claims against the Purchaser under state law:

    a. <u>Provisions providing that the sale is "free and clear" of successor liability claims or that the Purchaser shall not be liable for successor liability claims.</u> Sale Order ¶¶ T, 7-9, and 29; MPA Section 9.19 ("neither Purchaser nor any of its Affiliates or stockholders shall be liable for any Claims against Sellers or any of their predecessors or Affiliates, and neither Purchaser nor any of its Affiliates or stockholders shall have any successor, transferee or vicarious Liability of any kind or character whether known or unknown as of the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to Sellers' business or any obligations of Sellers arising prior to the Closing.");

    b. <u>Provisions enjoining successor liability actions against the Purchaser.</u> Sale Order ¶¶ 13 and 28;

    c. <u>Provisions containing factual findings related to successor liability.</u> Sale Order ¶¶ V, 27 and 38; MPA Section 9.19 ("neither Purchaser nor any of its Affiliates or stockholders shall be deemed to (a) be the successor of Sellers; (b) have, de facto, or otherwise, merged with or into Sellers; (c) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers; or (d) other than as set forth in this Agreement, be liable for any acts or omissions of Sellers in the conduct of Sellers' business or arising under or related to the Purchased Assets."); and

    d. Any other provision attempting to extinguish the Purchaser's successor liability, enjoin successor liability actions, or make binding findings of fact with regard to elements of state law successor liability claims.

18. GM's attempt to enjoin successor liability claims against the Purchaser must be denied because it violates applicable law, notice, and due process requirements. The legal basis for such a denial is summarized briefly below and set forth in detail in the supporting Memorandum of Law, filed contemporaneously herewith.

    a.    § 363 does not extend to successor liability choses in action. The plain language of § 363(f), which describes what is released as part of a "free and clear" sale under that section, only applies to "interests in property." This phrase is used throughout the Code, and thus should have the same meaning throughout;

    b.    The Court should decline to follow the *Chrysler* court's opinion authorizing a sale "free and clear" of successor liability choses in action because the court in *Chrysler* misapplied the case law and adopted inconsistent policies.

    c.    The Court lacks subject matter jurisdiction under 28 U.S.C. § 1334 to enjoin post-closing disputes between personal injury claimants and the Purchaser. The Court cannot exercise "related to" jurisdiction because such an exercise of jurisdiction is inappropriate where the action the court seeks to enjoin is unrelated to the *res* of the bankruptcy estate. Here, the outcomes of any actions brought by the personal injury claimants against the Purchaser would leave the *res* of the Debtors' estates wholly untouched;

    d.    The Court does not have authority to make non-core factual findings regarding elements of state law successor liability claims. GM's sale motion seeks factual findings regarding the status of the Purchaser post-sale without providing any factual basis for the findings. In any case, the Court does not have authority to make non-core, advisory rulings on facts that are not yet in existence;

    e.    The Purchased Assets cannot be sold "free and clear" of successor liability for future tort and product liability claims because—even if this Court were to conclude that *current* claims could be categorized as "interests in property" under § 363—the Court cannot draw the same conclusion regarding *future* interests in property. People who have not yet suffered an injury or a loss cannot have an interest in GM's property because the injuries that would lead them to have such an interest have not yet occurred; and

    f.    A sale of GM's assets "free and clear" of future tort and product liability claims violates due process because people who have not yet suffered injury from defects in GM vehicles do not know that they will be injured in the future cannot be given meaningful notice that their rights are being adjudicated or a meaningful opportunity to be heard.

WHEREFORE, for the foregoing reasons, and for those stated in the Objectors' accompanying Memorandum of Law in Support, the Objectors respectfully request that this Court deny the Debtors' motion to sell its assets free and clear of all successor liability claims and enter such other and further relief as this Court deems just and proper.

Dated:  June 19, 2009

Respectfully submitted,

CALLAN CAMPBELL, KEVIN JUNSO, ET AL.,
EDWIN AGOSTO, KEVIN CHADWICK, ET AL., AND
JOSEPH BERLINGIERI

By: /s/ Steve Jakubowski
One of Their Attorneys

Steve Jakubowski (IL ARDC# 6191960)
Elizabeth Richert (IL ARDC# 6275764)
THE COLEMAN LAW FIRM
77 West Wacker Drive, Suite 4800
Chicago, IL  60601
Tel:  (312) 606-8641
Fax:  (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorneys for Callan Campbell, Kevin Junso, *et al.,*
Edwin Agosto, Kevin Chadwick, *et al.* and Joseph
Berlingieri

CENTER FOR AUTO SAFETY, CONSUMER ACTION,
CONSUMERS FOR AUTO RELIABILITY AND SAFETY,
NATIONAL ASSOCIATION OF CONSUMER
ADVOCATES, AND PUBLIC CITIZEN

By: /s/ Adina H. Rosenbaum
One of Their Attorneys

Adina H. Rosenbaum
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone:  (202) 588-1000
arosenbaum@citizen.org

Attorneys for Center for Auto Safety, Consumer
Action, Consumers for Auto Reliability and Safety,
National Association of Consumer Advocates, and
Public Citizen

11