| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | HEARING DATE: June 25, 2009<br>HEARING TIME: 9:45 am |

------------------------------------------------------- x
In re:                                                                  :
                                                                              :    Chapter 11
GENERAL MOTORS CORP., *et al.*,               :
                                                                              :    Case No. 09-50026 (REG)
                            Debtors.                               :
                                                                              :    (Jointly Administered)
------------------------------------------------------- :
                                                                              x

**THE UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 327(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) AUTHORIZING THE EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

**TO: THE HONORABLE ROBERT E. GERBER
       UNITED STATES BANKRUPTCY JUDGE:**

Diana G. Adams, the United States Trustee for Region 2 (the "United States Trustee"), objects to the application for the employment and retention of Evercore Group L.L.C. ("Evercore") as investment banker and financial advisor for the Debtors *nunc pro tunc* to the Petition Date (the "Application").

## I. INTRODUCTION

The Debtors seek to retain Evercore in accordance with a fee structure that is not reasonable under the facts disclosed in the Application. The fee structure includes a flat fee of $400,000 per month until the Debtors' proposed sale is consummated and a success fees for that same transaction that will likely total close to $20 million. This $20 million would be in addition to the approximately $40 million that Evercore already received from the Debtors in fees and expenses in the year prior to the Petition Date.

The Evercore fees cannot be viewed in a vacuum. The Debtors have also sought to retain AP Services, LLC ("APS") as 'crisis managers", and to pay APS a success bonus tied to the closing of the same sale for which Evercore is to receive a bonus. The scope of services to be performed by the two firms has some apparent overlaps,[1] and the overall bonuses to be paid related to the currently-contemplated sale are very high given the nature of the events that led to the transaction.

The Debtors and Evercore seek approval of the terms and conditions of the engagement pursuant to section 328 and must meet their burden to prove the reasonableness and benefit to the estate of the terms of compensation. They have not met that burden, especially in light of the fact that the result of this case is effectively pre-determined.

The Court should deny the Application. The fees sought by Evercore are staggering: Evercore seeks $400,000 (assuming the sale closes in one month) in addition to the $46 million paid prepetition and in addition to an extraordinarily large success fee of $17.9 million (which includes the Government Funded Sale Fee, DIP Structuring Fee, and the Delphi Fee). This compensation request is all the more incredible in light of the fact that the Debtors are also retaining a Crisis Manager, which is asking for its own success bonus. Not only does the scope of services of these two professionals have some apparent overlap, but it is impossible to justify these inordinately large bonuses under the circumstances of these cases. This was not the circumstance where the financial advisor was left to search for a buyer and through its own unique and extraordinary efforts identified a white knight to save the company and the jobs of the Debtors' employees. On the contrary, Evercore had no success at finding a purchaser or funder

---

[1] *See* Exhibit A.

for the Debtors. In light of these facts, the Evercore Application clearly exceeds the bounds of reasonableness.

Because the Debtors have not, and cannot, justify the fee structure and bonuses for Evercore the application cannot be approved.

## II. FACTS

### A. Background

1. On June 1, 2009 (the "Petition Date"), General Motors and certain subsidiary debtors (collectively referred to as the "Debtors") filed voluntary cases under Chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate and manage their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors are one of the largest automobile manufacturers in the world. The problems affecting the Debtors' business have been the subject of much attention for the past few months. The United States Government (the "Government") has taken the lead in proposing and sponsoring the restructuring plan for the Debtors. The Debtors propose to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code to a Government sponsored and funded purchaser (the "Government-Funded Purchaser"). To facilitate this sale, the Government is providing debtor-in-possession financing in the total amount of approximately $48 Billion.

4. The Debtors propose to consummate the sale of their assets within thirty (30) days of the Petition Date. The motion to approve the sale is scheduled for hearing on June 30. The Government-Funded Purchaser is the stalking horse bidder. Unless a higher and better bid is received through the auction process, then the Debtors will seek the approval of sale to the

Government-Funded Purchaser at the June 30 sale hearing. The deadline for competing bids was June 19. Upon information and belief, no competing bids were submitted.

5. On June 3, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these cases. *See* ECF Doc. No.

### B. The Evercore Application

6. On June 12, 2009, the Debtors filed the Application seeking to retain Evercore as the Debtors' investment banker and financial advisor, accompanied by an engagement letter between the Debtors and Evercore dated May 29, 2009 (the "Engagement Letter") and the Declaration of William C. Repko in Support of the Application (the "Repko Decl."). *See* ECF Doc. No. 954, Exhibits A and B.

#### 1) Scope of Services

7. Pursuant to the Application and the Engagement Letter, Evercore will provide some of the following services: (a) reviewing and analyzing the Debtors' businesses, operations, and financial projections; (b) advising the Debtors in a Restructuring, Financing and/or Sale Transaction;[2] (c) providing financial advice in developing and implementing a Restructuring; (d) assisting the Debtors with Financing; (e) assisting the Debtors if a Sale transaction is pursued; and (f) rendering an opinion (the "Fairness Opinion") to the Board of Directors as to the fairness of the consideration to be paid or received by the Debtors in connection with the Government-Funded Sale. *See* Application at ¶ 7.

---

[2] Capitalized terms used in this Objection without definition shall have the meanings ascribed to them in the Application and the Engagement Letter.

**2)    Prepetition Compensation**

8.    According to the Repko Decl, Evercore performed services for the Debtors in connection with their restructuring efforts beginning June 23, 2008.  Evercore also performed certain financial advisory services for the Debtors in connection with the Delphi Corporation Chapter 11 bankruptcy case (the "Delphi Case") beginning June 1, 2008.  The following table summarizes all of the prepetition payments made by the Debtors to Evercore for professional services:

| Prepetition fees and expenses for services in Delphi case | $6,096,855.07 |
| --- | --- |
| Prepetition fees and expenses paid for services related to the Debtors' restructuring | $24,530,368.16 |
| Forward Restructuring Fee paid April 29, 2009 | $5,000,000.00 |
| Forward Restructuring Fee paid May 14, 2009 | $5,000,000.00 |
| Fairness Opinion Fee paid on May 29, 2009 | $6,000,000.00 |
| **Total** | **$46,627,223.23** |

9.    The Repko Decl. also notes that included in the expenses paid to Evercore prior to the Petition Date is an advance of $100,000 for the fees and expenses of legal counsel to Evercore.  There is no indication in the Application or the Repko Decl. regarding the current status or amount of the $100,000 legal advance.

**3)    Proposed Postpetition Compensation**

10.    The proposed postpetition compensation for Evercore is a two-part structure: (i) a monthly fee of $400,000 through the consummation of the Government-Funded Sale; and (ii) various transaction/success fees based on certain events that may or may not occur during this

bankruptcy case.[3]

11.     The transaction fees include the following: a Sale Fee of $30 million for the Government-Funded Sale; a DIP Structuring Fee of $2.5 million, and a Delphi Fee of $2 million. As indicated in the Application, some of these transaction fees will have amounts paid prepetition credited to them.

12.     The following chart summarizes the potential pre and post-petition compensation if the Government-Funded Sale is consummated:

|  | **NewCo Sale Approved** |
| --- | --- |
| Monthly Fees | $400,000.00 |
| Restructuring Fee<br>(Minus Forward Restructuring Fee of $10 Million)<br>(Minus $4 Million of Advisory Fee Credit)<br>(Minus 50% of Sale Fee)<br>(Minus 50% of Other Financing Fee) | N/A |
| Government-Funded Sale Fee<br>(Minus Forward Restructuring Fee of $10 Million)<br>(Minus $4 Million of Advisory Fee Credit)<br>(Minus 50% of $6,000,000 Opinion Fee) | $30,000,000.00<br>($10,000,000.00)<br>($4,000,000.00)<br>($3,000,000.00) |
| DIP Structuring Fee | $2,500,000.00 |

---

[3] The Application also sets forth a fee structure for a non-Government-Funded Sale. Because such a sale is unlikely, this objection focuses on the fees to be awarded to Evercore if the Government-Funded Sale is consummated. If it were not, the fee structure for Evercore would then include (i) a monthly fee of $400,000 through May 1, 2011, and then decreasing to $250,000 per month thereafter; and (ii) a Sale Fee for any sale other than the Government-Funded Sale (a "Non-Government Sale"), which would be a percentage fee of the Incremental Aggregate Consideration from the Non-Government Sale (the incremental percentages are set out in the table in the Application), which could result in a combined Pre and Post-Petition Fee of up to $84 million, assuming (x) monthly fees of $400,000 for 12 months, and (y) a Non-Government Sale of $10 billion.

| | |
|---|---|
| Delphi fee payable upon consummation of Delphi Plan or sale of substantially of Delphi's Assets | $2,000,000.00 |
| Assuming the NewCo Sale is consummated on or before June 30, 2009 | $17,900,000.00 |

**4)   Retention of AP Services, LLC.**

13.   Contemporaneous with the filing of this Motion, the Debtors have sought approval of the retention of AP Services, LLC ("APS") as crisis managers (the "APS Application"). The United States Trustee has filed an objection to the APS Application on many of the same grounds as this objection, including the unreasonable fee structure for APS.

14.   Despite the fact that APS is described as "crisis manager" and has a role going forward with the Debtors while Evercore does not have a role going forward, there is significant overlap between the services to be rendered. *See* Exhibit A. Most significantly, both Evercore and APS would be awarded a Success Fee based upon the consummation of the Government-Funded Sale.

15.   According to the affidavit in support of the APS Application, APS or its affiliate, AlixPartners, LLP ("Alix Partners") received payments from the Debtors within the 90 days before the Petition Date in the aggregate amount of $38,858,941.08. In addition, APS and/or AlixPartners received a $20 million retainer payment.

16.   In sum, the Debtors have already paid over $85 million to APS and Evercore, and they now seek to employ these two financial advisory firms and to pay them post-petition fees totaling an additional $40 million for, in essence 30 days' of services, without any documentation to show what are those services. In sum, APS and Evercore stand to receive total fees from the

Debtors during a one-year period of approximately $135-$145 million.

### III.  ARGUMENT

**A.    The Governing Law.**

The Application relies on sections 327(a) and 328 of the Bankruptcy Code. Section 330 of the Code applies as well.

Section 327(a) of the Bankruptcy Code provides:

> The trustee, with the court's approval, may employ one or more attorneys. . .or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Section 328 of the Bankruptcy Code creates no automatic right of payment. This provision authorizes:

> employment of a professional person under section 327 or 1103 of this title, as the case may be, **on any reasonable terms and conditions of employment**, including on a retainer, on an hourly basis, or on a contingency fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a)(emphasis added).

Under Section 328(a), the Court "may not award a fee different from one that it has approved in a retention order unless it finds that the terms in the retention order were 'improvident in light of developments not capable of being anticipated at the time.' " *Riker,*

-8-

*Danzig et al. v. Official Committee (In re Smart World Techs., LLC)*, 383 B.R. 869, 877 (S.D.N.Y. 2008), aff'd, In re Smart World Techs., LLC, 552 F.3d 228, (2d Cir. 2009); *Houlihan Lokey v. High River Ltd. P'ship*, 369 B.R. 111, 117 n.8 (S.D.N.Y. 2007) (affirming reduction of $18 million transaction fee sought by financial advisor to $4.0 million); 11 U.S.C. § 328(a). Thus, in approving a fee arrangement under section 328(a), it has been held that "a court may not revisit the reasonableness" of the arrangement when approval of the fees eventually is sought. *In re XO Communications, Inc.*, 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005). Bankruptcy Code section 330(a) provides:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103-
>
> reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

Section 330 focuses on reasonableness and benefit to the estate of the professional's services. *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enter., Inc.)*, 997 F.2d 1321, 1323 (10th Cir. 1993; Engel, 124 F.3d at 573; *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995). In determining "reasonable" compensation, a bankruptcy court may consider a non-exclusive list of six "relevant factors [ ] including — (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under this title; (D) whether the services were performed within a

reasonable amount of time . . . ; (E) whether a professional person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title . . . ." 11 U.S.C. 330(a)(3). *In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009).[4]

      **B.**    **The Retention Application Does Not Support Pre-Approval of the Restructuring Fees Under the Improvident Standard Section 328.**

Under the circumstances of these bankruptcy cases it would be inappropriate to apply the restraints of section 328(a) to the Court's and the parties' review of Evercore's fees. Instead, reliance upon the reasonableness standard of section 330 is justified and appropriate.

Bankruptcy Code section 328(a) authorizes the compensation of a professional person retained under section 327(a) "On any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). The burden of proof to establish that the terms and conditions of employment – including the imposition of section 328(a) – is on Evercore, as applicant. *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 921 (6th Cir. 2004) (quoting *Zolfo*, 50 F.3d at 262). To meet its burden, the firm must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate." *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991). A professional's requested invocation of section 328(a) is neither mandatory nor automatic, regardless of the proposed compensation scheme. A professional

---

[4] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) added one additional factor – the current subsection 330(a)(3)(E). The BAPCPA redesignated former subsection 330(a)(3)(E), cited above, as subsection 330(a)(3)(F). *See* 11 U.S.C. § 330(a)(3).

should not automatically expect approval of its retention under section 328 just because it asks for it.

The Court cannot make the findings required by section 328 in the current informational vacuum. The Debtors and Evercore have not met their burden of proof to demonstrate why – or how – the terms and conditions of its fees are reasonable under section 328(a). *Airspect Air*, 385 F.3d at 921 ("burden should rest on the applicant to ensure that the court notes explicitly the terms and conditions if the applicant expects them to be established at that early point.")

Whether the proposed fees are reasonable within the meaning of sections 328(a) simply cannot be determined at this time. Because the financial positions of these Debtors are unknown, the reasonableness of Evercore's proposed fees are also unknown.

The Second Circuit has recently stated that "pre-approval of a fee agreement under 11 U.S.C. § 328(a) depends on the totality of the circumstances, including whether the professional's application, or the court's order, referenced section 328(a), and whether the court evaluated the propriety of the fee arrangement before granting final, and not merely preliminary, approval." *Smart World*, 552 F.3d at 332. The applicant bears the burden to show that the terms of its employment are reasonable. *Id.* at 333. Here, under the "totality of the circumstances" test articulated in *Smart World*, the Retention Application does not explain why both Evercore and APS should receive "Success Fees" for the same transaction.

No evidence has been presented to support the reasonableness of the terms and conditions of Evercore's retention. In fact, simply citing a few "other large chapter 11 cases" as support for the fee structure, as the Debtors do in the Application (Application, ¶ 27, p. 14) is not sufficient for the Debtors and Evercore to meet their burden to approve the retention.

No one questions that this case is unique and involves very complex issues. Yet, as noted *supra* in the charts summarizing both its prepetition and postpetition fees, Evercore stands to make an extraordinary amount of money through its representation of the Debtors. It is impossible for this Court to find that Evercore's compensation is reasonable without knowing what services Evercore will render, whether those services were beneficial, and most important under the circumstances of this case, *the nexus between the services rendered and the results achieved*.

### C. The Court Could Defer Consideration of the Fees Under A Reasonableness Standard to the End of the Case

One alternative to the denial of the Application is to defer consideration of the fees until the end of the case under § 330 of the Bankruptcy Code. Section 330 focuses on reasonableness and benefit to the estate of the professionals' services. *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and conferred a benefit to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (citing *In re Ark. Co.*, 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)).

However, in recent cases, financial advisors have argued that fees are "reasonable" under 11 U.S.C. § 330 if the market commands such rates. *See In re Northwest Airlines Corp.*, 400 B.R. at 402 (denying the completion fee for the financial advisor, stating that "while [the financial advisor] may feel it is under-compensated when compared to the amounts it routinely receives in other engagements, [the financial advisor] has not met its burden of proof that award of the Completion Fee in this case is reasonable based upon the work [the financial advisor] has performed and its impact upon the reorganization.").

Evercore should not be able to make the argument that the fees are pre-determined (*i.e.*, at the time its retention is approved) regardless of the outcome of these Chapter 11 cases. Evercore has already been well-compensated for the work it did pre-petition. It is not clear why Evercore should receive a "success fee" for the consummation of the Government-Funded Sale. It is not clear why Evercore should receive a fee relating to the DIP financing. And it is not clear why Evercore should receive from this estate fees relating to work performed for Delphi.

Accordingly, all aspects of the compensation to be paid, including reasonableness, should be addressed at the end of the case when fee applications are filed.

More than that, however, is the fact that there *must* be evidence to support the reasonableness of the fee structure and to approve this retention under section 328(a) as the Debtors have requested. The Debtors and Evercore have come up woefully short in meeting that burden of proof.

## IV. CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that this Court grant the relief requested herein and grant such other and further relief as it deems just and proper.

Dated: New York, New York
      June 22, 2009

                                    Respectfully submitted,

                                    DIANA G. ADAMS
                                    UNITED STATES TRUSTEE

By:   */s/ Tracy Hope Davis*
        Tracy Hope Davis
        Assistant United States Trustee
        33 Whitehall Street, 21st Floor
        New York, New York 10004-1408
        Tel. No. (212) 510-0500

# EXHIBIT A

| Scope of Services | |
| --- | --- |
| AP Services | Evercore |
| **General Scope of Services:**<br><br>Assist the Company in evaluating and implementing strategic and tactical options through the restructuring process, including any sale of its assets. | **General Scope of Services:**<br><br>Provide the Company with general investment banking advice and to advise it in connection with any Restructuring, Financing and/or Sale transactions. |
|  | Reviewing and analyzing the Company's business, operations and financial projections. |
| Assist the Company and its advisors in the negotiation and completion of the sale of assets and operations contemplated by the Company (the "Transaction") to a US Treasury sponsored purchaser ("New GM"). On behalf of the Company (the "Company" or "Oldco"), to support the negotiation of, and participate in the review of, the proposed structure of the Transaction, including the assets to be sold and transferred to New GM and the liabilities to be assumed by New GM as a part of the purchase price, and the negotiation and implementation of various transitional contractual relationships between Oldco and New GM. | Advising and assisting the Company in a Restructuring, Financing and/or Sale transaction, if the Company determines to undertake such a transaction;<br><br>Sale Assistance:<br>　i. Structuring and effecting a Sale;<br>　ii. Identifying interested parties and/or potential acquirors and, at the Company's request, contacting such interested parties and/or potential acquirors; and<br>　iii. Advising the Company in connection with negotiations with potential interested· parties and/or acquirors and aiding in the consummation of a Sale transaction |

| | |
|---|---|
| Al Koch and the Temporary Staff will oversee the administration of the Company's bankruptcy case, including compliance with bankruptcy court reporting requirements and the discharge of obligations of the Company pursuant to the Code, and at the direction of the Board, shall propose, file and implement a plan of liquidation under chapter 11 in accordance with the Code.<br><br>Al Koch and the Temporary Staff will seek to monetize assets, settle and administer claims as soon as practicable.<br><br>Assist the Company, as requested, in relation to its investments in subsidiaries and affiliates and business counterparts and any other actions consistent with Code and applicable authorities. | Providing financial advice in developing and implementing a Restructuring, which would include:<br>   i. Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code;<br>   ii. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;<br>   iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company; and,<br>   iv. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate. |
| | Rendering an opinion (a "Fairness Opinion") to the Board of Directors of the Company as to the fairness, from a financial point of view, of the consideration to be paid or received by the Company in connection with a Master Sale and Purchase Agreement (the "MSPA") with Auto Acquisition LLC ("NewCo") and the other parties named therein, which will provide for a sale of the Purchased Assets (the "Purchased Assets"), as defined in the MSPA, pursuant to authorization that will be sought under section 363 of the Bankruptcy Code (11 U.S.C. §101, et seq.) (the "NewCo Transaction"). |

-2-