Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862

*Co-Counsel for Southern California Edison Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re:**                                    :    **Chapter 11**
:
**GENERAL MOTORS CORP.,** *et al.*,           :    **Case No. 09-50026 (REG)**
:
            **Debtors.**                      :    **(Jointly Administered)**
:
---------------------------------------------------------------x

**DECLARATION OF CECILIA BAESA IN SUPPORT OF OBJECTION OF CERTAIN
UTILITY COMPANIES TO MOTION OF DEBTORS FOR ENTRY OF ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED
FORM OF ADEQUATE ASSURANCE OF PAYMENT,
(II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS
BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES
FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

I, Cecilia Baesa, declare as follows:

1.     I am the Special Collections Coordinator for Southern California Edison

Company ("SCE"). I have held this position for 2 ½ years and have been with SCE since June 20,1983.

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, my review of SCE's business documents, correspondence and relevant documents, or my opinion based upon my experience concerning the operations of SCE. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. On behalf of SCE, I submit this Declaration in support of the *Objection Of Certain Utility Companies To Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Objection").

4. In making this Declaration, I am familiar with the contents of the Objection and the *Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service*. Accordingly, I am aware of the Debtors' offer to provide their utilities with a two-week deposit.

5. It is part of my job responsibility with SCE to: (A) review customer's accounts; (B) address credit issues with SCE's customers; and (C) address issues concerning customers that file for bankruptcy protection, including requests for adequate assurance of payment.

6. SCE's relationship with the Debtors is governed by the *Tariff Schedules Applicable To Electric Service Of Southern California Edison Company* which is on file with the Public Utilities Commission of the State of California and can be obtained at

http://www.sce.com/AboutSCE/Regulatory/tariffbooks/ratespricing/businessrates.htm. (the "Tariffs").

7. The Tariffs establish the billing and payment terms for all of SCE's 4.9 million customers. Specifically, under the billing cycle established by the Tariffs, the meters are read monthly at intervals of approximately 27 to 33 days. The meter reading date for each meter normally depends on its geographic location. The log date for all meters read on any particular day is corrected and processed, and every customer whose meter was read on that day normally receives its bill by first-class mail approximately five to six days following the meter reading date. Bills are due when rendered, but the Tariffs require that each customer be afforded at least 20 days after rendition of the bill to make payment without being considered in default. Non-payment by a customer of the preceding month's bill is normally not discovered and acted upon until the billing for the current month is in the process of preparation.

8. After discovery of non-payment, the Tariffs require that the customer receive at least eight days notice before SCE denies further service by cutting a customer off. Due to the fact that SCE allows about two days in addition to the eight days notice while payment is assumed to be in the mail, as well as the time required to process a disconnection notice, approximately ten days usually lapses between the time SCE issues a written notice to disconnect and the time service is actually cut off. The number of unpaid service days in a situation where a meter is read and billed monthly to the time of disconnection ranges from between 65 to 72 days. Therefore, under ideal circumstances, SCE would be forced to incur significant post-petition debt (more, in fact, than a two month deposit will protect against) before being able to disconnect service.

9. SCE provided the Debtors with utility goods and services prior to the petition date

of June 1, 2009. The approximate amount that the Debtors owe SCE for unpaid prepetition utility goods and services is $71,022.77.

10. SCE continues to provide postpetition utility goods and services to the Debtors at the Debtors' accounts that are listed in Exhibit A to this Declaration.

11. Pursuant to Rule 6 and Rule 7 of the Tariffs, SCE is entitled to seek adequate assurance of payment from the Debtors in the form of a two-month cash deposit in the amount of $337,570.00.

11. SCE applied its prepetition cash deposit in the amount of $319,150.00 plus accrued interest in the amount of $45,333.44 against the Debtors' prepetition debt in the approximate amount of $71,022.27 leaving a surplus deposit in the approximate amount of $293,460.67(the "SCE Surplus Deposit"). Accordingly and as set forth within paragraph 47 of the Objection, SCE will agree to forego its request for a two-month cash deposit from the Debtors pursuant to the Tariffs in exchange for the following arrangement: (a) SCE shall retain the SCE Surplus Deposit to serve as Debtors' postpetition deposit on the accounts; (b) the Debtors shall pay SCE's postpetition invoices by the applicable due date; and (c) the Debtors shall promptly notify SCE if they no longer require postpetition utility service from SCE.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 22nd day of June 2009, at San Dimas, California.

_____
Cecilia Baesa

09-50026-mg    Doc 2220    Filed 06/23/09    Entered 06/23/09 11:14:06    Main Document
Pg 5 of 5

**Exhibit A**

**General Motors**

| Service Address | Account Number | Deposit Request |
|---|---|---|
| 515 Marin St Thousand Oaks CA | 2-02-122-0926 | $39,260.00 |
| 3050 Lomita Blvd Torrance CA | 2-02-122-7954 | $82,130.00 |
| 11900 Cabernet Dr Fontana CA | 2-19-483-1418 | $90,520.00 |
| 3100 Lomita Blvd Torrance CA | 2-20-355-7582 | $13,860.00 |
| 14043 Stage Rd StaFeSprings CA | 2-22-684-4009 | $19,840.00 |
| 9150 Hermosa Dr RanchoCucamonga | 2-24-083-7336 | $90,450.00 |
| 2990 Lomita A & B Torrance CA | 2-30-406-8943 | $1,510.00 |
| | | |
| | | $337,570.00 |
| | | |