<div align="right">

**Hearing Date and Time: June 25, 2009, at 9:45 a.m. E.T.**
**Objection Deadline: June 23, 2009, at 12:00 p.m. E.T.  (Extended)**

</div>

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Kenneth H. Eckstein
Robert T. Schmidt
Adam C. Rogoff

*Proposed Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
In re:                                                       :          Chapter 11 Case No.:
                                                             :
GENERAL MOTORS CORP., et al.,                                :          09-50026 (REG)
                                                             :
                                          Debtors.           :          (Jointly Administered)
                                                             :
------------------------------------------------------------ X

<div align="center">

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE DEBTORS' APPLICATION FOR
AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY
CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF
EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL
ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

</div>

KL2 2609204.5

## TABLE OF CONTENTS

**Page**

Table of Authorities ..........................................................................................................ii

Preliminary Statement......................................................................................................1

Background .........................................................................................................................2

Objection.............................................................................................................................5

       The Application Does Not State Clearly the Fees to be Paid to Evercore.............8

       Payment of Fees Should Be Conditioned Upon Administrative Solvency............9

Conclusion .......................................................................................................................11

KL2 2609204.5

## TABLE OF AUTHORITIES

### CASES

In re Chrysler LLC, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. filed Apr. 30, 2009) ................6

In re Circle K Corp., 279 F.3d 669 (9th Cir. 2002) ...........................................................5

In re Delphi Corporation, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. filed Oct. 8,
    2005) ................................................................................................................3

In re Gulf Coast Oil Corp., 2009 WL 361741 (Bankr. S.D. Tex. 2009)...........................................9

In re High Voltage Engineering Corp., 311 B.R. 320 (Bankr. D. Mass. 2004)...............................6

In re Metricom, Inc., 275 B.R. 364 (Bankr. N.D. Cal. 2002) .........................................................6

In re Thermadyne Holdings Corp., 283 B.R. 749 (8th Cir. BAP 2002) .........................................6

Zolfo, Cooper & Co., v. Sunbeam-Oster Co., 50 F.3d 253 (3d Cir. 1995)......................................5

TO:   THE HONORABLE ROBERT E. GERBER,
      UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (the "**Debtors**" or "**GM**"), by and through its undersigned proposed counsel, hereby submits this limited objection (the "**Objection**") to the Debtors' Application (the "**Application**") for an Order Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Evercore Group L.L.C. ("**Evercore**") as Investment Banker and Financial Advisor for the Debtors *Nunc Pro Tunc* to the Petition Date [Docket No. 954].   In support of its Objection, the Committee represents as follows:

## PRELIMINARY STATEMENT

The Committee recognizes that Evercore is a respected and highly experienced investment banking and financial advisory firm.  However, even in the context of a case as large and complicated as GM, the fees already paid to Evercore and the amounts requested for ongoing services are very significant.  By the Committee's calculation the fees already paid to Evercore are approximately $30 million and the amounts that may be earned for future services range from $18 million to $54 million.  While the Application includes general references to the services to be provided by Evercore, it does not contain sufficient information to determine exactly what additional services Evercore will be providing and how such services will benefit the Debtors' estates.  The high level of involvement of the United States Treasury (the "**Treasury**"), in the orchestration of the GM bankruptcy and proposed "sale" transaction must also be considered in evaluating an appropriate Evercore fee structure.  In sum, additional information is required and an evaluation of the benefits to be received must be undertaken before the Application can be

KL2 2609204.5

1

approved, especially an application pursuant to section 328 of the Bankruptcy Code, which would limit any meaningful future review.

In light of the significant fees contemplated by the Application, it is paramount that the impact on the Debtors' estates and unsecured creditors left behind after the proposed 363 sale be minimized.  Central to this is the necessity of administrative solvency of the Debtors post-closing.  The Debtors' estates cannot be left administratively insolvent and unable to confirm a plan due to professional fees that are not adequately provided for in a DIP or wind-down budget.  Thus, the Court should condition the award of Evercore's fees on administrative solvency.

## BACKGROUND

1.      On June 1, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.      On June 12, 2009, the Debtors filed the Application seeking authority to employ and retain Evercore as investment banker and financial advisor to the Debtors pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

3.      The Application seeks approval of the terms of the retention already agreed to by the Debtors and Evercore in the engagement letter dated May 29, 2009 (the "**Engagement Letter**").  The Engagement Letter describes (i) the professional services to be provided to the Debtors by Evercore and (ii) Evercore's compensation for providing such services.

4.      Pursuant to the Engagement Letter, Evercore will, among other things: (i) advise and assist the Debtors in a Restructuring,[1] Financing and/or Sale transaction; (ii) provide financial advice in developing and implementing a Restructuring; (iii) assist the Debtors with Financing; (iv) assist the Debtors with structuring and effecting a Sale; (v) render an opinion to the Board of Directors of the Debtors as to the fairness, from a financial point of view, of the consideration to be paid or received by the Debtors in connection with a Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC ("**NewCo**"); and (vi) continue to provide financial advisory services to the Debtors with respect to In re Delphi Corporation, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. filed Oct. 8, 2005) (the "**Delphi Bankruptcy Case**").

5.      The Engagement Letter further provides that Debtors will compensate Evercore for services to be provided, as follows:

(a)     a Monthly Fee consisting of $400,000 per month, payable on the first day of each month of the engagement for 24 months, commencing June 1, 2009, through and including May 1, 2011, and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a Plan of liquidation or termination of the engagement;

(b)     a Restructuring Fee consisting of the payment of $30 million upon the consummation of any Restructuring. Certain fees, totaling $14 million, are creditable against this amount, including: 100% of the Forward Restructuring Fee; $4 million on the Advisory Fee,[2] 50% of any Financing Fee (excluding the $2.5 million DIP financing fee); and 50% of any Sale Fee (provided that such credit shall be creditable after the credit of the Forward Restructuring Fee and the Advisory Fee);

(c)     a Sale Fee payable upon consummation of any Sale. The amount of the Sale Fee will be determined by the aggregate consideration paid for the assets;

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Application.

[2] The Advisory Fee is defined in the Engagement Letter as the monthly retainer fees paid to Evercore.

(d)     a NewCo Transaction Fee consisting of $30 million payable upon consummation of the sale to NewCo[3] or another bidder that has made a higher or otherwise better offer.  Certain fees, totaling $17 million, are creditable against this amount, including: 100% of the Forward Restructuring Fee; $4 million of the Advisory Fee; and the Opinion Fee Credit;[4]

(e)     a Financing Fee consisting of $2.5 million for assisting in structuring and implementing the DIP Financing facility and 3% fee of the gross proceeds of any DIP financing provided by any party other than the U.S. Treasury; and

(f)     a Delphi Fee consisting of $2 million for advisory services relating to the Delphi Bankruptcy Case payable upon the consummation of a plan of reorganization of Delphi or the sale of Delphi's assets.

6.     In addition to the above referenced fees, to date, Evercore has received prepetition fees in the amount of $30.1 million, including monthly fees of approximately $8 million, a $10 million Forward Restructuring Fee, a $6 million Fairness Opinion Fee and $6 million related to the Delphi Bankruptcy Case.  Certain of these fees are creditable against the Restructuring Fee and the NewCo Transaction Fee as noted above.  Evercore is eligible to receive the Restructuring and Sale Fees or a NewCo Transaction fee, but not both.

7.     The Committee estimates that in the event the NewCo Transaction is consummated, Evercore's postpetition compensation would range between $18.7 million and $31.6 million.  Once prepetition fees are included, the total fees to be paid to Evercore upon a NewCo Transaction would be between $48.8 million and $61.7 million.[5]

---

[3] Paragraph 7(f) of the Application defines NewCo as "Vehicle Acquisition Holdings LLC", while section 1(f) of the Engagement Letter defines NewCo as "Auto Acquisition LLC."  We assume this was a mistake which will be corrected.

[4] The Opinion Fee Credit is defined in the Engagement Letter as 50% of the Fairness Opinion Fee.

[5] The Committee's financial advisors understand that the NewCo Transaction fee could be capped at approximately $19 million, depending on how many Monthly Fees are accrued in advance of the consummation of the proposed 363 sale.

KL2 2609204.5

8.      In the event that the Restructuring Fee and Sale Fee are to be paid, Evercore could

recover postpetition compensation between $23.5 million and $54.6 million, depending on the

aggregate consideration paid for the assets sold and the duration of engagement.  The high range

assumes the sale of $30 billion of assets (in the event the NewCo Transaction does not occur).

Once prepetition fees are included, the total fees to be paid to Evercore upon a Restructuring or

Sale would be between $53.6 million and $84.7 million.

## OBJECTION

9.      The Application does not contain sufficient information to evaluate the proposed

fee structure.  Further information regarding the tasks to be performed by Evercore and the likely

benefit to the estate are required before the Court can adequately evaluate the Application,

especially pursuant to the section 328 standard of review.  The Application is replete with

generic references to the services to be provided by Evercore, but it provides no specifics as to

Evercore's role in connection with the pending sale transaction and related matters. Such

information is especially important where, as here, the filing and related transactions (including

the DIP financing) were structured and pre-approved by the government. A bankruptcy court is

not compelled to accept the professional's employment under § 328 merely because the

application cites that statutory provision. In re Circle K Corp., 279 F.3d 669, 671 (9th Cir. 2002);

see also Zolfo, Cooper & Co., v. Sunbeam-Oster Co., 50 F.3d 253, 261 (3d Cir. 1995) (a

Bankruptcy Court need not approve or reject an application as presented but may approve an

application with modified terms that the Court finds necessary to render the proposed

employment reasonable).  A bankruptcy court is free to make clear that it is only conditionally

approving the professional's retention.  Id.  "[A] bankruptcy court has an obligation to determine

the reasonableness of terms and conditions before authorizing the employment of professionals

KL2 2609204.5

5

under § 328(a) and may eliminate, modify, or impose additional terms and conditions to satisfy

the requirement of reasonableness." In re High Voltage Engineering Corp., 311 B.R. 320, 333

(Bankr. D. Mass. 2004). The determination of whether the particular proposed terms are

reasonable should be made on a case by case basis. In re Metricom, Inc., 275 B.R. 364, 371

(Bankr. N.D. Cal. 2002). The proponent of the application bears the burden of establishing that

the terms of employment are reasonable under the circumstances. In re Thermadyne Holdings

Corp., 283 B.R. 749, 756 (8th Cir. BAP 2002).

10.     As stated above, in evaluating Evercore's proposed fee structure, we must

consider the fact that the Debtors' chapter 11 cases have been structured, at the direction of the

Treasury, to provide for the sale of certain of the Debtors' assets to NewCo.  The Treasury,

following the precedent it set in In re Chrysler LLC, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y.

filed Apr. 30, 2009), pre-negotiated the Debtors' chapter 11 cases in order to ensure that the

Debtors move quickly through the bankruptcy process and emerge as a slimmed down,

delivered, standalone reorganized enterprise.  To facilitate the implementation of this quick sale

and to prevent the liquidation of the Debtors, the Treasury agreed to provide DIP financing to the

Debtors.  The Application does not provide any meaningful description of the role the Debtors'

advisors –including Evercore – played in the negotiations with the Treasury.   It is also unclear

what postpetition work remains for Evercore to perform in these cases.

11.     Although Evercore's retention application contemplates the postpetition

marketing of the Debtors' assets to third party purchasers, the Debtors' own chief executive

officer acknowledged that no such purchaser exists. See Affidavit of Frederick A. Henderson,

dated June 1, 2009 [Docket No. 21] ("**Henderson Affidavit**") at ¶¶ 14 and 82.  The Henderson

Affidavit spells it out quite clearly:

KL2 2609204.5

> It has been widely known, as well, that assets and businesses of the Company have been available for sale, yet no offers have been received at a level necessary to sustain the Company's operations and assure it viability, other than the U.S. Treasury-sponsored 363 Transaction. Indeed, in light of the Company's substantial secured indebtedness totaling approximately $27 billion, the only entity that has the financial wherewithal and is qualified to purchase the assets – and the only entity that has stepped forward to make such a purchase – is the U.S. Treasury-sponsored Purchaser.

Henderson Affidavit, at ¶14.  The Henderson Affidavit goes on to explain that "There is no other alternative [to the U.S. Treasury sponsored sale].  No other DIP financing source.  No other buyer for the business."  Henderson Affidavit at ¶82.

12.     Even the Treasury has admitted that no other party would finance this case.  The U.S. Government "will provide billions of dollars in financing that no other lender would provide, on below-market terms, in order to avoid GM's liquidation, preserve the Government's existing investment in GM, and enable an outcome that" serves stakeholders and the public at large.  Statement of the United States of America upon the Commencement of General Motors Corporation's Chapter 11 Case [Docket No. 37] at ¶26.

13.     In addition, Stephen Worth, a Managing Director with Evercore, signed a declaration in support of the proposed 363 sale stating that: "The availability of financing, or lack thereof, is a principal factor in GM's decision to pursue the 363 Sale."  Declaration of J. Stephen Worth in Support of the Proposed Sale of Debtors' Assets to Vehicle Acquisition Holdings LLC, dated May 31, 2009 [Docket No. 425] ("**Worth Declaration**") at ¶ 24.  Worth acknowledges that (a) "the fact that no bona fide potential buyers other than Vehicle Acquisition Holdings LLC have expressed an interest in acquiring GM" and (b) "that there is no alternative source to finance a restructuring for GM, either in or out of bankruptcy" were key factors

considered by the Debtors when faced with the choice between the proposed 363 sale or the

immediate liquidation of the business.  Id.[6]

14.     The Evercore fee structure must be evaluated against the factual backdrop of a

case where there was no possibility of a third party purchaser or financer other than the

government.  The fact that Evercore is the investment banker for a deal, which is viewed by the

Debtors as being the only deal, with no alternative, must be considered in connection with the

approval of the Application and the appropriate level of the completion fees.

15.     Moreover, Evercore was not successful in its efforts to find a financial sponsor to

replace the Treasury and to secure an infusion of new capital into these Debtors' estates.  The

363 sale transaction being contemplated, which provides for the Debtors' assets to be sold,

essentially to itself, was organized by the Treasury, and is being paid for with government

money.

### The Application Does Not State Clearly the Fees to be Paid to Evercore

16.     The total amount of fees that Evercore could earn in this case is not presented

clearly in the Application.  The Committee's financial advisors have discussed this ambiguity

---

[6] Evercore's mandate to secure postpetition financing is an equally hollow mandate since the Treasury is the only
entity capable of providing the level of financing necessary in these cases.  Henderson Affidavit at ¶ 15 ("There are
*no* other sources with either the financial wherewithal or willingness to provide such financing.) and ¶ 75
("Importantly, the DIP financing to be furnished by the U.S. Treasury is the only financing that is available to the
Company.  The U.S. Treasury is the *only* entity that is willing to extend DIP financing to the Company. Other efforts
to obtain such financing were unsuccessful."); see also Declaration of William C. Repko in Support of Debtors'
Proposed Debtor-In-Possession Financing Facility, dated May 31, 2009 [Docket No. 68] at ¶ 34 ("[B]ased on my
experience, the amounts in question exceed the legal lending limits of any financial institution I am aware of.  Thus,
DIP Financing of the magnitude contemplated in the DIP Motion would require an extraordinary degree of
cooperation to arrange and syndicate among a large number of financial institutions.  This, given current market
conditions, is not achievable."), ¶ 35 ("The U.S. Treasury and the EDC are the only entities that have offered to
provide the requisite debtor in possession financing, . . . [and] only in connection with GM's pursuit of the proposed
363 sale."), and ¶ 37 ("Based upon my review of the DIP Financing terms set forth in the DIP Motion, and in light
of the current market conditions and the unprecedented size of the proposed DIP Financing ... it is my opinion that
GM is unable to obtain necessary credit other than the proposed DIP Financing from the U.S. Treasury and the EDC
[and] no other alternative debtor in possession financing . . . is available to finance these Chapter 11 proceedings
. . . ").

with Evercore and understand that the maximum fee that Evercore could be entitled to in connection with the NewCo Transaction is approximately $19 million, which is premised on no more than four Monthly Fees earned in advance of the consummation of the proposed 363 sale. With fees of this magnitude, and in a case where multiple creditor constituencies stand to lose significant amounts, Evercore's fees, and the justification for how it earned such fees, should be presented clearly for review by the Court and all parties in interest.  There should be no ambiguity as to what amount of prior payments will be credited and what amount the Debtors estates will be obligated to pay, and to the extent the fees are awarded, there should be no doubt that such fees were earned.  As such, Evercore's Application should not be approved until these subjects are adequately addressed.

<u>Payment of Fees Should Be Conditioned Upon Administrative Solvency</u>

17.     Evercore's Application provides no indication as to whether its fees will be paid prior to the closing of the sale or how they will be funded (whether out of the DIP budget or the proposed "wind-down" budget, estimated at approximately $950 million).  The Committee has repeatedly expressed its concern to the Debtors and Treasury about the impact on the Debtors' estates and the unsecured creditors who are left behind after the pending section 363 sale transaction is consummated.  The Debtors' estates cannot be left administratively insolvent - there must be a viable framework to confirm a plan that pays administrative creditors and maintains the agreed upon distribution to unsecured creditors.  <u>See</u> <u>In re Gulf Coast Oil Corp.</u>, 2009 WL 361741 (Bankr. S.D. Tex. 2009).  In fact, the very sale structure created by the Debtors and Treasury <u>requires</u> that a chapter 11 plan be confirmed as the necessary vehicle to distribute the stock of New GM to the Debtors' unsecured creditors. The success of this planned distribution mechanism cannot be derailed by payment of a fee that leaves the estates unable to

KL2 2609204.5

confirm the plan. Accordingly, to the extent the Court grants the Application, or an amended version thereof, the Court should condition such award of fees on the administrative solvency of the Debtors' estates and the viability of a plan of liquidation.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For all of the reasons set forth above, the Committee respectfully requests that

Evercore's Application should not be approved until the necessary additional information and

representations are provided.

Dated: June 23, 2009
New York, New York

> **KRAMER LEVIN NAFTALIS & FRANKEL LLP**
>
> By:_____/s/ Thomas Moers Mayer_____
> Thomas Moers Mayer
> Kenneth H. Eckstein
> Robert T. Schmidt
> Adam C. Rogoff
> 1177 Avenue of the Americas
> New York, NY  10036
> (212) 715-3275
>
> *Proposed Counsel for the Official Committee of Unsecured Creditors of General Motors Corporation, et al.*

KL2 2609204.5

11