**HEARING DATE AND TIME: June 25, 2009 at 9:00 a.m. (Eastern Time)
OBJECTION DEADLINE: June 19, 2009 at 4:00 p.m. (Eastern Time)
RESPONSE DEADLINE: June 23, 2009 at 6:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                        :     Chapter 11 Case No.
:
**GENERAL MOTORS CORP.,** *et al.*,          :     09-50026 (REG)
:
Debtors.                      :     (Jointly Administered)
:
------------------------------------------------------------x

**DEBTORS' OMNIBUS RESPONSE TO THE
OBJECTIONS TO THE DEBTORS' MOTION FOR AN ORDER
(i)  AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING;
(ii) GRANTING SUPERPRIORITY CLAIMS AND LIENS;
(iii) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL;
(iv) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION
     SECURED PARTIES;
(v)  AUTHORIZING THE DEBTORS TO PREPAY CERTAIN SECURED
     OBLIGATIONS IN FULL; AND
(vi) SCHEDULING A FINAL HEARING.**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("**GM**") and its affiliated debtors, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for

their response to the objections to the Debtors' Motion for Entry of an Order Pursuant to 11

U.S.C. §§ 361, 362, 363, and 364 (i) Authorizing the Debtors to Obtain Postpetition Financing,

Including on an Immediate, Interim Basis; (ii) Granting Superpriority Claims and Liens; (iii) Authorizing the Debtors to Use Cash Collateral; (iv) Granting Adequate Protection to Certain Prepetition Secured Parties; (v) Authorizing the Debtors to Prepay Certain Secured Obligations in Full Within 45 Days; and (vi) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 64] (the "**DIP Motion**"),[1] dated June 1, 2009, respectfully represent:

## Relief Requested

1.  On June 2, 2009, the Court entered an interim order [Docket No. 292] granting the relief set forth in the DIP Motion on an interim basis and scheduling a final hearing on the Motion for June 25, 2009 at 9:00 a.m.

2.  No party has objected generally to the Debtors' proposed DIP Facility. Certain parties have filed objections of limited scope or that seek clarification of specific issues, that may be summarized as follows –

    (a) the following objections relating to tax liens (together, the "**Tax Lien Objections**"):

    (i) the objection of the Wayne County Treasurer, the Oakland County Treasurer and the City of Detroit to the DIP Motion (the "**Detroit Objection**") [Doc. No. 971],

    (ii) the objection of the City of Lansing to the DIP Motion (the "**Lansing Objection**") [Doc. No. 1194], and

    (iii) the objection of Delta Township to the DIP Motion and related motions (the "**Delta Objection**") [Doc. No. 1199];

    (b) the objection of LBA Realty Fund III – Company IX, LLC and Pru/SKS Brannan Associates LLC to the DIP Motion (the "**Landlord Objection**") [Doc. No. 2067];

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

      (c) the objection of Deutsche Bank AG ("**Deutsche Bank**") to the DIP Motion (the "**Deutsche Bank Objection**") [Doc. No. 2031]; and

      (d) the objection of NCR Corporation to the DIP Motion (the "**NCR Objection**") [Doc. No. 2015].

**The Modifications to the Proposed Final**
**DIP Order Address the Tax Lien Objections**

3.    The Tax Lien Objections seek to protect the priority of liens the objecting parties assert or have the right to assert for personal and real property taxes. Detroit Objection at ¶¶ 12, 29-31; Lansing Objection at ¶¶ 11-12; Delta Objection at ¶¶ 6-7.

4.    In order to address this issue, the Final DIP Order has been modified to provide that:

> . . . <u>except to the extent otherwise required by law</u>, the liens granted pursuant to [the Final DIP Order] shall not be subject or subordinate to any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any of the Debtors;

Final DIP Order at ¶ (iv)(A) (emphasis added).

5.    Accordingly, to the extent applicable law protects the priority of the relevant state and local tax liens, the Final DIP Order will not interfere or cause an incongruous result.

**The Modifications to the Proposed Final**
**DIP Order Address the Landlord Objection**

6.    The Landlord Objection alleges that any encumbrance of the Debtors' leasehold interests pursuant to the Final DIP Order and the DIP Facility is prohibited by the relevant leases and therefore violates section 365(d)(3) of the Bankruptcy Code. Landlord Objection at ¶ 9.

7. Although the Debtors do not agree with this argument, the parties to the DIP Facility have agreed to carve out the relevant leasehold interests from the assets encumbered under the Final DIP Order and DIP Facility, and the proposed Final DIP Order will be modified accordingly.

**The Deutsche Bank Objection Does
Not Represent a Valid Objection to the DIP**

8. The Deutsche Bank Objection seeks clarification regarding whether proceeds of the DIP Facility will be used to repay certain Hedging Obligations. This is not an objection to the relief requested in the DIP Motion. Indeed, Deutsche Bank does not object to the Debtors' entry into the DIP Facility, the granting of liens under the Final DIP Order, or the request for authority to prepay certain secured obligations in full. Instead, Deutsche Bank is seeking to have its obligations paid pursuant to the Final DIP Order.

9. The bulk of the Deutsche Bank Objection is devoted to a detailed discussion of setoff rights under various commodities agreements. The discussion is completely irrelevant to the DIP Motion. In any case, the Debtors have not asserted that they are setting off obligations under the two commodities agreements. They have simply asked Deutsche Bank, several times, for more information regarding the "additional claims" that Deutsche Bank asserts it holds against the Debtors (Deutsche Bank Objection at ¶ 9) to determine whether Deutsche Bank has a valid basis under section 553 of the Bankruptcy Code to set off the obligation it indisputably owes to the Debtors. To date, Deutsche Bank has not provided any written documentation on this additional claim.

10. The Deutsche Bank Objection does not constitute a proper objection to the DIP Motion, and entry of the Final DIP Order will not impair any right Deutsche Bank may have with respect to its Hedging Obligation or its alleged setoff rights.

**NCR Does Not Have a Secured**
**Claim Nor Does a Constructive Trust Exist**

11. NCR Corporation objects to the DIP Motion on the basis that GM holds certain funds for the benefit of NCR as an express trustee, a constructive trustee, or a bailee. NCR's objection should be overruled in its entirety because it does not allege facts sufficient to demonstrate the existence of a bailment or an express or constructive trust.

12. NCR's objection is premised on a 2007 Settlement Agreement between GM and NCR whereby GM agreed to pay up to $1,820,260.85 in response costs assessed against NCR for cleanup of the North Sanitary Landfill Superfund Site in Dayton, Ohio ("**Site**"). GM agreed to pay these funds to settle certain litigation. No funds were ever transferred from NCR to GM in connection with the Settlement Agreement; GM merely agreed to pay, from GM's own funds, NCR's share of the liability at the Site up to a predetermined amount. Nowhere in the terms of the Settlement Agreement is a provision made for an express trust or bailment and no such trust or bailment exists. As such, NCR's objection must be overruled.

13. Courts in the Second Circuit look to the law in the state where the property is located to determine whether to impose a trust on property within the debtor's possession. *In re Howard's Appliance Corp.*, 874 F.2d 88, 93-94 (2d Cir. 1989). Under Michigan law a constructive trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment. *Kammer Asphalt Paving Co. v. East China Township Sch.*, 443 Mich. 176 (Mich. 1993). "Hence, such a trust may be imposed when property has been obtained through fraud,

misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . ." *Id.* at 188.  NCR does not allege, nor can it, that GM obtained any property from NCR, much less through fraud, misrepresentation, or any similar mechanism.  In fact, NCR has not even alleged that GM obtained any property from NCR.

14. Moreover, even if NCR transferred funds to GM, courts in the Second Circuit have been reluctant to impose a constructive trust in the bankruptcy context without a substantial reason to do so.  Second Circuit courts have acknowledged that a constructive trust creates "a separate allocation mechanism outside the scope of the bankruptcy system" that can "wreak . . . havoc with the priority system ordained by the Bankruptcy Code." *In re First Central Financial Corp.*, 377 F.3d 209, 218 (2d Cir. 2004).  The Second Circuit has noted that while "constructive trusts must be determined under state law, . . . it is important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the equities of bankruptcy are not the equities of the common law." *Id.*  In *In re Ades and Berg Group Investors*, 550 F.3d 240, 243 (2d Cir. 2008), the Second Circuit ultimately concluded that the plaintiffs could not satisfy the unjust enrichment element required for a constructive trust as "retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust" and "there is no inequity in treating [plaintiffs] in the same manner as any other depositor/creditor who was unfortunate enough to have placed its money with the Debtor."  550 F.3d at 245.

15. NCR has not and cannot establish any basis for a constructive trust or bailment, and, accordingly, its objection must be overruled.

WHEREFORE the Debtors respectfully request the Court (i) overrule the objections to the DIP Motion to the extent not resolved and deny any and all relief requested therein, (ii) grant the DIP motion and enter the proposed Final DIP Order, and (iii) grant the Debtors such other and further relief as is just.

Dated: New York, New York
June 23, 2009

*/s/ Stephen Karotkin*
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession