Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

    and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone:  (804) 749-8861
Facsimile:  (804) 749-8862

Co-Counsel for Duke Energy Indiana, Inc., Duke Energy Ohio, Inc., Duke Energy Kentucky, Inc., Duke Energy Carolinas, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
In re:                                                       :  Chapter 11
                                                             :
GENERAL MOTORS CORP., et al.,                                :  Case No. 09-50026 (REG)
                                                             :
                      Debtors.        :  (Jointly Administered)
                                                             :
-------------------------------------------------------------x

DECLARATION OF FRANK VIA IN SUPPORT OF OBJECTION OF CERTAIN
UTILITY COMPANIES TO MOTION OF DEBTORS FOR ENTRY OF ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS'
PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT,
(II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS
BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES
FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE

I, Frank Via, declare as follows:

    1.    I am the Senior Business Operations Analyst for Duke Energy Business Services

("Duke") and have been in that position for 3 years and with Duke for 26 years. In my position as a Senior Business Operations Analyst for Duke, I assist in the credit and bankruptcy operations of Duke Energy Indiana, Inc. ("DEI"), Duke Energy Ohio, Inc. ("Duke Ohio"), Duke Energy Kentucky, Inc. ("DEK"), and Duke Energy Carolinas, LLC ("DEC") (collectively, the "Duke Entities").

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, my review of the Duke Entities' business documents, correspondence and relevant documents, or my opinion based upon my experience concerning the operations of the Duke Entities. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. On behalf of DEI, Duke Ohio, DEK and DEC, I submit this Declaration in support of the *Objection Of Certain Utility Companies To Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Objection").

4. In making this Declaration, I am familiar with the contents of the Objection and the *Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service*. Accordingly, I am aware of the Debtors' offer to provide their utilities with a two-week deposit.

5. It is part of my job responsibility with Duke to: (A) review customer's accounts with the Duke Entities; (B) address credit issues with the Duke Entities' customers; and (C) address issues concerning customers that file for bankruptcy protection, including requests for adequate assurance of payment.

6. DEI's relationship with the Debtors is governed by the *Schedule Of Rates, Terms And Conditions Originated With Cause No. 42359 For Electric Service* which are on file with the Indiana Utility Regulatory Commission and can be obtained at http://www.duke-energy.com/rates/indiana/tariff.asp. (the "DEI Tariffs").

7. Duke Ohio's relationship with the Debtors is governed by the *Schedule Of Rates, Classifications Rules And Regulations For Retail Electric Service Of Duke Energy Ohio* and the *Schedule Of Rates, Classifications Rules And Regulations For Gas Service Of Duke Energy Ohio* which are on file with the Public Utilities Commission of Ohio and can be obtained at http://www.duke-energy.com/rates/ohio/electric.asp and http://www.duke-energy.com/rates/ohio/gas.asp. (the "Duke Ohio Tariffs").

8. DEK's relationship with the Debtors is governed by the *Schedule Of Rates, Classifications Rules And Regulations For Electric Service Of Duke Energy Kentucky, Inc.* and the *Rates, Rules And Regulations For Furnishing Gas Service* which are on file with the Kentucky Public Service Commission and can be obtained at http://www.duke-energy.com/rates/kentucky/electric.asp and http://www.duke-energy.com/rates/kentucky/gas.asp. (the "DEK Tariffs").

9. DEC's relationship with the Debtors is governed by the Commission Rules and Regulations of the North Carolina Utilities Commission (available at http://www.ncuc.commerce.state.nc.us/ncrules/rulstoc.htm) (the "DEC Regulations").

10.     The DEI Tariffs establish the billing and payment terms for all of DEI's approximately 775,000 customers. Specifically, under the billing cycle established by the DEI Tariffs, DEI issues bills to its customers on a monthly basis. Accordingly, the Debtors, like DEI's other customers, receive approximately one month of utility service before DEI issues a bill for such service. Once a bill is issued, the Debtors have 21 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued with the next invoice and a late fee is subsequently imposed on the account. If the Debtors fail to pay the bill after the issuance of the past due notice, DEI issues a notice that informs the Debtors that they have 10 days to cure the default or their service will be disconnected. Accordingly, under DEI's billing cycles, the Debtors could receive 2 months of unpaid service before their service could be terminated for a post-petition payment default.

11.     The Duke Ohio Tariffs establish the billing and payment terms for all of Duke Ohio's approximately 690,000 electric and 425,000 gas customers. Specifically, under the billing cycle established by the Duke Ohio Tariffs, Duke Ohio issues bills to its customers on a monthly basis. Accordingly, the Debtors, like Duke Ohio's other customers, receive approximately one month of utility service before Duke Ohio issues a bill for such service. Once a bill is issued, the Debtors have 21 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued with the next invoice and a late fee is subsequently imposed on the account. If the Debtors fail to pay the bill after the issuance of the past due notice, Duke Ohio issues a notice that informs the Debtors that they have 10 days to cure the default or their service will be disconnected. Accordingly, under Duke Ohio's billing cycles, the Debtors could receive 2 months of unpaid service before their service could be terminated for a post-petition payment default.

12. The DEK Tariffs establish the billing and payment terms for all of DEK's approximately 135,000 electric and 95,000 gas customers. Specifically, under the billing cycle established by the DEK Tariffs, DEK issues bills to its customers on a monthly basis. Accordingly, the Debtors, like DEK's other customers, receive approximately one month of utility service before DEK issues a bill for such service. Once a bill is issued, the Debtors have 21 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued with the next invoice and a late fee is subsequently imposed on the account. If the Debtors fail to pay the bill after the issuance of the past due notice, DEK issues a notice that informs the Debtors that they have 10 days to cure the default or their service will be disconnected. Accordingly, under DEK's billing cycles, the Debtors could receive 2 months of unpaid service before their service could be terminated for a post-petition payment default.

13. The DEC Regulations establish the billing and payment terms for all of DEC's approximately 2,400,000 customers. Specifically, under the billing cycle established by the DEC Regulations, DEC must issue bills to its customers on a periodic basis, which DEC accomplishes by billing its customers on a monthly basis. Rule R8-8 of the Regulations. Accordingly, the Debtors, like DEC's other customers, receive approximately one month of utility service before DEC issues a bill for such service. Once a bill is issued, the Debtors have 15 days from the bill date to pay the applicable bill. Rule R12-9 of the Regulations. If the Debtors fail to timely pay the bill, a late fee is imposed on the account 25 days from the bill date. Rule R12-9 of the Regulations. If the Debtors fail to pay a bill by the due date, a past due notice is issued 30 days from the bill date and another notice issued 15 days thereafter that provides the Debtors with 7 days to cure the payment default [Rule R8-20 only requires DEC to provide 24 hours notice]. Accordingly, under DEC's billing cycles, the Debtors could receive 2 months of unpaid service

before their service could be terminated for a post-petition payment default.

14. DEI, Duke Ohio, DEK and DEC provided the Debtors with utility goods and services prior to the petition date of June 1, 2009.

15. DEI, Duke Ohio and DEK continue to provide post-petition utility goods and services to the Debtors at the Debtors' accounts that are listed on the chart attached to this Declaration as **Exhibit A**.

16. DEC continues to provide post-petition utility goods and services to the Debtors at the following locations:

    A. Acct# 3648883, 10815 Quality Dr Unit # 2 Charlotte, NC 28201
        i. Estimated prepetition debt $30,000;
        ii. Two-month post-petition deposit request - $26,050
    B. Acct# 3648831, 10815 Quality Dr Unit # 1 Charlotte, NC 28201
        i. Estimated Prepetition debt $25,000
        ii. Two-month post-petition deposit request - $14,410

17. Pursuant to their respective Tariffs and/or Regulations, DEI, Duke Ohio, DEK and DEC are entitled to seek adequate assurance of payment from the Debtors in the form of two-month cash deposits in the following amounts:

    A. DEI -- $755,760.00
    B. Duke Ohio -- $119,220.00
    B. DEK -- $10,675.00
    C. DEC -- $40,460.00

18. Pursuant to their respective Tariffs, DEI, Duke Ohio, DEK and DEC seek adequate assurance of payment from the Debtors in the form of a two-month cash deposit in the amounts set forth herein.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23 day of June 2009, at Charlotte, North Carolina.

*Frank E Via Jr*
Frank Via