Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862

*Co-Counsel for American Electric Power*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
In re:                                  : Chapter 11
                                        :
GENERAL MOTORS CORP., et al.,           : Case No. 09-50026 (REG)
                                        :
                       Debtors.         : (Jointly Administered)
                                        :
------------------------------------------------------x

**DECLARATION OF GREGORY T. HOLLAND IN SUPPORT OF OBJECTION OF CERTAIN UTILITY COMPANIES TO MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

I, Gregory T. Holland, declare as follows:

1. I am the Manager of Credit and Collections, for American Electric Power ("AEP") and have been in that position for 9 years and with AEP for 24 years. In my position as Manager of Credit and Collections for AEP, I assist in the credit and bankruptcy operations of Indiana/Michigan Power Company ("IMPC"), Columbus Southern Power Company ("CSPC") and Southwestern Electric Power Company ("SWEPCO") (collectively, the "AEP Entities").

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, my review of the AEP Entities' business documents, correspondence and relevant documents, or my opinion based upon my experience concerning the operations of the AEP Entities. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. On behalf of IMPC, CSPC and SWEPCO, I submit this Declaration in support of the *Objection Of Certain Utility Companies To Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Objection").

4. In making this Declaration, I am familiar with the contents of the Objection and the *Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Utility Motion"). Accordingly, I am aware of the Debtors' offer to provide their utilities with a two-week deposit.

5. It is part of my job responsibility with AEP to: (A) review customer's accounts with the AEP Entities; (B) address credit issues with the AEP Entities' customers; and (C)

address issues concerning customers that file for bankruptcy protection, including requests for adequate assurance of payment.

6. IMPC's relationship with the Debtors is governed by the *Schedule Of Tariffs And Terms And Conditions Of Service Governing Sale Of Electricity In The State Of Indiana* which are on file with the Indiana Utility Regulatory Commission and can be obtained at https://www.indianamichiganpower.com/global/utilities/tariffs/Indiana/IM-IN-TB-4-08-09.pdf (the "IMPC Tariffs").

7. CSPC's relationship with the Debtors is governed by the *Columbus Southern Power Company P.U.C.O. No. 7 Terms And Conditions Of Service – Unbundled Standard* and the *Columbus Southern Power Company P.U.C.O. No. 7 Terms And Conditions Of Open Access Distribution Service* which are on file with the Public Utilities Commission of Ohio and can be obtained at https://www.aepohio.com/global/utilities/tariffs/Ohio/2009-04-01-CSP-Standard-TariffNo7.pdf and https://www.aepohio.com/global/utilities/tariffs/Ohio/2009-04-01-CSP-OAD-TariffNo7.pdf (the "CSPC Tariffs").

8. SWEPCO's relationship with the Debtors is governed by the *Southwestern Electric Power Company Tariff For Electric Service* which are on file with the Louisiana Public Service Commission and can be obtained at https://www.swepco.com/global/utilities/tariffs/Louisiana/LouisianaA_07_03_2008.pdf and https://www.swepco.com/global/utilities/tariffs/Louisiana/LouisianaB_03_03_2009.pdf (the "SWEPCO Tariffs").

9. The IMPC Tariffs establish the billing and payment terms for all of IMPC's 580,970 customers. Specifically, under the billing cycle established by the IMPC Tariffs and Terms and Conditions of Service, IMPC can only issue bills to its customers on a monthly basis.

Accordingly, the Debtors, like IMPC's other customers, receive approximately one month of utility service before IMPC issues a bill for such service. Once a bill is issued, the Debtors have 17 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued with the next monthly invoice, a late fee is subsequently imposed on the account and the Debtors have 14 days to cure the default or their service will be disconnected. Accordingly, under IMPC's billing cycles, the Debtors could receive 2 months of unpaid service before their service could be terminated for a post-petition payment default.

10.   The CSPC Tariffs establish the billing and payment terms for all of CSPC's 1,497,707 customers. Specifically, under the billing cycle established by the CSPC Tariffs and Terms and Conditions of Service, CSPC can only issue bills to its customers on a monthly basis. Accordingly, the Debtors, like CSPC's other customers, receive approximately one month of utility service before CSPC issues a bill for such service. Once a bill is issued, the Debtors have 21 days to pay the applicable bill. If the Debtors fail to timely pay the bill, a past due notice is issued with the next monthly invoice, a late fee is subsequently imposed on the account and the Debtors have 7 days to cure the default or their service will be disconnected. Accordingly, under CSPC's billing cycles, the Debtors could receive 2 months of unpaid service before their service could be terminated for a post-petition payment default.

11.   The SWEPCO Tariffs establish the billing and payment terms for all of SWEPCO's 475,954 customers. Specifically, under the billing cycle established by the SWEPCO Tariffs and Terms and Conditions of Service, SWEPCO can only issue bills to its customers on a monthly basis. Accordingly, the Debtors, like SWEPCO's other customers, receive approximately one month of utility service before SWEPCO issues a bill for such service. Once a bill is issued, the Debtors have 20 days to pay the applicable bill. If the Debtors fail to

timely pay the bill, a past due notice is issued with the next monthly invoice, a late fee is subsequently imposed on the account and the Debtors have 7 days to cure the default or their service will be disconnected. Accordingly, under SWEPCO's billing cycles, the Debtors could receive 2 months of unpaid service before their service could be terminated for a post-petition payment default.

12.    IMPC, CSPC and SWEPCO provided the Debtors with utility goods and services prior to the petition date of June 1, 2009.

13.    IMPC, CSPC and SWEPCO continue to provide post-petition utility goods and services to the Debtors at the Debtors' accounts that are listed on the chart attached to this Declaration as **Exhibit A**.

14.    Pursuant to their respective Tariffs, IMPC, CSPC and SWEPCO are entitled to seek adequate assurance of payment from the Debtors in the form of two-month cash deposits in the following amounts:

    A.    IMPC -- $473,852.00

    B.    CSPC -- $59,042.00

    C.    SWEPCO -- $1,265,170.00

15.    As set forth, in part, within paragraph 48 of the Objection and as more fully identified in **Exhibit A**, IMPC held a prepetition cash deposit in the amount of $589.05 and a Irrevocable Bank Letter of Credit in the amount of $420,000.00 on the Debtors' prepetition accounts, and SWEPCO held an Irrevocable Bank Letter of Credit in the amount of $850,000.00 on the Debtors' prepetition accounts. These AEP Entities shall apply the cash deposit and/or make demands under each ILOC to recover payment of the Debtors' prepetition debts to IMPC and to SWEPCO in the approximate amounts of $321,389.71 and $519,142.06, respectively.

16. Pursuant to their respective Tariffs, IMPC, CSPC and SWEPCO seek adequate assurance of payment from the Debtors in the form of a two-month cash deposit in the amounts set forth herein.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23rd day of June 2009, at Roanoke, Virginia.

Gregory T. Holland