**Objection Deadline**: June 23, 2009 (extended by consent)
**Hearing Date**: TBD

**BROWN & CONNERY LLP**
Kenneth J. Schweiker, Jr., Esquire (KS1889)
6 North Broad Street
Woodbury, NJ 08096
(856) 812-8900
(856) 853-9933 FAX
kschweiker@brownconnery.com
*Attorneys for SAP America, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **GENERAL MOTORS CORP.,** *et al.*, | **Case No.: 09-50026 (REG)** |
| Debtors. | **(Jointly Administered)** |

**OBJECTION OF SAP AMERICA, INC. TO THE
DEBTORS' ASSUMPTION AND ASSIGNMENT OF ITS EXECUTORY
CONTRACT(S) AND THE PROPOSED CURE AMOUNT**

SAP America, Inc. ("SAP"), by and through its undersigned counsel, objects to the assumption and assignment of its executory contract(s) and the proposed cure amount, and respectfully states as follows:

**Background**

*The Bankruptcy*

1. On June 1, 2009 (the "Petition Date"), General Motors Corporation ("GM") and certain of its affiliates (collectively, the "Debtors") commenced these voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Included in the Debtors' "first day motions" was a motion [Docket No. 92] (the "Motion") by which the Debtors sought, among other things, authorization and approval of (a)

the sale of substantially all of the Debtors' assets to Vehicle Acquisition Holdings LLC (the "Purchaser") through a sale under Section 363 of the Bankruptcy Code (the "363 Transaction"); (b) certain bid procedures governing the sale process and providing procedures for the submission of any competing bids; (c) the assumption and assignment of certain executory contracts and unexpired leases to the Purchaser in connection with the 363 Transaction; and (d) the scheduling of a final hearing on the Motion and other relief requested therein.

2. On June 2, 2009, this Court entered an order [Docket No. 274] (the "Sale Procedures Order") approving the Motion. The Sales Procedures Order sets forth notice and dispute resolution procedures regarding the Debtors' assumption and assignment of executory contracts, which, in summary, provide that a notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto[1] (the "Notice") be sent to all parties to executory contracts and unexpired leases that the Debtors anticipated assuming and assigning to the Purchaser within three (3) days of entry of the Sales Procedures Order. The Notice did not contain a schedule of executory contracts and leases but, rather, directed the applicable counterparty to a confidential website, www.contractnotices.com (the "Cure Notice Website"), maintained by the Debtors, which contained summary information on the contracts to be assumed and assigned, and the Debtors' belief as to the amount necessary to cure any pre-petition defaults under the applicable contracts.

3. On or about June 10, 2009, SAP received the Notice containing a user identification code, password and vendor identification number for access to the Cure Notice Website. The information contained on the Cure Notice Website was not sufficient to allow SAP to determine (i) which contract(s) the Debtors intended to assume and assign and (ii) alleged cure amounts related to the contract(s).

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings defined in the Notice.

2

4. SAP's counsel contacted the telephone support number contained in the Notice and logged an incident report with the representative, who advised that information was being updated regularly and to continue to check the Cure Notice Website. To date, the information has not been updated.

5. SAP does not consent to the Debtors' assumption and/or assignment of any of its contracts at this time.

*The Software License Agreement*

6. On March 31, 2003, GM and SAP entered into a certain agreement entitled "Software End-User License Agreement." That agreement and any related agreements, schedules and appendices and amendments thereto are referred to herein as the "License Agreement."

7. Pursuant to the terms and conditions of the License Agreement, SAP granted GM a non-exclusive license to use the Software (all capitalized terms not herein defined are used as defined in the License Agreement) upon terms and conditions set forth in the License Agreement.

8. No rights of ownership in the Software were transferred to GM or any of its affiliates under the License Agreement. SAP retains ownership of the Software. See In re Patient Education Media, Inc., 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997).

9. The License Agreement is an executory contract. See In re Valley Media, Inc., 279 B.R. 105, 135 (Bankr. D. Del. 2002); In re Golden Books, 269 B.R. 300, 308 (Bankr. D. Del. 2001).

10. The Software licensed to GM under the terms of the License Agreement is copyrighted pursuant to the copyright laws of the United States, 17 U.S.C. §§ 101 et seq.

11. Federal copyright law is designed to protect the limited monopoly of copyright owners and it grants the owner of the copyright the exclusive right to exploit the copyrighted work and to restrict the unauthorized use of the copyrighted works. See In re Patient Education Media, Inc., 210 B.R. at 242.

**Objection to the Assumption and
Assignment of the License Agreement**

12. Pursuant to the Motion and the Notice, the Debtors seek to assume various contracts, including, it appears, the License Agreement, and assign them to the Purchaser.

13. Pursuant to § 365(c)(1) of the Bankruptcy Code, a debtor in possession may not assume or assign an executory contract if applicable law excuses the non-debtor party from accepting performance from someone other than the debtor in possession and the non-debtor party does not consent to such assumption or assignment. 11 U.S.C. § 365; see also In re West Electronics, Inc., 852 F.2d 79, 83 (3d Cir. 1998).

14. Under applicable federal copyright law, a non-exclusive license of copyright rights such as the License Agreement is not assignable without permission of the copyright owner. See In re Valley Media, Inc., 279 B.R. at 135-36; In re Golden Books, 269 B.R. at 309; In re Sunterra Corp., 361 F.3d 257, 262 (4th Cir. 2004); In re Catapult, 165 F.3d. 747, 750 (9th Cir. 1999). As such, pursuant to § 365(c)(1) of the Bankruptcy Code, the License Agreement may not be assumed and assigned without the consent of SAP.

15. SAP has not given the consent required by 11 U.S.C. § 365(c)(1) for the assumption and assignment of the License Agreement or any other SAP contract. SAP objects to the Debtors' assumption and assignment of the License Agreement or any other SAP contract, and it reserves all rights in that regard.

**Objection to Stated Cure Amount
Under the License Agreement**

16. Pursuant to Section 365(b)(1) of the Bankruptcy Code, a debtor seeking to assume and assign an executory contract must (1) cure, or provide adequate assurance that it will promptly cure, all defaults under the contract, (2) compensate the counterparty to the contract for any pecuniary loss to such party resulting from any defaults under the contract, and (3) provide the counterparty to the contract with adequate assurance of future performance under the contract. See 11 U.S.C. § 365(b)(1); In re Morande Enterprises, Inc., 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005).

17.     A cure under Section 365(b)(1) of the Bankruptcy Code means that all unpaid amounts due under the contract have been paid. See In re Network Access Solutions, Corp., 330 B.R. 67, 76 (Bankr. D. Del. 2005); see also In re Superior Toy & Manufacturing Co., Inc., 78 F. 3d 1169 (7th Cir. 1996) ("[T]he language of §365(b)(1) is unequivocal.  A party to an executory contract must be paid all amounts due him under the contract before the contract may be assumed.").

18.     SAP objects to the lack of any stated cure amount for the License Agreement or any other SAP contract as set forth on the Cure Notice Website.

19.     On June 18, 2009, the Debtors' counsel advised that the Cure Notice Website only contains pre-petition amounts that were owing to SAP and that the Debtors' accounts payable system reflected that the pre-petition amount is zero.

20.     The Debtors' records are inaccurate as there are substantial pre-petition and post-petition defaults arising under the License Agreement that must be cured as a condition to the assumption and assignment of the License Agreement by GM to the Purchaser.

21.     The cure amount for the License Agreement is in excess of $8,100,000.00, exclusive of attorneys' fees and costs.  SAP is still in the process of reviewing the Debtors' account(s) and determining the precise cure amount for the License Agreement.  SAP will supplement this objection when the information becomes available.

22.     SAP also reserves the right to supplement this objection if SAP discovers any further amounts due and owing.

**WHEREFORE,** SAP America, Inc. respectfully requests that this Court (i) deny the Motion to the extent that the Debtors seeks authorization to assume and assign SAP's License Agreement, or any other SAP contract, without its consent, (ii) order that the cure amount for License Agreement be set at an amount to be determined, but in no event less than $8,100,000.00, and (iii) grant such other relief as it may deem appropriate.

Dated: June 23, 2009

                **BROWN & CONNERY, LLP**
                Attorneys for SAP America, Inc.


BY:*/s/ **Kenneth J. Schweiker, Jr.***
      Kenneth J. Schweiker, Jr. (KS1889)
      6 North Broad St., Suite 100
      Woodbury, NJ 08096
      (856) 812-8900
      (856) 853-9933 (facsimile)
      kschweiker@brownconnery.com