Sale Motion Hearing Date: June 30, 2009 at 9:45 a.m.
Sale Motion Objection Deadline: June 19, 2009 at 5:00 p.m.

OFFICE OF THE COLORADO ATTORNEY GENERAL
James B. Holden
Assistant Attorney General
1525 Sherman Street, 7th Floor
Denver, Colorado 80203
Telephone: (303) 866-5198
Facsimile: (303) 866-5395
E-Mail: james.holden@state.co.us



UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| General Motors Corp., et al. | ) | Case No. 09-50026 (REG) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Honorable Robert E. Gerber |

## COLORADO MOTOR VEHICLE DEALER BOARD'S LIMITED OBJECTION TO DEBTORS' SALE MOTION

The State of Colorado, on behalf of Roxy Huber, as Executive Director of the Colorado Motor Vehicle Dealer Board ("the Board"), by and through John W. Suthers, Attorney General, objects as follows to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (a) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Other Relief; and (II) Schedule Sale Approval Hearing (the "Sale Motion," Docket No. 92). The following is stated in support of this Objection:

1. The State of Colorado, acting through its Attorney General, has joined with numerous other States in filing a limited objection which addresses a range of issues associated with the proposed sale. The Board files this short separate objection, in addition to and not in lieu of other objections filed by the State of Colorado, to focus in particular on that portion of the Sale Motion providing for the assumption and assignment of contracts with Colorado automobile dealers.

2. The Debtors are given ample powers under the Bankruptcy Code to assume and assign contracts between the Debtors and automobile dealers. Unfortunately, the Debtors are overreaching, first by coercing dealers to agree to pre-assumption modifications of their dealer agreements in contravention of Colorado law, and second by attempting to interfere with the Board's post-sale regulation of automobile dealers and manufacturers.

**Pre-Assumption Modifications**

3. The Board does not object to the assumption and assignment of the Debtors' sales and service agreements as they existed at the time of the bankruptcy filing. Section 365 of the Bankruptcy Code permits a debtor to assume or reject executory contracts and unexpired leases, but "[i]t is well-settled that a debtor cannot assume part of an unexpired lease while rejecting another part; the debtor must assume the lease *in toto* with both the benefits and burdens intact." *In re S.E. Nichols, Inc.*, 120 B.R. 745 (Bankr. S.D.N.Y. 1990). A contract is assumed "in the same shape as it existed prior to bankruptcy, with all of its benefits and burdens. An executory contract cannot be rejected in part and assumed in part. That is, the debtor or trustee is not free to retain the

2

favorable features of a contract and reject the unfavorable ones." *Matter of Village Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992); citations omitted.

4. The Debtors have attempted to alter that basic principle of contract assumption by requiring dealers to agree to very substantial and detrimental modifications to their existing agreements prior to assumption and assignment.

5. Because contracts must be assumed or rejected *cum onere*, modifications to the contracts necessarily are occurring outside the scope of Section 365, and those modifications are subject to other applicable law which is not pre-empted by the Bankruptcy Code.

6. Section 12-6-120(1), Colorado Revised Statutes ("C.R.S.") provides that "It shall be unlawful ... for any manufacturer, distributor, or manufacturer representative: ... (b) To coerce or attempt to coerce any motor vehicle dealer ... to enter into any agreement with a manufacturer or distributor that would be financially detrimental to the dealer or impair the dealer's goodwill, by threatening to cancel or not renew any franchise between a manufacturer or distributor and said dealer." "Franchise" is not a defined term, but is used throughout Colorado's automobile dealer statutes and is generally understood to "include the relationship between a manufacturer and a motor vehicle dealer." Section 12-6-120.5(3)(a), C.R.S.

7. 28 U.S.C. § 959(b) provides that "a debtor in possession ... shall manage and operate the property in [its] possession ... according to the requirements of the valid laws of the State in which such property is situated ...." Accordingly, the Debtors do not

3

have the right to violate Colorado law while operating as debtors in possession, and that includes coercing amendments to existing dealer contracts under threat of cancellation.

8. To the extent that state law makes it unlawful to coerce dealer agreements under threat of cancellation, the Debtors' Sale Motion contemplates the assumption of agreements that have been illegally modified. Through their overreaching, the Debtors have managed to taint their request for contract assumption and assignment, asking this Court to find that the transfer of the Assumable Executory Contracts "will be a legal, valid, and effective transfer" (Paragraph T of the proposed sale order), and that such contracts, including the Participation Agreements, shall "remain in full force and effect for the benefit of the Purchaser" (Paragraph 21 of the proposed order).

9. The Court either should decline to approve the assumption of dealer contracts as modified by the Participation Agreements, or should reserve to the States the power to determine whether such pre-assumption modifications violate state law.

## Interference with the Board's Post-Sale Regulation of Automobile Dealers and Manufacturers

10. The Board also is concerned about efforts by the Debtor to insulate the purchaser from ongoing regulation by Colorado and other states. For example, Paragraph 8 of the proposed sale order purports to permanently enjoin all governmental and regulatory authorities from asserting "any claims ... and other interests" against the Purchaser. Paragraph 20 of the proposed order purports to assume and assign dealer contracts to the Purchaser "free and clear of all ... claims ... or other interests of any kind

or nature whatsoever." Paragraph 28 of the proposed order "forever" prohibits and enjoins "all persons and entities" from "commencing ... in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser" with respect to various matters including "revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such assets."

11. Section 12-6-105(1), C.R.S. charges the Executive Director of the Colorado Motor Vehicle Dealer Board with the administration, enforcement, and issuance or denial of motor vehicle manufacturers' licenses; disputes are heard under the Colorado Administrative Procedures Act. Subsection (1)(c) permits the Director "to issue and, for reasonable cause shown ... to refuse to issue to any applicant any license the executive director is authorized to issue." Pursuant to Section 12-6-110, C.R.S., a manufacturer's license is valid for one year from date of issuance, and then a new application is required. Licenses may be revoked or suspended pursuant to Section 12-6-104(e)(1), C.R.S., and the Board may issue cease and desist orders pursuant to Section 12-6-104(f), C.R.S. Pursuant to Section 12-6-118, C.R.S, grounds for denial, suspension, or revocation of a manufacturer's license includes with willful failure to comply with any provisions of Title 12, Article 6, Part 1, C.R.S. These provisions and others are fundamental to enforcement of Colorado's regulation of automobile manufacturers.

12. The contracts which the Debtor seeks to assign to the purchaser potentially conflict with Colorado law. To illustrate, Sections 2 and 3 of the Participation Agreement require dealers to meet certain sales expectations, and Section 7(c) of the

Participation Agreement requires each dealer to "increase its floor plan capability to accommodate the increased sales and inventory expectations contemplated in Sections 2 and 3 above." Those provisions could require a dealer to make substantial capital outlays in violation of Section 12-6-120(1)(m), C.R.S., which prohibits an automobile manufacturer from requiring any dealer "to close or change the location of the motor vehicle dealer, or to make any substantial alterations to the dealer premises or facilities when doing so would be unreasonable ... in light of the current market and economic conditions."

13. It is entirely possible that, under some circumstances, the Board might conclude that the purchaser's enforcement of the Participation Agreement violates Colorado law. Such a matter potentially could affect the purchaser's license.

14. It is essential that the Board's regulatory powers be preserved with respect to the purchaser's post-sale conduct. The Colorado statutes governing automobile manufacturers not only are important for the protection of automobile dealers, but the application of such statutes to all manufacturers, those who have passed through bankruptcy as well as those who have not, is essential to preserving a competitive market on a level playing field.

15. This Court should deny any efforts to use the bankruptcy process to restrict state regulatory powers with respect to the post-sale operations by the purchaser.

WHEREFORE, the Board requests that the Court sustain this limited objection, and provide such other and further relief as the Court deems proper.

Respectfully submitted this 18th day of June, 2009.

JOHN W. SUTHERS
Attorney General, State of Colorado

By: *(signature)*
James B. Holden, Colo. Reg. No. 9020
Assistant Attorney General

1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone: (303) 866-5198
Facsimile: (303) 866-5443
E-Mail: james.holden@state.co.us

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within **COLORADO MOTOR VEHICLE DEALER BOARD'S LIMITED OBJECTION TO DEBTORS' SALE MOTION** upon all parties herein by delivering copies of same via Federal Express, this 18th day of June, 2009, addressed as follows:

Harvey Miller
Stephen Karotkin
Joseph H. Smolinsky
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

John J. Rapisardi
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

James L. Bromley
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Babette Ceccotti
Cohen Weiss and Simon LLP
330 W. 42nd Street
New York, NY 10036

Michael J. Edelman
Michael L. Schein
Vedder Price PC
1633 Broadway 47th Fl.
New York, NY 10019

Babette Ceccotti
Cohen Weiss and Simon LLP
330 W. 42nd Street
New York, NY 10036

Diana G. Adams
Office of the U.S. Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004

David S. Jones
Matthew L. Schwartz
U.S. Attorney's Office
86 Chambers Street, 3rd Fl.
New York, NY 10007

_____
James B. Holden

8