**Hearing Date: June 25, 2009 at 9:45 a.m.**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                           :   **Chapter 11 Case No.**
                                                            :
**GENERAL MOTORS CORP.,** *et al.*,    :   **09-50026 (REG)**
                                                            :
                    Debtors.               :   **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS
UNDER ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366
(I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE
ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR
RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING
UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("**GM**") and its affiliated debtors (collectively, the

"**Debtors**"), submit their omnibus response (the "**Response**") to objections (collectively, the

"**Objections**") under Order Pursuant to 11 U.S.C. §§ 105(A) and 366 (I) Approving Debtors'

Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving

Objections by Utility Companies, and (III) Prohibiting Utilities from Altering, Refusing, or

Discontinuing Service (the "**Utilities Order**") [Docket No. 173], and respectfully represent:

## Background

1. On June 1, 2009 the Debtors filed a motion (the "**Utilities Motion**") pursuant to sections 105(a) and 366 of title 11, United States Code (the "**Bankruptcy Code**") seeking an order, (i) approving the Debtors' proposed form of adequate assurance of payment, which consist of a cash deposit equal to two (2) weeks of Utility Services,[1] calculated based on the historical average over the past 12 months (the "**Adequate Assurance Deposit**"); (ii) establishing procedures for resolving objections by Utility Companies, and (iii) prohibiting utility companies from altering, refusing, or discontinuing service.

2. On June 1, 2009 the Court entered the Utilities Order. Of the 261 Utility Companies noticed under the Utilities Order, the Debtors have received:

   (a) requests by eighteen (18) Utility Companies for an Adequate Assurance Deposit; and

   (b) Objections by thirty-five (35) Utility Companies[2] to the Utilities Order.

3. To date, all eighteen requests have been processed and a cash deposit has already been provided to each requesting Utility Company. Most of the Objections interposed by Utility Companies have been withdrawn or resolved. Thus, to date, only twelve (12) Utility Companies have Objections that remain outstanding (the "**Objecting Utilities**"). Annexed as Exhibit "A," is a chart summarizing the Objections received by the Debtors and their status. The Debtors will continue to negotiate with the Objecting Utilities up until the hearing, but intend to proceed with regard to any Objections that remain unresolved.

---

[1] Terms used but not defined herein shall have the meaning ascribed to them in the Utilities Motion.

[2] The Debtors received two Objections and approximately four informal objections from companies asserting that they were not a utility, as such term is used in section 366 of the Bankruptcy Code, but rather forward contract merchants. The Debtors, to accommodate such requests, will file a revised Utility Service List.

**The Objections Should Be Overruled**
**Because the Amount of Adequate Assurance is Reasonable**

4. The Objecting Utilities assert that a two-week deposit does not provide adequate assurance of payment because (i) the Objecting Utility Companies provide 60 or more days of utility service before such service is terminated for nonpayment and/or (ii) the applicable state tariffs and regulations allow the Objecting Utility Company to charge a two or three-month deposit. While the revised statutory language of section 366 of the Bankruptcy Code provides some modestly greater rights to utilities and clarifies some issues, the basic structure of "adequate assurance of payment" remains largely unchanged. As such, the Court should interpret and implement the new section 366 in a manner consistent with legal precedent on adequate assurance that survives the amendments to the statute.

5. Well-established precedent makes clear that "adequate assurance" is not the same as "complete assurance" or "a guaranty of payment" and only refers to such assurance as is reasonable under the facts and in light of the risks presented. *See, e.g.*, *In re Caldor, Inc.–N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'"); *In re Adelphia Bus. Solutions, Inc.*, 280 BR. 63, 80 (Bankr. S.D.N.Y. 2002) (same).

6. Certain of the Objecting Utility Companies highlight tariffs and state regulations to argue that nothing short of a two-month deposit (or more) is adequate, but bankruptcy courts have rejected or questioned this argument time and again. *See Adelphia*, 280 B.R. at 80 ("[W]hen making decisions as to what constitutes 'adequate assurance' under section 366(b), bankruptcy courts are not bound by local or state tariff regulations."); *Begley v. Phila.*

3

*Elec. Co. (In re Begley)*, 41 B.R. 402, 405-06 (E.D. Pa. 1984), *aff'd,* 760 F.2d 46 (3d Cir. 1985) (same).

7.  Notably, nothing in the revised section 366 suggests anything close to what the utilities demand as it relates to adequate assurance and the effect of local tariffs. Nowhere in the revised statutory language is there a suggestion that utilities are entitled to complete assurance or that courts should exclusively guided by local regulations, much less give any weight to them, in determining adequate assurance issues. Given the opportunity to tie the measure of adequate assurance to local regulations, Congress chose not to do so.

8.  To provide adequate assurance, the Debtors propose a two-week cash deposit, which is more than a mere nominal amount, to mitigate any risk faced by utilities and properly balance the interests of the Debtors and their utilities under the statute. As bankruptcy courts have recognized, "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Virginia Elec. & Power Co. v. Caldor, Inc. – NY*, 117 F.3d 646, 650 (2d Cir. 1997) (quotations omitted). Although the proposed two-week security may not fully collateralize the Objecting Utilities, the Debtors submit that the proposed assurance more than adequately addresses the risks faced by the Objecting Utilities in these cases, while balancing the Debtors' need to conserve cash early in these chapter 11 cases.

9.  The Objecting Utilities fail to recognize that section 366 is not included in the Bankruptcy Code as a one-sided security interest in favor of utility companies. Thus, section 366 was not meant to secure all of a utility's exposure to nonpayment. Rather, section 366 represents an attempt to balance the needs of debtors of all types for access to utility services,

4

and the needs of utility companies to mitigate the risks of being forced to do business with entities under bankruptcy court protection.

10. Consistent with the rest of the Bankruptcy Code, section 366 requires the bankruptcy court to strike an equitable balance between competing interests under the facts presented.

11. In these cases, the Objecting Utilities are not facing an unreasonable risk of nonpayment where the Debtors are moving quickly towards a sale of substantially all their assets. In connection with the sale, a vast majority of the Debtors' contracts with Utility Companies will be assumed and assigned. Moreover, the Debtors enjoy access to a debtor in possession financing facility of approximately $33 billion. As a result, the Debtors believe that there will be sufficient funds available to permit them to pay the Utility Companies for postpetition services in a timely manner. Finally, the Debtors have a history of timely payments to Utility Companies in the ordinary course of business. Accordingly, calculating the adequate assurance deposits based on two weeks of service is not only consistent with recent decisions of the courts, but it also strikes a fair balance between the Debtors' need to conserve resources and the utilities' entitlement under section 366 to some "adequate" assurance that they will not face undue risk of nonpayment.

WHEREFORE the Debtors request that the Court overrule the Objections of the Objecting Utilities, and grant such other and further relief as is just.

Dated: New York, New York
June 24, 2009

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# Exhibit A

## Summary Chart of Objections Received By the Debtors

| | Docket # | Objecting Utility | Request | Status |
|---|---|---|---|---|
| 1 | 511 | Entergy Mississippi, Inc. | Two month deposit ($125,700) | Under negotiations. |
| 2 | 764 | Columbia Gas of Ohio, Inc. and Columbia Gas of Virginia, Inc. | (i) a two month deposit for transportation service COH ($41,028) and CVA ($2,156) and bundled ($26,879); and (ii) a contingent deposit to cover COH and CVA's commodity exposure if/when COH or CVA provide actual gas commodity to the Debtors (by way of a proposed order) | Under negotiations. |
| 3 | 915 | 1. Dominion Virginia Power<br>2. Dominion East Ohio<br>3. Salt River Project<br>4. Duke Energy Indiana<br>5. Duke Energy Ohio<br>6. Duke Energy Kentucky<br>7. Duke Energy Carolinas<br>8. American Electric Power<br>9. Detroit Edison Company<br>10. Michigan Consolidated Gas Company<br>11. Consolidated Edison Company of New York<br>12. Southern California Edison Company<br>13. Baltimore Gas and Electric Co.<br>14. Massachusetts Electric Co.<br>15. Niagara Mohawk Power Corp.<br>16. Delta Township Utilities, LLC<br>17. Delta Township Utilities II, LLC<br>18. Suez/VWNA/DEGS of Lansig<br>19. Shreveport Red River Utilities, LLC<br>20. Veolia Water Partners VI, LLC | Two month deposit. | Out of the 20 objections, 15 have been resolved, and the other 5 are currently under negotiations. |
| 4 | 1121 | The city of Austin d/b/a Austin Energy | Two months ($48,903.92) | Resolved. |
| 5 | 1131 | Ohio Edison Company, The Toledo Edison Company, and The Cleveland Electric Illuminating Company, each a subsidiary of FirstEnergy Corp., and Pennsylvania Power, a subsidiary of Ohio Edison Company (collectively "FirstEnergy") | Six weeks ($4,090,920) | Resolved. |
| 6 | 1248 | BP Canada Energy Marketing Corp. and BP Energy Company | To be taken off the Utilities Service List. | Resolved. |
| 7 | 1669 | Dominion Retail, Inc. | To be taken off the Utilities Service List. | Resolved. |
| 8 | 1193 | Sierra Pacific Power Co. d/b/a NV Energy | Two month deposit ($78,850). | Being negotiated. |
| 9 | 1320 | City of Detroit | Two week deposit, although they have to do the math. They believe it's ($85,000) | Being negotiated. |
| 10 | 874 | Lansing Board of Water & Light | Two month deposit of ($6,000,000) | Being negotiated. |

|    | **Docket #** | **Objecting Utility** | **Request** | **Status** |
|----|----|----|----|----|
| **11** | 1734 | 1. Commonwealth Edison<br>2. PECO Energy | Two month deposit:<br>• Commonwealth Edison: Two month deposit ($7,873.00)<br>• PECO Energy: Two month deposit ($73,000.00) | One has been resolved and the other is being negotiated. |

9