Robert M. Dombroff
Jeffrey S. Sabin
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689
Tel: 212-705-7000
Fax: 212-752-5378

*Counsel to Deutsche Bank AG*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re:                                              :          Chapter 11
:
GENERAL MOTORS CORP., *et al*.                      :          Case No. 09-50026 (REG)
:
                               Debtors.             :          (Jointly Administered)
---------------------------------------------------------------x

**LIMITED OBJECTION AND REQUEST FOR CLARIFICATION OF MOTION
OF THE DEBTORS FOR FINAL ORDER APPROVING POSTPETITION
FINANCING AND AUTHORIZING THE DEBTORS TO PREPAY CERTAIN
SECURED OBLIGATIONS IN FULL WITHIN 45 DAYS**

Deutsche Bank AG ("Deutsche Bank"), by and through its counsel, Bingham McCutchen LLP, hereby files this limited objection and request for clarification (the "Limited Objection") relating to the motion of General Motors Corp., *et al*. ("GM" or the "Debtors") for entry of a final order pursuant to 11 U.S.C. §§ 361, 362, 363, and 364 (i) authorizing the Debtors to obtain postpetition financing; (ii) granting superpriority claims and liens; (iii) authorizing the Debtors to use cash collateral; (iv) granting adequate protection to certain prepetition secured parties; and (v) authorizing the Debtors to prepay certain secured obligations in full within 45 days (the "Final DIP Motion"). In support of the Limited Objection, Deutsche Bank respectfully alleges and represents as follows:

A/73069690.5

**Preliminary Statement**

Deutsche Bank does not object to the relief requested in the DIP Motion. However, Deutsche Bank requests clarification that the amounts due to Deutsche Bank pursuant to an oversecured Commodities Hedge with GM will be paid in full in accordance with the treatment outlined in the DIP Motion. Deutsche Bank should not be compelled to setoff its secured claim against an unsecured claim owing to the Debtors because the Debtors contractually waived their right to do so, and because allowing the Debtors to setoff in this instance would redundantly further oversecure one of Deutsche Bank's claims and would improperly strip Deutsche Bank of its security for a second claim.

**Background**

*A.     GM and Deutsche Bank Relationship*

1.      GM is a borrower under that certain Amended and Restated Credit Agreement, dated as of July 20, 2006 (as amended, supplemented or otherwise modified, the "Revolver Facility", attached hereto as **Exhibit A**) among GM, General Motors of Canada Limited, Saturn, LLC ("Saturn"), as a guarantor, Citicorp USA, Inc., as administrative agent, JPMorgan Chase Bank, N.A., as syndication agent, and certain secured parties including the banks and other financial institutions party to the Revolver Facility as lenders (the "Revolver Lenders").

2.      Pursuant to that certain U.S. Security Agreement, dated as of July 20, 2006, made by GM and Saturn in favor of Citicorp USA, Inc. (the "Security Agreement"),[1] the Revolver Lenders have a security interest in (i) all Inventory of GM and Saturn, (ii) all Receivables of GM and Saturn, (iii) 65% of the stock of Controladora General Motors, S.A. de C.V., (iv) all Chattel Paper, Documents, General Intangibles and Instruments attributable solely to the Inventory and Receivables described in (i) and (ii), (v) all books and records pertaining solely to the foregoing and (vi) all Proceeds, Supporting Obligations and products of the foregoing (the "Collateral"), subject to certain Excluded Collateral.

---

[1] Terms not defined herein have the meaning ascribed to them in the Security Agreement or the Revolver Facility.

3.      Deutsche Bank is a Revolver Lender that holds outstanding U.S. Secured Loans and Canadian/US Secured Extensions of Credit as of the date of this Limited Objection. These holdings, together with the Commodities Hedge and the Interest Rate Hedge (as defined below), are in excess of the minimum amount required to qualify Deutsche Bank as a "Hedging Secured Party."

*B.      Commodities Hedge*

4.      Deutsche Bank and GM are parties to that certain ISDA Master Agreement, dated as of August 11, 1998 (as amended, supplemented or otherwise modified, the "First Master Agreement"), pursuant to which the parties entered into a commodities swap arrangement (the "Commodities Hedge").

5.      GM executed a side letter, dated as of July 26, 2007, pursuant to which GM represented that the Commodities Hedge is a "Hedging Obligation." The Hedging Secured Parties have a security interest for the Hedging Obligations in the Collateral.

6.      Deutsche Bank terminated the First Master Agreement pursuant to a Notice of Termination dated as of June 1, 2009. Deutsche Bank subsequently delivered to GM a settlement statement dated as of June 11, 2009, indicating that the settlement amount for the Commodities Hedge was reasonably determined in good faith by Deutsche Bank to be $11,759,028 due to Deutsche Bank from GM.

*C.      Interest Rate Hedge*

7.      Deutsche Bank and GM are parties to that certain ISDA Master Agreement, dated as of September 19, 2002 (as amended, supplemented or otherwise modified, the "Second Master Agreement", attached hereto as **Exhibit B**), pursuant to which the parties entered into an interest rate swap arrangement (the "Interest Rate Hedge", and together with the Commodities Hedge, the "Hedge Agreements").

8.      Deutsche Bank terminated the Second Master Agreement pursuant to a Notice of Termination, dated as of June 1, 2009.  Deutsche Bank subsequently delivered to GM a settlement statement dated as of June 10, 2009, indicating that the settlement amount for the Interest Rate Hedge was reasonably determined in good faith by Deutsche Bank to be $24,040,404 due to GM from Deutsche Bank.

*D.     Other Claim against GM*

9.      Deutsche Bank holds an additional claim against the Debtors in the aggregate amount of $27 million (the "Non-Revolver Claim").

*E.     Bankruptcy Filing, DIP Motion*

10.     On June 1, 2009 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.

11.     On the Petition Date, the Debtors filed the DIP Motion.  In the DIP Motion, the Debtors requested the Court approve the repayment, in full, of "the Revolver Facility and the Term Loan upon entry of the Final DIP Order."  DIP Motion, ¶ 75.

12.     The Debtors state, "the value of the assets encumbered by the Revolver Agent, for the benefit of the holders of the Revolver Obligations, the Non-Loan Exposure and the Hedging Obligations (the "Hedging Obligations") exceeds the aggregate amount of the Total Exposure."  DIP Motion, ¶ 43.

13.     The Debtors also state, "[b]ecause the secured parties under . . . the Revolver Facility . . . are oversecured, the payment in full of all obligations thereunder will not prejudice any other parties in these Cases.  Moreover if it is later determined that there is some infirmity in their claims, the Court can fashion the appropriate remedy."  DIP Motion, ¶ 76.

14.     On June 2, 2009, the Court issued an Interim Order (the "Interim DIP Order") approving the DIP Motion on an interim basis.

A/73069690.5                                    4

**Argument**

*A.    Deutsche Bank Requests Clarification that the Final DIP Order will Provide for Payment of the Revolver Facility, Including All Secured Hedging Obligations*

15.     The DIP Motion asserts that the financing provided by the DIP Lender would be used, in part, to repay the Revolver Facility in full.  As noted above, the Revolver Facility includes the Hedging Obligations which are secured by the Collateral.  *See supra ¶* 3.  The Debtors specifically noted in the DIP Motion that the value of the Collateral exceeds the value of the liens against it, therefore the Hedging Obligations are oversecured.  *See supra ¶* 12.

16.     Despite the fact that the Hedging Obligations are oversecured and that the Final DIP Motion seeks authorization to repay the Revolver Facility, including the Hedging Obligations, the Interim DIP Order authorizes the Debtors to repay only certain of the Obligations following the closing of the DIP.[2] The Debtors have not clarified whether the Hedging Obligations, which are a part of the Revolver Facility, will be repaid following closing of the DIP.

*B.    Deutsche Bank Cannot be Compelled to Set Off the Commodities Hedge*

17.     Deutsche Bank holds the Commodities Hedge claim and the Non-Revolver Claim against the Debtors.  Both claims are secured. First, Deutsche Bank holds the Collateral which secures the Commodities Hedge.  *See supra* ¶ 12.  Second, Deutsche Bank holds a setoff right arising from Deutsche Bank's obligation to the Debtors on the Interest Rate Hedge which secures the Non-Revolver Claim, as follows.  *See Boston Insurance Co. v. Nogg (In re Yale Express Systems, Inc.)*, 362 F.2d 111, 114 (2d Cir. 1966) (noting that setoff is "security of the most perfect kind.").

---

[2] "Prepetition Term and Revolving Facilities" in the Interim DIP Order is defined as (i) "that certain Term Loan Agreement, dated as of November 29, 2006, among GM, Saturn Corporation and JP Morgan Chase Bank, N.A., as administrative agent, and the lenders party thereto from time to time . . . secured by a first priority lien on certain Property . . . and (ii) that certain Amended and Restated Credit Agreement, dated as of July 20, 2006, among GM, General Motors of Canada, Limited, Saturn Corporation, Citicorp USA, Inc., as administrative agent, and the lenders party thereto from time to time . . . secured by a first priority lien on certain Property." *See* Interim DIP Order, subsection (v), pg. 4.  The reference to the first priority lien in this definition excludes the Hedging Obligations, which are secured by a second priority lien pursuant to the Second Priority Security Agreement.

18.     Under the Second Master Agreement, the entry of orders for relief in a bankruptcy proceeding constitutes an event of default. Second Master Agreement, Schedule, Part 5.  Upon an event of default under the Second Master Agreement, the non-defaulting party (in this case, Deutsche Bank) has the right to set off any amounts due against "any or all amounts owing to [the defaulting party] under this Agreement or any other transactions between [the defaulting party] and the Non-Defaulting Party . . . or any Affiliate of such Party (whether or not then due)."  Second Master Agreement, Schedule, Part 5.  This gives Deutsche Bank the right to apply the Non-Revolver Claim due to Deutsche Bank against the Debtors' unsecured claim (the Interest Rate Hedge) against Deutsche Bank.

19.     The Debtors hold an unsecured claim (the Interest Rate Hedge) against Deutsche Bank.  The Debtors may argue that they are able to set off their unsecured Interest Rate Hedge against the Commodities Hedge in order to avoid paying Deutsche Bank's secured Commodities Hedge.  However, they cannot do that for several reasons.

20.     First, the Debtors contractually waived any such setoff.  Section 2.15(e) of the Revolver Facility provides that "all payments (including prepayments) to be made by either Borrower hereunder, whether on account of principal, interest, fees or otherwise, shall be made without set-off . . . ."  Moreover, in each of the amendments to the Revolver Facility, the Debtors "acknowledge and agree that [each of them] is truly and justly indebted to the Lenders and the Agents for the Obligations, without defense, counterclaim or offset of any kind, other than as provided in the Loan Documents."  Courts generally enforce provisions that waive a party's right of setoff. *See e.g.*, *Blanton v. Prudential-Bache Securities, Inc.* (*In re Blanton*), 105 B.R. 321, 335 (Bankr. E.D. Va. 1989); *Armour and Company v. Whitney and Kemmerer, Inc.*, 164 Va. 12, 23 (1935) (describing the principle that parties may waive their setoff rights as "well-settled").  By the clear terms of the Revolver Facility, the Debtors have waived the right to setoff the Commodities Hedge against the Interest Rate Hedge or any other amounts owing to GM by Deutsche Bank.

21.     Second, courts have found, however, that under section 553 of the Bankruptcy Code setoff is contemplated solely between unsecured claims and unsecured debts. *See Smith v. Mark Twain Nat. Bank,* 805 F.2d 278, 290 (8th Cir. 1986); *In re Cabrillo,* 101 B.R. 443, 448 (Bankr. E.D. Pa. 1989).

22.     Finally, if the Debtors withhold payment from Deutsche Bank following the closing of the DIP, and instead unilaterally set off the Debtors' *unsecured* claim (the Interest Rate Hedge) against Deutsche Bank's *secured* claim (the Commodities Hedge), the result would be an improper inflation of the Debtors' rights and a wrongful stripping of Deutsche Bank's rights as a secured creditor holding *two* secured claims.  As shown above, the amounts due to the Debtors under the Interest Rate Hedge secure the amounts due under the Non-Revolver Claim.  The collateral relating to each claim serves as the recourse for a specific claim; the Debtors cannot mix and match collateral at will. *See Mark Twain,* 805 F.2d at 290; *Cabrillo,* 101 B.R. at 448.

23.     If the Debtors were able to unilaterally seize the Interest Rate Hedge and use it to pay the Commodities Hedge (which is already oversecured), the Debtors would (1) redundantly further oversecure Deutsche Bank on the Commodities Hedge and, much worse, (2) improperly strip Deutsche Bank of any security for the Non-Revolver Claim.  Further, allowing the Debtors to unilaterally seize the Interest Rate Hedge would result in irreparable harm to Deutsche Bank (the stripping of security), while none of the Debtors or other parties would be prejudiced if Deutsche Bank were paid in full on its oversecured claim along with the other counterparties to the Hedging Obligations.  The Debtors retain their ability to pursue any amounts owed under other unsecured agreements between the parties.

24.     Deutsche Bank does not contend that the Debtors must provide adequate assurance on the Commodities Hedge with the precise Collateral, and only with the Collateral, but using the Interest Rate Hedge instead to satisfy the already oversecured Commodities Hedge would leave the Unsecured Claims without security, full payment, or adequate protection.  That, the Debtors cannot do. *See* 11 U.S.C. §§ 361, 363.

**Relief Requested**

27.     Deutsche Bank respectfully requests that the Court amend paragraph (v) of the Interim DIP Order to clarify in the Final DIP Order that parties to Hedging Obligations shall be repaid in full.

Dated:  New York, New York
        June 19, 2009

By: /s/  Jeffrey S. Sabin
Robert M. Dombroff
Jeffrey S. Sabin
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689
Tel: 212-705-7857
Fax: 212-752-5378

*Counsel to Deutsche Bank AG*