Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :          Chapter 11 Case No.
                                        :
GENERAL MOTORS CORP., et al.,           :          09-50026 (REG)
                                        :
                      Debtors.          :          (Jointly Administered)
                                        :
------------------------------------------------------------x
```

## MOTION OF THE DEBTORS FOR ENTRY OF ORDER
## PURSUANT TO 11 U.S.C. § 363(b) AUTHORIZING AND
## APPROVING SETTLEMENT AGREEMENTS WITH CERTAIN UNIONS

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("**GM**") and its affiliated debtors, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),

respectfully represent:

### Relief Requested

1.     By this Motion, the Debtors request entry of an order authorizing the

approval of four settlement agreements providing for new programs regarding retiree benefits

(the "**Settlement Agreements**") that are to be entered into in connection with the proposed sale

of the Debtors' assets pursuant to the Master Sale and Purchase Agreement and related

agreements (the "**MPA**"), among the Debtors (the "**Sellers**") and Vehicle Acquisition Holdings LLC (the "**Purchaser**"), a purchaser sponsored by the United States Department of the Treasury (the "**U.S. Treasury**"), free and clears of liens, claims, encumbrances, and other interests (the "**363 Transaction**").

2.      In connection with the 363 Transaction, the Purchaser and four unions, representing primarily retirees and a small number of active employees, have reached a resolution addressing the ongoing provision of certain retiree benefits.  The unions are:  (a) the International Association of Machinists and Aerospace Workers ("**IAMAW**"), (b) the International Brotherhood of Painters and Allied Trades of the United Sates and Canada, Sign & Display Union Local 591 ("**IBPA**"), (c) the Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045 ("**Locals 687 & 1045**"), and (d) the International Brotherhood of Electrical Workers ("**IBEW**") (collectively, the "**Unions**").  The Unions represent, in the aggregate, approximately 1,056 retirees and 150 active employees.

3.      The resolution of the issues is, in each case, set forth in a Settlement Agreement (each of which is substantially similar in its terms), which the respective Unions entered into as an authorized representative, as defined in section 1114(c)(1) of title 11, United States Code (the "**Bankruptcy Code**"), of those persons receiving retiree benefits, as defined in section 1114(a) of the Bankruptcy Code, pursuant to collectively bargained plans, programs and/or agreements between the Purchaser and/or GM.

4.      The Settlement Agreements, copies of which are annexed hereto as Exhibit "A," provide that the Purchaser shall provide certain retiree benefits to the covered groups on terms substantially identical to the terms under which the Purchaser has agreed to provide such benefits to GM's salaried retirees.  The retiree benefits to be provided by the

Purchaser pursuant to the Settlement Agreements are described in a cover letter prepared by the Unions and to be sent to the covered groups.  Copies of such letters are annexed to each Settlement Agreement, and the settlements are briefly summarized as follows:

    (i)    <u>Retiree Medical Benefits in 2009</u>:  Provided in accordance with GM Hourly Plan through 2009.  Effective January 1, 2010, the Purchaser shall have no responsibility under such plan.

    (ii)    <u>New Retiree Medical Benefits on January 1, 2010</u>:  All retiree medical benefits will be provided through the Purchaser's Retiree Health Care Plan.  The Purchaser's obligation is fixed and capped at certain levels for pre-Medicare single coverage and pre-Medicare family coverage.  There will be no retiree medical benefit for those retirees who are Medicare eligible.  Benefits will be adjusted annually as necessary to keep the cost in line with the cap.

    (iii)    <u>Medical Benefits May Be Terminated</u>:  The retiree medical benefits are not guaranteed.  The Purchaser may terminate the plan or reduce benefits.  If benefits are reduced or terminated, the same restrictions will apply to all groups in the plan.

    (iv)    <u>Life Insurance</u>:  Effective the first month after the closing of the 363 Transaction, the Purchaser will provide Basic Life Insurance in retirement in the maximum amount of $10,000.  The Retirees whose Basic Life Insurance Entitlement is below $10,000 will remain at the lower level.

    5.    Each of the Settlement Agreements is conditioned on (a) this Court having entered an order approving it, and (b) the closing of the 363 Transaction having occurred in reliance on such order.

6.      In addition, in connection with each of the Settlement Agreements, the Unions have agreed (collectively, the "**Claims Agreements**"), subject to the consummation of the 363 Transaction and the Settlement Agreements becoming effective following approval by this Court, to take further action to release claims against GM and its subsidiaries, and their employees, officers, directors, and agents, relating to retiree medical benefits and life insurance.

7.      Lastly, in connection with the Settlement Agreement with the IAMAW and the Settlement Agreement with the IBEW, each representing active employees, effective as of the closing of the 363 Transaction, the Purchaser will assume an amended collective bargaining agreement with the respective Union.

## Jurisdiction

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Settlement Agreements Should be Approved

9.      Pursuant to the Settlement Agreements, the Debtors are resolving their obligations for certain retiree benefits covered by section 1114 of the Bankruptcy Code and also effecting the amendment of certain collective bargaining agreements for the benefit of the Purchaser and the applicable active employees.  The Settlement Agreements encompass approximately 1,000 retirees and provide a fair and reasonable means to address retiree liabilities in a manner consistent with the way in which salaried retiree benefits are being addressed in the context of the 363 Transaction.

10.      In addition, implementation of the Settlement Agreements and the related transactions will facilitate the consummation of the 363 Transaction and the preservation of going concern value that will result therefrom.

11.     In view of the foregoing, the Debtors request that the Settlement

Agreements and the Claims Agreements be approved and that they be authorized to take all

appropriate action to implement the Settlement Agreements and the Claims Agreements.

### Notice

12.     Notice of this Motion has been provided to (i) the Office of the United

States Trustee for the Southern District of New York, (ii) the attorneys for the United States

Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the

attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for

the agent under GM's prepetition amended and restated secured revolving credit agreement,

(vi) the attorneys for the statutory committee of unsecured creditors appointed in these chapter

11 cases, (vii) the attorneys for the International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America, (viii) the attorneys for the International Union of

Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of

America, (ix) the United States Department of Labor, (x) the attorneys for the National

Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii)

the U.S. Attorney's Office, S.D.N.Y., (xiii) the attorneys for the IAMAW, (xiv) the attorneys for

the IBEW, (xv) the attorneys for the IBPA, (xvi) Local 687 & 1045, (xvii) the retirees

represented by the Unions, and (xiii) all entities that requested notice in these chapter 11 cases

under Fed. R. Bankr. P. 2002.  The Debtors submit that, in view of the facts and circumstances,

such notice is sufficient and no other or further notice need be provided.

13.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court approve the Motion and grant the Debtors such other and further relief as the Court deems just and proper.

Dated:  June 24, 2009
      New York, New York

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                           :

**In re**                              :                    **Chapter 11 Case No.**
                           :

**GENERAL MOTORS CORP.,** *et al.*,     :                    **09-50026 (REG)**
                           :

                  **Debtors.**       :                    **(Jointly Administered)**
                           :
-------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 363(b) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENTS WITH CERTAIN UNIONS

Upon the Motion, dated June 24 2009 (the "**Motion**"),[1] of General Motors

Corporation ("**GM**") and its affiliated debtors, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 363(b) of title 11,

United States Code (the "**Bankruptcy Code**"), for entry of an order authorizing and approving

four Settlement Agreements with certain Unions,[2] all as more fully described in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. § 1334; and due and proper notice of the Motion having been

provided, and it appearing that no other or further notice need be provided; and each of the

Unions, as applicable, being the authorized representative, as defined in section 1114(c)(1) of the

Bankruptcy Code, of those persons receiving retiree benefits, as defined in section 1114(a) of the

Bankruptcy Code, pursuant to collectively bargained plans, programs, and/or agreements with

the Purchaser and/or GM; and the Court having found and determined that the relief sought in

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2] The Unions are (a) the International Association of Machinists and Aerospace Workers ("**IAMAW**"), (b) the International Brotherhood of Painters and Allied Trades of the United Sates and Canada, Sign & Display Union Local 591 ("**IBPA**"), (c) the Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045 ("**Locals 687 & 1045**"), and (d) the International Brotherhood of Electrical Workers ("**IBEW**").

the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, the following Settlement Agreements are approved in their

entirety:

(i) Newco-IAMAW Settlement Agreement Regarding Retiree Health Care, Life

Insurance & Modification & Assumption of CBA;

(ii) Newco-IBEW Settlement Agreement Regarding Retiree Health Care, Life

Insurance & Modification & Assumption of CBA;

(iii) Newco-IBPA Settlement Agreement Regarding Retiree Health Care & Life

Insurance; and

(iv) Newco-Locals 687 & 1045 Settlement Agreement Regarding Retiree Health

Care & Life Insurance; and it is further

ORDERED that each of the Claims Agreements are approved in their entirety;

and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
          _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Newco-IAMAW Settlement Agreement Regarding Retiree Health Care, Life
Insurance & Modification & Assumption of CBA**

[form of IAM Retiree notice]

MESSAGE FROM THE IAMAW TO GM/DELPHI RETIREES:

Dear Brothers and Sisters:

As you probably know, General Motors is in bankruptcy in an effort to reorganize as a solution to its current economic crisis, which is part of the greater economic crisis confronting the industry and the country.  The Obama Administration, through the U.S. Department of Treasury, has agreed to loan money to General Motors as part of this restructuring effort, but only under certain conditions.  The conditions have required major concessions from nearly every constituency.

Part of this restructuring process is a proposed sale of General Motors' assets to a new corporation, which will become the new and surviving GM.  Attached to this letter is a copy of the formal notice of this sale.  The Bankruptcy Court will hold a hearing on this sale in the near future.  The key points in the sale are that the new GM going forward will have a fresh start, funded in part by loans from the U.S. Department of Treasury, which will own the majority of GM; and that the assets of General Motors will be sold to the new GM free and clear of liabilities.  Active employees of the IAMAW, as well as other unions, are also making concessions as part of this restructuring.

In addition, the Bankruptcy Court will be asked to approve a new program regarding retiree medical benefits, explained below.

 **Who will be covered:**  You will be covered by the new retiree medical benefits if you --

(a) retired under an IAM-GM collective bargaining agreement that called for you to receive a contribution toward your retirement benefits from GM; or

(b) are a seniority employee who is working for the new GM under an IAM-GM collective bargaining agreement, and who retires from the new GM in the future, if you would have been eligible for a GM contribution to your retiree benefits under the 2003 IAM National contract; or

(c) are a Delphi employee who was represented by the IAM and covered by the Delphi-GM restructuring agreement in 2007, and who would have been eligible for retiree medical benefits which GM agreed to provide in the Delphi bankruptcy; or

(d) the surviving spouse of a covered retiree, or the surviving spouse of an active covered employee who die prior to retirement under circumstances where they would have been eligible at the time of death.

**Retiree benefits in 2009:**  Your benefits will be in accordance with the GM Hourly Plan through the end of 2009.  Effective January 1, 2010, the new GM shall have no

responsibility under the old GM Hourly Plan.  Treatment is covered under this provision only if the treatment actually occurs on or before December 31, 2009.

**New Retiree Benefits on January 1, 2010:**  Starting on January 1, 2010, all retiree medical benefits will be provided through the Newco Retiree Health Care Plan if you are in the covered group above.  (This plan will also include unionized and non-unionized employees of the new GM who are not represented by the UAW, including managerial employees.)   New GM's obligation is fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare single coverage ($4,140) and for pre-Medicare family coverage ($8,060).  There will be no retiree medical benefit for those retirees who are Medicare eligible. New GM will not be obligated to contribute more than this amount of money toward retiree benefits.

These benefits will be adjusted on an annual basis to re-design the plan as necessary to keep the cost below the cap.  If costs go over the cap in one year, the plan will be changed in the next to make sure that the new benefits stay under the cap, and the overpayment for the previous year is recovered.

We believe the initial level of benefits will be like the amounts shown below; however, the benefits are still subject to the cap given above.  They are not guaranteed at these amounts, and over time, the benefits are likely to be adjusted downward to fit within the cap upon costs.

### General Description of Retiree Medical Plan

The following reflects a general description of the level of Retiree Medical Benefit coverage contemplated as of January 1, 2010:

| Plan Offering | • Nationwide HSA-qualified PPO |
|---|---|
|  |  |
| Monthly Contributions | • $160 (single)<br>• $220 (two)<br>• $270 (three or more) |
|  |  |
| Annual Deductible | • $2,500 (single)<br>• $5,000 (family) (single member may satisfy) |
|  |  |
| Medical Co-Insurance (after deductible) | • 20% (in-network)<br>• 40% (out of network) |
|  |  |
| Out-of-Pocket Maximum | • $3,500 (single)<br>• $7,000 (family) (single member may satisfy) |
|  |  |
| Behavioral Health (after deductible) | • Same as medical. |

| | |
|---|---|
| Rx Retail (after deductible) | • 20% (in-network) <br> • 40% (out-of-network) |
| | |
| Rx Mail (after deductible) | • 20% (in-network) <br> • 40% (out-of-network) |
| | |
| Vision Program | No longer offered. |
| | |
| Dental Program | No longer offered. |
| | |
| Coverage Termination (Participant level) | • Retirees, surviving spouses, and eligible dependents who are age 65 or older, and <br> • Retirees, surviving spouses, and eligible dependents who are under age 65 but eligible for Medicare. |

**Benefits may be terminated; No other benefits to be provided:**  The retiree medical benefits are not guaranteed.  New GM may terminate the plan in the future, or reduce benefits.  If it does, however, it will make the same reductions (or terminate the plan) not just for IAM-represented retirees, but for all groups in the plan, including for example managerial employees who are in the plan.

As part of the agreement by the New GM to provide these benefits, the IAMAW has agreed not to ask New GM to provide more benefits, or to increase the amount of cap, or to attempt to replace these benefits or fund these benefits in any other way.

**Other obligations are terminated; Releases.**  As part of the Court approval of the sale, all other obligations GM has toward retiree health care are being terminated.  The New GM will not have any obligations for retiree benefits incurred before the sale.  It will have only the obligations described above.  IAM is also giving a release to GM of all its other obligations regarding retiree medical insurance as a condition of preserving the benefits above.  In addition, you are releasing the IAM from liability in connection with matters relating to retiree benefits as well.

 **Life Insurance.**  Effective the first of the month after the sale, New GM will provide Basic Life Insurance in retirement in the maximum fixed amount of $10,000 for retirees in the covered group described above that are current and future retirees.  Retirees whose Basic Life Insurance entitlement is below $10,000 will remain at the lower amount.  Current employees, on the date of retirement will have Basic Life Insurance in the fixed amount of $10,000.

**IAM to act as representative of retirees.**   Under the Bankruptcy Code, the union is presumed to act as the representative of retirees whose benefits are being modified if the union was their representative when they were active employees.   IAM intends to act as your representative for the purpose of accomplishing these benefit changes.

**Alternatives.**   We recognize that these benefit changes are painful; however, if we do not enter into these agreements, you have no guarantees that your benefits will not be terminated immediately or soon after the sale.   We anticipate the sale will be successful, as it was in the case of Chrysler, and that going forward, the only viable company will be the New GM.   We expect New GM to acquire all or substantially all of the assets of the old company.   We do not expect old GM to be able to provide benefits in the future.

We could attempt to de-rail the sale.   We know that this effort was made in Chrysler and was not successful.   We also know that if we could stop the sale, it would not necessarily protect your benefits in the future, and it might destroy GM completely.

None of these options are desirable.   We have decided to cooperate with GM in hopes of continuing to provide you at least some level of benefits into the future, while preserving and protecting jobs at the New GM.

**This Document is a Summary.**   The actual terms of the settlement agreement with the New GM are more complicated than this summary.   If you want to read the entire document, you may do so by going to the website address in the legal notice enclosed.

**If you Agree.**   You do not need to do anything at this time.

**If you Disagree.**   You must file an objection as explained in the legal notice enclosed.

### NEWCO-IAMAW SETTLEMENT AGREEMENT
### REGARDING RETIREE HEALTH CARE, LIFE INSURANCE
### & MODIFICATION & ASSUMPTION OF CBA

This Settlement Agreement (together with the Exhibits hereto, the "Settlement Agreement"), is between [Vehicle Acquisition Holding, LLC] ("Newco"), by and through its attorneys, and the International Association of Machinists and Aerospace Workers ("IAMAW"). The IAMAW also enter into this Settlement Agreement as the authorized representative, as defined in Section 1114(c)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), of those persons receiving retiree benefits, as defined in Section 1114(a) of the Bankruptcy Code, pursuant to collectively bargained plans, programs and/or agreements between Newco (or General Motors Corporation ("GM")) and the IAMAW (or an IAMAW predecessor) and who are members of the Covered Group, as defined herein. Collectively, the IAMAW, Newco, and the Covered Group are referred to as the "Parties."

This Settlement Agreement shall cover and has application to;

- the Covered Group;

- The IAMAW; and

- Newco.

GM agreed to provide certain retiree medical benefits in various collectively bargained agreements with the IAMAW. Subsequent to entering those collective bargaining agreements, GM filed a bankruptcy action known as *In Re General Motors Corp., et al.*, No. 09-050026 (REG), U.S. Bankruptcy Court (S.D. N.Y.), pursuant to which Newco purchased certain assets of GM.

The IAMAW asserts, and Newco denies, that Newco is required to continue to provide retiree medical benefits  and retiree life insurance in accordance with those collective bargaining agreements. Newco maintains that it is not obligated to assume and abide by the GM-IAMAW collective bargaining agreements. After due consideration of the factual and legal arguments regarding this issue, as well as the costs, risks, and delays associated with litigating the issue, Newco and the IAMAW have agreed to resolve all claims regarding Retiree Medical Benefits and Retiree Basic Life Insurance on the basis set forth in this Settlement Agreement and Newco has agreed to assume the terms of the 2003 National Agreement between GM and the IAMAW, subject to the modifications set forth in this Settlement Agreement. The parties agree to present this Settlement Agreement to the Bankruptcy Court for approval in connection with the contemplated sale of assets between GM and Newco.

### 1. Definitions

Admissions. The term "Admissions" shall mean any statement, whether written or oral, any act or conduct, or any failure to act, that could be used (whether pursuant to Rules 801(d)(2) or 804(b)(3) of the Federal Rules of Evidence, a similar rule or standard under other applicable law, the doctrines of waiver or estoppel, other rule, law, doctrine or practice, or otherwise) as evidence in a proceeding of proof of agreement with another party's position or proof of

1

adoption of, or acquiescence to, a position that is contrary to the interest of the party making such statement, taking such action, or failing to act.

Affiliate.  The term "Affiliate" shall mean, with respect to any specified person or entity, any other person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with such specified person or entity.

Approval Order or Judgment.  The terms "Approval Order" or "Judgment" shall mean an order obtained from the Bankruptcy Court approving and incorporating this Settlement Agreement in all respects, as set forth in Section 8 of this Settlement Agreement.

Bankruptcy Court.  The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York with respect to *In Re General Motors Corp., et al.,* No. 09-050026 (REG).

Closing.  The term "Closing" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

Closing Date.  The term "Closing Date" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

Covered Group.  The term "Covered Group" shall mean:

    a.  All GM employees who were represented with respect to the terms and conditions of their employment with GM by the IAMAW and who retired from GM under circumstances such that they were eligible for GM contributions to their health care in retirement according to the terms of an IAMAW collective bargaining agreement in effect at the time of their retirement, and their spouses, surviving spouses and dependents;

    b.  All active GM employees who are represented with respect to the terms and conditions of their employment with GM by the IAMAW and who had attained seniority with GM as of the Closing and who transfer to Newco and retire from Newco under circumstances such that they would have qualified for corporate contributions toward health care in retirement as determined according to criteria for such eligibility as existed in the 2003 IAMAW National Agreement, and their spouses, surviving spouses and dependents.

    c.  All Delphi employees who were represented with respect to the terms and conditions of their employment with Delphi by the IAMAW and who are described in Section 4 of the Attachment B to the IAM-Delphi-GM Memorandum of Understanding-Delphi Restructuring dated July 31, 2007 and who satisfy the criteria described therein such that upon their retirement they would have

qualified for corporate contributions toward health care in retirement from GM, and their spouses, surviving spouses and dependents.

d. The term "surviving spouses" shall include surviving spouses of a Covered Group retiree as well as surviving spouses of Covered Group active employees who died or die prior to retirement under circumstances such that at the time of death the employee would have been eligible to retire under circumstances meeting any of the Covered Group classifications (a, b and c).

**GM-IAMAW Collective Bargaining Agreements**. The term "GM-IAMAW Collective Bargaining Agreements" shall mean any and all national agreements or memorandums of understanding entered between GM and the IAMAW, whether individually or collectively, regarding eligibility for Retiree Medical Benefits and Retiree Basic Life Insurance in retirement of members of the Covered Group.

**GM Health Care Plan for Salaried Retirees**. The term "GM Health Care Plan for Salaried Retirees" shall mean the GM health care plan generally applicable to eligible GM salaried employees with a date of service with GM on or before January 1, 1993 and who retire from GM under circumstances such that they qualify for GM contributions toward health care in retirement.

**GM Hourly Plan**. The term "GM Hourly Plan" shall mean Retiree Medical Benefits as provided pursuant to the General Motors Health Care Program for Hourly Employees to retiree members of the Covered Group that was in effect immediately prior to the Closing.

**GM-IAMAW National Agreement**. The term "GM-IAMAW National Agreement" shall mean the 2003 National Collective Bargaining Agreement between GM and the IAMAW.

**IAMAW**. The term "IAMAW" shall mean the International Association of Machinists and Aerospace Workers inclusive of any predecessor union the members of which the IAMAW acts as the authorized representative as defined in Section 1114(c)(1) of the Bankruptcy Code.

**IAMAW Releasees**. The term "IAMAW Releasees" shall mean the IAMAW, the Covered Group and anyone claiming on behalf of, through or under them by way of subrogation or otherwise.

**Newco Retiree Health Care Plan**. The term "Newco Retiree Health Care Plan" shall mean the GM Health Care Program for Salaried Retirees, including all amendments and modifications presently contemplated to take effect January 1, 2010, as adopted by Newco for the purpose of providing Retiree Medical Benefits to represented and non-represented retirees that qualify for such benefits, as may be modified or amended from time-to-time, and which shall be amended to include members of the Covered Group (when eligible) commencing January 1, 2010.

**Retiree Basic Life Insurance**. The term "Retiree Basic Life Insurance" shall mean all corporate provided life insurance in retirement for the former employee/retiree members of the Covered Group (when eligible) in accordance with the terms and conditions of an applicable employee welfare benefit plan.

3

Retiree Medical Benefits. The term "Retiree Benefits" shall mean all corporate contributions toward health care in retirement for the Covered Group (when eligible) in accordance with the terms and conditions of an applicable employee welfare benefit plan, including, but not limited to, hospital surgical medical, prescription drug, vision, dental, hearing aid.

Subsidiary. The term "Subsidiary" shall mean any corporation or other entity of which at least a majority of the outstanding stock or other beneficial interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or other governing body of such corporation or other entity (irrespective of whether or not at the time stock or other beneficial interests of any other class or classes of such corporation or other entity shall have or might have voting power by reason of the happening of any contingency) is at the time owned by Newco, or by one or more Subsidiaries, or by New Co and one or more Subsidiaries.

2.    **Provision and Scope of Newco Provided Retiree Medical Benefits.**

A.    <u>On and After Closing Date Through December 31, 2009</u>. For claims incurred on and after the Closing Date through December 31, 2009, Newco will provide Retiree Medical Benefits for the Covered Group (when eligible) in accordance with the terms of the GM Hourly Plan. As of January 1, 2010, all Newco obligations to provide Retiree Medical Benefits to the Covered Group (when eligible) in accordance with the GM Hourly Plan shall cease and be forever terminated. If the Closing Date occurs after December 31, 2009, Newco shall have no obligation to provide Retiree Medical Benefits pursuant to this Section 2.A. A claim is deemed incurred for purposes of this Section 2 as of the date treatment is provided, regardless of when such treatment was scheduled and regardless of whether such treatment was part of a continuation of related treatments.

B.    <u>On and After January 1, 2010</u>. For claims incurred on or after January 1, 2010, Newco will provide Retiree Medical Benefits to the Covered Group (when eligible) as follows:

(i)    The Newco Retiree Health Care Plan shall be amended to include the Covered Group (when eligible) as participants. Newco's obligation to provide Retiree Medical Benefits under the Newco Retiree Health Care Plan shall be fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare Single coverage ($4,140) and for pre-Medicare family coverage ($8,060) (the "Cap"). Newco will analyze and project Retiree Medical Benefit expenses on an annual basis and adjust the plan design as necessary to maintain benefit coverages within the Cap on an aggregate basis across both pre-Medicare single and pre-Medicare family coverage. For periods in which the Cap is exceeded, Newco will make whatever plan design changes it deems necessary to recover the overpayment in the next plan year as well as to adjust for any anticipated increases in Retiree Medical Benefits costs in the next year. For periods in which the Cap has not been reached, Newco will make whatever plan design changes it deems necessary to increase benefit levels to the extent of the Cap;

(ii)    Newco will provide Retiree Medical Benefits to members of the Covered Group (when eligible) as participants in the Newco Retiree Health Care Plan on the same terms and under the same conditions and basis as such benefits are provided to eligible

4

Newco represented and non-represented retirees, inclusive of all participant contributions, co-payments and deductibles and subject to all future plan design changes and increases or decreases, if any.

(iii)    Newco reserves the right to amend, modify or terminate the Newco Retiree Health Care Plan at any time, including the Cap; provided that any such amendment, modification, or termination shall be applied on an equal basis to all similarly situated participants in the Newco Retiree Health Care Plan. Newco shall not amend, modify or terminate the Newco Retiree Health Care Plan such that members of the Covered Group (when eligible) are disadvantaged or advantaged in relation to similarly situated represented or non-represented retiree participants.

(iv)    The IAMAW and the Covered Group will not in the future seek to negotiate any modifications or changes to the Retiree Medical Benefits provided by Newco to the Covered Group. For the avoidance of doubt, the IAMAW will not seek to obligate Newco to: (i) increase the Cap; (ii) make any other payments for the purpose of providing Retiree Medical Benefits to the Covered Group; or (iii) provide for or assume the cost of Retiree Medical Benefits for the Covered Group through any other means. All disputes regarding the application of plan policies or claims for benefits shall be addressed according to the appeal process set forth in the Newco Retiree Health Care Plan; provided, however, that nothing in this Section 2.B(iv) shall be interpreted to preclude a participant from filing a claim for benefits under the Newco Retiree Health Care Plan in a court of competent jurisdiction after exhaustion of the internal review processes.

(v)    All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Medical Benefits for the Covered Group arising from any GM-IAMAW Collective Bargaining shall be forever terminated as of the Closing Date.

3.    **Retiree Basic Life Insurance.**

Effective the first of the month following the Closing, Newco will provide Retiree Basic Life Insurance in retirement to retiree members of the Covered Group in the maximum fixed amount of $10,000 in accordance with the terms of the GM-IAMAW National Agreement as modified by Exhibit A to this Settlement Agreement. Retirees whose Retiree Basic Life Insurance entitlement is below $10,000 will remain at the lower amount. Current active employee members of the Covered Group will have Retiree Basic Life Insurance in the fixed amount of $10,000. The IAMAW will not in the future seek to negotiate any modifications or changes to the Retiree Basic Life Insurance provided by Newco to the Covered Group. All disputes regarding the application of plan policies or claims for Retiree Basic Life Insurance benefits shall be addressed according to the appeal process set forth in the Retiree Basic Life Insurance plan as modified by the Modifications to the 2003 Supplemental Agreement – Life and Disability Program contained in Exhibit A; provided, however, that nothing in this Section 3 shall be interpreted to preclude a participant from filing a claim for Retiree Basic Life Insurance in a court of competent jurisdiction after exhaustion of the internal review processes. All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Basic Life

5

Insurance for the Covered Group arising from any GM-IAMAW Collective Bargaining shall be forever terminated as of the Closing Date

4.    **Newco Assumption of the GM-IAMAW National Agreement.**

Effective as of the Closing, Newco will assume the terms and conditions of the GM-IAMAW 2003 National Agreement, but only as modified as reflected by Exhibit A. Assumption of the terms and conditions of the GM-IAMAW 2003 National Agreement shall not constitute assumption of GM's pre-Closing Liabilities under the GM-IAMAW National Agreement or assumption of any collective bargaining agreements that are outside the scope of the GM-IAMAW National Agreement, including, without limitation, memorandums of understanding regarding Delphi restructuring.

5.    **Releases and Certain Related Matters**

A.    <u>Consent to Entry of the Judgment</u>.  In consideration of Newco's entry into this Settlement Agreement, and the other obligations of Newco contained herein, the IAMAW, acting on their own behalf and as the authorized representative of the Covered Group, hereby consents to the entry of the Judgment, which shall be binding upon all members of the Covered Group.

B.    <u>IAMAW Releasees</u>.  As of the Closing Date, each IAMAW Releasee releases and forever discharges each other IAMAW Releasee and shall be forever released and discharged with respect to any and all rights, claims or causes of action that such IAMAW Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of or based upon or otherwise related to (i) any claims arising, or which could have been raised concerning the provision of Retiree Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations; and (iii) any action taken to carry out this Settlement Agreement in accordance with this Settlement Agreement and applicable law.

C.    <u>Newco</u>.  As of the Closing Date, the IAMAW Releasees release and forever discharge Newco, and its current or former officers, directors, employees, agents, Subsidiaries, Affiliates, and any and all of its welfare and pension benefit plans and its fiduciaries, with respect to any and all rights, claims or causes of action that any IAMAW Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to (i) any of the claims arising, or which could have been raised, concerning any alleged obligation of Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations and (iii) any action taken to carry out this Settlement Agreement in accordance with this Settlement Agreement and applicable law.

6.    **Dispute Resolution**

A.    <u>Coverage</u>.  Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement

6

Agreement shall be enforceable only by Newco and the IAMAW. The Approval Order will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application or interpretation of this Settlement Agreement. In the event that the bankruptcy proceeding has been closed or dismissed, the parties agree that any necessary litigation to resolve such disputes shall be brought before the U.S. District Court for the Eastern District of Michigan (the "Court"). Each of the parties hereto expressly and irrevocably submits to the jurisdiction of the Bankruptcy Court or the Court, as applicable, and expressly waives any argument it may have with respect to venue or forum <u>non conveniens</u>. Notwithstanding the foregoing, any disputes relating solely to eligibility for participation or entitlement to benefits under the Newco Retiree Health Care Plan shall be resolved in accordance with the applicable procedures such plan shall establish, and nothing in this Settlement Agreement precludes members of the Covered Group from pursuing appropriate judicial review regarding such disputes after exhaustion of administrative remedies.

      B.    <u>Attempt at Resolution</u>. Although the Bankruptcy Court retains exclusive jurisdiction to resolve disputes arising out of or relating to the enforcement, implementation, application or interpretation of this Settlement Agreement, the parties agree that prior to seeking recourse to the Bankruptcy Court or the Court, the parties shall attempt to resolve the dispute through the following process:

      (i)    The aggrieved party shall provide the party alleged to have violated this Settlement Agreement ("<u>Dispute Party</u>") with written notice of such dispute, which shall include a description of the alleged violation and identification of the Section(s) of the Settlement Agreement allegedly violated. Such notice shall be provided so that it is received by the Dispute Party no later than 180 calendar days from the date of the alleged violation or the date on which the aggrieved party knew or should have known of the facts that give rise to the alleged violation, whichever is later, but in no event longer than 3 years from the date of the alleged violation.

      (ii)    If the Dispute Party fails to respond within 21 calendar days from its receipt of notice, the aggrieved party may seek recourse with the Bankruptcy Court or the Court; provided, however, that the aggrieved party waives all claims related to a particular dispute against the Dispute Party if the aggrieved party fails to bring the dispute before the Bankruptcy Court or the Court within 180 calendar days from the date of sending the notice.

      (iii)    Failure of the Dispute Party to comply to comply with time limits provided in this Section 6 shall constitute waiver of any claim arising from the facts and circumstances giving rise to the dispute; provided, however, that the time periods in this Section 6 may be extended by agreement of the parties to the particular dispute.

      C.    <u>Alternate Means of Resolution</u>. Nothing in this Section shall preclude Newco and the IAMAW from agreeing on any other form of alternative dispute resolution or from agreeing to extend the time periods specified in this section.

7.     **Submission of the Settlement Agreement**

The parties shall submit this Settlement Agreement to the Bankruptcy Court and jointly work diligently to have this Settlement Agreement approved by the Bankruptcy Court as soon as possible. The parties shall give notice to all affected individuals as required by the Court. The parties shall seek from the Bankruptcy Court any order necessary to comply with the Federal Rules of Bankruptcy Procedures or any other applicable rule of procedure or statutory requirement that must be met in order to give the Settlement Agreement full force and effect.

8.     **Condition**

This Settlement Agreement is conditioned upon the Bankruptcy Court having entered a Judgment approving and accepting this Settlement Agreement in all material respects and as to all parties, including Newco, the IAMAW, and the Covered Group and the Closing shall have occurred in reliance on such Judgment. Such Approval Order shall be reasonably acceptable in form and substance to Newco and the IAMAW. This condition shall be deemed to have failed upon issuance of an order disapproving this Settlement Agreement, or upon the issuance of an order approving only a portion of this Settlement Agreement but disapproving other portions in a material respect, unless Newco and the IAMAW, acting on its own behalf and as the authorized representative of the Covered Group, agree otherwise in writing. The failure of this condition shall render this Settlement Agreement void.

9.     **No Admission; No Prejudice**

Notwithstanding anything to the contrary, whether set forth in this Settlement Agreement, any settlement agreements, the Judgment, any documents filed in the bankruptcy proceeding, any documents, whether provided in the course of or in any manner whatsoever relating to the discussions between Newco and the IAMAW with respect to Retiree Medical Benefits, Retiree Basic Life Insurance, any term sheet, this Settlement Agreement, whether distributed, otherwise made available to or obtained by any person or organization, including without limitation, Newco active employees, members of the Covered Group or their spouses, surviving spouses or dependents, or to the IAMAW or Newco in the course of the negotiations that led to entry into this Settlement Agreement, or otherwise:

A.     Newco. Newco has denied and continues to deny that it is bound by any IAMAW Collective Bargaining Agreements, regardless of form, or prior settlement agreements between GM and the IAMAW, if any, and, therefore, is not responsible for providing Retiree Medical Benefits or Retiree Basic Life Insurance to the Covered Group. Neither this Settlement Agreement nor any document referred to or contemplated herein may be construed as, or may be viewed or used as, an Admission by or against Newco of any fault, wrongdoing or liability whatsoever, or as an Admission by Newco of any claim or argument made by or on behalf of the IAMAW or the Covered Group, that obligated Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance in retirement to the Covered Group. Without limiting in any manner whatsoever the generality of the foregoing, the performance of any settlement actions by Newco may not be construed, viewed or used as an Admission by or against Newco.

8

B.    The IAMAW, Covered Group. The IAMAW, acting on their own behalf and as the authorized representative of the Covered Group, claims and continues to claim that the allegations, claims and contentions made against Newco have merit. Neither this Settlement Agreement nor any document referred to or contemplated herein nor any previous settlement agreement between GM and any of the IAMAW or actions taken to effectuate this Settlement Agreement may be construed as, or may be viewed or used as, an Admission by or against the IAMAW or the Covered Group of any fault, wrongdoing or liability whatsoever or of the validity of any claim or argument made by or on behalf of Newco that Newco has a unilateral right to modify or terminate retiree health care benefits or that retiree health care benefits are not vested. Without limiting in any manner whatsoever the generality of the foregoing, the performance of any actions taken to effectuate this Settlement Agreement by the IAMAW or the Covered Group, including without limitation, the acceptance of any Retiree Medical Benefits or Retiree Basic Life Insurance from Newco may not be construed, viewed or used as an Admission by or against the IAMAW or the Covered Group that Newco lacks the unilateral right to modify or terminate retiree health care benefits

C.    No Prejudice. Entering into this Settlement Agreement and performance of any of actions taken to effectuate this Settlement Agreement shall not be construed as, or deemed to be evidence of, an Admission by any of the parties hereto, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal or forum for any purpose whatsoever other than to enforce the provisions of this Settlement Agreement or to obtain or seek approval of this Settlement Agreement. It is intended that Newco, the IAMAW and the Covered Group shall not use this Settlement Agreement, or anything occurring in connection with reaching this Settlement Agreement, as evidence against Newco, the IAMAW or the Covered Group in any circumstance except where the parties are operating under or enforcing this Settlement Agreement or the Judgment approving this Settlement Agreement

D.    For the purposes of this Section 9, Newco and the IAMAW refer to them, respectively, as organizations, as well as any and all of their respective current or former directors, officers, employees, and agents.

10.    **Duration and Termination of Settlement Agreement**

This Settlement Agreement will remain in effect unless and until terminated in accordance with this Section and as provided for in Section 8 of this Settlement Agreement. Termination of this Settlement Agreement may occur as follows:

(i)    If the Judgment is denied in whole or in material part, either Newco or the IAMAW, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

(ii)    If an Approval Order satisfactory to the parties, as described in Section 8 of this Settlement Agreement or any other order authorizing the Closing, is entered by the Bankruptcy Court, but overturned on appeal or otherwise such that there is or may be a material negative impact on the rights, obligations or benefits provided hereunder to the IAMAW, the

9

Covered Group or Newco, either Newco or the IAMAW, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement upon 30 days' written notice to the other parties and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

(iii) If any court, agency or other tribunal of competent jurisdiction issues a determination that any part of this Settlement Agreement is prohibited or unenforceable in any material respect, either Newco or the IAMAW, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

11.    **Other Provisions**

A.    References in this Settlement Agreement to "Sections," "Paragraphs" and "Exhibits" refer to the Sections, Paragraphs, and Exhibits of this Settlement Agreement unless otherwise specified.

B.    This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement. This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement.

C.    The captions used in this Settlement Agreement are for convenience of reference only and do not constitute a part of this Settlement Agreement and will not be deemed to limit, characterize or in any way affect any provision of this Settlement Agreement, and all provisions of this Settlement Agreement will be enforced and construed as if no captions had been used in this Settlement Agreement.

D.    This Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

E.    No party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other parties, and any purported assignment in violation of this sentence shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. For purposes of clarification and without limitation as to other beneficiaries, GM is intended to be a third party beneficiary of this Settlement Agreement.

F.    Each of Newco, the IAMAW and the Covered Group shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

10

G.    This Settlement Agreement shall be construed in accordance with applicable federal laws of the United States of America.

H.    Any provision of this Settlement Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent any provision of this Settlement Agreement is invalid or unenforceable as provided for in this Section 10, it shall be replaced by a valid and enforceable provision agreed to by Newco and the IAMAW, acting on its own behalf and as the authorized representatives of the Covered Group (which agreement shall not be unreasonably withheld) that preserves the same economic effect for the parties under this Settlement Agreement; provided however, that to the extent that such prohibited or unenforceable provision cannot be replaced as contemplated and the consequences of such prohibited or unenforceable provision causes this Settlement Agreement to fail of its essential purpose then this Settlement Agreement may be voided at the sole discretion of the party seeking the benefit of the prohibited or unenforceable provision.

I.    Any notice, request, information or other document to be given under this Settlement Agreement to any of the parties by any other party shall be in writing and delivered personally, or sent by Federal Express or other carrier which guarantees next-day delivery, transmitted by facsimile, transmitted by email if in an Adobe Acrobat PDF file, or sent by registered or certified mail, postage prepaid, at the following addresses. All such notices and communication shall be effective when delivered by hand, or, in the case of registered or certified mail, Federal Express or other carrier, upon receipt, or, in the case of facsimile or email transmission, when transmitted (provided, however, that any notice or communication transmitted by facsimile or email shall be immediately confirmed by a telephone call to the recipient):

If to Newco, addressed to:

Diana Tremblay
GMNA Vice President of Labor Relations
Newco
2000 Centerpoint Parkway
Pontiac, MI 48341
Tel: (248) 753-2243

in each case with copies to:

Francis S. Jaworski
Office of the General Counsel
Newco
Mail Code 482-C25-B21
300 Renaissance Center
P.O. Box 300
Detroit, MI 48265-3000
Tel: (313) 665-4914

11

Cadawalder, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Attention: R. Ronald Hopkinson/Lisa J. Pauquette/John J. Rapisardi
Tel: (212) 504-6000

If to the IAMAW, addressed to:

Frederick Perillo
Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, s.c.
1555 North Rivercenter Drive, Suite 202
Milwaukee, WI 53212
fp@previant.com
414-271-4500 office
414-271-6308 facsimile

in each case with copies to:

David Neigus
Associate General Counsel
International Association of Machinists and Aerospace Workers
9000 Machinists Place
Upper Marlboro, MD 20772
dneigus@iamaw.org
301-967-4510 (office)
301-967-4594 (fax)

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED:**

| By: _____ | Date: _____, 2009 |
|---|---|
| Vehicle Acquisition Holding, LLC ("Newco") | |
| By: _(signature)_ | Date: _JUNE 16_, 2009 |
| International Association of Machinists and Aerospace Workers ("IAMAW") | |

12

June 15, 2009

International Association of Machinists and Aerospace Workers (IAMAW).

      Re:  Proposed Memorandum of Understanding Regarding Retiree Health Care, Retiree Basic Life Insurance and CBA Modifications.

The IAMAW on behalf of itself and as representative of the Covered Group, hereby agrees that, if (i) a sale of substantially all of GM's assets under Section 363(b) of the Bankruptcy Code occurs; (ii) the Bankruptcy Court approves the Settlement Agreement between the IAMAW and the purchaser of such assets; and (iii) following the court approval of the Settlement Agreement the purchaser of such assets becomes fully bound to the terms of the Settlement Agreement, the IAMAW, shall, in consideration therefor and to clarify treatment of all rights and benefits under the Settlement Agreement, on the occurrence of such events:

      (i) withdraw all claims filed or otherwise made against GM and its subsidiaries, and their employees, officers, directors and agents, relating to Retiree Medical Benefits and Retiree Basic Life Insurance and pursuant to any GM-IAMAW National Agreements;  and

      (ii) not assert or prosecute any such claims thereafter, and all such claims shall be deemed to be waived and released.

Nothing herein shall be deemed to waive or release any rights or benefits under the terms of the Settlement Agreement entered into as a part of the 363(b) sale transaction.

The IAMAW and the Covered Group agree to reasonably cooperate with GM and to take such further actions as may be appropriate to effectuate or confirm the extinguishment of the claims described above as of the closing date of a sale of substantially all of GM's assets under Section 363(b) of the Bankruptcy Code.

All initially capitalized terms herein shall have the same meaning as set forth in the Settlement Agreement entered into between Newco and the IAMAW dated June 15, 2009.

Please confirm your agreement to the foregoing by executing a copy of this letter and delivering same to Francis S. Jaworski, General Motors Corporation, Mail Code 482-C25-B21, 300 Renaissance Center, P.O. Box 300, Detroit, MI, 48625-3000 with an email copy to francis.s.jaworski@gm.com.

      Respectfully,

      GENERAL MOTORS CORPORATION

      BY: _____
          Francis S. Jaworski

Acknowledged and Agreed:

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS

BY:

Name: FREDERICK PERILLO

Title: ATTORNEY

Dated: JUNE 16 , 2009

2

**Newco-IBEW Settlement Agreement Regarding Retiree Health Care, Life Insurance & Modification & Assumption of CBA**

MESSAGE FROM IBEW TO GM/DELPHI RETIREES:

Dear Brothers and Sisters:

As you probably know, General Motors is in bankruptcy in an effort to reorganize as a solution to its current economic crisis, which is pad of the greater economic crisis confronting the industry and the country. The Obama Administration, through the U.S. Department of Treasury, has agreed to loan money to General Motors as part of this restructuring effort, but only under certain conditions. The conditions have required major concessions from nearly every constituency, including all of GM's unions.

Part of this restructuring process is a proposed sale of General Motors' assets to a new corporation, which will become the new and surviving GM.  The Bankruptcy Court will hold a hearing on this sale in the near future. The key points in the sale are that the new GM going forward will have a fresh start, funded in pad by loans from the U.S. Department of Treasury, which will own the majority of GM; and that the assets of General Motors will be sold to the new GM free and clear of liabilities. Active employees of the IBEW, as well as other unions, are also making concessions as part of this restructuring.

In addition, the Bankruptcy Court will be asked to approve a new program regarding retiree medical benefits, explained below.

**Who will be covered**: You will be covered by the new retiree medical benefits if you ----

(a) retired under an IBEW-GM collective bargaining agreement that called for you to receive a contribution toward your retirement benefits from GM; or

(b) are a seniority employee who is working for the new GM under an IBEW-GM collective bargaining agreement, and who retires from the new GM in the future, if you would have been eligible for a GM contribution to your retiree benefits under the 2003 IBEW National contract; or

(c) are a Delphi employee who was represented by the IBEW and covered by the Delphi-GM restructuring agreement in 2007, and who would have been eligible for retiree medical benefits which GM agreed to provide in the Delphi bankruptcy; or

(d) the surviving spouse of a covered retiree, or the surviving spouse of an active covered employee who die prior to retirement under circumstances where they would have been eligible at the time of death.

**Retiree benefits in 2009**: Your benefits will be in accordance with the GM Hourly Plan through the end of 2009. Effective January 1, 2010, the new GM shall have no responsibility under the old GM Hourly Plan. Treatment is covered under this provision only if the treatment actually occurs on or before December 31, 2009.

**New Retiree Benefits on January 1, 2010**: Starting on January 1, 2010, all retiree medical benefits will be provided through the Newco Retiree Health Care Plan if you are in the covered group above. (This plan will also include unionized and non-unionized employees of the new GM who are not represented by the UAW, including managerial employees.) New GM's obligation is fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare single coverage ($4,140) and for pre-Medicare family coverage ($8,060). There will be no retiree medical benefit for those retirees who are Medicare eligible. New GM will not be obligated to contribute more than this amount of money toward retiree benefits.

These benefits will be adjusted on an annual basis to re-design the plan as necessary to keep the cost below the cap. If costs go over the cap in one year, the plan will be changed in the next to make sure that the new benefits stay under the cap, and the overpayment for the previous year is recovered.

We believe the initial level of benefits will be like the amounts shown below; however, the benefits are still subject to the cap given above. They are not guaranteed at these amounts, and over time, the benefits are likely to be adjusted downward to fit within the cap upon costs.

General Description of Retiree Medical Plan

The following reflects a general description of the level of Retiree Medical Benefit coverage contemplated as of January 1,2010:

| | |
|---|---|
| Plan Offering | • Nationwide HSA-qualified PPO |
| Monthly Contributions | • $160 (single)<br>• $220 (two)<br>• $270 (three or more) |
| Annual Deductible | • $2,500 (single)<br>• $5,000 (family) (single member may satisfy) |
| Medical Co-Insurance (after deductible) | • 20% (in-network)<br>• 40% (out of network) |
| Out-of-Pocket Maximum | • $3,500 (single)<br>• $7,000 (family) (single member may satisfy) |
| Behavioral Health (after deductible) | • Same as medical. |
| RX Retail (after deductible) | • 20% (in-network)<br>• 40%  (out-of-network) |

| RX Mail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
|---|---|
| | |
| Vision Program | No longer offered |
| | |
| Dental Program | No longer offered |
| | |
| Coverage Termination (Participant level) | • Retirees, surviving spouses, and eligible dependents who are age 65 or older, and<br>• Retirees, surviving spouses, and eligible dependents who are under age 65 but eligible for Medicare. |

**Benefits may be terminated; No other benefits to be provided**: The retiree medical benefits are not guaranteed. New GM may terminate the plan in the future, or reduce benefits. If it does, however, it will make the same reductions (or terminate the plan) not just for IBEW-represented retirees, but for all groups in the plan, including for example managerial employees who are in the plan.

As part of the agreement by the New GM to provide these benefits, the IBEW has agreed not to ask New GM to provide more benefits, or to increase the amount of cap, or to attempt to replace these benefits or fund these benefits in any other way.

**Other obligations are terminated; Releases**. As part of the Court approval of the sale, all other obligations GM has toward retiree health care are being terminated. The New GM will not have any obligations for retiree benefits incurred before the sale. It will have only the obligations described above. IBEW is also giving a release to GM of all its other obligations regarding retiree medical insurance as a condition of preserving the benefits above. In addition, you are releasing the IBEW from liability in connection with matters relating to retiree benefits as well.

**Life Insurance**. Effective the first of the month after the sale, New GM will provide Basic Life Insurance in retirement in the maximum fixed amount of $10,000 for retirees in the covered group described above that are current and future retirees. Retirees whose Basic Life Insurance entitlement is below $10,000 will remain at the lower amount. Current employees, on the date of retirement will have Basic Life Insurance in the fixed amount of $10,000.

**IBEW to act as representative of retirees**. Under the Bankruptcy Code, the union is presumed to act as the representative of retirees whose benefits are being modified if the union was their representative when they were active employees. IBEW intends to act as your representative for the purpose of accomplishing these benefit changes.

**Alternatives.** We recognize that these benefit changes are painful; however, if we do not enter into these agreements, you have no guarantees that your benefits will not be terminated immediately or soon after the sale. We anticipate the sale will be successful,

as it was in the case of Chrysler, and that going forward, the only viable company will be the New GM. We expect New GM to acquire all or substantially all of the assets of the old company. We do not expect old GM to be able to provide benefits in the future.

We could have attempted to de-rail the sale. We know that this effort was made in Chrysler and was not successful. We also know that if we could stop the sale, it would not necessarily protect your benefits in the future; and there is a good chance it would destroy GM completely.

None of these options are desirable. We have decided to accept these concessions in hopes of continuing to provide you at least with some level of benefits into the future, while preserving and protecting jobs at the New GM.

**This Document is a Summary**. The actual terms of the settlement agreement with the New GM are more complicated than this summary. If you want to read the entire document, you may do so by going to the website address in the legal notice enclosed.

**If you Agree**. You do not need to do anything at this time.

**If you Disagree**. You must file an objection as explained in the legal notice enclosed.

# NEWCO-IBEW SETTLEMENT AGREEMENT
# REGARDING RETIREE HEALTH CARE, LIFE INSURANCE
# & MODIFICATION & ASSUMPTION OF CBA

This Settlement Agreement (together with the Exhibits hereto, the "Settlement Agreement"), is between [Vehicle Acquisition Holding, LLC] ("Newco"), by and through its attorneys, and the International Brotherhood of Electrical Workers ("IBEW"). The IBEW also enter into this Settlement Agreement as the authorized representative, as defined in Section 1114(c)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), of those persons receiving retiree benefits, as defined in Section 1114(a) of the Bankruptcy Code, pursuant to collectively bargained plans, programs and/or agreements between Newco (or General Motors Corporation ("GM")) and the IBEW (or an IBEW predecessor) and who are members of the Covered Group, as defined herein. Collectively, the IBEW, Newco, and the Covered Group are referred to as the "Parties."

This Settlement Agreement shall cover and has application to;

- the Covered Group;

- The IBEW; and

- Newco.

GM agreed to provide certain retiree medical benefits in various collectively bargained agreements with the IBEW. Subsequent to entering those collective bargaining agreements, GM filed a bankruptcy action known as *In Re General Motors Corp., et al.*, No. 09-050026 (REG), U.S. Bankruptcy Court (S.D. N.Y.), pursuant to which Newco purchased certain assets of GM.

The IBEW asserts, and Newco denies, that Newco is required to continue to provide retiree medical benefits and retiree life insurance in accordance with those collective bargaining agreements. Newco maintains that it is not obligated to assume and abide by the GM-IBEW collective bargaining agreements. After due consideration of the factual and legal arguments regarding this issue, as well as the costs, risks, and delays associated with litigating the issue, Newco and the IBEW have agreed to resolve all claims regarding Retiree Medical Benefits and Retiree Basic Life Insurance on the basis set forth in this Settlement Agreement and Newco has agreed to assume the terms of the 2003 National Agreement between GM and the IBEW, subject to the modifications set forth in this Settlement Agreement. The parties agree to present this Settlement Agreement to the Bankruptcy Court for approval in connection with the contemplated sale of assets between GM and Newco.

## 1. Definitions

Admissions. The term "Admissions" shall mean any statement, whether written or oral, any act or conduct, or any failure to act, that could be used (whether pursuant to Rules 801(d)(2) or 804(b)(3) of the Federal Rules of Evidence, a similar rule or standard under other applicable law, the doctrines of waiver or estoppel, other rule, law, doctrine or practice, or otherwise) as evidence in a proceeding of proof of agreement with another party's position or proof of adoption of, or acquiescence to, a position that is contrary to the interest of the party making such statement, taking such action, or failing to act.

1

Affiliate. The term "Affiliate" shall mean, with respect to any specified person or entity, any other person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with such specified person or entity.

Approval Order or Judgment. The terms "Approval Order" or "Judgment" shall mean an order obtained from the Bankruptcy Court approving and incorporating this Settlement Agreement in all respects, as set forth in Section 8 of this Settlement Agreement.

Bankruptcy Court. The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York with respect to *In Re General Motors Corp., et al.,* No. 09-050026 (REG).

Closing. The term "Closing" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

Closing Date. The term "Closing Date" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

Covered Group. The term "Covered Group" shall mean:

a. All GM employees who were represented with respect to the terms and conditions of their employment with GM by the IBEW and who retired from GM under circumstances such that they were eligible for GM contributions to their health care in retirement according to the terms of an IBEW collective bargaining agreement in effect at the time of their retirement, and their spouses, surviving spouses and dependents;

b. All active GM employees who are represented with respect to the terms and conditions of their employment with GM by the IBEW and who had attained seniority with GM as of the Closing and who transfer to Newco and retire from Newco under circumstances such that they would have qualified for corporate contributions toward health care in retirement as determined according to criteria for such eligibility as existed in the 2003 IBEW National Agreement, and their spouses, surviving spouses and dependents.

c. All Delphi employees who were represented with respect to the terms and conditions of their employment with Delphi by the IBEW and who described in Section 4 of the Attachment B to the IAM-Delphi-GM Memorandum of Understanding-Delphi Restructuring dated July 31, 2007 and who satisfy the criteria described therein such that upon their retirement they would have qualified for corporate contributions toward health care in retirement from GM, and their spouses, surviving spouses and dependents.

2

d. The term "surviving spouses" shall include surviving spouses of a Covered Group retiree as well as surviving spouses of Covered Group active employees who died or die prior to retirement under circumstances such that at the time of death the employee would have been eligible to retire under circumstances meeting any of the Covered Group classifications (a, b and c).

**GM-IBEW Collective Bargaining Agreements.** The term "GM-IBEW Collective Bargaining Agreements" shall mean any and all national agreements or memorandums of understanding entered between GM and the IBEW, whether individually or collectively, regarding eligibility for Retiree Medical Benefits and Retiree Basic Life Insurance in retirement of members of the Covered Group.

**GM Health Care Plan for Salaried Retirees.** The term "GM Health Care Plan for Salaried Retirees" shall mean the GM health care plan generally applicable to eligible GM salaried employees with a date of service with GM on or before January 1, 1993 and who retire from GM under circumstances such that they qualify for GM contributions toward health care in retirement.

**GM Hourly Plan.** The term "GM Hourly Plan" shall mean Retiree Medical Benefits as provided pursuant to the General Motors Health Care Program for Hourly Employees to retiree members of the Covered Group that was in effect immediately prior to the Closing.

**GM-IBEW National Agreement.** The term "GM-IBEW National Agreement" shall mean the 2003 National Collective Bargaining Agreement between GM and the IBEW.

**IBEW.** The term "IBEW" shall mean the International Brotherhood of Electrical Workers inclusive of any predecessor union the members of which the IBEW acts as the authorized representative as defined in Section 1114(c)(1) of the Bankruptcy Code.

**IBEW Releasees.** The term "IBEW Releasees" shall mean the IBEW, the Covered Group and anyone claiming on behalf of, through or under them by way of subrogation or otherwise.

**Newco Retiree Health Care Plan.** The term "Newco Retiree Health Care Plan" shall mean the GM Health Care Program for Salaried Retirees, including all amendments and modifications presently contemplated to take effect January 1, 2010, as adopted by Newco for the purpose of providing Retiree Medical Benefits to represented and non-represented retirees that qualify for such benefits, as may be modified or amended from time-to-time, and which shall be amended to include members of the Covered Group (when eligible) commencing January 1, 2010.

**Retiree Basic Life Insurance.** The term "Retiree Basic Life Insurance" shall mean all corporate provided life insurance in retirement for the former employee/retiree members of the Covered Group (when eligible) in accordance with the terms and conditions of an applicable employee welfare benefit plan.

**Retiree Medical Benefits.** The term "Retiree Benefits" shall mean all corporate contributions toward health care in retirement for the Covered Group (when eligible) in accordance with the terms and conditions of an applicable employee welfare benefit plan, including, but not limited to, hospital surgical medical, prescription drug, vision, dental, hearing aid.

3

Subsidiary. The term "Subsidiary" shall mean any corporation or other entity of which at least a majority of the outstanding stock or other beneficial interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or other governing body of such corporation or other entity (irrespective of whether or not at the time stock or other beneficial interests of any other class or classes of such corporation or other entity shall have or might have voting power by reason of the happening of any contingency) is at the time owned by Newco, or by one or more Subsidiaries, or by New Co and one or more Subsidiaries.

2.    **Provision and Scope of Newco Provided Retiree Medical Benefits.**

A.    On and After Closing Date Through December 31, 2009. For claims incurred on and after the Closing Date through December 31, 2009, Newco will provide Retiree Medical Benefits for the Covered Group (when eligible) in accordance with the terms of the GM Hourly Plan. As of January 1, 2010, all Newco obligations to provide Retiree Medical Benefits to the Covered Group (when eligible) in accordance with the GM Hourly Plan shall cease and be forever terminated. If the Closing Date occurs after December 31, 2009, Newco shall have no obligation to provide Retiree Medical Benefits pursuant to this Section 2.A. A claim is deemed incurred for purposes of this Section 2 as of the date treatment is provided, regardless of when such treatment was scheduled and regardless of whether such treatment was part of a continuation of related treatments.

B.    On and After January 1, 2010. For claims incurred on or after January 1, 2010, Newco will provide Retiree Medical Benefits to the Covered Group (when eligible) as follows:

(i)    The Newco Retiree Health Care Plan shall be amended to include the Covered Group (when eligible) as participants. Newco's obligation to provide Retiree Medical Benefits under the Newco Retiree Health Care Plan shall be fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare Single coverage ($4,140) and for pre-Medicare family coverage ($8,060) (the "Cap"). Newco will analyze and project Retiree Medical Benefit expenses on an annual basis and adjust the plan design as necessary to maintain benefit coverages within the Cap on an aggregate basis across both pre-Medicare single and pre-Medicare family coverage. For periods in which the Cap is exceeded, Newco will make whatever plan design changes it deems necessary to recover the overpayment in the next plan year as well as to adjust for any anticipated increases in Retiree Medical Benefits costs in the next year. For periods in which the Cap has not been reached, Newco will make whatever plan design changes it deems necessary to increase benefit levels to the extent of the Cap;

(ii)    Newco will provide Retiree Medical Benefits to members of the Covered Group (when eligible) as participants in the Newco Retiree Health Care Plan on the same terms and under the same conditions and basis as such benefits are provided to eligible Newco represented and non-represented retirees, inclusive of all participant contributions, co-payments and deductibles and subject to all future plan design changes and increases or decreases, if any.

4

(iii)    Newco reserves the right to amend, modify or terminate the Newco Retiree Health Care Plan at any time, including the Cap; provided that any such amendment, modification, or termination shall be applied on an equal basis to all similarly situated participants in the Newco Retiree Health Care Plan. Newco shall not amend, modify or terminate the Newco Retiree Health Care Plan such that members of the Covered Group (when eligible) are disadvantaged or advantaged in relation to similarly situated represented or non-represented retiree participants.

(iv)    The IBEW and the Covered Group will not in the future seek to negotiate any modifications or changes to the Retiree Medical Benefits provided by Newco to the Covered Group. For the avoidance of doubt, the IBEW will not seek to obligate Newco to: (i) increase the Cap; (ii) make any other payments for the purpose of providing Retiree Medical Benefits to the Covered Group; or (iii) provide for or assume the cost of Retiree Medical Benefits for the Covered Group through any other means. All disputes regarding the application of plan policies or claims for benefits shall be addressed according to the appeal process set forth in the Newco Retiree Health Care Plan; provided, however, that nothing in this Section 2.B(iv) shall be interpreted to preclude a participant from filing a claim for benefits under the Newco Retiree Health Care Plan in a court of competent jurisdiction after exhaustion of the internal review processes.

(v)    All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Medical Benefits for the Covered Group arising from any GM-IBEW Collective Bargaining shall be forever terminated as of the Closing Date.

3.    **Retiree Basic Life Insurance.**

Effective the first of the month following the Closing, Newco will provide Retiree Basic Life Insurance in retirement to retiree members of the Covered Group in the maximum fixed amount of $10,000 in accordance with the terms of the GM-IBEW National Agreement as modified by Exhibit A to this Settlement Agreement. Retirees whose Retiree Basic Life Insurance entitlement is below $10,000 will remain at the lower amount. Current active employee members of the Covered Group will have Retiree Basic Life Insurance in the fixed amount of $10,000. The IBEW will not in the future seek to negotiate any modifications or changes to the Retiree Basic Life Insurance provided by Newco to the Covered Group. All disputes regarding the application of plan policies or claims for Retiree Basic Life Insurance benefits shall be addressed according to the appeal process set forth in the Retiree Basic Life Insurance plan as modified by the Modifications to the 2003 Supplemental Agreement – Life and Disability Program contained in Exhibit A; provided, however, that nothing in this Section 3 shall be interpreted to preclude a participant from filing a claim for Retiree Basic Life Insurance in a court of competent jurisdiction after exhaustion of the internal review processes. All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Basic Life Insurance for the Covered Group arising from any GM-IBEW Collective Bargaining shall be forever terminated as of the Closing Date

5

4.    **Newco Assumption of the GM-IBEW National Agreement**

Effective as of the Closing, Newco will assume the terms and conditions of the GM-IBEW 2003 National Agreement, but only as modified as reflected by Exhibit A. Assumption of the terms and conditions of the GM-IBEW 2003 National Agreement shall not constitute assumption of GM's pre-Closing Liabilities under the GM-IBEW National Agreement or assumption of any collective bargaining agreements that are outside the scope of the GM-IBEW National Agreement, including, without limitation, memorandums of understanding regarding Delphi restructuring.

5.    **Releases and Certain Related Matters**

A.    Consent to Entry of the Judgment. In consideration of Newco's entry into this Settlement Agreement, and the other obligations of Newco contained herein, the IBEW, acting on their own behalf and as the authorized representative of the Covered Group, hereby consents to the entry of the Judgment, which shall be binding upon all members of the Covered Group.

B.    IBEW Releasees. As of the Closing Date, each IBEW Releasee releases and forever discharges each other IBEW Releasee and shall be forever released and discharged with respect to any and all rights, claims or causes of action that such IBEW Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of or based upon or otherwise related to (i) any claims arising, or which could have been raised concerning the provision of Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations; and (iii) any action taken to carry out this Settlement Agreement in accordance with this Settlement Agreement and applicable law.

C.    Newco. As of the Closing Date, the IBEW Releasees release and forever discharge Newco, and its current or former officers, directors, employees, agents, Subsidiaries, Affiliates, and any and all of its welfare and pension benefit plans and its fiduciaries, with respect to any and all rights, claims or causes of action that any IBEW Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to (i) any of the claims arising, or which could have been raised, concerning any alleged obligation of Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations and (iii) any action taken to carry out this Settlement Agreement in accordance with this Settlement Agreement and applicable law.

6.    **Dispute Resolution**

A.    Coverage. Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement Agreement shall be enforceable only by Newco and the IBEW. The Approval Order will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application or interpretation of this Settlement Agreement. In the

6

event that the bankruptcy proceeding has been closed or dismissed, the parties agree that any necessary litigation to resolve such disputes shall be brought before the U.S. District Court for the Eastern District of Michigan (the "Court"). Each of the parties hereto expressly and irrevocably submits to the jurisdiction of the Bankruptcy Court or the Court, as applicable, and expressly waives any argument it may have with respect to venue or forum <u>non</u> <u>conveniens</u>. Notwithstanding the foregoing, any disputes relating solely to eligibility for participation or entitlement to benefits under the Newco Retiree Health Care Plan shall be resolved in accordance with the applicable procedures such plan shall establish, and nothing in this Settlement Agreement precludes members of the Covered Group from pursuing appropriate judicial review regarding such disputes after exhaustion of administrative remedies.

B.    <u>Attempt at Resolution</u>. Although the Bankruptcy Court retains exclusive jurisdiction to resolve disputes arising out of or relating to the enforcement, implementation, application or interpretation of this Settlement Agreement, the parties agree that prior to seeking recourse to the Bankruptcy Court or the Court, the parties shall attempt to resolve the dispute through the following process:

(i)    The aggrieved party shall provide the party alleged to have violated this Settlement Agreement ("<u>Dispute Party</u>") with written notice of such dispute, which shall include a description of the alleged violation and identification of the Section(s) of the Settlement Agreement allegedly violated. Such notice shall be provided so that it is received by the Dispute Party no later than 180 calendar days from the date of the alleged violation or the date on which the aggrieved party knew or should have known of the facts that give rise to the alleged violation, whichever is later, but in no event longer than 3 years from the date of the alleged violation.

(ii)    If the Dispute Party fails to respond within 21 calendar days from its receipt of notice, the aggrieved party may seek recourse with the Bankruptcy Court or the Court; provided, however, that the aggrieved party waives all claims related to a particular dispute against the Dispute Party if the aggrieved party fails to bring the dispute before the Bankruptcy Court or the Court within 180 calendar days from the date of sending the notice.

(iii)    Failure of the Dispute Party to comply to comply with time limits provided in this Section 6 shall constitute waiver of any claim arising from the facts and circumstances giving rise to the dispute; provided, however, that the time periods in this Section 6 may be extended by agreement of the parties to the particular dispute.

C.    <u>Alternate Means of Resolution</u>. Nothing in this Section shall preclude Newco and the IBEW from agreeing on any other form of alternative dispute resolution or from agreeing to extend the time periods specified in this section.

7.    **Submission of the Settlement Agreement**

The parties shall submit this Settlement Agreement to the Bankruptcy Court and jointly work diligently to have this Settlement Agreement approved by the Bankruptcy Court as soon as possible. The parties shall give notice to all affected individuals as required by the Court. The

parties shall seek from the Bankruptcy Court any order necessary to comply with the Federal Rules of Bankruptcy Procedures or any other applicable rule of procedure or statutory requirement that must be met in order to give the Settlement Agreement full force and effect.

8.    **Condition**

This Settlement Agreement is conditioned upon the Bankruptcy Court having entered a Judgment approving and accepting this Settlement Agreement in all material respects and as to all parties, including Newco, the IBEW, and the Covered Group and the Closing shall have occurred in reliance on such Judgment. Such Approval Order shall be reasonably acceptable in form and substance to Newco and the IBEW. This condition shall be deemed to have failed upon issuance of an order disapproving this Settlement Agreement, or upon the issuance of an order approving only a portion of this Settlement Agreement but disapproving other portions in a material respect, unless Newco and the IBEW, acting on its own behalf and as the authorized representative of the Covered Group, agree otherwise in writing. The failure of this condition shall render this Settlement Agreement void.

9.    **No Admission; No Prejudice**

Notwithstanding anything to the contrary, whether set forth in this Settlement Agreement, any settlement agreements, the Judgment, any documents filed in the bankruptcy proceeding, any documents, whether provided in the course of or in any manner whatsoever relating to the discussions between Newco and the IBEW with respect to Retiree Medical Benefits, Retiree Basic Life Insurance, any term sheet, this Settlement Agreement, whether distributed, otherwise made available to or obtained by any person or organization, including without limitation, Newco active employees, members of the Covered Group or their spouses, surviving spouses or dependents, or to the IBEW or Newco in the course of the negotiations that led to entry into this Settlement Agreement, or otherwise:

A.    Newco. Newco has denied and continues to deny that it is bound by any IBEW Collective Bargaining Agreements, regardless of form, or prior settlement agreements between GM and the IBEW, if any, and, therefore, is not responsible for providing Retiree Medical Benefits or Retiree Basic Life Insurance to the Covered Group. Neither this Settlement Agreement nor any document referred to or contemplated herein may be construed as, or may be viewed or used as, an Admission by or against Newco of any fault, wrongdoing or liability whatsoever, or as an Admission by Newco of any claim or argument made by or on behalf of the IBEW or the Covered Group, that obligated Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance in retirement to the Covered Group. Without limiting in any manner whatsoever the generality of the foregoing, the performance of any settlement actions by Newco may not be construed, viewed or used as an Admission by or against Newco.

B.    The IBEW, Covered Group. The IBEW, acting on their own behalf and as the authorized representative of the Covered Group, claims and continues to claim that the allegations, claims and contentions made against Newco have merit. Neither this Settlement Agreement nor any document referred to or contemplated herein nor any previous settlement agreement between GM and any of the IBEW or actions taken to effectuate this Settlement Agreement may be construed as, or may be viewed or used as, an Admission by or against the

8

IBEW or the Covered Group of any fault, wrongdoing or liability whatsoever or of the validity of any claim or argument made by or on behalf of Newco that Newco has a unilateral right to modify or terminate retiree health care benefits or that retiree health care benefits are not vested. Without limiting in any manner whatsoever the generality of the foregoing, the performance of any actions taken to effectuate this Settlement Agreement by the IBEW or the Covered Group, including without limitation, the acceptance of any Retiree Medical Benefits or Retiree Basic Life Insurance from Newco may not be construed, viewed or used as an Admission by or against the IBEW or the Covered Group that Newco lacks the unilateral right to modify or terminate retiree health care benefits

      C.      No Prejudice. Entering into this Settlement Agreement and performance of any of actions taken to effectuate this Settlement Agreement shall not be construed as, or deemed to be evidence of, an Admission by any of the parties hereto, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal or forum for any purpose whatsoever other than to enforce the provisions of this Settlement Agreement or to obtain or seek approval of this Settlement Agreement. It is intended that Newco, the IBEW and the Covered Group shall not use this Settlement Agreement, or anything occurring in connection with reaching this Settlement Agreement, as evidence against Newco, the IBEW or the Covered Group in any circumstance except where the parties are operating under or enforcing this Settlement Agreement or the Judgment approving this Settlement Agreement

      D.      For the purposes of this Section 9, Newco and the IBEW refer to them, respectively, as organizations, as well as any and all of their respective current or former directors, officers, employees, and agents.

10.      **Duration and Termination of Settlement Agreement**

      This Settlement Agreement will remain in effect unless and until terminated in accordance with this Section and as provided for in Section 8 of this Settlement Agreement. Termination of this Settlement Agreement may occur as follows:

      (i) If the Judgment is denied in whole or in material part, either Newco or the IBEW, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

      (ii) If an Approval Order satisfactory to the parties, as described in Section 8 of this Settlement Agreement or any other order authorizing the Closing, is entered by the Bankruptcy Court, but overturned on appeal or otherwise such that there is or may be a material negative impact on the rights, obligations or benefits provided hereunder to the IBEW, the Covered Group or Newco, either Newco or the IBEW, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement upon 30 days' written notice to the other parties and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

9

(iii) If any court, agency or other tribunal of competent jurisdiction issues a determination that any part of this Settlement Agreement is prohibited or unenforceable in any material respect, either Newco or the IBEW, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

11.    **Other Provisions**

A.    References in this Settlement Agreement to "Sections," "Paragraphs" and "Exhibits" refer to the Sections, Paragraphs, and Exhibits of this Settlement Agreement unless otherwise specified.

B.    This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement. This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement.

C.    The captions used in this Settlement Agreement are for convenience of reference only and do not constitute a part of this Settlement Agreement and will not be deemed to limit, characterize or in any way affect any provision of this Settlement Agreement, and all provisions of this Settlement Agreement will be enforced and construed as if no captions had been used in this Settlement Agreement.

D.    This Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

E.    No party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other parties, and any purported assignment in violation of this sentence shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. For purposes of clarification and without limitation as to other beneficiaries, GM is intended to be a third party beneficiary of this Settlement Agreement.

F.    Each of Newco, the IBEW and the Covered Group shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

G.    This Settlement Agreement shall be construed in accordance with applicable federal laws of the United States of America.

H.    Any provision of this Settlement Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any

10

such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent any provision of this Settlement Agreement is invalid or unenforceable as provided for in this Section 10, it shall be replaced by a valid and enforceable provision agreed to by Newco and the IBEW, acting on its own behalf and as the authorized representatives of the Covered Group (which agreement shall not be unreasonably withheld) that preserves the same economic effect for the parties under this Settlement Agreement; provided however, that to the extent that such prohibited or unenforceable provision cannot be replaced as contemplated and the consequences of such prohibited or unenforceable provision causes this Settlement Agreement to fail of its essential purpose then this Settlement Agreement may be voided at the sole discretion of the party seeking the benefit of the prohibited or unenforceable provision.

I.    Any notice, request, information or other document to be given under this Settlement Agreement to any of the parties by any other party shall be in writing and delivered personally, or sent by Federal Express or other carrier which guarantees next-day delivery, transmitted by facsimile, transmitted by email if in an Adobe Acrobat PDF file, or sent by registered or certified mail, postage prepaid, at the following addresses. All such notices and communication shall be effective when delivered by hand, or, in the case of registered or certified mail, Federal Express or other carrier, upon receipt, or, in the case of facsimile or email transmission, when transmitted (provided, however, that any notice or communication transmitted by facsimile or email shall be immediately confirmed by a telephone call to the recipient):

If to Newco, addressed to:

> Diana Tremblay
> GMNA Vice President of Labor Relations
> Newco
> 2000 Centerpoint Parkway
> Pontiac, MI 48341
> Tel: (248) 753-2243

in each case with copies to:

> Francis S. Jaworski
> Office of the General Counsel
> Newco
> Mail Code 482-C25-B21
> 300 Renaissance Center
> P.O. Box 300
> Detroit, MI 48265-3000
> Tel: (313) 665-4914

> Cadawalder, Wickersham & Taft LLP
> One World Financial Center
> New York, NY 10281
> Attention: R. Ronald Hopkinson/Lisa J. Pauquette/John J. Rapisardi
> Tel: (212) 504-6000

11

If to the IBEW, addressed to:


in each case with copies to:


IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED:**

By: _____          Date: _____, 2009

    Vehicle Acquisition Holding, LLC


By: _____          Date: June 18, 2009

    International Brotherhood of Electrical Workers


By: _____          Date: June 18, 2009

    International Brotherhood of Electrical Workers
    Local Union 16


By: _____          Date: June 18, 2009

    International Brotherhood of Electrical Workers
    Local Union 663

If to the IBEW, addressed to:

in each case with copies to:

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED:**

By: _____          Date: _____, 2009

Vehicle Acquisition Holding, LLC

By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers

By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers
Local Union 16

By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers
Local Union 663

12

If to the IBEW, addressed to:

in each case with copies to:

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED:**

By: _____          Date: _____, 2009

Vehicle Acquisition Holding, LLC


By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers


By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers
Local Union 16


By: *Richard Friedel*                              Date: June 18, 2009

International Brotherhood of Electrical Workers
Local Union 663

12

June 18, 2009

International Brotherhood of Electrical Workers (IBEW).

Re: Memorandum of Understanding Regarding Retiree Health Care, Retiree Basic Life Insurance and CBA Modifications.

The IBEW on behalf of itself and as representative of the Covered Group, hereby agrees that, if (i) a sale of substantially all of GM's assets under Section 363(b) of the Bankruptcy Code occurs; (ii) the Bankruptcy Court approves the Settlement Agreement between the IBEW and the purchaser of such assets; and (iii) following the court approval of the Settlement Agreement the purchaser of such assets becomes fully bound to the terms of the Settlement Agreement, the IBEW, shall, in consideration therefor and to clarify treatment of all rights and benefits under the Settlement Agreement, on the occurrence of such events:

> (i) withdraw all claims filed or otherwise made against GM and its subsidiaries, and their employees, officers, directors and agents, relating to Retiree Medical Benefits and Retiree Basic Life Insurance and pursuant to any GM-IBEW National Agreements; and

> (ii) not assert or prosecute any such claims thereafter, and all such claims shall be deemed to be waived and released.

Nothing herein shall be deemed to waive or release any rights or benefits under the terms of the Settlement Agreement entered into as a part of the 363(b) sale transaction.

The IBEW and the Covered Group agree to reasonably cooperate with GM and to take such further actions as may be appropriate to effectuate or confirm the extinguishment of the claims described above as of the closing date of a sale of substantially all of GM's assets under Section 363(b) of the Bankruptcy Code.

All capitalized terms herein shall have the same meaning as set forth in the Newco-IBEW Settlement Agreement Regarding Retiree Health Care, Life Insurance and Modification and Assumption of CBA executed by the IBEW on June 18, 2009.

Please confirm your agreement to the foregoing by executing a copy of this letter and delivering same to Francis S. Jaworski, General Motors Corporation, Mail Code 482-C25-B21, 300 Renaissance Center, P.O. Box 300, Detroit, MI, 48625-3000 with an email copy to francis.s.jaworski@gm.com.

Respectfully,

GENERAL MOTORS CORPORATION

BY: _____
          Francis S. Jaworski

Acknowledged and Agreed:

By: _____          Date: June 18, 2009

   International Brotherhood of Electrical Workers


By: _____          Date: June 18, 2009

   International Brotherhood of Electrical Workers
   Local Union 16


By: _____          Date: June 18, 2009

   International Brotherhood of Electrical Workers
   Local Union 663

2

Memorandum of Understanding Regarding Retiree Health Care, Retiree Basic Life Insurance and CBA Modifications.

Acknowledged and Agreed:

By: _____          Date: June 18, 2009

    International Brotherhood of Electrical Workers

By: _____          Date: June 18, 2009

    International Brotherhood of Electrical Workers
    Local Union 16

By: _____          Date: June 18, 2009

    International Brotherhood of Electrical Workers
    Local Union 663

2

Memorandum of Understanding Regarding Retiree Health Care, Retiree Basic Life Insurance and CBA Modifications.

Acknowledged and Agreed:

By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers

By: _____          Date: June 18, 2009

International Brotherhood of Electrical Workers
Local Union 16

By: *Richard Friedel*          Date: June 18, 2009

International Brotherhood of Electrical Workers
Local Union 663

2

**Newco-IBPA Settlement Agreement Regarding Retiree Health Care & Life Insurance**

[form of IUPAT Retiree Notice]

MESSAGE FROM THE IUPAT TO GM CREATIVE SERVICES RETIREES:

Dear Brothers and Sisters:

As you probably know, General Motors is in bankruptcy in an effort to reorganize as a solution to its current economic crisis, which is part of the greater economic crisis confronting the industry and the country.  The Obama Administration, through the U.S. Department of Treasury, has agreed to loan money to General Motors as part of this restructuring effort, but only under certain conditions.  The conditions have required major concessions from nearly every constituency.

Part of this restructuring process is a proposed sale of General Motors' assets to a new corporation, which will become the new and surviving GM.  Attached to this letter is a copy of the formal notice of this sale.  The Bankruptcy Court will hold a hearing on this sale in the near future.  The key points in the sale are that the new GM going forward will have a fresh start, funded in part by loans from the U.S. Department of Treasury, which will own the majority of GM; and that the assets of General Motors will be sold to the new GM free and clear of liabilities.  Other unions are also making concessions as part of this restructuring.

In addition, the Bankruptcy Court will be asked to approve a new program regarding retiree medical benefits, explained below.

**Who will be covered:**  You will be covered by the new retiree medical benefits if you –

(a)  retired under an IUPAT-GM collective bargaining agreement that called for you to receive a contribution toward your retirement benefits for GM; or

(b)  are the surviving spouse of a covered retiree, or the surviving spouse of an active covered employee who died prior to retirement under circumstances where they would have been eligible at the time of death.

**Retiree benefits in 2009:**  Your benefits will be in accordance with the GM Hourly Plan through the end of 2009.  Effective January 1, 2010, the new GM shall have no responsibility under the old GM Hourly Plan.  Treatment is covered under this provision only if the treatment actually occurs on or before December 31, 2009.

**New Retiree Benefits on January 1, 2010:**  Starting on January 1, 2010, all retiree medical benefits will be provided through Newco Retiree Health Care Plan if you are in the covered group above.  (This plan will also include unionized and non-unionized employees of the new GM who are not represented by IUPAT, including managerial employees).  New GM's obligation is fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare single coverage ($4,140) and for pre-Medicare family coverage ($8,060).  There will be no retiree medical benefit for those retirees who are Medicare eligible.  New GM will not be obligated to contribute more than this amount of money toward retiree benefits.

These benefits will be adjusted on an annual basis to re-design the plan as necessary to keep the cost below the cap.  If costs go over the cap in one year, the plan

will be changed in the next to make sure that the new benefits stay under the cap, and the overpayment for the previous year is recovered.

We believe the initial level of benefits will be like the amounts shown below; however, the benefits are still subject to the cap given above. They are not guaranteed at these amounts, and over time, the benefits are likely to be adjusted downward to fit within the cap upon costs.

### General Description of Retiree Medical Plan

The following reflects a general description of the level of Retiree Medical Benefit coverage contemplated as of January 1, 2010:

| | |
|---|---|
| Plan Offering | • Nationwide HSA-qualified PPO |
| Monthly Contributions | • $160 (single)<br>• $220 (two)<br>• $270 (three or more) |
| Annual Deductible | • $2,500 (single)<br>• $5,000 (family) (single member may satisfy) |
| Medical Co-Insurance (after deductible) | • 20% (in-network)<br>• 40% (out of network) |
| Out-of-Pocket Maximum | • $3,500 (single)<br>• $7,000 (family) (single member may satisfy) |
| Behavioral Health (after deductible) | • Same as medical. |
| RX Retail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
| RX Mail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
| Vision Program | No longer offered. |
| Dental Program | No longer offered. |
| Coverage Termination (Participant level) | • Retirees, surviving spouses, and eligible dependents who are age 65 or older, and<br>• Retirees, surviving spouses, and eligible dependents who are under age 65 but eligible for Medicare. |

**Benefits may be terminated; No other benefits to be provided:** The retiree medical benefits are not guaranteed. New GM may terminate the plan in the future, or reduce benefits. If it does, however, it will make the same reductions (or terminate the plan) not

just for IUPAT-represented retirees, but for all groups in the plan, including for example managerial employees who are in the plan.

As part of the agreement by the New GM to provide these benefits, the IUPAT has agreed not to ask New GM to provide more benefits, or to increase the amount of cap, or to attempt to replace these benefits or fund these benefits in any other way.

**Other obligations are terminated; Releases.**  As part of the Court approval of the sale, all other obligations GM has toward retiree health care are being terminated.  The New GM will not have any obligations for retiree benefits incurred before the sale.  It will have only the obligations described above.  IUPAT is also giving a release to GM of all its other obligations regarding retiree medical insurance as a condition of preserving the benefits above.  In addition, you are releasing the IUPAT from liability in connection with matters relating to retiree benefits as well.

**Life Insurance.**  Effective the first of the month after the sale, New GM will provide Basic Life Insurance in retirement in the maximum fixed amount of $10,000 for retirees in the covered group described above that are current and future retirees.  Retirees whose Basic Life Insurance entitlement is below $10,000 will remain at the lower amount.  Current employees, on the date of retirement will have Basic Life Insurance in the fixed amount of $10,000.

**IUPAT to act as representative of retirees.**  Under the Bankruptcy Code, the union is presumed to act as the representative of retirees whose benefits are being modified if the union was their representative when they were active employees.  IUPAT intends to act as your representative for the purpose of accomplishing these benefit changes.

**Alternatives.**  We recognize that these benefit changes are painful; however, if we do not enter into these agreements, you have no guarantees that your benefits will not be terminated immediately or soon after the sale.  We anticipate the sale will be successful, as it was in the case with Chrysler, and that going forward, the only viable company will be the New GM.  We expect New GM to acquire all or substantially all of the assets of the old company.  We do not expect old GM to be able to provide benefits in the future.

None of these options are desirable.  We have decided to cooperate with GM in hopes of continuing to provide you at least some level of benefits into the future, while preserving and protecting jobs at the New GM.

**This Document is a Summary.**  The actual terms of the settlement agreement with the New GM are more complicated that this summary.  If you want to read the entire document, you may do so by going to the website address in the legal notice enclosed.

**If you Agree.**  You do not need to do anything at this time.

**If you Disagree.**  You must file an objection as explained in the legal notice enclosed.

C:\Documents and Settings\falabell\Desktop\Project TWO\Splinter Unions\IBPA\IBPA FORM OF NOTICE - LOCAL 591 RETIREES_2682344.DOC

## NEWCO-IBPA SETTLEMENT AGREEMENT
## REGARDING RETIREE HEALTH CARE & LIFE INSURANCE

This Settlement Agreement (together with the Exhibits hereto, the "Settlement Agreement"), is between [Vehicle Acquisition Holding, LLC] ("Newco"), by and through its attorneys, and the International Brotherhood of Painters and Allied Trades of the United States and Canada, Sign & Display Union Local 591 ("IBPA"). The IBPA also enter into this Settlement Agreement as the authorized representative, as defined in Section 1114(c)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), of those persons receiving retiree benefits, as defined in Section 1114(a) of the Bankruptcy Code, pursuant to collectively bargained plans, programs and/or agreements between Newco (or General Motors Corporation ("GM")) and the IBPA (or an IBPA predecessor) and who are members of the Covered Group, as defined herein. Collectively, the IBPA, Newco, and the Covered Group are referred to as the "Parties."

This Settlement Agreement shall cover and has application to;

- the Covered Group;

- The IBPA; and

- Newco.

GM agreed to provide certain retiree medical benefits in various collectively bargained agreements with the IBPA. Subsequent to entering those collective bargaining agreements, GM filed a bankruptcy action known as *In Re General Motors Corp., et al.,* No. 09-050026 (REG), U.S. Bankruptcy Court (S.D. N.Y.), pursuant to which Newco purchased certain assets of GM.

The IBPA asserts, and Newco denies, that Newco is required to continue to provide retiree medical benefits and retiree life insurance in accordance with those collective bargaining agreements. Newco maintains that it is not obligated to assume and abide by the GM-IBPA collective bargaining agreements. After due consideration of the factual and legal arguments regarding this issue, as well as the costs, risks, and delays associated with litigating the issue, Newco and the IBPA have agreed to resolve all claims regarding Retiree Medical Benefits and Retiree Basic Life Insurance on the basis set forth in this Settlement Agreement. The parties agree to present this Settlement Agreement to the Bankruptcy Court for approval in connection with the contemplated sale of assets between GM and Newco.

## 1. Definitions

Admissions. The term "Admissions" shall mean any statement, whether written or oral, any act or conduct, or any failure to act, that could be used (whether pursuant to Rules 801(d)(2) or 804(b)(3) of the Federal Rules of Evidence, a similar rule or standard under other applicable law, the doctrines of waiver or estoppel, other rule, law, doctrine or practice, or otherwise) as evidence in a proceeding of proof of agreement with another party's position or proof of adoption of, or acquiescence to, a position that is contrary to the interest of the party making such statement, taking such action, or failing to act.

1

<u>Affiliate</u>.  The term "Affiliate" shall mean, with respect to any specified person or entity, any other person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with such specified person or entity.

<u>Approval Order or Judgment</u>.  The terms "Approval Order" or "Judgment" shall mean an order obtained from the Bankruptcy Court approving and incorporating this Settlement Agreement in all respects, as set forth in Section 8 of this Settlement Agreement.

<u>Bankruptcy Court</u>.  The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York with respect to *In Re General Motors Corp., et al.,* No. 09-050026 (REG).

<u>Closing</u>.  The term "Closing" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

<u>Closing Date</u>.  The term "Closing Date" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

<u>Covered Group</u>.  The term "Covered Group" shall mean:

    a.  All GM employees who were represented with respect to the terms and conditions of their employment with GM by the IBPA and who retired from GM under circumstances such that they were eligible for GM contributions to their health care in retirement according to the terms of a IBPA collective bargaining agreement in effect at the time of their retirement, and their spouses, surviving spouses and dependents;

    b.  The term "surviving spouses" shall include surviving spouses of a Covered Group retiree as well as surviving spouses of Covered Group active employees who died prior to retirement under circumstances such that at the time of death the employee would have been eligible to retire under circumstances meeting the Covered Group classification (a).

<u>GM-IBPA Collective Bargaining Agreements</u>. The term "GM-IBPA Collective Bargaining Agreements" shall mean any and all national agreements or memorandums of understanding entered between GM and the IBPA, whether individually or collectively, regarding eligibility for Retiree Medical Benefits and Retiree Basic Life Insurance in retirement of members of the Covered Group.

<u>GM Health Care Plan for Salaried Retirees</u>.  The term "GM Health Care Plan for Salaried Retirees" shall mean the GM health care plan generally applicable to eligible GM salaried employees with a date of service with GM on or before January 1, 1993 and who retire from GM under circumstances such that they qualify for GM contributions toward health care in retirement.

2

GM Hourly Plan.  The term "GM Hourly Plan" shall mean Retiree Medical Benefits as provided pursuant to the General Motors Health Care Program for Hourly Employees to retiree members of the Covered Group that was in effect immediately prior to the Closing.

IBPA.  The term "IBPA" shall mean the United Brotherhood of Carpenters and Joiners of America inclusive of any predecessor union the members of which the IBPA acts as the authorized representative as defined in Section 1114(c)(1) of the Bankruptcy Code.

IBPA Releasees.  The term "IBPA Releasees" shall mean the IBPA, the Covered Group and anyone claiming on behalf of, through or under them by way of subrogation or otherwise.

Newco Retiree Health Care Plan.  The term "Newco Retiree Health Care Plan" shall mean the GM Health Care Program for Salaried Retirees, including all amendments and modifications presently contemplated to take effect January 1, 2010, as adopted by Newco for the purpose of providing Retiree Medical Benefits to represented and non-represented retirees that qualify for such benefits, as may be modified or amended from time-to-time, and which shall be amended to include members of the Covered Group (when eligible) commencing January 1, 2010.

Retiree Basic Life Insurance.  The term "Retiree Basic Life Insurance" shall mean all corporate provided life insurance in retirement for the former employee/retiree members of the Covered Group (when eligible) in accordance with the terms of the Life Insurance Program.

Retiree Medical Benefits.  The term "Retiree Benefits" shall mean all corporate contributions toward health care in retirement for the Covered Group (when eligible) in accordance with the terms and conditions of an applicable employee welfare benefit plan, including, but not limited to, hospital surgical medical, prescription drug, vision, dental, hearing aid.

Subsidiary.  The term "Subsidiary" shall mean any corporation or other entity of which at least a majority of the outstanding stock or other beneficial interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or other governing body of such corporation or other entity (irrespective of whether or not at the time stock or other beneficial interests of any other class or classes of such corporation or other entity shall have or might have voting power by reason of the happening of any contingency) is at the time owned by Newco, or by one or more Subsidiaries, or by Newco and one or more Subsidiaries.

2.      **Provision and Scope of Newco Provided Retiree Medical Benefits.**

A.      On and After Closing Date Through December 31, 2009.  For claims incurred on and after the Closing Date through December 31, 2009, Newco will provide Retiree Medical Benefits for the Covered Group (when eligible) in accordance with the terms of the GM Hourly Plan.  As of January 1, 2010, all Newco obligations to provide Retiree Medical Benefits to the Covered Group (when eligible) in accordance with the GM Hourly Plan shall cease and be forever terminated.  If the Closing Date occurs after December 31, 2009, Newco shall have no obligation to provide Retiree Medical Benefits pursuant to this Section 2.A.  A claim is deemed incurred for purposes of this Section 2 as of the date treatment is provided, regardless of when such treatment was scheduled and regardless of whether such treatment was part of a continuation of related treatments.

3

B.    <u>On and After January 1, 2010</u>.  For claims incurred on or after January 1, 2010, Newco will provide Retiree Medical Benefits to the Covered Group (when eligible) as follows:

(i)    The Newco Retiree Health Care Plan shall be amended to include the Covered Group (when eligible) as participants.  Newco's obligation to provide Retiree Medical Benefits under the Newco Retiree Health Care Plan shall be fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare Single coverage ($4,140)  and for pre-Medicare family coverage ($8,060) (the "Cap").  Newco will analyze and project Retiree Medical Benefit expenses on an annual basis and adjust the plan design as necessary to maintain benefit coverages within the Cap on an aggregate basis across both pre-Medicare single and pre-Medicare family coverage.  For periods in which the Cap is exceeded, Newco will make whatever plan design changes it deems necessary to recover the overpayment in the next plan year as well as to adjust for any anticipated increases in Retiree Medical Benefits costs in the next year.  For periods in which the Cap has not been reached, Newco will make whatever plan design changes it deems necessary to increase benefit levels to the extent of the Cap;

(ii)    Newco will provide Retiree Medical Benefits to members of the Covered Group (when eligible) as participants in the Newco Retiree Health Care Plan on the same terms and under the same conditions and basis as such benefits are provided to eligible Newco represented and non-represented retirees, inclusive of all participant contributions, co-payments and deductibles and subject to all future plan design changes and increases or decreases, if any.

(iii)    Newco reserves the right to amend, modify or terminate the Newco Retiree Health Care Plan at any time, including the Cap; provided that any such amendment, modification, or termination shall be applied on an equal basis to all similarly situated participants in the Newco Retiree Health Care Plan.  Newco shall not amend, modify or terminate the Newco Retiree Health Care Plan such that members of the Covered Group (when eligible) are disadvantaged or advantaged in relation to similarly situated represented or non-represented retiree participants.

(iv)    The IBPA and the Covered Group will not in the future seek to negotiate any modifications or changes to the Retiree Medical Benefits provided by Newco to the Covered Group.  For the avoidance of doubt, the IBPA will not seek to obligate Newco to:  (i) increase the Cap; (ii) make any other payments for the purpose of providing Retiree Medical Benefits to the Covered Group; or (iii) provide for or assume the cost of Retiree Medical Benefits for the Covered Group through any other means.  All disputes regarding the application of plan policies or claims for benefits shall be addressed according to the appeal process set forth in the Newco Retiree Health Care Plan; provided, however, that nothing in this Section 2.B(iv) shall be interpreted to preclude a participant from filing a claim for benefits under the Newco Retiree Health Care Plan in a court of competent jurisdiction after exhaustion of the internal review processes.

4

(v)    All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Medical Benefits for the Covered Group arising from any GM-IBPA Collective Bargaining shall be forever terminated as of the Closing Date.

3.    **Retiree Basic Life Insurance.**

Effective the first of the month following the Closing, Newco will provide Retiree Basic Life Insurance in retirement to retiree members of the Covered Group in the maximum fixed amount of $10,000 in accordance with the terms of the Life Insurance Program attached as Exhibit A to this Settlement Agreement.   Retirees whose Retiree Basic Life Insurance entitlement is below $10,000 will remain at the lower amount.  The IBPA will not in the future seek to negotiate any modifications or changes to the Retiree Basic Life Insurance provided by Newco to the Covered Group.  All disputes regarding the application of plan policies or claims for Retiree Basic Life Insurance benefits shall be addressed according to the appeal process set forth in the Life Insurance Program; provided, however, that nothing in this Section 3 shall be interpreted to preclude a participant from filing a claim for Retiree Basic Life Insurance in a court of competent jurisdiction after exhaustion of the internal review processes.  All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Basic Life Insurance for the Covered Group arising from any GM-IBPA Collective Bargaining shall be forever terminated as of the Closing Date

4.    **[THIS SECTION NOT USED].**

5.    **Releases and Certain Related Matters**

A.    <u>Consent to Entry of the Judgment</u>.  In consideration of Newco's entry into this Settlement Agreement and the other obligations of Newco contained herein, the IBPA, acting on their own behalf and as the authorized representative of the Covered Group, hereby consents to the entry of the Judgment, which shall be binding upon all members of the Covered Group.

B.    <u>IBPA Releasees</u>.  As of the Closing Date, each IBPA Releasee releases and forever discharges each other IBPA Releasee and shall be forever released and discharged with respect to any and all rights, claims or causes of action that such IBPA Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of or based upon or otherwise related to (i) any claims arising, or which could have been raised concerning the provision of Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations; and (iii) any action taken to carry out this Settlement Agreement in accordance with this Settlement Agreement and applicable law.

C.    <u>Newco</u>.  As of the Closing Date, the IBPA Releasees release and forever discharge Newco, and its current or former officers, directors, employees, agents, Subsidiaries, Affiliates, and any and all of its welfare and pension benefit plans and its fiduciaries, with respect to any and all rights, claims or causes of action that any IBPA Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to (i) any of the claims arising, or which could have been raised,

concerning any alleged obligation of Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations and (iii) any action taken to carry out this Settlement Agreement  in accordance with this Settlement Agreement and applicable law.

6.    **Dispute Resolution**

A.    <u>Coverage</u>.    Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement Agreement shall be enforceable only by Newco and the IBPA.  The Approval Order will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application or interpretation of this Settlement Agreement.  In the event that the bankruptcy proceeding has been closed or dismissed, the parties agree that any necessary litigation to resolve such disputes shall be brought before the U.S. District Court for the Eastern District of Michigan (the "Court").  Each of the parties hereto expressly and irrevocably submits to the jurisdiction of the Bankruptcy Court or the Court, as applicable, and expressly waives any argument it may have with respect to venue or forum <u>non</u> <u>conveniens</u>. Notwithstanding the foregoing, any disputes relating solely to eligibility for participation or entitlement to benefits under the Newco Retiree Health Care Plan shall be resolved in accordance with the applicable procedures such plan shall establish, and nothing in this Settlement Agreement precludes members of the Covered Group from pursuing appropriate judicial review regarding such disputes after exhaustion of administrative remedies.

B.    <u>Attempt at Resolution</u>.    Although the Bankruptcy Court retains exclusive jurisdiction to resolve disputes arising out of or relating to the enforcement, implementation, application or interpretation of this Settlement Agreement, the parties agree that prior to seeking recourse to the Bankruptcy Court or the Court, the parties shall attempt to resolve the dispute through the following process:

(i)    The aggrieved party shall provide the party alleged to have violated this Settlement Agreement ("<u>Dispute Party</u>") with written notice of such dispute, which shall include a description of the alleged violation and identification of the Section(s) of the Settlement Agreement allegedly violated.  Such notice shall be provided so that it is received by the Dispute Party no later than 180 calendar days from the date of the alleged violation or the date on which the aggrieved party knew or should have known of the facts that give rise to the alleged violation, whichever is later, but in no event longer than 3 years from the date of the alleged violation.

(ii)    If the Dispute Party fails to respond within 21 calendar days from its receipt of notice, the aggrieved party may seek recourse with the Bankruptcy Court or the Court; provided, however, that the aggrieved party waives all claims related to a particular dispute against the Dispute Party if the aggrieved party fails to bring the dispute before the Bankruptcy Court or the Court within 180 calendar days from the date of sending the notice.

(iii)    Failure of the Dispute Party to comply to comply with time limits provided in this Section 6 shall constitute waiver of any claim arising from the facts and circumstances giving rise to the dispute; provided, however, that the time periods in this Section 6 may be extended by agreement of the parties to the particular dispute.

C.    Alternate Means of Resolution.    Nothing in this Section shall preclude Newco and the IBPA from agreeing on any other form of alternative dispute resolution or from agreeing to extend the time periods specified in this section.

7.    **Submission of the Settlement Agreement**

The parties shall submit this Settlement Agreement to the Bankruptcy Court and jointly work diligently to have this Settlement Agreement approved by the Bankruptcy Court as soon as possible.  The parties shall give notice to all affected individuals as required by the Court.  The parties shall seek from the Bankruptcy Court any order necessary to comply with the Federal Rules of Bankruptcy Procedures or any other applicable rule of procedure or statutory requirement that must be met in order to give the Settlement Agreement full force and effect.

8.    **Condition**

This Settlement Agreement is conditioned upon the Bankruptcy Court having entered a Judgment approving and accepting this Settlement Agreement in all material respects and as to all parties, including Newco, the IBPA, and the Covered Group and the Closing shall have occurred in reliance on such Judgment.  Such Approval Order shall be reasonably acceptable in form and substance to Newco and the IBPA.  This condition shall be deemed to have failed upon issuance of an order disapproving this Settlement Agreement, or upon the issuance of an order approving only a portion of this Settlement Agreement but disapproving other portions in a material respect, unless Newco and the IBPA, acting on its own behalf and as the authorized representative of the Covered Group, agree otherwise in writing.  The failure of this condition shall render this Settlement Agreement void.

9.    **No Admission; No Prejudice**

Notwithstanding anything to the contrary, whether set forth in this Settlement Agreement, any settlement agreements, the Judgment, any documents filed in the bankruptcy proceeding, any documents, whether provided in the course of or in any manner whatsoever relating to the discussions between Newco and the IBPA with respect to Retiree Medical Benefits, Retiree Basic Life Insurance, any term sheet, this Settlement Agreement, whether distributed, otherwise made available to or obtained by any person or organization, including without limitation, Newco active employees, members of the Covered Group or their spouses, surviving spouses or dependents, or to the IBPA or Newco in the course of the negotiations that led to entry into this Settlement Agreement, or otherwise:

A.    Newco.    Newco has denied and continues to deny that it is bound by any IBPA Collective Bargaining Agreements, regardless of form, or prior settlement agreements between GM and the IBPA, if any, and, therefore, is not responsible for providing Retiree Medical Benefits or Retiree Basic Life Insurance to the Covered Group.  Neither this Settlement Agreement nor any document referred to or contemplated herein may be construed as, or may be

7

viewed or used as, an Admission by or against Newco of any fault, wrongdoing or liability whatsoever, or as an Admission by Newco of any claim or argument made by or on behalf of the IBPA or the Covered Group, that obligated Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance in retirement to the Covered Group.  Without limiting in any manner whatsoever the generality of the foregoing, the performance of any settlement actions by Newco may not be construed, viewed or used as an Admission by or against Newco.

   B. <u>The IBPA, Covered Group</u>.  The IBPA, acting on their own behalf and as the authorized representative of the Covered Group, claims and continues to claim that the allegations, claims and contentions made against Newco have merit.   Neither this Settlement Agreement nor any document referred to or contemplated herein nor any previous settlement agreement between GM and any of the IBPA or actions taken to effectuate this Settlement Agreement may be construed as, or may be viewed or used as, an Admission by or against the IBPA or the Covered Group of any fault, wrongdoing or liability whatsoever or of the validity of any claim or argument made by or on behalf of Newco that Newco has a unilateral right to modify or terminate retiree health care benefits or that retiree health care benefits are not vested.  Without limiting in any manner whatsoever the generality of the foregoing, the performance of any actions taken to effectuate this Settlement Agreement by the IBPA or the Covered Group, including without limitation, the acceptance of any Retiree Medical Benefits or Retiree Basic Life Insurance from Newco may not be construed, viewed or used as an Admission by or against the IBPA or the Covered Group that Newco lacks the unilateral right to modify or terminate retiree health care benefits

   C. <u>No Prejudice</u>.  Entering into this Settlement Agreement and performance of any of actions taken to effectuate this Settlement Agreement shall not be construed as, or deemed to be evidence of, an Admission by any of the parties hereto, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal or forum for any purpose whatsoever other than to enforce the provisions of this Settlement Agreement or to obtain or seek approval of this Settlement Agreement.  It is intended that Newco, the IBPA and the Covered Group shall not use this Settlement Agreement, or anything occurring in connection with reaching this Settlement Agreement, as evidence against Newco, the IBPA or the Covered Group in any circumstance except where the parties are operating under or enforcing this Settlement Agreement or the Judgment approving this Settlement Agreement

   D. For the purposes of this Section 9, Newco and the IBPA refer to them, respectively, as organizations, as well as any and all of their respective current or former directors, officers, employees, and agents.

  10. **Duration and Termination of Settlement Agreement**

 This Settlement Agreement will remain in effect unless and until terminated in accordance with this Section and as provided for in Section 8 of this Settlement Agreement. Termination of this Settlement Agreement may occur as follows:

   (i)  If the Judgment is denied in whole or in material part, either Newco or the IBPA, acting on its own behalf and as the authorized representative of the Covered Group, may

8

terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

(ii)  If an Approval Order satisfactory to the parties, as described in Section 8 of this Settlement Agreement or any other order authorizing the Closing, is entered by the Bankruptcy Court, but overturned on appeal or otherwise such that there is or may be a material negative impact on the rights, obligations or benefits provided hereunder to the IBPA, the Covered Group or Newco, either Newco or the IBPA, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement upon 30 days' written notice to the other parties and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

(iii) If any court, agency or other tribunal of competent jurisdiction issues a determination that any part of this Settlement Agreement is prohibited or unenforceable in any material respect, either Newco or the IBPA, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

11.   **Other Provisions**

A.   References in this Settlement Agreement to "Sections," "Paragraphs" and "Exhibits" refer to the Sections, Paragraphs, and Exhibits of this Settlement Agreement unless otherwise specified.

B.   This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement.  This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement.

C.   The captions used in this Settlement Agreement are for convenience of reference only and do not constitute a part of this Settlement Agreement and will not be deemed to limit, characterize or in any way affect any provision of this Settlement Agreement, and all provisions of this Settlement Agreement will be enforced and construed as if no captions had been used in this Settlement Agreement.

D.   This Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

E.   No party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other parties, and any purported assignment in violation of this sentence shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  For purposes of

9

clarification and without limitation as to other beneficiaries, GM is intended to be a third party beneficiary of this Settlement Agreement.

        F.    Each of Newco, the IBPA and the Covered Group shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

        G.    This Settlement Agreement shall be construed in accordance with applicable federal laws of the United States of America.

        H.    Any provision of this Settlement Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent any provision of this Settlement Agreement is invalid or unenforceable as provided for in this Section 10, it shall be replaced by a valid and enforceable provision agreed to by Newco and the IBPA, acting on its own behalf and as the authorized representatives of the Covered Group (which agreement shall not be unreasonably withheld) that preserves the same economic effect for the parties under this Settlement Agreement; provided however, that to the extent that such prohibited or unenforceable provision cannot be replaced as contemplated and the consequences of such prohibited or unenforceable provision causes this Settlement Agreement to fail of its essential purpose then this Settlement Agreement may be voided at the sole discretion of the party seeking the benefit of the prohibited or unenforceable provision.

        I.    Any notice, request, information or other document to be given under this Settlement Agreement to any of the parties by any other party shall be in writing and delivered personally, or sent by Federal Express or other carrier which guarantees next-day delivery, transmitted by facsimile, transmitted by email if in an Adobe Acrobat PDF file, or sent by registered or certified mail, postage prepaid, at the following addresses. All such notices and communication shall be effective when delivered by hand, or, in the case of registered or certified mail, Federal Express or other carrier, upon receipt, or, in the case of facsimile or email transmission, when transmitted (provided, however, that any notice or communication transmitted by facsimile or email shall be immediately confirmed by a telephone call to the recipient):

    If to Newco, addressed to:

        Diana Tremblay
        GMNA Vice President of Labor Relations
        Newco
        2000 Centerpoint Parkway
        Pontiac, MI 48341
        Tel: (248) 753-2243

in each case with copies to:

      Francis S. Jaworski
      Office of the General Counsel
      Newco
      Mail Code 482-C25-B21
      300 Renaissance Center
      P.O. Box 300
      Detroit, MI 48265-3000
      Tel: (313) 665-4914

      Cadawalder, Wickersham & Taft LLP
      One World Financial Center
      New York, NY 10281
      Attention: R. Ronald Hopkinson/Lisa J. Pauquette/John J. Rapisardi
      Tel: (212) 504-6000

If to the IBPA, addressed to:

      Erik K. Decker
      Business Representative
      14587 Barber Ave.
      warren, mi 48088
      fax no. 586-552-4477
      ekdecker@comcast.net

      IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED:**

| | |
|---|---|
| By: _____ <br><br> Vehicle Acquisition Holding, LLC | Date: _____, 2009 |
| By: _____ <br><br> INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES OF THE UNITED STATES AND CANADA, SIGN & DISPLAY UNION LOCAL 591 | Date: _____, 2009 |

11

June 18, 2009

International Brotherhood of Painters and Allied Trades of the United States and Canada, Sign & Display Union Local 591 ("IBPA").

Re:  Memorandum of Understanding Regarding Retiree Health Care & Retiree Basic Life Insurance.

The IBPA on behalf of itself and as representative of the Covered Group, hereby agrees that, if (i) a sale of substantially all of GM's assets under Section 363(b) of the Bankruptcy Code occurs; (ii) the Bankruptcy Court approves the Settlement Agreement between the IBPA and the purchaser of such assets; and (iii) following the court approval of the Settlement Agreement the purchaser of such assets becomes fully bound to the terms of the Settlement Agreement, the IBPA, shall, in consideration therefor and to clarify treatment of all rights and benefits under the Settlement Agreement, on the occurrence of such events:

(i) withdraw all claims filed or otherwise made against GM and its subsidiaries, and their employees, officers, directors and agents, relating to Retiree Medical Benefits and Retiree Basic Life Insurance and pursuant to any GM-IBPA National Agreements;  and

(ii) not assert or prosecute any such claims thereafter, and all such claims shall be deemed to be waived and released.

Nothing herein shall be deemed to waive or release any rights or benefits under the terms of the Settlement Agreement entered into as a part of the 363(b) sale transaction.

The IBPA and the Covered Group agree to reasonably cooperate with GM and to take such further actions as may be appropriate to effectuate or confirm the extinguishment of the claims described above as of the closing date of a sale of substantially all of GM's assets under Section 363(b) of the Bankruptcy Code.

All capitalized terms herein shall have the same meaning as set forth in the Newco-IBPA Settlement agreement Regarding Retiree Health Care & Life Insurance between Newco and the International Brotherhood of Painters and Allied Trades of the United States and Canada, Sign & Display Union Local 591 on June 18, 2009.

Please confirm your agreement to the foregoing by executing a copy of this letter and delivering same to Francis S. Jaworski, General Motors Corporation, Mail Code 482-C25-B21, 300 Renaissance Center, P.O. Box 300, Detroit, MI, 48625-3000 with an email copy to francis.s.jaworski@gm.com.

Memorandum of Understanding Regarding Retiree Health Care & Retiree Basic Life Insurance.


Respectfully,

GENERAL MOTORS CORPORATION

BY: _____
    Francis S. Jaworski


Acknowledged and Agreed:

INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES OF THE
UNITED STATES AND CANADA, SIGN & DISPLAY UNION LOCAL 591

BY: _____
    Name:  Erik K. Decker
    Title:   Business Representative


Dated: June 18, 2009


Page 2 of 2

**Newco-Locals 687 & 1045 Settlement Agreement Regarding Retiree Health Care &
Life Insurance**

[form of MRCC Retiree Notice]

MESSAGE FROM THE MRCC TO GM CREATIVE SERVICES RETIREES:

Dear Brothers and Sisters:

As you probably know, General Motors is in bankruptcy in an effort to reorganize as a solution to its current economic crisis, which is part of the greater economic crisis confronting the industry and the country.  The Obama Administration, through the U.S. Department of Treasury, has agreed to loan money to General Motors as part of this restructuring effort, but only under certain conditions.  The conditions have required major concessions from nearly every constituency.

Part of this restructuring process is a proposed sale of General Motors' assets to a new corporation, which will become the new and surviving GM.  Attached to this letter is a copy of the formal notice of this sale.  The Bankruptcy Court will hold a hearing on this sale in the near future.  The key points in the sale are that the new GM going forward will have a fresh start, funded in part by loans from the U.S. Department of Treasury, which will own the majority of GM; and that the assets of General Motors will be sold to the new GM free and clear of liabilities.  Other unions are also making concessions as part of this restructuring.

In addition, the Bankruptcy Court will be asked to approve a new program regarding retiree medical benefits, explained below.

**Who will be covered:**  You will be covered by the new retiree medical benefits if you –

    (a)  retired under an MRCC-GM collective bargaining agreement that called for you to receive a contribution toward your retirement benefits for GM; or

    (b)  are the surviving spouse of a covered retiree, or the surviving spouse of an active covered employee who died prior to retirement under circumstances where they would have been eligible at the time of death.

**Retiree benefits in 2009:**  Your benefits will be in accordance with the GM Hourly Plan through the end of 2009.  Effective January 1, 2010, the new GM shall have no responsibility under the old GM Hourly Plan.  Treatment is covered under this provision only if the treatment actually occurs on or before December 31, 2009.

**New Retiree Benefits on January 1, 2010:**  Starting on January 1, 2010, all retiree medical benefits will be provided through Newco Retiree Health Care Plan if you are in the covered group above.  (This plan will also include unionized and non-unionized employees of the new GM who are not represented by MRCC, including managerial employees).  New GM's obligation is fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare single coverage ($4,140) and for pre-Medicare family coverage ($8,060).  There will be no retiree medical benefit for those retirees who are Medicare eligible.  New GM will not be obligated to contribute more than this amount of money toward retiree benefits.

    These benefits will be adjusted on an annual basis to re-design the plan as necessary to keep the cost below the cap.  If costs go over the cap in one year, the plan

will be changed in the next to make sure that the new benefits stay under the cap, and the overpayment for the previous year is recovered.

We believe the initial level of benefits will be like the amounts shown below; however, the benefits are still subject to the cap given above. They are not guaranteed at these amounts, and over time, the benefits are likely to be adjusted downward to fit within the cap upon costs.

General Description of Retiree Medical Plan

The following reflects a general description of the level of Retiree Medical Benefit coverage contemplated as of January 1, 2010:

| Plan Offering | • Nationwide HSA-qualified PPO |
|---|---|
| | |
| Monthly Contributions | • $160 (single)<br>• $220 (two)<br>• $270 (three or more) |
| | |
| Annual Deductible | • $2,500 (single)<br>• $5,000 (family) (single member may satisfy) |
| | |
| Medical Co-Insurance (after deductible) | • 20% (in-network)<br>• 40% (out of network) |
| | |
| Out-of-Pocket Maximum | • $3,500 (single)<br>• $7,000 (family) (single member may satisfy) |
| | |
| Behavioral Health (after deductible) | • Same as medical. |
| | |
| RX Retail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
| | |
| RX Mail (after deductible) | • 20% (in-network)<br>• 40% (out-of-network) |
| | |
| Vision Program | No longer offered. |
| | |
| Dental Program | No longer offered. |
| | |
| Coverage Termination (Participant level) | • Retirees, surviving spouses, and eligible dependents who are age 65 or older, and<br>• Retirees, surviving spouses, and eligible dependents who are under age 65 but eligible for Medicare. |

**Benefits may be terminated; No other benefits to be provided:** The retiree medical benefits are not guaranteed. New GM may terminate the plan in the future, or reduce benefits. If it does, however, it will make the same reductions (or terminate the plan) not

just for MRCC-represented retirees, but for all groups in the plan, including for example managerial employees who are in the plan.

As part of the agreement by the New GM to provide these benefits, the MRCC has agreed not to ask New GM to provide more benefits, or to increase the amount of cap, or to attempt to replace these benefits or fund these benefits in any other way.

**Other obligations are terminated; Releases.**  As part of the Court approval of the sale, all other obligations GM has toward retiree health care are being terminated.  The New GM will not have any obligations for retiree benefits incurred before the sale.  It will have only the obligations described above.  MRCC is also giving a release to GM of all its other obligations regarding retiree medical insurance as a condition of preserving the benefits above.  In addition, you are releasing the MRCC from liability in connection with matters relating to retiree benefits as well.

**Life Insurance.**   Effective the first of the month after the sale, New GM will provide Basic Life Insurance in retirement in the maximum fixed amount of $10,000 for retirees in the covered group described above that are current and future retirees.  Retirees whose Basic Life Insurance entitlement is below $10,000 will remain at the lower amount.  Current employees, on the date of retirement will have Basic Life Insurance in the fixed amount of $10,000.

**MRCC to act as representative of retirees.**   Under the Bankruptcy Code, the union is presumed to act as the representative of retirees whose benefits are being modified if the union was their representative when they were active employees.  MRCC intends to act as your representative for the purpose of accomplishing these benefit changes.

**Alternatives.**   We recognize that these benefit changes are painful; however, if we do not enter into these agreements, you have no guarantees that your benefits will not be terminated immediately or soon after the sale.  We anticipate the sale will be successful, as it was in the case with Chrysler, and that going forward, the only viable company will be the New GM.  We expect New GM to acquire all or substantially all of the assets of the old company.  We do not expect old GM to be able to provide benefits in the future.

None of these options are desirable.  We have decided to cooperate with GM in hopes of continuing to provide you at least some level of benefits into the future, while preserving and protecting jobs at the New GM.

**This Document is a Summary.**   The actual terms of the settlement agreement with the New GM are more complicated that this summary.   If you want to read the entire document, you may do so by going to the website address in the legal notice enclosed.

**If you Agree.**  You do not need to do anything at this time.

**If you Disagree.**    You must file an objection as explained in the legal notice enclosed.

C:\Documents and Settings\falabell\Desktop\Project TWO\Splinter Unions\Locals 687 & 1045\LOCALS 687 & 1045 FORM OF NOTICE TO RETIREES_2680028.DOC

## NEWCO-LOCALS 687 & 1045 SETTLEMENT AGREEMENT
## REGARDING RETIREE HEALTH CARE & LIFE INSURANCE

This Settlement Agreement (together with the Exhibits hereto, the "Settlement Agreement"), is between [Vehicle Acquisition Holding, LLC] ("Newco"), by and through its attorneys, and the Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045 ("LOCALS 687 & 1045"). The LOCALS 687 & 1045 also enter into this Settlement Agreement as the authorized representative, as defined in Section 1114(c)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), of those persons receiving retiree benefits, as defined in Section 1114(a) of the Bankruptcy Code, pursuant to collectively bargained plans, programs and/or agreements between Newco (or General Motors Corporation ("GM")) and who are members of the Covered Group, as defined herein. Collectively, the LOCALS 687 & 1045, Newco, and the Covered Group are referred to as the "Parties."

This Settlement Agreement shall cover and has application to;

- the Covered Group;
- The LOCALS 687 & 1045; and
- Newco.

GM agreed to provide certain retiree medical benefits in various collectively bargained agreements with the LOCALS 687 & 1045. Subsequent to entering those collective bargaining agreements, GM filed a bankruptcy action known as *In Re General Motors Corp., et al.,* No. 09-050026 (REG), U.S. Bankruptcy Court (S.D. N.Y.), pursuant to which Newco purchased certain assets of GM.

The LOCALS 687 & 1045 asserts, and Newco denies, that Newco is required to continue to provide retiree medical benefits and retiree life insurance in accordance with those collective bargaining agreements. Newco maintains that it is not obligated to assume and abide by the GM-LOCALS 687 & 1045 collective bargaining agreements. After due consideration of the factual and legal arguments regarding this issue, as well as the costs, risks, and delays associated with litigating the issue, Newco and the LOCALS 687 & 1045 have agreed to resolve all claims regarding Retiree Medical Benefits and Retiree Basic Life Insurance on the basis set forth in this Settlement Agreement. The parties agree to present this Settlement Agreement to the Bankruptcy Court for approval in connection with the contemplated sale of assets between GM and Newco.

### 1. Definitions

Admissions. The term "Admissions" shall mean any statement, whether written or oral, any act or conduct, or any failure to act, that could be used (whether pursuant to Rules 801(d)(2) or 804(b)(3) of the Federal Rules of Evidence, a similar rule or standard under other applicable law, the doctrines of waiver or estoppel, other rule, law, doctrine or practice, or otherwise) as evidence in a proceeding of proof of agreement with another party's position or proof of adoption of, or acquiescence to, a position that is contrary to the interest of the party making such statement, taking such action, or failing to act.

1

Affiliate.  The term "Affiliate" shall mean, with respect to any specified person or entity, any other person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with such specified person or entity.

Approval Order or Judgment.  The terms "Approval Order" or "Judgment" shall mean an order obtained from the Bankruptcy Court approving and incorporating this Settlement Agreement in all respects, as set forth in Section 8 of this Settlement Agreement.

Bankruptcy Court.  The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York with respect to *In Re General Motors Corp., et al.,* No. 09-050026 (REG).

Closing.  The term "Closing" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

Closing Date.  The term "Closing Date" shall have the meaning given thereto in the Master Sale and Purchase Agreement, dated June 1, 2009, by and among Newco, GM, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as may be amended from time to time.

Covered Group.  The term "Covered Group" shall mean:

    a.  All GM employees who were represented with respect to the terms and conditions of their employment with GM by the LOCALS 687 & 1045 and who retired from GM under circumstances such that they were eligible for GM contributions to their health care in retirement according to the terms of a LOCALS 687 & 1045 collective bargaining agreement in effect at the time of their retirement, and their spouses, surviving spouses and dependents;

    b.  The term "surviving spouses" shall include surviving spouses of a Covered Group retiree as well as surviving spouses of Covered Group active employees who died prior to retirement under circumstances such that at the time of death the employee would have been eligible to retire under circumstances meeting the Covered Group classification (a).

GM-LOCALS 687 & 1045 Collective Bargaining Agreements.  The term "GM-LOCALS 687 & 1045 Collective Bargaining Agreements" shall mean any and all national agreements or memorandums of understanding entered between GM and the LOCALS 687 & 1045, whether individually or collectively, regarding eligibility for Retiree Medical Benefits and Retiree Basic Life Insurance in retirement of members of the Covered Group.

GM Health Care Plan for Salaried Retirees.  The term "GM Health Care Plan for Salaried Retirees" shall mean the GM health care plan generally applicable to eligible GM salaried employees with a date of service with GM on or before January 1, 1993 and who retire from GM under circumstances such that they qualify for GM contributions toward health care in retirement.

2

GM Hourly Plan. The term "GM Hourly Plan" shall mean Retiree Medical Benefits as provided pursuant to the General Motors Health Care Program for Hourly Employees to retiree members of the Covered Group that was in effect immediately prior to the Closing.

LOCALS 687 & 1045. The term "LOCALS 687 & 1045" shall mean the United Brotherhood of Carpenters and Joiners of America inclusive of any predecessor union the members of which the LOCALS 687 & 1045 acts as the authorized representative as defined in Section 1114(c)(1) of the Bankruptcy Code.

LOCALS 687 & 1045 Releasees. The term "LOCALS 687 & 1045 Releasees" shall mean the LOCALS 687 & 1045, the Covered Group and anyone claiming on behalf of, through or under them by way of subrogation or otherwise.

Newco Retiree Health Care Plan. The term "Newco Retiree Health Care Plan" shall mean the GM Health Care Program for Salaried Retirees, including all amendments and modifications presently contemplated to take effect January 1, 2010, as adopted by Newco for the purpose of providing Retiree Medical Benefits to represented and non-represented retirees that qualify for such benefits, as may be modified or amended from time-to-time, and which shall be amended to include members of the Covered Group (when eligible) commencing January 1, 2010.

Retiree Basic Life Insurance. The term "Retiree Basic Life Insurance" shall mean all corporate provided life insurance in retirement for the former employee/retiree members of the Covered Group (when eligible) in accordance with the terms of the Life Insurance Program.

Retiree Medical Benefits. The term "Retiree Benefits" shall mean all corporate contributions toward health care in retirement for the Covered Group (when eligible) in accordance with the terms and conditions of an applicable employee welfare benefit plan, including, but not limited to, hospital surgical medical, prescription drug, vision, dental, hearing aid.

Subsidiary. The term "Subsidiary" shall mean any corporation or other entity of which at least a majority of the outstanding stock or other beneficial interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or other governing body of such corporation or other entity (irrespective of whether or not at the time stock or other beneficial interests of any other class or classes of such corporation or other entity shall have or might have voting power by reason of the happening of any contingency) is at the time owned by Newco, or by one or more Subsidiaries, or by Newco and one or more Subsidiaries.

2.      **Provision and Scope of Newco Provided Retiree Medical Benefits.**

A.      On and After Closing Date Through December 31, 2009. For claims incurred on and after the Closing Date through December 31, 2009, Newco will provide Retiree Medical Benefits for the Covered Group (when eligible) in accordance with the terms of the GM Hourly Plan. As of January 1, 2010, all Newco obligations to provide Retiree Medical Benefits to the Covered Group (when eligible) in accordance with the GM Hourly Plan shall cease and be forever terminated. If the Closing Date occurs after December 31, 2009, Newco shall have no obligation to provide Retiree Medical Benefits pursuant to this Section 2.A. A claim is deemed incurred for purposes of this Section 2 as of the date treatment is provided, regardless of when

3

such treatment was scheduled and regardless of whether such treatment was part of a continuation of related treatments.

        B.    <u>On and After January 1, 2010</u>.  For claims incurred on or after January 1, 2010, Newco will provide Retiree Medical Benefits to the Covered Group (when eligible) as follows:

        (i)    The Newco Retiree Health Care Plan shall be amended to include the Covered Group (when eligible) as participants.  Newco's obligation to provide Retiree Medical Benefits under the Newco Retiree Health Care Plan shall be fixed and capped at a specified level of expenditures on an average annual per contract basis for pre-Medicare Single coverage ($4,140) and for pre-Medicare family coverage ($8,060) (the "Cap").  Newco will analyze and project Retiree Medical Benefit expenses on an annual basis and adjust the plan design as necessary to maintain benefit coverages within the Cap on an aggregate basis across both pre-Medicare single and pre-Medicare family coverage.  For periods in which the Cap is exceeded, Newco will make whatever plan design changes it deems necessary to recover the overpayment in the next plan year as well as to adjust for any anticipated increases in Retiree Medical Benefits costs in the next year.  For periods in which the Cap has not been reached, Newco will make whatever plan design changes it deems necessary to increase benefit levels to the extent of the Cap;

        (ii)    Newco will provide Retiree Medical Benefits to members of the Covered Group (when eligible) as participants in the Newco Retiree Health Care Plan on the same terms and under the same conditions and basis as such benefits are provided to eligible Newco represented and non-represented retirees, inclusive of all participant contributions, co-payments and deductibles and subject to all future plan design changes and increases or decreases, if any.

        (iii)    Newco reserves the right to amend, modify or terminate the Newco Retiree Health Care Plan at any time, including the Cap; provided that any such amendment, modification, or termination shall be applied on an equal basis to all similarly situated participants in the Newco Retiree Health Care Plan.  Newco shall not amend, modify or terminate the Newco Retiree Health Care Plan such that members of the Covered Group (when eligible) are disadvantaged or advantaged in relation to similarly situated represented or non-represented retiree participants.

        (iv)    The LOCALS 687 & 1045 and the Covered Group will not in the future seek to negotiate any modifications or changes to the Retiree Medical Benefits provided by Newco to the Covered Group.  For the avoidance of doubt, the LOCALS 687 & 1045 will not seek to obligate Newco to:  (i) increase the Cap; (ii) make any other payments for the purpose of providing Retiree Medical Benefits to the Covered Group; or (iii) provide for or assume the cost of Retiree Medical Benefits for the Covered Group through any other means.  All disputes regarding the application of plan policies or claims for benefits shall be addressed according to the appeal process set forth in the Newco Retiree Health Care Plan; provided, however, that nothing in this Section 2.B(iv) shall be interpreted to preclude a participant from filing a claim for benefits under the Newco Retiree Health

Care Plan in a court of competent jurisdiction after exhaustion of the internal review processes.

      (v)     All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Medical Benefits for the Covered Group arising from any GM-LOCALS 687 & 1045 Collective Bargaining shall be forever terminated as of the Closing Date.

3.     **Retiree Basic Life Insurance.**

      Effective the first of the month following the Closing, Newco will provide Retiree Basic Life Insurance in retirement to retiree members of the Covered Group in the maximum fixed amount of $10,000 in accordance with the terms of the Life Insurance Program attached as Exhibit A to this Settlement Agreement. Retirees whose Retiree Basic Life Insurance entitlement is below $10,000 will remain at the lower amount. The LOCALS 687 & 1045 will not in the future seek to negotiate any modifications or changes to the Retiree Basic Life Insurance provided by Newco to the Covered Group. All disputes regarding the application of plan policies or claims for Retiree Basic Life Insurance benefits shall be addressed according to the appeal process set forth in the Life Insurance Program; provided, however, that nothing in this Section 3 shall be interpreted to preclude a participant from filing a claim for Retiree Basic Life Insurance in a court of competent jurisdiction after exhaustion of the internal review processes. All obligations of GM, the GM Plan and any other GM entity or benefit plan for Retiree Basic Life Insurance for the Covered Group arising from any GM-LOCALS 687 & 1045 Collective Bargaining shall be forever terminated as of the Closing Date

4.     **[THIS SECTION NOT USED].**

5.     **Releases and Certain Related Matters**

      A.     <u>Consent to Entry of the Judgment</u>. In consideration of Newco's entry into this Settlement Agreement and the other obligations of Newco contained herein, the LOCALS 687 & 1045, acting on their own behalf and as the authorized representative of the Covered Group, hereby consents to the entry of the Judgment, which shall be binding upon all members of the Covered Group.

      B.     <u>LOCALS 687 & 1045 Releasees</u>. As of the Closing Date, each LOCALS 687 & 1045 Releasee releases and forever discharges each other LOCALS 687 & 1045 Releasee and shall be forever released and discharged with respect to any and all rights, claims or causes of action that such LOCALS 687 & 1045 Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of or based upon or otherwise related to (i) any claims arising, or which could have been raised concerning the provision of Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations; and (iii) any action taken to carry out this Settlement Agreement in accordance with this Settlement Agreement and applicable law.

5

C.    Newco.  As of the Closing Date, the LOCALS  687 & 1045 Releasees release and forever discharge Newco, and its current or former officers, directors, employees, agents, Subsidiaries, Affiliates, and any and all of its welfare and pension benefit plans and its fiduciaries, with respect to any and all rights, claims or causes of action that any LOCALS  687 & 1045 Releasee had, has or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to (i) any of the claims arising, or which could have been raised, concerning any alleged obligation of Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance; (ii) any claims that this Settlement Agreement, any document referred to or contemplated herein is not in compliance with applicable laws and regulations and (iii) any action taken to carry out this Settlement Agreement  in accordance with this Settlement Agreement and  applicable law.

6.    **Dispute Resolution**

A.    Coverage.  Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement Agreement shall be enforceable only by Newco and the LOCALS 687 & 1045.  The Approval Order will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application or interpretation of this Settlement Agreement.  In the event that the bankruptcy proceeding has been closed or dismissed, the parties agree that any necessary litigation to resolve such disputes shall be brought before the U.S. District Court for the Eastern District of Michigan (the "Court").  Each of the parties hereto expressly and irrevocably submits to the jurisdiction of the Bankruptcy Court or the Court, as applicable, and expressly waives any argument it may have with respect to venue or forum non conveniens.  Notwithstanding the foregoing, any disputes relating solely to eligibility for participation or entitlement to benefits under the Newco Retiree Health Care Plan shall be resolved in accordance with the applicable procedures such plan shall establish, and nothing in this Settlement Agreement precludes members of the Covered Group from pursuing appropriate judicial review regarding such disputes after exhaustion of administrative remedies.

B.    Attempt at Resolution.  Although the Bankruptcy Court retains exclusive jurisdiction to resolve disputes arising out of or relating to the enforcement, implementation, application or interpretation of this Settlement Agreement, the parties agree that prior to seeking recourse to the Bankruptcy Court or the Court, the parties shall attempt to resolve the dispute through the following process:

(i)    The aggrieved party shall provide the party alleged to have violated this Settlement Agreement ("Dispute Party") with written notice of such dispute, which shall include a description of the alleged violation and identification of the Section(s) of the Settlement Agreement allegedly violated.  Such notice shall be provided so that it is received by the Dispute Party no later than 180 calendar days from the date of the alleged violation or the date on which the aggrieved party knew or should have known of the facts that give rise to the alleged violation, whichever is later, but in no event longer than 3 years from the date of the alleged violation.

(ii)    If the Dispute Party fails to respond within 21 calendar days from its receipt of notice, the aggrieved party may seek recourse with the Bankruptcy Court or the

6

Court; provided, however, that the aggrieved party waives all claims related to a particular dispute against the Dispute Party if the aggrieved party fails to bring the dispute before the Bankruptcy Court or the Court within 180 calendar days from the date of sending the notice.

(iii)    Failure of the Dispute Party to comply to comply with time limits provided in this Section 6 shall constitute waiver of any claim arising from the facts and circumstances giving rise to the dispute; provided, however, that the time periods in this Section 6 may be extended by agreement of the parties to the particular dispute.

C.    <u>Alternate Means of Resolution</u>.  Nothing in this Section shall preclude Newco and the LOCALS 687 & 1045 from agreeing on any other form of alternative dispute resolution or from agreeing to extend the time periods specified in this section.

7.    **Submission of the Settlement Agreement**

The parties shall submit this Settlement Agreement to the Bankruptcy Court and jointly work diligently to have this Settlement Agreement approved by the Bankruptcy Court as soon as possible.  The parties shall give notice to all affected individuals as required by the Court.  The parties shall seek from the Bankruptcy Court any order necessary to comply with the Federal Rules of Bankruptcy Procedures or any other applicable rule of procedure or statutory requirement that must be met in order to give the Settlement Agreement full force and effect.

8.    **Condition**

This Settlement Agreement is conditioned upon the Bankruptcy Court having entered a Judgment approving and accepting this Settlement Agreement in all material respects and as to all parties, including Newco, the LOCALS 687 & 1045, and the Covered Group and the Closing shall have occurred in reliance on such Judgment.  Such Approval Order shall be reasonably acceptable in form and substance to Newco and the LOCALS 687 & 1045.  This condition shall be deemed to have failed upon issuance of an order disapproving this Settlement Agreement, or upon the issuance of an order approving only a portion of this Settlement Agreement but disapproving other portions in a material respect, unless Newco and the LOCALS 687 & 1045, acting on its own behalf and as the authorized representative of the Covered Group, agree otherwise in writing.  The failure of this condition shall render this Settlement Agreement void.

9.    **No Admission; No Prejudice**

Notwithstanding anything to the contrary, whether set forth in this Settlement Agreement, any settlement agreements, the Judgment, any documents filed in the bankruptcy proceeding, any documents, whether provided in the course of or in any manner whatsoever relating to the discussions between Newco and the LOCALS  687 & 1045 with respect to Retiree Medical Benefits, Retiree Basic Life Insurance, any term sheet, this Settlement Agreement, whether distributed, otherwise made available to or obtained by any person or organization, including without limitation, Newco active employees, members of the Covered Group or their spouses, surviving spouses or dependents, or to the LOCALS 687 & 1045 or Newco in the course of the negotiations that led to entry into this Settlement Agreement, or otherwise:

7

A.     Newco.  Newco has denied and continues to deny that it is bound by any LOCALS 687 & 1045 Collective Bargaining Agreements, regardless of form, or prior settlement agreements between GM and the LOCALS 687 & 1045, if any, and, therefore, is not responsible for providing Retiree Medical Benefits or Retiree Basic Life Insurance to the Covered Group. Neither this Settlement Agreement nor any document referred to or contemplated herein may be construed as, or may be viewed or used as, an Admission by or against Newco of any fault, wrongdoing or liability whatsoever, or as an Admission by Newco of any claim or argument made by or on behalf of the LOCALS 687 & 1045 or the Covered Group, that obligated Newco to provide Retiree Medical Benefits or Retiree Basic Life Insurance in retirement to the Covered Group.   Without limiting in any manner whatsoever the generality of the foregoing, the performance of any settlement actions by Newco may not be construed, viewed or used as an Admission by or against Newco.

B.     The LOCALS 687 & 1045, Covered Group.  The LOCALS  687 & 1045, acting on their own behalf and as the authorized representative of the Covered Group, claims and continues to claim that the allegations, claims and contentions made against Newco have merit. Neither this Settlement Agreement nor any document referred to or contemplated herein nor any previous settlement agreement between GM and any of the LOCALS  687 & 1045 or actions taken to effectuate this Settlement Agreement may be construed as, or may be viewed or used as, an Admission by or against the LOCALS  687 & 1045 or the Covered Group of any fault, wrongdoing or liability whatsoever or of the validity of any claim or argument made by or on behalf of Newco that Newco has a unilateral right to modify or terminate retiree health care benefits or that retiree health care benefits are not vested.  Without limiting in any manner whatsoever the generality of the foregoing, the performance of any actions taken to effectuate this Settlement Agreement by the LOCALS  687 & 1045 or the Covered Group, including without limitation, the acceptance of any Retiree Medical Benefits or Retiree Basic Life Insurance from Newco may not be construed, viewed or used as an Admission by or against the LOCALS  687 & 1045 or the Covered Group that Newco lacks the unilateral right to modify or terminate retiree health care benefits

C.     No Prejudice.  Entering into this Settlement Agreement and performance of any of actions taken to effectuate this Settlement Agreement shall not be construed as, or deemed to be evidence of, an Admission by any of the parties hereto, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal or forum for any purpose whatsoever other than to enforce the provisions of this Settlement Agreement or to obtain or seek approval of this Settlement Agreement.  It is intended that Newco, the LOCALS 687 & 1045 and the Covered Group shall not use this Settlement Agreement, or anything occurring in connection with reaching this Settlement Agreement, as evidence against Newco, the LOCALS 687 & 1045 or the Covered Group in any circumstance except where the parties are operating under or enforcing this Settlement Agreement or the Judgment approving this Settlement Agreement

D.     For the purposes of this Section 9, Newco and the LOCALS 687 & 1045 refer to them, respectively, as organizations, as well as any and all of their respective current or former directors, officers, employees, and agents.

10.    **Duration and Termination of Settlement Agreement**

8

This Settlement Agreement will remain in effect unless and until terminated in accordance with this Section and as provided for in Section 8 of this Settlement Agreement. Termination of this Settlement Agreement may occur as follows:

(i) If the Judgment is denied in whole or in material part, either Newco or the LOCALS 687 & 1045, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

(ii) If an Approval Order satisfactory to the parties, as described in Section 8 of this Settlement Agreement or any other order authorizing the Closing, is entered by the Bankruptcy Court, but overturned on appeal or otherwise such that there is or may be a material negative impact on the rights, obligations or benefits provided hereunder to the LOCALS 687 & 1045, the Covered Group or Newco, either Newco or the LOCALS 687 & 1045, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement upon 30 days' written notice to the other parties and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

(iii) If any court, agency or other tribunal of competent jurisdiction issues a determination that any part of this Settlement Agreement is prohibited or unenforceable in any material respect, either Newco or the LOCALS 687 & 1045, acting on its own behalf and as the authorized representative of the Covered Group, may terminate this Settlement Agreement by 30 days' written notice to the other party and the rights and obligations of all parties shall revert to the status quo ante as if this Settlement Agreement had never been entered.

11.   **Other Provisions**

A.   References in this Settlement Agreement to "Sections," "Paragraphs" and "Exhibits" refer to the Sections, Paragraphs, and Exhibits of this Settlement Agreement unless otherwise specified.

B.   This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement. This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement.

C.   The captions used in this Settlement Agreement are for convenience of reference only and do not constitute a part of this Settlement Agreement and will not be deemed to limit, characterize or in any way affect any provision of this Settlement Agreement, and all provisions of this Settlement Agreement will be enforced and construed as if no captions had been used in this Settlement Agreement.

D.   This Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument,

9

provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

E.     No party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other parties, and any purported assignment in violation of this sentence shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. For purposes of clarification and without limitation as to other beneficiaries, GM is intended to be a third party beneficiary of this Settlement Agreement.

F.     Each of Newco, the LOCALS 687 & 1045 and the Covered Group shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

G.     This Settlement Agreement shall be construed in accordance with applicable federal laws of the United States of America.

H.     Any provision of this Settlement Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent any provision of this Settlement Agreement is invalid or unenforceable as provided for in this Section 10, it shall be replaced by a valid and enforceable provision agreed to by Newco and the LOCALS 687 & 1045, acting on its own behalf and as the authorized representatives of the Covered Group (which agreement shall not be unreasonably withheld) that preserves the same economic effect for the parties under this Settlement Agreement; provided however, that to the extent that such prohibited or unenforceable provision cannot be replaced as contemplated and the consequences of such prohibited or unenforceable provision causes this Settlement Agreement to fail of its essential purpose then this Settlement Agreement may be voided at the sole discretion of the party seeking the benefit of the prohibited or unenforceable provision.

I.     Any notice, request, information or other document to be given under this Settlement Agreement to any of the parties by any other party shall be in writing and delivered personally, or sent by Federal Express or other carrier which guarantees next-day delivery, transmitted by facsimile, transmitted by email if in an Adobe Acrobat PDF file, or sent by registered or certified mail, postage prepaid, at the following addresses. All such notices and communication shall be effective when delivered by hand, or, in the case of registered or certified mail, Federal Express or other carrier, upon receipt, or, in the case of facsimile or email transmission, when transmitted (provided, however, that any notice or communication transmitted by facsimile or email shall be immediately confirmed by a telephone call to the recipient):

10

If to Newco, addressed to:

> Diana Tremblay
> GMNA Vice President of Labor Relations
> Newco
> 2000 Centerpoint Parkway
> Pontiac, MI 48341
> Tel: (248) 753-2243

in each case with copies to:

> Francis S. Jaworski
> Office of the General Counsel
> Newco
> Mail Code 482-C25-B21
> 300 Renaissance Center
> P.O. Box 300
> Detroit, MI 48265-3000
> Tel: (313) 665-4914

> Cadawalder, Wickersham & Taft LLP
> One World Financial Center
> New York, NY 10281
> Attention: R. Ronald Hopkinson/Lisa J. Pauquette/John J. Rapisardi
> Tel: (212) 504-6000

If to the LOCALS  687 & 1045, addressed to:

> Tom Lutz
> Director
> Michigan Regional Council of Carpenters
> Interior Systems Local 1045
> 23401 Mound Rd
> Suite 202
> Warren, MI 48091
> Office: 586-756-2111
> Cell: 734-637-3917
> *Tom.Lutz@hammer9.com*

in each case with copies to:

11

Ed Pasternak
NOVARA TESIJA, P.L.L.C.
Attorneys and Counselors at Law
2000 Town Center, Suite #2370
Southfield, MI 48075
phone:(248) 354-0380
fax: (248) 354-0393
ejp@novaratesija.com

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to
be executed by themselves or their duly authorized attorneys.

AGREED:

| By: _____ | Date: _____, 2009 |
|---|---|
| Vehicle Acquisition Holding, LLC ("Newco") | |
| By: *Thomas D Lutz* | Date: 6-17, 2009 |
| Michigan Regional Council of Carpenters, Local 687 | |
| By: *Thomas D Lutz* | Date: 6-17, 2009 |
| Interior Systems, Local 1045 | |

12

June 16, 2009

Michigan Regional Council of Carpenters, Local 687 and Interior Systems, Local 1045
("LOCALS  68 & 10457").


      Re:  Memorandum of Understanding Regarding Retiree Health Care & Retiree Basic Life
Insurance.

The LOCALS 687 & 1045 on behalf of itself and as representative of the Covered Group, hereby
agrees that, if (i) a sale of substantially all of GM's assets under Section 363(b) of the
Bankruptcy Code occurs; (ii) the Bankruptcy Court approves the Settlement Agreement between
the LOCALS 687 & 1045 and the purchaser of such assets; and (iii) following the court approval
of the Settlement Agreement the purchaser of such assets becomes fully bound to the terms of
the Settlement Agreement, the LOCALS 687 & 1045, shall, in consideration therefor and to
clarify treatment of all rights and benefits under the Settlement Agreement, on the occurrence of
such events:

> (i) withdraw all claims filed or otherwise made against GM and its subsidiaries, and their
> employees, officers, directors and agents, relating to Retiree Medical Benefits and Retiree
> Basic Life Insurance and pursuant to any GM-LOCALS 687 & 1045 National
> Agreements;  and

> (ii) not assert or prosecute any such claims thereafter, and all such claims shall be deemed
> to be waived and released.

Nothing herein shall be deemed to waive or release any rights or benefits under the terms of the
Settlement Agreement entered into as a part of the 363(b) sale transaction.

The LOCALS 687 & 1045 and the Covered Group agree to reasonably cooperate with GM and
to take such further actions as may be appropriate to effectuate or confirm the extinguishment of
the claims described above as of the closing date of a sale of substantially all of GM's assets
under Section 363(b) of the Bankruptcy Code.

All capitalized terms herein shall have the same meaning as set forth in the Newco-LOCALS
687 & 1045 Settlement agreement Regarding Retiree Health Care & Life Insurance between
NEWCO and the LOCALS 687 & 1045 executed by the LOCALS 687 & 1045 on June 17,
2009.

Please confirm your agreement to the foregoing by executing a copy of this letter and delivering
same to Francis S. Jaworski, General Motors Corporation, Mail Code 482-C25-B21, 300
Renaissance Center, P.O. Box 300, Detroit, MI, 48625-3000 with an email copy to
francis.s.jaworski@gm.com.

Memorandum of Understanding Regarding Retiree Health Care & Retiree Basic Life Insurance.

Respectfully,

GENERAL MOTORS CORPORATION

BY: _____
Francis S. Jaworski

Acknowledged and Agreed:

Michigan Regional Council of Carpenters, Local 687

BY: _Thomas D Lutz_____
Name: Thomas D. Lutz
Title: Director, M.R.C.C.

Dated: 6-17, 2009

Interior Systems, Local 1045

BY: _Thomas D Lutz_____
Name: Thomas D. Lutz
Title: Director, M.R.C.C.

Dated: 6-17, 2009

2