Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone:  (804) 749-8861
Facsimile:  (804) 749-8862

*Co-Counsel for Shreveport Red River Utilities, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                        :
**In re:**                              :   Chapter 11
                                        :
**GENERAL MOTORS CORP.,** *et al.*,     :   Case No. 09-50026 (REG)
                                        :
              Debtors.                  :   (Jointly Administered)
                                        :
-----------------------------------------------------------x

**DECLARATION OF KEVIN HOOKER IN SUPPORT OF OBJECTION OF CERTAIN
UTILITY COMPANIES TO MOTION OF DEBTORS FOR ENTRY OF ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED
FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING
PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III)
PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING
<u>SERVICE</u>**

I, Kevin Hooker, declare as follows:

1. I am the Vice President of Shreveport Red River Utilities, LLC ("SRRU") and have been in that position for 2 years. In my position as Vice President of SRRU, I assist in the credit and bankruptcy operations of SRRU, a Delaware limited liability company comprised of the following members: GDF-Suez Energy Generation NA, LLC ("Suez"), Duke Energy Generation Services ("DEGS") and Veolia Water North America Operating Services, LLC ("Veolia") (Suez, DEGS and Veolia are collectively referred to as the "Members").

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, my review of SRRU's business documents, correspondence and relevant documents, or my opinion based upon my experience concerning the operations of SRRU. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. On behalf of SRRU, I submit this Declaration in support of the *Objection Of Certain Utility Companies To Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Objection").

4. In making this Declaration, I am familiar with the contents of the Objection and the *Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Utility Motion"). Accordingly, I am aware of the Debtors' offer to provide their utilities with a two-week deposit.

5. The Debtors and SRRU are parties to that certain prepetition contract for the provision of utility services and more formally known as the *Utility Services Agreement Between*

*Shreveport Red River Utilities, LLC And General Motors Corporation - Worldwide Facilities Group, GMTG - Shreveport*, dated November 15, 2000 (the "SRRU Agreement").

6. Under the SRRU Agreement, SRRU has provided prepetition and continues to provide postpetition utility services, as further defined under the SRRU Agreement, to the Debtors' vehicle assembly facility located in Shreveport, Louisiana. Further, the SRRU Agreement became effective on November 15, 2000, and terminates as of 11:59 p.m. on November 30, 2015. The Parties agreed, however, that the terms of the SRRU Agreement would automatically continue and extend thereafter on a month-to-month basis unless terminated by either party upon at least 180 days written notice and/or the Parties agreed to terms of a specific extension.

7. It is part of my job responsibility on behalf of the Members to: (A) review the Debtors' accounts with SRRU; (B) address any credit issues of the Debtors in relation to SRRU; and (C) address all issues concerning the Debtors' bankruptcy cases in relation to SRRU and in particular, the SRRU Agreement, including, without limitation, SRRU's request for adequate assurance of payment and the Debtors' obligations for their potential assumption and assignment of the SRRU Agreement.

8. SRRU's relationship with the Debtors is governed by the express contractual terms set forth under the SRRU Agreement. Under SRRU's billing cycle as created within the SRRU Agreement, the Debtors receive approximately one month of utility goods and/or services before SRRU issues a bill for such charges. Once a bill is issued, the Debtors have approximately 60 days to pay all undisputed amounts of the applicable bill. Further, the Debtors have the right to raise a good-faith dispute concerning any amount of a bill and withhold payment equal to that amount. For any amounts that are subsequently determined by the parties to be due

and payable following the resolution of a good-faith dispute, the Debtors must remit payment within ten (10) business days together with applicable interest. Accordingly, under SRRU's billing cycle, the Debtors could receive at least 3 or more months of unpaid charges before SRRU could cease the supply of utility goods and/or services to the Debtors for a postpetition payment default.

9. Pursuant to the SRRU Agreement, SRRU provided the Debtors with utility goods and services prior to the petition date of June 1, 2009. Debtors' unpaid prepetition amount due to SRRU pursuant to the SRRU Agreement is approximately $804,164.44.

10. SRRU continues to provide postpetition utility goods and services to the Debtors pursuant to the SRRU Agreement.

11. At this time, there is no postpetition amount currently due under the SRRU Agreement. Under SRRU's billing cycle as set forth within the SRRU Agreement, SRRU will issue the first postpetition bill to the Debtors on or after July 1, 2009.

12. The amount of postpetition security necessary to secure SRRU's billing exposure as created under the billing cycle of the SRRU Agreement is $1,439,280 which represents a two-month cash deposit.

13. Accordingly and based upon SRRU's billing exposure as created under the billing cycle of the SRRU Agreement, SRRU seeks adequate assurance of payment from the Debtors in the form of a two-month cash deposit in the amount set forth herein.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23rd day of June 2009, at Cincinnati, Ohio.

_____
Kevin Hooker