Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862

*Co-Counsel for Delta Township Utilities II, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| **GENERAL MOTORS CORP.,** *et al.*, | Case No. 09-50026 (REG) |
| **Debtors.** | (Jointly Administered) |

-----------------------------------------------------------x

**DECLARATION OF KEVIN HOOKER IN SUPPORT OF OBJECTION OF CERTAIN UTILITY COMPANIES TO MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

I, Kevin Hooker, declare as follows:

1.    I am the Vice President of Delta Township Utilities II, LLC ("Delta II") and have

been in that position for 2 years. In my position as Vice President of Delta II, I assist in the operations of Delta II, a Delaware limited liability company comprised of the following members: Duke Energy Generation Services Holdings Company, Inc. ("DEGS"), Veolia Water North America Operating Services, LLC ("Veolia") and York International Corporation ("York") (DEGS, Veolia and York are collectively referred to as the "Members").

2. Except as otherwise stated, all facts contained within this Declaration are based upon personal knowledge, my review of Delta II's business documents, correspondence and relevant documents, or my opinion based upon my experience concerning the operations of Delta II. If called upon to testify, I would testify to the facts set forth in this Declaration.

3. On behalf of Delta II, I submit this Declaration in support of the *Objection Of Certain Utility Companies To Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Objection").

4. In making this Declaration, I am familiar with the contents of the Objection and the *Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "Utility Motion"). Accordingly, I am aware of the Debtors' offer to provide their utilities with a two-week deposit.

5. The Debtors and Delta II are parties to that certain prepetition contract for the provision of utility services and more formally known as the *Utility Services Agreement Between Delta Township Utilities II, LLC And General Motors Corporation – Worldwide Facilities*

*Group, GM – Lansing Delta Township,* dated April 14, 2004 (the "Delta II Agreement").

6.  Under the Delta II Agreement, Delta II has provided prepetition and continues to provide postpetition utility services, as further defined under the Delta II Agreement, to the Debtors' metal fabrication, stamping and assembly facilities located in Delta Township, Michigan. Further, the Delta II Agreement became effective on April 14, 2004, and terminates as of 11:59 p.m. on April 30, 2019. The Parties agreed, however, that the terms of the Delta II Agreement would automatically continue and extend thereafter on a month-to-month basis unless terminated by either party upon at least 180 days written notice and/or the Parties agreed to terms of a specific extension.

7.  It is part of my job responsibility on behalf of Delta II to: (A) review the Debtors' accounts with Delta II; (B) address any credit issues of the Debtors in relation to Delta II; and (C) address all issues concerning the Debtors' bankruptcy cases in relation to Delta II and in particular, the Delta II Agreement, including, without limitation, Delta II's request for adequate assurance of payment and the Debtors' obligations for their potential assumption and assignment of the Delta II Agreement.

8.  Delta II's relationship with the Debtors is governed by the express contractual terms set forth under the Delta II Agreement. Under Delta II's billing cycle as created within the Delta II Agreement, the Debtors receive approximately one month of utility goods and/or services before Delta II issues a bill for such charges. Once a bill is issued, the Debtors have approximately 60 days to pay all undisputed amounts of the applicable bill. Further, the Debtors have the right to raise a good-faith dispute concerning any amount of a bill and withhold payment equal to that amount. For any amounts that are subsequently determined by the parties to be due and payable following the resolution of a good-faith dispute, the Debtors must remit payment

within ten (10) business days together with applicable interest. Accordingly, under Delta II's billing cycle, the Debtors could receive at least 3 or more months of unpaid charges before Delta II could cease the supply of utility goods and/or services to the Debtors for a postpetition payment default.

9. Pursuant to the Delta II Agreement, Delta II provided the Debtors with utility goods and services prior to the petition date of June 1, 2009. Debtors' unpaid prepetition amount due to Delta II pursuant to the Delta II Agreement is approximately $525,772.44.

10. Delta II continues to provide post-petition utility goods and services to the Debtors pursuant to the Delta II Agreement.

11. At this time, there is no postpetition amount currently due under the Delta II Agreement. Under Delta II's billing cycle as set forth within the Delta II Agreement, Delta II will issue the first postpetition bill to the Debtors on or after July 1, 2009.

12. The amount of postpetition security necessary to secure Delta II's billing exposure as created under the billing cycle of the Delta II Agreement is $2,453,480 which represents a two-month cash deposit.

13. Accordingly and based upon Delta II's billing exposure as created under the billing cycle of the Delta II Agreement, Delta II seeks adequate assurance of payment from the Debtors in the form of a two-month cash deposit in the amount set forth herein.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23rd day of June 2009, at Cincinnati, Ohio.

_____
Kevin Hooker