**FOLEY & LARDNER LLP**

Ann Marie Uetz *(Admitted Pro Hac Vice)*
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

Keith Owens *(Pro Hac Vice Admission Pending)*
555 South Flower Street
Suite 3500
Los Angeles, CA 90071-2300

*Attorneys for CalsonicKansei North America, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:                                                                : Chapter 11
                                                                            :
GENERAL MOTORS CORP., *et al.*,              : Case No. 09-50026 (REG)
                                                                            :
                                                Debtors       : Jointly Administered
                                                                            :
---------------------------------------------------------------X

**OBJECTION OF CALSONICKANSEI NORTH AMERICA, INC. TO ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND CURE
AMOUNTS RELATED THERETO, AND RESERVATION OF RIGHTS**

CalsonicKansei North America, Inc. ("Supplier"), by its attorneys Foley & Lardner LLP, hereby submits this objection (the "Objection") to the Debtors' assumption and assignment of certain executory contracts and the Debtors' proposed Cure Amounts related thereto. In support of its Objection and reservation of rights, Supplier states as follows:

**PRELIMINARY STATEMENT**

1. On or about June 15, 2009, Supplier received by mail that certain Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Real Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related

BOST_1107112.5

Thereto (the "Assumption and Assignment Notice"), dated June 5, 2009, in which the Debtors purport to designate certain agreements (the "Assumable Executory Contracts") between Supplier and the Debtors that may be assumed and assigned to Vehicle Acquisition Holdings LLC (the "Purchaser").

2.      As of this date, Supplier has not executed the essential supplier trade terms letter with GM.  Therefore, Supplier has not consented to assumption of any contracts.

3.      Supplier reserves all rights, claims and defenses, including, but not limited to, its rights to file a Supplemental Objection, and to object to any additional and/or amended notice of assumption and assignment received from the Debtors and/or the Purchaser and to any changes to the information contained on the secure website referenced in the Assumption and Assignment Notice.

## ARGUMENT

### I.  A Significant Number Of The Assumable Executory Contracts Were Either Terminated, Expired Or Are Listed In Error

4.      The Debtors can only assume and assign a contract with Supplier if that contract actually existed on the petition date.  COLLIER ON BANKRUPTCY § 365.02[2] (15th ed. Rev. 2009) ("Section 365 applies only if the contract is in existence at the commencement of the case."); *see also In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004) ("It is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist.") (quoting from *In re Texscan Corp.*, 107 B.R. 227 (B.A.P. 9th Cir. 1989) *aff'd*, 976 F.2d 1269 (9th Cir. 1992)).

5.      If a binding contract was never formed, there is no executory contract to be assumed or rejected by the debtor.  *See In re Adler, Coleman Clearing Corp.*, 218 B.R. 13 (Bankr. S.D.N.Y. 1998).

6. In addition, contracts that have been effectively terminated prior to the filing of a chapter 11 petition cannot be revived by the bankruptcy court. *Matter of Benrus Watch Co., Inc.*, 13 B.R. 331 (Bankr. S.D.N.Y. 1981).

7. Among the 82 Assumable Executory Contracts listed by Debtors, several such contracts expired prior to Debtors' chapter 11 filing. *See* Declaration of Lisa Martin ("Martin Decl."), filed herewith, ¶ 4 & Exhibit A attached thereto. As provided in the Declaration of Lisa Martin, Mr. Ignacio Peralta, who is one of the Debtors' Global Supply managers, confirmed that all of the Debtors' production contracts with Supplier expired or were resourced to another supplier and no obligations remain outstanding by Supplier prior to the Petition Date. Id. at ¶ 4. Moreover, Supplier does not believe that there are more than six service part order contracts between the Debtors and Supplier that were active as of the date of Debtors' chapter 11 filing. Id. at ¶ 5. However, Supplier is unable to determine the exact number, if any, because of ambiguities in the Assumption and Assignment Notice and the Debtors' website. Supplier has not been able to obtain copies of all "contracts" that the Debtors propose to assume and assign despite Supplier's requests. Therefore, Supplier objects to the Assumption and Assignment Notice for the reasons set forth herein, and reserves all rights with respect to the existence and number of any executory service part order contracts.

8. Thus, as a threshold matter, virtually all of the "contracts" listed by Debtors as Assumable Executory Contracts cannot be assumed and assigned as a matter of law because they were effectively terminated, expired, or resourced to another supplier prior to Debtors' chapter 11 filing. *See Balco Equities,*, 312 B.R. at 750. Moreover, Mr. Peralta confirmed to Supplier that Debtors do not actually intend to assume the contracts that they have with Supplier.

3

9. As a related matter, the Debtors' list of 82 Assumable Executory Contracts appears to misidentify numerous contracts and does not properly distinguish among various affiliates of Supplier. For instance, more than half of the Assumable Executory Contracts listed by Debtors purport to designate "Calsonic Kansei Corp." as the counterparty. However, it is Supplier's understanding that none of the contracts attributed to "Calsonic Kansei Corp." are contracts to which Calsonic Kansei Corp. (Supplier's Japanese affiliate), was ever a party. *See* Martin Decl. ¶ 6. Further, given Debtors' misidentification of contracting parties, with respect to each of the 82 Assumable Executory Contracts listed, Supplier cannot state with certainty that Supplier or its affiliates is or was a contracting party. Id. at ¶ 6-7. Further, Supplier speaks only for itself in this Objection, and does not and cannot make representations on behalf of such affiliates.

10. Supplier's counsel has discussed these ambiguities and errors with Debtors' bankruptcy counsel, who advises that he is working with the Debtors' representatives to attempt to resolve such ambiguities and errors. Supplier's counsel also has been made aware of Supplier's correspondence with Mr. Peralta concerning the expiration and/or termination of the contracts at issue. Unfortunately, the Debtors are unable or unwilling to grant a further extension of the deadline to file a response to the Assumption and Assignment Notice. As a result of Debtors' apparent misidentification of the counterparties to the various Assumable Executory Contracts, Supplier cannot be assured that it has been provided with all information necessary to fully respond to the Assumption and Assignment Notice. Accordingly, Supplier reserves all of its rights, claims and defenses, including the right to file a Supplemental Objection. Supplier further objects to the assumption and assignment of any contracts that are misidentified in the

Assumption and Assignment Notice, or are no longer executory. Supplier reserves its rights to supplement this objection in the event it obtains more information concerning Debtors' contracts.

**II.     The Proposed Cure Amount Is Inadequate**

11.     In the exhibit to the Assignment Notice, the Debtors assert that the Cure Amount for the Assumable Executory Contracts is $12,670.93 (though the amount in the Debtor's website as of today shows a Cure Amount of $15,170.89 for Saturn). The Debtors claim that this amount is sufficient to cure all prepetition defaults under the Designated Agreements as of June 1, 2009 (the "Commencement Date").

12.     The proposed Cure Amount does not accurately reflect all prepetition defaults on unpaid invoices, and Supplier therefore believes that the Cure Amount is insufficient.

13.     In addition, the proposed Cure Amount does not include any post-petition defaults and is therefore insufficient.

14.     Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). Congress' intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). Resolution of claims of default arising under an assumed contract seeks to restore the debtor-creditor relationship to pre-default conditions, thereby bringing the contract back into compliance with its terms. *In re Wireless Data, Inc.*, 547 F.3d 484 (2d Cir. 2008).

15.     Debtors must cure all defaults under the Assumable Executory Contracts, including pre-petition defaults and post-petition defaults.

5

16. The Debtors' proposed Cure Amount would deprive Supplier of the full benefit of its bargain and would fail to restore the parties to pre-default conditions.

17. Supplier is informed and believes that the correct amount required to cure all defaults (i.e. the amount owed to Supplier) is approximately $93,504.66. This amount may be subject to change, in particular depending on which service contracts Debtors ultimately seek to assume and assign. Therefore, Supplier reserves all rights to supplement or amend this objection as appropriate.

18. "Cure Amounts" are defined in the Master Sale and Purchase Agreement as "all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by the applicable Seller and assignment to Purchaser of the Purchased Contracts." The proposed Cure Amount does not include defaults accruing during the period after June 1, 2009, or non-monetary defaults. Supplier reserves the right to submit such additional amounts to be added to the amount stated in the paragraph above.

### III.  Reservation of Rights Regarding Adequate Assurance of Future Performance

19. Section 365(b)(1)(C) of the Bankruptcy Code provides that the trustee may not assume an executory contract in which there has been a default unless the trustee "provides adequate assurance of future performance under such contract." 11 U.S.C. § 365(b)(1)(C).

20. Where a debtor or its assignee fails to provide adequate assurance of future performance, assumption and assignment of the executory contract must be denied. *See, e.g., In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 65-66 (Bankr. S.D.N.Y. 2005) (debtor failed to provide adequate assurance of future performance, and therefore could not assume contract);

BOST_1107112.5

*Skylark*, 120 B.R. at 355 (before debtor would be permitted to assume executory contract, debtor would be required to cure default and post bond or letter of credit).

21.     To date, neither the Debtors, the proposed Purchaser, nor any other possible assignee has provided Supplier with adequate assurance of future performance under any contracts to which Supplier is a party, including for amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount.  The Debtors must provide adequate assurance to Supplier for all amounts due Supplier post-petition but which are not in default and thus not included in the Cure Amount.  While it appears that the Purchaser will agree to assume all liabilities under the Assumable Executory Contracts, whether or not the Assumable Executory Contracts will actually be assumed and assigned is not yet clear.  Therefore, Supplier reserves all right with respect to adequate assurance for these amounts due and to object to assumption and assignment under section 365(b)(1)(C).

**IV.     Reservation of Rights of Setoff and Recoupment**

22.     Among Supplier's most valuable rights in its relationship with Debtors are its rights of setoff and recoupment.  These rights arise under the contract between Supplier and Debtors, federal or state statutes, or common law.

23.     The Assumption and Assignment Notice fails to properly preserve the validity, extent or priority of such setoff or recoupment rights. These rights must be preserved as against Debtors and against Purchaser upon the assumption and assignment of the Supplier's contracts. The preservation of post-assignment rights of setoff and recoupment is just as significant an interest of Supplier as are its pre-assignment rights against Debtors.

7

## **RELIEF REQUESTED**

WHEREFORE, Supplier requests that the Court enter an order denying the Debtors' request to assume and assign any of Supplier's contracts, and grant such other and further relief as the Court deems just and proper.

Dated: June 24, 2009　　　　　　　FOLEY & LARDNER LLP
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　/s/ Ann Marie Uetz

　　　　　　　　　　　　　　　　　　Ann Marie Uetz *(Admitted Pro Hac Vice)*
　　　　　　　　　　　　　　　　　　One Detroit Center
　　　　　　　　　　　　　　　　　　500 Woodward Avenue, Suite 2700
　　　　　　　　　　　　　　　　　　Detroit, MI 48226-3489
　　　　　　　　　　　　　　　　　　Telephone: (313) 234-7100
　　　　　　　　　　　　　　　　　　Facsimile: (313) 234-2800

　　　　　　　　　　　　　　　　　　Keith Owens *(Pro Hac Vice Admission Pending)*
　　　　　　　　　　　　　　　　　　555 South Flower Street
　　　　　　　　　　　　　　　　　　Suite 3500
　　　　　　　　　　　　　　　　　　Los Angeles, CA 90071-2300

　　　　　　　　　　　　　　　　　　*Attorneys for CalsonicKansei North America, Inc.*

BOST_1107112.5