# EXHIBIT A

General Form
GM 235—Revised 2 68

**This Lease,** dated...........December 7........., 19 71....,

between...JASON ASSOCIATES, a joint venture, with principal offices at

1714 Commerce Building, Fort Worth, Texas 76102............................

hereinafter called the Lessor, and.....GENERAL MOTORS CORPORATION, a Delaware.........

Corporation, with its principal office at 3044 West Grand

Boulevard, Detroit, Michigan 48202,...........................hereinafter called the Lessee,

**Witnesseth:**

**PREMISES**

The Lessor hereby lets to the Lessee, and the Lessee hires from the Lessor:

The North 215 feet of Lot 1, Block 4, Montbello No. 2, except the East 8.5 feet thereof; and the South 385 feet of Lot 2, Block 1, Montbello No. 21, except the East 17 feet thereof; all in the City and County of Denver, State of Colorado,

Upon which shall be constructed an office and warehouse comprising approximately 55,500 square feet as shown on the attached plans and specifications,

zone office

**USE OF PREMISES**

with the appurtenances, to be used for ~~an automobile showroom, service station,~~ warehouse ~~or garage, or for general automobile, tractor, implement, airplane or truck business, or accessories thereto,~~ or any line of business allied to or connected with any of the foregoing, or any type of business conducted or controlled by General Motors Corporation, or any other lawful purpose not inconsistent with the char-

acter of the premises, for a term ~~commencing~~ of ten (10) years, commencing...............

~~and expiring~~ January 1, 1972, and expiring December 31, 1982. In the

**TERM**

event the premises are completed prior to January 1, 1972, the Lessee may at its option occupy the premises and the rental rate

for such period of early occupancy shall be prorated,............................

**RENT**

at the yearly rent of...SEVENTY-EIGHT THOUSAND DOLLARS ($78,000.00)..................

----------------------------------------------------------------

----------------------------------------------------------------

payable in installments of $ 6,500.00.............................in advance on the first business day of each and every month during the term.

The parties hereto covenant and agree with each other as follows:

**FIRST:** That the Lessee shall pay the rent at the times and in the manner aforesaid.

**REPAIRS**

**SECOND:** That the Lessee shall keep the premises in as good order and condition as when delivered to it excepting ordinary wear and tear, damage by fire, the elements and casualty, and excepting damage due to any cause or happening not occasioned by the negligence of the Lessee, but the Lessor shall keep in repair the roof and exterior of the building, drains, eaves troughs, down spouts and gutters, ~~the plumbing, heating, lighting, air conditioning and ventilating equipment, sprinkler system, and the elevator or elevators,~~ provide lateral support, make all structural repairs, all replace-ments, and all other repairs, whether or not specified herein, which the Lessee is not hereby required to make. The Lessor shall replace all glass in said premises broken or damaged before possession is given the Lessee hereunder. The Lessee shall replace all glass in said premises broken or damaged during said term with glass of equal character, unless the same shall be broken by fire, the elements, or casualty, or unless broken by any cause or happening not due to the negligence of the Lessee, and at the expiration of the term, the Lessee will remove its goods and effects and will peaceably yield up to the Lessor the said premises in as good order and condition as when delivered to it excepting ordinary wear and tear, repairs hereby required to be made by the Lessor, damage by fire, the elements and casualty, and excepting damage due to any cause or happening not occasioned by the negligence

of the Lessee. In the event the Lessor fails to make any repairs which it is required to make hereunder within a reasonable time specified in a written notice by the Lessee, then in that event the Lessee may make such repairs and deduct the cost and expense thereof from the rent reserved hereunder, ~~or the Lessee may, at its option, cancel this Lease.~~ If by reason of emergency, repairs become necessary which by the terms hereof are the responsibility of Lessor, Lessee may but shall not be required to make any such repairs which in the opinion of Lessee are necessary for the preservation of the premises or of the Lessee's property, and Lessor shall at the option of the Lessee either reimburse Lessee or Lessee may deduct the cost and expense thereof from the rent reserved hereunder. Provided, however, that in such event Lessee agrees to make reasonable effort to contact Lessor before proceeding with such repairs. **The Lessee shall maintain the plumbing, heating, lighting, air conditioning and all other equipment and Lessor shall make all \***

**EASEMENTS**  THIRD: That the enjoyment and use of all entrances, exits, approaches and means of entrance and approach, and of light and air now existing in favor of the demised premises shall not be interfered with or interrupted by any act or assent of the Lessor during the term of this Lease.

**ASSIGNMENT**  FOURTH: That the Lessee will not assign this Lease without the written consent of the Lessor, except such assignment be to a corporation then owned or controlled by the Lessee or by General Motors Corporation. The Lessor agrees that such consent will not be unreasonably withheld.

**NEGATIVE COVENANTS**  FIFTH: That the Lessee will not consent to any use of the demised premises which shall be contrary to any valid law of the State or to any valid ordinance or bylaw of the Municipality for the time being in force.

**COVENANTS BY LESSOR**  SIXTH: That the Lessor covenants and agrees that the possession of the demised premises will be delivered to the Lessee upon the commencement of the term of this Lease in as good condition ~~as the same now are, or as required to be altered pursuant to the provisions of paragraph sixteenth,~~ free from all tenancies and occupancies, and free from all orders and notices and violations filed or entered by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority. If any such orders, notices or violations be filed during the term of this Lease, the Lessor will comply therewith, or will cause such orders, notices or violations to be vacated unless they are occasioned by a use of the premises not authorized herein. In the event of Lessor's failure to comply with such orders, notices, or violations, or to cause such orders, notices or violations to be vacated within a reasonable time after written notice, Lessee may comply therewith and deduct the cost and expense of such compliance from the rent reserved hereunder, ~~or Lessee may cancel this Lease.~~

The Lessor further covenants and agrees that at the commencement of the term the ~~elevator or elevators, the boiler or boilers,~~ air conditioning and heating equipment will all be in good mechanical, operating and insurable condition, acceptable to Lessee's insurance companies, and that the ~~boiler or boilers,~~ air conditioning and heating equipment will be of sufficient capacity to heat and cool the demised premises comfortably. If said equipment is not in the condition specified and Lessor fails to promptly place it in said condition, then Lessee may have the ~~elevator or elevators, boiler or boilers and heating/equipment put in the condition~~ above provided and deduct the cost and expense thereof from any installment or installments of rent thereafter becoming due, ~~or at Lessee's option, Lessee may cancel this Lease upon giving five (5) days' notice in the manner herein provided.~~ In any event, the fact that Lessee does not have said work done shall not render Lessee in any way liable nor relieve Lessor from any liability. The acceptance of possession by Lessee shall not be deemed to be a waiver of any of the aforesaid covenants.

**VIEWING PREMISES**  SEVENTH: That the Lessor may during the term at reasonable times enter to view the premises and may at any time within three (3) months next before the expiration of the said term, show the said premises and building or buildings to others, and affix to any suitable part of the said premises a notice for letting or selling the premises, or building or buildings and keep the same affixed without hindrance or molestation.

**FIRE CLAUSE**  EIGHTH: That if the demised premises shall be so damaged by fire, the elements, casualty, war, insurrection, riot, public disorder, act, authorized or unauthorized, on the part of any governmental authority or any cause or happening as to be substantially destroyed, then this Lease shall cease and come to an end, and any unearned rent paid in advance by the Lessee shall be refunded to it; but in case of only partial damage or destruction of the demised premises or of other portions of the building or buildings containing the demised premises, then said demised premises or other portions of said building or buildings shall be restored promptly by the Lessor to their previous condition and a just proportion of the rent herein reserved, according to the extent to which they have been rendered untenantable, shall abate until the said premises shall have been so restored and put in proper condition for use and occupancy, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. If Lessor shall for any reason fail to restore the premises or other portions of said building or buildings within a reasonable time, Lessee may cancel and terminate this Lease upon giving fifteen (15) days' notice in the manner herein provided and be relieved of all liability hereunder arising subsequent to the aforesaid damage to the said premises or other portions of said building or buildings and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. In the event that the building or buildings containing the demised premises shall become unsafe, said building or buildings shall be repaired and restored forthwith by the Lessor, and a just proportion of the rent hereinbefore reserved shall abate until said building or buildings shall have been put in safe and proper condition for use and occupancy, and any unearned rent paid in advance by the Lessee shall be refunded to it,

**UNSAFE BUILDING CLAUSE**  and if the Lessor fails for any reason to restore the premises forthwith to safe and proper condition for use and occupancy, Lessee may at its option cancel this Lease upon giving ten (10) days' notice in the manner herein provided. If any authority having jurisdiction shall decide that the said building or buildings should be demolished and removed, then forthwith upon such decision being made and upon the Lessee vacating the premises, this Lease shall cease and come to an end and any unearned rent paid in advance by the Lessee shall be refunded to it.

**UNLAWFUL OCCUPATION**  NINTH: That the Lessor represents that the premises may be used for the purposes for which they are hereby leased and in the event the enactment or existence of any law, ordinance, rule, ruling or regulation prohibiting the use of said premises for any one or more of the purposes for which they are hereby leased then in that event at the option of the Lessee, this Lease shall terminate and all liability hereunder shall cease from and after the date such prohibition becomes effective, and any unearned rent paid in advance by the Lessee shall be refunded to it.

**\*replacement of such equipment determined to be beyond repair.**

RIDER ATTACHED TO AND MADE A PART OF LEASE AGREEMENT DATED
DECEMBER 7, 1971, BETWEEN JASON ASSOCIATES, A JOINT VENTURE,
AS LESSOR, AND GENERAL MOTORS CORPORATION, A DELAWARE
CORPORATION, AS LESSEE

TWENTY-FOURTH:  That the Lessee will pay all
utility charges for electricity, water, and the like used
by the Lessee during its occupancy.

TWENTY-FIFTH:  Lessee agrees to reimburse Lessor
for all real estate taxes levied or assessed on the leased
premises for any period included in the term of this Lease,
or any renewal, upon submission by Lessor to Lessee of
satisfactory evidence of each such payment.  If the payment
of any real estate taxes covers a period extending beyond
the term of this Lease, or any renewal thereof, such taxes
shall be prorated.  Such real estate taxes shall not include
assessments for local improvements, which shall be paid by
Lessor.

TWENTY-SIXTH:  That Lessor agrees to complete the
construction of the demised premises on or before January 1,
1972, subject, however, to delays occasioned by reason of
strikes, inability to obtain labor or materials, acts of
God or the elements, or other cause beyond the control and
without the fault of Lessor, in which event the time for
completion of the demised premises shall be extended for
such reasonable time as same shall have been delayed by
such causes; provided, however, in the event that said
demised premises have not been completed by February 1,
1972, then Lessee at its option may terminate this Lease
upon ten days written notice to the Lessor.

TWENTY-SEVENTH:  Lessee may at its option extend
the term of this Lease for four (4) separate but successive
periods of five (5) years each upon all the same terms and
conditions as presently exist, including rental, by pro-
viding Lessor with at least six (6) months prior written
notice to the expiration of the then current term.

PAGE ONE OF RIDER

**RIGHTS UPON DEFAULT**

TENTH: 7‾ if the Lessee shall neglect or fail to ‚ orm or observe any of the covenants contained herein on its part to be observed and performed for thirty (30) days after written notice by the Lessor, or if the Lessee shall be adjudicated bankrupt or insolvent according to law, or shall make an assignment for the benefit of creditors, then and in any of said cases the Lessor may lawfully enter into and upon the said premises or any part thereof in the name of the whole, and repossess the same as of the former estate of the Lessor and expel the Lessee and those claiming under and through it and remove its effects (forcibly if necessary), without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant and upon entry as aforesaid this Lease shall terminate and the Lessee covenants that in case of such termination it will indemnify the Lessor against all unavoidable loss of rent which the Lessor may incur by reason of such termination during the residue of the term above specified.

**TERMINATION**

**HOLD OVER**

ELEVENTH: That notwithstanding any provision of law or any judicial decision to the contrary, (a) no notice shall be required to terminate the term of this Lease on the date herein specified and the term hereof shall expire on the date herein mentioned without notice being required from either party; (b) in the event that the Lessee, any assignee or sublessee remains beyond the expiration date of the term herein, it is the intention of the parties and it is hereby agreed that a tenancy from month to month shall arise.

**QUIET POSSESSION**

TWELFTH: Lessor herein represents that it is the fee owner of the premises hereby leased and hereby covenants that Lessee on paying the rent and performing all and singular the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the demised premises for the term aforesaid, and for the term of any renewal or renewals hereof, free from molestation, eviction or destruction by the Lessor, or by any other person or persons lawfully claiming the same, and that the Lessor has good right to make this Lease for the full term hereby granted, including the period for which the Lessee has the right to effect a renewal hereof. Should Lessee be dispossessed from the premises by reason of a superior title, the payment of rent shall cease from and after the date of such dispossession and all rent that may have been prepaid for any period of time Lessee is deprived of its peaceful possession by reason of said dispossession, shall be returned to Lessee forthwith, but the Lessor shall not thereby be relieved of liability to the Lessee for damages sustained by Lessee due to such dispossession. Lessor further agrees that in the event the premises are sold during the term of this Lease or any extension thereof, a certified copy of the Deed of Conveyance or an executed copy of the Assignment of this Lease shall be furnished to Lessee, it being understood that the consideration for such conveyance may be deleted from such instruments.

**SERVICES BY LESSOR**

THIRTEENTH: That the Lessor shall for the rent reserved furnish electric current for all purposes required by the Lessee, janitor service, water and elevator service during ordinary business hours, sufficient heat and air conditioning whenever necessary to make the demised premises comfortable for occupancy, window and glass partition washing at regular intervals, toilet facilities, and fluorescent tubes or electric bulbs for lamps for lighting the demised premises, and the Lessor shall renew all such lamps, fluorescent tubes or bulbs when necessary. Lessor covenants and agrees that the lighting fixtures in the office portion of the demised premises shall be of sufficient capacity at all times to produce not less than 80 foot candles lighting at desk level.

**EXTENSION**

FOURTEENTH: That the Lessee may, at its option, obtain an extension of the term of this Lease, for a further term of......................................................so as to expire.................................... and upon like terms and conditions, by giving to the Lessor written notice of its intention to extend on or before.........................................

**CANCELLATION**

FIFTEENTH: That the Lessee may cancel this Lease effective......................................................, 19........, or at any time thereafter by giving Lessor.................................................................days' written notice prior to such cancellation.

**ALTERATIONS BY LESSOR**

SIXTEENTH: That the Lessor, at the Lessor's own expense, shall make the alterations, changes, repairs, replacements, and improvements, as hereinafter set forth, and shall fully complete the same, in a good workmanlike manner and shall have the demised premises ready for lawful occupancy by the Lessee in the condition herein provided on or before............................................, 19............ In the event said work is not completed as above provided, the Lessee may, at its option, (a) enter and complete said work and deduct the cost and expense thereof from the rent reserved hereunder, or (b) cancel this Lease. In no event, however, shall rent accrue until the above alterations, changes and improvements have been completed and the demised premises have been made ready for lawful occupancy by the Lessee as herein provided.

**ALTERATIONS BY LESSEE**

SEVENTEENTH: That with the prior written consent of Lessor, which shall not be unreasonably withheld, the Lessee shall have the right at any time during the term or any extension thereof, at its own expense, to make alterations, changes, improvements and remodeling to the demised premises, inside or outside, provided the same shall be in conformity with the Building Laws of the Municipality, County and State, and the Lessor covenants and agrees upon demand at any time after the execution of this Lease to obtain and deliver to the Lessee all permits, consents and other instruments, which may be necessary or required by any public or quasi-public authority, permitting and authorizing such alterations, changes, improvements and remodeling. In case of said alterations, changes, improvements and remodeling, the Lessee shall not be required upon the termination of the Lease or any extension thereof to restore the premises to their original condition.

**FIXTURES AND SO FORTH**

EIGHTEENTH: That all machinery, movable partitions, fixtures, floor covering or equipment installed in the demised premises at the Lessee's expense shall remain the property of the Lessee and may be removed by the Lessee. The Lessee shall, however, repair any damage caused directly and exclusively by said removal.

**SIGNS AND SO FORTH**

NINETEENTH: That the Lessee shall have the right to install or place signs or posters anywhere on or about the demised premises and upon removal of said signs and posters at the termination of this Lease shall repair any damage caused by such installation and removal.

**CONDEM-
NATION**

TWENTIETH: That in the event the premises or any part thereof are taken or condemned for a temporary or permanent public or quasi-public use, Lessee may at its option terminate this Lease and in such event any unearned rent paid in advance shall be returned to Lessee, but nothing herein contained shall prevent Lessee from recovering from the condemning authority any damages sustained by Lessee due to such taking.

**MORTGAGE
SUBORDINA-
TION**

TWENTY-FIRST: That this Lease shall be subject and subordinate to the lien of any mortgages hereafter placed on the premises and Lessee agrees to execute and deliver upon demand, in confirmation of such subordination, such further instruments as shall be required by any mortgages or proposed mortgagees. Provided, that if and when such mortgage or mortgages are placed, the mortgagee shall agree for itself and for every subsequent holder or owner of the mortgage and for any receiver or purchaser of the premises in the event of foreclosure, Lessee's quiet possession of the premises will not be disturbed on account of said mortgage or by reason of anything done thereunder so long as Lessee pays the rent and keeps the other covenants on its part to be performed. Lessor agrees that in the event a mortgage is placed on the demised premises and a collateral assignment is given as security for the loan, Lessee will be furnished with a copy of such collateral assignment.

**WAIVER
OF
SUBROGATION**

TWENTY-SECOND: The Lessor and the Lessee waive all rights, each against the other, for damages caused by fire or other perils covered by insurance where such damages are sustained in connection with the occupancy of the leased premises.

**NOTICES**

TWENTY-THIRD: That all notices to be given hereunder by either party shall be in writing and given by personal delivery to the Lessor or to one of the executive officers of the Lessee or shall be sent by registered mail addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government. Provided, however, that it is mutually agreed that the Lessee appoints **the Manager, the Executive in Charge of Real Estate** and the Assistant Secretary (Secretaries) of Argonaut Realty Division, General Motors Corporation, Argonaut Building, 485 West Milwaukee Avenue, Detroit, Michigan 48202, as its agents, and that any one of them may give all notices and receive all notices to be given hereunder, and may pay the rent, and notices shall be sent to any one of said agents and not otherwise. The right is hereby reserved by the Lessee to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Lessee to the Lessor. **SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF FOR ADDITIONAL CLAUSES.** The covenants and agreements contained in the foregoing Lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

**In Witness Whereof,** Lessor has signed and sealed this instrument this 11th day of December A.D. 19 71, and Lessee has signed and sealed this instrument this _____ day of _____ A.D. 19 .

In the presence of:

JASON ASSOCIATES

BY _____
VANCE HOBBS

BY _____
J. O. LE BLANC, JR.

In the presence of:

GENERAL MOTORS CORPORATION

BY _____
R. W. Decker
**Vice President**

ATTEST _____

**Assistant Secretary**

EXECUTION RECOMMENDED
ARGONAUT REALTY DIVISION
BY _____

FORM APPROVED
(ROGER MALONE)
GENERAL COUNSEL

THIS INSTRUMENT PREPARED BY:

3044 West Grand Boulevard
Detroit, Michigan 48202

AGREEMENT, made this 20th day of January, A.D. 1972, between JASON ASSOCIATES, a joint venture, with principal offices at 1714 Commerce Building, Fort Worth, Texas 76102, hereinafter called the Lessor, and GENERAL MOTORS CORPORATION, a Delaware Corporation, with its principal office at 3044 West Grand Boulevard, Detroit, Michigan 48202, hereinafter called the Lessee,

## W I T N E S S E T H:

That the Lease Agreement dated December 7, 1971, between the parties hereto, covering:

> The North 215 feet of Lot 1, Block 4, Montbello No. 2, except the East 8.5 feet thereof; and the South 385 feet of Lot 2, Block 1, Montbello No. 21, except the East 17 feet thereof; all in the City and County of Denver, State of Colorado,

for a term commencing January 1, 1972, and expiring December 31, 1982, is hereby amended in the following respect:

The term of the Lease is for a period of ten (10) years commencing January 1, 1972 and expiring December 31, 1981.

As hereby amended, said Lease dated December 7, 1971

is in all respects ratified and confirmed.

WITNESS the signature and seal of Lessor this X 31st day of January, A.D. 1972, and the signature and seal of Lessee this 10th day of February, A.D. 1972.

In the presence of:

_Floyd Scott_

_____

In the presence of:

_Barbara Wheelock_
Barbara Wheelock

_E. J. Hill_
E. J. Hill

JASON ASSOCIATES

BY _____
VANCE HOBBS

BY _____
J. O. LE BLANC, JR.


GENERAL MOTORS CORPORATION

BY _____
R. W. Decker
Vice President

ATTEST _____
K. C. MacDonald
Assistant Secretary

FORM APPROVED
ROSS L. MALONE,
GENERAL COUNSEL

AGREEMENT, made this 1st day of July, A.D. 1975, between JASON ASSOCIATES, a Joint Venture, with principal offices at 1714 Commerce Building, Fort Worth, Texas 76102, as Lessor, and GENERAL MOTORS CORPORATION, a Delaware Corporation, with its principal office at 3044 West Grand Boulevard, Detroit, Michigan 48202, as Lessee,

W I T N E S S E T H:

That the Lease Agreement dated December 7, 1971, between the parties hereto, covering:

> A warehouse and office building comprising approximately 55,500 square feet of space and the land described as the North 215 feet of Lot 1, Block 4, Montbello No. 2, except the East 8.5 feet thereof; and the South 385 feet of Lot 2, Block 1, Montbello No. 21, except the East 17 feet thereof; all in the City and County of Denver, State of Colorado;

for a term commencing January 1, 1972, and expiring, as amended, December 31, 1981, is hereby amended in the following respects:

1. Lessor hereby grants to Lessee consent to Lessee's building and site alterations necessitated by the partial occupancy of the premises by Lessee's General Motors Proving Ground Division. Lessor acknowledges that he has reviewed and approved two sets of general plans dated March 11, 1975, Sheets A2, A3, A6, A8, and Site Plan dated May 20, 1975, Sheet P1, and specifications

dated March 11, 1975, entitled "Denver Emission Lab" consisting of three sheets.

2.    Lessor agrees to execute and date all pages of the aforesaid plans and specifications, returning to Lessee one fully executed set and retaining one set for Lessor's files.  It is understood and agreed that the aforesaid plans may be revised and Lessee agrees to furnish to Lessor any revisions for approval, including the final plans and specifications as completed by Lessee.

3.    Lessee agrees that Lessor's approval of the improvements and alterations to be made by Lessee on the premises is subject to the following conditions and further, that these conditions shall remain in effect only so long as Lessee's General Motors Proving Ground Division occupies the premises. is also understood that these conditions are limited to the building and site alterations and equipment installations being made by Lessee's General Motors Proving Ground Division.  The conditions are as follows:

(a)    That Lessee shall at its cost and expense make all building and site modifications and equipment installations;

(b)    That Lessee shall be totally responsible for all maintenance, repair and replacement

-2-

of all its building and site modifications and equipment installations. Lessee hereby relieves Lessor of its maintenance responsibility for that portion of the existing zone office parking lot and all of the driveway access used by Lessee's truck traffic;

(c) That Lessee, upon vacation of the premises at the end of the present Lease term or extensions thereof, must restore the premises to their present condition, making that portion of the warehouse area occupied suitable for general warehousing purposes. The Lessor is to have an option to have a less amount of restoration done should Lessor desire to retain some of the changes made by Lessee provided it is mutually agreeable with the Lessee;

(d) That Lessee shall be responsible for the maintenance or replacement of one existing fresh air make-up unit, roof flashings at new rooftop equipment and new intake and exhaust ducts and flashings. All such items to be identified on final as built drawings;

(e)  That Lessee shall reimburse Lessor for any
increase in Lessor's fire and extended
coverage or liability insurance premiums
which is due and results from Lessee's
General Motors Proving Ground Division's
use of the premises;

(f)  That Lessee will obtain approval from all
necessary municipal and subdivision author-
ities regarding its use and occupancy of
the premises, and a copy of such authority
will be furnished Lessor.

Wherever the term Lessee is used in connection with
the above stated conditions, it is agreed and understood by the
parties that Lessee's General Motors Proving Ground Division may
perform and be responsible for performance of the above stated
conditions, but it is further agreed that General Motors
Corporation will guarantee such performance.

As heretofore and as hereby amended, said Lease dated
December 7, 1971, is in all respects ratified and confirmed,
including rental at the rate of $78,000.00 per year.

WITNESS the signature and seal of the Lessor this

-4-

_28th_ day of _July_ , A.D. 1975, and the signature and

seal of Lessee this _11th_ day of _August_ , A.D. 1975.

In the presence of:                                    JASON ASSOCIATES

_____                 BY _____ L.S.
                                             VANCE HOBBS
_____                 BY _____ L.S.
                                             J. O. LE BLANC, JR.


In the presence of:                     GENERAL MOTORS CORPORATION

_____                 BY _____
V. F. Edmond                                 R. L. Kessler    Vice President

_____                 ATTEST _____
L. M. Wojowodzic                                      Assistant Secretary

<u>SECOND AMENDMENT TO LEASE</u>

THIS AMENDMENT, made as of January 1, 1980, by and
between MONTBELLO TRICONTINENTAL PROPERTY COMPANY, N.V., a
Netherlands Antilles corporation ("Lessor"), and GENERAL
MOTORS CORPORATION, a Delaware corporation ("Lessee") with
its principal office at 3044 West Grand Boulevard, Detroit,
Michigan 48202,

WITNESSETH: THAT

WHEREAS, Jason Associates and Lessee entered into a
lease (the "Lease") dated December 7, 1971, regarding the
following property (the "Premises"):

> The North 215 feet of Lot 1, Block 4, Montbello
> No. 2, except the East 8.5 feet thereof; and the
> South 385 feet of Lot 2, Block 1, Montbello No. 1,
> except the East 17 feet thereof; all in the City
> and County of Denver, State of Colorado;

WHEREAS, the Lease was amended by Amendment dated
July 1, 1975 (the "First Amendment"); and

WHEREAS, the right, title and interest of Jason Associates
in and under the Lease, as so amended, was assigned to
Lessor, as of May 1, 1976; and

WHEREAS, Lessee desires to make certain additions,
alterations and improvements to the Premises; and

WHEREAS, Lessor and Lessee desire to convert the Lease
into a complete "triple net" lease, whereby the Lessee will
be totally responsible for all maintenance, repair, and
replacement of the Premises, and all buildings thereon, all
real estate and other taxes and assessments on the Premises,
and all buildings thereon, and all insurance on the Premises,
and all buildings thereon; and

WHEREAS, Lessor and Lessee desire to amend the Lease in
certain additional respects; and

WHEREAS, this instrument constitutes the Second Amendment to the Lease;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree that the Lease shall be amended as follows:

1.    Additions, Alterations and Improvements

(a)    Lessor hereby consents to the construction by Lessee of the following additions, alterations and improvements at and to the Premises, provided that Lessee complies with the provisions of this Paragraph 1:

(i)    Construction of equipment room of approximately 1,600 square feet at the northwest corner of the Premises.

(ii)    Replacement of the existing heating, ventilation and air conditioning system for the test area and garage roof area, and insulation of the interior walls and ceiling of the test area to allow humidity control.

(iii)    Additional parking lot paving, lighting and fencing.

(b)    Lessee shall submit complete plans and specifications for the aforesaid alterations, additions and improvements to Lessor.  Lessor may thereupon cause such plans and specifications to be reviewed by an architect or engineer (or both), selected by Lessor, at Lessor's expense.  If such architect or engineer determines that completion of the aforesaid additions, alterations and improvements pursuant to such plans and specifications will materially impair the multi-use character of the improvements at the Premises, or the structural viability of said improvements, or otherwise reasonably withholds approval of such plans and specifications, Lessee shall incorporate therein such changes, amendments or modifications

as may be required by such architect or engineer; provided, however, that if Lessor has not notified Lessee of such changes, amendments or modifications within 14 days after Lessor's receipt of the aforesaid plans and specifications, Lessor's architect or engineer shall be deemed to have approved the same.  Construction of the aforesaid additions, alterations and improvements shall not commence before approval of such plans and specifications by Lessor's architect or engineer.

(c)  All proposed material changes in such plans and specifications shall be submitted for review and approval by Lessor's architect or engineer in the manner described in Subparagraph (b).  Except for changes which are so approved, construction of the aforesaid additions, alterations and improvements shall be completed by Lessee without material deviation from the plans and specifications approved by Lessor's architect or engineer pursuant to Subparagraph (b).

(d)  Lessee shall pay the full cost of completion of such additions, alterations and improvements in accordance with the aforesaid plans and specifications, and shall pay all amounts due to persons or entities supplying labor or materials in connection therewith.

(e)  Lessee shall obtain all permits and authorizations required by any law, ordinance, rule or regulation of any governmental or quasi-governmental entity in connection with construction of the aforesaid alterations, additions and improvements.  Lessor shall cooperate with Lessee in seeking to obtain such permits and authorizations, provided that Lessor shall incur no cost or expense in connection therewith. Lessee shall furnish to Lessor a copy of each such permit and authorization no later than 10 days after issuance thereof.

(f)  Lessee shall maintain a policy or policies of builder's risk insurance with respect to such construction issued by a carrier and in a form and amount approved by Lessor, which approval shall not be unreasonably withheld. Lessee shall deliver to Lessor a certificate of insurance for the foregoing before commencement of such construction.

(g)  Upon expiration of the term of the Lease (including all extensions thereof), Lessee shall restore the premises to their condition as of the date of the First Amendment to the Lease, and shall render that portion of the Premises occupied as a warehouse suitable for general warehousing purposes.  Notwithstanding the foregoing, at Lessor's election, and in Lessor's sole discretion, Lessor may retain any or all of the additions, alterations and improvements constructed by Lessee, and in such event Lessee shall so restore the premises only to the extent directed by Lessor.  The additions, alterations and improvements which Lessor elects to retain shall become the property of Lessor without payment of any compensation whatsoever.

2.  <u>Rental</u>

(a)  Lessee shall pay to Lessor as additional rental, contemporaneously with execution of this Second Amendment To Lease, the sum of $17,500.00.

(b)  If Lessee exercises any of its options to extend the term of the Lease pursuant to paragraph Twenty-Seventh thereof, then the rental payable with respect to each such period of extension shall be as follows:

(i)  January 1, 1982, through December 31, 1986: $90,000 per year, payable in monthly installments of $7,500.00;

(ii)  January 1, 1987, through December 31, 1991: $95,000.00 per year, payable in monthly installments of $7,916.67;

(iii)  January 1, 1992, through December 31, 1996:
$100,000.00 per year, payable in monthly installments
of $8,333.33;

(iv)  January 1, 1997, through December 31, 2001:
$105,000.00 per year, payable in monthly installments
of $8,750.00.

3.  Taxes and Assessments

(a)  Lessee shall pay, as additional rental for the
Premises, all taxes and assessments, whether general, local
or special, whether ordinary or extraordinary, of every kind
and nature whatsoever, levied, assessed or imposed upon the
Premises or any part thereof or upon any building or improvement
at any time situated thereon, and accruing with respect to
that portion of the term of the Lease beginning on the
effective date of this Amendment.

(b)  Lessee shall pay in full each item referred to in
subparagraph (a) on or before the date such item becomes due
pursuant to the bill rendered therefor and shall furnish
evidence of payment thereof to Lessor no later than 30 days
after such payment.

(c)  The Lessor shall, at its option, have the right at
all times during the term of the Lease (including all extensions
thereof) to pay any taxes, assessments, or other charges or
impositions upon the Premises or any interest therein, or
any other charge, tax or imposition herein required to be
paid by the Lessee remaining unpaid after the same shall
have been delinquent, and to pay, cancel and clear off all
tax sales, liens, charges and claims upon or against said
Premises and to redeem said premises from the same or any of
them from time to time, and the amounts so paid, including
reasonable expenses, shall be so much additional rent due
from the Lessee to the Lessor at the next rent day after any
such payment, with interest at the rate of fifteen per cent

(15%) per annum from the date of payment thereof by the
Lessor until the repayment thereof to the Lessor by the
Lessee.

4. Insurance and Indemnification

(a)  Lessee shall purchase and maintain policies of
insurance against loss or damage to the Premises, and the
buildings and improvements thereon, due to fire, windstorm,
vandalism, malicious mischief or other casualty, including
coverage of the type commonly known as "extended coverage",
in an amount not less than the full replacement value thereof
from time to time.  Such policies shall be issued by a
carrier and shall be in a form and amount approved by Lessor,
which approval shall not be unreasonably withheld, and shall
be carried in the names of Lessor and Lessee and shall be
payable to Lessor and Lessee as their respective interests
may appear.  Such policies shall further include such clauses
covering Lessor's mortgagee as Lessor may request.

(b)  Lessee shall purchase and maintain policies of
general public liability insurance protecting Lessor and
Lessee from and against claims and causes of action for
personal injury or property damage on or about the Premises.
Such insurance shall be issued by a carrier and shall be in
form approved by Lessor, which approval shall not be unreasonably
withheld, and the limits of coverage thereunder shall be not
less than $1,000,000 per occurrence for personal injury and
$100,000 for property damage.

(c)  Lessee shall purchase and maintain for the benefit
of Lessor a policy or policies of rental interruption insurance
in an amount equal to the annual rental payable pursuant to
the Lease, as amended, such amount to be increased at such
time that the amount of such rental is increased.  Such
insurance shall be issued by a carrier and shall be in a
form approved by Lessor, which approval shall not be unreasonably
withheld.

-6-

(d)  Lessee shall indemnify and hold harmless Lessor
and its officers, agents and employees and its and their
successors and assigns from and against any and all claims,
causes of action, liabilities and damages, including costs
and attorneys' fees, asserted against Lessor and in any way
relating or pertaining to the Premises or the use thereof by
Lessee, whether for personal injury, property damage or
otherwise.  The preceding sentence shall not be deemed to
effect any right of subrogation in any issuer of any policy
of insurance.

(e)  The Lessee shall furnish Lessor, and, where appropriate,
Lessor's mortgagee, with a duplicate certificate or certificates
of such insurance policy or policies required to be purchased
and maintained by Lessee hereunder stating therein the
number of each such policy and the date of expiration of
each such policy, and shall from time to time, whenever
requested by Lessor, satisfy the Lessor that such policy or
policies is or are in full force and effect.  The Lessee
shall, furthermore, deliver to Lessor, and; where appropriate,
Lessor's mortgagee, certificates evidencing the renewal of
all such policies at least thirty (30) days prior to their
respective expiration dates.

(f)  In case Lessee shall at any time fail, neglect or
refuse to insure such buildings and improvements and to keep
the same insured as hereinbefore provided, then Lessor may,
at its election, procure or renew such insurance, and any
amounts paid therefor by the Lessor shall be so much additional
rental due from the Lessee to the Lessor at the next rent
day after any such payment, with interest at the rate of
fifteen per cent (15%) per annum from the date of payment
thereof by the Lessor until the repayment thereof to the
Lessor by the Lessee.

-7-

5.   Maintenance, Repair and Restoration

(a)   Lessee shall maintain the entire Premises and all buildings and improvements thereon and all components thereof, including, without limiting the generality thereof, the roof and the exterior of all buildings, all structural components thereof, and all systems, fixtures and equipment thereat, in good condition, order, and repair, and shall make such repair, replacement, and/or restoration, including, without limiting the generality thereof, all structural repairs, as may be required to repair any and all damage thereto, regardless of the cause or extent thereof.   In no event shall the Lease be terminable, nor shall any rental reserved hereunder abate, on account of any such damage.

(b)   Lessor shall cause the premises to be at all times in compliance with all applicable laws, ordinances, rules and regulations of all governmental and quasi-governmental entities having jurisdiction thereof and will make such additions, alterations and repairs as may be required thereby.


6.   Effect of Amendment

(a)   This Second Amendment shall be effective as of January 1, 1980.

(b)   This Amendment shall supersede all provisions of the Lease and the First Amendment thereto to the extent inconsistent herewith.   To the extent not so superseded, the Lease and First Amendment thereto shall be and remain in full force and effect.


7.   Counterparts

This Second Amendment may be executed in several counter-parts, and all so executed shall constitute one Second Amendment binding on all the parties hereto and notwithstanding that all the parties are not signatories to the original or the same counterparts.

IN WITNESS WHEREOF, Lessor ~~has~~ *and lessee have* signed and sealed this

~~instrument~~ as of the day and year first above written. *Second Amendment To Lease*

In the presence of:

MONTBELLO TRICONTINENTAL
PROPERTY COMPANY, N.V.

By_____

Attest_____

In the presence of:

GENERAL MOTORS CORPORATION

_____
D. J. FOURNIER

By_____

_____
S. ROSE

Attest_____

## THIRD AMENDMENT TO LEASE

THIS AMENDMENT, made as of March 1, 1980, by and between MONTBELLO TRICONTINENTAL PROPERTY COMPANY, N.V., a Netherlands Antilles corporation ("Lessor"), and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee") with its principal office at 3044 West Grand Boulevard, Detroit, Michigan 48202,

WITNESSETH: THAT

WHEREAS, Jason Associates and Lessee entered into a lease (the "Lease") dated December 7, 1971, regarding the following property (the "Premises"):

The North 215 feet of Lot 1, Block 4, Montbello No. 2, except the East 8.5 feet thereof; and the South 385 feet of Lot 2, Block 1, Montbello No. 1, except the East 17 feet thereof; all in the City and County of Denver, State of Colorado;

WHEREAS, the Lease was amended by Amendment dated July 1, 1975 (the "First Amendment") and by Second Amendment to Lease dated as of January 1, 1980 (the "Second Amendment"); and

WHEREAS, the right, title and interest of Jason Associates in and under the Lease, as so amended, was assigned to Lessor, as of May 1, 1976; and

WHEREAS, the Lease, as amended by the First Amendment and the Second Amendment, provides under certain circumstances for the abatement of rent and for the termination of the Lessee's obligation to pay rent to the Lessor; and

WHEREAS, Section 4(c) of the Second Amendment imposes an obligation upon the Lessee to purchase and maintain for the benefit of the Lessor a policy of rental interruption insurance; and

WHEREAS, the Lessor and Lessee desire to amend the Lease as amended by the First Amendment and the Second Amendment in certain respects;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree that the Lease shall be amended as follows:

1. No Rental Interruption Insurance

The Lessor and Lessee hereby agree that the Lessee is under no obligation to purchase and maintain for the benefit of the Lessor a policy of rental interruption insurance.  Lessor and Lessee hereby further agree that Section 4(c) of the Second Amendment shall and hereby is deleted.

2. No Abatement of Rent and No Termination of Lease

The Lessor and Lessee hereby agree that under no circumstances shall there be any abatement of rent due the Lessor from the Lessee during the term of the Lease, as extended from time to time, and the Lessor and the Lessee hereby further agree that under no circumstances shall the obligation of the Lessee to pay rent to the Lessor be terminated during the term of the Lease, as extended from time to time.  Finally, the Lessor and Lessee hereby agree that the Lessee shall under no circumstances have the right to terminate the Lease, as amended, prior to December 31, 1981, the date of expiration of the initial Lease term, or prior to:

    (i)    December 31, 1986, if the first five (5) year extension in Lease term is exercised by Lessee,

    (ii)   December 31, 1991, if the second five (5) year extension in Lease term is exercised by Lessee,

    (iii)  December 31, 1996, if the third five (5) year extension in Lease term is exercised by Lessee, or

    (iv)   December 31, 2001, if the fourth and final five (5) year extension in Lease term is exercised by Lessee.

3.    <u>Miscellaneous</u>

(a)    This Third Amendment shall be effective as of March 1, 1980.

(b)    This Third Amendment shall supercede all provisions of the Lease, as amended by the First Amendment and the Second Amendment thereto, to the extent inconsistent herewith. To the extent not so superceded the Lease, as amended by the First Amendment and Second Amendment thereto, shall be and remain in full force and effect.

(c)    This Third Amendment may be executed in several counterparts, and all so executed shall constitute one Third Amendment binding on all the parties hereto and notwithstanding that all the parties are not signatories to the original or the same counterparts.

IN WITNESS WHEREOF, Lessor and Lessee have signed and sealed this Third Amendment To Lease as of the day and year first above written.


In the presence of:                      MONTBELLO TRICONTINENTAL
                                         PROPERTY COMPANY, N.V.

_____                  By_____

                                         Attest_____


In the presence of:                      GENERAL MOTORS CORPORATION

_____                  By_____
S. ROSE                                    A. C. MAIR  VICE PRESIDENT

_____                  Attest_____
V. D. Register                             MARGUERITE ROMZICK
                                           ASSISTANT SECRETARY

## FOURTH AMENDMENT TO LEASE.

THIS FOURTH AMENDMENT TO LEASE (the "Amendment"), made as of April 1, 1994, by and between MONTBELLO, INC., a Colorado corporation ("Lessor"), and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee"),

### WITNESSETH: THAT

WHEREAS, Jason Associates and Lessee entered into a lease (the "Lease") dated December 7, 1971, regarding the following property (the "Premises"):

The North 215 feet of Lot 1, Block 4, Montbello No. 2, except the East 8.5 feet thereof; and the South 385 feet of Lot 2, Block 1, Montbello No. 1, except the East 17 feet thereof; all in the City and County of Denver, State of Colorado;

WHEREAS, the Lease was amended by that certain Amendment dated January 20, 1972 (the "1972 Amendment"), that certain Amendment dated July 1, 1975 (the "First Amendment"), that certain Second Amendment to Lease dated January 1, 1980 (the "Second Amendment") and that certain Third Amendment to Lease dated March 1, 1980 (the "Third Amendment," and collectively with the Second Amendment, the First Amendment, the 1972 Amendment and this Amendment, the "Lease Amendments"); and

WHEREAS, all right, title and interest of Jason Associates in and under the Lease, as amended, was assigned to Montbello Tricontinental Property Company, N.V. ("MTPC") as of May 1, 1976, and all right, title and interest of MTPC in and under the Lease, as so amended, was transferred to Lessor as of December 31, 1987; and

WHEREAS, Lessee desires to make certain additions, alterations and improvements to the Premises; and

WHEREAS, Lessor and Lessee desire further to amend the Lease in certain additional respects; and

WHEREAS, this instrument constitutes the Fourth Amendment to the Lease;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree that the Lease shall be further amended as follows:

1.    Additions, Alterations and Improvements to the Premises.

(a)    Lessor hereby consents to the construction by Lessee of the additions, alterations and improvements at and to the Premises described in Exhibit A attached hereto (the "Alterations"), provided that Lessee complies with the provisions of this Paragraph 1.

(b)    Lessee shall submit a complete set of each draft of the plans and specifications for the Alterations (each such draft, the "Plans") to Lessor. Lessor may thereupon cause the Plans to be reviewed by an architect or engineer (or both) selected by Lessor (the "Consultant"). If the Consultant determines that completion of the Alterations pursuant to the Plans will materially impair the character of the Premises, or the structural viability of any improvements to the Premises, or otherwise reasonably withholds approval of the Plans, Lessee shall incorporate therein such changes, amendments or modifications as may be required by the Consultant; provided, however, that if Lessor has not notified Lessee of such changes, amendments or modifications within 30 days after the later of (a) Lessor's most recent receipt of the Plans or (b) the date of this Amendment, the Consultant shall be deemed to have approved the same. Construction of the Alterations shall not commence before approval of the final set of the Plans by the Consultant; although Lessee may proceed with obtaining a "design and build" contract for the Alterations.

(c)    All proposed material changes in the Plans shall be submitted for review and approval by the Consultant in the manner described in Subparagraph (b). Except for changes which are so approved, construction of the Alterations shall be completed by Lessee without material deviation from the Plans approved by the Consultant pursuant to Subparagraph (b).

(d)    Lessee shall pay the full cost of completion of the Alterations in accordance with the Plans, and shall pay all amounts due to persons or entities supplying labor or materials in connection therewith.

(e)    The Alterations shall be installed or otherwise made by a licensed contractor(s) in compliance with all applicable laws and shall be accomplished in a good, workmanlike and lien-free manner conforming in quality and design with the Premises existing as of the date hereof. No hazardous materials, including, but not limited to, asbestos or asbestos-containing materials, shall be used by Lessee or Lessee's contractor(s) in the construction of the Alterations.

2

(f)   Lessee shall obtain all permits and authorizations required by any law, ordinance, rule or regulation of any governmental or quasi-governmental entity in connection with construction of the Alterations. Lessor shall cooperate with Lessee in seeking to obtain such permits and authorizations, provided that Lessor shall incur no cost or expense in connection therewith. Lessee shall furnish to Lessor a copy of each such permit and authorization no later than 10 days after issuance thereof.

(g)   Lessee shall maintain a policy or policies of builder's risk insurance with respect to such construction issued by a carrier and in a form and amount approved by Lessor, which approval shall not be unreasonably withheld. Lessee shall deliver to Lessor a certificate of insurance for the foregoing before commencement of such construction.

(h)   Upon expiration of the term of the Lease (including all extensions thereof), Lessee shall restore the Premises to their condition as of the date of the First Amendment, and shall render that portion of the Premises occupied as a warehouse suitable for general warehousing purposes. Notwithstanding the foregoing, at Lessor's election, and in Lessor's sole discretion, Lessor may retain any or all of the additions, alterations and improvements constructed by Lessee at any time, including, without limitation, the Alterations, and in such event Lessee shall so restore the Premises only to the extent directed by Lessor. The additions, alterations and improvements which Lessor elects to retain shall become the property of Lessor without payment of any compensation whatsoever.

2.   <u>Lessor Expenses in Connection with the Alterations.</u>

Upon its execution hereof, Lessee agrees to promptly pay to Lessor, by check, in respect of Lessor's or Lessor's agents' (i) review of Lessee's request for its consent to the Alterations, (ii) review of the Plans and (iii) preparation of this Amendment, the sum of $16,000.

3.   <u>Environmental Restrictions and Indemnity.</u>

(a)   Lessee shall not cause or allow there to be any violation of "Environmental Laws" (as hereinafter defined) with respect to "Hazardous Materials" (as hereinafter defined) generated, released, stored, buried or deposited in or upon the Premises, or used in connection with Lessee's activities at the Premises. The term "Hazardous Materials" shall mean and include any hazardous or toxic waste, substance or material defined as such in or for purposes of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 USC Section

3

9601, et. seq.) the Hazardous Materials Transportation Act of 1980 (49 USC Section 1802, et. seq.) and the Resource Conservation and Recovery Act (42 USC Section 6901, et. seq.) or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree or other governmental restrictions or requirements relating to matters of environmental protection, pollution, health, safety, sanitation or conservation, or regulating or imposing liability or standards of conduct concerning any hazardous or toxic waste, substance or material as now or at any time hereafter in effect, and shall, without limiting the foregoing, specifically include asbestos, petroleum and petroleum products including crude oil and any fraction thereof (collectively, "Environmental Laws"). Lessee shall comply with, and require all others on the Premises to comply with, the Environmental Laws, and shall advise Lessor in writing as soon as Lessee becomes aware of any condition or circumstance which makes any of the Lessee's covenants, representations or warranties contained herein incomplete or inaccurate. Without limitation of any other indemnification contained in the Lease, as amended by the Lease Amendments, Lessee shall indemnify, hold harmless and defend Lessor, Jason Associates, MTPC, their partners, shareholders and affiliates and any current, future or former officer, director, employee, agent or beneficiary of Lessor, Jason Associates or MTPC from any and all claims, losses, damages, response costs, cleanup costs and expenses arising out of or in any way relating to any breach of the representations, warranties, covenants and agreements set forth in this Paragraph, including, but not limited to: (a) claims of third parties (including governmental agencies) for damages, penalties, response costs, cleanup costs, injunctive or other relief; (b) costs and expenses of remediation, removal and restoration, including, without limitation, fees of attorneys and experts, and costs of reporting the existence of Hazardous Materials to any governmental agency; and (c) any and all expenses or obligations incurred at, before and after any trial or appeal therefrom whether or not taxable as costs, including, without limitation, attorneys' fees, witness fees, deposition costs, copying and telephone charges and other expenses, all of which shall be paid by Lessee. The provisions contained in this Paragraph (and Paragraph 4(d) of the Second Amendment) shall survive the expiration or earlier termination of this Lease.

(b)     Lessee hereby represents and warrants as of the date hereof that there is no violation of any Environmental Law with respect to Hazardous Materials generated, released, stored, buried or deposited in or upon the Premises, or used in connection with Lessee's activities at the Premises.

4

4.    Notice Provisions.

Any notice required or desired to be given under the Lease shall be in writing and shall be addressed as follows:

LESSOR:

Montbello, Inc.
c/o Kishinchand Chelleram (HongKong) Ltd.
South China Building, 15th Floor
1 Wyndham Street
G.P.O. Box 975
Hong Kong
Attn: Mr. R.R. Mehta
Fax: 011-852-845-9253

With a copy to:

Montbello, Inc.
c/o Barack, Ferrazzano, Kirschbaum & Perlman
333 West Wacker Drive, Suite 2700
Chicago, Illinois  60606
Attn: Peter J. Barack, Esq.
Fax:   (312) 984-3150
Tel.:  (312) 984-3100

LESSEE:

General Motors Corporation
c/o Argonaut Realty
485 West Milwaukee Avenue
Detroit, Michigan  48202
Attention:  Director of Real Estate
Fax: (313) 974-7227

With a copy to:

Argonaut Realty
485 West Milwaukee Avenue
Detroit, Michigan  48202
Attention:  Mr. Ed C. Risdon
Fax: (313) 974-7227

Each notice delivered hereunder shall be deemed effective and given (i) upon receipt, if personally delivered (which shall include delivery by courier or overnight delivery service), (ii) upon being telephonically confirmed as transmitted, if sent by telegram, telex or telecopy, (iii) five business days after deposit in the United States mail, certified and postage prepaid, properly addressed to the party to be served, or (iv)

5

upon receipt, if sent any other way. Either party hereto may from time to time, by written notice to the other, designate a different address than that set forth above.

5.    <u>Effect of Amendment</u>.

(a)    This Amendment shall be effective as of the date hereof.

(b)    Except as otherwise provided herein, the Lease, as amended by the Lease Amendments, is in all respects ratified and confirmed and remains in full force and effect. In the event of conflict between the terms of the Lease and any Lease Amendment thereto, the terms of the latest Lease Amendment shall prevail.

6.    <u>Counterpart Execution</u>.

The Amendment and any other amendment to the lease may be executed in any number of counterparts with the same effect as if all parties hereto or thereto had signed the same document. All counterparts shall be construed together and shall constitute one agreement.



6

IN WITNESS WHEREOF, Lessor and Lessee have signed and sealed this Fourth Amendment to Lease as of the day and year first above written.

MONTBELLO, INC.

By: _____

    Name:   Sham L. Chellaram
    Title:   President


Attest:_____

    Name:
    Title:


GENERAL MOTORS CORPORATION


By: _____

    Name:
    Title:


Attest:_____

    Name:
    Title:

IN WITNESS WHEREOF, Lessor and Lessee have signed and sealed this Fourth Amendment to Lease as of the day and year first above written.

MONTBELLO, INC.

By:  _____

    Name:
    Title:


Attest:_____

    Name:
    Title:


GENERAL MOTORS CORPORATION

By:  _____

    Name:        W. J. O'KEEFE
    Title:    Executive Director, Corporate Services

Attest:_____

    Name: *Nelle C. Topiak*
    Title:    Assistant Secretary

EXECUTION RECOMMENDED
ARGONAUT REALTY
BY

BY
R.D.
FORM APPROVED
ATTORNEY

S-1

## I. GENERAL SCOPE

1.  Test Site No. 4 (Running Loss) shall be constructed first.

2.  Existing Test Sites No. 1, 2, & 3 shall remain in operation during the construction phase of Test Site No. 4. Provide appropriate protection as required.

3.  Test Site No. 1 (Cold Test) shall be constructed after Test Site No. 4 is complete and operational.

4.  Existing Test Sites No. 2 & 3 and new Test Site No. 4 shall remain in operation during the construction phase of Test Site No. 1. Provide appropriate protection as required.

5.  Reinforce existing building steel, roof structure, etc. as required to facilitate new construction.

6.  All test cell walls, doors, windows, ceiling, floors, pits, etc. shall be designed to be compatible with the specified Cold Test and Running Loss Test requirements.

7.  Provide an epoxy paint floor finish suitable for Site 1 and 4 testing requirements. Provide all appropriate paint finishes for walls, ceilings, doors, pit and trench cover plates, miscellaneous steel, piping, mechanical and electrical equipment, ductwork, conduits, etc.

8.  At existing room, near column "1-B", provide new suspended ceiling system with all appropriate mechanical and electrical requirements.

9.  Comply with all applicable building codes (UBC, NFPA, OSHA, ADA, etc.). Coordinate and comply with GM Security, I.R.I. requirements, Construction General Conditions (GM 1638), Supplementary General Conditions (GM 1638-S) and the Special Conditions.

10.  See Drawing No. SK-A1 & SK-A2 for cell configurations and additional information.

## II. COLD TEST CHAMBER (SITE 1)

1.  Remove existing masonry cell wall (South side only), suspended ceiling system, grillage steel, etc. as required for construction of new test cell.

2. Remove existing pit and trenches and provide new pit and trenches for 48" roll dynamometer. On a temporary basis, provide support steel in new pit to facilitate installation of existing dynamometer. Dynamometer pit shall be 17'-0" long x 12'-0" wide x 8'-6" deep. Provide required inertia block (11'-0" long x 6'-0" wide) with isolation material. Supply all pit and trench cover support steel and cover plates. Provide ladder access to pit.

3. Provide insulated modular steel panels for walls and ceiling. Panels to be minimum 6 inches thick with tongue and groove edges. Provide all supporting steel as required for hanging of ceiling panels, drivers aid monitor, mechanical and electrical equipment, etc. The clear height inside test cell will be 10'-10" minimum.

4. Pedestrian doors shall be 36" wide x 84" high with all appropriate hardware. Vision panel in doors shall be 4" x 24" insulated safety glass. The cold cell doors will have heating cables in all edges of the door, door frame, and threshold to prevent freezing of the edges. Also provide heat trace at door windows. The heating device shall be thermostatically controlled.

5. Provide insulated vehicle turnover entrance doors. Doors to be electric operated by push buttons on inside and outside of cells. Cold cell doors shall have a thermostatically controlled heating device. Size of doors at Site No. 1 shall be 9'-6" wide x 9'-0" high.

6. Provide insulated window into existing control room. The window will be sealed, multi pane tempered glass units. Cold cell windows shall be heated and thermostatically controlled. Block up none used portions of existing control room windows.

7. Design cold room floor to prevent slab buckling due to extreme temperature variations.

8. Remove and reinstall existing drivers aid monitor system after new panel ceiling has been completed. Modify as required to fit into new cell.

9. Provide a cast in floor track vehicle restraint system at Site No. 1.

10. Provide vehicle transfer system at Site No. 1 to move vehicle sideways from one location to another (all vehicles to be interchangeable with each other).

## III. RUNNING LOSS TEST CHAMBER (SITE 4)

1. Existing North and South masonry cell walls shall remain. Close in wall openings with matching concrete block as indicated on drawing No. SK-A2.

2. Modify existing pit and trenches at Site No. 4 as required to install used dynamometer.

3.  Attach insulated metal panels to existing and new masonry walls. Remove existing 9'-0" high suspended ceiling system and replace with new suspended insulated metal ceiling system at same height as existing. Rework and resupport existing overhead grillage steel, duct work, HVAC equipment, piping, electrical, etc. as required to facilitate new construction.

4.  Pedestrian doors shall be 36" wide x 84" high with all appropriate hardware. Vision panel in doors shall be 4" x 24" insulated safety glass.

5.  Provide insulated rolling steel entrance door. Door to be electric operated by push buttons on inside and outside of cell. Size of door at Site No. 4 shall be 12'-0" wide x 9'-0" high.

6.  Provide insulated window at existing North wall. The window will be sealed, multi pane tempered glass units. Block up existing control room windows.

7.  Remove and re-install existing drivers aid monitor system after new ceiling has been completed. Modify as required to fit into new cell.

8.  Provide recessed in floor mounting brackets for attaching vehicle cooling fan. Provide flush mounted cover plates for when cooling fan is not being used.

9.  Provide removable (demountable) wall and ceiling panels on East side for extending Test Site No. 4 operation. Panels shall be designed and constructed for easy removal, storage, and re-assembling as required for testing operations.

10. Enclose existing utilities inside cell on North wall with insulated steel panels. Provide removable access panel.

## FIFTH AMENDMENT TO LEASE

THIS FIFTH AMENDMENT TO LEASE (the "Amendment"), made as of August 11, 1999, by and between MONTBELLO, INC., a Colorado corporation ("Lessor"), and GENERAL MOTORS CORPORATION, a Delaware corporation ("Lessee"),

## WITNESSETH: THAT

WHEREAS, Jason Associates and Lessee entered into a lease (the "Lease") dated December 7, 1971, regarding the following property (the "Premises"):

The North 215 feet of Lot 1, Block 4, Montbello No. 2, except the East 8.5 feet thereof; and the South 385 feet of Lot 2, Block 1, Montbello No. 21, except the East 17 feet thereof; all in the City and County of Denver, State of Colorado;

WHEREAS, the Lease was amended by that certain Amendment dated January 20, 1972 (the "1972 Amendment"), that certain Amendment dated July 1, 1975 (the "First Amendment"), that certain Second Amendment to Lease dated January 1, 1980 (the "Second Amendment"), that certain Third Amendment to Lease dated March 1, 1980 (the "Third Amendment") and that certain Fourth Amendment to Lease dated April 1, 1994 (the "Fourth Amendment", and collectively with the Third Amendment, the Second Amendment, the First Amendment, the 1972 Amendment and this Amendment, the "Lease Amendments"); and

WHEREAS, all right, title and interest of Jason Associates in and under the Lease, as amended, was assigned to Montbello Tricontinental Property Company, N.V. ("MTPC") as of May 1, 1976, and all right, title and interest of MTPC in and under the Lease, as so amended, was transferred to Lessor as of December 31, 1987; and

WHEREAS, the term of the Lease expires on December 31, 2001 and the Lease contains no provisions for extending the term beyond such expiry date; and

WHEREAS, Lessee desires to extend the term of the Lease; and

WHEREAS, Lessor and Lessee desire further to amend the Lease in certain additional respects; and

WHEREAS, this instrument constitutes the Fifth Amendment to the Lease;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree that the Lease shall be further amended as follows:

1.    Term.

The term of the Lease shall be extended for a period of eight (8) years, expiring on December 31, 2009.

2.    Rentable Area.

For purposes of this Amendment, the rentable area of the building on the Premises ("Rentable Area") shall be deemed to be 64,365 square feet.

3.    Rent.

Subject to the provisions of Paragraph 4 hereinbelow, commencing January 1, 2000, the yearly rent payable under the Lease shall be based on a rental rate of Three Dollars and Seventy-five Cents ($3.75) per square foot of Rentable Area, and accordingly shall be increased to Two Hundred and Forty-one Thousand Three Hundred and Sixty-eight Dollars and Seventy-five Cents ($241,368.75), payable in equal monthly installments of Twenty Thousand One Hundred and Fourteen Dollars and Six Cents ($20,114.06) each in advance on the first business day of each and every month during the term, as extended hereby.

Lessee covenants and agrees that this Amendment only modifies the amount of yearly rent payable by Lessee under the Lease and that the Lease shall continue to be a "triple net" lease whereby Lessee will continue to be totally responsible for all maintenance, repair and replacement of the Premises, and all buildings thereon, all real estate and other taxes and assessments on the Premises, and all buildings thereon, all insurance on the Premises, and all buildings thereon, and all other sums due and payable under the Lease.

4.    Rent Adjustment.

(a)    For purposes of this Amendment, "CPI" shall mean the Consumer Price Index for All Urban Consumers, U. S. City Average, All Items (1982-1984 = 100) published by the United States Department of Labor, Bureau of Labor Statistics. In the event that the Department of Labor shall effectively substitute a new index for the CPI, or effectively replace the CPI with a new index, the "Consumer Price Index" or "CPI" herein shall refer to such substitute index. In the event that the compilation and/or publication of the CPI shall be transferred to any other governmental department, bureau or agency or shall otherwise be discontinued, then the index most nearly the same as the CPI shall be used to make such calculation.

(b)    Yearly rent payable under the Lease for calendar year 2005 and all succeeding calendar years shall be determined by multiplying the yearly rent payable during calendar year 2004 by the CPI Adjustment (defined below); however, in no event shall the yearly rent be less than the yearly rent payable during calendar year 2004. The "CPI Adjustment" shall be a fraction, the numerator of which shall be

2

the CPI published for December, 2004 and the denominator of which shall be the CPI published for December, 1999. Notwithstanding the foregoing, in no event shall any increase in yearly rent (due to the CPI Adjustment) exceed twenty percent (20%) of the yearly rent payable in calendar year 2004, i.e., the yearly rent shall not exceed the rate of $4.50 per square foot of Rentable Area for a yearly rental amount of $289,642.50. The adjusted yearly rent shall be payable in equal monthly installments as provided above.

5.    Notice Provisions.

Any notice required or desired to be given under the Lease shall be in writing and shall be addressed as follows:

LESSOR:                    Montbello, Inc.
                          c/o Kishinchand Chelleram (Hong Kong) Ltd.
                          South China Building, 15th Floor
                          1 Wyndham Street
                          G.P.O. Box 975
                          Hong Kong
                          Attention:  Mr. K. V. Ranganath
                          Fax:  011-852-2845-9253

With a copy to:            Montbello, Inc.
                          c/o Barack, Ferrazzano, Kirschbaum & Perlman
                          333 West Wacker Drive, Suite 2700
                          Chicago, Illinois  60606
                          Attention:  Peter J. Barack, Esq.
                          Fax: (312) 984-3150
                          Tel:  (312) 984-3100

LESSEE:                   General Motors Corporation
                          c/o Worldwide Real Estate
                          Argonaut "A" Building, 9th Floor
                          485 West Milwaukee Avenue
                          Detroit, Michigan  48202
                          Attention:  Director of Real Estate
                          Fax: (313) 974-7227

With a copy to:            General Motors Corporation
                          c/o Worldwide Real Estate
                          Argonaut "A" Building, 9th Floor
                          485 West Milwaukee Avenue
                          Detroit, Michigan  48202
                          Attention:  Mr. J. W. Girardot
                          Fax: (313) 974-7227

3

Each notice delivered hereunder shall be deemed effective and given (i) upon receipt, if personally delivered (which shall include delivery by courier or overnight delivery service), (ii) upon being telephonically confirmed as transmitted, if sent by telegram, telex or telecopy, (iii) five business days after deposit in the United States mail, certified and postage prepaid, properly addressed to the party to be served, or (iv) upon receipt, if sent any other way. Either party may from time to time, by written notice to the other, designate a different address from that set forth above.

6.    Effect of Amendment.

(a)    This Amendment shall be effective as of the date hereof.

(b)    Except as otherwise expressly provided herein, the Lease, as amended by the Lease Amendments, is in all respects ratified and confirmed and remains in full force and effect. In the event of conflict between the terms of the Lease and any Lease Amendment thereto, the terms of the latest Lease Amendment shall prevail.

7.    Counterpart Execution.

This Amendment and any other amendment to the Lease may be executed in any number of counterparts with the same effect as if all parties hereto or thereto had signed the same document. All counterparts shall be construed together and shall constitute one agreement.



IN WITNESS WHEREOF, Lessor and Lessee have signed and sealed this Fifth Amendment to Lease as of the day and year first above written.

MONTBELLO, INC.

By: _____

Name:    SHAM L. CHELLARAM
Title:    PRESIDENT

Attest: _____

Name:    NARI SAKRANEY
Title:    SECRETARY & TREASURER

GENERAL MOTORS CORPORATION

By: _____

Name:
Title:

Attest: _____

Name:
Title:

\NS\GM\DENVER\FifthAmendmentToLease-6

5

essee have signed and sealed this Fifth
ve written.

BELLO, INC.

Name:    SHAM L. CHELLARAM
Title:    PRESIDENT

Name:    NARI SAKRANEY
Title:    SECRETARY & TREASURER

RAL MOTORS CORPORATION

Name:
Title:

Name:
Title:

and Lessee have signed and sealed this Fifth
st above written.

MONTBELLO, INC.

Ry:
Name:
Title:

Attest:
Name:
Title:

GENERAL MOTORS CORPORATION

By:
Name: MARILYN P. NIX
Title: DIRECTOR OF STRATEGIC INITIATIVES
AND PORTFOLIO MANAGEMENT

Attest:
Name: Cheryl Pence Lindeman
Title: Corporate Secretary

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE
BY