PEPPER HAMILTON LLP             **Hearing Date: TBD**
Nina M. Varughese, Esq. (NV 2347)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
E-mail: varughesen@pepperlaw.com

- and -

Henry J. Jaffe (DE No. 2987)
James C. Carignan (DE No. 4230)
Hercules Plaza, Suite 5100
1313 Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: jaffeh@pepperlaw.com
        carignanj@pepperlaw.com

Counsel for SKF USA Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                        :   Chapter 11

GENERAL MOTORS CORP., et al.,          :   Case No. 09-50026 (REG)
                                                          (Jointly Administered)
                  Debtors.
------------------------------------------------------------x

## LIMITED OBJECTION OF SKF USA INC. TO *(SECOND)* NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE COSTS RELATED THERETO

        SKF USA Inc. ("SKF"), through their undersigned counsel, hereby submit this limited objection (the "Second SKF Assignment Objection") to the *(Second)* Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Costs

#11163979 v1

Related Thereto (the "Assignment Notices"), served upon SKF by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to this Court's Bidding Procedures Order [Docket No. 274].

## Background

1. On June 1, 2009 (the "Petition Date"), the Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code.

2. SKF, through its business units and divisions, operates under various trade names, including (but not limited to), SKF Reliability Systems f/k/a Preventive Maintenance Company, Inc., SKF Industrial Division, SKF Sealing Solutions, Chicago Rawhide, CR Industries, CR Services, VSM, and SKF Automotive Division.

3. As of the Petition Date, as more fully set forth below (and subject to the qualifications set forth in paragraph 15, *infra*), and in the exhibit to this Objection, the Debtors may owe SKF no less than $1,291,339.57 (together with any additional post-petition obligations of the Debtors to SKF, the "Outstanding Executory Contract Debt") pursuant to various outstanding executory contracts between these parties.[1]

4. On the Petition Date, Debtors filed the Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(b), (f), (k), And (m), And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To (i) Approve (a) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (b) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (c) Other Relief; And (ii) Schedule

---

[1] The Outstanding Executory Contract Debt may be a lesser amount, as set forth in paragraph 15 hereof, *infra*, and on the Chart appended hereto as Exhibit "A."

Sale Approval Hearing (D.I. 92) (the "Sale Motion"), pursuant to which Debtors seek entry of a proposed order (the "Proposed Sale Order") authorizing (a) the sale of substantially all of the Debtors' assets to Vehicle Acquisition Holdings LLC (the "Purchaser"), (b) the assumption and assignment of certain executory contracts and unexpired leases in connection with such sale, and (c) certain related relief. On June 2, 2009, this Court entered an order (the "Bidding Procedures Order") approving the Debtors' bidding procedures, which includes procedures regarding Debtors' assumption and assignment of executory contracts.

5. Pursuant to the Bidding Procedures Order, on or about June 5, 2009, the Debtors delivered a notice (the "First SKF Assignment Notice") to SKF, indicating that the Debtors intend to assume and assign certain of the Debtors' agreements with SKF (the "First Set Of Assumed Contracts"). In addition, on their Contract Website, the Debtors identify $379,116.30 as the amount which they allege to be owing under the First Set of Assumed Contracts (the "First Proposed Cure Amount").

6. The First Proposed Cure Amount is substantially less than what is actually owed under the First Set Of Assumed Contracts. As such, on June 12, 2009, SKF filed the Limited Objection Of SKF To First SKF Assignment Notice (D.I. 965) (the "First SKF Assignment Objection"), that, among other things, set forth what SKF believes to be the correct amount of the pre-petition Outstanding Executory Contract Debt, and to preserve all rights of SKF as a counter-party to an executory contract under section 365 of the Bankruptcy Code and other applicable law. Likewise, on June 19, 2009, SKF filed the Limited Objection to the Sale Motion (D.I. 1869) (the "Sale Objection"), again to protect similar rights, namely, SKF's rights under section 365 of the Bankruptcy Code to cure of all defaults and obligations incurred but not in default under any of its executory contracts to be assumed or assumed and assigned.

7. On or about June 15, 2009, the Debtors delivered a notice (the "Second SKF Assignment Notice") to SKF, indicating that the Debtors intend to assume and assign certain additional agreements between Debtors and SKF (the "Second Set Of Assumed Contracts"). On their Contract Website, the Debtors identify $405,280.58 as the amount which they allege to be owing under the Second Set of Assumed Contracts (the "Second Proposed Cure Amount"). The Second Proposed Cure Amount is substantially less than what is actually owed under the Second Set Of Assumed Contracts. Thus, as with the First SKF Assignment Objection, SKF respectfully submits this Second SKF Assignment Objection to: (i) state the correct pre-petition amount of the Outstanding Executory Contract Debt; (ii) preserve SKF's rights to appropriate cure of all defaults under any of the Second Set Of Assumed Contracts existing as of the effective date of assumption and assignment; (iii) preserve SKF's rights to satisfaction and payment in the ordinary course of all obligations under any of the Second Set of Assumed Contracts that have been incurred under same as of the effective date of assumption and assignment, regardless of whether such obligations were incurred pre-petition or post-petition, and regardless of whether such obligations are in default as of the effective date of assumption and assignment; and (iv) preserve all rights of SKF with respect to the Second Set Of Assumed Contracts under section 365 of the Bankruptcy Code or other applicable law.

8. The Proposed Sale Order provides that the Purchaser will acquire the assumed and assigned agreements ". . . free and clear of all liens, claims encumbrances, or other interests of any kind or nature whatsoever, including rights or claims based on any successor or transfer liability, other than the Assumed Liabilities . . .". However, the Proposed Sale Order limits the Proposed Cure Amounts to such amounts that were in default as of the Petition Date, *not* the date the contracts will actually be assumed by the Debtors and assigned to the Purchaser:

#11163979 v1

"The Database maintained by the Debtors with respect to the Assumable Executory Contracts, which is referenced and is accessible as set forth in the Assumption and Assignment Notice, reflects the ***sole amounts necessary*** under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumable Executory Contracts . . . and no other amounts are or shall be due to the non-Debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assumable Executory Contracts." (Proposed Sale Order, ¶ 22).[2]

## The Requirements OF 11 U.S.C. §365

9. The Debtors are in default of their contracts with SKF. The Debtors have failed to comply with the provisions of 11 U.S.C. §365, which states in pertinent part that:

> "(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property...;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease."

---

[2] The most recent contract identified on the Debtors' cure amounts website (including with respect to the Second Set Of Assumed Contracts) as related to SKF is dated May 29, 2009.

#11163979 v1

10. Payment of the Second Proposed Cure Amount fails to cure the existing default under the contracts sought to be assumed and assigned and therefore absent the consent of SKF the contracts may not be assumed and assigned.

### Objection

11. SKF does not object to the sale of Debtors' assets as contemplated in the Sale Motion, nor does it object, *per se*, to assumption of its executory contracts with the Debtors and assignment thereof to the Purchaser. SKF does object, however, to the Second Assignment Notice to the extent that (1) the Second Proposed Cure Amount is incorrect even as to those amounts that were in default as of May 31, 2009, and (2) the Second Assignment Notice's apparent limitation of Debtors' cure obligations to amounts due as of the Petition Date, would permit assumption and assignment of certain of SKF's agreements without either the Purchaser or the Debtors satisfying all requirements attendant to assumption and assignment set forth in Bankruptcy Code § 365(b) and (f), including the obligations to: (a) cure <u>all defaults</u> existing <u>at the time executory contracts are assumed and assigned</u>; and (b) satisfy <u>all accrued obligations</u> that are not in default, but which nonetheless exist, <u>at the time executory contracts are assumed and assigned</u>.

12. Bankruptcy Code section 365(b)(1) makes it clear that defaults must be cured as of the time of assumption. Such defaults that must be cured include both pre-petition and post-petition defaults. *In re Stoltz*, 315 F.3d 80 (2d Cir. 2002); *In re Liljeberg Enters., Inc.*, 304 F.3d 410 (5th Cir. 2002); *In re Overland Park Fin. Corp.*, 236 F.3d 1246 (10th Cir. 2001); *In re Building Block Child Care Ctrs., Inc.*, 234 B.R. 762 (9th Cir. BAP 1999); *In re Tel-A-Communications Consultants, Inc.*, 50 B.R. 250 (Bankr. D. Conn. 1985); *In re North American Rental*, 54 B.R. 574 (Bankr. D. N.H. 1985).

#11163979 v1

13. Presently, the Second Assignment Notice (in connection with the Proposed Sale Order) provides that the only cure amount that must be paid upon assumption and assignment of SKF's contracts is whatever was in default as of the Petition Date. Although the Master Sale and Purchase Agreement defines 'cure amounts' as all amounts that must be paid to satisfy cure obligations under Bankruptcy Code section 365(b)(1), the Proposed Sale Order does not contain the necessary safeguards to ensure that all defaults, not just those accruing pre-petition, will be cured as a condition to assumption and assignment. SKF objects to the Second Assignment Notice to the extent it attempts to limit Debtors' cure obligations to those accruing up to any time prior to the effective date of assumption and assignment of SKF's contracts.

14. SKF further objects to the Second Proposed Cure Amount set forth by the Debtors because it is substantially less than the amount that was in default on May 31, 2009. As of the Petition Date, the amounts still owing to SKF under the contracts sought to be assumed in the Second Cure Notice may be no less than $1,291,339.57, subject to the qualifications set forth in paragraph 15 hereof, *infra*. Furthermore, since the Petition Date, SKF has continued to ship further product to Debtors (and anticipate that further product may be shipped prior to the consummation and closing of the Debtors' proposed sale and attendant assumption and assignment of SKF's contracts). The pre-petition portion of the Outstanding Executory Contract Debt is itemized on Exhibit "A" hereto. It should be noted that this amount does not include amounts based on post-petition shipments, because such shipments might be paid by Debtors in the ordinary course of their business and because additional shipments, after the date of filing this Objection, will likely occur. Nevertheless, assumption and assignment of SKF's contracts will require payment for all shipments that have been made as of the effective date of assumption, not just the pre-petition amounts identified herein.

#11163979 v1

15. The correct amount of the Outstanding Executory Contract Debt may be less than $1,291,339.57. This is for two reasons. First, certain of the invoices upon which the Outstanding Executory Contract Debt is based may (or may not) represent debts arising under agreements with non-U.S. GM entities, such as GM's African, Canadian and Mexican affiliates, that are not Debtors in these proceedings. In certain cases, however, SKF delivered the Product to which such invoices relate to U.S. addresses. As such, in an abundance of caution, SKF includes these invoices in the Outstanding Executory Contract Debt, in the event that the true contract party is a Debtor in these proceedings. Second, certain other of the invoices upon which the Outstanding Executory Contract Debt is based represent obligations that were assigned to a third party pursuant to the Debtors' Supplier Support Program. SKF includes these amounts in the Outstanding Executory Contract Debt, in an abundance of caution, to preserve the assignee's rights to payment of such obligations as cure amounts in connection with assumption and assignment of such contracts to the extent that these obligations have not been satisfied.

16. SKF has attempted to determine the basis of the discrepancy between its books and records and the Debtors' Second Proposed Cure Amount, and continues efforts to reconcile such discrepancies.

17. SKF demands that the Purchaser assume and agree to pay all of the Outstanding Executory Contract Debt, together with such other obligations that accrue post-petition, pre-assumption and that it satisfy, within the applicable time frames set forth in the Bidding Procedures Order and the respective P.O.s and invoices between the parties, any obligations that are in default as of the moment any such executory contracts are assumed and assigned to the Purchaser.

#11163979 v1

18. Further, SKF reserves the right to object to the assumption and assignment of agreements not identified in Exhibit "A". The User ID and Passcode provided by Debtors to SKF only enabled SKF to access proposed cure information with respect to certain contracts. As such, SKF was not able to determine whether Debtors are seeking to assume other contracts (and establish cure amounts with respect thereto) for which such proposed assumption Debtors have not provided notice to SKF. It is possible that Debtors are seeking to assume other SKF agreements of which SKF is unaware, due to improper delivery of cure notices, improper designation of contract counter-parties that should be designated as SKF, or otherwise. Thus, SKF should not be bound to the assumption, assignment or cure position of any contracts sought to be assumed by Debtors of which SKF is not aware as of the date of this Objection.

#11163979 v1

WHEREFORE, SKF respectfully requests that the Court: (i) deny the proposed assumption and assignment of SKF's executory contracts on the terms proposed by the Debtors and instead determine the appropriate amounts due to SKF under such contracts pursuant to section 365(b) of the Bankruptcy Code; (ii) require that the Proposed Sale Order approving the Sale Motion expressly provide that the Purchaser shall be liable for all accrued liabilities arising under, and existing as of the time that, executory contracts are assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement and the Bid Procedures Order, including all defaults arising thereunder (which defaults must be cured in the time and manner set forth in the Bid Procedures Order) and all obligations that have accrued thereunder but are not then in default; and (iii) grant such other and further relief as is just and appropriate.

Dated: June 24, 2009
Wilmington, DE

/s/ James C. Carignan
PEPPER HAMILTON LLP
Henry Jaffe (Del. No. 2897)
James C. Carignan (Del. No. 4230)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel to SKF USA Inc.*

#11163979 v1