1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


GENERAL MOTORS CORPORATION,


          Debtor.



- - - - - - - - - - - - - - - - - - - -x


                    United States Bankruptcy Court

                    One Bowling Green

                    New York, New York


                    June 23, 2009

                    2:08 PM



B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1

2    HEARING re Motion to Appoint an Official Committee of Family &

3    Dissident Bondholders.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Pnina Eilberg

25

3

1

2    A P P E A R A N C E S :

3    WEIL GOTSHAL & MANGES LLP

4         Attorneys for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   HARVEY R. MILLER, ESQ.

9

10

11   KRAMER LEVIN NAFTALIS & FRANKEL LLP

12        Attorneys for Official Committee of Unsecured Creditors

13        177 Avenue of the Americas

14        New York, NY 10036

15

16   BY:   ROBERT T. SCHMIDT, ESQ.

17         KENNETH H. ECKSTEIN, ESQ.

18         LAUREN M. MACKSOUD, ESQ.

19

20

21

22

23

24

25

4

1

2    VEDDER PRICE P.C.

3          Attorneys for Export Development Canada

4          1633 Broadway

5          47th Floor

6          New York, NY 10019

7

8    BY:   MICHAEL L. SCHEIN, ESQ.

9

10

11   UNITED STATES DEPARTMENT OF JUSTICE

12          Office of the United States Attorney

13          86 Chambers Street

14          New York, NY 10007

15

16   BY:   MATTHEW L. SCHWARTZ, AUSA

17

18

19   GIBSON, DUNN & CRUTCHER LLP

20          Attorneys for Wilmington Trust

21          200 Park Avenue

22          New York, NY 10166

23

24   BY:   DAVID M. FELDMAN, ESQ.

25

5

1

2     PATTON BOGGS LLP

3          Attorneys for Unofficial Committee of Family

4             And Dissident GM Bondholders

5          1185 Avenue of the Americas

6          30th Floor

7          New York, NY 10036

8

9     BY:   MICHAEL P. RICHMAN, ESQ.

10

11

12    PATTON BOGGS LLP

13          Attorneys for Unofficial Committee of Family

14             And Dissident GM Bondholders

15          2001 Ross Avenue

16          Suite 3000

17          Dallas, TX 75201

18

19    BY:   JAMES C. CHADWICK, ESQ.

20

21

22

23

24

25

6

1

2    UNITED STATES DEPARTMENT OF JUSTICE

3         Office of the United States Trustee

4         33 Whitehall Street

5         21st Floor

6         New York, NY 10004

7

8    BY:   BRIAN S. MASUMOTO, ESQ.

9          LINDA A. RIFFKIN, ESQ.

10

11

12   KELLEY DRYE & WARREN LLP

13         Attorneys for Law Debenture Trust Company of New York

14         101 Park Avenue

15         New York, NY 10178

16

17   BY:   JENNIFER A. CHRISTIAN, ESQ.

18

19

20

21

22

23

24

25

7

1

2    ALLARD & FISH, P.C.

3         Attorneys for Severstal

4         535 Griswold

5         Detroit, MI 48226

6

7    BY:   DEBORAH L. FISH, ESQ.

8         (TELEPHONICALLY)

9

10   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

11        Attorneys for Creditor

12        1285 Avenue of the Americas

13        New York, NY 10019

14

15   BY:   MARGARET A. PHILLIPS, ESQ.

16        ANDREW N. ROSENBERG, ESQ.

17        (TELEPHONICALLY)

18

19

20   ALSO PRESENT TELEPHONICALLY:

21        DENNIS A. PRIETO, In Pro Per

22        JENNIFER SCHILLING, Farrallon Capital Management

23        ROBERT BURNS, Monarch Alternative Capital LP

24

25

8

                    P R O C E E D I N G S

1

2          THE COURT:  Seats please.  Okay.  GM, we're here on

3     the motion of the ad hoc committee of family and dissident GM

4     bondholders asking me to appoint an additional committee.

5          I've read the papers and I think I understand them.

6     We get motions of this type a lot.  Mr. Richman, good

7     afternoon.

8          MR. RICHMAN:  Good afternoon, Your Honor.

9          THE COURT:  I'll hear from you first.  As I said, you

10    can assume that I've read the papers and I've understood them.

11         MR. RICHMAN:  Thank you, Your Honor.  May I take the

12    podium?

13         THE COURT:  I would ask that you do.

14         MR. RICHMAN:  Good afternoon, Your Honor.  Michael

15    Richman, Patton Boggs for the Unofficial Committee of Family

16    and Dissident GM Bondholders.

17         Your Honor, when we first filed our motion and request

18    for official committee recognition we had asked that it be

19    heard prior to the June 19 deadline for objections to the

20    Section 363 transaction.  It turns out that having this hearing

21    today, four days after the deadline has passed, is very

22    important and material to the motion for the following reason,

23    neither the official committee nor the two indentured trustees

24    who sit on the official creditors committee appear to have

25    raised any substantive objection to the fast track Section 363

9

1    transaction.

2          This demonstrates, conclusively, that our group, which

3    did file a very substantial objection, is not adequately

4    represented within the meaning of the statute.  And an even

5    stronger case than the one we made in our opening papers is

6    made for official committee recognition under Section

7    1102(a)(2).  But there is much more here that supports a

8    compelling need for an independent official committee

9    recognition, which I will get to shortly.

10          Also, I should note other developments of a factual

11    nature since we filed the motion.  It appears that over thirty

12    separate objections have now been filed and the number keeps

13    growing every time I look at my BlackBerry by a whole variety

14    of individual bondholders who would be part of a larger

15    constituency that we hope to be able to represent.  And I would

16    submit that an additional factor for the Court to consider

17    would be whether the hearings on the Section 363 transaction

18    and other activities in the case, particularly with this large

19    number of individual clamoring to be heard would be best

20    organized under an official committee that represents those

21    interests.

22          First, I want to update you briefly on the unofficial

23    committee, a committee of small bondholders who are looking for

24    a voice in these cases.  Since the time we filed our committee

25    recognition motion, the number of bondholders who have

10

1    registered through the website, Main Street Bondholders, which

2    is the main way that our unofficial committee networks with the

3    larger community of small bondholders, has grown from 1,500 to

4    approximately 2,000.  We believe that the face value of the

5    bonds represented is now more than 500 million dollars.

6           According to the best information we've been able to

7    obtain to date, there were approximately twelve series of

8    institutional bonds issued by GM and outstanding as of the

9    petition date there were five series of foreign currency debt

10   issues, six issues of retail bonds and notes and four series of

11   convertible debentures.  Most of the holders in our group, we

12   believe, are in the retail bond and note series and the

13   convertible debt series, some of which had face values as small

14   as twenty-five dollars.

15          THE COURT:  Pause please, Mr. Richman.  Because when I

16   read your motion I also looked at your 2019, which referred to

17   three individuals.  Has there been an updated 2019 documenting

18   the extent to which you represent anybody other than those

19   three people, putting aside the deficiencies articulated by the

20   U.S. Trustee vis-a-vis the disclosures on the three people?

21          MR. RICHMAN:  On that point, Your Honor, first I would

22   note that until I received the trustee's papers, and I've had a

23   number of very cordial discussions with the office which I

24   thought gave us a fair hearing on our letter request for

25   appointment by the trustee's office.  And at no time did

11

1    anybody suggest to me that there was any defect in the 2019.

2    And had that been pointed out to us and we'd been asked to

3    supplement it, we would.

4         THE COURT:  Well you know what 2019 says.

5         MR. RICHMAN:  I know what it says and we are -- we

6    don't represent anybody -- my firm represents only the

7    unofficial committee of three.  And we were careful to say in

8    our papers that that committee, through its network with the

9    larger community of bondholders, is hoping to have official

10   status to represent them.  And at least informally, there is a

11   belief in that bondholder community that that committee is

12   serving its interest even though I don't have an

13   attorney/client relationship with any other individual

14   bondholders nor even the three on the committee.  The

15   engagement is with the committee itself as an entity.

16        As far as their holdings are concerned, we did

17   disclose their holdings and we are preparing a supplement to

18   disclose any trading activity or anything else that's

19   encompassed within the rules for positions that might have been

20   acquired in the last year and that's easily done.  And whatever

21   the trustee's office wants, by way of disclosure, that we can

22   provide we will provide.  But I say to Your Honor, we have not

23   expanded the unofficial committee membership beyond the three

24   individuals that we identified in our papers.

25        THE COURT:  Okay.  Continue, please.

12

1          MR. RICHMAN:  Thank you, Your Honor.  On June 12 we

2     reached out to this network through the website and asked

3     people to share with us more information about their holdings

4     and their circumstances.  I'm trying, in as much as I've stated

5     our beliefs about the nature of this bondholder community and

6     how it is very distinct from the institutional bondholders that

7     have been represented in the case; I'm trying to do what I can

8     to gather as much verifiable information as possible.

9          We received details reports, so far, from 150 members

10     of the larger group.  And I'm not claiming this is a scientific

11     survey, Your Honor, it's just illustrative.  But of the 150 who

12     wrote to us, eighty-six percent of them purchased their bonds

13     between eighty and a hundred cents.  A stunning sixty-eighty

14     percent of this group reported to us that the potential losses

15     to them and their GM bondholders will affect their lives in

16     significant and detrimental ways.

17          More than half of them reported to us that they had

18     been living off the interest or --

19          MR. MILLER:  Excuse me, Your Honor.

20          MR. RICHMAN:  -- using the interest as an important

21     source to supplement their retirement.

22          THE COURT:  Just a minute please, Mr. Richman.

23          MR. MILLER:  Your Honor, I don't understand.  Are

24     these facts?  Is this supposed to be in evidence?  This is all

25     hearsay.

13

1        THE COURT:  Of course it's hearsay.  If it were

2   admissible by a witness and it's, in substance, a lawyer

3   testifying.  The objection is sustained, Mr. Richman.

4        MR. RICHMAN:  Your Honor, I'll move on.

5        THE COURT:  You've got to stay within the confines of

6   the objection that you filed.

7        MR. RICHMAN:  I will, Your Honor.  I just thought it

8   important to give Your Honor the flavor of the people that

9   we're dealing with and hearing with on a daily basis.  I

10  appreciate it's not evidence but I felt it was important

11  that --

12       THE COURT:  Mr. Richman, we've got to move on.  After

13  I rule, I rule.

14       MR. RICHMAN:  Thank you, Your Honor.

15       THE COURT:  Thank you.

16       MR. RICHMAN:  The statute provides a very simple,

17  broad discretionary standard for an additional committee.  The

18  statute says, and I quote, "If necessary to assure adequate

19  representation of creditors."  Some of the objectors citing

20  some previous cases have argued that the appointment of an

21  additional committee is an extraordinary remedy and some courts

22  have said that.  Courts addressing Section 1102(a)(2) have also

23  articulated roughly six factors that they believe should be

24  used to evaluate such requests and all of us have made efforts

25  to address those factors.

14

1        I will, in a minute, summarize the factors and the

2   party's arguments while showing that in the facts of this case

3   all the factors support the appointment of our group as an

4   additional official committee.  But I want first to emphasize

5   that the text of the law, the words of the statute, provide

6   only that this Court needs to determine if the additional

7   committee is necessary in the circumstances of the case to

8   assure the adequate representation of creditors.  There's

9   nothing in the statute that suggests that the relief should be

10  considered extraordinary or rarely granted nor requiring any

11  special burdens.

12       Before I get to the non-exclusive factors that all the

13  parties have discussed, I want to urge Your Honor to weigh

14  heavily an important factor that is not among the non-exclusive

15  six but one that I believe overrides this entire case and

16  subsumes a number of the factors.  Will the appointment of a

17  separate official committee of non-institutional family and

18  dissenting bondholders protect and enhance the integrity of the

19  bankruptcy process?  Or stated differently, will it enhance the

20  administration of justice in this case?  The answer to both of

21  these important questions is resoundingly yes.

22       This case is being watched widely and closely both

23  here and around the world.  People want to know whether the

24  legal system that we promote around the world and which has

25  been copied in many parts of the world is as fair and provides

15

1    the kind of due process and protection of dissident rights as

2    we say it does.  They see that the government has powered its

3    will over GM in the months leading to the bankruptcy filing and

4    they now see that the only official committee in the case, as

5    well as the two indentured trustees on that committee, have

6    apparently lined right up with the government and the debtors

7    for a fast track Section 363 transaction that would, as a

8    practical matter, end run due process and creditor protections

9    built into the plan process.

10          The government is the debtor.  It is the debtor's

11   lender and it is the new GM purchaser.  It is paying the legal

12   expenses of all of those parties and we have also heard that

13   the government has agreed to pay the legal expenses of the ad

14   hoc committee of institutional bondholders who have also not

15   opposed the 363 transaction.

16          In the circumstances vitally important in our system

17   of adversarial process and justice, there's a serious question

18   whether and to what extent this Court will receive anything

19   close to a full airing of the important, substantive and

20   procedural issues that are raised in this case.

21          In a case of this magnitude, with issues of such

22   importance, we believe that the Court should hear both sides

23   and have the benefit of the full throated debate and the

24   intendant evidence that is the essence of our adversarial

25   system of justice.  Giving our group official committee status

16

1   will enable us to vigorously present the other side.  It will

2   promote overall transparency and justice.  And however this

3   Court ultimately decides the issues, the public will be better

4   informed, with a better understanding of the choices that were

5   made and why.

6          Equally related to the important issue of enhancing

7   the administration of justice and the bankruptcy system is the

8   importance of going so far as is reasonably possible to assure

9   that any appearance of conflict or unfair influence is

10  mitigated.  The United States Trustee does an excellent job and

11  the comment I'm about to make should not be construed as any

12  criticism of her performance here or in any other case.  But it

13  is a fact that the trustee's office, which appoints the

14  official committee in this case, is part of the same executive

15  branch of the government that is the unitary voice for the fast

16  track Section 363 transaction in this case.

17         In the unique circumstances of this case and

18  especially where the official committee is now silent on this

19  key transaction, it is a legitimate question whether the

20  committee was selected and balanced in such a way as to

21  predetermine their position in favor of the government's plan.

22         We are constrained to ask where a fast track 363

23  transaction will walk in discriminatory treatment between

24  different classes of legally similar unsecured creditors,

25  namely the UAW claims and the claims of the bondholders and

17

1    other general unsecured creditors, how is it possible that

2    there is no substantive objection from the official committee

3    that is supposed to represent all unsecured creditors equally

4    or even from the two indentured trustees who sit on that

5    committee.

6            An additional official committee, independent of the

7    trustee's office, independent of the government and free from

8    whatever politics have restrained the official creditors

9    committee or the indentured trustees on the committee from

10   speaking out will be able to give this Court and the public the

11   important benefits of vigorous opposition and the airing of

12   issues that the bankruptcy process and the sound administration

13   of justice requires.

14           I want to turn now to the six factors, Your Honor,

15   that have been identified by some of the courts and objectors

16   to see whether and to what extent they figure into an

17   appropriate analysis of the need for an additional committee in

18   this case.  The first one is the ability of the existing

19   official committee to function.

20           The debtors argue that the F&D bondholders, for family

21   and dissident GM bondholders, are adequately represented by the

22   official creditors' committee because they say that committee

23   has a fiduciary duty to protect all unsecured creditors and

24   because it includes two indentured trustee representatives who

25   are also duty bound to represent the interests of all

18

1   bondholders.

2         The U.S. Trustee adds that there is no indication that

3   the official committee has not been able to function

4   effectively.  The official committee makes similar points

5   arguing that we have not established that the committee is

6   failing to function.  But with all due respect to the courts

7   that have made this a factor, the issue is not whether the

8   official committee can function but rather, as the statute

9   expressly suggests, whether it is providing adequate

10   representation.

11         THE COURT:  Pause please, Mr. Richman.  Because, as

12   you properly observed, the six factors have been set forth in a

13   bucket of cases, at least in Enron and Dana in this district.

14   I think down in Winn Dixie in the Middle District of Florida

15   and elsewhere.  When we bankruptcy judges do our job, we start

16   with a statute.  We start with textual analysis.  But if we

17   were to rely on textual analysis alone there would be no

18   Lionel.  The Lionel decision points out that 363 doesn't place

19   any limits on the ability of a debtor to engage in a 363 sale.

20   And yet, it was the start of a body of case law.  Do I, as a

21   judge, have the ability to ignore what may be at least three,

22   four or five decisions in this district and dozens around the

23   country that set forth those statutory factors?

24         MR. RICHMAN: Well Your Honor, I don't --

25         THE COURT:  Set forth those factors in implementation

19

1   of the statute even though the words of the statute don't set

2   them forth.

3           MR. RICHMAN:  I don't suggest, Your Honor, that you

4   ignore them.  In fact, I'm trying to suggest and I'll try to do

5   it a little better, that those factors properly construed with

6   the statute and the statutory test support the appointment of

7   an additional committee in this case.

8           What I'm saying, on this particular factor the

9   functioning of a committee, it's possible that there may be

10  some cases in which somebody's going to argue that a committee

11  is deadlocked and is unable to function.  But I don't think

12  anyone's argued that that's what this factor means in this

13  case.  And if it were simply a matter of the committee being

14  able to --

15          THE COURT:  Well, it's what it generally means isn't

16  it?

17          MR. RICHMAN:  I think it can mean a lot of different

18  things.  And what I'm suggesting is that viewed in light of the

19  statute and viewed in light of this case, where the statute

20  says that the test is adequate representation, then to me,

21  looking at the factor of effective functioning, it's whether

22  the creditors' committee can function to provide the adequate

23  representation that the statute says one looks at.  This

24  creditors' committee may be able to function but it is

25  effectively silent on the issues affecting the bondholders and

20

1    other unsecured creditors.  So in respect of adequate

2    representation the committee is not functioning adequately.

3         The second factor, Your Honor, is called the nature of

4    the case.  The objectors argue that the large size of a case is

5    not a reason, in and of itself, for an additional committee

6    where the dissenters are adequately represented by the official

7    committee.  But as I've just argued, we contest with as much

8    protest as possible, that we are not being adequately

9    represented by the committee, particularly this is not just a

10   large case.  This is a large case in which the multiple hats

11   that are worn by the government and the government's

12   relationship with the debtors and the justice department show a

13   need for a creditors' committee that is truly independent.

14        Further, as I've argued before, it's inconceivable

15   that the dissident bondholders could be said to be adequately

16   represented by the official committee when neither the

17   committee nor the indentured trustees, who are supposed to be

18   their representatives on the committee, are giving any voice to

19   their grievances.

20        The third factor is the standing and desires of the

21   constituencies.  We argued in our motion that the F&D committee

22   constituency is distinctly different from the institutional

23   bondholders whose indentured trustees sit on the committee.

24   And at least on this point the official committee agrees with

25   us.  But they argue that this does not establish a lack of

21

1    adequate representation.  The debtors argue, and this is my new

2    favorite sentence in any brief that I've ever seen written

3    against the position I've taken, the debtors argue that the

4    fact that our interests are diametrically different from the

5    official committees is, and I quote, "A mental attitude that is

6    incorrect."

7         I will agree that some people think that we're insane

8    to be standing in opposition to this process.  But the real

9    point is adequate representation.  This is just another way of

10   expressing it.  The institutional bondholders have different

11   economic considerations, a different class of bonds, they had a

12   seat at the table, many of them agreed to a deal before the

13   case filed.  There's a question as to whether the indentured

14   trustees on the committee have their positions predetermined

15   before the case.  They do not and cannot adequately represent

16   us, that's something more than just a substantial difference in

17   mental attitude.

18        The fourth factor is the ability to continue

19   participating and recover costs.  Both the debtors and the

20   official committee say that the F&D committee is represented by

21   experienced and competent counsel who can continue to represent

22   them in these cases and for that we are grateful.  This factor

23   also usually invites a discussion of the eligibility of

24   unofficial committees for fees and expense recovery under the

25   substantial contributions standard of Section 503(b).  And the

1    U.S. Trustee makes that point in its objection.

2          The debtors say, baldly, that under this factor the

3    Court should view our request as essentially one to transfer

4    the costs of our professionals to the debtors.  However, this

5    factor just summarizes a truism in virtually all the 1102(a)(2)

6    cases and it should not have any real weight.  In most cases

7    the motion for an official committee is likely to be prosecuted

8    by a law firm of substances.  And in virtually every case it

9    will be a fact that an unofficial committee that is not granted

10   official committee status will be able to seek reimbursement of

11   its fees and expenses under 503(b).  It's inconceivable that

12   standing here seeking official committee status one would not

13   feel that one will be able to make a substantial contribution

14   to the case.

15         And 1102(a)(2) and 503(b) exactly overlap in their

16   permission for the appointment of committees, of creditors or

17   equity security holders and in the reimbursement for

18   substantial contribution.  In other words, if the availability

19   of 503(b) reimbursement is a legitimate reason to deny official

20   recognition under 1102(a)(2), then 1102 would be a nullity.

21         On the economic points embedded in this factor and the

22   objector's arguments, just because the bondholders were able to

23   get us to this point does not mean that they have anything near

24   the means to mount a vigorous and effective opposition, they do

25   not.  We've been hearing from them in waves, since word got out

23

1    that we were trying to represent the committee.  Of course the

2    benefit of a state coverage of fees and expenses is the

3    principal and salient objective of 1102(a)(2).  So accusing

4    somebody of trying to shift professional fees to the estate is

5    a nonfactor, that's what the statute is designed to do.  That's

6    the main reason people seek official committee status.  And in

7    this case those resources would empower this committee to do

8    far more then it could ever do as a practical matter in giving

9    voice to the objections to this process as well as full

10   participation in a plan process.  Including, importantly, the

11   ability to retain financial advisors to provide expert opinions

12   to counter the opinions that will be paid for by the

13   government.

14         This flows directly into the fifth factor, Your Honor.

15   The question whether or not the additional cost to the estates

16   is justified.  The debtors say it's not justified because it

17   will delay consummation of the 363 transaction and lead to

18   duplicative efforts in these cases, which would add no value to

19   the administration of these cases.  And the official committee

20   also claims it will lead to duplication of efforts and they

21   worry that the added costs will affect creditor recoveries.

22         Well as for the claim of duplicative efforts, please

23   somebody tell me whose work we would be duplicating.  The

24   official committee is not objecting to the transaction, we

25   would be.  That's not duplication.  And can the debtors

1   legitimately argue that the costs are not justified because

2   they would be used to delay the 363 transaction?  Absolutely

3   not.  That just speaks volumes about the desire of the debtors

4   to silence this committee, limit its ability to function and

5   otherwise choke any opposition.  And it's completely untrue.

6        As our objection to the 363 transaction makes clear,

7   we are in favor of seeing New GM created within the sixty to

8   ninety days that the government and the debtors promised the

9   world that they would be seeking to create New GM when they

10  filed this case.  Our position is that this should be done in

11  an accelerated plan process and not through a fast track 363

12  sale that will predetermine creditor recoveries outside a plan

13  process.  To use the fact that we are substantively in

14  opposition to the strategy of the debtors as a means to deny us

15  funding as a voice in the process is not a legitimate

16  objection.

17       Lastly, the sixth factor called other considerations.

18  The debtor's main argument under this factor, which is now also

19  joined in by the official committee, again has nothing to do

20  with the statutory requirement of whether or not we are

21  adequately represented but rather their concern that empowering

22  us will delay the 363 transaction.

23       The official committee says that they are concerned

24  that there could be confusion if we differ from the approach

25  that they are taking.  In other words, again, both the debtors

25

1    and the official committee would prefer that our opposition be

2    silenced or limited.

3         So to sum up, the failure of the official committee

4    and the two indentured trustees on that committee to object to

5    any aspect of the proposed fast track 363 transaction, which

6    for all intents and purposes is the core of this case and will

7    predetermine unsecured creditor distributions in a manner that

8    discriminates against bondholders, demonstrates on its face

9    that the existing representation of the official committee is

10   not adequate.  Adequate representation has to mean something

11   more than that there is a committee in existence to protect

12   unsecured creditors or that it merely includes representatives

13   of the same class seeking official recognition.

14        The integrity of the bankruptcy process is the central

15   issue, especially if by choking off this large constituency of

16   small bondholders the Court is unable to hear vigorous

17   opposition.  The integrity of the process is key where the

18   government is governing the debtor and its decision making and

19   lending the DIP money and masterminding the so-called purchase.

20   The administration of justice is implicated where in this

21   unusual case the only official committee is appointed by the

22   same branch of government wearing the management, lender and

23   purchaser hat.

24        These appearances and processes demand that there be a

25   vigorous airing of issues through an opposition given official

26

1    voice in this process.  Whatever this Court eventually decides,

2    the administration of justice and the integrity of the

3    bankruptcy process will be protected, upheld and honored if the

4    Court is able to have the benefit of the full professional

5    presentation of opposing views, law and evidence.

6            Thank you, Your Honor.

7            THE COURT:  Thank you.  All right.  Mr. Miller, I'll

8    hear from you and U.S. Trustee's office then the creditors'

9    committee, then anybody else who wishes to weigh in.

10           MR. MILLER:  Good afternoon, Your Honor.  Harvey

11   Miller, Weil Gotshal & Manges for the debtors.  If Your Honor

12   please, the argument which is being made by Mr. Richman

13   basically when you cut to the core is the fact that Section

14   1102 has been interpreted by courts, and there are ample

15   decisions in this district as to the responsibility and burden

16   that is on the moving party that should be ignored.  The Enron

17   decision, the Winn-Dixie decision, Dow Corning, the Oneida

18   decision, all of these decisions should be ignored.

19           The standard for the appointment of an additional

20   committee is a high standard.  There is a burden of proof that

21   is put on the moving party to establish that there is a lack of

22   adequate representation, Your Honor.  And the only lack of

23   adequate representation that we hear is that Mr. Richman

24   believes that this creditors' committee, the official committee

25   that's been appointed in this case, has failed to adequately

27

1    represent the bondholders because it hasn't objected to the 363

2    sale.

3         That means, Your Honor, if you take his principal to

4    its logical extreme, any time a group of creditors is in a

5    difference of opinion with the creditors' committee there

6    should be an additional committee appointed.  And that, Your

7    Honor, is clearly not the law.

8         A review of the applicable determinative factors, Your

9    Honor, demonstrates that the GM bondholders are adequately

10   represented by the official committee.  And what did the U.S.

11   Trustee do here, Your Honor?  At the organizational meeting it

12   interviewed many of the creditors who appeared at that meeting.

13   The U.S. Trustee appointed a fifteen member committee,

14   including two indentured trustees.  In point of fact, Your

15   Honor, when Mr. Richman and inquiries made of Mr. Richman as to

16   whether any one of these three ad hoc committee members would

17   serve on the official committee, the answer was no.  So the

18   whole purpose of this, Your Honor, is to have a committee that

19   can object to the 363 sale and have its expenses paid by the

20   debtor's estates.  That's not a lack of adequate representation

21   Your Honor.  That's a difference of opinion with the official

22   committee.  And I don't really know where Mr. Richman is going

23   about they haven't objected, the time to object or to file

24   responsive papers on the part of the official committee has not

25   yet expired.  The official committee has not yet filed whether

28

1    it supports, objects or whether it has a limited objection.  So

2    I don't know exactly what Mr. Richman is replying to.

3            There is no requirement, Your Honor, that a creditors'

4    committee must represent every different interest in the

5    creditor community.  And that has been established in many

6    cases, including the Sharon Steel case.  The best committee,

7    Your Honor, is a committee of diverse interests and that's

8    exactly what the U.S. Trustee attempted to do here.

9            In accordance with Section 1102(b)(1), the committee

10   represents the different kinds of claims which have been

11   asserted and which will be involved in this Chapter 11 case.

12   And I believe the U.S. Trustee carefully selected this

13   committee so that it would represent the different kinds of

14   claims in this case.

15           So we have the two indentured trustees, Your Honor.

16   And indentured trustees have an obligation, not only to

17   represent institutional bondholders but to represent all the

18   bondholders that are covered by that indenture, and that

19   includes the retail bondholders as well as the institutional

20   bondholders.  And in addition to that, Your Honor, we have an

21   ad hoc committee of bondholders.

22           As Your Honor may recall, at the first day hearings

23   Mr. Rosenberg from Paul Weiss appeared and that ad hoc

24   committee represents a committee which is, if I recall

25   correctly, in dollar amount represents more than fifty percent

29

1    of the outstanding bonds.  That's almost, Your Honor, fourteen

2    billion dollars worth of bonds.

3         So we're in a situation today where this ad hoc family

4    and dissident bondholders group has one objective, they want to

5    file -- they have filed an objection to the 363 sale.  They

6    have predetermined, Your Honor, that this Section 363 sale

7    should not be approved.  How did they make that determination?

8    They didn't do any research, they haven't reviewed the

9    transaction but they have already determined and they want Your

10   Honor to approve the appointment of this additional committee

11   so they can pursue this objection which is made on the basis of

12   their own conclusions because of the insolvent state of General

13   Motors.

14        Now, if that is the basis for the appointment of

15   additional committees, Your Honor, then I suggest to Your Honor

16   we're going to have a lot of additional committees in this

17   case.  We also already have motions for other additional

18   committees and if the sole difference, Your Honor, is we don't

19   agree with the official committee that this may be a proper

20   cause of action, that does not establish adequate -- a lack of

21   adequate representation.  And in point of fact, Your Honor, the

22   ad hoc family and dissident bondholders committee, they can

23   present those objections.

24        Mr. Richman made a very able presentation today; he

25   can make another able presentation when the 363 transaction

30

1   comes up. They have demonstrated today that they have the

2   capacity to object and to take whatever action they deem

3   appropriate.  And Mr. Richman stood at this lectern, Your

4   Honor, and said we will make a substantial contribution.  Well

5   if he is so sure they're going to make a substantial

6   contribution, then he should have no problem because Section

7   503(b) will be there when it is demonstrated that he has made a

8   substantial contribution.  We don't believe that he will make a

9   substantial contribution.  And we don't believe, Your Honor,

10  that these debtors' estates should bear the cost because he is

11  dissatisfied with the composition of the official committee.

12          What the U.S. Trustee did, Your Honor, was to comply

13  with the statute, to comply with the precedents in this

14  district and appoint a representative committee.  And

15  Mr. Richman, Your Honor, has not established a lack of adequate

16  representation.  This committee is represented, it is

17  functioning, it has been engaged ever since its appointment on

18  June 3rd in getting information and dealing with the issues in

19  this estate.

20          Mr. Richman's committee represents apparently a very

21  small group of bondholders.  If we're going to have additional

22  committees for a small group of bondholders when they have

23  representation on the official committee, Your Honor, as I said

24  before, we are going to end up with a lot of additional

25  committees in this case, which would be inappropriate and would

31

1    be inefficient in the administration of these estates, Your

2    Honor.  There is no justification, at this point in time, Your

3    Honor, for the appointment of an additional committee of

4    bondholders.  And the large size of the case and the

5    circumstances of the case, Your Honor, do not mean that there's

6    a lack of adequate representation.  The U.S. Trustee took that

7    into consideration.  This is a committee that has two

8    indentured trustees on it, is ably represented by attorneys,

9    ably represented by financial advisors and has been discharging

10   its function.

11        Mr. Richman can't point to any lack of adequate

12   representation except the one that he pursues, Your Honor, and

13   that is the committee hasn't objected.  That does not establish

14   a lack of adequate representation, Your Honor.  There may be a

15   difference between the official committee and the ad hoc

16   committee.  That doesn't prove or establish in accordance with

17   the high standard that is required in this district, that there

18   is a lack of adequate representation.  There will be

19   differences and there are differences, I'm sure, within the

20   committee, Your Honor.  And that's why the Code says you should

21   appoint a committee that represents the different kinds of

22   claims.  And it's within the committee process that those

23   claims are resolved by debate, by dialogue within the

24   committee.   Mr. Richman's clients don't even want to serve on

25   that committee.  They might have had the opportunity to serve

32

1    on that committee yet they rejected it, Your Honor.

2         What the U.S. Trustee did was discharge her functions

3    in accordance with the Bankruptcy Code and appointed a very

4    representative committee.  And nothing has been established

5    here today except, Your Honor, a lot of rhetoric about the

6    integrity of the Court.  What happened here was a compliance

7    with the provisions of the Code, the appointment of a

8    representative committee and a total failure of establishing a

9    lack of adequate representation in these cases, Your Honor.

10   All we have heard is the official committee will not object,

11   therefore we must have another committee on the basis of a

12   predetermined judgment that this proposed Section 363

13   transaction should not be approved.  That's not establishing a

14   lack of adequate representation, Your Honor.

15        So we would submit to Your Honor, in consideration of

16   the seven factors and what has been put forth today, there has

17   been no proof meeting the standard that is imposed upon a

18   moving party that there's a lack of adequate representation by

19   the official committee.  And we urge Your Honor to deny the

20   motion.

21        Thank you, Your Honor.

22        THE COURT:  All right.  Thank you.  Ms. Riffkin,

23   Mr. Masumoto, U.S. Trustee's office.

24        MR. MASUMOTO:  Good afternoon, Your Honor.  Brian

25   Masumoto for the Office of the United States Trustee.

33

1       As Your Honor is aware, the United States Trustee

2   filed a response to the motion of the unofficial family and

3   dissident bondholders for an order directing the United States

4   Trustee to appoint a separate committee.

5       In our response the United States Trustee asked the

6   Court to deny the motion because the unofficial committee

7   failed to demonstrate that the appointment of a separate family

8   and dissident bondholder committee isn't necessary for the

9   adequate representation of that group of bondholders interest.

10      Before addressing the merits of the case the United

11  States Trustee would like to point out or to discuss the

12  requirements under Rule 2019.

13      As indicated by counsel, the Federal Rules of

14  Bankruptcy Procedure, Rule 2019, specifically Rule 2019(a)(4),

15  requires the disclosure by the members of the unofficial

16  committee with respect to their bondholdings.  And in

17  particular the times when acquired, the amounts paid therefore

18  and any sales or other dispositions thereof.

19      Given the appearance of all the parties today, Your

20  Honor, the U.S. Trustee does not request that this proceeding

21  do not go forward.  In fact, however, we do ask that the Court

22  withhold its decision pending disclosure of the requirements

23  under the Rule 2019.  In part --

24      THE COURT:  Mr. Masumoto, if your opponent, in this

25  case Mr. Richman, had stonewalled you and indicated an

34

1    unwillingness to comply, I would give the point you made a lot

2    of serious consideration.  But I wonder whether in light of the

3    desire, if not also a need, of many constituencies in this case

4    to keep things moving forward that a guy in my position should

5    triage those matters and try to address parties needs and

6    concerns as quickly as possible and only hold up things when

7    its really necessary to do that.

8            As I said, he said he's going to give you compliance.

9    Mr. Richman's a man of honor, at least I've always thought of

10   him as such and I take his commitment as good enough for me for

11   now, wouldn't you?

12           MR. MASUMOTO:  Your Honor, and from the standpoint of

13   the U.S. Trustee that's fine once compliance is met.  The only

14   concern that we have is that if in fact these requirements are

15   not met is essentially a license to future movants in other

16   cases to avoid the requirements of the rule and nevertheless

17   seek a disposition of their motion.  And in fact in this case

18   we don't believe, given the representation that the disclosure

19   will be made, we believe that there ostensibly should be very

20   little delay in making the decision.  However, delaying it

21   until the disclosure is made does enforce the requirements of

22   the rule and indicate the importance of that disclosure.  In

23   fact, the disclosure may in fact inform the Court as well to

24   the other parties in interest as to the various motivations of

25   the parties and the determination of the various factors set

35

1    forth to determine adequate representation.

2         Having said that, Your Honor, I do believe that as,

3    certainly as indicated by the debtor's reply as well as the

4    official committee's reply with respect to the motion, we

5    believe that certainly even not taking into account any of the

6    undisclosed information there's sufficient facts to determine

7    that the unofficial committee is adequately represented and

8    therefore does not require the appointment of a separate

9    committee.

10        So having said that, I would like to move on to the

11   merits of the under Section 1102(a)(2) regarding adequate

12   representation.  As indicated and acknowledged by all the

13   parties, the norm is the appointment of a single committee.

14   And that in fact the appointment of a separate committee is an

15   extraordinary remedy.

16        Furthermore, as indicated by debtor's counsel, the

17   burden is on the moving party to establish the need for a

18   separate committee in order to provide adequate representation.

19   As indicated, adequate representation is not defined by the

20   code and in fact various case laws have identified factors to

21   consider in making that determination.  Essentially the

22   analysis seems to devolve on a case-by-case analysis of the

23   various factors that relate to the particular circumstance.

24   And in that regard, Your Honor, I would like to indicate that

25   the typical starting point is the formation of the official

36

1    committee of unsecured creditors.  And specifically would like

2    to address the statements made by Mr. Richman suggesting that

3    there was some sort of collusion or influence in the formation

4    that was intended to dictate the outcome with respect to the

5    363 sale.

6          I can say unequivocally there was no communication

7    between the office of the United States Trustee and any member

8    of Treasury, the Auto Task Force or the United States

9    Attorney's office representing the Auto Task Force in the

10    formation of the committee.  The determination was made

11    strictly within the United States Trustee's program under the

12    standards that have been applied in all bankruptcy cases.  And

13    there is absolutely, and I would like to make it quite clear,

14    no influence and no intent on the part of the United States

15    Trustee to form a committee solely for the purpose to advance

16    the approval of the proposed 363 sale.

17          And in that regard, as mentioned, the United States

18    Trustee appointed a fifteen member committee.  As indicated,

19    that committee is composed of seven different groups of

20    creditors.  There are pension obligations, employee

21    obligations, trade claims, dealer claims, tort claims, asbestos

22    claims and the bondholder claims.  As indicated, two indentured

23    trustees representing all of the bond issuances were appointed

24    to the committee.

25          Also as indicated, at the organizational meeting there

37

1    were, in fact, three representatives of bondholder interests

2    that registered their appearance, the two indentured trustees

3    and an individual bondholder.  The individual bondholder did

4    not remain to be interviewed by the United States Trustee and

5    we were, therefore, unable to consider that individual for

6    appointment on the committee.

7          Also as indicated, the United States Trustee did reach

8    out, after the formation of the official committee, to the

9    unofficial committee to inquire whether or not there were any

10   members who were interested in serving on the committee and the

11   response was in the negative.

12         Your Honor, the U.S. Trustee believes that given the

13   burden that the unofficial committee, as a moving party there,

14   is with respect to the establishment of adequate protection of

15   the lack of adequate protection would believe that the failure

16   and the refusal of the committee -- unofficial committee

17   members to serve on the official committee should weigh heavily

18   with respect to the claim of lack of adequate representation.

19         Also we'd like to point out, as we did in our papers,

20   that in the interview that the U.S. Trustee conducted with

21   respect to their various creditor constituencies, the U.S.

22   Trustee specifically questioned the indentured trustees

23   regarding their fiduciary obligations and received

24   representations from both indentured trustees that they were

25   able to operate as fiduciaries for the entire unsecured

38

1    creditor class in these cases even though or even if a majority

2    of the bondholders had committed themselves to support the

3    debtor's proposed sale.

4         The indentured trustees were not bound or

5    circumscribed in any manner in seeking the maximum recovery on

6    behalf of all of the unsecured creditors as a fiduciary to the

7    unsecured class -- the class of unsecured creditors.

8         Finally, Your Honor, to address the various factors

9    that have been indicated, again I will quickly go through the

10   factors that in fact has been articulated by the various

11   parties and in the papers.  Certainly the nature of this case,

12   although large and arguably perhaps even complex, is not a very

13   difficult case in that the major goal in this case is really

14   what is the consideration to be realized from the sale of

15   substantially all of the debtor's assets.  And in this regard,

16   we believe that that goal is the same goal as the goal in

17   common with the committee as a whole as well as its individual

18   constituents, including the unofficial committee of F&D

19   bondholders.

20        Therefore, as indicated previously, since the

21   indentured trustees are not constrained, even by a majority

22   vote of bondholders in favor of the sale, the indentured

23   trustees could and should have independently determined the

24   validity and the merits of the proposed 363 sale.  And in that

25   regard the family and dissident bondholders interests are

39

1      directly represented in the committee and in the case.

2           One of the other factors raised is the factor of

3      whether or not the official committee has been able to

4      function.  And as indicated by debtor's counsel and I believe

5      as represented by the official committee and its papers and

6      response to the motion, the committee has been functioning

7      properly, has been functioning effectively and is not, as

8      indicated, deadlocked in any manner that would render it

9      ineffective.

10          Certainly, as indicated -- I don't think I need to go

11     into detail, the pleadings that have been filed by the

12     unofficial committee indicates that a level of legal and

13     financial sophistication sufficient to guarantee an appropriate

14     participation within the case.  And certainly, as indicated

15     before without having to go over the factors again, the

16     unofficial committee's counsel certainly has the opportunity to

17     apply for 503(b) recovery with respect to their expenses as an

18     administrative expense.  There is no bar to that request and

19     therefore their participation, if resulting in a substantial

20     contribution to the estate, would allow them to recover those

21     expenses.

22          Furthermore, as indicated in our papers, there's no

23     evidence that the unofficial committee members or the family

24     and dissident bondholders as a group or as a community will be

25     discriminated against under a plan.  I believe that the

40

1    recovery that is sought under the 363 sale will effectively

2    benefit all unsecured creditors equally.  There is no

3    discriminatory treatment that has been alleged that would occur

4    pursuant to a subsequent plan of reorganization.

5        Accordingly, taking into account all of those factors

6    it does not appear that a separate committee of family and

7    dissident bondholders is warranted in this case given the

8    additional cost that would be generated simply in order to

9    represent this unique, individual point of view.

10       Accordingly, the United States Trustee respectfully

11   requests the Court to deny the motion seeking an order

12   directing the appointment of an official committee of family

13   and dissident bondholders.

14       THE COURT:  Okay.  Thank you.

15       MR. MASUMOTO:  Thank you, Your Honor.

16       THE COURT:  Creditors' committee, Mr. Eckstein,

17   Mr. Schmidt, would you care to be heard?

18       MR. ECKSTEIN:  Your Honor, good afternoon.  Kenneth

19   Eckstein of Kramer Levin appearing on behalf of the Official

20   Committee of Unsecured Creditors in the General Motors Corp.,

21   Chapter 11 cases.

22       Your Honor, the creditors' committee has carefully

23   considered the motion by the family and dissident ad hoc

24   committee for the appointment of a separate committee.  The

25   official committee agrees that the Winn-Dixie and Enron

41

1   standards are the factors that should be applied by this Court.

2   And after careful consideration it has determined that the

3   factors in these cases weigh heavily in favor of the Court

4   denying the motion.

5        Allow me to speak to several of the points that have

6   been raised by the movants, in particular with respect to

7   certain comments made with respect to the role and function of

8   the official committee.

9        I think, as Your Honor has already seen from the

10  papers and has heard from the presentations, the official

11  committee in this case is a large and diverse committee

12  consisting of fifteen members.  As Your Honor, I believe, is

13  aware, there are two indentured trustees serving on the

14  committee in addition the committee includes the PBGC, the IUE,

15  the UAW, the United Steel Workers Union, there are three trade

16  and supplier representatives, there are three dealer

17  representatives, there is a representative of asbestos

18  claimants and there are two other tort claimant representatives

19  on the committee.

20       It is significant that when the committee was formed,

21  as we understand, none of the individual bondholders that

22  either are members of the ad hoc or unofficial movants in this

23  case or that are consulting with the movants in this case

24  sought appointment to the official committee.

25       Your Honor, I can confirm first hand that the

42

1    committee is functioning actively and dynamically on a wide

2    array of issues in these cases.  There is no question that the

3    first standard that applies to whether or not there is a need

4    or a basis for appointing additional committees is not met

5    here.  There is no evidence whatsoever that the committee is

6    not functioning.  And I believe that every party that is

7    actively involved in these cases would confirm to Your Honor

8    that the committee is playing an around-the-clock, active and,

9    we believe, very effective role in dealing with the pressing

10   issues that are affecting this case.

11       Your Honor, over the last several weeks and on a daily

12   basis we are dealing on an active -- an interactive way with

13   the debtor, with the U.S. Treasury, with the ad hoc bondholders

14   committee, with representatives of tort claimants, with the

15   unions and with the other parties that have an interest in the

16   outcome of this case.  I can represent to Your Honor first hand

17   that there are many competing interests that have to be

18   considered, both in connection with the propriety of the

19   proposed 363 sale and what the results will be from a

20   transaction if one is approved and how those results will

21   impact upon the interests of unsecured creditors.

22       The issues are complex and we in fact believe that

23   those interests are being well served through the role of the

24   official creditors' committee and from the involvement of

25   multiple constituencies and multiple interests with multiple

43

1    goals and multiple needs sitting in one room and expressing

2    their respective voices within a large and diverse official

3    committee.

4         Your Honor, Mr. Richman made a great deal out of the

5    fact that the official committee has not responded to the

6    motion.  And he suggested maybe not having the benefit of full

7    information that the committee has somehow abdicated its

8    responsibility or its intent to take a position on the sale.

9    The fact of the matter is that the committee's deadline to

10   respond to the 363 sale has been extended to tomorrow,

11   Wednesday, at noon.  And the committee certainly intends to

12   submit a response to the 363 sale, and it will be a detailed,

13   substantive response.

14        The fact of the matter is, that we are continuing to

15   meet today.  We've met over the weekend.  We met yesterday and

16   I expect we'll continue to meet tonight dealing with an

17   extensive list of issues that the committee is considering many

18   of those issues directly impact an interest bondholders and

19   other unsecured creditors and how they're implicated by the

20   sale.  And we believe that it's in fact quite advantageous that

21   the committee has deferred submitting a response.  We don't

22   believe it would have been useful to respond prematurely

23   because we believe that significant progress will get made

24   through the dialogue that is taking place.  But I don't want it

25   to be suggested by an omission on the record that the committee

44

1    has, in any way, abdicated its responsibility to respond.  The

2    committee will be responding tomorrow by noon with a

3    substantive response.  I cannot represent that it will

4    necessarily be precisely what Mr. Richman wants to hear but we

5    believe it'll be a significant and valuable response for the

6    Court.

7         The fact of the matter is that notwithstanding the

8    role that the official committee is playing, that the ability

9    of various interested parties in this case to respond to the

10   proposed sale motion in a substantive fashion is not lost.  In

11   fact, already four members of the official committee have filed

12   objections to the sale.  So the fact that they are serving on

13   the committee has not eliminated the ability of individual

14   creditors to express their interest.  The IUE has filed a

15   response.  The asbestos claimant has filed a response and the

16   two tort claimants have filed responses, in each case objecting

17   in a substantive fashion to the sale.

18        I also had the occasion to see that Mr. Richman's firm

19   has filed an extremely substantive response to the sale.  And I

20   believe that goes directly to one of the critical factors that

21   the Court has to consider in determining whether or not there

22   is or is not a basis to appoint an additional committee.  And

23   that is whether or not the movants or the objectors in this

24   case can affectively be represented.  The reality is, Mr.

25   Richman has submitted an extremely substantive response and

45

1   there's no question, by reading his papers, that they are in a

2   position to effectively advocate the very substantive issues

3   that have been raised.  And I don't want to, for a minute;

4   minimize the importance of the issues.

5        And the fact of the matter is, given their ability to

6   have submitted a thirty-page, substantive legal objection it's

7   clear they don't need official committee status in order to

8   raise and present the issues and insure that there's going to

9   be an effective dialogue on what Mr. Richman has characterized

10  as issues of importance to the Court and to the public at

11  large.  Official committee status is not necessary for the

12  voice to be heard and for the issues to be raised.  Whether or

13  not it affects compensation issues should not be a driving

14  factor in whether or not the Court decides to appoint an

15  official committee.

16       Your Honor, as we look at this case, we concur with

17  the comments made by debtor's counsel that if one were to

18  accept the position that has been articulated by Mr. Richman, I

19  would submit that one probably could adopt that same position

20  for multiple constituencies in this case.

21       As the committee has determined with respect to this

22  motion, the committee that's been appointed is large, is

23  diverse, as we can best tell represents the complete panoply of

24  unsecured creditor interests in this case.  And we believe that

25  the official committee provides the appropriate vehicle through

46

1    which the interests of unsecured creditors can be expressed.

2    To the extent there is opposition, we believe Mr. Richman and

3    others have already demonstrated an ability to raise those

4    oppositions.  And we believe the merits of those positions can

5    and will be heard by the Court when the 363 sale motion is

6    considered next week.

7            For all of those reasons, Your Honor, the official

8    committee believes that the motion that's currently being heard

9    should be denied.

10           THE COURT:  Okay.

11           MR. ECKSTEIN:  Thank you.

12           THE COURT:  I think I've now heard from everybody

13   who's filed papers on this matter.  Do I have somebody who

14   didn't file papers who's rising to be heard?

15           MR. FELDMAN:  Yes, Your Honor.  David Feldman, Gibson

16   Dunn on behalf Wilmington Trust.

17           THE COURT:  All right.  Mr. Feldman, considering all

18   the talk that's been made about your client, I think I'd like

19   to hear what you have to say.

20           MR. FELDMAN:  Good afternoon, Your Honor.  Again,

21   David Feldman, Gibson Dunn & Crutcher on behalf of Wilmington

22   Trust, the indentured trustee for more than twenty-three

23   billion dollars of the bonds in this case.

24           I don't want to repeat much of what Mr. Eckstein has

25   already gone through but let me confirm a few items.

47

1    Wilmington Trust, like the official committee of unsecured

2    creditors does not have an objection deadline, a response

3    deadline until tomorrow at noon.  We have been in careful

4    consideration of the motion that has been filed, have been in

5    detailed and ongoing and extensive conversations with the

6    committee, with the committee's legal and financial advisors,

7    with the other ad hoc committee of bondholders and their

8    advisors as well as receiving calls from numerous individual

9    bondholders that have come into my client and into my firm.

10          I know the one constituency that has not reached out

11   to us in any capacity is Mr. Richman or his client.  But

12   frankly, our objection deadline is not until tomorrow and we'd

13   be happy to speak to them as well.  We have, in fact, read

14   their pleading and understand their positions.  But there are,

15   obviously, in this case many, many bondholders.  We represent

16   from the largest financial institution to the thousands and

17   thousands of Americans who hold these bonds in their individual

18   capacity.

19          Wilmington Trust understands its fiduciary duty to its

20   full constituency and is taking that fiduciary duty very, very

21   carefully -- is taking that fiduciary duty very, very

22   seriously, both as indentured trustee for the bondholders and

23   as a member and chairperson of the official creditors'

24   committee.

25          A couple of other points that I'd like to make.  There

48

1    was some allusion, in Mr. Richman's comments, to some

2    predetermination on the part of the various players.  Again, we

3    haven't filed a pleading in this case.  Frankly, our

4    involvement and discussions with the various parties in this

5    case about the sale motion, about the structure of this case,

6    really didn't fully engage until after the deal had been baked

7    and the deal had been filed.  So Wilmington Trust certainly was

8    not a party to that process beforehand.

9         So Your Honor, I guess the point that I would leave

10   with, and this is an issue that we did discuss at some length

11   with the United States Trustee when we were appointed to the

12   committee, is that we have an independent and objective duty to

13   represent all of our constituents.  Frankly, our indenture

14   speaks to the notion that we consider not only what the

15   majority would like to do, and I'll pause there for a moment

16   because I'll note while much has been made about whether and to

17   what extent Paul Weiss and that ad hoc group represents a

18   majority of bondholders.  I will say that to date we've not

19   been instructed by any majority to take any position, one way

20   or the other.  And we have, in fact, in our view, all actions

21   that we've taken to date and will take in the case, unless and

22   until instructed by a majority, will be in an exercise of our

23   objective assessment of the situation and the facts and the law

24   at hand.

25        I will note, though, even if we were to receive a

49

1    direction by the majority of the bondholders in any particular

2    issuance, based on our indentures we don't always have to

3    follow the direction of the majority.  We have the ability --

4    we're governed by two different indentures and certainly under

5    our ninety-five indenture, which is the great bulk of where our

6    bonds sit, we have the ability to consider not only what the

7    majority of people would like to do but also the minority

8    holders.  And we take, again, our obligations and the

9    provisions set forth in our indentures very seriously and we've

10   carefully considered all the issues.  And we will take whatever

11   position we will take in connection with tomorrow's deadline or

12   whatever deadline ultimately is applicable to Wilmington Trust

13   as indentured trustee.

14          Thank you, Your Honor.

15          THE COURT:  Okay.  Thanks.

16          MS. CHRISTIAN:  Jennifer Christian --

17          THE COURT:  I can't hear you but I will invite you to

18   come on up.

19      (Pause)

20          THE COURT:  Forgive me.  Would you mind introducing

21   yourself again, please?

22          MS. CHRISTIAN:  Yes, Your Honor.  Jennifer Christian

23   of Kelley Drye & Warren for Law Debenture Trust Company of New

24   York, the indentured trustee.

25          THE COURT:  Your last name again, please.

50

1          MS. CHRISTIAN:  Christian.

2          THE COURT:  Okay.  Thank you.  Go ahead,

3     Ms. Christian.

4          MS. CHRISTIAN:  We represent Law Debenture the

5     indentured trustee for the debtor's revenue bonds.

6          THE COURT:  Okay.

7          MS. CHRISTIAN:  Your Honor, as Wilmington's counsel

8     stated, as Wilmington does, Law Debenture takes its fiduciary

9     duties very seriously, both with respect to its holders and

10    with respect to the general unsecured creditors.  Law

11    Debenture, too, is a member of the unsecured creditors'

12    committee.  We'd just like to address some of the comments that

13    were raised by Mr. Richman.

14         First of all, we represent all the bondholders under

15    the indenture, not just one subset or another.  And the

16    indentured trustee is ready, willing and able to listen to its

17    holders and the subset of holders and make any arguments that

18    it deems appropriate before the Court.  But we were not

19    contacted by these holders or their counsel and we just wanted

20    to make that clear.

21         Mr. Richman also alluded to some predetermination that

22    Wilmington -- excuse me, that Law Debenture had made in

23    connection with the transaction and that is, in fact, not the

24    case.  And in fact Wilmington is a successor trustee and became

25    involved in the case shortly after it was filed.

51

1          So we just wanted to clarify some of those comments

2     that were made for the record.

3          THE COURT:  Okay.

4          MS. CHRISTIAN:  Thank you very much.

5          THE COURT:  Thanks.  All right.  I'll take reply from

6     Mr. Richman and any surreply from anybody else.  In each case,

7     limited to the stuff that was brought up ahead of you.

8          MR. RICHMAN:  Thank you, Your Honor and thank you for

9     the comments you made from the bench before, I appreciate it.

10    In this courtroom today I know I'm not very popular.

11         I think that listening to the comments that were made

12    by the indentured trustee, both of them, and the committee it

13    keeps in my mind resounding to the point I made in my opening

14    which is that yes we have representation on the committee but

15    no it's not adequate.  And I wasn't intending to accuse the

16    indentured trustees of breaching their duties but it's quite

17    clear, when one listens to how they approach their duties in

18    this case, that giving adequate representation to this distinct

19    route of small bondholders, non-institutional bondholders, who,

20    in numbers, are far, far in excess of the institutional

21    bondholders who reportedly supported the government's plan and

22    are represented by Paul Weiss and the ad hoc committee.  It's

23    quite clear that they can't be said to be adequately

24    representing, and I thought it was revealing that neither of

25    them indicated that they would object.  And while they said we

52

1    didn't get in touch with them, they've had our papers and I'm

2    sure they've read them.

3           And I was, in fact, a little distressed to hear from

4    the committee that they have been communicating on a regular

5    basis with the ad hoc committee and other constituencies that

6    aren't on their committee.  But again, knowing our position no

7    one has actually reached out to us and tried to do anything to

8    accommodate our positions in the process.

9           Again, it says to me that while -- and I didn't say

10   that the creditors' committee wasn't functioning; I just said

11   in the circumstances any representation of this particular

12   group could not be adequate.

13          The ad hoc committee, the report that some fifty

14   percent or fifty-four percent support the government's plan, I

15   have to tell Your Honor, that in the same way that I was

16   stopped for putting hearsay in the record, there's been no

17   verification of that in any source that I've read.  And I've

18   seen numerous press accounts of it but I've seen no tally of it

19   nor methodology for tallying it or any other way of

20   understanding how it's reliable.  But people keep using it and

21   referring to it as though that means that other bondholders

22   should stand down because the majority support it.  That's just

23   not evidence that is of record anywhere that I've been able to

24   tell.

25          Obviously I did not know that an extension had been

53

1   given to the creditors' committee or to the trustees until

2   tomorrow.   I wish somebody had told me that but I did not know

3   that.

4          Lastly, going back to Mr. Miller's comments, I think

5   the argument that he made with the most vigor was a concern

6   that the policy we were articulating or the rule we wanted Your

7   Honor to follow was that any time there's a group that has a

8   disagreement of position with a creditors' committee that you

9   should appoint an additional committee.   I thought I was pretty

10  clear that we were not saying that.   This is a unique case.

11  The 363 transaction is the case.   This is not just a motion in

12  passing where we have a difference in judgment from the

13  committee.   The whole case is predetermined if the 363

14  transaction goes forward.   And therefore, in the very unique

15  circumstances of this case it is not just a difference of

16  opinion but it is, again, the central question of adequate

17  representation.

18         The positions that the official committee and the

19  indentured trustees take or don't take, with respect to this

20  very transaction is the entirety of the case, that's what makes

21  this difference and that's why the fact that we do have a very

22  substantive point of view that has not been put on the record

23  and not been followed by any constituency that we can see,

24  although there seem to be tons of individuals that are making

25  similar arguments in a dispersed way, we haven't seen

54

1    representation of that important position or voicing of that

2    opposition or any suggestion that Your Honor will be given a

3    vigorous opposition to this on June 30 and thereafter in the

4    record.

5         My last point, I'm not and I did not suggest, in fact

6    Your Honor asked me this directly; I didn't say ignore the six

7    factors, what I said was that they need to be construed in the

8    context of what the statute says, which is why I draw it back

9    to adequate representation.  And I believe that in my opening

10   presentation I did argue and demonstrate that as to those

11   factors, in the unique circumstances of this case plus what I

12   think for this case is another factor; those six factors are

13   not exclusive.  The very important public interest and benefits

14   to the administration of justice and transparency in a process

15   like this, which is so unusual none of us has ever seen it

16   before and we may never see it again.  It is very, very

17   unusual, so important that it be done with transparency so that

18   the people, and particularly the bondholders, the trustees told

19   about the calls and e-mails they've been getting, I've been

20   getting them too.  This isn't just about fees and expenses it's

21   also about an ability to be able to say to the bondholder world

22   yes your rights are being protected.

23        I got calls and e-mails from people who only heard

24   that there was an objection deadline by a notice that they got

25   after the deadline and they don't know what to do.  And I can't

55

1    give them individual advice.  I can't have attorney/client

2    relationships with 1,500 bondholders.  But if there was an

3    official committee, we could communicate with them through the

4    web, through internet sites.  We could tell them we're speaking

5    for you; we're giving voice to your grievances; your rights

6    will be protected.  We may not prevail but we will speak for

7    you.  That's a very important distinction existing in this case

8    that so far as I know has not existed in any of the others,

9    Your Honor.

10         Thank you.

11         THE COURT:  Okay.  Thank you.  Everybody had a chance

12   to speak their peace, Mr. Miller.

13         MR. MILLER:  If Your Honor please, there's an old

14   maxim that says, when you don't have the law and you don't have

15   the facts then argue policy and that's exactly what Mr. Richman

16   is doing, Your Honor.  He can't make a case under the

17   applicable, principals of law and apply it for the appointment

18   of additional committee.

19         And basically, if you listen carefully, what Mr.

20   Richman is saying that if the official committee doesn't object

21   then it doesn't adequately represent the bondholder community.

22         Now we've heard from the representatives of the two

23   indentured trustees saying explicitly that each indentured

24   trustee has an obligation, a fiduciary obligation, to represent

25   all of the bondholders, whether they're institutional or

56

1    whether they're individuals.  And that's what the indentured

2    trustees are doing, Your Honor.

3         Saying that I believe that the official committee is

4    not going to file an objection to the 363 transaction

5    automatically requires the appointment of an additional

6    committee, Your Honor, is just inconsistent with all of the

7    applicable principles of law.  And it's not that there will be

8    no voice, Mr. Richman has a bold, clear voice.  He has filed

9    papers.  He will be able to present whatever position the three

10   members of his ad hoc committee want to present.

11        As so far as other creditors are concerned, Your

12   Honor, there are numerous websites, there are numerous places

13   where creditors can go and there has been a lot of dialogue and

14   a lot of contact by other debenture holders.  There is nothing

15   in this record, Your Honor, that shows that this official

16   committee does not adequately represent all of the bondholders.

17   There are bondholder representatives on this committee.  It's

18   consistent with everything that's been done in this district

19   for the last fifteen years.  And there's nothing in this

20   record, other than the rhetoric which Mr. Richman alludes to

21   about the integrity of the court and the transparency.

22        The Bankruptcy Code has a process, Your Honor.  It

23   prescribes the appointment of a representative committee.  And

24   what the U.S. Trustee did in this case is appoint a committee

25   of the different kinds of claims involved in this case and that

57

1    committee adequately represents the interest of all the

2    unsecured creditors.  And there's nothing else that has been

3    presented to this Court today that would change that fact, Your

4    Honor.   Mere rhetoric about transparency does not sustain the

5    burden of proof which is on the movants, Your Honor.  And

6    therefore this motion should be denied, Your Honor.

7         THE COURT:  All right.  Thank you.  All right.  Folks,

8    we're going to take a recess and I would like you all back by

9    twenty of four.  We're in recess.

10        (Recess from 3:20 p.m. until 4:10 p.m.)

11        THE COURT:  I apologize for keeping you all waiting.

12   In these jointly administered cases under Chapter 11 of the

13   Bankruptcy Code an ad hoc committee, identifying itself as the

14   ad hoc Committee of Family and Dissident GM Bondholders, moves

15   for an order of this Court appointing an additional official

16   committee to represent unsecured bondholders.

17        Its motion is opposed by the debtors, the Office of

18   the United States Trustee and the creditors' committee.  The

19   United States Trustee, raising institutional concerns, also

20   asked me to defer deciding the motion by reason of a threshold

21   issue pending implementation of promised debtor compliance by

22   the ad hoc committee with the requirements of Federal Rule of

23   Bankruptcy Procedure 2019.

24        For reasons I'll articulate hereafter, I believe that

25   the motion can and should be decided today.  And on the merits,

58

1    the motion is denied.  The following are my findings of fact,

2    conclusions of law and bases for the exercise of my discretion

3    in connection with this determination.

4         As facts, I find that on June 3, 2009, two days after

5    the commencement of the instant Chapter 11 cases, the U.S.

6    Trustee appointed an official committee of unsecured creditors

7    of the type that we usually see in medium and large Chapter 11

8    cases.  Before appointing the committee, the U.S. Trustee

9    interviewed perspective members and inquired as to who was

10   interested in serving.  The creditors' committee, as appointed

11   by the U.S. Trustee, was about twice as large as is typical in

12   our larger Chapter 11 cases and has fifteen members.

13        GM has creditors of many different types and so does

14   the creditors' committee.  The creditors' committee's fifteen

15   members, as appointed by the U.S. Trustee, include the PBGC,

16   which is the guarantor of GM's pension plans; three unions,

17   which are collective bargaining representatives for GM

18   employees; two supplier creditors; a trade service creditor,

19   three dealers; two tort claimants; an asbestos claimant and, as

20   relevant here, Wilmington Trust Company and Law Debenture Trust

21   Company the indentured trustees for all of GM's bonds,

22   including the bonds that the ad hoc committee members hold

23        Both indentured trustees have stated, unequivocally,

24   that their legal and fiduciary obligations to all bondholders

25   are in no was circumscribed by any decisions that have been

59

1   made or may be made by individual bondholders, including the

2   apparent but not yet definitely established decision by a

3   majority of the bondholders to support the proposed sale of

4   substantially all of the debtor's assets.

5          Counsel to the ad hoc committee has advised the U.S.

6   Trustee's office that none of the ad hoc committee's members

7   wish to serve on the official creditors' committee.

8          On June 9, 2009, the ad hoc committee asked the U.S.

9   Trustee to appoint a separate, additional committee of

10  unsecured bondholders.  However, after considering the request

11  the U.S. Trustee declined to do so.

12         Based on the undisputed facts set forth in the motion

13  papers and the ad hoc committee's failure to give me any

14  further evidence that would cause me to come to a different

15  view, I find that the official committee, especially since it

16  has the two indentured trustees, adequately represents the

17  interests of all unsecured creditors of the debtors.  I have

18  seen no evidence and have no reason to believe that the

19  interests of bondholders wouldn't be satisfactorily represented

20  by the official committee or especially the two indentured

21  trustees.

22         I further find that the ad hoc committee is free to

23  appear and be heard on any issue in this case, without having

24  been designated as an official committee.  And that the quality

25  of its representation has been highly capable and vigorous.

60

1    But especially in light of that, I also must and do make

2    another finding of fact.  The conclusion is inescapable that

3    the ad hoc committee is making this request because it wants

4    the estate, which means as a practical matter all of GMs other

5    creditors to pay its legal fees and the costs for any financial

6    advisors the ad hoc committee might wish to retain.

7           I finally find, as a mixed question of fact and law

8    for reasons I'll address momentarily, that the appointment of

9    an additional official committee of bondholders in this case is

10   not necessary to assure adequate representation of creditors or

11   of the subset of creditors or bondholders.

12          Turning, now, to my conclusions of law and the bases

13   for the exercise of my discretion in connection with this

14   determination.  First on the threshold issue raised by

15   Mr. Masumoto on behalf of the U.S. Trustee.  Mr. Masumoto

16   properly comments on the importance of Bankruptcy Rule 2019 and

17   the need to comply with it.  And he's also right when he says

18   or implies that the last thing we want to do is to permit

19   people to say that they speak for other people when they fail

20   to comply with Bankruptcy Rule 2019.

21          But here Mr. Richman has stated that he'll supplement

22   his earlier submission to comply, and he's a man of his word.

23   The issues before me are otherwise capable of determination

24   today.  In the exercise of my discretion, where I've received

25   assurances that the deficiencies in compliance will be promptly

61

1    remedied, I think I should decide the issues today.

2           Turning, then, to the merits.  Section 1102(a)(1) of

3    the Code provides "Except as provided in paragraph 3, as soon

4    as practicable after the order for relief under Chapter 11 of

5    this title, the United States Trustee shall appoint a committee

6    of creditors holding unsecured claims and may appoint

7    additional committees of creditors or of equity security

8    holders as the United States Trustee deems appropriate."

9           Subsection 2 of 1102(a) goes on to say that "On

10   request of a party in interest, the Court may order the

11   appointment of additional committees of creditors or of equity

12   security holders if necessary to assure adequate representation

13   of creditors or of equity security holders."

14          As the U.S. Trustee observes, and as would follow from

15   the use of the word "may" in 1102(a)(2) the statutory scheme,

16   as implemented in Section 1102(a) gives the Court the

17   discretion to order the appointment of an additional unsecured

18   creditors' committee if necessary to assure adequate

19   representation of a separate group of unsecured creditors.

20          But the appointment of an additional committee, under

21   Section 1102(a)(2) is considered an extraordinary remedy.  See,

22   In re Enron Corporation 279 B.R. 671 (Bankr. S.D.N.Y. 2002)

23   decision by my colleague Judge Gonzales, affirm 2003 U.S.

24   Distr. Court LEXIS 18-149 (S.D.N.Y. October 9, 2003); In re

25   Dana Corp. 344 B.R. 35, pg. 38, decision of the Bankruptcy

62

1    Court, my colleague Judge Lifland in 2006.  And as I noted, the

2    issue is within the discretion of the Bankruptcy Court.

3        Now we had some colloquy with respect to how I should

4    make that discretionary determination, especially after

5    Mr. Richman's clarifications, I think we now all agree that

6    while we bankruptcy judges start with the words of the statute,

7    as I've just done, we also make determinations based upon

8    applicable case law that imposes requirements, standards or

9    factors to consider beyond those that emerge beyond the bare

10   words of the statute.  That's especially true where decisions

11   are discretionary and courts have articulated factors for other

12   courts to consider.

13       Those factors aren't always exclusive, in fact they

14   typically aren't but we judges routinely apply the factors that

15   have been applied in cases before us.  Examples -- by way of

16   examples and there are many of them include the Sonax factors

17   for relief from the stay.  Here the case law, much of it in

18   this district, whereas I've stated in writing before,

19   consistency is very important, lays out many underlying

20   standards and factors for courts deciding motions of this

21   character to apply.  Specifically, in requesting an additional

22   committee the applicant has the burden of proving that the

23   appointment of an additional committee is necessary to insure

24   adequate representation of the moving party.  See Enron 279

25   B.R. 685; In re Dow Corning Corp. 194 B.R. 121 decision of the

63

1    Bankruptcy Court in the Eastern District of Michigan, 1996,

2    reversed on other grounds 212 B.R. 258, District Court decision

3    out of the Eastern District of Michigan in 1997.

4         Likewise, the party seeking the appointment of an

5    additional committee bears the burden of demonstrating that its

6    interests are not adequately represented.  See In re Winn-Dixie

7    Stores, Inc. 325 B.R. 853 p. 857, decision of the

8    (Bankr. MD Fl) in Jacksonville, as best I recall, in 2005.

9         In most cases only one committee of unsecured

10   creditors is appointed which committee generally represents the

11   best compromise of adequate representation, efficiency and

12   economy.  See, for example, In re Sharon Steel Corp., 100 B.R.

13   767, (Bankr. WD Pa, 1989).

14        As all parties, including the movants, seem largely to

15   agree, the determinative factors in considering the adequacy of

16   representation by an official committee of unsecured creditors

17   have included (1) the ability of the committee to function; (2)

18   the nature of the case; (3) the standing and desires of the

19   various constituencies; (4) the ability for creditors to

20   participate in the case even without an official committee and

21   the potential to recover expenses pursuant to Section 503(b)(3)

22   of the code; (5) whether different classes may be treated

23   differently under a plan and thus need representation; (6) the

24   motivation of the movants; (7) the cost that would result if

25   the Court grants the motion and (8) the task that a committee

64

1    or separate committee is to perform.  See, for example, Enron,

2    Winn-Dixie, Dana.

3         This has been held to be a non-exclusive list, thus a

4    court may consider other factors in exercising its discretion

5    as well.  See, for example, Dana 344 B.R. 38.  No one factor is

6    dispositive and the amount of due consideration given to each

7    depends on the circumstances of the particular Chapter 11 case.

8    See, for example, Dana 344. B.R. 38.

9         Turning now to those factors, the first is the ability

10   of the committee to function.  There has been no showing that

11   this creditors' committee can't function.  There has been no

12   proof or any other indication by way of example, that the

13   committee has been deadlocked, has been unable to gather up a

14   quorum or has had so much discord that it couldn't do its job.

15   And it includes, amongst its members, two highly experienced

16   indentured trustees who have confirmed that they know their

17   fiduciary responsibilities and will comply with them.

18        The second factor is the nature of the case.  The ad

19   hoc committee asserts that the large size of this case warrants

20   the appointment of an additional committee of unsecured

21   creditors, and that's simply not so.  A similar argument was

22   made and rejected in Dana, see 344 B.R. 39.  And in Adelphia,

23   for example, on my watch which involved about seventeen billion

24   dollars in debt and where there was significant interdebtor and

25   intercreditor disputes, we still had one creditors' committee.

65

1    Of course, individual creditor groups have different

2    perspectives and believe me I heard about them but we still had

3    only one committee.

4         In Dana the Court rejected the argument made by the

5    moving party that because it had only one representative on the

6    Dana committee the other members of that committee would be

7    dominant and would overpower their representative.  The Dana

8    court reminded parties that the different interests of the

9    membership of a statutory committee need not be aligned and

10   that the presence of potential conflicts among the different

11   interests of committee members does not necessitate the

12   appointment of additional creditors' committees to provide

13   adequate representation.

14        In fact, a point that was made to me in argument is

15   both correct and noteworthy.  It's not uncommon in Chapter 11

16   cases, particularly large ones, for individual creditors or ad

17   hoc committees of creditors to differ with the official

18   creditors committee as to the desirability of future courses of

19   action.

20        In fact, I can think of very few cases, among those on

21   my watch, where there wasn't a disagreement of that character.

22   But that doesn't equate to a basis for the conclusion that

23   creditors or creditors of a different class aren't being

24   properly represented nor does it dictate the appointment of

25   different committees to fund the articulation of the differing

66

1    views.

2         Mr. Richman, recognizing that general rule said that

3    this case was special but I cannot agree because creditors'

4    committees, by their nature and by the efforts of U.S. Trustees

5    doing their jobs, reflect different perspectives by design,

6    individual creditors will have different perspectives than the

7    official committee in many, if not the majority, of Chapter 11

8    cases.  But in the absence of much more that has not been

9    regarded as a basis for appointment of additional committees.

10        The issue is whether the official committee is

11   representative of the different kinds of unsecured creditor

12   claims involved in the Chapter 11 cases.  We plainly have that

13   here.  It's well established that the membership of an official

14   committee need not be an exact replica of the creditor body.

15   See, for example, Dana 344 B.R. 39; Enron 279 B.R. 690 and

16   Hills Stores 137 B.R. 4, p. 7, another decision in this

17   district, 1992.

18        The next factor is the standing and desires of the

19   constituencies.  Of course the ad hoc committee has standing to

20   be heard, that's a right it has under Section 1109 of the Code.

21   And the ad hoc committee doesn't need to be appointed as an

22   official committee to achieve that end.  And it doesn't need

23   the appointment of others to put forward its views as it's free

24   to assert them itself.

25        Then turning to a movant's desires, of course they

67

1    can't be determinative because everyone wants to fight their

2    fights using someone else's money.  And while the ad hoc

3    committee's desires may be different then those of many of the

4    other bondholders, perhaps the majority though the number at

5    this point doesn't matter, bondholders still hold the same

6    bonds and there's no showing that the indentured trustees lack

7    the intention or ability to do their jobs.

8         The next factor is the ability to continue

9    participating and recover costs.  Well, we've already discussed

10   the ability of the ad hoc committee to continue participating

11   in this case and as we've all seen, the ad hoc committee is

12   represented by competent counsel and it hasn't hesitated to

13   participate in this case.  It's free to continue to do so as it

14   considers appropriate.  If it does, I'll be considering its

15   views, just as I did today, as I'll be considering the views of

16   every other stakeholder in this case.  Likewise, if at the end

17   of the case the members of the ad hoc committee believe they've

18   made a substantial contribution, they'll be free to file a

19   request under 503(b).

20        As the debtors have argued, the ad hoc committee's

21   request is, in substance if not also in every respect, an

22   effort to make someone else pay their fees.  But when requests

23   of that nature are made and people say that the fees will thus

24   have to be absorbed by the debtors, what they're really saying

25   is that the fees will have to be absorbed by other creditors.

68

1    Unfortunately, we bankruptcy judges not infrequently see

2    efforts by creditors to litigate on someone else's dime.  But

3    as the many cases I've noted above hold, we permit that only in

4    extraordinary circumstances.  Here the cost of one or more

5    additional committees can be substantial since the appointment

6    is closely followed by applications to retain attorneys and

7    accountants, see Dow Corning 194 B.R. 143.  The additional cost

8    that would result from this request cannot here be justified.

9         The next factor is whether different classes may be

10   treated differently.  This factor, too, dictates against the

11   formation of a separate committee.  I've seen no indication

12   that the debtors propose to treat different groups of

13   bondholders differently.

14        The next factor is the motivation of the movants.

15   Well, that seems to be pretty clear.  The movants seemingly

16   want two things, more money paid out on their claims and they

17   want the estate, that is other creditors, to pay their legal

18   fees.  Neither of these is unusual in Chapter 11 cases but

19   neither is a satisfactory basis for appointing another official

20   committee.

21        The next factor is the costs incurred by the

22   appointment of additional committees, and I've already talked

23   about this.  While I'd agree that costs here wouldn't be as

24   great if they would be -- if anyone contemplated a Chapter 11

25   case that would go on for many months or years, I still require

69

1    costs, as a meaningful concern, and this is nevertheless an

2    incremental cost.  And history has told us that when somebody

3    else is paying the expenses, spending restraint seems to go out

4    the window.  Once more, we don't give out the power to run up

5    such expenses except in extraordinary circumstances.

6           The last factor that's been identified in the case law

7    is other considerations.  But given that all of the factors

8    I've addressed so far so overwhelmingly weigh against forming

9    another official committee, I don't need to consider the

10   additional point that the debtors made, that the appointment of

11   another official committee would slow down a case which some,

12   perhaps many, parties in this case wish to move very quickly.

13          For the foregoing reasons, the motion is decided today

14   and is denied on the merits.  Mr. Masumoto you or your office

15   is to prepare an order in accordance with the foregoing -- to

16   settle an order, two days notice.

17          Am I correct that we have no further business for

18   today?

19          MR. MILLER:  Correct, Your Honor.

20          THE COURT:  We're adjourned.  Have a good day.

21          MR. MILLER:  Thank you, Your Honor.

22          MR. RICHMAN:  Thank you, Your Honor.

23       (Proceedings Concluded at 4:35 p.m.)

24

25

70

1

2                              I N D E X

3

4                             RULINGS

5                                        Page        Line

6    Motion to Appoint Official Committee    57          25

7    Of Family & Dissident GM

8    Bondholders, Denied

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

71

1

2                         C E R T I F I C A T I O N

3

4    I, Pnina Eilberg, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _____

8    Pnina Eilberg

9    AAERT Certified Electronic Transcriber (CET**D-488)

10

11   Veritext LLC

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  June 24, 2009

17

18

19

20

21

22

23

24

25