```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
In re                                                                    :   Chapter 11
                                                                         :
General Motors Corporation, et al.,                                      :   Case No. 09-50026 (REG)
                                                                         :
                                              Debtors.                   :   (Jointly Administered)
                                                                         :
------------------------------------------------------------------------ X
```

## DECLARATION OF DAVID CURSON

I, David Curson, do hereby declare that the following is true to the best of my knowledge:

1. I am Director of Special Projects and Economic Analysis for The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO (the "**UAW**"), the collective bargaining representative of approximately 61,000 of the unionized hourly workers of GM.[1] More than 475,000 GM retirees, survivors and eligible dependents receive retiree health benefits under collective bargaining agreements between the UAW and GM. Except as otherwise indicated herein, all facts set forth in this declaration are based upon my personal knowledge. I submit this declaration in support of the Sale Transaction (as defined below) and in opposition to the factual assertions contained in objections to the Sale Transaction alleging that it is a sub rosa chapter 11 plan or is otherwise inappropriate under section 363 of the Bankruptcy Code.[2] This declaration is also submitted in support of approval of the UAW Retiree Settlement Agreement and in response to objection letters submitted by individual UAW-represented retirees.

---

[1] All capitalized terms used but not defined herein have the meaning ascribed to them in the **Sale Motion** [Docket No. 92].

[2] 11 U.S.C. § 101 *et seq.*

2. I have been a member of the UAW since I began work as an Apprentice Die Cast Diemaker with the Ford Motor Company ("**Ford**") in the Rawsonville Plant in Ypsilanti, Michigan, in 1970. I have been employed by the UAW at the national office in Detroit, Michigan, for over 22 years. In my present position with the UAW as Director of Special Projects and Economic Analysis, I report directly to Ron Gettelfinger, UAW President. Among other things, my responsibilities include participating in the negotiation of collective bargaining agreements ("**CBAs**") with each of the big three U.S. automobile manufacturers, GM, Ford, and Chrysler LLC (which recently sold substantially all of its assets to Chrysler Group LLC, "**Chrysler**"). Over the course of my career, the UAW has engaged in pattern bargaining with each of GM, Ford, and Chrysler. This means that the CBAs between the UAW and each of the big three are on substantially similar terms. During my career, I have been involved in the negotiation and ratification of at least 12 CBAs with the big three, including at least four with GM.

3. As a result of my current position as Director of Special Projects and Economic Analysis, I am familiar with the relationships among the UAW, its active and retired members, and GM. I was involved in the negotiation and ratification of the prior and current CBAs between the UAW and GM, and am familiar with the establishment in 2007-08 of an independent voluntary employees beneficiary association (the "VEBA") for retiree health benefits and the UAW Retiree Settlement Agreement entered into between the UAW and New GM.

4. The UAW, like all unions, is a brotherhood. Our UAW members make a very serious commitment to each other as union brothers and sisters. A critical part of this commitment is that the active members take care of retired members, and future members will

2

take care of the current members when they retire. Throughout the UAW's history, negotiating for pension, health and other benefits for retired workers and their families has been an important objective in UAW collective bargaining.

5. The contemplated sale, under which GM will sell substantially all of its assets to a new entity ("**New GM**," such transaction, the "**Sale Transaction**"), requires that the UAW agree to certain material changes to the CBAs between the UAW and GM. Pursuant to the Sale Transaction, the VEBA funding obligations were also required to be reduced. Throughout the negotiation process, the UAW consistently said it was willing to consider recommending to its membership material changes to the CBAs. These concessions included reductions in benefits such as job protections that were obtained not just from GM, but also from Ford and Chrysler, over the course of fifty years of collective bargaining between the UAW and the U.S. automobile industry. However, the UAW's consistent position was that retiree benefits must be maintained at an acceptable level.

6. Accordingly, the UAW's approach with regard to the negotiations over modification of the active members' labor agreement was that adequate funding for an acceptable level of retiree health benefits must be part of the package of requirements.

7. One critical factor that the UAW considered during the negotiation process was the ability of New GM to fund the VEBA. The UAW did not want to enter into an agreement with New GM if debt and equity that the VEBA would receive from New GM would be insufficient to fund retiree benefits. The UAW retained a financial advisor to assist in valuing the debt and equity that would fund the VEBA.

3

8. Although some reductions in retiree health benefits will occur in the near term under the UAW Retiree Settlement Agreement with New GM, we were able to preserve a core plan of benefits.

9. Importantly, the VEBA will not only fund benefits for current retirees, but will also fund benefits for active employees when they retire.

10. Given the commitments that I and my union brothers and sisters have to retired members, I would not and could not have recommended amended CBAs if health benefits for retirees were not protected. Moreover, even if union leadership had recommended amended CBAs where there was no protection of retiree health benefits, I strongly believe that those CBAs would not have been ratified by the active members. To the contrary, without agreement with New GM on retiree health benefits, I believe the UAW would have recommended and UAW members would have voted to authorize a strike.

11. When UAW members vote to approve a CBA, they do so through a voting process called "ratification." Under the UAW's Constitution, CBA modifications that are negotiated must also be ratified. The UAW's Constitution provides only for ratification by active members; retired members do not vote.

12. To obtain ratification of a CBA, the UAW prepares, in the ordinary course of its business, an information package that is sent to members soliciting votes. I was involved in the drafting of the solicitation materials for the new CBAs that would be assumed by GM and assigned to New GM as part of the Sale Transaction. The solicitation materials provided to our union brothers and sisters as part of the ratification process for the amended CBAs make clear that the UAW required these retiree-related arrangements with the VEBA as part of the negotiations for the amendments to the CBAs. The solicitation package contained a description

4

of the revised funding arrangements for retiree health benefits through the UAW Retiree Settlement Agreement. In particular, active members were sent a summary of the terms of the modifications to the CBAs, a copy of which is attached as <u>Exhibit A</u> (the "**Summary**"). That Summary includes a description of the arrangements with New GM for funding the VEBA, as well as a description of the contemplated changes in benefit levels under the plan. There was also made available at each union local a white book with the detailed terms of the CBA amendments, a copy of which is attached as <u>Exhibit B</u> (the "**White Book**"). The White Book included a VEBA modification termsheet that outlined the principal terms that form the basis of the UAW Retiree Settlement Agreement.

13.     Having received these solicitation materials, GM UAW members voted to ratify the amendments to the CBAs on May 29, 2009. Seventy-four percent of production workers and seventy-four percent of skilled-trades workers voted in favor of ratification.

14.     As a result, if the Sale Transaction is approved, New GM will receive the benefits of the amended CBAs, which will facilitate the smooth transition of operations from GM to New GM.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2009.

/s/David Curson
David Curson