**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x
                                                          ::
In re:                                                    ::    Chapter 11
                                                          ::    Case No. 09-50026 (REG)
General Motors Corporation, *et al.*,                     ::
                                                          ::    (Jointly Administered)
                                          Debtors.        ::
-------------------------------------------------------------------- x

**FINAL ORDER PURSUANT TO BANKRUPTCY**
**CODE SECTIONS 105(a), 361, 362, 363, 364 AND 507 AND BANKRUPTCY**
**RULES 2002, 4001 AND 6004 (A) APPROVING A DIP CREDIT FACILITY**
**AND AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING**
**PURSUANT THERETO, (B) GRANTING RELATED LIENS AND SUPER-PRIORITY**
**STATUS, (C) AUTHORIZING THE USE OF CASH COLLATERAL AND (D)**
**GRANTING ADEQUATE PROTECTION TO CERTAIN**
**PRE-PETITION SECURED PARTIES**

THIS MATTER having come before this Court by the motion dated June 1, 2009

(the "**Motion**") of General Motors Corporation ("**GM**") and its affiliated debtors in the above-

captioned cases, as debtors and debtors-in-possession (collectively with GM, the "**Debtors**"),[1]

seeking, among other things, entry of a final order (the "**Final Order**"):

        (i)      Authorizing the Debtors, pursuant to sections 105, 362, 363 and 364 of

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001 and 6004

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001

of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Bankruptcy Rules**"), to enter into the Secured Superpriority Debtor-in-Possession

Credit Agreement, by and among GM, as borrower, and The United States Department of

the Treasury ("**U.S. Treasury**") and Export Development Canada ("**EDC**"), as lenders

---

[1]   The Debtors in these cases include: GM, Saturn, LLC, Saturn Distribution Corporation, and
Chevrolet-Saturn of Harlem, Inc.

(together, the "**DIP Lenders**"), in substantially the form annexed hereto as <u>Exhibit 1</u> (as the same may be amended, supplemented, restated or otherwise modified from time to time, and together with all related agreements and documents, the "**DIP Credit Facility**"), and to obtain post-petition financing on a secured and super-priority basis pursuant to the terms and conditions thereof, up to a maximum aggregate amount of $33.3 billion (the "**Commitment**");

(ii)    Authorizing the Debtors to execute and deliver the DIP Credit Facility and to perform such other acts as may be reasonably necessary or desirable in order to give effect to the provisions of the DIP Credit Facility, including the unconditional, joint and several guaranty of the obligations of GM under the DIP Credit Facility by each other Debtor (each, a "**Guarantor**", and collectively, the "**Guarantors**");

(iii)    Providing, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, that all obligations owing to the DIP Lenders under the DIP Credit Facility shall be accorded administrative expense status in each of these cases, and shall, subject only to the Carve-Out (as defined below), have priority over any and all other administrative expenses arising in these cases; <u>provided</u>, <u>however,</u> that subsequent to the closing of the Related Section 363 Transactions (as defined in the DIP Credit Facility), claims against the Debtors' estates that have priority under Sections 503(b) or 507(a) of the Bankruptcy Code, including costs and expenses of administration that are attendant to the formulation and confirmation of a liquidating chapter 11 plan, whether incurred prior or subsequent to the consummation of the Related Section 363 Transactions (the "**Old GM Administrative and Priority Claims**") shall have priority over such obligations (up to the aggregate amount of $950,000,000; <u>provided</u>, <u>however</u>, that any greater amount shall

be subject to approval by the DIP Lenders) owing to the DIP Lenders under the DIP

Credit Facility; and

(iv)    Granting the DIP Lenders security interests in and liens on (the "**DIP**

**Liens**") all property and assets of each of the Debtors, of every kind or type whatsoever,

including tangible, intangible, real, personal or mixed, whether now owned or hereafter

acquired or arising, wherever located, all property of the estates of each of the Debtors

within the meaning of section 541 of the Bankruptcy Code and all proceeds, rents and

products of the foregoing, (including all avoidance actions arising under chapter 5 of the

Bankruptcy Code and applicable state law except avoidance actions against the

Prepetition Senior Facilities Secured Parties (as defined below)) with the exception of (a)

any stocks, warrants, options or other equity interests issued to or held by any Debtor

pursuant to the Related Section 363 Transactions (the "**New GM Equity Interests**"), (b)

any leasehold interest of the Debtors in (i) the real property located at and commonly

known as 301 Freedom Drive, City of Roanoke, Denton County, Texas or (ii) the real

property located at and commonly known as 475 Brannan Street, City and County of San

Francisco, California; and (c) certain Excluded Collateral (as defined in the DIP Credit

Facility) (collectively, "**Property**") as follows:

(A)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, perfected,

first-priority security interests in and liens on all Property that is not

subject to non-avoidable, valid and perfected liens in existence as of the

Petition Date (as defined herein) (or to non-avoidable valid liens in

existence as of the Petition Date that are subsequently perfected as

permitted by section 546(b) of the Bankruptcy Code), in each case subject

only to (1) the Permitted Liens (as defined in the DIP Credit Facility), (2) the Carve-Out, (3) the adequate protection liens granted in connection with the Prepetition Revolving Credit Agreement pursuant to paragraph 6(b)(1)(x) of the Interim Order (the "**Prepetition Revolving Credit Agreement Order**") Under 11 U.S.C. §§ 105, 361, 362, 363 and FED. R. BANKR. P. 2002, 4001 And 9014 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Revolver Secured Parties and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "**Prepetition Revolving Credit Agreement Adequate Protection Liens**"), and (4) the adequate protection liens granted in connection with the Prepetition Term Loan Agreement pursuant to paragraph 5(b)(i) of the Interim Order (the "**Prepetition Term Loan Facility Order**", and together with the Prepetition Revolving Credit Agreement Order, the "**Prepetition Revolving And Term Loan Orders**") Under 11 U.S.C. §§ 105, 361, 362, 363 and FED. R. BANKR. P. 2002, 4001 and 9014 (I) Granting Adequate Protection to Term Loan Secured Parties and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B) (the "**Prepetition Term Loan Adequate Protection Liens**", and together with the Prepetition Revolving Credit Agreement Adequate Protection Liens, the "**Prepetition Revolving And Term Adequate Protection Liens**");

(B)      pursuant to section 364(c)(3) of the Bankruptcy Code, valid, perfected junior security interests in and liens on all Property that is subject to non-

avoidable, valid and perfected liens in existence as of the Petition Date, or to non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code, subject only to the Carve-Out; and

(C)    nothing in this Final Order, the Interim Order or the DIP Credit Facility shall in any way be construed to authorize or permit the DIP Lenders to seek recourse against the New GM Equity Interests at any time.

(v)    Authorizing the application of a portion of the proceeds of the DIP Credit Facility toward payment in full of all principal, interest, letter of credit reimbursement obligations (including obligations to cash collateralize undrawn letters of credit) and other amounts due or outstanding under (A) that certain Term Loan Agreement, dated as of November 29, 2006, among GM, Saturn Corporation and JPMorgan Chase Bank, N.A., as administrative agent, and the lenders party thereto from time to time (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "**Prepetition Term Loan Agreement**") secured by a first-priority lien on certain Property (the "**Prepetition Term Loan Collateral**"), (B) that certain Amended and Restated Credit Agreement, dated as of July 20, 2006, among GM, General Motors of Canada, Limited ("**GMCL**"), Saturn Corporation, Citicorp USA, Inc., as administrative agent, and the lenders party thereto from time to time (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "**Prepetition Revolving Credit Agreement**") secured by a first-priority lien on certain Property (the "**Prepetition Revolving Credit Agreement Collateral**"), and (C) that certain Loan and

Security Agreement, dated as of October 2, 2006, among GM and Gelco Corporation (d/b/a GE Fleet Services) (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "**Prepetition Gelco Loan Agreement**", and together with the Prepetition Term Loan Agreement and the Prepetition Revolving Credit Agreement, the "**Prepetition Senior Facilities**") secured by a first-priority lien on certain Property (the "**Prepetition Gelco Loan Agreement Collateral**", and together with the Prepetition Term Loan Collateral and the Prepetition Revolving Credit Agreement Collateral, the "**Prepetition Senior Facilities Collateral**");

(vi)    Authorizing the Debtors to use cash collateral of the Existing UST Secured Parties (as defined below) (the "**Cash Collateral**");

(vii)    Granting to the Existing UST Secured Parties (as defined below), as adequate protection for the potential diminution in value of their respective liens on and security interests in Property, (A) a claim as contemplated by section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claim**"), which Adequate Protection Claim shall have a priority immediately junior to the Super-priority Claim (as defined below) and <u>pari passu</u> with the super-priority claims granted under the Prepetition Revolving And Term Loan Orders, (B) liens on and security interests in the Property (the "**Adequate Protection Liens**"), only to the extent of and on account of any diminution in the value of the Existing UST Secured Parties' interests in the Debtors' interests in the Property on and after the Petition Date, which Adequate Protection Liens shall have a priority immediately junior to the DIP Liens on the Property, and (C) reimbursement by the Debtors of all reasonable expenses incurred in the course of these

chapter 11 cases by the Existing UST Secured Parties and their respective professional advisors and counsel. "**Existing UST Secured Parties**" shall mean the secured parties under (1) that certain Loan and Security Agreement, dated as of December 31, 2008, by and between GM and the U.S. Treasury (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "**TARP Loan Agreement**") and (2) that certain Credit Agreement, dated as of April 2, 2009, by and between GM Supplier Receivables LLC and the U.S. Treasury (as may be amended, restated, supplemented or otherwise revised from time to time, and together with all related agreements and documents, the "**Supplier Receivables Facility**", and together with the TARP Loan Agreement, the "**Existing UST Loan Agreements**"). For the avoidance of doubt, the Adequate Protection Liens shall be pari passu with any adequate protection liens granted under the Prepetition Revolving And Term Loan Orders except the Prepetition Revolving And Term Adequate Protection Liens as detailed in paragraph (iv)(A) above;

(viii)   Authorizing and directing the Debtors to pay, without further order of this Court, the principal, interest, reasonable fees, expenses and other amounts (including the Additional Notes (as defined in the DIP Credit Facility)) payable to the DIP Lenders and their professional advisors and counsel under the DIP Credit Facility, as the same become due, including all reasonable expenses incurred in the course of these chapter 11 cases by the DIP Lenders and their professional advisors and counsel, all as and to the extent provided in the DIP Credit Facility; provided, that copies of the invoices for reimbursement by the Debtors of such expenses and fees (if any) are to be provided to

the Committee, any other statutory committee appointed in the Debtors' chapter 11 cases, and the United States Trustee on a confidential basis; and

(ix)    Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Facility and this Final Order.

This Court having considered the Motion, the DIP Credit Facility, the pleadings in support thereof and the pleadings in response thereto; and due and proper notice of the Motion having been provided in accordance with Bankruptcy Rules 2002, 4001, and 6004, and Local Bankruptcy Rule 4001 as reflected in the Affidavit of Service (Docket No. 134) filed with the Court on June 1, 2009; and a hearing pursuant to Bankruptcy Rule 4001(c)(2) having been held and concluded on June 1, 2009 (the "**Interim Hearing**") to consider the interim relief requested in the Motion; and the Court having entered an order granting the interim relief requested in the Motion (the "**Interim Order**"); and the Court having held a final hearing with respect to the Motion on June 25, 2009 (the "**Final Hearing**"); and it appearing that granting the relief requested in the Motion is appropriate, fair and reasonable and in the best interests of the Debtors, their estates, creditors and other parties in interest, and is essential for the Debtors' continued operations; and all objections to the relief requested in the Motion having been withdrawn, resolved or overruled on the merits by this Court; and upon consideration of the evidence presented, proffered or adduced at the Interim Hearing, the Final Hearing and in the Affidavit of Frederick A. Henderson, which was filed pursuant to Local Bankruptcy Rule 1007-2 on the Petition Date, the Declaration of William C. Repko in Support of Debtors' Proposed Debtor in Possession Financing Facility, the Statement of the United States of America Upon The Commencement Of General Motors Corporation's Chapter 11 Case [Docket No. 37] and

any other evidence presented at the Interim Hearing and the Final Hearing; and upon the record

of the Interim Hearing and the Final Hearing; and upon the arguments of counsel; and after due

deliberation and consideration and good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      On June 1, 2009 (the "**Petition Date**"), the Debtors each filed a voluntary

petition under chapter 11 of the Bankruptcy Code in this Court, commencing these cases.  The

Debtors continue to manage and operate their businesses and properties as debtors in possession

pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been

appointed in these cases; the United States Trustee appointed the Official Committee of

Unsecured Creditors (the "**Committee**") on June 3, 2009.

B.      <u>Jurisdiction and Venue</u>.    This Court has jurisdiction over these

proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334.

Consideration of the Motion constitutes a core proceeding as defined in and pursuant to

28 U.S.C. § 157(b)(2).  Venue for these cases and for the proceedings on the Motion is proper in

this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      <u>Need for Post-petition Financing</u>.  The Debtors have demonstrated a need

for immediate and continuing access to post-petition financing pursuant to sections 363 and 364

of the Bankruptcy Code and Bankruptcy Rule 4001(c)(2).  In the absence of this access, the

Debtors will be unable to continue operating their business, causing immediate and irreparable

loss or damage the Debtors' estates, to the detriment of the Debtors, their estates, their creditors

and other parties in interest in these cases.  The Debtors do not have sufficient unrestricted cash

and other financing available to operate their businesses, maintain the estates' properties, and administer these cases absent the relief provided in this Final Order.

        D.    <u>No Credit Available on More Favorable Terms</u>.  Given the Debtors' current financial condition, available assets and current and projected liabilities, as well as current conditions in the automotive and credit markets, the Debtors are unable to obtain financing from any other lender on terms more favorable than those provided by the DIP Lenders in the DIP Credit Facility.  Other than pursuant to the DIP Credit Facility, the Debtors have been unable to obtain credit that either (i) was allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, (ii) would have priority over all other administrative expenses specified in sections 503(b) and 507(b) of the Bankruptcy Code, (iii) would be secured solely by a lien on property of the Debtors' estates that is not otherwise subject to a lien, or (iv) would be secured only by a junior lien on property of the Debtors' estates that is subject to a lien.

        E.    <u>Good Faith of DIP Lenders</u>.  The Debtors chose the DIP Lenders as post-petition lenders in good faith and after obtaining the advice of experienced counsel and other professionals.  The Debtors and the DIP Lenders proposed and negotiated the terms and provisions of the DIP Credit Facility, the Interim Order and this Final Order in good faith, at arm's length, without collusion and with the intention that all obligations owed under the DIP Credit Facility would be valid claims accorded the priority and secured by the liens set forth herein.  The loans and extensions of credit authorized in the Interim Order and this Final Order are supported by reasonably equivalent value and fair consideration and the terms and provisions of the DIP Credit Facility, the Interim Order and this Final Order are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

Any credit extended, loans made, or funds advanced to the Debtors pursuant to this Final Order, the Interim Order or the DIP Credit Facility is deemed to be so extended, made or permitted to be used in good faith by the DIP Lenders as required by and within the meaning of section 364(e) of the Bankruptcy Code.  As good faith lenders, the DIP Lenders' claims, super-priority status, security interests and liens and other protections arising from or granted pursuant to this Final Order and the DIP Credit Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

F.    <u>Authority for the DIP Credit Facility</u>.  The U.S. Treasury has extended credit to, and acquired a security interest in, the Debtors as set forth in the DIP Credit Facility and as authorized by the Interim Order and this Final Order.  Before entering into the DIP Credit Facility, the Secretary of the Treasury, in consultation with the Chairman of the Board of Governors of the Federal Reserve System and as communicated to the appropriate committees of Congress, found that the extension of credit to the Debtors is "necessary to promote financial market stability," and is a valid use of funds pursuant to the statutory authority granted to the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201 et. seq. ("**EESA**").  The U.S. Treasury's extension of credit to, and resulting security interest in, the Debtors as set forth in the DIP Credit Facility and as authorized in the Interim Order and this Final Order is a valid use of funds pursuant to EESA.

G.    <u>Waiver</u>.  Upon entry of this Final Order, each of the Debtors hereby forever releases, waives and discharges the Existing UST Secured Parties and DIP Lenders, together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "**Released Parties**") from any

and all claims and causes of action arising out of, based upon or related to, in whole or in part, (i) the Existing UST Loan Agreements, (ii) any aspect of the prepetition relationship, or any prepetition transaction, between any Debtor, on the one hand, and any Released Party, on the other hand, or (iii) any acts or omissions by any or all of the Released Parties in connection with any prepetition relationship or transaction with any Debtor or any affiliate thereof including, without limitation, any claims or defenses as to the extent, validity, characterization, priority or perfection of the liens and security interests granted to any Existing UST Secured Parties pursuant to the Existing UST Loan Agreements, "lender liability" and similar claims and causes of action, any actions, claims or defenses arising under chapter 5 of the Bankruptcy Code or any other claims or causes of action.  The waivers described in this paragraph were binding on the Debtors immediately upon entry of the Interim Order, and shall be binding upon the Committee or any other statutory committee and all other parties in interest sixty (60) days after entry of this Final Order if, prior to the expiration of such sixty (60) day period, the Committee or other party in interest has not commenced, or filed a motion with this Court for authority to commence, a proceeding asserting a claim or cause of action waived under this paragraph.

H.    <u>Notice</u>.  Due and proper notice of the Motion, the DIP Credit Facility, and the time and location of the Final Hearing has been provided in accordance with the Interim Order.  Such notice was adequate and sufficient, and no other or further notice need be provided.

**BASED UPON THE FOREGOING FINDINGS AND CONCLUSIONS, AND UPON THE MOTION AND THE RECORD MADE BEFORE THIS COURT AT THE INTERIM HEARING AND THE FINAL HEARING, AND GOOD AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted to the extent provided in this Final Order.  All objections to the Motion heretofore not withdrawn or resolved by the Final Order are overruled

on the merits in all respects. The Debtors are authorized, pursuant to section 364(c) of the Bankruptcy Code, to obtain post-petition financing on a final basis up to the maximum aggregate amount of the Commitment, on a super-priority and secured basis, pursuant and subject to the terms and conditions of the DIP Credit Facility and this Final Order including, without limitation, the Initial Budget (as defined in the DIP Credit Facility) and the DIP Credit Facility is approved in all respects.

2. The Debtors are hereby authorized to (A) enter into the DIP Credit Facility and are authorized and directed to perform all obligations under the DIP Credit Facility and this Final Order, including paying the principal, interest, fees, expenses, and other amounts (including the Additional Notes) due to the DIP Lenders and their professional advisors and counsel pursuant to the DIP Credit Facility or this Final Order as the same become due, which payments shall not otherwise be subject to the approval of this Court, and (B) unconditionally guaranty such payments on a joint and several basis as provided in the DIP Credit Facility.

3. Upon execution and delivery of the DIP Credit Facility and entry of this Final Order, the Debtors' obligations under the DIP Credit Facility (including the Additional Notes) shall constitute final, valid and binding obligations of the Debtors, enforceable against each Debtor and its estate in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Credit Facility or this Final Order shall be stayed, restrained, voided or recovered under any provision of the Bankruptcy Code (including section 502(d) of the Bankruptcy Code) or other applicable law, or shall be subject to any defense, reduction, setoff, recoupment or counterclaim.

4. Except for the Carve-Out, and upon entry of this Final Order, no costs or expenses of administration of these cases or any future proceeding that may result therefrom,

including liquidation in bankruptcy or other proceedings under any chapter of the Bankruptcy

Code, shall be imposed or charged against, or recovered from, the DIP Lenders or any of the

Property under section 506(c) of the Bankruptcy Code or any similar principle of law, and each

of the Debtors hereby waives for itself and on behalf of its estate any and all rights under section

506(c) of the Bankruptcy Code or otherwise to assert or impose, or seek to assert or impose, any

such costs or expenses of administration against the DIP Lenders or the Property.

5.       The DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the

Bankruptcy Code, an allowed super-priority administrative expense claim in each of these cases

(the "**Super-priority Claim**") for all loans, reimbursement obligations and any other

indebtedness or obligations, contingent or absolute, which may now or from time to time be

owing by any of the Debtors to the DIP Lenders under the DIP Credit Facility or hereunder,

including, without limitation, all principal, accrued interest, costs, fees, expenses and all other

amounts (including the Additional Notes) due under the DIP Credit Facility, which Super-

priority Claim (A) shall have priority over any and all administrative expense claims and

unsecured claims (including without limitation, the Adequate Protection Claim) against each

Debtor or its estate in these cases, now existing or hereafter arising, of any kind or nature

whatsoever including, without limitation, administrative expenses and claims of the kind

specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a),

503(b), 506(c) 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of

the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, and (B) shall

at all times be senior to the rights of each Debtor or its estate, and any successor trustee or other

representative of any Debtor's estate in these cases or in any subsequent proceeding or case

under the Bankruptcy Code, to the extent permitted by law; provided, however, that subsequent

to the closing of the Related Section 363 Transactions, claims against the Debtors' estates that have priority under sections 503(b) or 507(a) of the Bankruptcy Code, including costs and expenses of administration that are attendant to the formulation and confirmation of a liquidating chapter 11 plan, whether incurred prior or subsequent to the consummation of the Related Section 363 Transactions, shall have priority over the remaining obligations owing to the DIP Lenders under the DIP Credit Facility (up to the aggregate amount of $950,000,000; provided, however, that any greater amount shall be subject to approval by the DIP Lenders). The Super-priority Claim shall be subject and subordinate only to the Carve-Out and the claims set forth in the preceding proviso.

6.     The DIP Lenders are hereby granted, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, continuing, valid, binding, enforceable, and automatically perfected DIP Liens in and on any and all of the Property, with the priorities set forth in paragraph (iv) above, to secure all repayment and other obligations of the Debtors under the DIP Credit Facility and this Final Order, including the Additional Notes. Except as expressly provided in the DIP Credit Facility or this Final Order, the DIP Liens shall not be made subject to or pari passu with any lien on, or security interest in, the Property, and shall be valid and enforceable against any trustee appointed in these cases, in any successor case, or upon the dismissal of any of these cases. The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code. Except as provided in the DIP Credit Facility, this Final Order, or as otherwise agreed to by the DIP Lenders, the Debtors shall not grant any liens on the Property junior to the DIP Liens. In addition, except as permitted in the DIP Credit Facility, this Final Order, or as otherwise agreed to by the DIP Lenders, the Debtors shall not incur any debt with priority equal to or greater than the DIP Credit Facility. For the avoidance of doubt,

notwithstanding anything to the contrary in this Final Order, the Interim Order or the DIP Credit Facility, the Permitted Liens shall include any valid, perfected, non-avoidable prepetition senior liens in any Property of the Debtors' estates (or non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected only as permitted by section 546(b) of the Bankruptcy Code), including, but not limited to, valid, perfected, non-avoidable prepetition senior statutory and possessory liens, and recoupment and setoff rights.  Further, nothing in this Final Order, the Interim Order or the DIP Credit Facility shall in any way impair the right of any claimant with respect to any alleged reclamation right or impair the ability of a claimant to seek adequate protection with respect to any alleged reclamation right; provided, however, that nothing in this Final Order, the Interim Order or the DIP Credit Facility shall prejudice any rights, defenses, objections or counterclaims that the Debtors, the DIP Lenders, any agent under the Prepetition Senior Facilities, the lender under the TARP Loan Agreement, the Committee or any other party in interest may have with respect to the validity or priority of such asserted liens or rights, or with respect to any claim for adequate protection; provided, further, that nothing in this Final Order, the Interim Order or the DIP Credit Facility shall in any way be construed to permit or authorize the DIP Lenders to seek recourse against the New GM Equity Interests at any time.  Notwithstanding the foregoing, the DIP Liens shall be subject and subordinate to valid and enforceable liens of governmental units for personal property taxes, real property taxes, special taxes, special assessments, and infrastructure improvement taxes arising after the Petition Date to the extent that such liens of governmental units take priority over previously granted and perfected consensual liens or security interests in property of the Debtors under applicable non-bankruptcy law.

7.      Except as expressly agreed by the DIP Lenders, the obligations of the Debtors, including, without limitation, all obligations under the Notes (as defined in the DIP Credit Facility), shall be unconditionally guaranteed on a joint and several basis by each of the entities listed on <u>Schedule 1.1B to the DIP Credit Facility</u>.  Except as otherwise expressly agreed to by each DIP Lender, the obligations of the Debtors shall further be unconditionally guaranteed on a joint and several basis by each and every subsequently acquired or organized direct or indirect domestic subsidiary of any Debtor (other than GMCL and direct and indirect subsidiaries of GMCL), each of which shall be made a guarantor under the DIP Credit Facility immediately upon its acquisition and/or organization as provided in the DIP Credit Facility.

8.      The Existing UST Secured Parties are hereby granted, pursuant to sections 361, 362, 363, 364 and 507 of the Bankruptcy Code, the Adequate Protection Claim and the Adequate Protection Liens with the priorities set forth in paragraph (vii) hereof, in each case to the extent of any diminution in the value of the relevant Existing UST Secured Party's interests in the Debtors' interests in the Property (including Cash Collateral) occurring on or after the Petition Date.

9.      The Debtors are hereby authorized to use the Cash Collateral in accordance with the Initial Budget, until the DIP Lenders have exercised remedies as a result of an Event of Default under, and as defined in, the DIP Credit Facility.

10.     The DIP Liens, the Super-priority Claim, the Adequate Protection Liens and the Adequate Protection Claim shall continue in any superseding case or cases for any or all of the Debtors under any chapter of the Bankruptcy Code, and such liens, security interests and claims shall maintain their priorities as provided in this Final Order.  If an order dismissing any of these cases, pursuant to section 1112 of the Bankruptcy Code or otherwise, is at any time

entered, such order shall provide that (A) the DIP Liens, the Super-priority Claim, the Adequate

Protection Liens and the Adequate Protection Claim shall continue in full force and effect, shall

remain binding on all parties in interest in these cases, and shall maintain their priorities as

provided in this Final Order, until all obligations of the Debtors under the DIP Credit Facility

(with respect to the DIP Liens and the Super-priority Claim) and the Existing UST Loan

Agreements (with respect to the Adequate Protection Liens and the Adequate Protection Claim)

have been paid and satisfied in full.  Notwithstanding the dismissal of any or all of these cases,

this Court shall retain jurisdiction with respect to enforcing the DIP Liens and the Super-priority

Claim and the DIP Lenders' rights with respect thereto, and the Adequate Protection Liens and

the Adequate Protection Claim and the Existing UST Secured Parties' rights with respect thereto.

11.    Except as provided in this Final Order or in the DIP Credit Facility, the

DIP Liens, the Super-priority Claim, the Adequate Protection Liens and the Adequate Protection

Claim, and all rights and remedies of the DIP Lenders, shall not be modified, impaired or

discharged by the entry of an order or orders confirming a plan or plans of reorganization in any

or all of these cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, each Debtor

waives any discharge as to any remaining obligations under the DIP Credit Facility and this Final

Order including, without limitation, the Additional Notes.

12.    This Final Order shall be sufficient and conclusive evidence of the

validity, perfection and priority of the DIP Liens and the Adequate Protection Liens, without the

necessity of filing or recording any financing statement or other instrument or document, or the

taking of any other act that otherwise may be required under state or federal law, rule, or

regulation of any jurisdiction to validate or perfect the DIP Liens or the Adequate Protection

Liens or to entitle the DIP Lenders and the Existing UST Secured Parties to the priorities set

forth herein.  The DIP Liens and the Super-priority Claim granted to the DIP Lenders pursuant to this Final Order and the DIP Credit Facility with respect to the property of the Debtors' estates were perfected by operation of law upon entry of the Interim Order by the Court.  The Debtors may execute, and the DIP Lenders or the Existing UST Secured Parties, as applicable, are hereby authorized to file or record financing statements or other instruments to evidence the DIP Liens and the Adequate Protection Liens, and the Debtors are hereby authorized and directed, promptly upon demand by any DIP Lender or Existing UST Secured Party, to execute, file and record any such statements or instruments as the DIP Lenders or such Existing UST Secured Party may request; provided, however, that no such execution, filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens or any Adequate Protection Lien, and further, if the DIP Lenders or any Existing UST Secured Party, each in its sole discretion, shall choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens, all such documents shall be deemed to have been filed or recorded as of the Petition Date.  A certified copy of this Final Order may, in the discretion of the DIP Lenders or any Existing UST Secured Party, as applicable, be filed with or recorded in any filing or recording office in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized to accept a certified copy of this Final Order for filing and recording, and to deem this Final Order to be in proper form for filing and recording.

13.     Each and every federal, state, and local governmental agency, department or office is hereby authorized and directed to accept this Final Order and any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by this Final Order or the DIP Credit Facility.

14.    The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (A) the Debtors to grant the DIP Liens, the Super-priority Claim, the guaranties and other security provided for in the DIP Credit Facility, and to perform such acts as the DIP Lenders may request to assure the perfection and priority of the DIP Liens, (B) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claim, and to perform such acts as any Existing UST Secured Party may request to assure the perfection and priority of the Adequate Protection Liens, (C) the implementation of the terms of this Final Order and the DIP Credit Facility, (D) the repayment of the Prepetition Senior Facilities as detailed in paragraph 19 hereof, and (E) immediately upon the occurrence of an Event of Default under the DIP Credit Facility or the maturity of the credit extensions provided thereunder, the exercise by the DIP Lenders of all rights and remedies under such agreement or applicable law without further application to or order of this Court; provided, however, that prior to exercising any setoff of amounts held in any accounts maintained by any Debtor or enforcing any liens or other remedies with respect to the Property, the DIP Lenders shall provide to the Debtors (with copies to the Committee, any other statutory committee and the United States Trustee) five business days' prior written notice; provided further, however, that upon receipt of any such notice, the Debtors may only make disbursements in the ordinary course of business and with respect to the Carve-Out, but may not make any other disbursements.  Upon the occurrence and during the continuance of an Event of Default under the DIP Credit Facility, the DIP Lenders and their respective representatives shall be granted access to all locations in support of the enforcement and exercise of their remedies.

15.    Upon the occurrence and during the continuance of any Event of Default under the DIP Credit Facility, and subject to the five business day notice provision set forth in

paragraph 14 above, the DIP Lenders may compel any Debtor to exercise such Debtor's rights (if any) to sell any or all of the Property in its possession pursuant to section 363(b) of the Bankruptcy Code or any other applicable law, the DIP Lenders shall be entitled to exercise their right (if any) to credit bid the DIP Liens in any such sale pursuant to section 363(k) or other applicable provision of the Bankruptcy Code, or other applicable law, and the Debtors shall use best efforts (subject to applicable law) to exercise their rights (if any) to sell such Property if requested by the DIP Lenders (pursuant to section 363 of the Bankruptcy Code or otherwise).

16.     As used in this Final Order, "**Carve-Out**" means, following the occurrence and during the continuance of an Event of Default under the DIP Credit Facility, an amount sufficient for payment of (A) allowed professional fees and disbursements incurred by professionals retained by the Debtors, the Committee and any other statutory committee (after application of all outstanding retainers held by those professionals) and allowed expenses of members of the Committee and any other statutory committee in an aggregate amount not to exceed $20,000,000 (plus all such professional fees and disbursements, and expenses of members of the Committee and any other statutory committee that are unpaid after application of all outstanding retainers, and that were accrued or incurred prior to the occurrence of the Event of Default, to the extent allowed by this Court at any time), (B) fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of this Court, (C) fees and disbursements incurred by a chapter 7 trustee (if any) not to exceed $2,000,000, and (D) fees and expenses incurred by a privacy ombudsman retained by Appointment of Ombudsman dated June 10, 2009 [Docket No. 565]; provided, however, that, so long as an Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable under 11 U.S.C. §§ 330 and 331, as the same may become due and payable, and the same shall not reduce the Carve-Out;

<u>provided further</u>, <u>however</u>, that the Carve-Out shall not include any fees or disbursements related to the investigation of, preparation for, or commencement or prosecution of, any claims or proceedings against the DIP Lenders, the Existing UST Secured Parties or EDC, in its capacity as lender under the Canadian Facility (as defined in the DIP Credit Facility) and on behalf of the Governments of Ontario and Canada, or other Canadian Lender Consortium Member (as defined in the DIP Credit Facility), or the claims or security interests in or liens on the property granted under the Canadian Facility, or their claims or security interests in or liens on the Property granted under the DIP Credit Facility or this Final Order.

17.    The DIP Lenders have acted in good faith in connection with the DIP Credit Facility, the Interim Order and this Final Order and their reliance on the provisions of this Final Order when extending credit under the DIP Credit Facility will be in good faith. Accordingly, if any provision of this Final Order is hereafter modified, vacated, or stayed by subsequent order of this Court or any other court for any reason, the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code. The DIP Credit Facility may not be recharacterized as an equity investment or otherwise.

18.    The DIP Lenders may exercise their right (if any) to credit bid the loans and the Additional Notes under the DIP Credit Facility (pursuant to section 363(k) or other applicable provision of the Bankruptcy Code, or other applicable law), in whole or in part, in connection with any sale or other disposition of some or all of the Property in these cases.

19.    (a) Upon entry of this Final Order, the Debtors shall be authorized to apply and shall apply the proceeds of the DIP Credit Facility to repay amounts outstanding under the Prepetition Senior Facilities and all second lien Hedging Obligations (as defined in the Prepetition Revolving Credit Agreement), including principal, accrued and unpaid interest, fees,

letter of credit reimbursement obligations (including obligations to cash collateralize undrawn letters of credit) and any other amounts due or owed by the Debtors thereunder within three business days of entry of this Final Order.

(b)    Upon payment ("**Payment**") of all obligations under the Prepetition Senior Facilities, all commitments under each of the Prepetition Senior Facilities shall be deemed irrevocably terminated.  Further, upon Payment, except as set forth in subsection (c) below, the holders of such obligations (the "**Prepetition Senior Facilities Secured Parties**") shall have no further rights with respect to the Debtors, the DIP Lenders, the Property or any claims or liens relating thereto (all of which liens and claims shall be deemed automatically satisfied and released without further action), whether such claims or liens arise under the Prepetition Term Loan Agreement, Prepetition Revolving Credit Agreement, the Prepetition Gelco Loan Agreement or related documentation, and the Debtors and their estates shall have no further obligations to the Prepetition Senior Facilities Secured Parties in connection with the Prepetition Senior Facilities.  Nothing in this Order shall be deemed to alter, amend, release or waive any liens against, or obligations of, any non-Debtor affiliate under the Prepetition Revolving Credit Agreement and documents related thereto.

(c)    The Prepetition Senior Facilities Secured Parties' liens, claims and interests in the Property and any adequate protection claims or adequate protection liens, shall expire upon the Payment.  In the event that the Committee investigates any liens of any of the Prepetition Senior Facilities Secured Parties or any third party brings an action against a Prepetition Senior Facilities Secured Party that is entitled to indemnification by the Debtors under the applicable Prepetition Senior Facility, then, notwithstanding any other provision of this Final Order, (i) the Debtors shall pay (in accordance with Paragraph 6(d) of the Prepetition

Revolving Credit Agreement Order and Paragraph 5(d) of the Prepetition Term Loan Facility Order), the reasonable fees, costs and charges incurred by the agents for the Prepetition Senior Facilities (and, in the case of Gelco, reasonable fees, costs and charges incurred by Gelco, so long as Gelco complies with the expense reimbursement procedures applicable to the agents under the other Prepetition Senior Facilities) in responding to such investigation or in defending any challenge to such liens or to their ability to retain any Payment, and (ii) the super-priority adequate protection claims granted pursuant to the Prepetition Revolving and Term Adequate Protection Orders shall remain in effect with respect to such expense reimbursement obligations, provided that such claims shall not have recourse to the New GM Equity Interests and Gelco is hereby granted superpriority adequate protection claims equivalent to those provided to the agents under the other Prepetition Senior Facilities.  Nothing in this order shall affect the rights and remedies, if any, of the Prepetition Senior Facility Secured Lenders (other than Gelco and the agents under the other Prepetition Senior Facilities, whose rights and remedies shall be as described herein) to seek reimbursement of their reasonable fees, costs, and charges incurred in responding to any such investigation or in defending any challenge to such liens or Payment. Without limiting the generality of the foregoing, upon Payment, the Prepetition Senior Facilities Secured Parties (i) authorize the Debtors to file Uniform Commercial Code termination statements, mortgage releases and all other documents necessary to evidence the release of the liens against the Debtors securing the obligations under the Prepetition Senior Facilities and (ii) will take all such action and deliver all such other instruments and documents as may be reasonably requested by the Debtors or the agents under the Prepetition Senior Facilities to effectuate or evidence the termination of all such claims of the Prepetition Senior Facilities Secured Parties, in each case, at the sole cost and expense of the Debtors.

(d)    Effective upon entry of this Final Order, the Debtors (on behalf of their estates) and any successor thereto release the Prepetition Senior Facilities Secured Parties and each of their directors, officers, appointees, counsel, advisors and employees serving in any capacity or function, including as a fiduciary, agents, advisors, shareholders, subsidiaries, affiliates, heirs, executors, administrators, attorneys, advisors, successors and assigns from, against and with respect to any and all actual or potential demands, claims, actions, causes of action (including derivative causes of action), suits, assessments, liabilities, losses, costs, damages, penalties, fees, charges, expenses and all other forms of liability whatsoever, in law or equity, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising under the Bankruptcy Code, state law or otherwise now existing or hereafter arising, directly or indirectly related to the Prepetition Senior Facilities and any and all dealings between the Prepetition Senior Facilities Secured Parties in connection with the Prepetition Senior Facilities, provided**,** however, that such release shall not apply to the Committee with respect only to the perfection of first priority liens of the Prepetition Senior Facilities Secured Parties (it being agreed that if the Prepetition Senior Facilities Secured Parties, after Payment, assert or seek to enforce any right or interest in respect of any junior liens, the Committee shall have the right to contest such right or interest in such junior lien on any grounds, including (without limitation) validity, enforceability, priority, perfection or value) (the "**Reserved Claims**").  The Committee shall have automatic standing and authority to both investigate the Reserved Claims and bring actions based upon the Reserved Claims against the Prepetition Senior Facilities Secured Parties not later than July 31, 2009 (the "**Challenge Period**"), provided, that upon the filing of any adversary proceeding prosecuting any Reserved Claim, the Challenge Period shall be extended with respect to such adversary proceeding through and until a court of competent jurisdiction

dismisses such adversary proceeding. The grant of automatic standing shall be without any further order of this Court or any requirement that the Committee file a motion seeking standing or authority to file a motion seeking standing or authority before prosecuting any such challenge. Any Prepetition Senior Facilities Secured Party accepting Payment shall submit to the jurisdiction of the Bankruptcy Court, it being understood that the respective administrative and collateral agents for the Prepetition Senior Facilities shall have no responsibility or liability for amounts paid to any Prepetition Senior Facilities Secured Parties and such agents shall be exculpated for any and all such liabilities, excluding only such funds as are retained by each such agent solely in its respective role as a lender.

(e)    Immediately upon Payment, the DIP Lenders shall be deemed to have obtained a secured, non-avoidable, perfected security interest in and lien on the Prepetition Senior Facilities Collateral.

20.    Notwithstanding anything herein to the contrary, none of the proceeds of any extension of credit under the DIP Credit Facility shall be used in connection with (a) any investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders or the Existing UST Secured Parties or EDC, in its capacity as lender under the Canadian Facility and on behalf of the Governments of Ontario and Canada, (b) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders or the Existing UST Secured Parties or EDC, in its capacity as lender under the Canadian Facility and on behalf of the Governments of Ontario and Canada, or any of their respective affiliates with respect to any loans, extensions of credit or other financial accommodations made to any Debtor prior to, on or after the Petition Date, or (c) any loans, advances, extensions of credit, dividends or other

investments to any person not a Borrower or Guarantor other than for certain permitted exceptions set forth in the DIP Credit Facility.

21.    On or substantially contemporaneous with the closing of the Related Section 363 Transactions, the Tranche C Term Loan (as such term is defined in the DIP Credit Facility) in an amount not less than $950,000,000 shall be provided to the Borrower in accordance with section 2.14 of the DIP Credit Facility to fund the wind-down of the Debtors (the "**Wind-Down Facility**").  The funding of the Wind-Down Facility shall be subject to an appropriate amendment to the DIP Credit Facility, acceptable to the Debtors and the DIP Lenders, which amendment shall be subject to approval by this Court on three days notice after the filing of a motion seeking approval of the Wind-Down Facility.  The Committee shall be copied on all drafts of the credit agreement related to the Wind-Down Facility and the Wind-Down Budget (as defined in the DIP Credit Facility) that are circulated between the Debtors and the DIP Lenders and shall be included in all substantive negotiations of the Wind-Down Facility and the Wind-Down Budget between the Debtors and the DIP Lenders.

22.    In the event of any inconsistency between the terms and conditions of the DIP Credit Facility or the Interim Order and this Final Order, the terms and conditions of this Final Order shall control.

23.    The parties to the DIP Credit Facility may, from time to time, enter into waivers or consents with respect thereto without further order of this Court.  In addition, the parties to the DIP Credit Facility may, from time to time, enter into amendments with respect thereto without further order of this Court; provided, that, (A) the DIP Credit Facility, as amended, is not materially different from the form approved by this Final Order, (B) notice of all amendments is filed with this Court, and (C) notice of all amendments (other than those that are

ministerial or technical and do not adversely affect the Debtors) are provided in advance to counsel for the Committee and any other statutory committee, all parties requesting notice in these cases and the United States Trustee.  For purposes hereof, a "material" difference from the form approved by this Final Order shall mean any difference resulting from a modification that operates to (1) shorten the maturity of the extensions of credit under the DIP Credit Facility or otherwise require more rapid principal amortization than is currently required under the DIP Credit Facility, (2) increase the aggregate amount of any of the commitments thereunder, (3) increase the rate of interest or any other fees or charges payable thereunder (other than to the extent contemplated in the DIP Credit Facility as in effect on the date of this Final Order), (4) add specific new Events of Default (as defined in the DIP Credit Facility) or shorten the notice or grace period in respect to any Default (as defined in the DIP Credit Facility) or Event of Default currently in the DIP Credit Facility, (5) enlarge the nature and extent of default remedies available to the DIP Lenders or agents under the DIP Credit Facility following the occurrence and during the continuance of an Event of Default, (6) add additional financial covenants or make any financial covenant or other negative or affirmative covenant or representation and warranty more restrictive on the Debtors, or (7) otherwise modify the DIP Credit Facility in a manner materially less favorable to the Debtors and their estates.

24.     This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, and shall be deemed effective and enforceable immediately upon its entry and nunc pro tunc to the Petition Date.

25.     The rights, benefits, and privileges granted pursuant to this Final Order (including, without limitation, the DIP Liens, the Super-priority Claim, the Adequate Protection

Liens and the Adequate Protection Claim granted herein) shall attach and be enforceable against the bankruptcy estate of any direct or indirect subsidiary of the Debtors that is a party to the DIP Credit Facility and which hereafter becomes a debtor in these procedurally consolidated cases automatically and without further court order on a final basis.  Except as may be provided in this Final Order, such subsidiary shall be deemed a "Debtor" hereunder effective as of the date such subsidiary files a petition and becomes a debtor in these cases.

26.    Except as otherwise provided in this Final Order, the provisions of the DIP Credit Facility and the provisions of this Final Order, including all findings of fact and conclusions of law set forth herein, shall, immediately upon entry of this Final Order in these cases, become valid and binding upon the Debtors, the DIP Lenders, the Existing UST Secured Parties, all other creditors of the Debtors, the Committee, any other statutory committee and all other parties in interest in these cases and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of any Debtor's estate in these cases or in any subsequent chapter 7 case.  In no event shall the DIP Lenders, whether in connection with the exercise of any rights or remedies under the DIP Credit Facility, hereunder or otherwise, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Lenders do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response,

Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).

27.    The Committee shall receive the same reports provided by the Debtors to the DIP Lenders under section 5.2 of the DIP Credit Facility.

28.    The Debtors have provided adequate and sufficient notice of the Final Hearing and this Final Order as required under section 364 of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules and Rule 4001-2 of the Local Bankruptcy Rules.

29.    The Final Hearing was held pursuant to Rule 4001 of the Bankruptcy Rules.

30.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the DIP Credit Facility, the Interim Order and this Final Order in all respects; provided, however, that in the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

Dated: **_June 25, 2009_**
        New York, New York

                                **_/s/ Robert E. Gerber_**
                                HON. ROBERT E. GERBER
                                UNITED STATES BANKRUPTCY JUDGE