BUTZEL LONG, a professional corporation
Robert Sidorsky
Eric B. Fisher
380 Madison Avenue
New York, New York 10017
Telephone:  (212) 818-1110
Facsimile:  (212) 818-0494
sidorsky@butzel.com
fishere@butzel.com

Thomas B. Radom (admitted *pro hac vice*)
Max J. Newman (admitted *pro hac vice*)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan  48304
Telephone:  (248) 258-1616
Facsimile:  (248) 258-1439
radom@butzel.com
newman@butzel.com

*Attorneys for Inteva Products, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 09-50026 (REG) |
| GENERAL MOTORS CORP., *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

**SECOND LIMITED OBJECTION OF INTEVA PRODUCTS, LLC TO THE**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**AND PROPOSED CURE AMOUNTS**

Inteva Products, LLC ("Inteva"), by its undersigned counsel, hereby files this second

objection (the "Objection") in accordance with the provisions of the Order Pursuant to 11 U.S.C.

§§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for

Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle

Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline

and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV)

Fixing Notice Procedures and Approving Form of Notice (Docket No. 274) ("Sales Procedures Order") to the assumption and assignment of certain executory contracts and proposed cure amounts identified in connection with the Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "Sales Procedures Order") and the second notice enclosed therewith (the "Second Notice").[1]  In support of the Objection, Inteva respectfully states as follows:

1.      On June 1, 2009 (the "Petition Date"), General Motors Corp. and certain of its affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.      The Debtors remain in possession of their property and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1008 of the Code.

3.      Prior to the Petition Date, Inteva and the Debtors (collectively, the "Parties") entered into certain agreements for the sale of product from Inteva to the Debtors.

4.      On the Petition Date, the Debtors filed their Motion Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing (Docket No. 92) ("Sale Motion").  By the Sale Motion, the Debtors seek authority from this Court to sell certain of the

---

[1] The Sales Procedures Order and the Second Notice were served on Inteva at its Vandalia, Ohio engineering center. Nonetheless, Inteva acknowledges that it has received actual notice of the Sales Procedures Order and Second Notice.  Inteva does not concede or admit that service of pleadings at its Ohio plant is adequate notice.  Inteva reserves its right to be properly served at its business address, which is 1401 Crooks Road, Troy, MI  48084.

Debtors' assets to Vehicle Acquisition Holdings LLC, a U.S. Treasury-sponsored purchaser (the "Purchaser").  In connection with the Sale Motion, the Debtors also seek to assume certain contracts and assign the same to the Purchaser.

5.      On or about June 2, 2009, the Court entered the Sales Procedures Order authorizing procedures for determining, among other things, the assumption and assignment of executory contracts and the pre-petition cure amounts for each of these contracts.

6.      Pursuant to the Sales Procedures Order, the Debtors served the Second Notice on or about June 15, 2009.

7.      The Second Notice provides information for accessing a website (the "Website") maintained by the Debtors that lists the Parties' proposed executory contracts that the Debtors intend to assume and assign (the "Designated Executory Contracts") as well as the proposed cure amounts related thereto (the "Proposed Cure Amounts").

8.      The Website lists over three thousand six hundred (3,600) Designated Executory Contracts between Inteva and the Debtors (collectively, the "Inteva Executory Contracts") that the Debtors intend to assume and assign in connection with the proposed § 363 Transaction (as defined in the Sales Procedures Order).

9.      Pursuant to the Sales Procedures Order, contract parties have ten (10) days from the date of the applicable notice (in this instance, the Second Notice) to object to Proposed Cure Amounts.  *See* Sales Procedures Order, ¶ 10.

**Objection**

10.      Section 365 of the Bankruptcy Code provides, in pertinent part:

(a) … the Trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease … of the debtor, the trustee may not assume such contract … unless, at the time of the assumption of such contract, the trustee:

3

> (A) cures or provides adequate assurance that the trustee with promptly cure, such default …
>
> …
>
> (f) … notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease.

11 U.S.C. § 365.

11.    Inteva does not generally object to the assumption and assignment of the Proposed Executory Contracts from the Debtors to the Purchaser to the extent such agreements constitute executory contracts as of the Petition Date. However, Inteva files this Objection to reserve its right to reconcile the Proposed Cure Amounts with specificity as well as to determine which of the Proposed Executory Contracts actually constitute executory contracts as of the Petition Date and are subject to assumption and assignment.

12.    The Inteva Executory Contracts number in the thousands. Since receiving the Second Notice, Inteva has worked diligently to ascertain the amounts necessary to cure any defaults existing as of the Petition Date related to the Inteva Executory Contracts.[2] Given the large number of Inteva Executory Contracts, Inteva has been unable to determine the accuracy of the Proposed Cure Amounts relating to such contracts within the ten (10) day deadline imposed in the Sales Procedures Order. Therefore, Inteva is not currently able to consent to the Proposed Cure Amounts listed on the Website.

13.    Inteva has identified several executory contracts that were not listed on the Website, including contracts relating to latch tooling and service parts, as well as manual entries that were not listed electronically on the Website.

---

[2] Inteva reserves its right to assert that there are post-Petition Date defaults in addition to pre-Petition Date defaults that exist or may arise under the Inteva Executory Contracts.

14.    Finally, Inteva has not been able to determine whether each of the over-3,600 Inteva Executory Contracts is, in fact, an executory contract as of the Petition Date subject to assumption and assignment.

15.    Inteva and the Debtors are in the process of working through these issues, but they have not yet reached a resolution.

16.    In light of the foregoing, Inteva files this Objection to preserve its right to seek amounts in excess of the Proposed Cure Amounts to the extent that Inteva identifies amounts due and owing related to the Inteva Executory Contracts and other executory contracts that are not included in the Debtors' Proposed Cure Amounts.  Additionally, Inteva may seek removal of some of the Inteva Executory Contracts from the Website to the extent that they are not executory contracts subject to assumption and assignment.

17.    Inteva reserves the right to supplement this Objection upon learning additional necessary facts relevant to this Objection.

WHEREFORE, Inteva respectfully requests that this Court enter an order (a) requiring the Debtors (or, if applicable, the Purchaser) to pay Inteva all amounts which shall be due and owing with respect to the Inteva Executory Contracts and other executory contracts as of the date such contracts are assumed and assigned to Inteva, as shall be agreed upon by the Parties or as may be determined by the Court; (b) requiring the removal of those Inteva Executory Contracts from the Website that do not constitute executory contracts as of the Petition Date; and (c) granting such other and further relief as this Court deems just and proper.

Dated: New York New York
         June 25, 2009

BUTZEL LONG, a professional corporation


By: _____/s/   Robert Sidorsky_____
         Robert Sidorsky, Esq.
         Eric B. Fisher, Esq.
380 Madison Avenue
New York, NY 10017
Tel.: (212) 818-1110
Fax: (212) 818-0494
sidorsky@butzel.com
fishere@butzel.com

Thomas B. Radom, Esq.
Max J. Newman, Esq.
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan  48304
Telephone:  (248) 258-1616
Facsimile:  (248) 258-1439
radom@butzel.com
newman@butzel.com

*Attorneys for Inteva Products, LLC*