**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 09-50026 (REG) |
| GENERAL MOTORS CORPORATION, *et al.*,[1] ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| ) | |

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION REVOLVER SECURED PARTIES

FINAL CASH COLLATERAL ORDER

Upon the motion, dated June 1, 2009 (the "Motion"), of General Motors Corporation (the "Company") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "Debtors") in the above-captioned case (the "Cases") for interim and final orders under sections 105, 361, 362, 363(c) and 363(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking, inter alia:

(I)   authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 3(b) below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined below), and (b) provide adequate protection to the Secured Parties,[2] (collectively, the "Revolver Secured Parties") under the Amended and Restated Credit Agreement, dated as of July 20, 2006 (as amended, supplemented or otherwise modified, the "Revolver Facility") among the Company, General Motors of Canada Limited, Saturn, LLC, as a guarantor, Citicorp USA, Inc., as administrative agent for the lenders thereunder and any affiliate of such lender holding Non-Loan Exposure and Hedging Obligations (in such capacity, the

---

[1]   The Debtors in these cases include: the Company, Saturn, LLC, Saturn Distribution Corporation, and Chevrolet-Saturn of Harlem, Inc.

[2]   Defined terms used in this order and not otherwise defined have the meaning given to such term in the Loan Documents, as such term is defined in the Revolver Facility, as defined below. The Secured Parties comprise the US Secured Parties, the Canadian Secured Parties and the Hedging Secured Parties – the US Secured Parties and the Canadian Secured Parties have a first priority lien on the Collateral (as defined in the Revolver Facility, the "Revolver First Lien Collateral") and a junior lien on the Additional Collateral and the Hedging Secured Parties have a second priority lien on the Revolver First Lien Collateral and a further junior lien on the Additional Collateral.

"<u>Revolver Agent</u>"), JPMorgan Chase Bank, N.A., as syndication agent, and the banks and other financial institutions party thereto as lenders;

 (II) the waiver by the Debtors of any right to surcharge against the Collateral (as defined in paragraph 6 below) pursuant to section 506(c) of the Bankruptcy Code; and

 (III) to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "<u>Final Hearing</u>") for this Court to consider entry of this final order (the "<u>Final Order</u>") authorizing the Debtors on a final basis to continue to use the Cash Collateral and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order.

The interim hearing having been held by this Court on June 1, 2009 (the "<u>Interim Hearing</u>"); and the Court having entered an order granting the interim relief requested in the Motion (the "<u>Interim Order</u>") and the final hearing having been held by this Court on June 25, 2009 (the "<u>Final Hearing</u>"); and all objections to the relief requested in the Motion having been withdrawn, resolved or overruled on the merits by this Court, and upon the record made by the Debtors at the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*.  This Court has core jurisdiction over the Cases commenced on June 1, 2009 (the "<u>Petition Date</u>"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*.  Due and proper notice of the time and location of the Final Hearing was provided in accordance with the Interim Order. Such notice was adequate and sufficient, and no other or further notice of the Motion or the Final Hearing need be provided.

3. *Findings Regarding the use of Cash Collateral and Prepetition Collateral.*

 (a) Good cause has been shown for the entry of this Order.

 (b) Based on information available to the Court, the Debtors' Obligations are secured by first liens granted to the Revolver Agent on the property of the estates that constitutes Revolver First Lien Collateral and junior liens granted to the Revolver Agent on the property of the estates that constitutes Additional Collateral (collectively, the "<u>Prepetition Collateral</u>").  As of the Petition Date, the Debtors (i) were in possession of cash

2

proceeds of Prepetition Collateral and may hereafter generate additional cash proceeds of Prepetition Collateral, and (ii) maintained cash in bank accounts at the Revolver Agent or Revolver Secured Parties, all of which cash and cash proceeds may be cash collateral of the Revolver Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(c)     The terms of the use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the exercise of prudent business judgment by the Debtors consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)     The terms of the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Revolver Agent and the Revolver Secured Parties and pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code, the Revolver Agent and the Revolver Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order.

(e)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). The use of Cash Collateral in accordance with this Order is in the best interest of the Debtors' estates.

(f)     The Revolver Agent and the Revolver Secured Parties have consented to the use of the Cash Collateral on the terms set forth herein.

4.     *Authorization Of Use of Cash Collateral and Prepetition Collateral.*

(a)     The Debtors are hereby authorized to use the Cash Collateral in accordance with the Initial Budget, as defined in the Court's interim and final order authorizing the Debtors to obtain post petition financing (the "DIP Order"), during the period from the Petition Date through and including the Termination Date (as defined below) in accordance with the terms and conditions of this Order.

(b)      Except as expressly set forth herein, this Order does not address the disposition of any Prepetition Collateral outside the ordinary course of business or the Debtors' use of the Cash Collateral resulting therefrom.

5.     *Entitlement to Adequate Protection.*

In consideration for the consent of the Revolver Agent and the Revolver Secured Parties to the use of Cash Collateral in accordance with the terms hereof, and as a result of the imposition of the automatic stay

3

pursuant to section 362 of the Bankruptcy Code, the Revolver Secured Parties are entitled, pursuant to sections 361, 362, and 363(c)(2) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including, without limitation, the Cash Collateral and Additional Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral (including Additional Collateral) from and after the Petition Date (the amount of such diminution in value, the "Adequate Protection Obligations").

6. *Adequate Protection Claims and Liens.*

As adequate protection, the Revolver Agent and the Revolver Secured Parties are hereby granted the following claims, liens, rights and benefits:

(a) Section 507(b) Claim. The Adequate Protection Obligations due to the Revolver Secured Parties shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in any of the Cases or any subsequent proceedings under the Bankruptcy Code (the "Superpriority Claim"), provided that the Superpriority Claim (i) shall not be payable from or have recourse to the proceeds of avoidance actions arising under chapter 5 of the Bankruptcy Code ("Avoidance Actions"), (ii) shall be subject and subordinate only to the Carve-Out, as defined below, and any superpriority claims granted to the DIP Lenders, as defined in and pursuant to the DIP Order and (iii) shall be *pari passu* with any adequate protection superpriority claim granted in favor of (x) the lenders ("Term Lenders") from time to time under that certain Term Loan Agreement (the "Prepetition Term Loan"), dated as of November 29, 2006, among the Borrower, Saturn, LLC, and JPMorgan Chase Bank, N.A., as administrative agent (the "Term Loan Agent"), and, as amended by that First Amendment, dated March 4, 2009, and as further amended, supplemented and otherwise modified from time to time, and (y) the secured parties under the U.S. Treasury Loan Agreement.

(b) Adequate Protection Liens. As security for any Adequate Protection Obligations that may be owing to the Revolver Secured Parties, effective and perfected as of the Petition Date, the following security

4

interests and liens are hereby granted to the Revolver Agent, for its own benefit and the benefit of the Revolver Secured Parties (all property identified in clauses (i) and (ii) below, other than the exceptions set forth therein, being collectively referred to as the "Collateral"), subject only to the Carve-Out (all such liens and security interests granted to the Revolver Agent, for its benefit and for the benefit of the Revolver Secured Parties pursuant to this Order, the "Revolver Adequate Protection Liens"):

    (i)    Lien On Unencumbered Property. A valid, binding, continuing, enforceable, fully-perfected first lien on, and security interest in, all tangible and intangible (x) postpetition property (excluding Avoidance Actions) of the Debtors, which, but for the commencement of the Cases, would constitute Prepetition Collateral, and (y) property (excluding Avoidance Actions), other than property set forth in (x), whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), provided that, with respect to Unencumbered Property described in clause (y) the lien granted pursuant to this paragraph (i) shall be immediately junior to any lien granted to the DIP Lenders, as defined in and pursuant to the DIP Order and (ii) shall be *pari passu* with any adequate protection liens granted to secure adequate protection obligations in favor of Term Lenders or to secure adequate protection obligations granted in favor of the secured parties under the U.S. Treasury Loan Agreement, as defined in the Motion.

    (ii)    Liens Junior To Certain Existing Liens. A valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property (excluding Avoidance Actions) of the Debtors whether now existing or hereafter acquired, that is subject and junior to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, provided that the lien granted pursuant to this paragraph shall also be subject and junior to any lien granted to the DIP Lenders, as defined in and pursuant to the DIP Order, and shall be *pari passu* with any adequate protection liens granted to secure

adequate protection obligations in favor of the Term Lenders or to secure adequate protection obligations granted in favor of the secured parties under the U.S. Treasury Loan Agreement.

(iii) <u>Liens Senior To Certain Other Liens</u>.  Except as set forth herein, the Revolver Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of any of the Debtors and their respective estates under section 551 of the Bankruptcy Code or (B) except to the extent otherwise required by law, any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest granted under sections 363 or 364 of the Bankruptcy Code or otherwise.  Notwithstanding the foregoing, the Revolver Adequate Protection Liens shall be subject and subordinate to duly perfected, non voidable, valid liens of governmental units for personal property taxes, real property taxes, special taxes, special assessments, and infrastructure improvement taxes arising after the Petition Date to the extent that such liens of governmental units take priority over previously granted and perfected consensual liens or security interests in property of the Debtors under applicable non-bankruptcy law.

(iv) Notwithstanding anything in this Order to the contrary, the Revolver Secured Parties shall not have an adequate protection lien on the Debtors' leasehold interests in (i) the real property located at and commonly known as 301 Freedom Drive, City of Roanoke, Denton County, Texas or (ii) the real property located at and commonly known as 475 Brannan Street, City and County of San Francisco, California.

(v) Nothing in this Order or the Interim Order shall in any way impair the right of any claimant with respect to any alleged reclamation right or impair the ability of a claimant to seek adequate protection with respect to any alleged reclamation right. Provided, however, that nothing in this Order, or the Interim Order shall prejudice any rights, defenses, objections or counterclaims that the Debtors, the DIP Lenders (as defined in and pursuant to the DIP Order), the

Revolver Agent, the Term Loan Agent, any Committee or any other party in interest may have with respect to such asserted liens or rights, or with respect to any claim for adequate protection.

For purposes hereof, the "Carve-Out" shall have the same meaning as provided in the DIP Order, and nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.  Notwithstanding anything herein to the contrary, the Carve-Out shall not apply to any Collateral proceeds or other amounts paid to the Revolver Agent for itself or for the benefit of the Revolver Secured Parties pursuant to the terms of this or any other order and all proceeds and other amounts shall be paid free and clear of the Carve-Out.

(c)     Current Payment of Interest, Fees, etc.  On account of the Adequate Protection Obligations, the Debtors shall pay to the Revolver Agent for the benefit of the Revolver Secured Parties (i) current interest on all outstanding Obligations calculated at the non-default rates (excluding the right to select Eurodollar options after the Petition Date) and in the manner set forth in the Revolver Facility, (ii) current payment of all Letter of Credit fees and all fronting fees together with all costs and expenses that may be payable to any Issuing Bank pursuant to sections 2A.3(a) and (b) of the Revolver Facility and (iii) current non default interest, letter of credit and fronting fees and other fees, charges and expenses in respect of any outstanding Non-Loan Exposure and Hedging Obligations (in each case under the foregoing subclauses (i), (ii) and (iii), including amounts which may have accrued prior to the Petition Date).  Such interest and fees shall be payable monthly on the last business day of each month and on the Termination Date, provided that costs and expenses payable pursuant to sections 2A.3(a) and (b) of the Revolver Facility shall be payable within 2 business days of request thereof.  Notwithstanding anything herein to the contrary, if and only if the Secured Obligations (including, without limitation, the Non-Loan Exposure and all Hedging Obligations) secured by the Collateral shall not have been indefeasibly paid in full (without taking into account (y) any default rate of interest accruing from the Petition Date (the "Prepayment Date") to the date of payment provided payment shall have occurred on or before 45 days from the Petition Date as provided in that certain Second Amendment and Consent dated as of May 28, 2009 to the Revolver Facility (the "Second Amendment")) or (z) any fees, changes or other expenses (including legal and advisor fees that may accrue after the Prepayment Date ((y) and (z) together, the "Excluded Charges") and in cash (and with respect to any letters of credit

7

then outstanding, including Letters of Credit issued pursuant to the Revolver Facility and letters of credit that constitute Non-Loan Exposure, either such letters of credit shall have been returned undrawn and marked "cancelled" to the relevant issuing bank or shall have been cash collateralized on terms reasonably acceptable to the relevant issuing bank in an amount equal to 105% of the face amount of each such letter of credit) on or before 45 days after the Petition Date, then (i) the provisions of Section 2.1 and 2.3 of the Second Amendment to the Revolver Facility shall be void *ab initio* and of no force and effect, and (ii) the Revolver Secured Parties' right at any time to seek payment of interest as of the Petition Date at the default rate set forth in Sections 2.12(f) and 2.12(A)(f), as applicable, of the Revolver Facility (and the right to seek default interest in respect of any Non-Loan Exposure) shall be fully preserved. Nothing in this Order shall constitute a finding that the actual amount of Adequate Protection Obligations shall equal the payments required to paid under this paragraph 6(c).

        (d)    <u>Reimbursement.</u>  The Debtors are authorized and directed, within 10 days of submission of invoices therefor (which invoices shall be concurrently provided to the US Trustee and any Committee), to pay or reimburse all pre or post Petition Date reasonable fees, costs and charges incurred by the Revolver Agent (including, without limitation, the reasonable fees and out-of-pocket disbursements of counsel to the Revolver Agent), in accordance with the terms and provisions of the Revolver Facility, in each case, in connection with matters relating to this Order and the monitoring of the Cases or the enforcement and protection of the rights and interests of the Revolver Agent in respect of the Adequate Protection Obligations and the Obligations.  None of the fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.

        7.    *Termination.*  The Debtors' right to use the Cash Collateral shall terminate (the date of any such termination, the "<u>Termination Date</u>") on the earliest to occur of (x) 45 days after the Petition Date or (y) upon 5 business days' written notice (the "<u>Notice</u>") to the Debtors (with a copy to counsel for any Committee, counsel for the United States Treasury and the United States Trustee) after the occurrence and continuance of any of the following events (the "<u>Events of Default</u>") beyond any applicable grace period set forth below:

        (a)    Failure of the Debtors to make any payment to the Revolver Agent or the Revolver Secured Parties as and when required by this Order;

8

(b) Failure of the Debtors to (i) comply with any material terms of this Order, or (ii) comply with any other covenant or agreement specified in this Order (other than those described in clause (i) above) and such failure to comply with any such other covenant or agreement shall continue unremedied for more than three (3) business days after written notice thereof is received from the Revolver Agent;

(c) Any of the Cases shall be dismissed or converted to a Chapter 7 case; or a Chapter 11 trustee with plenary powers, or an examiner with enlarged powers relating to the operation of the businesses of the Debtor (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases;

(d) An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Order in a manner that the Revolver Agent reasonably determines to be materially adverse to the interests of the Revolver Secured Parties;

(e) A filing by any Debtor (or any successors and assigns) of any motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Obligations or any other cause of action against and/or with respect to the Obligations, the prepetition liens securing such Obligations, the Revolver Agent or any of the Revolver Secured Parties;

(f) Other than payments authorized by the Court and which are permissible under the DIP Order, any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables in excess of $25 million in the aggregate during the Cases; or

(g) Five (5) business days after the acceleration of the DIP Facility, as defined in the Motion and attached to the DIP Order.

The Debtors shall promptly provide Notice to the Revolver Agent (with a copy to counsel for any Committee, the United States Treasury, and the United States Trustee) of the occurrence of any Event of Default. Notwithstanding clauses (c) and (f) of the foregoing, the Termination Date arising from the occurrence of the events set forth therein shall not occur unless and until the lenders under the DIP Facility, as defined in the Motion, have exercised remedies.

9

8.	*Limitation On Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Revolver Agent and Majority Lenders (as defined in the Revolver Facility), and no such consent shall be implied from any other action, inaction, or acquiescence by the Revolver Agent and Majority Lenders.

9.	*Payments Free and Clear.*  Subject to and effective upon expiration of the Challenge Period, any and all payments or proceeds remitted to the Revolver Agent on behalf of the Revolver Secured Parties pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

10.	*Reservation of Rights of Revolver Secured Parties.*  Based upon the consent of the Revolver Agent and the Majority Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Revolver Secured Parties in the Prepetition Collateral and the Cash Collateral. Notwithstanding any other provision hereof, the grant of adequate protection to the Revolver Secured Parties pursuant hereto is without prejudice to the right of the Revolver Agent and the Majority Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Revolver Secured Party.

11.	*Perfection Of Revolver Adequate Protection Liens.*

The Revolver Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to it

hereunder.  Whether or not the Revolver Agent chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

12.     *Preservation Of Rights Granted Under The Order.*

(a)     Except as set forth herein, no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the Revolver Agent and the Revolver Secured Parties shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and Revolver Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claim and the Revolver Adequate Protection Liens, shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claim and the Revolver Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     The use of Cash Collateral shall be deemed an extension of credit pursuant to section 364 of the Bankruptcy Code by the Revolver Secured Parties. If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Revolver Agent of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the Revolver Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral or any Adequate Protection Obligations incurred by the

11

Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Revolver Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Revolver Agent and the Revolver Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, and this Order with respect to all uses of Cash Collateral, and all Adequate Protection Obligations.

(d) Except as expressly provided in this Order or in the Loan Documents, the Adequate Protection Obligations, the Superpriority Claim and all other rights and remedies of the Revolver Agent and the Revolver Secured Parties granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Order shall continue in the Cases or in any superseding chapter 7 case under the Bankruptcy Code, and the Revolver Adequate Protection Liens, the Superpriority Claim and all other rights and remedies of the Revolver Agent and the Revolver Secured Parties granted by the provisions of this Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

13. *Limitation On Use Of Collateral*. The Debtors shall use the proceeds of the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order. Notwithstanding anything herein or in any other order of this Court to the contrary, no Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Loan Documents, or the liens or claims granted under this Order or the Loan Documents, (b) assert any claims and defenses or any other causes of action against the Revolver Agent and the Revolver Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Revolver Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the Loan Documents or this Order, or (d) seek to modify any of the rights granted to the Revolver Agent and the Revolver Secured Parties hereunder or under the Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior

12

written consent.  The foregoing restrictions of this paragraph 13 shall be of no force or effect if the Obligations (including the Adequate Protection Obligations but excluding the Excluded Charges) shall have been paid in full in cash.

14. *Binding Effect; Successors And Assigns*.  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Revolver Agent, and the Revolver Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the estates of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any Debtor or with respect to the property of the estate of any Debtor) and shall inure to the benefit of the Revolver Agent, the Revolver Secured Parties and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Order, the Revolver Agent and the Revolver Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

15. *Limitation of Liability*.  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the Loan Documents, the Revolver Agent and the Revolver Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of such Revolver Agent or Revolver Secured Parties do not constitute, within the meaning of 42 U.S.C. §§ 9001(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).  Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon the Revolver Agent or any of the Revolver Secured Parties any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

16.     *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

17.     *Investigation of Liens Securing Prepetition Collateral.*  Effective upon entry of this Order, the Debtors (on behalf of their estates) and any successor thereto release the Revolver Agent and the Revolver Secured Parties and each of their directors, officers, appointees, counsel, advisors and employees serving in any capacity or function, including as a fiduciary, agents, advisors, shareholders, subsidiaries, affiliates, heirs, executors, administrators, attorneys, advisors, successors and assigns from, against and with respect to any and all actual or potential demands, claims, actions, causes of action (including derivative causes of action), suits, assessments, liabilities, losses, costs, damages, penalties, fees, charges, expenses and all other forms of liability whatsoever, in law or equity, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising under the Bankruptcy Code, state law or otherwise, now existing or hereafter arising, directly or indirectly related to the Revolver Loan Facility and any and all dealings between the Revolver Agent and/or any Revolver Secured Party in connection with the Revolver Facility, provided, however, that such release shall not apply to the Committee with respect only to the perfection of first priority liens of the Revolver Agent or any Revolver Secured Party (it being agreed that if the Revolver Secured Parties, after Payment, assert or seek to enforce any right or interest in respect of any junior liens, the Committee shall have the right to contest such right or interest in such junior lien on any grounds, including (without limitation) validity, enforceability, priority, perfection or value) (the "Reserved Claims").  The Committee shall have the authority to both investigate the Reserved Claims and bring actions based upon the Reserved Claims against the Revolver Agent or any Revolver Secured Party not later than July 31, 2009 (the "Challenge Period"), provided, that upon the filing of any adversary proceeding prosecuting any Reserved Claim, the Challenge Period shall be extended with respect to such adversary proceeding through and until a court of competent jurisdiction dismisses such adversary proceeding.

18.     *Jurisdiction.*  The Revolver Agent and any Revolver Secured Party accepting payment of the Obligations shall submit to the jurisdiction of the Bankruptcy Court, it being understood that the respective administrative and collateral agents for the Revolver Facility shall have no responsibility or liability for amounts

14

paid to any Revolver Secured Party and such agents shall be exculpated for any and all such liabilities, excluding only such funds as are retained by each such agent solely in its respective role as a lender.

19. *Default Interest.*  Upon the indefeasible payment in full of the Secured Obligations (other than the Excluded Charges) and the Non-Loan Exposure in accordance with the provisions of the Second Amendment, the Revolver Secured Parties shall no longer have any right to seek payment of postpetition interest at the default rate under the Revolver Facility.

20. *No Waiver.*  Nothing in this Order shall be deemed to alter, amend, release or waive any obligations of any non-Debtor affiliate under the Revolver Facility and documents related thereto.

21. *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order. This Order supersedes the Interim Order and shall be effective as of the Petition Date.

Dated:   *June 25, 2009*
         New York, New York

                                            */s/ Robert E. Gerber*
                                            UNITED STATES BANKRUPTCY JUDGE