FOLEY & LARDNER LLP
Victor A. Vilaplana (*pro hac vice pending*)
Katherine R. Catanese (*admitted pro hac vice*)
Matthew J. Riopelle (*pro hac vice pending*)
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Toyota Motor Corporation*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |

-------------------------------------------------------------X

**SUPPLEMENTAL LIMITED OBJECTION OF TOYOTA MOTOR CORPORATION TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND CURE AMOUNTS RELATED THERETO**

Toyota Motor Corporation ("TMC"), by its attorneys Foley & Lardner LLP, hereby submits this supplemental objection (the "Objection") to the Debtors' assumption and assignment of certain executory contracts and the Debtors' proposed Cure Amounts related thereto. In support of its Objection, TMC states as follows:

**PRELIMINARY STATEMENT**

1. On June 19, 2009, TMC filed its Limited Objection to the Debtors' assumption and assignment of certain executory contracts and the Debtors' proposed Cure Amounts related thereto (the "Initial Objection"). At the time TMC filed its initial objection, it had not received any notice from the Debtors regarding the assumption and assignment of its contracts with the

DETR_1216043.1

Debtors. TMC filed its Initial Objection "blind" because it was aware that a proposed order regarding assumption and assignment had a June 19, 2009 deadline.

2. TMC hereby incorporates by reference all of the statements in its Initial Objection, filed on June 19, 2009 as docket number 2045.

3. On or about June 5, 2009, the General Motors Corporation ("GM") sent Notices of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Real Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (the "June 5 Notices"), in which the Debtors designated certain agreements (the "Assumable Executory Contracts") between the Debtors and various suppliers to be assumed and assigned to Vehicle Acquisition Holdings LLC (the "Purchaser").

4. The June 5 Notices referenced contracts between TMC (also listed as Toyota Jidosha Kabushiki Kaisha and Toyota Motor Corp.) and GM which are listed on Exhibit A, attached hereto.

### I. The Debtors Violated TMC's Procedural Due Process Rights by Not Giving TMC Proper Notice and Time to Object to the Assumption and Assignment.

5. In *Mullane* v. *Central Hanover Bank and Trust Co.*, the Supreme Court stated that "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). The key requirements of due process are notice and meaningful opportunity to respond. *See Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995). Here, TMC has not been provided with a meaningful opportunity to object to the assumption and assignment of its contracts with the Debtors.

6. The June 5 Notices were sent to TMC's offices in Japan via first class mail. GM failed to avail itself of modern methods of service (i.e. email or facsimile) by only utilizing first

class mail when sending the June 5 Notices to a foreign country.  TMC did not receive the June 5 Notices in its offices in Japan until June 22, 2009.  With one exception, none of the June 5 Notices was directed to a particular individual or department at TMC.  Thus, TMC (in Japan) upon receipt of the June 5 Notices (written in English) had to determine the appropriate department and individual at TMC to whom to route the June 5 Notices.  At the time of receipt, TMC was already seven days beyond the presumptive ten day deadline contained in the June 5 Notices to object to the June 5 Notices.

7. With only three days having passed since receipt of the notices, TMC has had insufficient time to review the contracts, the cure amounts and to ensure that the Purchaser has provided adequate assurances of its future performance.

8. In fact, with one exception, the GM secure website alleges that the cure amounts related to the contracts listed on Exhibit A is zero dollars[1].  Thus, TMC needs additional time to review the contracts and determine if GM's alleged cure amount is correct.

9. In addition to the June 5 Notices sent to TMC's Japan offices, GM sent additional Notices of Assumption and Assignment dated June 15, 2009 ("June 15 Notices") related to additional contracts between GM and TMC (a separate objection is being filed as to those contracts designated in the June 15 Notices).

10. At this point, TMC is unsure if this is the full extent of all of the contracts between TMC and GM which GM intends to assume and assign to the Purchaser.

---

[1] The lone exception is far more confusing.  Upon logging into the secured website for one user ID provided by GM, a cure amount of $182,725.92 is listed along with 83 separate contracts with various counterparties.  No explanation of the reasoning behind listing 83 contracts under one user ID is offered by GM.  In addition, no information is provided about the individual contracts other than referring to them as either an "Agreement" or a "Blanket Order."

11. In addition, TMC may have an interest in other contracts but many of these contracts are between GM and counterparties other than TMC.

**II.  The June 5 Notices Improperly Allow For the Assumable Executory Contracts to be Assumed Without Payment of the Cure Amount or Adequate Assurance of Prompt Cure**

12. Paragraph 8 of the June 5 Notices provide in part:

> If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable following resolution of such disputed Cure Amount.

13. The Assumption Effective Date is defined in Paragraph 14 of the June 5 Notices as the later of the date proposed by the Debtors, which date may be the Closing or a later date, and "the date following expiration of the Objection Deadline if no Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract."

14. The June 5 Notices thus allows for the possibility that that the Assumable Executory Contracts will be assumed and assigned before a dispute as to the proper Cure Amount is resolved.

15. As noted above, Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate

assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A).

16. Further, Section 365(f)(2)(A) provides that the trustee may only assign a contract if "the trustee assumes such contract…in accordance with the provisions of this section." 11 U.S.C. § 365(f)(2)(A).

17. The Bankruptcy Code thus unequivocally requires that *before* a contract can be assumed or assigned, any defaults must either be cured or adequate assurance that a prompt cure will be provided must be given. *See, e.g., In re* Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990) ("[i]f the debtor wishes to assume the [contract] it must first cure the default as required by 11 U.S.C. § 365(b)"). Here, it is impossible for GM to provide adequate assurance of a prompt cure because the cure amount has not yet been ascertained.

18. The Assumable Executory Contracts should not be assumed and assigned to the Purchaser unless and until the Debtors or the Purchaser cure any defaults thereunder or give adequate assurance that a prompt cure will be provided.

**III.    GM has not provided adequate assurance of future performance by the Purchaser**

19. GM has not provided adequate assurance of future performance by the Purchaser. To assume and assign an executory contract, section 365(f) requires adequate assurance of future performance by the assignee. 11 U.S.C. §365(f)(2)(B). The requirement of adequate assurance of future performance should be given a "'practical, pragmatic construction based on … the circumstance of [the] case.'" *In re* PRK Enterprises, Inc., 235 B.R. 597, 603 (Bankr. E.D. Tx. 1999) (*quoting In re* Prime Motor Inns, Inc., 166 B.R. 933, 997(Bankr. S.D. Fla. 1994)). Adequate assurance of future performance requires that performance by the assignee be more probable than not. *Id*.

20.     To date, GM has not provided *any* assurance of the Purchaser's future performance.  In addition, it is unclear which contracts GM will be assuming and assigning to the Purchaser.  Some of the contracts may be so interrelated that assumption of one without another would effectively prohibit future performance.  Thus, GM must provide adequate assurance of the Purchaser's future performance and indicate *specifically* which contracts it intends to assume and assign – to ensure that future performance is possible.

### RELIEF REQUESTED

WHEREFORE, TMC requests that the Court enter an order denying the Debtors' request to assume and assign the Assumable Executory Contracts unless and until TMC's objections are satisfied or until TMC has reached and agreement with GM, and grant such other and further relief as the Court deems just and proper.

Dated:    June 25, 2009            FOLEY & LARDNER LLP

/s/ Victor A. Vilaplana
Katherine R. Catanese (*admitted pro hac vice*)
Matthew Riopelle (*pro hac vice pending*)
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Toyota Motor Corporation*

## CONTRACTS LISTED ON JUNE 5TH NOTICES

| Contract Name[2] | Vendor ID | Counterparty Name | GM Cure Amount |
|---|---|---|---|
| Trademark Agreement | 5716-01056384 | Toyota Jidosha kabushiki Kaisha | $0 |
| Trademark Consent Agreement | 5716-01056383 | Toyota Jidosha kabushiki Kaisha | $0 |
| Trademark Agreement | 5716-01056385 | Toyota Motor Corporation | $0 |
| Teaming Agreement (Hybrid) | 5716-00303846 | Toyota Motor Corporation | $0 |
| Affiliation Agreement (Subscription Agreement) | 5716-00003261 | Toyota Motor Corporation | $0 |
| Non-Disclosure Agreement (EV and HEV Collaboration) | 5716-00303847 | Toyota Motor Corporation | $0 |
| Unknown[3] | 690564737 | Various Parties | $182,725.92 |
| Trademark Agreement | 5716-01056386 | Toyota Motor Corporation | $0 |

**EXHIBIT A**

---

[2] Note that the Contract Name does not appear on the GM secured website.

[3] Upon review of GM's Contract Notice website, 83 contracts are listed as included under the log-in information provided in the notice. Many of these contracts are with entities in which Toyota may have an interest but Toyota is not the counterparty.