FOLEY & LARDNER LLP
Victor A. Vilaplana (*pro hac vice pending*)
Katherine R. Catanese (*admitted pro hac vice*)
Matthew J. Riopelle (*pro hac vice pending*)
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Toyota Motor Corporation*

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| GENERAL MOTORS CORP., *et al.*, | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |

-----------------------------------------------------------------X

**LIMITED OBJECTION OF TOYOTA MOTOR CORPORATION TO**
**JUNE 15 NOTICES OF ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND CURE AMOUNTS RELATED THERETO**

Toyota Motor Corporation ("TMC"), by its attorneys Foley & Lardner LLP, hereby submits this limited objection (the "Objection") to the Debtors' June 15 notices of assumption and assignment of certain executory contracts and the Debtors' proposed Cure Amounts related thereto. In support of its Objection, TMC states as follows:

**PRELIMINARY STATEMENT**

1.  On or about June 15, 2009, the General Motors Corporation ("GM") sent second notices of (I) Debtors' Intent to Assume and Assign Certain Additional Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property (the "June 15 Notices"), in which the Debtors designated a second set of certain agreements (the

"Assumable Executory Contracts") between TMC and the Debtors that may be assumed and assigned to Vehicle Acquisition Holdings LLC (the "Purchaser").

2. The June 15 Notices provide a user identification number, password, and vendor identification number to log into GM's secured website (the "Website").

3. The Website lists the contracts between TMC and GM which are listed on Exhibit A attached hereto.

**I.    The Debtors Have Violated TMC's Procedural Due Process Rights by Not Giving TMC Proper Notice and Time to Object to the June 15 Notices.**

4. In *Mullane* v. *Central Hanover Bank and Trust Co.*, the Supreme Court stated that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).  The key requirements of due process are notice and meaningful opportunity to respond.  *See Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995).  Here, TMC has not been afforded notice and a meaningful opportunity to object to the assumption and assignment of its contracts with GM.

5. The June 15 Notices were sent to Torrance, California, which is the address for Toyota Motor Sales, and Freemont, California, which is the address for New United Motor Manufacturing, Inc. ("NUMMI").  Neither Toyota Motor Sales nor NUMMI are the counterparties to the contracts listed on the Website.

6. In addition, neither the Torrance nor the Freemont address is the correct address for service of documents on TMC.  In fact, GM previously sent notices of assumption and assignment to TMC's address in Japan.

7. TMC only received the June 15 Notices through the diligent efforts of Toyota Motor Sales' attorneys, which called the GM call center and GM's attorneys.

2

8. Thus, at this time, TMC has not been properly served with the June 15 Notices.

## II.  The Proposed Cure Amount Is Inadequate

9. Since TMC has not had an adequate opportunity to review the June 15 Notices. TMC reserves its rights to object to the proposed Cure Amount, which GM has listed as zero dollars on the Website.

10. "Cure Amounts" are defined in the Master Sale and Purchase Agreement as "all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by the applicable Seller and assignment to Purchaser of the Purchased Contracts."

11. To the extent that the proposed Cure Amount does not accurately reflect all prepetition and post-petition defaults, it is insufficient. Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A). Congress's intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). Resolution of claims of default arising under an assumed contract seeks to restore the debtor-creditor relationship to pre-default conditions, thereby bringing the contract back into compliance with its terms. *In re* Wireless Data, Inc., 547 F.3d 484 (2d Cir. 2008).

3

12. The Debtors must cure all prepetition defaults under the Assumable Executory Contracts. The Debtors' proposed Cure Amount may deprive TMC of the full benefit of its bargain and would fail to restore the parties to pre-default conditions.

13. TMC has not had an adequate opportunity to review the June 15 Notices, and TMC reserves the right to submit amounts to be added to the proper Cure Amount after it has had opportunity to fully review the and reconcile the contracts listed on the Website.

**III.    The List of Contracts that the Debtors Have Designated for Assumption and Assignment May Not Be Correct and GM Has Provided Insufficient Information for TMC to Be Able to Identify the Contracts.**

14. TMC has not had adequate opportunity to review the contracts listed on the Website and cannot reconcile the contracts that GM has listed on their Website because GM has provided insufficient information to figure out the identify of the contracts. TMC must ensure that the correct contracts are listed on the Website (with attendant Cure Amounts) before TMC is bound by any assumption and assignment or Cure Amounts with respect to such contracts.

15. TMC further reserves its rights to object to any additional and/or amended notice of assumption and assignment received from the Debtors and/or the Purchaser and to any changes to the information contained on the Website referenced in the June 15 Notices.

**III.    To the Extent that the Contracts Listed on Exhibit A Relate to the Shareholder Agreement and the Licensing Contracts, These Contracts May Not Be Assumed or Assigned.**

16. TMC and GM are parties to several licensing contracts (the "<u>Licensing Contracts</u>") and may be party to other contracts.

17. TMC and GM also entered into a joint venture to form NUMMI. NUMMI was formed to manufacture U.S. vehicles and certain component parts for those vehicles. TMC and GM entered into a shareholder agreement on February 21, 1984 whereby TMC would own 50%

4

of the shares in NUMMI and GM would own 50% of the shares in NUMMI (the "Shareholder Agreement," and together with the Licensing Agreement, the "TMC Contracts").

18. On June 19, 2009, TMC objected to the assumption and assignment of the Shareholder Agreement and the Licensing Contracts on various grounds (see docket number 2045). Of particular importance, TMC objected to the assumption and assignment because the agreements cannot be assumed and assigned under section 365(c) of the Bankruptcy Code.

19. Although it is unclear which contracts listed on Exhibit A could be identified as the Shareholder Agreement or the Licensing Contracts, TMC asserts the same objections regarding the Shareholder Agreement and Licensing Contracts that were contained in its June 19, 2009 objection.

20. Additionally, to the extent that the contracts listed on Exhibit A relate to agreements involving NUMMI, GM may not assume or assign these contracts unless the Shareholder Agreement is assumed or assigned because these contracts may be integrally related to the NUMMI joint venture.

21. Therefore, to the extent that the contracts listed on Exhibit A are the Shareholder Agreement, Licensing Agreements, or any contracts that relate to the NUMMI joint venture, TMC objects to the assumption and assignment of these contracts.

**IV.    The June 15 Notices Improperly Allows For the Assumable Executory Contracts to be Assumed Without Payment of the Cure Amount or Adequate Assurance of Prompt Cure**

22. Paragraph 8 of the June 15 Notices provides in part:

> If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon

5

    as reasonably practicable after the Assumption Effective Date, and
the disputed portion of the Cure Amount shall be determined as
follows and paid as soon as reasonably practicable following
resolution of such disputed Cure Amount.

  23. The assumption effective date is later defined in Paragraph 14 of the June 15 Notices as the later of the date proposed by the Debtors, which date may be the closing or a later date, and "the date following expiration of the Objection Deadline if no Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract."

  24. The June 15 Notices thus allow for the possibility that that the Assumable Executory Contracts will be assumed and assigned before a dispute as to the proper Cure Amount is resolved.

  25. As noted above, Section 365(b)(1)(A) of the Bankruptcy Code provides that the trustee may not assume an executory contract unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure" any default under the contract. 11 U.S.C. § 365(b)(1)(A).

  26. Further, Section 365(f)(2)(A) provides that the trustee may only assign a contract if "the trustee assumes such contract…in accordance with the provisions of this section." 11 U.S.C. § 365(f)(2)(A).

  27. The Bankruptcy Code thus unequivocally requires that *before* a contract can be assumed or assigned, any defaults must either be cured or adequate assurance that a prompt cure will be provided must be given. *See, e.g., In re* Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990) ("[i]f the debtor wishes to assume the [contract] it must first cure the default as

6

required by 11 U.S.C. § 365(b)"). Here, it is impossible for GM to provide adequate assurance of a prompt cure because the cure amount has not yet been ascertained.

28. The Assumable Executory Contracts should not be assumed and assigned to the Purchaser unless and until the Debtors or the Purchaser cure any defaults hereunder or give adequate assurance that a prompt cure will be provided.

**V.    GM Has Not Provided Adequate Assurance of Future Performance by the Purchaser.**

29. GM has not provided adequate assurance of future performance by the Purchaser. To assume and assign an executory contract, section 365(f) requires adequate assurance of future performance by the assignee. 11 U.S.C. §365(f)(2)(B). The requirement of adequate assurance of future performance should be given a "'practical, pragmatic construction based on … the circumstance of [the] case.'" *In re* PRK Enterprises, Inc., 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (*quoting In re* Prime Motor Inns, Inc., 166 B.R. 933, 997(Bankr. S.D. Fla. 1994)). Adequate assurance of future performance does require that performance be more probable than not. *Id*.

30. To date, GM has not provided *any* assurance of the Purchaser's future performance. In addition, it is unclear which contracts GM will be assuming and assigning to the Purchaser. Some of the contracts may be so interrelated that assumption of one without another would effectively prohibit future performance. Thus, GM must provide adequate assurance of the Purchaser's future performance and indicate *specifically* which contracts it intends to assume and assign to ensure that future performance is possible.

7

## **RELIEF REQUESTED**

WHEREFORE, TMC requests that the Court enter an order denying the Debtors' request to assume and assign the Assumable Executory Contracts unless and until TMC's objections are satisfied or TMC has reached an agreement with GM, and grant such other and further relief as the Court deems just and proper.

Dated: June 25, 2009                FOLEY & LARDNER LLP


/s/ Victor A. Vilaplana
Katherine R. Catanese (*admitted pro hac vice*)
Matthew J. Riopelle (*pro hac vice pending*)
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

*Attorneys for Toyota Motor Corporation*