James L. Bromley
Avram E. Luft
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for The International Union, United
Automobile, Aerospace and Agricultural
Implement Workers of America, AFL-CIO*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
:
In re                                                                    :    Chapter 11
:
General Motors Corporation, *et al.*,                                    :    Case No. 09-50026 (REG)
:
Debtors.                                          :    (Jointly Administered)
:
------------------------------------------------------------------------ X

# RESPONSE OF THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO TO OBJECTIONS TO DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE SALE OF <u>SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND OTHER RELIEF</u>

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO (the "**UAW**"), by and through its undersigned counsel, hereby submits this omnibus response (the "**Response**") to correct the record regarding issues raised by certain objectors who have argued that the 363 Transaction is a sub rosa plan or is otherwise inappropriate under section 363 of the Bankruptcy Code[1] (the "**Objections**") in connection with the Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(b), (f), (k), And (m), And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006, To (I) Approve (a) The Sale Pursuant To

---

[1]    11 U.S.C. §§ 101 *et seq.*

The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief; And (II) Schedule Sale Approval Hearing [Docket No. 92] (the "**Sale Motion**").[2] In support of its Response, and in further support of the Sale Motion, the UAW respectfully states as follows:

### PRELIMINARY STATEMENT

1. The Debtors have established beyond question that to preserve the going concern value of the Purchased Assets the 363 Transaction must be consummated as expeditiously as possible. For this preservation of value to happen, UAW members following extensive negotiations agreed to make significant sacrifices in amending their collective bargaining agreements ("**CBAs**"), which (as amended), will be assumed and assigned to the Purchaser. The entry into these agreements, and settlement of the UAW's claims regarding the Purchaser's obligation to provide retiree benefits, was conditional on the coinciding agreement of the Purchaser and the UAW to enter into the UAW Retiree Settlement Agreement,[3] providing for a revised voluntary employees beneficiary association ("**VEBA**") funding structure and benefit levels. Absent this agreement and its provision for both active and retired union members, no labor agreement (and thus no 363 Transaction) would be possible.

2. While certain objectors misconstrue the 363 Transaction to suggest that the UAW and VEBA somehow will receive distributions on account of pre-petition claims, the UAW Retiree Settlement Agreement is with the Purchaser only and does not provide for a

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion. The UAW is separately submitting, concurrently herewith, a response that addresses objections filed by individual retirees in connection with the UAW Retiree Settlement Agreement (the "Retiree Settlement Response").

[3] The UAW Retiree Settlement Agreement was filed with this Court with the Notice Of Filing Of Certain Schedules And Exhibits To The Master Sale And Purchase Agreement [Docket No. 947].

2

distribution of estate property. As Judge Gonzalez recognized in the analogous Chrysler bankruptcy: "The consideration provided to New Chrysler by the UAW in exchange for New Chrysler's agreement to take over obligations under VEBA are unprecedented modifications to the collective bargaining agreement, including a six-year no-strike clause. The consideration provided by New Chrysler in that exchange is not value which would otherwise inure to the benefit of the Debtors' estates." In re Chrysler LLC, 405 B.R. 84, 100 (Bankr. S.D.N.Y. 2009). The Objections thus not only fail to account for the centrality of the complete package of labor agreements to the Purchaser's business plan, but also misconstrue the fundamental features of the 363 Transaction. The Court should approve the 363 Transaction without further delay.

## BACKGROUND

3.      Under CBAs between the UAW and GM, the UAW is the collective bargaining representative of 61,000 of GM's direct and indirect active production and skilled trades workers. In addition, under Section 1114(c)(1) of the Bankruptcy Code, the UAW is the authorized representative of GM's UAW-represented retirees, surviving spouses and their eligible dependents who are receiving retiree benefits (as defined in Section 1114(a)). See Decl. of David Curson ("**Curson Decl.**") [Docket No. 2518] ¶ 1; Aff. of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 ("**Henderson Aff.**") [Docket No. 21] ¶ 18.

*UAW CBAs with the Debtors*

4.      For many years, the UAW engaged in pattern bargaining with the Debtors and each of the other two major U.S. auto manufacturers, Ford Motor Company ("**Ford**") and Chrysler LLC ("**Chrysler**"). As a result, the CBAs between the UAW and each of these "big three" manufacturers were generally on substantially similar terms. Curson Decl. ¶ 4.

5.      These CBAs required GM, as well as each of Ford and Chrysler, to provide health and other non-pension benefits to retirees. Curson Decl. ¶¶ 2, 4. This reflects the

3

fundamental nature of labor organizations such as the UAW. Id. ¶ 4. UAW members undertake a serious commitment to one another as brothers and sisters; a critical part of that mutual commitment is that active members take care of retired members, and future members take care of the current employees when they retire. Id. ¶ 2.

6.  As set forth in the Retiree Settlement Response, following disagreements between the UAW and the Debtors concerning the Debtors' benefit obligations to retired union members, GM entered into a settlement agreement under which GM's retiree benefit obligations would be permanently shifted to a VEBA that would administer a retiree health care plan. See Retiree Settlement Response ¶¶ 10-13.

*The 363 Transaction: CBA Amendments and the UAW Retiree Settlement Agreement*

7.  The recent collapse in the world economy, including the drying up of the credit markets and skyrocketing fuel prices in 2008, as well as the reduction in consumer and business demand for automobiles and light-duty vehicles, had a devastating financial impact on GM. See, e.g., Sale Motion ¶¶ 31-33; Henderson Aff. ¶¶ 11, 40-47, 67.

8.  After carefully examining available strategies, the Debtors determined that no viable alternative to a sale existed and agreed to sell substantially all of their assets to the Purchaser in order to preserve value for stakeholders. This sale, which represents the best and only transaction available to the Debtors, is expressly conditioned on, among other things, agreements with the UAW providing for labor modifications and necessary approvals of VEBA modifications. See Sale Motion ¶¶ 8-9, 31; Henderson Aff. ¶¶ 5, 14-15, 36-39; Curson Decl. ¶¶ 5, 6, 10; Master Sale and Purchase Agreement,[4] §§ 7.2(d), (e).

9.  Specifically, material changes to the existing CBAs between the UAW and the Debtors were sought as a requirement of any sale. Curson Decl. ¶ 5. In approaching

---

[4] The Master Sale and Purchase Agreement is Exhibit A to the Sale Motion [Docket No. 92].

4

those negotiations, the UAW expressed willingness to consider recommending to its membership amendments to the CBAs, including sacrifices as to important job protections that were obtained not only from the Debtors but also from Ford and Chrysler over fifty years of bargaining. Id. However, the UAW's consistent position was that at the same time that active members were being asked to make sacrifices in connection with CBA amendments, the needs of retired UAW members also had to be addressed. Id.

10.     To that end, for active employees, the UAW and the Debtors agreed upon amendments to their CBAs providing substantial concessions that the Purchaser has deemed necessary for its ongoing operations. See Curson Decl. ¶ 5; Henderson Aff. ¶ 16, 57. The UAW made these sacrifices as part of an overall labor agreement, which had to include the Purchaser's funding of retiree health benefits through the VEBA. Memo of Law at 25 n.6;[5] Curson Decl. ¶¶ 5, 6, 10.

11.     Specifically, for retired employees, the UAW and the Purchaser have entered into the UAW Retiree Settlement Agreement. Notably, this agreement is between the UAW and the Purchaser. Under the UAW Retiree Settlement Agreement, the Purchaser will fund the VEBA through (i) shares of common stock of the Purchaser representing 17.5% of the Purchaser's total outstanding common stock, (ii) a note of the Purchaser in the principal amount of $2.5 billion, (iii) shares of cumulative perpetual preferred stock of the Purchaser in the amount of $6.5 billion, (iv) warrants to acquire 2.5% of the Purchaser's equity, and (v) the assets held in the UAW portion of a VEBA trust sponsored by the Debtors. See Henderson Aff. ¶ 17.

---

[5]     Memorandum Of Law In Support Of Debtors' Motion Pursuant To 11 U.S.C. §§ 105, 363(b), (f), (k), (m) And 365, And Fed. R. Bankr. P. 2002, 6004 And 6006, To (I) Approve (A) The Sale Pursuant To The Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored the Purchaser, Free And Clear Of Liens, Claims, Encumbrances And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (C) Other Relief; And (II) Schedule Sale Approval Hearing [Docket No. 105] ("**Memo of Law**").

12. While the UAW Retiree Settlement Agreement contemplates a reduction in certain benefit levels, it preserves core benefits. Curson Decl. ¶ 8.

13. The VEBA will fund benefits not only for current retirees but also for current employees once they retire. Curson Decl. ¶ 9.

14. When the UAW solicited its members' approval of the amended CBAs, through a process known as ratification, the disclosure materials explained the VEBA arrangements embodied in the UAW Retiree Settlement Agreement. Curson Decl. ¶ 12. Having received these solicitation materials, UAW members voted to ratify amendments to the CBAs on May 29, 2009. Id. ¶ 13.

15. The Purchaser's agreement to fund the VEBA so as to provide for retiree health benefits was a prerequisite to the UAW's recommendation that the membership ratify. Without a CBA with the UAW covering the Debtors' current production and maintenance workforce, GM (whether new or old) would not have an immediate supply of trained workers and would have faced a very real risk of strike. Curson Decl. ¶ 10. Quite simply, had retiree health benefits not been addressed, the membership would not have voted to ratify the modified CBAs and the necessary preservation of the going concern value of the Purchased Assets would have been imperiled. The provisions in the 363 Transaction relating to both current and retired employees are thus critical to the success of the Purchaser.

*The Objections*

16. In an attempt to argue that the 363 Transaction is a de facto plan of reorganization, certain of the Objections suggest that the Purchaser's agreement to provide retiree benefits represents a distribution on account of pre-petition claims. While the Debtors' responsive papers fully address these Objections, as to the UAW in particular, the objectors

6

misconstrue the structure of the sale, as well as the centrality of the UAW Retiree Settlement Agreement and related amended CBAs to the Purchaser's future success.

## AN AGREEMENT ON RETIREE HEALTH BENEFITS WAS NECESSARY FOR AN OVERALL LABOR DEAL

17.     The record conclusively establishes the need to expeditiously consummate the 363 Transaction to preserve the going concern value of the Purchased Assets. See, e.g., Henderson Aff. ¶¶ 14, 15; Supplemental Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 [Docket No. 2479] ¶¶ 4-7. The amended CBAs are fundamental to the 363 Transaction and necessary to facilitate an orderly transition from the Debtors to the Purchaser. As the Presidential Task Force on the Auto Industry explicitly recognized:

> [T]he UAW will provide [value] to New GM in its efforts to compete effectively in the auto industry. New GM views the UAW's skilled workforce as essential to its future operations and engaged in negotiations to reach a revised collective bargaining agreement, which includes an agreement on the New VEBA. It would be impossible for New GM to operate without a skilled workforce. If the UAW failed to cooperate with New GM post-petition, there would be no functioning company.

Decl. of Harry Wilson ("**Wilson Decl.**") [Docket No. 2577] ¶ 20; see Curson Decl. ¶ 14. Absent agreement regarding the terms and conditions of employment of the Debtors' current UAW-represented workforce, the Purchaser would face uncertainty about its ability to run its business and the Purchased Assets would be less valuable to it, potentially reducing the payment that the estate could receive for these assets.

18.     Part of the consideration demanded by the UAW from the Purchaser for providing this workforce, and part of the consideration that was given by the Purchaser in exchange for this workforce, was the UAW Retiree Settlement Agreement, which provides health benefits for the UAW's retirees. As a fundamental basis on which the UAW operates, active members are committed to stand together with their retired brothers and sisters to ensure

7

that retiree benefits are respected. Curson Decl. ¶ 4. In turn, when current employees retire, their interests will be protected by future union members. Id. The compromise reached between the Purchaser and the UAW, under which the VEBA will be funded, is inextricably intertwined with the UAW's agreement to the concessions embodied in the active members' amended CBA, the terms of which are necessary for the Purchaser's effective operation. Id. ¶¶ 5, 6, 10, 12. Indeed, the solicitation materials that the UAW sent to current employees, seeking their ratification of the amended CBAs, explained the terms by which the Purchaser would fund the VEBA, as well as related concessions in retiree health benefits. Id. ¶ 12. Without agreement between the Purchaser and the UAW on provisions for retirees, UAW leadership could not have recommended the amended CBAs to the active members.[6] Id. ¶ 10. Even if the UAW had made such a recommendation without addressing retired members' needs, active members would not have ratified the amended CBAs that the Purchaser requires for an immediate supply of trained, experienced workers. Id.

          19. At base, the Purchaser's agreement to certain commitments for the VEBA – as part and parcel of the overall agreement to assume the obligations under the modified CBAs – proves no different from requirements frequently imposed by asset purchasers that agreements with certain contract counterparties must be assumed and assigned. Here, the UAW membership has agreed to amended CBAs containing unprecedented concessions including a six-year no-strike clause that will be assumed and assigned to the Purchaser; these amended CBAs will provide the Purchaser with significant cost savings and access to a ready-trained and experienced workforce. See Curson Decl. Ex. A at 10 (submission to binding arbitration of unresolved issues surrounding the renegotiation of the 2007 National Agreement). In turn, and in order to secure

---

[6] The VEBA is important not only to current retirees, for obvious reasons, but also to the current workforce whose retiree health benefits will also be provided by the VEBA.

8

membership ratification of those CBAs by the Debtors' workforce, the UAW and the Purchaser reached agreement on the UAW Retiree Settlement Agreement and its terms for funding the VEBA to provide retiree health benefits.

## THE SALE PROVIDES NO DISTRIBUTIONS ON ACCOUNT OF THE UAW'S PREPETITION CLAIMS

20. Certain objectors' contentions regarding the UAW Retiree Settlement Agreement are based on the mistaken factual premise that the UAW and VEBA are somehow receiving distributions on account of their status as unsecured creditors. This is not the case. Judge Gonzalez in considering notably similar facts stated, "the UAW, VEBA, and the Treasury are not receiving distributions on account of their prepetition claims. Rather, consideration to these entities is being provided under separately-negotiated agreements with New Chrysler." In re Chrysler LLC, 405 B.R. at 99. As described above, the UAW Retiree Settlement Agreement is part of a comprehensive agreement between the UAW and the Purchaser pursuant to which the UAW agreed to provide the Purchaser with a ready, willing and able workforce to run its factories in exchange for the Purchaser's agreement to assume the CBAs and fund the VEBA. All of the value that the UAW, its active members or retired members will receive comes from the Purchaser – not the Debtors. See Wilson Decl. ¶ 20 (VEBA's equity stake in Purchaser "is being given to the UAW on account of the value that the UAW will provide to New GM" and "was not intended to be – and is not in form or substance – a distribution on account of any claims the UAW may have in GM's chapter 11 cases").

## REQUEST FOR RELIEF

WHEREFORE, for the reasons set forth herein, the UAW respectfully requests that this Court approve the 363 Transaction and UAW Retiree Settlement Agreement and grant the other relief sought in the Debtors' Sale Motion without further delay.

Dated: June 26, 2009
New York, New York

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ James L. Bromley
    James L. Bromley
    Avram E. Luft
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel for The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO*