**Hearing Date: June 30, 2009 at 9:45 a.m.**

COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Telephone: (212) 563-4100
Facsimile: (646) 473-8227
Babette A. Ceccotti

Attorneys for International Union, United Automobile,
Aerospace, and Agricultural Implement Workers
Union of America, AFL-CIO

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
: 
In re: : Chapter 11
: 
GENERAL MOTORS CORP., *et al*., : Case No.09-50026 (REG)
: 
Debtors. : (Jointly Administered)
: 
-----------------------------------------------------------------x

SUPPLEMENTAL STATEMENT OF THE INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS
UNION OF AMERICA, AFL-CIO IN SUPPORT OF MOTION OF THE DEBTORS
TO APPROVE THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE
AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS, LLC; ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND OTHER
RELIEF; AND RESPONSE TO INDIVIDUAL RETIREE STATEMENTS
<u>CONCERNING APPROVAL OF UAW RETIREE SETTLEMENT AGREEMENT</u>

00141139.DOC.3

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTORY STATEMENT ........................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    The 2006 Retiree Health Benefits Settlement ..................................................... 4

    The Auto Industry's Collapse and the Government's Response ........................ 8

    The UAW Retiree Settlement Agreement ........................................................... 9

ARGUMENT ........................................................................................................................... 10

I.    THE UAW RETIREE SETTLEMENT AGREEMENT IS IN THE BEST
    INTEREST OF THE RETIREES .................................................................................. 10

II.    THE OBJECTIONS BY INDIVIDUAL RETIREES SHOULD BE
    OVERRULED ................................................................................................................ 12

CONCLUSION ........................................................................................................................ 16

## **TABLE OF AUTHORITIES**

Page

*In re Telik, Inc. Sec. Litig.*,
    576 F.Supp.2d 570 (S.D.N.Y. 2008)................................................................................13

*International Union, UAW and Bobby L. Hardwick, et al., v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006), *aff'd* 497 F.3d 615 (6th Cir. 2007).........13

*International Union, UAW and Bobby Hardwick, et al., v. Ford Motor Co.*,
    2008 WL 4104329 (E.D. Mich.) (August 29, 2008)...............................................11, 12, 13

*International Union, UAW and Earl L. Henry, et al., v. General Motors Corp.*,
    2006 WL 891151 (E.D. Mich.) (March 31, 2006)............................4, 5, 10, 12, 13, 14, 15

*International Union, UAW and Earl L. Henry, et al., v. General Motors Corp.*,
    2008 WL 2968408 (E.D. Mich.) ( July 31, 2008)........................................6, 10, 11, 12, 14

*International Union, UAW and William English, et al., v. Chrysler LLC*,
    2008 U.S. Dist. LEXIS 92591 ....................................................................................11, 13, 14

*International Union, UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .........................................................................................4, 5

*IUE-CWA v. General Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ..................................................................................11

*Leonhardt v. Arvinmeritor, Inc.*,
    581 F.Supp.2d 818 (E.D. Mich. 2008)............................................................................11

*Robinson v. Ford Motor Company*,
    2005 WL 5253339 (S.D. Ohio) (June 15, 2005)...............................................................13

*Shy v. Navistar Int'l Corp.*,
    1993 WL 1318607 (S.D. Ohio) (May 23, 1993)........................................................12, 14

*Wiggins v. UFCW Local #56*,
    420 F.Supp.2d 357 (D. N.J. 2006), *aff'd* 303 Fed. Appx. 131 (3d Cir. 2008)...................15

### **STATUTES**

11 U.S.C. § 105..............................................................................................................................1

11 U.S.C. § 363..............................................................................................................................1

11 U.S.C. § 365..............................................................................................................................1

11 U.S.C. § 1114(a) .......................................................................................................................4

11 U.S.C. § 1114(c) ....................................................................................................................3, 4

The International Union, United Automobile, Aerospace, and Agricultural Implement Workers Union of America, AFL-CIO ("**UAW**"), submits this supplemental statement in support of the Motion of the Debtors Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k) and (m) and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006, to Approve (A) The Sale Pursuant to the Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief (Docket No. 92) (the "**363 Motion**").[1]  In particular, UAW replies to written statements and objections submitted by individual retirees concerning the 363 Motion and the agreement (the "**UAW Retiree Settlement Agreement**") between UAW and Vehicle Acquisition Holdings LLC ("**New GM**") which sets forth the obligations of New GM to the plans and programs that will provide retiree medical benefits to some half a million UAW-represented retirees, survivors and their eligible dependents, and to future retirees employed by GM and to be employed by New GM.[2]  If approved by the Court (along with the 363 Motion) the UAW Retiree Settlement Agreement would be executed upon the closing of the 363 Transaction.[3]

## INTRODUCTORY STATEMENT

1.  The crisis that seized the auto industry late last year brought General Motors to the brink of catastrophe, forced to rely on government funding for its continued

---

[1] The UAW has also submitted a June 25, 2009 Declaration of David Curson, Director of Special Projects and Economic Analysis to the UAW ("**Curson Dec.**") [Docket No. 2518] and a Response of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers Union of America, AFL-CIO to Objections to Debtors' Motion for an Order Authorizing the Sale of Substantially All of the Debtors' Assets and Other Relief.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 363 Motion.

[3] As relevant here, the 363 Motion seeks approval of the sale of the Debtors' assets pursuant to a Master Sale and Purchase Agreement and related agreements (the "**MPA**") among the Debtors and Vehicle Acquisition Holdings LLC, a purchaser sponsored by the U.S. Treasury Department (the "**363 Transaction**"), the assumption and assignment of certain executory contracts and leases and approval of the UAW Retiree Settlement Agreement.

-1-

survival. Following a lengthy and difficult process that unfolded through Congressional debate over government-backed assistance and the intervention of two administrations, and amidst a frightening economic downturn that has threatened the industry worldwide, GM is undergoing a painful and radical restructuring — one with severe consequences for its employees, its retirees and countless others who have long depended on the company's continued presence as one of the world's largest automobile manufacturers. During this process, GM and UAW negotiated unprecedented modifications to their labor agreement. In addition, subject to approval by the court and to the 363 Transaction closing, UAW and New GM will enter into the UAW Retiree Settlement Agreement, which will establish a new program of funding for health benefits provided to UAW-represented retirees. While GM's circumstances have presented many difficult challenges, UAW supports approval of the 363 Motion, including the UAW Retiree Settlement Agreement, because the 363 Transaction and related relief sought by the 363 Motion offers the only realistic alternative for GM's business to survive.

2. The UAW Retiree Settlement Agreement addresses the U.S. Treasury Department's direction that GM take aggressive steps to implement a long-term viability plan, including addressing its obligation to fund retiree health benefits for UAW-represented retirees. Under the UAW Retiree Settlement Agreement, New GM will contribute a mix of cash and equity to fund an independent voluntary employees' beneficiary association (the "**VEBA**"), an arrangement which was negotiated in 2007 collective bargaining and approved in the *Henry II* class action lawsuit settlement described below. In addition to a new VEBA funding program, the UAW Retiree Settlement Agreement will change the terms under which the VEBA's governing committee may address changes to the retiree benefit program. The Agreement will also require an immediate reduction of certain benefits.

3.      Some fifty-six individuals out of an estimated half-million who would be covered under the UAW Retiree Settlement Agreement have submitted written objections to approval of the Agreement.[4]  Most have cited the benefit cuts that will go into effect upon approval of the Agreement.  A number of individuals have objected because UAW's governing rules do not provide for retirees to vote on changes to a labor agreement.  Several have merely lodged generalized objections to the settlement, GM's Motion, or the bankruptcy.

4.      As demonstrated below, the individual objections pose no obstacle to approval of the UAW Retiree Settlement Agreement.  Although some reductions in benefits will occur — and will no doubt cause individual hardships — UAW was able to preserve a program of core health benefit coverage for retirees in the new plan.  Moreover, given GM's precarious financial condition, the reality is that the retirees' current health benefits coverage would face near-certain termination absent the 363 Transaction and the new terms under the UAW Retiree Settlement Agreement.  Viewed against the alternative, the UAW Retiree Settlement Agreement is undoubtedly fair and reasonable, in the best interest of the retirees, and should be approved by the court.

## BACKGROUND

5.      UAW is the collective bargaining representative of some 61,000 GM production and skilled trades employees.  UAW also serves as the authorized representative, under Section 1114(c)(1) of the Bankruptcy Code, of retirees, surviving spouses, and their eligible dependents — some half a million in number — who are receiving retiree benefits as a

---

[4] A list of the individual objections UAW has identified through June 25, 2009 is attached to this statement. Copies of these objections have been submitted to the Court.

-3-

result of collective bargaining agreements between UAW and GM.[5]  *See* 11 U.S.C. § 1114(a); 11 U.S.C. § 1114(c)(1).

The 2006 Retiree Health Benefits Settlement

6. UAW and GM have negotiated over retiree health benefits for over fifty years.  Over the course of successive collective bargaining agreements, the parties bargained for GM to provide an increasingly comprehensive program of retiree health benefits.  *See International Union, UAW v. General Motors Corp.*, 497 F.3d 615, 620 (6th Cir. 2007) (recounting the progression of benefits offered by GM and Ford Motor Company to hourly retirees).

7. Over the years, GM and UAW developed "fundamental and irreconcilable" differences over whether GM had the right to unilaterally change or terminate retiree health benefits, a dispute that came to the fore in 2005 when GM devised a cost-cutting strategy to address worsening financial conditions and took aim at retiree health benefits.  *UAW and Earl L. Henry , et al., v. General Motors Corp.*, 2006 WL 891151 at *21 (E.D. Mich.) (March 31, 2006) (the "**Henry I Settlement**"); *International Union, UAW v. General Motors Corp.*, 497 F.3d at 621-22.  When GM threatened to take unilateral action, UAW, following an independent financial review of the company, agreed to enter into negotiations.  The parties undertook a process that led to a settlement that was ultimately finalized and approved in the *Henry I Settlement* class action lawsuit.  This settlement modified the retirees' plan of benefits, including the imposition of new costs on the retirees, and established a VEBA trust (known as the "**Mitigation VEBA**") funded by cash contributions from GM and by wage and cost of living

---

[5] Included among the retirees covered by the UAW Retirees Settlement Agreement are certain retirees of Delphi Corporation, formerly a division of GM, entitled to benefit from GM or the GM Plan under a June 22, 2007 agreement between UAW, Delphi Corporation and General Motors, and surviving spouses and dependents of certain Delphi retirees entitled to such coverage.  *See* UAW Retiree Settlement Agreement, Section 1 (definition of "**Covered Group**").

adjustments deferred by active employees.  *International Union, UAW v. General Motors Corp.*, 497 F.3d at 624-25.  By its terms, the settlement agreement could be terminated by either party as of September 14, 2011, an event which would restore the parties to their respective pre-settlement legal positions.  *Id.*

8.  The district court approved the *Henry I Settlement* as "fair, reasonable and adequate," finding, among other things, that "a key objective of the settlement is to address GM's financial struggle and maintain the company's viability, allowing the continued generation of income from which both active employees and retired employees will benefit for the foreseeable future."  *Henry I Settlement*, 2006 WL 891151, at \*9.  *See also id*. (citing the risk of "the potential loss of *all* benefits, due to either GM's financial collapse or GM's prevailing on the merits" of its legal position) (emphasis in original).  The court also considered the impact of GM's continued viability on the Michigan economy as well as the national economy.  *Id.* at \*22.  The court overruled objections to the settlement by individual retirees who cited unfairness and individual hardship, noting that, while mindful of such hardships, the court could not "ignore that the alternative to settlement," including the risks associated with GM's financial condition, "will likely be worse for the retirees."  *Id*. at \*35.  The court also overruled objections that retirees could not vote on the settlement.  The court noted that UAW's governing Constitution does not give retirees the right to vote on the ratification of a labor agreement.  *Id*. at \*23.

9.  In affirming approval of the *Henry I Settlement,* the Court of Appeals cited the risk that the objectors' victory in maintaining pre-settlement benefits would be a "Pyrrhic one" because the cost would be brought to bear on a "continuing downward spiral" of GM's financial position.  *International Union, UAW v. General Motors Corp.*, 497 F.3d at 632.  *See*

*also id.* (citing, among other factors, "the signal importance of GM" to the "economies of Michigan and the country").

The 2008 Retiree Health Benefits Settlement

10.     Thereafter, despite its recovery efforts and the *Henry I Settlement*, GM continued to face considerable losses, declining market share, and retiree health benefit obligations that adversely affected its financial prospects due to the substantial uncertainty regarding the appraised cost of the obligations. *See International Union, UAW and Earl L. Henry, et al., v. General Motors Corp.*, 2008 WL 2968408, at *5 (E.D. Mich.) ( July 31, 2008) (the "**Henry II Settlement**").  During bargaining over the 2007 national labor agreement, when GM announced that it intended to terminate the *Henry I Settlement* in 2011, UAW and GM provisionally agreed to a framework that would replace the *Henry I Settlement* with a new settlement that would permanently shift GM's retiree benefit obligations to a new retiree health care plan.  Under this new arrangement, GM's payment obligations would be fixed.  The new plan would be funded through an independent VEBA trust fund administered by an eleven-member committee consisting of five UAW-appointed members and six independent members. *See Henry II Settlement*, 2008 WL 2968408, at *13-*14.  The VEBA would begin to provide retiree health benefits in January, 2010.  Ultimately, the settlement between UAW, GM and the *Henry II* class plaintiffs was finalized and approved by the district court in the *Henry II Settlement* class action case (as approved, the "**2008 Retiree Health Benefits Settlement**").

11.     Under the 2008 Retiree Health Benefits Settlement, GM would fund the VEBA with contributions all paid in cash, including the assets of the Mitigation VEBA established under the *Henry I Settlement* and an "Existing Internal VEBA" maintained by GM to hold certain retiree-health-related payments.  At the time of the court's approval in the *Henry II*

-6-

*Settlement,* GM's estimated payment obligations totaled $38 billion, including amounts to be paid prior to the January, 2010 start-up date of the new VEBA. *Id.* at *15. Beginning in January, 2012, the new VEBA committee would have the power to adjust the benefits and coverage level provided to the retirees and the costs charged to them. *Id.*[6]

12.     UAW supported the 2008 Retiree Health Benefit Settlement based on the analysis performed by its financial advisors, who concluded that GM's financial position "remained precarious" and recommended an independent VEBA "to protect retirees from the adverse impact that further deterioration in GM's financial position and credit quality could have on its ability to meet its health care obligations to UAW retirees." *Id.* at *9. Counsel for the *Henry II* plaintiff class performed its own analysis and reached a similar conclusion. *Id.* at *11 ("Class Counsel has stated that GM's financial condition was a compelling factor" in his decision to negotiate the terms of the settlement).

13.     The court approved the 2008 Retiree Health Benefits Settlement in *Henry II* and concluded that "the benefits to the [retiree] Class from the Settlement" were "substantial." *Id.* at *24. In reaching this conclusion, the district court cited GM's continuing financial struggle, concluding that the delay associated with a prolonged dispute over retiree health benefits benefited neither party: "For GM, success at litigation may come too late to effect the turnaround essential to GM's continued viability. For the [retiree] Class, the parties recognized that absent this settlement, GM may be unable to continue to provide retiree health benefits to the Class." *Id.* at *25. In approving the settlement, the court expressly considered that the VEBA's ability to maintain a particular level of benefits over the long term was uncertain:

---

[6] Under the 2008 Retiree Health Benefits Settlement, benefit levels were to remain at the level established in the *Henry I Settlement* until at least December 31, 2011. *Id.* at *14.

-7-

> "If benefit reductions of any magnitude prove to be necessary in the future, those reductions would undoubtedly create some hardship for class members, but the court has concluded that in the absence of the settlement, the class faces greater risks of future benefit reductions or even termination of those benefits. Under these circumstances, the court concludes that the settlement is fair, reasonable and adequate for the class."

*Id*. at *25.

The Auto Industry's Collapse and the Government's Response

14.     The financial crisis that erupted in the fall of 2008 sent an already struggling industry into severe distress. As GM has detailed in its bankruptcy filings, by January, 2009, sales of GM's products had declined precipitously to a twenty-seven year low. Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 ("**Henderson Aff.**") [Docket No. 21], at 6, ¶ 11. In late 2008, GM's acute liquidity crisis forced the company to seek assistance from the federal government, ultimately securing a loan through the Troubled Asset Relief Program. Under its loan agreement with the U.S. Treasury, GM was required to reduce its $27 billion debt by two-thirds, align its U.S. employees' compensation and work rules with those of foreign automakers operating in the U.S., and convert at least half of the value of its $20 billion VEBA contribution to equity, all under strict timing constraints set by the federal government. *See* Henderson Aff. at 24-25, ¶¶ 57, 58. As a condition of the loan, GM was required to submit a "viability plan" and was forced to rework its plan twice when the first two were rejected. In March, 2009, the Administration's Auto Task Force rejected GM's submission but gave the company an additional sixty days to submit a revised plan that included, among other elements, a modified labor agreement with UAW and a new funding arrangement to address the obligations owed to the VEBA. Henderson Aff. at 27, ¶ 62.

-8-

The UAW Retiree Settlement Agreement

15. The transactions contemplated by the 363 Motion are the result of multi-party negotiations, including labor negotiations with UAW regarding changes to its collective bargaining agreement for actives, which will be assumed and assigned to New GM, and the UAW Retiree Settlement Agreement between UAW and New GM.

16. Under the UAW Retiree Settlement Agreement, certain reductions to the program of retiree benefits established in the *Henry I Settlement* will become effective on July 1, 2009 (or such later date as the court approves the agreement). *See* UAW Retiree Settlement Agreement, Section 1 and Exhibit F.[7] Among other modifications, vision and dental benefits are to be eliminated, coverage for certain prescription drugs will be restricted or eliminated, higher co-payments for prescription drugs and emergency room visits will be imposed, and catastrophic health coverage will no longer be provided to those Retirees who fail to pay required monthly contributions. A Medicare Part B "special benefit" will no longer be offered for post-October, 1979 retirees.[8]

17. In addition, the UAW Settlement Agreement provides a new payment structure for the VEBA. New GM will fund the VEBA with a $2.5 billion note, payable in cash; preferred stock in the new company with a face value of $6.5 billion (providing a cash dividend payment of $585 million annually while the VEBA holds this stock) and 17.5% of the common stock of New GM. UAW Retiree Settlement Agreement, Sections 8.C, 8.D, 12.D, 12.E; Henderson Aff. at 9, ¶ 17. In addition, the VEBA will receive a warrant, which will represent an additional 2.5% of the common stock of the new company, with a strike price determined by an

---

[7] The UAW Retiree Settlement Agreement is Exhibit D to the Notice of Filing of Certain Schedules and Exhibits to Master Purchase Agreement [Docket No. 947].

[8] A complete summary of these benefit changes is set forth in "A Message to UAW Chrysler Retirees," attached as Exhibit E to the Sale Procedures Order [Docket No. 274]. *See also* UAW Retiree Settlement Agreement, Exhibit F [Docket No. 947].

-9-

aggregate $75 million in equity value. UAW Retiree Settlement Agreement, Sections 12.D, 12.E, and Exhibit L; Henderson Aff. at 9, ¶ 17. The assets of an Internal VEBA holding amounts pre-funded by GM, and the Mitigation VEBA established in the *Henry I Settlement*, will be transferred to the VEBA in January, 2010. UAW Retiree Settlement Agreement, Section 12.

18. The VEBA will have the right to designate a member of New GM's board of directors, with UAW's consent. The VEBA must vote its GM shares with the Independent Directors on the new board. The Agreement also provides for the sale of the common and preferred shares of stock and the warrant, to third parties under certain conditions.

19. Finally, the VEBA Committee's authority to adjust benefits and coverage and to the costs charged to the Retirees, will be effective beginning January 1, 2010 when the VEBA becomes operational, rather than in January 1, 2012 under the 2008 Retiree Health Benefits Settlement. UAW Retiree Settlement Agreement, Section 5.C.

**ARGUMENT**

**I.   THE UAW RETIREE SETTLEMENT AGREEMENT IS IN THE BEST INTEREST OF THE RETIREES**

20. In approving settlements involving retiree health benefits obligations, courts have expressly considered the risks associated with financially distressed companies. In *Henry I* and *Henry II*, for example, the court concluded that the settlements were fair, reasonable and adequate, noting specifically the potential risk of loss, in the absence of a settlement, based on GM's financial condition. *See Henry I Settlement*, 2006 WL 891151, at *9; *Henry II Settlement*, 2008 WL 2968408, at *24 (accepting settlement, in part, because "risk of loss, even if unlikely, would produce consequences so grave that they are worth avoiding through a settlement that continues comprehensive health care benefits"). Moreover, in reaching its conclusion in *Henry II*, the court expressly took into consideration uncertainties over the

VEBA's ability to maintain benefit levels over time, reasoning that while the prospect of future reductions in the level of plan benefits "of any magnitude" might cause hardship to some retirees, the retirees faced greater risks of benefit reductions or even termination of their benefits in the future given GM's uncertain future. *See Henry II Settlement*, 2008 WL 2968408, at * 25.

21. Other settlements shifting employer retiree benefit obligations to a VEBA have been upheld on similar grounds, *i.e.*, that, absent the settlement, retirees would face the risk of a complete loss of their benefits, including a loss due to the failure of the company. In an action involving approval of a health benefits settlement involving retirees of Chrysler, the court reasoned that while changes to the benefits plan required by the agreement might cause hardship to some retirees, "the potential loss of all benefits" due to "Chrysler's financial collapse" "would be far more harsh" for the retirees. *International Union*, *UAW and William English, et al., v. Chrysler LLC*, 2008 U.S. Dist. LEXIS 92591 T *68 (¶ 33) (E.D. Mich.) (July 31, 2008) ("**English**"). *See also International Union, UAW and Bobby Hardwick, et al., v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich.) (August 29, 2008) ("**Hardwick II**")*; Leonhardt v. Arvinmeritor, Inc.*, 581 F.Supp.2d 818, 835 (E.D. Mich. 2008) (approving settlement in part on grounds that settlement avoids risk that retirees "would have no health benefits" from the employer); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 595 (E.D. Mich. 2006) (approving settlement in part to avoid "potentially catastrophic consequences" of elimination of retiree health benefits).

22. The UAW Settlement Agreement here should be approved on similar grounds. Undoubtedly, the terms of the agreement that require benefit reductions will create hardship for individual retirees. In addition, funding the VEBA in part with equity poses a risk to the VEBA's financial stability over the long-term, compared to the cash contributions under

-11-

the 2008 Retiree Health Benefit Settlement, given the currently uncertain future value of the equity.

23. However, the alternative to the UAW Retiree Settlement Agreement and the 363 Transaction would be far worse. GM has admitted that "[t]here are no realistic alternatives" to the transaction and that absent prompt approval of the transaction "it is highly probable that GM will have to liquidate." 363 Motion at 5, ¶ 8; *see also* Henderson Aff. at 41, ¶ 97. In that dire scenario, there is no realistic prospect that GM would continue to fund the VEBA or maintain the program of retiree benefits. *See Shy v. Navistar Int'l Corp.*, 1993 WL 1318607, at *12 (S.D. Ohio) (May 23, 1993) (approving retiree health benefit settlement where "liquidation … would be far worse for the retirees.")

## II.  THE OBJECTIONS BY INDIVIDUAL RETIREES SHOULD BE OVERRULED

24. Out of an estimated half-million UAW-represented retirees, survivors and dependents whose health benefits are covered by the UAW Retiree Settlement, UAW has identified fifty-six letters directed at the 363 Motion and/or the UAW Retiree Settlement Agreement (or that may relate to the settlement), most of which have expressed concerns about the near-term benefit reductions.[9] In all, the letters represent an exceedingly small percentage of the affected group, a factor courts have considered in evaluating and approving settlement objections. *See Henry I Settlement*, 2006 WL 891151, at *20; *Henry II Settlement* 2008 WL 2968408, at *28 (noting that, of 522,000 Class Members, only forty-three individuals, or one for every 12,500, submitted an objection); *Hardwick II,* 2008 WL 4104329, at *28 (noting that, silence "indicates to the court not so much the presence of approval, but the absence of

---

[9] Several objections do not clearly indicate whether the retiree is an hourly retiree who would be covered by the UAW Retiree Settlement Agreement. For the reasons set forth herein, to the extent that other correspondence is construed as relating to the UAW Retiree Settlement Agreement, such correspondence should not preclude the grant of the Debtors' Sale Motion and approval of the UAW Retiree Settlement.

-12-

opposition."); *see also, Robinson v. Ford Motor Co.*, 2005 WL 5253339, at *6 (S.D. Ohio) (June 15, 2005) (noting that, when given an opportunity to object, "only four out of 3400 did so").

25. A number of letters merely state a general objection to all of the relief requested in the 363 Motion and therefore cannot be addressed further.[10] *See Henry I Settlement,* 2006 WL 891151, at *22 ("Because there is no way for the court to determine the basis for these objections or whether any such objections have merit, [the objections stating no reason] are of little use"); *English,* 2008 U.S. Dist. LEXIS 92591, at *82 (¶ 54) (noting that "there is no way for the court to determine the basis for" certain objections and therefore they "carry little weight"); *see also In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 578 (S.D.N.Y. 2008) (overruling individual objections to settlement that provided no particularized basis for an objection).

26. The large majority of letters specifically reference the modifications to the benefit program that will take effect shortly after approval of the settlement, many noting that these reductions will cause individual hardships. UAW does not take these hardships lightly, and has devoted considerable effort and attention to the preservation of core medical benefits for retirees in collective bargaining. *See* Curson Decl. at 3, ¶¶ 4-7; *see also Hardwick II,* 2008 WL 4104329*,* at *30 (noting UAW's "'long and storied history of defending the interests of retirees — including particularly, retiree health care'" at the bargaining table and in court) (quoting *International Union, UAW and Bobby L. Hardwick, et al., v. Ford Motor Co.*, 2006 WL 1984363, at *7 (E.D. Mich. July 13, 2006), *aff'd* 497 F.3d 615 (6th Cir. 2007)).

27. Here, while UAW was forced to support some immediate benefit reductions in order to obtain Treasury's support for the 363 Transaction, UAW nonetheless was able to preserve an acceptable level of core medical benefits that the leadership was able to

---

[10] A few of the objections raise concerns about the effect of the 363 Transaction on pension and/or disability benefits.

-13-

09-50026-mg    Doc 2631    Filed 06/26/09    Entered 06/26/09 15:59:33    Main Document
Pg 17 of 19

recommend for ratification. Curson Dec. at 4, ¶ 8. Indeed, without the core medical benefits preserved for retirees, the modified labor agreement approved by the active membership likely would not have been ratified. Curson Dec. at 4, ¶ 10. *See also Henry II Settlement*, 2008 WL 2968408, at *34 (approving the 2008 Retiree Health Benefits Settlement Agreement and noting that the VEBA committee with authority over the level of benefits, "is charged with providing quality health care for all members of the Class, with the objective of maintaining substantial benefits throughout the lifetimes of all members of the Class and the Covered Group").

    28. In evaluating retiree health settlements applicable to large numbers of retirees, courts have not declined approval based upon assertions of individual hardships, particularly where the alternative could well be that the retirees would face far greater risk of a more substantial loss of benefits absent the settlement. For example, in the *Henry Settlement* and the *English* case, the court overruled objections based upon individual hardships or assertions of unfairness, specifically noting the risk that, absent the settlement, the retirees faced greater risks given the financial distress of the two auto makers. *See Henry I Settlement*, 2006 WL 891151, at *35 (overruling assertions of individual hardship and unfairness and noting that "the court cannot ignore that the alternatives to settlement — the risks of continued litigation and GM's financial condition — will likely be worse for the retirees."). *See English*, 2008 U.S. Dist. LEXIS 92591, at *85 (overruling hardship objections to a Chrysler retiree health benefits settlement and noting "the court has concluded that the status quo presents greater risks to the [retiree] Class."). *See also Shy v. Navistar Int'l Corp.*, 1993 WL 1318607, at *12 (acknowledging the financial hardships resulting from the benefit reductions under a settlement and concluding that "the alternative to the settlement agreement, the bankruptcy and liquidation of Navistar, would be far worse for the retirees."). Here as well, individual hardships, while regrettable, are far less worse

than the alternative because the risks of greater loss are real given the narrow options available to rescue GM's business. Moreover, while some reductions were required, UAW was still able to preserve a core plan of medical benefits under the Settlement Agreement. *See* Curson Dec. at 4, ¶ 8.

29. A number of retirees object because they could not vote on the UAW Retiree Settlement Agreement, an objection considered and rejected by the *Henry* court. Under labor law, a union's governing Constitution sets forth the provisions for voting on a labor agreement. *See Wiggins v. UFCW Local #56*, 420 F.Supp.2d 357, 633 (D. N.J. 2006), *aff'd* 303 Fed. Appx. 131 (3d Cir. 2008). UAW's Constitution does not permit retirees to vote on the ratification of labor agreements. Curson Dec. at 4, ¶ 11. *See Henry I Settlement*, 2006 WL 891151, at *23.[11] Accordingly, that the retirees did not vote on the settlement is not a valid basis for objection to approval of the settlement. *See id*.

30. In sum, none of the objections, either collectively or individually, provide grounds for denying approval of the UAW Retiree Settlement Agreement. The alternative to the 363 Transaction and UAW Retiree Settlement Agreement would very likely be the elimination of all or nearly all of the retirees' health benefits in a liquidation of GM. Because the UAW Retiree Settlement Agreement allows the substantial continuation of a core program of benefits for retirees that would most certainly be at risk of termination absent the 363 Transaction and approval of the Agreement, the settlement is fair, reasonable, and undoubtedly in the best interest of the retirees.

---

[11] Several retirees also contend that the objection schedule afforded insufficient time to respond. First, no response has been excluded because it arrived after the June 19 objection deadline set forth in the Sales Procedures Order. Moreover, the objection schedule approved by the court was the same for all others who received notice of GM's 363 Motion. That schedule was established in light of GM's concerns regarding the consequences of further delay in completing the transaction. *See* 363 Motion at 14-15; Supplemental Affidavit of Frederick A. Henderson [Docket No. 2479] at 2.

## **CONCLUSION**

For the foregoing reasons, the Court should approve the 363 Transaction and the UAW Retiree Settlement Agreement.

Dated: June 26, 2009

        /s/ Babette A Ceccotti
        Babette A. Ceccotti
        Joshua J. Ellison
        COHEN, WEISS AND SIMON LLP
        330 West 42nd Street
        New York, NY 10036-6076
        (212) 563-4100

        Daniel W. Sherrick
        Niraj R. Ganatra
        INTERNATIONAL UNION, UAW
        8000 East Jefferson Avenue
        Detroit, MI 48214
        (313) 926-5216

        Attorneys for International Union, United Automobile, Aerospace, and Agricultural Implement Workers Union of America, AFL-CIO