HEARING DATE AND TIME: June 30, 2009 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: June 19, 2009 at 5:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
GENERAL MOTORS CORP., et al.,           :        09-50026 (REG)
                                        :
                Debtors.                :        (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**OMNIBUS REPLY OF THE DEBTORS TO OBJECTIONS TO DEBTORS' MOTION
PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), (k), AND (m),
AND 365 AND FED. R. BANKR. P. 2002, 6004, AND 6006, TO APPROVE
(A) THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT
WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED
PURCHASER, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS; (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) OTHER RELIEF**

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

The Objections ........................................................................................................... 4

Specific Objections ................................................................................................... 6

Bondholder Objections ............................................................................................. 6

Dealer-Related Objections ....................................................................................... 17

Successor Liability and Consumer Objections ........................................................ 25

Plant Closure Objections.......................................................................................... 32

Retiree/Splinter Union Objections .......................................................................... 32

Workers' Compensation Objections ........................................................................ 36

Tax Objections .......................................................................................................... 36

Lien Creditor Objections.......................................................................................... 36

Stockholder Objections ............................................................................................ 38

Cure Objections ........................................................................................................ 39

Miscellaneous Objections ........................................................................................ 40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re 495 Cent. Park Ave. Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992)..............43, 44, 46

*Am. Living Sys. v. Barapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186 (Bankr. N.D. Ga. 1986), *aff'd*, 805 F.2d 1515 (11th Cir. 1986)................................................26, 28

*Assocs. Commercial Corp. v. Rash*, 520 U.S. 953 (1997) .........................................42 n.19

*In re Beker Indus. Corp.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986).......................... 42 & n.20

*Bennett v. Spear*, 520 U.S. 154 (1997) ..............................................................................14

*In re Big Rivers Electric Co.*, 213 B.R. 962 (Bankr. W.D. Ky. 1997) ..............................47

*In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1993) ..................................................12

*In re Brileya*, 108 B.R. 444 (Bankr. D. Vt. 1989) ............................................................45

*In re Brookfield Clothes, Inc.*, 31 B.R. 978 (1983)............................................................8

*In re Broomall Printing Corp.*, 131 B.R. 32 (Bankr. D. Md. 1991).........................44 n.23

*In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D.N.Y. 1986)...........................................42, 45

*In re Chipwich, Inc.*, 54 B.R. 427 (Bankr. S.D.N.Y. 1985)................................................20

*In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009)................7, 8, 10, 12 n.5, 13, 14, 15, ..............................................................................................25, 29, 34 n.15, 35, 42, 46

*In re Chrysler, LLC*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009) ...........................................................................................................7, 28

*In re City of Vallejo*, 403 B.R. 72, (Bankr. E.D. Cal. 2009).............................................21

*In re Collins*, 180 B.R. 447 (Bankr. E.D. Va. 1995)...........................................43 n.21, 44

*In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86 (2d Cir. 2003)....................45, 46

*Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943 (11 Cir. 2009)...........................23 n.10

*In re Fin. News Network, Inc.*, 980 F.2d 165 (2d Cir. 1992).............................................47

**TABLE OF AUTHORITIES**

**Page**

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326 (2008)....................8

*In re G Survivor*, 171 B.R. 755 (Bankr. S.D.N.Y. 1994), *aff'd sub nom. John Forsyth Co. v. G. Licensing, Inc.*, 187 B.R. 111 (S.D.N.Y. 1995) ...................................20

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)......................35 n.17

*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) ..............................................38

*LNC Invs., Inc. v. First Fid. Bank*, 247 B.R. 38 (S.D.N.Y. 2000) .......................42 n.19, 45

*In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) ..............................................................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ...................................................................................................................28

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984)......................................................7, 19

*N. Pac. R.R. Co. v. Boyd*, 228 U.S. 482 (1913) .................................................................38

*In re Old Carco LLC,* 2009 WL 1708813 (Bankr. S.D.N.Y. June 19, 2009)..............19, 20

*In re Oneida Lake Dev., Inc.*, 114 B.R. 352 (Bankr. N.D.N.Y. 1990) ................. 43 & n.21

*In re PSA, Inc.*, 335 B.R. 580 (Bankr. D. Del. 2005) ...................................................22 n.9

*In re Penn Traffic Co.*, 524 F.3d 373 (2d Cir. 2008) ........................................................19

*Perez v. Campbell*, 402 U.S. 637 (1971) ..........................................................................29

*Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.)*, 19 B.R. 323 (Bankr. W.D. Wash. 1982) ................................................................................................26

*In re San Felipe @ Voss, Ltd.*, 115 B.R. 526 (Bankr. S.D. Tex. 1990) ............................46

*In re Terrace Gardens Park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989)....................43

*In re TM Monroe Manor Assocs.*, 140 B.R. 298 (Bankr. N.D. Ga. 1991)........................46

*In re Trans World Airlines, Inc.*, 261 B.R. 103 (Bankr. D. Del. 2001) ............................20

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003)....................................26, 28

**TABLE OF AUTHORITIES**

Page

*In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 980 (Bankr. D. Del. Apr. 2, 2001) ................................................................................................................8, 38

*UAW v. Chrysler LLC*, 2008 U.S. Dist. LEXIS 92591 (E.D. Mich. July 31, 2008)..35 n.17

*UAW v. Gen. Motors Corp.*, 2008 WL 2968408 (E.D. Mich. 2008) ........................35 n.17

*United Sav. Assoc. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988) .42 n.19, 45

*In re WPRV-TV, Inc.*, 143 B.R. 315 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992), *aff'd in part, rev'd in part on other grounds*, 983 F.2d 336 (1st Cir. 1993) ............................................................................................43, 45

*In re Westpoint Stevens Inc.*, 333 B.R. 30 (S.D.N.Y. 2005)...................................12 n.5, 46

*In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Ohio 1987) ...................28, 29

*In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72 (1st Cir. 1995) .............................45

**STATE CASES**

*DaimlerChrysler Motors Co. v. Lew Williams, Inc.*, 48 Cal. Rptr. 3d 233, 239 (Cal. Ct. App. 2006).................................................................................................24 n.11

**FEDERAL STATUTES AND FEDERAL RULES**

11 U.S.C. § 105...........................................................................................................1

11 U.S.C. § 361......................................................................................................44, 45

11 U.S.C. § 362(b)(18) ...............................................................................................37

11 U.S.C. § 363......................... 2, 3, 4, 7, 12 & n.5, 27, 28 n.13. 29, 30, 33, 40, 42, 44, 46

11 U.S.C. § 363(b) ........................................................1, 11, 38, 26, 27, 29, 37

11 U.S.C. § 363(f)..........................................................1, 26, 27, 29, 29, 37

11 U.S.C. § 363(f)(3) ............................................. 27, 28, 29, 29, 41 & n.18, ..........................................................42 & n.n.19&20, 43 & n.21, 44 & n.24

11 U.S.C. § 363(f)(5) ............................................................5, 25, 42 n.20, 44 n.24

11 U.S.C. § 363(m) ..................................................................................................1

11 U.S.C. § 365 .............................................................................................1, 19, 20

11 U.S.C. § 506(a) .............................................................................................42, 45

11 U.S.C. § 506(a)(1) ..................................................................................... 44 & n.22

11 U.S.C. § 506(c) ..................................................................................................40

11 U.S.C. § 524(g) .............................................................................................29, 30

11 U.S.C. § 544 .......................................................................................................37

11 U.S.C. § 546(b) ..................................................................................................37

11 U.S.C. § 549 .......................................................................................................37

11 U.S.C. § 1102(a)(2) .........................................................................................7 n.3

11 U.S.C. § 1114 ...............................................................................................33, 35

11 U.S.C. § 1129 .....................................................................................................12

11 U.S.C. § 1129(b)(2)(A) .......................................................................................44

11 U.S.C. § 1129(b)(2)(B)(ii) ..................................................................................38

12 U.S.C. § 5201 .....................................................................................................14

28 U.S.C. § 959(b) ..................................................................................................21

Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat.
3765 (Oct. 3, 2008) ................................................................................................14

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 345-46 (1977)............................................45

S. Rep. No. 95-989, 95th Cong., 2d Sess. 55 (1978) ........................................................45

Fed. R. Bankr. P. 2002..............................................................................................1

Fed. R. Bankr. P. 2019......................................................................................6 n.2

Fed. R. Bankr. P. 6004..............................................................................................1

**TABLE OF AUTHORITIES**

**STATE STATUTES**

Alaska Stat. § 45.25.130(b) ......................................................................23 n.10

Colo. Rev. Stat. § 12-6-120(1) ...................................................................23 n.10

La. Rev. Stat. § 32.1261(1) .........................................................................23 n.10

N.Y. Veh. & Traf. Law § 463(2) ................................................................23 n.10

Va. Code Ann. § 46.2-1572.3 .....................................................................23 n.10

**TREATISES**

3 *Collier on Bankruptcy* ¶ 363.06[1] (15th rev. ed. 2008)...............................................27

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("**GM**") and its affiliated debtors (collectively, the

"**Debtors**"), respectfully represent:

**<u>Introduction</u>**

1.      On June 1, 2009, the Debtors filed the motion (the "**Motion**"), requesting,

*inter alia*, an order (the "**Sale Order**"), pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), and

365 and Fed. R. Bankr. P. 6004 and 6006, authorizing and approving (i) the sale of substantially

all of the Debtors' assets pursuant to a proposed Master Sale and Purchase Agreement and

related agreements (the "**MPA**") among the Debtors (the "**Sellers**") and Vehicle Acquisition

Holdings LLC (the "**Purchaser**"), a purchaser sponsored by the United States Department of the

Treasury (the "**U.S. Treasury**"), free and clear of liens, claims, encumbrances, and other

interests, including any successor liabilities (the "**363 Transaction**"), (ii) the assumption and

assignment of certain executory contracts and unexpired leases of personal property and of

nonresidential real property (collectively, the "**Leases**"), and (iii) the approval of the UAW

Retiree Settlement Agreement, subject to higher or better offers.

2.      These chapter 11 cases and the Motion were initiated because there was no

viable alternative to preserve and maximize the going concern value of the GM business and also

preserve the largest part of the domestic automotive industry and the hundreds of thousands of

jobs and countless suppliers and other businesses that depend on an ongoing viable GM business.

3.      Although several hundred responsive pleadings to the Motion have been

filed, there is a consistent and overwhelming theme -- not one party seriously suggests (much

less points to a single fact suggesting) that the 363 Transaction not be consummated or that there

is any viable alternative transaction, purchaser, or financing source outside of the 363

Transaction:

- No party has questioned that the alternative to the 363 Transaction is liquidation – or presented any facts to controvert the Debtors' showing that in liquidation -- the unsecured creditors would receive no recovery;

- No party has questioned the draconian consequences to employees, suppliers, dealers, communities, and the overall U.S. economy if the 363 Transaction is not consummated;

- Virtually no dealers have objected and, in fact, in excess of 95% of all dealers have agreed to new ongoing participation or wind-down agreements to be assumed by the Purchaser;

- No party or person has expressed an interest or proposed a higher or better offer or any other financing proposal.

4.        Indeed, the responsive pleading filed by the Official Committee of

Unsecured Creditors (the "**Creditors' Committee**") (Docket No. 2362), speaking for a broad

cross-section of the unsecured creditor body, including unionized employees, suppliers, dealers,

tort claimants, and bondholders, the claimant group most affected by the chapter 11 cases

appropriately stated that:  it is "satisfied that no viable alternative [to the 363 Transaction] exists

to prevent the far worse harm that would flow from the liquidation of GM;" the "current

transaction is the only option on the table"; and the 363 Transaction "serves the core purposes of

the Bankruptcy Code and constitutes a strong business justification under section 363 of the

Code to sell the debtors' assets outside of a plan process."

5.        Moreover, as demonstrated by both the initial and the Supplemental

Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 (Docket Nos. 21

and 2479), time is of the essence and, in fact, the need for speed has intensified.  The emergence

of a New GM is a significant part of the effort to persuade and encourage consumers to purchase

GM products, and consummation of the 363 Transaction is essential to alleviate the stress on GM's supplier and dealer network and the obvious systemic risks attendant thereto.

6.    The objections to the Motion may be placed into four principal categories (exclusive of cure objections) and, as stated, they do not challenge the necessity to consummate the 363 Transaction but rather, simply seek to extract more money from the Purchaser. These four categories are:

- Dealer contract issues;

- Claims of successor liability issues;

- Demands for additional and increased retiree benefits for retired hourly employees to be paid by the Purchaser; and

- Whether the 363 Transaction constitutes a *sub rosa* plan.

7.    The objections lack merit and should be overruled. First, the agreements with the dealers are in full compliance with applicable law, and neither the Debtors nor the Purchaser seek to strip the states of any cognizable rights they have with respect to such agreements.

8.    Second, under well-settled authority, and as recently acknowledged by Judge Gonzalez in the *Chrysler* case, the provisions in the MPA and the proposed order approving the 363 Transaction relating to successor liability are appropriate in the circumstances and entirely consistent with section 363 of title 11, United States Code (the "**Bankruptcy Code**"). In addition, the Purchaser has agreed to assume all express warranty claims and all products liability claims arising subsequent to the closing of the 363 Transaction.

9.    Third, the retired hourly employees cannot compel the Purchaser to either assume their existing benefits or to offer them more than the Purchaser is willing to pay for the assets. Notably, the Purchaser is not relegating the retirees to an unsecured claim against the

estates:  rather, it has offered them the same benefit proposal that is being made and will be

implemented for GM's salaried retirees -- and four separate collective bargaining agents

representing hourly retirees similar to those other hourly retirees who have filed objections to the

363 Transaction have accepted such proposal.

10.    Finally, the 363 Transaction is not a *sub rosa* plan.  In the *Chrysler* case,

where precisely the same issue was raised under the same circumstances, it was soundly and

clearly rejected.  The same conclusion is warranted here because the 363 Transaction simply

does not allocate or distribute any of the sale proceeds, nor does it otherwise dictate the terms of

a plan.  The 363 Transaction simply sells assets for consideration (including assumption of

liabilities).

11.    Manifestly, the 363 Transaction is not a plan disposition.  Rather, it

follows what has become the standardized structure for the many section 363 sales that have

occurred and been approved.

12.    The undisputed facts are clear.  Prompt approval of the 363 Transaction is

the only means to preserve and maximize enterprise value and provide a real and genuine

opportunity for GM's business to survive and thrive as an economically viable entity.  The only

other alternative is prompt liquidation and the systemic failure and dire consequences that will

inevitably unfold.  The objecting parties, which seek to promote their own parochial economic

interests in contrast to the interests of the greatest number of impaired stakeholders, should not

be permitted to stop the necessary approval and consummation of the 363 Transaction.

### The Objections

13.    To date, approximately 750 written objections to the Motion or related

aspects of the 363 Transaction (the "**Objections**"), have been filed with the Court or received by

the Debtors.[1] These Objections fall into eleven general categories and are set forth in summaries

annexed hereto as Exhibits "A" through "K":

> (i) Objections filed by bondholders ("**Bondholder Objections**"), a summary of which is annexed hereto as Exhibit "A";

> (ii) Objections relating to state franchise law issues or objections by dealers ("**Dealer-Related Objections**"), a summary of which is annexed hereto as Exhibit "B";

> (iii) Objections relating to successor liability, tort, asbestos, environmental, and other products liability claims, including consumer protection issues ("**Successor Liability and Consumer Objections**"), a summary of which is annexed hereto as Exhibit "C";

> (iv) Objections filed by governmental agencies opposing specific plant closures ("**Plant Closure Objections**"), a summary of which is annexed hereto as Exhibit "D";

> (v) Objections filed by retirees or "splinter" union representatives of retirees ("**Retiree/Splinter Union Objections**"), a summary of which is annexed hereto as Exhibit "E";

> (vi) Objections relating to workers' compensation issues ("**Workers' Compensation Objections**"), a summary of which is annexed hereto as Exhibit "F";

> (vii) Objections relating to tax issues ("**Tax Objections**"), a summary of which is annexed hereto as Exhibit "G";

> (viii) Objections filed by holders of liens, including construction or mechanic's liens ("**Lien Creditor Objections**"), a summary of which is annexed hereto as Exhibit "H";

> (ix) Objections filed by Stockholders ("**Stockholder Objections**"), a summary of which is annexed hereto as Exhibit "I";

> (x) Objections relating to assumption and assignment of contracts, including cure amounts ("**Cure Objections**"), a summary of which is annexed hereto as Exhibit "J" and

---

[1] The Debtors intend to file an amended reply to address additional Objections that have been filed or received after the deadline to file objections to the Motion.

(xi) Miscellaneous objections ("**Miscellaneous Objections**"), a summary of which is annexed hereto as Exhibit "K."

14.　　　The Debtors are continuing to review the Objections and are discussing specific issues with a number of entities who have filed Objections.  In addition, in order to resolve certain Objections, the proposed order approving the Motion (the "**Sale Order**") will be modified and supplemented (the "**Modified Sale Order**"), which also should have the effect of resolving the number of outstanding Objections.  The Modified Sale Order as well as a marked copy of the Sale Order showing the revisions will be submitted to the Court prior to the hearing to consider the Motion (the "**Sale Hearing**").

15.　　　For the reasons set forth below and in the Motion and the Debtors' Memorandum of Law in Support of the Motion (the "**Memorandum of Law**" or "**Debtors' Mem.**"), any Objections that may not be resolved by the beginning of the Sale Hearing should be overruled, the Motion should be granted, and the Modified Sale Order granted.

## Specific Objections

### Bondholder Objections

16.　　　Most of the Objections filed by the Debtors' bondholders are nothing more than emotional reactions to the reality that unsecured creditors of the Debtors will experience an economic loss as a result of the 363 Transaction.  Although the Debtors are sympathetic to the economic circumstances facing bondholders, the Bondholder Objections present no legitimate challenge to the Motion.

17.　　　The Unofficial Committee of Family & Dissident GM Bondholders (the "**F&D Bondholders**")[2] (Docket No. 1969), Oliver Addison Parker ("**Parker**") (Docket Nos.

---

[2]  Note that as reflected by the Rule 2019 statements filed by the F&D Bondholders, many of such bondholders are speculators who purchased their respective bonds in the days preceding the Commencement Date for a price sometimes as low as $1.20 per $100 of face value.

2193 and 2194), and Radha R.M. Narumanchi (Docket No. 2357) ("**Narumanchi,**" and

collectively with the F&D Bondholders and Parker, the "**Minority Bondholder Objectors**"),[3]

challenge the 363 Transaction on the unsupportable grounds that, among other things, the 363

Transaction should have been implemented in the context of a chapter 11 plan of reorganization

and is a disguised *sub rosa* plan of reorganization.  These objections are without merit.  The

well-settled law is to the contrary, including, most recently Judge Arthur J. Gonzalez's May 31,

2009 decision, *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), which was

subsequently affirmed by the United States Court of Appeals for the Second Circuit on June 5,

2009, "for substantially the reasons stated in the opinions of Bankruptcy Judge Gonzalez," *In re

Chrysler, LLC*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351, at *1 (2d Cir. June 5, 2009),

approving the section 363 asset sale in Chrysler's chapter 11 cases.  The *Chrysler* decision

addressed, and squarely rejected, the precise arguments the Minority Bondholder Objectors now

proffer.  Notably, the Minority Bondholder Objectors simply ignore the unassailable legal

analysis and substantive findings in *Chrysler*.  Such Objections also conspicuously ignore both

the reality and consequences of the liquidation alternative.

       18.    <u>An Expedited Asset Sale Outside of a Chapter 11 Plan of Reorganization

Is Appropriate Under These Exigent Circumstances</u>.  As discussed in the Motion and the

Debtors' Memorandum of Law, the overriding objective of a business reorganization is to

preserve the value of a debtor's assets as a going concern.  *See NLRB v. Bildisco & Bildisco*, 465

---

[3]  The F&D Bondholders purport to represent the interests of over 1,500 bondholders with bond holdings purportedly in excess of $400 million at face value.  F&D Obj. at 1.  On June 23, 2009, the Court denied the F&D Bondholders' motion seeking appointment as an official committee, pursuant to 11 U.S.C. § 1102(a)(2), finding that the F&D Bondholders did not establish a lack of adequate representation by the statutory committee appointed in these chapter 11 cases (the "**Creditors' Committee**").  Parker purports to hold 200,000 "shares" of GM bonds with a face value of $5 million.  Parker Obj. at 2.  Narumanchi purports to own $400,000 worth of GM bonds (at par value).  Narumanchi Obj. at 1.  Other bondholders also challenge the 363 Transaction for substantially the same reasons, including, for example, Ronald and Sandra Davis (Docket No. 2137) and Lloyd A. Good (Docket No. 2025).

U.S. 513, 528 (1984); Debtors' Mem. at 3-4 (citing cases).  Debtors in bankruptcy often have

been permitted to sell substantially all their assets prior to the process of confirming a plan

(including at the very early stages of a chapter 11 case), particularly where sufficient exigent

circumstances (such as the erosion in value of assets over time) exist.  *See, e.g., Fla. Dep't of*

*Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326, 2331 n.2 (2008); *In re Brookfield*

*Clothes, Inc.*, 31 B.R. 978, 986 (1983); Debtors' Mem. at 5.  These cases are no different.  Here,

in the absence of *any* other financing, equity investment, strategic alliance, or other alternative to

liquidation, the Debtors entered into the 363 Transaction and filed the Motion to preserve the

going concern value of GM's business and maximize value to all economic stakeholders.  Thus,

the issue is whether, in the context of these chapter 11 cases involving a fragile business, there is

a "business justification" or a "good business reason" for the sale of substantially all the Debtors'

assets at this early stage.  *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Chrysler*,

405 B.R. at 96; *In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 980 (Bankr. D. Del. Apr. 2,

2001).  As demonstrated in the Debtors' Motion, Memorandum of Law, and supporting

affidavits and declarations, and in the submission made by the Creditors' Committee, the answer

is a resounding "yes."

19.    The *undisputed* record before the Court demonstrates that the 363

Transaction is the *only* viable means of preserving the value of GM's business enterprise and

maximizing its going concern value.  *See, e.g.,* Affidavit of Frederick A. Henderson Pursuant to

Local Bankruptcy Rule 1007-2 ¶¶ 5, 14, 16, 19, dated June 1, 2009 (the "**Henderson Affidavit**"

or "**Henderson Aff**.").  There simply is no other option:  The only alternative is liquidation.  *Id.*

All prior efforts by GM's management and financial advisors did not yield a single purchaser or

strategic partner for GM's assets -- or even an entity willing to provide critical debtor in

possession financing, except for the U.S. and Canadian Governments.  *Id.* ¶ 14; Repko Decl. ¶¶

24-29.  But these entities have made it abundantly clear that they are willing to purchase

substantially all of the Debtors' assets *only in the context of an expedited 363 Transaction.*  The

Minority Bondholder Objectors' *ipse dixit*, that the 363 Transaction is not necessary and that a

traditional chapter 11 process should proceed, is totally without support.  They set forth no facts -

- nor can they -- to indicate that the Purchaser or any other entity is willing to proceed with either

a transaction, debtor in possession financing, or any other element of the transaction outside of

an expedited 363 asset sale, or that any other purchaser or financing source even exists.

> 20.     Faced with a choice between (a) implementing the 363 Transaction within

the parameters negotiated with the Purchaser -- thereby (i) preserving and maximizing the value

of GM's business, (ii) saving hundreds of thousands of automotive-related jobs, and (iii)

facilitating a distribution of the purchase price (including stock with an estimated value of $3.8

to $4.8 billion (*see* Declaration of J. Stephen Worth, dated May 31, 2009, at Ex. F., pg. 14

(Docket No. 425) (the "**Worth Declaration**" or "**Worth Dec.**")) and other assets to bondholders

and other creditors through an eventual chapter 11 plan of liquidation, or (b) liquidating the

Debtors' assets, which would provide no distribution to bondholders (*see, e.g.*, Declaration of

Albert Koch, dated May 31, 2009, at 7 (Docket No. 435) ("**Koch Declaration**" or "**Koch Dec.**")

-- the Debtors' Board of Directors patently exercised sound business judgment in proceeding

with the 363 Transaction.

> 21.     In the face of these factual realities and significant legal authority, the

Minority Bondholder Objectors complain that the 363 Transaction should have been

implemented in the context of a plan of reorganization.  *See, e.g.,* F&D Obj. ¶18.  But this

contention ignores the law and facts.  As a matter of law, a 363 Transaction *is* permissible

(Debtors' Mem. at 3-4; *Chrysler*, 405 B.R. at 94), and the Minority Bondholder Objectors neither controvert the Debtors' authorities nor cite any contrary rule of law.  As a matter of fact, the record demonstrates that the Purchaser – the only potential purchaser -- will walk away if the sale is not pursued in the context of an expedited 363 sale proceeding and approved by July 10, 2009.  As discussed in detail in the Henderson Affidavit (Henderson Aff. ¶¶ 82-96) and the Supplemental Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2, dated June 25, 2009 (the "**Supplemental Henderson Affidavit**" or "**Supp. Henderson Aff.**") (Supp. Henderson Aff. ¶¶ 5-11), with each passing day, the economic viability of GM's suppliers and dealers becomes increasingly uncertain; indeed, many have already commenced bankruptcy cases, and many more will likely do the same in the near future unless the 363 Transaction is promptly consummated and New GM[4] begins operations.  As such, notwithstanding the Minority Bondholder Objectors' conclusory assertions to the contrary, the Debtors simply do not have the luxury of waiting around for a *nonexistent* white knight to both finance a chapter 11 case and await the outcome of a prolonged chapter 11 case.  The Minority Bondholder Objectors certainly identify no such financier or purchaser.

22.    The 363 Transaction Is a Sale of Assets, Not a *Sub Rosa* Plan of Reorganization.  While it is true that obstacles exist in obtaining Bankruptcy Court approval of a transaction that would amount to a *sub rosa* plan of reorganization -- i.e., a transaction that effectively dictates a distribution scheme and other terms only found in a plan of reorganization -- it is equally true that if an asset sale transaction contemplated by a debtor "has a proper business justification which has potential to lead toward confirmation of a plan and is not to evade the plan confirmation process, the transaction may be authorized."  *Chrysler*, 405 B.R. at

---

[4] Capitalized terms not defined herein have the meaning ascribed thereto in the Motion or the Debtors' Memorandum of Law.

96 (citations omitted).  In particular, a "debtor may sell substantially all of its assets as a going concern and later submit a plan of liquidation providing for the distribution of proceeds of the sale." *Id.*  That is precisely the situation here:  The 363 Transaction is a value-preserving and value-maximizing transaction; the Debtors are receiving fair value for the assets being sold; and the sale in no way effects any distribution of the *Debtors'* property to creditors, nor does it in any way impinge upon any chapter 11 plan that necessarily will follow.

23.     Specifically, as set forth in the Motion, the 363 Transaction, as contemplated by the MPA, meets all the traditional elements of a sale of assets under section 363(b), including arm's-length negotiations between the buyer and seller for the assets that the Purchaser is willing to acquire and the Debtors are willing to sell (as well as liabilities and obligations that the Purchaser is willing to assume) so that the Purchaser could effectively continue GM's business as a going concern.  *See, e.g.*, Debtors' Mem. at 20.  In exchange, the Debtors received consideration consisting of (i) cancellation of billions of dollars of secured debt, (ii) assumption by New GM of a portion of the Debtors' businesses' obligations and liabilities that must be satisfied to preserve the ongoing value of the business, and (iii) no less than 10% of the stock of the Purchaser (and warrants, as well) which the Debtors' financial expert values between $3.8 and $4.8 billion.  *See* Worth Decl. at Ex. F, pg. 14.  As the unrebutted evidence of the Debtors' valuation and liquidation experts make clear, that consideration is unquestionably the highest and best available, and the Debtors' receipt of such consideration should allow for a distribution to the Debtors' unsecured creditors, including the Minority Bondholder Objectors, in the context of a chapter 11 plan of liquidation.  It is easily understood when considering the liquidation alternative why the ad hoc bondholder committee that appeared at the June 1, 2009 hearing strenuously supports the Motion.

24.    The Minority Bondholder Objectors erroneously contend that the 363

Transaction constitutes an impermissible *sub rosa* plan because the "*distributions to*

*constituencies* that would be *approved* in the section 363 sale would either not be part of any

later plan, or would be *predetermined* such that they could not be distributed in a later plan

process."  F&D Obj. at 12 (emphasis added).  The Minority Bondholder Objectors further assert

that "the Debtors specifically seek to obtain the benefits of the section 1129 confirmation

process, through an accelerated section 363 transaction, while flatly ignoring the requirements

and creditor protection of section 1129 of the Bankruptcy Code."  Parker Obj. at 20.  They point

to no provision of the MPA that would support their tortured interpretation of the 363

Transaction as dictating subsequent distributions of the Debtors' assets.  It is clear on the face of

the 363 Transaction documents that there will be *no distribution or allocation of estate assets or*

*sale proceeds to any creditors* under the 363 Transaction.  The sale proceeds and remaining

assets will be allocated and distributed only at a future date pursuant to a chapter 11 plan of

liquidation.[5]

25.    Specifically, the Minority Bondholder Objectors' characterization that the

ownership interests in New GM that the Purchaser has assigned to certain of the Debtors'

creditors upon consummation of the 363 Transaction reflect a distribution or allocation of estate

---

[5] Accordingly, the Minority Bondholder Objectors' reliance on *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th
Cir. 1993) for the proposition that the 363 Transaction is an attempt to dictate the terms of reorganization because
the 363 Transaction provides for the "distributions in respect of both the UAW claims and the general unsecured
claims" (F&D Obj. at 9-10) is inapposite.  *See also* Parker Obj. at 16.  There is no distribution of estate assets in
connection with the 363 Transaction.  Equally unavailing is Parker's reliance on *In re Westpoint Stevens Inc.*, 333
B.R. 30 (S.D.N.Y. 2005), for the proposition that the Debtors "cannot use Section 363 to force the bondholders and
other unsecured non-trade creditors to take a distribution in satisfaction of their claims that is disproportionately less
then . . . claims that are of equal rank . . ." Parker Obj. at 20.  As Judge Gonzalez recognized, the *Westpoint Stevens*
case involved a situation where "the terms of the sale order allocated the sales proceeds between the first and second
lien lenders, and directed that the distribution fully satisfied the underlying claims by terminating the lenders'
security interest in those claims, thereby usurping the role of the confirmation process." *Chrysler*, 405 B.R. at 98.
That simply is not the case here – and, contrary to Parker's contention, there certainly is no distribution in
connection with the 363 Transaction that "impairs the rights of a class of unsecured creditors in favor of another
class of unsecured creditors of equal rank." Parker Obj. at 18.

assets in violation of the absolute priority rule is simply false.  The Purchaser -- *not* the Debtors -- has determined New GM's ownership composition and capital structure *outside of the bankruptcy context*.  The Minority Bondholder Objectors concede as much.  *See, e.g.,* F&D Obj. at 7 ("The *Government* will thereafter allocate the ownership of New GM . . . .") (emphasis added); Parker Obj. at 15 ("The Debtors did not play any role in negotiating the capital structure of the Purchaser and did not decide what any of its stakeholders would receive as part of the transaction.").  As part of that decision, New GM will assign ownership interests to certain of the Debtors' creditors in the belief that such transfer is necessary to conduct the acquired business. These obligations will be satisfied through allocation of New GM equity or assumption, including the UAW collective bargaining obligations and workers' compensation claims that must be satisfied to obtain beneficial self-insured status.  In sum, the assignment of ownership interests is neither a distribution of estate assets nor an allocation of proceeds from the sale of the Debtors' assets.  As Judge Gonzalez made clear, the "allocation of ownership interests in the new enterprise is irrelevant to the estates' economic interests."  *Chrysler*, 405 B.R. at 99.

26.     For example, the fact that the Purchaser has decided to allocate 17.5% of New GM's equity to the VEBA as consideration for entering into a new collective bargaining agreement with the UAW, in no way reflects any distribution or allocation of assets of the Debtors, let alone discrimination by the Debtors on account of prepetition claims.  Rather, it is the product of a separately-negotiated agreement between New GM and the UAW.  The consideration provided by New GM "in that exchange is not value that would otherwise inure to the benefit of the Debtors' estates."  *Id.* at 100.  Likewise, the value that the Debtors will receive if the 363 Transaction is approved (i.e., 10% of equity plus warrants), is the product of arm's-length negotiations between the Debtors and the Purchaser.  Ultimately, the confirmation of a

plan of liquidation will provide for the manner in which the distribution of the Debtors' assets, in accordance with the priority scheme of the Bankruptcy Code.[6]

27.    <u>Parker's Challenge to the Appropriateness of the U.S. Treasury Expending TARP Funds Lacks Any Legal Basis</u>.  In late 2008, Congress promulgated the Emergency Economic Stabilization Act of 2008 ("**EESA**"), Pub. L. No. 110-343, 122 Stat. 3765 (Oct. 3, 2008) (codified at 12 U.S.C. §§ 5201, *et seq*.), which established the Troubled Asset Relief Program ("**TARP**").  "TARP authorizes the Secretary of the Treasury to purchase troubled assets to restore confidence in the economy and stimulate the flow of credit."  *Chrysler,* 405 B.R. at 82.  As set forth in the Henderson Affidavit, beginning in December 2008, pursuant to a Loan and Security Agreement, dated December 31, 2009, GM borrowed approximately $13.4 billion under the TARP program to finance its operations.  Thereafter, GM borrowed an additional $6 billion.

28.    Parker further objects to the Motion on the ground that the "TARP funds are not available to fund the Debtors' reorganization" because Congress limited the scope of EESA to permit the Secretary to purchase troubled assets only from "financial institution[s]."  Parker Obj. at 22, 24 (citing 12 U.S.C. § 5211(a)(1)).  As a threshold matter, Parker lacks standing to raise the TARP issue, as he has suffered no injury as a result of the alleged violation.  To the contrary, Parker will benefit directly from the alleged violation by likely receiving a distribution to which he would otherwise not be entitled.

29.    Specifically, the issue of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  There are three elements to constitutional standing:  (1) the plaintiff must have suffered an "injury in fact," which is actual or imminent, and that is a concrete and

---

[6] For these reasons, the similar Objection set forth by Narumanchi equally fails.

particularized invasion of a legally protected right; (2) there must be a causal connection between

the injury and the conduct complained of; and (3) it must be likely, not merely speculative, that

the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992). These elements must be shown to satisfy the "case or controversy"

requirement of Article III. *See Chrysler,* 405 B.R. at 82. In addition, there are judicially-

proscribed prudential limitations to standing, one of which is "the plaintiff's grievance must

arguably fall within the zone of interests protected or regulated by the statutory provision or

constitutional guarantee invoked in the suit." *Bennett,* 520 U.S. at 162 (internal citations

omitted).

30. Here, Parker lacks constitutional standing. Because "all unsecured claims

are receiving no less than they would receive under a liquidation," the Minority Bondholder

Objectors have no injury in fact. *Chrysler*, 405 B.R. at 83. Moreover, even if Parker could

demonstrate an injury in fact, the injury is not "causally connected" to the U.S. Government's

use of TARP funds. Specifically, "[i]f a non-governmental entity were providing the funding in

this case, [Parker] would be alleging the same injury . . . . In this light, it is not the actions of the

lender that [Parker is] challenging but rather the transaction itself. Specifically, [Parker's]

alleged injury is not fairly traceable to the U.S. Treasury's actions because [Parker] would suffer

the same injury regardless of the identity of the lender. " *Id.*

31. Parker's Miscellaneous Objections Equally Lack Merit. Parker asserts

additional objections to the Motion, all of which should be summarily rejected.

32. First, Parker contends that "[w]hile the Debtors claim that liquidation

would be disastrous for GM's stakeholders . . . they offer no evidence that would support this

claim." Parker Obj. at 13. Not so. Parker completely ignores the liquidation analysis attached

to the Koch Declaration, which sets forth in detail the recoveries to be expected by each class of

creditor under a hypothetical liquidation scenario of the Debtors' assets.

33.    Second, Parker claims that the Debtors "do not (and apparently cannot)

state the expected value of the Purchaser after the completion of the proposed 363 'sale', the

amount of debt the Purchaser can safely support, the expected value of the Purchaser's common

stock being distributed under the 'sale' transaction . . ." Parker Obj. at 15.  This argument is

misguided for several reasons.  First, issues such as the amount of debt that the Purchaser can

safely support are wholly irrelevant.  More importantly, Parker's claim that the Debtors do not

state the expected value of the Purchaser's common stock to be paid to the Debtors under the 363

Transaction simply ignores the Worth Declaration and the fairness opinion and presentation to

the GM Board of Directors annexed thereto as Exhibits A and F, respectively.

34.    Third, Parker purports to undertake his own liquidation analysis of the

Debtors' assets and liabilities and proclaims that, in a liquidation, "unsecured creditors could

reasonably expect to receive 25 cents on the dollar while secured creditors are paid in full."

Parker Obj. at 7.  Putting aside the absence of any showing that he has any expertise in this area,

his own analysis actually supports the Debtors.  Specifically, central to his analysis, Parker

repeatedly contends that the Debtors have approximately $30 billion of value in net operating

losses that are available as a tax loss carry forward -- but he acknowledges that this loss carry

forward only has value "to an acquiring corporation" that obtains at least 50% of the Debtors.

*Id.* at 6.  In the hands of the Debtors -- including in a liquidation -- it has *no* value to creditors.

Moreover, Parker cannot identify any entity that has come forward to be that "acquiring

corporation," even with the supposedly valuable tax loss as the prize.  No such individual or

entity exists.

35.    Finally, in his amended Objection (Docket No. 2193), Parker contends that "[u]nder the limitations on liens provisions of the senior bondholders' bonds, GM could not grant the Government a lien on virtually everything it owned without concurrently granting to its bondholders (like Parker) an identical lien on the same property securing the bond debt equally and ratably together with the debt of the Government . . . ."  Parker Obj. at 9.  Parker's contention is flatly wrong.

36.    There is no such sweeping restriction on liens in the indentures governing the bonds.  Rather, the only restriction on liens is contained in Section 4.06 of such indentures.  Section 4.06 provides only that

> [GM] will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of [GM] or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary . . . without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities . . . shall be secured equally and ratably with such debt. . . .

Indentures Section 4.06.

37.    The debt under the U.S. Treasury Loan Agreement is *not* secured by liens on any such assets.  Of course, these assets became subject to the postpetition liens of the lenders under the debtor in possession financing facility.

38.    Based on the foregoing, the Bondholder Objections, including those filed by the Minority Bondholder Objectors, should be overruled in their entirety.

**Dealer-Related Objections**

39.    <u>GM Must Restructure Its Uncompetitive, Legacy Dealer Network</u>. Through the 363 Transaction and related efforts, GM is in the process of restructuring all facets of its business.  Central to these efforts are the changes currently underway with respect to GM's

uncompetitive, legacy dealer network, the cost of which is simply staggering:  Because of

insufficient throughput (or sales per dealership) and only marginal network-wide profitability,

the Company spends more than $2 billion annually (for, among other things, wholesale floor

plan support, standards for excellence programs, new vehicle inspection payments, free fuel fills,

and other incentives paid directly to dealers).  Although the proposed network reductions will not

immediately save these costs in full, it will allow New GM to begin significant systematic cost

reduction, as the retained dealers become stronger due to increased market opportunity and, thus,

require decreased levels of support over time.[7]

        40.     Nevertheless, GM has addressed transition issues in a manner that is much

more dealer-friendly than simply rejecting dealership agreements.  That is, *every* GM dealer,

whether it is being retained or not, has received an offer of very substantial consideration in the

form of a Wind-Down or Participation Agreement, including:  (i) in the case of non-retained

dealers, a substantial monetary payment and the continuation of GM's indemnity obligations

regarding future product liability; and (ii) in the case of retained dealers, the opportunity to

continue in business pursuant to an agreement that will provide New GM with necessary

flexibility going forward and the commitment of retained dealers to invest appropriately in their

facilities in light of increased market opportunity -- while, importantly, otherwise changing very

little of the contractual arrangements under which these dealers will continue to operate.[8]

---

[7] In specific terms, the dealer restructuring plan will reduce overall GM dealerships from slightly under 6,000 today to about 3,600 to 3,800 by the end of 2010, providing eventual structural cost savings of approximately $415 million per year, including reduced local advertising assistance, channel network alignment payments, sales and service consultant fees, dealer website funding, dealer support system costs, and dealer training programs.

[8] In addition, the Company established an appeal mechanism to reconsider dealer wind-downs, which, to date, has resulted in decisions to retain 64 of such dealers going forward.

41.    <u>Overview of the Dealer-Related Objections</u>.  The thrust of the Dealer-

Related Objections, which were not filed by the dealers themselves but, rather, by governmental

agencies, is that the Wind-Down and Participation Agreements signed by the Debtors' dealers

conflict with, and effect an improper waiver of, such dealers' state franchise law protections.  As

explained below, however, because the Debtors -- as confirmed by Judge Gonzalez's recent

*Chrysler* decision -- would have been well within their rights to simply *reject* their dealership

agreements, there is nothing improper about the far less draconian alternatives presented by the

Wind-Down and Participation Agreements (which, not surprisingly, have been all but

unanimously accepted).  *See* Henderson Supp. Aff. ¶¶ 10-11 (noting that nearly 100 percent of

the dealers offered Wind-Down and Participation Agreements have accepted); *see also* Objection

of the State of Texas, on behalf of the Texas Department of Transportation ("**Texas Obj.**"),

Exhibit B (Participation Agreement) at ¶ 9(f) (providing that the "[d]ealer acknowledges that its

decisions and actions are entirely voluntary and free from any duress").

42.    <u>Outright Rejection of the Company's Dealership Agreements, While Far</u>

<u>More Severe, Would Have Been Entirely Permissible Under Section 365 of the Bankruptcy</u>

<u>Code</u>.  The Supreme Court explained in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984), that

"the authority to reject an executory contract [under section 365] is vital to the basic purpose to a

Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome

obligations that can impede a successful reorganization."  *Id.* at 528.  Thus, as Judge Gonzalez

recently held in *Chrysler*, absent a showing of bad faith or abuse of discretion, the decision to

reject is subject only to the debtor's business judgment -- regardless of whether that decision is

the best (or even a good) one.  *In re Old Carco LLC*, No. 09-50002, 2009 WL 1708813, at *1

(Bankr. S.D.N.Y. June 19, 2009); *see also In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir.

2008) ("That the debtor's interests are paramount in the balance of control is underscored by the business judgment standard employed" under section 365); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered") (citations omitted), *aff'd sub nom. John Forsyth Co. v. G. Licensing, Inc.*, 187 B.R. 111 (S.D.N.Y. 1995); *In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (similar); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121-22 (Bankr. D. Del. 2001) ("[W]hether the debtor is making the best or even a good business decision is not a material issue of fact under the business judgment test") (internal quotation omitted).

43.       In recently approving Chrysler's rejection of hundreds of dealership agreements, Judge Gonzalez confirmed that the traditional business judgment standard -- and *not* some heightened "public interest standard" or "balancing of the equities" test urged by various objectors -- applies to an OEM-debtor's rejection of dealership agreements under section 365. *Old Carco* at *1-6. Judge Gonzalez explained that state franchise laws, by their express terms, do not justify imposition of a higher standard of section 365 review:

> [W]hile the policies designed to protect the public interest may, in part, underlie the Dealer Statutes, those statutes have been enacted by *state legislatures*, not Congress, and by their very terms protect the public interest of their respective states rather than the national public interest. Further, the fundamental interests sought to be protected by these state legislatures are the economic interests of local businesses and customer convenience and costs. Although some Dealer Statutes articulate a public safety concern in such enactments, the public safety issues raised by the closing of dealerships do not create an imminent threat to health or safety.

*Id.* at *3 (citation omitted) (emphasis in original); *see also id.* at *4 n.8 ("[T]he Dealer Statutes have a limited connection to public safety. The vast majority of Dealer Statutes concern solely

commercial issues affecting the dealers and their customers and communities. . . .  Thus, the

health and safety of the public are not threatened by rejection") (citation omitted).

44.    Moreover, after concluding that Chrysler's rejection of dealership

agreements constituted a valid exercise of business judgment, Judge Gonzalez found that the

state franchise laws at issue, like those at issue here, frustrated the purposes of (and, thus, were

preempted by) section 365.  *See generally id.* at *11-17; *see also id.* at *16 ("'Where a state law

'unduly impede[s] the operation of federal bankruptcy policy, the state law [will] have to yield'"*)*

(quoting *In re City of Vallejo*, 403 B.R. 72, 77 (Bankr. E.D. Cal. 2009)).  As Judge Gonzalez

explained:

> Specifically and by no means exclusively, statutory notice periods
> of, *e.g.*, 60 or 90 days before termination clearly frustrate § 365's
> purpose to allow a debtor to reject a contract as soon as the debtor
> has the court's permission (and there is no waiting period under the
> Bankruptcy Rules).  Buy-back requirements also frustrate § 365's
> purpose to free a debtor of obligations once the debtor has rejected
> the contract.   Good cause hearings frustrate § 365's purpose of
> giving a bankruptcy court the authority to determine whether a
> contract may be assumed or rejected.  Strict limitations on grounds
> for nonperformance frustrate § 365's purpose of allowing a debtor
> to exercise its business judgment and reject contracts when the
> debtor determines rejection benefits the estate.    So-called
> "blocking rights," which impose limitations on the power of
> automobile manufacturers to relocate dealers or establish new
> dealerships or modify existing dealerships over a dealer's
> objection, frustrate § 365's purpose of giving a debtor the power to
> decide which contracts it will assume and assign or reject by
> allowing other dealers to restrict that power.

*Id.* at *16; *see also Vallejo*, 403 B.R. at 77 (holding that "Congress enacted section 365 to

provide debtors the authority to reject executory contracts.  This authority preempts state law by

virtue of the Supremacy Clause [and] the Bankruptcy Clause") (internal citation omitted).  Judge

Gonzalez also made clear that 28 U.S.C. § 959(b), on which the Dealer-Related Objections

largely rely, did not alter the Court's "preemption analysis," because that provision "does not de-

limit the precise conditions on contract rejection" -- particularly where, as here, the pertinent

state laws concern "consumer convenience and costs and the protection of local businesses,

rather than a concern over public safety."  2009 WL 1708813, at *14-15.[9]

45.    <u>Providing Dealers with More than Would Be Realizable from Rejection</u>
<u>Claims Should Obviate the Objections Interposed by State Regulators</u>.  Based on the reasoning

in *Chrysler*, and given that the Debtors, in the exercise of their business judgment, could have

followed the rejection process, the proposed result here, i.e., the approval of agreements that

offer the Company's affected dealers significant consideration that would otherwise not be

available, should be approved and authorized.

46.    For example, through the Wind-Down Agreements, dealers will receive

financial remuneration, including incentive payments, that will enable them to stay in business

through the end of their current contracts (approximately 17 months) and to continue to sell

existing new vehicle inventory in the ordinary course (rather than in a "fire sale") and provide

service and parts availability to their customers.  In exchange, and instead of simply being put

out of business immediately, these dealers will agree not to order additional inventory or protest

future network modifications, to release certain claims (not including claims related to future

normal course payment for business activities) and to waive termination assistance rights under

their current contracts.  In addition, under the Wind-Down Agreements, the indemnification

provisions of article 17.4 of the dealership agreements will be assumed and assigned to New GM

-- a further obligation that, in a rejection scenario, would fall squarely on the dealers' shoulders.

---

[9] *See also* 2009 WL 1708813, at *15 ("In sum, the Dealer Statutes . . . are concerned with protecting economic or commercial interests and are thus preempted by the Bankruptcy Code notwithstanding 28 U.S.C. § 959(b)) (citing *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1353 (9th Cir. 1994)); *id.* at *16 n.32 (stating that "state law protections cannot be used to negate the Debtors' rejection powers under § 365. . . .  'The requirement that the debtor in possession continue to operate *according to* state law requirements imposed on the debtor in possession (i.e., § 959(b)) does not imply that its powers under the Code are *subject to* the state law protections'") (quoting *In re PSA, Inc.*, 335 B.R. 580, 587 (Bankr. D. Del. 2005) (emphasis in original)).

The Wind-Down Agreements therefore represent classic settlement agreements (routinely approved and enforced) to resolve any issue or dispute that otherwise would arise upon termination and that, while critical to the restructuring of GM's dealer network, are also intended and designed to avoid the harsh consequences of rejection.[10]

47.     The same can be said even more strongly about the Participation Agreements -- through which *retained* dealers are offered a *long-term* alternative to rejection, although on slightly modified (but, nevertheless, relatively common) terms.  In fact, those terms have only improved from the dealers' perspective since originally being offered, as the Debtors have worked closely with the National Automobile Dealers Association ("**NADA**") to further refine the retained dealers' arrangements through a letter amendment to the Participation Agreements.  *See* Texas Obj., Exhibit C.  This amendment provides additional clarity that (i) sales and inventory requirements will not be imposed unilaterally by GM; (ii) brand and model exclusivity requirements only will apply to the retained dealers' showrooms; (iii) retained dealers will continue to have the notice and procedural protections under their current contracts or state law with respect to claimed breaches; (iv) the waiver of protest rights will not apply to

---

[10] *See, e.g., Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943, 945-49 (11 Cir. 2009) (holding that retrospective release by dealer of existing claims against manufacturer for alleged violation of the Alabama Motor Vehicle Franchise Act, in exchange for manufacturer's consent to dealership sale, was enforceable under Alabama law, as it was executed in good faith and for valid consideration).  In fact, a number of States -- including Alaska, Colorado, Louisiana, New York, and Virginia -- expressly carve out claim settlements from the universe of non-waivable provisions.  *See, e.g.*, Alaska Stat. § 45.25.130(b) ("This section does not prohibit a voluntary agreement between a manufacturer and a new motor vehicle dealer . . . to settle legitimate disputes"); Colo. Rev. Stat. § 12-6-120(1)(o) (a manufacturer cannot coerce a dealer's prospective assent to waiver "that would relieve any person of a duty or liability imposed under this article *except in settlement of a bona fide dispute*") (emphasis added); La. Rev. Stat. § 32.1261(1)(a)(iv) (manufacturer cannot coerce dealer to assent to a release or waiver "unless done in connection with a settlement agreement to resolve a matter pending a commission hearing or litigation. . . ." ); N.Y. Veh. & Traf. Law § 463(2)(*l*) (prohibition on coercing dealer to assent to release or waiver "shall not be construed to prevent a franchised motor vehicle dealer from entering into a valid release or settlement agreement with a franchisor"); Va. Code Ann. § 46.2-1572.3 (non-waiver provision "shall not apply to good faith settlement of disputes, *including disputes pertaining to contract negotiations*, in which a waiver is granted in exchange for fair consideration in the form of a benefit conferred upon the dealer. . . .") (emphasis added).

circumstances in which GM seeks to increase the number of dealers in a given market;[11] and (v)

matters outside the Participation Agreements will not be subject to this Court's exclusive

jurisdiction.[12]

48.     Indeed, the rationale behind these provisions (particularly the exclusivity

and "no protest" provisions, which are the primary focus of the Dealer-Related Objections) is

clear -- and entirely consistent with the purposes of the Bankruptcy Code.  First, there can be no

debate that New GM will benefit, both from a sales and brand focus/recognition perspective,

from a dealer network comprised of showrooms of exclusively GM cars and trucks.  Second, the

retained dealers' limited waiver of their protest rights provides New GM with some flexibility to

optimally construct and alter its dealer network in the future in the interests of enhancing the

value of the Purchaser that will benefit the Sellers' creditors.  But the Participation Agreements,

as amended, preserve the retained dealers' right to protest franchise modifications within six

miles and limit any protest right waivers to a period of only two years, provisions which are

neither arbitrary nor unreasonable and have been voluntarily agreed to by the Company's

dealers.

49.     The bottom line is that these restructuring efforts make sense for all

involved.  Retained dealers will, again, enjoy enhanced market opportunities because of the

smaller number of dealers, while the attendant reduction in GM's production and legacy costs

will make GM products more competitive in the retail market.  It is thus reasonable for GM to

---

[11] See, e.g., DaimlerChrysler Motors Co. v. Lew Williams, Inc., 48 Cal. Rptr. 3d 233, 239 (Cal. Ct. App. 2006) (finding dealer's prospective waiver of protest rights valid and enforceable, as it "was the result of an arm's length voluntary transaction . . . for valuable consideration").

[12] Annexed hereto as Exhibit "L" is a statement by NADA confirming that it "has reviewed and supports GM's amendments to the Participation Letter Agreement" and stating its belief that "the revised document addresses the majority of dealer concerns."  Per NADA chairman John McEleney:  "'I especially commend GM for its flexibility and its willingness to make substantive clarifications and modifications to address dealer concerns.  We believe GM has made a very good faith effort, given the unprecedented circumstances facing GM and the industry.'"

require that these dealers invest in exclusive and attractive facilities and temporarily forego certain protest rights so that a new dealer network can be appropriately configured at the outset. Indeed, it is an overall benefit to the dealers that GM be able to do so, including because dealer relocations may be necessary to leave out-of-date facilities behind or to re-establish operations in auto malls or similarly concentrated areas.  Finally, it is no stretch for GM to require retained dealers (or, for that matter, winding down dealers) to execute a release in exchange for the substantial consideration being offered.  After all, if GM could simply reject its dealership agreements (thus leaving dealers holding their unsecured claims) and then offer new agreements only to those dealers chosen by GM, then it surely is reasonable for GM to require a release in these circumstances.

**Successor Liability and Consumer Objections**

50.     Various of the Objections relate to tort, asbestos, environmental, and other products liability claims and assert that the Debtors' assets may not be sold to the Purchaser free and clear of such claims, including, in particular, shielding the Purchaser from successor liability.  Notably, in presenting these arguments, the objectors cite no controlling authority which supports their position and, instead, ask this Court to completely disregard applicable precedent and Judge Gonzalez's decision in *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2008), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009).  In *Chrysler*, Judge Gonzalez categorically rejected the precise contentions posited by the Successor Liability and Consumer Objections.  Indeed, the attorneys for the Creditors' Committee, who served in a similar capacity in Chrysler's chapter 11 case, conspicuously fail to mention, much less confront, Judge Gonzalez's decision and the stated principle of this Court to assure consistency in the decisions and rulings made by Bankruptcy Judges in the Southern District of New York.

51.    Section 363(f) of the Bankruptcy Code provides that a debtor in possession may sell property

> free and clear of any interest in such property … only if
>
>> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>>
>> (2)    such entity consents;
>>
>> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>>
>> (4)    such interest is in bona fide dispute; or
>>
>> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

52.    The reference in section 363(f) to the sale being free and clear of "any interest" has been interpreted to permit the sale of a debtor's assets free and clear of claims, including successor liability claims. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) ("*TWA*"); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986) (sale pursuant to section 363(f) barred successor liability for product defects claim), *aff'd*, 805 F.2d 1515 (11th Cir. 1986); *Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.)*, 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982) (sale pursuant to section 363(f) was free and clear of successor liability claims for even statutorily protected rights against employment discrimination and civil rights violations).  The leading treatise on bankruptcy supports this conclusion:

> Section 363(f) permits the bankruptcy court to authorize a sale free of "any interest" that an entity has in property of the estate.  Yet the Code does not define the concept of "interest," of which the property may be sold free.  Certainly a lien is a type of "interest"

of which the property may be sold free and clear.  This becomes apparent in reviewing section 363(f)(3), which provides for particular treatment when "such interest is a lien."  Obviously there must be situations in which the interest is something other than a lien; otherwise, section 363(f)(3) would not need to deal explicitly with the case in which the interest is a lien.

3 *Collier on Bankruptcy* ¶ 363.06[1] (15th rev. ed. 2008).

53.    In *TWA*, the Third Circuit addressed the issue of whether the Bankruptcy Court properly extinguished the liability of a purchaser of a debtors' business operations as a successor under section 363(f) as it related to, *inter alia*, employment discrimination claims.  In affirming the ruling of the Bankruptcy Court, the Third Circuit expressly rejected the arguments made by the objectors here – that "interests" in property should be narrowly interpreted to mean in rem interests in property such as liens.  This principle has been consistently followed as a standard provision in the numerous section 363 sales that have occurred since *TWA* without objection or judicial attacks, e.g., in the following chapter 11 cases, among others:  *In re Bearing Point, Inc.*, Ch. 11 Case No. 09-10691 (Bankr. S.D.N.Y. 2009); *In re Steve & Barry's Manhattan LLC,* Ch. 11 Case No. 08-12579 (Bankr. S.D.N.Y. 2008); *In re Lenox Sales, Inc.*, Ch. 11 Case No. 08-14679 (Bankr. S.D.N.Y. 2008); *In re Pilgrim's Pride Corp.*, Ch. 11 Case No. 08-45664 (Bankr. N.D. Tex. 2008); *In re Lehman Brothers Holdings Inc.*, Ch. 11 Case No. 08-13555 (Bankr. S.D.N.Y. 2008); and *In re The Sharper Image Corp.*, Ch. 11 Case No. 08-10322 (Bankr. D. Del. 2007).

54.    Judge Gonzalez, in *Chrysler,* concurred with the principle expressed in *TWA*.  The very same assertions that are argued here as to successor liability and the scope of section 363(f) in the context of tort and other claims were raised in opposition to Chrysler's section 363 motion.  In overruling those objections, Judge Gonzalez, relying on *TWA*, stated:

Some of these objectors argue that their claims are not "interests in property" such that the purchased assets can be sold free and clear

of them.  However, the leading case on this issue, *In re Trans World Airlines, Inc.,* 322 F.3d 283 (3d Cir 2003) ("***TWA***"), makes clear that such tort claims are interests in property such that they are extinguished by a free and clear sale under section 363(f)(5) and are therefore extinguished by the Sale Transaction.  *See id.* at 289, 293.  The Court follows *TWA* and overrules the objections premised on this argument.  Even so, *in personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction.  *See, e.g., In re White Motor Credit Corp.,* 75 B.R. 944, 949 (Bankr. N.D. Ohio 1987); *In re All Am. Of Ashburn, Inc.,* 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986).  The Court also overrules the objections premised on this argument.

55.    Notably, the fact that so-called "future" tort claims may have been impacted by this ruling in *Chrysler*, did not warrant a different result:

> Additionally, objections in this category touching upon notice and due process issues, particularly with respect to potential future tort claimants, are overruled as to those issues because, as discussed elsewhere in this Opinion, notice of the proposed sale was published in newspapers with very wide circulation.  The Supreme Court has held that publication of notice in such newspapers provides sufficient notice to claimants "whose interests or whereabouts could not with due diligence be ascertain."  *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950).  Accordingly, as demonstrated by the objections themselves, the interests of tort claimants, including potential future tort claimants, have been presented to the Court, and the objections raised by or on behalf of such claimants are overruled.

The objectors have provided no basis to overrule Judge Gonzalez's careful analysis of the issue that must be deemed to have been reviewed and accepted by the United States Court of Appeals for the Second Circuit.  *In re Chrysler, LLC,* No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009).  Accordingly, the Successor Liability and Consumer Objections should be overruled.[13]

---

[13] With respect to objections raised as to environmental liabilities or obligations, a purchaser under section 363 has no obligation to assume environmental liabilities and, as set forth above, can purchase assets free and clear of such

56.      Reliance by any objector on *In re White Motor Credit Corp.,* 75 B.R. 944

(Bankr. N.D. Ohio 1987), to support the proposition that a Bankruptcy Court lacks the authority

to order the sale of a debtor's assets free and clear of tort claims and successor liability is

misplaced.  Although the *White Motor* court did not find that tort claims were interests within the

purview of section 363(f), the court nevertheless held that a "sale conducted through the court's

equitable powers can provide the debtor the same degree of relief effected by a sale in a plan of

reorganization and, therefore, can affect claims arising prior to confirmation." *Id.* at 949.

Accordingly, the court found "the sale was free and clear of all Defendants' claims." *Id.*

57.      Moreover, relying on the Supreme Court's decision in *Perez v. Campbell,*

402 U.S. 637 (1971), the *White Motor* Court indicated that, in the context of asset sales in

bankruptcy, state successor liability statutes, rules, etc. are subject to federal preemption pursuant

to the Supremacy Clause of the United States Constitution, as applicable to the implementation

of the provisions and objectives of the Bankruptcy Code.  As a result, state successor liability

laws must defer to achievement of the objectives and policies of the Bankruptcy Code.

58.      The Objections interposed as to present and future asbestos claims, and the

erroneous assertion that section 524(g) of the Bankruptcy Code is somehow applicable to a sale

under section 363, do not compel a different result.  As Judge Gonzalez again recognized in

*Chrysler*, "section 524(g) is inapplicable to a free and clear sale under section 363(f) and the Sale

Transaction does not contain releases of third parties."  405 B.R. at 112.

59.      Additionally, this Court, in connection with its ruling on the Motion of the

Ad Hoc Committee of Asbestos Personal Injury Claimants for an order directing the United

---

liabilities, including successor liability.  Of course, to the extent the Purchaser becomes the owner and operator of
any purchased property, it will be responsible for environmental claims in respect of such property, and the 363
Transaction in no way seeks to shield the Purchaser from such liability.

States Trustee to appoint a committee of asbestos claimants and an order appointing a future

asbestos claimants representative (the "**Motion to Appoint Asbestos Committee and Future**

**Claims Representative**") (Docket No. 478), clearly noted that section 524(g) was not applicable

to these chapter 11 cases as there is no intent to seek a section 524(g) channeling injunction and

no discharge will be granted in the context of a liquidating plan.  Notably, the Creditors'

Committee opposed the Motion to Appoint Asbestos Committee and Future Claims

Representative on the basis of, among other things, that "section 524(g) is not applicable to these

chapter 11 cases . . . ."  Objection of the Official Committee of Unsecured Creditors to the

Motion of the Ad Hoc Committee of Asbestos Personal Injury Claimants for an Order (I)

Appointing a Legal Representative for Future Asbestos and Personal Injury Claimants and (II)

Directing the United States Trustee to Appoint an Official Committee of Asbestos Personal

Injury Claimants at 3 (Docket No. 2266).

      60.    As the Creditors' Committee appropriately notes in its Objection to the

363 Transaction, section 524(g) relates to discharge of asbestos claims, which plainly is not

being sought or even contemplated by the 363 Transaction.  To state, as the Creditors'

Committee does, that section 363 sales are "impliedly circumscribed by the existence of section

524(g)," lacks any authoritative support.  Indeed, it would require this Court, by implication, to

write statutory language that Congress conspicuously did not include in the Bankruptcy Code.

The argument serves to highlight the futility of the Committee's position.

      61.    Whatever rights present and future asbestos claimants have can be

properly addressed in the Debtors' chapter 11 cases subsequent to the Closing of the 363

Transaction, if approved.  Again, it must be noted that these chapter 11 cases are not asbestos-

driven, as noted by the Court on June 25, 2009, in connection with the Motion to Appoint

Asbestos Committee and Future Claims Representative. The Debtors' projected liabilities for asbestos claims constitute a minute fraction of the total claims to be administered, and the parochial interests of holders of contested asbestos claims should not be permitted to frustrate or otherwise impede a transaction that all parties recognize will maximize value for all economic stakeholders.

62.     Notwithstanding the foregoing, to alleviate certain concerns that have been raised on behalf of consumers as to future products liability claims, the MPA has been amended to provide that the Purchaser will expressly assume all products liability claims arising from accidents or other discrete incidents arising from the operation of GM vehicles occurring subsequent to the Closing of the 363 Transaction, regardless of when the product was purchased. Additionally, the Purchaser has confirmed and, to the extent necessary, the MPA will be clarified to reflect, that the Purchaser is assuming all liability under Lemon Laws for additional repairs, refunds, partial refunds, or replacement of a defective vehicle, and for regulatory obligations under such laws, but not punitive, exemplary, special, consequential, or multiple damages or penalties, all as shall be more particularly addressed in any order approving the 363 Transaction. In connection with the foregoing, the Purchaser has agreed to continue addressing Lemon Law claims (to the extent they are assumed) using the same or substantially similar procedural mechanisms previously utilized by the Debtors.

63.     In sum, objections asserting that the Purchaser is not entitled to the benefit of successor liability are without merit. *Chrysler* is directly on point. Its *ratio decidendi* should be applied. Moreover, and despite having no obligation therefor, the Purchaser has voluntarily agreed to assume certain products liability claims. Such assumptions should significantly alleviate the concern of most objectors.

**Plant Closure Objections**

64.    A result of any sale is that the purchaser may elect to purchase less than all of the assets of the seller.  The 363 Transaction is no different.  The Debtors have received two informal Objections and one formal Objection by governmental units that challenge the decision by the Purchaser to exclude certain plants from the Purchased Assets.  These Objections are summarized on the schedule annexed hereto as Exhibit "D."

65.    These Objections challenge the business judgment of the Debtors in shutting down facilities.  Yet it is the decision of the Purchaser which is at issue, not the Debtors.  The incontrovertible evidence clearly supports the Debtors' business judgment in pursuing the 363 Transaction, notwithstanding the exclusion of certain assets from the sale.

66.    The Objection by the County of Wayne, Michigan with respect to the exclusion of the Debtors' Willow Run facility asserts that the 363 Transaction should be reviewed under a heightened scrutiny standard based on the allegation that the Purchaser is an insider.  As is clear in the Henderson Affidavit, the Purchaser is not an insider but rather, the entity designated by an arm's-length lender and negotiator that engaged in good faith negotiations with the Debtors regarding the terms of the 363 Transaction.  Moreover, the Debtors have submitted substantial support that the 363 Transaction, even under a heightened scrutiny standard, inextricably leads to one conclusion -- the 363 Transaction must be approved in the interest of economic stakeholders.

**Retiree/Splinter Union Objections**

67.    Like all other objectors to the 363 Transaction, the unions that have filed Objections (the "**Objecting Unions**")[14] do not dispute that (i) the 363 Transaction is in the

---

[14] The Objecting Unions include the IUE-CWA (the "**IUE**"), the United Steelworkers, and the International Union of Operating Engineers Locals 18S, 101S and 832S.  Numerous similar objections have been submitted by other GM

Debtors' best interests; (ii) the 363 Transaction represents the best (and, indeed, the only) available alternative to a liquidation (which, there can be no debate, would offer a far lesser (or even no) recovery for any of the Debtors' general unsecured creditors, including the retirees represented by the Objecting Unions); or (iii) that the 363 Transaction will result in an immediately viable and competitive New GM (saving hundreds of thousands of jobs and the businesses of countless suppliers in the process).  Rather, the Objecting Unions' challenge is principally limited to the contention that the treatment of their retirees in the 363 Transaction, as compared to the treatment of the UAW's retirees, is contrary to the requirements of section 1114 of the Bankruptcy Code and otherwise unfair and inequitable.

68.    The Debtors are not unsympathetic to the Objecting Unions' concerns and do not seek to minimize the impact of the 363 Transaction and these chapter 11 cases upon the retirees represented by the Objecting Unions (and many others).  But the Objection is meritless as a matter of law and fact.

69.    The transaction at issue is a *sale* of assets, not a distribution of proceeds by or from the assets of the Debtors to *any* creditor or creditor group.  No modification of any benefit plans of the Objecting Unions or the retirees they represent are being proposed or effected; and, as a matter of law (including under the Bankruptcy Code), satisfying section 1114 is simply *not* a precondition to an asset disposition under section 363.  Indeed, a section 1114 process in this context would effectively preclude the very expedition that section 363 so clearly permits, and that is an express condition of the MPA.  (*See*, *e.g.*, Debtors Mem. at 7-9 (citing cases)).  Moreover, while the Objecting Unions try to pin the blame for their retirees' supposed

---

retirees and representatives thereof (collectively, the "**Other Retiree Objections**"), as reflected in Exhibit "E."  For ease of reference, the Debtors refer herein solely to the Objecting Unions' Objection, but note that their response is equally applicable to (and, thus, also requires the rejection of) the Other Retiree Objections.

disparate treatment (i.e., vis-à-vis the UAW) on the Debtors, the treatment of the UAW's retirees

is the result of an agreement entered into between New GM and the UAW.  That agreement

reflects a business judgment by New GM, which needed the support of the UAW, whereby New

GM will provide consideration to the New UAW VEBA (i.e., preferred and common equity in

New GM) that does not include *any* Debtor assets.  Such business decisions by the Purchaser do

not implicate any rights of the Objecting Unions or their retirees, or contravene any obligation of

the Debtors under the Bankruptcy Code.  As Judge Gonzalez stated in *Chrysler*:  "In negotiating

with those groups essential to its viability, New Chrysler made certain agreements and provided

ownership interests in the new entity, which was neither a diversion of value from the Debtors'

assets nor an allocation of the proceeds from the sale of the Debtors' assets."[15]  *In re Chrysler*

*LLC*, 405 B.R. 84, 99 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS

12351 (2d Cir. June 5, 2009).

> 70.    The consideration from the Purchaser to the New UAW VEBA further

flows from (i) contractual obligations that are plainly not applicable to the Objecting Unions;[16]

and (ii) negotiations principally between the UAW and the U.S. Treasury (as the Purchaser's

---

[15] See also *Chrysler*, in which the Court explained:

> the UAW, VEBA, and the Treasury are not receiving distributions on account of
> their prepetition claims.  Rather, consideration to these entities is being provided
> under separately-negotiated agreements with New Chrysler. . . .  As part of those
> negotiations, New Chrysler and the workers have reached agreement on terms of
> collective bargaining agreements with the UAW. . . .  That New Chrysler and
> the UAW have agreed to fund the VEBA with equity and a note is part of a
> bargained-for exchange between New Chrysler and the UAW. . . . *The*
> *consideration provided by New Chrysler in that exchange is not value which*
> *would otherwise inure to the benefit of the Debtors' estates.*

405 B.R. at 99-100 (emphasis added).

[16] Specifically, by letter agreement dated September 26, 2007 (annexed hereto as Exhibit "M"), GM agreed that
"any sale of an operation as an ongoing business would require the buyer to assume the 2007 GM-UAW Collective
Bargaining Agreement."  No similar obligation applies to the Objecting Unions.

sponsor), which is not a chapter 11 debtor and which is under no obligation to comply with

section 1114.  The U.S. Treasury's objective is to give New GM the best chance for future

success to enable the recovery of its loans and investments as well as enhance the value of the

equity interests in the Purchaser.  In order to accomplish that goal, it is necessary to obtain the

support and to preserve jobs of the UAW and its members (including those who someday will be

retirees), who are critical to ongoing operations.  In contrast, none of those jobs, by the Objecting

Unions' own admission, are held by *any* of their existing members.  The section 1114 rights of

the Objecting Unions' retirees, if any, can and should be addressed in connection with the

administration of the Debtors' chapter 11 cases subsequent to the Closing of the 363 Transaction.

*See Chrysler*, 405 B.R. at 110 ("[T]he Court finds that if the Sale Motion were not approved,

which would likely result in the Debtors' liquidation, there would likely be no value to distribute

[to] any retirees, all of whom would be unsecured creditors").[17]

71.    As for the Objecting Unions' more general claim of "grossly unfair and

inequitable" treatment, none of their benefit plan terms are being modified; and the claims of

their retirees are not being compromised, settled or changed in any way by the 363 Transaction.

Ironically, however, these retirees have an alternative to simply filing a claim in these chapter 11

cases -- an alternative offered by New GM.  Such alternative -- which already has been accepted

by several other unions (including the International Brotherhood of Electrical Workers, the

---

[17] Several of the Other Retiree Objections challenge the Motion insofar as it seeks approval of the New UAW VEBA, which, they contend, does not provide them with commensurate benefits going forward.  But the law is clear that such approval, even though the VEBA benefits are not uniformly applicable to *all* retirees, permissibly avoids the potential loss of *all* benefits by *all* retirees.  *See, e.g.*, *UAW v. Gen. Motors Corp.*, 2008 WL 2968408, at *24 (E.D. Mich. 2008) (approving settlement because "risk of loss, even if unlikely, would produce consequences too grave that they are worth avoiding through a settlement") (citations omitted); *see also UAW v. Chrysler LLC*, 2008 U.S. Dist. LEXIS 92591, at *68 (E.D. Mich. July 31, 2008) (approving settlement, which reduced certain retiree benefits as a result of Chrysler's financial difficulties, because the potential loss of all benefits due to "Chrysler's financial collapse" would be "far more harsh" for all retirees); *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 595 (E.D. Mich. 2006) (similar).  Accordingly, the 363 Transaction should be approved because the alternative is a near certain elimination of all UAW and other retiree benefits.

International Association of Machinists, Carpenters Local 687, Interior Systems Local 1045, and

the International Brotherhood of Painters and Allied Trades of the United States and Canada,

Sign and Display Union Local 591) (*see* Henderson Supp. Aff. ¶ 12) -- includes the provision by

New GM of healthcare benefits commensurate with the benefits that have been and will be

provided to GM's *salaried* retirees.  The Objecting Unions may be unhappy with this offer and

are free to reject it, but such unhappiness simply does not give rise to a cognizable objection to

the 363 Transaction.  One thing is abundantly clear, however -- denying the Motion on these or

any other grounds would force the Debtors' immediate liquidation, resulting in limited recovery

for even the Debtors' secured creditors and likely no recovery by any of the Company's

unsecured creditors, including the retirees whom the Objecting Unions represent.

### Workers' Compensation Objections

72.    The Debtors have received Objections from two states (Michigan and

Ohio) regarding the Purchaser's proposed treatment of workers' compensation claims under the

MPA.  The Debtors have been engaged in discussions with representatives from these states and

believe that the issues set forth in their Objections have been resolved.

### Tax Objections

73.    The Debtors have received Objections from taxing authorities in various

states.  The Debtors' reply to these Tax Objections are set forth in the schedule annexed hereto as

Exhibit "G."

### Lien Creditor Objections

74.    Several entities identified in Exhibit "H" (the "**Lien Creditor Objectors**")

claim to hold liens on the Purchased Assets and have filed Objections asserting that the Sale

Order improperly seeks to extinguish or otherwise impair their rights with respect to any valid

statutory or possessory liens, such as mechanics', carriers', workers', repairers', shippers',

marine cargo, construction, toolers', molders', or similar liens (the "**Statutory Liens**").  The

Debtors are not seeking to sell the Purchased Assets free and clear of Statutory Liens under

section 363(f) of the Bankruptcy Code

75.    After consulting with the Purchaser, the Debtors have agreed to add a

provision to the Sale Order to clarify the issue and resolve the Lien Creditor Objections.  This

provision is as follows:

> Notwithstanding anything to the contrary in this Order or the
> MPA, (a) any Purchased Asset that is subject to any mechanics',
> carriers', workers', repairers', shippers', marine cargo,
> construction, toolers', molders', or similar lien or any statutory lien
> on real and personal property for property taxes not yet due shall
> continue to be subject to such lien after the Closing Date if and to
> the extent that such lien (i) is valid, perfected and enforceable as of
> the Commencement Date (or becomes valid, perfected and
> enforceable after the Commencement Date as permitted by section
> 546(b) or 362(b)(18) of the Bankruptcy Code), (ii) could not be
> avoided by any Debtor under sections 544 to 549, inclusive, of the
> Bankruptcy Code or otherwise, were the Closing not to occur; and
> (iii) the Purchased Asset subject to such lien could not be sold free
> and clear of such lien under applicable non-bankruptcy law, and
> (b) any Liability as of the Closing Date that is secured by a lien
> described in clause (a) above (such lien, a "**Continuing Lien**") that
> is not otherwise an Assumed Liability shall constitute an Assumed
> Liability with respect to which there shall be no recourse to the
> Purchaser or any property of the Purchaser other than recourse to
> the property subject to such Continuing Lien. The Purchased
> Assets are sold free and clear of any reclamation rights, *provided,
> however,* that nothing, in this Order or the MPA shall in any way
> impair the right of any claimant against the Debtors with respect to
> any alleged reclamation right to the extent such reclamation right is
> not subject to the prior rights of a holder of a security interest in
> the goods or proceeds with respect to which such reclamation right
> is alleged, or impair the ability of a claimant to seek adequate
> protection against the Debtors with respect to any such alleged
> reclamation right. Further, nothing in this Order or the MPA shall
> prejudice any rights, defenses, objections or counterclaims that the
> Debtors, the Purchaser, the U.S. Treasury, EDC, the Creditors'
> Committee or any other party in interest may have with respect to
> the validity or priority of such asserted liens or rights, or the type
> (or amount), if any, of required adequate protection.

76.     The Debtors have reached out to the attorneys for the Lien Creditor

Objectors to propose the foregoing language in an effort to resolve the Lien Creditor Objections.

As of the date hereof, the Lien Creditor Objectors that have responded have indicated that their

respective Objections will be resolved if the foregoing language is included in the Sale Order.  In

any event, the Debtors submit that this language fully addresses the issues raised in the Lien

Creditor Objections.  As a result, the Debtors request that the Court overrule the Lien Creditor

Objections to the extent they are not withdrawn.

**Stockholder Objections**

77.     Much like a vast majority of the Bondholder Objections, the

approximately 18 Objections interposed by GM's equity interest holders largely are not

substantive.

78.     The objecting equity interest holders claim that they are being treated

unfairly compared with other stakeholders.  There is no basis for such argument.  The purpose of

a sale of substantially all of a debtor's assets pursuant to section 363(b) of the Bankruptcy Code

is to "transform assets . . . into cash in an effort to maximize value."  *In re Trans World Airlines,

Inc.*, 2001 Bankr. LEXIS 980, at *31-32 (Bankr. D. Del. Apr. 2, 2001).  The value generated by a

sale pursuant to section 363(b) will be distributed in accordance with the absolute priority

distribution scheme set forth in section 1129(b)(2)(B)(ii) of the Bankruptcy Code, in which

creditors must be paid in full before equity interest holders receive any recovery.  *See In re

Iridium Operating LLC*, 478 F.3d 452, 463 (2d Cir. 2007) (quoting *N. Pac. R.R. Co. v. Boyd*, 228

U.S. 482, 504 (1913)).  Therefore, the inability to receive a recovery on account of their shares

absent full payment to the unsecured creditors, including the bondholders, cannot be the basis of

a sustainable objection to the 363 Transaction.

**Cure Objections**

79.    At the outset of the 363 Transaction process, the Debtors established
detailed procedures to address proactively the issues that are bound to arise in connection with
the assumption and assignment of over 700,000 executory contracts and unexpired leases of
personal and nonresidential real property (the "**Contracts**") in an organization as large and
complex as GM.  At the center of these efforts is a call center in Warren, Michigan (the "**Call
Center**"), which is staffed by purchasing personnel employed by the Debtors, representatives
from Alix Partners, in-house counsel, and outside counsel.  The Call Center operates and
responds to inquiries 24 hours a day.

80.    In addition, the Debtors established for the benefit of Contract
counterparties an interactive website (the "**Website**") that provides current information regarding
the status of assumption and assignment of Contracts, detailed information on cure amounts, and
other pertinent information.  The Website is updated as cure disputes, whether in the form of
informal inquiries or formal objections, are resolved.

81.    The approximately 550 Cure Objections, including reservations of rights
filed by Contract counterparties in connection with the 363 Transaction, actually represents a
very small percentage of the Contracts being assumed and assigned to the Purchaser.  This is a
tribute to the efforts and resources expended by the Debtors to ensure a smooth 363 Transaction.

82.    The Debtors have continued to address the Cure Objections and are
confident that virtually all of these Objections either will be resolved or relegated to simple cure
reconciliation issues by the Sale Hearing.  A schedule identifying the Cure Objections is annexed
hereto as Exhibit "J."  Prior to the Sale Hearing, the Debtors intend to file with the Court an
updated schedule setting forth the then-current status of the Cure Objections.

83.    Many of the Cure Objections raise concerns regarding the treatment of claims for amounts that have or will become due after the Commencement Date but prior to the Closing of the 363 Transaction.  For the avoidance of doubt, the Debtors intend to modify the proposed Sale Order to clarify that the Purchaser will assume, and pay in the ordinary course of business and as they come due, all amounts for postpetition goods delivered and services provided to the Debtors under each Purchased Contract to the extent due and payable and not otherwise paid by the Debtors.

84.    In short, a significant number of Cure Objections already have been resolved, and the remainder do not constitute impediments to approval of the 363 Transaction. The Sale Procedures provide that Contracts may be assumed and assigned notwithstanding ongoing cure disputes with Contract counterparties, with such disputes being resolved post-Closing.  If the Cure Objections cannot be resolved on a business level, the disputes will be resolved either in this Court or pursuant to binding arbitration as agreed to between the Debtors and such Contract counterparty under a Court-approved Trade Agreement.  Accordingly, to the extent a Cure Objection is styled as an Objection to the Motion, it is improper and should be overruled.

**Miscellaneous Objections**

85.    <u>The Creditors' Committee</u>.  The Creditors' Committee's assertion that the Purchaser must make adequate provision for the payment of all costs and expenses associated with administering the chapter 11 cases subsequent to the Closing of the 363 Transaction is completely unsupportable.  Notably, the Creditors' Committee cites no applicable legal authority for its novel position, because none exists.  Neither section 363 nor section 506(c) of the Bankruptcy Code requires either a secured creditor or a purchaser to fund such expenses in connection with a sale under section 363 of the Bankruptcy Code.  Moreover, the Creditors'

Committee's assertion that a "recovery [was] promised to them under the terms of the Sale"

(Creditors' Committee Obj. at 24) is patently untrue.

86.    What is true, however, is that consummation of the 363 Transaction will

avoid the draconian consequences to unsecured creditors and other stakeholders that the

Creditors' Committee recognizes will ensue if the 363 Transaction is not pursued.  What also is

true is that the Purchaser has voluntarily agreed to fund not less than $950,000,000 to the

Debtors' estates post-Closing, which currently is believed to be adequate to fund the projected

costs and expenses attendant to the confirmation of a liquidating chapter 11 plan for the Debtors.

87.    White Marsh and Memphis Facilities.  Among the assets to be sold in the

363 Transaction are the Debtors' interest in two commercial facilities -- located in White Marsh,

Maryland and Memphis, Tennessee -- the acquisition of which was financed by a group of

secured lenders (the "**White Marsh/Memphis Lenders**").  In their Objection to the Motion,

these lenders do not dispute that the Debtors own and are entitled to sell these facilities (WM/M

Obj. ¶¶ 1, 5-6).  Rather, they argue that section 363(f)(3) of the Bankruptcy Code prevents the

Debtors from selling the two facilities free and clear of the lenders' first priority liens unless the

lenders are paid the face amount of their liens in full, in cash, at closing, regardless of the value

of the facilities that constitute their collateral (*Id*. ¶¶ 12-14).[18]  They also argue that their interest

is not adequately protected.  However, they will have more than adequate protection through a

replacement lien on a portion of the consideration being provided by the Purchaser consisting of

shares in New GM valued at $3.8-4.8 billion (or some 40 to 160 times the value of the interest

the White Marsh/Memphis Lenders assert).  Their argument is unsound and based on a

---

[18]  Section 363(f)(3) provides that "[t]he trustee may sell property… free and clear of any interest in such property
of an entity other than the estate, only if… such interest is a lien and the price at which such property is to be sold is
greater than *the aggregate value* of all liens on such property" (emphasis added).

misreading of section 363(f)(3) – but in any event, it provides no basis to frustrate the 363

Transaction.  The Court can hold a post-sale hearing to determine the value of the objectors' lien

and the assets of the Debtors' estates to which that lien should attach.

88.    The White Marsh/Memphis Lenders argue that the two facilities cannot be

sold "free and clear" of the existing liens unless the lenders receive a replacement lien equal to

the face amount of such liens.  That is not the case.  On its face, section 363(f)(3) refers to "the

aggregate *value* of all liens," 11 U.S.C. § 363(f)(3)(emphasis added), – not the "aggregate

*amount* of all liens."  If Congress had intended the latter, it would have used such term.  It did

not.

89.    Consistent with this reading, this Court has repeatedly held that the

"aggregate value of all liens" contained in section 363(f)(3) does not refer to the *face amount* of

the liens, but rather to the *actual value* of the related collateral.[19]  *See, e.g.*, *In re Beker Indus.*

*Corp.*, 63 B.R. 474, 475-76 (Bankr. S.D.N.Y. 1986) (holding that the Bankruptcy Code "plainly

indicate[s] that the term 'value' [as used in sections 506(a) and 363(f)(3)] means its actual value

as determined by the Court, as distinguished from the amount of the lien");[20] *In re Bygaph, Inc.*,

56 B.R. 596, 606 (Bankr. S.D.N.Y. 1986) (authorizing sale of property subject to a lien after

reviewing the "sharply disputed" value of the collateral); *cf. In re Chrysler LLC*, 405 B.R. at 98

(authorizing section 363 sale because, among other reasons, the *liquidation value* of the

---

[19] This reading of section 363(f)(3) is consistent with the Supreme Court's holdings that:  (i) the "value" of a
"creditor's interest" under section 506(a) means "the value of the collateral" (*United Sav. Ass'n v. Timbers of
Inwood Forest Assocs.*, 484 U.S. 365, 372 (1988); *see also LNC Invs., Inc. v. First Fidelity Bank*, 247 B.R. 38, 44
(S.D.N.Y. 2000)); and (ii) "the 'proposed disposition or use' of the collateral is of paramount importance to the
valuation question" (*Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997) (internal citations omitted)).

[20] Ironically, the White Marsh/Memphis Lenders rely on *Beker* for their section 363(f)(5) arguments (WM/M Obj. ¶
17), but utterly ignore *Beker*'s primary holding that section 363(f)(3) "is to be interpreted to mean what it says:  the
price must be equal to or greater than the aggregate *value* of the liens asserted against it, *not their amount*."  63 B.R.
at 476 (emphasis added).

collateral was lower than the sale price and "[t]he full *value* of the collateral will be distributed to the [secured lenders]") (emphasis added).

90.    Numerous other courts have followed *Beker*, recognizing that the objectors' proposed "face amount of the lien" interpretation of § 363(f)(3) "ignores the [Bankruptcy] Code's focus on protecting the *value* of collateral" and impermissibly allows an "undersecured creditor to obstinately block an otherwise sensible sale."  *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 712 (Bankr. W.D. Tex. 1989); *see also In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990) (holding that section 363(f)(3) requires "that the secured creditor receives only the value of its secured claim in debtor's property, *even though that may be significantly less than the face amount of the claim*") (emphasis added); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319, 320 n.14 (D.P.R. 1991) (the "face amount" approach has been "highly criticized" and is "unduly strict," and citing *Beker* as the "better reasoned view"), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992), *aff'd in part, rev'd in part on other grounds*, 983 F.2d 336 (1st Cir. 1993).[21]

91.    Moreover, the White Marsh/Memphis Lenders' interpretation of section 363(f)(3) would enable vastly undersecured creditors to hold up asset sales that provide enormous value to a debtor's estate unless they are paid in full – even on the *unsecured* portion

---

[21]    Although there are cases – which the White Marsh/Memphis Lenders cite – that support the "face amount of the lien" interpretation, the weight of authority, particularly of courts that have analyzed the issue in detail, supports the Debtors' "actual value" interpretation.  For example, the court in *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995), undertook an in-depth analysis of the two viewpoints and concluded that the Debtors' interpretation "provides a better reasoned solution to this dilemma."  In contrast, the sole case in this district to which the White Marsh/Memphis Lenders cite, *In re General Bearing Corp.*, is not persuasive.  136 B.R. 361 (Bankr. S.D.N.Y. 1992).  The parties there did not even raise the issue of section 363(f)(3).  *Id.* at 366.  Thus, the Court there, lacking proper briefing on this issue, did not acknowledge that other courts had interpreted section 363(f)(3) in a contrary manner.  Indeed, the Debtors respectfully note that the *General Bearing* Court inexplicably cited *Beker* and *Oneida* – cases that explicitly *reject* the "face amount" interpretation – as *supporting* such interpretation (*id.*), thus confirming that *General Bearing* should not be followed.

of their claim.[22]   An interpretation that results in secured creditors insisting on and receiving

such a windfall is illogical and runs counter to the entire framework of the Bankruptcy Code,

which compensates secured creditors for the value of their collateral.  *See, e.g.,* 11 U.S.C. §§

506(a)(1), 1129(b)(2)(A) – as well as § 363(f)(3) itself.[23]   In short, the Debtors clearly have met

their burden of proving that section 363(f)(3) permits a "free and clear" sale of the White Marsh

and Memphis facilities.[24]   Moreover, the dispute over the amount of the liens to which the White

Marsh/Memphis Lenders should be entitled as adequate protection should in no way interfere

with the 363 Transaction.  The amount, timing and form of protection can be readily established

in a subsequent valuation proceeding and order, if necessary.  The Debtors are not attempting to

deny the White Marsh/Memphis Lenders the value to which their collateral entitles them.

> 92.     The White Marsh/Memphis Lenders are More than Adequately Protected
> Under Sections 361 and 363 of the Bankruptcy Code.  The White Marsh/Memphis Lenders'

further assertions that the replacement lien in sale proceeds is inadequate to provide them

adequate protection should be rejected.  The case law is uniform that the adequate protection to

which secured creditors are entitled when their collateral is sold "free and clear" of liens in a

section 363 sale is a replacement lien on the "proceeds" of the sale.  *See, e.g., In re Collins*, 180

---

[22]  Section 506(a)(1) of the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on
property in which the estate has an interest . . . is a secured claim to the extent of the *value* of such creditor's interest
in the estate's interest in such property . . . and is an unsecured claim to the extent that the *value* of such creditor's
interest . . . is less than the amount of such allowed claim" (emphasis added).

[23]  *See also In re Broomall Printing Corp.*, 131 B.R. 32, 37 (Bankr. D. Md. 1991) – a case cited by the White
Marsh/Memphis Lenders (WM/M Obj. ¶ 23) – holding that "[t]he only collateral values a debtor possesses to pay a
secured claim are the proceeds which may be realized from the sale of the collateral.  If a debtor pays to a secured
creditor more than the proceeds realized from the sale of the collateral, then of necessity the debtor will have made
the payments from sources that otherwise would have been available for other creditors or for the debtor's
rehabilitation.  This result would not constitute equitable treatment of creditors…".

[24]  Because the Debtors have demonstrated that section 363(f)(3) clearly supports a sale of the two properties free
and clear of all existing liens, there is no need to address the lenders' arguments that section 363(f)(5) does not
apply, notwithstanding that their claim plainly is one to be satisfied by a money judgment (*see* WM/M Obj. ¶¶ 15-
17).

B.R. 447, 452 (Bankr. E.D. Va. 1995); *WPRV-TV,* 143 B.R. at 321 ("The legislative history makes clear that 'the most common form of adequate protection will be to have the interest attach to the proceeds of the sale'") (citation omitted); *In re Brileya*, 108 B.R. 444, 446 (Bankr. D. Vt. 1989) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 345-46 (1977), and S. Rep. No. 95-989, 95th Cong., 2d Sess. 55 (1978)) (adequate protection is achieved by attaching those interests which are "free and clear" to the proceeds of the sale).  Thus, contrary to the Lenders' assertions, the Bankruptcy Code and case law do not require that proceeds of the sale must be *cash*, or that the replacement lien must be a lien on *cash* proceeds – and they also do not require that the proceeds to which the replacement lien attaches be distributed to the secured creditors prior to the effective date of a chapter 11 plan.  WM/M Obj. ¶ 25.

93.     First, a secured creditor's right to adequate protection "is limited to the lesser of the value of the collateral or the amount of the secured claim."  *Bygaph,* 56 B.R. at 606. *See also In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 90-91 (2d Cir. 2003) (holding that the value of the replacement lien must be determined under section 506(a)); *In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 74 (1st Cir. 1995) ("[V]aluation for section 361 purposes necessarily looks to section 506(a) for a determination of the amount of a secured claim.").  And it is the secured creditor that bears "the burden of proof under § 363(o)(2) to establish the extent of its interest, *i.e.*, the value of the collateral."  *Bygaph,* 56 B.R. at 606.

94.     Second, "adequate protection" entitles a secured creditor to realize the equivalent of its collateral, "only upon completion of the reorganization."  *Timbers*, 484 U.S. at 377.  *See also LNC*, 247 B.R. at 45.

95.     Third, contrary to the White Marsh/Memphis Lenders' assertions, courts have found that security interests in equity (such as stock) indeed can constitute "adequate

protection" in the context of a section 363 sale and there is no proscription of such form of

protection. The Bankruptcy Code "confers upon 'the parties and the courts flexibility'" and

discretion in fashioning the adequate protection relief. *In re 495 Cent. Park Ave. Corp.*, 136

B.R. 626, 631 (Bankr. S.D.N.Y 1992) (citation omitted); *Dairy Mart*, 351 F.3d at 90 (courts can

grant adequate protection in the form of "cash payments, a lien, or ... 'other relief'") (citation

omitted). *See also In re Westpoint Stevens, Inc.* 333 B.R. 30 (S.D.N.Y. 2005) (adequate

protection provided in the form of securities, though prohibiting premature allocation and

distribution of same); *Chrysler*, 405 B.R. at 98 ("The *Westpoint* court, however, recognized that,

pursuant to section 363, a bankruptcy court had authority to authorize a sale of assets in

exchange for stock and the granting of replacement liens.").

      96.    The only case cited by the White Marsh/Memphis Lenders on this issue

does not support their assertion that, *per se*, "a security interest in equity does not constitute

adequate protection" for a lienholder. WM/M Obj. ¶ 26. To the contrary, the court in *In re TM*

*Monroe Manor Assocs.*, 140 B.R. 298 (Bankr. N.D. Ga. 1991), extensively cited to *In re San*

*Felipe @ Voss, Ltd.*, 115 B.R. 526, 529 (Bankr. S.D. Tex. 1990), and noted that in *San Felipe*,

> the debtor proposed to offer a secured creditor equity securities in
> a third-party purchaser as the indubitable equivalent of the
> creditor's claim. The court confirmed the plan, reasoning that
> while the use of *equity securities in the reorganized debtor* was not
> contemplated in the Bankruptcy Code, the use in cramdown of
> *equity securities in a third-party purchaser* was not prohibited as
> long as the securities at issue were stable and there was a
> substantial equity cushion in the offered stock.

*TM Monroe*, 140 B.R. at 300 (emphasis provided by the court). This is precisely what the

Debtors have offered to the White Marsh/Memphis Lenders here.

      97.    The Debtors here have met their burden of proving that the proposed

adequate protection is sufficient. Specifically, the Worth Declaration establishes the value of

New GM shares that the Debtors are receiving as proceeds at $3.8 billion to $4.8 billion, while

the White Marsh/Memphis Lenders' asserted claim is $90 million.  In contrast, the White

Marsh/Memphis Lenders have provided *no evidence* that such valuation is inaccurate or

inadequate and rely instead on baseless *ipse dixit* assertions that a replacement lien on "equity in

a newly-formed non-public entity does not adequately protect" the lenders.  WM/M Obj. ¶ 25.  rs

98.    In sum, the objecting Lenders' interests are more than adequately

protected.  The Court should authorize the sale of the properties free and clear of existing liens

99.    The White Marsh/Memphis Lenders' argument that the proposed sale

frustrates their right to credit bid their secured claims (WM/M Obj. ¶ 19) is unavailing.

Bankruptcy courts have broad discretion to establish bidding procedures.  *See In re Fin. News*

*Network, Inc.*, 980 F.2d 165, 170 (2d Cir. 1992) (finding the bankruptcy bidding process was fair

and noting that "[t]here are cases where the bankruptcy court's discretion must be sufficiently

broad so that in making its decision it can compass [any] competing considerations as best as it

can"); *In re Big Rivers Elec. Corp.*, 213 B.R. 962, 976-77 (Bankr. W.D. Ky. 1997) ("[h]ere the

Court had broad discretion with regard to ordering the bidding process … .  The Bankruptcy

Court has a *duty* to maximize the value of the estate").  The Court here properly determined that

to maximize value for the Debtors' estates, only bids for all or substantially all of the Debtors'

assets would be qualified.

100.    Toyota.  The limited objection filed by Toyota Motor Corporation

("**Toyota**") is not an objection to the 363 Transaction, but rather an objection to the assumption

and assignment of certain contracts between the Debtors and Toyota without Toyota's consent.

The Debtors are willing to delay the assumption and assignment of any contracts with Toyota

until a later date, and in the absence of a consensual resolution, will ask the Court to determine

the substance of this Objection as it relates to any contracts with Toyota the Debtors are seeking

to assume and assign to the Purchaser.  As such, the Court need not determine the merits of this

Objection prior to approval of the 363 Transaction.

   101. <u>GMAC</u>.  GMAC LLC ('**GMAC**") supports the 363 Transaction, but has

filed a reservation of rights.  On June 1, 2009, the Court entered an Order authorizing the

Debtors to enter into and approving that certain ratification agreement (the "**Ratification**

**Agreement**") between the Debtors and GMAC.  The Ratification Agreement authorized the

Debtors to continue their prepetition financial and operating agreements and arrangements (the

"**Operating Documents**") with GMAC, pending the assumption and assignment to the

Purchaser of the Operative Documents pursuant to the Motion.  The Ratification Agreement

further provides that the Purchaser is to assume and perform the Debtors' obligations under the

Operative Documents in accordance with the terms thereof.  GMAC consents to and supports the

363 Transaction, but has reserved its rights to object to the 363 Transaction to the extent that

certain undisclosed schedules to the MPA do not comply with the requirements of the

Ratification Agreement.

WHEREFORE the Objections should be overruled and the Debtors' request for

approval of the 363 Transaction be granted, together with such other and further relief as is just.

Dated:  New York, New York
June 26, 2009

/s/ Harvey R. Miller
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

**Bondholder Objections**

**Bondholder Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 545 | Douglas M. Chapman | The Debtors are circumventing the chapter 11 process. | *See* below response (to Docket No. 1969). |
| 1260 | Paul D. Schrader | The 363 Transaction does not provide an equitable result to bondholders in comparison to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1277 | Peter Petra | The 363 Transaction does not provide an equitable result to bondholders in comparison to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1290 | Marcel Cicic | The 363 Transaction does not provide an equitable result to bondholders in comparison to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1755 | Ralph A. Henderson and Jean L. Henderson | Bondholders' rights are senior to the rights of shareholders, and the Bankruptcy Court should decide whether the U.S. Treasury is a creditor or shareholder. | *See* below response (to Docket No. 1969). |
| 1758 | Radha R.M. Narumanchi | The 363 Transaction is a fraud on various creditors, and bondholders were given insufficient time to object thereto. | *See* below response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1759 | Radha R.M. Narumanchi | The Debtors did not provide adequate notice of the 363 Motion to its stakeholders. The 363 Motion should not be decided in an expedited manner. | *See* below response (to Docket No. 1969). |
| 1891 | Francis H. Caterina, et al | The MPA violates the U.C.C. and unfairly denies objectors the right to a trial by jury. | The 363 Transaction, as contemplated by the MPA, is allowed under the Bankruptcy Code. *See* below response (to Docket No. 1969).<br><br>There is no right to a trial by jury in the context of an asset sale pursuant to section 363 of the Bankruptcy Code. |
| 1893 | Sandra Stevens Goodale | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1897 | Charles and Mary Reckard | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1924 | Lucile E. Cochran | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1969 | Unofficial Committee of Family & Dissident GM Bondholders | The 363 Transaction should be pursued in the context of a chapter 11 plan of reorganization.<br><br>The Debtors are not exercising sound business judgment in pursuing the 363 Transaction.<br><br>The 363 Transaction constitutes a *sub rosa* plan that cannot be approved under section 363(b) of the Bankruptcy Code. | In the context of these chapter 11 cases involving the fragile business at issue, there *is* a business justification for the sale of substantially all the Debtors' assets at this early stage.  The 363 Transaction is the *only* viable means of preserving GM's business and maximizing its going concern value.  It cannot be disputed that the only purchaser who has come forward to purchase substantially all of the Debtors' assets is only willing to do so *in the context of an expedited 363 Transaction.*<br><br>Faced with a choice between implementing the 363 Transaction -- and thereby preserving and maximizing the value of GM's business and saving hundreds of thousands of automotive-related jobs -- versus liquidating the Debtors' assets, the Debtors' Board of Directors undoubtedly exercised sound business judgment in proceeding with the 363 Transaction. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| (con't) | (con't) | (con't) | (con't) |
| 1969 | Unofficial Committee of Family & Dissident GM Bondholders | The 363 Transaction should be pursued in the context of a chapter 11 plan of reorganization.<br><br>The Debtors are not exercising sound business judgment in pursuing the 363 Transaction.<br><br>The 363 Transaction constitutes a *sub rosa* plan that cannot be approved under section 363(b) of the Bankruptcy Code. | The 363 Transaction is a value-preserving and value-maximizing transaction that is the product of arm's-length, good-faith negotiations. The consideration the Debtors are receiving in connection with the 363 Transaction is fair value for the assets being sold.<br><br>The sale in no way effects any distribution of the *Debtors'* property to creditors, nor does it in any way impinge on any plan that necessarily will follow. Indeed, there is no distribution of estate assets or proceeds from the 363 Transaction (if approved) to any creditors.<br><br>The Purchaser -- *not* the Debtors -- has determined the New GM's ownership composition and capital structure *outside of the bankruptcy context*. The allocation of ownership interests by Purchaser in New GM is neither a distribution of estate assets nor an allocation of proceeds from the sale of the Debtors' assets. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1985 | Maurice F. Curran | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders.  The Debtors are circumventing and abusing the chapter 11 process and Due Process Clause. | *See* above response (to Docket No. 1969). |
| 1989 | Angela Urquhart and Glen Urquhart, and Glen Urquhart as Trustee | Joins and adopts the Objection of the Unofficial Committee of Family and Dissident Bondholders. <u>See</u> Docket No. 1969. | *See* above response (to Docket No. 1969). |
| 1993 | Angela Urquhart and Glen Urquhart, and Glen Urquahart as Trustee | The Debtors are circumventing and abusing the chapter 11 process and Due Process Clause by involving the United States government so heavily in the 363 sale.  Debtors' treatment of non-institutional bondholders violates the Due Process Clause. | *See* above response (to Docket No. 1969). |
| 2004 | Nettie McClinton | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2016 | Louis F Schad | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2025 | Lloyd. A. Good, Jr. | Joins and adopts the Objection of the Unofficial Committee of Family and Dissident Bondholders. *See* Docket No. 1969.<br><br>The 363 Transaction is a disguised *sub rosa* plan of reorganization. | *See* above response (to Docket No. 1969). |
| 2137 | Ronald and Sandra Davis | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders.<br><br>The 363 Transaction is an illegal *sub rosa* plan of reorganization.<br><br>The 363 Transaction is not proposed in good faith. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2193 | Oliver Addison Parker | Joins and adopts the Objection of the Unofficial Committee of Family and Dissident Bondholders. *See* Docket No. 1969.<br><br>Under the limitations on liens provisions of the senior bondholders' bonds, GM could not grant the Government a lien on virtually everything it owned without concurrently granting to its bondholders (like Parker) an identical lien on the same property securing the bond debt equally and ratably together with the debt of the Government. | *See* above response (to Docket No. 1969).<br><br>There is no such sweeping restriction on liens in the indentures governing the bonds.<br><br>The assets in which the U.S. Treasury has been granted liens prepetition pursuant to the U.S. Treasury Loan Agreement (and the related security documents) include various assets, including certain equity interests domestic and foreign subsidiaries, intellectual property, real estate, and certain inventory. But such agreements *specifically exclude* from the property in which the U.S. Treasury has been granted a lien any property that would give rise to bondholder liens. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2194 | Oliver Addison Parker | The 363 Transaction, as contemplated by the MPA, constitutes a *sub rosa* plan that cannot be approved under section 363(b) of the Bankruptcy Code.  In addition, the 363 Transaction does not provide equal payouts to creditors of equal rank<br><br>The DIP financing provided by the U.S. Treasury exceeds the statutory authority provided by TARP and the Bankruptcy Code. | *See* above response (to Docket No. 1969).<br><br>Parker lacks standing to raise the TARP issue, as he has suffered no injury as a result of the alleged violation. |
| 2357 | Radha R.M. Narumanchi | The 363 Transaction does not provide an equitable result to bondholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2367 | Wilmington Trust Company | Joins in Limited Objection of The Official Committee of Unsecured Creditors to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to The Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing. *See* Docket No. 2362. | *See* response re: Successor Liability Objections. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2368 | Law Debenture Trust Company of New York | Joins in Limited Objection of The Official Committee of Unsecured Creditors to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to The Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing.  *See* Docket No. 2362. | *See* response re: Successor Liability Objections. |
| Un Docketed | O.B. Hutchinson | The 363 Transaction does not provide an equitable result to bondholders, and bondholders were given insufficient time to object thereto. | *See* above response (to Docket No. 1969). |
| 1931 | Dorothy Tam | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2111 | Sherri Barkan | The 363 Transaction does not provide an equitable result to her as a bondholder. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| Un Docketed | Frank Schuster | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| Un Docketed | Joella Schuster | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| Un Docketed | Kurt J. Schneider & Barbara L. Schneider | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| Un Docketed | Richard D. Clark & Alice W. Clark | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2233 | Roland E. King | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2350 | Richard W. Lenderman, Jr. | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2351 | Darlene E. Jewett | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2245 | John E. Green III | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| Un Docketed | Harry Werland | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2354 | Blaise Morton | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

## Exhibit B

**Dealer-Related Objections**

**Dealer-Related Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 712 | The State of Texas, on behalf of the Texas Department of Transportation, Motor Vehicle Division | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Texas law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) modifying the retained dealers' protest rights with respect to franchise modification and termination; (iii) requiring the acceptance of inventory sufficient to meet increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; (v) requiring the waiver of certain warranty and other claims; and (vi) requiring the waiver of certain protest rights. | Because the Debtors -- as confirmed by Judge Gonzalez's recent decision in *Chrysler*, from which the result here follows *a fortiori* -- would have been well within their rights to simply *reject* their dealership agreements, there is nothing improper about the far less draconian alternatives presented by the Wind-Down and Participation Agreements.<br><br>*See also* Omnibus Reply to Dealer-Related Objections. |
| 1272 | Tranum Buick Inc. | The Debtors should be held accountable under Texas state law and abide by the terms of GM's dealer sales and service agreements, including with respect to Article 15 thereof (requiring GM to purchase personal property from the dealer). | *See* above response (to Docket No. 712). |

1

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1880 | Texas Automobile Dealers Association | The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Texas law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) modifying the retained dealers' protest rights with respect to franchise modification and termination; (iii) requiring the acceptance of inventory sufficient to meet increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; and (v) requiring the waiver of certain warranty and other claims. | *See* above response (to Docket No. 712). |
| 1900 | Greater New York Automobile Dealers Association | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Debtors fail to sufficiently compensate terminated dealers for recent expenditures required by GM. | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1947 | State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General | The MPA is a *sub rosa* plan of reorganization. | *See* response re: Bondholder Objections. See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969. |
| | | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections, which are not preempted by sections 363 and 365 of the Bankruptcy Code. | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1966 | The State of Ohio, Department of Public Safety, Bureau of Motor Vehicles | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Ohio law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) modifying the retained dealers' protest rights with respect to franchise modification and termination; (iii) requiring the acceptance of inventory sufficient to meet increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; and (v) requiring the waiver of certain warranty and other claims.<br><br>The Debtors coerced retained dealers to sign the Participation Agreements in violation of the "good faith" obligation of O.R.C. § 4517.59. | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2043, 2425 | The States of Arkansas, Arizona, California, Connecticut, Colorado, Delaware, Georgia, Hawaii, Idaho, Iowa, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, North Carolina, North Dakota, New Hampshire, New Jersey, New Mexico, Nevada, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Virginia, Vermont, Washington, West Virginia and Wisconsin | Section 363(f)(5) of the Bankruptcy Code does not provide for sales "free and clear" of all "claims." <br><br> The Debtors must litigate the issue of whether the Purchaser is their successor. <br><br> Even if section 363(f)(5) of the Bankruptcy Code can be read to provide for sales "free and clear" of all "claims," the proposed Order nevertheless sweeps to broadly (by including defenses and statutory obligations and inchoate rights for future enforcement, such as for post-confirmation injuries). <br><br> The Debtors' request for an order with respect to section 525 of the Bankruptcy Code is unclear and improper. <br><br> Paragraphs 21-24, 28, 33(a), 38 and 44 of the proposed Order are otherwise objectionable. <br><br> The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections, which are not preempted by sections 363 and 365 of the Bankruptcy Code. <br><br> The MPA is ambiguous and it is impossible to determine whether its provisions are objectionable. | *See* response re: Tort, Product Liability, Asbestos, Successor Liability Objections. <br><br> The Debtors are reviewing the proposed Order, including in light of these and other objections, and will make any modifications that they ultimately determine to be necessary. <br><br> *See* above response (to Docket No. 712). <br><br> No response is required to this general, unspecific reservation of rights. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2076 | The Florida Attorney General | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Wind-Down and Participation Agreements signed by the Debtors' terminated and retained dealers, respectively, violate various provisions of Florida law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) requiring the retained dealers' acceptance of inventory sufficient to meet increased sales expectations; (iii) requiring retained dealers to increase floor plan capability to accommodate increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; (v) requiring the waiver of certain warranty and other claims; and (vi) requiring the waiver of certain protest rights.<br><br>The Debtors have failed to preserve consumer lemon law rights. | *See* above response (to Docket No. 712).<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>*See* response re: Tort, Product Liability, Asbestos, Successor Liability Objections. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2165 | Unofficial GM Dealers Committee | The Debtors have not followed their detailed procedures for notifying the holders of executory contracts whether their contracts are to be assumed or rejected with respect to dealer agreements.<br><br>The proposed Order eliminates the rights of non-debtors parties (including dealers) to Assumable Executory Contracts to pursue claims against the Purchaser based upon Assumed Liabilities.<br><br>The proposed Order extends beyond the relief permitted by sections 363 and 365 of the Bankruptcy Code. | The Debtors believe they have followed the procedures set forth in the Motion.<br><br><br>The proposed Order is consistent with other sale orders approved in this District and is consistent with the Bankruptcy Code and specifically sections 363 and 365. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2353 | Colorado Motor Vehicle Dealer Board | The Debtors assumption and assignment of modified dealer agreements is outside the scope of section 365 of the Bankruptcy Code and contrary to state franchise law, which is not preempted by the Bankruptcy Code.<br><br>The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Colorado law, including by: (i) vesting the Court (as opposed to the Colorado Motor Vehicle Dealer Board) with exclusive jurisdiction over disputes thereunder; (ii) requiring retained dealers to meet increased sales expectations; and (iii) requiring retained dealers to increase floor plan capability to accommodate increased sales expectations.<br><br>Paragraphs 8, 20 and 28 of the proposed Order are otherwise objectionable. | *See* above response (to Docket No. 712).<br><br><br>The Debtors are reviewing the proposed Order, including in light of these and other objections, and will make any modifications that they ultimately determine to be necessary. |

8

## Exhibit C

**Successor Liability and Consumer Objections**

**Successor Liability and Consumer Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1749 | Sophia Bennet | Objects to 363 Transaction on basis that she is owed amounts for loss/damage due to a recall/fire to GM vehicle. | See response to Docket No. 1811. |
| 1811 | Burton Taft, Administrator of the Estate of Brian Taft | Sale free and clear would deprive the objector of the ability to pursue and recover damages from GM for wrongful death.<br><br>The 363 Transaction is contrary to Pennsylvania Law providing for successor liability. | Case law supports the sale of a debtor's assets free and clear of claims, including successor liability claims. *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003).<br><br>In *In re Chrysler*, Judge Gonzalez also found that successor liability claims with respect to tort and product liability are "interests in property" and therefore subject to section 363(f). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1926 | The States of Connecticut, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota and Vermont | Sale free and clear will divest consumers of legal rights, without regard for state laws concerning successor liability.<br><br>Future claims should not be treated as claims subject to discharge in bankruptcy as doing so is contrary to public policy. | See response to Docket No. 1811.<br><br>MPA has been amended to provide that the Purchaser will expressly assume all products liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, regardless of when the product was purchased.  The Debtors are not seeking a discharge as part of this transaction. |
| 1956 | The Schaefer Group | Object on basis that they were unable to determine what property is "Excluded Real Property" pursuant to the MSPA. | On June 12, 2009, the Debtors filed Exhibit F to the Master Sale and Purchase Agreement which includes a schedule of certain Excluded Owned Real Property. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1971 | The Ad Hoc Committee of the Asbestos Personal Injury Claimants | 363 Transaction is a *sub rosa* plan. | See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969. Section 524(g) is inapplicable to a sale free and clear under section 363(f). |
|  |  | The Motion seeks to preclude asbestos claimants from asserting claims against New GM; section 524(g) cannot be circumvented. | 363 Transaction is not seeking to discharge asbestos liability claims |
|  |  | Asbestos related claims are *in personam* claims, which cannot be sold free and clear of successor liability. | See response to Docket No. 1811 |
|  |  | Debtors have not satisfied the requirements of section 363(f). |  |
| 1987 | Gabriel Yzarra | 363 Transaction is a *sub rosa* plan. | See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969. See response to Docket No. 1811 |
|  |  | Debtors are shifting healthcare costs to various states. |  |
|  |  | Section 363 does not permit debtors to sell free and clear of claims, only interests. |  |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1997 | The Ad Hoc Committee of Consumer Victims of General Motors | 363 Transaction is a *sub rosa* plan<br><br>GM's refusal to assume responsibility for tort claims is in bad faith.<br><br>Tort claimants have *in personam* claims which cannot be transferred free and clear. | See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969. See response to Docket No. 1811 |
| 2041 (2976)<br><br>2050 (2977)<br><br>(amended) | Callan Cambell, Kevin Junso, Edwin Agosto, Kevin Chadwick, Joseph Berlingieri and the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizen | Debtors cannot transfer property free and clear of *in personam* claims or future product liability and tort claims.<br><br>Enjoining successor liability claims against the Purchaser violates applicable law, notice requirements, and due process.<br><br>The Court lacks subject matter jurisdiction over post-closing disputes between products liability claimants and the successor Purchaser. | See response to Docket Nos. 1811 and 1926. |
| 2065 | The States of Illinois, California, and Kansas | Joinder to objection of Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota and Vermont [Docket No. 1926] | See response to Docket No. 1926. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2148 | Mark Buttita | Joins in the Objection of Ad Hoc Committee of the Asbestos Personal Injury Claimants<br><br>Further objects on basis that the 363 Transaction affects rights of present and future asbestos claimants because it exceeds the scope of section 363 and provides for an illegal injunction against future liability. | See response to Docket No. 1971 |
| 2362 | Official Committee of Unsecured Creditors | Proposed order purports to cut off all state law successor liability for the Purchaser which is poor business and bad policy judgment, illegal under section 363(f), and, with respect to future claims, is a violation of due process.<br><br>Debtors must make adequate showing that enough assets will remain in the estates after the 363 Transaction to pay all administrative expenses and priority claims against the estate. | See response to Docket Nos. 1811 and 1926. |
| Undocketed | John G. Cronin | Wants an adequate pool of funds set aside to indemnify personal injury claimants. | See response to Docket No. 1811. |

## Exhibit D

**Plant Closure Objections**

**Plant Closure Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1041 | City of Ontario, Ohio | The City of Ontario, Ohio does not request any specific relief.  The objection:<br><br>(i) focuses on the high benchmark rankings of the GM Stamping Plant in Ontario, Ohio,<br><br>(ii) asserts that U.S. taxpayers "expect the best facilities will be kept open,"<br><br>(iii) expresses concern that presses and dies will be removed from the stamping plant prior to the completion of the bankruptcy,<br><br>(iv) concludes that the removal of equipment will speed up the plant closing, and<br><br>(v) expresses confidence that GM assets will be judged on their merits and that the "restructure plan" will be judged on what is best and most viable to insure the success of GM. | The City of Ontario does not present any objection to the Motion, or entry of the Sale Order.<br><br>The City of Ontario does not have standing to represent the interests of U.S. taxpayers.<br><br>The use of equipment and other estate assets, including the relocation of equipment, is properly within the business judgment of the Debtors. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1698 | Richland County, Ohio | Seeks a modification to the Sale Order that would require the Debtors to continue operating the General Motors Stamping Plant in Ontario, Ohio through December 2010. Raises "an issue of equity," essentially claiming that a history of tax abatements and other concessions or contributions by local county and municipal authorities justify the request for a delay in the closing of the stamping plant. | Richland County's objection does not constitute a proper objection to the Motion, as it relates to issues not before the Court. To the extent Richland County is seeking to compel the Purchaser to purchase the stamping plant, the Purchaser's business judgment is not at issue and there is no precedent in case law or otherwise permitting the Court to mandate the Purchaser to purchase particular assets from the estate. To the extent Richland County is seeking to compel Old GM to continue operating the stamping plant, the request is not related to the Motion, and entry of the Sale Order will not impair any right Richland County may have to seek such relief. In any event, the business judgment standard protects the Debtors' determination as to whether to continue operating an estate asset. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1889 | County of Wayne, Michigan | The County of Wayne, Michigan asserts<br><br>(i) that the U.S. Treasury is an insider (see objection at ¶ 38),<br><br>(ii) that transactions that benefit insiders must withstand heightened scrutiny, and<br><br>(iii) that the failure to include the six speed transmission manufacturing facility at Ypsilanti, Michigan as a Purchased Asset under the Motion is not a reasonable or prudent exercise of business judgment. | The County of Wayne, Michigan does not present a proper objection to the Motion, as its objection relates to issues not before the Court.  To the extent Wayne County is seeking to compel the Purchaser to purchase the Ypsilanti plant, the Purchaser's business judgment is not at issue and there is no precedent in case law or otherwise permitting the Court to mandate the Purchaser to purchase particular assets from the estate.  To the extent Wayne County is seeking to compel Old GM to continue operating the Ypsilanti plant, the request is not related to the Motion, and entry of the Sale Order will not impair any right objector may have to seek such relief.  In any event, the business judgment standard protects the Debtors' determination as to whether to continue operating an estate asset.<br><br>Moreover, heightened scrutiny of the Debtors' business judgment is not warranted because the U.S. Treasury is not an insider.  Regardless, the proposed transaction would easily withstand any standard applied. |
| 1899 | Washtenaw County, A Michigan Municipal Corporation | Washtenaw County, a Michigan Municipal Corporation, joins in the objection of Wayne County, Michigan. | See responses to Docket No. 1889 above. |
| 1990 | Charter Township of Ypsilanti, Michigan | Charter Township of Ypsilanti, Michigan, joins in the objection of Wayne County, Michigan. | See responses to Docket No. 1889 above. |

## **Exhibit E**

**Retiree/Splinter Union Objections**

**Retiree/Splinter Union Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1020 | Mr. and Mrs. Bruce Linhart | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | The law is clear that the New UAW VEBA, even though the benefits thereunder are not uniformly applicable to *all* GM retirees, permissibly avoids the potential loss of *all* benefits for *all* retirees. *See, e.g., UAW v. Gen. Motors Corp.*, 2008 WL 2968408, at \*24 (E.D. Mich. 2008).  The Motion thus should be approved because the alternative is a near certain elimination of all UAW and other retiree benefits.

Moreover, the objection does not provide a basis for finding that the modifications negotiated in good faith by New GM and the UAW are not valid and binding upon all union member-retirees. Specifically, section 1114(c)(1) of the Bankruptcy Code authorizes the UAW, as the authorized representative of its retirees, to negotiate any modification of benefits conferred under its collective bargaining agreement.

*See also* below response (to Docket No. 1941) and Debtors' (i) Objections to Application and (ii) Rebuttal to Reply of General Motors Retirees Association for the Appointment of a Retirees Committee Pursuant to 11 U.S.C. § 1114(d) [Docket Nos. 1901 and 2457]. |
| 1074 | Stanley D. Smith | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1078 | Leo St. Amour | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1085 | Melvin Hays | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1254 | Chris Messina | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1256 | Robert Fain | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1257 | John A. Dwyer | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were not afforded the opportunity to vote thereon. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1293 | Marilyn Powell | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1519 | John J. Patros | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1546 | Glen Schrader | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1547 | Stanley Janusz | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were not afforded the opportunity to vote thereon. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1550 | Clifton R. Arrington | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1559 | Edward J. Glanti | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1560 | Marilyn A. Wassenaar | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were given insufficient to time to object thereto. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). *See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1562 | Robert A. McKenzie | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1828 | Ellis Hollingsworth | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were not afforded the opportunity to vote thereon. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1890 | Ernestine Jordan | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1894 | Kenneth M. Wood | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were not afforded the opportunity to vote thereon. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1898 | Luis Escalona | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1901 | Donna M. Neal | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1912 | Michael Toth | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |
| 1922 | Ron Tanner | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above response (to Docket No. 1020) and below response (to Docket No. 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1941 | IUE-CWA, United Steelworkers and International Union of Operating Engineers Locals 18S, 101S and 832S | The Debtors have violated section 1114 of the Bankruptcy Code by affording retirees covered by the New UAW VEBA certain benefits and protections that allegedly have been denied to the retirees represented by these objecting unions.<br><br>The 363 Transaction otherwise treats the retirees represented by these objecting unions unfairly and inequitably, particularly vis-à-vis the retirees represented by the UAW. | The transaction at issue is a *sale* of assets, not the distribution of proceeds by or from the assets of the Debtors to *any* creditor or creditor group; no modifications of any benefits plans of the Objecting Unions or their retirees are being proposed or effected; and, as a matter of law (including under the Bankruptcy Code), satisfying section 1114 is simply *not* a pre-condition to an asset disposition under section 363.<br><br>Moreover, the treatment of the UAW's retirees is the result of an agreement entered into between New GM (*not* the Debtors) and the UAW. That agreement reflects a business judgment by New GM, whereby New GM will provide consideration to the New UAW VEBA that does not include *any* Debtor assets. Such business decisions by the Purchaser, which is not a chapter 11 debtor and which is under no obligation to comply with section 1114, do not implicate any rights of the objecting unions or their retirees or contravene any obligation of the Debtors.<br><br>*See also* Omnibus Reply relating to Retiree/Splinter Union Objection and above response (to Docket No. 1020). |
| 1981 | General Motors Retirees Association | The 363 Transaction ignores Bankruptcy Code requirements to specify which retiree benefits will be cut and what protections there will be for what remains. | *See* above responses (to Docket Nos. 1020 and 1941). |

6

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1986 | Richard H. Meeker | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 1992 | James S. Zischke | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were not afforded the opportunity to vote thereon. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2011 | Thomas H. Perros | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2101 | Ted Tatro | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were given insufficient to time to object and no alternatives thereto. | *See* above responses (to Docket Nos. 1020 and 1941). *See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| 2117 | David and Karen Hobson | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2119 | John R. Brantingham | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2133 | James Miller | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2196 | Marcia Hopewell | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2197 | Ronald F. Albright | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2198 | Betty Gordon | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2199 | Wesley Frazier | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2200 | Len Reichel | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2202 | Edmund R. Hillegas, Jr. | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2203 | Geo Edwards | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2204 | Patrick L. Wilson | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2206 | Bobbie Jean S. Arrington | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2209 | Dennise A. Beechraft | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2218 | Thomas H. Perros | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were not afforded the opportunity to vote thereon. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2230 | Gerald S. Sarka | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2234 | Junius L. Johnson | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2235 | Delmar L. Taylor | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2236 | Theopolis Williams | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2243 | Raymond W. Sargent | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2246 | Arnold and Shirley Starks | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were given insufficient time to object thereto. | *See* above responses (to Docket Nos. 1020 and 1941).<br><br>*See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| 2256 | George Chavez | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2264 | Albert Burdick | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2290 | Arthur Woodke | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2348 | Larry J. Hays | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2349 | Robert S. Gordon | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2351 | Darlene E. Jewett | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2373 | Kathryn Griffin | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2377 | Susan Muffley | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2381 | David W. Muffley | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2383 | Russ Detterich | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2386 | Carolyn R. Wells | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2389 | Charles F. Presser | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2393 | Dean Woodard | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2395 | Rodney Klein | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were given insufficient time to object thereto. | *See* above responses (to Docket Nos. 1020 and 1941). *See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2403 | Patrick J. Straney | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2417 | Eileen J. McIntyre | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2420 | Joan K. Walls | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| 2495 | Robert Henderson | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| Un-docketed | Michael O. Gifford | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| Un-docketed | Clarence Davis | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| Un-docketed | Jennie Novak | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| Un-docketed | Albert G. Sipka | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| Un-docketed | Josephine Peterson | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably. | *See* above responses (to Docket Nos. 1020 and 1941). |
| Un-docketed | Merlin Lanaville | The 363 Transaction and UAW retiree settlement do not treat all retirees equitably and retirees were given insufficient time to object thereto. | *See* above responses (to Docket Nos. 1020 and 1941). *See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| Un Docketed | David Solis | Objects to the UAW Retiree Settlement Agreement. | *See* responses relating to Retiree Objections. |

## <u>Exhibit F</u>

**Workers' Compensation Objections**

**Workers' Compensation Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1851 | The State of Michigan Workers' Compensation Agency Funds Administration | No intention to delay sale. <br><br> The MPA does not create a sufficient commitment on behalf of the Purchaser to assume Debtors' workers' compensation obligations in Michigan because, pursuant to § 6.5 of the MPA, the Debtors could decide to move their workers' compensation obligations (including those arising from the Delphi operations) to the "Retained Liabilities" category. <br><br> Debtors' have failed to adequately define or even discuss the effect of its pending transaction with Delphi. | Debtors believe that an agreement has been reached between the Debtors and objector that would resolve the Objection. |
| 1929 | The Ohio Bureau of Workers' Compensation | Reserves its rights to oppose any sale requiring New GM to qualify for self-insured status for Ohio workers' compensation because Ohio's workers' compensation issues are governed and controlled by Ohio laws. <br><br> Also reserves rights to object to any sale that might not adequately provide for full compliance with Ohio's workers' compensation laws. | See response to Docket No. 1851. |

## **Exhibit G**

**Tax Objections**

**Tax Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1052 | Texas Comptroller | <u>Taxes at Issue</u>:  sales taxes, franchise taxes, and sales and use taxes.<br><br><u>Tax Periods</u>:  not specified.<br><br>(1) The MPA Section 1.2 currently defines Permitted Encumbrances to include, in part, liens for Taxes, (i) the validity or amount of which is being contested in good faith and (ii) for which appropriate reserves have been established.  Since the Texas Comptroller is unaware what reserves have been established or whether such reserves are "adequate," the Texas Comptroller requests to confirm whether its tax liens will be treated as Permitted Encumbrances under the MPA.<br><br>(2) To the extent not treated as Permitted Encumbrances, other adequate protection shall be provided under sections 363(c) and (e) of the Bankruptcy Code.<br><br>(3) The MPA Section 2.3(a)(v) provides that the Assumed Liabilities include all prepetition Liabilities of Sellers to the extent approved by the Bankruptcy Court for payment by Sellers pursuant to a Final Order.  The Texas Comptroller requests to clarify (i) whether the secured tax claims at issue are assumed by the | (1) The definition of Permitted Encumbrances will be amended to include only statutory liens for current taxes not yet due, payable or delinquent (or which may be paid without interest or penalties).  Therefore, to the extent that the taxes at issue are not yet due, payable or delinquent, the liens for such taxes will remain intact as Permitted Encumbrances.<br><br>(2) The tax liens will be retained as attached either to the Excluded Assets or to the sales proceeds of the collateral.<br><br>(3) If further clarification is necessary, the Sale Order will be supplemented to clarify that, pursuant to Section 2.3(a)(v) of the MPA, the Purchaser will assume (i) all prepetition real and personal property taxes (whether related to Purchased Assets or Excluded Assets), (ii) all prepetition franchise and income taxes and (iii) all |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | Purchaser under the MPA §2.3(a)(v) and (ii) if not, whether other identified source of payment is provided to ensure the Debtors' ability to pay those taxes in "cash." | prepetition excise, gross receipt, sales and use taxes. |
| | | (4) Paragraphs 8 and 28 of the proposed Sale Order prohibits any person taking any action against the Purchaser asserting any "setoff" for any obligation of the Debtors as against any obligation due the Purchaser.  Since the Purchaser will acquire all tax refund claims of the Debtors under the MPA, the Sale Order may be interpreted as preventing a tax authority from offsetting any prepetition tax liabilities against any tax refund to be assigned to the Purchaser. The Texas Comptroller requests that the relief requests under the Motion be denied to the extent that such requests would abrogate tax creditors' setoff rights. | (4) The Sale Order will be revised to provide that a relevant taxing authority's ability to exercise its right to setoff shall be preserved to the extent allowed under section 553 of the Bankruptcy Code. |
| | | (5) Paragraph 39 of the Sale Order contains a provision that "no law of any state or other jurisdiction … shall apply in any way to the transactions contemplated by the 363 Transaction, the MPA, the Motion and this Order."  This Paragraph may render relevant state tax laws inapplicable with respect to the 363 Transaction.  The Texas Comptroller requests that this Paragraph be revised so as not to repeal or abrogate state tax laws with respect to the 363 Transaction. | (5) The Sale Order will be revised to add a proviso to Paragraph 39 that: provided however, the Debtors shall comply with their tax payment obligations under 28 U.S.C. § 960 except to the extent that the Purchaser, pursuant to the MPA, assumes the applicable liabilities. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1833 | Department of the Treasury of the State of Michigan | <u>Taxes at Issue</u>:  Use taxes, Michigan Single Business Taxes and Michigan Business Taxes.<br><br><u>Tax Periods</u>:  2002 to 2009.<br><br>(1) The Michigan Treasury requests written confirmation from the Debtors regarding (i) who will be paying Sellers' taxes (including priority taxes) due now or determined to be due in the future to the Michigan Treasury, (ii) what arrangements are being made to ensure that funds will be available to pay the taxes, and (iii) such payment will be made in cash.<br><br>(2) The Michigan Treasury requests that the party or parties responsible for the above-mentioned taxes shall escrow sufficient money to cover the taxes, interest and penalties as may be determined to be due and unpaid following the completion of the audits (pending or anticipated) until the Debtors produce a receipt that the taxes due are paid or a certificate that taxes are not due.<br><br>(3) The Michigan Treasury requests that the tax creditor's setoff rights be preserved.  *See* "Texas Comptroller—Summary of Objections— (4)" above.<br><br>(4) The Michigan Treasury requests that state tax laws not be repealed or abrogated with | (1) *See* "Texas Comptroller—Response— (3)" above.  Pursuant to Section 2.3(a)(v) of the MPA, the Purchaser will also assume all prepetition Michigan Single Business Taxes and Michigan Business Taxes.<br><br><br>(2) No escrow is necessary since the Purchaser will assume the Debtors' tax liabilities with respect to those taxes at issue.<br><br><br>(3) *See* "Texas Comptroller—Response— (4)" above.<br><br><br>(4) *See* "Texas Comptroller—Response— (5)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | |
| 1837 | County of Bastrop Texas, et al. | <u>Taxes at Issue</u>:  property taxes.<br><br><u>Tax Periods</u>:  2009.<br><br>(1) The Texas Ad Valorem Tax Authorities request to confirm whether their tax liens will be treated as Permitted Encumbrances under the MPA without regard to the adequacy of the established tax reserves. *See* "Texas Comptroller—Summary of Objections— (1)" above. | (1) To the extent that the taxes at issue are not yet due, payable or delinquent, the liens for such taxes will remain intact as Permitted Encumbrances. *See* "Texas Comptroller—Response— (1)" above. |
| | | (2) The Texas Ad Valorem Tax Authorities request to clarify whether the definition of Assumed Liabilities under the Purchaser under the MPA Section 2.3(a)(v) (i) includes those tax liabilities authorized by the Bankruptcy Court to be paid in the Order Authorizing the Debtors to Pay Prepetition Taxes and Assessments, and (ii) is intended to provide for the assumption by the Purchaser of unpaid pre-petition property taxes on assets being conveyed by the sale. | (2) *See* "Texas Comptroller—Response— (3)" above. |
| | | (3)  The Sale Order shall be revised to the extent it refers to the sale as being "free and clear of all liens, claims and encumbrances" without specifying that property being conveyed will be subject to Permitted Encumbrances. | (3) No clarification is necessary. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1841 | California Franchise Tax Board | <u>Taxes at Issue</u>:  California franchise taxes.<br><br><u>Tax Periods</u>:  not specified.<br><br>(1) The California Franchise Tax Board (the "FTB") requests to clarify whether the California franchise taxes are Assumed Liabilities.<br><br>(2) If prepetition claims of the FTB are not intended to be assumed by the Purchaser, the approval of the Agreement shall be conditioned on the Debtors demonstrating that any priority claims of the FTB will be paid in full.<br><br>(3) The FTB requests that the setoff and recoupment rights of taxing authorities be preserved.  *See* "Texas Comptroller—Summary of Objections— (4)" above.<br><br>(4) The FTB requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction.  *See* "Texas Comptroller—Summary of Objections— (5)" above. | (1) *See* "Texas Comptroller—Response— (3)" above.<br><br>(2) Not applicable.<br><br>(3) *See* "Texas Comptroller—Response— (4)" above.<br><br>(4) *See* "Texas Comptroller—Response— (5)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1888 | Arlington ISD, et al. | <u>Taxes at Issue</u>:  ad valorem property taxes.<br><br><u>Tax Period</u>:  2009.<br><br>(1) Arlington ISD, et al., request that either their tax liens be paid at the time of sale or, in the alternative, a separate escrow be created at closing from the proceeds of any sale to cover the estimated 2009 taxes. | (1) *See* "Texas Comptroller—Response— (3)" above. |
| 1914 | Commonwealth of Pennsylvania, Department of Revenue | <u>Taxes at Issue</u>:  corporate (franchise) taxes, sales taxes, and employer withholding taxes.<br><br><u>Tax Period</u>:  not specified.<br><br>(1) The Commonwealth requests to (i) confirm whether its tax liens will be treated as Permitted Encumbrances under the MPA, (ii) confirm the adequacy of the reserves for the Permitted Encumbrances as well as disclose the amounts in said reserves, and (iii) provide adequate protection if its liens not to be retained to its collateral.<br><br>(2) The Commonwealth requests to clarify whether (i) the Commonwealth's tax claims are Assumed Liabilities under the MPA §2.3(a)(v), (ii) whether the Debtors intend to pay the Commonwealth their prepetition taxes or whether Commonwealth have to look to the Purchaser for payment of said taxes, and (iii) either in (i) or (ii), whether certain arrangement | (1) To the extent that the taxes at issue are not yet due, payable or delinquent, the liens for such taxes will remain intact as Permitted Encumbrances. *See* "Texas Comptroller—Response— (1)" above.<br><br><br><br>(2) *See* "Texas Comptroller—Response— (3)" above.  If further clarification is necessary, the Order will be supplemented to clarify that, pursuant to Section 2.3(a)(v) of the MPA, all prepetition employer withholding taxes will be assumed by the Purchaser. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | is being made to ensure that funds will be available to pay the Commonwealth's claims in full.<br><br>(3) The Commonwealth requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above.<br><br>(4) The Commonwealth requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | <br><br>(3) *See* "Texas Comptroller—Response— (4)" above.<br><br>(4) *See* "Texas Comptroller—Response— (5)" above. |
| 1937 | Ohio Department of Taxation | <u>Taxes at Issue</u>:  not specified<br><br><u>Tax Period</u>:  not specified<br><br>(1) The Ohio Department of Taxation (the "Taxation") requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above.<br><br>(2) The Taxation requests that the applicability of state tax laws be preserved with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | <br><br>(1) *See* "Texas Comptroller—Response— (4)" above.<br><br>(2) *See* "Texas Comptroller—Response— (5)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1939 | County of Santa Clara | <u>Taxes at Issue</u>:  personal property taxes<br><br><u>Tax Period</u>:  not specified.<br><br>(1) The County of Santa Clara (the "**County**") requests that the Court either deny the proposed sale of assets free and clear of liens, claim or encumbrances or, in the alternative, order that sufficient proceeds to be set aside to satisfy the County's tax claims. | (1) *See* "Texas Comptroller—Response— (3)" above. |
| 1944 | Angelina County , et al. | <u>Taxes at Issue</u>:  ad valorem property taxes<br><br><u>Tax Period</u>:  2009.<br><br>(1) The Tax Authorities request to clarify whether the Debtors or the Purchaser will pay current taxes that are not yet due or payable to which the statutory liens are attached.<br><br>(2) The Tax Authorities (i) request that a segregated cash collateral be established for their tax claims from the sale proceeds, (ii) object to the use of the cash collateral unless their claims are paid in full, and (iii) request that the approval of the Order be denied if a segregated cash collateral is not established and other adequate protection cannot be provided.<br><br>(3) The Tax Authorities request to clarify whether the Assumed Liabilities under the MPA (i) includes those tax liabilities to be paid | (1) *See* "Texas Comptroller—Response— (3)" above.<br><br>(2) Because statutory liens for property taxes that are not yet due or payable are Permitted Encumbrances, there is no basis for the relief requested.<br><br>(3) *See* "Texas Comptroller—Response— (3)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | pursuant to the Order Authorizing the Debtors to Pay Prepetition Taxes and Assessments and (ii) is intended to provide for the assumption by the Purchaser of unpaid pre-petition property taxes on assets being conveyed by the sale. | |
| 2000 | Wayne County Treasurer, Oakland County Treasurer and the City of Detroit | <u>Taxes at Issue</u>:  property taxes and income and withholding taxes.<br><br><u>Also at Issue</u>:  sewer and water bills.<br><br><u>Tax Period</u>:  1999, 2003, 2007 and 2008 (in the case of income and withholding taxes, from 1983 to May 2007).<br><br>(1) The Treasurers' request to clarify whether the Treasurers' tax claims are Assumed Liabilities under the MPA.<br><br>(2) The Treasurers' request to clarify that the Treasurers' statutory lien for property taxes that are payable or to be payable are Permitted Encumbrances under the MPA.<br><br>(3) If taxes owed to the Treasurers are neither Assumed Liabilities or Permitted Encumbrances, the Treasurers' request that an adequate protection be provided with respect to their secured claims.<br><br>(4) The Treasurers' request to clarify whether | (1) *See* "Texas Comptroller—Response— (3)" and  "Commonwealth of Pennsylvania, Department of Revenue —Response— (2)" above.<br><br>(2) To the extent that the property taxes at issue are not yet due, payable or delinquent, they will be considered Permitted Encumbrances.  *See* "Texas Comptroller—Response— (1)" above.<br><br>(3) Not applicable.<br><br>(4) Pursuant to Section 2.3(a)(v) of the MPA, the |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | the outstanding sewer and water bills due and owing on the Purchased Assets are Assumed Liabilities. | Purchaser assumes sewer and water bills only to extent that such liabilities arise in the ordinary course of business during the Bankruptcy Case through and including the Closing Date. |
| | | (5) The Treasurers' request to clarify whether the outstanding sewer and water bills due and owing on the Purchased Assets are Permitted Encumbrances. | (5) To the extent that the sewer and water bills at issue are not yet due, payable or delinquent, the liens for such bills will be considered Permitted Encumbrances. *See* "Texas Comptroller—Response— (1)" above. |
| | | (6) If the sewer and water bills are neither Assumed Liabilities or Permitted Encumbrances, the Treasurers' request that adequate protection be provided with respect to such claims. | (6) The tax liens will be retained as attached either to the Excluded Assets or to the sales proceeds of the collateral with respect to their secured claims. |
| | | (7) The Treasurers' request that state tax laws not be repealed or abrogated with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | (7) *See* "Texas Comptroller—Response— (5)" above. |
| 2044 | NYS Tax Department | <u>Taxes at Issue</u>: sales, withholding and corporate (franchise) taxes.<br><br><u>Tax Period</u>: not specified.<br><br>(1) The NYS Tax Department requests to clarify whether its prepetition tax claims are Assumed Liabilities under the MPA Section 2.3(a)(v). | (1) *See* "Texas Comptroller—Response— (3)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | (2) If that is not the intent of the parties to the MPA, another source of payment should be identified to ensure payment of claims in cash. | (2) Not applicable. |
| | | (3) The NYS Tax Department requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above. | (3) *See* "Texas Comptroller—Response— (4)" above. |
| | | (4) The NYS Tax Department requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | (4) *See* "Texas Comptroller—Response— (5)" above. |
| | Mississippi State Tax Commission | <u>Taxes at Issue</u>:  income, franchise and sales taxes<br><br><u>Tax Period</u>:  not specified<br><br>(1) The Mississippi State Tax Commission (the "MSTC") requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above. | (1) *See* "Texas Comptroller—Response— (4)" above. |
| | | (2) The MSTC requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | (2) *See* "Texas Comptroller—Response— (5)" above. |

## Exhibit H

**Lien Creditor Objections**

**Lien Creditor Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1470 | Demaria Building Company | Pursuant to the Michigan Construction Lien Act, construction corporation obtained a secured interest in the real property upon which it performed construction improvements. Therefore, in order to transfer free and clear title to the real property, the Debtors must either fully compensate the construction corporation prior to the asset sale or agree that the liens will pass with the real property against the Purchaser. | The Debtors will be adding language to the proposed Sale Order that they believe address the concerns set forth in this objection. See Omnibus Reply to Creditor Lien Objections. |
| 1695 | Usher Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Order that they believe address the concerns set forth in this objection. See Omnibus Reply to Creditor Lien Objections. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1697 | Proper Tooling, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1700 | Pinnacle Tool, Incorporated | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1704 | ACEMCO, Incorporated | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1707 | Grand Die Engravers, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1710 | Plastic Mold Technology, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1718 | Paramount Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1762 | Wolverine Tool & Engineering Co. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1767 | Eclipse Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1780 | Dietool Engineering Company, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection. See Reply. |
| 1783 | Standard Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection. See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1787 | STM Mfg., Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1790 | Advance Tooling Systems, Inc., Dynamic Tooling Systems and Engineered Tooling Systems, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1797 | Competition Engineering, Inc., Datum Industries, LLC, Monroe, LLC, J.R. Automation Technologies, LLC and Dane Systems, LLC | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1813 | Lansing Tool & Engineering, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1816 | Commercial Tool & Die Company | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 1876 | Cinetic Automation Corp. | Pursuant to the Michigan Ownership Rights in Dies, Molds and Forms Act, tooling supplier obtained a statutory lien on its delivered tooling supplies to secure full payment of all sums due by the Debtors.  With regard to this lien, the Debtors have not satisfied any of the requirement set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens.  Therefore, the Debtors must either fully compensate the tooling supplier prior to the asset sale or agree that the lien will pass with the tooling supplies against the Purchaser. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1983 | Active Burgess Mould & Design, Ltd and Automotive Gauge & Fixture, Ltd. | Pursuant to the Mold Builders Lien Acts, mold manufacturers obtained statutory liens on certain molds to secure full payment of all sums due for their fabrication, repair, and modification.  With regard to these liens, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens.  Furthermore, the mold manufacturers' interests in the molds are not adequately protected under 11 U.S.C. § 363(e).  Therefore, the Court should deny the Motion to the extent that it affects the mold manufacturers' secured status. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |
| 2021 | L.K. Machinery, Inc. | Die casting machine manufacturer is in the process of filing and perfecting mechanics liens on certain equipment sold and delivered to the Debtors. The Court should enter an order providing that the manufacturer's liens transfer to the proceeds of the asset sale. | The Debtors will be adding language to the proposed Sale Approval Order that they believe address the concerns set forth in this objection.  See Reply. |

<u>**Exhibit I**</u>

**Stockholder Objections**

**Stockholder Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1073 | William H. Chambers | Shareholders are losing value and will receive no vested interest.\n\nSeeks same treatment as new stakeholders. | Objection cites no better alternative to Sale.  No legal basis exists to elevate priority of equity holders. |
| 1067 | Peter Backus | Seeks consideration for loss of shares and contends that GM is in breach of contract for failure to offer such consideration. | See response to Docket No. 1073. |
| 1269 | Robert Daniel Howell and Sharlene Howell | Seeks consideration for stock loss. | See response to Docket No. 1073. |
| 1284 | Jonathan Lee Riches | Objection seeks more time to analyze 363 Transaction; claims current timeline is violation of due process. | Additional time not available to preserve going concern value.  No alternative is available even with more time. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1692 | Charles Benninghoff | Argues that government has unlawfully interfered in private enterprise by requiring GM to receive cash infusions rather than filing for bankruptcy.<br><br>Alleges that UAW's equity stake in New GM is an illegal kickback for political contributions and lawyers representing GM have conflicts of interest.<br><br>Argues that government's tactics are unlawful uses of executive and legislative power. | No factual or legal basis for objection. No response necessary. |
| 1760 | Carole R. Maddux | Claims equity is being unfairly transferred from current shareholders to UAW without adequate compensation.<br><br>Argues that priority in preferred and common stock should go to current stockholders. | See response to Docket No. 1073. |
| 1904 | Lewis S. Weingarten | Objects to distribution of common stock. Requests same treatment as bondholders. Alternatively wants preferred stock. | See response to Docket No. 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1910 | John W. Williams | Claims that UAW is receiving kickbacks as a result of providing financial support to the current government. | See response to Docket No. 1692. |
| 1936 | Charlotte Kirk | President Obama has his own agenda with respect to the GM bankruptcy. | See response to Docket No. 1692. |
| 1988 | Robert Mathi | Wants stockholders to receive "portion of New GM." | See response to Docket No. 1073. |
| 1804 | Gerald Haynor | Claims to have obtained a pension-related judgment against GM in the Eastern District of Michigan in March 2009 that will not be honored. | See response to Docket No. 1073. |
| 2146 | Jack M. Wilhelm | Objects to notice period.<br><br>Claims that the government is engaging in self-dealing with respect to the 363 Transaction.<br><br>No stakeholder should receive "special place" in the claims process. | See responses to Docket Nos. 1692 and 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2131 | Robert W. Hartnagel | Seeks to incorporate objections filed in a Michigan class action.<br><br>Says shareholders have lost everything while high level executives have safeguarded their financial well-being. | See responses to Docket Nos. 1692 and 1073. |
| 2260 | Warren R. Bolton | Objects to issuance of preferred stock when GM was insolvent.<br><br>Preferred stock holders should be exempt from the sale. | See response to Docket No. 1073. |
| 2284 | Peter G. Polmen | Objects to loss of shares and wants consideration from proceeds of the sale. | See response to Docket No. 1073. |
| 2126 | John Lauve | Claims that 363 Transaction it is a scheme for cutting recovery to stakeholders.<br><br>Stockholders were not given an opportunity to vote on new directors or to purchase additional stock.<br><br>Stockholders were consulted with respect to the sale of assets as required by Delaware Law, section 8-271. | See responses to Docket Nos. 1284, 1692, and 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| Un-Docketed | Ransom Ford, Jr. | Objection states that attorneys are only parties to gain.  Stockholder interests are not represented. | See response to Docket No. 1073. |
| 2478 | Tristam T. Buckley | Objects to notice period.<br><br>Common stockholders' are being unfairly eliminated.<br><br>GM should engage in a public bidding process.<br><br>The disposition of GM's assets should be reviewed by the Court and other agencies (such as the FBI and CIA) for the purpose of protecting national security.<br><br>The current board members of GM should not be maintained. | See responses to Docket Nos. 1284 and 1073. |

## Exhibit J

**Cure Objections**

Exhibit:  Logged Supplier Objections

## Supplier Objections    (Ordered by Counterparty Name ascending)

| Counterparty Name | Docket ID | Date | Contact |
|---|---|---|---|
| AT&T | **906** | 6/12/2009 | Name: **David A. Rosenzweig**<br>Law Firm: **Fulbright & Jaworski, LLP**<br>Title:<br>eMail:<br>666 Fifth Avenue, New York NY 10128 (USA)<br>**212-318-3000** |
| A Raymond, Inc. | **1441** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: fishere@butzel.com<br>380 Madison Avenue, 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| A.W. Farrell & Sons, Inc. | **696** | 6/12/2009 | Name: **Angela Z. Miller**<br>Law Firm: **Phillips Lytle LLP**<br>Title:<br>eMail:<br>437 Madison Ave., 34th Floor, New York NY 10022 (USA)<br>**212-759-4888** |
| ABC Group, Inc. | **1244** | 6/15/2009 | Name: **Ann Marie Uetz**<br>Law Firm: **Foley& Lardner, LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Accuride Corp | **1434** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail:<br>380 Madison Avenue, New York NY 10017<br>**212.818.1110** |
| Acument Global Technologies | **1359** | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| ADAC - Strattec | **1344** | 6/15/2009 | Name: **Jennifer A. Christian**<br>Law Firm: **Kelley Drye & Warren LLP**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212.808.7800** |
| ADAC Plastics, Inc. | **1102** | 6/15/2009 | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail: mkshaver@varnumlaw.com<br>Bridgewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| Advancement LLC, d/b/a Contract Professionals of Ohio LLC | **1769** | 6/16/2009 | Name: **Dave Beveridge**<br>Law Firm:<br>Title: Chief Financial Officer<br>eMail:<br>32200 Solon Road, Solon OH 44139 (USA)<br>**440-248-8550** |
| Advics North America, Inc. | **1129** | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| Affiliated Commputer Systems of Spain SL, et. al | **1270** | 6/15/2009 | Name: **Larry A. Levick**<br>Law Firm: **Singer Levick, P.C.**<br>Title:<br>eMail:<br>16200 Addison Road, Suite 140, Addison TX 75001 (USA)<br>**972.380.5533** |
| Affinia Group, Inc. and certain of its affiliates | **1421** | 6/15/2009 | Name: **W. David Arnold**<br>Law Firm: **Robison, Curphey & O'Connell**<br>Title:<br>eMail: darnold@rcolaw.com<br>Four Seagate, Nineth Floor, Toledo OH 43604 (USA)<br>**419-249-7900** |

| | | | |
|---|---|---|---|
| Affinion Loyalty Group, Inc. dba Apollo Management LP | **837** | 6/15/2009 | Name: **Shawn R. Fox**<br>Law Firm: **McGuirewoods LLP**<br>eMail:<br>1345 Avenue of the Americas, New York NY 10105<br>**212.548.2100** |
| Air International (U.S.), Inc. and Air International Thermal (Austrialia) Pty Ltd. | **1415** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Airgas, Inc. and its subsidiaries and related entities | **1809** | 6/18/2009 | Name: **Jonathan Hook**<br>Law Firm: **Haynes and Boone, LLP**<br>eMail:<br>1221 Avenue of the Americas 26th Floor, New York NY 10020 (USA)<br>**212-659-7300** |
| Airtex Products, L.P. | **1365** | 6/15/2009 | Name: **Mitchell Seider**<br>Law Firm: **Latham & Watkins LLP**<br>eMail: mitchell.seider@lw.com<br>885 Third Ave., New York NY 10022-4802 (USA)<br>**212-906-1200** |
| Ai-Shreveport LLC | **1626** | 6/16/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>eMail:<br>One Detroit Center; 500 Woodward Ave.Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Aisin AW Co., Ltd. | **1207** | 6/15/2009 | Name: **Yoshihiro Saito**<br>Law Firm: **Manelli Denison & Selter PLLC**<br>Title: Counsel to Aisin AWCo., Ltd.<br>eMail: ysaito@mdslaw.com<br>2000 M Street, NW 7th Floor, Washington DC 20036-3307 (USA)<br>**202-261-1000** |
| Aisin AW Co., Ltd. | **1109** | 6/12/2009 | Name: **Yoshihiro Saito**<br>Law Firm:<br>Title: Cousel to AW Engineering USA, Inc.<br>eMail: ysaito@mdslaw.com<br>not provided |
| Aisin World Corp. of America | **1413** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Aisin World Corporation of America | **1413** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue , New York NY 10017 (USA)<br>**212-818-1110** |
| Albar Industires, Inc. | **1040** | 6/12/2009 | Name: **Barry E. Lichtenberg**<br>Law Firm: **Schwartz, Lichtenberg, LLP**<br>Title:<br>eMail: barryster@att.net<br>420 Lexington Ave. Suite 2040, New York NY 10170 (USA)<br>**212-389-7818** |
| Alcoa, Inc. | **714** | 6/12/2009 | Name: **Shawn R. Fox**<br>Law Firm: **McQuire Woods, LLP**<br>eMail:<br>1345 Avenue of the Americas, 7th Floor, New York NY 10105-0106 (USA)<br>**212.548.2165** |
| Allison Transmission, Inc., f/k/a Clutch Operating Company, Inc. | **984** | 6/15/2009 | Name: **Robert J. Rosenberg**<br>Law Firm: **Latham & Watkins LLP**<br>Title:<br>eMail:<br>885 Third Avenue, New York NY 10022 (USA)<br>**212-906-1200** |
| ALPS Automotive, Inc. | **1448** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue, 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **AMPORTS, Inc.** | **1278** | 6/15/2009 | Name: **Sean A. O'Neal**<br>Law Firm: **Cleary Gottlieb Steen & Hamilton LLP**<br>Title:<br>eMail:<br>One Liberty Plaza, New York NY 10006<br>**212.225.2000** |
| **Analysts International Corporation** | **741** | 6/12/2009 | Name: **Gerard DiConza**<br>Law Firm: **Diconza Law, P.C.**<br>eMail:<br>630 Third Avenue, 7th Floor, New York NY 10017 (USA)<br>**212.682.4940** |
| **Android Industries LLC** | **1449** | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Avenue Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| **Android Industries-Delta Township, LLC** | **1446** | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| **Android Industries-Shreveport LLC** | **1452** | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| **AP Moller Maersk** | **829** | 6/12/2009 | Name: **Wendy S. Walker**<br>Law Firm: **Morgan, Lewis & Bockus, LLP**<br>eMail: wwalker@morganlewis.com<br>101 Park Avenue, New York NY 10178 (USA)<br>**2121.309.6000** |
| **APL Co. Pte. Ltd. and American President Lines, Ltd.** | **1339** | 6/15/2009 | Name: **Alyssa d. Englund**<br>Law Firm: **Orrick, Herringotn & Sutcliffe LLP**<br>eMail:<br>666 Fifth Ave., New York NY 10103-0002 (USA)<br>**212-509-5000** |
| **Applied Handling, Inc.** | **1374** | 6/15/2009 | Name: **Marie T. Racine**<br>Law Firm: **Racine & Associates**<br>Title:<br>eMail: mracine@racinelaw.us<br>211 W. Fort St. Ste. 500, Detroit MI 48226 (USA)<br>**313-961-8930** |
| **Applied Manufacturing Technologies** | **700** | 6/12/2009 | Name: **Frederick A. Berg**<br>Law Firm: **Kotz, Sangster, Wysocki and Berg, PC**<br>Title:<br>eMail: fberg@kotzsangster.com<br>400 Renaissance Center, Suite 3400, Detroit MI 48243 (USA)<br>**313-259-8300** |
| **Aquent LLC** | **1150** | 6/12/2009 | Name: **John Pustell**<br>Law Firm:<br>Title: VP and Controller North America<br>eMail: jpustell@aquent.com<br>711 Boylston Street, Boston MA 02116 (USA)<br>**617-535-5102** |
| **Aramark Holdings Corporation** | **DDN0003** | 6/12/2009 | Name: **Michael A. Bloom**<br>Law Firm: **Morgan, Lewis & Bockius LLP**<br>Title:<br>eMail:<br>1701 Market Street, Philadelphia PA 19103-2921 (USA)<br>**215-963-5000** |
| **Aramark Holdings Corporation** | **813** | 6/12/2009 | Name: **Michael A. Bloom**<br>Law Firm: **Morgan, Lewis & Bockius LLP**<br>Title:<br>eMail:<br>Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia PA 19103-2921 (USA)<br>**215.963.5000** |
| **ArvinMeritor, Inc.** | **2001** | 6/18/2009 | Name: **Robert Sidsorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **ArvinMeritor, Inc., its subsidiaries and affiliates, and all other legal entities associated with ul** | **1440** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| **Aspen Marketing Services, Inc.** | **804** | 6/12/2009 | Name: **Carey D. Schreiber**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: cschreiber@winston.com<br>WINSTON & STRAWN LLP, 200 Park Avenue, New York NY 10166 (USA)<br>**212-294-6700** |
| **Assurant Inc. dba SSDC Services Corp.** | **891** | 6/15/2009 | Name: **Michael E. Norton**<br>Law Firm: **Norton & Associates, LLC**<br>Title:<br>eMail:<br>317 Madison Avenue, Suite 415, New York NY 10017<br>**212.297.0100** |
| **ATC Drivetrain, Inc.** | **1134** | 6/15/2009 | Name: **Brian L. Shaw**<br>Law Firm: **Shaw Gussis Fishman Glantz Wolfson & Towbin LLC**<br>Title:<br>eMail:<br>321 N. Clark Street, Suite 800, Chicago IL 60654 (USA)<br>**312-541-0151** |
| **ATC Logistics & Electronics, Inc.** | **1163** | 6/15/2009 | Name: **Brian L Shaw**<br>Law Firm: **Shaw Gussis Fishman Glantz Wolfson & Towbin LLC**<br>Title:<br>eMail:<br>321 N. Clark Street, Suite 800, Chicago IL 60654 (USA)<br>**312-541-0151** |
| **ATS Automation Tooling Systems, Inc.** | **777** | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail: rgordon@clarkhill.com<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313-965-8572** |
| **ATS Ohio, Inc.** | **709** | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail: rgordon@clarkhill.com<br>151 S. Old Woodward Ave. Suite 200, Birmingham MI 48009 (USA)<br>**313-965-8572** |
| **Auma, S.A. de C.V.** | **805** | 6/12/2009 | Name: **Michael G. Cruse**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail: mcruse@wnj.com<br>WARNER NORCROSS & JUDD LLP, 2000 Town Center, Suite 2700, Southfield MI 48075 (USA)<br>**248-784-5131** |
| **Auto Craft Tool & Die Co., Inc.** | **1214** | 6/15/2009 | Name: **Michael J. DuVernay**<br>Law Firm:<br>Title: President<br>eMail: info@auto-craft.com<br>1800 Fruit Street, Algonac MI 48001 (USA)<br>**810-794-4929** |
| **Auto-Craft Tool & Die Co., Inc.** | **1214** | 6/15/2009 | Name: **Michael J. DuVernay**<br>Law Firm:<br>Title: President<br>eMail: info@auto-craft.com<br>1800 Fruit Street, Algonac MI 48001 (USA)<br>**810-794-4929** |
| **Autodata Solutions, Inc.** | **1433** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail:<br>380 Madison Avenue, New York NY 10017<br>**212.818.1110** |
| **Autoliv ASP, Inc.** | **862** | 6/12/2009 | Name: **Dennis J. Connolly**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail:<br>ALSTON & BIRD LLP; One Atlantic Center; 1201 West Peachtree Street, Atlanta GA 30309-3424 (USA)<br>**404-881-7000** |
| **Automatic Data Processing , Inc.** | **918** | 6/2/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: mhammer@dickinsonwright.com<br>DICKINSON WRIGHT PLLC; 500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Autoport Limited** | **846** | 6/12/2009 | Name: **J. Eric Charlton** |
| | | | Law Firm: **Hiscock & Barclay, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Park Place, 300 South State Street, Syracuse NY 13202-2078 |
| | | | **315.425.2716** |
| **Avery Dennison Corporation** | **778** | 6/12/2009 | Name: **Paul Traub** |
| | | | Law Firm: **Epstein Becker Green P.C.** |
| | | | Title: |
| | | | eMail: PTaub@ebglaw.com |
| | | | 250 Park Avenue, New York NY 10177-1211 (USA) |
| | | | **212.351.4500** |
| **AVL Americas, Inc. formerly known as AVL Michigan Holding Corp.** | **1735** | 6/17/2009 | Name: **P. Warren Hunt** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 500 Woodward Ave. Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-961-0200** |
| **AVL Instrumentation & Test Systems, Inc. fka AVL N.A., Inc.** | **856** | 6/12/2009 | Name: **P. Warren Hunt** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | Kerr, Russell and Weber, PLC, 500 Woodward Ave., Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-961-0200** |
| **AVL Powertrain Engineering, Inc.** | **1738** | 6/17/2009 | Name: **P. Warren Hunt** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 500 Woodward Ave., Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-961-0200** |
| **Ballard Materials Products, Inc.** | **1295** | 6/15/2009 | Name: **Michael Foreman** |
| | | | Law Firm: **Dorsey & Whitney LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 250 Park Avenue, New York NY 10177 |
| | | | **212.415.9200** |
| **BASF Corporation** | **640** | 6/11/2009 | Name: **Ryan D. Heilman** |
| | | | Law Firm: **Dorsey & Whitney LLP** |
| | | | Title: |
| | | | eMail: rheilman@Schaferandweiner.com |
| | | | Schafer and Weiner, PLLC, 40950 Woodward Ave., Ste. 100, Bloomfield Hills MI 48304 (USA) |
| | | | **248-540-3340** |
| **Bay Logistics, Inc.** | **1212** | 6/15/2009 | Name: **Terry L. Zabel** |
| | | | Law Firm: **Rhoades McKee** |
| | | | Title: |
| | | | eMail: tlzabel@rhoadesmckee.com |
| | | | 161 Ottawa Ave., NW, Ste 600, Grand Rapids MI 49503 (USA) |
| | | | **616-235-3500** |
| **BBi Enterprises Group, Inc.** | **2038** | 6/19/2009 | Name: **Ann Marie Uetz** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Detroit Center; 500 Woodward Avenue, Suite 2700, Detroit MI 48826-3489 (USA) |
| | | | **313-234-7100** |
| **Behr America, Inc.** | **916** | 6/12/2009 | Name: Patrick J. Kukla |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Carson Fischer, PLC; 4111 Andover Road, West 2nd Floor, Bloomfield Hills MI 48302 (USA) |
| | | | **248-644-4840** |
| **Behr GmbH & Co. KG** | **919** | 6/12/2009 | Name: Patrick J. Kukla |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | CARSON FISCHER, PLC; 4111 Andover Road, West 2nd Floor, Bloomfield Hills MI 48302 (USA) |
| | | | **248-644-4840** |
| **Behr-Hella Thermocontrol GmbH Co.** | **1405** | 6/15/2009 | Name: **Richard H. Wyron** |
| | | | Law Firm: **Orrick, Herrington & Sutcliffe LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Columbia Center 1152 15th Street, N.W., Washington DC 20005-1706 (USA) |
| | | | **202-339-8400** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| Bendix Commercial Vehicle Systems, LLC and its affiliated entities | 1416 | 6/15/2009 | Name: **Wendy J. Gibson**<br>Law Firm: **Baker & Hostetler LLP**<br>Title:<br>eMail: wgibson@bakerlaw.com<br>3200 National City Center; 1900 E. 9th St., Cleveland OH 44114 (USA)<br>**216-621-0200** |
| --- | --- | --- | --- |
| Benteler Automotive Corporation | 1045 | 6/15/2009 | Name: **Thomas P. Sarb**<br>Law Firm: **Miller Johnson Attorneys for Benteler Automotive Corporation**<br>Title:<br>eMail:<br>250 Monroe Avenue, Suite 800; PO Box 306, Grand Rapids MI 49501-0306 (USA)<br>**616-831-1700** |
| BHM Technologies Holdings, Inc., The Brown Company of Waverly, LLC, The Brown Company of Moberly, LL | 1023 | 6/15/2009 | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail: mkshaver@varnumlaw.com<br>Bridgewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| Bing Metals Group, Inc. | 912 | 6/12/2009 | Name: **PatrickJ. Kukla**<br>Law Firm: **Carson Fischer, PLC**<br>Title:<br>eMail:<br>4111 Andover Road, West 2nd Floor, Bloomfield Hills MI 48302 (USA)<br>**248-644-4840** |
| BNSF Railway Company | 1701 | 6/17/2009 | Name: **Pepper Hamilton LLP**<br>Law Firm: **Linda J. Casey**<br>Title:<br>eMail:<br>3000 Two Logan Square; 18th and Arch Streets, Philadelphia PA 19103-2799 (USA)<br>**215-981-4000** |
| Bocar, S.A. de C.V. | 825 | 6/12/2009 | Name: **Michael G. Cruse**<br>Law Firm: **Warner, Norcross & Judd LLP**<br>Title:<br>eMail: mcruse@wnj.com<br>2000 Town Center, Suite 2700, Southfield MI 48075 (USA)<br>**248.784.5131** |
| Borgwarner, Inc. | 841 | 6/15/2009 | Name: **Michael G. Cruse**<br>Law Firm: **Warner, Norcross & Judd**<br>Title:<br>eMail:<br>2000 Town Center, Suite 2700, Southfield MI 48075 |
| BP Products North America Inc. and BP Corporation North America Inc. | 679 | 6/11/2009 | Name: **James S. Carr**<br>Law Firm: **Kelley, Drye & Warren LLP**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212-808-7800** |
| Brandenburg Industrial Service Co. | 936 | 6/12/2009 | Name: **Christopher Battaglia**<br>Law Firm: **Halperin Battaglia Raicht, LLP**<br>Title:<br>eMail: cbattaglia@halperinlaw.net<br>555 Madison Avenue - 9th Floor, New York NY 10022 (USA)<br>**212-765-9100** |
| Brencal Contractors, Inc. | 1838 | 6/12/2009 | Name: **Mark L. McAlpine**<br>Law Firm: **McAlpine & Associates, P.C.**<br>Title:<br>eMail: mdnovello@mcalpinelawfirm.com<br>3201 University Dr. Suite 100, Auburn Hills MI 48326 (USA)<br>**248-373-3700** |
| Buehler Motor GMBH | 2075 | 6/19/2009 | Name: **J. William Boone**<br>Law Firm: **Alston & Bird LLP**<br>Title:<br>eMail:<br>1201 West Peachtree Street, Atlanta GA 30309-3424 (USA)<br>**404-881-7000** |
| Burns International Industrial Contracting Co. | 1296 | 6/15/2009 | Name: **John A. Ruemenapp**<br>Law Firm: **Weisman, Young & Ruemenapp, P.C.**<br>Title:<br>eMail:<br>30100 Telegraph Road, Suite 428, Bingham Farms MI 48025<br>**248.258.2700** |
| Cadillac Products Automotive Company | 1060 | 6/15/2009 | Name: **Salvatore B. Barbatano**<br>Law Firm: **Foley & Lardner, LLP**<br>Title:<br>eMail:<br>500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489<br>**313.234.7100** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| Supplier | | | | |
|---|---|---|---|---|
| **Canadian National Railway Company** | **682** | 6/17/2009 | | Name: **J. Eric Charlton** |
| | | | | Law Firm: **Canadian National Railway Company** |
| | | | | Title: |
| | | | | eMail: |
| | | | | One Park Place, 300 South State Street, Syracuse NY 13202-2078 |
| | | | | **315.425.2716** |
| **Canadian Pacific Railway Company** | **2008** | 6/19/2009 | | Name: **Jacob B. Sellers** |
| | | | | Law Firm: **Leonard, Street and Deinard** |
| | | | | Title: |
| | | | | eMail: |
| | | | | 150 South Fifth Street, Suite 2300, Minneapolis MN 55402 (USA) |
| | | | | **612-335-1500** |
| **Canon USA, Inc.** | **1308** | 6/15/2009 | | Name: **Paul Rubin** |
| | | | | Law Firm: **Herrick, Feinstein LLP** |
| | | | | Title: |
| | | | | eMail: |
| | | | | Two Park Avenue, New York NY 10016 (USA) |
| | | | | **212.592.1400** |
| **Capgemini America, Inc.** | **1077** | 6/15/2009 | | Name: **Steven M. Schwartz** |
| | | | | Law Firm: **Winston & Strawn, LLC** |
| | | | | Title: |
| | | | | eMail: sschwartz@winston.com |
| | | | | 200 Park Avenue, New York NY 10166 (USA) |
| | | | | **212.294.6761** |
| **Carlisle & Company, Inc.** | **1279** | 6/11/2009 | | Name: **Kathleen M. Breault** |
| | | | | Law Firm: **Carlisle & Company, Inc.** |
| | | | | Title: Finane Manager |
| | | | | eMail: |
| | | | | 30 Monument Sq., Concord MA 01742 (USA) |
| **Cassens Transport Company** | **827** | 6/12/2009 | | Name: **Karin F. Avery** |
| | | | | Law Firm: **Silverman & Morris, P.L.L.C** |
| | | | | Title: |
| | | | | eMail: avery@silvermanmorris.com |
| | | | | 7115 Orchard Lake Road, Suite 500, West Bloomfield MI 48322 (USA) |
| | | | | **248.539.1330** |
| **Castrol Industrial North America and Castrol North America Automotive** | **1561** | 6/16/2009 | | Name: **James S. Carr** |
| | | | | Law Firm: **Kelley Drye & Warren LLP** |
| | | | | Title: |
| | | | | eMail: |
| | | | | 101 Park Ave., New York NY 10178 (USA) |
| | | | | **212-808-7800** |
| **CDI Corporation** | **1142** | 6/15/2009 | | Name: **James O. Moore** |
| | | | | Law Firm: **Dechert LLP** |
| | | | | Title: |
| | | | | eMail: james.moore@dechert.com |
| | | | | 1095 Avenue of the Americas , New York NY 10036-6797 (USA) |
| | | | | **212-698-3500** |
| **Cellco Partnership dba Verizon Wireless** | **1054** | 6/15/2009 | | Name: **Stanley B. Tarr** |
| | | | | Law Firm: **Blank Rome, LLP** |
| | | | | Title: |
| | | | | eMail: |
| | | | | The Chrysler Building, 405 Lexington Avenue, New York NY 10174-5001 |
| | | | | **212.885.5000** |
| **Cellco Partnership dba Verizon Wireless** | **1054** | 6/15/2009 | | Name: **Stanley B. Tarr** |
| | | | | Law Firm: **Blank Rome, LLP** |
| | | | | Title: |
| | | | | eMail: |
| | | | | The Chrysler Building, 405 Lexington Avenue, New York NY 10174-5001 |
| | | | | **212.885.5000** |
| **CenterPoint Energy Gas Transmission Company and CenterPoint Energy Arkla** | **980** | 6/12/2009 | | Name: **Jil Mazer-Marino** |
| | | | | Law Firm: **Meyer, Suozzi, English & Klein, PC** |
| | | | | Title: |
| | | | | eMail: |
| | | | | 990 Stewart Avenue, Suite 300; PO Box 9194, Garden City NY 11530-9194 (USA) |
| | | | | **516-741-6565** |
| **CenterPoint Energy Services, Inc.** | **900** | 6/12/2009 | | Name: **Thomas R. Slome, Esq.** |
| | | | | Law Firm: **Meyer, Suozzi, English & Klein, P.C.** |
| | | | | Title: |
| | | | | eMail: |
| | | | | 990 Stewart Avenue, Suite 300; P.O. Box 9194, Garden City NY 11530-9194 (USA) |
| **Central Conveyor Inc.** | **1360** | 6/15/2009 | | Name: **Cliff A. Katz** |
| | | | | Law Firm: **Platzer, Swergold, Karlin Levine, Goldberg & Jaslow, LLP** |
| | | | | Title: |
| | | | | eMail: ckatz@platzerlaw.com |
| | | | | 1065 Avenue of the Americas, New York NY 10018 (USA) |
| | | | | **212.593.3000** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **CEVA** | **698** | 6/12/2009 | Name: **Judith Elkin** |
| | | | Law Firm: **Haynes and Boone, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 1221 Avenue of the Americas, 26th Floor, New York NY 10020 (USA) |
| | | | **212-659-6300** |
| **Champion Laboratories, Inc.** | **1363** | 6/15/2009 | Name: **Mitchell Seider** |
| | | | Law Firm: **Latham & Watkins LLP** |
| | | | Title: |
| | | | eMail: mitchell.seider@lw.com |
| | | | 885 Third Ave., New York NY 10022-4802 (USA) |
| | | | **212-906-1200** |
| **ChannelVantage, Inc.** | **762** | 6/12/2009 | Name: **Deborah Kovsky-Apap** |
| | | | Law Firm: **PEPPER HAMILTON LLP** |
| | | | Title: |
| | | | eMail: kovskyd@pepperlaw.com |
| | | | 100 Renaissance Center Suite 3600, Detroit MI 48243 (USA) |
| | | | **313-259-7110** |
| **Chemico Mays, LLC** | **1250** | 6/15/2009 | Name: **Thomas K. Lindahl** |
| | | | Law Firm: **McDonald Hopkins PLC** |
| | | | Title: |
| | | | eMail: tlindahl@mcdonaldhopkins.com |
| | | | 39533 Woodward Ave., Suite 318, Bloomfield Hills MI 48304 (USA) |
| | | | **248-646-5070** |
| **Chemico Mays, LLC** | **1211** | 6/15/2009 | Name: **Thomas K. Lindahl** |
| | | | Law Firm: **McDonald Hopkins PLC** |
| | | | Title: |
| | | | eMail: tlindahl@mcdonaldhopkins.com |
| | | | 39533 Woodward Ave., Suite 318, Bloomfield Hills MI 48304 (USA) |
| | | | **248-646-5070** |
| **Chemico Systems, Inc.** | **1208** | 6/15/2009 | Name: **Thomas K. Lindahl** |
| | | | Law Firm: **McDonald Hopkins PLC** |
| | | | Title: |
| | | | eMail: tlindahl@mcdonaldhopkins.com |
| | | | 39533 Woodward Ave., Suite 318, Bloomfield Hills MI 48304 (USA) |
| | | | **248-646-5070** |
| **Chrysler Group LLC, on behalf of itself and as agent for Old Carco LLC and Chrysler Motors LLC** | **1640** | 6/16/2009 | Name: **James A. Plemmons** |
| | | | Law Firm: **Dickinson Wright PLLC** |
| | | | Title: |
| | | | eMail: jplemmons@dickinsonwright.com |
| | | | 500 Woodward Ave. Suite 4000, Detroit MI 48226 (USA) |
| | | | **734-623-7075** |
| **Chrysler Group LLC, on behalf of itself and as agent for Old Carco LLC and Chrysler Motors LLC** | **1908** | 6/19/2009 | Name: **James A. Plemmons** |
| | | | Law Firm: **Dickinson Wright PLLC** |
| | | | Title: |
| | | | eMail: jplemmons@dickinsonwright.com |
| | | | 500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA) |
| | | | **734-623-7075** |
| **Cinetic Automation Corp., Cinetic DyAG Corporation, and Cinetic Landis Corp.** | **1034** | 6/15/2009 | Name: **Mary Kay Shaver** |
| | | | Law Firm: **Varnum LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Bridgewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA) |
| | | | **616-336-6000** |
| **Cintas Corporation** | **932** | 6/12/2009 | Name: **Jason V. Stitt** |
| | | | Law Firm: **Keating Muething & Klekamp PLL** |
| | | | Title: |
| | | | eMail: jstitt@kmklaw.com |
| | | | One East Fourth Street, Suite 1400, Cincinnati OH 45202 (USA) |
| | | | **513-639-3964** |
| **Cisco Systems Capital Corporation** | **1141** | 6/12/2009 | Name: **Karel S. Karpe** |
| | | | Law Firm: **White and Williams, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Penn Plaza, Suite 4110, New York NY 10119 (USA) |
| | | | **212-631-4421** |
| **Cisco Systems, Inc.** | **1183** | 6/12/2009 | Name: **Karel S. Karpe** |
| | | | Law Firm: **White and Williams, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Penn Plaza, Suite 4110, New York NY 10119 (USA) |
| | | | **212-631-4421** |
| **Citation Corporation** | **704** | 6/12/2009 | Name: **Colin T. Drake** |
| | | | Law Firm: **BODMAN LLP** |
| | | | Title: |
| | | | eMail: cdrake@bodmanllp.com |
| | | | 6th Fllor Ford Field; 1901 St. Antoine Street, Detroit MI 48026 (USA) |
| | | | **313-393-7585** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | | |
|---|---|---|---|---|
| Clarcor, Inc. and Total Filtration Services, Inc. | 1372 | 6/15/2009 | | Name: **David H. Hartheimer**<br>Law Firm: **Mazzeo Song & Bradham LLP**<br>Title:<br>eMail:<br>708 Third Ave. 19th Floor, New York NY 10017 (USA)<br>**212-599-0700** |
| Cloyes Gear & Products, Inc. | 1347 | 6/15/2009 | | Name: **Richard J. Bernard**<br>Law Firm: **Baker & Hostetler, LLP**<br>Title:<br>eMail: rbernard@bakerlaw.com<br>45 Rockefeller Plaza, New York NY 10111 (USA)<br>**212.589.4200** |
| CNI Enterprises, Inc. | 1459 | 6/15/2009 | | Name: **Robert T. Smith**<br>Law Firm: **CNI Inc Attorney for CNI Enterprises, Inc.**<br>Title:<br>eMail: rsmith@cninc.cc<br>1451 East Lincoln Ave., Madison Heights MI 48071 (USA)<br>**248-586-3320** |
| Coastal Container Corporation and Vericorr Packaging of Coastal, LLC | 1243 | 6/15/2009 | | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail: mkshaver@varnumlaw.com<br>Bridewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| Coastal Container Corporation_Vericorr Packaging | 1336 | 6/15/2009 | | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail:<br>Bridgewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616.336.6000** |
| Cobasys LLC | 2190 | 6/22/2009 | | Name: **Patrick J. Kukla**<br>Law Firm: **Carson Fischer, P.L.C.**<br>Title:<br>eMail:<br>4111 Andover Road, West-2nd Flr., Bloomfield Hills MI 48302 (USA)<br>**248-644-4840** |
| Columbia Gas of Ohio, Inc. and Columbia Gas of Virginia, Inc. | 764 | 6/12/2009 | | Name: **Jason M. Torf**<br>Law Firm: **Schiff Hardin LLP**<br>Title:<br>eMail: egeekie@schiffhardin.com<br>6600 Sears Tower , Chicago IL 60606-6473 (USA)<br>**312-258-5500** |
| Comau, Inc. | 981 | 6/15/2009 | | Name: **Thomas K. Lindahl**<br>Law Firm: **McDonald Hopkins PLC**<br>Title:<br>eMail: tlindahl@mcdonaldhopkins.com<br>39533 Woodward Ave., Ste 318, Bloomfield Hills MI 48304 (USA)<br>**248-646-5070** |
| Comau, Inc. | 653 | 6/10/2009 | | Name: **Thomas K. Lindahl**<br>Law Firm: **MCDONALD HOPKINS PLC**<br>Title:<br>eMail: tlindahl@mcdonaldhopkins.com<br>39533 Woodward Ave., Suite 318, Bloomfield Hills MI 48304 (USA)<br>**248-646-50701** |
| Commercial Contracting Corporation | 1126 | 6/15/2009 | | Name: **Mark S. Frankel**<br>Law Firm: **Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C.**<br>Title:<br>eMail: mark.frankel@couzens.com<br>39395 W. Twelve Mile Road, Suite 200, Farmington Hills MI 48331 (USA)<br>**248-489-8600** |
| Compagnie de Saint-Gobain | 1152 | 6/15/2009 | | Name: **Elizabeth A. Haas**<br>Law Firm: **The Haas Law Firm**<br>Title:<br>eMail: ehaas@thehaaslawfirm.com<br>254 S. Main Street, Suite 210, New City NY 10956-3363 (USA)<br>**845-708-0340** |
| Compania Sud Americana de Vapores S.A. | 1128 | 6/15/2009 | | Name: **Michael C. Lambert**<br>Law Firm: **Gilmartin, Poster & Shafto LLP Attorneys for Compania Sud Americana de Vapores SA**<br>Title:<br>eMail: mclambert@lawpost-nyc.com<br>845 Third Ave. 18th Floor, New York NY 10022 (USA)<br>**212-425-3220** |
| Comprehensive Logistics Co., Inc. | 1645 | 6/12/2009 | | Name: **Michael A. Gallo**<br>Law Firm: **Nadler Nadler & Burdman Co., L.P.A.**<br>Title:<br>eMail: tmreardon@nnblaw.com<br>20 Federal Plaza West, Suite 600, Youngstown OH 44503-1423 (USA)<br>**330-744-0247** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| Compuware Corporation | 792 | 6/12/2009 | Name: **MIchael G. Cruse**<br>Law Firm: **Nadler Nadler & Burdman Co., L.P.A.**<br>Title:<br>eMail: mcruse@wnj.com<br>Warner Norcross & Judd, 2000 Town Center, Suite 2700, Southfield MI 48075 (USA)<br>**248-784-5131** |
| Concept Industries, Inc. | 1273 | 6/12/2009 | Name: **Ellen McClain**<br>Law Firm: **Concept Industries, Inc.**<br>Title: Controller<br>eMail:<br>4950 Kraft S.E. , Grand Rapids MI 49512-9707 (USA)<br>**616-554-9000** |
| Connecticut General Life Insurane Company and related CIGNA entities | 1402 | 6/15/2009 | Name: **Jeffrey C. Wisler**<br>Law Firm: **Connolly Bove Lodge & Hutz LLP**<br>Title:<br>eMail:<br>The Nemours Building 1007 North Orange St.; PO Box 2207 (19899), Wilmington DE 19801 (USA)<br>**302-658-9141** |
| Continental AG and its affiliates | 1824 | 6/18/2009 | Name: **John T. Gregg**<br>Law Firm: **Barnes & Thornburg LLP**<br>Title:<br>eMail: jgregg@btlaw.com<br>171 Monroe Ave, NW Suite 1000, Grand Rapids MI 49503 (USA)<br>**616-742-3930** |
| Continental Plastics Co. | 1343 | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| Continental Structural Plastics, Inc. | 1978 | 6/19/2009 | Name: **Ann Marie Uetz**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Convention & Show Services, Inc. | 1135 | 6/12/2009 | Name: **David J. Selwocki**<br>Law Firm: **Sullivan, Ward, Asher & Patton, P.C.**<br>Title:<br>eMail: dselwocki@swappc.com<br>1000 Maccabees Center; 25800 Northwestern Highway, Southfield MI 48075-1000 (USA)<br>**248-746-0700** |
| Convergys Corporation | 902 | 6/12/2009 | Name: **Kim Martin Lewis**<br>Law Firm: **Dinsmore & Shohl LLP**<br>Title:<br>eMail: kim.lewis@dinslaw.com<br>225 E. 5th Street, Cincinnati OH 45202 (USA)<br>**513.977.8200** |
| Cooper-Standard Automotive | 1294 | 6/15/2009 | Name: **Steven H. Hilfinger**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| Creative Foam Corporation | 769 | 6/12/2009 | Name: **Michael G. Cruse**<br>Law Firm: **Warner Norcross & Judd LLP**<br>Title:<br>eMail:<br>2000 Town Center, Suite 2700, Southfield MI 48075 (USA)<br>**248-784-5131** |
| CSX Transportation, Inc. | 688 | 6/11/2009 | Name: **Shawn R. Fox**<br>Law Firm: **McGuireWoods LLP**<br>Title:<br>eMail:<br>1345 Avenue of the Americas, 7th Floor, New York NY 10105 (USA)<br>**804-775-1000** |
| Cummins Inc. | 1743 | 6/17/2009 | Name: **Jill L. Murch**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>321 North Clark St. Suite 2800, Chicago IL 60654 (USA)<br>**312-832-4500** |

General Motors Contract Assignment / Assumption

Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Custom Automotive Services, Inc.** | **687** | 6/11/2009 | Name: **Gloria M. Chon**<br>Law Firm: **Kemp Klien Law Firm**<br>Title:<br>eMail: gloria.chon@kkue.com<br>201 W. Big Beaver, Suite 600, Troy MI 48084 (USA)<br>**248-740-5689** |
| **CVS Pharmacy, Inc.** | **1249** | 6/15/2009 | Name: **Mark Minuti**<br>Law Firm: **Saul Ewing LLP**<br>Title:<br>eMail:<br>222 Delaware Avenue, Suite 1200; P.O. Box 1266, Wilmington DE 19899 (USA)<br>**302-421-6840** |
| **D.W. Griffith, Inc.** | **1089** | 6/11/2009 | Name: **D.W. Griffith**<br>Law Firm:<br>Title: President<br>eMail: wilmardon@aol.com<br>100 Phila Pike, Suite B, Wilmington DE 19809 (USA)<br>**302-762-1241** |
| **Dakkota Integrated Systems, LLC** | **1219** | 6/15/2009 | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail: mkshaver@varnumlaw.com<br>Bridgewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| **Danaher Corporation** | **1752** | 6/16/2009 | Name: **Robert S. Lutz**<br>Law Firm:<br>Title:<br>eMail:<br>2099 Pennsylvania Avenue, NW, 12th Floor, Washington DC 20006 (USA)<br>**202-828-0850** |
| **Dell Financial Services LLC** | **867** | 6/12/2009 | Name: **Stephen H. Gross**<br>Law Firm: **Hodgson Russ LLP**<br>Title:<br>eMail: sgross@hodgsonruss.com<br>60 East 42nd Street, 37th Floor, New York NY 10165-0150 (USA)<br>**212-661-3535** |
| **Delta Tooling Co., and certain of its affiliates and subsidiaries, including without limitation, Del** | **1638** | 6/16/2009 | Name: **P. Warren Hunt**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>Title:<br>eMail:<br>500 Woodward Ave., Suite 2500, Detroit MI 48226 (USA)<br>**313-961-0200** |
| **Delta Township Utilities II, LLC** | **1024** | 6/15/2009 | Name: **Jil Mazer-Marino**<br>Law Firm: **Meyer, Suozzi, English & Klein, PC**<br>Title:<br>eMail:<br>990 Stewart Avenue, Suite 300; PO Box 9194, Garden City NY 11530-9194 (USA)<br>**516-741-6565** |
| **Delta Township Utilities, LLC** | **1013** | 6/15/2009 | Name: **Jil Mazer-Marino**<br>Law Firm: **Meyer, Suozzi, English & Klein, PC**<br>Title:<br>eMail:<br>990 Stewart Avenue, Suite 300; PO Box 9194, Garden City NY 11530-9194 (USA)<br>**516-741-6565** |
| **DENSO International America, Inc.** | **758** | 6/12/2009 | Name: **Marc E. Richards**<br>Law Firm: **Blank Rome LLP**<br>Title:<br>eMail: mrichards@blankrome.com<br>The Chrysler Building; 405 Lexington Avenue, New York NY 10174 (USA)<br>**212-885-5000** |
| **Det Norske Veritas (USA), Inc.** | **693** | 6/11/2009 | Name: **Michael Farquhar**<br>Law Firm: **Winstead PC**<br>Title:<br>eMail:<br>1100 JPMorgan Chase Tower; 600 Travis Street, Houston TX 77002-5895 (USA)<br>**713-650-8400** |
| **Detroit Technologies** | **1325** | 6/15/2009 | Name: **Ann Marie Uetz**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| **Discovery Communications, LLC** | **1132** | 6/15/2009 | Name: **James M. Sullivan**<br>Law Firm: **Arent Fox LLP Attorneys for Discovery Communications, LLC**<br>Title:<br>eMail:<br>1675 Broadway, New York NY 10019 (USA)<br>**212-484-3900** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| Dominion Retail, Inc. | 1268 | 6/15/2009 | Name: **Dion W. Hayes**<br>Law Firm: **McGuirewoods, LLP**<br>Title:<br>eMail:<br>1345 Avenue of the Americas, Seventh Floor, New York NY 10105<br>**212.548.2100** |
|---|---|---|---|
| Dominion Retail, Inc. | 1669 | 6/17/2009 | Name: **Shawn R. Fox**<br>Law Firm: **McGuirewoods LLP**<br>Title:<br>eMail:<br>1345 Aveune of Americas, 17th Floor, New York NY 10105 (USA)<br>**212-548-2100** |
| Dow Chemical Co. | 852 | 6/12/2009 | Name: **Anne M. Aaronson**<br>Law Firm: **Dilworth Paxson LLP**<br>Title:<br>eMail:<br>1500 Market Street, Suite 3500E, Philadelphia PA 19102-2101 (USA)<br>**215.575.7000** |
| dSpace, Inc. and dSpace GmbH | 692 | 6/11/2009 | Name: **Donald J. Hutchinson**<br>Law Firm: **Miller Canfield Paddock and Stone, PLC**<br>Title:<br>eMail: hutchinson@millercanfield.com<br>150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA)<br>**313-963-6420** |
| DTE Lordstown, LLC | 1231 | 6/15/2009 | Name: **Thomas L. Kent**<br>Law Firm: **Paul, Hastings, Janofsky & Walker LLP**<br>Title:<br>eMail: thomaskent@paulhastings.com<br>Park Avenue Tower; 75 East 55th Street, New York NY 10022 (USA)<br>**212-318-6000** |
| DTE Northwind Operations, LLC | 1216 | 6/15/2009 | Name: **Thomas L. Kent**<br>Law Firm: **Paul, Hastings, Janofsky & Walker LLP**<br>Title:<br>eMail: thomaskent@paulhastings.com<br>Park Avenue Tower, 75 East 55th Street, New York NY 10022 (USA)<br>**212-318-6000** |
| DTE Tonawanda, LLC | 1225 | 6/15/2009 | Name: **Thomas L. Kent**<br>Law Firm: **Paul, Hastings, Janofsky & Walker LLP**<br>Title:<br>eMail: thomaskent@paulhastings.com<br>Park Avenue Tower, 75 East 55th Street, New York NY 10022 (USA)<br>**212-318-6000** |
| Duerr AG | 910 | 6/12/2009 | Name: **William M. Barron**<br>Law Firm: **Smith, Gambrell & Russell, LLP**<br>Title:<br>eMail:<br>250 Park Avenue, New York NY 10177 (USA)<br>**212-907-9700** |
| Duerr AG, Duerr Systems Inc., and Duerr Ecolcelan, Inc. | 911 | 6/12/2009 | Name: **William M. Barron**<br>Law Firm: **Smith, Gambrell & Russell, LLP**<br>Title:<br>eMail:<br>250 Park Avenue, New York NY 10177 (USA)<br>**212-907-9700** |
| Duerr AG, Duerr Systems Inc., and Duerr Ecolcelan, Inc. | 913 | 6/12/2009 | Name: **William M. Barron**<br>Law Firm: **Smith, Gambrell & Russell, LLP**<br>Title:<br>eMail:<br>250 Park Avenue, New York NY 10177 (USA)<br>**212-907-9700** |
| Dura Automotive Systems, Inc. and certain of its affiliates | 1381 | 6/15/2009 | Name: **Ann Marie Uetz**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**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** |
| E & L Construction Group, Inc. aka Erickson and Lindstrom Construction | 809 | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail: rgordon@clarkhill.com<br>CLARK HILL PLC, 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313-965-8572** |
| E.I. du Pont de Nemours and Compnay | 2337 | 6/23/2009 | Name: **Allan L. Hill**<br>Law Firm: **Phillips Lytle LLP**<br>Title:<br>eMail:<br>437 Madison Avenue, 34th Floor, New York NY 10022 (USA)<br>**212-759-4888** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Supplier | Doc | Date | Contact |
|---|---|---|---|
| E.I. DuPont de Nemours and Company | 868 | 6/12/2009 | Name: **William J. Brown**<br>Law Firm: **Phillips Lytle LLP**<br>Title:<br>eMail:<br>PHILLIPS LYTE, LLP; 437 Madison Ave, 34th Floor, New York NY 10022 (USA)<br>**212-759-4888** |
| Eaton Corporation | 1224 | 6/15/2009 | Name: **G. Christopher Meyer**<br>Law Firm: **Squire, Sanders & Dempsey LLP**<br>Title:<br>eMail: cmeyer@ssd.com<br>4900 Key Tower; 127 Public Square, Cleveland OH 4414-1304 (USA)<br>**216-479-8500** |
| Eberspaecher (ENA) | 889 | 6/12/2009 | Name: **Robert N. Bassel**<br>Law Firm:<br>Title:<br>eMail: bbassel@gmail.com<br>P.O. Box T, Clinton MI 49326 (USA)<br>**248-835-7683** |
| EMC Corporation | 935 | 6/12/2009 | Name: **Christopher J. Battaglia**<br>Law Firm: **Halperin Battaglia Raicht, LLP**<br>Title:<br>eMail:<br>555 Madison Avenue - 9th Floor, New York NY 10022 (USA)<br>**212-765-9100** |
| EMCON Technologies | 1299 | 6/15/2009 | Name: **John A. Simon**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>500 Woodward Ave., Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Emerson Electric Company | 859 | 6/12/2009 | Name: **Andrew C. Gold**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>Herrick, Feinstein LLP; 2 Park Avenue, New York NY 10016 (USA)<br>**212-592-1400** |
| Emigrant Business Credit Group corp. (Sun Microsystems) | 904 | 6/15/2009 | Name: **John F. Carberry**<br>Law Firm: **Cummings & Lockwood LLC**<br>Title:<br>eMail:<br>Six Landmark Square, Stamford CT 06901<br>**203.351.4280** |
| EnovaPremier of Michigan LLC | 1653 | 6/16/2009 | Name: **Richard L. Ferrell**<br>Law Firm: **Taft Stettinius & Hollister LLP**<br>Title:<br>eMail: ferrell@taftlaw.com<br>425 Walnut Street Ste. 1800, Cincinnati OH 45240 (USA)<br>**513-381-2838** |
| Enprotech Mechanical Services, Inc. | 2298 | 6/23/2009 | Name: **Michael P. Shuster**<br>Law Firm: **Porter Wright Morris & Arthur LLP**<br>Title:<br>eMail: mshuster@porterwright.com<br>925 Euclid Avenue, Suite 1700, Cleveland OH 44115-1483 (USA)<br>**216-443-2510** |
| Enprotech Mechanical Services, Inc. | 1083 | 6/15/2009 | Name: **Michael P. Shuster**<br>Law Firm: **Porter Wright Morris & Arthur LLP**<br>Title:<br>eMail: mshuster@porterwright.com<br>925 Euclid Avenue, Suite 1700, Cleveland OH 44115-1483 (USA)<br>**216-443-2510** |
| Enshu Ltd and Enshu (USA) Corporation | 2027 | 6/19/2009 | Name: **Rein F. Krammer**<br>Law Firm: **Masuda, Funai, Eifert & Mitchell, Ltd.**<br>Title:<br>eMail: rkrammer@masudafunai.com<br>203 N. LaSalle Street, Suite 2500, Chicago IL 60601-1262 (USA)<br>**312-245-7500** |
| Enshu Ltd and Enshu Corporation | 1670 | 6/17/2009 | Name: **Amy Evans**<br>Law Firm: **Cross & Simon, LLC**<br>Title:<br>eMail: aevans@crosslaw.com<br>913 North Market Street, 11th Floor; PO Box 1380, Wilmington DE 19899-1380<br>**302-777-4200** |
| Environmental Systems Research Institute Incorporated | DDN0002 | 6/15/2009 | Name: **Krista M. Moreno**<br>Law Firm: **Environmental Systems Research Institute Incorporated**<br>Title: Manager, Contracts & Legal Services<br>eMail:<br>380 New York Street, Redlands CA 92373 (USA) |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Ernie Green Industries, Inc.** | **1650** | 6/16/2009 | Name: **Daniel J. Flanigan**<br>Law Firm: **Polsinelli Shughart PC**<br>Title:<br>eMail: dflanigan@polsinelli.com<br>7 Penn Plaza, Suite 600, New York NY 10001 (USA)<br>**212-684-0199** |
| **Etkin Management Services, Inc.** | **1479** | 6/16/2009 | Name: **Earle I. Erman**<br>Law Firm: **Attorneys for Etkin Management Services, Inc.**<br>Title:<br>eMail: eerman@ermanteicher.com<br>400 Galleria Officentre, Suite 444, Southfield MI 48034 (USA)<br>**248-827-4100** |
| **Exedy America Corp. and Dynax America Corp.** | **1431** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| **Exel Inc. ("Exel"), Exel Transportation Services, Inc. ("Exel Transportation") and Air Express Inter** | **2094** | 6/19/2009 | Name: **Blanka K. Wolfe**<br>Law Firm: **Sheppard Mullin Richter & Hampton LLP**<br>eMail:<br>30 Rockefeller Plaza, 24th Floor, New York NY 10012 (USA)<br>**212-332-3800** |
| **Fabtronic, Inc.** | **806** | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Sheppard Mullin Richter & Hampton LLP**<br>Title:<br>eMail: rgordon@clarkhill.com<br>CLARK HILL PLC, 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009<br>(USA)<br>**313-965-8572** |
| **Falcon Transport Co.** | **1643** | 6/12/2009 | Name: **Michael A. Gallo**<br>Law Firm: **Nadler Nadler & Burdman Co., L.P.A.**<br>Title:<br>eMail: tmreardon@nnblaw.com<br>20 Federal Plaza West, Suite 600, Youngston OH 44503-1423 (USA)<br>**330-744-0247** |
| **FANUC Robotics America, Inc.** | **1391** | 6/15/2009 | Name: **Ann Marie Uetz**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| **FATA Automation, Inc.** | **1196** | 6/15/2009 | Name: **Charles D. Bullock**<br>Law Firm: **Stevenson & Bullock, PLC**<br>Title:<br>eMail: cbullock@sbplclaw.com<br>29200 Southfield Rd., Suite 210, Southdield MI 48076 (USA)<br>**248-423-8200 ext 224** |
| **Faurecia USA Holdings, Inc., Faurecia Interior Systems, Inc., Faurecia Automotive Seating, Inc., and** | **1429** | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| **Federal Broach & Machine Company, LLC** | **1012** | 6/15/2009 | Name: **Scott A. Wolfson**<br>Law Firm: **Bush Seyferth & Paige PLLC**<br>Title:<br>eMail: wolfson@bsplaw.com<br>3001 W. Big Beaver Rd., Suite 600, Troy MI 48084 (USA)<br>**248-822-7803** |
| **Federal Express Corporation** | **888** | 6/15/2009 | Name: **Robert R. Ross**<br>Law Firm: **Federal Express Corporation**<br>eMail:<br>3620 Hacks Cross Road, Building B-2nd Floor, Memphis TN 38125<br>**901.434.8369** |
| **Ferndale Electric Company, Inc.** | **1871** | 6/19/2009 | Name: **P. Warren Hunt**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>eMail:<br>500 Woodward Ave., Suite 2500, Detroit MI 48226 (USA)<br>**313-961-0200** |
| **Ferndale Electric Company, Inc.** | **2338** | 6/23/2009 | Name: **P. Warren Hunt**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>eMail:<br>500 Woodward Ave, Suite 2500, Detroit MI 48226 (USA)<br>**313-961-0200** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Feuer Powertrain GmbH & Co. KG** | **1584** | 6/16/2009 | Name: **Karin F. Avery** |
| | | | Law Firm: **Silverman & Morris, P.L.L.C.** |
| | | | Title: |
| | | | eMail: avery@silvermanmorris.com |
| | | | 7115 Orchard Lake Road, Suite 500, West Bloomfield MI 48322 (USA) |
| | | | **248-539-1330** |
| **Fiat S.p.A.** | **1037** | 6/12/2009 | Name: **William L. Farris** |
| | | | Law Firm: **Sullivan & Cromwell LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 125 Broad Street , New York NY 10004 (USA) |
| | | | **212-558-4000** |
| **Ficosa North America Corporation** | **1399** | 6/15/2009 | Name: **Thomas B. Spillane** |
| | | | Law Firm: **Foley & Lardner, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 |
| | | | **313.234.7100** |
| **Fleet-Car Lease, Inc. d/b/a Fleet Car Carriers** | **945** | 6/12/2009 | Name: **P. Warren Hunt** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 500 Woodward Avenue, Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-961-0200** |
| **Flex-N-Gate Corporation** | **572** | 6/10/2009 | Name: **Deborah Kovsky-Apap** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: kovskyd@pepperlaw.com |
| | | | Pepper Hamilton LLP, 100 Renaissance Center Suite 3600, Detroit MI 48243 (USA) |
| | | | **313-259-7110** |
| **Flextronics International Ltd., et al.** | **1079** | 6/12/2009 | Name: **Lawrence M. Schwab** |
| | | | Law Firm: **Bialson, Bergen & Schwab** |
| | | | Title: Esquire |
| | | | eMail: |
| | | | 2600 El Camino Real, Suite 300, Palo Alto CA 94306 (USA) |
| | | | **650-657-9500** |
| **Fluid Routing Solutions, Inc.** | **1281** | 6/15/2009 | Name: **Melissa Detrick** |
| | | | Law Firm: **Marshall Melhorn, LLC** |
| | | | Title: |
| | | | eMail: detrick@marshall-melhorn.com |
| | | | Four SeaGate, Eighth Floor, Toledo OH 43604-2638 (USA) |
| | | | **419-249-7100** |
| **Ford, Comverca, and ACH** | **2335** | 6/23/2009 | Name: **Timothy A. Fusco** |
| | | | Law Firm: **Miller, Canfield, Paddlock and Stone, P.L.C.** |
| | | | Title: |
| | | | eMail: fusco@millercanfield.com |
| | | | 150 West Jefferson Aveune Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-496-8435** |
| **Foster Electric Co. Ltd.** | **775** | 6/12/2009 | Name: **Amy E. Evans, Esq.** |
| | | | Law Firm: **Cross & Simon, LLC** |
| | | | Title: |
| | | | eMail: aevans@crosslaw.com |
| | | | 913 North Market Street, 11th Floor, Wilmington DE 19801 (USA) |
| | | | **302.777.4200** |
| **Foster Electric, Inc.** | **775** | 6/12/2009 | Name: **Amy E. Evans** |
| | | | Law Firm: **Cross & Simon, LLC** |
| | | | Title: |
| | | | eMail: |
| | | | 913 North Market Street, 11th Floor, Wilmington DE 19801 (USA) |
| | | | **302.777.4200** |
| **Freudenberg - NOK General Partnership, et. al** | **1287** | 6/15/2009 | Name: **Ralph E. McDowell** |
| | | | Law Firm: **Bodman LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 1901 St. Antoine, 6th Floor at Ford Field, Detroit MI 48226 |
| | | | **313.393.7585** |
| **Freudenberg-NOK General Partnership; Freudenberg-NOK, Inc; Freudenberg-NOK de Mexico, S.A. de C.V.;** | **1853** | 6/18/2009 | Name: **Colin T. Drake** |
| | | | Law Firm: **Bodman LLP** |
| | | | Title: |
| | | | eMail: cdarke@bodmanllp.com |
| | | | 1901 St. Antoine Street 6th Floor at Ford Field, Detroit MI 48026 (USA) |
| **FTM Service Corp.** | **1297** | 6/15/2009 | Name: **Howard S. Beltzer** |
| | | | Law Firm: **Morgan, Lewis & Bockius LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 101 Park Avenue, New York NY 10178 (USA) |
| | | | **212.309.6000** |

General Motors Contract Assignment / Assumption

Exhibit: Logged Supplier Objections

| Supplier | No. | Date | Contact |
|---|---|---|---|
| Fujiwa Machinery Industry (Kunshan) | 858 | 6/15/2009 | Name: **Marc E. Edwards**<br>Law Firm: **Blank Rome LLP**<br>Title:<br>eMail:<br>The Chrysler Building, 405 Lexington Avenue, New York NY 10174<br>**212.885.5000** |
| Fuzhou Lioho Machinery Co., LTD | 842 | 6/12/2009 | Name: **Marc E. Richards**<br>Law Firm: **Blank Rome, LLP**<br>Title:<br>eMail: mrichards@blankrome.com<br>405 Lexington Avenue, New York NY 10174 (USA)<br>**212.885.5000** |
| Gail & Rice, Inc. | 839 | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail: rgordon@clarkhill.com<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313.965.8572** |
| Gates Corporation | 1412 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue , New York NY 10017 (USA)<br>**212-818-1110** |
| GE Capital Corporation | 1143 | 6/15/2009 | Name: **George Royle**<br>Law Firm: **Latham & Watkins LLP**<br>Title:<br>eMail:<br>885 Third Avenue, Suite 1000, New York NY 10022 (USA)<br>**212-906-1200** |
| Gensler Architecture, Design & Planning, PC | 1165 | 6/15/2009 | Name: **Mark A Waite**<br>Law Firm:<br>Title: Regional Counsel<br>eMail: mark_waite@gensler.com<br>One Woodward Avenue, Suite 601, Detroit MI 48226 (USA)<br>**313-965-1600** |
| Georg Fischer Automotive AG | 756 | 6/12/2009 | Name: **Renee M. Dailey**<br>Law Firm: **Bracewell & Giuliani LLP**<br>Title:<br>eMail:<br>225 Asylum Street, Suite 2600, Hartford CT 06103 (USA)<br>**860-256-8531** |
| Getrag Transmission Corporation | 1437 | 6/15/2009 | Name: **Frank W. DiCastri**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>777 East Wisconsin Ave., Milwaukee WI 53202 (USA)<br>**414-271-2400** |
| GHSP, Inc. and JSJ Corporation | 865 | 6/15/2009 | Name: **Steven B. Grow**<br>Law Firm: **Warner Norcross & Judd LLP**<br>Title:<br>eMail:<br>900 Fifth Third Center, 111 Lyon Street, NW, Grand Rapids MI 49503<br>**616.752.2158** |
| Gill Industries | 1386 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| GKN Driveline, GKN Sinter Metals, GKN Polsk Sp Z.O.O., and GKN Deutschland | 1427 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Gonzalez Design Engineering, Gonzalez Production Systems, and Gonzalez Manufacturing Technologies | 1566 | 6/16/2009 | Name: **Stephen M. Gross**<br>Law Firm: **McDonald Hopkins PLC**<br>Title:<br>eMail: sgross@mcdonaldhopkins.com<br>39533 Woodward Ave. Ste 318, Bloomfield Hills MI 48304 (USA)<br>**248-646-5070** |
| Gonzalez-Group | 1428 | 6/15/2009 | Name: **Stephen M. Gross**<br>Law Firm: **McDonald Hopkins PLC**<br>Title:<br>eMail: sgross@mcdonaldhopkins.com<br>39533 Woodward Ave. Ste 318, Bloomfield Hills MI 48304 (USA)<br>**248-646-5070** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **GP Strategies Corporation, General Physics Corporation, and Sandy Corporation** | 794 | 6/12/2009 | Name: **Mark J. Friedman**<br>Law Firm: **McDonald Hopkins PLC**<br>Title:<br>eMail:<br>DLA PIPER LLP, 1251 Avenue of the Americas, New York NY 10020-1104 (USA)<br>**212-335-4500** |
| **Granger Electric Company** | 706 | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail:<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313.965.8572** |
| **Grubb & Ellis Management Services, Inc.** | 878 | 6/12/2009 | Name: **Brian M. Graham**<br>Law Firm: **Smith Amundsen, LLC**<br>Title:<br>eMail:<br>150 North Michigan Avenue, Suite 3300, Chicago IL 60601 (USA)<br>**312.894.3200** |
| **Grupo Antolin North America** | 1321 | 6/15/2009 | Name: **John A. Simon**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detoit MI 48226-3489 (USA)<br>**313.234.7100** |
| **Grupo Industrial Bocar SA de CV dba Fugra, SA de CV** | 920 | 6/15/2009 | Name: **Nichael G. Cruse**<br>Law Firm: **Warner, Norcross & Judd LLP**<br>Title:<br>eMail:<br>2000 Town Center, Suite 2700, Southfield M 48075<br>**248.784.5131** |
| **Guardian Parties** | 995 | 6/15/2009 | Name: **Scott A. Wolfson**<br>Law Firm: **Bush Seyferth & Paige PLLC**<br>Title:<br>eMail: wolfson@bsplaw.com<br>3001 W. Big Beaver Rd., Suite 600, Troy MI 48084 (USA)<br>**248-822-7803** |
| **Hagemeyer, N.A. America and certain of its affiliates** | 2173 | 6/22/2009 | Name: **David Wander**<br>Law Firm: **Davidoff Maltio & Hutcher LLP**<br>Title:<br>eMail: dhw@dmlegal.com<br>605 Third Avenue, 34th Floor, New York NY 10158 (USA)<br>**212-557-7200** |
| **Harry Major Machine & Tool Company** | 1962 | 6/19/2009 | Name: **Karin F. Avery**<br>Law Firm: **Silverman & Morris, P.L.L.C.**<br>Title:<br>eMail: avery@silvermanmorris.com<br>7115 Orchard Lake Road Suite 500, West Bloomfield MI 48322 (USA)<br>**248-539-1330** |
| **Hayman Management Co.** | 814 | 6/12/2009 | Name: **Kathleen H. Klaus**<br>Law Firm: **Silverman & Morris, P.L.L.C.**<br>Title:<br>eMail: khk@maddinhauser.com<br>Maddin, Hauser, Wartell, Roth & Heller, P.C. - 28400 Northwestern Hwy., 3rd Floor, Southfield MI 48034 (USA)<br>**248.359.7520** |
| **HCA, Inc.** | 1221 | 6/15/2009 | Name: **Diane Carlisle**<br>Law Firm:<br>Title: President<br>eMail:<br>5300 Plains Rd, Eaton Rapids MI 48827 (USA) |
| **Healthtrax international, Inc.** | 1264 | 6/15/2009 | Name: **Lisa M. Liegeot**<br>Law Firm: **Healthtrax International, Inc.**<br>Title: General Counsel<br>eMail:<br>2345 Main Street, Glastonbury CT 06033<br>**860.633.5572 x256** |
| **Hella KGaA Hueck & Co., Hella Corporate Center USA, Inc., and certain affiliated entities** | 1409 | 6/15/2009 | Name: **Richard H. Wyron**<br>Law Firm: **Orrick, Herrington & Sutcliffe LLP**<br>Title:<br>eMail:<br>Columbia Center 1152 15th Street, N.W., Washington DC 20005-1706 (USA)<br>**202-339-8400** |
| **Henkel Corporation** | 893 | 6/12/2009 | Name: **Gordon J. Toering**<br>Law Firm: **Warner Norcross & Judd LLP**<br>Title:<br>eMail: gtoering@wnj.com<br>900 Fifth Third Center, 111 Lyon Street, NW, Grand Rapids MI 49503 (USA)<br>**616.752.2185** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| Supplier | | | | |
|---|---|---|---|---|
| Henniges Automotive Holding, Inc. and certain of its affiliates and subsidiaries | 1426 | 6/15/2009 | | Name: **Ann Marie Uetz**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Hertz Corporation | 975 | 6/15/2009 | | Name: **Richard F. Hahn**<br>Law Firm: **Debevoise & Plimpton LLP**<br>Title:<br>eMail:<br>919 Third Avenue, New York NY 10022 (USA)<br>**212-909-6000** |
| Hewlett-Packard Company and Electronic Data Systems, LLC | 1112 | 6/15/2009 | | Name: **Jennifer L. Nassiri**<br>Law Firm: **DLA Piper LLP**<br>Title:<br>eMail: karol.denniston@dlapiper.com<br>550 South Hope Street, Suite 2300, Los Angeles CA 90071-2678 (USA)<br>**213-330-7700** |
| Hewlett-Packard Company, Electronic Data Systems, LLC, and Hewlett-Packard Financial Services Compan | 2378 | 6/24/2009 | | Name: **Jennifer L. Nassiri**<br>Law Firm: **DLA Piper LLP**<br>Title:<br>eMail: jennifer.nassiri@dlapiper.com<br>550 South Hope Street, Suite 2300, Los Angeles CA 90071-2678 (USA)<br>**213-330-7700** |
| Hewlett-Packard Financial Services Company and certain HPFS affiliates | 1115 | 6/15/2009 | | Name: **Jennifer L. Nassiri**<br>Law Firm: **DLA Piper LLP**<br>Title:<br>eMail: karol.denniston@dlapiper.com<br>550 South Hope Street, Suite 2300, Los Angeles CA 90071-2678 (USA)<br>**213-330-7700** |
| Hilite Industries, Inc. | 854 | 6/15/2009 | | Name: **Stuart A. Laven, Jr.**<br>Law Firm: **Benesh Friedlander Coplan & Aronoff LLP**<br>Title:<br>eMail:<br>200 Public Square, Suite 2300, Cleveland OH OH 44114<br>**216.363.4500** |
| Hirata Corporation of America | 2371 | 6/24/2009 | | Name: **Mark R. Owens**<br>Law Firm: **Barnes & Thornburg LLP**<br>Title:<br>eMail: mowens@btlaw.com<br>11 South Meridian Street, Indianapolis IN 46204 (USA)<br>**317-236-1313** |
| Hirata Corporation of America | 941 | 6/12/2009 | | Name: **Mark R. Owens**<br>Law Firm: **Barnes & Thornburg LLP**<br>Title:<br>eMail: mowens@btlaw.com<br>11 South Meridian Street, Indianapolis IN 46204 (USA)<br>**317-236-1313** |
| Hirotec America, Inc. | 1326 | 6/15/2009 | | Name: **Ryan D. Heilman**<br>Law Firm: **Schafer and Weiner, PLLC**<br>Title:<br>eMail: rheilman@schaferandweiner.com<br>40950 Woodward Ave. Ste. 100, Bloomfield Hills MI 48304 (USA)<br>**248-540-3340** |
| Hitachi Automotive Products (USA) | 1156 | 6/15/2009 | | Name: **Paul J. Ricotta**<br>Law Firm: **Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**<br>Title:<br>eMail:<br>One Financial Center, Boston MA 02111 (USA)<br>**617-542-6000** |
| Hitachi Cable Indiana, Inc. | 1151 | 6/15/2009 | | Name: **Paul J. Ricotta**<br>Law Firm: **Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**<br>Title:<br>eMail:<br>One Financial Center, Boston MA 02111 (USA)<br>**617-542-6000** |
| Hitachi, Ltd. | 1149 | 6/15/2009 | | Name: **Paul J. Ricotta**<br>Law Firm: **Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**<br>Title:<br>eMail:<br>One Financial Center, Boston MA 02111 (USA)<br>**617-542-6000** |
| Honeywell International Inc. | 1087 | 6/15/2009 | | Name: **Michael E. Hastings**<br>Law Firm: **LeClairRyan, a Professional Corporation**<br>Title: Esquire<br>eMail:<br>830 Third Avenue, Fifth Floor, New York NY 10022 (USA)<br>**212-446-5075** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| Horiba Instruments Inc. and Horiba Ltd. | 883 | 6/12/2009 | Name: **Donald J. Hutchinson**<br>Law Firm: **Miller Canfield Paddock and Stone, PLC**<br>Title:<br>eMail: hutchinson@millercanfield.com<br>150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA)<br>**313-963-6420** |
| Hutchinson and related entities | 1447 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue, 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| ICM Systems, LLC and Ingersoll Prodction | 1047 | 6/15/2009 | Name: **Mark H. Shapiro**<br>Law Firm: **Steinberg Shapiro & Clark**<br>Title:<br>eMail: shapiro@steinbergshapiro.com<br>24901 Northwestern Hwy. Suite 611, Southfield MI 48075 (USA)<br>**248-352-4700** |
| Ideal Contracting, LLC | 799 | 6/12/2009 | Name: **Paul R. Hage**<br>Law Firm: **Steinberg Shapiro & Clark**<br>Title:<br>eMail: phage@jaffelaw.com<br>JAFFE RAITT HEUER & WEISS, PC, 27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA)<br>**248-351-3000** |
| Ideal Setech Share The Space, LLC | 791 | 6/12/2009 | Name: **Paul R. Hage**<br>Law Firm: **Steinberg Shapiro & Clark**<br>Title:<br>eMail: phage@jaffelaw.com<br>Jaffe Raitt Heuer & Weiss, P.C., 27777 Franklin Road, Ste 2500, Southfield MI 48034 (USA)<br>**248-351-3000** |
| Ideal Setech, LLC | 811 | 6/12/2009 | Name: **Paul R. Hage**<br>Law Firm: **Steinberg Shapiro & Clark**<br>Title:<br>eMail: phage@jaffelaw.com<br>Jaffe Raitt Heuer, 27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA)<br>**248.351.3000** |
| Illinois Tool Works, Inc. | 2022 | 6/19/2009 | Name: **Mark L. Radtke**<br>Law Firm: **Shaw Gussis Fishman Glantz Wolfson & Towbin LLC**<br>Title:<br>eMail:<br>321 N. Clark St., Suite 800, Chicago IL 60654 (USA)<br>**312-541-0151** |
| Industrial Transport Inc. | 2240 | 6/15/2009 | Name: **Ted E. Crawford**<br>Law Firm: **Industrial Transport Inc.**<br>Title: Chief Financial Officer<br>eMail: tcrawford@industrialtransport.com<br>2330 East 79th Street, Cleveland OH 44104 (USA)<br>**216-881-5052 Ext. 100** |
| Inergy Automotive Systems | 1310 | 6/15/2009 | Name: **Mark A. Aiello**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| Infineon Technologies North America Corp. | 2156 | 6/22/2009 | Name: **Debra S. Turetsky**<br>Law Firm: **Reed Smith LLP**<br>Title:<br>eMail: dturetsky@reedsmith.com<br>599 Lexington Avenue, 28th Floor, New York NY 10022 (USA)<br>**212-521-5400** |
| Inland Waters Pollution Control | 1200 | 6/15/2009 | Name: **Paul R. Hage**<br>Law Firm: **Jaffe Raitt Heuer & Weiss, PC**<br>Title:<br>eMail: phage@jaffelaw.com<br>27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA)<br>**248-351-3000** |
| International Automotive Components Group North America Inc. | 1176 | 6/15/2009 | Name: **Carey D. Schreiber**<br>Law Firm: **Winston & Strawn, LLP**<br>Title:<br>eMail: cschreiber@winston.com<br>200 Park Avenue, New York NY 10166-4193 (USA)<br>**212-294-6700** |
| International Business Machines Corporation | 1092 | 6/15/2009 | Name: **James L. Bromley**<br>Law Firm: **Cleary Gottlieb Steen & Hamilton LLP**<br>Title:<br>eMail:<br>One Liberty Plaza, New York NY 10006 (USA)<br>**212-225-2000** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| Supplier | No. | Date | Contact |
|---|---|---|---|
| International Business Machines Corporation | 1092 | 6/15/2009 | **Name: James L. Bromley**<br>Law Firm: **Cleary Gottlieb Steen & Hamilton LLP**<br>Title:<br>eMail:<br>One Liberty Plaza, New York NY 10006 (USA)<br>**212-225-2000** |
| international Industrial Contracting Co. | 1306 | 6/15/2009 | **Name: John Ruemenapp**<br>Law Firm: **Weisman, Young & Ruemenapp**<br>Title:<br>eMail:<br>30100 Telegraph Road, Suite 428, Bingham Farms MI 48025 (USA)<br>**248.258.2700** |
| Internet Brands, Inc. | 1380 | 6/15/2009 | **Name: Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Inteva Products, LLC | 1400 | 6/15/2009 | **Name: Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave., New York NY 10017 (USA)<br>**212-818-1110** |
| Intra Corporation | 1300 | 6/15/2009 | **Name: Steven H. Hilfinger**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| Isuzu Motors Limited | 1463 | 6/15/2009 | **Name: Eric Lopez Schnabel**<br>Law Firm: **Dorsey & Whitney LLP**<br>Title:<br>eMail:<br>250 Park Avenue, New York NY 10177 (USA)<br>**212.415.9368** |
| J.B. Hunt Transport Services, Inc. | 1080 | 6/15/2009 | **Name: Steven Montgomery**<br>Law Firm:<br>Title:<br>eMail:<br>14 Wall street, 27th Floor, New York NY 10005 (USA)<br>**212.323.7070** |
| J.L. French Automotive Casting, Inc. | 1043 | 6/15/2009 | **Name: Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>eMail: mkshaver@varnumlaw.com<br>PO Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| J.L. French Automotive Castings, Inc, and Nelson Metal Products LLC | 1043 | 6/15/2009 | **Name: Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>eMail: mkshaver@varnumlaw.com<br>Bridgewater Place; P.O. Box 352 , Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| J2 Management Corp. | 894 | 6/12/2009 | **Name: Patrick J. Kukla**<br>Law Firm: **Carson Fischer, PLC**<br>Title:<br>eMail:<br>4111 Andover Road, West 2nd Floor, Bloomfield Hills MI 48302 (USA)<br>**248.644.4840** |
| JAC Products, Inc. | 1259 | 6/15/2009 | **Name: Jeffrey C. Hampton**<br>Law Firm: **Saul Ewing LLP**<br>Title:<br>eMail:<br>Central Square West, 1500 Market Street, 38th Floor, Philadelphia PA 9102<br>**215.972.7118/8662** |
| Jackson-Dawson Communications, Inc. | 908 | 6/12/2009 | **Name: Robert Sidorsky**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue , New York NY 10017 (USA)<br>**212-818-1110** |
| JASCO international, LLC | 1261 | 6/15/2009 | **Name: James A. Plemmons**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail:<br>500 Woodward Ave., Suite 4000, Detroit MI 48226<br>**313.223.3500** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| Jason Incorporation dba Janesville Acoustics | 1334 | 6/15/2009 | Name: **James S. Carr**<br>Law Firm: **Kelley Drye & Warren LLP**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212.808.7800** |
|---|---|---|---|
| JD Power and Associates | 785 | 6/12/2009 | Name: **David N. Crapo, Esq.**<br>Law Firm: **Gibbons P.C.**<br>Title:<br>eMail: dcrapo@gibbonslaw.com<br>One Gateway Center, Newark NJ 07102-5310 (USA)<br>**973.596.4523** |
| Jefferson Wells International, Inc. | 1683 | 6/17/2009 | Name: **Tonya A. Trumm**<br>Law Firm: **Michael Best & Friedrich LLP**<br>Title:<br>eMail: tatrumm@michaelbest.com<br>100 East Wisconsin Avenue, Suite 3300, Milwaukee WI 53202-4108 (USA)<br>**414-271-6560** |
| Jernberg Industries, Inc. | 1454 | 6/15/2009 | Name: **Ann Marie Uetz**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| John E. Green Company | 767 | 6/12/2009 | Name: **William L. Rosin**<br>Law Firm: **Dawda, Mann, Mulcahy & Sadler, PLC**<br>Title:<br>eMail:<br>39533 Woodward Avenue, Suite 200, Bloomfield Hills MI 48304 (USA)<br>**248.642.3700** |
| Johnson Controls, Inc., Intertec Systems, LLC, JCIM, LLC | 1105 | 6/15/2009 | Name: **James A. Plemmons**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| Johnson Matthey Vehicle Testing & Development, LLC, Johnson Matthey Inc. | 1198 | 6/15/2009 | Name: **Teresa K.D. Currier**<br>Law Firm: **Saul Ewing LLP**<br>Title:<br>eMail: TCurrier@saul.com<br>Suite 1200, 222 Delaware Avenue, Wilmington DE 19899 (USA)<br>**302-421-6826** |
| Joseph Cargenlli and Hydrogenics Corporation | 1802 | 6/18/2009 | Name: **William F. Gray Jr.**<br>Law Firm: **Troys LLP**<br>Title:<br>eMail:<br>237 Park Ave., New York NY 10017 (USA)<br>**212-880-6000** |
| Joseph Cargenlli and Hydrogenics Corporation | 1802 | 6/18/2009 | Name: **William F. Gray Jr.**<br>Law Firm: **Troys LLP**<br>Title:<br>eMail:<br>237 Park Ave., New York NY 10017 (USA)<br>**212-880-6000** |
| JTEKT Automotive Tennessee-Vonore, Co., JTEKT Automotive Tennessee-Morristown, Inc., Toyoda Machiner | 1384 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Kayaba Industry, Co. Ltd. | 2006 | 6/19/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Keifer GmbH (MP Beteiligungs) | 898 | 6/15/2009 | Name: **Gordon J. Toering**<br>Law Firm: **Warner Norcross & Judd LLP**<br>Title:<br>eMail:<br>900 Fifth Third Center, 111 Lyon Street, NW, Grand Rapids MI 49503<br>**616.752.2185** |
| Kelly Services, Inc. | 2324 | 6/23/2009 | Name: **Garvan F. McDaniel**<br>Law Firm: **Bifferato Gentilotti LLC**<br>Title:<br>eMail:<br>800 N. King Street, Plaza Level, Wilmington DE 19801 (USA)<br>**302-429-1900** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Key Plastics | 1351 | 6/15/2009 | Name: **Colin T. Darke** |
| | | | Law Firm: **Bodman LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 1901 St. Antoine, 6th Floor at Ford Field, Detroit MI 48226 |
| | | | **313.393.7585** |
| Knight Facilities Management, Inc. and Caravan/Knight Facilities Management, LLC | 964 | 6/13/2009 | Name: **Susan M. Cook** |
| | | | Law Firm: **Lambert, Leser, Isackson, Cook & Giunta, P.C.** |
| | | | Title: |
| | | | eMail: |
| | | | 309 Davidosn Building; 916 Washington Avenue, Bay City MI 48708 (USA) |
| | | | **989-893-3518** |
| Koch Enterprises, Inc. | 694 | 6/11/2009 | Name: **Mark R. Owens** |
| | | | Law Firm: **Barnes & Thornburg LLP** |
| | | | Title: |
| | | | eMail: mowens@btlaw.com |
| | | | 11 South Meridian Street, Indianapolis IN 46204 (USA) |
| | | | **317-236-1313** |
| Kohlberg & Co LLC dba PGW, LLC | 1396 | 6/15/2009 | Name: **Aaron L. Hammer** |
| | | | Law Firm: **Freeborn & Peters, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 311 South Wacker Drive, Suite 3000, Chicago IL 60606-6677 |
| | | | **312.360.6000** |
| Kolbenschmidt-Pierburg AG | 2003 | 6/19/2009 | Name: **Robert Sidorsky** |
| | | | Law Firm: **Butzel Long, a professional corporation** |
| | | | Title: |
| | | | eMail: sidorsky@butzel.com |
| | | | 380 Madison Avenue 22nd Floor, New York NY 10017 (USA) |
| | | | **212-818-1110** |
| Kolbenschmidt-Pierburg AG | 1439 | 6/15/2009 | Name: **Robert Sidorsky** |
| | | | Law Firm: **Butzel Long, a professional corporation** |
| | | | Title: |
| | | | eMail: sidorsky@butzel.com |
| | | | 380 Madison Ave. 22nd Floor, New York NY 10017 (USA) |
| | | | **212-818-1110** |
| KONE, Inc. | 742 | 6/12/2009 | Name: **J. Alex Kress** |
| | | | Law Firm: **Riker, Danzig, Scherer, Hyland, Perretti LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Headquarters Plaza, One Speedwell Avenue, Morristown NJ 07962 (USA) |
| | | | **973.538.0800** |
| Kongsberg Automotive, Inc., Kongsberg Driveline Systems I, Inc., Kongsberg Driveline Systems S de RL | 753 | 6/12/2009 | Name: **Marc N. Swanson** |
| | | | Law Firm: **MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.** |
| | | | Title: |
| | | | eMail: swansonm@millercanfield.com |
| | | | 150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-496-7591** |
| Kuka Systems Corp. North America F/K/A Kuka Flexible Production Systems Corp. | 1123 | 6/15/2009 | Name: **Marc M. Bakst** |
| | | | Law Firm: **Bodman LLP** |
| | | | Title: |
| | | | eMail: mbakst@bodmanllp.com |
| | | | 6th Floor at Ford Field; 1091 St. Antoine Street, Detroit MI 48226 (USA) |
| | | | **313-393-7530** |
| Kyklos Bearing International | 1403 | 6/15/2009 | Name: **Ann Marie Uetz** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA) |
| | | | **313-234-7100** |
| L & A Architects, Inc. | 907 | 6/12/2009 | Name: **Steven R. Pohl** |
| | | | Law Firm: **Cheli & Lyshak, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 26154 Woodward Avenue; P.O. Box 1257, Royal Oak MI 48068-1257 (USA) |
| | | | **248-545-1700** |
| L.K. Machinery, Inc. | 766 | 6/12/2009 | Name: **Gordon J. Toering** |
| | | | Law Firm: **WARNER NORCROSS & JUDD LLP** |
| | | | Title: |
| | | | eMail: gtoering@wnj.com |
| | | | 900 Fifth Third Center; 111 Lyon Street, NW, Grand Rapids MI 49503 (USA) |
| | | | **616-752-2185** |
| Laclede Gas Company | 2153 | 6/12/2009 | Name: **Rick E. Zucker** |
| | | | Law Firm: **Laclede Gas Company** |
| | | | Title: Assistance General Counsel |
| | | | eMail: rzucker@lacledegas.com |
| | | | 720 Olive Street Room 1520, St. Louis MO 63101 (USA) |
| | | | **314-342-0532** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Lansing Board of Water & Light** | **871** | 6/12/2009 | Name: **Donald J. Hutchinson** |
| | | | Law Firm: **Miller, Canfield, Paddock and Stone, P.L.C.** |
| | | | Title: |
| | | | eMail: hutchinson@millercanfield.com |
| | | | 150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA) |
| | | | **313.963.6420** |
| **Lapeer Metal Stamping Co., Inc.** | **890** | 6/12/2009 | Name: **Patrick J. Kukla** |
| | | | Law Firm: **Carson Fischer, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 4111 Andover Road, West - 2nd Floor, Bloomfield Hills MI 48302 (USA) |
| | | | **248.644.4840** |
| **Lapeer Metal Stamping Companies, Inc.** | **1664** | 6/17/2009 | Name: **Patrick J. Kukla** |
| | | | Law Firm: **Carson Fischer, P.L.C.** |
| | | | Title: |
| | | | eMail: |
| | | | 4111 Andover Rd., West-2nd Floor, Bloomfield Hills MI 48302 (USA) |
| | | | **248-644-4840** |
| **LBA Realty Fund III-Company IX, LLC** | **1432** | 6/15/2009 | Name: **Ivan M. Gold** |
| | | | Law Firm: **Allen Matkins Leck Gamble Mallory & Natsis LLP** |
| | | | Title: |
| | | | eMail: igold@allenmatkins.com |
| | | | Three Embarcadero Center 12th Floor, San Francisco CA 94111-4074 (USA) |
| | | | **415-837-1515** |
| **Lear Corporation** | **1100** | 6/15/2009 | Name: **Marc M. Bakst** |
| | | | Law Firm: **BODMAN LLP** |
| | | | Title: |
| | | | eMail: mbakst@bodmanllp.com |
| | | | 6th Fllor Ford Field; 1901 St. Antoine Street, Detroit MI 48026 (USA) |
| | | | **313-393-7530** |
| **Leggett and Platt, Incorporated** | **2168** | 6/22/2009 | Name: **John E. Jureller, Jr.** |
| | | | Law Firm: **Klestadt & Winters LLP** |
| | | | Title: |
| | | | eMail: jjureller@Klestadt.com |
| | | | 292 Madison Avenue, 17th Floor, New York NY 10017 (USA) |
| | | | **212-972-3000** |
| **LEM USA, Inc.** | **1317** | 6/15/2009 | Name: **James S. Carr** |
| | | | Law Firm: **Kelley Drye & Warren LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 101 Park Avenue, New York NY 10178 (USA) |
| | | | **212.808.7800** |
| **Len Industries, Inc.** | **987** | 6/15/2009 | Name: **Scott A. Wolfson** |
| | | | Law Firm: **Bush Seyferth & Paige PLLC** |
| | | | Title: |
| | | | eMail: wolfson@bsplaw.com |
| | | | 3001 W. Big Beaver Rd., Suite 600, Troy MI 48084 (USA) |
| | | | **248-822-7803** |
| **LG Electronics USA, Inc.** | **1036** | 6/15/2009 | Name: **Carey D. Schreiber** |
| | | | Law Firm: **Winston & Strawn, LLP** |
| | | | Title: |
| | | | eMail: cschreiber@winston.com |
| | | | 200 Park Avenue , New York NY 10166-4193 (USA) |
| | | | **212-294-6700** |
| **Lioho Light Metal (Kunshan) Co., Ltd.** | **851** | 6/15/2009 | Name: **Marc E. Richards** |
| | | | Law Firm: **Blank Rome LLP** |
| | | | Title: |
| | | | eMail: |
| | | | The Chrysler Building, 405 Lexington Avenue, New York NY 10174 |
| | | | **212.885.5000** |
| **Liufeng Machinery Industry Co., Ltd.** | **848** | 6/15/2009 | Name: **Marc E. Richards** |
| | | | Law Firm: **Blank Rome, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | The Chrysler Building, 405 Lexington Avenue, New York NY 10174 |
| | | | **212.885.5000** |
| **LMC Phase II, L.L.C.** | **2214** | 6/23/2009 | Name: **Richard Epling** |
| | | | Law Firm: **Pillsbury Winthrop Shaw Pttman LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 1540 Broadway, New York NY 10036-4039 (USA) |
| | | | **212-858-1000** |
| **LMC Phase II, LLC** | **198** | 6/15/2009 | Name: **Richard Epling** |
| | | | Law Firm: **Pillsbury Winthrop Shaw Pittman LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 1540 Broadway , New York NY 10036-4039 (USA) |
| | | | **212-858-1000** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| LMC Phase II, LLC and PSEG Resources LLC | 1098 | 6/15/2009 | Name: **Richard L. Epling**<br>Law Firm: **Pillsbury Winthrop Shaw Pittman LLP**<br>Title:<br>eMail:<br>1540 Broadway, New York NY 10036-4039<br>**212.858.1000** |
| LMC Resources Capital Limited Partnership | 956 | 6/12/2009 | Name: **Richard Epling**<br>Law Firm: **Pillsbury Winthrop Shaw Pittman LLP**<br>Title:<br>eMail:<br>1540 Broadway , New York NY 10036-4039 (USA)<br>**212-858-1000** |
| Logistics Insight Corp. | 750 | 6/12/2009 | Name: **Michael A. Nedelman**<br>Law Firm: **Nedelman Gloetzner, PLLC**<br>Title:<br>eMail: mnedelman@nglegal.com<br>28580 Orchard Lake Road, Suite 140, Farmington Hills MI 48334 (USA)<br>**248.855.8888** |
| Louis Padnos Iron & Metal Company | 2132 | 6/18/2009 | Name: **Scott Wolters**<br>Law Firm: **Louis Padnos Iron & Metal Company**<br>Title:<br>eMail:<br>185 West 8th Street, Holland MI 49423 (USA)<br>**616-796-7164** |
| Lowe's Companies, Inc. | 1419 | 6/15/2009 | Name: **Eric R. Markus**<br>Law Firm: **Wilmer Cutler Pickering Hale and Dorr LLP**<br>Title:<br>eMail: eric.markus@wilmerhale.com<br>1875 Pennsylvania Ave., NW, Washington DC 20006 (USA)<br>**202-663-6000** |
| Macquarie Equipment Finance, LLC | 1348 | 6/15/2009 | Name: **Christopher J. Battaglia**<br>Law Firm: **Halperin, Battaglia Raicht, LLP**<br>Title:<br>eMail:<br>555 Madison Avenue, 9th Floor, New York NY 10022 (USA)<br>**212.765.9100** |
| Magneti Marelli Powertrain USA, LLC, Magnetti Marelli North America, Automotive Lightning LLC, et. a | 731 | 6/12/2009 | Name: **William L. Rosin**<br>Law Firm: **Dawda, Mann, Mulcahy & Sadler, PLC**<br>Title:<br>eMail:<br>39533 Woodward Avenue, Suite 200, Bloomfield Hills MI 48304 (USA) |
| Mahar Tool Supply Company, Inc. | 963 | 6/12/2009 | Name: **Susan M. Cook**<br>Law Firm: **Lambert, Leser, Isackson, Cook & Giunta, P.C.**<br>Title:<br>eMail:<br>309 Davidson Building; 916 Washington Avenue, Bay City MI 48708 (USA)<br>**989-893-3518** |
| Mahle Industries, Inc. | 903 | 6/12/2009 | Name: **Gordon J. Toering**<br>Law Firm: **Warner Norcross & Judd LLP**<br>Title:<br>eMail: gtoering@wnj.com<br>900 Fifth Third Center; 111 Lyon Street, NW, Grand Rapids MI 49503 (USA)<br>**616.752.2185** |
| Mando Corporation | 1170 | 6/15/2009 | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail: mkshaver@vernumlaw.com<br>Bridgewater Place; P.O. Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| Mann+Hummel USA, Inc., Mann+Hummel GMBH, Mann+Hummel Advanced Filtration Concepts, Inc., Mann+Hummel | 1450 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Market Insight Corporation | 1050 | 6/11/2009 | Name: **Rich Falcone**<br>Law Firm: **Market Insight Corporation**<br>Title:<br>eMail:<br>2479 East Bayshore Rd., Suite 809, Palo Alto CA 94303 (USA)<br>**650.320.8222** |
| Martin Transportation Systems, Inc. | 884 | 6/12/2009 | Name: **Terry L. Zabel**<br>Law Firm: **Rhoades McKee**<br>Title:<br>eMail: tlzabel@rhoadesmckee.com<br>161 Ottawa Ave., NW, Ste 600, Grand Rapids MI 49503 (USA)<br>**616-235-3500** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| Martin Transportation Systems, Inc. | DDN0004 | 6/12/2009 | Name: **Terry L. Zabel** |
| | | | Law Firm: **Rhoades McKee** |
| | | | Title: |
| | | | eMail: tlzable@rhoadesmckee.com |
| | | | 161 Ottawa Ave., NW Suite 600, Grand Rapids MI 49503 (USA) |
| | | | **616-235-3500** |

| Martinrea International, Inc. and its subsidiaries | 1425 | 6/15/2009 | Name: **Robert Sidorsky** |
| | | | Law Firm: **Butzel Long, a professional corporation** |
| | | | Title: |
| | | | eMail: sidorsky@butzel.com |
| | | | 380 Madison Ave. 22nd Floor, New York NY 10017 (USA) |
| | | | **212-818-1110** |

| Material Management Services, Inc. | 667 | 6/11/2009 | Name: **Marc B. Merklin** |
| | | | Law Firm: **Brouse McDowell** |
| | | | Title: |
| | | | eMail: mmerklin@brouse.com |
| | | | 388 S. Main Street, Suite 500, Akron OH 44311 (USA) |
| | | | **330-535-5711** |

| Maxxis International - USA | 1081 | 6/12/2009 | Name: **Brad Barrett** |
| | | | Law Firm: |
| | | | Title: |
| | | | eMail: bbarrett@maxxis.com |
| | | | 545 Old Peachtree Road, Suwanee GA 30024-2944 (USA) |
| | | | **678-407-6700** |

| McGraw-Hill Companies, Inc. | 788 | 6/12/2009 | Name: **David N. Crapo** |
| | | | Law Firm: |
| | | | Title: |
| | | | eMail: dcrapo@gibbonslaw.com |
| | | | Gibbons P.C., One Gateway Center, Newark NY 07102-5310 (USA) |
| | | | **973-596-4523** |

| MCM Management Corp., Inc. | 1832 | 6/12/2009 | Name: **Don W. Belvins** |
| | | | Law Firm: **McAlpine & Associates, P.C.** |
| | | | Title: |
| | | | eMail: dwblevins@mcalpinelawfirm.com |
| | | | 3201 University Dr. Suite 100, Auburn Hills MI 48326 (USA) |
| | | | **248-373-3700** |

| Meadville Forging Company and Carolina Forge Company | 1737 | 6/17/2009 | Name: **James M. Lawniczak** |
| | | | Law Firm: **Calfee, Halter & Griswold LLP** |
| | | | Title: |
| | | | eMail: jlawniczak@calfee.com |
| | | | 800 Superior Avenue Suite 1400, Cleveland OH 44114 (USA) |
| | | | **216-622-8200** |

| Medco Health Solutions, Inc. | 2012 | 6/19/2009 | Name: **Martin J. Weis** |
| | | | Law Firm: **Dilworth Paxson LLP** |
| | | | Title: |
| | | | eMail: mweis@dilworthlaw.com |
| | | | 1500 Market Street Suite 3500E, Philadelphia PA 19102-2101 (USA) |
| | | | **215-575-7000** |

| Medialink Worldwide | 1394 | 6/15/2009 | Name: **Miles Baum** |
| | | | Law Firm: **Davis & Gilbert LLP** |
| | | | Title: |
| | | | eMail: mbaum@dglaw.com |
| | | | 1740 Broadway, New York NY 10017 (USA) |
| | | | **212-468-4800** |

| Menlo Logistics, Inc. | 798 | 6/12/2009 | Name: **Robert D. Gordon** |
| | | | Law Firm: **Davis & Gilbert LLP** |
| | | | Title: |
| | | | eMail: rgordon@clarkhill.com |
| | | | CLARK HILL PLC, 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA) |
| | | | **313-965-8572** |

| Midway Products Group, Inc. | 957 | 6/12/2009 | Name: **Mark S. Frankel** |
| | | | Law Firm: **Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C.** |
| | | | Title: |
| | | | eMail: mark.frankel@couzens.com |
| | | | 39395 W. Twelve Mile Road, Suite 200, Farmington Hills MI 48331 (USA) |
| | | | **248-489-8600** |

| MIS Environmental Services, Inc. | 1086 | 6/15/2009 | Name: **Susan M. Cook** |
| | | | Law Firm: **Lambert, Leser, Isackson, Cook & Giunta, PC** |
| | | | eMail: |
| | | | 309 Davidson Building; 916 Washington Avenue, Bay City MI 48708 (USA) |
| | | | **989-893-3518** |

| Mitsuba Corp. | 1379 | 6/15/2009 | Name: **Stephen M. Gross** |
| | | | Law Firm: **McDonald Hopkins PLC** |
| | | | Title: |
| | | | eMail: sgross@mcdonaldhopkins.com |
| | | | 39533 Woodward Ave. Ste 318, Bloomfield Hills MI 48304 (USA) |
| | | | **248-646-5070** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Supplier | No. | Date | Contact |
|---|---|---|---|
| Mitsubishi Heavy Industries | 1322 | 6/15/2009 | Name: **David M. Bennett**<br>Law Firm: **Thompson & Knight LLP**<br>Title:<br>eMail: david.bennett@tklaw.com<br>1722 Routh Street, Suite 1500, Dallas TX 75201 (USA)<br>**214.969.1700** |
| Mitsuboshi Belting, LTD. | 864 | 6/15/2009 | Name: **Amy E. Evans**<br>Law Firm: **Cross & Simon, LLC**<br>Title:<br>eMail:<br>913 North Market Street, 11th Floor, Wilmington DE 19801<br>**302.777.4200** |
| Modine Manufacturing Company | 1417 | 6/15/2009 | Name: **Christopher Combest**<br>Law Firm: **Quarles & Brady LLP**<br>Title:<br>eMail: christopher.combest@quarles.com<br>300 North LaSalle Street Suite 4000, Chicago IL 60654 (USA)<br>**312-715-5000** |
| Modineer Co. | 1039 | 6/15/2009 | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail: mkshaver@varnumlaw.com<br>PO Box 352, Grand Rapids MI 49501-0352 (USA)<br>**616-336-6000** |
| Mold Masters Co. | 1649 | 6/16/2009 | Name: **P. Warren Hunt**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>Title:<br>eMail:<br>500 Woodward Ave. Suite 2500, Detroit MI 48226 (USA)<br>**313-961-0200** |
| Mold Masters Co., | 2342 | 6/23/2009 | Name: **P. Warren Hunt**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>Title:<br>eMail:<br>500 Woodward Ave, Suite 2500, Detroit MI 48226 (USA)<br>**313-961-0200** |
| Molded Fiber Glass Co. | 1309 | 6/15/2009 | Name: **Jeffrey L. Coxon**<br>Law Firm: **Warren and Young PLL**<br>Title:<br>eMail:<br>134 west 46th Street, Ashtabula OH 44050-2300 (USA)<br>**440.997.6275** |
| Monster Worldwide, Inc. d/b/a Monster MediaWorks | 1312 | 6/15/2009 | Name: **Jeffrey R. Waxman**<br>Law Firm: **Morris James LLP**<br>Title:<br>eMail: jwaxman@morrisjames.com<br>500 Delaware Avenue, Suite 1500, Wilmington DE 19899-2306 (USA)<br>**302-888-6800** |
| Morgan Adhesives Company Inc. d/b/a MACtac and Bemis Company Inc. | 1814 | 6/18/2009 | Name: **Leslie S. Barr**<br>Law Firm: **Windels, Marx, Lane & Mittendorf, LLP**<br>Title:<br>eMail:<br>156 West 56th Street, New York NY 10019 (USA)<br>**212-237-1000** |
| MPS Group, Inc. | 744 | 6/12/2009 | Name: **Paul R. Hage**<br>Law Firm: **Jaffe Raitt Heuer & Weiss, PC**<br>Title:<br>eMail: phage@jaffelaw.com<br>27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA)<br>**248-351-3000** |
| Mubea, Inc. | 773 | 6/12/2009 | Name: **Gordon J. Toering**<br>Law Firm: **WARNER NORCROSS & JUDD LLP**<br>Title:<br>eMail: gtoering@wnj.com<br>900 Fifth Third Center, 111 Lyon Street, NW, Grand Rapids MI 49503 (USA)<br>**616-752-2185** |
| Nagel Precision, Inc. | 1064 | 6/13/2009 | Name: **Christopher A. Merritt**<br>Law Firm: **RJ Landau Partners, PLLC**<br>Title:<br>eMail: cmerritt@rjlps.com<br>5340 Plymouth Rd., Suite 200, Ann Arbor MI 48105 (USA)<br>**734.865.1580** |
| National Auto Radiator Mfg. Co. Ltd. | 1361 | 6/15/2009 | Name: **James E. DeLine**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>Title:<br>eMail:<br>500 Woodward Ave., Suite 2500, Detroit MI 48226 (USA)<br>**313.961.0200** |

General Motors Contract Assignment / Assumption
Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| **National Fuel Gas Distribution Corporation** | **866** | 6/12/2009 | Name: **Angela Z. Miller** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | PHILLIPS LYTE, LLP; One HSBC Center, Suite 3400, Buffalo NY 14203-2887 (USA) |
| | | | **716-847-8400** |
| **National Fuel Resources, Inc.** | **1827** | 6/18/2009 | Name: **Angela Z. Miller** |
| | | | Law Firm: **Phillips Lytle LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One HSBC Center Suite 3400, Buffalo NY 14203-2887 (USA) |
| | | | **716-847-8400** |
| **National Logistics Management Co.** | **790** | 6/12/2009 | Name: **Robert Gordon** |
| | | | Law Firm: **Phillips Lytle LLP** |
| | | | Title: |
| | | | eMail: rgordon@clarkhill.com |
| | | | Clark Hill PLC, 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA) |
| | | | **313-965-8572** |
| **National Logistics Management Co. (successor by merger to Artisan Container Services, LLC)** | **796** | 6/12/2009 | Name: **Robert D. Gordon** |
| | | | Law Firm: **Phillips Lytle LLP** |
| | | | Title: |
| | | | eMail: rgordon@clarkhill.com |
| | | | Clark Hill PLC, 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA) |
| | | | **313-965-8572** |
| **NBC Universal** | **1275** | 6/15/2009 | Name: **George Royle** |
| | | | Law Firm: **Latham & Watkins LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 885 Third Avenue Suite 1000, New York NY 10022 (USA) |
| | | | **212-906-1200** |
| **Neptune Orient Lines, Ltd. dba APL Logistics Transport, et. al** | **1330** | 6/15/2009 | Name: **Alyssa D. Englund** |
| | | | Law Firm: **Orrick, Herrington & Sutcliffe, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 666 Fifth Avenue, New York NY 10103-0002 |
| | | | **212.509.5000** |
| **New Mather Metals, Inc.** | **1740** | 6/17/2009 | Name: **Robert Sidorsky** |
| | | | Law Firm: **Butzel Long, a professional corporation** |
| | | | Title: |
| | | | eMail: sidorsky@butzel.com |
| | | | 380 Madison Ave. 22nd Floor, New York NY 10017 (USA) |
| | | | **212-818-1110** |
| **New United Motor Manufacturing** | **1118** | 6/15/2009 | Name: **Benjamin P. Deutsch** |
| | | | Law Firm: **Schnader Harrison Segal & Lewis LLP** |
| | | | Title: |
| | | | eMail: bdeutsch@Schnader.com |
| | | | 140 Broadway, Suite 3100, New York NY 10005 (USA) |
| | | | **212-973-8000** |
| **Newkirk Electric & Associates** | **1138** | 6/15/2009 | Name: **Gordon J. Toering** |
| | | | Law Firm: **Warner Norcross & Judd LLP** |
| | | | Title: |
| | | | eMail: gtoering@wnj.com |
| | | | 900 Fifth Third Center; 111 Lyon Street NW, Grand Rapids MI 49503 (USA) |
| | | | **616-752-2185** |
| **Newport Television** | **1458** | 6/15/2009 | Name: **Marshall Turner** |
| | | | Law Firm: **Husch Blackwell Sanders LLP** |
| | | | eMail: marshall.turner@huschblackwell.com |
| | | | 190 Carondelet Plaza Suite 600, St. Louis MO 63105 (USA) |
| | | | **314-480-1500** |
| **NGK Spark Plugs (U.S.A.), Inc,** | **1423** | 6/15/2009 | Name: **Robert Sidorsky** |
| | | | Law Firm: **Butzel Long, a professional corporation** |
| | | | Title: |
| | | | eMail: sidorsky@butzel.com |
| | | | 380 Madison Ave. 22nd Floor, New York NY 10017 (USA) |
| | | | **212-818-1110** |
| **Niles America Wintech, Inc.** | **1133** | 6/15/2009 | Name: **Michael C. Hammer** |
| | | | Law Firm: **Dickinson Wright PLLC** |
| | | | Title: |
| | | | eMail: jplemmons@dickinsonwright.com |
| | | | 500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA) |
| | | | **313-223-3500** |
| **Nisshinbo Automotive Corp.** | **1368** | 6/15/2009 | Name: **Robert Sidorsky** |
| | | | Law Firm: **Butzel Long, a professional corporation** |
| | | | Title: |
| | | | eMail: sidorsky@butzel.com |
| | | | 380 Madison Ave. 22nd Floor, New York NY 10017 (USA) |
| | | | **212-818-1110** |

General Motors Contract Assignment / Assumption

Exhibit: Logged Supplier Objections

| Supplier | Claim | Date | Contact |
|---|---|---|---|
| **Norfolk Southern Corporation, Norfolk Southern Railway, and Triple Crown Services Company** | **1235** | 6/15/2009 | Name: **David J. Baldwin**<br>Law Firm: **Potter Anderson & Corroon, LLP**<br>Title:<br>eMail:<br>Hercules Plaza, 6th Floor; 1313 North Market Street; P.O. Box 951, Wilmington DE 19801 (USA)<br>**302-984-6000** |
| **Norfolk Southern Corporation, Norfolk Southern Railway, and Triple Crown Services Company** | **1235** | 6/15/2009 | Name: **David J. Baldwin**<br>Law Firm: **Potter Anderson & Corroon LLP**<br>Title:<br>eMail:<br>Hercules Plaza, 6th Floor; 1313 North Market Street; P.O. Box 951, Wilmington DE 19801 (USA)<br>**302-984-6000** |
| **North American Acquisition Corporation d/b/a AMTEC Percision Products** | **1139** | 6/15/2009 | Name: **Diconza Law, P.C.**<br>Law Firm: **Gerard DiConza**<br>Title:<br>eMail:<br>630 Third Ave. 7th Floor, New York NY 10017 (USA)<br>**212-682-4940** |
| **Northern Engraving Corporation** | **749** | 6/12/2009 | Name: **Paul R. Hage**<br>Law Firm: **Jaffe Raitt Heuer & Weiss, PC**<br>Title:<br>eMail: phage@jaffelaw.com<br>27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA)<br>**248-351-3000** |
| **Novodynamics, Inc.** | **763** | 6/12/2009 | Name: **Deborah Kovsky-Apap**<br>Law Firm: **Pepper Hamilton LLP**<br>Title:<br>eMail: kovskyd@pepperlaw.com<br>100 Renaissance Center, Suite 3600, Detroit MI 48243 (USA)<br>**313-259-7110** |
| **NYX, Inc. and Bates Acquisition, LLC** | **2072** | 6/19/2009 | Name: **Scott A. Wolfson**<br>Law Firm: **Bush Seyferth & Paige PLLC**<br>Title:<br>eMail: wolfson@bsplaw.com<br>3001 W. Big Beaver Rd. Suite 600, Troy MI 48084 (USA)<br>**248-822-7803** |
| **Oakland University** | **1337** | 6/15/2009 | Name: **Richardo I. Kirkpatrick**<br>Law Firm: **Kilpatrick & Associates, P.C.**<br>Title:<br>eMail: ecf@kaalaw.com<br>903 N. Opdyke Road, Suite C, Auburn Hills MI 48326 (USA)<br>**248.377.0700** |
| **Ogihara America Corporation** | **855** | 6/12/2009 | Name: **Michael G. Cruse**<br>Law Firm: **Kilpatrick & Associates, P.C.**<br>Title:<br>eMail: mcruse@wnj.com<br>WARNER NORCROSS & JUDD LLP, 2000 Town Center, Suite 2700, Southfield MI 48075 (USA)<br>**248-784-5131** |
| **Omron Automotive Electronics, Inc.** | **1292** | 6/15/2009 | Name: **Steven H. Hilfinger**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489<br>**313.234.7100** |
| **Oracle USA, Inc., successor in interest to Oracle Corporation and to Siebel Systems, Inc.** | **1233** | 6/15/2009 | Name: **Amish R. Doshi**<br>Law Firm: **Day Pitney LLP**<br>Title:<br>eMail: adoshi@daypitney.com<br>7 Times Square , New York NY 10036 (USA)<br>**212-297-5800** |
| **Ottaway Motor Express** | **2005** | 6/12/2009 | Name: **Shawn McMahon**<br>Law Firm: **Ottaway Motor Express Ltd.**<br>Title: V.P. of Operations and Finance<br>eMail:<br>714880 County Road 4, Woodstock, Ontario N4S 7W3 (Canada)<br>**519-539-8434** |
| **Overhead Conveyor Company** | **887** | 6/12/2009 | Name: **Deborah L. Fish**<br>Law Firm: **Allard & Fish, P.C.**<br>Title:<br>eMail:<br>2600 Buhl Building, 535 Griswold, Detroit MI 48226 (USA)<br>**313.961.6141** |
| **Oxbow Carbon & Minerals, LLC** | **929** | 6/12/2009 | Name: **Elizabeth K. Flaagan**<br>Law Firm: **Allard & Fish, P.C.**<br>Title:<br>eMail: eflaagan@faegre.com<br>Faegre & Benson LLP; 3200 Wells Fargo Center; 1700Lincoln Center, Denver CO 80203 (USA)<br>**303-607-3694** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Panasonic Automotive Systems Company f/k/a Matsushita Electric Corporation of America** | **1179** | 6/15/2009 | Name: **Jonathan L. Flaxer** |
| | | | Law Firm: **Golenbock Eiseman Assor Bell & Peskoe LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 437 Madison Avenue, New York NY 10022 (USA) |
| | | | **212-907-7300** |
| **Paragon Metals, Inc.** | **772** | 6/12/2009 | Name: **Michael G. Cruse** |
| | | | Law Firm: **Warner, Norcross & Judd LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 2000 Town Center, Suite 2700, Southfield MI 48075 (USA) |
| | | | **248.784.5131** |
| **Park-Ohio Industries, Inc.** | **1329** | 6/15/2009 | Name: **James M. Lawniczak** |
| | | | Law Firm: **Calfee, Halter & Griswold LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Key Bank Center, Suite 1400; 800 Superior Avenue, Cleveland OH 44114 |
| | | | **216.622.8200** |
| **Penske Auto Group** | **1460** | 6/15/2009 | Name: **Carollynn H.G. Callari** |
| | | | Law Firm: **Venable LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Rockefeller Center 1270 Avenue of the Americas, New York NY 10020 (USA) |
| | | | **212-983-3850** |
| **Penske Logistics LLC and Automotive Component Carriers LLC** | **869** | 6/12/2009 | Name: **Andrew C. Kassner** |
| | | | Law Firm: **DRINKER BIDDLE & REATH LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Logan Square; 18th and Cherry Streets, Philadelphia PA 19103 (USA) |
| | | | **215-988-2700** |
| **Penske Logistics LLC and Automotive Component Carriers LLC** | **869** | 6/12/2009 | Name: **Andrew C. Kassner** |
| | | | Law Firm: **DRINKER BIDDLE & REATH LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Logan Square; 18th and Cherry Streets, Philadelphia PA 19103 (USA) |
| | | | **215-988-2700** |
| **Peterson American Corporation** | **1106** | 6/15/2009 | Name: **Steven H. Hilfinger** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Detroit Center; 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA) |
| | | | **313-234-7100** |
| **Peugeot Japy Industries, SA** | **1304** | 6/15/2009 | Name: **Judy A. O'Neill** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA) |
| | | | **313.234.7100** |
| **Phillips Lytle LLP** | **715** | 6/12/2009 | Name: **Angela Z. Miller** |
| | | | Law Firm: **Phillips Lytle LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Suite 3400, One HSBC Center, Buffalo NY 14203-2887 (USA) |
| | | | **716-847-8400** |
| **Pilkington North America, Inc. and certain of its affiliates and subsidiaries** | **701** | 6/12/2009 | Name: **Deborah Kovsky-Apap** |
| | | | Law Firm: **PEPPER HAMILTON LLP** |
| | | | Title: |
| | | | eMail: kovskyd@pepperlaw.com |
| | | | 100 Renaissance Center Suite 3600, Detroit MI 48243 (USA) |
| | | | **313-259-7110** |
| **Pintura, Estampado y Montaje, S.A. de C.V., Pintura y Ensambles de Mexico, S.A. de C.V., Nugar S.A.** | **628** | 6/10/2009 | Name: **Michael R. Wernette** |
| | | | Law Firm: **SCHAFER AND WEINER, PLLC** |
| | | | Title: |
| | | | eMail: mwernette@schaferandweiner.com |
| | | | 40950 Woodward Ave., Ste. 100, Bloomfield Hills MI 48304 (USA) |
| | | | **248-540-3340** |
| **Pioneer Steel Corporation** | **717** | 6/11/2009 | Name: **Donald Sazama** |
| | | | Law Firm: |
| | | | Title: President |
| | | | eMail: |
| | | | 7447 Intervale , Detroit MI 48238-2488 |
| | | | **313.933.9400** |
| **Pioneer Steel Corporation** | **711** | 6/12/2009 | Name: **Lynn M. Brimer** |
| | | | Law Firm: **Strobal & Sharp, P.C.** |
| | | | Title: |
| | | | eMail: lbrimer@stroblpc.com |
| | | | 300 E. Long Lake Rd., Ste. 200, Bloomfield Hills MI 48304 (USA) |
| | | | **248-540-2300** |

General Motors Contract Assignment / Assumption

Exhibit: Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Pirelli Tires, LLC** | **1385** | 6/15/2009 | Name: **Salvatore A. Barbatano** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA) |
| | | | **313-234-7100** |
| **Pitney Bowes Inc., Pitney Bowes Management Services, Inc. ("PBMS"), Pitney Bowes** | **2051** | 6/19/2009 | Name: **Edward J. LoBello** |
| | | | Law Firm: **Meyer, Suozzi, English & Klein, P.C.** |
| | | | Title: |
| | | | eMail: |
| | | | 1350 Broadway, Suite 501; P.O. Box 822, New York NY 10018-0822 (USA) |
| | | | **212-763-7030** |
| **PJAX, Inc.** | **1205** | 6/15/2009 | Name: **Mark T. Vuono** |
| | | | Law Firm: **Vuono & Gray, LLC** |
| | | | Title: |
| | | | eMail: mvuono@vuonogray.com |
| | | | 310 Grant St., Suite 2310 , Pittsburgh PA 15219 (USA) |
| | | | **412-471-1800** |
| **Plasan USA, Inc. and Plasan USA, Ltd.** | **875** | 6/12/2009 | Name: **Robert D. Gordon** |
| | | | Law Firm: **Clark Hill PLC** |
| | | | Title: |
| | | | eMail: rgordon@clarkhill.com |
| | | | 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA) |
| | | | **313.965.8572** |
| **Plastic Omnium Auto Exteriors, L.L.C., Plastic Omnium Auto Exteriores, S.A. de C.V., Burelle, S.A.,** | **2029** | 6/19/2009 | Name: **Leslie S. Barr** |
| | | | Law Firm: **Windels Marx Lane & Mittendorf, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 156 West 56th Street, New York NY 10019 (USA) |
| | | | **212-237-1000** |
| **Power Information Network, LLC** | **783** | 6/12/2009 | Name: **David N. Crapo** |
| | | | Law Firm: **Gibbons P.C.** |
| | | | Title: Esquire |
| | | | eMail: dcrapo@gibbonslaw.com |
| | | | One Gateway Center, Newark NJ 07102-5310 (USA) |
| | | | **973-596-4523** |
| **Pratt & Miller Engineering & Fabrication, Inc.** | **1303** | 6/15/2009 | Name: **Tristan Manthey** |
| | | | Law Firm: **Heller, Draper, Hayden, Patrick & Horn, LLC** |
| | | | Title: |
| | | | eMail: |
| | | | 650 Poydras Street, Suite 2500, New Orleans LA 70130 (USA) |
| | | | **504.299.3300** |
| **Praxair, Inc. and Praxair Distribution, Inc.** | **1001** | 6/15/2009 | Name: **Sarah M. Chen** |
| | | | Law Firm: **Locke Lord Bissell & Liddell, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 885 Third Avenue, Twenty-Sixth Floor, New York NY 10022 (USA) |
| | | | **212-812-8303** |
| **Praxair, Inc. as Agent for Niject Services Company** | **1164** | 6/15/2000 | Name: **Sarah M. Chen** |
| | | | Law Firm: **Locke Lord Bissell & Liddell LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 885 Third Avenue, Twenty-Sixth Floor, New York NY 10022 (USA) |
| | | | **212-812-8303** |
| **Praxair, Inc. as agent for Niject Services Company** | **1164** | 6/15/2009 | Name: **Sarah M. Chen** |
| | | | Law Firm: **Locke Lord Bissell and Liddell LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 885 Third Avenue, Twenty-Sixth Floor, New York NY 10022 (USA) |
| | | | **212-812-8303** |
| **Production Modeling Corporation** | **521** | 6/9/2009 | Name: **Colin T. Drake** |
| | | | Law Firm: **Locke Lord Bissell and Liddell LLP** |
| | | | Title: |
| | | | eMail: cdrake@bodmanllp.com |
| | | | BODMAN LLP, 6th Floor at Ford Field, 1901 St. Antoine, Detroit MI 48226 (USA) |
| | | | **313-393-7585** |
| **Production Services Management, Inc.** | **870** | 6/12/2009 | Name: **Paul R. Hage** |
| | | | Law Firm: **Jaffw Raitt Heuer & Weiss, P.C.** |
| | | | Title: |
| | | | eMail: phage@jaffelaw.com |
| | | | 27777 Franklin Road, Southfield MI 48034 (USA) |
| | | | **248.351.3000** |
| **Progressive Stamping Company, Inc.** | **1673** | 6/16/2009 | Name: **Leslie S. Barr** |
| | | | Law Firm: **Windels Marx Lane & Mittendorf, LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 156 West 56th Street, New York NY 10019 (USA) |
| | | | **212-237-1000** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Supplier | | | | |
|---|---|---|---|---|
| Project Management Services, Inc. | 1178 | 6/15/2009 | Name: **Paul R. Hage** | |
| | | | Law Firm: **Jaffe Raitt Heuer & Weiss, PC** | |
| | | | Title: | |
| | | | eMail: phage@jaffelaw.com | |
| | | | 27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA) | |
| | | | **248-351-3000** | |
| PTI Quality Containment solutions, LLC | 1316 | 6/15/2009 | Name: **Tony F. Di Ponio** | |
| | | | Law Firm: **Calhoun & Di Ponio, PLC** | |
| | | | Title: | |
| | | | eMail: | |
| | | | 31000 Telegraph Road, Suite 280, Bingham Farms MI 48025 (USA) | |
| | | | **248.594.1500** | |
| Pyeong HWA Automotive Co., Ltd. | 1422 | 6/15/2009 | Name: **Lynn M. Brimer** | |
| | | | Law Firm: **Strobl & Sharp, P.C.** | |
| | | | Title: | |
| | | | eMail: lbrimer@stroblpc.com | |
| | | | 300 E. Long Lake Rd. Ste 200, Bloomfield Hills MI 48304 (USA) | |
| | | | **248-540-2300** | |
| QEK Global Solutions (US) LP | 1189 | 6/15/2009 | Name: **David B. Aaronson** | |
| | | | Law Firm: **Drinker Biddle & Reath LLP** | |
| | | | Title: | |
| | | | eMail: | |
| | | | One Logan Square, 18th and Cherry Streets, Philadelphia PA 19103 (USA) | |
| | | | **215-988-2700** | |
| Quadion Corp. | 1906 | 6/19/2009 | Name: **Matthew A. Swanson** | |
| | | | Law Firm: **Leonard, Street and Deinard** | |
| | | | Title: | |
| | | | eMail: | |
| | | | 150 South Fifth Street, Suite 2300, Minneapolis MN 55402 (USA) | |
| | | | **612-335-1500** | |
| Quaker Chemical Corporation | 1160 | 6/15/2009 | Name: **David B. Aaronson** | |
| | | | Law Firm: **Drinker Biddle & Reath LLP** | |
| | | | Title: | |
| | | | eMail: | |
| | | | One Logan Square; 18th and Cherry Streets, Philadelphia PA 19103 (USA) | |
| | | | **215-988-2700** | |
| R.L. Polk & Co. | 834 | 6/12/2009 | Name: **Marc E. Richards** | |
| | | | Law Firm: **Blank Rome, LLP** | |
| | | | Title: | |
| | | | eMail: mrichard@blankrome.com | |
| | | | The Chrysler Building, 405 Lexington Avenue, New York NY 10174 (USA) | |
| | | | **212.885.5000** | |
| Rapids Tumble Finish, Inc. | 1771 | 6/11/2009 | Name: **LouAnn Loomis** | |
| | | | Law Firm: **Rapids Tumble Finish, Inc.** | |
| | | | Title: Office Manager | |
| | | | eMail: louann.loomis@rapidstumblefinish.com | |
| | | | 1607 Hults Dr., Eaton Rapids MI 48827 (USA) | |
| | | | **517-663-8606** | |
| Raycom Media, Inc. | 665 | 6/11/2009 | Name: **Wanda Borges** | |
| | | | Law Firm: **Borges & Associates, LLC** | |
| | | | Title: | |
| | | | eMail: borgeslawfirm@aol.com | |
| | | | 575 Underhill Blvd., Suite 118, Syosset NY 11791 (USA) | |
| | | | **516-677-8200** | |
| Raytheon | 1461 | 6/15/2009 | Name: **Lawrence Katz** | |
| | | | Law Firm: **Venable LLP** | |
| | | | Title: | |
| | | | eMail: | |
| | | | 8010 Towers Crescent Drive, Suite 300, Vienna VA 22182-2707 (USA) | |
| | | | **703.760.1600** | |
| Raytheon Professional Services, LLC | 1461 | 6/15/2009 | Name: **Carollynn H.G. Callari** | |
| | | | Law Firm: **Venable LLP** | |
| | | | Title: | |
| | | | eMail: | |
| | | | 1270 Avenue of the Americas, New York NY 10020 (USA) | |
| | | | **212-983-3850** | |
| RCO Engineering, Inc. | 797 | 6/12/2009 | Name: **Deborah L. Fish** | |
| | | | Law Firm: **Venable LLP** | |
| | | | Title: | |
| | | | eMail: | |
| | | | Allard & Fish, P.C., 2600 Buhl Building, 535 Griswold, Detroit MI 48226 (USA) | |
| | | | **313-961-6141** | |
| RCR Enterprises, LLC | 938 | 6/12/2009 | Name: **Christopher J. Battaglia** | |
| | | | Law Firm: **Halperin Battaglia Raicht, LLP** | |
| | | | Title: | |
| | | | eMail: cbattaglia@halperinlaw.net | |
| | | | 555 Madison Avenue - 9th Floor, New York NY 10022 (USA) | |
| | | | **212-765-9100** | |

General Motors Contract Assignment / Assumption
  Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| RECARO North America, Inc. | 787 | 6/12/2009 | Name: **Gordon J. Toering**<br>Law Firm: **WARNER NORCROSS & JUDD LLP**<br>Title:<br>eMail: gtoering@wnj.com<br>900 Fifth Third Center; 111 Lyon Street, NW, Grand Rapids MI 49503 (USA)<br>**616-752-2185** |
| Relational, LLC, f/k/a Relational Funding Corporation, and d/b/a Relational Technology Solutions | 1340 | 6/15/2009 | Name: **Mark G. Ledwin**<br>Law Firm: **Wilson, Fisher, Moskowitz, Edelman & Dicker LLP**<br>Title:<br>eMail: mark.ledwin@wilsonelser.com<br>3 Gannett Drive, White Plains NY 10604 (USA)<br>**914-872-7148** |
| Reliable Carriers, Inc. | 944 | 6/12/2009 | Name: **James E. DeLine/P. Warren Hunt**<br>Law Firm: **Kerr, Russell and Weber, PLC**<br>Title:<br>eMail:<br>500 Woodward Avenue, Suite 2500, Detroit MI 48226 (USA)<br>**313-961-0200** |
| Remy International, Inc., Remy Inc., and Remy Power Products, LLC | 831 | 6/12/2009 | Name: **Todd A. Burgess**<br>Law Firm: **Greenberg Traurig, LLP**<br>Title:<br>eMail: burgesst@gtlaw.com<br>2375 E. Camelback Rd., Suite 700, Phoenix AZ 85016 (USA)<br>**602-445-8563** |
| Rhythm North America Corporation and THK Manufacturing of America, Inc. | 1153 | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| Ridgeview Industries, Inc. | 1849 | 6/18/2009 | Name: **Thomas W. Schouten**<br>Law Firm: **Dunn, Schouten & Snoap, P.C.**<br>Title:<br>eMail: tschouten@dunnsslaw.com<br>2745 DeHoop Ave. SW, Wyoming MI 49509 (USA)<br>**616-538-6380** |
| Rima Manufacturing Company | 897 | 6/12/2009 | Name: **Patrick J. Kukla**<br>Law Firm: **Carson Fischer, P.L.C.**<br>Title:<br>eMail:<br>4111 Andover Road, West - 2nd Floor, Bloomfield Hills MI 48302 (USA)<br>**248.644.4840** |
| RMT Acquisition Company, LLC | 1305 | 6/15/2009 | Name: **James E. DeLine**<br>Law Firm: **kerr, Russell and Weber, PLC**<br>Title:<br>eMail:<br>500 Woodward Ave., Suite 2500, Detroit MI 48226 (USA)<br>**313.961.0200** |
| Rubber Enterprises, Inc. | 892 | 6/12/2009 | Name: **Joel D. Applebaum**<br>Law Firm: **Clark Hill, PLC**<br>Title:<br>eMail: japplebaum@clarkhill.com<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313.965.8579** |
| Rush Trucking Corporation | 931 | 6/12/2009 | Name: **Patrick J. Kukla**<br>Law Firm: **Clark Hill, PLC**<br>Title:<br>eMail:<br>CARSON FISCHER, PLC; 4111 Andover Road, West 2nd Floor, Bloomfield Hills MI 48302 (USA)<br>**248-644-4840** |
| Ryder Integrated Logistics Inc. | 1140 | 6/15/2009 | Name: **Stephen J. Shimshak**<br>Law Firm: **Paul, Weiss, Rifkind, Wharton & Garrison LLP**<br>Title:<br>eMail:<br>1285 Avenue of the Americas, New York NY 10019-6064 (USA)<br>**212-373-3000** |
| Sabo Industria e Comercio de Autopecas Ltda | 1238 | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| Sabo USA, Inc. | 1223 | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| Saginaw LLc and Brazing Concepts LLC | 1313 | 6/15/2009 | Name: **James N. Lawlor**<br>Law Firm: **Wollmuth Maher & Deutsch LLP**<br>Title:<br>eMail: jlawlor@wmd-law.com<br>One Gateway Center, Ninth Floor, Newark NJ 07102 (USA)<br>**973.733.9200** |
| Sanden International (USA), Inc. | 1255 | 6/15/2009 | Name: **Philip C. Dublin**<br>Law Firm: **Akin Gump Strauss Hauer & Feld LLP**<br>eMail:<br>One Bryant Park, New York NY 10036 (USA)<br>**212-872-1000** |
| Sandler & Travis Trade Advisory Services, Inc. | 857 | 6/12/2009 | Name: **Paul R. Hage**<br>Law Firm: **Akin Gump Strauss Hauer & Feld LLP**<br>Title:<br>eMail: phage@jaffelaw.com<br>JAFFE RAITT HEUER & WEISS, P.C., 27777 Franklin Road, Suite 2500, Southfield MI 48034 (USA)<br>**248-351-3000** |
| Sankyo Oilless Industry (USA) Corp. | 1826 | 6/18/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| SAP America, Inc. | 2333 | 6/23/2009 | Name: **Kenneth J. Schweiker, Jr.**<br>Law Firm: **Brown & Connery, LLP**<br>eMail: kschweiker@brownconnery.com<br>6 North Broad St. Suite 100, Woodbury NJ 08096 (USA)<br>**856-812-8900** |
| SAS Institute Inc. | 927 | 6/12/2009 | Name: **Eric T. Moser**<br>Law Firm: **K&L Gates LLP**<br>eMail:<br>599 Lexington Avenue, New York NY 10022 (USA)<br>**212-536-3900** |
| SCG Capital Corporation | 739 | 6/12/2009 | Name: **Gerard DiConza**<br>Law Firm: **DiConza Law, PC**<br>Title:<br>eMail: gdiconza@dlawpc.com<br>630 Third Avenue, 7th Floor, New York NY 10017 (USA)<br>**212-682-4940** |
| Schaeffler Group Entities | 881 | 6/15/2009 | Name: **John Bicks**<br>Law Firm: **Sonnenschein Nath Rosenthal LLP**<br>Title:<br>eMail:<br>1221 Avenue of the Americas, New York NY 10020<br>**212.768.6700** |
| Schenck Rotec Corporation | 810 | 6/12/2009 | Name: **Smith, Gambrell & Russell, LLP – William M. Barron**<br>Law Firm: **Sonnenschein Nath Rosenthal LLP**<br>eMail:<br>250 Park Avenue, New York NY 10177 (USA)<br>**212.907.9700** |
| Schneider National, Inc, Schneider National Carriers, Inc., and Schneider Logistics, Inc. | 1237 | 6/15/2009 | Name: **Mark Minuti**<br>Law Firm: **Saul Ewing LLP**<br>Title:<br>eMail:<br>222 Delaware Avenue, Suite1200; P.O. Box 1266, Wilmington DE 19899 (USA)<br>**302-421-6840** |
| Screenvision Cinema Network LLC | 1369 | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>eMail:<br>One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Scripps Networks, LLC | 1388 | 6/15/2009 | Name: **Wendy J. Gibson**<br>Law Firm: **Baker & Hostetler LLP**<br>Title:<br>eMail: wgibson@bakerlaw.com<br>3200 National City Center; 1900 E. 9th St., Cleveland OH 44114 (USA)<br>**216-621-0200** |
| Security Packaging, Inc. | 1387 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Severn Trent Del Inc. | 1007 | 6/11/2009 | Name: **Dan Elias** |
| | | | Law Firm: **Elias Group, LLP** |
| | | | Title: |
| | | | eMail: delias@eliasgroup.com |
| | | | 411 Theodore Fremd Avenue, Suite 102, Rye NY 10580 (USA) |
| | | | **914-925-0000** |
| Severstal North America, Inc. | 899 | 6/12/2009 | Name: **Deborah L. Fish** |
| | | | Law Firm: **Allard & Fish, P.C.** |
| | | | Title: |
| | | | eMail: |
| | | | 2600 Buhl Building, 535 Griswold, Detroit MI 48226 (USA) |
| | | | **313.961.6141** |
| Shambaugh & Son, L.P. | 1404 | 6/15/2009 | Name: **John R. Burns** |
| | | | Law Firm: **Baker & Daniels LLP** |
| | | | Title: |
| | | | eMail: john.burns@bakerd.com |
| | | | 111 East Wayne St. Suite 800, Fort Wayne IN 46802 (USA) |
| | | | **260-424-8000** |
| Shanghai Automotive Industry Corporation (Group) | 879 | 6/12/2009 | Name: **Shmuel Vasser** |
| | | | Law Firm: **Dechert LLP** |
| | | | Title: |
| | | | eMail: shmuel.vasser@dechert.com |
| | | | 1095 Avenue of the Americas , New York NY 10036-6797 (USA) |
| | | | **212-698-3500** |
| Shiloh Industries, Inc. | 1349 | 6/15/2009 | Name: **Richard J. Bernard** |
| | | | Law Firm: **Baker & Hostetler LLP** |
| | | | Title: |
| | | | eMail: rbernard@bakerlaw.com |
| | | | 45 Rockefeller Plaza, New York NY 10111 (USA) |
| | | | **212.589.4200** |
| Shreveport Red River Utilities, LLC | 1051 | 6/15/2009 | Name: **Thomas R. Slome** |
| | | | Law Firm: **Meyer, Suozzi, English & Klein, P.C.** |
| | | | Title: |
| | | | eMail: |
| | | | 990 Stewart Avenue, Suite 300, Garden City NY 11530-9194 (USA) |
| | | | **516.741.6565** |
| Siemens Enterprise Communications, Inc. | 1124 | 6/15/2009 | Name: **Karel S. Karpe** |
| | | | Law Firm: **White and Williams, LLP** |
| | | | Title: Esquire |
| | | | eMail: |
| | | | One Penn Plaza, Suite 4110, New York NY 10119 (USA) |
| | | | **212-631-4421** |
| Siemens Product Lifecycle Management Software, Inc. | 1068 | 6/15/2009 | Name: **Karel S. Karpe** |
| | | | Law Firm: **White and Williams, LLP** |
| | | | Title: |
| | | | eMail: karpek@whiteandwilliams.com |
| | | | One Penn Plaza, Suite 4110, New York NY 10119 (USA) |
| | | | **212.631.4421** |
| Sika Corporation | 1088 | 6/15/2009 | Name: **Sam Della Fera, Jr.** |
| | | | Law Firm: **Trenk, DiPasquale, Webster, Della Fera & Sodono, PC** |
| | | | Title: |
| | | | eMail: |
| | | | 347 Mt. Pleasant Avenue, Suite 300, West Orange NJ 07052 (USA) |
| | | | **973-243-8600** |
| SKF USA, Inc. | 965 | 6/12/2009 | Name: **James C. Carignan** |
| | | | Law Firm: **Pepper Hamilton LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Hercules Plaza, Suite 5100; 1313 N. Market Street; P.O. Box 1709, Wilmington DE 19899-1709 (USA) |
| | | | **302-777-6500** |
| SKF USA, Inc. | 965 | 6/15/2009 | Name: **Nina M. Varughese** |
| | | | Law Firm: **Pepper Hamilton LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 3000 Two Logan Square, 18th and Arch Streets, Philadelphia PA 19103-2799 (USA) |
| | | | **215.981.4000** |
| Soroc Acquisiton Corp. | 708 | 6/12/2009 | Name: **Robert D. Gordon** |
| | | | Law Firm: **Clark Hill PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA) |
| | | | **313.965.8572** |
| Spartan Light Metal Products, Inc. | 1301 | 6/15/2009 | Name: **Richard M. Meth** |
| | | | Law Firm: **Day Pitney** |
| | | | Title: |
| | | | eMail: |
| | | | 7 Times Square, New York NY 10036-7311 (USA) |
| | | | **973.966.6300** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Supplier | No. | Date | Contact |
|---|---|---|---|
| Sprint Nextel Corporation | 1354 | 6/15/2009 | Name: **Shawn R. Fox**<br>Law Firm: **McGuirewoods, LLP**<br>Title:<br>eMail:<br>1345 Avenue of the Americas, Seventh Floor, New York NY 10105 (USA)<br>**212.548.2100** |
| SPS Technologies, LLC, SPS Technologies Waterford Company, NSS Technologies, Inc., and AVK Division | 757 | 6/12/2009 | Name: **Gordon J. Toering**<br>Law Firm: **Warner Norcross & Judd LLP**<br>Title:<br>eMail: gtoering@wnj.com<br>900 Fifth Third Center; 111 Lyon Street, NW, Grand Rapids MI 49503 (USA)<br>**616-752-2185** |
| SPX Corporation | 901 | 6/12/2009 | Name: **Joel D. Applebaum**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail: japplebaum@clarkhill.com<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313.965.8579** |
| SPX Filtran LLC, formerly known as Filtran Division of SPX Corporation | 905 | 6/12/2009 | Name: **Joel D. Applebaum**<br>Law Firm: **Clark Hill PLC**<br>Title:<br>eMail: japplebaum@clarkhill.com<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313-965-8579** |
| Standard Electric Company | 1011 | 6/15/2009 | Name: **John Wisniewski**<br>Law Firm:<br>Title: General Sales Manager<br>eMail:<br>2650 Trautner Drive; P.O. Box 5289, Saginaw MI 48603-0289 (USA)<br>**989-497-2100** |
| StarSource Management Services | 748 | 6/12/2009 | Name: **Fred Stevens**<br>Law Firm: **Fox Rothschild LLP**<br>Title:<br>eMail:<br>100 Park Avenue, 15th Floor10017, New York NY 10017 (USA)<br>**212.878.7900** |
| Stoneridge, Inc._Stoneridge Pollak, Ltd._Hi-Stat Mfg. | 1355 | 6/15/2009 | Name: **Richard J. Bernard**<br>Law Firm: **Baker & Hostetler LLP**<br>Title:<br>eMail:<br>45 Rockefeller Plaza, New York NY 10111 (USA)<br>**212.589.4200** |
| Strattec Power Access LLC | 1338 | 6/15/2009 | Name: **Jennifer A. Christian**<br>Law Firm: **Kelley Drye & Warren**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212.808.7800** |
| Strattec Security Corporation | 1341 | 6/15/2009 | Name: **Jennifer A. Christian**<br>Law Firm: **Kelley Drye & Warren LLP**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212-808-7800** |
| Suez/VWNA/DEGS of Lansing, LLC | 1044 | 6/15/2009 | Name: **Jil Mazer-Marino**<br>Law Firm: **Meyer, Suozzi, English & Klein, PC**<br>Title:<br>eMail:<br>990 Stewart Avenue, Suite 300; P.O. Box 9194, Garden City NY 11530-9194 (USA)<br>**516-741-6565** |
| Sumitomo Electric Wiring Systems, Inc. | 1168 | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| Summit Polymers, Inc. | 1324 | 6/15/2009 | Name: **Mary Kay Shaver**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail:<br>Bridgewater Place, Grand Rapids MI 49501-0352 (USA)<br>**616.336.6000** |
| Summit Polymers, Inc. | 1327 | 6/15/2009 | Name: **Mary Kay Shavers**<br>Law Firm: **Varnum LLP**<br>Title:<br>eMail:<br>Bridgewater Place, Grand Rapids MI 49501-0352<br>**616.336.6000** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| Sun Microsystems, Inc. and Sun Microsystems Global Financial Services, LLC | 1107 | 6/12/2009 | Name: **Karel S. Karpe**<br>Law Firm: **White and Williams, LLP**<br>Title: Esquire<br>eMail:<br>One Penn Plaza, Suite 4110, New York NY 10119 (USA)<br>**212-631-4421** |
| Superior Acquistion, Inc. | 697 | 6/12/2009 | Name: **David T. Lin**<br>Law Firm: **Seyburn, Kahn, Ginn, Bess, & Serlin, P.C.**<br>Title:<br>eMail:<br>2000 Town Center, Suite 1500, Southfield MI 48075-1195 (USA)<br>**248-353-7620** |
| Superior Industries International, Inc. | 909 | 6/12/2009 | Name: **James M. Sullivan**<br>Law Firm: **Arent Fox LLP**<br>Title:<br>eMail:<br>1675 Broadway , New York NY 10019 (USA)<br>**212-484-3900** |
| Superior Industries International, Inc. | 1111 | 6/15/2009 | Name: **James M. Sullivan**<br>Law Firm: **Arent Fox, LLP**<br>Title: Esquire<br>eMail:<br>1675 Broadway, New York NY 10019 (USA)<br>**212-484-3900** |
| SUPERVALU Inc. | 1857 | 6/18/2009 | Name: **Eric G. Waxmann III**<br>Law Firm: **Westerman Ball Ederer Miller & Sharfstein, LLP**<br>Title:<br>eMail:<br>170 Old Country Road, Suite 400, Mineola NY 11501 (USA)<br>**516-622-9200** |
| Supina Machine Company, Inc. | 1748 | 6/15/2009 | Name: **Andrew M. Corsini**<br>Law Firm: **Supina Machine Company, Inc.**<br>Title: President and CEO<br>eMail: andrew.corsini@supfina.com<br>181 Circuit Dr., North Kingstown RI 02852 (USA)<br>**401-294-1702** |
| Swagelok Company | 699 | 6/12/2009 | Name: **Stephen M. Gross**<br>Law Firm: **Supina Machine Company, Inc.**<br>Title:<br>eMail: sgross@mcdonaldhopkins.com<br>McDonald Hopkins PLC, 39533 Woodward Ave., Ste. 318, Bloomfield Hills MI 48304 (USA)<br>**248-646-5070** |
| Tata America International Corporation | 1148 | 6/15/2009 | Name: **Benjamin D. Feder**<br>Law Firm: **Kelley Drye & Warren LLP**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212-808-7800** |
| Techform Products Limited | 1821 | 6/18/2009 | Name: **Marc M. Bakst**<br>Law Firm: **Bodman LLP**<br>Title:<br>eMail: mbakst@bodmanllp.com<br>1901 St. Antoine St. 6th Floor at Ford Field, Detroit MI 48026 (USA)<br>**313-393-7530** |
| Technology Investment Partners, LLC | 1960 | 6/19/2009 | Name: **John A. Simon**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Avenue Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Tecta America Corp. | 1097 | 6/15/2009 | Name: **Christopher Combest**<br>Law Firm: **Quarles & Brady LLP**<br>Title:<br>eMail: Christopher.Combest@quarles.com<br>300 North LaSalle Street, Suite 4000, Chicago IL 60654 (USA)<br>**312-715-5000** |
| Tenneco Inc. and certain of its affiliates | 1094 | 6/15/2009 | Name: **Michael T. Conway**<br>Law Firm: **LeClair Ryan**<br>Title:<br>eMail:<br>830 Third Avenue, Fifth Floor, New York NY 10022 (USA)<br>**212-430-8063** |
| Textron | 1457 | 6/15/2009 | Name: **Scott T. Seabolt**<br>Law Firm: **Foley & Lardner, LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226 (USA)<br>**313.234.7100** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Textron Inc.** | **1457** | 6/15/2009 | Name: **Frank W. DiCastri**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Ave. Suite 2700, Detroit MI 48226 (USA)<br>**313-234-7100** |
| **TGI Direct, Inc.** | **1210** | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: jplemmons@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| **The Bank of New York Mellon** | **2070** | 6/19/2009 | Name: **Edward P. Zujkowski**<br>Law Firm: **Emmet, Marvin & Martin, LLP**<br>Title:<br>eMail: ezujkowski@emmetmarvin.com<br>120 Broadway, New York NY 10271 (USA)<br>**212-238-3000** |
| **The Barnes Group Inc.** | **2358** | 6/24/2009 | Name: **Carol A. Felicetta**<br>Law Firm: **Barnes Group Inc.**<br>Title:<br>eMail: cfelicetta@reidandriege.com<br>195 Church Street, New Haven CT 061510 (USA)<br>**203-777-8008** |
| **The Barnes Group, Inc. and Seeger-Orbis GmbH & Co. OHG** | **1096** | 6/15/2009 | Name: **Carol A. Felicetta**<br>Law Firm: **Reid and Riege, PC**<br>Title:<br>eMail: cfelicetta@reidandriege.com<br>195 Church Street, New Haven CT 06510 (USA)<br>**203-777-8008** |
| **The Barnes Group, Inc. and Seeger-Orbis GmbH & Co. OHG** | **1096** | 6/15/2009 | Name: **Carol A. Felicetta**<br>Law Firm: **Reid and Riege, PC**<br>Title:<br>eMail: cfelicetta@reidandriege.com<br>195 Church Street, New Haven CT 06510 (USA)<br>**203-777-8008** |
| **The Cobalt Group, Inc.** | **1307** | 6/15/2009 | Name: David B. Levant<br>Law Firm: **Stoel Rives LLP**<br>Title:<br>eMail:<br>600 University Street, Suite 3600, Seattle WA 98101 (USA)<br>**206.624.0900** |
| **The Detroit Edison Company and Michigan Consolidated Gas Company** | **1185** | 6/15/2009 | Name: **Jil Mazer-Marino**<br>Law Firm: **Meyer, Suozzi, English & Klein, PC**<br>Title:<br>eMail:<br>900 Stewart Avenue, Suite 300; P.O. Box 9194, Garden City NY 11530-9194 (USA)<br>**516-741-6565** |
| **The Environmental Quality Co.** | **817** | 6/12/2009 | Name: **Robert D. Gordon**<br>Law Firm: **Meyer, Suozzi, English & Klein, PC**<br>Title:<br>eMail: rgordon@clarkhill.com<br>Clark Hill, PLC - 151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313.965.8572** |
| **The Goodyear Tire & Rubber Company** | **1410** | 6/15/2009 | Name: Peter A. Zisser<br>Law Firm: **Squire, Sanders & Dempsey L.L.P.**<br>Title:<br>eMail:<br>1095 Avenue of the Americas, 31st Floor, New York NY 10036 (USA)<br>**212-872-9800** |
| **The Interpublic Group of Companies, Inc.** | **1167** | 6/15/2009 | Name: **Sean A. O'Neal**<br>Law Firm: **Cleary Gottlieb Steen & Hamilton LLP**<br>Title:<br>eMail:<br>One Liberty Plaza, New York NY 10006 (USA)<br>**212-225-2000** |
| **The Lansing Board of Water & Light** | **874** | 6/12/2009 | Name: **Donald J. Hutchinson**<br>Law Firm: **Miller, Canfield, Paddock and Stone, P.L.C.**<br>Title:<br>eMail: hutchinson@millercanfield.com<br>150 West Jefferson Aveune Suite 2500, Detroit MI 48226 (USA)<br>**313-963-6420** |
| **The MathWorks, Inc.** | **1091** | 6/12/2009 | Name: **Thomas M. Serpa**<br>Law Firm:<br>Title: Vice President and General Counsel<br>eMail: tserpa@mathworks.com<br>3 Apple Hill Drive, Natick MA 01760 (USA) |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| The Regents of the University of Michigan | 1628 | 6/15/2009 | Name: **Donald J. Hutchinson**<br>Law Firm: **Miller, Canfield, Paddock and Stone, P.L.C.**<br>Title:<br>eMail: hutchinson@millercanfield.com<br>150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA)<br>**313-963-6420** |
| The Reynolds and Reynolds Company | 1027 | 6/15/2009 | Name: **Martin Eisenberg**<br>Law Firm: **Law Offices of Martin Eisenberg**<br>Title:<br>eMail: me@martineisenberglaw.com<br>Suite 1000, 50 Main Street, White Plains NY 10606 (USA)<br>**914-682-2044** |
| The Royal Bank of Scotland plc, ABN AMRO Bank N.V. and RBS Citizens N.A. | 1302 | 6/15/2009 | Name: **Andrew Brozman**<br>Law Firm: **Clifford Chance US LLP**<br>Title:<br>eMail: andrew.brozman@cliffordchance.com<br>31 W. 52nd Street, New York NY 10019-6131 (USA)<br>**212-878-8000** |
| The Scharine Group, Inc. | 1220 | 6/15/2009 | Name: **Phillip M. Wacker**<br>Law Firm:<br>Title: General Manager<br>eMail:<br>N4213 Scharine Road, Whitewater WI 53190 (USA)<br>**608-883-2880** |
| The Timken Company | 1104 | 6/15/2009 | Name: **James M. Sullivan**<br>Law Firm: **Arent Fox, LLP**<br>Title: Esquire<br>eMail:<br>1675 Broadway, New York NY 10019 (USA)<br>**212-484-3900** |
| The Timken Company | 1389 | 6/15/2009 | Name: **James M. Sullivan**<br>Law Firm: **Arent Fox LLP**<br>Title:<br>eMail:<br>1675 Broadway, New York NY 10019 (USA)<br>**212-484-3900** |
| The Wayne County Treasurer, The Oakland County Treasurer, and The City of Detroit | 971 | 6/15/2009 | Name: **Richard I. Kilpatrick**<br>Law Firm: **Kilpatrick and Associates, PC**<br>Title:<br>eMail: ecf@kaalaw.com<br>903 N. Opdyke Road, Suite C, Auburn Hills MI 48326 (USA)<br>**248-377-0700** |
| The Wayne County Treasurer, The Oakland County Treasurer, and the City of Detroit | 971 | 6/15/2009 | Name: **Richard I. Kilpatrick**<br>Law Firm: **Kilpatrick and Associates, P.C.**<br>Title:<br>eMail: ecf@kaalaw.com<br>903 N. Opdyke Road, Suite C, Auburn Hills MI 48326 (USA)<br>**248-377-0700** |
| The Wayne County Treasurer, The Oakland County Treasurer, and the City of Detroit | 971 | 6/15/2009 | Name: **Richard I. Kilpatrick**<br>Law Firm: **Kilpatrick and Associates, PC**<br>Title:<br>eMail: ecf@kaalaw.com<br>903 N. Opdyke Road, Suite C, Auburn Hills MI 48326 (USA)<br>**248-377-0700** |
| Thread Information Design, Inc. | 1021 | 6/12/2009 | Name: **Gerald L. Mills**<br>Law Firm:<br>Title:<br>eMail:<br>no information provided |
| ThyssenKrupp Steel North America, Inc., TWB Company LLC, ThyssenKrupp Crankshaft Co., LLC, ThyssenKr | 1442 | 6/15/2009 | Name: **Robert Sidorsky, a professional corporation**<br>Law Firm: **Butzel Long**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Timco, LLC | 967 | 6/12/2009 | Name: **Sheldon S. Toll**<br>Law Firm: **Sheldon S. Toll PLLC**<br>Title:<br>eMail: lawtoll@comcast.net<br>2000 Town Center, Suite 2100, Southfield MI 48075 (USA)<br>**248-351-5480** |
| TitanX Engine Cooling, Inc. | 860 | 6/12/2009 | Name: **Anglea Z. Miller**<br>Law Firm: **Sheldon S. Toll PLLC**<br>Title:<br>eMail:<br>PHILLIPS LYTLE LLP; One HSBC Center, Suite 3400, Buffalo NY 14203-2887 (USA)<br>**716-847-8400** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| TK Holdings, Inc. and all other legal entities associated with ultimate DUNS number 690545165 | 1438 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| TMI Custom Air Systems, Inc. and certain of its affiliates and subsidiaries | 1465 | 6/15/2009 | Name: **Jennifer L. Saffer**<br>Law Firm: **J.L. Saffer, P.C.**<br>Title:<br>eMail:<br>20 Vesey Street, 7th Floor, New York NY 10007 (USA)<br>**212-608-6968** |
| Toledo Molding & Die, Inc. | 2369 | 6/24/2009 | Name: **Mark H. Shapiro**<br>Law Firm: **Steinberg Shapiro & Clark**<br>Title:<br>eMail: shapiro@steinbergshapiro.com<br>24901 Northwestern Hwy. Suite 611, Southfield MI 48075 (USA)<br>**248-352-4700** |
| Toledo Molding & Die, Inc. | 2326 | 6/23/2009 | Name: **Mark H. Shapiro**<br>Law Firm: **Steinberg Shapiro & Clark**<br>Title:<br>eMail: shapiro@steinbergshapiro.com<br>24901 Northwestern Highway, Suite 611, Southfield MI 48075 (USA)<br>**248-352-4700** |
| Toro Energy of Indiana, LLC ("Toro Indiana") and Toro Energy of Michigan, LLC ("Toro Michigan") | 2160 | 6/22/2009 | Name: **Angela Z. Miller**<br>Law Firm: **Phillips Lytle LLP**<br>Title:<br>eMail:<br>One HSBC Center Suite 3400, Buffalo NY 14203-2887 (USA)<br>**716-847-8400** |
| Toyoda Gosei North America Corporation | 1418 | 6/15/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Ave. 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Toyota Motor Corporation | 2045 | 6/19/2009 | Name: **John A. Simon**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Ave. Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| Toyota Motor Sales, USA | 863 | 6/12/2009 | Name: **Wendy S. Walker**<br>Law Firm: **Morgan Lewis & Bockius LLP**<br>Title:<br>eMail: wwalker@morganlewis.com<br>101 Park Avenue, New York NY 10178 (USA)<br>**212-309-6000** |
| TPI Incorporated and certain of its subsidiaries | 1632 | 6/16/2009 | Name: **Kenneth S. Ziman**<br>Law Firm: **Simpson Thacher & Bartlett LLP**<br>Title:<br>eMail: kziman@stblaw.com<br>425 Lexington Avenue, New York NY 10017 (USA)<br>**212-455-2000** |
| Traffice Marketplaces,Inc. | 1995 | 6/18/2009 | Name: **Robert Sidorsky**<br>Law Firm: **Butzel Long, a professional corporation**<br>Title:<br>eMail: sidorsky@butzel.com<br>380 Madison Avenue 22nd Floor, New York NY 10017 (USA)<br>**212-818-1110** |
| Trico Products Corporation | 1392 | 6/15/2009 | Name: **Thomas R. Fawkes**<br>Law Firm: **Freeborn & Peters LLP**<br>Title:<br>eMail:<br>311 South Wacker Dr. Suite 3000, Chicago IL 60606 (USA)<br>**312-360-6000** |
| TRW Automotive U.S., LLC | 1006 | 6/15/2009 | Name: **G. Christopher Meyer**<br>Law Firm: **Squire, Sanders & Dempsey LLP**<br>Title:<br>eMail: cmeyer@ssd.com<br>4900 Key Tower, 127 Public Square, Cleveland OH 44114-1304 (USA)<br>**216-479-8500** |
| TT electronics plc, on behalf of subsidiaries AB Automotive Electronics Ltd., AB Electronic Products | 1930 | 6/19/2009 | Name: **Louis A. Curcio**<br>Law Firm: **Sonnenschein Nath & Rosenthal LLP**<br>Title:<br>eMail:<br>1221 Avenue of the Americas, New York NY 10020-1089 (USA)<br>**212-768-6700** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Turchan Technologies Group, Inc** | **DDN0001** | 6/12/2009 | Name: **Jahr Turchan**<br>Law Firm: **Turchan Technologies Group, Inc**<br>Title: Vice President<br>eMail: jahr@turchan.com<br>12825 Ford Road, Dearborn MI 48126 (USA)<br>**313-581-0043** |
| **TV Minority Company Inc.** | **1122** | 6/11/2009 | Name: **Stephen B. Foley**<br>Law Firm: **Stephen B. Foley, P.C.**<br>Title:<br>eMail: sfoley@sbfpc.com<br>9900 Pelham Road, Taylor MI 48180 (USA)<br>**31-295-2590** |
| **Ultralife Corporation** | **1019** | 6/12/2009 | Name: **Ingrid Schumann Palermo**<br>Law Firm: **Harter Secrest & Emery LLP**<br>Title:<br>eMail:<br>1600 Bausch & Lomb Place , Rochester NY 14604 (USA)<br>**585-232-6500** |
| **Unico Inc.** | **1331** | 6/15/2009 | Name: **James S. Carr**<br>Law Firm: **Kelley Drye & Warren LLP**<br>Title:<br>eMail:<br>101 Park Avenue, New York NY 10178 (USA)<br>**212.808.7800** |
| **Union Pacific Railroad Company** | **1014** | 6/15/2009 | Name: **Michael St. Patrick Baxter**<br>Law Firm: **Covington & Burling LLP**<br>Title:<br>eMail: mbaxter@cov.com<br>1201 Pennsylvania Avenue, NW, Washington DC 20004-2401 (USA)<br>**202-662-6000** |
| **Union Pacific Railroad Company** | **1062** | 6/15/2009 | Name: **Michael St. Patrick Baxter**<br>Law Firm: **Covington & Burling LLP**<br>Title:<br>eMail:<br>1201 Pennsylvania Avenue, N.W., Washington D.C. 20004-2401<br>**202.662.6000** |
| **Unique Fabricating, Inc.** | **1687** | 6/12/2009 | Name: **Daniel J. Bernard**<br>Law Firm: **Vercruysee Murray & Calzone PC**<br>Title:<br>eMail: dbernard@vmclaw.com<br>31780 Telegraph Road, Suite 200, Bingham Farms MI 48028 (USA)<br>**248-540-8019** |
| **Unisia Mexicana S.A. DE C.V.** | **1147** | 6/15/2009 | Name: **Paul J. Ricotta**<br>Law Firm: **Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**<br>Title:<br>eMail:<br>One Financial Center, Boston MA 02111 (USA)<br>**617-542-6000** |
| **United Parcel Service, Inc.** | **2007** | 6/19/2009 | Name: **Faye B. Feinstein**<br>Law Firm: **Quarles & Brady LLP**<br>Title:<br>eMail:<br>300 N. LaSalle Street Suite 4000, Chicago IL 60654 (USA) |
| **United REMC** | **774** | 6/12/2009 | Name: **James P. Moloy**<br>Law Firm: **Dann Pecar Newman & Kleiman, P.C.**<br>Title:<br>eMail:<br>One American Square, Suite 2300, Indianapolis IN 46282 (USA)<br>**317-632-3232** |
| **United States Steel Corporation** | **838** | 6/12/2009 | Name: **Mark D. Silverschotz**<br>Law Firm: **Reed Smith LLP**<br>Title:<br>eMail:<br>599 Lexington Avenue, 22nd Floor, New York NY 10022<br>**212.521.5400** |
| **University of Michigan** | **710** | 6/12/2009 | Name: **Donald J. Hutchinson**<br>Law Firm: **Miller, Canfield, Paddock and Stone, PLC**<br>Title:<br>eMail: hutchinson@millercanfield.com<br>150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA)<br>**313.963.6420** |
| **US Farathane Corporation** | **994** | 6/15/2009 | Name: **Stephen M. Gross**<br>Law Firm: **McDonald Hopkins PLC**<br>Title:<br>eMail: sgross@mcdonaldhopkins.com<br>39533 Woodward Ave., Ste 318, Bloomfield Hills MI 48304 (USA)<br>**248-646-5070** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **USF Holland, Inc.** | 789 | 6/12/2009 | Name: **Paul Traub**<br>Law Firm: **McDonald Hopkins PLC**<br>Title:<br>eMail: PTraub@ebglaw.com<br>Epstein Becker Green P.C., 250 Park Avenue, New York NY 10177-1211 (USA)<br>**212-351-4500** |
| **UTi United States, Inc.** | 2359 | 6/24/2009 | Name: **Walter Benzija**<br>Law Firm: **Halperin Battaglia Raicht, LLP**<br>Title:<br>eMail: wbenzjia@halperinlaw.net<br>555 Madison Avenue-9th Floor, New York NY 10022 (USA)<br>**212-765-9100** |
| **V2Soft Inc.** | 735 | 6/12/2009 | Name: **Joel D. Applebaum**<br>Law Firm: **CLARK HILL PLC**<br>Title:<br>eMail: japplebaum@clarkhill.com<br>151 S. Old Woodward Avenue, Suite 200, Birmingham MI 48009 (USA)<br>**313-965-8579** |
| **Valeo sylvania LLC** | 1675 | 6/17/2009 | Name: **Deborah Kovsky-Apap**<br>Law Firm: **Pepper Hamilton LLP**<br>Title:<br>eMail: kovskyd@pepperlaw.com<br>100 Renaissance Center Suite 360, Detroit MI 48243 (USA)<br>**313-259-7110** |
| **Valeo, Inc.** | 1262 | 6/15/2009 | Name: **Sean A. O'Neal**<br>Law Firm:<br>Title:<br>eMail:<br>One Liberty Plaza, New York NY 10006<br>**212.225.2000** |
| **Vector CANtech, Inc. and Vector Informatik GmbH** | 720 | 6/12/2009 | Name: **Donald J. Hutchinson**<br>Law Firm: **Miller, Canfield, Paddock and Stone, PLC**<br>Title:<br>eMail:<br>150 West Jefferson Avenue, Suite 2500, Detroit MI 48226 (USA)<br>**313.496.7536** |
| **Veolia Water Partners** | 1061 | 6/15/2009 | Name: **Jil Mazer-Marino**<br>Law Firm: **Meyer, Suozzi, English & Klein, P.C.**<br>Title:<br>eMail:<br>990 Stewart Avenue, Suite 300, Garden City NY 11530-9194 (USA)<br>**516.741.6565** |
| **Verizon Communications Inc.** | 985 | 6/15/2009 | Name: **Darryl S. Laddin**<br>Law Firm: **Arnall Golden Gregory LLP**<br>Title:<br>eMail:<br>171 17th Street NW, Suite 2100, Atlanta GA 30363-1031 (USA)<br>**404-837-8120** |
| **Verizon Communications Inc.** | 2009 | 6/19/2009 | Name: **Darryl S. Laddin**<br>Law Firm: **Arnall Golden Gregory LLP**<br>Title:<br>eMail:<br>171 17th Street NW, Suite 2100, Atlanta GA 30363-1031 (USA)<br>**404-873-8120** |
| **Veyance Technologies, Inc.** | 1358 | 6/15/2009 | Name: **Richard J. Bernard**<br>Law Firm: **Baker & Hostetler LLP**<br>Title:<br>eMail:<br>45 Rockefeller Plaza, New York NY 10111 (USA)<br>**212.589.4200** |
| **Visiocorp USA, Inc., Visiocorp Mexico, S.A. de C.V., and Visiocorp P.L.C.** | 1741 | 6/17/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center; 500 Woodward Avenue Suite 2700, Detroit MI 48226-3489 (USA)<br>**313-234-7100** |
| **Visiocorp USA, Inc._Visiocorp Mexico S.A. de C.V._Visiocorp PLC** | 1342 | 6/15/2009 | Name: **Salvatore A. Barbatano**<br>Law Firm: **Foley & Lardner LLP**<br>Title:<br>eMail:<br>One Detroit Center, 500 Woodward Avenue, Suite 2700, Detroit MI 48226-3489 (USA)<br>**313.234.7100** |
| **Visteon Corporation** | 1174 | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: mhammer@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**734-623-7075** |

General Motors Contract Assignment / Assumption
Exhibit:  Logged Supplier Objections

| Voith AG and Premier Manufacturing Support Services, Inc. | 743 | 6/12/2009 | Name: **Martin Eisenberg** |
| | | | Law Firm: **Law Offices of Martin Eisenberg** |
| | | | Title: |
| | | | eMail: me@martineisenberglaw.com |
| | | | Suite 1000, 50 Main Street, White Plains NY 10606 (USA) |
| | | | **914-682-2044** |
| Voith AG and Premier Manufacturing Support Services, Inc. | 743 | 6/12/2009 | Name: **Martin Eisenberg** |
| | | | Law Firm: **Law Offices of Martin Eisenberg** |
| | | | Title: |
| | | | eMail: me@martineisenberglaw.com |
| | | | Suite 1000, 50 Main Street, White Plains NY 10606 (USA) |
| | | | **914-682-2044** |
| WABCO Holdings, Inc. | 1180 | 6/15/2009 | Name: **Ann Marie Uetz** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 500 Woodward Avenue, suite 2700, Detroit MI 48226-3489 (USA) |
| | | | **313-234-7100** |
| Wahler Automotive Systems, Inc., Whaler Metalurgica Ltda, and Gustav Wahler GmbH | 1155 | 6/15/2009 | Name: **Colin T. Drake** |
| | | | Law Firm: **Bodman LLP** |
| | | | Title: |
| | | | eMail: cdrake@bodmanllp.com |
| | | | 6th Floor at Ford Field, 1901 St. Antoine Street, Detroit MI 48026 (USA) |
| | | | **313-393-7585** |
| Webasto Roof Systems, Inc. | 1127 | 6/15/2009 | Name: **Frank W. DiCastri** |
| | | | Law Firm: **Foley & Lardner LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 777 East Wisconsin Avenue, Milwaukee WI 53202 (USA) |
| | | | **414-271-2400** |
| Western Flyer Express, Inc. | 1282 | 6/15/2009 | Name: **Leslie S. Barr** |
| | | | Law Firm: **Windels, Marx, Lane & Mittendorf, LLP** |
| | | | Title: |
| | | | eMail: lbarr@windelsmarx.com |
| | | | 156 West 56th Street, New York NY 10019 (USA) |
| | | | **212-232-1000** |
| WhereNet Corp. | 2155 | 6/22/2009 | Name: **Merritt A. Pardini** |
| | | | Law Firm: **Katten Muchin Rosenman LLP** |
| | | | Title: |
| | | | eMail: |
| | | | 575 Madison Avenue, New York NY 10022-2585 (USA) |
| | | | **212-940-8800** |
| Willette aka Allied Digital Technologies | 1328 | 6/15/2009 | Name: **Pilip Bohl** |
| | | | Law Firm: **Gray Plant Mooty Mooty & Bennett P.A.** |
| | | | Title: |
| | | | eMail: phillip.bohl@gpmlaw.com |
| | | | 500 IDS Center, 80 South 8th Street, Minneapolis MN 55402 (USA) |
| | | | **612.632.3019** |
| Windsor Mold, Inc. and Windsor Mold USA Inc. | 946 | 6/12/2009 | Name: **P. Warren Hunt** |
| | | | Law Firm: **Kerr, Russell and Weber, PLC** |
| | | | Title: |
| | | | eMail: |
| | | | 500 Woodward Avenue, Suite 2500, Detroit MI 48226 (USA) |
| | | | **313-961-0200** |
| WITTE-Velbert GmbH & Co. KG | 1186 | 6/15/2009 | Name: **Mary Kay Shaver** |
| | | | Law Firm: **Varnum LLP** |
| | | | Title: |
| | | | eMail: mkshaver@varnumlaw.com |
| | | | Bridgewater Place, P.O. Box 352, Grand Rapids MI 49501-0352 (USA) |
| | | | **616-336-6000** |
| Worthington Industries, Inc. | 999 | 6/12/2009 | Name: **Andrea Fischer** |
| | | | Law Firm: **Olshan Grundman Frome Rosenzweig & Wolosky LLP** |
| | | | Title: |
| | | | eMail: |
| | | | Park Avenue Tower, 65 East 55th Street, New York NY 10022 (USA) |
| | | | **212-451-2300** |
| Xerox Capital Services, LLC as servicing agent for Xerox Corporation | 691 | 6/11/2009 | Name: **Stephen H. Gross** |
| | | | Law Firm: **Hodgson Russ LLP** |
| | | | Title: |
| | | | eMail: sgross@hodgsonruss.com |
| | | | 60 East 42nd Street, 37th Floor, New York NY 10165-0150 (USA) |
| | | | **212-661-3535** |
| Yahoo! Inc. | 1056 | 6/12/2009 | Name: **Karel S. Karpe** |
| | | | Law Firm: **White and Williams, LLP** |
| | | | Title: Esquire |
| | | | eMail: |
| | | | One Penn Plaza, Suite 4110, New York NY 10119 (USA) |
| | | | **212-631-4421** |

General Motors Contract Assignment / Assumption

Exhibit:  Logged Supplier Objections

| | | | |
|---|---|---|---|
| **Yarema Die & Engineering Co.** | **1774** | 6/17/2009 | Name: **Kenneth A. Nathan**<br>Law Firm: **Nathan Zousmer, P.C.**<br>Title:<br>eMail: knathan@nathanzousmer.com<br>29100 Northwestern Highway Suite 260, Southfield MI 48034 (USA)<br>**248-351-0099** |
| **Yazaki North America, Inc.** | **1195** | 6/12/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: mhammer@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| **Yeaton Research, Inc.** | **940** | 6/12/2009 | Name: **G. Scott Yeaton**<br>Law Firm:<br>Title: President<br>eMail: syeaton@rdscypress.com<br>5552 Cerritos Avenue, Suite K, Cypress CA 90630 (USA)<br>**714-527-0606** |
| **Yorozu North America, Inc. (a/k/a/ Yorozu America Corporation)** | **1116** | 6/15/2009 | Name: **Michael C. Hammer**<br>Law Firm: **Dickinson Wright PLLC**<br>Title:<br>eMail: mhammer@dickinsonwright.com<br>500 Woodward Ave., Suite 4000, Detroit MI 48226 (USA)<br>**313-223-3500** |
| **YRC Logistics Services, Inc.** | **781** | 6/12/2009 | Name: **Paul Traub**<br>Law Firm: **Epstein Becker Green P.C.**<br>Title:<br>eMail:<br>250 Park Avenue, New York NY 10177-1211 (USA)<br>**212.351.4500** |
| **YRC Worldwide, Inc.** | **793** | 6/12/2009 | Name: **Paul Traub**<br>Law Firm: **Epstein Becker Green P.C.**<br>Title:<br>eMail: PTraub@ebglaw.com<br>Epstein Becker Green P.C., 250 Park Avenue, New York NY 10177-1211 (USA)<br>**212-351-4500** |
| **YRC, Inc., formerly known as Roadway Express, Inc.** | **785** | 6/12/2009 | Name: **Paul Traub**<br>Law Firm: **Epstein Becker Green P.C.**<br>Title:<br>eMail: PTraub@ebglaw.com<br>Epstein Becker Green P.C., 250 Park Avenue, New York NY 10177-1211 (USA)<br>**212-351-4500** |
| **Zeppelin-Stiftung and ZF Friedrichshafen AG** | **683** | 6/11/2009 | Name: **John J. Hunter, Jr.**<br>Law Firm: **Hunter & Schank Co. LPA**<br>Title:<br>eMail: jhunter@hunterschank.com<br>One Canton Square; 1700 Canton Avenue, Toledo OH 43624 (USA)<br>**419-255-4300** |
| **Zeppelin-Stiftung and ZF Friedrichshafen AG** | **683** | 6/11/2009 | Name: **John J. Hunter, Jr.**<br>Law Firm: **Hunter & Schank Co. LPA**<br>Title:<br>eMail: jhunter@hunterschank.com<br>One Canton Square; 1700 Canton Avenue, Toledo OH 43624 (USA)<br>**419-255-4300** |
| **ZF Lenksysteme GmbH** | **684** | 6/11/2009 | Name: **John J. Hunter, Jr.**<br>Law Firm: **Hunter & Schank Co. LPA**<br>Title:<br>eMail: jhunter@hunterschank.com<br>One Canton Square; 1700 Canton Avenue, Toledo OH 43624 (USA)<br>**419-255-4300** |

**<u>Exhibit K</u>**

**Miscellaneous Objections**

**Miscellaneous Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2018 | White Marsh/ Memphis Lenders | The White Marsh/Memphis Lenders, creditors with a security interests certain facilities, do not oppose the sale, but argue that (i) the Debtors cannot sell the facilities to the Purchaser free and clear of the lenders' security interests without fully satisfying the claims of those lenders under section 363(f)(3), (ii) the lenders must be provided an opportunity to credit bid, and (iii) a replacement lien in the proceeds of the sale, equity interests in the Purchaser, does not adequately protect the lenders' interests. | The Debtors' response to this objection is set forth at length in the Reply. |
| 2052 | Toyota Motor Corporation | Toyota Motor Corporation ("**Toyota**") asserts that the Debtors cannot assign certain contracts between the Debtors and Toyota to the Purchaser without Toyota's consent. | Toyota is not objecting to the sale, but is objecting to the assumption and assignment of certain contracts between the Debtors and Toyota without Toyota's consent. The Debtors are willing to delay the assumption and assignment of any contracts with Toyota until a later date. In the meantime, the Debtors will negotiate with Toyota in an attempt to reach a consensual resolution as to the assumption and assignment of the Toyota contracts. In the absence of a consensual resolution, the Debtors will ask the Court to determine the substance of the Toyota Objection as it relates to any contracts the Debtors are seeking to assume and assign to the Purchaser. As such, the Court need not determine the merits of the Toyota Objection prior to entering the Sale Approval Order. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2056 | GMAC LLC | On June 1, 2009, the Court entered an Order authorizing the Debtors to enter into and approving that certain ratification agreement (the "**Ratification Agreement**") between the Debtors and GMAC LLC ("**GMAC**").  The Ratification Agreement authorized the Debtors to continue their prepetition financial and operating agreements and arrangements (the "**Operative Documents**") with GMAC, pending the assumption and assignment to the Purchaser of the Operative Documents pursuant to the Sale Motion. The Ratification Agreement further provides that the Purchaser is to assume and perform the Debtors' obligations under the Operative Documents in accordance with the terms thereunder.<br><br>GMAC consents to and supports the Sale but has reserved its rights to object to the Sale to the extent that certain undisclosed schedules to the MPA do not comply with the requirements of the Ratification Agreement. | The Debtors are in the process of resolving GMAC's reservation of rights and do not anticipate GMAC objecting to the Sale. |

**<u>Exhibit L</u>**

**NADA Statement on GM's Revised Participation Agreement**

McLean, Va. (June 8, 2009) -- The National Automobile Dealers Association (NADA) has reviewed and supports GM's amendments to the Participation Letter Agreement. We're especially pleased that GM moved so quickly to meet with NADA and the GM National Dealer Council on such short notice to review and to discuss the serious concerns that dealers had with the original agreement.

"I especially commend GM for its flexibility and its willingness to make substantive clarifications and modifications to address dealer concerns. We believe GM has made a very good faith effort, given the unprecedented circumstances facing GM and the industry," said NADA chairman John McEleney.

While NADA is not in a position to formally endorse the Participation Agreement, we believe the revised document addresses the majority of dealer concerns.

Contacts:

David Hyatt
Vice President
NADA Public Affairs
(703) 821-7120
dhyatt@nada.org

Charles Cyrill
Director of Public Relations
NADA Public Affairs
(703) 821-7121
ccyrill@nada.org

**<u>Exhibit M</u>**

Doc. No. 91
**SALE OF BUSINESS**

# GENERAL MOTORS CORPORATION

September 26, 2007

Mr. Cal Rapson
Vice President and Director
General Motors Department
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan  48214

Dear Mr. Rapson:

During these negotiations, the Union requested the
Corporation to agree that any sale of an operation as
an ongoing business would require the buyer to
assume the 2007 GM-UAW Collective Bargaining
Agreement.  The Corporation agreed to do so in the
case of any such sale during the term of the 2007
Agreement.

Very truly yours,

Diana D. Tremblay
GMNA Vice President
Labor Relations

559

CBA-2007-004716