**EXECUTION VERSION**

## INTERCREDITOR AGREEMENT

Intercreditor Agreement (this "Agreement"), dated as of February 11, 2009, among CITICORP USA, INC., as agent (in such capacity, together with its successors and assigns, and as more specifically defined below, the "Bank Priority Representative") for the Bank Priority Secured Parties (as defined below), CITICORP USA, INC., as agent (in such capacity, together with its successors and assigns, and as more specifically defined below, the "Hedge Priority Representative") for the Hedge Priority Secured Parties (as defined below), THE UNITED STATES DEPARTMENT OF THE TREASURY, as lender (in such capacity, together with its successors and assigns, and as more specifically defined below, the "UST Representative"), GENERAL MOTORS CORPORATION ("GM") and each of the Subsidiaries and Affiliates of GM that are signatories to this Agreement (together with GM, collectively, the "Grantors").

### RECITALS

### W I T N E S S E T H :

WHEREAS, GM, General Motors of Canada Limited ("GM Canada"), Saturn Corporation ("Saturn"), the Bank Priority Representative and certain financial institutions and other entities are parties to the Amended and Restated Credit Agreement, dated as of July 20, 2006 (as amended by the First Amendment thereto, dated as of the date hereof (the "First Amendment"), and as may from time to time be further amended, modified, supplemented or otherwise revised, Refinanced or replaced, the "Credit Agreement"), pursuant to which such financial institutions and other entities have agreed to make loans and other financial accommodations to GM and GM Canada;

WHEREAS, GM, Saturn and the Bank Priority Representative entered into the US Security Agreement, dated as of July 20, 2006 (as the same may from time to time be amended, modified, supplemented or otherwise revised or replaced, the "Bank Priority US Security Agreement"), pursuant to which GM and Saturn granted to the Bank Priority Representative Liens (as defined below) on the Bank Priority Collateral (as defined below) as security for payment and performance of the Bank Priority Secured Obligations (as defined below);

WHEREAS, GM, Saturn and the Hedge Priority Representative entered into a Second Priority US Security Agreement, dated as of July 20, 2006 (as the same may from time to time be amended, modified, supplemented or otherwise revised or replaced, the "Hedge Priority US Security Agreement"), pursuant to which GM and Saturn granted to the Hedge Priority Representative Liens on the Bank Priority Collateral as security for payment and performance of the Hedge Priority Secured Obligations (as defined below);

WHEREAS, GM and the UST Representative entered into that certain Loan and Security Agreement dated as of December 31, 2008, pursuant to which the UST Representative has agreed to make loans and other financial accommodations to GM, and GM granted to the UST Representative, among other things, senior Liens on the UST Priority Collateral and junior Liens on the Bank Priority Collateral, in each case as security for payment of the UST Secured Obligations (as defined below);

WHEREAS, the Grantors (other than GM) and the UST Representative entered into a Guaranty and Security Agreement, dated as of December 31, 2008 (as the same may from time to time be amended, modified, supplemented or otherwise revised, the "UST Security Agreement"), pursuant to which such Grantors granted to the UST Representative, among other things, senior Liens on the UST Priority Collateral and junior Liens on the Bank Priority Collateral, in each case as security for payment of the UST Secured Obligations;

WHEREAS, the Grantors will enter into the UST-Related Security Documents, pursuant to which the Grantors will grant to the Bank Priority Representative and Hedge Priority Representative junior Liens on the UST Priority Collateral as security for payment and performance of the Bank Priority Secured Obligations and the Hedge Priority Secured Obligations, respectively;

WHEREAS, the Bank Priority Secured Parties have agreed to amend the Credit Agreement in order to permit, among other things, the grant to the UST Representative of junior Liens on the Bank Priority Collateral as security for payment and performance of the UST Secured Obligations; and the UST Secured Parties have agreed to such amendment, including the grant to the Bank Priority Representative and the Hedge Priority Representative of junior Liens on the UST Priority Collateral as security for payment and performance of the Bank Priority Secured Obligations and the Hedge Priority Secured Obligations, respectively; each in accordance with the terms and conditions of this Agreement;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants herein contained and other good and valuable consideration, the existence and sufficiency of which is expressly recognized by all of the parties hereto, the parties agree as follows:

**Section 1.    Defined Terms.**

1.1    <u>Definitions</u>.

(a)    Unless otherwise defined herein, capitalized terms used herein shall have the meanings given to them in the Credit Agreement, as such terms are defined therein as of the date hereof.

(b)    The following terms shall have the respective meanings set forth below:

"<u>Additional US Government Representative</u>" means each agent or trustee for the holders of any Additional US Government Debt.

"<u>Bank Priority Collateral</u>" means all (i) property of the type that constitutes "Collateral," as that term is defined in any US Security Document existing immediately prior to the First Amendment Effective Date (for the sake of clarity, including after acquired property that constitutes "Collateral" as so defined, and Proceeds of the foregoing), and (ii) property that is required to become "Collateral" pursuant to Section 5.5(a) or (b) of the Credit Agreement; <u>provided</u>, <u>however</u>, that "Bank Priority Collateral" shall not include Additional Collateral.

"<u>Bank Priority Creditors</u>" means the Canadian Secured Parties and the US Secured Parties.

"<u>Bank Priority Documents</u>" means the "Loan Documents," as that term is defined in the Credit Agreement; <u>provided</u>, <u>however</u>, that "Bank Priority Documents" shall not include this Agreement.

"<u>Bank Priority Pledged Collateral</u>" has the meaning set forth in Section 2.1(o) below.

"<u>Bank Priority Representative</u>" means Citicorp USA, Inc., in its capacity as agent for the Lenders, together with its successors and assigns in such capacity.

"<u>Bank Priority Secured Obligations</u>" means the "Total Secured Exposure," as that term is defined in the Credit Agreement.

"<u>Bank Priority Secured Obligations Payment Date</u>" means, subject to Section 2.1(i) below, the first date on which (i) the Bank Priority Secured Obligations (other than those that constitute Unasserted

Contingent Obligations), and all Post-Petition Charges (if any) owed to the Bank Priority Representative and/or any Bank Priority Secured Party, have been indefeasibly paid in cash in full (or cash collateralized or defeased in accordance with the terms of the Bank Priority Documents), (ii) all commitments to extend credit under the Bank Priority Documents have been terminated, (iii) there are no outstanding letters of credit or similar instruments issued under the Bank Priority Documents (other than such as have been cash collateralized or defeased in accordance with the terms of the Bank Priority Documents), and (iv) the Bank Priority Representative has delivered a written notice to the Hedge Priority Representative and, unless the UST Secured Obligations Payment Date has occurred, the UST Representative, stating that the events described in clauses (i), (ii) and (iii) above have occurred to the satisfaction of the Bank Priority Representative (which notice shall be promptly provided by the Bank Priority Representative).

"Bank Priority Secured Parties" means the Bank Priority Representative, the Bank Priority Creditors and any other holders of the Bank Priority Secured Obligations.

"Bank Priority Standstill Period" has the meaning set forth in Section 3.2(a) below.

"Bank Priority US Security Agreement" has the meaning set forth in the Recitals.

"Bankruptcy Code" means the United States Bankruptcy Code (11 U.S.C. §§ 101-1532), as amended from time to time.

"Bankruptcy Law" means each of the Bankruptcy Code and any similar federal, state or foreign law for the relief of debtors.

"Business Day" means any day other than a Saturday, Sunday or any other day on which national banks in New York, New York or Canada are not open for business.

"Cash Collateral" has the meaning provided in Section 363(a) of the Bankruptcy Code.

"Credit Agreement" has the meaning set forth in the Recitals.

"DIP Financing" means any financing obtained by any Grantor during any Insolvency Proceeding or otherwise pursuant to any Bankruptcy Law, including any such financing obtained by any Grantor under Section 363 or 364 of the Bankruptcy Code or under any similar provision of any Bankruptcy Law.

"First Amendment" has the meaning set forth in the Recitals.

"GM Canada" has the meaning set forth in the Recitals.

"Guarantor UST Loan Agreement Obligations" means, with respect to any Grantor (other than with respect to such Grantor's obligations in its capacity as a primary obligor), all obligations and liabilities of such Grantor arising or which may arise under or in connection with the UST Loan Documents to which such Grantor is a party, in each case whether on account of guarantee obligations, reimbursement obligations, fees, indemnities, costs, expenses or otherwise (including, without limitation, all fees and disbursements of counsel that are required to be paid by such Grantor pursuant to the terms of such documentation).

"Hedge Priority Agreement" means the collective reference to any agreements or instruments evidencing Hedge Priority Secured Obligations.

"Hedge Priority Documents" means each Hedge Priority Agreement, each Hedge Priority Security Agreement and each Hedge Priority Guarantee.

"Hedge Priority Guarantee" means any guarantee by GM and/or Saturn of any or all of the Hedge Priority Secured Obligations.

"Hedge Priority Secured Obligations" means the Hedging Obligations held by the Hedging Secured Parties.

"Hedge Priority Secured Obligations Payment Date" means, subject to Section 2.1(i) below, the first date after the Bank Priority Secured Obligations Payment Date on which (i) the Hedge Priority Secured Obligations, and all Post-Petition Charges (if any) owed to the Hedge Priority Representative and/or any Hedge Priority Secured Party, have been indefeasibly paid in cash in full or terminated (or cash collateralized or defeased in accordance with the terms of the Hedge Priority Documents), and (ii) unless the UST Secured Obligations Payment Date has occurred, the Hedge Priority Representative has delivered a written notice to the UST Representative stating that the events described in clause (i) above have occurred to the satisfaction of the Hedge Priority Representative (which notice shall be promptly provided by the Hedge Priority Representative).

"Hedge Priority Secured Parties" means the Hedge Priority Representative, the Hedging Secured Parties and any other holders of the Hedge Priority Secured Obligations.

"Hedge Priority Representative" means Citicorp USA, Inc., in its capacity as agent for the Hedging Secured Parties, together with its successors and assigns in such capacity.

"Hedge Priority US Security Agreement" has the meaning set forth in the Recitals.

"Insolvency Proceeding" means each of the following, in each case with respect to GM or any other Grantor or any property or Indebtedness of GM or any other Grantor:  (i) any voluntary or involuntary case or proceeding under any Bankruptcy Law or any other voluntary or involuntary insolvency, reorganization or bankruptcy case or proceeding, (ii) any case or proceeding seeking receivership, liquidation, reorganization or winding up, or other similar case or proceeding, (iii) any case or proceeding seeking arrangement, adjustment, protection, relief or composition of any debt, (iv) any case or proceeding seeking the entry of an order for relief or the appointment of a custodian, receiver, trustee or other similar official, or (v) any general assignment for the benefit of creditors.

"Lien" means any mortgage, pledge, hypothecation, assignment for security, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement and any capital lease having substantially the same economic effect as any of the foregoing).

"Notice" has the meaning set forth in Section 5.1 below.

"Permitted Refinancing Representative" means any agent or trustee for the holders under any Permitted Refinancing Debt.

"Post-Petition Charges" means all interest, fees, expenses or other charges or amounts accruing or that would have accrued pursuant to the Credit Agreement, the Hedge Priority Documents or the UST Loan Agreement, as applicable, Section 506 of the Bankruptcy Code or any other provision of Bankruptcy Law, after the commencement of any Insolvency Proceeding, irrespective of whether a claim

for post-filing or post-petition interest (or entitlement to fees or expenses or other charges or amounts) is allowed in any such Insolvency Proceeding.

"Post-Petition Securities" means any debt securities or other Indebtedness received in full or partial satisfaction of any claim as part of any Insolvency Proceeding.

"Proceeds" means all "proceeds" as such term is defined in Section 9-102(a)(64) of the Uniform Commercial Code in effect in the State of New York on the date hereof.

"President's Designee" means the "President's Designee," as that term is defined in the UST Loan Agreement.

"Refinancing" or "Refinance" means, with respect to any Indebtedness, any other Indebtedness (including any DIP Financing and any Post-Petition Securities received on account of such Indebtedness) issued as part of a refinancing, extension, renewal, defeasance, discharge, amendment, restatement, modification, supplement, substitution, restructuring, replacement, exchange, refunding or repayment thereof.

"Relevant Representative" means the Bank Priority Representative and, after the Bank Priority Secured Obligations Payment Date, the Hedge Priority Representative.

"Saturn" has the meaning set forth in the Recitals.

"Secured Obligations" means, collectively, (i) all Bank Priority Secured Obligations, (ii) all Hedge Priority Secured Obligations, and (iii) all UST Secured Obligations.

"Secured Parties" means the Bank Priority Secured Parties, the Hedge Priority Secured Parties and the UST Secured Parties.

"Senior Recovery" has the meaning set forth in Section 2.1(i) below.

"Unasserted Contingent Obligations" means, at any time, Bank Priority Secured Obligations, Hedge Priority Secured Obligations or UST Secured Obligations, as the case may be, for taxes, costs, indemnifications, reimbursements, damages and other liabilities (excluding (i) the principal of, and interest and premium (if any) on, and fees and expenses relating to, any Bank Priority Secured Obligation or UST Secured Obligation, as the case may be, and (ii) contingent reimbursement obligations with respect to amounts that may be drawn under outstanding letters of credit) with respect to which no assertion of liability (whether oral or written) and no claim or demand for payment (whether oral or written) has been made (and, in the case of contingent reimbursement obligations with respect to indemnification, no notice for indemnification has been issued by the indemnitee) at such time.

"Uniform Commercial Code" means the Uniform Commercial Code as in effect from time to time in the applicable jurisdiction.

"UST Loan Agreement" means the Loan and Security Agreement, dated as of December 31, 2008, by and between GM and The United States Department of the Treasury, as the same may from time to time be amended, modified, supplemented or otherwise revised; provided, however, that following the incurrence of any Permitted Refinancing Debt and upon the applicable Permitted Refinancing Representative's agreement in writing to be bound by the terms of this Agreement as if originally a party hereto, "UST Loan Agreement" shall also mean the loan agreement (or similar agreement, instrument or document) executed in connection with the incurrence of such Permitted

Refinancing Debt; provided, further, however, that following the incurrence of any Additional US Government Debt and upon the applicable Additional US Government Representative's agreement in writing to be bound by the terms of this Agreement as if originally a party hereto, "UST Loan Agreement" shall also mean the loan agreement (or similar agreement, instrument or document) executed in connection with the incurrence of such Additional US Government Debt.

"UST Loan Agreement Obligations" means, collectively, the unpaid principal of and interest on the advances under the UST Loan Agreement and all other obligations and liabilities of GM and any Subsidiary of GM that is a borrower, issuer or primary obligor under the UST Loan Agreement (including, without limitation, interest accruing at the then applicable rate provided in the UST Loan Agreement after the maturity of the Indebtedness thereunder and all Post-Petition Charges) to the holders of such Indebtedness or other obligations, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, the UST Loan Documents or any other document made, delivered or given in connection with any of the foregoing, in each case whether on account of principal, interest, reimbursement obligations, fees, prepayment premiums, indemnities, costs, expenses or otherwise (including, without limitation, all fees and disbursements of counsel to any UST Representative or to the holders of such obligations that are required to be paid by GM or any other Grantor pursuant to the terms of any of the foregoing agreements).

"UST Loan Documents" means the "Loan Documents," as that term is defined in the UST Loan Agreement; provided, however, that following the incurrence of any Permitted Refinancing Debt and upon the applicable Permitted Refinancing Representative's agreement in writing to be bound by the terms of this Agreement as if originally a party hereto, "UST Loan Documents" shall also mean the applicable Permitted Refinancing Documents; provided, further, however, that following the incurrence of any Additional US Government Debt and upon the applicable Additional US Government Representative's agreement in writing to be bound by the terms of this Agreement as if originally a party hereto, "UST Loan Documents" shall also mean the applicable Additional US Government Documents.

"UST Priority Collateral" means all property that constitutes "Facility Collateral," as that term is defined in the UST Loan Agreement, other than the Bank Priority Collateral.

"UST Priority Pledged Collateral" has the meaning set forth in Section 2.2(o) below.

"UST Recovery" has the meaning set forth in Section 2.2(i) below.

"UST Representative" means The United States Department of the Treasury, in its capacity as lender under the UST Loan Documents, together with its successors and assigns in such capacity; provided, however, that following the incurrence of any Permitted Refinancing Debt and upon the applicable Permitted Refinancing Representative's agreement in writing to be bound by the terms of this Agreement as if originally a party hereto, the UST Representative shall be deemed to be the agent of such Permitted Refinancing Representative for all purposes under this Agreement; provided further, however, that following the incurrence of any Additional US Government Debt and upon the applicable Additional US Government Representative's agreement in writing to be bound by the terms of this Agreement as if originally a party hereto, the UST Representative shall be deemed to be the agent of such Additional US Government Representative for all purposes under this Agreement.

"UST Secured Obligations" means, without duplication, (i) all UST Loan Agreement Obligations; and (ii) all Guarantor UST Loan Agreement Obligations.

"UST Secured Obligations Payment Date" means, subject to Section 2.2(i) below, the first date on which (i) the UST Secured Obligations (other than those that constitute Unasserted Contingent Obligations), and all Post-Petition Charges (if any) owed to the UST Representative and/or any UST Secured Party, have been indefeasibly paid in cash in full (or cash collateralized or defeased in accordance with the terms of the UST Loan Documents), (ii) all commitments to extend credit under the UST Loan Documents have been terminated, (iii) there are no outstanding letters of credit or similar instruments issued under the UST Loan Documents (other than such as have been cash collateralized or defeased in accordance with the terms of the UST Loan Documents), and (iv) unless the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date have both occurred, the UST Representative has delivered a written notice to the Relevant Representative stating that the events described in clauses (i), (ii) and (iii) above have occurred to the satisfaction of the UST Representative (which notice shall be promptly provided by the UST Representative).

"UST Secured Parties" means, at any time, the UST Representative and any other holder of UST Secured Obligations outstanding at such time.

"UST Security Agreement" has the meaning set forth in the Recitals.

"UST Standstill Period" has the meaning set forth in Section 3.1(a) below.

1.2    Other Definitional Provisions.

(a)    The words "hereof," "herein", "hereto" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, subsection and Schedule references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(c)    Where the context requires, terms relating to the Collateral or any part thereof, when used in relation to a Grantor, shall refer to such Grantor's Collateral or the relevant part thereof.

**Section 2.    Intercreditor Provisions.**

2.1    UST Secured Debt. The UST Representative, for itself and each UST Secured Party, with respect to the UST Secured Obligations, agrees to, and shall, be bound by the following terms and conditions:

(a)    Any and all Liens on the Bank Priority Collateral now existing or hereafter created arising in favor of the UST Representative or any UST Secured Party securing the UST Secured Obligations, regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, are expressly junior in priority, operation and effect to any and all Liens on the Bank Priority Collateral now existing or hereafter created or arising in favor of the Bank Priority Representative or the Bank Priority Secured Parties securing the Bank Priority Secured Obligations and the Hedge Priority Representative or the Hedge Priority Secured Parties securing the Hedge Priority Secured Obligations, respectively, notwithstanding (i) anything to the contrary contained in any agreement or filing to which the UST Representative or any UST Secured Party may now or hereafter be a party, and regardless of the time, order or method of grant, attachment, recording or perfection of any financing statements or other security interests, assignments, pledges, deeds, mortgages and other Liens, charges or encumbrances or any defect or deficiency or alleged defect or deficiency in any of the foregoing, (ii) any provision of the

Uniform Commercial Code or any applicable law or any agreement with respect to the Bank Priority Secured Obligations, the Hedge Priority Secured Obligations or the UST Secured Obligations or any other circumstance whatsoever, and (iii) the fact that any such Liens in favor of the Bank Priority Representative or any Bank Priority Secured Party securing any of the Bank Priority Secured Obligations or in favor of the Hedge Priority Representative or any Hedge Priority Secured Party securing any of the Hedge Priority Secured Obligations are (A) subordinated to any Lien securing any obligation of any Grantor other than the UST Secured Obligations, or (B) otherwise subordinated, voided, avoided, invalidated or lapsed.

(b)    Neither the UST Representative nor any UST Secured Party shall object to or contest, or support any other Person in objecting to or contesting, in any proceeding (including, without limitation, any Insolvency Proceeding), the validity, extent, perfection, priority or enforceability of any Lien on the Bank Priority Collateral granted to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party; provided, however, that the UST Representative and UST Secured Parties shall be permitted to negotiate with the Bank Priority Representative, Bank Priority Secured Parties, Hedge Priority Representative and/or Hedge Priority Secured Parties, as applicable, to amend this Agreement regarding, inter alia, the relative rights of the Secured Parties in the Bank Priority Collateral; provided further, however, that nothing contained herein shall obligate or require the Bank Priority Representative, the Hedge Priority Representative, any Bank Priority Secured Party or any Hedge Priority Secured Party to negotiate with the UST Representative or any UST Secured Party regarding, or to agree to, any such suggested amendment.  Notwithstanding any failure by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party to perfect its Liens on the Bank Priority Collateral or any avoidance, invalidation or subordination by any third party or court of competent jurisdiction of the Liens on the Bank Priority Collateral granted to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party, the priority and rights as between the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties, on the one hand, and the UST Representative and the UST Secured Parties, on the other hand, with respect to the Bank Priority Collateral shall be as set forth herein.

(c)    Neither the UST Representative nor any UST Secured Party shall, in or in connection with any Insolvency Proceeding, file any pleadings or motions, take any position at any hearing or proceeding of any nature, or otherwise take any action whatsoever, in each case with respect to any of the Bank Priority Collateral, including, without limitation, with respect to the determination of any Liens or claims held by the Bank Priority Representative, the Hedge Priority Representative, any Bank Priority Secured Party or any Hedge Priority Secured Party or the value of any claims of such parties under Section 506(a) of the Bankruptcy Code or otherwise; provided, however, that the UST Representative and any UST Secured Party may file a proof of claim in any Insolvency Proceeding, subject to and consistent with the limitations contained in this Agreement; provided further, however, that the UST Representative or any UST Secured Party may seek to provide DIP Financing to any Grantor and, in connection therewith, to obtain Liens on any or all of the Bank Priority Collateral that may be superior to, or pari passu with, the rights of the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and/or the Hedge Priority Secured Parties; provided further, however, that nothing contained herein shall be construed as a consent by the Bank Priority Representative, any of the Bank Priority Secured Parties, the Hedge Priority Representative or any of the Hedge Priority Secured Parties to such DIP Financing or any Liens granted in connection therewith, or a waiver by any such party of its right to object to any such DIP Financing or any Liens granted in connection therewith.

(d)    If any Grantor becomes subject to any Insolvency Proceeding, and if the Relevant Representative consents in writing to the use of Cash Collateral that constitutes Bank Priority Collateral,

then the UST Representative and each UST Secured Party shall be deemed to have consented to, and will not raise any objection to or support any other Person objecting to, the use of such Cash Collateral, and will not request or accept adequate protection or any other relief in connection with the use of such Cash Collateral except as set forth in Section 2.1(h) below.

(e)    If any Grantor becomes subject to any Insolvency Proceeding, and if the Relevant Representative consents in writing to the provision of any DIP Financing to any Grantor, which DIP Financing requires the subordination of the Liens on the Bank Priority Collateral securing the Bank Priority Secured Obligations and the Hedge Priority Secured Obligations to Liens on the Bank Priority Collateral that will secure obligations under any DIP Financing or proposed DIP Financing to such Grantor, whether or not some or all of the proceeds thereof are being used to Refinance all or any portion of the Bank Priority Secured Obligations, then the UST Representative and each UST Secured Party will subordinate (and will be deemed hereunder to have subordinated) its Liens (other than any such Liens granted under the DIP Financing) on and interests in the Bank Priority Collateral (including Liens, if any, granted as adequate protection of its interests in the Bank Priority Collateral) (i) to the Liens on the Bank Priority Collateral that will secure obligations under such DIP Financing on the same terms as the Liens securing the Bank Priority Secured Obligations and Hedge Priority Secured Obligations are subordinated thereto (and such subordination will not alter in any manner the terms of this Agreement), or, to the extent the proceeds of such DIP Financing Refinance all or any portion of the Bank Priority Secured Obligations, on the same terms as the Hedge Priority Secured Obligations are subordinated to the Bank Priority Secured Obligations pursuant to Annex A to the Hedge Priority US Security Agreement and (ii) to any adequate protection provided to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party on account of the applicable party's interests in the Bank Priority Collateral, in connection with the provision of such DIP Financing. Neither the UST Representative nor any UST Secured Party will request or accept adequate protection or any other relief in connection with the subordination of Liens described in this Section 2.1(e), except as set forth in Section 2.1(h) below.

(f)    Neither the UST Representative nor any UST Secured Party will seek relief from the automatic stay or from any other stay in any Insolvency Proceeding, or take any action in derogation thereof, in each case with respect to any Bank Priority Collateral, without the prior written consent of the Relevant Representative; provided, however, that the UST Representative or any UST Secured Party shall be permitted to take any of the foregoing actions with respect to a Grantor in connection with the provision or proposed provision by the UST Representative or any UST Secured Party of DIP Financing to such Grantor; provided further, however, that nothing contained herein shall be construed as a consent by the Bank Priority Representative, any of the Bank Priority Secured Parties, the Hedge Priority Representative or any of the Hedge Priority Secured Parties to such DIP Financing, or a waiver by any such party of its right to object to any such relief from the automatic stay or any other stay.

(g)    Neither the UST Representative nor any UST Secured Party will elect or seek to elect application of Section 1111(b)(2) of the Bankruptcy Code to its respective claims or Liens with respect to the Bank Priority Collateral without the prior written consent of the Relevant Representative.

(h)    Neither the UST Representative nor any UST Secured Party shall object to or contest, or support in any manner any other Person objecting to or contesting, (i) any request by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party seeking adequate protection of such party's interests in the Bank Priority Collateral, or the provision of any adequate protection of such interests to any such party, (ii) any objection by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party to any motion, relief, action or proceeding based on a claim of a lack of adequate protection with respect to such party's interests in the Bank Priority Collateral, or (iii) the payment of

Post-Petition Charges to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party with respect to the Bank Priority Collateral. Notwithstanding anything contained in this Section 2.1(h) (but subject to all other provisions of this Agreement, including, without limitation, Section 2.1(l) below), in any Insolvency Proceeding, if the Bank Priority Representative, any of the Bank Priority Secured Parties, the Hedge Priority Representative or any of the Hedge Priority Secured Parties is granted adequate protection of its interests in the Bank Priority Collateral, whether in connection with any DIP Financing or use of Cash Collateral or otherwise, then the UST Representative and/or any UST Secured Party may seek or accept adequate protection with respect to its interests in the Bank Priority Collateral; provided, however, that such adequate protection must be solely of the same kind and, if such adequate protection is in the form of a Lien, be granted solely on the same assets, as the adequate protection provided to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative and/or any Hedge Priority Secured Party, as applicable, with respect to its interests in the Bank Priority Collateral; provided further, however, that any adequate protection provided to the UST Representative or any UST Secured Party with respect to such party's interests in the Bank Priority Collateral that constitutes a superpriority or similar claim for payment shall be junior in priority, operation and effect to any such superpriority or similar claim for payment provided to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative and/or any Hedge Priority Secured Party, as applicable, as adequate protection of its interests in the Bank Priority Collateral; provided further, however, that any adequate protection provided to the UST Representative or any UST Secured Party with respect to such party's interests in the Bank Priority Collateral that constitutes a Lien shall be junior in priority, operation and effect to any such Lien provided to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party, as applicable, as adequate protection of its interests in the Bank Priority Collateral and, in accordance with Section 2.1(a) above, to the extent such Lien is on the Bank Priority Collateral, it shall be junior in priority, operation and effect to any and all Liens on the Bank Priority Collateral in favor of the Bank Priority Representative or any Bank Priority Secured Party securing the Bank Priority Secured Obligations, and in favor of the Hedge Priority Representative or any Hedge Priority Secured Party securing the Hedge Priority Secured Obligations. In the event the UST Representative or any UST Secured Party is granted or accepts adequate protection of its interests in the Bank Priority Collateral in accordance with this Section 2.1(h), then the UST Representative or such UST Secured Party, as applicable, agrees that the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties shall also be granted (or deemed to be granted for all purposes under this Agreement, including Section 2.1(k) below) adequate protection of the same kind (and, if such adequate protection is in the form of a Lien, granted on the same assets) as the adequate protection granted to the UST Representative or UST Secured Party, as applicable, and which is senior in priority, operation and effect to the adequate protection granted to the UST Representative or UST Secured Party, as applicable. Any payments or other distributions received by the UST Representative or any UST Secured Party as, or on account of, adequate protection of its respective interests in the Bank Priority Collateral (including payments or distributions made to such party on account of Liens granted to such party as adequate protection of its interests in the Bank Priority Collateral) shall be subject to turnover to the Relevant Representative pursuant to Section 2.1(k) below. The UST Representative and each of the UST Secured Parties agrees that, except as expressly set forth in this Section 2.1(h), it shall not seek or accept adequate protection with respect to its interests in the Bank Priority Collateral without the prior written consent of the Relevant Representative.

(i)     If the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party is required in any Insolvency Proceeding or otherwise to disgorge, turn over or otherwise pay to a debtor in possession, trustee, receiver or similar Person, because such amount was avoided or ordered to be paid or disgorged for any reason, including, without limitation, because it was found to be a fraudulent or preferential transfer, any amount received by such party pursuant to the Bank Priority Documents or the Hedge Priority Documents (a "Senior Recovery"),

whether received from or on behalf of a Grantor, as proceeds of the Bank Priority Collateral, UST Priority Collateral or other security, as the result of enforcement of any right of set-off or otherwise, then the Bank Priority Secured Obligations and/or Hedge Priority Secured Obligations, as the case may be, shall be reinstated to the extent of such Senior Recovery and shall be deemed to be outstanding as if such payment had not occurred and the Bank Priority Secured Obligations Payment Date and/or the Hedge Priority Secured Obligations Payment Date, as the case may be, shall be deemed not to have occurred. If this Agreement shall have been terminated prior to such Senior Recovery, this Agreement shall be reinstated in full force and effect, and such prior termination shall not diminish, release, discharge, impair or otherwise affect the obligations of the parties hereto. The UST Representative and each of the UST Secured Parties agrees that none of them shall be entitled to benefit from any avoidance action affecting or otherwise relating to any distribution or allocation made in accordance with this Agreement, whether by preference or otherwise, it being understood and agreed that the benefits of such avoidance action otherwise allocable to them shall instead be allocated and turned over for application in accordance with the priorities set forth in this Agreement.

(j)    Neither the UST Representative nor any UST Secured Party shall, in an Insolvency Proceeding or otherwise, oppose any sale, collection or other disposition of any Bank Priority Collateral that is consented to in writing by the Relevant Representative, and the UST Representative and each UST Secured Party shall be deemed to have consented, under Section 363 of the Bankruptcy Code and otherwise, to any such sale, collection or other disposition of Bank Priority Collateral and to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative and any Hedge Priority Secured Party credit bidding its Liens on such Bank Priority Collateral in any such sale, collection or other disposition (pursuant to Section 363(k) of the Bankruptcy Code or otherwise), and the UST Representative and each UST Secured Party shall be deemed to have consented to the release of its Liens on such Bank Priority Collateral; provided, however, that proceeds from such sale, collection or other disposition of Bank Priority Collateral shall be distributed in accordance with Section 2.16(c) of the Credit Agreement (in existence as of the date hereof) regardless of whether an Event of Default (as defined in the Credit Agreement) has occurred and is continuing at the time such distributions are to be made; provided further, however, that GM and each other Grantor hereby irrevocably instructs the Relevant Representative, and each of the Bank Priority Representative and Hedge Priority Representative hereby agrees, to make any payments with respect to the proceeds of Bank Priority Collateral otherwise to be paid to the Grantors under Section 2.16(c)(vi) of the Credit Agreement to the UST Representative to be applied as Proceeds of Collateral in accordance with Section 4.06 of the UST Loan Agreement or Section 3(f) of the UST Security Agreement (each in existence as of the date hereof), as applicable, in each case regardless of whether an Event of Default (as defined in the applicable UST Loan Document) has occurred and is continuing at the time such payments are to be made; provided further, however, that, for the avoidance of doubt, nothing contained herein shall be construed as a consent by the President's Designee to any sale, collection or other disposition of any Bank Priority Collateral; a waiver of any notice or other obligations of any Grantor to the President's Designee under the UST Loan Documents or otherwise with respect to such sale, collection or other disposition; or any waiver, limitation or other restriction on the rights and duties of the President's Designee with respect to such sale, collection or other disposition.

(k)    The UST Representative and each UST Secured Party acknowledges and agrees that because of, among other things, the different rights in the Bank Priority Collateral of the UST Representative and the UST Secured Parties, on the one hand, and the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties, on the other hand, the UST Secured Obligations are fundamentally different from the Bank Priority Secured Obligations and Hedge Priority Secured Obligations and must be separately classified in any plan of reorganization proposed or adopted in any Insolvency Proceeding. The UST Representative and each UST Secured Party hereby acknowledges and agrees that, regardless of whether the claims with respect to

the Bank Priority Collateral of the Bank Priority Representative, Bank Priority Secured Parties, Hedge Priority Representative and/or Hedge Priority Secured Parties, on the one hand, and the UST Representative and UST Secured Parties, on the other hand, are deemed by any court or any third party to constitute a single secured claim (rather than separate senior and junior secured claims), whether in a plan of reorganization or otherwise, all distributions received by the UST Representative or any UST Secured Party (whether pursuant to a plan of reorganization or otherwise and including, without limitation, distributions made to such party as or on account of adequate protection of such party's interests in the Bank Priority Collateral) shall be reallocated to reflect the relative priority of the parties' Liens on and rights with respect to the Bank Priority Collateral as provided in this Agreement (with the effect being that, to the extent that the aggregate value of the Bank Priority Collateral is sufficient (ignoring all claims held by the UST Representative and the UST Secured Parties), the Bank Priority Representative, Bank Priority Secured Parties, Hedge Priority Representative and/or the Hedge Priority Secured Parties shall be entitled to receive, in addition to amounts distributed to them with respect to principal, pre-petition interest and other claims, all amounts owing on account of Post-Petition Charges (regardless of whether such charges have been allowed in such Insolvency Proceeding) with respect to the Bank Priority Collateral before any distribution is made on account of the claims held by the UST Representative and the UST Secured Parties with respect to the Bank Priority Collateral, with the UST Representative and each UST Secured Party hereby acknowledging and agreeing to hold in trust for the benefit of, and turn over to, the Bank Priority Representative and/or the Hedge Priority Representative, as the case may be, all amounts otherwise received or receivable by it (whether under a plan of reorganization or otherwise) with respect to its respective interests in the Bank Priority Collateral, as and when received, to the extent necessary to effectuate the intent of this Section 2.1(k), even if such turnover has the effect of reducing the claim or recovery of the UST Representative or any UST Secured Party). The provisions of this Section 2.1(k) shall be enforceable by the Relevant Representative against the UST Representative and each UST Secured Party at any time prior to the occurrence of the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date.

(l)    Neither the UST Representative nor any UST Secured Party shall oppose or seek to challenge any claim by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party for allowance or payment in any Insolvency Proceeding of Post-Petition Charges with respect to any Bank Priority Secured Obligation or Hedge Priority Secured Obligation on account of the Bank Priority Collateral. Subject to Section 2.1(h) above, none of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party shall oppose or seek to challenge any claim by the UST Representative or any UST Secured Party for allowance in any Insolvency Proceeding of Post-Petition Charges with respect to any UST Secured Obligation on account of the Bank Priority Collateral; provided, however, that, notwithstanding anything to the contrary in this Section 2.1(l) or in Section 2.1(h) above, neither the UST Representative nor any UST Secured Party shall seek or accept payment of Post-Petition Charges, with respect to any UST Secured Obligation, on account of the Bank Priority Collateral prior to the time administrative and similar claims are paid generally in the applicable Insolvency Proceeding, without the prior written consent of the Relevant Representative; provided further, however, that nothing in this Section 2.1(l) shall in any way modify or limit the obligations of the UST Representative and each UST Secured Party under Section 2.1(k) above, and the right of the Relevant Representative to enforce the provisions thereof.

(m)    If, prior to the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date, the UST Representative or any UST Secured Party receives any Post-Petition Securities on account of its Liens on any Bank Priority Collateral in any Insolvency Proceeding, and such Post-Petition Securities are secured by any Lien on Bank Priority Collateral that is also subject to Liens securing Post-Petition Securities received by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party on account of any

Bank Priority Secured Obligations or Hedge Priority Secured Obligations, as applicable, in such Insolvency Proceeding, such Liens shall be junior and subordinate to the Liens securing Post-Petition Securities received on account of the Bank Priority Secured Obligations or the Hedge Priority Secured Obligations to the same extent as Liens on Bank Priority Collateral securing UST Secured Obligations are junior and subordinate to Liens on Bank Priority Collateral securing Bank Priority Secured Obligations or Hedge Priority Secured Obligations, as applicable, as provided in this Agreement, and shall in all respects be subject to the terms of this Agreement.

(n)     Prior to the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date, any Bank Priority Collateral, including, without limitation, any Bank Priority Collateral constituting Proceeds, that may be received by the UST Representative or any UST Secured Party in violation of this Agreement, shall be segregated and held in trust, and shall be promptly paid over to the Relevant Representative, for the benefit of the Bank Priority Secured Parties and Hedge Priority Secured Parties, in the same form as received, with any necessary endorsements, and each UST Secured Party hereby authorizes the Bank Priority Representative and the Hedge Priority Representative to make any such endorsements as agent for the UST Representative (which authorization, being coupled with an interest, is irrevocable); provided, however, that none of the foregoing restrictions shall apply to any Bank Priority Collateral in which the UST Representative or UST Secured Party receiving such Bank Priority Collateral has been granted a superior or pari passu Lien in such Bank Priority Collateral in connection with any DIP Financing or otherwise; provided further, however, that nothing contained herein shall be construed as a consent by the Bank Priority Representative, any of the Bank Priority Secured Parties, the Hedge Priority Representative or any of the Hedge Priority Secured Parties to such DIP Financing or the granting of such superior or pari passu Liens, or a waiver by any such party of its right to object to any such DIP Financing or the granting of such superior or pari passu Liens; provided further, however, that, for the avoidance of doubt, nothing in this Section 2.1(n) shall be construed as limiting or otherwise restricting the right of the UST Representative or any UST Secured Party to Refinance some or all of the UST Secured Obligations in accordance with the other provisions of this Agreement.

(o)     The Bank Priority Representative, each of the Bank Priority Secured Parties, the Hedge Priority Representative and each of the Hedge Priority Secured Parties each agrees to hold that part of the Bank Priority Collateral that is in its possession or control (or in the possession or control of its agents or bailees), to the extent that possession or control thereof is taken to perfect a Lien thereon under the Uniform Commercial Code (such Bank Priority Collateral being the "Bank Priority Pledged Collateral") as collateral agent for the applicable Bank Priority Secured Parties and the Hedge Priority Secured Parties and as bailee for the UST Representative and each of the UST Secured Parties (such bailment being intended, among other things, to satisfy the requirements of Sections 8-301(a)(2) and 9-313(c) of the Uniform Commercial Code), and any assignee, solely for the purpose of perfecting the Liens granted under the Bank Priority Documents, the Hedge Priority Documents and the UST Loan Documents, respectively, subject to the terms and conditions of this Section 2.1(o).   Neither the Bank Priority Representative nor the Hedge Priority Representative shall have any obligation whatsoever to the UST Representative or any UST Secured Party to ensure that the Bank Priority Pledged Collateral is genuine or owned by any of the Grantors, or to preserve rights or benefits of any Person except as expressly set forth in this Section 2.1(o).   The duties or responsibilities of the Bank Priority Representative and the Hedge Priority Representative, as applicable, under this Section 2.1(o) shall be limited solely to holding the Bank Priority Pledged Collateral as bailee in accordance with this Section 2.1(o).

(p)     To the maximum extent permitted by law, the UST Representative and each UST Secured Party waives any claim it might, or might in the future, have against the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party with respect to, or arising out of, any action or failure to act or any error of judgment,

negligence or mistake or oversight whatsoever on the part of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party or any of their respective directors, officers, employees, agents or Affiliates with respect to any exercise of rights or remedies under the Bank Priority Documents or the Hedge Priority Documents, as applicable, this Agreement or any transaction related to the Bank Priority Collateral or the UST Priority Collateral. None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party, nor any of their respective directors, officers, employees, agents or Affiliates, shall be liable for failure to demand, collect or realize upon any of the Bank Priority Collateral, UST Priority Collateral or other collateral, or upon any guaranty, or for any delay in doing so, or shall be under any obligation to sell or otherwise dispose of any Bank Priority Collateral or UST Priority Collateral or to take any other action whatsoever with respect to the Bank Priority Documents, the Hedge Priority Documents, or the UST Loan Documents, except as expressly provided in this Agreement.

2.2    Credit Agreement Debt. The Bank Priority Representative, for itself and each Bank Priority Secured Party, with respect to the Bank Priority Secured Obligations, and the Hedge Priority Representative, for itself and each Hedge Priority Secured Party, with respect to the Hedge Priority Secured Obligations, each agrees to, and shall, be bound by the following terms and conditions:

(a)    Any and all Liens on the UST Priority Collateral now existing or hereafter created arising in favor of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party securing the Bank Priority Secured Obligations or the Hedge Priority Secured Obligations, regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, are expressly junior in priority, operation and effect to any and all Liens on the UST Priority Collateral now existing or hereafter created or arising in favor of the UST Representative or the UST Secured Parties securing the UST Secured Obligations, notwithstanding (i) anything to the contrary contained in any agreement or filing to which the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party may now or hereafter be a party, and regardless of the time, order or method of grant, attachment, recording or perfection of any financing statements or other security interests, assignments, pledges, deeds, mortgages and other Liens, charges or encumbrances or any defect or deficiency or alleged defect or deficiency in any of the foregoing, (ii) any provision of the Uniform Commercial Code or any applicable law or any agreement with respect to the Bank Priority Secured Obligations, the Hedge Priority Secured Obligations or the UST Secured Obligations or any other circumstance whatsoever, and (iii) the fact that any such Liens in favor of the UST Representative or any UST Secured Party securing any of the UST Secured Obligations are (A) subordinated to any Lien securing any obligation of any Grantor other than the Bank Priority Secured Obligations or Hedge Priority Secured Obligations, or (B) otherwise subordinated, voided, avoided, invalidated or lapsed.

(b)    None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall object to or contest, or support any other Person in objecting to or contesting, in any proceeding (including, without limitation, any Insolvency Proceeding), the validity, extent, perfection, priority or enforceability of any Lien on the UST Priority Collateral granted to the UST Representative or any UST Secured Party; provided, however, that the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties shall be permitted to negotiate with the UST Representative and/or UST Secured Parties, as applicable, to amend this Agreement regarding, inter alia, the relative rights of the Secured Parties in the UST Priority Collateral; provided further, however, that nothing contained herein shall obligate or require the UST Priority Representative or any UST Secured Party to negotiate with the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party regarding, or to agree to, any such suggested amendment. Notwithstanding any failure by the UST Representative or any UST Secured Party to perfect

its Liens on the UST Priority Collateral or any avoidance, invalidation or subordination by any third party or court of competent jurisdiction of the Liens on the UST Priority Collateral granted to the UST Priority Representative or any UST Secured Party, the priority and rights as between the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties, on the one hand, and the UST Representative and the UST Secured Parties, on the other hand, with respect to the UST Priority Collateral shall be as set forth herein.

(c)     None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall, in or in connection with any Insolvency Proceeding, file any pleadings or motions, take any position at any hearing or proceeding of any nature, or otherwise take any action whatsoever, in each case with respect to any of the UST Priority Collateral, including, without limitation, with respect to the determination of any Liens or claims held by the UST Priority Representative or any UST Secured Party or the value of any claims of such parties under Section 506(a) of the Bankruptcy Code or otherwise; provided, however, that the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative and any Hedge Priority Secured Party may file a proof of claim in any Insolvency Proceeding, subject to and consistent with the limitations contained in this Agreement; provided further, however, that the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party may seek to provide DIP Financing to any Grantor and, in connection therewith, to obtain Liens on any or all of the UST Priority Collateral that may be superior to, or pari passu with, the rights of the UST Priority Representative or the UST Priority Secured Parties; provided further, however, that nothing contained herein shall be construed as a consent by the UST Representative or any of the UST Secured Parties to such DIP Financing or any Liens granted in connection therewith, or a waiver by any such party of its right to object to any such DIP Financing or any Liens granted in connection therewith.

(d)     If any Grantor becomes subject to any Insolvency Proceeding, and if the UST Representative consents in writing to the use of Cash Collateral that constitutes UST Priority Collateral, then the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party shall be deemed to have consented to, and will not raise any objection to or support any other Person objecting to, the use of such Cash Collateral, and will not request or accept adequate protection or any other relief in connection with the use of such Cash Collateral except as set forth in Section 2.2(h) below.

(e)     If any Grantor becomes subject to any Insolvency Proceeding, and if the UST Representative consents in writing to the provision of any DIP Financing to any Grantor, which DIP Financing requires the subordination of the Liens on the UST Priority Collateral securing the UST Secured Obligations to Liens on the UST Priority Collateral that will secure obligations under any DIP Financing or proposed DIP Financing to such Grantor, whether or not some or all of the proceeds thereof are being used to Refinance all or any portion of the UST Secured Obligations, then the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party will subordinate (and will be deemed hereunder to have subordinated) its Liens (other than any such Liens granted under the DIP Financing) on and interests in the UST Priority Collateral (including Liens, if any, granted as adequate protection of its interests in the UST Priority Collateral) (i) to the Liens on the UST Priority Collateral that will secure obligations under such DIP Financing on the same terms as the Liens securing the UST Secured Obligations are subordinated thereto (and such subordination will not alter in any manner the terms of this Agreement), and (ii) to any adequate protection provided to the UST Representative or any of the UST Secured Parties on account of the applicable party's interests in the UST Priority Collateral, in connection with the provision of such DIP Financing.  None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall request or accept adequate protection

or any other relief in connection with the subordination of Liens described in this Section 2.2(e), except as set forth in Section 2.2(h) below.

(f)     None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall seek relief from the automatic stay or from any other stay in any Insolvency Proceeding, or take any action in derogation thereof, in each case with respect to any UST Priority Collateral, without the prior written consent of the UST Representative; provided, however, that the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party shall be permitted to take any of the foregoing actions with respect to a Grantor in connection with the provision or proposed provision by the Bank Priority Representative or Bank Priority Secured Parties or the Hedge Priority Representative or the Hedge Priority Secured Parties of DIP Financing to such Grantor; provided further, however, that nothing contained herein shall be construed as a consent by the UST Representative or any of the UST Secured Parties to such DIP Financing, or a waiver by any such party of its right to object to any such relief from the automatic stay or any other stay.

(g)     None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party will elect or seek to elect application of Section 1111(b)(2) of the Bankruptcy Code to its respective claims or Liens with respect to the UST Priority Collateral without the prior written consent of the UST Representative.

(h)     None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall object to or contest, or support in any manner any other Person objecting to or contesting, (i) any request by the UST Representative or any UST Secured Party seeking adequate protection of such party's interests in the UST Priority Collateral, or the provision of any adequate protection of such interests to any such party, (ii) any objection by the UST Representative or any UST Secured Party to any motion, relief, action or proceeding based on a claim of a lack of adequate protection with respect to such party's interests in the UST Priority Collateral, or (iii) the payment of Post-Petition Charges to the UST Representative or any UST Secured Party with respect to the UST Priority Collateral. Notwithstanding anything contained in this Section 2.2(h) (but subject to all other provisions of this Agreement, including, without limitation, Section 2.2(l) below), in any Insolvency Proceeding, if the UST Representative or any of the UST Secured Parties is granted adequate protection of its interests in the UST Priority Collateral, whether in connection with any DIP Financing or use of Cash Collateral or otherwise, then the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative and/or any Hedge Priority Secured Party may seek or accept adequate protection with respect to its interests in the UST Priority Collateral; provided, however, that such adequate protection must be solely of the same kind and, if such adequate protection is in the form of a Lien, be granted solely on the same assets, as the adequate protection provided to the UST Representative and/or any UST Secured Party, as applicable, with respect to its interests in the UST Priority Collateral; provided further, however, that any adequate protection provided to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party with respect to such party's interests in the UST Priority Collateral that constitutes a superpriority or similar claim for payment shall be junior in priority, operation and effect to any such superpriority or similar claim for payment provided to the UST Representative and/or any UST Secured Party, as applicable, as adequate protection of its interests in the UST Priority Collateral; provided further, however, that any adequate protection provided to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party with respect to such party's interests in the UST Priority Collateral that constitutes a Lien shall be junior in priority, operation and effect to any such Lien provided to the UST Representative or any UST Secured Party, as applicable, as adequate protection of its interests in the UST Priority Collateral and, in accordance with Section 2.2(a) above, to the extent such Lien is on the UST Priority Collateral, it shall be junior in priority, operation and effect to

any and all Liens on the UST Priority Collateral in favor of the UST Representative or any UST Secured Party securing the UST Secured Obligations. In the event the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party is granted or accepts adequate protection of its interests in the UST Priority Collateral in accordance with this Section 2.2(h), then the Bank Priority Representative, Bank Priority Secured Party, Hedge Priority Representative or Hedge Priority Secured Party, as applicable, agrees that the UST Representative and the UST Secured Parties shall also be granted (or deemed to be granted for all purposes under this Agreement, including Section 2.2(k) below) adequate protection of the same kind (and, if such adequate protection is in the form of a Lien, granted on the same assets) as the adequate protection granted to the Bank Priority Representative, Bank Priority Secured Party, Hedge Priority Representative or Hedge Priority Secured Party, as applicable, and which is senior in priority, operation and effect to the adequate protection granted to the Bank Priority Representative, Bank Priority Secured Party, Hedge Priority Representative or Hedge Priority Secured Party, as applicable. Any payments or other distributions received by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party as, or on account of, adequate protection of its respective interests in the UST Priority Collateral (including payments or distributions made to such party on account of Liens granted to such party as adequate protection of its interests in the UST Priority Collateral) shall be subject to turnover to the UST Representative pursuant to Section 2.2(k) below. The Bank Priority Representative, each of the Bank Priority Secured Parties, the Hedge Priority Representative and each of the Hedge Priority Secured Parties agrees that, except as expressly set forth in this Section 2.2(h), it shall not seek or accept adequate protection with respect to its interests in the UST Priority Collateral without the prior written consent of the UST Representative.

(i)     If the UST Representative or any UST Secured Party is required in any Insolvency Proceeding or otherwise to disgorge, turn over or otherwise pay to a debtor in possession, trustee, receiver or similar Person, because such amount was avoided or ordered to be paid or disgorged for any reason, including, without limitation, because it was found to be a fraudulent or preferential transfer, any amount received by such party pursuant to the UST Loan Documents (a "UST Recovery"), whether received from or on behalf of a Grantor, as proceeds of the Bank Priority Collateral, UST Priority Collateral or other security, as the result of enforcement of any right of set-off or otherwise, then the UST Secured Obligations shall be reinstated to the extent of such UST Recovery and shall be deemed to be outstanding as if such payment had not occurred and the UST Secured Obligations Payment Date shall be deemed not to have occurred. If this Agreement shall have been terminated prior to such UST Recovery, this Agreement shall be reinstated in full force and effect, and such prior termination shall not diminish, release, discharge, impair or otherwise affect the obligations of the parties hereto. The Bank Priority Representative, each of the Bank Priority Secured Parties, the Hedge Priority Representative and each of the Hedge Priority Secured Parties agrees that none of them shall be entitled to benefit from any avoidance action affecting or otherwise relating to any distribution or allocation made in accordance with this Agreement, whether by preference or otherwise, it being understood and agreed that the benefits of such avoidance action otherwise allocable to them shall instead be allocated and turned over for application in accordance with the priorities set forth in this Agreement.

(j)     None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall, in an Insolvency Proceeding or otherwise, oppose any sale, collection or other disposition of any UST Priority Collateral that is consented to in writing by the UST Representative, and the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party shall be deemed to have consented, under Section 363 of the Bankruptcy Code and otherwise, to any such sale, collection or other disposition of UST Priority Collateral, and to the UST Priority Representative and any UST Secured Party credit bidding its Liens on such UST Priority Collateral in any such sale, collection or other disposition (pursuant to Section 363(k) of the Bankruptcy Code or otherwise), and the Bank Priority

Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party shall be deemed to have consented to the release of its Liens on such UST Priority Collateral; provided, however, that proceeds from such sale, collection or other disposition of UST Priority Collateral shall be distributed in accordance with Section 4.06 of the UST Loan Agreement or Section 3(f) of the UST Security Agreement (each as in existence as of the date hereof), as applicable, in each case regardless of whether an Event of Default (as defined in the applicable UST Loan Document) has occurred and is continuing at the time such distributions are to be made; provided further, however, that GM and each other Grantor hereby irrevocably instructs the UST Representative, and the UST Representative hereby agrees, to make any payments with respect to the Proceeds of UST Priority Collateral otherwise to be paid to the Grantors under this Section 2.2(j) and (i) the last sentence of Section 4.06 or the sixth sentence of Section 4.07 of the UST Loan Agreement, or (ii) the last sentence of Section 3(f) or the sixth sentence of Section 3(g) of the UST Security Agreement (each as in existence as of the date hereof), as applicable, to the Relevant Representative to be applied as Proceeds of Collateral in accordance with Section 2.16(c) of the Credit Agreement (in existence as of the date hereof; it being understood that for purposes of this Section 2.2(j), the application of Proceeds of "Collateral" pursuant to Section 2.16(c) of the Credit Agreement shall include Additional Collateral) regardless of whether an Event of Default (as defined in the Credit Agreement) has occurred and is continuing at the time such payments are to be made.

(k)     The Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party acknowledges and agrees that because of, among other things, the different rights in the UST Priority Collateral of the UST Representative and the UST Secured Parties, on the one hand, and the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties, on the other hand, the UST Secured Obligations are fundamentally different from the Bank Priority Secured Obligations and Hedge Priority Secured Obligations and must be separately classified in any plan of reorganization proposed or adopted in any Insolvency Proceeding. The Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party hereby acknowledges and agrees that, regardless of whether the claims with respect to the UST Priority Collateral of the UST Representative and UST Secured Parties, on the one hand, and the Bank Priority Representative, Bank Priority Secured Parties, Hedge Priority Representative and/or Hedge Priority Secured Parties, on the other hand, are deemed by any court or any third party to constitute a single secured claim (rather than separate senior and junior secured claims), whether in a plan of reorganization or otherwise, all distributions received by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party (whether pursuant to a plan of reorganization or otherwise and including, without limitation, distributions made to such party as or on account of adequate protection of such party's interests in the UST Priority Collateral) shall be reallocated to reflect the relative priority of the parties' Liens on and rights with respect to the UST Priority Collateral as provided in this Agreement (with the effect being that, to the extent that the aggregate value of the UST Priority Collateral is sufficient (ignoring all claims held by the Bank Priority Representative, Bank Priority Secured Parties, Hedge Priority Representative and Hedge Priority Secured Parties), the UST Representative and the UST Secured Parties shall be entitled to receive, in addition to amounts distributed to them with respect to principal, pre-petition interest and other claims, all amounts owing on account of Post-Petition Charges (regardless of whether such charges have been allowed in such Insolvency Proceeding) with respect to the UST Priority Collateral before any distribution is made on account of the claims held by the Bank Priority Representative, Bank Priority Secured Parties, Hedge Priority Representative and Hedge Priority Secured Parties with respect to the UST Priority Collateral, with the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party hereby acknowledging and agreeing to hold in trust for the benefit of, and turn over to, the UST Representative all amounts otherwise received or receivable by it (whether under a plan of reorganization or otherwise) with respect to its respective interests in the UST Priority

Collateral, as and when received, to the extent necessary to effectuate the intent of this Section 2.2(k), even if such turnover has the effect of reducing the claim or recovery of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative and/or any Hedge Priority Secured Party). The provisions of this Section 2.2(k) shall be enforceable by the UST Representative against the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party at any time prior to the occurrence of the UST Secured Obligations Payment Date.

(l)    None of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall oppose or seek to challenge any claim by the UST Priority Representative or any UST Secured Party for allowance or payment in any Insolvency Proceeding of Post-Petition Charges with respect to any UST Secured Obligation on account of the UST Priority Collateral. Subject to Section 2.2(h) above, neither the UST Representative nor any UST Secured Party shall oppose or seek to challenge any claim by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party for allowance in any Insolvency Proceeding of Post-Petition Charges with respect to any Bank Priority Secured Obligation or Hedge Priority Secured Obligation on account of the UST Priority Collateral; provided, however, that, notwithstanding anything to the contrary in this Section 2.2(l) or in Section 2.2(h) above, none of the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative nor any Hedge Priority Secured Party shall seek or accept payment of Post-Petition Charges, with respect to any Bank Priority Secured Obligation or Hedge Priority Secured Obligation, as applicable, on account of the UST Priority Collateral prior to the time administrative and similar claims are paid generally in the applicable Insolvency Proceeding, without the prior written consent of the UST Representative; provided further, however, that nothing in this Section 2.1(l) shall in any way modify or limit the obligations of the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party under Section 2.2(k) above, and the right of the UST Representative to enforce the provisions thereof.

(m)    If, prior to the UST Secured Obligations Payment Date, the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party receives any Post-Petition Securities on account of its Liens on any UST Priority Collateral in any Insolvency Proceeding, and such Post-Petition Securities are secured by any Lien on UST Priority Collateral that is also subject to Liens securing Post-Petition Securities received by the UST Priority Representative or any UST Secured Party on account of any UST Secured Obligations, in such Insolvency Proceeding, such Liens shall be junior and subordinate to the Liens securing Post-Petition Securities received on account of the UST Secured Obligations to the same extent as Liens on UST Priority Collateral securing Bank Priority Secured Obligations or Hedge Priority Secured Obligations, as applicable, are junior and subordinate to Liens on UST Priority Collateral securing UST Secured Obligations as provided in this Agreement, and shall in all respects be subject to the terms of this Agreement.

(n)    Prior to the UST Secured Obligations Payment Date, any UST Priority Collateral, including, without limitation, any UST Priority Collateral constituting Proceeds, that may be received by the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party in violation of this Agreement, shall be segregated and held in trust, and shall be promptly paid over to the UST Representative, for the benefit of the UST Secured Parties, in the same form as received, with any necessary endorsements, and each Bank Priority Secured Party and Hedge Priority Secured Party hereby authorizes the UST Representative to make any such endorsements as agent for the Bank Priority Representative or Hedge Priority Representative, as applicable (which authorization, being coupled with an interest, is irrevocable); provided, however, that none of the foregoing restrictions shall apply to any UST Priority Collateral in which the Bank Priority

Representative, Bank Priority Secured Party, Hedge Priority Representative or Hedge Priority Secured Party receiving such UST Priority Collateral has been granted a superior or pari passu Lien in such UST Priority Collateral in connection with any DIP Financing or otherwise; provided further, however, that nothing contained herein shall be construed as a consent by the UST Representative or any UST Secured Party to such DIP Financing or the granting of such superior or pari passu Liens, or a waiver by any such party of its right to object to any such DIP Financing or the granting of such superior or pari passu Liens; provided further, however, that, for the avoidance of doubt, nothing in this Section 2.2(n) shall be construed as limiting or otherwise restricting the right of the Bank Priority Representative or any Bank Priority Secured Party to Refinance some or all of the Bank Priority Secured Obligations, or the right of the Hedge Priority Representative or any Hedge Priority Secured Party to Refinance some or all of the Hedge Priority Secured Obligations, in each case in accordance with the other provisions of this Agreement.

(o)    The UST Representative and each of the UST Secured Parties agrees to hold that part of the UST Priority Collateral that is in its possession or control (or in the possession or control of its agents or bailees), to the extent that possession or control thereof is taken to perfect a Lien thereon under the Uniform Commercial Code (such UST Priority Collateral being the "UST Priority Pledged Collateral") as collateral agent for the UST Secured Parties and as bailee for the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party (such bailment being intended, among other things, to satisfy the requirements of Sections 8-301(a)(2) and 9-313(c) of the Uniform Commercial Code), and any assignee, solely for the purpose of perfecting the Liens granted under the UST Loan Documents, the Bank Priority Documents and the Hedge Priority Documents, respectively, subject to the terms and conditions of this Section 2.2(o).   The UST Representative shall have no obligation whatsoever to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party to ensure that the UST Priority Pledged Collateral is genuine or owned by any of the Grantors, or to preserve rights or benefits of any Person except as expressly set forth in this Section 2.2(o). The duties or responsibilities of the UST Representative under this Section 2.2(o) shall be limited solely to holding the UST Priority Pledged Collateral as bailee in accordance with this Section 2.2(o).

(p)    To the maximum extent permitted by law, the Bank Priority Representative, each Bank Priority Secured Party, the Hedge Priority Representative and each Hedge Priority Secured Party waives any claim it might, or might in the future, have against the UST Representative or any UST Secured Party with respect to, or arising out of, any action or failure to act or any error of judgment, negligence or mistake or oversight whatsoever on the part of the UST Representative or any UST Secured Party or any of their respective directors, officers, employees, agents or Affiliates with respect to any exercise of rights or remedies under the UST Loan Documents, this Agreement or any transaction related to the Bank Priority Collateral or the UST Priority Collateral. Neither the UST Representative nor any UST Secured Party, nor any of their respective directors, officers, employees, agents or Affiliates, shall be liable for failure to demand, collect or realize upon any of the Bank Priority Collateral, UST Priority Collateral or other collateral, or upon any guaranty, or for any delay in doing so, or shall be under any obligation to sell or otherwise dispose of any Bank Priority Collateral or UST Priority Collateral or to take any other action whatsoever with respect to the Bank Priority Documents, the Hedge Priority Documents, or the UST Loan Documents, except as expressly provided in this Agreement.

2.3    Bank Priority Secured Obligations Unconditional. All rights and interests of the Bank Priority Secured Parties hereunder, and all agreements and obligations of the Hedge Priority Secured Parties and the UST Secured Parties (and, to the extent applicable, the Grantors) hereunder, shall remain in full force and effect irrespective of:

(a)    any lack of validity or enforceability of the Credit Agreement;

(b)      any change in the time, place or manner of payment of, or in any other term of, all or any portion of the Bank Priority Secured Obligations, or any amendment, waiver or other modification, whether by course of conduct or otherwise, or any Refinancing, replacement, refunding or restatement of any Bank Priority Document;

(c)      prior to the Bank Priority Secured Obligations Payment Date, any exchange, release, voiding, avoidance or non-perfection of any Lien on any Bank Priority Collateral, UST Priority Collateral or any other collateral, or any release, amendment, waiver or other modification, whether by course of conduct or otherwise, or any Refinancing of all or any portion of the Bank Priority Secured Obligations or any guarantee or guaranty thereof; or

(d)      any other circumstances that otherwise might constitute a defense available to, or a discharge of, any Grantor with respect to the Bank Priority Secured Obligations or any Hedge Priority Secured Party or UST Secured Party with respect to this Agreement.

2.4      <u>Hedge Priority Secured Obligations Unconditional</u>. All rights and interests of the Hedge Priority Secured Parties hereunder, and all agreements and obligations of the Bank Priority Secured Parties and the UST Secured Parties (and, to the extent applicable, the Grantors) hereunder, shall remain in full force and effect irrespective of:

(a)      any lack of validity or enforceability of any Hedge Priority US Security Agreement;

(b)      any change in the time, place or manner of payment of, or in any other term of, all or any portion of the Hedge Priority Secured Obligations, or any amendment, waiver or other modification, whether by course of conduct or otherwise, or any Refinancing, replacement, refunding or restatement of any Hedge Priority Document;

(c)      prior to the Hedge Priority Secured Obligations Payment Date, any exchange, release, voiding, avoidance or non-perfection of any Lien on any Bank Priority Collateral, UST Priority Collateral or any other collateral, or any release, amendment, waiver or other modification, whether by course of conduct or otherwise, or any Refinancing of all or any portion of the Hedge Priority Secured Obligations or any guarantee or guaranty thereof; or

(d)      any other circumstances that otherwise might constitute a defense available to, or a discharge of, any Grantor with respect to the Hedge Priority Secured Obligations or any Bank Priority Secured Party or UST Secured Party with respect to this Agreement.

2.5      <u>UST Secured Obligations Unconditional</u>. All rights and interests of the UST Secured Parties hereunder, and all agreements and obligations of the Bank Priority Secured Parties and the Hedge Priority Secured Parties (and, to the extent applicable, the Grantors) hereunder, shall remain in full force and effect irrespective of:

(a)      any lack of validity or enforceability of any UST Loan Document;

(b)      any change in the time, place or manner of payment of, or in any other term of, all or any portion of the UST Secured Obligations, or any amendment, waiver or other modification, whether by course of conduct or otherwise, or any Refinancing, replacement, refunding or restatement of any UST Loan Document;

(c)      prior to the UST Secured Obligations Payment Date, any exchange, release, voiding, avoidance or non-perfection of any Lien on any Bank Priority Collateral, UST Priority Collateral or any

other collateral, or any release, amendment, waiver or other modification, whether by course of conduct or otherwise, or any Refinancing of all or any portion of the UST Secured Obligations or any guarantee or guaranty thereof; or

(d)    any other circumstances that otherwise might constitute a defense available to, or a discharge of, any Grantor with respect to the UST Secured Obligations or any Bank Priority Secured Party or Hedge Priority Secured Party with respect to this Agreement.

2.6    Information Concerning Financial Condition of the Grantors.  Each Secured Party hereby assumes responsibility for keeping itself informed of the financial condition of GM and each of the other Grantors, and all other circumstances bearing upon the risk of nonpayment of the Bank Priority Secured Obligations, the Hedge Priority Secured Obligations or the UST Secured Obligations.  No Secured Party shall have any duty to advise any other Secured Party of information known to it regarding such condition or any such circumstances.  In the event any Secured Party, in its sole discretion, undertakes at any time or from time to time to provide any information to any other Secured Party, it shall be under no obligation (a) to update or revise any such information, (b) to provide any such information to such other Secured Party or any other party on any subsequent occasion, (c) to undertake any investigation not a part of its regular business routine, or (d) to disclose any other information.

**Section 3.    Enforcement Rights, Inspection Rights.**

3.1    Enforcement under the Credit Agreement.

(a)    Until both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date have occurred, whether or not any Insolvency Proceeding has been commenced, the UST Secured Parties (i) will not exercise or seek to exercise any rights or remedies with respect to any of the Bank Priority Collateral (including, without limitation, the exercise of any right of setoff or any right under any lockbox agreement, account control agreement, landlord waiver or bailee's letter or similar agreement or arrangement to which any UST Secured Party is a party, or any marshalling, appraisal, valuation or any other right that may otherwise be available under any applicable Requirement of Law with respect to any Bank Priority Collateral to the UST Representative or any UST Secured Party in its capacity as beneficiary of a junior Lien on such Bank Priority Collateral) or institute any action or proceeding with respect to such rights or remedies (including any action of foreclosure); provided, however, that  (x) the UST Representative may exercise any or all such rights or remedies after the passage of a period of at least 180 days has elapsed since the earlier to occur of (1)(A) the date on which the Bank Priority Representative declared the existence of any Event of Default under and as defined in any Bank Priority Document, and demanded the repayment of all the principal amount of any Bank Priority Secured Obligations (unless such Event of Default and demand for repayment is rescinded, in which case such Event of Default and demand for repayment shall be deemed never to have occurred for purposes of this clause (x)(1)(A)) and (B) the date on which the Hedge Priority Representative declared the existence of any Event of Default under and as defined in any Hedge Priority Document, and demanded the repayment of all the principal amount of any Hedge Priority Secured Obligations (unless such Event of Default and demand for repayment is rescinded, in which case such Event of Default and demand for repayment shall be deemed never to have occurred for purposes of this clause (x)(1)(B)); and (2) the date on which the Relevant Representative received notice from the UST Representative of its intent to exercise such rights or remedies (the "UST Standstill Period"); provided further, however, that, notwithstanding anything herein to the contrary, in no event shall the UST Representative exercise any rights or remedies with respect to the Bank Priority Collateral if, notwithstanding the expiration of any UST Standstill Period, the Bank Priority Representative and/or Hedge Priority Representative shall have commenced and be diligently pursuing the exercise of their rights or remedies with respect to all or any material portion of the Bank Priority Collateral (prompt notice of such exercise to be given to the UST

Representative); (ii) will not contest, protest or object to any foreclosure proceeding or action brought by the Bank Priority Representative or the Hedge Priority Representative or any other exercise by the Bank Priority Representative or the Hedge Priority Representative of any rights and remedies relating to the Bank Priority Collateral under the Bank Priority Documents, the Hedge Priority Documents or otherwise; (iii) subject to their rights under clause (i) above, will not object to the forbearance by the Bank Priority Representative or the Hedge Priority Representative from bringing or pursuing any foreclosure proceeding or action or any other exercise of any rights or remedies relating to the Bank Priority Collateral, in each case so long as interests of the UST Representative attach to the proceeds thereof, subject to the relative priorities described in Section 2.1(a) above; (iv) will not take or cause to be taken any action, the purpose or effect of which is to make any Lien with respect to any UST Secured Obligation pari passu with or senior to, or to give the UST Representative or any UST Secured Party any preference or priority relative to, the Liens with respect to the Bank Priority Secured Obligations, the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Secured Obligations, the Hedge Priority Representative or the Hedge Priority Secured Parties with respect to any of the Bank Priority Collateral (other than a DIP Financing in accordance with Section 2.1 above); and (v) will have no right to direct either the Bank Priority Representative, any other Bank Priority Secured Party, the Hedge Priority Representative or any other Hedge Priority Secured Party to exercise any right, remedy or power with respect to the Bank Priority Collateral or pursuant to the Bank Priority Documents or the Hedge Priority Documents.

(b)    Until both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date have occurred, whether or not any Insolvency Proceeding has been commenced, the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties shall have the right to enforce rights, exercise remedies (including set off and the right to credit bid their debt) and make determinations regarding the release, disposition, or restrictions with respect to the Bank Priority Collateral without any consultation with or the consent of the UST Representative or any UST Secured Parties. In exercising rights and remedies with respect to the Bank Priority Collateral, the Bank Priority Representative and the Bank Priority Secured Parties may enforce the provisions of the Bank Priority Documents and exercise remedies thereunder and the Hedge Priority Representative and the Hedge Priority Secured Parties may enforce the provisions of the Hedge Priority Documents and exercise remedies thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion. Such exercise and enforcement shall include the rights of an agent appointed by any of them to sell or otherwise dispose of Bank Priority Collateral upon foreclosure, to incur expenses in connection with such sale or disposition, and to exercise all the rights and remedies of a secured creditor under the Uniform Commercial Code and of a secured creditor under Bankruptcy Law of any applicable jurisdiction. Each of the Bank Priority Representative and the Hedge Priority Representative agrees to provide at least the lesser of (1) five days' or (2) the number of days remaining in the UST Standstill Period, notice to the UST Representative of its intent to exercise and enforce its respective rights and remedies with respect to a material portion of the Bank Priority Collateral.

(c)    Notwithstanding the foregoing, the UST Representative and any UST Secured Party may:

(i)    take any action (not adverse to the priority status of the Liens on the Bank Priority Collateral securing the Bank Priority Secured Obligations and/or the Hedge Priority Secured Obligations, or the rights of the Bank Priority Representative or any Bank Priority Secured Party or the Hedge Priority Representative or any Hedge Priority Secured Party to exercise remedies in respect thereof) in order to create, perfect, preserve or protect its respective junior Lien in the Bank Priority Collateral;

(ii)     file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims of the UST Representative or UST Secured Parties, including without limitation, any claims secured by the Bank Priority Collateral, if any, in each case in accordance with the terms of this Agreement; and

(iii)     exercise any of its rights or remedies with respect to the Bank Priority Collateral after the termination of the UST Standstill Period to the extent permitted by Section 3.1(a) above.

The UST Representative, on behalf of itself and the UST Secured Parties, agrees that it will not take or receive any Bank Priority Collateral or any proceeds of Bank Priority Collateral in connection with the exercise of any right or remedy (including set-off) with respect to any Bank Priority Collateral in its capacity as a prepetition secured creditor, unless and until both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date have occurred, except as expressly provided in Section 3.1(a) above. Without limiting the generality of the foregoing, unless and until both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date have occurred, except as expressly provided in Section 3.1(a) above and this Section 3.1(c) above, the sole right of the UST Representative with respect to the Bank Priority Collateral is to hold a Lien on the Bank Priority Collateral pursuant to the applicable UST Security Agreements for the period and to the extent granted therein and to receive a share of the proceeds thereof, if any, after both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date have occurred.

(d)     Subject to Sections 3.1(a) and 3.1(c) above:

(i)     the UST Representative, for itself and on behalf of the UST Secured Parties, agrees that the UST Representative and the UST Secured Parties will not take any action that would hinder any exercise of remedies under the Bank Priority Documents or the Hedge Priority Documents or is otherwise prohibited hereunder, including any sale, lease, exchange, transfer or other disposition of the Bank Priority Collateral, whether by foreclosure or otherwise;

(ii)     the UST Representative, for itself and on behalf of the UST Secured Parties, hereby waives any and all rights it or the UST Secured Parties may have as a junior lien creditor or otherwise to consent to or object to the manner in which the Bank Priority Representative or the Bank Priority Secured Parties seek to enforce or collect the Bank Priority Secured Obligations or the Liens securing Bank Priority Secured Obligations or the Hedge Priority Representative or the Hedge Priority Secured Parties seek to enforce or collect the Hedge Priority Secured Obligations or the Liens securing Hedge Priority Secured Obligations, in each case granted in any of the Bank Priority Collateral undertaken in accordance with this Agreement, regardless of whether any action or failure to act by or on behalf of (A) the Bank Priority Representative or Bank Priority Secured Parties is adverse to the interest of the Bank Priority Secured Parties or (B) the Hedge Priority Representative or Hedge Priority Secured Parties is adverse to the interest of the Hedge Priority Secured Parties; and

(iii)     the UST Representative hereby acknowledges and agrees that no covenant, agreement or restriction contained in the UST Loan Documents (other than this Agreement) shall be deemed to restrict in any way the rights and remedies of the Bank Priority Representative or the Bank Priority Secured Parties or the Hedge Priority Representative or the Hedge Priority Secured Parties with respect to the Bank Priority Collateral as set forth in this Agreement, the Bank Priority Documents or the Hedge Priority Documents.

(e)    Except as specifically set forth in Sections 3.1(a) and 3.1(d) above, nothing in this Agreement shall prohibit the receipt by the UST Representative or any UST Secured Parties of the required payments of interest, principal and other amounts owed with respect to the applicable UST Secured Obligations so long as such receipt is not the direct or indirect result of the exercise by the UST Representative or any UST Secured Parties of rights or remedies as a secured creditor (including set off) or enforcement in contravention of this Agreement of any Lien held by any of them. Nothing in this Agreement impairs or otherwise adversely affects any rights or remedies the Bank Priority Representative or the Bank Priority Secured Parties or the Hedge Priority Representative or the Hedge Priority Secured Parties may have with respect to the Bank Priority Collateral.

(f)    Prior to the occurrence of both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, Bank Priority Collateral or proceeds thereof received in connection with the sale or other disposition thereof, or collection thereon, upon the exercise of remedies by the Bank Priority Representative or Bank Priority Secured Parties, shall be applied by the Bank Priority Representative to the Bank Priority Secured Obligations in such order as specified in the relevant Bank Priority Documents, or upon the exercise of remedies by the Hedge Priority Representative or Hedge Priority Secured Parties, shall be applied by the Hedge Priority Representative to the Hedge Priority Secured Obligations in such order as specified in the relevant Hedge Priority Documents. Upon the occurrence of both the Bank Priority Secured Obligations Payment Date and the Hedge Priority Secured Obligations Payment Date, the Bank Priority Representative and/or Hedge Priority Representative, shall deliver to the UST Representative any Bank Priority Collateral and proceeds of Bank Priority Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct to be applied by the UST Representative to the UST Secured Obligations in such order as specified in the UST Loan Documents.

3.2    <u>Enforcement under the UST Loan Agreement</u>.

(a)    Until the UST Secured Obligations Payment Date has occurred, whether or not any Insolvency Proceeding has been commenced, neither the Bank Priority Secured Parties nor the Hedge Priority Secured Parties (i) will exercise or seek to exercise any rights or remedies with respect to any of the UST Priority Collateral (including, without limitation, the exercise of any right of setoff or any right under any lockbox agreement, account control agreement, landlord waiver or bailee's letter or similar agreement or arrangement to which any Bank Priority Secured Party or any Hedge Priority Secured Party is a party, or any marshalling, appraisal, valuation or any other right that may otherwise be available under any applicable Requirement of Law with respect to any UST Priority Collateral to the Bank Priority Representative, any Bank Priority Secured Party, the Hedge Priority Representative or any Hedge Priority Secured Party, in each case in its capacity as beneficiary of a junior Lien on such UST Priority Collateral) or institute any action or proceeding with respect to such rights or remedies (including any action of foreclosure); <u>provided, however</u>, that    (x) the Bank Priority Representative and/or Hedge Priority Representative may exercise any or all such rights or remedies after the passage of a period of at least 180 days has elapsed since:  the earlier to occur of (1) the date on which the UST Representative declared the existence of any Event of Default under and as defined in any UST Priority Loan Document and demanded the repayment of all the principal amount of any UST Secured Obligations (unless such Event of Default and demand for repayment is rescinded, in which case such Event of Default and demand for repayment shall be deemed never to have occurred for purposes of this clause (x)(1)); and (2) the date on which the UST Priority Representative received notice from the Bank Priority Representative or the Hedge Priority Representative of its intent to exercise such rights or remedies (the "<u>Bank Priority Standstill Period</u>"); <u>provided, further, however</u>, that, notwithstanding anything herein to the contrary, in no event shall either the Bank Priority Representative or Hedge Priority Representative exercise any rights or remedies with respect to the UST Priority Collateral if, notwithstanding the expiration of any

Bank Priority Standstill Period, the UST Representative shall have commenced and be diligently pursuing the exercise of their rights or remedies with respect to all or any material portion of the UST Priority Collateral (prompt notice of such exercise to be given to the Bank Priority Representative and the Hedge Priority Representative); (ii) will not contest, protest or object to any foreclosure proceeding or action brought by the UST Representative or any other exercise by the UST Representative of any rights and remedies relating to the UST Priority Collateral under the UST Loan Documents or otherwise; (iii) subject to their rights under clause (i) above, will not object to the forbearance by the UST Representative from bringing or pursuing any foreclosure proceeding or action or any other exercise of any rights or remedies relating to the UST Priority Collateral, in each case so long as interests of the Bank Priority Representative or Hedge Priority Representative attach to the proceeds thereof, subject to the relative priorities described in Section 2.2(a) above; (iv) will not take or cause to be taken any action, the purpose or effect of which is to make any Lien with respect to any Bank Priority Secured Obligation or Hedge Priority Secured Obligation pari passu with or senior to, or to give the Bank Priority Representative or any Bank Priority Secured Creditor or Hedge Priority Representative or Hedge Priority Secured Party any preference or priority relative to, the Liens with respect to the UST Secured Obligations, the UST Representative or the UST Secured Parties with respect to any of the UST Priority Collateral (other than a DIP Financing in accordance with Section 2.2 above); and (v) will have no right to direct either the UST Representative or any other UST Secured Party to exercise any right, remedy or power with respect to the UST Priority Collateral or pursuant to the UST Loan Documents.

(b)     Until the UST Secured Obligations Payment Date has occurred, whether or not any Insolvency Proceeding has been commenced, the UST Representative and the UST Secured Parties shall have the right to enforce rights, exercise remedies (including set off and the right to credit bid their debt) and make determinations regarding the release, disposition, or restrictions with respect to the UST Priority Collateral without any consultation with or the consent of the Bank Priority Representative or any Bank Priority Secured Parties or the Hedge Priority Representative or any Hedge Priority Secured Parties. In exercising rights and remedies with respect to the UST Priority Collateral, the UST Representative and the UST Secured Parties may enforce the provisions of the UST Loan Documents and exercise remedies thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion. Such exercise and enforcement shall include the rights of an agent appointed by them to sell or otherwise dispose of UST Priority Collateral upon foreclosure, to incur expenses in connection with such sale or disposition, and to exercise all the rights and remedies of a secured creditor under the Uniform Commercial Code and of a secured creditor under Bankruptcy Law of any applicable jurisdiction. The UST Representative agrees to provide at least the lesser of (1) five days' or (2) the number of days remaining in the applicable Bank Priority Standstill Period, notice to the Bank Priority Representative and the Hedge Priority Representative of its intent to exercise and enforce its rights and remedies with respect to a material portion of the UST Priority Collateral.

(c)     Notwithstanding the foregoing, either of the Bank Priority Representative and any Bank Priority Secured Party or the Hedge Priority Representative and any Hedge Priority Secured Party may:

(i)     take any action (not adverse to the priority status of the Liens on the UST Priority Collateral securing the UST Secured Obligations, or the rights of the UST Representative or any UST Secured Party to exercise remedies in respect thereof) in order to create, perfect, preserve or protect its junior Lien in the UST Priority Collateral;

(ii)     file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims of the Bank Priority Representative or Bank Priority Secured Parties or of the Hedge Priority Representative or Hedge Priority Secured Parties, as the case may be, including, without

limitation, any claims secured by the UST Priority Collateral, if any, in each case in accordance with the terms of this Agreement; and

(iii)    exercise any of its rights or remedies with respect to the UST Priority Collateral after the termination of the Bank Priority Standstill Period to the extent permitted by Section 3.2(a) above.

The Bank Priority Representative, on behalf of itself and the Bank Priority Secured Parties, and the Hedge Priority Representative, on behalf of itself and the Hedge Priority Secured Parties, each agrees that it will not take or receive any UST Priority Collateral or any proceeds of UST Priority Collateral in connection with the exercise of any right or remedy (including set-off) with respect to any UST Priority Collateral in its capacity as a prepetition secured creditor, unless and until the UST Secured Obligations Payment Date has occurred, except as expressly provided in Section 3.2(a) above. Without limiting the generality of the foregoing, unless and until the UST Secured Obligations Payment Date has occurred, except as expressly provided in Section 3.2(a) above and this 3.2(c) above, the sole right of the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative and the Hedge Priority Secured Parties with respect to the UST Priority Collateral is to hold a Lien on the UST Priority Collateral pursuant to the applicable Bank Priority Documents or Hedge Priority Documents for the period and to the extent granted therein and to receive a share of the proceeds thereof, if any, after the UST Secured Obligations Payment Date has occurred.

(d)    Subject to Sections 3.2(a) and 3.2(c) above:

(i)    the Bank Priority Representative, for itself and on behalf of the Bank Priority Secured Parties, and the Hedge Priority Representative, for itself and on behalf of the Hedge Priority Secured Parties, each agrees that none of the Bank Priority Representative, the Bank Priority Secured Parties, the Hedge Priority Representative nor the Hedge Priority Secured Parties will take any action that would hinder any exercise of remedies under the UST Loan Documents or is otherwise prohibited hereunder, including any sale, lease, exchange, transfer or other disposition of the UST Priority Collateral, whether by foreclosure or otherwise;

(ii)    the Bank Priority Representative, for itself and on behalf of the Bank Priority Secured Parties, and the Hedge Priority Representative, for itself and on behalf of the Hedge Priority Secured Parties, each hereby waives any and all rights it or the Bank Priority Secured Parties and the Hedge Priority Secured Parties may have as a junior lien creditor or otherwise to consent to or object to the manner in which the UST Representative or the UST Secured Parties seek to enforce or collect the UST Secured Obligations or the Liens securing UST Secured Obligations granted in any of the UST Priority Collateral undertaken in accordance with this Agreement, regardless of whether any action or failure to act by or on behalf of the UST Representative or UST Secured Parties is adverse to the interest of the UST Secured Parties; and

(iii)    the Bank Priority Representative and the Hedge Priority Representative hereby each acknowledges and agrees that no covenant, agreement or restriction contained in the Bank Priority Documents or the Hedge Priority Documents (other than this Agreement) shall be deemed to restrict in any way the rights and remedies of the UST Representative or the UST Secured Parties with respect to the UST Priority Collateral as set forth in this Agreement and the UST Loan Documents.

(e)    Except as specifically set forth in Sections 3.2(a) and 3.2(d) above, nothing in this Agreement shall prohibit the receipt (1) by the Bank Priority Representative or any Bank Priority Secured Parties of the required payments of interest, principal and other amounts owed with respect to the applicable Bank Priority Secured Obligations so long as such receipt is not the direct or indirect result of the exercise by the Bank Priority Representative or any Bank Priority Secured Parties of rights or

remedies as a secured creditor (including set off) or enforcement in contravention of this Agreement of any Lien held by any of them or (2) by the Hedge Priority Representative or any Hedge Priority Secured Parties of the required payments of interest, principal and other amounts owed with respect to the applicable Hedge Priority Secured Obligations so long as such receipt is not the direct or indirect result of the exercise by the Hedge Priority Representative or any Hedge Priority Secured Parties of rights or remedies as a secured creditor (including set off) or enforcement in contravention of this Agreement of any Lien held by any of them. Nothing in this Agreement impairs or otherwise adversely affects any rights or remedies the UST Representative or the UST Secured Parties may have with respect to the UST Priority Collateral.

(f)    Prior to the occurrence of the UST Secured Obligations Payment Date, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, UST Priority Collateral or proceeds thereof received in connection with the sale or other disposition thereof, or collection thereon, upon the exercise of remedies by the UST Representative or UST Secured Parties, shall be applied by the UST Representative to the UST Secured Obligations in such order as specified in the relevant UST Loan Documents. Upon the occurrence of the UST Secured Obligations Payment Date, the UST Representative shall deliver to the Relevant Representative any UST Priority Collateral and proceeds of UST Priority Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct, to be applied by the Bank Priority Representative to the Bank Priority Secured Obligations in such order as specified in the Bank Priority Documents or the Hedge Priority Representative to the Hedge Priority Secured Obligations in such order as specified in the Hedge Priority Documents.

3.3    Cooperation. The UST Representative, on behalf of itself and the other UST Secured Parties, agrees that each of them shall take such actions as the Bank Priority Representative and/or the Hedge Priority Representative shall request in connection with the exercise by the Bank Priority Secured Parties or Hedge Priority Secured Parties, as applicable, of their rights set forth herein with respect to the Bank Priority Collateral. Each of the Bank Priority Representative, on behalf of itself and the Bank Priority Secured Parties, and the Hedge Priority Representative, on behalf of itself and the Hedge Priority Secured Parties, agrees that each of them shall take such actions as the UST Representative shall request in connection with the exercise by the UST Secured Parties, as applicable, of their rights set forth herein with respect to the UST Priority Collateral.

3.4    Actions Upon Breach.

(a)    If any UST Secured Party, Bank Priority Secured Party or Hedge Priority Secured Party, contrary to this Agreement, commences or participates in any action or proceeding against any Grantor, the Bank Priority Collateral or the UST Priority Collateral, such Grantor, with the prior written consent of the Relevant Representative or the UST Representative, may interpose as a defense or dilatory plea the making of this Agreement, and any UST Secured Party or Bank Priority Secured Party or, after the Bank Priority Secured Obligations Payment Date, any Hedge Priority Secured Party, as applicable, may intervene and interpose such defense or plea in its or their name or in the name of such Grantor.

(b)    Should any UST Secured Party, contrary to this Agreement, in any way take, attempt to or threaten to take any action with respect to the Bank Priority Collateral (including, without limitation, any attempt to realize upon or enforce any remedy with respect to this Agreement), or fail to take any action required by this Agreement, any Bank Priority Secured Party (in its own name or in the name of the relevant Grantor), Hedge Priority Secured Party (in its own name or in the name of the relevant Grantor) or the relevant Grantor may obtain relief against such UST Secured Party by injunction, specific performance and/or other appropriate equitable relief, it being understood and agreed by the UST Representative on behalf of each UST Secured Party that (i) the Bank Priority Secured Parties' and/or

Hedge Priority Secured Parties' damages from its actions may at that time be difficult to ascertain and may be irreparable, and (ii) each UST Secured Party waives any defense that the Grantors and/or the Bank Priority Secured Parties and/or Hedge Priority Secured Parties cannot demonstrate damage and/or be made whole by the awarding of damages.

(c)      Should any Bank Priority Secured Party or Hedge Priority Secured Party, contrary to this Agreement, in any way take, attempt to or threaten to take any action with respect to the UST Priority Collateral (including, without limitation, any attempt to realize upon or enforce any remedy with respect to this Agreement), or fail to take any action required by this Agreement, any UST Secured Party (in its own name or in the name of the relevant Grantor) or the relevant Grantor may obtain relief against such Bank Priority Secured Party or Hedge Priority Secured Party, as the case may be, by injunction, specific performance and/or other appropriate equitable relief, it being understood and agreed by (x) the Bank Priority Representative on behalf of each Bank Priority Secured Party (y) the Hedge Priority Representative on behalf of each Hedge Priority Secured Party that (i) the UST Secured Parties' damages from its actions may at that time be difficult to ascertain and may be irreparable, and (ii) each Bank Priority Secured Party and Hedge Priority Secured Party waives any defense that the Grantors and/or the UST Secured Parties cannot demonstrate damage and/or be made whole by the awarding of damages.

3.5      Inspection Rights.  Any Bank Priority Secured Party and Hedge Priority Secured Party and their representatives and invitees may deal with the Bank Priority Collateral as permitted by the Credit Agreement and the US Security Documents, without notice to, the involvement of or interference by any UST Secured Party or liability to any UST Secured Party.  Any UST Secured Party and their representatives and invitees may deal with the UST Priority Collateral as permitted by the UST Loan Documents, without notice to, the involvement of or interference by any Bank Priority Secured Party or Hedge Priority Secured Party or liability to any Bank Priority Secured Party or Hedge Priority Secured Party.

3.6      Notices of Certain Events.

(a)      The Bank Priority Representative or the Hedge Priority Representative, as applicable, hereby agrees to notify the UST Representative promptly after learning of the occurrence of any of the following events:  (i) the occurrence of any default or event of default or situation which, but for the passage of time, would constitute a default or event of default under the Bank Priority Documents or the Hedge Priority Documents, respectively, to the extent it has sent a notice to (in which case a copy of such notice shall be simultaneously sent to the UST Representative), or received a notice from, any Grantor with respect thereto; (ii) any Refinancing of all or any portion of the Bank Priority Secured Obligations or the Hedge Priority Secured Obligations, respectively; (iii) any amendment, modification, restatement or supplement to the terms of any Bank Priority Document or Hedge Priority Document, respectively; and (iv) at least three Business Days' notice prior to the exercise of remedies or institution of an Insolvency Proceeding against GM or any other Grantor on account of the Bank Priority Secured Obligations or the Hedge Priority Secured Obligations, respectively.

(b)      The UST Representative hereby agrees to notify the Relevant Representative promptly after learning of the occurrence of any of the following events:  (i) the occurrence of any default or event of default or situation which, but for the passage of time, would constitute a default or event of default under the UST Loan Documents, to the extent it has sent a notice to (in which case a copy of such notice shall be simultaneously sent to the Relevant Representative), or received a notice from, any Grantor with respect thereto; (ii) any Refinancing of all or any portion of the UST Secured Obligations; (iii) any amendment, modification, restatement or supplement to the terms of the UST Loan Documents; and (iv) at least three Business Days' notice prior to the exercise of remedies or institution of an Insolvency Proceeding against GM or any other Grantor on account of the UST Secured Obligations.

(c)    Except as expressly provided in this Agreement, each of the Secured Parties agrees that, without the necessity of any reservation of rights against it, and without notice to or further assent by it, any demand for repayment of any of the Secured Obligations may be rescinded in whole or in part by the applicable Secured Party, and any Secured Obligation may be continued, and any Secured Obligations, or the liability of the applicable Grantors upon or for any part thereof, or any collateral or guarantee therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, waived, surrendered, or released by the applicable Secured Party, in each case without notice to or further assent by the other Secured Parties, and without impairing, abridging, releasing or affecting the subordination and other agreements provided for herein.

### Section 4.    Rights as Unsecured Creditor.

Notwithstanding anything contained herein to the contrary, the Secured Parties hereby agree that they shall not assert any rights and remedies as an unsecured creditor against GM or any other Grantor in a manner which would contravene the understandings and agreements set forth herein including, without limitation, with respect to Lien and payment priority, consenting to DIP Financing, requests for adequate protection, and the use of Cash Collateral.

### Section 5.    Miscellaneous.

5.1    Notices.  All notices, demands, requests, consents, approvals or other communications required, permitted, or desired to be given hereunder (any of the foregoing, a "Notice") shall be in writing sent by facsimile (with answer back acknowledged) or by registered or certified mail, postage prepaid, return receipt requested, or delivered by hand or reputable overnight courier addressed to the party to be so notified at its address set forth below, or to such other address as such party may hereafter specify. Any such notice, demand, request, consent, approval or other communication shall be deemed to have been received:  (a) upon receipt (or first refused delivery) if mailed, (b) on the date of sending by facsimile if sent during business hours on a Business Day (otherwise on the next Business Day), (c) on the date of delivery by hand if delivered during business hours on a Business Day (otherwise on the next Business Day) and (d) on the next Business Day if sent by an overnight commercial courier.  All written notices so given shall be deemed effective upon receipt or, if mailed, upon the earlier to occur of receipt or first refused delivery.

5.2    Mutual Consent.  The UST Representative, in its capacity as lender under the UST Loan Agreement, hereby consents to (a) the entry by GM and any of its Subsidiaries into the First Amendment and performance by GM and such Subsidiaries of their obligations thereunder, and (b) subject to the terms of the First Amendment and this Agreement, the grant by GM and any of its Subsidiaries of Liens on any Additional Collateral in favor of (i) the Bank Priority Representative, for the benefit of the Bank Priority Secured Parties, and (ii) the Hedge Priority Representative, for the benefit of the Hedge Priority Secured Parties, and that such Liens shall be deemed to be "Permitted Liens" as such term is defined in the UST Loan Agreement; provided however, that any such Liens upon the Additional Collateral (x) shall be junior in priority to the Liens securing the UST Secured Obligations and (y) are subject to this Agreement or an intercreditor agreement with the UST Representative in form and substance acceptable to the UST Representative in its sole discretion.  The consent set forth in this Section 5.2 is intended, and shall be deemed, to satisfy the requirements of Section 11.04 of the UST Loan Agreement with respect to a modification of a provision of the UST Loan Agreement.

Each of the Bank Priority Representative and the Hedge Priority Representative confirms that GM and any of its Subsidiaries are permitted under the Credit Agreement (as amended, including by the First Amendment) to, subject to the terms of the UST Loan Documents and this Agreement, grant Liens on any Bank Priority Collateral in favor of the UST Representative, for the benefit of the UST Secured

Parties; provided however, that any such Liens upon the Bank Priority Collateral (a) shall be junior in priority to the Liens securing the Bank Priority Secured Obligations and the Hedge Priority Secured Obligations, and (b) are subject to this Agreement or an intercreditor agreement with the Bank Priority Representative and Hedge Priority Representative in form and substance acceptable to such parties in their sole discretion.

5.3    Other Rights Reserved.    Except as expressly provided herein, the Bank Priority Representative, each of the Bank Priority Secured Parties, the Hedge Priority Representative, each of the Hedge Priority Secured Parties, the UST Representative and each of the UST Secured Parties reserve all rights with respect to (a) objecting in any Insolvency Proceeding or otherwise to any action taken by any other party to this Agreement with respect to the Bank Priority Collateral, the UST Priority Collateral or otherwise, including the seeking by any party hereto of adequate protection (other than as provided in Sections 2.1(h) and 2.2(h) above), or the assertion by any party hereto of any of its rights and remedies under any of the Bank Priority Documents, the Hedge Priority Documents or the UST Loan Documents or any other agreement, instrument or document, and (b) (subject, in the case of the Hedge Priority Secured Parties, to Section 5.2 of Annex A to the Hedge Priority US Security Agreement) seeking to provide any DIP Financing to any Grantor, and objecting to (subject to the provisions of Sections 2.1(e) and 2.2(e) above, and Section 5.2 of Annex A to the Hedge Priority US Security Agreement) to any proposal for DIP Financing made by any other party.

5.4    Counterparts.    This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.    Delivery of an executed counterpart of a signature page of this Agreement or any document or instrument delivered in connection herewith by telecopy shall be effective as delivery of a manually executed counterpart of this Agreement or such other document or instrument, as applicable.

5.5    Authorization.    By its signature, each person executing this Agreement on behalf of a party hereto represents and warrants to the other parties hereto that it is duly authorized to execute this Agreement.

5.6    APPLICABLE LAW.    THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

5.7    SUBMISSION TO JURISDICTION; WAIVERS.

(a)    ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY PARTY ARISING OUT OF OR RELATING HERETO MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE, COUNTY AND CITY OF NEW YORK.    BY EXECUTING AND DELIVERING THIS AGREEMENT, EACH PARTY, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY:

(i)    ACCEPTS    GENERALLY    AND    UNCONDITIONALLY    THE NONEXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS;

(ii)    WAIVES ANY DEFENSE OF FORUM NON CONVENIENS;

(iii)    AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED

MAIL, RETURN RECEIPT REQUESTED, TO THE APPLICABLE PARTY AT ITS ADDRESS FOR NOTICES AS PROVIDED HEREIN; AND

(iv)    AGREES THAT SERVICE AS PROVIDED ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE PARTY IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT.

(b)    EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER HEREOF, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS. EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION 5.7(b) AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(c)    EACH OF THE PARTIES HERETO WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, VERBAL OR WRITTEN STATEMENT OR ACTION OF ANY PARTY HERETO.

5.8    <u>Binding on Successors and Assigns</u>. This Agreement shall be binding upon the parties hereto and their respective successors, assigns, participants and any holder of all or any portion of the Indebtedness covered by this Agreement, whether such interest is legal, economic or otherwise.

5.9    <u>Amendment</u>. No amendment, modification or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each of the Secured Parties or their authorized agent and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the parties making such waiver or the obligations of the other parties to such party in any other respect or at any other time. Notwithstanding the foregoing, the Grantors shall not have any right to consent to or approve any amendment, modification or waiver of any provision of this Agreement.

5.10    <u>Effectiveness; Continuing Nature of this Agreement; Severability</u>. This Agreement shall become effective when executed and delivered by the parties hereto. This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under Section 510(a) of the Bankruptcy Code, shall be effective before, during and after the commencement of an Insolvency Proceeding, and the terms of this Agreement shall survive, and shall continue in full force and effect, in any Insolvency

Proceeding, and after the occurrence of any or all of the Bank Priority Secured Obligations Payment Date, the Hedge Priority Secured Obligations Payment Date and the UST Priority Secured Obligations Payment Date. The rights and obligations under this Agreement of each party hereto shall not be affected by the vote of any party hereto to accept or reject a plan of reorganization or liquidation proposed in any Insolvency Proceeding relating to any Grantor, the Bank Priority Collateral, the UST Priority Collateral, or the receipt by any party hereto of any cash, securities or other property distributed in any Insolvency Proceeding, except as expressly provided in this Agreement. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. All references to Grantors shall include such Grantors as debtor and debtor in possession and any receiver or trustee for Grantors in any Insolvency Proceeding.

5.11    No Third Party Beneficiaries. This Agreement and the rights and benefits hereof shall inure to the benefit of each of the parties hereto and its respective successors and assigns. No other person shall have or be entitled to assert rights or benefits hereunder. Each Grantor understands that this Agreement is for the sole benefit of the Secured Parties and their respective successors and assigns, and that none of the Grantors, their Subsidiaries or Affiliates are intended beneficiaries or third party beneficiaries of this Agreement or any of the provisions hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

GENERAL MOTORS CORPORATION,
as a Grantor

By: _____

Name: Adil Mistry
Title: Assistant Treasurer

Address for Notices:
General Motors Corporation
300 Renaissance Center
Detroit, Michigan 48265-3000

Attention: Chief Financial Officer
Facsimile: (313) 667-4605

With copy to:

Attention: General Counsel
Facsimile: (248) 267-4584

*Signature Page to Intercreditor Agreement*

SATURN CORPORATION,
as a Grantor

By: _____

Name: Adil Mistry
Title: Vice President

Address for Notices:
767 Fifth Avenue, 14th Floor
New York, NY 10153

Attention: Adil Mistry
Telephone: (212) 418-3507
Facsimile: (212) 418-3695

*Signature Page to Intercreditor Agreement*

ANNUNCIATA CORPORATION,
ARGONAUT HOLDINGS, INC.,
GENERAL MOTORS ASIA, INC.,
GENERAL MOTORS ASIA PACIFIC HOLDINGS, LLC,
GENERAL MOTORS INTERNATIONAL HOLDINGS, INC.,
GENERAL MOTORS OVERSEAS CORPORATION,
GENERAL MOTORS OVERSEAS DISTRIBUTION CORPORATION,
GENERAL MOTORS PRODUCT SERVICES, INC.,
GENERAL MOTORS RESEARCH CORPORATION,
GM APO HOLDINGS, LLC,
GM BUROMETALS, INC.,
GM FINANCE CO. HOLDINGS LLC,
GM GEFS L.P.,
GM GLOBAL TECHNOLOGY OPERATIONS, INC.,
GM GLOBAL TOOLING COMPANY, INC.,
GM LAAM HOLDINGS, LLC,
GM PREFERRED FINANCE CO. HOLDINGS LLC,
GM TECHNOLOGIES, LLC,
GM-DI LEASING CORPORATION,
GMOC ADMINISTRATIVE SERVICES CORPORATION,
ONSTAR, LLC,
RIVERFRONT HOLDINGS, INC., and
SATURN DISTRIBUTION CORPORATION, each, as a UST-Related Guarantor and as a
Grantor

By: _____
Name:  Adil Mistry
Title:    Vice President

Address for Notices:
767 Fifth Avenue, 14ᵗʰ Floor
New York, NY 10153

Attention: Adil Mistry
Telephone: (212) 418-3507
Facsimile: (212) 418-3695

*Signature Page to Intercreditor Agreement*

CITICORP USA, INC., as Bank Priority
Representative

By: _____

    Name: Wayne Beckmann
    Title:  Managing Director

Address for Notices:
Citicorp USA, Inc.
Global Loans Support Services
1615 Brett Road
OPS III
New Castle, Delaware 19720

Attention: Charles Huester
Facsimile: (212) 994-0961

*Signature Page to Intercreditor Agreement*

CITICORP USA, INC., as Hedge Priority
Representative

By: _____

    Name: Wayne Beckmann
    Title: Managing Director

Address for Notices:
Citicorp USA, Inc.
Global Loans Support Services
1615 Brett Road
OPS III
New Castle, Delaware 19720

Attention: Charles Huester
Facsimile: (212) 994-0961

*Signature Page to Intercreditor Agreement*

CITICORP USA, INC.,
    as Bank Priority Representative


By:_____
    Name:
    Title:


Address for Notices:


CITICORP USA, INC.,
    as Hedge Priority Representative


By:_____
    Name:
    Title:


Address for Notices:
    Global Loans Support Services
    Two Penns Way, Suite 200
    New Castle, Delaware 19720
    Attention: Carin Seals
    Telecopy: 212-994-0961


THE UNITED STATES DEPARTMENT OF THE
    TREASURY,
    as UST Representative


By:_____
    Name: Neel Kashkari
    Title: Interim Assistant Secretary of the Treasury
    for Financial Stability


Address for Notices:
    1500 Pennsylvania Avenue, NW
    Washington, D.C. 20220
    Attention: Chief Counsel Office of Financial
    Stability
    Facsimile: (202) 927-9219


*[Signature page to Intercreditor Agreement]*