HEARING DATE AND TIME: June 30, 2009 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: June 19, 2009 at 5:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                              :
In re                                         :          **Chapter 11 Case No.**
                                              :
**GENERAL MOTORS CORP.,** *et al.*,           :          **09-50026 (REG)**
                                              :
                    **Debtors.**              :          **(Jointly Administered)**
                                              :
-----------------------------------------------------------------x

**AMENDED AND SUPPLEMENTED OMNIBUS REPLY OF THE DEBTORS**
**TO OBJECTIONS TO DEBTORS' MOTION PURSUANT**
**TO 11 U.S.C. §§ 105, 363(b), (f), (k), AND (m),**
**AND 365 AND FED. R. BANKR. P. 2002, 6004, AND 6006, TO APPROVE**
**(A) THE SALE PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT**
**WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED**
**PURCHASER, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND**
**OTHER INTERESTS; (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) OTHER RELIEF**

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................................ 1

The Objections ...................................................................................................................... 4

Specific Objections .............................................................................................................. 6

Bondholder Objections ........................................................................................................ 6

Dealer-Related Objections ................................................................................................. 17

Successor Liability and Consumer Objections ................................................................. 25

Plant Closure Objections.................................................................................................... 32

Retiree/Splinter Union Objections .................................................................................... 32

Workers' Compensation Objections .................................................................................. 37

Tax Objections .................................................................................................................... 38

Lien Creditor Objections.................................................................................................... 38

Stockholder Objections ...................................................................................................... 39

Cure Objections .................................................................................................................. 40

Miscellaneous Objections .................................................................................................. 42

## TABLE OF AUTHORITIES

## FEDERAL CASES

*In re 495 Cent. Park Ave. Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992).........................48

*Am. Living Sys. v. Barapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186 (Bankr. N.D. Ga. 1986), *aff'd*, 805 F.2d 1515 (11th Cir. 1986)...............................................26, 28

*Assocs. Commercial Corp. v. Rash*, 520 U.S. 953 (1997) .........................................44 n.17

*In re Beker Indus. Corp.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986)........ 44-45 & n.18, 46 n.19

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................... 14-15

*In re Big Rivers Electric Co.*, 213 B.R. 962 (Bankr. W.D. Ky. 1997) ..............................49

*In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1993) ..................................................12

*In re Brileya*, 108 B.R. 444 (Bankr. D. Vt. 1989) ............................................................47

*In re Brookfield Clothes, Inc.*, 31 B.R. 978 (1983)............................................................8

*In re Broomall Printing Corp.*, 131 B.R. 32 (Bankr. D. Md. 1991)..........................46 n.21

*In re Bygaph, Inc.*, 56 B.R. 596 (Bankr. S.D.N.Y. 1986)...................................... 45, 47-48

*In re Chipwich, Inc.*, 54 B.R. 427 (Bankr. S.D.N.Y. 1985).............................................20

*In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009) ................7, 8, 10, 12 n.5, 13, 14, 15, ......................................................... 19, 22, 25, 27-28, 29, 31, 34 & nn.14, 15, 35, 45, 48

*In re Chrysler, LLC*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009) .............................................................................................................................7, 28

*In re City of Vallejo*, 403 B.R. 72, (Bankr. E.D. Cal. 2009).............................................21

*In re Collins*, 180 B.R. 447 (Bankr. E.D. Va. 1995)............................................45 n.19, 47

*In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86 (2d Cir. 2003)....................47, 48

*Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943 (11 Cir. 2009)..........................23 n.10

*In re Fin. News Network, Inc.*, 980 F.2d 165 (2d Cir. 1992).............................................49

**TABLE OF AUTHORITIES**

**Page**

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326 (2008) ....................8

*In re G Survivor*, 171 B.R. 755 (Bankr. S.D.N.Y. 1994), *aff'd sub nom. John Forsyth Co. v. G. Licensing, Inc.*, 187 B.R. 111 (S.D.N.Y. 1995) ...................................20

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)..............................37

*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) ..............................................40

*LNC Invs., Inc. v. First Fid. Bank*, 247 B.R. 38 (S.D.N.Y. 2000) .......................44 n.17, 48

*In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) ..............................................................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ....................................................................................................................28

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984).......................................................7, 19

*N. Pac. R.R. Co. v. Boyd*, 228 U.S. 482 (1913) ................................................................40

*In re Old Carco LLC,* 2009 WL 1708813 (Bankr. S.D.N.Y. June 19, 2009)..............19, 20

*In re Oneida Lake Dev., Inc.*, 114 B.R. 352 (Bankr. N.D.N.Y. 1990) ................44, 46 n.19

*In re PSA, Inc.*, 335 B.R. 580 (Bankr. D. Del. 2005) ...................................................22 n.9

*In re Penn Traffic Co.*, 524 F.3d 373 (2d Cir. 2008) .........................................................19

*Perez v. Campbell*, 402 U.S. 637 (1971) ..........................................................................29

*Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.)*, 19 B.R. 323 (Bankr. W.D. Wash. 1982) ................................................................................................26

*In re San Felipe @ Voss, Ltd.*, 115 B.R. 526 (Bankr. S.D. Tex. 1990) ...........................48

*In re Terrace Gardens Park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989)....................45

*In re TM Monroe Manor Assocs.*, 140 B.R. 298 (Bankr. N.D. Ga. 1991)...................48-49

*In re Trans World Airlines, Inc.*, 261 B.R. 103 (Bankr. D. Del. 2001) ............................20

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003)....................................26, 28

**TABLE OF AUTHORITIES**

Page

*In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 980 (Bankr. D. Del. Apr. 2, 2001) ...............................................................................................................8, 40

*UAW v. Chrysler LLC*, 2008 U.S. Dist. LEXIS 92591 (E.D. Mich. July 31, 2008)..........37

*UAW v. Gen. Motors Corp.*, 2008 WL 2968408 (E.D. Mich. 2008) ................................37

*United Sav. Assoc. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988) .44 n.17, 48

*In re WPRV-TV, Inc.*, 143 B.R. 315 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992), *aff'd in part, rev'd in part on other grounds*, 983 F.2d 336 (1st Cir. 1993) ............................................................................................................45, 47

*In re Westpoint Stevens Inc.*, 333 B.R. 30 (S.D.N.Y. 2005).................................12 n.5, 48

*In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Ohio 1987) ...................28, 29

*In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72 (1st Cir. 1995) .............................47


**STATE CASES**

*DaimlerChrysler Motors Co. v. Lew Williams, Inc.*, 48 Cal. Rptr. 3d 233, 239 (Cal. Ct. App. 2006).................................................................................................24 n.11


**FEDERAL STATUTES AND FEDERAL RULES**

11 U.S.C. § 105..............................................................................................................1

11 U.S.C. § 361 .......................................................................................................44, 47

11 U.S.C. § 362(b)(18) ...................................................................................................38

11 U.S.C. § 363........................ 2, 3, 4, 7, 12 & n.5, 27, 28 n.13. 29, 30, 33, 40, 44, 47, 48

11 U.S.C. § 363(b) ........................................................1, 11, 38, 26, 27, 29, 40

11 U.S.C. § 363(f)...............................................................................1, 26, 27, 29, 38

11 U.S.C. § 363(f)(3) ...........................................................27, 28, 29, 41 n.18, ...........................................42 nn.19, 20, 43 & n.21, 44 & nn.16, 17, 45 & n.18, 46 n.22, 52

11 U.S.C. § 363(f)(5) .................................................5, 25, 42 n.20, 45 n.18, 46 n.22

TABLE OF AUTHORITIES

11 U.S.C. § 363(m) ...................................................................................................1

11 U.S.C. § 365 .............................................................................................1, 19, 20

11 U.S.C. § 506(a) ...............................................................................................44, 47

11 U.S.C. § 506(a)(1) .......................................................................................46 & n.20

11 U.S.C. § 506(c) ...................................................................................................43

11 U.S.C. § 524(g) ..............................................................................................29, 30

11 U.S.C. § 544 ......................................................................................................38

11 U.S.C. § 546(b) ...................................................................................................38

11 U.S.C. § 549 ......................................................................................................38

11 U.S.C. § 1102(a)(2) .........................................................................................7 n.3

11 U.S.C. § 1114 .................................................................................................33, 35

11 U.S.C. § 1129 .....................................................................................................12

11 U.S.C. § 1129(b)(2)(A) .........................................................................................46

11 U.S.C. § 1129(b)(2)(B)(ii) .....................................................................................40

12 U.S.C. § 5201 .....................................................................................................14

28 U.S.C. § 959(b) ...................................................................................................21

Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat.
3765 (Oct. 3, 2008) ..................................................................................................14

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 345-46 (1977) .........................................47

S. Rep. No. 95-989, 95th Cong., 2d Sess. 55 (1978) ....................................................47

Fed. R. Bankr. P. 2002 ...............................................................................................1

Fed. R. Bankr. P. 2019 ...........................................................................................6 n.2

Fed. R. Bankr. P. 6004 ...............................................................................................1

**TABLE OF AUTHORITIES**

**Page**

## STATE STATUTES

Alaska Stat. § 45.25.130(b)........................................................................23 n.10

Colo. Rev. Stat. § 12-6-120(1).................................................................23 n.10

La. Rev. Stat. § 32.1261(1).......................................................................23 n.10

N.Y. Veh. & Traf. Law § 463(2) ..............................................................23 n.10

Va. Code Ann. § 46.2-1572.3 ...................................................................23 n.10

## TREATISES

3 *Collier on Bankruptcy* ¶ 363.06[1] (15th rev. ed. 2008)................................27

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("**GM**") and its affiliated debtors (collectively, the "**Debtors**"), respectfully represent:

## **Introduction**

1.      On June 1, 2009, the Debtors filed the motion (the "**Motion**"), requesting, *inter alia*, an order (the "**Sale Order**"), pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), and 365 and Fed. R. Bankr. P. 6004 and 6006, authorizing and approving (i) the sale of substantially all of the Debtors' assets pursuant to a proposed Master Sale and Purchase Agreement and related agreements (the "**MPA**") among the Debtors (the "**Sellers**") and Vehicle Acquisition Holdings LLC (the "**Purchaser**"), a purchaser sponsored by the United States Department of the Treasury (the "**U.S. Treasury**"), free and clear of liens, claims, encumbrances, and other interests, including any successor liabilities (the "**363 Transaction**"), (ii) the assumption and assignment of certain executory contracts and unexpired leases of personal property and of nonresidential real property (collectively, the "**Leases**"), and (iii) the approval of the UAW Retiree Settlement Agreement, subject to higher or better offers.

2.      These chapter 11 cases and the Motion were initiated because there was no viable alternative to preserve and maximize the going concern value of the GM business and also preserve the largest part of the domestic automotive industry and the hundreds of thousands of jobs and countless suppliers and other businesses that depend on an ongoing viable GM business.

3.      Although several hundred responsive pleadings to the Motion have been filed, there is a consistent and overwhelming theme -- not one party seriously suggests (much less points to a single fact suggesting) that the 363 Transaction not be consummated or that there

is any viable alternative transaction, purchaser, or financing source outside of the 363

Transaction:

- No party has questioned that the alternative to the 363 Transaction is liquidation – or presented any facts to controvert the Debtors' showing that in liquidation -- the unsecured creditors would receive no recovery;

- No party has questioned the draconian consequences to employees, suppliers, dealers, communities, and the overall U.S. economy if the 363 Transaction is not consummated;

- Virtually no dealers have objected and, in fact, approximately 99% of all dealers have agreed to new ongoing participation or wind-down agreements to be assumed by the Purchaser; and

- No party or person has expressed an interest or proposed a higher or better offer or any other financing proposal.

4.      Indeed, the responsive pleading filed by the Official Committee of

Unsecured Creditors (the "**Creditors' Committee**") (Docket No. 2362), speaking for a broad

cross-section of the unsecured creditor body, including unionized employees, suppliers, dealers,

tort claimants, and bondholders, the claimant group most affected by the chapter 11 cases,

appropriately stated that: it is "satisfied that no viable alternative [to the 363 Transaction] exists

to prevent the far worse harm that would flow from the liquidation of GM;" the "current

transaction is the only option on the table"; and the 363 Transaction "serves the core purposes of

the Bankruptcy Code and constitutes a strong business justification under section 363 of the

Code to sell the debtors' assets outside of a plan process."

5.      Moreover, as demonstrated by both the initial and the Supplemental

Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 (Docket Nos. 21

and 2479), time is of the essence and, in fact, the need for speed has intensified.  The emergence

of a New GM is a significant part of the effort to persuade and encourage consumers to purchase

GM products, and consummation of the 363 Transaction is essential to alleviate the stress on

GM's supplier and dealer network and the obvious systemic risks attendant thereto.

6.       The objections to the Motion may be placed into four principal categories

(exclusive of cure objections) and, as stated, they do not challenge the necessity to consummate

the 363 Transaction but rather, simply seek to extract more money from the Purchaser.  These

four categories are:

- Dealer contract issues;

- Successor liability issues;

- Demands for additional and increased retiree benefits for retired hourly
  employees to be paid by the Purchaser; and

- Whether the 363 Transaction constitutes a *sub rosa* plan.

7.       The objections lack merit and should be overruled.  First, the agreements

with the dealers are in full compliance with applicable law, and neither the Debtors nor the

Purchaser seek to strip the states of any cognizable rights they have with respect to such

agreements.

8.       Second, under well-settled authority, and as recently acknowledged by

Judge Gonzalez in the *Chrysler* case, the provisions in the MPA and the proposed order

approving the 363 Transaction relating to successor liability are appropriate in the circumstances

and entirely consistent with section 363 of title 11, United States Code (the "**Bankruptcy**

**Code**").  In addition, the Purchaser has agreed to assume all express warranty claims and all

products liability claims arising subsequent to the closing of the 363 Transaction.

9.       Third, the retired hourly employees cannot compel the Purchaser to either

assume their existing benefits or to offer them more than the Purchaser is willing to pay for the

assets.  Notably, the Purchaser is not relegating the retirees to an unsecured claim against the

estates: rather, it has offered them the same benefit proposal that is being made and will be

implemented for GM's salaried retirees -- and four separate collective bargaining agents

representing hourly retirees similar to those other hourly retirees who have filed objections to the

363 Transaction have accepted such proposal.

10.    Finally, the 363 Transaction is not a *sub rosa* plan. In the *Chrysler* case,

where precisely the same issue was raised under the same circumstances, it was soundly and

clearly rejected. The same conclusion is warranted here because the 363 Transaction simply

does not allocate or distribute any of the sale proceeds, nor does it otherwise dictate the terms of

a plan. The 363 Transaction simply sells assets for consideration (including assumption of

liabilities).

11.    Manifestly, the 363 Transaction is not a plan disposition. Rather, it

follows what has become the standardized structure for the many section 363 sales that have

occurred and been approved.

12.    The undisputed facts are clear. Prompt approval of the 363 Transaction is

the only means to preserve and maximize enterprise value and provide a real and genuine

opportunity for GM's business to survive and thrive as an economically viable entity. The only

other alternative is prompt liquidation and the systemic failure and dire consequences that will

inevitably unfold. The objecting parties, which seek to promote their own parochial economic

interests in contrast to the interests of the greatest number of impaired stakeholders, should not

be permitted to stop the necessary approval and consummation of the 363 Transaction.

### **The Objections**

13.    To date, approximately 850 written objections to the Motion or related

aspects of the 363 Transaction (the "**Objections**"), have been filed with the Court or received by

the Debtors.  These Objections fall into eleven general categories and are set forth in summaries

annexed hereto as Exhibits "A" through "K":

(i) Objections filed by bondholders ("**Bondholder Objections**"), a summary of which is annexed hereto as Exhibit "A";

(ii) Objections relating to state franchise law issues or objections by dealers ("**Dealer-Related Objections**"), a summary of which is annexed hereto as Exhibit "B";

(iii) Objections relating to successor liability, tort, asbestos, environmental, and other products liability claims, including consumer protection issues ("**Successor Liability and Consumer Objections**"), a summary of which is annexed hereto as Exhibit "C";

(iv) Objections filed by governmental agencies opposing specific plant closures ("**Plant Closure Objections**"), a summary of which is annexed hereto as Exhibit "D";

(v) Objections filed by UAW-Represented Retirees,[1] retirees represented by "splinter" unions, or "splinter" union representatives of retirees ("**Retiree/Splinter Union Objections**"), a summary of which is annexed hereto as Exhibit "E";

(vi) Objections relating to workers' compensation issues ("**Workers' Compensation Objections**"), a summary of which is annexed hereto as Exhibit "F";

(vii) Objections relating to tax issues ("**Tax Objections**"), a summary of which is annexed hereto as Exhibit "G";

(viii) Objections filed by holders of liens, including construction or mechanic's liens ("**Lien Creditor Objections**"), a summary of which is annexed hereto as Exhibit "H";

(ix) Objections filed by Stockholders ("**Stockholder Objections**"), a summary of which is annexed hereto as Exhibit "I";

(x) Objections relating to assumption and assignment of contracts, including cure amounts ("**Cure Objections**"), a summary of which is annexed hereto as Exhibit "J" and

---

[1] Capitalized terms not defined herein have the meaning ascribed thereto in the Motion or the Debtors' Memorandum of Law.

(xi) Miscellaneous objections ("**Miscellaneous Objections**"), a summary of which is annexed hereto as Exhibit "K."

14.    The Debtors are continuing to review the Objections and are discussing specific issues with a number of entities who have filed Objections.  In addition, in order to resolve certain Objections, the proposed order approving the Motion (the "**Sale Order**") will be modified and supplemented (the "**Modified Sale Order**"), which also should have the effect of resolving the number of outstanding Objections.  The Modified Sale Order as well as a marked copy of the Sale Order showing the revisions will be submitted to the Court prior to the hearing to consider the Motion (the "**Sale Hearing**").

15.    For the reasons set forth below and in the Motion and the Debtors' Memorandum of Law in Support of the Motion (the "**Memorandum of Law**" or "**Debtors' Mem.**"), any Objections that may not be resolved by the beginning of the Sale Hearing should be overruled, the Motion should be granted, and the Modified Sale Order granted.

<u>**Specific Objections**</u>

<u>**Bondholder Objections**</u>

16.    Most of the Objections filed by the Debtors' bondholders are nothing more than emotional reactions to the reality that unsecured creditors of the Debtors will experience an economic loss as a result of the 363 Transaction.  Although the Debtors are sympathetic to the economic circumstances facing bondholders, the Bondholder Objections present no legitimate challenge to the Motion.

17.    The Unofficial Committee of Family & Dissident GM Bondholders (the "**F&D Bondholders**")[2] (Docket No. 1969), Oliver Addison Parker ("**Parker**") (Docket Nos.

---

[2] Note that as reflected by the Rule 2019 statements filed by the F&D Bondholders, many of such bondholders are speculators who purchased their respective bonds in the days preceding the Commencement Date for a price sometimes as low as $1.20 per $100 of face value.

2193 and 2194), and Radha R.M. Narumanchi (Docket No. 2357) ("**Narumanchi,**" and

collectively with the F&D Bondholders and Parker, the "**Minority Bondholder Objectors**"),[3]

challenge the 363 Transaction on the unsupportable grounds that, among other things, the 363

Transaction should have been implemented in the context of a chapter 11 plan of reorganization

and is a disguised *sub rosa* plan of reorganization.  These objections are without merit.  The

well-settled law is to the contrary, including, most recently Judge Arthur J. Gonzalez's May 31,

2009 decision, *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), which was

subsequently affirmed by the United States Court of Appeals for the Second Circuit on June 5,

2009, "for substantially the reasons stated in the opinions of Bankruptcy Judge Gonzalez," *In re

Chrysler, LLC*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351, at *1 (2d Cir. June 5, 2009),

approving the section 363 asset sale in Chrysler's chapter 11 cases.  The *Chrysler* decision

addressed, and squarely rejected, the precise arguments the Minority Bondholder Objectors now

proffer.  Notably, the Minority Bondholder Objectors simply ignore the unassailable legal

analysis and substantive findings in *Chrysler*.  Such Objections also conspicuously ignore both

the reality and consequences of the liquidation alternative.

      18.   <u>An Expedited Asset Sale Outside of a Chapter 11 Plan of Reorganization
Is Appropriate Under These Exigent Circumstances</u>.  As discussed in the Motion and the

Debtors' Memorandum of Law, the overriding objective of a business reorganization is to

preserve the value of a debtor's assets as a going concern.  *See NLRB v. Bildisco & Bildisco*, 465

---

[3] The F&D Bondholders purport to represent the interests of over 1,500 bondholders with bond holdings
purportedly in excess of $400 million at face value.  F&D Obj. at 1.  On June 23, 2009, the Court denied the F&D
Bondholders' motion seeking appointment as an official committee, pursuant to 11 U.S.C. § 1102(a)(2), finding that
the F&D Bondholders did not establish a lack of adequate representation by the statutory committee appointed in
these chapter 11 cases (the "**Creditors' Committee**").  Parker purports to hold 200,000 "shares" of GM bonds with
a face value of $5 million.  Parker Obj. at 2.  Narumanchi purports to own $400,000 worth of GM bonds (at par
value).  Narumanchi Obj. at 1.  Other bondholders also challenge the 363 Transaction for substantially the same
reasons, including, for example, Ronald and Sandra Davis (Docket No. 2137) and Lloyd A. Good (Docket No.
2025).

U.S. 513, 528 (1984); Debtors' Mem. at 3-4 (citing cases). Debtors in bankruptcy often have

been permitted to sell substantially all their assets prior to the process of confirming a plan

(including at the very early stages of a chapter 11 case), particularly where sufficient exigent

circumstances (such as the erosion in value of assets over time) exist. *See, e.g., Fla. Dep't of*

*Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326, 2331 n.2 (2008); *In re Brookfield*

*Clothes, Inc.*, 31 B.R. 978, 986 (1983); Debtors' Mem. at 5. These cases are no different. Here,

in the absence of *any* other financing, equity investment, strategic alliance, or other alternative to

liquidation, the Debtors entered into the 363 Transaction and filed the Motion to preserve the

going concern value of GM's business and maximize value to all economic stakeholders. Thus,

the issue is whether, in the context of these chapter 11 cases involving a fragile business, there is

a "business justification" or a "good business reason" for the sale of substantially all the Debtors'

assets at this early stage. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Chrysler*,

405 B.R. at 96; *In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 980 (Bankr. D. Del. Apr. 2,

2001). As demonstrated in the Debtors' Motion, Memorandum of Law, and supporting

affidavits and declarations, and in the submission made by the Creditors' Committee, the answer

is a resounding "yes."

19.    The *undisputed* record before the Court demonstrates that the 363

Transaction is the *only* viable means of preserving the value of GM's business enterprise and

maximizing its going concern value. *See, e.g.,* Affidavit of Frederick A. Henderson Pursuant to

Local Bankruptcy Rule 1007-2 ¶¶ 5, 14, 16, 19, dated June 1, 2009 (the "**Henderson Affidavit**"

or "**Henderson Aff.**"). There simply is no other option: The only alternative is liquidation. *Id.*

All prior efforts by GM's management and financial advisors did not yield a single purchaser or

strategic partner for GM's assets -- or even an entity willing to provide critical debtor in

possession financing, except for the U.S. and Canadian Governments.  *Id.* ¶ 14; Repko Decl. ¶¶

24-29.  But these entities have made it abundantly clear that they are willing to purchase

substantially all of the Debtors' assets *only in the context of an expedited 363 Transaction.*  The

Minority Bondholder Objectors' *ipse dixit*, that the 363 Transaction is not necessary and that a

traditional chapter 11 process should proceed, is totally without support.  They set forth no facts -

- nor can they -- to indicate that the Purchaser or any other entity is willing to proceed with either

a transaction, debtor in possession financing, or any other element of the transaction outside of

an expedited 363 asset sale, or that any other purchaser or financing source even exists.

        20.     Faced with a choice between (a) implementing the 363 Transaction within

the parameters negotiated with the Purchaser -- thereby (i) preserving and maximizing the value

of GM's business, (ii) saving hundreds of thousands of automotive-related jobs, and (iii)

facilitating a distribution of the purchase price (including stock with an estimated value of $3.8

to $4.8 billion (*see* Declaration of J. Stephen Worth, dated May 31, 2009, at Ex. F., pg. 14

(Docket No. 425) (the "**Worth Declaration**" or "**Worth Dec.**")) and other assets to bondholders

and other creditors through an eventual chapter 11 plan of liquidation, or (b) liquidating the

Debtors' assets, which would provide no distribution to bondholders (*see, e.g.*, Declaration of

Albert Koch, dated May 31, 2009, at 7 (Docket No. 435) ("**Koch Declaration**" or "**Koch Dec.**")

-- the Debtors' Board of Directors patently exercised sound business judgment in proceeding

with the 363 Transaction.

        21.     In the face of these factual realities and significant legal authority, the

Minority Bondholder Objectors complain that the 363 Transaction should have been

implemented in the context of a plan of reorganization.  *See, e.g.,* F&D Obj. ¶18.  But this

contention ignores the law and facts.  As a matter of law, a 363 Transaction *is* permissible

(Debtors' Mem. at 3-4; *Chrysler*, 405 B.R. at 94), and the Minority Bondholder Objectors

neither controvert the Debtors' authorities nor cite any contrary rule of law.  As a matter of fact,

the record demonstrates that the Purchaser – the only potential purchaser -- will walk away if the

sale is not pursued in the context of an expedited 363 sale proceeding and approved by July 10,

2009.  As discussed in detail in the Henderson Affidavit (Henderson Aff. ¶¶ 82-96) and the

Supplemental Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2,

dated June 25, 2009 (the "**Supplemental Henderson Affidavit**" or "**Supp. Henderson Aff.**")

(Supp. Henderson Aff. ¶¶ 5-11), with each passing day, the economic viability of GM's suppliers

and dealers becomes increasingly uncertain; indeed, many have already commenced bankruptcy

cases, and many more will likely do the same in the near future unless the 363 Transaction is

promptly consummated and New GM begins operations.  As such, notwithstanding the Minority

Bondholder Objectors' conclusory assertions to the contrary, the Debtors simply do not have the

luxury of waiting around for a *nonexistent* white knight to both finance a chapter 11 case and

await the outcome of a prolonged chapter 11 case.  The Minority Bondholder Objectors certainly

identify no such financier or purchaser.

22.    The 363 Transaction Is a Sale of Assets, Not a *Sub Rosa* Plan of

Reorganization.  While it is true that obstacles exist in obtaining Bankruptcy Court approval of a

transaction that would amount to a *sub rosa* plan of reorganization -- i.e., a transaction that

effectively dictates a distribution scheme and other terms only found in a plan of reorganization -

- it is equally true that if an asset sale transaction contemplated by a debtor "has a proper

business justification which has potential to lead toward confirmation of a plan and is not to

evade the plan confirmation process, the transaction may be authorized."  *Chrysler*, 405 B.R. at

96 (citations omitted).  In particular, a "debtor may sell substantially all of its assets as a going

concern and later submit a plan of liquidation providing for the distribution of proceeds of the sale." *Id.*  That is precisely the situation here:  The 363 Transaction is a value-preserving and value-maximizing transaction; the Debtors are receiving fair value for the assets being sold; and the sale in no way effects any distribution of the *Debtors'* property to creditors, nor does it in any way impinge upon any chapter 11 plan that necessarily will follow.

23.    Specifically, as set forth in the Motion, the 363 Transaction, as contemplated by the MPA, meets all the traditional elements of a sale of assets under section 363(b), including arm's-length negotiations between the buyer and seller for the assets that the Purchaser is willing to acquire and the Debtors are willing to sell (as well as liabilities and obligations that the Purchaser is willing to assume) so that the Purchaser could effectively continue GM's business as a going concern.  *See, e.g.*, Debtors' Mem. at 20.  In exchange, the Debtors received consideration consisting of (i) cancellation of billions of dollars of secured debt, (ii) assumption by New GM of a portion of the Debtors' businesses' obligations and liabilities that must be satisfied to preserve the ongoing value of the business, and (iii) no less than 10% of the stock of the Purchaser (and warrants, as well) which the Debtors' financial expert values between $3.8 and $4.8 billion.  *See* Worth Decl. at Ex. F, pg. 14.  As the unrebutted evidence of the Debtors' valuation and liquidation experts make clear, that consideration is unquestionably the highest and best available, and the Debtors' receipt of such consideration should allow for a distribution to the Debtors' unsecured creditors, including the Minority Bondholder Objectors, in the context of a chapter 11 plan of liquidation.  It is easily understood when considering the liquidation alternative why the ad hoc bondholder committee that appeared at the June 1, 2009 hearing strenuously supports the Motion.

11

24.     The Minority Bondholder Objectors erroneously contend that the 363

Transaction constitutes an impermissible *sub rosa* plan because the "*distributions to

constituencies* that would be *approved* in the section 363 sale would either not be part of any

later plan, or would be *predetermined* such that they could not be distributed in a later plan

process." F&D Obj. at 12 (emphasis added).  The Minority Bondholder Objectors further assert

that "the Debtors specifically seek to obtain the benefits of the section 1129 confirmation

process, through an accelerated section 363 transaction, while flatly ignoring the requirements

and creditor protection of section 1129 of the Bankruptcy Code."  Parker Obj. at 20.  They point

to no provision of the MPA that would support their tortured interpretation of the 363

Transaction as dictating subsequent distributions of the Debtors' assets.  It is clear on the face of

the 363 Transaction documents that there will be *no distribution or allocation of estate assets or

sale proceeds to any creditors* under the 363 Transaction.  The sale proceeds and remaining

assets will be allocated and distributed only at a future date pursuant to a chapter 11 plan of

liquidation.[4]

25.     Specifically, the Minority Bondholder Objectors' characterization that the

ownership interests in New GM that the Purchaser has assigned to certain of the Debtors'

creditors upon consummation of the 363 Transaction reflect a distribution or allocation of estate

---

[4] Accordingly, the Minority Bondholder Objectors' reliance on *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1993) for the proposition that the 363 Transaction is an attempt to dictate the terms of reorganization because the 363 Transaction provides for the "distributions in respect of both the UAW claims and the general unsecured claims" (F&D Obj. at 9-10) is inapposite.  *See also* Parker Obj. at 16.  There is no distribution of estate assets in connection with the 363 Transaction.  Equally unavailing is Parker's reliance on *In re Westpoint Stevens Inc.*, 333 B.R. 30 (S.D.N.Y. 2005), for the proposition that the Debtors "cannot use Section 363 to force the bondholders and other unsecured non-trade creditors to take a distribution in satisfaction of their claims that is disproportionately less then . . . claims that are of equal rank . . ." Parker Obj. at 20.  As Judge Gonzalez recognized, the *Westpoint Stevens* case involved a situation where "the terms of the sale order allocated the sales proceeds between the first and second lien lenders, and directed that the distribution fully satisfied the underlying claims by terminating the lenders' security interest in those claims, thereby usurping the role of the confirmation process." *Chrysler*, 405 B.R. at 98.  That simply is not the case here – and, contrary to Parker's contention, there certainly is no distribution in connection with the 363 Transaction that "impairs the rights of a class of unsecured creditors in favor of another class of unsecured creditors of equal rank." Parker Obj. at 18.

assets in violation of the absolute priority rule is simply false.  The Purchaser -- *not* the Debtors -- has determined New GM's ownership composition and capital structure *outside of the bankruptcy context*.  The Minority Bondholder Objectors concede as much.  *See, e.g.,* F&D Obj. at 7 ("The *Government* will thereafter allocate the ownership of New GM . . . .") (emphasis added); Parker Obj. at 15 ("The Debtors did not play any role in negotiating the capital structure of the Purchaser and did not decide what any of its stakeholders would receive as part of the transaction.").  As part of that decision, New GM will assign ownership interests to certain of the Debtors' creditors in the belief that such transfer is necessary to conduct the acquired business.  These obligations will be satisfied through allocation of New GM equity or assumption, including the UAW collective bargaining obligations and workers' compensation claims that must be satisfied to obtain beneficial self-insured status.  In sum, the assignment of ownership interests is neither a distribution of estate assets nor an allocation of proceeds from the sale of the Debtors' assets.  As Judge Gonzalez made clear, the "allocation of ownership interests in the new enterprise is irrelevant to the estates' economic interests."  *Chrysler*, 405 B.R. at 99.

26.    For example, the fact that the Purchaser has decided to allocate 17.5% of New GM's equity to the VEBA as consideration for entering into a new collective bargaining agreement with the UAW, in no way reflects any distribution or allocation of assets of the Debtors, let alone discrimination by the Debtors on account of prepetition claims.  Rather, it is the product of a separately-negotiated agreement between New GM and the UAW.  The consideration provided by New GM "in that exchange is not value that would otherwise inure to the benefit of the Debtors' estates."  *Id.* at 100.  Likewise, the value that the Debtors will receive if the 363 Transaction is approved (i.e., 10% of equity plus warrants), is the product of arm's-length negotiations between the Debtors and the Purchaser.  Ultimately, the confirmation of a

plan of liquidation will provide for the manner in which the distribution of the Debtors' assets, in

accordance with the priority scheme of the Bankruptcy Code.[5]

        27.    <u>Parker's Challenge to the Appropriateness of the U.S. Treasury Expending</u>

<u>TARP Funds Lacks Any Legal Basis</u>.  In late 2008, Congress promulgated the Emergency

Economic Stabilization Act of 2008 ("**EESA**"), Pub. L. No. 110-343, 122 Stat. 3765 (Oct. 3,

2008) (codified at 12 U.S.C. §§ 5201, *et seq*.), which established the Troubled Asset Relief

Program ("**TARP**").  "TARP authorizes the Secretary of the Treasury to purchase troubled assets

to restore confidence in the economy and stimulate the flow of credit."  *Chrysler,* 405 B.R. at 82.

As set forth in the Henderson Affidavit, beginning in December 2008, pursuant to a Loan and

Security Agreement, dated December 31, 2009, GM borrowed approximately $13.4 billion under

the TARP program to finance its operations.  Thereafter, GM borrowed an additional $6 billion.

        28.    Parker further objects to the Motion on the ground that the "TARP funds

are not available to fund the Debtors' reorganization" because Congress limited the scope of

EESA to permit the Secretary to purchase troubled assets only from "financial institution[s]."

Parker Obj. at 22, 24 (citing 12 U.S.C. § 5211(a)(1)).  As a threshold matter, Parker lacks

standing to raise the TARP issue, as he has suffered no injury as a result of the alleged violation.

To the contrary, Parker will benefit directly from the alleged violation by likely receiving a

distribution to which he would otherwise not be entitled.

        29.    Specifically, the issue of standing "involves both constitutional limitations

on federal-court jurisdiction and prudential limitations on its exercise."  *Bennett v. Spear*, 520

U.S. 154, 162 (1997).  There are three elements to constitutional standing:  (1) the plaintiff must

have suffered an "injury in fact," which is actual or imminent, and that is a concrete and

---

[5] For these reasons, the similar Objection set forth by Narumanchi equally fails.

particularized invasion of a legally protected right; (2) there must be a causal connection between

the injury and the conduct complained of; and (3) it must be likely, not merely speculative, that

the injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992).  These elements must be shown to satisfy the "case or controversy"

requirement of Article III.  *See Chrysler,* 405 B.R. at 82.  In addition, there are judicially-

proscribed prudential limitations to standing, one of which is "the plaintiff's grievance must

arguably fall within the zone of interests protected or regulated by the statutory provision or

constitutional guarantee invoked in the suit." *Bennett,* 520 U.S. at 162 (internal citations

omitted).

30.    Here, Parker lacks constitutional standing.  Because "all unsecured claims

are receiving no less than they would receive under a liquidation," the Minority Bondholder

Objectors have no injury in fact.  *Chrysler*, 405 B.R. at 83.  Moreover, even if Parker could

demonstrate an injury in fact, the injury is not "causally connected" to the U.S. Government's

use of TARP funds.  Specifically, "[i]f a non-governmental entity were providing the funding in

this case, [Parker] would be alleging the same injury . . . .  In this light, it is not the actions of the

lender that [Parker is] challenging but rather the transaction itself.  Specifically, [Parker's]

alleged injury is not fairly traceable to the U.S. Treasury's actions because [Parker] would suffer

the same injury regardless of the identity of the lender. " *Id.*

31.    Parker's Miscellaneous Objections Equally Lack Merit.  Parker asserts

additional objections to the Motion, all of which should be summarily rejected.

32.    First, Parker contends that "[w]hile the Debtors claim that liquidation

would be disastrous for GM's stakeholders . . . they offer no evidence that would support this

claim."  Parker Obj. at 13.  Not so.  Parker completely ignores the liquidation analysis attached

to the Koch Declaration, which sets forth in detail the recoveries to be expected by each class of

creditor under a hypothetical liquidation scenario of the Debtors' assets.

        33.    Second, Parker claims that the Debtors "do not (and apparently cannot)

state the expected value of the Purchaser after the completion of the proposed 363 'sale', the

amount of debt the Purchaser can safely support, the expected value of the Purchaser's common

stock being distributed under the 'sale' transaction . . ." Parker Obj. at 15. This argument is

misguided for several reasons. First, issues such as the amount of debt that the Purchaser can

safely support are wholly irrelevant. More importantly, Parker's claim that the Debtors do not

state the expected value of the Purchaser's common stock to be paid to the Debtors under the 363

Transaction simply ignores the Worth Declaration and the fairness opinion and presentation to

the GM Board of Directors annexed thereto as Exhibits A and F, respectively.

        34.    Third, Parker purports to undertake his own liquidation analysis of the

Debtors' assets and liabilities and proclaims that, in a liquidation, "unsecured creditors could

reasonably expect to receive 25 cents on the dollar while secured creditors are paid in full."

Parker Obj. at 7. Putting aside the absence of any showing that he has any expertise in this area,

his own analysis actually supports the Debtors. Specifically, central to his analysis, Parker

repeatedly contends that the Debtors have approximately $30 billion of value in net operating

losses that are available as a tax loss carry forward -- but he acknowledges that this loss carry

forward only has value "to an acquiring corporation" that obtains at least 50% of the Debtors.

*Id.* at 6. In the hands of the Debtors -- including in a liquidation -- it has *no* value to creditors.

Moreover, Parker cannot identify any entity that has come forward to be that "acquiring

corporation," even with the supposedly valuable tax loss as the prize. No such individual or

entity exists.

35.     Finally, in his amended Objection (Docket No. 2193), Parker contends that "[u]nder the limitations on liens provisions of the senior bondholders' bonds, GM could not grant the Government a lien on virtually everything it owned without concurrently granting to its bondholders (like Parker) an identical lien on the same property securing the bond debt equally and ratably together with the debt of the Government . . . ."  Parker Obj. at 9.  Parker's contention is flatly wrong.

36.     There is no such sweeping restriction on liens in the indentures governing the bonds.  Rather, the only restriction on liens is contained in Section 4.06 of such indentures. Section 4.06 provides only that

> [GM] will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of [GM] or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary . . . without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities . . . shall be secured equally and ratably with such debt. . . .

Indentures Section 4.06.

37.     The debt under the U.S. Treasury Loan Agreement is *not* secured by liens on any such assets.  Of course, these assets became subject to the postpetition liens of the lenders under the debtor in possession financing facility.

38.     Based on the foregoing, the Bondholder Objections, including those filed by the Minority Bondholder Objectors, should be overruled in their entirety.

## Dealer-Related Objections

39.     <u>GM Must Restructure Its Uncompetitive, Legacy Dealer Network</u>. Through the 363 Transaction and related efforts, GM is in the process of restructuring all facets of its business.  Central to these efforts are the changes currently underway with respect to GM's

uncompetitive, legacy dealer network, the cost of which is simply staggering:  Because of

insufficient throughput (or sales per dealership) and only marginal network-wide profitability,

the Company spends more than $2 billion annually (for, among other things, wholesale floor

plan support, standards for excellence programs, new vehicle inspection payments, free fuel fills,

and other incentives paid directly to dealers).  Although the proposed network reductions will not

immediately save these costs in full, it will allow New GM to begin significant systematic cost

reduction, as the retained dealers become stronger due to increased market opportunity and, thus,

require decreased levels of support over time.[6]

        40.    Nevertheless, GM has addressed transition issues in a manner that is much

more dealer-friendly than simply rejecting dealership agreements.  That is, *every* GM dealer,

whether it is being retained or not, has received an offer of very substantial consideration in the

form of a Wind-Down or Participation Agreement, including:  (i) in the case of non-retained

dealers, a substantial monetary payment and the continuation of GM's indemnity obligations

regarding future product liability; and (ii) in the case of retained dealers, the opportunity to

continue in business pursuant to an agreement that will provide New GM with necessary

flexibility going forward and the commitment of retained dealers to invest appropriately in their

facilities in light of increased market opportunity -- while, importantly, otherwise changing very

little of the contractual arrangements under which these dealers will continue to operate.[7]

---

[6] In specific terms, the dealer restructuring plan will reduce overall GM dealerships from slightly under 6,000 today to about 3,600 to 3,800 by the end of 2010, providing eventual structural cost savings of approximately $415 million per year, including reduced local advertising assistance, channel network alignment payments, sales and service consultant fees, dealer website funding, dealer support system costs, and dealer training programs.

[7] In addition, the Company established an appeal mechanism to reconsider dealer wind-downs, which, to date, has resulted in decisions to retain 64 of such dealers going forward.

41.    <u>Overview of the Dealer-Related Objections</u>.  The thrust of the Dealer-

Related Objections, which were not filed by the dealers themselves but, rather, by governmental

agencies, is that the Wind-Down and Participation Agreements signed by the Debtors' dealers

conflict with, and effect an improper waiver of, such dealers' state franchise law protections.  As

explained below, however, because the Debtors -- as confirmed by Judge Gonzalez's recent

*Chrysler* decision -- would have been well within their rights to simply *reject* their dealership

agreements, there is nothing improper about the far less draconian alternatives presented by the

Wind-Down and Participation Agreements (which, not surprisingly, have been all but

unanimously accepted).  *See* Henderson Supp. Aff. ¶¶ 10-11 (noting that nearly 100 percent of

the dealers offered Wind-Down and Participation Agreements have accepted); *see also* Objection

of the State of Texas, on behalf of the Texas Department of Transportation ("**Texas Obj.**"),

Exhibit B (Participation Agreement) at ¶ 9(f) (providing that the "[d]ealer acknowledges that its

decisions and actions are entirely voluntary and free from any duress").

42.    <u>Outright Rejection of the Company's Dealership Agreements, While Far</u>

<u>More Severe, Would Have Been Entirely Permissible Under Section 365 of the Bankruptcy</u>

<u>Code</u>.  The Supreme Court explained in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984), that

"the authority to reject an executory contract [under section 365] is vital to the basic purpose to a

Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome

obligations that can impede a successful reorganization."  *Id.* at 528.  Thus, as Judge Gonzalez

recently held in *Chrysler*, absent a showing of bad faith or abuse of discretion, the decision to

reject is subject only to the debtor's business judgment -- regardless of whether that decision is

the best (or even a good) one.  *In re Old Carco LLC*, No. 09-50002, 2009 WL 1708813, at *1

(Bankr. S.D.N.Y. June 19, 2009); *see also In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir.

2008) ("That the debtor's interests are paramount in the balance of control is underscored by the business judgment standard employed" under section 365); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered") (citations omitted), *aff'd sub nom. John Forsyth Co. v. G. Licensing, Inc.*, 187 B.R. 111 (S.D.N.Y. 1995); *In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (similar); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121-22 (Bankr. D. Del. 2001) ("[W]hether the debtor is making the best or even a good business decision is not a material issue of fact under the business judgment test") (internal quotation omitted).

43.    In recently approving Chrysler's rejection of hundreds of dealership agreements, Judge Gonzalez confirmed that the traditional business judgment standard -- and *not* some heightened "public interest standard" or "balancing of the equities" test urged by various objectors -- applies to an OEM-debtor's rejection of dealership agreements under section 365. *Old Carco* at *1-6. Judge Gonzalez explained that state franchise laws, by their express terms, do not justify imposition of a higher standard of section 365 review:

> [W]hile the policies designed to protect the public interest may, in part, underlie the Dealer Statutes, those statutes have been enacted by *state legislatures*, not Congress, and by their very terms protect the public interest of their respective states rather than the national public interest. Further, the fundamental interests sought to be protected by these state legislatures are the economic interests of local businesses and customer convenience and costs. Although some Dealer Statutes articulate a public safety concern in such enactments, the public safety issues raised by the closing of dealerships do not create an imminent threat to health or safety.

*Id.* at *3 (citation omitted) (emphasis in original); *see also id.* at *4 n.8 ("[T]he Dealer Statutes have a limited connection to public safety. The vast majority of Dealer Statutes concern solely

commercial issues affecting the dealers and their customers and communities. . . . Thus, the

health and safety of the public are not threatened by rejection") (citation omitted).

44.    Moreover, after concluding that Chrysler's rejection of dealership

agreements constituted a valid exercise of business judgment, Judge Gonzalez found that the

state franchise laws at issue, like those at issue here, frustrated the purposes of (and, thus, were

preempted by) section 365.  *See generally id.* at *11-17; *see also id.* at *16 ("'Where a state law

'unduly impede[s] the operation of federal bankruptcy policy, the state law [will] have to yield'")*

(quoting *In re City of Vallejo*, 403 B.R. 72, 77 (Bankr. E.D. Cal. 2009)).  As Judge Gonzalez

explained:

> Specifically and by no means exclusively, statutory notice periods
> of, *e.g.*, 60 or 90 days before termination clearly frustrate § 365's
> purpose to allow a debtor to reject a contract as soon as the debtor
> has the court's permission (and there is no waiting period under the
> Bankruptcy Rules).  Buy-back requirements also frustrate § 365's
> purpose to free a debtor of obligations once the debtor has rejected
> the contract.  Good cause hearings frustrate § 365's purpose of
> giving a bankruptcy court the authority to determine whether a
> contract may be assumed or rejected.  Strict limitations on grounds
> for nonperformance frustrate § 365's purpose of allowing a debtor
> to exercise its business judgment and reject contracts when the
> debtor determines rejection benefits the estate.    So-called
> "blocking rights," which impose limitations on the power of
> automobile manufacturers to relocate dealers or establish new
> dealerships or modify existing dealerships over a dealer's
> objection, frustrate § 365's purpose of giving a debtor the power to
> decide which contracts it will assume and assign or reject by
> allowing other dealers to restrict that power.

*Id.* at *16; *see also Vallejo*, 403 B.R. at 77 (holding that "Congress enacted section 365 to

provide debtors the authority to reject executory contracts.  This authority preempts state law by

virtue of the Supremacy Clause [and] the Bankruptcy Clause") (internal citation omitted).  Judge

Gonzalez also made clear that 28 U.S.C. § 959(b), on which the Dealer-Related Objections

largely rely, did not alter the Court's "preemption analysis," because that provision "does not de-

limit the precise conditions on contract rejection" -- particularly where, as here, the pertinent

state laws concern "consumer convenience and costs and the protection of local businesses,

rather than a concern over public safety." 2009 WL 1708813, at *14-15.[8]

      45.    <u>Providing Dealers with More than Would Be Realizable from Rejection
Claims Should Obviate the Objections Interposed by State Regulators</u>.  Based on the reasoning

in *Chrysler*, and given that the Debtors, in the exercise of their business judgment, could have

followed the rejection process, the proposed result here, i.e., the approval of agreements that

offer the Company's affected dealers significant consideration that would otherwise not be

available, should be approved and authorized.

      46.    For example, through the Wind-Down Agreements, dealers will receive

financial remuneration, including incentive payments, that will enable them to stay in business

through the end of their current contracts (approximately 17 months) and to continue to sell

existing new vehicle inventory in the ordinary course (rather than in a "fire sale") and provide

service and parts availability to their customers.  In exchange, and instead of simply being put

out of business immediately, these dealers will agree not to order additional inventory or protest

future network modifications, to release certain claims (not including claims related to future

normal course payment for business activities) and to waive termination assistance rights under

their current contracts.  In addition, under the Wind-Down Agreements, the indemnification

provisions of article 17.4 of the dealership agreements will be assumed and assigned to New GM

-- a further obligation that, in a rejection scenario, would fall squarely on the dealers' shoulders.

---

[8] *See also* 2009 WL 1708813, at *15 ("In sum, the Dealer Statutes . . . are concerned with protecting economic or commercial interests and are thus preempted by the Bankruptcy Code notwithstanding 28 U.S.C. § 959(b)) (citing *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1353 (9th Cir. 1994)); *id.* at *16 n.32 (stating that "state law protections cannot be used to negate the Debtors' rejection powers under § 365. . . .  'The requirement that the debtor in possession continue to operate *according to* state law requirements imposed on the debtor in possession (i.e., § 959(b)) does not imply that its powers under the Code are *subject to* the state law protections'") (quoting *In re PSA, Inc.*, 335 B.R. 580, 587 (Bankr. D. Del. 2005) (emphasis in original)).

The Wind-Down Agreements therefore represent classic settlement agreements (routinely approved and enforced) to resolve any issue or dispute that otherwise would arise upon termination and that, while critical to the restructuring of GM's dealer network, are also intended and designed to avoid the harsh consequences of rejection.[9]

47.    The same can be said even more strongly about the Participation Agreements -- through which *retained* dealers are offered a *long-term* alternative to rejection, although on slightly modified (but, nevertheless, relatively common) terms.  In fact, those terms have only improved from the dealers' perspective since originally being offered, as the Debtors have worked closely with the National Automobile Dealers Association ("**NADA**") to further refine the retained dealers' arrangements through a letter amendment to the Participation Agreements.  *See* Texas Obj., Exhibit C.  This amendment provides additional clarity that (i) sales and inventory requirements will not be imposed unilaterally by GM; (ii) brand and model exclusivity requirements only will apply to the retained dealers' showrooms; (iii) retained dealers will continue to have the notice and procedural protections under their current contracts or state law with respect to claimed breaches; (iv) the waiver of protest rights will not apply to

---

[9] *See, e.g.*, *Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943, 945-49 (11 Cir. 2009) (holding that retrospective release by dealer of existing claims against manufacturer for alleged violation of the Alabama Motor Vehicle Franchise Act, in exchange for manufacturer's consent to dealership sale, was enforceable under Alabama law, as it was executed in good faith and for valid consideration).  In fact, a number of States -- including Alaska, Colorado, Louisiana, New York, and Virginia -- expressly carve out claim settlements from the universe of non-waivable provisions.  *See, e.g.*, Alaska Stat. § 45.25.130(b) ("This section does not prohibit a voluntary agreement between a manufacturer and a new motor vehicle dealer . . . to settle legitimate disputes"); Colo. Rev. Stat. § 12-6-120(1)(o) (a manufacturer cannot coerce a dealer's prospective assent to waiver "that would relieve any person of a duty or liability imposed under this article *except in settlement of a bona fide dispute*") (emphasis added); La. Rev. Stat. § 32.1261(1)(a)(iv) (manufacturer cannot coerce dealer to assent to a release or waiver "unless done in connection with a settlement agreement to resolve a matter pending a commission hearing or litigation. . . ." ); N.Y. Veh. & Traf. Law § 463(2)(*l*) (prohibition on coercing dealer to assent to release or waiver "shall not be construed to prevent a franchised motor vehicle dealer from entering into a valid release or settlement agreement with a franchisor"); Va. Code Ann. § 46.2-1572.3 (non-waiver provision "shall not apply to good faith settlement of disputes, *including disputes pertaining to contract negotiations*, in which a waiver is granted in exchange for fair consideration in the form of a benefit conferred upon the dealer. . . .") (emphasis added).

circumstances in which GM seeks to increase the number of dealers in a given market;[10] and (v)

matters outside the Participation Agreements will not be subject to this Court's exclusive

jurisdiction.[11]

48.    Indeed, the rationale behind these provisions (particularly the exclusivity

and "no protest" provisions, which are the primary focus of the Dealer-Related Objections) is

clear -- and entirely consistent with the purposes of the Bankruptcy Code.  First, there can be no

debate that New GM will benefit, both from a sales and brand focus/recognition perspective,

from a dealer network comprised of showrooms of exclusively GM cars and trucks.  Second, the

retained dealers' limited waiver of their protest rights provides New GM with some flexibility to

optimally construct and alter its dealer network in the future in the interests of enhancing the

value of the Purchaser that will benefit the Sellers' creditors.  But the Participation Agreements,

as amended, preserve the retained dealers' right to protest franchise modifications within six

miles and limit any protest right waivers to a period of only two years, provisions which are

neither arbitrary nor unreasonable and have been voluntarily agreed to by the Company's

dealers.

49.    The bottom line is that these restructuring efforts make sense for all

involved.  Retained dealers will, again, enjoy enhanced market opportunities because of the

smaller number of dealers, while the attendant reduction in GM's production and legacy costs

will make GM products more competitive in the retail market.  It is thus reasonable for GM to

---

[10] See, e.g., *DaimlerChrysler Motors Co. v. Lew Williams, Inc.*, 48 Cal. Rptr. 3d 233, 239 (Cal. Ct. App. 2006)
(finding dealer's prospective waiver of protest rights valid and enforceable, as it "was the result of an arm's length
voluntary transaction . . . for valuable consideration").

[11] Annexed hereto as Exhibit "L" is a statement by NADA confirming that it "has reviewed and supports GM's
amendments to the Participation Letter Agreement" and stating its belief that "the revised document addresses the
majority of dealer concerns."  Per NADA chairman John McEleney:  "'I especially commend GM for its flexibility
and its willingness to make substantive clarifications and modifications to address dealer concerns.  We believe GM
has made a very good faith effort, given the unprecedented circumstances facing GM and the industry.'"

require that these dealers invest in exclusive and attractive facilities and temporarily forego

certain protest rights so that a new dealer network can be appropriately configured at the outset.

Indeed, it is an overall benefit to the dealers that GM be able to do so, including because dealer

relocations may be necessary to leave out-of-date facilities behind or to re-establish operations in

auto malls or similarly concentrated areas.  Finally, it is no stretch for GM to require retained

dealers (or, for that matter, winding down dealers) to execute a release in exchange for the

substantial consideration being offered.  After all, if GM could simply reject its dealership

agreements (thus leaving dealers holding their unsecured claims) and then offer new agreements

only to those dealers chosen by GM, then it surely is reasonable for GM to require a release in

these circumstances.

## Successor Liability and Consumer Objections

50.    Various of the Objections relate to tort, asbestos, environmental, and other

products liability claims and assert that the Debtors' assets may not be sold to the Purchaser free

and clear of such claims, including, in particular, shielding the Purchaser from successor

liability.  Notably, in presenting these arguments, the objectors cite no controlling authority

which supports their position and, instead, ask this Court to completely disregard applicable

precedent and Judge Gonzalez's decision in *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y.

2008), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009).  In *Chrysler*,

Judge Gonzalez categorically rejected the precise contentions posited by the Successor Liability

and Consumer Objections.  Indeed, the attorneys for the Creditors' Committee, who served in a

similar capacity in Chrysler's chapter 11 case, conspicuously fail to mention, much less confront,

Judge Gonzalez's decision and the stated principle of this Court to assure consistency in the

decisions and rulings made by Bankruptcy Judges in the Southern District of New York.

51.      Section 363(f) of the Bankruptcy Code provides that a debtor in

possession may sell property

> free and clear of any interest in such property … only if
>
> > (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2)      such entity consents;
> >
> > (3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4)      such interest is in bona fide dispute; or
> >
> > (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

52.      The reference in section 363(f) to the sale being free and clear of "any

interest" has been interpreted to permit the sale of a debtor's assets free and clear of claims,

including successor liability claims.  *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d

Cir. 2003) ("***TWA***"); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186,

189-90 (Bankr. N.D. Ga. 1986) (sale pursuant to section 363(f) barred successor liability for

product defects claim), *aff'd*, 805 F.2d 1515 (11th Cir. 1986); *Rubinstein v. Alaska Pac.*

*Consortium (In re New England Fish Co.),* 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982) (sale

pursuant to section 363(f) was free and clear of successor liability claims for even statutorily

protected rights against employment discrimination and civil rights violations).  The leading

treatise on bankruptcy supports this conclusion:

> Section 363(f) permits the bankruptcy court to authorize a sale free of "any interest" that an entity has in property of the estate.  Yet the Code does not define the concept of "interest," of which the property may be sold free.  Certainly a lien is a type of "interest"

> of which the property may be sold free and clear.  This becomes
> apparent in reviewing section 363(f)(3), which provides for
> particular treatment when "such interest is a lien."  Obviously there
> must be situations in which the interest is something other than a
> lien; otherwise, section 363(f)(3) would not need to deal explicitly
> with the case in which the interest is a lien.

3 *Collier on Bankruptcy* ¶ 363.06[1] (15th rev. ed. 2008).

53.    In *TWA*, the Third Circuit addressed the issue of whether the Bankruptcy

Court properly extinguished the liability of a purchaser of a debtors' business operations as a

successor under section 363(f) as it related to, *inter alia*, employment discrimination claims.  In

affirming the ruling of the Bankruptcy Court, the Third Circuit expressly rejected the arguments

made by the objectors here – that "interests" in property should be narrowly interpreted to mean

in rem interests in property such as liens.  This principle has been consistently followed as a

standard provision in the numerous section 363 sales that have occurred since *TWA* without

objection or judicial attacks, e.g., in the following chapter 11 cases, among others:  *In re Bearing*

*Point, Inc.*, Ch. 11 Case No. 09-10691 (Bankr. S.D.N.Y. 2009); *In re Steve & Barry's Manhattan*

*LLC,* Ch. 11 Case No. 08-12579 (Bankr. S.D.N.Y. 2008); *In re Lenox Sales, Inc.*, Ch. 11 Case

No. 08-14679 (Bankr. S.D.N.Y. 2008); *In re Pilgrim's Pride Corp.*, Ch. 11 Case No. 08-45664

(Bankr. N.D. Tex. 2008); *In re Lehman Brothers Holdings Inc.*, Ch. 11 Case No. 08-13555

(Bankr. S.D.N.Y. 2008); and *In re The Sharper Image Corp.*, Ch. 11 Case No. 08-10322 (Bankr.

D. Del. 2007).

54.    Judge Gonzalez, in *Chrysler,* concurred with the principle expressed in

*TWA*.  The very same assertions that are argued here as to successor liability and the scope of

section 363(f) in the context of tort and other claims were raised in opposition to Chrysler's

section 363 motion.  In overruling those objections, Judge Gonzalez, relying on *TWA*, stated:

> Some of these objectors argue that their claims are not "interests in
> property" such that the purchased assets can be sold free and clear

of them.  However, the leading case on this issue, *In re Trans World Airlines, Inc.,* 322 F.3d 283 (3d Cir 2003) ("***TWA***"), makes clear that such tort claims are interests in property such that they are extinguished by a free and clear sale under section 363(f)(5) and are therefore extinguished by the Sale Transaction.  *See id.* at 289, 293.  The Court follows *TWA* and overrules the objections premised on this argument.  Even so, *in personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction.  *See, e.g., In re White Motor Credit Corp.,* 75 B.R. 944, 949 (Bankr. N.D. Ohio 1987); *In re All Am. Of Ashburn, Inc.,* 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986).  The Court also overrules the objections premised on this argument.

55.     Notably, the fact that so-called "future" tort claims may have been impacted by this ruling in *Chrysler*, did not warrant a different result:

> Additionally, objections in this category touching upon notice and due process issues, particularly with respect to potential future tort claimants, are overruled as to those issues because, as discussed elsewhere in this Opinion, notice of the proposed sale was published in newspapers with very wide circulation.  The Supreme Court has held that publication of notice in such newspapers provides sufficient notice to claimants "whose interests or whereabouts could not with due diligence be ascertain."  *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950).  Accordingly, as demonstrated by the objections themselves, the interests of tort claimants, including potential future tort claimants, have been presented to the Court, and the objections raised by or on behalf of such claimants are overruled.

The objectors have provided no basis to overrule Judge Gonzalez's careful analysis of the issue that must be deemed to have been reviewed and accepted by the United States Court of Appeals for the Second Circuit.  *In re Chrysler, LLC,* No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009).  Accordingly, the Successor Liability and Consumer Objections should be overruled.[12]

---

[12] With respect to objections raised as to environmental liabilities or obligations, a purchaser under section 363 has no obligation to assume environmental liabilities and, as set forth above, can purchase assets free and clear of such

56.    Reliance by any objector on *In re White Motor Credit Corp.,* 75 B.R. 944

(Bankr. N.D. Ohio 1987), to support the proposition that a Bankruptcy Court lacks the authority

to order the sale of a debtor's assets free and clear of tort claims and successor liability is

misplaced.  Although the *White Motor* court did not find that tort claims were interests within the

purview of section 363(f), the court nevertheless held that a "sale conducted through the court's

equitable powers can provide the debtor the same degree of relief effected by a sale in a plan of

reorganization and, therefore, can affect claims arising prior to confirmation." *Id.* at 949.

Accordingly, the court found "the sale was free and clear of all Defendants' claims." *Id.*

57.    Moreover, relying on the Supreme Court's decision in *Perez v. Campbell,*

402 U.S. 637 (1971), the *White Motor* Court indicated that, in the context of asset sales in

bankruptcy, state successor liability statutes, rules, etc. are subject to federal preemption pursuant

to the Supremacy Clause of the United States Constitution, as applicable to the implementation

of the provisions and objectives of the Bankruptcy Code.  As a result, state successor liability

laws must defer to achievement of the objectives and policies of the Bankruptcy Code.

58.    The Objections interposed as to present and future asbestos claims, and the

erroneous assertion that section 524(g) of the Bankruptcy Code is somehow applicable to a sale

under section 363, do not compel a different result.  As Judge Gonzalez again recognized in

*Chrysler*, "section 524(g) is inapplicable to a free and clear sale under section 363(f) and the Sale

Transaction does not contain releases of third parties."  405 B.R. at 112.

59.    Additionally, this Court, in connection with its ruling on the Motion of the

Ad Hoc Committee of Asbestos Personal Injury Claimants for an order directing the United

---

liabilities, including successor liability.  Of course, to the extent the Purchaser becomes the owner and operator of
any purchased property, it will be responsible for environmental claims in respect of such property, and the 363
Transaction in no way seeks to shield the Purchaser from such liability.

States Trustee to appoint a committee of asbestos claimants and an order appointing a future

asbestos claimants representative (the "**Motion to Appoint Asbestos Committee and Future**

**Claims Representative**") (Docket No. 478), clearly noted that section 524(g) was not applicable

to these chapter 11 cases as there is no intent to seek a section 524(g) channeling injunction and

no discharge will be granted in the context of a liquidating plan.  Notably, the Creditors'

Committee opposed the Motion to Appoint Asbestos Committee and Future Claims

Representative on the basis of, among other things, that "section 524(g) is not applicable to these

chapter 11 cases . . . ."  Objection of the Official Committee of Unsecured Creditors to the

Motion of the Ad Hoc Committee of Asbestos Personal Injury Claimants for an Order (I)

Appointing a Legal Representative for Future Asbestos and Personal Injury Claimants and (II)

Directing the United States Trustee to Appoint an Official Committee of Asbestos Personal

Injury Claimants at 3 (Docket No. 2266).

      60.    As the Creditors' Committee appropriately notes in its Objection to the

363 Transaction, section 524(g) relates to discharge of asbestos claims, which plainly is not

being sought or even contemplated by the 363 Transaction.  To state, as the Creditors'

Committee does, that section 363 sales are "impliedly circumscribed by the existence of section

524(g)," lacks any authoritative support.  Indeed, it would require this Court, by implication, to

write statutory language that Congress conspicuously did not include in the Bankruptcy Code.

The argument serves to highlight the futility of the Committee's position.

      61.    Whatever rights present and future asbestos claimants have can be

properly addressed in the Debtors' chapter 11 cases subsequent to the Closing of the 363

Transaction, if approved.  Again, it must be noted that these chapter 11 cases are not asbestos-

driven, as noted by the Court on June 25, 2009, in connection with the Motion to Appoint

Asbestos Committee and Future Claims Representative.  The Debtors' projected liabilities for asbestos claims constitute a minute fraction of the total claims to be administered, and the parochial interests of holders of contested asbestos claims should not be permitted to frustrate or otherwise impede a transaction that all parties recognize will maximize value for all economic stakeholders.

62.    Notwithstanding the foregoing, to alleviate certain concerns that have been raised on behalf of consumers as to future products liability claims, the MPA has been amended to provide that the Purchaser will expressly assume all products liability claims arising from accidents or other discrete incidents arising from the operation of GM vehicles occurring subsequent to the Closing of the 363 Transaction, regardless of when the product was purchased. Additionally, the Purchaser has confirmed and, to the extent necessary, the MPA will be clarified to reflect, that the Purchaser is assuming all liability under Lemon Laws for additional repairs, refunds, partial refunds, or replacement of a defective vehicle, and for regulatory obligations under such laws, but not punitive, exemplary, special, consequential, or multiple damages or penalties, all as shall be more particularly addressed in any order approving the 363 Transaction. In connection with the foregoing, the Purchaser has agreed to continue addressing Lemon Law claims (to the extent they are assumed) using the same or substantially similar procedural mechanisms previously utilized by the Debtors.

63.    In sum, objections asserting that the Purchaser is not entitled to the benefit of a no successor liability provision are without merit.  *Chrysler* is directly on point.  Its *ratio decidendi* should be applied.  Moreover, and despite having no obligation therefor, the Purchaser has voluntarily agreed to assume certain products liability claims.  Such assumptions should significantly alleviate the concern of most objectors.

**Plant Closure Objections**

64.     A result of any sale is that the purchaser may elect to purchase less than all of the assets of the seller.  The 363 Transaction is no different.  The Debtors have received two informal Objections and one formal Objection by governmental units that challenge the decision by the Purchaser to exclude certain plants from the Purchased Assets.  These Objections are summarized on the schedule annexed hereto as Exhibit "D."

65.     These Objections challenge the business judgment of the Debtors in shutting down facilities.  Yet it is the decision of the Purchaser which is at issue, not the Debtors. The incontrovertible evidence clearly supports the Debtors' business judgment in pursuing the 363 Transaction, notwithstanding the exclusion of certain assets from the sale.

66.     The Objection by the County of Wayne, Michigan with respect to the exclusion of the Debtors' Willow Run facility asserts that the 363 Transaction should be reviewed under a heightened scrutiny standard based on the allegation that the Purchaser is an insider.  As is clear in the Henderson Affidavit, the Purchaser is not an insider but rather, the entity designated by an arm's-length lender and negotiator that engaged in good faith negotiations with the Debtors regarding the terms of the 363 Transaction.  Moreover, the Debtors have submitted substantial support that the 363 Transaction, even under a heightened scrutiny standard, inextricably leads to one conclusion -- the 363 Transaction must be approved in the interest of economic stakeholders.

**Retiree/"Splinter" Union Objections**

67.     Objections by "Splinter" Unions and Their Retirees.  Like all other objectors to the 363 Transaction, the "splinter" unions that have filed Objections (the "**Objecting**

Unions")[13] do not dispute that (i) the 363 Transaction is in the Debtors' best interests; (ii) the

363 Transaction represents the best (and, indeed, the only) available alternative to a liquidation

(which, there can be no debate, would offer a far lesser (or even no) recovery for any of the

Debtors' general unsecured creditors, including the retirees represented by the Objecting

Unions); or (iii) that the 363 Transaction will result in an immediately viable and competitive

New GM (saving hundreds of thousands of jobs and the businesses of countless suppliers in the

process).  Rather, the Objecting Unions' challenge is principally limited to the contention that the

treatment of their retirees in the 363 Transaction, as compared to the treatment of the UAW's

retirees, is contrary to the requirements of section 1114 of the Bankruptcy Code and otherwise

unfair and inequitable.

       68.     The Debtors are not unsympathetic to the Objecting Unions' concerns and

do not seek to minimize the impact of the 363 Transaction and these chapter 11 cases upon the

retirees represented by the Objecting Unions (and many others).  But the Objection is meritless

as a matter of law and fact.

       69.     The transaction at issue is a *sale* of assets, not a distribution of proceeds

by or from the assets of the Debtors to *any* creditor or creditor group.  No modification of any

benefit plans of the Objecting Unions or the retirees they represent are being proposed or

effected; and, as a matter of law (including under the Bankruptcy Code), satisfying section 1114

is simply *not* a precondition to an asset disposition under section 363.  Indeed, a section 1114

process in this context would effectively preclude the very expedition that section 363 so clearly

---

[13] The Objecting Unions include the IUE-CWA (the "**IUE**"), the United Steelworkers, and the International Union of Operating Engineers Locals 18S, 101S and 832S.  Numerous similar objections have been submitted by GM retirees represented by "splinter" unions and representatives thereof (the "**Other Retiree Objections**"), as reflected in Exhibit "E."  For ease of reference, the Debtors refer herein solely to the Objecting Unions' Objection, but note that their response is equally applicable to (and, thus, also requires the rejection of) the Other Retiree Objections.

permits, and that is an express condition of the MPA. (*See*, *e.g.*, Debtors Mem. at 7-9 (citing

cases)). Moreover, while the Objecting Unions try to pin the blame for their retirees' supposed

disparate treatment (i.e., vis-à-vis the UAW) on the Debtors, the treatment of the UAW's retirees

is the result of an agreement entered into between New GM and the UAW. That agreement

reflects a business judgment by New GM, which needed the support of the UAW, whereby New

GM will provide consideration to the New UAW VEBA (i.e., preferred and common equity in

New GM) that does not include *any* Debtor assets. Such business decisions by the Purchaser do

not implicate any rights of the Objecting Unions or their retirees, or contravene any obligation of

the Debtors under the Bankruptcy Code. As Judge Gonzalez stated in *Chrysler*: "In negotiating

with those groups essential to its viability, New Chrysler made certain agreements and provided

ownership interests in the new entity, which was neither a diversion of value from the Debtors'

assets nor an allocation of the proceeds from the sale of the Debtors' assets."[14] *In re Chrysler*

*LLC*, 405 B.R. 84, 99 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS

12351 (2d Cir. June 5, 2009).

---

[14] See also *Chrysler*, in which the Court explained:

> the UAW, VEBA, and the Treasury are not receiving distributions on account of
> their prepetition claims. Rather, consideration to these entities is being provided
> under separately-negotiated agreements with New Chrysler. . . . As part of those
> negotiations, New Chrysler and the workers have reached agreement on terms of
> collective bargaining agreements with the UAW. . . . That New Chrysler and
> the UAW have agreed to fund the VEBA with equity and a note is part of a
> bargained-for exchange between New Chrysler and the UAW. . . . *The*
> *consideration provided by New Chrysler in that exchange is not value which*
> *would otherwise inure to the benefit of the Debtors' estates.*

405 B.R. at 99-100 (emphasis added).

70.     The consideration from the Purchaser to the New UAW VEBA further

flows from (i) contractual obligations that are plainly not applicable to the Objecting Unions;[15]

and (ii) negotiations principally between the UAW and the U.S. Treasury (as the Purchaser's

sponsor), which is not a chapter 11 debtor and which is under no obligation to comply with

section 1114.  The U.S. Treasury's objective is to give New GM the best chance for future

success to enable the recovery of its loans and investments as well as enhance the value of the

equity interests in the Purchaser.  In order to accomplish that goal, it is necessary to obtain the

support and to preserve jobs of the UAW and its members (including those who someday will be

retirees), who are critical to ongoing operations.  In contrast, none of those jobs, by the Objecting

Unions' own admission, are held by *any* of their existing members.  The section 1114 rights of

the Objecting Unions' retirees, if any, can and should be addressed in connection with the

administration of the Debtors' chapter 11 cases subsequent to the Closing of the 363 Transaction.

*See Chrysler*, 405 B.R. at 110 ("[T]he Court finds that if the Sale Motion were not approved,

which would likely result in the Debtors' liquidation, there would likely be no value to distribute

[to] any retirees, all of whom would be unsecured creditors").

71.     As for the Objecting Unions' more general claim of "grossly unfair and

inequitable" treatment, none of their benefit plan terms are being modified; and the claims of

their retirees are not being compromised, settled or changed in any way by the 363 Transaction.

Ironically, however, these retirees have an alternative to simply filing a claim in these chapter 11

cases -- an alternative offered by New GM.  Such alternative -- which already has been accepted

by several other unions (including the International Brotherhood of Electrical Workers, the

---

[15] Specifically, by letter agreement dated September 26, 2007 (annexed hereto as Exhibit "M"), GM agreed that "any sale of an operation as an ongoing business would require the buyer to assume the 2007 GM-UAW Collective Bargaining Agreement."  No similar obligation applies to the Objecting Unions.

International Association of Machinists, Carpenters Local 687, Interior Systems Local 1045, and

the International Brotherhood of Painters and Allied Trades of the United States and Canada,

Sign and Display Union Local 591) (*see* Henderson Supp. Aff. ¶ 12) -- includes the provision by

New GM of healthcare benefits commensurate with the benefits that have been and will be

provided to GM's *salaried* retirees.  The Objecting Unions may be unhappy with this offer and

are free to reject it, but such unhappiness simply does not give rise to a cognizable objection to

the 363 Transaction.  One thing is abundantly clear, however -- denying the Motion on these or

any other grounds would force the Debtors' immediate liquidation, resulting in limited recovery

for even the Debtors' secured creditors and likely no recovery by any of the Company's

unsecured creditors, including the retirees whom the Objecting Unions represent.

      72.    <u>UAW-Represented Retiree Objections</u>.  Additional Objections have been

filed by certain UAW-Represented Retirees, as set forth in the schedule annexed hereto as

Exhibit "E."  These UAW-Represented Retirees are dissatisfied with the UAW Retiree

Settlement Agreement.  The UAW Retiree Settlement Agreement is the result of extensive

arm's-length negotiations between the UAW and the Purchaser.  As a party to the collective

bargaining agreement (the "**UAW CBA**") entered into by and between GM and the UAW that

will be assumed by GM (as modified) and assigned to the Purchaser (the "**UAW CBA**

**Assignment**"), GM is requesting approval of the UAW Retiree Settlement Agreement.  This

approval is necessary to effectuate the 363 Transaction.

      73.    The Purchaser has voluntarily negotiated the terms of the UAW Retiree

Settlement Agreement as part of its need for members of the UAW to be the Purchaser's

employees and perform services that will enable it to operate New GM.  The terms of the UAW

Retiree Settlement Agreement were negotiated by the authorized representative of the UAW

members and represents the best terms that could be negotiated.  As an agreement subject to the

UAW CBA, it is necessary that the UAW Retiree Settlement Agreement be approved as part of

the UAW CBA Assignment.

74.    The UAW Retiree Settlement Agreement provides benefits to UAW-

Represented Retirees that are fair and equitable under the circumstances.  The comments and

objections of the UAW-Represented Retirees that the benefits under the UAW Retiree

Settlement Agreement are inadequate are not legally supportable.  As a part of the 363

Transaction, it is necessary that the UAW Retiree Settlement Agreement be approved to enable

continued retiree benefits for UAW-Represented Retirees that would otherwise be substantially

diminished or lost if GM had to be liquidated. *See UAW v. Gen. Motors Corp.*, 2008 WL

2968408, at *24 (E.D. Mich. 2008) (approving settlement because "risk of loss, even if unlikely,

would produce consequences too grave that they are worth avoiding through a settlement")

(citations omitted); *see also UAW v. Chrysler LLC*, 2008 U.S. Dist. LEXIS 92591, at *68 (E.D.

Mich. July 31, 2008) (approving settlement, which reduced certain retiree benefits as a result of

Chrysler's financial difficulties, because the potential loss of all benefits due to "Chrysler's

financial collapse" would be "far more harsh" for all retirees); *IUE-CWA v. Gen. Motors Corp.*,

238 F.R.D. 583, 595 (E.D. Mich. 2006) (similar).  The UAW Retiree Settlement Agreement

represents a fair compromise which enables the business operations to effectively compete in the

marketplace while providing retiree benefits at a level substantially higher than would be the

case if the 363 Transaction were not consummated.  The UAW-Represented Retirees do not have

just cause to object.

**Workers' Compensation Objections**

75.    The Debtors have received Objections from two states (Michigan and

Ohio) regarding the Purchaser's proposed treatment of workers' compensation claims under the

MPA.  The Debtors have been engaged in discussions with representatives from these states and believe that the issues set forth in their Objections have been resolved.

**Tax Objections**

76.    The Debtors have received Objections from taxing authorities in various states.  The Debtors' reply to these Tax Objections are set forth in the schedule annexed hereto as Exhibit "G."

**Lien Creditor Objections**

77.    Several entities identified in Exhibit "H" (the "**Lien Creditor Objectors**") claim to hold liens on the Purchased Assets and have filed Objections asserting that the Sale Order improperly seeks to extinguish or otherwise impair their rights with respect to any valid statutory or possessory liens, such as mechanics', carriers', workers', repairers', shippers', marine cargo, construction, toolers', molders', or similar liens (the "**Statutory Liens**").  The Debtors are not seeking to sell the Purchased Assets free and clear of Statutory Liens under section 363(f) of the Bankruptcy Code

78.    After consulting with the Purchaser, the Debtors have agreed to add a provision to the Sale Order to clarify the issue and resolve the Lien Creditor Objections.  This provision is as follows:

> Notwithstanding anything to the contrary in this Order or the MPA, (a) any Purchased Asset that is subject to any mechanics', carriers', workers', repairers', shippers', marine cargo, construction, toolers', molders', or similar lien or any statutory lien on real and personal property for property taxes not yet due shall continue to be subject to such lien after the Closing Date if and to the extent that such lien (i) is valid, perfected and enforceable as of the Commencement Date (or becomes valid, perfected and enforceable after the Commencement Date as permitted by section 546(b) or 362(b)(18) of the Bankruptcy Code), (ii) could not be avoided by any Debtor under sections 544 to 549, inclusive, of the Bankruptcy Code or otherwise, were the Closing not to occur; and (iii) the Purchased Asset subject to such lien could not be sold free

and clear of such lien under applicable non-bankruptcy law, and
(b) any Liability as of the Closing Date that is secured by a lien
described in clause (a) above (such lien, a "**Continuing Lien**") that
is not otherwise an Assumed Liability shall constitute an Assumed
Liability with respect to which there shall be no recourse to the
Purchaser or any property of the Purchaser other than recourse to
the property subject to such Continuing Lien. The Purchased
Assets are sold free and clear of any reclamation rights, *provided,
however,* that nothing, in this Order or the MPA shall in any way
impair the right of any claimant against the Debtors with respect to
any alleged reclamation right to the extent such reclamation right is
not subject to the prior rights of a holder of a security interest in
the goods or proceeds with respect to which such reclamation right
is alleged, or impair the ability of a claimant to seek adequate
protection against the Debtors with respect to any such alleged
reclamation right. Further, nothing in this Order or the MPA shall
prejudice any rights, defenses, objections or counterclaims that the
Debtors, the Purchaser, the U.S. Treasury, EDC, the Creditors'
Committee or any other party in interest may have with respect to
the validity or priority of such asserted liens or rights, or with
respect to any claim for adequate protection.

79.    The Debtors have reached out to the attorneys for the Lien Creditor

Objectors to propose the foregoing language in an effort to resolve the Lien Creditor Objections.

As of the date hereof, the Lien Creditor Objectors that have responded have indicated that their

respective Objections will be resolved if the foregoing language is included in the Sale Order.  In

any event, the Debtors submit that this language fully addresses the issues raised in the Lien

Creditor Objections.  As a result, the Debtors request that the Court overrule the Lien Creditor

Objections to the extent they are not withdrawn.

**<u>Stockholder Objections</u>**

80.    Much like a vast majority of the Bondholder Objections, the

approximately 27 Objections interposed by GM's equity interest holders largely are not

substantive.

81.    The objecting equity interest holders claim that they are being treated

unfairly compared with other stakeholders.  There is no basis for such argument.  The purpose of

a sale of substantially all of a debtor's assets pursuant to section 363(b) of the Bankruptcy Code is to "transform assets . . . into cash in an effort to maximize value." *In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 980, at *31-32 (Bankr. D. Del. Apr. 2, 2001). The value generated by a sale pursuant to section 363(b) will be distributed in accordance with the absolute priority distribution scheme set forth in section 1129(b)(2)(B)(ii) of the Bankruptcy Code, in which creditors must be paid in full before equity interest holders receive any recovery. *See In re Iridium Operating LLC*, 478 F.3d 452, 463 (2d Cir. 2007) (quoting *N. Pac. R.R. Co. v. Boyd*, 228 U.S. 482, 504 (1913)). Therefore, the inability to receive a recovery on account of their shares absent full payment to the unsecured creditors, including the bondholders, cannot be the basis of a sustainable objection to the 363 Transaction.

## Cure Objections

82.     At the outset of the 363 Transaction process, the Debtors established detailed procedures to address proactively the issues that are bound to arise in connection with the assumption and assignment of over 700,000 executory contracts and unexpired leases of personal and nonresidential real property (the "**Contracts**") in an organization as large and complex as GM. At the center of these efforts is a call center in Warren, Michigan (the "**Call Center**"), which is staffed by purchasing personnel employed by the Debtors, representatives from AlixPartners, in-house counsel, and outside counsel. The Call Center operates and responds to inquiries 24 hours a day.

83.     In addition, the Debtors established for the benefit of Contract counterparties an interactive website (the "**Website**") that provides current information regarding the status of assumption and assignment of Contracts, detailed information on cure amounts, and other pertinent information. The Website is updated as cure disputes, whether in the form of informal inquiries or formal objections, are resolved.

84. The approximately 600 Cure Objections, including reservations of rights filed by Contract counterparties in connection with the 363 Transaction, actually represents a very small percentage of the Contracts being assumed and assigned to the Purchaser. This is a tribute to the efforts and resources expended by the Debtors to ensure a smooth 363 Transaction.

85. The Debtors have continued to address the Cure Objections and are confident that virtually all of these Objections either will be resolved or relegated to simple cure reconciliation issues by the Sale Hearing. Annexed hereto as Exhibit "J" are three schedules which in the aggregate set forth the current status of the Cure Objections.

86. Schedule "J-1" annexed hereto sets forth those Objections that have either been voluntarily withdrawn or that are no longer properly before the Court because the objector has executed a Court-approved Trade Agreement under which the objector has agreed not to object to the 363 Transaction and to resolve any Cure Objection either through arm's-length negotiations or through an alternative dispute resolution process.

87. Schedule "J-2" annexed hereto sets forth those Cure Objections that have been voluntarily limited to issues involving the identification of Contracts designated for assumption, the executory nature of the Contracts, and the Cure Amounts due (the "**Limited Contract Objections**"). The counterparties to these Assumable Executory Contracts have agreed to adjourn the hearing on their Cure Objections until a future date (the "**Limited Contract Objection Hearing Date**") while the parties continue to work toward a consensual resolution of the Limited Contract Objections. Such counterparties have no objection to the consummation of the 363 Transaction. Language has been added to the Sale Order scheduling the Limited Contract Objection Hearing Date, which the Debtors propose be in mid-July 2009, and requiring the Debtors to send a notice of hearing to the affected counterparties.

88.    Schedule "J-3" annexed hereto sets forth those Cure Objections for which the Debtors have not reached agreement with the counterparties to the procedures for resolving the Cure Objections.  The Debtors respectfully submit that none of the Cure Objections on Schedule "J-3" interpose an objection to the 363 Transaction and that the Cure Objections should be adjourned to the Limited Contract Objection Hearing Date along with the Cure Objections set forth on Schedule "J-2," without in any way impeding the Closing of the 363 Transaction.

89.    Many of the Cure Objections simply raise concerns regarding the treatment of claims for amounts that have or will become due after the Commencement Date but prior to the Closing of the 363 Transaction.  For the avoidance of doubt, the Debtors have modified the proposed Sale Order to clarify that the Purchaser will assume, and pay in the ordinary course of business and as they come due, all amounts for postpetition goods delivered and services provided to the Debtors under each Purchased Contract to the extent due and payable and not otherwise paid by the Debtors.

90.    In short, a significant number of Cure Objections already have been resolved, and the remainder do not constitute impediments to approval of the 363 Transaction. The Sale Procedures provide that Contracts may be assumed and assigned notwithstanding ongoing cure disputes with Contract counterparties, with such disputes being resolved post-Closing.  If the Cure Objections cannot be resolved on a business level, the disputes will be resolved either in this Court or pursuant to binding arbitration as agreed to between the Debtors and such Contract counterparty under a Trade Agreement.  Accordingly, to the extent a Cure Objection is styled as an Objection to the Motion, it is improper and should be overruled.

**Miscellaneous Objections**

91.    <u>The Creditors' Committee</u>.  The Creditors' Committee's assertion that the Purchaser must make adequate provision for the payment of all costs and expenses associated

with administering the chapter 11 cases subsequent to the Closing of the 363 Transaction is completely unsupportable.  Notably, the Creditors' Committee cites no applicable legal authority for its novel position, because none exists.  Neither section 363 nor section 506(c) of the Bankruptcy Code requires either a secured creditor or a purchaser to fund such expenses in connection with a sale under section 363 of the Bankruptcy Code.  Moreover, the Creditors' Committee's assertion that a "recovery [was] promised to them under the terms of the Sale" (Creditors' Committee Obj. at 24) is patently untrue.

92.     What is true, however, is that consummation of the 363 Transaction will avoid the draconian consequences to unsecured creditors and other stakeholders that the Creditors' Committee recognizes will ensue if the 363 Transaction is not pursued.  What also is true is that the Purchaser has voluntarily agreed to fund not less than $950,000,000 to the Debtors' estates post-Closing, which currently is believed to be adequate to fund the projected costs and expenses attendant to the confirmation of a liquidating chapter 11 plan for the Debtors.

93.     White Marsh and Memphis Facilities.  Among the assets to be sold in the 363 Transaction are the Debtors' interest in two commercial facilities -- located in White Marsh, Maryland and Memphis, Tennessee -- the acquisition of which was financed by a group of secured lenders (the "**White Marsh/Memphis Lenders**").  In their Objection to the Motion, these lenders do not dispute that the Debtors own and are entitled to sell these facilities (WM/M Obj. ¶¶ 1, 5-6).  Rather, they argue that section 363(f)(3) of the Bankruptcy Code prevents the Debtors from selling the two facilities free and clear of the lenders' first priority liens unless the lenders are paid the face amount of their liens in full, in cash, at closing, regardless of the value

of the facilities that constitute their collateral (*Id.* ¶¶ 12-14).[16]  They also argue that their interest

is not adequately protected.  However, they will have more than adequate protection through a

replacement lien on a portion of the consideration being provided by the Purchaser consisting of

shares in New GM valued at $3.8-4.8 billion (or some 40 to 160 times the value of the interest

the White Marsh/Memphis Lenders assert).  Their argument is unsound and based on a

misreading of section 363(f)(3) – but in any event, it provides no basis to frustrate the 363

Transaction.  The Court can hold a post-sale hearing to determine the value of the objectors' lien

and the assets of the Debtors' estates to which that lien should attach.

94.      The White Marsh/Memphis Lenders argue that the two facilities cannot be

sold "free and clear" of the existing liens unless the lenders receive a replacement lien equal to

the face amount of such liens.  That is not the case.  On its face, section 363(f)(3) refers to "the

aggregate *value* of all liens," 11 U.S.C. § 363(f)(3)(emphasis added), – not the "aggregate

*amount* of all liens."  If Congress had intended the latter, it would have used such term.  It did

not.

95.      Consistent with this reading, this Court has repeatedly held that the

"aggregate value of all liens" contained in section 363(f)(3) does not refer to the *face amount* of

the liens, but rather to the *actual value* of the related collateral.[17]  *See, e.g.*, *In re Beker Indus.*

*Corp.*, 63 B.R. 474, 475-76 (Bankr. S.D.N.Y. 1986) (holding that the Bankruptcy Code "plainly

indicate[s] that the term 'value' [as used in sections 506(a) and 363(f)(3)] means its actual value

---

[16]  Section 363(f)(3) provides that "[t]he trustee may sell property… free and clear of any interest in such property
of an entity other than the estate, only if… such interest is a lien and the price at which such property is to be sold is
greater than *the aggregate value* of all liens on such property" (emphasis added).

[17]  This reading of section 363(f)(3) is consistent with the Supreme Court's holdings that:  (i) the "value" of a
"creditor's interest" under section 506(a) means "the value of the collateral" (*United Sav. Ass'n v. Timbers of
Inwood Forest Assocs.*, 484 U.S. 365, 372 (1988); *see also LNC Invs., Inc. v. First Fidelity Bank*, 247 B.R. 38, 44
(S.D.N.Y. 2000)); and (ii) "the 'proposed disposition or use' of the collateral is of paramount importance to the
valuation question" (*Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997) (internal citations omitted)).

as determined by the Court, as distinguished from the amount of the lien");[18] *In re Bygaph, Inc.,* 56 B.R. 596, 606 (Bankr. S.D.N.Y. 1986) (authorizing sale of property subject to a lien after reviewing the "sharply disputed" value of the collateral); *cf. In re Chrysler LLC*, 405 B.R. at 98 (authorizing section 363 sale because, among other reasons, the *liquidation value* of the collateral was lower than the sale price and "[t]he full *value* of the collateral will be distributed to the [secured lenders]") (emphasis added).

96.    Numerous other courts have followed *Beker*, recognizing that the objectors' proposed "face amount of the lien" interpretation of § 363(f)(3) "ignores the [Bankruptcy] Code's focus on protecting the *value* of collateral" and impermissibly allows an "undersecured creditor to obstinately block an otherwise sensible sale." *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 712 (Bankr. W.D. Tex. 1989); *see also In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990) (holding that section 363(f)(3) requires "that the secured creditor receives only the value of its secured claim in debtor's property, *even though that may be significantly less than the face amount of the claim*") (emphasis added); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319, 320 n.14 (D.P.R. 1991) (the "face amount" approach has been "highly criticized" and is "unduly strict," and citing *Beker* as the "better reasoned view"), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992), *aff'd in part, rev'd in part on other grounds*, 983 F.2d 336 (1st Cir. 1993).[19]

---

[18]    Ironically, the White Marsh/Memphis Lenders rely on *Beker* for their section 363(f)(5) arguments (WM/M Obj. ¶ 17), but utterly ignore *Beker*'s primary holding that section 363(f)(3) "is to be interpreted to mean what it says: the price must be equal to or greater than the aggregate *value* of the liens asserted against it, *not their amount*." 63 B.R. at 476 (emphasis added).

[19]    Although there are cases – which the White Marsh/Memphis Lenders cite – that support the "face amount of the lien" interpretation, the weight of authority, particularly of courts that have analyzed the issue in detail, supports the Debtors' "actual value" interpretation. For example, the court in *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995), undertook an in-depth analysis of the two viewpoints and concluded that the Debtors' interpretation "provides a better reasoned solution to this dilemma." In contrast, the sole case in this district to which the White Marsh/Memphis Lenders cite, *In re General Bearing Corp.*, is not persuasive. 136 B.R. 361 (Bankr. S.D.N.Y.

97.    Moreover, the White Marsh/Memphis Lenders' interpretation of section

363(f)(3) would enable vastly undersecured creditors to hold up asset sales that provide

enormous value to a debtor's estate unless they are paid in full – even on the *unsecured* portion

of their claim.[20]  An interpretation that results in secured creditors insisting on and receiving

such a windfall is illogical and runs counter to the entire framework of the Bankruptcy Code,

which compensates secured creditors for the value of their collateral.  *See*, *e.g.,* 11 U.S.C. §§

506(a)(1), 1129(b)(2)(A) – as well as § 363(f)(3) itself.[21]  In short, the Debtors clearly have met

their burden of proving that section 363(f)(3) permits a "free and clear" sale of the White Marsh

and Memphis facilities.[22]  Moreover, the dispute over the amount of the liens to which the White

Marsh/Memphis Lenders should be entitled as adequate protection should in no way interfere

with the 363 Transaction.  The amount, timing and form of protection can be readily established

in a subsequent valuation proceeding and order, if necessary.  The Debtors are not attempting to

deny the White Marsh/Memphis Lenders the value to which their collateral entitles them.

---

1992).  The parties there did not even raise the issue of section 363(f)(3).  *Id.* at 366.  Thus, the Court there, lacking proper briefing on this issue, did not acknowledge that other courts had interpreted section 363(f)(3) in a contrary manner.  Indeed, the Debtors respectfully note that the *General Bearing* Court inexplicably cited *Beker* and *Oneida* – cases that explicitly *reject* the "face amount" interpretation – as *supporting* such interpretation (*id.*), thus confirming that *General Bearing* should not be followed.

[20] Section 506(a)(1) of the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the *value* of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the *value* of such creditor's interest . . . is less than the amount of such allowed claim" (emphasis added).

[21] *See also In re Broomall Printing Corp.*, 131 B.R. 32, 37 (Bankr. D. Md. 1991) – a case cited by the White Marsh/Memphis Lenders (WM/M Obj. ¶ 23) – holding that "[t]he only collateral values a debtor possesses to pay a secured claim are the proceeds which may be realized from the sale of the collateral.  If a debtor pays to a secured creditor more than the proceeds realized from the sale of the collateral, then of necessity the debtor will have made the payments from sources that otherwise would have been available for other creditors or for the debtor's rehabilitation.  This result would not constitute equitable treatment of creditors…".

[22] Because the Debtors have demonstrated that section 363(f)(3) clearly supports a sale of the two properties free and clear of all existing liens, there is no need to address the lenders' arguments that section 363(f)(5) does not apply, notwithstanding that their claim plainly is one to be satisfied by a money judgment (*see* WM/M Obj. ¶¶ 15-17).

98.    <u>The White Marsh/Memphis Lenders are More than Adequately Protected</u>
<u>Under Sections 361 and 363 of the Bankruptcy Code</u>.  The White Marsh/Memphis Lenders'
further assertions that the replacement lien in sale proceeds is inadequate to provide them
adequate protection should be rejected.  The case law is uniform that the adequate protection to
which secured creditors are entitled when their collateral is sold "free and clear" of liens in a
section 363 sale is a replacement lien on the "proceeds" of the sale.  *See, e.g., In re Collins*, 180
B.R. 447, 452 (Bankr. E.D. Va. 1995); *WPRV-TV,* 143 B.R. at 321 ("The legislative history
makes clear that 'the most common form of adequate protection will be to have the interest
attach to the proceeds of the sale'") (citation omitted); *In re Brileya*, 108 B.R. 444, 446 (Bankr.
D. Vt. 1989) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 345-46 (1977), and S. Rep. No.
95-989, 95th Cong., 2d Sess. 55 (1978)) (adequate protection is achieved by attaching those
interests which are "free and clear" to the proceeds of the sale).  Thus, contrary to the Lenders'
assertions, the Bankruptcy Code and case law do not require that proceeds of the sale must be
*cash*, or that the replacement lien must be a lien on *cash* proceeds – and they also do not require
that the proceeds to which the replacement lien attaches be distributed to the secured creditors
prior to the effective date of a chapter 11 plan.  WM/M Obj. ¶ 25.

99.    First, a secured creditor's right to adequate protection "is limited to the
lesser of the value of the collateral or the amount of the secured claim."  *Bygaph,* 56 B.R. at 606.
*See also In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 90-91 (2d Cir. 2003) (holding
that the value of the replacement lien must be determined under section 506(a)); *In re Winthrop
Old Farm Nurseries, Inc.*, 50 F.3d 72, 74 (1st Cir. 1995) ("[V]aluation for section 361 purposes
necessarily looks to section 506(a) for a determination of the amount of a secured claim.").  And

it is the secured creditor that bears "the burden of proof under § 363(o)(2) to establish the extent

of its interest, *i.e.*, the value of the collateral." *Bygaph,* 56 B.R. at 606.

100.    Second, "adequate protection" entitles a secured creditor to realize the

equivalent of its collateral, "only upon completion of the reorganization." *Timbers*, 484 U.S. at

377. *See also LNC*, 247 B.R. at 45.

101.    Third, contrary to the White Marsh/Memphis Lenders' assertions, courts

have found that security interests in equity (such as stock) indeed can constitute "adequate

protection" in the context of a section 363 sale and there is no proscription of such form of

protection. The Bankruptcy Code "confers upon 'the parties and the courts flexibility'" and

discretion in fashioning the adequate protection relief. *In re 495 Cent. Park Ave. Corp.*, 136

B.R. 626, 631 (Bankr. S.D.N.Y 1992) (citation omitted); *Dairy Mart*, 351 F.3d at 90 (courts can

grant adequate protection in the form of "cash payments, a lien, or ... 'other relief'") (citation

omitted). *See also In re Westpoint Stevens, Inc.* 333 B.R. 30 (S.D.N.Y. 2005) (adequate

protection provided in the form of securities, though prohibiting premature allocation and

distribution of same); *Chrysler*, 405 B.R. at 98 ("The *Westpoint* court, however, recognized that,

pursuant to section 363, a bankruptcy court had authority to authorize a sale of assets in

exchange for stock and the granting of replacement liens.").

102.    The only case cited by the White Marsh/Memphis Lenders on this issue

does not support their assertion that, *per se*, "a security interest in equity does not constitute

adequate protection" for a lienholder. WM/M Obj. ¶ 26. To the contrary, the court in *In re TM

Monroe Manor Assocs.*, 140 B.R. 298 (Bankr. N.D. Ga. 1991), extensively cited to *In re San

Felipe @ Voss, Ltd.*, 115 B.R. 526, 529 (Bankr. S.D. Tex. 1990), and noted that in *San Felipe*,

> the debtor proposed to offer a secured creditor equity securities in
> a third-party purchaser as the indubitable equivalent of the

creditor's claim.   The court confirmed the plan, reasoning that while the use of *equity securities in the reorganized debtor* was not contemplated in the Bankruptcy Code, the use in cramdown of *equity securities in a third-party purchaser* was not prohibited as long as the securities at issue were stable and there was a substantial equity cushion in the offered stock.

*TM Monroe*, 140 B.R. at 300 (emphasis provided by the court).   This is precisely what the Debtors have offered to the White Marsh/Memphis Lenders here.

103.    The Debtors here have met their burden of proving that the proposed adequate protection is sufficient.   Specifically, the Worth Declaration establishes the value of New GM shares that the Debtors are receiving as proceeds at $3.8 billion to $4.8 billion, while the White Marsh/Memphis Lenders' asserted claim is $90 million.   In contrast, the White Marsh/Memphis Lenders have provided *no evidence* that such valuation is inaccurate or inadequate and rely instead on baseless *ipse dixit* assertions that a replacement lien on "equity in a newly-formed non-public entity does not adequately protect" the lenders.   WM/M Obj. ¶ 25.   rs

104.    In sum, the objecting Lenders' interests are more than adequately protected.   The Court should authorize the sale of the properties free and clear of existing liens

105.    The White Marsh/Memphis Lenders' argument that the proposed sale frustrates their right to credit bid their secured claims (WM/M Obj. ¶ 19) is unavailing. Bankruptcy courts have broad discretion to establish bidding procedures.   *See In re Fin. News Network, Inc.*, 980 F.2d 165, 170 (2d Cir. 1992) (finding the bankruptcy bidding process was fair and noting that "[t]here are cases where the bankruptcy court's discretion must be sufficiently broad so that in making its decision it can compass [any] competing considerations as best as it can"); *In re Big Rivers Elec. Corp.*, 213 B.R. 962, 976-77 (Bankr. W.D. Ky. 1997) ("[h]ere the Court had broad discretion with regard to ordering the bidding process … .   The Bankruptcy Court has a *duty* to maximize the value of the estate").   The Court here properly determined that

to maximize value for the Debtors' estates, only bids for all or substantially all of the Debtors'
assets would be qualified.

106.    <u>Toyota</u>.  The limited objection filed by Toyota Motor Corporation
("**Toyota**") is not an objection to the 363 Transaction, but rather an objection to the assumption
and assignment of certain contracts between the Debtors and Toyota without Toyota's consent.
The Debtors are willing to delay the assumption and assignment of any contracts with Toyota
until a later date, and in the absence of a consensual resolution, will ask the Court to determine
the substance of this Objection as it relates to any contracts with Toyota the Debtors are seeking
to assume and assign to the Purchaser.  As such, the Court need not determine the merits of this
Objection prior to approval of the 363 Transaction.

107.    <u>GMAC</u>.  GMAC LLC ('**GMAC**") supports the 363 Transaction, but has
filed a reservation of rights.  On June 1, 2009, the Court entered an Order authorizing the
Debtors to enter into and approving that certain ratification agreement (the "**Ratification
Agreement**") between the Debtors and GMAC.  The Ratification Agreement authorized the
Debtors to continue their prepetition financial and operating agreements and arrangements (the
"**Operating Documents**") with GMAC, pending the assumption and assignment to the
Purchaser of the Operative Documents pursuant to the Motion.  The Ratification Agreement
further provides that the Purchaser is to assume and perform the Debtors' obligations under the
Operative Documents in accordance with the terms thereof.  GMAC consents to and supports the
363 Transaction, but has reserved its rights to object to the 363 Transaction to the extent that

certain undisclosed schedules to the MPA do not comply with the requirements of the

Ratification Agreement.

WHEREFORE the Objections should be overruled and the Debtors' request for

approval of the 363 Transaction be granted, together with such other and further relief as is just.

Dated:  New York, New York
June 29, 2009

/s/ Harvey R. Miller
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

**Bondholder Objections**

**Bondholder Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 545 | Douglas M. Chapman | The Debtors are circumventing the chapter 11 process. | *See* below response (to Docket No. 1969). |
| 1260 | Paul D. Schrader | The 363 Transaction does not provide an equitable result to bondholders in comparison to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1277 | Peter Petra | The 363 Transaction does not provide an equitable result to bondholders in comparison to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1290 | Marcel Cicic | The 363 Transaction does not provide an equitable result to bondholders in comparison to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1755 | Ralph A. Henderson and Jean L. Henderson | Bondholders' rights are senior to the rights of shareholders, and the Bankruptcy Court should decide whether the U.S. Treasury is a creditor or shareholder. | *See* below response (to Docket No. 1969). |
| 1758 | Radha R.M. Narumanchi | The 363 Transaction is a fraud on various creditors, and bondholders were given insufficient time to object thereto. | *See* below response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1759 | Radha R.M. Narumanchi | The Debtors did not provide adequate notice of the 363 Motion to its stakeholders. The 363 Motion should not be decided in an expedited manner. | *See* below response (to Docket No. 1969). |
| 1891 | Francis H. Caterina, et al. | The MPA violates the U.C.C. and unfairly denies objectors the right to a trial by jury. | The 363 Transaction, as contemplated by the MPA, is allowed under the Bankruptcy Code. *See* below response (to Docket No. 1969).<br><br>There is no right to a trial by jury in the context of an asset sale pursuant to section 363 of the Bankruptcy Code. |
| 1893 | Sandra Stevens Goodale | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1897 | Charles and Mary Reckard | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1924 | Lucile E. Cochran | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1931 | Dorothy Tam | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* below response (to Docket No. 1969). |
| 1969 | Unofficial Committee of Family & Dissident GM Bondholders | The 363 Transaction should be pursued in the context of a chapter 11 plan of reorganization.<br><br>The Debtors are not exercising sound business judgment in pursuing the 363 Transaction.<br><br>The 363 Transaction constitutes a *sub rosa* plan that cannot be approved under section 363(b) of the Bankruptcy Code. | In the context of these chapter 11 cases involving the fragile business at issue, there *is* a business justification for the sale of substantially all the Debtors' assets at this early stage.  The 363 Transaction is the *only* viable means of preserving GM's business and maximizing its going concern value.  It cannot be disputed that the only purchaser who has come forward to purchase substantially all of the Debtors' assets is only willing to do so *in the context of an expedited 363 Transaction.*<br><br>Faced with a choice between implementing the 363 Transaction -- and thereby preserving and maximizing the value of GM's business and saving hundreds of thousands of automotive-related jobs -- versus liquidating the Debtors' assets, the Debtors' Board of Directors undoubtedly exercised sound business judgment in proceeding with the 363 Transaction. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| (con't) | (con't) | (con't) | (con't) |
| 1969 | Unofficial Committee of Family & Dissident GM Bondholders | The 363 Transaction should be pursued in the context of a chapter 11 plan of reorganization.<br><br>The Debtors are not exercising sound business judgment in pursuing the 363 Transaction.<br><br>The 363 Transaction constitutes a *sub rosa* plan that cannot be approved under section 363(b) of the Bankruptcy Code. | The 363 Transaction is a value-preserving and value-maximizing transaction that is the product of arm's-length, good-faith negotiations.  The consideration the Debtors are receiving in connection with the 363 Transaction is fair value for the assets being sold.<br><br>The sale in no way effects any distribution of the *Debtors'* property to creditors, nor does it in any way impinge on any plan that necessarily will follow.  Indeed, there is no distribution of estate assets or proceeds from the 363 Transaction (if approved) to any creditors.<br><br>The Purchaser -- *not* the Debtors -- has determined the New GM's ownership composition and capital structure *outside of the bankruptcy context*.  The allocation of ownership interests by Purchaser in New GM is neither a distribution of estate assets nor an allocation of proceeds from the sale of the Debtors' assets. |

09-50026-mg    Doc 2681    Filed 06/29/09    Entered 06/29/09 13:03:51    Main Document
Pg 64 of 169

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1985 | Maurice F. Curran | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders.  The Debtors are circumventing and abusing the chapter 11 process and Due Process Clause. | *See* above response (to Docket No. 1969). |
| 1989 | Angela Urquhart and Glen Urquhart, and Glen Urquhart as Trustee | Joins and adopts the Objection of the Unofficial Committee of Family and Dissident Bondholders. <u>See</u> Docket No. 1969. | *See* above response (to Docket No. 1969). |
| 1993 | Angela Urquhart and Glen Urquhart, and Glen Urquahart as Trustee | The Debtors are circumventing and abusing the chapter 11 process and Due Process Clause by involving the United States government so heavily in the 363 sale.  Debtors' treatment of non-institutional bondholders violates the Due Process Clause. | *See* above response (to Docket No. 1969). |
| 2004 | Nettie McClinton | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2016 | Louis F Schad | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2025 | Lloyd. A. Good, Jr. | Joins and adopts the Objection of the Unofficial Committee of Family and Dissident Bondholders. *See* Docket No. 1969.<br><br>The 363 Transaction is a disguised *sub rosa* plan of reorganization. | *See* above response (to Docket No. 1969). |
| 2104 | John J. Stangel | The 363 Transaction does not provide an equitable result to bondholders. | *See* above response (to Docket No. 1969). |
| 2105 | Irma Delano | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2106 | Fredric A. Godshall | The 363 Transaction does not provide an equitable result to bondholders. | *See* above response (to Docket No. 1969). |
| 2111 | Sherri Barkan | The 363 Transaction does not provide an equitable result to her as a bondholder. | *See* above response (to Docket No. 1969). |
| 2115 | Marlyne A. Wassenaar | The 363 Transaction does not provide an equitable result to her as a bondholder and is in violation of the Bankruptcy Code | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2125 | Linda Lou Ridenour | The 363 Transaction does not provide an equitable result to bondholders. | *See* above response (to Docket No. 1969). |
| 2128 | Kenton Boettcher | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2135 | William R. Kruse | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2137 | Ronald and Sandra Davis | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders.<br><br>The 363 Transaction is an illegal *sub rosa* plan of reorganization.<br><br>The 363 Transaction is not proposed in good faith. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2193 | Oliver Addison Parker | Joins and adopts the Objection of the Unofficial Committee of Family and Dissident Bondholders. *See* Docket No. 1969.<br><br>Under the limitations on liens provisions of the senior bondholders' bonds, GM could not grant the Government a lien on virtually everything it owned without concurrently granting to its bondholders (like Parker) an identical lien on the same property securing the bond debt equally and ratably together with the debt of the Government. | *See* above response (to Docket No. 1969).<br><br>There is no such sweeping restriction on liens in the indentures governing the bonds.<br><br>The assets in which the U.S. Treasury has been granted liens prepetition pursuant to the U.S. Treasury Loan Agreement (and the related security documents) include various assets, including certain equity interests domestic and foreign subsidiaries, intellectual property, real estate, and certain inventory.  But such agreements *specifically exclude* from the property in which the U.S. Treasury has been granted a lien any property that would give rise to bondholder liens. |
| 2194 | Oliver Addison Parker | The 363 Transaction, as contemplated by the MPA, constitutes a *sub rosa* plan that cannot be approved under section 363(b) of the Bankruptcy Code.  In addition, the 363 Transaction does not provide equal payouts to creditors of equal rank<br><br>The financing provided by the U.S. Treasury exceeds the statutory authority and is illegal. | *See* above response (to Docket No. 1969).<br><br>Parker lacks standing to raise the TARP issue, as he has suffered no injury as a result of the alleged violation. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2201 | Charles D. Summers | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2205 | Richard D. Waskow | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2211 | Wayne S. Croft Judith P. Croft Daniel E. Croft Michael Ross Croft Ta Chiao Investments | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2215 | Dennis E. McGinty | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2216 | Raymond Brusseau | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2217 | Alva C. Ehlers | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2219 | Michael H. Weissman | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders, and bondholders were given insufficient time to object thereto. | *See* above response (to Docket No. 1969). |
| 2228 | Charles D. Summers | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2229 | Abdul R. Kiwan Najieh M. Kiwan | The 363 Transaction does not provide an equitable result to bondholders. | *See* above response (to Docket No. 1969). |
| 2231 | Harry Werland | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2233 | Roland E. King | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2238 | Herbert M. Humpidge | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2239 | James and Jane Hauck | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2245 | John E. Green III | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2257 | Eduardo R. Latour | The 363 Transaction does not provide an equitable result to bondholders, and bondholders were given insufficient time to object thereto. | *See* above response (to Docket No. 1969). |
| 2258 | Charles D. Vlieg | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2268 | John H.R. Polt | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2269 | Andrew Destefano | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2297 | Thomas B. Cannon | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2354 | Blaise Morton | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2367 | Wilmington Trust Company | Joins in Limited Objection of The Official Committee of Unsecured Creditors to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to The Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing. *See* Docket No. 2362. | *See* response re: Successor Liability Objections. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2368 | Law Debenture Trust Company of New York | Joins in Limited Objection of The Official Committee of Unsecured Creditors to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) The Sale Pursuant to The Master Sale and Purchase Agreement With Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing.  *See* Docket No. 2362. | *See* response re: Successor Liability Objections. |
| 2375 | Margaret A. Bomba | The 363 Transaction does not provide an equitable result to bondholders. | *See* above response (to Docket No. 1969). |
| 2376 | William O'Connor | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| 2396 | Debra Britton | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2398 | Frank Middleton | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2402 | Wendy Wood | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2492 | John J. Bauer | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2493 | William Green | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2502 | Frank C. Wykoff | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2505 | John Fazio | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2596 | Frederick A. Bracker | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2598 | Robert J. Schmidt | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| 2601 | Matthew H. Quinn | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| Un Docketed | O.B. Hutchinson | The 363 Transaction does not provide an equitable result to bondholders, and bondholders were given insufficient time to object thereto. | *See* above response (to Docket No. 1969). |
| Un Docketed | Frank Schuster | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |
| Un Docketed | Joella Schuster | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| Un Docketed | Kurt J. Schneider & Barbara L. Schneider | The 363 Transaction does not provide an equitable result to bondholders as compared to other GM stakeholders. | *See* above response (to Docket No. 1969). |
| Un Docketed | Richard D. Clark & Alice W. Clark | General objection to 363 Transaction (no grounds provided). | *See* above response (to Docket No. 1969). |

<u>**Exhibit B**</u>

**Dealer-Related Objections**

**Dealer-Related Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 712 | The State of Texas, on behalf of the Texas Department of Transportation, Motor Vehicle Division | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Texas law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) modifying the retained dealers' protest rights with respect to franchise modification and termination; (iii) requiring the acceptance of inventory sufficient to meet increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; (v) requiring the waiver of certain warranty and other claims; and (vi) requiring the waiver of certain protest rights. | Because the Debtors -- as confirmed by Judge Gonzalez's recent decision in *Chrysler*, from which the result here follows *a fortiori* -- would have been well within their rights to simply *reject* their dealership agreements, there is nothing improper about the far less draconian alternatives presented by the Wind-Down and Participation Agreements.<br><br>*See also* Omnibus Reply to Dealer-Related Objections. |
| 1272 | Tranum Buick Inc. | The Debtors should be held accountable under Texas state law and abide by the terms of GM's dealer sales and service agreements, including with respect to Article 15 thereof (requiring GM to purchase personal property from the dealer). | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1880 | Texas Automobile Dealers Association | The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Texas law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) modifying the retained dealers' protest rights with respect to franchise modification and termination; (iii) requiring the acceptance of inventory sufficient to meet increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; and (v) requiring the waiver of certain warranty and other claims. | *See* above response (to Docket No. 712). |
| 1900 | Greater New York Automobile Dealers Association | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Debtors fail to sufficiently compensate winding down dealers for recent expenditures required by GM. | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1947 | State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General | The MPA is a *sub rosa* plan of reorganization.<br><br>The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections, which are not preempted by sections 363 and 365 of the Bankruptcy Code. | *See* response re: Bondholder Objections. See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969.<br><br>*See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1966 | The State of Ohio, Department of Public Safety, Bureau of Motor Vehicles | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Ohio law, including by:  (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) modifying the retained dealers' protest rights with respect to franchise modification and termination; (iii) requiring the acceptance of inventory sufficient to meet increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; and (v) requiring the waiver of certain warranty and other claims.<br><br>The Debtors coerced retained dealers to sign the Participation Agreements in violation of the "good faith" obligation of O.R.C. § 4517.59. | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2043, 2425 | The States of Arkansas, Arizona, California, Connecticut, Colorado, Delaware, Georgia, Hawaii, Idaho, Iowa, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, North Carolina, North Dakota, New Hampshire, New Jersey, New Mexico, Nevada, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Virginia, Vermont, Washington, West Virginia and Wisconsin | Section 363(f)(5) of the Bankruptcy Code does not provide for sales "free and clear" of "claims." <br><br> The Debtors must litigate the issue of whether the Purchaser is their successor. <br><br> Even if section 363(f)(5) of the Bankruptcy Code can be read to provide for sales "free and clear" of all "claims," the proposed Order nevertheless sweeps to broadly (by including defenses and statutory obligations and inchoate rights for future enforcement, such as for post-confirmation injuries). <br><br> The Debtors' request for an order with respect to section 525 of the Bankruptcy Code is unclear and improper. <br><br> Paragraphs 21-24, 28, 33(a), 38 and 44 of the proposed Order are otherwise objectionable. <br><br> The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections, which are not preempted by sections 363 and 365 of the Bankruptcy Code. <br><br> The MPA is ambiguous and it is impossible to determine whether its provisions are objectionable. | *See* response re: Tort, Product Liability, Asbestos, Successor Liability Objections. <br><br><br> The Debtors are reviewing the proposed Order, including in light of these and other objections, and will make any modifications that they ultimately determine to be necessary. <br><br> *See* above response (to Docket No. 712). <br><br><br> No response is required to this general, unspecific reservation of rights. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2076 | The Florida Attorney General | The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Wind-Down and Participation Agreements signed by the Debtors' winding down and retained dealers, respectively, violate various provisions of Florida law, including by: (i) vesting the Court with exclusive jurisdiction over disputes thereunder; (ii) requiring the retained dealers' acceptance of inventory sufficient to meet increased sales expectations; (iii) requiring retained dealers to increase floor plan capability to accommodate increased sales expectations; (iv) requiring the retained dealers to carry exclusively GM cars and trucks; (v) requiring the waiver of certain warranty and other claims; and (vi) requiring the waiver of certain protest rights.<br><br>The Debtors have failed to preserve consumer lemon law rights. | *See* above response (to Docket No. 712).<br><br><br>*See* response re: Tort, Product Liability, Asbestos, Successor Liability Objections. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2165 | Unofficial GM Dealers Committee | The Debtors have not followed their detailed procedures for notifying the holders of executory contracts whether their contracts are to be assumed or rejected with respect to dealer agreements.<br><br>The proposed Order eliminates the rights of non-debtors parties (including dealers) to Assumable Executory Contracts to pursue claims against the Purchaser based upon Assumed Liabilities.<br><br>The proposed Order extends beyond the relief permitted by sections 363 and 365 of the Bankruptcy Code. | The Debtors believe they have followed the procedures set forth in the Motion.<br><br><br><br>The proposed Order is consistent with other sale orders approved in this District and is consistent with the Bankruptcy Code and specifically sections 363 and 365. |
| 2267 | Lee Benson Chevrolet & Pontiac | The Debtors fail to sufficiently compensate winding down dealers. | *See* above response (to Docket No. 712). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2353 | Colorado Motor Vehicle Dealer Board | The Debtors assumption and assignment of modified dealer agreements is outside the scope of section 365 of the Bankruptcy Code and contrary to state franchise law, which is not preempted by the Bankruptcy Code.<br><br>The Debtors have violated 28 U.S.C. § 959(b) by conditioning their assumption and assignment of dealer agreements upon the dealers' waiver of certain state law franchise protections.<br><br>The Participation Agreements signed by the Debtors' retained dealers violate various provisions of Colorado law, including by: (i) vesting the Court (as opposed to the Colorado Motor Vehicle Dealer Board) with exclusive jurisdiction over disputes thereunder; (ii) requiring retained dealers to meet increased sales expectations; and (iii) requiring retained dealers to increase floor plan capability to accommodate increased sales expectations.<br><br>Paragraphs 8, 20 and 28 of the proposed Order are otherwise objectionable. | *See* above response (to Docket No. 712).<br><br>The Debtors are reviewing the proposed Order, including in light of these and other objections, and will make any modifications that they ultimately determine to be necessary. |

## Exhibit C

**Successor Liability and Consumer Objections**

**Successor Liability and Consumer Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1749 | Sophia Bennet | Objects to 363 Transaction on basis that she is owed amounts for loss/damage due to a recall/fire to GM vehicle. | See response to Docket No. 1811. |
| 1811 | Burton Taft, Administrator of the Estate of Brian Taft | Sale free and clear would deprive the objector of the ability to pursue and recover damages from GM for wrongful death.<br><br>The 363 Transaction is contrary to Pennsylvania Law providing for successor liability. | Case law supports the sale of a debtor's assets free and clear of claims, including successor liability claims. *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003).<br><br>In *In re Chrysler*, Judge Gonzalez also found that successor liability claims with respect to tort and product liability are "interests in property" and therefore subject to section 363(f). |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1926 | The States of Connecticut, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota and Vermont | Sale free and clear will divest consumers of legal rights, without regard for state laws concerning successor liability.<br><br>Future claims should not be treated as claims subject to discharge in bankruptcy as doing so is contrary to public policy. | See response to Docket No. 1811.<br><br>MPA has been amended to provide that the Purchaser will expressly assume all products liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, regardless of when the product was purchased. The Debtors are not seeking a discharge as part of this transaction. |
| 1956 | The Schaefer Group | Object on basis that they were unable to determine what property is "Excluded Real Property" pursuant to the MSPA. | On June 12, 2009, the Debtors filed Exhibit F to the Master Sale and Purchase Agreement which includes a schedule of certain Excluded Owned Real Property. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1971 | The Ad Hoc Committee of the Asbestos Personal Injury Claimants | 363 Transaction is a *sub rosa* plan. | See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969.  Section 524(g) is inapplicable to a sale free and clear under section 363(f). |
| | | The Motion seeks to preclude asbestos claimants from asserting claims against New GM; section 524(g) cannot be circumvented. | 363 Transaction is not seeking to discharge asbestos liability claims |
| | | Asbestos related claims are *in personam* claims, which cannot be sold free and clear of successor liability. | See response to Docket No. 1811 |
| | | Debtors have not satisfied the requirements of section 363(f). | |
| 1987 | Gabriel Yzarra | 363 Transaction is a *sub rosa* plan. | See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969.  See response to Docket No. 1811 |
| | | Debtors are shifting healthcare costs to various states. | |
| | | Section 363 does not permit debtors to sell free and clear of claims, only interests. | |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1997 | The Ad Hoc Committee of Consumer Victims of General Motors | 363 Transaction is a *sub rosa* plan<br><br>GM's refusal to assume responsibility for tort claims is in bad faith.<br><br>Tort claimants have *in personam* claims which cannot be transferred free and clear. | See Response to Objection of Unofficial Committee of Family and Dissident Bondholders, Exhibit A, Docket No. 1969.  See response to Docket No. 1811 |
| 2041 (2976)<br><br>2050 (2977)<br><br><br>(amended) | Callan Cambell, Kevin Junso, Edwin Agosto, Kevin Chadwick, Joseph Berlingieri and the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizen | Debtors cannot transfer property free and clear of *in personam* claims or future product liability and tort claims.<br><br>Enjoining successor liability claims against the Purchaser violates applicable law, notice requirements, and due process.<br><br>The Court lacks subject matter jurisdiction over post-closing disputes between products liability claimants and the successor Purchaser. | See response to Docket Nos. 1811 and 1926. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2043 | Arkansas, Arizona, California, Connecticut, Colorado, Delaware, Georgia, Idaho, Iowa, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, North Carolina, North Dakota, New Jersey, New Mexico, Nevada, Ohio, Oklahoma, Pennsylvania, Rhode Island, Utah, Virginia, Vermont, Washington, and West Virginia | Section 363(f)(5) does not provide for sales "free and clear" of "claims," and, as such, the Debtors cannot sell assets free and clear of successor liability.<br><br>If the Parties to the MPA seek a declaration as to whether the purchaser is a successor to the Debtor, they must actually litigate that issue before this Court.<br><br>(Also objects to sale on basis that (i) the provisions of the Sale Order are overly broad and (ii) sections 363 and 365 do not allow dealer laws to be overridden) | See response to Docket No. 1811. |
| 2065 | The States of Illinois, California, and Kansas | Joinder to objection of Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota and Vermont [Docket No. 1926] | See response to Docket No. 1926. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2148 | Mark Buttita | Joins in the Objection of Ad Hoc Committee of the Asbestos Personal Injury Claimants<br><br>Further objects on basis that the 363 Transaction affects rights of present and future asbestos claimants because it exceeds the scope of section 363 and provides for an illegal injunction against future liability. | See response to Docket No. 1971 |
| 2176 2177 | The Products Liability Claimants, the Consumer Organizations, and the Products Liability Claimant Advocates | Section 363(f) does not permit the sale of assets free and clear of a product liability claimant's potential successor liability claims.<br><br>The Court lacks subject matter jurisdiction to enjoin post-closing disputes between product liability claimants and the successor purchaser.<br><br>The purchased assets cannot be sold free and clear of successor liability for future claims. | See response to Docket Nos. 1811 and 1926. |
| 2259 | Michele Bauer | Wants an adequate pool of funds set aside to indemnify personal injury claimants. | See response to Docket No. 1811. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2263 | Mitchell R. Canty | Objects to sale of assets free and clear of successor liability for tort claims without due consideration. | See response to Docket No. 1811. |
| 2362 | Official Committee of Unsecured Creditors | Proposed order purports to cut off all state law successor liability for the Purchaser which is poor business and bad policy judgment, illegal under section 363(f), and, with respect to future claims, is a violation of due process.<br><br>Debtors must make adequate showing that enough assets will remain in the estates after the 363 Transaction to pay all administrative expenses and priority claims against the estate. | See response to Docket Nos. 1811 and 1926. |
| 2416 | Nicholaus J. Dilly | Objects on basis that 363 Transaction does not provide for successor liability, because applicable Illinois law would provide victims with personal injury relief against a 363 purchaser. | See response to Docket No. 1811. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2425 | Hawaii, New Hampshire, South Carolina, South Dakota and Wisconsin [Joinder to Docket No. 2043] | Section 363(f)(5) does not provide for sales "free and clear" of "claims," and, as such, the Debtors cannot sell assets free and clear of successor liability.<br><br>If the Parties to the MPA seek a declaration as to whether the purchaser is a successor to the Debtor, they must actually litigate that issue before this Court. | See response to Docket No. 1811. |
| 2623 | Tennessee [Joinder to Docket No. 2043 and 2425] | Section 363(f)(5) does not provide for sales "free and clear" of "claims," and, as such, the Debtors cannot sell assets free and clear of successor liability.<br><br>If the Parties to the MPA seek a declaration as to whether the purchaser is a successor to the Debtor, they must actually litigate that issue before this Court. | See response to Docket No. 1811. |
| Undocketed | John G. Cronin | Wants an adequate pool of funds set aside to indemnify personal injury claimants. | See response to Docket No. 1811. |

## __Exhibit D__

**Plant Closure Objections**

**Plant Closure Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1041 | City of Ontario, Ohio | The City of Ontario, Ohio does not request any specific relief.  The objection: <br><br>(i) focuses on the high benchmark rankings of the GM Stamping Plant in Ontario, Ohio, <br><br>(ii) asserts that U.S. taxpayers "expect the best facilities will be kept open," <br><br>(iii) expresses concern that presses and dies will be removed from the stamping plant prior to the completion of the bankruptcy, <br><br>(iv) concludes that the removal of equipment will speed up the plant closing, and <br><br>(v) expresses confidence that GM assets will be judged on their merits and that the "restructure plan" will be judged on what is best and most viable to insure the success of GM. | The City of Ontario does not present any objection to the Motion, or entry of the Sale Order. <br><br>The City of Ontario does not have standing to represent the interests of U.S. taxpayers. <br><br>The use of equipment and other estate assets, including the relocation of equipment, is properly within the business judgment of the Debtors. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1698 | Richland County, Ohio | Seeks a modification to the Sale Order that would require the Debtors to continue operating the General Motors Stamping Plant in Ontario, Ohio through December 2010. Raises "an issue of equity," essentially claiming that a history of tax abatements and other concessions or contributions by local county and municipal authorities justify the request for a delay in the closing of the stamping plant. | Richland County's objection does not constitute a proper objection to the Motion, as it relates to issues not before the Court. To the extent Richland County is seeking to compel the Purchaser to purchase the stamping plant, the Purchaser's business judgment is not at issue and there is no precedent in case law or otherwise permitting the Court to mandate the Purchaser to purchase particular assets from the estate. To the extent Richland County is seeking to compel Old GM to continue operating the stamping plant, the request is not related to the Motion, and entry of the Sale Order will not impair any right Richland County may have to seek such relief. In any event, the business judgment standard protects the Debtors' determination as to whether to continue operating an estate asset. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1889 | County of Wayne, Michigan | The County of Wayne, Michigan asserts<br><br>(i) that the U.S. Treasury is an insider (see objection at ¶ 38),<br><br>(ii) that transactions that benefit insiders must withstand heightened scrutiny, and<br><br>(iii) that the failure to include the six speed transmission manufacturing facility at Ypsilanti, Michigan as a Purchased Asset under the Motion is not a reasonable or prudent exercise of business judgment. | The County of Wayne, Michigan does not present a proper objection to the Motion, as its objection relates to issues not before the Court. To the extent Wayne County is seeking to compel the Purchaser to purchase the Ypsilanti plant, the Purchaser's business judgment is not at issue and there is no precedent in case law or otherwise permitting the Court to mandate the Purchaser to purchase particular assets from the estate. To the extent Wayne County is seeking to compel Old GM to continue operating the Ypsilanti plant, the request is not related to the Motion, and entry of the Sale Order will not impair any right objector may have to seek such relief. In any event, the business judgment standard protects the Debtors' determination as to whether to continue operating an estate asset.<br><br>Moreover, heightened scrutiny of the Debtors' business judgment is not warranted because the U.S. Treasury is not an insider. Regardless, the proposed transaction would easily withstand any standard applied. |
| 1899 | Washtenaw County, A Michigan Municipal Corporation | Washtenaw County, a Michigan Municipal Corporation, joins in the objection of Wayne County, Michigan. | See responses to Docket No. 1889 above. |
| 1990 | Charter Township of Ypsilanti, Michigan | Charter Township of Ypsilanti, Michigan, joins in the objection of Wayne County, Michigan. | See responses to Docket No. 1889 above. |

## **Exhibit E**

**Retiree/Splinter Union Objections**

**Retiree/Splinter Union Objections**

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| UAW-Represented Retiree | 1020 | Mr. and Mrs. Bruce Linhart | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | The UAW Retiree Settlement Agreement is the result of extensive arm's-length negotiations between the UAW and the Purchaser.  The Purchaser has voluntarily negotiated the terms of the UAW Retiree Settlement Agreement with the authorized representative of the UAW members and are the best terms that could be negotiated.<br><br>As a part of the 363 Transaction, it is necessary that the UAW Retiree Settlement Agreement be approved to enable continued retiree benefits for UAW-Represented Retirees that would otherwise be substantially diminished or lost if GM had to be liquidated. *See UAW v. Gen. Motors Corp.*, 2008 WL 2968408, at *24 (E.D. Mich. 2008) (approving settlement because "risk of loss, even if unlikely, would produce consequences too grave that they are worth avoiding through a settlement") (citations omitted); *see also UAW v. Chrysler LLC*, 2008 U.S. Dist. LEXIS 92591, at *68 (E.D. Mich. July 31, 2008) (approving settlement, which reduced certain retiree benefits as a result of Chrysler's financial difficulties, because the potential loss of all benefits due to "Chrysler's financial collapse" would be "far more harsh" for all retirees); *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 595 (E.D. Mich. 2006) (similar). |
| Salaried Retiree | 1074 | Stanley D. Smith | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* below response to Docket No. 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Salaried Retiree | 1078 | Leo St. Amour | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* below response to Docket No. 1941. |
| Unspecified Retiree | 1085 | Melvin Hays | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020 and below response to Docket No. 1941. |
| UAW-Represented Retiree | 1254 | Chris Messina | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1256 | Robert Fain | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1257 | John A. Dwyer | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 1293 | Marilyn Powell | General objection. | *See* above response to Docket No. 1020 and below response to Docket No. 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Unspecified Retiree | 1519 | John J. Patros | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020 and below response to Docket No. 1941. |
| Unspecified Retiree | 1546 | Glen Schrader | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020 and below response to Docket No. 1941. |
| UAW-Represented Retiree | 1547 | Stanley Janusz | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 1550 | Clifton R. Arrington | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020 and below response to Docket No. 1941. |
| UAW-Represented Retiree | 1552 | Robert A. McKenzie | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1559 | Edward J. Glanti | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Salaried Retiree | 1560 | Marilyn A. Wassenaar | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably and retirees were given insufficient to time to object thereto. | *See* above response to Docket No. 1020 and below response to Docket No. 1941.<br><br>*See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| UAW-Represented Retiree | 1828 | Edton Hollingsworth | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1890 | Ernestine Jordan | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1894 | Kenneth M. Wood | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1898 | Luis Escalona | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 1901 | Donna M. Neal | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1020 and below response to Docket No. 1941 |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Unspecified Retiree | 1912 | Michael Toth | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1020 and below response to Docket No. 1941 |
| Unspecified Retiree | 1922 | Ron Tanner | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1020 and below response to Docket No. 1941 |
| Splinter Union Retiree | 1941 | IUE-CWA, United Steelworkers and International Union of Operating Engineers Locals 18S, 101S and 832S | The Debtors have violated section 1114 of the Bankruptcy Code by affording retirees covered by the New UAW VEBA certain benefits and protections that allegedly have been denied to the retirees represented by these objecting unions.<br><br>The 363 Transaction otherwise treats the retirees represented by these objecting unions unfairly and inequitably, particularly vis-à-vis the retirees represented by the UAW. | The transaction at issue is a *sale* of assets, not the distribution of proceeds by or from the assets of the Debtors to *any* creditor or creditor group; no modifications of any benefits plans of the Objecting Unions or their retirees are being proposed or effected; and, as a matter of law (including under the Bankruptcy Code), satisfying section 1114 is simply *not* a pre-condition to an asset disposition under section 363.<br><br>Moreover, the treatment of the UAW's retirees is the result of an agreement entered into between New GM (*not* the Debtors) and the UAW. That agreement reflects a business judgment by New GM, whereby New GM will provide consideration to the New UAW VEBA that does not include *any* Debtor assets. Such business decisions by the Purchaser, which is not a chapter 11 debtor and which is under no obligation to comply with section 1114, do not implicate any rights of the objecting unions or their retirees or contravene any obligation of the Debtors. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Salaried Retiree | 1981 | General Motors Retirees Association | The 363 Transaction ignores Bankruptcy Code requirements to specify which retiree benefits will be cut and what protections there will be for what remains. | *See* above responses to Docket Nos. 1020 and 1941. |
| UAW-Represented Retiree | 1986 | Richard H. Meeker | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 1992 | James S. Zischke | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 2011 | Thomas H. Perros | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 2101 | Ted Tatro | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were given insufficient to time to object and no alternatives thereto. | *See* above response to Docket No. 1020.<br><br>*See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| Splinter Union Retiree | 2107 | Albert G. Sipka | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Splinter Union Retiree | 2108 | Josephine Peterson | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Splinter Union Retiree | 2110 | Jennie Novak | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2116 | Ronald L. Stephenson | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2117 | David and Karen Hobson | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2119 | John R. Brantingham | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2120 | Thomas L. Bergman | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2121 | Charles C. McCoy | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Salaried Retiree | 2123 | Lydia D. Neyland | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2124 | Douglass L. Cole | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| UAW-Represented Retiree | 2133 | James Miller | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Salaried Retiree | 2196 | Marcia Hopewell | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| UAW-Represented Retiree | 2197 | Ronald F. Albright | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 2198 | Betty Gordon | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 2199 | Wesley Frazier | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Salaried Retiree | 2200 | Len Reichel | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| UAW-Represented Retiree | 2202 | Edmund R. Hillegas, Jr. | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 2203 | Geo Edwards | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| UAW-Represented Retiree | 2204 | Patrick L. Wilson | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 2206 | Bobbie Jean S. Arrington | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| Unspecified Retiree | 2209 | Dennise A. Beechraft | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| UAW-Represented Retiree | 2218 | Thomas H. Perros | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| UAW-Represented Retiree | 2230 | Gerald S. Sarka | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Salaried Retiree | 2234 | Junius L. Johnson | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Unspecified Retiree | 2235 | Delmer L. Taylor | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| UAW-Represented Retiree | 2236 | Theopolis Williams | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 2237 | Mattio Rankins-Drake | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| Unspecified Retiree | 2241 | Salvatore Sciortino | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| Unspecified Retiree | 2243 | Raymond W. Sargent | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| UAW-Represented Retiree | 2246 | Arnold and Shirley Starks | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were given insufficient time to object thereto. | *See* above response to Docket No. 1020.<br><br>*See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| UAW-Represented Retiree | 2256 | George Chavez | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 2264 | Albert Burdick | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| Unspecified Retiree | 2290 | Arthur Woodke | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| UAW-Represented Retiree | 2348 | Larry J. Hays | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement and that retirees were not afforded the opportunity to vote thereon. | *See* above response to Docket No. 1020. |
| UAW-Represented Retiree | 2349 | Robert S. Gordon | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Unspecified Retiree | 2351 | Darlene E. Jewett | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| UAW-Represented Retiree | 2373 | Kathryn Griffin | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Salaried Retiree | 2377 | Susan Muffley | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2381 | David W. Muffley | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2383 | Russ Detterich | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| UAW-Represented Retiree | 2386 | Carolyn R. Wells | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Unspecified Retiree | 2389 | Charles F. Presser | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Salaried Retiree | 2393 | Dean Woodard | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| Salaried Retiree | 2395 | Rodney Klein | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably and retirees were given insufficient time to object thereto. | *See* above response to Docket No. 1941.<br><br>*See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| Salaried Retiree | 2403 | Patrick J. Straney | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| UAW-Represented Retiree | 2417 | Eileen J. McIntyre | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Salaried Retiree | 2420 | Joan K. Walls | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above response to Docket No. 1941. |
| UAW-Represented Retiree | 2495 | Robert Henderson | Objects to reduction in benefits pursuant to the UAW Retiree Settlement Agreement. | *See* above response to Docket No. 1020. |
| Salaried Retiree | 2599 | Frank Tuckerman | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably | *See* above response to Docket No. 1941. |

| Type of Objector | Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|---|
| Unspecified Retiree | Un-docketed | Michael O. Gifford | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| Unspecified Retiree | Un-docketed | Clarence Davis | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably. | *See* above responses to Docket Nos. 1020 and 1941. |
| Unspecified Retiree | Un-docketed | Merlin Lanaville | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably and retirees were given insufficient time to object thereto. | *See* above responses to Docket Nos. 1020 and 1941.<br><br>*See also* Motion at ¶¶ 8-10, 29, 34-45, 50-51, 54-57 (regarding the sufficiency of notice in light of current exigencies). |
| Unspecified Retiree | Un-Docketed | David Solis | The 363 Transaction and UAW Retiree Settlement Agreement do not treat all retirees equitably | *See* above responses to Docket Nos. 1020 and 1941. |

## Exhibit F

**Workers' Compensation Objections**

**Workers' Compensation Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1851 | The State of Michigan Workers' Compensation Agency Funds Administration | No intention to delay sale.<br><br>The MPA does not create a sufficient commitment on behalf of the Purchaser to assume Debtors' workers' compensation obligations in Michigan because, pursuant to § 6.5 of the MPA, the Debtors could decide to move their workers' compensation obligations (including those arising from the Delphi operations) to the "Retained Liabilities" category.<br><br>Debtors' have failed to adequately define or even discuss the effect of its pending transaction with Delphi. | Debtors believe that an agreement has been reached between the Debtors and objector that would resolve the Objection. |
| 1929 | The Ohio Bureau of Workers' Compensation | Reserves its rights to oppose any sale requiring New GM to qualify for self-insured status for Ohio workers' compensation because Ohio's workers' compensation issues are governed and controlled by Ohio laws.<br><br>Also reserves rights to object to any sale that might not adequately provide for full compliance with Ohio's workers' compensation laws. | See response to Docket No. 1851. |

## Exhibit G

**Tax Objections**

**Tax Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1052 | Texas Comptroller | <u>Taxes at Issue</u>:    sales taxes, franchise taxes, and sales and use taxes.<br><br><u>Tax Periods</u>:    not specified.<br><br>(1) The MPA Section 1.2 currently defines Permitted Encumbrances to include, in part, liens for Taxes, (i) the validity or amount of which is being contested in good faith and (ii) for which appropriate reserves have been established.   Since the Texas Comptroller is unaware what reserves have been established or whether such reserves are "adequate," the Texas Comptroller requests to confirm whether its tax liens will be treated as Permitted Encumbrances under the MPA.<br><br>(2) To the extent not treated as Permitted Encumbrances, other adequate protection shall be provided under sections 363(c) and (e) of the Bankruptcy Code.<br><br>(3) The MPA Section 2.3(a)(v) provides that the Assumed Liabilities include all prepetition Liabilities of Sellers to the extent approved by the Bankruptcy Court for payment by Sellers pursuant to a Final Order.   The Texas Comptroller requests to clarify (i) whether the secured tax claims at issue are assumed by the | (1) The definition of Permitted Encumbrances will be amended to provide that, to the extent that (i) the taxes at issue are not yet due, payable or delinquent or (ii) the validity or amount of such taxes are being contested in good faith by appropriate proceedings, the liens for such taxes will remain intact as Permitted Encumbrances.<br><br>(2) The tax liens will be retained as attached either to the Excluded Assets or to the sales proceeds of the collateral.<br><br>(3) Section 2.3(a)(v) of the MPA will be amended to clarify that the Purchaser will assume personal property Taxes, real estate and/or other ad valorem Taxes, use Taxes, sales Taxes, franchise Taxes, income Taxes, gross receipt Taxes, excise Taxes, Michigan Business Taxes and Michigan Single Business Taxes and any |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | Purchaser under the MPA §2.3(a)(v) and (ii) if not, whether other identified source of payment is provided to ensure the Debtors' ability to pay those taxes in "cash." | other liabilities mentioned in a relevant order. |
| | | (4) Paragraphs 8 and 28 of the proposed Sale Order prohibits any person taking any action against the Purchaser asserting any "setoff" for any obligation of the Debtors as against any obligation due the Purchaser.   Since the Purchaser will acquire all tax refund claims of the Debtors under the MPA, the Sale Order may be interpreted as preventing a tax authority from offsetting any prepetition tax liabilities against any tax refund to be assigned to the Purchaser.   The Texas Comptroller requests that the relief requests under the Motion be denied to the extent that such requests would abrogate tax creditors' setoff rights. | (4) The Sale Order will be revised to provide that a relevant taxing authority's ability to exercise its right to setoff and recoupment are preserved. |
| | | (5) Paragraph 39 of the Sale Order contains a provision that "no law of any state or other jurisdiction … shall apply in any way to the transactions contemplated by the 363 Transaction, the MPA, the Motion and this Order."   This Paragraph may render relevant state tax laws inapplicable with respect to the 363 Transaction.   The Texas Comptroller requests that this Paragraph be revised so as not to repeal or abrogate state tax laws with | (5) The Sale Order will be revised to provide that the Debtors shall comply with their tax obligations under 28 U.S.C. § 960, except to the extent that the Purchaser, pursuant to the MPA, assumes the applicable liabilities. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | respect to the 363 Transaction. | |
| 1833 | Department of the Treasury of the State of Michigan | <u>Taxes at Issue</u>:  Use taxes, Michigan Single Business Taxes and Michigan Business Taxes.<br><br><u>Tax Periods</u>:  2002 to 2009.<br><br>(1) The Michigan Treasury requests written confirmation from the Debtors regarding (i) who will be paying Sellers' taxes (including priority taxes) due now or determined to be due in the future to the Michigan Treasury, (ii) what arrangements are being made to ensure that funds will be available to pay the taxes, and (iii) such payment will be made in cash.<br><br>(2) The Michigan Treasury requests that the party or parties responsible for the above-mentioned taxes shall escrow sufficient money to cover the taxes, interest and penalties as may be determined to be due and unpaid following the completion of the audits (pending or anticipated) until the Debtors produce a receipt that the taxes due are paid or a certificate that taxes are not due.<br><br>(3) The Michigan Treasury requests that the tax creditor's setoff rights be preserved.    *See* "Texas Comptroller—Summary of Objections— (4)" above.<br><br>(4) The Michigan Treasury requests that state | (1) *See* "Texas Comptroller—Response— (3)" above.<br><br><br><br><br><br><br>(2) No escrow is necessary since the Purchaser will assume the Debtors' tax liabilities with respect to those taxes at issue.<br><br><br><br><br><br><br><br>(3) *See* "Texas Comptroller—Response— (4)" above.<br><br><br><br>(4) *See* "Texas Comptroller—Response— (5)" |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | tax laws not be repealed or abrogated with respect to the 363 Transaction.   *See* "Texas Comptroller—Summary of Objections— (5)" above. | above. |
| 1837 | County of Bastrop Texas, et al. | <u>Taxes at Issue</u>:    property taxes.<br><br><u>Tax Periods</u>:    2009.<br><br>(1) The Texas Ad Valorem Tax Authorities request to confirm whether their tax liens will be treated as Permitted Encumbrances under the MPA without regard to the adequacy of the established tax reserves.   *See* "Texas Comptroller—Summary of Objections— (1)" above.<br><br>(2) The Texas Ad Valorem Tax Authorities request to clarify whether the definition of Assumed Liabilities under the Purchaser under the MPA Section 2.3(a)(v) (i) includes those tax liabilities authorized by the Bankruptcy Court to be paid in the Order Authorizing the Debtors to Pay Prepetition Taxes and Assessments, and (ii) is intended to provide for the assumption by the Purchaser of unpaid pre-petition property taxes on assets being conveyed by the sale.<br><br>(3)    The Sale Order should be revised to the extent it refers to the sale as being "free and clear of all liens, claims and encumbrances" | (1) *See* "Texas Comptroller—Response— (1)" above.<br><br><br>(2) *See* "Texas Comptroller—Response— (3)" above.<br><br><br>(3) The Order will be clarified. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | without specifying that property being conveyed will be subject to Permitted Encumbrances. | |
| 1841 | California Franchise Tax Board | Taxes at Issue:   California franchise taxes.<br><br>Tax Periods:   not specified.<br><br>(1) The California Franchise Tax Board (the "FTB") requests to clarify whether the California franchise taxes are Assumed Liabilities.<br><br>(2) If prepetition claims of the FTB are not intended to be assumed by the Purchaser, the approval of the Agreement shall be conditioned on the Debtors demonstrating that any priority claims of the FTB will be paid in full.<br><br>(3) The FTB requests that the setoff and recoupment rights of taxing authorities be preserved.   *See* "Texas Comptroller—Summary of Objections— (4)" above.<br><br>(4) The FTB requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction.   *See* "Texas Comptroller—Summary of Objections— (5)" above. | (1) *See* "Texas Comptroller—Response— (3)" above.<br><br><br><br><br>(2) Not applicable.<br><br><br><br><br><br><br>(3) *See* "Texas Comptroller—Response— (4)" above.<br><br><br><br><br>(4) *See* "Texas Comptroller—Response— (5)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1888 | Arlington ISD, et al. | <u>Taxes at Issue</u>:    ad valorem property taxes.<br><br><u>Tax Period</u>:    2009.<br><br>(1) Arlington ISD, et al., request that either their tax liens be paid at the time of sale or, in the alternative, a separate escrow be created at closing from the proceeds of any sale to cover the estimated 2009 taxes. | (1) *See* "Texas Comptroller—Response— (3)" above. |
| 1914 | Commonwealth of Pennsylvania, Department of Revenue | <u>Taxes at Issue</u>:    corporate (franchise) taxes, sales taxes, and employer withholding taxes.<br><br><u>Tax Period</u>:    not specified.<br><br>(1) The Commonwealth requests to (i) confirm whether its tax liens will be treated as Permitted Encumbrances under the MPA, (ii) confirm the adequacy of the reserves for the Permitted Encumbrances as well as disclose the amounts in said reserves, and (iii) provide adequate protection if its liens not to be retained to its collateral.<br><br>(2) The Commonwealth requests to clarify whether (i) the Commonwealth's tax claims are Assumed Liabilities under the MPA §2.3(a)(v), (ii) whether the Debtors intend to pay the Commonwealth their prepetition taxes or whether Commonwealth have to look to the Purchaser for payment of said taxes, and (iii) either in (i) or (ii), whether certain arrangement | (1) *See* "Texas Comptroller—Response— (1)" above.<br><br><br><br><br><br><br><br>(2) *See* "Texas Comptroller—Response— (3)" above.    If further clarification is necessary, the Order will be supplemented to clarify that, pursuant to Section 2.3(a)(v) of the MPA, all prepetition employer withholding taxes will be assumed by the Purchaser. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | is being made to ensure that funds will be available to pay the Commonwealth's claims in full. | |
| | | (3) The Commonwealth requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above. | (3) *See* "Texas Comptroller—Response— (4)" above. |
| | | (4) The Commonwealth requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | (4) *See* "Texas Comptroller—Response— (5)" above. |
| 1937 | Ohio Department of Taxation | Taxes at Issue:    not specified<br><br>Tax Period:    not specified<br><br>(1) The Ohio Department of Taxation (the "Taxation") requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above. | (1) *See* "Texas Comptroller—Response— (4)" above. |
| | | (2) The Taxation requests that the applicability of state tax laws be preserved with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | (2) *See* "Texas Comptroller—Response— (5)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1939 | County of Santa Clara | <u>Taxes at Issue:</u>    personal property taxes<br><br><u>Tax Period:</u>    not specified.<br><br>(1) The County of Santa Clara (the "**County**") requests that the Court either deny the proposed sale of assets free and clear of liens, claim or encumbrances or, in the alternative, order that sufficient proceeds to be set aside to satisfy the County's tax claims. | (1) *See* "Texas Comptroller—Response— (3)" above. |
| 1944 | Angelina County , et al. | <u>Taxes at Issue:</u>    ad valorem property taxes<br><br><u>Tax Period:</u>    2009.<br><br>(1) The Tax Authorities request to clarify whether the Debtors or the Purchaser will pay current taxes that are not yet due or payable to which the statutory liens are attached.<br><br>(2) The Tax Authorities (i) request that a segregated cash collateral be established for their tax claims from the sale proceeds, (ii) object to the use of the cash collateral unless their claims are paid in full, and (iii) request that the approval of the Order be denied if a segregated cash collateral is not established and other adequate protection cannot be provided.<br><br>(3) The Tax Authorities request to clarify whether the Assumed Liabilities under the | (1) *See* "Texas Comptroller—Response— (3)" above.<br><br>(2) Because statutory liens for property taxes that are not yet due or payable are Permitted Encumbrances, there is no basis for the relief requested.<br><br>(3) *See* "Texas Comptroller—Response— (3)" above. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | MPA (i) includes those tax liabilities to be paid pursuant to the Order Authorizing the Debtors to Pay Prepetition Taxes and Assessments and (ii) is intended to provide for the assumption by the Purchaser of unpaid pre-petition property taxes on assets being conveyed by the sale. | |
| 2000 | Wayne County Treasurer, Oakland County Treasurer and the City of Detroit | <u>Taxes at Issue:</u>    property taxes and income and withholding taxes.<br><br><u>Also at Issue:</u>    sewer and water bills.<br><br><u>Tax Period:</u>    1999, 2003, 2007 and 2008 (in the case of income and withholding taxes, from 1983 to May 2007).<br><br>(1) The Treasurers' request to clarify whether the Treasurers' tax claims are Assumed Liabilities under the MPA.<br><br>(2) The Treasurers' request to clarify that the Treasurers' statutory lien for property taxes that are payable or to be payable are Permitted Encumbrances under the MPA.<br><br>(3) If taxes owed to the Treasurers are neither Assumed Liabilities or Permitted Encumbrances, the Treasurers' request that an adequate protection be provided with respect to their secured claims. | (1) *See* "Texas Comptroller—Response— (3)" and    "Commonwealth of Pennsylvania, Department of Revenue —Response— (2)" above.<br><br>(2) *See* "Texas Comptroller—Response— (1)" above.<br><br>(3) Not applicable. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | (4) The Treasurers' request to clarify whether the outstanding sewer and water bills due and owing on the Purchased Assets are Assumed Liabilities. | (4) Pursuant to Section 2.3(a)(v) of the MPA, the Purchaser assumes sewer and water bills only to extent that such liabilities arise in the ordinary course of business during the Bankruptcy Case through and including the Closing Date. |
| | | (5) The Treasurers' request to clarify whether the outstanding sewer and water bills due and owing on the Purchased Assets are Permitted Encumbrances. | (5) To the extent that (i) the sewer and water bills at issue are not yet due, payable or delinquent or (ii) the validity or amount of such bills are contested in good faith by appropriate proceedings, the liens for such bills will be considered Permitted Encumbrances.  *See* "Texas Comptroller—Response— (1)" above. |
| | | (6) If the sewer and water bills are neither Assumed Liabilities or Permitted Encumbrances, the Treasurers' request that adequate protection be provided with respect to such claims. | (6) The tax liens will be retained as attached either to the Excluded Assets or to the sales proceeds of the collateral with respect to their secured claims. |
| | | (7) The Treasurers' request that state tax laws not be repealed or abrogated with respect to the 363 Transaction.  *See* "Texas Comptroller—Summary of Objections— (5)" above. | (7) *See* "Texas Comptroller—Response— (5)" above. |
| 2044 | NYS Tax Department | Taxes at Issue:    sales, withholding and corporate (franchise) taxes.  Tax Period:    not specified. | |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | (1) The NYS Tax Department requests to clarify whether its prepetition tax claims are Assumed Liabilities under the MPA Section 2.3(a)(v). | (1) *See* "Texas Comptroller—Response— (3)" above. |
| | | (2) If that is not the intent of the parties to the MPA, another source of payment should be identified to ensure payment of claims in cash. | (2) Not applicable. |
| | | (3) The NYS Tax Department requests that the setoff rights of taxing authorities be preserved. *See* "Texas Comptroller—Summary of Objections— (4)" above. | (3) *See* "Texas Comptroller—Response— (4)" above. |
| | | (4) The NYS Tax Department requests that state tax laws not be repealed or abrogated with respect to the 363 Transaction.  *See* "Texas Comptroller—Summary of Objections— (5)" above. | (4) *See* "Texas Comptroller—Response— (5)" above. |
| Un-Docketed | Mississippi State Tax Commission | Taxes at Issue:    income, franchise and sales taxes<br><br>Tax Period:    not specified<br><br>(1) The Mississippi State Tax Commission (the "MSTC") requests that the setoff rights of taxing authorities be preserved.  *See* "Texas Comptroller—Summary of Objections— (4)" above. | (1) *See* "Texas Comptroller—Response— (4)" above. |
| | | (2) The MSTC requests that state tax laws not | (2) *See* "Texas Comptroller—Response— (5)" |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| | | be repealed or abrogated with respect to the 363 Transaction. *See* "Texas Comptroller—Summary of Objections— (5)" above. | above. |

**<u>Exhibit H</u>**


**Lien Creditor Objections**

**Lien Creditor Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1470 | Demaria Building Company | Pursuant to the Michigan Construction Lien Act, construction corporation obtained a secured interest in the real property upon which it performed construction improvements. Therefore, in order to transfer free and clear title to the real property, the Debtors must either fully compensate the construction corporation prior to the asset sale or agree that the liens will pass with the real property against the Purchaser. | The Debtors will be adding language to the proposed Sale Order that they believe addresses the concerns set forth in this objection.  See Omnibus Reply to Creditor Lien Objections. |
| 1695 | Usher Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Order that they believe addresses the concerns set forth in this objection.  See Omnibus Reply to Creditor Lien Objections. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1697 | Proper Tooling, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 1700 | Pinnacle Tool, Incorporated | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1704 | ACEMCO, Incorporated | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 1707 | Grand Die Engravers, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1710 | Plastic Mold Technology, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 1718 | Paramount Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1762 | Wolverine Tool & Engineering Co. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 1767 | Eclipse Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1780 | Dietool Engineering Company, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection. See Reply. |
| 1783 | Standard Tool & Die, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection. See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1787 | STM Mfg., Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 1790 | Advance Tooling Systems, Inc., Dynamic Tooling Systems and Engineered Tooling Systems, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1797 | Competition Engineering, Inc., Datum Industries, LLC, Monroe, LLC, J.R. Automation Technologies, LLC and Dane Systems, LLC | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 1813 | Lansing Tool & Engineering, Inc. | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1816 | Commercial Tool & Die Company | Pursuant to the Michigan Special Tools Lien Act and/or the Michigan Mold Lien Act, special tooling supplier obtained a statutory lien on its delivered special tooling supplies to secure full payment of all sums due by the Debtors. With regard to this lien, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens. Therefore, any order authorizing the asset sale should contain a clause making it clear that the order does not adjudicate any lien rights held by the special tooling supplier. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection. See Reply. |
| 1876 | Cinetic Automation Corp. | Pursuant to the Michigan Ownership Rights in Dies, Molds and Forms Act, tooling supplier obtained a statutory lien on its delivered tooling supplies to secure full payment of all sums due by the Debtors.  With regard to this lien, the Debtors have not satisfied any of the requirement set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens.  Therefore, the Debtors must either fully compensate the tooling supplier prior to the asset sale or agree that the lien will pass with the tooling supplies against the Purchaser. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection. See Reply. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1983 | Active Burgess Mould & Design, Ltd and Automotive Gauge & Fixture, Ltd. | Pursuant to the Mold Builders Lien Acts, mold manufacturers obtained statutory liens on certain molds to secure full payment of all sums due for their fabrication, repair, and modification.  With regard to these liens, the Debtors have not satisfied any of the requirements set forth in 11 U.S.C. § 363(f) for the sale of assets free and clear of liens.  Furthermore, the mold manufacturers' interests in the molds are not adequately protected under 11 U.S.C. § 363(e).  Therefore, the Court should deny the Motion to the extent that it affects the mold manufacturers' secured status. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |
| 2021 | L.K. Machinery, Inc. | Die casting machine manufacturer is in the process of filing and perfecting mechanics liens on certain equipment sold and delivered to the Debtors. The Court should enter an order providing that the manufacturer's liens transfer to the proceeds of the asset sale. | The Debtors will be adding language to the proposed Sale Approval Order that they believe addresses the concerns set forth in this objection.  See Reply. |

## **Exhibit I**

**Stockholder Objections**

**Stockholder Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1067 | Peter Backus | Seeks consideration for loss of shares and contends that GM is in breach of contract for failure to offer such consideration. | See response to Docket No. 1073. |
| 1073 | William H. Chambers | Shareholders are losing value and will receive no vested interest.<br><br>Seeks same treatment as new stakeholders. | Objection cites no better alternative to Sale.  No legal basis exists to elevate priority of equity holders. |
| 1269 | Robert Daniel Howell and Sharlene Howell | Seeks consideration for stock loss. | See response to Docket No. 1073. |
| 1284 | Jonathan Lee Riches | Objection seeks more time to analyze 363 Transaction; claims current timeline is violation of due process. | Additional time not available to preserve going concern value.  No alternative is available even with more time. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1692 | Charles Benninghoff | Argues that government has unlawfully interfered in private enterprise by requiring GM to receive cash infusions rather than filing for bankruptcy.<br><br>Alleges that UAW's equity stake in New GM is an illegal kickback for political contributions and lawyers representing GM have conflicts of interest.<br><br>Argues that government's tactics are unlawful uses of executive and legislative power. | No factual or legal basis for objection. No response necessary. |
| 1760 | Carole R. Maddux | Claims equity is being unfairly transferred from current shareholders to UAW without adequate compensation.<br><br>Argues that priority in preferred and common stock should go to current stockholders. | See response to Docket No. 1073. |
| 1804 | Gerald Haynor | Claims to have obtained a pension-related judgment against GM in the Eastern District of Michigan in March 2009 that will not be honored. | See response to Docket No. 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 1904 | Lewis S. Weingarten | Objects to distribution of common stock. Requests same treatment as bondholders. Alternatively wants preferred stock. | See response to Docket No. 1073. |
| 1910 | John W. Williams | Claims that UAW is receiving kickbacks as a result of providing financial support to the current government. | See response to Docket No. 1692. |
| 1936 | Charlotte Kirk | President Obama has his own agenda with respect to the GM bankruptcy. | See response to Docket No. 1692. |
| 1988 | Robert Mathi | Wants stockholders to receive "portion of New GM." | See response to Docket No. 1073. |
| 2102 | Cecilia Faw | VEBA is receiving a priority position, taking away equity from stockholders. Stockholders and bondholders should take priority. | See response to Docket No. 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2126 | John Lauve | Claims that 363 Transaction it is a scheme for cutting recovery to stakeholders.<br><br>Stockholders were not given an opportunity to vote on new directors or to purchase additional stock.<br><br>Stockholders were consulted with respect to the sale of assets as required by Delaware Law, section 8-271. | See responses to Docket Nos. 1284, 1692, and 1073. |
| 2131 | Robert W. Hartnagel | Seeks to incorporate objections filed in a Michigan class action.<br><br>Says shareholders have lost everything while high level executives have safeguarded their financial well-being. | See responses to Docket Nos. 1692 and 1073. |
| 2146 | Jack M. Wilhelm | Objects to notice period.<br><br>Claims that the government is engaging in self-dealing with respect to the 363 Transaction.<br><br>No stakeholder should receive "special place" in the claims process. | See responses to Docket Nos. 1692 and 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2207 | Tina Briggs | Objects to sale in entirety. | See response to Docket No. 1073. |
| 2208 | Clint Briggs | Objects to sale in entirety. | See response to Docket No. 1073. |
| 2213 | Emil Rufener and Joanne Rufener | Object to "take over" of stocks without receiving consideration. | See response to Docket No. 1073. |
| 2225 | Michael Miglore and Edith A. Miglore | Filing a claim for value of shares. | Not an objection to sale.  No response necessary. |
| 2241 | Salvatore Sciortino, request to file a proof of claim | Objects to sale on basis that he is not receiving consideration for his shares. | See response to Docket No. 1073. |
| 2249 | David J. Astorian | Requests further consideration of his equity position. | See response to Docket No. 1073. |
| 2260 | Warren R. Bolton | Objects to issuance of preferred stock when GM was insolvent.  Preferred stock holders should be exempt from the sale. | See response to Docket No. 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2270 | David Hakim | Does not believe the government should own GM. | Objection cites no better alternative to Sale. |
| 2284 | Peter G. Polmen | Objects to loss of shares and wants consideration from proceeds of the sale. | See response to Docket No. 1073. |
| 2478 | Tristam T. Buckley | Objects to notice period.<br><br>Common stockholders' are being unfairly eliminated.<br><br>GM should engage in a public bidding process.<br><br>The disposition of GM's assets should be reviewed by the Court and other agencies (such as the FBI and CIA) for the purpose of protecting national security.<br><br>The current board members of GM should not be maintained. | See responses to Docket Nos. 1284 and 1073. |
| Undocketed | Margaret Ann Bomba | Distribution process is unfair. | See response to Docket No. 1073. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| Un-Docketed | Ransom Ford, Jr. | Objection states that attorneys are only parties to gain.  Stockholder interests are not represented. | See response to Docket No. 1073. |

**<u>Exhibit J</u>**

**Cure Objections**

**<u>Schedule J-1</u>**

**Exhibit 1**
**Withdrawn Objections**

| Docket # | Obj. Date | Name |
|---|---|---|
| 1244 | 6/15/2009 | ABC Group, Inc. |
| 1434 | 6/15/2009 | Accuride Corp |
| 1344 | 6/15/2009 | ADAC - Strattec |
| 1102 | 6/15/2009 | ADAC Plastics, Inc. |
| 1129 | 6/15/2009 | Advics North America, Inc. |
| 1421 | 6/15/2009 | Affinia Group, Inc. and certain of its affiliates |
| 1415 | 6/15/2009 | Air International (U.S.), Inc. and Air International Thermal (Austrialia) Pty Ltd. |
| 1809 | 6/18/2009 | Airgas, Inc. and its subsidiaries and related entities |
| 1365 | 6/15/2009 | Airtex Products, L.P. |
| 1626 | 6/16/2009 | Ai-Shreveport LLC |
| 1040 | 6/12/2009 | Albar Industires, Inc. |
| 1449 | 6/15/2009 | Android Industries LLC |
| 1446 | 6/15/2009 | Android Industries-Delta Township, LLC |
| 1452 | 6/15/2009 | Android Industries-Shreveport LLC |
| 1339 | 6/15/2009 | APL Co. Pte. Ltd. and American President Lines, Ltd. |
| 1150 | 6/12/2009 | Aquent LLC |
| 813 | 6/12/2009 | Aramark Holdings Corporation |
| 891 | 6/15/2009 | Assurant Inc. dba SSDC Services Corp. |
| 906 | 6/12/2009 | AT&T |
| 2466 | 6/24/2009 | Atlas Oil Company |
| 805 | 6/12/2009 | Auma, S.A. de C.V. |
| 862 | 6/12/2009 | Autoliv ASP, Inc. |
| 918 | 6/2/2009 | Automatic Data Processing , Inc. |
| 778 | 6/12/2009 | Avery Dennison Corporation |
| 1295 | 6/15/2009 | Ballard Materials Products, Inc. |
| 640 | 6/11/2009 | BASF Corporation |
| 1212 | 6/15/2009 | Bay Logistics, Inc. |
| 2038 | 6/19/2009 | BBi Enterprises Group, Inc. |
| 916 | 6/12/2009 | Behr America, Inc. |
| 919 | 6/12/2009 | Behr GmbH & Co. KG |
| 1045 | 6/15/2009 | Benteler Automotive Corporation |
| 1023 | 6/15/2009 | BHM Technologies Holdings, Inc., The Brown Company of Waverly, LLC, The Brown Company of Moberly, LL |
| 912 | 6/12/2009 | Bing Metals Group, Inc. |
| 2415 | 6/24/2009 | Blue Marble Environmental, Inc. |
| 825 | 6/12/2009 | Bocar, S.A. de C.V. |
| 841 | 6/15/2009 | Borgwarner, Inc. |
| 2075 | 6/19/2009 | Buehler Motor GMBH |
| 2566 | 6/24/2009 | CAG Holdings AG, Raufoss Automotive Components Canada and Raufoss Technology AS |
| 2436 | 6/24/2009 | CalsonicKansei North America, Inc. |
| 1077 | 6/15/2009 | Capgemini America, Inc. |
| 827 | 6/12/2009 | Cassens Transport Company |
| 1054 | 6/15/2009 | Cellco Partnership dba Verizon Wireless |
| 1360 | 6/15/2009 | Central Conveyor Inc. |
| 1363 | 6/15/2009 | Champion Laboratories, Inc. |
| 1211 | 6/15/2009 | Chemico Mays, LLC |
| 1250 | 6/15/2009 | Chemico Mays, LLC |
| 1208 | 6/15/2009 | Chemico Systems, Inc. |
| 1640 | 6/16/2009 | Chrysler Group LLC, on behalf of itself and as agent for Old Carco LLC and Chrysler Motors LLC |
| 1908 | 6/19/2009 | Chrysler Group LLC, on behalf of itself and as agent for Old Carco LLC and Chrysler Motors LLC |
| 1372 | 6/15/2009 | Clarcor, Inc. and Total Filtration Services, Inc. |
| 1347 | 6/15/2009 | Cloyes Gear & Products, Inc. |
| 1459 | 6/15/2009 | CNI Enterprises, Inc. |
| 1243 | 6/15/2009 | Coastal Container Corporation and Vericorr Packaging of Coastal, LLC |
| 653 | 6/10/2009 | Comau, Inc. |
| 1126 | 6/15/2009 | Commercial Contracting Corporation |

# Exhibit 1
# Withdrawn Objections

| Docket # | Obj. Date | Name |
|---|---|---|
| 1152 | 6/15/2009 | Compagnie de Saint-Gobain |
| 1645 | 6/12/2009 | Comprehensive Logistics Co., Inc. |
| 792 | 6/12/2009 | Compuware Corporation |
| 1273 | 6/12/2009 | Concept Industries, Inc. |
| 1824 | 6/18/2009 | Continental AG and its affiliates |
| 1978 | 6/19/2009 | Continental Structural Plastics, Inc. |
| 1294 | 6/15/2009 | Cooper-Standard Automotive |
| 769 | 6/12/2009 | Creative Foam Corporation |
| 1089 | 6/11/2009 | D.W. Griffith, Inc. |
| 1219 | 6/15/2009 | Dakkota Integrated Systems, LLC |
| 1752 | 6/16/2009 | Danaher Corporation |
| 2544 | 6/25/2009 | Delta Tooling Co. |
| 1638 | 6/16/2009 | Delta Tooling Co., and certain of its affiliates and subsidiaries, including without limitation, Del |
| 758 | 6/12/2009 | DENSO International America, Inc. |
| 1325 | 6/15/2009 | Detroit Technologies |
| 2608 | 6/25/2009 | Detroit Technologies, Inc. |
| 2508 | 6/25/2009 | Detroit Technologies, Inc. and certain subsidiaries and affiliates |
| 1132 | 6/15/2009 | Discovery Communications, LLC |
| 1381 | 6/15/2009 | Dura Automotive Systems, Inc. and certain of its affiliates |
| 1224 | 6/15/2009 | Eaton Corporation |
| 1299 | 6/15/2009 | EMCON Technologies |
| 1653 | 6/16/2009 | EnovaPremier of Michigan LLC |
| 1650 | 6/16/2009 | Ernie Green Industries, Inc. |
| 1479 | 6/16/2009 | Etkin Management Services, Inc. |
| 1643 | 6/12/2009 | Falcon Transport Co. |
| 1391 | 6/15/2009 | FANUC Robotics America, Inc. |
| 1429 | 6/15/2009 | Faurecia USA Holdings, Inc., Faurecia Interior Systems, Inc., Faurecia Automotive Seating, Inc., and |
| 888 | 6/15/2009 | Federal Express Corporation |
| 1584 | 6/16/2009 | Feuer Powertrain GmbH & Co. KG |
| 1037 | 6/12/2009 | Fiat S.p.A. |
| 1399 | 6/15/2009 | Ficosa North America Corporation |
| 572 | 6/10/2009 | Flex-N-Gate Corporation |
| 2429 | 6/24/2009 | Foster Electric Co., Ltd., Foster Electric (U.S.A.) Inc., a/k/a Foster Electric America, Foster Elec |
| 775 | 6/12/2009 | Foster Electric, Inc. |
| 858 | 6/15/2009 | Fujiwa Machinery Industry (Kunshan) |
| 842 | 6/12/2009 | Fuzhou Lioho Machinery Co., LTD |
| 756 | 6/12/2009 | Georg Fischer Automotive AG |
| 1437 | 6/15/2009 | Getrag Transmission Corporation |
| 865 | 6/15/2009 | GHSP, Inc. and JSJ Corporation |
| 1386 | 6/15/2009 | Gill Industries |
| 1427 | 6/15/2009 | GKN Driveline, GKN Sinter Metals, GKN Polsk Sp Z.O.O., and GKN Deutschland |
| 1566 | 6/16/2009 | Gonzalez Design Engineering, Gonzalez Production Systems, and Gonzalez Manufacturing Technologies |
| 1428 | 6/15/2009 | Gonzalez-Group |
| 794 | 6/12/2009 | GP Strategies Corporation, General Physics Corporation, and Sandy Corporation |
| 1321 | 6/15/2009 | Grupo Antolin North America |
| 2524 | 6/25/2009 | Grupo KUO, S.A.B. de C.V. |
| 2173 | 6/22/2009 | Hagemeyer, N.A. America and certain of its affiliates |
| 814 | 6/12/2009 | Hayman Management Co. |
| 1409 | 6/15/2009 | Hella KGaA Hueck & Co., Hella Corporate Center USA, Inc., and certain affiliated entities |
| 893 | 6/12/2009 | Henkel Corporation |
| 2617 | 6/25/2009 | Henniges Automotive Holding, Inc. |
| 1426 | 6/15/2009 | Henniges Automotive Holding, Inc. and certain of its affiliates and subsidiaries |
| 2517 | 6/25/2009 | Henniges Automotive Holding, Inc. and certain of its affiliates and subsidiaries |
| 854 | 6/15/2009 | Hilite Industries, Inc. |
| 1326 | 6/15/2009 | Hirotec America, Inc. |

## Exhibit 1
## Withdrawn Objections

| Docket # | Obj. Date | Name |
|---|---|---|
| 1151 | 6/15/2009 | Hitachi Cable Indiana, Inc. |
| 1149 | 6/15/2009 | Hitachi, Ltd. |
| 883 | 6/12/2009 | Horiba Instruments Inc. and Horiba Ltd. |
| 799 | 6/12/2009 | Ideal Contracting, LLC |
| 791 | 6/12/2009 | Ideal Setech Share The Space, LLC |
| 1176 | 6/15/2009 | International Automotive Components Group North America Inc. |
| 1092 | 6/15/2009 | International Business Machines Corporation |
| 1400 | 6/15/2009 | Inteva Products, LLC |
| 2530 | 6/25/2009 | Inteva Products, LLC |
| 1463 | 6/15/2009 | Isuzu Motors Limited |
| 1080 | 6/15/2009 | J.B. Hunt Transport Services, Inc. |
| 894 | 6/12/2009 | J2 Management Corp. |
| 1259 | 6/15/2009 | JAC Products, Inc. |
| 1261 | 6/15/2009 | JASCO international, LLC |
| 1334 | 6/15/2009 | Jason Incorporation dba Janesville Acoustics |
| 1105 | 6/15/2009 | Johnson Controls, Inc., Intertec Systems, LLC, JCIM, LLC |
| 1198 | 6/15/2009 | Johnson Matthey Vehicle Testing & Development, LLC, Johnson Matthey Inc. |
| 2006 | 6/19/2009 | Kayaba Industry, Co. Ltd. |
| 1351 | 6/15/2009 | Key Plastics |
| 694 | 6/11/2009 | Koch Enterprises, Inc. |
| 1396 | 6/15/2009 | Kohlberg & Co LLC dba PGW, LLC |
| 753 | 6/12/2009 | Kongsberg Automotive, Inc., Kongsberg Driveline Systems I, Inc., Kongsberg Driveline Systems S de RL |
| 2488 | 6/25/2009 | Kongsberg Automotive, Inc., Kongsberg Driveline Systems I, Inc., Kongsberg Driveline Systems S de RL |
| 907 | 6/12/2009 | L & A Architects, Inc. |
| 890 | 6/12/2009 | Lapeer Metal Stamping Co., Inc. |
| 1664 | 6/17/2009 | Lapeer Metal Stamping Companies, Inc. |
| 1100 | 6/15/2009 | Lear Corporation |
| 2168 | 6/22/2009 | Leggett and Platt, Incorporated |
| 1317 | 6/15/2009 | LEM USA, Inc. |
| 1036 | 6/15/2009 | LG Electronics USA, Inc. |
| 851 | 6/15/2009 | Lioho Light Metal (Kunshan) Co., Ltd. |
| 848 | 6/15/2009 | Liufeng Machinery Industry Co., Ltd. |
| 1098 | 6/15/2009 | LMC Phase II, LLC and PSEG Resources LLC |
| 750 | 6/12/2009 | Logistics Insight Corp. |
| 2138 | 6/22/2009 | Magna International, Inc. |
| 963 | 6/12/2009 | Mahar Tool Supply Company, Inc. |
| 1170 | 6/15/2009 | Mando Corporation |
| 1450 | 6/15/2009 | Mann+Hummel USA, Inc., Mann+Hummel GMBH, Mann+Hummel Advanced Filtration Concepts, Inc., Mann+Hummel |
| 1050 | 6/11/2009 | Market Insight Corporation |
| 884 | 6/12/2009 | Martin Transportation Systems, Inc. |
| 1425 | 6/15/2009 | Martinrea International, Inc. and its subsidiaries |
| 1081 | 6/12/2009 | Maxxis International - USA |
| 1737 | 6/17/2009 | Meadville Forging Company and Carolina Forge Company |
| 1394 | 6/15/2009 | Medialink Worldwide |
| 957 | 6/12/2009 | Midway Products Group, Inc. |
| 1086 | 6/15/2009 | MIS Environmental Services, Inc. |
| 1379 | 6/15/2009 | Mitsuba Corp. |
| 1322 | 6/15/2009 | Mitsubishi Heavy Industries |
| 864 | 6/15/2009 | Mitsuboshi Belting, LTD. |
| 1417 | 6/15/2009 | Modine Manufacturing Company |
| 2572 | 6/25/2009 | Modine Manufacturing Company |
| 1039 | 6/15/2009 | Modineer Co. |
| 1649 | 6/16/2009 | Mold Masters Co. |
| 2342 | 6/23/2009 | Mold Masters Co., |
| 1309 | 6/15/2009 | Molded Fiber Glass Co. |

**Exhibit 1**

**Withdrawn Objections**

| Docket # | Obj. Date | Name |
|---|---|---|
| 773 | 6/12/2009 | Mubea, Inc. |
| 1064 | 6/13/2009 | Nagel Precision, Inc. |
| 1361 | 6/15/2009 | National Auto Radiator Mfg. Co. Ltd. |
| 1330 | 6/15/2009 | Neptune Orient Lines, Ltd. dba APL Logistics Transport, et. al |
| 1118 | 6/15/2009 | New United Motor Manufacturing |
| 1458 | 6/15/2009 | Newport Television |
| 1423 | 6/15/2009 | NGK Spark Plugs (U.S.A.), Inc, |
| 1133 | 6/15/2009 | Niles America Wintech, Inc. |
| 1235 | 6/15/2009 | Norfolk Southern Corporation, Norfolk Southern Railway, and Triple Crown Services Company |
| 749 | 6/12/2009 | Northern Engraving Corporation |
| 763 | 6/12/2009 | Novodynamics, Inc. |
| 2072 | 6/19/2009 | NYX, Inc. and Bates Acquisition, LLC |
| 855 | 6/12/2009 | Ogihara America Corporation |
| 1292 | 6/15/2009 | Omron Automotive Electronics, Inc. |
| 2005 | 6/12/2009 | Ottaway Motor Express |
| 887 | 6/12/2009 | Overhead Conveyor Company |
| 1206 | 6/15/2009 | Panasonic Electronic Works Corporation of America |
| 772 | 6/12/2009 | Paragon Metals, Inc. |
| 1329 | 6/15/2009 | Park-Ohio Industries, Inc. |
| 2559 | 6/25/2009 | Pennzoil-Quaker State Company dba SOPUS Products |
| 1460 | 6/15/2009 | Penske Auto Group |
| 869 | 6/12/2009 | Penske Logistics LLC and Automotive Component Carriers LLC |
| 1304 | 6/15/2009 | Peugeot Japy Industries, SA |
| 715 | 6/12/2009 | Phillips Lytle LLP |
| 701 | 6/12/2009 | Pilkington North America, Inc. and certain of its affiliates and subsidiaries |
| 711 | 6/12/2009 | Pioneer Steel Corporation |
| 717 | 6/11/2009 | Pioneer Steel Corporation |
| 1385 | 6/15/2009 | Pirelli Tires, LLC |
| 1205 | 6/15/2009 | PJAX, Inc. |
| 2029 | 6/19/2009 | Plastic Omnium Auto Exteriors, L.L.C., Plastic Omnium Auto Exteriores, S.A. de C.V., Burelle, S.A., |
| 1673 | 6/16/2009 | Progressive Stamping Company, Inc. |
| 1422 | 6/15/2009 | Pyeong HWA Automotive Co., Ltd. |
| 1189 | 6/15/2009 | QEK Global Solutions (US) LP |
| 1906 | 6/19/2009 | Quadion Corp. |
| 1160 | 6/15/2009 | Quaker Chemical Corporation |
| 1461 | 6/15/2009 | Raytheon Professional Services, LLC |
| 797 | 6/12/2009 | RCO Engineering, Inc. |
| 1153 | 6/15/2009 | Rhythm North America Corporation and THK Manufacturing of America, Inc. |
| 1849 | 6/18/2009 | Ridgeview Industries, Inc. |
| 897 | 6/12/2009 | Rima Manufacturing Company |
| 1305 | 6/15/2009 | RMT Acquisition Company, LLC |
| 892 | 6/12/2009 | Rubber Enterprises, Inc. |
| 2487 | 6/24/2009 | Ryobi Ltd. and Ryobi Die Casting (USA), Inc. |
| 1238 | 6/15/2009 | Sabo Industria e Comercio de Autopecas Ltda |
| 1223 | 6/15/2009 | Sabo USA, Inc. |
| 1313 | 6/15/2009 | Saginaw LLc and Brazing Concepts LLC |
| 1255 | 6/15/2009 | Sanden International (USA), Inc. |
| 857 | 6/12/2009 | Sandler & Travis Trade Advisory Services, Inc. |
| 1387 | 6/15/2009 | Security Packaging, Inc. |
| 1007 | 6/11/2009 | Severn Trent Del Inc. |
| 899 | 6/12/2009 | Severstal North America, Inc. |
| 879 | 6/12/2009 | Shanghai Automotive Industry Corporation (Group) |
| 1349 | 6/15/2009 | Shiloh Industries, Inc. |
| 708 | 6/12/2009 | Soroc Acquisiton Corp. |
| 1354 | 6/15/2009 | Sprint Nextel Corporation |

**Exhibit 1**

**Withdrawn Objections**

| Docket # | Obj. Date | Name |
|---|---|---|
| 748 | 6/12/2009 | StarSource Management Services |
| 1355 | 6/15/2009 | Stoneridge, Inc._Stoneridge Pollak, Ltd._Hi-Stat Mfg. |
| 1338 | 6/15/2009 | Strattec Power Access LLC |
| 1341 | 6/15/2009 | Strattec Security Corporation |
| 1168 | 6/15/2009 | Sumitomo Electric Wiring Systems, Inc. |
| 1324 | 6/15/2009 | Summit Polymers, Inc. |
| 1327 | 6/15/2009 | Summit Polymers, Inc. |
| 909 | 6/12/2009 | Superior Industries International, Inc. |
| 1111 | 6/15/2009 | Superior Industries International, Inc. |
| 1857 | 6/18/2009 | SUPERVALU Inc. |
| 1148 | 6/15/2009 | Tata America International Corporation |
| 1821 | 6/18/2009 | Techform Products Limited |
| 1094 | 6/15/2009 | Tenneco Inc. and certain of its affiliates |
| 1457 | 6/15/2009 | Textron |
| 2358 | 6/24/2009 | The Barnes Group Inc. |
| 1096 | 6/15/2009 | The Barnes Group, Inc. and Seeger-Orbis GmbH & Co. OHG |
| 1182 | 6/15/2009 | The City of Lansing, Michigan |
| 1307 | 6/15/2009 | The Cobalt Group, Inc. |
| 1167 | 6/15/2009 | The Interpublic Group of Companies, Inc. |
| 2580 | 6/24/2009 | The Sherwin-Williams Company |
| 1104 | 6/15/2009 | The Timken Company |
| 1389 | 6/15/2009 | The Timken Company |
| 1442 | 6/15/2009 | ThyssenKrupp Steel North America, Inc., TWB Company LLC, ThyssenKrupp Crankshaft Co., LLC, ThyssenKr |
| 967 | 6/12/2009 | Timco, LLC |
| 2408 | 6/24/2009 | TK Holdings, Inc. |
| 1438 | 6/15/2009 | TK Holdings, Inc. and all other legal entities associated with ultimate DUNS number 690545165 |
| 1465 | 6/15/2009 | TMI Custom Air Systems, Inc. and certain of its affiliates and subsidiaries |
| 2326 | 6/23/2009 | Toledo Molding & Die, Inc. |
| 2369 | 6/24/2009 | Toledo Molding & Die, Inc. |
| 1418 | 6/15/2009 | Toyoda Gosei North America Corporation |
| 2458 | 6/24/2009 | Toyota Boshoku America, Inc. |
| 863 | 6/12/2009 | Toyota Motor Sales, USA |
| 1632 | 6/16/2009 | TPI Incorporated and certain of its subsidiaries |
| 1392 | 6/15/2009 | Trico Products Corporation |
| 1006 | 6/15/2009 | TRW Automotive U.S., LLC |
| 1930 | 6/19/2009 | TT electronics plc, on behalf of subsidiaries AB Automotive Electronics Ltd., AB Electronic Products |
| 1240 | 6/15/2009 | U.S. Bank National Association or U.S. Bank Trust National Association |
| 1019 | 6/12/2009 | Ultralife Corporation |
| 1687 | 6/12/2009 | Unique Fabricating, Inc. |
| 1147 | 6/15/2009 | Unisia Mexicana S.A. DE C.V. |
| 774 | 6/12/2009 | United REMC |
| 838 | 6/12/2009 | United States Steel Corporation |
| 994 | 6/15/2009 | US Farathane Corporation |
| 1675 | 6/17/2009 | Valeo sylvania LLC |
| 1262 | 6/15/2009 | Valeo, Inc. |
| 720 | 6/12/2009 | Vector CANtech, Inc. and Vector Informatik GmbH |
| 1061 | 6/15/2009 | Veolia Water Partners |
| 985 | 6/15/2009 | Verizon Communications Inc. |
| 2009 | 6/19/2009 | Verizon Communications Inc. |
| 1358 | 6/15/2009 | Veyance Technologies, Inc. |
| 1741 | 6/17/2009 | Visiocorp USA, Inc., Visiocorp Mexico, S.A. de C.V., and Visiocorp P.L.C. |
| 1342 | 6/15/2009 | Visiocorp USA, Inc._Visiocorp Mexico S.A. de C.V._Visiocorp PLC |
| 1174 | 6/15/2009 | Visteon Corporation |
| 1180 | 6/15/2009 | WABCO Holdings, Inc. |
| 1155 | 6/15/2009 | Wahler Automotive Systems, Inc., Whaler Metalurgica Ltda, and Gustav Wahler GmbH |

## Exhibit 1
## Withdrawn Objections

| Docket # | Obj. Date | Name |
|---|---|---|
| 1127 | 6/15/2009 | Webasto Roof Systems, Inc. |
| 1282 | 6/15/2009 | Western Flyer Express, Inc. |
| 2605 | 6/26/2009 | WET Automotive Systems Ltd. |
| 946 | 6/12/2009 | Windsor Mold, Inc. and Windsor Mold USA Inc. |
| 1186 | 6/15/2009 | WITTE-Velbert GmbH & Co. KG |
| 999 | 6/12/2009 | Worthington Industries, Inc. |
| 1774 | 6/17/2009 | Yarema Die & Engineering Co. |
| 1195 | 6/12/2009 | Yazaki North America, Inc. |
| 940 | 6/12/2009 | Yeaton Research, Inc. |
| 1116 | 6/15/2009 | Yorozu North America, Inc. (a/k/a/ Yorozu America Corporation) |
| 683 | 6/11/2009 | Zeppelin-Stiftung and ZF Friedrichshafen AG |
| 684 | 6/11/2009 | ZF Lenksysteme GmbH |

**Schedule J-2**

## Exhibit 2
## Limited to Cure Dispute and Subject to Ajournment

| Docket # | Obj. Date | Name |
|---|---|---|
| 1135 | 6/12/2009 | Convention & Show Services, Inc. |
| 2412 | 6/24/2009 | Cross Country Motor Club, Inc. and Cross Country Motor Club of California, Inc. |
| 688 | 6/11/2009 | CSX Transportation, Inc. |
| 687 | 6/11/2009 | Custom Automotive Services, Inc. |
| 1249 | 6/15/2009 | CVS Pharmacy, Inc. |
| 867 | 6/12/2009 | Dell Financial Services LLC |
| 1024 | 6/15/2009 | Delta Township Utilities II, LLC |
| 1013 | 6/15/2009 | Delta Township Utilities, LLC |
| 693 | 6/11/2009 | Det Norske Veritas (USA), Inc. |
| 1669 | 6/17/2009 | Dominion Retail, Inc. |
| 692 | 6/11/2009 | dSpace, Inc. and dSpace GmbH |
| 1231 | 6/15/2009 | DTE Lordstown, LLC |
| 1216 | 6/15/2009 | DTE Northwind Operations, LLC |
| 1225 | 6/15/2009 | DTE Tonawanda, LLC |
| 910 | 6/12/2009 | Duerr AG |
| 2405 | 6/24/2009 | Duerr AG, Duerr Systems Inc. and Duerr Ecoclean, Inc. |
| 2411 | 6/24/2009 | Duerr AG, Duerr Systems Inc. and Duerr Ecoclean, Inc. |
| 911 | 6/12/2009 | Duerr AG, Duerr Systems Inc., and Duerr Ecolcelan, Inc. |
| 913 | 6/12/2009 | Duerr AG, Duerr Systems Inc., and Duerr Ecolcelan, Inc. |
| 809 | 6/12/2009 | E & L Construction Group, Inc. aka Erickson and Lindstrom Construction |
| 2606 | 6/26/2009 | E & L Construction Group, Inc. known as Erickson & Lindstrom Construction |
| 2337 | 6/23/2009 | E.I. du Pont de Nemours and Compnay |
| 868 | 6/12/2009 | E.I. DuPont de Nemours and Company |
| 889 | 6/12/2009 | Eberspaecher (ENA) |
| 935 | 6/12/2009 | EMC Corporation |
| 859 | 6/12/2009 | Emerson Electric Company |
| 2298 | 6/23/2009 | Enprotech Mechanical Services, Inc. |
| 1083 | 6/15/2009 | Enprotech Mechanical Services, Inc. |
| 2027 | 6/19/2009 | Enshu Ltd and Enshu (USA) Corporation |
| 1670 | 6/17/2009 | Enshu Ltd and Enshu Corporation |
| 2470 | 6/24/2009 | Entrega Systems Group, Inc. |
| 1431 | 6/15/2009 | Exedy America Corp. and Dynax America Corp. |
| 2094 | 6/19/2009 | Exel Inc. ("Exel"), Exel Transportation Services, Inc. ("Exel Transportation") and Air Express Inter |
| 806 | 6/12/2009 | Fabtronic, Inc. |
| 1196 | 6/15/2009 | FATA Automation, Inc. |
| 1012 | 6/15/2009 | Federal Broach & Machine Company, LLC |
| 2338 | 6/23/2009 | Ferndale Electric Company, Inc. |
| 2509 | 6/24/2009 | Ferrous Processing and Trading Company |
| 2609 | 6/24/2009 | Ferrous Processing and Trading Company |
| 945 | 6/12/2009 | Fleet-Car Lease, Inc. d/b/a Fleet Car Carriers |
| 2581 | 6/25/2009 | Flextronics International Ltd. |
| 1079 | 6/12/2009 | Flextronics International Ltd., et al. |
| 1281 | 6/15/2009 | Fluid Routing Solutions, Inc. |
| 2335 | 6/23/2009 | Ford, Comverca, and ACH |
| 1287 | 6/15/2009 | Freudenberg - NOK General Partnership, et. al |
| 1853 | 6/18/2009 | Freudenberg-NOK General Partnership; Freudenberg-NOK, Inc; Freudenberg-NOK de Mexico, S.A. de C.V.; |
| 1297 | 6/15/2009 | FTM Service Corp. |
| 839 | 6/12/2009 | Gail & Rice, Inc. |
| 1412 | 6/15/2009 | Gates Corporation |
| 1143 | 6/15/2009 | GE Capital Corporation |
| 2491 | 6/24/2009 | GE Capital Corporation |
| 1165 | 6/15/2009 | Gensler Architecture, Design & Planning, PC |
| 2431 | 6/24/2009 | GETRAG Getriebe-Und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG, GETRAG SpA and GETRAG Corporation |
| 2600 | 6/26/2009 | GfK Custom Research, LLC |
| 706 | 6/12/2009 | Granger Electric Company |

## Exhibit 2
## Limited to Cure Dispute and Subject to Ajournment

| Docket # | Obj. Date | Name |
|---|---|---|
| 878 | 6/12/2009 | Grubb & Ellis Management Services, Inc. |
| 920 | 6/15/2009 | Grupo Industrial Bocar SA de CV dba Fugra, SA de CV |
| 995 | 6/15/2009 | Guardian Parties |
| 2571 | 6/25/2009 | GXS, Inc., formerly known as Global eXchange Services, Inc. |
| 1962 | 6/19/2009 | Harry Major Machine & Tool Company |
| 1221 | 6/15/2009 | HCA, Inc. |
| 1264 | 6/15/2009 | Healthtrax international, Inc. |
| 975 | 6/15/2009 | Hertz Corporation |
| 941 | 6/12/2009 | Hirata Corporation of America |
| 2371 | 6/24/2009 | Hirata Corporation of America |
| 1087 | 6/15/2009 | Honeywell International Inc. |
| 1447 | 6/15/2009 | Hutchinson and related entities |
| 1047 | 6/15/2009 | ICM Systems, LLC and Ingersoll Prodction |
| 811 | 6/12/2009 | Ideal Setech, LLC |
| 2022 | 6/19/2009 | Illinois Tool Works, Inc. |
| 2240 | 6/15/2009 | Industrial Transport Inc. |
| 1310 | 6/15/2009 | Inergy Automotive Systems |
| 1200 | 6/15/2009 | Inland Waters Pollution Control |
| 1818 | 6/18/2009 | International Industrial Contracting Co. |
| 1306 | 6/15/2009 | international Industrial Contracting Co. |
| 1380 | 6/15/2009 | Internet Brands, Inc. |
| 1300 | 6/15/2009 | Intra Corporation |
| 1043 | 6/15/2009 | J.L. French Automotive Casting, Inc. |
| 908 | 6/12/2009 | Jackson-Dawson Communications, Inc. |
| 1683 | 6/17/2009 | Jefferson Wells International, Inc. |
| 1454 | 6/15/2009 | Jernberg Industries, Inc. |
| 767 | 6/12/2009 | John E. Green Company |
| 1802 | 6/18/2009 | Joseph Cargenlli and Hydrogenics Corporation |
| 1384 | 6/15/2009 | JTEKT Automotive Tennessee-Vonore, Co., JTEKT Automotive Tennessee-Morristown, Inc., Toyoda Machiner |
| 898 | 6/15/2009 | Keifer GmbH (MP Beteiligungs) |
| 2324 | 6/23/2009 | Kelly Services, Inc. |
| 964 | 6/13/2009 | Knight Facilities Management, Inc. and Caravan/Knight Facilities Management, LLC |
| 1439 | 6/15/2009 | Kolbenschmidt-Pierburg AG |
| 742 | 6/12/2009 | KONE, Inc. |
| 1123 | 6/15/2009 | Kuka Systems Corp. North America F/K/A Kuka Flexible Production Systems Corp. |
| 2543 | 6/25/2009 | Kyklos Bearing International |
| 1403 | 6/15/2009 | Kyklos Bearing International |
| 766 | 6/12/2009 | L.K. Machinery, Inc. |
| 1868 | 6/18/2009 | LA Productions, LLC |
| 871 | 6/12/2009 | Lansing Board of Water & Light |
| 2514 | 6/25/2009 | Len Industries, Inc. |
| 987 | 6/15/2009 | Len Industries, Inc. |
| 2214 | 6/23/2009 | LMC Phase II, L.L.C. |
| 956 | 6/12/2009 | LMC Resources Capital Limited Partnership |
| 2132 | 6/18/2009 | Louis Padnos Iron & Metal Company |
| 1419 | 6/15/2009 | Lowe's Companies, Inc. |
| 1348 | 6/15/2009 | Macquarie Equipment Finance, LLC |
| 903 | 6/12/2009 | Mahle Industries, Inc. |
| 2471 | 6/24/2009 | Marcom Inc. |
| 667 | 6/11/2009 | Material Management Services, Inc. |
| 1832 | 6/12/2009 | MCM Management Corp., Inc. |
| 2089 | 6/19/2009 | MediaNews Group, Inc., a Delaware corporation, and its direct and indirect subsidiaries, including N |
| 798 | 6/12/2009 | Menlo Logistics, Inc. |
| 1312 | 6/15/2009 | Monster Worldwide, Inc. d/b/a Monster MediaWorks |
| 1814 | 6/18/2009 | Morgan Adhesives Company Inc. d/b/a MACtac and Bemis Company Inc. |

**Exhibit 2**
**Limited to Cure Dispute and Subject to Ajournment**

| Docket # | Obj. Date | Name |
|---|---|---|
| 744 | 6/12/2009 | MPS Group, Inc. |
| 2095 | 6/19/2009 | MSC Mediterranean Shipping Company S.A. |
| 866 | 6/12/2009 | National Fuel Gas Distribution Corporation |
| 1827 | 6/18/2009 | National Fuel Resources, Inc. |
| 790 | 6/12/2009 | National Logistics Management Co. |
| 796 | 6/12/2009 | National Logistics Management Co. (successor by merger to Artisan Container Services, LLC) |
| 1275 | 6/15/2009 | NBC Universal |
| 1740 | 6/17/2009 | New Mather Metals, Inc. |
| 1138 | 6/15/2009 | Newkirk Electric & Associates |
| 1368 | 6/15/2009 | Nisshinbo Automotive Corp. |
| 1139 | 6/15/2009 | North American Acquisition Corporation d/b/a AMTEC Percision Products |
| 1337 | 6/15/2009 | Oakland University |
| 929 | 6/12/2009 | Oxbow Carbon & Minerals, LLC |
| 1179 | 6/15/2009 | Panasonic Automotive Systems Company f/k/a Matsushita Electric Corporation of America |
| 1106 | 6/15/2009 | Peterson American Corporation |
| 2051 | 6/19/2009 | Pitney Bowes Inc., Pitney Bowes Management Services, Inc. (â€œPBMSâ€), Pitney Bowes |
| 875 | 6/12/2009 | Plasan USA, Inc. and Plasan USA, Ltd. |
| 1001 | 6/15/2009 | Praxair, Inc. and Praxair Distribution, Inc. |
| 1164 | 6/15/2000 | Praxair, Inc. as Agent for Niject Services Company |
| 521 | 6/9/2009 | Production Modeling Corporation |
| 870 | 6/12/2009 | Production Services Management, Inc. |
| 1178 | 6/15/2009 | Project Management Services, Inc. |
| 1316 | 6/15/2009 | PTI Quality Containment solutions, LLC |
| 834 | 6/12/2009 | R.L. Polk & Co. |
| 1771 | 6/11/2009 | Rapids Tumble Finish, Inc. |
| 938 | 6/12/2009 | RCR Enterprises, LLC |
| 787 | 6/12/2009 | RECARO North America, Inc. |
| 944 | 6/12/2009 | Reliable Carriers, Inc. |
| 931 | 6/12/2009 | Rush Trucking Corporation |
| 1826 | 6/18/2009 | Sankyo Oilless Industry (USA) Corp. |
| 2333 | 6/23/2009 | SAP America, Inc. |
| 927 | 6/12/2009 | SAS Institute Inc. |
| 739 | 6/12/2009 | SCG Capital Corporation |
| 881 | 6/15/2009 | Schaeffler Group Entities |
| 810 | 6/12/2009 | Schenck Rotec Corporation |
| 1237 | 6/15/2009 | Schneider National, Inc, Schneider National Carriers, Inc., and Schneider Logistics, Inc. |
| 2507 | 6/25/2009 | SCI Ltd. (formerly Strategic Connections Inc.) |
| 1388 | 6/15/2009 | Scripps Networks, LLC |
| 2574 | 6/25/2009 | Shepardson Stern & Kaminsky, LLC |
| 2506 | 6/23/2009 | Shively Brothers, Inc. |
| 1051 | 6/15/2009 | Shreveport Red River Utilities, LLC |
| 1068 | 6/15/2009 | Siemens Product Lifecycle Management Software, Inc. |
| 1088 | 6/15/2009 | Sika Corporation |
| 2468 | 6/24/2009 | SKF USA Inc. |
| 965 | 6/12/2009 | SKF USA, Inc. |
| 1301 | 6/15/2009 | Spartan Light Metal Products, Inc. |
| 901 | 6/12/2009 | SPX Corporation |
| 2538 | 6/25/2009 | SPX Corporation |
| 2570 | 6/25/2009 | SPX Filtran LLC, formerly known as Filtran division of SPX Corporation |
| 905 | 6/12/2009 | SPX Filtran LLC, formerly known as Filtran Division of SPX Corporation |
| 2423 | 6/24/2009 | SRG Global, Inc., Guardian Industries, Corp., Guardian Automotive, Inc., Guardian Automotive Product |
| 1011 | 6/15/2009 | Standard Electric Company |
| 1044 | 6/15/2009 | Suez/VWNA/DEGS of Lansing, LLC |
| 697 | 6/12/2009 | Superior Acquistion, Inc. |
| 1748 | 6/15/2009 | Supina Machine Company, Inc. |

## Exhibit 2
## Limited to Cure Dispute and Subject to Ajournment

| Docket # | Obj. Date | Name |
|---|---|---|
| 699 | 6/12/2009 | Swagelok Company |
| 1960 | 6/19/2009 | Technology Investment Partners, LLC |
| 1097 | 6/15/2009 | Tecta America Corp. |
| 2515 | 6/25/2009 | Textron Inc. |
| 1210 | 6/15/2009 | TGI Direct, Inc. |
| 1185 | 6/15/2009 | The Detroit Edison Company and Michigan Consolidated Gas Company |
| 817 | 6/12/2009 | The Environmental Quality Co. |
| 1410 | 6/15/2009 | The Goodyear Tire & Rubber Company |
| 1091 | 6/12/2009 | The MathWorks, Inc. |
| 1628 | 6/15/2009 | The Regents of the University of Michigan |
| 1027 | 6/15/2009 | The Reynolds and Reynolds Company |
| 1220 | 6/15/2009 | The Scharine Group, Inc. |
| 1021 | 6/12/2009 | Thread Information Design, Inc. |
| 860 | 6/12/2009 | TitanX Engine Cooling, Inc. |
| 2592 | 6/26/2009 | Toro Energy of Indiana, LLC and Toro Energy of Michigan |
| 2557 | 6/25/2009 | Toyota Motor Corporation |
| 2558 | 6/25/2009 | Toyota Motor Corporation |
| 2616 | 6/25/2009 | Toyota Motor Sales USA and TRD U.S.A. Inc. |
| 2516 | 6/25/2009 | Toyota Motor Sales USA and TRD U.S.A. Inc. |
| 1122 | 6/11/2009 | TV Minority Company Inc. |
| 1331 | 6/15/2009 | Unico Inc. |
| 1062 | 6/15/2009 | Union Pacific Railroad Company |
| 1014 | 6/15/2009 | Union Pacific Railroad Company |
| 2007 | 6/19/2009 | United Parcel Service, Inc. |
| 765 | 6/12/2009 | Urban Science Applications, Inc. and certain of its affiliates and subsidiaries |
| 789 | 6/12/2009 | USF Holland, Inc. |
| 2359 | 6/24/2009 | UTi United States, Inc. |
| 735 | 6/12/2009 | V2Soft Inc. |
| 743 | 6/12/2009 | Voith AG and Premier Manufacturing Support Services, Inc. |
| 2155 | 6/22/2009 | WhereNet Corp. |
| 1328 | 6/15/2009 | Willette aka Allied Digital Technologies |
| 691 | 6/11/2009 | Xerox Capital Services, LLC as servicing agent for Xerox Corporation |
| 781 | 6/12/2009 | YRC Logistics Services, Inc. |
| 793 | 6/12/2009 | YRC Worldwide, Inc. |
| 785 | 6/12/2009 | YRC, Inc., formerly known as Roadway Express, Inc. |

**<u>Schedule J-3</u>**

## Exhibit 3
## Remaining Objections

| Docket # | Obj. Date | Name |
|---|---|---|
| 1359 | 6/15/2009 | Acument Global Technologies |
| 1270 | 6/15/2009 | Affiliated Commputer Systems of Spain SL, et. al |
| 714 | 6/12/2009 | Alcoa, Inc. |
| 984 | 6/15/2009 | Allison Transmission, Inc., f/k/a Clutch Operating Company, Inc. |
| 2452 | 6/24/2009 | AM General LLC, formerly AM General Corporation, and General Engine Products LLC |
| 829 | 6/12/2009 | AP Moller Maersk |
| 1134 | 6/15/2009 | ATC Drivetrain, Inc. |
| 1163 | 6/15/2009 | ATC Logistics & Electronics, Inc. |
| 682 | 6/17/2009 | Canadian National Railway Company |
| 1561 | 6/16/2009 | Castrol Industrial North America and Castrol North America Automotive |
| 762 | 6/12/2009 | ChannelVantage, Inc. |
| 1141 | 6/12/2009 | Cisco Systems Capital Corporation |
| 1183 | 6/12/2009 | Cisco Systems, Inc. |
| 902 | 6/12/2009 | Convergys Corporation |
| 1743 | 6/17/2009 | Cummins Inc. |
| 852 | 6/12/2009 | Dow Chemical Co. |
| 904 | 6/15/2009 | Emigrant Business Credit Group corp. (Sun Microsystems) |
| 1112 | 6/15/2009 | Hewlett-Packard Company and Electronic Data Systems, LLC |
| 2378 | 6/24/2009 | Hewlett-Packard Company, Electronic Data Systems, LLC, and Hewlett-Packard Financial Services Compan |
| 1115 | 6/15/2009 | Hewlett-Packard Financial Services Company and certain HPFS affiliates |
| 1156 | 6/15/2009 | Hitachi Automotive Products (USA) |
| 2156 | 6/22/2009 | Infineon Technologies North America Corp. and Infineon Technologies AG |
| 2003 | 6/19/2009 | Kolbenschmidt-Pierburg AG |
| 2153 | 6/12/2009 | Laclede Gas Company |
| 1432 | 6/15/2009 | LBA Realty Fund III-Company IX, LLC |
| 731 | 6/12/2009 | Magneti Marelli Powertrain USA, LLC, Magnetti Marelli North America, Automotive Lightning LLC, et. a |
| 788 | 6/12/2009 | McGraw-Hill Companies, Inc. |
| 2012 | 6/19/2009 | Medco Health Solutions, Inc. |
| 1233 | 6/15/2009 | Oracle USA, Inc., successor in interest to Oracle Corporation and to Siebel Systems, Inc. |
| 628 | 6/10/2009 | Pintura, Estampado y Montaje, S.A. de C.V., Pintura y Ensambles de Mexico, S.A. de C.V., Nugar S.A. |
| 783 | 6/12/2009 | Power Information Network, LLC |
| 1303 | 6/15/2009 | Pratt & Miller Engineering & Fabrication, Inc. |
| 665 | 6/11/2009 | Raycom Media, Inc. |
| 1340 | 6/15/2009 | Relational, LLC, f/k/a Relational Funding Corporation, and d/b/a Relational Technology Solutions |
| 831 | 6/12/2009 | Remy International, Inc., Remy Inc., and Remy Power Products, LLC |
| 1462 | 6/15/2009 | RK Chevrolet/RK Auto Group |
| 1140 | 6/15/2009 | Ryder Integrated Logistics Inc. |
| 1369 | 6/15/2009 | Screenvision Cinema Network LLC |
| 1404 | 6/15/2009 | Shambaugh & Son, L.P. |
| 1124 | 6/15/2009 | Siemens Enterprise Communications, Inc. |
| 1982 | 6/19/2009 | Simpson Automotive Group, Inc. |
| 757 | 6/12/2009 | SPS Technologies, LLC, SPS Technologies Waterford Company, NSS Technologies, Inc., and AVK Division |
| 1107 | 6/12/2009 | Sun Microsystems, Inc. and Sun Microsystems Global Financial Services, LLC |
| 2070 | 6/19/2009 | The Bank of New York Mellon |
| 1302 | 6/15/2009 | The Royal Bank of Scotland plc, ABN AMRO Bank N.V. and RBS Citizens N.A. |
| 2045 | 6/19/2009 | Toyota Motor Corporation |
| 1995 | 6/18/2009 | Traffice Marketplaces,Inc. |
| 2567 | 6/25/2009 | Verizon Capital Corporation, formerly known as Bell Atlantic Tri-Continental Leasing Corp. and Tri-C |
| 1056 | 6/12/2009 | Yahoo! Inc. |

**Exhibit 2**
**Limited to Cure Dispute and Subject to Ajournment**

| Docket # | Obj. Date | Name |
|---|---|---|
| 1441 | 6/15/2009 | A Raymond, Inc. |
| 696 | 6/12/2009 | A.W. Farrell & Sons, Inc. |
| 1769 | 6/16/2009 | Advancement LLC, d/b/a Contract Professionals of Ohio LLC |
| 837 | 6/15/2009 | Affinion Loyalty Group, Inc. dba Apollo Management LP |
| 1109 | 6/12/2009 | Aisin AW Co., Ltd. |
| 1207 | 6/15/2009 | Aisin AW Co., Ltd. |
| 1413 | 6/15/2009 | Aisin World Corp. of America |
| 1448 | 6/15/2009 | ALPS Automotive, Inc. |
| 1278 | 6/15/2009 | AMPORTS, Inc. |
| 741 | 6/12/2009 | Analysts International Corporation |
| 1374 | 6/15/2009 | Applied Handling, Inc. |
| 700 | 6/12/2009 | Applied Manufacturing Technologies |
| 2001 | 6/18/2009 | ArvinMeritor, Inc. |
| 1440 | 6/15/2009 | ArvinMeritor, Inc., its subsidiaries and affiliates, and all other legal entities associated with ul |
| 2535 | 6/25/2009 | Aspen Marketing Services, Inc. |
| 804 | 6/12/2009 | Aspen Marketing Services, Inc. |
| 2450 | 6/24/2009 | Atlas Industrial Contractors, Inc. |
| 2469 | 6/24/2009 | Atmos Energy Marketing, LLC and Atmos Energy Corporation |
| 777 | 6/12/2009 | ATS Automation Tooling Systems, Inc. |
| 709 | 6/12/2009 | ATS Ohio, Inc. |
| 1214 | 6/15/2009 | Auto Craft Tool & Die Co., Inc. |
| 1433 | 6/15/2009 | Autodata Solutions, Inc. |
| 846 | 6/12/2009 | Autoport Limited |
| 2525 | 6/25/2009 | Averitt Express Inc. |
| 1735 | 6/17/2009 | AVL Americas, Inc. formerly known as AVL Michigan Holding Corp. |
| 856 | 6/12/2009 | AVL Instrumentation & Test Systems, Inc. fka AVL N.A., Inc. |
| 2536 | 6/25/2009 | AVL Instrumentation & Test Systems, Inc., formerly known as AVL North America, Inc. or AVL N.A., Inc |
| 1738 | 6/17/2009 | AVL Powertrain Engineering, Inc. |
| 1405 | 6/15/2009 | Behr-Hella Thermocontrol GmbH Co. |
| 1416 | 6/15/2009 | Bendix Commercial Vehicle Systems, LLC and its affiliated entities |
| 1701 | 6/17/2009 | BNSF Railway Company |
| 676 | 6/11/2009 | BP Lubricants USA, Inc. |
| 679 | 6/11/2009 | BP Products North America Inc. and BP Corporation North America Inc. |
| 936 | 6/12/2009 | Brandenburg Industrial Service Co. |
| 1838 | 6/12/2009 | Brencal Contractors, Inc. |
| 1817 | 6/18/2009 | Burns International Contracting Co. |
| 1296 | 6/15/2009 | Burns International Industrial Contracting Co. |
| 2527 | 6/25/2009 | Cadillac Products Automotive Company |
| 1060 | 6/15/2009 | Cadillac Products Automotive Company |
| 2008 | 6/19/2009 | Canadian Pacific Railway Company |
| 1308 | 6/15/2009 | Canon USA, Inc. |
| 1279 | 6/11/2009 | Carlisle & Company, Inc. |
| 1142 | 6/15/2009 | CDI Corporation |
| 980 | 6/12/2009 | CenterPoint Energy Gas Transmission Company and CenterPoint Energy Arkla |
| 900 | 6/12/2009 | CenterPoint Energy Services, Inc. |
| 698 | 6/12/2009 | CEVA |
| 1034 | 6/15/2009 | Cinetic Automation Corp., Cinetic DyAG Corporation, and Cinetic Landis Corp. |
| 932 | 6/12/2009 | Cintas Corporation |
| 704 | 6/12/2009 | Citation Corporation |
| 1336 | 6/15/2009 | Coastal Container Corporation_Vericorr Packaging |
| 2190 | 6/22/2009 | Cobasys LLC |
| 981 | 6/15/2009 | Comau, Inc. |
| 1128 | 6/15/2009 | Compania Sud Americana de Vapores S.A. |
| 1402 | 6/15/2009 | Connecticut General Life Insurane Company and related CIGNA entities |
| 1343 | 6/15/2009 | Continental Plastics Co. |

## **<u>Exhibit K</u>**

**Miscellaneous Objections**

**Miscellaneous Objections**

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2018 | White Marsh/ Memphis Lenders | The White Marsh/Memphis Lenders, creditors with a security interests certain facilities, do not oppose the sale, but argue that (i) the Debtors cannot sell the facilities to the Purchaser free and clear of the lenders' security interests without fully satisfying the claims of those lenders under section 363(f)(3), (ii) the lenders must be provided an opportunity to credit bid, and (iii) a replacement lien in the proceeds of the sale, equity interests in the Purchaser, does not adequately protect the lenders' interests. | The Debtors' response to this objection is set forth at length in the Reply. |
| 2052 | Toyota Motor Corporation | Toyota Motor Corporation ("**Toyota**") asserts that the Debtors cannot assign certain contracts between the Debtors and Toyota to the Purchaser without Toyota's consent. | Toyota is not objecting to the sale, but is objecting to the assumption and assignment of certain contracts between the Debtors and Toyota without Toyota's consent. The Debtors are willing to delay the assumption and assignment of any contracts with Toyota until a later date. In the meantime, the Debtors will negotiate with Toyota in an attempt to reach a consensual resolution as to the assumption and assignment of the Toyota contracts. In the absence of a consensual resolution, the Debtors will ask the Court to determine the substance of the Toyota Objection as it relates to any contracts the Debtors are seeking to assume and assign to the Purchaser. As such, the Court need not determine the merits of the Toyota Objection prior to entering the Sale Approval Order. |

| Docket No. | Name of Objector | Summary of Objection | Response |
|---|---|---|---|
| 2056 | GMAC LLC | On June 1, 2009, the Court entered an Order authorizing the Debtors to enter into and approving that certain ratification agreement (the "**Ratification Agreement**") between the Debtors and GMAC LLC ("**GMAC**").  The Ratification Agreement authorized the Debtors to continue their prepetition financial and operating agreements and arrangements (the "**Operative Documents**") with GMAC, pending the assumption and assignment to the Purchaser of the Operative Documents pursuant to the Sale Motion. The Ratification Agreement further provides that the Purchaser is to assume and perform the Debtors' obligations under the Operative Documents in accordance with the terms thereunder.<br><br>GMAC consents to and supports the Sale but has reserved its rights to object to the Sale to the extent that certain undisclosed schedules to the MPA do not comply with the requirements of the Ratification Agreement. | The Debtors are in the process of resolving GMAC's reservation of rights and do not anticipate GMAC objecting to the Sale. |

**<u>Exhibit L</u>**


**NADA Statement**

**NADA Statement on GM's Revised Participation Agreement**

McLean, Va. (June 8, 2009) -- The National Automobile Dealers Association (NADA) has reviewed and supports GM's amendments to the Participation Letter Agreement. We're especially pleased that GM moved so quickly to meet with NADA and the GM National Dealer Council on such short notice to review and to discuss the serious concerns that dealers had with the original agreement.

"I especially commend GM for its flexibility and its willingness to make substantive clarifications and modifications to address dealer concerns. We believe GM has made a very good faith effort, given the unprecedented circumstances facing GM and the industry," said NADA chairman John McEleney.

While NADA is not in a position to formally endorse the Participation Agreement, we believe the revised document addresses the majority of dealer concerns.

Contacts:

David Hyatt
Vice President
NADA Public Affairs
(703) 821-7120
dhyatt@nada.org

Charles Cyrill
Director of Public Relations
NADA Public Affairs
(703) 821-7121
ccyrill@nada.org

## Exhibit M

**Letter Agreement between General Motors and UAW**

Doc. No. 91
SALE OF BUSINESS

# GENERAL MOTORS CORPORATION

September 26, 2007

Mr. Cal Rapson
Vice President and Director
General Motors Department
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan  48214

Dear Mr. Rapson:

During these negotiations, the Union requested the
Corporation to agree that any sale of an operation as
an ongoing business would require the buyer to
assume the 2007 GM-UAW Collective Bargaining
Agreement.  The Corporation agreed to do so in the
case of any such sale during the term of the 2007
Agreement.

Very truly yours,

Diana D. Tremblay
GMNA Vice President
Labor Relations

559

CBA-2007-004716