```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re                                           :
                                                :       Chapter 11 Case No.
GENERAL MOTORS CORP., et. al.                   :
                                                :       09-50026 (REG)
                                                :
              Debtors.                          :       (Jointly Administered)
                                                :
-------------------------------------------------------------X
```

## CERTIFICATE OF PUBLICATION

I, Angela Ferrante, certify as follows:

1. I am a Director with the Business Reorganization Department of the Melville office of The Garden City Group, Inc., the claims and noticing agent for the debtors and debtors-in-possession (the "Debtors") in the above-captioned proceeding. The business address for the Melville office is 105 Maxess Road, Melville, New York 11747

2. On June 11, 2009, at the direction of Weil, Gotshal & Manges LLP, counsel for the Debtors, I caused publication of the **Notice of Interim Order Establishing Trading Restrictions** in the following publications:

Publication Name

*The New York Times*, National

*The Wall Street Journal*, National

3. I certify under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated: Melville, New York
June 29, 2009

/s/  Angela Ferrante
Angela Ferrante



Will their opinions change yours?

nytimes.com/opinion

Where the conversation begins.

## In Pitching to Angel Investors, Preparation To[ps]

By BRENT BOWERS

FOR entrepreneurs hoping to land start-up capital from angel investors, here's what two recent studies found: Don't get carried away when you pitch your product's marketability and with solid arguments about the evidence of their commitment to sweat equity and their own investment, experts say.

And one misstep — like stammering, a vague reply instead of saying you do not know the answer — can also kill a deal, the authors of the studies say.

Angel investors are generally wealthy people seeking promising start-ups that are too small to attract the attention of venture capitalists in the United States and are the largest source of seed and start-up capital for entrepreneurs (not counting their own savings or money from family and friends), according to Jeffrey Sohl, the director of the Center for Venture Research at the University of New Hampshire.

Even last year, as the recession gathered force, these angels spent $19.2 billion on more than 55,000 ventures, he said, though that was down from $26 billion in 2007. The average investment for each deal last year was $346,500.

By contrast, venture capitalists made only 440 investments in start-ups last year, putting the bulk of their money in later stages of a company's growth in deals that averaged $7.5 million, Mr. Sohl said. "Angels provide the seed and start-up funding that turns acorns into trees like Starbucks, FedEx, Amazon and Google," Mr. Sohl said.

Typically, entrepreneurs make their initial pitch to angels in an informal session. If their idea is judged to have promise, they may be invited to give a PowerPoint presentation followed by a question-and-answer session.

With time at a premium, it is imperative for entrepreneurs to come prepared to both meetings with solid arguments about their product's marketability and with evidence of their commitment to their company in the form of sweat equity and their own investment, experts say.

But enthusiasm is a different matter, according to a study that was presented last week at an entrepreneurship conference at Babson College outside Boston.

"That is the trickiest part," said Richard Sudek, an angel investor and assistant professor of entrepreneurship at Chapman University in Orange, Calif., and one of the three authors of that study. "We like you to get excited, but don't force it. Being authentic is much more important. There is such a thing as quiet passion. Anything that comes off as sickness is negative."

Cheryl Mitteness, a doctoral candidate at the University of Louisville and one of Mr. Sudek's co-authors, was even more emphatic. "Show your passion," she said, "but don't try to be somebody that you're not. Angels are very leery of too much enthusiasm."

Another research paper, by Xiao-Ping Chen and Suresh Kotha of the University of Washington and Xin Yao of Wichita State University and published in The Academy of Management Journal in February, came to much the same conclusion. The effects of perceived passion, defined as cues like facial expressions, tone of voice and hand gestures, "were statistically insignificant," the article said.

### ONLINE: A PLAN AND A PRIZE

To win a contest for business plans. Some tips on how and to enter and the deadline.

**nytimes.com/smallbusiness**

Ms. Chen, a professor at her university's business school, called the findings "surprising," especially since she and her colleagues often rely on such signals in their hiring decisions. "You can show your passion through preparedness, how well you've thought out your business plan," she said. "But the style of your presentation doesn't matter."

What angels are looking for, she said, is "but the style of your presentation doesn't matter."

What angels are looking for, she said, is evidence of a market opportunity with growth potential, a strong management team and an exit strategy, including a list of possible acquirers, since the eventual sale of the companies they invest in is how they make money.

"Also, angels put a high value on trustworthiness," said Mr. Sudek of Chapman, a former entrepreneur himself and the chairman-elect of Tech Coast Angels, the largest angel group in the United States. "If you don't know the answer to a question, say so, and promise to get back to them. Don't fake it."

In fact, acknowledging gaps in your knowledge and other weaknesses, and letting angels know you need their help, can add to your credibility, he said.

Here are some other tips from the researchers:

¶Memorize an "elevator pitch" for your product and its potential in 90 seconds or less. It will bolster your confidence, and you can recycle it to win over customers, vendors and employees.

¶Consider hiring a coach, but only angel investors. "Attend 'pitch' that many business angel groups sponsor. In presenting, be realistic in your revenue projections and don't draw up pie in the sky forecasts.

First, he said, more loudly than the company, which remedy clicked. Formula, had la $25,000 and is second, do no ple for money in spent your own. $105,000 of his so firm and raised family and friends.

Third, the business show to potential should be conci using software t

Fourth, seek a record of investi ucts.

And finally, he every angle. "If ask him for the angels who in Ray said. "My ge uarity in recen t introductions to get three pres close the deal."

## CNN's Sister Channel A 'View' Host Her Own

By BRIAN STELTER

Joy Behar, a longtime co-host of "The View," is joining HLN to present a 9 p.m. talk show.

HLN, the opinionated sister channel of CNN, hopes to raise its prime-time ratings with the addition of Ms. Behar, who is well known for her comedic and sometimes controversial liberal viewpoints. The network, a unit of Turner Broadcasting, is expected to announce the hiring on Thursday.

Ms. Behar will work a TV double shift, as she will continue to co-host "The View" on ABC in the mornings. In a brief telephone interview, Ms. Behar said the new 9 p.m. show, tentatively titled "The Joy Behar Show," will begin in the fall, most likely in September. She called it a "topical and hurt" talk show.

"It's not going to be dry, I hope, because I'm crazy," she said. On "The View," Ms. Behar is known for her sharply expressed liberal viewpoints.

Ms. Behar's show will replace a repeat of "Lou Dobbs Tonight."

HLN, formerly Headline News, has had strong ratings gains in recent years with a lineup of opinionated hosts in the evenings. The network's signature show at 8 p.m., "Nancy Grace," drew almost 900,000 viewers on an average day last month.

But the 9 p.m. hour has not performed as well. HLN started to replay Mr. Dobbs's CNN program in prime time last fall after Glenn Beck, a conservative commentator, moved to Fox News Channel from HLN. Last month, the repeat of Mr. Dobbs drew a viewers a day.



Joy Behar, known for lib[eral views,] the fall, mo[ves to] a new shift d[aytime talk] recently [signed] ception in 1997. "The View" has recently signed on some young more young entertain[ment] company plays at 9 p.m.

On some day more young ularity in recent contribute to co at 9 p.m.

Warner, which

[Legal notices column - United States Bankruptcy Court, Southern District of New York, Chapter 11 filings for General Motors Corporation, Case No. 09-50026 (REG), Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines, Notice of Sale Hearing to Sell Substantially All of Debtors' Assets Pursuant to Master Sale and Purchase Agreement and Other Agreements, and related notices. Dated New York, June 2, 2009. By Order of the Court. Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attorneys for Debtors and Debtors in Possession.]

EE,MW,SW,WE   EE-LEGL-3-A1   LEGL.XA.1C100.A1
09-50026-mg   Doc 2758   Filed 06/29/09   Entered 06/29/09 21:04:13   Main Document
Pg 3 of 3

C10  Thursday, June 11, 2009                EE MW SW WE                THE WALL STREET JOURNAL.

# LEGAL NOTICES

**GLOBAL, NATIONAL, REGIONAL**
TO ADVERTISE CALL 1.800.366.3975
FAX: 214.640.7900
ADVERTISING.WSJ.COM

## BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: GENERAL MOTORS CORP., et al., Debtors.
Chapter 11 Case No. 09-50026 (REG)
(Jointly Administered)

**NOTICE OF INTERIM ORDER ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF INTERESTS IN THE DEBTORS**

TO ALL PERSONS OR ENTITIES WITH EQUITY INTERESTS IN THE DEBTORS:

PLEASE TAKE NOTICE that on June 1, 2009 (the "Commencement Date"), General Motors Corporation ("GM") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Section 362(a) of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on June 1, 2009 the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over these chapter 11 cases, upon motion of the Debtors (the "Motion"), entered an interim order (i) finding that the Debtors' net operating loss carryforwards ("NOLs") and certain other tax attributes, including their foreign tax credit and other excess credit carryforwards (together with the NOLs, the "Tax Attributes") are property of the Debtors' estates and are protected by section 362(a) of the Bankruptcy Code; (ii) finding that trading in GM common stock (the "GM Stock") could severely limit the Debtors' ability to use the Tax Attributes for purposes of the Internal Revenue Code of 1986, as amended (the "Tax Code"); and (iii) approving the procedures as set forth herein to preserve the Tax Attributes pursuant to sections 105(a) and 362(a) of the Bankruptcy Code retroactively effective as of the Commencement Date (the "Interim Order"). ANY ACQUISITION IN VIOLATION OF THE RESTRICTIONS SET FORTH BELOW SHALL BE NULL AND VOID AB INITIO AS AN ACT IN VIOLATION OF THE AUTOMATIC STAY UNDER SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE.

PLEASE TAKE FURTHER NOTICE that the following procedures and restrictions have been approved by the Bankruptcy Court and shall apply to holding and trading in GM Stock:

(1) *Notice of Substantial GM Stock Ownership.* Any person or Entity (as such term is defined in section 382 of the Tax Code, including persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition) that beneficially owns, at any time on or after the Motion Date, GM Stock in an amount sufficient to qualify such person or Entity as a Substantial Equityholder (as hereinafter defined) shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the statutory committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), a Notice of Substantial Stock Ownership (a "Substantial Ownership Notice") (visit www.nysb.uscourts.gov or www.gmcourtdocs.com), which describes specifically and in detail the GM Stock ownership of such person or Entity, on or before the date that is the later of: (a) ten (10) days after the entry of the Interim Order or the Final Order, as applicable, and (b) ten (10) days after that person or Entity qualifies as a Substantial Equityholder. At the holder's election, the Substantial Ownership Notice to be filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns.

(2) *Acquisition of GM Stock or Options.* At least fifteen (15) business days prior to the proposed date of any transfer of equity securities (including Options, as hereinafter defined, to acquire such securities) that would result in an increase in the amount of GM Stock beneficially owned by any person or Entity that currently is or subsequently becomes a Substantial Equityholder or that would result in a person or Entity becoming a Substantial Equityholder (a "Proposed Equity Acquisition Transaction"), such person, Entity or Substantial Equityholder (a "Proposed Equity Transferee") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate GM Stock (an "Equity Acquisition Notice") (visit www.nysb.uscourts.gov or www.gmcourtdocs.com), which describes specifically and in detail the proposed transaction in which GM Stock is to be acquired. At the holder's election, the Equity Acquisition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(3) *Disposition of GM Stock or Options.* At least fifteen (15) business days prior to the proposed date of any transfer or other disposition of equity securities (including Options to acquire such securities) that would result in a decrease in the amount of GM Stock beneficially owned by a Substantial Equityholder or would result in a person or Entity ceasing to be a Substantial Equityholder (a "Proposed Equity Disposition Transaction," and together with a Proposed Equity Acquisition Transaction, a "Proposed Equity Transaction"), such person, Entity, or Substantial Equityholder (a "Proposed Equity Transferor") shall file with the Court, and serve upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee, a Notice of Intent to Sell, Trade, or Otherwise Transfer GM Stock (an "Equity Disposition Notice," and together with an Equity Acquisition Notice, an "Equity Trading Notice") (visit www.nysb.uscourts.gov or www.gmcourtdocs.com), which describes specifically and in detail the proposed transaction in which GM Stock would be transferred. At the holder's election, the Equity Disposition Notice that is filed with the Court (but not such notice served upon the Debtors, the attorneys for the Debtors, and the attorneys for the Creditors' Committee) may be redacted to exclude such holder's taxpayer identification number and the number of shares of GM Stock that such holder beneficially owns and proposes to sell or otherwise transfer.

(4) *Objection Procedures.* The Debtors and the Creditors' Committee shall have ten (10) business days after the filing of an Equity Trading Notice (the "Equity Objection Deadline") to file with the Court and serve on a Proposed Equity Transferee or a Proposed Equity Transferor, as the case may be, an objection to any proposed transfer of equity securities (including Options to acquire such securities) described in such Equity Trading Notice on the grounds that such transfer may adversely affect the Debtors' ability to utilize the Tax Attributes (an "Equity Objection") as a result of an ownership change under section 382 or section 383 of the Tax Code.

(i) If the Debtors or the Creditors' Committee file an Equity Objection by the Equity Objection Deadline, then the Proposed Equity Transaction shall not be effective unless approved by a final and nonappealable order of this Court.

(ii) If the Debtors or the Creditors' Committee do not file an Equity Objection by the Equity Objection Deadline, or if the Debtors and the Creditors' Committee provide written authorization to the Proposed Equity Transferee or the Proposed Equity Transferor, as the case may be, approving the Proposed Equity Transaction, prior to the Equity Objection Deadline, then such Proposed Equity Transaction may proceed solely as specifically described in the Equity Trading Notice. Any further Proposed Equity Transaction must be the subject of additional notices as set forth herein with an additional fifteen (15) business day waiting period.

(5) *Unauthorized Transactions in GM Stock or Options.* Effective as of the date of the filing of the Motion and until further order of the Court to the contrary, any acquisition, disposition, or other transfer of equity securities (including Options to acquire such securities) of the Debtors in violation of the procedures set forth herein shall be null and void *ab initio* as an act in violation of the automatic stay under sections 105(a) and 362 of the Bankruptcy Code.

(6) *Definitions.* For purposes of the Motion and the Order, the following terms have the following meanings:

(i) **Substantial Equityholder.** A "Substantial Equityholder" is any person or Entity that beneficially owns at least 27,000,000 shares of GM's common stock ("GM Common Stock") (representing approximately 4.5% of all issued and outstanding shares of GM's common stock).

(ii) **Beneficial Ownership.** "Beneficial ownership" (or any variation thereof of GM Stock and Options to acquire GM Stock) shall be determined in accordance with applicable rules under section 382 of the Tax Code, the U.S. Department of Treasury regulations ("Treasury Regulations") promulgated thereunder and rulings issued by the Internal Revenue Service, and, thus, to the extent provided in those rules, from time to time shall include, without limitation, (A) direct and indirect ownership (e.g., a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock, and (C) in certain cases, the ownership of an Option to acquire GM Stock.

(iii) **Option.** An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest regardless of whether it is contingent or otherwise not currently exercisable; and

(iv) **GM Stock.** "GM Stock" shall mean GM Common Stock. For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire GM Stock may be treated as the owner of such GM Stock.

**FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE WILL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.**

**ANY PROHIBITED ACQUISITION OR OTHER TRANSFER OF GM STOCK IN VIOLATION OF THE INTERIM ORDER WILL BE NULL AND VOID *AB INITIO* AND MAY LEAD TO CONTEMPT, COMPENSATORY DAMAGES, PUNITIVE DAMAGES, OR SANCTIONS BEING IMPOSED BY THE BANKRUPTCY COURT.**

**THE DEBTORS MAY WAIVE, IN WRITING, ANY AND ALL RESTRICTIONS, STAYS, AND NOTIFICATION PROCEDURES CONTAINED IN THE INTERIM ORDER, THIS NOTICE AND AFTER THE 363 TRANSACTION, THE DEBTORS SHALL NOT GRANT ANY WAIVER WITHOUT THE WRITTEN CONSENT OF NEW GM, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD.**

PLEASE TAKE FURTHER NOTICE that a copy of the Motion (including exhibits) is available for inspection by accessing the website of the Bankruptcy Court at www.nysb.uscourts.gov, or of the Debtors' notice and claims agent, The Garden City Group, Inc., at www.gmcourtdocs.com.

PLEASE TAKE FURTHER NOTICE that any person or entity may obtain relief from the procedures described in the Interim Order may request relief for cause at any time and the Debtors may oppose such relief.

PLEASE TAKE FURTHER NOTICE that, if timely objections are received, there shall be a hearing held on June 25, 2009 at 9:45 a.m. (Eastern Time) to consider, on a final basis, the relief requested in the Motion. The hearing may be adjourned without notice by an announcement of the adjourned date at the hearing.

PLEASE TAKE FURTHER NOTICE that RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York and served upon: (a) the Debtors, c/o General Motors Corporation, 300 Renaissance Center, Detroit, Michigan 48265 (attn: Lawrence S. Buonomo, Esq.); (b) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (c) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (attn: Matthew Feldman, Esq.); (d) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (e) Kramer Levin Naftalis & Frankel LLP, attorneys for the Creditors' Committee, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq., Thomas Moers Mayer, Esq., Adam C. Rogoff, Esq., and Gordon Z. Novod, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; and (h) U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), SO AS TO BE RECEIVED NO LATER THAN JUNE 18, 2009 at 4:00 P.M. (EASTERN TIME).

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

BY ORDER OF THE COURT
Dated: New York, New York
June 2, 2009

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

*All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Motion.*

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Notice of Chapter 11 Bankruptcy Cases,
Meeting of Creditors, & Deadlines

Chapter 11 bankruptcy cases concerning the debtors listed below were filed on June 1, 2009. You may be a creditor of the Debtors. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. **You are not being sued or forced into bankruptcy.** All documents filed with the Bankruptcy Court, including lists of the Debtors' assets and liabilities, will be available for inspection at the Office of the Clerk of the Bankruptcy Court or by accessing the Bankruptcy Court's website, www.nysb.uscourts.gov, as well as (A) by written request to the Debtors' Claims and Noticing Agent, The Garden City Group, Inc., at the following addresses: (i) if sending by regular mail: GM Claims Agent, P.O. Box 9386, Dublin, Ohio 43017-4286; (ii) if sending by overnight or hand delivery: GM Claims Agent, 105 Maxess Road, Melville, New York 11747, (B) by phone at 703-286-6401, or (C) by accessing its website, www.gmcourtdocs.com. Note that you need a PACER password and login to access documents on the Bankruptcy Court's website (a PACER password is obtained by accessing the PACER website, www.pacer.psc.uscourts.gov). NOTE: The staff of the Bankruptcy Court's Office, the Office of the United States Trustee, and the Debtors' Claims and Noticing Agent cannot give legal advice.

| Debtors: | Case Number: | Tax ID Number: |
|---|---|---|
| General Motors Corporation | 09-50026 (REG) | 38-0572515 |
| Chevrolet-Saturn of Harlem, Inc. | 09-13558 (REG) | 20-1426707 |
| Saturn, LLC | 09-50027 (REG) | 38-3539178 |
| Saturn Distribution Corporation | 09-50028 (REG) | 38-2755764 |

All other names used by the Debtors in the last 8 years:
**General Motors Corporation:** GMC Truck Division and NAO Fleet Operations, GM Corporation-GM Auction Department, National Car Rental, National Car Sales, Automotive Market Research; **Chevrolet-Saturn of Harlem, Inc.:** CHS of Harlem; **Saturn, LLC:** Saturn Corporation, Saturn Motor Car Corporation, GM Saturn Corporation, Saturn Corporation of Delaware.

**Attorney for Debtors:** Harvey R. Miller, Stephen Karotkin, Joseph H. Smolinsky, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007.

**Meeting of Creditors:** Date: July 27, 2009, Time: 1:00 P.M., Location: Hilton New York, 1335 Avenue of the Americas, New York, NY 10019, (212) 586-7000.

**Deadline to File a Proof of Claim.** Notice of deadline will be sent at a later time. **Creditor with a Foreign Address:** Read the information above about "Claims."

**Deadline to File a Complaint to Determine Dischargeability of Certain Debts.** The deadline will be set at a later time.

**Creditors May Not Take Certain Actions:** In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in these cases.

**Address of the Bankruptcy Court's Office:** United States Bankruptcy Court, One Bowling Green, New York, New York 10004, Telephone: 212-668-2870, Hours Open: 8:30 am to 5:00 pm.

Clerk of the Bankruptcy Court: Vito Genna

**Filing of Chapter 11 Bankruptcy Case.** Bankruptcy cases under chapter 11 of the Bankruptcy Code (title 11, United States Code) have been filed in this court by the debtors listed above, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business.

**Legal Advice.** The staff of the Clerk of the Bankruptcy Court and the United States Trustee cannot give legal advice. Consult a lawyer to determine your rights in these cases.

**Creditors Generally May Not Take Certain Actions.** Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail, or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.

**Meeting of Creditors.** A meeting of creditors is scheduled for the date, time, and location listed above. The Debtors' representative must be present at the meeting to be questioned under oath by the United States Trustee and by creditors. Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice.

**Claims.** A Proof of Claim is a signed statement describing a creditor's claim. You can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is not listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all or if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim or you might not be paid any money on your claim and may be unable to vote on a plan. The court has not yet set a deadline to file a Proof of Claim. If a deadline is set, you will be sent another notice. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Creditor with a Foreign Address:** The deadline for filing claims will be set in a later court order and will apply to all creditors unless the order provides otherwise. If notice of the order setting the deadline is sent to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline.

**Discharge of Debts.** Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code § 1141 (d). A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 1141 (d) (6) (A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed above. The bankruptcy clerk's office must receive the complaint and any required filing fee by that deadline.

**Bankruptcy Clerk's Office.** Any paper that you file in these bankruptcy cases should be filed on the court's Electronic Case File System (ECF) using an attorney's login and password issued by the court or on a diskette or compact disk (CD) in PDF format. If you are unable to file electronically or to submit a copy of your filing on diskette or compact disk (CD), you may file conventionally, provided that you submit with your filing an affidavit of your inability to comply.

**Creditor with a Foreign Address.** Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in these cases.

BY ORDER OF THE COURT
Dated: New York, New York
June 2, 2009

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re: MASONITE CORPORATION, et al., Debtors.
Chapter 11
Case No. 09-10844 (PJW)
Jointly Administered

**NOTICE OF DEADLINE FOR THE FILING OF PROOFS OF CLAIM**

**THE GENERAL CLAIMS BAR DATE IS JULY 6, 2009**
**THE GOVERNMENTAL CLAIMS BAR DATE IS SEPTEMBER 13, 2009**

PLEASE TAKE NOTICE OF THE FOLLOWING:

**Filing of the Bar Date Notice.** On May 29, 2009, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (Docket No. 365) (the "Bar Date Order") establishing certain deadlines for the filing of proofs of claim in the chapter 11 cases of the following debtors and debtors in possession (collectively, the "Masonite Debtors"):

| Debtor | Case No. |
|---|---|
| Cutting Edge Tooling, Inc. | 09-10853 (PJW) |
| Door Installation Specialist Corporation | 09-10856 (PJW) |
| Eger Properties | 09-10846 (PJW) |
| Florida Made Door Co. | 09-10848 (PJW) |
| Masonite Air LLC | 09-10855 (PJW) |
| Masonite Corporation | 09-10844 (PJW) |
| Masonite Corporation Foreign Holdings Ltd. | 09-10845 (PJW) |
| Masonite Holding Company Limited | 09-10851 (PJW) |
| Masonite Holding Corporation | 09-10858 (PJW) |
| Masonite International Corporation | 09-10843 (PJW) |
| Masonite International Inc. | 09-10859 (PJW) |
| Masonite Primeboard, Inc. | 09-10849 (PJW) |
| Pintu Acquisition Company, Inc. | 09-10854 (PJW) |
| Premdor Finance LLC | 09-10857 (PJW) |
| Woodlands Millwork I, Ltd. | 09-10850 (PJW) |
| WMW, Inc. | 09-10847 (PJW) |

**The Bar Dates.** Pursuant to the Bar Date Notice, all entities (except governmental units), including individuals, partnerships, estates, and trusts who have a claim or potential claim against the Masonite Debtors that arose prior to March 16, 2009, no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **July 6, 2009** (the "General Claims Bar Date"). Governmental entities who have a claim or potential claim against the Masonite Debtors that arose prior to March 16, 2009, no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **September 13, 2009** (the "Governmental Bar Date").

ANY PERSON OR ENTITY WHO FAILS TO FILE A PROOF OF CLAIM ON OR BEFORE THE GENERAL CLAIMS BAR DATE OR THE GOVERNMENTAL BAR DATE, AS APPLICABLE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION.

**Filing a Proof of Claim.** Each Proof of Claim must be filed, including supporting documentation, by U.S. Mail or other hand delivery system, so as to be **actually received** by the Masonite Debtors' notice and claims agent, Kurtzman Carson Consultants LLC ("KCC") on or before the Claims Bar Date or the Governmental Bar Date (or, where applicable, on or before any bar date as set forth herein) at the following address:

Masonite Claims Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

**Contents of Proofs of Claim.** Each proof of claim must (i) be written in English; (ii) include a claim amount denominated in United States dollars or, if consistent with the ordinary course of business between the Masonite Debtors and the claimant, Canadian dollars; (iii) clearly identify the Masonite Debtor against which the claim is asserted; (iv) conform substantially with the proof of claim form attached to the Bar Date Notice or Official Form No. 10; (v) be signed by the claimant or by an authorized agent or legal representative of the claimant; and (vi) include as attachments any and all supporting documentation on which the claim is based. **Please note** – Each proof of claim must state a claim against only one Masonite Debtor and clearly indicate the Masonite Debtor against which the claim is asserted. To the extent more than one Masonite Debtor is listed on the proof of claim, it will treated as a claim filed under the joint administration case number (No. 09-10844) and a proof of claim is otherwise filed that does not identify the Masonite Debtor, the proof of claim may be deemed as filed only against Masonite Corporation.

**Additional Information.** If you have any questions regarding the claims process or need assistance in filing your proof of claim, you may contact the Masonite Debtors' restructuring hotline at (888) 830-4646; (ii) visiting the Masonite Debtors' restructuring website at: http://www.kccllc.net/masonite; and/ or (iii) writing to Masonite Claims Processing, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245. Une ligne d'informations en français pour les demandes des Masonite Debtors à cet effet spécialement pour les personnes francophones. Composez le (866) 967-1782 (sans frais pour les appels en provenance des États-Unis, du Canada, des Caraïbes et des Bahamas) ou le (310) 751-2682 (tous les autres pays). **Please note** – Kurtzman Carson Consultants LLC can **not** offer legal advice or advise whether you should file a proof of claim.

Dated: Wilmington, Delaware, May 29, 2009
BY ORDER OF THE COURT
RICHARDS, LAYTON & FINGER, P.A. / KIRKLAND & ELLIS LLP
Daniel J. DeFranceschi, P.A. (Bar No. 2732), Katisha D. Fortune (Bar No. 4857), One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Telephone: (302) 651-7700, Facsimile: (302) 651-7701.
Richard Cieri (admitted pro hac vice), Jonathan S. Henes (admitted pro hac vice), Christopher J. Marcus (admitted pro hac vice), Chaim J. Fortgang (admitted pro hac vice), Citigroup Center, 153 East 53rd Street, New York, New York 10022-4611, Telephone: (212) 446-4800

[1] The Masonite Debtors, together with the four digits of each Masonite Debtor's federal tax identification number, are: Masonite International Corporation (3246); Eger Properties (6897); WMW, Inc. (3326); Woodlands Millwork I, Ltd. (0667); Masonite Holding Company Limited (3243); Florida Made Door Co. (7960); Cutting Edge Tooling, Inc. (8818); Pintu Acquisition Company, Inc. (7932); Masonite Air LLC (N/A); Door Installation Specialist Corporation (2354); Masonite Holding Corporation (N/A); Masonite International Inc. (N/A) and Masonite International Corporation (7314). The Masonite Debtors' principal executive offices are located in Mississauga, Ontario and Tampa, Florida and the service address for all Masonite Debtors is: One N. Dale Mabry Highway, Suite 950, Tampa, Florida 33609.

---

## BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: GENERAL MOTORS CORP., et al., Debtors.
Chapter 11 Case No. 09-50026 (REG)
(Jointly Administered)

**NOTICE OF SALE HEARING TO SELL SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER**

PLEASE TAKE NOTICE THAT upon the motion (the "Motion"), of General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), dated June 1, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued an order dated June 2, 2009 (the "Sale Procedures Order"), among other things, (i) scheduling a hearing (the "Sale Hearing") to approve (a) the Master Sale and Purchase Agreement, dated as of June 1, 2009 (the "MPA"), by and among GM and its Debtor subsidiaries (collectively, the "Sellers") and Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"), with respect to the sale of substantially all the Debtors' assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances, and other interests, and subject to higher or better offers (the "363 Transaction"); (b) the assumption, assignment, and sale to the Purchaser pursuant to the MPA of certain executory contracts and unexpired leases of personal property and nonresidential real property (the "Assumable Executory Contracts"); and (c) the settlement agreement (the "UAW Retiree Settlement Agreement"), between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"); (ii) approving certain procedures for the submission and acceptance of any competing bids (the "Sale Procedures"); (iii) approving a procedure for the assumption, assignment, and sale to the Purchaser pursuant to the MPA of the Assumable Executory Contracts; (iv) approving the form and manner of notice of the Motion and the relief requested therein and of the Sale Hearing; and (v) setting a deadline for the filing of objections, if any, to the relief requested in the Motion.

A. **THE MASTER SALE AND PURCHASE AGREEMENT**
The total consideration under the MPA for the sale of the Purchased Assets is equal to the sum of (i) a credit bid in the amount of the indebtedness owed to the Purchaser as of the closing pursuant to certain secured loans extended by the U.S. Treasury and Export Development Canada, less approximately $8 billion (estimated to be approximately $48.3 billion at July 31, 2009); (ii) the surrender of a warrant to purchase GM shares previously issued to the U.S. Treasury in connection with the secured loans extended by the U.S. Treasury; (iii) the issuance to GM of common stock of the Purchaser representing approximately 10% of the common stock of the Purchaser as of the closing of the sale; (iv) the issuance to GM of warrants to purchase up to 15% of the shares of common stock of the Purchaser on a fully diluted basis, with one-half exercisable at any time prior to the tenth anniversary of issuance at an initial exercise price based on a $15 billion equity value of the Purchaser and the other half exercisable at any time prior to the tenth anniversary of issuance at an initial exercise price based on a $30 billion equity value of the Purchaser (GM can elect direct and cashless exercises of the warrants); and (v) the assumption by the Purchaser of certain assumed liabilities, all as set forth more fully in the MPA (visit www.nysb.uscourts.gov or www.gmcourtdocs.com). In addition, if the aggregate amount of allowed general unsecured claims against the Debtors exceeds $35 billion, as estimated by an order of the Bankruptcy Court (which the Debtors may seek at any time), GM will receive an additional 2% of the common stock of the Purchaser as of the closing of the sale.

B. **THE SALE HEARING**
The Sale Hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Courtroom 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, on June 30, 2009, at 9:45 a.m. (Eastern Time). The Sale Hearing may be adjourned without notice by an announcement of the adjourned date at the Sale Hearing.

**RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED** with the Clerk of the Bankruptcy Court and served upon: (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) Kramer Levin Naftalis & Frankel LLP, attorneys for the Creditors' Committee, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq., Thomas Moers Mayer, Esq., Adam C. Rogoff, Esq., and Gordon Z. Novod, Esq.); (d) Dewey Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James B. Kemery, Esq.); (e) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; and (h) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), **SO AS TO BE RECEIVED NO LATER THAN JUNE 19, 2009, at 5:00 P.M. (EASTERN TIME)** (the "**Objection Deadline**").

The failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the 363 Transaction, the approval of the UAW Retiree Settlement Agreement, and the Debtors' consummation of the Sale Transaction.

C. **COPIES OF THE MOTION AND SALE PROCEDURES ORDER**
This Notice provides only a partial summary of the relief sought in the Motion and the terms of the Sale Procedures Order. Copies of the Motion, the MPA (excluding certain commercially sensitive information), and Sale Procedures Order are available for inspection (i) by accessing (a) the website of the Bankruptcy Court at www.nysb.uscourts.gov, or (b) the website of the Debtors' claims and noticing agent, The Garden City Group, Inc., at www.gmcourtdocs.com or (ii) by visiting the Office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004-1408. Copies may also be obtained by faxing a written request to the attorneys for the Debtors, Weil, Gotshal & Manges LLP (Attn: Russell Brooks, Esq.) at 212-310-8007.

BY ORDER OF THE COURT
Dated: New York, New York
June 2, 2009

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re: LANDSOURCE COMMUNITIES DEVELOPMENT LLC, et al., Debtors.
Chapter 11
Case No. 08-11111 (KJC)
Jointly Administered

Voting Deadline: July 6, 2009 at 5:00 p.m. (PT)
Objection Deadline: July 6, 2009 at 4:00 p.m. (ET)
Confirmation Hearing: July 13, 2009 at 10:00 a.m. (ET)

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT; (II) HEARING TO CONSIDER CONFIRMATION OF THE SECOND AMENDED PLAN; (III) DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE SECOND AMENDED PLAN; AND (IV) DEADLINE FOR VOTING ON THE SECOND AMENDED PLAN**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. By Order dated June 2, 2009 (the "**Disclosure Statement Order**"), the United States Bankruptcy Court for the District of Delaware (the "**Court**") approved the Proposed Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Second Amended Joint Chapter 11 Plans of Reorganization (the "**Second Amended Plan**") for LandSource Communities Development LLC and Each of its Affiliated Debtors Proposed by Barclays Bank PLC, as Administrative Agent, Under the Super-Priority Debtor-in-Possession First Lien Credit Agreement (including all exhibits thereto and as amended, modified or supplemented from time to time, the "**Disclosure Statement**") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. By the Disclosure Statement Order, the Court established **July 6, 2009 at 5:00 p.m. (prevailing Pacific Time)** (the "**Voting Deadline**") as the deadline by which ballots accepting or rejecting the Second Amended Plan must be received. To be counted, your original ballot must actually be received on or before the Voting Deadline by Kurtzman Carson Consultants, LLC at the following address if delivered by first class mail:

LandSource Ballot Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

Ballots sent by facsimile, email or other electronic transmission will not be counted.

3. On **July 13, 2009 at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard, a hearing will be held before the Honorable Kevin J. Carey in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801 to consider confirmation of the Second Amended Plan, as the same may be amended or modified (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time, without further notice.

4. The Second Amended Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Second Amended Plan, and other applicable law without further notice, prior to or as a result of the Confirmation Hearing.

5. Objections, if any, to Confirmation of the Second Amended Plan, including any supporting memoranda, must be in writing, be filed with the Clerk of the Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 together with proof of service on the parties listed below and also served so as to be actually received by them on or before **July 6, 2009 at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**") provided, however, that the Committee and Second Lien Administrative Agent must file objections, if any, to confirmation of the Second Amended Plan **on or before July 7, 2009 at 7:00 p.m. (prevailing Eastern Time)** and shall (a) state the name and address of the objecting party and the amount of such claim or the nature of its interest in the Debtors' chapter 11 cases; (b) state with particularity the provision or provisions of the Second Amended Plan objected to and for any objection asserted, the legal and factual basis for such objections; and (c) be served upon: (i) counsel for the Administrative Agent and Plan Proponent: Greenberg Traurig LLP, 200 Park Avenue, New York, NY 10166, Attn: Bruce R. Zirinsky, Esq. and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899, Attn: Edwin J. Harron, Esq.; (ii) counsel for the Debtors: Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Marcia L. Goldstein, Esq. and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins, Esq.; (iii) counsel to the Official Committee of Unsecured Creditors: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, Esq. and Pachulski Stang Ziehl & Jones, LLP, 10100 Santa Monica Boulevard, Suite 1100, Los Angeles, CA 90067, Attn: Richard Pachulski, Esq.; (iv) counsel for the Second Lien Agent: Paul, Weiss, Rifkind & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Andrew N. Rosenberg, Esq. and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801, Attn: Richard S. Cobb, Esq.; (v) counsel for Lennar Corporation: O'Melveny & Myers, LLP, 400 South Hope Street, Los Angeles, CA 90071, Attn: Ben Logan, Esq.; and (vi) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street Suite 2207, Lockbox 35, Wilmington, DE 19899, Attn: David L. Buchbinder, Esq. in a manner as will cause such objection to be received by all such parties on or before the Objection Deadline. Any objections not filed and served on or before the Objection Deadline shall not be considered by the Court.

6. The Disclosure Statement and the Second Amended Plan are on file with the Clerk of the Bankruptcy Court for the District of Delaware, and may be examined by any interested party at the Office of the Clerk during regular business hours, by accessing http://www.kccllc.net/landsource or by calling 888-625-9272.

7. The following are exhibits to: California Land Company; Friendswood Development Company LLC; Kings Wood Development Company LLC; LandSource Communities Development LLC; LandSource Communities Development Sub LLC; LandSource Holding Company, LLC; LandSource Communities Corp.; LNR-Lennar Washington Square, LLC; LSC Associates, LLC; NWHL GP LLC; The Newhall Land and Farming Company (A California Limited Partnership); The Newhall Land and Farming Company; Southwest Communities Development LLC; Stevenson Ranch Venture LLC; Tournament Players Club at Valencia, LLC; Valencia Corporation; and Valencia Realty Company.

[2] The deadline for the Committee and Second Lien Administrative Agent to file objections to confirmation of the Plan, if any, is July 7, 2009 at 7:00 p.m. (ET).

---

## NOTICE OF SALE

**Sale 1: Tuesday, June 16, 2009 11:00 AM EST**
**Synthetics – Home Equity (16), CDO (5)**
**Interest basis shortfall cap is fixed on HE ABS, variable on CDO**

| Lot # | CUSIP | Issuer | Fixed Rate | Type | Implied Writedown | Final Legal Maturity Date of Reference Obligation | Original Reference Obligation Amount | Current Reference Obligation Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | 07345CAE9 | BLHV 2006-1A D | 4.486% | HE ABS | Yes | 5/25/2035 | 10,000,000 | 3,698,459 |
| 2 | 17307GQV3 | CMLTI 2005-HE1 M7 | 2.350% | HE ABS | Yes | 5/25/2035 | 10,000,000 | 4,041,433 |
| 3 | 35729PJK7 | FHLT 2005-1 M9 | 2.500% | HE ABS | Yes | 6/25/2035 | 10,000,000 | 4,047,340 |
| 4 | 36242QSA2 | GSAMP 2005-HE3 B | 2.150% | HE ABS | Yes | 12/25/2034 | 10,000,000 | 238,255 |
| 5 | 45071KBS2 | IXIS 2005-HE2 B3 | 2.300% | HE ABS | Yes | 1/25/2036 | 4,497,000 | 4,497,000 |
| 6 | 46626LFV7 | JPMAC 2006-FRE1 M8 | 0.700% | HE ABS | Yes | 5/25/2035 | 10,000,000 | 8,736,070 |
| 7 | 542514HH6 | LHILL 2006-1A B | 4.911% | CDO | Yes | 3/15/2043 | 10,000,000 | 10,921,122 |
| 8 | 58337724R | MRCY 2006-3A G | 4.342% | CDO | Yes | 7/19/2046 | 10,000,000 | 3,734,469 |
| 9 | 61744CPQ3 | MSAC 2005-HE2 B3 | 3.000% | HE ABS | Yes | 3/25/2035 | 10,000,000 | 4,201,279 |
| 10 | 61744CQN8 | MSAC 2005-HE3 B3 | 2.750% | HE ABS | Yes | 6/25/2035 | 10,000,000 | 5,062,097 |
| 11 | 65106AAW3 | MONT 2006-1 M9 | 1.700% | HE ABS | Yes | 7/25/2035 | 10,000,000 | 7,676,906 |
| 12 | 65536HBL1 | NHELI 2005-HE1 M9 | 2.100% | HE ABS | Yes | 7/25/2035 | 10,000,000 | 6,523,605 |
| 13 | 76110WZ66 | RASC 2005-KS6 M9 | 2.150% | HE ABS | Yes | 8/25/2035 | 10,000,000 | 10,000,000 |
| 14 | 83611MKN7 | SVHE 2005-4 M9 | 1.550% | HE ABS | Yes | 2/25/2036 | 10,000,000 | 7,676,908 |
| 15 | 84751PEX3 | SURF 2005-BC3 B3 | 2.650% | HE ABS | Yes | 6/25/2035 | 7,000,000 | 7,177,111 |
| 16 | 36229AAJ2 | GSCSF 2006-2A E | 2.950% | CDO | N/A | 1/10/2045 | 10,000,000 | 10,000,000 |
| 17 | 45377MAN1 | INDE7 7A E | 2.850% | CDO | N/A | 1/10/2045 | 10,000,000 | 93,008 |
| 18 | 46426XAF3 | ICM 2006-3A D | 2.890% | CDO | N/A | 7/3/2046 | 7,977,528 | 7,829,796 |
| 19 | 49056QAJ4 | KENT 2006-2A D | 3.000% | CDO | N/A | 7/6/2046 | 3,875,000 | 3,830,005 |
| 20 | 58937EAG9 | MRCY 2006-3A D | 2.750% | CDO | N/A | 7/19/2046 | 5,000,000 | 4,972,709 |
| 21 | 61239QAH0 | MONT 2006-1A E | 2.750% | CDO | N/A | 6/25/2046 | 10,005,488 | 9,750,560 |

**Sale 2: Tuesday, June 16, 2009 02:00 PM EST**
**CASH – CDO (10)**

| Lot # | CUSIP | Issuer | Coupon | Type | Maturity Date | Original Face | Current Balance |
|---|---|---|---|---|---|---|---|
| 22 | 078452AE9 | BUHV 2006-1A D | 4.486% | CDO | 7/5/2046 | 10,000,000 | 11,085,186 |
| 23 | 36224AAJ2 | GSCSF 2006-2A E | 4.434% | CDO | 6/8/2045 | 3,000,000 | 3,000,000 |
| 24 | 46426XAF3 | ICM 2006-3A D | 3.761% | CDO | 7/3/2046 | 2,022,472 | 2,188,644 |
| 25 | 46426XAD2 | ICM 2006-S1 B1L | 5.139% | CDO | 4/10/2041 | 10,000,000 | 10,283,803 |
| 26 | 45377MAN1 | INDE7 7A E | 4.885% | CDO | 1/10/2045 | 9,500,000 | 10,281,864 |
| 27 | 46906ZAA4 | KENT 2006-2A D | 4.274% | CDO | 7/6/2046 | 10,000,000 | 6,644,952 |
| 28 | 542666TAE9 | LHILL 2006-1A B | 4.911% | CDO | 10/7/2045 | 10,000,000 | 10,921,122 |
| 29 | 589372AF9 | MRCY 2006-3A G | 4.342% | CDO | 7/19/2046 | 10,000,000 | 10,079,914 |
| 30 | 61239QAH0 | MONT 2006-1A E | 2.750% | CDO | 7/16/2046 | 10,000,000 | 9,985,834 |
| 31 | 45071KBS2 | IXIS 2005-HE2 B3 | 2.059% | CDO | 5/25/2035 | 5,503,000 | 5,503,000 |

**Location of Sale.** The sale will be held at 600 Travis Street, Suite 5800, Houston, Texas 77002.

**To Place a Bid or for Additional Information,** in addition to any other means described below, qualified bidders should utilize the sale of the property listed above (including, for the avoidance of doubt, the disposition of a synthetic security by way of novation) may be made only by the best bidder who is also a qualified bidder and has the capacity to accept and perform as a qualified bidder and has the capacity to accept transfer of the synthetic security, and to obtain copies of an Investor/Counter-party Representation and Confidentiality Agreement and a bid sheet, contact Peter Badger, Ansel Eshelman, or Lee Oliver with Sanders Morris Harris at Lee.Oliver@smhgroup.com or (713) 993-4637.

**Disclaimer.** The Bank of New York Mellon Trust Company, National Association as trustee (the "Trustee") is authorized at such sale, if the Trustee deems it advisable or is required by applicable law to do so, to restrict (a) in the case of the securities, the prospective bidders on or purchasers of any of the above identified securities to those who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of any such assets or (b) in the case of the synthetic securities, the prospective counterparties to, any of the above identified synthetic securities to those who will represent and agree that they are entering into such transaction for its own account, (ii) to verify that each certificate for each security to be sold that has not been registered under the Securities Act of 1933 bears a legend substantially to the effect that such security has not been registered under the Securities Act of 1933 and may not be disposed of in violation of the provisions of said Act, (iii) to disclaim and to refuse to give any warranty (other than as to title), and (iv) to impose such other limitations or conditions in connection with any such sale or novation as the Trustee deems necessary or advisable.

---

GO WHERE TOP COMPANIES SEARCH FOR YOU

EXPLORE NEW OPPORTUNITIES NOW ON WSJ.COM/CAREERS, The Wall Street Journal's premier site for top-tier professionals. Here, you can register for unlimited access to up-to-date job listings, top recruiters, and important networking events. Plus, you'll find expert Journal articles and insightful discussion groups that can help perfect your search.

To get started, visit wsj.com/careers and click on POST YOUR RESUME. Follow the prompts, then prepare to hear from today's top recruiters.

THE WALL STREET JOURNAL.
Career Journal