# EXHIBIT B

GENERAL MOTORS CORPORATION

and

CITIBANK, N.A.,

Trustee

INDENTURE

Dated as of December 7,  1995

Debt Securities

# TABLE OF CONTENTS*

                                                                                    Page

Parties.................................................................................................... 1
Recitals.................................................................................................. 1

## ARTICLE ONE.
## DEFINITIONS.

Section 1.01.  Definitions............................................................... 1
    Additional Amounts................................................................. 2
    Authorized Newspaper............................................................. 2
    Board of Directors................................................................... 2
    Board Resolution..................................................................... 2
    Business Day........................................................................... 2
    Corporate Trust Office............................................................. 2
    Corporation............................................................................. 3
    Corporation Order................................................................... 3
    Coupon.................................................................................... 3
    Coupon Security...................................................................... 3
    Depository............................................................................... 3
    Event of Default...................................................................... 3
    Global Security........................................................................ 4
    Holder..................................................................................... 4
    Indenture................................................................................. 4
    Interest Payment Date.............................................................. 4
    Issue Date................................................................................ 4
    Maturity Date.......................................................................... 4
    Officers' Certificate................................................................. 4
    Opinion of Counsel................................................................. 5
    Original Issue Discount Securities........................................... 5
    outstanding............................................................................. 5
    Paying Agent........................................................................... 5
    person..................................................................................... 6

---

*The Table of Contents is not part of the Indenture.

Place of Payment.................................................................................. 6
Registered Security............................................................................... 6
Regular Record Date.............................................................................. 6
responsible officer................................................................................. 6
Security Register and Security Registrar.................................................. 6
Trust Indenture Act of 1939................................................................... 6
United States........................................................................................ 6
United States person.............................................................................. 7
Unregistered Security............................................................................ 7
U.S. Dollar........................................................................................... 7
Section 1.02  Notice Securityholders...................................................... 7

ARTICLE TWO.
ISSUE, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES.

Section 2.01. Amount Unlimited; Issuable in Series................................. 7
Section 2.02. Form of Trustee's Certificate of Authentication.................... 10
Section 2.03. Form, Execution, Authentication, Delivery and Dating of Securities.... 10
Section 2.04. Denominations; Record Date.............................................. 12
Section 2.05. Exchange and Registration of Transfer of Securities............. 13
Section 2.06. Temporary Securities........................................................ 14
Section 2.07. Mutilated, Destroyed, Lost or Stolen Securities.................... 15
Section 2.08. Cancellation..................................................................... 16
Section 2.09. Computation of Interest..................................................... 16
Section 2.l0.  Securities in Global Form.................................................. 16
Section 2.ll.  Medium-Term Securities.................................................... 16

ARTICLE THREE.
REDEMPTION OF SECURITIES.

Section 3.01. Redemption of Securities; Applicability of Article................. 18
Section 3.02. Notice of Redemption; Selection of Securities...................... 18
Section 3.03. Payment of Securities Called for Redemption........................ 19

ARTICLE FOUR.
PARTICULAR COVENANTS OF THE CORPORATION.

Section 4.01. Payment of Principal, Premium, Interest and Additional Amounts...... 20
Section 4.02. Offices for Notices and Payments, etc.................................. 20
Section 4.03. Provisions as to Paying Agent............................................. 21
Section 4.04. Luxembourg Publications.................................................... 22
Section 4.05. Statement by Officers as to Default...................................... 22
Section 4.06. Limitation on Liens........................................................... 22

Section 4.07. Limitation on Sale and Lease-Back........................................................... 24
Section 4.08. Definitions Applicable to Sections 4.06 and 4.07.................................. 24

ARTICLE FIVE.
SECURITYHOLDER LISTS AND REPORTS BY
THE CORPORATION AND THE TRUSTEE.

Section 5.01. Securityholder Lists............................................................... 26
Section 5.02. Preservation and Disclosure of Lists.................................... 26
Section 5.03. Reports by the Corporation................................................... 27
Section 5.04. Reports by the Trustee........................................................... 28

ARTICLE SIX.
REMEDIES ON DEFAULT.

Section 6.01. Events of Default.................................................................. 28
Section 6.02. Payment of Securities on Default; Suit Therefor................. 30
Section 6.03. Application of Moneys Collected by Trustee....................... 32
Section 6.04. Proceedings by Securityholders........................................... 33
Section 6.05. Remedies Cumulative and Continuing................................. 34
Section 6.06. Direction of Proceedings...................................................... 34
Section 6.07. Notice of Defaults................................................................. 35
Section 6.08. Undertaking to Pay Costs..................................................... 35

ARTICLE SEVEN.
CONCERNING THE TRUSTEE.

Section 7.01. Duties and Responsibilities of Trustee................................. 36
Section 7.02. Reliance on Documents, Opinions, etc................................. 37
Section 7.03. No Responsibility for Recitals, etc....................................... 38
Section 7.04. Ownership of Securities or Coupons.................................... 38
Section 7.05. Moneys to be Held in Trust.................................................. 38
Section 7.06. Compensation and Expenses of Trustee............................... 38
Section 7.07. Officers' Certificate as Evidence......................................... 39
Section 7.08. Conflicting Interest of Trustee............................................. 39
Section 7.09. Eligibility of Trustee............................................................ 39
Section 7.10. Resignation or Removal of Trustee...................................... 40
Section 7.11. Acceptance by Successor Trustee......................................... 41
Section 7.12. Successor by Merger, etc...................................................... 42
Section 7.13. Limitations on Rights of Trustee as Creditor...................... 42

## ARTICLE EIGHT.
## CONCERNING THE SECURITYHOLDERS.

Section 8.01. Action by Securityholders................................................. 42
Section 8.02. Proof of Execution by Securityholders............................. 43
Section 8.03. Who Are Deemed Absolute Owners.................................. 44
Section 8.04. Corporation-Owned Securities Disregarded...................... 44
Section 8.05. Revocation of Consents; Future Securityholders Bound................... 44
Section 8.06. Securities in a Foreign Currency....................................... 45

## ARTICLE NINE.
## SECURITYHOLDERS' MEETINGS.

Section 9.01. Purposes of Meetings....................................................... 45
Section 9.02. Call of Meetings by Trustee.............................................. 46
Section 9.03. Call of Meetings by Corporation or Securityholders...................... 46
Section 9.04. Qualification for Voting.................................................... 47
Section 9.05. Regulations..................................................................... 47
Section 9.06. Voting............................................................................. 47

## ARTICLE TEN.
## SUPPLEMENTAL INDENTURES.

Section 10.01. Supplemental Indentures without Consent of Securityholders..... 48
Section 10.02. Supplemental Indentures with Consent of Securityholders.......... 49
Section 10.03. Compliance with Trust Indenture Act: Effect of
             Supplemental Indentures........................................... 50
Section 10.04. Notation on Securities.................................................. 51

## ARTICLE ELEVEN.
## CONSOLIDATION, MERGER, SALE OR CONVEYANCE.

Section 11.01. Corporation May Consolidate, etc., on Certain Terms................... 51
Section 11.02. Successor Corporation Substituted................................. 51
Section 11.03. Opinion of Counsel to be Given Trustee........................ 52
Section 11.04  Certificate to Trustee.................................................... 52

## ARTICLE TWELVE.
## SATISFACTION AND DISCHARGE OF INDENTURE; UNCLAIMED MONEYS.

Section 12.0l. Discharge of Indenture.................................................................... 52
Section 12.02. Satisfaction, Discharge and Defeasance
    of Securities of any Series............................................................. 53
Section 12.03. Deposited Moneys to be Held in Trust by Trustee......................... 54
Section 12.04. Paying Agent to Repay Moneys Held............................................. 55
Section 12.05. Return of Unclaimed Moneys........................................................ 55

## ARTICLE THIRTEEN.
## IMMUNITY OF INCORPORATORS, STOCKHOLDERS, OFFICERS AND DIRECTORS.

Section 13.01. Indenture and Securities Solely Corporate Obligations................. 55

## ARTICLE FOURTEEN.
## MISCELLANEOUS PROVISIONS.

Section 14.01. Benefits of Indenture Restricted to Parties and Securityholders... 56
Section 14.02. Provisions Binding on Corporation's Successors........................... 56
Section 14.03. Addresses for Notices, etc............................................................. 56
Section 14.04. Evidence of Compliance with Conditions Precedent..................... 56
Section 14.05. Legal Holidays.............................................................................. 57
Section 14.06. Trust Indenture Act to Control...................................................... 57
Section 14.07. Execution in Counterparts............................................................. 57
Section 14.08. New York Contract....................................................................... 57
Section 14.09  Judgment Currency....................................................................... 57
Section 14.10  Severability of Provisions............................................................. 58
Section 14.11  Corporation Released From Indenture Requirements Under
    Certain Circumstances.................................................................. 58
Acceptance of Trust by Trustee........................................................................... 58
Testimonium........................................................................................................ 58
Signatures and Seals........................................................................................... 59
Acknowledgments............................................................................................... 59

THIS INDENTURE, dated as of the 7th day of December, 1995 between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (hereinafter sometimes called the "Corporation"), party of the first part, and Citibank, N.A., a banking association duly incorporated and existing under the laws of the United States of America, as trustee hereunder (hereinafter sometimes called the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven).

WITNESSETH:

WHEREAS, the Corporation deems it necessary to issue from time to time for its lawful purposes securities (hereinafter called the "Securities" or, in the singular, "Security") evidencing its unsecured indebtedness and has duly authorized the execution and delivery of this Indenture to provide for the issuance of the Securities in one or more series, unlimited as to principal amount, to bear such rates of interest, to mature at such time or times and to have such other provisions as shall be fixed as hereinafter provided; and

WHEREAS, the Corporation represents that all acts and things necessary to constitute these presents a valid indenture and agreement according to its terms, have been done and performed, and the execution of this Indenture has in all respects been duly authorized, and the Corporation, in the exercise of legal rights and power in it vested, is executing this Indenture;

NOW, THEREFORE:

In order to declare the terms and conditions upon which the Securities are authenticated, issued and received, and in consideration of the premises, of the purchase and acceptance of the Securities by the Holders thereof and of the sum of one dollar to it duly paid by the Trustee at the execution of these presents, the receipt whereof is hereby acknowledged, the Corporation covenants and agrees with the Trustee, for the equal and proportionate benefit of the respective Holders from time to time of the Securities, as follows:

ARTICLE ONE.
DEFINITIONS.

SECTION 1.01  <u>Definitions</u>.  The terms defined in this Section (except as herein otherwise expressly provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section. All other terms used in this Indenture which are defined in the Trust Indenture Act of 1939 or which are by reference therein defined in the Securities Act of 1933, as amended, shall have the meanings (except as herein otherwise expressly provided or unless the context otherwise clearly requires) assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture as originally executed. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole, including the Exhibits to this instrument, and not to any particular article, Section or other subdivision. Certain terms used wholly or principally within an Article of this Indenture may be defined in that Article.

**Additional Amounts:**

The term "Additional Amounts" shall mean any additional amounts which are required by a Security or by or pursuant to a Board Resolution under circumstances specified therein, to be paid by the Corporation in respect of certain taxes, assessments or governmental charges imposed on certain Holders of Securities and which are owing to such Holders of Securities.

**Authorized Newspaper:**

The term "Authorized Newspaper" shall mean a newspaper in an official language of the country of publication of general circulation in the place in connection with which the term is used. If it shall be impractical in the opinion of the Trustee to make any publication of any notice required hereby in an Authorized Newspaper, any publication or other notice in lieu thereof which is made or given with the approval of the Trustee shall constitute a sufficient publication of such notice.

**Board of Directors:**

The term "Board of Directors" shall mean the Board of Directors of the Corporation or the Finance Committee of the Corporation or any committee established by the Board of Directors or Finance Committee.

**Board Resolution:**

The term "Board Resolution" shall mean a resolution certified by the Secretary or Assistant Secretary of the Corporation to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

**Business Day:**

The term "Business Day" shall mean, with respect to any Security, a day (other than a Saturday or Sunday) that in the city (or in any of the cities, if more than one) in which amounts are payable as specified on the face of the form of such Security, is neither a legal holiday nor a day on which banking institutions are authorized or required by law, regulation or executive order to close.

**Corporate Trust Office:**

The term "Corporate Trust Office" means the office of the Trustee in New York, New York, at which at any particular time its corporate trust business shall be principally administered, which office at the date hereof is located at 120 Wall Street, New York, NY 10043, except that, with respect to presentation of Securities for payment or registration of transfers and exchanges and the location of the Security Registrar, such term means the office or agency of the Trustee in said city

at which at any particular time its corporate agency business shall be conducted, which at the date hereof is located at 111 Wall Street, New York, NY 10043.

**Corporation:**

The term "Corporation" shall mean the person named as the "Corporation" in the first paragraph of this instrument until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation.

**Corporation Order:**

The term "Corporation Order" shall mean any request, order or confirmation signed by a person designated pursuant to Section 2.03 to the Trustee, which may be transmitted by telex, by telecopy or in writing.

**Coupon:**

The term "Coupon" shall mean any interest coupon appertaining to a Security.

**Coupon Security:**

The term "Coupon Security" shall mean any Security authenticated and delivered with one or more Coupons appertaining thereto.

**Depository:**

The term "Depository" shall mean, with respect to the Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depository by the Corporation pursuant to Section 2.01 until a successor Depository shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depository" shall mean or include each Person who is then a Depository hereunder, and if at any time there is more than one such Person, "Depository" as used with respect to the Securities of any such series shall mean the Depository with respect to the Securities of that series.

**Event of Default:**

The term "Event of Default" shall mean any event specified as such in Section 6.01.

– 3 –

**Global Security:**

The term "Global Security" shall mean a Registered Security or an Unregistered Security evidencing all or part of a series of Securities issued to the Depository for such series in accordance with Section 2.03.

**Holder:**

The terms "Holder," "Holder of Securities," "Securityholder" or other similar terms, shall mean (a) in the case of any Registered Security, the person in whose name at the time such Security is registered on the registration books kept for that purpose in accordance with the terms hereof, and (b) in the case of any Unregistered Security, the bearer of such Security.

**Indenture:**

The term "Indenture" shall mean this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof.

**Interest Payment Date:**

The term "Interest Payment Date" when used with respect to any Security, means the Stated Maturity of an installment of interest on such Security.

**Issue Date:**

The term "Issue Date" shall mean, with respect to Securities of any tranche, whether evidenced by a Registered Security or an Unregistered Security, the date such Securities are authenticated pursuant to Section 2.03.

**Maturity Date:**

The term "Maturity Date" when used with respect to any Security, shall mean the stated maturity of the Security.

**Officers' Certificate:**

The term "Officers' Certificate" shall mean a certificate signed by the Chairman of the Board of Directors or the President or any Executive Vice President or any Senior Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer of the Corporation.

**Opinion of Counsel:**

The term "Opinion of Counsel" shall mean an opinion in writing signed by legal counsel, who may be an employee of or counsel to the Corporation, or who may be other counsel acceptable to the Trustee.

**Original Issue Discount Securities:**

The term "Original Issue Discount Securities" shall mean any Securities which are initially sold at a discount from the principal amount thereof and which provide upon Event of Default for declaration of an amount less than the principal amount thereof to be due and payable upon acceleration thereof.

**outstanding:**

The term "outstanding" when used with reference to Securities, shall, subject to the provisions of Section 7.08 and Section 8.04, mean, as of any particular time, all Securities authenticated and delivered by the Trustee under this Indenture, except

(a) Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

(b) Securities, or portions thereof, for the payment or redemption of which moneys in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent (other than the Corporation) or shall have been set aside and segregated in trust by the Corporation (if the Corporation shall act as its own Paying Agent), provided, that if such Securities are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as in Article Three provided, or provisions satisfactory to the Trustee shall have been made for giving such notice; and

(c) Securities in lieu of and in substitution for which other Securities shall have been authenticated and delivered pursuant to the terms of Article Two, unless proof satisfactory to the Trustee is presented that any such Securities are held by bona fide Holders in due course.

**Paying Agent:**

The term "Paying Agent" shall mean initially Citibank, N.A., and subsequently, any other paying agent appointed by the Corporation from time to time in respect of the Securities.

**person:**

The term "person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

**Place of Payment:**

The term "Place of Payment," when used with respect to the Securities of any series, means the place or places where the principal of (and premium, if any) and interest, if any, (and Additional Amounts, if any) on the Securities of that series are payable.

**Registered Security:**

The term "Registered Security" shall mean any Security registered on the Security registration books of the Corporation.

**Regular Record Date:**

The term "Regular Record Date" for the interest payable on any Interest Payment Date on the Securities of any series means the date specified for that purpose as contemplated by Sections 2.01 and 2.04.

**responsible officer:**

The term "responsible officer" when used with respect to the Trustee shall mean any officer assigned by the Trustee to administer its corporate trust matters.

**Security Register and Security Registrar:**

The term "Security Register" and "Security Registrar" shall have the respective meanings specified in Section 2.05.

**Trust Indenture Act of 1939:**

The term "Trust Indenture Act of 1939" shall mean the Trust Indenture Act of 1939, as amended.

**United States:**

The term "United States" shall mean the United States of America (including the States and the District of Columbia) and its possessions (including the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

**United States person:**

The term "United States person" has the meaning given to it by the Internal Revenue Code of 1986, as amended, and regulations thereunder, including U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D).

**Unregistered Security:**

The term "Unregistered Security" shall mean any Security other than a Registered Security.

**U.S. Dollar:**

The term "U.S. Dollar" or "$" means a dollar or other equivalent unit in such coin or currency of the United States of America as at the time shall be legal tender for the payment of public and private debts.

SECTION 1.02.  Notice to Securityholders.  Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of Securities of any event, such notice shall be sufficiently given if in writing and mailed, first class, postage prepaid, to each Holder at such Holder's address as it appears in the Securities Register, not later than the latest date, and not earlier than the earliest date prescribed for such notice.

Neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of a Security shall affect the sufficiency of such notice with respect to other Holders of Securities.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by the person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waivers of notice by Holders of Securities shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

ARTICLE TWO.
ISSUE, EXECUTION, REGISTRATION AND
EXCHANGE OF SECURITIES.

SECTION 2.01.  Amount Unlimited; Issuable in Series.  The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

- 7 -

The Securities may be issued in one or more series. There shall be established in or pursuant to a Board Resolution, and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Securities of any series:

(1) the designation of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of the series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Section 2.05, 2.06, 2.07, 3.02 or 10.04);

(3) the date or dates on which the principal of the Securities of the series is payable;

(4) the rate or rates, which may be fixed or variable, at which the Securities of the series shall bear interest, if any, and if the rate or rates are variable, the manner of calculation thereof, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable and, in the case of Registered Securities, the Regular Record Date for the determination of Holders of such Securities to whom interest is payable on any Interest Payment Date;

(5) the place or places (in addition to such place or places specified in this Indenture) where the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on Securities of the series shall be payable;

(6) the right, if any, of the Corporation to redeem Securities, in whole or in part, at its option and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series may be redeemed pursuant to any sinking fund or otherwise;

(7) the obligation, if any, of the Corporation to redeem, purchase or repay Securities of the series pursuant to any mandatory redemption, sinking fund or analogous provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation;

(8) if other than U.S. Dollars, the currency or currencies, or units based on or related to foreign currencies, including European Currency Units ("ECUs"), in which the Securities of the series shall be denominated and in which payments of principal of (premium, if any), interest, if any, on and any other amounts payable with respect to such Securities shall or may be payable; or in the manner in which such currency, currencies or composite currencies will be determined; and if the principal of (and premium, if any) and interest, if any, on the Securities of such series are to be payable, at the election of the Corporation or a holder thereof, in a currency or currencies, including

– 8 –

composite currencies, other than that or those in which the Securities are stated to be payable, the currency or currencies in which payment of the principal of (and premium, if any) and interest, if any, on Securities of such series as to which such election is made shall be payable, and the periods within which and the terms and conditions upon which such election is to be made;

(9) if the amount of principal of and interest on the Securities of the series may be determined with reference to an index based on a currency or currencies other than that in which the Securities of the series are denominated, the manner in which such amounts shall be determined;

(10) the denominations in which Securities of the series shall be issuable, if other than U.S.$1,000 or integral multiples thereof with respect to Registered Securities and denominations of U.S.$1,000 and U.S.$5,000 for Unregistered Securities;

(11) if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof or which the Trustee shall be entitled to claim pursuant to Section 6.02;

(12) whether the Securities of the series will be issuable as Registered Securities or Unregistered Securities (with or without Coupons), or both, any restrictions applicable to the offer, sale or delivery of Unregistered Securities and, if other than as provided for in Section 2.05, the terms upon which Unregistered Securities of the series may be exchanged for Registered Securities of such series and vice versa; and whether the Securities of the series shall be issued in whole or in part in the form of one or more Global Securities and, in such case, the Depository for such Global Security or Securities and whether any Global Securities of the series are to be issuable initially in temporary form and whether any Global Securities of the series are to be issuable in definitive form with or without Coupons and, if so, whether beneficial owners of interests in any such definitive Global Security may exchange such interests for Securities of such series and of like tenor of any authorized form and denomination and the circumstances under which and the place or places where any such exchanges may occur, if other than in the manner provided in Section 2.05;

(13) whether and under what circumstances the Corporation will pay Additional Amounts on the Securities of the series held by a person who is not a U.S. person in respect of any tax, assessment or governmental charge withheld or deducted and, if so, whether the Corporation will have the option to redeem such Securities rather than pay such Additional Amounts;

(14) the provisions, if any, for the defeasance of the Securities of the series;

(15) if the Securities of such series are to be issuable in definitive form (whether upon original issue or upon exchange of a temporary Security of such series) only upon receipt of certain certificates or other documents or satisfaction of other conditions, the form and terms of such certificates, documents or conditions;

(16) any trustees, depositaries, authenticating or paying agents, transfer agents, registrars or any other agents with respect to the Security of such series; and

(17) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture);

All Securities of any one series shall be substantially identical except (i) as to denomination, (ii) that Securities of any series may be issuable as either Registered Securities or Unregistered Securities and (iii) as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in any such indenture supplemental hereto.

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or any Assistant Secretary of the Corporation and delivered to the Trustee at the same time as or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

SECTION 2.02.  Form of Trustee's Certificate of Authentication.  The Trustee's certificate of authentication shall be in the following form:

[FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION]

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

CITIBANK, N.A.,
as Trustee,

By: _____
Authorized Signatory

SECTION 2.03.  Form, Execution, Authentication, Delivery and Dating of Securities.  The Securities of each series and the Coupons, if any, to be attached thereto, shall be in the forms approved from time to time by or pursuant to a Board Resolution, or established in one or more indentures supplemental hereto, and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the Corporation may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any stock exchange on which the Securities may be listed, or to conform to usage.

Each Security and Coupon shall be executed on behalf of the Corporation by its Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or its President or any

Executive Vice President or any Senior Vice President or any Vice President and by its Treasurer or any Assistant Treasurer or its Secretary or any Assistant Secretary, under its Corporate seal. Such signatures may be the manual or facsimile signatures of the present or any future such officers. The seal of the Corporation may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities.

Each Security and Coupon bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Corporation shall bind the Corporation, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Security, or the Security to which such Coupon appertains. At any time and from time to time after the execution and delivery of this Indenture, the Corporation may deliver Securities of any series executed by the Corporation and, in the case of Coupon Securities, having attached thereto appropriate Coupons, to the Trustee for authentication, together with a Corporation Order for the authentication and delivery of such Securities, and the Trustee in accordance with such Corporation Order shall authenticate and deliver such Securities. If the form or terms of the Securities or Coupons of the series have been established in or pursuant to one or more Board Resolutions as permitted by this Section and Section 2.01, in authenticating such Securities, and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 7.01) shall be fully protected in relying upon, an Opinion of Counsel stating:

(a) if the form of such Securities or Coupons has been established by or pursuant to Board Resolution as permitted by Section 2.01, that such form has been established in conformity with the provisions of this Indenture;

(b) if the terms of such Securities have been established by or pursuant to Board Resolution as permitted by Section 2.01, that such terms have been established in conformity with the provisions of this Indenture; and

(c) that each such Security and Coupon, when authenticated and delivered by the Trustee and issued by the Corporation in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and legally binding obligations of the Corporation, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and other laws of general applicability relating to or affecting the enforcement of creditors' rights and to general equity principles. If such form or terms has been so established, the Trustee shall not be required to authenticate such Securities if the issue of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and the Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Every Registered Security shall be dated the date of its authentication. Each Unregistered Security shall be dated as provided in or pursuant to the Board Resolution or supplemental indenture referred to in Section 2.01 or, if no such terms are specified, the date of its original issuance.

No Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture. Notwithstanding the foregoing, if any Security shall have been duly authenticated and delivered hereunder but never issued and sold by the Corporation, and the Corporation shall deliver such Security to the Trustee for cancellation as provided in Section 2.08 together with a written statement (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) stating that such Security has never been issued and sold by the Corporation, for all purposes of this Indenture such Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits of this Indenture.

If the Corporation shall establish pursuant to Section 2.01 that the Securities of a series are to be issued in whole or in part in the form of a Global Security, then the Corporation shall execute and the Trustee shall in accordance with this Section and the Corporation Order with respect to such series authenticate and deliver the Global Security that (i) shall represent and shall be denominated in an aggregate amount equal to the aggregate principal amount of outstanding Securities of such series to be represented by the Global Security, (ii) shall be registered, if in registered form, in the name of the Depository for such Global Security or the nominee of such Depository, and (iii) shall be delivered by the Trustee to such Depository or pursuant to such Depository's instructions.

Each Depository designated pursuant to Section 2.01 for a Global Security in registered form must, at the time of its designation and at all times while it serves as Depository, be a clearing agency registered under the Securities Exchange Act of 1934 and any other applicable statute or regulation.

SECTION 2.04.    Denominations; Record Date.    The Securities shall be issuable as Registered Securities or Unregistered Securities in such denominations as may be specified as contemplated in Section 2.01.  In the absence of any such specification with respect to any series, such Securities shall be issuable in the denominations contemplated by Section 2.01.

The term "record date" as used with respect to an Interest Payment Date (except a date for payment of defaulted interest) shall mean such day or days as shall be specified in the terms of the Registered Securities of any particular series as contemplated by Section 2.01; provided, however, that in the absence of any such provisions with respect to any series, such term shall mean (1) the last day of the calendar month next preceding such Interest Payment Date if such Interest Payment Date is the fifteenth day of a calendar month; or (2) the fifteenth day of a calendar month next preceding such Interest Payment Date if such Interest Payment Date is the first day of the calendar month.

The person in whose name any Registered Security is registered at the close of business on the Regular Record Date with respect to an Interest Payment Date shall be entitled to receive the interest payable and Additional Amounts, if any, payable on such Interest Payment Date notwithstanding the cancellation of such Registered Security upon any transfer or exchange thereof subsequent to such Regular Record Date and prior to such Interest Payment Date; provided, however, that if and to the extent the Corporation shall default in the payment of the interest and Additional Amounts, if any, due on such Interest Payment Date, such defaulted interest and Additional Amounts, if any, shall be paid to the persons in whose names outstanding Registered Securities are registered on a subsequent record date established by notice given by mail by or on behalf of the Corporation to the Holders of Securities of the series in default not less than fifteen days preceding such subsequent record date, such record date to be not less than five days preceding the date of payment of such defaulted interest.

SECTION 2.05.    Exchange and Registration of Transfer of Securities.    Registered Securities of any series may be exchanged for a like aggregate principal amount of Registered Securities of other authorized denominations of such series.  Registered Securities to be exchanged shall be surrendered at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, The City of New York, in accordance with the provisions of Section 4.02, and the Corporation shall execute and register and the Trustee shall authenticate and deliver in exchange therefor the Registered Security or Registered Securities which the Holder making the exchange shall be entitled to receive.

If the Securities of any series are issued in both registered and unregistered form, except as otherwise specified pursuant to Section 2.01, at the option of the Holder thereof, Unregistered Securities of any series may be exchanged for Registered Securities of such series of any authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4.02, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured Coupons and all matured Coupons in default thereto appertaining.  At the option of the Holder thereof, if Unregistered Securities of any series are issued in more than one authorized denomination, except as otherwise specified pursuant to Section 2.01, such Unregistered Securities may be exchanged for Unregistered Securities of such series of other authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4.02 or as specified pursuant to Section 2.01, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured Coupons and all matured Coupons in default thereto appertaining.  Unless otherwise specified pursuant to Section 2.01, Registered Securities of any series may not be exchanged for Unregistered Securities of such series.  Whenever any Securities are so surrendered for exchange, the Corporation shall execute, and the Trustee shall authenticate and deliver, the Securities which the Holder making the exchange is entitled to receive.

- 13 -

The Corporation (or its designated agent (the "Security Registrar")) shall keep, at such office or agency, a Security Register (the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Corporation shall register Securities and shall register the transfer of Registered Securities as in this Article Two provided. The Security Register shall be in written form or in any other form capable of being converted into written form within a reasonable time. At all reasonable times the Security Register shall be open for inspection by the Trustee. Upon due presentment for registration of transfer of any Registered Security of a particular series at such office or agency, the Corporation shall execute and the Corporation or the Security Registrar shall register and the Trustee shall authenticate and deliver in the name of the transferee or transferees a new Registered Security or Registered Securities of such series for an equal aggregate principal amount.

Unregistered Securities (except for any temporary bearer Securities) and Coupons shall be transferable by delivery.

All Securities presented for registration of transfer or for exchange, redemption or payment, as the case may be, shall (if so required by the Corporation or the Trustee) be duly endorsed by, or be accompanied by a written instrument or instruments of transfer in form satisfactory to the Corporation and the Trustee duly executed by, the Holder or his attorney duly authorized in writing.

No service charge shall be made for any exchange or registration of transfer of Registered Securities, but the Corporation may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection therewith.

The Corporation shall not be required to exchange or register a transfer of (a) any Registered Securities of any series for a period of fifteen days next preceding any selection of such Registered Securities of such series to be redeemed, or (b) any Security of any such series selected for redemption except in the case of any such series to be redeemed in part, the portion thereof not to be so redeemed.

Notwithstanding anything herein or in the terms of any series of Securities to the contrary, neither the Corporation nor the Trustee (which shall rely on an Officers' Certificate and an Opinion of Counsel) shall be required to exchange any Unregistered Security for a Registered Security if such exchange would result in adverse Federal income tax consequences to the Corporation (including the inability of the Corporation to deduct from its income, as computed for Federal income tax purposes, the interest payable on any Securities) under then applicable United States Federal income tax laws.

SECTION 2.06.  Temporary Securities.  Pending the preparation of definitive Securities of any series, the Corporation may execute and upon receipt of a Corporation Order the Trustee shall authenticate and deliver temporary Securities of such series (printed or lithographed).  Temporary Securities of any series shall be issuable in any authorized denominations, and in the form approved from time to time by or pursuant to a Board Resolution but with such omissions, insertions and

variations as may be appropriate for temporary Securities, all as may be determined by the Corporation. Every temporary Security shall be executed by the Corporation and be authenticated by the Trustee upon the same conditions and in substantially the same manner, and with like effect, as the definitive Securities. Without unnecessary delay the Corporation shall execute and shall furnish definitive Securities of such series and thereupon any or all temporary Registered Securities of such series may be surrendered in exchange therefor without charge at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, The City of New York, in accordance with the provisions of Section 4.02 and in the case of Unregistered Securities at any agency maintained by the Corporation for such purpose as specified pursuant to Section 2.01, and the Trustee shall authenticate and deliver in exchange for such temporary Securities an equal aggregate principal amount of definitive Securities of the same series of authorized denominations and in the case of such Securities that are Coupon Securities, having attached thereto the appropriate Coupons. Until so exchanged the temporary Securities of any series shall be entitled to the same benefits under this Indenture as definitive Securities of such series. The provisions of this Section 2.06 are subject to any restrictions or limitations on the issue and delivery of temporary Unregistered Securities of any series that may be established pursuant to Section 2.01 (including any provision that Unregistered Securities of such series initially be issued in the form of a single global Unregistered Security to be delivered to a depositary or agency of the Corporation located outside the United States and the procedures pursuant to which definitive Unregistered Securities of such series would be issued in exchange for such temporary global Unregistered Security).

SECTION 2.07. <u>Mutilated, Destroyed, Lost or Stolen Securities</u>. In case any temporary or definitive Security of any series or, in the case of a Coupon Security, any Coupon appertaining thereto, shall become mutilated or be destroyed, lost or stolen, the Corporation in the case of a mutilated Security or Coupon shall, and in the case of a lost, stolen or destroyed Security or Coupon may, in its discretion, execute, and upon receipt of a Corporation Order the Trustee shall authenticate and deliver, a new Security of the same series as the mutilated, destroyed, lost or stolen Security or, in the case of a Coupon Security, a new Coupon Security of the same series as the mutilated, destroyed, lost or stolen Coupon Security or, in the case of a Coupon, a new Coupon Security of the same series as the Coupon Security to which such mutilated, destroyed, lost or stolen Coupon appertains, bearing a number not contemporaneously outstanding, in exchange and substitution for the mutilated Security, or in lieu of and in substitution for the Security so destroyed, lost or stolen or in exchange for the Coupon Security to which such mutilated, destroyed, lost or stolen Coupon appertains, with all appurtenant Coupons not destroyed, lost or stolen. In every case the applicant for a substituted Security or Coupon shall furnish to the Corporation and to the Trustee such security or indemnity as may be required by them to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Corporation and to the Trustee evidence to their satisfaction of the destruction, loss or theft of such Security or Coupon, as the case may be, and of the ownership thereof. The Trustee may authenticate any such substituted Security and deliver the same upon the written request or authorization of any officer of the Corporation. Upon the issuance of any substituted Security or Coupon, the Corporation may require the payment of a sum sufficient to cover any tax or other governmental charge that may be

- 15 -

imposed in relation thereto and any other expenses connected therewith and in addition a further sum not exceeding ten dollars for each Security so issued in substitution. In case any Security or Coupon which has matured or is about to mature shall become mutilated or be destroyed, lost or stolen, the Corporation may, instead of issuing a substituted Security, pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated Security or Coupon) if the applicant for such payment shall furnish the Corporation and the Trustee with such security or indemnity as they may require to save them harmless and, in case of destruction, loss or theft, evidence to the satisfaction of the Corporation and the Trustee of the destruction, loss or theft of such Security or Coupon and of the ownership thereof.

Every substituted Security with, in the case of any such Security that is a Coupon Security, its Coupons, issued pursuant to the provisions of this Section by virtue of the fact that any Security or Coupon is destroyed, lost or stolen shall, with respect to such Security or Coupon, constitute an additional contractual obligation of the Corporation, whether or not the destroyed, lost or stolen Security or Coupon shall be found at any time, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities, and the Coupons appertaining thereto, duly issued hereunder.

All Securities and any Coupons appertaining thereto shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities and Coupons appertaining thereto and shall, to the extent permitted by law, preclude any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

SECTION 2.08.  Cancellation.  All Securities surrendered for payment, redemption, exchange or registration of transfer, and all Coupons surrendered for payment as the case may be, shall, if surrendered to the Corporation or any agent of the Corporation or of the Trustee, be delivered to the Trustee and promptly cancelled by it or, if surrendered to the Trustee, be cancelled by it, and no Securities or Coupons shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Indenture. The Trustee shall destroy cancelled Securities and Coupons and deliver a certificate of destruction to the Corporation.

SECTION 2.09.  Computation of Interest.  Except as otherwise specified as contemplated by Section 2.01 for Securities of any series, interest on the Securities of each series shall be computed on the basis of a 360-day year of twelve 30-day months.

SECTION 2.10.  Securities in Global Form.  If Securities of a series are issuable in global form, as specified as contemplated by Section 2.01, then, notwithstanding clause (9) of Section 2.01 and the provisions of Section 2.04, such Security shall represent such of the outstanding Securities of such series as shall be specified therein and may provide that it shall represent the aggregate amount of outstanding Securities from time to time endorsed thereon and that the aggregate amount of outstanding Securities represented thereby may from time to time be reduced to reflect

exchanges. Any endorsement of a Security in global form to reflect the amount, or any increase or decrease in the amount, of outstanding Securities represented thereby shall be made by the Trustee in such manner and upon instructions given by such Person or Persons as shall be specified therein or in the Corporation Order to be delivered to the Trustee pursuant to Section 2.03 or Section 2.06. Subject to the provisions of Section 2.03 and, if applicable, Section 2.06, the Trustee shall deliver and redeliver any Security in definitive global bearer form in the manner and upon written instructions given by the Person or Persons specified therein or in the applicable Corporation Order. If a Corporation Order pursuant to Section 2.03 or 2.06 has been, or simultaneously is, delivered, any instructions by the Corporation with respect to endorsement or delivery or redelivery of a Security in global form shall be in writing but need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel. The beneficial owner of a Security represented by a definitive Global Security in bearer form may, upon no less than 30 days written notice to the Trustee, given by the beneficial owner through a Depository, exchange its interest in such definitive Global Security for a definitive Bearer Security or Securities, or a definitive Registered Security or Securities, of any authorized denomination, subject to the rules and regulations of such Depository and its members. No individual definitive Bearer Security will be delivered in or to the United States.

The provisions of the last sentence of the third to the last paragraph of Section 2.03 shall apply to any Security represented by a Security in global form if such Security was never issued and sold by the Corporation and the Corporation delivers to the Trustee the Security in global form together with written instructions (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) with regard to the reduction in the principal amount of Securities represented thereby, together with the written statement contemplated by the last sentence of the third to the last paragraph of Section 2.03.

Unless otherwise specified as contemplated by Section 2.01, payment of principal of and any premium and any interest on any Security in definitive global form shall be made to the Person or Persons specified therein.

SECTION 2.11. <u>Medium-Term Securities</u>. Notwithstanding any contrary provision herein, if all Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver the Corporation Order, Officers' Certificate, supplemental indenture or Opinion of Counsel otherwise required pursuant to Sections 14.04, 2.01 2.03 and 2.06 at or prior to the time of authentication of each Security of such series if such documents are delivered at or prior to the authentication upon original issuance of the first Security of such series to be issued.

An Officers' Certificate or supplemental indenture, delivered pursuant to this Section 2.11 in the circumstances set forth in the preceding paragraph may provide that Securities which are the subject thereof will be authenticated and delivered by the Trustee on original issue from time to time upon the written order of persons designated in such Officers' Certificate or supplemental indenture and that such persons are authorized to determine, consistent with such Officers' Certificate or any applicable supplemental indenture such terms and conditions of said Securities as

are specified in such Officers' Certificate or supplemental indenture, provided that the foregoing procedure is acceptable to the Trustee.

## ARTICLE THREE.
## REDEMPTION OF SECURITIES.

SECTION 3.01.   <u>Redemption of Securities; Applicability of Article</u>.   Redemption of Securities of any series as permitted or required by the terms thereof shall be made in accordance with such terms and this Article; provided, however, that if any provision of any series of Securities shall conflict with any provision of this Article, the provision of such series of Securities shall govern.

The notice date for a redemption of Securities shall mean the date on which notice of such redemption is given in accordance with the provisions of Section 3.02 hereof.

SECTION 3.02.   <u>Notice of Redemption; Selection of Securities</u>.   The election of the Corporation to redeem any Securities shall be evidenced by an Officers' Certificate.   In case the Corporation shall desire to exercise the right to redeem all, or, as the case may be, any part of a series of Securities pursuant to the terms and provisions applicable to such series, it shall fix a date for redemption and shall mail a notice of such redemption at least thirty and not more than sixty days prior to the date fixed for redemption to the Holders of the Securities of such series which are Registered Securities to be redeemed as a whole or in part at their last addresses as the same appear on the Security Register.   Such mailing shall be by prepaid first class mail.   Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice.   In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Notice of redemption to the Holders of Unregistered Securities to be redeemed as a whole or in part, who have filed their names and addresses with the Trustee as described in Section 5.04, shall be given by mailing notice of such redemption, by first class mail, postage prepaid, at least thirty days and not more than sixty days prior to the date fixed for redemption, to such Holders at such addresses as were so furnished to the Trustee (and, in the case of any such notice given by the Corporation, the Trustee shall make such information available to the Corporation for such purpose).   Notice of redemption to any other Holder of an Unregistered Security of such series shall be published in an Authorized Newspaper in the Borough of Manhattan, The City of New York and in an Authorized Newspaper in London (and, if required by Section 4.04, in an Authorized Newspaper in Luxembourg), in each case, once in each of two successive calendar weeks, the first publication to be not less than thirty nor more than sixty days prior to the date fixed for redemption.   Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice.   In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated

for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Each such notice of redemption shall specify the provisions of such Securities under which such redemption is made, that the conditions precedent, if any, to such redemption have occurred, shall describe the same and the date fixed for redemption, the redemption price at which such Securities are to be redeemed, the Place of Payment, that payment will be made upon presentation and surrender of such Securities and, in the case of Coupon Securities, of all Coupons appertaining thereto maturing after the date fixed for redemption, that interest and Additional Amounts, if any, accrued to the date fixed for redemption will be paid as specified in said notice, and that on and after said date interest, if any, thereon or on the portions thereof to be redeemed will cease to accrue. If less than all of the Securities of a series are to be redeemed any notice of redemption published in an Authorized Newspaper shall specify the numbers of the Securities to be redeemed. In case any Security is to be redeemed in part only, the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that upon surrender of such Security, a new Security or Securities in principal amount equal to the unredeemed portion thereof will be issued of the same series.

At least one Business Day prior to the redemption date specified in the notice of redemption given for Unregistered Securities as provided in this Section and on or prior to the redemption date specified in the notice of redemption given for all Securities other than Unregistered Securities, the Corporation will deposit in trust with the Trustee or with one or more paying agents an amount of money sufficient to redeem on the redemption date all the Securities or portions of Securities so called for redemption at the appropriate redemption price, together with accrued interest, if any, to the date fixed for redemption. The Corporation will give the Trustee notice of each redemption at least forty-five days prior to the date fixed for redemption (unless a shorter notice is acceptable to the Trustee) as to the aggregate principal amount of Securities to be redeemed.

If less than all of the Securities of a series are to be redeemed, the Trustee shall select, pro rata or by lot or in such other manner as it shall deem reasonable and fair, the numbers of the Securities to be redeemed in whole or in part.

SECTION 3.03. <u>Payment of Securities Called for Redemption</u>. If notice of redemption has been given as above provided, the Securities or portions of Securities with respect to which such notice has been given shall become due and payable on the date and at the Place of Payment stated in such notice at the applicable redemption price, together with interest, if any (and Additional Amounts, if any), accrued to the date fixed for redemption, and on and after said date (unless the Corporation shall default in the payment of such Securities at the redemption price, together with interest, if any, and Additional Amounts, if any, accrued to said date) interest on the Securities or portions of Securities so called for redemption shall cease to accrue. On presentation and surrender of such Securities subject to redemption at said Place of Payment in said notice specified, the said Securities or the specified portions thereof shall be paid and redeemed by the Corporation at the applicable redemption price, together with interest, if any, and Additional Amounts, if any, accrued

thereon to the date fixed for redemption. Interest, if any (and Additional Amounts, if any), maturing on or prior to the date fixed for redemption shall continue to be payable (but without interest thereon unless the Corporation shall default in payment thereof) in the case of Coupon Securities to the bearers of the Coupons for such interest upon surrender thereof, and in the case of Registered Securities to the Holders thereof registered as such on the Security Register on the relevant record date subject to the terms and provisions of Section 2.04. At the option of the Corporation payment may be made by check to (or to the order of) the Holders of the Securities or other persons entitled thereto against presentation and surrender of such Securities.

If any Coupon Security surrendered for redemption shall not be accompanied by all appurtenant Coupons maturing after the date fixed for redemption, the surrender of such missing Coupon or Coupons may be waived by the Corporation and the Trustee, if there be furnished to each of them such security or indemnity as they may require to save each of them harmless.

Upon presentation of any Security redeemed in part only, the Corporation shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Corporation, a new Security or Securities, of authorized denominations, in aggregate principal amount equal to the unredeemed portion of the Security so presented of the same series.

ARTICLE FOUR.
PARTICULAR COVENANTS OF THE CORPORATION.

SECTION 4.01. Payment of Principal, Premium, Interest and Additional Amounts. The Corporation will duly and punctually pay or cause to be paid the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on each of the Securities at the place, at the respective times and in the manner provided in the terms of the Securities and in this Indenture. The interest on Coupon Securities (together with any Additional Amounts) shall be payable only upon presentation and surrender of the several Coupons for such interest installments as are evidenced thereby as they severally mature. The interest, if any, on any temporary bearer Securities (together with any Additional Amounts) shall be paid, as to the installments of interest evidenced by Coupons attached thereto, if any, only upon presentation and surrender thereof, and, as to the other installments of interest, if any, only upon presentation of such Securities for notation thereon of the payment of such interest. The interest on Registered Securities (together with any Additional Amounts) shall be payable only to the Holders thereof and at the option of the Corporation may be paid by mailing checks for such interest payable to or upon the order of such Holders at their last addresses as they appear on the Security Register for such Securities.

SECTION 4.02. Offices for Notices and Payments, etc. As long as any of the Securities of a series remain outstanding, the Corporation will designate and maintain, in the Borough of Manhattan, The City of New York, an office or agency where the Registered Securities of such series may be presented for registration of transfer and for exchange as in this Indenture provided, an office or agency where notices and demands to or upon the Corporation in respect of the Securities of such series or of this Indenture may be served, and an office or agency where the

Securities of such series may be presented for payment. The Corporation will give to the Trustee notice of the location of each such office or agency and of any change in the location thereof. In case the Corporation shall fail to maintain any such office or agency in the Borough of Manhattan, The City of New York, or shall fail to give such notice of the location or of any change in the location thereof, presentations may be made and notices and demands may be served at the corporate trust office of the Trustee in the Borough of Manhattan, The City of New York, and the Corporation hereby appoints the Trustee as its agent to receive all such presentations, notices and demands.

If Unregistered Securities of any series are outstanding, the Corporation will maintain or cause the Trustee to maintain one or more agencies in a city or cities located outside the United States (including any city in which such an agency is required to be maintained under the rules of any stock exchange on which the Securities of such series are listed) where such Unregistered Securities, and Coupons, if any, appertaining thereto may be presented for payment. No payment on any Unregistered Security or Coupon will be made upon presentation of such Unregistered Security or Coupon at an agency of the Corporation within the United States nor will any payment be made by transfer to an account in, or by mail to an address in, the United States, except, at the option of the Corporation, if the Corporation shall have determined that, pursuant to applicable United States laws and regulations then in effect such payment can be made without adverse tax consequences to the Corporation. Notwithstanding the foregoing, payments in U.S. Dollars with respect to Unregistered Securities of any series and Coupons appertaining thereto which are payable in U.S. Dollars may be made at an agency of the Corporation maintained in the Borough of Manhattan, The City of New York if such payment in U.S. Dollars at each agency maintained by the Corporation outside the United States for payment on such Unregistered Securities is illegal or effectively precluded by exchange controls or other similar restrictions.

The Corporation hereby initially designates Citibank, N.A., located at its Corporate Trust Office as the Security Registrar and as the office or agency of the Corporation in the Borough of Manhattan, The City of New York, where the Securities may be presented for payment and, in the case of Registered Securities, for registration of transfer and for exchange as in this Indenture provided and where notices and demands to or upon the Corporation in respect of the Securities of any series or of this Indenture may be served.

SECTION 4.03.  <u>Provisions as to Paying Agent</u>.  (a) Whenever the Corporation shall appoint a paying agent other than the Trustee with respect to the Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section:

(1) that it will hold sums held by it as such agent for the payment of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series in trust for the benefit of the Holders of the Securities of such series, or Coupons appertaining thereto, as the case may be, entitled thereto and will notify the Trustee of the receipt of sums to be so held,

- 21 -

(2) that it will give the Trustee notice of any failure by the Corporation (or by any other obligor on the Securities of such series) to make any payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series when the same shall be due and payable, and

(3) at any time during the continuance of any such default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such paying agent.

(b) If the Corporation shall act as its own paying agent, it will, on or before each due date of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of any series set aside, segregate and hold in trust for the benefit of the Holders of the Securities of such series entitled thereto a sum sufficient to pay such principal (and premium if any), interest, if any, or Additional Amounts, if any, so becoming due. The Corporation will promptly notify the Trustee of any failure to take such action.

(c) Anything in this Section to the contrary notwithstanding, the Corporation may, at any time, for the purpose of obtaining a satisfaction and discharge with respect to one or more or all series of Securities hereunder, or for any other reason, pay or cause to be paid to the Trustee all sums held in trust for such series by it or any paying agent hereunder as required by this Section, such sums to be held by the Trustee upon the trusts herein contained.

(d) Anything in this Section to the contrary notwithstanding, the agreement to hold sums in trust as provided in this Section is subject to the provisions of Sections 12.03 and 12.04.

SECTION 4.04.  Luxembourg Publications.  In the event of the publication of any notice pursuant to Section 3.02, 6.07, 7.10, 7.11, 9.02, 10.02 or 12.05, the party making such publication shall also, to the extent that notice is required so to be given to Holders of Securities of any series by applicable Luxembourg law or stock exchange regulation, make a similar publication the same number of times in Luxembourg.

SECTION 4.05.  Statement by Officers as to Default.  The Corporation will deliver to the Trustee, on or before a date not more than four months after the end of each fiscal year of the Corporation (which, on the date of execution hereof, ends on December 31) ending after the date hereof, commencing with the fiscal year ended in 1995, an Officers' Certificate, stating whether or not to the best knowledge of the signers thereof the Corporation is in default in the performance or observance of any of the terms, provisions and conditions of this Indenture to be performed or observed by it and, if the Corporation shall be in default, specifying all such defaults and the nature thereof of which they may have knowledge.

SECTION 4.06.  Limitations on Liens.  For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of the Corporation or any

– 22 –

Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary (whether such Principal Domestic Manufacturing Property, shares of stock or indebtedness are now owned or hereafter acquired) without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities (together with, if the Corporation shall so determine, any other indebtedness of the Corporation or such Manufacturing Subsidiary ranking equally with the Securities and then existing or thereafter created) shall be secured equally and ratably with such Debt, unless the aggregate amount of Debt issued or assumed and so secured by Mortgages, together with all other Debt of the Corporation and its Manufacturing Subsidiaries which (if originally issued or assumed at such time) would otherwise be subject to the foregoing restrictions, but not including Debt permitted to be secured under clauses (i) through (vi) of the immediately following paragraph, does not at the time exceed 20% of the stockholders' equity of the Corporation and its consolidated subsidiaries, as determined in accordance with generally accepted accounting principles and shown on the audited consolidated balance sheet contained in the latest published annual report to the stockholders of the Corporation.

The above restrictions shall not apply to Debt secured by (i) Mortgages on property, shares of stock or indebtedness of any corporation existing at the time such corporation becomes a Manufacturing Subsidiary; (ii) Mortgages on property existing at the time of acquisition of such property by the Corporation or a Manufacturing Subsidiary, or Mortgages to secure the payment of all or any part of the purchase price of such property upon the acquisition of such property by the Corporation or a Manufacturing Subsidiary or to secure any Debt incurred prior to, at the time of, or within 180 days after, the later of the date of acquisition of such property and the date such property is placed in service, for the purpose of financing all or any part of the purchase price thereof, or Mortgages to secure any Debt incurred for the purpose of financing the cost to the Corporation or a Manufacturing Subsidiary of improvements to such acquired property; (iii) Mortgages securing Debt of a Manufacturing Subsidiary owing to the Corporation or to another Subsidiary; (iv) Mortgages on property of a corporation existing at the time such corporation is merged or consolidated with the Corporation or a Manufacturing Subsidiary or at the time of a sale, lease or other disposition of the properties of a corporation as an entirety or substantially as an entirety to the Corporation or a Manufacturing Subsidiary; (v) Mortgages on property of the Corporation or a Manufacturing Subsidiary in favor of the United States of America or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any indebtedness incurred for the purpose of financing all or any part of the purchase price or the cost of construction of the property subject to such Mortgages; or (vi) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part of any Mortgage referred to in the foregoing clauses (i) to (v), inclusively; provided, however, that the principal amount of Debt secured thereby shall not exceed by more than 115% the principal amount of Debt so secured at the time of such extension, renewal or replacement and that such extension, renewal or replacement shall be limited to all or a part of the property which secured the Mortgage so extended, renewed or replaced (plus improvements on such property).