any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be; or

(B) the Corporation has properly fulfilled such other terms and conditions to the satisfaction and discharge as is specified, as contemplated by Section 2.01, as applicable to the Securities of such series, and

(2) the Corporation has paid or caused to be paid all other sums payable with respect to the outstanding Securities of such series, and

(3) The Corporation has delivered to the Trustee an Opinion of Counsel stating that (i) the Corporation has received from, or there has been published by, the Internal Revenue Service a ruling or (ii) since the date of execution of this Indenture, there has been a change in the applicable Federal income tax law, in either case to the effect that, and based thereon such opinion shall confirm that, the holders of the outstanding Securities and any related Coupons will not recognize income, gain or loss for Federal income tax purposes as a result of such deposit, defeasance and discharge and will be subject to Federal income tax on the same amounts and in the same manner and at the same times, as would have been the case if such deposit, defeasance and discharge had not occurred.

(4) the Corporation has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of the entire indebtedness on all outstanding Securities of any such series have been complied with.

Any deposits with the Trustee referred to in Section 12.02(l)(A) above shall be irrevocable and shall be made under the terms of an escrow trust agreement in form and substance satisfactory to the Trustee.  If any outstanding Securities of such series are to be redeemed prior to their stated maturity, whether pursuant to any optional redemption provisions or in accordance with any mandatory sinking fund requirement or otherwise, the applicable escrow trust agreement shall provide therefor and the Corporation shall make such arrangements as are satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Corporation.

SECTION 12.03.  <u>Deposited Moneys to be Held in Trust by Trustee</u>.  All moneys deposited with the Trustee pursuant to Section 12.01 or 12.02 shall be held in trust and applied by it to the payment, either directly or through any paying agent (including the Corporation acting as its own paying agent), to the Holders of the particular Securities and of any Coupons appertaining to such Securities for the payment or redemption of which such moneys have been deposited with the Trustee, of all sums due and to become due thereon for principal (and premium, if any), interest, if any, and Additional Amounts, if any.

SECTION 12.04.    Paying Agent to Repay Moneys Held.    In connection with the satisfaction and discharge of this Indenture with respect to Securities of any series all moneys with respect to such Securities then held by any paying agent under the provisions of this Indenture shall, upon demand of the Corporation, be repaid to it or paid to the Trustee and thereupon such paying agent shall be released from all further liability with respect to such moneys.

SECTION 12.05.    Return of Unclaimed Moneys.    Any moneys deposited with or paid to the Trustee or any paying agent for the payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on any Security and not applied but remaining unclaimed for two years after the date upon which such principal (and premium, if any), interest, if any, and Additional Amounts, if any, shall have become due and payable, shall, unless otherwise required by mandatory provisions of applicable escheat or abandoned or unclaimed property law, be repaid to the Corporation by the Trustee or such paying agent on demand, and the Holder of such Security or any Coupon appertaining to such Security shall, unless otherwise required by mandatory provisions of applicable escheat or abandoned or unclaimed property law, thereafter look only to the Corporation for any payment which such Holder may be entitled to collect and all liability of the Trustee or any paying agent with respect to such moneys shall thereupon cease; provided, however, that the Trustee or such paying agent, before being required to make any such repayment with respect to moneys deposited with it for any payment in respect of Unregistered Securities of any series, may at the expense of the Corporation cause to be published once, in an Authorized Newspaper in the Borough of Manhattan, The City of New York and once in an Authorized Newspaper in London (and, if required by Section 4.04, once in an Authorized Newspaper in Luxembourg), notice that such moneys remain and that, after a date specified therein, which shall not be less than thirty days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Corporation.

ARTICLE THIRTEEN.

IMMUNITY OF INCORPORATORS, STOCKHOLDERS,
OFFICERS AND DIRECTORS.

SECTION 13.01.    Indenture and Securities Solely Corporate Obligations.    No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any past, present or future incorporator, stockholder, officer or director, as such, of the Corporation or of any successor corporation, either directly or through the Corporation or any successor corporation, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders thereof and as part of the consideration for the issue of the Securities and Coupons.

ARTICLE FOURTEEN.

MISCELLANEOUS PROVISIONS.

SECTION 14.01.  <u>Benefits of Indenture Restricted to Parties and Securityholders</u>.  Nothing in this Indenture or in the Securities or Coupons, expressed or implied, shall give or be construed to give to any person, firm or corporation, other than the parties hereto and their successors and the Holders of the Securities or Coupons, any legal or equitable right, remedy or claim under this Indenture or under any covenant or provision herein contained, all such covenants and provisions being for the sole benefit of the parties hereto and their successors and of the Holders of the Securities or Coupons.

SECTION 14.02.  <u>Provisions Binding on Corporation's Successors</u>.  All the covenants, stipulations, promises and agreements in this  Indenture contained by or on behalf of the Corporation shall bind its successors and assigns, whether so expressed or not.

SECTION 14.03.  <u>Addresses for Notices, etc.</u>  Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders of Securities to or on the Corporation may be given or served by being deposited postage prepaid first class mail in a post office letter box addressed (until another address is filed by the Corporation with the Trustee), as follows: General Motors Corporation, 767 Fifth Avenue, New York, New York 10153.  Any notice, direction, request or demand by any Securityholder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made in writing at its Corporate Trust Office, which is at the date of this Indenture, 120 Wall Street, 13th Floor, New York, New York 10043, except that for purposes of presentation of Securities for payment or registration of transfer or exchange, such term means the office or agency which at any particular time its corporate agency business shall be conducted, which at the date of this Indenture is 111 Wall Street, New York, New York 10043.

SECTION 14.04.  <u>Evidence of Compliance with Conditions Precedent</u>.  Upon any application or demand by the Corporation to the Trustee to take any action under any of the provisions of this Indenture, the Corporation shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (1) a statement that the person making such certificate or opinion has read such covenant or condition;

(2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

SECTION 14.05.  <u>Legal Holidays</u>.  In any case where the date of maturity of any interest, premium or Additional Amounts on or principal of the Securities or the date fixed for redemption of any Securities shall not be a Business Day in a city where payment thereof is to be made, then payment of any interest, premium or Additional Amounts on, or principal of such Securities need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 14.06.  <u>Trust Indenture Act to Control</u>.  If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture by operation of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939 (an "incorporated provision"), such incorporated provision shall control.

SECTION 14.07.  <u>Execution in Counterparts</u>.  This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 14.08.  <u>New York Contract</u>.  This Indenture and each Security shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law.  Any claims or proceedings in respect of this Indenture shall be heard in a federal or state court located in the State of New York.

SECTION 14.09.  <u>Judgment Currency</u>.  The Corporation agrees, to the fullest extent that it may effectively do so under applicable law, that (a) if for the purposes of obtaining judgment in any court it is necessary to convert the sum due in respect of the principal of or interest on the Securities of any series (the "Required Currency") into a currency in which a judgment will be rendered (the "Judgment Currency"), the rate of exchange used shall be the rate at which in accordance with normal banking procedures the Trustee could purchase in The City of New York the Required Currency with the Judgment Currency on the date on which final unappealable judgment is entered, unless such day is not a New York Banking Day, then, to the extent permitted by applicable law, the rate of exchange used shall be the rate at which in accordance with normal banking procedures the Trustee could purchase in The City of New York the Required Currency with the Judgment Currency on the New York Banking Day preceding the day on which final unappealable judgment is entered and (b) its obligations under this Indenture to make payments in the Required Currency

– 57 –

(i) shall not be discharged or satisfied by any tender, or any recovery pursuant to any judgment (whether or not entered in accordance with subsection (a)), in any currency other than the Required Currency, except to the extent that such tender or recovery shall result in the actual receipt, by the payee, of the full amount of the Required Currency expressed to be payable in respect of such payments, (ii) shall be enforceable as an alternative or additional cause of action for the purpose of recovering in the Required Currency the amount, if any, by which such actual receipt shall fall short of the full amount of the Required Currency so expressed to be payable and (iii) shall not be affected by judgment being obtained for any other sum due under this Indenture.  For purposes of the foregoing, "New York Banking Day" means any day except a Saturday, Sunday or a legal holiday in The City of New York or a day on which banking institutions in The City of New York are authorized or required by law or executive order to close.

SECTION  14.10    Severability of Provisions.    Any prohibition, invalidity or unenforceability of any provision of this Indenture in any jurisdiction shall not invalidate or render unenforceable the remaining provisions hereto in such jurisdiction and shall not invalidate or render unenforceable such provisions in any other jurisdiction.

SECTION  14.11    Corporation Released from Indenture Requirements Under Certain Circumstances.  Whenever in this Indenture the Corporation shall be required to do or not to do anything so long as any of the Securities of any series shall be Outstanding, the Corporation shall, notwithstanding any such provision, not be required to comply with such provisions if it shall be entitled to have this Indenture satisfied and discharged pursuant to the provisions hereof, even though in either case the Holders of any of the Securities of that series shall have failed to present and surrender them for payment pursuant to the terms of this Indenture.

Citibank, N.A., the party of the second part, hereby accepts the trusts in this Indenture declared and provided, upon the terms and conditions hereinabove set forth.

IN WITNESS WHEREOF, GENERAL MOTORS CORPORATION, the party of the first part, has caused this Indenture to be signed and acknowledged by its Chairman of the Board or one of its Vice Chairmen of the Board or its President or one of its Executive Vice Presidents or one of its Senior Vice Presidents or one of its Vice Presidents or its Treasurer, and its Corporate seal to be affixed hereunto, and the same to be attested to by its Secretary or an Assistant Secretary; and CITIBANK, N.A., the party of the second part, has caused this Indenture to be signed, and its

corporate seal to be affixed hereunto, and the same to be attested by its duly authorized officers, all as of the day and year first above written.

[Corporate Seal]                                    GENERAL MOTORS CORPORATION

Attest:

By: _____

[Corporate Seal]                                    CITIBANK, N.A.

Attest:

By: _____

STATE OF NEW YORK        )
                                             ) ss.:
COUNTY OF NEW YORK )

On the _1ST_ day of ~~December, 1995~~ FEBRUARY 1996 before me personally came _JOHN D. FINNEGAN_, to me known, who, being by me duly sworn, did depose and say that he/she resides at _563 MILLER COURT, WYCKOFF, N.J._, that he/she is the _TREASURER_ of General Motors Corporation, one of the corporations described in and which executed the foregoing instrument; that he/she knows the seal of said Corporation; that the seal affixed to said instrument is such Corporate seal; that it was so

affixed by authority of the Board of Directors of said Corporation, and that he/she signed his/her name thereto by like authority.

[SEAL]

Notary Public

*JOHN RUSSELL*
Notary Public, State of New York
No. 31-4627519
Qualified in New York County
Commission Expires March 30, 1998

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

On the 7ᵗʰ day of ~~December, 1995~~ FEBRUARY, 1996 before me personally came ___R. DeFELICE___, to me known, who, being by me duly sworn, did depose and say that he/she resides at ___47-09 169th Street, Flushing, N. Y. 11358___, that he/~~she~~ is a ___Vice President___ of Citibank, N.A., one of the corporations described in and which executed the foregoing instrument; that he/she knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like authority.

[SEAL]

*PETER M. PAVLYSHIN*
Notary Public, State of New York
No. 41-4991297
Qualified in Queens County
Certificate Filed in New York County
Commission Expires January 27, 1998

Notary Public

**GENERAL MOTORS CORPORATION**

and

**CITIBANK, N.A.,**

**Trustee**

**FIRST SUPPLEMENTAL INDENTURE**

**Dated as of March 4, 2002**

(NY) 14014/643 INDENTURE/supplemental indenture doc

## SUPPLEMENTAL INDENTURE

FIRST SUPPLEMENTAL INDENTURE, dated as of March 4, 2002, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "**Corporation**"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "**Trustee**", which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

### WITNESSETH:

WHEREAS, the Corporation and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "**Indenture**"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Corporation (the "**Securities**"). Terms used in this First Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, this First Supplemental Indenture amends the Indenture, pursuant to Section 10.01 thereof, in order to permit the issuance of Securities that may be converted into any securities of any person.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree for the equal and proportionate benefit of the respective Holders from time to time hereafter of the Securities as follows:

### ARTICLE ONE

*Section 1.* Section 1.01 of the Indenture shall be amended by adding the following paragraph immediately prior to the definition of "Additional Amounts":

When used with respect to any Security, the words "**convert**", "**converted**" and "**conversion**" are intended to refer to the right of the Holder or the Corporation to convert or exchange such Security into or for securities or other property in accordance with such terms, if any, as may hereafter be specified for such Security as contemplated by Section 2.01, and these words are not intended to refer to any right of the Holder or the Corporation to exchange such Security for other Securities of the same series and like tenor pursuant to Section 2.05, 2.06, 2.07, or 10.04 or another similar provision of this Indenture, unless the context otherwise requires; and references herein to the terms of any Security that may be



converted mean such terms as may be specified for such Security as contemplated in Section 2.01.

*Section 2.* Section 1.01 of the Indenture shall be amended by adding the following paragraph immediately prior to the definition of "*Corporate Trust Office*":

The term "Conversion Agent" shall mean initially Citibank, N.A. and subsequently, any other conversion agent appointed by the Corporation from time to time in respect of the Securities.

*Section 3.* Section 2.01 of the Indenture shall be amended by deleting paragraphs (16) and (17) thereof and replacing them with the following paragraphs:

(16) any trustees, depositaries, authenticating and paying agents, transfer agents, registrars or any other agents with respect to the Security of such series;

(17) the terms, if any, on which Holders of Securities may convert or exchange Securities of the series into any securities of any person; and

(18) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

*Section 4.* Section 3.02 of the Indenture shall be amended by deleting Section 3.02 in its entirety and adding a new Section 3.02 to read as follows:

Section 3.02 <u>Notice of Redemption; Selection of Securities</u>. The election of the Corporation to redeem any Securities shall be evidenced by an Officers' Certificate. In case the Corporation shall desire to exercise the right to redeem all, or, as the case may be, any part of a series of Securities pursuant to the terms and provisions applicable to such series, it shall fix a date for redemption and shall mail a notice of such redemption at least thirty and not more than sixty days prior to the date fixed for redemption to the Holders of the Securities of such series which are Registered Securities to be redeemed as a whole or in part at their last addresses as the same appear on the Security Register. Such mailing shall be by prepaid first class mail. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice. In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

3

Notice of redemption to the Holders of Unregistered Securities to be redeemed as a whole or in part, who have filed their names and addresses with the Trustee as described in Section 5.04, shall be given by mailing notice of such redemption, by first class mail, postage prepaid, at least thirty days and not more than sixty days prior to the date fixed for redemption, to such Holders at such addresses as were so furnished to the Trustee (and, in the case of any such notice given by the Corporation, the Trustee shall make such information available to the Corporation for such purpose). Notice of redemption to any other Holder of an Unregistered Security of such series shall be published in an Authorized Newspaper in the Borough of Manhattan, The City of New York and in an Authorized Newspaper in London (and, if required by Section 4.04, in an Authorized Newspaper in Luxembourg), in each case, once in each of two successive calendar weeks, the first publication to be not less than thirty nor more than sixty days prior to the date fixed for redemption. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice. In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Each such notice of redemption shall specify the provisions of such Securities under which such redemption is made, that the conditions precedent, if any, to such redemption have occurred, shall describe the same and the date fixed for redemption, the redemption price at which such Securities are to be redeemed, the Place of Payment, that payment will be made upon presentation and surrender of such Securities and, in the case of Coupon Securities, of all Coupons appertaining thereto maturing after the date fixed for redemption, that interest and Additional Amounts, if any, accrued to the date fixed for redemption will be paid as specified in said notice, and that on and after said date interest, if any, thereon or on the portions thereof to be redeemed will cease to accrue. If less than all of the Securities of a series are to be redeemed any notice of redemption published in an Authorized Newspaper shall specify the numbers of the Securities to be redeemed. In case any Security is to be redeemed in part only, the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that upon surrender of such Security, a new Security or Securities in principal amount equal to the unredeemed portion thereof will be issued of the same series. In case any Security is convertible, the notice of redemption shall state the terms of conversion, the date on which the right to convert the

4

Security to be redeemed will terminate and the place or places where such Security may be surrendered for conversion.

At least one Business Day prior to the redemption date specified in the notice of redemption given for Unregistered Securities as provided in this Section and on or prior to the redemption date specified in the notice of redemption given for all Securities other than Unregistered Securities, the Corporation will deposit in trust with the Trustee or with one or more paying agents an amount of money sufficient to redeem on the redemption date all the Securities or portions of Securities so called for redemption, other than any Securities called for redemption on the redemption date which have been converted prior to the date of such deposit, at the appropriate redemption price, together with accrued interest, if any, to the date fixed for redemption. The Corporation will give the Trustee notice of each redemption at least forty-five days prior to the date fixed for redemption (unless a shorter notice is acceptable to the Trustee) as to the aggregate principal amount of Securities to be redeemed. In case of redemption of less than all Securities, the Issuer will give the Trustee sixty days prior notice.

If less than all of the Securities of a series are to be redeemed, the Trustee shall select, pro rata or by lot or in such other manner as it shall deem reasonable and fair, the numbers of the Securities to be redeemed in whole or in part.

If any Security selected for partial redemption is converted in part before termination of the conversion right with respect to the portion of the Security so selected, the converted portion of such Security shall be deemed (so far as may be) to be the portion selected for redemption. Securities which have been converted during a selection of Securities to be redeemed shall be treated by the Trustee as outstanding for the purpose of such selection.

If any Security called for redemption is converted, any money deposited with the Trustee or with any paying agent or so segregated and held in trust for the redemption of such Security shall (subject to any right of the Holder of such Security or any predecessor Security to receive interest as provided in the last paragraph of Section 4.01 or in the terms of such Security) be paid to the Corporation upon its request or, if then held by the Corporation, shall be discharged from such trust.

*Section 5.* The last paragraph of Section 3.03 shall be replaced with the following new Section 3.04:



Section 3.04. <u>Securities Redeemed in Part.</u>  Upon presentation of any Security redeemed in part only, the Corporation shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Corporation, a new Security or Securities, of authorized denominations, in aggregate principal amount equal to the unredeemed portion of the Security so presented of the same series.

*Section 6.*  The first sentence of Section 4.02 shall be deleted, and a new first sentence shall be added, to read in its entirety as follows:

As long as any of the Securities of a series remain outstanding, the Corporation will designate and maintain, in the Borough of Manhattan, The City of New York, an office or agency where the Registered Securities of such series may be presented for registration of transfer or exchange or for conversion as in this Indenture provided, an office or agency where notices and demands to or upon the Corporation in respect of the Securities of such series or of this Indenture may be served, and an office or agency where the Securities of such series may be presented for payment.

*Section 7.*  Section 6.08 shall be amended by adding the following at the end of the paragraph after the phrase "expressed in such Security":

(or, in the case of redemption, on or after the redemption date) or for the enforcement of the right to convert any Security in accordance with its terms.

*Section 8.*  Section 10.01 shall be amended by deleting the word "and" at the end of paragraph (f) thereof, deleting the period and adding the word "; and" at the end of paragraph (g) thereof, and adding the following paragraph (h):

(h)  to add to or change any of the provisions of this Indenture with respect to any Securities that by their terms may be converted into any securities of any person, in order to permit or facilitate the issuance, payment or conversion of such Securities.

*Section 9.*  Section 10.02 shall be amended by making provisions (ii) and (iii) in the first paragraph thereof into new provisions (iii) and (iv), respectively, and by adding a new (ii) as follows:

(ii)  in the case of Securities that are convertible, change in any manner adverse to the Holders (A) the amounts payable upon the redemption of the Securities, (B) the dates, if any, on which the Holders have the right to require the Corporation to repurchase the Securities, or the

6

transactions or events, if any, upon which the Holders have the right to require the Corporation to repurchase the Securities or the amounts payable upon the repurchase thereof or (C) the circumstances, if any, under which the Holders have the right to convert the Securities or the amounts receivable upon conversion thereof (but excluding from operation of this clause (ii) any adjustment to the conversion rate) or

*Section 10.* Section 14.05 of the Indenture shall be amended by deleting Section 14.05 in its entirety and adding a new Section 14.05 to read as follows:

Section 14.05. Legal Holidays. In any case where the date of maturity of any interest, premium or Additional Amounts on or principal of the Securities, the date fixed for redemption of any Securities or any date on which a holder has the right to convert his Security shall not be a Business Day in a city where payment thereof is to be made, then payment of any interest, premium or Additional Amounts on, or principal of such Securities need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

## ARTICLE TWO

*Section 1.* Recitals. The recitals contained herein shall be taken on the statements of the Corporation and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this First Supplemental Indenture.

*Section 2.* Counterparts. This First Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

*Section 3.* New York Contract. This Indenture and each Security shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this First Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

7

IN WITNESS WHEREOF, the parties hereto have caused this First
Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By: _Antoinette Skeete_
    Name: Antoinette Skeete
    Title: Assistant Secretary

CITIBANK, N.A., as Trustee

By: _____
    Name: Wafaa Orfy
    Title:   Vice President

## GENERAL MOTORS CORPORATION

### and

### CITIBANK, N.A. as

### Trustee

### SECOND SUPPLEMENTAL INDENTURE

### Dated as of November 5, 2004

### SUPPLEMENTAL INDENTURE

SECOND SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

### WITNESSETH:

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, and the First Supplemental Indenture, dated as of March 4, 2002. Terms used in this Second Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in March 2002, pursuant to the Indenture, the Company issued $1.15 billion of 4.50 percent Series A Convertible Senior Debentures due March 6, 2032 (the "Series A Debentures").

WHEREAS, the provisions of the Series A Debentures are set forth in the Global Note evidencing the Series A Debentures.

WHEREAS, the terms of the Series A Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series A Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series A Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. Section 1 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series A Debentures as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series A Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series A Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series A Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series A Debentures being converted as of any such Conversion Date."

Section 2. Section 2 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series A Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3. Section 5 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series A Debentures pursuant to this Section 5, the Company shall elect to pay for such Series A Debentures only in cash, subject to the conditions set forth herein. "

Section 4. Section 6 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series A Debentures pursuant to this Section 6, the Company shall elect to pay for such Series A Debentures only in cash, subject to the conditions set forth herein. "

Section 5. Recitals. The recitals contained herein shall be taken on the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Second Supplemental Indenture.

Section 6. Counterparts. This Second Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7. New York Contract. This Second Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Second Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

*   *   *   *   *

-2-

IN WITNESS WHEREOF, the parties hereto have caused this Second Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By: _____

Name: Walter G. Borst
Title: Treasurer

CITIBANK, N.A., as Trustee

By: _____

Name: Wafaa Orfy
Title: Vice President

**GENERAL MOTORS CORPORATION**

and

**CITIBANK, N.A. as**

**Trustee**

**THIRD SUPPLEMENTAL INDENTURE**

**Dated as of November 5, 2004**

**SUPPLEMENTAL INDENTURE**

THIRD SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

**WITNESSETH:**

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, and the Second Supplemental Indenture, dated as of the date hereof. Terms used in this Third Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in March 2002, pursuant to the Indenture, the Company issued $2.6 billion of 5.25 percent Series B Convertible Senior Debentures due March 6, 2032 (the "Series B Debentures").

WHEREAS, the provisions of the Series B Debentures are set forth in the Global Note evidencing the Series B Debentures.

WHEREAS, the terms of the Series B Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series B Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series B Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. Section 1 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series B Debentures as follows:

-1-

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series B Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series B Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series B Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series B Debentures being converted as of any such Conversion Date."

Section 2.  Section 2 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series B Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3.  Section 5 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series B Debentures pursuant to this Section 5, the Company shall elect to pay for such Series B Debentures only in cash, subject to the conditions set forth herein."

Section 4.  Section 6 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series B Debentures pursuant to this Section 6, the Company shall elect to pay for such Series B Debentures only in cash, subject to the conditions set forth herein."

Section 5.  Recitals. The recitals contained herein shall be taken on the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Third Supplemental Indenture.

Section 6.  Counterparts. This Third Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7.  New York Contract. This Third Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Third Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

* * * * *

CHICAGO_1165249_1

IN WITNESS WHEREOF, the parties hereto have caused this Third Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By: _____
Name: Walter G. Borst
Title: Treasurer

CITIBANK, N.A., as Trustee

By: _____
Name: Wafaa Orfy
Title: Vice President

**GENERAL MOTORS CORPORATION**

and

**CITIBANK, N.A. as**

**Trustee**

**FOURTH SUPPLEMENTAL INDENTURE**

**Dated as of November 5, 2004**

**SUPPLEMENTAL INDENTURE**

FOURTH SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

**WITNESSETH:**

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of the date hereof, and the Third Supplemental Indenture, dated as of the date hereof. Terms used in this Fourth Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in July 2003, pursuant to the Indenture, the Company issued $4.3 billion of 6.25 percent Series C Convertible Senior Debentures due July 15, 2033 (the "Series C Debentures").

WHEREAS, the provisions of the Series C Debentures are set forth in the Global Note evidencing the Series C Debentures.

WHEREAS, the terms of the Series C Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series C Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series C Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1.  Section 1 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series C Debentures as follows:

-1-

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series C Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series C Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series C Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series C Debentures being converted as of any such Conversion Date."

Section 2.  Section 2 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series C Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3.  Section 5 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series C Debentures pursuant to this Section 5, the Company shall elect to pay for such Series C Debentures only in cash, subject to the conditions set forth herein. "

Section 4.  Section 6 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series C Debentures pursuant to this Section 6, the Company shall elect to pay for such Series C Debentures only in cash, subject to the conditions set forth herein. "

Section 5.  Recitals. The recitals contained herein shall be taken on the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Fourth Supplemental Indenture.

Section 6.  Counterparts. This Fourth Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7.  New York Contract. This Fourth Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Fourth Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

* * * * *

CHICAGO_1165250_1

NOV 05 2004 13:04 PR NY TO CAPITAL 415 &635 TO 13462875669 P.08/09

IN WITNESS WHEREOF, the parties hereto have caused this Fourth Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By: _____

Name: Walter G. Borst

Title: Treasurer

CITIBANK, N.A., as Trustee

By: _____

Name: Wafaa Orfy

Title: Vice President

**GENERAL MOTORS CORPORATION**

and

**WILMINGTON TRUST COMPANY as**

**Trustee**

**SUPPLEMENTAL INDENTURE**

**Dated as of August 13, 2007**

SUPPLEMENTAL INDENTURE, dated as of August 13, 2007, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and WILMINGTON TRUST COMPANY, a banking corporation duly organized and existing under the laws of the State of Delaware (the "Trustee"). The term "Trustee" shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below).

**WITNESSETH:**

WHEREAS, the Company and the Citibank, N.A., as predecessor to the Trustee, have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of November 5, 2004, the Third Supplemental Indenture, dated as of November 5, 2004 and the Fourth Supplemental Indenture, dated as November 5, 2004. Terms used in this Supplemental Indenture that are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, Appendix A hereto identifies approximately $12.46 billion in U.S. dollar denominated non-convertible debt Securities, represented by 13 series of Securities, issued and outstanding under the Indenture.

WHEREAS, each series of Securities identified on Appendix A hereto was issued in the form of Global Securities (collectively, the "Global Notes").

WHEREAS, each of the Global Notes is subject to the Indenture and all indentures supplemental thereto, each Global Note containing a paragraph as follows:

"This Global Bond is one of a duly authorized issue of debentures, notes, bonds or other evidences of indebtedness of the Company (hereinafter called the "Securities") of the series hereinafter specified, all issued or to be issued under and pursuant to an indenture dated as of December 7, 1995 (herein called the "Indenture"), duly executed and delivered by the Company to Citibank, N.A. (herein called the "Trustee") to which Indenture and all indentures supplemental thereto reference is hereby made for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Securities;"

WHEREAS, certain provisions of the Indenture are described in each of the Global Notes.

WHEREAS, the first sentence of the fourth paragraph of each of the Global Notes contains a description of the vote of Holders required by Section 10.02 of the Indenture to enter into certain supplemental indentures, the text of which, up to the first semi-colon, is as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than 66 2/3% in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or

changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

WHEREAS, the Global Notes incorrectly summarize Section 10.02 of the Indenture with respect to the percentage in aggregate principal amount of Securities outstanding required to execute such supplemental indentures, the Indenture expressly providing for approval by a majority rather than 66 2/3% in aggregate principal amount of Securities outstanding, the text of the first paragraph of Section 10.02, up to the first semi-colon, being as follows:

"With the consent (evidenced as provided in Section 8.01) of the Holders of not less than a majority in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any Coupons appertaining to such Securities;"

WHEREAS, the Company desires to correct this description of the Indenture in the Global Notes.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein, which section provides that the Company may enter into a supplemental indenture:

"to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee; or to make such other provisions in regard to matters or questions arising under this Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any Coupons appertaining to such Securities;"

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. The first sentence of the fourth paragraph of each of the Global Notes (or other applicable portion) shall be and hereby is amended, without any further action on the part of the Company, the Trustee or the Holder of any Global Note, by deleting the phrase "66 2/3%" contained therein and replacing it with the phrase "a majority," so that the paragraph, up to the first semi-colon, shall read as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than a majority in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

Section 2. Recitals. The recitals contained herein shall be taken as the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Supplemental Indenture.

Section 3. Counterparts. This Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 4. New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____

Name:

Title:


WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as
Trustee

By:_____

Name:

Title:

Section 4. New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

**GENERAL MOTORS CORPORATION**

By:_____
Name:
Title:

**WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as
Trustee**

By:_____
Name:
Title:

**Geoffrey J. Lewis
Financial Services Officer**

## Appendix A

6 3/8% Notes due May 1, 2008
7.20% Notes due January 15, 2011
7.125% Senior Notes due July 15, 2013
7.70% Debentures due April 15, 2016
8.250% Debentures due July 15, 2023
8.10% Debentures due June 15, 2024
6 3/4% Debentures due May 1, 2028
8.375% Debentures due July 15, 2033
7.375% Senior Notes due May 15, 2048
7.25% Quarterly Interest Bonds due April 15, 2041
7.50% Senior Notes due July 1, 2044
7.375% Senior Notes due May 23, 2048
7.25% Senior Notes due February 15, 2052