June 29, 2009

Douglas M. Chapman,
13252 Fairmont Way
Santa Ana, CA 92705
Telephone: (714)838-9632



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------;
In re                                            ;   Chpter 11 Case No.
                                                 ;
General Motors Corp., *et al.*,                  ;   09-50026 (REG)
                                                 ;
                    Debtors.                     ;   (Jointly Administered)
                                                 ;
------------------------------------------------;

REPLY TO THE OMNIBUS REPLY OF THE DEBTORS TO OBJECTIONS TO DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), AND 365 AND FED. R. BANKR. P. 202, 6004, AND 6006.

I PRAY THE COURT WILL REJECT THE SALE OF THE DEBTOR PURSUANT TO THE MASTER SALE AND PURCHASE AGREEMENT WITH THE VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER.

I PRAY THE COURT WILL INSTEAD ORDER THE DEBTOR COMPANY, GENERAL MOTORS, TO FORMULATE A PLAN TO ALLOW THE STOCK AND BOND HOLDERS AN OPPORTUNITY TO REDEEM THEIR ASSETS AND COMPANY AS OUTLINED IN MY ORIGINAL OBJECTION AND THIS REPLY.

As a bond owner of 122 bonds, I object to the reply given by Weil, Gotshal & Manges LLP in their "Omnibus reply of the debtors to objections to debtor's motion . . . ".

My original objection was entered by the court as objection 545, and by reference I include those objections here.

The reply refers to their "Docket No. 1969" for the reply to my objection.

In their reply they suggest that the company is ". . . fragile business at issue, . . ." and then suggests there is a justification for selling the company at this early stage. Then, they suggest that the purchaser is the only one that has come forward, who is essentially the US Government itself, another arm of the Court. I wish to rely on the separation of powers guaranteed in the Constitution of the United States to cause the bankruptcy judge to see the issues independently.

Please note, there has been no effective effort to offer the company to any other purchaser, nor has there been any effort to suggest the current equity and bond holders could step-up and offer additional capital to redeem the company.

I believe the company has developed designs for their products that have great value. This great value may well be well in excess of the listed current debts. When the court allows the existing stock owners and bond owners to be either wiped-out entirely, or given a small equity stake in the company, then this great value is taken from one set of equity owners and unfairly given to another set of owners. In this case, our own government is using our tax money to set-up a wholly-owned entity that will receive these assets from some of its citizens, leaving those citizens little or nothing in compensation.

General Motors' current stock holders should be recognized as the current owners of the company, despite the events that have caused the entry into the court's hands. The court should recognize that the great value in the designs that exist in the company should remain as much as possible with the current owners, but also recognize that a plan is necessary to move forward that can make the company viable and realize the fruit of those designs.

By moving the bond owners to an equity stake in the company, the company will no longer have to service that debt. This is a large reason why the company has fallen into the hands of the court.

The Treasury's meddling in the process toward bankruptcy late last year only postponed the bankruptcy process at the great expense of the bond owners and stock owners. If any investment in the company should be wiped out, it is the late investment by the Treasury that should suffer this loss. Please be independent enough to admit this is a true statement by dismissing that investment.

Now, I don't own any stock in the company, but I believe those owners should continue to have a stake in the company. In my previous statement, I suggested a 100:1 ratio should be used to effect a reverse split of the company's stock. I still believe this is a reasonable ratio. I believe it will give a valuation of about $50 per share for the post split shares. Now bond owners can be converted to an equity position on the basis of that $50 valuation, resulting in 20 shares for each bond.

Finally, stock purchase rights, or warrants, could be issued to allow the owners of the equity a means of redeeming their company. The rights can have a fairly short time in which they could be exercised.

Also, rights could be offered to previous bond owners separately, or to bond owners and stock holders on some theory that recognizes the senior nature of the bond owner's position as compared to the stock owners. But I would leave this to some future negotiation or to the court's discretion.

Finally, the filers reference to the saving of jobs is important. Everyone wants the best outcome with relation to the jobs saved. My plan would suggest that jobs would be saved just as well as their plan.

The suggestion in the third paragraph under 1969 response is troubling, since it suggests the proposed sale to the Treasury is "... the product of arm's-length, good-faith negotiations." Nothing in their reply is further from the truth. The "sale" provides little to the previous owners, nor did it allow the previous owners any standing in negotiations, except to suggest that the management of GM represented the stock owners.

The purchase instead stinks to high heaven of political pay-back for the labor union's help in getting the current administration elected into office. This is a pure and simple obvious political conclusion that any independent thinking person armed with the facts would conclude. Why would an independent court approve this plan without recognizing this connection? Will the court label this statement by the purchaser's council as patently false? Clearly, it is a false statement.

Finally, I object to the treatment of the pension plan given in the purchase agreement. This plan is covered by a guarantee by a unit of the Federal Government, namely, the Pension Benefit Guarantee Corporation. Since the government has a desire to hold the pensioners whole, why not turn the plan over to the guarantor?

Going forward, the new company should offer a 401K plan to the company's workers. This is the dominant trend in the industry today. The new company should be ordered to start this plan as it leaves bankruptcy.

Another objection I have is the health insurance plan, and the attempt by the political process to make good past agreements for funding this plan. The plan itself seems to be a plan of self-insurance, allowing the company's assets to back the insurance plan rather then purchasing the plan from an actual insurance company. Had the insurance plan been

purchased and continually funded though premiums paid to the insurance company, then this would not be an issue today.

The company should be required to obtain health insurance from an actual insurance company with sufficient assets to back its insurance. The benefits should be a subject of negotiations with the employees or their union, but past agreements should be cancelled and set aside through the bankruptcy process. Perhaps the Obama administration would like the workers to be insured under the new federal health insurance plan when it becomes available.

Trade debts that have been accumulated by the company should be rescheduled for future payments, as normally occurs during this kind of bankruptcy process.

Finally, I have been given only a few hours to submit this objection, as I received the reply only this morning, June 29th, and the document shows that hearing is June 30th at 9:45 A.M. Eastern time in New York. So, I will be rushing this reply to you via Federal Express over-night service.

Respectively,

*Douglas M. Chapman*

Douglas M. Chapman
13252 Fairmont Way
Santa Ana, CA 92705-1863
Home phone: (714)838-9632