Date; 6/22/09

Honorable Robert E Gerber
United States Bankruptcy Court
One Bowling Green, New York, New York 10004-1408

Subject: : Objections to the relief sought in General Motors Corp, chapter 11
Case No 09-50026 (Reg)

Attachments:   1) Copy of the motion and Sale Procedures Order dated
June 2 2009 (Weil, Gotshal & Manges LLP)
2) General Motors Exchange Offer and Consent Solicitation
dated April 27 2009 to Avoid Chapter 11 Bankruptcy

Background Information:
I am a retired, 76 year old holder of $40,000 of General Motors 7.2% Bonds, due 15 January 2011 in my IRA account .. On 5/1 7/09 I received via mail a 195 page Prospectus for a General Motors Exchange offer of Bonds for Common Stock to avoid Bankruptcy (Ref; Item 2, above)--- that offer converted each $1000 value of GM bond debt to 225 shares of GM common stock plus an implicit consent by the creditor for removal of all creditor protections in the indenture applicable to GM debt responsibility. That translated to 9000 shares for my $40,000 investment. The deal breaker was spelled out on Prospectus page 160 under heading "Description of Charter Amendments" where a 100 to 1 reverse stock split was to be implemented at conclusion of the exchange offer. That would have reduced my 9000 shares to 90 shares requiring a future stock price of $445.00 just to break even.

Today, 6/22/09, I received Ref Item 1 (Above) with an" Objection Deadline" of June 19 2009 at 5:PM to the relief sought in the motion to be filed with the Clerk of the Bankruptcy court . That motion to sell substantially all of Debtors Assets and failure of any person to file a response or objection on or before the objection deadline shall be deemed an consent to the 363 transaction. .That "Objection Date" had  expired 3 days prior to receipt of the objection deadline.letter

Conclusion:
There seems to be a pattern of deception by those involved in this GM restructuring whether it be the exchange offer or current chapter 11 bankruptcy,-- deemed a 363 transaction, whatever that involves---- that if a creditor does not respond within an "Objection Deadline", which in reality had already expired upon his receipt of the notice, that the creditor has accepted without exception and concurred with the terms of all subsequent motions to be laid before the court. I'm writing this letter to your attention because I hope you are aware of this form of underhanded , back door, out of court view, deception to the parties involved. If Bernard Madoff was imprisoned for his fraudulent deception, I don't see where this pattern of deception is much different...

I have one overriding interest in this GM fiasco; that is to recover some or all of my retirement money that I lent them in good faith. I'm too old to start over again.and I

JUN 29 2009

don't like the way I'm being manipulated. It seems unbelieveable that a company can seek bankruptcy protection----- that during the process can sell off all of its assets to a shell entity, then walk away free and clear, leaving only massive piles of debt behind, immune to punitive legal action with no furthur obligation to its creditors, and the ability to restart the process all over again.   My trust in General Motors has already been shattered, so I hope this letter makes sense to you since you are the only one with the authority to bring some sanity to the issues,  uphold and correctly interprit the law; to judge fairly, and safeguard the individual's interest.

                                      Sincerely
                                     Robert E. Wilkes
                                     3744 Luxair Dr
                                     Hilliard, Ohio 43026

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :
**GENERAL MOTORS CORP.,** *et al.,*                         :    **09-50026 (REG)**
                                                            :
                          **Debtors.**                      :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

### NOTICE OF SALE HEARING TO SELL SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION HOLDINGS LLC, A U.S. TREASURY-SPONSORED PURCHASER

PLEASE TAKE NOTICE THAT upon the motion (the "Motion"), of General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"), dated June 1, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued an order dated June 2, 2009 (the "Sale Procedures Order"), among other things, (i) scheduling a hearing (the "Sale Hearing") to approve (a) the Master Sale and Purchase Agreement, dated as of June 1, 2009 (the "MPA"), by and among GM and its Debtor subsidiaries (collectively, the "Sellers") and Vehicle Acquisition Holdings LLC. (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"), with respect to the sale of substantially all the Debtors' assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances, and other interests, and subject to higher or better offers (the "363 Transaction"); (b) the assumption, assignment, and sale to the Purchaser pursuant to the MPA of certain executory contracts and unexpired leases of personal property and nonresidential real property (the "Assumable Executory Contracts"); and (c) the settlement agreement (the "UAW Retiree Settlement Agreement"), between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"); (ii) approving certain procedures for the submission and acceptance of any competing bids (the "Sale Procedures"); (iii) approving a procedure for the assumption, assignment, and sale to the Purchaser pursuant to the MPA of the Assumable Executory Contracts; (iv) approving the form and manner of notice of the Motion and the relief requested therein and of the Sale Hearing; and (v) setting a deadline for the filing of objections, if any, to the relief requested in the Motion.

A.      THE MASTER SALE AND PURCHASE AGREEMENT

The total consideration under the MPA for the sale of the Purchased Assets is equal to the sum of (i) a credit bid in the amount of the outstanding indebtedness owed to the Purchaser as of the closing pursuant to certain secured loans extended by the U.S. Treasury and Export Development Canada, less approximately $8 billion (estimated to be approximately $48.3 billion at July 31, 2009); (ii) the surrender of a warrant to purchase GM shares previously issued to the U.S. Treasury in connection with the secured loans extended by the U.S. Treasury; (iii) the

issuance to GM of shares of common stock of the Purchaser representing approximately 10% of the common stock of the Purchaser as of the closing of the sale; (iv) the issuance to GM of warrants to purchase up to 15% of the shares of common stock of the Purchaser on a fully diluted basis, with one half exercisable at any time prior to the seventh anniversary of issuance at an initial exercise price based on a $15 billion equity value of the Purchaser and the other half exercisable at any time prior to the tenth anniversary of issuance at an initial exercise price based on a $30 billion equity value of the Purchaser (GM can elect partial and cashless exercises of the warrants); and (v) the assumption by the Purchaser of certain assumed liabilities, all as set forth more fully in the MPA, a copy of which is annexed to the Motion as Exhibit "A." In addition, if the aggregate amount of allowed general unsecured claims against the Debtors exceeds $35 billion, as estimated by an order of the Bankruptcy Court (which the Debtors may seek at any time), GM will receive an additional 2% of the common stock of the Purchaser as of the closing of the sale.

B.     THE SALE HEARING

The Sale Hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Courtroom 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, on June 30, 2009, at 9:45 a.m. (Eastern Time). The Sale Hearing may be adjourned without notice by an announcement of the adjourned date at the Sale Hearing.

**RESPONSES OR OBJECTIONS, IF ANY, TO THE RELIEF SOUGHT IN THE MOTION SHALL BE FILED** with the Clerk of the Bankruptcy Court and served upon: (a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (b) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (c) the attorneys for the Creditors Committee; (d) Cleary Gottlieb Steen & Hamilton LLP, the attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (e) Cohen, Weiss and Simon LLP, the attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (f) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (g) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; and (h) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), **SO AS TO BE RECEIVED NO LATER THAN JUNE 19, 2009, AT 5:00 P.M. (EASTERN TIME) (the "Objection Deadline")**.

The failure of any person or entity to file a response or objection on or before the Objection Deadline shall be deemed a consent to the 363 Transaction and the other relief requested in the Motion, and shall bar the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Procedures, the Motion, the 363 Transaction, the approval of the UAW Retiree Settlement Agreement, and the Debtors' consummation of the 363 Transaction.

# General Motors Corporation

## $27,200,760,650

*Exchange Offers and Consent Solicitations for any and all of the Outstanding Notes set forth in the Original Prospectus*

EACH OF THE EXCHANGE OFFERS WILL EXPIRE AT 11:59 P.M., NEW YORK CITY TIME, ON MAY 26, 2009, UNLESS EXTENDED BY US. WITH RESPECT TO ANY SERIES OF OLD NOTES, TENDERS MAY NOT BE WITHDRAWN AFTER 11:59 P.M., NEW YORK CITY TIME, ON MAY 26, 2009, EXCEPT IN LIMITED CIRCUMSTANCES AS SET FORTH IN THE ORIGINAL PROSPECTUS.

*This prospectus supplement amends, modifies and supersedes certain information included in the prospectus dated April 27, 2009 (the "original prospectus") previously filed with the Securities and Exchange Commission relating to GM's offer to exchange 225 shares of GM common stock for each 1,000 U.S. dollar equivalent of principal amount (or accreted value as of the settlement date, if applicable) of old notes of each series set forth in the summary offering table on the inside front cover of the original prospectus, resulting in an aggregate offer of up to approximately 6.1 billion new shares of GM common stock, assuming full participation in the exchange offers, upon the terms and subject to the conditions set forth in the original prospectus (as supplemented hereby) and the related letter of transmittal (or form of electronic instruction notice, in the case of old notes held through Euroclear or Clearstream). In respect of the exchange offers for the old GM Nova Scotia notes, GM Nova Scotia is jointly making the exchange offers with GM. Terms used in this prospectus supplement have the same meaning as they do in the original prospectus.*

*This prospectus supplement should be read in conjunction with the original prospectus. Except for the changes described herein, all other terms of the exchange offers remain the same.*

*Holders of old notes who have already validly tendered their old notes pursuant to the exchange offers and who have not withdrawn such old notes do not need to take any further action to receive the exchange consideration on the settlement date. Holders of old notes who wish to tender but have not yet done so should follow the instructions set forth in "The Exchange Offers and Consent Solicitations—Procedures for Tendering Old Notes" section of the original prospectus.*

*Questions, requests for assistance and requests for additional copies of this prospectus supplement, the original prospectus, letters of transmittal and any other required documents may be directed to the Exchange Agent and Solicitation and Information Agent at its addresses and telephone numbers set forth on the back cover of this prospectus supplement.*

**See "Risk Factors" beginning on page 36 of the original prospectus and "Item 1A. Risk Factors" beginning on page 99 of our Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2009 (which report is incorporated by reference into the original prospectus) for a discussion of matters that you should consider with respect to the exchange offers and consent solicitations, as well as our Viability Plan and business.**

*Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the securities being offered in exchange for the old notes or this transaction, passed upon the merits or fairness of this transaction or passed upon the adequacy or accuracy of this prospectus supplement or the original prospectus. Any representation to the contrary is a criminal offense.*

*The securities being offered in exchange for the old notes are being offered and will be issued outside the United States only to holders who are "non-U.S. qualified offerees" (as defined in the "Non-U.S. Offer Restrictions" section of the original prospectus). Offers to holders in the United Kingdom, Austria, Belgium, France, Germany, Italy, Luxembourg, the Netherlands, Spain and Switzerland will be made only pursuant to the EU Approved Prospectus, which will incorporate the original prospectus (as supplemented hereby) and will indicate on the front cover thereof that it can be used for such offers. Holders outside of these jurisdictions (and the United States) are authorized to participate in the exchange offers and consent solicitations, as described in the "Non-U.S. Offer Restrictions" section of the original prospectus. In Canada, the exchange offers will only be made to non-US qualified offerees and only pursuant to the Canadian Offering Memorandum dated April 27, 2009, which incorporates the original prospectus (as supplemented hereby). Holders of old notes resident in Canada should contact the Solicitation and Information Agent for a copy of the Canadian Offering Memorandum.*

*Global Coordinators*

| MORGAN STANLEY | BANC OF AMERICA SECURITIES LLC |
|---|---|

| U.S. Lead Dealer Managers | | Non-U.S. Lead Dealer Managers | |
|---|---|---|---|
| CITI | J.P. MORGAN | BARCLAYS CAPITAL | DEUTSCHE BANK SECURITIES |

*Dealer Managers*

| UBS INVESTMENT BANK | WACHOVIA SECURITIES |
|---|---|

*The date of this prospectus supplement is May 19, 2009*