CARSON FISCHER, P.L.C.
Counsel for Karmann U.S.A., Inc.
4111 Andover Road, West-2nd Floor
Bloomfield Hills, MI  48302
(248) 644-4840
Robert A. Weisberg (P26698)
Patrick J. Kukla (P60465)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                      :
In re:                                                                :    Chapter 11
                                                                      :    Case No.: 09-50026 (REG)
GENERAL MOTORS CORPORATION, *et al.*,   :    (Jointly Administered)
                                                                      :
            Debtors.                                              :
-----------------------------------------------------------------x

**KARMANN U.S.A., INC.'S OBJECTION TO SECOND NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY AND UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY AND (II) CURE COSTS RELATED THERETO**

**Karmann U.S.A., Inc.** ("**Karmann U.S.A.**"), by and through its attorneys, Carson Fischer, P.L.C., hereby states its objection to the proposed assumption and assignment of executory contracts with Karmann U.S.A.

**INTRODUCTION**

1.  On June 1, 2009 (the "Petition Date"), General Motors Corporation ("GM") and its affiliated debtors (collectively, the "Debtors") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

3.     On June 1, 2009, the Debtors filed a motion [Docket No. 92] (the "**Sale Motion**") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances, (b) approval of certain procedures for the solicitation of bids with respect to the sale and (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the sale transaction.

4.     On June 2, 2009 the Court entered an order approving the Debtors' proposed bidding procedures and establishing procedures for the assumption and assignment of executory contracts and unexpired leases [Docket No. 274] (the "**Sale Procedures Order**").

5.     With respect to the assumption and assignment of executory contracts and unexpired leases, the Sale Procedures Order provides that the Debtors are to serve each non-debtor party to an executory contract or unexpired lease that the Debtors intend to assume and assign to the purchaser, a notice of assumption and assignment of executory contracts and unexpired leases (the "**Assignment Notice**").

6.     Each Assignment Notice is to set forth instructions for accessing information from a contract website (the "**Contract Website**") containing the contracts to be assumed and assigned as well as the proposed cure amounts.

7.     On June 9, 2009, Karmann U.S.A.'s parent entity, Wilhelm Karmann GmbH, received the *Debtors' Notice of (i) Debtors Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of*

2

*Nonresidential Real Property and (II) Cure amounts Related Thereto*[1] (the **"Karmann Assignment Notice"**), which stated the Debtors intention to assume and assign Debtors' agreements with Karmann U.S.A. (the **"Karmann Contracts"**). The Karmann Assignment Notice contained instructions and information for accessing the Contract Website.

8. Following receipt of the Karmann Assignment Notice, Karmann U.S.A. accessed the Contract Website and reviewed the list of Karmann Contracts to be assumed. As of the date of the Karmann Assignment Notice, the list of Karmann Contracts to be assumed, included purchase orders for tooling (the **"Tooling POs"**), production parts (the **"Production POs"**) and service parts (the **"Service POs"**). The proposed cure amount for the Karmann Contracts was $0.00. (the **"Proposed Cure Amount"**).

9. Although the various purchase orders were listed on the Contract Website separately, the Production POs and the Service POs, as further described herein, were one contract. Although the Karmann Assignment Notice had not been properly served on Karmann U.S.A., Karmann U.S.A. did not oppose the assumption of such contracts and did not object to the Karmann Assignment Notice.

10. Subsequent to receiving the Karmann Assignment Notice, Karmann U.S.A. received a second notice from the Debtors stating the Debtors intent to assume

---

[1] The Assignment Notice was dated June 5, 2009 and was sent to Karmann GmbH in Germany. Notwithstanding that the Assignment Notice seeks to assume contracts between GM and Karmann U.S.A., no notice was sent to Karmann U.S.A.

3

and assign **additional** executory contracts with Karmann U.S.A. (the **"Second Karmann Assignment Notice"**).

11. Unlike the Karmann Assignment Notice, the Second Karmann Assignment Notice was sent to Karmann U.S.A. and not to its parent entity Wilhelm Karmann GmbH. The Second Karmann Assignment Notice was dated June 15, 2009, however, Karmann U.S.A. did not receive the Second Assignment Notice until sometime after June 22, 2009.

12. The Second Karmann Assignment Notice, dated June 15, 2009, purports to allow recipients ten days from the date of the Second Karmann Assignment Notice in which to file objections. Karmann U.S.A.'s objection to the Second Karmann Assignment Notice is timely-filed.

13. Following receipt of the Second Karmann Assignment Notice, Karmann U.S.A. accessed the Contract Website and reviewed the revised list of Karmann Contracts to be assumed and assigned. The revised list of Karmann Contracts to be assumed included the Tooling POs and Service POs but no longer included the Production POs. Additionally, the Proposed Cure Amount was changed from $0.00 to $12,127.42 in favor of the Debtors.

**OBJECTION**

14. Karmann U.S.A. objects to the proposed assumption and assignment of the Karmann Contracts because certain of the Karmann Contracts are not executory contracts and, to the extent certain of the Karmann Contracts are executory contracts, the Debtors are obligated to assume all of the Karmann Contracts.

4

### A. The Tooling POs Are Not Executory Contracts

15. Section 365(a) of the Bankruptcy Code provides that a debtor, subject to court approval, "may assume or reject any executory contract or unexpired lease of the debtor." However, before a debtor can assume a contract pursuant to Section 365, it must first be established that an executory contract existed at the time of the bankruptcy filing. *In re Kong*, 162 B.R. 86, 91 (Bankr. E.D. N.Y. 1993).

16. The Bankruptcy Code does not define the term "executory contract." In construing the term "executory contract" the majority of courts, including the United States Court of Appeals for the Second Circuit, have adopted the "Countryman Definition" formulated by Professor Vern Countryman. See *In re U.S. Wireless Data, Inc.*, 547 F.3d 484, 488 (2d Cir. 2008). Under the Countryman Definition an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." See Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973). See also *U.S. Wireless Data* at 488 (2d Cir. 2008).

17. The Tooling POs are not executory contracts because Karmann U.S.A. has completed its performance under the Tooling POs and Karmann U.S.A. has no obligations remaining under the Tooling POs. "If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the [Debtor] to assume or [reject]." *Kong* at 91; *In re Romberger*, 150 B.R. 125, 126-127 (Bankr. M.D. Pa. 1992).

5

18.    Since the Tooling POs were not executory contracts as of the Petition Date, the Debtors cannot assume and assign the Tooling POs.

### B. If The Debtors Intend To Assume The Service POs, The Debtors Must Also Assume The Production POs

19.    Prior to the Petition Date, Karmann U.S.A. supplied the Debtors with production component parts pursuant to the Production POs, and in connection therewith, Karmann U.S.A. was obligated to supply Debtors with service parts pursuant to the Service POs. The agreement to supply service parts was integral to the supply of production component parts and both the providing of production component parts and service parts were components of a single contract.

20.    Pursuant to the Second Karmann Assignment Notice, the Debtors seek to assume the Tooling POs and Service POs. At this time, upon information and belief, the Debtors do not intend to assume the Production POs.

21.    If the Debtors intend to assume the Service POs, the Debtors must also assume the Production POs because the Service POs and Production POs are part of the same integrated contract. Where several contracts are part of an integrated whole, they must be assumed or rejected together. *In re Kopel*, 232 B.R. 57, 64 (Bankr. E.D. N.Y. 1999).

22.    Accordingly, if the Debtors intend to assume the Service POs, they must assume the entire contract and thus cannot not include the Production POs in its Second Karmann Assignment Notice.

6

23.     Because Debtors did not include the Production POs in the Second Karmann Assignment Notice, Karmann U.S.A. preserves its rights to object to any cure amount which Debtors may subsequently designate.

24.     Karmann U.S.A. reserves the right to amend this objection and reserves the right to assert additional objections to the proposed assumption and assignment of the Karmann Contracts at any hearing on this objection.

WHEREFORE, based upon the foregoing, Karmann U.S.A. requests that the Court condition the Debtors' assumption and assignment of the Service POs upon the assumption and assignment of the Production POs and grant Karmann U.S.A. such other and further relief as the Court deems just and proper.

CARSON FISCHER, P.L.C.
*Attorneys for Karmann U.S.A., Inc.*

By: /s/ Patrick J. Kukla
Robert A. Weisberg (P26698)
Patrick J. Kukla (P60465)
4111 Andover Road, West-2nd Flr.
Bloomfield Hills, MI 48302
Tele: (248) 644-4840

Dated: July 1, 2009