**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re** : Chapter 11 Case No.
 : 
**GENERAL MOTORS CORP.,** *et al.,* : 09-50026 (REG)
 : 
              **Debtors.** : (Jointly Administered)
 : 
---------------------------------------------------------------x

**STIPULATION AND AGREED ORDER**
**BETWEEN THE DEBTORS AND MANUFACTURERS**
**AND TRADERS TRUST COMPANY PROVIDING**
**FOR THE TURNOVER OF CERTAIN VEHICLES**

General Motors Corporation ("**GM**") and certain of its subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and Manufacturers and Traders Trust Company ("**M&T Bank**" and together with the Debtors, the "**Parties**"), by and through their respective undersigned counsel, hereby enter into this proposed Stipulation and Agreed Order (this "**Stipulation**") and stipulate as follows:

**RECITALS**

A. On June 1, 2009 (the "**Commencement Date**"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"). No trustee or examiner has been appointed. On or about June 3, 2009, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed in the Chapter 11 Cases.

B. Prior to the Petition Date, M&T Bank extended financing to Middletown Pontiac, Buick, GMC, LLC, a New York limited liability company ("**Middletown Pontiac**") for the

acquisition of vehicles, pursuant to the terms of a secure floor plan financing agreement dated August 11, 2004 (the "**Floor Plan Agreement**"). The financing is further evidenced by *inter alia*, a promissory note dated August 11, 2004, in the principal amount of $5,450,000.00, executed by Middletown Pontiac in favor of M&T Bank (the "**Grid Note**"). The indebtedness of Middletown Pontiac to M&T Bank under the Grid Note is secured by, *inter alia*, a security interest evidenced by a security agreement dated August 11, 2004 (the "**General Security Agreement**"), which security interest was perfected by the filing of a UCC-1 Financing Statement with the Secretary of State of the State of New York (the "**UCC-1 Financing Statement**").

C.     Middleton Pontiac used the floor plan financing to purchase vehicles, including, but not limited to, the twenty-seven motor vehicles (the "**Vehicles**") more particularly described on **Exhibit A** attached hereto.

D.     M&T Bank holds a perfected first priority security interest in and lien upon the Vehicles, which were manufactured by the Debtors, and sold by the Debtors to Middletown Pontiac.

E.     Pursuant to the terms of a Dealer Sales and Service Agreement (the "**Dealership Agreement**"), the Debtors may be required to provide "Termination Assistance" to their dealers, in this case Middletown Pontiac. That termination assistance includes the purchase of new and used motor vehicles in an amount equal to the net prices and charges paid to the Debtors and such payment may be paid to anyone having a security interest in the vehicles.

F.     Middletown Pontiac has closed its dealership location in Middletown, New York. In apparent reliance upon the anticipated termination assistance from Debtors, Debtors arranged

with Middletown Pontiac to have the Vehicles moved to Southern Auto Auction, an auction facility located in East Windsor, Connecticut ("**Southern Auto**").

G. Middletown Pontiac is in default of its obligations to M&T Bank, thereby entitling M&T Bank to take immediate possession of the Vehicles.

H. On June 19, 2009, M&T Bank filed a motion (the "**Lift Stay Motion**") seeking an order (i) vacating the automatic stay with regard to the Vehicles; or (ii) in the alternative, granting M&T Bank adequate protection of its interest in the Vehicles, or directing the turnover of the vehicles to M&T Bank by the Debtors.

I. As of the date of the filing of the Motion, the indebtedness of Middletown Pontiac to M&T Bank under the terms of the Grid Note was approximately $1,767,951.89, together with continuing interest, fees and costs (collectively, the "**Indebtedness**"). The Vehicles are believed to have a fair market value of $667,017.00. Therefore, the Debtors have no equity in the Vehicles. In addition, the Vehicles are not necessary for an effective reorganization of the Debtors' estates.

J. Subsequent to filing the Motion, the Debtors and M&T have determined that the Vehicles were delivered to Southern Auto for sale. Debtors have confirmed that all of the Vehicles continue to be in the possession of Southern Auto.

K. M&T Bank and Middletown Pontiac wish to maximize the return from the sale of the Vehicles, and to that end, have requested that the Vehicles be released to Middletown Pontiac or an approved designee for sale.

L. After review of the documents supporting M&T Bank's security interest in the Vehicles, the Debtors are satisfied that M&T Bank is entitled to turnover of the Vehicles.

M.     Following good faith negotiations, the Parties desire to settle this contested matter to avoid further costs of litigation on the terms set forth herein.

## STIPULATION

NOW THEREFORE, relying specifically on the foregoing recitals and in consideration of the mutual promises and covenants contained herein, the Parties hereby stipulate and agree as follows:

1.     The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of, this Stipulation.

2.     The Debtors shall cause all manufacturers' certificates of origin for the Vehicles to be delivered, so as to be received by M&T Bank, within seven (7) days after the Effective Date (as defined below); provided, however, that if, because of the current Summer shutdown of the Debtors' facilities, the requisite employees of the Debtors are not available to effectuate such delivery within the specified time frame, then the Debtors shall have an additional seven (7) days to deliver such certificates to M&T Bank.  The certificates of origin shall be delivered to M&T Bank at the following address: Kevin Snelbaker, Vice President, M & T Bank, PA 1 HM41, 213 Market Street, Harrisburg, PA.

3.     The Debtors agree that upon confirmation by M&T Bank to the Debtors of receipt of the certificates of origin and request that the Vehicles be released to Middletown Pontiac or a designee of Middletown Pontiac approved in writing by M&T Bank (the "**Authorized Designee**"), Debtors, by written request to Southern Auto, shall deliver such writing as is necessary to cause Southern Auto to turnover the Vehicles to Middletown Pontiac or Authorized Designee.

4. To the extent that any freight, transportation, storage or other charges are owing to Southern Auto for delivery and storage of the Vehicles, M&T Bank shall cause Southern Auto to be paid for such charges prior to release of the Vehicles.

5. The Debtors reserve their right to claim any proceeds realized from the sale of the Vehicles in excess of Middletown Pontiac's indebtedness to M&T Bank.

6. After all of the Vehicles have been sold, M&T Bank shall deliver a report outlining the proceeds of sale to counsel for the Debtors and counsel for the Committee.

7. This Stipulation is binding upon the Parties hereto and their respective successors and assigns.

8. This Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation.

9. This Stipulation is subject to approval by this Court and shall become effective on the date it is approved by this Court (the "**Effective Date**").

10. This Stipulation sets forth the entire understanding of the Parties hereto and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court. Accordingly, the Parties have independently verified all facts and/or conditions of facts that they have determined are necessary to their decision to enter into this Stipulation, and they have not relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or condition of facts.

11. This Stipulation was drafted by both Parties and therefore the rule of law that stands for the proposition that ambiguities contained within an agreement are to be construed against the drafter thereof is inapplicable.

12. The Parties represent and warrant to each other that the signatories to this Stipulation have full power and authority to enter into this Stipulation.

13. This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Stipulation may be executed by facsimile or PDF signatures, and such facsimile or PDF signatures will be deemed to be as valid as original signatures whether or not confirmed by delivering the original signatures in person, by courier or mail, although it is the Parties' intention to deliver original signatures after delivery of facsimile signatures.

Dated: July 1, 2009

| **KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP** | **WEIL, GOTSHAL & MANGES LLP** |
|---|---|
| /s/ Morton R. Branzburg | /s/ Joseph H. Smolinsky |
| Morton R. Branzburg, Esquire | Joseph H. Smolinsky, Esquire |
| 260 South Broad Street, Suite 400 | 767 Fifth Avenue |
| Philadelphia, PA 19102 | New York, New York 10153 |
| Telephone: (215) 568-6060 | Telephone: (212) 310-8000 |
| Facsimile: (215) 568-6603 | Facsimile: (212) 310-8007 |
| Attorneys for Manufacturers and Traders Trust Company | Attorneys for the Debtors and Debtors in Possession |

SO ORDERED
Dated: **_July 2, 2009_**
New York, New York

                                                _/s/ Robert E. Gerber_
                                           THE HONORABLE ROBERT E. GERBER
                                           UNITED STATES BANKRUPTCY JUDGE