Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, New York  10022
(212) 223-4000
Steven B. Eichel, Esq. (seichel@crowell.com)

Attorneys for Winkelmann Sp. z.o.o

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )<br>) |
| **GENERAL MOTORS CORP.,** *et al.,* | )<br>)   Case No. 09-50026 (REG)<br>) |
| Debtor. | )   **(Jointly Administered)**<br>) |

**OBJECTION OF WINKELMANN SP. Z.O.O TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF <u>NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO</u>**

Winkelmann Sp. z.o.o ("Winkelmann") hereby objects (the "Objection") to the Notice of (i) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related Thereto (the "Cure Notice"), and respectfully states as follows:

1. On June 1, 2009 (the "Petition Date"), General Motors Corporation and several of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").

2. On the Petition Date, the Debtors filed a Motion Pursuant to §§ 105, 363(b), (f), (k) and (m), and 365 of the Bankruptcy Code to (I) Approve the (A) Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings, LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II)

Schedule Sale Approval Hearing (the "Sale Motion").

3. On June 2, 2009, the Court entered an order relating to the Sale Motion, which, *inter alia*, established certain procedures for the Debtors to give affected parties notice that the Debtor intended to assume their executory contracts and/or unexpired leases, as well as the amounts the Debtors believed were required to "cure" defaults under those contracts and leases, as required by § 365(b) of the Bankruptcy Code (the "Cure Procedures").

4. In accordance with the Cure Procedures, the Debtors were to serve the Cure Notice upon the non-Debtor parties to the Debtors' executory contracts. The Cure Notice provides that objections to the proposed assumption and assignment of the assumable executory contracts, including objections to cure amount, were to be received no later than 10 days after the Cure Notice, which was dated June 5, 2009. However, the Cure Notice was sent to Winkelmann's parent company, Winkelmann Group GmbH & Co. KG ("Winkelmann Group"), in Ahlen, Germany, and was not received by Winkelmann Group until June 24, 2008, nine days after the deadline to file an objection. Subsequently, on June 30, 2009, Winkelmann Group received a second Cure Notice.

5. Attached to the first page of both the Cure Notices is a specific user id, password, and vendor id (collectively, the "Password") specific for each vendor so that each vendor can review the specific contract information relating to them. Without the Password, Winkelmann could not review the Debtor's proposed treatment and cure amount of its contracts that are to be assumed. Thus, the first possible day that Winkelmann could have reviewed the Debtor's proposed treatment of its contracts and proposed cure amount was June 24, 2009. Based on the above, Winkelmann objects to the Cure Notice on the ground of lack of due process because Winkelmann did not receive the Cure Notice prior to the deadline to object to the Debtor's Cure Notice. In any event, Winkelmann is submitting this objection within ten days of its receipt of the Cure Notice. As a result, there should be no issue about the timeliness of this Objection. Moreover, the purchaser is not harmed by the filing of

2

the Objection because the closing on the sale of the Debtor's assets has not occurred.

6. There may also be an issue as to whether the Cure Notice was timely served. The Debtor's call center has informed the undersigned counsel that a Cure Notice was sent on June 15, 2009. However, the call center was unable to advise whether the Cure Notice that was sent on June 15, 2009 was the first or second Cure Notice.

7. Winkelmann Group operates an affiliate in Poland, Winkelmann, which manufacturers various engine components for the automotive industry, such as dampers and flex-plates. Winkelmann entered into contracts with General Motors Corporation and certain affiliated entities. The website www.contractnotices.com (the "Website") identifies certain contracts to be assumed and proposed cure amounts with respect to these contracts. Winkelmann recognizes certain of the contracts listed on the Website, but does not recognize other contracts that are listed.

8. Winkelmann does not object, per se, to the assumption and assignment of its contracts to the purchaser of the Debtor's assets. Winkelmann does object, however, to the Debtors' proposed cure amounts because (i) the aggregate amount is incorrect and (ii) without further discussions between the Debtor and Winkelmann, Winkelmann can not determine the accuracy of the Debtor's proposed cure amounts because it does not have the necessary documentation, including documentation reflecting the SGM numbers, to verify the Debtor's proposed cure amounts. Based on Winkelmann's books and records, it disagrees with the proposed cure amount. The cure amount owed to Winkelmann is 2,965,657.52 Euros. A summary of the amounts due to Winkelmann is attached hereto as Exhibit A.

9. In contrast, the Debtors assert that Winkelmann owes the Debtors a total of $2,334,583.42, which appears to include a claim for 3,015,732.34 Euros for an alleged and disputed breach of contract. It is unclear whether the contract that purports to be breached is a contract with the Debtor or a non-Debtor affiliate. The website does not identify the applicable contract.

10. Winkelmann is prepared to confer in good faith to try to resolve the issues regarding the

3

outstanding cure amounts.

11. Winkelmann further objects to the adequacy and accuracy of the information on the Website because there is at least two tooling agreements with the Debtor that are not identified on the list of contracts to be assumed.

12. Winkelmann reserves (i) all of its rights and remedies under 11 U.S.C. §365 in this case and (ii) its right to supplement this Objection and amend its Cure Amount, including any postpetition performance by Winkelmann that gives rise to additional amounts owed under the contracts.

13. Notwithstanding the foregoing, Winkelmann further reserves its rights, in the event that the contracts are not assumed, to assert any claims for damages, which claims may include all amounts allowable under applicable law.

WHEREFORE, Winkelmann respectfully requests that the Court enter an order directing the Debtors (i) to identify the Winkelmann contracts with greater specificity; (ii) to assume and assign the Winkelmann contracts using Winkelmann's proposed cure amounts; and (iii) grant Winkelmann such other and further relief as this Court may deem just and proper.

Dated: July 2, 2009
    New York, NY

CROWELL & MORING LLP

By: /s/ Steven B. Eichel
Steven B. Eichel, Esq.
590 Madison Avenue, 20th Floor
New York, New York  10022
(212) 223-4000
seichel@crowell.com

*Attorneys for Winkelmann Sp. z.o.o*

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2009, I caused to be electronically served using the ECF system which will send notification of the filing of the OBJECTION OF WINKELMANN SP. Z.O.O TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO and I caused the same to be served by Federal Express on the following Parties:

Date:  July 2, 2009                                          Signed: */s/ Steven B. Eichel*
                                                                              Steven B. Eichel

General Motors Corporation                           Eric Fisher
Cadillac Building                                            Buzel Long
30009 Van Dyke Avenue                               380 Madison Avenue, 22nd Floor
Attn:  Warren Command Center/Mailcode: 480-260-114    New York, NY  10017
Warren, Michigan 48090-9025

Gordon Z. Novod                                          Diana G. Adams, Esq.
Kramer Levin Naftalis & Frankel LLP              Office of the US Trustee
1177 Avenue of the Americas                        Southern District of New York
New York, NY  10036                                   33 Whitehall Street, 21st Floor
                                                                     New York, NY  10004

Michael L. Schein, Esq.                                 Michael J. Edelman, Esq.
Vedder Price P.C.                                         Vedder Price P.C.
1633 Broadway, 47th Floor                      1633 Broadway, 47th Floor
New York, NY 10019                                    New York, NY 10019

John J. Rapisardi, Esq.                                 Matthew Feldman, Esq.
Caldwalader, Wickersham & Taft LLP            US Treasury
1 World Financial Center                               1500 Pennsylvania Avenue NW
New York, NY  10281                                   Room 2312
                                                                     Washington, DC 20220

Joseph H. Smolinsky, Esq.                           Stephen Karotkin Esq.
Weil, Gotshal & Manges LLP                        Weil, Gotshal & Manges LLP
767 5th Avenue                                      767 5th Avenue
New York, NY 10153                                    New York, NY 10153

Harvey R. Miller, Esq.
Weil, Gotshal & Manges LLP
767 5th Avenue
New York, NY 10153

NYIWDMS: 11148169_2