| | |
|---|---|
| LEV L. DASSIN<br>Acting United States Attorney for the<br>Southern District of New York<br>By:   DAVID S. JONES<br>        JEFFREY S. OESTERICHER<br>        MATTHEW L. SCHWARTZ<br>        JOSEPH N. CORDARO<br>Assistant United States Attorneys<br>86 Chambers Street, Third Floor<br>New York, New York 10007<br>Telephone: (212) 637-2800<br>Facsimile: (212) 637-2750 | **Hearing Date: July 7, 2009**<br>**Hearing Time: 7:00 PM** |

- and -

John J. Rapisardi, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x
                                                                      ::
In re:                                                                ::  Chapter 11
                                                                      ::
GENERAL MOTORS CORP., *et al.*,                                       ::  Case No. 09-50026 (REG)
                                                                      ::
                                        Debtors.                      ::  (Jointly Administered)
---------------------------------------------------------------------- x


**THE UNITED STATES OF AMERICA'S OBJECTION TO CERTAIN APPELLANTS'
MOTIONS FOR AN ORDER CERTIFYING THE SALE ORDER FOR IMMEDIATE
APPEAL TO THE UNITED STATES COURT OF APPEALS, PURSUANT TO 28 U.S.C.
§ 158(d)(2), OR IN THE ALTERNATIVE FOR A STAY OF THE SALE ORDER,
<u>PURSUANT TO FED. R. BANKR. P. 8005</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

OBJECTION ....................2

A. This Court Should Not Certify A Direct Appeal to the Second Circuit ....................2

B. This Court Should Not Grant A Stay Pending Any Appeal ....................5

C. Any Stay Should Be Conditioned On A Substantial Bond ....................7

CONCLUSION ....................9

# TABLE OF AUTHORITIES

*Cases*

*In re Adelphia Communications Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) ................................................................................... 6, 7, 8

*In re Chrysler, LLC*,
    405 B.R. 84 (Bankr. S.D.N.Y. 2009),
    *aff'd*, No. 09-2311-bk (2d Cir. June 5, 2009) ................................................... 1, 2, 3, 4, 5, 6

*EPlus, Inc. v. Katz (In re Metiom, Inc.)*,
    318 B.R. 263 (S.D.N.Y. 2004) ............................................................................................ 6

*Hirschfeld v. Board of Elections in the City of N.Y.*,
    984 F.2d 35 (2d Cir. 1993) ................................................................................................. 3

*In re Max Sugarman Funeral Home, Inc.*,
    94 B.R. 16 (Bankr. D.R.I. 1988) ........................................................................................ 8

*In re Overmyer*,
    53 B.R. 952 (Bankr. S.D.N.Y. 1985) ................................................................................. 6

*In re Stone Barn Manhattan LLC*,
    398 B.R. 359 (Bankr. S.D.N.Y. 2008) ............................................................................... 3

*In re Swift Aire Lines, Inc.*,
    21 B.R. 12 (9th Cir. BAP 1982) ........................................................................................ 8

*Weber v. United States Trustee*,
    484 F.3d 154 (2d Cir. 2007) ........................................................................................... 3, 4

*Statutes and Rules*

11 U.S.C. § 363 ........................................................................................................................... 3

11 U.S.C. § 1141(d)(3) ............................................................................................................... 3

28 U.S.C. § 158(a) ...................................................................................................................... 2

28 U.S.C. § 158(d)(2) .............................................................................................................. 2, 4

Fed. R. App. P. 28(j) .................................................................................................................. 4

Fed. R. Bankr. P. 8005 ............................................................................................................... 5

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCT JUDGE:

The United States of America, on behalf of the United States Department of the Treasury ("Treasury" or the "Government"), by its attorney Lev L. Dassin, Acting United States Attorney for the Southern District of New York, respectfully submits this objection in response to (a) the *Motion of the Individual Accident Litigants for an Order Certifying the Sale Order for Immediate Appeal to the United States Court of Appeals Pursuant to 28 U.S.C. § 158(d)(2) on the Issue of Successor Liability* (the "**Tort Litigants' Motion**") [docket no. 2990]; (b) *The Ad Hoc Committee of Asbestos Personal Injury Claimants' Motion for an Order Certifying Sale Order for Immediate Appeal to the United States Court of Appeals, Pursuant to 28 U.S.C. § 158(d)(2) or in the Alternative for a Stay of the Sale Order, Pursuant to Fed. R. Bankr. P. 8005* (the "**Asbestos Litigants' Motion**") [docket no. 2989]; and (c) the *Joinder of Mark Buttita, as Personal Representative of Salvatore Buttita, to the Ad Hoc Committee of Asbestos Personal Injury Claimants' Motion for an Order Certifying Sale Order for Immediate Appeal to the United States Court of Appeals, Pursuant to 28 U.S.C. § 158(d)(2) or in the Alternative for a Stay of the Sale Order, Pursuant to Fed. R. Bankr. P. 8005* [docket no. 3013].[1]

## PRELIMINARY STATEMENT

1. As this Court concluded in the Sale Opinion, the successor liability arguments advanced by the Individual Accident Litigants and the Asbestos Committee (collectively, the "**Appellants**") were conclusively decided by Judge Gonzalez in his decision in *Chrysler*. That decision — at least the "bottom line" conclusion that a transaction under section 363 of the Bankruptcy Code permits a purchaser to acquire assets free and clear of tort liability

---

[1] Unless specifically defined, capitalized terms have the same meaning as in the Sale Motion [docket no. 92], the Sale Order and the annexed amended Master Sales and Purchase Agreement [docket no. 2968], the Sale Opinion [docket no. 2967], and the Tort Litigants' and Asbestos Litigants' Motions.

and other *in personam* claims — became the law of this Circuit when the Court of Appeals affirmed for "substantially the reasons" stated by Judge Gonzalez. That being so, there is no reason either to certify an appeal of the very same issue directly to the Second Circuit, or to stay the effectiveness of the Sale Order — thereby delaying the emergence of New GM and further eroding the value of the enterprise. Certainly, any stay pending appeal must be conditioned upon a substantial supersedeas bond to protect New GM and the debtors' stakeholders from the potentially disastrous consequences if the sale does not close promptly.

## **OBJECTION**

### A.   THIS COURT SHOULD NOT CERTIFY A DIRECT APPEAL TO THE SECOND CIRCUIT

2.   28 U.S.C. § 158(a) provides, and experience confirms, that appeals from this Court ordinarily are taken in the first instance to the district court. Against that backdrop, section 158(d)(2) provides:

> (A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court [or] the district court . . . , acting on its own motion or on the request of a party to the judgment, order, or decree . . . , or all the appellants and appellees (if any) acting jointly, certify that –
>
> > (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> >
> > (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> >
> > (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding to which the appeal is taken;
>
> and if the court of appeals authorizes the direct appeal . . . .

28 U.S.C. § 158(d)(2).

3. Accordingly, a bankruptcy or district court may certify an order for direct appeal to the court of appeals if the appeal "raise[s] controlling questions of law, concern[s] matters of public importance, and arise[s] under circumstances where a prompt, determinative ruling might avoid needless litigation." *Weber v. United States Trustee*, 484 F.3d 154, 158 (2d Cir. 2007). Even if a lower court certifies an order for direct appeal, "the Circuit Court retains complete control over the decision whether to accept a case." *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 368 (Bankr. S.D.N.Y. 2008).

4. Applying these standards, there is no basis on which to certify a direct appeal to the Second Circuit on the narrow question, in the Appellants' words, of "whether Section 363(f) of the Bankruptcy Code permits the sale of the Purchased Assets to the Purchaser 'free and clear' of a prepetition product liability claimant's potential *in personam* claims against the Purchaser arising under state law theories of successor liability." Tort Litigants' Motion ¶ 2; *see also* Asbestos Litigants' Motion ¶ 5 (arguing that permitting Purchaser to acquire Debtors' assets "free and clear of successor liability claims [is] in contravention of 11 U.S.C. §§ 1141(d)(3) and 363, which [were] enacted by Congress to deny a corporate debtor a discharge under the very circumstances existing here").

5. First, any appeal on the question of successor liability does not raise a question of law as to which there is no controlling authority. As this Court already found in the Sale Opinion, "the caselaw is *not* split in this Circuit and District. In *Chrysler*, Judge Gonzalez expressly considered and rejected the efforts to impose successor liability. And more importantly, the Second Circuit, after hearing extensive argument on this issue along with others, affirmed Judge Gonzalez's *Chrysler* order for substantially the reasons Judge Gonzalez set forth in his *Chrysler* decision." Sale Opinion at 57. This Court continued:

3

> The [successor liability] claims sought to be preserved here are identical to those in *Chrysler*. And *Chrysler* is not distinguishable in any legally cognizable respect. On this issue, it is not just that the Court feels that it *should* follow *Chrysler*. It *must* follow *Chrysler*. The Second Circuit's *Chrysler* affirmance, even if reduced solely to affirmance of the judgment, is controlling authority.

Sale Opinion at 60 (footnote omitted).

6. The Tort Litigants' Motion contends in response that, since the Court of Appeals has not yet issued a written opinion in *Chrysler*, "the Second Circuit surely will benefit from this Court's reasoning on the successor liability issue." Tort Litigants' Motion ¶ 4. While true, this is no reason to certify an appeal in this case to the Circuit; if any party is concerned that the Circuit is somehow unaware of this Court's Sale Opinion, the parties can call it to the Circuit's attention. *See* Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed — or after oral argument but before decision — a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations.").

7. The other two bases for certification also do not apply in this case. Notwithstanding the fact that General Motors' bankruptcy is clearly a matter of public importance, the narrow successor liability issue flagged by the Appellants is not, at least in view of the fact that there is already controlling Second Circuit precedent resolving the issue. For the same reason, this is not a case "where a prompt, determinative ruling might avoid needless litigation," *Weber*, 484 F.3d at 158, because the parties already have a prompt, determinative ruling in the form of *Chrysler*.

8. Indeed, the real reason why the Tort Litigants seek to certify this appeal directly to the Second Circuit has nothing to do with the factors specified in Section 158(d)(2): They are attempting to "[f]ast-track[]" this case so that it can be reviewed side by side with

4

*Chrysler* in the Supreme Court. Tort Litigants' Motion ¶ 7. But as this Court recognized, the successor liability here is "not distinguishable in any legally cognizable respect" from the same issue in *Chrysler*. Sale Opinion at 60. The suggestion that allowing *Chrysler* and *General Motors* to be reviewed simultaneously will result in "an opinion [from the Supreme Court] that is richer and broader than could be achieved if either case were presented without the other in tandem," Tort Litigants' Motion ¶ 7, is therefore false — not to mention presumptuous. Even if true, these estates should not be forced to bear the cost of counsel's efforts to effect a change of the clear law of this Circuit. If they wish to be heard by the Supreme Court, the Appellants can simply file an *amicus curiae* brief in *Chrysler*. Meanwhile, there is no reason to impose on these estates and other parties in interest the costs of an immediate direct appeal to the Circuit — and reasons of judicial economy strongly counsel against unleashing an extraordinarily burdensome immediate appeal to the Circuit.

9.   In short, there is no reason to certify the successor liability issue to the Circuit, when the Circuit has just decided that very issue. The motions to certify should therefore be denied.

**B.   THIS COURT SHOULD NOT GRANT A STAY PENDING ANY APPEAL**

10.   The Court should also deny the Asbestos Committee's motion, in the alternative, for a stay pending appeal to the district court. And certainly any such stay must be conditioned on the Appellants posting a bond substantial enough to protect the interests of the prevailing parties against the delays that will be occasioned by any such stay.

11.   "A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." Fed. R. Bankr. P. 8005.

5

12. "A motion for a stay pending appeal, as authorized under Bankruptcy Rule 8005, is discretionary." *In re Overmyer*, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985). "'[F]our factors are considered' in exercising that discretion: '(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.'" *In re Adelphia Communications Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (quoting *Hirschfeld v. Board of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993)). *See also EPlus, Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263, 271 (S.D.N.Y. 2004) ("failure to satisfy one prong of the standard . . . dooms the motion")

13. All of these factors counsel against a stay. *First*, since Appellants' stated goal in seeking a "fast tracked" appeal is to get to the Supreme Court, they essentially admit there is no harm absent a stay. Indeed, the analogous sale transaction in *Chrysler* has already closed, but similarly-situated claimants — including the Individual Accident Litigants' (apparently former) co-counsel — are still pressing their petitions for *certiorari*. They have apparently decided that the closing does not moot their appeal, and Appellants' ability to raise the successor liability issue will be no greater or less than in *Chrysler*, even if no stay is entered here.[2]

14. *Second*, and on the other hand, a stay will result in a substantial injury to the prospects of New GM. As this Court found on an extensive and undisputed evidentiary record, GM's prospects for success diminish with each passing day it remains in bankruptcy, as "fleet sales customers pulled back their orders because they didn't know their status in the

---

[2]  Admittedly, the Asbestos Committee seems to have come to the opposite conclusion. *See* Asbestos Litigants' Motion ¶ 8.

6

bankruptcy" and "[m]any consumers would not consider purchasing a vehicle from a manufacturer whose future was uncertain and that was entangled in the bankruptcy process." Sale Opinion at 23-24.  And that says nothing about the domino effect of a prolonged bankruptcy and delayed asset sale on GM's dealers and suppliers, and ultimately on the hundreds of thousands of Americans employed in the automotive industry, and the communities that they support.  *See* Sale Opinion at 6 (referring to liquidation as "a disastrous result for GM's creditors, its employees, the suppliers who depend on GM for their own existence, and the communities in which GM operates"); *see also id.* at 7.  Moreover, the Asbestos Committee's suggestion that "closing is not expected to occur earlier than 30 days from the date of the Sale Order," Asbestos Litigants' Motion ¶ 10, is simply false.  The truth is that the parties are prepared to close *immediately* upon expiration of the stay on Thursday afternoon; indeed, the parties have been prepared to close since earlier this week.  Any contention that a further stay will not affect the actual consummation of the 363 Transaction is therefore wrong.

15.     *Third*, and for the same reasons, the public interests plainly weigh against a stay.  And *fourth*, and finally, for all of the reasons given in the Sale Opinion, and by Judge Gonzalez in his opinions (which were substantially adopted by the Second Circuit), the Appellants have no possibility of success on appeal.  A stay should therefore be denied.

C.     **ANY STAY SHOULD BE CONDITIONED ON A SUBSTANTIAL BOND**

16.     If this Court were nonetheless inclined to grant a stay, it should condition any such stay on Appellants' posting of a substantial bond.

> "In determining whether a bond should be ordered, the court looks to whether the bond would be necessary to protect "against diminution in the value of property pending appeal" and to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal."  Moreover, the posting of a bond "guarantees the costs of delay incident to the appeal."  In analyzing whether to order movants to post a bond in support of a stay

7

>   pending an appeal of a bankruptcy court order, district courts have obtained guidance from Federal Rule of Civil Procedure 62(d), which requires appellants to post a bond when appealing a lower court order absent "exceptional circumstances."

*Adelphia*, 361 B.R. at 350 (footnotes omitted). *See also In re Max Sugarman Funeral Home, Inc.*, 94 B.R. 16, 17 (Bankr. D.R.I. 1988) ("[T]he form, the amount, and the sufficiency of the bond generally[ ] are matters within the discretion of and for determination by the bankruptcy court.") (citing *In re Swift Aire Lines, Inc.*, 21 B.R. 12, 14 (9th Cir. BAP 1982)). As Judge Scheindlin concluded in *Adelphia*, "[i]f a stay pending appeal is likely to cause harm by diminishing the value of an estate or endanger the non-moving parties' interest in the ultimate recovery, and there is no good reason not to require the posting of a bond, then *the court should set a bond at or near the full amount of the potential harm to the non-moving parties*." 361 B.R. at 351 (internal quotation marks and brackets omitted; emphasis supplied).

17.    In this case, there is absolutely no reason not to condition a stay on a bond that will protect the interests of the Government and its Canadian co-lenders, as well as the estate and its stakeholders. The Appellants have essentially asked this Court to hold up the closing of the 363 Transaction — which this Court has already found is the only way to preserve value in these estates and avoid a disastrous freefall liquidation scenario — so that they can tilt at windmills, trying to convince the Second Circuit to "get it right" this time around. Tort Litigants' Motion ¶ 6. If they are to be permitted to gamble with the economic recovery of GM's stakeholders, the jobs of its employees, and the future of New GM and the American automotive industry, they ought to "post a substantial bond that is commensurate with the threatened loss to the non-moving parties." *Adelphia*, 361 B.R. at 368.

18.    However that threatened loss is valued — the $100 or so billion in consideration provided by the Purchaser, the $50 or so billion in funds advanced by the

8

Government, or the $90 or so billion in damages to these estates in a liquidation scenario as opposed to under the 363 Transaction — it is plainly in the billions, if not tens of billions, of dollars. *See id.* (conditioning stay of appeal on $1.3 billion bond, with ten percent posted within twenty-four hours and the remainder posted within three days); *see also id.* at 368 n.166 (citing cases requiring bonds between $500 million and $12 billion). Indeed, the absolute *minimum* bond required in this case is the one that protects these estates' unsecured creditors from the very real prospect that this transaction will fall apart with the passage of time. That amount — the difference between the liquidation value to unsecured creditors, according to the undisputed AlixPartners analysis accepted by the Court [docket no. 435], and the value of consideration going to these estates for distribution, according to the undisputed Evercore analysis accepted by the Court [docket no. 425][3] — is between $7.4 and $9.8 billion for the New GM equity component alone. *Compare* AlixPartners Liquidation Analysis (providing no recovery to unsecured) *with* Evercore Analysis of Proposed Transaction, NewCo Equity and Warrants (providing imputed range of $7.4-9.8 billion for New GM equity and warrants).

## **CONCLUSION**

19. For the reasons just given, this Court should deny the motions to certify a direct appeal of the Sale Order and Sale Opinion to the Second Circuit, or in the alternative for a stay pending appeal. Barring that, the Court should condition any stay on a supersedeas bond of *at least* $7.4 billion to protect the parties-in-interest.

---

[3] The Government acknowledges this Court's order that "[i]f, as is possible, parties wish to bring to the Court's attention the loss or lack of loss that would be occasioned by delay (as relevant to the size of the bond or otherwise), supporting facts should be presented by affidavit." Because the facts relied upon by the Government, as set forth in the AlixPartners and Evercore analyses, were undisputed in an extensive evidentiary hearing and adopted by this Court in its Sale Opinion, we are not submitting an affidavit.

9

Dated: July 7, 2009
      New York, New York

                               LEV L. DASSIN
                               Acting United States Attorney for the
                               Southern District of New York,
                               Attorney for the United States of America

                       By:    /s/  Matthew L. Schwartz
                               DAVID S. JONES
                               JEFFREY S. OESTERICHER
                               MATTHEW L. SCHWARTZ
                               JOSEPH N. CORDARO
                               Assistant United States Attorneys
                               86 Chambers Street, Third Floor
                               New York, New York 10007
                               Telephone: (212) 637-2739/2698/1945/2745
                               Facsimile:  (212) 637-2750
                               E-mail:  david.jones6@usdoj.gov
                                         jeffrey.oestericher@usdoj.gov
                                         matthew.schwartz@usdoj.gov
                                         joseph.cordaro@usdoj.gov

John J. Rapisardi, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
– Of Counsel to the Presidential
Task Force on the Auto Industry –
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:   (212) 504-6666
E-mail:  john.rapisardi@cwt.com