**HEARING DATE AND TIME: July 7, 2009 at 7:00 p.m. (Eastern Time)**
**OBJECTION DEADLINE:  July 7, 2009 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Irwin H. Warren
Michele J. Meises
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
**GENERAL MOTORS CORP.**, *et al.*, : 09-50026 (REG)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------------x

**AMENDED OMNIBUS OBJECTION OF THE DEBTORS
TO (i) MOTION OF THE INDIVIDUAL ACCIDENT LITIGANTS FOR AN ORDER
CERTIFYING THE SALE ORDER FOR IMMEDIATE APPEAL
TO THE UNITED STATES COURT OF APPEALS PURSUANT TO 28 U.S.C. § 158(d)(2)
ON THE ISSUE OF SUCCESSOR LIABILITY, AND (ii) THE AD HOC COMMITTEE
OF ASBESTOS PERSONAL INJURY CLAIMANTS' MOTION FOR AN ORDER
CERTIFYING SALE ORDER FOR IMMEDIATE APPEAL TO THE UNITED STATES
COURT OF APPEALS PURSUANT TO 28 U.S.C. § 158(d)(2)
OR IN THE ALTERNATIVE FOR A STAY OF THE SALE ORDER,
<u>PURSUANT TO FED. R. BANKR. P. 8005</u>**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement ............................................................................................................... 1

The Motions Seeking Certification Should Be Denied ............................................................. 4

The Asbestos Claimants' Request for a Stay Should Be Denied .............................................. 9

If the Court Is Inclined to Grant the Stay, the Asbestos Claimants Should Be Required to Post a Sufficient Bond to Protect the Debtors' Estates Against the Loss of Value that May Result ....................................................................................................... 12

# TABLE OF AUTHORITIES

<div align="right">Page</div>

## FEDERAL CASES

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337 (S.D.N.Y. 2007), *appeal dismissed,* 367 B.R. 84 (S.D.N.Y. 2007) .................................................................................. 11 n.2, 12

*In re Baxter*, Ch. 13 Case No. 06-10672, 2007 Bankr. LEXIS 3368 (Bankr. M.D. Ala. Sept. 24, 2007) .................................................................................................. 6

*Bijan-Sara Corp. v. Fed. Deposit Ins. Corp.*, 203 B.R. 358 (B.A.P. 2d Cir. 1996) ...................... 9

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990) ....... 12

*In re Calpine Corp.*, No. 05-60200, 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ........... 12

*In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009) ...................................................... 2, 7, 10

*In re Chrysler LLC*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009) .................................................................................................................. 4, 5, 6, 7, 8

*Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935 (7th Cir. 2006) ............................................ 11

*Indiana State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275 (2009) .............................. 2

*Lebos v. Schuette*, No. 2:008-CV-00680, 2008 U.S. Dist. LEXIS 76432 (E.D. Cal. Sept. 30, 2008) ......................................................................................................... 8

*In re Moreau*, 135 B.R. 209 (N.D.N.Y. 1992) ............................................................................. 11

*Philips Bus. Sys., Inc. v. Executive Comncn's Sys., Inc.*, 744 F.2d 287 (2d Cir. 1984) ............... 12

*Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ..................................................................... 8

*In re Stone Barn Manhattan LLC*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008) .................................... 6

*In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) .................................................. 2, 6

*Weber v. U.S. Trustee*, 484 F.3d 154 (2d Cir. 2007) .................................................................. 4-6

## FEDERAL STATUTES AND FEDERAL RULES

11 U.S.C. § 363(f) .................................................................................................................. 1, 5, 7

11 U.S.C. § 365(d)(3) .................................................................................................................... 1

28 U.S.C. § 158 ......................................................................................................................... 1, 5

28 U.S.C. § 158(d)(2) ............................................................................................................ 1, 5, 7

28 U.S.C. § 158(d)(2)(A) ............................................................................................................... 4

28 U.S.C. § 158(d)(2)(A)(i) ........................................................................................................... 2

28 U.S.C. § 1292(b) ................................................................................................................... 4, 5

Fed. R. Bankr. P. 8005 ......................................................................................................... 3-4, 12

## TABLE OF AUTHORITIES

**Page**

Fed. R. Civ. P. 23(f) ................................................................................................................ 5

## LEGISLATIVE HISTORY

H.R. Rep. No. 107-3 (2005) .................................................................................................... 5

H.R. Rep. No. 109-31 (2005) .................................................................................................. 5

## MISCELLANEOUS

1 *Collier on Bankruptcy* ¶ 5.05A[7] (15th ed. rev. 2008) ...................................................... 4

Micheline Maynard, Automakers' Swift Cases in Bankruptcy Shock Experts, N.Y.
   Times, July 7, 2009, at B1 .............................................................................................. 3

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        General Motors Corporation ("**GM**") and its affiliated debtors (collectively, the "**Debtors**"), respectfully represent:

### Preliminary Statement

    1.    The Debtors submit this Amended[1] Omnibus Objection to two motions (the "**Motions**"): one by certain "**Individual Accident Litigants**"; the other by certain "**Asbestos Claimants**" (collectively, the "**Movants**"). The Movants ask this Court to grant the extraordinary relief of certifying an immediate appeal to the United States Court of Appeals for the Second Circuit of (i) the Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle Acquisition Holdings LLC; (2) Assumption and Assignment of Related Executory Contracts; and (3) Entry into UAW Retiree Settlement Agreement (the "**Decision**"), and (ii) the Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief (the "**Order**").[2] The Motions should be denied.

    2.    The Movants' assertion that there is no controlling decision in this Circuit as to the scope of 11 U.S.C. § 363(f) and that the matter of such scope is of public importance are both erroneous in the context of 28 U.S.C. § 158(d)(2). "Free and clear" issues already have been squarely addressed – and the Movants' arguments, including those posited by the attorneys

---

[1] This Amended Omnibus Objection supersedes the one filed at Docket No. 3029 and corrects a typographical error in the last line of paragraph 24 by changing $90 billion to $80 billion.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Order.

for the Asbestos Claimants, have been flatly rejected – by the Second Circuit, which affirmed the Bankruptcy Court decision in *Chrysler*, and expressly stated that it was doing so for "substantially the reasons set forth by Judge Gonzalez" in his opinion in *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009) (adopting the approach of the United States Court of Appeals for the Third Circuit in *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) ("*TWA*") and of numerous other courts), *aff'd*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009). Section 158(d)(2)(A)(i) makes clear that there is no basis for certification where the "court of appeals *for the circuit*" has issued a "controlling *decision*" (not "opinion") – regardless of whether the United States Supreme Court has ruled on the issue or whether other Circuits disagree. 28 U.S.C. § 158(d)(2)(A)(i) (emphasis added). In addition, it is noteworthy that in denying the request for a stay pending appeal in the *Chrysler* case, the Supreme Court stated that the applicants have "not carried [the] burden" of demonstrating "'(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction; (2) a fair prospect that a majority of the Court will conclude that the decision below was erroneous; and (3) a likelihood that irreparable harm will result from the denial of a stay.'" *Ind. State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2276-77 (2009) (citing *Conkright v. Fommert*, 556 U.S. __, __ (2009) (slip op., at 1-2) (Ginsburg, J., in chambers)). Further, the Individual Accident Litigants' apparent belief that the Second Circuit needs their help in researching and writing its *Chrysler* opinion and "getting it right" does not provide any basis for certifying an appeal.

   3.  The Movants correctly note that *these chapter 11 cases* implicate the public interest – as established by the billions of dollars that the United States, Canadian, and Ontario Governments have provided as prepetition and postpetition financing in an effort to save

and revitalize the North American automobile industry. The issues that the Movants wish to raise on appeal do not rise to matters of public importance. Rather, the interests that they wish to champion are their own (in the Individual Accident Litigants' words, "[c]ertifying the . . . appeal will materially advance the . . . determination of their rights against the Purchaser"): that is, the Movants want certification as to claims of a handful of individual tort litigants who assert, but have not yet even prevailed on, alleged prepetition claims that can and will be addressed in the administration of the chapter 11 cases. The attorney for the five Individual Accident Litigants has conceded that, absent the 363 Transaction, the "companies were dead." Micheline Maynard, *Automakers' Swift Cases in Bankruptcy Shock Experts*, N.Y. Times, July 7, 2009, at B1. Nevertheless, he is anxious to risk the interests of all economic stakeholders by endangering the consummation of the 363 Transaction. As for the Asbestos Claimants, this Court added the phrase "to the fullest extent constitutionally permissible" to the "free and clear" provision in paragraph 8 of the Order, to assure that any of such Claimants' constitutional rights may be asserted.

        4.       The Asbestos Claimants seek a stay, as a request for alternative relief. (The Individual Accident Litigants request no stay relief and have publicly confirmed that they do not wish to stop the 363 Transaction. *See id.* However, their actions apparently belie such statement: if it were accurate, there would be no demand for such haste.) The Asbestos Claimants simply misstate the facts and law as to their ability to satisfy the standards for such extraordinary relief: Indeed, they do not satisfy *any*, let alone all, of the determinative factors for the granting of a stay. Moreover, if a stay were to be granted at the request of this small group of putative tort claimants, a bond under Fed. R. Bankr. P. 8005 would need to be sufficient to protect GM and its economic stakeholders from whatever damage might ensue, including a


continued deterioration in the value of the Debtors and a potential loss of the value of the 363 Transaction and other damages from the resulting liquidation. Perhaps that explains the failure of the Asbestos Claimants to even acknowledge the potential bonding requirement under Fed. R. Bankr. P. 8005. Substantial value would be put at risk if the Court were inclined to grant a stay, which cannot be protected without requiring the appellants to provide a sufficient bond.

### **The Motions Seeking Certification Should Be Denied**

5.  The decision of the Bankruptcy Judge on a motion for certification under 28 U.S.C. § 158(d)(2)(A), like a District Court's decision on a 28 U.S.C. § 1292(b) request for certification of an interlocutory order, is not appealable. *See* 1 *Collier on Bankruptcy* ¶ 5.05A[7], at 5-24 (15th ed. rev. 2008) (under the heading "Court Refusal to Certify Is Not Appealable"). If this Court does decide to grant certification, the Second Circuit will have jurisdiction to consider the appeal if it authorizes the direct appeal. The Second Circuit itself has the discretion to exercise, or decline to exercise, such jurisdiction notwithstanding a Bankruptcy Court's grant of certification. *See Weber v. U.S. Trustee*, 484 F.3d 154, 157 (2d Cir. 2007) ("This court may in its discretion exercise, or decline to exercise, that jurisdiction" – and declining to exercise jurisdiction). In light of its recent decision in *Chrysler*, it is likely that the Second Circuit will likewise question the need for such extraordinary relief, i.e., to revisit issues it has just addressed.

6.  The legislative history of this provision sheds further light on its meaning. Section 158(d)(2) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"). According to the Second Circuit, the legislative history "confirms that Congress intended" this provision to, *inter alia*, provide the Courts of Appeals with an opportunity to address issues that it had not previously decided or as to which the lower

courts within the Circuit were in disagreement – neither of which is the situation here. The statute was designed to

> facilitate our provision of guidance on pure questions of law. Among the reasons for the direct appeal amendment was widespread unhappiness at the paucity of settled bankruptcy-law precedent. The House Report that accompanied the BAPCPA emphasized that "decisions rendered by a district court . . . are generally not binding and lack stare decisis value." *See* H.R. Rep. No. 109-31, at 148 (2005) . . . ; *see also* H.R. Rep. No. 107-3, Prt. 1, at 112 ( 2001) (same).

*Id.* at 158 (citations omitted).

7.      As with other discretionary appeals (e.g., 28 U.S.C. § 1292(b); Fed. R. Civ. P. 23(f)), the Second Circuit stated that Congress enacted section 158(d)(2) in the "hope[] that [it] would permit us to resolve controlling legal questions expeditiously and might foster the development of coherent bankruptcy-law precedent" (*id.* at 159) -- precisely the purpose it already has accomplished, as to the very issues here raised, in *Chrysler*.

8.      Significantly, the Second Circuit stated that even though Congress stressed the importance of the expeditious resolution of bankruptcy cases, "it did not wish us to privilege speed over other goals; indeed speed is not necessarily compatible with our ultimate objective – answering questions wisely and well." *Id.* at 160.  As a result, the Second Circuit concluded that "[p]ermitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law." *Id.*  The Circuit Court stressed that "[c]ourts of appeals benefit immensely from reviewing the efforts of the district court and echoed congressional observations about both the "dangers of leapfrogging the district court in the appeals process" and the "salutary effects of allowing some cases to percolate through the normal channels." *Id.*

9.      Applying these guidelines to the instant Motions, certification of the Sale Order clearly is not appropriate.  The law in this Circuit is clear on the issues of "free and clear

of successor liability." The Movants' interpretation of section 363(f) has been rejected outright by the Second Circuit. The Second Circuit reviewed and accepted Judge Gonzalez's careful analysis of the issue (which concurred with the principle expressed by the Third Circuit in *TWA*). *In re Chrysler, LLC*, No. 09-2311-bk, 2009 U.S. App. LEXIS 12351 (2d Cir. June 5, 2009) – and this Court's decision is consistent, not in conflict, with *Chrysler*. As this Court stated, it "*must* follow *Chrysler*. The Second Circuit's *Chrysler* affirmance, even if reduced solely to affirmance of the judgment, is controlling authority." Decision at 60. Consistent with the plain words of section 158, courts have denied requests for certification where controlling law in the Circuit existed. *See, e.g., In re Baxter*, Ch. 13 Case No. 06-10672, 2007 Bankr. LEXIS 3368 (Bankr. M.D. Ala. Sept. 24, 2007) (bankruptcy court denied request for certification where order that was subject of appeal relied on controlling decision in that circuit, controlling decisions in that circuit were not in conflict, and majority of lower court decisions in that circuit were in accord with the ruling).

    10. The fact that the Second Circuit's *Chrysler* decision is not a lengthy "opinion" is irrelevant. All that is required under section 158(d)(2) is a "controlling decision" – not an "opinion" – and that the "controlling decision" must be within the "circuit." That is the case here. A split *among* the circuits may be a basis for a petition for certiorari, but it is not a basis for section 158 relief.

    11. The instant case thus is readily distinguishable from *In re Stone Barn Manhattan LLC*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008), relied upon by the Asbestos Claimants, in which the Bankruptcy Court offered to certify an immediate appeal to the Second Circuit in order to resolve the issue of whether the payment of stub rent under an unexpired lease of nonresidential real property is required under section 365(d)(3) of the Bankruptcy Code. That

case resulted from a split among the lower courts in this District over the proper interpretation of section 365(d)(3), where a lease provides for monthly payment of rent in advance and the debtor commences a chapter 11 case or rejects its lease in the middle of the month. Some courts applied a pro ration approach in calculating the amount of rent, while other courts used a billing date approach. As a result, "courts within the Second Circuit would greatly benefit from a binding interpretation of § 365(d)(3)." *Id.* at 368 n.6. This is in stark contrast to the issue sought to be appealed here: there is no split or absence of a controlling ruling within this Circuit as to the issues raised by the Movants. As this Court correctly observed, "the caselaw is *not* split in this Circuit and District." Decision at 57.

12.     Moreover, the specific issue sought to be appealed is not a matter of "public importance." The significance of the Debtors' chapter 11 cases as a whole is not the factor to be considered under section 158(d)(2). The relevant factor is whether the "question of law . . . involves a matter of public importance." Unlike the issue appealed from in *Chrysler* – the deprivation of secured creditors' rights in collateral property, which had Constitutional implications -- the application of section 363(f) to successor liability for prepetition tort claims simply does not rise to that level. Moreover, even if it did, that issue already has received full briefing, oral argument, and decision by a trial and an appellate court only last month in *Chrysler*. Indeed, to the extent these Asbestos Claimants assert (for themselves or even future claimants, who they lack standing to represent) constitutional claims, this Court already has protected their position. Specifically, this Court amended the Order to provide for an injunction "with respect to future claims or demands based on exposure to asbestos, to the fullest extent constitutionally permissible." Order at ¶ 8.

13.     The Movants also failed to demonstrate that a direct appeal to the Second Circuit could materially advance the progress of these cases. There is no evidence that a ruling on the Movants' issues sought to be appealed would advance the progress of these cases more if they were decided by the Second Circuit as opposed to the District Court. *See, e.g., Lebos v. Schuette*, No. 2:008-CV-00680, 2008 U.S. Dist. LEXIS 76432, at *8 (E.D. Cal. Sept. 30, 2008) (court denied request for certification where, among other things, there was "no evidence that a ruling . . . from [the district court] would differ, in relation to a material advancement of the progress of the case, from such a ruling from the . . . Circuit").

## The Asbestos Claimants' Request for a Stay Should Be Denied

14.     The Asbestos Claimants, almost as an afterthought to their last-minute motion for certification of an immediate appeal to the Second Circuit (and in the event this Court denies such relief), alternatively seek a stay of the Sale Order "until the District Court has an opportunity to hear the appeals." Br. at 4. There can be no dispute that the Asbestos Claimants seek extraordinary relief: yet their support for such relief is nonexistent; they disregard the controlling law; and they disregard the fact that this request seeks to block a transaction that is undoubtedly in the best interests of the Debtors, its economic stakeholders, and the public interest, and, most significantly, that it is the sole alternative to a disastrous liquidation. Notably, the Asbestos Claimants blithely ignore the potential consequences of their request and do not even address whether a bond is necessary to protect the Debtors and their stakeholders.

15.     The Second Circuit has made clear that a stay pending appeal is an extraordinary remedy that hinges upon a movant's ability to satisfy all of the following determinative factors:

> (1) whether the stay applicant has made a *strong showing* that he is likely to succeed on the merits; (2) whether the applicant will be

> irreparably injured absent a stay; (3) *whether issuance of the stay will substantially injure the other parties interested* in the proceeding; and (4) where the *public interest* lies.

*Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (emphasis added). The Asbestos Claimants' contention that "[t]he failure of one factor is not dispositive" (Br. at 5) ignores such controlling law; and the Asbestos Claimants do not cite to a single authority (case law or otherwise) for such a proposition. Nor could they, as the law in this Circuit is clear that the burden is squarely on the movant to provide "'satisfactory' evidence on *all four criteria*." *Bijan-Sara Corp. v. Fed. Deposit Ins. Corp.*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (emphasis added) (citation omitted).

16. Here, the Asbestos Claimants cannot satisfy even one of the stay factors, let alone all four. Given that the Court is fully aware of the "merits" of the Asbestos Claimants' arguments -- and has soundly rejected them, in its findings of fact after trial and in its conclusions of law -- the Debtors will forego a detailed discussion as to the Asbestos Claimants' inability to establish even a remote likelihood of success on the merits (much less a "strong showing" of same). It bears noting, however, that the Asbestos Claimants do not even attempt to make that showing. Rather, buried on pages 7 and 8 of their Motion is an eight-sentence recitation of ipse dixit assertions of law -- with no effort whatsoever to explain where or how this Court erred (which it did not) or departed from Second Circuit precedent (which it also did not). Of course, the Asbestos Claimants' approach is not surprising, given that the very arguments they apparently intend to raise on appeal were: (i) expressly raised (by the very same attorneys) and rejected by Judge Gonzalez in *Chrysler*, and subsequently affirmed by the Second Circuit (again, after hearing the same arguments as presented by the same attorneys); and (ii) expressly raised and rejected again by this Court.

17. With respect to the other stay factors -- whether issuance of the stay will substantially injure the other parties interested in the proceeding and where the public interest lies -- the record before the Court is exhaustive and uncontroverted as to the need for prompt consummation of the 363 Transaction. As this Court recognized, "absent prompt confirmation that the sale has been approved and that the transfer of the assets will be implemented, GM will have to liquidate. There are no realistic alternatives available." Decision at 23. Liquidation will result in no recovery at all for unsecured creditors (including the Asbestos Claimants), but, even more importantly, it will have a devastating impact on the U.S. automotive industry (and the businesses, jobs, and communities dependent thereon).

18. The unrebutted evidence before the Court unequivocally demonstrates that the assets being sold as part of the 363 Transaction -- that is, not merely the physical assets, but the value of and consumer confidence in the GM brand and its products and support systems (including parts, warranty service, and a market for used vehicles) -- are fragile and will be subject to significant value erosion unless they are expeditiously transferred to New GM and its operations start free from the stigma of bankruptcy. Thus, assuming *arguendo*, GM could be financed and survive during a stay, any delay will result in irretrievable revenue perishability and loss of market share to the detriment of all economic interests. It will exacerbate and entrench consumer resistance to GM's products. *See, e.g.*, Affidavit of Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2 at 34-35 (Docket No. 21). Thus, it is incontrovertible – and unrebutted in the record here – that GM's assets, in bankruptcy, are "wasting assets." The need for New GM to be able to immediately commence operations free of the entanglement of bankruptcy cannot be overstated. Any further delay in this process -- even a short one -- will in fact result in irreparable revenue decline and permanent loss of GM market share, thus adversely

(perhaps fatally) affecting New GM and the value of any securities that the Debtors will receive if a stay ultimately were lifted and the 363 Transaction closed.

19.  As to the public interest, the fact that the U.S. and Canadian Governments are investing tens of billions of dollars in the 363 Transaction is eloquent, irrefutable, and dispositive evidence of the public interest.

20.  Finally, the Asbestos Claimants' contention that consummation of the 363 Transaction will cause them irreparable harm by mooting their appeal (Br. at 5) is dead-wrong, as a matter of law. To the contrary, it is well-settled that the denial of a stay, which moots an appeal, does not, in and of itself, establish irreparable harm. *See, e.g., In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992) ("It is clear that the danger of an appeal becoming moot is by itself *never* a sufficient ground to justify grant of a stay") (emphasis added); *see also Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 938 (7th Cir. 2006) (holding that denial of stay, even if it moots movant's appeal, "is contemplated by the [Bankruptcy] Code's preference for finality in sale orders and the broad discretion it provides judges to deny stays pending appeal").[3] Moreover, this Court's modification of the "free and clear" provisions to limit same to what is constitutionally permissible protects any hypothetical appellate interests.

### If the Court Is Inclined to Grant the Stay, the Asbestos Claimants Should Be Required to Post a Sufficient Bond to Protect the Debtors' Estates Against the Loss of Value that May Result

---

[3] The Asbestos Claimants' citation to the *Adelphia* decision – in which the court held that "where the denial of a stay pending appeal risks mooting any appeal of *significant* claims of error, the irreparable harm requirement is satisfied' (*In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007) (emphasis added), *appeal dismissed,* 367 B.R. 84 (S.D.N.Y. 2007) – is of no moment here. As set forth above (and in the Debtors' papers in support of their motion to approve the 363 Transaction), in light of the overwhelming legal authority expressly rejecting the Asbestos Claimants' contention, no one could seriously contend that there are "significant claims of error" here.

21. If the Court should consider granting a stay pending appeal, any stay should be conditioned upon the posting of a sufficient bond or other security to protect the Debtors' estates and the interests of the Debtors' economic stakeholders. *See In re Calpine Corp.*, No. 05-60200, 2008 WL 207841, at *7 (Bankr. S.D.N.Y. Jan. 24, 2008).

22. Under Bankr. R. 8005, the Court "may condition the stay pending appeal on the filing of a bond or other appropriate security with the bankruptcy court." The posting of a bond serves the purpose of protecting the debtors "against diminution in the value of property pending appeal," and guaranteeing "the costs of delay incident to the appeal." *Adelphia*, 361 at 350 (citations omitted). Specifically, the injunction bond is designed to cover any damages that might result if it were later determined that [the applicant] was not entitled to an injunction." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1055 (2d Cir. 1990). The theory underlying this rule is that, in the event of a wrongful injunction, the applicant consents to liability up to the amount of the bond as the price for the injunction. *See id.* at 1054. The requirement that a bond be posted "should not be eliminated or reduced unless doing so 'does not unduly endanger the judgment creditor's interest in ultimate recovery.'" *Adelphia*, 361 B.R. at 350 (citation omitted). The requirement of an adequate bond is critically important, because a party that is wrongfully enjoined is limited in the damages it may seek to the amount of the bond. *See, e.g., Philips Bus. Sys., Inc. v. Executive Commc'ns Sys., Inc.,* 744 F.2d 287, 290 (2d Cir. 1984); *Blumenthal*, 910 F.2d at 1054. Conspicuously absent from the Asbestos Claimants' request is any discussion of the requirements of posting a bond.

23. In *Adelphia*, the district court ordered that the appellants post a bond of $1.3 *billion*:

> [I]f a stay pending appeal is likely to cause harm by diminishing the value of an estate or 'endanger [the non-moving parties']

> interest in the ultimate recovery,' and there is no good reason not to require the posting of a bond, then the court should set a bond *at or near the full amount of the potential harm* to the non-moving parties.

361 B.R. at 351 (emphasis added). *See also In re DJK Residential, LLC*, No. 08-10375, 2008 WL 650389, at *5 (S.D.N.Y. Mar. 7, 2008) (requiring party seeking stay to show "why [a] court 'should deviate from the ordinary full security requirement'") (citation omitted).

24. The potential -- and quantifiable -- harm to the Debtors' and others is self-evident (and set forth in detail in the record before this Court). As this Court is well aware (and recognized in the Sale Opinion), the damages that would result from a delay in consummation of the 363 Transaction are immense, not only for GM, but for all of its stakeholders and the U.S. economy. The Asbestos Claimants -- representing a half dozen individuals with pre-petition claims that have yet to be proved -- should not be allowed to subject the Debtors and countless other entities and economic stakeholders to such catastrophic risks without providing full security. The magnitude of such a catastrophic failure to GM, and its beneficiaries, along with the resulting failure to the U.S. automotive industry as a whole, may be difficult to quantify, but it cannot be disputed that such harm would undoubtedly be in excess of at least $80 billion.

25. Specifically, the accompanying Declaration of J. Stephen Worth confirms and reestablishes that: the purchase price here reflects total consideration to the Debtors of more than $90 billion; and the securities in New GM that the Debtors will receive alone are valued at $7.4 to 9.8 billion. Total damages to the Debtors would be more than $80 billion: the total 363 sale consideration minus the less than $10 billion to be obtained in a liquidation. And the U.S. Treasury may lose anywhere from $40 to 50 billion of the funds it has advanced. Moreover, the foregoing does not take into account the millions of dollars in daily cash burn of the Debtors. The $1.3 billion bond ordered in *Adelphia* is a miniscule fraction of the anticipated harm here.

26. In addition, pursuant to the provisions of the amended MPA, and the amended Final DIP Financing Agreement, the granting of the stay will enable the U.S. Treasury to cease funding the administration of the chapter 11 cases and to not close the 363 Transaction. This result can only be described as horrific. Unless the Asbestos Claimants are ready to post a sufficient bond in an amount equal to the potential direct harm of $80 billion, they should not be allowed to interfere with -- and potentially jeopardize -- the 363 Transaction.

WHEREFORE the Motions should be denied and the Debtors be granted such other and further relief as is just.

Dated: New York, New York
      July 7, 2009

/s/ Harvey R. Miller
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Irwin H. Warren
Michele J. Meises

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession