David E. Leta (Utah Bar No. 1937) (*pro hac* admission pending)
Timothy J. Dance, Esq. (Utah Bar No. 11553) (*pro hac* admission pending)
**SNELL & WILMER** L.L.P.
15 West South Temple, Suite 1200
Beneficial Tower
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
E-mail: delta@swlaw.com
         tdance@swlaw.com

Attorneys for Greater Park City Company d/b/a Park City Mountain Resort and
Mt Bachelor, Inc.

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
                                                       :
In re                                                  :    Chapter 11 Case No.
                                                       :
                                                       :    09-50026 (REG)
**GENERAL MOTORS CORP.,** *et al.*,                    :
                                                       :    Jointly Administered
            Debtors.                                   :
-------------------------------------------------------X

**OBJECTION TO DEBTORS' OMNIBUS MOTION PURSUANT TO 11 U.S.C. § 365 TO REJECT CERTAIN EXECUTORY CONTRACTS**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Greater Park City Company d/b/a Park City Mountain Resort, a Utah corporation and Mt Bachelor, Inc., an Oregon corporation (collectively, the "**Resorts**"), through counsel, submits this objection (the "**Objection**"), to the Debtors' proposed Omnibus Motion Pursuant to 11

U.S.C. §365 to Reject Certain Executory Contracts [Docket 2077]. In support of this Objection, the Resorts state as follows:

## PRELIMINARY STATEMENT

1. On or about June 22, 2009, the General Motors Corporation ("**GM**") sent notice of Debtors' First Omnibus Motion Pursuant to 11 U.S.C. §365 to Reject Certain Executory Contracts (the "**Omnibus Motion**"), in which the Debtors designated certain agreements as executory contracts (the "**Contracts**") between Debtors and various parties, and requested authorization to reject the Contracts.

2. The Omnibus Motion referenced that certain Promotional Agreement ("**PCMR Promotional Agreement**") dated November 13, 2008, between Chevrolet Motor Division ("**Division**"), General Motors Corporation and Greater Park City Company d/b/a Park City Mountain Resort ("**PCMR**") and that certain Promotional Agreement ("**Mt Bachelor Promotional Agreement**" and together with the PCMR Promotional Agreement, the "**Promotional Agreements**") dated November 13, 2008 between Division and Mt Bachelor, Inc. ("Mt Bachelor"). [See Declaration of Jennifer Botter for PCMR ¶ 1, which is filed contemporaneously herewith ("**PCMR Botter Declaration**"); see also Declaration of Jennifer Botter for Mt Bachelor ¶ 1, which is filed contemporaneously herewith ("**Mt Bachelor Botter Declaration**").] The PCMR Promotional Agreement is attached as Exhibit A to the PCMR Botter Declaration and the Mt Bachelor Promotional Agreement is attached as Exhibit A to the Mt Bachelor Botter Declaration.

10238567.2

# FACTS

3. PCMR is a ski resort located in Park City, Utah.

4. Mt Bachelor is a ski resort located in central Oregon.

5. Under the PCMR Promotional Agreement, The Division agreed to provide the following consideration to PCMR[1]:

   a. Loan PCMR 17 factory equipped Chevrolet Vehicles for use by PCMR during the term of the agreement.

   b. Offer PCMR the option to purchase any or all of the 17 vehicles at the end of the term of the agreement.

   c. Provide artwork, graphic standards and logos to be used by PCMR in its promotional materials.

6. Under the PCMR Promotional Agreement, PCMR agreed to provide the following consideration to the Division ("**PCMR Promotional Consideration**")[2]:

   a. Inclusion of Division logos on Daily Snow Fax during 2008-09 ski-season.

   b. Inclusion of Division logos on Daily Grooming Report during 2008-09 ski-season.

   c. Inclusion of Division logos on PCMR Trail Maps.

---

[1] See Exhibit A to the PCMR Promotional Agreement.
[2] See Exhibit B to the PCMR Promotional Agreement.

10238567.2

d.  Inclusion of Division logos on PCMR Activities Brochures.

e.  Inclusion of Division logos on PCMR Summer Brochures.

f.  Inclusion of Division logos on Winter Vacation Planners.

g.  Inclusion of Division logos on additional daily PCMR emails sent to Snow Report mailing list during 2008-09 ski-season.

h.  Inclusion of Division logos on two regular mailings to be emailed to PCMR's mailing list.

i.  Display of 30 second advertisement on each of two television monitors at PCMR at least 10 times per day during the term of the agreement.

j.  Display of 6 second text advertisement on each of two text screens at PCMR at least 10 times per day during the term of the agreement.

k.  525 complimentary one-day ski lift tickets from PCMR for 2008-09 ski-season.

l.  Four transferable season ski passes from PCMR for 2008-09 ski-season.

m.  Two unrestricted season lift-tickets for the 2008-09 ski-season given for the purchase of every new 2008 or 2009 Division vehicle purchased at participating dealers between November 1, 2008 and January 4, 2009.

n.  Two areas at PCMR resort plaza for Division dealer groups to use for promotion during the term of the agreement.

    o. Two areas at PCMR resort mountain for Division dealer groups to use for promotion during the term of the agreement.

    p. Mention of Division in six press releases regarding Division sponsorship of PCMR.

    q. Inclusion of Division logos with weblinks and sponsorship identification on every page of PCMR's website.

    r. Designation and recognition of Division as the official sponsor of PCMR.

    s. Allow research to be conducted at PCMR resort by Division and third-party vendor representatives during the term of the agreement.

    t. Two proof of performance of promotional consideration binders to be sent to Division.

    u. Maintain insurance on all Vehicles provided to PCMR.

7.    Under the Mt Bachelor Promotional Agreement, The Division agreed to provide the following consideration to Mt. Bachelor[3]:

    a. Loan 10 factory equipped Chevrolet Vehicles for use by Mt Bachelor during the term of the agreement.

    b. Offer Mt Bachelor the option to purchase any or all of the 10 vehicles at the end of the term of the agreement.

---

[3] See Exhibit A to the Mt. Bachelor Promotional Agreement.

10238567.2

  c. Provide artwork, graphic standards and logos to be used by Mt Bachelor in its promotional materials.

8. Under the Mt Bachelor Promotional Agreement, Mt Bachelor agreed to provide the following consideration to the Division ("**Mt Bachelor Promotional Consideration**" and together with the PCMR Promotional Consideration, collectively, the "**Promotional Consideration**")[4]:

  a. Inclusion of Division logos on Mt Bachelor Destination Brochures.

  b. Inclusion of Division logos on Mt Bachelor Resort Guides.

  c. Inclusion of Division logos on Mt Bachelor Resort Summer Guides.

  d. Inclusion of Division logos on Mt Bachelor Resort Trail Maps.

  e. Inclusion of Division advertisement on Mt Bachelor regular bi-monthly mailings e-mailed to Mt Bachelor's season ticket holders.

  f. Inclusion of Division advertisement on Mt Bachelor monthly mailings e-mailed to Mt Bachelor's customer mailing list.

  g. Three 10 second Public Address Announcements per each Mt Bachelor special event.

  h. Two unrestricted season lift-tickets for the 2008-09 ski-season given for the purchase of every new 2008 or 2009 Division vehicle purchased at participating dealers between November 1, 2008 and January 4, 2009.

---

[4] See Exhibit B to the Mt. Bachelor Promotional Agreement.

10238567.2

i. 1000 complimentary one-day ski lift tickets from Mt Bachelor for 2008-09 ski-season.

j. Space for four Special Events Banners to be displayed at Mt. Bachelor resort during the term of the agreement

k. Space for six Lodge Poster Signs to be displayed at Mt. Bachelor resort during the term of the agreement.

l. Display lasting 10 seconds on two LED Signs at Mt Bachelor resort.

m. An area at Mt Bachelor resort's West Village for Division dealer groups to use for promotion during the term of the agreement.

n. Mention of Division in two non-exclusive press releases regarding Division sponsorship of Mt Bachelor.

o. Mention of Division in one exclusive press releases regarding Division sponsorship of Mt Bachelor.

p. Inclusion of Division logos and sponsorship information with weblinks to Division website and Mt Bachelor's website.

q. Designation and recognition of Division as the official sponsor of Mt Bachelor.

r. Allow research to be conducted at Mt. Bachelor resort by Division and third-party vendor representatives during the term of the agreement.

10238567.2

  s. Two proof of performance of promotional consideration binders to be sent to Division.

  t. Maintain insurance on all Vehicles provided to Mt Bachelor.

9. All of the material Promotional Consideration under the PCMR Promotional Agreement has been performed by PCMR, most of which occurred during the 2008-09 ski-season. [See PCMR Botter Declaration ¶ 3.] The following is the extent of the ongoing consideration under the PCMR Promotional Agreement[5] [See PCMR Botter Declaration ¶ 4(a)-(g)]:

  a. Distribute printed material, all of which has been developed and printed; what little remains will be distributed during the term of the agreement.

  b. Continue running text and television advertisements at the PCMR venue which have been previously developed and will run on a continuous basis during the term of the agreement.

  c. Continue to allow Division access to promotional areas at the PCMR venue which have been previously developed and set apart for this purpose and will be available for the term of the agreement.

  d. Continue to maintain the PCMR website with Division logos and links; the website was previously developed and is on-line and will remain on-line for the term of the agreement.

---

[5] The majority of the Promotional Consideration was performed during the 2008-09 ski season. The ongoing residual Promotional Consideration was developed and/or implemented during the 2008-09 ski season and requires little if any additional actions by PCMR. [See PCMR Botter Declaration ¶ 5 and Mt Bachelor Botter Declaration ¶ 5.]

10238567.2

    e. Continue to allow access to third-party researchers of the Division at PCMR venues.

    f. Although the premiums for the insurance on the Vehicles have been paid through the end of the term of the agreement, PCMR does not intend to cancel that insurance.

    g. Provide final proof of performance documentation to the Division.

10.    All of the material Promotional Consideration under the Mt Bachelor Promotional Agreement has been performed by Mt Bachelor, most of which occurred during the 2008-09 ski-season. [See Mt Bachelor Botter Declaration ¶ 3.] The following is the extent of the ongoing consideration under the Mt Bachelor Promotional Agreement[6] [See Mt Bachelor Botter Declaration ¶ 4(a)-(i)]:

    a. Distribute printed material, all of which has been developed and printed; what little remains will be distributed during the term of the agreement.

    b. Continue visual and audio advertisements at the Mt Bachelor venue which have been developed and will run on a continuous basis during the term of the agreement.

    c. Leave in place Division signage previously placed at the Mt Bachelor venues.

---

[6] The majority of the Promotional Consideration was performed during the 2008-09 ski-season. The residual Promotional Consideration was developed and/or implemented during the 2008-09 ski-season and requires little if any additional actions by Mt Bachelor.

10238567.2

  d. Continue to leave Division logos and sponsorship information in monthly and bi-monthly emails, which mailing templates have already been developed and implemented.

  e. Continue to allow access to promotional areas at the Mt Bachelor venue which have been previously developed and set apart for this purpose and will be available for the term of the agreement.

  f. Continue to maintain Mt Bachelor website with Division logos and links, which was previously developed and is on-line and will remain on-line for the term of the agreement.

  g. Continue to allow access to third-party researchers of the Division at Mt Bachelor venues.

  h. Although the premiums for the insurance on the Vehicles have been paid through the end of the term of the agreement, Mt Bachelor does not intend and will not cancel the insurance.

  i. Provide final proof of performance documentation to the Division.

11. All of the Vehicles have been delivered to the Resorts and the Division has no further obligation under the Promotional Agreements to deliver further Vehicles or other consideration to the Resorts.[7] [See PCMR Botter Declaration ¶ 6 and Mt Bachelor Botter Declaration ¶ 6.]

---

[7] Both Promotional Agreements contain options to purchase the Vehicles at the end of the term of the agreements. As of GM filing date through the present, the Resorts have not indicated that they are

10238567.2

12. Under the Promotional Agreements the Vehicles are to be returned to the Division on October 16, 2009.

13. The Resorts and the Division have entered into agreements similar to the Promotional Agreements for several years. [See PCMR Botter Declaration ¶ 8 and Mt Bachelor Botter Declaration ¶ 8.]

14. The terms of the Promotional Agreements are for one year beginning at or near the time each Resort opened for the 2008-09 ski-season and ending on October 16, 2009.

15. The Promotional Agreements are governed by Michigan law.

## ARGUMENT

A debtor is permitted, with Court permission, to assume or reject executory contracts in compliance with § 365 of the Bankruptcy Code. However, the Bankruptcy Code does not provide guidance as to what constitutes an executory contract. The definition of executory contracts given by Vern Countryman in *Executory Contract in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973), is widely cited as the controlling test in the context of assumption or rejection of contracts under §365 of the Bankruptcy Code. "Most courts have adopted the definition proposed by Professor Vern Countryman, describing an executory contract as one that is not so fully performed that a breach by either side would constitute a material breach of the contract." *Penn Traffic Co. v. COR Route 5 Co., LLC (In re Penn Traffic Co.)*, 2005 WL 2276879 at *2 (S.D.N.Y. Sept. 16, 2005); *see also Shoppers World Community Center v.*

---

interested in exercising their options nor do they intend to do exercise these options. Without this exercise the option to purchase does not give rise to bilateral obligations under the Promotional Agreements. *See In re Helms*, 139 F.3d 702, 706 (9th Cir. 1998) (en banc). As such, the Promotional Agreements are not executory and cannot be rejected. [See PCMR Botter Declaration ¶ 7 and Mt Bachelor Botter Declaration ¶ 7.]

10238567.2

*Bradlees Stores, Inc. (In re Bradlees Store, Inc.)*, 2001 WL 1112308 at *6 (S.D.N.Y. Sept. 20, 2001); *In re Teligent, Inc.*, 268 B.R. 723, 730 (Bankr. S.D.N.Y. 2001).

Several courts have rejected the traditional Countryman test as the sole benchmark for determining whether a contract is subject to assumption or rejection and have articulated the "functional approach" test. *See generally In re Riodizio*, 204 B.R. 417 (Bankr. S.D.N.Y. 1997). The "functional approach" test determines whether a contract is executory by the benefits of assumption or rejection to the estate. *See Id.* at 422. The "functional approach" test "focuses upon whether or not the estate will benefit from the assumption or rejection of the contract: 'even though there may be material obligations outstanding on the part of only one of the parties to the contract, [the contract] may nevertheless be deemed executory under the functional approach if its assumption [or] rejection would ultimately benefit the estate and its creditors.'" *Shoppers World Cmty. Ctr., L.P. v. Bradlees Stores (in Re Bradlees Stores, Inc.)*, 2001 U.S. Dist. LEXIS 14755 (S.D.N.Y. 2001) (quoting *Sipes v. Atlantic Gulf Communities Corp. (In re General Dev. Corp.)*, 84 F.3d 1364, 1374 (11th Cir. 1996)). The Second Circuit has never formally adopted either the Countryman Test or the Functional Approach. *In re Bradlees Stores, Inc.*, 2001 WL 1112308, at *7. Nevertheless, many courts, have relied on the Countryman Test to determine the meaning of "executory contract" under § 365. *In re Bradlees Stores*, 2001 WL 1112308, at *7.

In analyzing a contract, a "material breach is a breach that goes to the root of the agreement between the parties, and is so substantial that it defeats that object of the parties in making the contract." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F.Supp.2d 383, 414 (S.D.N.Y. 2004)(internal citations omitted); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976); *see also Katz b. Berisford Int'l PLC*, No. 2000 WL 959721, at *3 (S.D.N.Y. July 10, 2000); *and Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 195 (S.D.N.Y. 1990). Under

10238567.2

the Countryman definition, contracts where one party has completed performance are "excluded from the ambit of section 365." *See In re Chateaugay Corp.*, 102 B.R. 335, 345 (Bankr. S.D.N.Y. 1989)(Countryman definition requires that material future performance obligations remain on both sides of a contract) (citing *In re J.M. Fields Inc.*, 22 B.R. 861, 864 (Bankr. S.D.N.Y. 1982)); *see also In re Spectrum Info. Technologies*, 190 B.R. 741, 747 (Bankr. E.D.N.Y. 1996) ("contracts where one party has completed performance are excluded from the ambit of section 365"). Many courts have indicated that even where bilateral obligations under a contracts exist a contract that is substantially performed is not executory. *See In re Pacific Exp. Inc.*, 780 F.2d 1482, 1487 (9th Cir. 1986); *see also In re Norwood Chevrolet Co.*, 143 B.R. 804 (Bankr. D.R.I. 1992) (substantial performance by both parties precludes rejection of contract); *and Heartline Farms v. Daly*, 128 B.R. 246, 250 (D. Neb. 1990) ("mere formality" remaining for performance "does not represent the kind of significant legal obligation that would render a contract executory").

Under the Countryman definition, the Promotional Agreements are not executory contracts subject to Section 365 of the Bankruptcy Code. While the Resorts have some residual ongoing duties under the Promotional Agreements, there are no further material obligations for the Resorts to perform. Any remaining obligations of the Resorts are *de minimis*, remote or contingent. As noted above, the majority of the Promotional Consideration under the Promotional Agreements was given during the 2008-09 ski season which has ended. [See PCMR Botter Declaration ¶ 3 and Mt Bachelor Botter Declaration ¶ 3.] Remaining ongoing obligations, such as, insuring the vehicles (under existing, pre-paid insurance contracts), distribution of brochures and trail maps (which previously were printed), and maintenance of the Divisions logo on the Resorts' websites (which previously were created and installed) are *de minimis* and were

10238567.2

not the core object of the parties when entering into the Promotional Agreements. *In re Chateaugay Corp.*, 102 B.R. at 345 (ongoing insurance obligations as de minimis). As both Resorts operate predominately during the ski-season, the intent of the parties was to promote the Division's vehicles during the ski-season with some minor residual promotion during the off-season. [See PCMR Botter Declaration ¶ 5 and Mt Bachelor Botter Declaration ¶ 5.]

Additionally, the Division has performed substantially all obligations under the Promotional Agreements, and, therefore, the Promotional Agreements cannot be considered executory under the Countryman test. Under the Promotional Agreements, the Division was to deliver the vehicles to the Resorts for use during the term of the Promotional Agreement. The Division fully performed this obligation. At the end of the term, the Resorts are to return the Vehicles to the Division. The Division has no other ongoing affirmative duties under the Promotional Agreements, and, therefore, the agreements are not executory. As such, the Court cannot permit GM to "reject" the Promotional Agreements, and the Resorts should be allowed to retain possession of the Vehicles until October 16, 2009.

Application of the "functional approach" leads to the same result. As noted above, all Vehicles were delivered to the Resorts before the Petition Date. The Division has no remaining obligations under the Promotional Agreements. As the estate has no further duties under the Promotional Agreements, and the Division will obtain possession of the Vehicles in a matter of months at the end of the contract term, the estate will not benefit from early rejection of the contracts. To the contrary, if the contract is left in place, the Division will continue to receive the promotional benefits that it bargained for and will avoid a liability from breach of the agreements.

10238567.2

## **CONCLUSION**

The parties have no remaining material obligations to perform under the Promotional Agreements, and, therefore, these contracts cannot be rejected under § 365 of the Code. With respect to the Promotional Agreements, the Omnibus Motion must be denied, and the Resorts should be allowed to retain possession of the Vehicles until October 16, 2009.

[Remainder of Page Intentionally Left Blank.]

10238567.2

Dated: Salt Lake City, Utah
July 2, 2009

        Snell & Wilmer L.L.P.

By: _____
David E. Leta, Esq.
Timothy J. Dance, Esq.
*Attorneys for Greater Park City Company d/b/a Park City Mountain Resort and Mt Bachelor, Inc.*

10238567