David E. Leta (*pro hac* admission pending)
Timothy J. Dance, Esq. (*pro hac* admission pending)
**SNELL & WILMER** L.L.P.
15 West South Temple, Suite 1200
Beneficial Tower
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
E-mail: delta@swlaw.com
       tdance@swlaw.com

Attorneys for Greater Park City Company d/b/a Park City Mountain
Resort and Mt Bachelor, Inc.

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
                                                       :
In re                                                  :      Chapter 11 Case No.
                                                       :
**GENERAL MOTORS CORP.,** *et al.,*                    :      09-50026 (REG)
                                                       :
                                                       :      Jointly Administered
              Debtors.                                 :
-------------------------------------------------------X

**DECLARATION OF JENNIFER BOTTER IN SUPPORT OF PARK CITY MOUNTAIN
RESORT'S AND MT BACHELOR, INC.'S OBJECTION TO DEBTORS' OMNIBUS
MOTION PURSUANT TO 11 U.S.C. § 365 TO REJECT CERTAIN EXECUTORY
CONTRACTS**

Jennifer Botter declares as follows:

1.      I am Senior Vice President and Chief Financial Officer to Mt Bachelor, Inc. ("**Mt
Bachelor**"), an Oregon corporation, which entered into that certain Promotional Agreement
("**Mt Bachelor Promotional Agreement**"), dated November 13, 2008, with Chevrolet Motor

10240686

Division ("**Division**"), General Motors Corporation.  Capitalized terms used but not defined

herein shall have the meanings given to such terms in the Objection to Debtors' proposed

Omnibus Motion Pursuant to 11 U.S.C. §365 to Reject Certain Executory Contracts filed

concurrently herewith

      2.     A true and correct copy of the Mt Bachelor Promotional Agreement is attached

hereto as **Exhibit A**.

      3.     All of the material Promotional Consideration under the Mt Bachelor Promotional

Agreement has been performed by Mt Bachelor, most of which occurred during the 2008-09 ski-

season.

      4.     The following is the extent of Mt Bachelor's ongoing consideration under the Mt

Bachelor Promotional Agreement:

      a.  Distribute printed material, all of which has been developed and printed;
           what little remains will be distributed during the term of the agreement.

      b.  Continue visual and audio advertisements at the Mt Bachelor venue which
           have been developed and will run on a continuous basis during the term of
           the agreement.

      c.  Leave in place Division signage previously placed at the Mt Bachelor
           venues.

10240686

        d.   Continue to leave Division logos and sponsorship information in monthly and bi-monthly emails, which mailing templates have already been developed and implemented.

        e.   Continue to allow access to promotional areas at the Mt Bachelor venue which have been previously developed and set apart for this purpose and will be available for the term of the agreement.

        f.   Continue to maintain Mt Bachelor website with Division logos and links, which was previously developed and is on-line and will remain on-line for the term of the agreement.

        g.   Continue to allow access to third-party researchers of the Division at Mt Bachelor venues.

        h.   Although the premiums for the insurance on the Vehicles have been paid through the end of the term of the agreement, Mt Bachelor does not intend and will not cancel the insurance.

        i.   Provide final proof of performance documentation to the Division.

5.     None of the ongoing promotional consideration represents the object of the parties when entering into the Promotional Agreement.

6.     All Vehicles have been delivered by the Division to Mt Bachelor and the Division has no further obligations to be performed under the Mt Bachelor Promotional Agreement.

10240686

7.      As of GM filing date through the present, Mt Bachelor has not indicated to the

Division that Mt Bachelor is interested in exercising its options to purchase Vehicles under the

Mt Bachelor Promotional Agreement nor does Mt Bachelor intend to exercise the option.

8.      Mt Bachelor and the Division have entered into agreements similar to the Mt

Bachelor Promotional Agreement for several years.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated this 1st day of July, 2009,

JENNIFER BOTTER

10240686

EXHIBIT A

# PROMOTIONAL AGREEMENT
## Between
## CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
## And
## MT BACHELOR, INC

This Agreement, dated as of the date of the last signature herein, is entered into by and between CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION, a Delaware corporation, having a place of business at 515 Marin Street, Thousand Oaks, CA 91360 ("DIVISION") and MT BACHELOR, INC, an Oregon corporation, having a place of business at 13000 Century Drive, Bend, OR 97709 ("PROMOTER"). In consideration of the promises hereinafter made to each other, the parties hereto agree as follows:

1.    PROMOTIONAL CONSIDERATIONS

DIVISION agrees to provide the consideration listed on **Exhibit A** attached hereto. PROMOTER, for its part, agrees to provide the promotional services and other consideration to DIVISION listed on **Exhibit B** attached hereto. If vehicles are loaned to PROMOTER as part of the consideration identified on **Exhibit A** (the "Vehicles"), then PROMOTER further agrees to the following terms and conditions:

A.    PROMOTER agrees to obtain and maintain, at its own expense, comprehensive automobile liability insurance covering all owned, non-owned and hired vehicles (except for the Vehicles identified in Paragraph 1.D below) with limits of not less than $5,000,000 per occurrence, combined single limit for personal injury and property damage, including all statutory coverage for all states of operation. The PROMOTER will also provide comprehensive (fire and theft) and collision coverage on the Vehicles. Prior to delivery of the Vehicles the PROMOTER will provide DIVISION with a certificate of insurance evidencing General Motors Corporation as an additional insured, stating that such insurance is primary in coverage to any other insurance which may be available to General Motors Corporation, and providing at least thirty (30) days' prior written notice to DIVISION of cancellation, modification, or material change to the policy.

B.    Upon receipt of the Vehicles, PROMOTER will execute and deliver to DIVISION a copy of the Loan of Vehicle Terms and Conditions and Vehicle Receipt (attached as **Exhibit C**). Unless otherwise agreed to by DIVISION in writing, the Vehicles will only be used by PROMOTER or its officers, directors, employees, agents or subcontractors or individuals who are driving the Vehicles while on business related to the activities contemplated under this Agreement. PROMOTER agrees to obtain from each individual permitted to drive a Vehicle a signed copy of General Motors Safe Driver Program Driver Conduct Requirements (attached as **Exhibit D**). PROMOTER will retain the executed copy for a period of three (3) years and will provide them to DIVISION at DIVISION's request. At delivery PROMOTER agrees to conduct an inspection of the Vehicles. If there is any damage to any Vehicles, PROMOTER shall immediately notify

1

DIVISION and ESIS, DIVISION's insurance claims administrator, in writing, prior to taking delivery of the Vehicles. PROMOTER hereby waives, on behalf of itself and any party claiming by or through PROMOTER, and claim that damages to the Vehicles existed prior to delivery to PROMOTER, unless PROMOTER provides timely notice of those damages as required under this paragraph.

C.    At the end of the term of the loan, or earlier if requested by DIVISION, PROMOTER will return the Vehicles to the nearest DIVISION office or such other location as designated by DIVISION, in the same condition as delivered, reasonable wear and tear excepted (based on GM guidelines). Prior to return of the Vehicles, DIVISION, or its insurance claims administrator, shall conduct an inspection of the Vehicles. PROMOTER shall have a representative present at the inspection. If PROMOTER fails to have a representative present at the inspection of the Vehicles, PROMOTER expressly waives any right to contest the results of the inspection. If a Vehicle must be recovered by DIVISION or requires repairs to restore it to the condition in which it was delivered, then PROMOTER will pay DIVISION the costs to recover the Vehicle and the costs of any damage based on a repair estimate by a certified appraisal service or dealer. If, in DIVISION's opinion, a Vehicle cannot or should not be repaired based upon General Motors Corporation's policy for repairing/scrapping damaged vehicles, then the Vehicle must be returned to DIVISION and the PROMOTER will pay DIVISION the Vehicle's value, based upon the following formula: The amount General Motors Corporation would have received if the Vehicle had been sold at auction the month the Vehicle was damaged based on a similar make and model year vehicle with similar mileage, as determined by GM Remarketing Staff, Fleet and Commercial Operations sale results report, less (i) the salvage value of the Vehicles as determined by DIVISION based on competitive salvage bid, or (ii) $4,000 if there are no salvage bids.

D.    Paragraphs 1.A., 1.B. and 1.C. of this Agreement do not apply to vehicles identified in Exhibit A as loaned to PROMOTER for static display purposes only ("Static Display Vehicles"). As to Static Display Vehicles, however, PROMOTER acknowledges that the Vehicles are, and shall remain, the property of DIVISION. PROMOTER agrees that: (a) the Static Display Vehicles are for static display purposes only, with the exception of minimal driving to move the Static Display Vehicles a very short distance, and not on any public roads; and (b) PROMOTER shall not tamper, disconnect, or otherwise interfere with the operation of the odometer, emission control equipment, or any other equipment. As to Static Display Vehicles, each party, on behalf of itself and anyone holding under or through such party, waives all rights against the other for damages to its premises and property.

2.    USE AND PROTECTION OF TRADEMARK AND OTHER INTELLECTUAL PROPERTY

PROMOTER and DIVISION acknowledge that each party owns certain names, trademarks, service marks, copyrights and other intellectual property ("Marks"), and owns or has certain merchandising rights in and to the Marks, and all goodwill associated

2

with or symbolized by the Marks. It is understood that in promoting PROMOTER's activities, PROMOTER and DIVISION may make various references to the activities and may display the Marks of PROMOTER and DIVISION, and pictures of the activities. Each party hereto grants to the other a nonexclusive, nontransferable license to use its Marks during the term of this Agreement and subject to the terms and conditions hereinafter set forth, solely in connection with advertising and promoting any event or activity incidental hereto.

PROMOTER and DIVISION must agree in writing as to the form and content of any promotional or advertising materials and the media in which such materials are to be used prior to their use, which approval the parties shall not unreasonably withhold; and such use may be subject to such reasonable conditions as either party may impose, including, but not limited to, conditions affording each party adequate protection of its Marks. Upon termination or expiration of this Agreement, both parties shall cease all use of the Marks of the other party as soon as practicable, but in any event within thirty (30) days unless the particular media which has been approved requires a longer lead time, but in no event longer than ninety (90) days.

Neither party will impugn, challenge or assist in any challenge to the validity of the other party's Marks, any registrations thereof, or the ownership thereof. Each party will be solely responsible for taking such actions as it deems appropriate to obtain trademark, service mark or copyright registration for its respective Marks. All uses of or references to the Marks shall inure to the benefit of the respective owner, and all rights with respect to the Marks not specifically granted in this Agreement shall be and are hereby reserved to the respective owner.

Neither party is granted any right or license under this Agreement to sell, or otherwise distribute for sale, any of the promotional or advertising materials, or items related thereto. If a party desires to sell, or distribute for sale, any of such materials or other merchandising or novelty items bearing the names, trademarks, copyrights or other intellectual property of the other party, then it shall request permission to do so from the other party, and if granted, the parties shall negotiate in good faith a separate licensing agreement covering such materials or items before they may be sold or distributed for sale.

## 3.    CONSUMER INFORMATION

If customer lists, databases or any other personally identifiable information (the "Databases") are given to DIVISION as part of the consideration identified on **Exhibit B**, then PROMOTER further represents and warrants that it has obtained all necessary permission and consent, in compliance with any applicable laws and regulations, to provide DIVISION with the Databases for any purpose the DIVISION, in its sole discretion, sees fit.

4.    EXCLUSIVITY OF PERFORMANCE

During the term of this Agreement, PROMOTER will not conduct nor participate in promotional activities with any other motor vehicle or component parts manufacturers, distributors or dealers, which may conflict with DIVISION's interests, without the prior written approval of DIVISION. PROMOTER further represents and warrants that no other motor vehicle or component parts manufacturers or distributors will participate in any way in the activities and events described herein without the prior written approval of DIVISION.

5.    TERM; RIGHT OF FIRST REFUSAL

The term of this Agreement shall commence as of the signing of this Agreement by both parties and end on the date set forth on **Exhibit A**, or if no date is indicated, upon completion of the obligations of both parties.  If the term of this Agreement is more than one year, DIVISION may terminate this Agreement effective as of December 31 of any year by giving PROMOTER written notice of the termination prior to October 1.

If PROMOTER intends to conduct comparable event(s) or promotional activities beyond the term of this Agreement, PROMOTER shall provide to DIVISION a written proposal for DIVISION to continue its sponsorship.  PROMOTER shall provide the proposal prior to, or within ninety (90) days before, expiration or termination of this Agreement. DIVISION shall advise PROMOTER, in writing, within thirty (30) days of its receipt of such proposal or sixty (60) days before expiration or termination of this Agreement, whichever comes later, whether or not it will participate on the terms contained in PROMOTER's formal written proposal.  If DIVISION elects not to participate on the terms of the proposal and the parties are unable to negotiate mutually acceptable terms, then PROMOTER shall be free to negotiate with others; provided, however, that PROMOTER shall not offer terms to others which are materially different than those previously offered to DIVISION, without first offering such different terms to DIVISION. DIVISION shall advise PROMOTER, in writing, within ten (10) days of receipt of such different terms whether or not it will participate on the different terms. The parties' obligations contained in this Section will survive one (1) year after the expiration or termination of this Agreement.

6.    INDEMNIFICATION

    A.    PROMOTER agrees to indemnify and hold harmless General Motors Corporation, its officers, directors, agents, and employees, from and against any and all claims, demands, obligations, causes of action and lawsuits and all damages, liabilities, fines, judgments, costs (including settlement costs), and expenses associated therewith (including the payment of reasonable attorney fees and disbursements), arising out of: (1) the failure of PROMOTER, its employees or agents, to comply with the terms and conditions of this Agreement; (2) the negligent acts or omissions of PROMOTER, its employees, agents, or subcontractors; (3) DIVISION's use of PROMOTER's Marks as authorized by this Agreement;  (4) the services performed or actions taken by

4

06/30/2009   20:25    8053739509    RWORKSWEST    PAGE  06/21

PROMOTER, its employees or agents, in connection with this Agreement, including the operation and management of any event or activity incidental thereto; or (5) PROMOTER's use or possession of any Vehicles loaned to it by DIVISION.

B.    DIVISION agrees to indemnify and hold harmless PROMOTER, its officers, directors, agents and employees from and against any and all claims, demands, obligations, causes of action and lawsuits and all damages, liabilities, fines, judgments, costs (including settlement costs), and expenses associated therewith (including the payment of reasonable attorney fees and disbursements), arising out of: (1) the failure of DIVISION, its employees or agents, to comply with the terms and conditions of this Agreement; (2) the negligent acts or omissions of DIVISION, its employees, agents, or subcontractors, (3) PROMOTER's use of DIVISION's Marks as authorized by this Agreement; or (4) defects in the design, assembly, or manufacture of any Vehicle loaned by DIVISION to PROMOTER.

C.    The obligations to indemnify contained in this Section 6 will survive the expiration or termination of this Agreement.

7.    INSURANCE

A.    PROMOTER shall maintain, during the term of this Agreement, at its own expense, the following kinds of insurance with minimum limits as set forth below:

| Kind of Insurance | Minimum Limits |
|---|---|
| (1) Commercial General Liability (including contractual liability) | $1,000,000 per occurrence combined single limit for personal injury and property damage |
| | If spectator events are identified on **Exhibit B**, PROMOTER shall maintain spectator's liability insurance (either included in the Commercial General Liability or in a separate policy) in an amount not less than $5,000,000 per occurrence combined single limit for personal injury and property damage. |
| (2)    Workers Compensation | Statutory (for all states of operation) including Employer's Liability with limits of not less than $500,000 |

B.    Prior to commencement of any activities described herein, PROMOTER shall furnish DIVISION with a certificate showing the applicable coverage, naming

5

General Motors Corporation as an additional insured (except A(2) Workers Compensation), stating that such insurance is primary in coverage to any other insurance which may be available to General Motors Corporation, and providing at least thirty (30) days' prior written notice to DIVISION of cancellation, modification or material change to the policy. Such certificate shall be in a form acceptable to DIVISION and must be underwritten by an insurer satisfactory to DIVISION. PROMOTER's purchase of appropriate insurance coverage or the furnishing of the certificate shall not release PROMOTER from its obligations or liabilities under this Agreement.

8.    CANCELLATION FOR BREACH; INSOLVENCY

A.    Either party may cancel this Agreement, without liability to the other party, if the defaulting party: (1) repudiates or breaches any of the terms of this Agreement; or (2) fails to make progress so as to endanger timely and proper completion of its services; and does not correct such failure or breach within ten (10) days, or such shorter period if commercially reasonable, after receipt of written notice from the non-defaulting party specifying such failure or breach.

B.    Either party may cancel this Agreement immediately, without liability to the other party, upon the happening of any of the following or any other comparable event: (1) insolvency of the other party; (2) filing of any petition by or against the other party under any bankruptcy, reorganization or receivership law; (3) execution of an assignment for the benefit of the other party's creditors; or (4) appointment of any trustee or receiver of the other party's business or assets or any part thereof; unless such petition, assignment or appointment be withdrawn or nullified within fifteen (15) days of such event.

C.    In the event this Agreement is canceled, each party shall cease using the other party's Marks, and PROMOTER shall return those funds, if any, paid to it by DIVISION for services which have not yet been performed. In addition, if vehicles are loaned to PROMOTER, PROMOTER shall promptly return the vehicles to DIVISION.

D.    The foregoing remedies are in addition to, and not in lieu of, any other rights or remedies that a party may have at law or in equity; provided however, that in no event will either party be liable to the other for incidental, consequential or punitive damages arising out of a breach of this Agreement.

9.    FORCE MAJEURE

Any delay or failure of either party to perform its obligations hereunder shall be excused to the extent that it is caused by an event or occurrence beyond its reasonable control such as, by way of example and not by way of limitation, acts of God, actions by governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage or labor problems; provided the party claiming force majeure promptly notifies the other party of the event of force majeure, the anticipated duration of the event of force majeure, and the steps being taken to remedy the failure. Should the event of force majeure continue beyond thirty (30) days, or such

6

shorter time period as may be reasonable under the circumstances, either party may terminate this Agreement, and DIVISION shall be entitled to a pro rata refund for services not yet performed by PROMOTER.

10.    GOVERNING LAW; SEVERABILITY

This Agreement is to be governed by and construed according to the laws of the State of Michigan, excluding any such laws which direct the application of laws of any other jurisdiction. If any term of this Agreement is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Agreement shall remain in full force and effect.

11.    COMPLIANCE WITH LAWS

Each party will perform its obligations under this Agreement in compliance with all applicable laws, orders, or regulations of all appropriate jurisdictions.

12.    NO IMPLIED WAIVERS

Failure by either party at any time to require performance by the other party of any provision hereof shall in no way affect the right to require full performance any time thereafter, nor shall the waiver by either party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of same or any other provision, nor constitute a waiver of the provision itself.

13.    NO ASSIGNMENT

Neither party may assign its rights, nor delegate its obligations under this Agreement, without the prior written approval of the other party.

14.    RELATIONSHIP OF THE PARTIES

PROMOTER and DIVISION are independent contracting parties, and nothing contained in this Agreement shall be deemed to create a partnership, joint venture or agency relationship between them, nor does it grant either party any authority to assume or create any obligation on behalf of or in the name of the other.

15.    NOTICES

Any notice required or permitted to be given by either party under or in connection with this Agreement shall be in writing and shall be deemed duly given when personally delivered or sent by registered or certified mail, return receipt requested, postage prepaid, expedited courier service, or by cable or facsimile, confirmed by letter, as aforesaid to the addresses indicated in the introductory paragraph of this Agreement, unless otherwise agreed to by the parties.

7

16.    ENTIRE AGREEMENT

This Agreement (i) contains the entire understanding of the parties hereto, (ii) supersedes
all prior agreements, and (iii) shall not be amended except by a written instrument
hereafter signed by all parties hereto. No waiver of any provision of this Agreement shall
be effective unless evidenced by a written instrument signed by the waiving party. THE
PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT, IN ENTERING IN TO
THIS AGREEMENT, THEY HAVE NOT IN ANY WAY RELIED UPON ANY ORAL
OR WRITTEN AGREEMENTS, UNDERSTANDINGS, REPRESENTATIONS OR
WARRANTIES, EXPRESS OR IMPLIED, NOT SPECIFICALLY SET FORTH IN
THIS AGREEMENT. The parties expressly waive application of any local, state, or
federal law, statute, or judicial decision allowing oral modifications, amendments, or
additions to this Agreement notwithstanding an express provision requiring a writing
signed by the parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed
by their duly authorized representatives on the dates indicated below.

| PROMOTER | DIVISION |
|---|---|
| McBachelor, Inc. | Chevrolet Motor Division, General Motors Corporation |
| By: | By: |
| Print Name: _DAVID RATHBUN_ | Print Name: Jay Fishman  CRAIG A VILLELA |
| Title: _PRESIDENT + GM._ | Title: RDMM |
| Date: _11-10-2008_ | Date: 11/13/08 |

Attachments:
Exhibit A - DIVISION's Consideration
Exhibit B - PROMOTER's Consideration
Exhibit C - Loan of Vehicle Terms and Conditions and Vehicle Receipt
Exhibit D - General Motors Safe Driver Program Driver Conduct Requirements

8

## PROMOTIONAL AGREEMENT
### Between
### CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
### MT BACHELOR, INC

### EXHIBIT A

DIVISION agrees to the following:

1. The term of this Agreement shall commence on the date of signing by both parties and end on October 16, 2009.

DIVISION will sponsor Mt Bachelor Resort (the "Sponsorship") which will take place at Mt Bachelor Resort (the "Venue") in Bend, OR from the execution date of the Agreement through October 16, 2009.

2. Loan ten (10) factory-equipped Chevrolet vehicles (the "Courtesy Vehicles") for use by PROMOTER for the Sponsorship. PROMOTER will pick up the Courtesy Vehicles at a specific date, time and location determined by DIVISION. Specific model, model year, and option content will be determined by DIVISION. PROMOTER will not allow any modification or alteration of the Courtesy Vehicles or any installation of any body or equipment thereon. PROMOTER will return the Courtesy Vehicles to DIVISION at a specific date, time and location to be determined by DIVISION but not later than midnight on the day this Agreement expires.

3. At the end of the term of the loan, PROMOTER will have the opportunity to purchase any or all of the vehicles designated in Exhibit A.2 as Courtesy Vehicles by providing written notice to DIVISION on or before October 16, 2009. If PROMOTER exercises this option, then; 1) PROMOTER acknowledges and agrees that these vehicles will no longer be considered Courtesy Vehicles, and the provisions of Section 1.A - 1.C of this Agreement will no longer apply to these vehicles; 2) DIVISION will deliver these vehicles through a dealership of PROMOTER'S choice; 3) ownership of these vehicles, and all rights, title and interest therein, will be transferred entirely to PROMOTER as of the date on which PROMOTER takes delivery of the vehicles; 4) the actual purchase price of the vehicles will be negotiated and agreed upon between PROMOTER and the dealership chosen by PROMOTER. General Motors and DIVISION will have no involvement in the determination of the selling price, it will be established solely between the PROMOTER and selected dealer; and 5) PROMOTER will be solely responsible for all costs related to the vehicles, including, but not limited to, tax, title, registration, gasoline, maintenance, mileage, wear and tear, license fees, and insurance for these vehicles.

4. Provide descriptive artwork, graphic standards and Marks to be used by PROMOTER in all printed promotional material and wherever useful to maximize DIVISION

9

exposure. Unless otherwise specified in Exhibit B, DIVISION requires seven (7) business days to complete review of materials. Artwork to be provided, as needed, by DIVISION's advertising agency, Campbell-Ewald (the "AGENCY").



10

PROMOTIONAL AGREEMENT
Between
CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
And
MT BACHELOR, INC

EXHIBIT B

PROMOTER agrees to provide DIVISION with the following:

1.  Prominent inclusion of one (1) 4-color, 1" x 1" DIVISION reference containing
    DIVISION's Marks, as supplied by AGENCY, on all Resort Destination
    Brochures, which will be produced and distributed by PROMOTER to
    approximately ninety thousand (90,000) people.

2.  Prominent inclusion of one (1) 4-color, 1" x 1" DIVISION reference containing
    DIVISION's Marks, as supplied by AGENCY, on all Resort Guides, which will
    be produced and distributed by PROMOTER to approximately seventy five
    thousand (75,000) people.

3.  Prominent inclusion of one (1) 4-color, 1" x 1" DIVISION reference containing
    DIVISION's Marks, as supplied by AGENCY, on all Resort Summer Guides,
    which will be produced and distributed by PROMOTER to approximately twenty
    thousand (20,000) people.

4.  Prominent inclusion of one (1) 4-color, 1" x 1" DIVISION reference containing
    DIVISION's Marks, as supplied by AGENCY, on no less than one hundred
    thousand (100,000) Resort Trail Maps, which will be produced and distributed by
    PROMOTER to attendees of the Venue.

5.  Prominent inclusion of one (1) 4-color, DIVISION advertisement, as supplied by
    AGENCY, in each bi-monthly regular PROMOTER winter mailings to be e-
    mailed by PROMOTER to approximately twelve thousand (12,000) individuals
    on PROMOTER's season pass holders mailing list. DIVISION's presence shall
    constitute approximately five percent (5%) of each e-mail. PROMOTER
    represents and warrants that it is fully authorized and has obtained all necessary
    permission and consent in accordance with all applicable laws to use its mailing
    list for the purposes contemplated herein and for any mailing that includes
    DIVISION's Marks and/or advertising material. PROMOTER further represents
    and warrants that with regard to any mailing it distributes per this paragraph: a)
    PROMOTER shall be clearly identified as the sole sender of such mailing, and b)
    PROMOTER shall not reference, refer to, or otherwise utilize any DIVISION
    mailing lists in compiling its own mailing list.

6.  Prominent inclusion of one (1) 4-color, DIVISION advertisement, as supplied by
    AGENCY, in each of twelve (12) monthly PROMOTER mailings to be e-mailed
    by PROMOTER to approximately one hundred thirty thousand (130,000)

11

individuals on PROMOTER's general customer mailing list. DIVISION's presence shall constitute approximately five percent (5%) of each e-mail. PROMOTER represents and warrants that it is fully authorized and has obtained all necessary permission and consent in accordance with all applicable laws to use its mailing list for the purposes contemplated herein and for any mailing that includes DIVISION's Marks and/or advertising material. PROMOTER further represents and warrants that with regard to any mailing it distributes per this paragraph: a) PROMOTER shall be clearly identified as the sole sender of such mailing, and b) PROMOTER shall not reference, refer to, or otherwise utilize any DIVISION mailing lists in compiling its own mailing list.

7. A minimum of three (3) ten-second (:10) Public Address Announcements per each Mt. Bachelor special event regarding DIVISION's sponsorship of the Venue. Verbiage will be supplied by AGENCY for broadcast by PROMOTER.

8. The Ski Chevy Program: For every new 2008 or 2009 Chevrolet vehicle purchased or leased through a participating DIVISION dealership between November 1, 2008 through January 4, 2009, PROMOTER will provide (at no cost to DIVISION) two (2) unrestricted, non-transferable season ski passes valid and redeemable at Mt. Bachelor Resort for the 2008/09 ski season. The maximum number of redeemed season passes PROMOTER will provide is one thousand six hundred forty five (1,645); if the number exceeds one thousand six hundred forty five (1,645), then PROMOTER and DIVISION will negotiate a reasonable cost for purchase of additional season passes.

9. One thousand (1,000) complimentary daily ski lift tickets entitling each holder to skiing for one day at the Venue on the following dates: during the 2008/09 ski season. These daily ski lift tickets will be used by DIVISION for whatever purpose DIVISION, in its sole discretion, deems fit, including, but not limited to, consumer advertising and promotional purposes. All tickets must be sent to DIVISION's agency, GM R*Works, at the following address: 515 Marin Street, Thousand Oaks, CA 91360, Attn: Kavon Iranpour. While these tickets will be provided at no additional cost to DIVISION, the current purchase price for such tickets would be sixty nine dollars ($69.00) per ticket.

10. Prominent space for four (4) 3' x 6' signs (the "Special Event Banner Signs") featuring DIVISION's Marks and advertising material. The Special Event Banner Signs will be located at the Venue. PROMOTER warrants to DIVISION that the Special Event Banner Signs will be on display throughout the duration of the Mt. Bachelor special events and that they will contain exclusively whatever DIVISION Marks and advertising material DIVISION elects to produce. DIVISION will be responsible for the initial design, layout, fabrication, production, installment and maintenance of the Special Event Banner Signs and the removal of them at the expiration or termination of this Agreement.

12

06/30/2009   20:25      8053739509              RWORKSWEST                           PAGE   14/21

11. Prominent space for six (6) 24" x 36" signs (the "Lodge Poster Signs") featuring DIVISION's Marks and advertising material. The Lodge Poster Signs will be located in the mountain lodges at the Venue. PROMOTER warrants to DIVISION that the Lodge Poster Signs will be on display throughout the duration of the Sponsorship and that they will contain exclusively whatever DIVISION Marks and advertising material DIVISION elects to produce. DIVISION will be responsible for the initial design, layout, fabrication, production, installment and maintenance of the Lodge Poster Signs and the removal of them at the expiration or termination of this Agreement.

12. Prominent inclusion of DIVISION's Marks and advertising material, as supplied by AGENCY, on two (2) 1-color, 3' x 4' signs (the "LED Signs"). The LED Signs will be located at the base of the Venue. DIVISION's presence on the LED Signs will measure no less than ten-seconds (:10). PROMOTER warrants to DIVISION that the LED Signs will be on display throughout the duration of the Sponsorship. PROMOTER will be responsible for all expenses for the initial design, layout, fabrication, production, installment and maintenance of the LED Signs and the removal of them at the expiration or termination of this Agreement.

13. One (1) prominent space, measuring no less than twenty five (25) feet by twenty (20) feet, located in the West Village, at the Venue, for DIVISION and/or a General Motors dealer group to use for the duration of the term of the Agreement for whatever purpose DIVISION chooses, including, but not limited to, the display of its products and services. If DIVISION elects to display vehicles: (a) any vehicles displayed by DIVISION (the "DIVISION Display Vehicles") will be for static display purposes only; (b) DIVISION will arrange for appropriate transportation of the DIVISION Display Vehicles to and from the display location(s); (c) Specific models and option content will be determined by DIVISION; (d) PROMOTER shall ensure that the vehicles are maintained in a clean condition while on display; (e) PROMOTER will be solely responsible for obtaining any necessary license or permit for the display(s); (f) as to DIVISION Display Vehicles, each party, on behalf of itself and anyone holding under or through such party, waives all rights against the other for damages to its premises and property; and (g) DIVISION will remove the DIVISION Display Vehicles at specific date(s) and time(s) to be mutually agreed upon by the parties, but not later than midnight on the day this Agreement expires.

14. Mention of DIVISION in a minimum of two (2) press releases regarding DIVISION and the Sponsorship. The press releases will be produced and distributed by PROMOTER to approximately three hundred (300) media contacts. PROMOTER will be solely responsible for all costs related to the production and distribution of the releases. Subject to Section 4 (Exclusivity of Performance) of this Agreement, the press releases may not be exclusive to DIVISION and may contain mentions of other sponsors. PROMOTER will provide DIVISION with at least fifteen (15) days advance notice of deadlines to submit press release copy and/or photography specific to DIVISION. PROMOTER will also provide an

13

advance list of media recipients comprised of television, radio, print and Web-based contacts who will receive the releases.

15. One (1) DIVISION-dedicated press release, discussing solely DIVISION's participation in the Sponsorship. The press release will be produced and distributed by PROMOTER to approximately three hundred (300) media contacts. The press release will be exclusive to DIVISION and may not contain mentions of other sponsors. PROMOTER will be solely responsible for all costs related to the production and distribution of the release. PROMOTER will provide DIVISION at least fifteen (15) days advance notice of deadlines to submit press release copy and/or photography specific to DIVISION. PROMOTER will also provide an advance list of media recipients comprised of television, radio, print and Web-based contacts who will receive the release.

16. DIVISION Marks in the form of one (1) logo with link, and sponsorship ID, (the "Internet Marks"), a minimum of one hundred twenty by sixty (120 x 60) pixels in size, linking to DIVISION'S website, www.chevy.com, from a highly visible location on the homepage of the PROMOTER's website, www.mtbachelor.com. DIVISION will also receive sponsorship identification as "The Official Vehicle of Mt. Bachelor" on the PROMOTER's website. The Internet Marks will be placed and provided by PROMOTER upon content approval of DIVISION. The Internet Marks will be active and accessible to the general public upon execution of this Agreement through October 16, 2009. PROMOTER guarantees nine hundred thousand (900,000) total impressions for the Internet Marks.

17. Designation and prominent recognition of DIVISION as the official sponsor of the Venue. All public identification and recognition of this official sponsorship status shall be made as follows or as otherwise determined by DIVISION: "Chevrolet, Official Sponsor of the Mt. Bachelor Resort."

18. The right for DIVISION to hire an unrestricted number of third-party vendor representatives to conduct research at the Venue during the Sponsorship. Such research activities will include, but not be limited to, such vendor representatives conducting on-site interviews and collecting phone numbers and other personal information, and, except as noted above, unless otherwise mutually agreed upon by the parties, will not be limited to a particular timeframe or area at the Venue.

19. Two (2) proof of performance binders to include, but not be limited to, samples of printed materials, photographs of the Venue and Sponsorship showing the DIVISION signage, attendance, Courtesy Vehicle usage and display, DIVISION's display areas, media affidavits, monthly site-logs for Internet impressions guaranteed and any other materials that will show proof of PROMOTER's performance related to this Agreement. PROMOTER will ship the binders to DIVISION's agency, GM R*Works, at: 515 Marin Street, Thousand Oaks, CA 91360 to the attention of Kavon Iranpour.

14

## PROMOTIONAL AGREEMENT
### Between
## CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
## MT BACHELOR, INC

### EXHIBIT C

### PROMOTER Loan of Vehicle Terms and Conditions and Vehicle Receipt

Chevrolet Motor Division of General Motors Corporation ("DIVISION") agrees to loan the following Vehicles to Mt Bachelor, Inc. ("PROMOTER") from approximately October 27, 2008 to October 16, 2009, upon the terms set forth below:

MAKE: Chevrolet

MODEL: Express Passenger Van -one (1), Silverado 1500 Crew Cab-two (2), Suburban 3/4 Ton-one (1), Tahoe Hybrid-six (6)

VIN:

PROMOTER's ADDRESS:

| 13000 Century Drive | Bend | OR | 97709 |
|---|---|---|---|
| (Street) | (City) | (State) | (Zip Code) |

PHONE: 541-410-0219

**Terms:**

1.    The Vehicles are, and shall remain, the property of DIVISION.

2.    At delivery PROMOTER agrees to conduct an inspection of the Vehicles. If there is any damage to any Vehicles, PROMOTER shall immediately so notify DIVISION and ESIS, DIVISION's insurance claims administrator, in writing, prior to taking delivery of the Vehicle. PROMOTER hereby waives, on behalf of itself and any party claiming by or through PROMOTER, any claim that damages to the Vehicle existed prior to delivery to PROMOTER, unless PROMOTER provides timely notice of those damages as required under this paragraph.

3.    PROMOTER agrees that: (a) the Vehicles will not be utilized illegally, improperly, for hire, as a public conveyance or in any manner for any political purpose whatsoever; (b) the Vehicles shall be driven in a safe and prudent manner by insured, licensed drivers, twenty-one (21) years of age or older who meet the GM Safe Driver Program Driver Conduct Requirements (attached as **Exhibit D**) and who are officers, directors, employees, agents or subcontractors of PROMOTER or who are driving the Vehicles while on business related to the

15

activities contemplated under this Agreement; (c) PROMOTER shall ensure that no-one modifies, disconnects, or otherwise interferes with the operation of the odometer, emission control equipment, or any other equipment; (d) PROMOTER acknowledges receipt of and will obtain from each driver of a Vehicle a signed **Driver Conduct Requirements** form and shall retain each executed form for three (3) years and provide them to DIVISION at DIVISION's request; (e) PROMOTER will report ALL incidents/crashes involving a Vehicle to ESIS (General Motors' insurance claims administrator) at 1-800-888-0154 and to DIVISION and will follow instructions provided in the glove compartment of the Vehicle; (f) without limiting or altering any insurance or indemnification obligations contained in this Agreement, PROMOTER will cooperate with DIVISION in the defense of any claims or lawsuits related to PROMOTER's use or possession of any Vehicle; (g) **PROMOTER will not make any repairs to a Vehicle without the explicit prior consent of ESIS**; (h) PROMOTER shall be responsible for all fines, forfeitures and penalties incurred by reason of the use of the Vehicles.

4.    DIVISION MAKES NO WARRANTY OTHER THAN THAT EXPRESSED IN ITS NEW VEHICLE LIMITED WARRANTY, A PRINTED COPY OF WHICH IS FURNISHED WITH THE VEHICLE. DIVISION authorizes PROMOTER to obtain, on DIVISION's behalf as owner of the Vehicles, such warranty service as is necessary and provided for under the new vehicle limited warranty. Ordinary operating expenses such as gas, oil, grease, tire repair and other incidentals are the responsibility of PROMOTER.

5.    PROMOTER agrees to defend, indemnify and hold DIVISION harmless from all claims, liability and expenses arising out of PROMOTER's use or possession of any Vehicle. In addition PROMOTER agrees to obtain and maintain, at its own expense, comprehensive automobile liability insurance (covering all owned, non-owned and hired vehicles) with limits of not less than $5,000,000 per occurrence combined single limit for personal injury and property damage, including all statutory coverage for all states of operation. PROMOTER will also provide comprehensive (fire and theft) and collision coverage on the Vehicles. **Prior to receipt of the Vehicles**, PROMOTER will provide DIVISION with a certificate of insurance evidencing General Motors Corporation as an additional insured, stating that such insurance is primary in coverage to any other insurance which may be available to General Motors Corporation, and providing at least thirty (30) days' prior written notice to DIVISION of cancellation, modification, or material change to the policy.

6.    At the end of the term of the loan, or earlier if requested by DIVISION, PROMOTER will return the Vehicles to the nearest DIVISION office or such other location as designated by DIVISION, in the same condition as delivered, reasonable wear and tear excepted (based on GM guidelines). Prior to return of the Vehicles, DIVISION, or its insurance claims administrator, shall conduct an inspection of the Vehicles. PROMOTER shall have a representative present at the

16

inspection. If PROMOTER fails to have a representative present at the inspection of the Vehicles, PROMOTER expressly waives any right to contest the results of the inspection. If a Vehicle must be recovered by DIVISION or requires repairs to restore it to the condition in which it was delivered, then PROMOTER will pay DIVISION the costs to recover the Vehicle and the costs of any damage based on a repair estimate by a certified appraisal service or dealer. If, in DIVISION's opinion, a Vehicle cannot or should not be repaired based upon General Motors Corporation's policy for repairing/scrapping damaged vehicles, then the Vehicle must be returned to DIVISION and the PROMOTER will pay DIVISION the Vehicle's value, based upon the following formula: The amount General Motors Corporation would have received if the Vehicle had been sold at auction the month the Vehicle was damaged based on a similar make and model year vehicle with similar mileage, as determined by GM Remarketing Staff, Fleet and Commercial Operations sale results report, less (i) the salvage value of the Vehicles as determined by DIVISION based on competitive salvage bid, or (ii) $4,000 if there are no salvage bids.

**Authorized PROMOTER Signature:** _____

**Print Name:** _____

**Title:** _____

**Date:** _____

17

## PROMOTIONAL AGREEMENT
### Between
### CHEVROLET MOTOR DIVISION, GENERAL MOTORS CORPORATION
### And
### MT BACHELOR, INC

### EXHIBIT D

### General Motors Safe Driver Program Driver Conduct Requirements

I understand that the loan of this Vehicle is subject to the following terms, and verify that I am twenty-one (21) years of age or older, posses a valid operator's license, and will...

1.      ...display such license to the vehicle key issuer at each Vehicle exchange, and will comply with all license restrictions.

2.      ...never drive while impaired by alcohol, drugs, medication, illness, fatigue, or injury.

3.      ...ensure the proper use of safety belts and child safety restraints for all occupants.

4.      ...obey all applicable motor vehicle laws, codes, and regulations.

5.      ...drive in a defensive manner, anticipating situations where incidents are likely to occur.

6.      ...refrain, at all times, from using radar/laser detection devices.

7.      ...plan trips by selecting the safest route, depart early enough to observe posted speed and traffic regulations, and will be mindful of current and forecasted weather conditions.

8.      **...report all incidents/crashes involving the Vehicle to ESIS (General Motors' insurance claims administrator) at 1-800-888-0154 (direction is provided in the glove compartment of the vehicle) and to DIVISION.**

9.      ...not permit any other person to operate the Vehicle.

Furthermore, by signing this receipt and acknowledgment, I verify that I have not been convicted within the past 36 months of any of the following motor vehicle violations:

1.      Driving while operator's license is suspended, revoked, or denied.

18

2.    Vehicular manslaughter, negligent homicide, felonious driving or felony with a vehicle.

3.    Operating a vehicle while impaired, under the influence of alcohol or illegal drugs, or refusing a sobriety test.

4.    Failure to stop or identify under a crash (includes leaving the scene of a crash; hit and run; giving false information to an officer).

5.    Eluding or attempting to elude a law enforcement officer.

6.    Traffic violation resulting in death or serious injury.

7.    Any other significant violation warranting suspension of license.

**DRIVER's Signature:** _____

**Print Name:** _____

**Driver's License Number and State:** _____

                                         (Number)           (State)

**Date:** _____

19

## EXHIBIT C - CONTINUED

## PROMOTER Loan of Vehicle Terms and Conditions and Vehicle Receipt

List of vehicles to be attached closer to event.

