Andrew K. Lipetz, Esquire                          Counsel for ACE American
Wasserman Grubin & Rogers, LLP                     Insurance Company
1700 Broadway, 42nd Floor
New York, NY 10019
Tel: 212-581-3320
FAX: 212-956-5255

Of Counsel

Jeffrey A. Less, Esquire
Jennifer L. Hoagland, Esquire
Helen Heifets, Esquire
Bazelon Less & Feldman, P.C.
1515 Market St., Suite 700
Philadelphia, PA 19102
Tel: 215-568-1155
FAX: 215-568-9319

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : |
| | : Chapter 11 |
| GENERAL MOTORS CORP., et al. | : |
| | : Case No. 09-50026 (REG) |
| Debtors | : |
| | : (Jointly Administered) |

**LIMITED OBJECTIONS OF**
**ACE AMERICAN INSURANCE COMPANY AND AFFILIATED COMPANIES**
**TO NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY AND**
**UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY AND (II)**
**CURE AMOUNTS RELATED THERETO**

ACE American Insurance Company, on behalf of itself and its affiliated insurers and

reinsurers (collectively, "ACE"), through its undersigned counsel, submits the following Limited

Objections to the Notice of (I) Debtors' Intent To Assume and Assign Certain Executory

Contracts, Unexpired Leases of Personal Property and Unexpired Leases of Non-Residential

Real Property and (II) Cure Amounts Related Thereto received by ACE on July 7, 2009 (hereinafter, the "Notice of Assumption and Assignment" or the "Notice").  In support of its Limited Objections, ACE states as follows:

## OBJECTION SUMMARY

1.    On July 7, 2009, ACE received a Notice of Assumption and Assignment.  A true and correct copy of the Notice is attached as Exhibit A hereto.

2.    ACE objects to the Notice of Assumption and Assignment because the Notice, including all the information that could be and was accessed in accordance with the instructions contained therein, failed to inform ACE which, if any, contracts with ACE are the intended subject of assumption and assignment, and also failed to inform ACE of any cure amounts for any contracts to be assumed and assigned.

3.    ACE further objects to the Notice of Assumption and Assignment because, even though it instructed ACE to object to it within ten (10) days of the date of the Notice, the Debtors made it impossible for ACE to comply with that instruction.   The Notice was dated June 15, 2009, but it was not received by ACE until July 7, 2009.  (*See* the accompanying Declaration of Helen Heifets ("Heifets Decl."), Exhibit C hereto at ¶5).

4.    Accordingly, ACE is filing these Limited Objections to preserve its rights to object to the assumption and assignment of its agreements with the Debtors, if and when the Debtors both (a) provide ACE with sufficient information to identify the agreements that are being assumed and assigned and (b) state the cure amounts for such agreements.

5.    ACE also incorporates in full, as though set forth herein, its June 19, 2009 Limited Objection to Motion of Debtors, Pursuant to 11 U.S.C. § 105, 363 and 365, and Fed. R. Bank. P. 2002, 6004 and 6006, To Approve (A) the Sale Pursuant to the Master Sale and

Purchase Agreement with Vehicle Acquisition Holdings, LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief (hereinafter, the "Limited Objection to the Sale Motion").

6.      ACE's Limited Objection to the Sale Motion was filed with the Court on June 19, 2009 as Docket Item No. 1999.  A true and correct copy of ACE's Limited Objection to the Sale Motion (without exhibits) is attached as Exhibit B hereto.

7.      ACE's Limited Objection to the Sale Motion constitutes a "Limited Contract Objection" under paragraph 2 of this Court's Order of July 5, 2009 (I) Authorizing the Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Other Relief (hereinafter, the "July 5, 2009 Order").

8.      Pursuant to the July 5, 2009 Order, ACE's Limited Objection is scheduled to be heard by the Court on August 3, 2009.

## BACKGROUND

9.      ACE is a party to numerous insurance policies and related agreements (collectively, the "ACE Policies and Agreements") with the Debtor General Motors Corporation ("Old GM").

10.     The ACE Policies and Agreements include, but are not limited to, a Foreign Casualty Insurance Program that has been in place for many years.

11.     The ACE Policies and Agreements include multiple policies and agreements, including without limitation a Master Policy, Local Policies issued by ACE to Debtor Old GM

and/or to its now-former foreign subsidiaries, a Security Agreement, and an ACE Global Underwriters Foreign Casualty Cash Flow Binder.

12.    On June 1, 2009, this Chapter 11 bankruptcy proceeding was instituted by the Debtors.

13.    On June 2, 2009, this Court entered an Order pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 (I) Approving Procedures for Sale of Debtors' Assets pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings, LLC, A U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice (hereinafter, the "June 2, 2009 Order").

14.    On July 7, 2009, ACE received the Notice of Assumption and Assignment that is attached hereto as Exhibit A.

15.    The Notice attached hereto as Exhibit A included instructions for accessing a website, including a User ID and Password, so that ACE could supposedly learn which of its agreements with the Debtors were being assumed and assigned pursuant to the Notice.

16.    After following the instructions in the Notice of Assumption and Assignment, ACE's counsel accessed a screen on the secure website. A true and correct print-out of that screen is attached as Exhibit 1 to Heifets Decl. *See also* Heifets Decl (Exh. C) at ¶¶6-7.

17.    The only information on that website was the name of the Counter-Party to a purportedly assumed and assigned contract – "ACE USA." (*See* Exh. 1 to Heifets Decl.)

18.    ACE USA is not a party to any of the ACE Policies and Agreements. Rather it is a name used to describe a group of affiliated companies. ( Heifets Decl. (Exh. C) at ¶9).

19.    The website contained no additional information that would enable ACE to identify the particular policies or agreements that are the subject of a proposed assumption and assignment by Old GM

20.    Counsel for ACE then clicked on the on "view the cure amount detail" on the screen. (*See* Heifets Decl. at ¶10 and  at Exh. 1).

21.    The resulting screen, a print-out of which is attached hereto as Exhibit 2 to Heifets Decl. It contained no information about a proposed cure amount. *See id.*

22.    Counsel for ACE then called the telephone number provided on the Notice. The person who responded to the call was unable to provide any additional information concerning the ACE contracts that the Debtors intended to assume and assign.  (Heifets Decl. (Exh. C) at ¶¶12-13)

23.    Furthermore, the Notice of Assumption and Assignment instructed ACE that all objections to it must be filed within ten (10) days of the date of the Notice. (*See* Exh. A at 2).

24.    However, the date of the Notice was June 15, 2009 (*see id.* at 5), and ACE did not receive the Notice until July 8, 2009.

25.    It was therefore impossible for ACE to comply with the Objection deadline provided by the Notice.[1]

_____

[1] On June 15, 2009, ACE had received a different Notice of Assumption and Assignment (the "June 15, 2009 Notice"). Like the latest one, the June 15, 2009 Notice was delivered to ACE after the expiration of the 10-day deadline for objections.  Moreover, ACE accessed the identified website, but the information on the website was unintelligible and the person who answered the phone in response to a call to the help-line number was unable to provide any clarification. The June 15, 2009 Notice had been addressed to an ACE employee who had no involvement in ACE's currently-existing relationship with the Debtors.  ACE has incorporated its objections to the June 15, 2009 Notice into its Limited Objection to the Sale Motion (Exh. B), which is currently pending before the Court.

## LIMITED OBJECTION

26.     As described above, the information provided by the Debtors does not allow ACE to determine which, if any, of the ACE Policies and Agreements the Debtors intend to assume and assign.

27.     ACE therefore submits this Limited Objection to preserve its rights to object to the assumption and assignment of the ACE Policies and Agreements, if and when the Debtors provide ACE with sufficient information to identify the ACE Policies and Agreements that are being assumed and assigned, as well as any cure amounts.

28.     ACE further incorporates, as though fully set forth herein, its Limited Objection to the Sale Motion, filed with the Court on June 19, 2009 under Docket No. 1999. *See* Exh. B.

29.     Under paragraph 2 of this Court's July 5, 2009 Order, ACE's Limited Objection to the Sale Motion constitutes a "Limited Contract Objection."

30.     Pursuant to the July 5 Order, ¶ 2, all pending Limited Contract Objections, including ACE's Limited Objection to the Sale Motion, are scheduled for a hearing on August 3, 2009.

31.     ACE respectfully requests that the instant Limited Objections be heard at the same time, and that the instant Limited Objections – like the Limited Objection to the Sale Motion – be sustained.

## WAIVER OF MEMORANDUM OF LAW

32.     Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, ACE respectfully requests that the Court waive the requirement that ACE file a memorandum of law in support of these Limited Objections.

WHEREFORE, ACE American Insurance Company respectfully requests the following relief:

(a)    Sustain ACE's Limited Objection to the Notice of Assumption and Assignment as stated herein;

(b)    Direct Debtor GM to assume in full all of the ACE Policies and Agreements, or else state that they are being rejected;

(c)    In the event of an assumption and assignment, direct the Debtors to:

(i)    provide for and effectuate a full cure of any defaults and provide adequate assurances that it will perform under the ACE Policies and Agreements;

(ii)    provide ACE with information regarding the financial condition of the Purchaser, so that ACE can make an informed decision whether to agree to an assignment of the ACE Policies and Agreements to the Purchaser; and

(iii)    provide ACE, as a condition of the assignment of the ACE Policies and Agreements to the Purchaser, with a valid and acceptable written commitment from the Purchaser to fully perform Debtor GM's obligations under the ACE Policies and Agreements.

Respectfully Submitted

_/s/Andrew K. Lipetz_____
Andrew K. Lipetz
Wasserman Grubin & Rogers, LLP
1700 Broadway, 42nd Floor
New York, NY 10019
Tel: 212-581-3320
FAX: 212-956-5255


Counsel for Ace American Insurance Company and Affiliated Companies

Of counsel

Jeffrey A. Less. Esquire
Jennifer L. Hoagland, Esquire
Helen Heifets, Esquire
Bazelon Less & Feldman, P.C.
1515 Market Street, Suite 700
Philadelphia, PA 19102
Telephone: 215-568-1155
Facsimile: 215-568-9319

# EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re                                          Chapter 11 Case No.

GENERAL MOTORS CORP., *et al.*,                09-50026 (REG)

                                   Debtors.    (Jointly Administered)

------------------------------------------------------------x

5716-00303997
ACE USA
RHONDA HATHAWAY, EXECUTIVE UNDERWRITER
ONE BEAVER VALLEY ROAD, 2W
WILMINGTON, DE 19803

1.   Please carefully review the enclosed Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto.

2.   In order to view the Cure Amount for the Assumable Executory Contracts to which you are a party, you must log onto: http://www.contractnotices.com.

3.   To log on, please use the user name and password provided to you below.

4.   If you have questions about the Assumable Executory Contracts or proposed Cure Amounts, you may call 1-888-409-2328 (in the United States) or 1-586-947-3000 (outside the United States).

          User ID: rPjn8D7r
          Password: h7cZ49k193T4

          Vendor ID #: 5716-00303997

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                           :

In re                        :        Chapter 11 Case No.
                           :

**GENERAL MOTORS CORP.,** *et al.,*   :        09-50026 (REG)
                           :

            **Debtors.**     :        (Jointly Administered)
                           :

----------------------------------------------------------x

## NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES OF PERSONAL PROPERTY, AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED THERETO

PLEASE TAKE NOTICE THAT:

      1.     By motion dated June 1, 2009 (the "Motion"), General Motors Corporation ("GM") and its debtor subsidiaries, as debtors in possession (collectively, the "Debtors" or the "Company"),[1] sought, among other things, authorization and approval of (a) the sale of substantially all the Debtors' assets pursuant to that certain Master Sale and Purchase Agreement and related agreements (the "MPA") among the Debtors (the "Sellers") and Vehicle Acquisition Holdings LLC (the "Purchaser"), a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury") (the "363 Transaction"), free and clear of liens, claims, encumbrances, and interests, (b) certain proposed procedures to govern the sale process and provide for the submission of any competing bids for substantially all the Debtors' assets (the "Sale Procedures"), (c) the assumption and assignment of certain executory contracts (the "Contracts") and unexpired leases of personal property and of nonresidential real property (collectively, the "Leases") in connection with the 363 Transaction, (d) that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") to be executed at the closing of the 363 Transaction (the "UAW Retiree Settlement Agreement"), and (e) scheduling a final hearing for approval of the 363 Transaction (the "Sale Hearing").[2]

---

[1] The Debtors and their respective Tax ID numbers are as follows:  General Motors Corporation, Tax ID No. 38-0572515; Saturn, LLC, Tax ID No. 38-2577506; Saturn Distribution Corporation, Tax ID No. 38-2755764; and Chevrolet-Saturn of Harlem, Inc., Tax ID No. 20-1426707.

[2] Copies of the Motion and the MPA (without certain commercially sensitive attachments) may be obtained by accessing the website established by the Debtors' claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com.

2.      The MPA, which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of substantially all the Debtors' assets, defined as the "Purchased Assets" in Section 2.2(a) of the MPA, including certain Contracts and Leases, subject to higher or better offers.

3.      The MPA contemplates, and the proposed order approving the Motion (the "Sale Order"), if approved, shall authorize the assumption and assignment to the Purchaser of certain Contracts and Leases pursuant to section 365 of title 11, United States Code (the "Bankruptcy Code"). The Sellers maintain a schedule containing Contracts and Leases that the Debtors may assume and assign to the Purchaser (collectively, the "Assumable Executory Contracts"). You are receiving this Notice because you are a party to one or more of the Assumable Executory Contracts.

4.      **THE SCHEDULE CONTAINS A LIST OF ASSUMABLE EXECUTORY CONTRACTS THAT <u>MAY</u> BE ASSUMED. THE PURCHASER RESERVES THE RIGHT UNDER THE MPA TO EXCLUDE ANY ASSUMABLE EXECUTORY CONTRACT FROM THE LIST OF ASSUMABLE EXECUTORY CONTRACTS TO BE ASSUMED AND ASSIGNED BY NO LATER THAN THE DESIGNATION DEADLINE DISCUSSED IN PARAGRAPH 13 BELOW.**

5.      The Debtors maintain a secure website which contains information about your Assumable Executory Contract, including amounts that the Debtors believe must be paid to cure all prepetition defaults under the respective Assumable Executory Contracts as of the Commencement Date in accordance with section 365(b) of the Bankruptcy Code (the "Cure Amounts"). In order to view the Cure Amount for the Assumable Executory Contract to which you are a party, you must log onto http://www.contractnotices.com (the "Contract Website"). To log on, please use the user name and password provided to you with this notice. The username and password will enable you to access the Cure Amount for the particular Assumable Executory Contract to which you are a party.

6.      Please review the Cure Amount for your Assumable Executory Contract. In some instances, additional terms or conditions of assumption and assignment with respect to a particular Assumable Executory Contract are provided on the Contract Website.

7.      Objections, if any, to the proposed assumption and assignment of the Assumable Executory Contracts (the "Contract Objections"), including objections to the Cure Amount, must be made in writing and filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") so as to be received **no later than ten (10) days after the date of this Notice** (the "Objection Deadline") by (i) the Debtors, c/o General Motors Corporation, Cadillac Building, 30009 Van Dyke Avenue, Warren, Michigan 48090-9025 (Attn: Warren Command Center, Mailcode 480-206-114); (ii) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (iii) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the Purchaser, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the attorneys for the Creditors Committee; (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael

J. Edelman, Esq. and Michael L. Schein, Esq.); and (vii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.).

8.    If a timely Contract Objection is filed solely as to the Cure Amount (a "Cure Objection"), then the Assumable Executory Contract shall nevertheless be assumed and assigned to the Purchaser on the Assumption Effective Date (as hereinafter defined), the Purchaser shall pay the undisputed portion of the Cure Amount on or as soon as reasonably practicable after the Assumption Effective Date, and the disputed portion of the Cure Amount shall be determined as follows and paid as soon as reasonably practicable following resolution of such disputed Cure Amount: To resolve the Cure Objection, the Debtors, the Purchaser, and the objecting non-Debtor counterparty to the Assumable Executory Contract (the "Non-Debtor Counterparty") shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention. The Call Center (as defined in paragraph 18) has been established by the Debtors for this purpose. If the Debtors determine that the Cure Objection cannot be resolved without Bankruptcy Court intervention, then the Cure Amount will be determined as follows: (a) with respect to Assumable Executory Contracts pursuant to which the Non-Debtor Counterparty has agreed to an alternative dispute resolution procedure, then, according to such procedure; and (b) with respect to all other Assumable Executory Contracts, by the Bankruptcy Court at the discretion of the Debtors either at the Sale Hearing or such other date as determined by the Bankruptcy Court.

9.    If a timely Contract Objection is filed that objects to the assumption and assignment on a basis other than the Cure Amount, the Debtors, the Purchaser, and the objecting Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention. If the Debtors determine that the Contract Objection cannot be resolved without Bankruptcy Court intervention, then, at the discretion of the Sellers and the Purchaser, the Contract Objection shall be determined by the Bankruptcy Court at the Sale Hearing or such other date as determined by the Bankruptcy Court. If the Bankruptcy Court determines at such hearing that the Assumable Executory Contract should not be assumed and assigned, then such Executory Contract or Lease shall no longer be considered an Assumable Executory Contract.

10.    If the Debtors, the Purchaser, and the Non-Debtor Counterparty resolve any Contract Objection, they shall enter into a written stipulation (the "Assumption Resolution Stipulation"), which stipulation is not required to be filed with or approved by the Bankruptcy Court.

11.    If you agree with the respective Cure Amount(s) listed in the Contract Website with respect to your Assumable Executory Contract, and otherwise do not object to the Debtors' assumption and assignment of your Assumable Executory Contract, you are not required to take any further action.

12.    Unless a Contract Objection is filed and served before the Objection Deadline, you shall be deemed to have consented to the assumption and assignment of your Assumable Executory Contract and the Cure Amount for your Assumable Executory Contract, and you shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, or the Purchaser.

13.     Up to the date that is thirty (30) days following the closing of the 363 Transaction, or if such date is not a Business Day (as defined in the MPA), the next Business Day, or such other later date as mutually agreed upon by the Purchaser and the Debtors (the "Designation Deadline"), the Purchaser may, in its sole discretion, subject to certain limitations specified in the MPA (applicable only as between the parties thereto), exclude any of the Assumable Executory Contracts by providing notice on the Contract Website. Upon such designation, the Contract or Lease referenced therein shall no longer be considered an Assumable Executory Contract, shall not be deemed to be, or to have been, assumed or assigned, and shall remain subject to assumption, rejection, or assignment by the Debtors. Until the Designation Deadline, the Purchaser also may, subject to certain limitations specified in the MPA (applicable only as between the parties thereto) designate additional Contracts or Leases as Assumable Executory Contracts to be assumed and assigned by providing notice to the affected Non-Debtor Counterparties. The Contract Website shall be updated from time to time to reflect the then current status of your Contract or Lease as well as the proposed effective date (the "Proposed Assumption Effective Date"), if any, of the assumption and assignment of particular Contracts or Leases.

14.     The Debtors' decision to assume and assign the Assumable Executory Contracts is subject to Bankruptcy Court approval and consummation of the 363 Transaction, and, absent such consummation, each of the Assumable Executory Contracts will not be assumed or assigned to the Purchaser and shall in all respects be subject to further administration under the Bankruptcy Code. All Assumable Executory Contracts will be assumed and assigned to the Purchaser on the date (the "Assumption Effective Date") that is the later of (i) the Proposed Assumption Effective Date and (ii) the date following expiration of the Objection Deadline if no Contract Objection, other than to the Cure Amount, has been timely filed, or, if a Contract Objection, other than to the Cure Amount, has been filed, the date of the Assumption Resolution Stipulation or the date of a Bankruptcy Court order authorizing the assumption and assignment to the Purchaser of the Assumable Executory Contract. Until the Assumption Effective Date, assumption and assignment of the Assumable Executory Contracts is subject to the Purchaser's rights to modify the designation of Assumable Executory Contracts as set forth in paragraph 13 above. Except as otherwise provided by the MPA, the Purchaser shall have no rights in and to a particular Assumable Executory Contract prior to the Assumption Effective Date.

15.     The inclusion of any document on the list of Assumable Executory Contracts shall not constitute or be deemed to be a determination or admission by the Debtors or the Purchaser that such document is, in fact, an executory contract or Lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

16.     Any Contract Objection shall not constitute an objection to the relief generally requested in the Motion (e.g., the sale of the Purchased Assets by the Debtors to the Purchaser free and clear of liens, claims, encumbrances, and interests), and parties wishing to object to the relief generally requested in the Motion must file and serve a separate objection in accordance with the procedures approved and set forth in the order of the Bankruptcy Court approving the Sale Procedures.

17.     If a party other than the Purchaser is determined to be the highest or best bidder for the assets to be sold pursuant to the 363 Transaction, you will receive a separate notice

providing additional information regarding the treatment of your Contract or Lease; *provided, however*, that if the applicable Cure Amount has been established pursuant to the procedures set forth in this Notice, it shall not be subject to further dispute if the new purchaser seeks to acquire such contract or Lease.

      18.  If you have questions about the Assumable Executory Contracts or proposed Cure Amounts, you may call 1-888-409-2328 (in the United States) or 1-586-947-3000 (outside the United States) (the "Call Center").

Dated:  New York, New York
       June 15, 2009

                              /s/ Stephen Karotkin
                              Harvey R. Miller
                              Stephen Karotkin
                              Joseph H. Smolinsky

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

# EXHIBIT "B"

Andrew K. Lipetz, Esquire
Wasserman Grubin & Rogers, LLP
1700 Broadway, 42nd Floor
New York, NY 10019
Tel: 212-581-3320
FAX: 212-956-5255

Of Counsel

Jeffrey A. Less, Esquire
Jennifer L. Hoagland, Esquire
Helen Heifets, Esquire
Bazelon Less & Feldman, P.C.
1515 Market St., Suite 700
Philadelphia, PA 19102
Tel: 215-568-1155
FAX: 215-568-9319

Counsel for ACE American Insurance Company

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| GENERAL MOTORS CORP., et al. | Case No. 09-50026 (REG) |
| Debtors | (Jointly Administered) |

**LIMITED OBJECTIONS OF ACE AMERICAN INSURANCE COMPANY TO MOTION
OF DEBTORS, PURSUANT TO 11 U.S.C. §§ 105, 363(b),(f), (k), (m), AND 365 AND FED
R. BANK. P. 2002, 6004 AND 6006, TO APPROVE (A) THE SALE PURSUANT TO THE
MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE ACQUISITION
HOLDINGS, LLC, A U.S. TREASURY-SPONSORED PURCHASER, FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (C) OTHER RELIEF.**

ACE American Insurance Company, on behalf of itself and its affiliated insurers and

reinsurers, through its undersigned counsel, submits the following Limited Objections to the

Motion of Debtors, Pursuant to 11 U.S.C. §105, 363 and 365, and Fed. R. Bank. P. 2002, 6004

1

and 6006, To Approve (A) The Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings, LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief (hereinafter, the "Sale Motion").

## I.    INTRODUCTION

1.    This Chapter 11 bankruptcy proceeding was instituted by the Debtors on June 1, 2009 by voluntary petitions for relief.

2.    On information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.    On June 1, 2009, the Debtors filed the Sale Motion, seeking, *inter alia*, the entry of an Order approving the sale of substantially all of Debtors' assets.

4.    For several years, Debtor General Motors Corporation ("GM") has been, and still is, a party to certain insurance policies and related agreements (collectively, the "ACE Policies and Agreements") with Movant ACE American Insurance Company and its affiliated insurers and reinsurers (individually and collectively, "ACE").

5.    The ACE Policies and Agreements are a part of the Debtors' overall Insurance Program, as discussed below in greater detail.

6.    The ACE Policies and Agreements are executory contracts, in that each of them requires both parties to continue performance, and failure of either party to complete performance would constitute a material breach excusing performance of the other party.  *See, e.g., In re Wireless Data, Inc.*, 547 F.3d 484, 488 n.1 (2d Cir. 2008).

7.    GM representatives have informally advised ACE that GM intends to continue its performance in full under the ACE Policies and Agreements.

2

8.      Moreover, the Debtors have already obtained permission from this Court to continue the Debtors' performance (including but not limited to payment) under the ACE Policies and Agreements as a part of the Insurance Program.

9.      However, to date, ACE has received no written confirmation of GM's intention to assume the ACE Policies and Agreements. Nor has ACE received an explanation of the proposed terms of assumption.

10.     The Sale Motion does not make provision for the fulfillment and satisfaction of GM's obligations under the ACE Policies and Agreements. Rather, the Sale Motion and the Debtors' implementation of the provisions of that Motion provide incomplete, conflicting, and contradictory information.

11.     Accordingly, ACE files these limited objections to the proposed sale.  In the alternative, ACE requests that the Debtor GM  be directed to:

    a.      assume or reject the ACE Policies and Agreements; and

    b.      in the event of an assumption:

        i.      provide for and effectuate a cure of any defaults and provide adequate assurances that it would cure the defaults under the ACE Policies and Agreements;  and

        ii.     provide to ACE the information regarding the financial condition of the Purchaser, so that ACE could make an informed decision whether to agree to an assignment of the ACE Policies and Agreements to the Purchaser; and

        iii.    provide to ACE, as a condition of the assignment of the ACE Policies and Agreements to the Purchaser, a valid and acceptable written commitment from the Purchaser to fully perform Debtor GM's obligations under the ACE Policies and Agreements.

3

II.    **RELEVANT FACTS**

A.    <u>The Foreign Casualty Insurance Program.</u>

12.    For over twenty years, ACE has been providing a Foreign Casualty Insurance Program to the Debtors. The coverages extended under the Foreign Casualty Insurance Program have included and still include general liability, employee benefits, automobile liability and contingent automobile liability insurance.

13.    Debtors and their foreign affiliates have purchased the Foreign Casualty Insurance Program from ACE principally on a "fronted" basis.

14.    A "fronted" insurance policy cedes the risk from the insurer to either a reinsurer or back to the insured.

15.    In this case, the majority of the insured risk was ceded to General International Limited ("GIL"), a captive reinsurer that is owned by Debtor GM.

16.    The Foreign Casualty Insurance Program involved and still involves a "Master Policy" issued by ACE to Debtor GM and "Local Policies" issued by ACE to Debtor GM and/or to foreign subsidiaries and affiliates of Debtor GM. (A true and correct copy of certain portions of the Master Policy is attached as <u>Exhibit 1</u> hereto).

17.    Under the Foreign Casualty Insurance Program, ACE was and is responsible for the payment of claims covered by the Master Policy and the Local Policies, and (with the exceptions noted below) ACE was and is entitled to obtain reimbursement for such payments from the reinsurer GIL.

18.    The principal exception to this arrangement concerns the first £100,000 (one hundred thousand pounds sterling) of claims presented under the Employer Liability policy issued to GM for its business operations in the United Kingdom (hereinafter, the "UKEL Policy"), which Debtor GM is obligated to reimburse to ACE.

4

19.    Debtor GM also is responsible for reimbursement of certain claims falling within an excess insurance policy layer.

20.    The Master Policy was and is one of many policies and agreements entered into by ACE and Debtor GM in connection with the Foreign Casualty Insurance Program for GM. Other agreements under that program included, but were not limited to:

a.    The UKEL Policy, a true and correct copy of which is attached as <u>Exhibit 2</u> hereto;

b.    A Security Agreement, a true and correct copy of which is attached as <u>Exhibit 3</u> hereto; and

c.    ACE Global Underwriters Foreign Casualty Cash Flow Binder (the "Binder").[1]

**B.    <u>Other ACE Policies and Agreements.</u>**

21.    Over the years, ACE has entered into other insurance policies and agreements with Debtors.

22.    For purposes of these objections, all such other policies and agreements shall be included within the ACE Policies and Agreements.

**C.    <u>The Current Status of the ACE Policies and Agreements.</u>**

23.    The Foreign Casualty Insurance Program has been entered into and renewed before the bankruptcy petitions were filed, and they remain in effect.

24.    The other ACE Policies and Agreements also remain in effect to the extent required by their terms and conditions.

---

[1] The ACE Policies and Agreements are so numerous and voluminous that not all of them can be attached to this Objection. The Policies and Agreements that are not attached to this Objection may be obtained from the undersigned counsel for ACE upon request.

5

25.    Debtor GM's continuing obligations under the ACE Policies and Agreements include, without limitation:

a.    Payments of premiums under the Master Policies, Local Policies and UK EL Policies (*see* Exh. 1 at Endorsement #58; Exh. 2 at 1);

b.    Reimbursement of ACE for claims up to £100,000 (British pounds sterling) under the UKEL policy (*see* Exh. 1 at Endorsement 49);

c.    Providing and maintaining collateral for GM's obligations under the UKEL and Master Policies (*see* Exh. 3 at §II); and

d.    Providing and maintaining a Paid Loss Deposit Fund for payment of claims under the UKEL and Master Policies (*see id.* at §VII).

26.    ACE's obligations under the ACE Policies and Agreements include, without limitation providing insurance coverage and paying claims under the Master Policy, the Local Policies, and other ACE Policies.

27.    Thus, under the ACE Policies and Agreements, ACE has on-going and material obligations to Debtor GM, and Debtor GM has on-going and material obligations to ACE, so that failure of either party to complete performance would constitute a material breach excusing performance of the other party.

28.    The ACE Policies and Agreements are executory contracts within the meaning of §365 of the Bankruptcy Code. *In re Wireless Data*, 547 F.3d at 488 n.1.

29.    As set forth above, the ACE Policies and Agreements are part of the Debtors' Insurance Program. That Insurance Program was described in the Debtors' Motion, filed on June 1, 2009, for Entry of Order Pursuant To 11 U.S.C. §§363(b), 503(b) & 105(a) & Fed. R. Bankr.

6

P. 6003 and 6004 Authorizing Debtors To Continue Their Liability, Product, Property and Other Insurance Programs (the "Insurance Motion").

30.    In the Insurance Motion, the Debtors asserted that "the continuation of the Insurance Programs, on an uninterrupted basis and the payment of all undisputed pre-petition and post-petition Insurance Obligations relating to the Insurance Programs are <u>essential to preserve the Debtors' business and preserve the value of the Debtors' businesses and preserve the value of the Debtors' estates for all creditors</u>." (Insurance Motion at ¶41) (emphasis added).

31.    The Insurance Motion expressly noted, however, that the Debtors did not yet seek to assume any of the Debtors' Insurance Programs. On the contrary, the Insurance Motion and the Order granting the Insurance Motion expressly stated that the Debtors were not assuming any of the agreements related to the Debtors' Insurance Programs. (*Id.* at ¶ 42).

32.    The Sale Motion, the proposed sale agreement, and the schedules attached thereto do not address the ACE Policies and Agreements.

**D.    <u>The Relevant Provisions Of The Sale Motion And The MPA.</u>**

33.    At the outset, neither the Sale Motion, nor the Master Sales and Purchase Agreement (the "MPA") which is attached as an Exhibit thereto, includes any express reference to ACE or to the ACE Policies and Agreements.

34.    The Sale Motion provides that the Debtors would issue notices to certain non-debtor counter-parties of the Debtors' intention to assume executory contracts with those counter-parties and assign them to the Purchaser. (*See* Sale Motion at ¶ 69.)

35.    The Sale Motion further provides that from the date of the MPA and until 30 days after the Closing Date (defined in the MPA as the date 3 days after certain conditions to the closing are met), the Debtors, with consent of the Purchaser, may designate additional executory contracts for assumption and assignment. (*Id.*)

7

36.    The MPA provides that the Purchased Assets will include all contracts and all insurance policies, other than contracts and insurance policies that are excluded by being listed in Schedules 2.2 (b)(vii) and 2.2 (b)(xiii) to the MPA.  (*See* the MPA at §§2.2(a)(xi), 2.2.(a)(xvii), 2.2(b)(vii) and 2.2 (b)(xiii))

37.    The ACE Policies and Agreements are not listed in Schedules 2.2(b)(vii) and 2.2(b)(xiii) of the MPA as being excluded from the sale under the MPA.  This could be interpreted as an indication of the Debtors' intention to include the ACE Policies and Agreements into the assets that will be transferred to the Purchaser.   However, this is not clear.

38.    To date, ACE has received no notice of the Debtors' intention to assume and assign the ACE Policies and Agreements.[2]

39.    Failure by the Debtors to assume the ACE Policies and Agreements would be contrary to statements made by GM representatives that GM and the other Debtors intend to assume the ACE Policies and Agreements in full in the bankruptcy cases.

40.    ACE requires clarification of the Debtors' intentions with regard to the ACE Policies and Agreements, in particular a clear and unequivocal statement of whether the ACE Policies and Agreements will be assumed or rejected by the Debtors.

---

[2] ACE received a Notice of Debtors' Intent To Assume And Assign Certain Executory Contracts, which pursuant to the provisions of the Sale Motions, directed ACE to a secure website for information as to which contracts were being assumed and the amount of cure.  Unfortunately, the information on the secure website was unintelligible.  One contract was listed, but ACE has been unable to determine which, if any, of the ACE Policies and Agreements that listing referred to.  ACE's counsel then called the telephone number provided in the Notice, but was unable to obtain any additional information.  Furthermore, the Notice was addressed to an ACE employee who has no involvement whatsoever in ACE's relationship with Debtor GM, and, as a result, the Notice did not reach ACE's legal department until June 15, 2009 which was the deadline for objections to the Notices of Intent To Assume and Assign.

### E.    The Deadline for Objections.

41.    As explained above, representatives of the Debtors have advised ACE that the Debtors intend to assume the ACE Policies and Agreements.

42.    On the other hand, documents filed to date by the Debtors in this case do not unequivocally provide for such assumption or state the terms of such assumption.

43.    ACE requires detailed information about the terms of the assumption and assignment of the ACE Policies and Agreements.

44.    However, the deadline for objections to the Sale Motion is June 19, 2009, and therefore ACE must file these objections in order to preserve its position.

45.    Accordingly, ACE objects to the proposed sale of the Debtors' assets on the grounds set forth below.

## III.    ACE'S OBJECTIONS TO THE MOTION

46.    ACE objects to the Sale Motion because it fails to provide for the assumption of the ACE Policies and Agreements.

47.    ACE objects to the Sale Motion because it fails to provide sufficient information concerning the treatment of the ACE Policies and Agreements in connection with a proposed sale of assets.

48.    In the event that Debtor GM does seek to assume the ACE Policies and Agreements, ACE further objects to the Sale Motion to the extent that Debtor GM has failed to provide for and effectuate a cure of any defaults and has also failed to provide adequate assurances that it would cure the defaults under the ACE Policies and Agreement. The Bankruptcy Code prohibits an assumption of an executory contract unless, at the time of the assumption, the trustee or the debtor-in-possession cures or provides adequate assurance that it will promptly cure any defaults under that contract. 11 U.S.C. §365(b).

9

49.    In the event that Debtor GM does seek to assume the ACE Policies and Agreements and assign them to the Purchaser, ACE objects to the Sale Motion because assignment requires the consent of ACE, and ACE has not obtained a valid and acceptable written commitment from the Purchaser to perform Debtor GM's obligations under the ACE Policies and Agreements.

50.    In the event that Debtor GM does seek to assume the ACE Policies and Agreements and assign them to the Purchaser, ACE objects to the Sale Motion because assignment requires the consent of ACE, and in order to decide whether to provide such a consent, ACE requires access to information on the financial condition of the Purchaser.

51.    ACE further objects to any purported or proposed assignment of the ACE Policies and Agreements to the Purchaser without an assumption by Debtor GM.  An executory contract cannot be assigned unless it is first assumed by the assignor. *See, e.g., In re S.E. Nichols,* 120 B.R. 745,747 (Bankr. S.D.N.Y. 1996) (a debtor who assumes an executory contract must assume both the benefits and the burdens of that contract).

52.    In the event that the Debtors improperly deem the ACE Policies and Agreements, or some of them, to be non-executory contracts which can be assigned without assumption, ACE objects and asserts that the ACE Policies and Agreements are, in fact, executory contracts which cannot be assigned without assumption.

53.    In the event that the Court determines, over ACE's objections, that the ACE Policies and Agreements, or some of them, constitute non-executory contracts, then ACE objects to the Sale Motion on the grounds that Debtors seek to assign the ACE Policies and Agreements to the Purchaser:

10

a.    Without providing to ACE the information regarding the financial condition of the Purchaser, so that ACE could make an informed decision whether to agree to an assignment of the ACE Policies and Agreements; and

b.    Without a valid and acceptable written commitment from the Purchaser to perform Debtor GM's obligations under the ACE Policies and Agreements, which is a condition precedent to ACE's consent to an assignment of the ACE Policies and Agreements.

54.    ACE further objects to the Sale Motion to the extent that it seeks to transfer and assign the ACE Policies and Agreements "free and clear of liens, claims, encumbrances and other interests" (Motion at ¶1). A transfer and assignment "free and clear of . . . claims and . . . other interests" purports to authorize the Purchaser to exercise greater rights than Debtor GM is entitled to exercise under the ACE Policies and Agreements. An assignee, however, stands in the shoes of the assignor, and a debtor/assignor cannot enlarge its rights under an agreement with a third party. *See, e.g., In re Best Film & Video Corp.*, 46 B.R. 861, 870 (Bankr. E.D. N.Y. 1985)(the Bankruptcy Code does not enlarge the rights of a debtor under a contract).

55.    ACE further objects to the Sale Motion to the extent the Debtors seek to transfer business records that relate to the ACE Policies and Agreements, unless the Purchaser is obligated to maintain such records and ACE is expressly granted access to such records, upon reasonable notice during business hours.

56.    Due to short notice and lack of information as described above, ACE reserves the right to assert any objection made by any other party and/or to present additional objections.

## IV.    WAIVER OF MEMORANDUM OF LAW.

57.    Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, ACE respectfully requests that the Court waive the requirement that ACE file a memorandum of law in support of these Limited Objections.

WHEREFORE, ACE American Insurance Company respectfully requests that the Court not approve the proposed sale pursuant to the MPA, or, in the alternative, that the Court provide the following relief:

a.    Direct Debtor GM to assume or reject the ACE Policies and Agreements;

b.    In the event of an assumption, direct the Debtor GM:

i.    to provide for and effectuate a cure of any defaults and provide adequate assurances that it would cure the defaults under the ACE Policies and Agreements;

ii.    to provide to ACE the information regarding the financial condition of the Purchaser, so that ACE could make an informed decision whether to agree to an assignment of the ACE Policies and Agreements to the Purchaser; and

iii.    to provide to ACE, as a condition of the assignment of the ACE Policies and Agreements to the Purchaser, a valid and acceptable written commitment from the Purchaser to fully perform Debtor GM's obligations under the ACE Policies and Agreements.

12

Respectfully Submitted

  s/ Andrew K. Lipetz
Andrew K. Lipetz, Esquire (AL 8945)
Wasserman Grubin & Rogers, LLP
1700 Broadway, 42nd Floor
New York, NY 10019
Tel: 212-581-3320
FAX: 212-956-5255


Counsel for Ace American Insurance Company


Of counsel

Jeffrey A. Less, Esquire
Jennifer L. Hoagland, Esquire
Helen Heifets, Esquire
Bazelon Less & Feldman, P.C.
1515 Market Street, Suite 700
Philadelphia, PA 19102
Telephone: 215-568-1155
Facsimile: 215-568-9319

13

# EXHIBIT "C"

Andrew K. Lipetz, Esquire
Wasserman Grubin & Rogers, LLP
1700 Broadway, 42nd Floor
New York, NY 10019
Tel: 212-581-3320
FAX: 212-956-5255

Of Counsel

Jeffrey A. Less, Esquire
Jennifer L. Hoagland, Esquire
Helen Heifets, Esquire
Bazelon Less & Feldman, P.C.
1515 Market St., Suite 700
Philadelphia, PA 19102
Tel: 215-568-1155
FAX: 215-568-9319

Counsel for ACE
American Insurance
Company and Affiliated
Companies

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | : |
| | : |
| GENERAL MOTORS CORP., et al. | : |
| | : |
| Debtors | : |
| | : |

Chapter 11

Case No. 09-50026 (REG)

(Jointly Administered)

**DECLARATION OF HELEN HEIFETS IN SUPPORT OF LIMITED
OBJECTION OF ACE AMERICAN INSURANCE COMPANY AND
AFFILIATED COMPANIES TO NOTICE OF DEBTORS; INTENT TO ASSUME
AND ASSIGN CERTAIN EXECUTORY CONTRACTS, UNEXPIRED LEASES
OF PERSONAL PROPERTY AND UNEXPIRED LEASES OF NON-
RESIDENTIAL REAL PROPERTY AND (II) CURE AMOUNTS RELATED
THERETO**

Helen Heifets deposes and says:

1.    I am a shareholder in the law firm of Bazelon Less & Feldman, P.C.

2.    I am one of the attorneys representing ACE American Insurance Company

and Affiliated Companies (collectively, "ACE") in the above-captioned

bankruptcy case.   As such I am fully familiar with the facts and circumstances of this matter.

3.    I am filing this Declaration in support of the foregoing Limited Objection of ACE American Insurance Company and Affiliated Companies to Notice of (I) Debtors' Intent To Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired Leases of Non-Residential  Real Property and (II) Cure Amounts Related Thereto (hereinafter, "Limited Objection").

4.    ACE is a party to numerous insurance policies and related agreements with the Debtor General Motors Corporation.

5.    On July 7, 2009, the business offices of ACE received a Notice of Assumption and Assignment attached to the foregoing Motion as Exhibit A.

6.    The Notice included instructions for accessing a secure website, including a User ID and Password, so that ACE could learn which of its policies and agreements with the Debtors were being assumed and assigned pursuant to the Notice.

7.    After following those instructions, I accessed a screen on the secure website. A true and correct print-out of that screen is attached as Exhibit 1 hereto.

8.    The only information on that screen was the name of the Counter-Party to a purportedly assumed and assigned contract – "ACE USA". (*See* Exh. 1 )

9.    ACE USA is not a party to any of the policies and agreements entered into by ACE and the Debtors.  Rather it is a name used to describe a group of affiliated companies.

2

10.     I then clicked on the "view the cure amount detail" on the accessed screen.

        (*See id.*)

11.     A true and correct copy of the print-out of the resulting screen is attached

        hereto as Exhibit 2.  It contains no information about the proposed cure

        amount.

12.     I then called the telephone number provided in the Notice and explained to the

        person who answered that the information available on the website did not

        allow me to determine which of the policies and agreements entered into by

        ACE and the Debtors were the intended subject of the assumption and

        assignment.

13.     The person who answered the help line was unable to provide any additional

        information on this matter.

    The foregoing statements are true to the best of my knowledge, information and

belief.


                                        _____
                                        Helen Heifets

        Date:  July 13, 2009


                                        3

# EXHIBIT 1

# Contract Notices

**GM**

User: rPjn8D7r

My Contracts          Documents & Links          Contact Us

## Supplier Details                                    Vendor Master ID: **5716-00303997**

| Supplier Name: | |
|---|---|
| Contract Cure Amount: | Click here to view Contract Cure Amount Details |
| # of Contracts: | |

### Contracts

| Row ID | GM Contract ID | Vendor ID | Counter Party Name | Contract Type | Contract Name/ Description | Business Unit/ Department | Contract Status |
|---|---|---|---|---|---|---|---|
| 5716-00303997 | N/A | N/A | ACE USA | TBD | | **Unit:** (Finance) **Dept:** (Corporate Risk Management) | Noticed |

Hover mouse cursor here for Contract Status Legend

**Important Notices:**   All capitalized terms used, but not defined expressly on this website, have the meaning ascribed to such terms in that certain Order Pursuant To 11 U.S.C. §§ 105, 363, And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006(I) Approving Procedures For Sale Of Debtors' Assets Pursuant To Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline And Sale Hearing Date; (III) Establishing Assumption And Assignment Procedures; And (IV) Fixing Notice Procedures And Approving Form Of Notice.

Purchaser's designation of a purchase order as "Noticed" also means that the Purchaser is designating for assumption and assignment all agreements expressly incorporated into and/or referenced in such purchase order.

All contract descriptions that appear in the "Contract ID," "Contract Type," "Contract Name/Description," "Business Unit/Department," fields are for purposes of contract identification only and shall not be binding on the Debtors or the Purchaser, as the case may be, or serve as an admission, for any purposes in the debtors' chapter 11 cases, including determining the parties' substantive rights under the contract, establishing the executory nature of a contract or establishing the Debtors' proposed treatment of the contract for purposes of contract assumption and assignment.

The proposed cure amounts set forth herein are subject to adjustment to reflect additional invoices processed in GM's accounts payable system that relate to the period before the Commencement Date.
Additionally, the proposed cure amounts set forth herein may not reflect certain debits, chargebacks, claims or other deductions to which GM may be entitled and, in each case, all rights with respect thereto are reserved.
GM is updating this website on a daily basis so please check back if you believe that a discrepancy exists in the invoices processed that relate to the period before the Commencement Date.

7/8/2009

**EXHIBIT 2**

# Contract Notices

GM

User: rPjn8D7r

**My Contracts**    **Documents & Links**    **Contact Us**

## Supplier Details

Vendor Master ID: **5716-00303997**

| | |
|---|---|
| Supplier Name: | |
| Contract Cure Amount: | |
| # of Contracts: | Click here to view Contracts |

## Cure Amount Details

| Remit DUNS | PO Number | BOL | Document Date | Due Date | Amount |
|---|---|---|---|---|---|

**Important Notices:** All capitalized terms used, but not defined expressly on this website, have the meaning ascribed to such terms in that certain Order Pursuant To 11 U.S.C. §§ 105, 363, And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006(I) Approving Procedures For Sale Of Debtors' Assets Pursuant To Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline And Sale Hearing Date; (III) Establishing Assumption And Assignment Procedures; And (IV) Fixing Notice Procedures And Approving Form Of Notice.

Purchaser's designation of a purchase order as "Noticed" also means that the Purchaser is designating for assumption and assignment all agreements expressly incorporated into and/or referenced in such purchase order.

All contract descriptions that appear in the "Contract ID," "Contract Type," "Contract Name/Description," "Business Unit/Department," fields are for purposes of contract identification only and shall not be binding on the Debtors or the Purchaser, as the case may be, or serve as an admission, for any purposes in the debtors' chapter 11 cases, including determining the parties' substantive rights under the contract, establishing the executory nature of a contract or establishing the Debtors' proposed treatment of the contract for purposes of contract assumption and assignment.

The proposed cure amounts set forth herein are subject to adjustment to reflect additional invoices processed in GM's accounts payable system that relate to the period before the Commencement Date.

Additionally, the proposed cure amounts set forth herein may not reflect certain debits, chargebacks, claims or other deductions to which GM may be entitled and, in each case, all rights with respect thereto are reserved.

GM is updating this website on a daily basis so please check back if you believe that a discrepancy exists in the invoices processed that relate to the period before the Commencement Date.

Home    Logout

July 09, 2009 @ 11:09:41 AM

Copyright ©2009 AlixPartners, LLP | (51)

7/9/2009