**Execution Version**

# ASSIGNMENT AGREEMENT

This Assignment Agreement (this "<u>Assignment Agreement</u>") is made and entered into as of July 10, 2009 (the "<u>Effective Time</u>"), among Motors Liquidation Company (f/k/a General Motors Corporation), a Delaware corporation ("<u>Old GM</u>"), GM Components Holdings, LLC, a Delaware limited liability company ("<u>GM Purchaser</u>"), Parnassus Holdings II, LLC, a Delaware limited liability company ("<u>Parnassus</u>"), Parnassus Holdings I, LLC, a Delaware limited liability company ("<u>Parnassus Parent</u>"), Delphi Corporation, a Delaware corporation ("<u>Delphi</u>"), and General Motors Company, a Delaware corporation ("<u>New GM</u>") (each a "<u>Party</u>", and collectively the "<u>Parties</u>").

WHEREAS, Old GM has entered into or has rights under the agreements listed on <u>Exhibit A</u> (the "<u>Agreements</u>") with certain of the other Parties hereto;

WHEREAS, on the date hereof, the equity interests of GM Purchaser have been transferred from Old GM to New GM pursuant to the consummation of the transactions contemplated by that certain Amended and Restated Master Sale and Purchase Agreement (the "<u>MSPA</u>"), dated June 26, 2009, as amended, by and among Old GM, New GM and the other parties thereto;

WHEREAS, New GM wishes to accept by assignment all of Old GM's right, title and interest in, to and under the Agreements and to become liable for, and to pay, perform, discharge and satisfy when due, all of the duties, liabilities and obligations of, and all claims against, Old GM under the Agreements;

WHEREAS, the Parties wish to release and discharge Old GM from all of its obligations under the Agreements, except as provided herein, and to substitute New GM for Old GM as a party thereto;

NOW, THEREFORE, in consideration of the premises and the mutual promises and covenants contained herein and in the Agreements, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.0.   <u>Assignment of Agreements and Related Matters</u>.

    1.1.   Effective upon the Effective Time and notwithstanding Section 6.31 of the MSPA, Old GM hereby (a) bargains, assigns, transfers, sets over and conveys unto New GM and its successors and assigns forever, to have and to hold, all of Old GM's right, title and interest in, to and under the Agreements; and (b) transfers and assigns all of its duties, liabilities and obligations under the Agreements to New GM.

    1.2.   Effective upon the Effective Time and notwithstanding Section 6.31 of the MSPA, New GM agrees to assume, be bound by and perform the duties, liabilities and

obligations of Old GM under the Agreements in accordance with the terms and conditions contained herein and therein.  New GM accepts all of Old GM's right, title and interest in, to and under the Agreements and assumes and shall be liable for, and agrees to pay, perform, discharge and satisfy when due, all of the duties, liabilities and obligations of, and all claims against, Old GM under the Agreements as if New GM were the original party to the Agreements.

1.3.   Each of Delphi, Parnassus, Parnassus Parent and GM Purchaser agrees that, as of the Effective Time:  (a) except as provided in Section 3.1 below with respect to Section 12.1.6 of the Master Disposition Agreement ("MDA"), dated June 1, 2009 as revised and amended, by and among Delphi, GM Purchaser, Old GM, Parnassus and the other parties thereto and Section 9(iii) of the Securities Purchase Agreement, dated June 1, 2009 as revised and amended, by and among Parnassus, Parnassus Parent and Old GM (the "SPA") and Section 3.4, Old GM is released and discharged from any and all claims, demands, obligations, liabilities, duties, rights of action and further performance of all duties, liabilities and obligations, which Old GM owes, or may owe, to such Party, howsoever arising under the Agreements and whether arising prior to, on or after the consummation of the Agreements, and, to the extent that any such claims, demands, liabilities, duties, rights of action or further performance of duties, liabilities and obligations do arise, or may arise, these are hereby waived for all purposes insofar as Old GM is concerned, but are not waived insofar as New GM is concerned; and (b) New GM shall become entitled to all right, title and interest of Old GM in, to and under the Agreements as if New GM were the original party to the Agreements.  Notwithstanding the foregoing, Old GM shall not be released and discharged and New GM shall not assume any obligations under the Agreements that specifically relate to agreements between Old GM and Delphi or its Affiliates that have not been assigned or are not hereafter assigned to New GM pursuant to the transactions contemplated by the MSPA, this Assignment Agreement or otherwise, and the Parties agree that Old GM (not New GM) shall remain responsible for all such obligations under the Agreements.  It is further agreed that if for any reason, New GM is unable to perform any of the obligations assigned to it hereunder without the cooperation, consent or other action of Old GM (excluding any assumption of liabilities or payment of monies), then New GM will provide written instructions to Old GM outlining in all reasonable respects the act or acts being requested and the estimated costs associated with such action and Old GM will use its commercially reasonable efforts to comply with such written request to provide such cooperation, consent or other action and shall not be deemed released by Delphi from and will remain responsible to Delphi for all such obligations under the Agreements, and New GM shall pay any documented costs and expenses incurred by Old GM in using commercially reasonable efforts to comply with this sentence.  Except as it relates to Delphi under the previous sentence, Old GM will not be liable for taking any such actions requested pursuant to the previous sentence.

1.4.   As of the Effective Time, the term "GM" or other like term, as used in the Old Agreements, shall refer to New GM.

2

    1.5.    Effective upon the Effective Time, Old GM acknowledges and agrees that any and all rights of Old GM and any and all obligations of Parnassus and Parnassus Parent owing to Old GM under the Agreements are hereinafter rights solely of New GM and obligations owed solely to New GM and no further rights, obligations or performance thereof shall be for the benefit of or be owed to Old GM thereunder.

2.0.    <u>Successors and Assigns</u>.

    2.1.    The terms of this Assignment Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

3.0.    <u>Effect and Further Assurances</u>.

    3.1.    Subject to Section 3.4, upon the execution, delivery and effectiveness of this Assignment Agreement, the provisions with respect to Old GM in Section 12.1.6 of the MDA and Section 9(iii) of the SPA shall no longer be applicable, other than with respect to the purchase orders and commercial agreements between Sellers and Old GM, and such latter provisions shall remain in effect with respect to Old GM as they are written.

    3.2.    The Parties agree to execute and deliver, or cause to be executed and delivered, all such instruments and take all such action as the other party may reasonably request in order to effectuate the intent and purposes of this Assignment Agreement.

    3.3.    The Parties hereto agree that the rights and protections provided to Old GM in numbered paragraph 46 of the Modification Procedures Order are hereby provided solely to New GM as of the Effective Time.

    3.4.    To the extent that the Bankruptcy Court for Old GM grants any relief in connection with the Motion of Debtors for Entry of Order Approving (I) Master Disposition Agreement for Purchase of Certain Assets of Delphi Corporation, (II) Related Agreements, (III) Assumption and Assignment of Executory Contracts, (IV) Agreement with Pension Benefit Guaranty Corporation, and (V) Entry Into Alternative Transaction in Lieu Thereof (the "<u>GM Motion</u>") that authorizes the assumption and assignment of purchase orders and commercial agreements between Sellers and Old GM, and either (i) the effectiveness of such relief is not explicitly conditioned upon the consummation of the MDA or an alternative transaction approved by the Bankruptcy Court for Delphi (the "<u>MDA/AT Condition</u>") or (ii) the form of order granting such relief is not in form and substance satisfactory to Delphi, Parnassus and New GM, this Assignment Agreement shall automatically terminate and be of no further force and effect, the assignment of agreements set forth in Section 1 shall be deemed not to have occurred at the Effective Time (and the Parties shall take such steps as may be required to document such result) and Section 6.31 of the MSPA shall thereafter govern the assignment of the Agreements. Old GM shall use its best efforts to cause any relief granted by the Bankruptcy Court for Old GM in connection with the GM Motion to satisfy the MDA/AT Condition. For the avoidance of doubt, unless and until the occurrence of

3

the consummation of the transaction in the MDA or an alternative transaction approved by the Bankruptcy Court for Delphi (the "Consummation Date"), Old GM shall continue to be a party to, and shall retain all obligations under, all existing agreements with Delphi and its affiliates, including the MRA (as defined in the MDA), but excluding the Agreements. The findings in the order approving this Assignment Agreement shall not be binding upon Delphi and its affiliates until the Consummation Date occurs. If the Consummation Date does occur, the agreements set forth in Section 9.19 of the MDA shall be terminated in accordance with and to the extent provided by Section 9.19 of the MDA. The rights of all parties with respect to such agreements shall be preserved.

4.0. Miscellaneous.

    4.1. Capitalized terms used and not defined herein shall have the meanings ascribed to them in the MDA.

    4.2. This Assignment Agreement may be executed in two or more counterparts, each of which will be deemed an original, and all of which will constitute one and the same Assignment Agreement. Facsimile signatures will be treated as originals.

    4.3. The headings contained in this Assignment Agreement are for convenience only, do not constitute a part of this Assignment Agreement and will not be deemed to limit or affect any of the provisions hereof.

    4.4. Each Party hereby irrevocably and unconditionally agrees that the Bankruptcy Court shall retain exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this Agreement; provided, however, that after the second (2nd) anniversary of the date of this Agreement, the Bankruptcy Court and the New York Courts shall have non-exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this Agreement; and, provided, further, that the jurisdiction of the Bankruptcy Court over all matters related to this Assignment Agreement shall terminate upon the fourth (4th) anniversary of the date of this Assignment Agreement and the New York Courts shall have exclusive jurisdiction after the fourth (4th) anniversary of the date of this Assignment Agreement. Each Party further agrees to waive any objection based on forum non conveniens.

    4.5. This Assignment Agreement shall be governed and construed in accordance with the internal laws of the State of New York, the forum state in which the Bankruptcy Court sits, without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.

    4.6. This Assignment Agreement can be amended, supplemented or changed, and any provision thereof can be waived, only by written instrument making specific reference to this Assignment Agreement signed by the Party against whom enforcement of any such amendment, supplement or modification or waiver is sought. The waiver by any Party hereto of a breach of any provision of this

Assignment Agreement shall not operate or be construed as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any right, power or remedy.

*[Signature page follows]*

IN WITNESS WHEREOF, the parties have caused this Assignment Agreement to be executed and delivered as of the date set forth above.

**DELPHI CORPORATION**

By: _[signature]_____
Name: JOHN D. SHEEHAN
Title: VP & CFO.


**MOTORS LIQUIDATION COMPANY
(F/K/A GENERAL MOTORS CORPORATION)**

By: _____
Name:
Title:


**GM COMPONENTS HOLDINGS, LLC**

By: _____
Name:
Title:


**GENERAL MOTORS COMPANY**

By: _____
Name:
Title:

[SIGNATURE PAGE TO ASSIGNMENT AGREEMENT (1 OF 3)]

IN WITNESS WHEREOF, the parties have caused this Assignment Agreement to be executed and delivered as of the date set forth above.

**DELPHI CORPORATION**

By: _____
    Name:
    Title:

**MOTORS LIQUIDATION COMPANY**
**(F/K/A GENERAL MOTORS CORPORATION)**

By: _/s/ Ted Stenger_____
    Name: TED STENGER
    Title: EXECUTIVE VP

**GM COMPONENTS HOLDINGS, LLC**

By: _____
    Name:
    Title:

**GENERAL MOTORS COMPANY**

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties have caused this Assignment Agreement to be executed and delivered as of the date set forth above.

**DELPHI CORPORATION**

By: _____
    Name:
    Title:

**MOTORS LIQUIDATION COMPANY**
**(F/K/A GENERAL MOTORS CORPORATION)**

By: _____
    Name:
    Title:

**GM COMPONENTS HOLDINGS, LLC**

By: /s/ Randall T. Pappal
    Name:
    Title:

**GENERAL MOTORS COMPANY**

By: _____
    Name:
    Title:

[SIGNATURE PAGE TO ASSIGNMENT AGREEMENT (1 OF 3)]

IN WITNESS WHEREOF, the parties have caused this Assignment Agreement to be executed and delivered as of the date set forth above.

**DELPHI CORPORATION**

By: _____
    Name:
    Title:

**MOTORS LIQUIDATION COMPANY**
**(F/K/A GENERAL MOTORS CORPORATION)**

By: _____
    Name:
    Title:

**GM COMPONENTS HOLDINGS, LLC**

By: _____
    Name:
    Title:

**GENERAL MOTORS COMPANY**

By: _____/s/ S.A. Malik_____
    Name: Sadiq A Malik
    Title: Vice President and Treasurer

PARNASSUS HOLDINGS I, LLC

By: _____
Name: Eva M. Kalawski
Title: Vice President and Secretary

PARNASSUS HOLDINGS II, LLC

By: _____
Name: Eva M. Kalawski
Title: Vice President and Secretary

Acknowledged, Consented and Agreed:

PARNASSUS FUNDING LLC

By: _____
Name: Eva M. Kalawski
Title: Vice President and Secretary

PLATINUM EQUITY CAPITAL PARTNERS II, L.P.

By: Platinum Equity Partners II, LLC,
its general partner

By: Platinum Equity Investment Holdings II, LLC,
its senior managing member

By: _____
Name: Eva M. Kalawski
Title: Vice President and Secretary

[SIGNATURE PAGE TO ASSIGNMENT AGREEMENT (3 OF 3)]

**PLATINUM EQUITY CAPITAL PARTNERS-A II, L.P.**

By: Platinum Equity Partners II, LLC,
    its general partner

    By: Platinum Equity Investment Holdings II, LLC,
        its senior managing member

    By: _____
    Name: Eva M. Kalawski
    Title: Vice President and Secretary

**PLATINUM EQUITY CAPITAL PARTNERS-PF II, L.P.**

By: Platinum Equity Partners II, LLC,
    its general partner

    By: Platinum Equity Investment Holdings II, LLC,
        its senior managing member

    By: _____
    Name: Eva M. Kalawski
    Title: Vice President and Secretary

# Exhibit A

## Agreements

Master Disposition Agreement, dated as of June 1, 2009 as revised and amended, by and among Delphi Corporation, GM Components Holdings, LLC, General Motors Corporation, Parnassus Holdings II, LLC and the other Sellers and Buyers party thereto; provided, however, for purposes of this Assignment Agreement, the Master Disposition Agreement shall not include any other agreement or other documents relating to Delphi and its affiliates even if referred to, or otherwise referenced in, the Master Disposition Agreement.

Securities Purchase Agreement, dated as of June 1, 2009 as revised and amended, by and among Parnassus Holdings I, LLC, Parnassus Holdings II, LLC and General Motors Corporation.

Commercial Agreement, dated as of June 1, 2009, by and between General Motors Corporation (on behalf of itself and its subsidiaries) and Parnassus Holdings II, LLC.

Access Agreement, dated as of June 1, 2009, by and between General Motors Corporation (on behalf of itself and its subsidiaries) and Parnassus Holdings II, LLC.

Supply Agreement, dated as of June 1, 2009, by and between General Motors Corporation (on behalf of itself and its subsidiaries) and Parnassus Holdings II, LLC.

Commitment Letter, dated as of June 1, 2009, from Platinum Equity Capital Partners II, L.P., Platinum Equity Capital Partners-A II, L.P. and Platinum Equity Capital Partners-PF II, L.P. for the benefit of Parnassus Holdings II, LLC.

Commitment Letter, dated as of June 1, 2009, from Platinum Equity Capital Partners II, L.P., Platinum Equity Capital Partners-A II, L.P. and Platinum Equity Capital Partners-PF II, L.P. for the benefit of Parnassus Funding LLC.