Hearing Date and Time: August 18, 2009 at 9:45 a.m. (Eastern Time)

Anthony L. Leffert
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO  80202
Telephone: 303-297-2600
Facsimile: 303-297-2750

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                                              Case No. 09-50026 (REG)
                                                                                        Chapter 11 (Jointly Administered)

GENERAL MOTORS CORP., *et al.*,

                                        Debtors.
-----------------------------------------------------------------x

## VERIFIED MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Environmental Testing Corporation ("ETC"), by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., hereby moves this Court for payment of administrative expenses pursuant to 11 U.S.C. § 503(b) and states and alleges the following:

### Factual Basis for Payment of Administrative Expenses

1. On December 7, 1971, General Motors Corporation ("GM") entered into a lease with ETC predecessor, Jason Associates, (the "Lease") for the lease of a building and premises located at 4750 Kingston Street, Denver, Colorado 80239 (the "Property"). ETC purchased the Property and took an assignment of the Lease. The building and premises in question was used by GM since 1971 as an emissions laboratory. The Lease is scheduled to expire on December 31, 2009. Only six months remain of the thirty-eight (38) years of the Lease term. (*See* Exhibit

188277

A attached hereto, the ETC Lease.) GM, as debtor in possession, has sought approval for and rejected the Lease.

2. Pursuant to the terms, and the various amendments to the Lease, GM is responsible for keeping the premises in good order and condition as when delivered and upon expiration of the term of the Lease GM is required to restore the premises to its original condition and to restore all improvements to the Property. Further, GM has agreed it will not cause or allow there to be any violation of environmental laws with respect to hazardous materials generated, released, or stored upon the premises in connection with GM's activities. Specifically, GM agreed not to allow there to be any violation the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601, et seq.), the Hazardous Materials Transportation Act of 1980 (49 U.S.C. § 1802, et seq.), and the Resource Conservation and Recovery Act (42 U.S.C. § 6901, et seq.), or any other federal, state or local statute, law, ordinance, code, rule, regulation relating to environmental protection, pollution, health or safety. Finally, GM has agreed to pay for all costs and expenses of remediation, removal and restoration of the premises, including attorneys' fees and costs, related to any remediation, removal or restoration of the premises.

3. GM has failed and refused to remediate and restore the Property. The building cannot be sold or leased in its current condition and ETC has begun the process of remediating and restoring the Property and to remove the numerous environmental contamination issues which exist on the Property as a result of GM's activities. It is estimated that it will cost $1.8 million to remediate and restore the real estate to its original condition at the time GM leased the Property.

4.    Pursuant to the terms of the Lease, GM was required to pay for the real property taxes on the building and premises. GM has failed and refused to pay for the property taxes for 2009 and such taxes have been paid by ETC.

5.    ETC has done vehicle and engine testing for GM at its testing facility in Aurora, Colorado since 1983. ETC has done post-petition vehicle and engine testing for GM in the amount of $570,000.00 and ETC continues to do testing at this time.

## Legal Authority for Payment of Administrative Expenses

6.    ETC seeks the payment of administrative expenses pursuant to 11 U.S.C. § 503(b) and 11 U.S.C. § 105. ETC's claim for administrative expense arises from post-petition transactions with the Debtors' estate and the services provided by ETC which have been a benefit to the bankruptcy estate and to the business of GM.

7.    Pursuant to the Motion of the Debtors and this Court's Order dated June 1, 2009, regarding payment for services of post-petition business activities, GM is obligated to pay for the post-petition testing by ETC as an administrative expense.

8.    GM is obligated to pay for the post-petition remediation and restoration of the Property on the grounds that this work has benefited the estate and relieved the estate of obligations for which GM is obligated and liable under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601, et seq.), the Hazardous Materials Transportation Act of 1980 (49 U.S.C. § 1802, et seq.), and the Resource Conservation and Recovery Act (42 U.S.C. § 6901, et seq.), and other state and local statutes, ordinances, codes, and regulations relating to the environmental protection, pollution, health or safety.

3

188277

9. Without this remediation or restoration being done by ETC, GM's bankruptcy estate would be liable for and obligated to pay for the remediation and restoration of the Property under the above referenced environmental statutes.

10. Courts generally accord administrative priority to post-petition clean-up costs based on pre-petition environmental damage when the damage constitutes an imminent and identifiable harm to the public health or safety. *See, e.g., In re Wall Tube & Metal Products Co.,* 831 F.2d 118, 123 (6th Cir. 1987). These post-petition remediation and restoration expenses are actual and necessary both to preserve the estate in compliance with state and/or federal environmental regulations and to protect the health and safety of a potentially endangered public. *Id.* at 124. Further, the congressional policy underlying the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601, et seq.) ("CERCLA") is that those who generate, use, or transport hazardous material should be required to pay the cost of damages caused by the hazardous materials. *In re T.P. Long Chemical, Inc.,* 45 B.R. 278, 286 (N.D. Ohio 1985). Since GM cannot escape liability under, *inter alia,* CERCLA, the cost incurred in discharging this liability is an actual, necessary cost of preserving the estate entitled to administrative expense priority. *See T.P. Long,* 45 B.R. at 286. Furthermore, even if the Premises is no longer property of the estate, GM is still responsible for an environmental clean-up since there exists a continuing environmental hazard on the Property and GM has an ongoing responsibility to comply with environmental laws and cannot abandon its responsibility as to the Property. *See In re Torwico Electronics, Inc.,* 8 F.3d 146 (3rd Cir. 1993). Clean-up costs confer a benefit on the bankruptcy estate by bringing the estate in compliance with the clean-up mandate of state and federal laws and by protecting the estate from potential tort liability. *T.P.*

188277

*Long,* 45 B.R. at 286. Therefore, ETC's post-petition remediation and restoration of the Property should be accorded administrative priority.

11.   GM is obligated to pay for the property taxes on the Property under the subject Lease. GM has refused to pay for the property taxes and the property taxes have been paid by ETC in the amount of approximately $25,000.00. The payment of these property taxes is administrative expense in that it has benefited the Debtor's estate and the post-petition operations of GM. *See In re Federated Department Stores, Inc.,* 270 F.3d 994 (6th Cir. 2001); *In re National Refractories & Minerals Corp.,* 297 B.R. 614, 620 (N.D. Cal. 2003).

WHEREFORE, ETC prays this honorable Court will enter an order pursuant to 11 U.S.C. § 503, et seq. and 11 U.S.C. § 105, et seq. that the taxes, post-petition testing services and costs to remediate and restore the Property be declared and paid as administrative expenses entitled to the priority afforded under the Bankruptcy Code and for such other and further relief as the Court shall deem just and proper.

## Verification

STATE OF COLORADO            )
                             ) ss.
COUNTY OF Adams              )

I, Gerard P. Glinsky, President of Environmental Testing Corporation, do hereby verify that the foregoing is true and correct based on my knowledge and belief.

_____
Gerard P. Glinsky

Acknowledged, subscribed and sworn to before me this 13th day of July, 2009, by Gerard P. Glinsky.

2-24-10
My commission expires

Judy Delaney
Notary Public

Dated: July 14, 2009
Denver, Colorado

ROBINSON, WATERS & O'DORISIO, P.C.

/s/Anthony L. Leffert
Anthony L. Leffert (AL 6373)
1099 18th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 297-2600
Facsimile: (303) 297-2750
*Attorneys for Environmental Testing Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of July, 2009, the foregoing was filed electronically and that service was accomplished electronically to all ECF registrants via the Court's CM/ECF System.

/s/Elizabeth Garfield

188277