John J Stangel
410 Barrett Hill Road
Mahopac, New York 10541
Tele: (845) 628-6116
June 30, 2009

United States Bankruptcy Court
One Bowling Green
New York, New York 10004
Attn: Vito Genna, Court Clerk

Re: General Motors Corp, et al, Debtors
    Chapter 11 Case No 09-50026 (REG)

Dear sir:

I currently own the following General Motors securities:

| CUSIP | Title of Notes | Par Value |
|---|---|---|
| 370442AR6 | 7.40% Debentures due September 1, 2025 | $ 16,000 |
| 370442717 | 6.25% Series C Convertible Senior Debentures due July 15, 2033 | 19,325 |
| | | 35,325 |

These securities are contained in IRA and SEP accounts and generate $2,392 annually of my current retirement income.

Since I am unable to attend the hearing taking place today at the SDNY Bankruptcy Court, this letter reiterates, as stated in my letter of June 16, my objection to the US Treasury-sponsored Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC (MPA). Moreover, I also explain the reasons for my objection and add a related suggestion for consideration by the court prior to ruling on the MPA on or before the July 10 deadline.

Accordingly, my reasons for objecting to the Master Sale and Purchase Agreement, as outlined in the Notice of Sale Hearing dated June 2, 2009 and other documents, are as follows:

   (1) the MPA is not likely to save General Motors for more than four or five years,
   (2) the MPA places a disproportionately large share of the burden for GM's survival on the bondholders, and
   (3) the MPA constitutes an inappropriate, risky and wasteful use of taxpayer funds.

These reasons are discussed in greater detail in the attachment to this letter. I consequently request that the court reject the MPA proposal.

In addition, I also recommend that the court vacate the provisions of any loans entered into by General Motors and/or its designated subsidiaries since June 1, 2007 which purport to secure said loans as senior to then existing GM notes, bonds and debentures unless said loans provide funds to acquire specific assets not previously owned by General Motors and/or its designated subsidiaries. The sale of GM assets existing prior to June 1, 2007 afford the primary source of funds to

pay bondholders in the event of bankruptcy. If the government really believes that the MPA would save GM, then they would not demand that their, so called "secured", loans be senior to existing bondholder debt. The MPA is thus merely a device for unjustly shifting the added cost of GM survival to bondholders without their consent. Had bondholders wished to undertake that risk, they would have bought GM common stock.

Sincerely,

John J Stangel

attachment

cc:
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Harvey R Miller, Esq, et al

Cleary, Gottlieb, Steen, & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attn: James L Browley, Esq

Vedder Price, PC
1633 Broadway, 47th Floor
New York, New York 10019
Attn: Michael J Edelman, Esq
    and Michael L Shein, Esq

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attn: John J Rapisardi, Esq

Cohen, Weiss & Simon LLP
330 West 42nd Street
New York, New York 10036
Attn: Babette Ceccotti, Esq

Office of the US Trustee, SDNY
33 Whitehall Street, 21st Floor
New York, New York 10004
Attn: Diana G Adams, Esq

US Attorney's Office, SDNY
86 Chambers Street, Third Floor
New York, New York 10007
Attn: David S Jones, Esq, et al

ATTACHMENT

REASONS FOR OBJECTING TO MASTER SALE AND PURCHASE AGREEMENT (MPA)

1. <u>The MPA is not likely to save General Motors for more than four or five years.</u> The primary problem with General Motors is not capital. If gas were selling at a dollar per gallon at the pump, General Motors would not have the problems it has today. If they could build a four-passenger car that gets 50 miles per gallon for sale at $18,000 in January 2010, GM would have no problem next year. GM management probably realized in 1980 that the market would demand a low-cost, fuel-efficient car in the future. But, they decided that they would give up that portion of the market to imports and focus on gaining the higher profit margins afforded by larger cars and SUVs.

This management philosophy had been ingrained into GM's cost structure -- into its labor contracts, its pension plans and its employee health-care programs, as well as those of its suppliers. As a result, GM cannot build sellable cars today for the $3.00-per-gallon gas environment, without a great deal of pain.

Congress, under President Bush, negotiated with the auto industry to impose a standard of 30 miles per gallon by 2012. This was increased under President Obama to 35 miles per gallon with great objection. These goals are not unreasonable. In 1984, I bought my first non-GM car, a Nissan Sentra with a special engine, for $10,000, which realized 49 miles per gallon. Recently, VW announced that next year they plan to offer a car to deliver 58 miles per gallon. Therefore, the above goal should have been accepted by domestic auto manufacturers as a challenge that must be met or exceeded for survival even without congressional mandate. Moreover, I would have thought that, considering GM's financial situation, the UAW and its members would have offered meaningful support, inasmuch as their jobs and benefits were at stake.

Nothing in the MPA addresses any of these problems. The present management will remain in power, despite its demonstrated inability to deal with the current situation. Management will probably continue to imply that they are hampered with noncompetitive labor contracts and untenable legacy costs. Yet, the MPA does not address these issues either. There is no evidence that GM can ever develop, build and sell a competitive fuel-efficient car. Perhaps, it's best for the United States to let GM to go into bankruptcy. Perhaps, the bankruptcy proceedings will surface a qualified buyer who can profitably run the company or substantial segments thereof, saving many jobs with minimal additional public and private investment.

2. <u>The MPA places a disproportionately large share of the burden for GM's survival on the bondholders.</u> Prior to December 2008, the $27.2B loaned to GM by bondholders was the primary source of financing for corporate operations, but, according to the 8-K Report filed by General Motors with the SEC on June 1, under the MPA, substantially all GM's current assets will be transferred to a new GM with no specified provision for compensating GM's current bondholders. In the event of

bankruptcy, the bondholders attain an inherent ownership position in those assets, and their transfer to the new GM with little or no compensation is blatantly unjust.

3. <u>The MPA constitutes an inappropriate, risky and wasteful use of taxpayer funds.</u> Since December 2008, the US government loaned GM $19.2B, and, under the MPA, US and Canadian government entities will provide an additional $33.3B, making GM's composite US and foreign governmental debt $52.5B. For these loans, the US government will own 60.8% of the common stock in the new GM, and the governments of Canada and Onterio collectively will own 11.7%. Thus, US and foreign governments, with essentially no experience or organizational structure for managing a large, troubled automobile company, will own a 72.5% controlling interest in its operation and survival.

The MPA presents no plan for how government control will solve GM's troubles. I guess the government believes that GM's present management will make it happen. I estimate that GM lost $38B in the past year in ongoing operations. Some of this has been absorbed by selling off assets, and there may still be some assets that can be effectively sold. But, in the absence of aggressive stockholder control, it is doubtful that the MPA's $33.3B will carry GM for much more than a year. I don't think the government can and will exercise effective control, and US and Canadian taxpayers will lose part or all of their investment. In my case, as a taxpayer, I would be losing my share of this investment, as well as the $35,325 that I would be losing as a bondholder. I can't afford the loss.