UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

GENERAL MOTORS CORPORATION,

Debtor.

- - - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court

One Bowling Green

New York, New York

July 7, 2009

7:08 PM

B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

HEARING re Motion to Allow Direct Appeal to Second Circuit.

Transcribed by: Pnina Eilberg

A P P E A R A N C E S :

WEIL, GOTSHAL & MANGES LLP

Attorneys for Debtor, General Motors

767 Fifth Avenue

New York, NY 10022

BY: STEPHEN KAROTKIN, ESQ.

MICHELE J. MEISES, ESQ.

HARVEY MILLER, ESQ.

JOSEPH H. SMOLINSKY, ESQ.

IRWIN H. WARREN, ESQ.

(TELEPHONICALLY)

VEDDER PRICE P.C.

Attorneys for Export Development Canada

1633 Broadway

47th Floor

New York, NY 10019

BY: MICHAEL L. SCHEIN, ESQ.

ERIN ZAVALKOFF-BABEJ, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE

Office of the United States Attorney

86 Chambers Street

New York, NY 10007

BY: JEFFREY OESTERICHER, AUSA

DAVID JONES, AUSA

MATTHEW L. SCHWARTZ, AUSA

SCHNADER HARRISON SEGAL & LEWIS LLP

Attorneys for Ad Hoc Committee of Consumer Victims of GM

1600 Market Street

Suite 3600

Philadelphia, PA 19103

BY: BARRY E. BRESSLER, ESQ.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Attorneys for UAW
One Liberty Plaza
New York, NY 10006

BY: JAMES L. BROMLEY, ESQ.
JAMES CROFT, ESQ.
(TELEPHONICALLY)

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for US Treasury
One World Financial Center
New York, NY 10281

BY: LESLIE W. CHERVOKAS, ESQ.
(TELEPHONICALLY)

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for U.S. Treasury
700 Sixth Street, N.W.
Washington, DC 20001

BY: PETER M. FRIEDMAN, ESQ.
DOUGLAS S. MINTZ, ESQ.
JOHN J. REPISARDI, ESQ.
(TELEPHONICALLY)

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
Attorneys for Ad Hoc Committee of
Asbestos Personal Injury Claimants
2323 Bryan Street
Suite 2200
Dallas, TX 75201

BY: PETER C. D'APICE, ESQ.
SANDER L. ESSERMAN, ESQ.
(TELEPHONICALLY)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Attorneys for GM Bondholders
1285 Avenue of the Americas
New York, NY 10019

BY: SARAH HARNETT, ESQ.
(TELEPHONICALLY)

THE COLEMAN LAW FIRM
Attorneys for Individual Accident Litigants
77 West Wacker Drive
Suite 4800
Chicago, IL 60601

BY: STEVEN R. JAKUBOWSKI, ESQ.
(TELEPHONICALLY)

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Attorneys for Official Committee of Unsecured Creditors

1177 Avenue of the Americas

New York, NY 10036

BY: THOMAS MOERS MAYER, ESQ.

(TELEPHONICALLY)

JENNER & BLOCK LLP

Attorneys for Defendant(s), General Motors Corporation

330 N. Wabash

Chicago, IL 60611

BY: DANIEL R. MURRAY, ESQ.

(TELEPHONICALLY)

DLA PIPER

Attorneys for Hewlett-Packard

550 South Hope Street

Suite 2300

Los Angeles, CA 90071

BY: JENNIFER L. NASSIRI, ESQ.

(TELEPHONICALLY)

CAPLIN & DRYSDALE ATTORNEYS

Attorneys for Creditor, Mark Buttita

One Thomas Circle, N.W.

Suite 1100

Washington, DC 20005

BY: RONALD E. REINSEL, ESQ.

(TELEPHONICALLY)

ALSO PRESENT:

PAUL NATHANSON, Creditor

(TELEPHONICALLY)

P R O C E E D I N G S

THE COURT: Hello. This is Robert Gerber, may I get appearances on the phone, please.

MR. JAKUBOWSKI: Your Honor, this is Steve Jakubowski for the individual accident victims.

THE COURT: Okay. Good evening, Mr. Jakubowski.

MR. D'APICE: Good evening, Your Honor. Peter D'Apice for the ad hoc committee of asbestos personal injury claimants.

THE COURT: Okay. That's pronounced D'Apice?

MR. D'APICE: Yes, sir.

THE COURT: Okay. And you're Mr. Esserman's colleague -- partner?

MR. D'APICE: Yes, Your Honor.

THE COURT: Thank you.

MR. REINSEL: Good evening, Your Honor. Ron Reinsel from Caplin & Drysdale on behalf of Mark Buttita and joined with the ad hoc committee.

THE COURT: Right. Mr. Reinsel.

MR. MILLER: Harvey Miller for the debtors, Your Honor, of Weil Gotshal & Manges.

THE COURT: Okay. Mr. Miller. Anyone else?

MR. MAYER: Tom Mayer from Kramer Levin for the Official Committee of Unsecured Creditors.

THE COURT: Right. Mr. Mayer.

MR. BONOMO(ph.): Lawrence Bonomo, General Motors

legal staff.

THE COURT: That one I couldn't hear.

MR. BONOMO: Lawrence Bonomo, General Motors legal staff.

THE COURT: Bonomo?

MR. BONOMO: Yes.

THE COURT: And who do you represent, Mr. Bonomo?

MR. BONOMO: The General Motors legal staff.

THE COURT: Oh, okay.

MR. BRESSLER: Barry Bressler, Your Honor, for the ad hoc committee.

THE COURT: Sure, Mr. Bressler.

MR. BRESSLER: Thank you, Your Honor.

THE COURT: Get everybody now?

MR. RAPISARDI: John Rapisardi.

THE COURT: Whoever just -- oh, Mr. Rapisardi?

MR. RAPISARDI: Yes.

THE COURT: Mr. Rapisardi, I don't know how much you're going to be speaking but you're very soft. If you do decide you're going to speak, I'm not sure if Mr. Schwartz is going to let you, he's nodding negatively in the courtroom, but if you change your mind and speak you're going to have to speak louder.

MR. RAPISARDI: I will, Your Honor. Thank you.

THE COURT: Okay. All right. Do I now have

everybody?

UNIDENTIFIED ATTORNEY: Your Honor, is the U.S. Attorney there?

THE COURT: Yes, I'll now ask for appearances in the courtroom. And for those, Mr. Schwartz, Mr. Jones, I'm going to need you to come to the main lectern so people on the phone can hear you better. Mr. Schein -- and forgive me, with you, Mr. Schein?

MR. SCHEIN: Is my associate, Erin Zavalkoff.

THE COURT: Okay. Thank you. Mr. Schein is here for the Canadian folks, Export Canada. Okay. Mr. Jakubowski, this is your motion, you can proceed. I've read everybody's papers.

MR. JAKUBOWSKI: Okay. I won't belabor the point, Your Honor. I think both sides have stated their positions as best as possible. I just want to make a few points, really in rebuttal to the arguments that were presented by the debtor and Treasury.

First, with respect to the issue of whether or not a controlling decision has been issued, I point Your Honor to your own papers and the caption to your opinion is the decision and the caption to your order is an order. And as I read the statute, it talks about a controlling decision. So I think that, as you, yourself, stated, it's not clear exactly what the rationale is going to be for the bottom line holding but you felt compelled to rule as you did because of the bottom line

holding. And I think that, in this case, absent a decision and a rationale, I think it's fair to find that the request for relief falls within the first part of 158(d)(2)(A)(i) in the sense that there is no true controlling decision, just a judgment and bottom line.

Second, with respect to the issue of public importance, I guess maybe everything is relative but to me, Your Honor, when you're dealing with a half a billion dollars estimated of tort claimant liability that's reserved on the balance sheet based on extensive review and analysis of what's observed by one of the best insurance consulting companies in the world, when you're talking about 1,000 cases that are pending, a significant number of other injuries that are reported but not yet resolved or are subject to litigation. You're talking about people who have gone through some type of a trauma that ultimate is in many ways a life changing event. And if anyone needs the assistance and to have this case progress it's those people because they are the least likely to be able to defend themselves and they need speed and resolution as quickly as possible.

THE COURT: Well pause please, Mr. Jakubowski. Believe me, I understand how important it is to a tort litigant but assuming I were to agree with everything you're saying, all of these folks would still have to prove their tort claims in whatever courts they're pending in order to recover and that

would be on a one-by-one basis anyway, wouldn't it?

MR. JAKUBOWSKI: Absolutely. But what this would do, Your Honor, is -- and let me just merge really two issues, one is public importance which I've talked about but also the second prong of this, which is a -- and that is advancing the progress of the case.

By providing an intermediate level of appeal here, you will have effectively -- failure to grant the motion will have -- will ultimately result in another year plus worth of delay for people who are in the middle of litigation and, as you well know, memories fade, evidence recedes, lawyers are at different stages of development. They change, they move, experts come and go and move different places and just the general momentum of all these cases grinds to a halt. And to have it grind to a halt for a full year while they're waiting for the District Court to issue what is really in effect a relatively meaningless opinion here because of the fact that you came forward with a very coherent opinion that can be resolved as a matter of law, I think is unfair to them and I think does not make to a materially advance the progress of that case.

THE COURT: Mr. Jakubowski, when you were making your last point it sounded to me like the arguments that are sometimes made to bankruptcy judges on behalf of tort litigants to give me relief from the stay so I can liquidate my claim so

that the folks who saw the car wreck don't scatter to the winds and so forth. I think that's something as to which -- well, I like to think I keep an open mind on everything but most judges would keep an open mind on. But getting the ability to liquidate claims is a little different than determining who the -- whether you can go against New GM.

Is it your point that they couldn't do that because they don't know whether New GM would be bound by a defense by Old GM?

MR. JAKUBOWSKI: Well, I think what I'm saying, Your Honor, is that for the tort litigants to proceed, let's say there to say well let's go lift the stay, let's proceed in State Court, in a way what's the point? They would be litigating for a recovery of what, ten cents on the dollar I think is what's projected.

Absent the ability to join New GM as a defendant in their respective cases, there's really no incentive for them to proceed forward and they as well just liquidate their claim at some type of mediation, I think, that's proposed by the debtor and the creditors' committee in connection with the bankruptcy case.

THE COURT: Well what about going against the dealers?

MR. JAKUBOWSKI: Well, the problem with the dealers is that first there's a lot of limitations with respect to that. They may be able to do that anyway but it's not clear that --

but as Mr. Bressler stated, there are a lot of defenses that dealers can raise that are a lot different than being able to directly go against the successor under a theory of successor liability. Which means it would put the purchaser in the shoes of the old company whereas in the dealer case there are, in a number of states as Mr. Bressler, I know, can talk about better than I can, a lot of defenses. And as I understand it, it only protects the purchaser; it may not protect the occupant or the subsequent buyer in a further sale.

THE COURT: Um-hum. Go ahead, Mr. Jakubowski. I'll have another question but I'll let you continue now at this point.

MR. JAKUBOWSKI: Okay. In terms of -- just to, kind of, reiterate the other point that I made and maybe to see whether you have any questions on that, I do think that it is important, given just the magnitude of this case and just the exponential numbers involved here, to have this case put on a parallel track with the Chrysler case.

This case does offer a distinguishing fact that I pointed out in oral argument that was devolved in the record and that you alluded to in your footnote 91 and that is that it doesn't appear that there would be any change in the purchase price or any diminution to the estate as a result of if the Court were to impose successor liability on the purchaser therefore it's effectively an immaterial change to the

contrary.

And I think that is a distinguishing feature of this case and I think that in connection with the posture of the case as it exists right now in the Second Circuit, I think it would be helpful to have this case in front of it as it's writing its opinion in Chrysler and as it's deciding this case to be able to compare and contrast those two cases. As the Supreme Court often does when it takes parallel cases, joins them all together so that it can come up with a broader and richer decision.

I guess this final point, Your Honor, is I don't think that the notion that the debtors have raised that this is some type of extraordinary relief is accurate. While it's extraordinary in the sense that it's different, I don't think there's anything in the legislative history that suggests that it's an extraordinary measure that should be granted in very limited circumstances, more in the nature of, like, a preliminary injunction or even a TRO. It's not like that. I think that if the statute -- statutory prerequisites are satisfied, I think the language says that the Court shall do it and I think the idea is that because of the fact that we're dealing with a court, with a specialized court that has tremendous knowledge, there's really no reason other than the fact of the jurisdictional issues raised by Paragon (ph.) that it has to go through an extra level. Whereas in no other

litigation, civil litigation, it does that.

So it seems to me that we had a true trial on the merits; we have excellent advocacy, excellent proceedings and there's no reason for that intermediate step to take place and I don't think Congress expected it to be more in the nature of a TRO-type proceeding.

With that, Your Honor, I will rest and I appreciate your time.

THE COURT: Well thank you but I do have one last question, Mr. Jakubowski, recognizing that every question sometimes leads to another question. When the creditors' committee filed its response today they noted something that got my attention, that under rules in the Second Circuit when they're trying to preserve the status quo in something that's before them, that could result in a stay even without showing the bases for a stay under applicable case law in the Second Circuit and addressing the matter of the bond, which I'll be -- both of which I'll be asking Mr. D'Apice about in a couple of minutes. Were you aware of that local court rule when you asked me to certify it to the circuit?

MR. JAKUBOWSKI: I wasn't, Your Honor. But I will say this, and I think that there are two issues, one is the certification and the other is how quickly the Second Circuit hears the appeal and whether it does it on an expedited basis or not. My goal, as I said to you yesterday, was to try to get

this thing moved quickly enough, given the fact that the parties have briefed the issue, it's a very narrow issue that deals with just the successor liability issue.

THE COURT: I assume you're not expecting the circuit to decide it in the next two days, before the purchaser's allowed to close?

MR. JAKUBOWSKI: Well, I mean I supposed I could dream but I think that -- I agree with you that it's unlikely.

THE COURT: If the circuit decided something in two days, would you agree that it's not going to give the Supreme Court much help in deciding the issue?

MR. JAKUBOWSKI: No, I think it would be very helpful because I think what that would do at that point -- I mean I'm in a way kind of assuming that the circuit will -- I think the odds are that it would deny my motion, my argument and that basically what it would do is to put the two cases on a parallel track.

THE COURT: Well, I think you're -- I think it would be hard-pressed to reverse on two days.

MR. JAKUBOWSKI: Right.

THE COURT: I don't quarrel with that notion but that kind of hints, and I think I even used this expression in one of my cases, doesn't that make the Second Circuit Court of Appeals kind of a meaningless way station on the way to an appeal?

MR. JAKUBOWSKI: Well, I think that that's really, at the end of the day, for them to decide. And I have no problems with having the argument laid out over a reasonable period of time, and not two days at the appellate level, and I think that we can still get the cases on a parallel track if the Supreme Court wanted that. But that's why I say I think there are two issues. The mootness issue, as had been widely quoted, I am not -- I believe that relief can be granted notwithstanding 363(m) on the mootness. And that the decision and the closing will not create equitable mootness as to this issue. I think relief can be granted in this particular case under these facts and will not be rendered equitably with the size of the closing of the transaction.

So I'm not overly concerned about the fact that the sale would close and the appellate proceedings would continue because I think that those would be resolved in time for us to get our surpetition filed and get the cases consolidated.

THE COURT: Okay. Thank you. Mr. D'Apice.

MR. D'APICE: Thank you, Your Honor. I join Mr. Jakubowski's statement. I would only add, Your Honor, that in terms of the public importance issues, we all know, I think, that the bankruptcy world is watching this case as it watched and watches the Chrysler case. And what we have happening here in our view, Your Honor, is a use of 363 to accomplish what these debtors or any debtor would not have been able to do

under a plan under 1141(d). They would not have been able to do this transfer of substantially all of their assets, get a plan and get a discharge, which is effectively what's happening here. The operating entity, the operating assets are getting a complete discharge from -- with an injunction from present asbestos claims and tort claims.

They wouldn't have been able to accomplish this in Chapter 7. Corporate debtors don't get the discharge. What we've got in Chapter 7 -- and instead what we've done is use 363 in contravention of what -- 7 and 27 and 1141(d)(3) were designed to prevent precisely what's happening here. It's to transfer substantially all of the debtor's assets to a new entity that for all intents and purposes it's the same company, same office building and same company cars and same people and the only difference is its liability, collective liability as it winds down.

Add it to public importance, Your Honor, because this case is being watched and will be cited and mechanisms will be used and it will be used on an accelerated basis and if it's not we're always facing the issue where -- where we're at now the debtor says no, I have to close immediately or the world comes to an end. .

THE COURT: Well pause on that, please, Mr. D'Apice.

MR. D'APICE: Yes, sir.

THE COURT: I take it you would agree, I'm sure

Mr. Richman would agree and I think I would agree that you've still got to make Lionel findings, don't you?

MR. D'APICE: I believe that's right, Your Honor.

THE COURT: Well, that's kind of a decent safeguard, isn't it?

MR. D'APICE: I'm not sure it adequately protects us, Your Honor. I'm not sure that we can protect it with that -- with those kinds of -- I'm not sure that would protect our client. If there's a injunction against bringing claims against --

THE COURT: Okay. Did I interrupt you before you were done, Mr. D'Apice?

MR. D'APICE: I only have one more point, Your Honor, which is that the pending sale and purchase agreement provide a termination right if the closing shall not have occurred on or before August 15th or such later date that the parties may agree in writing but no later than September 15th. I don't know how quickly the Second Circuit will move. They moved very quickly in the Chrysler case and this closing and the order approving the closing has been entered so that term of the purchase agreement has been met. And if they have until August 15 to close, and as late as September 15, that gives at least some time for the appellate courts to set the conditions, Your Honor, and operate it better.

THE COURT: Okay. Well, I did read your brief. Do

you have anything else you want to add, beyond what you already told me just now?

MR. D'APICE: No, Your Honor.

THE COURT: Very well. Okay. Mr. Reinsel, I think at some point you had a me too, but you didn't submit a brief.

MR. REINSEL: That's correct, Your Honor. We'll simply join in the comments of the two movants.

THE COURT: Very well. Okay. Then I'll hear from the opponents to the two motions or the motion and the alternative request. Mr. Miller, are you going to be taking the lead on that?

MR. MILLER: Yes, sir.

THE COURT: Go ahead, please.

MR. MILLRE: If Your Honor please, by my count there are approximately fifty-eight cases of argument that have been filed in connection with the motions of the five tort claimants and the group of asbestos claimants. And I'm absolutely certain that the Court has carefully read all the papers and the relevant portions of the United States Code and the Federal Rules of Bankruptcy Procedure. Accordingly, I will be brief.

The objection to the motion demonstrated that the movants have not established a basis for the certification of their appeal to the United States Court of Appeals for the Second Circuit. They have not satisfied the criteria stated in Section 158(d)(2) of the Judicial Code to warrant this Court to

exercise its discretion to grant certification.

First, there is controlling positional law in the circuit. It is a position of the Second Circuit in the Chrysler case, irrespective of what Mr. Jakubowski characterizes it to be. Two, resolution of parochial interest as to the scope of Section 363(f) of the Bankruptcy Code does not involve a matter of public importance. Three, there are no conflicting decisions within this circuit that require resolution. Four, certification will not materially advance the progress of these cases. Therefore why has Mr. Jakubowski made this motion a crusade of urgency?

The answer, I believe Your Honor, is somewhat obvious and it is set forth in the objection of the committee, and Your Honor referred to paragraph 19 of the objection of the official committee. Mr. Jakubowski says that he was not aware of the rule but the rule is there and if Your Honor grants certification then this case has to move into status quo. That is, effectively staying this case and the closing of this 363 transaction that is so essential to so many parties and as Your Honor pointed out, if it doesn't close there is no alternative.

So a group of tort claimants and asbestos claimants are prepared to see these actives go down in flames for the possibility and the probability that there will be no recovery for any general unsecured creditors and significant and substantial loss to secured creditors.

Mr. Jakubowski has been candid with the Court and other parties despite his public statements of -- let me rephrase that, Your Honor. Mr. Jakubowski has stated publicly that he does not want to stop the closing of the sale that may occur this Thursday afternoon. Nevertheless, he is desirous and has almost demanded that the certification take place before 12 noon on Thursday so that the status quo rule can take into effect and that will stop the closing.

I think this is a very well-conceived tactic and avoids the requirement of seeking a stay and posting a sufficient supersedeas bond.

The certification should be denied, Your Honor, for all the reasons stated in the objection, which you will find not responded to by the representatives of the asbestos claims. And I submit to Your Honor, Mr. Jakubowski has not complied with the standards set forth in Section 158(d)(2) to warrant your exercise of discretion in this court. And as we pointed out in our papers and in the papers which have been filed on behalf of the Treasury and the official creditors' committee and in light of the decision of the Second Circuit, this is not an appropriate case for certification.

In connection with the asbestos claimants' alternative request for relief, and that is a stay of Your Honor's order pending an appeal to the District Court, there is no argument in the motion that cites to any law of any significance.

Counsel for the asbestos claimants has done nothing on this record or otherwise to satisfy the determinative factors for the granting of a stay. And it is unequivocal and clear that the granting of a stay pending appeal is an extraordinary remedy.

The asbestos claimants cannot establish, one, a strong showing of likelihood of success on the merits. Two, irreparable injury to asbestos claimants after the stay. As Your Honor inserted into the sale order, there are constitutional limitations that they can pursue to the extent permitted by the constitution. And they may continue to prosecute notwithstanding the consummation of the transaction as they are doing in the Chrysler case.

Three, there is -- they are unable to establish a lack of substantial harm and injury to the debtors and all of these other economic stakeholders in these proceedings. Four, the public interest supports the consummation of this transaction and they have established nothing to the contrary.

Counsel made an argument that this is a real stay here that it's the same General Motors, the same building, same place, etcetera. I would note, Your Honor, that in the Second Circuit argument from the Chrysler case, Mr. Esserman, representing defendant's claimants again, clearly said it in the argument to the panel by saying that Chrysler will look just like Old Chrysler: they're going to sell the same cars,

they are the same employees, same management; the same argument that's being made here, Your Honor, and that's page 26 of the transcript.

The asbestos claimants and the tort claimants, to use the vernacular, Your Honor, don't have any skin in the game compared to what that -- that is held by all other parties and all of the economic stakeholders who will be catastrophically injured if the 363 transaction does not close as scheduled.

The record is replete with the extreme and dire consequences that would occur if the debtor's business and assets have to be liquidated. Liquidation will be the result if the Treasury determines that the sale order is not in full force and effect under the amended DIP financing agreement.

The Court has found and determined that there is no alternative to the 363 transaction toward liquidation in a result that is too devastating to consider. Yet, movants ask that their parochial interested be exalted over the extensive and considered findings and conclusions that the Court made in the July 5 decision and order.

The papers submitted in opposition to the motion are comprehensive and demonstrate the total lack of propriety and substance of the motion.

Excuse me just one moment, Your Honor.

THE COURT: Sure.

MR. MILLER: Mr. Jakubowski stated, I believe a little

earlier, that he has no objection to the Court of Appeals or any appellate court laying out the schedule for the submission of briefs and setting a time for argument, etcetera, and that he would not oppose the consummation of the sale.

If that is all accurate, Your Honor, what is the great haste in proceeding with these motions at this time? If his rights are all reserved, as he thinks they are, and he is prepared for a normal process of pursuing an appeal, why all this undue haste and requiring people to work all night? Unless he is absolutely interested in getting the certification done and up to the Court of Appeals to take advantage of the status quo stay; a status quo stay which will frustrate everything that happened last week.

In respect of the arguments which have been made by Mr. Jakubowski and the asbestos claimants, Your Honor, the objections are quite comprehensive and I would rest on the papers and not prolong this argument.

If Your Honor were inclined to grant the stay, we have submitted the affidavit of Mr. Stephen Worth of Evercore Group LLC and to the probable scope and extent of a supersedeas bond that would be required in this case. Mr. Worth has determined that the potential harm to these debtors' estates and the economic stakeholders would range in the area of eighty billion dollars.

Mr. Michael Eisenband of FTI has submitted an

affidavit which has been submitted by the official committee that has a range, as I recall it, in the area of thirty to forty billion dollars or someplace in that range. Again, a very astronomical sun.

The United States Treasury has suggested a bonding in the area of the value of the ten percent interest which would go to the debtors if this sale were consummated, having a range of 7.4 billion dollars to nine plus billion dollars. That range of damages is extraordinary. And to allow the status quo stay to take effect or to grant a stay would result in irreparable damages to the debtors and the economic stakeholders in this case. This is not a conclusion that should be allowed and endanger all of the interests of the folks that are involved in these cases.

We would submit, Your Honor, on behalf of the debtors, that the motions for certification should be denied and the asbestos claimants' motion for a stay pending appeal to the District Court likewise should be denied for failure to demonstrate any of the problems of the four-prong test, all of which must be satisfied for the granting of the extraordinary remedy of the stay pending appeal.

Thank you, Your Honor.

THE COURT: All right. Thank you. U.S. Attorney's office for the government want to be heard now? Mr. Schwartz?

MR. SCHWARTZ: Matthew Schwartz for the United States.

I really don't have much to add to Mr. Miller's comprehensive presentation in opposition to the motions. I think, with respect to Mr. Jakubowski's part of the motion, he was quite candid about why he's seeking certification. He's seeking certification not because there's unsettled law in this circuit and not because bypassing the District Court will promote efficiency in this case, but because he's trying to have this case tracked with the Chrysler case when it gets reviewed before the Supreme Court, and that's fine. Bu that's not any of the prongs of 28 U.S.C. 158(d)(2). He makes, I think, a good argument as to the difference between a decision and an order or whatever the appropriate language is. But the fact is that Your Honor found in your sale opinion that the bottom line holding of Chrysler on successor liability is the law of this circuit. So there is clear and controlling law on the bottom line holding in that respect.

For the same reason, because that issue is well decided, that discrete issue can no longer be considered, in the context of this case, an issue of public import.

And finally, with respect to the third prong, case efficiency, the Second Circuit in Weber said that prong comes into play when a prompted determinative ruling might avoid needless litigation. Again, we already have a determinative ruling on this issue from the circuit in Chrysler. So there should be no certification to the Second Circuit.

Going then to the stay argument, if the whole point of this exercise is to preserve the successor liability issue for Supreme Court review then your focus on the stay inquiry should be on the irreparable harm to the movants. If it's true, as Mr. Jakubowski says, that closing the transaction doesn't moot this issue, then there is no irreparable harm to the movants in the absence of a stay.

If, on the other hand, they need a stay in order to preserve this issue for Supreme Court review, then what the movants are really asking for is an open-ended stay that goes all the way through a Supreme Court merits decision. The undisputed evidence at the evidentiary hearing before Your Honor was that every day that General Motors remains in bankruptcy it erodes the value of the enterprise. We're talking now to next year's term of the Supreme Court, a long period of time. And during that period of time the value of General Motors will totally disappear. We're talking about the liquidation scenarios that you heard so much testimony about.

So irreparable harm in that case, even if their issue of law would be mooted absent a stay, needs to be weighed against the devastating harm to the other parties in interest to this case: the stakeholders of the debtors' estates, the government, the employees of General Motors, its suppliers and their employees, the communities where General Motors dealerships reside; all of them will be devastated in that

scenario.

The other stay factors, for the reasons described by Mr. Miller, also don't come into play. So a stay is simply not appropriate in this case.

And then finally, if Your Honor were to decide otherwise, for the reasons Mr. Miller gave a significant bond that will protect all of those constituents against the harms attendant with a stay needs to be posted by the appellants. The number that we gave in our brief, the 7.4 billion dollar number, was the absolute minimum number for an acceptable bond. That is the bottom of the range of the number proffered by Evercore on the loss solely to the unsecured creditors. That doesn't say anything to the loss to New General Motors, doesn't say anything about the loss to the secured creditors, my client and its Canadian lenders; that's the absolute minimum number.

For those reasons, the application should be denied.

THE COURT: All right. Thank you, Mr. Schwartz. Mr. Mayer, would you like to be heard?

MR. MAYER: Yes, Your Honor. I just have a short piece of logic shopping which I think might be the determinant and it takes off of an observation that Your Honor made at the beginning of this call. There are only two possibilities. One is the lien, the Second Circuit's order in Chrysler is determinative and the other is --

THE COURT: Wait. Mr. Mayer, I couldn't hear you on

that.

MR. MAYER: There are only two possibilities. One is that the Second Circuit's order in Chrysler is determinative and controlling and the other is that it is distinguishable. In the first instance the appellants seek direct review to persuade the Second Circuit that it's wrong and 158 doesn't cover that.

And in the other instance, the appellants seek to get to the Second Circuit to state that that decision doesn't cover their facts and 158 doesn't cover that either. That, to me, covers the universe of possible outcomes. And in neither situation is there any grounds for using 158 to get up to the Second Circuit right away.

And further than that, I would rest on my papers.

THE COURT: Okay. Anybody else in opposition who I haven't given a chance to be heard? Mr. Schein?

MR. SCHEIN: Yes, Your Honor. Very briefly.

THE COURT: Sure.

MR. SCHEIN: Your Honor, Michael Schein, Vedder Price on behalf of Export Development Canada on behalf of the governments of Ontario and Canada.

As a material stakeholder in this case, Your Honor, EDC supports the debtors, the Treasury and the committee that the movant's papers and relief sought should be denied and we request that that really be denied based on the record before

this Court and the papers filed.

That's all, Your Honor.

THE COURT: Okay. Thank you. All right. Mr. Jakubowski, reply.

MR. JAKUBOWSKI: I think I have three points, Your Honor. First, I guess I stand on the linguistic's interpretation of the statute. He talks about a decision, not about an order or a bottom line ruling and to the extent that your own words have any plain meaning to them, I think there is a decision -- a difference between a decision and an order and we don't really know what the rationale is even if we know what the bottom line is and the bottom line, in, fact, to these facts, may be different. So we don't know that there is a controlling determination yet because we don't really know what the rationale is for the decision.

Secondly, with respect to Local Rule 27(b), which I have pulled up, I don't think that that would apply here and I would urge the Court to please take a look at 27(b). It appears to -- it certainly doesn't sanction any type of a limitless stay and it only says upon appropriate showing of urgency the clerk may set any motion for a hearing on any day the court is in session. When the clerk thus set the hearing for a time not later than twenty-four hours after application to the clerk during the period Monday to Thursday or for Tuesday morning through the period after Thursday, the clerk

may endorse -- may endorse, on the motion papers a direction that the parties will be expected to maintain in the status quo.

That is not an open-ended status quo, nor is it something that, after our discussion on the record, is something that I would anticipate, at least from my perspective, pursuant. But I do think that it is important to get this issue in front of the appellate court quickly so that it can consider the issues in connection with existing opinion and bypass the need for an unnecessary appellant review.

And finally, Your Honor, I do think, again, that with respect to the legislative history, it certainly does authorize this type of issue, the type of issue to be certified and sent on for appellate review. And I, again, would urge you, on the basis of the extreme need of my client and the thousands of people that are in their situation, to give them that extra year that they need in order to be able to get a final resolution on their payments.

THE COURT: Okay. Thank you. Mr. D'Apice?

MR. D'APICE: Thank you, Your Honor. Briefly I think that for the standards of 158(d)(2), just to reiterate my argument earlier that in case that appeal does involve matters of public importance and we saw how quickly the appellate court acted in Chrysler and there's no guarantee that they would act as quickly in this case but I would -- I have every expectation

that they would.

I think with that being the standards of 158(d)(2) and also we believe that if any bond -- our clients are tort claimants, any bond would effectively be subject to -- other than the nominal bond.

THE COURT: I couldn't hear you, Mr. D'Apice.

MR. D'APICE: I'm sorry, Your Honor. Anything other -- as far as the bond is concerned, our clients are clearly tort claimants; they're working people. They would not be able to post anything other than a strictly nominal bond and of a very limited amount. And in fact I would urge that the bond is discretionary with Your Honor that no bond be required in this case, particularly since under the terms of the -- purchase agreement closing can occur as late as August 15th and even September 15th as a part of decree.

So I think we've met the standard of 158(d)(2) with the matter of public importance and the --.

THE COURT: All right. Okay. Folks, I'm going to take a recess and I'm going to give you a ruling tonight. For those who are on the phone, I would ask that you keep your lines open and you can walk around either in your offices or down the hallway but that you be back by 8:10.

For those in the courtroom, I'm going to make the same request. I can't guarantee that I'll have a ruling for you by that time but I'm going to try. So we're in recess. Thank

you.

(Recess from 7:53 p.m. until 8:30 p.m.)

THE COURT: Good evening. I'm sorry to keep you all waiting.

Folks, I'm going to be denying both motions but it would take too long for me to dictate all of the reasons and I'd get too hoarse. I also learned in this case that I can't count on transcript being available that quickly. And if there are any further proceedings in this case before the closing, such as a request up the street for another try to stay, I think people should know my reasons with some clarity and detail.

So for that reason I'm going to file a bench decision in the next couple of hours, posting it on ECF, our electronic court filing system, for all of you to have available, which sets forth in detail the reasons for these two decisions, one being the denial of certification to the circuit and the second being the denial of a stay, the alternative relief that Mr. D'Apice had requested.

That bench decision will also contain an order, a formal order, denying the relief for those who feel aggrieved by the decision to work with as they see fit.

At this point I would suggest that people who are interested in the details not wait around in the courthouse if you have the ability to get ECF wherever you might be.

We're adjourned. Have a good evening.

MR. JAKUBOWSKI: Your Honor, may I just ask you something please or make a comment?

THE COURT: Is this Mr. Jakubowski?

MR. JAKUBOWSKI: Yes it is, Your Honor.

THE COURT: Yes.

MR. JAKUBOWSKI: I personally have no intention of running up the street or down the street or across the street. And I don't know about my -- the other movants but there certainly is, from at least my perspective, no particular need for you to stay late.

THE COURT: Well, I'm grateful for that, Mr. Jakubowski, but I think I owe it to the public to get my work done.

MR. JAKUBOWSKI: Okay.

THE COURT: Thank you. Have a good evening, everybody. We're adjourned.

(Proceedings concluded at 8:33 p.m.)

I N D E X

RULINGS


| | Page | Line |
|---|---|---|
| Certification To Circuit, Denied | 36 | 23 |
| Stay, Denied | 36 | 23 |

C E R T I F I C A T I O N

I, Pnina Eilberg, certify that the foregoing transcript is a true and accurate record of the proceedings.

Pnina Eilberg

Digitally signed by Pnina Eilberg
DN: cn=Pnina Eilberg, c=US
Reason: I am the author of this document
Date: 2009.07.10 13:49:24 -04'00'

Pnina Eilberg

AAERT Certified Electronic Transcriber (CET**D-488)

Veritext LLC

200 Old Country Road

Suite 580

Mineola, NY 11501

Date: July 9, 2009