1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


GENERAL MOTORS CORPORATION,


        Debtor.


- - - - - - - - - - - - - - - - - - - - -x


                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York, New York


                July 13, 2009

                9:05 a.m.


B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1   APPLICATION for an Order Pursuant to Sections 327(a) and 328(a)

2   of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing

3   the Employment and Retention of Evercore Group L.L.C. as

4   Investment Banker and Financial Advisor for the Debtors Nunc

5   Pro Tunc to the Petition Date

6

7   APPLICATION to Employ Butzel Long as Special Counsel Nunc Pro

8   Tunc to June 10, 2009-07-14

9

10  DEBTORS First Omnibus Motion Pursuant to 11 U.S.C. Section 365

11  to Reject Certain Executory Contracts

12

13  MOTION to Reject Lease or Executory Contract re: Promotional

14  Services Agreement

15

16  MOTION of Debtors for Entry of Order Approving (I) Master

17  Disposition Agreement for Purchase of Certain Assets of Delphi

18  Corporation, (II) Related Agreements, (III) Assumption and

19  Assignment of Executory Contracts, (IV) Agreement With Pension

20  Benefit Guaranty Corporation, and (V) Entry Into  Alternative

21  Transaction in Lieu Thereof

22

23

24  Transcribed By:  Esther Accardi

25

3

1    A P P E A R A N C E S :

2    WEIL GOTSHAL & MANGES, LLP

3         Attorneys for Motors Liquidation Company,

4          formerly known as General Motors Corporation

5         767 Fifth Avenue

6         New York, New York 10153

7

8    BY:   STEPHEN KAROTKIN, ESQ.

9         ROBERT LEMONS, ESQ.

10

11

12   JENNER & BLOCK, LLP

13        Attorneys for Motors Liquidation Company,

14         formerly known as General Motors Corporation

15        919 Third Avenue

16        New York, New York 10022

17

18   BY:   ELIZABETH A. EDMONDSON, ESQ.

19

20

21

22

23

24

25

4

1    A P P E A R A N C E S : (continued)

2    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

3         Attorneys for Delphi Corporation

4         Four Times Square

5         New York, New York 10036

6

7    BY:    KAYALYN A. MARAFIOTI, ESQ.

8           GREGORY W. FOX, ESQ.

9

10

11   KRAMER LEVIN NAFTALIS & FRANKEL, LLP

12        Attorneys for Creditors' Committee

13        1177 Avenue of the Americas

14        New York, New York 10036

15

16   BY:    ROBERT SCHMIDT, ESQ.

17           GORDON Z. NOVOD, ESQ.

18

19

20   VEDDER PRICE, P.C.

21        Attorneys for Export Development Canada

22        1633 Broadway

23        New York, New York 10019

24

25   BY:    MICHAEL L. SCHEIN, ESQ.

5

1    A P P E A R A N C E S :  (continued)

2    U.S. DEPARTMENT OF JUSTICE

3    OFFICE OF THE U.S. ATTORNEY

4         86 Chambers Street

5         New York, New York 10007

6

7    BY:    MATTHEW L. SCHWARTZ, ESQ.

8           JOSEPH N. CORDARO, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1              P R O C E E D I N G S

2          THE COURT:  Okay, GM.  Mr. Karotkin, good morning.

3          MR. KAROTKIN:  Good morning, Your Honor.  Stephen

4   Karotkin, Weil Gotshal & Manges for Motors Liquidating Company,

5   formerly known as General Motors Corporation.

6          Your Honor, the first thing on the agenda, I believe,

7   is a motion, an uncontested matter, I believe was filed by the

8   Jenner & Block, I don't know if they're on the phone or not.

9          THE COURT:  Do we have --

10         OPERATOR:  There are no telephonic appearances.

11         THE COURT:  Pardon?

12         OPERATOR:  There are no telephonic appearances.

13         THE COURT:  Okay.  Come on up, please, Miss.

14         MS. EDMONDSON:  Elizabeth Edmondson of Jenner & Block.

15         THE COURT:  Can I get your last name again please?

16   Can you come closer to the microphone, you're competing with

17   the air conditioning system.

18         MS. EDMONDSON:  Sure.  Elizabeth Edmondson of Jenner &

19   Block.

20         THE COURT:  Sure, Ms. Edmondson, go ahead.

21         MS. EDMONDSON:  And I'm here on behalf of Motors

22   Liquidation Company on a motion pursuant to Section 365 to

23   reject promotional services agreement between General Motors

24   Corporation and Exhibitions Company.

25         The motion is uncontested.  I'm happy to describe the

7

1    motion if you'd like, or I can just hand up the order.

2         THE COURT:  No, with the case management order you

3    don't need to say anymore on an unopposed motion.  So your

4    motion is granted.  And I'd ask you to drop off the paperwork

5    and floppy with Ms. Blum across the hall.

6         MS. EDMONDSON:  Okay.

7         THE COURT:  Thank you.  Mr. Karotkin?

8         MR. KAROTKIN:  Thank you, sir.  The next motion is a

9    motion to reject certain various executory contracts.

10        An objection was filed on behalf of two entities.

11   Since that time that objection has been withdrawn.  And two of

12   the contracts associated with that objection have been

13   eliminated from the exhibit and the proposed order.

14        And with that, Your Honor, it's uncontested.

15        THE COURT:  Again, it's granted, Mr. Karotkin.

16        MR. KAROTKIN:  Thank you, sir.  And we have an order

17   we'll give to your clerk.

18        THE COURT:  Okay.  What else do we have for 9 o'clock?

19        MR. KAROTKIN:  I don't believe anything else.

20        THE COURT:  Okay.  Well, I only came out with my 9

21   o'clock stuff.  So we'll take a -- okay, wait.  I think

22   creditors' committee has something.

23        MR. SCHMIDT:  Your Honor, I think the application of

24   Butzel Long as committee co-counsel was on for 9.

25        THE COURT:  Yes, it is.  Any desire to talk on that,

8

1   Mr. Schmidt?

2        MR. SCHMIDT:  Not on my part, Your Honor.  I'm not

3   aware of any objections.  Mr. Seidel is in Court to answer any

4   inquiries the Court has.

5        THE COURT:  Well, frankly, Mr. Seidel, I don't have

6   any questions.  So that's also granted?

7        MR. SCHMIDT:  Thank you.

8        THE COURT:  Okay.  We'll reconvene at 9:45.

9   (Recess from 9:07 a.m. until 9:47 a.m.)

10       THE COURT:  Okay.  GM, Motors Liquidation Corporation.

11       MR. LEMONS:  Good morning, Your Honor.  Robert Lemons

12  from Weil Gotshal & Manges on behalf of Motors Liquidation

13  Company.

14       I'm here this morning, Your Honor, on the motion that

15  was filed at docket number 2096 by Motors Liquidation Company

16  and its affiliated debtors, for entry of an order authorizing

17  and approving a variety of actions by Motors Liquidation

18  Company in connection with the sale of substantially all of the

19  operating assets of Delphi Corporation and its affiliates to an

20  entity that was -- two former subsidiaries of Motor Liquidation

21  Company that are now subs of General Motors Company and to

22  Parnassus Holdings II LLC.

23       THE COURT:  Right.  Hold on for just a minute, Mr.

24  Lemons.

25       (Pause)

9

1          THE COURT:  Go ahead, please, Mr. Lemons.

2          MR. LEMONS:  Before I get started, Your Honor, I'd

3     like to just offer into evidence the two declarations that we

4     filed in connection with this motion.

5          There was a declaration of Randall L. Papal (ph.)

6     which was filed at docket number 3052.  And a declaration of

7     Rick Westenburg (ph.) which was filed at docket number 3053.

8     Both were business people employed by Motors Liquidation

9     Company prior to the sale on Friday, who were involved in the

10    negotiations of the transactions.  They're both here in Court

11    today.

12         THE COURT:  Remember, Mr. Lemons, that under the case

13    management order, allegations in the motion and if there are

14    any accompanying declarations, are taken as true, so you don't

15    even need to go through that unless somebody puts those issues

16    into dispute.

17         MR. LEMONS:  I'm happy to stop.

18         THE COURT:  Okay.

19         MR. LEMONS:  Your Honor, we submitted a revised order

20    to chambers over the weekend.  I'd be happy to discuss any

21    questions you have with it, or about the transaction, or I can

22    stop now.

23         THE COURT:  I didn't get the revised order.  I do have

24    a number of questions.  Obviously, this is in the context of it

25    being unopposed.  Maybe if the revised order had gotten to me I

10

1    would have been able to discern the answers.

2        Your motion was filed on June 20th -- excuse me, July

3    20th (sic) before the events of last week and my ruling from

4    about ten days ago.  How does your existing motion and the

5    disposition of the assets to New GM affect this motion; how do

6    they mesh together?

7        MR. LEMONS:  Well, it's -- the affect of the sale has

8    caused us to enter into an assignment agreement.  It's an

9    agreement between what I'll call Old GM, New GM, Delphi and

10   Parnassus.  Pursuant to which, all but a handful of the rights

11   and obligations under the master disposition agreement and the

12   other Delphi transaction agreements have been transferred from

13   Old GM to New GM.  The reason for that is that the GM

14   subsidiaries that will be actually acquiring the bulk of those

15   assets are now subsidiaries of New GM and also the funds to

16   fund the transaction are with New GM and not with Old GM.

17       The affect of this assignment agreement is the only

18   remaining liabilities of Old GM under the transaction documents

19   are those that relate to a small number of contracts between

20   Old GM and Delphi that will not be assigned to New GM upon the

21   closing of the transaction.  And the obligation of Old GM to

22   undertake actions other than providing funds or assuming

23   liabilities that will be necessary to allow New GM to close the

24   transaction.

25       As part of that agreement, New GM has agreed to

11

1    reimburse Old Delphi for its costs and -- I'm sorry, Old GM for

2    its costs in undertaking these actions.  And Old GM is no

3    longer going to be liable for any obligations to fund any

4    amounts or assume any liabilities in connection with the

5    closing of the transaction.

6        THE COURT:  So this deal is neutral to the unsecureds

7    in this case?

8        MR. LEMONS:  Yes.  Basically, the primary remaining

9    obligations of Old GM will be to, one, waive administrative and

10   pre-petition claims against Delphi.  Two, terminate a number of

11   commercial agreements and the master restructuring agreement

12   between Old GM and Delphi on the closing of the MDA.  And,

13   three, make payments in the interim to Delphi that are due

14   under the master restructuring agreement.  But those payments

15   New GM has agreed to reimburse Old GM for.

16       THE COURT:  So the deal is, likewise, neutral to

17   Motors Liquidation's liquidity needs?

18       MR. LEMONS:  Yes, Your Honor.

19       THE COURT:  As of the time that you filed the motion

20   there was still contemplated bidding in the Delphi case where

21   Parnassus or Platinum amount bid in that auction in the Delphi

22   case?

23       MR. LEMONS:  Your Honor, I don't believe that any bids

24   were submitted.  But the DIP lenders of Delphi have until --

25   let me just confirm the date.  I believe it's until July 16th

12

1    to submit a pure credit bid for the assets.  And if they do

2    there can still be an auction on July 17th.

3            THE COURT:  Uh-huh.

4            MR. LEMONS:  So that situation remains influx.  There

5    are also still a number of objections to the transaction that

6    have been filed in the Delphi case.

7            THE COURT:  Is New GM's management comfortable that if

8    anybody credit bids or outbids it will have a satisfactory

9    source of supply?

10           MR. LEMONS:  That remains to be discussed, Your Honor,

11   as part of the discussions going on among the various parties-

12   in-interest to the transaction.  It's, obviously, critical to

13   New GM that the results at the end of the sort of Delphi sale

14   process is such that New GM has secured its source of supply.

15   But there's a lot of uncertainty right now as to who may or may

16   not end up owning and running those assets if there were to be

17   a credit bid.  And that's something that New --

18           THE COURT:  Well, that's the whole point of the deal,

19   isn't it, to ensure that there's a satisfactory source of

20   supply?

21           MR. LEMONS:  Absolutely.  But if there's a credit

22   bid -- I mean, there's a possibility, Your Honor, there could

23   be a credit bid that could top this existing bid, that Judge

24   Drain could approve.  And New GM wouldn't necessarily be able

25   to veto that one way or the other.  So it's very -- keeping a

13

1    very close eye on things and it's very involved in negotiations

2    to try to ensure that the resolution is such that its supply

3    will be secure.

4         THE COURT:  Your point is that looking at it from a

5    slightly parochial point of view that's not the problem of this

6    estate.

7         MR. LEMONS:  I wouldn't want to say anything that

8    sounded flippant, but I think it is -- it's the problem of this

9    estate only to the extent that this estate owns an interest in

10   New GM.  And, obviously the value of New GM would be -- would

11   suffer if supply was not secured.

12        THE COURT:  Uh-huh.

13        MR. LEMONS:  So this estate will, Your Honor, I

14   believe cooperate in a sale process to help New GM to obtain

15   the secure supply.  But it's New GM that will have to supply

16   the funding and assume the liabilities and really negotiate

17   that deal.  Because it's the party injecting the real economics

18   into it.

19        THE COURT:  Uh-huh.  Is the PBGC deal done?

20        MR. LEMONS:  No.  But it's anticipated that Old GM

21   will not be a party to that.  So we have not sought any relief

22   with respect to that in the modified order.

23        THE COURT:  Okay.  I'd like to hear from the

24   creditors' committee and the government.

25        MR. NOVOD:  Good morning, Your Honor.  Gordon Novod of

14

```
 1    the law firm of Kramer Levin Naftalis & Frankel.

 2              THE COURT:  Your last name, again, please.

 3              MR. NOVOD:  Sure.  It's Gordon Novod, N-o-v-o-d.

 4              THE COURT:  Okay.

 5              MR. NOVOD:  ON behalf of the creditors' committee, and

 6    from the law firm of Kramer Levin Naftalis & Frankel.

 7              Your Honor, as the Court is certainly aware, Friday

 8    was a momentous day for, both Old GM and New GM, in that it was

 9    the consummation date of a momentous transaction under which

10    the wind-down of this estate and Old GM was put in motion.  And

11    one of the things which, Your Honor, I'm happy to report, is

12    that this transaction that we stand here today, before the

13    Court, we have been attentive and focused on issues particular

14    to unsecured creditors.  And attentive to issues to ensure the

15    wind-down of the estate and the liquidity sources which Your

16    Honor has noted before are maintained and preserved.  And in

17    doing so --

18              THE COURT:  Pause, please, Mr. Novod.

19              MR. NOVOD:  Of course.

20              THE COURT:  After the creditors' committee's dialogue

21    and its due diligence are you satisfied that the answers that

22    the debtors gave me that it was neutral to your constituency

23    were accurate?

24              MR. NOVOD:  Yes, they are, Your Honor.  We've worked

25    hard to that effect, and we've spent quite a bit of time not to
```

VERITEXT REPORTING COMPANY

15

1    minimize the time spent over the past few years by the company,

2    Old GM, and Delphi and other creditor constituents in those

3    bankruptcy cases.  We've spent quite a bit of time focusing on

4    this last week, Your Honor, to ensure that Old GM will be

5    protected.  And that, in essence, the status quo is preserved

6    here.  And that Old GM is not assuming any liability.  It will

7    continue to perform.  It will be reimbursed to the extent it is

8    asked to do anything which costs any money out-of-pocket for

9    Old GM.  And to allow this transaction with Delphi to move

10   forward.

11          THE COURT:  Okay, continue, please, Mr. Novod.

12          MR. NOVOD:  Yes.  So just to highlight, Your Honor,

13   for a few things.  One, we've focused on ensuring that the

14   obligations and liabilities of GM were effectively transferred

15   from Old GM to New GM.  As Your Honor is certainly aware this

16   estate -- the Old GM estate, will not have the necessary cash

17   if it were required to complete this transaction, which made

18   the agreement of an assignment agreement a necessity here.

19          In addition to that, there are certain provisions

20   under the master purchase agreement, which Your Honor approved,

21   I believe, on the 5th of July, which will help effectuate this

22   transaction.  So upon closing this transaction we are satisfied

23   that, in essence, the status quo will be preserved.  But when

24   the Delphi transaction does close that liability and obligation

25   to perform under the Delphi transaction will be transferred to

16

1    the New GM subject, of course, to the exceptions that Mr.

2    Lemons mentioned on the record a few minutes ago.

3            THE COURT:  Okay, thank you.

4            MR. NOVOD:  Thank you, Your Honor.

5            THE COURT:  I'll hear from the U.S. Government and

6    Export Development Canada, if either wants to speak.

7            MR. SCHWARTZ:  Matthew Schwartz for the United States.

8            THE COURT:  Come to a microphone, please, Mr.

9    Schwartz.

10           MR. SCHWARTZ:  Matthew Schwartz for the United States.

11   I really don't have anything to add, Your Honor.  Treasury and

12   the Auto Task Force have worked with the parties-in-interest in

13   the Delphi case to move towards these underlying transactions.

14   We support them fully.

15           THE COURT:  Okay.  Mr. Schein, good morning.

16           MR. SCHEIN:  Good morning, Your Honor.  Michael

17   Schein, Vedder Price, on behalf of Export Development Canada.

18           Consistent with the U.S. Government we also support

19   this transaction.  I have nothing to add at this time.

20           THE COURT:  Okay.  All right, then --

21           MR. LEMONS:  Your Honor, if I may?

22           THE COURT:  Mr. Lemons.

23           MR. LEMONS:  Just very briefly.  We committed to

24   Delphi that we agreed one sentence on the record for them.

25   They just asked us to read the following:  "Delphi Corporation

17

1    reserves all rights respecting Old GM's assumption and

2    assignment of the contracts to be assumed and assigned upon the

3    closing of the master disposition agreement.  Including but not

4    limited to the right to object to any cure amounts and the

5    right to object to the transfer of any contract other than in

6    its entirety."

7             THE COURT:  Okay.

8             MR. LEMONS:  Thank you.

9             THE COURT:  All right.  Anything else, anybody?  All

10   right.  Given the lack of opposition I don't need to make

11   extensive findings here.  The transaction's approved.  Debtors

12   have satisfied me that it's an appropriate exercise of business

13   judgment and that it's neutral to the parties-in-interest in

14   this case.  So you can submit the revised order and floppy.

15            Better check, Mr. Lemons, because if I'm not aware of

16   it, that suggests that it somehow didn't get to my chambers.

17            And unless we had a chambers breakdown, which, of

18   course, is possible.  But I don't know.

19            So when we're finished today just stop by in chambers

20   and we'll get it done.

21            What else do we have today.

22            MR. LEMONS:  I believe that's all for the agenda.

23            THE COURT:  Everything for the 9:45?  I thought I had

24   more, just a second, please.

25            No, I guess we took care of the rest at 9 o'clock.

18

1          Okay, we're adjourned.

2       (Proceedings concluded at 10:01 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

1

2                              I N D E X

3                            R U L I N G S

4                                                    PAGE

5    Motion To Reject Lease Or Executory Contract      7

6    Re: Promotional Services Agreement

7

8    Motion Pursuant to Reject Certain                 7

9    Executory Contracts

10

11   Application To Employ Butzel Long As              8

12   Special Counsel to Creditors' Committee

13

14   Motion For Order Authorizing And Approving       17

15   A Variety Of Actions By Motors Liquidation

16   Company In Connection With The Sale Of

17   Substantially All Of The Operating Assets

18   Of Delphi Corporation And Its Affiliates

19

20

21

22

23

24

25

20

1

2                    C E R T I F I C A T I O N

3

4       I, Esther Accardi, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       _____

        ESTHER ACCARDI (CET**D-485)

8       AAERT Certified Electronic Transcriber

9

        Veritext LLC

10

        200 Old Country Road

11

        Suite 580

12

        Mineola, New York 11501

13

14      Date: July 14, 2009

15

16

17

18

19

20

21

22

23

24

25