**Hearing Date and Time: August 3, 2009 at 9:45 a.m. (Eastern Time)**
**Objection Deadline: July 29, 2009 at 4:00 p.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Kenneth H. Eckstein
Robert T. Schmidt
Adam C. Rogoff

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                                                :
In re:                                                          :     Chapter 11 Case No.:
                                                                :
MOTORS LIQUIDATION COMPANY, et al.                              :     09-50026 (REG)
          f/k/a General Motors Corp., et al.                    :
                                                                :
                                    Debtors.                    :     (Jointly Administered)
                                                                :
--------------------------------------------------------------- X

### APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS THE COMMITTEE'S INFORMATION AGENT *NUNC PRO TUNC* TO JUNE 3, 2009

The Official Committee of Unsecured Creditors (the "**Committee**") of Motors

Liquidation Company and its affiliated debtors and debtors in possession (collectively, the

"**Debtors**"), by and through its counsel, Kramer Levin Naftalis & Frankel LLP ("**Kramer**

**Levin**"), submits this application (the "**Application**"), pursuant to sections 105(a),

1102(b)(3)(A) and 1103(c) of title 11 of the United States Code (the "**Bankruptcy Code**") for

entry of an order (the "**Order**"), attached hereto as Exhibit A, authorizing the Committee's

KL2 2611014.1

employment and retention of Epiq Bankruptcy Solutions, LLC ("**Epiq**") as information agent (the "**Information Agent**") for the Committee in connection with the Debtors' chapter 11 cases *nunc pro tunc* to June 3, 2009.  In support of this Application, the Committee submits the Declaration of Daniel C. McElhinney, Executive Director of Epiq (the "**McElhinney Declaration**"), which is annexed hereto as <u>Exhibit B</u>.  In further support of the Application, the Committee respectfully represents as follows:

## JURISDICTION

1.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.    On June 1, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.    On June 3, 2009 (the "**Formation Date**"), the United States Trustee for the State of New York, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these Chapter 11 Cases.

4.    On June 3, 2009, the Committee selected Kramer Levin as its counsel.

## RELIEF REQUESTED

### Services to be Provided

5.    By this Application, the Committee seeks entry of an order pursuant to Bankruptcy Code section 105, 1102(b)(3) and 1103 authorizing the employment and retention of Epiq as its

KL2 2611014.1

Information Agent.[1]  The Committee requires the services of Epiq in order to comply with its

obligations under Bankruptcy Code section 1102(b)(3), which provides that:

> A committee appointed under subsection (a) shall –
>
> > (A)     provide access to information for creditors who –
> > > (i) hold claims of the kind represented by that
> > > committee; and
> > > (ii) are not appointed to the committee;
> > (B)     solicit and receive comments form the creditors described
> > in subparagraph (A); and
> > (C)     be subject to a court order that compels any additional
> > report or disclosure to be made to the creditors described in
> > subparagraph (A).

11 U.S.C. §1102(b)(3).

    6.    The Committee believes that the retention of Epiq to assist the Committee in

complying with its obligations under Bankruptcy Code section 1102(b)(3) will add to the

effective administration of the chapter 11 cases (the "**Chapter 11 Cases**") and reduce the overall

expense of administering these cases.  Epiq will undertake, *inter alia*, the following actions and

procedures:

> (a)     Maintain an Internet-accessed website (the "**Committee Website**")
> at www.motorsliquidationcreditorscommittee.com that provides without
> limitation:
>
> > (1)     a link or other form of access to the website maintained by
> > the Debtors' notice, claims and balloting agent at
> > http://www.motorsliquidationdocket.com, which shall
> > include, among other things, the case docket and claims
> > register;
> >
> > (2)     highlights of significant events in the Chapter 11 Cases;
> >
> > (3)     deadlines for upcoming significant and material events;
> >
> > (4)     a general overview of the chapter 11 process;

---

[1] 11 U.S.C. § 1103 provides, in pertinent part, that "…a committee appointed under section 1102 of this
title…may select and authorize the employment by such committee of…agents, to represent or perform
services for such committee."  11 U.S.C. § 1103(a).

KL2 2611014.1

(5)     press releases (if any) issued by the Committee or the
Debtors;

(6)     a list of entities that have purchased claims in the Debtors'
chapter 11 cases

(7)     a registration form for creditors to request "real-time"
updates regarding the Chapter 11 Cases via electronic mail;

(8)     a form to submit creditor questions, comments and requests
for access to information;

(9)     responses to creditor questions, comments and requests for
access to information; _provided_, that the Committee may
privately provide such responses in the exercise of its
reasonable discretion, including in the light of the nature of
the information requested and the creditor's agreement to
appropriate confidentiality and trading constraints;

(10)     answers to frequently asked questions;

(11)     links to other relevant websites;

(12)     the names and contact information for the Debtors' counsel
and restructuring advisor(s); and

(13)     the names and contact information for the Committee's
counsel and financial advisor(s);

(b)     Maintain an electronic inquiry form for creditors to submit
questions and comments.[2]

(c)     Assist the Committee with certain administrative tasks, including,
but not limited to, printing and serving documents as directed by the Committee
and its counsel.

### Epiq's Qualifications

7.     Epiq is particularly well suited to perform the foregoing tasks.  In the normal course

of its business, Epiq is often called upon to create websites for the purpose of providing access to

information for creditors.   Epiq is well qualified to provide the Committee and unsecured

creditors with access to information in connection with the Chapter 11 Cases.  Large chapter 11

---

[2] In addition, Kramer Levin has established a telephone number to submit questions and comments, which
will be publicized on the Committee Website.

cases in which Epiq has been retained and created websites to provide creditors access to information include:

- *Dayton Superior Corporation*, Case No. 09-11351 (Bankr. D. Del.)

- *Heartland Automotive Holdings, Inc., at al.,* Case No. 08-40047 (Bankr. ND Tex)

- *Tarragon Corporation, et al.*, Case No. 09-10555 (Bankr. D. N.J.)

- *Thornburg Mortgage, Inc., et al.*, Case No. 09-17787 (Bankr. D. Md)

- *Tropicana Entertainment, LLC, et al.*, Case No. 08-10856 (Bankr. D. Del.)

- *Washington Mutual, Inc., et al.*, Case No. 08-12229 (Bankr. D. Del.)

As such, Epiq is well qualified to prepare the Committee Website and to assist the Committee in providing the Debtors' unsecured creditors with access to information in connection with the Chapter 11 Cases. Epiq shall be compensated by the Debtors' estates for professional services rendered on behalf of the Committee in connection with the Chapter 11 Cases in accordance with the provisions of the retention agreement (and pricing schedule annexed thereto) (together, the "**Retention Agreement**") by and between the Committee and Epiq, a copy of which is annexed hereto as Exhibit C.

8.    The Committee respectfully submits that the rates charged by Epiq are fair and reasonable and have been negotiated with the Committee.    The Committee believes that engaging Epiq is the most cost efficient manner for the Committee to comply with the requirements of section 1102(b)(3) in that the billing rates of Epiq are considerably less than those of the attorneys for the Committee.    Since the function served by Epiq is administrative in nature, the Committee believes there will be a significant cost savings which ultimately inures to the benefit of the Debtors' estates and their creditors, thereby eliminating the administrative burden of maintaining the Committee Website from the attorneys for the Committee.

9.     As the fees and expenses to be incurred by Epiq under the proposed engagement will be administrative in nature, the Committee submits that this Court should authorize the Debtors to compensate Epiq on a monthly basis in accordance with the terms and conditions of the Retention Agreement, upon Epiq's submission to the Committee, the Debtors and the United States Trustee of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith.

10.   In addition, the Committee requests that the Committee, the Debtors and the United States Trustee shall have ten (10) days to advise Epiq of any objections to the monthly invoices. If an objection cannot be resolved, the Committee will schedule a hearing before this Court to consider the disputed invoice.  Unless advised of an objection, the Debtors shall pay each Epiq invoice within thirty (30) days after the ten day review period, in the ordinary course of business. If an objection is raised to an Epiq invoice, the Debtors will remit to Epiq only the undisputed portion of the invoice and, if applicable, will pay the remainder to Epiq upon the resolution of the dispute or as directed by the Court.

### Epiq's Disinterestedness

11.   Based upon the McElhinney Declaration, sworn to on July 21, 2009, annexed hereto as <u>Exhibit B</u> and incorporated herein by reference, to the best of Epiq's knowledge, except as may be set forth in the McElhinney Declaration, Epiq has and represents no interest adverse to the interests of the Committee or the Debtors' estates and the Committee believes that Epiq's employment will be in the best interests of the unsecured creditors, which the Committee represents.

12.   As set forth in the McElhinney Declaration, Epiq is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

KL2 2611014.1

13.   To the extent that Epiq discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will supplement the McElhinney Declaration.

**NOTICE**

14.   Notice of this Application has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the Debtors, (v) the attorneys for the ad hoc bondholders committee, (vi) the U.S. Attorney's Office, S.D.N.Y., (vii) the attorneys for the agent under the Debtors' prepetition secured term loan agreement, (viii) the attorneys for the agent under the Debtors' prepetition amended and restated secured revolving credit agreement, and (ix) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002.

**NO PRIOR REQUEST**

15.   The Committee has not previously sought the relief requested herein from this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Committee requests the entry of an Order (a) granting the

Application; and (b) granting such other or further relief as the Court deems appropriate.

Dated: New York, New York
      July 21, 2009

                        **THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF MOTORS
LIQUIDATION COMPANY, et al.,**

            By:     /s/ David A. Vanaskey Jr._____
                        David A. Vanaskey Jr.
                        Vice President
                        Wilmington Trust Company, as Indenture Trustee
                        Chairman, Official Committee of Unsecured
                        Creditors for Motors Liquidation Company., et al.

KL2 2611014.1

**<u>EXHIBIT A</u>**

KL2 2611014.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                                           :
In re:                                                     :    Chapter 11 Case No.:
                                                           :
MOTORS LIQUIDATION COMPANY, et al.                         :    09-50026 (REG)
        f/k/a General Motors Corp., et al.                 :
                                                           :
                                  Debtors.                 :    (Jointly Administered)
                                                           :
---------------------------------------------------------- X

### ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS INFORMATION AGENT FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY, *NUNC PRO TUNC* TO JUNE 3, 2009

Upon the application (the "**Application**") of the Official Committee of Unsecured Creditors (the "**Committee**") of Motors Liquidation Company (collectively, the "**Debtors**") for entry of an order pursuant to 11 U.S.C. §§ 105(a), 1102(b)(3) and 1103(c) authorizing the employment and retention of Epiq Bankruptcy Solutions, LLC ("**Epiq**"), as information agent for the Committee, *nunc pro tunc* to June 3, 2009, to, among other things, create a website for the purpose of providing access to information to creditors; and upon the consideration of the Declaration of Daniel. C. McElhinney (the "**McElhinney Declaration**") attached to the Application as Exhibit B; and pursuant to the retention agreement (and pricing schedule annexed thereto) (together, the "**Retention Agreement**") by and between the Committee and Epiq, a true and correct copy of which is attached to the Application as Exhibit C; and it appearing that the relief requested is in the best interests of the Committee, the Debtors' estates and their creditors; and the Court being satisfied that Epiq has the capability and experience to provide such the services for which it is to be retained by the Committee and that Epiq does not hold an interest

adverse to the Debtors' estates respecting the matters upon which Epiq is to be engaged; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being satisfied based on representations made in the McElhinney Declaration that Epiq does not hold or represent an interest adverse to the Debtors' estates; and good and sufficient notice of the Application having been given; and no other or further notice being required; and sufficient cause appearing therefor; it is

**ORDERED**, that the Committee is authorized to employ and retain Epiq as its information agent in accordance with the terms and conditions set forth herein and in the Retention Agreement; and it is further

**ORDERED**, that Epiq will undertake, *inter alia*, the following actions and procedures:

(a)    Maintain an Internet-accessed website (the "**Committee Website**") at www.motorsliquidationcreditorscommittee.com that provides, without limitation:

(1)    a link or other form of access to the website maintained by the Debtors' notice, claims and balloting agent at http://www.motorsliquidationdocket.com, which shall include, among other things, the case docket and claims register;

(2)    highlights of significant events in the Chapter 11 Cases;

(3)    deadlines for upcoming significant and material events;

(4)    a general overview of the chapter 11 process;

(5)    press releases (if any) issued by the Committee or the Debtors;

(6)    a list of entities that have purchased claims in the Debtors' chapter 11 cases

(7)     a registration form for creditors to request "real-time" updates regarding the Chapter 11 Cases via electronic mail;

(8)     a form to submit creditor questions, comments and requests for access to information;

(9)     responses to creditor questions, comments and requests for access to information; provided, that the Committee may privately provide such responses in the exercise of its reasonable discretion, including in the light of the nature of the information requested and the creditor's agreement to appropriate confidentiality and trading constraints;

(10)    answers to frequently asked questions;

(11)    links to other relevant websites;

(12)    the names and contact information for the Debtors' counsel and restructuring advisor(s); and

(13)    the names and contact information for the Committee's counsel and financial advisor(s);

(b)     Maintain an electronic inquiry form for creditors to submit questions and comments.

(c)     Assist the Committee with certain administrative tasks, including, but not limited to, printing and serving documents as directed by the Committee and its counsel.

**ORDERED**, that without further order of the Court, the Debtors are authorized and directed to compensate Epiq on a monthly basis in accordance with the terms and conditions of the Retention Agreement, upon Epiq's submission to the Committee, the Debtors and the United States Trustee of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith; and it is further

**ORDERED**, that the Committee, the Debtors and the United States Trustee shall have ten (10) days to advise Epiq of any objections to the monthly invoices.  If an objection is raised to an Epiq invoice, the Debtors will remit to Epiq only the undisputed portion of the invoice and, if applicable, will pay the remainder to Epiq upon the resolution of the dispute.  All objections

that are not resolved by the parties shall be preserved and presented to the Court by the objecting

party at the next interim or final fee application hearing to be heard by the Court; and it is further

     **ORDERED**, that the fees and expenses Epiq incurs in the performance of its services

shall be treated as an administrative expense of the Debtors' chapter 11 estates and be paid by the

Debtors in the ordinary course of business without further application to this Court; <u>provided</u>,

<u>however</u>, that to the extent that fees and expenses are disallowed by this Court, Epiq shall not be

entitled to an administrative expense for such disallowed fees and expenses; and it is further

     **ORDERED**, that this Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation of this Order.


Dated:   New York, New York
        August __, 2009

                                     _____
                                     **HONORABLE ROBERT E. GERBER**
                                     **UNITED STATES BANKRUPTCY JUDGE**

**<u>EXHIBIT B</u>**

KRAMER LEVIN NAFTALIS & FRANKEL LLP

1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Kenneth H. Eckstein
Robert T. Schmidt
Adam C. Rogoff

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                    :

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No.: |
| | : | |
| MOTORS LIQUIDATION COMPANY | : | 09-50026 (REG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------- X

### DECLARATION OF DANIEL C. MCELHINNEY IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS THE COMMITTEE'S INFORMATION AGENT *NUNC PRO TUNC* TO JUNE 3, 2009

I, Daniel C. McElhinney, do hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Executive Director of Epiq Bankruptcy Solutions, LLC ("**Epiq**") and I am authorized to make and submit this declaration (the "**Declaration**") on behalf of Epiq. This Declaration is submitted in support of the Application of the Official Committee of Unsecured Creditors (the "**Committee**") of Motors Liquidation Company (collectively, the "**Debtors**"), for authorization to retain Epiq as official information agent ("**Agent**") in the Debtors' chapter 11

cases, pursuant to §§ 11 U.S.C. 105(a), 1102(b)(3) and 1103(c)  (the "**Application**") and to approve a related agreement, nunc pro tunc to June 3, 2009.  The statements contained herein are based upon personal knowledge.

2.      Epiq is one of the country's leading chapter 11 administrators with expertise in noticing, claims processing, balloting and distribution.  In the normal course of its business, Epiq is often called upon to create websites for the purpose of providing access to information to creditors.  Epiq is well qualified to provide the Committee and the Debtors' creditors with access to information in connection with these cases.  Recent large chapter 11 cases in this and other Districts in which Epiq has been retained information agent to provide access to information include:   *Dayton Superior Corporation,* Case No. 09-11351 (Bankr. D. Del.); *Heartland Automotive Holdings, Inc., et al.,* Case No. 08-40047 (Bankr. ND Tex.); *Tarragon Corporation, et al.,* Case No. 09-10555 (Bankr. D. N.J.); *Thornburg Mortgage, Inc., et al.,* Case No. 09-17787 (Bankr. D. Md.); *Tropicana Entertainment, LLC, et al.,* Case No. 08-10856 (Bankr. D. Del.); *Washington Mutual, Inc., et al.,* Case No. 08-12229 (Bankr. D. Del.).   As such, Epiq is well qualified to prepare the Committee website and to assist the Committee in providing the Debtors' unsecured creditors with access to information in connection with these cases.

3.      The Committee selected Epiq to serve as its information agent for these cases, as set forth in more detail in the Application filed contemporaneously herewith.  Except as described herein, to the best of my knowledge, neither Epiq nor any of its employees have any relationship with the Committee or the Debtors that would impair Epiq's ability to serve as Information Agent.

4.      Epiq has relationships with certain of the Debtors' creditors in connection with matters that are unrelated to these cases.  In these instances, Epiq serves as a vendor or in a

neutral capacity as a bankruptcy claims and noticing agent.  Epiq has determined that the

following creditors of the Debtors have retained Epiq to serve as claims and noticing agent in

their chapter 11 cases:  (a) Delta Air Lines, Inc., et al. (b) Chrysler LLC, et al.; (c) Hayes

Lemmerz International Inc., et al; and (d) Lehman Brothers Holdings Inc., at al.  In addition,

Lehman Brothers Inc. has retained Epiq to provide administrative services in connection with its

Securities Investor Protection Act proceedings.

5.     Further, Epiq has working relationships with certain of the professionals retained

by the Committee and the Debtors and other parties herein, but such relationships are – to the

best of my knowledge - completely unrelated to the Debtors' cases.  In addition, Epiq personnel

may have relationships with certain of the Debtors' creditors.  Such relationships, however,

would be of a personal financial nature, and wholly unrelated to the Debtors' cases.  Epiq has

and will continue to represent clients in matters unrelated to the Debtors' cases.  Epiq will also

continue to have relationships in the ordinary course of its business with certain vendors and

professionals involved in the Debtors' cases in connection with matters unrelated to these cases.

6.     Epiq is a "disinterested person," as that term is defined in section 101(14) of the

Bankruptcy Code, in that Epiq and its employees: (a) are not creditors, equity security holders or

insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of

the Debtors' petitions, directors, officers or employees of the Debtors; and (c) do not have an

interest materially adverse to the interests of the Debtors' estates or any class of creditors or

equity security holders, by reason of any direct or indirect relationship to, connection with, or

interest in, the Debtors.

7.     To the best of my knowledge, Epiq has not been retained to assist any entity or

person other than the Committee on matters relating to, or in connection with, these chapter 11

cases.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any

engagement or perform any service for any entity or person other than the Committee in the

Debtors' cases.  Epiq may, however, provide services to entities or persons that may be creditors

or parties in interest in the Debtors' cases, which services do not relate to, or have any direct

connection with, the Debtors' cases, the Committee or the Debtors.


            Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
is true and correct.

Dated: New York, New York
       July 21, 2009

                                        /s/ Daniel C. McElhinney_____
                                        Daniel C. McElhinney

**<u>EXHIBIT C</u>**

## EPIQ BANKRUPTCY SOLUTIONS, LLC

### CREDITORS' COMMITTEE SERVICES AGREEMENT

Between Epiq Bankruptcy Solutions, LLC a New York limited liability company ("Epiq" or the "Information Agent") and The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 cases of General Motors Corporation et al. (Case No. 09-50026 (REG)) (collectively, the "Debtors"), dated as June 4, 2009.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

1. <u>Services.</u>

In accordance with the charges, terms and conditions contained in this Agreement and in the schedules attached hereto (the "Agreement"), Epiq agrees to furnish the Committee with services according to the pricing schedule annexed as Schedule A hereto. Epiq will perform these services in its capacity as information agent for the Committee and to assist the Committee in performing its duties under 11 U.S.C. § 1102(b)(3).

2. <u>Term.</u>

This Agreement shall become effective on the later of (i) the date of its acceptance by Epiq and (ii) the date of entry of an order by the Bankruptcy Court approving this Agreement (or such earlier date set by the Bankruptcy Court). The Agreement shall remain in effect **(i) until terminated by the Committee on one (1) month's prior written notice received by Epiq, (ii) until terminated by Epiq upon three (3) month's prior written notice received by the Committee, or (iii) the discharge of the Committee in the Chapter 11 case.**

3. <u>Charges.</u>

3.1 For services and materials furnished by Epiq under this Agreement, the Committee shall request payment by the Debtors' estates of the charges set forth in Schedule A attached hereto and made a part of this Agreement. Epiq will bill the Committee monthly. All invoices shall be due and payable by the Debtors' estates under the terms approved by the Bankruptcy Court.

3.2 Epiq reserves the right to reasonably increase its prices, charges and rates annually on January 2nd of each year. However, if such increases exceed 10%, Epiq will be required to give sixty (60) days prior written notice to the Committee and the Debtors.

3.3 The Committee agrees to request payment by the Debtors' estates for all materials necessary for Epiq's performance under this Agreement, other than computer hardware and software, and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, postage and related items.

3.4 In addition to all charges for services and materials hereunder, the Committee shall request payment by the Debtors' estates of all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by Epiq or paid by Epiq to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

3.5 In addition to all other charges for services and materials hereunder, the Committee shall request payment by the Debtors' estates of any actual charges related to, arising out of or as a result of any Committee error or omission, as mutually agreed by Epiq and Customer. Such charges shall include but not be limited to re-runs and any additional clerical work billed at the Epiq then prevailing standard rates, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on Schedule A hereto.

3.6 Where the Committee requires measures that are unusual and beyond normal business practice of Epiq such as but not limited to CPA audit, errors and omissions insurance, or off premises storage of data, the cost of such measures, if provided by Epiq, shall be invoiced to the Committee at a competitive rate.

3.7 In the event of termination due to the Committee's default, the Committee shall remain obligated to exercise its best efforts to obtain payment by the Debtors' estates of all amounts then owing to Epiq.

4. Confidentiality.

All of the Committee's data given to Epiq will be safeguarded by Epiq to the same extent that Epiq safeguards data relating to its own business; provided, however, that if data is publicly available, was already in Epiq's possession or known to it, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for disclosure. The Committee agrees that Epiq shall not be liable beyond the limits provided in Section 7.1 herein for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any material supplied by the Committee to Epiq in the performance of this Agreement.

5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Committee ("Property"). Charges paid by the Committee or the Debtors' estates do not vest in the Committee or the Debtors' any rights to the Property, it being expressly understood that the Property is made available to the Committee under this Agreement solely for the Committee's use during and in connection with each use of the Epiq equipment and services. The Committee agrees not to copy or permit others to copy any of the Property.

6. Disposition of Data.

Any data, programs, storage media or other materials furnished by the Committee to Epiq in connection with this Agreement may be retained by Epiq until the services provided herein are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. The Committee shall remain obligated to exercise its best efforts to obtain payment by the Debtors' estates of all charges imposed under this Agreement as a result of data or physical media maintained by Epiq. Epiq shall dispose of the data and media in the manner requested by the Committee. The Committee agrees to seek payment by the Debtors' estates for reasonable expenses incurred as a result of the disposition of the data or media. After giving the Committee thirty (30) days advance notice, Epiq reserves the right to dispose of data or media maintained by Epiq for the Committee if the Committee has not utilized the services provided herein for a period of at least ninety (90) days or if all charges due to Epiq have not been paid.

7. Limitation of Liability and Warranty.

7.1 Except as provided herein, Epiq's liability to the Committee or any person claiming through or under the Committee for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even if Epiq has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of Epiq shall be limited to the total amount billed or billable to Committee for the portion of the particular work which gave rise to the loss or damage. In no event shall Epiq be liable to Committee for any special or consequential damages (including loss of anticipated profits) incurred by Committee in connection with or arising out of the services provided for in this Agreement.

7.2 The Committee is responsible for the accuracy of the programs and data it submits for processing to Epiq and for the output.

**7.3 The Committee agrees that Epiq makes no representations or warranties, express or implied, including but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.**

8. General

8.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

8.2 This Agreement may not be assigned by the Committee without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of the Committee, and shall not be made available to any other persons.

8.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.

8.4 The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

8.5 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail, postage prepaid, and addressed as follows:

      If to Epiq:

              Epiq Bankruptcy Solutions, LLC
              757 Third Avenue, Third Floor
              New York, New York 10017
              Attn: Ron Jacobs

      If to the Committee:

              Gordon Z. Novod, Esq.
              Kramer Levin Naftalis & Frankel LLP
              1177 Avenue of the Americas
              New York, NY 10036

8.6 This Agreement shall be subject to approval of the United States Bankruptcy Court for the Southern District of New York.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

EPIQ BANKRUPTCY SOLUTIONS, LLC

By:_____
     Daniel C. McElhinney
     Executive Director

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

Name: _Gordon Z. Novod_____

Title: _Kramer Levin Naftalis & Frankel LLP_
     Associate
     Counsel to the Official Committee of
     Unsecured Creditors of General Motors
     Corporation



# Pricing

**Website Related Services:**

| | |
|---|---|
| Non-Standalone Website Setup (establishing link and content on existing Epiq Bankruptcy Solutions, LLC website) | Waived |
| Case Specific Email Box Setup | Waived |
| Monthly Base Fee (includes maintenance and monitoring of website) | $200 |
| Drafting or Revising Content for Website | Billed at applicable rates |

**Case Management Services:**

| Title | Rate Range | Average Rate |
|---|---|---|
| Clerk | $40 - $60 per hour | $ 50.00 |
| Case Manager (Level 1) | $125 - $175 per hour | $142.50 |
| IT Programming Consultant | $140 - $190 per hour | $165.00 |
| Case Manager (Level 2) | $185 - $220 per hour | $202.50 |
| Senior Case Manager | $225 - $275 per hour | $247.50 |
| Senior Consultant | TBD | TBD* |

The level of Senior Consultant activity will vary by engagement. If such services are required, the usual average rate is $295 per hour. Please note that any additional professional services not specifically covered by this proposal will be charged at hourly rates, including any outsourced data input services performed under our supervision and control. Outside vendors may charge a premium for weekend and overtime work.



# Pricing

Printing and Reproduction:

| | |
|---|---|
| Photocopies | $ .15 per page |
| Fax | $ .20 per page |

Mailing and Noticing:

| | |
|---|---|
| Set up | Waived |
| Printing | $ .10 per image and/or page including the envelope face) |
| Collate, fold and/or insert | $ .10 each piece |
| Postage and overnight delivery | At cost |
| Electronic noticing | $ .02 per page |
| Legal notice publishing | Quote prior to publishing |

Document Management/Imaging:

| | |
|---|---|
| Electronic imaging (scanning/bar coding) | $ .30 per image |
| Additional OCR capture | $ .10 per image |
| CD burning (mass document storage) | Varies upon requirements |

Confidential Document Management:

| | |
|---|---|
| Confidential on-line workspace | Varies upon requirements |
| Virtual due diligence room | Varies upon requirements |