**Hearing Date and Time: August 3, 2009 at 9:45 a.m. (Eastern Time)**
**Objection Date and Time: July 29, 2009 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :      09-50026 (REG)
      f/k/a General Motors Corp., et al.  :
                                          :
                        Debtors.          :      (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

**NOTICE OF HEARING ON APPLICATION OF THE DEBTORS**
**FOR ENTRY OF ORDER PURSUANT TO**
**11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**THE CLARO GROUP, LLC AS ENVIRONMENTAL CONSULTANTS**
**TO THE DEBTORS _NUNC PRO TUNC_ TO THE COMMENCEMENT DATE**

PLEASE TAKE NOTICE that upon the annexed Application, dated July 21, 2009 (the

"**Application**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), for an order, pursuant to

sections 327(a) and 328(a), of title 11, United States Code authorizing the retention and

employment of The Claro Group, LLC as environmental consultants, as more fully set forth in

the Application, a hearing will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **August 3, 2009 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company (f/k/a General Motors Corporation), 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Ted Stenger); (iii) General Motors Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn:  Lawrence S. Buonomo, Esq.)  (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New

York, New York 10036 (Attn:  Kenneth H. Eckstein, Esq., Thomas Moers Mayer, Esq., Adam C.

Rogoff, Esq., and Gordon Z. Novod, Esq.); (viii) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004

(Attn: Diana G. Adams, Esq.); and (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers

Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L.

Schwartz, Esq.), so as to be received no later than **July 29, 2009, at 4:00 p.m. (Eastern Time)**

(the "**Objection Deadline**").

If no objections are timely filed and served with respect to the Application, the Debtors

may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in

the form of the proposed order annexed to the Application, which order may be entered with no

further notice or opportunity to be heard offered to any party.

Dated:  New York, New York
        July 21, 2009

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                      :
In re                                 :    Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :    09-50026 (REG)
     f/k/a General Motors Corp., et al. :
                                      :
                     Debtors.         :    (Jointly Administered)
                                      :
-------------------------------------------------------------x
```

**APPLICATION OF THE DEBTORS**
**FOR ENTRY OF ORDER PURSUANT TO**
**11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**THE CLARO GROUP, LLC AS ENVIRONMENTAL CONSULTANTS**
**TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

## TABLE OF AUTHORITIES                                    Page

**Relief Requested**............................................................................................**2**

**Jurisdiction** .................................................................................................**3**

**Scope of Services** .........................................................................................**3**

**Claro Group's Disinterestedness** ..................................................................**4**

**Professional Compensation** ..........................................................................**5**

**Fee Applications** ..........................................................................................**7**

**Insurance Coverage** .....................................................................................**8**

**Indemnification** ...........................................................................................**9**

**Notice**  ......................................................................................................**12**

# TABLE OF AUTHORITIES <span style="float:right">Page</span>

## CASES

*Donaldson, Lufkin & Jenrette  Sec. Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997) ...................................................................5

## RULES AND STATUTES

11 U.S.C. § 101(14) ........................................................................................................5

11 U.S.C. § 327(a) ...................................................................................................2, 3, 5

11 U.S.C. § 328(a) .............................................................................................2, 3, 5, 6, 7

11 U.S.C. § 330 ...............................................................................................................7

11 U.S.C. § 331 ...............................................................................................................7

11 U.S.C. § 504 ...............................................................................................................7

11 U.S.C. § 1107(b) .........................................................................................................5

28 U.S.C. § 157 ...............................................................................................................3

28 U.S.C. § 1408 .............................................................................................................3

28 U.S.C. § 1409 .............................................................................................................3

28 U.S.C. § 1334 .............................................................................................................3

Fed. R. Bankr. P. 2002....................................................................................................12

Fed. R. Bankr. P. 2014......................................................................................................2

Bankr. S.D.N.Y. R. 2014-1 ...........................................................................................2, 7

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Motors Liquidation Company (f/k/a General Motors Corporation) ("**GM**") and its

affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), submit this application

(the "**Application**") for authority to employ and retain The Claro Group, LLC ("**Claro Group**")

as consultants assisting the Debtors in connection with the determination of the costs of the

Debtors' actual or potential environmental liabilities, *nunc pro tunc* to June 1, 2009 (the

"**Commencement Date**"), the date on which the Debtors' chapter 11 cases were filed, pursuant

to sections 327(a) and 328(a) of title 11, United States Code (the "**Bankruptcy Code**") and Rule

2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and

respectfully represent:

**Relief Requested**

        1.      By this Application, the Debtors seek entry of an order pursuant to

sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Bankruptcy Rules, and

Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York ( the "**Local

Rules**"), authorizing the retention and employment of Claro Group as an environmental

management and consulting services provider in connection with these chapter 11 cases,

effective *nunc pro tunc* to the Commencement Date, to assist the Debtors in determining the

costs of actual or potential environmental liabilities arising from the Debtors' prepetition,

historic operations, all as more fully described in the Affidavit of Douglas H. Deems, the General

Counsel and a Managing Director of Claro Group, sworn to July 21, 2009, annexed hereto as

Exhibit "A" (the "**Deems Affidavit**") and in accordance with the terms and conditions set forth

in the agreement between the Debtors and Claro Group dated and effective as of June 10, 2009

1

(the "**Engagement Letter**"), the form of which annexed hereto as Exhibit "B". *Nunc pro tunc*

retention is appropriate because (i) this Application was filed shortly after the Commencement

Date, (ii) Claro Group will commence providing services to the Debtors after the

Commencement Date, and (iii) a final hearing on this Application will not be conducted, and a

final order will not be entered, until after the Commencement Date.

2.      Section 327(a) provides, in relevant part, that the Debtors "with the court's

approval, may employ. . . professional persons, that do not hold or represent an interest adverse

to the estate, and that are disinterested persons, to represent or assist" the Debtor in carrying out

its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).  Section 328(a) of the Bankruptcy

Code provides, in relevant part, that a debtor "with the court's approval, may employ or

authorize the employment of a professional person under section 327. . . on any reasonable terms

and conditions of employment, including on a retainer, on an hourly basis, on a fixed or

percentage fee basis, or on a contingent fee basis." *Id.* § 328(a).

## Jurisdiction

3.      This Court has jurisdiction to consider this Application pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Scope of Services

4.      Pursuant to the Engagement Letter, Claro Group has agreed to provide to

the Debtors the following services (collectively, the "**Services**"):[1]

---

[1]  The following is only a summary of the services set forth in the Engagement Letter and should not be construed to modify or amend such letter.  The actual terms of the Engagement Letter govern the scope of services to be provided to the Debtors by Claro Group.

(a)    Review the Debtors' existing remedial/environmental and real estate site files, including but not limited to engineering reports, remedial action plans, agency correspondence, financial accounting reserve, site location information, tax records and regulatory financial assurance information and other such information;

(b)    Evaluate existing regulatory actions associated with the Debtors' sites;

(c)    Assist in the development of potential future costs at site and portfolio levels using appropriate methodologies, including but not limited to probabilistic and deterministic estimating techniques;

(d)    Assist in the review of potential future site use and incorporate into site closure cost estimates as appropriate;

(e)    Report to the Debtors verbally from time to time, and at the Debtors' direction, on the progress of the work and preliminary findings;

(f)    Prepare a final written report on such forms as directed by the Debtors, if requested by the Debtors; and

(g)    Perform such other services as requested by the Debtors from time to time in furtherance of assisting the Debtors in determining the costs of actual or potential environmental liabilities arising from the Debtors' sites.

In performing the Services, the Claro Group will expend approximately 550 hours.

5.    Claro Group is a privately owned, financial and management consulting firm.  The Debtors believe that Claro Group possesses extensive environmental management and consulting expertise useful in these cases and that Claro Group is well-qualified to perform the Services for the Debtors.

6.    Furthermore, Claro Group has indicated a desire and willingness to act in these chapter 11 cases and render the necessary Services for the Debtors, on the terms set forth in the Engagement Letter and described herein, and to subject itself to the jurisdiction of this Court.

7.      Therefore, the Debtors submit that the retention of Claro Group on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

### Claro Group's Disinterestedness

8.      To the best of the Debtors' knowledge, information and belief, neither Claro Group nor any professional employee of Claro Group has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Deems Affidavit.

9.      Claro Group has informed the Debtors that as of July 14, 2009, the Debtors owe Claro Group approximately $174,000.00 for services rendered postpetition.  The Debtors do not owe Claro Group any prepetition amounts.

10.      Based upon the Deems Affidavit, the Debtors submit that Claro Group is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  The Debtors have been informed that Claro Group will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Claro Group will supplement its disclosure to the Court.

### Professional Compensation

11.      Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Claro Group on reasonable terms and conditions.  Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and

conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage

fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

12.     As recognized by numerous courts, Congress intended section 328(a) to

enable debtors to retain professionals pursuant to specific fee arrangements to be determined at

the time of the court's approval of the retention, subject to reversal only if the terms are found to

be improvident in light of "developments not capable of being anticipated at the time of the

fixing of such terms and conditions."  11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette*

*Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997)

("If the most competent professionals are to be available for complicated capital restructuring

and the development of successful corporate reorganization, they must know what they will

receive for their expertise and commitment.").

13.     Accordingly, section 328 permits the compensation of professionals,

including environmental management and consulting services providers, on terms that reflect the

nature of their services and market conditions.  The Debtors negotiated the terms of the

Engagement Letter, which reflect commercially reasonable compensation and employment

agreements.  Thus, the Debtors request approval of the Engagement Letter, including the fee and

expense structure (the "**Fee Structure**") and the reimbursement provisions pursuant to section

328(a) of the Bankruptcy Code.

14.     Subject to Court approval, the Debtors will compensate Claro Group in

accordance with the terms and conditions of the Engagement Letter.  Pursuant to the

Engagement Letter, Claro Group intends to charge the Debtors for Services rendered in these

chapter 11 cases, based on its hourly rate for such Services, which currently is as follows:

| Professional | Hourly |
|---|---|

5

|  | Compensation |
|---|---|
| Managing Director | $400 - $500 |
| Principal | $330 - $395 |
| Senior Manager | $275 - $320 |

Claro Group's hourly rates are revised periodically in the ordinary course of its business.  The Debtors understand that, if a rate change is effective during the course of Claro Group's engagement with the Debtors, Claro Group will advise the Debtors of such new rates.

15.    In addition to the rates set forth above, the Debtors shall reimburse Claro Group for any direct expenses incurred in connection with Claro Group's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letter.  Claro Group's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses specifically related to this engagement (including any fees or reasonable expenses of Claro Group's legal counsel, but not any such legal fees or expenses related to Claro Group's efforts to be retained or to Claro Group's fee applications in these chapter 11 cases).

16.    The compensation arrangement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by Claro Group and other environmental management and consulting firms with respect to rendering comparable services for clients similar to the Debtors, both in and outside of bankruptcy.

17.    Considering the Services that Claro Group will provide and the market prices for Claro Group's services, the Debtors submit that the Fee Structure (including reasonable reimbursements) is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code and fulfill the requirements of Rule 2014-1 of the Local Rules.

18.     Claro Group has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

### Fee Applications

19.     Claro Group will file interim and final fee applications for allowance of its compensation and expenses, with respect to its Services, and Claro Group will seek compensation and reimbursement of expenses, as specified in the Engagement Letter, with the payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court.

### Insurance Coverage

20.     As stated in paragraph 13 of the Engagement Letter, Claro Group has agreed to maintain insurance coverage during the term of work in amounts not less than the following:

(a)     Worker's Compensation – Statutory Limits for the state or states in which the work is to be performed (or evidence of authority to self-insure);

(b)     Employer's Liability – $250,000 Each Accident; $250,000 Disease – Policy Limit; $250,000 Disease – Each Employee;

(c)     Comprehensive General Liability (including Commercial General Liability "Claims Made" basis) – $5,000,000 General Aggregate; $5,000,000 Products – Completed Operations Aggregate; $5,000,000 Personal and Advertising Injury; $5,000,000 Each Occurrence;

(d)     Automobile Liability – $5,000,000 combined single limit (bodily injury and property damage), and must include coverage for all owned, hired and non-owned vehicles;

(e)    In the event the work involves professional engineering services, engineering design services, field inspection services, land survey work, construction management, environmental consulting or remedial investigation services, Consultant agrees to provide Professional Liability Insurance – $2,000,000 Annual Aggregate plus any applicable deductibles disclosed prior to execution of this Agreement.  In addition, Consultant must maintain or demonstrate insurance for Consultant's or Subcontractor's tools, equipment, field offices, materials and other property located at a Project Site;

(f)    In the event the work involves construction or remedial construction, equipment installation or demolition activities, Consultant agrees to provide Contractor Pollution Liability (endorsed to provide coverage for all the work performed by or on behalf of GM ) – $2,000,000 Per Occurrence, $5,000,000 Annual Aggregate.  Said policy will not be limited or nullified due to the fact that a particular Project Site may be a "Superfund" Site subject to the Comprehensive Environmental Response, Compensation and Liability Act.  In addition, Consultant must maintain or demonstrate insurance for Consultant's or Subcontractor's tools, equipment, tarpaulins, field offices or construction buildings, employees' tools and clothing, materials and other property which will not become a part of the permanent construction or be consumed on the Project Site; and

(g)    In the event the work involves the treatment, storage or disposal of hazardous waste and/or non-hazardous waste, Consultant agrees to provide Pollution Legal Liability Insurance – $1,000,000 per occurrence, $2,000,000 annual aggregate.  Owners and Operators of surface impoundment, landfill or land treatment facilities must additionally maintain liability coverage for gradual (non-sudden) pollution incidents of at least $3,000,000 per occurrence, $6,000,000 annual aggregate.  Policies combining coverage for both sudden and accidental and gradual occurrences must be at least $4,000,000 per occurrence ($1,000,000 sudden and $3,000,000 non-sudden), $8,000,000 annual aggregate ($2,000,000 sudden and $6,000,000 annual aggregate).

Claro Group also has agreed to name GM as an additional insured under all Claro Group policies required in paragraph 13 of the Engagement Letter except insurance for Workers Compensation and Professional Liability.

21.    The Debtors have agreed, pursuant to paragraph 13 of the Engagement Letter, to maintain property insurance to cover the material and other property delivered to project sites, which are to become a part of the permanent construction or are to be consumed on the sites in the process of completing the Services.

## **Indemnification**

22.    In addition, Claro Group has agreed to the following language, as stated in Paragraph 11 of the Engagement Letter:

> Consultant agrees to indemnify, hold harmless and defend GM, their respective employees, agents, and representatives, from and against any and all losses, damages, expenses, claims, suits and injuries, including death, to any property or persons to the extent caused by or arising out of any intentional acts or omissions in connection with the performance of services under this Agreement by Claro Group, their employees, agents, successors, assigns and representatives.

> Consultant hereby agrees to indemnify GM for any taxes, payments or penalties assessed on GM, and expenses incurred in connection therewith, by a state or federal taxing authority for any failure to properly withhold and remit necessary payroll taxes to such authorities with respect to self-employment of Consultant personnel, their employees, or the employment of others. Consultant agrees to comply with all requirements of the Federal Wage and Hour Act regarding hours, rates, etc., and will be held responsible for compliance.

> Should GM be joined as a party in any action or proceeding arising out of the violation, or an alleged violation, of the Federal Wage and Hour Law as a result of Consultant's, or any Subcontractor(s) of Consultant performance under this

Agreement, then Consultant and/or the Subcontractor violating, or alleged to have violated such law, or using or introducing goods manufactured or alleged to have been manufactured in violation of the law, will defend and hold harmless GM in any such action or proceeding and pay and defray any damage, expense and cost of any description by reason thereof, including reasonable attorneys fees.

Consultant specifically agrees that each of its employees and its Subcontractor(s) possess the experience, knowledge and character necessary to qualify them individually for the particular duties they perform and further, it is understood that GM is relying on the expertise of Consultant and its Subcontractor(s) to perform the services described in Consultant's proposal and/or bid.

Consultant represents to GM that it understands and accepts the currently known hazards and risks which are presented to human beings, property and the environment in the performance of the services and work hereunder. Consultant represents and warrants that, in performing the work or services, its employees may be working with, or be exposed to, substances or conditions which are toxic or otherwise hazardous. Consultant acknowledges that GM has engaged Consultant on the basis of its representations concerning its experience in working on similar conditions affecting the project site, and that GM is relying on Consultant to identify and evaluate the potential risks in performing work or services hereunder and to take all appropriate precautions to avoid such risks to its employees and others. Consultant agrees to assume full responsibility for ascertaining the existence of such risks, evaluating their significance, implementing appropriate safety precautions, and making the decision on how (and whether) to carry out the work or services with due regard to such risks and necessary safety precautions.

23. Pursuant to Paragraph 11 of the Engagement Letter, the Debtors also have

agreed to the following language:

GM agrees to indemnify, save harmless and defend Consultant and its subconsultants, directors, partners, principals and employees from and against any and all liabilities, losses, claims, damages, suits, actions, judgments, costs, charges, legal fees and other expenses of

10

whatsoever nature or character arising out of or related to the Scope of Work or any use by GM of a deliverable item to be provided by Consultant hereunder, except any of the same arising out of Consultant's gross negligence or willful misconduct, and GM will reimburse Consultant for all reasonable documented expenses incurred by Consultant in connection with any such action or claim.

Under no circumstances shall Consultant be liable for any loss or damage resulting from loss of use, loss of profits or revenues, loss of business opportunity, cost of capital, loss of goodwill, claims of customers, cost of purchased or replacement products, additional production expenses or like items of loss or damage.

The maximum liability of Consultant and its subconsultants to GM relating to the Scope of Work rendered under this Agreement (regardless of the form of action, whether sounding in contract, tort or otherwise) shall be limited to the total compensation received and retained by Consultant, or the limits of Consultant's insurance coverage, whichever is greater.

24.     The indemnification provisions in Paragraph 11 of the Engagement Letter survive the cancellation or termination of the Engagement Letter.

## **Notice**

25.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the Creditors' Committee, (v) the attorneys for the ad hoc bondholders committee, (vi) the U.S. Attorney's Office, S.D.N.Y., (vii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002, and (vii) Claro Group.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

26.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       July 21, 2009

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

## (Affidavit of Douglas H. Deems)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.,*     :        **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*  :
                                              :
                    **Debtors.**              :        **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

**AFFIDAVIT AND DISCLOSURE STATEMENT**
**OF DOUGLAS H. DEEMS IN SUPPORT OF THE**
**DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a)**
**AND 328(a) AND FED. R. BANKR. P. 2014 FOR ENTRY OF**
**AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF THE CLARO GROUP, LLC AS ENVIRONMENTAL CONSULTANTS**
**TO THE DEBTORS** *NUNC PRO TUNC* **TO THE COMMENCEMENT DATE**

STATE OF CALIFORNIA          )
                             )      ss:
COUNTY OF LOS ANGELES        )

       Douglas H. Deems, being duly sworn, deposes and says:

       1.     I am the General Counsel and a Managing Director of The Claro Group,

LLC ("**Claro Group**"),[1] a privately owned, financial and management consulting firm, which

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

maintains its corporate headquarters at 70 W. Madison Street, Suite 4800, Chicago, Illinois 60602.

2.     I submit this affidavit (the "**Deems Affidavit**") in support of the application dated July 21, 2009 (the "**Application**") of Motors Liquidation Company (f/k/a General Motors Corporation) ("**GM**") and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for authorization to employ and retain Claro Group as consultants to assist the Debtors in connection with the determination of the costs of the Debtors' actual or potential environmental liabilities, *nunc pro tunc* to June 1, 2009 (the "**Commencement Date**"), pursuant to the terms and conditions set forth in the engagement letter entered into by Claro Group and the Debtors dated June 10, 2009 (the "**Engagement Letter**").  Unless otherwise stated in this Deems Affidavit, I have personal knowledge of the facts set forth herein.

**Claro Group's Qualifications**

3.     Claro Group is a privately owned, financial and management consulting firm with over 70 professionals located in three major offices throughout the United States – Chicago, Houston and Los Angeles.  Although Claro Group was formally established in September 2005, many of its professionals and independent contractors have been performing consulting services of the type described in the Engagement Letter for 10 to 15 years.  Over the past 15 years, Claro Group and/or many of its professionals have been retained by many Fortune 500™ Companies to assist them in developing and evaluating actual and/or potential environmental exposures.

4.     Claro Group's professionals have worked closely with representatives of the Debtors in connection with prior efforts undertaken by the Debtors, prepetition, to evaluate

potential and/or actual environmental exposures associated with Debtors' historic operations and sites.  Accordingly, Claro Group has developed relevant experience and expertise regarding the Debtors that will assist Claro Group in providing efficient and effective services in these chapter 11 cases.

## Claro Group's Disinterestedness

5.      Claro Group researched its client databases and conducted an internal query of its professionals to determine whether it has any connections with potential parties in interest that might cause it not to be disinterested or to represent an interest adverse to the Debtors.  Counsel for the Debtors provided Claro Group with a list of potential parties in interest (the "**Potential Parties in Interest**"), and the categories of Potential Parties in Interest are set forth in Exhibit 1 annexed hereto.

6.      To the best of my knowledge, information, and belief, neither I nor any other professional employed by Claro Group has any connection with or holds any interest adverse to the Debtors, their estates, their creditors, the United States Trustee or any other party in interest herein or their respective attorneys in the matters for which Claro Group is proposed to be retained, except as disclosed in Exhibit "2" annexed hereto.

7.      Claro Group also may have rendered services to or used the services of, and may continue to render services to or use the services of, certain of the Debtors' creditors, professionals, or other parties in interest, or interests adverse to such creditors, professionals, or parties in interest, in matters wholly unrelated to these cases.[2]  Similarly, Claro Group's employees may have business associations with certain of the Debtors' creditors or other parties

---

[2] There may be additional representations which are confidential in nature but in matters wholly unrelated to these cases and not adverse to the Debtors.

3

in interest in these chapter 11 cases, or interests adverse to such creditors or parties in interest, which associations have no connection with these cases.

8.     To the best of my knowledge, Claro Group has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, the Debtors' chapter 11 cases.

9.     No outstanding amounts for prepetition services are owed to Claro Group by the Debtors.  Therefore, Claro Group is not a creditor of the Debtors.

10.     Accordingly, I have determined that Claro Group does not hold or represent an interest that is adverse to the Debtors' estates, and Claro Group is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  If any new relevant facts or relationships are discovered or arise, Claro Group will promptly supplemental its disclosure to this Court.

### Scope of Services

11.     Claro Group has agreed to assist the Debtors in determining the costs of actual or potential environmental liabilities arising from the Debtors' prepetition, historic operations, as more completely described in the Engagement Letter.  Pursuant to the terms and conditions of the Engagement Letter, Claro Group has agreed to provide the following services (collectively, the "**Services**") [3] in connection therewith:

> (a)     Review the Debtors' existing remedial/environmental and real estate site files, including but not limited to engineering reports, remedial action plans, agency correspondence, financial accounting reserve, site location information, tax records and regulatory financial assurance information and other such information;

---

[3]  The following is only a summary of the services set forth in the Engagement Letter and should not be construed to modify or amend such letter.  The actual terms of the Engagement Letter govern the scope of services to be provided to the Debtors by Claro Group.

(b)     Evaluate existing regulatory actions associated with the Debtors' sites;

(c)     Assist in the development of potential future costs at site and portfolio levels using appropriate methodologies, including but not limited to probabilistic and deterministic estimating techniques;

(d)     Assist in the review of potential future site use and incorporate into site closure cost estimates as appropriate;

(e)     Report to the Debtors verbally from time to time, and at the Debtors' direction, on the progress of the work and preliminary findings;

(f)     Prepare a final written report on such forms as directed by the Debtors, if requested by the Debtors; and

(g)     Perform such other services as requested by the Debtors from time to time in furtherance of assisting the Debtors in determining the costs of actual or potential environmental liabilities arising from the Debtors' sites.

## **Compensation**

12.     Subject to Court approval, the Debtors will compensate Claro Group in accordance with the terms and conditions of the Engagement Letter.  Pursuant to the Engagement Letter, Claro Group intends to charge the Debtors for Services rendered in these chapter 11 cases, based on its hourly rate for such Services, which currently is as follows:

| Professional | Hourly Compensation |
|---|---|
| Managing Director | $400 - $500 |
| Principal | $330 - $395 |
| Senior Manager | $275 - $320 |

Claro Group's hourly rates are revised periodically in the ordinary course of its business.  The Debtors understand that, if a rate change is effective during the course of Claro Group's engagement with the Debtors, Claro Group will advise the Debtors of such new rates.

13.     In addition to the rates set forth above, the Debtors shall reimburse Claro Group for any direct expenses incurred in connection with Claro Group's retention in these

chapter 11 cases and the performance of the Services set forth in the Engagement Letter.  Claro

Group's direct expenses shall include, but not be limited to, reasonable and customary out-of-

pocket expenses for items such as travel, meals, accommodations, and other expenses

specifically related to this engagement (including any fees or reasonable expenses of Claro

Group's legal counsel, but not any such legal fees or expenses related to Claro Group's efforts to

be retained or to Claro Group's fee applications in these chapter 11 cases).

      14.    The compensation arrangement provided for in the Engagement Letter is

consistent with and typical of arrangements entered into by Claro Group and other environmental

management and consulting firms with respect to rendering comparable services for clients

similar to the Debtors, both in and outside of bankruptcy.

      15.    Claro Group has not shared or agreed to share any of its compensation in

connection with this matter with any other person, as permitted by section 504 of the Bankruptcy

Code.

16.    Claro Group will file interim and final fee applications for allowance of its

compensation and expenses, with respect to its Services, and Claro Group will seek

compensation and reimbursement of expenses, as specified in the Engagement Letter, with the

payment of such fees and expenses to be approved in accordance with the procedures set forth in

sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, Local Rules and

orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may

be fixed by order of this Court.


By: /s/ Douglas H. Deems_____
      Douglas H. Deems


Sworn to and subscribed before me, a notary public for the State of California,
County of Los Angeles, this 21st day of July, 2009.


/s/ Jose Leonardo Verde_____
JOSE LEONARDO VERDE
Commission # 1792553
Notary Public - California
Los Angeles County
My Comm. Expires Mar. 2, 2012

# EXHIBIT 1

## Categories of Potential Parties In Interest

- Current Members of Board of Directors for General Motors Corporation
- Former Members of Board of Directors of General Motors Corporation (past 3 years)
- Affiliations of Current Members of Board of Directors of General Motors Corporation
- Current Officers of General Motors Corporation
- Former Officers of General Motors Corporation (past 3 years)
- Other Key Executives and Professionals of Affiliates
- Current Significant Shareholders (top 5%)
- Top 25 Shareholders
- Other names each of the Debtor entities are known as  (including trade names and aliases (up to 8 years) (a/k/a, d/b/a. f/k/a))
- Largest 50 Bondholders
- Top 100 Unsecured Creditors as of May 29, 2009 (other than individual bondholders)
- Utility Companies
- Insurance Providers
- Counterparties to Major Contracts (financing agreements, executory contracts, leases, and other agreements)
- Taxing Authorities
- Investments as a Limited Partnership
- Joint Venture Parties
- Former GM Entities
- Indenture Trustees (including any parties to GM municipal bond financing arrangements)
- Underwriting Investment Banks for GM's securities (for all securities issued or outstanding and for the prior 3 years, including investment banks used in private placement transactions)
- Governmental and State Regulatory Agencies
- Secured Creditors Other Than Major Secured Lenders
- Major Secured Lenders
- Professionals Employed
- Retention Applicants
- Major Customers
- Top 100 Suppliers
- Counterparties to Equipment Financing Agreements
- Strategic Alliances
- Unions/Non-Debtor Parties to Collective Bargaining Agreements
- Major Litigation Claimants
- Professionals Retained by Significant Creditor Groups
- Entities in which GM owns an equity interest
- Judges for the United States Bankruptcy Court for the Southern District of New York
- United States Trustees for the Southern District of New York
- Current Members of Board of Directors of Saturn, LLC
- Affiliations of Current Members of Board of Directors of Saturn, LLC

- Former Members of Board of Directors of Saturn, LLC (past 3 years)
- Current Officers of Saturn, LLC
- Former Officers of Saturn, LLC (past 3 years)
- Current Members of Board of Directors of Saturn Distribution Corporation
- Affiliations of Current Members of Board of Directors of Saturn Distribution Corporation
- Former Members of Board of Directors of Saturn Distribution Corporation (past 3 years)
- Current Officers of Saturn Distribution Corporation
- Former Officers of Saturn Distribution Corporation (past 3 years)
- Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.
- Affiliations of Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.
- Former Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc. (past 3 years)
- Current Officers of Chevrolet-Saturn of Harlem, Inc.
- Former Officers of Chevrolet-Saturn of Harlem, Inc.

# EXHIBIT 2

### The Claro Group's Disclosure List

Claro Group is currently performing consulting services to the following entities, professionals and/or subsidiaries/affiliates of potential parties in interest, which consulting services are wholly unrelated to Debtors:

- Fluor Corporation

- Ernst & Young LLP(currently inactive)

- Pfizer

- GE

- Bridgestone/Firestone

- CenterPoint Energy

- Dominion Resources

- Hess Corporation

- ArvinMeritor

- TVA

- The Minnesota Mining & Manufacturing Company

- Johnson Controls LP

- Jones Day LLP

- Borg Warner Inc.

# EXHIBIT B

## (Engagement Letter)

# GENERAL MOTORS CORPORATION
## ENVIRONMENTAL CONSULTANT RETENTION AGREEMENT

## 1.  Definitions

Agreement

Will be defined as this Retention Agreement and all exhibits attached hereto.

Bankruptcy Court

Will be defined as the United States Bankruptcy Court for the Southern District of New York (together with the District Court for the Southern District of New York, where applicable).

General Motors Corporation, Debtor In Possession

Will be referred to as "GM."

**Effective Date**

Regardless of when this Agreement is fully executed by all Parties, the terms and conditions of this Agreement are effective as of June 10, 2009.

Consultant

Will be defined as the Consultant or entity performing work pursuant to this Agreement, and includes its officers, directors, employees, agents, successors and assigns.

Subcontractor

The term Subcontractor will be defined as any consultant, engineer, contractor, firm or company retained by the Consultant to perform the work contemplated herein, provided, however, that the Consultant shall continue to remain responsible for the performance of said work.

Work

Will be defined as the services to be performed by the Consultant pursuant to this Retention Agreement, as provided on Exhibit A ("Scope of Work") attached hereto, and Consultant agrees to provide the personnel, supervision, labor, materials and equipment required for the performance of said work or services.

**2.   Acceptance**

Consultant has read and understands this Agreement and agrees that Consultant's written acceptance of, or commencement of, any work or service under this Agreement shall constitute Consultant's acceptance of these terms and conditions only.  All terms and conditions proposed by Consultant which are different from or in addition to this Agreement are unacceptable to GM, are expressly rejected by GM, and shall not become a part of this Agreement.

**3.   Project Control System**

At the request of GM, Consultant agrees to prepare and submit a project memorandum, in a form to be provided by GM, which is designed to present the work to be performed in a common format, including a common invoice and schedule tracking document.

**4.   Schedule**

A completion schedule for key activities shall be mutually determined so actual progress can be compared with scheduled progress.  Therefore, additional time required to meet the original schedule will not be performed at GM's expense unless the original scope of work is revised at GM's request.

**5.   Changes**

GM reserves the right at any time to direct changes, or cause the Consultant to make changes, to drawings and specifications of the work or to otherwise change the scope of the work covered by this Agreement, and Consultant agrees to promptly make such changes.  Any difference in price or time for performance resulting from such changes shall be equitably adjusted by GM after receipt of documentation in such form and detail as GM may direct.  No changes shall be effective without a written description of the changes approved in writing by GM.

**6.   Payment**

Consultant agrees: (a) to promptly render, after performance of services, correct and complete invoices to GM.  Subject to Bankruptcy Court approval, the payment date shall be within thirty (30) days from the date of receipt by GM of a correct, full and complete invoice.

GM may withhold payment pending receipt of evidence, in such form and detail as GM may direct, of the absence of any liens, encumbrances or claims on the work or services performed under this Agreement.

**7.   Force Majeure**

Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that it is caused by an event or occurrence beyond the reasonable control of the party and without its fault or negligence, such as, by way of example and not by way of limitation, acts of God, actions by any governmental authority (whether valid or invalid), fires,

floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), inability to obtain power, material, labor, equipment or transportation, or court injunction or order; provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the affected party to the other party within five (5) days. During the period of such delay or failure to perform by Consultant, GM, at its option, may procure the services hereunder from other sources and reduce its schedules and payment items to the Consultant by such amounts, without liability to the Consultant. If requested by GM, Consultant shall, within five (5) days of such request, provide adequate assurances that the delay shall not exceed ten (10) days. If the delay lasts more than ten (10) days or Consultant does not provide adequate assurance that the delay will cease within ten (10) days, GM may immediately cancel this Agreement without liability.

## 8.   Cancellation Due to Insolvency

GM may immediately cancel this Agreement without liability to GM in the event of the happening of any of the following or any other comparable event: (a) insolvency of the Consultant; (b) filing of a voluntary petition in bankruptcy by Consultant; (c) filing of any involuntary petition of bankruptcy against the Consultant; (d) appointment of a receiver or trustee for the Consultant; or (e) execution of an assignment for the benefit of creditors by Consultant, provided that such petition, appointment, or assignment is not vacated or nullified within fifteen (15) days of such event.

## 9.   Cancellation for Breach

GM reserves the right to cancel all or any part of this Agreement, without liability to GM, if Consultant: (a) repudiates or breaches any of the terms of this Agreement, including Consultant's guarantees or warranties; (b) fails to perform services or deliver reports as specified by GM; or (c) fails to make progress so as to endanger timely and proper completion of services; and does not correct such failure or breach within five (5) days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from GM specifying such failure or breach. The reasonable extra expense caused by Consultant's failure to perform or complete any outstanding work, together with a reasonable charge for additional engineering, managerial and administrative work as necessary, will be charged to the Consultant and the expense so charged will be deducted by GM out of such moneys as may be due or may at any time thereafter become due to the Consultant. In the event such an expense is in excess of the sum which otherwise would have been payable to the Consultant at the time of Cancellation, then the Consultant agrees to promptly pay the amount of such excess to GM. GM may, in its sole discretion, withhold all or any part of any progress payments otherwise due to the Consultant until completion of the services specified herein.

## 10. Termination

GM reserves the right to terminate this Agreement upon five (5) days written notice to Consultant. In such event, GM will pay for work performed up to that date.

**11. Indemnification**

Consultant agrees to indemnify, hold harmless and defend GM, their respective employees, agents, and representatives, from and against any and all losses, damages, expenses, claims, suits and injuries, including death, to any property or persons caused by or arising out of any intentional acts or omissions in connection with the performance of services under this Agreement by Consultant, their employees, agents, successors, assigns and representatives Consultant hereby agrees to indemnify GM for any taxes, payments or penalties assessed on GM, and expenses incurred in connection therewith, by a state or federal taxing authority for any failure to properly withhold and remit necessary payroll taxes to such authorities with respect to self-employment of Consultant personnel, their employees, or the employment of others. Consultant agrees to comply with all requirements of the Federal Wage and Hour Act regarding hours, rates, etc., and will be held responsible for compliance.

Should GM be joined as a party in any action or proceeding arising out of the violation, or an alleged violation, of the Federal Wage and Hour Law as a result of Consultant's, or any Subcontractor(s) of Consultant performance under this Agreement, then Consultant and/or the Subcontractor violating, or alleged to have violated such law, or using or introducing goods manufactured or alleged to have been manufactured in violation of the law, will defend and hold harmless GM in any such action or proceeding and pay and defray any damage, expense and cost of any description by reason thereof, including reasonable attorneys fees.

Consultant specifically agrees that each of its employees and its Subcontractor(s) possess the experience, knowledge and character necessary to qualify them individually for the particular duties they perform and further, it is understood that GM is relying on the expertise of Consultant and its Subcontractor(s) to perform the services described in Consultant's proposal and/or bid.

Consultant represents and warrants to GM that it understands and accepts the currently known hazards and risks which are presented to human beings, property and the environment in the performance of the services and work hereunder.  Consultant represents and warrants that, in performing the work or services, its employees may be working with, or be exposed to, substances or conditions which are toxic or otherwise hazardous.  Consultant acknowledges that GM has engaged Consultant on the basis of its representations concerning its experience in working on similar conditions affecting the project site, and that GM is relying on Consultant to identify and evaluate the potential risks in performing work or services hereunder and to take all appropriate precautions to avoid such risks to its employees and others.  Consultant agrees to assume full responsibility for ascertaining the existence of such risks, evaluating their significance, implementing appropriate safety precautions, and making the decision on how (and whether) to carry out the work or services with due regard to such risks and necessary safety precautions.

The provisions of this Paragraph 11 shall survive cancellation or termination of this Agreement.

GM agrees to indemnify, save harmless and defend Consultant and its subconsultants, directors, partners, principals and employees from and against any and all liabilities, losses, claims,

damages, suits, actions, judgments, costs, charges, legal fees and other expenses of whatsoever nature or character arising out of or related to the Scope of Work or any use by GM of a deliverable item to be provided by Consultant hereunder, except any of the same arising out of Consultant's gross negligence or willful misconduct, and GM will reimburse Consultant for all reasonable documented expenses incurred by Consultant in connection with any such action or claim.

Under no circumstances shall Consultant be liable for any loss or damage resulting from loss of use, loss of profits or revenues, loss of business opportunity, cost of capital, loss of goodwill, claims of customers, cost of purchased or replacement products, additional production expenses or like items of loss or damage

The maximum liability of Consultant and its subconsultants to the GM relating to the Scope of Work rendered under this Agreement (regardless of the form of action, whether sounding in contract, tort or otherwise) shall be limited to the total compensation received and retained by Consultant, or the limits of Consultant's insurance coverage, whichever is greater.

## 12. Compliance With Laws, Warranty

Consultant represents and warrants that the work and services will be performed in full compliance with all applicable laws, regulations and ordinances and in full conformity with the standards of care and diligence normally practiced by reputable firms in performing similar work.  If, during the two (2) year period following completion of or expiration of this Agreement or termination of this Agreement, the Consultant is notified in writing that there is an error as a result of those standards not having been met, the Consultant will, at its own expense, take such corrective actions as may be necessary to remedy the error.

## 13. Insurance

Consultant will maintain insurance coverage during the term of the work in amounts not less than the following:

a)  Worker's Compensation -- Statutory Limits for the state or states in which the work is to be performed (or evidence of authority to self-insure).

b)  Employer's Liability -- $250,000 Each Accident; $250,000 Disease - Policy Limit; $250,000 Disease - Each Employee.

c)  Comprehensive General Liability (including Commercial General Liability "Claims Made" basis) -- $5,000,000 General Aggregate; $5,000,000 Products - Completed Operations Aggregate; $5,000,000 Personal and Advertising Injury; $5,000,000 Each Occurrence.

d)  Automobile Liability  -- $5,000,000 combined single limit (bodily injury and property damage), and must include coverage for all owned, hired and non-owned vehicles.

e) In the event the work involves professional engineering services, engineering design services, field inspection services, land survey work, construction management, environmental consulting or remedial investigation services, Consultant agrees to provide Professional Liability Insurance, -- $2,000,000 Annual Aggregate plus any applicable deductibles disclosed prior to execution of this Agreement. In addition, Consultant must maintain or demonstrate insurance for Consultant's or Subcontractor's tools, equipment, field offices, materials and other property located at a Project Site.

f) In the event the work involves construction or remedial construction, equipment installation or demolition activities, Consultant agrees to provide Contractor Pollution Liability (endorsed to provide coverage for all the work performed by or on behalf of GM ) -- $2,000,000 Per Occurrence, $5,000,000 Annual Aggregate. Said policy will not be limited or nullified due to the fact that a particular Project Site may be a "Superfund" Site subject to the Comprehensive Environmental Response, Compensation and Liability Act. In addition, Consultant must maintain or demonstrate insurance for Consultant's or Subcontractor's tools, equipment, tarpaulins, field offices or construction buildings, employees' tools and clothing, materials and other property which will not become a part of the permanent construction or be consumed on the Project Site.

g) In the event the work involves the treatment, storage or disposal of hazardous waste and/or non-hazardous waste, Consultant agrees to provide Pollution Legal Liability Insurance -- $1,000,000 per occurrence, $2,000,000 annual aggregate. Owners and Operators of surface impoundment, landfill or land treatment facilities must additionally maintain liability coverage for gradual (non-sudden) pollution incidents of at least $3,000,000 per occurrence, $6,000,000 annual aggregate. Policies combining coverage for both sudden and accidental and gradual occurrences must be at least $4,000,000 per occurrence ($1,000,000 sudden and $3,000,000 non-sudden), $8,000,000 annual aggregate ($2,000,000 sudden and $6,000,000 annual aggregate).

Consultant will furnish to GM Certificate(s) of Insurance within three (3) days from the date hereof. Said Certificate(s) will set forth the amount(s) of coverage, policy number(s) and date(s) of expiration for insurance maintained by the Consultant. In addition, such Certificate(s) will identify this Agreement in the "Description of Operations" section of the Certificate and will provide that GM will receive thirty (30) days prior written notification from the insurer of any termination or reduction in the amount or scope of coverage(s).

GM must be named as additional insured under all Consultant policies required hereunder except insurance for Workers Compensation and Professional Liability.

GM will maintain property insurance to cover the material and other property delivered to the project site which are to become a part of the permanent construction or are to be consumed on the site in the process of completing the work.

## 14. Intellectual Property and Confidential Information

Intellectual Property

All work product or material first developed by Consultant personnel in connection with any assignments undertaken on behalf of GM pursuant to this Agreement shall be promptly disclosed to GM and shall become the exclusive property of GM.  Consultant agrees to assign to GM all rights that Consultant may have in any work product or material first created by Consultant personnel under this Agreement, except as may be specifically excluded and agreed to by GM and Consultant.

Indemnification

Consultant agrees: (a) to defend, hold harmless and indemnify GM against all claims, demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) arising out of any suit, claim or action for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark, copyright or mask work right by reason of the manufacture, use or sale of the equipment, goods or services ordered, including infringement arising out of compliance with specifications furnished by GM, or for actual or alleged misuse or misappropriation of a trade secret resulting directly or indirectly from Consultant's actions unless such actions were at or under GM or its agent's direction; (b) to waive any claim against GM under the Uniform Commercial Code or otherwise, including any hold harmless or similar claim, in any way related to such a claim asserted against Consultant or GM for patent, trademark, copyright or mask work right infringement or the like, including claims arising out of compliance with specifications furnished by GM; and (c) to grant to GM a worldwide, non-exclusive, royalty-free, irrevocable license to repair and have repaired, to reconstruct and have reconstructed the goods ordered hereunder.  Consultant assigns to GM all right, title and interest in and to all trademarks, copyrights and mask work rights in any material first created for GM under this Agreement.

Licenses

No license to any other party, under any trademark, patent or copyright, or applications which are now or may thereafter be owned by such party, is either granted or implied by the conveying of information to that party.  None of the information which may be submitted or exchanged by the parties will constitute any representation, warranty, assurance, guarantee, or inducement by any party to another with respect to the infringement of trademarks, patents, copyrights, or any right or privacy or other rights of third persons.

Confidential Information

Consultant acknowledges that the Work is being conducted at the request of counsel as part of its legal analysis of GM's obligations to various governmental and other third parties.  Accordingly, the information Consultant is provided by or on behalf of GM in connection with the Work is confidential and is subject to the attorney client privilege and work product doctrine.

Consultant further acknowledges that it is subject to the Confidentiality Agreement attached hereto at Exhibit B.

<u>Acknowledgment of Confidentiality</u>

Upon request, Consultant agrees to request that individual's identified by the GM prepare and file with the Consultant an "Acknowledgment of Confidentiality," attached hereto as Exhibit C, and to provide a copy of all filed statements to GM.

<u>Technical Information</u>

Consultant agrees not to assert any claim (other than a claim for patent infringement) with respect to any technical information which Consultant shall have disclosed or may hereafter disclose to GM in connection with the services covered by this Agreement.

<u>Document Ownership, Submittal and Control</u>

Consultant agrees to maintain true and correct records in connection with the work or services performed hereunder and all transactions related thereto for a period of two (2) years from the date of the completion or expiration of this Agreement, or such longer time as may be required by law.

At the time of expiration, termination or cancellation of this Agreement, Consultant agrees to deliver to GM copies of all notes, computations, maps, tracings and all other documents and data pertaining to work or services performed hereunder, which material at all times will be the property of GM.  In the event GM cancels or terminates this Agreement, the Consultant will deliver all data and records pertaining to this Agreement to GM within ten (10) days of receipt of GM's notification of cancellation or termination.

Any and all documents furnished to Consultant by GM or GM's agents, subcontractors or representatives will not be used on other work and will remain the property of GM.

## 15. Privileged Information

Consultant acknowledges that it may create or receive information, documents and communications which will be subject to the Attorney-Client Privilege and/or Attorney Work Product doctrine.  Consultant agrees that, as an agent acting on behalf of GM,  it will not release such information, documents or communications to any third party without the consent of GM. Consultant agrees to take all actions reasonably required by GM to maintain the privileged status of any such documents or communications.

## 16. Setoff

In addition to any right of setoff provided by law, all amounts due Consultant shall be considered net of indebtedness of Consultant to GM; and GM may deduct any amounts due or to become due from Consultant to GM from any sums due or to become due from GM to Consultant.

**17. Advertising**

Consultant shall not, without first obtaining the written consent of GM, in any manner advertise or publish the fact that Consultant has contracted to perform the work herein, or use any trademarks or tradenames of GM in Consultant's advertising or promotional materials.  In the event of Consultant's breach of this provision, GM shall have the right to cancel this Agreement and shall not be required to make further payments except for services rendered prior to cancellation.

**18. Equal Opportunity and Affirmative Action**

This Agreement incorporates by reference: (a) all provisions of 41 C.F.R. 60-1.4, as amended, pertaining to the equal opportunity clause in government contracts; (b) all provisions of 41 C.F.R. 60-250, as amended, pertaining to affirmative action for disabled veterans of the Vietnam Era; and (c) all provisions of 41 C.F.R. 60-741, as amended, pertaining to affirmative action for handicapped workers.  Consultant certifies that it is in compliance with all applicable provisions of 41 C.F.R. 60-1, including but not limited to: (a) developing and presently having in full force and effect a written affirmative action compliance program for each of its establishments as required by 41 C.F.R. 60-1.40, as amended; (b) filing EEO-1 Reports as required by 41 C.F.R. 60-1.7, as amended; and (c) neither maintaining segregated facilities nor permitting its employees to perform services at segregated facilities as prohibited by 41 C.F.R. 60-1.8, as amended.  GM requests that Consultant adopt and implement a policy to extend employment opportunities to qualified applicants and employees on an equal basis regardless of an individual's age, race, color, sex, religion or national origin.

**19. No Implied Waiver**

The failure of either party at any time to require performance by the other party of any provision of this Agreement shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of the same or any other provision.

**20. Non-Assignment**

Consultant may not assign or delegate its obligations under this Agreement without GM's prior written consent.

**21. Relationship of Parties**

Consultant and GM are independent contracting parties and nothing in this Agreement shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

## 22. Governing law

This Agreement is to be construed according to the laws of the State of New York, notwithstanding the location where it may come up for interpretation, reformation, recission or cancellation, and regardless of the location of the work.  The venue of any action or legal proceeding filed by any party involving this Agreement will be the Bankruptcy Court, notwithstanding the location of the work or controversy.

## 23. Severability

This Agreement is to be construed according to the laws of the State of New York.  If any term of this Agreement is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Agreement shall remain in full force and effect.

## 24. Audit

GM reserves the right to audit and adjust the total payments made under this Agreement. Consultant must segregate its records in such a manner as to facilitate a complete audit and agrees that such audit may be used as the basis for settlement of charges against this Agreement. Consultant further agrees, for this purpose, to preserve all such documents for a period of three (3) years after final payment or acceptance.  This right to audit shall also apply to any charges resulting from cancellation for breach or termination.  Cancellation or termination charges shall be submitted in sufficient detail, together with adequate supporting information, to facilitate an audit by GM.

## 25. Conflict of Interest

Client Conflicts

Consultant agrees to limit or restrict the assignment of personnel performing work under this Agreement to avoid the creation of a conflict between the performance goals of GM and the performance goals of a non-GM client.

Personal Conflicts

Upon request, Consultant agrees to request that individual's identified by GM prepare and file with the Consultant a "Conflict of Interest Statement," in form and content as provided by GM, and to provide a copy of all filed statements to GM.

## 26. Assignment

GM reserves the right to assign this Agreement upon ten (10) days written notice to Consultant with Consultant's consent.  Consultant may not assign or delegate its obligations under this Agreement without GM's prior written consent.

**27. Health and Safety**

In the event the work involves field investigation or remedial action services, the Consultant agrees as follows:

a)  For operating sites (i.e., sites where GM employees are present), the Consultant agrees to prepare and abide by the Site Health and Safety provisions as referenced in the ENCORE "Health and Safety Planning and Operational Guidelines Manual" (November, 2001), and the Health and Safety provisions contained in the "General Motors Construction Terms and Conditions 1638" (April, 2000), including supplemental material relating to clearance for underground utilities.  Where these documents are in conflict, the Consultant agrees to immediately notify GM as to the presence of the conflict.  However, in no event shall the presence of conflicting provisions prevent the Consultant from preparing and implementing a Site Specific Health and Safety Plan, and to require it's Subcontractor's or Subconsultant's to prepare and implement a Health and Safety Plan.

b)  For non-operating sites (i.e., vacant land, or sites where no General Motors employees are present or operations have been discontinued), the Consultant agrees to prepare and abide by the Site Health and Safety provisions as referenced in the ENCORE "Health and Safety Planning and Operational Guidelines Manual" (November, 2001).  Consultant further agrees to require it's Subcontractor's or Subconsultant's to prepare and implement a Health and Safety Plan.

**28. Entire Agreement**

This Agreement, together with the other attachments, exhibits or supplements, specifically referenced herein constitute the entire Agreement between the parties with respect to the matter contained herein and supersedes all prior oral or written representations and Agreements.  This Agreement may only be modified in writing with the mutual consent GM and Consultant.


Date: June 10, 2009.

CONSULTANT                                              GENERAL MOTORS CORPORATION


Signed: _____          Signed: _____

Name & Title: _____          Name & Title: _____

Company: _____

## EXHIBIT A

## SCOPE OF WORK

Consultant will assist General Motors Corporation, debtor in possession ("Client") in its determination of costs of actual or potential environmental liabilities arising from General Motors pre-bankruptcy, historic operations ("Client Sites"). The scope of this work includes the following consulting activities to be performed by Consultant with the assistance of Client's personnel and legal counsel, and in coordination other consultants engaged to provide similar services:

- Reviewing Client's existing remedial/environmental and real estate site files, including but not limited to engineering reports, remedial action plans, agency correspondence, financial accounting reserve, site location information, tax records and regulatory financial assurance information and the like;

- Evaluating existing regulatory actions associated with Client's Sites;

- Assist in the development of potential future costs at site and portfolio levels using appropriate methodologies, including but not limited to probabilistic and deterministic estimating techniques;

- Assist in the review of potential future Site use and incorporate into site closure cost estimates as appropriate;

- Performing such other work as requested by Client from time to time in furtherance of assisting Client in its determination of the costs of actual or potential environmental liabilities arising from Client Sites.

- Consultant shall perform its work such that the total time expended by The Claro Group, is approximately 550 hours;

- Consultant shall not contact any regulator or any third party without the express written consent of Client's representative;

- Unless otherwise directed, Consultant will treat all information received and reviewed subject to the terms of a separate confidentiality agreement of the same date, and as "attorney client / attorney work product privileged communications," according to procedures established by Client;

- Consultant shall perform its works for a total cost of Consultant labor estimated as $185,000. This amount is a good faith estimate and not to be deemed a "not to exceed" amount. GM shall pay Consultant for all time reasonably incurred at GM's request in connection with this Scope of Work.

- ▪ All as determined by and coordinated with Client's representative, initially James M. Redwine.

Consultant will report to Client verbally from time to time, and at Client's direction, on the progress of the work and preliminary findings.  If requested by Client, Consultant will prepare a final written report on such forms as directed by Client.  Client acknowledges that Consultants' work is being performed on an expedited basis, may not include consideration of all potentially relevant factors, data or materials.  Consultant's scope of work does not include on-site investigation, generation of analytical chemical sampling data, verification or validation of existing data.  Consultant's Services involve only analysis of information and data as provided by Client or which is publicly available, and only for purposes of requesting funding for environmental liabilities.  Any cost projections or economic evaluations provided by Consultants will be made on the basis of experience and judgment, but, because Consultant has no control over market conditions, site management or bidding procedures, Consultant cannot warrant that bids, ultimate construction costs, project economics or potential exposures will not vary from these projections.  In no event shall Consultant or their subconsultants be responsible for reliance upon any erroneous, incomplete or incorrect data provided by Client to Consultants or its subconsultants.

EXHIBIT B
CONFIDENTIALITY AGREEMENT

General Motors Corporation, debtor in possession, and its subsidiaries (collectively, "GM") will be providing the consultant named below (the "Receiving Party") with certain confidential and proprietary business data, financial information and technical data related to the real properties that are intended to remain assets of General Motors Corporation ("GM Oldco") after the intended sale of other GM real properties to another entity ("GM Newco") in the bankruptcy proceeding under Chapter 11 Section 363 of the U.S. Bankruptcy Code for the sole purpose of facilitating the Receiving Party's review of GM's projected environmental costs associated with the GM Oldco real properties (the "Environmental Cost Review"). The Confidential Information is being evaluated by the Receiving Party at the request of counsel as part of its legal analysis of GM's obligations to various governmental and other third parties in connection with the GM Oldco real properties. Accordingly, the Confidential Information being reviewed, as well as any analysis of the Confidential Information, is subject to the attorney client privilege and work product doctrine. This Agreement is entered into by the Receiving Party for the benefit of GM and shall be effective as of June 10, 2009.

1.      Definition of Confidential Information. "Confidential Information" includes any information furnished to the Receiving Party by or on behalf of GM in connection with the Environmental Cost Review, including information furnished orally or in writing (regardless of the form or storage medium) or gathered by inspection, and regardless of whether such information is specifically identified as "confidential," "proprietary" or other similar designation, and all notes, reports, analyses, compilations, studies, files or other documents based on, containing or otherwise reflecting Confidential Information. By signing below, the Receiving Party agrees that it will keep GM's Confidential Information confidential, and that it only will use GM's Confidential Information for the purposes described above, and not for any other purposes.

2.      Restrictions on Disclosure. The Receiving Party further agrees not to disclose the Confidential Information to anyone other than its employees or agents who have a need to know the Confidential Information (collectively, its "Representatives"); GM; AlixPartners, LLP; outside counsel for GM at Weil, Gotshal & Manges LLP; and other environmental consultants retained by GM to assist in the Environmental Cost Review and specifically identified by GM as parties to whom the Receiving Party may make such disclosures. The Receiving Party will assure that anyone to whom the Confidential Information is disclosed will keep the Confidential Information confidential and will have any such person or entity execute the attached Acknowledgement of Confidentiality prior to any such disclosure. The Receiving Party shall provide GM with copies of all such executed Acknowledgement of Confidentiality forms. The Receiving Party will make all necessary and appropriate efforts to safeguard the Confidential Information received by it from disclosure to anyone other than as permitted in this Agreement.

3.      Ownership of Confidential Information; Destruction or Return. The Receiving Party acknowledges that the Confidential Information provided by GM shall remain GM's sole and exclusive property. At any time prior to the completion of the Environmental Cost Review,

or upon completion of the Environmental Cost Review, the Receiving Party will, at GM's discretion and at GM's direction, either destroy or return all documents and materials constituting Confidential Information furnished by GM, without retaining any copies.  In such an event, the Receiving Party also will, at GM's discretion and at GM's direction, either destroy or furnish GM with all documents, reports, analyses and other materials which it prepared or compiled based on the Confidential Information provided by GM.  The Receiving Party will provide GM with written verification of the destruction or return of all Confidential Information.

    4.    Governing Law; Jurisdiction and Venue.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to applicable principles of conflicts of law to the extent the application of the laws of another jurisdiction would be required thereby.  No amendments, changes or modifications may be made to this Agreement without the express written consent of each of the parties hereto.  If any term or provision of this agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms and provisions of this agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

Date: June 10, 2009.

CONSULTANT                                        GENERAL MOTORS CORPORATION


Signed: _____        Signed: _____

Name & Title: _____        Name & Title: _____

Company: _____

EXHIBIT C

ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _____, hereby acknowledge and agree that I have read the Confidentiality Agreement entered into by General Motors Corporation, debtor in possession, and _____. I understand the terms of the Agreement and I agree to keep confidential any and all information, whether written or verbal, provided to me under the Confidentiality Agreement; and further, that I will promptly destroy or return any and all information I have received as directed by General Motors Corporation.

RECEIPT AND ACCEPTANCE ACKNOWLEDGED:

By    _____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
In re                                                       :        **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                   :        **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*            :
                                                            :
                **Debtors.**                                :        **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND
FED. R. BANKR. P. 2014 AUTHORIZING THE RETENTION AND EMPLOYMENT
OF THE CLARO GROUP, LLC AS ENVIRONMENTAL CONSULTANTS
TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the Application, dated July 21, 2009 (the "**Application**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in

possession (collectively, the "**Debtors**"), pursuant to sections 327(a) and 328(a) of title 11,

United States Code ("**Bankruptcy Code**") and Rule 2014 of the Federal Rules of Bankruptcy

Procedure ("**Bankruptcy Rules**") for entry of an order authorizing the retention and employment

of The Claro Group ("**Claro Group**") as an environmental management and consulting services

provider, *nunc pro tunc* to the Commencement Date, as more fully described in the Application;

and upon consideration of the Affidavit of Douglas H. Deems, the General Counsel and a

Managing Director of Claro Group, sworn to July 21, 2009, filed in support of the Application, a

copy of which is attached to the Application as Exhibit A (the "**Deems Affidavit**"); and the

Court being satisfied, based on the representations made in the Application and the Deems

Affidavit, that Claro Group represents or holds no interest adverse to the Debtors or their estates

---
[1]        Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

and is disinterested under section 101(14) of the Bankruptcy Code; and due and proper notice of

the Application having been provided, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the Application is

in the best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code,

the Debtors are authorized to retain and employ Claro Group as their environmental management

and consulting services provider, *nunc pro tunc* to the Commencement Date, on the terms and

conditions generally described in the Application and set forth in the Engagement Letter; and it

is further

ORDERED that Claro Group shall apply for compensation and reimbursement of

expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy

Code, applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines

established by the U.S. Trustee, and such other procedures as may be fixed by order of this

Court; and it is further

ORDERED that Claro Group shall notify in writing this Court, the Debtors, the

U.S. Trustee, and any official committee of any change in the hourly rates charged by Claro

Group for services rendered; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.


Dated: New York, New York
_____, 2009


_____
United States Bankruptcy Judge