# EXHIBIT A

EAST\42502474.1

09-50026-mg    Doc 3372-1    Filed 07/24/09    Entered 07/24/09 14:48:29    Exhibit A
(Part 1 of 7)    Pg 1 of 10

FINAL INVOICE



**synovate**
Research reinvented

GM Financial Shared Services Acquisition Business Process
c/o Olimpic Receipting
PO Box 63490
Phoenix, AZ  85082-3490

gm.capital.invoicing@acs-inc.com

| | |
|---|---|
| Invoice No. | 141155 |
| Date | March 31, 2009 |
| P.O. No. | GMB07307 |
| Release No. | GMR88153 |
| GIC No. | |
| GM Project Manager | Amy Hietala |
| GM Proj. No. | 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 |
| SM Proj. No. | 2W36 |

## CVP SITE HOSTING Q1

| Sequence Item No. | Item ID No. | Description | Unit Price | U/M | Quantity | Amount |
|---|---|---|---|---|---|---|
| 00021 | SERV-20DC | Data Collection | 1,750.00 | EA | 1.00 | 1,750.00 |
| 00051 | 1416-00PT | Study Director | 57.92 | HR | 6.00 | 347.52 |
| 00054 | 1416-00PV | Data Manager | 62.37 | HR | 12.00 | 748.44 |

| TOTAL | | | | | | $2,845.96 |
|---|---|---|---|---|---|---|

**REMIT TO:**

**Check information**
Synovate, Inc.
37090 Eagle Way
Chicago, IL  60678-1370

**Bank wire information**
JP Morgan Chase Bank
1370 Avenue of the Americas
New York, NY  10019  USA
Routing Transit #071000013 (for ACH payments)
Routing Transit #021000021 (for wire transfers)
Account # 5330186110
Swift ID# CHASUS33
Account name: Synovate

Synovate Motoresearch  306 S. Washington Ave., Suite 500, Royal Oak, MI  48067
Phone:  248-541-5311  Fax:  248-541-5321

General Motors Indirect - Purchase Order

| Buyer: 10001P01 | Seller: 046583027 |
|---|---|
| GENERAL MOTORS - ABP GROUP | SYNOVATE INC |
| 2000 CENTERPOINT PKWY. | |
| M/C 483-520-160 | 222 S RIVERSIDE PLZ |
| PONTIAC, MI 48341 | |
| Contact Info: G WFG-ABP (TE) XXXXXXXXXXXXX | CHICAGO, IL 60606 |

| Ship To: 10001REN | Bill To: 10001I01 |
|---|---|
| GM RENAISSANCE CENTER | INVOICE FOR SERVICE, MACHINERY |
| | & EQUIP ONLY. QUESTIONS TO: |
| TOWER 100 & 200 | CUSTOMER SERVICE 248/874/4636 |
| NORTH DOCK 13'2" CLEARANCE | MAIL INVOICE TO:GM FSS ABP |
| FRANKLIN STREET RAMP | P.O.BOX 63490, PHOE, AZ |
| DETROIT, MI 48243 | 850823490 |

| Purchase Order: GMB07307 | Type: Release (Blanket Order) | Currency: |
|---|---|---|
| Purchase Order Date: 01/15/09 | Release Number: GMR88153 | Shipment Method: |
| Purpose Code: Original | Reference Number: GMB07307 | FOB: |

Notes:
PR: PR466388    PROJECT:. 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 - CVP SITE HOSTING Q1**PR466388. 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 / /. INVOICE
TO: SEE SHIP TO INFORMATION. REQUESTER: BARBARA HOGAN, (313) 665-8186. DELIVER TO: BARBARA HOGAN. 100
RENAISSANCE CENTER. DETROIT, MI 48265-1000 MC: 482-A17-D96

| Sequence | Part Number | Quantity | Due Date | Unit Price | Reference |
|---|---|---|---|---|---|
| 000021: | SERV-20DC | 1750 EA | 01/31/09 | | SERV-20DC |

Notes: SERVICE. DATA COLLECTION. TAX CODE: H    TAX PERCENT: 0.00%. WHO ORDERED: HOGAN (313) 665-8186

| 000051: | 1416-00PT | 6 HR | 01/31/09 | | 1416-00PT |

Notes: PROF SERVICES. STUDY DIRECTOR. TAX CODE: H    TAX PERCENT: 0.00%. WHO ORDERED: HOGAN (313) 665-8186

| 000054: | 1416-00PV | 12 HR | 01/31/09 | | 1416-00PV |

Notes: PROF SERVICES. DATA MANAGER. TAX CODE: H    TAX PERCENT: 0.00%. WHO ORDERED: HOGAN (313) 665-8186

GM

09-50026-mg    Doc 3372-1    Filed 07/24/09    Entered 07/24/09 14:48:29    Exhibit A
(Part 1 of 7)    Pg 4 of 10

PT. Synovate
17th floor, Menara Jamsostek
Jl. Jend. Gatot Subroto no. 38
Jakarta 12790, Indonesia

Phone (62-21) 2525 608
Fax (62-21) 2525 609
www.synovate.com



synovate

Research reinvented

# INVOICE

GM Financial Shared Services Acquisition Business Process

c/o OLIMPIC RECEIPTING
PO BOX 63490
Phoenix , AZ 85082-3490

| | |
|---|---|
| Customer ID | G803 |
| Invoice No | 005723 |

Ref    090241JKT0RSH00

| | |
|---|---|
| Invoice Date | May 13, 2009 |
| P.O.No | GMS33715 |

| Description | Amount (USD) |
|---|---|
| Project:    India J-V SUV Evaluation(Indonesia) - Main Supplier<br><br>To Charge Venue Cost for Project   India J-V SUV Evaluation(Indonesia) - Main Supplier<br>* Project Number : L13-09-6104<br>* Line Item ID Number : PRYX5285<br>* GIC Number : 2008-388<br>Synovate Professional Fee: USD 84,710.00<br><br>1 ST 31,32% | 26,532.00 |
| **Total Payment**<br>Total payable WITHIN 30 days from the invoice date | 26,532.00 |

* All invoice are due for settlement within 90 days of invoice date unless otherwise specified and agreed in writing in advance. Invoice paid after expiry of the agreed period may be charged interest at 3.75% above Synovate's local bank base rate for each day outstanding.

* Payments should be made directly to our Bank by Telegraphic Transfer (TT) at

  Citibank N.A                                  Swift Code: CITIIDJX
  Kyoei Prince Building, Jl. Jend. Sudirman Kav. 3-4, Jakarta 10220
  Payable to : PT. SYNOVATE
  Account no : 800-5260608
  Quoting message "Call 2525-608 Accounts Dept to advise remittance"

* Please quote our invoice number in your payment details
* Unless stated above our invoice amount is exclusive of all taxes.
** Please withhold 2% of the invoice amount exclusive of VAT    **

For and on behalf
of PT. Synovate

_____
Authorised Signature

PT. Synovate
17th floor, Menara Jamsostek
Jl. Jend. Gatot Subroto no. 38
Jakarta 12790, Indonesia

Phone (62-21) 2525 608
Fax (62-21) 2525 609
www.synovate.com

## INVICE

**synovate**
Research reinvented

GM Financial Shared Services Acquisition Business Process

c/o OLIMPIC RECEIPTING
PO BOX 63490
Phoenix, AZ 85082-3490

| | |
|---|---|
| Customer ID | G803 |
| Invoice No | 005735 |
| Invoice Date | May 18, 2009 |
| P.O.No | GMS33715 |

Ref    090241JKT0RSH00

| Description | Amount (USD) |
|---|---|
| Project:    India J-V SUV Evaluation(Indonesia) - Main Supplier<br><br>To Charge Direct Cost for Project    India J-V SUV Evaluation(Indonesia) - Main Supplier<br>\* Project Number : L13-09-6104<br>\* Line Item ID Number : PRYX5285<br>\* GIC Number : 2008-388<br>Synovate Professional Fee: USD 84,710.00<br><br>2 nd 21% | 16,617.50 |
| **Total Payment**<br>Total payable WITHIN 30 days from the invoice date | 16,617.50 |

* All invoice are due for settlement within 90 days of invoice date unless otherwise specified and agreed in writing in advance. Invoice paid after expiry of the agreed period may be charged interest at 3.75% above Synovate's local bank base rate for each day outstanding.

* Payments should be made directly to our Bank by Telegraphic Transfer (TT) at

    Citibank N.A                                  Swift Code: CITIIDJX
    Kyoei Prince Building, Jl. Jend. Sudirman Kav. 3-4, Jakarta 10220
    Payable to : PT. SYNOVATE
    Account no : 800-5260608
    Quoting message "Call 2525-608 Accounts Dept to advise remittance"

* Please quote our invoice number in your payment details
* Unless stated above our invoice amount is exclusive of all taxes.
** Please withhold 2% of the invoice amount exclusive of VAT    **

For and on behalf
of PT. Synovate

_____
Authorised Signature

PT. Synovate  
17th floor, Menara Jamsostek  
Jl. Jend. Gatot Subroto no. 38  
Jakarta 12790, Indonesia  

Phone (62-21) 2525 608  
Fax (62-21) 2525 609  
www.synovate.com



synovate  
Research reinvented

## INVOICE

GM Financial Shared Services Acquisition Business Process

c/o OLIMPIC RECEIPTING  
PO BOX 63490  
Phoenix, AZ 85082-3490

| | |
|---|---|
| Customer ID | G803 |
| Invoice No | 005742 |

**Ref**   090241JKT0RSH00

| | |
|---|---|
| Invoice Date | May 25, 2009 |
| P.O.No | GMS33715 |

| Description | Amount (USD) |
|---|---|
| Project:   India J-V SUV Evaluation(Indonesia) - Main Supplier<br><br>To Charge Consultation Fee for   India J-V SUV Evaluation(Indonesia) - Main Supplier<br>* Project Number : L13-09-6104<br>* Line Item ID Number : PRYX5285<br>* GIC Number : 2008-388<br>Synovate Professional Fee: USD 84,710.00<br><br>Final<br>* We will give you 3% discount of your entire invoices if you settle the payment within two weeks upon receive the Invoice ( or before 15 June '09 ). | 41,560.50 |
| **Total Payment**<br>Total payable WITHIN 30 days from the invoice date | 41,560.50 |

* All invoice are due for settlement within 90 days of invoice date unless otherwise specified and agreed in writing in advance. Invoice paid after expiry of the agreed period may be charged interest at 3.75% above Synovate's local bank base rate for each day outstanding.

* Payments should be made directly to our Bank by Telegraphic Transfer (TT) at

  Citibank N.A                               Swift Code: CITIIDJX  
  Kyoei Prince Building, Jl. Jend. Sudirman Kav. 3-4, Jakarta 10220  
  Payable to : PT. SYNOVATE  
  Account no : 800-5260608  
  Quoting message "Call 2525-608 Accounts Dept to advise remittance"

* Please quote our invoice number in your payment details
* Unless stated above our invoice amount is exclusive of all taxes.
** Please withhold 2% of the invoice amount exclusive of VAT   **

For and on behalf  
of PT. Synovate



_____  
Authorised Signature

# GM General Motors Corporation

## PURCHASE ORDER: GMS33715

PAGE 1

GENERAL MOTORS CORPORATION
GLOBAL PURCHASING
30009 VAN DYKE
FAX 602-797-6053
WARREN MI
48090    US

**SHIP TO:** SEE BODY OF PURCHASE ORDER FOR SHIPPING ADDRESS
. . . . . . . 00000 . . . . . . . US

**INVOICE TO:** INVOICE FOR SERVICE, MACHINERY & EQUIP ONLY. QUESTIONS TO: CUSTOMER SERVICE 248/874/4636
MAIL INVOICE TO: GM FSS ABP
P.O. BOX 63490, PHOENIX AZ
85082-3490    US

**VENDOR NUMBER** 72-886-6757
PT SYNOVATE
MENARA JAMSOSTEK LT 17 JL GATO
SUBROTO NO 38
JAKARTA SELATAN INDONESIA ID
12790
INDONESIA

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| ORDER DATE | ALTERATION ISSUE DATE | ALTERATION EFFECTIVE DATE | PHONE: 586-492-8436 |
|---|---|---|---|
| 04/16/09 | | | J. NAIR   Buyer   Z2 |

**SHIP VIA:** REFER TO WWW.GMSHIPPING.COM
**PURCHASING AGENT**

**F.O.B:** FRIEGHT COLLECT    DESTINATION UNLESS OTHERWISE INDICATED

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

**PAYMENT TERMS:** NET NET 60 DAYS

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | | | | | |
| | | | | RECRUIT 200 RESPONDENTS AND FIELD A MPV RESEARCH GM KEY POINT: MIN-JIA J HU 586-859-9255 | | | | | | |
| | | | | THE PAYMENT TERMS OTHERWISE SET FORTH HEREIN ARE MODIFIED AS FOLLOWS: THE PAYMENT DATE SHALL BE NET 60, WITH DISBURSEMENTS OCCURRING ON A WEEKLY PAYMENT CYCLE. PAYMENT WILL BE TRIGGERED UPON BUYER'S RECEIPT OF (A) GOODS OR (B) A VALID INVOICE. | | | | | | |
| 00001 | 84710 | PRYX5285 001 | | RECRUIT 200 RESPONDENTS AND FIELD A MPV RESEARCH CLINIC IN JAKARTA, INDONESIA MIN-JIA J HU 586-859-9255 DELIVER TO: N/A , WHO ORDERED: HU 586-859-9255 ADDITIONAL PROVISIONS FOR NON-TECHNICAL SERVICES 1. PROVISION OF SERVICES; STANDARD OF WORKMANSHIP SELLER AGREES TO PROVIDE SERVICES TO BUYER IN ACCORDANCE WITH THE TERMS OF THIS CONTRACT AND THE STATEMENT OF REQUIREMENTS, WHICH HAS BEEN PROVIDED TO | | 03/27/09 | H  0.00% | | 1.0000 | UNIT |

A007301    USER GREG VENKATES    ORIGINAL    CONTINUE PAGE 2    CHMM08 4/93

## GENERAL TERMS AND CONDITIONS

**1. ACCEPTANCE:**
Seller has read and understands this contract and agrees that Seller's written acceptance or commencement of any work or services under this contract shall constitute Seller's acceptance of these terms and conditions only.

**2. SHIPPING AND BILLING:**
Seller agrees: (a) to properly pack, mark and ship goods in accordance with the requirements of Buyer, the involved carriers, and, if applicable, the country of destination; (b) to route shipments in accordance with Buyer's instructions; (c) to make no charge for handling, packaging, storage or transportation of goods, unless otherwise stated as an item on this contract; (d) to provide with each shipment packing slips with Buyer's contract and/or release number and date of shipment marked thereon; (e) to properly mark each package with a label/tag according to Buyer's instructions; (f) to promptly forward the original bill of lading or other shipping receipt for each shipment in accordance with Buyer's instructions. Seller will include on bills of lading or other shipping receipts correct classification identification of the goods shipped in accordance with Buyer's instructions and the carrier's requirements. The marks on each package and identification of the goods on packing slips, bills of lading and invoices (when required) shall be sufficient to enable Buyer to easily identify the goods purchased. Seller further agrees: (a) to accept payment based upon Buyer's Evaluated Receipt Record/Self Billed Invoice, unless an invoice is requested by Buyer; and (b) to accept payment by electronic funds transfer. The payment date is set forth in the Line Item Detail of this contract, or if not stated, shall be the date established by Buyer's Multilateral Netting System (MNS-2), which provides, on average, that payment shall be made on the second day of the second month following, in the case of the Buyer's North American facilities, Seller's shipment date of goods or date of services, and, for all of Buyer's other locations, Buyer's receipt date of the goods or date of services. Buyer may withhold payment pending receipt of evidence, in such form and detail as Buyer may direct, of the absence of any liens, encumbrances and claims on the goods or services under this contract.

**3. DELIVERY SCHEDULES:**
Time is of the essence, and deliveries shall be made both in quantities and at times specified in Buyer's schedules. Buyer shall not be required to make payment for goods delivered to Buyer that are in excess of quantities specified in Buyer's delivery schedules. Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments, neither of which shall entitle Seller to a modification of the price for goods or services covered by this contract. Where quantities and/or delivery schedules are not specified, Seller shall deliver goods in such quantities and times as Buyer may direct in subsequent releases.

**4. PREMIUM SHIPMENTS:**
If Seller's acts or omissions result in Seller's failure to meet Buyer's delivery requirements and Buyer requires a more expeditious method of transportation for the goods than the transportation method originally specified by Buyer, Seller shall ship the goods as expeditiously as possible at Seller's sole expense.

**5. CHANGES:**
Buyer reserves the right at any time to direct changes, or cause Seller to make changes, to drawings and specifications of the goods or to otherwise change the scope of the work covered by this contract including work with respect to such matters as inspection, testing or quality control, and Seller agrees to promptly make such changes. Any difference in price or time for performance resulting from such changes shall be equitably adjusted by Buyer after receipt of documentation in such form and detail as Buyer may direct. Any changes to this contract shall be made in accordance with Paragraph 31.

**6. SUPPLIER QUALITY AND DEVELOPMENT; INSPECTION:**
Seller agrees to participate in Buyer's supplier quality and development program(s) and to comply with all quality requirements and procedures specified by Buyer, as revised from time to time, including those applicable to Seller as set forth in Quality System Requirements QS-9000. In addition, Buyer shall have the right to enter Seller's facility at reasonable times to inspect the facility, goods, materials and any property of Buyer covered by this contract. Buyer's inspection of the goods, whether during manufacture, prior to delivery or within a reasonable time after delivery, shall not constitute acceptance of any work-in-process or finished goods.

**7. NONCONFORMING GOODS:**
Seller acknowledges that Buyer will not perform incoming inspections of the goods, and waives any rights to require Buyer to conduct such inspections. To the extent Buyer rejects goods as nonconforming, the quantities under this contract will automatically be reduced unless Buyer otherwise notifies Seller. Seller will not replace quantities so reduced without a new contract or schedule from Buyer. Nonconforming goods will be held by Buyer in accordance with Seller's instructions at Seller's risk. Seller's failure to provide written instructions within 10 days, or such shorter period as may be commercially reasonable under the circumstances, after notice of nonconformity shall entitle Buyer, at Buyer's option, to charge Seller for storage and handling or to dispose of the goods without liability to Seller. Payment for nonconforming goods shall not constitute an acceptance of them, limit or impair Buyer's right to assert any legal or equitable remedy, or relieve Seller's responsibility for latent defects.

**8. FORCE MAJEURE:**
Any delay or failure of either party to perform its obligations shall be excused if Seller is unable to produce, sell or deliver, or Buyer is unable to accept delivery, buy or use, the goods or services covered by this contract, as the result of an event or occurrence beyond the reasonable control of the party and without its fault or negligence, including, but not limited to, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), inability to obtain power, material, labor equipment or transportation, or court injunction or order; provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the affected party to the other party as soon as possible after the event or occurrence (but in no event more than 10 days thereafter). During the period of such delay or failure to perform by Seller, Buyer, at its option, may purchase goods and services from other sources and reduce its schedules to Seller by such quantities, without liability to Seller, or have Seller provide the goods and services from other sources in quantities and at times requested by Buyer, and at the price set forth in this contract. In addition, Seller at its expense shall take such actions as are necessary to ensure the supply of goods and services to Buyer for a period of at least 30 days during any anticipated labor disruption or resulting from the expiration of Seller's labor contract(s). If requested by Buyer, Seller shall, within 10 days, provide adequate assurances that the delay shall not exceed 30 days. If the delay lasts more than 30 days or Seller does not provide adequate assurance that the delay will cease within 30 days, Buyer may immediately terminate this contract without liability.

**9. WARRANTY:**
Seller warrants/guarantees that the goods covered by this contract will conform to the specifications, drawings, samples, or descriptions furnished to or by Buyer, and will be merchantable, of good material and workmanship and free from defect. In addition, Seller acknowledges that Seller knows of Buyer's intended use and warrants/guarantees that all goods covered by this contract that have been selected, designed, manufactured or assembled by Seller based upon Buyer's stated use will be fit and sufficient for the particular purposes intended by Buyer. The warranty period shall be that provided by applicable law, except that if Buyer offers a longer warranty to its customers for goods installed on vehicles, such longer period shall apply.

**10. INGREDIENTS DISCLOSURE; SPECIAL WARNINGS AND INSTRUCTIONS:**
If requested by Buyer, Seller shall promptly furnish to Buyer in such form and detail as Buyer may direct: (a) a list of all ingredients in the goods; (b) the amount of all ingredients; and (c) information concerning any changes in or additions to such ingredients. Prior to and with the shipment of the goods, Seller agrees to furnish to Buyer sufficient warning and notice in writing (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with such special handling instructions as may be necessary to advise carriers, Buyer, and their respective employees of how to exercise that measure of care and precaution that will best prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing shipped to Buyer.

**11. INSOLVENCY:**
Buyer may immediately terminate this contract without liability to Seller in any of the following or any other comparable events: (a) insolvency of Seller; (b) filing of a voluntary petition in bankruptcy by Seller; (c) filing of any involuntary petition in bankruptcy against Seller; (d) appointment of a receiver or trustee for Seller; or (e) execution of an assignment for the benefit of creditors by Seller, provided that such petition, appointment or assignment is not vacated or nullified within 15 days of such event. Seller shall reimburse Buyer for all costs incurred by Buyer in connection with any of the foregoing, including, but not limited to, all attorney's or other professional fees.

**12. TERMINATION FOR BREACH OR NONPERFORMANCE; SALE OF ASSETS OR CHANGE IN CONTROL:**
Buyer reserves the right to terminate all or any part of this contract, without liability to Seller, if Seller: (a) repudiates or breaches any of the terms of this contract, including Seller's warranties; (b) fails to perform services or deliver goods as specified by Buyer; (c) fails to make progress so as to endanger timely and proper completion of services or delivery of goods; and does not correct such failure or breach within 10 days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from Buyer specifying such failure or breach. In addition, Buyer may terminate this contract upon giving at least 60 days notice to Seller, without liability to Seller, if Seller (i) sells, or offers to sell, a material portion of its assets, or (ii) sells or exchanges, or offers to sell or exchange, or causes to be sold or exchanged, a sufficient amount of its stock that effects a change in the control of Seller.

**13. TERMINATION FOR CONVENIENCE:**
In addition to any other rights of Buyer to terminate this contract, Buyer may, at its option, immediately terminate all or any part of this contract, at any time and for any reason, by giving written notice to Seller. Upon such termination, Buyer shall pay to Seller the following amounts without duplication: (a) the contract price for all goods or services that have been completed in accordance with this contract and not previously paid for; and (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this contract; less, however, the sum of the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent, and the cost of any damaged or destroyed goods or material. Buyer will make no payments for finished goods, services, work-in-process or raw materials fabricated or procured by Seller in amounts in excess of those authorized in delivery releases nor for any undelivered goods that are in Seller's standard stock or that are readily marketable. Payments made under this Paragraph shall not exceed the aggregate price payable by Buyer for finished goods or services that would be produced or performed by Seller under delivery or release schedules outstanding at the date of termination. Except as provided in this Paragraph, Buyer shall not be liable for and shall not be required to make payments to Seller, directly or on account of claims by Seller's subcontractors, for loss of anticipated profit, unabsorbed overhead, interest on claims, product development and engineering costs, facilities and equipment rearrangement costs or rental, unamortized depreciation costs, or general and administrative burden charges from termination of this contract. Within 60 days from the effective date of termination, Seller shall submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit Buyer's audit, and shall thereafter promptly furnish such supplemental and supporting information as Buyer shall request. Buyer or its agents shall have the right to audit and examine all books, records, facilities, work, material, inventories and other items relating to any termination claim of Seller.

**14. INTELLECTUAL PROPERTY:**
Seller agrees: (a) to defend, hold harmless and indemnify Buyer, its successors and customers against any claims of infringement (including patent, trademark, copyright, industrial design right, or other proprietary right, or misuse or misappropriation of trade secret) and resulting damages and expenses (including attorney's and other professional fees) arising in any way in relation to the goods or services contracted, including such claims where Seller has provided only part of the goods or services; Seller expressly waives any claim against Buyer that such infringement arose out of compliance with Buyer's specification; (b) that Buyer or Buyer's subcontractor has the right to repair, reconstruct, or rebuild the specific goods delivered under this contract without payment of any royalty to Seller; (c) that parts manufactured based on Buyer's drawings and/or specifications may not be used for its own use or sold to third parties without Buyer's express written authorization; and (d) to the extent that this contract is issued for the creation of copyrightable works, the works shall be considered "works made for hire;" to the extent that the works do not qualify as "works made for hire," Seller hereby assigns to Buyer all right, title and interest in all copyrights and moral rights therein.

**15. TECHNICAL INFORMATION DISCLOSED TO BUYER:**
Seller agrees not to assert any claim (other than a claim for patent infringement) with respect to any technical information that Seller shall have disclosed or may hereafter disclose to Buyer in connection with the goods or services covered by this contract.

**16. INDEMNIFICATION:**
If Seller performs any work on Buyer's premises or utilizes the property of Buyer, whether on or off Buyer's premises, Seller shall indemnify and hold Buyer harmless from and against any liability, claims, demands or expenses (including attorney's and other professional fees) for damages to the property of or injuries (including death) to Buyer, its employees or any other person arising from or in connection with Seller's performance of work or use of Buyer's property, except for such liability, claim, or demand arising out of the sole negligence of Buyer.

**17. INSURANCE:**
Seller shall maintain insurance coverage with carriers acceptable to Buyer and in the amounts set forth in the Special Terms. Seller shall furnish to Buyer either a certificate showing compliance with these insurance requirements or certified copies of all insurance policies within 10 days of Buyer's written request. The certificate will provide that Buyer will receive 30 days' prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. Seller's furnishing of certificates of insurance or purchase of insurance shall not release Seller of its obligations or liabilities under this contract.

**18. SELLER'S PROPERTY:**
Unless otherwise agreed to by Buyer, Seller, at its expense, shall furnish, keep in good condition, and replace when necessary all machinery, equipment, tools, jigs, dies, gauges, fixtures, molds, patterns and other items ("Seller's Property") necessary for the production of the goods. The cost of changes to Seller's Property necessary to make design and specification changes authorized by Buyer shall be paid for by Buyer. Seller shall insure Seller's Property with full fire and extended coverage insurance for its replacement value. Seller grants Buyer an irrevocable option to take possession of and title to Seller's Property upon payment to Seller of its net book value less any amounts that Buyer has previously paid to Seller for the cost of such items; provided, however, that this option shall not apply if Seller's Property is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others.

**19. BUYER'S PROPERTY:**
All supplies, materials, tools, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items furnished by Buyer, either directly or indirectly, to Seller to perform this contract, or for which Seller has been reimbursed by Buyer, shall be and remain the property of Buyer and held by Seller on a bailment basis ("Buyer's Property"). Seller shall bear the risk of loss of and damage to Buyer's Property. Buyer's Property shall at all times be properly housed and maintained by Seller, at its expense, shall not be used by Seller for any purpose other than the performance of this contract; shall be deemed to be personalty; shall be conspicuously marked by Seller as the property of Buyer; shall not be commingled with the property of Seller or with that of a third person; and shall not be moved from Seller's premises without Buyer's prior written approval. Buyer shall have the right to enter Seller's premises at all reasonable times to inspect such property and Seller's records with respect thereto. Upon the request of Buyer, Buyer's Property shall be immediately released to Buyer or delivered to Buyer by Seller, either (i) F.O.B. transport equipment at Seller's plant, properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such property, or (ii) to any location designated by Buyer, in which event Buyer shall pay to Seller the reasonable costs of delivering such property to such location. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on any of Buyer's Property for work performed on such property or otherwise.

**20. SERVICE AND REPLACEMENT PARTS:**
Seller will sell to Buyer goods necessary for it to fulfil its current model service and replacement parts requirements at the price(s) set forth in this contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that shall not, in the aggregate, exceed the price of the system or module less assembly costs. During the 15-year period after Buyer completes current model purchases, Seller will sell goods to Buyer to fulfil Buyer's past model service and replacement parts requirements. Unless otherwise agreed to by Buyer, the price(s) during the first 3 years of this period shall be those in effect at the conclusion of current model purchases. For the remainder of this period, the price(s) for goods shall be as agreed to by the parties. When requested by Buyer, Seller shall make service literature and other materials available at no additional charge to support Buyer's service part sales activities.

**21. REMEDIES:**
The rights and remedies reserved to Buyer in this contract shall be cumulative with, and additional to, all other or further remedies provided in law or equity. Without limiting the foregoing, should any goods fail to conform to the warranties set forth in Paragraph 9, Buyer shall notify Seller and Seller shall, if requested by Buyer, reimburse Buyer for any incidental and consequential damages caused by such nonconforming goods, including, but not limited to, costs, expenses and losses incurred by Buyer (a) in inspecting, sorting, repairing or replacing such nonconforming goods; (b) resulting from production interruptions, (c) conducting recall campaigns or other corrective service actions, and (d) claims for personal injury (including death) or property damage caused by such nonconforming goods. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for nonconforming goods.

**22. CUSTOMS; EXPORT CONTROLS:**
Credits or benefits resulting or arising from this contract, including trade credits, export credits or the refund of duties, taxes or fees, shall belong to Buyer. Seller shall provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive such benefits or credits, as well as to fulfil its customs related obligations, origin marking or labelling requirements and local content origin requirements, if any. Export licenses or authorizations necessary for the export of the goods shall be the responsibility of Seller unless otherwise indicated in this contract, in which event Seller shall provide such information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller shall undertake such arrangements as necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

**23. SETOFF/RECOUPMENT:**
In addition to any right of setoff or recoupment provided by law, all amounts due to Seller shall be considered net of indebtedness of Seller and its affiliates/subsidiaries to Buyer and its affiliates/subsidiaries; and Buyer shall have the right to setoff against or to recoup from any amounts due to Seller and its affiliates/subsidiaries from Buyer and its affiliates/subsidiaries.

**24. NO ADVERTISING:**
Seller shall not, without first obtaining the written consent of Buyer, in any manner advertise or publish the fact that Seller has contracted to furnish Buyer the goods or services covered by this contract, or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials.

**25. COMPLIANCE WITH LAWS; EMPLOYMENT/BUSINESS PRACTICES:**
Seller, and any goods or services supplied by Seller, shall comply with all applicable laws, rules, regulations, orders, conventions, ordinances or standards of the country(ies) of destination that relate to the manufacture, labelling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, data protection and privacy, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Seller further represents that neither it nor any of its subcontractors will utilize child, slave, prisoner or any other form of forced or involuntary labor, or engage in abusive employment or corrupt business practices, in the supply of goods or provision of services under this contract. At Buyer's request, Seller shall certify in writing its compliance with the foregoing. Seller shall indemnify and hold Buyer harmless from and against any liability claims, demands or expenses (including attorney's or other professional fees) arising from or relating to Seller's non-compliance.

**26. NO IMPLIED WAIVER:**
The failure of either party at any time to require performance by the other party of any provision of this contract shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this contract constitute a waiver of any succeeding breach of the same or any other provision.

**27. NON-ASSIGNMENT:**
Unless otherwise specifically prohibited by applicable law, Seller may not assign or delegate its rights or obligations under this contract without Buyer's prior written consent.

**28. RELATIONSHIP OF PARTIES:**
Seller and Buyer are independent contracting parties and nothing in this contract shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

**29. GOVERNING LAW; JURISDICTION:**
This contract is to be construed according to the laws of the country (and state/province, if applicable) from which this contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any conflict of law provisions that would require application of another choice of law. Any action or proceedings by Buyer against Seller may be brought in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this contract is issued.

**30. SEVERABILITY:**
If any term(s) of this contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such term(s) shall be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this contract shall remain in full force and effect.

**31. ENTIRE AGREEMENT:**
This contract, together with the attachments, exhibits, supplements or other terms of Buyer specifically referenced in this contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this contract and supersedes all prior oral or written representations and agreements. This contract may only be modified by a contract amendment issued by Buyer.

Revised: September 2004

# General Motors Corporation

## PURCHASE ORDER: GMS33715

PAGE 2

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| ORDER DATE | ALTERATION ISSUE DATE | ALTERATION EFFECTIVE DATE | PHONE: 586-492-8436 |
|---|---|---|---|
| 04/16/09 | | | J. NAIR |
| | | | Z2    Buyer |

SHIP VIA
REFER TO WWW.GMSHIPPING.COM

**GENERAL MOTORS CORPORATION**
GLOBAL PURCHASING
30009 VAN DYKE
FAX 602-797-6053
WARREN MI
48090    US

SHIP TO: SEE BODY OF PURCHASE ORDER FOR SHIPPING ADDRESS

VENDOR NUMBER 72-886-6757

TO: PT SYNOVATE
MENARA JAMSOSTEK LT 17 JL GATO
SUBROTO NO 38
JAKARTA SELATAN INDONESIA ID
12790
INDONESIA

INVOICE TO: 00000    US
INVOICE FOR SERVICE, MACHINERY & EQUIP ONLY. QUESTIONS TO:
CUSTOMER SERVICE 248/874/4636
MAIL INVOICE TO: GM FSS ABP
P.O.BOX 63490, PHOENIX AZ
85082-3490    US

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| PAYMENT TERMS | F.O.B | DESTINATION UNLESS OTHERWISE INDICATED |
|---|---|---|
| NET  NET 60 DAYS | FREIGHT COLLECT | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | SELLER AND IS INCORPORATED INTO THIS CONTRACT BY REFERENCE ("SERVICES"). SERVICES WILL BE PERFORMED BY COMPETENT PERSONNEL, AND WILL BE OF PROFESSIONAL QUALITY, CONSISTENT WITH GENERALLY ACCEPTED INDUSTRY STANDARDS FOR THE PERFORMANCE OF SUCH SERVICES. SELLER WILL ENSURE THAT IT HAS ALL NECESSARY RESOURCES TO PROVIDE THE SERVICES, INCLUDING, WITHOUT LIMITATION, PROPERLY TRAINED AND LICENSED PERSONNEL, MACHINERY, EQUIPMENT AND MATERIALS. 2. PAYMENT FOR SERVICES; EXPENSES SELLER WILL BE PAID AS SET FORTH IN THIS CONTRACT, BUT SUCH PAYMENTS MAY NOT EXCEED THE PRICE ESTIMATE STATED IN THIS CONTRACT WITHOUT BUYER'S WRITTEN APPROVAL. BUYER WILL ALSO REIMBURSE ANY REASONABLE AND NECESSARY OUT-OF-POCKET TRAVEL COSTS IN ACCORDANCE WITH BUYER'S TRAVEL GUIDELINES (A COPY OF WHICH HAS BEEN RECEIVED BY SELLER), AS WELL AS THE COST OF ANY APPROVED SUBCONTRACTED SERVICES. ALL SUCH COSTS MUST BE PREVIOUSLY APPROVED BY BUYER IN WRITING AND WILL BE BILLED WITHOUT MARK-UP. PRICES SHOWN IN THIS CONTRACT ARE EXCLUSIVE OF VALUE ADDED TAX (VAT). WHEN VAT IS CHARGED BY SELLER, SELLER MUST PROVIDE AN ORIGINAL INVOICE ISSUED TO THE BUYER, ITEMIZING VAT AS A SEPARATE LINE ITEM. | | | | | | |

CONTINUE PAGE 3

A007301    USER GREG VENKATES    ORIGINAL    CHMM08 4/93