SECTION 6.04. PROCEEDINGS BY SECURITYHOLDERS. No Holder of any Security of any series or of any Coupon appertaining thereto shall have any right by virtue or by availing of any provision of this Indenture to institute any action or proceedings at law or in equity or in bankruptcy or otherwise, upon or under or with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of not less than twenty-five percent in aggregate principal amount of the Securities of such series then outstanding or, in the case of any Event of Default described in clause (d) or (e) of Section 6.01, twenty-five per cent in aggregate principal amount of all the Securities at the time outstanding (voting as one class) shall have made written request upon the Trustee to institute such action or proceedings in its own name as trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for sixty days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceedings and no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 6.06; it being understood and intended, and being expressly covenanted by the taker and Holder of every Security with every other taker and Holder and the Trustee, that no one or more Holders of Securities or Coupons appertaining to such Securities shall have any right in any manner whatever by virtue of or by availing himself of any provision of this Indenture to affect, disturb or prejudice the rights of any other Holder of Securities or Coupons appertaining to such Securities, or to obtain or seek to obtain priority over or preference to any other such Holder or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Securities and Coupons. For the protection and enforcement of the provisions of this Section, each and every Securityholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

Notwithstanding any other provisions in this Indenture, however, the right of any Holder of any Security to receive payment of the principal of (and premium, if any) and interest, if any, and Additional Amounts, if any, on such Security or Coupon, on or after the respective due dates expressed in such Security or Coupon, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder. With respect to Original Issue Discount Securities, principal shall mean such amount as shall be due and payable be specified in the terms of such Securities.

SECTION 6.05. REMEDIES CUMULATIVE AND CONTINUING. All powers and remedies given by this Article Six to the Trustee or to the Holders of Securities or Coupons shall, to the extent permitted by law, be deemed cumulative and not exclusive of any thereof or of any other powers and remedies available to the Trustee or the Holders of Securities or Coupons, by judicial proceedings or otherwise, to enforce the performance or observance of the covenants and agreements contained in this Indenture, and no delay or omission of the Trustee or of any Holder of any of the Securities or Coupons to exercise any right or power accruing upon any default occurring and continuing as aforesaid shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and, subject to the provisions of Section 6.04, every power and remedy given by this Article Six or by law to the Trustee or to the Holders of Securities or Coupons may be exercised from time to time, and as often as shall be deemed expedient, by the Trustee or by the Holders of Securities or Coupons, as the case may be.

SECTION 6.06. DIRECTION OF PROCEEDINGS. The Holders of a majority in aggregate principal amount of the Securities of any or all series affected (voting as one class) at the time outstanding shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee; provided, however, that (i) such direction shall not be in conflict with any rule of law or with this Indenture, (ii) the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction and (iii) the Trustee shall have the right to decline to follow any such direction if the Trustee, being advised by counsel, determines that the action or proceedings so directed would be prejudicial to the Holders not joining in such direction or may not lawfully be taken or if the Trustee in good faith by its board of directors or executive committee or a trust committee of directors or trustees and/or responsible officers shall determine that the action or proceedings so directed would involve the Trustee in personal liability.

Prior to any declaration accelerating the maturity of the Securities of any series, the holders of a majority in aggregate principal amount of the Securities of such series at the time outstanding may on behalf of the Holders of all of the Securities of such series waive any past default or Event of Default hereunder and its consequences except a default in the payment of principal of (premium, if any) or interest, if any, or Additional Amounts, if any, on any Securities of such series or in respect of a covenant or provision hereof which may not be modified or amended without the consent of the Holders of each outstanding Security of such series affected. Upon any such waiver the Corporation, the Trustee and the Holders of the Securities of such series shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other default or Event of Default or impair any right consequent thereon. Whenever any default or Event of Default hereunder shall have been waived as permitted by this Section 6.06, said default

or Event of Default shall for all purposes of the Securities of such series and this Indenture be deemed to have been cured and to be not continuing.

SECTION 6.07. NOTICE OF DEFAULTS. The Trustee shall, within ninety days after the occurrence of a default with respect to the Securities of any series, give notice of all defaults with respect to that series known to the Trustee (i) if any Unregistered Securities of that series are then outstanding, to the Holders thereof, by publication at least once in an Authorized Newspaper in the Borough of Manhattan, The City of New York and at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), (ii) if any Unregistered Securities of that series are then outstanding, to all Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04, by mailing such notice to such Holders at such addresses and (iii) to all Holders of then outstanding Registered Securities of that series, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register, unless in each case such defaults shall have been cured before the mailing or publication of such notice (the term "defaults" for the purpose of this Section being hereby defined to be the events specified in Sections 6.01(a), (b), (c), (d) and (e) and any additional events specified in the terms of any series of Securities pursuant to Section 2.01, not including periods of grace, if any, provided for therein, and irrespective of the giving of written notice specified in Section 6.01 (c) or in the terms of any Securities established pursuant to Section 2.01); and provided that, except in the case of default in the payment of the principal of (premium, if any), interest, if any, or Additional Amounts, if any, on any of the Securities of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors or responsible officers of the Trustee in good faith determines that the withholding of such notice is in the interests of the Holders of the Securities of such series.

SECTION 6.08. UNDERTAKING TO PAY COSTS. All parties to this Indenture agree, and each Holder of any Security by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to any suit instituted by the Trustee, to any suit instituted by any Securityholders of any series, or group of such Securityholders, holding in the aggregate more than ten percent in aggregate principal amount of all Securities (voting as one class), or to any suit instituted by any Securityholders for the enforcement of the payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any on any Security on or after the due date expressed in such Security.

ARTICLE SEVEN.
CONCERNING THE TRUSTEE.

SECTION 7.01. DUTIES AND RESPONSIBILITIES OF TRUSTEE. The Trustee, prior to the occurrence of an Event of Default of a particular series and after the curing of all Events of Default of such series which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture. In case an Event of Default with respect to a particular series has occurred (which has not been cured) the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(a) prior to the occurrence of an Event of Default with respect to a particular series and after the curing of all Events of Default with respect to such series which may have occurred:

(1) the duties and obligations of the Trustees with respect to such series shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(2) in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture;

(b) the Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts; and

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

(c) the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of Securities pursuant to Section 6.06 relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture.

No provision of this Indenture shall be construed as requiring the Trustee to expend or risk its own funds or otherwise to incur any personal financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there shall be reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

SECTION 7.02. RELIANCE ON DOCUMENTS, OPINIONS, ETC. Subject to the provisions of Section 7.01:

(a) the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, note, Coupon or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b) any request, direction, order or demand of the Corporation mentioned herein shall be sufficiently evidenced by an instrument signed in the name of the Corporation by the Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or the President or any Executive Vice President or any Senior Vice President or any Vice President or the Treasurer and by the Secretary or any Assistant Secretary or, if the other signatory is other than the Treasurer, any Assistant Treasurer (unless other evidence in respect thereof be herein specifically prescribed); and a Board Resolution may be evidenced to the Trustee by a copy thereof certified by the Secretary or any Assistant Secretary of the Corporation;

(c) the Trustee may consult with counsel and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance with such Opinion of Counsel;

(d) the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Securityholders, pursuant to the provisions of this Indenture, unless such Securityholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses, and liabilities which might be incurred therein or thereby;

(e) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, coupon or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Corporation, personally or by agent or attorney;

(f) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, provided, however, that the Trustee shall be responsible for any misconduct or negligence on the part of any agent or attorney appointed by it hereunder; and

(g) the Trustee shall not be liable for any action taken by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture.

SECTION 7.03. NO RESPONSIBILITY FOR RECITALS, ETC. The recitals contained herein and in the Securities, other than the Trustee's certificate of authentication, shall be taken as the statements of the Corporation, and the Trustee assumes no responsibility for the correctness of the same. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities, provided that the Trustee shall not be relieved of its duty to authenticate Securities only as authorized by this Indenture. The Trustee shall not be accountable for the use or application by the Corporation of Securities or the proceeds thereof.

SECTION 7.04. OWNERSHIP OF SECURITIES OR COUPONS. The Trustee or any agent of the Corporation or of the Trustee, in its individual or any other capacity, may become the owner or pledgee of Securities or Coupons with the same rights it would have if it were not Trustee, or an agent of the Corporation or of the Trustee.

SECTION 7.05. MONEYS TO BE HELD IN TRUST. Subject to the provisions of Section 12.04 hereof, all moneys received by the Trustee or any paying agent shall, until used or applied as herein provided, be held in trust for the purposes for which they were received but need not be segregated from other funds except to the extent required by law. Neither the Trustee nor any paying agent shall be under any liability for interest on any moneys received by it hereunder except such as it may agree with the Corporation to pay thereon. So long as no Event of Default shall have occurred and be continuing, all interest

allowed on any such moneys shall be paid from time to time upon the written order of the Corporation, signed by its Chairman of the Board of Directors or any Vice Chairman of the Board of Directors or its President or any Executive Vice President or any Senior Vice President or any Vice President or its Treasurer or any Assistant Treasurer.

SECTION 7.06. COMPENSATION AND EXPENSES OF TRUSTEE. The Corporation covenants and agrees to pay to the Trustee from time to time, and the Trustee shall be entitled to, reasonable compensation, and, except as otherwise expressly provided the Corporation will pay or reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Indenture (including the reasonable compensation, expenses and disbursements of its counsel and of all persons not regularly in its employ) except any such expense, disbursement or advance as may arise from its negligence or bad faith. If any property other than cash shall at any time be subject to the lien of this Indenture, the Trustee, if and to the extent authorized by a receivership or bankruptcy court of competent jurisdiction or by the supplemental instrument subjecting such property to such lien, shall be entitled to make advances for the purpose of preserving such property or of discharging tax liens or other prior liens or encumbrances hereon. The Corporation also covenants to indemnify the Trustee for, and to hold it harmless against, any loss, liability or reasonable expense incurred without negligence or bad faith on the part of the Trustee, arising out of or in connection with the acceptance or administration of this trust, including the reasonable costs and expenses of defending itself against any claim of liability in the premises. The obligations of the Corporation under this Section to compensate the Trustee and to pay or reimburse the Trustee for reasonable expenses, disbursements and advances shall constitute additional indebtedness hereunder. Such additional indebtedness shall be secured by a lien prior to that of the Securities upon all property and funds held or collected by the Trustee as such, except funds held in trust for the benefit of the Holders of particular Securities or Coupons.

SECTION 7.07. OFFICERS' CERTIFICATE AS EVIDENCE. Subject to the provisions of Section 7.01, whenever in the administration of the provisions of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action to be taken hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Trustee, be deemed to be conclusively proved and established by an Officers' Certificate delivered to the Trustee, and such Certificate, in the absence of negligence or bad faith on the part of the Trustee, shall be full warrant to the Trustee for any action taken, suffered or omitted by it under the provisions of this Indenture upon the faith thereof.

SECTION 7.08. CONFLICTING INTEREST OF TRUSTEE. (a) The Trustee shall comply with Section 310(b) of the Trust Indenture Act of 1939.

(b) The Indentures dated as of April 1, 1986 and November 15, 1990, respectively, between the Corporation and Citibank, N.A. shall be deemed to be specifically described herein for purposes of clause (i) of the first proviso contained in Section 310(b) of the Trust Indenture Act of 1939.

SECTION 7.09. ELIGIBILITY OF TRUSTEE. There shall at all times be a trustee hereunder which shall be a corporation organized and doing business under the laws of the United States or of any State or Territory thereof or of the District of Columbia, which (a) is authorized under such laws to exercise corporate trust powers and (b) is subject to supervision or examination by Federal, State, Territorial or District of Columbia authority and (c) shall have at all times a combined capital and surplus of not less than twenty-five million dollars. If such corporation publishes reports of condition at least annually, pursuant to law, or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation at any time shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, the Trustee shall resign immediately in the manner and with the effect specified in Section 7.10.

SECTION 7.10. RESIGNATION OR REMOVAL OF TRUSTEE. (a) The Trustee, or any trustee or trustees hereafter appointed, may, upon sixty days written notice to the Corporation, at any time resign with respect to one or more or all series by giving written notice of resignation to the Corporation (i) if any Unregistered Securities of a series affected are then outstanding, by giving notice of such resignation to the Holders thereof, by publication at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), (ii) if any Unregistered Securities of a series affected are then outstanding, by mailing notice of such resignation to the Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04 at such addresses as were so furnished to the Trustee and (iii) by mailing notice of such resignation to the Holders of then outstanding Registered Securities of each series affected at their addresses as they shall appear on the Security Register. Upon receiving such notice of resignation the Corporation shall promptly appoint a successor trustee with respect to the applicable series by written instrument, in duplicate, executed by order of the Board of Directors of the Corporation, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee. If no successor trustee shall have been so appointed and have accepted appointment within thirty days after the mailing of such notice of

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

resignation to the Securityholders, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee, or any Securityholder who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, subject to the provisions of Section 6.08, on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

(b) In case at any time any of the following shall occur: (i) the Trustee shall fail to comply with the provisions of subsection (a) of Section 7.08 with respect to any series of Securities after written request therefor by the Corporation or by any Securityholder who has been a bona fide Holder of a Security or Securities of such series for at least six months, or

(ii) the Trustee shall cease to be eligible in accordance with the provision of Section 7.09 with respect to any series of Securities and shall fail to resign after written request therefor by the Corporation or by any such Securityholder, or

(iii) the Trustee shall become incapable of acting with respect to any series of Securities, or shall be adjudged a bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, the Corporation may remove the Trustee with respect to the applicable series of Securities and appoint a successor trustee with respect to such series by written instrument, in duplicate, executed by order of the Board of Directors of the Corporation, one copy of which instrument shall be delivered to the Trustee so removed and one copy to the successor trustee, or, subject to the provisions of Section 6.08, any Securityholder of such series who has been a bona fide Holder of a Security or Securities of the applicable series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee with respect to such series. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, remove the Trustee and appoint a successor trustee.

(c) The Holders of a majority in aggregate principal amount of the Securities of all series (voting as one class) at the time outstanding may at any time remove the Trustee with respect to Securities of all series and appoint a successor trustee with respect to the Securities of all series.

(d) Any resignation or removal of the Trustee and any appointment of a successor trustee pursuant to any of the provisions of this Section shall become effective upon acceptance of appointment by the successor trustee as provided in Section 7.11.

SECTION 7.11. ACCEPTANCE BY SUCCESSOR TRUSTEE. Any successor trustee appointed as provided in Section 7.10 shall execute, acknowledge and deliver to the Corporation and to its predecessor trustee an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee with respect to all or any applicable series shall become effective and such successor trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, duties and obligations with respect to such series of its predecessor hereunder, with like effect as if originally named as trustee herein; but, nevertheless, on the written request of the Corporation or of the successor trustee, the trustee ceasing to act shall, upon payment of any amounts then due it pursuant to the provisions of Section 7.06, execute and deliver an instrument transferring to such successor trustee all the rights and powers of the trustee so ceasing to act. Upon request of any such successor trustee, the Corporation shall execute any and all instruments in writing in order more fully and certainly to vest in and confirm to such successor trustee all such rights and powers. Any trustee ceasing to act shall, nevertheless, retain a lien upon all property or funds held or collected by such trustee to secure any amounts then due it pursuant to the provisions of Section 7.06.

In case of the appointment hereunder of a successor trustee with respect to the Securities of one or more (but not all) series, the Corporation, the predecessor Trustee and each successor trustee with respect to the Securities of any applicable series shall execute and deliver an indenture supplemental hereto which shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the predecessor Trustee with respect to the Securities of any series as to which the predecessor Trustee is not retiring shall continue to be vested in the predecessor Trustee, and shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such trustees co-trustees of the same trust and that each such trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such trustee.

No successor trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor trustee shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09.

Upon acceptance of appointment by a successor trustee as provided in this Section, the Corporation shall give notice of the succession of such trustee hereunder (a) if any Unregistered Securities of a series affected are then outstanding, to the Holders thereof, by publication of such notice at least once in an Authorized Newspaper in the Borough of Manhattan, The City of New York and at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), (b) if any Unregistered Securities of a series affected are then outstanding, to the Holders thereof who have filed their names and addresses with the Trustee pursuant to Section 5.04, by mailing such notice to such Holders at such addresses as were so furnished to the Trustee (and the Trustee shall make such information available to the Corporation for such purpose) and (c) to the Holders of Registered Securities of each series affected, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register. If the Corporation fails to mail such notice in the prescribed manner within ten days after the acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be so given at the expense of the Corporation.

SECTION 7.12. SUCCESSOR BY MERGER, ETC. Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided such corporation shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

SECTION 7.13. LIMITATIONS ON RIGHTS OF TRUSTEE AS CREDITOR. The Trustee shall comply with Section 311(a) of the Trust Indenture Act of 1939.

ARTICLE EIGHT.
CONCERNING THE SECURITYHOLDERS.

SECTION 8.01. ACTION BY SECURITYHOLDERS. Whenever in this Indenture it is provided that the Holders of a specified percentage in aggregate principal amount of the Securities of any or all series may take any action (including the making of any demand or request, the giving of any notice, consent or waiver or the taking of any other action), the fact that at the time of taking any such action the Holders of such specified percentage have joined therein may be evidenced (a) by any instrument or any number of instruments of similar tenor executed by Securityholders in person or by agent or proxy appointed in writing, or (b) by the record of the Holders of Securities voting in favor thereof at any meeting of Securityholders duly called and held in accordance with the provisions of Article Nine, or (c) by a combination of such instrument or instruments and any such record of such a meeting of Securityholders.

In determining whether the Holders of a specified percentage in aggregate principal amount of the Securities have taken any action (including the making of any demand or request, the waiving of any notice, consent or waiver or the taking of any other action), the principal amount of any Original Issue Discount Security that may be counted in making such determination and that shall be deemed to be outstanding for such purposes shall be equal to the amount of the principal thereof that could be declared to be due and payable upon an Event of Default pursuant to the terms of such Original Issue Discount Security at the time the taking of such action is evidenced to the Trustee.

SECTION 8.02. PROOF OF EXECUTION BY SECURITYHOLDERS. Subject to the provisions of Sections 7.01, 7.02 and 9.05, proof of the execution of any instrument by a Securityholder or its agent or proxy shall be sufficient if made in the following manner:

(a) In the case of Holders of Unregistered Securities, the fact and date of the execution by any such person of any instrument may be proved by the certificate of any notary public or other officer of any jurisdiction authorized to take acknowledgments of deeds or administer oaths that the person executing such instruments acknowledged to him the execution thereof or by an affidavit of a witness to such execution sworn to before any such notary or other such officer. Where such execution is by or on behalf of any legal entity other than an individual, such certificate or affidavit shall also constitute sufficient proof of the authority of the person executing the same. The fact of the holding by any Holder of a Security of any series, and the identifying number of such Security and the date of his holding the same, may be proved by the production of such Security or by a certificate executed by any trust company, bank, banker or recognized securities dealer wherever situated satisfactory to the Trustee, if such certificate shall be deemed by the Trustee to be satisfactory. Each such certificate shall be dated and shall state that on the date thereof a Security of such series bearing a specified identifying number was deposited with or exhibited to such trust company, bank, banker or recognized securities dealer by the person named in such certificate. Any such certificate may be issued in respect of one or more Securities of one or more series specified therein. The holding by the person named in any such certificate of any Securities of any series specified therein shall be presumed to continue for a period of one year from the date of such certificate unless at the time of any determination of such holding (1) another certificate bearing a later date issued in respect of the same Securities shall be produced, or (2) the Security of such series specified in such certificate shall be produced by some other person, or (3) the

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

Security of such series specified in such certificates shall have ceased to be outstanding. Subject to Sections 7.01, 7.02 and 9.05, the fact and date of the execution of any such instrument and the amount and numbers of Securities of any series held by the person so executing such instrument and the amount and numbers of any Security or Securities for such series may also be proven in accordance with such reasonable rules and regulations as may be prescribed by the Trustee for such series or in any other manner which the Trustee for such series may deem sufficient.

(b) In the case of Registered Securities, the ownership of such Securities shall be proved by the Security Register or by a certificate of the Security Registrar.

SECTION 8.03. WHO ARE DEEMED ABSOLUTE OWNERS. The Corporation, the Trustee, any paying agent, any transfer agent and any Security Registrar may treat the Holder of any Unregistered Security and the Holder of any Coupon as the absolute owner of such Unregistered Security or Coupon (whether or not such Unregistered Security or Coupon shall be overdue) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither the Corporation, the Trustee, any paying agent, any transfer agent nor any Security Registrar shall be affected by any notice to the contrary. The Corporation, the Trustee, any paying agent, any transfer agent and any Security Registrar may, subject to Section 2.04 hereof, treat the person in whose name a Registered Security shall be registered upon the Security Register as the absolute owner of such Registered Security (whether or not such Registered Security shall be overdue) for the purpose of receiving payment thereof or on account thereof and for all other purposes and neither the Corporation, the Trustee, any paying agent, any transfer agent nor any Security Registrar shall be affected by any notice to the contrary.

SECTION 8.04. CORPORATION-OWNED SECURITIES DISREGARDED. In determining whether the Holders of the required aggregate principal amount of Securities have concurred in any direction, consent or waiver under this Indenture, Securities which are owned by the Corporation or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with the Corporation, shall be disregarded and deemed not to be outstanding for the purpose of any such determination, except that for the purpose of determining whether the Trustee shall be protected in relying on any such direction, consent or waiver only Securities which the Trustee knows are so owned shall be disregarded. Securities so owned which have been pledged in good faith may be regarded as outstanding for the purposes of this Section if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right to vote such Securities and that the pledgee is not a person directly or indirectly controlling or controlled by or under direct or indirect common control with the Corporation. In the case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

SECTION 8.05. REVOCATION OF CONSENTS; FUTURE SECURITYHOLDERS BOUND. At any time prior to the taking of any action by the Holders of the percentage in aggregate principal amount of the Securities specified in this Indenture in connection with such action, any Holder of a Security the identifying number of which is shown by the evidence to be included in the Securities the Holders of which have consented to such action may, by filing written notice with the Trustee at its office and upon proof of holding as provided in Section 8.02, revoke such action so far as concerns such Security. Except as aforesaid any such action taken by the Holder of any Security shall be conclusive and binding upon such Holder and upon all future Holders and owners of such Security and of any Security issued in exchange or substitution therefor irrespective of whether or not any notation in regard thereto is made upon such Security. Any action taken by the Holders of the percentage in aggregate principal amount of the Securities specified in this Indenture in connection with such action shall be conclusively binding upon the Corporation, the Trustee and the Holders of all the Securities of each series intended to be affected thereby.

SECTION 8.06. SECURITIES IN A FOREIGN CURRENCY. Unless otherwise specified in an Officers' Certificate delivered pursuant to Section 2.01 of this Indenture with respect to a particular series of Securities, on any day when for purposes of this Indenture any action may be taken by the Holders of a specified percentage in aggregate principal amount of two or more series of outstanding Securities and, at such time, there are outstanding Securities of at least one such series which are denominated in a coin or currency other than that of at least one other such series, then the principal amount of Securities of each such series (other than any such series denominated in U.S. Dollars) which shall be deemed to be outstanding for the purpose of taking such action shall be that amount of U.S. Dollars that could be obtained for such amount at the Market Exchange Rate. For purposes of this Section 8.06, Market Exchange Rate shall mean the noon U.S. Dollar buying rate for that currency for cable transfers quoted in The City of New York on such day as certified for customs purposes by the Federal Reserve Bank of New York; provided, however, in the case of ECUs, Market Exchange Rate shall mean the rate of exchange determined by the Commission of the European Communities (or any successor thereto) as published in the Official Journal of the European Communities, such publication or any successor publication, the "Journal"). If such Market Exchange Rate is not available for any reason with respect to such currency, the Corporation shall use, in its sole discretion and without liability on its part, such quotation of the Federal Reserve Bank of New York, or in the case of ECUs, the rate of exchange as published in the Journal, as of the most recent available date, or in the case of ECUs, rates of exchange from one or more major banks in The City

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

of New York or in the country of issue of the currency in question, which for purposes of the ECU shall be Brussels, Belgium, or such other quotations or, in the case of ECUs, a rate of exchange as the Corporation shall deem appropriate. The provisions of this paragraph shall apply in determining the equivalent number of votes which each Securityholder or proxy shall be entitled to pursuant to Section 9.05 in respect of Securities of a series denominated in a currency other than U.S. Dollars.

All decisions and determinations of the Corporation regarding the Market Exchange Rate shall be in its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Corporation and all Holders.

ARTICLE NINE.
SECURITYHOLDERS' MEETINGS.

SECTION 9.01. PURPOSES OF MEETINGS. A meeting of Securityholders of any or all series may be called at any time and from time to time pursuant to the provisions of this Article for any of the following purposes:

(1) to give any notice to the Corporation or to the Trustee, or to give any directions to the Trustee, or to waive any default hereunder and its consequences, or to take any other action authorized to be taken by Securityholders pursuant to any of the provisions of Article Six;

(2) to remove the Trustee and appoint a successor trustee pursuant to the provisions of Article Seven;

(3) to consent to the execution of an indenture or indentures supplemental hereto pursuant to the provisions of Section 10.02; or

(4) to take any other action authorized to be taken by or on behalf of the Holders of any specified aggregate principal amount of the Securities of any or all series, as the case may be, under any other provision of this Indenture or under applicable law.

SECTION 9.02. CALL OF MEETINGS BY TRUSTEE. The Trustee may at any time call a meeting of Holders of Securities of any or all series to take any action specified in Section 9.01, to be held at such time and at such place in the Borough of Manhattan, The City of New York, or in London, as the Trustee shall determine. Notice of every meeting of the Holders of Securities of any or all series, setting forth the time and place of such meeting, shall be given (i) if any Unregistered Securities of a series that may be affected by the action proposed to be taken at such meeting are then outstanding, to all Holders thereof, by publication at least twice in an Authorized Newspaper in the Borough of Manhattan, The City of New York and at least twice in an Authorized Newspaper in London (and, if required by Section 4.04, at least twice in an Authorized Newspaper in Luxembourg) prior to the date fixed for the meeting, the first publication, in each case, to be not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting and the last publication to be not more than five days prior to the date fixed for the meeting, (ii) if any Unregistered Securities of a series that may be affected by the action proposed to be taken at such meeting are then outstanding, to all Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04, by mailing such notice to such Holders at such addresses, not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting and (iii) to all Holders of then outstanding Registered Securities of each series that may be affected by the action proposed to be taken at such meeting, by mailing such notice to such Holders at their addresses as they shall appear on the Security Register, not less than twenty nor more than one hundred eighty days prior to the date fixed for the meeting. Failure of any Holder or Holders to receive such notice or any defect therein shall in no case affect the validity of any action taken at such meeting. Any meeting of Holders of Securities of all or any series shall be valid without notice if the Holders of all such Securities outstanding, the Corporation and the Trustee are present in person or by proxy or shall have waived notice thereof before or after the meeting. The Trustee may fix, in advance, a date as the record date for determining the holders entitled to notice of or to vote at any such meeting at not less than twenty or more than one hundred eighty days prior to the date fixed for such meeting.

SECTION 9.03. CALL OF MEETINGS BY CORPORATION OR SECURITYHOLDERS. In case at any time the Corporation, pursuant to a Board Resolution, or the Holders of at least ten percent in aggregate principal amount of the Securities of any or all series, as the case may be, shall have requested the Trustee to call a meeting of Securityholders of any or all series to take any action authorized in Section 9.01, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have mailed or published as provided in Section 9.02, the notice of such meeting within thirty days after receipt of such request, then the Corporation or the Holders of such Securities in the amount above specified may determine the time and the place in said Borough of Manhattan or London for such meeting and may call such meeting to take any action authorized in Section 9.01, by mailing notice thereof as provided in Section 9.02.

SECTION 9.04. QUALIFICATION FOR VOTING. To be entitled to vote at any meeting of Securityholders a person shall be a Holder of one or more Securities of a series with respect to which a meeting is being held or a person appointed

by an instrument in writing as proxy by such a Holder. The only persons who shall be entitled to be present or to speak at any meeting of the Securityholders shall be the persons entitled to vote at such meeting and their counsel and any representatives of the Trustee and its counsel and any representatives of the Corporation and its counsel.

SECTION 9.05. REGULATIONS. Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Securityholders, in regard to proof of the holding of Securities and of the appointment of proxies, and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall think fit.

The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Corporation or by Securityholders as provided in Section 9.03, in which case the Corporation or the Securityholder calling the meeting, as the case may be, shall in like manner appoint a temporary chairman. A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Holders of a majority in principal amount of the Securities represented at the meeting and entitled to vote.

Subject to the provisions of Sections 8.01 and 8.04, at any meeting each Securityholder or proxy shall be entitled to one vote for each U.S.$1,000 principal amount of Securities held or represented by him; provided, however, that no vote shall be cast or counted at any meeting in respect of any Security challenged as not outstanding and ruled by the chairman of the meeting not to be outstanding. The chairman of the meeting shall have no right to vote except as a Securityholder or proxy. Any meeting of Securityholders duly called pursuant to the provisions of Section 9.02 or 9.03 may be adjourned from time to time, and the meeting may be held as so adjourned without further notice.

SECTION 9.06. VOTING. The vote upon any resolution submitted to any meeting of Securityholders shall be by written ballot on which shall be subscribed the signatures of the Securityholders or proxies and on which shall be inscribed the identifying number or numbers or to which shall be attached a list of identifying numbers of the Securities held or represented by them. The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified reports in duplicate of all votes cast at the meeting. A record in duplicate of the proceedings of each meeting of Securityholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavit by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was mailed as provided in Section 9.02. The record shall be signed and verified by the permanent chairman and secretary of the meeting and one of the duplicates shall be delivered to the Corporation and the other to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting.

Any record so signed and verified shall be conclusive evidence of the matters therein stated.

ARTICLE TEN.

SUPPLEMENTAL INDENTURES.

SECTION 10.01. SUPPLEMENTAL INDENTURES WITHOUT CONSENT OF SECURITYHOLDERS. The Corporation, when authorized by Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act of 1939) for one or more of the following purposes:

(a) to evidence the succession of another corporation to the Corporation, or successive successions, and the assumption by any successor corporation of the covenants, agreements and obligations of the Corporation pursuant to Article Eleven hereof;

(b) to add to the covenants of the Corporation such further covenants, restrictions, conditions or provisions as its Board of Directors and the Trustee shall consider to be for the protection of the Holders of Securities of any or all series, or the Coupons appertaining to such Securities, and to make the occurrence, or the occurrence and continuance, of a default in any of such additional covenants, restrictions, conditions or provisions a default or an Event of Default with respect to any or all series permitting the enforcement of all or any of the several remedies provided in this Indenture as herein set forth, with such period of grace, if any, and subject to such conditions as such supplemental indenture may provide;

(c) to add or change any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the issuance of Securities of any series in bearer form, registrable or not registrable as to principal, and with or without interest Coupons, and to provide for exchangeability of such Securities with Securities issued hereunder in fully registered form and to make all appropriate changes for such purpose, and to add or change any of the provisions of this Indenture to such extent as shall be necessary to permit or

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

facilitate the issuance of uncertificated Securities of any series;

(d) to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee; or to make such other provisions in regard to matters or questions arising under this Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any Coupons appertaining to such Securities;

(e) to evidence and provide for the acceptance and appointment hereunder by a successor trustee with respect to the Securities of one or more series and to add or change any provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one trustee, pursuant to Section 7.11;

(f) to establish the form or terms of Securities of any series as permitted by Sections 2.01 and 2.03; and

(g) to change or eliminate any provision of this Indenture, provided that any such change or elimination (i) shall become effective only when there is no Security outstanding of any series created prior to the execution of such supplemental indenture which is entitled to the benefit of such provision or (ii) shall not apply to any Security outstanding.

The Trustee is hereby authorized to join with the Corporation in the execution of any such supplemental indenture, to make any further appropriate agreements and stipulations which may be therein contained and to accept the conveyance, transfer, assignment, mortgage or pledge of any property thereunder, but the Trustee shall not be obligated to enter into any such supplemental indenture which adversely affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Any supplemental indenture authorized by the provisions of this Section may be executed by the Corporation and the Trustee without the consent of the Holders of any of the Securities at the time outstanding, notwithstanding any of the provisions of Section 10.02.

SECTION 10.02.  SUPPLEMENTAL INDENTURES WITH CONSENT OF Securityholders. With the consent (evidenced as provided in Section 8.01) of the Holders of not less than a majority in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any Coupons appertaining to such Securities; provided, however, that no such supplemental indenture shall (i) change the fixed maturity of any Securities, or reduce the principal amount thereof (or premium, if any), or reduce the rate or extend the time of payment of any interest or Additional Amounts thereon or reduce the amount due and payable upon acceleration of the maturity thereof or the amount provable in bankruptcy, or make the principal of (premium, if any) or interest, if any, or Additional Amounts, if any, on any Security payable in any coin or currency other than that provided in such Security, (ii) impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof (or, in the case of redemption, on or after the redemption date therefor) or (iii) reduce the aforesaid percentage of Securities, the consent of the Holders of which is required for any such supplemental indenture, or the percentage required for the consent of the Holders pursuant to Section 6.01 to waive defaults, without the consent of the Holder of each Security so affected.

Upon the request of the Corporation, accompanied by a copy of a Board Resolution certified by the Secretary or an Assistant Secretary of the Corporation authorizing the execution of any such supplemental indenture, and upon the filing with the Trustee of evidence of the consent of Securityholders as aforesaid, the Trustee shall join with the Corporation in the execution of such supplemental indenture unless such supplemental indenture affects the Trustee's own rights, duties or immunities under this Indenture or otherwise, in which case the Trustee may in its discretion, but shall not be obligated to, enter into such supplemental indenture.

It shall not be necessary for the consent of the Securityholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Promptly after the execution and delivery by the Corporation and the Trustee of any supplemental indenture pursuant to the provisions of this Section, the Trustee shall give notice of such supplemental indenture (i) to the Holders of then outstanding Registered Securities of each series affected thereby, by mailing a notice thereof by first-class mail to such Holders at their addresses as they shall appear on the Security Register, (ii) if any Unregistered Securities of a series affected thereby are then outstanding, to the Holders thereof who have filed their names and addresses with the Trustee as described in Section 5.04, by mailing a notice thereof by first-class mail to such Holders at such addresses as were so furnished to the Trustee and (iii) if

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

any Unregistered Securities of a series affected thereby are then outstanding, to all Holders thereof, if by publication of a notice thereof at least once in an Authorized Newspaper in London (and, if required by Section 4.04, at least once in an Authorized Newspaper in Luxembourg), and in each case such notice shall set forth in general terms the substance of such supplemental indenture. Any failure of the Corporation to mail or publish such notice, or any defect therein, shall not, however in any way impair or affect the validity of any such supplemental indenture.

SECTION 10.03. COMPLIANCE WITH TRUST INDENTURE ACT; EFFECT OF SUPPLEMENTAL INDENTURES. Any supplemental indenture executed pursuant to the provisions of this Article Ten shall comply with the Trust Indenture Act of 1939. Upon the execution of any supplemental indenture pursuant to the provisions of this Article Ten, this Indenture shall be and be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Indenture of the Trustee, the Corporation and the Holders of Securities shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

The Trustee, subject to the provisions of Sections 7.01 and 7.02, may receive an Opinion of Counsel as conclusive evidence that any such supplemental indenture complies with the provisions of this Article Ten.

SECTION 10.04. NOTATION ON SECURITIES. Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to the provision of this Article Ten may bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. New Securities of any series so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Corporation, to any modification of this Indenture contained in any such supplemental indenture may be prepared by the Corporation, authenticated by the Trustee and delivered, without charge to the Securityholders, in exchange for the Securities of such series then outstanding.

ARTICLE ELEVEN.

CONSOLIDATION, MERGER, SALE OR CONVEYANCE.

SECTION 11.01. CORPORATION MAY CONSOLIDATE, ETC., ON CERTAIN TERMS. The Corporation covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, unless (i) either the Corporation shall be the continuing corporation, or the successor corporation (if other than the Corporation) shall be a corporation organized and existing under the laws of the United States of America or a state thereof and such corporation shall expressly assume the due and punctual payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on all the Securities and any Coupons, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by the Corporation by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation and (ii) the Corporation or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or condition.

SECTION 11.02. SUCCESSOR CORPORATION SUBSTITUTED. In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Corporation, with the same effect as if it had been named herein as the party of the first part. Such successor corporation thereupon may cause to be signed, and may issue either in its own name or in the name of General Motors Corporation, any or all of the Securities, and any Coupons appertaining thereto, issuable hereunder which theretofore shall not have been signed by the Corporation and delivered to the Trustee; and, upon the order of such successor corporation, instead of the Corporation, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or Coupons which previously shall have been signed and delivered by the officers of the Corporation to the Trustee for authentication, and any Securities or Coupons which such successor corporation thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities, and any Coupons appertaining thereto, so issued shall in all respects have the same legal rank and benefit under this Indenture as the Securities or Coupons theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities, and any Coupons appertaining thereto, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities and Coupons thereafter to be issued as may be appropriate.

SECTION 11.03. OPINION OF COUNSEL TO BE GIVEN TRUSTEE. The Trustee, subject to the provisions of Sections 7.01 and 7.02, may receive an Opinion of Counsel as conclusive evidence that any such consolidation, merger, sale or conveyance, and any such assumption, complies with the provisions of this Article Eleven.

SECTION 11.04.  CERTIFICATE TO TRUSTEE. On or before April 1, 1996, and on or before April 1 in each year thereafter, the Corporation will deliver to the Trustee a brief certificate of the Corporation's principal executive officer, principal financial officer or principal accounting officer as to such officer's knowledge of the Corporation's compliance with all conditions and covenants under this Indenture (such compliance to be determined without regard to any period of grace or requirement of notice provided under this Indenture).

ARTICLE TWELVE.

SATISFACTION AND DISCHARGE OF INDENTURE;
UNCLAIMED MONEYS.

SECTION 12.01. DISCHARGE OF INDENTURE.  If at any time (a) the Corporation shall have delivered to the Trustee for cancellation all Securities of any series theretofore authenticated (other than any Securities of such series and Coupons appertaining thereto which shall have been destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.06) or (b) all such Securities of such series and any Coupons appertaining to such Securities not theretofore delivered to the Trustee for cancellation shall have become due and payable, or are by their terms to become due and payable within one year or are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption, and the Corporation shall deposit or cause to be deposited with the Trustee as trust funds the entire amount (other than moneys repaid by the Trustee or any paying agent to the Corporation in accordance with Section 12.04) sufficient to pay at maturity or upon redemption all Securities of such series and all Coupons appertaining to such Securities not theretofore delivered to the Trustee for cancellation, including principal (and premium, if any), interest, if any, and Additional Amounts, if any, due or to become due to such date of maturity or date fixed for redemption, as the case may be, and if in either case the Corporation shall also pay or cause to be paid all other sums payable hereunder by the Corporation with respect to such series, then this Indenture shall cease to be of further effect with respect to the Securities of such series or any Coupons appertaining to such Securities, and the Trustee, on demand of and at the cost and expense of the Corporation and subject to Section 14.04, shall execute proper instruments acknowledging satisfaction of and discharging this Indenture with respect to the Securities of such series and all Coupons appertaining to such Securities.  The Corporation agrees to reimburse the Trustee for any costs or expenses thereafter reasonably and properly incurred by the Trustee in connection with this Indenture or the Securities of such series or any Coupons appertaining to such Securities.

SECTION 12.02. SATISFACTION, DISCHARGE AND DEFEASANCE OF SECURITIES OF ANY SERIES. If pursuant to Section 2.01 provision is made for the defeasance of Securities of a series, then the provisions of this Section 12.02 shall be applicable except as otherwise specified as contemplated by Section 2.01 for Securities of such series. At the Corporation's option, either (a) the Corporation shall be deemed to have paid and discharged the entire indebtedness on all the outstanding Securities of any such series and the Trustee, at the expense of the Corporation, shall execute proper instruments acknowledging satisfaction and discharge of such indebtedness or (b) the Corporation shall cease to be under any obligation to comply with any term, provision, condition or covenant specified as contemplated by Section 2.01, when

(1)    either

(A) with respect to all outstanding Securities of such series,

(i) the Corporation has deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount (in such currency in which such outstanding Securities and any related Coupons are then specified as payable at stated maturity) sufficient to pay and discharge the entire indebtedness of all outstanding Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be; or

(ii) the Corporation has deposited or caused to be deposited with the Trustee as obligations in trust for the purpose such amount of direct noncallable obligations of, or noncallable obligations the payment of principal of and interest on which is fully guaranteed by, the United States of America, or to the payment of which obligations or guarantees the full faith and credit of the United States of America is pledged, maturing as to principal and interest in such amounts and at such times as will, together with the income to accrue thereon (but without reinvesting any proceeds thereof), be sufficient to pay and discharge the entire indebtedness on all outstanding Securities of such series for principal (and premium, if any), interest, if any, and Additional Amounts, if any, to the stated maturity or any redemption date as contemplated by the last paragraph of this Section 12.02, as the case may be; or

(B) the Corporation has properly fulfilled such other terms and conditions to the satisfaction and discharge as is specified, as contemplated by Section 2.01, as applicable to the Securities of such series, and

(2) the Corporation has paid or caused to be paid all other sums payable with respect to the outstanding Securities of such series, and

(3) The Corporation has delivered to the Trustee an Opinion of Counsel stating that (i) the Corporation has received from, or there has been published by, the Internal Revenue Service a ruling or (ii) since the date of execution of this Indenture, there has been a change in the applicable Federal income tax law, in either case to the effect that, and based thereon such opinion shall confirm that, the holders of the outstanding Securities and any related Coupons will not recognize income, gain or loss for Federal income tax purposes as a result of such deposit, defeasance and discharge and will be subject to Federal income tax on the same amounts and in the same manner and at the same times, as would have been the case if such deposit, defeasance and discharge had not occurred.

(4) the Corporation has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of the entire indebtedness on all outstanding Securities of any such series have been complied with.

Any deposits with the Trustee referred to in Section 12.02(1)(A) above shall be irrevocable and shall be made under the terms of an escrow trust agreement in form and substance satisfactory to the Trustee. If any outstanding Securities of such series are to be redeemed prior to their stated maturity, whether pursuant to any optional redemption provisions or in accordance with any mandatory sinking fund requirement or otherwise, the applicable escrow trust agreement shall provide therefor and the Corporation shall make such arrangements as are satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Corporation.

SECTION 12.03. DEPOSITED MONEYS TO BE HELD IN TRUST BY TRUSTEE. All moneys deposited with the Trustee pursuant to Section 12.01 or 12.02 shall be held in trust and applied by it to the payment, either directly or through any paying agent (including the Corporation acting as its own paying agent), to the Holders of the particular Securities and of any Coupons appertaining to such Securities for the payment or redemption of which such moneys have been deposited with the Trustee, of all sums due and to become due thereon for principal (and premium, if any), interest, if any, and Additional Amounts, if any.

SECTION 12.04. PAYING AGENT TO REPAY MONEYS HELD. In connection with the satisfaction and discharge of this Indenture with respect to Securities of any series all moneys with respect to such Securities then held by any paying agent under the provisions of this Indenture shall, upon demand of the Corporation, be repaid to it or paid to the Trustee and thereupon such paying agent shall be released from all further liability with respect to such moneys.

SECTION 12.05. RETURN OF UNCLAIMED MONEYS. Any moneys deposited with or paid to the Trustee or any paying agent for the payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on any Security and not applied but remaining unclaimed for two years after the date upon which such principal (and premium, if any), interest, if any, and Additional Amounts, if any, shall have become due and payable, shall, unless otherwise required by mandatory provisions of applicable escheat or abandoned or unclaimed property law, be repaid to the Corporation by the Trustee or such paying agent on demand, and the Holder of such Security or any Coupon appertaining to such Security shall, unless otherwise required by mandatory provisions of applicable escheat or abandoned or unclaimed property law, thereafter look only to the Corporation for any payment which such Holder may be entitled to collect and all liability of the Trustee or any paying agent with respect to such moneys shall thereupon cease; provided, however, that the Trustee or such paying agent, before being required to make any such repayment with respect to moneys deposited with it for any payment in respect of Unregistered Securities of any series, may at the expense of the Corporation cause to be published once, in an Authorized Newspaper in the Borough of Manhattan, The City of New York and once in an Authorized Newspaper in London (and, if required by Section 4.04, once in an Authorized Newspaper in Luxembourg), notice that such moneys remain and that, after a date specified therein, which shall not be less than thirty days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Corporation.

ARTICLE THIRTEEN.

IMMUNITY OF INCORPORATORS, STOCKHOLDERS,
OFFICERS AND DIRECTORS.

SECTION 13.01. INDENTURE AND SECURITIES SOLELY CORPORATE OBLIGATIONS. No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any past, present or future incorporator, stockholder, officer or director, as such, of the Corporation or of any successor corporation, either directly or through the Corporation or any successor corporation, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders thereof and as part of the consideration for the issue

of the Securities and Coupons.

## ARTICLE FOURTEEN.

### MISCELLANEOUS PROVISIONS.

SECTION 14.01. BENEFITS OF INDENTURE RESTRICTED TO PARTIES AND SECURITYHOLDERS. Nothing in this Indenture or in the Securities or Coupons, expressed or implied, shall give or be construed to give to any person, firm or corporation, other than the parties hereto and their successors and the Holders of the Securities or Coupons, any legal or equitable right, remedy or claim under this Indenture or under any covenant or provision herein contained, all such covenants and provisions being for the sole benefit of the parties hereto and their successors and of the Holders of the Securities or Coupons.

SECTION 14.02. PROVISIONS BINDING ON CORPORATION'S SUCCESSORS. All the covenants, stipulations, promises and agreements in this Indenture contained by or on behalf of the Corporation shall bind its successors and assigns, whether so expressed or not.

SECTION 14.03. ADDRESSES FOR NOTICES, ETC. Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders of Securities to or on the Corporation may be given or served by being deposited postage prepaid first class mail in a post office letter box addressed (until another address is filed by the Corporation with the Trustee), as follows: General Motors Corporation, 767 Fifth Avenue, New York, New York 10153. Any notice, direction, request or demand by any Securityholder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made in writing at its Corporate Trust Office, which is at the date of this Indenture, 120 Wall Street, 13th Floor, New York, New York 10043, except that for purposes of presentation of Securities for payment or registration of transfer or exchange, such term means the office or agency which at any particular time its corporate agency business shall be conducted, which at the date of this Indenture is 111 Wall Street, New York, New York 10043.

SECTION 14.04. EVIDENCE OF COMPLIANCE WITH CONDITIONS PRECEDENT. Upon any application or demand by the Corporation to the Trustee to take any action under any of the provisions of this Indenture, the Corporation shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (1) a statement that the person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

SECTION 14.05. LEGAL HOLIDAYS. In any case where the date of maturity of any interest, premium or Additional Amounts on or principal of the Securities or the date fixed for redemption of any Securities shall not be a Business Day in a city where payment thereof is to be made, then payment of any interest, premium or Additional Amounts on, or principal of such Securities need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 14.06. TRUST INDENTURE ACT TO CONTROL. If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture by operation of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939 (an "incorporated provision"), such incorporated provision shall control.

SECTION 14.07. EXECUTION IN COUNTERPARTS. This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 14.08. NEW YORK CONTRACT. This Indenture and each Security shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Indenture shall be heard in a federal or state court located in the State of New York.

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

SECTION 14.09. JUDGMENT CURRENCY. The Corporation agrees, to the fullest extent that it may effectively do so under applicable law, that (a) if for the purposes of obtaining judgment in any court it is necessary to convert the sum due in respect of the principal of or interest on the Securities of any series (the "Required Currency") into a currency in which a judgment will be rendered (the "Judgment Currency"), the rate of exchange used shall be the rate at which in accordance with normal banking procedures the Trustee could purchase in The City of New York the Required Currency with the Judgment Currency on the date on which final unappealable judgment is entered, unless such day is not a New York Banking Day, then, to the extent permitted by applicable law, the rate of exchange used shall be the rate at which in accordance with normal banking procedures the Trustee could purchase in The City of New York the Required Currency with the Judgment Currency on the New York Banking Day preceding the day on which final unappealable judgment is entered and (b) its obligations under this Indenture to make payments in the Required Currency (i) shall not be discharged or satisfied by any tender, or any recovery pursuant to any judgment (whether or not entered in accordance with subsection (a)), in any currency other than the Required Currency, except to the extent that such tender or recovery shall result in the actual receipt, by the payee, of the full amount of the Required Currency expressed to be payable in respect of such payments, (ii) shall be enforceable as an alternative or additional cause of action for the purpose of recovering in the Required Currency the amount, if any, by which such actual receipt shall fall short of the full amount of the Required Currency so expressed to be payable and (iii) shall not be affected by judgment being obtained for any other sum due under this Indenture. For purposes of the foregoing, "New York Banking Day" means any day except a Saturday, Sunday or a legal holiday in The City of New York or a day on which banking institutions in The City of New York are authorized or required by law or executive order to close.

SECTION 14.10 SEVERABILITY OF PROVISIONS. Any prohibition, invalidity or unenforceability of any provision of this Indenture in any jurisdiction shall not invalidate or render unenforceable the remaining provisions hereto in such jurisdiction and shall not invalidate or render unenforceable such provisions in any other jurisdiction.

SECTION 14.11 CORPORATION RELEASED FROM INDENTURE REQUIREMENTS UNDER CERTAIN CIRCUMSTANCES. Whenever in this Indenture the Corporation shall be required to do or not to do anything, so long as any of the Securities of any series shall be Outstanding, the Corporation shall, notwithstanding any such provision, not be required to comply with such provisions if it shall be entitled to have this Indenture satisfied and discharged pursuant to the provisions hereof, even though in either case the Holders of any of the Securities of that series shall have failed to present and surrender them for payment pursuant to the terms of this Indenture.

Citibank, N.A., the party of the second part, hereby accepts the trusts in this Indenture declared and provided, upon the terms and conditions hereinabove set forth.

IN WITNESS WHEREOF, GENERAL MOTORS CORPORATION, the party of the first part, has caused this Indenture to be signed and acknowledged by its Chairman of the Board or one of its Vice Chairmen of the Board or its President or one of its Executive Vice Presidents or one of its Senior Vice Presidents or one of its Vice Presidents or its Treasurer, and its Corporate seal to be affixed hereunto, and the same to be attested by its Secretary or an Assistant Secretary; and CITIBANK, N.A., the party of the second part, has caused this Indenture to be signed, and its

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

corporate seal to be affixed hereunto, and the same to be attested by its duly
authorized officers, all as of the day and year first above written.


[Corporate Seal]                    GENERAL MOTORS CORPORATION


Attest:                             By:_____ _____ _____ _____




[Corporate Seal]                    CITIBANK, N.A.

Attest:                             By:_____ _____ _____ _


STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )


        On the ____day of December, 1995 before me personally came
_____ _____, to me known, who, being by me duly sworn, did depose and say
that              he/she              resides              at
_____, that
he/she is the _____ of General Motors Corporation, one of the
corporations described in and which executed the foregoing instrument; that
he/she knows the seal of said Corporation; that the seal affixed to said
instrument is such Corporate seal; that it was so

affixed by authority of the Board of Directors of said Corporation, and that he/she signed his/her name thereto by like authority.

[SEAL]


Notary Public


STATE OF NEW YORK        )
                         ) ss.
COUNTY OF NEW YORK       )


     On the day of December, 1995 before me personally came _____, to me known, who, being by me duly sworn, did depose and say that _____ he/she resides at _____, that he/she is a _____ of Citibank, N.A., one of the corporations described in and which executed the foregoing instrument; that he/she knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like authority.

[SEAL]


Notary Public

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

EXHIBIT 5
GENERAL MOTORS CORPORATION
3031 WEST GRAND BOULEVARD
DETROIT, MICHIGAN  48202

November 14, 1995

GENERAL MOTORS CORPORATION
3044 West Grand Boulevard
Detroit, Michigan 48202

Dear Sirs:

As Attorney for General Motors Corporation (the "Corporation") in
connection with the registration of your Debt Securities and Debt Warrants
(the "Securities") which will be offered by the Corporation at an aggregate
price of up to $2,000,000,000, for issuance from time to time pursuant to
Rule 415 of the Securities Act of 1933, as amended, I advise that in my
opinion you have full power and authority under the laws of Delaware, the
State of your incorporation, and under your Certificate of Incorporation, as
amended, to borrow the money and to contract the indebtedness to be
evidenced by the said Securities.

It is my further opinion that the Indenture dated as of December ___,
1995, with Citibank, N.A., as Trustee (the "Indenture"), has been duly
authorized, executed and delivered and that the Debt Securities, as provided
in the Indenture, and the Debt Warrants, as provided in the Debt Warrant
Agreement, when duly authorized, executed and authenticated, issued and paid
for, will be valid and legally binding obligations of the Corporation in
accordance with and subject to the terms thereof and of the Indenture and
the Debt Warrant Agreement, as the case may be.

I hereby consent to the use of the foregoing opinion as Exhibit 5 of
your Registration Statement filed with the United States Securities and
Exchange Commission under the Securities Act of 1933, as amended, with
respect to the above mentioned Securities and to the use of my name in such
Registration Statement and in the related Prospectus under the heading
"Legal Opinions".

Very truly yours,

/s/ Martin I Darvick
--------------------
Martin I. Darvick
Attorney

Exhibit 8

GENERAL MOTORS CORPORATION
3044 WEST GRAND BOULEVARD
DETROIT, MICHIGAN 48202

November 14, 1995

General Motors Corporation
3044 West Grand Boulevard
Detroit, Michigan 48202

Dear Sirs:

In connection with the General Motors Corporation (the "Corporation") registration of the Medium-Term Notes Due from Nine Months or More from Date of Issue (the "Notes") which will be offered by the Corporation at an aggregate price of up to $2,000,000,000, I have acted as tax counsel to the Corporation, and in that capacity have furnished certain opinions to it. I hereby confirm to you the opinion as set forth under the heading "United States Federal Taxation" in the Prospectus Supplement covering such notes which is part of the registration statement to which this letter is attached as an exhibit. As indicated in the opinion, the discussion sets forth a general summary of all material United States Federal income tax consequences of the ownership and disposition of the Notes as applied to original holders purchasing Notes at the issue price. Holders are advised to consult their own tax advisors with regard to the application of the income tax laws to their particular situations as well as any tax consequences arising under the laws of any state, local or foreign tax jurisdiction.

I hereby consent to the filing with the Securities and Exchange Commission of this opinion as an exhibit to the Registration Statement, as amended, and the reference to tax counsel under the heading "United States Federal Taxation" in the Prospectus Supplement. By providing the foregoing consent, I do not admit that tax counsel falls within the category of persons whose consent is required under section 7 of the Securities Act of 1933, as amended.

Very truly yours,

s/ Robert N. Dietz
--------------------
Robert N. Dietz
Tax Attorney

EXHIBIT 23(a)

CONSENT OF INDEPENDENT AUDITORS

GENERAL MOTORS CORPORATION:

We consent to the incorporation by reference in this Registration
Statement on Form S-3 of General Motors Corporation of our reports dated
January 30, 1995 appearing in the Annual Report on Form 10-K of General
Motors Corporation for the year ended December 31, 1994 and to the
reference to us under the heading "Experts" in the Prospectus, which is
part of this Registration Statement.

/s/ DELOITTE & TOUCHE LLP
- --------------------------
DELOITTE & TOUCHE LLP

Detroit, Michigan
November 13, 1995

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

EXHIBIT 23(b)

CONSENT OF INDEPENDENT AUDITORS

THE BOARDS OF DIRECTORS
ELECTRONIC DATA SYSTEMS CORPORATION
GENERAL MOTORS CORPORATION

We hereby consent to the use of our report incorporated herein by
reference and to the reference to our firm under the heading "Experts" in
the Prospectus.

/s/ KPMG PEAT MARWICK LLP
- -------------------------
KPMG PEAT MARWICK LLP
Dallas, Texas
November 13, 1995

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549
----------------------------

FORM T-1

STATEMENT OF ELIGIBILITY
UNDER THE TRUST INDENTURE ACT OF 1939 OF A
CORPORATION DESIGNATED TO ACT AS TRUSTEE

Check if an application to determine eligibility of a Trustee
pursuant to Section 305 (b)(2) ___
------------------------

CITIBANK, N.A.
(Exact name of trustee as specified in its charter)

                                    13-5266470
                                    ----------------------
                                    (I.R.S. employer
                                    identification no.)

399 Park Avenue, New York, New York          10043
- -------------------------------------------- ----------
(Address of principal executive office)      (Zip Code)
                ------------------------

GENERAL MOTORS CORPORATION
(Exact name of obligor as specified in its charter)

Delaware                              38-0572515
- -------------------------------------  --------------------
(State or other jurisdiction of        (I.R.S. employer
incorporation or organization)         identification no.)

767 FIFTH AVENUE                      10153
NEW YORK, NEW YORK                    (Zip Code)

3044 WEST GRAND BOULEVARD             48202
DETROIT, MICHIGAN                     (Zip Code)
- ------------------------------------------------
(Address of principal executive offices)

------------------------

DEBT SECURITIES
(Title of the indenture securities)
Item 1.     General Information.

            Furnish the following information as to the trustee:

    (a)     Name and address of each examining or supervising authority to which
    it is subject.

            NAME                            ADDRESS
            Comptroller of the Currency         Washington, D.C.
            Federal Reserve Bank of New York    New York, NY
            Federal Deposit Insurance Corporation   Washington, D.C.

    (b)     Whether it is authorized to exercise corporate trust powers.

            Yes.

Item 2.     AFFILIATIONS WITH OBLIGOR.
            If the obligor is an affiliate of the trustee, describe each such
affiliation.

            None.

Item 16.    LIST OF EXHIBITS.

            Exhibit 1 - Copy of Articles of Association of the Trustee, as now
            in effect.  (Exhibit 1 to T-1 to Registration Statement No. 2-79983)

            Exhibit 2 - Copy of certificate of authority of the Trustee to
            commence business. (Exhibit 2 to T-1 to Registration Statement No.
            2-29577).

            Exhibit 3 - Copy of authorization of the Trustee to exercise
            corporate trust powers.  (Exhibit 3 to T-1 to Registration Statement
            No. 2-55519)

            Exhibit 4 - Copy of existing By-Laws of the Trustee.  (Exhibit 4 to
            T-1 to Registration Statement No. 33-34988)

            Exhibit 5 - Not applicable.

Exhibit 6 - The consent of the Trustee required by Section 321(b) of the Trust Indenture Act of 1939. (Exhibit 6 to T-1 toRegistration Statement No. 33-19227.)

Exhibit 7 - Copy of the latest Report of Condition of Citibank, N.A.(as of June 30, 1995 - attached)

Exhibit 8 - Not applicable.

Exhibit 9 - Not applicable.

SIGNATURE

Pursuant to the requirements of the Trust Indenture Act of 1939, the Trustee, Citibank, N.A., a national banking association organized and existing under the laws of the United States of America, has duly caused this statement of eligibility to be signed on its behalf by the undersigned, thereunto duly authorized, all in The City of New York and State of New York, on the 6th day of November, 1995.

                              CITIBANK, N.A.


                                   /S/CAROL NG
                              By:  Carol Ng
                                   Assistant Vice President

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

Charter No. 1461

Comptroller of the Currency
Northeastern District
REPORT OF CONDITION
CONSOLIDATING
DOMESTIC AND FOREIGN
SUBSIDIARIES OF

Citibank, N. A.

of New York in the State of New York, at the close of business on June 30, 1995
published in response to call made by Comptroller of the Currency, under Title
12, United States Code, Section 161, Charter Number 1461 Comptroller of the
Currency Northeastern District.

ASSETS

| | | Thousands of dollars |
|---|---|---|
| Cash and balances due from depository institutions: | | |
| Noninterest-bearing balances and currency and coin | | $ 7,397,000 |
| Interest-bearing balances: | | 9,242,000 |
| Securities: | | |
| Held-to-maturity securities | | 4,013,000 |
| Available-for-sale securities | | 12,199,000 |
| Federal funds sold and securities purchased under agreements to resell in domestic offices of the bank and of its Edge and Agreement subsidiaries, and in IBFs: Federal funds sold | | 3,468,000 |
| Securities purchased under agreements to resell | | 519,000 |
| Loans and lease financing receivables: | | |
| Loans and leases, net of unearned income | $136,294,000 | |
| LESS: Allowance for loan and lease losses | 4,401,000 | |
| | ------------ | |
| Loans and leases, net of unearned income and allowance | | 131,893,000 |
| Assets held in trading accounts | | 33,328,000 |
| Premises and fixed assets (including capitalized leases) | | 3,463,000 |
| Other real estate owned | | 1,299,000 |
| Investments in unconsolidated subsidiaries and associated companies | | 1,039,000 |
| Customers' liability to this bank on acceptances outstanding | | 1,408,000 |
| Intangible assets | | 14,000 |
| Other assets | | 7,825,000 |
| | | ------------ |
| TOTAL ASSETS | | $217,107,000 |
| | | ============ |

LIABILITIES

| | | |
|---|---|---|
| Deposits: | | |
| In domestic offices | | $ 33,302,000 |
| Noninterest-bearing | $ 11,799,000 | |
| Interest-bearing | 21,503,000 | |
| | ------------ | |
| In foreign offices, Edge and Agreement subsidiaries, and IBFs | | 116,776,000 |
| Noninterest-bearing | 8,429,000 | |
| Interest-bearing | 108,347,000 | |
| | ------------ | |
| Federal funds purchased and securities sold under agreements to repurchase in domestic offices of the bank and of its Edge and Agreement subsidiaries, and in IBFs: | | |
| Federal funds purchased | | 1,756,000 |
| Securities sold under agreements to repurchase | | 675,000 |
| Trading liabilities | | 22,079,000 |
| Other borrowed money: | | |
| With original maturity of one year or less | | 8,224,000 |
| With original maturity of more than one year | | 4,321,000 |
| Mortgage indebtedness and obligations under capitalized leases | | 107,000 |

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

```
Bank's liability on acceptances
  executed and outstanding                    1,418,000
Notes and debentures subordinated
  to deposits                                 5,700,000
Other liabilities                             7,752,000
                                            -------------
TOTAL LIABILITIES                           $202,110,000
                                            =============
                    EQUITY CAPITAL
Common stock                                $     751,000
Surplus                                         6,686,000
Undivided profits and capital reserves          7,855,000
Net unrealized holding gains (losses)
  on available-for-sale securities                246,000
Cumulative foreign currency translation
  adjustments                                    (541,000)
                                            -------------
TOTAL EQUITY CAPITAL                         $ 14,997,000
                                            -------------
TOTAL LIABILITIES AND EQUITY CAPITAL        $217,107,000
                                            =============
```

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

I, Roger W. Trupin, Controller of the above-named bank do hereby declare that this Report of Condition is true and correct to the best of my knowledge and belief.

ROGER W. TRUPIN

We, the undersigned directors, attest to the correctness of this Report of Condition. We declare that it has been examined by us, and to the best of our knowledge and belief has been prepared in conformance with the instructions and is true and correct.

CHRISTOPHER J. STEFFEN
WILLIAM R. RHODES
PAUL J. COLLINS                                    Directors

Created by 10KWizard    www.10KWizard.com

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

FORM 8-A

(Amendment No.1)

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FOR REGISTRATION OF CERTAIN CLASSES OF SECURITIES PURSUANT TO SECTION 12(b)
OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934

GENERAL MOTORS CORPORATION
---------------------------
(Exact name of registrant as specified in its charter)

| Delaware | TIN# 38-0572515 |
|---|---|
| (State of incorporation or organization) | (I.R.S. Employer Identification No.) |
| 300 Renaissance Center | |
| Detroit, Michigan | 48265-3000 |
| (Address of principal executive offices) | (Zip Code) |

If this form relates to the registration of a class of securities pursuant to
Section 12(b) of the Exchange Act and is effective pursuant to General
Instruction A.(c), check the following box. [X]

If this form relates to the registration of a class of securities pursuant to
Section 12(g) of the Exchange Act and is effective pursuant to General
Instruction A.(d), check the following box. [ ]

Securities Act registration statement file number to which this form relates:
333-75534 and 333-83514.

Securities to be registered pursuant to Section 12(b) of the Act:

| Title of each class to be registered | Name of each exchange on which each class is to be registered |
|---|---|
| 5.25% Series B Convertible Senior Debentures due 2032 | New York Stock Exchange, Inc. |

Securities to be registered pursuant to Section 12(g) of the Act: None

Information Required in Registration Statement

Item 1 and Item 2 are hereby amended and restated as follows:

Item 1.    Description of Registrant's Securities to be Registered.

A description of the 5.25% Series B Convertible Senior Debentures due 2032 of
the Registrant is contained in the "Description of Debt Securities" set forth in
the Prospectus dated January 2, 2002 (filed as part of the Registration
Statement on Form S-3 (Registration No. 333-75534) of the Registrant under the
Securities Act of 1993, as amended) and in the "Description of Series B
Debentures" set forth in the related Prospectus Supplement of the Registrant
dated February 28, 2002, which descriptions are incorporated herein by
reference.

Item 2.        Exhibits.

| Number | Description |
|---|---|
| 1. | Restated Certificate of Incorporation of the Registrant, as amended and supplemented to date. See Exhibit 3(a) to the most recent Form 10-K or Form 10-Q as appropriate. |
| 2. | By-Laws of the Registrant, as amended and supplemented to date.  See Exhibit 3(b) to the most recent Form 10-K or 10-Q as appropriate. |

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

3.      Senior Debt Indenture, dated as of December 7, 1995,
        by and between the Registrant and Citibank, N.A. as
        trustee, incorporated herein by reference to Exhibit 4(a)
        of the Registration Statement on Form S-3 (No. 33-64229)
        of the Registrant filed on November 14, 1995.

4.      First Supplemental Indenture, dated as of March 4, 2002
        by and between the Registrant and Citibank, N.A. as
        trustee.

5.      Form of 5.25% Series B Convertible Senior Debentures
        due 2032.

Signature

Pursuant to the requirements of Section 12 of the Securities and Exchange Act of
1934, as amended, the Registrant has duly caused this registration statement to
be signed on its behalf by the undersigned, thereto duly authorized.

General Motors Corporation
--------------------------
            (Registrant)

Date: March 6, 2002          By:        /s/ Sanjiv Khattri
                             -----------------------------------
                             Sanjiv Khattri, Assistant Treasurer

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

EXHIBIT 4

GENERAL MOTORS CORPORATION

and

CITIBANK, N.A.,

Trustee

FIRST SUPPLEMENTAL INDENTURE

Dated as of March 4, 2002

SUPPLEMENTAL INDENTURE

FIRST SUPPLEMENTAL INDENTURE, dated as of March 4, 2002, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Corporation"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee", which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

WITNESSETH:

WHEREAS, the Corporation and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Corporation (the "Securities"). Terms used in this First Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, this First Supplemental Indenture amends the Indenture, pursuant to Section 10.01 thereof, in order to permit the issuance of Securities that may be converted into any securities of any person.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree for the equal and proportionate benefit of the respective Holders from time to time hereafter of the Securities as follows:

ARTICLE ONE

Section 1. Section 1.01 of the Indenture shall be amended by adding the following paragraph immediately prior to the definition of "Additional Amounts":

When used with respect to any Security, the words "convert", "converted" and "conversion" are intended to refer to the right of the Holder or the Corporation to convert or exchange such Security into or for securities or other property in accordance with such terms, if any, as may hereafter be specified for such Security as contemplated by Section 2.01, and these words are not intended to refer to any right of the Holder or the Corporation to exchange such Security for other Securities of the same series and like tenor pursuant to Section 2.05, 2.06, 2.07, or 10.04 or another similar provision of this Indenture, unless the context otherwise requires; and references herein to the terms of any Security that may be converted mean such terms as may be specified for such Security as contemplated in Section 2.01.

Section 2. Section 1.01 of the Indenture shall be amended by adding the following paragraph immediately prior to the definition of "Corporate Trust Office":

The term "Conversion Agent" shall mean initially Citibank, N.A. and subsequently, any other conversion agent appointed by the Corporation from time to time in respect of the Securities.

Section 3. Section 2.01 of the Indenture shall be amended by deleting paragraphs (16) and (17) thereof and replacing them with the following paragraphs:

(16) any trustees, depositaries, authenticating and paying agents, transfer agents, registrars or any other agents with respect to the

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

Security of such series;

(17) the terms, if any, on which Holders of Securities may convert or exchange Securities of the series into any securities of any person; and

(18) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

Section 4. Section 3.02 of the Indenture shall be amended by deleting Section 3.02 in its entirety and adding a new Section 3.02 to read as follows:

Section 3.02 Notice of Redemption; Selection of Securities. The election of the Corporation to redeem any Securities shall be evidenced by an Officers' Certificate. In case the Corporation shall desire to exercise the right to redeem all, or, as the case may be, any part of a series of Securities pursuant to the terms and provisions applicable to such series, it shall fix a date for redemption and shall mail a notice of such redemption at least thirty and not more than sixty days prior to the date fixed for redemption to the Holders of the Securities of such series which are Registered Securities to be redeemed as a whole or in part at their last addresses as the same appear on the Security Register. Such mailing shall be by prepaid first class mail. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice. In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Notice of redemption to the Holders of Unregistered Securities to be redeemed as a whole or in part, who have filed their names and addresses with the Trustee as described in Section 5.04, shall be given by mailing notice of such redemption, by first class mail, postage prepaid, at least thirty days and not more than sixty days prior to the date fixed for redemption, to such Holders at such addresses as were so furnished to the Trustee (and, in the case of any such notice given by the Corporation, the Trustee shall make such information available to the Corporation for such purpose). Notice of redemption to any other Holder of an Unregistered Security of such series shall be published in an Authorized Newspaper in the Borough of Manhattan, The City of New York and in an Authorized Newspaper in London (and, if required by Section 4.04, in an Authorized Newspaper in Luxembourg), in each case, once in each of two successive calendar weeks, the first publication to be not less than thirty nor more than sixty days prior to the date fixed for redemption. Any notice which is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice. In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Security of such series.

Each such notice of redemption shall specify the provisions of such Securities under which such redemption is made, that the conditions precedent, if any, to such redemption have occurred, shall describe the same and the date fixed for redemption, the redemption price at which such Securities are to be redeemed, the Place of Payment, that payment will be made upon presentation and surrender of such Securities and, in the case of Coupon Securities, of all Coupons appertaining thereto maturing after the date fixed for redemption, that interest and Additional Amounts, if any, accrued to the date fixed for redemption will be paid as specified in said notice, and that on and after said date interest, if any, thereon or on the portions thereof to be redeemed will cease to accrue. If less than all of the Securities of a series are to be redeemed any notice of redemption published in an Authorized Newspaper shall specify the numbers of the Securities to be redeemed. In case any Security is to be redeemed in part only, the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that upon surrender of such Security, a new Security or Securities in principal amount equal to the unredeemed portion thereof will be issued of the same series. In case any Security is convertible, the notice of redemption shall state the time of conversion, the date on which the right to convert the Security to be redeemed will terminate and the place or places where such Security may be surrendered for conversion.

At least one Business Day prior to the redemption date specified in the notice of redemption given for Unregistered Securities as provided in this Section and on or prior to the redemption date specified in the notice of redemption given for all Securities other than Unregistered Securities, the Corporation will deposit in trust with the Trustee or with one or more paying agents an amount of money sufficient to redeem on the redemption date all the Securities or portions of Securities so called for redemption, other than any Securities called for redemption on the redemption date which have been converted prior to the date of such deposit, at the appropriate redemption price, together with accrued interest, if any, to the date fixed for redemption. The Corporation will give the Trustee notice of each redemption at least forty-five days prior to the date fixed for redemption (unless a shorter notice is acceptable to the Trustee) as to the aggregate principal amount of Securities to be

redeemed. In case of redemption of less than all Securities, the Issuer
will give the Trustee sixty days prior notice.

If less than all of the Securities of a series are to be redeemed,
the Trustee shall select, pro rata or by lot or in such other manner as it
shall deem reasonable and fair, the numbers of the Securities to be
redeemed in whole or in part.

If any Security selected for partial redemption is converted in part
before termination of the conversion right with respect to the portion of
the Security so selected, the converted portion of such Security shall be
deemed (so far as may be) to be the portion selected for redemption.
Securities which have been converted during a selection of Securities to
be redeemed shall be treated by the Trustee as outstanding for the purpose
of such selection.

If any Security called for redemption is converted, any money
deposited with the Trustee or with any paying agent or so segregated and
held in trust for the redemption of such Security shall (subject to any
right of the Holder of such Security or any predecessor Security to
receive interest as provided in the last paragraph of Section 4.01 or in
the terms of such Security) be paid to the Corporation upon its request
or, if then held by the Corporation, shall be discharged from such trust.

Section 5. The last paragraph of Section 3.03 shall be replaced with the
following new Section 3.04:

Section 3.04. Securities Redeemed in Part. Upon presentation of any
Security redeemed in part only, the Corporation shall execute and the
Trustee shall authenticate and deliver to the Holder thereof, at the
expense of the Corporation, a new Security or Securities, of authorized
denominations, in aggregate principal amount equal to the unredeemed
portion of the Security so presented of the same series.

Section 6. The first sentence of Section 4.02 shall be deleted, and a new
first sentence shall be added, to read in its entirety as follows:

As long as any of the Securities of a series remain outstanding, the
Corporation will designate and maintain, in the Borough of Manhattan, The
City of New York, an office or agency where the Registered Securities of
such series may be presented for registration of transfer or exchange or
for conversion as in this Indenture provided, an office or agency where
notices and demands to or upon the Corporation in respect of the
Securities of such series or of this Indenture may be served, and an
office or agency where the Securities of such series may be presented for
payment.

Section 7. Section 6.08 shall be amended by adding the following at the
end of the paragraph after the phrase "expressed in such Security":

(or, in the case of redemption, on or after the redemption date) or for
the enforcement of the right to convert any Security in accordance with
its terms.

Section 8. Section 10.01 shall be amended by deleting the word "and" at
the end of paragraph (f) thereof, deleting the period and adding the word ";
and" at the end of paragraph (g) thereof, and adding the following paragraph
(h):

(h) to add to or change any of the provisions of this Indenture with
respect to any Securities that by their terms may be converted into any
securities of any person, in order to permit or facilitate the issuance,
payment or conversion of such Securities.

Section 9. Section 10.02 shall be amended by making provisions (ii) and
(iii) in the first paragraph thereof into new provisions (iii) and (iv),
respectively, and by adding a new (ii) as follows:

(ii) in the case of Securities that are convertible, change in any
manner adverse to the Holders (A) the amounts payable upon the redemption
of the Securities, (B) the dates, if any, on which the Holders have the
right to require the Corporation to repurchase the Securities, or the
transactions or events, if any, upon which the Holders have the right to
require the Corporation to repurchase the Securities or the amounts
payable upon the repurchase thereof or (C) the circumstances, if any,
under which the Holders have the right to convert the Securities or the
amounts receivable upon conversion thereof (but excluding from operation
of this clause (ii) any adjustment to the conversion rate) or

Section 10. Section 14.05 of the Indenture shall be amended by deleting
Section 14.05 in its entirety and adding a new Section 14.05 to read as follows:

Section 14.05. Legal Holidays. In any case where the date of
maturity of any interest, premium or Additional Amounts on or principal of
the Securities, the date fixed for redemption of any Securities or any
date on which a holder has the right to convert his Security shall not be
a Business Day in a city where payment thereof is to be made, then payment
of any interest, premium or Additional Amounts on, or principal of such
Securities need not be made on such date in such city but may be made on

the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

### ARTICLE TWO

Section 1. Recitals. The recitals contained herein shall be taken on the statements of the Corporation and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this First Supplemental Indenture.

Section 2. Counterparts. This First Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 3. New York Contract. This Indenture and each Security shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this First Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

IN WITNESS WHEREOF, the parties hereto have caused this First Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By: _____
    Name: Antoinette Skeete
    Title: Assistant Secretary

CITIBANK, N.A., as Trustee

By: _____
    Name:
    Title

EXHIBIT 5
R-

Unless this certificate is presented by an authorized representative of The
Depository Trust Company, a New York corporation ("DTC"), to the Company or its
agent for registration of transfer, exchange or payment, and any certificate
issued is registered in the name of Cede & Co. or such other name as requested
by an authorized representative of DTC (and any payment is made to Cede & Co. or
to such other entity as is requested by an authorized representative of DTC),
ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY
PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an
interest herein.

GENERAL MOTORS CORPORATION

5.25% Series B Convertible Senior Debentures Due March 6, 2032 (the "Series B
Debentures")

CUSIP 370442733

GENERAL MOTORS CORPORATION, a Delaware corporation (hereinafter called the
"Company"), for value received, hereby promises to pay to Cede & Co., or
registered assigns, the principal sum of _____DOLLARS ($_____) at
the office or agency of the Company for such purpose in the Borough of
Manhattan, The City of New York, on March 6, 2032, in such coin or currency of
the United States of America as at the time of payment shall be legal tender for
the payment of public and private debts, and to pay interest on said principal
sum at the rate of 5.25% per annum at the office or agency of the Company in the
Borough of Manhattan, The City of New York, in like coin or currency from the
first day of March or September as the case may be, to which interest on the
Global Debentures has been paid preceding the date hereof (unless the date
hereof is March 1 or September 1, to which interest has been paid, in which case
from the date hereof, or unless no interest has been paid on the Global
Debentures since the original issuance of this Global Debenture, in which case
from March 6, 2002), semi-annually on March 1 and September 1 (each, an
"Interest Payment Date"), until payment of said principal sum has been made or
duly provided for. The first payment to be made on September 1, 2002 is in
respect of the period from March 6, 2002 to September 1, 2002. Notwithstanding
the foregoing, if the date hereof is after February 15 or August 15, as the case
may be, and before the following March 1 or September 1, this Global Debenture
shall bear interest from such March 1 or September 1; provided, however, that if
the Company shall default in the payment of interest due on such March 1 or
September 1, then this Global Debenture shall bear interest from the next
preceding March 1 or September 1 to which interest has been paid or, if no
interest has been paid on the Global Debentures since the original issuance of
the Global Debentures, from March 6, 2002. The interest so payable on any March
1 or September 1 will, subject to certain exceptions provided in the Indenture
referred to below, be paid to the person in whose name this Global Debenture is
registered at the close of business on the fifteenth day of the calendar month
preceding such March 1 or September 1 (each, a "Record Date"), except that if
the Series B Debentures are to be redeemed by the Company or purchased by the
Company at the option of the Holder on a date that falls on or after a Record
Date and prior to the corresponding Interest Payment Date, the interest so
payable will be paid to the Holder that tenders the Series B Debentures for
redemption or purchase, as the case may be. At the option of the Company,
interest may be paid by check to the registered Holder hereof entitled thereto
at his last address as it appears on the registry books, and principal may be
paid by check to the registered Holder hereof or other person entitled thereto
against surrender of this Global Debenture. If any March 1 or September 1 falls
on a day that is not a Business Day (as defined below), payment of interest
shall be made on the next succeeding Business Day with the same force and effect
as if made on that date, but no additional interest shall accrue as a result of
such delay in payment. Interest payable on the final maturity date of the Series
B Debentures, or on any redemption date or any repayment date that is not an
Interest Payment Date, will be paid to the person entitled to payment of
principal on the Series B Debentures.

This Global Debenture is one of a duly authorized issue of debentures, notes,
bonds or other evidences of indebtedness of the Company (hereinafter called the
"Series B Debentures") of the series herein specified, all issued or to be
issued under and pursuant to an indenture dated as of December 7, 1995, as
supplemented by the First Supplemental Indenture, dated as of March 4, 2002
(herein called the "Indenture"), duly executed and delivered by the Company to
Citibank, N.A. (herein called the "Trustee"), to which Indenture and all
indentures supplemental thereto reference is hereby made for a description of
the rights, limitations of rights, obligations, duties and immunities thereunder
of the Trustee, the Company and the Holders of the Series B Debentures. This
Global Debenture represents $_____ of the Series B Debentures, limited
in aggregate principal amount to $2,600,000,000. The Global Debentures will bear
interest, calculated on the basis of a 360-day year consisting of twelve 30-day
months.

In case an Event of Default, as defined in the Indenture, with respect to the
Series B Debentures shall have occurred and be continuing, the principal hereof
may be declared, and upon such declaration shall become, due and payable in the
manner, with the effect and subject to the conditions provided in the Indenture.

The Indenture contains provisions permitting the Company and the Trustee, with
the consent of the Holders of not less than a majority in aggregate principal

amount of the Securities at the time Outstanding of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series; provided, that no such supplemental indenture shall (i) extend the final maturity of any Security, or reduce the principal amount thereof or any premium thereon, or reduce the rate or extend the time of payment of any interest thereon, or impair or affect the rights of any Holder to institute suit for the payment thereof, without the consent of the Holder of each Security so affected, (ii) change in any manner adverse to the Holders (A) the amount payable upon redemption of the Securities under Section 4 below, (B) the dates on which the Holders have the right under Section 5 below to require the Company to repurchase the Securities, or the transactions or events upon which the Holders have the right under Section 6 below to require the Company to repurchase the Securities or the amounts payable upon the repurchase thereof or (C) the circumstances under which the Holders have the right under Section 1 below to convert the Securities or the amounts receivable upon conversion thereof (but excluding from the operation of this clause (ii) any adjustment to the conversion rate), in each case without the consent of the Holder of each Security so affected, or (iii) reduce the aforesaid percentage of Securities, the Holders of which are required to consent to any such supplemental indenture, without the consent of the Holder of each Security affected. Any such consent or waiver by the Holder of this Global Debenture shall be conclusive and binding upon such Holder and upon all future Holders of this Global Debenture and of any Global Debenture issued upon the registration of transfer hereof or in lieu hereof, whether or not notation for such consent or waiver is made upon this Global Debenture.

No reference herein to the Indenture and no provision of this Global Debenture or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and interest on this Global Debenture at the place, at the respective times, at the rate, and in the coin or currency, herein prescribed.

The Company may from time to time, without notice to or the consent of the registered Holders of the Global Debentures, create and issue further debentures ranking pari passu (the "further Series B Debentures") with the Global Debentures in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further Series B Debentures or except for the first payment of interest following the issue date of such further Series B Debentures) and so that such further Series B Debentures may be consolidated and form a single series with the Global Debentures and have the same terms as to status, redemption or otherwise as the Global Debentures.

Section 1.  Conversion Privilege

Subject to and upon compliance with the provisions set forth below and in the Indenture, upon the occurrence of one of the events set forth below, a Holder of the Series B Debentures shall have the right, at its option, at any time after the original issuance of the Series B Debentures hereunder through 5:00 p.m., New York City time, on the final maturity date of the Series B Debentures (except that, with respect to any Series B Debenture or portion of a Series B Debenture that shall be called for conversion, such right shall terminate at the close of business on the Business Day next preceding the date fixed for redemption of such Series B Debenture or portion of a Series B Debenture unless the Company shall default in payment due upon redemption thereof) to convert the principal amount of this Series B Debenture, or any portion of such principal amount that is an integral multiple of $25.00, into fully paid and non-assessable shares of the Company's $1 2/3 par value common stock (the "Common Stock") at the conversion rate (the "Conversion Rate") in effect at such time, by surrender of the Series B Debenture so to be converted, together with any required funds, in the manner provided in Section 2 below. The Conversion Rate is 0.3852 shares per $25.00 principal amount, subject to adjustment from time to time as set forth in Section 3 below.

Other than in the case of a Principal Value Conversion (as defined below), if the Company elects, it may, in lieu of delivering shares of Common Stock, pay to Holders tendering Series B Debentures for conversion an amount in cash per Series B Debenture (for all or any portion of such converted Series B Debentures) equal to: (1) the average Closing Sale Price of the Common Stock for the five consecutive Trading Days immediately following the date of the Company's notice of its election to deliver cash, multiplied by (2) the number of shares of Common Stock that the Holder would otherwise be entitled to receive upon conversion. On a selective basis, the Company may also pay cash in lieu of shares of Common Stock in the event that the issuance of shares of Common Stock is prohibited by law. The Company will inform Holders through the Trustee no later than two Business Days following the Conversion Date of its election to pay cash in lieu of delivering shares of Common Stock. The Company may not change its election with respect to the consideration to be delivered upon conversion of a Series B Debenture once it has provided such notice to the Holders. Cash will be delivered to Holders on the second Business Day after the fifth Trading Day following the date of the Company's notice of its election to deliver cash. "Conversion Date" means, with respect to any Holder, the date that the Conversion Agent is notified by the Depositary of the due completion of the procedures of the Depositary with respect to conversion, or the due surrender of such Holder's Series B Debentures for conversion as provided below.

(a) The Series B Debentures shall be convertible only upon the occurrence

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

of one of the following events:

(1)     during any fiscal quarter commencing after March 31, 2002 if the Closing
        Sale Price of the Common Stock exceeds 120% of the Conversion Price for at
        least 20 Trading Days in the 30 consecutive Trading Days ending on the
        last Trading Day of the immediately preceding fiscal quarter (it being
        understood for purposes of this paragraph that the Conversion Price in
        effect on the close of each of the 30 consecutive Trading Days shall be
        used);

(2)     during the five Business Day period after any nine consecutive Trading Day
        period in which the Trading Price of the Series B Debentures for each day
        of such period was less than 95% of the product of the Closing Sale Price
        of the Common Stock multiplied by the number of shares of Common Stock
        issuable upon conversion of each $25.00 principal amount of the Series B
        Debentures; provided, that if on the date of any conversion pursuant to
        this paragraph the Closing Sale Price of the Common Stock is greater than
        the Conversion Price, a Holder shall receive, in lieu of Common Stock
        based on the Conversion Price, cash or Common Stock or a combination of
        both, at the Company's option, with a value equal to the principal amount
        of the Holder's Series B Debentures plus accrued interest as of the
        conversion date (a "Principal Value Conversion");

(3)     if the Series B Debentures have been called for redemption, at any time on
        or after the date the notice of redemption has been given until the close
        of business on the Business Day immediately preceding the redemption date;
        or

(4)     as provided in paragraph (b) below.

        The Conversion Agent shall, on behalf of the Company, determine on a
        daily basis whether the Series B Debentures shall be convertible as
        a result of the occurrence of an event specified in clause (a)
        above; provided, that the Company and not the Conversion Agent shall
        be responsible for determining, on a daily basis, the Closing Sale
        Price of the Common Stock. If the Series B Debentures shall be so
        convertible, the Company shall promptly deliver to the Conversion
        Agent and the Trustee written notice thereof. Whenever the Series B
        Debentures shall become convertible, the Company or, at the
        Company's request, the Trustee in the name and at the expense of the
        Company, shall notify Holders of the event triggering such
        convertibility in the manner set forth in Section 1.02 of the
        Indenture, at the Holder's address as it appears on the registration
        books of the Company, and the Company shall also publicly announce
        such information and publish it on the Company's Web site or such
        other public medium as the Company may use at the time. Any notice
        so given shall be conclusively presumed to have been duly given,
        whether or not a Holder receives such notice.

        (b)     In the event that:

(1)     (A) the Company distributes to all Holders of its shares of Common Stock
        rights or warrants entitling them (for a period expiring within 45 days of
        the record date for the determination of the stockholders entitled to
        receive such distribution) to subscribe for or purchase shares of Common
        Stock, at a price per share less than the average of the Closing Sale
        Prices of the Common Stock for the ten Trading Days immediately preceding,
        but not including, the date such distribution is first publicly announced
        by the Company, or (B) the Company distributes to all Holders of its
        shares of Common Stock, cash or other assets, debt securities or rights or
        warrants to purchase its securities, where the Fair Market Value of such
        distribution per share of Common Stock exceeds 15% of the Closing Sale
        Price of a share of Common Stock on the Trading Day immediately preceding,
        but not including, the date such distribution is first publicly announced
        by the Company, then, in either case, the Series B Debentures may be
        surrendered for conversion at any time on and after the date that the
        Company gives notice to the Holders of such right, which shall be not less
        than 10 days prior to the Ex-Dividend Time for such distribution, until
        the earlier of the close of business on the Business Day immediately
        preceding, but not including, the Ex-Dividend Time or the date the Company
        publicly announces that such distribution will not take place; provided
        that, no adjustment to the Conversion Price or the ability of a Holder of
        a Series B Debenture to convert will be made if the Holder will otherwise
        participate in such distribution without conversion; or

(2)     (A) the Company consolidates with or merges with or into another person or
        conveys, transfers, sells, leases or otherwise disposes of all or
        substantially all of its properties and assets, (B) the Company is not the
        resulting or surviving entity, (C) such transaction is not with an
        Affiliate of the Company and (D) after the completion or consummation of
        such transaction either (i) more than 50% of the surviving or resulting
        entity's Voting Stock is not held by the Company's pre-transaction
        shareholders or (ii) more than 50% of the surviving or resulting entity's
        directors were not directors of the Company or directors approved by the
        Board of Directors immediately prior to the transaction, then the Series B
        Debentures may be surrendered for conversion at any time from and after
        the date 15 days prior to the anticipated effective date of the
        transaction and ending on and including the date 15 days after the
        consummation of the transaction. The Board of Directors shall determine

the anticipated effective date of the transaction, and such determination shall be conclusive and binding on the Holders and shall be publicly announced by the Company and posted on its Web site or such other public medium as the Company may use at the time not later than two Business Days prior to the 30 day period described in the preceding sentence.

"Affiliate" of any specified person means any other person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified person. For the purposes of this definition, "control" when used with respect to any specified person means the power to direct or cause the direction of the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Business Day" means each day of the year other than a Saturday or Sunday on which banking institutions in The City of New York are not authorized or obligated to close.

"Capital Stock" for any corporation means any and all shares, interests, rights to purchase, warrants, options, participations or other equivalents of or interests in (however designated) stock issued by that corporation.

"Closing Sale Price" on any date means the closing per share price of the Common Stock (or, if no closing sale price is reported, the average of the closing bid and ask prices) on such date as reported on the New York Stock Exchange, or if the Common Stock is not listed on the New York Stock Exchange, as reported on a national securities exchange, or if not reported on a national securities exchange, as reported by the NASDAQ National Market, in each case calculated without reference to extended or after-hours trading. In the absence of such a quotation, the Company shall determine the Closing Sale Price on the basis of such quotations as it considers appropriate.

"Conversion Price" per share of Common Stock means, on any date, $25.00 principal amount of the Series B Debentures divided by the Conversion Rate as of that date.

"Ex-Dividend Time" means, with respect to any issuance or distribution on shares of Common Stock, the first date on which the shares of Common Stock trade regular way on the principal securities market on which the shares of Common Stock are then traded without the right to receive such issuance or distribution.

"Trading Day" means a day during which trading in the Common Stock occurs regular way on the New York Stock Exchange, or if the Common Stock is not listed on the New York Stock Exchange, on the principal other national or regional securities exchange on which the Common Stock is then listed, or, if the Common Stock is not listed on a national or regional securities exchange, as reported by NASDAQ National Market, or, if the Common Stock is not so reported, as reported on the principal other market on which the Common Stock is then traded.

"Trading Price" means, on any date, the average of the secondary market bid quotations per Series B Debenture obtained by the Conversion Agent for $10,000,000 principal amount of Series B Debentures at approximately 3:30 p.m., New York City time, on such date from three independent nationally recognized securities dealers selected by the Company; provided, that if at least three such bids cannot reasonably be obtained by the Conversion Agent, but two bids are obtained, then the average of the two bids shall be used, and if only one such bid can reasonably be obtained by the Conversion Agent, this one bid shall be used; and provided further, that if the Conversion Agent cannot reasonably obtain at least one bid for $10,000,000 principal amount of Series B Debentures from a nationally recognized securities dealer or in the Company's reasonable judgment, the bid quotations are not indicative of the secondary market value of the Series B Debentures, then the Trading Price of the Series B Debentures shall be deemed to be less than 95% of the product of the Closing Sale Price of the Common Stock multiplied by the number of shares of Common Stock issuable upon conversion of $25.00 principal amount of the Series B Debentures. The Conversion Agent shall have no obligation to determine the Trading Price of the Series B Debentures unless the Company has requested such a determination; and the Company shall have no obligation to make such request unless a Holder provides it with reasonable evidence that the trading price of the Series B Debentures would be less than 95% of the product of the Closing Sale Price of the Common Stock and the number of shares issuable upon conversion of $25.00 principal amount of Series B Debentures. If such evidence is provided, the Company shall instruct the Conversion Agent to determine the Trading Price of the Series B Debentures beginning on the next Trading Day and on each successive Trading Day until the Trading Price is greater than or equal to 95% of the product of the Closing Sale Price of the Common Stock and the number of shares issuable upon conversion of $25.00 principal amount of the Series B Debentures.

"Voting Stock" of a person means Capital Stock of such person of the class or classes pursuant to which the Holders thereof have the general voting power under ordinary circumstances to elect at least a majority of the board of directors, managers or trustees of such person (irrespective of whether or not at the time Capital Stock of any other class or classes shall have or might have voting power by reason of the happening of any contingency).

A Series B Debenture in respect of which a Holder is exercising its option to require redemption pursuant to Section 5 hereof or redemption upon a

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

Fundamental Change pursuant to Section 6 hereof may be converted only if such Holder withdraws its election in accordance with Section 5 hereof or Section 6 hereof, as the case may be. A Holder of Series B Debentures is not entitled to any rights of a Holder of Common Stock until such Holder has converted its Series B Debentures to Common Stock, and only to the extent such Series B Debentures are deemed to have been converted to Common Stock in accordance with the terms of this Global Debenture.

Section 2.    Conversion Procedures

Each Series B Debenture shall be convertible at the office of the Conversion Agent into fully paid and nonassessable shares (calculated to the nearest 1/100th of a share) of Common Stock. Unless the Company elects otherwise, or unless it is a Principal Value Conversion, the Series B Debenture will be converted into shares of Common Stock at the Conversion Price therefor. No payment or adjustment shall be made in respect of dividends on the Common Stock or accrued interest on a converted Series B Debenture.

In the case of a Principal Value Conversion, a Holder will receive, in lieu of Common Stock, cash, Common Stock, or a combination of cash and Common Stock, at the Company's option, with a value equal to the principal amount of the Series B Debenture converted plus accrued interest as of the conversion date. If a Holder surrenders its debentures for conversion and it is a Principal Value Conversion, the Company will notify the Holder by the second Trading Day following the Conversion Date whether it will pay the principal amount plus accrued interest in cash, Common Stock, or a combination of cash and Common Stock, and in what percentage. Any Common Stock delivered upon a Principal Value Conversion will be valued at the greater of (x) the Conversion Price on the Conversion Date and (y) the Closing Sale Price on the third Trading Day after the Conversion Date. The Company will pay any portion of the principal amount plus accrued interest to be paid in cash on the third Trading Day after the Conversion Date. If the Company elects to deliver Common Stock to pay any portion of such principal amount plus accrued interest, it will deliver Common Stock on the fourth Trading Day following the Conversion Date.

The Company shall not issue any fraction of a share of Common Stock in connection with any conversion of Series B Debentures, but instead shall make a cash payment (calculated to the nearest cent) equal to such fraction multiplied by the Closing Sale Price of the Common Stock on the last Trading Day prior to the date of conversion. Holders will not receive any payment (whether in cash or Common Stock) on conversion of a Series B Debenture representing accrued interest. Instead, accrued interest will be deemed to be cancelled, extinguished and forfeited upon conversion.

Before any Holder of a Series B Debenture shall be entitled to convert the same into Common Stock, such Holder shall, in the case of Series B Debentures issued in global form, comply with the procedures of the Depository in effect at that time, and in the case of certificated Series B Debentures, surrender such Series B Debentures, duly endorsed to the Company or in blank, at the office of the Conversion Agent, and said office shall give written notice to the Company at said office or place that such Holder elects to convert the same and shall state in writing therein the principal amount of Series B Debentures to be converted and the name or names (with addresses) in which such Holder wishes the certificate ' or certificates for Common Stock to be issued, and, if required, pay funds equal to interest payable on the next Interest Payment Date.

If a Series B Debenture is tendered for conversion during the period after a Record Date for an Interest Payment Date to but excluding the corresponding Interest Payment Date, then unless the Series B Debenture has been called for redemption on a redemption date that occurs during such period, the Series B Debentures must be accompanied by funds equal to the interest payable on that Interest Payment Date on the principal amount so converted; provided, that no such payment need be made if there shall exist at the time of conversion a default in the payment of interest on the Series B Debentures.

The issue of stock certificates on conversion of Series B Debentures shall be made without charge to the converting Holder for any documentary, stamp or similar issue or transfer taxes in respect of the issue thereof, and the Company shall pay any and all documentary, stamp or similar issue or transfer taxes that may be payable in respect of the issue or delivery of shares of Common Stock on conversion of Series B Debentures pursuant hereto. The Company shall not, however, be required to pay any such tax which may be payable in respect of any transfer involved in the issue or delivery of shares of Common Stock or the portion, if any, of the Series B Debentures which are not so converted in a name other than that in which the Series B Debentures so converted were registered, and no such issue or delivery shall be made unless and until the person requesting such issue has paid to the Company the amount of such tax or has established to the satisfaction of the Company that such tax has been paid.

If more than one Series B Debenture shall be surrendered for conversion at one time by the same Holder, the number of full shares of Common Stock which shall be deliverable upon conversion shall be computed on the basis of the aggregate principal amount of the Series B Debentures (or specified portions thereof to the extent permitted thereby) so surrendered. Subject to the next succeeding sentence, the Company will, as soon as practicable thereafter, issue and deliver at said office or place to such Holder of a Series B Debenture, or to such Holder's nominee or nominees, certificates for the number of full shares of Common Stock to which such Holder shall be entitled as aforesaid, together with cash in lieu of any fraction of a share to which such Holder would

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

otherwise be entitled. The Company shall not be required to deliver certificates for shares of Common Stock while the stock transfer books for such stock or the security register are duly closed for any purpose, but certificates for shares of Common Stock shall be issued and delivered as soon as practicable after the opening of such books or security register.

A Series B Debenture shall be deemed to have been converted as of the close of business on the date of the notification to the Conversion Agent by the Depository of the due completion of the procedures of the Depository with respect to conversion or the due surrender of such Debentures for conversion as provided above. The person or persons entitled to receive the Common Stock issuable upon such conversion shall be treated for all purposes as the record holder or holders of such Common Stock as of the close of business on the Conversion Date.

In case any Series B Debenture shall be surrendered for partial conversion, the Company shall execute and the Trustee shall authenticate and deliver to or upon the written order of the Holder of the Series B Debenture so surrendered, without charge to such Holder unless the new Series B Debenture or Series B Debentures are to be registered in a name other than that in which the Series B Debentures were originally registered, a new Series B Debenture or Series B Debentures in authorized denominations in an aggregate principal amount equal to the unconverted portion of the surrendered Series B Debentures.

Section 3.  Conversion Rate Adjustments

The Conversion Rate shall be subject to adjustment from time to time by the Company as follows:

(a) In case the Company shall hereafter pay a dividend or make a distribution to all Holders of the outstanding Common Stock in shares of Common Stock, the Conversion Rate shall be increased so that the same shall equal the rate determined by multiplying the Conversion Rate in effect at the opening of business on the date following the date fixed for the determination of stockholders entitled to receive such dividend or other distribution by a fraction,

(i)    the numerator of which shall be the sum of the number of shares of Common Stock outstanding at the close of business on the date fixed for the determination of stockholders entitled to receive such dividend or other distribution plus the total number of shares of Common Stock constituting such dividend or other distribution; and

(ii)   the denominator of which shall be the number of shares of Common Stock outstanding at the close of business on the date fixed for such determination,

such increase to become effective immediately after the opening of business on the day following the date fixed for such determination. For the purpose of this paragraph (a), the number of shares of Common Stock at any time outstanding shall not include shares held in the treasury of the Company. If any dividend or distribution of the type described in this paragraph (a) is declared but not so paid or made, the Conversion Rate shall again be adjusted to the Conversion Rate that would then be in effect if such dividend or distribution had not been declared.

(b) In case the Company shall issue rights or warrants to all Holders of its outstanding shares of Common Stock entitling them (for a period expiring within forty-five (45) days after the date fixed for determination of stockholders entitled to receive such rights or warrants) to subscribe for or purchase shares of Common Stock at a price per share less than the Current Market Price (as defined below) on the date fixed for determination of stockholders entitled to receive such rights or warrants, the Conversion Rate shall be increased so that the same shall equal the rate determined by multiplying the Conversion Rate in effect immediately prior to the date fixed for determination of stockholders entitled to receive such rights or warrants by a fraction,

(i)    the numerator of which shall be the sum of the number of shares of Common Stock outstanding on the date fixed for determination of stockholders entitled to receive such rights or warrants plus the total number of additional shares of Common Stock offered for subscription o purchase, and

(ii)   the denominator of which shall be the sum of the number of shares of Common Stock outstanding at the close of business on the date fixed for determination of stockholders entitled to receive such rights or warrants plus the number of shares that the aggregate offering price of the total number of shares so offered would purchase at such Current Market Price.

Such adjustment shall be successively made whenever any such rights or warrants are issued, and shall become effective immediately after the opening of business on the day following the date fixed for determination of stockholders entitled to receive such rights or warrants. To the extent that shares of Common Stock are not delivered after the expiration of such rights or warrants, the Conversion Rate shall be readjusted to the Conversion Rate that would then be in effect had the adjustments made upon the issuance of such rights or warrants

been made on the basis of delivery of only the number of shares of Common Stock actually delivered. If such rights or warrants are not so issued, the Conversion Rate shall again be adjusted to be the Conversion Rate that would then be in effect if such date fixed for the determination of stockholders entitled to receive such rights or warrants had not been fixed. In determining whether any rights or warrants entitle the Holders to subscribe for or purchase shares of Common Stock at less than such Current Market Price, and in determining the aggregate offering price of such shares of Common Stock, there shall be taken into account any consideration received by the Company for such rights or warrants and any amount payable on exercise or conversion thereof, the value of such consideration, if other than cash, to be determined by the Board of Directors (whose determination shall be conclusive, and described in a resolution of the Board of Directors).

(c) In case outstanding shares of Common Stock shall be subdivided into a greater number of shares of Common Stock, the Conversion Rate in effect at the opening of business on the day following the day upon which such subdivision becomes effective shall be proportionately increased, and conversely, in case outstanding shares of Common Stock shall be combined into a smaller number of shares of Common Stock, the Conversion Rate in effect at the opening of business on the day following the day upon which such combination becomes effective shall be proportionately reduced, such increase or reduction, as the case may be, to become effective immediately after the opening of business on the day following the day upon which such subdivision or combination becomes effective.

(d) In case the Company shall, by dividend or otherwise, distribute to all Holders of its Common Stock shares of any class of capital stock of the Company or evidences of its indebtedness or assets (including securities, but excluding any rights or warrants referred to in paragraph (b) above, and excluding any dividend or distribution (x) paid exclusively in cash or (y) referred to in paragraph (a) above (any of the foregoing included in this paragraph (d) hereinafter in this paragraph (d) called the "securities")), then, in each such case (unless the Company elects to reserve such securities for distribution to the Holders upon the conversion of the Series B Debentures so that any such Holder converting Series B Debentures will receive upon such conversion, in addition to the shares of Common Stock to which such Holder is entitled, the amount and kind of such securities which such Holder would have received if such Holder had converted its Series B Debentures into Common Stock immediately prior to the record date (as defined in paragraph (f) below for such distribution of the securities), the Conversion Rate shall be increased so that the same shall be equal to the rate determined by multiplying the Conversion Rate in effect on the record date with respect to such distribution by a fraction,

(i)     the numerator of which shall be the Current Market Price on such record date; and

(ii)    the denominator of which shall be the Current Market Price on such record date less the fair market value (as determined by the Board of Directors, whose determination shall be conclusive, and described in a resolution of the Board of Directors) on the record date of the portion of the securities so distributed applicable to one share of Common Stock,

such adjustment to become effective immediately prior to the opening of business on the day following such record date; provided, that if the then fair market value (as so determined) of the portion of the securities so distributed applicable to one share of Common Stock is equal to or greater than the Current Market Price on the record date, in lieu of the foregoing adjustment, adequate provision shall be made so that each Holder shall have the right to receive upon conversion the amount of securities such Holder would have received had such Holder converted each Series B Debenture on the record date. If such dividend or distribution is not so paid or made, the Conversion Rate shall again be adjusted to be the Conversion Rate that would then be in effect if such dividend or distribution had not been declared. If the Board of Directors determines the fair market value of any distribution for purposes of this paragraph (d) by reference to the actual or when issued trading market for any securities, it must in doing so consider the prices in such market over the same period used in computing the Current Market Price on the applicable record date.

Rights or warrants distributed by the Company to all Holders of Common Stock entitling the Holders thereof to subscribe for or purchase shares of the Company's capital stock (either initially or under certain circumstances), which rights or warrants, until the occurrence of a specified event or events ("Trigger Event"): (i) are deemed to be transferred with such shares of Common Stock; (ii) are not exercisable; and (iii) are also issued in respect of future issuances of Common Stock, shall be deemed not to have been distributed for purposes hereof (and no adjustment to the Conversion Rate will be required) until the occurrence of the earliest Trigger Event, whereupon such rights and warrants shall be deemed to have been distributed and an appropriate adjustment (if any is required) to the Conversion Rate shall be made under this paragraph (d). If any such right or warrant, including any such existing rights or warrants distributed prior to the date hereof, are subject to events, upon the occurrence of which such rights or warrants become exercisable to purchase different securities, evidences of indebtedness or other assets, then the date of the occurrence of any and each such event shall be deemed to be the date of distribution and record date with respect to new rights or warrants with such rights (and a termination or expiration of the existing rights or warrants without exercise by any of the Holders thereof). In addition, in the event of any distribution (or deemed distribution) of rights or warrants, or any Trigger

Event or other event (of the type described in the preceding sentence) with respect thereto that was counted for purposes of calculating a distribution amount for which an adjustment to the Conversion Rate was made, (1) in the case of any such rights or warrants that shall all have been redeemed or repurchased without exercise by any Holders thereof, the Conversion Rate shall be readjusted upon such final redemption or repurchase to give effect to such distribution or Trigger Event, as the case may be, as though it were a cash distribution, equal to the per share redemption or repurchase price received by a Holder (or Holders of Common Stock with respect to such rights or warrants (assuming such Holder had retained such rights or warrants), made to all Holders of Common Stock as of the date of such redemption or repurchase, and (2) in the case of such rights or warrants that shall have expired or been terminated without exercise by any Holders thereof, the Conversion Rate shall be readjusted as if such rights and warrants had not been issued. No adjustment of the Conversion Rate shall be made pursuant to this paragraph (d) in respect of rights or warrants distributed or deemed distributed on any Trigger Event to the extent that such rights or warrants are actually distributed, or reserved by the Company for distribution to Holders of Series B Debentures upon conversion by such Holders of Series B Debentures to Common Stock.

For purposes of paragraphs (a), (b) and (d), any dividend or distribution to which paragraph (d) is applicable that also includes shares of Common Stock, or rights or warrants to subscribe for or purchase shares of Common Stock (or both), shall be deemed instead to be: (1) a dividend or distribution of the evidences of indebtedness, assets or shares of capital stock other than such shares of Common Stock or rights or warrants (and any Conversion Rate adjustment required by paragraph (d) with respect to such dividend or distribution shall then be made), immediately followed by (2) a dividend or distribution of such shares of Common Stock or such rights or warrants (and any further Conversion Rate adjustment required by paragraphs (a) and (b) with respect to such dividend or distribution shall then be made), except (A) the record date of such dividend or distribution shall be substituted as "the date fixed for the determination of stockholders entitled to receive such dividend or other distribution," "the date fixed for the determination of stockholders entitled to receive such rights or warrants" and "the date fixed for such determination" within the meaning of paragraphs (a) and (b), and (B) any shares of Common Stock included in such dividend or distribution shall not be deemed "outstanding at the close of business on the date fixed for such determination" within the meaning of paragraph (a).

(e) In case the Company shall, by dividend or otherwise, distribute to all Holders of its Common Stock cash (excluding (x) any quarterly cash dividend on the Common Stock to the extent the aggregate cash dividend per share of Common Stock in any fiscal quarter does not exceed the greater of (A) the amount per share of Common Stock of the next preceding quarterly cash dividend on the Common Stock to the extent that such preceding quarterly dividend did not require any adjustment of the Conversion Rate pursuant to this paragraph (e) (as adjusted to reflect subdivisions or combinations of the Common Stock), and (B) 3.75% of the arithmetic average of the Closing Sale Price during the ten Trading Days immediately prior to the date of declaration of such dividend, and (y) any dividend or distribution in connection with the liquidation, dissolution or winding up of the Company, whether voluntary or involuntary), then, in such case, the Conversion Rate shall be increased so that the same shall equal the rate determined by multiplying the Conversion Rate in effect immediately prior to the close of business on such record date by a fraction,

(i)    the numerator of which shall be the Current Market Price on such record date; and

(ii)   the denominator of which shall be the Current Market Price on such record date less the amount of cash so distributed (and not excluded as provided above) applicable to one share of Common Stock,

such adjustment to be effective immediately prior to the opening of business on the day following the record date; provided that if the portion of the cash so distributed applicable to one share of Common Stock is equal to or greater than the Current Market Price on the record date, in lieu of the foregoing adjustment, adequate provision shall be made so that each Holder shall have the right to receive upon conversion the amount of cash such Holder would have received had such Holder converted each Series B Debenture on the record date. If such dividend or distribution is not so paid or made, the Conversion Rate shall again be adjusted to be the Conversion Rate that would then be in effect if such dividend or distribution had not been declared. If any adjustment is required to be made as set forth in this paragraph (e) as a result of a distribution that is a quarterly dividend, such adjustment shall be based upon the amount by which such distribution exceeds the amount of the quarterly cash dividend permitted to be excluded pursuant hereto. If an adjustment is required to be made as set forth in this paragraph (e) above as a result of a distribution that is not a quarterly dividend, such adjustment shall be based upon the full amount of the distribution.

(f) In case a tender or exchange offer made by the Company or any subsidiary for all or any portion of the Common Stock shall expire and such tender or exchange offer (as amended upon the expiration thereof) shall require the payment to stockholders of consideration per share of Common Stock having a fair market value (as determined by the Board of Directors, whose determination shall be conclusive and described in a resolution of the Board of Directors) that as of the last time (the "Expiration Time") tenders or exchanges may be made pursuant to such tender or exchange offer (as it may be amended) exceeds

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

the Closing Sale Price of a share of Common Stock on the Trading Day next succeeding the Expiration Time, the Conversion Rate shall be increased so that the same shall equal the rate determined by multiplying the Conversion Rate in effect immediately prior to the Expiration Time by a fraction

(i)    the numerator of which shall be the sum of (x) the fair market value (determined as aforesaid) of the aggregate consideration payable to stockholders based on the acceptance (up to any maximum specified in the terms of the tender or exchange offer) of all shares validly tendered or exchanged and not withdrawn as of the Expiration Time (the shares deemed so accepted up to any such maximum, being referred to as the "Purchased Shares") and (y) the product of the number of shares of Common Stock outstanding (less any Purchased Shares) at the Expiration Time and the Closing Sale Price of a share of Common Stock on the Trading Day next succeeding the Expiration Time, and

(ii)   the denominator of which shall be the number of shares of Common Stock outstanding (including any tendered or exchanged shares) at the Expiration Time multiplied by the Closing Sale Price of a share of Common Stock on the Trading Day next succeeding the Expiration Time,

such adjustment to become effective immediately prior to the opening of business on the day following the Expiration Time. If the Company is obligated to purchase shares pursuant to any such tender or exchange offer, but the Company is permanently prevented by applicable law from effecting any such purchases or all such purchases are rescinded, the Conversion Rate shall again be adjusted to be the Conversion Rate that would then be in effect if such tender or exchange offer had not been made.

"Current Market Price" shall mean the average of the daily Closing Sale Prices per share of Common Stock for the ten consecutive Trading Days selected by the Company commencing no more than 30 Trading Days before and ending not later than the earlier of such date of determination and the day before the "ex" date with respect to the issuance, distribution, subdivision or combination requiring such computation immediately prior to the date in question. For purpose of this paragraph, the term "ex" date, (1) when used with respect to any issuance or distribution, means the first date on which the Common Stock trades, regular way, on the relevant exchange or in the relevant market from which the Closing Sale Price was obtained without the right to receive such issuance or distribution, and (2) when used with respect to any subdivision or combination of shares of Common Stock, means the first date on which the Common Stock trades, regular way, on such exchange or in such market after the time at which such subdivision or combination becomes effective. If another issuance, distribution, subdivision or combination to which the paragraphs above apply during the period applicable for calculating "Current Market Price" pursuant to the definition in the preceding paragraph, "Current Market Price" shall be calculated for such period in a manner determined by the Board of Directors to reflect the impact of such issuance, distribution, subdivision or combination on the Closing Sale Price of the Common Stock during such period.

"Fair Market Value" shall mean the amount which a willing buyer would pay a willing seller in an arm's-length transaction.

"record date" shall mean, with respect to any dividend, distribution or other transaction or event in which the Holders of Common Stock have the right to receive any cash, securities or other property or in which the Common Stock (or other applicable security) is exchanged for or converted into any combination of cash, securities or other property, the date fixed for determination of stockholders entitled to receive such cash, securities or other property (whether such date is fixed by the Board of Directors or by statute, contract or otherwise).

(g) The Company may make such increases in the Conversion Rate, in addition to those required by Sections 15.05(a), (b), (c), (d), (e), or (f) as the Board of Directors considers to be advisable to avoid or diminish any income tax to Holders of Common Stock or rights to purchase Common Stock resulting from any dividend or distribution of Common Stock (or rights to acquire stock) or from any event treated as such for income tax purposes. To the extent permitted by applicable law, the Company from time to time may increase the Conversion Rate by any amount for any period of time if the period is at least twenty (20) days, the increase is irrevocable during the period and the Board of Directors shall have made a determination that such increase would be in the best interests of the Company, which determination shall be conclusive. Whenever the Conversion Rate is increased pursuant to the preceding sentence, the Company shall mail, or cause the Trustee or Conversion Agent to mail, to Holders of record of the Series B Debentures a notice of the increase at least five (5) Business Days prior to the date the increased Conversion Rate takes effect, and such notice shall state the increased Conversion Rate and the period during which it will be in effect.

(h) No adjustment in the Conversion Rate shall be required unless such adjustment would require an increase or decrease of at least one percent (1%) in such rate; provided, that any adjustments that by reason of this paragraph (h) are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations shall be made by the Company and shall be made to the nearest cent or to the nearest one-ten thousandth (1/10,000) of a share, as the case may be. No adjustment need be made for rights to purchase Common Stock pursuant to a Company plan for reinvestment of dividends or interest. To the extent the Series B Debentures become convertible

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

into cash, assets, property or securities (other than capital stock of the Company or Successor Company Stock listed on any national securities exchange or quoted in an inter-dealer quotation system), no adjustment need be made thereafter as to the cash, assets, property or such securities. Interest will not accrue on any cash into which the Series B Debentures are convertible.

(i) Whenever the Conversion Rate is adjusted as herein provided, the Company shall promptly file with the Trustee and any Conversion Agent other than the Trustee an Officers' Certificate setting forth the Conversion Rate after such adjustment and setting forth a brief statement of the facts requiring such adjustment. Unless and until a responsible officer of the Trustee shall have received such Officers' Certificate, the Trustee shall not be deemed to have knowledge of any adjustment of the Conversion Rate and may assume that the last Conversion Rate of which it has knowledge is still in effect. Promptly after delivery of such certificate, the Company shall prepare a notice of such adjustment of the Conversion Rate setting forth the adjusted Conversion Rate and the date on which each adjustment becomes effective and shall mail such notice of such adjustment of the Conversion Rate to the Holder of each Series B Debenture at his last address appearing on the Series B Debenture register provided for in the Indenture, within twenty (20) days after execution thereof. Failure to deliver such notice shall not affect the legality or validity of any such adjustment.

(j) In any case in which an adjustment shall become effective immediately after (1) a record date for an event, (2) the date fixed for the determination of stockholders entitled to receive a dividend or distribution pursuant to paragraph (a), (3) a date fixed for the determination of stockholders entitled to receive rights or warrants pursuant to paragraph (b), or (4) the Expiration Time for any tender or exchange offer pursuant to paragraph (f), (each a "Determination Date"), the Company may elect to defer until the occurrence of the applicable Adjustment Event (as hereinafter defined) (x) issuing to the Holder of any Series B Debenture converted after such Determination Date and before the occurrence of such Adjustment Event, the additional shares of Common Stock or other securities issuable upon such conversion by reason of the adjustment required by such Adjustment Event over and above the Common Stock issuable upon such conversion before giving effect to such adjustment and (y) paying to such Holder any amount in cash in lieu of any fractional shares. For purposes of this paragraph (j), the term "Adjustment Event" shall mean:

(i)     in any case referred to in clause (1) hereof, the occurrence of such event,

(ii)    in any case referred to in clause (2) hereof, the date any such dividend or distribution is paid or made,

(iii)   in any case referred to in clause (3) hereof, the date of expiration of such rights or warrants, and

(iv)    in any case referred to in clause (4) hereof, the date a sale or exchange of Common Stock pursuant to such tender or exchange offer is consummated and becomes irrevocable.

If any of the following events occur, namely (i) any reclassification of the outstanding shares of Common Stock (other than a subdivision or combination to which paragraph (c) applies), (ii) any consolidation, merger or combination of the Company with another person as a result of which Holders of Common Stock shall be entitled to receive stock, other securities or other property or assets (including cash) with respect to or in exchange for such Common Stock, or (iii) any sale, lease or conveyance of all or substantially all of the properties and assets of the Company to any other person as a result of which Holders of Common Stock shall be entitled to receive stock, other securities or other property or assets (including cash) with respect to or in exchange for such Common Stock, then the Company or the successor or purchasing person, as the case may be, shall execute with the Trustee a supplemental indenture (which shall comply with the Trust Indenture Act as in force at the date of execution of such supplemental indenture). Such supplemental indenture shall provide that each Series B Debenture shall be convertible into the kind and amount of shares of stock, other securities or other property or assets (including cash) receivable upon such reclassification, consolidation, merger, combination, sale or conveyance by a Holder of a number of shares of Common Stock issuable upon conversion of such Series B Debentures (assuming, for such purposes, a sufficient number of authorized shares of Common Stock are available to convert all such Series B Debentures) immediately prior to such reclassification, consolidation, merger, combination, sale or conveyance assuming such Holder of Common Stock did not exercise his rights of election, if any, as to the kind or amount of stock, other securities or other property or assets (including cash) receivable upon such reclassification, consolidation, merger, combination, sale or conveyance (provided, that if the kind or amount of stock, other securities or other property or assets (including cash) receivable upon such reclassification, consolidation, merger, combination, sale or conveyance is not the same for each share of Common Stock in respect of which such rights of election shall not have been exercised ("nonelecting share"), then for the purposes of this paragraph the kind and amount of stock, other securities or other property or assets (including cash) receivable upon such reclassification, consolidation, merger, combination, sale or conveyance for each non-electing share shall be deemed to be the kind and amount so receivable per share by a plurality of the non-electing shares), and that such successor or purchasing person shall satisfy the obligations of the Company under Section 6 hereof. Such supplemental indenture shall further provide for adjustments which shall be as

nearly equivalent as may be practicable to the adjustments provided for herein.

The Company shall cause notice of the execution of such supplemental indenture to be mailed to each Holder of Series B Debentures, at its address appearing on the Series B Debenture register provided for in the Indenture, within twenty (20) days after execution thereof. Failure to deliver such notice shall not affect the legality or validity of such supplemental indenture. The above provisions shall similarly apply to successive reclassifications, changes, consolidations, mergers, combinations, sales and conveyances.

The Company shall provide, free from preemptive rights, out of its authorized but unissued shares or shares held in treasury, sufficient shares of Common Stock to provide for the conversion of the Series B Debentures from time to time as such Series B Debentures are presented for conversion. Before taking any action which would cause an adjustment increasing the Conversion Rate to an amount that would cause the Conversion Price to be reduced below the then par value, if any, of the shares of Common Stock issuable upon conversion of the Series B Debentures, the Company will take all corporate action which may, in the opinion of its counsel, be necessary in order that the Company may validly and legally issue shares of such Common Stock at such adjusted Conversion Rate. The Company covenants that all shares of Common Stock which may be issued upon conversion of Series B Debentures will upon issue be fully paid and non-assessable by the Company and free from all taxes, liens and charges with respect to the issue thereof. The Company covenants that, if any shares of Common Stock to be provided for the purpose of conversion of Series B Debentures hereunder require registration with or approval of any governmental authority under any federal or state law before such shares may be validly issued upon conversion, the Company will in good faith and as expeditiously as possible, to the extent then permitted by the rules and interpretations of the Securities and Exchange Commission (or any successor thereto), endeavor to secure such registration or approval, as the case may be.

The Company further covenants that, if at any time the Common Stock shall be listed on the New York Stock Exchange or any other national securities exchange or automated quotation system, the Company will, if permitted by the rules of such exchange or automated quotation system, list and keep listed, so long as the Common Stock shall be so listed on such exchange or automated quotation system, all Common Stock issuable upon conversion of the Series B Debenture; provided, that if the rules of such exchange or automated quotation system permit the Company to defer the listing of such Common Stock until the first conversion of the Series B Debentures into Common Stock in accordance with the provisions hereof, the Company covenants to list such Common Stock issuable upon conversion of the Series B Debentures in accordance with the requirements of such exchange or automated quotation system at such time.

(k) If (i) the Company shall declare a dividend (or any other distribution) on its Common Stock that would require an adjustment in the Conversion Rate, (ii) the Company shall authorize the granting to the Holders of all or substantially all of its Common Stock of rights or warrants to subscribe for or purchase any share of any class or any other rights or warrants; (iii) there shall be any reclassification or reorganization of the Common Stock of the Company (other than a subdivision or combination of its outstanding Common Stock, or a change in par value, or from par value to no par value, or from no par value to par value), or of any consolidation or merger to which the Company is a party and for which approval of any stockholders of the Company is required, or of the sale or transfer of all or substantially all of the assets of the Company; or (iv) there shall be the voluntary or involuntary dissolution, liquidation or winding up of the Company; the Company shall cause to be filed with the Trustee and to be mailed to each Holder of Series B Debentures at his address appearing on the Series B Debenture register provided for in the Indenture, as promptly as possible but in any event at least ten (10) days prior to the applicable date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution or rights or warrants, or, if a record is not to be taken, the date as of which the Holders of Common Stock of record to be entitled to such dividend, distribution or rights are to be determined, or (y) the date on which such reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding up is expected to become effective or occur, and the date as of which it is expected that Holders of Common Stock of record shall be entitled to exchange their Common Stock for securities or other property deliverable upon such reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding up. Failure to give such notice, or any defect therein, shall not affect the legality or validity of such dividend, distribution, reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding up.

Section 4.  Redemption.
            -----------

Prior to March 6, 2009, the Series B Debentures will not be redeemable at the Company's option. On or after March 6, 2009, the Company may redeem the Series B Debentures, in whole or in part, in cash at the redemption prices set forth below, plus accrued and unpaid interest to and including the date of redemption. The redemption prices (expressed as a percentage of the principal amount of the Series B Debentures) are as follows for Series B Debentures redeemed during the twelve month period commencing March 6 in each of the following years indicated:

| Year | Redemption Price |
| --- | --- |
| 2009........................................ | 102.188% |
| 2010........................................ | 101.750% |
| 2011........................................ | 101.313% |
| 2012........................................ | 100.875% |
| 2013........................................ | 100.438% |
| 2014 and thereafter......................... | 100.000% |

......In the case of any partial redemption, selection of the Series B
Debentures for redemption will be made by the Trustee in compliance with the
requirements of the principal national securities exchange, if any, on which the
Series B Debentures are listed or, if the Series B Debentures are not listed on
a national securities exchange, by lot or by such other method as directed by
the Company. The Trustee will make that selection not more than forty-five days
before the redemption date. If a portion of a Holder's Series B Debentures is
selected for partial redemption and a Holder converts a portion of its Series B
Debentures, the converted portion will be deemed to be part of the portion
selected for redemption. The Company shall not redeem Series B Debentures in
part if it has failed to pay interest on the Series B Debentures and such
failure to pay is continuing. Series B Debentures and portions of Series B
Debentures that the Trustee selects shall be in principal amounts of $25.00 or
integral multiples of $25.00.

     Section 5.   Repurchase of Series B Debentures at Holder's Option
                  ------------------------------------------------------

     On March 6, 2014, 2019, 2024, and 2029, or if any such March 6 is not a
Business Day, then on the next succeeding Business Day (each, a "Purchase
Date"), Holders of Series B Debentures may require the Company to repurchase the
Series B Debentures at a purchase price ("Purchase Price") equal to the
principal amount of the Series B Debentures to be repurchased plus accrued and
unpaid interest to but excluding the Purchase Date.

     The Series B Debentures to be purchased on any Purchase Date may be paid
for, in whole or in part, at the election of the Company, in cash or shares of
Common Stock, or in any combination of cash and shares of Common Stock, subject
to the conditions set forth herein. The Company shall designate in the Company
Notice (as defined below) whether the Company will repurchase the Series B
Debentures for cash or shares of Common Stock, or, if a combination thereof, the
percentages of the Purchase Price of Series B Debentures in respect of which it
will pay in cash or shares of Common Stock; provided, that the Company will pay
cash, based on the Closing Sale Price on the Trading Day immediately preceding
the Purchase Date, for fractional interests in shares of Common Stock. For
purposes of determining the existence of potential fractional interests, all
Series B Debentures subject to repurchase by the Company held by a Holder shall
be considered together (no matter how many separate certificates are to be
presented). Each Holder whose Series B Debentures are repurchased shall receive
the same percentage of cash or shares of Common Stock in payment of the Purchase
Price for such Series B Debentures, except with regard to the payment of cash in
lieu of fractional shares of Common Stock. On a selective basis, the Company may
also pay cash in lieu of shares of Common Stock in the event that the issuance
of such Common Stock is prohibited by law. The Company may not change its
election with respect to the consideration (or components or percentages of
components thereof) to be paid once the Company has given its Company Notice to
Holders except in the event of a failure to satisfy, prior to the close of
business on the Business Day immediately preceding the Purchase Date, any
condition to the payment of the Purchase Price, in whole or in part, in shares
of Common Stock. If the Company elects to pay the Purchase Price, in whole or in
part, in shares of Common Stock, the number of shares of Common Stock that the
Company will deliver shall be equal to the portion of the Purchase Price to be
paid in Common Stock divided by the average of the Closing Sale Prices of the
Common Stock during the five-Trading Day period ending on, but not including,
the third Business Day prior to the Purchase Date, appropriately adjusted to
take into account the occurrence, during the period commencing on the first
Trading Day during the five-Trading Day period and ending on the Purchase Date,
of any event that would require an adjustment to the Conversion Rate (the
"Market Price").

     In connection with any repurchase of Series B Debentures, the Company
shall, no less than 24 Business Days prior to each Purchase Date (the "Company
Notice Date"), give notice to Holders setting forth information specified below
(the "Company Notice"). In the event the Company has elected to pay the Purchase
Price (or a specified percentage thereof), with shares of Common Stock, the
Company Notice shall: (i) state that each Holder will receive a number of shares
of Common Stock with a value equal to 100% of the Market Price equal to such
specified percentage of the Purchase Price of the Series B Debentures to be paid
in Common Stock (except any cash amount to be paid in lieu of fractional
shares); (ii) set forth the method of calculating the Market Price of the shares
of Common Stock; and (iii) state that because the Market Price of shares of
Common Stock will be determined prior to the Purchase Date Holders of the Series
B Debentures will bear the market risk with respect to the value of the shares
of Common Stock to be received from the date such Market Price is determined to
the Purchase Date.

     At least three Business Days before each Company Notice Date, the Company

shall deliver an Officers' Certificate to the Trustee specifying: (i) the manner of payment selected by the Company, (ii) the information required in the Company Notice, (iii) if the Company elects to pay the Purchase Price, or a specified percentage thereof, in shares of Common Stock, that the conditions to such manner of payment set forth herein have been or will be complied with, and (iv) whether the Company desires the Trustee to give the required Company Notice.

In any case, each Company Notice shall include a form of Purchase Notice to be completed by a Holder and shall state:

(i)   the Purchase Price;

(ii)  whether the Purchase Price will be paid in cash or shares of Common Stock, or any combination thereof, specifying the percentages of each;

(iii) the name and address of the Paying Agent and the Conversion Agent;

(iv)  if the Series B Debentures are then convertible, that Series B Debentures as to which a Purchase Notice has been given may be converted only if the Purchase Notice is withdrawn in accordance with the terms of the Series B Debentures;

(v)   that Series B Debentures must be surrendered to the Paying Agent to collect the Purchase Price;

(vi)  that the Purchase Price for any Series B Debenture as to which a Purchase Notice has been given and not withdrawn will be paid promptly following the later of the Purchase Date and the time of surrender of such Series B Debenture;

(vii) that, unless the Company defaults in making payment on Series B Debentures for which a Purchase Notice has been submitted, interest on such Series B Debentures will cease to accrue on and after the Purchase Date; and

(viii) the CUSIP number of the Series B Debentures.

Company Notices may be given by the Company or, at the Company's request, the Trustee shall give such Company Notice in the Company's name and at the Company's expense.

Repurchases of Series B Debentures shall be made upon: (a) delivery to the Paying Agent by the Holder of a written notice of purchase (a "Purchase Notice") during the period beginning at any time from the opening of business on the Company Notice Date prior to the relevant Purchase Date until the close of business on the fourth Business Day prior to such Purchase Date stating:

(1) the certificate number of the Series B Debenture which the Holder will deliver to be repurchased or the appropriate Depository procedures if certificated Series B Debentures have not been issued;

(2) the portion of the principal amount of the Series B Debenture that the Holder will deliver to be repurchased, which portion must be in principal amounts of $25.00 or a integral multiple of $25.00;

(3) that such Series B Debenture shall be repurchased by the Company as of the Purchase Date pursuant to the terms and conditions specified herein, and

(4) that such Series B Debenture shall be repurchased by the Company as of the Purchase Date pursuant to the terms and conditions specified in this Series B Debenture; and, in the event the Company elects to pay the Purchase Price, in whole or in part, in shares of Common Stock but such portion of the Purchase Price shall ultimately be paid to such Holder entirely in cash because any of the conditions to payment of the Purchase Price in shares of Common Stock is not satisfied prior to the close of business on the relevant Purchase Date, whether such Holder elects (i) to withdraw such Purchase Notice as to some or all of the Series B Debentures to which such Purchase Notice relates (stating the principal amount and certificate numbers, if any, of the Series B Debentures as to which such withdrawal shall relate), or (ii) to receive cash in respect of the entire Purchase Price for all Series B Debentures (or portions thereof) to which such Purchase Notice relates; and

(b) book-entry transfer or delivery of such Series B Debenture to the Paying Agent at any time after delivery of the Purchase Notice (together with all necessary endorsements) at the offices of the Paying Agent, such delivery being a condition to receipt by the Holder of the Purchase Price therefor; provided, however, that such Purchase Price shall be so paid pursuant to this paragraph if the Series B Debenture so delivered to the Paying Agent shall conform in all respects to the description thereof in the related Purchase Notice.

If a Holder, in such Holder's Purchase Notice and in any written notice of withdrawal delivered by such Holder, fails to indicate such Holder's choice with respect to the election set forth in clause (4) above, such Holder shall be deemed to have elected to receive cash in respect of the entire Purchase Price for all Series B Debentures subject to such Purchase Notice in the circumstances set forth in such clause (4).

The Company shall repurchase from the Holder thereof a portion of a Series B Debenture, if the principal amount of such portion is $25.00 or a integral

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

multiple of $25.00. Any repurchase by the Company contemplated pursuant to the foregoing provisions shall be consummated by the delivery of the consideration to be received by the Holder promptly following the later of the Purchase Date and the time of the book-entry transfer or delivery of the Series B Debenture or the relevant portion thereof.

Notwithstanding anything herein to the contrary, any Holder delivering to the Paying Agent the Purchase Notice shall have the right to withdraw such Purchase Notice at any time up to the close of business on the fourth Business Day prior to the Purchase Date by delivery of a written notice of withdrawal (a "Withdrawal Notice") to the Paying Agent. The Paying Agent shall promptly notify the Company of the receipt by it of any Purchase Notice or Withdrawal Notice. The Withdrawal Notice shall state: (i) the principal amount of Series B Debentures withdrawn (which must be in an amount of $25.00 or a integral multiple thereof); (ii) the certificate numbers of the withdrawn Series B Debentures or evidence compliance with the appropriate Depository procedures if certificated Series B Debentures have not been issued; and (iii) the principal amount, if any, of Series B Debentures that remains subject to the Purchase Notice.

The Company may, in its sole and complete discretion, accept a Withdrawal Notice on or after the third Business Day prior to a Purchase Date. The decision of the Company to accept or reject such a Withdrawal Notice shall be conclusive and binding on the Holder proposing to make the withdrawal. The Paying Agent will promptly return to the respective Holders thereof any Series B Debentures with respect to which a Purchase Notice has been withdrawn in compliance with this Series B Debenture.

The Company's right to exercise its election to repurchase Series B Debentures through the issuance of shares of Common Stock shall be conditioned upon: (i) the Company's not having given its Company Notice of an election to pay entirely in cash and its giving of timely Company Notice of an election to purchase all or a specified percentage of the Series B Debentures with shares of Common Stock as provided herein; (ii) the registration of such shares of Common Stock under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"), in each case, if required; (iii) the listing of such shares of Common Stock on a United States national securities exchange or the quotation of such shares of Common Stock in an inter-dealer quotation system of any registered United States national securities association, in each case, if the Common Stock is then listed on a national securities exchange or quoted in an inter-dealer quotation system; (iv) any necessary qualification or registration of such shares of Common Stock under applicable state securities laws or the availability of an exemption from such qualification and registration; and (v) the receipt by the Trustee of an (A) Officers' Certificate stating that the terms of the issuance of the shares of Common Stock are in conformity with the Indenture, (B) an Opinion of Counsel to the effect that the shares of Common Stock to be issued by the Company in payment of the Purchase Price in respect of the Series B Debentures have been duly authorized and, when issued and delivered pursuant to the terms of this Indenture in payment of the Purchase Price in respect of the Series B Debentures, will be validly issued, fully paid and non-assessable and (C) an Officer's Certificate, stating that the conditions to the issuance of the shares of Common Stock have been satisfied. Such Officers' Certificate shall also set forth the number of shares of Common Stock to be issued for each $25.00 principal amount of Series B Debentures and the Closing Sale Price of a share of Common Stock on each Trading Day during the period commencing on the first Trading Day of the period during which the Market Price is calculated and ending on but excluding the third Business Day prior to the applicable Purchase Date. If the foregoing conditions are not satisfied prior to the close of business on the Purchase Date and the Company has elected to purchase the Series B Debentures through the issuance of shares of Common Stock, the Company shall pay the entire Purchase Price of the Series B Debentures in cash.

Upon determination of the actual number of shares of Common Stock to be issued upon repurchase of Series B Debentures, the Company shall be required to disseminate a press release through Dow Jones & Company, Inc. or Bloomberg Business News containing this information or publish the information on the Company's web site or through such other public medium as the Company may use at that time.

All shares of Common Stock delivered upon repurchase of the Series B Debentures shall be duly authorized, validly issued, fully paid and nonassessable. If a Holder of a repurchased Series B Debenture is paid in shares of Common Stock, the Company shall pay any documentary, stamp or similar issue or transfer tax due on such issue of Common Stock. However, the Holder shall pay any such tax which is due because the Holder requests the Common Stock to be issued in a name other than the Holder's name. The Paying Agent may refuse to deliver the certificates representing the shares of Common Stock being issued in a name other than the Holder's name until the Paying Agent receives a sum sufficient to pay any tax which will be due because the shares of Common Stock are to be issued in a name other than the Holder's name.

Prior to 10:00 a.m. (New York City Time) on the Business Day following the Purchase Date, the Company shall deposit with the Trustee or with the Paying Agent an amount of cash (in immediately available funds if deposited on such Business Day) or Common Stock, if permitted hereunder, sufficient to pay the aggregate Purchase Price of all the Series B Debentures or portions thereof that are to be purchased as of the Purchase Date. If prior to 10:00 a.m. (New York City Time) on the Business Day following the Purchase Date the Trustee or Paying

Agent holds an amount of cash or Common Stock sufficient to pay the aggregate
Purchase Price of the Series B Debentures that are to be so purchased, then, on
and after the Purchase Date (i) the Series B Debentures to be purchased will
cease to be Outstanding; (ii) stated interest on such Series B Debentures will
cease to accrue, and (iii) all other rights of the Holders with respect to such
Series B Debentures will terminate, other than the right to receive the Purchase
Price upon delivery of the Series B Debentures. This will be the case whether or
not book-entry transfer of the Series B Debentures has been made or the Series B
Debentures have been delivered to the Paying Agent. As soon as practicable after
the Purchase Date the Company shall deliver to each Holder entitled to receive
shares of Common Stock through the Paying Agent, a certificate for the number of
full shares of Common Stock issuable in payment of the Purchase Price and cash
in lieu of any fractional interests. The person in whose name the certificate
for the shares of Common Stock is registered shall be treated as a Holder of
record of Common Stock on the Business Day following the Purchase Date. No
payment or adjustment will be made for dividends on the shares of Common Stock
the record date for which occurred on or prior to the Purchase Date.

Any certificated Series B Debenture that is to be repurchased only in part
shall be surrendered at the office of the Paying Agent (with, if the Company or
the Trustee so requires, due endorsement by, or a written instrument of transfer
in form satisfactory to the Company and the Trustee duly executed by, the Holder
thereof or such Holder's attorney duly authorized in writing) and the Company
shall execute and the Trustee shall authenticate and deliver to the Holder of
such Series B Debenture; without service charge, a new Series B Debenture or
Series B Debentures, of any authorized denomination as requested by such Holder
in aggregate principal amount equal to, and in exchange for, the portion of the
principal amount of the Series B Debenture so surrendered which is not
repurchased.

The Company will comply with any tender offer rules under the Exchange Act
that may be applicable at the time of its offer to repurchase the Series B
Debentures.

The Trustee and the Paying Agent shall return to the Company any cash or
shares of Common Stock that remain unclaimed, together with interest or
dividends, if any, thereon, held by them for the payment of the Purchase Price;
provided, however, that to the extent that the aggregate amount of cash or
shares of Common Stock deposited by the Company exceeds the aggregate Purchase
Price of the Series B Debentures or portions thereof which the Company is
obligated to purchase as of the Purchase Date then, unless otherwise agreed in
writing with the Company, promptly after the Business Day following the Purchase
Date, the Trustee shall return any such excess to the Company together with
interest or dividends, if any, thereon.

Section 6.   Repurchase of Series B Debentures Upon Fundamental Change.
             ------------------------------------------------------------

If there shall occur a Fundamental Change at any time prior to maturity of
the Series B Debentures, then each Holder shall have the right, at such Holder's
option, to require the Company to redeem all of such Holder's Series B
Debentures, or any portion thereof that is an integral multiple of $25.00
principal amount, on the date (the "Repurchase Date") that is thirty (30) days
after the date the Company provides notice of such Fundamental Change (or, if
such 30th day is not a Business Day, the next succeeding Business Day) at a
redemption price (the "Repurchase Price") equal to 100% of the principal amount
thereof, together with accrued interest to, but excluding, the Repurchase Date;
provided that, if such Repurchase Date is an Interest Payment Date, then the
interest payable on such Interest Payment Date shall be paid to the Holders of
record of the Series B Debentures on the applicable Record Date instead of the
Holders surrendering the Series B Debentures for redemption on such date.

A "Fundamental Change" means the occurrence of any transaction or event
(whether by means of an exchange offer, liquidation, tender offer,
consolidation, merger, combination, reclassification, recapitalization or
otherwise) in connection with which 90% or more of the Common Stock shall be
exchanged for, converted into, acquired for or constitute solely the right to
receive, consideration 10% or more of which (measured by the fair market value
of such consideration and its components as determined by the Board of
Directors, whose determination shall be conclusive and described in a resolution
of the Board of Directors) is not common stock that is (or, upon consummation of
or immediately following such transaction or event, which will be) listed on a
United States national securities exchange or approved (or, upon consummation of
or immediately following such transaction or event, which will be approved) for
quotation on the Nasdaq National Market or any similar United States system of
automated dissemination of quotations of securities prices, but only if such
transaction or event also includes one of the following: (i) the filing by any
person, including the Company's affiliates and associates, other than the
Company and its employee benefit plans, of a Schedule 13D or Schedule TO, or any
successor schedule, form or report, under the Exchange Act, disclosing that such
person has become the beneficial owner of 50% or more of the voting power of the
Common Stock or other Capital Stock into which the Common Stock is reclassified
or exchanged; or (ii) the consummation of any share exchange, consolidation or
merger pursuant to which the Common Stock is converted into cash, securities or
other property, in each case other than any share exchange, consolidation or
merger of the Company in which the Holders of Common Stock immediately prior to
the share exchange, consolidation or merger have, directly or indirectly, at
least a majority of the total voting power in the aggregate of all classes of
Capital Stock of the continuing or surviving corporation immediately after the

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

share exchange, consolidation or merger.

The Series B Debentures to be purchased on any Repurchase Date may be paid for, in whole or in part, at the election of the Company or its successor, in cash or shares of common stock of the Company's successor, which may include the Company as appropriate ("Successor Company Stock"), or in any combination of cash and shares of Successor Company Stock, subject to the conditions set forth herein. The Company, or its successor, shall inform Holders through the Trustee not later than the ninth Business Day prior to the Repurchase Date of its election to pay the Repurchase Price, in whole or in part, in Successor Company Stock, specifying the portion to be paid in Successor Company Stock, provided, that the Company or its successor will pay cash, based on the Closing Sale Price on the Trading Day immediately preceding the Repurchase Date, for fractional interests in shares of Successor Company Stock. For purposes of determining the existence of potential fractional interests, all Series B Debentures subject to repurchase held by a Holder shall be considered together (no matter how many separate certificates are to be presented). Each Holder whose Series B Debentures are repurchased shall receive the same percentage of cash or shares of Successor Company Stock in payment of the Repurchase Price for such Series B Debentures, except with regard to the payment of cash in lieu of fractional shares of Successor Company Stock. On a selective basis, the Company or its successor may also pay cash in lieu of shares of Successor Company Stock in the event that the issuance of such Successor Company Stock is prohibited by law. The Company and its successor may not change the election with respect to the consideration (or components or percentages of components thereof) to be paid once the Company or its successor has given its notice to the Trustee except in the event of a failure to satisfy, prior to the close of business on the Business Day immediately preceding the Repurchase Date, any condition to the payment of the Repurchase Price, in whole or in part, in shares of Successor Company Stock. If the Company or its successor elects to pay the Repurchase Price, in whole or in part, in shares of Successor Company Stock, the number of shares of Successor Company Stock that will be delivered shall be equal to the portion of the Repurchase Price to be paid in Successor Company Stock divided by the average of Closing Sale Prices of Successor Company Stock for the five consecutive Trading Days following the date the Company, or its successor, notifies the Trustee of its election to pay all or a portion of the Repurchase Price in shares of Successor Company Stock, appropriately adjusted to take into account the occurrence, during the period commencing on the first Trading Day during the five-Trading Day period and ending on the Repurchase Date, of any event that would require an adjustment to the Conversion Rate (the "Fundamental Change Market Price").

The right to exercise its election to purchase Series B Debentures through the issuance of shares of Successor Company Stock shall be conditioned upon: (i) no notice of an election to purchase the Series B Debentures entirely in cash having been given and timely notice of an election to purchase all or a specified percentage of the Series B Debentures with shares of Successor Company Stock having been given as provided herein; (ii) the registration of such shares of Successor Company Stock under the Securities Act and the Exchange Act, in each case, if required; (iii) the listing of such shares of Successor Company Stock on a United States national securities exchange or the quotation of such shares of Successor Company Stock in an inter-dealer quotation system of any registered United States national securities association, in each case, if the Successor Company Stock is then listed on a national securities exchange or quoted in an inter-dealer quotation system; (iv) any necessary qualification or registration of such shares of Successor Company Stock under applicable state securities laws or the availability of an exemption from such qualification and registration; and (v) the receipt by the Trustee of an (A) Officers' Certificate stating that the terms of the issuance of the shares of Successor Company Stock are in conformity with the Indenture, (B) an Opinion of Counsel to the effect that the shares of Successor Company Stock to be issued by the Company in payment of the Purchase Price in respect of the Series B Debentures have been duly authorized and, when issued and delivered pursuant to the terms of this Indenture in payment of the Purchase Price in respect of the Series B Debentures, will be validly issued, fully paid and non-assessable and (C) an Officer's Certificate, stating that the conditions to the issuance of the shares of Successor Company Stock have been satisfied. Such Officers' Certificate shall also set forth the number of shares of Successor Company Stock to be issued for each $25.00 principal amount of Series B Debentures and the Closing Sale Price of a share of Common Stock on each Trading Day during the period commencing on the first Trading Day of the period during which the Market Price is calculated and ending on but excluding the third Business Day prior to the applicable Repurchase Date. If the foregoing conditions are not satisfied prior to the close of business on the Repurchase Date and the Company or its successor has elected to purchase the Series B Debentures through the issuance of shares of Successor Company Stock, the entire Repurchase Price of the Series B Debentures shall be paid in cash.

Upon determination of the actual number of shares of Successor Company Stock to be issued upon repurchase of Series B Debentures, the Company or its successor shall be required to disseminate a press release through Dow Jones & Company, Inc. or Bloomberg Business News containing this information or publish the information on the Company's or such successor's web site or through such other public medium as the Company or its successor may use at that time.

On or before the tenth day after the occurrence of a Fundamental Change, the Company or at its written request (which must be received by the Trustee at least five (5) Business Days prior to the date the Trustee is requested to give notice as described below, unless the Trustee shall agree in writing to a

shorter period), the Trustee, in the name of and at the expense of the Company, shall mail or cause to be mailed to all Holders of record on the date of the Fundamental Change a notice (the "Fundamental Change Notice") of the occurrence of such Fundamental Change and of the redemption right at the option of the Holders arising as a result thereof. If the Company shall give such notice, the Company shall also deliver a copy of the Fundamental Change Notice to the Trustee at such time as it is mailed to Holders. Concurrently with the mailing of any Fundamental Change Notice, the Company shall issue a press release announcing such Fundamental Change referred to in the Notice, the form and content of which press release shall be determined by the Company in its sole discretion. The failure to issue any such press release or any defect therein shall not affect the validity of the Fundamental Change Notice or any proceedings for the redemption of any Series B Debenture which any Holder may elect to have the Company redeem as provided in this Section 6.

Each Fundamental Change Notice shall include a form of Option to Elect Repayment Upon A Fundamental Change and shall specify the circumstances constituting the Fundamental Change, the Repurchase Date, the Repurchase Price, whether the Repurchase Price will be paid in cash or shares of Successor Company Stock, or any combination thereof, specifying the percentages of each, that the Holder must exercise the redemption right on or prior to the close of business on the Repurchase Date (the "Fundamental Change Expiration Time"), that the Holder shall have the right to withdraw any Series B Debentures surrendered in accordance with the terms of the Series B Debentures, if the Series B Debentures are then convertible, that Series B Debentures as to which a Fundamental Change Notice has been given may be converted only if the Fundamental Change Notice is withdrawn in accordance with the terms of the Series B Debentures, a description of the procedure which a Holder must follow to exercise such redemption right and to withdraw any surrendered Series B Debentures, the place or places where the Holder is to surrender such Holder's Series B Debentures, the amount of interest accrued on each $25.00 principal amount of the Series B Debentures to the Repurchase Date and the "CUSIP" number or numbers of the Series B Debentures (if then generally in use). In the event the Company or its successor elects to pay the Repurchase Price (or a specified percentage thereof), with shares of Successor Company Stock, the Fundamental Change Notice shall also (i) state that each Holder will receive a number of shares of Successor Company Stock with a value equal to 100% of the Fundamental Change Market Price equal to such specified percentage of the Repurchase Price of the Series B Debentures to be paid in Successor Company Stock (except any cash amount to be paid in lieu of fractional shares), (ii) set forth the method of calculating the Fundamental Change Market Price of the shares of Successor Company Stock, and (iii) state that because the Fundamental Change Market Price of shares of Successor Company Stock will be determined prior to the Repurchase Date, Holders of the Series B Debentures will bear the market risk with respect to the value of the shares of Successor Company Stock to be received from the date such Fundamental Change Market Price is determined to the Repurchase Date. No failure of the Company or its successor to give the foregoing notices and no defect therein shall limit the Holders' redemption rights or affect the validity of the proceedings for the redemption of the Series B Debentures pursuant to this Section 6.

For a Series B Debenture to be so redeemed at the option of the Holder, the Paying Agent must receive such Series B Debenture with the form entitled "Option to Elect Repayment Upon A Fundamental Change" on the reverse thereof duly completed, together with such Series B Debentures duly endorsed for transfer, on or before the Fundamental Change Expiration Time. All questions as to the validity, eligibility (including time of receipt) and acceptance of any Series B Debenture for repayment shall be determined by the Company, whose determination shall be final and binding absent manifest error.

Notwithstanding anything herein to the contrary, any Holder delivering to the Paying Agent the Option to Elect Repayment Upon A Fundamental Change shall have the right to withdraw such Option at any time up to the close of business on the fourth Business Day prior to the Repurchase Date by delivery of a Withdrawal Notice to the Paying Agent. The Paying Agent shall promptly notify the Company of the receipt by it of any Option to Elect Repayment Upon A Fundamental Change or Withdrawal Notice. Any Withdrawal Notice shall state: (i) the principal amount of Series B Debentures withdrawn (which must be in an amount of $25.00 or a integral multiple thereof); (ii) the certificate numbers of the withdrawn Series B Debentures or evidence compliance with the appropriate Depository procedures if certificated Series B Debentures have not been issued; and (iii) the principal amount, if any, of Series B Debentures that remains subject to the Option to Elect Repayment Upon A Fundamental Change.

The Company may, in its sole and complete discretion, accept a Withdrawal Notice on or after the third Business Day prior to a Repurchase Date. The decision of the Company to accept or reject such a withdrawal notice shall be conclusive and binding on the Holder proposing to make the withdrawal. The Paying Agent will promptly return to the respective Holders thereof any Series B Debentures with respect to which an Option to Elect Repayment Upon A Fundamental Change has been withdrawn in compliance with this Series B Debenture.

The Company and its successor will comply with any tender offer rules under the Exchange Act that may be applicable in connection with the redemption rights of the Holders of Series B Debentures in the event of a Fundamental Change.

All shares of Successor Common Stock delivered upon repurchase of the Series B Debentures shall be duly authorized, validly issued, fully paid and nonassessable. If a Holder of a purchased Series B Debenture is paid in shares

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

of Successor Company Stock, the Company or its successor shall pay any
documentary, stamp or similar issue or transfer tax due on such issue of
Successor Company Stock. However, the Holder shall pay any such tax which is due
because the Holder requests the Successor Company Stock to be issued in a name
other than the Holder's name. The Paying Agent may refuse to deliver the
certificates representing the shares of Successor Company Stock being issued in
a name other than the Holder's name until the Paying Agent receives a sum
sufficient to pay any tax which will be due because the shares of Successor
Company Stock are to be issued in a name other than the Holder's name.

Prior to 10:00 a.m. (New York City Time) on the Business Day following the
Repurchase Date, the Company or its successor shall deposit with the Trustee or
with the Paying Agent an amount of cash (in immediately available funds if
deposited on such Business Day) or Successor Company Stock, if permitted
hereunder, sufficient to pay the aggregate Repurchase Price of all the Series B
Debentures or portions thereof that are to be purchased as of the Repurchase
Date. If prior to 10:00 a.m. (New York City Time) on the Business Day following
the Repurchase Date the Trustee or Paying Agent holds an amount of cash or
Common Stock sufficient to pay the aggregate Repurchase Price of the Series B
Debentures that are to be so repurchased, then, on and after the Repurchase Date
(i) the Series B Debentures to be repurchased will cease to be Outstanding; (ii)
stated interest on such Series B Debentures will cease to accrue, and (iii) all
other rights of the Holders with respect to such Series B Debentures will
terminate, other than the right to receive the Repurchase Price upon delivery of
the Series B Debentures. This will be the case whether or not book-entry
transfer of the Series B Debentures has been made or the Series B Debentures
have been delivered to the Paying Agent. As soon as practicable after the
Repurchase Date the Company or its successor shall deliver to each Holder
entitled to receive shares of Successor Company Stock through the Paying Agent,
a certificate for the number of full shares of Successor Company Stock issuable
in payment of the Repurchase Price and cash in lieu of any fractional interests.
The person in whose name the certificate for the shares of Successor Company
Stock is registered shall be treated as a Holder of record of Successor Company
Stock on the Business Day following the Repurchase Date. No payment or
adjustment will be made for dividends on the shares of Successor Company Stock
the record date for which occurred on or prior to the Repurchase Date.

Any certificated Series B Debenture that is to be repurchased only in part
shall be surrendered at the office of the Paying Agent (with, if the Company,
its successor or the Trustee so requires, due endorsement by, or a written
instrument of transfer in form satisfactory to the Company and the Trustee duly
executed by, the Holder thereof or such Holder's attorney duly authorized in
writing) and the Company or its successor shall execute and the Trustee shall
authenticate and deliver to the Holder of such Series B Debenture; without
service charge, a new Series B Debenture or Series B Debentures, of any
authorized denomination as requested by such Holder in aggregate principal
amount equal to, and in exchange for, the portion of the principal amount of the
Series B Debenture so surrendered which is not purchased.

The Trustee and the Paying Agent shall return to the Company or its
successor any cash or shares of Successor Company Stock that remain unclaimed,
together with interest or dividends, if any, thereon, held by them for the
payment of the Repurchase Price; provided, however, that to the extent that the
aggregate amount of cash or shares of Successor Company Stock deposited by the
Company or its successor exceeds the aggregate Repurchase Price of the Series B
Debentures or portions thereof which the Company or its successor is obligated
to purchase as of the Repurchase Date then, unless otherwise agreed in writing
with the Company or its successor, promptly after the Business Day following the
Purchase Date the Trustee shall return any such excess to the Company together
with interest or dividends, if any, thereon.

Section 7.   Registration; Transfer; Governing Law
-----------------------------------------

Upon due presentment for registration of transfer of this Global Debenture
at the office or agency designated and maintained by the Company for such
purpose in the Borough of Manhattan, The City of New York, pursuant to the
provisions of the Indenture, a new Global Debenture for an equal aggregate
principal amount will be issued to the transferee in exchange therefor, subject
to the limitations provided in the Indenture, without charge except for any tax
or other governmental charge imposed in connection therewith.

The Company, the Trustee and any authorized agent of the Company or the
Trustee may deem and treat the Holder in whose name this Global Debenture is
registered as the absolute owner of this Global Debenture (whether or not this
Global Debenture shall be overdue and notwithstanding any notation of ownership
or other writing hereon), for the purpose of receiving payment of, or on account
of, the principal hereof and premium, if any, and subject to the provisions
contained herein, interest hereon, and for all other purposes, and neither the
Company nor the Trustee nor any authorized agent of the Company or the Trustee
shall be affected by any notice to the contrary.

No recourse under or upon any obligation, covenant or agreement of the
Company in the Indenture or any indenture supplemental thereto or in any Series
B Debenture, or because of the creation of any indebtedness represented thereby,
shall be had against any incorporator, stockholder, officer or director, as
such, of the Company or of any successor corporation, either directly or through
the Company or any successor corporation, under any rule of law, statute or
constitutional provision or by the enforcement of any assessment or by any legal

or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance hereof and as part of the consideration for the issue hereof.

This Global Debenture is governed by the laws of the State of New York.

Terms used herein without definition which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

This Global Debenture shall not be valid or become obligatory for any purpose until the certificate of authentication hereon shall have been signed by the Trustee under the Indenture.

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

WITNESS THE SEAL OF THE COMPANY AND THE SIGNATURES OF ITS DULY AUTHORIZED
OFFICERS.

Dated: March 6, 2002                    GENERAL MOTORS CORPORATION

                                 By: _____
                                     Name:  Sanjiv Khattri
                                     Title:  Assistant Treasurer
[SEAL]

                                 By: _____
                                     Name:  Antoinette Skeete
                                     Title:  Assistant Secretary

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

THIS IS ONE OF THE SECURITIES OF THE
SERIES DESIGNATED THEREIN REFERRED TO
IN THE WITHIN-MENTIONED INDENTURE.

CITIBANK, N.A.
  AS TRUSTEE,

By:_____
        Wafaa Orfy
        Authorized Agent

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

FOR VALUE RECEIVED the undersigned hereby sells,
assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER
  IDENTIFYING NUMBER OF ASSIGNEE

------------------------------------

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------
Please print or typewrite name and address including postal zip code of
assignee

--------------------------------------------------------------------------------
the within Global Debenture of GENERAL MOTORS    CORPORATION and hereby
irrevocably constitutes and appoints

_____attorney to
transfer said Global Debenture on the books of the within-named Company, with
full power of substitution in the premises.

Dated:_____

                                    SIGN HERE _____

                                              NOTICE:   THE   SIGNATURE   OF
                                              THIS      ASSIGNMENT      MUST
                                              CORRESPOND  WITH  THE  NAME AS
                                              WRITTEN  UPON  THE  FACE OF THE
                                              WITHIN   INSTRUMENT  IN  EVERY
                                              PARTICULAR  WITHOUT ALTERATION
                                              OR  ENLARGEMENT  OR ANY CHANGE
                                              WHATEVER.

                                              SIGNATURE GUARANTEED

------------------------------------

CONVERSION NOTICE
------------------------------------

To convert this Security into
Common Stock of the Company,
check the box [   ]
------------------------------------

To convert only part of this
Security, state the principal
amount to be converted (which
must be $25.00 or an integral
multiple of $25.00):

If you want the stock certificate
made out in another person's name
fill in the form below:

------------------------------

------------------------------
(Insert the other person's
 soc. sec. tax ID no.)

------------------------------

------------------------------

------------------------------

------------------------------
(Print or type other person's
 name, address and zip code)
------------------------------------

Date:            Your Signature:
     ----------
                 ------------------------------

-----------------------------------------------------------------
 (Sign exactly as your name appears on the other side of this Security)
Signature Guaranteed

------------------------------------
Participant in a Recognized Signature
Guarantee Medallion Program

By:
    ------------------------------
         Authorized Signatory

PURCHASE NOTICE

TO:    GENERAL MOTORS CORPORATION

CITIBANK, N.A.

The undersigned registered owner of this Series B Debenture hereby irrevocably acknowledges receipt of a notice from General Motors Corporation (the "Company") regarding the right of Holders to elect to require the Company to repurchase the Series B Debentures and requests and instructs the Company to repay the entire principal amount of this Series B Debenture, or the portion thereof (which is $25.00 or an integral multiple thereof) below designated, in accordance with the terms of this Series B Debenture at the price of 100% of such entire principal amount or portion thereof, together with accrued interest to, but excluding, the Repurchase Date, to the registered Holder hereof. Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Series B Debenture. The Series B Debentures shall be purchased by the Company as of the Purchase Date pursuant to the terms and conditions specified in the Series B Debenture. In the event the Company elects to pay the Purchase Price, in whole or in part, in shares of Common Stock but such portion of the Purchase Price shall ultimately be paid to such Holder entirely in cash because any of the conditions to payment of the Purchase Price in shares of Common Stock is not satisfied prior to the close of business on the relevant Purchase Date, the undersigned registered owner elects:

[  ] to withdraw this Purchase Notice as to $[] principal amount of the Series B Debentures to which this Purchase Notice relates (Certificate Numbers:                              ), or

[ ] to receive cash in respect of $[] principal amount of the Series B Debentures to which this Purchase Notice relates.

Dated:

Signature(s)

NOTICE: The above signatures of the Holder(s) hereof must correspond with the name as written upon the face of the Series B Debenture in every particular without alteration or enlargement or any change whatever.

Certificate Number (if applicable):

Principal amount to be repaid (if less than all):

Social Security or Other Taxpayer Identification Number

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

OPTION TO ELECT REPAYMENT UPON A FUNDAMENTAL CHANGE

TO:    GENERAL MOTORS CORPORATION

       CITIBANK, N.A.

The undersigned registered owner of this Series B Debenture hereby irrevocably acknowledges receipt of a notice from General Motors Corporation (the "Company") as to the occurrence of a Fundamental Change with respect to the Company and requests and instructs the Company to repay the entire principal amount of this Series B Debenture, or the portion thereof (which is $25.00 or an integral multiple thereof) below designated, in accordance with the terms of this Series B Debenture at the price of 100% of such entire principal amount or portion thereof, together with accrued interest to, but excluding, the Repurchase Date, to the registered Holder hereof. Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Series B Debenture. The Series B Debentures shall be purchased by the Company as of the Repurchase Date pursuant to the terms and conditions specified in the Series B Debenture. In the event the Company elects to pay the Repurchase Price, in whole or in part, in shares of Successor Company Stock but such portion of the Repurchase Price shall ultimately be paid to such Holder entirely in cash because any of the conditions to payment of the Repurchase Price in shares of Successor Company Stock is not satisfied prior to the close of business on the relevant Repurchase Date, the undersigned registered owner elects:

[  ] to withdraw this Option to Elect Repayment Upon A Fundamental  Change as to $[] principal  amount of the Series B Debentures  to which this  Repurchase Notice relates (Certificate Numbers:                     ), or

[ ] to receive cash in respect of $[] principal amount of the Series B Debentures to which this Option to Elect Repayment Upon A Fundamental Change relates.

    Dated:

    Signature(s)

    NOTICE: The above signatures of the Holder(s) hereof must correspond with the name as written upon the face of the Series B Debenture in every particular without alteration or enlargement or any change whatever.

    Certificate Number (if applicable):

    Principal amount to be repaid (if less than all):

    Social Security or Other Taxpayer Identification Number

Created by 10KWizard    www.10KWizard.com

Source: GENERAL MOTORS CORP, 8-A12B/A, March 06, 2002

## GENERAL MOTORS CORPORATION

and

## CITIBANK, N.A. as

Trustee

## SECOND SUPPLEMENTAL INDENTURE

Dated as of November 5, 2004

## SUPPLEMENTAL INDENTURE

SECOND SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

### WITNESSETH:

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, and the First Supplemental Indenture, dated as of March 4, 2002. Terms used in this Second Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in March 2002, pursuant to the Indenture, the Company issued $1.15 billion of 4.50 percent Series A Convertible Senior Debentures due March 6, 2032 (the "Series A Debentures").

WHEREAS, the provisions of the Series A Debentures are set forth in the Global Note evidencing the Series A Debentures.

WHEREAS, the terms of the Series A Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series A Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series A Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. Section 1 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series A Debentures as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series A Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series A Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series A Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series A Debentures being converted as of any such Conversion Date."

Section 2. Section 2 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series A Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3. Section 5 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series A Debentures pursuant to this Section 5, the Company shall elect to pay for such Series A Debentures only in cash, subject to the conditions set forth herein. "

Section 4. Section 6 of each outstanding Series A Debenture and all Series A Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series A Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series A Debentures pursuant to this Section 6, the Company shall elect to pay for such Series A Debentures only in cash, subject to the conditions set forth herein. "

Section 5. Recitals. The recitals contained herein shall be taken on the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Second Supplemental Indenture.

Section 6. Counterparts. This Second Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7. New York Contract. This Second Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Second Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\*   \*   \*   \*   \*

CHICAGO_1165245_1

IN WITNESS WHEREOF, the parties hereto have caused this Second Supplemental Indenture to be duly executed.

**GENERAL MOTORS CORPORATION**

By:_____
Name: Walter G. Borst
Title: Treasurer

**CITIBANK, N.A., as Trustee**

By:_____
Name: Wafaa Orfy
Title: Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Second Supplemental Indenture to be duly executed.

**GENERAL MOTORS CORPORATION**

By:_____
Name: Walter G. Borst
Title: Treasurer

**CITIBANK, N.A., as Trustee**

By:_____
Name: Wafaa Orly
Title: Vice President

GENERAL MOTORS CORPORATION

and

CITIBANK, N.A. as

Trustee

THIRD SUPPLEMENTAL INDENTURE

Dated as of November 5, 2004

SUPPLEMENTAL INDENTURE

THIRD SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

WITNESSETH:

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, and the Second Supplemental Indenture, dated as of the date hereof. Terms used in this Third Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in March 2002, pursuant to the Indenture, the Company issued $2.6 billion of 5.25 percent Series B Convertible Senior Debentures due March 6, 2032 (the "Series B Debentures").

WHEREAS, the provisions of the Series B Debentures are set forth in the Global Note evidencing the Series B Debentures.

WHEREAS, the terms of the Series B Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series B Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series B Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. Section 1 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series B Debentures as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series B Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series B Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series B Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series B Debentures being converted as of any such Conversion Date."

Section 2. Section 2 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series B Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3. Section 5 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series B Debentures pursuant to this Section 5, the Company shall elect to pay for such Series B Debentures only in cash, subject to the conditions set forth herein. "

Section 4. Section 6 of each outstanding Series B Debenture and all Series B Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series B Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series B Debentures pursuant to this Section 6, the Company shall elect to pay for such Series B Debentures only in cash, subject to the conditions set forth herein. "

Section 5. Recitals. The recitals contained herein shall be taken on the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Third Supplemental Indenture.

Section 6. Counterparts. This Third Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7. New York Contract. This Third Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Third Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

*   *   *   *   *

IN WITNESS WHEREOF, the parties hereto have caused this Third Supplemental Indenture to be duly executed.

**GENERAL MOTORS CORPORATION**

By:_____
Name: Walter G. Borst
Title: Treasurer


**CITIBANK, N.A., as Trustee**

By:_____
Name: Wafaa Orfy
Title: Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Third Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____
Name: Walter G. Borst
Title: Treasurer

CITIBANK, N.A., as Trustee

By:_____
Name: Wafaa Orfy
Title: Vice President

GENERAL MOTORS CORPORATION

and

CITIBANK, N.A. as

Trustee

FOURTH SUPPLEMENTAL INDENTURE

Dated as of November 5, 2004

SUPPLEMENTAL INDENTURE

FOURTH SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

### WITNESSETH:

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of the date hereof, and the Third Supplemental Indenture, dated as of the date hereof. Terms used in this Fourth Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in July 2003, pursuant to the Indenture, the Company issued $4.3 billion of 6.25 percent Series C Convertible Senior Debentures due July 15, 2033 (the "Series C Debentures").

WHEREAS, the provisions of the Series C Debentures are set forth in the Global Note evidencing the Series C Debentures.

WHEREAS, the terms of the Series C Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series C Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series C Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. Section 1 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series C Debentures as follows:

CHICAGO_1165250_1

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series C Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series C Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series C Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series C Debentures being converted as of any such Conversion Date."

Section 2. Section 2 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series C Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3. Section 5 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series C Debentures pursuant to this Section 5, the Company shall elect to pay for such Series C Debentures only in cash, subject to the conditions set forth herein. "

Section 4. Section 6 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series C Debentures pursuant to this Section 6, the Company shall elect to pay for such Series C Debentures only in cash, subject to the conditions set forth herein. "

Section 5. Recitals. The recitals contained herein shall be taken on the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Fourth Supplemental Indenture.

Section 6. Counterparts. This Fourth Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7. New York Contract. This Fourth Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Fourth Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Fourth Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____

Name: Walter G. Borst

Title: Treasurer

CITIBANK, N.A., as Trustee

By:_____

Name: Wafaa Orfy

Title: Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Fourth Supplemental Indenture to be duly executed.

**GENERAL MOTORS CORPORATION**

By:_____
Name: Walter G. Borst
Title: Treasurer


**CITIBANK, N.A., as Trustee**

By:_____
Name: Wafaa Orfy
Title: Vice President

# GENERAL MOTORS CORPORATION

### and

## WILMINGTON TRUST COMPANY as

### Trustee

## SUPPLEMENTAL INDENTURE

### Dated as of August 13, 2007

SUPPLEMENTAL INDENTURE, dated as of August 13, 2007, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and WILMINGTON TRUST COMPANY, a banking corporation duly organized and existing under the laws of the State of Delaware (the "Trustee"). The term "Trustee" shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below).

## WITNESSETH:

WHEREAS, the Company and the Citibank, N.A., as predecessor to the Trustee, have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of November 5, 2004, the Third Supplemental Indenture, dated as of November 5, 2004 and the Fourth Supplemental Indenture, dated as November 5, 2004. Terms used in this Supplemental Indenture that are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, Appendix A hereto identifies approximately $12.46 billion in U.S. dollar denominated non-convertible debt Securities, represented by 13 series of Securities, issued and outstanding under the Indenture.

WHEREAS, each series of Securities identified on Appendix A hereto was issued in the form of Global Securities (collectively, the "Global Notes").

WHEREAS, each of the Global Notes is subject to the Indenture and all indentures supplemental thereto, each Global Note containing a paragraph as follows:

"This Global Bond is one of a duly authorized issue of debentures, notes, bonds or other evidences of indebtedness of the Company (hereinafter called the "Securities") of the series hereinafter specified, all issued or to be issued under and pursuant to an indenture dated as of December 7, 1995 (herein called the "Indenture"), duly executed and delivered by the Company to Citibank, N.A. (herein called the "Trustee") to which Indenture and all indentures supplemental thereto reference is hereby made for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Securities;"

WHEREAS, certain provisions of the Indenture are described in each of the Global Notes.

WHEREAS, the first sentence of the fourth paragraph of each of the Global Notes contains a description of the vote of Holders required by Section 10.02 of the Indenture to enter into certain supplemental indentures, the text of which, up to the first semi-colon, is as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than 66 2/3% in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or

changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

WHEREAS, the Global Notes incorrectly summarize Section 10.02 of the Indenture with respect to the percentage in aggregate principal amount of Securities outstanding required to execute such supplemental indentures, the Indenture expressly providing for approval by a majority rather than 66 2/3% in aggregate principal amount of Securities outstanding, the text of the first paragraph of Section 10.02, up to the first semi-colon, being as follows:

"With the consent (evidenced as provided in Section 8.01) of the Holders of not less than a majority in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any Coupons appertaining to such Securities;"

WHEREAS, the Company desires to correct this description of the Indenture in the Global Notes.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein, which section provides that the Company may enter into a supplemental indenture:

"to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee; or to make such other provisions in regard to matters or questions arising under this Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any Coupons appertaining to such Securities;"

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. The first sentence of the fourth paragraph of each of the Global Notes (or other applicable portion) shall be and hereby is amended, without any further action on the part of the Company, the Trustee or the Holder of any Global Note, by deleting the phrase "66 2/3%" contained therein and replacing it with the phrase "a majority," so that the paragraph, up to the first semi-colon, shall read as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than a majority in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

Section 2. Recitals. The recitals contained herein shall be taken as the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Supplemental Indenture.

Section 3. Counterparts. This Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 4.  New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____

Name:

Title:


WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as
Trustee

By:_____

Name:

Title:

Section 4. New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

*    *    *    *    *

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____
Name:
Title:

WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Trustee

By:_____
Name:
Title:

Geoffrey J. Lewis
Financial Services Officer

## Appendix A

6 3/8% Notes due May 1, 2008
7.20% Notes due January 15, 2011
7.125% Senior Notes due July 15, 2013
7.70% Debentures due April 15, 2016
8.250% Debentures due July 15, 2023
8.10% Debentures due June 15, 2024
6 3/4% Debentures due May 1, 2028
8.375% Debentures due July 15, 2033
7.375% Senior Notes due May 15, 2048
7.25% Quarterly Interest Bonds due April 15, 2041
7.50% Senior Notes due July 1, 2044
7.375% Senior Notes due May 23, 2048
7.25% Senior Notes due February 15, 2052