# **Debtors 13**

**13**

# B O N D   P U R C H A S E

## A N D

## P A Y I N G   A G E N C Y   A G R E E M E N T

General Motors Corporation

United States of America

Foreign Interest Payment Bonds 1986ff

FIPS

of Swiss Francs 300,000,000

CM1.041686.2

- 2 -

TABLE OF CONTENTS                                    PAGE

|        |                                        |     |
|--------|----------------------------------------|-----|
| I.     | SUBJECT                                | 4   |
| II.    | TERMS OF THE BONDS                     | 4   |
| III.   | SYNDICATION                            | 25  |
| IV.    | SALES RESTRICTIONS                     | 26  |
| V.     | COMMISSIONS, TAXES AND EXPENSES        | 28  |
| VI.    | PAYMENTS TO THE CORPORATION            | 29  |
| VII.   | CONDITIONS                             | 29  |
| VIII.  | WARRANTIES                             | 30  |
| IX.    | LISTING AND COVENANTS                  | 32  |
| X.     | PRINTING OF THE BONDS                  | 33  |
| XI.    | PAYING AGENCY                          | 34  |
| XII.   | RIGHT OF TERMINATION                   | 36  |
| XIII.  | COMMUNICATIONS                         | 36  |
| XIV.   | PROVISO                                | 37  |
| XV.    | GOVERNING LAW AND JURISDICTION         | 37  |

| ANNEX A | GLOBAL CERTIFICATE  |
|---------|---------------------|
| ANNEX B | FRONT OF THE BONDS  |
| ANNEX C | FORM OF COUPONS     |
| ANNEX D | FORM OF TALONS      |

CM1.041686.2

- 3 -

## Bond Purchase and Paying Agency Agreement

Entered into as of May 28, 1986 by and between

### GENERAL MOTORS CORPORATION,

being a corporation duly organized with limited liability and
existing under the laws of Delaware, whose principal offices are
situated at 3044 West Grand Boulevard, Detroit, Michigan 48202 and
767 Fifth Avenue, New York, New York 10153 both United States
of America,

(hereinafter called the "Corporation")

on the one part

and

### CREDIT SUISSE,

being a corporation duly organized with limited liability and
existing under the laws of the Confederation of Switzerland, whose
registered office is situated at Paradeplatz 8, 8001 Zurich,
Switzerland,

(hereinafter called "CREDIT SUISSE" or the "Bank")

on the other part,

whereunder the following agreement (the "Agreement") has been
concluded:

CM1.041686.2

- 4 -

## I.  SUBJECT

1.      Pursuant to the resolution of its Board of Directors
        adopted on March 3, 1986 and May 15, 1986, the
        Corporation has resolved to issue bearer Bonds 1986ff
        denominated in Swiss francs ("SFr."), with interest
        thereon payable in United States dollars, in the
        aggregate face amount of SFr. 300,000,000 (three
        hundred million Swiss francs) (the "Bonds").

2.      Subject to the terms and conditions of this Agreement,
        the Corporation agrees to issue and sell to CREDIT SUISSE
        and CREDIT SUISSE undertakes to purchase from the
        Corporation for public subscription in Switzerland the
        Bonds in the aggregate principal amount of
        SFr. 300,000,000 (three hundred million Swiss francs),
        at the price of 100%.

3.      The net proceeds from the sale of the Bonds will be used
        for general corporate purposes of the Corporation.

## II.  TERMS OF THE BONDS

The terms of the Bonds (the "Terms of the Bonds"), which form an
integral part of this Agreement, shall be stated in English on the
reverse side of the definitive Bonds.  English shall be the
governing language for the understanding and interpretation of the
Terms of the Bonds, which are the following:

1.      Form and Denomination

        The Bonds, which have not been and will not be regis-
        tered under the Securities Act of 1933, as amended, of
        the United States of America, and may not at any time be
        converted into registered Bonds, shall be evidenced by
        bearer Bonds of Swiss francs 5,000 and 100,000 Face
        Amount each, the latter in particular for the collective
        safe-custody system.  The term "Face Amount" as used
        herein with respect to the Bonds shall mean the amount
        denominated on the face of such Bonds in Swiss francs.

2.      Interest

2.1     Interest Payments

2.1.1   The Bonds bear interest from June 25, 1986 (the
        "Payment Date") payable in legal currency of the United
        States of America ("US $") annually in arrears on June 25,
        (the "Interest Payment Date").  For this purpose, the
        Bonds are furnished with annual interest coupons (the
        "Coupons") and talons (the "Talons") in accordance with

- 5 -

Section 2.1.3 of the Terms of the Bonds.  The first
Coupon will become due and payable on June 25, 1987.

2.1.2    The interest payable on the Bonds shall be calculated by
applying the relevant per annum interest rate (deter-
mined in accordance with Section 2.2 of the Terms of
the Bonds) to the appropriate Face Amount of the Bonds
as converted into United States dollars at a fixed
exchange rate of SFr. 1.8535/US$1 (the "Fixed Exchange
Rate").  Interest will be computed on the basis of a
360-day year consisting of twelve months of 30 calendar
days each.

2.1.3    Each Bond will initially be furnished with a sheet of
ten Coupons (the "Coupon Sheet") and a sheet of ten
Talons (the "Talon Sheet"). After all the Coupons on a
Coupon Sheet have matured, a replacement Coupon Sheet
("Replacement Coupon Sheet") with Coupons for the
interest payments due in respect of the Bonds for the
next succeeding 10 years will be issued against
presentation of the Bond together with the appropriate
Talon, and upon cancellation or surrender of such Talon,
at the cost of the Corporation, in due course at the
offices of the Paying Agents in Switzerland in
accordance with Section 4.2 of the Terms of the Bonds.
Upon presentation of the last of the Talons on a Talon
Sheet, a replacement Talon Sheet ("Replacement Talon
Sheet") with ten additional Talons, as well as a
Replacement Coupon Sheet, will be issued at the cost of
the Corporation, in due course, at the offices of the
Paying Agents in Switzerland in accordance with Section
4.2 of the Terms of the Bonds. Talons which are
presented without the corresponding Bond will not confer
to the holder of such Talon any right to receive a new
Coupon Sheet or a new Talon Sheet.

The Corporation may, subject to the prior approval of the
Principal Paying Agent, substitute on each 10th anni-
versary of the Payment Date, the Bonds with Talons and
Coupons with Bonds without Talons and Coupons, if at such
date, the laws and the applicable regulations in the
United States of America and in Switzerland permit and
if payment of interest on bearer Bonds without coupons
shall be standard in the Swiss market. In the event of
such substitution the Principal Paying Agent shall, not
less than 60 days prior to the date of substitution,
publish a notice in accordance with Section 13 hereof,
which shall specify the modalities of future payments
of interest.

2.2    Interest Rate

2.2.1    The applicable interest rate for the first 10 years
payable on the first ten Interest Payment Dates will be
7% p.a., which applied in accordance with Section

CM1.041686.2

- 6 -

2.1.2 hereof will result in annual interest payments of
US $ 188.83 and US $ 3,776.64 on the Face Amount of
SFr. 5,000 and SFr. 100,000 respectively.

2.2.2    On each May 9th immediately prior to each 10-year
anniversary of the Payment Date (the "Interest
Adjustment Date"), the annual interest rate
applicable for the next succeeding 10-year period (the
"Adjusted Interest Rate") shall be determined by the
Principal Paying Agent. If any such May 9th is not a
Business Day then the appropriate Interest Adjustment
Date shall be the Business Day immediately preceding
such May 9th.  The Adjusted Interest Rate shall be the
arithmetic mean of the Yields of Comparable Maturity of
U.S. Treasury Obligations on the 5 (five) Business Days
immediately preceding the Interest Adjustment Date minus
0.5%, converted to an annual basis and rounded, if
necessary, to the nearest 1/8%.

The term "Yields of Comparable Maturity U.S. Treasury
Obligations", as used herein, shall mean the interest
rates presently published by the Federal Reserve Board
in the weekly statistical release designated as "H. 15
(519), Selected Interest Rates" opposite the caption
"U.S. Government Securities - Treasury Constant Maturi-
ties" for a 10-year period, or in any successor or
equivalent publication.

2.2.3    If, for any Interest Adjustment Date, no Yields of
Comparable Maturity U.S. Treasury Obligations are
available, the Adjusted Interest Rate shall be the
arithmetic mean of the yields to maturity of the two
most recent 10-year U.S. Treasury securities (which
10-year Treasury securities shall not be older than one
year), weighted by the original size of the issue, based
on the daily closing bid (or less frequently if daily
quotations are not available) quoted by at least three
recognized U.S. Government securities primary dealers
selected by the Principal Paying Agent (hereinafter
called "Dealers" or individually "Dealer"), on the 5
(five) Business Days immediately preceding the Interest
Adjustment Date minus 0.5% converted to an annual
basis and rounded, if necessary, to the nearest 1/8 %.

2.2.4    If, for any Interest Adjustment Date, no two 10-year
U.S. Treasury securities not older than one year should
be outstanding, the Adjusted Interest Rate shall be the
arithmetic mean of the yields to maturity of any two
U.S. Treasury securities (with a maturity of not less
than 9 years nor greater than 11 years), weighted by
original size of the issue, deemed to be the most
representative securities actively traded by the
respective Dealers, based on the daily closing bid (or
less frequently if daily quotations are not available)
quoted by at least three Dealers on the 5 (five)
Business Days immediately preceding the Interest

- 7 -

Adjustment Date minus 0.5% converted to an annual basis
and rounded, if necessary, to the nearest 1/8 %.

2.2.5    If, on any Interest Adjustment Date, the Principal
Paying Agent determines that the Adjusted Interest Rate
is not ascertainable through any one of the methods
described in Sections 2.2.2, 2.2.3, and 2.2.4 of the
Terms of the Bonds, the Corporation shall, on the Interest
Payment Date following such Interest Adjustment Date,
redeem the Bonds at 100% of their Face Amount in Swiss
francs, in accordance with Section 3.1 of the Terms of
the Bonds.  The most recently applicable interest rate
shall continue to be payable by the Corporation up to such
redemption of the Bonds.

2.2.6    The terms "Business Day" or "Business Days" shall mean a
day or days on which commercial banks are open for
business (including dealings in foreign exchange) during
the entire day both in Zurich and in New York City, provided,
however, that for the purposes of determining the
Adjusted Interest Rate, the terms "Business Day" or
"Business Days" shall mean a day on which commercial
banks are open for domestic business in New York City.

2.3    Publication of Adjusted Interest Rate
The Principal Paying Agent shall have each Adjusted
Interest Rate published in accordance with Section 13 of
the Terms of the Bonds, and shall notify the Corporation of
such Adjusted Interest Rate, as soon as possible after
such Adjusted Interest Rate is determined.

3.    Redemption and Purchase of Bonds

3.1    Mandatory Redemption

The Corporation shall redeem the Bonds at 100% of their
Face Amount in Swiss francs automatically and without
any previous notice

a)    not later than 3 (three) Business Days after that
date which is the earlier of:

i)    the date of the resolution of the general
meeting of the shareholders of the Corporation to
dissolve, liquidate or wind up the affairs
of the Corporation, or

ii)    the date of any final judgment rendered by a
court of competent jurisdiction ordering the
dissolution, liquidation or winding up of the
affairs of the Corporation;

under immediate notification of the Principal
Paying Agent by the Corporation upon the
occurance of either such event, or

-8-

b)   on the Interest Payment Date following any Interest
Adjustment Date if, pursuant to Section 2.2.5 of
the Terms of the Bonds, an adjusted Interest Rate
has not been ascertainable.

3.2      Option of the Corporation to Redeem

3.2.1    On each 10th anniversary of the Payment Date, (each one
being a "Redemption Date"), the first time as of
June 25, 1996, the Corporation shall be entitled to
redeem all, but not part of, the outstanding Bonds at
100% of their Face Amount in Swiss francs provided the
Corporation has given the Principal Paying Agent notice of
such redemption, such notice to be received by the
Principal Paying Agent not later than two Business Days
after the Interest Adjustment Date.  If the Principal
Paying Agent has not received such notice by such date,
the Bonds may not be redeemed by the Corporation on such
Redemption Date irrespective of whether such notice has
been sent by the Corporation.

3.2.2    If, however, as a result of the exercise of the option
of the Bondholders to cause the Corporation to redeem in
accordance with Section 3.3 of the Terms of the Bonds below,
less than 25 % of the initial aggregate principal amount
of the Bonds would remain outstanding on and after a
Redemption Date, the Corporation may, at its option, redeem
the remaining balance, but not less, of such outstanding
Bonds as of each Redemption Date at 100% of their Face
Amount in Swiss francs.  In case of any such exercise of
its option to redeem, the Corporation shall give notice to
the Principal Paying Agent of the Corporation's intent to
exercise this option to redeem at least 8 (eight)
Business Days prior to the applicable Redemption Date.

3.3      Option of the Bondholders to Cause the Corporation to
Redeem

3.3.1    On each Redemption Date, each holder of a Bond (herein-
after collectively called "Bondholders" or individually
a "Bondholder") may cause the Corporation to redeem such
Bondholder's Bond, provided the Bondholder has given
written notice of such redemption to the Principal
Paying Agent at its head office by not later than the
June 3rd immediately preceding such Redemption Date, or
if such June 3rd is not a Business Day then on the
Business Day immediately preceding such June 3rd, such
notice to be accompanied by a written confirmation of a
Paying Agent certifying that the Bond to be so redeemed
has been deposited with the Paying Agent for that
purpose. Without such confirmation the notice of
redemption shall have no legal effect.

- 9 -

3.3.2    On such June 3rd (if not a Business Day, the immediately preceding Business Day) prior to the Redemption Date (the "Redemption Exchange Rate Determination Date"), the Principal Paying Agent shall determine the redemption exchange rate based on the offering SFr./US$ exchange rate for large commercial transactions quoted by the Principal Paying Agent at 10 a.m. Swiss time (the "Redemption Exchange Rate"). If, on any Redemption Exchange Rate Determination Date, the Principal Paying Agent is for any reason not quoting a bid/offer price for SFr./US$ exchange, the Redemption Exchange Rate shall be the offering SFr./US$ exchange rate for large commercial transactions quoted by another major Swiss bank selected by the Principal Paying Agent.

3.3.3    In the event any of the Bonds are redeemed at the option of the Bondholders, the amount of principal payable to such Bondholders in Swiss francs shall be determined as follows:

a)    if, at the Redemption Exchange Rate Determination Date, the Redemption Exchange Rate is equal to or greater than the Fixed Exchange Rate (US$1 is equal to or greater than SFr. 1.8535) the Bonds shall be redeemed at 100% of their Face Amount in Swiss francs.

b)    if, at the Redemption Exchange Rate Determination Date, the Redemption Exchange Rate is below the Fixed Exchange Rate (US$1 is less than SFr. 1.8535) the Bonds shall be redeemed in Swiss francs in an amount calculated by the following formula:

$$\frac{\text{Face Amount x Redemption Exchange Rate}}{\text{Fixed Exchange Rate}}$$

rounded up to the next SFr. 0.10.

3.4    Notice of Redemption

Upon receipt of all relevant notices given pursuant to Sections 3.1, 3.2 and 3.3 of the Terms of the Bonds either by the Corporation or by the Bondholders, the Principal Paying Agent shall immediately publish a notice of such redemption as provided in Section 13 of the Terms of the Bonds.

- 10 -

3.5        **Presentation of Bonds for Redemption**

The Bonds so redeemed under either Section 3.1, 3.2, 3.3
or 5.4 of the Terms of the Bonds shall cease to bear
interest from the Redemption Date (unless the Corporation
shall default in the payment of such Bonds). Each such
Bond must be presented and surrendered for payment with
all unmatured Coupons and Talons attached; the amount of
any missing unmatured Coupons, as determined by the
respective Paying Agent, will be deducted in Swiss
francs from the amount due to the Bondholder at the
exchange rate, as determined by the Principal Paying
Agent, in effect as of such presentation and surrender,
but such unmatured Coupons shall be paid upon subsequent
presentation and surrender, at their face amount in US$,
provided such Coupons have not become unenforceable
under Swiss law.

3.6  **Purchase of Bonds**

Nothing herein shall be deemed to prohibit the Corporation
from acquiring any of the Bonds in the open market at
any time, in private transactions or otherwise.

4.  **Payments**

4.1  CREDIT SUISSE hereby is appointed as the initial
Principal Paying Agent for the Bonds.

4.2  The Corporation undertakes to pay to the Principal Paying
Agent, for the benefit of the Bondholders when due:

  a)    principal (Face Amount or such amount as defined
        under Section 3.3.3 b), whichever is applicable)
        and premium (if any) of the Bonds in freely
        disposable legal currency of the Swiss
        Confederation,

  b)    interest on the Bonds in freely disposable legal
        currency of the United States of America,

  c)    any additional sums payable pursuant to Section 5
        hereof in freely disposable legal currency of the
        United States of America or the Swiss Confederation,
        whichever is applicable,

without cost to the Bondholders, without any limitations
and under all circumstances notwithstanding any transfer
restrictions, regardless of any bilateral or multilateral
payment or clearing agreement in existence between the
United States of America and the Swiss Confederation,
irrespective of the citizenship, nationality, residence or
domicile of any of the Bondholders and without requiring
any affidavit or the fulfillment of any formalities other
than presentation and surrender of the Bonds and/or Coupons
to which such payment relates.

CM1.041686.2

- 11 -

The funds required for the payment of

a)   <u>principal</u>,

b)   <u>premium</u> (if any),

c)   <u>interest</u> and

d)   <u>any additional sums</u> payable pursuant to Section 5
     hereof,

shall be made available to the Principal Paying Agent at
its head office in Switzerland by the Corporation before
each applicable Interest Payment Date and Redemption Date.
The receipt of the funds by the Principal Paying Agent on
behalf of the Bondholders shall release the Corporation from
its obligations in respect of the payments due at the
respective dates for principal, premium (if any), interest
and additional sums payable pursuant to Section 5 of the
Terms of the Bonds.

The Principal Paying Agent will arrange for payment of
such funds as and when due to the holders of Bonds and
Coupons.  Bonds, Coupons and Talons may be presented and
surrendered for payment or, as the case may be,
exchanged for Replacement Coupon Sheets and Replacement
Talon Sheets, at the offices in Switzerland of the
following banks (the "Paying Agents"):

CREDIT SUISSE
Swiss Volksbank
Bank Leu Ltd.
Members of the Groupement des Banquiers Prives Genevois
A. Sarasin & Cie
Private Bank and Trust Company
Members of the Groupement de Banquiers Prives Zurichois
Swiss Cantonalbanks
Morgan Guaranty Trust Company of New York, Zurich Branch
Allgemeine Aargauische Ersparniskasse
Bank Hofmann Ltd
Bankers Trust Ltd
Clariden Bank
Commerzbank (Switzerland) Ltd.
Credit Lyonnais
Dresdner Bank (Switzerland) Ltd
Lloyds Bank Plc
J. Henry Schroder Bank Ltd.

- 12 -

The Bondholders will be paid with respect to interest in accordance with Section 2, with respect to principal in accordance with Section 3 and in case of redemption pursuant to Section 5 hereof including the additional amounts mentioned therein.

4.3   If, at any time during the life of the Bonds the Principal Paying Agent shall wish to resign or be incapable, for any reason, of acting as Principal Paying Agent, or of acting as agent of the Bondholders as contemplated by the Terms of the Bonds, the Bondholders expressly agree that the Principal Paying Agent may be substituted as Principal Paying Agent by a decision of a majority of the then Paying Agents after consultation with the Corporation. Such majority decision shall be based upon the principal amount of the Bonds initially subscribed by such institutions.  If the then Paying Agents shall fail to appoint any replacement of the Principal Paying Agent within 30 days of notice of such desire to resign or incapacity, then the Corporation shall appoint the replacement.  In the event of any replacement of the Principal Paying Agent, all references to the Principal Paying Agent shall be deemed to refer to such replacement.

Each Paying Agent may resign or be substituted by the Corporation after consultation with the Principal Paying Agent. So long, however, as the Paying Agents shall satisfactorily perform their obligations hereunder, the Corporation undertakes not to appoint any other institution as Paying Agent. Only institutions which qualify under Swiss law to act as Paying Agents and which are of good standing may be appointed as such.

Notice of appointment of any substitute Principal Paying Agent or Paying Agent shall be published in accordance with Section 13 of the Terms of the Bonds.

4.4   If the due date of any amount of principal or interest in respect of any Bond is not a Business Day in the place where the relevant Bond or Coupon, as the case may be, is surrendered or presented for payment, then the holder thereof will not be entitled to payment of the amount due in such place until the next following Business Day in Switzerland and will not be entitled to any further interest or other payment in respect of any such delay.

- 13 -

4.5  Payments by the Paying Agents to the Bondholders of any
     amount payable in U.S. dollars will be made by a U.S.
     dollar check drawn on a bank in the United States or by
     transfer to a U.S. dollar account maintained by the payee
     with a Paying Agent.

     All payments on the Bonds or Coupons including those
     pursuant to Section 5 of the Terms of the Bonds shall
     be made at any office of the Principal Paying Agent
     or any Paying Agent in Switzerland.

4.6  Payments will not be made pursuant to presentation to the
     Paying Agents of any Bond or Coupon, as the case may be,
     within the United States or the making of any other demand
     for payment in accordance with the Terms of the Bonds to
     any Paying Agent within the United States.  Payments will
     also not be made by mail to an address in the United States
     or by transfer to an account maintained in the United States.

5.   <u>Taxation</u>

5.1  All payments of interest and principal, plus premium (if
     any), shall be made without deduction of any taxes, im-
     posts, penalties, duties, assessments or governmental
     charges of any kind or nature (hereinafter individually
     referred to as "Taxes"), present or future, which are
     required to be withheld at source (including, without
     limitation, back-up withholding) by the Corporation (or any
     Paying Agent in its capacity as such), and which are levied
     or imposed or to be levied or imposed by the United States
     of America, including its possessions and territories and
     areas subject to its jurisdiction (including the
     Commonwealth of Puerto Rico), or any political subdivision
     thereof (a "Taxing Jurisdiction").

5.2  In the event that any such Taxes should at any time be
     imposed or levied by any such Taxing Jurisdiction, the
     Corporation shall remit to the Principal Paying Agent for
     the account of the holders of any Bond or Coupon such
     additional amounts as may be necessary to ensure that
     after deduction of any such Taxes of a Taxing
     Jurisdiction, but before any deduction made in pursuance
     of Swiss law, every net payment of the principal,
     premium (if any), and interest on a Bond will not be
     less than the face amount of any Coupon and the
     principal amount of any Bond that may be due and owing
     at the time of payment thereof, plus premium (if any).

- 14 -

The Corporation's obligation to remit such additional
amounts shall not be subject to the fulfilment of any
disclosure or certification requirement with respect to
the nationality, residence, status or identity of the
recipient of the payment or the beneficial owner of the
Bond and/or Coupons in question.

5.3   The foregoing provisions do not, however, exempt a
holder of a Bond or Coupon from any Taxes imposed
or levied in a Taxing Jurisdiction, and the Corporation
shall not be obligated to remit funds and pay any
additional amounts on account of such Taxes if the holder
of the Bond or Coupon is subject to taxation in a Taxing
Jurisdiction for reasons other than his ownership of
such Bond or Coupon or receipt of principal, premium
(if any) or interest in respect thereof, nor shall the
Corporation be obligated to remit funds and pay additional
amounts in the event any Taxes are imposed for or on
account of one or more of the following:

a)   any Taxes which would not have been so imposed but
for (i) the existence of any present or former
connection between such holder (or fiduciary,
settlor, beneficiary, member, or shareholder of, or
holder of a power over, such holder if such holder
is an estate, trust, partnership or corporation)
and the United States, including, without limitation,
such holder (or such fiduciary, settlor, beneficiary,
member, shareholder or holder of a power) being or
having been a citizen or resident or treated as a
resident thereof or being or having been engaged in
a trade or business therein or being or having been
present therein or having or having had a permanent
establishment therein, or (ii) such holder's
present or former status as a personal holding
company or foreign personal holding company or
controlled foreign corporation for United States
Federal income tax purposes, or corporation which
accumulates earnings to avoid United States Federal
income tax;

b)   any estate, inheritance, gift, sales, transfer, personal
property or excise tax or any similar Taxes;

c)   any Taxes which are payable otherwise than by
withholding from payments of principal of, premium,
if any, or interest on such Bond;

CM1.041686.2

- 15 -

d)    any Taxes imposed on interest received by a holder or
      beneficial owner of a Bond or Coupon who actually
      or constructively owns 10% or more of the total
      combined voting power of all classes of stock of
      the Corporation entitled to vote within the meaning
      of Section 871(h)(3) of the United States Internal
      Revenue Code (the "Code");

e)    any Taxes required to be withheld by any Paying Agent from
      any payment of principal of, premium, if any, or interest
      on any Bond, if such payment can be made
      without such withholding by at least one other Paying
      Agent;

f)    any combination of items a), b), c), d), or e);

nor will additional amounts be paid to any holder who is a
fiduciary or partnership or other than the sole beneficial
owner of the Bond or Coupon to the extent a settlor or
beneficiary with respect to such fiduciary or member of
such partnership or a beneficial owner of the Bond or
Coupon would not have been entitled to payment of the
additional amounts had such beneficiary, settlor, member
or beneficial owner been the holder of the Bond or Coupon.

5.4    If, at any time, the Corporation furnishes a written
       opinion of the Corporation's independent legal counsel
       of recognized standing to the Principal Paying
       Agent that the probability materially increases
       that (i) the Corporation either is, or on or before
       the next Interest Payment Date will be, required by
       law (including any regulation or rulings promulgated
       thereunder) of the United States or any political
       subdivision thereof or therein affecting taxation,
       or any final decision rendered in a court of
       competent jurisdiction of the United States (whether
       or not such ruling was issued or decision rendered
       with respect to the Corporation) to withhold at source
       any Taxes in respect of the interest and/or principal
       plus premium (if any) with respect to the Bonds which
       cannot be avoided by the use of any reasonable measures
       or (ii) the Corporation is, or on or before the next
       Interest Payment Date will be prohibited from performing
       or observing any of its obligations contained in this
       Section 5, then the Corporation may, on giving not less
       than 60 days' notice to the Principal Paying Agent,
       redeem the outstanding Bonds on any date thereafter in
       whole but not in part at the following percentages of
       the Face Amount:

CM1.041686.2

- 16 -

| | |
|---|---|
| 102 % | in case of redemption on or after June 25, 1986 but prior to June 25, 1987 |
| 101 1/2 % | in case of redemption on or after June 25, 1987 but prior to June 25, 1988 |
| 101 % | in case of redemption on or after June 25, 1988 but prior to June 25, 1989 |
| 100 1/2 % | in case of redemption on or after June 25, 1989 but prior to June 25, 1990 |
| 100 % | in case of redemption on or after June 25, 1990 |

by making payments in Swiss francs in respect of the
principal of and premium (if any) on the Bonds, plus,
in each case the interest accrued in U.S. dollars
until the Redemption Date.

The notice of such a redemption, which will include
the date of such redemption and the applicable
redemption price thereof, will thereafter be pub-
lished by the Principal Paying Agent in the newspapers
mentioned in Section 13 hereunder.

Prior to the publication of notice of redemption of the
Bonds pursuant to this Section 5, the Corporation will de-
liver to the Principal Paying Agent a certificate
(upon which the Principal Paying Agent may conclusively
rely) stating that the Corporation is entitled to effect such
redemption and setting forth in reasonable detail a
statement of facts showing that the conditions precedent to
the right of the Corporation to redeem the Bonds pursuant to
this Section 5 have occurred.
The Bonds called for redemption cease to bear interest
from the date fixed for such redemption. They must be
presented for repayment, with all unmatured Coupons and
the Talon attached; the amount of missing Coupons will
be deducted (in accordance with Section 3.5) from the
amount due for repayment, but such Coupons shall be paid
upon subsequent presentation provided they have not
become barred in accordance with Swiss law as specified
in Section 10 hereof.

5.5   The interest on the Bonds is, in accordance with Swiss
law at present in force, not subject to the Swiss
Federal Anticipatory Tax.

6.   Status of the Bonds and Negative Pledge

6.1   The Bonds, which constitute direct, unsecured and
unconditional obligations of the Corporation, rank and will
rank at least pari passu in right of payment in all
other respects with all other present or future unsecured
and unsubordinated obligations of the Corporation.

- 17 -

6.2     Limitations on Liens

So long as any of the Bonds shall be outstanding the
Corporation will not, nor will it permit any Manufacturing
Subsidiary to, issue or assume any Debt secured by a
Mortgage upon any Principal Domestic Manufacturing
Property of the Corporation or any Manufacturing Subsidiary
or upon any shares of stock or indebtedness of any
Manufacturing Subsidiary (whether such Principal
Domestic Manufacturing Property, shares of stock
or indebtedness are now owned or hereafter acquired)
without in any such case effectively providing concurrently
with the issuance or assumption of any such Debt that the
Bonds (together with, if the Corporation shall so determine,
any other indebtedness of the Corporation or such Manufacturing
Subsidiary ranking equally with the Bonds and then existing
or thereafter created) shall be secured equally and ratably
with such Debt, unless the aggregate amount of Debt issued
or assumed and so secured by Mortgages, together with all
other Debt of the Corporation and its Manufacturing Subsidiaries
which (if originally issued or assumed at such time) would
otherwise be subject to the foregoing restrictions, but not
including Debt permitted to be secured under clauses (i)
through (vi) of the immediately following paragraph,
does not at the time exceed 20% of the stockholders' equity
of the Corporation and its consolidated affiliates, as determined
in accordance with generally accepted accounting principles
and shown on the audited consolidated balance sheet contained
in the latest published annual report to the stockholders of
the Corporation.

The above restrictions shall not apply to Debt secured
by (i) Mortgages on property, shares of stock or indebt-
edness of any corporation existing at the time such
corporation becomes a Manufacturing Subsidiary; (ii)
Mortgages on property existing at the time of acquisition
of such property by the Corporation or a Manufacturing
Subsidiary, or Mortgages to secure the payment of all or
any part of the purchase price of such property upon the
acquisition of such property by the Corporation or a
Manufacturing Subsidiary or to secure any Debt incurred
prior to, at the time of, or within 180 days after, the
later of the date of acquisition of such property and the
date such property is placed in service, for the purpose
of financing all or any part of the purchase price thereof,
or Mortgages to secure any Debt incurred for the purpose
of financing the cost to the Corporation or a Manufacturing
Subsidiary of improvements to such acquired property;
(iii) Mortgages securing Debt of a Manufacturing Subsidiary
owing to the Corporation or to another Subsidiary; (iv)
Mortgages on property of a corporation existing at the time
such corporation is merged or consolidated with the

- 18 -

Corporation or a Manufacturing Subsidiary or at the time of
a sale, lease or other disposition of the properties of a
corporation as an entirety or substantially as an entirety
to the Corporation or a Manufacturing Subsidiary; (v) Mortgages
on property of the Corporation or a Manufacturing Subsidiary
in favor of the United States of America or any State thereof,
or any department, agency or instrumentality or political
subdivision of the United States of America or any State
thereof, or in favor of any other country, or any
political subdivision thereof, to secure partial,
progress, advance or other payments pursuant to any
contract or statute or to secure any indebtedness
incurred for the purpose of financing all or any part of
the purchase price or the cost of construction of the
property subject to such Mortgages; or (vi) any
extension, renewal or replacement (or successive extensions,
renewals or replacements) in whole or in part of any Mortgage
referred to in the foregoing clauses (i) to (v), inclusively;
provided, however, that the principal amount of Debt secured
thereby shall not exceed by more than 115% the principal
amount of Debt so secured at the time of such extension,
renewal or replacement and that such extension, renewal or
replacement shall be limited to all or a part of the
property which secured the Mortgage so extended, renewed
or replaced (plus improvements on such property).

6.3    Limitation on Sale and Lease-Back

So long as any of the Bonds shall be outstanding, the
Corporation will not, nor will it permit any Manufacturing
Subsidiary to, enter into any arrangement with any person
providing for the leasing by the Corporation or any Man-
ufacturing Subsidiary of any Principal Domestic Manufacturing
Property owned by the Corporation or any Manufacturing
Subsidiary on the date that the Bonds are originally issued
under the Indenture (except for temporary leases for a term
of not more than five years and except for leases between
the Corporation and a Manufacturing Subsidiary or between
Manufacturing Subsidiaries), which property has been or is
to be sold or transferred by the Corporation or such
Manufacturing Subsidiary to such person, unless either (i)
the Corporation or such a Manufacturing Subsidiary would be
entitled, pursuant to the provisions of the covenant on
limitation on liens described above, to issue, assume, extend,
renew or replace Debt secured by a Mortgage upon such
property equal in amount to the Attributable Debt in respect
of such arrangement without equally and ratably securing
the Bonds provided, however, that from and after the date
on which such arrangement becomes effective the Attributable
Debt in respect of such arrangement shall be deemed for all
purposes under the covenant on limitation on liens

- 19 -

described above and this covenant on limitation on sale and
lease-back to be Debt subject to the provisions of the
covenant on limitation on liens described above (which
provisions include the exceptions set forth in clauses (i)
through (vi) of such covenant), or (ii) the Corporation
shall apply an amount in cash equal to the Attributable
Debt in respect of such arrangment to the retirement (other
than any mandatory retirement or by way of payment at
maturity), within 180 days of the effective date of any
such arrangement, of Debt of the Corporation or any
Manufacturing Subsidiary (other than Debt owned by the
Corporation or any Manufacturing Subsidiary) which by its
terms matures at or is extendible or renewable at the
option of the obligor to a date more than twelve months
after the date of the creation of such Debt.

6.4    Definitions

For purposes of this Section 6, the following definitions will
be applicable:

i)    "Attributable Debt" means, at the time of determination as to
any lease, the present value (discounted at the actual rate, if
stated, or, if no rate is stated, the implicit rate of interest
of such lease transaction as determined by the chairman,
president, any vice chairman, any vice president, the treasurer
or any assistant treasurer of the Corporation), calculated using
the interval of scheduled rental payments under such lease, of
the obligation of the lessee for net rental payments during the
remaining term of such lease (excluding any subsequent renewal
or other extension options held by the lessee). The term "net
rental payments" means, with respect to any lease for any period,
the sum of the rental and other payments required to be paid in
such period by the lessee thereunder, but not including, however,
any amounts required to be paid by such lessee (whether or not
designated as rental or additional rental) on account of main-
tenance and repairs, insurance, taxes, assessments, water rates,
indemnities or similar charges required to be paid by such lessee
thereunder or any amounts required to be paid by such lessee
thereunder contingent upon the amount of sales, earnings or
profits or of maintenance and repairs, insurance, taxes,
assessments, water rates, indemnities or similar charges;
provided, however, that, in the case of any lease which is term-
inable by the lessee upon the payment of a penalty in an amount
which is less than the total discounted net rental payments
required to be paid from the later of the first date upon which
such lease may be so terminated and the date of the determination
of net rental payments, "net rental payments" shall include the
then-current amount of such penalty from the later of such two
dates, and shall exclude the rental payments relating to the
remaining period of the lease commencing with the later of such
two dates.

- 20 -

ii) "Debt" means notes, bonds, debentures or other
similar evidences of indebtedness for money
borrowed.

iii) "Manufacturing Subsidiary" means any Subsdiary
(A) substantially all the property of which is
located within the continental United States of
America, (B) which owns a Principal Domestic
Manufacturing Property and (C) in which the
Corporation's investment, direct or indirect
and whether in the form of equity, debt, advances
or otherwise, is in excess of $2,500,000,000 as
shown on the books of the Corporation as of the
end of the fiscal year immediately preceding the
date of determination; provided, however, that
"Manufacturing Subsidiary" shall not include
Electronic Data Systems Corporation and its
Subsidiaries, GM Hughes Electronics Corporation
and its Subsidiaries, General Motors Acceptance
Corporation and its Subsidiaries (or any corporate
successor of any of them) or any other Subsidiary
which is principally engaged in leasing or in
financing instalment receivables or otherwise
providing financial or insurance services to the
Corporation or others or which is principally
engaged in financing the Corporation's operations
outside the continental United States of America.

iv) "Mortgage" means any mortgage, pledge, lien, security
interest, conditional sale or other title retention
agreement or other similar encumbrance.

v) "Principal Domestic Manufacturing Property" means any
manufacturing plant or facility owned by the Corporation
or any Manufacturing Subsidiary which is located within
the continental United States of America and, in the
opinion of the Board of Directors, is of material im-
portance to the total business conducted by the Corporation
and its consolidated affiliates as an entity.

vi) "Subsidiary" means any corporation of which at least
a majority of the outstanding stock having by the terms
thereof ordinary voting power to elect a majority of the
board of directors of such corporation (irrespective of
whether or not at the time stock of any other class or
classes of such corporation shall have or might have
voting power by reason of the happening of any contingency)
is at the time owned by the Corporation, or by one or
more Subsidiaries, or by the Corporation and one or more
Subsidiaries.

- 21 -

7.    Events of Default

The Principal Paying Agent has the right but not the
obligation, on behalf of the Bondholders, to declare
all outstanding Bonds to be immediately due and payable
at 100 % of their Face Amount in Swiss francs plus
accrued interest in US$ to the date of such payment if
one or more of the following events (herein referred
to as "Events of Default") shall have occurred and be
continuing:

a)    default in the payment of any interest upon or
Additional Amounts with respect to any of the Bonds,
as and when the same shall become due and payable,
and such default shall have continued for a period
of 30 days; or

b)    default in the payment of the principal of the Bonds
as and when the same shall become due and payable either
at maturity, upon redemption, by declaration or
otherwise; or

c)    failure on the part of the Corporation duly to observe
or perform any other of the covenants or agreements
on the part of the Corporation contained in the Bonds
for a period of 30 days after the date on which
written notice of such failure, requiring the Corporation
to remedy the same, shall have been given to the
Corporation by the Principal Paying Agent; or

d)    if a court having jurisdiction in the premises shall
enter a decree or order for relief in respect of the
Corporation in an involuntary case under any applicable
bankruptcy, insolvency or other similar law now or
hereafter in effect, or appointing a receiver,
liquidator, assignee, custodian, trustee, sequestrator
(or other similar official) of the Corporation or for
any substantial part of its property, or ordering
the winding up or liquidation of its affairs and such
decree or order shall remain unstayed and in effect
for a period of 60 consecutive days; or

e)    if the Corporation shall commence a voluntary case
under any applicable bankruptcy, insolvency or
other similar law now or hereafter in effect, or

CM1.041686.2

- 22 -

shall consent to the entry of an order for relief
in an involuntary case under any such law, or shall
consent to the appointment of or taking possession
by a receiver, liquidator, assignee, trustee,
sequestrator (or other similar official) of the
Corporation or for any substantial part of its property,
or shall make any general assignment for the benefit
of creditors, or shall fail generally to pay its
debt as they become due, or shall take any
corporate action in furtherance of any of the
foregoing;

then and in each and every such case, unless the principal of this
Bond shall have already become due and payable, this Bond shall,
at the option of and upon written notice to the Corporation by the
Principal Paying Agent on behalf of the Bondholders, mature and
become due and payable upon the date that such written notice is
received by the Corporation unless prior to such date all Events of
Default in respect of all the Bonds shall have been cured.

8.       Liquidation, Sale, Merger or Reorganization

In case of

i)   liquidation, sale or transfer of all or
     substantially all of the assets of the Corporation
     or merger in which the Corporation is not the
     surviving company, unless the succeeding company
     assumes all obligations of the Corporation,

ii)  reorganization of the Corporation involving a
     substantial transfer of its assets, unless in the
     opinion of the Principal Paying Agent such
     reorganization includes adequate protection
     of the Bondholders,

the Principal Paying Agent has the right, but not the
obligation, notwithstanding the provisions of Section 7
heretofore, to declare on behalf of the Bondholders all
outstanding Bonds, plus accrued interest, to be due and
payable in advance at 100% of their Face Amount in Swiss
francs 30 days after receipt of a written notice
addressed to the Corporation by the Principal Paying Agent.

- 23 -

9.    Replacement of Corporation

Should the Corporation wish to be replaced by a non-Swiss
directly or indirectly majority-owned subsidiary company
of the Corporation assuming all obligations of the Corp-
oration hereunder at a later date as the direct debtor of
these Bonds by means other than those permitted by
Section 8 above, the Corporation shall request prior
written approval to such an action from the Principal
Paying Agent on behalf of the Bondholders. Such an
approval shall not be withheld if, in the opinion of the
Principal Paying Agent, the interest of the Bondholders
are satisfactorily protected, also, but not limited to
(i) their tax status and (ii) with respect to their
ability to enforce their rights and take legal action in
the jurisdiction of the new debtor. In the event of such
substitution, all rights and duties pertaining to the
Corporation shall be applicable to the debtor replacing the
Corporation, and all costs in this connection shall be
borne by the Corporation.

10.    Statute of Limitations

By virtue of the Statute of Limitations of present Swiss
law, Coupons shall become barred after a period of
five years and the Bonds after a period of ten years,
calculated from their respective due dates.

11.    Replacement of Bonds,Coupons and Talons

Bonds with Talons, Talon Sheets or Coupon Sheets which
are defaced, mutilated, stolen, lost or destroyed may
be replaced at the head office of the Principal Paying
Agent on payment of such costs as may be incurred in
connection therewith and on such terms as to evidence
and indemnity as the Corporation and the Principal Paying
Agent may require and, in the case of mutilation, upon
surrender of the Bond with Talons, Talon Sheet or
Coupon Sheet.

12.    Listing

The Corporation will use its best endeavors to have the
Bonds listed on the Stock Exchanges of Zurich, Basle,
Geneva, Berne and Lausanne and to maintain such listings
during the whole life of the Bonds.

13.    Notices

All notices to the Bondholders regarding the Bonds shall
be deemed to have been validly given if published in the
Feuille Officielle Suisse du Commerce and in a daily
newspaper in Zurich, Basle, Geneva, Berne and Lausanne.

- 24 -

14. <u>Governing Law and Jurisdiction</u>

The terms, conditions and form of the Bonds, the Coupons
and the Talons, the English version of which shall
prevail, shall be subject to and governed by Swiss law.
Any dispute which might arise between Bondholders on the
one hand and the Corporation on the other hand regarding
the Bonds, the Coupons and/or the Talons shall be
settled in accordance with Swiss law and falls within
the jurisdiction of the Ordinary Courts of the Canton
of Zurich, the place of jurisdiction being Zurich 1, with
the right of appeal to the Swiss Federal Court of Justice
in Lausanne, where the law permits. Only for that pur-
pose and only for the purpose of enforcement in
Switzerland, the Corporation elects legal and special
domicile at the Principal Paying Agent's head office
in Switzerland, which agrees forthwith to notify the
Corporation of any communication received under this
Article.

The above-mentioned jurisdiction is also valid for the
declaration of cancellation of the Bonds with Talons,
Talon Sheets and Coupon Sheets.  The Corporation shall be
discharged by and to the extent of any payment made
to a holder of a Bond, Coupon or Talon recognized as
a creditor by an enforceable judgment of a Swiss court.

The holders of Bonds, Coupons or Talons are also at
liberty to enforce their rights and to bring any
legal action against the Corporation before any com-
petent court of the United States of America, in
which case Swiss law shall be applicable.

15. <u>Judgment Currency</u>

15.1 If a judgment or order is rendered against the Corporation by a
court or a tribunal of any jurisdiction for the payment of
any amount owing to the holder of a Bond or any Coupon thereof
under such Bond or under a judgment or order of a court or
tribunal of any other jurisdiction in respect thereof, any such
judgment or order being expressed in a currency other than
Swiss francs (the "Judgment Currency"), the Corporation shall
indemnify and hold such holder harmless against any loss
arising or resulting from any variation in rates of
exchange as between the Judgment Currency and Swiss francs,
occurring between (i) the date as of which any amount ex-
pressed in Swiss francs is converted, for the purpose of
any such judgment or order, into an equivalent amount in
the Judgment Currency and (ii) the date or dates of dis-
charge of such amount (or part thereof) or of such first
mentioned judgment or order (or part thereof) as appropriate;
provided, however, that if the result of any such variation
in rates of exchange is to give rise to a surplus, the
Corporation shall be entitled thereto.

CM1.041686.2

- 25 -

15.2    This indemnity shall constitute a separate and independent obligation from the other obligations contained herein, shall give rise to a separate and independent cause of action and shall apply irrespective of any indulgence granted by a holder of a Bond or Coupon or by the Principal Paying Agent on behalf of any such holder from time to time and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum or sums in respect of amounts due hereunder or under any such judgment or order. Any such loss or damage aforesaid shall be deemed to constitute a loss suffered by the holder of a Bond or Coupon and no further proof or evidence of any actual loss shall be required by the Corporation.

## III. SYNDICATION

A banking syndicate composed of the following institutions (the "Banking Syndicate") shall be formed in order to offer the Bonds for public subscription in Switzerland:

CREDIT SUISSE
Swiss Volksbank
Bank Leu Ltd.
Members of the Groupement des Banquiers Prives Genevois
A. Sarasin & Cie
Private Bank and Trust Company
Members of the Groupement de Banquiers Prives Zurichois
Swiss Cantonalbanks
Morgan Guaranty (Switzerland) Ltd.
Salomon Brothers Finanz AG
Allgemeine Aagauische Ersparniskasse
Bank Hofmann Ltd
Bankers Trust Ltd
Clariden Bank
Commerzbank (Switzerland) Ltd.
Credit Lyonnais Finanz AG Zurich
Dresdner Bank (Switzerland) Ltd
Lloyds Bank Plc
Mitsui Trust Finance (Switzerland) Ltd.
J. Henry Schroder Bank Ltd.
Sumitomo Trust Finance (Switzerland) Ltd.

- 26 -

CREDIT SUISSE will act on behalf of the Banking Syndicate with regard to the execution and implementation of this Agreement.

The period of public subscription (the "Subscription Period") shall end on May 23, 1986.

## IV. SALES RESTRICTIONS

1.      The Bonds have not been and will not be registered under the Securities Act of 1933, as amended, of the United States of America or the securities laws of any state of the United States.

2.      Credit Suisse represents, for itself and shall require each member of the Banking Syndicate to represent that, during the period of public subscription of the Bonds, it

- has not offered, sold or delivered
- is not purchasing
- will not offer, sell or deliver

directly or indirectly, as principal or as agent, any of the Bonds in the United States or to, or for the account of, any US Person. The definitions of "United States" and "US Person" are set out in footnotes (1) and (2) to the form of Advice Notice set out below.

3.      Credit Suisse also agrees to deliver during the subscription period to each of its purchasers of Bonds acquired by it pursuant to this Agreement a written notice substantially in the following form:

"Advice Notice"

These Bonds have not been and will not be registered under the Securities Act of 1933, as amended, of the United States (the "Act"). The Bonds may not be offered, sold or delivered, directly or indirectly, in the United States (1) or to United States Persons (2). Any offer, sale, or delivery of the Bonds, directly or indirectly, in the United States or to United States Persons may constitute a violation of United States laws unless such offer, sale or delivery is either registered pursuant to, or is exempt from registration under, said Act.

- 27 -

By accepting this allotment you confirm that:

a)    you are not a United States Person;

b)    you have not purchased any of the Bonds
      directly or indirectly for the account of a
      United States Person; and

c)    you have not made and, during the period of public
      subscription, you will not make, directly or
      indirectly, any offers, sales or deliveries of the
      Bonds in the United States or to United States
      Persons.          --

If you are a Bank or a securities dealer you hereby confirm
that you will send an Advice Notice in the form set out
herein to each acceptor of an allotment of the Bonds from you.

Definitions:

(1)    "United States" means the United States of
       America, its territories, its possessions and
       other areas subject to its jurisdiction,
       including the Commonwealth of Puerto Rico.

(2)    "United States Person" means a citizen,
       national or resident of the United States,
       a corporation, partnership or other entity
       created or organized in or under the laws of
       the United States and an estate or trust the
       income of which is subject to United States
       Federal income taxation regardless of its
       source.

4.    Credit Suisse agrees to require the members of the
      Banking Syndicate to agree to the same commitments
      which are made by it in this Article IV for the
      benefit of the Corporation.

5.    The Global Certificate, Bonds and Coupons shall bear a
      statement to the effect that any US Person holding a
      Bond or Coupon will be subject to limitations under
      the United States income tax laws, including the
      limitations provided in Sections 165(j) and 1287 (a) of
      the Internal Revenue Code of 1954, as amended.

- 28 -

## V. COMMISSIONS, TAXES AND EXPENSES

1.  The Corporation shall pay to CREDIT SUISSE

    a)  an underwriting commission of 3% on the aggregate
        Face Amount of the Bonds;

    b)  a management fee of 1/2% on SFr. 100,000,000, 1/4%
        on SFr. 100,000,000 and 1/8% on SFr. 100,000,000;

    c)  out-of-pocket expenses of SFr. 125,000.

2.  In addition, the Corporation shall bear the following taxes
    and charges in relation to the Bond issue:

    a)  On the underwriting of the Bonds:

| | |
|---|---|
| The Swiss Tax on Negotiation of Securities | 0.3 % |
| The Cantonal Tax | 0.01 % |
| The Stock Exchange Contribution | 0.005% |
| Total | 0.315% |

        calculated on the proceeds of the Bonds net of
        underwriting commission, management fee and out-
        of-pocket expenses;

    b)  The expenses incurred for the printing of the
        Bonds, Talons, Coupons, Coupon Sheets, Talon
        Sheets, Replacement Coupon Sheets and Replacement
        Talon Sheets as well as for their delivery to the
        various Swiss destinations;

    c)  The expenses incurred in connection with the
        publication of all notices regarding the Bonds,
        Coupons and Talons;

    d)  The expenses incurred in connection with the
        admission and quotation of the Bonds, during their
        whole life, on the Stock Exchanges of Zurich,
        Basle, Geneva, Berne and Lausanne; and

    e)  The paying agency fees described in Article XI
        of this Agreement.

3.  The Swiss Tax on Negotiation of Securities of 0.3% on
    the placement of the Bonds at the time of the Bond issue
    will be borne by the subscribers to the Bonds.

4.  CREDIT SUISSE shall bear all other issue expenses, such
    as the expenses for the printing of the prospectus as
    well as for announcing the public offering, except any
    costs and fees the Corporation may incur in connection with
    the preparation of the documents described in Article
    VII hereof.

CM1.041686.2

- 29 -

5.  Commissions, expenses and taxes referred to in Sections
    1.a), 1.b), 1.c), and 2.a) under this Article V
    will be deducted from the proceeds of the Bonds, whereas
    the other expenses are payable when ascertainable and
    due.

## VI. PAYMENTS TO THE CORPORATION

1.  On June 25, 1986, CREDIT SUISSE shall pay to the Corporation
    the amount of SFr. 289,086,500.-- (two hundred eighty nine
    million eighty six thousand five hundred Swiss francs)
    being the proceeds of the issue price after deducting the
    commission expenses and taxes referred to in Article V,
    Sections 1.a), 1.b), 1.c), and 2.a) (the "Net Proceeds").

2.  CREDIT SUISSE will effect payment of the Net Proceeds by
    crediting a non-interest bearing Swiss franc account in
    the name of the Corporation and shall be entrusted with any
    foreign exchange transaction related to the disposition
    of the Funds. Upon the deposit of the Net Proceeds to
    the account of the Corporation, the Global Certificate
    shall be released from escrow in accordance with Article
    VII e) hereof.

3.  On the Payment Date, the Net Proceeds shall be at the
    free disposal of the Corporation subject to any prevailing
    Swiss National Bank regulation.

## VII. CONDITIONS

The Corporation undertakes to supply CREDIT SUISSE with information
and documentation required by CREDIT SUISSE for the preparation of
the prospectus relating to this Bond issue.

Such prospectus will contain information regarding the purpose of
the Bond issue and the economic and financial situation of the
Corporation.  The prospectus shall be reviewed by CREDIT SUISSE for
compliance with Swiss law and the rules of the Stock Exchanges on
which the Bonds are to be listed (the "Stock Exchanges") regarding
the issue of public Bonds.

The obligation of CREDIT SUISSE to make payment for the Bonds
pursuant to Article VI of this Agreement is subject to the
condition precedent that CREDIT SUISSE shall have received in
respect of the Bonds on or before the Payment Date the following
documents, each dated on or before the Payment Date and in form
and substance satisfactory to CREDIT SUISSE:

- 30 -

a)  certified copy of the resolution of the Board of
    Directors of the Corporation granting the authorities
    referred to in Article VIII, Section 1.e);

b)  copies of the Certificate of Incorporation and
    By-Laws of the Corporation certified by the
    Secretary or Assistant Secretary of the Corporation;

c)  Certificate of Incumbency with respect to the
    officer(s) and Powers of Attorney conferring the
    necessary authority upon the person(s) signing this
    Agreement and any related document on their behalf
    and certifying the specimen signatures of such
    person(s);

d)  certified copies of the consents and approvals
    referred to in Article VIII, Section 1.d), if
    applicable;

e)  The Global Certificate as per Annex A to be held in
    escrow on behalf of the Corporation by CREDIT SUISSE
    until payment of the Net Proceeds on the Payment
    Date;

f)  Certificate of good standing of the Corporation as of
    a recent date issued by the Superintendent of Banks
    of the State of New York;

g)  legal opinion from legal counsel for the Corporation
    on the law of the United States;

h)  an opinion of the United States Tax Counsel to the
    Corporation with respect to the status of the Bonds
    in respect of United States taxes;

in English or with a certified English translation, together with

i)  specimen signatures for the printing of the Bonds;
    and

j)  ten copies of the prospectus signed by an author-
    ized officer of the Corporation.

## VIII. WARRANTIES

1.      The Corporation represents and warrants as follows:

a)  **Prospectus:**    The information relating to the
    Corporation contained in the prospectus in the English
    language is accurate in all material respects and
    does i) not contain any untrue statement of a
    material fact or ii) omit to state any material
    fact necessary to make the statements contained
    therein not misleading;

- 31 -

b)  **Accounts:**    The financial statements contained
in the prospectus present fairly the results and
financial position of the Corporation for the periods
and as of the dates thereof, all in conformity with
generally accepted accounting principles in the
United States;

c)  **No Material Adverse Change:**    Since December 31,
1985, there has been no material adverse change in
the conditions of the Corporation and its subsidiaries
taken as a whole;

d)  **Consents and Approvals:**   No consents and approvals
of the governmental authorities of the United States
are required for the execution of this Agreement
for the issue of the Bonds and for the performance
of the terms thereof;

e)  **Authorization:**    The execution of this Agreement,
the issue of the Bonds and the performance of the
obligations assumed thereunder have been duly
authorized by the Corporation;

f)  **No Default:**    There exists no event of default and
no event or act has occurred which, with the giving
of notice or the lapse of time or both, would
constitute an event of default under Article II,
Section 7 of this Agreement; and

g)  **Litigation:**    Except as set forth or contemplated
in the Prospectus, there are no actions, suits or
proceedings pending or threatened against or
affecting the Corporation or any of its subsidiaries
before any court, administrative officer, agency or
authority which either individually or collecti-
vely are material in the context of the issue and
sale of the Bonds or the making and performance
of this Agreement; and

h)  **Obligations Binding; Non-Violations of Laws etc:**
This Agreement constitutes, and the Bonds when duly
executed and delivered will constitute, a valid and
binding obligation of the Corporation and is within the
power of the Corporation and the execution and delivery of
this Agreement and the performance of its terms by the
Corporation will not violate any laws or regulations of any
governmental or regulatory body of the United States of
America currently in effect and are not contrary to the
Certificate of Incorporation of the Corporation and will
not result in any breach of the terms of, or constitute
a default under, any deed, agreement, mortgage or other
instrument to which the Corporation is a party or by which
its property is bound or for which the Corporation is a
guarantor.

CM1.041686.2

- 32 -

2.      The commitment of CREDIT SUISSE and the Banking
Syndicate to subscribe to the Bonds is being made on
the basis of the aforesaid warranties.  The Corporation
hereby undertakes with CREDIT SUISSE and the Banking
Syndicate that it will indemnify CREDIT SUISSE and each
member of the Banking Syndicate against all losses,
liabilities, costs, charges and expenses, which it may
incur as a result of or in relation to any material
breach of said warranties by the Corporation, provided that
the Corporation shall be given prompt notice of any claim,
action or proceeding which might give rise to an
obligation  under this Article VIII, Section 2. and
shall be entitled to assume the defense and/or settle-
ment of such claim, action or proceeding.

## IX. LISTING AND COVENANTS

1.1 The Corporation has authorized CREDIT SUISSE to apply on
its behalf for the listing of the Bonds on the Stock
Exchanges mentioned in Article II, Section 12 of this
Agreement.  In connection with such application, the
Corporation agrees to furnish to CREDIT SUISSE all neces-
sary documents and information.

1.2 So long as any of the Bonds are outstanding, the Corporation
shall:

    a)  comply with rules and regulations of such Stock
        Exchanges;

    b)  pay the periodic listing fees and expenses;

    c)  send one copy of each annual report or other
        documents required to:

        1. Kantonales Boersenkommissariat
          Bleicherweg 5
          CH-8001  Zurich/Switzerland

        2. Effektenboersenverein Zuerich
          Bleicherweg 5
          CH-8001 Zurich/Switzerland

        3. Vorstand der Boersenkammer
          des Kantons Basel-Stadt
          Sekretariat
          Freie Strasse 3
          CH-4002 Basle/Switzerland

4. Comite de la Bourse de Lausanne
   Secretaire administratif
   Banque Cantonale Vaudoise
   CH-1002 Lausanne/Switzerland

5. Chambre de la Bourse de Geneve
   Case postale 228
   CH-1211 Geneva 11/Switzerland

6. Berner Boersenverein
   Aarbergergasse 30
   CH-3011 Bern/Switzerland

d) send sufficient copies of its annual report in-
   cluding its annual balance sheet and profit and
   loss account (consolidated) together with a copy of
   the report of the independent auditors, to CREDIT
   SUISSE not later than 120 days after the end of
   the Corporation's fiscal year;

e) send to CREDIT SUISSE as soon as available any
   financial or other information distributed to the
   shareholders of the Corporation which is made public in
   the United States; and

f) give notice in writing to CREDIT SUISSE of any
   event of default under Article II, Section 7 hereof
   forthwith upon becoming aware thereof and without
   waiting for CREDIT SUISSE to take any of the
   actions mentioned herein.

## X.  PRINTING OF THE BONDS

1. The Corporation irrevocably authorizes and directs CREDIT
   SUISSE to provide on the Corporation's behalf and at the
   costs of the Corporation, in due course, for the printing
   and delivery of the Bonds, Coupons, Talons, Coupon Sheets,
   Talon Sheets as well as of the replacement of Coupon Sheets
   and Talon Sheets as provided in the Terms of the Bonds.
   The Bonds shall be printed in English in accordance with
   the rules and regulations of the Association of Swiss
   Stock Exchanges, shall be dated June 25, 1986, and
   shall bear the facsimile signatures deposited with
   CREDIT SUISSE in accordance with Article VII (i) hereof.
   The Bonds, Coupons and Talons, shall be substantially in
   the form of Annex B, Annex C and Annex D respectively hereto.

2. The Corporation shall issue a Global Certificate for the
   aggregate principal amount of the Bonds (the "Global
   Certificate"), substantially in the form of Annex A
   hereto, and deliver it to CREDIT SUISSE as provided in
   Article VII e). CREDIT SUISSE will hold the Global
   Certificate on behalf of the Bondholders until delivery
   of the Bonds which shall take place not earlier than

- 34 -

August 25, 1986. On or after August 25, 1986, upon receipt
of the Bonds, CREDIT SUISSE shall surrender the Global
Certificate to the Corporation and deliver the definitive
Bonds to the persons entitled thereto. Until August 25,
1986, no Bonds shall be delivered in definitive form.

### XI.  PAYING AGENCY

1. The Corporation hereby appoints CREDIT SUISSE as its
   initial Principal Paying Agent and the other banks of
   the Banking Syndicate mentioned in Article II, section
   4.2 as paying agents (the "Paying Agents", which
   expression shall also include CREDIT SUISSE).

2. The Corporation undertakes to transfer to the Principal
   Paying Agent at its head office in Switzerland, not
   later than one (1) Business Day prior to each date when
   any payments become due under the Bonds (a "Due Date")
   the funds required for the payment of principal of,
   premium (if any) and interest on the Bonds plus the
   following paying agency fees:

   0.75% on the amount of Coupons paid, payable in US$,
        and
   0.30% on the amount of the Bonds payable in Swiss francs

   net of any costs, transfer taxes or other charges.
   Payment from the Corporation to the Principal Paying Agent
   shall be made to such accounts of the Principal Paying
   Agent as will be indicated by the Principal Paying Agent
   by telex or in writing, such advice to be received by
   the Corporation not less than 5 (five) Business Days prior
   to each Due Date.

3. In case foreign exchange operations are involved in
   connection with the transfer of funds for the payment
   of interest or principal including premium (if any),
   with respect to the Bonds, the Corporation shall request
   an offer from CREDIT SUISSE, Zurich. The Corporation shall
   make use of such an offer, provided the rate is compe-
   titive and agreeable to the Corporation.

4. The Principal Paying Agent shall credit the funds
   received to separate US$ and/or SFr. non-interest-bearing
   accounts. The receipt by the Principal Paying Agent of
   the due and punctual payment of the funds shall release
   the Corporation from its obligations under the Global
   Certificate or the definitive Bonds for the interest,
   principal premium (if any), or any additional amounts
   under Section 5.2 of the Terms of the Bonds and, for the
   paying agency fees to the extent of such payment.  The
   risk of any transfer shall be borne by the Corporation.

- 35 -

Unclaimed funds shall be credited to the Corporation after
the respective Statute of Limitation periods.  The risk
of any transfer with respect to the unclaimed funds,
including the risk of exchange, shall be borne by the
Corporation.

5.   The Principal Paying Agent shall convert any sums
deducted in Swiss francs in respect of missing unmatured
Coupons persuant to Section 3.4 and Section 5 of the
Terms of the Bonds, in case of redemption of the Bonds,
into U.S. dollars at the then applicable exchange rate
and hold the corresponding U.S. dollar amounts in a non-
interest-bearing U.S. dollar account. The account shall
be mutatis mutandis, subject to the conditions stated on
the preceding Section 4.

6.   The Principal Paying Agent shall cancel Bonds, Coupons
and Talons redeemed, paid or exchanged, destroy them or
have them destroyed whenever it deems it to be expedient,
and submit to the Corporation from time to time or upon its
request a list of Bonds, Coupons or Talons destroyed
(together with the serial numbers of Bonds).  All expenses
in connection with the cancellation and destruction shall be
borne by the Corporation.

The Principal Paying Agent reserves the right to record
cashed Coupons and exchanged Talons as well as redeemed
Bonds on video tape or other data carriers.

7.   The Corporation shall not appoint, except as provided in
Article II Section 4.3, paying agents in addition
to those listed in Article II, Section 4, or pay any
agency commissions to such other banks.  On the other
hand, the Principal Paying Agent may, at its discretion,
appoint other subagents for the payment of principal of,
premium (if any) and interest on the Bonds.

8.   The Corporation shall indemnify the Paying Agents against any
loss, liability, cost, claim, action, demand or expense
incurred or made against them, other than those based
upon or arising out of the negligence or wilful miscon-
duct on the part of any of the Paying Agents or any of
their employees or agents, in connection with their
acting as Paying Agents, or their exercising or refrain-
ing from exercising any of the rights and obligations
conferred upon them as Paying Agents, under the terms of
this Agreement.

9.   As soon as possible after having received notice from
Bondholders of the exercice of their option to cause the
Corporation to redeem Bonds pursuant to Section 3.3 of the
Terms of the Bonds, and in any event no later than the
close of business in New York on the Redemption Exchange
Rate Determination Date, the Principal Paying Agent
shall notify the Corporation of such notice and the
aggregate Face Amount of the Bonds to be so redeemed.

- 36 -

## XII. RIGHT OF TERMINATION

CREDIT SUISSE reserves the right to withdraw from this Agreement
at any time prior to the Payment Date:

a)        if there shall have been any material adverse change
          affecting the business or properties of the Corporation and
          its subsidiaries taken as a whole, or if events should
          hereafter occur in the United States of America, in
          Switzerland or elsewhere in the world of a political,
          economic or monetary character, any of which, in the
          opinion of CREDIT SUISSE, would be such as to materially
          jeopardize the success of the public issue of the Bonds,
          or

b)        if the Corporation fails to perform any of its obligations
          under this Agreement in any material respect, or

c)        if any of the representations and warranties made by the
          Corporation in the Agreement or of the Corporation should
          prove to have been incorrect in any material respect
          when made.

Any such decision of withdrawal by CREDIT SUISSE shall be final
and binding upon the Corporation. Should CREDIT SUISSE decide to
withdraw from this Agreement, it shall notify the Corporation forth-
with by telex, followed by registered letter.  In the event of
such withdrawal, each party hereto shall pay the expenses incurred
by it in connection with this Bond issue.

## XIII.  COMMUNICATIONS

All communications to the Corporation regarding the Bond issue shall
be transmitted by CREDIT SUISSE by telex or cable confirmed in
writing to:

General Motors Corporation
767 Fifth Avenue
New York, New York  10153
Attention:  The Treasurer
Telex No. 126 955 GM Treasury NY

All communications to CREDIT SUISSE, individually and as represen-
tative of the Banking Syndicate, regarding the Bond issue shall be
transmitted by the Corporation by telex or cable to and received by:

CREDIT SUISSE
Department S2
P.O. Box 590
CH-8021 Zurich, Switzerland
Telex No. 813512

CM1.041686.2

- 37 -

## XIV.  PROVISO

This Agreement is subject to the approval of the Bond issue by the Swiss National Bank and the Swiss Federal Authorities in Berne.

CREDIT SUISSE undertakes to use its best endeavors to obtain without delay the approvals refered to in this Article XIV.

## XV.  GOVERNING LAW AND JURISDICTION

The terms of this Agreement, its construction and interpretation shall be governed by Swiss law.  Any dispute which might arise between CREDIT SUISSE, the members of the Banking Syndicate or the Bondholders on the one hand and the Corporation on the other hand regarding this Agreement shall fall within the jurisdiction of the Ordinary Courts of the Canton of Zurich, the place of jurisdiction being Zurich 1, with the right of appeal to the Swiss Federal Court of Justice in Lausanne, where the law permits.

For that purpose and only for the purpose of execution in Switzerland, the Corporation elects legal and special domicile at CREDIT SUISSE, Zurich, which shall forthwith notify the Corporation of any communication received under this Article.

CREDIT SUISSE, the members of the Banking Syndicate and the Bondholders shall also be at liberty to enforce their rights and to take legal action before the competent Courts of the United States in which case Swiss law shall be applicable with respect to the construction and interpretation of this Agreement.

THUS DONE AND SIGNED in two originals

in New York on May 28, 1986

General Motors Corporation

_____

Title:   _____

CREDIT SUISSE

_____

_____

CM1.041686.2

G L O B A L   C E R T I F I C A T E

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE
UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE
OFFERED OR SOLD, DIRECTLY OR INDIRECTLY, IN THE UNITED STATES OF
AMERICA, ITS TERRITORIES, ITS POSSESSIONS OR OTHER AREAS SUBJECT
TO ITS JURISDICTION, INCLUDING THE COMMONWEALTH OF PUERTO RICO
("UNITED STATES"), OR TO OR FOR THE ACCOUNT OF ANY CITIZEN,
NATIONAL OR RESIDENT THEREOF, A CORPORATION, PARTNERSHIP OR OTHER
ENTITY CREATED OR ORGANIZED IN OR UNDER THE LAWS OF THE UNITED
STATES OR AN ESTATE OR TRUST THE INCOME OF WHICH IS SUBJECT TO
UNITED STATES FEDERAL INCOME TAXATION REGARDLESS OF ITS SOURCE.

This Global Certificate is issued in accordance with the Bond
Purchase and Paying Agency Agreement between General Motors
Corporation on one part and Credit Suisse on the other part dated
as of May 28, 1986 (the "Agreement").

General Motors Corporation promises to pay to CREDIT SUISSE,
Zurich ("CREDIT SUISSE") on behalf of the persons entitled to own
Bonds, Coupons and Talons the amount of three hundred million
Swiss francs (SFr. 300,000,000) and interest in U.S. dollars at
the rate as determined in accordance with the Terms of the Bonds
and the Agreement.

THIS GLOBAL CERTIFICATE is subject to Swiss Law and issued in
accordance with the Terms of the Bonds and the Agreement, without
Coupons for interest and is exchangeable against Bonds in
accordance with Article X, Section 2. of Agreement.   Until so
exchanged CREDIT SUISSE holds this Global Certificate on behalf
of the persons entitled to hold Bonds, Coupons and Talons.

This Global Certificate shall be exchanged as soon as the Bonds
are printed.

as of June 25, 1986

                    General Motors Corporation


          _____


CM1.041686.2

Annex B

(Front of the Bonds)

(English version)

GENERAL MOTORS CORPORATION
New York, New York, United States of America
Bonds 1986 ff.
of Swiss francs 300,000,000
principal amount

---

GENERAL MOTORS CORPORATION promises to pay to the holder
of this Bond the amount of Swiss francs 5,000.-- (five thousand
Swiss francs) plus premium (if any) and interest as determined in
accordance with the Terms of the Bonds printed on the back
hereof.

June 25, 1986                        .....................

---

(German version)

GENERAL MOTORS CORPORATION
New York, New York, Vereinigte Staaten von Amerika
Anleihe 1986 ff.
von Schweizerfranken 300'000'000 nominal

---

GENERAL MOTORS CORPORATION verpflichtet sich dem Inhaber
dieser Obligation den Betrag von Schweizerfranken 100'000.--
(Schweizerfranken einhunderttausend) zuzueglich allfaelliger
Praemie und Zins gemaess umstehend abgedruckten Bestimmungen, zu
zahlen.

25. Juni 1986

---

"This Bond has not been and will not be registered under the
United States Securities Act of 1933 and may at no time be
converted into a registered Bond. Any United States person
who holds this Bond will be subject to limitations under the
United States income tax laws, including the limitations
provided in Sections 165 (j) and 1287 (a) of the United States
Internal Revenue Code."

CM1.041686.2

<u>Annex C (1)</u>

<u>Coupon front page</u>

Any United States person who holds this Coupon will be subject to
limitations under the United States income tax laws, including
the limitations provided in Sections 165 (j) and 1287 (a) of the
United States Internal Revenue Code.

GENERAL MOTORS CORPORATION          (German version)
Anleihe 1986 ff.                                     No.
OBLIGATION von SFr. 5,000.--
Jahreszins faellig am 25.Juni 1987          U.S.$ 188.83
GENERAL MOTORS CORPORATION          (English version)
Bonds 1986 ff.                                       No.
BOND of SFr. 100,000.--
Annual interest due on June 25, 1987        U.S.$ 3,776.64

CM1.041686.2

Annex C (2)

## Coupon reverse side

Dieser Coupon ist zahlbar bei saemtlichen schweizerischen
Geschaeftsstellen folgender Banken:

(German version)

SCHWEIZERISCHE KREDITANSTALT
SCHWEIZERISCHE VOLKSBANK
BANK LEU AG
VEREINIGUNG DER GENFER PRIVATBANKIERS
A. SARASIN & CIE
PRIVATBANK & VERWALTUNGSGESELLSCHAFT
GRUPPE ZUERCHER PRIVATBANKIERS
SCHWEIZERISCHE KANTONALBANKEN
MORGAN GUARANTY TRUST COMPANY OF NEW YORK, ZURICH BRANCH
ALLGEMEINE AARGAUISCHE ERSPARNISKASSE
BANK HOFMANN AG
BANKERS TRUST AG
CLARIDEN BANK
COMMERZBANK (SCHWEIZ) AG
CREDIT LYONNAIS
DRESDNER BANK (SCHWEIZ) AG
LLOYDS BANK PLC
J. HENRY SCHRODER BANK AG


This Coupon is payable at all offices in Switzerland of:

(English version)

CREDIT SUISSE
SWISS VOLKSBANK
BANK LEU LTD.
MEMBERS OF THE GROUPEMENT DES BANQUIERS PRIVES GENEVOIS
A. SARASIN & CIE
PRIVATE BANK AND TRUST COMPANY
MEMBERS OF THE GROUPEMENT DE BANQUIERS PRIVES ZURICHOIS
SWISS CANTONALBANKS
MORGAN GUARANTY TRUST COMPANY OF NEW YORK, ZURICH BRANCH
ALLGEMEINE AARGAUISCHE ERSPARNISKASSE
BANK HOFMANN LTD
BANKERS TRUST LTD
CLARIDEN BANK
COMMERZBANK (SWITZERLAND) LTD.
CREDIT LYONNAIS
DRESDNER BANK (SWITZERLAND) LTD
LLOYDS BANK PLC
J. HENRY SCHRODER BANK LTD.

CM1.041686.2

<u>Annex D (1.1)</u>

<u>Talon front page</u>

Any United States person who holds this Talon will be subject to
limitations under the United States income tax laws, including
the limitations provided in Sections 165 (j) and 1287 (a) of the
United States Internal Revenue Code.


GENERAL MOTORS CORPORATION    (German version)
Anleihe 1986 ff.                            No.
OBLIGATION von SFr. 5,000.--
Talon faellig am 25. Juni 1996


Der Inhaber dieses Talons erhaelt von General Motors Corporation
(der "Gesellschaft"), auf Kosten der Gesellschaft gemaess
Abschnitt 2.1.3 und 4.2 der Anleihensbedingungen, gegen
Vorweisung der entsprechenden Obligation zusammen mit diesem
Talon und gegen Annullierung oder Aushaendigung dieses Talons an
den Schaltern von saemtlichen Zahlstellen in der Schweiz einen
neuen Couponbogen mit Coupons fuer die in den naechstfolgenden 10
Jahren faelligen Zinszahlungen der entsprechenden Obligation.


GENERAL MOTORS CORPORATION    (English version)
Bonds 1986 ff.                              No.
BOND of SFr. 100,000.--
Talon due on June 25, 1996


The bearer of this Talon is entitled to receive, in due course,
from General Motors Corporation (the "Corporation") at the
cost of the Corporation, pursuant to Sections 2.1.3 and 4.2 of the
Terms of the Bonds, against presentation of the respective Bond
together with this Talon and upon cancellation or surrender of this
Talon at the offices of the Paying Agents in Switzerland a
Replacement Coupon Sheet with Coupons for the interest payments
due in respect of the Bonds for the next succeeding 10 years.
Talons which are presented without the corresponding Bond will
not confer to the holder of such Bond any right to receive a new
Coupon Sheet or new Talon Sheet.


CM1.041686.2

<u>Annex D (1.2)</u>

<u>Talon front page</u> (for last Talon of each Talon Sheet)

Any United States person who holds this Talon will be subject to
limitations under the United States income tax laws, including
the limitations provided in Sections 165 (j) and 1287 (a) of the
United States Internal Revenue Code.


GENERAL MOTORS CORPORATION    (German version)
Anleihe 1986 ff.                        No.
OBLIGATION von SFr. 5,000.--
Talon faellig am 25.Juni 2086

Der Inhaber dieses Talons erhaelt von General Motors Corporation
(der "Gesellschaft"), auf Kosten der Gesellschaft gemaess Abschnitt
2.1.3 und 4.2 der Anleihensbedingungen, gegen Vorweisung der
entsprechenden Obligation zusammen mit diesem Talon und gegen
Annullierung oder Aushaendigung dieses Talons an den Schaltern
von saemtlichen Zahlstellen in der Schweiz einen neuen Talonbogen
mit weiteren zehn Talons, sowie einen neuen Couponbogen mit
Coupons fuer die in den naechstfolgenden 10 Jahren faelligen
Zinszahlungen der entsprechenden Obligation.


GENERAL MOTORS CORPORATION        (English version)
Bonds 1986 ff.                          No.
BOND of SFr. 100,000.--
Talon due on June 25, 2086

The bearer of this Talon is entitled to receive, in due course,
from General Motors Corporation (the "Corporation"), at the
cost of the Corporation, pursuant to Sections 2.1.3 and 4.2 of the
Terms of the Bonds, against presentation of the respective Bond
together with this Talon and upon cancellation or surrender of
this Talon at the offices of the Paying Agents in Switzerland,
a Replacement Talon Sheet with ten additional Talons, as well as
a Replacement Coupon Sheet with Coupons for the interest payments
due in respect of the Bonds for the next succeeding 10 years.
Talons which are presented without the corresponding Bond will
not confer to the holder of such Bond any right to receive a new
Coupon Sheet or a new Talon Sheet.

CM1.041686.2

Annex D (2)

## Talon reverse side

Dieser Talon muss ausgehaendigt werden bei saemtlichen
schweizerischen Geschaeftsstellen folgender Banken:

(German version)

SCHWEIZERISCHE KREDITANSTALT
SCHWEIZERISCHE VOLKSBANK
BANK LEU AG
VEREINIGUNG DER GENFER PRIVATBANKIERS
A. SARASIN & CIE
PRIVATBANK & VERWALTUNGSGESELLSCHAFT
GRUPPE ZUERCHER PRIVATBANKIERS
SCHWEIZERISCHE KANTONALBANKEN
MORGAN GUARANTY TRUST COMPANY OF NEW YORK, ZURICH BRANCH
ALLGEMEINE AARGAUISCHE ERSPARNISKASSE
BANK HOFMANN AG
BANKERS TRUST AG
CLARIDEN BANK
COMMERZBANK (SCHWEIZ) AG
CREDIT LYONNAIS
DRESDNER BANK (SCHWEIZ) AG
LLOYDS BANK PLC
J. HENRY SCHRODER BANK AG


This Talon has to be surrendered at all offices in Switzerland
of:

(English Version)

CREDIT SUISSE
SWISS VOLKSBANK
BANK LEU LTD.
MEMBERS OF THE GROUPEMENT DES BANQUIERS PRIVES GENEVOIS
A. SARASIN & CIE
PRIVATE BANK AND TRUST COMPANY
MEMBERS OF THE GROUPEMENT DE BANQUIERS PRIVES ZURICHOIS
SWISS CANTONALBANKS
MORGAN GUARANTY TRUST COMPANY OF NEW YORK, ZURICH BRANCH
ALLGEMEINE AARGAUISCHE ERSPARNISKASSE
BANK HOFMANN LTD
BANKERS TRUST LTD
CLARIDEN BANK
COMMERZBANK (SWITZERLAND) LTD.
CREDIT LYONNAIS
DRESDNER BANK (SWITZERLAND) LTD
LLOYDS BANK PLC
J. HENRY SCHRODER BANK LTD.