# **Bernstein 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>STATE OF INDIANA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 83-1419 C |
| v. | ) | |
| | ) | |
| ENVIRONMENTAL CONSERVATION AND<br>CHEMICAL CORPORATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

CONSENT DECREE

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | BACKGROUND ...................................... | 1 |
| II. | JURISDICTION .................................... | 7 |
| III. | PARTIES BOUND ................................... | 7 |
| IV. | DEFINITIONS ..................................... | 8 |
| V. | GENERAL PROVISIONS .............................. | 11 |
| VI. | THE WORK......................................... | 15 |
| VII. | ADDITIONAL WORK ................................. | 18 |
| VIII. | EPA PERIODIC REVIEW TO ASSURE PROTECTION OF HUMAN HEALTH AND ENVIRONMENT ............. | 19 |
| IX. | QUALITY ASSURANCE ............................... | 19 |
| X. | FACILITY ACCESS, SAMPLING, DOCUMENT AVAILABILITY ................................. | 21 |
| XI. | REMEDIAL PROJECT MANAGER/PROJECT COORDINATORS .................................. | 22 |
| XII. | REPORTING REQUIREMENTS .......................... | 23 |
| XIII. | FORCE MAJEURE ................................... | 25 |
| XIV. | DISPUTE RESOLUTION .............................. | 27 |
| XV. | RETENTION AND AVAILABILITY OF INFORMATION ..... | 29 |
| XVI. | REIMBURSEMENT ................................... | 33 |
| XVII. | STIPULATED PENALTIES ............................ | 35 |
| XVIII. | COVENANT NOT TO SUE SETTLING DEFENDANTS ....... | 42 |
| XIX. | SPECIAL PROVISIONS FOR PREMIUM SETTLING DEFENDANTS AND SETTLING GOVERNMENT AGENCIES ................................... | 45 |

- i -

TABLE OF CONTENTS (cont'd.)

Page

XX.      INDEMNIFICATION; OTHER CLAIMS ................   48
XXI.     FINANCIAL RESPONSIBILITY ......................   49
XXII.    NOTICES .......................................   49
XXIII.   CONSISTENCY WITH NATIONAL CONTINGENCY PLAN ....   50
XXIV.    RESPONSE AUTHORITY ............................   51
XXV.     COMMUNITY RELATIONS ...........................   51
XXVI.    EFFECTIVE AND TERMINATION DATES ...............   51
XXVII.   NON-ADMISSIONS ................................   53
XXVIII.  RESERVATION OF RIGHTS .........................   53
XXIX.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION ..   53

I.

BACKGROUND

1.  Pursuant to Section 105 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C., § 9605, the United States Environmental Protection Agency ("EPA" or "the Agency") placed the Environmental Conservation and Chemical Corporation site (the "Site", "ECC", or the "Facility") on the National Priorities List, 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register.  See, 48 Fed. Reg. 40670 (September 8, 1983).

2.  On November 9, 1983, this Court approved a consent decree (the "1983 Decree") between the EPA, the State of Indiana, certain local governmental agencies and approximately two hundred fifty Potentially Responsible Parties ("PRPs") which provided for the funding by the PRPs of a trust to pay for the cleanup of, among other things, drums, containers and a sludge lagoon, and for the removal of certain contaminated soil at the ECC Site.  The trust was funded in accordance with the 1983 Decree and the work required thereunder was completed in November 1984.  The 1983 Decree approved a remedy that focused on the need for immediate action and did not finally address ground water issues at the ECC Site or soils below four feet.  The purpose of the present Decree is to resolve remaining environmental issues caused by the ECC Site.

3.  In response to a release or a substantial threat of a release of a hazardous substance at or from the ECC Site, the EPA

1

commenced a Remedial Investigation and Feasibility Study ("RIFS")
for the Facility pursuant to 40 C.F.R. § 300.68. EPA completed its
Remedial Investigation ("RI") Report in March 1986 and the
Feasibility Study ("FS") in December 1986. EPA also prepared a
Combined Alternative Analysis ("CAA") setting forth one combined
remedy for ECC and the adjacent Northside Sanitary Landfill
("Northside Landfill" or "NSL"), a separate site located east of
ECC.

4.    In December 1986 and pursuant to Section 117 of CERCLA,
42 U.S.C. § 9617, EPA published notice of the completion of the
RIFS and the CAA. EPA provided opportunity for public comment to
be submitted in writing by February 28, 1987, or orally at a public
meeting held in Zionsville, Indiana on December 17, 1986. Many
PRPs, including Settling Defendants hereunder, provided EPA with
oral and written comments on the proposed remedy before the
February 1987 deadline. Pursuant to Section 117 of CERCLA, 42
U.S.C. § 9617, EPA has kept a record of these comments and a
transcript of the public meeting and has made these documents
available to the public as part of the administrative record
located at EPA, Region V, 230 South Dearborn Street, Chicago,
Illinois 60604 and at the Zionsville Town Hall, 110 South 4th
Street, Zionsville, Indiana 46077.

5.    In January 1987 and pursuant to Section 122 of CERCLA,
42 U.S.C. § 9622, EPA notified certain parties that it had
determined each party to be a PRP regarding the proposed remedial
action at the Facility.

2

6.   In accordance with Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Indiana on February 6, 1987, of negotiations with PRPs regarding the scope of the remedial design and remedial action for the Facility, and the State has participated in such negotiations and is a party to this Decree.

7.   Pursuant to Section 122(j) of CERCLA, 42 U.S.C. § 9622(j), EPA notified the Federal Natural Resources Trustee of negotiations with the PRPs on the subject of addressing the release or threatened release of hazardous substances at the Facility.

8.   From February through September 1987, many PRPs provided EPA with additional technical data and analysis related to EPA's proposed remedy.  This information has also been made a part of the Administrative Record in this proceeding.

9.   After considering the Administrative Record, EPA reached a decision on its selected remedy which was embodied in a document called a Record of Decision ("ROD"), signed by the Regional Administrator on September 25, 1987.  The State concurred in EPA's ROD remedy.  The ROD includes a discussion of EPA's reasons for the final remedy and for any significant changes from the proposed remedy contained in the CAA, and selected a combined remedy for ECC and NSL.

10.   Pursuant to Section 117(b) of CERCLA, 42 U.S.C. § 9617(b), EPA provided public notice of the adoption of the ROD, as modified in response to public comments, including notice of the ROD's availability to the public for review in the same locations

3

as the administrative record referred to above.    Pursuant to
Section 117(d) of CERCLA, 42 U.S.C. § 9617(d), the notice was
published in a major local newspaper of general circulation and
included an explanation of any significant changes and reasons for
such changes from the proposed remedy contained in the CAA.

11.    Following issuance of the September 1987 ROD, EPA and the
State (collectively, "the government") and the PRPs continued their
technical discussions which then led to negotiations that have
resulted in the settlement embodied in this Decree.    A principal
aspect of that settlement, as incorporated into Exhibit A to this
Decree (which sets forth the Work to be performed hereunder),
provides that a separate remedy will be implemented for ECC.    The
government believes that separate, complementary remedies for ECC
and NSL will meet all of the environmental objectives of the ROD
and will facilitate settlement.    This conclusion is based upon the
government's review of Exhibit A, and on the facts that PRPs at
Northside and ECC are not the same, that Northside and ECC were two
distinct types of operations susceptible to different remedies,
that it is in the public interest to facilitate remediation of both
sites by PRPs, and that such private party remediation would be
facilitated by separate consent decrees and separate remedies for
each site.

12.    Another important aspect of the Work approved hereunder
involves the use of soil vapor extraction technology to remove and
destroy contaminants at ECC.    During the period May through July
1988, Settling Defendants (as defined herein), at their own

4

expense, conducted a pilot test program of this innovative technology which demonstrated the ability to remove and destroy volatile organic contamination more rapidly than the remedy originally selected in the ROD. The separation of remedies for ECC and NSL, the use of soil vapor extraction, and other important refinements to the ECC remedy selected in the ROD, are reflected in Exhibit A hereto.

13.   EPA and the State have reviewed Exhibit A and EPA, with the concurrence of the State, believes, subject to public comment, that Exhibit A and the supplemented administrative record support amending the ROD to correspond with Exhibit A. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA will provide public notice of this Consent Decree, the remedial action to be implemented as a result of it, and the proposed amended ROD submitted herewith in the same locations as the administrative record referred to above. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, the notice will be published in a major local newspaper of general circulation and will include an explanation of any significant changes and the reasons for such changes from the remedy selected in the September 1987 ROD.

14.   This Decree, including Exhibit A hereto, will be subject to public comment pursuant to CERCLA.

15.   If after public comment, EPA adopts an amended ROD which differs materially from the proposed amended ROD, EPA shall so notify the Settling Defendants in writing prior to moving the Court to enter the Decree. The Settling Defendants shall then have the

right, for 30 days from receipt of such notice, to withdraw without prejudice from this Decree, in which case this Decree shall be without any force and effect for any purpose as to Settling Defendants.   Settling Defendants may withdraw from this Decree under the provisions of this Paragraph by filing a notice with the Court that sets forth Settling Defendants' decision to withdraw. If Settling Defendants withdraw from the Decree pursuant to this Paragraph, such withdrawal shall not affect the obligations or rights of any Premium Settling Defendant or any Settling Government Agency under this Decree.   In the event of such withdrawal by Settling Defendants, all monies to be paid by such Premium Settling Defendants and Settling Government Agencies pursuant to Section V of this Decree shall be deposited into the Hazardous Substances Superfund and shall be applied in the manner provided in Section V.B.2.b below.  The Parties agree and intend that this Decree shall not be entered by the Court until a motion is made to enter the Decree after the amended ROD is adopted in final form.

16.  The United States, the State, and the defendant signatories to this Decree (the "Settling Defendants") (collectively, "the Parties") believe that this Decree, including the remedial work described in Exhibit A:   (1) is in accordance with Section 121 of CERCLA, 42 U.S.C. § 9621; (2) is consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300; (3) will attain a degree of cleanup of hazardous substances, pollutants and contaminants which, at a minimum, assures protection of human health and the environment; and (4) will provide a level

6

or standard of control for such hazardous substances, pollutants, or contaminants which at least attains legally applicable or relevant and appropriate standards, requirements, criteria, or limitations in accordance with Section 121 of CERCLA, 42 U.S.C. § 9621(d)(2).    EPA, with the concurrence of the State, has also determined that the Work required under the Consent Decree will be performed properly by Settling Defendants.    The Parties recognize and intend to further hereby the public interest in expediting the remedy at the Facility and, at the same time, avoiding prolonged and complicated litigation between the Parties.

NOW, THEREFORE, it is hereby Ordered, Adjudged and Decreed:

## II.

### JURISDICTION

For the limited purpose of entering, implementing and enforcing this Decree, this Court has jurisdiction over the subject matter herein, and over the Parties consenting hereto.    The Parties shall not challenge this Court's jurisdiction to enter and enforce this Decree.

## III.

### PARTIES BOUND

This Decree applies to and is binding upon the undersigned Parties and their successors and assigns.    The undersigned representative of each party to this Decree certifies that he or she is fully authorized by the party or parties whom she or he represents to enter into the terms and conditions of the Decree and to execute and legally bind that party to it.    Settling Defendants

7

shall provide a copy of this Decree to any Contractor hired to perform the Work or Additional Work required hereunder and shall require any such Contractor to comply with the applicable terms of this Decree, including Exhibit A.

IV.

<u>DEFINITIONS</u>

Whenever the following terms are used in this Consent Decree and the Exhibits attached hereto, the following definitions specified in this Paragraph shall apply:

A.    "Additional Work" means the design, construction and implementation at the ECC site of remedial action which may be required pursuant to Section VII below, and which may include the "contingent additional work" described in Section 3.3 of Exhibit A, including collection and treatment of ground water.

B.    "Cleanup Standards" means (1) the cleanup standards set forth in Table 3-1 of Exhibit A, compliance with which shall be determined in accordance with Exhibit A including, without limitation, the footnotes to Table 3-1 and Sections 4.2 and 4.3; and (2) the Performance Standards for the RCRA-compliant cover as specified in Section 2.1.2 of Exhibit A.

C.    "Consent Decree" or "Decree" means this Decree and all Exhibits hereto, which Exhibits are specifically incorporated by reference herein and made an enforceable part hereof.

D.    "Contractor" means the company or companies (including any subcontractors) retained by or on behalf of Settling Defendants to prepare the construction plans and specifications necessary to

8

accomplish the Work or to undertake and complete the Work required by this Decree.

E.    "Premium Settling Defendants" means those parties listed in Attachment 1 to Exhibit D to this Decree who pay money as required by the ECC 468B Trust Fund pursuant to Section V.B.2. Premium Settling Defendants were also parties to the 1983 Decree.

F.    "Settling Government Agencies" means (1) the United States Postal Service and the United States Navy listed in Attachment 2 to Exhibit D to this Decree who pay money to the ECC 468B Trust Fund pursuant to Section V.B.2; and (2) the state agencies listed in Attachment 2 to Exhibit D to this Decree who pay money to the ECC 468B Trust Fund Agreement pursuant to Section V.B.2. Settling Government Agencies were also parties to the 1983 Decree.

G.    "ECC", the "Site" and the "Facility" refer to the real property as depicted on the map attached as Exhibit B, consisting of approximately 6.5 acres and located approximately 10 miles northwest of Indianapolis on U.S. Highway 421 near Zionsville, Indiana where Environmental Conservation and Chemical Corporation conducted its operations.

H.    "ECC Trust Funds" means the two trust funds funded as provided in Section V.B below which shall be used to pay for, among other things, the implementation of the Work and, if necessary, Additional Work.

I.    "EPA" means the United States Environmental Protection Agency.

9

J.   "Future liability" refers to liability, if any, arising after EPA's Certification of Completion is issued pursuant to Section XXVI.

K.   "Hazardous substance" shall have the meaning provided in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

L.   "IDEM" means the Indiana Department of Environmental Management.

M.   "National Contingency Plan" or "NCP" shall be used as that term is used in Section 105 of CERCLA, 42 U.S.C. § 9605.

N.   "Parties" means the Plaintiffs, Settling Defendants, Settling Government Agencies and Premium Settling Defendants.

O.   "Plaintiffs" means the United States of America and the State of Indiana.

P.   "Response Costs" means any costs incurred by Plaintiffs pursuant to 42 U.S.C. § 9601 et seq., which are not inconsistent with the National Contingency Plan.

Q.   "Settling Defendants" means those parties other than the Plaintiffs, Premium Settling Defendants, and Settling Government Agencies who sign this Decree.   Settling Defendants were also parties to the 1983 Decree.

R.   "State" means the State of Indiana and all of its agencies or representatives.

S.   "Trustee" means the person(s) or entity(ies) who (which) will manage the ECC Trust Funds.

T.   "United States" means the United States of America and its agencies and representatives.

10

U.   "DOJ" means the United States Department of Justice.

V.   "Work" means the design, construction and implementation
of the tasks as set forth in Exhibit A.

V.

GENERAL PROVISIONS

A.   Settling Defendants shall finance and require to have
performed as provided herein the Work and, if and to the extent
applicable, Additional Work, in accordance with the requirements
of all applicable local, state and federal laws, regulations and
permits.  The United States and the State have determined that the
obligations and procedures authorized under this Decree are
consistent with the authority of the United States and the State
under applicable law to establish appropriate remedial measures for
the Facility.

B.   ECC Trust Funds:

1.   ECC Trust Fund Agreement

a.   Settling Defendants shall submit to Plaintiffs a
signed ECC Trust Fund Agreement ("ETFA") establishing the ECC Trust
Fund ("ETF") in the form attached hereto as Exhibit C within ten
(10) days of the effective date of this Decree.  The ETFA shall be
construed to confer upon the Trustee(s) sufficient powers and
authority to raise and administer funds from Settling Defendants
necessary to finance the Work and, if necessary, Additional Work.

b.   Within sixty (60) days after the effective date of
this Decree, each Settling Defendant shall make its respective

11

payment to the ETF in accordance with the ETFA. Settling
Defendants shall instruct the Trustee(s) to use the money in the
ETF (1) to pay the Contractor for the Work and, if required,
Additional Work, and (2) to reimburse the United States and the
State as provided in Section XVI for Response Costs, including
Oversight Costs; provided, however, the Trustee(s) of the ETF shall
first seek payment of any such amounts specified in subparagraphs
1 and 2 immediately above from the Trustee(s) of the ECC 468B Trust
Fund until such time as the ECC 468B Trust Fund is depleted, and
the Trustee(s) of the ECC 468B Trust Fund shall promptly make such
payments.

   c. Pursuant to the terms of the ETFA, if the cost of
the Work or Additional Work exceeds the amounts allocated for the
Work or Additional Work and paid under subparagraph B.1.b of this
Section, Settling Defendants, upon notification from, and within
the time prescribed by, the Trustee(s), but no later than sixty
(60) days after notification, shall be responsible for and shall
pay to the ETF such additional amounts in the same proportions
relative to each other as shown in Exhibit C. If any Settling
Defendant fails to pay any such additional amount, upon notice by
the Trustees, the other Settling Defendants shall pay that amount
in the same proportion relative to each other as set forth in
Exhibit C within sixty (60) days of notice by the Trustee. The
failure of any Settling Defendant to pay for its share of the costs
of the Work or Additional Work, including increased costs, shall

12

not excuse timely completion of the Work or Additional Work and
reimbursement of costs.

        d.    The Trustee(s) shall submit a financial report to
the Parties on a semi-annual basis, beginning six months after the
effective date of this Decree.  The financial report shall include
cash flow projections that project the level of funds that will be
necessary for the Work for the succeeding one year period.  If the
amount of money in the ETF is less than such projected level,
Settling Defendants shall make the necessary additional payments
in amounts prescribed by the Trustee(s).  The Trustee(s) shall
notify Plaintiffs of the amount of, and time within which, the
payments are required.

        2.    <u>ECC 468B Trust Fund Agreement</u>

        a.    The Premium Settling Defendants and Settling
Government Agencies, other than the U.S. Postal Service and the
U.S. Navy, shall submit to the Plaintiffs a signed ECC 468B Trust
Fund Agreement in the form attached hereto as Exhibit D within ten
(10) days of the effective date of this Consent Decree.  The U.S.
Postal Service and the U.S. Navy shall make their respective
payments into the ECC 468B Trust Fund pursuant to Section V.B.2.b
as if these Settling Government Agencies had signed the ECC 468B
Trust Fund Agreement.

        b.    Within sixty (60) days after the effective date
of this Decree, each Premium Settling Defendant and each Settling
Government Agency shall make its respective payment to the ECC
Section 468B Trust Fund in the amount shown in the payment schedule

in Exhibit D.   Premium Settling Defendants and the Settling
Government Agencies shall instruct the Trustee(s) of the ECC 468B
Trust Fund to use all of the money in that fund for two purposes:
(1) To pay the Trustee(s) of the ETF so that money can be used to
reimburse Plaintiffs up to the amount provided in Section XVI.A
(which covers that portion of Response Costs incurred prior to
entry of this Decree for which Settling Defendants were not
released under the 1983 Decree); and (2) To the extent funds
remain, to pay the Trustee(s) of the ETF for the remaining expenses
listed in subparagraph V.B.1.b above.   If Settling Defendants
exercise their right to withdraw from this Decree as provided at
Section I, paragraph 14, above, all money in the ECC 468B Trust
Fund shall be applied first to reimburse the United States and the
State for their Response Costs incurred prior to the entry of this
Decree as provided in Section XVI.A below, and then to any other
costs for which the government claims Premium Settling Defendants
are liable; that is, no such money shall be applied to costs as to
which the government has covenanted not to sue such defendants
under the 1983 Consent Decree.

      c.   The Trustee(s) shall submit a financial report
to the Parties on a semi-annual basis, beginning six months after
the effective date of this Decree and continuing until the
termination of the ECC 468B Trust Fund.  The financial report shall
show the financial condition of the ECC 468B Trust Fund, including,
without limitation, income and expense of the Fund for the period.

14

3.    Nothing in this Decree constitutes approval by the
Plaintiffs of the ETFA or the ECC 468B Trust Fund Agreement for any
purposes   other   than   for   the   purpose   of   implementing   the
requirements of this Decree.    Payments into both trust funds
established hereunder shall not constitute penalties or monetary
sanctions.

## VI.

## THE WORK

A.    Settling Defendants shall require the Work to be
performed and completed as provided herein in accordance with all
requirements of this Decree, Exhibit A, and all applicable local,
state and federal laws, regulations and permits.    The United States
and the State have determined that Work (and if necessary under
Section VII, Additional Work) required under this Decree are
consistent with the authority of the United States and the State
under applicable law to establish appropriate remedial measures for
the Facility.

B.    In accordance with Section 121(e) of CERCLA, 42 U.S.C.
§ 9621(e), no federal, state, or local permits are required for
those portions of the Work conducted entirely on-site.    Settling
Defendants shall make timely application for any and all permits
that may be required to conduct the Work.

C.    The standards and provisions of Section XIII hereof
describing Force Majeure shall govern delays in receiving any
permits required for the Work (and, if necessary, Additional Work)
and also the denial of any such permits.

15

D.   Settling Defendants shall require to be included in all contracts (including subcontracts) entered into for the Work, provisions stating that such Contractors, including their agents and employees, shall comply with all applicable laws and regulations in performing all activities required by such contracts.  This Decree is not, nor shall it act as, nor is it intended by the Parties to be, a permit issued pursuant to any federal or state statute or regulation.

E.   The Work shall be initiated, performed and completed in accordance with Exhibit A.

F.   Subject to Settling Defendants' right to invoke Dispute Resolution pursuant to Section XIV, Settling Defendants shall implement the Work, and, as provided under Section VII below, Additional Work, upon EPA approval (after consultation with the State) of (1) the deliverables referred to in Section 5.0 of Exhibit A with respect to the Work, or (2) EPA approval of deliverables to be submitted for any Additional Work.  Unless otherwise directed by EPA in writing, Settling Defendants shall not commence field activities until EPA approves such deliverables. All Work (or Additional Work) shall be conducted in accordance with the National Contingency Plan, the EPA Superfund Remedial Design and Remedial Action Guidance, and the specifications of this Decree, including the standards, specifications and schedules developed hereunder.

G.   It is the goal and intent of the Parties that implementing the Work will achieve the Cleanup Standards set forth

16

in Table 3-1 of Exhibit A; however, if implementing the Work does not achieve the Cleanup Standards, Additional Work may be required as specified in Section VII below.   Moreover, the Parties acknowledge and agree that EPA's approval of Exhibit A (1) does not constitute a warranty or representation of any kind by EPA that implementing Exhibit A will achieve the Cleanup Standards and (2) shall not foreclose EPA from seeking performance of all terms and conditions of this Decree.

H.   Modification of Exhibit A:

1.   If any provision of Exhibit A is determined to be ineffective or inefficient in accomplishing the Cleanup Standards set forth in Table 3-1 of Exhibit A, EPA, the State or Settling Defendants may request that the relevant sections of Exhibit A be modified to make better provision for accomplishing the Cleanup Standards.

2.   Any request for modification of Exhibit A under this paragraph, and the final responses of the other Parties, shall be reflected in writing and served upon all Parties.   If the Parties agree, modification of Exhibit A may be effected by written stipulation filed with the Court.

3.   No provision of this Consent Decree may be construed or applied or modified to obligate Settling Defendants to meet any cleanup criteria which differ from the Cleanup Standards set forth in Exhibit A hereto.   This Paragraph VI.H.3 shall not be subject to Section XIV of this Decree.   Nothing herein shall preclude EPA from adopting cleanup criteria which differ from the Cleanup

17

Standards if necessary to protect human health and the environment and, subject to the limitations of Section XVIII, from seeking further relief from Settling Defendants.

## VII.

### ADDITIONAL WORK

A.   If after 5 years of operation of the soil vapor extraction system provided for in Section 2.1.1 of Exhibit A, EPA determines, after consultation with the State, that the soil vapor extraction system has not met the Cleanup Standards set forth in Table 3-1 of Exhibit A, Settling Defendants agree to implement the remedial action specified in Section 3.3 of Exhibit A, unless the Parties agree otherwise.

B.   Any disputes relating to the need for and nature of Additional Work shall be resolved pursuant to Paragraph G of Section XIV below (Dispute Resolution).

C.   Nothing in this Section shall preclude the Parties from mutually agreeing to continue the Work beyond the five-year period referenced in Paragraph A above.

D.   Nothing in this Section shall preclude Settling Defendants from terminating the Work before the expiration of the five-year period described in Paragraph A above and initiating Additional Work at that time so long as Settling Defendants provide EPA and the State with thirty (30) days written notice prior to terminating the Work.

18

VIII.

EPA PERIODIC REVIEW TO ASSURE
PROTECTION OF HUMAN HEALTH AND ENVIRONMENT

A.    To the extent required by Section 121(c) of CERCLA, 42
U.S.C. § 9621(c), EPA shall review the remedial action at the
Facility at least every five (5) years after the entry of this
Decree to assure that human health and the environment are being
protected by the remedial action being implemented.  If, upon such
review, EPA determines that further response action in accordance
with Sections 104 or 106 of CERCLA, 42 U.S.C. §§ 9604, 9606, is
appropriate at the Facility, then, to the extent permitted under
Section XVIII.C of this Decree, EPA, after consultation with the
State, may take or seek to require such action.

B.    Settling Defendants shall be provided with an opportunity
to confer with EPA and the State regarding any additional remedial
action that EPA may believe is appropriate as a result of the
Periodic Review described in Paragraph A above.  The provisions of
Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), where applicable,
will govern any judicial review of EPA's determination that any
such additional remedial action is necessary or the nature of any
such action.

IX.

QUALITY ASSURANCE

Settling Defendants shall require their Contractor to use
quality assurance, quality control, and chain of custody procedures
in accordance with EPA's "Interim Guidelines and Specifications For

19

Preparing Quality Assurance Project Plans," (QAM-005/80), and any subsequent, final amendments to such guidelines, upon written notification to Settling Defendants of such amendments by EPA for subsequent sampling and analysis events. Prior to the commencement of any monitoring project under this Decree, Settling Defendants shall require their Contractor to submit a Quality Assurance Project Plan ("QAPP") to EPA and the State that is consistent with Exhibit A and applicable guidelines. EPA, after review of the QAPP(s) and the State's comments thereon, will notify Settling Defendants of any required modifications, conditional approval, disapproval, or approval of the QAPP(s). Upon notification of disapproval or any need for modifications, Settling Defendants shall make all required modifications in the QAPP, subject to their right to invoke Dispute Resolution under Section XIV below. Sampling data generated consistent with the QAPP shall be admissible as evidence, without objection, in any proceeding under this Decree, except the Parties reserve all rights with respect to the weight, if any, to be accorded such evidence. Settling Defendants reserve all rights with respect to the admissibility into evidence of, and the weight, if any, to be accorded, such sampling data in any other proceedings. Settling Defendants shall assure that EPA personnel or authorized representatives are allowed access at reasonable times to any laboratory utilized on behalf of Settling Defendants in implementing this Decree and shall require said laboratory(ies) to analyze samples submitted by EPA, as part

of its oversight activities hereunder, for quality assurance purposes.

X.

FACILITY ACCESS, SAMPLING, DOCUMENT AVAILABILITY

A.    To the extent that the Facility or other areas where Work (or Additional Work) is to be performed hereunder is presently owned by persons other than those bound by this Decree, Settling Defendants shall use their best efforts to obtain access agreements from the present owners within sixty (60) calendar days of entry of this Decree for purposes of implementing the requirements of this Decree.    Such agreement shall provide access for the Parties and their authorized representatives.    If such access agreements are not obtained within the time specified herein, Settling Defendants shall so notify EPA and the State.    Provided that Settling Defendants have utilized their best efforts to obtain timely access, any delays encountered or inability to obtain any necessary access under this Decree shall constitute Force Majeure under Section XIII below.    Best efforts shall not require commencement of litigation against owners of the Facility.

B.    The Parties shall make available to each other the results of all validated sampling and/or tests or other data generated in performance of this Decree, and, in the case of Settling Defendants, shall submit these results in progress reports as described in Section XII of this Decree (Reporting Requirements).    Each Party may review, upon request, all sampling

21

data generated by any other party as part of the Work conducted under this Decree.

C.   Any party collecting samples pursuant to the performance of this Decree shall allow, upon request, split or duplicate samples to be taken by any other Party and/or their authorized representatives and shall provide the other Parties not less than seven (7) days advance notice of any such sample collection activity; provided, however, that if seven (7) days notice is not practical under the circumstances, such Party shall provide reasonable notice of the sampling activity.   All Parties will provide the other Parties with all results of any split sample analyses.

XI.

REMEDIAL PROJECT MANAGER/PROJECT COORDINATORS

A.   EPA shall designate a Remedial Project Manager ("RPM") or an On-Scene Coordinator ("OSC") (hereafter collectively called "RPM/OSC"), and the State shall designate a Project Coordinator ("Project Coordinator") for the Facility. Plaintiffs may designate other representatives, including EPA and State employees, and federal and state contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Decree.   The RPM/OSC shall have the authority lawfully vested in an RPM/OSC by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA reserves the right, to the extent provided by law and consistent with Section XVIII below, to take any necessary response action when conditions at the Facility present an imminent

22

and substantial endangerment to public health, welfare or the environment.

B.    Settling Defendants shall designate a Project Manager ("Project Manager") who shall have primary responsibility for implementation of the Work, and, if necessary, Additional Work, at the Facility.

C.    To the maximum extent possible, except as specifically provided in this Decree, communications between Settling Defendants, the State and EPA concerning the terms and conditions of this Decree shall be made between the Project Manager, the Project Coordinator, and the RPM/OSC.

D.    Within twenty (20) calendar days of the effective date of this Decree, Settling Defendants, the State and EPA shall notify each other, in writing, of the name, address and telephone number of the designated Project Manager, Project Coordinator and an Alternate Project Coordinator, and RPM/OSC and Alternate RPM/OSC. The Parties will notify each other in writing of any changes to the originally-supplied information under this Paragraph D within twenty (20) days of any such change.

XII.

### REPORTING REQUIREMENTS

A.    Settling Defendants shall require their Contractor to prepare and provide to EPA, DOJ and the State written progress reports which, for each reporting period: (1) describe the actions which have been taken toward achieving compliance with this Decree; (2) include all validated results of sampling and tests and all

23

other data relating to the Work or Additional Work received by Settling Defendants; (3) describe all portions of the Work or Additional Work completed under Exhibit A and attach copies of appropriate supporting documentation such as invoices, contract documents and photographs, if any; (4) describe all actions, data and plans which are scheduled for the next reporting period and provide other information relating to the progress of construction as is customary in the industry; and (5) include information regarding percentage of completion and unresolved delays encountered, or anticipated, that may affect the future schedule of major milestones in the implementation of the Work or Additional Work, a description of efforts made to investigate those delays or anticipated delays, and a description of any missed deadlines or other violations of this Decree which may give rise to stipulated penalties under Section XVII of this Decree.    These progress reports will be submitted to EPA, DOJ and the State on a monthly basis by the fourteenth day of each month during the period the remedial action required hereunder is being constructed.    For the purposes of this Paragraph, construction of the remedy will be completed when the soil vapor extraction system, the RCRA-compliant cover, and monitoring wells are installed as required by Exhibit A.    Once such construction is completed, the schedule for submitting such progress reports may be modified to provide for quarterly reports.

B.    If the date for submission of any item or notification required by this Decree falls upon a weekend or state or federal

24

holiday, the time period for submission of that item or notification will be extended to the next business day following the weekend or holiday.

C.    Upon the occurrence of any event during performance of the Work which, pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, requires reporting to the National Response Center, Settling Defendants shall require prompt oral notification to the RPM or OSC and to the State's Emergency Response Section, in accordance with IND. CODE § 13-7.   If the RPM/OSC or Project Coordinator is unavailable, Settling Defendants shall require their Contractor to notify the Emergency Response Section, Region V, EPA.   The above notification is in addition to the reporting required by Section 103 of CERCLA.   Settling Defendants shall require their Contractor to furnish Plaintiffs (1) a written report within 20 days of the onset of such an event setting forth the events which occurred and the measures taken, and to be taken, in response thereto, and (2) within 30 days of the conclusion of such an event, a report setting forth all actions taken to respond thereto.

## XIII.

### FORCE MAJEURE

A.    For purposes of this Decree, "Force Majeure" is defined as any event arising from causes beyond the control of Settling Defendants which delays or prevents the performance of any obligation under this Decree.   Force majeure shall not include increased costs or expenses or non-attainment of Cleanup Standards. However, any event which would otherwise qualify as a force majeure

25

event shall not be disqualified simply because it results in increased costs.

B.   When circumstances occur which may delay or prevent the completion of any phase of the Work, or delay or prevent access to the Facility or to any property on which any part of the Work is to be performed, whether or not caused by a force majeure event, Settling Defendants shall promptly notify the RPM/OSC and the State Project Coordinator by telephone or, in the event of their unavailability, the Director of the Waste Management Division of EPA. Within twenty (20) days of the circumstances which Settling Defendants contend are responsible for the delay or obstacle to performance, Settling Defendants shall supply to Plaintiffs in writing a description of and reason(s) for the event(s), the anticipated duration of any delay, the measures taken and to be taken by or on behalf of Settling Defendants to prevent or minimize the delay or effects of such event(s), and the timetable for implementation of such measures. Failure to give timely notice to the RPM/OSC and State Project Coordinator under this Paragraph B will constitute a waiver of any claim of force majeure.

C.   If EPA agrees that the delay or obstacle to performance is or was attributable to a force majeure event, the Parties shall modify Exhibit A or, as appropriate, schedules developed thereunder to provide such additional time, or to take into account such obstacles, as may be necessary to allow the completion of the specific phase of Work and/or any succeeding phase of the Work affected by such delay or obstacle. Such additional time shall not

exceed the actual duration of the delay resulting from the force majeure event, unless the Parties agree otherwise.

D.   If the Parties cannot agree whether the obstacle to performance or reason for the delay was caused by a force majeure event, or whether the duration of the delay is or was warranted under the circumstances, any party may invoke the dispute resolution provisions of Section XIV below.  Settling Defendants will have the burden of proving force majeure as a defense to a failure to comply with this Decree.

XIV.

DISPUTE RESOLUTION

A.   The Parties shall attempt to resolve expeditiously and informally any disputes that arise under this Decree.

B.   If any dispute arising under this Decree is not resolved expeditiously through informal means, any Party may initiate dispute resolution under this Section by serving prompt written notice by certified mail on the other Parties.

C.   Within ten (10) days of the service of a notice of dispute under paragraph B above, the Party who gave notice shall serve on the other Parties a written statement of the issues in dispute; the relevant facts upon which the dispute is based; factual data, analysis or opinion supporting its position; and all supporting documentation on which such Party relies (hereinafter "Statement of Position").  Any response by a Party to any such Statement of Position shall be served on all other Parties within ten (10) days of receiving such a Statement of Position.  The

27

Parties, by agreement, may alter or extend any deadlines under this Section XIV.

D.   An administrative record of any dispute under this Section shall be maintained by EPA and shall include the written notification of such dispute, the Statement of Position, any responses thereto, and EPA's final determination with respect to any such dispute.   The record shall also include any additional information submitted for the record by any Party on which all Parties shall have a reasonable opportunity to comment.

E.   Any Party shall have the right to petition the Court for a review of EPA's final determination under this Section XIV.   Any Party may file such a petition prior to the issuance of EPA's final determination if the circumstances require prompt resolution. However, in such a case, EPA shall have a reasonable opportunity to render its decision.

F.   The administrative and judicial dispute resolution procedures of this Section XIV shall be the exclusive mechanism to resolve disputes arising under this Decree and shall apply to all provisions of this Decree unless otherwise expressly provided.   The invocation of the procedures stated in this Section shall not alter Settling Defendants' obligations under this Decree with respect to the disputed issues or any other requirement of this Decree unless and until the Court orders otherwise.

G.   In judicial proceedings on any dispute relating to whether the Work or Additional Work has been performed as required by this Decree, or relating to the necessity for or nature of

28

Additional Work, or relating to designs and plans to implement Work
or Additional Work, Settling Defendants shall have the burden of
emonstrating, based on the administrative record developed under
Paragraph D of this Section, that the position of EPA is arbitrary
and capricious or otherwise not in accordance with law or this
Decree.

H.   In any judicial proceeding where Settling Defendants
allege delay or impossibility attributable to force majeure, they
shall have the burden of demonstrating by a preponderance of the
evidence that the delay or anticipated delay has been or will be
caused by circumstances beyond their control, and that the duration
of the delay is or was warranted under the circumstances; provided,
however, that nothing in this Paragraph H is intended to limit or
otherwise alter the appropriate standard of review for matters
covered in Paragraph G of this Section.

I.   Except as provided in Paragraphs G and H of this Section,
this Decree does not establish scopes of review, burdens of proof,
or standards of any kind for judicial review of disputes between
the Parties.

XV.

RETENTION AND AVAILABILITY OF INFORMATION

A.   <u>Documents Relating to Performance of this Decree</u>.

1.   <u>Documents generated prior to termination of the
Decree</u>.  During the pendency of this Decree and for a period of
five (5) years after its termination, Settling Defendants shall
require their Contractor to retain and to make available to EPA,

29

DOJ, and the State all records and documents in its possession, custody or control which relate to the performance of this Decree, including, without limitation, documents reflecting the results of any sampling, tests, or other data or information generated or acquired by it, or on its behalf, with respect to the Facility. After the five (5) year period of document retention, Settling Defendants shall require their Contractor to notify EPA, DOJ and the State at least ninety (90) days prior to the destruction of any such documents, and upon request by EPA, DOJ or the State, shall relinquish custody of said documents to EPA, DOJ or the State.

2.    <u>Documents generated after termination of the Decree</u>. If any records or documents relating to the performance of this Decree are generated after termination of this Decree, Settling Defendants shall require their Contractor to retain and to make available to EPA, DOJ, and the State all such records and documents in its possession, custody or control, for a period of ten years after their generation, including, without limitation, documents reflecting the results of any sampling, tests, or other data or information generated or acquired by it, or on its behalf, with respect to the Facility.    After this ten (10) year period of document retention, Settling Defendants shall require their Contractor to notify EPA, DOJ, and the State at least ninety (90) days prior to the destruction of any such documents, and upon request by EPA, DOJ or the State, shall relinquish custody of said documents to EPA, DOJ or the State.

B.   <u>Documents Relating to the Alleged Liability of Settling</u>
<u>Defendants</u>.   During the pendency of this Decree and for a period
of five (5) years after its termination, Settling Defendants shall
retain and make available to EPA, DOJ, and the State all records
and documents in their possession, custody, or control pertaining
to their own or any other person's alleged liability at ECC for
response action or costs under CERCLA not previously provided to
EPA.   After the five (5) year period of document retention,
Settling Defendants shall notify EPA, DOJ and the State at least
ninety (90) days prior to the destruction of any such documents,
and upon request by EPA, DOJ or the State, Settling Defendants
shall relinquish custody of the documents to EPA, DOJ or the State.
Nothing in this Paragraph or in Paragraph A immediately above shall
preclude EPA, DOJ or the State from requesting copies of the
documents described hereunder at any time prior to their
destruction.

C.   Settling Defendants or their Contractor may assert
business confidentiality claims covering part or all of the
information provided in connection with this Decree in accordance
with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and
pursuant to 40 C.F.R. § 2.203(b) and applicable State law.

D.   Information determined to be confidential by EPA will be
afforded the protection specified in 40 C.F.R. Part 2, Subpart B
and, if determined to be entitled to confidential treatment under
state law by the State, afforded protection under state law by the
State.   If no such claim accompanies the information when it is

31

submitted to EPA and the State, the public may be given access to
such information without further notice to Settling Defendants.

E.    Information acquired or generated in performance of the
Work that is subject to the provisions of Section 104(e)(7)(F) of
CERCLA, 42 U.S.C. § 9604(e)(7)(F), shall not be claimed as
confidential by Settling Defendants or their Contractor.

F.    In the event that Settling Defendants' obligations to
produce documents under this Section includes documents which are
privileged from disclosure as attorney-client communications,
attorney work-product or other privilege recognized by law,
Settling Defendants may withhold production of such documents to
avoid improper disclosure until agreement is reached with the
United States and the State as appropriate, or, if agreement cannot
be reached, until resolution of the issue is reached pursuant to
Section XIV (Dispute Resolution).    However, Settling Defendants
must provide the United States and the State, as appropriate, with
a list of the documents sought to be withheld, identifying subject,
author, addressee(s) and date for each document, and any other
information necessary to determine whether the document is
privileged.    Further, Settling Defendants shall not withhold as
privileged any information or documents that are created, generated
or collected pursuant to requirements of this Decree, regardless
of whether the document has been generated in the form of an
attorney-client communication or other generally privileged manner.
Settling Defendants may not withhold as privileged any documents

32

that are subject to the public disclosure provision of Section
104(e)(7)(F) of CERCLA, 42 U.S.C. § 9604(e)(7)(F).

## XVI.

### REIMBURSEMENT

A.    Settling Defendants shall pay, within sixty (60) days of
the entry of this Consent Decree:

(1)  $700,000 to the EPA Hazardous Substances Superfund
delivered to EPA Region V, Attn: Superfund Accounting,
P.O. Box 70753, Chicago, IL 60673, in the form of a wire
transfer or certified or cashier's check payable to "EPA
Hazardous Substances Superfund" (a copy of such check
shall be sent to the Director, Waste Management Division,
U.S. EPA, Region V and to the DOJ addressee set forth in
Section XXII below). Payments to the United States shall
include a reference, "Enviro Chem #30", and the docket
number of this case;

(2)  $15,437 to the State delivered to the Indiana
Department of Environmental Management, 105 South
Meridian Street, Indianapolis, IN 46206-6015, in the form
of a wire transfer or cashiers or certified check made
payable to "Indiana Department of Environmental
Management, ATTN: Cashier" (a copy of such check shall
be sent to the Attorney General of the State);

(3)  $22,500 to the Office of the Secretary, Department
of Interior, Fiscal Section, 18th and E Street, N.W.,

33

Washington, D.C. 20240. The check should reference the Enviro-Chem Site with a copy of the check sent to the Office of Environmental Project Review, Department of Interior, 18th and C Street, N.W., Washington, D.C. 20240; and

(4) $5,250 to the Indiana Department of Natural Resources, Office of the Director, 608 State Office Building, Indianapolis, Indiana 46204.

B.   The payments made under Paragraph A(1) and (2) above are reimbursement of past costs claimed by the United States and the State in this action. In consideration of the monies received under the above Paragraph, the United States and the State covenant not to sue Settling Defendants for any costs incurred prior to the entry date of this Consent Decree.

C.   Settling Defendants shall pay all response costs of the United States and the State which are not inconsistent with the NCP incurred after the entry of this Consent Decree in overseeing implementation of the Work and, if necessary, Additional Work (hereafter, "oversight costs"); provided, however, Settling Defendants shall not be liable for paying government oversight costs incurred in overseeing the Work in excess of $850,000. Response costs incurred by the United States in overseeing implementation of Additional Work, if any, and in seeking to enforce the terms of this Decree, shall not be subject to the $850,000 limit in the preceding sentence. Payments shall be made on an annual basis and within 30 days of the submission of itemized

34

cost statements and supporting documentation by the United States and the State. The United States and the State shall submit their oversight cost claims as soon as practicable after each anniversary date of this Consent Decree.

D.    In consideration of and upon payment of all oversight costs as required by this Section, the United States and the State covenant not to sue Settling Defendants for any oversight costs incurred in overseeing the Work or the Additional Work, if any.

E.    If reimbursement is owed for oversight costs at the time the United States and the State plan to terminate this Decree, Settling Defendants shall, within thirty (30) days of the submission of an itemized cost statement and supporting documentation by the United States and the State, and before termination of this Decree, pay such costs.

F.    The Response Costs reimbursed in accordance with Paragraphs A, B and C of this Section, respectively, are consistent with the National Contingency Plan.

XVII.

STIPULATED PENALTIES

A.    Penalties.  The Settling Defendants shall be liable to the Plaintiffs for payment of stipulated penalties for each of the following violations of this Decree, unless the violation is excused pursuant to Section XIII (Force Majeure), or is reduced or waived by Plaintiffs in accordance with Subparagraph A.3 below:

1.    Late Reports.  For each day that the Settling Defendants fail to submit periodic progress reports in

35

accordance with Section XII of the Decree: $500 for the first 7 days; $1,000 for the 8th through 30th days; and $1,500 for each day after the 30th day.

2.    Delayed Work.  For each day that any major milestone specified below in this Subparagraph A.2.a through A.2.g of this Section is delayed:  $1,500 for the first 7 days; $4,000 for the 8th through 30th days; $6,500 for the 31st through the 60th day; and $9,000 a day after the 60th day.

      a.    Submission of the project plans, construction contract specifications and revised drawings necessary to solicit competitive bidding as required in Section 5.0 of Exhibit A -- three (3) months from the entry of the Decree.

      b.    Completion of site preparation, including grading, removal of the tanks and buildings, repair or moving of the fence -- 4 months after approval by EPA of the documents referred to in subparagraph A.2.a above.  Completion of site preparation shall mean that all hindrances, obstructions or obstacles to construction and security of the soil vapor extraction trenches, monitoring wells or cap have been removed.

      c.    Completion of installation of the on-site and off-site monitoring wells -- 5 months after approval

by EPA of the documents referred to in subparagraph
A.2.a above.

d.   Startup of the soil vapor extraction system --
10 months after approval by EPA of the documents
referred to in subparagraph A.2.a above.

e.   Completion of installation of the cap -- eleven
(11) months after EPA approval of the documents
referred to in subparagraph A.2.a above.

f.   Submission of all documents necessary to
perform Additional Work that may be required under
Section VII of this Decree -- 6 months after written
notice is provided by EPA or Settling Defendants
that Additional Work needs to be implemented.

g.   Completion of installation of the ground water
collection trench -- on a schedule to be approved
by EPA after consultation with the State.

3.   Stipulated penalties for major milestones A.2.b and
A.2.c may be waived by Plaintiffs, in whole or in part,
at their discretion, if Settling Defendants startup the
soil vapor extraction system and complete installation
of the cap within 10 and 11 months, respectively, after
approval by EPA of the documents referred to in
subparagraph A.2.a above.

4.   Forgiveness of Certain Delayed Work Penalties. Any
stipulated penalties incurred for any of the major
milestones listed in subparagraphs A.2.b and A.2.c above

shall be collected as specified pursuant to Paragraphs C and D below, but shall be paid into an escrow account and shall remain there until the earlier of (a) the startup of the soil vapor extraction system and installation of all components of the cap, or (b) 11 months after approval by EPA of the documents referred to in subparagraph A.2.a above. If startup of the soil vapor extraction system and completion of the cap do not occur within 10 and 11 months, respectively, after approval by EPA of the documents referred to in subparagraph A.2.a above, the balance of the escrow account shall be paid to Plaintiffs as provided in Paragraph D below. If such deadlines are met, the balance of the escrow account may, upon granting of the permissive waiver referenced in subparagraph A.2.3 immediately above, be paid to the Trustee(s) of the ETF on behalf of Settling Defendants.

5.    Time Limitation. Stipulated penalties due hereunder shall be deemed waived if notice is not given by the Plaintiffs pursuant to Paragraph C below within one year of the deadline for an action that has been missed or other violation giving rise to the penalty has occurred. This limitation shall not apply if Settling Defendants have failed to report a missed deadline or other violation giving rise to a stipulated penalty in the reports submitted pursuant to Section XII above.

38

6.    Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Decree, except that Plaintiffs are collectively entitled to no more than one penalty per violation.

B.    Accrual Dates.  Except as provided in Paragraph E below, all stipulated penalties begin to accrue on the day following the day that complete performance for each item specified in paragraphs A.1 and A.2 is due, and continue to accrue through the final day of correction of the noncompliance or completion of performance. Payment of stipulated penalties shall not alter in any way Settling Defendants' obligations to complete performance.  Any modification of the time for submitting reports or accomplishing major milestones that are subject to Stipulated Penalties under paragraphs A.1 and A.2 above shall be in writing and approved by EPA.

C.    Notice.  Following the Plaintiffs' determination that Settling Defendants have failed to comply with the requirements of this Decree, Plaintiffs shall give Settling Defendants written notice of said claim and provide a description of the alleged noncompliance, including the portion of Work or Additional Work affected and the date of noncompliance.  This notice shall also indicate the amount of stipulated penalties allegedly due.

D.    Payment.  All stipulated penalties owed to the Plaintiffs under this Section shall be payable within thirty (30) days of receipt of written demand, unless Settling Defendants seek resolution of the dispute under Section XIV above.  Penalties shall

39

accrue from the date of violation regardless of whether EPA has
notified Settling Defendants of a violation. Interest shall begin
to accrue on the unpaid balance of any specific penalty at the end
of the thirty (30) day period for that penalty. One half of all
stipulated penalties owed shall be paid to the United States, and
the other half shall be paid to the State of Indiana, as described
below. Such payments shall include a reference "Enviro-Chem #30"
and the docket number of this case. All payments shall be mailed
or wired to U.S. EPA Region V, Attn: Superfund Accounting; P.O.
Box 70753; Chicago, Illinois 60673 (with copies to the federal
addressees shown in Section XXII) and to the Indiana Department of
Environmental Management, Attn:  Cashier, 105 S. Meridian St.,
Indianapolis, Indiana 46206-6015, respectively.

E.   Disputes.   During any dispute resolution proceeding
pursuant to Section XIV, penalties shall accrue, with interest, but
need not be paid during the dispute resolution period. If a Court
becomes involved in the resolution of the dispute, the period of
dispute shall end and the accrual of penalties shall cease, upon
the rendering of a decision by the District Court regardless of
whether any Party appeals such decision. If Settling Defendants
prevail upon resolution, Settling Defendants shall pay only such
penalties as the resolution requires. If the Settling Defendants
do not prevail upon resolution, the United States and the State
have the right to collect all penalties which accrue during the
period of dispute. The Settling Defendants shall, however, have
the right to petition the Court for a finding that the Settling

Defendants' position regarding the dispute had substantial support in law, fact and/or expert opinion (as applicable) and reasonably could have been expected to prevail, in light of the applicable standard of judicial review, and that Settling Defendants sought resolution of the dispute at the earliest practicable time and took all other appropriate steps to avoid any delay in the Work as a result of the dispute. If the Court so finds, the Court may reduce the stipulated penalties as appropriate. Settling Defendants shall have the burden of proof and persuasion on any petition for reduction of stipulated penalties submitted hereunder.

F.    Choice of Penalties. Nothing herein shall preclude EPA from bringing an action in this Court pursuant to Section 109 of CERCLA for any failure or refusal to comply with the provisions of this Decree. The United States may elect, in its sole discretion, whether to seek stipulated penalties under this Section or to seek civil penalties under Section 109 of CERCLA for a particular violation of the Decree, but agrees not to seek both types of penalties for the same violation. The United States and the State are precluded from seeking double payment of penalties by requiring that stipulated penalties be paid to one plaintiff and civil penalties to the other for the same violation.

G.    Effect of Notice. The filing of a written notice of a dispute shall not alter in any way the Settling Defendants' obligations to complete the activities required of them under this Decree.

41

H.   Pursuant to 31 U.S.C. § 3717, interest shall accrue on any amounts overdue at a rate established by the Department of Treasury for any period after the date of billing.   A handling charge will be assessed at the end of each 30 day late period, and a six percent per annum penalty charge will be assessed if the penalty is not paid within 90 days of the due date.

XVIII.

COVENANT NOT TO SUE SETTLING DEFENDANTS

A.   In consideration of actions which will be performed and payments which will be made by the Settling Defendants under the terms of the Decree, and except as otherwise specifically provided in this Decree, the United States and the State covenant not to sue or take administrative action against the Settling Defendants or their officers, directors, employees, or agents for Covered Matters.   Covered Matters shall include any and all claims available to Plaintiffs under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, and Section 7003 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6973, and any and all claims available to the State under Indiana statutes, regulations and common law nuisance, relating to the Facility. With respect to future liability, this covenant not to sue shall take effect upon certification by EPA of the completion of the remedial action concerning the Facility.

B.   "Covered Matters" do not include:

(1)   Liability arising from hazardous substances removed from the Facility;

42

(2)   Criminal liability;

(3)   Claims based on a failure by the Settling Defendants
      to meet the requirements of this Decree;

(4)   Any matters for which the United States or the State
      is owed indemnification under Section XX hereof;
      and

(5)   Liability for violations of Federal or State law
      which occur during implementation of the remedial
      action.

C.    Notwithstanding any other provision in this Decree, (1)
the United States reserves the right to institute proceedings in
this action or in a new action or to issue an Order seeking to
compel the Settling Defendants to perform any additional response
work at the Facility, and (2) the United States and the State
reserve the right to institute proceedings in this action or in a
new action seeking to reimburse the United States for natural
resource damages and for its response costs and to reimburse the
State for its matching share of any response action undertaken by
the EPA under CERCLA, relating to the Facility, if:

a.    For proceedings prior to EPA certification of
      completion of the remedial action concerning the
      Facility,

      (i)   conditions at the Facility, previously unknown
            to the United States, are discovered after the
            entry of this Decree, or

43

(ii)   information is received, in whole or in part,

after the entry of this Decree,

and these previously unknown conditions or this information
indicates that the remedial action is not protective of human
health and the environment, and

b.   For proceedings subsequent to EPA certification of
completion of the remedial action concerning the
Facility,

(i)   conditions at the Facility, previously unknown
to the United States, are discovered after the
certification of completion by EPA, or

(ii)   information is received, in whole or in part,
after the certification of completion by EPA,

and these previously unknown conditions or this information
indicates that the remedial action is not protective of human
health and the environment.

D.   Notwithstanding any other provision in this Decree, the
covenant not to sue in this Section shall not relieve the Settling
Defendants of their obligation to meet and maintain compliance with
the requirements set forth in this Decree, including the conditions
in the amended ROD, which are incorporated herein, and the United
States and the State reserve their rights to take response actions
at the Facility in the event of a breach of the terms of this
Decree and to seek recovery of response costs incurred after entry
of the Decree (1) relating to any portion of the Work funded or
performed by the United States or the State; and/or (2) incurred

44

by the United States or the State as a result of having to seek judicial assistance to remedy conditions at or adjacent to the Facility.

E.   Nothing in this Decree shall constitute or be construed as a release or a covenant not to sue regarding any claim or cause of action against any person, firm, trust, joint venture, partnership, corporation or other entity not a signatory to this Decree for any liability it may have arising out of or relating to the Facility. Plaintiffs expressly reserve the right to continue to sue any person, other than the Settling Defendants, in connection with the Facility.

XIX.

SPECIAL PROVISIONS FOR PREMIUM SETTLING
DEFENDANTS AND SETTLING GOVERNMENT AGENCIES

A.   Covenants Not to Sue.   Except for those claims reserved in Paragraph C below, the Plaintiffs covenant not to sue Premium Settling Defendants and Settling Government Agencies with regard to any liability that could be imposed upon any of the Premium Settling Defendants and Settling Government Agencies as to any obligations or liability at the ECC Site arising under Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, and Section 7003 of RCRA, 42 U.S.C. § 6973, or under any State environmental statute, regulation or common law doctrine.   This Paragraph does not provide a covenant not to sue any Premium Settling Defendant or Settling Government Agency who does not make timely payment of the amount

45

required from it by this Consent Decree or for any other person or entity not a Party to this Consent Decree.

B.   Consideration.   The covenants not to sue contained in Paragraph A above are given in consideration of the payment to the trust fund, established pursuant to Section V.B.2 and Exhibit D, by each Premium Settling Defendant and Settling Government Agency of the amount shown for that Premium Settling Defendant and Settling Government Agency. Each such payment includes a premium amount in consideration of the covenants not to sue given to such Premium Settling Defendant as provided herein.   The Premium Settling Defendants and the Settling Government Agencies, other than the United States Navy, shall be entitled to the contribution protection provided for in Section 122(g)(5) of CERCLA for matters addressed by this Consent Decree. The United States Navy shall be entitled to the contribution protection provided for in Section 113(f)(2) of CERCLA for matters addressed by this Consent Decree.

C.   Reservation.   The covenants not to sue contained in Paragraph A above shall not apply to any claim or demand for personal injury, third-party property damage (not including natural resource damages), "toxic tort" claims of any kind, or criminal liability, if any.

D.   Certification.   Each Premium Settling Defendant and Settling Government Agency hereby certifies that, based on information currently available to it and to the best of its knowledge and belief, it is aware of no facts indicating that its volumetric contribution of hazardous substances or contaminants to

46

the Facility was higher than the amount attributed to it in Exhibit
D.

E.   Covenants Null and Void.   If it is ever shown that the
volume attributed to a Premium Settling Defendant or Settling
Government Agency is materially greater than the amount shown in
Exhibit D, then the covenant not to sue provided in Paragraph A
above shall be null and void as to such Premium Settling Defendant
or Settling Government Agency, and such Defendant shall be subject
to all the requirements and obligations of Settling Defendants set
forth in this Decree.

F.   Agreement to Terms of Trust Fund.   Each Premium Settling
Defendant and Settling Government Agency agrees to abide by the
terms of the ECC 468B Trust Fund Agreement.

G.   Effective Date.   The covenants not to sue provided in
Paragraph A above shall become effective upon payment to the ECC
468B Trust Fund.

H.   Notwithstanding the provisions of this Section, EPA may,
through appropriate administrative process, proceed against the
United States Navy pursuant to Section XVIII.C.   This provision
shall not create any rights in the Navy for contribution from the
Settling Defendants.   This provision shall not affect, limit, or
create any rights, liabilities or obligations of or in any other
person, whether a party to this Consent Decree or not.

I.   No Other Obligations.   Notwithstanding any other
provision of this Decree, Premium Settling Defendants and Settling
Government Agencies shall have no obligation or liability under

this Decree except as set forth or reserved in this Section XIX and
Section V.B.2.

## XX.

### INDEMNIFICATION; OTHER CLAIMS

A.    Settling Defendants agree to indemnify, save and hold
harmless EPA, the State and/or their representatives from any and
all liability arising out of the acts or omissions of Settling
Defendants and/or their representatives in carrying out the
activities required by this Decree. EPA and the State shall notify
Settling Defendants of any such claims or actions promptly after
receipt of notice that such a claim or action is anticipated or has
been filed. EPA and the State agree upon request by Settling
Defendants to notify the designated representative(s) of Settling
Defendants to the extent practicable of developments in any such
action and not to settle any such action without first providing
them with an opportunity to participate.

B.    EPA and the State are not to be construed as parties to,
and do not assume any liability for, any contract entered into by
Settling Defendants in carrying out the activities pursuant to this
Decree. The proper completion of Exhibit A under this Decree is
solely the responsibility of Settling Defendants and the Contractor
as provided herein.

C.    Settling Defendants waive their rights to assert any
claims against the Hazardous Substances Superfund under CERCLA that
are related to any past costs or costs incurred in the Work
performed pursuant to this Decree, and nothing in this Decree shall

48

be construed as EPA's pre-authorization of a claim against the Hazardous Substances Superfund.

XXI.

FINANCIAL RESPONSIBILITY

Settling Defendants, or some of them, will provide financial assurance to ensure that sufficient assets exist to fund the Work or Additional Work. Such financial assurance shall be in the form of a performance bond or a financial assurance mechanism provided for under the State's RCRA regulations at 329 I.A.C. § 3-22. If less than all Settling Defendants provide such financial assurance, it is expressly understood and agreed by the Parties that such subset of Settling Defendants providing such financial assurance shall not thereby incur, as a result of providing such financial assurance, any additional obligation to fund or guarantee performance of the Work or Additional Work (if any) beyond the obligations set forth in this Decree and in the ECC Trust Fund.

XXII.

NOTICES

A.   Whenever, under the terms of this Decree, notice is required to be given, a report or other document is required to be forwarded by one party to another, or service of any papers or process is necessitated by the terms hereof, such correspondence shall be directed to the following individuals at the addresses specified below:

49

As to the United States or
U.S. EPA:

a. Regional Counsel
   Attn:  Attorney for
     ECC Site -5CS-TUB
   U.S. Environmental
     Protection Agency
   230 S. Dearborn Street
   Chicago, IL  60604

b. Director, Waste Management
     Division
   Attn:  ECC Remedial
     Project Manager 5HS-11
   U.S. Environmental
     Protection Agency
   230 S. Dearborn Street
   Chicago, IL  60604

c. Assistant Attorney General
     Environment & Natural
Resources Division
   U.S. Department of Justice
   10th & Pennsylvania Ave., N.W.
   Washington, D.C.  20530

As to the State of Indiana:

a. Attorney General
   State of Indiana
   Attn: Attorney for
     ECC Site
   Room 219 - State House
   Indianapolis, IN  46204

b. Commissioner, Indiana
     Department of Environmental
     Management
   Attn:  ECC Project
     Coordinator
   105 South Meridian Street
   P.O. Box 6015
   Indianapolis, IN  46206-6015

As to Settling Defendants:

a. Norman W. Bernstein
   Shea & Gould
   Suite 700
   1775 Pennsylvania Ave., N.W.
   Washington, D.C.  20006

b. Timothy L. Harker
   The Harker Firm
   Suite 310
   2021 K Street, N.W.
   Washington, D.C.  20006

## XXIII.

### CONSISTENCY WITH NATIONAL CONTINGENCY PLAN

The United States and the State agree that the Work and
Additional Work, if properly performed as set forth in Section VI
and VII hereof, are consistent with the provisions of the National
Contingency Plan pursuant to 42 U.S.C. § 9605.

XXIV.

RESPONSE AUTHORITY

Nothing in this Decree shall be deemed to limit the response authority of the United States under 42 U.S.C. § 9604, or the State under the Environmental Management Act, IND. CODE § 13-7.

XXV.

COMMUNITY RELATIONS

Settling Defendants shall cooperate with EPA and the State in providing information to the public regarding the progress of remedial design and remedial action at the Facility. As requested by EPA or the State, Settling Defendants shall participate in the preparation of all appropriate information disseminated to the public and in public meetings which may be held or sponsored by EPA or the State to explain activities at or concerning the Facility.

XXVI.

EFFECTIVE AND TERMINATION DATES

A.    This Decree shall be effective upon the date of its entry by the Court.

B.    Certification of Completion of Remedial Action:

1.    Application. When Settling Defendants believe that the demonstration of compliance with the Work or Additional Work has been made in accordance with this Decree, they shall submit to the United States a Notification of Completion of Remedial Action and a final report which summarizes the work done, any modification made to the Work or Additional Work thereunder relating to the Cleanup Standards, and data demonstrating that Work or Additional

51

Work has been accomplished.  The report shall include or reference any supporting documentation.

      2.   <u>Certification</u>.  Upon receipt of the Notice of Completion of Remedial Action, EPA shall review the final report and any other supporting documentation, and the remedial actions taken.  EPA shall issue a Certification of Completion of Remedial Action upon a determination that Settling Defendants have demonstrated satisfactory completion of the Work or Additional Work which certification shall not be unreasonably withheld.  Nothing herein shall preclude EPA from certifying that any portion of the Work has been completed as required hereunder; provided, however, that EPA is not required to provide any such partial certification.

      C.   <u>Termination</u>.  Upon the filing of EPA's Certification of Completion pursuant to the preceding paragraph, and a showing that the other terms of this Decree (other than the post-termination obligations referred to below), including payment of all costs and stipulated penalties due hereunder, have been complied with, the Work and Additional Work provisions of this Decree shall be terminated upon motion of any of the Parties.  However, Settling Defendants' obligations to maintain the cap required by Work and any operation and maintenance required by Additional Work, shall survive the termination of said provisions and shall be enforceable by the United States by re-institution of this action.

XXVII.

## NON-ADMISSIONS

Settling Defendants deny any liability with respect to any claim arising out of or related to the ECC Site or operation of the ECC Facility. By entering into this Decree and performing the Work or Additional Work hereunder, Settling Defendants do not admit any liability with respect to any claim arising out of related to the ECC Site or operation of the ECC Facility. This Decree shall not be admissible as evidence against any Settling Defendant on any question of law or fact in any proceeding, except that it shall be admissible by any Party hereto in a proceeding before this Court to implement or enforce the terms thereof against any other Party.

XXVIII.

## RESERVATION OF RIGHTS

Settling Defendants, their agents, successors and assigns reserve all rights and defenses that they may have under the law with respect to (1) any claim of the United States or the State that is not barred by the Covenant Not To Sue hereunder, and (2) any claim of any person or entity not a Party to this Decree.

XXIX.

## EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

A.    This Decree was negotiated in good faith by the Plaintiffs and Settling Defendants. The Settling Defendants shall be entitled to the contribution protection provided for in Section 113(f)(2) of CERCLA for matters addressed by this Consent Decree. The settlement reached among the Settling Defendants, Premium

53

Settling Defendants and Settling Government Agencies was reached at arm's length and is in good faith, is a fair settlement of the alleged liability of the Settling Defendants, Premium Settling Defendants and Settling Government Agencies and is in the public interest.

B.   Settling Defendants agree that if any claim for contribution or indemnity is brought against them, individually or collectively, the named Settling Defendant(s) will timely notify Plaintiffs of the institution of that claim.   If Settling Defendants individually or collectively bring a claim for contribution against any person, they will timely notify Plaintiffs of the institution of that claim.

C.   Settling Defendants and Premium Settling Defendants covenant not to sue the Settling Government Agencies regarding matters addressed in this settlement, or the matters addressed in Section XIX.H.

D.   Nothing in this Decree shall be construed to require any payment by the Settling Government Agencies in violation of the Anti-Deficiency Act, 31 U.S.C. § 1341; provided, however, that if a Settling Government Agency does not make any payment required by this Decree or the Trusts established hereunder, it shall not be entitled to the contribution protections and covenants of this Decree.

ENTERED this _____ day of _____, 1991.

_____
U.S. District Judge

54

The Parties whose signatures appear below hereby consent to the terms of this Decree.  The consent of the United States is subject to the public notice and comment requirements of Section 122(i) of CERCLA and 28 C.F.R. § 50.7 and the consent of all Parties is conditional upon the EPA adopting an amended ROD consistent with the proposed amended ROD lodged with this Decree.

By: _____

    Richard B. Stewart
    Assistant Attorney
     General
    Environment and Natural Resources
     Division
    U.S. Department of Justice
    Washington, D. C.  20530

Date: _2-27-91_

By: _____

    Samuel B. Boxerman
    Environmental Enforcement
     Section
    United States Department
     of Justice
    Washington, D.C.  20530

Date: _2/8/91_

By: _____

Valdas V. Adamkus
Regional Administrator
U.S. EPA Region V

Date: _12/27/89_.

STATE OF INDIANA

By: _____

    Kathy Prosser
    Commissioner, Indiana
     Department of
     Environmental Management

Date: _12-18-89_



APPROVED FOR LEGALITY AND FORM

LINLEY E. PEARSON
Attorney General of Indiana

By: _____
    Deborah E. Albright
    Deputy Attorney General

DATE: 10 - 16 - 89

<u>SIGNATURES OF SETTLING DEFENDANTS</u>:

    The undersigned Settling Defendant hereby consents to the foregoing Consent Decree in <u>U.S. v. Environmental Conservation and Chemical Corporation, et al.</u>

<u> September 15, 1989 </u>
**Date**

                                <u> General Motors Corporation </u>
**NAME OF SETTLING DEFENDANT (Type)***

                                <u> P.O. Box 33122, Detroit, MI 48232 </u>
**Address**

**By:**                _(Signature of Officer)_ Mark Hester
**(Signature of Officer)**

                                 <u> Attorney </u>
**Title**

                           **(Corporate acknowledgment)**

_John Kyle_
**NAME OF ATTORNEY OR**
**AUTHORIZED REPRESENTATIVE (Type)**
_Barnes & Thornburg_
_11 S. Meridian St, Suite 1313_
**Address** _Indianapolis, IN 46204_

_317-231-7284_
**Telephone Number**

In the event of a change of address of defendant, counsel, or the authorized representative, notice shall be given to plaintiffs at the address in Section XXII.

Consent to the Service of all papers in connection with the lodging and entry of this Consent Decree and notices hereunder may be made by deliver to the Envirochem Steering Committee, c/o ____

_____.

                             **Signature**

* on behalf of <u> GMC - Delco Electronics </u>, appearing as #_____
on Attachment 1 to Exhibit C of this Decree.

56

**EXHIBIT C TO THE AFFIRMATION OF NORMAN W. BERNSTEIN**