Hearing Date: August 3, 2009 at 9:45 a.m. Prevailing Eastern Time)
Objection Deadline: July 28, 2009

BELLAVIA GENTILE & ASSOCIATES, LLP
200 Old Country Road, Suite 200
Mineola, New York 11501
(516) 873-3000
Leonard A. Bellavia, Esq. (LB 0780)
Counsel to Mount Kisco Chevrolet Cadillac Hummer, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

GENERAL MOTORS CORP., et al            Chapter 11 Case No.
                                       09-50026 (REG)
            Debtors,                   (Jointly Administered)

-----------------------------------------------------------------X

OBJECTION OF MOUNT KISCO CHEVROLET CADILLAC
HUMMER, INC. TO DEBTORS' MOTION PURSUANT TO 11
U.S.C. 365 AUTHORIZING (A) THE REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN
DOMESTIC DEALERS AND (B) GRANTING CERTAIN RELATED
RELIEF

TO: THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

1.     Mount Kisco Chevrolet Cadillac Hummer, Inc. ("Dealer" or "Mount Kisco"),

by and through their undersigned counsel, hereby files this objection (the

"Objection") to the motion filed by General Motors Corporation ("GM") and

its affiliated debtors in possession in the above captioned, jointly administered

bankruptcy cases (the "Debtors") to reject that certain dealer sales and service

agreement (the "Agreement") by and between Mount Kisco and GM (the

"Rejection Motion").

Summary of Objection to Rejection Motion

2. As shown more fully herein below, Mount Kisco's inclusion as one of the 38 dealers for which Debtors seek authorization from this Court to reject certain dealer sales and service agreements, is plainly and clearly a mistake.

3. Specifically, the Debtors have represented to the Court, in the Rejection Motion, that the "Affected Dealers, whose Dealership Franchise Agreements and Ancillary Agreements the Debtors seek authorization to reject by this Motion, include only those 38 dealers who did not accept either a Participation Agreement or Wind Down Agreement." Rejection Motion at para. 10.

4. It could not be clearer, however, that Mount Kisco does not fall into either category as Mount Kisco was offered a Participation Agreement (the "Participation Agreement") and executed such agreement by its Secretary, Dennis Roddy.

5. Notwithstanding these facts, the Debtors are apparently taking the position that a representative of the estate for Mount Kisco's deceased dealer/principal Adrian Quinn, need to execute the Participation Agreement rather than an officer of that company. The Debtors must not be allowed to use this hyper-technical and legally unsupportable excuse to reach such an utterly inequitable result; i.e., the rejection of Mount Kisco's dealer sales and service agreement.

6. Simply stated, after conducting an extensive analysis as to which dealers would be retained by the new GM, and determining to retain Mount Kisco as a GM dealer and for it to continue in the new GM on a long term basis, Debtors, through the Rejection Motion, have seized upon a purported hyper

2

technicality and the unfortunate death of Mr. Quinn, to, in effect, destroy Mount Kisco.

7. Debtors conduct, which already has had an onerous effect upon the business of Mount Kisco should not be countenanced and the Rejection Motion, as it pertains to Mount Kisco, should be denied.

Argument

8. As set forth in the Rejection Motion, as part of the 363 transaction, a rationalization of GM's dealer network was essential for a new GM to be a viable company capable of surviving ever increasing foreign competition and cyclical downturns.

9. As further set forth by the Debtors in the Rejection Motion, in determining which dealers would be retained by the new GM, the Debtors evaluated numerous factors, including, but not limited to, minimum sales thresholds, customer satisfaction indices, working capital needs, profitability, whether a dealership sold non-GM brands, dealership location and other market factors.

10. **Given this extensive and in depth analysis, Debtors determined to retain Mount Kisco as a GM dealer and for it to continue in the new GM on a long term basis.**

11. Specifically, Mount Kisco was offered the Participation Agreement which provided for its dealership franchise agreement to be assumed and assigned to the new GM, subject to certain modifications.

12. At the time that Mount Kisco was offered the Participation Agreement, however, its principal, Adrian Quinn, had passed away. In fact, Mr. Quinn had passed away on or about March 4, 2009. On the very next business day,

3

Mount Kisco' Service Manager, Vincent Laurita, informed and advised GM that Mr. Quinn had passed away.

13. Notwithstanding Mr. Quinn's unfortunate passing, GM **determined to retain Mount Kisco as a GM dealer and for it to continue in the new GM on a long term basis.** In fact, over three months after Mr. Quinn's passing, GM forwarded to Mount Kisco the Participation Agreement which provided for Mount Kisco's dealership franchise agreement to be assumed and assigned to the new GM, subject to certain modifications. A copy of the Participation Agreement, which was forwarded to Mount Kisco on or about June 1, 2009, is attached hereto as Exhibit A.

14. In the Participation Agreement, and with the knowledge that Mr. Quinn had passed away, GM represented that it had identified Mount Kisco "as one of its key dealers for the Chevrolet, Cadillac brands" and "intends to seek bankruptcy court approval to assume [Mount Kisco's] Dealer Agreements for the Chevrolet, Cadillac brands."

15. GM, in the Participation Agreement, further states that Mount Kisco's "selection as a dealer for the Chevrolet, Cadillac brands shows the confidence we have in your dealership being part of the new GM."

16. As evidence that Debtors knew about the unfortunate passing of Mr. Quinn prior to determining to retain Mount Kisco as a GM dealer and for it to continue in the new GM on a long term basis, the Participation Agreement itself is addressed "Attention: Designee of Estate of Adrian W Quinn."

17. Accordingly, and in an attempt to enter into the Participation Agreement and continue with the new GM on a long term basis, Mount Kisco, through its

4

duly elected Secretary, Dennis Roddy, executed the Participation Agreement and properly and timely returned it so that Mount Kisco would be retained as a GM dealer. *See* executed copy of Participation Agreement (Exhibit A).

18. In this respect, GM had also been advised by Mount Kisco's Secretary, Mr. Roddy (since approximately the beginning of June 2009), that the estate of Mr. Quinn (the "Estate") was in the process of having the Surrogate Court appoint a designee on behalf of such Estate.

19. Incredibly, Debtors, in bad faith, who were aware that Mr. Quinn had passed away and that his Estate was in the process of having the Surrogate Court appoint a designee on behalf of such Estate, on or about June 26, 2009, inexplicably advised Mount Kisco in a telephone call (by its representative Mark Valerio) to Mount Kisco's Service Manager, that Mr. Roddy was somehow not authorized to execute the Participation Agreement.

20. Immediately thereafter, Mr. Roddy, on behalf of Mount Kisco left messages for the GM representative, Mr. Valerio, that the Estate was still in the process of having the Surrogate Court appoint a designee on behalf of such Estate. Specifically, and although Mr. Roddy, as the Secretary of Mount Kisco, is authorized to execute the Participation Agreement with Debtors, in a good faith effort to immediately resolve this issue, Mr. Roddy advised the Debtors that the Estate had retained counsel and would be imminently filing, with the applicable Surrogate's Court, a Petition for Letters of Temporary Administration (the "Petition"). A copy of that application (which was filed on June 30, 2009), which seeks an order granting Letters of Administration

upon the estate of Mr. Quinn to Adrianne Ashanti Quinn (Mr. Quinn's daughter), is attached hereto as Exhibit B.

21. The Surrogate Court, however, through no fault of Mount Kisco, has not yet ruled on the Petition, and to date, Adrianne Ashanti Quinn (Mr. Quinn's daughter and the administrative nominee) has not yet received the requested Letters of Administration.

22. Mount Kisco, however, has been advised by the Estate's counsel that the granting of the Petition is imminent and there is no known reason for its denial.

23. Amazingly, and despite having been made aware that Mr. Quinn was deceased, that the Estate had submitted the above-reference Petition to the Surrogate Court, and that the granting of the Petition is imminent, Debtor's, in bad faith, on or about July 6, 2009, served Mount Kisco with the Rejection Motion and advised Mount Kisco, on or about July 10, 2009 in writing (a copy of which is attached as Exhibit C) that Mount Kisco shall have no further rights to act as an authorized GM dealer.

24. Debtors contend in the Rejection Motion that it made good faith effort to gain agreement from "all the Dealers" and that the "Affected Dealers have left the Debtors with no other reasonable business choice than to seek the rejection of the Affected Dealer Agreement." Rejection Motion at paras. 10-11. Nothing, however, could be further from the truth as the Debtors have wrongfully failed to recognize Mr. Roddy's authorization to execute the Participation Agreement on behalf of Mount Kisco.

25. Even more egregious, despite their illusory contention that the Participation Agreement may only be signed by a duly authorized representative of the Estate, Debtors have refused to simply abide the imminent grant, by the Surrogate Court, of Letters of Administration upon the Estate to Adrianne Ashanti Quinn.

26. Simply stated, after conducting an extensive analysis as to which dealers would be retained by the new GM, and determining **to retain Mount Kisco as a GM dealer and for it to continue in the new GM on a long term basis,** Debtors have seized upon a purported hyper technicality and the unfortunate death of Mr. Quinn, to, in effect, destroy Mount Kisco.

27. Debtors conduct, which already has had an onerous effect upon the business of Mount Kisco should not be countenanced.

28. WHEREFORE, MOUNT KISCO respectfully requests that the Court deny the Rejection Motion as it pertains to Mount Kisco and grant such other and further relief as is just and proper.

Dated: New York, New York
July 28, 2009

BELLAVIA GENTILE & ASSOCIATES, LLP
Counsel for Mount Kisco Chevrolet
Cadillac Hummer, Inc.

By: Leonard A. Bellavia, Esq. (LB 0780)

200 Old Country Road – Suite 400
Mineola, New York 11530
(516) 873-3000