E
X
H
I
B
I
T

F-1

# EXHIBIT   F-1



General Motors Company
Dealer Business Planning Group
Mail Code 482-A08-C66
100 GM Renaissance Center
Detroit, MI 48265-1000

DELIVERY VIA FEDERAL EXPRESS

PERSONAL & CONFIDENTIAL

July 10, 2009

Forrest Pontiac-Buick-GMC Truck, Inc.
2408 N Main
Cleburne, TX 76033

Attention: Mr. Charles Forrest

We ("New GM") are writing you as the purchaser of substantially all of the assets of General Motors Corporation ("Old GM"). You should have received recently a motion (the "Rejection Motion") filed with the United States Bankruptcy Court by Old GM earlier this week which seeks the Bankruptcy Court's approval to reject the Buick, Pontiac, GMC Dealer Sales and Service Agreements and Ancillary Agreements (collectively, the "Dealer Agreement") in effect between Forrest Pontiac-Buick-GMC Truck, Inc. and Old GM, now known as Motors Liquidation Holdings.

The Rejection Motion was necessary because Old GM can no longer perform under your Dealer Agreement as a result of the sale transaction. For example, Old GM no longer owns the GM trademarks. Accordingly, Forrest Pontiac-Buick-GMC Truck, Inc. is no longer authorized to use any of GM's trademarks or service marks as outlined in Article 17.5 of the Dealer Agreement and all use of GM/Divisional signage must be discontinued effective immediately. Additionally, you must discontinue the use of all advertising, Internet web sites, stationary, or other printed material that contains or relates to the trade names or trademarks of GM or any of its divisions. Forrest Pontiac-Buick-GMC Truck, Inc. will be contacted within the next 30 days regarding the removal of any signage it leases from GMDI.

Therefore, we wanted to inform you that as a result of the sale, Forrest Pontiac-Buick-GMC Truck, Inc. shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer of GM automobiles. However, being mindful of the impact the Rejection Motion will have on you, we wish to offer you the following accommodations for which New GM otherwise has no legal obligation:

- New GM will continue to administer the close-out of ordinary normal course open account activity under the Dealer Agreement. In that regard, utilizing the systems currently in place, New GM will make on Old GM's behalf payments arising in the ordinary course including warranty, sales incentives, vehicle holdback, wholesale floorplan, and marketing stimulus program payments accruing during the period of June 1, 2009 through July 9, 2009.

- In addition, at the option of New GM, New GM may make payments arising in the ordinary course including warranty, sales incentives, vehicle holdback, wholesale

floorplan, and marketing stimulus program payments accruing during the period prior to June 1, 2009.

These accommodations are conditioned upon the following:

- **Warranty Claims:** Dealership submissions for warranty repairs that have a repair order date prior to July 10, 2009 must be submitted electronically to New GM for processing by no later than 5:00pm EDT July 24, 2009. New GM will not pay for any warranty repairs performed on and after July 10, 2009.

- **Incentive Payments:** Dealership submissions for vehicle incentive payments on vehicles reported delivered by Dealer to Old GM prior to July 10, 2009 must be submitted electronically to GM for processing by no later than 5:00pm EDT July 24, 2009. New GM will not honor any of Old GM's incentive payment obligations for vehicles reported delivered by Dealer on and after July 10, 2009.

- **GM Communication Equipment:** The GM Interactive Distance Learning Equipment must be disposed of by the dealership in accordance with local disposal ordinances. If you have any questions about this equipment, please contact your Dealer Network Coordinator at (888) 748-2687, (prompts Distance Learning Equipment, move/add/change, then enter your area code).

This letter shall also inform you that by no later than July 25, 2009, all GlobalConnect user IDs associated with your BAC will be DE-ACTIVATED with the EXCEPTION of your Partner Security Coordinator's (PSC) ID. Only the PSC's ID will remain active. If there are any non-PSC IDs which need to remain active for business purposes (eg. submitting warranty claims, operating reports, etc.), your PSC will need to RE-ACTIVATE those particular IDs.

Lastly, in order to be able to effectively communicate and correspond with you after July 10, 2009, you must complete the attached "Post Rejection Notification" form and fax it to the New GM Dealer Business Planning Group at the number listed on the form.

Very truly yours,

General Motors Company

Attachment

 General Motors

## POST REJECTION NOTIFICATION

### Rejected Dealer Company Information

Dealership Name: _____    BAC: _____

Physical Street Address: _____

City: _____    State: _____    Zip: _____

Phone Number: _____

---

### Rejected Dealer Operator Contact Information

(Please provide contact information where GM can reach the Dealer Operator
and an Alternate Contact for the foreseeable future)

**Dealer Operator Name:** _____

Contact street address same as the dealership address shown above? ☐ Y ☐ N

Street Address: _____

City: _____    State: _____ Zip: _____

Contact phone number same as the dealership phone number shown above? ☐ Y ☐ N

Phone Number: _____    Alternate Phone: _____

Email Address: _____

**Alternate Contact Name:** _____

Contact street address same as the dealership address shown above? ☐ Y ☐ N

Street Address: _____

City: _____    State: _____ Zip: _____

Contact phone number same as the dealership phone number shown above? ☐ Y ☐ N

Phone Number: _____    Alternate Phone: _____

Email Address: _____

**DEALER**: *Fax to your Dealer Business Planning Analyst in the GM Dealer Business Planning Group at
313-667-5461/5462*

E
X
H
I
B
I
T

F-2

# EXHIBIT  F-2



General Motors Company
Dealer Business Planning Group
Mail Code 482-A06-C66
100 GM Renaissance Center
Detroit, MI 48265-1000

DELIVERY VIA FEDERAL EXPRESS 7977 5227 6616

PERSONAL & CONFIDENTIAL

July 10, 2009

Forrest Chevrolet-Cadillac, Inc.
2400 N Main
Cleburne, TX 76033

Attention: Mr. Charles Forrest

We ("New GM") are writing you as the purchaser of substantially all of the assets of General Motors Corporation ("Old GM"). You should have received recently a motion (the "Rejection Motion") filed with the United States Bankruptcy Court by Old GM earlier this week which seeks the Bankruptcy Court's approval to reject the Chevrolet, Cadillac Dealer Sales and Service Agreements and Ancillary Agreements (collectively, the "Dealer Agreement") in effect between Forrest Chevrolet-Cadillac, Inc. and Old GM, now known as Motors Liquidation Holdings.

The Rejection Motion was necessary because Old GM can no longer perform under your Dealer Agreement as a result of the sale transaction. For example, Old GM no longer owns the GM trademarks. Accordingly, Forrest Chevrolet-Cadillac, Inc. is no longer authorized to use any of GM's trademarks or service marks as outlined in Article 17.5 of the Dealer Agreement and all use of GM/Divisional signage must be discontinued effective immediately. Additionally, you must discontinue the use of all advertising, Internet web sites, stationary, or other printed material that contains or relates to the trade names or trademarks of GM or any of its divisions. Forrest Chevrolet-Cadillac, Inc. will be contacted within the next 30 days regarding the removal of any signage it leases from GMDI.

Therefore, we wanted to inform you that as a result of the sale, Forrest Chevrolet-Cadillac, Inc. shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer of GM automobiles. However, being mindful of the impact the Rejection Motion will have on you, we wish to offer you the following accommodations for which New GM otherwise has no legal obligation:

- New GM will continue to administer the close-out of ordinary normal course open account activity under the Dealer Agreement. In that regard, utilizing the systems currently in place, New GM will make on Old GM's behalf payments arising in the ordinary course including warranty, sales incentives, vehicle holdback, wholesale floorplan, and marketing stimulus program payments accruing during the period of June 1, 2009 through July 9, 2009.

- In addition, at the option of New GM, New GM may make payments arising in the ordinary course including warranty, sales incentives, vehicle holdback, wholesale floorplan, and marketing stimulus program payments accruing during the period prior to June 1, 2009.

These accommodations are conditioned upon the following:

- **Warranty Claims:** Dealership submissions for warranty repairs that have a repair order date prior to July 10, 2009 must be submitted electronically to New GM for processing by no later than 5:00pm EDT July 24, 2009. New GM will not pay for any warranty repairs performed on and after July 10, 2009.

- **Incentive Payments:** Dealership submissions for vehicle incentive payments on vehicles reported delivered by Dealer to Old GM prior to July 10, 2009 must be submitted electronically to GM for processing by no later than 5:00pm EDT July 24, 2009. New GM will not honor any of Old GM's incentive payment obligations for vehicles reported delivered by Dealer on and after July 10, 2009.

- **GM Communication Equipment:** The GM Interactive Distance Learning Equipment must be disposed of by the dealership in accordance with local disposal ordinances. If you have any questions about this equipment, please contact your Dealer Network Coordinator at (888) 748-2687, (prompts Distance Learning Equipment, move/add/change, then enter your area code).

This letter shall also inform you that by no later than July 25, 2009, all GlobalConnect user IDs associated with your BAC will be DE-ACTIVATED with the EXCEPTION of your Partner Security Coordinator's (PSC) ID. Only the PSC's ID will remain active. If there are any non-PSC IDs which need to remain active for business purposes (eg. submitting warranty claims, operating reports, etc.), your PSC will need to RE-ACTIVATE those particular IDs.

Lastly, in order to be able to effectively communicate and correspond with you after July 10, 2009, you must complete the attached "Post Rejection Notification" form and fax it to the New GM Dealer Business Planning Group at the number listed on the form.

Very truly yours,

General Motors Company

Attachment



**General Motors**

## POST REJECTION NOTIFICATION

### Rejected Dealer Company Information

Dealership Name: _____   BAC: _____

Physical Street Address: _____

City: _____   State: _____   Zip: _____

Phone Number: _____

---

### Rejected Dealer Operator Contact Information

(Please provide contact information where GM can reach the Dealer Operator
and an Alternate Contact for the foreseeable future)

**Dealer Operator Name:** _____

Contact street address same as the dealership address shown above? ☐ Y ☐ N

Street Address: _____

City: _____   State: _____   Zip: _____

Contact phone number same as the dealership phone number shown above? ☐ Y ☐ N

Phone Number: _____   Alternate Phone: _____

Email Address: _____

**Alternate Contact Name:** _____

Contact street address same as the dealership address shown above? ☐ Y ☐ N

Street Address: _____

City: _____   State: _____   Zip: _____

Contact phone number same as the dealership phone number shown above? ☐ Y ☐ N

Phone Number: _____   Alternate Phone: _____

Email Address: _____

**DEALER**: *Fax to your Dealer Business Planning Analyst in the GM Dealer Business Planning Group at*
*313-667-5461/5462*

E
X
H
I
B
I
T

G

**EXHIBIT  G**

 **MOTORS HOLDING**

July 15, 2008

Mr Michael Forrest
Forrest Chevrolet Cadillac, Inc.         &         Forrest Pontiac Buick GMC Truck, Inc.
2400 N. Main Street                                   2408 N. Main Street
Cleburne TX                                              Cleburne TX

Dear Mr. Forrest:

Attached please find conditional term sheets for the purchase of certain assets of the above named corporate entities. As noted these term sheets are meant to provide a basic understanding of key purchase provisions.

As we discussed, GM and Dealer understand and acknowledge that all discussions and negotiations are to be considered preliminary and that no agreement between the parties shall be deemed to exist or bind either party unless and until final written documents incorporating the full agreement of the parties have been prepared, have received all the necessary management approvals, and have been executed by authorized representatives of the parties. In order to be binding and effective on GM, any agreement must be in writing and executed by the DNPI Regional Director or the DND Regional Manager, and by the DNPI Finance Director.

Per your request, I have also provided copies of these documents to Mr. Eddie McGinnis as your agent. Please feel free or have Mr. McGinnis contact me should there be any questions.

Sincerely

W. J. Reineck
Business Development Manager

## BASIC TERM SHEET

IT IS UNDERSTOOD THAT THIS TERM SHEET OUTLINES THE BASIC TERMS UPON WHICH THE PARTIES ARE WILLING TO PROCEED WITH THE NEGOTIATION OF A FORMAL AND DEFINITIVE AGREEMENT TO ACQUIRE THE BUSINESS ASSETS [AND PROPERTY] OF FORREST CHEVROLET CADILLAC, INC. DOES NOT ADDRESS ALL OF THE MATERIAL MATTERS TO BE CONTAINED IN THE DEFINITIVE AGREEMENTS, DOES NOT CREATE LEGALLY BINDING OR ENFORCEABLE OBLIGATIONS OF EITHER PARTY, AND THAT, IF SELLER AND BUYER REACH AGREEMENT, ADDITIONAL MATTERS WILL BE REFLECTED IN THE FINAL AGREEMENTS. EITHER PARTY MAY TERMINATE NEGOTIATIONS AT ANY TIME IN ITS SOLE DISCRETION. THE FINAL AGREEMENTS, IF ANY, WILL CONTAIN REPRESENTATIONS, WARRANTIES, COVENANTS AND CONDITIONS NORMALLY ASSOCIATED WITH TRANSACTIONS OF THIS NATURE OR OTHERWISE AGREED TO BY THE PARTIES.

1.   **ASSETS:**

- **Demonstrators** – No more than (5) 2008 demonstrators at invoice (including freight, handling and dealer installed accessories at net replacement cost), less holdback, dealer advertising, floor plan reimbursement credits, factory rebates, year-end allowances or price reductions, and a $.25 mileage charge for each mile.
- **New Vehicles** – All 2008 & 2009 Chevrolet and Cadillac cars and trucks in stock upon closing date, at Seller's invoice (including freight, handling and dealer installed accessories at net replacement cost) less holdback, dealer advertising, floor plan reimbursement credits, factory rebates, year-end allowances or price reductions.
- **Used Vehicles** – Used vehicles, loaner vehicles, driver training vehicles, company used vehicles and rental vehicles at their actual wholesale value as agreed upon by Buyer and Seller.
- **Parts and Accessories** – Genuine GM Parts (i) in their original, undamaged packages, (ii) in stock, and (iii) not damaged, obsolete, superseded or discontinued at net replacement cost on GM's most recent Price Schedule, less 3.75%. Subject to an independent inventory whose cost shall be split equally between buyer and seller.
- **Miscellaneous Inventories** – Normal 30 days' inventory (other than those items described above) supply at net replacement cost. Inventoried by an independent parts inventory service.
- **Fixed Assets** – Machinery, shop equipment, parts and accessories equipment, furniture, fixtures, small tools, signs, service and cleaning supplies and office and shop supplies at an appraised value of "Fair Market Value" as determined by an independent appraiser whose cost will be split equally between buyer and seller.
- **New Vehicle Deposits** – All unfilled contracts for the sale of cars and/or trucks approved by Buyer will be assigned to Buyer.
- **Goodwill** – Goodwill and intangible assets at $ 1,250,000 (one million two hundred fifty thousand) Payment will be paid in full or partial by General Motors Corporation in consideration and execution of a "Termination and Release Agreement" similar in form to the attached draft copy.
- **Assumed Contracts** - Normal and reasonable contracts required for the course of business. Subject to approval of buyer.
- **Business Records** -All business records, names, telephone numbers, e-mail address, websites and assets of the business not specifically described above or excluded will be transferred to Buyer at no additional charge.

2.   **REAL PROPERTY (Lease):**

- **Address** – 2400 N. Main St. Cleburne TX
- **Acreage** – approximately 10 acres
- **Rent** – $ 32,000 per month triple net terms
- **Term** – (3) three years
- **Renewal Options** – (2) Two renewals of three years each
- **Purchase Option** – At current MAI appraised value at time of exercise
- **Landlords Put Option** - Landlord may terminate the lease upon 180 days written notice to tenant.
- **Conditions** - Subject to a satisfactory appraisal, environmental inspection, and building mechanical inspections.

3.   **CLOSING:** At a time mutually agreeable to buyer and seller

READ AND ACKNOWLEDGED THIS 15th. DAY OF July, 2008:

DEALER:                                                  GM:

Forrest Chevrolet Cadillac, Inc.


By:_____          By:_____
Title: President                                      Title: (Business Development Manager

{#00676929.4 07131-0085 2/25/05  09:23 AM}

E
X
H
I
B
I
T

H

# EXHIBIT H

December 15, 2008

Mrs. Martha Forrest
Mr. Michael Forrest
2400 North Main Street
Cleburne, Texas 76033

RE: LETTER OF INTENT TO PURCHASE
    FORREST CHEVROLET – CADILLAC – BUICK – PONTIAC – GMC TRUCKS

Dear Mrs. Forrest and Michael;

Please accept this as a formal offer to purchase the assets of Forrest Chevrolet - Cadillac, Inc. and Forrest Buick – Pontiac & GMC, Inc. under the following terms and conditions.

1)    All new vehicle inventory of 2008 and 2009 Chevrolet-Cadillac-Buick-Pontiac and GMC model cars and trucks shall be purchased at the dealer invoice cost of such vehicles less any holdback, less any advertising allowances, less any interest credits, less any incentives that are due and payable on said vehicles plus any additional equipment currently installed at dealer cost less any deductible items that have been removed from said vehicle.

Demonstrators of new 2008 and 2009 General Motors model cars and trucks with odometer reading of 6000 miles or less, shall be purchased as new vehicles at a price as determined above. Any vehicle that has more than 6000 miles but less than 7500 miles would have a penalty of thirty cents (.30) per mile for every mile above 6000. Any vehicle in excess of 7500 miles shall be purchased as a used vehicle.

2)    All new, returnable, non obsolete Genuine GM parts and accessories shall be purchased at the price listed in the most current price publication net of any discounts received or to be received by the Seller.

All new, returnable, non-obsolete Jobber parts and accessories shall be purchased at Seller's verifiable cost net of any discounts received or to be received by Seller.

Seller shall assign the "return rights" to Buyer.

Buyer is not obligated to purchase any obsolete, used, damaged or remanufactured inventory. Physical inventory verifications shall be ascertained as soon as practical during the "Management Agreement". Expenses associated with the performance of physical inventory verifications shall be borne equally between the Buyer and Seller.

3)    Used vehicles shall be purchased at a mutually agreed price by Buyer and Seller. If the value is not agreed upon, Seller shall retain the vehicles.

1

4)      Furniture and fixtures shall be purchased at an Appraised Valuation. The cost of the appraisal shall be borne equally by Buyer and Seller.

5)      Existing leases shall be assumed by Buyer on equipment necessary to operate the business.

6)      Buyer shall purchase from Seller the Real Property located at 2406 North Main Street in Cleburne, Texas for $3,600,000.

7)      This entire transaction is subject to Buyer being approved by the General Motors Divisions, General Motors Acceptance Corporation, approval of financing on said real property and obtaining a Dealer License in the state of Texas.

8)      Broker (Eddie McGinnis) shall be paid his fee at Closing pursuant to a separate agreement between Broker and Seller.

9)      Upon execution of this Letter Of Intent to Purchase, Buyer will originate a Buy-Sell agreement for execution and close on real estate as soon as possible following approval by General Motors.

10)     An Asset Purchase Agreement will be completed with thirty (30) days from the date this Intent to Purchase is signed by Buyer and Seller.

11)     Following the date of execution hereof, at specific times to be determined by Seller in its sole discretion, Seller shall afford to the Buyer and its authorized representatives, free and full access to the properties, books and records of the dealership during normal business hours in order to permit the buyer to make such investigation of the business, properties and operations of the dealership as the Buyer may deem necessary or desirable. Until consummation of the transaction contemplated hereby, the Buyer will hold in confidence all information obtained with respect to the dealership and, except as required by law, will reveal such information to any person other than those to whom it may be necessary in order to finance or consummate the transaction. In the event the transaction contemplated hereby is no consummated, any information furnished to, or obtained by or through any party hereto as a result of its investigations or otherwise in connection with the transaction contemplated hereby, shall be treated as confidential information to the extent it is not otherwise public or generally available to the public. In the event the transaction is not consummated, all such information and all copies thereof shall be returned upon request.

12)     Seller agrees that prior to the earlier of the termination of this letter agreement or March 1, 2009, neither Seller nor its Principals will enter into any arrangement or negotiate or otherwise deal with any person or entity for the purpose of any such sale or disposition other than the Buyer.

13)     Buyer shall purchase from Seller the plat of land located north of the "Pontiac" dealership, which consists of three (3) acres (more or less) for $2.25 per square foot. The

2

square footage will be determined from a survey, the cost of which will be borne by the seller.

14)    This Letter of Intent is contingent on approval from General Motors allowing the five franchises to be combined using the "Pontiac" facility.


### BUYER:

_____          December    , 2008
        TOMMY MANUEL                              Date


### SELLER:

_____          December    , 2008
     MRS. MARTHA FORREST                       Date


_____          December    , 2008
        MICHAEL FORREST                          Date


3

E
X
H
I
B
I
T

I

# EXHIBIT I

Mrs. Martha Forrest
Mr. Michael Forrest
2400 North Main Street
Cleburne, Texas 76033

RE: LETTER OF INTENT TO PURCHASE
   FORREST CHEVROLET – CADILLAC – BUICK – PONTIAC – GMC TRUCKS

Dear Mrs. Forrest and Michael;

Please accept this as a formal offer to purchase the assets of Forrest Chevrolet - Cadillac, Inc. and Forrest Buick – Pontiac & GMC, Inc. under the following terms and conditions.

1)    All new vehicle inventory of 2008 and 2009 Chevrolet-Cadillac-Buick-Pontiac and GMC model cars and trucks shall be purchased at the dealer invoice cost of such vehicles less any holdback, less any advertising allowances, less any interest credits, less any incentives that are due and payable on said vehicles plus any additional equipment currently installed at dealer cost less any deductible items that have been removed from said vehicle.

Demonstrators of new 2008 and 2009 General Motors model cars and trucks with odometer reading of 6000 miles or less, shall be purchased as new vehicles at a price as determined above. Any vehicle that has more than 6000 miles but less than 7500 miles would have a penalty of thirty cents (.30) per mile for every mile above 6000. Any vehicle in excess of 7500 miles shall be purchased as a used vehicle.

2)    All new, returnable, non obsolete Genuine GM parts and accessories shall be purchased at the price listed in the most current price publication net of any discounts received or to be received by the Seller.

All new, returnable, non-obsolete Jobber parts and accessories shall be purchased at Seller's verifiable cost net of any discounts received or to be received by Seller.

Seller shall assign the "return rights" to Buyer.

Buyer is not obligated to purchase any obsolete, used, damaged or remanufactured inventory. Physical inventory verifications shall be ascertained as soon as practical during the "Management Agreement". Expenses associated with the performance of physical inventory verifications shall be borne equally between the Buyer and Seller.

3)    Used vehicles shall not be included in the Buy Sell Agreement.

4)    Furniture, fixtures and fixed assets shall be purchased at an Appraised Valuation. The cost of the appraisal shall be borne equally by Buyer and Seller.

1

5)    Existing leases shall be assumed by Buyer on equipment necessary to operate the business.

6)    Buyer shall purchase from Seller the Real Property located at 2406 North Main Street in Cleburne, Texas for $4,000,000

7)    Buyer shall pay seller $800,000 for the goodwill of the business.

8)    Buyer agrees to pay $206,625 for the Fixed Assets of the body shop subject to inspection.

9)    This entire transaction is subject to Buyer being approved by the General Motors Divisions, General Motors Acceptance Corporation, approval of financing on said real property and obtaining a Dealer License in the state of Texas.

10)    Broker (Eddie McGinnis) shall be paid his fee at Closing pursuant to a separate agreement between Broker and Seller.

11)    Upon execution of this Letter Of Intent to Purchase, Buyer will originate a Buy-Sell agreement for execution and close on real estate as soon as possible following approval by General Motors.

12)    An Asset Purchase Agreement will be completed with thirty (30) days from the date this Intent to Purchase is signed by Buyer and Seller.

13)    Following the date of execution hereof, at specific times to be determined by Seller in its sole discretion, Seller shall afford to the Buyer and its authorized representatives, free and full access to the properties, books and records of the dealership during normal business hours in order to permit the buyer to make such investigation of the business, properties and operations of the dealership as the Buyer may deem necessary or desirable. Until consummation of the transaction contemplated hereby, the Buyer will hold in confidence all information obtained with respect to the dealership and, except as required by law, will reveal such information to any person other than those to whom it may be necessary in order to finance or consummate the transaction. In the event the transaction contemplated hereby is no consummated, any information furnished to, or obtained by or through any party hereto as a result of its investigations or otherwise in connection with the transaction contemplated hereby, shall be treated as confidential information to the extent it is not otherwise public or generally available to the public. In the event the transaction is not consummated, all such information and all copies thereof shall be returned upon request.

14)    Seller agrees that prior to the earlier of the termination of this letter agreement or March 1, 2009, neither Seller nor its Principals will enter into any arrangement or negotiate or otherwise deal with any person or entity for the purpose of any such sale or disposition other than the Buyer.

2

15)    Buyer has the "Right of First Refusal" regarding the sell of the two plus acres located north of the Buick, Pontiac & GMC facility.

16)    Buyer reserves the right to retain the "Forrest" name to be used in sales, service and marketing purposes.

17)    This Letter of Intent is contingent on approval from General Motors allowing the five franchises to be combined using the "Pontiac" facility.

**BUYER:**

_____        January_____, 2009
Matt Johnson                                           Date

**SELLER:**

_____        January_____, 2009
MRS. MARTHA FORREST                          Date

_____        January_____, 2009
MICHAEL FORREST                                 Date

3