Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :          **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY, *et al.*,**                   :          **09-50026 (REG)**
          **f/k/a General Motors Corp., *et al*.**          :
                                                            :          **(Jointly Administered)**
                              **Debtors.**                  :
                                                            :
------------------------------------------------------------x

**NOTICE OF HEARING ON**
**MOTION OF DEBTORS FOR ENTRY OF**
**AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (A)**
**ESTABLISHING PROCEDURES FOR THE DISPOSITION OF**
***DE MINIMIS* ASSETS, AND (B) AUTHORIZING THE DEBTORS TO**
**(i) PAY RELATED FEES, AND (ii) ASSUME, ASSUME AND ASSIGN, OR**
**REJECT RELATED EXECUTORY CONTRACTS OR UNEXPIRED LEASES**

          PLEASE TAKE NOTICE that upon the annexed Motion, dated July 29, 2009 (the

"**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), for entry of an order, pursuant to sections 105(a) and 363 of title

11 of the United States Code establishing procedures for the sale of *de minimis* assets, whether

by private sale or auction, including the payment of related brokers' commissions and auctioneer

fees and the assumption, assumption and assignment, or rejection of related executory contracts

or unexpired leases, as more fully set forth in the Motion, a hearing will be held before the

Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on **August 18**, **2009 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel

may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

**www.nysb.uscourts.gov**) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

**www.nysb.uscourts.gov**), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company (f/k/a General Motors Corporation), 300

Renaissance Center, Detroit, Michigan 48265 (Attn: Ted Stenger); (iii) General Motors

Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo,

Esq.)  (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of

the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J.

Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue

NW, Room 2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (vi) Vedder Price,

P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New

York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin

Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177

Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq.,

Thomas Moers Mayer, Esq., Adam C. Rogoff, Esq., and Gordon Z. Novod, Esq.); (viii) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street,

21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); and (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), so as to be received no later than

**August 13**, **2009 at 4:00 p.m. (Eastern Time),** (the "**Objection Deadline**").

      If no objections are timely filed and served with respect to the Motion, the

Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order

substantially in the form of the proposed order annexed to the Motion, which order may be

entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
      July 29, 2009

                           */s/ Stephen Karotkin*               
                           Harvey R. Miller
                           Stephen Karotkin
                           Joseph H. Smolinsky

                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153
                           Telephone: (212) 310-8000
                           Facsimile: (212) 310-8007

                           Attorneys for Debtors
                           and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                         :
In re                                    :        Chapter 11 Case No.
                                         :
MOTORS LIQUIDATION COMPANY, et al.,      :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                         :        (Jointly Administered)
                    Debtors.             :
                                         :
-------------------------------------------------------------x
```

## MOTION OF DEBTORS FOR ENTRY OF
## AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (A)
## ESTABLISHING PROCEDURES FOR THE DISPOSITION OF
## *DE MINIMIS* ASSETS, AND (B) AUTHORIZING THE DEBTORS TO
## (i) PAY RELATED FEES, AND (ii) ASSUME, ASSUME AND ASSIGN, OR
## <u>REJECT RELATED EXECUTORY CONTRACTS OR UNEXPIRED LEASES</u>

## Table of Contents

**RELIEF REQUESTED**............................................................................................................1

**JURISDICTION** ...................................................................................................................1

**BACKGROUND** ..................................................................................................................1

**THE PROPOSED *DE MINIMIS* SALE PROCEDURES** ................................................3

   **A.**   SALE PRICE LESS THAN OR EQUAL TO $2 MILLION.................................................3

   **B.**   SALE PRICE GREATER THAN $2 MILLION BUT LESS THAN OR EQUAL TO $15 MILLION..................................................................................................................4

   **C.**   EFFECTS OF SALE .........................................................................................7

   **D.**   THE QUARTERLY REPORT ..............................................................................9

**BASIS FOR RELIEF REQUESTED** .................................................................................9

   **A.**   THE PROPOSED DE MINIMIS SALE PROCEDURES ARE AN EXERCISE OF THE DEBTORS' SOUND BUSINESS JUDGMENT ..........................................................10

   **B.**   THE PROPOSED DE MINIMIS SALE PROCEDURES SATISFY THE NOTICE AND HEARING REQUIREMENTS OF SECTION 363(B)(1) OF THE BANKRUPTCY CODE .............12

   **C.**   BROKER COMMISSIONS AND AUCTION FEES SHOULD BE APPROVED ...................13

   **D.**   THE PROPOSED DE MINIMIS SALE PROCEDURES SATISFY THE REQUIREMENTS OF SECTION 363(F) OF THE BANKRUPTCY CODE TO PERMIT THE DEBTORS TO SELL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES .................14

   **E.**   PURCHASERS ARE ENTITLED TO GOOD FAITH FINDING.........................................15

   **F.**   THE ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF RELATED EXECUTORY CONTRACTS OR UNEXPIRED LEASES SHOULD BE APPROVED.......................16

   **G.**   SIMILAR PROCEDURES HAVE BEEN APPROVED IN OTHER CASES........................17

**NOTICE** ..........................................................................................................................**19**

## **Table of Authorities**

## **Cases**

*Citicorp Homeowners Servs. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) .............. 14

*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)..................................................................................................... 10

*COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 382 (2d. Cir. 2008)........................................................................................................................ 16

*Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994)......................................................................................................................... 14

*In re Charter Commc'ns, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009) ....................................................................................................................... 17, 18

*In re Dundee Equity Corp.*, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992)................. 14

*In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) ........................................ 14

*In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).................................................................................................................. 10

*In re Lyondell Chemical Company, et al.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Mar. 12, 2009) .............................................................................................................. 18, 19

*In re Old Carco LLC (f/k/a Chrysler LLC), et al.*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. June 18, 2009)................................................................................................ 17, 18

*In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)........................................ 15

*In re Smart World Tech. LLC*, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ......................................... 14

*Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997)................ 15

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)............................................................. 16

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994) ......................................... 16

*Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)............................................................... 10

**<u>Statutes</u>**

11 U.S.C. § 101(31) ................................................................................................... 6

11 U.S.C. § 102 ........................................................................................................ 12

11 U.S.C. § 105 ........................................................................................... 1, 7, 10, 12

11 U.S.C. § 1102 ...................................................................................................... 12

11 U.S.C. § 361 .......................................................................................................... 7

11 U.S.C. § 362 .......................................................................................................... 7

11 U.S.C. § 363 ....................................................................................................... 1, 7

11 U.S.C. § 363(b) ......................................................................................... 2, 5, 10, 12

11 U.S.C. § 363(f) ......................................................................................... 3, 8, 10, 14, 6

11 U.S.C. § 363(m) ................................................................................................ 9, 15

11 U.S.C. § 364 .......................................................................................................... 7

11 U.S.C. § 365 ................................................................................................ 5, 16, 17

11 U.S.C. § 507 .......................................................................................................... 7

28 U.S.C. § 1334 ........................................................................................................ 1

28 U.S.C. § 157 .......................................................................................................... 1

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), respectfully represent:

## Relief Requested

1.     The Debtors seek authority, pursuant to sections 105 and 363 of title 11 of

the United States Code (the "**Bankruptcy Code**"),

(i)     to sell certain assets with relatively *de minimis* value pursuant to the *De Minimis* Sale Procedures (as defined below), whether by private sale or by auction,

(ii)    to pay reasonable commissions and fees to third-party sales agents or auctioneers in connection with such sales, and

(iii)   to assume, assume and assign, or reject executory contracts and unexpired leases related to the *de minimis* assets, if any.

## Jurisdiction

2.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

3.     Having completed the sale of substantially all of their assets, the Debtors

now are in the process of liquidating their remaining assets and intend to propose a liquidating

chapter 11 plan in an expeditious manner.  Certain of those assets are of relatively *de minimis*

value vis-à-vis the aggregate value of the Debtors' remaining assets.  The assets of *de minimis*

*value* consist primarily of real property, including, *inter alia*, residential property, vacant lots,

and warehouses, as well as personal property remaining on such real property parcels.  While

some of the property they own is being used by General Motors Company, the purchaser of substantially all of their assets, for a period of time pursuant to the terms of the purchase and related agreements, much of the property is vacant and is of no use to the Debtors.  As the Debtors' obligations to provide use of certain of their property to General Motors Company cease, the Debtors will need to dispose of that property as well.  None of the property the Debtors' own is otherwise essential to their ongoing operations.

4.       The Debtors anticipate that they will sell certain of their *de minimis* assets by private sale and others by auction, as they may determine in their business judgment to maximize the overall value to be realized from the sale of each particular asset, after taking into account the costs of various alternatives.

5.       Many *de minimis* asset sales may constitute transactions outside of the ordinary course of the Debtors' businesses, thereby requiring this Court's approval pursuant to section 363(b)(1) of the Bankruptcy Code.  Obtaining Court approval with respect to each *de minimis* asset sale, however, would be administratively burdensome to this Court and costly for the Debtors' estates.  In some cases, the cost and delay associated with seeking individual Court approval of a sale could eliminate, or substantially undermine, the economic benefit of the transaction to the estates.  Further, in certain instances, the inability to consummate an asset sale quickly may hinder or eliminate an otherwise advantageous but time-sensitive opportunity.  The Debtors are mindful of their duties to maximize the value of the estates and are working to obtain the highest consideration for all of their assets, but are concerned that unnecessary delay in, and the administrative cost of, Court approval for each sale would, in fact, impair the Debtors' ability to maximize value.

6.      To alleviate the cost and delay of having to file a separate motion with respect to each proposed sale, the Debtors hereby seek approval of the procedures described herein (the "*De Minimis* **Sale Procedures**").  These *De Minimis* Sale Procedures are intended to streamline the process for obtaining Court approval for the sale of assets within specified economic parameters.  The Debtors propose the *De Minimis* Sale Procedures to facilitate a more expeditious and cost-effective review by interested parties of sales involving smaller, less-valuable, non-core assets than would otherwise be available absent the procedures.

## The Proposed *De Minimis* Sale Procedures

7.      The proposed *De Minimis* Sale Procedures will only apply to asset sales involving, in each case, $15 million or less in total consideration per asset, as measured by the amount of cash and other consideration the Debtors are to receive in respect of the sale of such asset.  Pursuant to the *De Minimis* Sale Procedures, the Debtors will be permitted to sell assets that are encumbered by liens or encumbrances only if the transaction satisfies at least one of the five (5) enumerated requirements of section 363(f) of the Bankruptcy Code.

A.      Sale Price Less than or Equal to $2 Million

8.      The Debtors hereby seek approval to sell any asset for total consideration of a value that is less than or equal to $2 million (a "**Non-Noticed** *De Minimis* **Sale**") without further Court approval, and without providing notice of the Non-Noticed *De Minimis* Sale to any party, whether by private sale or by auction.  The Debtors also request authority to take any actions that are reasonable and necessary to close the Non-Noticed *De Minimis* Sale and obtain the sale proceeds, including paying reasonable commissions and fees to third-party sale agents or auctioneers in connection with the Non-Noticed *De Minimis* Sale.

9.      If the Debtors seek to assume, assume and assign, or reject executory contracts or unexpired leases relating to and in connection with an asset sale that would otherwise qualify as a Non-Noticed *De Minimis* Sale, the Debtors will seek to sell those assets pursuant to the Noticed De Minimis Sale procedures (as defined below).  Moreover, if the Debtors seek to sell assets encumbered by liens (other than assets encumbered solely by liens granted in favor of the DIP Lenders, as defined and described in more detail below) in connection with an asset sale that would otherwise qualify as a Non-Noticed *De Minimis* Sale, the Debtors will seek to obtain the consent of the lienholder.  If the Debtors are unable to obtain the consent of the lienholder, the Debtors may seek to sell the encumbered assets pursuant to the Noticed *De Minimis* Sale procedures.

B.    Sale Price Greater than $2 million but Less than or Equal to $15 Million

10.      The Debtors hereby seek approval to sell any asset for total consideration of a value that is greater than $2 million but less than or equal to $15 million (a "**Noticed *De Minimis* Sale**") without further Court approval, after providing notice of the Noticed *De Minimis* Sale to certain parties in accordance with the following procedures.

11.      If the Debtors propose a Noticed *De Minimis* Sale, the Debtors will serve a notice of such proposed sale (a "**Sale Notice**") by facsimile, email, overnight delivery, hand delivery, or first class mail on the following parties:

(i)      the United States Trustee for the Southern District of New York (the "**U.S. Trustee**");

(ii)     counsel for the statutory committee of unsecured creditors (the "**Creditors' Committee**");

(iii)    counsel for the lenders under that certain Amended and Restated Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of July 10, 2009, among Motors Liquidation Company

(f/k/a General Motors Corporation), as Borrower, the Guarantors party thereto, and the Lenders party thereto from time to time;

(iv)   the state Attorney General for the state in which any real property to be sold is located;

(v)   all known parties holding or asserting liens or encumbrances on the assets that are the subject of the proposed Noticed *De Minimis* Sale and their respective counsel, if known; and

(vi)   the counterparties to all executory contracts or unexpired leases related to the property subject of the Sale Notice (or such counterparty's counsel) that the Debtors are seeking to assume, assume and assign to the purchaser of the assets, or reject ((i)-(vi) collectively, the "**Interested Parties**").

Interested Parties shall have ten (10) calendar days from service of the Sale Notice to file and serve any objections to a Noticed *De Minimis* Sale (the "**Notice Period**").

12.   The Sale Notice will specify:

(i)   a description of the asset proposed to be sold and its location;

(ii)   an identification of the executory contracts and unexpired leases, if any, to be assumed, assumed and assigned, or rejected in connection with the sale, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code, and a statement regarding the adequate assurance of future performance by the proposed assignee, consistent with section 365 of the Bankruptcy Code;

(iii)   the identities of any parties holding or asserting liens or other interests or potential interests in the property and a statement indicating how the Debtors propose to satisfy section 363(f) with respect thereto;

(iv)   an affidavit of the broker or auctioneer, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), that identifies the broker or auctioneer and the amount of the proposed commissions and contains the disclosures required by Bankruptcy Rule 2014; and

(v)   instructions regarding the procedures to assert objections to the Noticed *De Minimis* Sale.

13.   If the transaction is to be a private sale, the Sale Notice will also specify:

(i)    the identity of the proposed purchaser (including a statement indicating whether the proposed purchaser is an "insider" as defined in section 101(31) of the Bankruptcy Code); and

(ii)    the major economic terms and conditions of the Noticed *De Minimis* Sale;[1]

14.    If the transaction is to be by auction, the Sale Notice will also specify:

(i)    the date, time and place of the auction;

(ii)    the minimum acceptable bid; and

(iii)    any terms and conditions of sale to be imposed at the auction.

15.    The Debtors propose that objections to a Noticed *De Minimis* Sale ("**Objections**") be in writing, filed with the Court, and served on the Interested Parties and counsel to the Debtors so as to be received by all such parties prior to 4:00 p.m. (Eastern Time) on the last day of the Notice Period.  Further, the Debtors propose that each Objection state with specificity the grounds for the Objection.

16.    If any significant economic terms of a Noticed *De Minimis* Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the Debtors will serve a revised Sale Notice on all Interested Parties describing the proposed Noticed *De Minimis* Sale, as amended.  If a revised Sale Notice is required, the Notice Period will expire on the later of the original Notice Period expiration date or five (5) calendar days from service of the revised Sale Notice.

17.    If an Objection to a Noticed *De Minimis* Sale is properly filed and served by an Interested Party:

(i)    The Debtors may negotiate with the party filing the Objection and may change the terms of the sale without the requirement of

---

[1]    This information may be provided by attaching the applicable contract or contracts to the Sale Notice.

further notice, as long as the revised terms are no more onerous to
the Debtors than those set forth in the Sale Notice.

(ii) The Noticed *De Minimis* Sale may not proceed absent (a)
withdrawal of the Objection; or (b) entry of an order by the Court
specifically approving the Noticed *De Minimis* Sale.

(iii) The Debtors may schedule a hearing on the Noticed *De Minimis*
Sale and, upon the scheduling of such a hearing, the Debtors will
provide notice of the hearing on the party filing the Objection and
the Interested Parties.

18. If no Objection to a Noticed *De Minimis* Sale is filed and served by an

Interested Party consistent with the Noticed *De Minimis* Sale Procedures, such Noticed *De*

*Minimis* Sale will be deemed final and fully authorized by the Court under the terms of the Order

approving this Motion, including the payment of related brokers' commissions or auctioneer

fees, if applicable, and the assumption, assumption and assignment, or rejection of executory

contracts or unexpired leases, if applicable (including the payment of cure costs related thereto),

and no further notice or Court approval to consummate the Noticed *De Minimis* Sale will be

required or necessary.

19. The Debtors may consummate a Noticed *De Minimis* Sale prior to

expiration of the applicable Notice Period if they obtain each Interested Party's written consent

to such Noticed *De Minimis* Sale.

20. In the case of a Sale Notice for a transaction to proceed by auction, the

Debtors may sell the applicable *de minimis* asset at the auction for any price above the minimum

bid, even if the sale price exceeds the applicable threshold for the *De Minimis* Sale Procedures.

C.  Effects of Sale

21. Pursuant to

(i) the Court's Final Order Pursuant to Bankruptcy Code Sections
105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002,

4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C) Authorizing the Use of Cash Collateral, and (D) Granting Adequate Protection to Certain Pre-Petition Secured Parties (the "**DIP Order**") [**Docket No. 2529**], entered June 25, 2009,

(ii)      the Court's Final Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving Amendment to DIP Credit Facility (as amended, the "**DIP Facility**") to Provide for Debtors' Post-Petition Wind-Down Financing (the "**Wind-Down DIP Order**") [**Docket No. 2969**], entered July 5, 2009, and

(iii)     the DIP Credit Facility,

all assets of the Debtors' estates are subject to liens granted in favor of the lenders party to the

DIP Facility (the "**DIP Lenders**").  Pursuant to section 6.12 of the DIP Facility, the Debtors may

freely dispose of all assets of these estates.  Accordingly, the consent of the DIP Lenders is not

required to sell estate assets, and all buyers will take title to the assets free and clear of the DIP

Lenders' liens, claims, encumbrances and other interests, pursuant to section 363(f) of the

Bankruptcy Code.  All such liens, claims, encumbrances and other interests will attach to the

proceeds of the sale.

22.      All buyers will take assets sold by the Debtors pursuant to the *De Minimis*

Sale Procedures subject to the terms of the documentation executed in connection with the sale,

which may include provisions that the buyers are taking the assets "as is" and "where is,"

without any representations or warranties from the Debtors as to the quality or fitness of such

assets for either their intended purpose or any particular purpose.

23.      All sales consummated in compliance with the *De Minimis* Sale

Procedures shall be deemed to be the result of an arm's-length transaction and the purchaser

shall be deemed a good faith purchaser and shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

D.    The Quarterly Report

24.    On or before the 30th day of each fiscal quarter commencing with the fiscal quarter beginning on October 1, 2009, the Debtors will file and serve on the Creditors' Committee a report summarizing (i) any Noticed *De Minimis* Sales that were consummated pursuant to the *De Minimis* Sale Procedures during the immediately preceding fiscal quarter and (ii) any Non-Noticed *De Minimis* Sales for consideration greater than $500,000 that were consummated pursuant to the *De Minimis* Sale Procedures during the immediately preceding fiscal quarter (a "**Quarterly Report**").  With respect to each applicable sale, each Quarterly Report shall include:

(i)    a description of the assets sold;

(ii)    the identity of the purchaser and any relationship such party has with the Debtors; and

(iii)    the total consideration received in connection with the sale.

25.    The Debtors respectfully submit that the proposed *De Minimis* Sale Procedures represent the exercise of sound business judgment, are fair and appropriate, and balance the need for an expeditious reduction of burdensome costs to the Debtors' estates with the provision of advance notice of proposed asset dispositions.

**Basis For Relief Requested**

26.    For the reasons discussed herein, this Court should grant the relief requested and approve the proposed *De Minimis* Sale Procedures.  The proposed *De Minimis* Sale Procedures should be approved because they: (a) constitute an exercise of the Debtors'

sound business judgment; (b) satisfy the notice and hearing requirements of section 363(b)(1);

(c) satisfy the requirements of section 363(f) allowing the Debtors to sell property free and clear

of liens, claims, and encumbrances; and (d) enable the Debtors to maximize the value of the

assets for the benefit of their stakeholders, while providing adequate procedural safeguards and

prejudicing no party.  Indeed, as discussed below in greater detail, similar procedures are

frequently approved in large or complex cases such as these.

      A.    The Proposed De Minimis Sale Procedures are an
          Exercise of the Debtors' Sound Business Judgment

      27.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that

"the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the sale of property

outside the ordinary course of business, a bankruptcy judge must "find from the evidence

presented before him at the hearing a good business reason to grant such an application."

*Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071

(2d Cir. 1983); *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*,

3 F.3d 49 (2d Cir. 1993), (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("[T]he

business judgment rule 'is a presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action was

in the best interests of the company.'")) (applying the business judgment rule to the debtor's

motion to enter into a sale contract and the related break-up fee).

      28.    Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he

Court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).

29.     The Debtors submit that the sale of property upon the terms set forth herein is both an exercise of sound business judgment and in the best interests of the estates and their creditors.  Disposing of these *de minimis* assets in the manner proposed herein is the most efficient and cost-effective means of maximizing the value to be realized.  Obtaining Court approval for each such sale transaction would result in unnecessary administrative costs attendant to drafting, serving, and filing perhaps dozens or even hundreds of pleadings, as well as time incurred by attorneys for Court appearances, which could drastically reduce the ultimate net value of these assets.  The proceeds generated by many of the aforementioned sales transactions do not warrant the incurrence of such expenses.  The Debtors and their advisors have significant experience with these types of sales and, as a result, are very well versed in obtaining the best sale price possible.

30.     Moreover, the Debtors likely will face stringent time constraints in meeting the closing deadlines established by interested purchasers, as well as in selling assets before they decline significantly in value.  The expedited procedures set forth herein will permit the Debtors to be responsive to time-sensitive offers while still providing the Interested Parties with the ability to review significant transactions.

31.     Notably, while the Debtors request authorization to sell assets for a purchase price of up to $15 million, the Debtors believe that many individual transactions will, in fact, be for substantially less.  Further, in light of the size of the Debtors' estates, the proposed sale price limitations are relatively modest and appropriate.  The estates are further protected by the opportunity for Interested Parties, including the Creditors' Committee and the U.S. Trustee, to review and object to any Noticed *De Minimis* Sale.

B.    The Proposed De Minimis Sale Procedures Satisfy the Notice
        and Hearing Requirements of Section 363(b)(1) of the Bankruptcy Code

32.    The notice and hearing requirements contained in section 363(b)(1) of the

Bankruptcy Code  are satisfied if appropriate notice and an opportunity for a hearing are given in

light of the particular circumstances of the proposed sale.  *See* 11 U.S.C. § 102(1)(A) (defining

"after notice and a hearing" to mean such notice and opportunity for a hearing "as [are]

appropriate in the particular circumstances").  Generally, Bankruptcy Rules 2002(a)(2) and

2002(i) require that a minimum of twenty days' notice of proposed sales of property outside the

ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and

indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code,

unless the Court for "cause" shown shortens the time or directs another method of giving notice.

Moreover, courts are authorized to limit notice of asset sales outside of the ordinary course of a

debtor's business, even without a prior showing of cause, to any official committee appointed

under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice.

*See* Bankruptcy Rule 2002(i).

33.    The Debtors submit that sufficient cause exists to implement the modified

notice provisions proposed herein because these modified notice procedures will improve the

efficiency of the sale process for *de minimis* assets and maximize the value of the assets to the

Debtors' estates.  In addition, the Debtors will have provided the statutory twenty days' notice of

this Motion.

34.    Furthermore, notwithstanding the requirement under section 363(b)(1) for

"notice and a hearing," sales are authorized without an actual hearing if no party in interest

timely requests such a hearing.  *See* 11 U.S.C. § 102(1)(B)(i) (notwithstanding the statutory

requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an

actual hearing if such notice is given properly and if such a hearing is not requested timely by a

party in interest").

36. The proposed *De Minimis* Sale Procedures comport with the hearing

requirements of the Bankruptcy Code, as well as due process, by providing Interested Parties

with an opportunity to present Objections on each proposed Noticed *De Minimis* Sale and then

have a hearing with respect to the proposed Noticed *De Minimis* Sale and Objection.  Under

these circumstances, a Noticed *De Minimis* Sale may be approved without a hearing if no

Interested Party has filed an Objection with respect thereto.  Furthermore, under the proposed *De*

*Minimis* Sale Procedures, any known holder of a lien on any Non-Noticed *De Minimis* Sale will

receive adequate notice of this Motion, and an opportunity to object.

C.  <u>Broker Commissions and Auction Fees Should be Approved</u>

36. The payment of commissions and fees to brokers and auctioneers engaged

by the Debtors to sell *de minimis* assets is in the best interest of the Debtors' estates and their

creditors. The Debtors believe using brokers and auctioneers will, in certain circumstances,

expedite the disposition process and maximize the value of the *de minimis* assets.

37. Approving the commissions and fees as part of the *De Minimis* Sale

Procedures will save the expenses associated with filing retention applications for each broker

and auctioneer, and will avoid additional fees for preparing and prosecuting interim fee

applications.  The commissions and fees will represent only a fraction of the value of any *de*

*minimis* asset sold pursuant to the *De Minimis* Sale Procedures and are not significant relative to

the aggregate size of the Debtors' estates.

D.    The Proposed De Minimis Sale Procedures Satisfy
the Requirements of Section 363(f) of the Bankruptcy Code to Permit
the Debtors to Sell Property Free and Clear of Liens, Claims, and Encumbrances

38.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property

free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law

permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien

and the sales price of the property exceeds the value of all liens on the property; (d) the interest is

in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable

proceeding to accept a monetary satisfaction of its interest.    11 U.S.C. § 363(f).    *See In re Smart

World Tech. LLC*, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ("Section 363 permits sales of assets free

and clear of claims and interests.  It thus allows purchasers . . . to acquire assets [from a debtor]

without any accompanying liabilities"); *Hargrave v. Township of Pemberton (In re Tabone,

Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens,

claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Servs. v. Elliot (In

re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (finding that court may approve sale "free and clear"

provided at least one of the subsections above is met, and that failure to object on notice satisfies

363(f)(2)); *In re Dundee Equity Corp.*, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992)

("Section 363(f) is in the disjunctive, such that the sale of the interest concerned may occur if

any one of the conditions of § 363(f) have been met"); *In re Healthco Int'l, Inc.*, 174 B.R. 174,

176 (Bankr. D. Mass. 1994) (interpreting section 363(f)(5) to mean "a payment constituting less

than full payment of the underlying debt").

39.    Assets encumbered by interests held by other parties may be sold pursuant

to the *De Minimis* Sale Procedures only if the transaction satisfies at least one of the five (5)

enumerated requirements of Bankruptcy Code section 363(f).  Accordingly, section 363(f) will

be satisfied for any proposed Non-Noticed or Noticed *De Minimis* Sale free and clear of liens, claims or encumbrances.  Moreover, as noted above, the Debtors propose that such interests attach to the proceeds of the sales.

> E.  Purchasers are Entitled to Good Faith Finding

> 40.  Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second Circuit Court of Appeals has stated that a purchaser's good faith:

> is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m) of the Bankruptcy Code)).  The Debtors submit that the notice requirements, disclosure requirements, and opportunity to object afforded in the *De Minimis* Sale Procedures establish a process that should be entitled to a finding that the *de minimis* asset sales are arm's-length transactions conducted in good faith and entitled to the protections of section 363(m) of the Bankruptcy Code.

    F.    The Assumption or Assumption and Assignment of
        <u>Related Executory Contracts or Unexpired Leases Should be Approved</u>

       41.    Pursuant to section 365 of the Bankruptcy Code, the Debtors may assume,

assign or reject executory contracts and unexpired leases "subject to the court's approval." 11.

U.S.C. § 365.  Subject to court approval, section 365 "permits the . . . debtor-in-possession . . . to

go through the inventory of executory contracts of the debtor and decide which ones it would be

beneficial to adhere to and which ones it would be beneficial to reject." *Orion Pictures Corp. v.*

*Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993), *cert.*

*dismissed*, 511 U.S. 1026 (1994); *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic*

*Co.)*, 524 F.3d 373, 382 (2d. Cir. 2008) (quoting *In re Orion*, 4 F.3d at 1098) .  "The purpose

behind allowing the assumption or rejection of executory contracts is to permit the trustee or

debtor-in-possession to use valuable property of the estate."  *In re Orion* 4 F.3d at 1098.  The

applicable standard for approval of assumption or rejection is whether the debtor's decision is

made within its sound business judgment.  *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523

(1984) (stating that the business judgment standard is the traditional standard applied by courts to

authorize the rejection of ordinary executory contracts).  Indeed, the application of the business

judgment standard in determining whether to permit a debtor to assume or reject executory

contracts underscores the principle that the Debtors' interests are paramount in making the

determination.  *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) .

       42.    The Debtors anticipate that the assumption or assumption and assignment

of certain executory contracts or unexpired leases related to certain *de minimis* assets will

enhance the Debtors' ability to maximize the consideration paid for the related asset.  Moreover,

the Debtors anticipate that purchasers may require certainty regarding whether the purchaser will

take assignment of the related contracts or leases in connection with the sale.  In other cases, the

sale of an asset will render a particular executory contract or unexpired lease of no use to the

Debtors, thereby justifying rejection.  The decision whether to assume, assume and assign, or

reject such contracts and leases is within the Debtors' business judgment and will be made in the

best interests of such Debtors' estates and creditors.  The non-debtor counterparties to such

contracts and leases subject to the assumption, assumption and assignment, or rejection are not

prejudiced, because the *De Miminis* Sale Procedures require that they receive notice, including

proposed cure amounts, and provide an opportunity for such parties to object.  Accordingly, the

requirements of section 365 of the Bankruptcy Code will be satisfied under the Sale Notice

Procedures.

G.    Similar Procedures Have Been Approved in Other Cases

43.    Courts in this and other districts have recognized the benefits of

streamlined procedures to dispose of *de minimis* assets and the legal justifications described

above, and have been approved similar procedures.  *See, e.g.*, *In re Old Carco LLC (f/k/a*

*Chrysler LLC), et al.*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. June 18, 2009) (approving

similar procedures for non-noticed sales up to $1 million and noticed sales up to $10 million;

whether by private sale or by auction; including related fees and commissions; as well as the

assumption, assignment, or rejection of certain related contracts; and a finding regarding good-

faith); *In re Charter Commc'ns, Inc., et al.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15,

2009) (approving similar procedures for the sale of assets up to $15 million; including notice

procedures with a 5 day notice period; and a finding regarding good faith); *In re Lyondell*

*Chemical Company, et al.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Mar. 12, 2009)

(approving similar procedures for non-noticed sales up to $1 million and noticed sales up to $10 million; including market rate broker commissions; sales free and clear pursuant to section 363(f); quarterly reporting; and a finding regarding good faith).

44.    Copies of the referenced orders for each of *Chrysler*, *Charter*, and *Lyondell*, are attached as Exhibits A, B, and C, respectively.  Each order was entered on notice, ranging from a shortened notice period of fourteen (14) calendar days for *Chrysler* between the filing of the motion and the hearing date, approximately 19 calendar days for *Charter* between the filing of the motion and the hearing date, and in excess of 20 calendar days' notice for the same period in *Lyondell*.  Each order was entered on a final basis after a hearing, although the extent to which each Court relied on the relevant provisions is not clear from the orders.  With respect to factual findings, each order indicates that sufficient notice was provided, and that the transactions are deemed to be arm's-length transactions or the purchasers of assets sold pursuant to the approved procedures are entitled to the protections of section 363(m).

45.    There were three objections filed to the *Chrysler* motion.  Each was focused primarily on notice and an opportunity to object to sales of all real property assets, regardless of dollar amount, located within the jurisdiction of the objecting regulatory body.  The order appears to have been modified to address the objections.  The Debtors have incorporated a requirement to provide notice of Noticed De Minimis Sales to the state attorney general for the state in which any real property to be sold is located.  The *Chrysler* non-notice and notice sale buckets were also reduced from the requested buckets of $0-$2 million and $2-$15 million to $0-$1 million and $1-$10 million, respectively.

46.    With respect to *Charter*, the docket does not indicate that any objections were filed, the order does not contain any provisions that appear intended to address the

objections of any particular party, and the agenda [Case No. 09-11435, Doc. No. 0161] for the

hearing at which the order was approved states that no responses were received in respect of the

motion.  The agenda is attached as Exhibit B-1.

47.    With respect to *Lyondell*, the docket indicates six objections to the related

motion, including state regulatory bodies (e.g. Texas Commission on Environmental Quality)

and contract counterparties (e.g. Oracle).  The order appears to have been modified to address

certain of these objections, including a requirement for notification to the State of Texas of the

sale of any radiation equipment or radioactive materials, and prior written notice to Oracle and

an opportunity for a hearing on any objection by Oracle in connection with the disposition of

certain Oracle agreements.

48.    The *Lyondell* order indicates that all objections to the related motion were

overruled or resolved.

## **Notice**

49.    Notice of this Motion has been provided to (i) General Motors Company,

300 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.);

(ii) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the

Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi,

Esq.); (iii) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room

2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (iv) Vedder Price, P.C.,

attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York

10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (v) Kramer Levin Naftalis

& Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the

Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq., Thomas Moers

Mayer, Esq., Adam C. Rogoff, Esq., and Gordon Z. Novod, Esq.); (vi) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York,

New York 10004, (Attn: Diana G. Adams, Esq.); (vii) the U.S. Attorney's Office, S.D.N.Y., 86

Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and

Matthew L. Schwartz, Esq.), and (viii) all entities that requested notice in these chapter 11 cases

under Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances,

such notice is sufficient and no other or further notice need be provided.

        50.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

        WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
      July 29, 2009

                         ***/s/ Stephen Karotkin***                  
                         Harvey R. Miller
                         Stephen Karotkin
                         Joseph H. Smolinsky

                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153
                         Telephone: (212) 310-8000
                         Facsimile: (212) 310-8007

                         Attorneys for Debtors
                         and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                        :

In re                          :            **Chapter 11 Case No.**
                        :

**MOTORS LIQUIDATION COMPANY**, *et al.*,   :            **09-50026 (REG)**
         **f/k/a General Motors Corp.**, *et al.*   :
                        :            **(Jointly Administered)**
                  **Debtors.**   :
                        :
-------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 (A)**
**ESTABLISHING PROCEDURES FOR THE DISPOSITION OF**
***DE MINIMIS* ASSETS, AND (B) AUTHORIZING THE DEBTORS TO**
**(i) PAY RELATED FEES, AND (ii) ASSUME, ASSUME AND ASSIGN, OR**
<u>**REJECT RELATED EXECUTORY CONTRACTS OR UNEXPIRED LEASES**</u>

Upon the Motion, dated July 29, 2009 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code establishing procedures for the sale of *de minimis* assets, whether by private sale or

auction, including the payment of related brokers' commissions and auctioneer fees and the

assumption, assumption and assignment, or rejection of related executory contracts or unexpired

leases, all as more fully set forth in the Motion; and due and proper notice of the Motion having

been provided, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set

---

[1]       Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED THAT:

1.        The relief requested in the Motion is GRANTED as provided herein.

2.        The *De Minimis* Sale Procedures are approved as follows:

A.   Sale Price Less than or Equal to $2 Million

3.        The Debtors are hereby authorized to sell any asset for total consideration

of a value less than or equal to $2 million (a "**Non-Noticed *De Minimis* Sale**") without further

Court approval, and without providing notice of the Non-Noticed *De Minimis* Sale to any party,

whether by private sale or by auction.  The Debtors are also authorized to take any actions that

are reasonable and necessary to close the Non-Noticed *De Minimis* Sale and obtain the sale

proceeds.

4.        If the Debtors seek to assume, assume and assign, or reject executory

contracts or unexpired leases relating to and in connection with an asset sale that would

otherwise qualify as a Non-Noticed *De Minimis* Sale, the Debtors shall seek to sell those assets

pursuant to the Noticed De Minimis Sale procedures (as defined below).  In addition, if the

Debtors seek to sell assets encumbered by liens (other than assets encumbered solely by liens

granted in favor of the DIP Lenders, as defined and described in more detail below) in

connection with an asset sale that would otherwise qualify as a Non-Noticed *De Minimis* Sale,

the Debtors shall seek to obtain the consent of the lienholder.  If the Debtors are unable to obtain

the consent of the lienholder, the Debtors may sell the encumbered assets pursuant to the Noticed

*De Minimis* Sale procedures.

B.    Sale Price Greater than $2 million but Less than or Equal to $15 Million

       5.     The Debtors are hereby authorized to sell any asset for total consideration of a value that is greater than $2 million but less than or equal to $15 million (a "**Noticed *De Minimis* Sale**") without further Court approval, after providing notice of the Noticed *De Minimis* Sale to certain parties in accordance with the following procedures.

       6.     If the Debtors propose a Noticed *De Minimis* Sale, the Debtors will serve a notice of such proposed sale (a "**Sale Notice**") by facsimile, email, overnight delivery, hand delivery, or first class mail on the following parties:

(i)      the United States Trustee for the Southern District of New York (the "**U.S. Trustee**");

(ii)     counsel for the statutory committee of unsecured creditors (the "**Creditors' Committee**");

(iii)    counsel for the lenders under that certain Amended and Restated Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of July 10, 2009, among Motors Liquidation Company (f/k/a General Motors Corporation), as Borrower, the Guarantors party thereto, and the Lenders party thereto from time to time;

(iv)    the state Attorney General for the state in which any real property to be sold is located;

(v)     all known parties holding or asserting liens or encumbrances on the assets that are the subject of the proposed Noticed *De Minimis* Sale and their respective counsel, if known; and

(vi)    the counterparties to all executory contracts or unexpired leases related to the property subject of the Sale Notice (or such counterparty's counsel) that the Debtors are seeking to assume, assume and assign to the purchaser of the assets, or reject ((i)-(vi) collectively, the "**Interested Parties**").

Interested Parties shall have ten (10) calendar days from service of the Sale Notice to file and serve any objections to a Noticed *De Minimis* Sale (the "**Notice Period**").

       7.     The Sale Notice will specify:

(i)      a description of the asset proposed to be sold and its location;

(ii)    an identification of the executory contracts and unexpired leases, if any, to be assumed, assumed and assigned, or rejected in connection with the sale, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code, and a statement regarding the adequate assurance of future performance by the proposed assignee, consistent with section 365 of the Bankruptcy Code;

(iii)    the identities of any parties holding or asserting liens or other interests or potential interests in the property and a statement indicating how the Debtors propose to satisfy section 363(f) with respect thereto;

(iv)    an affidavit of the broker or auctioneer, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), that identifies the broker or auctioneer and the amount of the proposed commissions and contains the disclosures required by Bankruptcy Rule 2014; and

(v)    instructions regarding the procedures to assert objections to the Noticed *De Minimis* Sale.

8.    If the transaction is to be a private sale, the Sale Notice will also specify:

(i)    the identity of the proposed purchaser (including a statement indicating whether the proposed purchaser is an "insider" as defined in section 101(31) of the Bankruptcy Code); and

(ii)    the major economic terms and conditions of the Noticed *De Minimis* Sale;[2]

9.    If the transaction is to be by auction, the Sale Notice will also specify:

(i)    the date, time and place of the auction;

(ii)    the minimum acceptable bid; and

(iii)    any terms and conditions of sale to be imposed at the auction.

10.    Objections to a Noticed *De Minimis* Sale ("**Objections**") must be in writing, filed with the Court, and served on the Interested Parties and counsel to the Debtors so

---

[2]    This information may be provided by attaching the applicable contract or contracts to the Sale Notice.

as to be received by all such parties prior to 4:00 p.m. (Eastern Time) on the last day of the

Notice Period.  Each Objection must state with specificity the grounds for the Objection.

11.    If any significant economic terms of a Noticed *De Minimis* Sale are

amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the

Debtors will serve a revised Sale Notice on all Interested Parties describing the proposed Noticed

*De Minimis* Sale, as amended.  If a revised Sale Notice is required, the Notice Period will expire

on the later of the original Notice Period expiration date or five (5) calendar days from service of

the revised Sale Notice.

12.    If an Objection to a Noticed *De Minimis* Sale is properly filed and served

by an Interested Party:

> (i)    The Debtors may negotiate with the party filing the Objection and may change the terms of the sale without the requirement of further notice, as long as the revised terms are no more onerous to the Debtors than those set forth in the Sale Notice.
>
> (ii)    The Noticed *De Minimis* Sale may not proceed absent (a) withdrawal of the Objection; or (b) entry of an order by the Court specifically approving the Noticed *De Minimis* Sale.
>
> (iii)    The Debtors may schedule a hearing on the Noticed *De Minimis* Sale and, upon the scheduling of such a hearing, the Debtors will provide notice of the hearing on the party filing the Objection and the Interested Parties.

13.    If no Objection to a Noticed *De Minimis* Sale is filed and served by an

Interested Party consistent with the Noticed *De Minimis* Sale Procedures, such Noticed *De

Minimis* Sale will be deemed final and fully authorized by the Court under the terms of the Order

approving this Motion, including the payment of related brokers' commissions or auctioneer

fees, if applicable, and the assumption, assumption and assignment, or rejection of executory

contracts or unexpired leases, if applicable (including the payment of cure costs related thereto),

and no further notice or Court approval to consummate the Noticed *De Minimis* Sale will be required or necessary.

14.    The Debtors may consummate a Noticed *De Minimis* Sale prior to expiration of the applicable Notice Period if they obtain each Interested Party's written consent to such Noticed *De Minimis* Sale.

15.    In the case of a Sale Notice for a transaction to proceed by auction, the Debtors may sell the applicable *de minimis* asset at the auction for any price above the minimum bid, even if the sale price exceeds the applicable threshold for the *De Minimis* Sale Procedures.

C.    Effects of Sale

16.    The consent of the DIP Lenders is not required to sell estate assets, and all buyers will take title to the assets free and clear of the DIP Lenders' liens, claims, encumbrances and other interests, pursuant to section 363(f) of the Bankruptcy Code. Additionally, pursuant to section 363(f) of the Bankruptcy Code, all sales of property and interests in property pursuant to this Order shall be free and clear of all liens, claims and encumbrances, if any, and any such valid, and where applicable perfected, liens, claims, and encumbrances, including liens, claims, and encumbrances of the DIP Lenders, will attach to the proceeds of the sale, subject to the rights, claims, defenses and objections, if any, of the Debtors or the Creditors' Committee.

17.    All buyers will take assets sold by the Debtors pursuant to the *De Minimis* Sale Procedures subject to the terms of the documentation executed in connection with the sale, which may include provisions that the buyers are taking the assets "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended purpose or any particular purpose.

18.     All sales consummated in compliance with the *De Minimis* Sale

Procedures shall be deemed to be the result of an arm's-length transaction and the purchaser

shall be deemed a good faith purchaser and shall be entitled to the protections of section 363(m)

of the Bankruptcy Code.

19.     Upon the closing of a private sale or auction pursuant to the *De Minimis*

Sale Procedures above, the Debtors may (a) assume any executory contract or unexpired lease to

be assigned to a proposed purchaser or other third party as a part of the proposed sale and

provide for the payment of the related cure amount and (b) reject any executory contract or

unexpired lease identified for rejection in the Sale Notice.  The counterparties to any executory

contracts or unexpired leases identified in the Sale Notice pursuant to the *De Minimis* Sale

Procedures are hereby barred from asserting any further cure claims in respect of such executory

contracts or unexpired leases after the objection period for a Noticed *De Minimis* Sale has

passed.

20.     With respect to all Noticed *De Minimis* Sales and Non-Noticed *De*

*Minimis* Sales consummated pursuant to this Order, this Order shall be sole and sufficient

evidence of the transfer of title to any particular purchaser, and all such sales consummated

pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities

who may be required by operation of law, the duties of their office, or contract, to accept, file,

register or otherwise record or release any documents or instruments, or who may be required to

report or insure any title or state of title in or to any of the property sold pursuant to this Order,

including without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, administrative agencies, governmental departments,

secretaries of state, and federal, state, and local officials, and each of such persons and entities is

hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and

shall rely upon this Order in consummating the transactions contemplated hereby.

D.     The Quarterly Report

21.     On or before the 30th day of each fiscal quarter commencing with the

fiscal quarter beginning on October 1, 2009, the Debtors shall file and serve on the Creditors'

Committee a report summarizing (i) any Noticed *De Minimis* Sales that were consummated

pursuant to the *De Minimis* Sale Procedures during the immediately preceding fiscal quarter and

(ii) any Non-Noticed *De Minimis* Sales for consideration greater than $500,000 that were

consummated pursuant to the *De Minimis* Sale Procedures during the immediately preceding

fiscal quarter (a "**Quarterly Report**").  With respect to each applicable sale, each Quarterly

Report shall include:

> (i)     a description of the assets sold;
>
> (ii)    the identity of the purchaser and any relationship such party has with the Debtors; and
>
> (iii)   the total consideration received in connection with the sale.

E.     Miscellaneous

22.     The Debtors are authorized to pay reasonable brokers' commissions and

auctioneer fees for brokers and auctioneers utilized in connection with any sales pursuant to the

*De Minimis* Sale Procedures authorized herein.

23.     To the extent applicable, the ten-day stay of Federal Rule of Bankruptcy

Procedure 6004(h) is hereby waived, and this Order shall be effective immediately.

Furthermore, Non-Noticed and Noticed *De Minimis* Sales shall be deemed authorized pursuant

to the terms of this Order and no further or additional waivers of the ten-day stay of Federal Rule

of Bankruptcy Procedure 6004(h) shall be required for the Debtors to consummate a Non-Noticed and / or Noticed *De Minimis* Sale, subject to compliance with the notice and other procedures set forth in the *De Minimis* Sale Procedures.

24.     The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

25.     Nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale after notice and an opportunity for a hearing.

26.     No further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein.

27.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
       _____, 2009


                                        _____
                                        United States Bankruptcy Judge

**Exhibit A**

*Chrysler* De Minimis Sale Procedures Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
Old Carco LLC                                 :    Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), *et al.*,               :
                                              :    (Jointly Administered)
                              Debtors.        :
                                              :
-------------------------------------------------------------x

<u>**ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF THE**
**BANKRUPTCY CODE, APPROVING PROCEDURES TO SELL**
**CERTAIN *DE MINIMIS* ASSETS, FREE AND CLEAR OF LIENS, CLAIMS**
**AND ENCUMBRANCES, AND TO PAY MARKET RATE COMMISSIONS AND FEES**
**IN CONNECTION WITH SUCH SALES WITHOUT FURTHER COURT APPROVAL**</u>

This matter coming before the Court on the Motion of Debtors and Debtors in

Possession, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, for an Order

Approving Procedures to Sell or Transfer Certain *De Minimis* Assets, Free and Clear of Liens,

Claims and Encumbrances, and to Pay Market Rate Broker Commissions in Connection With

Such Sales Without Further Court Approval (the "<u>Motion</u>"),[1] filed by the debtors and debtors in

possession in the above-captioned cases (collectively, the "<u>Debtors</u>"); objections to the Motion

having been filed by (a) the Treasurer of Wayne County, Michigan, the Treasurer of Oakland

County, Michigan and the Treasurer for the City of Detroit, (b) the Michigan Department of

Environmental Quality, (c) the Ohio Attorney General and (d) the State of Missouri (collectively,

the "<u>Objections</u>"); the Court having reviewed the Motion and the Objections and having

considered the statements of counsel with respect to the Motion at a hearing before the Court

---

[1]         Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Hearing"); the Debtors having determined, in consultation with the Official Committee of

Unsecured Creditors in these cases (the "Creditors' Committee") and in response to the

Objections, to modify the proposed order sought by the Motion; and the Court having found that

(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a

core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was

sufficient under the circumstances, (d) a sound business purpose exists to grant the relief

requested herein and (e) there is good cause to waive the ten-day stay imposed by Bankruptcy

Rules 6004(h) and 6006(d);

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    Any Objections or responses to the Motion that have not been withdrawn,

waived or settled prior to the entry of this Order are hereby OVERRULED.

3.    The Debtors are authorized to consummate, without further Court

approval, arms'-length sales (each, a "Private Sale") or public auctions (each, an "Auction"),

including real and personal property (the "De Minimis Assets"), outside of the ordinary course of

business when the purchase price for a Private Sale is $10 million or less, or the book value of

assets to be sold at Auction is equal to or less than $10 million, for each transaction or in the

aggregate for a related series of transactions; provided, however, that under no circumstances

shall the Debtors consummate a Private Sale to an insider (as defined in the Bankruptcy Code)

without the prior consent of the Creditors' Committee or an order of the Court.  Any sales of

De Minimis Assets shall be free and clear of all liens, claims and encumbrances, pursuant to

section 363(f) of the Bankruptcy Code, with any such liens, claims and encumbrances attaching

to the net sale proceeds with the same force, validity, priority, perfection and effect as such liens

had on the property immediately prior to the sale.  All such sales shall be subject to the Sale Notice Procedures (as such term is defined below) and other terms of this Order.

4.      The Debtors hereby are authorized to pay, without further Court approval, market rate broker commissions (the "Broker Commissions") and auction fees (the "Auction Fees" and, together with the Broker Commissions, the "Commissions") for brokers and auctioneers utilized in connection with any sales of De Minimis Assets upon satisfaction of the disclosure and other requirements provided herein (including obligations to consult with the Creditors' Committee).

5.      Except with respect to sales of real property located in Michigan, Missouri and Ohio, Private Sales of De Minimis Assets for consideration that is less than $1 million, and Auctions where the book value of such assets is less than or equal to $1 million in the aggregate, may be consummated by the Debtors (in consultation with the Creditors' Committee) without further notice and hearing.  Private Sales of De Minimis Assets for more than $1 million but less than $10 million, and Auctions where the book value of such assets is more than $1 million but less than or equal to $10 million and any sales of real property located in Michigan, Missouri and Ohio, are approved subject to the following notice procedures (the "Sale Notice Procedures"):

(a)      The Debtors will serve a notice of each Proposed Sale (the "Sale Notice") on:  (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) counsel to the Creditors' Committee; (iii) counsel to the DIP Lender; (iv) counsel to the administrative agent for the First Lien Prepetition Lenders; (v) any known holder of Other Liens asserted against the specific assets to be sold; (vi) the proposed purchaser if the transaction is to be completed by Private Sale (the "Proposed Purchaser"); (vii) any known interested party in the De Minimis Assets proposed to be sold; (viii) with respect to any Proposed Sales involving real property located in Michigan, Missouri or Ohio, the state environmental agency for the applicable state in which such real property is located; (ix) with respect to any Proposed Sales involving (A) real property or (B) personal property to be sold for more than $1 million but less than $10 million, and Auctions where the book value of such assets is

more than $1 million but less than or equal to $10 million, located in Oakland County, Michigan, Wayne County, Michigan or Detroit, Michigan, counsel to such entities; and (x) if applicable, the nondebtor counterparties to all executory contracts or unexpired leases that the Debtors propose to assume and assign or reject in connection with such Proposed Sale (collectively, the "Sale Notice Parties").  The Sale Notice will be served on the Sale Notice Parties by facsimile or e-mail, if possible, and by overnight mail.

If the transaction is to be completed by a Private Sale, the Sale Notice will specify:  (i) the assets to be sold; (ii) the identity of the Proposed Purchaser (including a statement indicating whether the Proposed Purchaser is an "insider" as defined in section 101(31) of the Bankruptcy Code); (iii) the proposed cash sale price and other consideration to be exchanged; (iv) the primary economic terms and conditions of the Proposed Sale; (v) a copy of any documentation executed in contemplation of the transaction; and (vi) the identities of any parties holding or asserting liens on other interests or potential interests in the property.  If the transaction is to be completed by Auction, the Sale Notice will specify:  (i) the assets to be sold; (ii) the date, time and place of the Auction; (iii) the minimum acceptable bid (the "Minimum Bid"); (iv) any terms and conditions of sale to be imposed at the Auction; and (v) a copy of any documentation executed or to be executed in contemplation of the transaction (including any lead bid).

In addition, any Sale Notice will specify:  (i) the identities of any parties holding or asserting liens or other interests or potential interests in the property; (ii) the executory contracts and unexpired leases, if any, that the applicable Debtor or Debtors propose to be assumed and assigned or rejected as part of the Proposed Sale; (iii) for any assumption and assignment of an executory contract or unexpired lease, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (collectively, the "Cure Claims"), and a statement regarding the adequate assurance of future performance by the purchaser, consistent with section 365 of the Bankruptcy Code; and (iv) an affidavit of the broker or auctioneer, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that identifies the broker or auctioneer and the amount of the proposed Commissions and contains the disclosures required by Bankruptcy Rule 2014.  The Debtors may, but are not required to, file a copy of the Sale Notice with the Court.

(b)      The Sale Notice Parties will have until 5:00 p.m. (prevailing New York Time) on the tenth business day following the service of the Sale Notice (the "Objection Deadline") to object to the Proposed Sale and the payment of any Commissions.  Any such objection (an "Objection") must be: (i) made in writing, stating the objection with specificity; and (ii) filed with the Court and served on counsel to the Debtors and the other Sale

Notice Parties so as to be received by the Objection Deadline.  The Objection Deadline and required service addresses will be identified in the Sale Notice.

(c)    If no Objection is properly filed and served by the Objection Deadline, the Debtors (having previously consulted with the Creditors' Committee) will be authorized, without further notice and without further Court approval to:  (i) either (A) for De Minimis Assets to be sold by Private Sale, consummate the Proposed Sale in accordance with the terms and conditions of the underlying contract or contracts or (B) for De Minimis Assets to be sold at Auction, conduct the Auction and sell the assets at the Auction, _provided_, _however_, that no sale at an Auction may be completed for consideration below the Minimum Bid identified in the applicable Sale Notice;[2] and (ii) take such other actions as are necessary to close the transaction and collect the proceeds of such sale, including, without limitation, payment of any Commissions, and assumption and assignment or rejection of the executory contracts and unexpired leases described in the Sale Notice and payment of the Cure Claims proposed in such notice.

(d)    If a Sale Notice Party files and serves an Objection to the Proposed Sale by the Objection Deadline, the Debtors and such objecting party will use good faith efforts to resolve the objection consensually.  If the Debtors and the objecting Sale Notice Party are unable to resolve the objection, the Debtors will not consummate the proposed transaction without first obtaining Court approval of such Proposed Sale, including the payment of any Commissions, upon notice and a hearing; _provided_, _however_, that, with the agreement of the Proposed Purchaser, the Debtors may consummate any portion of the Proposed Sale that is not a subject of the Objection.

(e)    Any valid and enforceable liens on the property to be sold shall attach to the net proceeds of the Proposed Sale in the same priority as existed prior to such sale and subject to any claims and defenses that the Debtors may possess with respect thereto.  To the extent not inconsistent with the Final DIP Order or other orders of the Court providing access to financing or cash collateral, net sale proceeds shall be held for distribution in a segregated account, subject to distribution under a chapter 11 plan, or other appropriate order of the Court.

(f)    If the sale transaction is to be completed by a Private Sale, to the extent that a competing bid is received for the purchase of De Minimis Assets in

---

[2]    If no Notice Party files an Objection to the Minimum Bid proposed for an Auction, or any such Objections are resolved so that the Auction may proceed, the Debtors may (in consultation with the Creditors' Committee) sell the applicable De Minimis Asset at the Auction for any price above the Minimum Bid, even if the sale price exceeds $10 million.

a particular Proposed Sale after service of the Sale Notice that, in the Debtors' sound business judgment in consultation with the Creditors' Committee, materially exceeds the value of the purchase price contained in the Sale Notice, then the Debtors may file and serve an amended Sale Notice for the Proposed Sale to the subsequent bidder pursuant to the Sale Notice Procedures, even if the proposed purchase price exceeds $10 million.

(g)     The relevant Debtor or Debtors may consummate a Proposed Sale prior to the expiration of the applicable Objection Deadline if the Debtor or Debtors obtain each Notice Party's written consent to the Proposed Sale. The applicable Proposed Sale, including the assumption and assignment or rejection of executory contracts and unexpired leases proposed in connection with the sale, will be deemed final and fully authorized by the Court upon either (i) for a Private Sale, (A) the expiration of the Objection Deadline without the assertion of any Objections or (B) the written consent of all Notice Parties; or (ii) for a sale by Auction, (A) the expiration of the Objection Deadline without the assertion of any Objections or the written consent of all Notice Parties and (B) the Debtors' acceptance of a qualifying bid equal to or in excess of the Minimum Bid at the Auction.

(h)     If the sale transaction is completed at an Auction, the applicable Debtor or Debtors will file with the Court and serve upon the Notice Parties a report of the results of the Auction within ten days after the conclusion of the Auction.

6.     On July 30, 2009, and on the last business day of each calendar month thereafter, the Debtors shall file and serve upon counsel to the Creditors' Committee a report containing the following information concerning Reportable Sales (as defined below) made during the prior calendar month:  (a) a description of the assets actually sold; (b) the buyer(s) for each such transaction; and (c) for each sale, the total consideration actually received. "Reportable Sales" means Proposed Sales that have not been described in a Sale Notice and involve the sale of De Minimis Assets for consideration that is greater than $250,000.

7.     Upon the closing of a Private Sale or Auction, the Debtors may (a) assume any executory contract or unexpired lease to be assigned to a Proposed Purchaser or other non-Debtor third party as a part of the Proposed Sale and provide for the payment of the Cure Claims

disclosed in the Sale Notice (either directly or by the Proposed Purchaser consistent with the terms of the Proposed Sale) and (b) reject any executory contract or unexpired lease identified for rejection in the Sale Notice.  No executory contract or unexpired lease shall be assumed absent concurrent assignment to a Proposed Purchaser or other non-Debtor third party. The nondebtor parties to any executory contracts or unexpired leases are hereby barred from asserting any further cure claims in respect of such executory contracts or unexpired leases after the objection period for a Proposed Sale has passed.

8.      The ten-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived with respect to each Proposed Sale conducted in accordance with this Order, and the Debtors may close Proposed Sales as set forth herein without reference to such stay.

9.      Nothing in the Sale Notice Procedures or otherwise provided in this Order shall prevent the Debtors, in their sole discretion, from seeking Court approval of any Proposed Sale upon notice and a hearing or, if necessary to comply with a condition on a sale imposed by a purchaser, to submit a separate order to the Court along with a notice of presentment to be entered without need for a hearing on the matter.

10.      Sales of De Minimis Assets conducted in accordance with this Order shall be deemed to be arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

11.      All purchasers shall take De Minimis Assets sold by the Debtors pursuant to the authority granted in this Order "as is" and "where is" without any representations or warranties from the Debtors as to quality or fitness for either their intended purposes or any particular purposes.

12.     The Debtors (in consultation with the Creditors' Committee) and their respective officers, employees and agents are authorized to perform all obligations, take whatever actions may be necessary or appropriate and issue, execute and deliver whatever documents may be necessary or appropriate to implement and effectuate any disposition of De Minimis Assets.

13.     Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the disposition of De Minimis Assets.  The registrar or recorder of deeds (or other similar recording agency) is hereby directed to accept and include a certified copy of this Order along with any other appropriate conveyance documents used to record and index the transfer of any De Minimis Assets in the appropriate public records.

14.     Pursuant to the terms of the DIP Financing Agreement and Final DIP Order, the DIP Lender holds valid, duly perfected security interests in and liens upon the De Minimis Assets.  Nothing contained herein shall be deemed a waiver by the DIP Lender of any required approval or disapproval of any sale, whether pursuant to this Order or otherwise.

15.     No further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein.

16.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
       June 18, 2009                          **s/ Arthur J. Gonzalez**
                                              UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

*Charter* De Minimis Sale Procedures Order

US_ACTIVE:\43113541\07\43113541_7.DOC\72240.0639

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) | Case No. 09-11435 (JMP) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## ORDER APPROVING PROCEDURES FOR THE SALE, TRANSFER OR ABANDONMENT OF DE MINIMIS ASSETS

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors (collectively, the

"<u>Debtors</u>")[1] for the entry of an order (the "<u>Order</u>") approving procedures of the sale, transfer or

---

[1]    The Debtors in these cases include:  Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.;  CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO,


0911435090415000000000031

abandonment of De Minimis Assets;[2] and it appearing that the relief requested is in the best

interests of the Debtors' estates, their creditors and other parties in interest; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been adequate and appropriate

under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is

hereby ORDERED

    1.       The Motion is granted as set forth herein in its entirety.

    2.       Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to

sell or transfer the De Minimis Assets in accordance with the following procedures (the

"De Minimis Asset Sale Procedures"):

            a.      With regard to sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price[3] equal to or less than $1,000,000:

---

LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[3]   For purposes of these procedures, selling price shall refer to the Debtors' estimate of the net proceeds of any sale transaction.

i.    The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of the estates, subject to the procedures set forth herein;

ii.    The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of the estates, subject to the procedures set forth herein;

iii.    Any such transaction(s) shall be free and clear of all Liens, with such Liens attaching only to the sale or transfer proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

iv.    The Debtors shall give written notice of each such sale or transfer (a "Sale Notice") to (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and (b) counsel to the Committee at least five (5) business days prior to the closing of such sale or transfer;

v.    The content of the Sale Notice shall consist of (a) identification of the De Minimis Assets being sold or transferred, (b) identification of the purchaser of the assets, (c) the purchase price and (d) the significant terms of the sale or transfer agreement;

vi.    If no written objections from (a) the U.S. Trustee or (b) counsel to the Committee are received by the Debtors within five (5) business days after the date of receipt of such Sale Notice, then the Debtors are authorized to immediately consummate such sale or transfer after entry of an order approving such Sale under certification of counsel;

vii.    If (a) the U.S. Trustee or (b) counsel to the Committee submits a written objection to any such sale or transfer to the Debtors within five (5) business days after receipt of such Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon either the consensual resolution of

3

the objection by the parties in question or further order of the Court after notice and a hearing; and

viii. The Debtors will provide a written report to the Court, the U.S. Trustee, counsel to the Committee and those parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), beginning with the calendar quarter ending on March 31, 2009, and each calendar quarter thereafter, no later than 30 days after the end of each such calendar quarter, concerning any such sales made during the preceding calendar quarter pursuant hereto, including the names of the purchasing parties and the types and amounts of the sales (each, a "Quarterly Report").

b. With regard to the sales or transfers of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a selling price greater than $1,000,000 and up to or equal to $15,000,000:

i. The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales or transfers are in the best interests of the estates, subject to the procedures set forth herein;

ii. Any such transaction(s) shall be free and clear of all Liens, with such Liens attaching only to the sale or transfer proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to such sale or transfer;

iii. The Debtors shall give a Sale Notice to (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant De Minimis Asset(s); and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties") at least five (5) business days prior to the closing of such sale or transfer;

iv. The content of the Sale Notice shall consist of (a) identification of the De Minimis Assets being sold

4

or transferred, (b) identification of the purchaser of the assets, (c) the purchase price and (d) the significant terms of the sale or transfer agreement;

v.    If no written objections from any of the Notice Parties are filed with this Court within five (5) business days after the date of receipt of such Sale Notice, then the Debtors are authorized to immediately consummate such sale or transfer after entry of an order approving such Sale under certification of counsel; and

vi.   If any Notice Party files a written objection to any such sale or transfer with the Court within five (5) business days after receipt of such Sale Notice, then the relevant De Minimis Asset shall only be sold or transferred upon either the consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing.

3.     Sales to "insiders," as that term is defined in Section 101 of the Bankruptcy Code, are not covered by this Order.

4.     Sales of De Minimis Assets shall be deemed arm's-length transactions entitled to the protections of Section 363(m) of the Bankruptcy Code.

5.     No objection to the relief requested in the Motion combined with no timely objection to the sale or transfer of the De Minimis Assets in accordance with the terms of this Order shall be determined to be "consent" to such sale or transfer within the meaning of 11 U.S.C. § 363(f)(2).

6.     The Debtors are authorized pursuant to section 554(a) of the Bankruptcy Code to abandon De Minimis Assets in accordance with the following procedures (the "De Minimis Asset Abandonment Procedures"):

a.    The Debtors shall give written notice of the abandonment (the "Abandonment Notice") to the Notice Parties;

b.    The Abandonment Notice shall contain a description in reasonable detail of the De Minimis Assets to be

5

abandoned and the Debtors' reasons for such abandonment;

c.  If no written objections from any of the Notice Parties are filed with the Court within five (5) business days after the date of receipt of such Abandonment Notice, then the Debtors are authorized to immediately proceed with the abandonment; and

d.  If a written objection from any Notice Party is filed with the Court within five (5) business days after receipt of such Abandonment Notice, then the relevant De Minimis Asset shall only be abandoned upon either the consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing.

7.  The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this order in accordance with the Motion, including paying those necessary fees and expenses incurred in the sale or abandonment of De Minimis Assets (including, but not limited to, commission fees to agents, brokers, auctioneers and liquidators).

8.  The terms and conditions of this Order shall be immediately effective and enforceable upon entry of the Order.

9.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: April 15, 2009

_s/ James M. Peck_
United States Bankruptcy Judge

6

**Exhibit B-1**

*Charter* – April 15, 2009 Hearing Agenda

Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

   - and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

Proposed Counsel to the Debtors and Debtors in Possession
(other than Charter Investment, Inc.)

   - and -

Albert Togut
Frank A. Oswald
TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York  10119
Telephone:    (212) 594-5000
Facsimile:    (212) 967-4258

Proposed Counsel to the Debtor and Debtor in Possession
Charter Investment, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) | Case No. 09-11435 (JMP) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**AGENDA FOR APRIL 15, 2009 HEARING**


0911435090414000000000008

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") respectfully submit the following agenda (the "Agenda") with respect to the hearing scheduled for **Wednesday, April 15, 2009** at **9:45 a.m.** (Prevailing Eastern Time) (the "April 15 Hearing").

Location of Hearing:    The Honorable James M. Peck, Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, Courtroom 601, New York, New York 10004-1408.

Response Deadline:    All responses or objections to any of the motions or applications to be heard at the April 15 Hearing must have been received on or before **April 13, 2009** at **4:00 p.m.** (Prevailing Eastern Time).

Copies of Motions:    A copy of each pleading can be viewed on the Court's website at www.ecf.nysb.uscourts.gov and at the website of the Debtors'[1] notice, claims and balloting agent, www.kccllc.net/charter.

---

[1]    The Debtors in these cases include:  Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.;  CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO,

(Continued…)

A.    **Financing and Trade Motions**

1.    **Trade** - Debtors' Motion for Entry of an Order Authorizing Payment of Prepetition Claims of Trade Creditors in the Ordinary Course of Business [Docket No. 28].

- **Responses Received:**  Limited Objection of Law Debenture Trust Company of New York as Indenture Trustee to the Debtors' Motion for Entry of an Order Authorizing Payment of Prepetition Claims of Trade Creditors in the Ordinary Course of Business [Docket No. 142] (OBJECTION CONSENSUALLY RESOLVED).

- **Status:**  The Debtors will present a Revised Order to the Court.

2.    **Cash Management** - Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing, But Not Directing, Debtors to Continue Their Existing Cash Management System, Bank Accounts and Business Forms, (B) Granting Postpetition Intercompany Claims Administrative Expense Priority, (C) Authorizing Continued Investment of Excess Funds in Investment Accounts and (D) Authorizing Continued Intercompany Arrangements and Historical Practices [Docket No. 9].

- **Responses Received:**  Objection of the United States Trustee to Debtors' Motion for Entry of Final Order (A) Authorizing, But Not Directing, Debtors to Continue Their Existing Cash Management System, Bank Accounts and Business Forms, (B) Granting Post-Petition Intercompany Claims Administrative Expense Priority, (C) Authorizing Continued Investment of Excess Funds in Investment Accounts, and (D) Authorizing Continued Intercompany Arrangements and Historical Practices [Docket No. 135].

- **Status:**  An Interim Order was entered on March 30, 2009 [Docket No. 65].  The Debtors seek entry of a Final Order.

---

LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

3.    **Cash Collateral** - Debtors' Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Adequate Protection Parties and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) [Docket No. 7].

- **Responses Received:**  Limited Objection of the First Lien Lender Group to Debtors' Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363, and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Adequate Protection Parties and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B) [Docket No. 51].

- **Status:**  An Interim Order was entered on March 30, 2009 [Docket No. 69].  The Debtors seek entry of a Final Order.

4.    **Second Lien Adequate Protection** - Debtors' Motion for Entry of Order Under 11 U.S.C. §§ 105, 362, 363, and Fed. R. Bankr. P. 2002 and 4001 Granting Adequate Protection to Second Lien Secured Parties [Docket No. 29].

- **Responses Received:**  None

- **Status:**  The Debtors seek entry of a Final Order.

5.    **Third Lien Adequate Protection** - Debtors' Motion for Entry of Order Under 11 U.S.C. §§ 105, 361, 362, 363 and Fed. R. Bankr. P. 2002 and 4001 Granting Adequate Protection to Third Lien Secured Parties [Docket No. 35].

- **Responses Received:**  None

- **Status:**  The Debtors seek entry of a Final Order.

6.    **Surety Bonds** - Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Fed. R. Bankr. P. 4001 Authorizing Debtors to Enter Into DIP Surety Bond Program [Docket No. 8].

- **Responses Received:**  None.

- **Status:**  An Interim Order was entered on March 30, 2009 [Docket No. 68].  The Debtors seek entry of a Final Order.

7.    **NOLs** - Debtors' Motion for Entry of Interim and Final Orders Establishing Notification and Hearing Procedures for Transfers of Common Stock [Docket No. 10].

4

- **Responses Received:**  None

- **Status:**  An Interim Order was entered on March 30, 2009 [Docket No. 67].  The Debtors seek entry of a Final Order.

B.    **Professionals' Applications/Motions**

1.    <u>**Kirkland & Ellis**</u> - Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors In Possession Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 34].

- **Responses Received:**  Statement of Law Debenture Trust Company of New York with Respect to Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtors Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 143].

- **Status:**  The First Supplemental Declaration of Richard M. Cieri in Support of the Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtors Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 140] was filed on April 10, 2009.  The Debtors seek entry of a Final Order.

2.    <u>**Lazard Frères & Co.**</u> - Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Financial Advisor and Investment Banker to the Debtors [Docket No. 108].

- **Responses Received:**  None

- **Status:**  The Declaration /Supplemental Declaration of James Millstein in Support of Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Lazard Frères & Co. LLC as Financial Advisor and Investment Banker to the Debtors [Docket No. 152] was filed on April 13, 2009.  The Debtors seek entry of a Final Order.

3.    <u>**Togut, Segal & Segal**</u> - Debtors' Application for Entry of an Order Pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 6003 Authorizing the Employment and Retention of Togut, Segal & Segal LLP as Bankruptcy Counsel to the Debtor, <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 2] [Case No. 09-11540 (JMP)].

- **Responses Received:**  None

5

- **Status:** The Debtors seek entry of a Final Order.

4.   **<u>AlixPartners</u>** - Debtors' Application for Entry of an Order Authorizing the Employment and Retention of AlixPartners, LLP as Their Restructuring Advisor <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 16].

- **Responses Received:** None

- **Status:** The Declaration /Supplemental Declaration of Ted Stenger of AlixPartners, LLP as Restructuring Advisor to the Debtors [Docket No. 149] was filed on April 13, 2009. The Debtors seek entry of a Final Order.

5.   **<u>Curtis, Mallet-Prevost, Colt & Mosle</u>** - Debtors' Application for an Order Authorizing the Employment and Retention of Curtis, Mallet-Prevost, Colt & Mosle LLP as Conflicts Counsel for the Debtors <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 17].

- **Responses Received:** None

- **Status:** The Debtors seek entry of a Final Order.

6.   **<u>Davis Wright Tremaine</u>** - Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Davis Wright Tremaine LLP as Special Regulatory Counsel to the Debtors [Docket No. 110].

- **Responses Received:** None

- **Status:** The Declaration /First Supplemental Declaration of Paul Glist in Support of the Application by the Debtors for Authority to Employ and Retain Davis Wright Tremaine LLP as Special Regulatory Counsel to the Debtors [Docket No. 151] was filed on April 13, 2009. The Debtors seek entry of a Final Order.

7.   **<u>Friend Hudak and Harris</u>** - Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Friend, Hudak & Harris, LLP as Special Telecommunications Counsel to the Debtors [Docket No. 18].

- **Responses Received:** None

- **Status:** The Debtors seek entry of a Final Order.

8.   **<u>Duff & Phelps</u>** - Debtors' Application for an Order Authorizing the Employment and Retention of Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors In Possession <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 19].

- **Responses Received:** None

- **Status:** The Declaration /First Supplemental Declaration of John E. Kane in Support of the Debtors' Application to Employ and Retain Duff & Phelps LLC as Valuation Consultants for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date [Docket No. 150] was filed on April 13, 2009.  The Debtors seek entry of a Final Order.

9.    **Financial Balloting Group** - Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Financial Balloting Group LLC as Voting and Subscription Agent to the Debtors [Docket No. 109].

- **Responses Received:** None

- **Status:** The Debtors seek entry of a Final Order.

10.    **Interim Compensation** - Debtors' Motion for Entry of an Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 26].

- **Responses Received:** None

- **Status:** The Debtors seek entry of a Final Order.

11.    **Ordinary Course Professionals** - Debtors' Motion for Entry of an Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business [Docket No. 25].

- **Responses Received:** None

- **Status:** The Debtors seek entry of a Final Order.

C.    **Operational Motions**

1.    **Utilities** - Debtors' Motion for Entry of Interim and Final Orders Determining Adequate Assurance and Payment for Future Utility Services [Docket No. 24].

- **Responses Received:**  (a) Limited Objection of Alabama Power Company to Debtors' Motion for Entry of Interim and Final Orders Determining Adequate Assurance of Payment for Future Utility Services [Docket No. 145]; and (b) Request for Adequate Assurance of Future Payment and Objection of A & N Electric Cooperative to Debtors' Motion for Entry of an Order Determining Adequate Assurance of Payment for Future Utility Services [Docket No. 146].

7

- **Status:** The Debtors seek entry of an Interim Order.

2.   **Wages and Benefits** - Debtors' Motion for Entry of Interim and Final Orders Authorizing, But Not Directing, the Debtors to (A) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (B) Pay and Honor Employee Medical and Other Benefits and (C) Continue Employee Wages and Benefits Programs [Docket No. 11].

- **Responses Received:** None

- **Status:** An Interim Order was entered on March 30, 2009 [Docket No. 70]. The Debtors seek entry of a Final Order.

3.   **Shippers/Lien Claimants** - Debtors' Motion for Entry of Interim and Final Orders Authorizing, But Not Directing, Debtors to Pay Prepetition Claims of Shippers, Warehousemen and Miscellaneous Lien Claimants [Docket No. 12].

- **Responses Received:** None

- **Status:** An Interim Order was entered on March 30, 2009 [Docket No. 63]. The Debtors seek entry of a Final Order.

4.   **Insurance** - Debtors' Motion for Entry of Interim and Final Orders Authorizing, But Not Directing, Debtors to (A) Maintain Prepetition Insurance Policies, (B) Enter Into New Insurance Policies, (C) Maintain Premium Financing Agreements and (D) Enter Into New Premium Financing Agreements [Docket No. 14].

- **Responses Received:** None

- **Status:** An Interim Order was entered on March 30, 2009 [Docket No. 61]. The Debtors seek entry of a Final Order.

5.   **Taxes** - Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing, But Not Directing, the Debtors to Remit and Pay Certain Taxes and Fees and (B) Authorizing and Directing Banks and Other Financial Institutions to Honor Related Checks and Electronic Payment Requests [Docket No. 15].

- **Responses Received:** None

- **Status:** An Interim Order was entered on March 30, 2009 [Docket No. 60]. The Debtors seek entry of a Final Order.

6.   **Executory Contracts and Unexpired Lease Rejection** - Debtors' Motion for Entry of An Order (I) Authorizing and Approving Expedited Procedures for the Rejection of Executory Contracts and Unexpired

Leases of Personal and Non-Residential Real Property and (II) Authorizing the Debtors to Reject Certain Unexpired Leases of Non-Residential Real Property [Docket No. 111].

- **Responses Received:** Response to Motion to Reject Executory Contracts and Unexpired Leases filed by Matthew R.K. Waterman on behalf of Wolfe Realty Investors, L.L.C. [Docket No. 158] (LATE FILING - filed on April 14, 2009 at 12:10 p.m.; response deadline was April 13, 2009 at 4:00 p.m.)

- **Status:** The Debtors seek entry of a Final Order.

7.  **<u>De Minimis Assets</u>** - Debtors' Motion for Entry of an Order Approving Procedures for the Sale, Transfer or Abandonment of De Minimis Assets [Docket No. 27].

- **Responses Received:** None

- **Status:** The Debtors seek entry of a Final Order.

**Exhibit C**

<u>*Lyondell* De Minimis Sale Procedures Order</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                :

In re:                             :

                                :        **Chapter 11**

**LYONDELL CHEMICAL COMPANY, et al.,** :        **Case No. 09-10023**

                                :        **Jointly Administered**

                  **Debtors.**     :

                                :

-----------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(A), 363 AND 554 OF THE BANKRUPTCY
CODE APPROVING PROCEDURES FOR (A) THE SALE OF CERTAIN ASSETS
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND THE
PAYMENT OF MARKET RATE BROKER COMMISSIONS IN CONNECTION
WITH SALES AND (B) THE ABANDONMENT OR DONATION OF
<u>CERTAIN PERSONAL PROPERTY</u>**

Upon consideration of the motion (the "<u>Motion</u>")[1] of Lyondell Chemical

Company and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the

above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>" and each, a "<u>Debtor</u>"), seeking

entry of an order pursuant to sections 105(a), 363 and 554 of title 11 of the United States Code,

11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>") approving procedures for (a) the

sale of certain assets free and clear of liens, claims and encumbrances and the payment of market

rate broker commissions in connection with those sales and (b) the abandonment or donation of

certain personal property; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. § 1334; and upon consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided; and it appearing that no other further notice need be provided;

---

[1] Capitalized terms not defined herein shall be as defined in the Motion.

and the relief requested being in the best interest of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and all objections to the Motion having been overruled or resolved; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to sell in accordance with the procedures set forth herein, certain property and interests in property without further order of the Court; and it is further

**ORDERED** that the procedures set forth below for the sale by the Debtors of property and interest in property are hereby authorized and established in these chapter 11 cases:

a. If the sale price[2] is less than $1,000,000, the Debtors are authorized to sell property in an arms' length transaction, without further notice or further order of the Court, provided, however, (i) that the Debtors have provided or will provide to the United States Department of Justice, to the Committee, to the DIP Agents (as defined herein), to the Prepetition Secured Lenders (as defined herein), to counsel to the Texas Commission on Environmental Quality and to the Ad Hoc Group of Senior Secured Lenders, a list of all property that they own or operate where there is a known environmental contamination and that the Debtors will not sell any such property for a sale price of less than $1,000,000 without 10 days notice to such parties; and the procedures detailed in subparagraph (b) shall apply only to the Department of Justice, the Texas Commission on Environmental Quality and the Committee with respect to any such sales; and (ii) that the sale for less than $1,000,000 of any individual asset having a book value, reasonably ascertainable by the Debtors, of $3,000,000 or more shall be governed by subparagraph (b) below. Any sale

---

[2]    For purposes of the Sale Procedures, the sale price is the net benefit estimated to be realized by the Debtors' estates (which shall include but not be limited to any liabilities to be assumed by the purchaser (to the extent quantifiable or reasonably estimable)).

shall be free and clear of all liens, claims and encumbrances, with any liens, claims and encumbrances attached to the net sale proceeds with the same force, validity, priority, perfection and effect as those liens had on the property immediately prior to the sale, subject to any claims and defenses that the Debtors may possess with respect thereto. Net sale proceeds will be utilized by the Debtors in accordance with the terms of the Debtor-In-Possession Credit Agreement, dated as of March 3, 2009 (as amended, supplemented or otherwise modified from time to time, the "Term DIP Credit Agreement"), and the Debtor-In-Possession Credit Agreement, dated as of March 3, 2009 (as amended, supplemented or otherwise modified from time to time, the "ABL DIP Credit Agreement"; together with the Term DIP Credit Agreement, the "DIP Credit Agreement") governing the use of those proceeds.

b.  If the sale price is from $1,000,000 to $10,000,000:

(i)    The Debtors will give notice via e-mail, facsimile, or overnight delivery service of each proposed sale to (i) the Office of the United States Trustee, 33 Whitehall Street, New York, NY 10004 (Attn: Paul Schwartzberg, Esq.); (ii) Davis Polk & Wardwell, counsel to the ABL DIP Credit Agreement Agent, 450 Lexington Avenue, New York, New York 10017 (Attn: Marshall S. Huebner, Esq.) and Simpson Thacher & Bartlett LLP, counsel to the Term DIP Credit Agreement Agent, 425 Lexington Avenue, New York, New York 10017 (Attn: Kathrine A. McLendon, Esq. and Anne L. Knight, Esq.) (the ABL DIP Credit Agreement Agent and the Term DIP Credit Agreement Agent, together, the "DIP Agents"); (iii) counsel to each agent or indenture trustee for its prepetition secured lenders (together, the "Prepetition Secured Lenders"); (iv) counsel to the Committee; (v) counsel to the Ad Hoc Group of Senior Secured Lenders, Milbank, One Chase Manhattan Plaza, New York, New York 10005 (Attn: Matthew Barr, Esq.); (vi) the United States Department of Justice, 86 Chambers Street, New York, New York 10007 (Attn: Pierre G. Armand, Esq.); (vii) counsel to Occidental Chemical Company, Haynes and Boone, LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75219 (Attn: Scott Everett, Esq.); (viii) counsel to Oracle USA, Inc., Day Pitney LLP, 7 Times Square, New York, New York 10036 (Attn: Amish R. Doshi, Esq.) and Buchalter Nemer, PC, 333 Market Street San Francisco, California 94105 (Attn: Shawn M. Christianson, Esq.); (ix) counsel to the Texas Commission on Environmental Quality, Office of Attorney General of Texas, Bankruptcy & Collections Division, P.O. Box 12548, Austin, Texas 78711 (Attn: Hal F. Morris, Esq. and Ashley F. Bartram, Esq.) and (x) any other party that the Debtors believe has an interest in or lien on, or that has asserted an interest in or lien on, the relevant assets to be sold (together, the "Notice

Parties"). The notice will specify the assets to be sold, the identity of the purchaser, the sale price and any applicable Broker Commission (as defined herein) (the "Sale Notice").

(ii)     The Notice Parties will have 10 business days from the date on which the Sale Notice is sent to object to the proposed transaction. Any objection must be in writing and delivered to counsel to the Debtors, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281 (Attn: Deryck A. Palmer, Esq. and Christopher R. Mirick, Esq.) and counsel to the Committee, Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Ed Weisfelner, Esq.). If no timely written objection is received by Debtors' counsel, the Debtors will be authorized to consummate the proposed arms' length sale transaction and to take any actions as are reasonable or necessary to close the transaction, obtain the sale proceeds and pay the Broker Commission. The Debtors may consummate a proposed sale promptly upon obtaining approval by the Notice Parties or passing of the 10-day period without objection.

(iii)    If any Notice Party delivers a timely objection to the proposed transaction, the Debtors and the objecting Notice Party will use good faith efforts to resolve the objection. If the Debtors and the objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not proceed with the proposed transaction pursuant to these Sale Procedures absent Court approval of the proposed transaction, which approval may be sought upon expedited notice and a hearing, subject to the Court's availability.

(iv)    If the Debtors, after service of a Sale Notice but prior to expiration of the 10-day period, receive a competing bid for an asset, that the Debtors, in their business judgment, believe exceeds the value of the sale price contained in the Sale Notice, the Debtors may file and serve an amended Sale Notice for the proposed sale to the subsequent bidder pursuant to the Sale Procedures, even if the new proposed purchase price exceeds $10,000,000.

(v)     Any sale shall be free and clear of all liens, claims and encumbrances, with any liens, claims and encumbrances attached to the net sale proceeds with the same force, validity, priority, perfection and effect as these liens had on the property immediately prior to the sale, subject to any claims and defenses that the Debtors may possess with respect thereto or that the Committee may possess, if any, on behalf of the Debtors with respect thereto. Net sale proceeds will be utilized by the Debtors

in accordance with the terms of any postpetition financing agreement provisions governing the use of those proceeds.

(vi)    Nothing in the foregoing Sale Procedures will prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed transaction upon notice and a hearing.

c.  If the sale price is greater than $10,000,000, the Debtors will file a motion with the Court requesting approval of the sale pursuant to section 363 of the Bankruptcy Code.

d.  The Debtors will file with the Court, on a quarterly basis beginning 90 days after entry of this Order, reports of all sales by the Debtors with a sale price of $10,000,000 or less during that quarter pursuant to the authority requested in the Motion.  The reports will set forth a description of the property, the name of the purchaser, the sale price and any applicable Broker Commission.  The Debtors shall file each report within 30 days after the end of each calendar quarter;

and it is further

**ORDERED** that no agreement for the sale of any asset under these Sale Procedures is final and binding on the Debtors, or any other party, unless and until all provisions of the Sale Procedures have been met; and it is further

**ORDERED** that, pursuant to section 363(f) of the Bankruptcy Code, all sales of property and interests in property pursuant to this Order shall be free and clear of all liens, claims and encumbrances (collectively, "Liens"), if any, with any and all valid and perfected Liens to attach to net proceeds of the sales with the same validity, priority, force and effect those Liens had on the property immediately prior to the sale, and subject to the rights, claims, defenses and objections, if any, of the Debtors or any rights, claims defenses and objections that the Committee may possess, if any, on behalf of the Debtors and of all interested parties with respect to any asserted Liens; provided, however, that if any liens exist or have been asserted against the property proposed to be sold for between $1,000,000 and $10,000,000 other than those asserted by the DIP Lenders or the lenders represented by the Prepetition Secured Lenders, (a) the lack of any timely objection by any alleged lienholder to the proposed sale shall be deemed consent by

that lienholder; and (b) if there is an objection by an alleged lienholder that the Debtors are unable to resolve, the Debtors reserve the right to request a hearing before the Court to demonstrate that section 363(f) of the Bankruptcy Code has been satisfied; and it is further

**ORDERED** that purchasers of property sold by the Debtors pursuant to this Order shall be entitled to the protections afforded by section 363(m) of the Bankruptcy Code in the event of a reversal or modification on appeal of this Order; and it is further

**ORDERED** that the sale transactions consummated pursuant to this Order shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order; and each and every federal, state, and local governmental agency or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title to any particular purchaser, and such agency or department shall rely upon this Order in consummating the transactions contemplated hereby; and it is further

**ORDERED** that the Debtors are authorized to pay, without further Court approval, market rate broker commissions (collectively, the "Broker Commissions" and each, a "Broker Commission") for brokers utilized in the ordinary course of the Debtors' business in connection with any sales of property and interests in property made pursuant to the Sale Procedures as provided herein; and it is further

**ORDERED** that the Debtors are authorized to abandon or donate personal property that, in their business judgment, is not needed in their ongoing businesses and

reorganization efforts, that is of inconsequential value to the estates or for which the costs associated with its sale exceed the proceeds that would be generated therefrom; and it is further

**ORDERED** that the following procedures for abandonment or donation of personal property by the Debtors are hereby authorized and established in these chapter 11 cases:

a. The Debtors shall give notice via e-mail, facsimile, or overnight delivery service of each proposed abandonment or donation to the Notice Parties and to any party known to the Debtors as having an interest in the property to be abandoned or donated (collectively with the Notice Parties, the "Abandonment Notice Parties").  As required by Local Bankruptcy Rule 6007-1, the notice will describe the property to be abandoned or donated, the reason for the abandonment or donation, the parties known to the Debtors as having an interest in the property to be abandoned, and the entity to which the personal property is to be abandoned or donated (the "Abandonment Notice").

b. Abandonment Notice Parties will have 10 business days from the date on which the Abandonment Notice is sent to object to the proposed abandonment or donation.  Any objection must be in writing and delivered to counsel to the Debtors, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281 (Attn: Deryck A. Palmer, Esq. and Christopher R. Mirick, Esq.).  If no timely written objection is received by Debtors' counsel, the Debtors will be authorized to abandon or donate the property.  The Debtors may abandon or donate the property promptly upon obtaining approval by the Abandonment Notice Parties or upon the expiration of the 10-day period with no objection.

c. If any Abandonment Notice Party timely delivers an objection to the proposed abandonment or donation, the Debtors and the objecting Abandonment Notice Party will use good faith efforts to resolve the objection. If the Debtors and the objecting Notice Party are unable to achieve a consensual resolution, the Debtors will not proceed with the proposed transaction pursuant to these procedures absent Court approval of the proposed transaction which approval may be sought upon expedited notice and a hearing, subject to the Court's availability.

d. Nothing in the foregoing procedures will prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time for any proposed abandonment or donation upon notice and a hearing.

e. The Debtors will file with the Court, on a quarterly basis beginning 90 days after entry of this Order, reports of all abandonments or donations by the Debtors during that quarter pursuant to the authority requested in this Motion. The reports will set forth a description of the property, the reason for the

abandonment, and the party to which the property was abandoned. The Debtors shall file each report within 30 days after the end of each calendar quarter;

and it is further

**ORDERED** that nothing in this Order or any purchase agreement entered into under this Order, releases, nullifies or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; and it is further

**ORDERED** that nothing in this Order shall be deemed to allow the Debtors to abandon real or personal property in violation of any applicable state or federal laws or regulations, including but not limited to environmental laws and regulations; and it is further

**ORDERED** that, notwithstanding any other provision of this Order, the Debtors shall not abandon any radiation equipment or radioactive materials in the state of Texas. In the event of a sale of radiation equipment or radioactive materials in Texas, the Debtors shall ascertain that the purchaser is authorized under applicable laws and regulations to possess the equipment being sold and shall notify the Texas Department of State Health Services within 24 hours of the transfer. The Debtors shall comply with all applicable state laws and regulations, including 25 T.A.C.§§ 289.203-205, 289.226, 289.228 and 289.231.

**ORDERED** that any purchase agreement entered into under this Order shall state that "This sale agreement is subject to the terms of" this Order; and it is further

**ORDERED** that, notwithstanding anything herein to the contrary, (i) for any sale assignment, transfer, abandonment or other disposition of assets where the sale price is less than $1 million, and such transaction includes any software, license or service agreement that is the subject of an executory contract or unexpired lease between one or more of the Debtors and Oracle USA, Inc. (the "Oracle Agreements"), the Debtors shall not sell, assign, transfer, abandon

or otherwise dispose of the Oracle Agreements, without prior written notice to counsel for Oracle

USA Inc. ("Oracle") and an opportunity for hearing on any Oracle objection filed thereto (the

notice and time period to object to such transactions shall, for Oracle, be the same as if the sale

price was from $1 million to $10 million under subparagraph (b) of the Sale Procedures above);

(ii) the Debtors shall not sell, assign, transfer or abandon or otherwise dispose of any railcars in

which Occidental Chemical Company ("Occidental") has asserted an interest or in which the

Debtors reasonably believe Occidental has an interest, for $1 million or less, without prior

written notice to Occidental's counsel and an opportunity for hearing on any Occidental

objection filed thereto (the notice and period to object to such transactions shall, for Occidental,

be the same as if the sale price was from $1 million to $10 million under subparagraph (b) of the

Sale Procedures above); (iii) the Debtors shall not sell, assign, transfer or abandon or otherwise

dispose of any assets from the ethylene manufacturing facility that is currently idled in Lake

Charles Louisiana, together with the pipelines appurtenant thereto owned by Occidental for $1

million or less without prior written notice to Occidental's counsel and an opportunity for

hearing on any Occidental objection filed thereto (the notice and period to object to such

transactions shall, for Occidental, be the same as if the sale price was from $1 million to $10

million under subparagraph (b) of the Sale Procedures above); (iv) the Debtors will not sell,

assign, transfer or abandon or otherwise dispose of any property on which any of Greif, Inc. or

its affiliates;[3] Jacobs Field Services North America, Inc.; Veolia ES Industrial Services, Inc.;

Altech Inspections, Inc.; Lonesome Dove Capital, L.P. d/b/a South Texas Valve & Controls;

Tiger Tower Services, LLC; M&I Electric Industries, Inc.; Gajeske, Inc.; Diamond Refractory

Services, L.P.; WHM Custom Services, Inc.; or J.V. Industrial Companies, Ltd. assert a valid

---

[3] For the purposes of this Order, the affiliates of Greif, Inc. are Delta Petroleum Company, Inc.; Greif
Packaging LLC; and Greif International Holding B.V.

and perfected prepetition statutory or possessory lien without sending written notice to the respective alleged lienholder (the "Purported Lienholder") and its counsel of the proposed sale, assignment, transfer or abandonment, and providing an opportunity for hearing on any Purported Lienholder's objection thereto (the notice and period to object to such transaction shall, for the respective Purported Lienholders, be the same as if the sale price was from $1 million to $10 million under subparagraph (b) of the Sale Procedures above).  Concerning utilization of the net proceeds of any sale, transfer or assignment authorized hereunder, the Purported Lienholder will have 10 business days from the date of the written notice of the proposed sale to advise the Debtors and the DIP Agents in writing that it believes it possesses a valid and perfected prepetition statutory or possessory lien that has priority over the liens of the Debtors' lenders under the DIP Credit Agreement with respect to the relevant property.  If the Purported Lienholder asserts that it has a valid and perfected prepetiton statutory or possessory lien that has priority over the liens of the Debtors' lenders under the DIP Credit Agreement, the Debtors will place that portion of the proceeds of the sale, assignment or transfer equal to the prepetition claim that is allegedly secured by the Purported Lienholder's alleged lien in a segregated account to be distributed in accordance with the priority scheme for the relevant property, once determined by the Court or as agreed among the relevant lienholders.  If the Purported Lienholder fails to timely assert that it has a valid and perfected prepetition statutory or possessory lien that has priority over the liens of the Debtors' lenders under the DIP Credit Agreement with respect to the relevant property, the proceeds will be utilized by the Debtors in accordance with the terms of any postpetition financing agreement provisions governing the use of those proceeds; provided, however that, to the extent the Debtors wish to sell, assign, transfer or abandon any such assets without following this procedure, the Debtors may seek authorization

of this Court pursuant to section 363 of the Bankruptcy Code (upon notice and a hearing, which may be expedited if necessary subject to the Court's schedule) and other applicable law to sell, assign, transfer or abandon the property (without prejudice to the rights of any party in interest in such a proceeding); and it is further

      **ORDERED** that nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed sale transaction or abandonment of property after notice and an opportunity for a hearing; and it is further

      **ORDERED** that the Court shall retain jurisdiction over any and all disputes arising under or otherwise relating to the construction and enforcement of the procedures established by this Order and the transactions consummated thereunder; and it is further

**ORDERED** that the Debtors are authorized to execute and deliver all instruments and documents, and take any other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

Dated:      New York, New York
            **_March 12, 2009_**          **_s/ Robert E. Gerber_**
                                          UNITED STATES BANKRUPTCY JUDGE