Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | **09-50026 (REG)** |
| | : | **(Jointly Administered)** |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | |

-------------------------------------------------------------------x

## DEBTORS' OPPOSITION TO THE MOTION OF SANG CHUL LEE AND DUKSON LEE FOR ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 4001 AND LOCAL BANKRUPTCY RULE 4001-1 MODIFYING THE AUTOMATIC STAY TO ALLOW CONTINUATION OF PRE-PETITION LITIGATION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................ 3

ARGUMENT ..................................................................................................... 5

    A.    The Automatic Stay is Fundamental to the Reorganization Process .................... 5

    B.    Plaintiffs Fail to Meet Their Burden of Establishing Cause to Modify the
    Automatic Stay ................................................................................ 6

        1.    It is Premature at This Stage in the Bankruptcy Proceedings to Lift
        the Automatic Stay ................................................................... 9

        2.    Allowing the Arizona Action to Proceed Will Expose the Debtors
        to a Flood of Lift Stay Motions and Will not Ensure Judicial
        Economy ............................................................................... 10

        3.    Allowing the Arizona Action to Proceed Will Burden the Debtors
        and Plaintiffs are Unlikely to Obtain any Insurance Proceeds ............... 13

        4.    The Cases Plaintiffs Cite in Support of Their Motion are Inapposite...... 15

CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
    117 B.R. 789 (Bankr. S.D.N.Y. 1990)..................................................................6

*In re Bally Total Fitness of Greater New York, Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009)................................................................11

*In re Celotex Corp.*,
    140 B.R. 912 (Bankr. M.D. Fla. 1992) ...............................................................11

*In re Columbia Gas Transmission Corp.*,
    219 B.R. 716 (Bankr. S.D. W. Va. 1998) ...........................................................14

*DePippo v. Kmart Corp.*,
    335 B.R. 290 (S.D.N.Y. 2005)......................................................................13, 14

*In re Drexel Burnham Lambert Group, Inc.*,
    113 B.R. 830 (Bankr. S.D.N.Y. 1990)..................................................................5

*In re Eclair Bakery Ltd.*,
    255 B.R. 121 (Bankr. S.D.N.Y. 2000)..................................................................6

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*,
    550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977)........................6

*Matter of Holtkamp*,
    669 F.2d 505 (7th Cir. 1982) .............................................................................15

*Houston v. Edgeworth*,
    993 F.2d 51 (5th Cir. 1993) ...............................................................................14

*In re Jet Fla. Sys., Inc.*,
    883 F.2d 970 (11th Cir. 1989) ...........................................................................14

*In re Kemble*,
    776 F.2d 802 (9th Cir. 1985) .............................................................................15

*Mazzeo v. Lenhart (In re Mazzeo)*,
    167 F.3d 139 (2d Cir. 1999)................................................................................7

*In re Mego Int'l, Inc.*,
    28 B.R. 324 (Bankr. S.D.N.Y. 1983)....................................................................7

*Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*,
    474 U.S. 494 (1986)............................................................................................5

## TABLE OF AUTHORITIES (contd.)

**Page**

*Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.*,
    38 B.R. 987 (S.D.N.Y. 1984)...........................................................................................8

*In re New York Med. Group*,
    265 B.R. 408 (Bankr. S.D.N.Y. 2001) ...........................................................................15

*In re Northwest Airlines Corp.*,
    2006 WL 687163 (Bankr. S.D.N.Y. Mar. 10, 2006) .......................................................11

*Official Committee of Unsecured Creditors v. PSS Steamship Co.*,
    114 B.R. 27 (Bankr. S.D.N.Y. 1989)..............................................................................5

*Matter of Rexene Products Co.*,
    141 B.R. 574 (Bankr. D. Del. 1992) ..............................................................................16

*Royal Ins. Co. of Am. v. McCrory Corp.*,
    1996 U.S. Dist. LEXIS 5552 (Bankr. S.D.N.Y. Apr. 25, 1996).......................................14

*In re Sonnax Industries, Inc.*,
    907 F.2d 1280 (2d Cir. 1990)............................................................... 7, 8, 10-14

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986)............................................................................................5

*In re Todd Shipyards Corp.*,
    92 B.R. 600 (Bankr. D. N.J. 1988) ................................................................................15

*In re Touloumis*,
    170 B.R. 825 (Bankr. S.D.N.Y. 1994)...........................................................................8

## STATUTES

11 U.S.C. § 362(a)(1)...........................................................................................5, 6, 7

H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297 ......................5

iii

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company, (f/k/a General Motors Corporation) ("**MLC**"), and
certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11
cases (collectively, the "**Debtors**"), hereby submit this opposition to the *Motion of Sang Chul
Lee and Dukson Lee for Order Pursuant to Section 362(d) of the Bankruptcy Code, Bankruptcy
Rule 4001 and Local Bankruptcy Rule 4001-1 Modifying the Automatic Stay to Allow
Continuation of Pre-Petition Litigation* [Docket No. 3023] (the "**Motion**") or in the alternative
seek adjournment of the Motion for sixty days while the Debtors establish a claims process.  In
support hereof, the Debtors respectfully represent:

## PRELIMINARY STATEMENT

1.      Less than two months into these chapter 11 proceedings and only three weeks
after the Debtors consummated the sale of substantially all of their assets to a U.S. Treasury-
backed purchaser,  Sang Chul Lee and Dukson Lee ("**Plaintiffs**") seek to modify the automatic
stay to proceed with a prepetition products liability action pending against MLC.  Plaintiffs,
however, cannot satisfy their burden of establishing cause sufficient to truncate the statutorily
imposed breathing spell to which the Debtors are entitled under section 362 of title 11 of the
United States Code (the "**Bankruptcy Code**").  The Plaintiffs' products liability action is just
one of hundreds of similar lawsuits pending against the Debtors across the country and Plaintiffs
have not articulated any special facts or circumstances warranting relief from the stay in their
case.  Moreover, the Plaintiffs' case is not ready for trial, cannot proceed against insurance, and
would impose an unjust burden on the Debtors if it were allowed to proceed at this time.

2.      Allowing the Plaintiffs relief from the automatic stay at this juncture would
expose the Debtors to countless other lift stay motions which would impose a burden on the

1

Debtors and their estates at a time when their limited remaining resources *should be* devoted to the immediate task of transitioning from the recent sale of substantially all their assets, filing their schedules of assets and liabilities and statements of financial affairs, determining how to dispose of their remaining assets in an orderly and value-maximizing manner, and establishing an organized chapter 11 claims process. Through such a claims process, which may involve settlement or alternative dispute resolution procedures, the Debtors will be able to efficiently and fairly address all prepetition claims, including those of the Plaintiffs, in a centralized fashion rather than being forced to litigate such claims in a piecemeal, ad hoc manner in courts across the country. Until the Debtors have been afforded the time necessary to establish claims procedures, it is premature and a waste of judicial and estate resources to compel the Debtors to proceed with the Plaintiffs' lawsuit.

3.      Further, the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend the Plaintiffs' lawsuit in state court far outweighs any potential gain to the Plaintiffs in proceeding with their lawsuit against the Debtors at this time. Plaintiffs are unlikely to obtain any proceeds from the Debtors' insurance even if they could prevail in the underlying lawsuit. The Debtors hold a self-insured retention policy over Plaintiffs' product liability claims subject to a $35 million deductible and Debtors must bare their own defense costs.

4.      At best, any judgment the Plaintiffs may receive in their lawsuit would entitle them to a general unsecured claim to be paid proportionally with the thousands of other such claims. There is no reason the Plaintiffs must liquidate their general unsecured claim ahead of the thousands of similarly-situated creditors. Accordingly, Debtors respectfully request that this

Court deny the Motion or in the alternative adjourn the Motion for sixty days while the Debtors

implement a chapter 11 claims process.

## BACKGROUND

### The Products Liability Case

5.      On May 18, 2005 Plaintiffs filed a personal injury and wrongful death action

against MLC, Alamo Rent a Car ("**Alamo**"), and Hong-Jun Jeon in the Superior Court of the

State of Arizona in and for the County of Coconino (the "**Arizona Action**").  The Arizona

Action alleges, *inter alia*, that MLC produced an unsafe automobile partly responsible for the

death of Plaintiffs' adult daughter, Jin Ah Lee, in an automobile accident on June 1, 2003.  The

Arizona Action is one of hundreds of products liability actions pending against the Debtors.[1]

6.      On August 8, 2005, the Arizona Action was stayed pending the appeal of a nearly

identical lawsuit the Plaintiffs had filed in the United States District Court for the District of

Arizona (the "**District Court Action**") and disposition of a nearly identical lawsuit filed in New

Jersey state court on March 25, 2005 (the "**New Jersey Action**").  In 2004 the District Court

Action was dismissed for lack of jurisdiction.  In early 2007 the Ninth Circuit affirmed the

District Court's dismissal and in mid-2007 the United States Supreme Court denied Plaintiffs'

petition for certiorari. The New Jersey Action was dismissed on December 15, 2006 for *forum

non conveniens* and lack of standing of the alleged estate representative.  Accordingly, the

Arizona Action resumed activity in mid-2007.

7.      In January 2008 the court in the Arizona Action granted MLC's motion to dismiss

the claims of Jin Ah Lee's estate and thus only her parents' individual claims for compensatory

---

[1] Additionally, there are scores of other lawsuits pending against the debtors in arenas other than products liability
as well as approximately 30,000 individual asbestos claimants.

and punitive damages remain.  Discovery is ongoing in the Arizona Action.  No expert

depositions have been taken, no trial date has been set, and as of the March 16, 2009 status

conference, Mr. Jeon, the defendant driver of the relevant vehicle could not be located.

**The Chapter 11 Proceedings**

8.     On June 1, 2009, MLC commenced with this Court a voluntary case under

chapter 11 of the Bankruptcy Code.  The commencement of this chapter 11 case triggered the

automatic stay of all litigation pending against the Debtors pursuant to section 362 of the

Bankruptcy Code.

9.     On July 10, 2009, the Debtors consummated the sale of substantially all of their

assets to NGMCO, Inc. (n/k/a General Motors Company) (the "**Purchaser**") pursuant to that

certain Amended and Restated Master Sale and Purchase Agreement ("**MPA**").  Simultaneous

with closing on the MPA, General Motors Corporation changed its name to Motors Liquidation

Company.

10.     MLC does not have "first-dollar" insurance coverage over products liability

claims such as those alleged in the Arizona Action.  Rather, all products liability claims are

subject to a $35 million self-insured retention policy, meaning that the Debtors themselves are

responsible for the first $35 million of any liability imposed for a single claim.  Further, these

insurance policies do not cover the Debtors' defense costs and as such, the Debtors would face

significant out of pocket expenses if the Arizona Action, or any other products liability cases

against the Debtors, were allowed to proceed.

11.     Notwithstanding that the above-described insurance coverage had been explained

to Plaintiffs' counsel on multiple occasions, on July 2, 2009, Plaintiffs filed the instant Motion

4

seeking relief from the automatic stay to continue the Arizona Action.  As discussed further

below, such relief from the automatic stay is not warranted.

## ARGUMENT

### A.    The Automatic Stay is Fundamental to the Reorganization Process

12.    Section 362(a)(1) of the Bankruptcy Code provides that

> (a)…[A] petition filed under section 301, 302 or 303 of this title…operates
> as a stay, applicable to all entities, of –
>> (1) the commencement or continuation, including the issuance or
>> employment of process, of a judicial, administrative, or other action or
>> proceeding against the debtor that was or could have been commenced
>> before the commencement of the case under this title, or to recover a claim
>> against the debtor that arose before the commencement of the case under
>> this title.

11 U.S.C. § 362(a)(1).  The automatic stay affords a debtor fundamental protections under the

Bankruptcy Code.  *See, e.g.*, *Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*,

474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code…has been

described as one of the fundamental debtor protections provided by the bankruptcy laws.")

(citations and internal quotations omitted); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R.

830, 836 (Bankr. S.D.N.Y. 1990) ("The automatic stay imposed by section 362(a) of the

Bankruptcy Code is one of the most fundamental debtor protections provided by the bankruptcy

laws.") (citations and internal quotations omitted).

13.    The broad protection of the automatic stay extends to all matters that may have an

effect on a debtor's estate and is designed to relieve "the financial pressures that drove [the

debtors] into bankruptcy."  H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N.

5963, 6297; *Official Committee of Unsecured Creditors v. PSS Steamship Co.*, 114 B.R. 27, 29

(Bankr. S.D.N.Y. 1989).  It does this by providing the debtor with a "breathing spell" after the

commencement of a chapter 11 case, shielding it from creditor harassment at a time when the

debtor's personnel should be focusing on restructuring.  *See Teachers Ins. & Annuity Ass'n of*

*Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an

appeal that otherwise would "distract…debtor's attention from its primary goal of reorganizing")

(citation and internal quotation marks omitted); *AP Indus. Inc. v. SN Phelps & Co. (In re AP*

*Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The purpose of the protection

provided by chapter 11 is to give the debtor a breathing spell, an opportunity to rehabilitate its

business and to enable the debtor to generate revenue.").

14.    The automatic stay "is necessary to exclude any interference by the acts of others

or by proceedings in other courts where such activities or proceedings tend to hinder the process

of reorganization."  *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d

Cir. 1976) (Bankruptcy Act case) (citations and internal quotations omitted), *cert. denied*, 429

U.S. 1093 (1977).  Further, "[t]he automatic stay prevents creditors from reaching the assets of

the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their

claims can be assembled in the bankruptcy court for a single organized proceeding."  *AP Indus.*,

117 B.R. at 798.

## B.    Plaintiffs Fail to Meet Their Burden of Establishing Cause to Modify the Automatic Stay

15.    Section 362(d) of the Bankruptcy Code provides that a party may be entitled to

relief from the automatic stay under certain circumstances.  11 U.S.C. § 362(d); *In re Eclair*

*Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).  Specifically, relief from the stay will be

granted only where the party seeking relief demonstrates "cause:"

> (d) On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided

under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).[2]  The statute does not define what constitutes "cause," however, courts in this circuit have determined that in examining whether cause exists they "must consider [the] particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

16.    In determining what is just to all parties in interest with respect to lifting the automatic stay, courts in the Second Circuit follow the seminal decision of *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990).  *See, e.g., Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the *Sonnax* factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate.").  In *Sonnax*, the court outlined twelve factors to be considered when deciding whether to lift the automatic stay:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;

---

[2] Sections 362(d)(2) – (4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to a request for relief from the stay to pursue a litigation claim.

    (8) whether the judgment claim arising from the other action is subject to
        equitable subordination;
    (9) whether movant's success in the other proceeding would result in a judicial
        lien avoidable by the debtor;
    (10) the interests of judicial economy and the expeditious and economical
        resolution of litigation;
    (11) whether the parties are ready for trial in the other proceeding; and
    (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  Only those factors relevant to a particular case need be considered

and the court need not assign them equal weight.  *In re Touloumis*, 170 B.R. 825, 828 (Bankr.

S.D.N.Y. 1994).

    17.    The moving party bears the initial burden to demonstrate that cause exists for

lifting the stay under the *Sonnax* factors.  *Id.* at 1285.  If the movant fails to make an initial

showing of cause, the court should deny relief without requiring any showing from the debtor

that it is entitled to continued protection.  *Id.*  Further, the cause shown must be "good cause."

*Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.*, 38 B.R. 987, 998 (S.D.N.Y. 1984)

("Cause shown [to] avoid the proscription of section 362 [must be] good cause.").  Here the

Plaintiffs fail to meet their burden to establish good cause to lift the automatic stay.

    18.    The Plaintiffs cannot satisfy their burden to lift the automatic stay because each of

the *Sonnax* factors relevant to this case weigh against lifting the automatic stay in the Arizona

Action.  As discussed further below, the second and seventh factors weigh against lifting the

automatic stay because allowing the Arizona Action would interfere with the bankruptcy case

and prejudice the interests of other creditors by forcing the Debtors to expend scarce resources

litigating the case and the onslaught of similar lift stay motions that are likely to ensue.  The fifth

factor does not support relief from the stay because the Debtors' insurer has not assumed any

responsibility for defending the case.  The tenth factor militates toward preserving the stay

because the interest of judicial economy and the expeditious and economical resolution of litigation would be best served by allowing the stay to remain in place while the Debtors implement a claims resolution process. The eleventh factor weighs in favor of preserving the stay because the parties are not ready for trial in the Arizona Action. The twelfth factor justifies maintaining the stay because lifting the stay would severely harm the Debtors' estates whereas preserving the stay would not harm the Plaintiffs given that their likelihood of any relief against the Debtors is fractional at best and such relief can be attained with greater efficiency and reduced costs through the claims process.

19.     Despite the foregoing, Plaintiffs assert that cause exists to modify the automatic stay because the bankruptcy court may not liquidate wrongful death claims (Mot. 6); because judicial efficiency will be served if the Arizona state court is permitted to resolve all of the litigation against all of the defendants in a single trial (Mot. 6); and because the Debtors' estate will not be burdened by continuing with the Arizona Action (Mot. 7). As discussed further below, each of these arguments is flawed.

### 1.     It is Premature at This Stage in the Bankruptcy Proceedings to Lift the Automatic Stay

20.     The Plaintiffs' arguments in support of their motion are unavailing. Plaintiffs assert that because "this Court may not liquidate the personal injury and wrongful death claims" contained in the Arizona Action, that the Arizona Action should be allowed to proceed in the state court in which it was originally filed. (Mot. 8-9.) Such a conclusion ignores the complexity of these bankruptcy cases and the various options the Debtors may utilize to resolve prepetition lawsuits outside of the original state courts in which they were filed. The Debtors' bankruptcy cases constitute the second largest industrial bankruptcy in history. The cases have been active for less than two months and during that time the Debtors' resources have been consumed by

executing a massive sale of assets to the Purchaser.  Given the complexity and high stakes of the sale – which closed only three weeks ago – the Debtors have not yet completed any of the tasks essential to establishing a claims process.  The Debtors have not yet filed schedules or set a bar date, much less begun to adjudicate the hundreds – if not thousands – of prepetition cases against the Debtors.

21.    This process is made even more difficult given that, with the closing of the MPA, the Debtors no longer have the employees, resources, and funding of an active business.  Given such limited resources the Debtors should not be compelled to use their scarce remaining resources to adjudicate prepetition general unsecured claims which are likely to receive only pennies on the dollar.  In sum, the Debtors need the breathing spell provided by the automatic stay to establish a claims process and determine the most efficient means to adjudicate prepetiton claims.  To deprive the Debtors of the protections afforded by the automatic stay would negatively impact the Debtors by interfering with the bankruptcy process which in turn prejudices other creditors (*See Sonnax* factors 2, 7, and 12).

2.    <u>Allowing the Arizona Action to Proceed Will Expose the Debtors to a Flood of Lift Stay Motions and Will not Ensure Judicial Economy</u>

22.    Plaintiffs assert that "[r]elief from the automatic stay will ensure judicial economy" and that allowing the Arizona Action to continue "would be the most efficient and cost effective way to achieve complete resolution of the issues raised in those cases." (Mot. 10.) In addition to ignoring the fact that compelling the Debtors to litigate this matter in state court would impose significant costs on the Debtors, the Plaintiffs also fail to account for the negative precedent such relief would set.  The Arizona Action is just one of hundreds of products liability cases pending against the Debtors across the country.  Plaintiffs do not distinguish their products liability lawsuit from the hundreds of other such cases pending against the Debtors in courts

10

across the country nor do they provide any reason or special circumstances why their case should

be allowed to burden the estate by proceeding.   If the Plaintiffs are granted relief from the

automatic stay at this juncture, it would expose the Debtors to a flood of similar motions seeking

to lift the stay in other cases across the country.   Litigating the motions alone, much less

litigating the underlying lawsuits, would substantially drain the estate's assets and harm the

recovery prospects of all creditors  (*See Sonnax* factors 2, 7, and 12).

23.     In similar circumstances courts have held that lifting the automatic stay is not

warranted.  *See, e.g. In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623

(Bankr. S.D.N.Y. 2009) (denying motion for relief from the automatic stay where "granting

relief could open the floodgates to a multitude of similar motions causing further interference

with the bankruptcy case"); *In re Northwest Airlines Corp.* 2006 WL 687163, at *2 (Bankr.

S.D.N.Y. Mar. 10, 2006) ("to allow the automatic stay to be lifted with respect to this action at

this time would prompt similar motions and require the Debtors to spend an inordinate amount of

time and money on litigation . . . [t]he distraction and expense of defending such litigation would

interfere with judicial economy and the Debtors' process of reorganization.") (citations and

internal quotations omitted); *In re Celotex Corp.* 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992)

(preserving automatic stay where lifting stay would yield an "avalanche of litigation.").  Given

the hundreds of lawsuits pending against the Debtors across the country and the flood of

litigation likely to ensue if relief from the stay is granted, this Court too should preserve the

automatic stay.

24.     As discussed above, Plaintiffs need the time and breathing spell to work with the

Committee of Unsecured Creditors to develop a claims process.  Such a process may include

alternative dispute resolution or settlement procedures to achieve an efficient and cost effective

resolution of claims.  Contrary to Plaintiffs' assertions, ad hoc litigation of Plaintiffs' claims, and the hundreds of others like them, in courts across the country will not "allow the most efficient and expeditious resolution of" the claims.  (Mot. 10.)  Such an approach would impede judicial efficiency and undermine the economical resolution of litigation (*See Sonnax* factor 10).

25.     Plaintiffs further argue that they "have alleged claims against other defendants based on the same facts at issue in the claims against Debtor, and only the Texas [sic] trial court may render a judgment binding on all parties" in the Arizona Action.  Plaintiffs fail, however, to explain how their negligent driving claims against Mr. Jeon and their wrongful rental claims against Alamo are inextricably intertwined with their products liability claim against MLC such that the issues cannot be adjudicated separately. [3]  Plaintiffs fail to point to any reason why they cannot litigate their claims against Mr. Jeon and Alamo in the Arizona Action and submit their claim against MLC in the claims process just like the thousands of other similarly situated creditors.  Alternatively, if the Debtors establish alternative dispute resolution procedures to settle or liquidate claims, Plaintiffs' claims against the codefendants may be resolved via such avenues as well.  Plaintiffs admit that no trial date has been set in the Arizona Action and that discovery is not complete. (*See* Mot. 6.)  Further, as of the last status conference in the case, Mr. Jeon could not be located by his counsel.  Such circumstances belie Plaintiffs' assertion that the Arizona Action is ready for trial and postponing the trial would prejudice Plaintiffs (*See Sonnax* factor 11).  Plaintiffs' contention that they will be forced to litigate the claims against the Debtors at some later point, (*see* Mot. 6), ignores the prospect that the Debtors may settle, arbitrate, or allow the claim of Plaintiffs through the chapter 11 claims process.  Allowing the

---

[3] Page 11 of Plaintiffs' Brief states that there are "seventeen non-debtor defendants," however, only three defendants were ever named in this case: MLC, Mr. Jeon, and Alamo.

Arizona Action to proceed against MLC at this juncture would contravene judicial economy (*See Sonnax* factor 10).

        3.      <u>Allowing the Arizona Action to Proceed Will Burden the Debtors and Plaintiffs are Unlikely to Obtain any Insurance Proceeds</u>

26.     Plaintiffs assert that allowing the Arizona Action to proceed will have minimal impact on the Debtors and their estates because allegedly "none of the members of the senior management who are involved in the Debtors' financial affairs are expected to testify at trial, and on information and belief the Debtors have insurance coverage for all but the first $5 million of any judgment against them." (Mot. 7.)  Plaintiffs assertions are patently false.  First, Plaintiffs fail to recognize that following the sale of their assets to the Purchaser the Debtors have no more legal staff, have not officially retained outside counsel in the Arizona Action, no longer employ the engineers or other personnel designing the subject vehicle, and do not possess the other records and documents necessary to defend the Arizona Action.  As such, forcing the Debtors to litigate the Arizona Action at this juncture would impose a significant burden on the small team of managers remaining who are focused on transitioning the Debtors from the recent sale and through the chapter 11 process (*See Sonnax* factor 2 and 12).  Second, the Debtors' self-insured retention deductible is not $5 million as the Plaintiffs assert, but rather is $35 million and does not cover the costs of litigation.  Accordingly, allowing the Arizona Action to proceed will expose the Debtors to all the costs of litigation and the first $35 million of any judgment rendered  (*See Sonnax* factor 5).  It is doubtful that Plaintiffs would obtain a judgment in excess of $35 million and accordingly any recovery they do realize would be paid directly from the estate assets as a general unsecured claim.

27.     In cases in which plaintiffs have sought to proceed against a debtor's insurer, courts have noted the expense self-insured retention policies impose on a debtor's estate.  *See,*

e.g., *DePippo v. Kmart Corp.*, 335 B.R. 290, 292 (S.D.N.Y. 2005) (finding no assets available to cover a plaintiff's claim against debtor Kmart where Kmart's "only insurance provided coverage above a two-million self-insured retention"); *Royal Ins. Co. of Am. v. McCrory Corp.*, 1996 U.S. Dist. LEXIS 5552 at *7 (Bankr. S.D.N.Y. Apr. 25, 1996) (stating that only if the bankruptcy court determined there would be no burden on the estate should the stay be lifted so that appellants may prosecute their claims against debtor's insurer); *In re Columbia Gas Transmission Corp.*, 219 B.R. 716 (Bankr. S.D. W. Va. 1998) (holding that there is no insurance to cover the plaintiffs' claim where debtor had an initial $250,000 self-insured retention).

28.    Courts also hold that where the debtor will bear the costs of litigation, the case should not be allowed to proceed against a debtor's insurer. *See, e.g., Kmart Corp.*, 335 B.R. at 298 (noting that the fact that Kmart would have had to pay its own litigation costs further militated against allowing the action against its insurer); *Houston v. Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993) (allowing suit only "as long as the costs of the defense are borne by the insurer"); *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 976 (11th Cir. 1989) ("to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation"); *Columbia Gas*, 219 B.R. at 716 (prohibiting plaintiff from proceeding with suit against debtor for limited purpose of establishing debtor's liability and recovering from debtor's insurer where debtor was primarily liable for expense of defending the suit).  Plaintiffs' claims and Debtors' costs of defending such claims are not covered by third-party insurance unless and until they exceed $35 million – an unlikely contingency that will expose the Debtors to direct expenses  (*See Sonnax* factor 5).  As such, allowing such claims to proceed would impose a significant burden on the resources of the

Debtor and thus the automatic stay should not be lifted to allow the Arizona Action to be litigated at this juncture  (*See Sonnax* factor 12).

4.    The Cases Plaintiffs Cite in Support of Their Motion are Inapposite

29.    None of the cases Plaintiffs cite in which courts have lifted the automatic stay to allow a prepetition lawsuit to proceed are controlling and all are distinguishable.  For example, in *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (*see* Mot. 8) the court found that lifting the automatic stay to allow a trial to take place was not reversible error where the bankruptcy estate was not jeopardized by the trial because the debtor's insurer had assumed full financial responsibility for defending the litigation, the debtor's had filed bankruptcy five days before trial, and a quadriplegic and several out-of-state witnesses had already been subpoenaed to testify at trial.  Similarly, in *In re New York Med. Group*, 265 B.R. 408, 411-14 (Bankr. S.D.N.Y. 2001) (*see* Mot. 8, 10-11) the court granted relief from the automatic stay where the plaintiff's claim represented 80% of the debtor's unsecured debt, the debtors did not identify any other unliquidated personal injury claims, the debtor's insurance would defend the debtor and pay a portion of the claim, the debtors did not oppose plaintiff's efforts to liquidate the claim in state court to the amount covered by insurance, the plaintiff agreed to mediation, and the lift stay motion was filed more than a year after the commencement of the bankruptcy cases.  In *In re Todd Shipyards Corp.*, 92 B.R. 600, 604 (Bankr. D. N.J. 1988) (*see* Mot. 9) the court granted relief from the stay where the bankruptcy had been pending for almost a year and there were only 65 products liability cases against the Debtor.  The court further noted that "there exists cases where the potential litigation expenses would rise to a level justifying the enjoining of litigation against the debtor," citing cases where there were thousands of potential lawsuits against the debtor.  *Id.* at 603, n.2.  In *In re Kemble*, 776 F.2d 802, 804, 807 (9th Cir. 1985) (*see*

Mot. 10) the court found no abuse of discretion in lifting the automatic stay to permit a retrial on issues of damages where the parties had spent the preceding four months preparing for the damages retrial, had negotiated a pretrial conference order, had filed trial briefs, the trial was scheduled to take place the next day, and the debtor had engaged in dilatory behavior throughout the retrial preparations.  In *Matter of Rexene Products Co.*, 141 B.R. 574, 577-78 (Bankr. D. Del. 1992) (*see* Mot. 10) the court allowed a state court action to proceed where the debtor's in-house legal department remained in place, the debtors had local counsel that had been prepared to go to trial eight months prior, the plaintiffs would be ready for trial in six weeks, no further discovery was required, and the plan confirmation hearing was only four months away.

30.    In sharp contrast to the facts of the cases the Plaintiffs cite, in this matter the Arizona Action will not be defended or funded by the Debtors' insurance, the case is not ready for trial, discovery is ongoing, no trial date has been set, a codefendant cannot be located, there are hundreds, if not thousands, of cases pending against the Debtors, Debtors do not have in-house or local counsel, and the Debtors' bankruptcy cases have been pending for less than two months, during which time few of the acts essential to the bankruptcy process have been completed.  Under such circumstances, the cases cited by the Debtors have found that lifting the automatic stay would burden the estate, interfere with the bankruptcy proceedings, and is inappropriate.  Accordingly, the Plaintiffs' motion for relief from the automatic stay should not be granted at this time.

16

## <u>CONCLUSION</u>

WHEREFORE the Debtors respectfully request that the Court deny the Motion and the relief requested therein or in the alternative adjourn the motion for sixty days while the Debtors implement a claims process.

Dated: July 29, 2009
      New York, New York

                    /s / Joseph H. Smolinksy
                    Harvey R. Miller
                    Stephen Karotkin
                    Joseph H. Smolinsky

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone:  (212) 310-8000
                    Facsimile:   (212) 310-8007

                    Attorneys for Debtors and
                    Debtors in Possession