Notwithstanding the foregoing, the term "Channel Agreement" shall not mean or refer to (i) any termination agreement of any kind with respect to the Dealer Agreement between Dealer and GM (each a "Termination Agreement"), (ii) any performance agreement of any kind between Dealer and GM (each a "Performance Agreement"), or (iii) any agreement between Dealer (or any Affiliate of Dealer) and Argonaut Holdings, Inc., a Delaware corporation and wholly-owned subsidiary of GM ("AHI"), including, without limitation, any agreement entitled "Master Lease Agreement," "Prime Lease," or "Dealership Sublease" (and Dealer shall comply with all of the terms of such agreements with AHI). Dealer acknowledges that GM shall be entitled, at its option, to move to reject any currently outstanding Termination Agreements or Performance Agreements in the Bankruptcy Case. By executing this letter agreement, Dealer agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert any objection or protest of any kind with respect to GM's rejection of such Termination Agreements or Performance Agreements.

(c) All of the Channel Agreements shall automatically terminate and be of no further force or effect on the effective date of termination of the Dealer Agreements, except that those provisions that, by their terms, expressly survive termination of the Channel Agreements shall survive the termination contemplated under this Agreement. Following the effective date of termination of the Dealer Agreements, Dealer and GM shall execute and deliver documents in recordable form reasonably satisfactory to GM or the 363 Acquirer, as applicable, confirming the termination of any Channel Agreements affecting title to real property owned or leased by Dealer or Dealer's Affiliates.

15. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.

16. Counterparts. This Agreement may be executed in counterparts, each of which when signed by all of the parties hereto shall be deemed an original, but all of which when taken together shall constitute one agreement.

17. Breach. In the event of a breach of this Agreement by Dealer, GM and the 363 Acquirer shall each have all of its remedies at law and in equity, including, without limitation, the right to specific performance.

18. Complete Agreement of the Parties. This Agreement, the Dealer Agreements, and the schedules, exhibits, and attachments to such agreements (i) contain the entire understanding of the parties relating to the subject matter of this Agreement, and (ii) supersede all prior statements, representations and agreements relating to the subject matter of this Agreement. The parties represent and agree that, in entering into this Agreement, they have not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. No waiver, modification, amendment or addition to this Agreement is effective unless evidenced by a written instrument signed by an authorized representative of the parties, and each party acknowledges that no individual will be authorized to orally waive, modify, amend or expand this Agreement. The parties expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express provision requiring a writing signed by the parties.

*[Signature Page Follows]*

14 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

6357_14_116550

IN WITNESS WHEREOF, Dealer and GM have executed this Agreement as of the day and year first above written.

Forrest Pontiac-Buick-GMC Truck, Inc.

By: _____

Name: _____
Title: _____

**GENERAL MOTORS CORPORATION**

By _____

Authorized Representative

**THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009, OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN.**

9

14 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE
JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

6357_14_116550

# EXHIBIT A

## SAMPLE SUPPLEMENTAL WIND-DOWN AGREEMENT

THIS SUPPLEMENTAL WIND-DOWN AGREEMENT (this "Agreement") is made and entered into as of the _____ day of _____, 20__, by _____, a _____ ("Dealer"), for the use and benefit of _____, a _____ ("GM") and _____, a _____ corporation ("363 Acquirer").

### RECITALS

A. Dealer and GM are parties to Dealer Sales and Service Agreements for _____ motor vehicles (the "Dealer Agreements").

B. Dealer and GM are parties to that certain Wind-Down Agreement dated June __, 2009 (the "Original Wind-Down Agreement"). All initially capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Original Wind-Down Agreement.

C. **[IF DEALER AGREEMENTS ASSIGNED TO THE 363 ACQUIRER][GM assigned all of its right, title and interest in the Dealer Agreements and the Original Wind-Down Agreement to the 363 Acquirer.]**

D. Pursuant to the Original Wind-Down Agreement, Dealer agreed to terminate and cancel the Dealer Agreements and all rights and continuing interests therein by written agreement and to release GM and its related parties from any and all liability arising out of or connected with the Dealer Agreements, any predecessor agreement(s) thereto, and the relationship between **[GM or the 363 Acquirer]** and Dealer relating to the Dealer Agreements, and any predecessor agreement(s) thereto, on the terms and conditions set forth herein, intending to be bound by the terms and conditions of this Agreement.

E. Dealer executes this Agreement in accordance with Section 3 of the Original Wind-Down Agreement.

### COVENANTS

NOW, THEREFORE, in consideration of the foregoing recitals and the premises and covenants contained herein, Dealer hereby agrees as follows:

1. Termination of Dealer Agreements.

   (a) Dealer hereby terminates the Dealer Agreements by written agreement in accordance with Section 14.2 thereof. The effective date of such termination shall be _____, 20__.

   (b) Dealer shall timely pay all sales taxes, other taxes and any other amounts due to creditors, arising out of the operations of Dealer.

   (c) Dealer shall be entitled to receive the Final Payment Amount in accordance with the terms of the Original Wind-Down Agreement.

**14 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN**

6357_14_116550                        

2. Release: Covenant Not to Sue: Indemnity.

(a) Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the "Dealer Parties"), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreements), whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone claiming through or under Dealer may have as of the date of the execution of this Agreement against GM, the 363 Acquirer, their Affiliates or any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns (collectively, the "GM Parties"), arising out of or relating to (i) the Dealer Agreements or this Agreement, (ii) any predecessor agreement(s), (iii) the operation of the dealership for the Existing Model Lines, (iv) any facilities agreements, including without limitation, any claims related to or arising out of dealership facilities, locations or requirements, Standards for Excellence ("SFE") related payments or bonuses (except that the 363 Acquirer shall pay any SFE payments due Dealer for the second (2nd) quarter of 2009 and the 363 Acquirer shall not collect any further SFE related payments from Dealer for the third (3rd) quarter of 2009 or thereafter), and any representations regarding motor vehicle sales or profits associated with Dealership Operations under the Dealer Agreements, or (v) any other events, transactions, claims, discussions or circumstances of any kind arising in whole or in part prior to the effective date of this Agreement, provided, however, that the foregoing release shall not extend to (x) reimbursement to Dealer of unpaid warranty claims if the transactions giving rise to such claims occurred within ninety (90) days prior the date of this Agreement, (y) the payment to Dealer of any incentives currently owing to Dealer or any amounts currently owing to Dealer in its Open Account, or (z) any claims of Dealer pursuant to Section 17.4 of the Dealer Agreements, all of which amounts described in (x) - (z) above of this sentence shall be subject to setoff by GM of any amounts due or to become due to GM or any of its Affiliates. GM shall not charge back to Dealer any warranty claims approved and paid by GM prior to the effective date of termination, as described in Section 1 above, after the later to occur of (A) the date six (6) months following payment, or (B) the effective date of termination, except that GM may make charge-backs for false, fraudulent or unsubstantiated claims within two (2) years of payment.

(b) Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert [(i)] any Claim that is covered by the release provision in subparagraph (a) above [**IF DEALER AGREEMENTS ASSIGNED TO THE 363 ACQUIRER**][ **or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreements or the Original Wind-Down Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement.**] Notwithstanding anything to the contrary, Dealer acknowledges and agrees that GM will suffer irreparable harm from the breach by any Dealer Party of this covenant not to sue and therefore agrees that GM shall be entitled to any equitable remedies available to them, including, without limitation, injunctive relief, upon the breach of such covenant not to sue by any Dealer Party.

(c) Dealer shall indemnify, defend and hold the GM Parties harmless, from and against any and all claims, demands, fines, penalties, suits, causes of action, liabilities, losses, damages, costs of settlement, and expenses (including, without limitation, reasonable attorneys' fees and

**14 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN**

6357_14_116550



costs) which may be imposed upon or incurred by the GM Parties, or any of them, arising from, relating to, or caused by Dealer's (or any other Dealer Parties') breach of this Agreement or Dealer's execution or delivery of or performance under this Agreement. "Affiliate" means, with respect to any Person (as defined below), any Person that controls, is controlled by or is under common control with such Person, together with its and their respective partners, venturers, directors, officers, stockholders, agents, employees and spouses. "Person" means an individual, partnership, limited liability company, association, corporation or other entity. A Person shall be presumed to have control when it possesses the power, directly or indirectly, to direct, or cause the direction of, the management or policies of another Person, whether through ownership of voting securities, by contract, or otherwise.

3. Due Authority. Dealer and the individual(s) executing this Agreement on behalf of Dealer hereby jointly and severally represent and warrant to GM that this Agreement has been duly authorized by Dealer and that all necessary corporate action has been taken and all necessary corporate approvals have been obtained in connection with the execution and delivery of and performance under this Agreement.

4. Confidentiality. Dealer hereby agrees that, without the prior written consent of GM, it shall not, except as required by law, disclose to any person (other than its agents or employees having a need to know such information in the conduct of their duties for Dealer, which agents or employees shall be bound by a similar undertaking of confidentiality) the terms or conditions of this Agreement or any facts relating hereto or to the underlying transactions.

5. Informed and Voluntary Acts. Dealer has reviewed this Agreement with its legal, tax, or other advisors, and is fully aware of all of its rights and alternatives. In executing this Agreement, Dealer acknowledges that its decisions and actions are entirely voluntary and free from any duress.

6. Binding Effect. This Agreement shall be binding upon any replacement or successor dealer as referred to in the Dealer Agreements and any successors or assigns. This Agreement shall be binding upon any replacement or successor dealer as referred to in the Dealer Agreements and any successors or assigns, and shall benefit any of GM's successors or assigns.

7. Continuing Jurisdiction. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto. The terms of this Section 7 shall survive the termination of this Agreement.

8. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.

9. No Reliance. The parties represent and agree that, in entering into this Agreement, they have not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. No waiver, modification, amendment or addition to this Agreement is effective unless evidenced by a written instrument signed by an authorized representative of the parties, and each party acknowledges that no individual will be authorized to orally waive, modify, amend or expand this Agreement. The parties hereto expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express provision requiring a writing signed by the parties.

*[Signature Page Follows]*

14 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

6357_14_116550    

IN WITNESS WHEREOF, Dealer has executed this Agreement through its duly authorized officer as of the day and year first above written.

_____

By:_____
Name:_____
Title:_____

**14 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN**

6357_14_116550



General Motors Corporation

116550   6357
Forrest Pontiac-Buick-GMC Truck, Inc.
2408 N Main
Cleburne, TX  76033

## Dear GM Dealer-Operator:

- This package contains detailed information regarding all of the GM brands operated at your dealership.

- Please review this material carefully and promptly as a timely response is required.

General Motors Corporation

00
6357_00_116550

