HEARING DATE AND TIME: August 3, 2009 at 9:45 a.m. (Eastern Time)

OBJECTION DEADLINE: July 28, 2009 at 4:00 p.m. (Eastern Time)

Jeffrey S. Davis
Attorney at Law
1422 Berry Drive
Cleburne, Texas 76033
817/602-7999
FAX # 817/641-8829
jsdesqtx@yahoo.com
Motion for Admission to Practice *Pro Hac Vice* has been filed

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: General Motors Corporation, *et al* § | | Chapter 11 |
| | § | Case No. 1-09-50026 (REG) |
| Debtors. | § | (Jointly Administered) |

**RESPONSE TO CONSOLIDATED REPLY OF DEBTORS TO OBJECTIONS
TO OMNIBUS MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. §§ 105 AND 365 AUTHORIZING (A) THE REJECTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN
DOMESTIC DEALERS AND (B) GRANTING CERTAIN RELATED RELIEF**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

NOW COME FORREST CHEVROLET-CADILLAC, INC., and FORREST PONTIAC-BUICK-GMC TRUCK, INC., hereinafter "FORREST", who file this their Response to Reply of Debtors to Omnibus Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 105 and 365 Authorizing (A) the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief, and in support would show as follows:.

I.
## UNDISPUTED FACTS

1. Debtors have not disputed any of the following facts, as presented by FORREST:[1]

a. Between 19990 and the current date, both Debtor and GMAC violated various terms and conditions of the financing agreements for the floor plan of both FORREST dealerships, by utilizing the following tactics:

   1. Imposing high-risk interest rates unrelated to agreed interest rate formula;

   2. Imposing unreasonable inventory retirement guidelines when such inventory was originally purchased without repayment restrictions;

   3. Demanding substantial additions to dealer working capital which contradict the original capital formula;

   4. Demand that additional dealership and shareholder assets and accounts be designated as lender collateral; and

   5. Demand that cash collateral accounts be established;

b. The actions of GMAC and Debtor culminated in the suspension of both of the FORREST dealership's floor plan agreements by GMAC on May 26, 2008;

c. In 2005, Debtor filed suit against FORREST PONTIAC-BUICK-GMC TRUCK,

---

[1] Most of the undisputed facts are evidenced in the Affidavit of Charles Michael Forrest which has been filed in this case and which concerns the matters before the Court. Interestingly, though, while Debtor lists the Witness List, Exhibit List, and Deposition Designation filed by FORREST, in their Amended Notice of Agenda of Matters Scheduled for Hearing on August 3, 2009 nat 9:00 A.M. and 9:45 A.M. Debtor does not make any mention of the Affidavit of Charles Michael Forrest in the Amended Notice, nor, does Debtor discuss the facts stated in the Affidavit in their

INC., and Forrest Chevrolet-Oldsmobile-Cadillac, Inc., in Case No. 3-05-CV-0528-K; General Motors Corporation v. Forrest Chevrolet-Oldsmobile-Cadillac, Inc., and Forrest Pontiac-Buick-GMC Truck, Inc.; In the United States District Court for the Northern District of Texas, Dallas Division. Said suit concerned the phase-out of Debtor's Oldsmobile line of vehicles;

    1.    In said Case No. 3-05-CV-0528-K, a Transition and Release Agreement, two (2) Exclusive Use Agreements, and a Supplemental Settlement Agreement and Release. The Exclusive Use Agreement, as concerns FORREST PONTIAC-BUICK-GMC TRUCK, INC., provides, in paragraphs 1.(e) and (f) for an exclusivity period of fifteen (15) years for FORREST PONTIAC-BUICK-GMC TRUCK, INC., to sell Buick and Pontiac vehicles, and GMC Trucks at FORRESTS' place of business; while the Exclusive Use Agreement, as concerns FORREST CHEVROLET-CADILLAC, INC., provides, in paragraphs 1.(e) and (f) for an exclusivity period of fifteen (15) years for FORREST CHEVROLET-CADILLAC, INC., to sell Chevrolet and Cadillac vehicles at FORRESTS' place of business. Specifically, paragraph 2 of both Exclusive Use Agreements state as follows:

> "Dealer hereby agrees that, at all times during the Exclusive Period it shall actively and continuously conduct Dealership Operations for the Existing Model Lines at the Dealership Premises in accordance with the terms of the Dealer Agreements. ***THE DEALERSHIP PREMISES SHALL NOT BE USED FOR ANY PURPOSE OTHER THAN DEALERSHIP OPERATIONS FOR THE EXISTING MODEL LINES (WHICH PROHIBITED USE INCLUDES, BUT ARE NOT LIMITED TO, THE SALE, DISPLAY, STORAGE, AND/OR SERVICE OF MOTOR VEHICLES NOT COVERED BY THE DEALER***

---

Reply to FORRESTs' Limited Objection.

*AGREEMENTS OTHER THAN AS SPECIFICALLY CONTEMPLATED BY THE TERM 'DEALERSHIP OPERATIONS' IN THE DEALER AGREEMENTS), DURING THE EXCLUSIVITY PERIOD WITHOUT THE PRIOR WRITTEN CONSENT OF GM, WHICH CONSENT MAY BE GRANTED OR WITHHELD IN GM'S SOLE DISCRETION."* (emphasis added)

2. There is no provision in either Exclusive Use Agreements that exempts FORREST from this provision in the event they are no longer operating their dealerships under a franchise agreement with Debtor;

3. Debtor does not seek to reject these agreements in any currently pending motion.[2]

d. By letter dated July 15, 2008, GM offered to purchase both of our dealerships, with the real property to be leased, and with Goodwill valued, by GM, at $1.25 million. Significantly, this offer came at a time when both FORREST dealership's floor plans had been suspended by GMAC;

e. By letter dated December 15, 2008, Tommy Manuel offered to purchase the FORREST dealerships' inventories and other assets, plus pay an additional $3.6 million for the land and facility located at 2406 North Main, Cleburne, Texas, being the Chevrolet-Cadillac dealership;

f. By letter dated January 2009, Matt Johnson offered to purchase and the FORREST dealership inventories, other assets, and pay $4.0 million for the land and facility located at 2406 North Main, Cleburne, Texas, and pay an additional $800,000.00, for the Goodwill of the business with the right to use the Forrest name;

---

[2]. While Debtor seeks to reject certain "ancillary" agreements with a number of its dealers, none of the class of "ancillary" agreements listed by Debtor in footnote 2 of its motion concern these agreements Exclusive Use Agreements.

g. The departure of both FORREST PONTIAC-BUICK-GMC TRUCK, INC., and FORREST CHEVROLET-CADILLAC, INC., from the Cleburne, Texas, market area will leave that area with both a Chrysler-Dodge-Jeep dealer and a Ford dealer ***and no dealer of vehicles manufactured by "New General Motors"***;

f. In 2003/2004, FORREST built a new sales and service facility at 2408 North Main, Cleburne, Texas, and relocated the FORREST PONTIAC-BUICK-GMC TRUCK, INC., after receiving approval for the relocation from Debtors on January 22, 2004. It was not until FORREST agreed to build a new show room, sales office, and service facility that Debtor approved the relocation. The new facility at 2408 North Main, Cleburne, Texas, was built at a cost to FORREST of approximately $3.2 million; and

h. On July 7, 2008, Debtors sent to FORREST a letter which outlined purported breaches of the franchise agreements, namely, arising from the loss of the floor plan. While the letter references that Debtor can terminate the franchise agreements if FORREST fails the remedy the breach, DEBTOR never chose to terminate the franchise agreements, until Debtor filed the Motion at issue, over one (1) year later. Such is quite interesting considering the testimony of Mr. Frederick A. Henderson, President and CEO of Debtor, before Congress on June 12, 2009, in which Mr. Henderson stated:

> "We also carefully considered our dealer network coverage in rural areas and small towns versus urban/sururban markets. We know that our strong presence in rural areas, small towns and 'hub' towns gives us a strong competitive advantage on average or more than 10 points in market share, and we would like to maintain that advantage."

The FORREST dealerships are both located in Cleburne, Texas, a rural community of approximately 27,000, with a market area that reaches to thousands of others in a number of other small, rural, communities.

i. Debtor has only days ago admitted that its evaluation of dealers was flawed and it has chosen to reverse its decision to eliminate approximately fifty or more dealers, including dealers in small-town markets. This action was taken, in spite of Debtors, statements to this Court that it exercised its "business judgment" in analyzing the dealerships to eliminate. This action has been taken, in spite of the statement of Mr. Henderson, before Congress, that "Prior to taking any action, we conducted a thorough analysis of every GM dealer in every market throughout the U.S., to assess individual market requirements and dealer performance." Debtor now has admitted that it has used a flawed analysis and improper information in conducting its "business judgment" that dealerships, such as FORREST, should be closed.

j. Debtor has continued to keep secret the information utilized, the factors looked at, as well as the subjective criteria used in its determination of what dealers to keep and what dealers to discard. In doing so, Debtor has intentionally kept this Court in the dark as to the true facts behind its so-called "business judgment" decision, as well as the dealers who have objected to their termination. Specifically, FORREST is unable to factually respond to the unsubstantiated representation of Debtor that it had a "DPS" score of 21.65, because of Debtor's secrecy in this process of dealer terminations.

## II.
## IMPACT OF REJECTION ON FORREST DEMONSTRATES BAD FAITH

1. As stated by the court in *In re Pomona Valley Medical Group*, "[t]here may be cases where the disproportionate damage to the party whose contract is to be rejected demonstrates that the debtor-in-possession's decision could not be based on sound business judgment. *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 671 (9th Cir. 2007), citing *In re Chi-Feng Huang*, 23 B.R. 798, 801 (9th Cir. BAP 1982) . The court further, stated that "[s]uch determinations, clearly, involve

questions of fact.." *Id.*, at 670 citing *Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1307-08 (5th Cir. 1985); *Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir.1985).

2. As stated by the court in *Lubrizol*, "The issue before this Court "is whether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice. ***That issue is one of fact to be decided as such by the bankruptcy court by the normal processes of fact adjudication.***" (emphasis added) *Lubrizol Enter.*, 756 F.2d at 1047, citing *In re Minges*, 602 F.2d 38, 43 (2d Cir.1979)

3. In the present case, as shown above, in the event Debtor prevails and this Court approves the rejection of FORRESTs' franchises, then, FORREST will remain stuck, for the next ten (10) years performing warranty work and servicing GM vehicles, pursuant to the Exclusive Use Agreements, which Agreements wholly tie-up the real property upon which the dealerships are located and prevent FORREST from operating a franchised car dealership, with another manufacturer, or, even a used-car dealership, on the locations. In addition, FORREST will continue to not receive reimbursement for warranty work performed, which work, to date, totals approximately $15,000.00, which Debtor has refused to pay to FORREST, which work was performed under both the franchise agreements, as well as the Exclusive Use Agreements.

4. Finally, as set forth above, the actions of Debtor in secreting its process of dealer elimination, as well as the facts used in the process, prevent this Court from deciding whether Debtor used its "business judgment" in termination FORREST as dealers, or, whether Debtor acted on bad faith, whim, or caprice.

**WHEREFORE,** FORREST CHEVROLET-CADILLAC, INC., and FORREST

PONTIAC-BUICK-GMC TRUCK, INC., respectfully requests that the Court sustain their Limited Objection and for such other and further relief as it may show itself to be entitled.

Respectfully submitted,

JEFFREY S. DAVIS
Attorney at Law
1422 Berry Drive
Cleburne, Texas 76033
817/602-7999
FAX # 817/641-8829
jsdesqtx@yahoo.com

_____
JEFFREY S. DAVIS
Texas Bar No. 00787334

Attorney for Forrest Chevrolet-Cadillac, Inc., and
Forrest Pontiac-Buick-GMC Truck, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2009, a true and correct copy of the foregoing was served on all those parties receiving notice via the Court's Electronic Case Filing System (through ECF) and the parties below, via HAND-DELIVERY (if present at the hearing, and via U. S. Mail First Class, postage prepaid, if not present at the hearing, on the following parties:

Harvey Miller
Stephen Karotkin
Joseph H. Smolinsky
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Debtors
c/o General Motors Corporation

Attn: Lawrence S. Buonomo
300 Renaissance Center
Detroit, Michigan 48265
James L. Bromley
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Michael J. Edelman
Michael L. Schein
Vedder Price, P.C.
1633 Broadway 47th FL
New York, NY 10019

John J. Rapisardi
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Babette Ceccotti
Cohen Weiss and Simon LLP
330 W. 42nd Street
New York, NY 10036

Diana G. Adams
Office of U. S. Trustee
33 Whitehall Street, 21st Fl.
New York, NY 10004

David S. Jones
Matthew L. Schwartz
U. S. Attorney's Office
86 Chambers Street, 3rd Fl.
New York, NY 10007

Matthew Feldman
United States Department of the Treasury
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C. 20220

Kenneth H. Eckstein
Thomas Moers Mayer
Adam C. Rogoff
Gordon Z. Novod
Kramer, Levin, Naftalis & Frankel, L.L.P.
1177 Avenue of the Americas

New York, NY 10036

Daniel W. Sherrick
UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

The affected dealers as identified and listed on Exhibit "A" to Debtors' Motion.

_____
JEFFREY S. DAVIS