Hearing Date and Time:  August 18, 2009 at 9:45 a.m. (Eastern Time)
Objection Date and Time:  August 13, 2009 at 4:00 p.m. (Eastern Time)

Robert B. Weiss
Donald F. Baty, Jr.
Judy B. Calton
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Telephone: (313) 465-7344
Facsimile: (313) 465-7345

*Special Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
**In Re**                                                      :    Chapter 11
                                                               :
**MOTORS LIQUIDATION COMPANY** (f/k/a                          :    Case No. 09-50026 (REG)
General Motors Corp.), et al.,                                 :    (Jointly Administered)
                                                               :
         Debtors.                                              :    Hon. Robert E. Gerber
                                                               :
---------------------------------------------------------------x

**NOTICE OF MOTION FOR ORDER APPROVING ASSUMPTION OF AGREEMENT**
**FOR ENGINE MAINTENANCE SERVICES FOR GULFSTREAM 350 AIRCRAFT**

**PLEASE TAKE NOTICE THAT:**

On August 6, 2009, Motors Liquidation Company (f/k/a General Motors Corp.), *et al.* ("**MLC**") and certain of its affiliates, as debtors and debtors in possession in the above-captioned Chapter 11 cases (the "**Debtors**"), filed their *Motion for Order Approving Assumption of Agreement For Engine Maintenance Services For Gulfstream 350 Aircraft* (the "**Motion**").

The Motion, pursuant to sections 365 title 11 of the United States Code and Rules 6006 of the Federal Rules of Bankruptcy Procedure, seeks entry of an order authorizing the Debtors to assume an agreement with Jet Support Services, Inc. for maintenance of the engines associated

with certain Gulfstream 350 aircraft (the "**G350 Agreement**"), as more fully set forth in the Motion. A hearing, with respect to the Motion will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, Room 621 of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, on **August 18, 2009 at 9:45 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

A copy of the Motion may be obtained by (a) contacting the attorneys for the Debtors, Honigman Miller Schwartz and Cohn LLP, 660 Woodward Avenue, 2290 First National Building, Detroit, Michigan 48226 (Attn. Robert B. Weiss, Esq., Donald F. Baty, Jr., Esq. and Judy B. Calton, Esq.), Telephone: (313) 465-7000; (b) accessing the Court's website at http://www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); (c) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004; or (d) accessing the public website maintained by the Debtors' court-appointed claims and noticing agent in these cases at: **www.gmcourtdocs.com**.

The deadline to file any objections and responses to the Motion is **August 13, 2009** at 4**:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

Objections and responses, if any, to the Motion must be in writing and must (a) conform to the Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Southern District of New York, and any case management orders in these Chapter 11 cases, (b) set forth the name of the objecting party, the nature and amount of claims or interests held or asserted by the objecting party against the Debtors' estates or property, and (c) set forth the basis for the objection and the specific grounds therefore.

2

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Honigman Miller Schwartz and Cohn LLP, Attn: Robert B. Weiss, Donald F. Baty, Jr. and Judy B. Calton, 660 Woodward Avenue, 2290 First National Building, Detroit Michigan 48226; (ii) the Debtors, c/o Motors Liquidation Company (f/k/a General Motors Corp.), 300 Renaissance Center, Detroit, Michigan 48226 (Attn: Lawrence S. Buonomo, Esq.); (iii) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (iv) the United States Department of the Treasury, 1500 Pennsylvania Avenue, NW, Room 2312, Washington. D.C. 20020, (Attn: Matthew Feldman, Esq.); (v) Vedder Price, attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vi) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq., Thomas Moers Mayer, Esq., Adam C. Rogoff, Esq. and Gordon Z. Novod, Esq.); (vii) the attorneys for the International Union, United Automobile, Aerospace and Agriculture Implement Workers of America ("UAW") 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel W. Sherrick, Esq.); (viii) Cleary Gottlieb Steen & Hamilton LLP,

attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (ix) Cohen, Weiss and Simon LLP, attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (x) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; (xi) the attorneys for Jet Support Services, Inc., Novack and Macey LLP, 100 North Riverside Plaza, Chicago, IL 60606-1501 (Attn: Monte L. Mann, Esq.); (xii) Jet Support Services, Inc., 180 N. Stetson, 29th Floor, Chicago, IL 60601 (Attn: John F. Haskins and Susan K. Marr); (xiii) the registered agent for Jet Support Services, Inc., Stephen A. Marcus, 6600 Sears Tower, Chicago, IL 60606; and (xiv) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), so as to be received no later than the **Objection Deadline.**

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing on the Motion. Failure to appear at the Hearing may result in relief being granted or denied upon default.

|  |  |
|---|---|
|  | HONIGMAN MILLER SCHWARTZ AND COHN LLP<br>Special Counsel to the Debtors and Debtors in Possession |
| Dated: August 6, 2009 | By: /s/ Judy B. Calton<br>Robert B. Weiss (Michigan Bar No. P28249)<br>Donald F. Baty, Jr. (Michigan Bar No. P38087)<br>Judy B. Calton (Michigan Bar No. P38733)<br>2290 First National Building<br>660 Woodward Avenue<br>Detroit, MI  48226<br>Telephone:  (313) 465-7344<br>Facsimile:  (313) 465-7345<br>Email:  jcalton@honigman.com |

DETROIT.3767023.1

**Hearing Date and Time:  August 18, 2009 at 9:45 a.m. (Eastern Time)**
**Objection Date and Time:  August 13, 2009 at 4:00 p.m. (Eastern Time)**

Robert B. Weiss
Donald F. Baty, Jr.
Judy B. Calton
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Telephone: (313) 465-7344
Facsimile: (313) 465-7345

*Special Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In Re                                                        :   Chapter 11
                                                             :
MOTORS LIQUIDATION COMPANY (f/k/a                            :   Case No. 09-50026 (REG)
General Motors Corp.), et al.,                               :   (Jointly Administered)
                                                             :
           Debtors.                                          :   Hon. Robert E. Gerber
                                                             :
-------------------------------------------------------------x
```

**MOTION FOR ENTRY OF ORDER APPROVING ASSUMPTION OF**
**AGREEMENT FOR ENGINE MAINTENANCE SERVICES FOR**
**GULFSTREAM 350 AIRCRAFT**

To the Honorable Robert E. Gerber, United States Bankruptcy Judge:

Motors Liquidation Company, (f/k/a General Motors Corp.), *et al.* ("**MLC**") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"), respectfully represent:

**Relief Requested**

1. The Debtors request entry of an order pursuant to Section 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6006 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**") authorizing the assumption of the JSSI Complete Plus Engine Maintenance Program Contract dated October 20, 2003 as extended (**the "G350 Agreement"**).

2.  The Debtors also seek a finding in such order that there are no cure amounts owed by Debtors with respect to the G350 Agreement and that Debtors have provided Jet Support Services, Inc. ("**JSSI**"), the counter party to the G350 agreement, adequate assurance of Debtors' future performance thereunder.

3.  In addition, the Debtors seek a provision in such order that JSSI shall not be entitled to assert or take any act to exercise setoff of any prepetition claim that it might have against any of the Debtors against any obligation to Debtors with respect to the G350 Agreement.

## Jurisdiction

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Assumption of the Agreement is in the Best Interest of Debtors' Estates

5.  MLC and JSSI were party to two engine maintenance contracts covering seven engines (collectively, the **"JSSI Agreements"**):

    A.  the JSSI Complete Plus Engine Maintenance Program Contract dated May 20, 2002 as extended (the **"GV Agreement"**); and

    B.  the JSSI Complete Plus Engine Maintenance Program Contract/General Motors Corporation/Contract Nos. FC-GYX-004013-0, FC-GYX-004016-0, FC-GYX-004026-0 dated October 20, 2003, as extended (the "**G350 Agreement**"). A copy of the

2

G350 Agreement is attached as Exhibit A.  A copy of the Declaration of David Renner (the "**Renner Declaration**") is attached as Exhibit B.

6. The GV Agreement provides the terms under which JSSI provided scheduled and unscheduled maintenance services for the engines in the GV Gulfstream aircraft leased by MLC from the lessor.  *See* Renner Declaration, Paragraph 6.

7. Similarly, the G350 Agreement provides the terms under which JSSI provided scheduled and unscheduled maintenance services for the engines in the G350 Gulfstream aircraft leased by MLC from the lessor.  *See* Renner Declaration, Paragraph 7.

8. Under the JSSI Agreements, MLC made payments, including monthly payments based on flight hours reported for each engine to a specific trust account to be used by JSSI to cover, among other things, the costs of performing unscheduled and scheduled midlife major overhauls of the engines, which overhauls represent a significant expense.  *See* Renner Declaration, Paragraph 8.

9. MLC's leases of the Gulfstream 350 aircraft with the engines subject to the G350 Agreement were rejected by the *Order Pursuant to 11 U.S.C. § 365 Authorizing The Rejection of Aircraft and Airport Lease Agreements and For Related Relief* dated June 18, 2009 (Docket 1791).

10. Debtors have the right under the G350 Agreement to remove engines from coverage if such engines are returned to the aircraft lessors.  Upon notice, the charges under the G350 Agreement with respect to such engines cease, and a calculation is performed as to amounts due under Section V(f)(ii) of the G350 Agreement (the "**Section V(f)(ii) Payment**") as follows (emphasis added):

3

(ii) in addition to the rights of **the Customer set forth in Section V(b), the Customer shall have the right to remove Engines from the coverage of this Contract if such Engines are returned to their lessor**, sold by Customer of suffer an event of loss.  In such event all charges hereunder shall cease to accrue for such Engines on the date notified by Customer to JSSI as the date on which such Engines will cease to be covered by this Contract, the Customer shall immediately pay all amounts due and owing to JSSI through and including such date and any applicable warranty coverage set forth in Section III(q) will continue to apply to such Engines in accordance with the terms of such Section.  Upon any removal of Engines as contemplated by the terms of this subsection, JSSI and the Customer shall determine (a) the product of (x) the aggregate of all amounts paid hereunder by Customer with respect to such Engines (including any Pro Rata Elimination Payment) less any allocable expenses of the Trust with respect to such Engines, including expenses for taxes, insurance and trustee fees and payment of any Management Fees, as defined in the Trust, and (y) .95; and (b) the aggregate of all amounts paid to FAA/OEM Approved Repair Facilities by JSSI with respect to such Engines.  **If the amount determined under clause (a) exceeds the amount determined under clause (b), JSSI shall pay such excess to Customer in cash**.  If the amount determined under clause (b) exceeds the amount determined under clause (a), Customer shall pay such excess to JSSI in cash.

*See* Exhibit A.

11. MLC gave JSSI notice on or about June 11, 2009 that the G350 engines were to be returned to the lessor and the G350 engines were returned to the lessor between June 26, 2009 and June 29, 2009, as summarized below:

| **Aircraft Serial Number** | **Registration Number** | **Return Date** |
|:---:|:---:|:---:|
| 4013 | N5113 | 6/26/2009 |
| 4016 | N5114 | 6/29/2009 |
| 4019 | N5115 | 6/29/2009 |
| 4023 | N5116 | 6/26/2009 |
| 4026 | N5117 | 6/27/2009 |

4

Renner Declaration, Paragraph 13.

12. The postpetition return of the engines subject to the G350 Agreement to the lessor triggered the application of Section V(f)(ii) of the G350 Agreement. Under the G350 Agreement, the Section V(f)(ii) Payment amount determined under clause (a) of Section V(f)(ii) exceeds the amount determined by clause (b), so that JSSI owes MLC an estimated $1,750,000 under the G350 Agreement. *See* Renner Declaration, Paragraph 14.

13. JSSI owes MLC the Section V(f)(ii) Payment since the cumulative expenditures by JSSI for these engines were significantly less than the cumulative payments from MLC as of the date that the aircraft and aircraft engines were returned to the lessor. The significant positive trust balances relate to the fact that the G350 aircraft engines had not reached the hourly threshold for the midlife major overhauls. Renner Declaration, Paragraph 14.

14. Because all of the engines subject to the G350 Agreement were returned to the lessors postpetition, and JSSI owes the Section V(f)(ii) Payment to Debtors under Section V(f)(ii) of the G350 Agreement, there is no further performance owed by Debtors under the G350 Agreement. Renner Declaration, Paragraph 15.

15. Thus, assumption of the G350 Agreement would result in JSSI owing Debtors an estimated $1,750,000 on a postpetition basis.

16. There can be no question of Debtors' adequate assurance under the assumed G350 Agreement because no further performance will be due post-assumption. Because the G350 Agreement was executory on MLC's petition date, it is executory for purposes of assumption despite the postpetition performance of the agreement. *In re Penn Traffic Company,* 524 F.3d 373, 381 (2d Cir 2008) ("Executoriness and the debtors rights with respect to assumption or rejection of a contract are normally assessed as of the petition date . . . ").

5

17. Section 365(a) of the Bankruptcy Code empowers a debtor in possession, "subject to the court's approval, [to] assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). In determining whether to approve the assumption or rejection of executory contracts and leases of the debtor, courts apply the "business judgment" standard. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996). "More exacting scrutiny would allow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

18. Accordingly, in the exercise of their business judgment, the Debtors have determined that the assumption of the G350 Agreement, pursuant to Section 365 of the Bankruptcy Code, is in the best interests of their estates.

19. Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Picture Corp.)* 4. F.3d 1095, 1099 (2d Cir. 1993) (Section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *see, also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y., 1996) ("A bankruptcy court reviewing a trustee's decision to assume or reject an executory contract should

6

apply its 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it.").

20. Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. *See In re Riodizio, Inc.* 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business judgment of the debtor's management"). The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See e.g. Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 195 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's decision to assume or reject an executory contract, the court must examine the contract and circumstances and apply its best 'business judgment' to determine if the assumption or rejection would be beneficial or burdensome to the estate.").

## JSSI Should Not be Allowed to Set Off Any Prepetition Claims Against its Obligations Under the G350 Agreement

21. In making a determination to assume executory contracts such as the G350 Agreement, the Debtors are expecting and requiring counterparties such as JSSI, who are obligated to make payment to the Debtors under the assumed contract, to make such payment without setoff for prepetition claims arising under other contracts. If such setoff were permitted, the Debtors would lose a substantial portion of the benefit to be derived from assumption of executory contracts, such as the G350 Agreement.

22. Section 553 of the Bankruptcy Code provides, in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…

7

23. It is well-established that, for a setoff to be permissible, there must be mutuality of obligations. *See In re Shoppers Paradise, Inc.*, 8 B.R. 271, 277 (Bankr. S.D.N.Y. 1980). Although prepetition obligations may be setoff against prepetition obligations and postpetition obligations against postpetition obligations, "[t]raditionally, there has been no crossover of claims because the debtor and the debtor-in-possession are two separate and distinct entities which act in different capacities pre-and post-petition." *In re Genuity* 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005) (citing *Shopmen's Local 455 v. Kevin Steel Products, Inc.* 519 F. 2d 698, 704 (2d Cir. 1975)); *Shoppers Paradise, Inc.* 8 B.R. at 279. Thus, for the mutuality requirement to be satisfied, the two debts must both be prepetition or both must be post-petition; a post-petition obligation cannot be setoff against a prepetition obligation. *See In re O.P.M. Leasing Services, Inc.*, 69 B.R. 979, 986 (Bankr. S.D.N.Y. 1987); *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 277-278 (Bankr. S.D.N.Y. 1980).

24. The burden lies with the party seeking setoff to prove its right to do so and, thus, to establish the requisite mutuality. *See Official Comm. of Unsecured Creditors v. Mfrs. and Traders Trust Co. (In re the Bennett Funding Group, Inc.)*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), *aff'd*, 146 F. 3d 136 (2d. Cir. 1998). Moreover, mutuality is strictly construed against the party seeking the right of setoff. *See Bennett Funding*, 212 B.R. at 212 ("A narrow interpretation of mutuality ensures that setoff is allowed only in situations in which the equitable considerations are the strongest.") (quoting with approval *In re Ionosphere Clubs*, Inc. 164 B.R. 839, 843 (Bankr. S.D.N.Y. 1994).

25. In the event JSSI were to allege a right to setoff, it would arise from the rejection of the GV Agreement, pursuant to the *Motion for Entry of Order Authorizing Rejection of Agreement for Engine Maintenance Services for Gulfstream 5 Aircraft* dated August 6, 2009 (Docket No. 3690) *(*the "**GV Agreement Rejection Motion**"*).* In accordance with Section

8

365(g)(1) of the Bankruptcy Code, that rejection "constitutes a breach of such contract…immediately before the date of the filing of the petition." Pursuant to Section 502(g) of the Bankruptcy Code, a claim arising from the rejection of an executory contract shall be determined, and shall be allowed or disallowed, "the same as if such claim had arisen before the date of the filing of the petition." In other words, rejection of the GV Agreement created a prepetition unsecured claim against the MLC estate. *See, e.g., In re Communications Dynamics, Inc.*, 382 B.R. 219, 232 (Bankr. D. Del 2008); *Frank v. Benzel Bretzel Bakery (In re Clintondale Mills, Inc.)*, 216 B.R. 742, 746 (Bankr. M.D. Pa 1998); *Express Freight Lines, Inc. v. Kelly (In re Express Freight Lines, Inc.)*, 130 B.R. 288, 291-92 (Bankr. E.D. Wis. 1991); *In re Mace Levin Assocs., Inc.*, 103 B.R. 141, 143-144 (Bankr. N.D. Ohio 1989). *But see In re Delta Air Lines*, 341 B.R. 439, 449 (Bankr. S.D.N.Y. 2006) (finding, in a decision that has been criticized by courts and commentators, that rejection claims did not "arise prior to the commencement of the case" for setoff purposes).

26.   In stark contrast, the effect of assumption of the G350 Agreement under Section 365(a) of the Bankruptcy Code is to require JSSI, as the counterparty, to perform its obligations on a *postpetition* basis. Thus, any purported exercise of a right of setoff would entail the setoff of a prepetition unsecured claim owed by the Debtors (the rejection damage claim), against a postpetition claim owed by JSSI to the debtor in possession (the Section V(f)(ii) Payment).

27.   Consistent with the foregoing, several courts have found it impermissible under Section 553 to set off prepetition claims against obligations under assumed contracts. *See, e.g., In re Evatt*, 112 B.R. 405, 415 (Bankr. W.D. Okl. 1989); *In re Walat Farms Inc.*, 69 B.R. 529, 534 (Bankr. E.D. Mich. 1987). *See also 4 Norton Bankr. L. & Prac*. 3d § 73:4 (2008) ("[T]he timely postpetition rejection of an executory contract creates a prepetition claim subject to setoff by the operation of the "relation-back" rule of Code § 502(g). By contrast, the assumption of a

9

contract postpetition may give rise to a postpetition obligation that is no longer a mutual debt with a prepetition obligation"). *But see In re Gerth*, 991 F.2d 1428, 1432 (8th Cir. 1993) (finding that government could offset its prepetition claim against its obligation to pay the debtor under an assumed contract); *In re Buckner*, 218 B.R. 137, 145-49 (B.A.P. 10th Cir. 1998) (government's obligation to make postpetition Conservation Recovery Program payments was considered a prepetition debt).

28.    Even those courts finding it possible for a prepetition claim to be set off against an obligation under an assumed contract, evaluate whether the obligation under the assumed contract arose prepetition or postpetition. If the obligation under the assumed contract arose postpetition, the prepetition claim cannot be setoff against the obligation under the assumed contract. *See In re Allen*, 135 B.R. 856 (Bankr. N.D. Iowa 1992). *Cf. In re Lehman Brothers, Inc.*, 404 B.R. 752, 755 (Bankr. S.D.N.Y. 2009) ("Timing has always mattered for setoff purposes..."). JSSI's obligation to pay MLC under the G350 Agreement did not mature and become due until MLC returned the G350 engines to the lessor postpetition, Bank of Chicago.[1] Thus JSSI's Section V(f)(ii) obligation under the G350 Agreement is a post-petition obligation which cannot be set off against MLC's obligation under the rejected GV Agreement. *See In re North Atlantic & Gulf Steamship Co.*, 204 F. Supp 899, 911 (S.D.N.Y. 1962) (where shipowner was obliged to buy unused fuel from debtor-charterer when vessel was returned to owner and vessels were returned postpetition, obligation to buy fuel was a postpetition obligation not subject to setoff); *Bank of Chicago-Garfield Ridge v. Park National Bank*, 606 N.E. 2d 72, 76, 77 (Ill. App. 1992) (under Illinois law, setoff requires the two debts to be "(1) mutual between the parties, (2) mature, and (3) liquidated." "A debt matures on the date it is due").

---

[1] The G350 Agreement is governed by Illinois law.

10

29.     While courts within the United States Court of Appeals for the Second Circuit have considered related issues, *see e.g., In re Genuity*, 323 B.R. 79 (Bankr. S.D.N.Y. 2005), there appears to be no published opinion on the issue in this Court.  *But see Order Pursuant To Section 365 of The Bankruptcy Code Approving The Assumption or Rejection of Open Trade Confirmation*, In re Lehman Brothers Holdings Inc No. 08-13555 (Docket No. 2564 January 16, 2009 (Peck, J) (the "**Lehman Order**").[2]  The Debtors submit that the rule adopted by the *Evatt* and *Walat Farms* courts is the better view, and one that reflects due regard for the fundamental distinction between a prepetition unsecured claim and a postpetition administrative obligation.

30.     The decision in *In re Genuity, supra,* is instructive.  In *Genuity,* the debtors argued that prepetition deposits held by counterparties as security deposits for the debtors' obligations should be applied to reduce the amount that the debtors were required to pay as cure costs under assumed contracts.  323 B.R. at 82.  In roundly rejecting the debtors' argument, the Court noted the effect of assumption of the executory contracts, finding that "[t]he Debtors' post-petition assumption of their executory contracts transformed the pre-petition claims of the [counterparties] once not cured into new claims arising post-petition."  *Id.* (citations omitted) Notably, the Court went on to find:

> [T]he court has found that none of the cases it has reviewed…addresses what this court deems a critical factor in denying the pre/post-petition crossover of claims which the Debtors propose:  that is that pre-petition dollars and post-petition

---

[2] The Lehman Order provides in pertinent part on page 5:

"ORDERED that no Counterparty shall be entitled to assert or take any action to exercise a right to setoff any prepetition claim that it might have against either Debtor, including, without limitation, claims for damages arising from the rejection of a Rejected Trade, against any obligation payable to the applicable Debtor under any Assumed Trade or Amended Trade, *provided, however*, that nothing contained in this Order shall compromise the right that any Counterparty may have to file a claim for damages from the rejection of a Rejected Trade if such right is preserved in such Counterparty's letter agreement, …

A copy of the Lehman Order is attached as **Exhibit C**.

11

> dollars are considered differently under the Code. Under their plans of reorganization, debtors routinely pay fractional dividends, percentages on the dollar, to their pre-petition unsecured creditors. Post-petition administrative expenses are paid in full, 100¢ on the dollar. *It is not fair, nor is it equitable, to allow the satisfaction of post-petition obligations with fractional dollars, rather than whole ones.*

*Id*. (emphasis added).

31. While the facts in the instant case are different than in *Genuity*, in that here the Debtors seek to preclude setoff, the principles are the same. If JSSI were permitted to assert a right of setoff, JSSI would effectively be granted administrative expense treatment for its rejection damage claims. *See* Vincent J. Roldan, *Delta Court Holds Rejection Damages Cannot be Offset Against Prepetition Debt to Debtor,* PRATT'S J. BANKR., March 2007, at 3. That is completely inconsistent with Sections 365(g) and 502(g) of the Bankruptcy Code and should not be permitted.

32. The narrow construction of Section 553 is also consistent with the observation of the United States Court of Appeals for the First Circuit in *In re Public Service of New Hampshire,* 884 F.2d 11 (1st Cir. 1989) in which the Court observed:

> As Congress recognized, setoffs work against both the goal of orderly reorganization and the fairness principle because they preserve serendipitous advantages accruing to creditors who happen to hold mutual obligations, thus disfavoring other equally-deserving creditors and interrupting the debtor's cash flow.

*Id.* at 13 (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 183).

33. Even if JSSI were able to demonstrate that the literal requirements for setoff have been satisfied, the Debtors request that such setoff be precluded on equitable grounds. As the Bankruptcy Appellate Panel for the Second Circuit noted in *Bennett Funding:*

12

> Once the technical requirements of setoff are satisfied, "the bankruptcy judge must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives. These goals include…equitable treatment of all creditors." In addition, the right of setoff is within the bankruptcy court's discretion, and it may "invoke equity to bend the rules," if required, to avert injustice.

212 B.R. at 212 (citations omitted). Here, setoff should not be permitted where it would allow parties with claims for rejection damages to receive, in effect, payment in full of such claims, irrespective of the distributions that may ultimately be made to other unsecured creditors and in contravention of the policies underlying Sections 365(g) and 502(g) of the Bankruptcy Code.

34. Inasmuch as the requisite mutuality of the proposed setoff is lacking, and for equitable reasons, the Debtors seek entry of an order providing that JSSI shall not be entitled to assert or take any act to exercise a right to set off any prepetition claim, whether arising from the GV Agreement or otherwise, against any obligation to the Debtors under the G350 Agreement.

## Notice

35. Notice of this Motion has been provided to (i) the Debtors, c/o Motors Liquidation Company (f/k/a General Motors Corp.); (ii) attorneys for the United States Department of the Treasury; (iii) the United States Department of the Treasury; (iv) attorneys for Export Development Canada; (v) attorneys for the statutory committee of unsecured creditors; (vi) the attorneys for the International Union, United Automobile, Aerospace and Agriculture Implement Workers of America; (vii) the Office of the United States Trustee for the Southern District of New York; (viii) the attorneys for Jet Support Services, Inc., Novack and Macey LLP, 100 North Riverside Plaza, Chicago, IL 60606-1501 (Attn: Monte L. Mann, Esq.); (ix) Jet Support Services, Inc., 180 N. Stetson, 29th Floor, Chicago, IL 60601 (Attn: John F. Haskins and Susan K. Marr); (x) the registered agent for Jet Support Services, Inc., Stephen A. Marcus, 6600 Sears Tower, Chicago, IL 60606; (xi) the U.S. Attorney's Office, S.D.N.Y.; and (xii) all

entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## No Prior Request

36.    No previous request for the relief sought in this Motion has been made by the Debtors to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of the proposed order attached as **Exhibit D** granting the relief requested herein and such other and further relief as is just.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Special Counsel to the Debtors and Debtors in Possession

Dated: August 6, 2009

By: /s/ Judy B. Calton
Robert B. Weiss (Michigan Bar No. P28249)
Donald F. Baty, Jr. (Michigan Bar No. P38087)
Judy B. Calton (Michigan Bar No. P38733)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7344
Facsimile: (313) 465-7345
Email: jcalton@honigman.com

DETROIT.3767025.4