# EXHIBIT A

G-350 contracts

## JSSI COMPLETE PLUS

## ENGINE MAINTENANCE PROGRAM CONTRACT

## GENERAL MOTORS CORPORATION

### CONTRACT #s FC-G4X-004013-0, FC-G4X-004016-0, FC-G4X-004019-0, FC-G4X-004023-0, and FC-G4X-004026-0

**Jet Support Services, Inc.**
**180 North Stetson**
**29th Floor**
**Chicago, Illinois 60601**
**Phone:  (312) 644-4444**
**Fax:    (312) 644-4440**

10/20/2003

# TABLE OF CONTENTS

**Section**                                                                                    **Page**

I.      OBLIGATIONS OF JSSI ...................................................................................1

II.     OBLIGATIONS OF THE CUSTOMER. .............................................................2

III.    ENGINE MAINTENANCE. .................................................................................3

IV.     RENTAL ENGINES .........................................................................................9

V.      TRANSFER, TERMINATION AND CONTINUATION OF SERVICE.................9

VI.     FEES AND OTHER CHARGES. ...................................              12

VII.    GENERAL PROVISIONS. ...............................................................................14

EXHIBIT A
        DEFINED TERMS.................................................................................A-1

EXHIBIT B
        APPLICATION ....................................................................................B–1

EXHIBIT C
        ENGINE PRO RATAS..........................................................................C–1

## JSSI COMPLETE PLUS ENGINE MAINTENANCE PROGRAM CONTRACT

## CONTRACT NUMBER: FC-G4X-004013-0

`THIS JSSI COMPLETE PLUS ENGINE MAINTENANCE PROGRAM CONTRACT (this "Contract") is entered into as of the 12th of September 2005, by and between GENERAL MOTORS CORPORATION, a Delaware corporation (the "Customer"), and JET SUPPORT SERVICES, INC., a Delaware corporation ("JSSI").

## <u>RECITALS:</u>

A.    JSSI is in the business of providing programs for the repair and maintenance of turbine engines as described in this Contract (the "Program"). All terms used herein, and not defined herein, shall have the meanings ascribed to them in Exhibit A, attached hereto and made a part hereof.

B.    The Customer desires to obtain the benefits of the Program, and JSSI desires to provide the Program to the Customer, subject to the terms and conditions of this Contract.

The parties agree as follows:

I.    <u>OBLIGATIONS OF JSSI.</u> The repair and maintenance services to be provided to the Customer and paid for by JSSI pursuant to the Program are as follows:

a)    Parts and labor for Routine Inspections and Scheduled Maintenance.

(b)    Parts and labor for Unscheduled Maintenance;

(c)    Parts and labor required in certain circumstances by Airworthiness Directives and mandatory or recommended Service Bulletins in accord with Section III(d) hereof;

(d)    Exchange or Rental Engines, Components, or Modules during extended Unscheduled Maintenance or Scheduled Maintenance as follows and as further provided herein:

(i)    Scheduled Maintenance requiring more than ten (10) business days of down time; and

(ii)    Unscheduled Maintenance requiring more than five (5) business days of down time;

(e) On-site technical representation during Scheduled Maintenance or Unscheduled Maintenance requiring Shop Entry into Engine;

(f) Coverage of Line Replacement Units and associated Components and related assemblies;

(g) All freight charges and all repair logistics expenses related to on-site maintenance activities, such as mobile repair units, personnel and equipment charges; provided, however, on-site repair and maintenance personnel costs shall be covered hereunder only in connection with repair and maintenance activities covered hereunder and in cases where the Aircraft cannot be flown to an FAA/OEM Approved Repair Facility in accordance with the applicable flight manual, minimum equipment list and special flight permit.

(h) Costs for removal and replacement of Engine(s) hereunder;

(i) Any repairs to, or replacements of, the Engines and any parts thereof required as a result of build-material-object damage or internal-object damage, including, without limitation, replacement of an Engine as a result of catastrophic failure; and

(j) Costs for spectrometric oil analysis and trend monitoring, if required by the OEM and/or Customer.

## II.  OBLIGATIONS OF CUSTOMER.

(a) Engine Operation and Maintenance.

(i)      During the term hereof, Customer warrants that the Aircraft and the Engine(s) shall be operated and maintained in accordance with the applicable Aircraft flight manual limitations and the applicable Aircraft and Engine maintenance manual procedures.

(ii)     Customer warrants that the Engine(s) shall not be operated for any Unusual Purposes.

(iii)    Customer warrants that all known or suspected Abuse or damage to the Engine(s) has been, and any events constituting Excluded Events will be, promptly reported to JSSI and the FAA/OEM Approved Repair Facility designated to repair the Engine(s).

(b) Records. Except as provided in the last two (2) sentences of this subsection (b) to be the responsibility of JSSI, Customer warrants that the Engine log books and records currently contain, and shall continue to contain, accurate entry of all Engine operating times and cycles, operating events, and any modifications, repairs or maintenance required to be recorded for the purposes of this Contract and by the FAA/OEM, or any other applicable airworthiness authority or as required by law. Such information shall be promptly furnished to JSSI upon the request of JSSI. During Scheduled and Unscheduled Maintenance, the Customer agrees to ship all Engine logbooks and any other pertinent operating records with the Aircraft and Engine(s) to the FAA/OEM

Approved Repair Facility designated to perform the specified maintenance. JSSI shall ensure that for all services provided hereunder, adequate records are maintained and forwarded by the FAA/OEM Approved Repair Facility to Customer. To the extent reasonably in the control of JSSI, and without limitation, JSSI shall ensure that the following documents are delivered with the Engine following each shop visit: Engine release tag on FAA Form 8130, description of replacement Life Limited Components installed, description of work carried out to each Module and description of any Airworthiness Directives and Service Bulletins incorporated.

## III.  ENGINE MAINTENANCE.

(a) Life Limited Components.  All Life Limited Components shall be replaced with Life Limited Components having like time or better remaining and having enough time remaining to take the Engine to the next Scheduled Event.

(b) Scheduled Maintenance.

(i)    Scheduled Maintenance shall be performed by an FAA/OEM Approved Repair Facility selected by Customer. The Customer agrees to notify JSSI not later than ninety (90) days in advance of Scheduled Maintenance, using a form provided to the Customer by JSSI for that purpose.

(ii)    JSSI shall request the FAA/OEM Approved Repair Facility to provide a Rental Engine for Customer's use while the Engine(s) undergo Scheduled Maintenance or unscheduled Engine removal. In the event a Rental Engine is provided in connection with Abuse repairs, the Customer shall be responsible for the FAA/OEM Approved Repair Facility's normal Rental Engine charges. In all other circumstances, the Customer's current Engine Operating Hourly Usage Rate shall apply.

(c) Unscheduled Maintenance for Unserviceable Units.

(i) Unscheduled Maintenance shall be performed by an FAA/OEM Approved Repair Facility at JSSI's expense for parts and labor, including the labor hours expended in Troubleshooting up to a maximum of five (5) hours. All labor charges associated with Troubleshooting in excess of five (5) hours shall be the Customer's responsibility.

(ii) In the event the Customer believes an Engine requires Unscheduled Maintenance, the Customer shall notify JSSI of the location and condition of the Unserviceable Unit using a form provided to the Customer by JSSI for that purpose. As soon as practicable thereafter, JSSI shall, without limiting JSSI's obligations under Section III(o) hereof, initiate one or more of the following actions, as it deems appropriate:

3

(A) Dispatch a JSSI representative to the location of the Unserviceable Unit; or

(B) Dispatch a Serviceable Unit to the location specified by the Customer in exchange for the Unserviceable Unit.

In addition, JSSI shall effect a timely repair of the Unserviceable Unit. JSSI may elect to furnish in accordance with Section III(o) hereof, for a reasonable period of time, a Rental Engine or LRU to the Customer while the Customer's Unserviceable Unit is being repaired. In the event the Rental Engine or LRU is used in connection with Abuse repairs, the Customer shall be responsible for the FAA/OEM Approved Repair Facility's normal Rental Engine or LRU charges. In all other circumstances, the Customer's current Engine Operating Hourly Usage Rate shall apply.

(d) <u>Service Bulletins and Airworthiness Directives</u>.

(i) Service Bulletins designated as mandatory or recommended shall be performed at JSSI's expense for parts and labor when issued subsequent to Engine enrollment into the Program and incorporated with Scheduled Maintenance. All other Service Bulletin compliance is at the Customer's discretion and sole expense. The Customer may, with the appropriate training and approvals, perform service bulletin maintenance if embodied in accordance with compliance criteria. JSSI will reimburse labor at 100% of retail rate in the Customer's home base territory.

(ii) With respect to JSSI's obligation to perform Service Bulletins hereunder, any cost or liability associated with the Customer's lack of compliance with any Service Bulletin which was issued and not complied with prior to the date of Engine enrollment into the Program shall be the responsibility of the Customer, if enrolled on a Pro Rata program.

(iii) Airworthiness Directives affecting the Engines shall be performed at JSSI's expense for parts and labor if issued on or after the date hereof. In any case in which compliance may be accomplished by either (x) a maintenance and/or repair action or (y) an inspection program, provided that the action occurs in connection with Scheduled Maintenance or other Unscheduled Maintenance, JSSI shall cause such maintenance and repair action to be taken.

(e) <u>Replaced Hardware.</u> All Nonconsumable Hardware that is removed and replaced during Engine maintenance or repair shall be the property of Customer, may not be destroyed or removed from the FAA/OEM Approved Repair Facility without the prior written approval of Customer and shall be promptly returned to Customer unless Customer shall have otherwise consented.

4

The Customer acknowledges that any such Nonconsumable Hardware that cannot be refurbished will be destroyed.

(f) Replacement Parts. The FAA/OEM Approved Repair Facilities shall use new, serviceable or reworked hardware in performing Engine or Component maintenance or repairs. All serviceable Engine parts exchanged by the FAA/OEM Approved Repair Facility shall have sufficient service life remaining to reach the next Scheduled Event. No "parts-manufacturing-authority" parts shall be used as replacement parts hereunder.

(g) [RESERVED]

(h) No Conversion. Nothing set forth herein shall be deemed to provide for the conversion of any Engine to a later or improved model of its Engine series or for the replacement of serviceable Components in response to design changes after manufacture of the Aircraft.

(i) Excluded Events. Notwithstanding anything to the contrary contained herein, and provided that the term "Excluded Events" shall not include any event which is the direct result of any action or inaction by JSSI or any FAA/OEM Approved Repair Facility, JSSI shall not be responsible for the costs to remedy or repair any damage or loss attributable to:

(i) Abuse of the Aircraft and/or Engine(s);

(ii) Operation of the Aircraft other than in accordance with its certificate of airworthiness, unless so operated in an emergency or by government authorization, or use of the Engine(s) in a manner not in accordance with the FAA/OEM's instructions;

(iii) Unauthorized repairs, maintenance, alterations or use of parts resulting from the Customer deviating from the FAA/OEM recommendations in applicable Service Bulletins, maintenance manuals or repair and overhaul manuals;

(iv) Inspections, maintenance or repair, or loss or damage during any preparation or re-assembly or while being test run in a test stand or test cell in connection with such Inspections, maintenance or repair;

(v) Any Components requiring replacement and the associated labor to replace any such Components prior to or during Unscheduled or Scheduled Maintenance as a direct result of Erosion or Corrosion beyond the OEM's limits caused by non-standard corporate aircraft operations or unusual wear and tear;

5

10/20/2003

(vi)Normal wear and tear of Consumable Hardware, lubricants and fuels; and

(vii) Any external causes whatsoever, including, but not limited to, fire, extinguishing of fire, accident, Lightning Strikes, explosion, impact or collision including Foreign Object Damage, burglary, theft, or natural catastrophe or any consequence of war, invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, mutiny, riots, strike, lock-out, labor disruptions, civil unrest, military or usurped power, conspiracy, confiscation, commandeering, requisition or destruction of or damage to property by order of any government or any public authority.

In case any repair and maintenance services are required in connection with any Excluded Events, JSSI shall, at Customer's option, provide such services at the best price then available to JSSI through an FAA/OEM Approved Repair Facility, to be paid for in full by the Customer.

(j) Overtemping. The Customer acknowledges and agrees that the Engine(s) may be tested from time to time by the FAA/OEM Approved Repair Facility in accordance with accepted practices to determine if any Overtemping of the Engine(s) has occurred. In the event any unreported or negligent Overtemping by Customer is detected, the cost of replacing any Components, including the associated labor costs, is the responsibility of the Customer. Alternately, in the event the failure of an Engine or a Component results in Overtemping, the Customer shall immediately report the incident to JSSI. Such failure shall be deemed the cause of an Unscheduled Event and will be covered by the Program.

(k) Missing Components. The Customer shall be responsible for the costs to replace any Component missing from an Engine at the time of receipt thereof by the FAA/OEM Approved Repair Facility.

(l) Limitation of Liability. Specific Exclusions and Disclaimer of Warranty. The Customer acknowledges and agrees that, except as specifically described in Section III(q):

(i) All repair and maintenance work performed under this Contract will be performed by a FAA/OEM Approved Repair Facility and not by JSSI. The FAA/OEM Approved Repair Facility, when performing services for the Customer in accord with this Contract, shall be doing so as an independent contractor and shall in no case be considered an agent of JSSI. In no event shall JSSI be liable for services performed by repair facilities;

10/20/2003

(ii) JSSI will use its best efforts to resolve any reasonable disputes between the Customer and the FAA/OEM Approved Repair Facility but does not warrant or guarantee the work of any FAA/OEM Approved Repair Facility in any respect. All warranties, whether expressed, implied or statutory, such as warranties of merchantability or fitness for a particular purpose are hereby excluded and disclaimed; and

(iii) JSSI shall in no event be liable to the Customer for (a) any loss of revenue, loss of profits or any similar business loss arising from the failure of JSSI to perform its obligations hereunder, or (b) for consequential or incidental damages incurred by the Customer.

(m)[RESERVED]

(n) [RESERVED]

(o) Spare Engine Support.

(i) JSSI acknowledges that Customer does not maintain any spare Engines in its aircraft fleet and is relying on JSSI to provide sufficient spare Engine coverage to prevent aircraft-on-ground situations ("AOG's"). Subject to Section IV hereof, JSSI agrees that for any Scheduled Maintenance, JSSI shall arrange for the provision of a spare Engine of the same make and model as the Engine undergoing the Scheduled Maintenance, suitable for operations on the Aircraft on which the Engine is then installed (a "Spare Engine"), at the FAA/OEM Approved Repair Facility at which the removal of the Engine for such Scheduled Maintenance is to occur. Customer shall have no liability for any additional charges for such Spare Engine except the Engine Operating Hourly Usage Rate charges provided herein for the Engine undergoing the Scheduled Maintenance. Customer shall have the use of such Spare Engine until the fifth (5th) business day after Customer's Engine is returned to Customer.

(ii) In the event of Unscheduled Maintenance, subject to Section IV hereof, JSSI shall provide a Spare Engine at any facility at which an AOG is occurring. JSSI shall cause the Spare Engine to be located at such facility not later than forty-eight (48) hours after Customer notifies JSSI of the AOG, provided, however, if such AOG occurs and/or is continuing on a weekend or holiday, the Customer agrees such forty-eight (48) hour requirement shall not apply until such weekend or holiday ends, and JSSI shall make best efforts to provide the Spare Engine as quickly as practicable. The terms of the last two sentences of the preceding clause (i) shall apply.

7

10/20/2003

(iii) In the event JSSI does not provide a Spare Engine in any situation required by the terms of this Section III(o), JSSI shall pay Customer liquidated damages of Eight Hundred and No/100 Dollars ($800.00) for each day JSSI fails to provide such Spare Engine.

(p) <u>Turntime Guarantee.</u> JSSI agrees that all Scheduled Maintenance and Unscheduled Maintenance to any Engine or Component will be performed within one hundred twenty (120) days, including transportation time. In the event that JSSI fails to meet this guarantee in any case, except as otherwise provided in this subsection, JSSI shall pay to Customer liquidated damages of Eight Hundred and No/100 Dollars ($800.00) for each day in excess of one hundred twenty (120) days. Notwithstanding the foregoing, in the event that JSSI fails to meet the turntime guarantee in any case, and notifies the Customer of the reasons for such failure, which reasons shall be outside the reasonable control of JSSI, the Customer shall, on a case-by-case basis, permit JSSI to satisfy such turntime guarantee by continuing to provide a Rental Engine or Component until such time as the Scheduled Maintenance or Unscheduled Maintenance is performed, at no additional cost to the Customer. The Customer shall have the use of such Rental Engine, at no additional cost to the Customer, until the fifth (5th) business day after the Customer's Engine is returned to the Customer.

(q) <u>Warranty Coverage.</u> JSSI warrants that all services provided hereunder (whether provided by JSSI or an FAA/OEM Approved Repair Facility) shall be free from defects in material and workmanship for the period of time covered by the applicable FAA/OEM Approved Repair Facility's Warranty. In the event that a defect occurs during such period, as the Customer's sole remedy against JSSI hereunder, JSSI shall rectify such defect at its sole cost and expense including transportation. JSSI shall be solely responsible for recovering the cost of rectifying such defect from the repair facility, and Customer shall have no obligation to pursue any such warranty against the repair facility. However, if Customer wishes to pursue a warranty claim directly with a repair facility, Customer shall be entitled to do so, and in such event all available warranties shall be deemed assigned to Customer and JSSI shall assist Customer as reasonable in pursuing such claim directly against such repair facility.

(r) <u>Indemnification.</u> JSSI hereby agrees to indemnify Customer for all claims arising only out of the performance of any services provided by JSSI hereunder. This indemnification obligation does not apply to the specific exclusions and disclaimers set forth in Section III(l) hereof. JSSI shall bear the risk of loss or damage to the Engines and any Components during each period when any such Engine or Component is receiving services covered by this Contract. JSSI shall maintain (or cause the FAA/OEM Approved Repair Facilities to maintain) at no cost to Customer insurance against loss or damage to the Engines for at least fair market value of the Engines to cover the Engines while being serviced at an FAA/OEM Approved Repair Facility, naming Customer as

8

10/20/2003

loss payee. Upon request, JSSI shall furnish Customer a certificate evidencing such insurance. In addition, JSSI shall request that the FAA/OEM Approved Repair Facilities name the Customer as an additional insured on their respective policies of insurance which provide liability coverage.

(s) Transportation. For any Scheduled Maintenance or Unscheduled Maintenance requiring a shop visit, JSSI will at its sole cost and expense (except that in the case of a shop visit excluded by the terms of Section III(i) Customer shall pay the out-of-pocket freight charges incurred by JSSI) arrange for and provide (x) transportation from Customer's facility or (in the case of any Unscheduled Shop Visit) any other location at which the Engine removal occurs, to the applicable FAA/OEM Approved Repair Facility (and to any applicable subcontractors of such facility), and (y) return transportation to Customer's facility.

## IV.  RENTAL ENGINES.

As a condition to the FAA/OEM Approved Repair Facility furnishing a Rental Engine to the Customer, an Aircraft Engine Bailment Contract or Exchange Contract shall be executed between the Customer and the FAA/OEM Approved Repair Facility. Notwithstanding anything to the contrary herein, JSSI not be required to pay for a Rental Engine for more than one hundred twenty (120) consecutive days per event unless otherwise agreed by the parties in writing, and JSSI shall not pay for any Rental Engine for more than five (5) business days after completion of Engine repair and maintenance. Failure by the Customer to return a Rental Engine within five (5) business days of completion of the related Engine repair and maintenance shall subject the Customer to the repair facility's standard Rental Engine charges.

## V.  TRANSFER. TERMINATION AND CONTINUATION OF SERVICE.

(a) Transfer of Lease or Aircraft to Affiliate. An Aircraft (or Customer's interest as lessee of an Aircraft) may be transferred by Customer to an Affiliate without terminating this Contract. Thereafter, this Contract shall continue in full force and effect with respect to such Affiliate. The Customer agrees to promptly notify JSSI of any such transfer and to promptly provide any additional information or documentation reasonably requested by JSSI.

(b) Sale of Aircraft. In the event the Aircraft owner/lessor (or Customer, in the event that Customer ever becomes the owner of an Aircraft), determines to sell an Aircraft during the term of this Contract, the Customer agrees to provide prompt written notice to JSSI,, including the name and address of the Purchaser, the Aircraft and Engine operating hours and Engine cycles recorded at the time of delivery of the Aircraft to the Purchaser and any other information reasonably requested by JSSI. If the Customer is in full compliance of the terms and conditions of this Contract at the time of sale, and the Purchaser desires to

10/20/2003

maintain enrollment in the Program, JSSI and the Customer shall take all necessary steps to assign all of the Customer's rights and obligations under this Contract with respect to the particular Engine(s) sold to the Purchaser.

(c) <u>Termination or Expiration of Lease.</u> In the event that Customer's lease of an Aircraft terminates or expires during the term of this Contract, the Customer has the option of (i) assigning all of the Customer's rights and obligations under this Contract with respect to the particular Engine(s) covered by such lease to the lessor (Aircraft owner), or (ii) terminating this Contract as to such Engine(s) as of the date of expiration or termination of Customer's lease of such Aircraft. In the event of a termination of this Contract as to particular Engine(s) in accordance with Section V(c)(ii), the provisions of Section V(f)(ii) shall apply.

(d) <u>Early Termination.</u>

(i) [RESERVED]

(ii) Customer's Failure to Pay; Failure to Perform. In the event the Customer fails to pay any amounts due and owing hereunder within thirty (30) days after such amounts are due or in the event the Customer fails to perform any of its other obligations hereunder and after written notice of such failure to perform and the passage of a thirty (30) day period such failure to perform persists, JSSI shall have the right to terminate this Contract by providing written notice thereof to the Customer. All monies paid under this Contract shall then be forfeited, and JSSI and the Customer shall have no further obligations hereunder, except JSSI's obligation to return the Engine(s) and any Components to the Customer and the Customer's obligation to pay any amounts then due and owing to JSSI hereunder.

(iii) Falsification, Misrepresentation or Withholding of Data. In the event the Customer falsifies, misrepresents or withholds any data required to be maintained or submitted to JSSI or any FAA/OEM Approved Repair Facility pursuant to this Contract, JSSI may immediately terminate this Contract. In such event, all monies paid under this Contract shall be forfeited, and JSSI and the Customer shall have no further obligations hereunder, except JSSI's obligation to return the Engine(s) and any Components to the Customer and the Customer's obligation to pay any amounts then due and owing to JSSI hereunder.

(e) <u>Continuation of Service: Follow-On Contract.</u> The initial term of this Contract is sixty (60) months commencing on the date set forth in the opening paragraph hereof. At the conclusion of each sixty (60) month period, a follow-on contract will be issued to the Customer desiring such a contract similar in form and content to this Contract. At the time of issuance of such follow-on contract,

10

the Customer must be in compliance with all terms and conditions of this Contract.

(f) Addition and Deletion of Engines.

(i) This Contract shall cover the Engines described in Exhibit B, as amended from time to time. If the Customer adds Engines to its fleet that are of a make and model identified in Exhibit B, Customer shall have the option to add any or all such Engines to the coverage of this Contract, at the applicable Engine Operating Hourly Usage Rate, which shall take into account any available manufacturer's warranty coverage for such Engines. For such Engines, the Pro Rata Elimination Payment shall be determined in good faith by Customer and JSSI with respect to the existing hours and cycles on such Engines, and Exhibit B shall be amended to include the additional Engines on the Program.

(ii) In addition to the rights of the Customer set forth in Section V(b), the Customer shall have the right to remove Engines from the coverage of this Contract if such Engines are returned to their lessor, sold by Customer or suffer an event of loss. In such event all charges hereunder shall cease to accrue for such Engines on the date notified by Customer to JSSI as the date on which such Engines will cease to be covered by this Contract, the Customer shall immediately pay all amounts due and owing to JSSI through and including such date and any applicable warranty coverage set forth in Section III(q) will continue to apply to such Engines in accordance with the terms of such Section. Upon any removal of Engines as contemplated by the terms of this subsection, JSSI and the Customer shall determine (a) the product of (x) the aggregate of all amounts paid hereunder by Customer with respect to such Engines (including any Pro Rata Elimination Payment) less any allocable expenses of the Trust with respect to such Engines, including expenses for taxes, insurance and trustee fees and payment of any Management Fees, as defined in the Trust, and (y) .95; and (b) the aggregate of all amounts paid to FAA/OEM Approved Repair Facilities by JSSI with respect to such Engines. If the amount determined under clause (a) exceeds the amount determined under clause (b), JSSI shall pay such excess to Customer in cash. If the amount determined under clause (b) exceeds the amount determined under clause (a), Customer shall pay such excess to JSSI in cash.

(g) Material Default by JSSI. In the event of JSSI's (i) persistent failure to provide Spare Engines in accordance with Section III(o) hereof; (ii) persistent failure to meet the requirements of Section III(p) hereof; (iii) persistent failure to remedy defective maintenance and repair work performed by FAA/OEM Approved Repair Facilities hereunder; or (iv) filing of a petition in bankruptcy or the filing of an involuntary petition in bankruptcy against JSSI which is not

11

10/20/2003

vacated within a period of 90 days thereafter, the Customer shall have the right to terminate this Contract by providing written notice of such termination to JSSI. In such event, all charges hereunder shall cease to accrue on the date of delivery of such notice to JSSI, and JSSI shall promptly pay to the Customer in cash the excess, if any, of all charges paid hereunder by the Customer with respect to the Engines (including any Pro Rata Elimination Payment) less all amounts paid with respect to the repair and maintenance of the Engines hereunder and less any allocable expenses of the Trust, including payment of taxes, insurance, trustee fees and Management Fees, as defined in the Trust Agreement.

(h) Early Termination of Contract by Customer.    In the event the Customer desires to terminate this Contract for reasons other than those set forth in subsections f(ii) and (g) of this Section V, the Customer may do so by delivering a written notice of such termination to JSSI. In such event, all charges hereunder shall cease to accrue for the Engines on the date of delivery of such notice, and the Customer shall immediately pay all amounts due and owing to JSSI through and including such date. JSSI and the Customer shall determine (a) the aggregate of all amounts paid hereunder by Customer with respect to the Engines (including any Pro Rata Elimination Payments) less any allocable expenses of the Trust with respect to the Engines, including expenses for taxes, insurance and trustee fees and payment of any Management Fees, as defined in the Trust; and (b) the aggregate of all amounts paid to FAA/OEM Approved Repair Facilities by JSSI with respect to the Engines. If the amount determined under clause (a) exceeds the amount determined under clause (b), JSSI shall pay sixty-five percent (65%) of such expenses to Customer in cash and twenty-five percent (25%) of such expenses in the form of a credit for future Engine maintenance and repair, payable in accordance with valid invoices issued by FAA/OEM Approved Repair Facilities. If the amount determined under clause (b) exceeds the amount determined under (a), Customer shall pay such excess to JSSI in cash.

(i) Non-Defaulting Party. Notwithstanding anything to the contrary set forth herein, in the event of any termination of this Contract due to the default of either party, the non-defaulting party shall have no obligation to make any payment to the defaulting party in connection with such termination.

## VI. FEES AND OTHER CHARGES.

(a) Enrollment Fee. Upon the execution of the Contract, the Customer will pay to JSSI an Enrollment Fee as specified on the Application. No Scheduled Maintenance or Unscheduled Maintenance shall be paid for by JSSI hereunder, unless and until the Enrollment Fee has been paid by the Customer.

(b) Monthly Service Charge. Each month during the term of this Contract, the Customer shall pay a monthly service charge based upon an established

12

Engine Operating Hourly Usage Rate as set forth on the Application and the Engine Operating Time logged during the month.

Not later than ten (10) days after the end of each month, the Customer shall submit to a lockbox designated by JSSI a completed "Monthly Status/Invoice Report" form supplied by JSSI, providing accurate operational information including the Aircraft total time and cycles and Engine Operating Time and cycles for each Engine recorded during the preceding month. The Customer shall submit with the Monthly Status/Invoice Report a payment equal to the Engine Operating Time logged for each Engine during the preceding month, multiplied by the Engine Operating Hourly Usage Rate as specified in the Application, made payable to the Jet Engine Maintenance Trust. All amounts including the Pro Rata Elimination Payment shall be promptly deposited into the Trust by JSSI.

If any of Customer's monthly reports and payments for any month are not received within thirty (30) days of the end of that month, all services provided under this Contract may be suspended and a late charge (as described in subsection (e) of this Section) may be assessed.

On July 1 of each year, JSSI shall be entitled to adjust its charges to the Customer as described in this Section, establishing the new Engine Operating Hourly Usage Rate for the following twelve (12) month period. Notwithstanding the terms of the preceding sentence, no such annual adjustment of charges hereunder shall exceed three percent (3%) per annum.

(c) <u>Engine Cycles Per Hour.</u> The Engine Operating Hourly Usage Rate is calculated assuming an average of one (1) Engine Cycle per hour of Engine Operation in any twelve (12) month period. In the event the actual operation exceeds one (1) Engine Cycle per hour of Engine Operation, averaged over a twelve (12) month period, JSSI reserves the right to increase the Engine Operating Hourly Usage Rate (but not by more than three percent (3%) per annum), and such increase will be retroactive for the period during which the actual operation exceeded an average of one (1) Engine Cycle per hour.

(d) <u>Payments in U.S. Dollars.</u> All payments hereunder shall be made in U.S. Dollars, payable by cashiers or certified check, bank wire transfer or by company check.

(e) <u>Late Payments.</u> In the event the Customer fails to make any payment when due hereunder, whether relating to payment of an invoice for the Customer's Pro Rata share of repair or maintenance or relating to payment of the monthly service charge hereunder, and such payment remains unpaid for a period of at least thirty (30) days thereafter, JSSI shall have the right to assess a late charge equal to 1.5% per month of the amount of such late payment.

13

10/20/2003

(f) <u>Minimum Service Charge.</u> The Customer agrees to pay an annual minimum service charge for each of the five (5) years of this Contract, based on a fleet average of 700 hours per Engine enrolled for all Engines, as indicated in Schedule B attached hereto. Any Engines removed from the Program under Section V (f) shall no longer be counted for the calculation of such minimum service charge, and such minimum service charge shall cease to accrue upon the termination of this Contract in accordance with its terms. In the event the Customer fails to meet the minimum annual flight hour requirement the Customer will be invoiced for the shortfall annually. In calculating the above-described amounts for any Engine enrolled on the Program for a period of less than one full year, JSSI shall apply a percentage rate to the calculation to reflect that portion of such year such Engine was enrolled. Failure to meet the annual minimum fleet flight hour requirement and failure to pay the deficiency in a timely manner shall cause JSSI to suspend services to all enrolled Engines until such time as the payment is brought current according to the terms of this Contract. To the extent the Customer's failure, if any, to operate the Engines for the minimum annual flight hour requirement as described herein is directly attributed to a Fortuitous Event, JSSI shall not require the Customer to pay that portion of the deficiency so attributed. For the purpose hereof, "Fortuitous Event" shall mean an unforeseen event not caused in whole or in part by the action or inaction of the Customer.

(g) <u>Taxes.</u> All Federal, State or local taxes applicable to the sale, use, delivery or transportation of the Engine(s) or Components or to the services provided hereunder as well as all duties and import tariffs shall be paid by the Customer.

(h) <u>Collection Expenses.</u> If a judgment is rendered in favor of a party hereto in connection with a breach or threatened breach of this Contract by the other party, the prevailing party shall be entitled to recover its reasonable litigation expenses, including attorneys' fees.

(i) <u>Inspections/Liens.</u> JSSI shall permit (and shall cause the FAA/OEM Approved Repair Facilities to permit) Customer to inspect the performance of all services covered hereby. So long as the Customer makes all payments when due hereunder, JSSI shall not suffer to exist any lien on any Engine or any part thereof (including, without limitation, any mechanic's or materialman's lien).

## VII. GENERAL PROVISIONS.

(a) <u>Entire Agreement.</u> This Contract constitutes the entire agreement and understanding of the parties hereto concerning the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements between the parties. No representation, inducement, agreement,

14

10/20/2003

promise, understanding or waiver altering, modifying, taking from or adding to the terms, provisions or conditions hereof shall have any force or effect unless the same is in writing and duly executed by each of the parties hereto.

(b) Notices. Any notice, request, instruction or other communication to be given hereunder by any party hereto shall be in writing and shall be deemed to have been duly given on the date of delivery, provided delivery is actually tendered at the appropriate address, addressed to the person to receive such notice, (1) in person, (2) by courier service, or (3) three (3) days after deposit in the U.S. mails by first class certified mail, postage prepaid, return receipt requested, all addressed as set forth on the Application or such other address as either party hereto shall designate to the other in conformity with the foregoing.

(c) Confidentiality. The Customer agrees not to disclose the pricing and termination rights of this Contract to any third party without JSSI's prior written consent, except to its attorneys, accountants and auditors and as may be required by law. JSSI agrees not to use the Customer's trade names and trademarks in any advertising or promotional material without obtaining the prior written consent of the Customer.

(d) Governing Law. This Contract shall be governed by and construed in accordance with the laws of the State of Illinois.

(e) Waiver: Remedies. No delay on the part of any party in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any waiver of any right, power or privilege operate as a waiver of any other right, power or privilege, nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies that the parties otherwise may have at law, in equity or both.

(f) Beneficiaries of Contract. The rights and obligations contained in this Contract are hereby declared by the parties hereto to have been provided expressly for the exclusive benefit of such parties and shall not benefit, and do not benefit, any unrelated third parties.

(g) Force Majeure. JSSI shall not be liable in any manner for any failure or delay in the performance or fulfillment of any of its duties or obligations hereunder, directly or indirectly resulting from any cause or circumstance beyond its control, including, but not limited to, acts of God, Federal, state or local laws, or governmental regulations, orders or restrictions, war, war-like conditions, hostilities, mobilization, blockades, embargo or other transportation delay, detention, revolution, riot, looting, strike, lockout or other labor disputes, shortages of labor, inability to secure fuel, materials, supplies or power at

15

10/20/2003

reasonable prices or because of shortages thereof, epidemic, fire or flood. In the event of any such cause or circumstance, JSSI shall take all reasonable actions in order to mitigate the impact of same on the performance of this Contract.

(h) Binding Effect; Assignment. This Contract shall be binding upon and inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and assigns. Subject to Section V(a), (b) and (c), this Contract may not be assigned in full or in part by either party without the prior written consent of the other party.

(i) Severability. Whenever possible, each provision of this Contract shall be interpreted in such a manner as to be effective and valid under applicable law. However, notwithstanding anything contained in this Contract to the contrary, if any provision of this Contract shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Contract.

(j) Waiver of Jury Trial. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS CONTRACT OR ANY OTHER DOCUMENT OR INSTRUMENT DELIVERED TO THE OTHER AS OF THE DATE  HEREOF, PRIOR THERETO OR THEREAFTER, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE PARTIES HERETO. EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTY ENTERING INTO THIS CONTRACT.

(k) Forum Choice and Venue. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY AGREES THAT ANY ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS CONTRACT MAY BE LITIGATED EXCLUSIVELY IN FEDERAL OR STATE COURTS HAVING SITUS WITHIN THE UNITED STATES OF AMERICA, STATE OF ILLINOIS, COUNTY OF COOK. EACH OF THE PARTIES HEREBY IRREVOCABLY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT LOCATED WITHIN SUCH COUNTY.   EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR SUCH PARTY ENTERING INTO THIS CONTRACT.

10/20/2003

(l) <u>Headings.</u> The titles of the Sections and subsections have been inserted as a matter of convenience and reference only, and shall not control or affect the meaning, interpretation or construction of this Contract.

(m) <u>Counterparts.</u> This Contract may be executed and delivered in any number of counterparts, each of which shall be considered an original and all of which, collectively, shall constitute a single agreement.

[Signature Page Follows]

10/20/2003

IN WITNESS WHEREOF, the parties have executed this JSSI Complete Plus Engine Maintenance Program Contract as of the date first above written.

JET SUPPORT SERVICES, INC.

By: _____

Title: _____


GENERAL MOTORS CORPORATION

By: _____

Title: _EXECUTIVE DIRECTOR_
       _WORLDWIDE TRAVEL_

# CONTACTS

## JSSI CONTRACT NO.: FC-G4X-004026-0

### CUSTOMER
| | |
|---|---|
| Name: | General Motors Corporation |
| Contact: | Ken Emerick |
| Title: | Executive Director |
| Address: | Bldg. 530 E. Service Drive |
| City, State, ZIP: | Detroit, MI 48242 |
| Country: | USA |
| Telephone: | 734-942-5608 |
| Fax: | 734-942-5675 |
| E-mail: | |

### OPERATOR
| | |
|---|---|
| Name: | General Motors Corporation |
| Contact: | David Abbondanza |
| Title: | Manager Ground Operations |
| Address: | Bldg. 530 E. Service Drive |
| City, State, ZIP: | Detroit, MI 48242 |
| Country: | USA |
| Telephone: | 734-942-5670 |
| Fax: | 734-942-5675 |
| E-mail: | dave.d.abbondanza@gm.com |

### MAINTENANCE CONTACT
| | |
|---|---|
| Name: | General Motors Corporation |
| Contact: | David Abbondanza |
| Title: | Manager Ground Operations |
| Address: | Bldg. 530 E. Service Drive |
| City, State, ZIP: | Detroit, MI 48242 |
| Country: | USA |
| Telephone: | 734-942-5670 |
| Fax: | 734-942-5675 |
| E-mail: | dave.d.abbondanza@gm.com |

### ACCOUNTS PAYABLE CONTACT
| | |
|---|---|
| Name: | General Motors Corporation |
| Contact: | Cindy Falkeberg |
| Title: | Purchasing Agent |
| Address: | Bldg. 530 E. Service Drive |
| City, State, ZIP: | Detroit, MI 48242 |
| Country: | USA |
| Telephone: | 734-942-5681 |
| Fax: | 734-942-5675 |
| E-mail: | cindy.m.falkeberg@gm.com |

**REGISTERED OWNER**
Name:            General Motors Corporation
Contact:         David Abbondanza
Title:           Manager Ground Operations
Address:         Bldg. 530 E. Service Drive
City, State, ZIP:  Detroit, MI 48242
Country:         USA
Telephone:       734-942-5670
Fax:             734-942-5675
E-Mail:          dave.d.abbondanza@gm.com

**LIENHOLDER/LESSOR**
Name:            None
Contact:
Address:
City, State, ZIP
Country:
Telephone:
Fax:
E-Mail:

**AIRCRAFT INSURANCE COMPANY**
Name:                Please provide this information as soon as possible.
Contact:
Address:
City, State, ZIP
Country:
Telephone:
Fax:
E-Mail:

**BILL TO**
Name:            General Motors Corporation
Contact:         Cindy Falkeberg
Title:           Purchasing Agent
Address:         Bldg. 530 E. Service Drive
City, State, ZIP:  Detroit, MI 48242
Country:         USA
Telephone:       734-942-5681
Fax:             734-942-5675
E-mail:          cindy.m.falkeberg@gm.com

10/20/2003                          20

# EXHIBIT A

# DEFINED TERMS

The following words and phrases when used in the Contract shall have the respective meanings set forth below and shall apply to the singular and plural forms of the defined terms:

1. ABUSE means (i) any negligent operation of an Engine by the Customer or (ii) any operation of an Engine by the Customer outside the OEM's recommended operating procedures and limits or the particular model's specifications prescribed by the OEM regarding operation, maintenance or overhaul limits, and as may be further limited by the applicable airworthiness authority. Abuse specifically includes careless handling, packaging and storage, lack of sufficient protection from the elements and operations outside the maximum ratings in the flight envelope.

2. AFFILIATE means any person or entity which controls, is controlled by or is under common control with the Customer. For the purposes hereof, "control" means not less than 50% ownership.

3. AIRCRAFT means the particular aircraft described in the Application.

4. AIRCRAFT ENGINE BAILMENT CONTRACT or EXCHANGE CONTRACT means the contract that sets forth the terms and conditions under which a FAA/OEM Approved Repair Facility agrees to provide the Customer with a Rental Engine during Engine maintenance.

5. AIRWORTHINESS DIRECTIVE means a particular amendment to Federal Aviation Regulation Part 39 which sets forth essential operating limitations necessary to achieve safe operation of U.S. registered aircraft.

6. APPLICATION means Exhibit B to this Contract.

7. APPROVED REPAIR FACILITY means any heavy maintenance facility or major service center approved by the FAA/OEM to perform the type and level of services in accord with this Contract.

8. ASSEMBLY means an integrated group of Components, miscellaneous parts, or consumable items, which are directly or indirectly related to Engine sub-assemblies.

9. COMPONENT means a part, or a combination of parts, subassembly unit or Module of an Engine supplied by or through the OEM as referenced in the engine illustrated parts catalogue.

10. CONSUMABLE HARDWARE means a Component which is replaced irrespective of apparent condition during the course of removal, maintenance, repair service, overhaul or inspection.

11. CUSTOMER means the party defined as such on page 1 of this Contract.

12. ENGINE(S) means the turbine powered engine(s) identified on the Application.

13. ENGINE CYCLE means any operating sequence as defined by the Aircraft/Engine manufacturer and continuously applied.

14. ENGINE OPERATING HOURLY USAGE RATE means the rate identified as such in the Application.

15. ENGINE OPERATING TIME means the time interval between take-off and Engine shutdown as recorded in the Engine log book.

16. ENGINE OPERATION (HOURS OF) means the cumulative number of hours in operation of each Engine computed in accordance with industry standards.

17. EROSION or CORROSION means the carrying away of material by the flow of grit, chemicals or hot gases.

18. EXCLUDED EVENTS means the events defined in Section III(i) of this Contract.

19. FAA means the Federal Aviation Administration or its foreign counterparts.

20. FOREIGN OBJECT DAMAGE ("FOD") means damage to an Engine caused by foreign matter being drawn into the Engine inlet. FOD includes damage caused by objects dropped into the Engine or internal parts during maintenance.

21.  HOT GAS EROSION means the gradual wearing away of materials or protective coatings on the Components of Engines. Abnormal Hot Gas Erosion is a more rapid wearing away of the material or protective coatings which leads to an erosive attack on the parent material.

22.  INITIAL APPLICATION FEE means the fee identified as such on the Application.

23.  INSPECTION means the observation of an Engine, Module or Component or parts thereof, through disassembly, boroscope or other means approved by the FAA/OEM for the purpose of determining serviceability.

24.  JSSI means JET SUPPORT SERVICES, INC., a Delaware corporation.

25.  LIFE LIMITED COMPONENT means a Component having a specific useful life.

26.  LIGHTNING STRIKE means an occurrence in which lightning has contacted the Aircraft or caused some outside electrical charge to be introduced into the Engine(s).

27.  LINE REPLACEMENT UNIT ("LRU") means a Component supplied by or through the OEM, as referenced in the engine illustrated parts catalogue, which may normally be removed and replaced without the disassembly of any of the primary rotating Components of the Engine(s).

28.  MODULE means a major serialized portion of an Engine.

29.  ON CONDITION means  Engine/Component serviceability is determined by successful accomplishment of repetitive Inspection, checks and tests.  When the Engine/Component fails to meet the Inspection, check or test criterion, it must undergo maintenance and/or repair.  This maintenance and/or repair is considered Scheduled Maintenance.

30.  ORIGINAL EQUIPMENT MANUFACTURER ("OEM") means the original manufacturer of an Engine and/or Aircraft and is generally used to refer to the Original Equipment Manufacturer's specified parts, practices or procedures.

31.  OVERTEMPING means any operation of the Engine(s) outside the OEM's recommended operating limits for temperature.

32.  PRE-INDUCTION DIAGNOSTIC SURVEY ("PIDS") means a series of tests designed to detect any operational difficulties in the Engine(s). These tests are performed prior to the acceptance of any Engine into the Program. Each series of tests is Engine specific.

33.  PROGRAM means the engine maintenance program provided pursuant to the terms and conditions of this Contract.

34.  PRO RATA means the sharing of cost allocations between the Customer and JSSI, and, if applicable, such costs are set forth on Exhibit C, attached to the Contract.

35.  PRO RATA ELIMINATION PAYMENT means a payment for usage of the Engine(s) prior to enrollment in the Program, which eliminates the need for any further Pro Rata payments by the Customer and is set forth, if applicable, on the Application.

36.  PURCHASER means an individual or entity to whom or to which ownership of the Aircraft is transferred during the term of this Contract.

37.  RENTAL ENGINE means an Engine provided to the Customer by an FAA/OEM Approved Repair Facility under the terms of this Contract.

38.  ROUTINE INSPECTION means Inspection and serviceability checks as defined in the OEM's Engine maintenance manuals, except for daily, pre- and post- flight Inspections.

39.  SCHEDULED MAINTENANCE means the disassembly, inspection, repair, reassembly and the functional test of an Engine or Component in accordance with the requirements of the applicable maintenance, repair and overhaul manuals. Scheduled Maintenance does not include Routine Inspections and maintenance.

40.  SCHEDULED EVENT means any maintenance event which is described and scheduled by the OEM in the applicable manual.

41.   SERVICE BULLETIN is a document issued by the OEM, which specifies an optional, recommended or mandatory compliance procedure related to improving performance, maintainability and reliability, and in some cases, may be issued to correct an airworthiness deficiency.

42.   SERVICEABLE UNIT means an Engine or Component which is in a certifiable airworthy operating condition per the OEM's Engine maintenance manuals and the requirements of applicable airworthiness authorities.

43.   SHOP ENTRY means putting an Engine into an FAA/OEM-approved repair facility for service.

44.   TIME BETWEEN OVERHAUL ("TBO") means the number of hours and/or cycles for which an Engine or a Component may continue in service without being overhauled as prescribed by the OEM or applicable airworthiness authority.

45.   TRANSFER FEE means the fee identified as such on the Application.

46.   TROUBLESHOOTING means an investigative maintenance action which may result in the identification of a malfunctioning or failed Engine or Component.

47.   TRUST means the Jet Engine Maintenance Trust Agreement entered into between JSSI, as Settlor, and Wells Fargo N.A., as Trustee, originally dated July 5, 1989, and as it has been, and may be further, amended from time to time.

48.   UNSCHEDULED MAINTENANCE means unexpected repairs necessitated by malfunctions of an Engine or Component or part thereof.

49.   UNSCHEDULED EVENT means any maintenance event that is not described and scheduled by the OEM in the applicable manual.

50.   UNSERVICEABLE UNIT means an Engine that is not in operating condition within the limits specified in the OEM's Engine maintenance manuals, specifications and/or publications.

51.   UNUSUAL PURPOSES means agricultural crop dusting, exclusive aircrew training or hostile military operations, or any use of the Aircraft in such geographical or climatic environments as to expose the Engine(s) to the damaging effects of low or high grade sulfadation resulting in Abnormal Hot Gas Erosion or Corrosion.

## EXHIBIT B

## APPLICATION

### CONTRACT NO.: FC-G4X-004013-0

#### AIRCRAFT/ENGINE INFORMATION

| | | | |
|---|---|---|---|
| Aircraft Make: | Gulfstream | Aircraft Serial No.: | 4013 |
| Aircraft Model: | GIVX (G350) | | |
| Aircraft Manufacture Date: | 8/25/2005 | Registration No.: | N913GA |
| Current Aircraft Hours: | 32.0 | Current Aircraft Landings: | 23 |
| Engine Make: | RollsRoyce | Engine Model: | Tay 611-8 |

| | | | | |
|---|---|---|---|---|
| ENGINE No. 1 | Serial No.: 85029 | Hours: 32.0 | Cycles: 23 |
| ENGINE No. 2 | Serial No.: 85030 | Hours: 32.0 | Cycles: 23 |

Manufacturer's Engine Warranty Expiration
Date:          09/01/2006
Hours:        3700.00

PIDS Completion Date:          10/28/2005

This Aircraft Operated Under:          Part 135

Is the Customer tax-exempt?          NO (If yes, please attach written evidence of tax-exempt status.)

### FEE SCHEDULE
### *All fees in US Dollars*

Hourly Rate Per Engine:          $150.36*
Enrollment Fee:          $2,500.00
Subsequent Transfer Fee (Due and payable only upon the transfer of this          $2,500.00
Contract):

### MINIMUM OPERATING HOURS

Minimum Operating Hours Per Engine Per Contract Year: 500

* Custom Rate: At warranty expiration the rate will be the 1st run rate. This rate includes JSSI Plus Coverage.

## EXHIBIT C

### ENGINE PRO RATAS

Contract No: FC-G4X-0040013-0 Engine Model: Tay 611-8

#### Summary Information (Date printed: 11/17/2005)

| | Serial #: | | Original TSN: | Original CSN: | Transfer TSN: | Transfer CSN: |
|---|---|---|---|---|---|---|
| Position: 1 | 85029 | | 32.0 | 23 | 23 | |
| Position: 2 | 85030 | | 32.0 | 23 | 23 | |

Engine Serial #: 85029    Engine Model: Tay 611-8

| Part Category | Part Name | Part # | Serial # | Manufacture Limit | | | Contract | | | Client Pro Rata | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | HRS | Cycles | Mos | Hrs | Cycles | Mos | Hrs | Cycles | Mos |
| 1 | OH | JSSI0200 | 85029 | 8000 | | 240 | 32 | 23 | | 0 | | 0 |
| 1 | ML | JSSI0100 | 85029 | 4000 | | 120 | 32 | 23 | | 0 | | 0 |
| 1 | LPC DISC ASSY | JR34563A | STDK33448 | | 11600 | | 32 | 23 | | | 0 | |
| 1 | FAN BLADES | JR58319 | | | 19400 | | 32 | 23 | | | 0 | |
| 1 | 1ST IPC DISC ASSY | JR 28921 | DTDK396 | | 20000 | | 32 | 23 | | | 0 | |
| 1 | 2ND IPC DISC ASSY | JR 28922 | DTDK390 | | 20000 | | 32 | 23 | | | 0 | |
| 1 | 3RD IPC DISC ASSY | JR 29568 | JR35036 | | 15000 | | 32 | 23 | | | 0 | |
| 1 | SHAFT LPIP ASSY | JR 35036 | PAVN7684 | | 11500 | | 32 | 23 | | | 0 | |
| 1 | SHAFT HPC REAR ASSY | JR 35207A | PABX23330 | | 20000 | | 32 | 23 | | | 0 | |
| 1 | SHAFT LPC DRIVE ASSY | JR 35037 | PABX23178 | | 10600 | | 32 | 23 | | | 0 | |

10/20/2003

C – 1

| Qty | Description | | | | | | | | | 32 | 23 | | 0 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1ST HPC DISC ASSEMBLY | JR 18049 | EEBE1161 | · | 9850 | · | | 32 | 23 | | · | 0 | · |
| 1 | 2ND HPC DISC ASSEMBLY | JR 18742 | SETP14422 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 3RD HPC DISC ASSEMBLY | JR 18743 | EEBE1120 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 4TH HPC DISC ASSEMBLY | JR 18744 | EEBE1151 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 5TH HPC DISC ASSEMBLY | JR 18746 | EEBE1185 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 6TH HPC DISC ASSEMBLY | JR 18748 | EEBE1144 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 7TH HPC DISC ASSEMBLY | JR 13814 | EEBE955 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 8TH HPC DISC ASSEMBLY | JR 13815 | EEBH5331 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 9TH HPC DISC ASSEMBLY | JR 13816 | EEBH5366 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 10TH HPC DISC ASSEMBLY | JR 18750 | EEBH5320 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 11TH HPC DISC ASSEMBLY | JR 18751 | EEBH5223 | · | 20000 | · | | 32 | 23 | | · | 0 | · |
| 1 | 12TH HPC DISC ASSEMBLY | JR 18448A | EEBH5240 | · | 9350 | · | | 32 | 23 | | · | 0 | · |
| 1 | HP TURBINE SHAFT | JR 35030A | PABX23352A | · | 15000 | · | | 32 | 23 | | · | 0 | · |
| 1 | HPT DISK STG 1 | JR 57975 | SETM22637 | · | 10000 | · | | 32 | 23 | | · | 0 | · |

10/20/2003

| Qty | Description | Part No | Alt No | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | HPT DISK STG 2 | JR 57978 | EEBH5327 | | 10000 | | 32 | 23 | | | | 0 |
| 1 | SLEEVE | NPH7674 | GETM19681 | | 12850 | | 32 | 23 | | | 0 | |
| 1 | HPT 1 BLADES | JR 34911 | | 12000 | | | 32 | 23 | | 0 | | |
| 1 | HPT 2 BLADES | JR28901 | | | | | 32 | 23 | | 0 | | |
| 1 | LP TURBINE SHAFT | JR 35039 | | | 11500 | | 32 | 23 | | | 0 | |
| 1 | 1ST LPT DISC ASSEMBLY | JR 57972 | EETM6467 | | 10000 | | 32 | 23 | | | 0 | |
| 1 | 2ND LPT DISC ASSEMBLY | JR 57973 | | | 10000 | | 32 | 23 | | 0 | | |
| 1 | 3RD LPT DISC ASSEMBLY | JR 57974 | EETM6508 | | 10000 | | 32 | 23 | | 0 | | |
| 1 | OIL PRESSURE TRANSMITTER | APT12B1500 | K0057 | | | | 32 | 23 | | | | |
| 1 | OIL PRESSURE SWITCH | RD952VL0871 | | | | | 32 | 23 | | 0 | | |
| 1 | OIL PRESSURE WARNING SWITCH | 1138PG/CP/1/15 | | | | | 32 | 23 | | 0 | | |
| 1 | OIL COOLER | JR 28548A | | | | | 32 | 23 | | 0 | | |
| 1 | LP TACH GENERATOR | 3002 KGA-1-·-L | | | | | 32 | 23 | | 0 | | |
| 1 | HP TACH GENERATOR | 3002 KGA-1-·-H | | | | | 32 | 23 | | 0 | | |

10/20/2003

| Description | Part No. | Code | | | 32 | 23 | 0 | | | | Qty |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TOP TEMP CONTROL ACTUATOR | 301-RAA-2 | | | | 32 | 23 | 0 | | | | 1 |
| T26 THERMAL UNIT | 1040-1-11 | | | | 32 | 23 | 0 | | | | 1 |
| FUEL FLOW REGULATOR | CASC504 | | | | 32 | 23 | 0 | | | | 1 |
| LP SHAFT GOVERNOR | LPG500 | | | | 32 | 23 | 0 | | | | 1 |
| HP FUEL PUMP | GD502 | B080 | | | 32 | 23 | 0 | | | | 1 |
| LP FUEL PUMP | EJP101 | B4523 | | | 32 | 23 | 0 | | | | 1 |

10/20/2003

**Engine Serial #: 85030**  **Engine Model:** Tay 611-8

| Part Category | Part Name | Part # | Serial # | Manufacture Limit | | | Contract | | | Client Pro Rata | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | HRS | Cycles | Mos | Hrs | Cycles | Mos | Hrs | Cycles | Mos |
| 1 | OH | JSSI0200 | 85030 | 8000 | - | 240 | 32 | 23 | - | 0 | - | 0 |
| 1 | ML | JSSI0100 | 85030 | 4000 | - | 120 | 32 | 23 | - | 0 | - | 0 |
| 1 | LPC DISC ASSY | JR 34563A | FTTDK00768 | - | 11600 | - | 32 | 23 | - | - | - | - |
| 1 | FAN BLADES | JR 58319 | | - | 19400 | - | 32 | 23 | - | - | 0 | - |
| 1 | 1ST IPC DISC ASSY | JR 28921 | DTDK307 | - | 19400 | - | 32 | 23 | - | - | 0 | - |
| 1 | 2ND IPC DISC ASSY | JR 28922 | DTDK430 | - | 20000 | - | 32 | 23 | - | - | 0 | - |
| 1 | 3RD IPC DISC ASSY | JR 29568 | DTDK417 | - | 15000 | - | 32 | 23 | - | - | 0 | - |
| 1 | SHAFT LPIP ASSY | JR 35036 | PAVN7416 | - | 11500 | - | 32 | 23 | - | - | 0 | - |
| 1 | SHAFT HPC REAR ASSY | JR 35037 | PABX23283 | - | 20000 | - | 32 | 23 | - | - | 0 | - |
| 1 | SHAFT LPC DRIVE ASSY | JR 35037 | PABX23162 | - | 10600 | - | 32 | 23 | - | - | 0 | - |
| 1 | 1ST HPC DISC ASSEMBLY | JR 18049 | EEBE1163 | - | 20000 | - | 32 | 23 | - | - | 0 | - |

10/20/2003

| Qty | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 2ND HPC DISC ASSEMBLY | JR 18742 | SETP14417 | 20000 | 32 | 23 | 0 |
| 1 | 3RD HPC DISC ASSEMBLY | JR 18743 | EEBE1173 | 20000 | 32 | 23 | 0 |
| 1 | 4TH HPC DISC ASSEMBLY | JR 18744 | EEBE1153 | 20000 | 32 | 23 | 0 |
| 1 | 5TH HPC DISC ASSEMBLY | JR 18746 | EEBE880 | 20000 | 32 | 23 | 0 |
| 1 | 6TH HPC DISC ASSEMBLY | JR 18748 | EEBE1145 | 20000 | 32 | 23 | 0 |
| 1 | 7TH HPC DISC ASSEMBLY | JR 13814 | EEBE1069 | 20000 | 32 | 23 | 0 |
| 1 | 8TH HPC DISC ASSEMBLY | JR 13815 | EEBH5329 | 20000 | 32 | 23 | 0 |
| 1 | 9TH HPC DISC ASSEMBLY | JR 13816 | EEBH5348 | 20000 | 32 | 23 | 0 |
| 1 | 10TH HPC DISC ASSEMBLY | JR 18750 | EEBH5346 | 20000 | 32 | 23 | 0 |
| 1 | 11TH HPC DISC ASSEMBLY | JR 18751 | EEBH5295 | 20000 | 32 | 23 | 0 |
| 1 | 12TH HPC DISC ASSEMBLY | JR 18448A | EETM5322 | 9350 | 32 | 23 | 0 |
| 1 | HP TURBINE SHAFT | JR 35030A | PABX23342A | 15000 | 32 | 23 | 0 |
| 1 | HPT DISK STG 1 | JR 57975 | SETM22644 | 10000 | 32 | 23 | 0 |
| 1 | HPT DISK STG 2 | JR57978 | EEBH5442 | 12850 | 32 | 23 | 0 |
| 1 | SLEEVE | NPH7674 | GETM19698 | 12850 | | | 0 |

10/20/2003

| Qty | Item | Part No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | HPT 1 BLADES | JR 34911 | 12000 | | 32 | 23 | o | |
| 1 | HPT 2 BLADES | JR28901 | | | 32 | 23 | o | |
| 1 | LP TURBINE SHAFT | JR 35039 / PAVN7587 | | 11500 | 32 | 23 | | o |
| 1 | 1ST LPT DISC ASSEMBLY | JR 57972 / EETM6407 | | 10000 | 32 | 23 | | o |
| 1 | 2ND LPT DISC ASSEMBLY | JR 57973 / EETM6511 | | 10000 | 32 | 23 | | o |
| 1 | 3RD LPT DISC ASSEMBLY | JR 57974 / EETM6385 | | 10000 | 32 | 23 | | o |
| 1 | OIL PRESSURE TRANSMITTER | APT12B1500 / L0054 | | | 32 | 23 | o | |
| 1 | OIL PRESSURE SWITCH | RD952VL0871 | | | 32 | 23 | o | |
| 1 | OIL PRESSURE WARNING SWITCH | 1138PG/CP/1/15 | | | 32 | 23 | o | |
| 1 | OIL COOLER | JR 28548A | | | 32 | 23 | o | |
| 1 | LP TACH GENERATOR | 3002 KGA-1--L | | | 32 | 23 | o | |
| 1 | HP TACH GENERATOR | 3002 KGA-1--H | | | 32 | 23 | o | |
| 1 | TOP TEMP CONTROL ACTUATOR | 301-RAA-2 | | | 32 | 23 | o | |
| 1 | T26 THERMAL UNIT | 1040-1-11 | | | 32 | 23 | o | |

10/20/2003

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | FUEL FLOW REGULATOR | CASC504 | | | | 32 | 23 | | 0 | | | |
| 1 | LP SHAFT GOVERNOR | LPG500 | | | | 32 | 23 | | 0 | | | |
| 1 | HP FUEL PUMP | GD502 | B081 | | | 32 | 23 | | 0 | | | |
| 1 | LP FUEL PUMP | EJP101 | B4541 | | | 32 | 23 | | 0 | | | |

10/20/2003