Radha R.M. Narumanchi
657 Middletown Avenue
New Haven, Ct. 06513
Phone: (203) 562-0536

FILED
U.S. BANKRUPTCY COU...
2009 JUL -6 A 9: 08
S.D. OF N.Y.

July 4, 2009

Honorable Robert E. Gerber
United States Bankruptcy Court for the
 Southern District of New York
One Bowling Green
New York, N.Y. 10004-1408

Dear Judge Gerber:

      Re:   *In re. General Motors Corp., et al.* (The "Debtors") Chapter 11
             Case # 09-50026 (Reg)

      I am referring to the letter dated 7-2-2009 (Docketed as # 2962 that appeared on the court's GM web site this morning) written to you by Mr. Stephen Karotkin, on behalf of GM[1].

      I am afraid that the issue as to whether General Motors ("GM") and United States Treasury ("UST") had wittingly or unwittingly violated the 1995 indenture covenants by virtue of the 12-31-2008 agreement between them, and, in fact, in the light of any such violation, whether the **$27.00 billions worth of bonds** issued by GM under its 1995 indenture should have been properly **labeled as "secured"**, rather than as "**unsecured**", in the 6-1-2009 Chapter 11 filing by GM[2], is more complicated than being a simple one, as portrayed. For example, on page 30 of the loan agreement[3], Clause 4.01 also states:

> "**The Obligation of the Borrower under the Loan Documents constitute recourse Obligations of the Borrower, and therefore, their satisfaction is not limited to payments from the Facility Collateral**[4]." (Emphasis supplied).

      This provision, plus any other relevant provisions in various loan agreements/documents raise

---

[1] Your honor will please remember that I filed an adversarial complaint to protest my interest on $400,000 worth of GM bonds, which were labeled as "unsecured" in the 6-1-2009 Chapter 11 filing by GM. We paid the full value for these bonds. We are/were not speculating on the distress of GM when we made our investment, which meant to supplement our income after I retire from service.

[2] In my mind this may also raise whether any **bankruptcy documentation fraud** is involved by mislabeling (deliberately or otherwise) the claims of the bondholders under the 1995 indenture as "unsecured" **rather than as "secured"**.

[3] I do not have access to the full document other than pages 29 and 30 attached as Exhibit "A" to Mr. Karotkin's letter to you.

[4] This term "Facility Collateral" is not clear to me from the two pages (pages 29 and 30) made available by GM to you as exhibit A.

some other substantive legal questions, which could be fact intensive[5], and can not, therefore, be determined at a short notice like what happened in the hasty sale 363 motion hearings that took place on 6-30-2009[6] (i.e. without a full discovery), to wit:

a) What are/were the properties on which liens were allowed to be laid by the secured bond holders prior to 12-31-2008? What was the total book value or market value of such properties at the time the first liens were laid, and now as on 12-31-2008, how are the book values and market values[7]? If the market value of the properties (assets) on which secured bondholders held a lien as on 12-31-2008 fell below the total value of bond amount due (liability), do they have a full recourse on other properties of GM ( like facility collateral)? If so, what is the status of such claims?

b) Did GM acquire additional properties subsequent to the first lien date of the secured bond holders, but before the effective date of the 1995 indenture?

c) Did GM acquire additional properties subsequent to the effective date of the 1995 indenture document, but before 12-31-2008? What about the period 12-31-2008 and 6-1-2009?

d) As on 6-1-2009, did/do the secured bondholders have any security interest on the assets of GM in excess of the secured bond amounts due (liability), i.e. are/were they fully secured bondholders at all times? If not, how much of their bond amount due (liabilities) was not fully secured as on 12-31-2008 and again as on 6-1-2009?

e) Assuming that the secured bondholders were fully secured, as on 6-1-2009, how much of the asset value reverts to the bankrupt estate ?[8]

f) Was there any "excluded collateral" type of property included in the first set of secured property by the bondholders prior to the 1995 indenture?

I am sure that there could be other types of discovery requests, and also requests to obtain appropriate and proper documents, to scrutinize, analyze, compare, and see what kind of other legal problems are or may be involved.

I would appreciate it if you could kindly take into consideration these issues and any other issues that your honor could think of.

Thanks for your understanding.

---

[5] I do not know where (ie. in what state) this document was executed and whose substantive law is to be applied to resolve any disputes before a 363 sale could take place..

[6] **Please note that most of the bondholders under the 1995 indenture had received notices even as late as June 23, 2009.**

[7] As of 12-31-2008 or even at 6-1-2009 the value of the first set of secured bonds (i.e. the amount due on the said bonds) could have been more than the depreciated value of the assets on which the bonds were issued. Did that first set of secured bonds agreement also has a provision to require GM to cover any such deficiency like a margin call made by brokerage firms?

[8] Here, let us for a moment assume the UST has no junior lien on such assets.

Respectfully submitted.

Sincerely yours,

*[signature] 7/4/2009*

(Radha R.M. Narumanchi)

### Certification

This is to certify that a copy of the aforementioned was mailed by first class, postage paid this 4th day of July, 2009 to:

1) Weil, Gotshal & Manges LLP, Attorneys for Debtors, 767 Fifth Avenue, New York, N.Y. 10153 - Attn: Harvey R. Miller/Stephen Karotkin/Joseph H. Smolinsky;

2) Cadwalader, Wickersham & Taft LLP, Attorneys for the Purchaser, One World Financial Center, New York, N.Y. 10281 - Attn: John J. Rapisardi;

3) Kramer Levin Naftalis & Frankel LLP, Attorneys for the Creditors Committee, Attorneys for the Creditors Committee, 1177 Avenue of the Americas, New York, N.Y. 10036, Attn: Kenneth H. Eckstein;

4) Cleary Gottlieb Steen & Hamilton LLP, Attorneys for the UAW, One Liberty Plaza, New York, N.Y. 10006 - Attn: James L. Bromley;

5) Cohen, Weiss and Simon LLP, Attorneys for the UAW, 330 West 42nd Street, New York, N.Y. 10036 - Attn: Babette Ceccotti;

6) Vedder Price, P.C., Attorneys for Export Development Canada, 1633 Broadway - 47th Floor, New York, N.Y. 10019 - Attn: Michael J. Edelman/Michael L. Schein;

7) Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st floor, New York, N.Y. 10004 - Attn: Diana G. Adams;

8) U.S. Attorney's General Office, S.D.N.Y., 86 Chambers Street - Third Floor, New York, N.Y. 10007 - Attn: David S. Jones/Matthew L. Schwartz.

9) Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

*[signature] 7/4/2009*

(Radha R.M. Narumanchi)