Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
And Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
:
In re:                                                       :
:                        **Chapter 11**
:
MOTORS LIQUIDATION COMPANY, et al.,    :   **Case No. 09-50026-REG**
:
:                        **Jointly Administered**
                                Debtors.    :
:
-----------------------------------------------------------x

**SECOND SUPPLEMENTAL DECLARATION OF WILLIAM C. REPKO
IN SUPPORT OF THE
APPLICATION FOR AN ORDER PURSUANT
TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 2014(a) AUTHORIZING THE
EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C.
AS INVESTMENT BANKER AND FINANCIAL ADVISOR
FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

I, William C. Repko, make this Declaration under 28 U.S.C. § 1746 and state:

1. I am a Senior Managing Director of Evercore Group L.L.C. ("**Evercore**"), an investment banking firm that maintains offices at 55 East 52nd Street New York, NY 10055, and I make this declaration (the "**Declaration**") on behalf of Evercore. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2.     I submitted a declaration (the "**Initial Declaration**") in support of the application dated June 12, 2009 (the "**Application**") of General Motors Corporation, n/k/a Motors Liquidation Company, and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and each, a "**Debtor**"), (a) for authorization to employ and retain Evercore as investment banker and financial advisor for the Debtors *nunc pro tunc* to June 1, 2009 (the "**Petition Date**") and (b) for authorization to continue to provide investment banking and financial advisory services to the Debtors in their capacity as interested parties in the Delphi Case (as defined in the Application). The Initial Declaration was attached as Exhibit B to the Application. I also submitted a First Supplemental Declaration in support of the Application on June 24, 2009 (the "**First Supplemental Declaration**").

3.     I am submitting this Second Supplemental Declaration to provide further information requested by the United States Trustee regarding the work performed by Evercore relating to the transaction in which the Debtors sold a substantial portion of their assets to the company now known as General Motors Company (the "**Transaction**"). Capitalized terms not defined in this Second Supplemental Declaration have the meanings given to them in the Initial Declaration.

4.     The consummation of the Transaction pursuant to Section 363 of the Bankruptcy Code on July 10, 2009 was the culmination of a twelve-month, multi-faceted assignment for a core team of approximately 12 Evercore bankers, whose time was almost exclusively devoted to the Debtors over that period. That team was supported by other Evercore professionals and staff who provided substantial additional services and support to Evercore's project for the Debtors. The scope of the assignment covered the analysis and structuring of private and public market financing alternatives, the government financing process, including the

submission of the company's Viability Plans, merger advisory, extensive financial modeling support that resulted in the Debtors' adoption of significant portions of Evercore's model construct as its corporate-finance model, multiple valuation analyses, the structuring of and execution strategy for an exchange offer for unsecured bondholders, an analysis of bankruptcy alternatives, extensive work on evaluating a potential parallel Canadian bankruptcy process, sizing and structuring of the debtor-in-possession financing in these cases, *and ultimately* advisory services on the Transaction itself, including Evercore's rendering a fairness opinion to the board of directors of General Motors Corporation (on which the Court relied, in part, in approving the Transaction), providing expert testimony in writing and from the witness stand, and coordinating due diligence for the Unsecured Creditors Committee.

5.  Although the Transaction did not result directly from an extensive marketing effort or auction of the Debtors, Evercore undertook significant efforts in evaluating other potential transactions. In particular, broad and systematic efforts were undertaken by Evercore over the preceding year to identify or eliminate alternatives and to facilitate the government-sponsored purchase of the Debtors' assets. As such, understanding the scope of Evercore's assignment in the twelve-month period leading up to the Transaction is essential in assessing the reasonableness of Evercore's compensation.

6.  A few summary statistics from the comprehensive discovery and document production that Evercore was requested to perform on an expedited basis in the weeks following the Debtors' Chapter 11 filing illustrate just some of the work that Evercore undertook during its engagement:

- Evercore bankers created or reviewed over 4,000 spreadsheets, amounting to more than 1 million printed pages of data (equivalent to approximately 400 bankers' boxes).

- Evercore bankers created or reviewed over 1,700 PowerPoint presentations, amounting to more than 36,000 printed pages of data (equivalent to approximately 14 bankers' boxes).

- J. Stephen Worth, a managing director of Evercore, sent or received more than 23,500 GM-related emails, accompanied by more than 11,700 attachments, together amounting to more than 422,000 printed pages (equivalent to approximately 169 bankers' boxes).

- I sent or received more than 11,700 GM-related emails, accompanied by more than 5,800 attachments, together amounting to more than 154,000 printed pages (equivalent to approximately 62 bankers' boxes). These figures include only unique messages—i.e., they exclude messages sent or received by Mr. Worth that are totaled in the preceding bullet point.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 5, 2009.

_____
William C. Repko