Anthony L. Leffert
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO   80202
Telephone:  303-297-2600
Facsimile:  303-297-2750

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                                                    Case No. 09-50026 (REG)
                                                                              Chapter 11 (Jointly Administered)


GENERAL MOTORS CORP., *et al.,*


                                    Debtors.

-------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF VERIFIED MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

ARGUMENT..............................................................................................................................2

I.      LEGAL STANDARD ....................................................................................................2

II.     GM IS IN VIOLATION OF ENVIRONMENTAL LAWS DESIGNED TO PROTECT
PUBLIC HEALTH AND SAFETY FROM IMMINENT HARM...................................................2

   A.   ETC's Debt Arises from a Transaction with the Debtor-in-Possession ............................ 2

   B.   Compliance with Environmental Laws Directly and Substantially Benefits the Estate..... 3

      1.   Protection of Public Health and Safety from Imminent Harm ....................................... 3

      2.   Avoidance of Environmental Law Violations and Tort Liability................................. 13

III.    GM IS NEGLIGENT IN ITS IMPROPER STORAGE OF HAZARDOUS WASTE .....14

IV.     ETC IS ENTITLED TO ADMINISTRATIVE PRIORITY AS TO PROPERTY TAXES .
.................................................................................................................................15

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*College Park Holdings, LLC v. Racetrac Petroleum, Inc.,* 239 F.Supp.2d 1334 (N.D.Ga. 2002) . 9

*Commonwealth of Pennsylvania v. Conroy*, 24 F.3d 568 (3d Cir. 1994) ...................................... 6

*In re Chicago Rapid Transit Co.,* 129 F.2d 1 (7th Cir. 1942) ........................................ 7

*In re Federated Department Stores, Inc.*, 270 F.3d 994 (6th Cir. 2001) ...................................... 15

*In Re McCrory Corp.,* 188 B.R. 763, 766 (S.D.N.Y. 1995) ...................................... 4, 12

*In Re National Gypsum Co.,* 139 B.R. 397, 413 (N.D. Tex. 1992) ................................ 4

*In re National Refractories & Minerals Corp.,* 297 B.R. 614, 620 (N.D. Cal. 2003) ................ 15

*In re Pierce Coal & Construction Co.,* 65 B.R. 521 (N.D. W.Va. 1986) ...................................... 7

*In re Quanta Resources Corp.,* 739 F.2d 912 (3rd Cir. 1984) ........................................ 7

*In re Stevens*, 68 B.R. 774, 783 (D. Maine 1987) ................................................. 5, 7, 14

*In re T.P. Long Chemical, Inc.,* 45 B.R. 278, 284 (N.D. Ohio 1985) .............................. 6, 7, 8, 13

*In re The Circle K Corp.*, 137 B.R. 346, 351 (D. Ariz. 1992) ........................................... 2, 12, 14

*In re Torwico Electronics, Inc.,* 8 F.3d 146, 151 (3d Cir. 1993) .................................. 12

*In re Vermont Real Estate Investment Trust,* 25 B.R. 804, 806 (D. Vt. 1982) ............................ 13

*In re Virginia Builders, Inc.,* 153 B.R. 729, 736 (E.D. Va. 1993) ........................................... 7, 14

*In re Wall Tube & Metal Products Co.,* 831 F.2d 118, 123 (6th Cir. 1987).............. 2, 3, 4, 6, 8, 13

*In the Matter of Great Northern Forest Products, Inc.*, 135 B.R. 46, 60 (W.D. Mich. 1991) ... 2, 7

*In the Matter of Kent Holland Die Casting & Plating, Inc.*, 125 B.R. 493, 498 (W.D. Mich. 1991) ................................................................................................. 2, 7, 14

*Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 US 494, 504-05, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) ................................................................ 4

*Ottenheimer v. Whitaker,* 198 F.2d 289 (4th Cir. 1952) ........................................................... 7

*Southern Railway Co. v. Johnson Bronze Co.,* 758 F.2d 137 (3d Cir. 1985) ................................. 5

*United States v. Price,* 523 F.Supp. 1055 (D.N.J. 1981) ................................................................ 9

**Statutes**

11 U.S.C. § 105 ................................................................................................................................ 1

11 U.S.C. § 503(b) ...................................................................................................................... 1, 16

11 USC § 503(b)(1)(A) ............................................................................................................... 2, 14

28 USC § 959(b) ............................................................................................................................... 4

42 U.S.C. § 6901 .............................................................................................................................. 1

42 U.S.C. § 6902(a) .......................................................................................................................... 9

42 U.S.C. § 6903(3) .......................................................................................................................... 9

42 U.S.C. § 6924(u) .......................................................................................................................... 9

42 U.S.C. § 6991 ............................................................................................................................ 10

42 U.S.C. § 6991(6)-(8) ................................................................................................................. 10

42 U.S.C. § 9601 ......................................................................................................................... 1, 7

42 U.S.C. §§ 6991-6991i ................................................................................................................. 9

42 USC § 9607(a) ............................................................................................................................. 8

49 U.S.C. § 1802 .............................................................................................................................. 1

7 C.C.R. 1101-14 ........................................................................................................................... 11

C.R.S. § 8-20.5-201 ....................................................................................................................... 10

C.R.S. § 8-20-224 .......................................................................................................................... 11

C.R.S. § 8-20-228 ................................................................................................................... 10

C.R.S. §§ 8-20.5-203 ............................................................................................................. 10

Environmental Testing Corporation ("ETC"), by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., hereby files this Memorandum of Law in Support of its Verified Motion for Payment of Administrative Expenses pursuant to 11 U.S.C. § 503(b).

## PRELIMINARY STATEMENT

ETC seeks the payment of administrative expenses pursuant to 11 U.S.C. § 503(b) and 11 U.S.C. § 105.  ETC's claim for administrative expense arises from post-petition transactions with the Debtors' estate and the services provided by ETC have been a benefit to the bankruptcy estate and to the business of GM.  GM is obligated to pay for the post-petition remediation and restoration of real property owned by ETC on the grounds that this work has benefited the estate and relieved the estate of obligations for which GM is obligated and liable under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601, et seq.), the Hazardous Materials Transportation Act of 1980 (49 U.S.C. § 1802, et seq.), and the Resource Conservation and Recovery Act (42 U.S.C. § 6901, et seq.), and other state and local statutes, ordinances, codes, and regulations relating to environmental protection, pollution, health or safety.  Without ETC's remediation and restoration of the Property, GM's bankruptcy estate would be liable for and obligated to pay for the remediation and restoration under the above-referenced environmental statutes.

## STATEMENT OF FACTS

ETC refers the Court to, and expressly incorporates herein, the factual background set forth in ETC's Verified Motion for Payment of Administrative Expenses pursuant to 11 U.S.C. § 503(b).

1

**ARGUMENT**

**I.    LEGAL STANDARD**

Pursuant to 11 USC § 503(b)(1)(A), after notice and a hearing, there shall be allowed administrative expenses, including the actual, necessary costs and expenses of preserving the estate.   An applicant must prove by a preponderance of the evidence an entitlement to the administrative expense.  *In the Matter of Kent Holland Die Casting & Plating, Inc.*, 125 B.R. 493, 498 (W.D. Mich. 1991).  To qualify as an administrative expense, a debt must (1) arise from a transaction with the debtor-in-possession; and, (2) directly and substantially benefit the estate.  *Id.* at 502.   A claimant is entitled only to administrative priority for expenses incurred post-petition.  *In re The Circle K Corp.*, 137 B.R. 346, 351 (D. Ariz. 1992).

**II.    GM IS IN VIOLATION OF ENVIRONMENTAL LAWS DESIGNED TO PROTECT PUBLIC HEALTH AND SAFETY FROM IMMINENT HARM**

**A.    ETC's Debt Arises from a Transaction with the Debtor-in-Possession**

Courts routinely recognize administrative priority for environmental clean-up costs where the post-petition costs have been expended by an entity to remedy pre-petition environmental damage.  *In the Matter of Great Northern Forest Products, Inc.*, 135 B.R. 46, 60 (W.D. Mich. 1991); *In re Wall Tube & Metal Products Co.,* 831 F.2d 118, 123 (6th Cir. 1987).   ETC has expended substantial costs and will continue to incur substantial costs for the clean-up resulting from GM's violations of both the terms of its Lease with ETC as well as numerous state and federal environmental laws with respect to its generation, maintenance, release, or storage of hazardous materials upon the Property.   The building cannot be sold or leased in its current condition and ETC has begun remediating and restoring the Property to remove the numerous environmental contamination issues which exist on the Property as a result of GM's activities.

2

Since ETC's expenditure of funds for clean-up of GM's pollution is made post-petition, ETC's debt arises from a transaction with the Debtor-in-Possession, and ETC's claim for these expenses is entitled to administrative priority. ETC's clean-up expenses are especially entitled to administrative claim status under these circumstances because GM's environmental contamination is potentially harmful to the general public.

**B.    Compliance with Environmental Laws Directly and Substantially Benefits the Estate**

**1.    Protection of Public Health and Safety from Imminent Harm**

The hazardous material which GM has generated, released, and stored on the Property has and will continue to threaten harm to the public health and safety. Courts that accord administrative expense priority to a claim based on pre-petition action that gives rise to post-petition environmental clean-up costs consistently recognize the debtor's obligation to maintain or preserve estate property in compliance with state or federal environmental laws. *In re Wall Tube & Metal Products Co.,* 831 F.2d 118, 123 (6th Cir. 1987). These courts reason that if the relevant environmental law is one "designed to protect the public health or safety from identified hazards," the trustee may not abandon the property, but rather must keep it in the estate and, in any event, incur the clean-up costs. *Id.* Administrative priority for post-petition clean-up costs based on pre-petition environmental damage is firmly endorsed when the damage constitutes an imminent and identifiable harm to the public health or safety. *See, e.g., Wall Tube,* 831 F.2d at 123. Where public health, safety and welfare have been affected post-petition, administrative claims are warranted. *Id.* Therefore, these courts conclude, the trustee's continuing duty to comply with environmental laws and discharge any liability it may have under the environmental statue is an actual, necessary cost of preserving the estate. *Id.*

3

ETC's post-petition remediation and restoration expenses are actual and necessary both to preserve the estate in compliance with state and/or federal environmental regulations and to protect the health and safety of a potentially endangered public.  *See Id.* at 124.  GM's improper abandonment of underground storage tanks poses the threat of deadly toxins seeping into the nearby groundwater.  GM's contamination is and will continue to cause potential harm to the health and safety of the general public.  Therefore, in the context of environmental claims, the meaning of "preserving the estate" under Section 503 has been expanded to encompass protection of the environment and public health.  *In Re National Gypsum Co.,* 139 B.R. 397, 413 (N.D. Tex. 1992).  The claimant is said to be doing more than just fixing the amount of the claim, rather, the claimant is acting, during administration of the estate, to remedy the ongoing effects of a release of hazardous substances.  *In Re McCrory Corp.,* 188 B.R. 763, 766 (S.D.N.Y. 1995).[1]  GM's remediation of the Property is a direct and substantial benefit to the estate.

Under 28 USC § 959(b), a debtor, like GM, has a duty to obey all federal and state environmental regulations.  Therefore, costs of compliance are actual and necessary costs of preserving the estate under Section 503.  The United States Supreme Court has found that section 959(b) supports its conclusion that the Bankruptcy Code does not pre-empt all state laws that otherwise constrain the exercise of a trustee's power.  *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 US 494, 504-05, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986).  A trustee is not to have carte blanche to ignore non-bankruptcy law.  *Id.*  The *Midlantic* Court held that a trustee may not abandon property in contravention of a statute or regulation that is

_____

[1]The *McCrory* case is distinguishable from the case at hand since that court did not allow the landlord's administrative priority claim for pre-petition clean-up costs incurred post-petition on its rejected leases due to the fact that there was no imminent harm to public health or safety.  188 B.R. at 769.  Here, GM's generation, release, and storage of underground tanks has and will continue to threaten harm to public health and safety until remediated.

reasonably designed to protect the public health or safety from identified hazards.  *Id.*  Implicit in *Midlantic* is the recognition that in some circumstances the priorities of the bankruptcy code must give way to laws designed to protect the public health and safety.  *In re Stevens*, 68 B.R. 774, 783 (D. Maine 1987) (Claim for post-petition clean-up costs based on pre-petition environmental damage from storage of waste that constitutes an immediate and identifiable danger is entitled to administrative priority).  Congress' intention that the trustee marshal and distribute the assets of the estate must yield to the governmental interest in public health and safety.  *Id.* at 780.  Specifically, where imminent and identifiable harm is present, the priorities of the Bankruptcy Code may be subservient to the environmental laws designed to protect the public safety.  *Id.* at 774 (citing *Southern Railway Co. v. Johnson Bronze Co.,* 758 F.2d 137 (3d Cir. 1985) (It is reasonable to expect that under a given set of circumstances the necessary costs of protecting the public health or safety from imminent and identifiable harm be elevated to administrative priority).

The rationale for curbing the power of the bankruptcy court to authorize abandonment of hazardous wastes is that the public health and safety should, and do, take precedence over the longstanding, but more parochial, concerns of efficient bankruptcy administration.  *Stevens,* 68 B.R. at 781.  The inevitable legal consequence of abandonment is to work a release of the estate from the custodial and attendant regulatory responsibilities imposed by law upon the estate.  *Id.* The *Stevens* court held that the trustee was obligated to comply with the state law regulating the disposal of hazardous waste, and since the trustee did not comply with that law, the estate is liable for the costs in removing the waste.  *Id.* at 782.  In this case, GM's improper and illegal storage of gasoline and abandonment of underground tanks in violation of the environmental

laws, constitutes an imminent and identifiable danger, and the costs of protecting the public from

that danger are entitled to treatment as costs of administration. *See Commonwealth of*

*Pennsylvania v. Conroy*, 24 F.3d 568 (3d Cir. 1994) (State agency's effort to recover the funds it

expended on the clean-up was merely an effort to recover costs that the debtor could not have

avoided; thus, the court concluded that the expenses were necessary to preserve the debtor's

estate and were entitled to administrative priority.).

In *Wall Tube*, the hazardous waste presented a danger to the public's health and safety,

and the state statute being violated by the debtor was one designed to protect the public health or

safety from readily identified hazards. *Wall Tube*, 831 F.2d at 120-21. The trustee could

therefore not have abandoned the property and, if he had done so, the public would have been

faced with the same threat the *Midlantic* Court sought to avoid, i.e., a continuing, potentially

disastrous environmental health hazard with no one clearly responsible for remedial action. *Id.*

at 122. There was no distinction whether the harm was caused by the trustee in abandoning the

property or the debtor's failure to correct the violation.[2] *Id.* ("We find that difference, however,

as unpersuasive as the difference between omission and action, especially when the deleterious

effect on the public health and safety is the same."). The state expended funds to assess the

gravity of the environmental hazard, and those expenses are actual and necessary, both to

preserve the estate in required compliance with state law and to protect the health and safety of a

potentially endangered public. *Id.* at 123. The *Wall Tube* court found that the response costs

incurred by the state be deemed an administrative expense. *Id.* This same analysis was

---

[2] Likewise, in *In re T.P. Long Chemical, Inc.,* 45 B.R. 278, 284 (N.D. Ohio 1985), the court noted that if the trustee were permitted to abandon the hazardous property, the estate would remain liable for the environmental law violation and, conversely, if abandonment would somehow relieve the estate of liability, the court noted that abandonment may not be permitted.

successfully applied in favor of private entities as well.  *See In the Matter of Kent Holland Die Casting & Plating, Inc.,* 125 B.R. 493, 501 (W.D. Mich. 1991).[3]  The *T.P. Long* court likewise relied upon several cases to find that a trustee's power to abandon property is subject and subservient to laws and general equitable principles which protect some important public interest, and that this public policy exception applies under the Bankruptcy Code.  45 B.R. at 286 (*citing Ottenheimer v. Whitaker,* 198 F.2d 289 (4th Cir. 1952), *In re Chicago Rapid Transit Co.,* 129 F.2d 1 (7th Cir. 1942), and *In re Quanta Resources Corp.,* 739 F.2d 912 (3rd Cir. 1984)).  Just as compelling, in  *In re Virginia Builders, Inc.,* 153 B.R. 729, 736 (E.D. Va. 1993), the court found that:

> The bank expended funds to clean up the site which in the court's view were actual and necessary to bring the estate in compliance with state law, and to eliminate a threat to public health and safety.  Accordingly, the court must conclude the actual costs of remediation incurred by the bank are entitled to administrative expense priority.

GM has permitted the storage and release of hazardous materials on the Property and then unlawfully abandoned underground storage tanks all in violation of federal, state, or local regulations relating to environmental protection, pollution, health or safety.  GM should not be permitted to avail itself of favorable bankruptcy provisions by "walking away" from its duty to remove the harm of these environmental hazards caused by GM.

Further, the congressional policy underlying the Comprehensive Environmental Response Compensation and Liability Act of 1980 (42 U.S.C. § 9601, et seq.) ("CERCLA") is that those who generate, use or transport hazardous material should be required to pay the cost of

---

[3] Other courts have also ruled private entities may be allowed administrative priority for costs of complying with environmental clean-up statutes.  *See In the Matter of Great Northern Forest Products, Inc.,* 135 B.R. 46, 61 (W.D. Mich. 1991); *In re Stevens,* 68 B.R. 774, 783 (D. Maine 1987); *In re Pierce Coal & Construction Co.,* 65 B.R. 521 (N.D. W.Va. 1986).

damages caused by the hazardous materials. *T.P. Long,* 45 B.R. at 286. CERCLA's primary purpose is to ensure the prompt cleanup of hazardous waste sites in order to protect the public from hazardous waste damage. *Wall Tube,* 831 F.2d at 123-24. CERCLA allows an agency to recover all costs incurred by it in responding to the improper disposal of hazardous substances. 42 USC § 9607(a). The statute imposes liability on any person who, at the time of disposal of any hazardous substance, owned or operated any facility at which such hazardous substances were disposed of. *Id.* The liability imposed is strict liability, and Congress has provided that this liability cannot be transferred. *T.P. Long Chemical,* 45 B.R. at 283 and 286. ("Thus, even if an estate could otherwise escape liability by the trustee's abandonment of property, such an abandonment would not be effective under CERCLA."). In fact, even if the estate had abandoned the hazardous material before it was discovered that they posed an environmental danger, the estate would still be liable under CERCLA. *Id.* at 285. Subsequent abandonment or transfer of the hazardous materials does not transfer the estate's liability. *T.P. Long,* 45 B.R. at 285. Under CERCLA, any person may seek contribution from any other person who is liable or potentially liable under section 9607(a). Bankruptcy estates have been held subject to CERCLA. *T.P. Long Chemical,* 45 B.R. at 286. ("[T]he estate had an ownership interest in the drums of hazardous material. The drums themselves fall within CERCLA's broad definition of "facility". The estate is, therefore, liable under section 107(a) of CERCLA."). Courts have held that the liability provisions under CERCLA should be given a broad construction. *Id.*

A number of environmental statutes complement CERCLA. The Resource Conservation and Recovery Act ("RCRA") was enacted by Congress to promote the protection of health and the environment and to eliminate the last remaining loophole in environmental law, i.e., that of

unregulated land disposal of discarded materials and hazardous wastes. 42 U.S.C. § 6902(a).

The RCRA applies principally to manufacturing facilities and the on-site storage and disposal of

hazardous materials. *Id.* The RCRA was amended through the Hazardous and Solid Waste

Amendments of 1984 to regulate underground storage tanks. 42 U.S.C. §§ 6991-6991i; *See also*

*College Park Holdings, LLC v. Racetrac Petroleum, Inc.,* 239 F.Supp.2d 1334 (N.D.Ga. 2002).

The Hazardous and Solid Waste Amendments of 1984 added to the RCRA enhanced provisions

for requiring the cleanup of former hazardous waste sites. *Id.* RCRA now prohibits open

dumping, encourages recycling and treatment of hazardous wastes, establishes standards for

hazardous waste management, regulates cleanup of active facilities, restricts land disposal of

hazardous wastes, provides technical requirements for disposal facilities, controls use of

underground storage tanks, and establishes hazardous waste permit review procedures for

storage, treatment, or disposal facilities. *Id.* The RCRA regulations prescribe detailed

requirements for anyone who generates, transports, treats, stores, or disposes of hazardous

wastes. *Id.* Disposal is defined as the discharge, deposit, injection, dumping, spilling, leaking,

or placing of any solid or hazardous waste on the land or water in such a way that the waste

enters the environment. [4] 42 U.S.C. § 6903(3).

GM failed to properly care, store, maintain, treat and dispose of its underground storage

tanks containing hazardous waste, including petroleum and other toxins, and, under the above

authority, must be held accountable for its actions. The RCRA was designed, *inter alia,* to

---

[4] The RCRA hazardous waste regulations apply to both the generators of hazardous waste, and the owners and operators of facilities for the treatment, storage, or disposal of hazardous waste, and provides for corrective actions and civil and criminal penalties. 42 U.S.C. § 6924(u). Courts have imposed RCRA liability on previous landowners, for failure to store chemical wastes properly and failure to rectify a hazardous condition. *See United States v. Price,* 523 F.Supp. 1055 (D.N.J. 1981).

prevent underground storage tanks from leaking hazardous wastes and petroleum products into the surrounding environment.  42 U.S.C. § 6991.  The underground storage tank regulations deem "petroleum" as a "regulated substance" and classify a "release" as "any spilling, leaking emitting, discharging, escaping, leaching, or disposing from an underground storage tank into ground water, surface water or subsurface soils."  42 U.S.C. § 6991(6)-(8).  Groundwater contamination from leaking tanks has been a widespread concern and is addressed in the RCRA with the application of eight categories of federal standards for owners and operators of underground storage tanks.[5]  GM's failure to comply with the dictates of the RCRA, and the corresponding state statute, has caused petroleum and other hazardous wastes and deadly toxins to disseminate into the soil and the environment.

The Colorado state legislators likewise acknowledge that the leakage of regulated substances from underground storage tanks constitutes a potential threat to the waters and the environment of the State of Colorado and presents a "potential menace to the public health, safety, and welfare of the people".  C.R.S. § 8-20.5-201.  The legislative goal is to provide for the protection of the environment and of the public health and safety by preventing and mitigating the contamination of the subsurface soil, groundwater, and surface water which may result from leaking underground storage tanks.  *Id.*    The state statute similarly outlines the duties of the owner or operator of the storage tanks, including implementation of corrective actions, and provides for their liability should they fail to comply with the dictates of the statute.  C.R.S. §§ 8-20.5-203 and 209, C.R.S. § 8-20-228.

---

[5] The eight categories are (1) notification of tank existence; (2) leak detection; (3) records maintenance; (4) release reporting; (5) corrective action; (6) tank closure; (7) financial responsibility; and, (8) performance standards for new tanks.  42 U.S.C. 6991.

10

The Colorado Department of Labor and Employment, Division of Oil and Public Safety, Storage Tank Regulations were similarly promulgated to establish rules for the design, installation, registration, construction, and operation of storage tanks used to store regulated substances, including petroleum, and to describe the financial responsibility of petroleum storage tank owners and operators. 7 C.C.R. 1101-14. The main purpose of the regulations is to reduce damage to the environment, and risk to the public caused by leaking petroleum storage tanks and to mitigate such damage effectively when it occurs. *Id.* Like CERCLA and RCRA, the state regulations specify responsibilities of the owner or operator of the underground storage tanks upon both temporary or permanent closure, which consists of, *inter alia,* maintenance of corrosion protection; release detection; securing of lines, pumps, manways, and ancillary equipment; emptying, cleaning and removing all liquids and accumulated sludges; and, removal of tanks or filling tanks with an inert solid material. *Id. See also* C.R.S. § 8-20-224 (requirement for the removal of empty oil containers). GM's acts in defiance of these regulations by allowing its petroleum and other hazardous wastes generated from its underground storage tanks to seep into the ground and then failing to close and remove the tanks cannot be tolerated.

Since GM cannot escape liability under CERCLA, RCRA, Colorado state statutes, and other environmental laws by abandoning the tanks and the hazardous materials, it follows that the cost incurred in discharging this liability is an actual, necessary cost of preserving the estate entitled to administrative expense priority. The necessity of the expense cannot be questioned since the removal of the waste and the tanks is an obligation of the estate under the Lease, CERCLA, RCRA, and state law, regardless of whether the estate abandoned the property or not. Bankruptcy should not be used as a broad brush to wipe away all environmental claims. *In re*

*The Circle K Corp.*, 137 B.R. 346, 351 (D. Ariz. 1992) (Landlords successfully opposed debtor's motion for summary judgment on landlords' administrative priority claims on three rejected leases, arguing that genuine issues of material fact exist as to whether the continued existence of the underground storage tanks create a danger to public health due to actual physical conditions at the site or by virtue of state or local law.).

Notwithstanding the above authority, ETC anticipates that GM will argue that, as a bankrupt tenant presumably allowed to reject the Lease, it owes no further responsibility to the Property.  However, in *In re Torwico Electronics, Inc.,* 8 F.3d 146, 151 (3d Cir. 1993), the court held that the debtor was required to conduct an environmental clean-up even though it was no longer a tenant at the contaminated property.  The *Torwico* court found that the debtor's obligation ran with the waste (and not with the land) and, although the debtor no longer leased the property, the waste it had generated was a continuing environmental hazard and, as such, the debtor has an ongoing responsibility for the wastes it disposes.  *Id.*  The *Torwico* debtor could not avoid its responsibility to comply with environmental laws.  *Id.*  Thus, the *Torwico* court indirectly applied the *Midlantic* analysis to find that the debtor could not abandon its responsibility as to property that was no longer property of the estate.  *See McCrory*, 188 B.R. at 767.  Regardless of whether the hazard-causing debtor must face environmental clean up as an administrative priority or as ordered by the court, the debtor should not be allowed to absolve itself of responsibility for the problem it created.

Finally, the purpose of according administrative priority in this case is the fulfillment of the equitable principle of preventing unjust enrichment of GM's estate, rather than compensation to ETC for its loss.  Although the success of the creditor in pursuing its administrative claim is

achieved at the expense of the other creditors, this is a risk which all creditors must bear, since Congress has decided that administrative expenses should be paid prior to other claims against the estate, and the estate cannot avoid its legal obligations merely by invoking concern for the general creditors. *T.P. Long Chemical,* 45 B.R. at 287. There is no obvious reason why general creditors should be allowed to escape this dilemma at the risk of imposing it on others equally innocent. *Wall Tube,* 831 F.2d at 123. The protection of innocent creditors would not be furthered by a contrary holding that permits creditors to benefit from their silence while the debtor violates the law. *Id.; See also In re Vermont Real Estate Investment Trust,* 25 B.R. 804, 806 (D. Vt. 1982) (The work ordered and subsequently performed by the City was not only necessary for the preservation of the leasehold as part of the debtor's estate, but it was also a matter of necessity for the safety and welfare of the public in general; thus, City was accorded administrative priority.). GM must pay as an administrative claim the necessary costs associated with remediating and restoring the Property as a matter of necessity for the safety and welfare of the general public, and as a matter of necessity to ensure compliance with the federal and state environmental laws, even to the detriment of other equally-situated creditors.

### 2. <u>Avoidance of Environmental Law Violations and Tort Liability</u>

Additionally, ETC's post-petition clean-up costs are a necessary and obvious administrative claim in order to prevent GM's potential prosecution for post-petition environmental violations, which also benefits the estate. GM has permitted the storage and release of hazardous materials on the Property and has not removed the tanks in violation of federal, state, or local regulations relating to environmental protection, pollution, health or safety. ETC's clean-up costs confer a benefit on the debtor's estate by bringing the estate into

compliance with the clean-up mandate of state and federal law and by protecting the estate from the liability which would result in civil lawsuits. *Stevens,* 68 B.R. at 783. Therefore, ETC's post-petition remediation and restoration of the Property significantly benefits the estate and the Debtor by insulating the estate from environmental law violations or tort liability, and should therefore be accorded administrative priority.

## III.   GM IS NEGLIGENT IN ITS IMPROPER STORAGE OF HAZARDOUS WASTE

Consistent with the same equitable considerations of protection of public health and safety from imminent harm, damages caused by GM for a post-petition tort further become an administrative expense under § 503(b)(1)(A). *See In re The Circle K Corp.*, 137 B.R. 346, 351 (D. Ariz. 1992) ("If debtors were negligent in post-petition efforts to seal tanks, this may constitute an administrative claim."). In *In the Matter of Kent Holland Die Casting & Plating, Inc.*, 125 B.R. 493, 503 (W.D. Mich. 1991), the court held that the clean-up costs resulting from the negligent disposal of hazardous waste would be entitled to administrative expense priority. There, the debtor failed to remove sludge that accumulated, causing waste water to overflow and spill across a portion of the leased property and, further, left approximately 120 fifty-five gallon drums containing hazardous material on the leased property. *Id.; See also In re Virginia Builders, Inc.,* 153 B.R. 729, 736 (E.D. Va. 1993) ("[T]he debtor is liable under Virginia law to private parties for negligently or intentionally causing property damage arising from environmental contamination."). GM was negligent post-petition in its storage and use of its underground storage tanks containing hazardous materials and has failed and refused to remediate the Property. The Property cannot be sold or leased in its current condition. Accordingly, based upon GM's negligence, ETC is entitled to administrative priority for the

14

expenses necessary to clean-up GM's negligent disposal of its hazardous waste and failure to remove the tanks.

**IV.     ETC IS ENTITLED TO ADMINISTRATIVE PRIORITY AS TO PROPERTY TAXES**

GM also cannot avoid through bankruptcy the payment of property taxes it was obligated to pay during the lease term.  GM is obligated to pay for the property taxes on the Property under the subject Lease.  GM has refused to pay for the property taxes and the property taxes have been paid by ETC.  The property taxes were incurred by ETC post-petition, pre-rejection.  The payment of these property taxes is properly classified as an administrative expense in that it has benefited the Debtor's estate and the post-petition operations of GM.  *See In re Federated Department Stores, Inc.*, 270 F.3d 994 (6th Cir. 2001); *In re National Refractories & Minerals Corp.,* 297 B.R. 614, 620 (N.D. Cal. 2003).  Accordingly, ETC is entitled to administrative priority for the property tax expense.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in ETC's Verified Motion for Payment of Administrative Expenses pursuant to 11 U.S.C. § 503(b), ETC should be permitted an administrative claim as to its environmental clean-up costs and property taxes.

Dated:  August 12, 2009
Denver, Colorado                                    ROBINSON, WATERS & O'DORISIO, P.C.

/s/Anthony L. Leffert_____
Anthony L. Leffert (AL 6373)
1099 18th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 297-2600
Facsimile:  (303) 297-2750
*Attorneys for Environmental Testing Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of August, 2009, the foregoing was filed electronically and that service was accomplished electronically to all ECF registrants via the Court's CM/ECF System and delivered via Federal Express to the following:

Harvey R. Miller                            John J. Rapisardi
Stephen Karotkin                          Cadwalader Wickersham & Taft LLP
Joseph H. Smolinsky                      One World Financial Center
Weil Gotshal & Manges, LLP            New York, NY 10281
767 Fifth Avenue
New York, NY 10153

Kenneth H. Eckstein                       Diana G. Adams
Thomas M. Mayer                          Office of the U.S. Trustee
Adam C. Rogoff                            33 Whitehall Street, 21st Fl.
Kramer Levin Naftalis & Frankel, LLP   New York, NY 10004
1177 Avenue of the Americas
New York, NY 10036

/s/Elizabeth Garfield_____