Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:  (415) 543-4800
Facsimile:  (415) 972-6301
Email: kstrickland@rmkb.com
N. Kathleen Strickland, Esq. (*Pro Hac Vice Granted*)

Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:  (212) 668-5927
Facsimile:  (212) 668-5929
Email: gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

Presentment Date:
**August 25, 2009**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x
                                         :    Chapter 11
In re                                    :
                                         :    Case No. 09-50026(REG)
MOTORS LIQUIDATION COMPANY, et al.,      :
                                         :    (Jointly Administered)
      Debtors.                           :
                                         :
                                         :
---------------------------------------- x

**APPLICATION FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND DIRECTING (A) THE PRODUCTION OF DOCUMENTS AND (B) THE ORAL EXAMINATION OF INDIVIDUALS DESIGNATED BY THE DEBTORS AND BELIEVED TO HAVE <u>KNOWLEDGE OF THE RELEVANT MATTERS</u>**

TO: THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

      Remy International, Inc. ("Remy"), by their undersigned counsel, hereby move this Court for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") directing Debtors to produce documents and produce for oral examination individuals designated by the Debtors and believed to have knowledge of the matters specified in

Exhibit A to Remy's proposed order regarding this application. In support of this application ("Application"), the Remy respectfully represent as follows:

**FACTS**

1.   On June 1, 2009 (the "Petition Date"), General Motors Corporation and certain of its affiliates ("GM" or "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. That same day, the Court issued an order directing the joint administration of the Debtors' Chapter 11 cases. The Debtors' cases are consolidated for procedural purpose only.

2.   On July 13, 1994, GM entered into an Asset Purchase Agreement with Remy. Pursuant to that Agreement, among other provisions, Remy purchased certain assets of GM and GM agreed to retain certain liabilities relating to those assets.

3.   Among the "Retained Liabilities" enumerated in the Agreement, in section 5.2, is the following: (i) "any liability or obligation of GM existing as a result of any act, failure to act or other state of facts or occurrence which constitutes a breach of violation or any of GM's representations, warranties, covenants or agreements contained in this Agreement;" (ii) "any product liability claim of any nature in respect of products of the Businesses [GM] manufactured on or prior to the Closing Date;" (iii) "any liability or obligation of GM existing as a result of any act, failure to act or other state of facts or occurrence which constitutes a breach or violation of any of GM's representations, warranties, covenants or agreements contained in this Agreement;" and (iv) "any obligation or liability arising under any Contract, instrument or agreement that (a) is not transferred to Purchaser as part of the Purchased Assets."

4.   In conjunction with GM's retention of the "Retained Liabilities," in section 5.3.1(A) of the Agreement, GM agreed to indemnify and hold Remy harmless from any damages relating to the Retained Liabilities.

5.   Paragraph 5.3.1(A) of the Agreement provides: "GM shall indemnify DRI, Purchaser [Remy] . . . and hold DRI, Purchaser [Remy] . . . harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating directly to or indirectly to, arising out of or resulting from (i) any

-2-

misrepresentation or breach of any representation, warranty, covenant or agreement made by GM in this Agreement or in any statement, document or certificate furnished or required to be furnished to DRI or Purchaser pursuant hereto; . . . or (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing."

6.  Since the Agreement was executed in 1994, GM has defended, and is currently defending, Remy in lawsuits filed by persons alleging injury from products GM manufactured prior to the Closing Date of the Agreement. Since Remy has no liability for such products, GM has accepted these tenders.

7.  Remy appeared in this action on June 12, 2009.

8.  On July 16, 2009, GM informed Remy that it did not intend to continue to honor the Agreement. This information came in an email from Mr. Maynard Timm at GM to counsel for Remy stating in pertinent part that: (a) on July 10, 2009, GM emerged from Chapter 11 Bankruptcy and became "General Motors Company," a new entity; (b) as part of the bankruptcy process, General Motors Company did not assume the Agreement; (c) General Motors Company will not assume any responsibility under the Agreement for asbestos litigation; and (d) GM will shortly be communicating this information to outside counsel representing GM and Remy.

9.  Between July 17-22, 2009, in consequence of the email received from GM's Mr. Timm, Remy's counsel made several oral requests to GM's counsel for documents, relating to GM's litigation, which GM had already produced in this action in response to a request for production from counsel for Mark Buttita, a member of the official committee of unsecured creditors. GM's counsel rejected these oral requests and asked that the request be made in writing.

10. On July 22, 2009, Remy's counsel made a written request to GM's counsel for a copy of the same documents which GM had already produced to Mark Buttita and others in this bankruptcy which related to, among other categories of requests, GM's litigation. GM's counsel rejected this request without citing any authority and on the alleged ground that the documents

were produced only to those parties who objected to the Section 363 sale, and that since Remy did not file an objection to the sale, GM would not provide a copy of the documents produced to other third parties.

11. On July 31, 2009, Remy filed a Proof of Claim in this bankruptcy proceeding, along with a request for production of documents seeking the same documents which GM had already produced in this action in response to a request for production from counsel for unsecured creditor Mark Buttita. In addition to filing the request for production with the proof of claim, Remy also filed and served a copy of the request for production upon GM's counsel. To date, the documents have not been produced.

12. On August 3, 2009, Remy's counsel prepared and sent to counsel for GM a meet and confer letter, again explaining the reason for the request, the relevance of the request and Remy's willingness to sign a confidentiality order in exchange for a copy of the already produced documents.

13. On August 10, 2009, Remy's counsel followed up on the August 3, 2009 letter by placing a call to the same counsel for GM at Weil Gotschal; said counsel was "in a meeting" and Remy's counsel left a detailed voice mail requesting a copy of the produced documents. As of this writing, Remy has received neither the documents, nor a written response to it's August 3, 2009 letter nor a return phone call from left voicemail. Due to the rapid pace at which the liquidation proceedings are moving, coupled with GM's counsel's refusal to produce the requested documents, Remy is forced to make this request to this Court for a discovery order.

## **JURISDICTION**

14. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is properly before this Court under 28 U.S.C. §§ 1408 and 1409. The legal predicate for the relief sought herein is Bankruptcy Rule 2004.

**RELIEF REQUESTED**

15. By this Application, Remy requires the entry of an order directing Debtors to produce documents and produce for oral examination individuals designated by the Debtors and believed to have knowledge of the matters specified in Exhibit A to Remy's proposed order regarding this application. Remy is a party in interest in this proceeding, and wishes to investigate the financial condition and insurance coverage of Debtors, and the liabilities and potential liabilities of the Debtors and Remy itself. Thus, it is appropriate to obtain documents and testimony from the Debtors regarding these matters.

16. Bankruptcy Rule 2004 provides, in relevant part:

> (a) On motion of any party in interest, the court may order the examination of any entity.
>
> (b) The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. …
>
> (c) The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

17. The scope of an examination under Bankruptcy Rule 2004 is broad. (*See*, *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983).) Rule 2004 "permits a party invoking it to undertake a broad inquiry of the examiner, in the nature of a fishing expedition." (*In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990); *see also*, *In re Frigitemp Corp.*, 15 B.R. 263, 264 n. 3 (Bankr. S.D.N.Y. 1981) (noting that bankruptcy examinations have been compared to "fishing expeditions").

18. Bankruptcy Rule 2004(a) and (c) permit examinations concerning any matter which may relate to the property and assets of the estate, the financial condition of the debtor, and any matter which may affect the administration of a debtor's estate. (*See, In Re Ecam*, 131 B.R. 556 (Bankr. S.D.N.Y. 1991) (a Rule 2004 examination is intended "to determine whether there are grounds to bring an action to recover property of the estate.") Through this Application

Remy seeks information permitted under Rule 2004, including information regarding the Debtors' asbestos liability, insurance, and actions in which the Debtors' have agreed (and now abandoned that agreement) to indemnify Remy. This information will permit Remy to finalize its claim in this proceeding, and permit Remy to defend itself in actions regarding which the Debtors have now abandoned their responsibilities.

19.   Although the term "party in interest" is not defined, Remy clearly constitutes a party in interest entitled to conduct an examination pursuant to Rule 2004. Moreover, 11 U.S.C. § 1109 discusses that term:

> 11 U.S.C. § 1109 makes clear that any "party in interest" may appear and be heard in a chapter 11 case. Section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." The term "party in interest" is not limited by the small list of examples in Section 1109(b). (*See*, 3 Norton Bankruptcy Law and Practice Section 54.02 at part 54 (1987).

Section 1109(b) is construed broadly to permit parties affected by a bankruptcy proceeding to appear and obtain relevant information. (*In re Amatex Corp.*, 755 F.2d 1034, 1042 (3rd Cir. 1985).) Remy is clearly affected by the Debtors' bankruptcy proceeding as the Debtors owe Remy an obligation of indemnity and defense pursuant to the Agreement, which the Debtors have abandoned to Remy's detriment.

20.   Remy is also a creditor of the Debtors. The Bankruptcy Code defines a "creditor" as a person or entity that has a "claim" against the debtor. (11 U.S.C. § 101(10).) A claim is defined as the following:

> (A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) [a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to ail equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. (11 U.S.C. § 101(5).)

-6-

21. As both a party in interest in this proceeding and a creditor of Debtors, Remy seeks an examination of the Debtors regarding the financial condition and insurance coverage of Debtors, and the liabilities and potential liabilities of the Debtors and Remy itself. Such an examination is clearly permitted under Rule 2004. (*See, In re Texaco, Inc.*, 79 B.R. 551 (Bankr. S.D.N.Y. 1987) (permitting inquiry into insurance issues).)

22. Remy requests, under Rule 2004, authority to compel production of the documents identified in Exhibit A to the attached proposed order, for production to Remy within 30 days of entry of the order.

23. Remy requests, under Rule 2004(c), authority to issue subpoenas to individuals designated by the Debtors and within the control of the Debtors believed to have knowledge of the matters specified in Exhibit A to the attached proposed order. The examinations will be conducted on no less than seven (7) days' notice at a location to be determined by Remy, or upon agreement of Remy and the Debtors, that is within 100 miles of the residence of the Debtors or the person to be examined.

24. Remy requests that this Court retain jurisdiction to resolve any objections to the proposed order, to the requested examinations, and production of documents.

## NOTICE

25. Notice of this Application has been given in accordance with and pursuant to Rules 2004, 9014 and 7004 of the Federal Rules of Bankruptcy Procedure. Remy respectfully submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

26. Because this Application presents no novel issues of law and the authorities relied upon by Remy are set forth herein, Remy respectfully requests the Court waive the requirement of the filing of a separate memorandum of law in support of this Application pursuant to Local Bankruptcy Rule 9013-1(b).

## PRIOR REQUEST FOR RELIEF

WHEREFORE, Remy respectfully requests entry of an order:

(a) Granting the relief requested in the Application;

(b) Directing the Debtors to produce the documents described in the Exhibit A to the attached proposed Order;

(c) Authorizing Remy to issue subpoenas directing certain individuals of Debtors' choosing believed to have knowledge of the relevant matters to submit to oral examination, pursuant to Rule 2004(c) of the Bankruptcy Rules and Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7030, concerning the matters set forth in Exhibit A to the attached proposed Order;

(d) Granting Remy such other and further relief as the Court deems just and proper.

Dated: San Francisco, California.

August 12, 2009

Respectfully submitted,

ROPERS, MAJESKI, KOHN & BENTLEY

By:   /S/ N. Kathleen Strickland
N. KATHLEEN STRICKLAND, Esq.
Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 543-4800
Facsimile: (415) 972-6301
Email:   kstrickland@rmkb.com

GEOFFREY W. HEINEMAN, Esq.
Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone: (212) 668-5927
Facsimile: (212) 668-5929
Email:   gheineman@rmkb.com

Attorneys for Creditor
REMY INTERNATIONAL, INC.