| | |
|---|---|
| Ropers Majeski Kohn & Bentley<br>201 Spear Street, Suite 1000<br>San Francisco, CA 94105<br>Telephone:    (415) 543-4800<br>Facsimile:    (415) 972-6301<br>Email: kstrickland@rmkb.com<br>N. Kathleen Strickland, Esq. (*Pro Hac Vice Granted*) | **Presentment Date:**<br>**August 25, 2009** |

Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:    (212) 668-5927
Facsimile:    (212) 668-5929
Email: gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
                                            :       Chapter 11
In re                                       :
                                          :       Case No. 09-50026(REG)
MOTORS LIQUIDATION COMPANY, et al.,  :
                                          :       (Jointly Administered)
          Debtors.                     :
                                          :
------------------------------------- x

**ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AUTHORIZING AND DIRECTING (A) THE
PRODUCTION OF DOCUMENTS AND (B) THE ORAL EXAMINATION OF
INDIVIDUALS DESIGNATED BY THE DEBTORS AND BELIEVED TO HAVE
<u>KNOWLEDGE OF THE RELEVANT MATTERS</u>**

TO: THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

      Upon application of Remy International, Inc. ("Remy") for an order pursuant to

Rule 2004 of the Federal Rules of Bankruptcy Procedure directing Debtors to produce

documents and produce for oral examination individuals designated by the Debtors and believed

to have knowledge of the matters specified below ("Application"), and notice of the Application

having been given to all parties required to receive such notice, and no other or further notice

being required and sufficient cause appearing therefore, it is hereby ORDERED that:

1. The Application is granted;

2. Remy is hereby authorized to issue a subpoena or other process to compel the production of documents identified in Exhibit A, and Debtors are directed to comply with that subpoena by producing all non-privileged responsive documents described in Exhibit A no later than 30 days from the date this order is entered, by delivery via overnight courier to N. Kathleen Strickland and Geoffrey W. Heineman at Ropers Majeski Kohn & Bentley, 201 Spear Street, San Francisco, CA 94105;

3. Debtors are further ordered to provide a privilege log in accordance with Rule 7026 of the Federal Rules of Bankruptcy Procedure for any documents withheld from production on account of any privilege, no later than 30 days from the date this order is entered, by delivery via overnight courier to N. Kathleen Strickland and Geoffrey W. Heineman at Ropers Majeski Kohn & Bentley, 201 Spear Street, San Francisco, CA 94105

4. Remy is hereby authorized to issue subpoenas compelling oral examinations under oath of any individual designated by and/or within control of the Debtors and believed to have knowledge of the matters concerning Exhibit A;

5. Any and all subpoenas issued and served by Remy pursuant to this Order shall provide seven (7) days notice to the person or entity to be examined, and the oral examination shall be conducted within 100 miles of the residence of the Debtors' or other person to be examined, at a location to be determined by Remy, unless otherwise agreed between the Debtors and Remy;

6. This Order is without prejudice to the rights of Remy or any other party to apply for further discovery of the Debtors, or of any other person or entity; and

7. This Court shall retain jurisdiction to resolve any issues with respect to this Order, the requested examinations, and the production of documents.

Dated: New York, NY

August _____, 2009

                                                    United States Bankruptcy Judge

**EXHIBIT A**

**Definitions**

1. This request hereby incorporates by reference the standard definitions provided by Rule 7026-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York and Civil Rule 26.3 of the Local Rule of the United States Bankruptcy Court for the Southern District of New York.

2. "Asbestos Claim" means any claim or demand against GM now existing or hereafter arising, whether or not such claim, remedy, liability, or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether, or not the facts of or legal bases therefore are known or unknown, under any theory of law, equity, admiralty, or otherwise, for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the presence of or exposure to asbestos or asbestos-containing products or things that was or were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by GM, including, without limitation, (i) any claim, remedy, liability, or demand for compensatory damages (such as loss of consortium, wrongful death, medical monitoring, survivorship, proximate, consequential, general, and special damages) and punitive damages; and (ii) any claim under any settlement pertaining to an Asbestos Claim.

3. "Asbestos Claims Experience" has the same meaning in these Requests that GM used attributed to that term at page 206 of the General Motors Corp – GM Form 10-K filed on March 5, 2009, for the period ended December 31, 2008.

4. "Bondholder Representatives" means, collectively and individually, persons or entities who, on behalf of any holders of publicly-issued debt of GM, participated in discussions

or negotiations with any of the Sponsors concerning any potential private restructuring of the Debtors or any potential bankruptcy plan of reorganization for the Debtors.

5. "Contingent Matters-Litigation" has the same meaning in these Requests that GM attributed to that term at page 207 of the General Motors Corp – GM Form 10-K filed on March 5, 2009, for the period ended December 31, 2008

6. "Debtors" means Motors Liquidation Company f/k/a General Motors Corporation, Saturn LLC, Saturn Distribution Corporation, Chevrolet-Saturn of Harlem, Inc. and each of their respective subsidiaries, collectively and individually.

7. "GM" means the Debtors, collectively and individually.

8. "GM Insurance Providers" means those insurance companies from whom Debtors, collectively or individually, purchased any policy of insurance.

9. "Product Liability Claims" has the same meaning in these Requests that GM used attributed to the term "product liability claims" at pages 205-206 of the General Motors Corp – GM Form 10-K filed on March 5, 2009, for the period ended December 31, 2008.

10. "Purchaser" means Vehicle Acquisition Holdings LLC.

11. "Requestor" means Remy International, Inc., and its predecessors, parents and subsidiaries, and their predecessors and/or successors.

12. "Sponsors" means the United States Treasury, the Government of Canada and the Government of Ontario (including Export Development Canada), collectively and individually.

13. "Unions" means, collectively and individually, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and any other union representing current employees of GM or retired employees of GM.

### Document Requests

1. All databases or other data compilations concerning past, pending, or future Asbestos Claims against GM. This request seeks databases or other data compilations that accumulate or summarize, on an aggregate basis or on a claim-by claim basis, information regarding GM's Asbestos Claims Experience, and information about resolved or unresolved

Asbestos Claims that have been asserted against GM, such as the names of the claimants, their social security numbers (or the last four digits of such numbers), the filing dates for the claims, the nature and dates of the claimants' alleged exposure to asbestos, the respective jurisdictions in which the claims were filed, the nature of the asbestos-related diseases or conditions asserted, the present status of the claims, the dates of any claim resolutions, the manner in which any such resolution was achieved (e.g., by trial, settlement, or dismissal of the claim), the amount of any related judgments entered in favor of the claimant, defense costs, and the dollar amounts paid to resolve the claims. This request includes all instructions and software necessary to use electronically any database that is responsive to the request.

    2.    Any data, forecast, projection, report or analysis that GM relied on in computing its recorded liabilities for asbestos-related matters as of the date of this Request and as of December 31 in 2006, 2007, and 2008.

    3.    Any data, forecast, projection, valuation, report or analysis concerning the number or value of Asbestos Claims filed against, to be filed against, resolved, or to be resolved by GM, including pending claims and claims projected or anticipated to be asserted at any future time.

    4.    With respect to GM's engagement of Hamilton Rabinowitz & Associates Inc. or Dr. Francine Rabinowitz (collectively, "Hamilton Rabinowitz"):

    a.    Any document setting forth the terms of Hamilton Rabinowitz's engagement by or on behalf of GM;

    b.    Any forecast, projection, valuation, report or analysis made by Hamilton Rabinowitz with respect to the past, present, or future liability of GM for Asbestos Claims; and

    c.    All data, assumptions, or other information provided to Hamilton Rabinowitz for use or reference in its GM engagement.

    5.    With respect to GM's engagement of any expert other than Hamilton Rabinowitz for the forecasting, projection, valuation, or analysis of Asbestos Claims or GM's aggregated liability for Asbestos Claims:

    a. Any document setting forth the terms of the expert's engagement by or on behalf of GM;

    b. Any forecast, projection, valuation, report or analysis made by expert with respect to the past, present, or future liability of GM for Asbestos Claims; and

    c. All data, assumptions, or other information provided to the expert for use or reference in its GM engagement.

  6. All databases or other data compilations concerning Product Liability Claims that have been asserted, or are anticipated to be asserted, Debtors. This request seeks information about resolved or unresolved product liability claims that have been asserted against GM, such as the names of the claimants, their social security numbers (or the last four digits of such numbers), the filing dates for the claims, the nature of the product defects asserted, the respective jurisdictions in which the claims were filed, the nature and extent of the injuries sustained, the present status of the claims, the dates of any claim resolutions, the manner in which any such resolution was achieved (e.g., by trial, settlement, or dismissal of the claim), the amount of any related judgments entered in favor of the claimant, defense costs, and the dollar amounts paid to resolve the claims. This request includes all instructions and software necessary to use electronically any database that is responsive to the request.

  7. Any data, forecast, projection, report or analysis that GM relied on in computing its recorded liabilities for Product Liability Claims as of the date of this Request and as of December 31 in 2006, 2007, and 2008.

  8. Any data, forecast, projection, valuation, report or analysis concerning the number or value of Product Liability Claims filed against, to be filed against, resolved, or to be resolved by GM, including pending claims and claims projected or anticipated to be asserted at any future time.

  9. All databases or other data compilations concerning Contingent Matters Litigation involving claims that have been asserted, or are anticipated to be asserted, against GM. This request seeks information about resolved or unresolved claims that have been asserted against

GM, such as the names of the claimants, their social security numbers (or the last four digits of such numbers), the filing dates for the claims, the nature of the tort, statutory violation, or other wrong asserted, the respective jurisdictions in which the claims were filed, the nature and extent of the injuries sustained, the present status of the claims, the dates of any claim resolutions, the manner in which any such resolution was achieved (e.g., by trial, settlement, or dismissal of the claim), the amount of any related judgments entered in favor of the claimant, defense costs, and the dollar amounts paid to resolve the claims. This request includes all instructions and software necessary to use electronically any database that is responsive to the request.

10. Any data, forecast, projection, report or analysis that GM relied on in computing its recorded liabilities for Contingent Matters-Litigation as of the date of this request and as of December 31 in 2006, 2007, and 2008.

11. Any data, forecast, projection, valuation, report or analysis concerning the number or value of Contingent Matters-Litigation filed against, to be filed against, resolved, or to be resolved by GM, including pending claims and claims projected or anticipated to be asserted at any future time.

12. All documents relating to any and all lawsuits in which Requestor has been named as a party, and in which Debtors have accepted Requestor's tender of defense.

13. All documents setting forth the aggregate amount of the Debtors' insurance applicable to Asbestos Claims, the limits of any such insurance coverage (on a per-claim basis and an aggregated basis), any exclusions applicable thereto, any retentions or self-insured amounts applicable to such coverage, and the available amounts remaining under the Debtors' insurance coverage.

14. All documents setting forth the aggregate amount of the Debtors' insurance applicable to Product Liability Claims, the limits of any such insurance coverage (on a per-claim basis and an aggregated basis), any exclusions applicable thereto, any retentions or self-insured amounts applicable to such coverage, and the available amounts remaining under the Debtors' insurance coverage.

15. All documents setting forth the aggregate amount of the Debtors' insurance applicable to Contingent Matters-Litigation, the limits of any such insurance coverage (on a per-claim basis and an aggregated basis), any exclusions applicable thereto, any retentions or self-insured amounts applicable to such coverage, and the available amounts remaining under the Debtors' insurance coverage.

16. All documents discussing or setting forth estimates, forecasts, or projections with respect to the value of (a) "Excluded Assets" (as defined in section 2.2(b) of the Master Sale and Purchase Agreement), (b) the Retained Liabilities" (as defined in section 2.3(b) of the Master Sale and Purchase Agreement), and (c) insurance available for the "Retained Liabilities."

17. All documents discussing or setting forth communications between or among the Debtors, the Sponsors, the Purchaser, the Unions, or the Bondholder Representatives from October 1, 2008, to present with respect to the treatment of Asbestos Claims, Product Liability Claims, or Contingent Matters-Litigation under any private restructuring of the Debtors, under any bankruptcy plan of reorganization for the Debtors, under any 363 sale or plan for liquidation.

18. All documents constituting policies of insurance Debtors purchased from or were provided by GM Insurance Providers, including all self-insured, private and umbrella policies, which were issued to cover Product Liability Claims, and for each policy state the policy number, dates of coverage, and the company issuing the policy. Provide a complete copy of the declarations and policy of each.

19. All documents constituting policies of insurance Debtors purchased from or was provided by GM Insurance Providers, including all self-insured, private and umbrella policies, which were issued to cover Asbestos Claims, and for each policy state the policy number, dates of coverage, and the company issuing the policy. Provide a complete copy of the declarations and policy of each.

20. All documents constituting policies of insurance Debtors purchased from or was provided by GM Insurance Providers, including all self-insured, private and umbrella policies, which were issued to cover Contingent Liability Claims, and for each policy state the policy

number, dates of coverage, and the company issuing the policy. Provide a complete copy of the declarations and policy of each.

21. For any self-insured program relevant to the product liability claims, including asbestos claims and contingent liability claims, identify the State(s) and/or Insurance Commission under which self-insured status was obtained, provide documentation establishing the amount of self-insurance coverage, and provide the dates of self-insured status. Provide all documentation establishing the Debtors' compliance with the terms of the self-insured program. Identify the financial institution, with applicable account numbers, that maintained the Debtors' funds for the self-insured program(s); and provide a balance statement for those accounts from 1995 through the present.

22. All documents related to the insurance policies and the rights of the proceeds thereof, as indicated in Section 2.2(a)(xvii) of Article II, entitled "Purchased and Excluded Assets," of the Amended and Restated Master Sale and Purchase Agreement by and among General Motors Corporation, Saturn, LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc. as Purchaser.

23. All documents related to the insurance policies and the rights of the proceeds thereof as indicated in Section 2.2(b)(xiii) of Article II, entitled "Purchased and Excluded Assets," of the Amended and Restated Master Sale and Purchase Agreement by and among General Motors Corporation, Saturn, LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc. as Purchaser, including but not limited to the Seller's Disclosure Schedule, collectively the "Excluded Insurance Policies."

24. All documents and things constituting or concerning communications, or meetings, to or from, or by and between, Debtors and any GM Insurance Provider related to the Amended and Restated Master Sale and Purchase Agreement by and among General Motors Corporation, Saturn, LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc. as Purchaser.

25. All documents and things constituting or concerning communications, or meetings, to or from, or by and between Debtors and any GM Insurance Provider related to Section 2.2 (a)(xvii) of Article II, entitled "Purchased and Excluded Assets," of the Amended and Restated Master Sale and Purchase Agreement by and among General Motors Corporation, Saturn, LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc. as Purchaser.

26. All documents and things constituting or concerning communications, or meetings, to or from, or by and between Debtors and any GM Insurance Provider related to Section 2.2 (b)(xiii) of Article II, entitled "Purchased and Excluded Assets," of the Amended and Restated Master Sale and Purchase Agreement by and among General Motors Corporation, Saturn, LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc. as Purchaser.

27. All documents constituting policies of insurance Debtors purchased from or were provided by GM Insurance Providers relating to any and all premises leased and/or subleased by Debtors to Requestor, including but not limited to Plants 3, 16 and 17.