Appendix 1

Debtors' Ex. 6 in Evidence

Loan and Security Agreement by and between
Borrower and U.S. Dept. of Treasury as Lender,
dated as of December 31, 2008 (Execution Version),
and all Appendices, Schedules and Exhibits Thereto

Pursuant to the provisions of Local Bankruptcy Rule 8007-1(b),
because of its unusual bulk, only the relevant portions of Debtors' Ex. 6
are included in Appendix 1.   If requested by the Court or by any party,
other relevant portions of the document (or if needed, the entire document)
will be made available.

EX-10.1 2 k47265exv10w1.htm EX-10.1

**Exhibit 10.1**
**EXECUTION VERSION**

---

## LOAN AND SECURITY AGREEMENT

### By and Between

### The Borrower Listed on Appendix A

### as Borrower

### and

### THE UNITED STATES DEPARTMENT OF THE TREASURY

### as Lender

### Dated as of December 31, 2008

---

\*\*\* Portions of this exhibit have been omitted under a request for confidential treatment pursuant to Rule 24b-2 of the Securities and Exchange Act of 1934 and filed separately with the United States Securities and Exchange Commission.

GM EX 6

**GMPR-HD 3228**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| **SECTION 1. DEFINITIONS AND ACCOUNTING MATTERS** | 1 |
| 1.01 Certain Defined Terms | 1 |
| 1.02 Interpretation | 21 |
| 1.03 Accounting Terms and Determinations | 22 |
| **SECTION 2. ADVANCES, NOTE AND PAYMENTS** | 22 |
| 2.01 Advances | 22 |
| 2.02 The Note | 22 |
| 2.03 Procedure for Borrowing | 22 |
| 2.04 Limitation on Types of Advances; Illegality | 23 |
| 2.05 Repayment of the Advances; Interest | 23 |
| 2.06 Optional Prepayments | 24 |
| 2.07 Mandatory Prepayments | 24 |
| 2.08 Requirements of Law | 25 |
| 2.09 Use of Proceeds | 25 |
| **SECTION 3. PAYMENTS; COMPUTATIONS; TAXES** | 26 |
| 3.01 Payments | 26 |
| 3.02 Computations | 26 |
| 3.03 US Taxes | 26 |
| **SECTION 4. COLLATERAL SECURITY** | 29 |
| 4.01 Collateral; Security Interest | 29 |
| 4.02 UCC Matters; Further Assurances | 30 |
| 4.03 Changes in Locations, Name, etc | 30 |
| 4.04 Lender's Appointment as Attorney-in-Fact | 31 |
| 4.05 Performance by the Lender of the Borrower's Obligations | 32 |
| 4.06 Proceeds | 32 |
| 4.07 Remedies | 32 |
| 4.08 Continuing Liability of the Borrower | 33 |
| 4.09 Limitation on Duties Regarding Preservation of Facility Collateral | 33 |
| 4.10 Powers Coupled with an Interest | 34 |
| 4.11 Release of Security Interest Upon Satisfaction of all Obligations | 34 |
| 4.12 Partial Release of Facility Collateral | 34 |
| **SECTION 5. CONDITIONS PRECEDENT** | 35 |
| 5.01 Initial Advance | 35 |
| 5.02 Initial and Subsequent Advances | 38 |
| **SECTION 6. REPRESENTATIONS AND WARRANTIES** | 39 |
| 6.01 Existence | 39 |
| 6.02 Financial Condition | 39 |
| 6.03 Litigation | 40 |
| 6.04 No Breach | 40 |
| 6.05 Action, Binding Obligations | 40 |
| 6.06 Approvals | 40 |
| 6.07 Taxes | 40 |

- i -

**GMPR-HD 3229**

|                                                                 | Page |
|-----------------------------------------------------------------|------|
| 6.08 Investment Company Act                                     | 41   |
| 6.09 No Default                                                 | 41   |
| 6.10 Chief Executive Office; Chief Operating Office            | 41   |
| 6.11 Location of Books and Records                             | 41   |
| 6.12 True and Complete Disclosure                             | 41   |
| 6.13 Material Agreements                                       | 41   |
| 6.14 ERISA                                                     | 41   |
| 6.15 Expense Policy                                            | 41   |
| 6.16 Subsidiaries                                             | 41   |
| 6.17 Capitalization                                           | 42   |
| 6.18 Fraudulent Conveyance                                    | 42   |
| 6.19 USA PATRIOT Act                                          | 42   |
| 6.20 Embargoed Person                                        | 42   |
| 6.21 Borrowing for Own Benefit                               | 43   |
| 6.22 Indebtedness                                           | 43   |
| 6.23 Labor Matters                                          | 43   |
| 6.24 Survival of Representations and Warranties             | 43   |
| 6.25 Representations Concerning the Facility Collateral     | 44   |
| 6.26 Intellectual Property                                  | 44   |
| 6.27 JV Agreements                                          | 45   |
| 6.28 Senior Lien Assets                                     | 45   |
| 6.29 Excluded Collateral                                    | 45   |
| 6.30 Mortgaged Real Property                                | 45   |
| 6.31 Additional Representations and Warranties              | 46   |
| SECTION 7. AFFIRMATIVE AND FINANCIAL COVENANTS OF THE LOAN PARTIES | 46 |
| 7.01 Financial Statements                                   | 46   |
| 7.02 Reporting Requirements                                 | 48   |
| 7.03 Financial Covenants                                    | 49   |
| 7.04 Existence, Etc                                         | 49   |
| 7.05 Use of Proceeds                                        | 50   |
| 7.06 Maintenance of Property; Insurance                     | 50   |
| 7.07 Further Identification of Facility Collateral          | 50   |
| 7.08 Defense of Title                                       | 51   |
| 7.09 Preservation of Facility Collateral                    | 51   |
| 7.10 Maintenance of Papers, Records and Files               | 51   |
| 7.11 Maintenance of Licenses                                | 51   |
| 7.12 Payment of Obligations                                 | 51   |
| 7.13 OFAC                                                   | 52   |
| 7.14 Investment Company                                     | 52   |
| 7.15 Due Diligence                                          | 52   |
| 7.16 Further Assurances                                     | 52   |
| 7.17 Executive Privileges and Compensation                  | 53   |
| 7.18 Asset Divestiture                                      | 54   |
| 7.19 Restrictions on Expenses                               | 54   |
| 7.20 Restructuring Plan; Restructuring Targets              | 54   |
| 7.21 Term Sheet Requirements                                | 55   |
| 7.22 Restructuring Plan Report                              | 55   |
| 7.23 President's Designee Review/Certification              | 55   |
| 7.24 Required Distributions                                 | 56   |
| 7.25 Provide Additional Information                         | 56   |

- ii -

**GMPR-HD 3230**

|  | Page |
|---|---|
| 7.26 Material Transaction | 56 |
| | |
| **SECTION 8. NEGATIVE COVENANTS OF THE LOAN PARTIES** | 56 |
| 8.01 Prohibition of Fundamental Changes | 56 |
| 8.02 Lines of Business | 56 |
| 8.03 Transactions with Affiliates | 56 |
| 8.04 Limitation on Liens | 57 |
| 8.05 Limitation on Distributions | 57 |
| 8.06 No Amendment or Waiver | 57 |
| 8.07 Prohibition of Certain Prepayments | 57 |
| 8.08 Change of Fiscal Year | 57 |
| 8.09 Limitation on Negative Pledge Clauses | 57 |
| 8.10 Limitations on Indebtedness | 57 |
| 8.11 Limitations on Investments | 58 |
| 8.12 ERISA | 58 |
| 8.13 Action Adverse to the Facility Collateral | 58 |
| 8.14 Limitation on Sale of Assets | 58 |
| 8.15 Restrictions on Pension Plans | 58 |
| 8.16 JV Agreements | 59 |
| | |
| **SECTION 9. EVENTS OF DEFAULT; TERMINATION EVENTS** | 59 |
| 9.01 Events of Default | 59 |
| | |
| **SECTION 10. REMEDIES** | 61 |
| | |
| **SECTION 11. MISCELLANEOUS** | 63 |
| 11.01 Waiver | 63 |
| 11.02 Notices | 63 |
| 11.03 Indemnification and Expenses | 63 |
| 11.04 Amendments | 64 |
| 11.05 Successors and Assigns | 64 |
| 11.06 Survival | 64 |
| 11.07 Captions | 65 |
| 11.08 Counterparts and Facsimile | 65 |
| 11.09 Loan Agreement Constitutes Security Agreement | 65 |
| 11.10 Governing Law | 65 |
| 11.11 SUBMISSION TO JURISDICTION; WAIVERS | 65 |
| 11.12 WAIVER OF JURY TRIAL | 66 |
| 11.13 Acknowledgments | 66 |
| 11.14 Hypothecation or Pledge of Facility Collateral | 66 |
| 11.15 Assignments; Participations | 66 |
| 11.16 Periodic Due Diligence Review | 67 |
| 11.17 Set-Off | 68 |
| 11.18 Reliance | 68 |
| 11.19 Reimbursement | 68 |
| 11.20 Waiver Of Redemption And Deficiency Rights | 69 |
| 11.21 Single Agreement | 69 |
| 11.22 Severability | 69 |
| 11.23 Entire Agreement | 69 |
| 11.24 Appendix A | 69 |

- iii -

GMPR-HD 3231

SCHEDULES

SCHEDULE 1.1    List of Pledgors

SCHEDULE 1.2    List of Guarantors

SCHEDULE 6.03   Litigation

SCHEDULE 6.10   Chief Executive Office, Chief Operating Office

SCHEDULE 6.13   Existing Agreements

SCHEDULE 6.16   Subsidiaries

SCHEDULE 6.17   Ownership of Loan Parties

SCHEDULE 6.22   Existing Indebtedness

SCHEDULE 6.25   Filing Jurisdictions and Offices

SCHEDULE 6.26   Intellectual Property

SCHEDULE 6.27   JV Agreements

SCHEDULE 6.28   Facility Collateral Subject to a Senior Lien

SCHEDULE 6.29   Excluded Collateral

SCHEDULE 6.30   Excluded Real Property

EXHIBITS

EXHIBIT A    Form of Note

EXHIBIT B    Acknowledgment and Consent

EXHIBIT C    Form of Notice of Borrowing

EXHIBIT D    Form of Confidentiality Agreement

EXHIBIT E    Form of Compliance Certificate

EXHIBIT F    Form of Exemption Certificate

EXHIBIT G-1  Form of Waiver for the Loan Parties

EXHIBIT G-2  Form of Waiver from SEOs to Lender

EXHIBIT G-3  Form of Consent and Waiver of SEOs to Loan Parties

EXHIBIT G-4  Form of Waiver of Senior Employees to Lender

EXHIBIT G-5  Form of Consent and Waiver of Senior Employees to Loan Parties

APPENDICES

APPENDIX A   Supplement to Loan and Security Agreement

GMPR-HD 3232

- iv -

GMPR-HD 3233

## LOAN AND SECURITY AGREEMENT

LOAN AND SECURITY AGREEMENT, dated as of December 31, 2008, between the Borrower set forth on Appendix A (the "Borrower") and THE UNITED STATES DEPARTMENT OF THE TREASURY (the "Lender").

## RECITALS

The Borrower wishes to obtain financing from time to time to restore liquidity to its business, and to restore stability to the domestic automobile industry in the United States, and the Lender has agreed, subject to the terms and conditions of this Loan Agreement, to provide such financing to the Borrower.

The financing provided hereunder will be used in a manner that (A) enables the Borrower and its Subsidiaries to develop a viable and competitive business that minimizes adverse effects on the environment; (B) enhances the ability and the capacity of the Borrower and its Subsidiaries to pursue the timely and aggressive production of energy-efficient advanced technology vehicles; (C) preserves and promotes the jobs of American workers employed directly by the Borrower and its Subsidiaries and in related industries; (D) safeguards the ability of the Borrower and its Subsidiaries to provide retirement and health care benefits for their retirees and their dependents; and (E) stimulates manufacturing and sales of automobiles produced by the Borrower and its Subsidiaries.

Accordingly, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## SECTION 1. DEFINITIONS AND ACCOUNTING MATTERS.

1.01 Certain Defined Terms. Subject to the amendments, restatements, supplements or other modifications in Section 1.01 of Appendix A, as used herein, the following terms shall have the following meanings (all terms defined in this Section 1.01 or in other provisions of this Loan Agreement in the singular to have the same meanings when used in the plural and vice versa):

"Account Control Agreement" shall mean one or more account control agreements among the Lender, the applicable Loan Parties and each bank party thereto, in form and substance acceptable to the Lender, to be entered into with respect to each Facility Account, as amended, restated, supplemented or otherwise modified from time to time.

"Acknowledgement and Consent" shall have the meaning specified in Section 5.01(r) hereof.

"Advance" shall have the meaning specified in Section 2.01(a).

"Affiliate" shall mean, with respect to any Person, any other Person which, directly or indirectly, controls, is controlled by, or is under common control with, such Person. For purposes of this Loan Agreement, "control" (together with the correlative meanings of "controlled by" and "under common control with") means possession, directly or indirectly, to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by contract, or otherwise.

"After Acquired Real Property" shall have the meaning set forth in Section 7.16(b) hereof.

GMPR-HD 3234

• • • • • • • • •

the benefit of Lender, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"Equity Interests" shall mean any and all equity interests, including any shares of stock, membership or partnership interests, participations or other equivalents whether certificated or uncertificated (however designated) of a corporation, limited liability company, partnership or any other entity, and any and all similar ownership interests in a Person and any and all warrants or options to purchase any of the foregoing.

"Equity Pledge Agreement" shall mean that certain pledge agreement, dated as of the date hereof, by each Pledgor in favor of the Lender.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

"ERISA Affiliate" shall mean any corporation or trade or business or other entity, whether or not incorporated, that is a member of any group of organizations (i) described in Section 414(b), (c), (m) or (o) of the Code of which any Loan Party is a member or (ii) which is under common control with any Loan Party within the meaning of section 4001 of ERISA.

"ERISA Event" shall mean (i) any Reportable Event or a determination that a Plan is "at risk" (within the meaning of Section 302 of ERISA); (ii) the incurrence by the Borrower or any ERISA Affiliates of any liability under Title IV of ERISA with respect to the termination of any Plan or the withdrawal or partial withdrawal of the Borrower or any of its respective ERISA Affiliates from any Plan or Multiemployer Plan; (iii) the receipt by the Borrower or any ERISA Affiliates from the PBGC or a plan administrator of any notice relating to the intention to terminate any Plan or Plans or to appoint a trustee to administer any Plan; (iv) the receipt by the Borrower or any ERISA Affiliates of any notice, or the receipt by any Multiemployer Plan from the Borrower or any ERISA Affiliates of any notice, concerning the imposition of Withdrawal Liability or a determination that a Multiemployer Plan is, or is expected to be, insolvent or in reorganization, within the meaning of Title IV of ERISA; or (v) the occurrence of a nonexempt "prohibited transaction" with respect to which the Borrower, the other Loan Parties or their ERISA Affiliates is a "disqualified person" (within the meaning of Section 4975 of the Code) or with respect to which the Borrower or any ERISA Affiliate could otherwise be liable.

"Event of Default" shall have the meaning provided in Section 9.01.

"Excluded Collateral" shall mean any Property to the extent that a grant of a security interest therein (a) is prohibited by any Applicable Law, or requires a consent pursuant to Applicable Law that has not been obtained from any Governmental Authority, or (b) is contractually prohibited, or constitutes a breach or default under or results in the termination of any contract (except to the extent that such contract or the related prohibitive provisions therein are ineffective under the New York Uniform Commercial Code or other Applicable Law) or requires a consent from any other Person (other than the Borrower or any of its Affiliates) that has not been obtained, (c) in the case of any investment property (as such term is defined in the Uniform Commercial Code), is prohibited under any applicable organizational, constitutive, shareholder or similar agreement (except to the extent that such agreement or the related prohibitive provisions therein are ineffective under the Uniform Commercial Code or other Applicable Law), or (d) is Property of any of the following types:

(i) motor vehicles situated in a jurisdiction in which the perfection of a security interest is excluded from the Uniform Commercial Code;

- 5 -

GMPR-HD 3238

(ii) voting Equity Interests in any Controlled Foreign Subsidiary, to the extent (but only to the extent) required to prevent the Collateral from including more than 65% of all voting Equity Interests in such Controlled Foreign Subsidiary;

(iii) any Equity Interests owned by the Borrower or other Loan Party in any Excluded Subsidiary;

(iv) assets that give rise to tax-exempt interest income within the meaning of Section 265(a)(2) of the Internal Revenue Code of 1986, as amended from time to time;

(v) any Property, including any debt or Equity Interest and any manufacturing plant or facility which is located within the continental United States, to the extent that the grant of a security interest therein to secure the Obligations will result in a lien, or an obligation to grant a lien, in such Property to secure any other obligation;

(vi) any "intent to use" United States trademark application for which a statement of use has not been filed;

(vii) any Property that is subject to a purchase option granted to any dealer of the Borrower's or any Loan Parties' products with respect to the related dealership Properties;

(viii) any Property (including any tangible embodiments of Intellectual Property that may be affixed to or embodied in any Property), including any Equity Interest, to the extent that the Borrower or any other Loan Party has assigned, pledged, or otherwise granted a security interest in or with respect to such Property to secure any indebtedness or any other obligations, including any Senior Lien Loan, prior to the Effective Date, to the extent that a grant of a security interest therein is contractually prohibited, or constitutes a breach or default under or results in the termination of any contract, or requires a consent from any other Person (other than the Borrower or any of its Affiliates) that has not been obtained;

(ix) any Property of the Borrower or any Loan Party acquired with (a) funds obtained from the Government of the United States, including proceeds of any loan obtained under Section 136 of the EISA or (b) under any other government programs or using other government funds, including proceeds of government loans, contracts, grants, cooperative agreements, or Cooperative Research and Development Agreements, to the extent that a grant of a security interest therein is contractually prohibited, or constitutes a breach or default under or results in the termination of any contract or precludes eligibility for funding described in clauses (a) or (b) above or requires a consent from any other Person (other than the Borrower or any of its Affiliates) that has not been obtained;

(x) any Property, including cash and cash equivalents, (x) pledged or deposited in connection with insurance, including worker's compensation, unemployment insurance or other types of social security or pension benefits, (y) pledged or deposited to secure the performance of bids, tenders, statutory obligations, and surety, appeal, customs or performance bonds and similar obligations, or (z) pledged or deposited to secure reimbursement obligations in respect of letters of credit issued to support any obligations or liabilities described in clauses (x) or (y) above; and

(xi) to the extent not otherwise included, all proceeds, including cash proceeds (as each such term is defined in the Uniform Commercial Code), and products of Excluded Collateral, in whatever form, including cash or cash equivalents.

- 6 -

GMPR-HD 3239

"Excluded Subsidiary" shall have the meaning set forth in Appendix A.

"Excluded Taxes" shall have the meaning provided in Section 3.03(a).

"Executive Order" shall have the meaning provided in Section 6.20.

"Existing Agreements" shall mean the agreements of the Loan Parties and their Subsidiaries in effect on the Effective Date and any extensions, renewals and replacements thereof so long as any such extension, renewal and replacement could not reasonably be expected to have a material adverse effect on the rights and remedies of the Lender under any of the Loan Documents.

"Expense Policy" shall mean the Borrower's comprehensive written policy on corporate expenses maintained and implemented in accordance with Section 7.19.

"Expiration Date" shall have the meaning set forth in Appendix A.

"Facility Account" shall have the meaning set forth in Appendix A.

"Facility Collateral" shall mean collectively, (i) the Collateral pledged hereunder, (ii) the Collateral (as defined in the Equity Pledge Agreement) pledged to the Lender under the Equity Pledge Agreement, (iii) the Collateral (as defined in the Intellectual Property Pledge Agreement), pledged to the Lender under the Intellectual Property Agreement, (iv) the Guaranty Collateral (as defined in the Guaranty), pledged to the Lender under the Guaranty, and (v) any other collateral security pledged to Lender under any other Loan Document, including without limitation each Mortgage; provided that Facility Collateral shall exclude any Property constituting Excluded Collateral.

"Foreign Subsidiary" shall mean any Subsidiary that is not a Domestic Subsidiary.

"Funding Date" shall have the meaning set forth in Appendix A.

"GAAP" shall mean generally accepted accounting principles as in effect from time to time in the United States.

"Governmental Authority" shall mean, with respect to any Person, any nation or government, any state or other political subdivision, agency or instrumentality thereof, any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government and any court or arbitrator having jurisdiction over such Person, any of its Subsidiaries or any of its properties.

"Guarantee" shall mean, as to any Person, any obligation of such Person directly or indirectly guaranteeing any Indebtedness of any other Person or in any manner providing for the payment of any Indebtedness of any other Person or otherwise protecting the holder of such Indebtedness against loss (whether by virtue of partnership arrangements, by agreement to keep-well, to purchase assets, goods, securities or services, or to take-or-pay or otherwise), provided that the term "Guarantee" shall not include (i) endorsements for collection or deposit in the ordinary course of business, or (ii) obligations to make servicing advances for delinquent taxes and insurance, or other obligations in respect of a mortgaged property, to the extent required by the Lender. The amount of any Guarantee of a Person shall be deemed to be an amount equal to the stated or determinable amount of the primary obligation in respect of which such Guarantee is made or, if not stated or determinable, the maximum reasonably anticipated liability in respect thereof as determined by such Person in good faith. The terms "Guarantee" and "Guaranteed" used as verbs shall have correlative meanings.

- 7 -

http://www.sec.gov/Archives/edgar/data/40730/000095015209000103/k47265exv10w1.htm                        6/27/2009

GMPR-HD 3240

"Guarantors" shall mean those Persons listed on **Schedule 1.2.**

"Guaranty" shall mean that certain Guaranty and Security Agreement, dated as of the date hereof, by each Guarantor in favor of the Lender guarantying the Obligations of the Borrower.

"Hedging Agreement" means any (i) interest rate swap agreement, interest rate cap agreement or other agreement designed to protect against fluctuations in interest rates or (ii) foreign exchange forward contract, currency swap agreement or other agreement designed to protect against fluctuations in foreign exchange rates or (iii) commodity or raw material futures contract or other agreement designed to protect against fluctuations in raw material prices.

"Indebtedness" shall mean, for any Person: (a) obligations created, issued or incurred by such Person for borrowed money (whether by loan, the issuance and sale of debt securities or the sale of Property to another Person subject to an understanding or agreement, contingent or otherwise, to repurchase such Property from such Person); (b) obligations of such Person to pay the deferred purchase or acquisition price of Property or services; (c) indebtedness of others of the type referred to in clauses (a), (b), (d), (e), (f) and (g) of this definition secured by a Lien on the Property of such Person, whether or not the respective indebtedness so secured has been assumed by such Person; (d) obligations (contingent or otherwise) of such Person in respect of letters of credit or similar instruments issued or accepted by banks and other financial institutions for the account of such Person; (e) Capital Lease Obligations of such Person; (f) obligations of such Person under repurchase agreements or like arrangements; (g) indebtedness of others of the type referred to in clauses (a), (b), (d), (e), (f) and (g) of this definition Guaranteed by such Person; (h) all obligations of such Person incurred in connection with the acquisition or carrying of fixed assets by such Person; (i) indebtedness of general partnerships of which such Person is a general partner unless the terms of such indebtedness expressly provide that such Person is not liable therefor; and (j) any other indebtedness of such Person evidenced by a note, bond, debenture or similar instrument.

"Individual Property" shall mean each parcel of real property, the improvements thereon and all personal property owned by the applicable Loan Party and encumbered by a Mortgage, together with all rights pertaining to such real property, improvements and personal property, as more particularly described in Article 1 of each Mortgage and referred to therein as the "Property".

"Intellectual Property" shall mean all Patents, Trademarks and Copyrights owned by any Loan Party, and all rights under any Licenses to which a Loan Party is a party.

"Intellectual Property Pledge Agreement" shall mean that certain Intellectual Property Pledge Agreement, dated as of the date hereof, by and among each Loan Party and the Lender.

"Interest Payment Date" shall have the meaning set forth in Appendix A.

"Interest Period" shall mean, with respect to any Advance, (i) initially, the period commencing on the Funding Date with respect to such Advance and ending on the calendar day prior to the next succeeding Interest Payment Date, and (ii) thereafter, each period commencing on an Interest Payment Date and ending on the calendar day prior to the next succeeding Interest Payment Date. Notwithstanding the foregoing, no Interest Period may end after the Maturity Date.

"Investment" shall mean any advance, loan, extension of credit (by way of guaranty or otherwise) or capital contribution to, or purchase of any Equity Interests, bonds, notes, debentures or other debt securities of, or any assets constituting a business unit of, or any other similar investment in, any Person.

- 8 -

**GMPR-HD 3241**

"Investment Company Act" shall mean the Investment Company Act of 1940, as amended from time to time, including all rules and regulations promulgated thereunder.

"Joint Venture" shall mean any joint venture, partnership or similar arrangement between any Loan Party or one of its Subsidiaries and independent third parties which are not Subsidiaries of a Loan Party.

"JV Agreement" shall mean each partnership or limited liability company agreement (or similar agreement) between a Loan Party or one of its Subsidiaries and the relevant JV Partner as the same may be amended, restated, supplemented or otherwise modified from time to time, in accordance with the terms hereof.

"JV Partner" shall mean each Person party to a JV Agreement that is not a Loan Party or one of its Subsidiaries.

"Labor Modifications" shall mean, collectively, the Compensation Reductions, the Severance Rationalization and the Work Rule Modifications.

"Lender" shall have the meaning assigned thereto in the preamble hereof.

"LIBOR" shall mean with respect to each Advance, the greater of (a) the LIBOR Floor and (b) the rate (adjusted for statutory reserve requirements for eurocurrency liabilities) for eurodollar deposits for a period equal to three months appearing on Reuters Screen LIBOR01 Page or if such rate ceases to appear on Reuters Screen LIBOR01 Page, on any other service providing comparable rate quotations at approximately 11:00 a.m., London time. LIBOR shall be determined on the Effective Date and reset on each Interest Payment Date.

"LIBOR Floor" shall have the meaning set forth in Appendix A.

"Licenses" shall mean the Copyright Licenses, the Trademark Licenses and the Patent Licenses.

"Lien" shall mean any mortgage, pledge, security interest, lien or other charge or encumbrance (in the nature of a security interest and other than licenses of Intellectual Property), including the lien or retained security title of a conditional vendor, upon or with respect to any property or assets.

"Loan Agreement" shall mean this Loan and Security Agreement, as may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms hereof.

"Loan Documents" shall mean the documents set forth on Appendix A, together with all other such documentation entered into in connection with the transactions contemplated under such documents and to fully evidence and secure the Borrower's Obligations hereunder.

"Loan Parties" shall mean the Borrower, the Guarantors, and the Pledgors, and "Loan Party" shall mean each of them.

"Mandatory Prepayment" shall have the meaning ascribed thereto in Section 2.07.

"Material Adverse Effect" shall mean a material adverse effect on (a) the business, operations, property, condition (financial or otherwise) or prospects of the Loan Parties and their

- 9 -

GMPR-HD 3242

Subsidiaries (taken as a whole), (b) the ability of the Loan Parties (taken as a whole) to perform any of their obligations under any of the Loan Documents to which they are a party, (c) the validity or enforceability in any material respect of any of the Loan Documents to which they are a party, (d) the rights and remedies of the Lender under any of the Loan Documents, or (e) the Facility Collateral (taken as a whole).

"Maturity Date" shall mean the earlier of (i) the Expiration Date, (ii) the date specified in Section 2.05(a)(ii), or (iii) the occurrence of an Event of Default, at the option of the Lender.

"Maximum Loan Amount" shall have the meaning set forth in Appendix A.

"Moody's" shall mean Moody's Investors Service, Inc.

"Mortgage" shall mean, with respect to each Individual Property, that certain Mortgage (or Deed of Trust or Deed to Secure Debt, as applicable), Assignment of Leases and Rents, and Security Agreement or similar agreement, executed and delivered by a Loan Party as security for the Advances and encumbering such Individual Property, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"Multiemployer Plan" shall mean a multiemployer plan defined as such in Section 3(37) of ERISA to which contributions are required to be made by any Loan Party or any ERISA Affiliate or to which any Loan Party or any ERISA Affiliate may have any direct or indirect liability or obligation contingent or otherwise.

"Net Proceeds" shall mean, with respect to any event, (a) the cash proceeds received in respect of such event including (i) any cash received in respect of any non-cash proceeds (including any cash payments received by way of deferred payment of principal pursuant to a note or installment receivable or purchase price adjustment receivable or otherwise, but excluding any interest payments), but only as and when received, (ii) in the case of a casualty, insurance proceeds and (iii) in the case of a condemnation or similar event, condemnation awards and similar payments, net of (b) the sum of (i) all reasonable fees and out-of-pocket expenses paid to third parties (other than Affiliates) in connection with such event, (ii) in the case of a Disposition of an asset (including pursuant to a sale and leaseback transaction or a casualty or a condemnation or similar proceeding), the amount of all payments required to be made as a result of such event to repay Indebtedness (other than the Advances) secured by such asset or otherwise subject to mandatory prepayment as a result of such event and (iii) the amount of all taxes paid (or reasonably estimated to be payable, including under any tax sharing arrangements) and the amount of any reserves established to fund contingent liabilities reasonably estimated to be payable, in each case that are directly attributable to such event (as determined reasonably and in good faith by a Responsible Person).

"Non-Excluded Taxes" shall have the meaning provided in Section 3.03(a).

"Note" shall mean the promissory note provided for by Section 2.02(a) for the Advances and any promissory note delivered in substitution or exchange therefor, in each case as the same shall be modified and supplemented and in effect from time to time.

"Obligations" shall mean (a) all of the Borrower's obligations to repay the Advances on the Maturity Date, to pay interest on an Interest Payment Date and all other obligations and liabilities of the Borrower to the Lender, or any other Person arising under, or in connection with, the Loan Documents, whether now existing or hereafter arising; (b) any and all sums paid by the Lender pursuant to the Loan Documents in order to preserve any Facility Collateral or the interest of the Lender therein;

- 10 -

GMPR-HD 3243

• • • • • • • • •

(xiv) purchase money security interests in real property, improvements thereto or equipment hereafter acquired (or, in the case of improvements, constructed) by a Loan Party, including pursuant to Capital Lease Obligations; provided that (w) such security interests secure Indebtedness permitted by Section 8.10, (x) such security interests are incurred, and the Indebtedness secured thereby is created, within 90 days after such acquisition (or construction), (y) the Indebtedness secured thereby does not exceed the lesser of the cost or the fair market value of such real property, improvements or equipment at the time of such acquisition (or construction) and (z) such security interests do not apply to any other property or assets of the Borrower or any Subsidiary;

(xv) judgment Liens securing judgments not constituting an Event of Default under Section 9.01(g);

(xvi) any Lien consisting of rights reserved to or vested in any Governmental Authority by statutory provision;

(xvii) Liens securing Indebtedness described in clause (vi) or clause (vii) of the definition of Permitted Indebtedness;

(xviii) pledges or deposits made to secure reimbursement obligations in respect of letters of credit issued to support any obligations or liabilities described in clauses (xi) or (xii) of this definition;

(xix) other Liens created or assumed in the ordinary course of business of a Loan Party; provided that the obligations secured by all such Liens shall not exceed the principal amount of $50,000,000 in the aggregate at any one time outstanding; and

(xx) any other Permitted Lien set forth on Appendix A.

"Person" shall mean any individual, corporation, company, voluntary association, partnership, joint venture, limited liability company, trust, unincorporated association or government (or any agency, instrumentality or political subdivision thereof).

"Plan" shall mean an employee benefit or other plan covered by Title IV of ERISA, other than a Multiemployer Plan which is sponsored, established, contributed to or maintained by any Loan Party or any ERISA Affiliate, or for which any of the Loan Parties or any of their respective ERISA Affiliates could have any liability, whether actual or contingent (whether pursuant to section 4069 of ERISA or otherwise) or to which any of the Loan Parties or any of their respective ERISA Affiliates previously maintained or contributed to during the six years prior to the Effective Date.

"Plan Completion Certification" shall mean the certification of the President's Designee delivered in accordance with Section 7.23.

"Pledged Entity" shall mean a Subsidiary of a Loan Party whose Equity Interests are Pledged Equity pursuant to the Equity Pledge Agreement.

"Pledged Equity" shall mean all of the Equity Interests of a Pledged Entity (or such lesser amount as may be required pursuant to the Pledge Limitation (as defined in the Equity Pledge Agreement)), together with all ownership certificates, options or rights of any nature whatsoever which may be issued, granted or pledged by the owners of such interests to the Lender while this Loan Agreement is in effect.

- 16 -

GMPR-HD 3249

"Pledgors" shall mean the Persons set forth on **Schedule 1.1** hereof.

"Post-Closing Letter Agreement" shall mean that certain Post-Closing Letter Agreement, dated as of the date hereof, by and between the Borrower and the Lender.

"Post-Default Rate" shall mean, in respect of any principal of any Advance or any other amount under this Loan Agreement, the Note or any other Loan Document that is not paid when due to the Lender (whether at stated maturity, by acceleration or mandatory prepayment or otherwise), a rate per annum during the period from and including the due date to but excluding the date on which such amount is paid in full equal to 5.00% per annum, plus (x) the interest rate otherwise applicable to such Advance or other amount, or (y) if no interest rate is otherwise applicable, the sum of (i) LIBOR plus (ii) the Spread Amount.

"Prepayment Event" shall mean the occurrence of any of the following events:

(i) the Disposition of any Facility Collateral to any Person other than to any Loan Party or Pledged Entity;

(ii) the incurrence by any Loan Party of any Indebtedness (other than the incurrence of Indebtedness that constitutes Permitted Indebtedness) or any equity or other capital raises (other than (x) contributions of indemnity payments received by the Borrower and required to be applied to satisfy (or reimburse a payment made in respect of) obligations and liabilities of the Borrower or any of its Subsidiaries or (y) the proceeds of the Advances), either public or private, whether in connection with a primary securities offering, a business combination of any kind, or otherwise; or

(iii) the Disposition of unencumbered assets of the Borrower other than in the ordinary course of business (including aircraft divestments).

"President's Designee" shall mean (i) one or more officers from the Executive Branch appointed by the President to monitor and oversee the restructuring of the U.S. domestic automobile industry and (ii) if no such officer has been appointed, the Secretary of the Treasury.

"proceeds" shall have the meaning assigned to such term under the Uniform Commercial Code.

"Prohibited Jurisdiction" shall mean, any country or jurisdiction, from time to time, that is the subject of a prohibition order (or any similar order or directive), sanctions or restrictions promulgated or administered by any Governmental Authority of the United States.

"Prohibited Person" shall mean any Person:

(i) listed in the Annex to (the "Annex"), or otherwise subject to the provisions of the Executive Order;

(ii) that is owned or controlled by, or acting for or on behalf of, any person or entity that is listed to the Annex to, or is otherwise subject to the provisions of, the Executive Order;

- 17 -

GMPR-HD 3250

• • • • • • • • •

## SECTION 4. COLLATERAL SECURITY.

### 4.01 Collateral; Security Interest.

(a) Subject to any amendments, restatements, supplements or other modifications in Section 4.01 of Appendix A, as security for the prompt and complete payment when due of the Obligations and the performance by the Borrower of all the covenants and obligations to be performed by it pursuant to this Loan Agreement and the other Loan Documents, the Borrower hereby mortgages, pledges and grants to the Lender a Lien on and security interest in all of its rights, title and interest in and to all personal property and real property wherever located and whether now or hereafter existing and whether now owned or hereafter acquired, of every kind and description, tangible or intangible, including without limitation, the following, whether now or hereafter existing and wherever located:

(i) all Intellectual Property as well as royalties therefrom;

(ii) each Individual Property;

(iii) all cash and Cash Equivalents, and all other property from time to time deposited in any account or deposit account and the monies and property in the possession or under the control of Lender or any affiliate, representative, agent or correspondent of Lender related to the foregoing;

(iv) all other tangible and intangible personal property of the Borrower (whether or not subject to the Uniform Commercial Code), including, without limitation, all bank and other accounts and all cash and all investments therein, all rights to receive cash and investments, including without limitation, state, Federal or local tax refunds, intercompany debt, all proceeds, products, offspring, accessions, rents, profits, income, benefits, substitutions and replacements of and to any of the property of the Borrower described in the preceding clauses of this Section 4.01(a) (including, without limitation, any proceeds of insurance thereon and all causes of action, claims and warranties now or hereafter held by the Borrower in respect of any of the items listed above), and all books, correspondence, files and other Records in the possession or under the control of the Borrower or any other Person from time to time acting for the Borrower that at any time evidence or contain information relating to any of the property described in the preceding clauses of this Section 4.01(a) or are otherwise necessary or helpful in the collection or realization thereof;

(v) all rights, title and interest of the Borrower (but not any of the obligations, liabilities or indemnifications of the Borrower) in, to and under the Loan Documents;

(vi) all "accounts," "chattel paper," "commercial tort claims," "deposit accounts," "documents," "equipment," "general intangibles" (including without limitation, uncertificated Equity Interests), "goods," "instruments," "inventory," "investment property," "letter of credit rights," and "securities' accounts," as each of those terms is defined in the Uniform Commercial Code;

(vii) and all products and proceeds relating to or constituting any or all of the foregoing (clauses (i) through (vii) collectively, the "Collateral");

- 29 -

GMPR-HD 3262

in each case howsoever the Borrower's interest therein may arise or appear (whether by ownership, security interest, claim or otherwise), provided that, notwithstanding anything to the contrary contained herein or in any other Loan Document, the term "Collateral" and each other term used in the definition thereof shall not include, and the Borrower is not pledging or granting a security interest in, any Property to the extent that such Property constitutes Excluded Collateral; provided further that if and when, and to the extent that, any Property ceases to be Excluded Collateral, the Borrower hereby grants to the Lender, and at all times from and after such date, the Lender shall have, a first priority or junior priority, as applicable, Lien in and on such Property (subject to Permitted Liens) and the Borrower shall cooperate in all respects to ensure the prompt perfection of the Lender's security interest therein.

The Liens granted to Lender hereinabove shall be first priority Liens on all of the Collateral (subject to Permitted Liens and to the extent legally and contractually permissible); provided that, with respect to the Collateral which is subject to a Senior Lien, as set forth on **Schedule 6.28**, the Lien shall be of junior priority (subject to Permitted Liens and to the extent legally and contractually permissible).

The Obligations of the Borrower under the Loan Documents constitute recourse obligations of the Borrower, and therefore, their satisfaction is not limited to payments from the Facility Collateral.

(b) With respect to each right to payment or performance included in the Collateral from time to time, the Lien granted therein includes a continuing security interest in (i) any supporting obligation that supports such payment or performance and (ii) any Lien that (A) secures any such right to payment or performance or (B) secures any such supporting obligation.

4.02 **UCC Matters; Further Assurances**. The Borrower, shall, at all times on and after the date hereof, and at its expense, cause Uniform Commercial Code financing statements and continuation statements to be filed in all applicable jurisdictions as required to continue the perfection of the security interests created by this Loan Agreement. The Borrower shall, from time to time, at its expense and in such manner and form as the Lender may reasonably require, execute, deliver, file and record any other statement, continuation statement, specific assignment or other instrument or document and take any other action that may be necessary, or that the Lender, may reasonably request, to create, evidence, preserve, perfect or validate the security interests created hereunder or to enable the Lender to exercise and enforce its rights hereunder with respect to any of the Facility Collateral. To the extent contemplated in the Post-Closing Letter Agreement, the Borrower agrees that, if the grant of a security interest in any Property to Lender requires a consent to such grant from any other Person (other than the Borrower or any of its Affiliates), the Borrower shall use its best efforts to procure such consent. Further, the Borrower agrees that if any Excluded Collateral should, at any time following the Effective Date, become Collateral on which the Lender is permitted to take a Lien, the Borrower shall so notify the Lender and cooperate with and shall take all steps as may be reasonably required by the Lender to enable and continue the perfection of the Lender's security interests therein and shall comply with the provisions of Section 7.16 hereof in connection therewith, to the extent applicable. Without limiting the generality of the foregoing, the Borrower shall: upon the request of the Lender, execute and file such Uniform Commercial Code financing or continuation statements, or amendments thereto or assignments thereof, Mortgages, and such other instruments or notices, as may be necessary or appropriate or as the Lender may request. The Borrower hereby authorizes the Lender to file one or more Uniform Commercial Code financing or continuation statements, and amendments relative to all or any of the Collateral now existing or hereafter arising without the signature of the Borrower where permitted by law. A carbon, photographic or other reproduction of this Loan Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement.

4.03 **Changes in Locations, Name, etc.** If the Borrower shall (i) change the location of its chief executive office/chief place of business from that specified in Section 6.10 hereof, (ii) change

- 30 -

GMPR-HD 3263

• • • • • • • • •

(g) the Borrower shall have paid to the Lender all fees and expenses owed to the Lender, including without limitation, reasonable attorney's fees, in accordance with this Loan Agreement and any other Loan Document;

(h) the Lender or its designee shall have received any other documents reasonably requested by the Lender and the Borrower shall have provided such documents within a reasonable period of time after such request; and

(i) each Loan Party shall have performed (to the satisfaction of the Lender) all other conditions to the making of an Advance requested by the Lender, including, without limitation, compliance in all respects with the terms and conditions of the Post-Closing Letter Agreement.

(j) in the event that the Loan Parties were unable to obtain the necessary waivers, amendments, approvals and consents described in Section 5.01(l), each Monday (or if such day is not a Business Day, the next succeeding Business Day), the Borrower shall deliver to the Lender a weekly status report, commencing with the week of January 5, 2009, identifying each holder of a Senior Lien and each Senior Lien Lender, and the actions taken by the Loan Parties to obtain such necessary waivers, amendments, approvals, and consents.

Each request for a borrowing by the Borrower hereunder shall constitute a certification by the Borrower to the effect set forth in this Section (both as of the date of such notice, request or confirmation and as of the date of such borrowing).

SECTION 6. **REPRESENTATIONS AND WARRANTIES.** Each Loan Party, as applicable, represents and warrants to the Lender that as of the Effective Date and as of each Funding Date:

6.01 **Existence.** Each Loan Party (a) is a corporation, limited partnership or limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, (b) has all requisite corporate or other power, and has all governmental licenses, authorizations, consents and approvals, necessary to own its assets and carry on its business as now being or as proposed to be conducted, except where the lack of such licenses, authorizations, consents and approvals would not be reasonably likely to have a Material Adverse Effect, (c) is qualified to do business and is in good standing in all other jurisdictions in which the nature of the business conducted by it makes such qualification necessary, except where failure so to qualify would not be reasonably likely (either individually or in the aggregate) to have a Material Adverse Effect, and (d) is in compliance in all material respects with all Requirements of Law.

6.02 **Financial Condition.** The Borrower has heretofore furnished to the Lender a copy of its audited Consolidated balance sheets and the audited Consolidated balance sheets of its Consolidated Subsidiaries (including each Loan Party), each as at December 31, 2007, with the opinion thereon of an independent auditor, a copy of which has been provided to the Lender, together with copies of the Borrower's unaudited pro forma Consolidated balance sheet and the unaudited pro forma Consolidated balance sheets of its Consolidated Subsidiaries (including each Loan Party), each as of the Effective Date. The Borrower has also heretofore furnished to the Lender the related Consolidated statements of income and retained earnings and of cash flows for the Borrower and its Consolidated Subsidiaries (including each Loan Party) for its most recent fiscal year, setting forth in comparative form the same information for the previous year. All such financial statements are materially complete and correct and fairly present the Consolidated financial condition of the Borrower and its Consolidated Subsidiaries (including each Loan Party) and the Consolidated results of their operations for the fiscal year ended on said date, all in accordance with GAAP applied on a consistent basis. There are no

- 39 -

GMPR-HD 3272

• • • • • • • • •

Documents by each Loan Party shall be deemed to have been relied upon by the Lender notwithstanding any investigation heretofore or hereafter made by the Lender or on their behalf.

**6.25 Representations Concerning the Facility Collateral.** Each Loan Party represents and warrants to the Lender that as of each day that an Advance is outstanding pursuant to this Loan Agreement:

(a) No Loan Party has assigned, pledged, conveyed, or encumbered any Facility Collateral to any other Person (other than Permitted Liens) and immediately prior to the pledge of any such Facility Collateral, a Loan Party was the sole owner of such Facility Collateral and had good and marketable title thereto, free and clear of all Liens (other than Permitted Liens), and no Person, other than the Lender has any Lien (other than Permitted Liens) on any Facility Collateral. No security agreement, financing statement, equivalent security or lien instrument or continuation statement covering all or any part of the Facility Collateral which has been signed by any Loan Party or which any Loan Party has authorized any other Person to sign or file or record, is on file or of record with any public office, except such as may have been filed by or on behalf of a Loan Party in favor of the Lender pursuant to the Loan Documents or in respect of applicable Permitted Liens.

(b) The provisions of the Loan Documents are effective to create in favor of the Lender a valid security interest in all right, title, and interest of each Loan Party in, to and under the Facility Collateral, subject only to applicable Permitted Liens.

(c) Upon the filing of financing statements on Form UCC-1 naming the Lender as "Secured Party" and each Loan Party as "Debtor", and describing the Facility Collateral, in the jurisdictions and recording offices listed on **Schedule 6.25** attached hereto, the security interests granted hereunder in the Facility Collateral will constitute perfected first priority security interests under the Uniform Commercial Code in all right, title and interest of the applicable Loan Party in, to and under such Facility Collateral, which can be perfected by filing under the Uniform Commercial Code except with respect to any Facility Collateral in which a Senior Lien Lender has been granted a security interest, in which case, the security interests granted hereunder in the Facility Collateral will constitute a junior Lien on such Facility Collateral, in each case, subject to applicable Permitted Liens.

(d) Each Loan Party has and will continue to have the full right, power and authority, to pledge the Facility Collateral, and the pledge of the Facility Collateral may be further assigned without any requirement.

**6.26 Intellectual Property.**

(a) Each of the Loan Parties owns and controls, or otherwise possesses adequate rights to use, all Intellectual Property material to the conduct of its business in substantially the same manner as conducted as of the date hereof. **Schedule 6.26** hereto sets forth a true and complete list as of the date hereof of all Intellectual Property owned by each Loan Party that is material to the conduct of the business of such Loan Party. All such Intellectual Property, other than Licenses, that is material to the conduct of the business of such Loan Party is subsisting and in full force and effect, has not been adjudged invalid or unenforceable, is valid and enforceable and has not been abandoned in whole or in part, except for such instances which, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect. Except as set forth in **Schedule 6.26**, no such Intellectual Property that is material to the conduct of the business of such Loan Party is the subject of any licensing or franchising agreement that prohibits or restricts any Loan Party's conduct of business as presently conducted. No Loan Party has any knowledge of any conflict with the rights of others to any Intellectual Property and, to the best knowledge of each Loan Party, no Loan Party is now infringing or in conflict

- 44 -

GMPR-HD 3277

with any such rights of others in any material respect, and to the best knowledge of each Loan Party, no other Person is now infringing or in conflict in any material respect with any such properties, assets and rights owned or used by or licensed to any Loan Party, except for such infringements and conflicts which, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect. Except as set forth on **Schedule 6.26** hereto, no Loan Party has received any notice that it is violating or has violated the trademarks, patents, copyrights, inventions, trade secrets, proprietary information and technology, know-how, formulae, rights of publicity or other intellectual property rights of any third party, which, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(b) Each material License now existing is, and each other material License will be, the legal, valid and binding obligation of the parties thereto, enforceable against such parties in accordance with its terms, except any unenforceability which could not reasonably be expected to have a Material Adverse Effect. To the knowledge of each Loan Party, no default thereunder by any such party has occurred, nor does any defense, offset, deduction, or counterclaim exist thereunder in favor of any such party which could reasonably be expected to have a Material Adverse Effect. Except as set forth on **Schedule 6.26**, each material License either (a) permits by its terms (1) the pledge of the License, (2) the foreclosure on any such License by the Lender, and (3) any potential change of control of the relevant Loan Party without material impairment of the License, or (b) is subject to a waiver or consent secured by the relevant Loan Party.

(c) The Borrower will use its best efforts to ensure that the Lender is obtaining through the Loan Documents sufficient rights and assets to enable a subsequent purchaser of the Facility Collateral in a sale pursuant to Section 4.07 to manufacture vehicles of substantially the same quality and nature as those sold by Borrower as of the date hereof, provided that such purchaser has access to reasonably common motor vehicle technologies and manufacturing capabilities appropriate for vehicles of such nature, and market such vehicles through substantially similar channels as those employed by Borrower.

**6.27 JV Agreements.**

(a) Set forth on **Schedule 6.27** is a complete and accurate list as of the date hereof of all JV Agreements, showing the parties and the dates of amendments and modifications thereto.

(b) Each JV Agreement (i) is in full force and effect and is binding upon and enforceable against each party thereto, (ii) has not been otherwise amended or modified, except as set forth on **Schedule 6.27**, and (iii) is not in default and no event has occurred that, with the passage of time and/or the giving of notice, or both, would constitute a default thereunder, except to the extent any such default would not reasonably be expected to have a Material Adverse Effect.

**6.28 Senior Lien Assets.** Set forth on **Schedule 6.28** is a complete and accurate list of all assets of each Loan Party subject to a Senior Lien.

**6.29 Excluded Collateral.** Set forth on **Schedule 6.29** is a complete and accurate list of all Excluded Collateral of each Loan Party.

**6.30 Mortgaged Real Property.** Except for those certain properties described on **Schedule 6.30**, after giving effect to the recording of the Mortgages, all real property that is either owned in fee simple or leased pursuant to a ground lease having a term of at least fifteen (15) years by the Loan Parties (whether individually or collectively) and located in the United States shall be subject to a recorded first lien mortgage, deed of trust or similar security instrument (subject to Permitted Liens),

- 45 -

GMPR-HD 3278

except where the grant of such a lien (a) is legally impermissible, (b) is contractually prohibited (and waiver of such prohibition has not been obtained), or (c) would give rise to the obligation to create a Lien in favor of any other Person as set forth in **Schedule 6.30** hereto.

**6.31 Additional Representations and Warranties.** Additional representations and warranties, and amendments, restatements, supplements or other modifications to those in this Section 6 are set forth in Section 6 of Appendix A.

## SECTION 7. AFFIRMATIVE AND FINANCIAL COVENANTS OF THE LOAN PARTIES.

Subject to the amendments, restatements, supplements or other modifications in Section 7 of Appendix A, each Loan Party covenants and agrees with the Lender that, so long as any Advance is outstanding and until payment in full of all Obligations:

**7.01 Financial Statements.** Except as may otherwise be required pursuant to Appendix A, the Borrower shall deliver to the Lender:

(a) as soon as available and in any event within forty-five (45) days after the end of each month, the Consolidated balance sheets of the Borrower and its Consolidated Subsidiaries (including the Loan Parties) as at the end of such month and the related unaudited Consolidated statements of income and retained earnings and of cash flows for the Borrower and its Consolidated Subsidiaries (including the Loan Parties) for such month and the portion of the fiscal year through the end of such month, setting forth in each case in comparative form the figures for the previous year;

(b) as soon as available and in any event within sixty (60) days after the end of each of the first three quarterly fiscal periods of each fiscal year of the Borrower, the Consolidated balance sheets of the Borrower and its Consolidated Subsidiaries (including the Loan Parties) as at the end of such period and the related unaudited Consolidated statements of income and retained earnings and of cash flows for the Borrower and its Consolidated Subsidiaries (including the Loan Parties) for such period and the portion of the fiscal year through the end of such period, setting forth in each case in comparative form the figures for the previous year;

(c) as soon as available and in any event within ninety (90) days after the end of each fiscal year of the Borrower, the Consolidated balance sheets of the Borrower and its Consolidated Subsidiaries (including the Loan Parties) as at the end of such fiscal year and the related Consolidated statements of income and retained earnings and of cash flows for the Borrower and its Consolidated Subsidiaries for such year, setting forth in each case in comparative form the figures for the previous year, accompanied by an opinion thereon of independent certified public accountants of recognized national standing, which opinion shall state that said Consolidated financial statements fairly present the Consolidated financial condition and results of operations of the Borrower and its Consolidated Subsidiaries (including the Loan Parties) at the end of, and for, such fiscal year in accordance with GAAP;

(d) as soon as reasonably possible after receipt by the subject Loan Party, a copy of any material report that may be prepared and submitted by such Loan Party's independent certified public accountants at any time;

(e) from time to time such other information regarding the financial condition, operations, or business of any Loan Party as the Lender may reasonably request;

- 46 -

GMPR-HD 3279

• • • • • • • • •

waivers), administration and amendment of the Loan Documents (regardless of whether the Loan is entered into hereunder), the taking of any action, including legal action, required or permitted to be taken by the Lender pursuant thereto, any "due diligence" or loan agent reviews conducted by the Lender or on their behalf or by refinancing or restructuring in the nature of a "workout."

**11.20 Waiver Of Redemption And Deficiency Rights.** Each Loan Party hereby expressly waives, to the fullest extent permitted by law, every statute of limitation on a deficiency judgment, any reduction in the proceeds of any Facility Collateral as a result of restrictions upon the Lender contained in the Loan Documents or any other instrument delivered in connection therewith, and any right that they may have to direct the order in which any of the Facility Collateral shall be disposed of in the event of any Disposition pursuant hereto.

**11.21 Single Agreement.** The Borrower and the Lender acknowledge that, and have entered hereinto and will enter into each Advance hereunder in consideration of and in reliance upon the fact that, all Advances hereunder constitute a single business and contractual relationship and have been made in consideration of each other. Accordingly, the Borrower and the Lender each agree (i) to perform all of their obligations in respect of each Advance hereunder, and that a default in the performance of any such obligations shall constitute a default by it in respect of all Advances hereunder, and (ii) that payments, deliveries and other transfers made by any of them in respect of any Advance shall be deemed to have been made in consideration of payments, deliveries and other transfers in respect of any other Advance hereunder, and the obligations to make any such payments, deliveries and other transfers may be applied against each other and netted.

**11.22 Severability.** Any provision of any Loan Document held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions thereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction. If any provision of any Loan Document shall be held invalid or unenforceable (in whole or in part) as against any one or more Loan Parties, then such Loan Document shall continue to be enforceable against all other Loan Parties without regard to any such invalidity or unenforceability.

**11.23 Entire Agreement.** This Loan Agreement and the other Loan Documents embody the entire agreement and understanding of the parties hereto and supersede any and all prior agreements, arrangements and understandings relating to the matters provided for herein and therein. No alteration, waiver, amendments, or change or supplement hereto shall be binding or effective unless the same is set forth in writing by a duly authorized representative of the Lender.

**11.24 Appendix A.** Each provision of this Loan Agreement is subject to the amendments, restatements, supplements or other modifications contained in Appendix A.

[SIGNATURE PAGE FOLLOWS]

- 69 -

GMPR-HD 3302

IN WITNESS WHEREOF, the parties hereto have caused this Loan Agreement to be duly executed and delivered as of the day and year first above written.

GENERAL MOTORS CORPORATION
as Borrower

By: /x/ Ray Young
    Name:  Ray G. Young
    Title:  Executive Vice President and Chief
    Financial Officer

THE UNITED STATES DEPARTMENT OF THE
TREASURY
as Lender

By: /x/ Neel Kashkari
    Name:  Neel Kashkari
    Title:  Interim Assistant Secretary of the Treasury for
    Financial Stability

*Signature Page to Loan and Security Agreement*

GMPR-HD 3303

ANNUNCIATA CORPORATION,
ARGONAUT HOLDINGS, INC.,
GENERAL MOTORS ASIA, INC.,
GENERAL MOTORS ASIA PACIFIC HOLDINGS, LLC,
GENERAL MOTORS OVERSEAS CORPORATION,
GENERAL MOTORS OVERSEAS DISTRIBUTION CORPORATION,
GENERAL MOTORS PRODUCT SERVICES, INC.,
GENERAL MOTORS RESEARCH CORPORATION,
GM APO HOLDINGS, LLC,
GM EUROMETALS, INC.,
GM FINANCE CO. HOLDINGS LLC,
GM GEFS L.P.,
GM GLOBAL TECHNOLOGY OPERATIONS, INC.,
GM GLOBAL TOOLING COMPANY, INC.,
GM LAAM HOLDINGS, LLC,
GM PREFERRED FINANCE CO. HOLDINGS LLC,
GM TECHNOLOGIES, LLC,
GM-DI LEASING CORPORATION,
GMOC ADMINISTRATIVE SERVICES CORPORATION,
ONSTAR, LLC,
RIVERFRONT HOLDINGS, INC.,
SATURN CORPORATION, and
SATURN DISTRIBUTION CORPORATION,
     each, as a Guarantor

By:    /x/ Adil Mistry
Name  Adil Mistry
Title:   Vice President

*Signature Page to Loan and Security Agreement*

GMPR-HD 3304

GENERAL MOTORS INTERNATIONAL HOLDINGS, INC.,
as Guarantor

By:      /s/ Adil Mistry
Name. Adil Mistry
Title:  Vice President

Address for Notices:
767 Fifth Avenue, 14th Floor
New York, NY 10153

Attention: Adil Mistry
Telephone: (212) 418-3507
Facsimile: (212) 418-3695

*Signature Page to Loan and Security Agreement*

GMPR-HD 3305

• • • • • • • • •

*** Portions of this exhibit have been omitted under a request for confidential treatment pursuant to Rule 24b-2 of the Securities and Exchange Act of 1934 and filed separately with the United States Securities and Exchange Commission.

**EXECUTION VERSION**

## APPENDIX A

## SUPPLEMENT TO LOAN AND SECURITY AGREEMENT

This Appendix A forms a part of the Loan and Security Agreement dated as of December 31, 2008 (the "Loan Agreement") among BORROWER (as defined below) and the UNITED STATES DEPARTMENT OF THE TREASURY, as lender ("Lender"). This Appendix A sets forth certain terms and conditions governing the transactions described in the Loan Agreement. Capitalized terms used but not defined in this Appendix A shall have the meanings ascribed to them in the Loan Agreement.

## SECTION 1. DEFINITIONS AND ACCOUNTING MATTERS.

### 1.01 Certain Defined Terms.

Terms used in this Appendix A, but not herein defined shall have the meanings ascribed thereto in the Loan Agreement or the meanings set forth below:

"Borrower" shall mean General Motors Corporation, a Delaware corporation.

"Effective Date" shall mean December 31, 2008.

"Excluded Collateral" shall include the following:

(xii) any Property securing the GMAC Rights Facility.

"Excluded Subsidiary" shall mean the Subsidiaries identified on Schedule 6.29 and any of the following, to the extent they become Subsidiaries after the Effective Date, (i) any Securitization Subsidiary; (ii) any Financing Subsidiary; (iii) any Subsidiary that owns a manufacturing plant or facility which is located within the continental United States; (iv) any Insurance Subsidiary; and (v) any Subsidiary (and any parent or holding company thereof) that is primarily engaged in the investment management business or that is regulated by the Office of the Comptroller of the Currency.

"Expiration Date" shall mean December 30, 2011 at 5:00 p.m. (Washington, D.C. time).

"Facility Account" shall mean the Loan Parties' cash management accounts.

"Financing Subsidiary" shall mean any Subsidiary that is primarily engaged in financing activities (other than lease and purchase financing provided by such Subsidiary to dealers and consumers), including (a) debt issuances to, or that are guaranteed by, governmental or quasi-governmental entities (including any municipal, local, county, regional, state, provincial, national or international organization or agency), and (b) lease transactions (including synthetic lease transactions and sale and leaseback transactions).

"Funding Date" shall mean the date on which the Lender funds an Advance in accordance with the terms hereof, which shall be either the Effective Date, the Second Draw Date, or the Third Draw Date.

"GMAC" shall mean GMAC LLC and its Subsidiaries.

1

**GMPR-HD 3326**

"GMAC Reorganization" shall mean any transactions consummated for the purpose of or in connection with the Borrower or any of its Affiliates (a) not being in control of GMAC for purposes of the Bank Holding Company Act of 1956, (b) not being an affiliate of GMAC for purposes of Sections 23A or 23B of the Federal Reserve Act, or (c) otherwise complying with the commitments made by the Borrower to the Federal Reserve System with regard to GMAC, including but not limited to, in each case, (i) the Disposition of all or any portion of the Borrower's Equity Interests in GMAC to one or more trusts, and (ii) the Disposition of all or any portion of such Equity Interests by any trustee of any such trust.

"GMAC Rights Facility" shall mean that certain loan facility under which the Lender shall make available to the Borrower up to $1 billion for use by the Borrower to purchase equity interests in GMAC in connection with a rights offering by GMAC, and under which the obligations shall be secured by first-priority liens on the GMAC equity to be issued to the Borrower in such rights offering, together with certain other GMAC equity now owned by the Borrower, and such other collateral as may be requested by the Lender and provided by the Borrower from time to time.

"Insurance Subsidiary" shall mean (i) any Subsidiary that is required to be licensed as an insurer or reinsurer or that is primarily engaged in insurance or reinsurance and (ii) any Subsidiary of a Person described in clause (i) above.

"Interest Payment Date" shall mean the last Business Day of each calendar quarter, commencing with the first calendar quarter in 2009.

"Inventory Cash Collateral Account" shall mean a cash deposit account subject to an Account Control Agreement in which the Lender has a security interest.

"Inventory Facility Collateral" shall mean Facility Collateral consisting of inventory (as defined in the Uniform Commercial Code) in which the Lender has a security interest.

"Inventory Facility Collateral Reporting Date" shall mean the first Business Day following the 15th day of each calendar month.

"Inventory Target Amount" shall mean, on any Inventory Test Date, $250,000,000 (which number may be revised at any time by the President's Designee in his/her sole discretion, based on the Restructuring Plan Report and any other information that the President's Designee deems relevant), less the amount of Mandatory Prepayments made in respect of Inventory Facility Collateral pursuant to Section 2.07(b) prior to such Inventory Test Date.

"Inventory Test Date" shall mean the last day of each fiscal month in a fiscal year.

"Inventory Value" shall mean, as of any date of determination, the book value of the Inventory Facility Collateral as reflected in the Borrower's management reports and disclosed to the Lender.

"Junior Lien Facility Collateral" shall mean Facility Collateral in which the Lender has a Lien other than a first priority security interest.

2

GMPR-HD 3327

"LIBOR Floor" shall mean 2.00%.

"Loan Documents" shall include this Loan Agreement, the Note, the Equity Pledge Agreement, the Intellectual Property Pledge Agreement, the Guaranty, the Warrant Agreement, the Warrant, the Post-Closing Letter Agreement, each Account Control Agreement, each Mortgage, and the Environmental Indemnity.

"Mandatory Prepayment" shall have the meaning set forth in Section 2.07(a) of this Appendix A.

"Maximum Loan Amount" shall mean $13,400,000,000.

"New VEBA" shall mean the new trust fund to be established pursuant to the Settlement Agreement.

"Non-Inventory Current Asset Facility Collateral" shall mean Facility Collateral consisting of assets which are "current assets" (as identified on the Borrower's Consolidated balance sheets), other than Inventory Facility Collateral, in which the Lender has a security interest.

"Other Asset Facility Collateral" means Facility Collateral consisting of assets other than "current assets" (as identified on the Borrower's Consolidated balance sheets) in which the Lender has a security interest.

"Permitted Indebtedness" shall include the following:

(xvii) Settlement Agreement Debt;

(xviii) any Warrant Notes; and

(xix) the Indebtedness incurred in connection with the GMAC Rights Facility.

"Permitted Investors" shall mean the New VEBA and any other trust fund established pursuant to the Settlement Agreement (and any trustee, Affiliate or Subsidiary of the New VEBA or such other trust fund).

"Permitted Investments" shall include the following:

(iv) prior to the Certification Deadline, pursuant to the schedules of such Investments that has been preliminarily approved by the President's Designee prior to the Effective Date (which shall include Investments pursuant to Existing Agreements), which are scheduled to be fulfilled prior to March 31, 2009, provided that, the President's Designee shall have the right to further review and, at any time revoke approval of, any such Investment if the President's Designee determines that it would be inconsistent with the objective of this Loan Agreement;

(v) any Investment existing on the Effective Date (including under the Settlement Agreement) or made pursuant to binding commitments in effect on the Effective Date or an investment consisting of any extension, modification or renewal of any Investment existing on the Effective Date; provided that the amount of any such Investment is not increased through such extension, modification or renewal;

3

GMPR-HD 3328

• • • • • • • • •

## SECTION 5. CONDITIONS PRECEDENT.

### 5.01. Conditions Precedent to Initial Advance.

(w) GMAC Consents. The Common Holders of the Class A Membership Interests of GMAC LLC and holders of the Class C Membership Interests of GMAC LLC shall have consented in writing to the pledge to Lender of the Class B Membership Interests and the Preferred Membership Interests pursuant to the Loan Documents;

(x) Warrant Agreement. As additional consideration for the Lender to enter into this Loan Agreement and the GMAC Rights Facility, the Borrower and the Lender shall enter into the Warrant Agreement and the Borrower shall issue the Warrant to the Lender in accordance with the terms of such Warrant Agreement.

**The following shall be added as a new Section 5.03 to the Loan Agreement:**

### 5.03. Conditions Precedent to Subsequent Advances.

The making of any Advance to the Borrower after the Effective Date is subject to the following further conditions precedent both immediately prior to the making of such Advance and also after giving effect thereto and to the intended use thereof:

(a) on or prior to the Second Draw Date, the applicable Loan Parties shall have used commercially reasonable efforts to obtain from the Senior Lenders all necessary waivers, amendments, approvals, and consents to the pledge of the inventory of the Loan Parties to the Lender; and

(b) on or prior to the Second Draw Date, the Loan Parties shall have provided to the Lender a schedule of all existing material Indebtedness (x) of any of Subsidiary of a Loan Party that is not itself a Loan Party, or (y) that is intercompany Indebtedness.

## SECTION 6. REPRESENTATIONS AND WARRANTIES.

### 6.02. Financial Condition.

The Borrower has heretofore furnished to the Lender a copy of its audited Consolidated balance sheets as at December 31, 2007, with the opinion thereon of an independent auditor, a copy of which has been provided to the Lender. The Borrower has also heretofore furnished to the Lender the related Consolidated statements of income and retained earnings and of cash flows for the Borrower and its Consolidated Subsidiaries for its most recent fiscal year, setting forth in comparative form the same information for the previous year. All such financial statements are materially complete and correct and fairly present the Consolidated financial condition of the Borrower and its Consolidated Subsidiaries and the Consolidated results of their operations for the fiscal year ended on said date, all in accordance with GAAP applied on a consistent basis. There are no liabilities, contingent or otherwise, as of the Effective Date, known to any Loan Party and not disclosed in the most recently publicly filed financial statements or in the footnotes thereto (or as otherwise disclosed to the Lender prior to the Effective Date), that involve a material amount.

### 6.04 No Breach.

8

GMPR-HD 3333

The Loan Parties shall not be deemed to be in breach of Section 6.04, clauses (a)(iv) and (b) to the extent that any intercompany agreements that are Existing Agreements do not satisfy the criteria of clause (iv) of the definition of Permitted Investments.

### 6.13 Existing Agreements.

Set forth on Schedule 6.13 is a complete and accurate list as of the date hereof of all Existing Agreements of the Loan Parties filed by, or incorporated in, the Borrower's 2008 SEC filings.

### 6.14 ERISA.

Any Benefit Plan which is intended to be a tax-qualified plan of any Loan Party has received a favorable determination letter and such Loan Party does not know of any reason why such letter should be revoked. The Loan Parties and each of their respective ERISA Affiliates are in material compliance with the applicable provisions of ERISA and the Code and the regulations and published interpretations thereunder. (a) As of December 31, 2007, no ERISA Event has occurred that could reasonably be expected to result in liability to any Loan Party or any ERISA Affiliate in excess of $2,000,000,000, (b) as of the Effective Date, no ERISA Event other than a determination that a Plan is "at risk" (within the meaning of Section 302 of ERISA) has occurred or is reasonably likely to occur that could reasonably be expected to result in liability to any Loan Party or ERISA Affiliate in excess of $2,000,000,000, (c) as of December 31, 2007, the present value of all benefit liabilities under each Plan (based on the assumptions used for purposes of Statement of Financial Accounting Standards No. 87) did not, as of December 31, 2007, exceed the fair market value of the assets of such Plan, and the present value of all benefit liabilities of all underfunded Plans (based on the assumptions used for purposes of Statement of Financial Accounting Standards No. 87) did not, as of December 31, 2007, exceed the fair market value of the assets of all such underfunded Plans, (d) as of December 31, 2007, the Loan Parties do not have post-retirement medical liability in excess of $60,000,000,000 based on the actuarial assumptions set forth in the Loan Party's financial statements under GAAP as of December 31, 2007, and (e) as of the Effective Date, there is not, and there is not reasonably expected to be, any withdrawal liability from, or any obligation or liability (direct or indirect) with respect to, any Multiemployer Plan. The representations set forth in the preceding two sentences of this section 6.14 shall continue to be true and correct on each day that an Advance is outstanding pursuant to the Loan Agreement except to the extent that any such change or failure when aggregated with all other changes or failures in the preceding two sentences of this section 6.14, would not be reasonably expected to result in a Material Adverse Effect. There are no Plans or other arrangements which would result in the payment to any employee, former employee, individual consultant or director of any amounts or benefits upon the consummation of the transactions contemplated herein or the exercise of the Lender of any right or remedy contemplated herein. Assets of the Loan Parties or any ERISA Affiliate are not "plan assets" within the meaning of the DOL Regulation Section 2510.3-101 as amended by section 3(42) of ERISA.

### 6.15 Expense Policy.

The Borrower has commenced steps necessary to ensure that (a) the Expense Policy conforms to the requirements set forth herein and (b) the Borrower and its Subsidiaries are in compliance with the Expense Policy.

### 6.26 Intellectual Property.

9

GMPR-HD 3334

**The following shall be appended to the end of Section 6.26(a):**

(a) Notwithstanding the foregoing, in lieu of the obligation to schedule all Intellectual Property owned by each Loan Party that is material to the conduct of the business of such Loan Party, **Schedule 6.26** hereto sets forth a true and complete list as of the date hereof of all Copyright registrations and applications, Patent applications and issued Patents, and Trademark registrations, Trademark applications, and domain name registrations included in the Trademarks, in each case owned by each Loan Party and material to the conduct of the business of such Loan Party, and any of the following Licenses that have been identified by the Borrower as of the date hereof subject to and in accordance with the Post-Closing Letter: (i) any Licenses listed on Section II of **Schedule 6.26** as of the Effective Date, (ii) any Licenses pursuant to which any Loan Party licenses Intellectual Property in the absence of which such Loan Party could not manufacture any of its currently manufactured vehicle models and as to which there are no alternatives for such licensed Intellectual Property available on commercially reasonable terms, and (iii) any Licenses pursuant to which any Loan Party licenses Intellectual Property out to a third party where the remaining royalties due and payable to such Loan Party thereunder are in excess of one million U.S. dollars (US$1,000,000) annually.

**The last sentence of Section 6.26(b) is hereby deleted and of no force or effect.**

### 6.29 Excluded Collateral.

Notwithstanding the requirements of Section 6.29, **Schedule 6.29** sets forth a complete and accurate list of all (i) domestic Joint Ventures and Domestic Subsidiaries that comprise Excluded Collateral and (ii) all "first tier" foreign Joint Ventures and Controlled Foreign Subsidiaries that are owned by the Borrower or any of its Domestic Subsidiaries that comprise Excluded Collateral.

## SECTION 7. AFFIRMATIVE AND FINANCIAL COVENANTS OF THE LOAN PARTIES.

### 7.01 Financial Statements.

(a) In lieu of delivering monthly Consolidated balance sheets and statements of income and retained earnings for the Borrower and its Consolidated Subsidiaries, the Borrower shall deliver, within fifteen (15) days following the end of each calendar month, Consolidated monthly management reports prepared by the Borrower with respect to the Borrower and its Consolidated Subsidiaries. The management reports shall be certified to in the monthly certificate delivered by the Borrower as provided in the last paragraph of Section 7.01.

### 7.02 Reporting Requirements.

(i) The 13-week rolling cash forecast for each Loan Party and its Subsidiaries referenced in Section 7.02(i) in the Loan Agreement shall be comprised of, and shall set forth separately and with specific detail, the cash forecast for each of the four regions of the Borrower's and its Subsidiaries' operations: North America, Asia-Pacific, Europe and Middle East/Latin America.

(j) Until such time as the Lender shall require otherwise, the liquidity status report referenced in Section 7.02(j) in the Loan Agreement shall set forth the required information as to the Subsidiaries on a Borrower Consolidated basis only.

10

GMPR-HD 3335

• • • • • • • • •

Exhibit 10.1

***CONFIDENTIAL TREATMENT REQUESTED BY GENERAL MOTORS CORPORATION PURSUANT TO THE FREEDOM OF INFORMATION ACT

Schedule 1.1

LIST OF PLEDGORS

| Name | Form of Organization | Jurisdiction of Organization | Organizational ID Number | Taxpayer ID Number |
|---|---|---|---|---|
| General Motors Asia Pacific Holdings, LLC | Limited Liability Company | Delaware | *** | *** |
| General Motors Asia, Inc. | Corporation | Delaware | *** | *** |
| General Motors Corporation | Corporation | Delaware | *** | *** |
| General Motors International Holdings, Inc. | Corporation | Delaware | *** | *** |
| General Motors Overseas Corporation | Corporation | Delaware | *** | *** |
| General Motors Overseas Distribution Corporation | Corporation | Delaware | *** | *** |
| GM APO Holdings, LLC | Limited Liability Company | Delaware | *** | *** |
| GM Finance Co. Holdings LLC | Limited Liability Company | Delaware | *** | *** |
| GM GEFS L.P. | Limited Partnership | Nevada | *** | *** |
| GM LAAM Holdings, LLC | Limited Liability Company | Delaware | *** | *** |
| GM Preferred Finance Co. Holdings LLC | Limited Liability Company | Delaware | *** | *** |
| GM Technologies, LLC | Limited Liability Company | Delaware | *** | *** |
| Riverfront Holdings, Inc. | Corporation | Delaware | *** | *** |
| Saturn Corporation | Corporation | Delaware | *** | *** |

GMPR-HD 00003892

***CONFIDENTIAL TREATMENT REQUESTED BY GENERAL MOTORS CORPORATION PURSUANT TO THE FREEDOM OF INFORMATION ACT

Schedule 1.2

LIST OF GUARANTORS

| Name | Form of Organization | Jurisdiction of Organization | Organizational ID Number | Taxpayer ID Number |
|---|---|---|---|---|
| Annunciata Corporation | Corporation | Delaware | *** | *** |
| Argonaut Holdings, Inc. | Corporation | Delaware | *** | *** |
| General Motors Asia Pacific Holdings, LLC | Limited Liability Company | Delaware | *** | *** |
| General Motors Asia, Inc. | Corporation | Delaware | *** | *** |
| General Motors International Holdings, Inc. | Corporation | Delaware | *** | *** |
| General Motors Overseas Corporation | Corporation | Delaware | *** | *** |
| General Motors Overseas Distribution Corporation | Corporation | Delaware | *** | *** |
| General Motors Product Services, Inc. | Corporation | Delaware | *** | *** |
| General Motors Research Corporation | Corporation | Delaware | *** | *** |
| GM APO Holdings, LLC | Limited Liability Company | Delaware | *** | *** |
| GM Eurometals, Inc. | Corporation | Delaware | *** | *** |
| GM Finance Co. Holdings LLC | Limited Liability Company | Delaware | *** | *** |
| GM GEFS L.P. | Limited Partnership | Nevada | *** | *** |
| GM Global Technology Operations, Inc. | Corporation | Delaware | *** | *** |
| GM Global Tooling Company, Inc. | Corporation | Delaware | *** | *** |
| GM LAAM Holdings, LLC | Limited Liability Company | Delaware | *** | *** |
| GM Preferred Finance Co. Holdings LLC | Limited Liability Company | Delaware | *** | *** |
| GM Technologies, LLC | Limited Liability Company | Delaware | *** | *** |

2

GMPR-HD 00003893

***CONFIDENTIAL TREATMENT REQUESTED BY GENERAL MOTORS CORPORATION PURSUANT TO THE FREEDOM OF INFORMATION ACT

| Name | Form of Organization | Jurisdiction of Organization | Organizational ID Number | Taxpayer ID Number |
|---|---|---|---|---|
| GM-DI Leasing Corporation | Corporation | Delaware | *** | *** |
| GMOC Administrative Services Corporation | Corporation | Delaware | *** | *** |
| OnStar, LLC | Limited Liability Company | Delaware | *** | *** |
| Riverfront Holdings, Inc. | Corporation | Delaware | *** | *** |
| Saturn Corporation | Corporation | Delaware | *** | *** |
| Saturn Distribution Corporation | Corporation | Delaware | *** | *** |

3

GMPR-HD 00003894

• • • • • • • • •

Schedule 6.17

## OWNERSHIP OF LOAN PARTIES

| Loan Party | Form of Organization | Jurisdiction of Organization | Owner | Percent Owned |
|---|---|---|---|---|
| Annunciata Corporation | Corporation | Delaware | General Motors Corporation | 100% |
| Argonaut Holdings, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| | | | General Motors Corporation | 95.76% |
| General Motors Asia Pacific Holdings, LLC | Limited Liability Company | Delaware | General Motors Asia, Inc. | 3.6% |
| | | | General Motors Overseas Corporation | 0.64% |
| General Motors Asia, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| General Motors International Holdings, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| General Motors Overseas Corporation | Corporation | Delaware | General Motors Corporation | 100% |
| General Motors Overseas Distribution Corporation | Corporation | Delaware | General Motors Corporation | 100% |
| General Motors Product Services, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| General Motors Research Corporation | Corporation | Delaware | General Motors Corporation | 100% |

GMPR-HD 00003932

| | | | | |
|---|---|---|---|---|
| GM APO Holdings, LLC | Limited Liability Company | Delaware | General Motors Asia Pacific Holdings, LLC | 100% |
| GM Eurometals, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| GM Finance Co. Holdings LLC | Limited Liability Company | Delaware | General Motors Corporation | 100% |
| GM GEFS L.P. | Limited Partnership | Nevada | General Motors Corporation | 99.99% |
| | | | GM Technologies, LLC | 0.01% |
| GM Global Technology Operations, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| GM Global Tooling Company, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| GM LAAM Holdings, LLC | Limited Liability Company | Delaware | General Motors Asia Pacific Holdings, LLC | 100% |
| GM Preferred Finance Co. Holdings LLC | Limited Liability Company | Delaware | General Motors Corporation | 100% |
| GM Technologies, LLC | Limited Liability Company | Delaware | General Motors Corporation | 100% |
| GM-DI Leasing Corporation | Corporation | Delaware | General Motors Corporation | 100% |
| GMOC Administrative Services Corporation | Corporation | Delaware | General Motors Overseas Corporation | 100% |
| OnStar, LLC | Limited Liability Company | Delaware | General Motors Corporation | 100% |
| Riverfront Holdings, Inc. | Corporation | Delaware | General Motors Corporation | 100% |
| Saturn Corporation | Corporation | Delaware | Onstar, LLC | 100% |
| Saturn Distribution Corporation | Corporation | Delaware | Saturn Corporation | 100% |

GMPR-HD 00003933

• • • • • • • • •

Schedule 6.25

## FILING JURISDICTIONS AND OFFICES

### A. UCC Filing Jurisdictions and Offices

| Entity | Form of Organization | Jurisdiction of Organization | Filing Jurisdiction and Filing Office |
|---|---|---|---|
| Annunciata Corporation | Corporation | Delaware | Delaware – Secretary of State |
| Argonaut Holdings, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| General Motors Asia Pacific Holdings, LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |
| General Motors Asia, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| General Motors Corporation | Corporation | Delaware | Delaware – Secretary of State |
| General Motors International Holdings, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| General Motors Overseas Corporation | Corporation | Delaware | Delaware – Secretary of State |
| General Motors Overseas Distribution Corporation | Corporation | Delaware | Delaware – Secretary of State |
| General Motors Product Services, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| General Motors Research Corporation | Corporation | Delaware | Delaware – Secretary of State |
| GM APO Holdings, LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |
| GM Eurometals, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| GM Finance Co. Holdings LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |
| GM GEFS L.P. | Limited Partnership | Nevada | Nevada – Secretary of State |
| GM Global Technology Operations, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| GM Global Tooling Company, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| GM LAAM Holdings, LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |
| GM Preferred Finance Co. Holdings LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |

GMPR-HD 00003938

| Entity | Form of Organization | Jurisdiction of Organisation | Filing Jurisdiction and Filing Office |
|---|---|---|---|
| GM Technologies, LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |
| GM-DI Leasing Corporation | Corporation | Delaware | Delaware – Secretary of State |
| GMOC Administrative Services Corporation | Corporation | Delaware | Delaware – Secretary of State |
| OnStar, LLC | Limited Liability Company | Delaware | Delaware – Secretary of State |
| Riverfront Holdings, Inc. | Corporation | Delaware | Delaware – Secretary of State |
| Saturn Corporation | Corporation | Delaware | Delaware – Secretary of State |
| Saturn Distribution Corporation | Corporation | Delaware | Delaware – Secretary of State |

### B. Intellectual Property Filing Offices

| | |
|---|---|
| U.S. Patent and Trademark Collateral | United States Patent and Trademark Office |
| U.S. Copyright Collateral | United States Copyright Office |

### C. Real Estate Mortgages and Fixture Filing Offices and Jurisdictions

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Argonaut Holdings, Inc. | Cerritos Dealership | Los Angeles Co., CA | County Recorder of Los Angeles Co., CA |
| Argonaut Holdings, Inc. | Saturn of Cerritos | Los Angeles Co., CA | County Recorder of Los Angeles Co., CA |
| Argonaut Holdings, Inc. | Colma Dealership-Saturn | San Mateo Co., CA | County Recorder of San Mateo Co., CA |
| Argonaut Holdings, Inc. | Dublin BPG | Alameda Co., CA | County Recorder of Alameda Co., CA |

GMPR-HD 00003939

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Argonaut Holdings, Inc. | Vermont Chevrolet | Los Angeles Co., CA | County Recorder of Los Angeles Co., CA |
| General Motors Corporation | Oakland G Truck Center | Alameda Co., CA | County Recorder of Alameda Co., CA |
| Argonaut Holdings, Inc. | Saturn of Capitol Expressway | Santa Clara Co., CA | County Recorder of Santa Clara Co., CA |
| Argonaut Holdings, Inc. | Penske Cadillac Hummer South Bay | Los Angeles Co., CA | County Recorder of Los Angeles Co., CA |
| Argonaut Holdings, Inc. | 2 Denver Dealerships | Denver Co., CO | County Recorder of Denver Co., CO |
| Argonaut Holdings, Inc. | 4 Lone Tree Dealerships | Douglas Co., CO | County Recorder of Douglas Co., CO |
| Argonaut Holdings, Inc. | Estero Bay Chevrolet | Lee Co., FL | County Recorder of Lee Co., FL |
| Argonaut Holdings, Inc. | Kendall Chevrolet | Dade Co., FL | County Recorder of Dade Co., FL |
| Argonaut Holdings, Inc. | Lou Sobh Automotive | Douglas Co., GA | Clerk of the Superior Court of Douglas Co., GA |
| Argonaut Holdings, Inc. | Paramus Auto Mall | Bergen Co., NJ | County Recorder of Bergen Co., NJ |
| Argonaut Holdings, Inc. | Multi-Chevrolet Saturn | Union Co., NJ | County Recorder of Union Co., NJ |
| Argonaut Holdings, Inc. | Miller Buick Pontiac BMC& McPolkowite Motors | Middlesex Co., NJ | County Recorder of Middlesex Co., NJ |

GMPR-HD 00003940

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Argonaut Holdings, Inc. | 86th Street Chevrolet | Kings Co., NY | County Recorder of Kings Co., NY |
| Argonaut Holdings, Inc. | Cunningham Motors | Queens Co., NY | County Recorder of Queens Co., NY |
| Argonaut Holdings, Inc. | RAB Motors | Queens Co., NY | County Recorder of Queens Co., NY |
| General Motors Corporation | City Cadillac-Oldsmobile, Major Chevrolet, Regain Pontiac and Service Facility | Queens Co., NY | County Recorder of Queens Co., NY |
| General Motors Corporation | Bohemian Auto Group | Westchester Co., NY | County Recorder of Westchester Co., NY |
| Argonaut Holdings, Inc. | Gildron Cadillac | Suffolk Co., NY | County Recorder of Suffolk Co., NY |
| General Motors Corporation | Milford Proving Grounds | Oakland and Livingston Counties, MI | County Recorder of Oakland and Livingston Counties, MI |
| General Motors Corporation | Pontiac North Campus (incl Lab) | Oakland Co., MI | County Recorder of Oakland Co., MI |
| General Motors Corporation | Warren Technical Center | Macomb Co., MI | County Recorder of Macomb Co., MI |
| Riverfront Holdings, Inc. (Lessee); Fee Owner is BNP Paribas Leasing Corporation | Detroit Renaissance Center Campus | Wayne Co., MI | County Recorder of Wayne Co., MI |

GMPR-HD 00003941

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Riverfront Holdings, Inc. | Renaissance Center River East Deck | Wayne Co., MI | County Recorder of Wayne Co., MI |
| Riverfront Holdings, Inc. | Renaissance Center Franklin | Wayne Co., MI | County Recorder of Wayne Co., MI |
| Title information unavailable | Mesa Dealership 2 | Maricopa Co., AZ | County Recorder of Maricopa Co., AZ |
| Title information unavailable | Anaheim Hills Dealership 1 | Orange Co., CA | County Recorder of Orange Co., CA |
| Title information unavailable | Elk Grove Dealership 1 | Sacramento Co., CA | County Recorder of Sacramento Co., CA |
| Title information unavailable | Fremont Dealership | Alameda Co., CA | County Recorder of Alameda Co., CA |
| Title information unavailable | Gilroy Dealership | Santa Clara Co., CA | County Recorder of Santa Clara Co., CA |
| Title information unavailable | Tyco Property | San Mateo Co., CA | County Recorder of San Mateo Co., CA |
| Title information unavailable | Newark Dealership | Alameda Co., CA | County Recorder of Alameda Co., CA |
| Title information unavailable | Novato Dealership 1 | Marin Co., CA | County Recorder of Marin Co., CA |
| Title information unavailable | Homestead Dealership | Miami-Dade Co., FL | County Recorder of Miami-Dade Co., FL |
| Title information unavailable | Pinellas Park Dealership | Pinellas Co., FL | County Recorder of Pinellas Co., FL |

GMPR-HD 00003942

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Title information unavailable | Smyrna Dealership | Cobb Co., GA | County Recorder of Cobb Co., GA |
| Title information unavailable | Chicago Dealership 1 | Cook Co., IL | County Recorder of Cook Co., IL |
| Title information unavailable | Elgin Dealership | Kane Co., IL | County Recorder of Kane Co., IL |
| Title information unavailable | Hodgkins Dealership | Cook Co., IL | County Recorder of Cook Co, IL |
| Title information unavailable | Brazil Dealership | Clay Co., IN | County Recorder of Clay Co., IN |
| Title information unavailable | Indianapolis Dealership | Marion Co., IN | County Recorder of Marion Co., IN |
| Title information unavailable | Westborough Dealership | Worchester Co., MA | County Recorder of Worchester Co., MA |
| Title information unavailable | Vacant | Middlesex Co., MA | County Recorder of Middlesex Co., MA |
| Title information unavailable | Michael Chevrolet | Macomb Co., MI | County Recorder of Macomb Co., MI |
| Title information unavailable | Farmington Hills Dealership | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Englewood Cliffs Dealership | Bergen Co., NJ | County Recorder of Bergen Co., NJ |
| Title information unavailable | Lawrenceville Dealerships (2) | Mercer Co., NJ | County Recorder of Mercer Co., NJ |
| Title information unavailable | Vacant | Erie Co., NY | County Recorder of Erie Co., NY |

GMPR-HD 00003943

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Title information unavailable | | | |
| Title information unavailable | Cheektowaga Dealership | Erie Co., NY | County Recorder of Erie Co., NY |
| Title information unavailable | Douglaston Dealership | Queens Co., NY | County Recorder of Queens Co., NY |
| Title information unavailable | Mt. Kisco Dealership | Westchester Co., NY | County Recorder of Westchester Co., NY |
| Title information unavailable | Syracuse Dealership | Onondaga Co., NY | County Recorder of Onondaga Co., NY |
| Title information unavailable | Kings Mountain Dealership | Cleveland Co., NC | County Recorder of Cleveland Co., NC |
| Title information unavailable | Cincinnati Dealership 1 | Hamilton Co., OH | County Recorder of Hamilton Co., OH |
| Title information unavailable | Beaverton Dealership | Washington Co., OR | County Recorder of Washington Co., OR |
| Title information unavailable | Conshohocken Dealership | Montgomery Co., PA | County Recorder of Montgomery Co., PA |
| Title information unavailable | Jenkintown Dealership 2 | Montgomery Co., PA | County Recorder of Montgomery Co., PA |
| Title information unavailable | Kennett Square Dealership | Chester Co., PA | County Recorder of Chester Co., PA |
| Title information unavailable | McMurray Dealership | Washington Co., PA | County Recorder of Washington Co., PA |

GMPR-HD 00003944

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Title information unavailable | Wilkes Barre Dealership | Luzerne Co., PA | County Recorder of Luzerne Col, PA |
| Title information unavailable | Simpsonville Dealership | Greenville Co., PA | County Recorder of Greenville Co., PA |
| Title information unavailable | Houston Dealership 4-Saturn | Harris Co., TX | County Recorder of Harris Co., TX |
| Title information unavailable | Irving Dealership | Dallas Co., TX | County Recorder of Dallas Co., TX |
| Title information unavailable | McAllen Dealership | Hildalgo Co., TX | County Recorder of Hildalgo Co., TX |
| Title information unavailable | Orem Dealership | Utah Co., UT | County Recorder of Utah, Co., UT |
| Title information unavailable | Everett Dealership | Snohomish Co., WA | County Recorder of Snohomish Co., WA |
| Title information unavailable | Vancouver Dealership | Clark Co., WA | County Recorder of Clark Co., WA |
| Title information unavailable | Menomonee Falls Dealership | Waukesha Co., WI | County Recorder of Waukesha, WI |
| Title information unavailable | Pontiac Centerpoint Campus-East | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Pontiac Centerpoint Campus-Central | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Pontiac Centerpoint Campus-West | Oakland Co., MI | County Recorder of Oakland Co., MI |

GMPR-HD 00003945

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Title information unavailable | Doraville Assembly Center | DeKalb Co., GA | County Recorder of DeKalb Co., GA |
| Title information unavailable | Janesville Assembly Center | Rock Co., WI | County Recorder of Rock Co., WI |
| Title information unavailable | Moraine Assembly Center | Montgomery Co., OH | County Recorder of Montgomery Co., OH |
| Title information unavailable | Massena Castings | St. Lawrence Co., NY | County Recorder of St. Lawrence Co., NY |
| Title information unavailable | Pittsburgh Metal Stamping | Allegheny Co., PA | County Recorder of Allegheny Co., PA |
| Title information unavailable | Grand Rapids Metal Stamping | Kent Co., MI | County Recorder of Kent Co., MI |
| Title information unavailable | Thousand Oaks Consolidated Office Building | Ventura Co., CA | County Recorder of Ventura Co., CA |
| Title information unavailable | Grand Blanc SPO Headquarters | Genesee Co., MI | County Recorder of Genesee Co., MI |
| Title information unavailable | Pontiac EDC | Oaklanda Co., MI | County Recorder of Oaklanda Co., MI |
| Title information unavailable | Saginaw Administration Site | Saginaw Co., MI | County Recorder of Saginaw Co., MI |

GMPR-HD 00003946

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Title information unavailable | Spring Hill Manufacturing Campus | Williamson Co., TN | County Recorder of Williamson Co., TN |
| Title information unavailable | Alpharetta Training Center | Forsyth Co., GA | County Recorder of Forsyth Co., GA |
| Title information unavailable | Garland Training Center | Dallas Co., TX | County Recorder of Dallas Co., TX |
| Title information unavailable | Willow Run PDC | Wayne Co., MI | County Recorder of Wayne Co., MI |
| Title information unavailable | Lansing PDC | Ingham Co., MI | County Recorder of Ingham, Co. |
| Title information unavailable | Pontiac North Pit 17 | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Pontiac North PC | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Ypsilanti Vehicle Center | Washtenau Co., MI | County Recorder of Washtenau Co., MI |
| Title information unavailable | Beaverton PDC | Washington Co., OR | County Recorder of Washington Co., OR |
| Title information unavailable | Former Buick City | Genesee Co., MI | County Recorder of Genesee Co., MI |
| Title information unavailable | Former Fairfax | Wyandotte Co., KS | County Recorder of Wyandotte Co., KS |
| Title information unavailable | Former Parma Metal Center | Cuyahoga Co., OH | County Recorder of Cuyahoga Co., OH |

GMPR-HD 00003947

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
|---|---|---|---|
| Title information unavailable | Janesville Training Center | Rock Co., WI | County Recorder of Rock Co., WI |
| Title information unavailable | Grand Blanc Metal Center | Genesee Co., MI | County Recorder of Genesee Co., MI |
| Title information unavailable | Former Delphi Site | Mercer Co., NJ | County Recorder of Mercer Co., NJ |
| Title information unavailable | Former Tarrytown Assembly | Westchester Co., NY | County Recorder of Westchester Co., NY |
| Title information unavailable | Former Validation Center | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Renaissance Center Excess Land | Wayne Co., MI | County Recorder of Wayne Co., MI |
| Title information unavailable | Former Lansing Plant 1, 2, 3, 6 | Ingham Co., MI | County Recorder of Ingham Co., MI |
| Title information unavailable | Fiero Parking Lot | Oakland Co., MI | County Recorder of Oakland Co., MI |
| Title information unavailable | Dealership Vacant Land | Suffolk Co., NY | County Recorder of Suffolk, NY |
| Title information unavailable | Dealership Vacant Land | Mercer Co., NJ | County Recorder of Mercer Co., NJ |
| Title information unavailable | Yuma Proving Grounds | Yuma Co., AZ | County Recorder of Yuma Co., AZ |
| Title information unavailable | Renaissance Center River East | Wayne Co., MI | County Recorder of Wayne Co., MI |

GMPR-HD 00003948

| Debtor/Property Owner | Property | County/State | Filing Jurisdiction |
| --- | --- | --- | --- |
| Title information unavailable | Renaissance Center Franklin Deck | Wayne Co., MI | County Recorder of Wayne Co., MI |

GMPR-HD 00003949

• • • • • • • • •

\*\*\*CONFIDENTIAL TREATMENT REQUESTED BY GENERAL MOTORS CORPORATION PURSUANT TO THE FREEDOM OF INFORMATION ACT

Schedule 6.29

\*\*\*

GMPR-HD 00003959

***CONFIDENTIAL TREATMENT REQUESTED BY GENERAL MOTORS CORPORATION PURSUANT TO THE FREEDOM OF INFORMATION ACT

Schedule 6.30 (REVISED)

•••

GMPR-HD 00003960