Appendix 5

Debtors' Ex. 10 in Evidence

Indenture, dated as of December 7,
1995, between GM and Wilmington
Trust Company, as Successor Trustee,
and all Amendments and Supplements

GENERAL MOTORS CORPORATION

and

CITIBANK, N.A.,

Trustee

INDENTURE

Dated as of December    , 1995

Debt Securities

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

## TABLE OF CONTENTS*.

|                                                                              | PAGE |
|------------------------------------------------------------------------------|------|
| Parties.....................................  ..........................................| 1 |
| Recitals...........................................................................| 1 |

### ARTICLE ONE.
### DEFINITIONS.

| Section 1.01. | Definitions...............................................| 1 |
|               | Additional Amounts......................................| 2 |
|               | Authorized Newspaper....................................| 2 |
|               | Board of Directors......................................| 2 |
|               | Board Resolution........................................| 2 |
|               | Business Day.............................................| 2 |
|               | Corporate Trust Office..................................| 2 |
|               | Corporation..............................................| 3 |
|               | Corporation Order........................................| 3 |
|               | Coupon....................................................| 3 |
|               | Coupon Security..........................................| 3 |
|               | Depository................................................| 3 |
|               | Event of Default.........................................| 3 |
|               | Global Security..........................................| 4 |
|               | Holder....................................................| 4 |
|               | Indenture.................................................| 4 |
|               | Interest Payment Date....................................| 4 |
|               | Issue Date................................................| 4 |
|               | Maturity Date.............................................| 4 |
|               | Officers' Certificate....................................| 4 |
|               | Opinion of Counsel.......................................| 5 |
|               | Original Issue Discount Securities......................| 5 |
|               | outstanding...............................................| 5 |
|               | Paying Agent..............................................| 5 |
|               | person....................................................| 6 |

*The Table of Contents is not part of the Indenture.

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

Place of Payment..................................5
Registered Security...............................5
Regular Record Date...............................5
responsible officer...............................6
Security Registrar and Security Registrar.........6
Trust Indenture Act of 1939.......................6
United States.....................................6
United States person..............................7
Unregistered Security.............................7
U.S. Dollar.......................................7
Section 1.02    Notice Securityholders............................7

ARTICLE TWO.
ISSUE, EXECUTION, REGISTRATION AND EXCHANGE OF SECURITIES.

Section 2.01.  Amount Unlimited; Issuable in Series...............7
Section 2.02.  Form of Trustee's Certificate of Authentication...10
Section 2.03.  Form, Execution, Authentication, Delivery and Dating of
Securities.......................................................10
Section 2.04.  Denominations; Record Date........................12
Section 2.05.  Exchange and Registration of Transfer of Securities...13
Section 2.06.  Temporary Securities..............................14
Section 2.07.  Mutilated, Destroyed, Lost or Stolen Securities...15
Section 2.08.  Cancellation......................................16
Section 2.09.  Computation of Interest...........................16
Section 2.10.  Securities in Global Form.........................16
Section 2.11.  Medium-Term Securities............................16

ARTICLE THREE.
REDEMPTION OF SECURITIES.

Section 3.01.  Redemption of Securities; Applicability of Article...18
Section 3.02.  Notice of Redemption; Selection of Securities......18
Section 3.03.  Payment of Securities Called for Redemption.......19

ARTICLE FOUR.
PARTICULAR COVENANTS OF THE CORPORATION.

Section 4.01.  Payment of Principal, Premium, Interest
               and Additional Amounts............................20
Section 4.02.  Offices for Notices and Payments, etc.............21
Section 4.03.  Provisions as to Paying Agent.....................21
Section 4.04.  Luxembourg Publications...........................22
Section 4.05.  Statement by Officers as to Default...............22
Section 4.06.  Limitation on Liens...............................22
Section 4.07.  Limitation on Sale and Lease-Back.................24
Section 4.08.  Definitions Applicable to Sections 4.06 and 4.07..24

ARTICLE FIVE.
SECURITYHOLDER LISTS AND REPORTS BY
THE CORPORATION AND THE TRUSTEE.

Section 5.01.  Securityholder Lists..............................26
Section 5.02.  Preservation and Disclosure of Lists..............26
Section 5.03.  Reports by the Corporation........................27
Section 5.04.  Reports by the Trustee............................28

ARTICLE SIX.
REMEDIES ON DEFAULT.

Section 6.01.  Events of Default.................................28
Section 6.02.  Payment of Securities on Default; Suit Therefor...30
Section 6.03.  Application of Moneys Collected by Trustee........32
Section 6.04.  Proceedings by Securityholders....................33
Section 6.05.  Remedies Cumulative and Continuing................34
Section 6.06.  Direction of Proceedings..........................34
Section 6.07.  Notice of Defaults................................35
Section 6.08.  Undertaking to Pay Costs..........................35

ARTICLE SEVEN.
CONCERNING THE TRUSTEE.

Section 7.01.  Duties and Responsibilities of Trustee............36
Section 7.02.  Reliance on Documents, Opinions, etc..............37
Section 7.03.  No Responsibility for Recitals, etc...............38
Section 7.04.  Ownership of Securities or Coupons................38
Section 7.05.  Moneys to be Held in Trust........................38
Section 7.06.  Compensation and Expenses of Trustee..............38
Section 7.07.  Officers' Certificate as Evidence.................39
Section 7.08.  Conflicting Interest of Trustee...................39
Section 7.09.  Eligibility of Trustee............................39
Section 7.10.  Resignation or Removal of Trustee.................40
Section 7.11.  Acceptance by Successor Trustee...................41
Section 7.12.  Successor by Merger, etc..........................42
Section 7.13.  Limitations on Rights of Trustee as Creditor......42

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

## ARTICLE EIGHT.
### CONCERNING THE SECURITYHOLDERS.

Section 8.01. Action by Securityholders..................................42
Section 8.02. Proof of Execution by Securityholders....................43
Section 8.03. Who Are Deemed Absolute Owners...........................44
Section 8.04. Corporation-Owned Securities Disregarded.................44
Section 8.05. Revocation of Consents; Future Securityholders Bound.....44
Section 8.06. Securities in a Foreign Currency.........................45

## ARTICLE NINE.
### SECURITYHOLDERS' MEETINGS.

Section 9.01. Purposes of Meetings.....................................45
Section 9.02. Call of Meetings by Trustee..............................46
Section 9.03. Call of Meetings by Corporation or Securityholders.......46
Section 9.04. Qualification for Voting.................................47
Section 9.05. Regulations..............................................47
Section 9.06. Voting...................................................47

## ARTICLE TEN.
### SUPPLEMENTAL INDENTURES.

Section 10.01. Supplemental Indentures without Consent of Securityholders
48
Section 10.02. Supplemental Indentures with Consent of Securityholders.49
Section 10.03. Compliance with Trust Indenture Act: Effect of
               Supplemental Indentures................................50
Section 10.04. Notation on Securities..................................51

## ARTICLE ELEVEN.
### CONSOLIDATION, MERGER, SALE OR CONVEYANCE.

Section 11.01. Corporation May Consolidate, etc., on Certain Terms.....51
Section 11.02. Successor Corporation Substituted.......................51
Section 11.03. Opinion of Counsel to be Given Trustee..................52
Section 11.04  Certificate to Trustee..................................52

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

ARTICLE TWELVE.
SATISFACTION AND DISCHARGE OF INDENTURE;
UNCLAIMED MONEYS.

Section 12.01. Discharge of Indenture.................................52
Section 12.02. Satisfaction, Discharge and Defeasance
                of Securities of any Series...........................53
Section 12.03. Deposited Moneys to be Held in Trust by Trustee........54
Section 12.04. Paying Agent to Repay Moneys Held.....................55
Section 12.05. Return of Unclaimed Moneys............................55

ARTICLE THIRTEEN.
IMMUNITY OF INCORPORATORS, STOCKHOLDERS,
OFFICERS AND DIRECTORS.

Section 13.01. Indenture and Securities Solely Corporate Obligations...55

ARTICLE FOURTEEN.
MISCELLANEOUS PROVISIONS.

Section 14.01. Benefits of Indenture Restricted to Parties and Securityholder
56
Section 14.02. Provisions Binding on Corporation's Successors.........56
Section 14.03. Addresses for Notices, etc............................56
Section 14.04. Evidence of Compliance with Conditions Precedent......56
Section 14.05. Legal Holidays........................................57
Section 14.06. Trust Indenture Act to Control........................57
Section 14.07. Execution in Counterparts.............................57
Section 14.08. New York Contract.....................................57
Section 14.09. Judgment Currency.....................................57
Section 14.10. Severability of Provisions............................58
Section 14.11. Corporation Released From Indenture Requirements Under
                Certain Circumstances................................58
Acceptance of Trust by Trustee.......................................58
Testimonium..........................................................58
Signatures and Seals.................................................59
Acknowledgments......................................................59

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

......THIS INDENTURE, dated as of the day of December, 1995 between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (hereinafter sometimes called the "Corporation"), party of the first part, and Citibank, N.A., a banking association duly incorporated and existing under the laws of the United States of America, as trustee hereunder (hereinafter sometimes called the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven).

### WITNESSETH:

WHEREAS, the Corporation deems it necessary to issue from time to time for its lawful purposes securities (hereinafter called the "Securities" or, in the singular, "Security") evidencing its unsecured indebtedness and has duly authorized the execution and delivery of this Indenture to provide for the issuance of the Securities in one or more series, unlimited as to principal amount, to bear such rates of interest, to mature at such time or times and to have such other provisions as shall be fixed as hereinafter provided; and

WHEREAS, the Corporation represents that all acts and things necessary to constitute these presents a valid Indenture and agreement according to its terms, have been done and performed, and the execution of this Indenture has in all respects been duly authorized, and the Corporation, in the exercise of legal rights and power in it vested, is executing this Indenture;

NOW, THEREFORE:

In order to declare the terms and conditions upon which the Securities are authenticated, issued and received, and in consideration of the premises, of the purchase and acceptance of the Securities by the Holders thereof and of the sum of one dollar to it duly paid by the Trustee at the execution of these presents, the receipt whereof is hereby acknowledged, the Corporation covenants and agrees with the Trustee, for the equal and proportionate benefit of the respective Holders from time to time of the Securities, as follows:

### ARTICLE ONE.
### DEFINITIONS.

SECTION 1.01 DEFINITIONS. The terms defined in this Section (except as herein otherwise expressly provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section. All other terms used in this Indenture which are defined in the Trust Indenture Act of 1939 or which are by reference therein defined in the Securities Act of 1933, as amended, shall have the meanings (except as herein otherwise expressly provided or unless the context otherwise clearly requires) assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture as originally executed. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole, including the Exhibits to this instrument, and not to any particular article, section or other subdivision. Certain terms used wholly or principally within an Article of this Indenture may be defined in that Article.

ADDITIONAL AMOUNTS:

The term "Additional Amounts" shall mean any additional amounts which are required by a Security or by or pursuant to a Board Resolution under circumstances specified therein, to be paid by the Corporation in respect of certain taxes, assessments or governmental charges imposed on certain Holders of Securities and which are owing to such Holders of Securities.

AUTHORIZED NEWSPAPER:

The term "Authorized Newspaper" shall mean a newspaper in an official language of the country of publication of general circulation in the place in connection with which the term is used. If it shall be impractical in the opinion of the Trustee to make any publication of any notice required hereby in an Authorized Newspaper, any publication or other notice in lieu thereof which is made or given with the approval of the Trustee shall constitute a sufficient publication of such notice.

BOARD OF DIRECTORS:

The term "Board of Directors" shall mean the Board of Directors of the Corporation or the Finance Committee of the Corporation or any committee established by the Board of Directors or Finance Committee.

BOARD RESOLUTION:

The term "Board Resolution" shall mean a resolution certified by the Secretary or Assistant Secretary of the Corporation to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

BUSINESS DAY:

The term "Business Day" shall mean, with respect to any Security, a day

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

● ● ● ● ● ● ● ● ●

portions thereof shall be paid and redeemed by the Corporation at the applicable redemption price, together with interest, if any, and Additional Amounts, if any, accrued thereon to the date fixed for redemption. Interest, if any (and Additional Amounts, if any), maturing on or prior to the date fixed for redemption shall continue to be payable (but without interest thereon unless the Corporation shall default in payment thereof) in the case of Coupon Securities to the bearers of the Coupons for such interest upon surrender thereof, and in the case of Registered Securities to the Holders thereof registered as such on the Security Register on the relevant record date subject to the terms and provisions of Section 2.04. At the option of the Corporation payment may be made by check to (or to the order of) the Holders of the Securities or other persons entitled thereto against presentation and surrender of such Securities.

If any Coupon Security surrendered for redemption shall not be accompanied by all appurtenant Coupons maturing after the date fixed for redemption, the surrender of such missing Coupon or Coupons may be waived by the Corporation and the Trustee, if there be furnished to each of them such security or indemnity as they may require to save each of them harmless.

Upon presentation of any Security redeemed in part only, the Corporation shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Corporation, a new Security or Securities, of authorized denominations, in aggregate principal amount equal to the unredeemed portion of the Security so presented of the same series.

ARTICLE FOUR.
PARTICULAR COVENANTS OF THE CORPORATION.

SECTION 4.01. PAYMENT OF PRINCIPAL, PREMIUM, INTEREST AND ADDITIONAL AMOUNTS. The Corporation will duly and punctually pay or cause to be paid the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on each of the Securities at the place, at the respective times and in the manner provided in the terms of the Securities and in this Indenture. The interest on Coupon Securities (together with any Additional Amounts) shall be payable only upon presentation and surrender of the several Coupons for such interest installments as are evidenced thereby as they severally mature. The interest, if any, on any temporary bearer Securities (together with any Additional Amounts) shall be paid, as to the installments of interest evidenced by Coupons attached thereto, if any, only upon presentation and surrender thereof, and, as to the other installments of interest, if any, only upon presentation of such Securities for notation thereon of the payment of such interest. The interest on Registered Securities (together with any Additional Amounts) shall be payable only to the Holders thereof and at the option of the Corporation may be paid by mailing checks for such interest payable to or upon the order of such Holders at their last addresses as they appear on the Security Register for such Securities.

SECTION 4.02. OFFICES FOR NOTICES AND PAYMENTS, ETC. As long as any of the Securities of a series remain outstanding, the Corporation will designate and maintain, in the Borough of Manhattan, The City of New York, an office or agency where the Registered Securities of such series may be presented for registration of transfer and for exchange as in this Indenture provided, an office or agency where notices and demands to or upon the Corporation in respect of the Securities of such series or of this Indenture may be served, and an office or agency where the Securities of such series may be presented for payment. The Corporation will give to the Trustee notice of the location of each such office or agency and of any change in the location thereof. In case the Corporation shall fail to maintain any such office or agency in the Borough of Manhattan, The City of New York, or shall fail to give such notice of the location or of any change in the location thereof, presentations may be made and notices or demands may be served at the corporate trust office of the Trustee in the Borough of Manhattan, The City of New York, and the Corporation hereby appoints the Trustee as its agent to receive all such presentations, notices and demands.

If Unregistered Securities of any series are outstanding, the Corporation will maintain or cause the Trustee to maintain one or more agencies in a city or cities located outside the United States (including any city in which such an agency is required to be maintained under the rules of any stock exchange on which the Securities of such series are listed) where such Unregistered Securities, and Coupons, if any, appertaining thereto may be presented for payment. No payment on any Unregistered Security or Coupon will be made upon presentation of such Unregistered Security or Coupon at an agency of the Corporation within the United States nor will any payment be made by transfer to an account in, or by mail to an address in, the United States, except, at the option of the Corporation, if the Corporation shall have determined that, pursuant to applicable United States laws and regulations then in effect such payment can be made without adverse tax consequences to the Corporation. Notwithstanding the foregoing, payments in U.S. Dollars with respect to Unregistered Securities of any series and Coupons appertaining thereto which are payable in U.S. Dollars may be made at an agency of the Corporation maintained in the Borough of Manhattan, The City of New York if such payment in U.S. Dollars at each agency maintained by the Corporation outside the United States for payment on such Unregistered Securities is illegal or effectively precluded by exchange controls or other similar restrictions.

The Corporation hereby initially designates Citibank, N.A., located at its Corporate Trust Office as the Security Registrar and as the office or agency of the Corporation in the Borough of Manhattan, The City of New York, where the Securities may be presented for payment and, in the case of Registered

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

Securities, for registration of transfer and for exchange as in this Indenture provided and where notices and demands to or upon the Corporation in respect of the Securities of any series or of this Indenture may be served.

SECTION 4.03. PROVISIONS AS TO PAYING AGENT. (a) Whenever the Corporation shall appoint a paying agent other than the Trustee with respect to the Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section:

(1) that it will hold sums held by it as such agent for the payment of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series in trust for the benefit of the Holders of the Securities of such series, or Coupons appertaining thereto, as the case may be, entitled thereto and will notify the Trustee of the receipt of sums to be so held,

(2) that it will give the Trustee notice of any failure by the Corporation (or by any other obligor on the Securities of such series) to make any payment of the principal of (or premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series when the same shall be due and payable, and

(3) at any time during the continuance of any such default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such paying agent.

(b) If the Corporation shall act as its own paying agent, it will, on or before each due date of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Securities of such series, set aside, segregate and hold in trust for the benefit of the Holders of the Securities of such series entitled thereto a sum sufficient to pay such principal (and premium if any), interest, if any, or Additional Amounts, if any, so becoming due. The Corporation will promptly notify the Trustee of any failure to take such action.

(c) Anything in this Section to the contrary notwithstanding, the Corporation may, at any time, for the purpose of obtaining a satisfaction and discharge with respect to one or more or all series of Securities hereunder, or for any other reason, pay or cause to be paid to the Trustee all sums held in trust for such series by it or any paying agent hereunder as required by this Section, such sums to be held by the Trustee upon the trusts herein contained.

(d) Anything in this Section to the contrary notwithstanding, the agreement to hold sums in trust as provided in this Section is subject to the provisions of Sections 12.03 and 12.04.

SECTION 4.04. LUXEMBOURG PUBLICATIONS. In the event of the publication of any notice pursuant to Section 3.02, 6.07, 7.10, 7.11, 9.02, 10.02 or 12.05, the party making such publication shall also, to the extent that notice is required so to be given to Holders of Securities of any series by applicable Luxembourg law or stock exchange regulation, make a similar publication the same number of times in Luxembourg.

SECTION 4.05. STATEMENT BY OFFICERS AS TO DEFAULT. The Corporation will deliver to the Trustee, on or before a date not more than four months after the end of each fiscal year of the Corporation (which, on the date of execution hereof, ends on December 31) ending after the date hereof, commencing with the fiscal year ended in 1995, an Officers' Certificate, stating whether or not to the best knowledge of the signers thereof the Corporation is in default in the performance or observance of any of the terms, provisions and conditions of this Indenture to be performed or observed by it and, if the Corporation shall be in default, specifying all such defaults and the nature thereof of which they may have knowledge.

SECTION 4.06. LIMITATIONS ON LIENS. For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of the Corporation or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary (whether such Principal Domestic Manufacturing Property, shares of stock or indebtedness are now owned or hereafter acquired) without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities (together with, if the Corporation shall so determine, any other indebtedness of the Corporation or such Manufacturing Subsidiary ranking equally with the Securities and then existing or thereafter created) shall be secured equally and ratably with such Debt, unless the aggregate amount of Debt issued or assumed and so secured by Mortgages, together with all other Debt of the Corporation and its Manufacturing Subsidiaries which (if originally issued or assumed at such time) would otherwise be subject to the foregoing restrictions, but not including Debt permitted to be secured under clauses (i) through (vi) of the immediately following paragraph, does not at the time exceed 20% of the stockholders' equity of the Corporation and its consolidated subsidiaries, as determined in accordance with generally accepted accounting principles and shown on the audited consolidated balance sheet contained in the latest published annual report to the stockholders of the Corporation.

The above restrictions shall not apply to Debt secured by (i) Mortgages on property, shares of stock or indebtedness of any corporation existing at the time such corporation becomes a Manufacturing Subsidiary; (ii) Mortgages on

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

property existing at the time of acquisition of such property by the Corporation
or a Manufacturing Subsidiary, or Mortgages to secure the payment of all or any
part of the purchase price of such property upon the acquisition of such
property by the Corporation or a Manufacturing Subsidiary or to secure any Debt
incurred prior to, at the time of, or within 180 days after, the later of the
date of acquisition of such property and the date each property is placed in
service, for the purpose of financing all or any part of the purchase price
thereof, or Mortgages to secure any Debt incurred for the purpose of financing
the cost to the Corporation or a Manufacturing Subsidiary of improvements to
such acquired property; (iii) Mortgages securing Debt of a Manufacturing
Subsidiary owing to the Corporation or to another Subsidiary; (iv) Mortgages on
property of a corporation existing at the time such corporation is merged or
consolidated with the Corporation or a Manufacturing Subsidiary or at the time
of a sale, lease or other disposition of the properties of a corporation as an
entirety or substantially as an entirety to the Corporation or a Manufacturing
Subsidiary; (v) Mortgages on property of the Corporation or a Manufacturing
Subsidiary in favor of the United States of America or any State thereof, or any
department, agency or instrumentality or political subdivision of the United
States of America or any State thereof, or in favor of any other country, or any
political subdivision thereof, to secure partial, progress, advance or other
payments pursuant to any contract or statute or to secure any indebtedness
incurred for the purpose of financing all or any part of the purchase price or
the cost of construction of the property subject to such Mortgages; or (vi) any
extension, renewal or replacement (or successive extensions, renewals or
replacements) in whole or in part of any Mortgage referred to in the foregoing
clauses (i) to (v), inclusively; PROVIDED, HOWEVER, that the principal amount of
Debt secured thereby shall not exceed by more than 115% the principal amount of
Debt so secured at the time of such extension, renewal or replacement and that
such extension, renewal or replacement shall be limited to all or a part of the
property which secured the Mortgage so extended, renewed or replaced (plus
improvements on such property).

SECTION 4.07. LIMITATION ON SALE AND LEASE-BACK. For the benefit of the
Securities, the Corporation will not, nor will it permit any Manufacturing
Subsidiary to, enter into any arrangement with any person providing for the
leasing by the Corporation or any Manufacturing Subsidiary of any Principal
Domestic Manufacturing Property owned by the Corporation or any Manufacturing
Subsidiary on the date that the Securities are originally issued (except for
temporary leases for a term of not more than five years and except for leases
between the Corporation and a Manufacturing Subsidiary or between Manufacturing
Subsidiaries), which property has been or is to be sold or transferred by the
Corporation or such Manufacturing Subsidiary to such person, unless either (i)
the Corporation or such Manufacturing Subsidiary would be entitled, pursuant to
the provisions of the covenant on limitation on liens described above, to issue,
assume, extend, renew or replace Debt secured by a Mortgage upon such property
equal in amount to the Attributable Debt in respect of such arrangement without
equally and ratably securing the Securities; provided, however, that from and
after the date on which such arrangement becomes effective the Attributable Debt
in respect of such arrangement shall be deemed for all purposes under the
covenant on limitation on liens described in Section 4.06 and this covenant on
limitation on sale and lease-back to be Debt subject to the provisions of the
covenant on limitation on liens described above (which provisions include the
exceptions set forth in clause (i) through (vi) of such covenant), or (ii) the
Corporation shall apply an amount in cash equal to the Attributable Debt in
respect of such arrangement to the retirement (other than any mandatory
retirement or by way of payment at maturity), within 180 days of the effective
date of any such arrangement, of Debt of the Corporation or any Manufacturing
Subsidiary (other than Debt owned by the Corporation or any Manufacturing
Subsidiary) which by its terms matures at or is extendible or renewable at the
option of the obligor to a date more than twelve months after the date of the
creation of such Debt.

SECTION 4.08. DEFINITIONS APPLICABLE TO SECTIONS 4.06 AND 4.07. The
following definitions shall be applicable to the covenants contained in Sections
4.06 and 4.07 hereof:

(a)    "Attributable Debt" means, at the time of determination as to any
lease, the present value (discounted at the actual rate, if
stated, or, if no rate is stated, the implicit rate of interest
of such lease determination as determined by the chairman,
president, any vice chairman, any vice president, the treasurer
or any assistant treasurer of the Corporation), calculated using
the interval of scheduled rental payments under such lease, of
the obligation of the lessee for net rental payments during the
remaining term of such lease (excluding any subsequent renewal or
other extension options held by the lessee). The term "net
rental payments" means, with respect to any lease for any period,
the sum of the rental and other payments required to be paid in
such period by the lessee thereunder, but not including, however,
any amounts required to be paid by such lessee (whether or not
designated as rental or additional rental) on account of
maintenance and repairs, insurance, taxes, assessments, water
rates, indemnities or similar charges required to be paid by such
lessee thereunder or any amounts required to be paid by such
lessee thereunder contingent upon the amount of sales, earnings
or profits or of maintenance and repairs, insurance, taxes,
assessments, water rates, indemnities or similar charges;
provided, however, that in the case of any lease which is
terminable by the lessee upon the payment of a penalty in an

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

amount which is less than the total discounted net rental payments required to be paid from the later of the first date upon which such lease may be so terminated and the date of the determination of net rental payments, "net rental payments" shall include the then current amount of such penalty from the later of such two dates, and shall exclude the rental payments relating to the remaining period of the lease commencing with the later of such two dates.

(b)  "Debt" means notes, bonds, debentures or other similar evidences of indebtedness for money borrowed.

(c)  "Manufacturing Subsidiary" means any Subsidiary (A) substantially all the property of which is located within the continental United States of America, (B) which owns a Principal Domestic Manufacturing Property and (C) in which the Corporation's investment, direct or indirect and whether in the form of equity, debt, advances or otherwise, is in excess of U.S.$2,500,000,000 as shown on the books of the Corporation as of the end of the fiscal year immediately preceding the date of determination; PROVIDED, HOWEVER, that "Manufacturing Subsidiary" shall not include Electronic Data Systems Corporation and its Subsidiaries, Hughes Electronics Corporation and its Subsidiaries, General Motors Acceptance Corporation and its Subsidiaries (or any corporate successor of any of them) or any other Subsidiary which is principally engaged in leasing or in financing installment receivables or otherwise providing financial or insurance services to the Corporation or others or which is principally engaged in financing the Corporation's operations outside the continental United States of America.

(d)  "Mortgage" means any mortgage, pledge, lien, security interest, conditional sale or other title retention agreement or other similar encumbrance.

(e)  "Principal Domestic Manufacturing Property" means any manufacturing plant or facility owned by the Corporation or any Manufacturing Subsidiary which is located within the continental United States of America and, in the opinion of the Board of Directors, is of material importance to the total business conducted by the Corporation and its consolidated affiliates as an entity.

(f)  "Subsidiary" means any corporation of which at least a majority of the outstanding stock having by the terms thereof ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether or not at the time stock of any other class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the Corporation, or by one or more Subsidiaries, or by tha Corporation and one or more Subsidiaries.

## ARTICLE FIVE.
## SECURITYHOLDER LISTS AND REPORTS BY THE
## CORPORATION AND THE TRUSTEE.

SECTION 5.01.  SECURITYHOLDER LISTS.  The Corporation covenants and agrees that it will furnish or cause to be furnished to the Trustee with respect to the Securities of each series:

(a) semiannually, not later than each Interest Payment Date (in the case of any series having semiannual Interest Payment Dates) or not later than the dates determined pursuant to Section 2.01 (in the case of any series not having semiannual Interest Payment Dates) a list, in such form as the Trustee may reasonably require, of the names and addresses of the Holders of Securities of such series as of the Regular Record Date (or as of such other date as may be determined pursuant to Section 2.01 for such series) therefor, and

(b) at such other times as the Trustee may request in writing, within thirty days after receipt by the Corporation of any such request, a list in such form as the Trustee may reasonably require of the names and addresses of the Holders of Securities of a particular series specified by the Trustee as of a date not more than fifteen days prior to the time such information is furnished; provided, however, that if and so long as the Trustee shall be the Security Registrar any such list shall exclude names and addresses received by the Trustee in its capacity as Security Registrar, and if and so long as all of the Securities of any series are Registered Securities, such list shall not be required to be furnished.

SECTION 5.02.  PRESERVATION AND DISCLOSURE OF LISTS.  (a) The Trustee shall preserve, in as current a form as is reasonably practicable, all information as to the names and addresses of the Holders of each series of Securities (i) contained in the most recent list furnished to it as provided in Section 5.01, (ii) received by the Trustee in its capacity as Security Registrar or a Paying Agent, or (iii) filed with it within the preceding two years pursuant to Section 5.04(c). The Trustee may destroy any list furnished to it as provided in Section 5.01 upon receipt of a new list so furnished.

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

• • • • • • • • •

of the Securities and Coupons.

## ARTICLE FOURTEEN.

### MISCELLANEOUS PROVISIONS.

SECTION 14.01. BENEFITS OF INDENTURE RESTRICTED TO PARTIES AND SECURITYHOLDERS. Nothing in this Indenture or in the Securities or Coupons, expressed or implied, shall give or be construed to give to any person, firm or corporation, other than the parties hereto and their successors and the Holders of the Securities or Coupons, any legal or equitable right, remedy or claim under this Indenture or under any covenant or provision herein contained, all such covenants and provisions being for the sole benefit of the parties hereto and their successors and of the Holders of the Securities or Coupons.

SECTION 14.02. PROVISIONS BINDING ON CORPORATION'S SUCCESSORS. All the covenants, stipulations, promises and agreements in this Indenture contained by or on behalf of the Corporation shall bind its successors and assigns, whether so expressed or not.

SECTION 14.03. ADDRESSES FOR NOTICES, ETC. Any notice or demand which by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders of Securities to or on the Corporation may be given or served by being deposited postage prepaid first class mail in a post office letter box addressed (until another address is filed by the Corporation with the Trustee), as follows: General Motors Corporation, 767 Fifth Avenue, New York, New York 10153. Any notice, direction, request or demand by any Securityholder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or made in writing at its Corporate Trust Office, which is at the date of this Indenture, 120 Well Street, 13th Floor, New York, New York 10043, except that for purposes of presentation of Securities for payment or registration of transfer or exchange, such term means the office or agency which at any particular time its corporate agency business shall be conducted, which at the date of this Indenture is 111 Wall Street, New York, New York 10043.

SECTION 14.04. EVIDENCE OF COMPLIANCE WITH CONDITIONS PRECEDENT. Upon any application or demand by the Corporation to the Trustee to take any action under any of the provisions of this Indenture, the Corporation shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent have been complied with, except that in the case of any such application or demand as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or demand, no additional certificate or opinion need be furnished.

Each certificate or opinion provided for in this Indenture and delivered to the Trustee with respect to compliance with a condition or covenant provided for in this Indenture shall include (1) a statement that the person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

SECTION 14.05. LEGAL HOLIDAYS. In any case where the date of maturity of any interest, premium or Additional Amounts on or principal of the Securities or the date fixed for redemption of any Securities shall not be a Business Day in a city where payment thereof is to be made, then payment of any interest, premium or Additional Amounts on, or principal of such Securities need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date.

SECTION 14.06. TRUST INDENTURE ACT TO CONTROL. If and to the extent that any provision of this Indenture limits, qualifies or conflicts with another provision included in this Indenture by operation of Sections 310 to 317, inclusive, of the Trust Indenture Act of 1939 (an "incorporated provision"), such incorporated provision shall control.

SECTION 14.07. EXECUTION IN COUNTERPARTS. This Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

SECTION 14.08. NEW YORK CONTRACT. This Indenture and each Security shall be deemed to be a contract made under the laws of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of said state, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Indenture shall be heard in a federal or state court located in the State of New York.

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

SECTION 14.09.  JUDGMENT CURRENCY.  The Corporation agrees, to the fullest extent that it may  effectively do so under  applicable law, that (a) if for the purposes of  obtaining  judgment in any court it is necessary to convert the sum due in respect of the  principal of or interest on the  Securities of any series (the "Required  Currency")  into a currency in which a judgment will be rendered (the "Judgment  Currency"),  the rate of exchange used shall be the rate at which in accordance  with normal banking  procedures the Trustee could purchase in The City of New York the Required Currency with the Judgment Currency on the date on which final unappealable judgment is entered,  unless such day is not a New York Banking  Day,  then,  to the extent  permitted by applicable  law, the rate of exchange  used  shall be the rate at which in  accordance  with normal  banking procedures  the  Trustee  could  purchase  in The City of New York the  Required Currency  with the Judgment  Currency on the New York Banking Day  preceding the day on which final  unappealable  judgment  is entered  and (b) its  obligations under this Indenture to make payments in the Required  Currency (i) shall not be discharged or satisfied by any tender,  or any recovery pursuant to any judgment (whether or not entered in  accordance  with subsection  (a)),  in any currency other  than the  Required  Currency,  except to the extent  that such  tender or recovery shall result in the actual receipt, by the payee, of the full amount of the Required Currency expressed to be payable in respect of such payments,  (ii) shall be enforceable  as an  alternative  or additional  cause of action for the purpose of recovering in the Required Currency the amount, if any, by which such actual  receipt shall fall short of the full amount of the Required  Currency so expressed  to be payable  and (iii)  shall not be  affected  by  judgment  being obtained  for any  other sum due  under  this Indenture.  For  purposes  of the foregoing,  "New York Banking Day" means any day except a Saturday,  Sunday or a legal holiday in The City of New York or a day on which banking  institutions in The City of New York are  authorized  or required by law or  executive  order to close.

SECTION 14.10 SEVERABILITY OF PROVISIONS.  Any prohibition,  invalidity or unenforceability  of any provision of this Indenture in any  jurisdiction  shall not invalidate or render  unenforceable the remaining  provisions hereto in such jurisdiction and shall not invalidate or render unenforceable such provisions in any other jurisdiction.

SECTION 14.11  CORPORATION  RELEASED  FROM  INDENTURE  REQUIREMENTS  UNDER CERTAIN  CIRCUMSTANCES.  Whenever in this  Indenture the  Corporation  shall be required  to do or not to do anything  so long as any of the  Securities  of any series shall be Outstanding,  the Corporation  shall,  notwithstanding  any such provision,  not be  required  to  comply with such  provisions  if it shall be entitled  to have  this  Indenture  satisfied  and  discharged  pursuant  to  the provisions  hereof,  even  though  in  either  case  the  Holders  of any of the Securities  of that series shall have  failed to present and  surrender  them for payment pursuant to the terms of this Indenture.

Citibank, N.A., the party of the second part, hereby accepts the trusts in this Indenture declared and provided,  upon the terms and conditions hereinabove set forth.

IN WITNESS WHEREOF,  GENERAL MOTORS  CORPORATION,  the party of the first part, has caused this Indenture to be signed and acknowledged by its Chairman of the Board or one of its Vice  Chairmen of the Board or its  President  or one of its Executive Vice Presidents or one of its Senior Vice Presidents or one of its Vice Presidents or its Treasurer, and its Corporate seal to be affixed hereunto, and the same to be attested by its  Secretary  or an  Assistant  Secretary; and CITIBANK,  N.A.,  the party of the second part,  has caused this Indenture to be signed, and its

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

corporate seal to be affixed hereunto, and the same to be attested by its duly
authorized officers, all as of the day and year first above written.


[Corporate Seal]                          GENERAL MOTORS CORPORATION


Attest:                                   By:_____



[Corporate Seal]                          CITIBANK, N.A.

Attest:                                   By:_____


STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )


          On the ____day of December, 1995 before me personally came
_____, to me known, who, being by me duly sworn, did depose and say
that                     he/she            resides                      at
                                                                       , that
he/she is the _____ of General Motors Corporation, one of the
corporations described in and which executed the foregoing instrument; that
he/she knows the seal of said Corporation; that the seal affixed to said
instrument is such Corporate seal; that it was so

Source: GENERAL MOTORS CORP, S-3, November 14, 1995

affixed by authority of the Board of Directors of said Corporation, and that he/she signed his/her name thereto by like authority.

[SEAL]


Notary Public


STATE OF NEW YORK      )
                       ) ss.
COUNTY OF NEW YORK     )


        On the day of    December,  1995  before me    personally  came
_____, to me known,  who,  being by me duly sworn,  did depose and say
that              he/she                      resides                  at
_____, that
he/she is a _____ of Citibank,  N.A., one of the corporations
described in and which executed the foregoing instrument; that he/she knows the
seal of said  corporation,  that the seal  affixed  to said  instrument  is such
corporate seal; that it was so affixed by authority of the Board of Directors of
said corporation, and that he/she signed his/her name thereto by like authority.

[SEAL]


Notary Public

• • • • • • • • •

GENERAL MOTORS CORPORATION

and

CITIBANK, N.A. as

Trustee

FOURTH SUPPLEMENTAL INDENTURE

Dated as of November 5, 2004

SUPPLEMENTAL INDENTURE

FOURTH SUPPLEMENTAL INDENTURE, dated as of November 5, 2004, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and CITIBANK, N.A., a national banking association duly organized and existing under the laws of the United States of America (the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below)).

WITNESSETH:

WHEREAS, the Company and the Trustee have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of the date hereof, and the Third Supplemental Indenture, dated as of the date hereof. Terms used in this Fourth Supplemental Indenture which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, in July 2003, pursuant to the Indenture, the Company issued $4.3 billion of 6.25 percent Series C Convertible Senior Debentures due July 15, 2033 (the "Series C Debentures").

WHEREAS, the provisions of the Series C Debentures are set forth in the Global Note evidencing the Series C Debentures.

WHEREAS, the terms of the Series C Debentures permit the Company to elect (in its sole discretion) to deliver cash or Company common stock, or a combination of cash and Company common stock, upon certain conversion events and repurchase events specified in the Series C Debentures.

WHEREAS, the Company desires to limit in certain respects its rights to elect to deliver Company common stock in connection with any such future conversion and repurchase events with respect to the Series C Debentures.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein.

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. Section 1 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. The following two sentences shall be added at the end of the second paragraph of Section 1 of the Series C Debentures as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all such conversions of Series C Debentures, the Company shall make the election referenced above to pay cash, in lieu of the issuance of shares of Common Stock, with respect to a number of Series C Debentures being converted as of any Conversion Date that is at least equal to the quotient determined by dividing (i) the aggregate principal amount of all Series C Debentures being converted as of such Conversion Date by (ii) the product of (A) the Conversion Rate multiplied by (B) the Closing Sale Price of the Common Stock on such Conversion Date, rounded up to the nearest whole number. For the avoidance of doubt, the Company retains the right to pay cash in lieu of shares of Common Stock, or to deliver shares of Common Stock with respect to any other Series C Debentures being converted as of any such Conversion Date."

Section 2. Section 2 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new third sentence to the second paragraph of Section 2 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all Principal Value Conversions of Series C Debentures, the Company shall opt to pay only cash, in lieu of the issuance of shares of Common Stock."

Section 3. Section 5 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new second sentence to the second paragraph of Section 5 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series C Debentures pursuant to this Section 5, the Company shall elect to pay for such Series C Debentures only in cash, subject to the conditions set forth herein. "

Section 4. Section 6 of each outstanding Series C Debenture and all Series C Debentures hereafter issued (as a result of transfer, further issuances or otherwise) shall hereby be irrevocably amended as provided in this Section, without any further action on the part of the Company, the Trustee or any holder of Series C Debentures. A new second sentence to the third paragraph of Section 6 shall be added as follows:

"Notwithstanding any other provision herein to the contrary, in connection with all purchases of Series C Debentures pursuant to this Section 6, the Company shall elect to pay for such Series C Debentures only in cash, subject to the conditions set forth herein. "

Section 5. Recitals. The recitals contained herein shall be taken as the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Fourth Supplemental Indenture.

Section 6. Counterparts. This Fourth Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 7. New York Contract. This Fourth Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Fourth Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

*  *  *  *  *

CHICAGO_1163250_1

IN WITNESS WHEREOF, the parties hereto have caused this Fourth Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____
Name: Walter G. Borst
Title: Treasurer

CITIBANK, N.A., as Trustee

By:_____
Name: Wafaa Orfy
Title: Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Fourth Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____
Name: Walter G. Borst
Title: Treasurer

CITIBANK, N.A., as Trustee

By:_____
Name: Wafaa Orfy
Title: Vice President

## GENERAL MOTORS CORPORATION

### and

### WILMINGTON TRUST COMPANY as

### Trustee

### SUPPLEMENTAL INDENTURE

### Dated as of August 13, 2007

SUPPLEMENTAL INDENTURE, dated as of August 13, 2007, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and WILMINGTON TRUST COMPANY, a banking corporation duly organized and existing under the laws of the State of Delaware (the "Trustee"). The term "Trustee" shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below).

### WITNESSETH:

WHEREAS, the Company and the Citibank, N.A., as predecessor to the Trustee, have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of November 5, 2004, the Third Supplemental Indenture, dated as of November 5, 2004 and the Fourth Supplemental Indenture, dated as November 5, 2004. Terms used in this Supplemental Indenture that are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, Appendix A hereto identifies approximately $12.46 billion in U.S. dollar denominated non-convertible debt Securities, represented by 13 series of Securities, issued and outstanding under the Indenture.

WHEREAS, each series of Securities identified on Appendix A hereto was issued in the form of Global Securities (collectively, the "Global Notes").

WHEREAS, each of the Global Notes is subject to the Indenture and all indentures supplemental thereto, each Global Note containing a paragraph as follows:

"This Global Bond is one of a duly authorized issue of debentures, notes, bonds or other evidences of indebtedness of the Company (hereinafter called the "Securities") of the series hereinafter specified, all issued or to be issued under and pursuant to an indenture dated as of December 7, 1995 (herein called the "Indenture"), duly executed and delivered by the Company to Citibank, N.A. (herein called the "Trustee") to which Indenture and all indentures supplemental thereto reference is hereby made for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Securities;"

WHEREAS, certain provisions of the Indenture are described in each of the Global Notes.

WHEREAS, the first sentence of the fourth paragraph of each of the Global Notes contains a description of the vote of Holders required by Section 10.02 of the Indenture to enter into certain supplemental indentures, the text of which, up to the first semi-colon, is as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than 66 2/3% in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or

changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

WHEREAS, the Global Notes incorrectly summarize Section 10.02 of the Indenture with respect to the percentage in aggregate principal amount of Securities outstanding required to execute such supplemental indentures, the Indenture expressly providing for approval by a majority rather than 66 2/3% in aggregate principal amount of Securities outstanding, the text of the first paragraph of Section 10.02, up to the first semi-colon, being as follows:

"With the consent (evidenced as provided in Section 8.01) of the Holders of not less than a majority in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any Coupons appertaining to such Securities;"

WHEREAS, the Company desires to correct this description of the Indenture in the Global Notes.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein, which section provides that the Company may enter into a supplemental indenture:

"to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee; or to make such other provisions in regard to matters or questions arising under this Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any Coupons appertaining to such Securities;"

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1.    The first sentence of the fourth paragraph of each of the Global Notes (or other applicable portion) shall be and hereby is amended, without any further action on the part of the Company, the Trustee or the Holder of any Global Note, by deleting the phrase "66 2/3%" contained therein and replacing it with the phrase "a majority," so that the paragraph, up to the first semi-colon, shall read as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than a majority in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

Section 2.    Recitals. The recitals contained herein shall be taken as the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Supplemental Indenture.

Section 3.    Counterparts. This Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

Section 4.  New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:

Name:

Title:


WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as
Trustee

By:

Name:

Title:

Section 4. New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

*  *  *  *  *

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

GENERAL MOTORS CORPORATION

By:_____
Name:
Title:

WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as
Trustee

By:_____
Name:
Title:

Geoffrey J. Lewis
Financial Services Officer

## <u>Appendix A</u>

6 3/8% Notes due May 1, 2008

7.20% Notes due January 15, 2011

7.125% Senior Notes due July 15, 2013

7.70% Debentures due April 15, 2016

8.250% Debentures due July 15, 2023

8.10% Debentures due June 15, 2024

6 3/4% Debentures due May 1, 2028

8.375% Debentures due July 15, 2033

7.375% Senior Notes due May 15, 2048

7.25% Quarterly Interest Bonds due April 15, 2041

7.50% Senior Notes due July 1, 2044

7.375% Senior Notes due May 23, 2048

7.25% Senior Notes due February 15, 2052

-A-1-