1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


GENERAL MOTORS CORPORATION, et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - - -x


                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York


                August 18, 2009

                9:46 AM




B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1   Application of Debtors For An Order Pursuant To Sections 327(a)

2   And 328(a) Of The Bankruptcy Code And Bankruptcy Rule 2014(a)

3   Authorizing The Employment And Retention Of Evercore Group,

4   L.L.C. As Investment Banker and Financial Advisor for the

5   Debtors Nunc Pro Tune To the Petition Date - Status Conference

6

7   Motion of Debtors for Entry of an Order Pursuant to 11 U.S.C.

8   Sections 105 and 363 (A) Establishing Procedures for the

9   Disposition of De Minimis Assets, and (B) Authorizing the

10  Debtors to (i) Pay Related Fees, and (ii) Assume, Assume and

11  Assign, or Reject Related Executory Contracts or Unexpired

12  Leases

13

14  Motion of Debtors for Entry of an Order Pursuant to Bankruptcy

15  Rules 9006(b) and 9027 Enlarging the Time Within Which to File

16  Notices of Removal of Related Proceedings

17

18  Motion of Debtors to Strike the Declaration of Oliver Addison

19  Parker from his Designation of the Record and Issues on Appeal

20

21  Motion of Debtors for Entry of Order Granting Additional Time

22  to File Reports of Financial Information or to Seek

23  Modification of Reporting Requirements Pursuant to Bankruptcy

24  Rule 2015.3

25

3

1    Application to Employ FTI Consulting, Inc. Application of

2    Official Committee of Unsecured Creditors for Entry of Order

3    Authorizing the Retention and Employment of FTI Consulting,

4    Inc., as its Financial Advisor, Nunc Pro Tunc to June 3, 2009

5

6    Motion of Debtors for Entry of Order Pursuant to 11 U.S.C.

7    Section 363 Authorizing the Debtors to Amend the Terms of Their

8    Engagement Letter With AP Services, LLC

9

10   Debtors' Fifth Omnibus Motion Pursuant to 11 U.S.C Section 365

11   to Reject Certain Executory Contracts

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dena Page

4

APPEARANCES:

WEIL, GOTSHAL & MANGES LLP

      Attorneys for Debtors, Motors Liquidation Company,

       f/k/a General Motors

      767 Fifth Avenue

      New York, NY 10153


BY:   STEPHEN KAROTKIN, ESQ.

      RONIT J. BERKOVICH, ESQ.



KRAMER LEVIN NAFTALIS & FRANKEL LLP

      Attorneys for Official Creditors' Committee

      1177 Avenue of the Americas

      New York, NY 10036


BY:   AMY CATON, ESQ.

      LAUREN M. MACKSOUD, ESQ.

5

1

2    DAY PITNEY LLP

3         Attorneys for IDB Leasing, Inc.

4         7 Times Square

5         New York, NY 10036

6

7    BY:   AMISH R. DOSHI, ESQ.

8

9

10   SCHNADER HARRISON SEGAL & LEWIS LLP

11        Attorneys for Ad Hoc Committee for Consumer Victims

12        140 Broadway

13        Suite 3100

14        New York, NY 10005

15

16   BY:   BENJAMIN P. DEUTSCH, ESQ.

17

18

19   UNITED STATES ATTORNEY'S OFFICE

20        86 Chambers Street

21        3rd Floor

22        New York, NY 10007

23

24   BY:   DAVID S. JONES, AUSA

25

6

1

2   UNITED STATES DEPARTMENT OF JUSTICE

3   OFFICE OF THE UNITED STATES TRUSTEE

4        Attorneys for the Trustee

5        33 Whitehall Street

6        21st Floor

7        New York, NY 10004

8

9   BY:   ANDREW D. VELEZ-RIVERA, ESQ.

10

11

12   OLIVER ADDISON PARKER, IN PROPRIA PERSONA

13        Interested Party

14        (TELEPHONICALLY)

15

16

17

18

19

20

21

22

23

24

25

7

1                    P R O C E E D I N G S

2          THE COURT:  We have General Motors.  Do I have some

3    lawyers for General Motors, here?

4          MR. PARKER:  Yes, Judge, this is Oliver Parker.

5          THE COURT:  All right.

6          MR. PARKER:  I'm here with an item on the docket.

7          THE COURT:  Yes, Mr. Parker, just a minute, please.

8          MR. PARKER:  Sure.

9          THE COURT:  Mr. Karotkin?

10          MR. KAROTKIN:  Yes, Your Honor.

11          THE COURT:  You're appearing for the debtors?

12          MR. KAROTKIN:  Yes, sir.  Stephen Karotkin, Weil,

13    Gotshal & Manges for the debtors.  Sorry to be a couple of

14    minutes late.  We were outside discussing a couple of matters.

15    Would you like to proceed in the order of the agenda, sir?

16          THE COURT:  Whatever you prefer.

17          MR. KAROTKIN:  Okay, the first item, Your Honor, is

18    the application to retain the firm of Evercore Group, LLC, as

19    investment banker and financial advisor.  I believe, as we

20    advised chambers, last week -- excuse me -- the creditors'

21    committee has requested to take discovery in connection with

22    this application.  And consistent with your court rules, we

23    would like to set it down for an evidentiary hearing --

24          THE COURT:  Okay.

25          MR. KAROTKIN:  -- sometime in September, subject, of

8

1    course, to your availability.

2         THE COURT:  All right.  I can't give you the date off

3    the bench.  I'm going to have to consult Ms. Blum.  You and the

4    creditors' committee and anyone else who wants to weigh in on

5    this should caucus with her, find out what's available, find

6    out how much trial time you need, and we'll take it from there.

7         MR. KAROTKIN:  Okay, we will do that, sir.  The next

8    item will be handled by my colleague, Ms. Berkovich.

9         THE COURT:  Was that Berkovich?

10        MS. BERKOVICH:  Yes, sir.

11        THE COURT:  Thank you, good morning.

12        MS. BERKOVICH:  Good morning, Your Honor.  Ronit

13   Berkovich, Weil, Gotshal & Manges for the debtor, Motors

14   Liquidation Company.  I'll be handling docket number 3478,

15   which is the debtor's motion for approval of procedures to sell

16   de minimis assets.  The debtors received four formal objections

17   to the motion and several informal objections and inquiries.

18   Debtors have been able to engage in discussion --

19        THE COURT:  Pull the microphone closer to you, so I

20   can hear you over the air conditioning system, please.

21        MS. BERKOVICH:  The debtors have had discussions with

22   all of those parties and have been able to resolve all of the

23   objections and the concerns other than those raised in the

24   objection of IDB Leasing.  The debtors have made changes to the

25   proposed order to resolve the concerns of all of the objectors.

9

1    IDB Leasing is objecting on the basis that they own the

2    property that they're leasing to the debtors, and that the

3    debtors cannot sell property they do not own

4            THE COURT:  Yeah, that seemed to have a surface

5    appeal.  Is there something I'm missing?

6            MS. BERKOVICH:  Well, the debtors are not seeking to

7    sell any property that they don't own.  The order does not

8    permit them to do so, and so the objection has no merit.

9            THE COURT:  Then why couldn't you resolve it?

10           MS. BERKOVICH:  We explained to IDB Leasing that

11   there's nothing in the order that would allow us to sell

12   property that the debtors don't own or to otherwise avoid the

13   requirements of Section 365 relating to the assumption and

14   assignment of leases.  But we were unable to resolve it, and we

15   don't understand the basis of the objection.

16           THE COURT:  Well, let me hear from counsel for IDB

17   Leasing.

18           MR. DOSHI:  Thank you, Your Honor.  For the record,

19   Amish Doshi with Day Pitney on behalf of IDB Leasing, Inc.

20   Your Honor, one of the issues that was raised was the precisely

21   mentioned and the one that Your Honor picked up.  This is

22   leased equipment; they can't sell it.  The language in the

23   order is very broad; all it says is assets.  We merely ask for

24   a representation in the order that, pursuant to these sales

25   procedures, they're not going to sell any leased property.  If

10

1     they want to sell property owned by the debtor, that was fine,

2     and that was the point of contention as set forth in our

3     papers.  This is leased equipment, so they can't sell it.  They

4     have to comply with 11 U.S.C. 365.

5          And the other two points, I'm not sure if they're

6     resolved or not, but the second point we have raised was to the

7     extent that the notice was going to be sent, it was going to be

8     on ten calendar days.  I was informed by counsel that, based on

9     some other parties' objections, as well, they're changing that

10    to ten business days.  That would be fine, Your Honor.

11         And the third point was, which I am informed is not

12    resolved, as well, which is that we had indicated that to the

13    extent that it involves any of the IDB lease or the IDB

14    equipment, the notice be sent to its counsel.  And I'm not sure

15    why that's a point of contention, but we would request that any

16    notice involving not just -- any sale involving -- or

17    assumption or assignment, which is probably the proper course

18    in this case, be given to the attorneys, which is our firm, not

19    just the parties.

20         THE COURT:  I've got a sense of frustration with both

21    sides, Mr. Doshi.  Unfortunately, you're up at the lectern,

22    now.  Maybe Ms. Berkovich can come up to the lectern next to

23    you, and then I can express the frustration to both of you at

24    the same time.  But here we have a multibillion dollar case.

25    Everybody in the courtroom, probably everybody in the east

11

1    coast agrees that the debtor can't sell anything that it

2    doesn't own.  You guys seemingly agree upon that.  And I cannot

3    understand what there is for me, as a judge, to decide.  I

4    can't understand why, between the two of you, you can't craft

5    an order that says the debtors' ain't going to sell anything

6    that they don't own, that the debtors are going to comply with

7    the requirements of applicable law, including 365, and the

8    difference between whether a client or a lawyer gets notice or

9    whether it's ten business days or ten calendar days, are hard

10   for me to understand why I have two lawyers standing up in

11   front of me in a full courtroom, debating something of that

12   character.  Now, I'll give each of you an opportunity to

13   respond in turn.  Maybe Ms. Berkovich, you're the first.

14        MS. BERKOVICH:  Your Honor, we've resolved the ten

15   business days versus ten calendar days issue, as well as the

16   issue of providing notice to counsel.  The order has been

17   revised to address both of those, and we have discussed that

18   with IDB's counsel.  On the last point, we just did not think

19   that we have to respond to every objection that has absolutely

20   no merit.  As you said, everyone knows that you cannot sell

21   property you do not own.  Nothing in this order --

22        THE COURT:  Then why can't you give me an order that

23   says that in baby talk.

24        MS. BERKOVICH:  Okay, I think that if you give us a

25   few minutes, perhaps we -- I can discuss this with IDB's

12

1    counsel.  We can come up with language that's agreeable to both

2    sides and then we can report to the Court at the end of the

3    hearing.

4            THE COURT:  Very good.  Thank you.

5            MR. DOSHI:  Thank you.

6            THE COURT:  Thank you.  Ms. Caton?

7            MS. CATON:  Good morning, Your Honor.  Amy Caton from

8    Kramer, Naftalis, Levin & Frankel on behalf of the creditors'

9    committee.  The creditors' committee negotiated a number of

10   changes to the de minimis assets sale order, and while I don't

11   want to burden Your Honor with going through those in front of

12   a crowded courtroom, I would just like to state that the bulk

13   of these were to make sure that the committee is being involved

14   in the process of asset sales, and has notice so that we can

15   ensure that the debtors are remaining in compliance with the

16   wind-down budget.

17           THE COURT:  Sure.  Thank you.

18           MS. CATON:  Thank you, Your Honor.

19           THE COURT:  Okay, Mr. Karotkin.  Removal motion?  Is

20   that the next one?

21           MR. KAROTKIN:  Yes, sir.  Your Honor, the removal

22   motion is fairly self-explanatory.  The only objection is with

23   respect to a matter that has already been the subject of

24   removal.  So we believe that the objection is moot.

25           THE COURT:  Right.  I'd like to interrupt you,

13

1   Mr. Karotkin.  Is the objector here in the courtroom or on the

2   phone?

3          MR. KAROTKIN:  No, I don't think so, Your Honor.  They

4   advised us that they were not going to appear by phone.  We did

5   have some discussions with them over the last few days and

6   explained to them that we intend to come up with procedures to

7   deal with the number of litigation-related claims that will be

8   filed in connection with these estates, and they were satisfied

9   with those discussions.  And we said we would get back to them

10  as to the manner in which we would propose to proceed and keep

11  them advised, and they said they wouldn't appear today.

12         THE COURT:  You're talking about the one entity whose

13  claims have been removed?

14         MR. KAROTKIN:  Correct, sir.

15         THE COURT:  All right.  I'm not going to make

16  extensive findings on this.  The debtors have shown that they

17  have something like 31,000 of these matters.  Plainly, they

18  have the need to get their arms around them.  This objector

19  lacks standing to object to procedures that doesn't affect the

20  objector in any way, with the objector's claims having been

21  already moved.  Debtors' motion is granted.

22         MR. KAROTKIN:  Thank you, sir.  The next item is the

23  item to strike the declaration submitted by Mr. Parker in

24  connection with the appeal of Your Honor's order authorizing

25  the sale of assets under Section 363.

14

1          THE COURT:  Right.

2          MR. KAROTKIN:  And Mr. Parker, I believe, is on the

3     phone.

4          THE COURT:  Yes.

5          MR. PARKER:  Oliver Parker, yes, sir, I am.

6          THE COURT:  Okay, Mr. Parker.  Just standby, please.

7     All right, Mr. Karotkin, I'm going to let you speak, but we

8     really need to get a response from Mr. Parker.

9          Mr. Parker, there is a case that I have decided some

10    years ago, I think it was in Ames Department Stores, squarely

11    on point.  You can't include as part of a record something that

12    was never before the bankruptcy judge, and that the bankruptcy

13    Court didn't consider.  Now, are you suggesting to me that when

14    I issued that decision, I was wrong, or the cases upon which I

15    relied were wrong?  Or is there something that I overlooked?

16         MR. PARKER:  Your Honor, what I'm saying -- well, I'm

17    saying three things, simply.  First off, I'm saying that I

18    don't believe the rules applies to nonsubstantive matters.  I'm

19    not trying to change substantive records regarding the

20    substantive issues of your order.  I'm just trying to bring

21    some procedural issues to the attention of the District Court

22    that I don't think the record adequately reflects.

23         Second, I believe that the motion was untimely.  They

24    had ten days upon which to bring a motion, and they should have

25    brought it when they filed their counterdesignation.  They

15

1    filed the counterdesignation -- I even think they filed it on

2    the last day, but they filed this the following day.

3        And thirdly, if the matter is going to be stricken,

4    then I would also request under Rule 8.006, I'd like to read

5    the relevant section of the rule.  "Within 10 days after the

6    service of the appellant's statement the appellee may file and

7    serve on the appellant a designation of additional items to be

8    included in the record on appeal and, if the appellee has filed

9    a cross appeal, the appellee as cross appellant may file and

10   serve a statement of the issues to be presented on the cross

11   appeal".  They filed a statement of issues, but they did not

12   file a cross appeal.  As I read the rule, they were only

13   supposed to do a designation, a counterdesignation, they were

14   not supposed to be filing additional issues, since I did not

15   appeal.  And in paragraph 13 of my objection, I brought to the

16   Court -- the Court might be striking my declaration, but the

17   Court's striking the -- your statement of issue, as well.

18       THE COURT:  All right, Mr. Karotkin, you want to

19   respond?

20       MR. KAROTKIN:  Yes, Your Honor.  Very, very briefly,

21   our papers, again, address the issue.  They address the Ames

22   case, to which you referred.  The law in this circuit, in this

23   district is clear.  And Mr. Parker does not dispute that his

24   declaration was not part of the record before this Court in

25   connection with the 363 hearing.  And as a result, there is no

16

1   authority to support what he is requesting, and the authority,

2   obviously, is very clear.  With respect to the timeliness of

3   the motion, there is nothing in the rules regarding the time

4   within which a motion to strike must be filed.  Mr. Parker

5   cites no authority to suggest there is such a rule.  We believe

6   our motion is timely.  In addition, it was very clear, when we

7   filed our designation of record, that we intended to object.

8   So he certainly can't complain about a lack of notice.  So we

9   think that --

10          THE COURT:  Deal with his final point, that you're

11  forbidden from, as an appellee, from stating your perspective

12  of the issues for the appellate court to decide.

13          MR. KAROTKIN:  I don't believe the rule forbids it,

14  and I think that, Your Honor, it is fairly common practice in

15  this district that in connection with a counterdesignation,

16  that a counterstatement of issues is made on appeal.  The

17  issues, of course, will be addressed by the district court, in

18  any event.

19          THE COURT:  All right.  Mr. Parker, I'm granting the

20  debtors' motion to strike your declaration, and I'm denying

21  your cross-motions to strike the debtors' statement of its

22  perception of the issues on the appeal, and the following are

23  the bases for this decision.  It's fundamental, at least in

24  this district, if not across the country, that the record on

25  appeal is supposed to provide the appellate court with the

17

1  information it needs to decide the appeal in the context of the

2  matters that were either presented to the lower court or

3  whether or not they were presented to the lower court, were

4  utilized by the lower court in making its decision.  There are,

5  to be sure, mechanisms by which additional information can be

6  brought to an appellate court on motions, but they are

7  analytically distinct and not to be confused with the putting

8  together of the record on the appeal.

9       In my decision in Ames Department Stores, 320 B.R. at

10  pages 520 to 521, I pointed out that the touchstone for the

11  designation of matters part of record is whether the matter was

12  before the lower court, or at least considered by that Court in

13  entering the order or judgment appealed from.  I relied upon

14  the earlier decision in W.T. Grant, 432 F.Supp. 105 at page

15  106, and conversely -- and other decisions of similar type,

16  including one out of the District of Connecticut, the record on

17  appeal should contain all items by the bankruptcy Court in

18  reaching a decision.  Conversely, if an item was not considered

19  by the Court, it should be stricken from the record on appeal.

20       The Federal Rules of Bankruptcy Procedure do not

21  provide for a time by which a motion to strike matter from a

22  record must be brought, nor does other applicable law.  I

23  assume, without deciding, that in an extreme case, a laches

24  argument might apply, but there is no indication here of either

25  prejudice or detrimental reliance upon that.  So this is,

18

1    frankly, and with respect, Mr. Parker, one of the easiest

2    decisions I've had in a long, long time.

3         The final issue is the extent to which the appellee's

4    statements of their perceptions of the issues to be heard on

5    the appeal should be stricken.  As Mr. Karotkin properly

6    observes -- and Mr. Parker, you're a lawyer, and I assume you

7    could have found something to support your position if it

8    existed -- there is nothing in the rules that prohibits an

9    appellee from stating its perception of the issues to be

10   considered.  While it is also true that, ultimately, this

11   matter might more appropriately be considered by the appellate

12   court, the fact is that, you know, I was a lawyer for thirty

13   years, and I've been a judge for about nine, and in that nearly

14   forty years, I've seen a lot of appeals and participated in

15   them, and I have never seen a case in which each side didn't

16   present its perception of the issues.  Of course, that being

17   only the starting point, the issues are ultimately presented in

18   the briefs.  And identifying the issues is more of a use in

19   helping the appellate court get a first sense of the issues

20   that are going to be raised, and not a full exposition of

21   either parties' needs and concerns.

22        So the cross-motion is accordingly denied.

23   Mr. Karotkin, I'm going to ask you or one of your folks to

24   settle an order on two business days' notice by hand, fax, or

25   e-mail in accordance with this ruling, stating no more than for

19

1    the reasons stated on the record, your motion is granted and

2    the cross-motion is denied.

3            Mr. Parker, you're free to stay on the phone or get

4    off as you prefer.

5            MR. PARKER:  Well, Judge, I have a question.

6            THE COURT:  Well, I can't give you legal advice, but

7    you can ask me a question if it's a clarification of my ruling,

8    yes.

9            MR. PARKER:  It's just with regard to -- do I need to

10   file an amended designation of protest?

11           THE COURT:  You mean with your affidavit having been

12   stricken as part of the record?

13           MR. PARKER:  Yes.

14           THE COURT:  The rules are silent on it.  I think it's

15   desirable.  How much time would it take you to submit a new

16   document that just leaves off that one item?

17           MR. PARKER:  Would five days be sufficient?

18           THE COURT:  I would think that an hour would be

19   sufficient, but how about -- today's Tuesday.  Mr. Karotkin,

20   would you be prejudiced if I gave him until the end of the

21   week?

22           MR. KAROTKIN:  No, sir, that's fine.

23           THE COURT:  Okay, you have until the close of business

24   on Friday, Mr. Parker.  It would seem to me that all you have

25   to do is take one item off your list.

20

1          MR. PARKER:  Okay.  By the way, one point of

2     clarification to the order.  The item was appendix 5 on the

3     previous one, so I guess it would be appendix 5 on the

4     stricken.

5          THE COURT:  I don't know how to respond to your

6     question, Mr. Parker.  I'm dealing with concepts.  I don't know

7     how documents were numbered or presented as part of lawyers'

8     packages.

9          MR. PARKER:  It was attached to the declaration as

10    appendix 5 to the declaration.

11         THE COURT:  Are you asking me a question?

12         MR. PARKER:  Just -- I'm just, I would take your word

13    in faith that the statement which was attached as appendix 5

14    was stricken.  That's all.

15         THE COURT:  Well, here's what I would like to suggest

16    that you and Mr. Karotkin do, or whoever's working for

17    Mr. Karotkin on this matter.

18         MR. PARKER:  Sure.

19         THE COURT:  I've addressed the concept.  Although

20    Mr. Karotkin has the ability to settle the order, I would think

21    that he or the associate he assigns to take care of this would

22    happily take your phone call to make sure that you and he are

23    on the same page in describing the subject matter of the

24    motion.

25         MR. KAROTKIN:  We'll contact Mr. Parker when we get

21

```
1    back to our office.

2            THE COURT:  Okay.

3            MR. PARKER:  Okay, thank you very much.  I'm going to

4    hang up now.

5            THE COURT:  Very good.

6            MR. PARKER:  I appreciate it.

7            THE COURT:  Thank you, have a good day.  Next,

8    Mr. Karotkin?

9            MR. KAROTKIN:  Item five, Your Honor, we now go into

10   the uncontested matters.

11           THE COURT:  Sure.

12           MR. KAROTKIN:  Item five is reporting requirements

13   under Rule 2015.3.  There were no objections filed.

14           THE COURT:  Granted.

15           MR. KAROTKIN:  If we could hold item six for a moment.

16   That's the creditors' committee's motion to retain FTI.

17           THE COURT:  Sure.

18           MR. KAROTKIN:  Item seven was with respect to the

19   modification of the engagement letter with AP Services, LLC,

20   which is responsible for running the liquidation of Motors

21   Liquidation Company.  The only -- I'm sorry, there were no

22   objections filed.  The Office of the United States Trustee,

23   Your Honor, had requested that we add a paragraph to the

24   proposed order, which we have done.  And if Your Honor please,

25   I can hand up a blackline.
```

22

1          THE COURT:  Certainly.  I assume it was prevetted with

2     the U.S. Trustee's Office?

3          MR. KAROTKIN:  Yeah.  This was a paragraph that they

4     asked us to include which we added word for word.

5          THE COURT:  Okay.

6          MR. KAROTKIN:  May I approach, sir?

7          THE COURT:  Yes.

8          MR. KAROTKIN:  And the last item is a motion to

9     reject -- the fifth omnibus motion to reject certain executory

10    contracts.

11         THE COURT:  Pause, please, Mr. Karotkin.

12         MR. KAROTKIN:  Sure.

13         THE COURT:  As modified to add the language requested

14    by the U.S. Trustee's Office, it's approved.  Ms. Caton, are

15    you waiting to be heard on that one?

16         MS. CATON:  Yes, Your Honor.

17         THE COURT:  Well, then, maybe I should defer the

18    ruling and give Ms. Caton a chance to be heard.

19         MS. CATON:  Your Honor, I would just request that you

20    defer your ruling until after we hear from debtors' counsel on

21    their response to the FTI application.  Our understanding from

22    late last night is that the debtors may have some issues with

23    the FTI application which we were not aware of.  We did not

24    raise these issues with our committee, yet.  And in light --

25    and I believe they're objecting to some of the reasonableness

23

 1    of the FTI fees.  And in light of their potential objection, we

 2    would like to hear what, in fact, what they are before Your

 3    Honor enter a ruling on the AlixPartners fees.

 4            THE COURT:  Well --

 5            MS. CATON:  And I apologize for this, Your Honor.

 6            THE COURT:  -- Ms. Caton, forgive me, it sounds a

 7    little tit for tat.  There wasn't an objection to the Alix

 8    motion, and I certainly understand why you would want not to be

 9    judged by a double standard.

10            MR. KAROTKIN:  Your Honor, could I just --

11            THE COURT:  As a courtesy to you, I will certainly

12    confess that when I said that the motion was granted, it was

13    without giving you a chance to be heard, but it was because you

14    folks hadn't filed an objection, either.  Mr. Karotkin, if you

15    have something to say that's relevant to this, I'll hear it.

16    But I got to tell you guys that I prefer to decide matters on

17    the record, rather than helping you guys, you know, maintain

18    leverage over each other.

19            MS. CATON:  I understand.

20            THE COURT:  Mr. Karotkin?

21            MR. KAROTKIN:  Yes, sir.  Hopefully, I can cut this

22    short.  If I can just address the FTI, quickly?

23            THE COURT:  I'm not aware of there being an objection

24    on that, either.

25            MR. KAROTKIN:  There is not.  The only thing we would

24

1    request in connection with the FTI motion -- and I acknowledge

2    that the debtors did not object to it, we have no objection to

3    the retention -- is that they are required to maintain time

4    records on a monthly basis for the period subsequent to July

5    10th, and I believe that the U.S. trustee has requested that

6    they do it, and they have agreed.  And I believe that FTI,

7    we've asked them if they would furnish those to the debtors,

8    and they have agreed that they would do so.  And that's my only

9    comment.

10       THE COURT:  All right.  Ms. Caton, is there a

11   difference in perspective between you and the debtors or not on

12   FTI, now.  We're switching away from AlixPartners.

13       MS. CATON:  My apologies, Your Honor.  No, I don't

14   believe there is, and this was all very last minute and I

15   apologize for bringing this to Your Honor's attention.

16       THE COURT:  All right.  FTI's granted, too.  And I

17   have enough confidence in FTI, just like I do in Alix, that I

18   don't care whether it's papered in the order or not, unless the

19   U.S. Trustee's Office wants it to be.  But if the U.S. trustee

20   wants it to be, it's certainly entitled to have it papered.

21   And both motions are granted.

22       Pause for a second, both of you folks.

23   Mr. Velez-Rivera, Mr. Matsumoto (ph.), do either of you guys

24   want to comment on that?

25       MR. VELEZ-RIVERA:  Good morning, Your Honor.  Andrew

25

1   Velez-Rivera for the U.S. trustee.  We've reviewed both forms

2   of order, including the Alix one as amended, and we're fine

3   with both.

4          THE COURT:  Good enough.  All right.  Alix is

5   approved; FTI is approved.

6          MR. KAROTKIN:  I believe, Your Honor, the rest of the

7   matters have been adjourned.

8          THE COURT:  Okay.

9          MR. KAROTKIN:  And I think that -- I'm sorry, number

10  eight.  Number eight, I don't know if we addressed number

11  eight, yet.  I think we were moving to number eight when

12  Ms. Caton stood up.  So I apologize.  Number eight is, again,

13  uncontested.  The fifth omnibus motion to reject certain

14  executory contracts.  There was a limited objection filed by

15  Mr. Harvick (ph.), but I believe he's either withdrawn it or

16  it's been resolved, and he has no objection to the order being

17  entered.

18         THE COURT:  Okay, it's granted.

19         MR. KAROTKIN:  And I believe that concludes the

20  hearing, sir.

21         THE COURT:  Okay.  Anybody who is here solely on GM is

22  free to leave, and we're going to take --

23         MR. KAROTKIN:  Excuse me, I'm sorry.  I guess they've

24  resolved the order on the --

25         THE COURT:  Oh, yes.

26

1          MR. KAROTKIN:   -- de minimis assets sales.

2          THE COURT:   Come on up, please.

3          MS. BERKOVICH:   Ronit Berkovich, Weil, Gotshal &

4    Manges for the debtor.   We've agreed to add language to the

5    order.   It would say nothing in this order shall authorize the

6    debtors to sell assets they do not own, including any leased

7    equipment, and I believe that resolves the objection of IDB

8    Leasing.

9          MR. DOSHI:   For the record, Your Honor, Amish Doshi

10   with Day Pitney on behalf of IDB Leasing.   That is correct, and

11   I appreciate Your Honor's patience in getting this resolved

12   consensually.   Thank you.

13         THE COURT:   Of course.   The order will so provide.

14   Okay, anybody who was here solely on GM is free to go, and

15   we're going to start in with Lyondell Chemical without a

16   recess.

17         MR. DOSHI:   Thank you, Your Honor.

18         THE COURT:   Thank you, have a good day.

19        (Proceedings concluded at 10:17 a.m.)

20

21

22

23

24

25

27

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Motion of Debtors to Enlarge the Time Within Which to File Notices of Removal of Related Proceedings Granted | 13 | 21 |
| Debtor's Motion to Strike the Declaration of Oliver Addison Parker from his Designation of the Record and Issues on Appeal Granted | 16 | 20 |
| Cross-Motion by Mr. Parker Denied | 18 | 22 |
| Motion of Debtors for Entry of Order Granting Additional Time to File Reports of Financial Information or to Seek Modification of Reporting Requirements Pursuant to Bankruptcy Rule 2015.3 Granted | 21 | 14 |
| Motion of Debtors for Entry of Order Authorizing the Debtors to Amend the Terms of Their Engagement Letter With AP Services Granted | 25 | 5 |
| Application of Official Committee of Unsecured Creditors for Entry of Order Authorizing the Retention and Employment of FTI Consulting, Inc., as its Financial Advisor | 25 | 5 |

28

1    Fifth Omnibus Motion to      25      18
     Reject Certain Executory
2    Contracts Granted
3    Application of Debtors       26      13
     For An Order Authorizing
4    The Employment And Retention
     Of Evercore Group Granted
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

29

1

2                          C E R T I F I C A T I O N

3

4        I, Dena Page, certify that the foregoing transcript is a true

5        and accurate record of the proceedings.

6

7        _____

8        Dena Page

9

10       Veritext LLC

11       200 Old Country Road

12       Suite 580

13       Mineola, NY 11501

14

15       Date:  August 19, 2009

16

17

18

19

20

21

22

23

24

25