**Hearing Date and Time: October 6, 2009, at 9:45 a.m. (prevailing Eastern Time)**
**Objection Deadline: October 1, 2009 at 4:00 p.m. (prevailing Eastern Time)**

LeClairRyan, a Professional Corporation
830 Third Avenue, Fifth Floor
New York, New York 10022
Michael T. Conway, Esq.
(212) 430-8032
(212) 430-8062 Fax
E-mail: michael.conway@leclairryan.com

*Counsel for Detroit Diesel Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al. | Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION OF DETROIT DIESEL CORPORATION FOR AN ORDER EXTENDING AND ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. § 362(a) TO COVER CERTAIN LITIGATION RELATING TO DETROIT DIESEL CORPORATION, OR ALTERNATIVELY, ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105**

PLEASE TAKE NOTICE that on October 6, 2009, at 9:45 a.m, Detroit Diesel Corporation ("DD"), will bring their Motion (the "Motion"), before the Honorable Robert E. Gerber, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004-1408, for an Order extending and enforcing the automatic stay pursuant to 11 U.S.C. § 362 to include non-debtor DD or, alternatively, issue a preliminary injunction pursuant to 11 U.S.C. § 105, to prevent the continued or future prosecution of asbestos claims in various courts around the United States, or elsewhere.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be in writing; filed electronically with the Court on the docket of *In re Motors Liquidation Co.*, Ch. 11 Case No. 09-50026 (REG) in accordance with General Order M-242 (available at www.nysb.uscourts.gov/orders/orders2.html) by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word, or any other Windows-based word processing format; and served upon: (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Ted Stenger); (iii) General Motors Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors (the "Committee"), 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq., Thomas Moers Mayer, Esq., Adam C. Rogoff, Esq., and Gordon Z. Novod, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, (Attn: Diana G. Adams, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and

Matthew L. Schwartz, Esq.); (x) counsel for Detroit Diesel Corporation, LeClairRyan, a

Professional Corporation, 830 Third Avenue, Fifth Floor, New York, New York 10022 (Attn:

Michael T. Conway, Esq.) and (xi) all entities that requested notice in these chapter 11 cases

under Bankruptcy Rule 2002; with a copy to Judge Gerber's Chambers, so as to be received no

later than 4:00 p.m. on October 1, 2009 (prevailing Eastern Time).

Dated: September 2, 2009
       New York, New York

LeCLAIR RYAN, a Professional Corporation


By:  /s/ Michael T. Conway
Michael T. Conway
830 Third Avenue, Fifth Floor
New York, New York 10022
Telephone: (212) 430-8032
Facsimile:  (212) 430-8062

*Counsel for Detroit Diesel Corporation*

**Hearing Date and Time:  October 6, 2009, at 9:45 a.m. (prevailing Eastern Time)**
**Objection Deadline:  October 1, 2009 at 4:00 p.m. (prevailing Eastern Time)**

LeClairRyan, a Professional Corporation
830 Third Avenue, Fifth Floor
New York, New York 10022
(212) 430-8032
(212) 430-8062 Fax
Michael T. Conway, Esq.

*Counsel for Detroit Diesel Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al. | Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**MOTION OF DETROIT DIESEL CORPORATION FOR ORDER EXTENDING AND
ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. § 362(a) TO COVER CERTAIN
LITIGATION RELATING TO DETROIT DIESEL CORPORATION, OR
ALTERNATIVELY, ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Detroit Diesel Corporation ("DD") hereby files this motion seeking extension and

enforcement of the automatic stay pursuant to 11 U.S.C. § 362 to prevent the prosecution of

claims in various courts around the United States, or elsewhere, wherein plaintiffs seek monetary

damages from DD for personal injuries and/or wrongful death for asbestos related disease(s)

based on their exposure to asbestos containing components incorporated into products

manufactured, sold  and distributed by DD's predecessors (the "Asbestos Cases"). In the

alternative, to the extent that the Court does not find extension of the automatic stay appropriate

in the present instance, DD seeks a commensurate preliminary injunction preventing further

prosecution of these Asbestos Cases as against DD pursuant to 11 U.S.C. § 105 in order to avoid prejudice to the Debtors' estate (the "Estate"), and respectfully represents as follows:

## Preliminary Statement

1.      There are approximately 65 civil suits pending in the state courts of twelve different states. These suits are in varying stages of readiness.  At least eight of them are scheduled for start of trial in the next six months.

2.      As more fully described below, in each of the Asbestos Cases, DD is sued for the sole reason that it was once a division of the Debtors' and as a conduit for liability which, if it exists at all, would exist with the Debtors, not with DD which has not manufactured, sold, and/or distributed products with asbestos-containing components.

3.      The present circumstances, where there is such a "unity of interest" between the Debtors and DD that the Debtors may be said to be the "real party in interest" in the Asbestos Cases, are precisely the "unusual circumstances" contemplated by the Fourth Circuit in the seminal case of *A.H. Robins Co. v. Piccinin* (*In re A.H. Robins Co.*), 788 F.2d 994, 999 (4th Cir.), *cert. denied* 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251 (1986) for which an extension of the automatic stay or injunction against prosecution of claims against a non-debtor is appropriate.

## Background

4.      The following facts are taken from the accompanying Declaration of David F. Merrion:

a.  Detroit Diesel traces its roots back to the Detroit Diesel Division of General Motors Corporation ("GM") which was founded in or about 1938 to produce small diesel engines.

2

b.  In 1970, General Motors merged its Detroit Diesel Engine Division with its Allison Division to create the Detroit Diesel Allison Division of GM.

c.  On January 1, 1988, GM sold certain assets of the Detroit Diesel Allison Division to DD, a joint venture between GM and Penske Corporation.  Penske Corporation owned 60% of Detroit Diesel and GM owned 40%.

d.  A true and correct copy of the "Sales Agreement" between GM and DD is annexed to the Declaration of Shawn Jacque as "Exhibit A."

e.  As part of the "Sales Agreement" GM agreed to assume all liabilities and to indemnify, defend and hold harmless Detroit Diesel, its successors or assigns, for any products manufactured, distributed or sold prior to January 1, 1988 by GM's Detroit Diesel-Allison Division.

f.  In 1989, Penske acquired another 20% of Detroit Diesel from GM making Penske an 80% owner of Detroit Diesel.

g.  DD became a publicly traded corporation in 1993 at which time Daimler-Benz acquired GM's 20% ownership of DD.

h.  In 1998 Daimler-Benz became known as DaimlerChrysler.

i.  In 2000 DaimlerChrysler Corporation acquired 100% of DD's outstanding shares of stock.

j.  When Daimler and Chrysler split in 2007, the shares of DD remained with the Daimler North America Corporation ("Daimler NA"), as they do today.  Thus, DD is currently a wholly-owned subsidiary of Daimler NA, bearing no legal relationship to GM.

k.  One or more of DD's predecessor divisions of GM manufactured, sold, and/or distributed products with asbestos-containing components.

3

l. GM ceased producing any products with asbestos-containing components in 1987, prior to the sale of assets that formed DD.

m. Since its founding in 1988, DD has not manufactured, sold, or distributed any products with asbestos-containing components.

n. DD has never manufactured an asbestos containing product.

5. The following facts are taken from the accompanying Declaration of Shawn Jacque, Esq.:

a. In each of the Asbestos Cases, as well as in similar cases no longer pending, DD has been named as a defendant along with GM and, in accordance with an indemnification agreement between DD and GM, GM has always indemnified and defended DD in these actions.

b. A true and correct copy of the "Indemnification Agreement," incorporated by reference at section 8.1.5 (D) of the "Sales Agreement" is attached to the Jacque Declaration as "Exhibit B."

c. A true and correct copy of the "Product Responsibility Agreement," incorporated by reference at section 8.1.5 (H) of the "Sales Agreement," is annexed to the Jacque Declaration as "Exhibit C."

d. On July 16, 2009, Maynard L. Timm, Esq of the GM Legal Staff informed DD by e-mail that it no longer believes that it is required to honor the terms of the parties' indemnity and defense agreements. The e-mail is attached as "Exhibit D" to the Jacque Declaration.

<u>Argument</u>

**A.  <u>The Automatic Stay Should be Extended and Enforced as to DD</u>**

6.      While the automatic stay provisions of the Bankruptcy Code typically protect estate property by barring proceedings against the debtor itself, *see Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 64-5 (2d Cir. 1986), "several courts have held that under specific circumstances non-debtors may be protected by the automatic stay . . . if it contributes to the debtor's efforts to achieve rehabilitation." *In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y. 1997) (*quoting Teachers Ins. and Annuity Ass'n of Am.*, 803 F.2d at 65); *see also North Star Contracting Corp. v. McSpedon* (*In re North Star Contracting Corp.*), 125 B.R. 368, 370 (S.D.N.Y. 1991) ("some courts have recognized that in circumstances where the debtor and the non-bankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend the action against a non-bankrupt party"); *Lomas Fin. Corp. v. Northern Trust Co.* (*In re Lomas Fin. Corp.*), 117 B.R. 64 (S.D.N.Y. 1990); *In re Johns-Manville Corp.*, 33 B.R. 254, 263-64 (Bankr. S.D.N.Y. 1983).

7.      In particular, in certain "unusual circumstances" the automatic stay may also apply to actions against non-debtors "whose interest are so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest." *In re A.H. Robins Co.*, 788 F.2d at 1001; *see also In re North Star Contracting Corp.*, 125 B.R. at 370; In re Lomas Fin. Corp., 117 B.R. at 68. "These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets." *In re North Star Contracting Corp.*, 125 B.R. at 370-371. *See also, e.g., In re Lomas Fin. Corp.*, 117 B.R. at 68. As explained in the Fourth Circuit's leading decision in *A.H. Robins Co.*, "unusual circumstances" arise

> when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor. ***An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the stay in that case would defeat the very purpose and intent of the statute***.

*A.H. Robins Co.*, 788 F.2d at 999 (emphasis added); *see also In re North Star Contracting Corp.*, 125 B.R. at 370 (citing *A.H. Robins* with approval and noting that the "issue of when a non-bankrupt party should benefit from a section 362(a)(1) stay has been considered most persuasively by the Fourth Circuit" in Robins).

8.    Here, the Asbestos Cases create "unusual circumstances" where it is appropriate to apply the automatic stay to an action against non-debtors. The Asbestos Actions implicate paragraph 1.1 of the Indemnification Agreement whereby GM agreed to indemnify, defend and hold harmless DD from and against all costs and expenses including, without limitation, among others, attorneys fees, damages, losses, disbursements, etc., arising out of any claims or litigation against DD arising out of or relating to products manufactured, distributed or sold by General Motors prior to the date of the closing. A judgment or finding in the Asbestos Cases against DD would trigger a claim for indemnification as set forth above which would include the amount of any judgment, as well as for defense costs during the pendency of these actions.

9.    Similarly, the Asbestos Cases could trigger direct claims by DD against GM's insurer, Royal Indemnity Company, which has been held obligated to pay for liability and defense costs relating to the Asbestos Cases to the extend they relate to claims within the policy periods. *See generally, General Motors Corporation v. Royal & Sun Alliance Insurance Group, PLC, et al.*, 2007 WL 1206830 (Mich.App. April 24, 2007) (a copy of this decision is annexed hereto as Exhibit "A"). Like New York (NY CLS Ins § 3420), Michigan allows injured parties

6

to access the liability policies of a debtor in bankruptcy. *See* MCLS § 500.3006. This, if it were to occur, would clearly implicate property of the estate. As stated by the court in *A.H. Robins*, a products liability policy of the debtor is "valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be, as one court has remarked in a case like the one under review, 'the most important asset of [i.e., the debtor's] estate." *A.H. Robins* at 1002 (*citing In re Johns Manville Corp.*, 40 Bankr. 219, 229 (S.D.N.Y. 1984)). "Any action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay under this subsection." *Id*.

10.     Thus, GM's interests are at stake in the Asbestos Cases notwithstanding the fact GM itself is no longer a party because of the bankruptcy filing. To "refuse application of the stay in" the Asbestos Cases "would defeat the very purpose and intent of the statute" since continued litigation of the Asbestos Cases could effectively result in the estate incurring substantial costs and being held responsible for DD's losses by virtue of collateral estoppel – liability that Section 362(a) is intended to protect. *A.H. Robins Co.*, 788 F.2d at 999. Indeed, the plaintiffs in the Asbestos Cases should not be permitted to make an end run around Section 362 by prosecuting claims asserted against GM through litigation with DD – this could result in findings that would then be used by the plaintiffs in the Asbestos Cases to try to achieve through indirect means the very same result that it is undisputed that Section 362 would prohibit if pursued directly. Because "the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code," *A.H. Robins Co.*, 788 F.2d at 999, enforcement of Section 362 is warranted and the claims as against DD in the Asbestos Cases should be stayed.

**B.**

**In the Alternative, DD is Entitled to a Preliminary Injunction**
**Enjoining the Asbestos Cases, as Against DD, Under 11 U.S.C. § 105**

11.      Section 105(a) authorizes the Court to "issue any order . . . necessary or appropriate to carry out the provisions of the" Bankruptcy Code. 11 U.S.C. § 105(a). The Court's authority under Section 105 "is broader than the automatic stay provisions of Section 362" and the Court "may use its equitable powers to assure the orderly conduct of the reorganization proceedings" or to "enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it." *Johns-Manville Corp. v. Colorado Ins. Guar. Ass'n* (*In re Johns-Manville Corp.*), 91 B.R. 225, 227-8 (Bankr. S.D.N.Y. 1988) (*quoting LTV Steel Co. v. Board of Educ.* (*In re. Chateaugay Corp., Reomar, Inc.*), 93 B.R. 26, 29 (S.D.N.Y.1988); a*ccord Alert Holdings, Inc. v. Interstate Protective Servs.* (*In re Alert Holdings, Inc.*), 148 B.R. 194, 200 (Bankr. S.D.N.Y.1992); *AP Indus. Inc. v. SN Phelps & Co.* (*In re AP Indus. Inc.*), 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990); *Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567, 571 (S.D.N.Y. 1987). A proper exercise under Section 105 would arguably be to extend the section 362 injunction where necessary to insure an orderly reorganization.

12.      The standard for issuance of injunctive relief under Section 105 is whether the action to be enjoined is one that would "embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects. . . ." *In re Alert Holdings, Inc.*, 148 B.R. at 200. *See also Keene Corp. v. Acstar Ins. Co.* (*In re Keene Corp.*), 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) (The Court "can enjoin an activity that threatens the reorganization process or impairs the court's

jurisdiction with respect to a case before it"); *In re Neuman*, 71 B.R. at 571-2; *In re Chateaugay Corp. Reomar, Inc.*, 93 B.R. at 31; *In re Johns-Manville Corp.*, 91 B.R. at 227-228.

13.     In contrast to a preliminary injunction motion outside the bankruptcy context, Section 105 does not require the existence of irreparable injury. *In re Keene Corp.*, 164 B.R. at 292; *C&J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988) ("The usual grounds for injunctive relief such as irreparable injury need not be shown in a proceeding for an injunction under Section 105(a).") (citing cases); *Neuman*, 71 B.R. at 571.

14.     Here, even if the Asbestos Cases are not subject to the automatic stay, which they are, an injunction against continued prosecution of the Asbestos Cases as against DD is necessary and appropriate to protect GM's estate and reorganization prospects, and to ensure that the Asbestos Cases do not impede GM's reorganization proceedings.

15.     As discussed above, the plaintiffs in the Asbestos Cases could try to use findings against DD, which is nothing more than a surrogate for GM under these facts, in the Asbestos Cases against GM in any subsequent lawsuit. In effect, then, a finding against DD in the Asbestos Cases may serve as a finding against GM, even though GM is no longer a party to the Asbestos Cases.

16.     This, by itself, justifies application of the automatic stay provision of Section 362(a). Even if it did not, the potential collateral estoppel effects of proceeding with the Asbestos Cases as against DD warrant enjoining this case pursuant to section 105.

17.     Courts routinely recognize that section 105 of the Bankruptcy Code may be used to enjoin litigation against non-debtors where there is the potential threat of the debtor being collaterally estopped from asserting potential defenses if an adverse judgment is rendered against

these non-debtors. *See In re United Health Care Org.*, 210 B.R. at 232; *Eastern Airlines, Inc. v. Rolleston* (*In re Ionosphere Clubs, Inc.*), 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990); *In re Lomas Fin. Corp.*, 117 B.R. at 67; *Lesser v. 931 Investors* (*In re Lion Capital Group*), 44 B.R. 690, 703 (Bankr. S.D.N.Y. 1984); *American Film Technologies, Inc. v. Taritero* (*In re American Film Technologies, Inc.*), 175 B.R. 847, 849-50 (Bankr. D. De1.1994); *Sudbury, Inc. v. Escott* (*In re Sudbury, Inc.*), 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992); *In re Johns-Manville Corp.*, 26 B.R. 420, 429 (Bankr. S.D.N.Y. 1983) *aff'd* 40 B.R. 219 (S.D.N.Y. 1984) *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984)

18.    For example, in *In re Ionosphere Clubs Inc.*, the court enjoined actions against the debtor's co-defendants since the claims against the debtor and the co-defendants were "inextricably interwoven, presenting common questions of law and fact" such that a finding of liability as to debtor's co-defendants could be extended to debtor, and collateral estoppel could bar the debtor from litigating factual and legal issues critical to its defense. 111 B.R. at 434.

19.    Similarly, *Sudbury, Inc. v. Escott* involved allegations of fraud based "primarily on allegations that the Debtor's business and finances were not properly represented in Debtor's financial and business information furnished the Plaintiffs" by the debtor's officers and directors. *Id.* at 463. The Court recognized that "it is not plausible that the defendants in these actions could be found liable to Plaintiffs except on facts that would impose liability on the Debtor." *Id.* Accordingly, the Court concluded that "Debtor asserts credibly that under these circumstances its liability may be determined on collateral estoppel principles in Plaintiffs' actions," *Id.* and enjoined further prosecution of the fraud action pursuant to section 105 even though the debtor was not a defendant in the fraud action.

20.     In In re American Film Technologies, Inc. the court stayed prosecution of wrongful discharge claims against former and present directors of debtor corporation recognizing that a finding of liability against the directors would expose the debtor to "the risk of being collaterally estopped from denying liability for its directors' actions." *Id*. at 850. And, in *In re Lomas Fin. Corp.* the court similarly upheld a stay of fraudulent misrepresentation actions against debtors' directors and officers because it was "not possible for the debtor . . . to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a pre-petition creditor." 117 B.R. at 67.

21.     Here, like in these cases, the claims against DD in the Asbestos Cases are inextricably interwoven, presenting common issues of law and fact such that a finding of liability as to DD could bar GM from litigating factual and legal issues that would be critical to its own defense of any future asbestos cases filed against the Debtors.

22.     Accordingly, an injunction under Section 105 remains necessary and appropriate to further the purposes of the Bankruptcy Code.

### Waiver of Memorandum of Law

23.     Because this Motion does not present any novel issues of law and the legal precedent, statutory provisions and rules upon which DD relies are set forth herein, DD requests that the Court waive and dispense with the requirement set forth in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of this Motion. DD reserves the right, however, to submit a reply memorandum of law in the event objections to the Motion are filed.

11

## Notice

24.     Notice of this Motion has been given to (a) all interested parties to the above-caption bankruptcy cases in the manner required by this Court's August 3, 2009 "Case Management Procedures Order"; and (b) all counsel representing affected parties in the Asbestos Cases.  DD respectfully submits, and requests that at any hearing on the Motion, this Court find that no other notice is necessary or required.

25.     No previous motion for the requested relief has been made to this or any other Court.

WHEREFORE, DD respectfully requests that the Court extend the bankruptcy stay provided by 11 U.S.C. § 362 to include DD and then enforce the stay by issuing an order, in a form substantially similar to the Proposed Order annexed hereto as Exhibit "B," that confirms any claims against DD asserted in the Asbestos Cases, as well as any future claims asserted after the hearing on this Motion, are stayed, or alternatively, that this Court issue an injunction, pursuant to 11 U.S.C. § 105, enjoining further prosecution of the Asbestos Cases as against DD, and grant such other further relief as is just and proper.

Dated:  September 2, 2009
         New York, New York

                              LeCLAIR RYAN, a Professional Corporation

                              By: /s/ *Michael T. Conway*
                                    Michael T. Conway
                              830 Third Avenue, Fifth Floor
                              New York, New York 10022
                              Telephone: (212) 430-8032
                              Facsimile:  (212) 430-8062

                              *Counsel for Detroit Diesel Corporation*

**Exhibit A**



Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
**(Cite as: 2007 WL 1206830 (Mich.App.))**



Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Appeals of Michigan.
GENERAL MOTORS CORPORATION, Plaintiff-
Appellant,
v.
ROYAL & SUN ALLIANCE INSURANCE
GROUP PLC, Royal & Sun Alliance USA, Inc.,
Royal Indemnity Co., and Royal Insurance Co. of
America, f/k/a Royal Globe Insurance Co., Defend-
ant-Appellee.
No. 267308.

April 24, 2007.

Oakland Circuit Court; LC No. 05-063863-CK.

Before: FORT HOOD, P.J., and MURRAY and
DONOFRIO, JJ.

PER CURIAM.

**\*1** Plaintiff appeals by delayed leave granted from
the trial court's order denying plaintiff's motion for
summary disposition. We reverse.

Plaintiff and defendants entered into a series of in-
surance policies that covered the period between
August 18, 1954, and December 31, 1971. The in-
surance policies were classified as occurrence
based policies. An occurrence based policy
provides coverage for liabilities that arise out of in-
jury or damage suffered during the policy period,
irrespective of when the injured party brings the
claim against the policyholder. This type of policy
potentially covers losses even if the damage is dis-
covered or reported after the policy period ends. In
1972, it was alleged that the high cost of the occur-

rence based coverage caused the parties to switch to
claims-reported coverage. Under this type of
policy, coverage is potentially covered for those
claims that are reported during the policy period.
To reflect the change in the type of coverage, En-
dorsement 15 was added to the comprehensive liab-
ility policy. Although Endorsement 15 was dated
March 22, 1972, it contained a retroactive effective
date and provided:

Insuring Agreement # IV-Policy Period-Territory is
amended as follows:

This policy applies worldwide, only to occurrences
which are reported to the Insured or the Com-
pany, whichever occurs first, during the policy
period provided the services, goods, or products
were manufactured, sold, handled or distributed
within the United States of America, territories,
possessions, or Canada. The date of the report to
the Insured or the Company, shall be deemed the
date of the occurrence.

The term policy period, as used by this endorse-
ment, shall mean a period of twelve (12) consec-
utive months commencing on and after 12-31-71.
Subsequent twelve (12) month periods shall be
considered separate policy periods for purposes
of this definition.

On November 15, 1974, Endorsement 18 was ex-
ecuted with an effective date of August 31, 1974. It
set forth limitations on liability for defendants and
provided:

In consideration of the premiums charged for
product liability coverage for the period January
1, 1962 through August 31, 1974 and the agree-
ment to adjust claims as provided in the Joint
Procedure for Handling claims now endorsed as a
Special Condition to this contract, the aggregate
limit of liability for all claims occurring after

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
**(Cite as: 2007 WL 1206830 (Mich.App.))**

January 1, 1962 but reported to the insured or the company prior to September 1, 1974, whichever first, is $164,172,000. This limit will be automatically increased by crediting annually at December 31 90% of the portion of Investment Income apportioned to the funds held by the Company in anticipation of loss payments to be made subsequent to August 31, 1974.

In 1993, plaintiff ended its comprehensive liability insurance program with defendants. On December 1, 1995, the parties entered into a program closure agreement designed to sever the parties' business relationship and reconcile any outstanding obligations between them. The program closure agreement contained the following provision addressing pre-1974 claims:

**\*2** 5. Pre-1974 Products Run Off Fund

The parties agree that Royal shall retain any balances in the Products Liability run-off Fund that was established in the pre-1974 policy years. Royal also agrees that it shall assume responsibility for the ultimate settlement and resolution of all claims insured during those policy years with no right of indemnity or contribution by GM.

In 2001, a large number of asbestos-related cases were filed against plaintiff, and plaintiff concluded that many of the claims allegedly occurred between 1954 and 1971, during the occurrence coverage period. Consequently, plaintiff requested that defendants defend and indemnify it against those claims under the comprehensive products liability policies in effect during that time period. Defendants refused coverage, alleging that the change in the type of policy coverage in 1972, altered the nature of the agreement and coverage was no longer available for that time period.

Plaintiff filed suit to compel defendants to defend the 1954-1971 occurrence based liability policies and requested partial summary disposition on the

issue of the duty to defend. Plaintiff asserted that the duty to defend was broad and was invoked even when coverage was arguably available. Defendants opposed the motion with affidavits and other documentary evidence to assert that there was a question of fact regarding the existence of policy coverage. The trial court denied the motion, holding:

Based on the affidavits submitted by Defendants Royal, Plaintiff's course of conduct in dealing with insurance claims for the past 30 years and the Program Closure Agreement, questions of fact exist which preclude the granting of Plaintiff's motion.

The trial court denied plaintiff's motion for reconsideration. We granted plaintiff's delayed application for leave to appeal.

Issues addressing the proper interpretation of an insurance contract are reviewed de novo. *Allstate Ins Co v. McCarn,* 471 Mich. 283, 288; 683 NW2d 656 (2004). Whether an insurer is obligated under the insurance policy to defend the insured presents a question of law requiring interpretation of the insurance contract. *American Bumper & Manufacturing Co v. National Union Fire Ins Co,* 261 Mich.App 367, 375; 683 NW2d 161 (2004). Insurance contracts are construed in accordance with the established principles of contract construction. *Farmers Ins Exchange v. Kurzmann,* 257 Mich.App 412, 417; 668 NW2d 199 (2003). An insurance policy must be enforced according to its terms. *Nabozny v. Burkhardt,* 461 Mich. 471, 477; 606 NW2d 639 (2000). An insurance company is not responsible for a risk it did not assume. *Id.* "An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Farmers Ins Exchange, supra* quoting *Heniser v. Frankenmuth Mut Ins Co,* 449 Mich. 155, 161; 534 NW2d 502 (1995).

**\*3** The goal of contract construction is to determine

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
(Cite as: 2007 WL 1206830 (Mich.App.))

and enforce the parties' intent based on the plain language of the contract itself. *Old Kent Bank v. Sobczak,* 243 Mich.App 57, 63; 620 NW2d 663 (2000). When the language of a contract is clear and unambiguous, its construction presents a question of law for the trial court. *Michigan National Bank v. Laskowski,* 228 Mich.App 710, 714; 580 NW2d 8 (1998). The duty to interpret and apply the law is allocated to the courts, not the parties' witnesses. *Hottmann v. Hottmann,* 226 Mich.App 171, 179; 572 NW2d 259 (1997). Parol evidence may not be used to vary the terms of an otherwise clear and unambiguous contract. *Meagher v. Wayne State University,* 222 Mich.App 700, 722; 565 NW2d 401 (1997).

"An insurer is not required to defend its insured against claims specifically excluded from policy coverage." *Nat'l Union, supra.* The duty to defend is similar to the duty to indemnify in that it occurs only with regard to the insurance afforded by the policy. *American Bumper & Manufacturing Co v. Hartford Fire Ins Co,* 452 Mich. 440, 450; 550 NW2d 475 (1996). If the policy is inapplicable, there is no duty to defend. *Id.* The duty to defend is broader than the duty to indemnify. *Id.* If the allegations by a third party against the policyholder "even arguably" fall within the policy coverage, the insurer "must provide a defense." *Id.* at 450-451. In *Protective National Ins Co v. Woodhaven,* 438 Mich. 154, 159; 476 NW2d 374 (1991), the Supreme Court described the insurer's duty to defend by quoting the following passage from *Detroit Edison Co v. Michigan Mutual Ins Co,* 102 Mich.App 136, 141-142; 301 NW2d 832 (1980):

The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to de-

fend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v. Central Mutual Ins Co,* 81 Mich.App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v. Maryland Casualty Co,* 73 Mich.App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch, Insurance, 2d (rev ed), § 51:45, p 538 (now § 51:49, P 489). (Emphasis in original.)

The insurer has the duty to undertake the defense until it can confine the claim to a recovery that the policy did not cover. *Protective Nat'l Ins, supra* at 159-160. "Uncertainty regarding whether an allegation comes within the scope of the policy must be resolved in the policyholder's favor." *Hartford Fire Ins, supra* at 455.

**\*4** In *Hartford Fire Ins, supra,* it was ultimately concluded that there was no contamination that required an environmental cleanup. Despite this final conclusion, the possibility remained during the underlying litigation between the insured and the Environmental Protection Agency that an occurrence might be found that would have triggered the insured's policy coverage. Consequently, the Supreme Court held that the defendant insurers could not escape liability for defense costs incurred in responding to the claim. *Id.* at 463-464.

Applying the facts of the present case, plaintiff has submitted complaints wherein it was named as a party responsible for asbestos exposure to individuals during the policy period in question, specifically between 1954 to 1971. Although the policy coverage was altered in 1972, Endorsement 15 provided

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
**(Cite as: 2007 WL 1206830 (Mich.App.))**

that the policy was amended effective December 31, 1971, and the endorsement fails to delineate any change to prior policies that were in effect. Endorsement 18 set a liability cap for claims occurring after January 1, 1962 but reported before September 1, 1974, but did not otherwise address the policies at issue. Moreover, after the parties ended their relationship in 1993, a closure agreement was executed. This agreement expressly provided that defendants were retaining balances in the products liability run off fund established in the pre-1974 policy years, and defendants' agreement to assume responsibility for the ultimate resolution "of all claims during those policy years." The plain language of the policy at issue invokes the broad duty to defend. *Nabozny, supra; Hartford Fire Ins, supra.* Defendants contend that the documentary evidence submitted with the responsive pleading demonstrates that factual issues remain regarding the existence of coverage. However, the duty to interpret and apply the law is the province of the court, not the parties' witnesses. *Hottmann, supra.* Accordingly, the trial court erred in denying plaintiff's motion for partial summary disposition.

Reversed.

Mich.App.,2007.
General Motors Corp. v. Royal & Sun Alliance Ins. Group PLC
Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | Case No. 09-50026 (REG) |
| f/k/a General Motors Corp., et al. | |
| Debtors. | (Jointly Administered) |

---

**ORDER GRANTING MOTION OF DETROIT DIESEL CORPORATION**
**FOR AN ORDER EXTENDING AND ENFORCING THE STAY IMPOSED**
**UNDER 11 U.S.C. § 362(a) TO COVER CERTAIN LITIGATION RELATING**
**TO DETROIT DIESEL CORPORATION, OR ALTERNATIVELY,**
**ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105**

Upon the Motion, dated September 2, 2009 (the "**Motion**"),[1] of Detroit Diesel Corporation ("DD"), for an Order extending and enforcing the automatic stay pursuant to 11 U.S.C. § 362 to include non-debtor DD or, alternatively, issue a preliminary injunction pursuant to 11 U.S.C. § 105, to prevent the continued or future prosecution of asbestos claims in various courts around the United States, or elsewhere, all as more fully described in the Motion; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED that the automatic stay pursuant to 11 U.S.C. § 362 is extended to DD and there shall be no further prosecution of the claims against DD in the Asbestos Actions, nor shall any party file such claims against DD going forward absent further order of this Court allowing the same; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
    _____

                                             _____
                                             Hon. Robert E. Gerber
                                             United States Bankruptcy Judge