HEARING DATE AND TIME: September 14, 2009 at 9:00 a.m. (Eastern Time)
OBJECTION DEADLINE: September 9, 2009 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :      Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :      09-50026 (REG)
     f/k/a General Motors Corp., et al. :
                                    :
                         Debtors.   :      (Jointly Administered)
                                    :
------------------------------------------------------------x
```

## NOTICE OF HEARING ON MOTION OF DEBTORS
## FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §1121(d)
## EXTENDING PERIODS IN WHICH DEBTORS MAY FILE
## CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

PLEASE TAKE NOTICE that upon the annexed Motion, dated September 3,

2009 (the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and

its affiliated debtors, as debtors (the "**Debtors**"), for an order, pursuant to section 1121(d) of title

11, United States Code extending the Debtors' exclusive periods in which to file a chapter 11

plan and solicit acceptances thereof, as more fully set forth in the Motion, a hearing will be held

before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **September 14, 2009 at 9:00 a.m. (Eastern Time),** or as soon

thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 300 Renaissance Center, Detroit, Michigan

48265 (Attn:  Ted Stenger); (iii) General Motors Company, 300 Renaissance Center, Detroit,

Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft

LLP, attorneys for the United States Department of the Treasury, One World Financial Center,

New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of

the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, DC 20220 (Attn:

Matthew Feldman, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada,

1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and

Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory

committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036

(Attn:  Adam C. Rogoff, Esq., Robert T. Schmidt, Esq., and Amy Caton, Esq.); (xii) the Office

of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st

Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); and (xiii) the U.S. Attorney's

Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S.

Jones, Esq. and Matthew L. Schwartz, Esq.), so as to be received no later than **September 9,**

**2009, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
      September 3, 2009

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

HEARING DATE AND TIME: September 14, 2009 at 9:00 a.m. (Eastern Time)
OBJECTION DEADLINE: September 9, 2009 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                          :
**In re**                                 :      **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :      **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.* :
                                          :
                **Debtors.**              :      **(Jointly Administered)**
                                          :
------------------------------------------------------------x

## MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING EXCLUSIVE PERIODS IN WHICH DEBTORS MAY FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................ i

Summary of Relief Requested .............................................................................................. 1

Jurisdiction ............................................................................................................................ 2

Basis for Relief Requested .................................................................................................... 2

      A.  The Debtors' Cases Are Large and Complex ............................................................ 5

      B.  Substantial Good Faith Progress Has Been Demonstrated ........................................ 7

      C.  The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands ............................................................................... 9

      D.  Important Contingencies Must Be Resolved by the Debtors ..................................... 11

      E.  The Debtors Are Making Required Postpetition Payments As They Come Due and Have the Ability to Continue to Do So .............................................................. 12

Conclusion ............................................................................................................................ 12

Notice ................................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006) ...........3, 4, 11, 12

*In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich 1997) ...................................3

*In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) ...................................4

*In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ................................6

*In re Gen. Motors Corp.*, Ch. 11 Case No. 09-50026 (REG),
2009 Bankr. LEXIS 1800 (Bankr. S.D.N.Y. July 7, 2009) .................................................6

*In re McLean Indus., Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987) ....................................3, 4

*In re Texaco, Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987)........................................5, 10, 12

*In re United Press Int'l, Inc.,* 60 B.R. 265 (Bankr. D.C. 1986)...........................................4

## STATUTES

11 U.S.C. § 363.................................................................................................................6
11 U.S.C. § 1121...........................................................................................................3, 12
11 U.S.C. § 1121(b)..........................................................................................................1
11 U.S.C. § 1121(c)(3).......................................................................................................1
11 U.S.C. § 1121(d) ....................................................................................................1, 2, 3
11 U.S.C. § 1121(d)(2) ......................................................................................................2
28 U.S.C. § 157..................................................................................................................2
28 U.S.C. § 157(b) .............................................................................................................2
28 U.S.C. § 1334................................................................................................................2

## MISCELLANEOUS

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ............................3, 5

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors (collectively, the "**Debtors**"), respectfully represent:

<u>**Summary of Relief Requested**</u>

1.     The Debtors request an extension of the Exclusive Filing Period (as

defined below) through and including January 27, 2010 and the Exclusive Solicitation Period (as

defined below) through and including March 29, 2010 pursuant to section 1121(d) of title 11,

United States Code (the "**Bankruptcy Code**"), without prejudice to the Debtors' right to seek

additional extensions thereof.

2.     Section 1121(b) of the Bankruptcy Code provides for an initial period of

120 days after the commencement of a chapter 11 case during which a debtor has the exclusive

right to file a chapter 11 plan (the "**Exclusive Filing Period**").  Section 1121(c)(3) of the

Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing

Period, it has a period of 180 days after the commencement of the case to obtain acceptances of

such plan, during which time competing plans may not be filed (the "**Exclusive Solicitation**

**Period**").  The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are

currently set to expire on September 29, 2009 and November 28, 2009, respectively (the

"**Exclusive Periods**").

3.     As discussed more fully below, an extension of the Exclusive Periods is

customary – as well as essential— in the context of the Debtors' chapter 11 cases.  Ample cause

exists to grant the Debtors such relief because, *inter alia*, (i) the Debtors' cases are large and

complex; (ii) substantial good faith progress has been demonstrated; (iii) the Debtors are not

seeking to use exclusivity to pressure creditors into accepting a plan they find unacceptable;

(iv) important contingencies must be resolved; and (v) the Debtors have been paying their

postpetition obligations as they become due.

4.       The Debtors submit that an extension of the Exclusive Periods are

warranted and appropriate for cases of this size and complexity.  Further, the relief requested will

allow the Debtors to further their efforts to wind-down their estates in an orderly, efficient, and

cost-effective way, analyze potential recoveries through the establishment of a bar date for the

filing of claims, and, most importantly, afford the Debtors a full and fair opportunity to

negotiate, propose, and seek acceptances of a chapter 11 plan.

## Jurisdiction

5.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Basis for Relief Requested

6.       Section 1121(d) of the Bankruptcy Code permits the court to extend the

Debtors' Exclusive Periods upon a demonstration of cause:

> [O]n request of a party in interest made within the respective
> periods specified in subsections (b) and (c) of this section and after
> notice and a hearing, the court may for cause reduce or increase the
> 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).  However, the 120-day period "may not be extended beyond a date that is

18 months after the [commencement] date" and the 180-day period "may not be extended

beyond a date that is 20 months after the [commencement] date."  *Id.* § 1121(d)(2).  As described

below, the Debtors submit ample cause exists to extend their Exclusive Periods.

7.       The Exclusive Periods provided by Congress were incorporated in the

Bankruptcy Code to afford a debtor a full and fair opportunity to propose a consensual plan and

2

solicit acceptances of such plan without the deterioration and disruption of a debtor's business

that might be caused by the filing of competing plans by nondebtor parties.  Indeed, the primary

objective of a chapter 11 case is the formulation, confirmation, and consummation of a

consensual chapter 11 plan, and it is the intention of the Debtors to achieve this objective.  To

terminate the exclusive periods in these chapter 11 cases before the process of plan negotiation

has begun is to defeat the very purpose of section 1121 of the Bankruptcy Code.

8.    Where the initial 120- and 180-day exclusive periods provided for in the

Bankruptcy Code prove to be an unrealistic time frame, section 1121(d) of the Bankruptcy Code

allows the bankruptcy court to extend a debtor's exclusive periods for cause.

9.    The Bankruptcy Code neither defines the term "cause" for purposes of

section 1121(d) nor establishes formal criteria for an extension.  The legislative history indicates,

however, that it is intended to be a flexible standard to balance the competing interests of a

debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts flexibility to

protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts

without interference from other parties in interest).

10.    In determining whether cause exists to extend the Exclusive Periods, a

court may consider a variety of factors to assess the totality of circumstances in each case.  *See*

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying

"objective factors which courts historically have considered in making determinations as" to

whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87

B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether

cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D.

3

Mich 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Those

factors include, without limitation:

> (a) the size and complexity of the debtor's case;
>
> (b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
>
> (c) the existence of good faith progress towards reorganization;
>
> (d) the fact that the debtor is paying its bills as they become due;
>
> (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f) whether the debtor has made progress in negotiations with its creditors;
>
> (g) the amount of time which has elapsed in the case;
>
> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (f) whether an unresolved contingency exists.

*In re Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are

"objective factors which courts historically have considered in making determinations of this

character"); *See also In re McLean Indus., Inc.*, 87 B.R. at 834; *accord In re Express One Int'l,*

*Inc.*, 194 B.R. at 100 (identifying all of the nine above-quoted factors as relevant in determining

whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269

(Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period

based upon certain of above-quoted factors).

11.    Application of the aforementioned standards to the facts of these chapter

11 cases demonstrates sufficient "cause" to grant the Debtors' requested extension of the

Exclusive Periods so that they may have a full and fair opportunity to propose a consensual plan and solicit acceptances thereof.

## A.  <u>The Debtors' Cases Are Large and Complex</u>

12.    Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of the Exclusive Filing Period.  "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.  In *In re Texaco Inc.*, the court stated:

> The large size of a debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.

76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

13.    The size and complexity of these cases warrant an extension of the Exclusive Periods.  These chapter 11 cases are among the largest and most complex ever filed in the United States.  Less than two months ago, the Debtors were the largest Original Equipment Manufacturer (OEM) of automobiles in the U.S. and the second largest in the world, employed approximately 235,000 employees worldwide, and had, as of March 31, 2009, consolidated reported global assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively.  As a result of the economic collapse and liquidity crisis that began to surface during the end of 2007 and exploded in 2008, General Motors Corporation (now known as Motors Liquidation Company) and its affiliated debtors commenced these chapter 11 cases with the objective of implementing the *only* available means to preserve and maximize the value,

5

viability, and continuation of the Debtors' business and, by extension, preserve and provide jobs

for the Debtors' employees and others, and enhance the interests of their economic stakeholders

through a sale of substantially all their assets pursuant to section 363 of the Bankruptcy Code to

NGMCO, Inc. (the "**Purchaser**"), a U.S. Treasury-sponsored purchaser (the "**363**

**Transaction**").

        14.     While the Debtors have successfully completed the 363 Transaction, the

Herculean task of completing the sale of America's largest OEM in a 39-day time frame required

the Debtors to seek an extension of time, until September 29, 2009, in which to file their

schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and

statement of financial affairs (the "**Schedules**"), which, in turn, necessitated the deferral of the

setting of a bar date in these cases.  Moreover, the Debtors continue to work with the Purchaser

on substantial post-closing activities.  The resolution of these important contingencies *alone*

inhibits the Debtors –and any other party in interest in these cases for that matter—from filing a

confirmable chapter 11 plan at this time.

        15.     Furthermore, the Debtors have approximately 2,500,000 creditors and

equity security holders and were parties more than 700,000 executory contracts (many of which

have been assumed and assigned to the Purchaser).  Thus, it is expected that several thousand

claims will be filed by the bar date.  Since the commencement of these cases –only three months

ago— more than 3,900 pleadings have been filed, an official committee of unsecured creditors

has been appointed (the "**Creditors' Committee**"), four unofficial committees have requested,

but have been denied, official status, and this Court has already held thirteen hearings and

rendered two published opinions.  *See In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y.

2009) (approving the 363 Transaction) and *In re Gen. Motors Corp.*, Ch. 11 Case No. 09-50026

(REG), 2009 Bankr. LEXIS 1800 (Bankr. S.D.N.Y. July 7, 2009) (denying certain appellants'

motions to certify sale order pursuant to 28 U.S.C. §158(d)(2) and denying their motion to stay

the sale order pending an appeal).

16.     Recognizing the size and complexity of the Debtors' operations, this Court

twice extended the timeframe within which the Debtors are required to file their Schedules,

which is currently set to expire on September 29, 2009. *See* Order Pursuant to 11 U.S.C. § 521

and Fed. R. Bankr. P. 1007(c) Extending Time to File Schedules of Assets and Liabilities,

Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs

[Docket No. 160], and Order Pursuant to 11 U.S.C. § 521 and Fed. R. Bankr. P. 1007(c) Further

Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts

and Unexpired Leases, and Statements of Financial Affairs [Docket No. 3290].

17.     In cases of this size and complexity, 120 days is simply inadequate to

evaluate the universe of assets belonging to and claims asserted against the estates and prepare a

disclosure statement containing adequate information.  Thus, as with other large and complex

reorganization cases, the Debtors' initial Exclusive Periods do not provide adequate time to

develop a chapter 11 plan in these cases.  The Debtors' chapter 11 cases are indisputably of the

size and complexity that Congress and courts have recognized warrant extensions of the

Exclusive Periods.

### B.  **Substantial Good Faith Progress Has Been Demonstrated**

18.     It is unquestionable that the Debtors have made substantial progress in

these chapter 11 cases.  In only three months, the Debtors have:

- completed the sale of substantially all of their assets to the Purchaser
  pursuant to the 363 Transaction that resulted in substantial recoveries to
  the estates and preservation of employment for approximately 235,000

employees worldwide, including 91,000 domestic employees, after a three-day trial;

- negotiated and executed an agreement with the Debtors' largest secured creditor, the U.S. Treasury, to provide the Debtors with a postpetition credit facility of $1.175 billion (the "**Wind-Down Facility**"), which proceeds are to be used by the Debtors to wind down their affairs;

- retained dozens of professionals to assist in the administration of these estates, including the professionals at Alix Partners, who have taken the lead in compiling information related to the Debtors' business and administering the estates, local and foreign counsel, as well as investment banking and accounting professionals;

- analyzed more than 700,000 contracts, and, to date, filed 7 omnibus motions to reject more than 250 executory contracts and unexpired leases of nonresidential real property;

- conducted a comprehensive, objective, and quantitative evaluation of each of the Debtors' approximate 6,000 dealerships, negotiated with each of them, and rejected approximately 38 dealerships in total;

- established global procedures for asset sales;

- filed a motion seeking to establish a bar date for the filing of claims, as discussed below; and

- responded to countless inquiries related to the status of these cases and specific contract counterparty demands.

19.    As the foregoing list demonstrates, the Debtors have focused their efforts on the process of administering their estates in anticipation of providing distributions to creditors and completing a wind-down of their affairs pursuant to a chapter 11 plan.  Although the Debtors are committed to completing the wind-down of their estates as quickly as possible, the administration of these cases and the formulation of a chapter 11 plan will require additional time and effort.

20.    In addition, the Debtors are finalizing their Schedules, which are to be filed by September 29, 2009.  On September 2, 2009, the Debtors filed a motion to establish November 9, 2009 (the "**General Bar Date**") as the deadline for each person or entity to file a

proof of claim in these cases (except governmental units, as defined in section 101 (27) of the

Bankruptcy Code, who will have until November 28, 2009 (the "**Governmental Bar Date**," and

together with the General Bar Date, the "**Bar Dates**")).  *See* Debtors' Motion for Order Pursuant

to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Section 503(b)(9) of the

Bankruptcy Code) and Procedures Relating Thereto and Approving the Form and Manner of

Notice Thereof [Docket No. 3940].

21.    The Debtors' progress on these critical issues in this short period of time

justifies the requested extension.

### C.  The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands

22.    This is the Debtors' first request for an extension of the Exclusive Periods.

The requested extension is reasonable given the Debtors' progress to date and the current posture

of these chapter 11 cases.  The Debtors are not seeking this extension to delay the liquidation of

these estates for some speculative event or to pressure creditors to accede to a plan unsatisfactory

to them.

23.    As described above, during the first three months of these chapter 11

cases, the Debtors have primarily focused on the 363 Transaction and resolving many of its

derivative issues, including a number of pending appeals of the sale order.  The Debtors are now

in the process of evaluating their remaining assets to identify, among other things, how to

maximize their value and minimize their liabilities.  To this end, the Debtors are currently

negotiating with numerous parties concerning matters that will have a significant impact on any

chapter 11 plan.

24.    Courts have denied extensions of the Exclusive Periods where plan negotiations among parties in interest have broken down and the continuation of exclusivity would merely give the debtors unfair bargaining leverage over other parties in interest.  *See In re Texaco Inc.*, 76 B.R. at 345. The Debtors' chapter 11 cases are proceeding at a fast pace, and their relationship with the Creditors' Committee and its professionals are cordial and constructive.  Only three months have passed since the Debtors commenced their chapter 11 cases.  The Debtors' request for an extension of the Exclusive Periods is not a negotiation tactic, but merely a reflection of the fact that these cases are not yet ripe for the formulation and confirmation of a viable chapter 11 plan.

25.    Moreover, the Debtors submit that the requested extension of the Exclusive Periods will not harm the Debtors' creditors or other parties in interest and will be used for a proper purpose – to develop and build consensus for a chapter 11 plan.  In connection with their wind-down efforts, the Debtors have been working closely with their key constituencies to address the issues critical to developing and implementing a chapter 11 plan.  As such, the Debtors submit that neither the creditors nor any other party in interest would be harmed by the requested extension of the Exclusive Periods.  The relief requested herein will not result in a delay of the plan process; rather it will permit the wind-down process to move forward in an orderly and expeditious fashion.

26.    Furthermore, the Debtors have kept sight of the need to deal with all parties in interest in these cases.  The Debtors and their professionals have consistently conferred with these constituencies on all major substantive and administrative matters in these cases.  The Debtors have no intention of discontinuing this dialogue if this Motion is granted.

**D.** **Important Contingencies Must Be Resolved by the Debtors**

27.     Courts have recognized, as a justification for extending a the Exclusivity Periods, the need to resolve an important contingency. *See, e.g., Adelphia Commc'ns*, 352 B.R. at 587. As indicated above, the Debtors have made substantial progress in the prosecution of their chapter 11 cases. They do, however, require additional time in which to propose a confirmable chapter 11 plan as the Debtors continue to address a number of key issues, including (a) the filing of their Schedules, which in turn, has deferred, although briefly, the setting of the Bar Dates in these cases; (b) the refinement and completion of their wind-down plan in consultation with their key constituencies; (c) the efforts to divest the remaining estate assets as part of their wind-down efforts; and (d) the analysis of the universe of claims asserted against the Debtors' estates upon the passing of the Bar Dates, many of which will be unliquidated.

28.     It is undisputed that any meaningful chapter 11 plan must consider the nature and extent of all claims and interests asserted against the Debtors. Thus, it is highly unlikely that a confirmable chapter 11 plan could be proposed in these cases before the Debtors have had adequate opportunity to assess the full nature, validity, and extent of the wide variety of claims that undoubtedly will be asserted against them. Any chapter 11 plan proposed by the Debtors prior to the Bar Dates and prior to meaningful analysis of the claims ultimately filed would be premature and could actually lead to protracted litigation and a delay of confirmation of a plan. For the same reason, no other party in interest in these cases would be in a position to file a confirmable plan.

29.     Accordingly, the extensions of the Exclusive Periods as requested herein will not prejudice any party in interest, but rather will avert such prematurity and afford the Debtors an opportunity to propose a realistic and viable chapter 11 plan. Failure to extend the

Exclusive Periods as requested herein would defeat the very purpose of section 1121 of the

Bankruptcy Code – i.e., to afford the debtor a meaningful and reasonable opportunity to

negotiate with creditors and propose a confirmable chapter 11 plan.  The termination of the

Exclusive Periods and the threat of multiple plans would likely lead to unnecessary adversarial

situations and confrontations that will cause a deterioration in the Debtors' remaining assets.

### E.  The Debtors Are Making Required Postpetition Payments As They Come Due and Have the Ability to Continue to Do So

30.    Courts considering an extension of exclusivity may also assess a debtor's

liquidity and solvency.  *See Adelphia Commc'ns*, 352 B.R. at 587; *In re Texaco Inc.*, 76 B.R. at

322.  Here, the Debtors have sufficient liquidity and are paying their bills as they come due.

This is unlikely to change given this Court's approval of the Debtors' $1.175 billion postpetition

Wind-Down Facility on July 5, 2009.  *See* Order Pursuant to Bankruptcy Code Sections 105(a),

361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (a) Approving

Amendment to DIP Credit Facility to Provide for Debtors' Post-Petition Wind-Down Financing

[Docket No. 2969].

### Conclusion

31.    In sum, the Debtors have responded to the exigent demands of these

chapter 11 cases and have worked diligently with the Creditors' Committee to advance the wind-

down process.  The Debtors should be afforded a full and fair opportunity to negotiate, propose,

and seek acceptance of a chapter 11 plan.  The Debtors believe the requested extension of their

Exclusive Periods is warranted and appropriate under the circumstances, particularly in light of

that fact that this is the Debtors' first request.  The Debtors submit the requested extension is

realistic and necessary, will not prejudice the legitimate interest of creditors and other parties in

12

interest, and will afford them a meaningful opportunity to pursue a feasible business plan and a consensual chapter 11 plan, all as contemplated by chapter 11 of the Bankruptcy Code.

32.    An extension of the Exclusive Periods will enable the Debtors to harmonize the diverse and competing interests that exist and seek to resolve any conflict in a reasoned and balanced manner.  This neutral and independent role is precisely what Congress envisioned for the debtor in possession in the chapter 11 process.  Based on the foregoing, the Debtors submit the Motion should be granted.

[*The Remainder of This Page Is Intentionally Left Blank*]

## Notice

33.     Notice of this Motion has been provided to parties in interest in

accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and

9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No.

3629].  The Debtors submit that such notice is sufficient and no other or further notice need be

provided.  No previous request for the relief sought herein has been made by the Debtors to this

or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       September 3, 2009

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

14

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.,*     :        **09-50026 (REG)**
       **f/k/a General Motors Corp.,** *et al.* :
                                              :
                   **Debtors.**               :        **(Jointly Administered)**
                                              :
---------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION PURSUANT TO
### 11 U.S.C. § 1121(d) EXTENDING EXCLUSIVE PERIODS IN WHICH DEBTORS
### MAY FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the Motion, dated September 3, 2009 (the "**Motion**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors

(collectively, the "**Debtors**"), pursuant to section 1121(d) of title 11, United States Code (the

"**Bankruptcy Code**"), for entry of an order extending the Debtors' exclusive periods din which

to file a chapter 11 (the "**Exclusive Filing Period**") and solicit acceptances thereof (the

"**Exclusive Solicitation Period**," and collectively with the Exclusive Filing Period, the

"**Exclusive Periods**"), as more fully set forth in the Motion; and due and proper notice of the

Motion having been provided, and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtor's Exclusive Filing Period in which to file a chapter 11 plan is extended to and including January 27, 2010; and it is further.

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Solicitation Period in which to solicit acceptances of their chapter 11 plan is extended to and including March 29, 2010; and it is further

ORDERED that the extensions of the Exclusive Periods granted herein are without prejudice to such further requests that may be made pursuant to section 1121(d) of the Bankruptcy Code by the Debtors or any party in interest, for cause shown, upon notice and a hearing; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2009

_____
United States Bankruptcy Judge