**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re ) | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY**, *et al.,* ) | **09-50026 (REG)** |
| f/k/a General Motors Corporation, *et al.,* ) | **(Jointly Administered)** |
| Debtors. ) | |

# STATEMENT OF FINANCIAL AFFAIRS FOR

## MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.)

## Case No: 09-13558

# MOTORS LIQUIDATION COMPANY
## (f/k/a General Motors Corporation), *et al.*
## GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS
September 15, 2009

On June 1, 2009 (the "***Commencement Date***"), Motors Liquidation Company (f/k/a General Motors Corporation) ("***MLC***") and three of its affiliates, MLCS, LLC (f/k/a Saturn Corporation) ("***MLCS***"), MLCS Distribution Corporation (f/k/a Saturn Distribution Company) ("***MLCS Distribution***"), and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem Inc.) ("***MLCS Harlem***" and collectively with MLC, MLCS, and MLCS Distribution, the "***Debtors***") commenced cases under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only under case number 09-50026 (REG) pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"). As described below in more detail, on July 10, 2009, each of the Debtors sold substantially all of its assets to General Motors Company ("***New GM***"), an entity formed by the United States Treasury (the "***GM Asset Sale***").

A description of each of the Debtors is set forth below:

- <u>*Motors Liquidation Company*</u> – MLC, a Delaware corporation, historically was the primary operating company of the Debtors, although certain operations were conducted through direct and indirect subsidiaries. As such, MLC now owns most of the assets, liabilities and contracts that were retained by the Debtors following the GM Asset Sale.

- <u>*MLCS, LLC*</u> – MLCS, a Delaware corporation and a direct subsidiary of MLC, was formed in 1985 to develop, manufacture, and market a line of passenger cars under the "Saturn" brand.

- <u>*MLCS Distribution Corporation*</u> – MLCS Distribution, a Delaware corporation and a direct subsidiary of MLCS, was formed in 1987 to distribute automobiles produced by MLCS and was the primary contracting entity with the Saturn retailer network.

- <u>*MLC of Harlem, Inc.*</u> – MLC Harlem, a Delaware corporation and a direct subsidiary of MLC, was formed in 2004 to operate an automobile dealership in New York, New York.

## OVERVIEW OF GLOBAL NOTES

Each of the Debtors has herewith filed separate Schedules of Assets and Liabilities ("***Schedules***") and Statements of Financial Affairs ("***Statements***"). These Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements ("***Global Notes***") relate to the each of the Debtors' Schedules and Statements and set forth the basis upon which the Schedules and Statements are presented. **These Global Notes comprise an integral part of the Statements and Schedules and should be referred to and considered in connection with any review of the Statements and Schedules**. The Global Notes are in addition to any specific notes contained in any Debtor's Schedules or Statements. Information in these Global Notes is presented on an individual Debtor-by-Debtor basis unless otherwise noted. Disclosure of information in one Schedule, Statement, exhibit, or continuation sheet, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, or continuation sheet.

**The Schedules and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

The Schedules and Statements have been prepared pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 by the Debtors' management with the assistance of their advisors. Financial information is presented on an unaudited basis. While management has made reasonable efforts to ensure that the Schedules and Statements are accurate and complete based on information that was available to them at the time of preparation, subsequent information or discovery may result in material changes to the Schedules and Statements, and inadvertent errors or omissions may exist. Moreover, the Schedules and Statements contain unaudited information, which is subject to further review and potential adjustment. Nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtors' rights with respect to the chapter 11 cases, including with respect to any issues involving substantive consolidation, recharacterization, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets or avoid transfers.

## THE GM ASSET SALE AND THE SCHEDULES

On July 10, 2009 (the "***Closing Date***"), each of the Debtors consummated a sale of substantially all of its assets (the GM Asset Sale) to New GM pursuant to (i) that certain Amended and Restated Master Sale and Purchase Agreement (the "***MSPA***"), dated June 26, 2009, among the Debtors and New GM and (ii) an order of the Bankruptcy Court, dated July 5, 2009 (Docket Number 2968) (the "***Sale Order***").

The purchase price paid by New GM for the Debtors' assets equaled the sum of (i) a credit bid of certain amounts outstanding under MLC's prepetition credit agreement with the U.S. Treasury and MLC's debtor-in-possession financing facility (the "***DIP Facility***"), (ii) the U.S. Treasury's return of warrants previously issued to the U.S. Treasury by MLC, (iii) the issuance by New GM to MLC of (a) 50,000,000 shares (10%) of New GM's common stock and (b) warrants to acquire newly issued shares of New GM common stock initially exercisable for a total of 90,909,090 shares of New GM's common stock (15% of New GM's common stock on a fully diluted basis) on the respective terms specified therein, and (iv) the assumption by New GM or its designated subsidiaries of certain specified liabilities of the Debtors. The MSPA also provides that in the event that the estimated aggregate general unsecured claims against the Debtors, as determined by the Bankruptcy Court upon the request of MLC, exceeds $35 billion, New GM is required to issue, as an adjustment to the purchase price, up to approximately an additional 2% of its common stock (the "***Adjustment Shares***" and collectively with the New GM common stock and warrants (and any securities received in respect thereof) set forth in (iii), the "***New GM Equity Interests***") to MLC, based on the extent to which such claims exceed $35 billion, with the full amount of the Adjustment Shares being payable if such excess amount is greater than or equal to $7 billion.

In light of the foregoing and the unique nature of these cases, the Debtors endeavored to present their assets, liabilities, and contracts on their Schedules in a manner that would be most beneficial to parties in interest. The Debtors believe that presenting their assets and liabilities as of the Commencement Date would not provide parties in interest with an accurate understanding of the assets available for distribution and the claims against the Debtors, because (i) substantially all of those assets were sold to New GM, (ii) the Debtors assumed and assigned to New GM the majority of their executory contracts and unexpired leases, and (iii) the Debtors paid, pursuant to first day orders, or New GM assumed a substantial portion of the Debtors' prepetition liabilities. Therefore, **the Schedules and certain other information, as noted, are presented as of September 1, 2009.** Accordingly, the Schedules only contain assets that remain under the Debtors' ownership after the GM Asset Sale which are subsequently available to the estate for distribution to creditors, and prepetition liabilities that have not as of such date been satisfied or assumed by the Purchaser. In respect of executory contracts and unexpired leases, the process of assuming and assigning such contracts to the Purchaser is ongoing and accordingly, schedules of executory contracts exclude those contracts that have been assumed and assigned as of September 1, 2009 in accordance with the GM Asset Sale.

In evaluating the Schedules and the assets available for distribution to creditors, it should be noted that in connection with the closing of GM Asset Sale, on July 10, 2009, the Debtors entered into an amended and restated DIP Facility (as restructured, amended and restated, the "***Wind Down Facility***") with the U.S. Treasury. The Wind Down Facility, which was approved by an order of the Bankruptcy Court, dated July 5, 2009 (Docket Number 2969), provides for loans in a principal amount of $1,175,000,000 (with principal paid in kind), all of

which was drawn by the Debtors the day before the Closing Date.   The Wind Down Facility is non-recourse to the Debtors, and the obligations thereunder are secured by substantially all assets of the Debtors' assets (other than the New GM Equity Interests and certain other assets that were excluded from the assets constituting collateral).   The Debtors currently expect that (i) the Wind Down Facility and the proceeds they recover from their remaining assets will be sufficient to pay the administrative expenses of winding down their estates and administering a chapter 11 plan and (ii) the proceeds of such asset sales will not be sufficient to pay down the Wind Down Facility in full.   Given the non-recourse nature of the Wind Down Facility, these two points together mean that **it is expected that the only assets that will be available for distribution to the Debtors' creditors (not including the U.S. Treasury) are the New GM Equity Interests** and it is currently anticipated that all of the New GM Equity Interests will be available for distribution to the Debtors' creditors (not including the U.S. Treasury).   However, if the Wind Down Facility and the proceeds of the asset sales are insufficient to pay the administrative expenses of winding down the Debtors' estates and administering a chapter 11 plan, the Debtors will have to use the New GM Equity Interests to pay such expenses.

## NOTES PERTAINING TO ALL DEBTORS

1. **Basis of Presentation:** For financial reporting purposes, prior to the Commencement Date, the Debtors, along with certain non-Debtor affiliates, prepared consolidated financial statements that were audited annually. Unlike such consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated.   Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.   Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with United States Generally Accepted Accounting Principles, nor are they intended to fully reconcile to the financial statements prepared by the Debtors.

2. **Amendment:** Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements.   Despite these efforts, inadvertent errors or omissions may exist.   The Debtors reserve all rights to, but are not required to, amend and/or supplement the Schedules and Statements from time to time as is necessary and appropriate.

3. **Causes of Action:** Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets.   The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of actions, or avoidance actions or in any way prejudice or impair the assertion of such claims.

4. **Assumption and Assignment of Executory Contracts:** As part of the GM Asset Sale, the Debtors assumed and then assigned hundreds of thousands of executory contracts and unexpired leases to New GM.   Under the MSPA, for each assumed and assigned contract, New GM is required to pay all associated cure costs, thereby satisfying all prepetition claims arising under the assigned contracts.   As a result, the Schedules do not include (i) any contract or lease assumed by the Debtors and assigned to New GM as of September 1, 2009 or (ii) prepetition amounts owed to counterparties to such contracts or leases. New GM continues to review contracts for possible designation for assumption and assignment pursuant to the MSPA.

5. **Recharacterization:** The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate assets, liabilities, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.   However, due to the complexity and size of the Debtors' businesses and operations, the Debtors may have improperly characterized, classified, categorized, or designated certain items.   The Debtors thus reserve all of their rights to recharacterize, reclassify,

3

recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate as additional information becomes available.

6. **Claim Description:** Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated, or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated, or "disputed." Moreover, the Debtors reserve all of their rights to, but are not required to, amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

7. **Unliquidated Claim Amounts:** Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated".

8. **Undetermined Amounts:** The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

9. **Bankruptcy Court Orders:** Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases, the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, taxing authorities, lienholders, and certain other prepetition creditors. Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore may not be listed in the Schedules and Statements. Nothing herein shall be deemed to alter the rights of any party in interest to contest a payment made pursuant to a Court order that preserves such rights to contest.

10. **Valuation:** It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, the Schedules and Statements reflect net book values as of June 30, 2009. Exceptions to this include operating cash and certain other assets. Operating cash is presented at bank balances as of September 1, 2009. Certain other assets, such as investments in subsidiaries, are listed at undetermined amounts, as the net book values may differ materially from fair market values or the amounts ultimately realized. Similarly, the value of the New GM Equity Interests is undetermined. The Debtors do not intend to amend these Schedules to reflect actual values.

11. **Liabilities:** The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to, but are not required to, amend the Schedules and Statements as they deem appropriate in this regard.

12. **Guarantees and Other Secondary Liability Claims:** The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "***Guarantees***") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Where such Guarantees have been identified they have been included in the relevant Schedule F for the Debtor or Debtors affected by such Guarantees. The Debtors, however, believe that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. Thus, the Debtors reserve all of their rights to, but are not required to, amend the Schedules to the extent that additional Guarantees are identified.

13. **Intellectual Property Rights:** Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been sold, abandoned, or terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition,

4

or other transaction.    Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.    Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

14. **Currency:**    Unless otherwise indicated, all amounts are reflected in U.S. dollars.

15. **Property and Equipment:**    Unless otherwise indicated, owned property and equipment are stated at net book value.    The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules and Statements.    Nothing in the Schedules and Statements is, or shall be construed as, an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

16. **Claims of Third-Party Related Entities:** While the Debtors have made every effort to classify properly each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same.

17. **Insiders:**    In connection with statement questions 3c and 21, the Debtors have listed the members of their respective boards of directors and all employees that held any of the following titles:    Group Vice President, President, General Auditor, Chief Executive Officer, Chief Operating Officer, Chairman, Corporate Secretary, Chief Information Officer, Executive Vice President, Chief Financial Officer, Vice Chairman, General Counsel, and Corporate Treasurer.    Persons have been included in the Statements for informational purposes only, and the listing of an individual as an "insider," however, is not intended to be, and should not be construed as, a legal characterization of such party as an insider and does not act as an admission of any fact, claim, right, or defense, and all such rights, claims, and defenses are hereby expressly reserved.    Further, the Debtors do not take any position with respect to (a) such person's influence over the control of the Debtors, (b) the management responsibilities or functions of such individual, (c) the decision-making or corporate authority of such individual or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.

Information about payments and prior relationships with AP Services LLC is disclosed in the affidavits and supplements thereto that accompany the Debtors' Motion Pursuant to 11 U.S.C. § 363 for an Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as Chief Restructuring Officer, *Nunc Pro Tunc* to the Petition Date (related Docket Numbers 952, 2949, 3133, 3591, 3686, 3831, and 3964).

18. **Confidentiality:**    Addresses of current and former employees of the Debtors are generally not included in the Schedules and Statements.    The Debtors will mail any required notice or other documents to the address in their books and records for such individuals.

19. **Payments:** The financial affairs and business of the Debtors were complex.    Prior to the Commencement Date, the Debtors participated in a consolidated cash management system through which certain payments were made by one entity on behalf of another. As a result, certain payments in the Schedules and Statements may have been made prepetition by one entity on behalf of another entity through the operation of the consolidated cash management system.    A description of the Debtors' prepetition cash management system is set forth in the Debtors' motion for authorization, among other things, to continue using their cash management system, as modified, dated June 1, 2009 (Docket Number 30).    Moreover, as noted, only payments made to parties that remain as creditors to MLC or have executory contracts that have not been assumed and assigned are listed in the Statements.

20. **Intercompany Transactions:** Prior to the Commencement Date, the Debtors engaged in intercompany transactions resulting in intercompany accounts payable and receivable.   The respective intercompany accounts payable and receivable as of the Commencement Date have not been fully reconciled. Accordingly, intercompany account balances are generally not listed in the Schedules.

21. **Totals:** All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined".   To the extent that there are unknown or undetermined amounts, the actual total may be materially different than the listed total.

22. **Schedules:**

   a. **Schedule D – Creditors Holding Secured Claims:**   Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their right to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor.   Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim.   In certain instances, a Debtor may be a co-obligor, co-mortgagor or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.   The descriptions provided in Schedule D are intended only to be a summary.   Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens.   Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.   Except as specifically stated herein, real property lessors, utility companies and other parties, which may hold security deposits, have not been listed on Schedule D.   Certain of Debtors' agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financing agreements; no attempt has been made to identify such agreements for purposes of Schedule D.   Based on a UCC lien search, all parties that have filed liens against the Debtors are listed in Schedule D, with the exception of certain parties.   However, the Debtors have not confirmed the validity of these liens or the appropriate amounts owed.   Therefore, these liabilities are listed at undetermined amounts and marked as contingent, unliquidated, and disputed (C/U/D).

   b. **Schedule E – Creditors Holding Priority Claims:**   Listing a claim on Schedule E as "priority" does not constitute an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such claim or contract.

   c. **Schedule F – Creditors Holding Unsecured Nonpriority Claims:**   Schedule F does not include certain deferred charges, deferred liabilities or general reserves, as such accruals do not represent specific claims as of the Commencement Date.   The claims listed in Schedule F arose or were incurred on various dates.   In certain instances, the date on which a claim arose is an open issue of fact.   While reasonable efforts have been made to list the date that each claim arose, determination of each date upon which each claim in Schedule F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule F.

   Schedule F contains information regarding pending litigation involving the Debtors.   In certain instances, the identity of the Debtors that are the subject of the litigation is unclear or undetermined.   However, to the extent that litigation involving a particular Debtor has been identified, such information is contained in the Schedule for that Debtor. The inclusion of any litigation action in these Schedules and Statements does not constitute an admission by the

Debtors of liability, the validity of any litigation action, or the amount or treatment of any claims, defenses, counterclaims, and cross-claims with respect to any litigation action and the amount or treatment of any potential claim resulting from any litigation action currently pending or that may arise in the future.

The claims of individual creditors are listed at the amounts recorded on the Debtor's books and records and may not reflect credits or allowances due from such creditor. The Debtors reserve all of their rights with respect to such credits or allowances.

d.  **Schedule G – Executory Contracts:**    The historical businesses of the Debtors were large and complex.   While reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, inadvertent errors, omissions or overinclusion may have occurred.   The Debtors reserve all of their rights to dispute the validity, status or enforceability of any contract or other agreement set forth in Schedule G and to amend or supplement Schedule G as necessary.

Schedule G contains all known executory contracts and unexpired leases entered into prior to the Commencement Date that have not been assumed and assigned to Purchaser as of September 1, 2009.   Schedule G may include contracts and leases that have expired by their terms prior to September 1, 2009.

Nothing herein shall be construed as a concession or evidence that any of the contracts, agreements, and leases identified on Schedule G: (i) constitute an "executory contract" within the meaning of section 365 of the Bankruptcy Code and other applicable law; or (ii) have not expired or been terminated or otherwise currently are in full force and effect.   Rather, the Debtors expressly reserve all of their rights with respect thereto, including their right to seek a later determination of these issues and their right to dispute the validity, status, characterization or enforceability of any contracts leases or set forth therein.   Certain of these contracts or leases may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments and agreements that may not be listed herein, but are nonetheless incorporated herein by this reference.   Moreover, omission of a contract or lease from Schedule G does not constitute an admission that such contract or lease is not an executory contract or unexpired lease.

In some cases, the same supplier or provider appears multiple times in Schedule G.   This multiple listing is to reflect distinct agreements between the applicable Debtor and such supplier or provider.

Certain of the contracts and leases listed on Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, and other miscellaneous rights.   Such rights, powers, duties and obligations may not be set forth on Schedule G.   In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, right of way, subordination, nondisturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements.   Such documents may also not be set forth on Schedule G.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.   The Debtors reserve all of their rights to dispute or challenge the characterization of the structure of any transaction, or any document or instrument (including, without limitation, any intercompany agreement) related to a creditor's claim. Certain of the contracts and leases listed on Schedule G may have been entered into by more than one of the Debtors.   Finally, certain of the contracts and leases listed on Schedule G may not have been memorialized and could be subject to dispute.

Schedule G includes a column entitled "Note", and certain contracts and leases on Schedule G include number (1) or (2) under the Note column. This information relates to whether the Debtors have taken any action toward assuming the contract or lease and assigning it to the Purchaser under the MSPA. The Sale Order, the order approving certain procedures in relation to the GM Asset Sale, dated June 2, 2009 (Docket Number 274), and the MSPA set forth certain procedures for the Debtors to assume contracts and leases and assign them to New GM. Among other things, the procedures provide that New GM may designate a contract or lease for assumption (such designated contract or lease, an "**Assumable Executory Contract**") until a specified date (the "***Executory Contract Designation Deadline***"), which date may be extended by mutual agreement of the Debtors and New GM (in whole or for any particular contract or lease or groups of contracts or leases). As of the date of the filing of the Schedules, the Executory Contract Designation has been extended to September 30, 2009. After a contract or lease has been designated as an Assumable Executory Contract, the Debtors must provide notice and a 10-day opportunity to object to the counterparty to the contract. Even after the deadline for filing an objection has passed, an Assumable Executory Contract is not assumed and assigned until the later of the date any non-cure objections, if any, have been resolved or overruled and the date that New GM designates as the assumption effective date (the "***Assumption Effective Date***"). Prior to such Assumption Effective Date, New GM can un-designate for assumption any Assumable Executory Contract, such that any Assumable Executory Contract may ultimately not be assumed and assigned to New GM. Note (1) refers to contracts and leases that have been designated as Assumable Executory Contracts as of September 1, 2009, but for which the Assumption Effective Date has not occurred as of September 1, 2009 because the counterparty has filed an objection to such Assumption Effective Date, and the objection has not been resolved as of September 1, 2009. The Debtors and New GM are currently working toward resolving such objections. Note (2) refers to contracts and leases that have been designated as Assumable Executory Contracts as of September 1, 2009, but for which the Assumption Effective Date has not occurred as of such date because either the objection period has not expired or because the Purchaser has not determined the Assumption Effective Date. If the Note column does not include a number, then the contract or lease is not an Assumable Executory Contract as of September 1, 2009.

e.   **Schedule H – Co-Debtors:**   In the ordinary course of their business, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their business. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because of the volume of such claims, because all are contingent, disputed or unliquidated, and because such claims are listed elsewhere in the Schedules and Statements, such claims have not been set forth individually on Schedule H.

23.   **Statements**

a.   **Statements – Question 3b - 90 Day Payments:**   The dates set forth in the "Date of Payment" column relate to one of the following:   (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the clearance date for a check or money order. In addition to the payments disclosed in response to this Question, the Debtors engaged in numerous transactions, including payments and other transfers, with their Debtor and non-debtor affiliates on a daily basis under a consolidated cash management system. Given the significant volume and ordinary course nature of such transactions, the Debtors may not have listed all such intercompany transfers and transactions.

b.   **Statements – Question 17 - Environmental:**   The Debtors historically maintained property and operations in many locations. At some of these locations, the Debtors no longer have any operations, and, as of the Commencement Date, may no longer have had relevant records, or the records may no longer be complete or reasonably accessible and reviewable. Some individuals who once possessed responsive information are no longer employed by the Debtors. For all of these reasons, it may not be reasonably possible to identify and supply the requested information for every "site" and "proceeding" literally responsive to Question 17. Nonetheless, the Debtors

have devoted substantial internal and external resources to identifying and providing the requested information for as many responsive sites and proceedings as reasonably possible. The Debtors prioritized identifying all active or open matters. The Debtors reserve all of their rights to, but are not required to, supplement or amend this response in the future if additional information becomes available.

Due to the number of potentially responsive matters for the Debtors, the practical burdens of compiling information on inactive matters, and the presumably lower relevance of information on matters that have been inactive for a longer period of time, the Debtors generally have attempted to compile information on inactive matters only where there has been some activity within the last few years.

Where a site is the subject of a proceeding, settlement, or order listed in the response to Question 17(c), the site and notices related to it are not also listed in the responses to Questions 17(a) or 17(b). Similarly, sites that are listed in the response to Question 17(a) (sites for which the Debtors have received notice from a governmental unit) are not repeated in the response to Question 17(b) (sites at which the Debtors have provided notice to a governmental unit).

Where a site identified in Attachment 17(a) or 17(b) is the subject of multiple notices, or notices that preceded and were related to proceedings listed in the response to Question 17(c), all such notices may not be listed.

The response to Question 17(b) (concerning notices by the Debtors of releases) does not list routine reports and submissions, to the extent they exist, concerning discharges resulting from normal operations where such reports and submissions were made in compliance with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions, and submissions concerning air emissions.

c. **Statements – Questions 19a and 19c – Books and Records:** The Debtors historically employed hundreds of individuals with various bookkeeping responsibilities. Ultimately, all of these individuals reported to Nicholas Cyprus, MLC's prepetition Chief Accounting Officer as the primary individual who directly kept or was in possession of the Debtors' books and records. Due to the voluminous nature of this detail, only Mr. Cyprus is listed in the responses to these Questions.

# STATEMENT OF FINANCIAL AFFAIRS

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

**Chapter 11**

In re:    **MLC of Harlem, Inc.**                                         **Case Number:**        **09-13558**
               Debtor.

This statement is to be completed by every debtor.  Spouses filing a joint petition may file a statement on which the informaiton for both spouses is combined.  If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.  An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.  To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors.  Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25.   **If the answer to an applicable question is "None," mark the box labeled "None."**  If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."*  A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership.  An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, mangaging executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time.  An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."*   The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor.  11 U.S.C. § 101.

---

### 1.  Income from employment or operation of business

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of debtor's businessbusiness, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced.  State also the gross amounts received during the **two years** immediately preceding this calendar year.  (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income.  Identify the beginning and ending dates of the debtor's fiscal year.)  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**See attachment 1 to the Statement of Financial Affairs**

---

### 2.  Income other than from employment or operation of business

None
☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the  **two year** immediately preceding the commencement of this case.  Give particular If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed).

**See attachment 2 to the Statement of Financial Affairs**

### 3. Payments to Creditors

***Complete a. or b., as appropriate, and c.***

None

☑

*a. Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None

☐

b.*Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**See attachment 3b to the Statement of Financial Affairs**

None

☑

c.*All debtors:* List all payments made within **one year** immediately preceeding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**See attachment 3c to the Statement of Financial Affairs for Motors Liquidation Company**

None

☑

### 4. Suits, executions, garnishments, and attachments

a.  List all suits and administrative proceedings to which the debtor is or was a party within  **one year**  immediately preceding the filing of this bankruptcy case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None

☑

b.  Describe all property that has been attached, garnished, or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

### 5. Repossessions, foreclosures, and returns

None

☑

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

### 6. Assignments and receiverships

None ☑    a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☑    b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

### 7. Gifts

None ☑    List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

### 8. Losses

None ☐    List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 o chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

> **The Debtors routinely incur losses such as casualty or lawsuits in the ordinary course of business and is not aware of any material losses within the one year immediately preceding the Petition Date or since the Petition Date.**

### 9. Payments related to debt counseling or bankruptcy

None ☑    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, or consultation concerning debt consolidation, relief under the bankruptcy laws, preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

### 10. Other transfers

None ☑    List all other property, other than property transferred in the ordinary course of the business or financial affairs of the Debtor transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☑    b. List all property transferred by the debtor within **two years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

**11. Closed financial accounts**

None ☑

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**12. Safe deposit boxes**

None ☑

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**13. Setoffs**

None ☐

List all setoffs made by any creditor, including a bank, against debts or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

> **The Debtors routinely incur setoffs from third parties during the ordinary course of business. Setoffs in the ordinary course can result from various items, including setoffs of mutual prepetition obligations between a Debtor and a counterparty (a) that have been consented to by a Debtor in the ordinary course of business as part of a periodic reconciliation of accounts between them (and that did not involve cross-affiliate or triangular setoffs) and (b) as to which the counterparty has paid in full all amounts due to the Debtor relating to such accounts. These normal setoffs are consistent with the ordinary course of business in the Debtor's industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtor to list all such normal setoffs. Therefore, such normal setoffs are excluded from the Debtor's responses to Question 13.**

**14. Property held for another person**

None ☑

List all property owned by another person that the debtor holds or controls.

**15. Prior address of debtor**

None ☑

If the debtor has moved within the **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

None ☑

**16. Spouses and Former Spouses**

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington or Wisconsin) within **eight-years** immediately preceding the commencement of this case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

**17. Environmental Information**

For the purposes of this questions, the following definitions apply:

"Environmental Law" means any federal, state, of local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

| None ☑ | a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law. |
|---|---|

| None ☑ | b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice. |
|---|---|

| None ☑ | c. List all judicial or administrative proceedings, including settlements or order, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number. |
|---|---|

**18. Nature, location, and names of business**

| None ☐ | *a. If the debtor is an individual,* list the names, addresses and taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the **six-years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting of equity securities within the **six-years** immediately preceding the commencement of this case.

*If the debtor is a partnership,* list the names, addresses and taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting securities, within the **six-years** immediately preceding the commencement of this case.

*If the debtor is a corporation,* list the names, addresses and taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting securities, within the **six-years** immediately preceding the commencement of this case.

**See Schedule B-13** |
|---|---|

| None ☑ | b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101. |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the **six-years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sold proprietor or otherwise self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None ☐
a. List all bookkeepers and accountants who within the **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

**See attachment 19a to the Statement of Financial Affairs**

None ☐
b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

<u>**NAME AND ADDRESS**</u>

**Deloitte & Touche LLP
600 Renaissance Center, Suite 900
Detroit, MI 48243**

None ☐
c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

**Nicholas S. Cyprus, Chief Accounting Officer**

None ☐
d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the **two years** immediately preceding the commencement of this case by the debtor.

**At the end of each of their fiscal quarters and fiscal years and upon the occurrence of significant events, the Debtors prepared and filed with the Securities and Exchange Commission (the "SEC") Forms 10-K, 10-Q, and 8-K (collectively the "SEC Filings"). The SEC Filings contain financial information relating to the Debtors. Because the SEC Filings are publicly available, the Debtors do not maintain records of the parties who requested or obtained copies of any of the SEC Filings from the SEC or Debtors. In addition, the Debtors have historically provided certain parties, such as banks, auditors, potential investors, customers and financial advisors, financial statements that may not be part of a public filing. The Debtors do not maintain complete lists to track such disclosures. As such, the Debtors have not provided lists of these parties in the Statements.**

### 20. Inventories

None ☐
a. List the dates of the last two inventories taken of the debtor's property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

**Historically, the Debtors performed routine and continuous cycle counts of inventory located at the Debtors' various warehouses, distribution centers, and other locations. The Debtors have not included the results of these cycle counts on the Schedules and Statements. The Debtors have never performed a full wall-to-wall physical inventory at all of the Debtors' facilities simultaneously.**

None ☑
b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

### 21.  Current Partners, Officers, Directors and Shareholders

None
☑

   a.  If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

None
☐

   b.  If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent of more of the voting or equity securities of the corporation.

**See attachment 21b to the Statement of Financial Affairs**

### 22.  Former partners, officers, directors, and shareholders.

None
☑

   a.  If the debtor is a partnership, list each member who withdrew from the partnership within  **one year** immediately preceding the commencement of this case.

None
☐

   b.  If the debtor is a corporation, list all officers, or directors whose relationships with the corporation terminated within **one year** immediately preceding the commencement of this case.

**See attachment 22b to the Statement of Financial Affairs**

### 23.  Withdrawals from a partnership or distributions by a corporation

None
☑

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during  **one year** immediately preceding the commencement of this case.

**See attachment 3c to the Statement of Financial Affairs for Motors Liquidation Company**

### 24.  Tax Consolidation Group

None
☐

If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within the **six-years**  immediately preceding the commencement of this case.

**General Motors Corporation #38-0572515**

### 25.  Pension Funds

None
☑

If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within  **six-years** immediately preceding the commencement of this case.

7

**MLC of Harlem, Inc.**
**Case Number: 09-13558**

**Attachment 1**

**1.  Income from employment or operation of business**

| Year | Amount |
|------|--------|
| 12/31/2007 Annual Gross Revenue | $33,994,008 |
| 12/31/2008 Annual Gross Revenue | $29,748,618 |
| 05/31/2009 YTD Gross Revenue | $7,872,893 |

The revenue numbers listed above are presented on a deconsolidated basis; as such, the number reflects only revenue generated by the operational activities performed by the listed entity and excludes any revenue generated by parents and/or subsidiaries.

**MLC of Harlem, Inc.**                                                                                      **Attachment 2**
**Case Number:  09-13558**

## 2.  Income other than from employment or operation of business

| Type of Income | 2007 | 2008 | YTD 2009 (05/31/09) |
|---|---|---|---|
| Other Income | $0 | $0 | $4,525 |
|  | $0 | $0 | $4,525 |

The revenue numbers listed above are presented on a deconsolidated basis; as such, the number reflects only revenue generated by the operational activities performed by the listed entity and excludes any revenue generated by parents and/or subsidiaries.

**MLC of Harlem, Inc.**                                                          **Attachment 3b**

Case Number:      09-13558

**3b Net payments made to creditors within the past 90 days**

| Payee | Address | City, State & Zip | Payment Date | Payment Number | Payment Amount |
|-------|---------|-------------------|--------------|----------------|----------------|
| ADCOCK BROTHERS INC | NOT AVAILABLE | | 4/28/2009 | 11458 | $33,000 |
| | | | **ADCOCK BROTHERS INC SUBTOTAL** | | **$33,000** |
| ADP COMMERCIAL LEASING | 15 WATERVIEW BLVD | PARSIPPANY, NJ 07054 | 4/21/2009 | 11422 | $12,792 |
| | | | **ADP COMMERCIAL LEASING SUBTOTAL** | | **$12,792** |
| ADP DEALER SERVICES | 5 ADP BLVD | ROSELAND, NJ 07068 | 3/12/2009 | 11171 | $12,287 |
| ADP DEALER SERVICES | 5 ADP BLVD | ROSELAND, NJ 07068 | 4/29/2009 | 11466 | $11,907 |
| | | | **ADP DEALER SERVICES SUBTOTAL** | | **$24,193** |
| AMERICREDIT | 220 WHITE PLAINS RD | TARRYTOWN, NY 10591-5837 | 5/18/2009 | 11654 | $12,823 |
| | | | **AMERICREDIT SUBTOTAL** | | **$12,823** |
| AUTO TREND BARN | 1908 PARK AVE | NEW YORK, NY 10035-1152 | 3/2/2009 | 11090 | $21,893 |
| AUTO TREND BARN | 1908 PARK AVE | NEW YORK, NY 10035-1152 | 4/2/2009 | 11291 | $13,192 |
| AUTO TREND BARN | 1908 PARK AVE | NEW YORK, NY 10035-1152 | 5/11/2009 | 11569 | $8,112 |
| | | | **AUTO TREND BARN SUBTOTAL** | | **$43,197** |
| BANK OF AMERICA | 215 W 125TH ST | NEW YORK, NY 10027-4426 | 3/25/2009 | 11257 | $25,726 |
| | | | **BANK OF AMERICA SUBTOTAL** | | **$25,726** |
| BROOKSIDE MOTORS | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 5/29/2009 | 11734 | $19,200 |
| BROOKSIDE MOTORS | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 5/28/2009 | 11718 | $9,700 |
| BROOKSIDE MOTORS | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 5/26/2009 | 11699 | $14,400 |
| BROOKSIDE MOTORS | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 4/30/2008 | 11506 | $21,400 |
| BROOKSIDE MOTORS | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 5/1/2009 | 11499 | $20,900 |
| BROOKSIDE MOTORS | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 4/28/2009 | 11456 | $37,000 |
| | | | **BROOKSIDE MOTORS SUBTOTAL** | | **$122,600** |
| BROOKSIDE MOTORS INC | 1030 SPRINGFIELD RD | UNION, NJ 07083-8117 | 5/13/2009 | 11606 | $11,000 |
| | | | **BROOKSIDE MOTORS INC SUBTOTAL** | | **$11,000** |
| CAPITAL ONE AUTO FINANCE | 10 E 34TH ST | NEW YORK, NY 10016 | 5/1/2009 | 11490 | $17,477 |
| CAPITAL ONE AUTO FINANCE | 10 E 34TH ST | NEW YORK, NY 10016 | 3/27/2009 | 11271 | $13,812 |
| CAPITAL ONE AUTO FINANCE | 10 E 34TH ST | NEW YORK, NY 10016 | 5/1/2009 | 11485 | $11,856 |
| CAPITAL ONE AUTO FINANCE | 10 E 34TH ST | NEW YORK, NY 10016 | 5/1/2009 | 11486 | $34,504 |
| CAPITAL ONE AUTO FINANCE | 10 E 34TH ST | NEW YORK, NY 10016 | 5/1/2009 | 11487 | $15,468 |
| CAPITAL ONE AUTO FINANCE | 10 E 34TH ST | NEW YORK, NY 10016 | 5/1/2009 | 11489 | $11,663 |
| | | | **CAPITAL ONE AUTO FINANCE SUBTOTAL** | | **$104,779** |
| CHASE AUTO FINANCE | 900 STEWART AVE | GARDEN CITY, NY 11530 | 3/27/2009 | 11272 | $17,911 |
| CHASE AUTO FINANCE | 900 STEWART AVE | GARDEN CITY, NY 11530 | 3/31/2009 | 11276 | $47,399 |
| | | | **CHASE AUTO FINANCE SUBTOTAL** | | **$65,310** |
| CITI FINANCIAL AUTO | 10 MAIN ST # E | WOODBRIDGE, NJ 07095-3312 | 5/18/2009 | 11653 | $16,007 |
| | | | **CITI FINANCIAL AUTO SUBTOTAL** | | **$16,007** |
| CITIZENS AUTOMOBILE FINANCE INC | 1 CITIZENS PLAZA | PROVIDENCE, RI 02903 | 5/30/2009 | 11743 | $13,260 |

MLC of Harlem, Inc.                                                                                    **Attachment 3b**

Case Number:    09-13558

**3b Net payments made to creditors within the past 90 days**

| Payee | Address | City, State & Zip | Payment Date | Payment Number | Payment Amount |
|---|---|---|---|---|---|
| | | **CITIZENS AUTOMOBILE FINANCE INC SUBTOTAL** | | | **$13,260** |
| CON EDISON | 4 IRVING PL | NEW YORK, NY 10003-3598 | 5/28/2009 | 11705 | $23,200 |
| CON EDISON | 4 IRVING PL | NEW YORK, NY 10003-3598 | 4/21/2009 | 11424 | $25,813 |
| CON EDISON | 4 IRVING PL | NEW YORK, NY 10003-3598 | 3/20/2009 | 11240 | $41,369 |
| | | **CON EDISON SUBTOTAL** | | | **$90,383** |
| CONSUMER PORTFOLIO SERVICES INC | 19500 JAMBOREE ROAD | IRVINE, CA 92612 | 4/7/2009 | 11332 | $10,200 |
| | | **CONSUMER PORTFOLIO SERVICES INC SUBTOTAL** | | | **$10,200** |
| CORAL SPRINGS NISSAN INC | 9350 W ATLANTIC BLVD | CORAL SPRINGS, FL 33071 | 5/11/2009 | 11578 | $61,800 |
| CORAL SPRINGS NISSAN INC | 9350 W ATLANTIC BLVD | CORAL SPRINGS, FL 33071 | 5/13/2009 | 11609 | $57,700 |
| | | **CORAL SPRINGS NISSAN INC SUBTOTAL** | | | **$119,500** |
| DALE HARRIS | NOT AVAILABLE | | 5/15/2009 | 11639 | $6,250 |
| DALE HARRIS | NOT AVAILABLE | | 5/1/2009 | 11450 | $6,250 |
| DALE HARRIS | NOT AVAILABLE | | 5/28/2009 | 11722 | $6,250 |
| DALE HARRIS | NOT AVAILABLE | | 5/1/2009 | 11451 | $6,250 |
| | | **DALE HARRIS SUBTOTAL** | | | **$25,000** |
| DANIEL FERRARI & CO | NOT AVAILABLE | | 3/25/2009 | 11252 | $11,114 |
| | | **DANIEL FERRARI & CO SUBTOTAL** | | | **$11,114** |
| ENTERPRISE RENT A CAR | 600 CORPORATE PARK DRIVE | ST LOUIS, MO 63105 | 3/19/2009 | 11236 | $13,152 |
| ENTERPRISE RENT A CAR | 600 CORPORATE PARK DRIVE | ST LOUIS, MO 63105 | 4/21/2009 | 11429 | $10,345 |
| | | **ENTERPRISE RENT A CAR SUBTOTAL** | | | **$23,497** |
| FARRELL FRITZ PC | 370 LEXINGTON AVE | NEW YORK, NY 10017-6503 | 3/31/2009 | 11277 | $18,276 |
| FARRELL FRITZ PC | 370 LEXINGTON AVE | NEW YORK, NY 10017-6503 | 5/18/2009 | 11659 | $12,595 |
| FARRELL FRITZ PC | 370 LEXINGTON AVE | NEW YORK, NY 10017-6503 | 5/27/2009 | 11702 | $16,129 |
| | | **FARRELL FRITZ PC SUBTOTAL** | | | **$46,999** |
| GUILLERMO M SALAS | NOT AVAILABLE | | 5/29/2009 | 11723 | $6,250 |
| | | **GUILLERMO M SALAS SUBTOTAL** | | | **$6,250** |
| HIGHLINE CARS INC | 1889 ROUTE 38 | SOUTHAMPTON, NJ 08088 | 5/29/2009 | 11725 | $8,700 |
| HIGHLINE CARS INC | 1889 ROUTE 38 | SOUTHAMPTON, NJ 08088 | 5/6/2009 | 11527 | $89,300 |
| HIGHLINE CARS INC | 1889 ROUTE 38 | SOUTHAMPTON, NJ 08088 | 5/13/2009 | 11612 | $69,300 |
| | | **HIGHLINE CARS INC SUBTOTAL** | | | **$167,300** |
| INNOVATIVE MARKETING DIRECT INC | 3202 HENDERSON BLVD. SUITE 204B | TAMPA, FL 33609 | 5/13/2009 | 11611 | $10,500 |
| | | **INNOVATIVE MARKETING DIRECT INC SUBTOTAL** | | | **$10,500** |
| INVENTORY MANAGEMENT & CONSULTING SERV | NOT AVAILABLE | | 3/18/2009 | 11221 | $7,885 |
| | | **INVENTORY MANAGEMENT & CONSULTING SERV SUBTOTAL** | | | **$7,885** |
| JOLYDIA M. SABUR | NOT AVAILABLE | | 5/26/2009 | 11696 | $6,000 |
| | | **JOLYDIA M. SABUR SUBTOTAL** | | | **$6,000** |

**MLC of Harlem, Inc.**                                                                   Attachment 3b

Case Number:      09-13558

**3b Net payments made to creditors within the past 90 days**

| Payee | Address | City, State & Zip | Payment Date | Payment Number | Payment Amount |
|---|---|---|---|---|---|
| MANHEIM AUTO AUCTION | 1190 LANCASTER RD | MANHEIM, PA 17545-9789 | 4/22/2009 | 11433 | $6,310 |
| MANHEIM AUTO AUCTION | 1190 LANCASTER RD | MANHEIM, PA 17545-9789 | 5/5/2009 | 11523 | $13,295 |
| | | **MANHEIM AUTO AUCTION SUBTOTAL** | | | **$19,605** |
| MANHEIM DALLAS | 5333 W KIEST BLVD | DALLAS, TX 75236-1055 | 5/15/2009 | 11648 | $11,240 |
| | | **MANHEIM DALLAS SUBTOTAL** | | | **$11,240** |
| MANHEIM FOR LAUDERDALE | 5353 S STATE ROAD 7 | DAVIE, FL 33314 | 6/5/2009 | 11742 | $32,225 |
| | | **MANHEIM FOR LAUDERDALE SUBTOTAL** | | | **$32,225** |
| MORRISTOWN MOTOR CARS | 164 MORRIS ST | MORRISTOWN, NJ 07960 | 5/8/2009 | 11550 | $17,500 |
| | | **MORRISTOWN MOTOR CARS SUBTOTAL** | | | **$17,500** |
| MUNICIPAL CREDIT UNION (MCU) | P.O. BOX 3205 CHURCH STREET STATION | NEW YORK, NY 10007 | 5/30/2009 | 11747 | $8,244 |
| MUNICIPAL CREDIT UNION (MCU) | P.O. BOX 3205 CHURCH STREET STATION | NEW YORK, NY 10007 | 4/24/2009 | 11445 | $28,280 |
| MUNICIPAL CREDIT UNION (MCU) | P.O. BOX 3205 CHURCH STREET STATION | NEW YORK, NY 10007 | 5/30/2009 | 11748 | $7,710 |
| MUNICIPAL CREDIT UNION (MCU) | P.O. BOX 3205 CHURCH STREET STATION | NEW YORK, NY 10007 | 4/14/2009 | 11371 | $16,586 |
| | | **MUNICIPAL CREDIT UNION (MCU) SUBTOTAL** | | | **$60,819** |
| NATIONAL AUTO DEALERS EXCHANGE | 3328 US HIGHWAY 206 | BORDENTOWN, NJ 08505 | 5/7/2009 | 11538 | $15,580 |
| | | **NATIONAL AUTO DEALERS EXCHANGE SUBTOTAL** | | | **$15,580** |
| NEW YORK STATE CORPORATION TAX PROCESSING UNIT | ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE, SUITE 600 | ALBANY, NY 2231-0001 | 3/7/2009 | 11262 | $5,864 |
| | | **NEW YORK STATE CORPORATION TAX PROCESSING UNIT SUBTOTAL** | | | **$5,864** |
| SATURN OF DANBURY | 84 FEDERAL RD | DANBURY, CT 6810-5034 | 3/10/2009 | 11165 | $51,665 |
| | | **SATURN OF DANBURY SUBTOTAL** | | | **$51,665** |
| SATURN OF MANASSAS | 8132 SUDLEY RD | MANASSAS, VA 20109 | 4/2/2009 | 11295 | $32,579 |
| | | **SATURN OF MANASSAS SUBTOTAL** | | | **$32,579** |
| THE COBALT GROUP | 110 UNIVERSITY PL | NEW YORK, NY 10003 | 5/14/2009 | 11625 | $6,349 |
| THE COBALT GROUP | 110 UNIVERSITY PL | NEW YORK, NY 10003 | 4/16/2009 | 11389 | $5,812 |
| | | **THE COBALT GROUP SUBTOTAL** | | | **$12,161** |
| THE ZONE | NOT AVAILABLE | | 5/1/2009 | 11448 | $7,000 |
| | | **THE ZONE SUBTOTAL** | | | **$7,000** |
| TODD INGERSOLL | NOT AVAILABLE | | 3/10/2009 | 11164 | $25,000 |
| TODD INGERSOLL | NOT AVAILABLE | | 4/1/2009 | 11282 | $12,500 |
| | | **TODD INGERSOLL SUBTOTAL** | | | **$37,500** |
| TONSA AUTOMOTIVE INC | 6 WILLOW ST | MOONACHIE, NJ 07074-1501 | 3/25/2009 | 11251 | $10,695 |
| TONSA AUTOMOTIVE INC | 6 WILLOW ST | MOONACHIE, NJ 07074-1501 | 5/19/2009 | 11682 | $13,686 |
| | | **TONSA AUTOMOTIVE INC SUBTOTAL** | | | **$24,381** |
| UAW LOCAL 259 | 113 UNIVERSITY PL | NEW YORK, NY 10003 | 3/23/2009 | 11242 | $13,387 |
| UAW LOCAL 259 | 113 UNIVERSITY PL | NEW YORK, NY 10003 | 4/30/2009 | 11478 | $13,387 |
| | | **UAW LOCAL 259 SUBTOTAL** | | | **$26,775** |

**MLC of Harlem, Inc.**                                                                                    **Attachment 3b**
**Case Number:**    **09-13558**

**3b Net payments made to creditors within the past 90 days**

| Payee | Address | City, State & Zip | Payment Date | Payment Number | Payment Amount |
|---|---|---|---|---|---|
| UNIVERSAL UNDERWRITERS INSURANCE CO | 1400 AMERICAN LANE TOWER 1 FLOOR 19 | SCHAUMBURG, IL 60196 - 1056 | 5/29/2009 | 11732 | $11,373 |
| UNIVERSAL UNDERWRITERS INSURANCE CO | 1400 AMERICAN LANE TOWER 1 FLOOR 19 | SCHAUMBURG, IL 60196 - 1056 | 3/10/2009 | 11163 | $12,973 |
| UNIVERSAL UNDERWRITERS INSURANCE CO | 1400 AMERICAN LANE TOWER 1 FLOOR 19 | SCHAUMBURG, IL 60196 - 1056 | 4/12/2009 | 11377 | $10,600 |
| | | | UNIVERSAL UNDERWRITERS INSURANCE CO SUBTOTAL | | $34,946 |
| | | | **TOTAL** | | **$1,399,155** |

**MLC of Harlem, Inc.**
**Case Number:  09-13558**

**Attachment 19a**

**19a. Accountants and Bookkeepers Supervising Books, Records, and Financial Statements**

| Supervisor | Title | Address | City, State & Zip | Time Period |
|---|---|---|---|---|
| NICHOLAS S. CYPRUS | CHIEF ACCOUNTING OFFICER | 300 RENAISSANCE CENTER | DETROIT, MI 48265 | 12/01/2006 - 7/9/2009 |

**MLC of Harlem, Inc.**                                                                    **Attachment 21b**
**Case Number:  09-13558**

**21b.  Current Officers, Directors and Stockholders holding 5% or more of the voting or equity securities**

| Name and Address | Title |
| --- | --- |
| A. KYLE BRADEN | VICE PRESIDENT, SECRETARY AND CHIEF RESTRUCTURING OFFICER |
| ALBERT A. KOCH | PRESIDENT AND CHIEF EXECUTIVE OFFICER |
| EDWARD J. STENGER, JR. | EXECUTIVE VICE PRESIDENT |
| JAMES SELZER | VICE PRESIDENT AND TREASURER |

Motors Liquidation Company owns 100% of the equity interests of the Debtor.

**MLC of Harlem, Inc.**
**Case Number:  09-13558**

**Attachment 22b**

## 22b.  Former Officers and Directors

| <u>Name</u> | <u>Title</u> |
| --- | --- |
| CLARENCE OLIVER | FORMER DIRECTOR |
| MICHAEL GARRICK | FORMER DIRECTOR |
| MICHAEL MOZINGO | FORMER DIRECTOR |
| THOMAS DOKTORCIK | FORMER DIRECTOR |
| TIMOTHY RINKE | FORMER DIRECTOR |

**MLC of Harlem, Inc.**                                               **Case Number:  09-13558**

## DECLARATION CONCERNING DEBTOR'S STATEMENT OF FINANCIAL AFFAIRS

I, the Authorized Signatory of MLC of Harlem, Inc., declare under penalty of perjury that I have read the answers contained in the foregoing Statement of Financial Affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.


**Date:**      September 15, 2009              **Signature:**  **/s/ David F. Head**

                                                               David F. Head, Vice President and Assistant Secretary
                                                               **Name and Title**


*Penalty for making a false statement: Fine of up to $500,000, or imprisonment for up to 5 years, or both.  18 U.S.C. § 152 and 3571.*