**Hearing Date and Time: October 6, 2009, at 9:45 a.m. (prevailing Eastern Time)**
**Objection Deadline: October 1, 2009 at 4:00 p.m. (prevailing Eastern Time)**

Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:    (415) 543-4800
Facsimile:    (415) 972-6301
Email: kstrickland@rmkb.com
N. Kathleen Strickland, Esq. (*Pro Hac Vice Admission Granted*)

Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:    (212) 668-5927
Facsimile:    (212) 668-5929
Email: gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------- x | | |
| | : | Chapter 11 |
| In re | : | |
| | : | Case No. 09-50026(REG) |
| MOTORS LIQUIDATION COMPANY, et al., | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| ---------------------------------------- x | | |

**MOTION OF REMY INTERNATIONAL FOR AN ORDER EXTENDING AND
ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. § 362 (a) TO INCLUDE
CERTAIN LITIGATION AGAINST REMY INTERNATIONAL, OR ALTERNATIVELY,
ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   BACKGROUND ................................................................................. 2

III.  ARGUMENT ..................................................................................... 5

      A.    The Automatic Stay Should be Extended and Enforced as to Remy ................... 5

            i.    Unitary Interest Between Debtor and Third Party ..................................... 5

            ii.   JUDGMENT AGAINST NON-DEBTOR REMY WILL IMPAIR
                  DEBTOR GM'S ESTATE ................................................................ 8

            iii.  CONCLUSION ............................................................................. 9

      B.    In the Alternative, Remy is Entitled to a Preliminary Injunction Enjoining
            the GM D&I Cases, as Against Remy, Under 11 U.S.C. § 105 ........................ 10

IV.   WAIVER OF MEMORANDUM OF LAW ................................................... 14

V.    NOTICE .......................................................................................... 14

# TABLE OF AUTHORITY

Page

## FEDERAL CASES

*In re A.H. Robins Co.*, 788 F.2d 944 (4th Cir. 1986)........................................................ 5

*A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994 (4th Cir.), *cert. denied* 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct 251 (1986).................... 2, 6, 7, 8, 9, 10

*AP Industrial Inc. v. SN Phelps & Co. (In re AP Industrial, Inc.)*, 117 B.R. 789 (Bankr. S.D.N.Y. 1990) .............................................................................................. 11

*Alert Holdings, Inc. v. Interstate Protective Services (In re Alert Holdings, Inc.)*, 148 B.R. 194 (Bankr. S.D.N.Y. 1992) ............................................................................ 11

*American Film Technologies, Inc. v. Taritero (In re American Film Technologies, Inc.)*, 175 B.R. 847 (Bankr. D. Del. 1994) ...................................................................... 13

*C&J Clark America, Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*, 92 B.R. 87 (Bankr. S.D.N.Y. 1988)............................................................................................ 11

*Eastern Airlines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423 (Bankr. S.D.N.Y. 1990) ............................................................................................12, 13

*In re Family Health Services, Inc.*, 105 B.R. 937 (Bankr. C. D. Cal. 1989)..................... 6

*Garrity v. Leffler (In re Neuman)*, 71 B.R. 567 (S.D.N.Y. 1987) ............................11, 12

*In re Johns-Manville Corp.*, 26 B.R. 420 (Bankr. S.D.N.Y. 1983) *aff'd* 40 B.R. 219 (S.D.N.Y. 1984) *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984) ............................................................................................................................ 13

*In re Johns-Manville Corp.*, 33 B.R. 254 (Bankr. S.D.N.Y. 1983)............................... 5, 8

*In re Johns Manville Corp.*, 40 B.R. 219 (Bankr. S.D.N.Y. 1984) ...........................11, 13

*Johns-Manville Corp. v. Colorado Insurance Guaranty Association (In Re Johns-Manville Corp.)*, 91 B.R. 225 (Bankr. S.D.N.Y. 1988) ................................................. 11

*Keene Corp. v. Acstar Insurance Co. (In re Keene Corp.)*, 168 B.R. 285 (Bankr. S.D.N.Y. 1994) .............................................................................................................. 11

*LTV Steel Co. v. Board of Education (In re Chateaugay Corp., Reomar, Inc.)*, 93 B.R. 26 (S.D.N.Y. 1988)................................................................................................ 11

## TABLE OF AUTHORITY
### (continued)

**Page**

*Lesser v. 931 Investors (In re Lion Capital Group)*, 44 B.R. 690 (Bankr.
S.D.N.Y. 1984) ................................................................................................ 12

*Lomas Finance Corp. v. Northern Trust Co. (In re Lomas Finance Corp.)*, 117
B.R. 64 (S.D.N.Y. 1990) ........................................................... 5, 6, 8, 12, 14

*North Star Contracting Corp. v. McSpedon (In re North Star Contracting Corp.)*,
125 B.R. 368 (S.D.N.Y. 1991) ...................................................... 5, 6, 7, 8

*In re Otero Mills, Inc.*, 25 B.R. 1018 (Bankr. D.N.M. 1982) ......................................... 13

*Rosetta Resource Operating LP v. Pogo Producing Co.*, 48 Bankr. Ct. Dec. 56
(Bankr. S.D.N.Y. 2007) ..................................................................................... 8

*Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*, 140 B.R. 461 (Bankr. N.D. Ohio
1992) ................................................................................................................ 13

*Teachers Insurance and Annuity Association of America*, 803 F.2d at 65 ....................... 8

*In re United Health Care Organization*, 210 B.R. 228 (S.D.N.Y. 1997) ................... 8, 12

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 42 Bankr. Ct. Dec.
270 (Bankr. D.C. Del. 2004) ............................................................................. 6

### STATE CASES

*General Motors Corporation v. Royal & Sun Alliance Insurance Group, PLC, et
al.*, 2007 WL 1206830 (a copy of this decision is annexed hereto as Exhibit "A") ........... 9

### FEDERAL STATUTES

11 U.S.C. § 105 ............................................................................................. 1, 15

11 U.S.C. § 362 ............................................................................................. 1, 14

11 U.S.C. § 105(a). ............................................................................................. 10

**TABLE OF AUTHORITY**
**(continued)**

**Page**

**STATE STATUTES**

NY CLS Ins § 3420………………………………………………………………………………… ........... 9

Ind. Code § 27-1-13-7........................................................................................................... 9

215 ILCS 5/388...................................................................................................................... 9

R.I. Gen. Laws § 27-7-2.4.................................................................................................... 9

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Remy International, Inc. ("Remy") hereby files this motion seeking extension and enforcement of the automatic stay pursuant to 11 U.S.C. § 362 to prevent the prosecution of claims in various courts around the United States, or elsewhere, wherein plaintiffs seek monetary damage from Remy for personal injuries or wrongful death based on exposure to General Motors Corporation ("GM") manufactured products or GM owned plants or facilities (hereinafter referred to as " premises").  In the alternative, to the extent that the Court is not inclined to extend GM's automatic stay to Remy, Remy seeks a preliminary injunction preventing further prosecution of these cases as against Remy pursuant to 11 U.S.C. § 105 in order to avoid prejudice to GM's estate (the "Estate"), and to seek that this injunction become permanent at the time of Plan approval.

## I.
## PRELIMINARY STATEMENT

1.      As more fully described below, Remy has been named in several lawsuits for the sole reason that it purchased the assets, including the name, of the Delco Remy division of GM. The plaintiffs in these lawsuits have sued both GM and Remy. In each of these lawsuits, GM has agreed to defend and indemnify Remy since the lawsuits are based on GM manufactured products or GM owned premises – in other words, any liability of Remy could only be derivative of GM and GM products and/or premises. Hence, since these lawsuits are now stayed as to GM pursuant to the automatic stay of the bankruptcy court, Remy only seeks to have that same stay extend to Remy since GM has been defending Remy in these cases due to GM's contractual obligations to Remy under an Asset Purchase Agreement by and among DR International, Inc., DRA, Inc. and General Motors Corporation dated July 13, 1994, as more fully described below.

2.      Since February 20, 2003, there have been 20 lawsuits filed against Remy based on GM products/premises, and in 18 of those[1] GM has defended and indemnified Remy (hereinafter

---

[1] In one of the remaining actions, *Nangle v. A.W. Chesterton*, the plaintiff filed his first amended complaint on June 8, 2009 – after GM filed for bankruptcy.  In the other, *Bynum v. Remy Inc., et al.*, Remy tendered the action to GM but received no response.  Bynum's counsel has informed Remy's counsel that he has no objection to dismissing Remy, and Remy is in the process of obtaining that dismissal.

referred to in this motion as the "GM D&I Cases".) (See the declaration of Mr. Jeremiah Shives, Deputy General Counsel for Remy, with accompanying exhibits.) As of this filing, there appear to be only five civil lawsuits remaining, pending in three different state courts:  Illinois, Indiana and Rhode Island.  These cases are still "open" although one may soon be dismissed and as to another we have been informed that it was settled as part of a GM settlement prior to the bankruptcy filing and await documentation.

3.    It is clear from GM's defense of and indemnification of Remy in these lawsuits based on GM products and/or premises, that there is such a "unity of interest" between GM and Remy that GM may be said to be the "real party in interest," and these cases are precisely the "unusual circumstances" contemplated by the Fourth Circuit in the seminal case of *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 999 (4th Cir.), *cert. denied* 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct 251 (1986) for which an extension of the automatic stay or injunction against prosecution of claims against a non-debtor is appropriate.

## II.
## BACKGROUND

4.    The following facts are taken from the Declaration of Jeremiah Shives, Deputy General Counsel for Remy:

a.    Delco Remy was a division of GM until 1994, when substantially all of the assets of that division, including its name, were sold to DRA, Inc., a Delaware corporation created in 1993 by a group of private investors led by former Chrysler President Harold K. Sperlich and Delco Remy division Executive Thomas J. Snyder.  That sale was accomplished through an Asset Purchase Agreement by and among DR International, Inc., DRA, Inc. and General Motors Corporation dated July 13, 1994 (hereinafter "Agreement" or "APA").  Prior to its purchase of the assets of GM's Delco Remy division, DRA, Inc. did not manufacture, distribute or sell any products – it was merely a shell corporation incorporated by Citicorp Ventures to carry out the asset purchase under the Agreement.

b.    A true and correct copy of relevant excerpts of the Agreement are attached to the Declaration of Jeremiah Shives as Exhibit A.

-2-

c.     Under the terms of the Agreement, DRA, Inc. did not assume any responsibility for General Motors products manufactured prior to July 13, 1994, nor did it assume responsibility for any real property or premises owned by General Motors, all of which were "Excluded Liabilities" under the Agreement. Specifically, DRA, Inc. did not assume any liability for any claim relating to any General Motors product nor to any claim arising from any property owned by General Motors.

d.     After purchasing the assets of GM's Delco Remy division, DRA, Inc. became a manufacturer and re-manufacturer of automotive parts, including starters and alternators, which were products GM's Delco Remy division also formerly manufactured.

e.     In 2004, the entity formerly know as DRA, Inc. changed its name to Remy International, Inc.

f.     Pursuant to the Agreement GM retained certain liabilities relating to the assets being sold under that agreement (the "Retained Liabilities"). Among the "Retained Liabilities" enumerated in section 5.2 of the Agreement are the following: "(i) any liability or obligation of GM existing as a result of any act, failure to act or other state of facts or occurrence which constitutes a breach or violation of any of GM's representations, warranties, covenants or agreements contained in this Agreement; (ii) any product liability claim of any nature in respect of products of the Businesses [GM] manufactured on or prior to the Closing Date; . . . (v) any obligation or liability arising under any Contract, instrument or agreement that (a) is not transferred to Purchaser as part of the Purchased Assets; . . .and (xiv) liabilities in connection with any matter as to which GM has responsibility or liability under Article VIII [entitled 'Environmental Matters']."

g.     In conjunction with GM's retention of the "Retained Liabilities," in section 5.3.1(A) of the Agreement, GM agreed to indemnify and hold Remy harmless from any damages relating to the Retained Liabilities. Paragraph 5.3.1(A) of the Agreement provides: "GM shall indemnify [Remy] . . . and hold [Remy] . . . harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or

-3-

otherwise, relating directly to or indirectly to, arising out of or resulting from (i) any misrepresentation or breach of any representation, warranty, covenant or agreement made by GM in this Agreement or in any statement, document or certificate furnished or required to be furnished to [Remy] pursuant hereto; . . . or (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing."

h.    Pursuant to section 5.3.1(C) of the Agreement, the term "Damages" means "any and all losses, liabilities, third party damages (including fines, penalty and punitive damages), deficiencies, interest, costs and expenses and any actions, judgments, costs and expenses (including reasonable attorneys' fees and all other reasonable expenses incurred in investigating, preparing or defending any litigation or proceeding, commenced or threatened) relating to, or incident to the enforcement of, this Agreement."

i.    In addition to the indemnity and defense obligations in sections 5.2 and 5.3.1 of the Agreement, pursuant to section 8.12.3 of the Agreement GM agreed to "defend, indemnify and hold [Remy] harmless from and against any liabilities, damages, penalties, costs, expenses and fines, including reasonable attorney's fees . . . (the "Adverse Consequences") to which [Remy] may be subjected as a result of an action, suit, complaint, formal Notice of probable claim, or proceeding brought by a government agency or other third party (the "Claim"), but only to the extent such Claim is based upon or with respect to clause (i) directly arises as a result of any remedial activity by GM in connection with: (i) an Identified Pre-Closing Environmental Condition . . . or (ii) any breach by GM of the representation and warranties in Section 8.12.2A. . . ." Section 8.12.2(A) of the Agreement concerns GM's representations and warranties regarding environmental conditions at the premises that were being leased by GM to Remy.

j.    After the Agreement was executed in 1994 through and until July 16, 2009, GM has been defending Remy in lawsuits filed by persons alleging exposure to products manufactured by GM prior to the Closing Date of the Agreement and to premises owned by GM

-4-

– in other words, actions in which any liability of Remy could only be derivative of GM's liability under the Agreement and as law. Because Remy has no liability for any product manufactured by GM prior to the Closing Date of the Agreement, which was July 13, 1994, nor for any premises owned by GM, GM has accepted these tenders and has defended and indemnified Remy in all cases covered by the APA . At this time, it appears that there are four remaining "open" cases out of the 19 cases tendered to GM (three of which tenders have been accepted by GM). Those cases are *Timothy Bynum, William Cawlfield, Robert Phillips* and *Clement Wydra*, case captions of which are attached to the Declaration of Jeremiah Shives as Exhibits B, C, D and E.

       k.      In addition to the four cases discusses above, there is one action (*Nangle v. A.W. Chesterton, Inc., et al.*) the first amended complaint for which was filed on June 8, 2009 - after GM filed for bankruptcy – which names Remy and alleges exposure to products and premises from 1960 to 2004. While GM is not named in the *Nangle* matter – presumably because of the bankruptcy filing – the plaintiff's allegations of exposure to Remy products and premises from 1960 to 2004 necessarily invokes GM's defense and indemnity obligations under the Agreement because Remy did not begin doing business until 1994. Any alleged exposures from 1960 to 1994 constitute "Retained Liabilities" under the Agreement, and the *Nangle* matter is therefore one in which, absent the bankruptcy filing, GM would undeniably be obligated to defend and indemnify Remy. The case caption for *Nangle* is attached to the Declaration of Jeremiah Shives as Exhibit F.

       l.      On July 16, 2009, GM informed Remy that it did not intend to continue to honor the Agreement. This information came in an email from Mr. Maynard Timm, Esq., of GM Legal Staff, to counsel for Remy stating in pertinent part that: (a) on July 10, 2009, "GM" emerged from Chapter 11 Bankruptcy and became "General Motors Company," a new entity; (b) as part of the bankruptcy process, General Motors Company did not assume the Agreement; (c) General Motors Company will not assume any responsibility under the Agreement for asbestos

litigation; and (d) "GM" will shortly be communicating this information to outside counsel representing "GM" and Remy.

m.    A true and correct copy of the July 16, 2009 email from Mr. Timm is attached to the Declaration of Jeremiah Shives as Exhibit N.

### III.
### ARGUMENT

**A.    The Automatic Stay Should be Extended and Enforced as to Remy**

    **i.    Unitary Interest Between Debtor and Third Party**

5.    While the automatic stay provisions of the Bankruptcy Code typically protect estate property by barring proceedings against the debtor itself "some courts have recognized that in circumstances where the debtor and the non-bankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend the action against a non-bankrupt party." (*North Star Contracting Corp. v. McSpedon* (*In re North Star Contracting Corp.*), 125 B.R. 368, 370 (S.D.N.Y. 1991); *see also*, *Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.*), 117 B.R. 64 (S.D.N.Y. 1990); *In re Johns-Manville Corp.*, 33 B.R. 254, 263-64 (Bankr. S.D.N.Y. 1983).

6.    In particular, when certain "unusual circumstances" exist the automatic stay may apply to actions against non-debtors "whose interest are so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest." (*In re A.H. Robins Co.*, 788 F.2d 944, 1001 (4th Cir. 1986); *see also In re North Star Contracting Corp.*, 125 B.R. at 370-71 (holding that the lower court "correctly recognized that an identity of interest exists" between the debtor and the non-debtor warranting application of a stay because the non-debtor had "a right of indemnification with respect to [the debtor] and thus any recovery by [the plaintiff] in the state court action [would] adversely affect [the debtor's] assets"); *In re Lomas Fin. Corp.*, 117 B.R. at 68.) "These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets." (*In re North Star Contracting Corp.*, 125 B.R. at 370-71; *see also, e.g., In re Lomas Fin. Corp.*, 117 B.R. at 68.) As explained in the Fourth

-6-

Circuit's leading decision in *A.H. Robins Co.*, "unusual circumstances" which justify the

extension of the bankruptcy stay to a non-debtor, arise:

> when there is such identity between the debtor and the third-party
> defendant that the debtor may be said to be the real party defendant
> and that a judgment against the third party defendant will in effect
> be a judgment or finding against the debtor. ***An illustration of***
> ***such a situation would be a suit against a third-party who is***
> ***entitled to absolute indemnity by the debtor on account of any***
> ***judgment that might result against them in the case. To refuse***
> ***application of the stay in that case would defeat the very purpose***
> ***and intent of the statute.***

(*A.H. Robins, supra*, 788 F.2d at 999 (emphasis added); *see also In re North Star Contracting*

*Corp.*, 125 B.R. at 370 (citing *A.H. Robins* with approval and noting that the "issue of when a

non-bankrupt party should benefit from a section 362(a)(1) stay has been considered most

persuasively by the Fourth Circuit" in *Robins*); *In re Family Health Services, Inc.*, 105 B.R. 937,

942-943 (Bankr. C. D. Cal. 1989) (staying several collection actions against non-debtor members

of a debtor HMO *because judgments against non-debtors would trigger claims for*

*indemnification from the debtor*), *emphasis added*; *W.R. Grace & Co. v. Chakarian* (*In re W.R.*

*Grace & Co.*), 42 Bankr. Ct. Dec. 270 (Bankr. D.C. Del. 2004) (extending the stay to an action

between a third party and a defendant who was entitled to indemnification from the debtor

pursuant to a stock purchase agreement *because the action had "a direct effect on the*

*reorganization proceedings of these Debtors"* and the "Debtors are contractually obligated to*

*defend [the non-debtor defendant]* and, to the extent Samson is found liable, Debtors must

indemnify Samson"), *emphasis added*.)

      7.     In this case, there does exist such a unity of interest that there is no doubt that the

authority cited above is clearly applicable because GM has been indemnifying Remy already in

the cases to which Remy seeks to extend the GM stay to itself; for all practical purposes, GM is

Remy in these cases because these were GM products or GM facilities, as Remy was not in

existence. Instead Delco Remy was a division of GM, a part of GM. There can be no greater

unity of interest than to be sued as a part of the whole, and no greater injustice to have the

"whole" stayed but not the "part." Here, the Agreement and the pending cases in which GM has agreed, and has actually undertaken, to defend and indemnify Remy constitute the unitary interest, the "unusual circumstances" required to apply the automatic stay to non-debtor Remy because Remy is "the beneficiary of an express contract of indemnification on the part of" the debtor GM. (*A.H. Robins, supra*, 788 F.2d at 1007.)  The dates of GM's acceptances of Remy's tenders of defense are contained in Exhibits H, J and L to the Declaration of Jeremiah Shives. Clearly, the fact that GM has already accepted and agreed to defend Remy in three[2] of these pending cases confirms GM's obligations under 5.2 and 5.3.1 of the Agreement, whereby the Debtor agreed to "indemnify [Remy] . . . and hold [Remy] . . . harmless from and against" all costs and expenses including, without  limitation, among others, attorneys fee, damages, losses, disbursement, etc., arising out of any of the Retained Liabilities, which include any and all claims and litigation against Remy arising out of or relating to products manufactured, distributed or sold by the Debtor prior to the date of the Closing Date.

    8.      GM is sued in the same cases Remy has been sued in; GM has agreed to defend and indemnify Remy. The cases as to GM are now stayed due to the bankruptcy. It is only just that this stay be extended as to Remy because by accepting the tender, GM has admitted that it is responsible for those cases, not Remy. Certainly, where it can be said that debtor and the non-bankrupt party can be considered one entity or as having a unitary interest, a section 362(a)(1) stay may suspend the action against a non-bankrupt party, per *North Star Contracting Corp. v. McSpedon* (*In re North Star Contracting Corp.*), 125 B.R. 368, 370 (S.D.N.Y. 1991) *Lomas Fin. Corp. v. Northern Trust Co.* (*In re Lomas Fin. Corp.*), 117 B.R. 64 (S.D.N.Y. 1990); *In re Johns-Manville Corp.*, 33 B.R. 254, 263-64 (Bankr. S.D.N.Y. 1983).  Also under the facts of this case, it is clear that GM has agreed to provide Remy with complete indemnity, pursuant to the Agreement, and hence the authority of *A.H. Robins Co.* is clearly applicable to warrant this Court extending the stay in these cases also to Remy.

---

[2] In the fourth case, Bynum, the plaintiffs counsel informed Remy that they need not respond to the complaint since Remy never owned the premises at issue ,and counsel for Remy is in the process of obtaining a dismissal in this matter.

### ii.    JUDGMENT AGAINST NON-DEBTOR REMY WILL IMPAIR DEBTOR GM'S ESTATE

9.      "These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets." (*In re North Star Contracting Corp.*, 125 B.R. at 370-71; *see also, e.g., In re Lomas Fin. Corp.*, 117 B.R. at 68.) "[S]everal courts have held that under specific circumstances non-debtors may be protected by the automatic stay…if it contributes to the debtor's efforts to achieve rehabilitation." (*In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y. 1997), quoting *Teachers Ins. and Annuity Ass'n of Am.*, 803 F.2d at 65; *Rosetta Res. Operating LP v. Pogo Producing Co.*, 48 Bankr. Ct. Dec. 56 at 10-11 (Bankr. S.D.N.Y. 2007) (staying an action against a non-debtor because "1) adjudication of [non-debtor's] liability under the Pogo PSA may effectively be an adjudication of issues regarding the Debtors' liability without giving Calpine an opportunity to adequately defend itself; 2) if the Arbitration is allowed to go forward . . . and [non-debtor] is found liable in the Arbitration, the Debtors may be required to indemnify [non-debtor] for any judgment amount; and 3) the Debtors would have to expend time and energy responding to discovery and protecting their interests if the Arbitration were permitted to go forward").)

10.     A judgment or finding in these "open, pending" cases against Remy would cause Remy to increase its claim against the estate of GM because it would trigger a claim for indemnification as set forth above which would include the amount of any judgment, as well as for defense costs incurred during the pendency of these cases. (*See, A.H. Robins, supra*, 788 F.2d at 999.)

11.     Similarly, cases filed against Remy coming within the parameters of the Agreement could trigger direct claims by Remy against GM's insurers, at least one of which has been held obligated to pay for liability and defense costs relating to cases such as those within the parameters of the Agreement, to the extent they relate to claims within the policy period. (*See generally, General Motors Corporation v. Royal & Sun Alliance Ins. Group, PLC, et al.* 2007 WL 1206830 (a copy of this decision is annexed hereto as Exhibit "A")).  Like New York (NY CLS Ins § 3420), Illinois (215 ILCS 5/388), Indiana (Ind. Code § 27-1-13-7) and Rhode

Island (R.I. Gen. Laws § 27-7-2.4) allow injured parties to access the liability policies of a debtor in bankruptcy. This, if it were to occur, would clearly implicate property of the estate. As stated by the court in *A.H. Robins*, a products liability policy of the debtor is "valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be, as one court has remarked in a case like the one under review, "the most important asset of [i.e., the debtor's] estate." (*A.H. Robins, supra*, 788 F.2d at 1002, citing *In re Johns Manville Corp.*, 40 B.R. 219, 229 (Bankr. S.D.N.Y. 1984).) "Any action in which the judgment may diminish this 'important asset' is unquestionably subject to a stay under this subsection." (*A.H. Robins, supra*, 788 F.2d at 1002.)

12.     Accordingly, GM's interests are at stake in the GM D&I Cases notwithstanding the fact that GM itself is no longer a party because of the bankruptcy filing. To "refuse application of the stay in" the GM D&I Cases "would defeat the very purpose and intent of the statute" since continued litigation of the pending GM D&I Cases and future cases which come within the parameters of the APA could effectively result in the estate incurring substantial costs and being held responsible for Remy's losses by virtue of collateral estoppel – liability that Section 362(a) is intended to protect. (*A.H. Robins, supra*, 788 F.2d at 999.)

**iii.    CONCLUSION**

13.     It is clear that there is such a unitary interest between GM and Remy in these GM D&I cases that the case law cited above clearly supports extending the GM stay to Remy in this circumstance. Additionally, the line of cases discussing impairment to the Debtors estate should the stay not be extended also clearly apply in this situation because GM has agreed to indemnify Remy in these cases, and should litigation pursue against Remy were the cases not stayed, Remy would then be forced to seek enforcement of GM's indemnity and insurance obligations, thereby triggering "impairment" of the Debtor's estate.

14.     Furthermore, the plaintiffs in the present and future cases which come within the parameters of the APA should not be permitted to make an end run around the protections of Section 362 by prosecuting claims asserted against the GM through litigation with Remy – a

party which GM has agreed to defend and indemnify. Remy is entitled to these protections as well, since the cases coming within the terms of the APA are really cases filed against GM, the debtor and which are now stayed due to the bankruptcy. Had these cases not been "GM" cases, GM would never have accepted Remy's tender throughout the years and up to July 16, 2009. To permit plaintiffs to now pursue Remy in cases in which GM has agreed to defend and indemnify Remy would be to allow plaintiffs to try to achieve by indirect means the very same result that it is undisputed that Section 362 would prohibit if pursued directly.  Because "the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code" (*A.H. Robins, supra*, 788 F.2d at 999), enforcement of Section 362 is warranted and the claims as against Remy in all pending cases, including at least the *Bynum*, *Cawlfield*, *Phillips*, *Wydra* and *Nangle* actions, as well as in all future GM D&I Cases should be stayed, and this court should retain jurisdiction to make this preliminary extension of the stay become a permanent extension applying to any future cases filed against Remy which come within the terms of the Agreement.

**B.**      **In the Alternative, Remy is Entitled to a Preliminary Injunction Enjoining the GM D&I Cases, as Against Remy, Under 11 U.S.C. § 105**

15.      Section 105(a) authorizes the Court to "issue any order…necessary or appropriate to carry out the provisions of the" Bankruptcy Code.  (11 U.S.C. § 105(a).)  The Court's authority under Section 105 "is broader than the automatic stay provisions of Section 362" and the Court "may use its equitable powers to assure the orderly conduct of the reorganization proceedings" or to "enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it."  (*Johns-Manville Corp. v. Colorado Ins. Guar. Ass'n* (*In Re Johns-Manville Corp.*), 91 B.R. 225, 227-8 (Bankr. S.D.N.Y. 1988), quoting *LTV Steel Co. v. Board of Educ.* (*In re Chateaugay Corp., Reomar, Inc.*), 93 B.R. 26, 29 (S.D.N.Y. 1988); *accord, Alert Holdings, Inc. v. Interstate Protective Servs.* (*In re Alert Holdings, Inc.*), 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992); *AP Indus. Inc. v. SN Phelps & Co.* (*In re AP Indus, Inc.*), 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990); *Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567, 571 (S.D.N.Y. 1987).  It is a proper exercise of a Court's authority under

-11-

Section 105 to extend a Section 362 injunction to stay an action as to a non-debtor where necessary to insure an orderly reorganization to enjoin proceedings in other courts when such proceeding would impair its jurisdiction regarding the case before it.  (*See*, *In re Johns Manville Corp.*, 40 B.R. 219, 226 (Bankr. S.D.N.Y.  1984) (holding that "[p]ursuant to the exercise of [its] authority [under Section 105] the Court may issue or extend stays to enjoin a variety of proceedings which will have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan")).

16.    The standard for issuance of injunctive relief under Section 105 is whether the action to be enjoined is one that would "embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects…."  (*In re Alert Holdings, supra*, 148 B.R. at 200; *see also*, *Keene Corp. v. Acstar Ins. Co.* (*In re Keene Corp.*), 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) (The Court "can enjoin an activity that threatens the reorganization process or impairs the Court's jurisdiction with respect to a case before it"); *In re Neuman*, *supra*, 71 B.R. at 571-2; *In re Chateaugay Corp. Reomar, supra*, 93 B.R. at 31; *In re Johns-Manville Corp.*, 91 B.R. at 227-8.)

17.    In contrast to a preliminary injunction motion outside the bankruptcy context, Section 105 does not require the existence of irreparable injury.  (*See*, *In re Keene Corp.*, *supra*, 164 B.R. at 292; *C&J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988) ("The usual grounds for injunctive relief such as irreparable injury need not be shown in a proceeding for an injunction under Section 105(a)"); *Newman*, *supra*, 71 B.R. at 571.

18.    Here, even if the GM D&I  Cases are not subject to the automatic stay, which they are, an injunction against continued prosecution of the GM  D&I Cases against Remy is necessary and appropriate to protect GM's estate and reorganization prospects, and to ensure that those cases do not impede GM's reorganization proceedings.

19.    As discussed above, the plaintiffs in the GM D&I Cases could try to use findings as to Remy – which would be nothing more than a surrogate for GM under these facts – against

-12-

GM in any subsequent lawsuits.  In effect, then, a finding against Remy in the GM D&I case

may serve as a finding against GM, even though GM is no longer a party to those cases.  Such a

finding could trigger additional claims by third parties against GM's Estate, seeking to apply to

GM, via collateral estoppel, the findings in the lawsuit against Remy.  Moreover, a finding

against Remy would trigger an indemnification claim by Remy against GM's Estate pursuant to

the APA, and would also trigger a claim by Remy against any of GM's applicable insurance

policies, thus both causing Remy to file an amended – increased – claim against GM's Estate,

also in order to enforce the Agreement.

    20.     The threatened impairment of the Debtor's estate were the stay not extended to

Remy alone is a strong reason for this court's application of the automatic stay provision of

Section 362(a).  Even if the court were not inclined to extend the stay to Remy, the potential

collateral estoppel effects of proceeding with the GM D&I Cases as against Remy would warrant

this court's enjoining such GM D&I cases from proceeding  pursuant to Section 105.

    21.     Courts routinely recognize that Section 105 of the Bankruptcy Code may be used

to enjoin litigation against non-debtors where there is the potential threat of the debtor being

collaterally estopped from asserting potential defenses if an adverse judgment is rendered against

a non-debtor.  (*See, In re United Health Care Org.*, *supra*, 210 B.R. at 232; *Eastern Airlines, Inc.*

*v. Rolleston* (*In re Ionosphere Clubs, Inc.*), 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990); *In re*

*Lomas Fin. Corp.*, *supra*, 117 B.R. at 67; *Lesser v. 931 Investors* (*In re Lion Capital Group*), 44

B.R. 690, 703 (Bankr. S.D.N.Y. 1984); *American Film Technologies, Inc. v. Taritero* (*In re*

*American Film Technologies, Inc.*), 175 B.R. 847, 849-50 (Bankr. D. Del. 1994); *Sudbury, Inc. v.*

*Escott* (*In re Sudbury, Inc.*), 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992); *In re Johns-Manville*

*Corp.*, 26 B.R. 420, 429 (Bankr. S.D.N.Y. 1983) *aff'd* 40 B.R. 219 (S.D.N.Y. 1984) *rev'd in part*

*on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984); *In re Otero Mills, Inc.*, 25 B.R. 1018, 1020

(Bankr. D.N.M. 1982); *In re Johns Manville Corp., supra*, 40 B.R. at 226.)

    22.     For example, in *In re Ionosphere Clubs Inc.*, the Court enjoined actions against

the debtor's co-defendants since the claims against the debtor and the co-defendants were

-13-

"inextricably interwoven, presenting common questions of law and fact" such that a finding of liability as to debtor's co-defendants could be extended to debtor, and collateral estoppel could bar the debtor from litigating factual and legal issues critical to its defense. (*In re Ionosphere Clubs, Inc., supra*, 111 B.R. at 434.)

23.     Similarly, *In Re Sudbury, Inc.* involved allegations of fraud based "primarily on allegations that the Debtor's business and finances were not properly represented in Debtor's financial and business information furnished the Plaintiffs" by the debtor's officers and directors. (*In re Sudbury, Inc., supra*, 140 B.R. at 463.)  The Court recognized that "it is not plausible that the defendants in these actions could be found liable to Plaintiffs except on facts that would impose liability on the Debtor." (*Id.*)  Accordingly, the Court concluded that "Debtor asserts credibly that under these circumstances its liability may be determined on collateral estoppel principles in Plaintiffs' action" (*Id.*), and enjoined further prosecution of the fraud action pursuant to Section 105 even though the debtor was not a defendant in the fraud action.

24.     In *In re American Film Technologies, Inc.* the Court stayed prosecution of wrongful discharge claims against former and present directors of debtor corporation recognizing that a finding of liability against the directors would expose the debtor to "the risk of being collaterally estopped from denying liability for its directors' action." (*In re American Film Technologies, Inc., supra*, 175 B.R. at 850.)  And, in *In re Lomas Fin. Corp.* the court similarly upheld a stay of fraudulent misrepresentation actions against debtors' directors and officers because it was "not possible for the debtor…to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a pre-petition creditor." (*In re Lomas Fin. Corp., supra*, 117 B.R. at 67.)

25.     Here, as in the cited cases, the claims against Remy in the GM D&I  Cases are inextricably interwoven with claims against GM, presenting common issues of law and fact such that a finding of liability against Remy could bar GM from litigating factual and legal issues that would be critical to GM's own defense of any future asbestos cases filed against GM.

-14-

26.    Accordingly, an injunction under Section 105 is necessary and appropriate to further the purposes of the Bankruptcy Code.

### IV.
### WAIVER OF MEMORANDUM OF LAW

27.    Because this Motion does not present any novel issues of law and the legal precedent, statutory provisions and rules upon which Remy relies are set forth herein, Remy requests that the Court waive and dispense with the requirement set forth in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of this Motion.  Remy reserves the right, however, to submit a reply memorandum of law in the event objections to the Motion are filed.

### V.
### NOTICE

28.    Notice of this Motion has been given to: (a) all interested parties to the above-caption bankruptcy cases in the manner required by this Court's August 3, 2009 "Case Management Procedures Order;" and (b) all counsel representing affected parties in the GM D&I Cases.  Remy respectfully submits, and requests that at any hearing on the Motion, this Court find that no other notice is necessary or required.

29.    No previous motion for the requested relief has been made to this or any other Court.

WHEREFORE, Remy respectfully requests that the Court extend the bankruptcy stay provided by 11 U.S.C. § 362 to include Remy and then enforce the stay by issuing an order, in a form substantially similar to the Proposed Order annexed hereto as Exhibit "B," that confirms all pending claims against Remy, filed in the GM D&I Cases, are hereby stayed, and all future claims filed against Remy in this class of cases are hereby stayed until further order of this court, and that this court will retain jurisdiction of this matter for such purposes. Alternatively, Remy respectfully requests that this Court issue an preliminary injunction, pursuant to 11 U.S.C. § 105, enjoining further prosecution of the GM D&I cases against Remy, and to retain jurisdiction to

make such injunction permanent as to all future cases filed against Remy which come within the

terms of the Agreement, and to grant such other further relief as is just and proper.


Dated: September 16, 2009                   Respectfully submitted,
        San Francisco, CA
                                            ROPERS, MAJESKI, KOHN & BENTLEY

                                            By:  /S/  N. Kathleen Strickland
                                                 N. KATHLEEN STRICKLAND, Esq.
                                                 Ropers Majeski Kohn & Bentley
                                                 201 Spear Street, Suite 1000
                                                 San Francisco, CA 94105
                                                 Telephone:(415) 543-4800
                                                 Facsimile: (415) 972-6301
                                                 Email:      kstrickland@rmkb.com

                                                 GEOFFREY W. HEINEMAN, Esq.
                                                 Ropers Majeski Kohn & Bentley
                                                 17 State Street, Suite 2400
                                                 New York, NY 10004
                                                 Telephone:(212) 668-5927
                                                 Facsimile: (212) 668-5929
                                                 Email:      gheineman@rmkb.com

                                                 Attorneys for Creditor
                                                 REMY INTERNATIONAL, INC.