# EXHIBIT A



Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
(Cite as: 2007 WL 1206830 (Mich.App.))

Page 1

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Appeals of Michigan.
GENERAL MOTORS CORPORATION, Plaintiff-
Appellant,
v.
ROYAL & SUN ALLIANCE INSURANCE
GROUP PLC, Royal & Sun Alliance USA, Inc.,
Royal Indemnity Co., and Royal Insurance Co. of
America, f/k/a Royal Globe Insurance Co., Defend-
ant-Appellee.
No. 267308.

April 24, 2007.

Oakland Circuit Court; LC No. 05-063863-CK.

Before: FORT HOOD, P.J., and MURRAY and
DONOFRIO, JJ.

PER CURIAM.

*1 Plaintiff appeals by delayed leave granted from
the trial court's order denying plaintiff's motion for
summary disposition. We reverse.

Plaintiff and defendants entered into a series of in-
surance policies that covered the period between
August 18, 1954, and December 31, 1971. The in-
surance policies were classified as occurrence
based policies. An occurrence based policy
provides coverage for liabilities that arise out of in-
jury or damage suffered during the policy period,
irrespective of when the injured party brings the
claim against the policyholder. This type of policy
potentially covers losses even if the damage is dis-
covered or reported after the policy period ends. In
1972, it was alleged that the high cost of the occur-

rence based coverage caused the parties to switch to
claims-reported coverage. Under this type of
policy, coverage is potentially covered for those
claims that are reported during the policy period.
To reflect the change in the type of coverage, En-
dorsement 15 was added to the comprehensive liab-
ility policy. Although Endorsement 15 was dated
March 22, 1972, it contained a retroactive effective
date and provided:

Insuring Agreement # IV-Policy Period-Territory is
amended as follows:

This policy applies worldwide, only to occurrences
which are reported to the Insured or the Com-
pany, whichever occurs first, during the policy
period provided the services, goods, or products
were manufactured, sold, handled or distributed
within the United States of America, territories,
possessions, or Canada. The date of the report to
the Insured or the Company, shall be deemed the
date of the occurrence.

The term policy period, as used by this endorse-
ment, shall mean a period of twelve (12) consec-
utive months commencing on and after 12-31-71.
Subsequent twelve (12) month periods shall be
considered separate policy periods for purposes
of this definition.

On November 15, 1974, Endorsement 18 was ex-
ecuted with an effective date of August 31, 1974. It
set forth limitations on liability for defendants and
provided:

In consideration of the premiums charged for
product liability coverage for the period January
1, 1962 through August 31, 1974 and the agree-
ment to adjust claims as provided in the Joint
Procedure for Handling claims now endorsed as a
Special Condition to this contract, the aggregate
limit of liability for all claims occurring after

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
(Cite as: 2007 WL 1206830 (Mich.App.))

January 1, 1962 but reported to the insured or the company prior to September 1, 1974, whichever first, is $164,172,000. This limit will be automatically increased by crediting annually at December 31 90% of the portion of Investment Income apportioned to the funds held by the Company in anticipation of loss payments to be made subsequent to August 31, 1974.

In 1993, plaintiff ended its comprehensive liability insurance program with defendants. On December 1, 1995, the parties entered into a program closure agreement designed to sever the parties' business relationship and reconcile any outstanding obligations between them. The program closure agreement contained the following provision addressing pre-1974 claims:

*2 5. Pre-1974 Products Run Off Fund

The parties agree that Royal shall retain any balances in the Products Liability run-off Fund that was established in the pre-1974 policy years. Royal also agrees that it shall assume responsibility for the ultimate settlement and resolution of all claims insured during those policy years with no right of indemnity or contribution by GM.

In 2001, a large number of asbestos-related cases were filed against plaintiff, and plaintiff concluded that many of the claims allegedly occurred between 1954 and 1971, during the occurrence coverage period. Consequently, plaintiff requested that defendants defend and indemnify it against those claims under the comprehensive products liability policies in effect during that time period. Defendants refused coverage, alleging that the change in the type of policy coverage in 1972, altered the nature of the agreement and coverage was no longer available for that time period.

Plaintiff filed suit to compel defendants to defend the 1954-1971 occurrence based liability policies and requested partial summary disposition on the issue of the duty to defend. Plaintiff asserted that the duty to defend was broad and was invoked even when coverage was arguably available. Defendants opposed the motion with affidavits and other documentary evidence to assert that there was a question of fact regarding the existence of policy coverage. The trial court denied the motion, holding:

Based on the affidavits submitted by Defendants Royal, Plaintiff's course of conduct in dealing with insurance claims for the past 30 years and the Program Closure Agreement, questions of fact exist which preclude the granting of Plaintiff's motion.

The trial court denied plaintiff's motion for reconsideration. We granted plaintiff's delayed application for leave to appeal.

Issues addressing the proper interpretation of an insurance contract are reviewed de novo. *Allstate Ins Co v. McCarn,* 471 Mich. 283, 288; 683 NW2d 656 (2004). Whether an insurer is obligated under the insurance policy to defend the insured presents a question of law requiring interpretation of the insurance contract. *American Bumper & Manufacturing Co v. National Union Fire Ins Co,* 261 Mich.App 367, 375; 683 NW2d 161 (2004). Insurance contracts are construed in accordance with the established principles of contract construction. *Farmers Ins Exchange v. Kurzmann,* 257 Mich.App 412, 417; 668 NW2d 199 (2003). An insurance policy must be enforced according to its terms. *Nabozny v. Burkhardt,* 461 Mich. 471, 477; 606 NW2d 639 (2000). An insurance company is not responsible for a risk it did not assume. *Id.* "An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Farmers Ins Exchange, supra* quoting *Heniser v. Frankenmuth Mut Ins Co,* 449 Mich. 155, 161; 534 NW2d 502 (1995).

*3 The goal of contract construction is to determine

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
(Cite as: 2007 WL 1206830 (Mich.App.))

and enforce the parties' intent based on the plain language of the contract itself. *Old Kent Bank v. Sobczak,* 243 Mich.App 57, 63; 620 NW2d 663 (2000). When the language of a contract is clear and unambiguous, its construction presents a question of law for the trial court. *Michigan National Bank v. Laskowski,* 228 Mich.App 710, 714; 580 NW2d 8 (1998). The duty to interpret and apply the law is allocated to the courts, not the parties' witnesses. *Hottmann v. Hottmann,* 226 Mich.App 171, 179; 572 NW2d 259 (1997). Parol evidence may not be used to vary the terms of an otherwise clear and unambiguous contract. *Meagher v. Wayne State University,* 222 Mich.App 700, 722; 565 NW2d 401 (1997).

"An insurer is not required to defend its insured against claims specifically excluded from policy coverage." *Nat'l Union, supra.* The duty to defend is similar to the duty to indemnify in that it occurs only with regard to the insurance afforded by the policy. *American Bumper & Manufacturing Co v. Hartford Fire Ins Co,* 452 Mich. 440, 450; 550 NW2d 475 (1996). If the policy is inapplicable, there is no duty to defend. *Id.* The duty to defend is broader than the duty to indemnify. *Id.* If the allegations by a third party against the policyholder "even arguably" fall within the policy coverage, the insurer "must provide a defense." *Id.* at 450-451. In *Protective National Ins Co v. Woodhaven,* 438 Mich. 154, 159; 476 NW2d 374 (1991), the Supreme Court described the insurer's duty to defend by quoting the following passage from *Detroit Edison Co v. Michigan Mutual Ins Co,* 102 Mich.App 136, 141-142; 301 NW2d 832 (1980):

The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to de-

fend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v. Central Mutual Ins Co,* 81 Mich.App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v. Maryland Casualty Co,* 73 Mich.App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch, Insurance, 2d (rev ed), § 51:45, p 538 (now § 51:49, P 489). (Emphasis in original.)

The insurer has the duty to undertake the defense until it can confine the claim to a recovery that the policy did not cover. *Protective Nat'l Ins, supra* at 159-160. "Uncertainty regarding whether an allegation comes within the scope of the policy must be resolved in the policyholder's favor." *Hartford Fire Ins, supra* at 455.

*4 In *Hartford Fire Ins, supra,* it was ultimately concluded that there was no contamination that required an environmental cleanup. Despite this final conclusion, the possibility remained during the underlying litigation between the insured and the Environmental Protection Agency that an occurrence might be found that would have triggered the insured's policy coverage. Consequently, the Supreme Court held that the defendant insurers could not escape liability for defense costs incurred in responding to the claim. *Id.* at 463-464.

Applying the facts of the present case, plaintiff has submitted complaints wherein it was named as a party responsible for asbestos exposure to individuals during the policy period in question, specifically between 1954 to 1971. Although the policy coverage was altered in 1972, Endorsement 15 provided

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)
**(Cite as: 2007 WL 1206830 (Mich.App.))**

that the policy was amended effective December 31, 1971, and the endorsement fails to delineate any change to prior policies that were in effect. Endorsement 18 set a liability cap for claims occurring after January 1, 1962 but reported before September 1, 1974, but did not otherwise address the policies at issue. Moreover, after the parties ended their relationship in 1993, a closure agreement was executed. This agreement expressly provided that defendants were retaining balances in the products liability run off fund established in the pre-1974 policy years, and defendants' agreement to assume responsibility for the ultimate resolution "of all claims during those policy years." The plain language of the policy at issue invokes the broad duty to defend. *Nabozny, supra; Hartford Fire Ins, supra.* Defendants contend that the documentary evidence submitted with the responsive pleading demonstrates that factual issues remain regarding the existence of coverage. However, the duty to interpret and apply the law is the province of the court, not the parties' witnesses. *Hottmann, supra.* Accordingly, the trial court erred in denying plaintiff's motion for partial summary disposition.

Reversed.

Mich.App.,2007.
General Motors Corp. v. Royal & Sun Alliance Ins. Group PLC
Not Reported in N.W.2d, 2007 WL 1206830 (Mich.App.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT B**

**Hearing Date and Time: October 6, 2009, at 9:45 a.m. (prevailing Eastern Time)**
**Objection Deadline: October 1, 2009 at 4:00 p.m. (prevailing Eastern Time)**

Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:    (415) 543-4800
Facsimile:    (415) 972-6301
Email: kstrickland@rmkb.com
N. Kathleen Strickland, Esq. (*Pro Hac Vice Admission Granted*)

Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:    (212) 668-5927
Facsimile:    (212) 668-5929
Email: gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------ x | : | Chapter 11 |
| In re | : | |
| | : | Case No. 09-50026(REG) |
| MOTORS LIQUIDATION COMPANY, et al., | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| ------------------------------------ x | : | |

**ORDER GRANTING MOTION OF REMY INTERNATIONAL, INC. FOR AN ORDER EXTENDING AND ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. § 362 (a) TO COVER CERTAIN LITIGATION RELATING TO REMY INTERNATIONAL, OR ALTERNATIVELY, ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105**

Upon the Motion, dated September 16, 2009, of Remy International, Inc. ("Remy"), for

an Order extending and enforcing the automatic stay pursuant to 11 U.S.C. § 362 to include non-

debtor Remy or, alternatively, issue a preliminary injunction pursuant to 11 U.S.C. § 105 (the

"Motion"), to prevent the continued or future prosecution of asbestos claims against Remy in

various courts around the United States, or elsewhere, all as more fully described in the Motion;

and due and proper notice of the Motion having been provided, and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties

in interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein, and after due deliberation and sufficient cause appearing therefore, it is

hereby

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the automatic stay pursuant to 11 U.S.C. § 362 is extended to Remy and

there shall be no further prosecution of the claims against Remy in (1) *Bynum v. Remy Inc., et*

*al.*, Indiana State Superior Court for the County of Marion, Case No. 49D12-08-09-CT-043673;

(2) *Cawlfied v. A.W. Chesterton, et al.*, Illinois State Circuit Court for the County of Madison,

Case No. 08-L-82; (3) *Phillips v. A.W. Chesterton, et al.*, Indiana State Superior Court for the

County of Marion, Case No. 49D02-9801-MI-0001-127; and (4) *Wydra v. A.W. Chesterton, et al.*,

State of Rhode Island and Providence Plantations Superior Court for Providence/Bristol, Case

No. PC06-2153; (5) *Nangle v. A.W. Chesterton, Inc., et al.*, Illinois State Circuit Court for the

County of Madison, Case No. 09-L-574; nor in any other GM D& I cases as defined in said

motion; nor shall any party file such claims against Remy going forward absent further order of

this Court allowing the same; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

Dated:  New York, New York

_____

_____
Hon. Robert E. Gerber
United States Bankruptcy Judge