Hearing Date and Time: October 6, 2009, at 9:45 a.m. (prevailing Eastern Time)
**Objection Deadline: October 1, 2009 at 4:00 p.m. (prevailing Eastern Time)**

Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:    (415) 543-4800
Facsimile:    (415) 972-6301
Email:  kstrickland@rmkb.com
N. Kathleen Strickland, Esq. (*Pro Hac Vice Admission Granted*)
Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:    (212) 668-5927
Facsimile:    (212) 668-5929
 Email: gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------- x | |
| : | **Chapter 11** |
| In re : | |
| : | **Case No. 09-50026(REG)** |
| **MOTORS LIQUIDATION COMPANY, et al.,** : | **(Jointly Administered)** |
| **Debtors.** : | |
| : | |
| ------------------------------------- x | |

**DECLARATION OF JEREMIAH SHIVES IN SUPPORT OF THE MOTION OF REMY INTERNATIONAL, INC. FOR AN ORDER EXTENDING THE AUTOMATIC STAY IMPOSED UNDER 11 USC §362(a) TO REMY INTERNATIONAL TO INCLUDE LITIGATION FILED AGAINST REMY INTERNATIONAL, OR ALTERNATIVELY <u>ENJOINING SUCH LITIGATION PURSUANT TO 11 USC §105</u>**

I, JEREMIAH SHIVES, hereby declare pursuant to section 1746 of Title 28 of the United States Code:

1. I am above the age of 21. I am not a party to this action, and I am competent to give sworn testimony and have personal knowledge of the facts stated herein, which are true and correct. I am sufficiently familiar with the facts set forth herein to testify competently if required.

2. I am currently employed as Deputy General Counsel for Remy International, Inc. (hereinafter "Remy"). I have been in this position since 2006. I have been employed by Remy since 1999.

3. I am an attorney licensed to practice in the State of Indiana (State Bar Number 26120-29).

4. In my capacity as Deputy General Counsel, I have sufficient knowledge and first hand familiarity with the corporate history of Remy, and the documents reflecting such history as those documents are kept at Remy in the ordinary course of business and form the corporate files contained within the legal department of Remy. In such capacity, I also have knowledge of the litigation files which have been tendered to GM pursuant to the Asset Purchase and Sale Agreement between GM and Remy, the tender of which GM has accepted.

5. Contained within Remy's business files, is an Asset Sale and Purchase Agreement by and among General Motors Corporation and DR International, Inc. and DRA, Inc. dated July 13, 1994 (hereinafter the "Agreement"), relevant portions of which are attached to this Declaration as Exhibit A. Prior to July 13, 1994, Delco Remy was a division of General Motors Corporation (hereinafter "General Motors" or "GM"). On July 13, 1994, DRA, Inc., a Delaware corporation created in 1993 by a group of private investors led by former Chrysler President Harold K. Sperlich and Delco Remy division Executive Thomas J. Snyder, purchased certain assets from GM, to wit, starters and alternators. Prior to its purchase of the assets of GM's Delco Remy division, DRA, Inc. did not manufacture, distribute or sell any products – it was merely a shell corporation incorporated by Citicorp Ventures to carry out the asset purchase under the Agreement. Under the terms of the Agreement, DRA, Inc. did not assume any responsibility for General Motors products manufactured prior to July 13, 1994, nor did it assume responsibility for any real property or premises owned by General Motors, all of which were "Excluded

2

Liabilities" under the Agreement. Specifically, DRA, Inc. did not assume any liability for any claim relating to any General Motors product nor to any claim arising from any property owned by General Motors. Under the Agreement, General Motors agreed to indemnify DRA, Inc. against all claims arising from products manufactured prior to the date of the sale and from all claims arising from the real property owned by General Motors and subleased to DRA, Inc.

6.  After purchasing certain assets of GM's Delco Remy division, to wit, starters and alternators, DRA, Inc. became a manufacturer and re-manufacturer of automotive parts, including starters, alternators and electric drive motors. In 2004, the entity formerly know as DRA, Inc. changed its name to Remy International, Inc.

7.  Attached to this declaration as *Exhibit A* are true and correct copies of the relevant pages of the Asset Purchase Agreement which is contained within Remy's business files located in the department which I supervise.[1] The pages attached are from Articles V. and VIII. of Agreement, entitled "Assumption of Liabilities; Retained Liabilities" and "Environmental Matters," respectively, as well as the title page and signature page. Among some of the "Retained Liabilities" enumerated in section 5.2 is the following pertinent language: "(i) any liability or obligation of GM existing as a result of any act, failure to act or other state of facts or occurrence which constitutes a breach or violation of any of GM's representations, warranties, covenants or agreements contained in this Agreement; (ii) any product liability claim of any nature in respect of products of the Businesses [GM] manufactured on or prior to the Closing Date; . . . (v) any obligation or liability arising under any Contract, instrument or agreement that (a) is not transferred to Purchaser as a part of the Purchased Assets; . . .and (xiv) liabilities in connection with any matter as to which GM has responsibility or liability under Article VIII [entitled "Environmental Matters"]."

---

[1] Remy will provide a complete copy of this entire document to this court should the court for its review should the court deem it necessary to decide this motion. The entire document is 108 pages, most of which is irrelevant to this motion. I attest to the fact that the relevant pages to this motion are attached hereto and are the complete sections discussing retained and assumed liabilities as well as indemnification.

8.      In conjunction with GM's retained liabilities, GM agreed, in section 5.3.1(A) of the Agreement, attached hereto, to indemnify and hold Remy harmless from any damages relating to the retained liabilities, specifically: "GM shall indemnify [Remy] ….and hold [Remy] …..harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating directly or indirectly to, arising out of or resulting from (i) any misrepresentation or breach of any representation, warranty, covenant or agreement made by GM in this Agreement or in any statement, document or certificate furnished or required to be furnished to [Remy] pursuant hereto;…..or (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing."

9.      Pursuant to section 5.3.1(C) of the Agreement, the term "Damages" means "any and all losses, liabilities, third party damages (including fines, penalty and punitive damages), deficiencies, interest, costs and expenses and any actions, judgments, costs and expenses (including reasonable attorneys' fees and all other reasonable expenses incurred in investigating, preparing or defending any litigation or proceeding, commenced or threatened) relating to, or incident to the enforcement of, this Agreement."

10.     In addition to the indemnity and defense obligations in sections 5.2 and 5.3.1 of the Agreement, pursuant to section 8.12.3 of the Agreement GM agreed to "defend, indemnify and hold [Remy] harmless from and against any liabilities, damages, penalties, costs, expenses and fines, including reasonable attorney's fees . . . (the "Adverse Consequences") to which [Remy] may be subjected as a result of an action, suit, complaint, formal Notice of probable claim, or proceeding brought by a government agency or other third party (the "Claim"), but only to the extent such Claim is based upon or with respect to clause (i) directly arises as a result of any remedial activity by GM in connection with: (i) an Identified Pre-Closing Environmental Condition . . . or (ii) any breach by GM of the representation and warranties in Section 8.12.2A. . . ." Section 8.12.2(A) of the Agreement concerns GM's representations and warranties regarding environmental conditions at the premises that were being leased by GM to Remy.

4

11.     Since the Agreement was executed in 1994, GM has defended and is currently defending Remy in lawsuits filed by persons alleging injury from products GM manufactured prior to the Closing Date of the Agreement or from real property/premises GM owned(s) – in other words, actions in which any liability of Remy could only be derivative of GM's liability under the Agreement and as law. Since Remy has no liability for such products nor for such premises, GM has accepted these tenders in 18 cases dating back to February 20, 2003.  As corporate in-house counsel, I have reviewed the list of cases in which GM has accepted such tenders, and according to our records and Ms. Strickland, the outside counsel working with Remy on this matter, the only open cases remaining on the list of GM accepted cases, are *Cawlfield v. A.W. Chesterton, et al.*, Illinois State Circuit Court for the County of Madison, Case No. 08-L-82;[2] *Phillips v. A.W. Chesterton, et al.*, Indiana State Superior Court for the County of Marion, Case No. 49D02-9801-MI-0001-127; and *Wydra v. A.W. Chesterton, et al.*, State of Rhode Island and Providence Plantations Superior Court for Providence/Bristol, Case No. PC06-2153.  In a fourth open matter, *Bynum v. Remy Inc., et al.*, Indiana State Superior Court for the County of Marion, Case No. 49D12-08-09-CT-043673, Remy has made a tender to GM but received no response.[3]  In the final open matter, *James Nangle v. A.W. Chesterton, Inc., et al.*, Illinois State Circuit Court for the Count of Madison, Case No. 09-L-574, the plaintiff filed his first amended complaint on June 8, 2009 - after GM filed for bankruptcy.  While GM is not named in the *Nangle* matter – presumably because of the bankruptcy filing – the plaintiff's allegations of exposure to Remy products and premises from 1960 to 2004 necessarily invokes GM's defense and indemnity obligations under the Agreement because Remy did not begin doing business until 1994.  Any alleged exposures from 1960 to 1994 constitute "Retained

---

[2] I was informed by Ms. Strickland, who spoke with Remy's counsel in this matter that GM has settled this case, obtained a release and such settlement included a settlement and release of all indemnified parties which would include Remy. However, since we have not yet obtained documents verifying this oral conversation, this case is still listed as "open."

[3] I was informed by Ms. Strickland, who spoke with plaintiff's counsel in this matter, that plaintiff agreed in October 2008, in conversation with Remy's counsel at that time, not to pursue this action against Remy since Remy never owned or operated the premises involved, and that a stipulated dismissal would need to be signed by all parties and entered on the court's record, which is in the process of being accomplished.

5

Liabilities" under the Agreement, and the *Nangle* matter is therefore one in which, absent the bankruptcy filing, GM would undeniably be obligated to defend and indemnify Remy.

12. Attached hereto as Exhibits B, C, D, E and F respectively, are true and correct copies of the face sheets of the complaints in *Cawlfield, Phillips, Wydra, Bynum and Nangle.*

13. Attached to this declaration as Exhibits G and H are true and correct copies of the September 23, 2004 letter from Remy's counsel Mark A. Nadeau, of Squire, Sanders & Dempsey L.L.P., to Glenn A. Jackson of GM, tendering the *Phillips* matter to GM, and the November 8, 2004 response from Glenn A Jackson of GM accepting the tender.

14. Attached to this declaration as Exhibits I and J are true and correct copies of the May 2, 2006 letter from Remy's Director of Legal Services, Sheila Cannon, to Glenn A. Jackson of GM, tendering the *Wydra* matter to GM, and the May 8, 2006 response from Maynard L. Timm of GM accepting the tender.

15. Attached to this declaration as Exhibits K and L are true and correct copies of the September 24, 2008 letter from Remy's counsel Quinn Williams, of Greenberg Traurig, to Glenn A. Jackson of GM, tendering the *Cawlfield* matter to GM, and the October 1, 2008 response from Maynard L. Timm of GM accepting the tender.

16. Attached to this declaration as Exhibit M is a true and correct copy of the October 2, 2008 letter from Remy's counsel Quinn Williams, of Greenberg Traurig, to Glenn A. Jackson of GM, tendering the *Bynum* matter to GM.

17. Remy appeared in this action on June 12, 2009.

18. Up until July 16, 2009, General Motors had continued to honor its contractual obligations to Remy to defend, indemnify and hold harmless Remy for any litigation arising from its products manufactured by GM prior to July 13, 1994 or from its owned facilities.

19. On July 16, 2009, GM informed Remy that it did not intend to continue to honor the Asset Purchase Agreement. This information came in an email from Mr. Maynard Timm at GM to general counsel for Remy:

> On July 10, 2009, General Motors Corporation emerged from Chapter 11 Bankruptcy and became General Motors Company, a completely new entity. As part of the bankruptcy process, General Motors Company did not assume the July 31, 1994 Remy (f/k/a Delco Remy International, Inc.) Asset Purchase Agreement. Consequently, General Motors Company will have no involvement or assume any responsibility for the defense of asbestos exposure litigation against Remy (f/k/a Delco Remy International, Inc.). We will be communicating this information to outside counsel.

A true and correct copy of Mr. Timm's email, redacted to remove attorney-client communication, is attached as Exhibit N to this declaration.

20. In light of the above, Remy requests that this court extend the GM Section 362 stay to Remy for all open/pending cases[4] in which GM has accepted the defense of Remy, as well to all future cases filed against Remy which would come within the scope of the GM defense and indemnity obligations under the Agreement. Remy requests this Court retain jurisdiction to decide the applicability of the stay to any future cases filed against Remy, should that become an issue, although we do not expect there to be any future cases filed against Remy. Extending the stay to Remy is fair and reasonable since Remy was not in existence prior to 1994 and therefore Remy has no liability for claims covered by the 1994 Agreement, so extending the bar permanently to such claims is fair and just as GM assumed responsibility to defend such claims on behalf of Remy and now that stay is permanently in place as to GM, the same stay should also be extended to pending and future cases in which Remy is named.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of September, 2009.

        /S/ Jeremiah J. Shives
        JEREMIAH J. SHIVES
        DEPUTY GENERAL COUNSEL

---

[4] Out of an abundance of caution, Remy requests the stay be extended to the 4 cited open cases and also to the group of 19, should any of the cases which I have been told are "closed" later become "open."