# EXHIBIT A

ASSET PURCHASE AGREEMENT

BY AND AMONG

DR INTERNATIONAL, INC.,

DRA, INC.

AND

GENERAL MOTORS CORPORATION

DATED

JULY 13, 1994

4.3.    Payment of Cash Consideration.  At Closing, Purchaser shall pay the Cash Consideration by wire transfer to the account of GM at Citibank. N.A.. New York City. that GM shall designate to Purchaser in writing at least 5 business days prior to the Closing Date.

## V.  ASSUMPTION OF LIABILITIES; RETAINED LIABILITIES.

5.1.    Assumed Liabilities.  At and as of the Closing, subject to the terms and conditions of this Agreement. GM will assign and transfer to Purchaser the Specified Leases. the Intellectual Property Agreements and the other Contracts specifically listed on Schedule 5.1A or referred to in paragraph 3(iii) thereof. and other Contracts not so specifically listed which in the aggregate do not involve payment or performance obligations of Purchaser in excess of $500,000 (collectively, the "Assigned Contracts"), and Purchaser will assume the Assigned Contracts and in a timely fashion will perform in accordance with the provisions thereof. including with respect to (i) except as provided in Section 5.2. all of GM's obligations and liabilities under the Assigned Contracts in accordance with the respective terms thereof: (ii) liabilities and expenses incurred by Purchaser on account of product warranties for products of the Businesses manufactured and placed in service following the Closing other than those described in Section 5.2(iii); (iii) liabilities in connection with any matter as to which Purchaser has responsibility or liability pursuant to Article VIII: and (iv) certain other liabilities and expenses pertaining to Transferred Employees following the Closing as specified in Article VII hereof (collectively. the liabilities and obligations assumed by Purchaser under this Section 5.1 are referred to as the "Assumed Liabilities").

5.2.    Retained Liabilities.  Except as otherwise specifically set forth in Section 5.1 of this Agreement. Purchaser shall not assume any liabilities or obligations of GM of any kind. whether such liabilities or obligations relate to payment. performance or otherwise. whether matured or unmatured. known or unknown. whether contingent or otherwise. fixed or absolute. present. future or otherwise (the "Retained Liabilities"). it being understood that all of such Retained Liabilities shall be retained. and paid, performed and/or discharged by GM in accordance with their respective terms.  Without limiting the foregoing. the following shall be considered "Retained Liabilities" for the purposes of this Agreement: (i) any liability or obligation of GM existing as a result of any act. failure to act or other state of facts or occurrence which constitutes a breach or violation of any of GM's representations. warranties. covenants or agreements contained in this Agreement; (ii) any product liability claim of any nature in respect of products of the Businesses manufactured on or prior to the Closing Date; (iii) any product warranty claim credited or paid respecting Non-Allied Sales of products to original equipment manufacturer customers with an in-service date no later than 90 days after the Closing Date: and any product warranty claim credited or paid respecting Non-Allied Sales of service parts for claims made within 4 months following Closing and one-half of any such warranty claim made between 4 months following Closing and 16 months following Closing, in each case determined substantially in accordance with the Businesses' warranty administration procedures in effect as of the Closing Date: (iv) all of GM's liabilities for Taxes that have been or may be incurred as a result of GM's operation of the Businesses or ownership of the Purchased Assets on or before the Closing Date (except any such Taxes incurred or paid by GM or assessed on the Businesses or Purchased Assets prior to the Closing Date which relate to periods after the Closing Date) including (a) any of such Taxes that will arise as a result of the sale or lease of the Purchased Assets pursuant to this Agreement. except to the extent such Taxes become the responsibility of Purchaser pursuant to Section 13.12 pertaining to sales and transfer taxes. and (b) any liability for deferred Taxes of any nature: (v) any obligation or liability arising under any Contract. instrument or

18

agreement that (a) is not transferred to Purchaser as part of the Purchased Assets. or (b) is not transferred to Purchaser because of GM's failure or inability to obtain any third-party consent required for the transfer or assignment of such Contract to Purchaser. or (c) relates to any breach or default (or an event which might. with the passing of time or the giving of notice. or both. constitute a default) under any Contract or to any services to be provided by GM under any such Contract arising out of or relating to periods on or prior to the Closing Date: (vi) any liabilities or obligations of GM to indemnify its officers. directors. employees or agents: (vii) any liabilities or obligations of the Businesses to GM or any of its Affiliates (including intra-GM or inter-GM and its Affiliates' accounts), except to the extent of liabilities or obligations to GM or its Affiliates that arise in the ordinary course of business under the Assigned Contracts after the Closing Date: (viii) any obligation or liability under any Contract that is transferred to Purchaser as part of the Purchased Assets which arises on or after the Closing Date but which is attributable to or associated with any breach of or default under such Contract or to any services to be provided by GM under such Contract on or prior to the Closing Date: (ix) any obligations relating to the Meridian Lease arising on or before the Closing Date. including any guarantees relating thereto: (x) except for the Assumed Liabilities as specifically and expressly set forth herein. any liability or obligation with respect to compensation or employee benefits of any nature owed to any employees. whether or not the affected employees become Transferred Employees. that arises out of or relates to the employment relationship between GM or its Affiliates and such employees. or arises out of or relates to events or conditions occurring on or before the Closing Date (including all obligations in respect of bonuses, profit-sharing payments and other compensatory payments awarded to or accrued for employees for any periods or portions thereof on or prior to the Closing Date): (xi) any obligation or liability arising out of or related to any employee grievances. lawsuits. claims. litigation. arbitration or proceeding commenced or relating to periods on or prior to the Closing Date whether or not the affected employees become Transferred Employees: (xii) any obligations or liabilities relating to or arising from the broken pinion stop customer satisfaction recall: (xiii) any liability directly or indirectly arising out of or relating to the employment or engagement of contract personnel: and (xiv) liabilities in connection with any matter as to which GM has responsibility or liability under Article VIII.

5.3.    Indemnification.    Each of GM and Purchaser agrees as follows:

5.3.1.    General Indemnification Obligations.

A.    GM shall indemnify DRI. Purchaser and their respective directors. officers and Affiliates and hold DRI. Purchaser and their respective directors. officers and Affiliates harmless from and against Damages. whether contingent or otherwise. fixed or absolute. known or unknown. present or future or otherwise. relating directly or indirectly to. arising out of or resulting from (i) any misrepresentation or breach of any representation. warranty, covenant or agreement made by GM in this Agreement or in any statement. document or certificate furnished or required to be furnished to DRI or Purchaser pursuant hereto: (ii) any violation of. or liability arising under, any applicable bulk sales or similar laws relating to the transactions contemplated hereunder: or (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing.

B.    Purchaser shall indemnify GM and its directors. officers and Affiliates and hold GM and its directors. officers and Affiliates harmless from and against any and all Damages. whether contingent or otherwise. fixed or absolute. known or unknown. present or future or otherwise. relating

19

GMAPA711.CLN-7/14/94-5:55 pm

directly or indirectly to, arising out of or resulting from (i) any material misrepresentation or breach of any representation, warranty, covenant or agreement made by Purchaser in this Agreement or in any statement, document or certificate furnished or required to be furnished to GM pursuant hereto; or (ii) the Assumed Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by Purchaser or the operation of the Businesses subsequent to Closing.

C.    For purposes of this Agreement other than Article VIII, "Damages" shall mean any and all losses, liabilities, third-party damages (including any fines, penalty or punitive damages), deficiencies, interest, costs and expenses and any actions, judgments, costs and expenses (including reasonable attorneys' fees and all other reasonable expenses incurred in investigating, preparing or defending any litigation or proceeding, commenced or threatened) relating to, or incident to the enforcement of, this Agreement.

### 5.3.2.    General Indemnification Procedures.

A.    A party seeking indemnification pursuant to this Section 5.3 (an "Indemnified Party") shall give prompt notice to the party from whom such indemnification is sought (the "Indemnifying Party") of the assertion of any claim, or the commencement of any action, suit or proceeding, in respect of which indemnity may be sought hereunder and will give the Indemnifying Party such information with respect thereto as the Indemnifying Party may reasonably request, but failure to give such notice shall not relieve the Indemnifying Party of any liability hereunder (except to the extent that the Indemnifying Party has suffered actual prejudice thereby). The Indemnifying Party shall have the right (but not the obligation), exercisable by written notice to the Indemnified Party within 30 days of receipt of notice from the Indemnified Party of the commencement of or assertion of any claim or action, suit or proceeding by a third party (other than an Affiliate of any party hereto) in respect of which indemnity may be sought hereunder (a "Third Party Claim"), to assume the defense and control the settlement of such Third Party Claim which involves (and continues to involve) solely monetary damages; provided that (i) the Indemnifying Party expressly agrees in such notice that, as between the Indemnifying Party and the Indemnified Party, the Indemnifying Party shall be solely obligated to satisfy and discharge the Third Party Claim; (ii) the defense of such Third Party Claim by the Indemnifying Party will not, in the reasonable judgment of the Indemnified Party, have any continuing material adverse effect on the Indemnified Party's business; and (iii) the Indemnifying Party makes reasonably adequate provision to ensure the Indemnified Party of the ability of the Indemnifying Party to satisfy the full amount of any adverse monetary judgment that may result (the conditions set forth in clauses (i), (ii) and (iii) are collectively referred to as the "Litigation Conditions").

B.    Within 15 days after the Indemnifying Party has given written notice to the Indemnified Party of its intended exercise of its right to defend and control the right to settle a Third Party Claim, the Indemnified Party shall give written notice to the Indemnifying Party of any objection thereto based upon the Litigation Conditions. If the Indemnified Party so objects, the Indemnified Party shall continue to defend the Third Party Claim subject to the other party's right to participate in such defense as provided in (D) below, until such time as such objection is withdrawn. If no such notice of objection is given, or if any such objection is withdrawn, the Indemnifying Party shall be entitled to assume and conduct such defense, with counsel selected by the Indemnifying Party and reasonably acceptable to the Indemnified Party, until such time as the Indemnified Party shall give notice that any of the Litigation Conditions, in its reasonable judgment, are no longer satisfied. If the Indemnified Party

GMAPA711 CLN-7/14/94-5:55 pm

RAJ

b

Property or relating to the Assets or operations of the Businesses will be subject to any such privilege or doctrine. Any such inspection or audit, including employee interviews and assistance, will be coordinated with DRA management personnel responsible for environmental compliance and will not unreasonably interfere with DRA's continued operations of the Businesses. DRA will be entitled to have counsel or the person normally charged with and primarily responsible for management of environmental affairs on behalf of DRA (either on the corporate level or at the facility) to be present during any interview of DRA employees by GM. This right of audit and inspection does not constitute a duty on GM's part to so inspect and in no event relieves DRA of any obligations under this Agreement or under any law.

8.12.    Representations, Warranties and Acknowledgements; Indemnification Obligations.

8.12.1.    Intentionally Omitted.

8.12.2.    Representations, Warranties and Acknowledgements.

A.    GM's Representations and Warranties. GM represents and warrants that, as of the date of this Agreement and to the Knowledge of GM, and except as set forth on Schedule 8.12.2.A: (i) no notice, citation, summons or order has been issued, no complaint has been filed, no penalty has been assessed, and no investigation or review is pending or threatened by any Authority: (a) with respect to any alleged violation of any Environmental Law, as existing and in effect prior to the date of such notice, citation, summons, order, complaint, penalty assessment, investigation or review or threat thereof, or related order of any such Authority applicable to the Businesses or the Assets; or (b) with respect to any use, possession, generation, treatment, storage, recycling, transportation or disposal of Hazardous Materials at any site in the State of Indiana by or on behalf of the Businesses or in connection with the Assets; (ii) GM has not received from any Authority any written request for information, notice of claim, demand or notification that it is or may be potentially responsible with respect to any investigation or cleanup of any Release at any of the Real Property; (iii) none of the Real Property is listed or proposed for listing on the National Priority List promulgated pursuant to CERCLA or any similar state list of sites of environmental contamination; (iv) no Lien has attached to the Real Property under any Environmental Law which has not been removed or discharged of record; (v) all material expenses related to environmental compliance accrued and recorded by GM on its books with respect to the Businesses at the Real Property for the 1989 through 1993 calendar years are included in the Income Statements set forth on Schedule 6.1.11, except where failure to include such expenses would not have a Material Adverse Effect on the Businesses; (vi) with the exception of Privileged Documents and GM Proprietary Documents, GM has made or will before the Closing Date make available to and will on the Closing Date transfer to DRA true and complete copies of all documents, writings, recordings and video or computer tapes relating to GM's responsibilities under and compliance with Environmental Laws, as existing and in effect prior to the Closing Date, including all correspondence to and from governmental agencies, relating specifically to the Assets, the Businesses and the Real Property, and the environmental condition of the Land; and (vii) the Privileged Documents contain no Material Information relating to pre-Closing operational activities at the Real Property relevant to environmental compliance, the presence or management of Hazardous Substances at the Real Property, or known or suspected instances of non-compliance with Environmental Laws at the Real Property, that is not also contained in documents which are not Privileged Documents to which DRA and/or its representatives were provided access on or prior to the Closing Date. "Material Information" consists of information in existence on or before the Closing Date specific to the Real Property, the Assets and the Businesses which is not available to DRA

66

from any other documentary source and which DRA must have to: (a) operate the Businesses on and after the Closing Date in accordance with Environmental Laws. as existing and in effect as of the Closing Date; and/or (b) address any Pre-Closing Environmental Condition at the Real Property which to the Knowledge of GM existed as of the Closing Date.

**B.    DRA's Acknowledgments.**    DRA acknowledges that prior to the Closing Date: (i) there may have been Releases on. at. about or under the Real Property; and (ii) GM and others may have. among other things, used, generated. treated. stored. recycled or disposed of Hazardous Materials on. at. about or under the Real Property; provided. however. that nothing in this Section 8.12.2B will affect GM's representations or obligations under the other provisions of this Article VIII.

**8.12.3.    GM's Defense and Indemnification Obligations: Claims Procedures.**    GM will. in accordance with the following terms and conditions. defend. indemnify and hold DRA harmless from and against any liabilities. damages. penalties. costs. expenses and  fines. including reasonable attorney's fees (but in no event will GM's agreement to defend and indemnify DRA include consequential. special or incidental damages such as. by way of example and not limitation. loss of profits or loss of business opportunity. loss of use or diminution in value of the Real Property. the Assets or the Businesses. or any attorney's or consultant's fees or other expenses as to any matter as to which GM has accepted its defense and indemnity obligations) (the "Adverse Consequences") to which DRA may be subjected as a result of an action. suit. complaint. formal notice of probable claim. or proceeding brought by a governmental agency or other third party (the "Claim"). but only to the extent such Claim is based upon or with respect to clause (i) directly arises as a result of any remedial activity by GM in connection with: (i) an Identified Pre-Closing Environmental Condition which: (a) constitutes a violation of a specifically applicable Environmental Law. as existing and in effect as of the Closing Date: or (b) results in an investigation or remediation obligation or liability being imposed upon DRA by a federal. state or local governmental agency or a third party under Environmental Laws. as existing and in effect as of the Closing Date: or (ii) any breach by GM of the representations and warranties in Section 8.12.2A: provided. however. that a claim for indemnification under this clause (ii) or for any such breach must be brought within two (2) years after the Closing Date and will otherwise be limited as provided in this sentence except for clause (i). The foregoing indemnities will be effective as follows:

**A.**    DRA agrees that it will promptly. but in no event later than thirty (30) days after the date of its discovery of facts which are reasonably likely to give rise to a demand by it for defense and/or indemnification under this Article VIII or relating to any such Claim. notify GM in writing of such facts and potential Claim. DRA's written notice will specify in detail the particular facts and Environmental Law involved.

**B.**    DRA and GM will use best efforts to resolve promptly any disputes regarding any Claim hereunder.

**C.**    GM's defense and indemnity obligations hereunder will be apportioned to the extent that a Claim results from. or GM's expenses are materially increased by. DRA's failure to provide timely notice as required under Section 8.12.3A. Except as provided in Section 8.12.3D. no defense or indemnity obligation exists if. without the prior written approval of GM. DRA has negotiated and/or agreed with a third party to conduct investigation. remediation or other actions with respect to a Claim or to settle a Claim.

67

D.    After notification is given under Section 8.12.3A. GM will be entitled, but not obligated, to assume the defense or settlement of any Claim or to participate in any negotiations or proceedings to settle or otherwise dispose of any Claim. If GM fails to elect in writing within thirty (30) days after the notification referred to above to assume the defense or settlement of such claim. DRA may engage counsel to defend, settle or otherwise dispose of such Claim. For any matter for which DRA may make a defense or an indemnity claim under this Article VIII, DRA will not undertake any corrective actions, other than in the case of an emergency or where immediate action is otherwise required under an Environmental Law or by order of a governmental agency or court, unless GM fails to assume responsibility for the Claim within thirty (30) days after receipt of written notice of the Claim. Notwithstanding anything to the contrary in this Article VIII. if GM fails to assume responsibility for such Claim within such thirty (30) day period. DRA's actions thereafter will not be deemed to be a waiver of its rights to defense or indemnification under this Article VIII.

E.    In cases where GM has assumed the defense, settlement or disposition of a Claim, GM will be entitled to assume the defense or settlement thereof with counsel of its own choosing, and will be entitled to settle, compromise, decline to appeal. or otherwise dispose of the Claim without the consent or agreement of DRA: provided, however. that in such event GM will consult in advance with DRA concerning the terms and conditions of such disposition and will use its best efforts to obtain from the claimant a release in favor of DRA from all liability with respect to such Claim. Unless mandated by an Environmental Law or by a governmental agency or court. GM will not enter into any voluntary disposition that would materially and significantly impair the ability of DRA to produce products in the ordinary course of business.

F.    In any case in which GM assumes the defense or settlement of a Claim, DRA will not be entitled to participate in any such action or proceeding or in any negotiations or proceedings to settle or otherwise dispose of the Claim for which defense or indemnification is being sought unless so requested by GM, and only in such event will DRA have the right to employ its own counsel in such regard and at its sole cost. In no event will GM be liable for the cost of employing or using in-house legal counsel regardless of whether GM has, or has not, assumed the defense or settlement of such Claim. In the event that DRA receives notice that a governmental agency is about to initiate an enforcement action or revocation proceeding against it due to the failure of GM to undertake action within the scope of GM's defense or indemnification obligations under this Article VIII. DRA may, following written notice to, consultation with, and a reasonable opportunity to cure by GM and failure of GM to so cure, elect to assume direct responsibility for implementing the action demanded by the agency. Such election will not be deemed a waiver by DRA of any rights to defense or indemnification under this Article VIII.

G.    In the event that defense or indemnification is requested, GM and its representatives and agents will, subject to claims of attorney-client or work product privilege or protection, have access to the premises. books and records of DRA to the extent reasonably necessary to assist it in defending or settling any Claim: provided, however, that such access will be conducted in such manner so as not to interfere unreasonably with DRA's operations.

H.    Until the expiration of the longest indemnification period under Section 8.12.31. DRA agrees to retain all documents with respect to all matters as to which defense or indemnity obligations may be sought under this Article VIII. Before disposing of or otherwise destroying

68

*RA‡*
*b*

any such documents. DRA will give reasonable notice to such effect and deliver to GM. at GM's cost and upon its request. a copy of any such documents. In addition. DRA will use reasonable efforts to cause its employees to cooperate with and assist GM in connection with any Claim for which defense or indemnity is sought by DRA under this Section 8.12.3.

I.    Except as provided in Sections 8.12.4B and 8.12.3J. the term of GM's defense and indemnity obligations under this Section 8.12.3 will be as follows:  (i) as to each parcel of Real Property covered by the Leases and by the Sublease. GM's defense and indemnity obligations will continue in effect as to such parcel of Real Property until the expiration or termination of the applicable Lease or Sublease. as the case may be. but in no case will GM's defense and indemnity obligations terminate prior to the date ten (10) years after the Closing Date: and (ii) in the event that DRA acquires title to or an assignment of GM's leasehold interest in any such Real Property, GM's defense and indemnity obligations will terminate ten (10) years after the Closing Date as to the parcel of Real Property involved.  Except as provided in Sections 8.12.4B. 8.12.5A and 8.12.5C. upon termination of GM's defense and indemnity obligations under the preceding sentence. DRA will have no right of action against GM for environmental matters or conditions relating to the Real Property. the Assets. or the Business under contract (including this Agreement). Environmental Laws. other laws or the common law or in equity: provided. however. that: (i) in the event that a Claim is asserted before the termination of the defense and indemnity obligations of GM. GM's obligation to defend and indemnify DRA will continue. but only as to such Claim; and (ii) in the event that GM has not completed a Remedial Plan required and implemented with respect to any Claim prior to the expiration of GM's defense and indemnity obligations. GM will nevertheless complete the actions required under such Remedial Plan.

J.    With respect to the Horn Area. the Bridge Area and the Compressed Air Area. each as defined in the Leases:  (i) the minimum ten (10) year term of GM's defense and indemnification obligations under Section 8.12.3I will in no case terminate prior to the date ten (10) years after the Closing Date. extended by a period equal to the Horn Occupancy Period. as defined in the Leases. with respect to the Horn Area. the Bridge Area Occupancy Period. as defined in the Leases. with respect to the Bridge Area. and the C.A. Occupancy Period. as defined in the Leases. with respect to the Compressed Air Area: and (ii) the number of years set forth in the first column of the table in Section 8.12.4B entitled "Year After Closing In Which The Claim Is Asserted" will be increased by the same period with respect to each such respective area.

8.12.4.   DRA's Defense and Indemnification Obligations: Claims Procedures.

A.    Defense and Indemnification.    DRA will. in accordance with the following terms and conditions. defend. indemnify and hold GM harmless from and against any Claims with respect to Adverse Consequences asserted against or to which GM may be subjected and which are caused by. relate to or arise in connection with: (i) any breach by DRA of any warranty. representation. covenant or agreement by DRA under this Article VIII; (ii) any violation by DRA and its Related Parties of any Environmental Law with respect to the Assets. the Real Property or the Businesses; (iii) any act or omission of DRA and its Related Parties or environmental matter or condition first arising on or after the Closing Date (to the extent not due to the act or omission of GM and its Related Parties (other than a trespasser)). including the creation on or after the Closing Date of any Solid Waste Management Unit or any Release or release of any substance to the extent occurring on or after the Closing Date from any Solid Waste Management Unit in existence and located on the Real Property prior to the Closing Date:

69

IN WITNESS WHEREOF, the Parties hereto have caused this Asset Purchase Agreement to be executed by their duly authorized officers.

GENERAL MOTORS CORPORATION

*Robert G. Feller, attorney-*

By: *in-fact for Heidi Kung*

Print Name: *Robert D. Feller*

Its: *Treasurer*

And

*Charles A. Cotten, attorney*

By: *in-fact for J.T. Battenberg, III*

Print Name: CHARLES A. COTTEN

Its: Senior Vice President

DR INTERNATIONAL, INC.

By: *James R. Gerrity*

Print Name: *James R. Gerrity*

Its: *Executive V.P.*

DRA, INC.

By: *James R. Gerrity*

Print Name: *James R. Gerrity*

Its: *Executive V.P.*

# EXHIBIT B

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS



FILED

AUG 18 2008

CLERK OF CIRCUIT COURT #6
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

WILLIAM CAWLFIELD,                                           )
                                                            )
                    Plaintiff,                              )
                                                            )
-vs.-                                                       )        08-L-82
                                                            )
A.W. CHESTERTON, INC.,                                      )
AGCO CORPORATION,                                           )
ALLIED MANUFACTURING COMPANY,                               )
AMPEX CORPORATION,                                          )
ARVINMERITOR INC.,                                          )
BONDEX INTERNATIONAL INC.,                                  )
BRAND INSULATIONS INC.,                                     )
BORG-WARNER CORPORATION, by its successor-in-interest,      )
    BORGWARNER MORSE TEC INC.,                              )
CBS CORPORATION, a Delaware corporation, f/k/a              )
    VIACOM INC., successor by merger to CBS CORPORATION,    )
    a Pennsylvania corporation, f/k/a                       )
    WESTINGHOUSE ELECTRIC CORPORATION,                      )
CERTAIN-TEED CORPORATION,                                   )
CHRYSLER LLC,                                               )
CLEAVER-BROOKS COMPANY INC.,                                )
COOPER INDUSTRIES, INC.,                                    )
CROWN CORK & SEAL COMPANY, INC.,                            )
DEERE & COMPANY,                                            )
DELCO REMY INTERNATIONAL INC.,                              )
DOMCO PRODUCTS TEXAS, L.P.,                                 )
EMERSON RADIO CORP.,                                        )
EVRAZ OREGON STEEL MILLS,                                   )
FORD MOTOR COMPANY,                                         )
FOSTER WHEELER ENERGY CORP.,                                )
GARLOCK INC.,                                               )
GENERAL ELECTRIC COMPANY,                                   )
GENERAL GASKET CORPORATION,                                 )
GENERAL MOTORS CORPORATION,                                 )
GENERAL REFRACTORIES COMPANY,                               )
GEORGIA-PACIFIC CORPORATION,                                )
GOODYEAR TIRE AND RUBBER COMPANY,                           )
GRIMES AEROSPACE COMPANY, d/b/a                             )
    SURFACE COMBUSTION,                                     )
HONEYWELL INTERNATIONAL INC.,                               )
INDUSTRIAL HOLDINGS CORPORATION, f/k/a                      )
    THE CARBORUNDUM COMPANY                                 )

Case No. 08-L-82                                                   Page 1 of 29

INGERSOLL-RAND COMPANY,                                           )
INTERNATIONAL PAPER COMPANY,                                      )
INTERNATIONAL TRUCK & ENGINE CORPORATION,                        )
JOHN CRANE, INC.,                                                 )
JOHN DEERE COMPANY,                                               )
KENTILE FLOORS, INC.                                              )
LG ELECTRONICS U.S.A., INC.,                                      )
MW CUSTOM PAPERS LLC,                                             )
MAREMONT CORPORATION,                                             )
MCKESSON CHEMICAL COMPANY,                                        )
MCKESSON CORPORATION,                                             )
METROPOLITAN LIFE INSURANCE COMPANY,                              )
MOTOROLA, INC.,                                                   )
OWENS-ILLINOIS, INC.,                                             )
PHILIPS ELECTRONICS NORTH AMERICA CORPORATION,                   )
PNEUMO ABEX CORPORATION,                                          )
RCA CORPORATION,                                                  )
RILEY STOKER CORPORATION,                                         )
RPM INTERNATIONAL INC.,                                           )
RPM INC.,                                                         )
SPRINKMANN SONS CORPORATION,                                      )
SPRINKMANN SONS CORPORATION OF ILLINOIS,                         )
T.H. AGRICULTURE & NUTRITION, L.L.C. successor to                )
   THOMPSON HAYWARD CHEMICAL CO., INC.,                           )
TRANE US, INC.,                                                   )
WESTERN AUTO SUPPLY COMPANY,                                      )
YOUNG GROUP LTD., f/k/a YOUNG SALES CORP.,                        )
YOUNG INSULATION GROUP OF ST. LOUIS, INC.,                        )
ZENITH ELECTRONICS LLC,                                           )
                                                                  )
                              Defendants,                         )


## FIRST AMENDED COMPLAINT

## COUNT I

## (NEGLIGENCE COUNT)

Now comes the Plaintiff, by his attorneys, SIMMONSCOOPER LLC, and for his cause

of action against the Defendants, states:

1.   The Plaintiff, William Cawlfield, is a resident of the State of Colorado.

# EXHIBIT C

STATE OF INDIANA          )          MARION COUNTY SUPERIOR COURT
                          )          CIVIL DIVISION ROOM NO. 2
COUNTY OF MARION          )          CAUSE NO. 49D02-9801-MI-0001-127


Robert Phillips,                          )
                                          )
                          Plaintiff,      )
v.                                        )
                                          )
A.E. Staley Manufacturing Co.             )
A W Chesterton Co.                        )
Allis Chalmers Product Liability Trust    )
American Standard, Inc.                   )          **FILED**
Asarco, Inc.                              )
Asbestos Corp., Ltd.                      )          SEP 0 1 2004
Asphalt Materials, Inc.                   )
Atlantic Richfield Co. successor in interest to )    *Daria Anae Sholler*
        The Anaconda Co.                  )          CLERK OF THE
Atlas Turner, Inc.                        )          MARION CIRCUIT COURT
Bayer Cropscience, LP, successor to       )
        Amchem Products, Inc.             )
Bell Asbestos Mines, Ltd.                 )
BMW Constructors, Inc.                    )
BOC Group                                 )
Borg-Warner, Inc.                         )
BP Corp. North America, Inc.              )
Brand Insulation, Inc.                    )
Buffalo Pumps, Inc.                       )
Bunge North America (East), Inc. f/k/a    )
        Central Soya Co., Inc.            )
CertainTeed Corp.                         )
Circle B Co.                              )
Cleaver-Brooks, Inc.                      )
Coca Cola Enterprises, Inc.               )
Copeland Corp.                            )
Crompton Corp. successor in interest to   )
        Witco Corp.                       )
Crown Cork & Seal Co., Inc.               )
Daimler-Chrysler Corp.                    )
Dana Corp.                                )
DAP, Inc.                                 )
Delco Electronics LLC                     )
Durabla Manufacturing Co.                 )
F.A. Wilhelm Construction Co., Inc        )

Fargo Insulation, Inc.                                    )
Ford Motor Co.                                            )
Foster Wheeler, LLC                                       )
Freyn Brothers, Inc.                                      )
G.W. Berkheimer Co., Inc.                                 )
Garlock, Inc.                                             )
General Motors Corp.                                      )
Golden Casting Corp.                                      )
Grace Foods, Inc.                                         )
Hagerman Construction Corp.                               )
Hedman Resources, Ltd.                                    )
Henry Co.                                                 )
Hormel Foods Corp.                                        )
Hunt Construction Group, Inc.                             )
Indiana Bell Telephone Co., Inc.                          )
Indianapolis Power & Light Co. (IPL)                      )
INDOPCO, Inc. f/k/a National Starch &                     )
        Chemical Corp.                                    )
International Paper Co.                                    )
International Truck and Engine Corp.                       )
Kennedy Tank & Manufacturing                              )
Lucent Technologies, Inc. successor in                    )
        interest to Western Electric                      )
Marathon Oil Co.                                          )
McMaster-Carr Supply Co.                                  )
Metropolitan Life Insurance Co.                           )
Millennium Petrochemicals, Inc. successor in              )
        interest to Bridgeport Brass                      )
Minnesota Mining & Manufacturing Co.                      )
Norton Co. n/k/a St-Gobain Abrasives, Inc.                )
Oakfabco, Inc., f/k/a Kewanee Boiler Corp.                )
Otis Elevator Co.                                         )
Owens-Illinois, Inc.                                      )
Praxair Surgface Technologies, Inc.                       )
Prox Co., Inc.                                            )
PSI Energy, Inc.                                          )
Quigley Co., Inc.                                         )
Reilly Industries, Inc.                                   )
Remy International, Inc.                                   )
Riley Power, Inc., f/k/a Riley Stoker Corp.               )
Rinker Materials Corp.                                    )
Rogers Corp.                                              )
SEPCO, Inc.                                               )
Shambaugh & Son, LLC                                      )

Sid Harvey                                              )
Sprinkmann Sons Corp. of Illinois                      )
Steel Grip, Inc.                                       )
Stokley-Van Camp, Inc.                                 )
The Dow Chemical Co.                                   )
The Great Atlantic & Pacific Tea Co.                   )
The Kroger Co.                                          )
The Quaker Oats Co.                                    )
The Sager Corp.                                        )
Triangle Enterprises, Inc.                             )
Tyco International (U.S.), Inc. successor in            )
    interest to Ansul, Inc.        )
Union Carbide Corp.                                    )
Uniroyal, Inc.                                         )
Viacom, Inc., successor in interest to                 )
    Westinghouse Electric Corp.    )
Weil McLain                                            )
                                                       )
      Defendants.        )

## AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff **Robert Phillips,** by counsel, allege and incorporate as follows:

### GENERAL ALLEGATIONS

1.     Robert Phillips is the Plaintiff herein.

2.     DEFENDANTS which PLAINTIFF alleges manufactured, sold, installed or caused to

be installed, used, distributed, and/or otherwise placed into the stream of commerce, asbestos and/or

asbestos-containing products to which PLAINTIFF Robert Phillips was exposed are as follows:

A W Chesterton Co; Allis Chalmers Products Liability Trust; American Standard, Inc; Asarco, Inc; Asbestos Corp., Ltd; Atlas Turner, Inc; Bayer Cropscience, LP, Successor to Amchem Products, Inc; BMW Constructors, Inc; Bell Asbestos Mines, Ltd; BOC Group; Brand Insulation, Inc; Buffalo Pumps, Inc; CertainTeed Corp; Circle B Co; Cleaver-Brooks, Inc; Copeland Corp; Crown Cork & Seal Co., Inc; Dana Corp; DAP, Inc; Durabla Manufacturing Co; F.A. Wilhelm Construction Co., Inc; Fargo Insulation, Inc; Foster Wheeler, LLC; Freyn Brothers, Inc; G.W. Berkheimer Co., Inc; Garlock, Inc; Hagerman Construction Corp; Hedman Resources, Ltd; Henry Co; Hunt Construction Group, Inc; International Paper Co.; Kennedy Tank & Manufacturing; McMaster-Carr Supply Co; Metropolitan Life Insurance Co; Minnesota Mining & Manufacturing Co; Norton Co., n/k/a Saint-Gobain Abrasives, Inc; Oakfabco, Inc., f/k/a Kewanee Boiler Corp; Owens-

# EXHIBIT D

# IN THE SUPERIOR COURT

## FOR THE COUNTY OF PROVIDENCE

### STATE OF RHODE ISLAND

_IN RE: ASBESTOS LITIGATION_

MARY ANN WYDRA and ROBERT BINDA,                    C.A. NO. PC-06-2153
AS CO-INDEPENDENT EXECUTORS
OF THE ESTATE OF CLEMENT WYDRA and
MARY ANN WYDRA, INDIVIDUALLY


VERSUS                                              JURY TRIAL DEMANDED


A.W. CHESTERTON COMPANY
BUFFALO PUMPS, INC.
CBS CORPORATION
        Individually, and as Successor in
        Interest to Westinghouse Electric Corp., and
        as successor in interest to B.F. Sturtevant
COOPER-BESSEMER CORP.
D.C. FABRICATORS, INC.
        individually and as successor in interest
        to C.H. Wheeler Company
DELCO REMY INTERNATIONAL, INC.
ELLIOTT TURBOMACHINERY COMPANY, INC.
ENPRO INDUSTRIES, INC.
        Individually and as Successor in Interest
        to Fair Banks Morse Engine
GARDNER-DENVER, INC.
GARLOCK SEALING TECHNOLOGIES, LLC.
GENERAL ELECTRIC COMPANY

GENERAL MOTORS CORPORATION
IMO INDUSTRIES, INC.
INGERSOLL-RAND COMPANY
     Individually and as Successor in
     Interest to Terry Steam Turbine Company
JOHN CRANE, INC.
METROPOLITAN LIFE INSURANCE COMPANY
NEWPORT NEWS SHIPBUILDING, INC.
NEWPORT NEWS SHIPBUILDING AND
     DRY DOCK CO.
NORTHERN PUMP COMPANY
PACKINGS AND INSULATION CORP.
P.I.C. CONTRACTORS, INC.
QUIMBY EQUIPMENT CO., INC
SCHUTTE & KOERTING, INC.
TERRY CORPORATION OF CONNECTICUT
UNION CARBIDE CORPORATION
VICKERS LTD.
WARREN PUMPS, INC.,
     Individually and as Successor to the
     Quimby Pump Company
WEINMAN PUMP AND SUPPLY COMPANY
WESTINGHOUSE AIR BRAKE COMPANY
WESTINGHOUSE ELECTRIC CORPORATION

## COMPLAINT

1.     Plaintiffs, Mary Ann Wydra and Robert Binda, individually and as Co-Independent Executors of the Estate of Clement Wydra ("Decedent") bring suit on behalf of the Estate of Clement Wydra and Mary Ann Wydra individually, for losses sustained as a result of her husband's injury and death.

2.     The Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship due to the presence of a Rhode Island defendant. Removal is improper. Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or of any federal officer of the U.S. or any agency or person acting under him occurring under color of such office). No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. Venue is proper in this court.

3.     Each of the defendants named in the caption above has conducted business in the State of Rhode Island and has produced, manufactured or distributed asbestos and/or asbestos containing products with the reasonable expectation that such products would be used or consumed in this State, which products were so used or consumed, and has committed the tortious acts set forth below in this state.

# EXHIBIT E

STATE OF INDIANA  )  IN THE MARION COUNTY SUPERIOR COURT
        )SS:
COUNTY OF MARION  )  CAUSE NO.

|  |  |
|---|---|
| TIMOTHY BYNUM      ) | 49D12 08 09 CT 0 4 3 6 7 3 |
|      Plaintiff,   ) |  |
|            ) |  |
|     vs.      ) |  |
|            ) |  |
| REMY INC.,       ) | **FILED** |
| REMY INTERNATIONAL, INC., and ) |  |
| REMY INTERNATIONAL HOLDINGS, ) | (115) SEP 25 2008 |
| INC.,          ) |  |
| GENERAL MOTORS CORPORATION, ) | _Charlotte L. White_ |
| DELPHI AUTOMOTIVE SYSTEMS ) | CLERK OF THE MARION CIRCUIT COURT |
| HOLDING, INC.,     ) |  |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, ) |  |
| and          ) |  |
| ADAMO DEMOLITION COMPANY, ) |  |
|            ) |  |
|      Defendants, ) |  |

## COMPLAINT FOR DAMAGES

Comes now the Plaintiff, by counsel, and for his cause of action against the Defendants, each of them, states as follows:

1. At all times hereinafter mentioned Defendants Remy Inc., Remy International Inc., Remy International Holdings, Inc., General Motors Corporation, Delphi Automotive Systems Holding, Inc., and Delphi Automotive Systems, LLC owned, operated and maintained a factory known as Plant 11 in Anderson, Indiana.

2. Between September 25th and September 28th, 2006 Defendant Adamo Demolition Company was providing services at Plant 11 to shut down the Plant.

3. At said time and place, Tim Bynum was working as an employee of an independent contractor, when he was subjected to a toxic exposure.

# EXHIBIT F

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

JAMES NANGLE,                                              )
                                                          )
                    Plaintiff,                            )
                                                          )
-vs.-                                                     )    NO. 09-L-574
                                                          )
A.W. CHESTERTON, INC.,                                    )
A.O. SMITH CORPORATION,                                   )
ASHLAND INC.,                                             )
BEAZER EAST INC.,                                         )
BONDEX INTERNATIONAL INC.,                                )
BRAND INSULATIONS INC.,                                   )
BORG-WARNER CORPORATION, by its successor-in-interest,    )
   BORGWARNER MORSE TEC INC.,                             )
CBS CORPORATION, a Delaware corporation, f/k/a            )
   VIACOM INC., successor by merger to CBS CORPORATION,   )
   a Pennsylvania corporation, f/k/a                      )
   WESTINGHOUSE ELECTRIC CORPORATION,                     )
CERTAIN-TEED CORPORATION,                                 )
CLEAVER-BROOKS COMPANY INC.,                              )
COOPER INDUSTRIES, INC.,                                  )
CRANE CO.,                                                )
CROWN CORK & SEAL COMPANY, INC.,                          )
DUPONT CHEMICAL COMPANY,                                  )
FORD MOTOR COMPANY,                                       )
FOSECO INC.,                                              )
FOSTER WHEELER ENERGY CORP.,                              )
GARLOCK INC.,                                             )
GARLOCK SEALING TECHNOLOGIES LLC,                         )
GENERAL ELECTRIC COMPANY,                                 )
GENUINE PARTS COMPANY,                                    )
GEORGIA-PACIFIC LLC,                                      )
GRIMES AEROSPACE COMPANY, d/b/a                           )
   SURFACE COMBUSTION,                                    )
HERCULES POWDER COMPANY,                                  )
HONEYWELL INTERNATIONAL INC.,                             )
IMO INDUSTRIES INC.,                                      )
INDUSTRIAL HOLDINGS CORPORATION, f/k/a                    )
   THE CARBORUNDUM COMPANY                                )
INGERSOLL-RAND COMPANY,                                   )
JOHN CRANE, INC.,                                         )

FILED
JUN 08 2009
CLERK OF CIRCUIT COURT #10
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

09-L-574
Page 1 of 19

KENTILE FLOORS, INC.                                              )
MAREMONT CORPORATION,                                             )
MCKESSON CHEMICAL COMPANY,                                        )
MCKESSON CORPORATION,                                             )
METROPOLITAN LIFE INSURANCE COMPANY,                             )
MW CUSTOM PAPERS LLC,                                             )
OCCIDENTAL CHEMICAL CORPORATION,                                 )
ON MARINE SERVICES COMPANY, A WHOLLY OWNED                       )
   SUBSIDIARY OF OGLEBAY NORTON COMPANY,          )
OWENS-ILLINOIS, INC.,                                            )
PNEUMO ABEX LLC, successor-in-interest to ABEX                   )
   CORPORATION, f/k/a PNEUMO ABEX CORPORATION,     )
REMY INTERNATIONAL INC.,                                         )
RILEY STOKER CORPORATION,                                        )
RPM INTERNATIONAL INC.,                                          )
RPM INC.,                                                        )
SEPCO CORPORATION,                                               )
SPRINKMANN INSULATION, INC.,                                     )
SPRINKMANN SONS CORPORATION,                                     )
SPRINKMANN SONS CORPORATION OF ILLINOIS,                         )
TAMKO BUILDING PRODUCTS INC.,                                    )
TRANE US, INC.,                                                  )
TRIANGLE CONDUIT & CABLE CO. INC.,                               )
WYETH (INC.),                                                    )
YOUNG GROUP LTD., f/k/a YOUNG SALES CORP.,                       )
YOUNG INSULATION GROUP OF ST. LOUIS, INC.,                       )
                    )
        Defendants,                             )


## FIRST AMENDED COMPLAINT

### COUNT I

### (NEGLIGENCE COUNT)

Now comes the Plaintiff, by his attorneys, SIMMONSCOOPER LLC, and for his

cause of action against the Defendants, states:

    1.    The Plaintiff, James Nangle, is a resident of the State of Florida.

09-L-574
Page 2 of 19

**EXHIBIT G**

SEP 3 0 2004

SQUIRE, SANDERS & DEMPSEY L.L.P.

**SQUIRE SANDERS**  LEGAL COUNSEL WORLDWIDE

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

Direct Dial: +1.602.528.4001
MNadeau@ssd.com

September 23, 2004

<u>VIA FACSIMILE  (248) 267-4320
AND REGULAR MAIL</u>

Glenn A. Jackson, Esq.
General Motors Legal Staff
General Motors Corporation
400 GM Renaissance Center
PO Box 400
Detroit, Michigan 48265-4000

Re:    **Robert Phillips v. A.W. Chesterton Co., et al.**
**Cause No. 49D02-9801-MI-0001-127, Marion Superior Court, Indianapolis, Indiana**

Dear Glenn:

Enclosed is copy of an amended complaint and summons concerning alleged asbestos exposure, which was served on Delco Remy International, Inc., now known as ("nka") Remy International, Inc. ("RII"), on September 8, 2004. The enclosed amended complaint is submitted to you under the Asset Purchase Agreement between RII and General Motors dated July 13, 1994, in which General Motors agreed to defend and indemnify RII for all "retained liabilities." Accordingly, please consider this correspondence to serve as RII's prompt notice seeking a defense and indemnification under Section 5.2, 5.3.1 and 5.3.2 of the aforementioned Asset Purchase Agreement.

For your convenience, Section 5.2 of the July 1994 Asset Purchase Agreement, which concerns Retained Liabilities, states in part:

> Purchaser shall not assume any liabilities or obligations of GM of any kind, whether such liabilities or obligations relate to payment, performance or otherwise, whether matured or unmatured, known or unknown, whether contingent or otherwise, fixed or absolute, present, future or otherwise (the "Retained Liabilities"), it being understood that all of such Retained Liabilities shall be retained, and paid, performed and/or discharged by GM in accordance with their respective terms.

CINCINNATI • CLEVELAND • COLUMBUS • HOUSTON • LOS ANGELES • MIAMI • NEW YORK • PALO ALTO • PHOENIX • SAN FRANCISCO
TAMPA • TYSONS CORNER • WASHINGTON DC • RIO DE JANEIRO | BRATISLAVA • BRUSSELS • BUDAPEST • LONDON • MADRID • MILAN
MOSCOW • PRAGUE | BEIJING • HONG KONG • TAIPEI • TOKYO | ASSOCIATED OFFICES: BUCHAREST • DUBLIN • KYIV
www.ssd.com

SQUIRE, SANDERS & DEMPSEY L.L.P.

Glenn A. Jackson, Esq.
September 23, 2004
Page 2


Section 5.3.1 of the July 1994 Asset Purchase Agreement, which concerns General Indemnification Obligations, states in part:

> GM Shall indemnify DRI [nka RII], Purchaser and their respective directors, officers and Affiliates and hold DRI [nka RII], Purchaser and their respective directors, officers and Affiliates harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating directly or indirectly to, arising out of or resulting from . . . (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing.

The claims in this amended complaint fall squarely under these provisions. As we have discussed previously, under Section 5.3.2, General Motors has the right to assume the defense of RII in this matter. Please confirm in writing, as soon as possible, that General Motors will indemnify RII and whether General Motors will exercise its right to defend RII in this action.

Thank you for your assistance and prompt attention to this matter.


Very truly yours,

Mark A. Nadeau

MAN/dt


cc:    Debra Rutschman
Sheila Cannon

# EXHIBIT H

11/09/2004  11:16    313-665-7503              GM                              PAGE  02/03



Glenn A. Jackson
Attorney

General Motors Corporation
Legal Staff
400 GM Renaissance Center
Mail Code: 482-028-205
Detroit, Michigan, 48265-4000
Tel 313-665-7518
Fax 248-267-4320
glenn.jackson@gm.com

November 8, 2004        VIA FAX  602-253-8129 and U.S. Mail

Mark A. Nadeau, Esq.
Squire, Sanders & Dempsey, L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Re:   INDEMNIFICATION REQUEST
      Robert Phillips v. A. W. Chesterton Co., et al.
      GM File No.:  485432

Dear Mr. Nadeau:

I have reviewed your September 23, 2004 correspondence which, in part, makes a request for indemnification and defense on behalf of Remy International in the above captioned matter.

Although there is little factual information on which to base a decision, it appears that Mr. Phillips is claiming he was exposed to asbestos, in part, for which he alleges Remy International, Inc. was responsible.  GM agrees to indemnify and defend Remy International for claims made arising from alleged premises liability exposure to asbestos in which the plaintiff is alleging his exposure occurred prior to 1994.  If plaintiff should change his description of exposure or update it such that he specifies some exposure occurring after 1994, we will advise you accordingly.

Of course, such a change in the factual situation would change this analysis materially and, GM reserves the right to reconsider this decision and, after notifying you, re-tender both the indemnity and defense to Remy International for all or any part of this claim in that instance.

GM's counsel, Dennis R. McEwen of Eckert Seamans Cherin & Mellott has been instructed to contact you to arrange for the transfer of the file to Mr. McEwen and for his substitution as counsel for Remy International.

As you are aware, it is critically important for defendants to be able to respond to discovery. Please identify the appropriate person or persons who will act as a liaison for purposes of responding to discovery directed to Remy International.  Our mutual counsel will be in touch with that person to begin the process of gathering information.

Mark A. Nadeau, Esq.
November 8, 2004
Page 2


If you would like to discuss this further or have any questions, please give me a call.

Very truly yours,

Glenn A. Jackson
Attorney


GAJ:dlr

c:    Michael A. Bergin, Esq.
      Phillip Cosgrove, Esq.
      Dennis R. McEwen, Esq.

# EXHIBIT I



**Remy International, Inc.**

World Headquarters • 2902 Enterprise Drive • Anderson, Indiana 46013

765-778-6499
Fax 765-778-6525

Writer's Direct Number: 765-778-6895
Fax: 765-778-6760
Cell: 765-621-8829
E-mail: cannon.shella@remyinc.com

May 2, 2006

Glenn A. Jackson, Esq.
General Motors Legal Staff
General Motors Corporation
400 GM Renaissance Center
P. O. Box 400
Detroit, Michigan 48265-4000

Dear Mr. Jackson:

Re:    Mary Ann Wydra & Robert Binda v. A.W. Chesterton Co., et al, C.A. No. PC-06-2153,
       <u>Superior Court, County of Providence, State of Rhode Island</u>

Enclosed is a copy of a complaint and summons concerning alleged asbestos exposure, which
was served on Remy International, Inc., ("Remy") on April 28, 2006. The enclosed complaint is
submitted to you under the Asset Purchase Agreement between Remy (f/k/a Delco Remy
International, Inc.) and General Motors, dated July 13, 1994, in which General Motors agreed to
defend and indemnify Remy for all "retained liabilities". Accordingly, please consider this
correspondence to serve as Remy's prompt notice seeking a defense and indemnification under
Section 5.2, 5.3.1 and 5.3.2 of the aforementioned Asset Purchase Agreement.

For your convenience, Section 5.2 of the July 1994 Asset Purchase Agreement, which concerns
Retained Liabilities, states in part:

> Purchaser shall not assume any liabilities or obligations of GM of any kind, whether such
> liabilities or obligations relate to payment, performance or otherwise, whether matured or
> unmatured, known or unknown, whether contingent or otherwise, fixed or absolute, present,
> future or otherwise (the "Retained Liabilities"), it being understood that all of such Retained
> Liabilities shall be retained, and paid, performed and/or discharged by GM in accordance
> with their respective terms.

Section 5.3.1 of the July 1994 Asset Purchase Agreement, which concerns General
Indemnification Obligations, states in part:

> GM shall indemnify DRI, Purchaser and their respective directors, officers and Affiliates and
> hold DRI, Purchaser and their respective directors, officers and Affiliates harmless from and
> against Damages, whether contingent or otherwise, fixed or absolute, known or unknown,
> present or future or otherwise, relating directly or indirectly to, arising out of or resulting
> from . . . (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to
> the ownership or use of the Purchased Assets by GM or the operation of the Businesses on
> or prior to Closing.

Glenn A. Jackson, Esq.
May 2, 2006
Page Two


Based upon the facts, we believe the claims in this complaint fall squarely under these provisions.
Under Section 5.3.2, General Motors has the right to assume the defense of Remy in this matter.
Please confirm in writing, as soon as possible, that General Motors will indemnify Remy and
whether General Motors will exercise its right to defend Remy in this action.

Thank you for your assistance and prompt attention to this matter.

Yours truly,

Sheila Cannon
Director, Legal Services

SDDC:ms

Enclosure

Via Express Courier

cc:    Q. Williams

**EXHIBIT J**

05/09/2006   08:55   313                                                           PAGE  02/03



Maynard L. Timm
Attorney

General Motors Corporation
Legal Staff
400 GM Renaissance Center
Mail Code: 482-026-601
Detroit, Michigan, 48265-4000
Tel 313-665-7375
Fax 313-665-7376
maynard.l.timm@gm.com

May 8, 2006

*Via Facsimile (No. 765/778-6760)*
*Confirmed by U.S. Mail*

Sheila Cannon
Director, Legal Services
Remy International, Inc.
World Headquarters
2902 Enterprise Drive
Anderson, IN  46013

Re:   **REQUEST FOR INDEMNIFICATION**
      **CLEMENT WYDRA, et al. *v. GMC, et al.***
      **Superior Court, Providence County**
      **GM File No. 510318**

Dear Ms. Cannon:

In response to your letter of May 2, 2006, General Motors is willing to accept the further defense and indemnify Delco Remy International, Inc., in this case against any judgment rendered against it in this action.

Based upon the factual information provided and the language of the July 1994 Agreement, GM agrees to indemnify and defend Delco Remy International for claims made arising from alleged asbestos exposure which occurred prior to 1994.  It currently appears that Mr. Wydra is claiming his exposure to Delco Remy International's products or premises (the allegations are unclear) prior to 1994.  If plaintiff should change his description of exposure or update it such that he specifies some exposure occurring after 1994, we will advise you accordingly.  This undertaking is necessarily based on the understanding that all reasonable steps have been taken to protect the defense of Delco Remy International.

Of course such a change in the factual situation would change this analysis materially and, GM reserves the right to reconsider this decision and, after notifying you, retender both the indemnity and defense to Delco Remy International for all or any part of this claim in that instance.

GM has selected Robert P. Morgan of the firm of Eckert Seamans Cherin & Mellott, LCC to defend the interests of Delco Remy International and General Motors.

The provisions under which GM is agreeing to defend and, if necessary, indemnify Delco Remy International require Delco Remy International to cooperate fully in the defense of this case.  I understand that you have already sent us some documents.  Please review your records and

May 8, 2006
Page 2

immediately contact Robert Morgan and send him any other pleadings or suit papers, together with copies of letters, memoranda, notes and any other documents the dealership has that relate in any way to plaintiff's claim. Also, please let Robert Morgan know, immediately, the name, position, and telephone number of the most appropriate dealership employee to act as the contact between Robert Morgan and Delco Remy International.

As you are aware, it is critically important for defendants to be able to respond to discovery. Please identify the appropriate person or persons who will act as a liaison for purposes of responding to discovery directed to Delco Remy International. Our mutual counsel will be in touch with that person to begin the process of gathering information.

We do not know if the dealership has already hired an attorney to defend it in this lawsuit but if you have, you should immediately let that attorney know about this letter.

We are sending a copy of this letter to Robert Morgan.

Very truly yours,

*Maynard L. Timm/cb*

Maynard L. Timm
Attorney

MLT/cb

c:    VIA FACSIMILE (No. 412/566-6099)
      Robert P. Morgan, Esq.
      Eckert Seamans Cherin & Mellott LLC
      600 Grant Street, 44th Floor
      Pittsburgh, PA  15219

# EXHIBIT K

# Greenberg Traurig

Quinn P. Williams
Tel. 602.445.8344
Fax. 602.445.8647
WilliamsQ@gtlaw.com

September 24, 2008

Glenn A. Jackson, Esq.
General Motors Legal Staff
General Motors Corporation
300 GM Renaissance Center
P. O. Box 482-C25-A36
Detroit, Michigan 48265-3000

Dear Mr. Jackson:

Re:    *William Cawlfield v. A.W. Chesterton* (including Delco Remy International, Inc. )
       Case No. 08-L-82 – Circuit Court of the Third Judicial Circuit, Madison County, Illinois

We represent Remy International, Inc. ("Remy"). Enclosed is a copy of a complaint and summons concerning alleged asbestos exposure, which was served on Remy on September 8, 2008, to which a **response is due before October 8, 2008**. We have requested a 30-day extension to answer and are currently awaiting a response from Plaintiff's counsel. The enclosed complaint is submitted to you under the Asset Purchase Agreement between Remy (f/k/a Delco Remy International, Inc.) and General Motors, dated July13, 1994, in which General Motors agreed to defend and indemnify Remy for all "retained liabilities". Accordingly, please consider this correspondence to serve as Remy's prompt notice seeking a defense and indemnification under Section 5.2, 5.3.1 and 5.3.2 of the aforementioned Asset Purchase Agreement.

For your convenience, Section 5.2 of the July 1994 Asset Purchase Agreement, which concerns Retained Liabilities, states in part:

> Purchaser shall not assume any liabilities or obligations of GM of any kind, whether such liabilities or obligations relate to payment, performance or otherwise, whether matured or unmatured, known or unknown, whether contingent or otherwise, fixed or absolute, present, future or otherwise (the "Retained Liabilities"), it being understood that all of such Retained Liabilities shall be retained, and paid, performed and/or discharged by GM in accordance with their respective terms.

Section 5.3.1 of the July 1994 Asset Purchase Agreement, which concerns General Indemnification Obligations, states in part:

> GM shall indemnify DRI, Purchaser and their respective directors, officers and Affiliates and hold DRI, Purchaser and their respective directors, officers and Affiliates harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating directly or indirectly to, arising out of or resulting from . . . (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
SACRAMENTO
SILICON VALLEY
PHILADELPHIA
PHOENIX
TALLAHASSEE
TOKYO
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 2375 East Camelback Road, Suite 700 | Phoenix, Arizona 85016 | Tel. 602.445.8000 | Fax 602.445.8100

www.gtlaw.com

The claims in this complaint fall squarely under these provisions as all alleged exposure, as can be ascertained from the complaint, occurred prior to Closing.  Under Section 5.3.2, General Motors has the right to assume the defense of Remy in this matter.  Please confirm in writing, as soon as possible, that General

Motors will indemnify Remy and whether General Motors will exercise its right to defend Remy in this action.

Thank you for your assistance and prompt attention to this matter.

Very truly yours,

GREENBERG TRAURIG, LLP

Quinn Williams

QW/SDDC:ms

Enclosure

cc:  S. Cannon

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

CHICAGO

DALLAS

DELAWARE

DENVER

FORT LAUDERDALE

HOUSTON

LAS VEGAS

LOS ANGELES

MIAMI

NEW JERSEY

NEW YORK

ORANGE COUNTY, CA

ORLANDO

SACRAMENTO

SILICON VALLEY

PHILADELPHIA

PHOENIX

TALLAHASSEE

TOKYO

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 2375 East Camelback Road, Suite 700 | Phoenix, Arizona 85016 | Tel. 602.445.8000 | Fax 602.445.8100

www.gtlaw.com

# EXHIBIT L

10/01/2008 15:55   313-665-7376              GM                                          PAGE   01/02
09-50026-mg   Doc 4086-3   Filed 09/16/09   Entered 09/16/09 18:36:32   Exhibit to
Declaration of Jeremiah Shives   Pg 43 of 50

**GM**

Maynard L. Timm
Attorney

General Motors Corporation
Legal Staff
400 GM Renaissance Center
Mail Code: 482-026-601
Detroit, Michigan, 48265-4000
Tel 313-665-7375
Fax 248-267-4389
maynard.i.timm@gm.com

October 1, 2008

**Via Facsimile (No. 602-445-8647)**
**Confirmed by Mail**

Quinn P. Williams, Esq.
Greenberg Traurig, LLP
2375 East Camelback Road, Suite 700
Phoenix, AZ 85016

Re:   **INDEMNIFICATION REQUEST**
      **William Cawlfield v. A.W. Chesterfield (including Remy International, Inc.)**
      **Circuit Court of the Third Judicial Circuit, Madison County, Illinois**
      **Case No. 08-L-82**
      **GM Case No. 644847**

Dear Mr. Williams:

I have reviewed your letter dated September 24, 2008, regarding Remy International, Inc.'s (f/k/a Delco Remy International, Inc.) indemnification request and have also reviewed the 1994 Asset Purchase Agreement.

Based upon the above factual information and the language of the July 1994 Agreement, GM agrees to indemnify and defend Remy International for claims made arising from alleged exposure to Remy International products prior to 1994. It currently appears that William Cawlfield is claiming he was exposed to Remy International's products prior to 1994. If plaintiff should change his description of exposure or update it such that he specifies some exposure occurring after 1994, we will advise you accordingly.

Of course, such a change in the factual situation would change this analysis materially and, GM reserves the right to reconsider this decision and, after notifying you, retender both the indemnity and defense to Remy International for all or any part of this claim in that instance.

As you are aware, it is critically important for defendants to be able to respond to discovery. Please identify the appropriate person or persons who will act as a liaison for purposes of responding to discovery directed to Remy and notify both me and our mutual counsel, Paul

10/01/2008  15:55    313-665-7376      GM                                          PAGE   02/02
09-50026-mg    Doc 4086-3   Filed 09/16/09   Entered 09/16/09 18:36:32   Exhibit to
Declaration of Jeremiah Shives    Pg 44 of 50

October 1, 2008
Page 2

Lankford. Our mutual counsel, Paul Lankford, will be in touch with that person to begin the process of gathering information.

If you would like to discuss this further or have any questions, please give me a call.

Very truly yours,

*Maynard L. Timm*

Maynard L. Timm
Attorney

MLT:sdw

c:      Paul V. Lankford, Esq.
        Lankford & Crawford LLP
        2 Theatre Square, Suite 240
        Orinda, CA 94563
        Phone No. (925) 258-9091

# EXHIBIT M

# Greenberg
# Traurig

Quinn P. Williams
Tel. 602.445.8344
Fax. 602.445.8647
WilliamsQ@gtlaw.com

October 2, 2008

Glenn A. Jackson, Esq.
General Motors Legal Staff
General Motors Corporation
300 GM Renaissance Center
P. O. Box 482-C25-A36
Detroit, Michigan 48265-3000

Dear Mr. Jackson:

Re:     *Timothy Bynum v. Remy Inc., et al* (including General Motors Corporation)
        Cause No. 49D12 08 09 CT 043673 – Marion County Superior Court, Indiana

We represent Remy Inc. ("Remy").  Enclosed is a copy of a summons and complaint concerning alleged injury due to exposure and development of histoplasmosis during the shut down of Plant 11 in Anderson, Indiana.  This complaint was served on Remy's registered agent on September 29, 2008, and a **response is due before October 22, 2008**.  A 30-day extension to answer has been requested, and we are currently awaiting a response from Plaintiff's counsel.  The enclosed complaint is submitted to you under the Asset Purchase Agreement between Remy (f/k/a Delco Remy International, Inc.) and General Motors, dated July13, 1994, in which General Motors agreed to defend and indemnify Remy for all "retained liabilities".  Accordingly, please consider this correspondence to serve as Remy's prompt notice seeking a defense and indemnification under Section 5.2, 5.3.1 and 5.3.2 of the aforementioned Asset Purchase Agreement.

For your convenience, Section 5.2 of the July 1994 Asset Purchase Agreement, which concerns Retained Liabilities, states in part:

> Purchaser shall not assume any liabilities or obligations of GM of any kind, whether such liabilities or obligations relate to payment, performance or otherwise, whether matured or unmatured, known or unknown, whether contingent or otherwise, fixed or absolute, present, future or otherwise (the "Retained Liabilities"), it being understood that all of such Retained Liabilities shall be retained, and paid, performed and/or discharged by GM in accordance with their respective terms.

Section 5.3.1 of the July 1994 Asset Purchase Agreement, which concerns General Indemnification Obligations, states in part:

> GM shall indemnify DRI, Purchaser and their respective directors, officers and Affiliates and hold DRI, Purchaser and their respective directors, officers and Affiliates harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown,

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
SACRAMENTO
SILICON VALLEY
PHILADELPHIA
PHOENIX
TALLAHASSEE
TOKYO
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 2375 East Camelback Road, Suite 700 | Phoenix, Arizona 85016 | Tel. 602.445.8000 | Fax 602.445.8100

www.gtlaw.com

Glenn A. Jackson, Esq.
October 2, 2008

present or future or otherwise, relating directly or indirectly to, arising out of or resulting from . . . (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing.

The claims in this complaint fall squarely under these provisions as all alleged exposure, as can be ascertained from the complaint, occurred prior to Closing. Under Section 5.3.2, General Motors has the right to assume the defense of Remy in this matter. Please confirm in writing, as soon as possible, that General Motors will indemnify Remy and whether General Motors will exercise its right to defend Remy in this action.

Thank you for your assistance and prompt attention to this matter.

Very truly yours,

GREENBERG TRAURIG, LLP

Quinn Williams

QW/SDDC

Enclosure

cc:    S. Cannon

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
SACRAMENTO
SILICON VALLEY
PHILADELPHIA
PHOENIX
TALLAHASSEE
TOKYO
TYSONS CORNER
WASHINGTON, DC
WEST PALM BEACH
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 2375 East Camelback Road, Suite 700 | Phoenix, Arizona 85016 | Tel. 602.445.8000 | Fax 602.445.8100

www.gtlaw.com

# EXHIBIT N

**REDACTED**

**From:** maynard.l.timm@gm.com <maynard.l.timm@gm.com>
**To:** Williams, Quinn P. (Shld-Phx-CP)
**Cc:** damon.l.white@gm.com <damon.l.white@gm.com>
**Sent:** Thu Jul 16 07:27:14 2009
**Subject:** Asbestos Indemnification Requests--July 31, 1994 Remy (f/k/a Delco Remy International, Inc.) Asset Purchase Agreement--General Motors Company

Quinn—

On July 10, 2009, General Motors Corporation emerged from Chapter 11 Bankruptcy and became General Motors Company, a completely new entity.  As part of the bankruptcy process, General Motors Company did not assume the July 31, 1994 Remy (f/k/a Delco Remy International, Inc.) Asset Purchase Agreement.  Consequently, General Motors Company will have no involvement or assume any responsibility for the defense of asbestos exposure litigation against Remy (f/k/a Delco Remy International, Inc.).  We will be communicating this information to outside counsel shortly.

**Maynard L. Timm**
**(313) 665-7375 (8/255)**
**(248) 267-4389 or (313) 665-7376 (Fax)**
**maynard.l.timm@gm.com**
**GM Legal Staff, M/C: 482-026-601**
**400 Renaissance Center, Detroit, MI 48265-4000**

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby

notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

CONFIDENTIALITY NOTICE:

This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you.

9/15/2009