**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                  :
In re                                                             : Chapter 11
                                                                  :
GENERAL MOTORS CORP., *et al.*,                                   : Case No. 09-50026 (REG)
                                                                  :
            Debtors.                                              : (Jointly Administered)
                                                                  :
---------------------------------------------------------------- x

**NOTICE OF WITHDRAWAL OF LIMITED OBJECTION OF
DTE LORDSTOWN, LLC TO NOTICE OF
(I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS, UNEXPIRED LEASES OF
PERSONAL PROPERTY AND UNEXPIRED LEASES OF
NONRESIDENTIAL REAL PROPERTY AND
(II) CURE AMOUNTS RELATED THERETO**

DTE Lordstown, LLC ("Lordstown"), by and through its counsel, Paul, Hastings, Janofsky & Walker LLP, hereby withdraws its Limited Objection (the "Objection", Docket No. 1231) to the General Motors Corporation's ("GM") proposed assumption and assignment of certain executory contracts with Lordstown. In support of this Notice of Withdrawal, Lordstown represents as follows:

1. On June 9, 2009, Lordstown received the "Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Costs Related Thereto", dated June 5, 2009 (the "Cure Notice").

2. Lordstown filed the Objection on June 17, 2009, stating, *inter alia*, that Lordstown objects to the assumption and assignment of the Assumable Executory

Contracts on the grounds that the Debtors have failed to provide adequate notice of the specific agreements that they intend to assume and assign, and therefore have not and cannot establish their ability to satisfy the conditions to assumptions set forth in section 365(b) and 365(f)(2)(B) of the Bankruptcy Code. 11 U.S.C. §365(b) and 365(f)(2)(B).

3. Lordstown and General Motors Company (formerly NGMCO, Inc.) have subsequently entered into the Agreement to Resolve Objection to Cure Notice (attached hereto as Exhibit A) and a letter agreement that sets forth the contracts being assumed (attached hereto as Exhibit B) pursuant to which Lordstown has agreed to withdraw its Objection.

Dated:  September 17, 2009    Respectfully submitted,
New York, New York

                                          /s/ *Mary P. Miras*
Mary P. Miras (MM-6279)
Daniel B. Goldman (DG-4503)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Park Avenue Tower
75 East 55th Street
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 318-4090
Email: marymiras@paulhastings.com
       dangoldman@ paulhastings.com

                -and-

Richard A. Chesley (IL 6240877)
Stephenie S. Park (IL 6297376)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email:  richardchesley@paulhastings.com
        stepheniepark@paulhastings.com

ATTORNEYS FOR DTE LORDSTOWN, LLC

# EXHIBIT A

## AGREEMENT TO RESOLVE OBJECTION TO CURE NOTICE



*30009 Van Dyke Avenue*
*Warren, Michigan 48090*

July 22, 2009

DTE Lordstown LLC
414 S. Main St., Suite 600
Ann Arbor, MI. 48014
United States

### *Re:* Agreement to Resolve Objection to Cure Notice

Dear GM Supplier:

  This letter is an agreement between General Motors Company (formerly NGMCO, Inc.) ("Purchaser") and DTE Lordstown, LLC, on behalf of itself and its subsidiaries and affiliates (collectively, "Supplier"), relating to the resolution of Supplier's objection (the "Objection") to a notice of intent to assume and assign certain executory contracts and/or unexpired leases (the "Cure Notice") under § 365 of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) and to evidence the agreement whereby Purchaser is satisfying all Cure Amounts as defined in the Sale Order (as defined below).

  On June 1, 2009 (the "Petition Date"), Motors Liquidation Company (formerly General Motors Corporation) ("Old GM") and its debtor-subsidiaries commenced Case No. 09-50026 (the "Bankruptcy Case") currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Old GM issued to Supplier the Cure Notice in accordance with the Bankruptcy Court's order approving, among other things, procedures for the sale of substantially all of GM's assets pursuant to § 363 of the Bankruptcy Code (the "363 Transaction"), which was entered on June 2, 2009 [Docket No. 274] (the "Sale Procedures Order").[1] Subsequently, on July 5, 2009, the Bankruptcy Court entered its Order approving the 363 Transaction. The Cure Notice identifies certain executory contracts and/or unexpired leases (each an "Agreement" and, collectively, the "Agreements") that Old GM proposes to assume and assign to the Purchaser in accordance with the Sale Order. The Cure Notice also sets forth GM's proposed amount to cure all prepetition defaults under the Agreement(s), as required by § 365(b) of the Bankruptcy Code (the "Proposed Cure Amount").

  On June 17, 2009, Supplier filed the Objection to the Cure Notice [Docket No. 1231].

---

[1] Undefined capitalized terms used in this Agreement have the meanings set forth in the Sale Procedures Order (defined below).

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Supplier and Purchaser agree as follows:

1. **Assumption and Assignment.** Effective upon the Supplier's and Purchaser's execution of this letter agreement, the Agreement(s)' status on the Contract Website shall be changed to reflect "Assumed".

2. **Agreed Cure Amount.** To the extent not previously paid in the ordinary course of business, within five (5) business days following Supplier's and Purchaser's execution of this letter agreement, Purchaser will pay to Supplier ▓▓▓▓ (the "Agreed Cure Amount"), which represents Supplier's and Purchaser's agreement in satisfaction of any and all Cure Amounts (as defined in the Sale Order) as of the Commencement Date in respect of the Agreements to be assigned to Purchaser. Supplier agrees that Purchaser's payment of the Agreed Cure Amount is in full and final satisfaction of all claims of Supplier against Old GM and Purchaser, as the case may be, or any of their respective affiliates or subsidiaries arising under or related to the Agreement(s) and that paragraph 25 of the Sale Order shall be in full force and effect as between Supplier and Purchaser, upon Supplier's receipt of payment of the Agreed Cure Amount.

3. **Postpetition Obligations.** Purchaser will perform all obligations that arise or come due under the Agreement(s) on or after the Petition Date as and when such obligations come due in accordance with the Agreements(s)' terms in the ordinary course of business (the "Postpetition Obligations").

4. **Withdrawal of the Objection.** To the extent not previously withdrawn, the Objection is withdrawn and Supplier will take all actions necessary to withdraw promptly the objection from the Bankruptcy Court's docket.

5. **Confidentiality.** GM and Supplier agree that this letter agreement's content is confidential and not intended for dissemination beyond the parties without the express written consent of each of the parties. Notwithstanding the foregoing, any party may disclose the existence and terms of this Agreement (i) to the extent required by law or by any governmental agency or required or requested to be disclosed pursuant to legal process (including discovery requests) or in connection with any bankruptcy, insolvency, or similar proceeding involving any of the parties, (ii) to the extent necessary to enforce this letter agreement and (iii) to any employee, officer, director, agent, affiliate, representative, investor, partner, member, shareholder, or actual or potential financing source of such party or such party's affiliates (provided that any such person or entity is directed to maintain such information in confidence as contemplated by this Section and that such party shall be responsible and liable for the failure of any such person or entity to maintain such information in confidence as contemplated by this Section).

6. **General Terms.**

   (a) This letter agreement and the Sale Order together is the entire understanding of the parties in connection with the subject matter of this letter agreement.

(b)    The persons executing this letter agreement warrant that they have the corporate power and authority to execute this letter agreement and that this letter agreement has been duly authorized by the parties.

(c)    This letter agreement may be executed in any number of counterparts and by each party hereto on separate counterparts, each of which when so executed and delivered will be an original, but all of which together will constitute one and the same instrument. For purposes of this letter agreement, signatures obtained by facsimile or other electronic means will constitute original signatures.

(d)    This letter agreement and the parties' respective rights and obligations are binding upon their respective successors and assigns, and together with the rights and remedies of the parties under this letter agreement, inure to the benefit of the parties and their respective successors and assigns.

(e)    This letter agreement may not be amended or modified unless the amendments or modifications are in writing signed by the parties.

(f)    The parties to this letter agreement acknowledge and agree that the rights and interests of the parties under this letter agreement are intended to benefit solely the parties to this letter agreement.

(g)    No delay or failure of the parties to exercise any respective right, power or privilege under this letter agreement will affect such right, power or privilege, nor will any single or partial exercise thereof preclude any further exercise thereof, nor the exercise of any other right, power or privilege.

(h)    Should any provision of this letter agreement be held invalid, prohibited, or unenforceable in any one jurisdiction it will, as to that jurisdiction only, be ineffective to the extent of such holding without invalidating the remaining provisions of this letter agreement, and any such holding does not invalidate or render unenforceable that provision in any other jurisdiction wherein it would be valid and enforceable.

(i)    This letter agreement is entered into among competent persons who are experienced in business and represented by counsel, and the parties and their respective counsel have carefully reviewed this letter agreement. Any ambiguous language in this agreement will not be construed against either party as the drafter of this letter agreement.

(j)    This letter agreement is made in the State of New York and is governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without regard to conflicts of laws principles.

(k)    This letter agreement is subject to all of the terms, conditions and limitations set forth in the Sale Order. In the event of any conflict between the terms of this letter agreement and the terms of the Sale Order, the terms of the Sale Order shall prevail. Nothing contained herein shall be deemed to alter, modify, expand or diminish the terms of the Sale Order.

7. **CONSULTATION WITH COUNSEL.** THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH COUNSEL OF THEIR CHOICE BEFORE EXECUTING THIS LETTER AGREEMENT AND ARE DOING SO WITHOUT DURESS, INTIMIDATION, OR COERCION AND WITHOUT RELIANCE UPON ANY REPRESENTATIONS, WARRANTIES, OR COMMITMENTS OTHER THAN THOSE REPRESENTATIONS, WARRANTIES, OR COMMITMENTS SET FORTH IN THIS LETTER AGREEMENT.

8. **JURY TRIAL WAIVER.** THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THIS RIGHT MAY BE WAIVED. THE PARTIES EACH KNOWINGLY, VOLUNTARILY, AND WITHOUT DURESS, INTIMIDATION, OR COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES ARISING OUT OF OR IN RELATION TO THIS LETTER AGREEMENT OR ANY OTHER AGREEMENTS BETWEEN THE PARTIES EXECUTED IN CONNECTION WITH THIS LETTER AGREEMENT. NO PARTY WILL BE DEEMED TO HAVE RELINQUISHED THE BENEFIT OF THIS JURY-TRIAL WAIVER UNLESS THE RELINQUISHMENT IS IN A WRITTEN INSTRUMENT SIGNED BY THE PARTY TO WHICH THE RELINQUISHMENT WILL BE CHARGED.

*[ Remainder of this page intentionally left blank ]*

Please acknowledge your agreement to the above terms by signing in the space provided.

Very truly yours,

**GENERAL MOTORS COMPANY (formerly NGMCO, Inc.)**

By: *Susanna Wesser*

Its: <u>Executive Director</u>

**Acknowledged and Agreed:**

_____,
**On behalf of itself and its subsidiaries and affiliates**

By: *[signature]*
Its: _____

REVIEWED BY: *[signature]* LEGAL

REVIEWED BY: *OC 8/5/09* ACCOUNTING

DETROIT.3726331.6

### Exhibit B

### Letter Agreement

FINAL

August 7, 2009

*Via overnight express delivery*

Robert Threlkeld, Manager
Supply Contracts & Green Initiatives
General Motors Corporation
30200 Mound Road
Warren, MI. 48090

Re:   Agreement to Assign and Assume Certain DTE Lordstown, LLC ("Lordstown") Contracts by
      General Motors Company (formerly NGMCO, Inc.) ("GM")

Dear Mr. Threlkeld:

As you are aware, GM has provided Lordstown with the *Agreement to Resolve Objection to Cure Notice*, dated as of July 22, 2009 (the "Agreement"). The purpose of this letter, therefore, is to clarify certain points regarding the Agreement. The secure contract website referenced in the cure notice received by Lordstown as well as the Agreement fails to adequately identify the specific contracts that GM intends to assume and assign (*e.g.*, the contracts listed are not identified by name or date). Accordingly, Lordstown has set forth in an attachment to this letter all of the contracts related to Lordstown's provision of certain industrial support services at GM's Lordstown Plants (the "Lordstown Contracts"). Lordstown understands, consistent with previous discussions with GM representatives, that GM is in fact assuming all of the Lordstown Contracts. Second, Lordstown would also like to clarify that Lordstown is not signing the Agreement on behalf of its affiliates or subsidiaries.

As Lordstown would like some certainty with respect to its operation under the Lordstown Contracts, please confirm your agreement with the preceding by executing a counterpart of this letter in the space indicated below and returning the executed counterpart to the undersigned.

Sincerely,

DTE LORDSTOWN, LLC

By: Energy and Industrial Utilities Company, LLC
Its Sole Member

By: _____

Acknowledged and Agreed:

GENERAL MOTORS CORPORATION
By: _____
Name: Rob Threlkeld
Title: Manager - Supply Contracts

REVIEWED
BY: OC
ACCOUNTING

REVIEWED
BY: LEGAL

LEGAL_US_E # 84500332.1

FINAL

## ATTACHMENT – AGREEMENTS OF DTE LORDSTOWN, LLC

| DOCUMENT | PARTIES |
| --- | --- |
| (1) Utility Services Agreement, dated July 17, 2003 and as amended as of June 10, 2008 | DTE Lordstown, LLC ("Lordstown") and General Motors Corporation ("GM") |
| (2) Change Order Request, dated July 12, 2005 | Lordstown and GM |
| (3) Tri-Party Agreement, dated July 17, 2003 | Lordstown, ICX Corporation and GM |
| (4) Paying Agreement, dated July 17, 2003 | ICX Corporation, GM and Lordstown |
| (5) Guaranty dated January 1, 2008 by Energy and Industrial Utilities Company, LLC ("EIUC") in favor of GM | EIUC |