Roussel & Clement
1714 Cannes Drive
LaPlace, Louisiana 70068
Gerolyn P. Roussel, Esq.
(985) 651-6591
(985) 651-6592 - fax
E-mail:  rousselp@bellsouth.net

**Counsel for Jeanette Garnett Pichon, et al**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In re:

MOTORS LIQUIDATION COMPANY, et al.,
f/k/a General Motors Corp., et al.

                                    Debtors.

_____

Chapter 11

Case No. 09-50026 (REG)

(Jointly Administered)

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS AND OPPOSITION**</u>
<u>**TO DETROIT DIESEL CORPORATION'S MOTION FOR AN ORDER EXTENDING**</u>
<u>**AND ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. §362(a) TO COVER**</u>
<u>**CERTAIN LITIGATION RELATING TO DETROIT DIESEL CORPORATION, OR**</u>
<u>**ALTERNATIVELY, ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. §105**</u>

MAY IT PLEASE THE COURT:

Movers are the surviving spouse and children of Leon Roland Pichon. His spouse,

Jeanette Garnett Pichon, and his children, Roland L. Pichon, Mark P. Pichon, Patrice Pichon

Robinson, Tracy Pichon Baham, Veronica Pichon Joseph, and Cade Pichon Hagger ("Pichons"),

filed suit in Civil District Court for the Parish of Orleans on the basis that Leon Pichon suffered

and died from cancer caused by asbestos exposure.

-1-

1.    **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

DDC concedes that it is a corporation separate from General Motors Corporation ("GM") (See Page 3, Paragraph j. of DDC's motion). Even if they were related companies, which is denied, the courts have held that a parent and subsidiary comprise two wholly-separate entities with individual property rights, and the property of a corporation is not the property of its shareholders.  *Kohler v. McClellan*, 77 F.Supp. 308 (D.C. La. 1948), *aff'd, Kohler v. Humphrey*, 174 F.2d 946 (5th Cir. 1948); *Union Local P-1476  of Amalgamated Meatcutters and Butcher Workmen of North America v. Union Citizens Club of Terrebonne Parish*, 408 So.2d 371 (La. App. 1st Cir. 1981);  See also *In re Pearl-Wick Corporation*, 15 B.R. 143, 147 (S.D.N.Y. 1984), *aff'd*, 26 B.R. 604 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 295 (2d Cir. 1982);  *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991, 994 (5th Cir. 1972).

In *Union Local P-1476*, 408 So.2d 371 (La. App. 1st Cir. 1981), the individual stockholders sought to pierce the corporate veil so that they could be recognized as owners of property listed in the corporate name.  In recognizing that the corporate concept should be disregarded only in exceptional circumstances when a creditor seeks to pierce the corporate veil, the court would not expand the "alter ego" theory to allow shareholders to obtain property belonging to the corporate entity.  408 So.2d at 373.

As shown below, this Court cannot provide the relief sought by DDC.  Accordingly, DDC's motion should be dismissed for failing to state a claim upon which relief can be granted.

**2.**     **MOTION TO DISMISS FOR LACK OF JURISDICTION, OR
ALTERNATIVELY, FOR ABSTENTION**

Bankruptcy Rule 9030 states that the bankruptcy "rules shall not be construed to extend

or limit the jurisdiction of the courts or the venue of any matter therein."  Both the action sought

by DDC and the Pichon's state court action are "non-core" proceedings.  28 U.S.C. 157.  The

Pichons **do not** consent to the entry of any final order or judgment by the bankruptcy court as it

relates to DDC.  Accordingly, this bankruptcy court does not have jurisdiction to grant the relief

sought by DDC.  The dispute between the Pichons and DDC is a dispute between two non-

debtors of the GM bankruptcy, and the relief sought by DDC in its motion is not one arising

under Title 11.

Alternatively, the mandatory abstention provisions of 28 U.S.C. 1334(c)(2) are

applicable.  28 U.S.C 1334(c)(2) provides in pertinent part:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not
> have been commenced in a court of the United States absent jurisdiction under
> this section, the district court **shall** abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

It is clear that the issues raised by the Pichons in their state court action arising out of the

injury and death of their husband and father, Leon Pichon, are issues based purely on Louisiana

state law.  Accordingly, it is submitted that the mandatory abstention provisions of 28 U.S.C.

1334(c)(2) apply.

In the further alternative, it is urged that this Honorable Court should exercise

discretionary abstention pursuant to 28 U.S.C. 1334(c)(1)(abstention in bankruptcy proceedings)

and 28 U.S.C. 2201(abstention in declaratory actions. *In re Sweeney*, 49 B.R. 1008 (D.C. 1985)(abstention in bankruptcy proceedings); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)(abstention in bankruptcy proceedings); *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir., No. 90-2229, January 29, 1992) (abstention in declaratory actions). *Mitcheson* is analogous to the instant action. There an insurer filed a declaratory action regarding its obligation to defend and indemnify its insured when the underlying matter for which the insured claimed coverage was the subject of a pending state court action. In *Mitcheson*, the plaintiff in the state court action had filed non-removable purely state law claims in state court alleging personal injuries stemming from lead poisoning. The insurer then brought a declaratory action in federal court on the basis of diversity jurisdiction. The action in federal court, consisting also of purely state law issues, sought a declaration that the insurer owed no duty to defend or indemnify the insured. In reversing the district court's refusal to dismiss the case, the U. S. Fourth Circuit Court of Appeals held that the district court abused its discretion afforded by the Declaratory Judgment Act (28 U.S.C. 2201) by not abstaining from entertaining an action regarding coverage issues pending is a related state court suit. In so holding, the Court of Appeals recognized that in declaratory actions, Congress has afforded federal courts a freedom not present in ordinary diversity suits to consider the state interest in having state courts determine questions of state law. This state interest is particularly strong when the questions in the declaratory actions depend solely upon state law, and "[a]bsent a strong countervailing federal interest, the federal court ... should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law."

-4-

*Mitcheson*, 955 F.2d at 238.  "For the federal court to charge headlong into the middle of a
controversy already the subject of state court litigation risks 'gratuitous interference with the
orderly and comprehensive disposition of [the] state court litigation'". *Id*. at 239 (quoting
*Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)).  "A system of judicial federalism has
enough inherent friction without the added aggravation of unnecessary federal declarations on
questions [of state law]".  *Id*. at 240.  (See also *O'Rourke v. Cairns*, 129 B.R. 87, 91 at note 5
(E.D. La. 1991) holding that abstention is appropriate when the case only involves issues of state
law, even when those issues of state law are well settled).

Accordingly, should it be determined that this Court does have jurisdiction to entertain
DDC's motion, it is respectfully submitted that this Court should abstain from exercising that
jurisdiction.

3.    **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

The Pichons have no minimum contacts with New York, and there is no personal
jurisdiction over them.  It is conceded that if this Bankruptcy Court does have subject-matter
jurisdiction over the action filed by DDC, it may exercise personal jurisdiction over the Pichons.
It is the Pichons' position, however, that this Court does not have subject-matter jurisdiction and,
out of an abundance of caution, they object to personal jurisdiction to make clear that they do not
submit to personal jurisdiction in any New York Court.

4.    **DDC IS NOT ENTITLED TO STAY OR ENJOIN THE PICHON'S LOUISIANA
STATE COURT ACTION**

Leon Pichon's injury and death resulted from exposure to asbestos in the State of
Louisiana.  The Pichons have sued for redress of this injury in Civil District Court for the Parish

-5-

of Orleans, State of Louisiana. There is nothing about the Pichons' claim that has any connection

with New York.

Louisiana law, as per both federal and state cases, holds that the protection of the

automatic stay provision of the bankruptcy law was created for the benefit of the bankrupt debtor

and **is a personal defense** of the insured (bankrupt debtor). *Aaron v. Bankers and Shippers Ins.

Co.*, 475 So.2d 379, 382 (La. App. 1st Cir. 1985); *Louisiana Land & Exploration v. Amoco

Production*, 878 F.2d 852, 855 (5th Cir. 1989). Accordingly, DDC has no right to seek a stay.

DDC seeks injunctive relief to stay the Pichons' Louisiana state court proceeding. This

Honorable Court does not have jurisdiction to stay the Pichons' state court proceeding.

Specifically, the "Anti-Injunction Act," 28 USC 2283, provides:

> A court of the United States may not grant an injunction to stay proceedings in a
> State court except as expressly authorized by Act of Congress, or where necessary
> in aid of its jurisdiction, or to protect or effectuate its judgments.

The exceptions to the "Anti-Injunction Act" have been interpreted very strictly. *Carter v.

Ogden Corp.*, 524 F.2d 74 (5th Cir. 1975). Even when one of the exceptions apply, it has been

held that if the issues are dependent upon state law a stay should not be granted. *Coastal

Petroleum Co. v U.S.S. Agri-Chemicals, A Div. of U. S. Steel Corp.*, 695 F.2d 1314 (11th Cir.

1983). The issues in the Pichons' case pending in Louisiana involve questions dependent

entirely upon Louisiana state law. The issues upon which DDC seeks a declaratory judgment

(whether it is entitled to indemnity) are dependent entirely upon Louisiana state law.

Accordingly, the request for a stay should be denied.

DDC states that there are approximately sixty-five (65) civil suits pending in the state courts of twelve (12) different states and all are "in varying stages of readiness." (*See DDC's Motion for Extension of Automatic Stay or Injunction*.) In addition, at least eight (8) of those cases, including objectors herein, are scheduled for trial in the next six months. Objectors' case is currently set for jury trial in four months, January 11, 2010.

Leon Roland Pichon worked at Halter Marine, Inc. from 1955 through 2004, where he was exposed to asbestos from DDC's asbestos on a daily basis.[1] (Exhibit "A".) DDC began as Detroit Diesel Division of GM which was founded in 1938. (*See DDC's Motion*.) On January 1, 1988, Detroit Diesel Corporation, a joint venture between GM and Penske Corporation, was formed in order to purchase from GM the Detroit Diesel Allison Division. (*Id.*) In 1993, DDC became a publicly traded corporation at which time Daimler-Benz acquired the entire 20% share of GM's ownership interest. (*Id.*) In 1998 Daimler-Benz became DaimlerChrysler, and in 2000, acquired 100% of DDC's outstanding shares of stock. (*Id.*) In 2007, when Daimler and Chrysler split, the shares of DDC remained with Daimler North America Corporation, as they do today, and DDC is now a wholly-owned subsidiary of Daimler North America Corporation, "bearing no legal relationship to GM." (*Id.*) In their case, objectors named both GM and DDC as liable defendants – specifically, DDC for its liability as the corporate successor of Detroit Diesel Allison Division which, as admitted by DDC, "manufactured, sold, and/or distributed products with asbestos-containing components" to which Leon Roland Pichon was exposed. (*Id.*; Exhibit "A".)

As part of the Sales Agreement between GM and DDC which took place in 1988, DDC

---

[1] DDC admits that one or more of its predecessor entities manufactured, sold, and/or distributed products with asbestos-containing products. (*See DDC's Motion*, page 3.)

asserts that GM allegedly agreed to assume all liabilities and to indemnify, defend, and hold harmless

Detroit Diesel, and its successors or assigns, for any products manufactured, distributed or sold prior

to January 1, 1988, by GM's Detroit Diesel Allison Division.  (*See* Exhibit "A" and "B" of *DDC's*

*Motion*.)  Based on this alleged indemnity agreement and the fact that DDC was once a division of

GM, DDC argues that in these asbestos cases it is being sued only as a "conduit for liability" and that

there is such a "unity of interest" between GM and DDC that GM may be said to be the "real party

in interest."  However, this is not the case.  As shown herein, DDC is sued as the corporate successor

to the Detroit Diesel Allison Division which manufactured, sold and/or distributed products with

asbestos containing components.  Additionally, there is no "unity of interest" between GM and DDC,

because, as admitted by DDC itself, there has been no legal relationship between GM and DDC since

2007.

    A.    **The Automatic Stay Should Not Be Extended and Enforced as to DDC Under**
        **11 U.S.C. §362(a)**

    The automatic stay as to any proceeding "commenced or [that] could have been commenced

against the debtor"in effect under section 362(a) of the Bankruptcy Code resulting from GM's filing

for Chapter 11 bankruptcy should not be extended and enforced as to DDC.  11 U.S.C. §362(a).

Generally, the automatic stay provision of the Bankruptcy Code applies only to bar actions against

the debtor, and does not extend to the debtor's solvent co-defendants.  *C.H. Robinson Co. v. Paris*

*& Sons, Inc.*, 180 F.Supp.2d 1002, 1009 (N.D.Iowa 2001); *see also, Lynch v. Johns-Manville Sales*

*Corp.*, 710 F.2d 1194, 1196-1197 (6th Cir. 1983), and *Williford v. Armstrong World Industries, Inc.*,

715 F.2d 124, 126-127 (4th Cir. 1983).  Although Courts have recognized an extension of the stay

so as to embrace claims against non-bankrupt co-defendants, these Courts have only done so in

certain "unusual circumstances." *C.H. Robinson Co., supra* at 1010.  In *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), cited by DDC in support of its motion, the United States Fourth Circuit Court of Appeals stated that these unusual circumstances require "something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy." *A.H. Robins*, 788 F.2d at 999.  Specifically, the Fourth Circuit stated that this "unusual situation" arises when there is "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id*.  DDC relies heavily on the Fourth Circuit's decision in the *A.H. Robins* case and states that "[a]n illustration of such a situation would be a suit against a third-party who is entitled to **absolute indemnity** by the debtor on account of any judgment that might result against them in the case." *Id*. (Emphasis added.)

However, this illustration and the situation presented in *A.H. Robins*, is factually distinguishable from the case at bar.  In fact, all the cases cited by DDC in support of its motion are factually distinguishable from DDC's case.[2]  In *A.H. Robins*, the Court found that actions "related

_____

[2] In the case *In Re North Star Contracting Corp. v. McSpedon*, 125 B.R. 368, 370-371 (S.D. N.Y. 1991), also cited by DDC, the president of the Chapter 11 debtor sought and the Court granted an expansion of the §362(a)(1) stay and a preliminary injunction against a state court action brought against him by a former employee and minority owner of the debtor because the debtor and the non-bankrupt president could be considered "one entity or as having a unitary interest" and "a judgment against the non-debtor will affect directly the debtor's assets."  In addition, in *In Re Lomas Financial Corp., et al v. Northern Trust Company*, 117 B.R. 64 (S.D. N.Y. 1990), also cited by DDC, the Court granted an extension of the automatic stay in a case where a creditor of the Chapter 11 corporate debtor brought suit against corporate officers. Finally, the case *In Re United Health Care Organization, et al*, 210 B.R. 228, 232 (S.D. N.Y. 1997), cited by DDC, the Court issued an order enjoining claims against the Chapter 11 debtor's non-debtor principals and officers, who "contribute[s] to the debtor's efforts to achieve rehabilitation."  In each of these cases cited by DDC the Court is extending and enforcing the automatic stay to either presidents, corporate officers, or principals of the Chapter 11 debtor

to" the bankruptcy proceedings against the insurer or against officers or employees of the debtor itself who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3). *A.H. Robins*, 788 F.2d at 1001-1002. There, the court found that there was such identity between the debtor, A.H. Robins, and the third-party defendants, insurers, officers and employees of the debtor, that the debtor may be said to be the real party defendant and a judgment against the third-party defendant would in effect be a judgment or finding against the debtor. *Id*. at 999. However, the current matter does not involve an insurer, officer, or employee of the debtor itself. Rather, here seeking extension of the stay is DDC who currently has no legal connection to the debtor-GM, who is independently liable as corporate successor to the Detroit Diesel Allison Division, and who claims an alleged contingent right of indemnification from GM.

In the case of *C.H. Robinson Co. v. Paris & Sons, Inc.*, which is factually analogous to the current case, the crux of the Court's decision was to determine the scope of the automatic stay provision of 11 U.S.C. §362. *C.H. Robinson*, 180 F.Supp.2d 1002. As in the current matter, in the *C.H. Robinson* case, plaintiff sought to recover unpaid freight charges from both co-defendants, Midwest and Paris & Sons. *Id*. at 1005. Pursuant to an agreement between Paris & Sons and Midwest, Midwest provided to Paris & Sons on a consignment basis certain agricultural products for sale by Paris & Sons to its customers. *Id*. at 1006. Midwest retained ownership of all goods in the possession of Paris & Sons. *Id*. Thus, according to the complaint, the goods shipped by C.H.

---

corporation. Whereas here, seeking extension of the stay is DDC who currently has no legal connection to the debtor-GM, who is independently liable as corporate successor to the Detroit Diesel Allison Division, and who claims an alleged contingent right of indemnification from GM.

Robinson for Paris & Sons were owned by Midwest and, consequently, C.H. Robinson contends that,
as the consignor of the goods shipped, Midwest was liable for unpaid freight charges. *Id.* When
Paris & Sons filed for Chapter 11 bankruptcy, C.H. Robinson's claims against it were stayed, tolling
the statute of limitations. C.H. Robinson argued that because Midwest was the consignor of the
goods, the automatic stay applied to them as well. The Court rejected this argument.

The Court in *C.H. Robinson* specifically distinguished the *A.H. Robins* case and rejected the
dicta set forth by the Fourth Circuit in that case.[3] *Id.* The Court stated that in the *A.H. Robins* case
"the identity of interests was clear: a suit against a corporate officer is effectively one against the
corporation itself." *Id.* at 1011. The corporate officers were entitled to be indemnified under the by-
laws and the laws of the state of the debtor's incorporation and any suit against them would
effectively thwart the efforts of the debtor's reorganization because any suit against these officers
and employees would reduce or diminish the insurance pool and thereby affect the property of the
debtor. *Id.* However, in the *C.H. Robinson* case, despite the fact that Midwest is arguably entitled
to indemnification from Paris & Sons, C.H. Robinson's claim against Midwest, which is based on

---

[3] The dicta set forth by the Fourth Circuit in *A.H. Robins* was also specifically rejected by
other courts as well. *Bernath v. Potato Service of Michigan, Inc.*, 03-22-B-S (D.Me. 2003), 2003
WL 21524726 ; see also *Algemene Bank Nederland, NV v. Hallowood Industries, Inc.*, 133 B.R.
176 (W.D. Pa. 1991) ("I specifically reject the dictum stated by the Fifth [sic] Circuit in *A.H.
Robins Co., Inc.*, 788 F.2d at 999-1000, holding a stay permissible under subsection (a)(1) based
solely on the existence of an indemnification agreement.") In *Bernath v. Potato Service of
Michigan, Inc.*, the Court stated:

> **a debtor and a non-debtor are not "closely related" within the sense
> contemplated by the Fourth Circuit's *A.H. Robbins* decision merely by virtue
> of an indemnification agreement**. (Citation omitted). After all, in the *A.H.
> Robbins* case the non-debtor defendant was the debtor's insurer against which
> suits had been commenced under state direct-action statutes. (Citation omitted).
> The relationship is different from a contractual indemnification relationship.

*Bernath*, *supra* at *2 (Emphasis added).

a federal regulation, is independent from any claim Midwest may have against Paris & Sons for indemnification. *Id*. at 1017. "[U]nusual circumstances do not exist where the debtor's insider is independently liable, the right to indemnity is not absolute, and the continuation of the suit will not interfere with the bankruptcy." *Id*.

This is exactly the situation presented in the current matter. Objectors' state tort survival and wrongful death claims against DDC are independent from any claim for indemnity DDC may have against GM.[4] Furthermore, DDC would not be considered a creditor of GM at all on this matter unless a judgment on the tort claims against DDC is rendered in state court and DDC asserts a claim against GM in this bankruptcy court. Here, DDC is essentially putting the cart before the horse. As specifically stated by the Court in *C.H. Robinson* . . .

> [t]he mere existence of a contractual obligation to indemnify the non-debtor codefendant is probably insufficient to invoke the narrow exception to the rule that " '[a]ctions against co-defendants, guarantors, or principles of the debtor generally are not barred by the § 362(a) stay.' " *University Med. Ctr. v. American Sterilizer Co.*, 82 B.R. 754 (Bankr.E.D.Pa.1988) (quoting *Personal Designs, Inc. v. Guymar, Inc.*, 80 B.R. 29, 30 (E.D.Pa.1987)); see *Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.*, 133 B.R. 176, 180 n. 3 (W.D.Pa.1991) ("specifically reject[ing] the dictum stated by the Fifth [sic] Circuit in *A.H. Robins Co., Inc.*, 788 F.2d at 999-1000, holding a stay permissible under subsection (a)(1) based solely on the existence of an indemnification agreement"). Nevertheless, if the federal regulation invoked by C.H. Robinson creates a viable cause of action, it would, under the plaintiff's theory, create independent liability on the part of Midwest. Thus, **whether C.H. Robinson is entitled to indemnification from Paris & Sons is irrelevant to C.H. Robinson's theory of recovery, because each defendant is alleged to be responsible for the charges.**

---

[4] This is further supported by the Court's decision in *In Re Inforex, Inc.*, 26 B.R. 515, 519 (D.Mass, 1983), which held that an indemnification agreement is a collateral contract, personal to the parties to the agreement, and separate and distinct from the underlying tort claim. *See also, Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349, note 5 (5th Cir. 1995) ("By its nature, an indemnity provision simply allocates loss between joint tortfeasors, and cannot relieve a culpable party of its liability vis-a-vis the injured third-party.").

-12-

*Id*. at 1018, (Emphasis added). The "unusual circumstances" justifying an extension of the automatic

stay did not exist in *C.H. Robinson*, just as they do not exist in the current case, because C.H.

Robinson's claim against Midwest is independent of any liability on the part of Paris & Sons. *Id*. at

1018-1019.

In addition, in *C.H. Robinson* the court recognized the reluctance of the Court in the *A.H.*

*Robins* decision in extending the automatic stay, stating that "if A.H. Robins Co. had not been

subject to literally thousands of claims against it, the Eighth Circuit would not have begrudgingly

accepted the extension of the stay." *Id*. at 1013.  The Court stated:

> The Fourth Circuit itself in *A.H. Robins Co.* recognized that the case was truly an
> exceptional one. *See A.H. Robins Co.*, 788 F.2d at 996. Namely, the case was set
> against the backdrop of **more than 9,000 claims**; the court stated that "by mid 1985,
> Robins, along with its insurer, Aetna Casualty & Surety Company, 'had paid roughly
> **$517 million for 25 trial judgments and 9,300 settlements since the first verdict
> in 1975.**' " *Id.* at 996 n. 4 (quoting Nat. L.J., at 10 (Mar. 17, 1986)).

*C.H. Robinson*, 180 F.Supp.2d at 1013, note 7.  (Emphasis added).  Here, it has been stated by DDC

in its motion that there are approximately sixty-five (65) civil suits pending in the state courts of

twelve (12) different states and all are "in varying stages of readiness."  (*See DDC's Motion*.)  At

least eight (8) of those cases, including objectors herein, are scheduled for start of trial in the next

six months.  This is quite distinguishable from the more than 9,000 claims at issue in *A.H. Robins*,

and the 11,000 related personal injury and property damage suits in *Matter of Johns-Manville Corp.*,

26 B.R. 405 (S.D.N.Y.,1983).

Another case factually similar to the current matter is *Kreisler v. Goldberg*, 478 F.3d 209 (4th

Cir. 2007), where the Chapter 11 debtors filed a motion for imposition of sanctions against the owner

of "ground rent" for the alleged automatic stay violation that occurred when it pursued a state-court

ejectment action against debtor's wholly-owned non-debtor subsidiary.  There, the Fourth Circuit

held that there existed no basis to conclude that there was such an identity of interest between the

debtor and its wholly owned subsidiary, that a judgment against the subsidiary would not effectively

operate as a judgment against the debtor.  *Id*. at p. 213.  The Court stated,

> [i]t is a fundamental precept of corporate law that **each corporation is a separate
> legal entity with its own debts and assets**, even when such corporation is wholly
> owned by another corporate entity.  *See Turner v. Turner*, 147 Md.App. 350, 809
> A.2d 18, 61 (Md.Ct.Spec.App.2002) (noting that "[a] corporation is regarded as a
> **separate legal entity**")

*Id*. (Emphasis added).

As shown above, the "unusual circumstances" required for an extension of the automatic stay

under §362(a) is not present in the current matter.  First, DDC, who is its own independent entity,

and who currently has no legal relationship to GM, contributes nothing to GM's efforts to achieve

rehabilitation as the president and corporate officers did in *In Re United Health Care Organization,

et al*, 210 B.R. 228, 232 (S.D.N.Y. 1997), and *In Re North Star Contracting Corp. v. McSpedon*, 125

B.R. 368, 370-371 (S.D.N.Y. 1991).  Second, DDC and GM cannot be considered so "intimately

intertwined" that GM may be said to be the "real party in interest", as the presidents, corporate

officers and employees of a debtor corporation are considered in some special circumstances.  *A.H.

Robins*, 788 F.2d at 1001; *In Re North Star Contracting Corp.*, 125 B.R. at 370.  As previously

stated, here objectors' state tort survival and wrongful death claims against DDC, as corporate

successor of Detroit Diesel Allison Division, are independent from any alleged contingent claim for

indemnity DDC may have against GM, and there can be no claim for indemnity against GM without

a prior judgment in state court on objectors' state tort claims.  Finally, the case law supports

-14-

objectors' contention that the mere existence of an alleged contingent indemnity agreement does not

justify the extension and enforcement of the automatic stay to a solvent, non-debtor co-defendant.

*University Med. Ctr. v. American Sterilizer Co.*, 82 B.R. 754 (E.D.Pa.1988) (quoting *Personal*

*Designs, Inc. v. Guymar, Inc.*, 80 B.R. 29, 30 (E.D.Pa.1987)); see *Algemene Bank Nederland, N.V.*

*v. Hallwood Indus., Inc.*, 133 B.R. 176, 180 n. 3 (W.D.Pa.1991); *C.H. Robinson*, 180 F.Supp.2d at

1018; and *Bernath*, *supra* at *2.

Clearly, the automatic stay under §362(a)(1) should not be extended and enforced as to DDC,

whose liability and corporate entity status are separate, distinct, and independent of GM.

### B. DDC Is Not Entitled to a Preliminary Injunction Enjoining the Asbestos Cases Against DDC Under 11 U.S.C. §105

Should the Court find that the automatic stay under §362(a) should not be extended and

enforced as to DDC, DDC alternatively seeks a preliminary injunction enjoining the asbestos cases

filed against it under 11 U.S.C. §105. (*See DDC's Motion*.) However, there is no basis for this

injunction; therefore, for the reasons stated below, it should not be granted.

In some special cases, the court's authority under §105 may be broader than the automatic

stay provisions of §362 and invoke the court's "equitable powers to assure the orderly conduct of

reorganization proceedings." *In Re Johns-Manville Corp.*, 91 B.R. 225, 227-8 (S.D.N.Y. 1988).

However, only "[i]n very narrow circumstances, the courts have determined that certain actions

against a non-debtor third party are stayed either automatically, by operation of Section 362, or by

imposition of a 'special' stay pursuant to 11 U.S.C. § 105." *United States v. Davis,* 666 F.Supp. 641,

644 (S.D.N.Y.1987). In fact, §105 is not a general grant of authority to enter any order related to

general bankruptcy concepts or objectives, and the court must exercise its power within the confines

of the Bankruptcy Code and only in connection with some other bankruptcy provision. *In re Peterson*, 145 B.R. 631 (D.S.D. 1992), *reversed on other grounds,* 152 B.R. 612 (D.S.D. 1993); *In re M-H Group, Inc.*, 139 B.R. 836 (N.D.Ohio 1991); and *Lerch v. Federal Land Bank of St. Louis*, 94 B.R. 998 (N.D.Ill.1989).

The Court may use its equitable powers under §105 to enjoin proceedings in other courts "when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to the case before it." *In Re Johns-Manville Corp. v. Colorado Ins. Guar. Ass'n*, 91 B.R. 225, 227-8 (S.D.N.Y. 1988). However, as shown above in Section A, the current matter doesn't present such a situation. In the current case, the objectors' state tort survival and wrongful death claims against DDC, as corporate successor of Detroit Diesel Allison Division, are independent from any claim for alleged indemnity DDC may have against GM, and there can be no claim for indemnity against GM without a prior judgment in state court on objectors' state tort claims. The state court's decision on DDC's liability, which is independent from GM, will not defeat nor impair the bankruptcy court's jurisdiction with regard to deciding whether the alleged contingent indemnity agreement between GM and DDC is valid and/or enforceable, and/or the extent and coverage of same.

Again, in its motion, DDC attempts to argue that plaintiffs are merely suing it as a "surrogate for GM." However, it is not GM, but DDC who is the corporate successor to the Detroit Diesel Allison Division which manufactured, sold and/or distributed products with asbestos containing components. Therefore, it is DDC's independent liability, completely separate from that of any possible indemnity issue of GM, which forms the basis of objectors' claims against DDC. As shown above, an indemnification agreement is a collateral contract, personal to the parties to the agreement,

and separate and distinct from the underlying tort claim. *In Re Inforex, Inc.*, 26 B.R. 515, 519 (D.Mass, 1983). The indemnity provision allocates loss between joint tortfeasors, and cannot relieve a culpable party of its liability. *Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349 (5th Cir. 1995).

In support of its motion, DDC cites to several cases, all of which are factually distinguishable from the current matter. First, DDC cites to the case of *In re Alert Holdings, Inc. v. Interstate Protective Services*, 148 B.R. 194, 200 (S.D.N.Y. 1992), which stated that the standard for issues of injunctive relief under §105 is whether the action to be enjoined is one that would "embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects. ..." However, the facts presented in the *Alert Holdings* case are in no way analogous to the present matter. In *Alert Holdings*, the Chapter 11 debtor itself brought suit against its competitor for their alleged tortious interference with debtors' business relationships and contracts with customers as well as claims for libel and slander. *In re Altert Holdings*, 148 B.R. 194 (S.D.N.Y. 1992). On the debtor's motion for preliminary injunctive relief, the Bankruptcy Court, held that debtors were entitled to preliminary injunctive relief to prevent competitors from making future false and misleading statements to present or former customers, from communicating with present customers in order to induce them to break their contractual business relationships, from billing or seeking collection from present customers, and from further disclosure or use of debtors' proprietary information. *Id*. Clearly, no such issues are presented here.

Another case to which DDC cites is *In re Ionosphere Clubs, Inc.*,111. B. R. 423 (S.D.N.Y. 1990), where the court enjoined actions against the debtor's co-defendants. However, in that case,

as distinguished from the present matter, the Chapter 11 debtor-airline sought to enjoin formerly striking pilots from pursuing an action, in district court, against the bankrupt airline itself which would involve, burden and directly impact the airline, and would likely prejudice the airline's future defense against identical claims based upon identical facts. *Id*. at 434. Here, there would be no direct impact on GM, as the only way GM could be liable is if, 1) DDC is found to be liable on independent grounds, 2) the alleged contingent indemnity agreement is found to cover that independent liability of DDC, and 3) the alleged contingent indemnity agreement is found enforceable by the bankruptcy court against GM.

DDC also cites to the cases *In Re Sudbury, Inc. v. Escott*, 140 B.R. 461, 463 (N.D. Ohio 1992), and *In Re American File Technologies, Inc. v. Taritero*, 175 B.R. 847 (D. Del. 1994), which involved claims against the debtors' officers and directors. Again, as in the above section, the non-debtor defendants in those cases are the debtor's officers and directors, and it is clear that the officers and directors' liability in those cases would directly impose liability on the debtor-corporation itself, and a finding of liability against these individuals would directly expose the debtor to the risk of being collaterally estopped from denying liability for its directors' actions. *Sudbury, Inc.,* 140 B.R. at 463; *American Film Technologies*, 175 B.R. at 850. However, here, as shown above in Section A, the liability of DDC is independent of that of GM, and is based solely on its status as the corporate successor to Detroit Diesel Allison Division. The only possible implication of liability on GM would be through the enforcement of the alleged contingent indemnity agreement which cannot

in and of itself form the basis to extend the automatic stay provision.[5]

Clearly, there is no basis for an injunction under §105 of the Bankruptcy Code to enjoin the continued litigation of the objectors' case. As shown above, these asbestos proceedings would in no way defeat or impair the bankruptcy court's jurisdiction with regard to determining whether GM will indemnify DDC, as the alleged claim for indemnity is personal to the parties of the agreement and is separate and distinct from the underlying tort claim. *In Re Inforex, Inc.*, 26 B.R. at 519. In addition, the objectors' proceeding against DDC will in no way, embarrass, burden, delay, or otherwise impede the reorganization proceedings, as DDC is, by its own admission, no longer legally related to GM, and DDC's liability is independent from GM as it is based on DDC's own corporate successor status.

Clearly, as shown above, there is absolutely no basis whatsoever for this Court to issue an order extending and enforcing the stay imposed under 11 U.S.C. §362(a) to cover certain litigation concerning Detroit Diesel Corporation, nor to enjoin such litigation pursuant to 11 U.S.C. §105. As such, Detroit Diesel's motion must be denied.

---

[5] *University Med. Ctr. v. American Sterilizer Co.*, 82 B.R. 754 (E.D.Pa.1988) (quoting *Personal Designs, Inc. v. Guymar, Inc.*, 80 B.R. 29, 30 (E.D.Pa.1987)); see *Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.*, 133 B.R. 176, 180 n. 3 (W.D.Pa.1991); *C.H. Robinson*, 180 F.Supp.2d at 1018; and *Bernath*, *supra* at *2.

**WHEREFORE**, for the reasons stated above, Jeanette Garnett Pichon, Roland L. Pichon, Mark P. Pichon, Patrice Pichon Robinson, Tracy Pichon Baham, Veronica Pichon Joseph, and Cade Pichon Hagger, respectfully submit that the motion submitted by mover, Detroit Diesel Corporation, should be dismissed or, alternatively, denied.

Dated:  September 30, 2009

      LaPlace, Louisiana

<table>
<tr><td>

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this opposition/pleading has been served upon counsel for all parties by Electronic Service through the Electronic Case Filing System or by FAX or by mailing same to each, on this 30th day of September, 2009.

    /s/ Gerolyn P. Roussel

      Gerolyn P. Roussel

</td><td>

**ROUSSEL & CLEMENT**


 /s/ Gerolyn P. Roussel

Gerolyn P. Roussel, Esquire, #1134

1714 Cannes Drive

LaPlace, Louisiana 70068

Phone: (985) 651-6591

Fax: (985) 651-6592

*Counsel for Jeanette Garnett Pichon, Roland L. Pichon, Mark P. Pichon, Patrice Pichon Robinson, Tracy Pichon Baham, Veronica Pichon Joseph, and Cade Pichon Hagger*

</td></tr>
</table>