Hearing Date and Time: October 6, 2009, at 9:45 a.m. (Prevailing Eastern Time)
Objection Deadline: October 1, 2009 at 4:00 p.m. (Prevailing Eastern Time)

Sander L. Esserman (Admitted *Pro Hac Vice*)
Peter C. D'Apice
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

COUNSEL FOR THE AD HOC COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------  )
                                                        )    Chapter 11
                                                        )
In re                                                   )
                                                        )    Case No. 09-50026 (REG)
                                                        )
MOTORS LIQUIDATION COMPANY, et al.                      )
f/k/a General Motors Corp., et al.                      )    (Jointly Administered)
                                                        )
                                                        )
                            Debtors,                    )
                                                        )
                                                        )
------------------------------------------------------  )
```

## AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' OBJECTION TO MOTION OF DETROIT DIESEL CORPORATION FOR ORDER EXTENDING AND ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. § 362(a) TO COVER CERTAIN LITIGATION RELATING TO DETROIT DIESEL CORPORATION, OR ALTERNATIVELY, ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105

## TABLE OF CONTENTS

I. INTRODUCTION...................................................................................1

II. ARGUMENT AND AUTHORITIES...............................................................4

    A.    Detroit Diesel is the wrong party to seek extension
             of the Debtors' automatic stay, and this contested
             matter is the wrong vehicle through which to seek it........................4

    B.    Detroit Diesel has failed to establish the kind of "unusual
             circumstances" that would warrant an extension of the
             automatic stay..................................................................7

                *1.    An extension of the automatic stay constitutes*
                        *extraordinary relief that is only appropriate where*
                        *the debtor has an absolute and automatic obligation to*
                        *indemnify a non-debtor or where the liability of the*
                        *non-debtor will be imputed to the debtor as a matter of law......7*

                *2.    Detroit Diesel does not have an absolute right to*
                          *indemnity from the Debtors.................................................10*

                  *3.    Detroit Diesel's assertion that it may conceivably*
                          *collect under unidentified insurance policies is a*
                          *red herring and should be disregarded by the Court...............13*

    C.    Detroit Diesel has not alleged facts sufficient for the
             preliminary injunction that it seeks under 11 U.S.C. § 105..............15

                *1.    Detroit Diesel has not, and cannot, show that*
                          *continuation of the Asbestos Actions produces a*
                          *danger of imminent irreparable harm to the Debtors..............16*

                  *2.    Detroit Diesel has made no showing that there exists a*
                          *reasonable likelihood of a successful reorganization by the*
                        *Debtors, that the balance of relative harm as between the*
                        *Debtors and the plaintiffs in the Asbestos Actions lies*
                        *in favor of the Debtors, or that the public interest warrants*
                      *an extension of the stay..................................................19*

IV. CONCLUSION..................................................................................20

## TABLE OF AUTHORITIES

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), *cert. denied*,
479 U.S. 876 (1986)....................................................................................7, 8, 9

*Alert Holdings, Inc. v. Interstate Prot. Servs., Inc.*,
148 B.R. 194 (Bankr. S.D.N.Y. 1992)...................................................................16

*Algood v. Nashville Mach. Co.*, 648 S.W.2d 260 (Tenn. Ct. App. 1983).................18

*Beaty v. McGraw*, 15 S.W.3d 819 (Tenn. Ct. App. 1998)....................................18

*Cent. Me. Rest. Supply v. Omni Hotels Mgmt. Corp.*,
73 B.R. 1018 (D. Me. 1987)...........................................................................10, 11

*Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006)...........................................8

*C.H. Robinson Co. v. Paris & Sons, Inc.*,
180 F. Supp. 2d 1002 (N.D. Iowa 2001)..............................................................5

*Fleet Bus. Credit, L.L.C. v. Wings Restaurants, Inc.*,
291 B.R. 550 (N.D. Okla. 2003)........................................................................11

*Gen. Motors Corp. v. Royal & Sun Alliance Ins. Group, PLC*,
2007 WL 1206830 (Mich. App., April 24, 2007),
*appeal dismissed*, 753 N.W.2d 259 (Mich. 2008).........................................13, 14

*Hamilton v. Am. Corrective Counseling Servs., Inc.*,
2009 WL 973447 (N.D. Ind., April 8, 2009).........................................................5

*Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc.*,
2006 WL 3755175 (S.D.N.Y., Dec. 20, 2006)............................................6, 15, 16

*In re Adelphia Commc'ns Corp.*, 298 B.R. 49 (S.D.N.Y. 2003),
*remanded to* 302 B.R. 439 (Bankr. S.D.N.Y. 2003).....................................10, 13

*In re Adelphia Commc'ns Corp.*, 302 B.R. 439 (Bankr. S.D.N.Y. 2003)
*on remand from* 298 B.R. 49 (S.D.N.Y. 2003)...............................................6, 7

*In re Am. Film Techs., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994)...........................9

*In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86 (2d Cir. 2003)..................7

*In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (Bankr. D. Del. 2002), *mandamus denied*, 300 F.3d 368 (3d Cir. 2002), *cert. denied*, 537 U.S. 1148 (2003)................10

*In re Granite Partners, L.P.*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996).................14, 15

*In re Johns-Manville Corp.*, 26 B.R. 405 (S.D.N.Y. 1983),
*aff'd*, 40 B.R. 219 (S.D.N.Y. 1984)................................................................6, 8

*In re Keene Corp.*, 168 B.R. 285 (Bankr. S.D.N.Y. 1994), *appeal dismissed*,
182 B.R. 379 (S.D.N.Y. 1995)...........................................................................6

*In re Lion Capital Group*, 44 B.R. 690 (Bankr. S.D.N.Y. 1984)...........................9

*In re Lyondell Chem. Co.*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009)..........................16

*In re Magnus Harmonica Corp.*, 233 F.2d 803 (3d Cir. 1956)...............................9

*In re Metal Ctr., Inc.*, 31 B.R. 458 (Bankr. D. Conn. 1983)...........................8, 18

*In re Monroe Well Serv., Inc.*, 67 B.R. 746 (Bankr. E.D. Pa. 1986)......................16

*In re Remington Dev. Group, Inc.*, 180 B.R. 365 (Bankr. D.R.I. 1995)..................10

*In re Richard B. Vance & Co.*, 289 B.R. 692 (Bankr. C.D. Ill. 2003).....................5

*In re Sudbury, Inc.*, 140 B.R. 461 (Bankr. N.D. Ohio 1992)................................9

*In re United Health Care Org.*, 210 B.R. 228 (S.D.N.Y. 1997), *appeal dismissed*,
147 F.3d 179 (2d Cir. 1998)................................................................6, 15, 16

*Lee v. RCN Corp.*, 2004 WL 2108577 (N.D. Ill., Sept. 20, 2004)...........................5

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)........................................12

*Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003).................................17

*Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena*,
10 B.R. 488, 491 (N.D. Ill. 1981).......................................................................8

*SMF Realty Co. v. Consolini*, 903 F. Supp. 656 (S.D.N.Y. 1995)...........................6

*Stanford v. Foamex L.P.*, 2009 WL 1033607 (E.D. Pa., April 15, 2009)............10, 12

*Things Remembered, Inc. v. Petrarca,*, 516 U.S. 124 (1995)................................12

*Trinity Indus., Inc. v. McKinnon Bridge Co.,*
77 S.W.3d 159 (Tenn. Ct. App. 2001)............................................................18

*Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.,*
945 F. Supp. 603 (S.D.N.Y. 1996)...................................................................6

*Wright v. Ga. R.R. & Banking Co.,* 216 U.S. 420 (1910)................................17, 18

11 U.S.C. § 105(a).........................................................................................6

11 U.S.C. § 362.............................................................................................6

FED. R. BANKR. P. 7001(7)...............................................................................6

2 COLLIER ON BANKRUPTCY ¶ 105.02[2]....................................................15, 16

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUTPCY JUDGE:

The Ad Hoc Committee of Asbestos Personal Injury Claimants (the "**Ad Hoc Committee**")[1] hereby files this objection to the Motion of Detroit Diesel Corporation for Order Extending and Enforcing the Stay Imposed Under 11 U.S.C. § 362(a) to Cover Certain Litigation Relating to Detroit Diesel Corporation, or Alternatively, Enjoining Such Litigation Pursuant to 11 U.S.C. § 105 (the "**Stay Motion**"), and shows this Court as follows:

## I.
## INTRODUCTION

Detroit Diesel Corp. ("**Detroit Diesel**") fails to establish any basis for its request that the Debtors' automatic stay be extended to enjoin 65 state court asbestos personal injury suits (the "**Asbestos Actions**") pending against Detroit Diesel—a non-debtor.

The automatic stay is a means to protect *debtors*, not a device to be misused by *non-debtors* to avoid liability or to jockey for advantage in litigation unrelated to the debtor or its bankruptcy proceedings. In the rare instances where courts have

---

[1] The Ad Hoc Committee of Asbestos Personal Injury Claimants is comprised of William J. Lewis a mesothelioma claimant with a settled but unpaid claim, represented by SimmonsCooper LLC; Maureen Tavaglione, Personal Representative of the Estate of Robert J. Tavaglione, represented by Waters & Kraus; Terry Roth, a lung cancer claimant, represented by Brayton Purcell LLP; Jene Moore, Sr., a mesothelioma claimant represented by Early Ludwick & Sweeney L.L.C.; Edward Levitch, a mesothelioma claimant represented by Paul & Hanley LLP and Kenneth Knight, a mesothelioma claimant, represented by The Lanier Law Firm PLLC. Asbestos personal injury claimants represented by Cooney and Conway and Steven Kazan, Kazan, McClain, Lyons, Greenwood & Harley, PLC, serve as an *ex officio members*.

used their equitable powers to extend the protections of the automatic stay to enjoin actions against non-debtors, they have done so only in "unusual circumstances", or where the actions to be stayed would have an immediate adverse effect on the debtor's reorganization efforts.  Detroit Diesel provides no credible evidence showing unusual circumstances or how the continuation of the Asbestos Actions could have the requisite immediate adverse effect on the liquidating Debtors or the Debtors' estate that would warrant an extension of the stay.  Instead, Detroit Diesel halfheartedly asserts three grounds for enjoining the Asbestos Actions, all of which are ill-conceived and some of which have been expressly rejected by courts in this Circuit.

First, Detroit Diesel contends that the Asbestos Actions should be stayed because the Debtors have agreed to indemnify it with respect to the Asbestos Actions.  However, the existence of an indemnification agreement may constitute grounds for an extension of the automatic stay only when the debtor's obligation to indemnify is *absolute and automatic*.  Here, the December 31, 1987, Indemnification Agreement upon which Detroit Diesel relies (the "**Indemnification Agreement**") contains a number of conditions to indemnification that must occur before the Debtors' obligation to indemnify ever arises.  Furthermore, even Detroit Diesel admits that "GM Legal Staff informed DD by e-mail that it no longer believes that it is required to honor the terms of the parties' indemnity and defense agreements."[2]

---

[2] Stay Motion at p. 4.

Second, Detroit Diesel alleges that it may recover under the Debtors'
insurance policies should it receive an adverse judgment in the Asbestos Actions.
However, Detroit Diesel has failed to provide any evidence that it would be entitled
to collect under the Debtors' insurance policies, let alone have a claim under those
policies.  It has not even identified what policies under which it proposes to collect
or the details of the alleged policies.  Furthermore, the mere possibility that a non-
debtor defendant in litigation may make a claim on the debtor's insurance on the
basis of a purported indemnity obligation of the debtor has been expressly rejected
by courts as a ground for extension of the automatic stay.

Third, Detroit Diesel erroneously asserts that a stay is warranted because a
judgment in the Asbestos Actions may have collateral estoppel consequences for the
Debtors.  However, the Second Circuit has already concluded that the mere
potential for an offensive use of collateral estoppel is not sufficient to extend the
automatic stay to non-debtors.  Moreover, Detroit Diesel has not made any showing
that the laws of the states in which the Asbestos Actions are pending even allow for
the use of collateral estoppel offensively where a debtor is not a party to the original
litigation, whether because of the stay, or otherwise.  Indeed, at least one
bankruptcy court has held that collateral estoppel cannot be used against a debtor
where the debtor was absent from the original litigation because of the automatic
stay.

The Motion fails for other reasons, as well.  Many courts have held that only
a debtor may request extension of the automatic stay, because it is the debtor's

interests—not those of the nondebtor co-defendants—that are intended to be protected by an extension of the stay.  Here, the Debtors have so far not sought an extension of the stay to enjoin the Asbestos Actions as to Detroit Diesel, a fact that speaks volumes as to any concern that the Asbestos Actions may hypothetically affect the Debtors or their bankruptcy.  Even if the Debtors had requested that the stay extend to actions against Detroit Diesel, this Court could not grant such relief based on the arguments and evidence provided here.

Lastly, Detroit Diesel has failed to properly bring this matter before the Court.  An extension of the automatic stay constitutes a request for injunctive relief that requires the commencement of an adversary proceeding in which the party requesting the relief must make an evidentiary showing that an extension of the stay is warranted.  Yet, Detroit Diesel cavalierly requests the relief in the form of a contested matter, and its evidence fails to meet its burden,

Under these circumstances, Detroit Diesel's ill-conceived request for extension of the automatic stay to enjoin the Asbestos Actions must be denied.

## II.
## ARGUMENT AND AUTHORITIES

**A.    Detroit Diesel is the wrong party to seek extension of the Debtors' automatic stay, and this contested matter is the wrong vehicle through which to seek it.**

As a preliminary matter, this Court should not entertain self-serving requests from non-debtors such as Detroit Diesel for the extension of a debtor's automatic stay.  While no court in this district has expressly held that debtors alone have standing to seek extension of the stay (perhaps in consequence of the issue

never having been brought before the courts), other courts have held that a request to extend the automatic stay must be filed **by the debtor**. *See Hamilton v. Am. Corrective Counseling Servs., Inc.*, 2009 WL 973447 at *3 (N.D. Ind., April 8, 2009) ("[t]he weight of authority, however, holds that a request to extend a § 362 stay must be filed in the court where the bankruptcy action pends, and further, that the request is to be filed by the debtor); *Lee v. RCN Corp.*, 2004 WL 2108577 at *1 (N.D. Ill., Sept. 20, 2004) (citing *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003)); *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1015 (N.D. Iowa 2001).

This matter provides a textbook example as to why an extension of the automatic stay should be relief reserved solely for the debtor. Only by limiting those parties who may request an extension of the stay may courts avoid abuse by non-debtors such as Detroit Diesel who seek to use the debtor's bankruptcy as litigation leverage in a state court. As one court has reasoned, "'the request should be filed by the debtor because it is the debtor's interests, not those of the nondebtor co-defendants, that are intended to be protected by an extension of the stay.'" *See Hamilton v. Am. Corrective Counseling Servs., Inc.*, 2009 WL 973447 at *3 (quoting *Lee v. RCN Corp.*, 2004 WL 2108577 at *1).

Even if this Court were to allow Detroit Diesel to request an extension of the Debtors' automatic stay, Detroit Diesel must do so through the commencement of an adversary proceeding, not through a contested matter. The plain language of Bankruptcy Code, section 362 limits the application of an automatic stay to a

"proceeding against the debtor." 11 U.S.C. § 362; *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996). When bankruptcy courts act to extend the automatic stay to a non-debtor, they do so by means of their authority under Bankruptcy Code, section 105(a).[3] *SMF Realty Co. v. Consolini*, 903 F.Supp. 656, 662 (S.D.N.Y. 1995). "A request by a debtor for an injunction under section 105(a) pending confirmation of the debtor's plans for reorganization is regarded as a request for a preliminary injunction." *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc.*, 2006 WL 3755175 at *4 (S.D.N.Y., Dec. 20, 2006) (citing *In re United Health Care Org.*, 210 B.R. 228, 233-35 (S.D.N.Y. 1997), *appeal dismissed*, 147 F.3d 179 (2d Cir. 1998) and *In re Johns-Manville Corp.* 26 B.R. 405 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984)). Federal Rule of Bankruptcy Procedure 7001(7) provides that "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding and must be commenced as such. FED. R. BANKR. P. 7001(7). "The issuance of a preliminary injunction requires notice, an evidentiary hearing and more extensive review of the underlying merits of the case." *In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994), *appeal dismissed*, 182 B.R. 379 (S.D.N.Y. 1995).

Here, Detroit Diesel erroneously asks this Court for injunctive relief in this contested matter, improperly seeking to deprive the plaintiffs in the Asbestos Actions of their right to conduct discovery and an evidentiary hearing. *See In re*

---

[3]   Section 105 gives the court equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

6

*Adelphia Commc'ns Corp.*, 302 B.R. 439, 442 (Bankr. S.D.N.Y. 2003), *on remand from* 298 B.R. 49 (S.D.N.Y. 2003) (recognizing that a request for an extension of the automatic stay under Bankruptcy Code, section 105(a) requires commencement of an adversary proceeding).  Because Detroit Diesel is the wrong party to seek an extension of the Debtors' automatic stay and because it has improperly sought injunctive relief in this contested matter rather than commencing an adversary proceeding, this Court should deny the Stay Motion.

**B.    Detroit Diesel has failed to establish the kind of "unusual circumstances" that would warrant an extension of the automatic stay.**

  *1.    An extension of the automatic stay constitutes extraordinary relief that is only appropriate where the debtor has an absolute and automatic obligation to indemnify a non-debtor or where the liability of the non-debtor will be imputed to the debtor as a matter of law.*

A bankruptcy court's equitable powers to extend the automatic stay under section 105(a) are not limitless.  As the Second Circuit has recognized:

> This Court has long recognized that Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code. It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.

*In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (internal citations and quotations omitted).

Because of this limitation on bankruptcy courts' equitable powers, an extension of Section 362 is only appropriate under ***"unusual circumstances."***[4]  *A.H.*

---

[4]    The fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy is not sufficient to stay proceedings against a non-bankrupt party. *A.H. Robins*

*Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876

(1986).  In *A.H. Robins*—a case cited by courts in this district on the issue of

extension of Section 362 protection to non-debtors—the Fourth Circuit held that

"unusual circumstances" only exist where "there is such identity between the debtor

and the third-party defendant that the debtor may be said to be the real party

defendant and that a judgment against the third-party defendant will in effect be a

judgment or finding against the debtor."  *Id.*  Put another way, application of the

automatic stay to actions pending against non-debtors is only appropriate where "a

debtor and a non-debtor are so bound by statute or contract that the liability of the

nondebtor is imputed to the debtor by operation of law" such that "the

Congressional intent to provide relief to debtors would be frustrated by permitting

indirectly what is expressly prohibited in the Code."  *In re Metal Ctr., Inc.*, 31 B.R.

458, 462 (Bankr. D. Conn. 1983).  This nexus between the debtor (or its estate) and

the litigation to be stayed must exist for a bankruptcy court to have subject matter

jurisdiction to enjoin a non-debtor action—since a bankruptcy court's *in rem*

jurisdiction only extends as far as the debtor and its bankruptcy estate.  *See Cent.*

*Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006).

---

*Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (quoting in part, *In re Johns-Manville Corp.*, 26 B.R. 405, 410 (S.D.N.Y. 1983) and *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena*, 10 B.R. 488, 491 (N.D. Ill. 1981)) in recognizing that "'there are cases [under section 362(a)(1) ] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants'" but . . . in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be 'unusual circumstances' and certainly '[s]omething more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties'").

The requisite "identity between the debtor and a non-debtor defendant" only arises where there is an ***absolute and automatic*** right to indemnity[5] or where the liability of the non-debtor is ***imputed*** to the debtor by operation of law.  *See, e.g., A.H. Robins Co. Inc.*, 788 F.2d at 999-1000; *In re Am. Film Techs., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994).  In practice, the vast majority of courts that have extended the automatic stay to claims against non-debtors have only done so where the non-debtor has either been an officer or director of the debtor and any finding of liability against the officer or director would automatically be imputed to the debtor as a matter of law, or the debtor was obliged to indemnify the non-debtor by operation of law or by virtue of an absolute contractual obligation.  *See, e.g., In re Am. Film Techs., Inc.*, 175 B.R. at 855 (extending stay where liability of officers and directors imputed to debtor); *In re Sudbury, Inc.*, 140 B.R. 461 (Bankr. N.D. Ohio 1992) (extending stay to non-debtor officers and directors where actions against such individuals would implicate the debtor).

As shown below, Detroit Diesel fails to establish that it has an absolute and automatic right to indemnity from the Debtors or that its liability will be imputed to the Debtors as a matter of law.  When the stay does not apply automatically, the

---

[5]    For example, this Court has stated:

> That the action sought to be stayed may result in the defendants to that action having a claim over against the debtor is of no moment.  The mere incidence of such "indirect repercussions in matters involved in bankruptcy proceedings" is insufficient justification for the bankruptcy court to stay litigation against the debtor's principal.

*In re Lion Capital Group*, 44 B.R. 690, 702 (Bankr. S.D.N.Y. 1984) (*quoting in part In re Magnus Harmonica Corp.*, 233 F.2d 803, 804 (3d Cir. 1956)).

movant bears the burden of demonstrating that circumstances warrant extending

the stay. *In re Adelphia Commc's Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003), *remanded

to* 302 B.R. 439 (Bankr. S.D.N.Y. 2003).  Where, as here, a movant merely hints

at—but does not discuss or provide support for—its grounds for a stay, it is wholly

improper for a court to grant such relief "on this undeveloped basis."  *See Stanford

v. Foamex, L.P.*, 2009 WL 1033607, at *3, n.10 (E.D. Pa., April 15, 2009).

> 2.    *Detroit Diesel does not have an absolute right to indemnity from the
> Debtors.*

Not every potential indemnification claim against the debtor will constitute

the requisite unusual circumstances.  *In re Remington Dev. Group, Inc.*, 180 B.R.

365, 369 (Bankr. D.R.I. 1995).  The impact of the indemnity agreement on the

Debtors' estate would have to be direct, without the need for intervening

adjudication or joinder of issues necessary for judgment against the non-debtor to

affect the Debtors' estate.  *See In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 307

(Bankr. D. Del. 2002), *mandamus denied*, 300 F.3d 368 (3d Cir. 2002), *cert. denied*,

537 U.S. 1148 (2003); *Cent. Me. Rest. Supply v. Omni Hotels Mgmt. Corp.*, 73 B.R.

1018, 1023 (D. Me. 1987).

Here, the indemnity agreement upon which Detroit Diesel relies, and which

is attached to its Motion, expressly provides that the Debtors' indemnity obligations

are conditional.  Section III of the agreement (entitled "Conditions of

Indemnification") provides that "[t]he obligations and liabilities of either party to

indemnify the other hereunder with respect to Claims relating to third parties shall

be subject to the following terms and conditions" (Indemnification Agreement at p.

4, § III).  The agreement then lists a number of conditions to indemnification

(Indemnification Agreement at p. 4-5, § III).  Detroit Diesel has not shown that

these conditions have been satisfied.

Furthermore, in the Motion, Detroit Diesel avers that "the GM Legal Staff

informed DD by e-mail that it no longer believes that it is required to honor the

terms of the parties' indemnity and defense agreements" (Stay Motion at p. 4).

Thus, Detroit Diesel does not have an absolute right to indemnity from the

Debtors.  The mere possibility that a subsequent suit for indemnification might

ensue here is simply not sufficient to extend the stay.  As one Court has noted:

> Courts have generally extended the automatic stay in the
> "unusual situation" where an action against one party is
> essentially an action against the bankruptcy debtor, as in the
> case where a third-party is ***entitled*** to indemnification by the
> debtor for any judgment taken against it.

*Fleet Bus. Credit, L.L.C. v. Wings Restaurants, Inc.*, 291 B.R. 550, 553 (N.D. Okla.

2003) (emphasis added).  For example, in *Central Maine Rest. Supply v. Omni*

*Hotels Management. Corp.*, the court refused to enjoin a third-party, non-debtor

action—despite the existence of an indemnity agreement between the debtor and

the third-party, nondebtor defendant—because "even with the indemnification

provision, however, [the non-debtor] would apparently still have to file a claim

against [the debtor]" because "the indemnification provision [was] subject to a

number of conditions that rendered [the debtor's] right to indemnification

uncertain."  *Cent. Me. Rest. Supply v. Omni Hotels Mgmt. Corp.,* 73 B.R. at 1023-

24.

11

Similarly, in *Pacor, Inc. v. Higgins*, the Third Circuit found that a bare claim of common-law indemnity was not enough, stating that "at best it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville" in which the debtor would be free to re-litigate any issue necessary to the prior judgment. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984) (overruled on other grounds by *Things Remembered, Inc. v. Petrarca,*, 516 U.S. 124 (1995)).

Also, in *Stanford v. Foamex*, the district court for the Eastern District of Pennsylvania refused to extend the stay where the debtor purportedly had indemnification obligations, but such obligations were not absolute. The *Stanford* court reasoned as follows:

> Even assuming that [the debtor] is the real party in interest, [the debtor's] indemnification obligations do not appear absolute, as required by courts extending the stay due to the existence of indemnification agreements. Here, both indemnification agreements at issue contain provisions that limit [the debtor's] obligation to indemnify. As plaintiff's claims center on defendants' alleged breaches of fiduciary duties, [the debtor's] indemnification obligations may not be absolute.

*Stanford v. Foamex L.P.*, 2009 WL 1033607 at *2, n.9 (internal citations omitted) (also stating at n.10 "because the indemnification agreements in this case contain liability carve-out provisions, the scope of [the debtor's] indemnification obligations does not appear absolute").

Thus, Detroit Diesel's assertion that the automatic stay should be extended to stay the Asbestos Actions merely because it is hypothetically possible that Detroit Diesel might successfully litigate a subsequent indemnification action against the Debtors is simply wrong and will not support the relief requested.

3. *Detroit Diesel's assertion that it may conceivably collect under unidentified insurance policies is a red herring and should be disregarded by the Court.*

The mere possibility that Detroit Diesel could conceivably recover from the Debtors' insurance is insufficient grounds for an extension of the automatic stay. No cognizable equitable and legal interest in the proceeds of insurance arises until a claim is made on the insurance proceeds. *In re Adelphia Commc's Corp.*, 298 B.R. at 53. In *Adelphia*, the district court held that a stay was improper when based on the mere possibility that a non-debtor defendant in litigation may make a claim on the debtor's insurance on the basis of a purported indemnity obligation of the debtor. In doing so, the district court stated:

> "[i]t has not been suggested that any of the Debtors has made any payments for which it would be entitled to indemnification coverage, or that any such payments are now contemplated." Furthermore, "none of the Debtors have made or committed themselves to payments using their entity coverage." Claiming the debtors now have a property interest in those proceeds makes no sense at this juncture. Such argument would be akin to a car owner with collision coverage claiming he has the right to proceeds from his policy simply because there is a prospective possibility that his car will collide with another tomorrow, or a living person having a death benefit policy, and claiming his beneficiaries have a property interest in the proceeds even though he remains alive. No cognizable equitable and legal interest in the proceeds from the D&O policies has arisen here.

*Id.* (internal citations omitted).

Detroit Diesel's reliance on *General Motors Corp. v. Royal & Sun Alliance Insurance Group, PLC,* is misplaced. *General Motors* involved a coverage dispute among General Motors and certain of its insurers where General Motors sought to have the insurers defend and indemnify it against asbestos suits under policies with

13

the insurers from 1954 to 1971. The insurers alleged that a change in the type of insurance policy coverage in 1972 altered the insurers' obligations, and the coverage was no longer available for the period 1954-1971. The *General Motors* court held that the insurers had a duty to undertake the defense of ***General Motors*** until they could confine the claim to a recovery that the policy did not cover. *Gen. Motors Corp. v. Royal & Sun Alliance Ins. Group, PLC,* 2007 WL 1206830 at *3 (Mich. App., April 24, 2007), *appeal dismissed,* 753 N.W.2d 259 (Mich. 2008).

Nowhere does the *General Motors* court state that General Motors' insurers must undertake the defense of the Asbestos Actions—or any asbestos suits—against Detroit Diesel. Nowhere does Detroit Diesel show that it is an insured under the policies at issue in *General Motors.* Nor does Detroit Diesel even identify the insurance policies under which it alleges it has a right to a defense or indemnity. Detroit Diesel does not even state the policy years that would be invoked if it *did* have a right to defense or indemnity under General Motors' insurance policies. Detroit Diesel merely speaks in generalities and improbable hypotheticals. Conjecture and surmise are not grounds for the extraordinary relief of enjoining third-party, non-debtor state court litigation.

The mere threat to an insurance policy does not implicate the automatic stay. *In re Granite Partners, L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996). This Court has already held, when presented with a similar argument to the one made here by Detroit Diesel, that "[w]e are not convinced that an action by a third party to recover a judgment against another third party, whose liability may be covered

14

under an insurance policy that also grants the debtor separate rights, implicates

the automatic stay." *Id.* at 337-38.  As this Court reasoned in *Granite Partners*:

> It is true that here, as in *Manville*, the claims asserted against the [non-debtors] are the same as the claims asserted in the proofs of claim filed by the [plaintiffs].  Yet the [non-debtors] would be individually liable for any fraud that they committed.  In addition, the prosecution of these claims will doubtless increase [the debtor's] uninsured indemnification obligation.  Yet that will be true in almost every instance in which creditors of a debtor corporation sue its officers and directors who were prescient enough to purchase this common type of insurance.  Directors and officers contemplating a corporate bankruptcy could insulate themselves from most post-bankruptcy lawsuits—if they had not already done so—simply by purchasing the precise type of insurance designed to protect them in the event of such a lawsuit.  This is not the kind of "insurance" the policy is designed to afford.

*Id.* at 338.

## C.  Detroit Diesel has not alleged facts sufficient for the preliminary injunction that it seeks under 11 U.S.C. § 105.

The determination of whether an injunction should issue in bankruptcy to

enjoin non-debtor actions calls into play the traditional preliminary injunction

standard as modified to fit the bankruptcy context.  Courts in this district have

adopted the standard as articulated in Collier on Bankruptcy.  *In re United Health

Care*, 210 B.R. at 233; *Haw. Structural Ironworkers Pension Trust Fund v. Calpine

Corp.*, 2006 WL 3755175 at *4.  Collier states the standard as follows:

> *The first requirement is that there exist a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize.* Second, there must be a reasonable likelihood of a successful reorganization.  Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained.  Fourth, the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with competing societal interests.

15

2 COLLIER ON BANKRUPTCY ¶ 105.02[2] at 105-113 (15th ed. 2005) (emphasis added)

(quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752-53 (Bankr. E.D. Pa. 1986)).

The District Court for this district has recognized the above test as "an

evolution of the general requirements for a preliminary injunction, adapted for the

bankruptcy context." *In re United Health Care Org.*, 210 B.R. at 233 (citing 2

COLLIER ON BANKRUPTCY ¶ 105.02[2] at 105-113).

> 1.    *Detroit Diesel has not, and cannot, show that continuation of the Asbestos Actions produces a danger of imminent irreparable harm to the Debtors.*

Detroit Diesel mistakenly asserts that it need not show irreparable harm in

order to obtain the relief it seeks.[6]  However, the only exception to the requirement

that irreparable harm be shown, exists "where the action to be enjoined is one that

threatens the reorganization process or which would impair the court's jurisdiction

with respect to the case before it." *In re Lyondell Chemical Co.*, 402 B.R. 571, 590

(Bankr. S.D.N.Y. 2009); *Haw. Structural Ironworkers Pension Trust Fund v.*

*Calpine Corp.*, 2006 WL 3755175 at * 4 (*quoting, in part, Alert Holdings, Inc. v.*

*Interstate Prot. Servs., Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992)).  Even under

this narrow exception, the threat to the reorganization process must be "imminent,

substantial and irreparable." *Haw. Structural Ironworkers Pension Trust Fund v.*

*Calpine Corp.*, 2006 WL 3755175 at * 4.  Detroit Diesel does not assert that the

---

[6]    Notably, the cases upon which Detroit Diesel relies are all cases in which the liability of the non-debtors would be imputed to the debtor by operation of law. Detroit Diesel has provided no authority indicating that successful prosecution of the Asbestos Action against Detroit Diesel would lead to such an imputation of liability to Debtors.

Asbestos Actions impair this Court's jurisdiction, and it has made no showing that the continuation of the Asbestos Actions threatens the Debtors' reorganization process. Indeed, the Debtors are not attempting to reorganize into operating entities at all, but are instead using their Chapter 11 bankruptcy as a means to effectuate the orderly liquidation of assets—almost all of which have already been liquidated. Notably, the fact that the Debtors are not seeking a stay of the Asbestos Actions against Detroit Diesel speaks volumes on the issue.

The only effort Detroit Diesel makes in this regard is to suggest, without and substantiation, that the Debtors may be bound by collateral estoppel to the findings and conclusions rendered by state courts in the Asbestos Actions, even going so far as to assert that "[t]his, by itself, justifies application of the automatic stay provision of Section 362(a)" (Stay Motion at p. 9). This argument is wholly unsupported in law. The Second Circuit has already concluded that the mere potential for an offensive use of collateral estoppel is not sufficient to enjoin suits among non-debtors. In doing so, the Second Circuit reasoned as follows:

> We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.

*Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003).

Furthermore, the collateral estoppel effect of a state court judgment against Detroit Diesel is determined by the law of the state in which the judgment is rendered. *Wright v. Ga. R.R. & Banking Co.*, 216 U.S. 420, 429 (1910) (opining that

"[t]his Court, as is well settled, accords to a judgment of a state only that effect given to it by the court of the State in which it was rendered").  Yet, Detroit Diesel does not identify the states in which the Asbestos Actions are pending, much less show that the law of those states would allow plaintiffs to use collateral estoppel offensively against the Debtors who are no longer parties to the actions.  Instead, Detroit Diesel merely alleges that "[t]here are approximately 65 civil suits pending in the state courts of twelve different states."  But, many states do not allow such use of the doctrine of collateral estoppels.  For instance, "[i]n Tennessee the offensive use of collateral estoppel requires that the parties be identical in both actions." *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 184-85 (Tenn. Ct. App. 2001); *Beaty v. McGraw*, 15 S.W.3d 819 (Tenn. Ct. App. 1998); *Algood v. Nashville Machine Co.*, 648 S.W.2d 260 (Tenn. Ct. App. 1983).  Detroit Diesel has not shown whether, under Tennessee state law for example, the plaintiffs in the Asbestos Actions would be allowed to assert a collateral estoppel argument in a subsequent action against the Debtors where—due to the automatic stay—the Debtors cannot be named as a defendant in the Asbestos Actions.[7]

Because Detroit Diesel has failed to show that the doctrine of collateral estoppel may be used by plaintiffs in the Asbestos Actions to bind the Debtors in any subsequent litigation, there is no indication that the Debtors' bankruptcy estate

---

[7]  At least one court has concluded that the automatic stay "must be read to protect [a debtor] and his estate from being drawn into litigation or from being bound by the results thereof." *In re Metal Ctr., Inc.*, 31 B.R. at 463. Based on this conclusion, the *Metal Center* court held that "the debtor would not be bound by any judgment [a plaintiff] might obtain against [a non-debtor] in state court, and consequently, [a non-debtor] is not protected by the automatic stay." *Id.*

is in any way endangered by the continuation of the Asbestos Actions against

Detroit Diesel.

> 2.      *Detroit Diesel has made no showing that there exists a reasonable likelihood of a successful reorganization by the Debtors, that the balance of relative harm as between the Debtors and the plaintiffs in the Asbestos Actions lies in favor of the Debtors, or that the public interest warrants an extension of the stay.*

Even if Detroit Diesel were excepted from showing that the Debtors would

suffer imminent irreparable harm by the continuation of the Asbestos Actions—

which it is not—such exception would not relieve Detroit Diesel of its obligation to

satisfy the remaining factors required to support an injunction under Section 105.

Yet, Detroit Diesel has not even attempted to show that (i) there exists a reasonable

likelihood of a successful reorganization by the Debtors, (ii) the balance of relative

harm as between the Debtors and the plaintiffs in the Asbestos Actions lies in favor

of the Debtors, or (iii) the public interest warrants an extension of the stay.  Indeed,

Detroit Diesel cannot make such a showing.

The Debtors would not suffer more harm if the Asbestos Action were to

continue than plaintiffs would suffer should the Asbestos Actions be enjoined.  The

continuation of the Asbestos Actions against Detroit Diesel has not been shown to

impede the Debtors' ability to continue their liquidation efforts in any way.  Should

Detroit Diesel have a judgment entered against it for which it believes the Debtors

or their insurers are obligated to indemnify it, Detroit Diesel may assert its claims

in the Debtors bankruptcy.  The Debtors may then address Detroit Diesel's claims

as part of the ongoing claims resolution process.  On the other hand, the plaintiffs in

the Asbestos Actions are suffering from asbestos related illnesses, in some cases fatal illnesses. Any stay of the Asbestos Actions may effectively deprive these claimants of their day in court.

Further, public interest weighs in favor of allowing the Asbestos Actions to proceed absent any indication by the Debtors that the continuation of the actions would in any way affect the Debtors' liquidation efforts.

## IV.
## CONCLUSION

WHEREFORE the Ad Hoc Committee for Asbestos Personal Injury Claimants respectfully request that the Court enter an order (1) denying the relief requested in the Motion of Detroit Diesel Corporation for Order Extending and Enforcing the Stay Imposed Under 11 U.S.C. § 362(a) to Cover Certain Litigation Relating to Detroit Diesel Corporation, or Alternatively, Enjoining Such Litigation Pursuant to 11 U.S.C. § 105; (2) granting leave for the Asbestos Plaintiffs to prosecute their claims; and (3) granting the Ad Hoc Committee for Asbestos Personal Injury Claimants such other and further relief to which it may be entitled.

[Signature Page Follows]

Dated:  October 1, 2009                    Respectfully submitted,


                                           **STUTZMAN, BROMBERG, ESSERMAN &
                                           PLIFKA, A PROFESSIONAL CORPORATION**

                                           By: *Peter C. D'Apice*
                                                Peter C. D'Apice

                                           Sander L. Esserman (admitted *pro hac vice*)
                                           Peter C. D'Apice
                                           2323 Bryan Street, Suite 2200
                                           Dallas, Texas  75201
                                           (214) 969-4900

                                           **COUNSEL FOR THE AD HOC
                                           COMMITTEE OF ASBESTOS
                                           PERSONAL INJURY CLAIMANTS**