**Hearing Date and Time:  October 6, 2009, at 9:45 a.m. (prevailing Eastern Time)**
**Objection Deadline: October 1, 2009 at 4:00 p.m. (prevailing Eastern Time)**

Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:    (415) 543-4800
Facsimile:    (415) 972-6301
Email: kstrickland@rmkb.com
N. Kathleen Strickland, Esq. (*Pro Hac Vice Admission Granted*)

Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:    (212) 668-5927
Facsimile:    (212) 668-5929
Email:  gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------- x
                                      :    Chapter 11
                                      :
In re                                 :
                                      :    Case No. 09-50026(REG)
MOTORS LIQUIDATION COMPANY, et al.,   :
                                      :    (Jointly Administered)
          Debtors.                    :
                                      :
------------------------------------- x
```

**REPLY IN SUPPORT OF REMY INTERNATIONAL'S MOTION FOR AN ORDER EXTENDING AND ENFORCING THE STAY IMPOSED UNDER 11 U.S.C. § 362 (a) TO INCLUDE CERTAIN LITIGATION AGAINST REMY INTERNATIONAL, OR ALTERNATIVELY, ENJOINING SUCH LITIGATION PURSUANT TO 11 U.S.C. § 105**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

    A.    No Timely Opposition was Filed, and this Court
             Should Disregard Untimely Oppositions ................................ 2

    B.    This Court Has Jurisdiction Over Remy's Motion
             For Stay ................................................................................. 3

             1.  Remy's Motion is a Core Proceeding ................................. 3

             2.  Mandatory Abstention Has No Application to
                 Remy's Motion ................................................................. 3

    C.    Remy's Right to Absolute Indemnity from Debtor
             GM Constitute the Unusual Circumstances
             Warranting Application of the Automatic Stay ...................... 4

             1.  There is No Dispute as to the Standard
                 Applicable to Remy's Motion ........................................... 4

             2.  Remy Has An Absolute Right to Indemnity from
                 Debtor GM ........................................................................ 6

             3.  Remy Potential Claims Against Debtor GM's
                 Insurance Policies Warrant Application of the Stay ......... 10

    D.    Issuance of a Stay Under Section 105 is Warranted ............. 12

    E.    Remy International, Inc. Has Standing to Seek
             Application of the Debtors' Automatic Stay ........................ 17

CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.H. Robins Co. v. Piccinin*, 788 F.2d 944 (4th Cir. 1986)........................ 1,2, 4, 5, 15, 17

*AP Industrial Inc. v. SN Phelps & Co.*, 117 B.R. 789 (Bankr. S.D.N.Y. 1990) .............. 12

*Alert Holdings, Inc. v. Interstate Protective Services,* 148 B.R. 194 (Bankr. S.D.N.Y. 1992) ................................................................................................ 12

*C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002 (N.D. Iowa 2001)........ 17

*C&J Clark America, Inc. v. Carol Ruth, Inc.*, 92 B.R. 87 (Bankr. S.D.N.Y. 1988)......... 13

*Central Maine Restaurant Supply v. Omni Hotels Management Corp.*, 73 B.R. 1018 (D. Me. 1987).............................................................................................. 6-7

*Crysen/Montenay Energy Co. v. Esselen Associates, Inc.*, 902 F.2d 1098 (2d Cir. 1990)................................................................................................................ 5

*Dennis v. A.H. Robins Co., Inc.*, 860 F.2d 871 (8th Cir. 1988)........................................ 5

*Fleet Business Credit, L.L.C. v. Wings Restaurants, Inc.*, 291 B.R. 550 (N.D. Okla. 2003) ........................................................................................................ 7, 8, 15

*Garoutte v. Damax, Inc., ,* 400 B.R. 208 (Bankr. S.D. Ind. 2008) .................................. 13

*Garrity v. Leffler*, 71 B.R. 567 (S.D.N.Y. 1987)............................................................ 12

*In re Adelphia Communications Corp.*, 298 B.R. 49 (Bankr. S.D.N.Y. 2003)................ 10

*In re Adelphia Communications Corp.*, 302 B.R. 439, 446-447 (Bankr. S.D.N.Y. 2003) .............................................................................................................. 12

*In re Family Health Services, Inc.*, 105 B.R. 937, 942-943 (Bankr. C. D. Cal. 1989) .............................................................................................................. 5

*In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (Bankr. D. Del. 2002)........................... 7

*In re: Granite Partners, L.P.*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996)....................... 10-11

*In re Metal*, 31 B.R. 458 (Bankr. D.Conn. 1983)................................................ 15, 16, 17

*In re National Staffing Services, LLC*, 338 B.R. 35 (Bankr. N.D. Ohio 2005)................. 3

*Johns-Manville Corp. v. Colorado Insurance Guaranty Association*, 91 B.R. 225 (Bankr. S.D.N.Y. 1988)........................................................................................... 12

*Johns-Manville v. Asbestos Litigation Group*, 26 B.R. 420 (Bankr. S.D.N.Y. 1983) ................................................................................................... 11

*Keene Corp. v. Acstar Insurance Co.*, 168 B.R. 285 (Bankr. S.D.N.Y. 1994) ............... 12

*Kommanditselskab Supertrans v O.C.C. Shipping, Inc.*, 79 B.R. 534 (S.D.N.Y. 1987) ................................................................................................... 18

*LTV Steel Co. v. Board of Education*, 93 B.R. 26 (S.D.N.Y. 1988) ............................... 12

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) ...................... 5, 11

*Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 2004 U.S. Dist. LEXIS 5049 (S.D.N.Y. 2004) ................................................................................................... 14

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (S.D.N.Y. 2003) ................................................... 7

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) .................................................... 13

*Queenie, Ltd. v. Nygard International*, 321 F.3d 282 (2d Cir. 2003) ......................... 5, 14

*Richards v. Public Serv. Co.*, 848 F. Supp. 318 (D. R.I. 1994) ........................... 13, 16, 18

*Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123 (Bankr. D. Mass. 1984) ................. 5

*Stanford v. Foamex L.P.*, 2009 U.S. Dist. LEXIS 32405 (E.D. PA. April 15, 2009) ................................................................................................... 8-9

*Taylor v. Sturgell*, 128 S. Ct. 2161 (2008) .................................................................... 14

## STATE CASES

*Congregation of the Passion v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503, 201 Ill. Dec. 71 (Ill.), *cert. denied*, 130 L. Ed. 2d 312, 115 S. Ct. 358 (1994) ................................................................................................... 18, 19

*General Motors Corporation v. Royal & Sun Alliance Insurance Group, PLC, et al.*, 2007 WL 1206830 ................................................................................................... 13

RC1/5394579.7/KNS

**FEDERAL STATUTES**

11 U.S.C. § 105...................................................................................................... 4

11 U.S.C. § 362...................................................................................................... 3

28 U.S.C. § 1334(c)(2)........................................................................................ 6-7

28 U.S.C. § 157...................................................................................................... 6

RC1/5394579.7/KNS

## I.    __INTRODUCTION__

Through its motion, Remy International, Inc. ("Remy") seeks extension of the automatic

stay, pursuant to 11 U.S.C. § 362, to a handful of claims in various courts around the United

States, in which plaintiffs seek monetary damage from Remy for personal injury or wrongful

death based on exposure to General Motors Corporation ("GM") products or GM owned plants

or facilities.  In these cases pre-petition, GM is named as a defendant, as is Remy, which was a

division of GM until 1994. These cases are now stayed as to GM. Remy seeks to have that same

stay extended to Remy because Remy was named in these lawsuits because it was a division of

GM and these lawsuits are based on GM products or GM premises. GM is contractually

obligated to defend and indemnity Remy under the Asset Purchase Agreement By and Among

DR International, Inc., DRA, Inc. [Remy] and General Motors Corporation dated July 13, 1994

("APA"), and as such, the grant of absolute indemnity to Remy provides the legal basis for this

court to extend GM's stay to Remy in these five cases.  In the alternative, Remy's motion seeks a

preliminary injunction preventing further prosecution of those cases as against Remy pursuant to

11 U.S.C. § 105 in order to avoid prejudice to debtor GM's estate.  The basis for the motion is

again the APA pursuant to which debtor GM agreed to absolutely indemnify Remy for claims

based upon GM's products and GM premises.

Remy's motion should be granted for several reasons, not the least of which is that no

opposition to Remy's motion was timely filed.  While two oppositions were filed – both late –

those oppositions should be disregarded and struck from the Court's files because they were filed

late, contrary to this court's August 3, 2009 procedures governing the time for filing opposition

briefs.  Even if the Court were to consider the arguments made in the two late-filed oppositions,

Remy's motion nevertheless should be granted.  Remy's absolute right under the APA to

indemnity from debtor GM for defense costs and any losses suffered in actions based on GM's

products constitute the specific "unusual circumstances" set forth in *A.H. Robins Co. v. Piccinin*, 788 F.2d 944 (4th Cir. 1986) which require application of the automatic stay to such actions against Remy.  Additionally, extension of the stay to Remy in these cases is necessary to protect the Debtors' estate both from collateral attack should any judgment be rendered against Remy in these cases or from any claim on the Debtors' liability insurance policies. Because this Court undeniably has jurisdiction to issue an order applying the automatic stay to such actions, there are no grounds warranting denial of Remy's motion.

## II.    ARGUMENT

### A.    No Timely Opposition was Filed, and this Court Should Disregard Untimely Oppositions

On September 16, 2009 Remy filed a notice of hearing, memorandum of points and authorities and proposed order extending the stay to certain litigation relating to Remy or alternatively, enjoining such litigation against Remy. In the notice of motion, it clearly stated that any opposition to the motion had to be filed by 4 p.m. on October 1, 2009 (the "Objection Deadline").  The filing deadline was also affixed in bold print on the upper right hand corner of all papers filed.  This notice was served on the parties listed in the master service list as well as counsel for each of the  plaintiffs in the five cases in which Remy seeks application of the stay.

From September 16, 2009 until after the Objection Deadline, Remy International not only did not receive any objections to this motion, but also did not receive any word by email, phone call or otherwise evidencing or indicating any objection to the motion.  It was only after the Objection Deadline that an objection was filed by the Ad Hoc Committee of Asbestos Personal Injury Claimants (the "Committee").[1]  Because these objections were not timely filed, Remy

---

[1] On October 2, 2009 in the late afternoon, well past the opposition deadline, the Simmons Cancer Claimants filed an objection to Remy's motion by joining in the Committee's objection. It totally misconstrues Remy's position

requests that the objection be struck as untimely pursuant to this court's general orders, and that

the content of that objection be disregarded by this Court in ruling on Remy's motion.  Hence,

Remy's motion remains unopposed.[2]

### B.    This Court has Jurisdiction Over Remy's Motion for Stay[3]

#### 1.    Remy's Motion is a Core Proceeding

While the Committee does not raise such an argument, in opposition to DDC's motion

the Pichons argue that the Court lacks jurisdiction over a motion to stay because it is not a core

proceeding. The Pichons do not cite any authority for this claim other than the definition set forth

in 28 U.S.C. § 157, which does not resolve the issue.  However, case law makes clear that

"[p]ursuant to 28 U.S.C. § 157(b)(2)(A)/(G), a determination for the extension of the stay is a

'core proceeding' over which this Court has been conferred with the jurisdictional authority to

enter final orders and judgments."  (*In re Nat'l Staffing Servs., LLC*, 338 B.R. 35, 36 (Bankr.

N.D. Ohio 2005) (ruling on a debtor's motion "for the entry of an Order extending the stay of

proceedings against guarantors of Debtor's alleged obligations, Wade Kohn and Marjorie

Flores").)  Accordingly, it cannot be disputed that the motions filed by Remy and DDC are "core

proceedings" over which this Bankruptcy Court has jurisdiction.

#### 2.    Mandatory Abstention Has No Application to Remy's Motion

Misconstruing the nature of the relief sought by Remy and DDC, as well as the nature of

abstention, the Pichons also argue that this Court should abstain from deciding the DDC motion

---

filed in its motion to strike, and was filed by counsel who is not counsel for plaintiffs in any of the cases Remy seeks
to have stayed.  It is untimely, irrelevant and should be stuck, and not considered on the merits.

[2] It is important to note that the late filed objection by the Committee is filed as an objection to Remy, but was filed
initially as to Detroit Diesel Corporation ("DDC"), who did have a plaintiff object to their request to extend the stay,
that plaintiff being the Pichons. It was only after Pichons' timely objection that the Committee filed its opposition.
Remy submits that the Committee has no basis for filing any objection to Remy's motion because it is not counsel
for the individual plaintiffs in these cases. The Pichons have not sued Remy, and theirs is not one of the cases Remy
seeks to have stayed.
[3] While the Pichons are not plaintiffs in any action involving Remy and thus filed no response to Remy's motion,
Remy will nevertheless address two arguments made only by the Pichons.

for application of the stay.  The mandatory abstention doctrine is set forth in 28 U.S.C. § 1334(c)(2):

> Upon timely motion of a party in a *proceeding based upon a State law claim or State law cause of action*, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.  (*Id.*, emphasis added.)

Needless to say, the Pichons fail to cite a single case in which a Court has abstained from hearing a motion for application of the automatic stay to actions involving non-debtors.  Instead, the cases cited by the Pichons concern requests for abstention regarding lawsuits asserting state-law claims.  This is no surprise, because the very language of 28 U.S.C. § 1334(c)(2) indicates that abstention applies to "a proceeding based upon a State law claim or State law cause of action" over which the federal court may exercise subject matter jurisdiction but over which a state court could also exercise jurisdiction.  (*Id.*)  Conversely, a request for application of the automatic stay is a matter which uniquely involves federal bankruptcy law – not state law – and over which federal courts have *exclusive* jurisdiction.  Quite simply, the Pichons' request for abstention is misguided, inappropriate and should be rejected out of hand.

### C.    Remy's Right to Absolute Indemnity from Debtor GM Constitute the Unusual Circumstances Warranting Application of the Automatic Stay

#### 1.    There is No Dispute as to the Standard Applicable to Remy's Motion

The Committee makes a lengthy argument regarding the meaning and scope of the rule set forth in *A.H. Robins Co. v. Piccinin*, 788 F.2d 944 (4th Cir. 1986), which seemingly seeks to muddle the straightforward statement of that rule.  (*See*, Committee Opposition at pp. 7-10.)  Ultimately, the Committee must, and does, concede the argument underlying Remy's motion – that under certain "unusual circumstances" the automatic stay may apply to actions against non-

debtors.  (*A.H. Robins Co.*, *supra*, 788 F.2d at 999; *see*, Committee Opposition at pp. 7-8.)  The Pichons also acknowledge that unusual circumstances permit application of the automatic stay to non-debtors. Moreover, despite its disjointed statement of the *A.H. Robins, Co.* rule, the Committee must, and does, acknowledge that the "unusual circumstances" under which the automatic stay may be extended arise in "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute."  (*A.H. Robins Co.*, *supra*, 788 F.2d at 999; *see*, Committee Opposition at pp. 9-10.)  The Pichons also acknowledge absolute indemnity as one of the unusual circumstances permitting extension of the stay to non-debtors.

The only dispute regarding the *A.H. Robins, Co.* rule that is raised in the Committee's Opposition is its inference that the automatic stay applies only to lawsuits against the officers and directors of the debtor.  However, there are numerous cases in which a court has applied the automatic stay to lawsuits involving persons who are not employed by the debtor.  (*See*, *In re Family Health Services, Inc.*, 105 B.R. 937, 942-943 (Bankr. C. D. Cal. 1989) (stay extended to actions by healthcare providers against the members/enrollees of a debtor HMO); *Crysen/Montenay Energy Co. v. Esselen Associates, Inc.*, 902 F.2d 1098, 1101-1104 (2d Cir. 1990) (automatic stay extended to prevent an oil supplier from suing a buyer because the bankruptcy trustee for the broker on the sale had a pending adversary proceeding against the buyer regarding the oil); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92-93 (2d Cir. 1988) (holding that the bankruptcy court had authority to enjoin suits against the bankrupt's insurers); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123 (Bankr. D. Mass. 1984) (holding that a lawsuit against a guarantor of the debtor should be stayed); *Queenie, Ltd. v. Nygard Int'l*,

321 F.3d 282, 288 (2d Cir. 2003) (stay extended to the debtor's "wholly owned corporation");

and *Dennis v. A.H. Robins Co., Inc.*, 860 F.2d 871, 872 (8th Cir. 1988) (noting that the district

court applied the Section 362 automatic stay to a doctor who was a co-defendant with the debtor

in a personal injury action).)

All of the above cases demonstrate that the automatic stay may apply to actions against

non-debtors even if the non-debtors are not officers or directors of the debtor. Accordingly,

Remy's motion cannot be denied merely because Remy is not an officer or director of the debtor

GM.

## 2.     Remy has an Absolute Right to Indemnity from Debtor GM

Because it is undisputed that a non-debtor's right to absolute indemnity is grounds for

applying the automatic stay to actions involving that non-debtor, the issue here becomes whether

Remy is entitled to absolute indemnity from debtor GM. No party to this motion has commented

upon Remy's right to absolute indemnity from GM. It is unopposed, and a non-issue. The

Pichons had nothing to say on this issue because the Pichons are not parties to any lawsuit with

Remy. The Committee did not address Remy at all in their late filed opposition because it

merely incorporated by reference its opposition arguments as to the motion filed by DDC. In

other words, the Opposition to Remy's Motion merely incorporates the Committee's arguments

regarding the allegedly inadequate and contingent nature of DDC's indemnity rights, making no

statements whatsoever regarding Remy's indemnity rights under the APA. *To be clear, Remy's*

*right to absolute indemnity from GM is undisputed. Hence, the unusual circumstance permitting*

*application of the stay to Remy is present, undisputed, and thus the stay as to Remy must be*

*granted.*

Not only does the Committee fail to address the specific indemnity agreement between

Remy and debtor GM, but the cases it cites in opposing DDC's motion for stay do not support

their argument regarding application of the automatic stay to non-debtors. In fact, three of those

cases do not even involve a request for application of the automatic stay. For example, the

Committee relies upon *Central Maine Rest. Supply v. Omni Hotels Mgmt. Corp.*, 73 B.R. 1018

(D. Me. 1987) in arguing that the existence of an indemnity agreement is not grounds to apply

the automatic stay to an action against a non-debtor. However, that case has no relevance to

Remy's Motion.[4] The issue in *Central Maine* was whether an action between two non-debtors

could be referred to the bankruptcy court because of an indemnity obligation owed by the debtor

to one of the non-debtors. The Court denied the motion because the action between the non-

debtors was neither a core proceeding nor a "related" proceeding. (*Id.* at 1023-1024.) At most,

*Central Maine* stands for the proposition that a debtor's indemnity obligation does not give the

bankruptcy court subject matter jurisdiction to try an action involving two non-debtors. Here, on

the contrary, Remy does not ask the Court to try the asbestos actions that are the subject of

Remy's Motion. Remy merely seeks application of the automatic stay to those actions,

something this Court undeniably has jurisdiction to order.

Similarly, *In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (Bankr. D. Del. 2002) and

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (S.D.N.Y. 2003) involve the issue of whether a claim for

indemnity from the debtor, whether pursuant to an indemnity agreement or the common law,

provides the bankruptcy court with subject matter jurisdiction to try an action between two non-

debtors. (*See, In re Federal-Mogul Global, supra*, 282 B.R. at 312 (denying, for lack of subject

matter jurisdiction, motion to transfer to the bankruptcy court cases involving non-debtors who

claimed indemnity from the debtor under indemnity agreements); *Pacor, Inc. v. Higgins*, 743

F.2d 984 (3d Cir. 1984) (affirming remand of products liability action to state court on the

---

[4] The Committee misstates what was at issue in *Central Maine*, claiming that "the court refused to enjoin a third-party, non-debtor action" (Opposition at p. 11), but that case did not involve a request for injunction. To the contrary, neither "enjoin" nor "injunction" are even mentioned in the text of *Central Maine*.

RC1/5394579.7/KNS

ground that a claim for indemnification against a debtor does not provide to the bankruptcy court subject matter jurisdiction over the product liability action).)

The Committee also cites *Fleet Bus. Credit, L.L.C. v. Wings Restaurants, Inc.*, 291 B.R. 550 (N.D. Okla. 2003), which does, in fact, involve a request for application of the automatic stay to a non-debtor. However, the Committee exaggerates the relevance of that case, adding bold and italics to the word "entitled" in a quote from that case: "Courts have . . . extended the automatic stay . . . in the case where a third party is ***entitled*** to indemnification." (Committee Opposition at p. 11.) Through its added emphasis on the word "entitled," the Committee implies that *Fleet* applied a demanding interpretation of the "absolute" right to indemnity required for application of the automatic stay to an action against a non-debtor.

However, in *Fleet* the Court never even reached the issue of what constitutes an "absolute" right to indemnity. Instead, the *Fleet* Court rejected the non-debtor's request for application of the stay because the non-debtor had expressly waived any right to indemnity from the debtor. "[T]he right of indemnification between [non-debtor] and [debtor] is expressly waived under Section 9.11(e) of the Agreement." (*Fleet, supra*, 291 B.R. at 554.) Here, Remy is entitled to indemnification under the APA as Remy certainly did not waive any indemnity agreement, but is instead asserting its absolute right to indemnity as the basis for this Court's extension of the stay to Remy. Given the actual matters at issue in *Fleet*, it is incredible that the Committee would argue *Fleet* to support a claim that any indemnity agreement – let alone the Remy indemnity agreement which is never addressed in the Opposition – does not provide for "absolute" indemnity. The emphasized language in *Fleet* the Committee uses disputes their own argument, and concedes that an absolute right to indemnification is a basis for extension of the automatic stay.

RC1/5394579.7/KNS

The only case cited by the Committee which involved analysis of an actual indemnity agreement is *Stanford v. Foamex L.P.*, 2009 U.S. Dist. LEXIS 32405 (E.D. PA. April 15, 2009), an unpublished case from the Eastern District of Pennsylvania. But in that case, the "indemnification agreements at issue contain[ed] provisions that limit [the debtor's] obligation to indemnify." (*Id.* at 13, n.9.) One of the indemnity agreements stated that the debtor was "not liable for losses [non-debtor] sustains "arising from [non-debtor's] negligence, breach of fiduciary duty, breach of [the Trust Agreement], or bad faith,'" and the other agreement stated that the debtor "need not indemnify the Committee members if '[their] action or inaction is finally determined by a court, and all time for appeal has lapsed, to be a breach of the standard of conduct expressed in [section 12.5]')." (*Id.* at 13-14, n.9.) Under these facts, the Court found that the debtor's "indemnification obligations may not be absolute." (*Id.* at 14, n.9.)

In stark contrast to the indemnity agreement in the unpublished *Stanford* opinion, the indemnity obligation owed by debtor GM to Remy is not limited or contingent. To the contrary, debtor GM must "indemnify [Remy] . . . and hold [Remy] . . . harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating directly to or indirectly to, arising out of or resulting from . . . (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or prior to Closing." (Shives Decl., Ex. A at ¶ 5.3.1.) The "Retained Liabilities" of debtor GM include, but are not limited to, "(ii) any product liability claim of any nature in respect of products of the Businesses [GM] manufactured on or prior to the Closing Date." (Shives Decl., Ex. A at ¶ 5.2.) Quite simply, GM is unconditionally and absolutely required to indemnify Remy against any and all claims relating to GM's products. This is an obligation GM acknowledged and complied with

until it filed for bankruptcy earlier this year.  Because Remy is entitled to absolute indemnity

from debtor GM, Remy respectfully submits that this Court should apply the automatic stay to

the five currently filed actions and any subsequently filed asbestos actions.

> **3.    Remy's Potential Claims Against Debtor GM's Insurance Polices Warrant Application of the Stay**

The Committee argues that the mere possibility of a claim on debtor GM's insurance

policies does not warrant application of the automatic stay to asbestos claims against Remy. This

also concedes that a real probability of a claim on GM's insurance would warrant application of

the automatic stay as to Remy.  However, here there is no "mere possibility" of a claim against

GM's insurance policies, but a virtual certainty of such a claim.  The Committee fails to

acknowledge that asbestos claims against Remy relating to periods of time prior to 1993 – when

Remy first came into existence – *could only spring from products manufactured by debtor GM*

through its Delco-Remy division.  Thus, such claims implicate GM insurance policies that,

according to *General Motors Corporation v. Royal & Sun Alliance Insurance Group, PLC, et al.*,

2007 WL 1206830, undeniably cover claims for injuries that occurred between 1954 and 1971.

(*Id.* at 3.)  As counsel for the Committee well knows, asbestos plaintiffs routinely claim that

exposure, *i.e.* the plaintiff's injury occurrence, occurred during periods of time spanning several

decades, which inevitably triggers coverage for policies in effect during *each year of exposure*.

The Committee's claim that GM's insurance policies are not necessarily implicated by claims of

asbestos defendants against companies that purchased the assets of former GM divisions, such as

Remy, are simply facetious.

Moreover, the two cases relied upon by the Committee are irrelevant because they both

involved directors and officers insurance policies.  (*See*, *In re Adelphia Communications Corp.*,

298 B.R. 49, 51 (Bankr. S.D.N.Y. 2003) (involving "civil litigation in regard to Directors' and

Officers' [] liability insurance");[5] *In re: Granite Partners, L.P.*, 194 B.R. 318, 335 (Bankr.

S.D.N.Y. 1996) (one of two policies sharing an aggregate $5 million cap "insure[d] the

[defendant] general partners against any loss arising in their capacities as general partners").)

Here, the GM insurance policies involved are not directors and officers policies, but instead

"occurrence based liability policies" covering claims against debtor GM for injury based on

product liability, including asbestos claims.  (*See*, *General Motors Corporation v. Royal & Sun

Alliance Insurance Group, supra*, 2007 WL 1206830 at p.1.)

Claims by Remy against debtor GM's liability insurance policies would implicate

property of the estate because asbestos claims against Remy relating to periods of time prior to

1993 – when Remy first came into existence – *could only spring from products manufactured by

debtor GM* through its Delco-Remy division.  Accordingly, coverage for Remy would be

derivative of debtor GM's coverage, and claims against those policies would implicate property

of debtor GM's estate – "the debtor's . . . contractual right to indemnification coverage under

[those] polic[ies]." (*In re: Granite Partners, L.P., supra*, 194 B.R. at 337.)

Finally, with regard to the Committee's argument that the proceeds of an insurance policy

are not the property of the debtor's estate, this issue is hardly settled.  The *In re Adelphia

Communications Corp.*, 298 B.R. 49. Court held "that insurance *policies* are covered by the

automatic stay provision of the Bankruptcy Code," but that the *proceeds* of the insurance policies

are not subject to the automatic stay.  (*Id.* at 53-54, emphasis in original.)  However, in *Johns-

Manville v. Asbestos Litigation Group*, 26 B.R. 420, 435 (Bankr. S.D.N.Y. 1983) "[t]he court

found that Manville's insurance policies *and their proceeds* were 'substantial property of the

Manville estate which will be diminished if and to the extent that third party direct actions

---

[5] The *Adelphia* Court declined to hold that the automatic stay of Section 362 applied to insurance proceeds, but remanded the matter to the bankruptcy court (which had applied the automatic stay to said proceeds) to "determine whether the stay under § 362 should be extended pursuant to its power under §105(a)." (*Id.* at 55.)

against the insurance carriers result in plaintiffs' judgments.'" (*See, MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988), emphasis added, citing with approval *Johns-Manville v. Asbestos Litigation Group*, 26 B.R. 420, *aff'd in part*, 40 Bankr. 219 (S.D.N.Y.), *rev'd in part on other grounds*, 41 Bankr. 926 (S.D.N.Y. 1984).) Thus, the Second Circuit is split on this issue.

Here, because asbestos actions filed against Remy will result in claims against those policies derivative of debtor GM's coverage rights, those claims implicate property of the estate and application of the automatic stay to those actions is warranted. Again, and independent of the impact on the debtors estate, application of the automatic stay is warranted because Remy is entitled to absolute indemnity from GM, and the absolute indemnity is an unusual circumstance coming within the unusual circumstance rule to warrant extension of the stay to Remy.

### D.   Issuance of a Stay Under Section 105 is Warranted

The Committee agrees that the Bankruptcy Court, under certain circumstances, can stay proceedings as against non-debtors through its authority vested in Section 105(a). The Court's authority under Section 105 "is broader than the automatic stay provisions of Section 362" and the Court "may use its equitable powers to assure the orderly conduct of the reorganization proceedings" or to "enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it." (*Johns-Manville Corp. v. Colorado Ins. Guar. Ass'n* (*In Re Johns-Manville Corp.*), 91 B.R. 225, 227-8 (Bankr. S.D.N.Y. 1988), quoting *LTV Steel Co. v. Board of Educ.* (*In re Chateaugay Corp., Reomar, Inc.*), 93 B.R. 26, 29 (S.D.N.Y. 1988); *accord, Alert Holdings, Inc. v. Interstate Protective Servs.* (*In re Alert Holdings, Inc.*), 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992); *AP Indus. Inc. v. SN Phelps & Co.* (*In re AP Indus, Inc.*), 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990); *Garrity v. Leffler* (*In re Neuman*), 71 B.R. 567, 571 (S.D.N.Y. 1987).

The standard for issuance of injunctive relief under Section 105 is whether the action to be enjoined is one that would "embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects…." (*In re Alert Holdings, supra*, 148 B.R. at 200; *see also, Keene Corp. v. Acstar Ins. Co.* (*In re Keene Corp.*), 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) (The Court "can enjoin an activity that threatens the reorganization process or impairs the Court's jurisdiction with respect to a case before it"); *In re Neuman, supra*, 71 B.R. at 571-2; *In re Chateaugay Corp. Reomar, supra*, 93 B.R. at 31; *In re Johns-Manville Corp.*, 91 B.R. at 227-8.)

In contrast to a preliminary injunction motion outside the bankruptcy context, Section 105 does not require the applicant to make all of the showings required for a preliminary injunction, but will consider the nature of the relevant injury and balance of hardships. (*See, In re Adelphia Communications Corp.*, 302 B.R. 439, 446-447 (Bankr. S.D.N.Y. 2003); (*In re Keene Corp., supra*, 164 B.R. at 292 (irreparable injury need not be shown); *C&J Clark Am., Inc. v. Carol Ruth, Inc.* (*In re Wingspread Corp.*), 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988) ("The usual grounds for injunctive relief such as irreparable injury need not be shown in a proceeding for an injunction under Section 105(a)"); *Newman, supra*, 71 B.R. at 571). Indeed, the Committee agrees that irreparable harm need not be shown if the liability of the non-debtor will be imputed to the debtor by operation of law. (Committee's Opposition, p. 16, fn. 6). This is exactly that situation.[6]

---

[6] The Committee argues that to request Section 105 relief, which Remy did alternatively to its main argument of requesting extension of the stay, Remy should have requested this relief as an adversary proceeding rather than as a contested matter. First, the Section 105 argument is an alternative argument to Remy's main position that the automatic stay should be extended under Section 362. Second, the Committee's argument is a false argument because even if an adversary hearing would have been brought, the same plaintiffs and their counsel would have received the same notice to which no one has objected. We would be right back at the same place where we are now, with Remy asking for the requested relief and that request being unopposed by any plaintiff or any of their individual counsel. Hence this argument is a red herring. If Remy was to bring this request as an adversary matter, it

As discussed above, if the five actions are not stayed an adverse finding against Remy would collaterally estop GM, who stands in privity to Remy, from disputing the negative finding. Moreover, any judgment against Remy would ultimately be a judgment against GM.[7] Here, the indemnity agreement between Remy and GM is absolute and unconditional, a fact which is undisputed.  As set forth in the Agreement, GM retained certain liabilities relating to the assets being sold under that agreement (the "Retained Liabilities").  Among the "Retained Liabilities" enumerated in section 5.2 of the Agreement are the following: "(i) any liability or obligation of GM existing as a result of any act, failure to act or other state of facts or occurrence which constitutes a breach or violation of any of GM's representations, warranties, covenants or agreements contained in this Agreement; (ii) any product liability claim of any nature in respect of products of the Businesses [GM] manufactured on or prior to the Closing Date; . . . (v) any obligation or liability arising under any Contract, instrument or agreement that (a) is not transferred to Purchaser as part of the Purchased Assets; . . .and (xiv) liabilities in connection with any matter as to which GM has responsibility or liability under Article VIII [entitled 'Environmental Matters']."

In conjunction with GM's retention of the "Retained Liabilities," in section 5.3.1(A) of the Agreement, GM agreed to indemnify and hold Remy harmless from any damages relating to the Retained Liabilities.  Paragraph 5.3.1(A) of the Agreement provides:  "GM shall indemnify [Remy] . . . and hold [Remy] . . . harmless from and against Damages, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating directly

---

would be brought against the plaintiffs who sued Remy in these five identified cases.  The same relief would have been requested.  Thus, it is of no consequence how the requested relief was brought to the Court's attention.
[7] The Committee's reliance on *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) is misplaced. *Queenie* held that the possible use of offensive collateral estoppel or the precedential effect of an adverse decision against the debtor will not automatically stay an action against a non-debtor.  Here, it is not only the application of collateral estoppel against the defendant but that if there is an adverse judgment against Remy, GM will be obligated to indemnify Remy.

RC1/5394579.7/KNS

to or indirectly to, arising out of or resulting from (i) any misrepresentation or breach of any

representation, warranty, covenant or agreement made by GM in this Agreement or in any

statement, document or certificate furnished or required to be furnished to [Remy] pursuant

hereto; . . . or (iii) the Retained Liabilities or otherwise to the extent arising out of or relating to

the ownership or use of the Purchased Assets by GM or the operation of the Businesses on or

prior to Closing."

Pursuant to section 5.3.1(C) of the Agreement, the term "Damages" means "any and all

losses, liabilities, third party damages (including fines, penalty and punitive damages),

deficiencies, interest, costs and expenses and any actions, judgments, costs and expenses

(including reasonable attorneys' fees and all other reasonable expenses incurred in investigating,

preparing or defending any litigation or proceeding, commenced or threatened) relating to, or

incident to the enforcement of, this Agreement."

In addition to the indemnity and defense obligations in sections 5.2 and 5.3.1 of the

Agreement, pursuant to section 8.12.3 of the Agreement GM agreed to "defend, indemnify and

hold [Remy] harmless from and against any liabilities, damages, penalties, costs, expenses and

fines, including reasonable attorney's fees . . . (the "Adverse Consequences") to which [Remy]

may be subjected as a result of an action, suit, complaint, formal Notice of probable claim, or

proceeding brought by a government agency or other third party (the "Claim"), but only to the

extent such Claim is based upon or with respect to clause (i) directly arises as a result of any

remedial activity by GM in connection with: (i) an Identified Pre-Closing Environmental

Condition . . . or (ii) any breach by GM of the representation and warranties in Section

8.12.2A. . . ." Section 8.12.2(A) of the Agreement concerns GM's representations and

warranties regarding environmental conditions at the premises that were being leased by GM to Remy.

The five actions currently pending against Remy fall within GM's indemnification obligations.  Any alleged exposures by these plaintiffs ranging from 1960 to 1994 constitute "Retained Liabilities" under the Agreement, and therefore, GM would undeniably be obligated to defend and indemnify Remy and in turn, compromise the preservation and protection of the estate. This is because a finding against Remy would trigger an indemnification claim by Remy against GM's Estate pursuant to the APA, and would also trigger a claim by Remy against any of GM's applicable insurance policies, both causing Remy to file an amended – increased – claim against GM's Estate, in order to enforce the Agreement. The threatened impairment of the Debtor's estate were the stay not extended to Remy alone is a strong reason for this court's application of the automatic stay provision of Section 362(a).

Finally, the Committee suggests that even if Remy had an unconditional right to indemnity from GM, that does not support a stay as against Remy.  In support, the Committee relies on *In re Metal*, 31 B.R. 458 which, although granting the stay request of a non-debtor, also held that a judgment against a guarantee non-debtor would not bind a guarantor-debtor. However, first, Remy does have an absolute right to indemnity which is undisputed in these proceedings. Second, GM has filed no objection to the motion to extend the stay, so to argue that the stay as to Remy would be worthless, as the Ad Hoc Committee appears to do with the citation of this case, is really irrelevant, and is Remy's business, not theirs. Although *In re Metal* is still good law, courts have criticized *In re Metal*'s holding for the proposition the Committee replies upon.  (*A.H. Robins Company v. Piccinin*, 788 F.2d 994 (4th Cir. 1996) (criticizing *In re Metal* to the extent it held that a judgment against a non-debtor guarantee did not bind a debtor-

guarantee and found that an unconditional right to indemnification warranted a stay under

Section 362 against non-debtors/indemnitees).)  This illogical holding of *In re Metal* should not

be followed by this Court.

Additionally, there will be no harm to the plaintiffs in the five actions if the actions

against Remy are stayed.  Most telling is the fact that despite having been served with Remy's

motion, none of those plaintiffs have filed any timely objections.

**E.    Remy International, Inc. Has Standing to Seek Application of the Debtors'
Automatic Stay**

The Committee, recognizing the strong arguments in favor of extending the stay to Remy,

relies on form over substance by focusing on who brought the motion rather than the compelling

reasons to grant the stay.[8]  It is well established that the automatic stay may be extended to non-

debtors under certain "unusual circumstances" as discussed in detail above in Section C, which

applies to Remy.  (*See also, In re Metal Center, Inc*, 31 B.R. 458 (the Bankruptcy Court's ruling

to extend the stay to a non-debtor was not affected by the fact that the relief was requested by the

non-debtor); *Fleet Bus. Credit, L.L.C.*, 291 B.R. 550 (although denied on the merits, non-debtor

was allowed to seek an extension of the stay).)

Granting a stay as to Remy furthers the purpose of the automatic stay provisions of

Section 362.  The automatic stay provision serves a dual purpose: (1) to protect the debtor and

(2) to protect the interests of creditors by preventing certain creditors from unfairly gaining an

advantage over other creditors.  (*Kommanditselskab Supertrans v O.C.C. Shipping, Inc.* 79 B.R.

534 (S.D.N.Y. 1987).)  As discussed in detail in the moving papers, Remy is essentially GM

---

[8] The Committee acknowledges that the Second Circuit has not ruled whether only debtors have standing to seek an extension of the automatic stay.  Moreover, in one of the cases cited by the Committee as supporting its claim that only a debtor may seek a stay, *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F.Supp.2d 1002 (N.D. Iowa 2001), the Court actually stated that "the court expresses no opinion as to whether a non-debtor party can, in fact, move for such an extension, or whether such a motion may only be made by the debtor."  (*Id.* at 1019 n.8.)

insofar as the five pending cases are concerned.  Remy was named in these lawsuits for the sole

reason that it purchased the assets, including the name, of the Delco Remy division of GM.  Each

of these lawsuits are based on GM manufactured products or GM owned premises – in other

words, any liability of Remy could only be derivative of GM and GM products and/or premises.

Hence, since these lawsuits are now stayed as to GM pursuant to the automatic stay of the

bankruptcy court, Remy only seeks to have that same stay extend to Remy since GM is

contractually obligated to indemnify Remy in these cases under the APA.

Moreover, as discussed in Section II(D) above, if the plaintiffs in the five lawsuits are

allowed to proceed with their lawsuits against Remy and negative findings and/or judgments are

obtained against Remy, GM will be collaterally estopped from disputing those findings and/or

judgments and these plaintiffs will have gained an unfair advantage over the other numerous

creditors because the states where the 5 cases are pending, Illinois, Indiana and Rhode Island,

permit the offensive use of collateral estoppel.  (*Congregation of the Passion, v.* 159 Ill. 2d 137,

636 N.E.2d 503, 510, 201 Ill. Dec. 71 (Ill.), *cert. denied*, 130 L. Ed. 2d 312, 115 S. Ct. 358

(1994); *Garoutte,*  400 B.R. at 211-212; *Richards,* 848 F.Supp. at 325-326.  As such, collateral

estoppel can be asserted against a non-party to a lawsuit when that non-party is in privity with a

party to the lawsuit.  Thus, if a stay is not extended to Remy, the plaintiffs in the five actions

may obtain an unfair advantage over the numerous other creditors of debtor GM, thereby

defeating the purpose of the automatic stay – to protect the assets of the debtor's estate.

Remy is seeking a stay only as to Remy, and is not asking this court to stay the entire

case nor asking this court to stay the cases as to any of the remaining defendants, which number

over approximately 75 defendants in four of the five cases. Significantly, the plaintiffs in these

five lawsuits, despite having received notice of this motion, did not file any timely objections to

Remy's request herein.  Moreover, GM has not objected to Remy's request.  Instead of questioning whether Remy has standing to request an extension of the stay, which it absolutely does, the more pertinent question is whether the Committee itself has any standing to object since none of the Committee members are plaintiffs in the five Remy cases.[9]  Since Remy's motion has not been timely objected to by any party who has any interest in the outcome of this motion, Remy respectfully requests that its motion be granted.

### III.    CONCLUSION

Based on the foregoing, Remy respectfully requests the Court grant its motion for application of the Section 362 automatic stay to asbestos actions against Remy.

Dated: October 5, 2009
      San Francisco, CA

Respectfully submitted,

ROPERS, MAJESKI, KOHN & BENTLEY


By:/s/ N. Kathleen Strickland
    N. KATHLEEN STRICKLAND, Esq.
    Ropers Majeski Kohn & Bentley
    201 Spear Street, Suite 1000
    San Francisco, CA 94105
    Telephone:(415) 543-4800
    Facsimile: (415) 972-6301
    Email:    kstrickland@rmkb.com

    GEOFFREY W. HEINEMAN, Esq.
    Ropers Majeski Kohn & Bentley
    17 State Street, Suite 2400
    New York, NY 10004
    Telephone:(212) 668-5927
    Facsimile: (212) 668-5929
    Email:    gheineman@rmkb.com

    Attorneys for Creditor
    REMY INTERNATIONAL, INC.

---

[9] The only other party that filed a timely objection to either the Remy or DDC motions for stay was the Pichons who filed an objection only as to DDC's motion for stay.  Unlike the Committee, which has no interest in Remy's five cases, the Pichons are plaintiffs in a case pending against DDC.  Significantly, the Pichons did not object to DDC's motion for stay on the basis of DDC's alleged lack of standing.

RC1/5394579.7/KNS