UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

    MOTORS LIQUIDATION COMPANY, *et al.*,
    f/k/a General Motors Corp., *et al.*

        Debtors.

CHAPTER 11
CASE NO. 09-50026(REG)
(Jointly Administered)

**AFFIDAVIT OF SERVICE
OF PROOF OF CLAIM**

RECEIVED
OCT - 5 2009
U.S. BANKRUPTCY COURT, SDNY

**STATE OF FLORIDA
COUNTY OF CITRUS**

    ON THIS 30th day of September, 2009, before me, personally appeared WALTER J.

LAWRENCE, who is known to me, or who produced State of Florida driver's license as

identification, and who having first been duly sworn by me, that he has read the above and

foregoing Affidavit of Service of Proof of Claim , and that the same is true and correct to the best

of his knowledge and belief and that on this date WALTER J. LAWRENCE did serve a copy of

his Proof of Claim on each of the below entities by placing the same in separate envelopes,

addressed to each entity according to each of the below address with U.S. postage first fully

prepaid for first class U.S. mail delivery.

                                   *Melissa E Thomas*
                                     Notary Public

| Melissa E Thomas |
| Comm # DD87118 |
| (Seal) Expires Apr 4 2013 |
| FL Notary Disc Assoc Co |

             *Melissa E Thomas*
             (Type or print notary's name above)
             My Commission Expires:

                  4/4/13

The Garden City Group, Inc.
Attn: Motors Liquidation Company
P.O. Box 9386
Dublin, Ohio 43017-4286

Page 1 of 6

**Counsel for GM**

Weil, Gotshal & Manges, LLP
767 Fifth avenue
New York, NY 10153
Attn:   Harvey R. Miller, Esq.
            Stephen Karotkin, Esq.
            Joseph H. Smolinsky, Esq.

Cynthia L. May
Greenberg Traurig, LLP*
Suite 100
625 E Twiggs St
Tampa , FL 33602-3925
813/318-5700
Fax: 813/318-5900
Email: mayc@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Debtor**

General Motors Corporation
c/o Motors Liquidation Company
300 Renaissance Center
Detroit, MI 48265
Attn: Ted Stenger

General Motors Corporation
300 Renaissance Center
Detroit, MI 48265
Attn: Lawrence S. Buonomo, Esq.

**U.S. Trustee's Office**

The Office of the United States Trustee
for the Southern District of New York
33 Whitehall Street
21st Floor
New York, NY 10004
Attn: Diana G. Adams, Esq.

**Creditors' Committee**

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attn:   Kenneth H. Eckstein, Esq.
        Thomas Moers Mayer, Esq.
        Adam C. Rogogg, Esq.
        Gordon Z. Novod, Esq.

**20 Largest Unsecured Creditors**

.Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890
Attn: Geoffrey J. Lewis

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America (UAW)
8000 East Jefferson
Detroit, MI 48214
Attn: Ron Gettlefinger

Deutsche Bank AG,
London As Fiscal Agent
Attn: Stuart Harding
Theodor-Heuss-Allee 70
Frankfurt, 60262
Germany

International Union of Electronic, Electrical,
Salaried, Machine and Furniture Workers-
Communications
Workers of America (IUE-CWA)
3461 Office Park Drive
Kettering, OH 45439
Attn: Mr. James Clark

Bank of New York Mellon
One Wall Street
New York, NY 10286

Attn: Gregory Kinder

Starcom Mediavest Group, Inc.
35 W. Wacker drive
Chicago, IL 60601
Attn: Laura Desmond

Delphi Corp.
5725 Delphi Drive
Troy, MI 48098
Attn: Rodney O'Nea

Robert Bosch GmbH
38000 Hills Tech Drive
Farmington Hills, MI 48331
Attn: Franz Fehrenbach

Lear Corp.
21557 Telegraph Road
Southfield, MI 48033
Attn: Robert Rositer

renco Group, Inc.
1 Rockfeller Plaza
29th Floor
New York, NY 10020
Attn: Lon Offenbacher

Enterprise Rent A Car
6929 N. Lakewood Ave.
Suite 100
Tulsa, OK 74117
Attn: Greg Stubblefield

Johnson Controls, Inc.
5757 N. Green Bay Avenue
Glendale, WI 53209
Attn: Stephen A. Roell

Denso Corp.
24777 Denso Drive
Southfield, MI 48086

Attn: Haruya Maruyama

TRW Automotive
Holdings, Corp.
12025 Tech Center Dr.
Livonia, MI 48150
Attn: John Plant

Magna International, Inc.
Attn: Don Walker
337 Magna Drive
Aurora, ON L4G7K1
Canada

American Axle & Mfg Holdings, Inc.
One Dauch Drive
Detroit, IM 48211-1198
Attn: Richard Dauch

Maritz Inc.
1375 North Highway Drive
Fenton, MO 63099
Attn: Steve Maritz

Publicis Groups S.A.
Attn: Maurice Levy
133 Ave Des Champs Elysees
Paris, 75008
France

Hewlett Packard Co.
3000 Hanover Street
Palo Alto, CA 94304
Attn: Mike Nefkens

Interpublic Group of
Companies, Inc.
1114 Avenue of the Americas
New York, NY 10036
Attn: Michael Roth

**Others:**

U.S. Treasury
Attn: Matthews Feldman, Esq.
1500 Pennsylvania Avenue NW Room 2312
Washington, DC 20220

Cadwalder, Wickersham & taft, LLP
Attn: John J. Rapisardi, Esq;
One World Financial Center
New York New York 10281

Vedder Price, P.C.
Michael J. Edelman, Esq.
Michael L. Schein, Esq.
1633 Broadway, 47th Floor
New York, NY 10019

_____

Walter J. Lawrence
Secured Creditor, pro se

**STATE OF FLORIDA**
**COUNTY OF CITRUS**

ON THIS 30 day of September , 2009, before me, personally appeared WALTER J.
LAWRENCE, who is known to me, or who produced State of Florida driver's license as
identification, and who having first been duly sworn by me, that he has read the above and
foregoing Affidavit, and that the same is true and correct to the best of his knowledge and belief.

Melissa E Thomas
Notary Public

Melissa E Thomas
(Type or print notary's name above)

(Seal)

Melissa E Thomas
Comm # DD87118
Expires Apr 4 2013
FL Notary Disc Assoc Co

My Commission Expires:

4/4/13

Page 6 of 6



**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | **PROOF OF CLAIM**

Name of Debtor (Check Only One):   Case No.

☒ Motors Liquidation Company (f/k/a General Motors Corporation)   09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)   09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)   09-50028 (REG)
☐ MLC of Harlem, Inc. (f/k/a Chevrolet Saturn of Harlem, Inc.)   09-13558 (REG)

Your Claim is Scheduled As Follows:

*I have no Knowledge as to whether Debtor has or has not scheduled this debt*

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property): WALTER J. LAWRENCE

Name and address where notices should be sent:
WALTER J. LAWRENCE
#103, 2609 N. FOREST RIDGE BLVD
HERNANDO, FL 34442
Telephone number: 269-838-5076
Email Address: NONE

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above): N/A

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

Telephone number:

**1. Amount of Claim as of Date Case Filed, June 1, 2009:**   $ 160,600.00
If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** SEE MOTION TO LIFT AUTOMATIC WHICH IS INCORPORATED HEREIN BY REFERENCE AS THOUGH FULLY STATED
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** EIN 38-0572515

**3a. Debtor may have scheduled account as:** UNKNOWN
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☒ Other
Describe: GM/UAW Supplemental PENSION PLAN (HOURLY) AGREEMENT
Value of Property: $160,600.00   Annual Interest Rate 7%
Amount of arrearage and other charges as of time case filed included in secured claim, if any: $160,600.00
Basis for perfection: GM/UAW Supplemental Hourly Pension Plan AGREEMENT included in attach C.B.
Amount of Secured Claim: $160,600.00   Amount Unsecured: $ -0-

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

Amount entitled to priority:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

A CB IS included that contains a copy of document refered to in item #4 above.

If the documents are not available, please explain in an attachment.

**FOR COURT USE ONLY**

Date: 9-30-09

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*Walter J. Lawrence* – WALTER J. LAWRENCE

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/08)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One):

☒ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No. 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc. (f/k/a Chevrolet Saturn of Harlem, Inc.) — 13-13558 (REG)

**Your Claim is Scheduled As Follows:**

*I have no knowledge as to whether Debtor has or has not scheduled this debt.*

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): **WALTER J. LAWRENCE**

Name and address where notices should be sent:
**WALTER J. LAWRENCE**
**#103, 2609 N. FOREST RIDGE BLVD**
**HERNANDO, FL 34442**
Telephone number: **269-838-5076**
Email Address: **NONE**

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
**N/A**

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

**1. Amount of Claim as of Date Case Filed, June 1, 2009:** $ **160,600.00**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** _SEE MOTION TO LIFT AUTOMATIC WHICH IS INCORPORATED_
(See instruction #2 on reverse side.) _HEREIN BY REFERENCE AS THOUGH FULLY STATED_

**3. Last four digits of any number by which creditor identifies debtor:** _EIN 38-0572515_

**3a. Debtor may have scheduled account as:** _UNKNOWN_
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☒ Other
Describe: _GM/UAW Supplemental PENSION PLAN (HOURLY) AGREEMENT_
Value of Property: $ _160,600.00_  Annual Interest Rate _7_%
Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ _160,600.00_
Basis for perfection: _GM/UAW Supplemental Hourly Pension Plan AGREEMENT included in attached_
Amount of Secured Claim: $ _160,600.00_  Amount Unsecured: $ _-0-_    C.D.

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.) #4
A CD IS included that contains a copy of document referred to in item above.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain in an attachment.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 9-30-09

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

_Walter J. Lawrence_ – WALTER J. LAWRENCE

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
**Modified B10 (GCG) (12/08)**



*Supplemental Agreement*

Covering

**PENSION PLAN**

Exhibit A
to
**AGREEMENT**
between
**GENERAL MOTORS CORPORATION**
and
**UAW**
dated
September 17, 1990

A



# TABLE OF CONTENTS

|  | Page No. |
|---|---|
| Index to Exhibit A and Exhibit A-1 | (ii) |
| Exhibit A — Supplemental Agreement Between General Motors Corporation and the UAW (Pension Plan) | (1) |
| Exhibit A-1 — The General Motors Hourly-Rate Employes Pension Plan | 1 |

(i)

# INDEX TO

|  | Page No. |
|---|---|
| EXHIBIT A — Supplemental Agreement Between General Motors Corporation and the UAW (Pension Plan) | |
| EXHIBIT A-1 — The General Motors Hourly-Rate Employes Pension Plan | |
| Actuary: | |
| Appointment of | (3) |
| Certification by | (3) |
| Administration, General | (11), 50 |
| Amendment, Provision for | (2), 60 |
| Appendix A — Benefit Class Codes | 69-70 |
| Appendix B — Foundry Jobs | 71-76 |
| Appendix C — Asbestos Jobs | 77 |
| Approval of Plan (See "Plan, Approval of") | |
| Asbestos Jobs: | |
| Definition of | 77 |
| Asbestos Service, Credited Service for | 46 |
| Base Hourly Rate | 66-67 |
| Basic Benefit | 67 |
| Basic Benefit Applicable to Benefits Commencing Prior to October 1, 1990 | 19-28 |
| Deferred Pensions | 53-57 |
| Early Retirement | 6-9 |
| ERISA Minimum | 8 |
| Normal Retirement | 6 |
| Total and Permanent Disability Retirement | 6 |
| Benefit Class Code | 69-70 |

(ii)

|  | Page No. |
|---|---|
| Board of Administration: | |
| Applicability of 3(c) Agreement | (10)-(11) |
| Appointment of Members | (9) |
| Functions | (9)-(11) |
| Information Furnished by Corporation | (6),(9) |
| Liability | (11) |
| Pay and Expenses of Members | (6) |
| Retroactive Adjustments | (3) |
| Time of Meeting | (6) |
| Voting | (6) |
| Chairman, Impartial: | |
| Appointment of | (10) |
| Compensation of | (10) |
| Term of Office | (10) |
| Voting | (10) |
| Contributions: | |
| General Provisions | (3),(5),48-49 |
| Service, Current | (3)-(4) |
| Service, Prior | (4) |
| Time of Payment | (3)-(5) |
| Credited Service, Subsequent to Effective Date of Plan | |
| Computation | 34-39 |
| During Layoff or Disability Leave | 35-36, 38-39 |
| Limitation of | 39 |
| Military Service | 37 |
| Occupational Disability Absences | 36 |
| Prior Service as Salaried Employe | 36 |
| Reinstatement of | 40 |
| Credited Service, Asbestos | 46 |
| Credited Service, Credit Union | (12) |
| Credited Service, Equal to Seniority | 39 |
| Credited Service, Foreign Subsidiary | 40-41 |

(iii)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Credited Service, Foundry | (14), 41-43 |
| Credited Service, Loss of | 40 |
| Credited Service, Reinstatement of | 40 |
| Credited Service, Union Leaves of Absence | (12) |
| Deduction For: | |
| Benefit Plan(s) Overpayments | 58 |
| Dependent Life Insurance | 58 |
| Income Tax | 58 |
| Medical Expense Coverage | 57-58 |
| Optional Life Insurance | 58 |
| Union Dues | (13)-(14) |
| Deferred Pension: | |
| Benefits, Determination of | 53-57 |
| Eligibility | 53-54 |
| If Reemployed | 56 |
| Minimum Vesting Standards-ERISA | 43-46 |
| Definitions | 64-68 |
| Dependent Life Insurance | 58 |
| Discharged Employe | 9, 13 |
| Disciplinary Action (See "Employment Rights") | |
| Duration of Agreement | (14)-(15) |
| Employe, Definition of | 64-65 |
| Employment Rights | (12)-(13), 59 |
| Establishment of Fund | (3) |
| Establishment of Plan (See "Plan, Establishment") | |
| Federal Social Security Benefit: | |
| Definition of | 66 |
| Fiduciary, Named-ERISA | 60 |

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Financing | (3)-(5), 48-49 |
| Foundry Jobs: | |
| Designation of | 71-76 |
| Foundry Service, Credited Service for | 41-43 |
| Guaranteed Income Stream Benefits | 53 |
| Grievance Procedure: | |
| Non-Applicability of | (11)-(12) |
| Income Tax (See "Plan, Approval of Internal Revenue Service") | |
| Insurance Company or Trustee: | |
| Designation of | 65 |
| Insured Fund, Definition of | 66 |
| Layoff or Disability Absence: | |
| Credited Service During | 55-56, 38-39 |
| Leaves of Absence: | |
| Union | (12) |
| Military Service | 37 |
| Letter Agreements | 87-96 |
| Liability of Corporation | (5), 48-49 |
| Limitation of Benefits | 60 |
| Lump-Sum Payment | 90-91 |
| Medical Expense Benefit Coverages | 57-58 |
| Merger or Consolidation-ERISA | 64 |
| Military Service, Credited Service for | 37 |
| Modification, Provision for | (1)-(2), 60-61 |
| Optional Life Insurance | 58 |
| Pension Fund, Definition of | 66 |

(iv)

(v)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Pension Payments: | |
| General Provisions | 50-53 |
| Non-Allocation of | 57-58 |
| To Persons Other Than Pensioners | 52 |
| Plan, Approval of: | |
| Board of Directors | (1)-(3), 60 |
| Internal Revenue Service | (1)-(2), 59 |
| Plan, Duration of | (14)-(15) |
| Plan, Establishment of | (1), (2), 3 |
| Plan, Termination of | 61-64 |
| Pre-Retirement Survivor Coverage-REA: | 55, 33 |
| Duration | 31-32 |
| Effective Date | 32-33 |
| Eligibility | 31-34 |
| Payment | 32-33 |
| Qualified Domestic Relations Order-REA | 9, 26, 33, 57 |
| Reemployment | (13), 40, 52, 56 |
| Retirement, Early: | |
| Benefit Options | 4 |
| Benefit, Determination of | 6-9 |
| Benefits, Payment of | 50-53 |
| Benefits, Redetermination of | 7 |
| Eligibility | 4 |
| Mutual Retirement Standards | 78-79 |
| Reductions for Age | 7 |
| Retirement, General | (12)-(18) |
| Retirement, Normal: | |
| Benefits, Determination of | 6 |
| Benefits, Payment of | 50-53 |
| Eligibility | 4 |
| Retirement, Total and Permanent Disability: | |
| Benefits, Determination of | 6 |
| Benefits, Payment of | 50-53 |

(vi)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Disability, Determination of | 5, 51, 56 |
| Eligibility | (12)-(13), 5, 17, 52 |
| Recovery From | 17, 52 |
| Seniority (See "Credited Service") | |
| Seniority, Definition of | 66 |
| Seniority, Equal to Credited Service | 39 |
| Social Security Benefits: | |
| Redeterminations for | 46-47 |
| Special Benefit | 18-19 |
| Standards for Application of Provisions for Mutually Satisfactory Retirement | 78-79 |
| Statement of Intent-Representation | 80-85 |
| Supplement, Early Retirement: | |
| Benefits Commencing Prior to October 1, 1990 | 24-25 |
| Benefits, Determination of | 13-14, 16-17 |
| Earnings Limitation | 17 |
| Eligibility | (13) 13-14 |
| Limitation of 70% of Final Pay | 17-18 |
| Payment of | 14, 50-53 |
| Penalty Against | 16-17 |
| Recovery If Overpaid | 17 |
| Redetermination if Commenced Prior to October 1, 1990 | 25 |
| Waiver of Earnings Limitation | 17 |
| Mutual Retirement | 17 |
| Supplement, Interim: | |
| Benefits, Determination of | 14-15 |
| Earnings Limitation | 17 |
| Eligibility | (13), 13-14 |
| Limitation of 70% of Final Pay | 17-18 |
| Payment of | 15, 50-54 |
| Penalty Against | 16-17 |
| Recovery If Overpaid | 17 |

(vii)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Supplemental Pension Agreement: | (1) |
| Conflict With Plan | (1) |
| Date of | (1) |
| Duration of | (14)-(15) |
| Parties to | (16)-(17) |
| Surviving Spouse Benefits: | |
| After Employee's Retirement | 9-13 |
| Before Employee's Retirement | 12,13 |
| Cancellation Because of Death | |
| or Divorce | 9-10, 26 |
| Effective Date | 10-11 |
| Election to Receive Full Amount | |
| of Future Increases | 26-27 |
| Joint and Survivor-ERISA | 28-31 |
| Reduction of Basic Benefit | 11-12 |
| Rejection of Coverage | 10-11, 29 |
| Special Survivor Option | 25-26 |
| Spouse Consent | 10-11, 29 |
| Upon Marriage or Remarriage | |
| After Retirement | 27 |
| Temporary Benefit Applicable to: | |
| Benefits Commencing Prior to | |
| October 1, 1990 | 22-24 |
| Early Retirement | 8-9 |
| Total and Permanent Disability | |
| Retirement | 8 |
| Termination of Plan | |
| (See "Plan, Termination of") | |
| Trust Fund: | |
| Definition of | 66 |
| Establishment of | (3), 48 |
| Irrevocability of | 49 |
| Trustee, Duties of | (3) |
| Trustee or Insurance Company: | |
| Definition of | 65 |
| Designation of | (3) |

(xiii)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| | (14) |
| Union Dues, Deduction of | |
| Vesting (See "Deferred Pension") | |
| Wage Inequity Adjustments | 21 |
| Widow's Benefits | |
| (See "Surviving Spouse Benefits") | |
| Workers Compensation: | |
| Deductions for Receipt of | 47-48, 89 |

(ix)

EXHIBIT A

SUPPLEMENTAL
AGREEMENT
(Pension Plan)

A. Sect. 1

## SUPPLEMENTAL AGREEMENT
### (PENSION PLAN)

On this 17th day of September, 1990, General Motors Corporation, hereinafter referred to as the Corporation, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, hereinafter referred to as the Union, on behalf of the employes covered by the collective bargaining agreement of which this Supplemental Agreement becomes a part, agree as follows:

### Section 1. Establishment of Plan

Subject to the approval of its Board of Directors, the Corporation will establish an amended pension plan, hereinafter referred to as the "Plan", a copy of which is attached hereto as Exhibit A-1 and made a part of this agreement to the extent applicable to the employes represented by the Union and covered by this agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this agreement, the provisions of this agreement will supersede the provisions of the Plan to the extent necessary to eliminate such conflict.

The Plan, as set forth in Exhibit A-1 and the Plan as it may be modified and supplemented by superseding provisions of this agreement, as above provided are both contingent upon and subject to obtaining and retaining such approval of the Commissioner of Internal Revenue as the Corporation may find necessary to establish the deductibility under Section 404 of the Internal Revenue Code for income tax purposes of any and all contributions made by the Corporation to both plans and to establish the Plans and related trust as being qualified and tax exempt.

(1)

A. Sect. 1

under Sections 401 and 501(a), or other applicable provisions of the Internal Revenue Code. Any modification or amendment of either the Plan, or the Plan as modified and supplemented by this agreement, may be made retroactively by the Corporation with the consent of the Union, if necessary or appropriate to qualify or maintain the Plan as a plan and trust meeting the requirements of Sections 401 and 501(a) of the Internal Revenue Code, as now in effect or hereafter amended, or any other applicable provisions of the federal tax laws, as now in effect or hereafter amended, and the regulations issued thereunder, provided that pension benefits under the Plan are not diminished.

Until the Plan is approved by the Corporation's Board of Directors and by the Commissioner of Internal Revenue, if as hereinbefore provided, the benefits payable shall be only those determined under the Plan as constituted prior to October 1, 1990; provided, however, that following approval by its Board of Directors and its receipt of the favorable ruling from the Commissioner of Internal Revenue as set forth above, the Corporation or the trustee will pay to retired employes and surviving spouses any excess amounts equal to the difference between the monthly pension calculated in accordance with the terms of the Plan, attached hereto as Exhibit A-1, and the monthly pension paid or payable in accordance with the terms of the Pension Plan which was attached as Exhibit A-1 to the Supplemental Agreement (Pension Plan) between the Parties dated October 8, 1987. Any such excess amounts payable for months prior to the receipt of the aforementioned Board of Directors and the Commissioner of Internal Revenue approvals, shall be payable the first of the month following the date upon which the last of these two approvals is received by the Corporation, and any such amounts payable thereafter, shall be paid on the first of the month at the same time as the related pension is paid.

(2)

A. Sect. 1

In the event that the Plan is disapproved by the Board of Directors of the Corporation, the Corporation within thirty days after any such disapproval will give written notice thereof to the Union, and this agreement shall thereupon have no force or effect. In that event the matters covered by this agreement, shall be the subject of further negotiation between the Corporation and the Union.

Section 2. Financing

(a)(1) A trustee or an insurance company, or both, shall be designated by the Corporation, and a trust agreement or contract, or both, executed between the Corporation and such trustee or insurance company, or both, under the terms of which a pension fund or insured fund, shall be established to receive and hold contributions payable by the Corporation, interest, and other income, and to pay the pensions and supplements provided by the Plan.

(b) The Corporation agrees to pay over irrevocably to the trustee or insurance company or payments for the period of this agreement, contributions or payments for the Plan equal to the sum of (i), and (ii) below as determined and certified as of each anniversary of the effective date of the Plan by one or more actuaries chosen by, but independent of, the Corporation, and qualified through Fellowship in the 'Society' of Actuaries and enrollment with the 'Joint Board for Enrollment of Actuaries (hereinafter referred to as the actuary). Such contributions or payments for any year may be made not later than the date on which such contributions are required by law to be made for the purpose of crediting such contributions to such year under the minimum funding standards of the Employee Retirement Income Security Act of 1974:

(i) the 'annual' 'current service' or 'normal cost' contribution attributable to a year's cost accruals

(3)

A. Sect. 2(b)(i)

in respect of assumed continuous service after each such anniversary date, and

(ii) the "prior service" contribution" computed as 'that' part of the "present value, if each such anniversary date, of the prospective pensions payable under the Plan for employees, pensioners and former employees who are entitled to a deferred pension then covered by the Plan which is in excess of:

(aa) the value of the trust fund, as then comprised of any contracts and total other assets, invested and uninvested, such total assets being valued on a basis at least equal to the total cost thereof, plus

(bb) the then present value of the prospective "current service" or "normal cost" contributions determined by the actuary in accordance with (i) above,

such excess part being amortized according to the following schedule:

(1) in respect of the portion of such excess part attributable to the level of benefits in effect prior to October 1, 1979 — the fifty-ninth anniversary of the Corporation's pension plan (October 1, 2009) and

(2) in respect of the portion of such excess part attributable to the increase in the level of benefits established by amendments to the Corporation's pension plan effective on or after October 1, 1979 — the thirtieth anniversary of the date on which such increase in the level of benefits becomes effective.

(c) The Corporation may contribute or pay additional amounts to the trusted or insurance company, or both, under (b) above in any year without such additional amounts being considered to be any thirty-year period for the completion of the "prior service contributions" of subsection (b)(ii) above, if the Corporation has contributed any such additional amounts prior to any anniversary date of the

(4).

A. Sect. 2(c)

Corporation's pension plan or shall contribute any such additional amounts prior to any anniversary date of the Plan falling within the duration of this agreement, the Corporation may as of such anniversary date contribute a lesser amount than otherwise determined by (b) above for such anniversary, provided that the value of any contracts and total other assets as valued in accordance with (b)(ii)(aa) above at such anniversary shall not be less than the amount estimated by the actuary to be the value as if contributions and payments up to and including such anniversary date had been made as provided in (b) above and no additional amounts tied been contributed or paid prior to such anniversary.

(2) The Corporation by payment of the contributions or amounts as hereinbefore provided in this section shall be relieved of any further liability, and pensions and supplements shall be payable only from the trust fund or the insured fund or both.

Section 3. Administration

(a) Board of Administration

(1) There shall be established a central Board of Administration hereinafter referred to as the Board, composed of six members, three appointed by the Corporation and three by the Union. Each member of the Board shall have an alternate. In the event a member is absent from a meeting of the Board, his alternate may attend and when in attendance shall exercise the duties of the member. Either the Corporation or the Union at any time may remove a member or alternate appointed by it and may appoint a member or alternate to fill any vacancy among members or alternates appointed by it.

No person shall act as a member of the Board of Administration or as an alternate for such member unless notice of his appointment has been given in

(5)

A Sec 3(a)(1)

writing by the party making the appointment to the other party.

(2) The Board shall meet at such times and for such periods for the transaction of necessary business as may be mutually agreed upon by its members.

(3) To constitute a quorum for the transaction of business, the presence of four members of the Board shall be required. At all meetings of the Board the member or members present appointed by the Corporation shall have in the aggregate a total of one vote to be cast on behalf of the Corporation, and the member or members present appointed by the Union shall have in the aggregate a total of one vote to be cast on behalf of the Union.

(4) The compensation and expenses of the Corporation members will be paid by the Corporation and the compensation and expenses of the Union members will be paid by the Union and no part of such compensation or expenses will be paid from the trust fund.

(5) The Corporation shall cause to be furnished to the Board of Administration annually:

(i) A statement as of each anniversary date of the Plan showing in summary form the value of the assets which comprise such fund by general categories of investment, such value being determined on a basis at least equal to the total cost thereof for each such category.

(ii) Such information as to age, sex and service of hourly-rate employes of the Corporation as a whole in the United States and as to the number of pensioners and amount of pensions and, supplements by age group, as the Board may reasonably require, but in no event shall the Corporation be required to furnish the Board with any data not furnished by the Corporation to the actuary.

(6)

A Sec 3(a)(6)(iii)

(iii) A report, prepared by the actuary, in respect of each year's actuarial valuation of the Plan, setting out the following:

(a) the amount of the normal cost contribution and the amount of the payment toward amortization of the actuarial deficiency required in accordance with Section 2(b) hereof.

(b) a statement of the method and the assumptions, such as the interest rate, mortality rates, withdrawal rates, retirement rates, average benefit unit and assumptions used with respect to the survivor benefit, adopted for the valuation for the purposes of Section 2(b) hereof.

(c) the amount, as of each anniversary date, of the gross actuarial deficiency, determined in accordance with Section 2(b) hereof as the present value of the prospective pensions payable under the Plan less the then present value of the prospective normal cost contributions, if any, for (1) retired employes, (2) employes who have separated with retention of deferred pensions, (3) non-retired and non-separated employes, and (4) total.

(d) the amount of assets used in the actuarial valuation, together with a reconciliation of the amount of such assets with the amount used in the preceding valuation.

(e) the amount of the net (unfunded) actuarial deficiency.

(f) the amount by which the value of the trust fund exceeded the amount then required by Section 2(b) hereof to be in such fund.

(g) the extent to which the trust fund assets as of the valuation date would be sufficient to cover the pension liabilities, as determined in accordance with SFAS 87.

(7)

A Sec. 3(a)(5)(iv)

(iv) A statement, certified by the actuary, that the amount of the trust fund is or is not less than the amount then required by Section 2(b) hereof to be in such fund.

(v) A statement setting forth:

(aa) The value of the trust fund computed on the basis of market value as of the previous anniversary date of the Plan.

(bb) Additions during Plan year:

(i) payments by 'General Motors' into the fund

(ii) interest and dividends received by the fund

(iii) net investment gains, and

(iv) total additions.

(cc) Pension payments and supplements to retired employes and surviving spouses during Plan year.

(dd) The value of the trust fund computed on the basis of market value as of the anniversary date of the Plan for the year for which the statement is being submitted.

(vi) A schedule setting forth as of March 31 of each year

(aa) the amount of investment of the pension fund in residential real estate mortgages, by type, in communities with General Motors plants and in other communities,

(bb) the amount invested in such residential real estate mortgages during the preceding year in comparison with total new money investments during that year, and

(8)

A Sec. 3(a)(5)(v)(cc)

(cc) a description of such residential mortgages in which funds were invested during the preceding year, by type, separately by plant city areas and in total for other areas.

(vii) A copy of Form 5500 reports and attendant schedules for the Plan will be furnished as soon as practicable after General Motors has filed such report with the Internal Revenue Service.

(6) The Board of Administration shall have no power to add to or subtract from or modify any of the terms of this agreement or the Plan, nor to change or add to any benefit provided by said agreement or Plan, nor to waive or fail to apply any requirement of eligibility for a benefit under said agreement or Plan.

(7) Any case referred to the Board of Administration on which it has no power as rule shall be referred back to the parties without ruling.

(8) No ruling or decision of the Board of Administration in one case shall create a basis for a retroactive adjustment in any other case prior to the date of written filing of each such specific claim.

(9) There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union and its members, the employe or employes involved, and on the Corporation.

The Union will discourage any attempt of its members and will not encourage or cooperate with any of its members, in any appeal to any Court or Administrative Board or Agency from a ruling of the Board of Administration.

(b) Impartial Chairman

(1) The Corporation and the Union shall mutually agree upon and select an Impartial

(9)

A. Sect. 3(b)(1)

Chairman, who shall serve until requested in writing to resign by three Board members.

(2) The Impartial Chairman will not be counted for the purpose of a quorum, and will vote only in case of a failure of the Corporation and the Union to vote through their representatives on the Board, to agree upon a matter which is properly before the Board and within the Board's authority to determine; provided that the Impartial Chairman may vote only on matters involving the processing of individual cases, not on the development of procedures.

(3) The fees and expenses of the Impartial Chairman will be paid one-half by the Corporation and one-half by the Union.

(e) As soon as possible, after the effective date of this agreement, the Union and Corporation members of the Board of Administration shall work out matters such as but not limited to: (1) procedures for establishing Local Pension Committees at the Divisions or plants involved; (2) the authority and duties of such Local Pension Committees; (3) the procedures for reviewing applications for pensions; (4) the handling of complaints regarding the determination of age, service credits, and computation of benefits; (5) procedures for making appeals to the Board; (6) means of verifying service credits to which employes are entitled under the Plan; (7) methods of furnishing information to employes regarding past and future service credits; (8) the amount of time the Union members of the local committees may be permitted to leave their work to attend meetings of the Local Pension Committees; (9) how disputes over total and permanent disability claims will be handled, including disputes, if any, with respect to whether a disabled pensioner engages in gainful employment; (10) the review of pertinent information about the Plan for dissemination to employes; (11) how pension payments will be authorized by the Board. All such

(10)

A. Sect. 3(d)

matters shall be consistent with all other provisions of the Plan and this agreement. The working out of the procedures outlined in this section shall be the responsibility of the Corporation and Union members of the Board; and the Impartial Chairman shall have no power to decide any question with respect thereto.

The provisions of Agreement Implementing Section 3(c) of the Supplemental Agreement, Pension Plan, dated October 14, 1988 which were established by the Board pursuant to the foregoing are incorporated herein by reference and are a part hereof and effective with respect to the administration of the Plan as fully as if set out herein at length.

(d) Except as provided otherwise in this agreement, the general administration of the provisions of the Plan shall be the responsibility of the Corporation.

(e) The Board and any member of the Board, or the Local Pension Committees or any member of the Local Pension Committees, shall be entitled to rely upon the correctness of any information furnished by the Union or the Corporation. Neither the Board nor any of its members, nor the Local Pension Committees nor any of its members, nor the Union nor any officer or other representative of the Union, nor the Corporation nor any officer or other representative of the Corporation shall be liable because of any act, or failure to act, on the part of the Board, or any of its members, or the Local Pension Committees or any of its members, or any person, except that nothing herein shall be deemed to relieve any such individual from any liability for his own fraud or bad faith.

(f) No matter respecting the Plan as modified and supplemented by this agreement or any difference arising thereunder shall be subject to the grievance procedure established in the collective bargaining agreement between the Corporation and the Union,

(11)

A. Sec. 3(f)

except as expressly provided in Paragraph (46) of such collective bargaining agreement.

(g) Credited service shall be granted an employe who is absent from his work, pursuant to Paragraph 24 of the National Agreement, or on a leave of absence under Paragraph 105 of the National Agreement if the leave was granted for the purpose of permitting the employe to engage in the business of or do work for the Local Union, or if the leave was granted under Paragraph 109(a) of the National Agreement for the purpose of permitting the employe to engage in the business of or to work for the International Union while on such leave (in employe on leave under the National Agreement solely to permit the employe to be Manager of this credit union sponsored by the Local Union shall be included hereunder but only with respect to any period while serving in such capacity while on such leave).

An employe eligible for credited service under this section shall be credited with up to 40 hours for each calendar week since October 1, 1950, while he is on such leave, including compensated hours, provided he meets the requirements of the leave, but in no event shall the employe be credited with more than 1700 hours, including compensated hours, in any calendar year.

Section 4. Effect of Retirement on Employment Status and Seniority.

(a) An employe who retires or is retired under the terms of the Plan shall cease to be an employe and shall have his seniority canceled.

(b) An employe who has been retired on a total and permanent disability pension and who thereby has broken his seniority in accordance with subsection (a) above, but, who recovers and has his pension discontinued, shall have his seniority reinstated as

(12)

A. Sec. 4(a)

though he had been on a sick leave of absence during the period of his disability retirement, provided, however, if the period of his disability retirement was for a period longer than the seniority he had at the date of retirement, he shall, upon the discontinuance of his disability pension, be given seniority equal to the amount of seniority he had at the date of such retirement.

(c) If an employe retired for reasons other than total and permanent disability, who has lost seniority in accordance with subsection (a) above, is rehired, such employe will have the status of a new employe.

Section 5. Supplements.

Notwithstanding any other provisions of the Plan, an employe who retires with benefits payable commencing on or after October 1, 1990 while on an approved leave of absence requested by the International Union to permit him to engage in the business of or to work for the International Union, shall not be prevented from receiving benefits under Section 6 of Article II of the Plan solely because the last day he worked for the Corporation was not within five years of the date his pension benefits commence.

Section 6. Deduction of Union Dues.

(a) Notwithstanding any other provisions of the Plan, any retired employe entitled to receive a pension or supplement may, pursuant to his retired employe's written authorization and direction acceptable to the Corporation, authorize the deduction of monthly Union dues from any monthly pension or supplement otherwise payable to him and direct that such dues be remitted to the Union.

(b) An authorization to deduct said monthly Union dues shall become effective as of the first of the second month following the month in which the Corporation

(13)

A. Sect. 6(b)

receives such authorization from the Union, and shall remain in full force and effect until revoked by the retired employe's written notice given to the Corporation, except that during any period when there is not in effect a written collective bargaining agreement or supplement thereto between the Corporation and the Union which permits or provides for the deduction of Union dues from monthly pension benefits payable to a retired employe, such assignment, authorization and direction, if otherwise in effect, shall automatically be suspended for the duration of such period only.

(c) The Union shall indemnify and hold harmless the Corporation against any and all liability, including reasonable attorney's fees, that may arise by reason of the Corporation's compliance with this Section 6.

(d) This Section 6 shall be of no force or effect during any month for which less than one thousand such authorizations are in effect.

Section 7. Foundry Jobs

Any job classification put into effect after September 14, 1973, at a plant identified in Appendix B of the Plan, shall be designated by written agreement between the parties as a foundry job if such classification (a) supersedes or replaces a job classification previously designated as a foundry job, for such plant and (b) becomes applicable to employes who perform substantially the same work as had been performed by employes while on a job classification previously designated as a foundry job for such plant.

(14)

A. Sect. 8

Section 8. Duration of Agreement.

This agreement and Plan shall continue in effect until the termination of the collective bargaining agreement of which this is a part.

In witness hereof, the parties hereto have caused this agreement to be executed the day and year first above written.

(15)

**A. Sec. 8**

(16)

| INTERNATIONAL UNION, UAW | GENERAL MOTORS CORPORATION |
|---|---|
| OWEN BIEBER | ROBERT C. STEMPEL |
| STEPHEN P. YOKICH | LLOYD E. REUSS |
| DONALD J. DAVIS | F. ALAN SMITH |
| DARREL NEWBERRY | CHARLES KATKO |
| CALVIN T. RAPSON | ALFRED S. WARREN, JR. |
| TED MILLER | RICHARD J. O'BRIEN |
| TOM PASCO | JOHN D. BUTLER |
| HENDERSON SLAUGHTER | HOWARD C. CARLSON |
| TOM WEEKLEY | DONALD G. GARDNER |
| RICHARD SHOEMAKER | RICHARD K. McMILLAN |
| LEON BLACKWELL | THOMAS I. MORR |
| GEORGE BROODEUR | ROBERT G. WIENCEK, M.D. |
| LESTER BRYAN | RALPH E. HANDLEY |
| L. E. BENCH | JAMES E. PRYCE |
| MIKE GRACEY | KENNETH J. McCORMICK |
| RICHARD HOALCRAFT | THOMAS E. UTTER |
| JAMES JACKSON | ARTHUR R. SCHWARTZ |
| RICK LYONS | CHARLES E. RYAN |
| DICK MONCZKA | ALAN S. DAWES |
| JUDY MURPHY | ROBERT W. IBHORY |
| PEGGY PERSON | H. EUGENE BROWN |
| GARY WATSON | EDWARD D. DOCKRAME |
| RICHARD SWIM | FRED G. HAROLD |
| HAROLD SHELTON | RICHARD L. HUBER |
| J. D. DALTON | GERALD A. KNECHTEL |
| VINCE DEMME, JR. | ROBERT D. LEE |
| SAM ISAAC | ANTHONY L. MARCHIO |
| KEN LAUBERT | MICHAEL V. TIERNEY |
| CARL PEDERSEN, JR. | JAMES R. WEMMELS |
| ROGER RATLIFF | BETTY R. ANDERSON |
| TOM ROBINSON | JOHN H. BERRY, III |
| DON SARKESIAN | E. PRESTON BOLDEN |
| LEWIS W. SCHULTZ | RICHARD L. BREWER |
| NORA ACORD | SAMUEL L. COLE, JR. |
| ROGER ARCLAM | WILLIAM L. COWELL |
| BILL APPLE | RALPH E. DIBBS, JR. |
| JIM BEARDSLEY | H. STEPHEN DOYLE |
| AL BERGMANN | JOHN I. FLAHART |
| CHARLES BEST | MARK R. FLORA |
| JACK BROWN | JOHN P. FURMAN |
| BENNIE BURGESS | THOMAS A. GAVEL |
| BILL CARSHAW | STEVEN L. GEBBIA |
| JIM CARSON | BEACH B. HALL |

**A. Sec. 8**

(17)

| INTERNATIONAL UNION, UAW | GENERAL MOTORS CORPORATION |
|---|---|
| RUFUS COLEMAN | CARLTON V. MATZELLE |
| JERRY COVILLE | TERRY J. McDOUGALL |
| HAROLD COX | MILTON H. OSBORN, JR. |
| DICK DANIN | GARY N. PHELEY |
| BOB FARLEY | BERNARD J. QUICK |
| EARL FARRELL | JAY C. WILBER |
| JERRY FAULKNER | GERALD J. WINTER |
| MARK FIELDER | W. GARY BRYANT |
| RAY GIBSON | CAROLE G. DAVEY |
| ROY GOFORTH | JENNIE F. HART |
| LARRY GONTKO | BETTY SUE JONES |
| MOSES GREEN | JAMES W. LaLONDE |
| CECIL HAMPTON | SANDRA POPE THOMPKINS |
| LINDA HOALCRAFT | BERNARD G. WEBER |
| JIM HOWE | |
| LARRY JOLLY | |
| DICK JONES | |
| CHRIS MANNING | |
| GEORGE MAFFES | |
| BUD MILLER | |
| CLAYTON MOLL | |
| RON MURRAY | |
| WILBERT NEAL | |
| HERSCHEL NIX | |
| BILL RENO | |
| TOM RICHARDSON | |
| JOB SAWYER | |
| ELLA MAE SCHULTZ | |
| JIM SHROAT | |
| DARRELL SMITH | |
| WILLIAM SMITH | |
| JOE SPRING | |
| LARRY STEVENS | |
| CINDY SUBINICK | |
| KARL SWIFT | |
| KEN TERRY | |
| JIM TITSWORTH | |
| TOM WALSH | |
| DICK WREDEN | |
| JIM WESTNESS | |
| JIM WHEATLEY | |
| WILLIE WILLIAMS | |
| ED YOMAN | |

EXHIBIT A-1

**THE GENERAL MOTORS**
**HOURLY-RATE EMPLOYES**
**PENSION PLAN**

Art. 1

# ARTICLE I

## ESTABLISHMENT OF THE PLAN

General Motors Corporation on behalf of itself and its Divisions and as agent for certain of its directly or indirectly wholly-owned and substantially wholly-owned domestic subsidiaries in accordance with I.R.C. Section 414(b), (c), and (m) will establish, subject to the approval of its Board of Directors, a pension fund either by a trust agreement with a trustee or trustees, or by contract with an insurance company or insurance companies, or both, and with respect thereto shall make such payments or contributions as will be sufficient to maintain the fund on a sound actuarial basis as well as to pay expenses incident to the operation and management of the Plan.

Except as expressly provided in Sections 6, 7, and 8 of Article II and as provided in Article VII and Article IX, the provisions set forth in this Plan are applicable only to employes with seniority on or after October 1, 1990. Employes retired with benefits commencing prior to such date or separated prior to such date, or eligible surviving spouses of such employes, shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date.

Notwithstanding the paragraph immediately above, employes who retired with benefits commencing after September 17, 1990 and prior to October 1, 1990 pursuant to the provisions of Article II of the Plan, shall be considered for purposes of Article II herein as having retired with benefits payable commencing on or after October 1, 1990; the surviving spouse of any employe who died after September 17, 1990 and prior to October 1, 1990, who is otherwise eligible for monthly benefits under the Plan, shall be considered entitled to monthly benefits pursuant to Section 5 of Article II herein; and any such employes

2

3

Art. I

shall be considered eligible for credited service under Article III herein.

**ARTICLE II**

**ELIGIBILITY FOR RETIREMENT AND AMOUNT OF PENSIONS**

**Section 1. Normal Retirement**

Any employe who shall have attained the age of 65, shall have completed one or more years of credited service as is provided in Article III and shall cause active service, shall be entitled to receive a pension.

**Section 2. Early Retirement**

(a)(1) An employe who has attained age 60 but not age 65, and who has 10 or more years of credited service, may retire at the option of the employe.

(2) An employe who has attained age 55 but not age 60, and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, may retire at the option of the employe.

(3) An employe who has 30 or more years of credited service may retire at the option of the employe.

(b) An employe who has attained age 55 (age 50 for an employe who is laid off on or after October 1, 1984 as a result of a plant closing where no other General Motors plans are in the same geographical area) but not age 65 and who has 10 or more years of credited service may be retired under mutually satisfactory conditions as set forth hereinafter in the Standards applicable to such retirement.

4

Art. II, 3

**Section 3. Total and Permanent Disability Retirement**

(a) An employe who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension as hereinafter provided.

(b) An employe shall be deemed to be totally and permanently disabled only if he is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employe is found to be wholly and permanently prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where he has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or nonoccupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employe becomes totally and permanently disabled after he has accumulated at least 5 years of seniority following his separation from service in the armed forces.

(c) Any disability pensioner may be required to submit to medical examination at any time during retirement prior to age 65, but not more often than semi-annually, to determine whether the pensioner is eligible for continuance of the disability pension. If on the basis of such examination it is found that the pensioner is no longer disabled or if the pensioner engages in gainful employment, except for purposes of rehabilitation as determined by the Corporation, the pensioner will be deemed recovered and his disability pension will cease. In the event the disability pensioner refuses to submit to medical examination the pension will be discontinued until the pensioner is examined.

5

Art. II, 4(a)(2)

| Age When Pension Commences | Percentage* |
|---|---|
| 42 | 21.0% |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employe is under the age he will attain at his next birthday.

If an employe:

(ii) with 30 or more years of credited service retires at his option, or

(iii) whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more retires at his option,

the monthly basic benefits otherwise payable to him after age 62 and one month shall be redetermined without any such reduction.

Art. II, 4

## Section 4. Amount of Pensions

(a) (1) The monthly pension payable to an employe retired pursuant to the provisions of Sections 1, 2, or 3 of this Article II with benefits payable commencing on or after October 1, 1990 shall be a basic benefit for each year of credited service that the employe had at the date of his retirement, determined by his Benefit Class Code and based on the month for which payment is being made as set forth in the table immediately following:

| Retirement With Benefits Payable Commencing October 1, 1990 and After | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing | | |
|---|---|---|---|---|
| | | 10-1-90 through 9-1-91 | 10-1-91 through 9-1-92 | 10-1-92 and After |
| | A | $ 28.35 | $ 29.50 | $ 30.70 |
| | B | 28.60 | 29.75 | 30.95 |
| | C | 28.85 | 30.00 | 31.20 |
| | D | 29.10 | 30.25 | 31.45 |

(2) The monthly pension benefit payable to an employe who retires at his option, at a date selected by the employe shall be multiplied by a percentage as set forth in the following table:

Art. II, 4(b)(3)

(3) The basic benefit payable in any month will not be reduced below an amount which results in the early retirement supplement paid to a participant in such month; under Article II, Section 6 (a) (1), exceeding the old age insurance benefits, unreduced on account of age, payable under Title II of the Social Security Act, as amended.

(b) A temporary benefit for each year of credited service up to 30 shall be payable in addition to the monthly basic pension payable to an employe retired under mutually satisfactory conditions, or totally and permanently disabled pursuant to Section 2 (b) or Section 3 above, as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount | |
|---|---|---|
| | Per Year of Credited Service | Maximum |
| | $ | $ |
| October 1, 1990 through September 1, 1991 | 25.00 | 750.00 |
| October 1, 1991 through September 1, 1992 | 27.20 | 816.00 |
| October 1, 1992 and After | 29.30 | 879.00 |

(c) The monthly temporary benefit determined in (b) above shall be payable until age 62 and one month, or until the age at which the employe becomes, or could have become eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age. At such age the temporary benefit shall cease to be payable.

8

(d) An employe discharged for cause after such employe is eligible to retire at his option under Section 2 (a) of this Article II shall be entitled to the benefit provided under Section 4 (a) of this Article II as though he had retired at his option.

(e) The amount of any monthly pension benefit otherwise payable to the employe at retirement, or earlier commencement, will be reduced by the value of any past and future benefits paid or payable to any alternate payee(s) under a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).

The actuarial value will be used to determine any amount to be paid to any such payee(s), if applicable, and the remaining benefit entitlement of the employe.

Section E. Pension Benefits to Employe's Surviving Spouse

(a) In lieu of the monthly basic benefit otherwise payable, an employe who retires or is retired pursuant to the normal, early or total and permanent disability retirement provisions of this Article II, or who breaks seniority and is eligible for a deferred pension pursuant to the provisions of Section 2 of Article VII hereof, shall be deemed to have elected automatically a reduced amount of monthly basic benefit to provide that, if his designated spouse shall be living at his death after such election shall have become effective, a survivor benefit shall be payable to such spouse during the spouse's further lifetime. In the event such spouse predeceases such employe, or they are divorced by court decree and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such employe may cancel the survivor benefit election and have his monthly basic pension benefit restored to the amount payable without such election, effective the first day of the third month following the month in

Art. II, 4(d)

9

Art. II, §6a

which the Corporation receives (i) evidence satisfactory to the Corporation of the spouse's death, or (ii) such employee's written revocation of the election because of divorce, on a form approved by the Corporation and accompanied by evidence satisfactory to the Corporation of a final decree of divorce.

The automatic election provided in this subsection (a) shall become effective on the later of (i) the commencement date of the employee's monthly pension benefit, (ii) the first day of the month following the month in which the employee attains age 55 (except that this item (ii) shall not apply to an employee with 30 or more years of credited service or to an employee who retires with benefits payable prior to age 55 pursuant to Section 2(b) of this Article II), or (iii) the first day of the month following the month in which the employee has been married one year if he is married when the election would otherwise become effective but such marriage has been in effect less than one year at that date.

An employee may prevent the automatic election provided in this subsection (a), (i) at the time of application for retirement benefits, or (ii) if later, during the month, prior to, that in which he attains age 55 (except that this item (ii) shall not apply to an employee with 30 or more years of credited service or to an employee who retires with benefits payable prior to age 55 pursuant to Section 2(b) of this Article II) by executing a specific written rejection of such election, which includes the written consent of his spouse witnessed by the plan representative or a notary public, on a form approved by the Corporation and filing it with the Corporation.

Information regarding this coverage is included in the summary plan description, which will be provided to each employee. Within a reasonable period prior to the annuity starting date, each participant shall be

10

Art. II, §6a

provided a written explanation of: (i) the terms and conditions of the surviving spouse coverage; (ii) the participant's right to make and the effect of an election to waive the surviving spouse coverage; (iii) the rights of the participant's spouse; and (iv) the right to make and the effect of revocation of a previous selection to waive the surviving spouse coverage.

(b) The beneficiary of a survivor benefit election shall be only the person who is the employee's spouse at such time and who has been his spouse for at least one year immediately prior to the effective date of such election.

(c) A survivor benefit election shall be revoked automatically upon the death of the employee or his designated spouse, or both, prior to the effective date of the election.

(d) A survivor benefit election shall be irrevocable at and after its effective date if the employee and his designated spouse shall be living at such date, except as otherwise provided in Section 5(d) of this Article II.

(e) For an employee who makes a survivor benefit election or who is deemed to have made such election under this Section 5, the reduced amount of his monthly basic benefit referred to in (d) above shall be equal to an amount determined by multiplying the monthly basic benefit otherwise payable to the employee by 95% if the employee's age and this eligible spouse's age are the same; except that, in the case of an employee whose basic benefits are subject to redetermination at age 62 and one month the amount of reduction in his monthly basic benefit before such age for the survivor benefit election shall be based on the monthly basic benefit payable to such employee after age 62 and one month. Such percentage shall be increased by one-half of one percent (1/2%) (up to a maximum of 100%) for each 12 months in excess of

11

Art. II, 6(e)

five (5) years; that the spouse's age exceeds the employe's age and shall be decreased by one-half of one percent (1/2%), for each 12 months in excess of five (5) years that the spouse's age is less than the employe's age.

(f) The survivor benefit payable to the surviving spouse of a retired employe who has completed an election or who is deemed to have made an election under this Section 5, and who dies after such election becomes effective, shall be a monthly benefit for the further lifetime of such surviving spouse equal to 60% of the reduced amount of such employe's monthly basic benefit as determined in (e) above, except that the survivor benefit payable to the surviving spouse of an employe whose basic benefits are subject to redetermination at age 62 and one month pursuant to Section 4 (e) of this Article II, shall be based on the monthly basic benefit payable to such employe after age 62 and one month.

(g) The surviving spouse of an employe

(i) who dies on or after attaining age 65, or on or after attaining age 55 and after the employe is eligible to retire at his option under Section 2 (a) (1) or 2 (a) (2) of this Article II, or at any age with 30 or more years of credited service, but before the first day of the month following the due on which the employe retires or before the commencement date of the employe's monthly pension in the case of an employe who retires at his option and defers the receipt of his monthly pension, and

(ii) who, if he had retired at the date of his death, would have been eligible for the election under subsection (a) of this Section 5,

shall be entitled to a monthly benefit during the spouse's lifetime, terminating with the last monthly payment before the spouse's death. The monthly

12

Art. II, 6(g)(ii)

benefit payable to the surviving spouse shall be the amount such spouse would have been entitled to receive under subsection (f) of this Section 5, if the employe had retired on the date of his death under Sections 1, 2 (a) (1), 2 (a) (2) or 2 (a) (3), whichever is applicable, of this Article II with benefits commencing the first of the following month and had effectively made the election under subsection (a) of this Section 5.

(h) The death of an otherwise eligible employe who has retired under Section 3 of this Article II, occurring on or after his attaining age 55, but before the first day of the month following the date on which he dies, shall not disqualify an otherwise eligible surviving spouse from receiving a benefit hereunder.

Section 6. Supplements

(a) An employe who retires under Section 2 (other than an employe referred to in Section 4 (a) of this Article II, unless the Corporation or an Impartial Umpire under an applicable collective bargaining agreement determines his discharge should not result in his being ineligible for benefits under this Section 6), or 3 of this Article II, and who files his application for a pension within five years of the last day he worked for the Corporation and who agrees to restrict his participation in the work force before age 62 and one month as provided in (e) below, will receive, in addition to his pension, certain supplements as set forth below:

(i) If the employe retires under Section 2 or 3 of this Article II with 30 or more years of credited service at the date of his retirement, he shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to his monthly pension under this Plan will equal the amount of total monthly benefit applicable to him as

13

## Art. II, 6(a)(1)

provided in the table set forth below, subject to subsequent provisions of this Section 6:

| Retirement With Benefits Payable Commencing | Total Monthly Benefit Rate For Determining Monthly Early Retirement Supplement Prior to Age 62 and One Month For Retirements With 30 or More Years of Credited Service | | |
|---|---|---|---|
| | 10-1-90 through 9-1-91 | 10-1-91, through 9-1-92 | 10-1-92, and After |
| October 1, 1990 and After | $ 1,600 | $ 1,700 | $ 1,800 |

(2) If the employee retires at his option after attaining age 55 with benefits payable commencing on or after October 1, 1990 with less than 30 years of credited service, he shall be entitled to a monthly interim supplement until he attains age 62 and one month equal to the amount applicable to him as provided immediately below for each year of credited service that he has at the time of his retirement, subject to the provisions of (b), (c) and (e) of this Section 6.

14

## Art. II, 6(a)(2)

| Age at Retirement | Monthly Amount* and Effective Date of Interim Supplement Payable Prior to Age 62 and One Month for Each Year of Credited Service | | |
|---|---|---|---|
| | Retired With Benefits Payable Commencing on or After October 1, 1990 | Retired With Benefits Commencing | |
| | 10-1-90 | 10-1-91 | 10-1-92 |
| 55 | $ 11.00 | $ 12.00 | $ 12.90 |
| 56 | 12.95 | 14.10 | 15.20 |
| 57 | 15.70 | 17.05 | 18.40 |
| 58 | 18.40 | 20.00 | 21.55 |
| 59 | 20.55 | 22.40 | 24.10 |
| 60 | 23.75 | 25.85 | 27.85 |
| 61 | 23.75 | 25.85 | 27.85 |

*Provided for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age he will attain at his next birthday.

(b) The early retirement supplement under provision (a)(1) of this Section 6 for an employee who retires while this option shall be calculated assuming that his basic pension commences immediately after retirement and such early retirement supplements and the interim supplement number provision (a)(2) of this Section 6 shall not be reduced for any month prior to age 62 and one month, for which he becomes or could have become eligible for a Federal Social Security benefit, by an amount equal to the amount of the temporary benefit to which he would have been entitled if he had retired under Section 2(b) of this Article II.

15

Art. II, 6(c)

(c) The early retirement supplement under provision (a) (1) of this Section 6 for an employe who retires under Section 2 (b) or Section 3 of this Article II shall be calculated on the assumption that he will receive a temporary benefit until age 62 and one month, even if such temporary benefit is not received by the employe until such age because of his entitlement to Social Security Benefits.

(d) The early retirement supplement under provision (a) (1) of this Section 6 for an employe who, does not prevent the automatic election of the surviving spouse coverage provided under Section 5 of this Article II shall be calculated on the basis of the monthly pension he would have received if he had prevented such automatic election.

(e) Any of the supplements to which an employe is entitled shall commence on the first day of the month following the date on which the employe retires and shall be payable, monthly thereafter until and including the first day of the month in which he dies, or his pension ceases for any other reason, or, he is reemployed by the Corporation, or he attains age 62 and one month, whichever occurs first, provided, however, that if an employe entitled to receive a supplement has earnings after retirement in excess of the following annual earnings limitation in any calendar year before he attains age 62 and one month, such earnings being defined for this purpose as the type counted for the earnings test under the Federal Social Security Act or the corresponding type in any future Federal legislation amending, superseding, supplementing or incorporating the Federal Social Security Act, a penalty equal to double the amount by which such earnings exceed the amount permitted shall be charged against each succeeding monthly supplement which he would otherwise be entitled to receive until the full amount of such penalty is

16

Art. II, 6(e)

satisfied, it being understood that penalties and charges herein shall be cumulative if appropriate:

| Calendar Year | Annual Earnings Limitation Amount |
| --- | --- |
|  | $ |
| 1990 | 10,000 |
| 1991 | 15,000 |
| 1992 | 15,000 |
| 1993 | 15,000 |

An employe receiving a monthly early retirement supplement or interim supplement may be required to certify whether his earnings have been in excess of the permitted amount and to furnish verification of the amount of his earnings. Unless repaid by the employe in a lump sum, any overpayments of a supplement made after an employe incurred a penalty because of excess earnings, in accordance with the preceding paragraph, shall be deducted from future monthly benefits payable to him under this Pension Plan.

The annual earnings limitation provisions of this subsection (e) shall not be applicable to any mutually satisfactory retirement with benefit payable commencing on or after October 1, 1990, and prior to September 14, 1993.

(f) If a retired employe has been receiving a pension under Section 3 of this Article II and has been receiving a supplement and on the basis of medical evidence satisfactory to the Corporation, it is found that he is no longer totally and permanently disabled and his seniority is restored, or if he is reemployed by the Corporation, he shall not thereby forfeit any right he may thereafter have to receive a supplement if he thereafter retires under this Pension Plan.

(g) If the total of the employe's monthly pension under this Pension Plan and his monthly early

17

Art. II, 6(g)

retirement supplement or interim supplement receivable as computed, above would exceed 70% of his final base pay, his monthly supplement (but not his monthly pension) shall be reduced to the extent required so that such monthly pension, plus his supplement will equal 70% of this final base pay. For this purpose, an employe's final base pay shall mean 173 1/3 times his Base Hourly Rate as defined in Article X.

**Section 7. Special Benefit**

(a) A retired employee or a surviving spouse, (i) age 65 or older, or (ii) under age 65 and enrolled in the voluntary "Medicare" coverage that is available under the Federal Social Security Act by making contributions (in either case excluding the spouse of a former employee who received a deferred vested pension benefit under Article VII of the Plan), who is receiving a monthly benefit under Article II of the Plan which commenced prior to October 1, 1979, subject to (d) below, shall receive a monthly special benefit equal to:

(i) the lesser of $28.00, or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1990;

(ii) the lesser of $31.00 or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1991;

(iii) the lesser of $34.00 or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1992;

(iv) the lesser of $38.50 or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1993;

(b) In no event shall such payment commenced prior to the first day of the month following the earlier of

(i) the month during which age 65 is attained; or

18

Art. II, 7(b)

(ii) for enrollment effective prior to October 1, 1990 receipt by the Corporation of application on a form provided for this purpose from an otherwise eligible individual under age 65, except that, with respect to an otherwise eligible individual under age 65, payment shall commence with the first month of such enrollment, but in no event prior to October 1, 1979.

(c) Not more than one such payment shall be made to any individual for any one month. No such payment shall be made to any individual under age 65 for any month, such individual is not enrolled for such voluntary "Medicare" coverage. No such payment shall be made under this Plan to any individual who retires with benefits payable commencing on or after October 1, 1979.

(d) Effective January 1, 1991, the special benefit payable to, an individual who is not enrolled in "Medicare" Part B as of October 1, 1990, but who was receiving a special benefit, will be limited to $28.00 per month. Such an individual will become entitled to the schedule of payments in subsection (a) above, upon proof of enrollment in "Medicare" Part B. Thereafter, continued receipt of a special benefit will be contingent on maintenance of "Medicare" Part B enrollment.

(e) For an individual, enrolled in "Medicare" Part B as of October 1, 1990, or who first becomes eligible for "Medicare" Part B on or after October 1, 1990, receipt of a special benefit on and after January 1, 1991 is contingent upon continued enrollment in "Medicare" Part B.

**Section 8. Benefits for Employes Who Retired With Benefits Payable Commencing Prior to October 1, 1990.**

An employe who retired under Article II of the Plan with benefits payable commencing prior to October 1, 1990, or the eligible surviving spouse of

19

Art. II, 8

such an employe, shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date, except that

(ii) (1) Benefits payable to such retired employes or surviving spouses shall be increased to the extent necessary to provide monthly benefits equal to the benefits which would have been payable had the basic pension benefits payable to the employe after age 65 been based on the following table:

| Retirement With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing October 1, 1990 and After $ |
|---|---|---|
| Prior to October 1, 1979 | N/A | 20.00* |
| October 1, 1979 through September 1, 1980 | A | 21.25 |
| | B | 21.50 |
| | C | 21.75 |
| | D | 22.00 |
| October 1, 1980 through September 1, 1981 | A | 21.35 |
| | B | 21.60 |
| | C | 21.85 |
| | D | 22.10 |
| October 1, 1981 through September 1, 1984 | A | 21.45 |
| | B | 21.70 |
| | C | 21.95 |
| | D | 22.20 |
| October 1, 1984 through September 1, 1985 | A | 24.10 |
| | B | 24.35 |
| | C | 24.60 |
| | D | 24.85 |

*Including, if applicable, $1.00 waived for election of a special survivor option.

(Continued On Next Page)

20

(Continued From Preceding Page)

Art. II, 8(a)(1)

| Retirement With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing October 1, 1990 and After $ |
|---|---|---|
| October 1, 1985 through September 1, 1986 | A | 24.20 |
| | B | 24.45 |
| | C | 24.70 |
| | D | 24.95 |
| October 1, 1986 through September 1, 1987 | A | 24.30 |
| | B | 24.55 |
| | C | 24.80 |
| | D | 25.05 |
| October 1, 1987 through September 1, 1988 | A | 27.30 |
| | B | 27.55 |
| | C | 27.80 |
| | D | 28.05 |
| October 1, 1988 through September 1, 1989 | A | 27.40 |
| | B | 27.65 |
| | C | 27.90 |
| | D | 28.15 |
| October 1, 1989 and prior to October 1, 1990 | A | 27.50 |
| | B | 27.75 |
| | C | 28.00 |
| | D | 28.25 |

(2) Benefits payable to employes retired on and after October 1, 1973, shall be based on the Benefit Class Code applicable to the employe, determined as though the maximum base hourly rate of the employe's job classification had included the amount of any wage inequity adjustment made applicable to such job classification on or after September 14, 1973, and prior to the employe's loss of seniority.

21

Art. II, 8(a)(3)

(3) If an employee whose monthly basic benefit otherwise would have been redetermined at age 62 attains age 62 on or after March 1, 1982, such redetermination shall be effective at age 62 and one month.

(b) Any temporary benefits payable to such retired employee until age 65 if retired with benefits payable commencing before March 1, 1974, or age 62 if retired with benefits payable commencing on or after March 1, 1974 or age 62 and one month for a retired employee who attains age 62 on or after March 1, 1982, or, in any case, if earlier, until the age at which the employee becomes or could have become eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit, for age shall be increased to the extent necessary to provide monthly temporary benefits equal to the temporary benefits which would have been payable had the temporary benefits payable to the employee prior to such age 65 (or age 62 or age 62 and one month) or earlier age been based on the following:

22

Art. II, 8(b)

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount* | |
| --- | --- | --- |
| | Per Year of Credited Service | Maximum |
| | $ | $ |
| Prior to September 1, 1964 | 11.50 | 300.00 |
| September 1, 1964 and prior to October 1, 1967 | 12.00 | 300.00 |
| October 1, 1967 and prior to October 1, 1970 | 12.25 | 306.25 |
| October 1, 1970 and prior to March 1, 1974 | 12.75 | 318.75 |
| March 1, 1974 and prior to October 1, 1976 | 13.75 | 343.75 |
| October 1, 1976 and prior to October 1, 1978 | 14.25 | 356.25 |
| October 1, 1978 and prior to October 1, 1979 | 15.25 | 381.25 |
| October 1, 1979 and prior to October 1, 1980 | 16.25 | 406.25 |
| October 1, 1980 and prior to October 1, 1981 | 17.25 | 431.25 |
| October 1, 1981 and prior to January 1, 1983 | 18.25 | 456.25 |
| January 1, 1983 and prior to October 1, 1985 | | 547.50 |

*Benefit payable for months, commencing October 1, 1990.

(Continued On Next Page)

23

Art. II, 8(b)

(Continued From Preceding Page)

| Retirees With Benefits Payable Commencing | Monthly Temporary Benefit Amount* | |
| --- | --- | --- |
| | Per Year of Credited Service $ | Maximum $ |
| October 1, 1985 and prior to October 1, 1986 | 19.25 | 577.50 |
| October 1, 1986 and prior to October 1, 1987 | 20.25* | 607.50 |
| October 1, 1987 and prior to October 1, 1988 | 20.45 | 613.50 |
| October 1, 1988 and prior to October 1, 1989 | 21.55 | 646.50 |
| October 1, 1989 and prior to October 1, 1990 | 22.65 | 679.50 |

*Benefit payable for months commencing October 1, 1990.

(c) (1) An employe who retired under Article II of this Plan with 30 or more years of credited service who is receiving a monthly supplement which commenced prior to October 1, 1990 shall receive an increase to such monthly supplement as follows:

| | Amount of Increase* | |
| --- | --- | --- |
| Effective Date of Increase | Payable to Age 62 and One Month $ | Payable Between Ages 62 and 64 One Month $ |
| October 1, 1990 | 75.00 | 37.50 |

*This increase will not result in a total monthly benefit of less than $1,100 for months prior to age 62 and one month, or $550 for months between ages 62 and one month and 64.

24

Art. II, 8(c)(1)

The amount of any monthly supplement payable to an employe who retired under Article II of the Plan with benefits commencing prior to October 1, 1990 shall be redetermined to the amount of supplement which would have been payable had the applicable benefit rates set forth in this Section 8 been in effect when such employe's benefits commenced. If such retired employe is entitled as of October 1, 1990 to receive Social Security benefits, and if he became so entitled before October 1, 1990 any increase in the rate of temporary pension provided in provision (b) of this Section 8 shall not be considered in redetermining his supplement until he ceases to be so entitled.

(2) An employe who retired under Article II of this Plan at his option after attaining age 55 with less than 30 years of credited service who is receiving an interim supplement which commenced prior to October 1, 1990 shall receive, for months commencing on and after October 1, 1990, an increase to such interim supplement, as follows:

| Age at Retirement | Monthly Increase Per Year of Credited Service $ |
| --- | --- |
| 55 | 0.55 |
| 56 | 0.65 |
| 57 | 0.80 |
| 58 | 0.95 |
| 59 | 1.05 |
| 60 | 1.20 |
| 61 | 1.40 |

(d) The survivor benefit payable to the surviving spouse of a retired employe who has completed an election of a special survivor option and who dies after such election becomes effective, shall be a monthly benefit for the further lifetime of such surviving spouse equal to:

25

Art. II, 8(d)(1)

(1) $7.00 for each year of credited service that such retired employe had at the date of his retirement, with respect to benefits payable for any month commencing October 1, 1990 through September 1, 1991.

(2) $8.00 for each year of credited service that such retired employe had at the date of his retirement, with respect to benefits payable for any month commencing October 1, 1991 through September 1, 1992, and

(3) $9.00 for each year of credited service that such retired employe had at the date of his retirement, with respect to benefits payable for any month commencing on or after October 1, 1992.

(e) An employe who retired under Article II of the Plan, or who is eligible for a deferred pension pursuant to the provisions of Section 2 of Article VII of the Plan, and who has surviving-spouse coverage in effect but whose designated spouse predeceases him, may have his monthly basic pension benefit restored to the amount payable without such coverage, effective the first day of the third month following the month in which the Corporation receives evidence satisfactory to the Corporation of the spouse's death.

(f) In lieu of receiving a reduced amount of any increase in benefits otherwise payable to him under this Section 8 on or after April 1, 1971 in order to provide an increase in the amount of survivor benefit otherwise payable, an employe who retired under Article II of the Plan with benefits payable commencing prior to November 23, 1970, who is divorced by court decree, and for whom the terms of a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) do not expressly prohibit cancellation of the survivor annuity, from his designated spouse for whom he has a survivor benefit

26

Art. II, 8(f)

coverage in effect, may elect to receive the full amount of such increase. To make such election he must complete a form approved by the Corporation and file it with the Corporation, accompanied by evidence satisfactory to the Corporation of a final decree of divorce, in which case such election shall become effective with respect to benefits falling due for months commencing on the first day of the third month following the month in which the Corporation receives such completed election form and final decree of divorce.

(g) An employe who retired or retires under Article II of the Plan with benefits payable commencing on or after January 1, 1962, who marries, or remarries, subsequent to the earliest date a survivor benefit coverage was in effect, or was not in effect on such date solely because the retired employe was not then married, may elect, or re-elect, a survivor benefit coverage. Any such coverage, and the benefits thereunder, shall be provided under the terms and conditions of the Plan in effect at the time of the employe's retirement. Such coverage shall become effective on the first day of the third month following the month in which the Corporation receives a completed election form, but in no event before the first day of the month following the month in which the retired employe has been married one year.

No election provided hereunder shall become effective under any circumstance for any retired employe, whose completed election form is received by the Corporation after the first day of the month in which the retired employe has been married one year.

This subsection (g) also shall be applicable to an employe retired with benefits payable commencing on or after October 1, 1990.

27

Art. II, §8(b)

(b) Monthly benefits payable under this Section 8 on and after October 1, 1990 shall not be limited by the 70% benefit limitation in Section 6(g) of this Article II.

(f) The monthly amount of any lifetime supplement payable to an employe retired with benefits payable commencing on or after March 1, 1974 with 30 or more years of credited service shall be $35.00.

Section 9. Employe Not Actively at Work.

The absence of an employe from active work at the time such employe would be eligible to retire under the Plan shall not preclude the employe's retirement without return to active work.

Section 10. Joint and Survivor Coverage

(a) In lieu of the monthly basic benefit otherwise payable, an employe who retires pursuant to the provisions of Section 3 of this Article II who is under age 55 and has less than 30 years of credited service shall be deemed to have elected automatically a reduced amount of monthly basic benefit, up to and including the month in which he dies or attains age 55, whichever occurs first, and a monthly survivor's benefit, beginning on the first day of the month after the retired employe would have reached age 55 if he dies before the first day of the month after he would have reached age 55, shall be payable to his designated spouse during the further lifetime of the spouse.

28

Art. II, §10(e)

(c) The automatic election provided in this Section 10 shall be applicable only with respect to a spouse to whom the employe is married on the date of such election and only if the retired employe and his spouse shall have been married throughout the one-year period ending on the date of the retired employe's death.

(d) An employe may prevent the automatic election provided in this Section 10 at the time such election would otherwise be deemed to have been made, as set forth in subsection (b) of this Section 10, by specific written rejection which includes the written consent of his spouse witnessed by the plan representative or a notary public on a form approved by the Corporation.

(e) In any event, the election shall automatically be cancelled.

(i) If the employe's disability retirement status terminates other than by death prior to the first day of the month after the retired employe attains age 55; or

(ii) If the retired employe survives on a disability retirement status until the first day of the month after he attains age 55, at which time the coverage described in Section 5 of this Article II becomes applicable.

(f) The amount of the monthly basic benefit payable to an employe deemed to have made the election provided hereunder shall be determined by reducing, actuarially, the amount of such benefit for the cost of the survivor benefit payable in the event of the retired employe's death before the first of the month following the attainment of age 55. The actuarial reduction shall be based on the age of the retired employe and his spouse (the age of each being

29

**Art. II, 10(f)**

determined as the age at his or her birthday nearer the date on which the benefits commence) and shall reflect the higher mortality associated with being disabled. Reduction factors at selected ages for disability survivor coverage before age 55 are set forth in the following table:

| Age of Employe When Benefits Commence | Age Difference Between Disabled Employe and Spouse — Spouse Is: | | | | |
|---|---|---|---|---|---|
| | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
| | % | % | % | % | % |
| 30 | 8.6 | 8.1 | 7.5 | 6.7 | 5.9 |
| 35 | 10.4 | 9.9 | 9.2 | 8.3 | 7.2 |
| 40 | 12.5 | 11.8 | 11.0 | 10.0 | 8.8 |
| 45 | 14.3 | 13.5 | 12.7 | 11.6 | 10.3 |
| 50 | 13.9 | 13.2 | 12.4 | 11.4 | 10.2 |
| 51 | 13.1 | 12.5 | 11.7 | 10.8 | 9.7 |
| 52 | 10.4 | 9.9 | 9.3 | 8.6 | 7.7 |
| 53 | 3.4 | 3.2 | 3.0 | 2.8 | 2.5 |
| 54 | 3.4 | 3.3 | 3.1 | 2.8 | 2.5 |

*NOTE: Actuarial reduction factors for ages not shown will be calculated on the same basis as the factors shown.*

(g) The amount of the monthly benefit payable to the surviving spouse of a retired employe deemed to have made the election specified hereunder shall be 50% of the amount of the monthly basic benefit payable to the retired employe after the reduction provided in subsection (f) of this Section 10.

(h) Anything in the Plan to the contrary notwithstanding, if the designated spouse of a retired employe deemed to have made the election provided

30

**Art. II, 10(h)**

hereunder shall predecease, such retired employe, or they are divorced by court decree and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such retired employe shall have his monthly basic benefit restored to the amount payable without such election, effective the first day of the third month following the month in which the Corporation receives evidence satisfactory to the Corporation of the spouse's death or divorce.

(1) No benefit shall be payable under this Section 10 for any month for which benefits are payable under Article II, Section 5(b) or Section 11 of this Plan.

(D) Information regarding this coverage is included in the summary plan description, which will be provided to each employe. Within a reasonable period prior to the annuity starting date, each participant shall be provided a written explanation of: (i) the terms and conditions of the surviving spouse coverage; (ii) the participant's right to make and the effect of an election to waive the surviving spouse coverage; (iii) the rights of the participant's spouse; and (iv) the right to make and the effect of a revocation of a previous election to waive the surviving spouse coverage.

Section 11. Pre-Retirement Survivor Coverage to Comply With the Retirement Equity Act of 1984.

(a) An employe who:

(i) has either 5 or more years of credited service, or 5 years of service, as provided under Article III, Section 5 or Section 6 ... ; or

(ii) breaks seniority on or after October 1, 1990 and who is eligible for a deferred pension under Article VII, Section 2,

31

Art. II, 11(a)(ii)

and in either case is not eligible for the survivor benefit coverage provided under Section 5 of this Article II, shall have the pre-retirement survivor coverage described herein.

Such coverage shall remain in full force and effect until the date on which the employe or former employe becomes eligible for, the survivor benefit coverage provided under Article II, Section 5, at which time the pre-retirement survivor coverage described herein shall cease to be effective.

In the event the employe or former employe predeceases, the designated spouse while the pre-retirement survivor coverage provided hereunder is in effect, the designated spouse shall be eligible, during the further lifetime of such spouse, for a monthly benefit commencing on the first of the month following the month in which the employe or former employe would have become eligible, except for the fact that he had died, to retire-at the option of the employe.

The amount of any such monthly survivor benefit shall be determined by the basic benefit rate in effect for the employe on the date of death of such employe, or the date seniority broke for a former employe.

(b) The survivor coverage provided hereunder for an employe or former employe shall be effective on the date the employe or former employe attains 5 years of credited service or "service" as provided under Article III, Section 6.

(c) The survivor coverage provided hereunder shall be effective with respect to a spouse to whom the employe or former employe is married, but only if the couple shall have been married throughout the one-year period ending on the date of the employe's or former employe's death.

32

Art. II, 11(d)

(d) Subsections (b) and (c) notwithstanding, if an employe or former employe marries or remarries, such coverage shall be in effect in favor of his spouse upon such marriage or remarriage, unless, in the case of remarriage, a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) requires such coverage to remain in effect for the former spouse. The effective date of any such coverage shall be in accordance with subsection (c) of this Section 11.

(e) In the event of divorce, the employe or former employe can revoke the coverage provided hereunder without spousal consent, unless a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) provides to the contrary.

(f) The coverage provided hereunder shall be canceled automatically on the date when any employe or former employe becomes eligible for the survivor coverage provided under the provisions of Article II, Section 5 of the Plan.

(g) The monthly benefit amount payable hereunder to any eligible surviving spouse shall be 50% of the monthly amount of the basic benefit as determined in Article VII, Section 2(b) otherwise payable at the (i) date of death to the employe, or (ii) date seniority broke for a former employe, after any reduction provided in Section 2(c) of Article VII.

(h) No benefit shall be payable under this Section 11 for any month for which benefits are payable under Article II, Section 5 or Section 10 of this Plan.

(i) Information regarding the coverage provided hereunder is included in the summary plan description, which will be provided to each employe covered by the Pension Plan, in accordance with The Employee Retirement Income Security Act (ERISA).

33

Art. II, 11(f)

e.(f) The pre-retirement survivor coverage provided hereunder will apply to eligible employes and former employes separated from service:

(1) whose last day worked for the Corporation was on or after October 1, 1976, and

(2) who have entitlement to but have not commenced receipt of deferred vested benefits, and

(3) who are alive as of August 23, 1984.

ARTICLE III
CREDITED SERVICE

Section 1. Credited Service Subsequent to October 1, 1950

(a). (1) Credited service shall be computed for each calendar year for each employe, on the basis of total hours compensated by any plant or Division of the Corporation during such calendar year while the employe has unbroken seniority. Employment while covered under The GM Special Pension Plan shall not be credited thereunder, except for an employe with seniority on March 1, 1988, who has not received a cash payment representing his accrued benefit under The GM Special Pension Plan. Any calendar year in which the employe has 1700 or more compensated hours shall be counted a full calendar year. Where the employe's total hours compensated during a calendar year are less than 1700, a proportionate credit shall be given to the nearest 1/10 of a year.

(2) For the purpose of computing credited service, hours of pay at premium rate shall be computed as straight time hours.

(b) For the purpose of computing compensated hours under subsection (a) of this Section

34

Art. III, 1(b)(1)

(1) An employe with seniority on or after January 1, 1968 who is absent from work during any calendar year thereafter because of layoff or while on a Corporation-approved sick leave, shall be credited with 40 hours for each complete calendar week of such absence during such year in addition to any other hours credited provided that such employe's shall have received pay from the Corporation during that year for at least 170 hours, and provided further, that if such absence commences in calendar year 1970, or later, and such layoff or sick leave continues into the following year he shall be credited with 40 hours for each complete calendar week of absence in the following year, not to exceed 1530 hours of credit for all such absence related to receipt of such pay from the Corporation in the first year.

An employe who returns to work on or after layoff and returns to work on or after October 1, 1990 shall become eligible for the 1530 hours of credit hereunder, applicable during a sick leave or layoff, on the later of: (1) receipt of pay from the Corporation for, at least 170 hours, or (2) the day next following the 12th week of pay from one or more GM plants within a calendar year. If the employe receives pay from the Corporation for 170 or more hours prior to the 12th week in (2) immediately above, the employe shall become eligible for "bank" hours equal to the number of hours worked since recall, plus any "bank" hours to which he was entitled immediately before such return to work, but in no case to exceed 1530 hours.

An employe who returns to work on or after October 1, 1979 and receives pay for a period of less than 170 hours and who thereafter returns to such layoff or sick leave, shall not be disqualified, solely because of the receipt of such pay, from receiving any such credit for which he otherwise would be eligible hereunder. For the purposes of this subsection only, an employe who is laid off subsequent to

35

October 1, 1979 and whose first day of absence due to such layoff is the first regularly scheduled work day in the January next following his last day worked shall be deemed to have been laid off on December 31 of the year in which he last worked. A part-time employe shall be credited for any week of such absence in the same percentage relationship as such employe's regular part-time schedule is to 40 hours.

An employe who (i) is at work, on or after October 1, 1990; (ii) has 10 or more years of seniority at time of layoff commencing on or after October 1, 1990; (iii) while, on such layoff has received the maximum of 1530 hours of credit for periods of absence due to layoff or Corporation approved sick leave in accordance with the preceding paragraph of this Section 1(b)(1); and (iv) continues thereafter to be absent due to such layoff shall be credited with 40 hours for each complete calendar week of absence due to such layoff up to a maximum of 1700 hours of credit.

(2) An employe who is absent from work because of occupational injury or disease incurred in the course of such employe's employment with the Corporation, and on account of such absence receives Workers' Compensation while on Corporation approved leave of absence shall be credited with 40 hours for each complete calendar week of such absence after September 1, 1961.

(c) Any salaried employe transferred to an hourly-rate job who thereby becomes an employe covered by the Plan shall have credited to the nearest 1/10 year any credited service the employe had as of the date of such transfer under any Corporation retirement plan for salaried employes.

(d) If an employe who retired is retired, such employe may accumulate additional credited service by reason of such reemployment.

36

(e) For the purpose of computing compensated hours under subsection (a) of this Section 1:

(1) An employe who after October 1, 1950 and prior to June 1, 1955 was absent from work because he entered into active service in the armed forces of the United States and who was given a Corporation approved leave of absence for such period shall be credited with the number of hours that the employe would have been scheduled to work during such absence.

(2) An employe, who on or after June 1, 1955 was or is absent from work to enter into (or remain in) active service in the armed forces of the United States and for that reason was or is given a Corporation approved leave of absence, shall be credited with 40 hours for each complete calendar week that he is on such leave; provided, however, that credited service based on such hours shall not exceed four years (including credited service, if any, granted under subsection (e)(1) of this Section 1), or such longer period during which he has reemployment rights pursuant to any Federal law, and provided, further, that, the employe is reemployed in accordance with the terms of such leave of absence or, if reemployed by the Corporation at a location other than the location from which the leave was granted, within 90 days from the date of his discharge from the armed forces.

(f) Any employe hired on an hourly-rate job by a plant or Division of the Corporation, who has credited service under any Corporation retirement plan for salaried employes or who has lost credited service under any such plan, shall, upon making proper application, have such service credited to the nearest 1/10 year, provided that the employe acquires or acquired seniority following the loss of such credited service.

37

Art. II, 1(g)

(g) If a former salaried employe who is entitled to a deferred retirement benefit under Part A of the General Motors Retirement Program for Salaried Employes is reemployed by the Corporation and acquires seniority prior to the commencement of such deferred retirement benefit, such employe shall, upon making proper application, have reinstated, in lieu of the deferred retirement benefit, the credited service lost at the time the employe became entitled to such deferred retirement benefit.

(h) An employe with at least five years of seniority:

(1) on January 1, 1968 who was absent from work because of layoff during any calendar year after December 31, 1955 and before January 1, 1963; or

(2) on December 10, 1973 who was absent from work because of layoff during any calendar year after December 31, 1950 and before January 1, 1956; or

(3) on October 1, 1979 who was absent from work because of layoff during any calendar year after December 31, 1962 and before January 1, 1968; or

(4) on October 1, 1984 who was absent from work because of layoff during any calendar year after December 31, 1978 and before January 1, 1984

shall be credited with 40 hours for each complete calendar week of such absence, not previously credited under this Section 1, during which he had seniority multiplied by a percentage as set forth in the following table:

38

Art. II, 1(h)(4)

| Employe's Seniority on January 1, 1968 in the Case of (1) Above or December 10, 1973 in the Case of (2) Above or October 1, 1979 in the Case of (3) Above or October 1, 1984 in the Case of (4) Above | % |
|---|---|
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided that the employe makes proper application.

(i) In no event shall any employe be credited with more than 1700 hours, including compensated hours, in any calendar year. No employe shall be credited with any service after retirement. There shall be no duplication of credited service under the Plan. Not more than one year of credited service shall be credited to any employe in any calendar year, except as otherwise provided in Section 5 of this Article, all with respect to foundry service.

(j) Notwithstanding any other Section of this Article III, in the case of an employe who shall retire on or after October 1, 1996, the employe's credited service for the period before January 1, 1966 shall not be less than the employe's seniority as of December 31, 1965, as determined under the Collective Bargaining Agreement.

39

Art. III, 2

**Section 2. Loss of Credited Service.**

An employee will lose all credited service for purposes of this Plan:

(a) if the employee quits,

(b) if the employee is discharged or released,

(c) if the employee's seniority is broken for any other reason.

**Section 3. Reinstatement of Credited Service**

(a) Any employee with seniority on or after October 1, 1990 who breaks seniority and thereby loses or has lost credited service under Section 2 of this Article III and then is or was later reemployed by any plant or Division of the Corporation shall, upon making proper application, have such credited service reinstated provided the employee subsequently acquires or acquired seniority.

(b) Any employee retired under the provisions of this Plan who subsequently has seniority reinstated, will have credited service at the time of retirement reinstated.

**Section 4. Service With a Foreign Subsidiary**

An employee with seniority on or after October 1, 1990 whose employment as an hourly or salaried employee with a directly or indirectly wholly-owned or substantially wholly-owned foreign subsidiary of General Motors Corporation has been terminated other than by retirement, shall be granted credited service under this Plan for any periods of active service with such foreign subsidiary or, if greater, the amount of service credited to such employee under any pension or retirement plan of the foreign subsidiary at the time of his termination, provided such service was prior to

40

Art. III, 4

his most recent period of active service credited under this Plan.

Any monthly benefits payable under this Plan to a retired employee who has received credited service under this Section 4 will be reduced by an amount equivalent to the total of any monthly benefits that could be payable to such employee under any retirement plan to which the foreign subsidiary has contributed, excluding, however, any such plan or any portion of any such plan providing retirement benefits purchased solely by voluntary employee contributions.

Any survivor's benefits payable under this Plan to a survivor of such an employee shall be subject to similar reduction by monthly survivor's benefits payable under any plan to which the foreign subsidiary has contributed.

**Section 5. Foundry Service.**

An employee with seniority on or after October 1, 1990 who at retirement has over 10 years of credited service which he accrued while employed on certain foundry job classifications as set forth in Appendix B, shall receive additional credited service related thereto. Total credited service for any such employe who retires with benefits payable commencing on or after October 1, 1975 shall be the sum of (i) credited service otherwise credited to him, and (ii) any such additional credited service which shall be credited to him in accordance with the following table:

| Years of Credited Service Credited on Foundry Jobs | Additional Credited Service |
| --- | --- |
| For years 1 through 10 | 0 |
| For years 10.1 through 25 | 33-1/3% |
| For years over 25 | 20% |

41

Art. III, 5

If any such employe is continuously employed exclusively on such foundry jobs in a calendar year such additional credited service shall apply to any credited service otherwise credited to him for such year. If any such employe (i) is not continuously employed in a calendar year, or (ii) is employed on other than such foundry jobs in such year, such additional credited service shall apply to him for such year in accordance with the following table:

| If Credited Service Otherwise Credited to Employe For Calendar Year is | Additional Credited Service Applies to Such Year Only if Employe Spent Following Minimum Number of Complete Calendar Weeks on Foundry Jobs During Such Year is |
|---|---|
| 1.0 (year) | 26 |
| .9 | 23 |
| .8 | 21 |
| .7 | 18 |
| .6 | 16 |
| .5 | 13 |
| .4 | 10 |
| .3 | 8 |
| .2 | 5 |
| .1 | 3 |

No additional credited service shall be granted for any calendar year in which any such employe spends less than the minimum required number of complete calendar weeks on such foundry jobs, as indicated above.

If any such employe is on such foundry job at the time he goes on layoff or approved leave of absence; such additional credited service, shall apply to any

42

credited service otherwise credited to him while on such layoff or approved leave of absence.

Section 6 - Hours, Years and Breaks in Service to Comply With The Employes Retirement Income Security Act of 1974

(a) An employe who breaks seniority on or after October 1, 1976 who would be eligible for a deferred pension under Article VII, Section 2, except solely for the fact that he does not have at least 5 years of credited service under the foregoing Sections of this Article III, shall be eligible for a deferred pension under the provisions of Article VII, Section 2 if, at the time the employe breaks seniority, he has 5 years of service solely as determined under this Section 6.

(b) The monthly amount of any such deferred pension shall be based solely on the credited service that the employe had under the foregoing Sections of this Article III when he broke seniority.

(c) No employe shall be eligible to be covered under this Section 6 until he (i) attains age 21, or (ii) completes 1 year of service under this Section 6, whichever is later. Rehired employes shall participate immediately.

(d) An employe shall complete 1 year of service when he completes 750 hours of service in the 12 consecutive month period beginning with his employment commencement date. If an employe fails to complete 750 hours of service in such period, he shall complete 1 year of service in the first 12 consecutive month period thereafter in which he completes 750 hours of service, measured from each succeeding anniversary of his employment commencement date. Thereafter, an employe shall complete 1 year of service during each 12 consecutive month period in which he completes 750 hours of

43

Art. III, §6(d)

service, measured from the anniversary of his employment commencement date. A year of service under this Section 6 shall include service (i) with affiliated group members accrued subsequent to acquisition, (ii) rendered to the Corporation as a former leased employe (but only upon employe application, supported by substantiation satisfactory to the Corporation of such service), and (iii) rendered to the Corporation as a related employe in accordance with I.R.C. Section 414(b), (c), (m), (n), and (o).

(e) An employe who satisfies the eligibility requirements of this Section 6, and who is otherwise entitled to participate in the Plan, shall commence participation under this Section 6 if he satisfies such requirements (i) between April 1 and September 30, on the first day of the plan year beginning after the date on which such requirements are satisfied, or (ii) between October 1 and March 31, on the first day of the plan year that includes the date such requirements are satisfied, but in no event shall any employe participate hereunder if he breaks seniority prior to such commencement date.

(f) An employe shall complete an hour of service under this Section 6 for each hour for which he is paid by the Corporation for working or for which he is paid by the Corporation for having been entitled to work. Any hours for which an employe receives pay for having been entitled to work, irrespective of mitigation of damages, shall be credited to the period or periods he was so entitled, rather than to the period in which he receives such pay. There shall be no duplication of any hours of service under this Section 6.

(g) Solely for purposes of determining years of service for vesting under this Section 6, all of the employe's years of service shall be taken into account except the following: (i) years of service before age 18

44

Art. III, §6(g)

(age 22 prior to October 1, 1985); (ii) years of service before January 1, 1971, unless the employe has at least 3 years of service after December 31, 1970; (iii) years of service prior to any 1-year break in service as defined herein, until the employe completes a year of service after such break; (iv) for non-vested participants under this section, years of service prior to any 1-year break in service if the number of such consecutive breaks equals or exceeds the aggregate number of years of service prior to such break; for a non-vested participant at work on or after October 1, 1985, years of service prior to any 1-year break in service if the number of such consecutive breaks equals or exceeds the greater of 5, or the aggregate number of years of service prior to such break (such aggregate number of years of service before such break shall not include any years of service not required to be taken into account under this Section 6 by reason of any prior break in service); (v) years of service before October 1, 1976, if such service would have been disregarded under rules of the Plan as in effect on October 1, 1976, regarding breaks in service; and (vi) any year in which the employe completes less than 750 hours of service.

(h) An employe shall, incur a 1-year break in service under this Section 6, in any 12 consecutive month period during which he does not complete more than 375 hours, of service, measured from, the anniversary of his employment commencement date. Solely for purposes of determining whether an employe has incurred such 1-year break in service, in addition to, hours worked which are paid by the Corporation, any hours which an employe does not work but for which he is paid by the Corporation for vacation, sickness or disability, or is entitled to be so paid, directly or indirectly, shall be taken into consideration. For any absence from, work commencing on and after October 1, 1985 by reason of pregnancy of the individual, childbirth, placement

45

Art. III, 6(b)

of a child related to an adoption, or for child care purposes, immediately following such birth or placement, the employe shall be credited with the hours of work for which he otherwise would have been scheduled, or, if unable to determine such scheduled hours, 8 hours for each work day of such absence, not to exceed a total of 501 hours for any such absence. Such hours shall be credited in the year in which the absence commences if necessary to prevent incurring a 1-year break in service, otherwise such hours shall be credited in the immediately following year.

## Section 7. Asbestos Service

An employe with seniority on or after October 1, 1990 who at retirement has over 10 years of credited service which was accrued while employed on certain asbestos job classifications as set forth in Appendix C, shall receive additional credited service related thereto in the same manner as set forth in Section 5 of this Article III.

## ARTICLE IV

## REDETERMINATIONS ON ACCOUNT OF SOCIAL LEGISLATION

### Section 1. Redeterminations for Federal Social Security Benefits for Age or Disability

(a) The benefits payable for age or disability under the Federal Social Security Act, as amended, as now in effect, or as hereafter amended, which are referred to in the determination of pensions under Article II shall be included in such determination even though the employe either does not apply for, or loses part or all of such payments through delay in applying for them, by entering into covered employment, or otherwise.

46

Art. IV, 1(b)

(b) Old age benefit payments or disability benefit payments, other than those payable on a basis of "need" or because of military service, under any future federal legislation, amending, superseding, supplementing, or incorporating the Federal Social Security Act, as amended, or benefits provided therein, shall be considered as benefits for age or disability under the Federal Social Security Act for the purposes of the Plan.

(c) If an employe is eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age at the time of retirement or thereafter, such employe shall provide the Corporation with evidence of the effective date of entitlement to such benefit.

### Section 2. Deductions for Workers Compensation

In determining the monthly benefits payable under this Plan, a deduction shall be made unless prohibited by law, equivalent to all or any part of Workers Compensation (including compromise or redemption settlements) payable to such employe by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workers' Compensation has been provided by premiums, taxes or other payments paid by, or at the expense of the Corporation, except that no deduction shall be made for the following:

(a) Workers Compensation payments specifically allocated for hospitalization or medical expense, fixed statutory payments for the loss of any bodily member, or 100% loss of use of any bodily member, or payments for loss of industrial vision.

(b) Compromise or redemption settlements payable prior to the date monthly pension benefits first become payable.

47

the first day of the month following the month in which the employe actually retires, and the pension shall be payable monthly thereafter.

(3) Total and permanent disability pension shall be payable monthly during the continuance of total and permanent disability, and while the pensioner otherwise remains eligible for such benefits. Such payments shall begin the later of:

(i) the first day of the month which includes the date the required proof of disability is received by the Corporation, or

(ii) the first day of, the month which includes the date the employe has been continuously and totally disabled for a period of 5 months.

Successive periods of absence due to the same disability as that upon which claim for total and permanent disability pension is based and aggregating at least five months will be considered the same as one continuous absence provided that the aggregate will not include any such absence which precedes the last day at work by more than one year, or

(iii) the first day of the third month following the date the required proof of disability is received by the Corporation, or

(iv) the first day of the third month following determination by the impartial clinic that the employe is totally and permanently disabled,

These subsections (iii) and (iv) shall not be applicable (a) if the employe dies prior to such date, or (b) where Extended Disability Benefits are less than the benefits payable under this Plan.

(4) A supplement for an employe shall be payable in the manner provided in Section 6 of Article II.

51

---

Art. VI

## ARTICLE VI
### ADMINISTRATION

**Section 1.**

The Corporation shall be responsible for the general administration of the Plan and for carrying out the provisions thereof.

**Section 2.**

(a) The Corporation shall have all such powers as may be necessary to carry out the provisions of the Plan except as the powers and duties of the Corporation may be modified by any collective bargaining agreement.

(b) Subject to the limitations of (a) above, the Corporation may from time to time establish rules for the administration of the Plan and the transaction of the Plan's business.

(c) In making any such determination or rule, the Corporation shall pursue uniform policies and shall not discriminate in favor of, or against any employe or group of employes.

## ARTICLE VII
### PENSION BENEFITS AND SUPPLEMENTS

**Section 1. Pensions and Supplement Payments**

(a)(1) Pensions and supplements shall be paid monthly.

(2) The first monthly payment of an employe's pension other than for total and permanent disability shall become payable with the employe's consent on

50

Art. VII, (4)(5)

(5) Pension and supplement payments shall not be payable with respect to any period for which weekly sickness and accident benefits are payable to the employe under any plan to which the Corporation has contributed. If such sickness and accident benefits during any month are payable for a period of less than 4-1/3 weeks the sum of the monthly pension-benefit (excluding any special benefit) and supplement payable for that month shall be reduced by the percentage which such period of sickness and accident benefits is of 4-1/3 weeks.

(b) A pensioner who is reemployed by the Corporation shall cease to receive, during such reemployment, any monthly pension benefits to which the pensioner might otherwise be entitled. Any such reemployed pensioner will have his credited service at the time of retirement reinstated. A reemployed pensioner shall accrue additional credited service as a result of such employment and the monthly pension benefits of such pensioner shall be adjusted with regard to such employment upon subsequent cessation of active service.

(c) In the event that it shall be found that any pensioner or surviving spouse to whom a pension or survivor benefit is payable is unable to care for the affairs of such pensioner or surviving spouse because of illness or accident any monthly pension payment and supplement or survivor benefit due (unless prior claim therefor shall have been made by a duly qualified guardian or other legal representative) may be paid to the spouse, parent, brother, sister or other person or party, (including private or public institution) deemed by the Corporation to have incurred expense for such pensioner otherwise entitled to payment. Any such payment shall be a payment for the account of the pensioner and shall be a complete discharge of any liability of the Plan therefor.

52

Art. VII, (d)

(d) In order to retire under the Plan, an employe must have unbroken seniority at the time of his retirement except that a person who is eligible for retirement benefits under the Guaranteed Income Stream Benefit Program and is not receiving deferred pension benefits under the Plan shall not be precluded from retiring without return to employment even though he shall have incurred a break in seniority while on continuous layoff from the Corporation.

(e) Notwithstanding any other provision of this Section 1, an employe attaining age 70-1/2 on and after January 1, 1988, will commence monthly receipt of his accrued benefits under this Plan, beginning April 1 of the calendar year immediately following the year the employe attains or attained age 70-1/2. No employe shall be eligible to receive any such payment for any month prior to April, 1990, however, and the first such monthly payment shall be April 1, 1990. Only those employe who attained age 70-1/2 during 1988 and 1989 are eligible for any payment under this provision. No employe attaining age 70-1/2 prior to January 1, 1988, shall be eligible thereunder. An employe attaining age 70-1/2 after December 31, 1989, shall have his monthly payment based on his pension benefit accrual as of December 31 of the year in which he attains age 70-1/2. The actuarial value of the sum of all cash distributions received by any otherwise eligible employe prior to his actual retirement under this Plan will be used as an offset from any additional benefit accrual that might otherwise have been payable to such employe as a result of his working for the Corporation.

Section 2. Retention of Deferred Pension if Separated

(a) Any employe who loses accumulated credited service under the provisions of Article III, Section 2 shall be eligible for a deferred pension if such employe

53

Art. VII, 2(a)

is not retired and eligible for pension benefits pursuant to Article II, and provided the credited service of such employe, at separation is at least 5 years, or, such employe satisfies the "service" requirements of Article III, Section 6.

(b) The monthly amount of such deferred pension for an employe breaking seniority on or after October 1, 1990 shall be a basic benefit for each year of credited service that he had when he broke seniority, determined by his Benefit Class Code when he broke seniority as set forth in the table immediately following:

| Date Seniority Broke | Benefit Class Code | Basic Benefit Rate |
|---|---|---|
| | | $ |
| October 1, 1990 through September 30, 1991 | A | 28.35 |
| | B | 28.60 |
| | C | 28.85 |
| | D | 29.10 |
| October 1, 1991 through September 30, 1992 | A | 29.50 |
| | B | 29.75 |
| | C | 30.00 |
| | D | 30.25 |
| October 1, 1992 and After | A | 30.70 |
| | B | 30.95 |
| | C | 31.20 |
| | D | 31.45 |

(c) A former employe who is eligible for a deferred pension may at the election of such former employe receive

(1) a monthly pension commencing at or after age 65 determined in accordance with subsection (b) of this Section 2, or

Art. VII, 2(c)(2)

(2) a monthly pension commencing after age 60 and prior to age 65 determined in accordance with subsection (b) of this Section 2, such pension being reduced by 6/10 of 1 percent for each complete calendar month by which such former employe is under the age of 65 at the date the deferred pension commences, or

(3) a monthly pension commencing after age 55 and prior to age 60 for a former employe who breaks seniority on or after October 1, 1976, determined in accordance with subsection (b) of this Section 2. Such pension shall be multiplied by a percentage as set forth in the following table:

| Age When Pension Commences | Percentage* |
|---|---|
| | % |
| 55 | 42.8 |
| 56 | 46.8 |
| 57 | 51.2 |
| 58 | 55.5 |
| 59 | 59.6 |
| 60 | 64.0 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employe is under the age he will attain at his next birthday.

(d) The deferred pension shall be payable commencing the later of the first day of the month following the month (i) in which such employe attains the applicable age set forth in Section 2(c) of this Article VII, or, (ii) during which the Corporation receives a written request from such former employe, provided that such written request shall be valid and effective only if it is filed with the Corporation not

[Art. VII, 2(d)]

earlier than 60 days prior to the date such former employe first becomes eligible for such benefit, and for such employe who broke seniority prior to October 1, 1976 not later than his 70th birthday, otherwise no deferred vested pension benefit shall be payable at any time.

(e) If, prior to the commencement of deferred pension benefits, an employe is reemployed by the Corporation and: (1) acquires seniority, or (2) is reemployed by and works for the Corporation at the plant where he worked immediately prior to the loss of his credited service, or (3) dies after having qualified for a deferred pension in accordance with this Section 2, such employe shall, in lieu thereof, have reinstated the credited service in effect when such deferred pension was granted; provided that if an employe with 10 or more years of credited service:

(1) is reemployed by, and works for, the Corporation within 36 months of the date he lost credited service under Article III, Section 2, and

(2) becomes disabled while employed by the Corporation prior to acquiring 5 months of seniority, and such disability is continuous for a period of 5 months during which he makes proper application and submits medical evidence satisfactory to the Corporation that is totally and permanently disabled as set forth in Section 3 of Article II,

he will be deemed eligible for a disability pension under Section 3 of Article II, and such pension will be payable pursuant to Section 1 of Article VII, as though he had been an employe with seniority throughout such disability period.

(f) The amount of any monthly pension benefit otherwise payable to a former employe eligible for a deferred pension will be reduced by the value of any past and future benefits paid or payable to any

56

[Art. VII, 2(f)]

alternate payee(s) under a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).

The actuarial value will be used to determine any amount to be paid to any such payee(s), if applicable, and the remaining benefit entitlement of the employe.

Section 3. Non-Alienation of Benefits

The pension fund shall not in any manner be liable for or subject to the debts or liability of any employe, separated employe, retired employe, pensioner or surviving employe, pensioner or surviving spouse. No right, benefit, pension or supplement at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge or encumbrances, of any kind except in accord with provisions of a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p). If any person shall attempt to, or shall, alienate, sell, transfer, assign, pledge or otherwise encumber accrued rights, benefits, pensions or supplements under the Plan or any part thereof, or if by reason of bankruptcy or other event happening at any time such benefits would otherwise be received or enjoyed by anyone else, the Corporation in its discretion may terminate the interest of such employe, pensioner or surviving spouse in any such benefit and instruct the trustee to hold or apply it to or for the benefit of such employe, pensioner or surviving spouse, his or her spouse, children or other dependents, or any of them as the Corporation may instruct; provided, however, that any pensioner, or surviving spouse, entitled to a monthly benefit under the Plan:

(a) who elects Blue Cross, Blue Shield, or equivalent coverage, made available under the General Motors Health Care Program for Hourly

57

**Art. VII, 3(a)**

Employes may, insofar as it is consistent with the regulations governing the plans, providing such coverage, participate in such coverage and have deducted from the monthly pension and any supplement, if the monthly pension shall be insufficient, pursuant to written authorization and direction, pursuant to written authorization and direction acceptable to the Corporation, the required contribution for such coverage.

(b) will have Federal and state income tax withheld pursuant to Federal and state statutes or regulations unless only with respect to Federal income tax, elected otherwise by submitting to the Corporation written authorization and direction acceptable to the Corporation.

(c) who elects optional or dependent life insurance coverage(s) made available under the General Motors Life and Disability Benefits Program for Hourly Employes may have deducted from the monthly pension, pursuant to written authorization and direction, acceptable to the Corporation, the required contribution(s) for such coverage(s).

(d) may have amounts of not less than $40.00; but in no event more than 10% of the retired employe's monthly benefit, withheld to repay any outstanding overpayment owing to any benefit plan of the Corporation, pursuant to written authorization and direction acceptable to the Corporation.

58

---

**Art. VIII**

# ARTICLE VIII
## MISCELLANEOUS PROVISIONS

### Section 1. No Enlargement of Employment Rights

The Corporation's rights to discipline or discharge employes shall not be affected by reason of any of the provisions of the Plan.

### Section 2. Internal Revenue Service Approval

This Plan as amended is contingent upon and subject to obtaining and retaining such approval of the Commissioner of Internal Revenue as may be necessary to establish the deductibility under Section 404 of the Internal Revenue Code for income tax purposes of any and all contributions made by the Corporation to this Plan and to establish this Plan and related trust as being qualified and tax exempt under Sections 401 and 501(a) or other applicable provisions of the Internal Revenue Code. Any modification or amendment of the Plan may be made retroactively, if necessary or appropriate to qualify or maintain the Plan as a plan and trust meeting the requirements of Sections 401 and 501(a) of the Internal Revenue Code, as now in effect or hereafter amended, or any other applicable provisions of the federal tax laws, as now in effect or hereafter, amended or adopted, and the regulations issued thereunder.

### Section 3. Corporation Board of Directors Approval.

Continuation of the Plan as amended in 1990 is contingent upon obtaining the approval of the Corporation's Board of Directors not later than June 1, 1991.

59

Art. VIII, 4

## Section 4. Named Fiduciary

The Finance Committee of the Corporation's Board of Directors shall be the named fiduciary with respect to the Plan. The Finance Committee may delegate to various officers, employes and committees of the Corporation authority to carry out such of its responsibilities as it deems proper to the extent permitted by the Employee Retirement Income Security Act of 1974.

## Section 5. Limitation of Benefits

No benefits paid from this Plan will exceed the limits of Section 415 of the Internal Revenue Code.

## ARTICLE IX
## AMENDMENT AND TERMINATION

## Section 1. Amendment

The Corporation reserves the right to amend, modify, suspend or terminate the Plan by action of its Board of Directors, provided; however, that no such action shall alter the Plan or its operation, except as may be required by the Internal Revenue Service for the purpose of meeting the conditions for qualification and tax deduction under Sections 401, 404, and 501(c) of the Internal Revenue Code, in respect of employes who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement pertaining to pension benefits and supplements as long as any such agreement is in effect. Except as provided in Article V, Section 3, no such action shall operate to recapture for the Corporation any contributions previously made to the

60

Art. IX, 1

trustee or insurance company under the Plan, nor, except to the extent necessary to meet the requirements of the Internal Revenue Service or any other governmental authority, to affect adversely the pensions or supplements of employes already retired or the trust fund or insured fund then accruing such pensions and supplements.

## Section 2. Termination of Plan

(a) If the Corporation, in accordance with Section 1 of this Article IX, or the Pension Benefit Guaranty Corporation terminates the Plan, the amount of the assets, which are available to provide benefits, and which are held by the trustee as of the termination date, shall be allocated, after deducting expenses for administration or liquidation, in the following manner and order to the extent of the sufficiency of such assets:

(1) First, in the case of benefits payable as an annuity:

(i) in the case of the benefit of a participant or beneficiary which was in pay status as of the beginning of the 3-year period ending on the termination date of the Plan, to each such benefit, based on the provisions of the Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least;

(ii) in the case of a participant's or beneficiary's benefit (other than a benefit described in subsection (a)(1)(i)) which would have been in pay status as of the beginning of such 3-year period if the participant had retired prior to the beginning of the 3-year period and if his benefits had commenced (in the normal form of annuity under the Plan) as of the

61

Art. IX, 2(a)(1)(i)

beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

For purposes of subsection (b)(1)(X), the lowest benefit in pay status during a 3-year period shall be considered the benefit in pay status for such period.

(2) Second, to all other benefits (if any) of individuals under the Plan which are guaranteed under the plan termination insurance provisions of the Employee Retirement Income Security Act of 1974 determined without regard to Section 4022B(a) of said Act.

(3) Third, to all other nonforfeitable benefits under the Plan.

(4) Fourth, to all other benefits under the Plan.

(b)(1) The amount allocated under any of the preceding subsections of this Section 2 with respect to any benefit shall, be properly adjusted for any allocation of assets with respect to that benefit under a prior subsection of this Section 2.

(2) If the assets available for allocation under subsections (a)(1) and (a)(2) are insufficient to satisfy in full the benefits of all individuals which are described in such subsections, the assets shall be allocated pro rata among such individuals on the basis of the present value (as of the termination date) of their respective benefits described in such subsection.

(3) If the assets available for allocation under subsection (a)(3) are not sufficient to satisfy in full the benefits of individuals described therein:

62

---

Art. IX, 2(b)(3)(i)

(i) Except as provided in subsection (b)(3)(ii), the assets shall be allocated to the benefits of individuals described in subsection (a)(3) on the basis of the benefits of individuals which would have been described in subsection (a)(3) under the Plan as in effect at the beginning of the 5-year period ending on the date of the Plan's termination.

(ii) If the assets available for allocation under subsection (b)(3)(i) are sufficient to satisfy in full the benefits described therein (without regard to this subsection (b)(3)(ii)), then for purposes of this subsection (b)(3)(i), benefits of individuals described therein shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such 5-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in subsection (b)(3)(i) and any assets remaining to be allocated under such subsection shall be allocated under subsection (b)(3)(i) on the basis of the Plan as amended by the next succeeding Plan amendment effective during such period.

(c) If the Secretary of the Treasury determines that the allocation made pursuant to this Section 2 results in discrimination prohibited by Section 401(a)(4) of the Internal Revenue Code of 1986, or as may be subsequently amended, then, if required to prevent the disqualification of the Plan (or any trust under the plan) under Section 401(a) or 405(a), of such Code, the assets allocated shall be reallocated to the extent necessary to avoid such discrimination.

(d) In the event of determination of partial termination of the Plan, the right of all affected employees to benefits accrued to the date of such termination, partial termination or discontinuance, to the extent funded as of such date, are nonforfeitable.

63

Art. IX, 2(e)

(e) Anything in the Plan to the contrary notwithstanding it shall not be possible at any time prior to the satisfaction of all liabilities with respect to employes under the plan for any part of the corpus or income of the Pension Fund to be used for, or diverted to purposes other than the exclusive benefit of employes. After satisfaction of all liabilities to participants and beneficiaries under the Plan, any residual assets of the Pension Fund will be distributed to the Corporation if the distribution does not contravene any applicable provision of law.

**Section 3. Merger or Consolidation**

In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan after September 2, 1974, each participant in the Plan would, if the Plan then terminated, receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

## ARTICLE X

## DEFINITIONS

1. Employe

(a) Any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owned domestic subsidiary in accordance with I.R.C. Section 414(b), (c), and (m) thereof, including:

(1) hourly-rate persons employed on a full-time basis;

(2) hourly-rate persons on incentive pay plans;

(3) students from educational institutions who are enrolled in cooperative training courses on hourly rates;

Art. X, 1(a)(4)

(4) part-time hourly-rate employes who, on a regular and continuing basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular work week, provided such employes work one-half or more of the employing unit's regular work week;

(5) hourly-rate employes of Delco Electronics Corporation (DEC).

(b) The term "employe" shall not include:

(1) temporary employes;

(2) part-time hourly-rate employes who work less than one-half of the employing unit's work week;

(3) employes represented by a labor organization which has not signed an agreement making this Plan applicable to such employes;

(4) employes of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation acquired or formed by the Corporation on or after January 1, 1984;

(5) leased employes as defined under Section 414(n) of the Internal Revenue Code;

(6) employes of Saturn Corporation.

2. Trustee or Insurance Company

The bank or banks, trust or insurance company or companies or any combination thereof designated by a trust agreement or contract as the medium for financing the Plan.

Art. X, 3

**3. Seniority.**

Seniority means the period following the most recent date of hire by the Corporation, and subsequent to which there has been no loss of credited service (as loss of credited service is defined in the Plan), or if the employe is represented under a collective bargaining agreement seniority will be as defined in such agreement. An employe who is retired on or after October 1, 1994, and thereby has his pension discontinued, but does not have his seniority reinstated, shall be deemed, solely to satisfy purposes of The General Motors Hourly-Rate Employes Pension Plan, to have seniority while so employed.

**4. Federal Social Security Benefit.**

A Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age means a benefit determined and payable under Title II of the Federal Social Security Act, as now in effect or as hereafter amended, without any reduction being made therefrom based on the age of the recipient.

**5. Trust Fund; Pension Fund; Insured Fund.**

The General Motors Hourly-Rate Employes Pension Plan fund established by payments made by the Corporation in accordance with Article V herein. Such fund (herein called the trust fund) shall be comprised of either a "pension fund" or "insured fund, or a combination thereof.

**6. Base Hourly Rate.**

For the purposes referred to in Section 6(g) of Article II of this Plan only, Base Hourly Rate shall be the higher of:

(a) the employe's highest straight-time hourly rate, or

66

Art. X, 5(b)

(b) for an employe who worked on incentive or piece work in at least 4 pay periods, the employe's average earned straight-time hourly rate for the first 4 pay periods (or, if higher, for the last 4 pay periods) for which he had any incentive earnings (provided, however, that if he worked in less than 4 pay periods but during each such pay period he worked on an incentive or piece work, his average earned straight-time hourly rate for such pay periods worked shall be used)

during the last 13 consecutive pay periods ending with the pay period which includes his last day worked, plus any cost-of-living allowance in effect with respect to the employe's last day worked for the Corporation.

**7. Basic Benefit.**

The monthly benefit payable under the Plan for the lifetime of a retired or separated employe, including a benefit reduced by a percentage because of early retirement. The term "basic benefit" shall not include any temporary benefit, special benefit, or supplement payable under the Plan.

**8. Age 62 and One Month.**

"Age 62 and one month" means age 62 and one month except that for purposes of determining the month for which the temporary benefit provided in Article II, Section 4 and the early retirement and interim supplements provided in Article II, Section 6 shall cease and the month for which the basic benefit is redetermined in accordance with Article II, Section 4, it shall mean age 62 if both a temporary benefit, early retirement supplement, or interim supplement under the Plan and a benefit under the Federal Social Security Act could otherwise be payable.

67

Art. X.9

**9. Actuarial Value**

The actuarial value as of any determination date shall be calculated on the basis of the UP-84 mortality table and the applicable interest rate used by the Pension Benefit Guaranty Corporation (PBGC) as of the first day of the plan year preceding the determination date.

68

---

Appendix A

## APPENDIX A

### (HOURLY-RATE EMPLOYES PENSION PLAN)

A Benefit Class Code for the sole purpose of this Plan is hereby established for each job classification in effect on September 17, 1990 on the basis of the maximum base hourly rate (which term as used herein shall include incentive earnings unless otherwise noted) applicable to the job classification on that date, as follows:

|  | For Job Classifications Having a Maximum Base Hourly Rate of | Benefit Class Code |
|---|---|---|
| On or after September 17, 1990 but prior to October 1, 1990 | Less than $14.48 | A |
|  | $14.48 but less than $14.70 | B |
|  | $14.70 but less than $15.63 | C |
|  | $15.63 and over | D |
| On or after October 1, 1990 | Less than $16.16 | A |
|  | $16.16 but less than $16.38 | B |
|  | $16.38 but less than $17.31 | C |
|  | $17.31 and over | D |

(1) The Benefit Class Code applicable to an employe is the Benefit Class Code for the job classification held by the employe for the greatest number of calendar days during the 24 consecutive months immediately preceding his last day worked.

(2) The Benefit Class Code to be established for any new job classification put into effect after September 17, 1990 shall be whichever Benefit Class Code is applicable to other job classifications having the same maximum base hourly rate on the date that such new job classification is put into effect. With respect to a job classification that was obsolete as of September 17, 1990 a hypothetical maximum base hourly rate applicable thereto, shall be determined by increasing the maximum base hourly rate for that job

69

Appendix A(2)

classification at the time of its discontinuance to the extent necessary so as to give effect to general wage increases (including cost-of-living allowance transfers) that have occurred since such discontinuance, and the Benefit Class Code for such classification so derived shall be whichever Benefit Class Code herein is applicable to other job classifications having the same maximum base hourly rate on that date.

(3) For purposes hereof, the maximum base hourly rate of a job classification paid on a day-work basis at any plant or facility shall be the maximum straight-time hourly rate for that job classification at such plant or facility (excluding any cost-of-living allowance and premiums).

(4) The maximum base hourly rate of a job classification in effect on September 6, 1967 and paid under an incentive method of pay at any plant or facility shall be the average straight-time hourly earned rate (including incentive earnings and any wage increases and cost-of-living allowance transfers which, as of September 6, 1967, were not factored in the base rate of the job classification but excluding any cost-of-living allowance and premiums) for all hours worked by all employes in that job classification at such plant or facility for the period beginning September 5, 1966, and ending September 3, 1967, plus any wage increases and cost-of-living allowance transfers effective for that job classification subsequent to September 6, 1967.

In the event an employe is transferred to a job which results in a lower basic benefit rate, such employe's vested pension benefit, if any, shall not be less than the amount of his accrued pension benefit on the date of such transfer to such job.

Appendix B

APPENDIX B

For the sole purpose of Article III, Section 5 of the Plan, all approved job classifications as of September 14, 1973 of the Central Foundry Plant, Danville, Illinois, the Local Wage Agreements as of September 14, 1973 of the Central Foundry Plant; Defiance, Ohio, the Central Foundry Malleable Iron Plant, Saginaw, Michigan, and the Central Foundry Grey Iron Plant, Saginaw, Michigan, are designated foundry jobs at the respective plant locations except for those job classifications listed herein for each such respective plant location. No other job classifications shall be designated foundry jobs.

Central Foundry Plant, Danville, Illinois

Bulldozer Operator
Bus Boy
Cashier
Cook
Crane Operator, Locomotive
Crane Operator - Yard & Bridge
Driver - Licensed Trucks - Tractor & Trailer
End Loader Operator
Kardex Clerk
Kitchen Help
Pattern & Maintenance Clerk
Pattern Storage and Transport
Salvage Reclaimer
Scrap Cutter - Torch
Shipping Clerk
Spare Crane Hook Up
Stock Room Clerk
Stock Room and Receiving
Warehouse Attendant
Window Washer
Yard Labor
Yard Switchman

## Central Foundry Plant, Defiance, Ohio (Cont'd.)

(2) Designated as a foundry job only for those employes so classified who work in Plant #1, 539 Department.

(3) Designated as a foundry job only for those employes so classified who work in Plant #2, 816 Department, Battery Charge Area.

## Central Foundry Malleable Iron Plant, Saginaw, Michigan

Bull Dozer Operator
Bus Boy
Cashier
Clerk - Pattern and Maintenance
Cook
Crane Operators - Locomotive
Driver-Licensed Trucks, Tractor, and Trailer
Kitchen Help
Salvage Reclainer
Stock Room and Receiving
Yard Labor

Blacksmith
Core and/or Mold Maker - Experimental - Bench & Floor
Garage Mechanic
Inspector-Layout
Machinist - Maintenance
Machinist - Miscellaneous
(1) Machinist - Pattern
Pattern Maker - Leader
Pattern Maker - Wood and Metal
Power House Operator

(1) Designated as a foundry job only for those employes so classified who work in Department 16.

73

## Central Foundry Plant, Danville, Illinois (Cont'd.)

Garage Mechanic
Machinist
Pattern Maker, Wood & Metal
Power House Operator.

## Central Foundry Plant, Defiance, Ohio.

Bus Boy.
Cashier
Clerk - Pattern and/or Maintenance
Cook
Crane Operator - Locomotive
Dispatcher - Materials
Driver - Licensed Trucks - Tractor and Trailer - Semi
Heavy Equipment Operator
Inspection Department - Inspection (Special Assignment)
Kitchen Help
Locomotive Operator
Safety Equipment Repair
Salvage Reclainer

(2) Shipping Clerk
Yard Labor

Blacksmith
Casting Layout
(3) Garage Mechanic
(1) Machinist
Pattern Maker - Leader
Pattern Maker - Wood & Metal
Shift Operating Engineer
Tool Grinder

(1) Designated as a foundry job only for those employes so classified who work in Plant 2, 816 Department.

72

## Appendix B

### Central Foundry Grey Iron Plant, Saginaw, Michigan

(1)Attendant - Pattern Storage
Attendant - Pattern Storage - Leader
Clerks - Receiving - (Includes Inspectors)
Crane Hooker or Signal Man
Crane Operator - Locomotive
Crib Attendant - Maintenance
Crib Attendant - Pattern Shop
Drill Press Operator
Driver - Licensed Passenger Cars
Drivers - Licensed Trucks - Receiving & Yard

(1)Equipment Operator - Special (including Bay, City Shovel, Bull Dozer, Pay Loader, Shovel Operator)
Field Sand Gasoline Locomotive, Operator
Flask Repair - Metal Flask
Flask Repair - Metal Flask - Leader
Gardener
Laborer - Yard - Maintenance, Leader
Labor - Yard - Maintenance - Railroad Track Repair
Locker Room Attendant
Milling Machine Operator - Driers

(2)Oiler - Machinery, Equipment and Motors
Power House Attendant
Receiving Department - Leader
Salvage - Flask Cutter
Crane Repairman - (Also Operates Crane)
Crane Repairman - Leader
Die Repair
Flask Welder

## Appendix B

### Central Foundry Grey Iron Plant, Saginaw, Michigan (Cont'd.)

Grinder - Cutter
Gridder Operator - Blanchard
Inspector - Layout
Machine Repair - Machinist Maintenance
Machine Repair - Machinist Maintenance - Leader
Machine Repair - Machinist Maintenance
Machine Repair - Machinist
Pattern Shop
Power House - Engineer - Class "B"
Power House - Fireman
Power House - Repairman
Power House - Repairman - Leader
Power House - Gas
Truck Repair - Gas - Leader
Truck Repairman - Gas and Electric

(3)Welder - Maintenance - Gas & Arc
Welder - Tool and Die

(1)Designated a foundry job only for credited service accrued on and after July 27, 1987.

(2)Not designated as a foundry job for those employes so classified who work in Department 32.

(3)Not designated as a foundry job for those employes so classified who work in Department 30.

## Appendix B

Any job classification in effect at a plant specified in Appendix B that was discontinued at such plant prior to September 14, 1973 shall be designated a foundry job if the work that was performed by employes on such discontinued job, classification shall conform substantially to work performed at the same plant by employes on a job classification designated as a foundry job for such plant.

76

Appendix B

## APPENDIX C.

For the sole purpose of Article III, Section 7 of the Plan, only those job classifications specifically listed herein, which are set forth in the Local Wage Agreement in effect as of October 1, 1979 at Delco Moraine Division, Dayton, Ohio, may be designated asbestos jobs. Such designation as an asbestos job will apply only to those classifications at the above-specified plant location under the conditions specifically set forth herein. No other job classifications shall be designated asbestos jobs.

### Delco, Moraine Division, Dayton, Ohio

The following job classifications involved in the blending and processing of raw asbestos are designated asbestos jobs for employes so classified who are assigned to Departments 73M, 515, 521, and 530.

Experimental Lining
Extruding Machine Operator
Janitors
Job Setter
Lining-Grinder
Machine Cleaners
Preform of Disc Brake Linings
Production Heat Treat Linings
Protective Coating Operator
Senior Riveters
Stock Handler
Weigh and Mix Materials

77

Appendix C

## STANDARDS FOR APPLICATION OF PROVISIONS REGARDING RETIREMENT UNDER MUTUALLY SATISFACTORY CONDITIONS

### GENERAL MOTORS HOURLY-RATE EMPLOYES PENSION PLAN

Article II, Section 2(b) and (c) of the General Motors Hourly-Rate Employes Pension Plan provides that an employe may be retired early under mutually satisfactory conditions providing he is otherwise eligible. The following standards have been adopted by the Corporation as a guide, in the application of this provision.

### Standards

A. An employe who is unable to work efficiently by reason of permanent disability:

The retirement must be in the best interest of the Corporation. It is also intended to benefit employes who are unable to work efficiently by reason of permanent disability. It contemplates that the efficiency of operation will be improved by reason of the retirement which may be the case in any of the following situations:

(1) The employe is no longer physically or mentally capable of performing his work in an efficient and satisfactory manner.

(2) The employe, though still capable of performing his work satisfactorily, is prevented by chronic physical illness or physical disability (less than total) from working regularly to the extent that efficiency of operation is interfered with.

(3) The employe's condition, based on medical evidence satisfactory to the Corporation, is such that,

78

although able to perform the duties of his job efficiently and satisfactorily, he would thereby be jeopardizing his health or that of his fellow employes.

(4) The employe is on disability leave or is laid off because he is unable to do the work offered by the Corporation efficiently and satisfactorily although able to perform efficiently and satisfactorily other work in the plant to which he would have been entitled if he had had sufficient seniority, and his condition, based on medical evidence satisfactory to the Corporation, is expected to be continuous until his normal retirement age.

B. An employe who is laid off:

Retirement under mutually satisfactory conditions will be available to an employe who is laid off

(i) as a result of a plant closing or discontinuance of operations, or

(ii) whose layoff appears to be permanent, and in either case has not been offered suitable work by the Corporation in the same labor market area.

79

Misc. (Benefit Plan Provisions)

## STATEMENT OF INTENT

Notwithstanding the provisions of Exhibit A, Section 3(c) of The General Motors Hourly-Rate Employes Pension Plan; Exhibit B, Items Agreed To of the General Motors' Life and Disability Benefits Program For Hourly Employes; Exhibit C, Items Agreed To of the General Motors Health Care Program For Hourly Employes; Exhibit D, Articles V and VI of the Supplemental Unemployment Benefit Plan, and the Items Agreed to by GM-UAW SUB Board of Administration; and Exhibit E, Section 6(a) of the Guaranteed Income Stream Benefit Program, which deal with local union representatives for each of these benefit plan areas, the Corporation and the Union agree as follows:

### 1. Appointment of Local Union Benefit Representatives

(a) Local union benefit representative(s) and alternate(s) shall be appointed or removed by the GM Department of the International Union.

(b) Temporary replacement appointments may be made by the local union President for a minimum of one week and a maximum of four weeks. Replacement appointments for any absence in excess of four weeks also shall be made by the GM Department of the International Union. Replacement appointments in situations when the benefit representative(s) and alternate(s) are both absent but for less than one week and are on a leave of absence pursuant to the provisions of Paragraph 109 of the GM-UAW National Agreement may be made by the local union President. Any problems that may arise under this procedure may be discussed by the Corporation with the GM Department of the International Union.

80

Misc. (Benefit Plan Provisions)

(c) A local union benefit representative shall be an employe of the Corporation having at least one year of seniority, and working at the plant where, and at the time when, he/she is to serve as such representative or alternate. No such representative or alternate shall function until written notice has been given. In the case of temporary appointments, the notice should be given to local Management with additional copies forwarded to the GM Department of the International Union and the Corporation.

### 2. Number of Local Union Benefit Representatives

(a) In plants having a total of less than 600 employes, there may be one local union benefit representative and one alternate.

(b) In plants having a total of 600 but less than 1,200 employes, there may be two local union benefit representatives and two alternates.

(c) In plants having a total of 1,200 but less than 2,000 employes, there may be three local union benefit representatives and three alternates.

(d) In plants having a total of 2,000 but less than 5,000 employes, there may be four local union benefit representatives and three alternates. If such plants have a total of 1,400 or more employes on the second and third shifts combined, there may be five local union benefit representatives and two alternates.

(e) In plants having a total of 5,000 but less than 8,000 employes, there may be five local union benefit representatives and two alternates.

(f) In plants having a total of 8,000 but less than 10,000 employes, there may be six local union benefit representatives and two alternates.

(g) In plants having a total of 10,000 or more employes, there may be seven local union benefit representatives and two alternates.

81

## Misc. (Benefit Plan Provisions)

The number of employes as used herein, shall include active employes, employes on sick leave of absence, and employes on temporary layoff.

3. Of the total number of local union benefit representatives and alternates otherwise available, one or more representatives and alternates may be assigned to the second shift or third shift so long as the total number of representatives and alternates set forth in Paragraph 2. above is not exceeded.

4. When plant population changes occur which would increase or decrease the number of local benefit plan representatives, such population changes must be in effect for a period of six consecutive months before such adjustment is made in the number of representatives, unless such population change results from the discontinuance or addition of a shift or the opening or closing of a plant. In the event of a cessation of operations, the Corporation, at the request of the UAW General Motors Department of the International Union, will provide for the continuation of Benefit Representation. Other situations involving a sudden significant change in the number of employes at a location may be discussed by the Corporation and the GM Department of the International Union.

5. Benefit Plan districts will be established by local mutual agreement. Only one local union benefit representative will function in a benefit district, and will handle specified benefit plan problems raised by employes within that district pertaining to the Pension Plan, Life and Disability Benefits Program, Health Care Program, Supplemental Unemployment Benefit Plan, and Guaranteed Income Stream Benefit Program agreements. An alternate will be permitted to function in the absence of a local benefit plan representative on his/her shift.

82

## Misc. (Benefit Plan Provisions)

6. Any local union benefit representative may function as the member of the local Pension Committee, as the member of the local Supplemental Unemployment Benefit Committee, as a member of the Guaranteed Income Stream Benefit Committee or handle benefit problems under the Life and Disability Benefits Program and the Health Care Program with respect to employes in his/her Benefit Plan district. An alternate may function in the absence of a local union benefit representative.

7. The time available to a local union benefit representative and alternate with respect to a Benefit Plan district may not exceed eight (8) regular working hours of available time in a day.

(a) On his/her regular shift and without loss of pay, a local union benefit representative(s) may accompany the management benefit representative for a mutually agreeable joint off-site visit to a local hospital, an impartial medical opinion clinic or a health maintenance organization, or other similar type joint ventures, with respect to benefit plan matters.

(b) A local union benefit representative attending a scheduled Management-Union Benefit Plan meeting on a shift other than his/her regular shift will be paid for the time spent in such meeting.

(c) One local union benefit representative attending the local union retiree chapter meeting will be paid for time spent in such meeting.

(d) The time spent in such local union retiree chapter meetings, off-site visits or Management-Union Benefit Plan meetings will not result in additional hours which exceed regularly scheduled shift hours, overtime premiums or an increase in representation time being furnished as a result of the representative(s) not working a full shift on his/her regular shift.

83

Misc. (Benefit Plan Provisions)

8. The local union benefit representative shall be retained on the shift to which he/she was assigned when appointed as such representative regardless of seniority, provided there is a job that is operating on his/her assigned shift which he/she is able to perform.

9. The Benefit Plans — Health and Safety office may be used by local union benefit representatives during their regular working hours.

(a) To confer with retirees, beneficiaries, and surviving spouses who ask to see a local union benefit representative with respect to legitimate benefit problems under the Pension, Life and Disability Benefits Program and Health Care Program Agreements.

(b) If the matter cannot be handled appropriately in or near the employe's work area, to confer with employes who, during their regular working hours, ask to see a local union benefit representative with respect to legitimate benefit problems under the Pension, Life and Disability Benefits, Health Care, SUB, and GIS Agreements.

(c) To, confer with employes who are absent from, or not at work on, their regular shift and, who ask to see a local union benefit representative with respect to legitimate benefit problems under the Pension, Life and Disability Benefits, Health Care, SUB, and GIS Agreements.

(d) To write position statements and to complete necessary forms with respect to a case being appealed to the Pension, SUB, or GIS Boards by an employe in his/her Benefit Plan district, and to write appeals with respect to denied life, health, care, and disability claims involving employes within his/her Benefit Plan district.

(e) To file, material with respect to the Pension, Life and Disability Benefits, Health Care, SUB and GIS Agreements.

84

Misc. (Benefit Plan Provisions)

(f) To make telephone calls with respect to legitimate benefit problems raised by employes under the Pension, Life and Disability Benefits, Health Care, SUB, and GIS Agreements.

85

86

87

LETTER
AGREEMENTS

Workers Compensation

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

This letter of agreement constitutes an amendment to the 1990 GM-UAW Pension Plan and shall be construed and applied as if it were therein incorporated.

Pursuant to Subsection 354(14) of the Michigan Workers Compensation Act, as amended, until termination or earlier amendment of the 1990 Collective Bargaining Agreement, workers compensation for employes shall not be reduced by disability retirement benefits payable under the Hourly-Rate Employee Pension Plan.

Very truly yours,

GENERAL MOTORS CORPORATION

By Alfred S. Warren, Jr.
Vice President

Accepted, and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

89

- 88

Lump-Sum Payment

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW.
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

During these negotiations the parties agreed upon certain lump-sum payments to be made to eligible retirees and surviving spouses.

Lump-sum payments would be made, on the basis described below, by Corporation check or draft paid directly to retired employees and surviving spouses.

1. The following persons will be eligible for lump-sum payments:

(a) employes who retired prior to October 1, 1990 under the terms of Article II, Sections 1, 2 or 3 of the Plan and who are receiving benefits from the Plan as of the first of the month for which a lump-sum payment would be made.

(b) eligible surviving spouses of employes who retired under the terms of Article II, Sections 1, 2 or 3 of the Plan prior to October 1, 1990, or surviving spouses eligible for a benefit prior to September 17, 1990 pursuant to Article II, Section 5(g) of the Plan (excluding surviving spouses of former employes who broke seniority and who are eligible for a deferred pension), or surviving spouses eligible for a benefit under Article II, Section 5(d) and who are eligible for a pension benefit from the Plan as of the first of the month for which a lump-sum payment would be made.

90

Lump-Sum Payment

2. Amount of Benefit:

(a) a maximum payment of $630 will be made to retired employes with thirty or more years of credited service. The payment to pensioners with less than thirty years of credited service will be $21 per year of credited service (with a proportional amount for fractional years) or a minimum payment of $210.

(b) eligible surviving spouses will receive 60% of the amount that would have been payable to the retired employe under (a) above.

3. Dates of Payment: December 1991 and December 1992.

Please indicate your concurrence in the proposed lump-sum payments arrangement and other provisions of this letter.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

91

Mutually Satisfactory Retirement

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

During these negotiations the parties agreed to provide mutually satisfactory retirements, commencing as early as age 50, immediately during the period November 1, 1990, through May 1, 1991, inclusive, to up to 5,213 hourly employees, in selected GM locations, who had attained age 50 with 10 or more years of credited service as of October 1, 1990, all as set forth in detail in Document 9 attached to the 1990 GM-UAW Collective Bargaining Agreement.

Solely to implement the agreement described immediately above, this letter of agreement constitutes an amendment to the 1990 GM-UAW Pension Plan and shall be construed and applied, as if it were therein incorporated.

In that regard, Article II, Section 2(b) of the GM-UAW Pension Plan, and the "Standards" attached to such Plan, shall be deemed to provide eligibility for mutually satisfactory retirement as early as age 50, solely for the otherwise eligible employees set forth in such Document 9, only during the period described therein, and only under the specific circumstances described therein.

---

Mutually Satisfactory Retirement

In conjunction therewith, the attached guidelines are applicable, and must be satisfied with respect to certain such employee retired under Attachment B of the GM-UAW Collective Bargaining Agreement.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Attach.

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

ATTACHMENT

An employee with seniority:

Retirement under mutually satisfactory conditions will be available to an employee who on or after October 1, 1990

(i) is in a JOBS Bank, or

(ii) will be replaced by

(aa) an employee in a JOBS Bank, or

(bb) a laid-off GIS eligible employee with seniority whose layoff appears to be permanent,

and in any such case, only to any such employee who at the date of his retirement satisfies the conditions for such retirement as stipulated under Attachment B of the JOBS Program.

Special Benefit and Placement Plan

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

During these negotiations the parties agreed to provide mutually satisfactory retirements, commencing as early as age 50, and solely during the period November 1, 1990, through May 1, 1991, inclusive to (1) active employees, (2) laid off seniority employee, and (3) laid off employee with 84(c) rehire rights, only of: —
BOC – Lordstown, CPC – Flace, CPC – Framingham, and CPC – Lakewood, who have, attached age 50 with 10 or more years of credited service as of October 1, 1990, as set forth in detail in the new "Special Benefit and Placement Plan Document", which is attached to the 1990 GM-UAW Collective Bargaining Agreement.

Solely to implement the agreement described immediately above, this letter of agreement constitutes an amendment to the 1990 GM-UAW Pension Plan and shall be construed and applied as if it were therein incorporated.

In that regard, Article II, Section 2(b) of the GM-UAW Pension Plan, and the "Standards" attached to such Plan, shall be deemed to provide eligibility for mutually satisfactory retirement as early as age 50, solely for the otherwise eligible employees set forth in the above described Document, and only during the period described therein, and only under the specific circumstances described therein.

94

Special Benefit and Placement Plan

Notwithstanding the preceding, the parties further agreed to provide mutually satisfactory retirement eligibility, only to certain employees at the four locations listed earlier herein, each of whom has (a) attained age 48, but not, age 50, and (b) 10 or more years of credited service, as of October 1, 1990. Each such retirement granted hereunder will become effective on the first day of the month immediately following each such eligible employee's attainment of age 50.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

95

*5-14-07*



**GM Benefits & Services Center**
gmbenefits.com
1-800-489-4646
**International Access**
Dial AT&T Direct® Service Access Code, then 877-833-9900
**TDD Service for the Hearing Impaired**
1-877-347-5225

WALTER J LAWRENCE
#162, 3101 SW 34TH AVE, #905
OCALA, FL 34474-0000

May 14, 2007

**Re: Recalculation of Pension Benefits**

Dear WALTER J LAWRENCE:

This is a revised statement of your Pension Benefits from General Motors. The revision and reason for the Pension Benefit Recalculation is:

- Benefits were not adjusted by the Tax Levy Amount of $1,099.50
- Pension Overpayment

| | Current Benefit Amount | New Benefit Amount as of 07/01/2007 |
|---|---|---|
| Benefit to Participant: | $1,045.50 | $0.00 |

Our records indicate you have received an overpayment of retirement benefits from 01/01/2005 through 06/01/2007, a total of 30 month(s). The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund.

Please make your check or money order payable to General Motors Corporation and send it to the Benefit Service Center in the self addressed envelope enclosed for your convenience. On the check or money order, indicate that this is to repay an overpayment, clearly print your full name and include your Social Security number.



**Additional Information**

If you have any questions. please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world. access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,


**GM Benefits & Services Center**

**Additional Information**

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,


**GM Benefits & Services Center**



**GM Benefits & Services Center**
gmbenefits.com
**1-800-489-4646**
**International Access**
Dial AT&T Direct® Service Access Code. then 877-833-9900
**TDD Service for the Hearing Impaired**
**1-877-347-5225**

WALTER J LAWRENCE
#162, 3101 SW 34TH AVE. #905
OCALA, FL 34474-0000

September 5, 2007

**Re: Recalculation of Pension Benefits**

Dear WALTER J LAWRENCE:

This is a revised statement of your Pension Benefits from General Motors. The revision and reason
for the Pension Benefit Recalculation is:

- Tax Levy Amended to $208 as per IRS Guidelines
- Pension Overpayment

| | Current Benefit Amount | New Benefit Amount as of 10/01/2007 |
|---|---|---|
| Benefit to Participant: | $0.00 | $837.50 |

Our records indicate you have received an overpayment of retirement benefits. The total amount of
the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to
collect overpayments and return them to the Plan's Trust Fund.

Please make your check or money order payable to FIIOC "Fidelity Investments Institutional
Operating Company" and send it to the Benefit Service Center in the self addressed envelope
enclosed for your convenience. On the check or money order, indicate that this is to repay an
overpayment, clearly print your full name and include your Social Security number.

If the payment in a lump sum is not received, beginning 10/01/2007, your monthly benefit will be
reduced by 50% until the total amount of the overpayment has been recovered. This means that your
gross monthly benefit will be $418.75 until 03/01/2014. On 04/01/2014, you will receive $515.00
completing the recovery of your overpayment of $32,985.00. Thereafter, your gross monthly benefit
of $837.50 will be restored.

D

**Additional Information**

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,


**GM Benefits & Services Center**

Art. IV, 2(e)

(e) Workers Compensation payments paid under a claim filed not later than two years after the breaking of seniority.

**ARTICLE V**

**FINANCING**

**Section 1: Trust Fund**

The Corporation shall execute a trust agreement with a trustee or trustees selected by the Corporation to manage and operate the pension fund and to receive, hold and disburse, such contributions, interest and other income as may be necessary to pay such of this Plan as are not provided for by an insured fund. The Corporation may establish an insured fund with such insurance company or companies as it may select for the payment of such of the pension and supplements or portions thereof under this Plan as are not provided for in a trusteed fund.

The Corporation will determine the form and terms of any such trust agreement which may authorize the inclusion of obligations and stock (common and preferred) of the Corporation and its wholly-owned subsidiaries, among the investments of the pension fund provided for by such trust agreement; may utilize any investment manager, as defined under the Employee Retirement Income Security Act of 1974 or regulations thereunder; may modify any such trust agreement from time to time to, accomplish the purposes of this Plan; may remove any trustee, and select any successor trustee; and select and change insurance companies.

**Section 2. Contributions**

(a) The Corporation, subject to Article IX, Section 1, shall make such contributions to the trustee

48

Art. V, 2(e)

or pay such premiums under any insured contract for the purposes of providing pensions and supplements under the Plan as shall be required under accepted actuarial principles and Title I of the Employee Retirement Income Security Act of 1974 to maintain the Plan and pension or insured fund in a sound condition and shall pay for expenses incident to the operation and management of the Plan.

(b) The Corporation may charge to the fund expenses necessary for the proper administration of the Plan and investment of the funds, including the direct cost of benefit administration performed by, or on behalf of, the Corporation for the Plan, and Pension Benefit Guaranty Corporation premiums for participants.

(c) No employe shall be required to make any contributions to the Plan.

**Section 3. Irrevocability**

(a) The Corporation shall have no right, title or interest in the contributions made by it to the trustee and no part of the pension or insured fund shall revert to the Corporation, except that after satisfaction of all liabilities of the Plan as set forth in Article IX, such contributions as may have been made by the Corporation as the result of overpayments may revert to the Corporation.

(b) The pension benefits and supplements of the Plan shall be only such as can be provided by the assets of the pension fund or by any insured fund and there shall be no liability or obligation on the part of the Corporation to make any further contributions to the trustee or insurance company in event of termination of the Plan. No liability for the payment of pension benefits or supplements under the Plan shall be imposed upon the Corporation, the Officers, Directors or Stockholders of the Corporation, except as otherwise may be required by the Employee Retirement Income Security Act of 1974.

49