# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

WALTER J. LAWRENCE,

       Plaintiff,

                                    Case No. 5:07-CV-408 OC

vs.

                                    Hon. William Terrell Hodges

GENERAL MOTORS HOURLY-RATE               Magistrate Judge Gary R. Jones
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

       Defendants.

---

Walter J. Lawrence, In Pro Per
3101 SW 34th Avenue, # 905
Ocala, Florida 34474

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800

Cynthia L. May (0029297)
Co-Counsel for Defendants
Greenberg Taurig, P.A.
625 E. Twiggs Street, Ste. 100
Tampa, FL 33602
Telephone: (813) 318-5700

---

## DEFENDANTS' MOTION AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... iii

INTRODUCTION ........................................................... 1

COUNTER STATEMENT OF FACTS. ........................................... 2

    A.    The Events That Led to the Overpayment of Pension Benefits to Plaintiff in the Amount of $32,985 .................................................... 2

    B.    Description of the Available Appeal Procedure Under the General Motors Hourly- Rate Employees Pension Plan ................................... 4

LAW AND ARGUMENT ...................................................... 5

    I.    The Arbitrary and Capricious Standard of Review Applies to the Review of Determinations Made Under the GM Pension Plan ......................... 5

        A.    Courts Have Determined The Arbitrary And Capricious Standard Is Applicable To Determinations Made Under the GM Pension Plan ...... 5

        B.    The Eleventh Circuit Has Adopted The Arbitrary And Capricious Review Standard When The Plan Is Granted Authority To Interpret The Plan's Terms ................................................ 6

        C.    Defendants' Decision To Remit Plaintiff's Pension To The IRS Was Not Arbitrary And Capricious Because It Was Mandated By Law ................. 8

    II.    Defendants Are Entitled To Summary Judgment Because Plaintiff Failed To Exhaust His Available Contractual Administrative Remedies ............... 11

        A.    The appeal procedure contained in the GM Supplemental Agreement Covering Pension Plan is applicable to Plaintiff .................... 11

        B.    Even if the Court Determines Defendants Failed to Comply with the Technical Requirements of ERISA, Summary Judgment is Still Warranted ................................................ 12

        C.    Plaintiff Failed to Exhaust his Administrative Remedies and Thus His Claims Should be Dismissed ................................... 13

    III.    Plaintiff's Remaining Arguments Are Insufficient To Warrant A Grant Of Summary Judgment In His Favor ..................................... 14

LAW OFFICES

**HARDY, LEWIS**

**& PAGE, P.C.**

401 S OLD WOODWARD AVE

SUITE 400

BIRMINGHAM, MI 48009-6629

(248) 645-0800

i

A.    Defendants Had a Right to Recoup the Overpayment from Plaintiff's
      Pension Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

B.    Likewise, Defendants Did Not Violate ERISA by Remitting his Pension
      Benefits to the IRS While Plaintiff was in Bankruptcy . . . . . . . . . . . . . . .    16

C.    Defendants Were Not Limited to Only Recouping 10% of Plaintiff's
      Pension Benefits to Satisfy the Overpayment . . . . . . . . . . . . . . . . . . . . . . .    17

D.    Plaintiff's Claim for Breach of Fiduciary Duty has No Merit and Should
      Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S  OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

# TABLE OF AUTHORITIES

## Cases

Adams v. Thiokol Corporation,
231 F.3d 837 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bickley v. Caremark RX, Inc.,
461 F.3d 1325 (11th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Brown v. General Motors Corporation,
152 B.R. 935 (W.D.Wisc. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Busby v. IRS, et al.,
1997 WL 364507 (S.D.Fla.1997) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Carnaghi v. Phoenix American Life Insurance Company,
238 F.Supp. 1373 (N.D.Ga. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Coar v. Kazimir,
990 F.2d 1413 (3rd Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Duncan v. General Motors Corp.,
2006 WL 375343 (W.D.Ark. 2006)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Firestone Tire and Rubber Co. v. Bruch,
489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Hawkins-Dunn v. General Motors Corp.,
225 Fed.Appx. 358 (6th Cir.2007) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Chastang,
116 B.R. 833 (Bkrtcy.M.D.Fla.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In Re Jones,
289 B.R. 188 (Bankr.M.D.Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Katz v. Comprehensive Plan of Group Insurance, ALLTEL,
197 F.3d 1084, 1088-1089 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lawler v. Suntrust Securities, Inc. et al.,
740 So.2d 592 (Fla. App 5 Dist.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lloyd v. General Motors Hourly Rate Employees Pension Plan, et al.,
1 Fed.Appx 789 (10th Cir. 2001)(copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

Lord v. General Motors Corp.,
39 F.3d 1182 (6th Cir. 1994) (unpublished, copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Mertens v. Hewitt Assoc.,
508 U.S. 248, 258-259, 113 S.Ct. 2063, 2069-2070 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Miles v. United States,
1999 WL 501000 (N.D.Tex.1999) (copy attached) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ogden v. Blue Bell Creameries, U.S.A., Inc.,
348 F.3d 1284 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pawlowske v. Chrysler Corp.,
623 F.Supp. 569 (N.D.Ill.1985), aff'd 799 F.2d 753 (7th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . 9

Perrino v. Southern Bell Telephone & Telegraph Co.,
209 F.3d 1309 (11th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

Pitchford v. General Motors Corp.,
248 F.Supp.2d 675 (W.D. Mich.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Purk v. United States,
747 F.Supp. 1243 (S.D.Ohio.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reyher v. Trans World Airlines, Inc,
881 F.Supp. 574 (M.D.Fla.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Roberson v. General Motors Corporation,
801 F.2d 176 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ryiz v. First Bankers, N.A.,
516 So.2d 1069 (Fla.App 4 Dist. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shanbaum v. United States
32 F.3d 180 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Ruff,
99 F.3d 1559 (11th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Varity Corporation v. Howe,
516 U.S. 489, 116 S.Ct. 1065 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Varity Corporation v. Howe,
516 U.S. 489, 116 S.Ct. 1065 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Weiler v. United States,
82 F.3d 424 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

iv

## Statutes

Bankruptcy Code, 11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

ERISA, 29 U.S.C. §§ 1001, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 2, 16

ERISA, § 206, 29 U.S.C. § 1056. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

ERISA, § 206(d)(1), 29 U.S.C. § 1056(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

ERISA, § 206(d)(2), 29 U.S.C. § 1056(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6, 19

ERISA, § 503, 29 U.S.C. § 1133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

I.R.C., 26 U.S.C. § 523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

I.R.C., 26 U.S.C. § 6332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

I.R.C., 26 U.S.C. § 6332(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

I.R.C., 26 U.S.C . § 6332(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

I.R.C., 26 U.S.C. § 6332(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

## Federal Regulations

26 C.F.R. § 1.401(a)-13(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

26 C.F.R. §1.401(a)-13(c)(2)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

26 C.F.R. § 1.401(a)-13(c)(2)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

26 C.F.R. §301.6331-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

26 C.F.R. §301.6332-1(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

26 C.F.R. § 301.6871(a)-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

LAW OFFICES
**HARDY, LEWIS**
**& PAGE, P.C.**
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND CROSS-MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

On February 12, 2008 Plaintiff Walter Lawrence ("Plaintiff") filed the instant Motion for Summary Judgment. Plaintiff's claims for summary judgment are premised on the following: (1) that Defendants General Motors and the General Motors Hourly-Rate Pension Plan ("Defendants") improperly alienated his pension in violation of the Employee Retirement Income Security Act of 1974, as amended, ERISA, 29 U.S.C. §§1001, *et seq.* by remitting pension benefits to the Internal Revenue Service ("IRS") after Defendants received a Notice of Tax Levy, and (2) that Defendants are not entitled to recover a $32,985.00 overpayment of pension benefits received by Plaintiff which resulted from Defendants' error. Although the claims administrator forwarded $32,985.00 to the IRS pursuant to the Levy, it failed to make the appropriate deduction from Plaintiff's pension benefits. Both of Plaintiff's claims are without merit. In fact, as explained herein, it is Defendants, not Plaintiff, who are entitled to summary judgment in this matter.

First, Plaintiff cannot recover from Defendants any monies they remitted to the IRS pursuant to the Notice of Levy. Upon receipt of the Levy, Defendants were obligated to abide by it and remit Plaintiff's pension benefits to the IRS to satisfy his tax liability. Once Defendants complied with the tax levy, they are immune from liability to Plaintiff for any monies remitted to the IRS. To the extent that Plaintiff contends the Notice of Levy contained a procedural deficiency, he should have pursued that issue with the IRS, not Defendants.

Plaintiff erroneously contends that Defendants should not have remitted his pension benefits to the IRS because a box on the Levy indicating that the levy applied to pension benefits was left unsigned. If Defendants had ignored the Levy, they would have been subject to substantial penalties. Moreover, Defendants do not have an obligation to contest any possible procedural deficiencies in the Notice of Levy. Regardless, a procedural defect in the Notice of Levy does not discharge the employer's obligation to honor an IRS levy. Even if the Plaintiff may have a defense premised upon

LAW OFFICES
**HARDY, LEWIS
& PAGE, P.C.**
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

1

a procedural defect, such defect does not entitle him to sue Defendants for recovery of the pension benefits forwarded to the IRS.

Second, Defendants, not Plaintiff, are entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies under the GM Pension Plan with respect to the recovery of the $32,985.00 overpayment. Under ERISA, a claimant who fails to exhaust his administrative remedies prior to filing suit should have his case dismissed.

Here, the GM/UAW Supplemental Agreement Covering Pension Plan contains a detailed appeal procedure. This procedure specifies how (on the proper form) and to whom (Secretary, Pension Board of Administration) appeals for a denial of benefits must be submitted. Plaintiff did not exhaust his administrative remedies. At no time did Plaintiff ever submit an appeal on the proper form and forward it to the proper place. Rather, Plaintiff sent all his "appeals" to the Plan Administrator or the GM Benefits & Service Center, not to the Secretary, Pension Board of Administration. Therefore, Plaintiff's claims should be dismissed.

Plaintiff erroneously suggests that he did not have to follow the appeal procedure in the Supplemental Agreement Covering Pension Plan because it is only applicable to employees. Such an argument is without merit. Courts have previously dismissed other cases brought against General Motors because the retiree and/or other non-employee (surviving spouse of a retiree) had failed to exhaust the available appeal procedure in the Supplemental Agreement. The result should be no different in this case.

## COUNTER STATEMENT OF FACTS.

A.    The Events That Led to the Overpayment of Pension Benefits to Plaintiff in the Amount of $32,985

On October 9, 2007 Plaintiff filed the instant three count complaint against Defendants alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 USC §§1001, *et seq*. Plaintiff alleges that Defendants violated ERISA by remitting his pension benefits to the IRS and by reducing his pension by 50% to recover an overpayment of $32,985.00.

Plaintiff is a former General Motors hourly employee whose terms and conditions of employment were governed by the GM-UAW Collective Bargaining Agreements, and its supplements.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

Plaintiff retired from General Motors with benefits commencing on March 1, 1993. Upon his retirement Plaintiff began receiving a monthly pension benefit of $1,045.50 per month.

In 1999 GM received a notice from the Internal Revenue Service ("IRS") that Plaintiff had failed to pay his income taxes in 11 different years. Plaintiff's failure to pay his income taxes resulted in a tax liability and penalties of over $267,000.00 (Ex A). The IRS' notice included a levy against Plaintiff's pension benefits. Based on the levy, GM remitted Plaintiff's monthly pension benefits to the IRS, thereby reducing Plaintiff's monthly benefit to $0.00.

In 2005 the Plan switched claims administrators from Electronic Data Systems Corporation ("EDS") to Fidelity Investments Institutional Operations Company, Inc., ("Fidelity"). In approximately January 2005, due to a mis-communication between EDS and Fidelity, Plaintiff's monthly pension benefit of $1,045.50 was restored. However, Fidelity continued to remit to the IRS $1,099.50 per month on behalf of Plaintiff to satisfy his tax liability, without concurrently reducing his pension. Fidelity continued to make these payments to the IRS without the concurrent deduction from Plaintiff's pension benefits until June 2007, when the error was discovered. In total, $32,985.00 was paid to the IRS, thus resulting in an overpayment to Plaintiff in that amount.

On May 14, 2007 the Fidelity / GM Benefits & Service Center advised Plaintiff of the overpayment and informed him of the steps to be taken to recover the overpayment. The Fidelity letter, copy attached as Exhibit B, stated:

> This is a revised statement of your Pension Benefits from General Motors. The revision and reason for the Pension Benefit Recalculation is:
>
> - Benefits were not adjusted by the Tax Levy Amount of $1,099.50
> - Pension Overpayment
>
> * * * *
>
> Our records indicate you have received an overpayment of retirement benefits from 01/01/2005 through 06/01/07, a total of 30 months. The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund. (Ex B, 5/14/07 Letter).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

Effective July 1, 2007, Plaintiff's monthly pension benefit was reduced to $0.00 to recoup the overpayments. Id. Subsequently, on September 5, 2007 Plaintiff was informed that he would receive 50% of his pension until the overpayment was recouped. (Ex C, 9/5/07 Letter).

B.    Description of the Available Appeal Procedure Under the General Motors Hourly-Rate Employees Pension Plan

The GM/UAW Supplemental Agreement covering Pension Plan contains, at Appendix D, Section K, the appeal procedure available to participants to contest computation of their pension benefits or partial or complete suspension of their pension benefits:

1.    Any employee who disputes a determination with respect to such employee's...(iii) computation of pension benefits or supplements under the Pension Plan, (iv) partial or complete suspension of supplements...may file with the Center a written claim on form BA 1, "Employee Claim to Pension Committee". Such claim shall be filed within 60 days, including the 60th day, or receipt of such determination.

2.    In all cases where the employee has filed a claim on form BA 1, the Pension Committee shall review such claim with the employee, return one copy of form BA 1 to the employee with a written answer to the claim and, if the claim is rejected, the reasons therefor.

3.    If the employee is not satisfied with the answer, such employee may request the Pension Committee, in writing on form BA 1, to refer the case to the Board for decision. Such claim shall be filed with the Pension Committee within 60 days, including the 60th day, of the employee's receipt of such answer. The Pension Committee shall then forward form BA 1, with material pertinent to the case and the answer to the employee's claim, to the Board.

4.    If the Pension Committee should fail to agree upon the disposition of any application or authorization, or of any claim filed by an employee, the case shall be referred to the Board for determination on form BA 2, "Notice of Appeal to Board of Administration." A written signed statement setting forth all the facts and circumstances surrounding the case, and any material pertinent to the case, shall accompany the referral. Such statement may be submitted jointly by the members of the Pension Committee or separate signed statements may be submitted provided such statements are exchanged by the Pension Committee members prior to being submitted to the Board.

5.    All material with respect to cases referred to the Board shall be submitted in duplicate and shall be mailed to the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarters, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000.

6.    The Board shall advise the Pension Committee in writing of the disposition of any case referred to the Board by the Pension Committee. The Pension Committee shall forward a copy of such disposition to the employee.

7.    Forms BA 1 and BA 2 for each appeal must be requested from the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarters, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000. (Ex D at 117-118).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

4

In the present case Plaintiff failed to utilize the above appeal procedure. He never submitted the designated form, or any other documents, to the Secretary of the Pension Board of Administration as required under the procedure. Instead, Plaintiff mailed letters to the Plan Administrator and the GM Benefits & Service Center on June 16, 2007 (45 pages), June 25, 2007 (55 pages) and July 11, 2007 (106 pages) (plus attachments) (*See* Pl. Exs I, J, K). When Plaintiff failed to receive a response to his liking, he filed the instant lawsuit.

## LAW AND ARGUMENT

I.   The Arbitrary and Capricious Standard of Review Applies to the Review of
     Determinations Made Under the GM Pension Plan

Plaintiff, In his Motion, erroneously suggests that the applicable standard of review for determinations made under the GM Pension Plan is *de novo* (Pl. Motion at 10). However, when a plan grants discretionary authority to the plan administrator, as in this case, the proper standard of review is arbitrary and capricious.

A.   Courts Have Determined The Arbitrary And Capricious Standard Is Applicable
     To Determinations Made Under the GM Pension Plan

The GM-UAW Supplemental Agreement Covering Pension Plan delegates to the Board of Administration the responsibility for considering appeals arising from a denial of benefits, such as in this case. The parties have collectively bargained that decisions of the Board of Administration are final and binding on the Union and its members, the employee or employees involved, and on General Motors:

> (9)   There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union, its members, the employee or employees involved, and on the Corporation, subject only to the arbitrary and capricious standard of judicial review. (Ex D at 9-10).

Three decisions have considered the applicable standard of review for determinations made by the Board under the above procedures. In <u>Lord v. General Motors Corp.</u>, 39 F.3d 1182 (6th Cir. 1994) (unpublished, copy attached) the Court reviewed the decision of the Pension Board of Administration which denied a claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Court explained:

> Section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan. The "arbitrary and capricious" standard of review applies when

LAW OFFICES
**HARDY, LEWIS**
**& PAGE, P.C.**
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

a plan affords the administrator discretionary authority to construe the terms of the plan or to determine eligibility. Here, Section 3(a) of the Supplemental Agreement Covering Pension Plan empowered the Board of Administration to make final decisions regarding matters within its authority. In addition, Section 3(c) authorized the Board of Administration to formulate procedures for resolving disputes. The procedures enacted generally provided that independent doctors were to make final and binding determinations concerning benefit eligibility. Therefore, in view of this discretionary authority vested in the administrator, the "arbitrary and capricious" standard applies. Lord, slip opinion p. at 2 (citations omitted)

Similarly in Roberson v. General Motors Corporation, 801 F.2d 176 (6th Cir. 1986), the Court reviewed a section 502(a)(1)(B) claim for benefits arising from a decision under the GM Pension Plan. Again the Court explained that the standard of review was whether the determination was arbitrary and capricious:

The district court properly concluded that the appropriate standard of review of the board's denial of disability pension benefits to appellant is whether such action was arbitrary or capricious. "The standard for court review of a determination to deny pension benefits is whether the denial was arbitrary, capricious, or in bad faith." Id. at 180 (citations omitted).

See also Hawkins-Dunn v. General Motors Corp., 225 Fed.Appx. 358, 360 (6th Cir.2007) (Court found that the GM Pension Plan "gives the plan administrator authority to construe the terms of the plan, courts will only overturn the administrator's decision if it is arbitrary and capricious.")

In summary, the Court's review of determinations made by the Board of Administration under the GM Pension Plan are subject to the arbitrary and capricious standard. Further, Plaintiff cannot avoid the application of this standard merely because he failed to exhaust the available appeal procedure.

      B.      The Eleventh Circuit Has Adopted The Arbitrary And Capricious Review Standard When The Plan Is Granted Authority To Interpret The Plan's Terms

In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the United States Supreme Court defined the standard of review applicable to an administrator's decision to deny benefits under an ERISA-covered plan:

[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Id. at 115.

The Court reasoned that general principles of trust law should govern the choice of the standard of

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

6

review. Because a trustee's discharging of his duties under a trust agreement is accorded deferential treatment only when the instrument grants the trustee discretion, the Court concluded that deference to an administrator's decision is appropriate when discretion is delegated to the decision maker. Id. at 108-15.

In Adams v. Thiokol Corporation, 231 F.3d 837 (11th Cir. 2000), the Court explained the application of Firestone:

> In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court discussed the appropriate standard of review in 29 U.S.C. § 1132(a)(1)(B) actions challenging a denial of benefits based on plan interpretations. <u>A review under the arbitrary and capricious standard is appropriate where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."</u> *Bruch,* 489 U.S. at 115, 109 S.Ct. 948. However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " *Id.* (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959)). "[T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest *might* conflict with the interest of the beneficiary." *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1565 (11th Cir.1990) (quoting *Fulton Nat'l Bank v. Tate,* 363 F.2d 562, 571 (5th Cir.1966) (underlined emphasis added, italicized emphasis in original)). Id. at 842.

Nevertheless, even under the heightened standard, the Court explained that when the issue involves interpretation of a plan provision, if the administrator's interpretation was correct, the inquiry ends:

> Under the heightened standard, we must first determine the legally correct interpretation of the disputed plan provision. *Brown,* 898 F.2d at 1570; *Newell,* 904 F.2d at 651. <u>If the administrator's interpretation was legally correct, the inquiry ends.</u> *Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997). If the administrator's interpretation differs, we must then determine whether the administrator was arbitrary and capricious in employing a different interpretation. *Brown,* 898 F.2d at 1570; *Newell,* 904 F.2d at 651. Id. at 843. (emphasis added)

In Carnaghi v. Phoenix American Life Insurance Company, 238 F.Supp. 1373 (N.D.Ga. 2002), the Court, relying on Eleventh Circuit precedent, explained that in cases, such as this, dealing with the interpretation of a plan provision, if the administrator's interpretation is legally correct the inquiry ends:

> As the court explained in *Jones [v. Champion International Corporation,* Civil Action No. 00-CV-1186-JOF*]:*
>
> > Under the line of cases dealing with the legal interpretation of the plan, if the administrator's interpretation was legally correct, the inquiry ends because the

LAW OFFICES
**HARDY, LEWIS**
**& PAGE, P.C.**
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

7

conclusion would be the same under any of the three standards of review. *See, e.g., Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000) (per curiam); *Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997); *Marecek v. BellSouth Telecommunications, Inc.,* 49 F.3d 702, 705 (11th Cir.1995). Id. at 1376.

As explained above, in this case the Board of Administrators has the authority to interpret and apply the provisions of the General Motors Hourly-Rate Pension Plan. Thus, the question here is whether the determination of General Motors was arbitrary and capricious. Because that question will be answered based on a review of the administrative record, Plaintiff's Motion for Summary Judgment should be denied at this time.

C.    Defendants' Decision To Remit Plaintiff's Pension To The IRS Was Not Arbitrary And Capricious Because It Was Mandated By Law

In 1999 General Motors Corporation received a Notice of Levy from the IRS regarding Plaintiff (Ex A). That Notice required Defendants to remit Plaintiff's pension benefits to the IRS in order to satisfy his substantial outstanding tax liability. As detailed above, GM has complied with the tax levy and remitted Plaintiff's pension benefits to the IRS.

On the tax levy a box appears which states:

This levy won't attach funds in IRAs, self-employed individuals' retirement accounts or any other retirement plans in your possession or control, unless it is signed in the block to the right. (Ex A).

Because this box was not signed, Plaintiff now erroneously claims in his motion that Defendants violated ERISA by alienating his pension benefits when it remitted them to the IRS. (Pl. Motion at 2). This argument is without merit.

First, upon receipt Defendants were obligated to comply with the IRS levy:

...[A]ny person in possession of (or obligated with respect to) property or rights subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process. Internal Revenue Code ("I.R.C."), 26 U.S.C. §6332(a) (emphasis added).

An IRS levy extends to property and rights to property which exist "at the time the levy is made," including a person's pension benefit. 26 C.F.R. § 301.6331-1(a); 26 C.F.R. § 1.401(a)-13(b)(2) (Provision providing for no assignment or alienation of benefits does not prevent enforcement of a Federal tax

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629
(248) 645-0800

8

levy).[1]

An employer who refuses to honor a federal tax levy is liable to the IRS for the value of the employee's wages (or pension benefit) not surrendered, together with costs and interest from the date of such levy. I.R.C., 26 U.S.C. §6332(d)(1). In addition, unless Defendants can show "reasonable cause" why the levy was not honored, it must pay the Government a penalty equal to 50% of the amount stated above. I.R.C., 26 U.S.C . §6332(d)(2). *See also* United States v. Ruff, 99 F.3d 1559, 1563 (11th Cir.1996) ("Those individuals who fail to honor the Service's levy incur liability to the government equal to the full value of the property not surrendered.").

Second, Plaintiff cannot hold Defendants liable, or recover from them, the money remitted to the IRS for complying with the IRS levy. By complying with the IRS levy, any liability Defendants may have to Plaintiff is discharged:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or right to property arising from such surrender or payment. I.R.C., 26 U.S.C. §6332(e) (emphasis added).

In Lawler v. Suntrust Securities, Inc. et al., 740 So.2d 592 (Fla. App 5 Dist.1999), a taxpayer brought suit against the bank who held her IRA account after the bank complied with a notice of levy and remitted $123,870.61 from her IRA to the IRS. Applying federal law, the court dismissed the plaintiff's claims and found the bank was immune from liability to the plaintiff:

> If a bank or trust company is in possession of an account or funds belonging to the taxpayer against whom the levy is sought, and if that property is not subject to a judicial attachment or execution, that entity must comply with the levy or face penalties. After compliance, the custodian is immune from liability to the taxpayer." Id. at 593 (emphasis added, citations omitted).[2]

LAW OFFICES
**HARDY, LEWIS
& PAGE, P.C.**
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

---

[1] *See also* Shanbaum v. United States 32 F.3d 180, 183 (5th Cir. 1994)("Section 6334, which specifically exempts certain property from levy, does not exempt pension benefits from collection...[thus] Shanbaum's argument that the IRS levy authority yields to the later enacted non-alienation provision [of ERISA] is without merit."); Weiler v. United States, 82 F.3d 424 (9th Cir.1996).

[2] *See also* Busby v. IRS, et al., 1997 WL 364507 (S.D.Fla.1997) (copy attached) ("The mere fact of compliance by Principal Mutual with the Notice of Levy filed by the IRS does not give rise to a claim upon which relief may be granted..."); Pawlowske v. Chrysler Corp., 623 F.Supp. 569, 570 (N.D Ill.1985), *aff'd* 799 F.2d 753 (7th Cir.1986) (Notice of levy by the

Third, Plaintiff claims that the IRS' Notice of Levy was deficient because the box on the form was not signed. He contends this box had to be signed in order for the levy to attach to his pension (Pl. Motion at 2). Contrary to Plaintiff's belief, a procedural defect in the Notice of Levy does not discharge the employer's obligation to honor an IRS levy. Purk v. United States, 747 F.Supp. 1243, 1249 (S.D.Ohio.1989). In other words, when Defendants received the Notice of Levy, they were obligated to turn over his pension benefits to the IRS. That Plaintiff may have a defense in the nature of a procedural defect in the levy does not entitle Plaintiff to sue Defendants. See Miles v. United States, 1999 WL 501000 (N.D.Tex.1999) (Plaintiff's suit to enjoin his employer from remitting his salary to the IRS dismissed despite plaintiff's claim that the levy suffered from procedural defects). If Plaintiff believed there was a problem with the Notice of Levy or that Defendants should not have remitted his pension benefits to the IRS, his proper course of action is to seek relief from the IRS or file suit against the Government:

> (3) *Remedy.* In situations described in paragraphs (c)(1) and (c)(2) of this section, taxpayers and third parties who have an interest in property surrendered in response to a levy may secure from the Internal Revenue Service the administrative relief provided for in section 6343(b) or may bring suit to recover the property under section 7426. 26 C.F.R. § 301.6332-1(c)(3).[3]

Fourth, even if any liability against Defendants was not discharged, the Defendants' decision to comply with the IRS levy and remit Plaintiff's pension benefits to the IRS cannot be overturned. By remitting Plaintiff's pension to the IRS, Defendants complied with the law and the Notice of Levy. Complying with the law can hardly be characterized as arbitrary and capricious conduct. Accordingly, Plaintiff's claims should be dismissed in their entirety.

LAW OFFICES
**HARDY, LEWIS
& PAGE, P.C.**
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

---

IRS on employee's salary was sufficient to require employer to pay the money demanded, so that employee had no right to recover anything from employer because of his compliance with the levy).

[3] *See also* Ryiz v. First Bankers, N.A., 516 So.2d 1069, 1071 (Fla.App 4 Dist. 1987) ("The appropriate remedy for one who believes he has been wrongfully served with a Notice of Levy is to surrender the property and bring an action against the government.").

10

II.    Defendants Are Entitled To Summary Judgment Because Plaintiff Failed To Exhaust His Available Contractual Administrative Remedies

A.    The appeal procedure contained in the GM Supplemental Agreement Covering Pension Plan is applicable to Plaintiff

In his Motion Plaintiff erroneously contends that he does not meet the definition of "employee" under the Supplemental Agreement Covering Pension Plan and therefore was not required to exhaust his administrative remedies prior to filing suit (Pl. Motion at 17-25). Such a claim has no merit and should be rejected.

Section 503 of ERISA, 29 U.S.C. § 1133, requires every employee benefit plan to include a procedure affording participants review of an adverse decision of a claim for benefits. The law is clear that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 (11th Cir.2006). This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself. Id. (citations omitted). Exhaustion of administrative remedies is a jurisdictional defense that when proven results in dismissal of the plaintiff's claims. Reyher v. Trans World Airlines, Inc, 881 F.Supp. 574, 576 (M.D.Fla.1995). The 11th Circuit strictly enforces the exhaustion requirement on ERISA claims with certain caveats reserved for exceptional circumstances. Perrino v. Southern Bell Telephone & Telegraph Co., 209 F.3d 1309, 1315 (11th Cir.2000).

As stated above, Plaintiff claims the appeal procedure in the Supplemental Agreement Covering Pension Plan does not apply to him because he is not an "employee." Contrary to his belief, courts have found that the appeal procedure contained in the Supplemental Agreement applies to retirees and even other non-employees despite those individuals not being specifically identified in the appeal procedure.[4]

Furthermore, an examination of the appeal procedure itself shows it is applicable to retirees.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

---

[4] See Pitchford v. General Motors Corp., 248 F.Supp.2d 675, 678 fn.1 (W.D. Mich.2003) (Even if former employee properly brought his claims under ERISA, such claims would have failed because he failed to exhaust his administrative remedies under Section K of Appendix D under the Plan); Lloyd v. General Motors Hourly Rate Employees Pension Plan, et al., 1 Fed.Appx 789, 790 (10th Cir. 2001) (Retiree's claims dismissed because he failed to exhaust the administrative remedies available to him.); Duncan v. General Motors Corp., 2006 WL 375343 (W.D.Ark. 2006) (Surviving spouse who sought benefits had her case terminated to enable her to exhaust her administrative remedies under the Supplemental Agreement Covering Pension Plan).

Many of the appealable issues identified in the Supplemental Agreement are clearly issues which would only impact a retiree. These issues include: computation of pension benefits or supplements under the Pension Plan; partial or complete suspension of supplements; and credited service under the Pension Plan (Ex. D at 117). Despite his attempts to wriggle out from the appeal procedure in the Supplemental Agreement, the appeal procedure is applicable to Plaintiff and had to be exhausted before he filed this present action.

Plaintiff also claims that Defendants cannot rely upon the summary plan description ("SPD") to show he failed to exhaust his administrative remedies because the SPD was never integrated into the Plan (Pl. Motion at 24-25). However, the SPD also contains appeal procedure:

> If you do not agree with a GM decision that has been made with respect to (1) your age, (2) the amount of your credited service, or (3) the computation of your benefits, you may appeal this decision to your local pension committee. If (1) the local pension committee is unable to agree on your appeal, or (2) the committee agrees but you do not, your case may be referred to the GM-UAW Pension Board of Administration. If the Board members fail to agree, the Board may appoint an impartial chairman to resolve the dispute. The decision of the (1) Board, or (2) impartial chairman, will be binding on all parties. (Ex E).

Plaintiff's pension benefits are payable under the GM Pension Plan, incorporated within the Supplemental Agreement Covering Pension Plan, and he is subject to, and must utilize, the appeal procedure set forth at Section K of the Supplemental Agreement. Plaintiff should be in the same position as other GM retirees who have attempted to sue Defendants without exhausting their administrative remedies and hence, his claims should be dismissed.

B.     Even if the Court Determines Defendants Failed to Comply with the Technical Requirements of ERISA, Summary Judgment is Still Warranted

Even if Plaintiff is correct, which he is not, and Defendants failed to comply with the technical requirements of ERISA by not delineating an appeal procedure, it still does not excuse Plaintiff's failure to exhaust his administrative remedies.

In <u>Perrino v. Southern Bell Telephone & Telegraph Co.</u>, *supra*, the plaintiffs attempted to claim they were excused from exhausting their administrative remedies because the defendants failed to comply with ERISA by providing a summary plan description or a formal claims procedure. The court soundly rejected this argument, holding that non-compliance with ERISA does not excuse a retiree's

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009 6629

(248) 645-0800

12

duty to exhaust his administrative remedies:

> We find Appellants' arguments unpersuasive. After reviewing the relevant federal
> regulations and our prior precedent, we decline to create an exception to the exhaustion
> requirement in this case.
>
> \* \* \* \*
>
> Our prior precedent makes clear that the exhaustion requirement for ERISA claims
> should not be excused for technical violations of ERISA regulations that do not deny
> plaintiffs meaningful access to an administrative remedy procedure through which they
> may receive an adequate remedy. Perrino, 209 F.3d at 1316-1317.

The result should be no different in this case. Although Plaintiff sent multiple letters to GM's

Service & Benefit Center and the Plan Administrator, apparently in an attempt to exhaust administrative

remedies, he did not follow the proper procedure set forth in the Supplemental Agreement and in the

Summary Plan Description. Thus, Plaintiff failed to exhaust his administrative remedies before filing

suit and as explained below, his claims should be dismissed.

C.    Plaintiff Failed to Exhaust his Administrative Remedies and Thus His Claims
       Should be Dismissed

In the present case, Plaintiff was a participant in the GM Pension Plan. That Plan is

incorporated within the Supplemental Agreement covering Pension Plan. Both documents were

collectively bargained between General Motors and the International Union, UAW. Appendix D of the

Supplemental Agreement contains the detailed procedure for employees to contest decisions with which

they disagree, including computation of pension benefits and/or partial or complete suspension of

payments (See Section I(B); Ex. D at 117). By law Plaintiff had to exhaust this procedure before filing

the instant suit. If not, his suit can be dismissed. See Section II(A), supra.

Plaintiff failed to exhaust his administrative remedies and his claims should be dismissed. The

appeal procedure in the Supplemental Agreement Covering Pension Plan is very specific. All appeals

must be submitted on the designated form and mailed to the Secretary, Pension Board of

Administration (Ex. D at 118). Here, Plaintiff sent letters to the GM Benefits & Service Center and the

Plan Administrator. That is not the proper procedure. Plaintiff was required to strictly comply with the

appeal procedure contained in the GM/UAW Supplemental Agreement covering Pension Plan if he

wished to challenge Defendants' decision to recover an overpayment by reducing his pension. Plaintiff's

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

13

failure to exhaust his administrative remedies should result in the dismissal of his claims.[5]

III.    Plaintiff's Remaining Arguments Are Insufficient To Warrant A Grant Of Summary
Judgment In His Favor

In addition to the above, Plaintiff also alleges (1) that GM cannot recover its overpayment from his pension because the bankruptcy court exempted it from capture (Pl. Motion at 3-4) and (2) that GM violated the Supplemental Agreement Covering Pension Plan by recovering more than 10% of his pension benefits to satisfy the overpayment (Pl. Motion at 1, 6, 12, 13). Neither of these arguments have any merit and should be rejected.

A.    Defendants Had a Right to Recoup the Overpayment from Plaintiff's Pension
Benefits.

Recovery of the overpayment of pension benefits is under the doctrine of recoupment and is not affected by the filing of a petition in bankruptcy. Further, the suspension of pension benefits in these circumstances is not subject to the automatic stay under section 362 (11 U.S.C. § 362).

In Brown v. General Motors Corporation, 152 B.R. 935 (W.D.Wisc.1993), the Court considered almost identical circumstances. Brown commenced an action in the state court seeking a declaration that General Motors was barred by plaintiff's bankruptcy discharge from recovering past benefit overpayments from his future pension benefits. The Court in Brown explained that the doctrine of recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff that arises under the same circumstances and cannot be discharged through bankruptcy:

> Recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction. *In re Holford*, 896 F.2d 176, 178 (5th Cir.1990). Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no affirmative recovery is permitted. *In re Rooster, Inc.*, 127 B.R. 560, 569 (Bankr.E.D.Pa.1991), 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff*, § 11 (1965).

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

---

[5] Pitchford v. General Motors Corp., 248 F.Supp.2d 675, 678 fn.1 (W.D. Mich.2003)(Even if former employee properly brought his claims under ERISA, such claims would have failed because he failed to exhaust his administrative remedies under Section K of Appendix D under the Plan); Lloyd v. General Motors Hourly Rate Employees Pension Plan, et al., 1 Fed.Appx 789, 790 (10th Cir. 2001) (Retiree's claims dismissed because he failed to exhaust the administrative remedies available to him.); Duncan v. General Motors Corp., 2006 WL 375343 (W.D.Ark. 2006) (Surviving spouse who sought benefits had her case terminated to enable her to exhaust her administrative remedies under the Supplemental Agreement Covering Pension Plan).

Because of its unique nature as a limited equitable defense the right of recoupment does not constitute a claim within the meaning of 11 U.S.C. § 101(5) which defines a claim as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment....

Since the right of recoupment carries with it no right to payment, it is not a claim. *See Mullen v. United States*, 696 F.2d 470, 472 (6th Cir.1983). It naturally follows that the potential assertion of recoupment against a claim by the debtor does not constitute a "debt" within the meaning of 11 U.S.C. § 101(12), which defines debt as "liability on a claim."

Since the right of recoupment is not a claim and its potential assertion is not a debt, the right is unaffected by a discharge in bankruptcy which operates as an injunction against actions to collect any *debt* discharged under § 727. 11 U.S.C. § 524(a)(2).
* * * *

Since the right of recoupment likewise provides no basis for an independent claim against the assets of the debtor or the estate, the right to recover against future benefits is not discharged. *See Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986); *In re Hiler*, 99 B.R. 238, 243 (Bankr.D.N.J.1989). (emphasis added). Id.at 938.

After examining the provisions of the GM Pension Plan, the Court in <u>Brown</u> concluded that the Pension Plan had a right to recoupment that was unaffected by the plaintiff's bankruptcy. Id. at 939.

Similarly in <u>In Re Jones</u>, 289 B.R. 188 (Bankr.M.D.Fla. 2002), the Court considered whether the State Patrol was allowed to reduce future disability benefits payable to the debtor to recoup overpayments resulting from the receipt of other income that was properly deductible from disability benefits. The debtor filed a Motion to Impose Sanctions against the State Patrol. The Court first advised that if recoupment applied, the automatic stay of 11 U.S.C. § 362 is not applicable:

It is well established that the automatic stay does not prohibit recoupment, as distinguished from setoff. This is of course, a correct statement of the law; however, it has no application whatsoever once a debtor receives a discharge, by virtue of 11 U.S.C. § 362(c)(2)(C). This section provides, in general, that a stay of any other act under subsection (a) of that section continues until the earliest of the time a discharge is granted. Thus, it is evident from the forgoing that cases dealing with recoupment, in a chapter 7 context for violations of the automatic stay, are of no significance to the facts of this case. Id. at 191.

The Court next held that the action of the State Patrol in reducing future benefits to recover an

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

15

overpayment is a recoupment and not a set-off:

> It should be noted, at the outset, that the action of the State Patrol is clearly a recoupment and not a set-off. Next, while the discharge prohibits a setoff of any debt as to the personal liability of a debtor, Section 524(a)(2) of the Code does not prohibit a recoupment. Moreover, the term "debt" is defined by 11 U.S.C. § 101(12) as a liability of a claim, which in turn is defined by 11 U.S.C. § 101(5), to mean a "right to payment." Recoupment is a defensive mechanism, which does not seek affirmative relief but merely seeks to defeat or reduce the claim by the entity who seeks recoupment. Several courts have considered this exact issue in the context of discharged obligations. <u>Id.</u>

The Court in <u>Jones</u>, citing other precedent, concluded by holding that the actions of the State Patrol was a proper exercise of recoupment and denied the debtor's Motion to Impose Sanctions:

> Based upon the foregoing, under either analysis as set forth in *Brown* or *Izaguirre,* this Court is satisfied that the State Patrol is exercising a proper recoupment of its disability benefits, notwithstanding that the debt in the Final Judgment has been discharged. Regardless of whether or not the State Patrol obtained a judgment against the Debtor, the fact remains that the State Patrol has the ability to properly exercise its defense of recoupment to the future disability payments received by the Debtor with respect to the prior overpayments in benefits. Inasmuch as this Court finds that the recoupment is proper, it is not necessary for this Court to determine whether or not the State Patrol properly asserted a sovereign immunity defense.

> Accordingly, it is
> ORDERED, ADJUDGED AND DECREED that the Motion to Impose Sanctions for Violation of 11 U.S.C. § 524 (Doc. No. 17) be, and the same is hereby, denied. <u>Id.</u> at 193.

In summary, under the above rationale, Defendants, as Administrator of the GM Pension Plan, had a right to recoup the overpayment of pension benefits from Plaintiff, regardless of any prior order from the bankruptcy court. Such right of recoupment is not subject to any automatic stay and is not dischargeable. Thus, Plaintiff's claim that General Motors violated Bankruptcy laws by recouping the $32,985.00 overpayment has no merit and should be dismissed.

> B.    Likewise, Defendants Did Not Violate ERISA by Remitting his Pension Benefits to the IRS While Plaintiff was in Bankruptcy

Plaintiff's Motion appears to allege that Defendants also violated ERISA by remitting his pension benefits to the IRS after the bankruptcy court found his pension benefits exempt from capture by creditors (Pl. Motion at 3-4). Defendants did not violate ERISA, or any other law, by remitting his pension benefits to the IRS during, or after, Plaintiff's bankruptcy. A tax debt is not dischargeable during bankruptcy and can continue to be collected during that time. *See* <u>26 U.S.C. §523</u>;    <u>In re</u>

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

<u>Chastang</u>, 116 B.R. 833, 834 (Bkrtcy.M.D.Fla.1990)(Debtor's federal income taxes for years in which he failed to file a return were non-dischargeable in bankruptcy).

Moreover, as Plaintiff points out, his pension benefits were exempt from the bankruptcy proceeding (Pl. Motion at 4). Hence, the pension benefits were not under control of the bankruptcy court and were subject to levy. <u>26 C.F.R. §301.6871(a)-2(a)</u> ("...[G]enerally the assets of a taxpayer are under control of the court in which such [bankruptcy] proceeding is pending, and the collection of taxes cannot be made by levying upon such assets. However, any assets which under applicable provisions of law are not under the control of the court, may be subject to levy."). Accordingly, Plaintiff's claims should be dismissed.

C.    Defendants Were Not Limited to Only Recouping 10% of Plaintiff's Pension Benefits to Satisfy the Overpayment

Plaintiff erroneously suggests that Defendants could not reduce his pension benefits to recover the $32,985.00 overpayment unless he gave them written authorization to do so. Even with written authorization, Plaintiff erroneously claims Defendants could recoup no more than 10% from his pension benefits each week. He claims that these actions alienate his pension benefits and violate the GM Pension Plan. Plaintiff's interpretation of Article 7, Section 3 of the GM Pension Plan is incorrect. Defendants are not limited to reducing his pension by only 10% when recouping an overpayment and do not alienate his pension when doing so.

As required under section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), the GM Pension Plan contains a provision prohibiting the assignment or alienation of pension benefits (Ex. D at 67-68). Consistent with ERISA, section 206(d)(2), the Plan does allow a revocable assignment not to exceed 10% of any benefit payment. However, Plaintiff misinterprets this section as it is applicable to situations where the participant has received an overpayment from another GM benefit plan and has authorized a deduction from his monthly pension benefit to repay such overpayment (e.g. Extended Disability Benefits under the General Motors Life and Disability Benefits Program):

The pension fund shall not in any manner be liable for or subject to the debts or liabilities of any employee, separated employee, retired employee, pensioner or surviving spouse. No right, benefit, pension or supplement at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge or encumbrances of any kind except in accord with provisions of a Qualified Domestic Relations Order

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

17

within the meaning of IRC, Section 414(p). If any person shall attempt to, or shall alienate, sell, transfer, assign, pledge or otherwise encumber accrued rights, benefits, pension or supplements under the Plan or any part thereof, or if by reason of bankruptcy or other event happening at any time such benefits would otherwise be received or enjoyed by anyone else, the Corporation may terminate the interest of such employee, pensioner or surviving spouse in any such benefit and instruct the trustee to hold or apply it to or for the benefit of such employee, pensioner or surviving spouse, spouse, children, or other dependents, or any of them as the Corporation may instruct; provided, however, that any pensioner, or surviving spouse, entitled to a monthly benefit under the Plan:

\* \* \* \*

(e)    may have amounts of not less than $80.00, but in no event more than 10% of the retired employee's monthly pension, withheld to repay any outstanding overpayment owing to any benefit plan of the Corporation, pursuant to written authorization and direction acceptable to the Corporation. (Ex. D at 68)(emphasis added)[6].

Here, Defendants reduced Plaintiff's pension benefit to recoup an overpayment from the Pension Plan itself, not another General Motors benefit plan. This present situation is akin to an employee who is receiving a social security disability award that results in a pension benefit overpayment. In those cases, General Motors also reduces the pensioner's benefit by 50%, just as it did in this case:

If the pensioner received an overpayment of benefits because of a receipt of a retroactive Social Security Disability Insurance Benefit award and the amount of overpayment is not promptly repaid in a lump sum, a deduction shall be made from future monthly benefits equal to 50% of the total amount of such monthly benefits until the total amount of suspended equals the overpayment. (Ex D at 112).

Furthermore, the Treasury Regulations do not consider the recoupment of an overpayment to be as assignment or alienation of a person's pension benefit and expressly permit a benefit plan to withhold benefits to compensate for prior overpayments.

(2) *Specific arrangements not considered an assignment or alienation.* The terms "assignment" or "alienation" do not include...the following arrangements:
\* \* \* \*
(iii) Any arrangement for the recovery by the plan of overpayments of benefits previously made to a participant. 26 C.F.R. §1.401(a)-13(c)(2)(iii).

*See also* Coar v. Kazimir, 990 F.2d 1413, 1422 (3rd Cir.1993) (Noting that clause 13(c)(2)(iii) excludes from the anti-alienation restrictions an action by a benefits plan to offset overpayments against benefits.) Therefore, in this case a recoupment is authorized by the Treasury Regulations. GM was not limited

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

---

[6] This section closely tracks the language of 29 U.S.C. §1056.

18

to recouping only 10% and did not need Plaintiff's authorization to reduce his pension by 50% or more to recoup the $32,985.00 overpayment. Plaintiff's claims should be dismissed.

> **D.    Plaintiff's Claim for Breach of Fiduciary Duty has No Merit and Should Be Dismissed.**

Count II of Plaintiff's Complaint alleges a breach of fiduciary duty. A breach of fiduciary duty claim cannot be maintained under ERISA, § 502(a)(3) because Plaintiff has an adequate remedy under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B) provides Plaintiffs a remedy in these circumstances:

> (a) Persons empowered to bring a civil action.
> A civil action may be brought –
> > (1) by a participant or beneficiary –
> > > (B) <u>to recover benefits due to him</u> under the terms of his plan, <u>to enforce his rights</u> under the terms of the plan, or <u>to clarify his rights to future benefits</u> under the terms of the plan; (emphasis added)

The Supreme Court in <u>Varity Corporation v. Howe</u>, 516 U.S. 489, 116 S.Ct. 1065 (1996), explained that when a remedy is available under another section of ERISA, equitable relief under §502(a)(3) is not appropriate:

> Third, the statute authorizes "*appropriate*" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." <u>Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."</u> <u>Id.</u> at 515 (citations omitted, emphasis added)

*See also* <u>Mertens v. Hewitt Assoc.</u>, 508 U.S. 248, 258-259, 113 S.Ct. 2063, 2069-2070 (1993)(Court held that "other equitable relief" as used in ERISA, § 502(a)(3) does not encompass monetary damages); <u>Katz v. Comprehensive Plan of Group Insurance, ALLTEL</u>, 197 F.3d 1084, 1088-1089 (11th Cir. 1999)(District court's dismissal of claim seeking life insurance benefits affirmed where plaintiff had adequate remedies available under §1132(a)(1)(B). Further, court stated, "However, the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor."); <u>Ogden v. Blue Bell Creameries, U.S.A., Inc.</u>, 348 F.3d 1284 (11th Cir. 2003) (ERISA § 502(a)(3) has no application when an adequate remedy is available under § 502(a)(1)(B)).

Because Plaintiff can bring his action under section 502(a)(1)(B) to recover benefits under an

LAW OFFICES

HARDY, LEWIS
& PAGE, P.C.

401 S OLD WOODWARD AVE
SUITE 400

BIRMINGHAM, MI 48009 6629

(248) 645-0800

19

ERISA-covered plan, he cannot maintain a claim for breach of fiduciary duty under § 502(a)(3) providing for "other appropriate equitable relief." Thus, Plaintiff's claim for breach of fiduciary duty has no merit and should be dismissed.

## CONCLUSION

Plaintiff's Motion for Summary Judgment should be denied. He is unable to establish that Defendants are liable for reducing his pension benefits to recoup an overpayment. Further, Plaintiff cannot show that any other action taken by Defendants violated either the Supplemental Agreement Covering Pension Plan, ERISA, or any other law.

In fact, it is Defendants who are entitled to summary judgment. The statutes, regulations and case law all discharge any liability Defendants may have to Plaintiff for monies they remitted to the IRS from his pension benefits pursuant to a Notice of Levy. Also, Plaintiff's claims should fail because he failed to exhaust his administrative remedies under the Supplemental Agreement. Plaintiff did not follow the appeal procedure. He neither submitted his appeal on the designated form nor did he send his "appeal" to the Secretary, Pension Board of Administration as required by the appeal procedure.

Accordingly, Plaintiff's claims should be dismissed in their entirety and Defendants should be awarded any and all applicable costs, sanctions and attorney fees for having to defend this action.

Respectfully submitted:

_/s/Mark D. Filak_____
David M. Davis (MI Bar No. P24006)
Mark D. Filak (MI Bar No. P61633)
Attorney for Defendants
Hardy, Lewis & Page, P.C.
401 South Old Woodward Avenue, Ste. 400
Birmingham, Michigan 48009
Telephone: (248) 645-0800
E-mail: mdf@hardylewis.com

Dated: March 7, 2008
00204804.WPD

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

WALTER J. LAWRENCE,

        Plaintiff,

                                  Case No. 5:07-CV-408 OC

vs.

                                Hon. William Terrell Hodges

GENERAL MOTORS HOURLY-RATE        Magistrate Judge Gary R. Jones
EMPLOYEES PENSION PLAN, and
GENERAL MOTORS CORPORATION,

        Defendants.

---

| | |
|---|---|
| Walter J. Lawrence, In Pro Per<br>3101 SW 34th Avenue, # 905<br>Ocala, Florida 34474 | David M. Davis (MI Bar No. P24006)<br>Mark D. Filak (MI Bar No. P61633)<br>Attorney for Defendants<br>Hardy, Lewis & Page, P.C.<br>401 South Old Woodward Avenue, Ste. 400<br>Birmingham, Michigan 48009<br>Telephone: (248) 645-0800<br><br>Cynthia L. May (0029297)<br>Co-Counsel for Defendants<br>Greenberg Taurig, P.A.<br>625 E. Twiggs Street, Ste. 100<br>Tampa, FL 33602<br>Telephone: (813) 318-5700 |

---

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant: Walter J. Lawrence, #162, 3101 S.W. 34th Avenue, #90 Ocala, FL 34474.

LAW OFFICES
HARDY, LEWIS
& PAGE, P.C.
401 S OLD WOODWARD AVE
SUITE 400
BIRMINGHAM, MI 48009-6629

(248) 645-0800

                                 /s/Mark D. Filak
                                Mark D. Filak (MI Bar No. P61633)
                                Attorney for Defendants
                                Hardy, Lewis & Page, P.C.
                                401 South Old Woodward Avenue, Ste. 400
                                Birmingham, Michigan 48009
                                Telephone: (248) 645-0800

Dated: March 7, 2008                    E-mail: mdf@hardylewis.com