Art. VI

## ARTICLE VI
### ADMINISTRATION

**Section 1.**

The Corporation shall be responsible for the general administration of the Plan and for carrying out the provisions thereof.

**Section 2.**

(a) The Corporation shall have all such powers as may be necessary to carry out the provisions of the Plan except as the powers and duties of the Corporation may be modified by any collective bargaining agreement.

(b) Subject to the limitations of (a) above, the Corporation may from time to time establish rules for the administration of the Plan and the transaction of the Plan's business.

(c) In making any such determination or rule, the Corporation shall pursue uniform policies and shall not discriminate in favor of, or against any employe or group of employes.

## ARTICLE VII
### PENSION BENEFITS AND SUPPLEMENTS

**Section 1. Pension and Supplement Payments**

(a)(1) Pensions and supplements shall be paid monthly.

(2) The first monthly payment of an employe's pension other than for total and permanent disability pension shall become payable with the employe's consent on

---

Art. VII, 1(a)(2)

the first day of the month following the month in which the employe actually retires, and the pension shall be payable monthly thereafter.

(3) Total and permanent disability pension shall be payable monthly during the continuance of total and permanent disability and while the pensioner otherwise remains eligible for such benefits. Such payments shall begin the later of:

(i) the first day of the month which includes the date the required proof of disability is received by the Corporation, or

(ii) the first day of the month which includes the date the employe has been continuously and totally disabled for a period of 5 months.

Successive periods of absence due to the same disability as that upon which claim for total and permanent disability pension is based and aggregating at least five months will be considered the same as one continuous absence provided that the aggregate will not include any such absence which precedes the last day at work by more than one year, or

(iii) the first day of the third month following the date the required proof of disability is received by the Corporation, or

(iv) the first day of the third month following determination by the impartial clinic that the employe is totally and permanently disabled.

These subsections (iii) and (iv) shall not be applicable (a) if the employe dies prior to such date, or (b) where Extended Disability Benefits are less than the benefits payable under this Plan.

(4) A supplement for an employe shall be payable in the manner provided in Section 6 of Article II.

Art. VII, 1(a)(5)

(5) Pension and supplement payments shall not be payable with respect to any period for which weekly sickness and accident benefits are payable to the employe under any plan to which the Corporation has contributed. If such sickness and accident benefits during any month are payable for a period of less than 4-1/3 weeks the sum of the monthly pension benefit (excluding any special benefit) and supplement payable for that month shall be reduced by the percentage which such period of sickness and accident benefits is of 4-1/3 weeks.

(b) A pensioner who is reemployed by the Corporation shall cease to receive, during such reemployment, any monthly pension benefits to which the pensioner might otherwise be entitled. Any such reemployed pensioner will have his credited service at the time of retirement reinstated. A reemployed pensioner shall accrue additional credited service as a result of such employment and the monthly pension benefits of such pensioner shall be adjusted with regard to such employment upon subsequent cessation of active service.

(c) In the event that it shall be found that any pensioner or surviving spouse to whom a pension or survivor benefit is payable is unable to care for the affairs of such pensioner or surviving spouse because of illness or accident any monthly pension payment and supplement or survivor benefit due (unless prior claim therefor shall have been made by a duly qualified guardian or other legal representative) may be paid to the spouse, parent, brother, sister or other person or party, (including private or public institutions) deemed by the Corporation to have incurred expense for such pensioner otherwise entitled to payment. Any such payment shall be a payment for the account of the pensioner and shall be a complete discharge of any liability of the Plan therefor.

52

Art. VII, 1(d)

(d) In order to retire under the Plan, an employe must have unbroken seniority at the time of his retirement except that a person who is eligible for benefits under the Guaranteed Income Stream Benefit Program and is not receiving deferred pension benefits under this Plan, shall not be precluded from retiring without return to employment even though he shall have incurred a break in seniority while on continuous layoff from the Corporation.

(e) Notwithstanding any other provision of this Section 1, an employe attaining age 70-1/2 on and after January 1, 1988, will commence monthly receipt of his accrued benefits under this Plan, beginning April 1 of the calendar year immediately following the year the employe attains or attained age 70-1/2. No employe shall be eligible to receive any such payment for any month prior to April, 1990, however, and the first such monthly payment shall be April 1, 1990. Only those employes who attained age 70-1/2 during 1988 and 1989 are eligible for any payment under this provision. No employe attaining age 70-1/2 prior to January 1, 1988, shall be eligible hereunder. An employe attaining age 70-1/2 after December 31, 1989, shall have his monthly payment based on his pension benefit accrual as of December 31 of the year in which he attains age 70-1/2. The actuarial value of the sum of all cash distributions received by any otherwise eligible employe prior to his actual retirement under this Plan will be used as an offset from any additional benefit accrual that might otherwise have been payable to such employe as a result of his working for the Corporation.

Section 2. Retention of Deferred Pension if Separated

(a) Any employe who loses accumulated credited service under the provisions of Article III, Section 2 shall be eligible for a deferred pension if such employe

53

Art. VII, 2(a)

is not retired and eligible for pension benefits pursuant to Article II, and provided the credited service of such employe at separation is at least 5 years, or such employe satisfies the "service" requirements of Article III, Section 6.

(b) The monthly amount of such deferred pension for an employe breaking seniority on or after October 1, 1990 shall be a basic benefit for each year of credited service that he had when he broke seniority, determined by his Benefit Class Code when he broke seniority as set forth in the table immediately following:

| Date Seniority Broke | Benefit Class Code | Basic Benefit Rate |
|---|---|---|
| | | $ |
| October 1, 1990 through September 30, 1991 | A | 28.35 |
| | B | 28.60 |
| | C | 28.85 |
| | D | 29.10 |
| October 1, 1991 through September 30, 1992 | A | 29.50 |
| | B | 29.75 |
| | C | 30.00 |
| | D | 30.25 |
| October 1, 1992 and After | A | 30.70 |
| | B | 30.95 |
| | C | 31.20 |
| | D | 31.45 |

54

Art. VII, 2(c)(2)

(2) a monthly pension commencing after age 60 and prior to age 65 determined in accordance with subsection (b) of this Section 2, such pension being reduced by 6/10 of 1 percent for each complete calendar month by which such former employe is under the age of 65 at the date the deferred pension commences, or

(3) a monthly pension commencing after age 55 and prior to age 60 for a former employe who breaks seniority on or after October 1, 1976, determined in accordance with subsection (b) of this Section 2. Such pension shall be multiplied by a percentage as set forth in the following table:

| Age, When Pension Commences | Percentage* |
|---|---|
| | % |
| 55 | 42.8 |
| 56 | 46.8 |
| 57 | 51.2 |
| 58 | 55.5 |
| 59 | 59.6 |
| 60 | 64.0 |

*Prorated for intermediate ages, computed on the basis of the number of complete calendar months by which the employe is under the age he will attain at his next birthday.

(d) The deferred pension shall be payable commencing the later of the first day of the month following the month (i) in which such employe attains the applicable age set forth in Section 2(c) of this Article VII, or (ii) during which the Corporation receives a written request from such former employe, provided that such written request shall be valid and effective only if it is filed with the Corporation not

55

Art. VII, 2(d)

earlier than 60 days prior to the date such former employe first becomes eligible for such benefit, and, for such employe who broke seniority prior to October 1, 1976, not later than his 70th birthday, otherwise no deferred vested pension benefit shall be payable at any time.

(e) If, prior to the commencement of deferred pension benefits, an employe is reemployed by the Corporation and: (1) acquires seniority, or (2) is reemployed by, and works for, the Corporation at the plant where he worked immediately prior to the loss of his credited service, or (3) dies after having qualified for a deferred pension in accordance with this Section 2, such employe shall, in lieu thereof, have reinstated the credited service in effect when such deferred pension was granted; provided that if an employe with 10 or more years of credited service

(1) is reemployed by, and works for, the Corporation within 36 months of the date he lost credited service under Article III, Section 2, and

(2) becomes disabled while employed by the Corporation prior to acquiring 5 months of seniority, and such disability is continuous for a period of 5 months during which he makes proper application and submits medical evidence satisfactory to the Corporation that he is totally and permanently disabled as set forth in Section 3 of Article II,

he will be deemed eligible for a disability pension under Section 3 of Article II, and such pension will be payable pursuant to Section 1 of Article VII, as though he had been an employe with seniority throughout such disability period.

(f) The amount of any monthly pension benefit otherwise payable to a former employe eligible for a deferred pension will be reduced by the value of any past and future benefits paid or payable to any

56

Art. VII, 2(f)

alternate payee(s) under a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).

The actuarial value will be used to determine any amount to be paid to any such payee(s), if applicable, and the remaining benefit entitlement of the employe.

## Section 3. Non-Alienation of Benefits

The pension fund shall not in any manner be liable for or subject to the debts or liability of any employe, separated employe, retired employe, pensioner or surviving spouse. No right, benefit, pension or supplement at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge or encumbrances of any kind except in accord with provisions of a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p). If any person shall attempt to, or shall, alienate, sell, transfer, assign, pledge or otherwise encumber accrued rights, benefits, pensions, or supplements under the Plan or any part thereof, or if by reason of bankruptcy or other event happening at any time such benefits would otherwise be reccived or enjoyed by anyone else, the Corporation in its discretion may terminate the interest of such employe, pensioner or surviving spouse in any such benefit and instruct the trustee to hold or apply it to or for the benefit of such employe, pensioner or surviving spouse, his or her spouse, children or other dependents, or any of them as the Corporation may instruct; provided, however, that any pensioner or surviving spouse, entitled to a monthly benefit under the Plan:

(a) who elects Blue Cross, Blue Shield, or equivalent coverage, made available under the General Motors Health Care Program for Hourly

57

Art. VII, 3(a)

(b) Employes may, insofar as it is consistent with the regulations governing the plans, providing such coverage, participate in such coverage and have deducted from the monthly pension and any supplement, if the monthly pension shall be insufficient, pursuant to written authorization and direction acceptable to the Corporation, the required contribution for such coverage.

(c) who elects optional or dependent life insurance coverage(s) made available under the General Motors Life and Disability Benefits Program for Hourly Employes may have deducted from the monthly pension, pursuant to written authorization and direction, acceptable to the Corporation, the required contribution(s) for such coverage(s).

(d) may have amounts of not less than $40.00, but in no event more than 10% of the retired employe's monthly benefit, withheld to repay any outstanding overpayment owing to any benefit plan of the Corporation, pursuant to written authorization and direction acceptable to the Corporation.

Art. VIII

# ARTICLE VIII

## MISCELLANEOUS PROVISIONS

### Section 1. No Enlargement of Employment Rights.

The Corporation's rights to discipline or discharge employes shall not be affected by reason of any of the provisions of the Plan.

### Section 2. Internal Revenue Service Approval

This Plan as amended is contingent upon and subject to obtaining and retaining such approval of the Commissioner of Internal Revenue as may be necessary to establish the deductibility under Section 404 of the Internal Revenue Code for income tax purposes of any and all contributions made by the Corporation to this Plan and to establish this Plan and related trust as being qualified and tax exempt under Sections 401 and 501(a) or other applicable provisions of the Internal Revenue Code. Any modification or amendment of the Plan may be made retroactively, if necessary or appropriate, to qualify or maintain the Plan as a plan and trust meeting the requirements of Sections 401 and 501(a) of the Internal Revenue Code, as now in effect or hereafter amended, or any other applicable provisions of the federal tax laws, as now in effect or hereafter, amended or adopted, and the regulations issued thereunder.

### Section 3. Corporation Board of Directors Approval.

Continuation of the Plan as amended in 1990 is contingent upon obtaining the approval of the Corporation's Board of Directors not later than June 1, 1991.

Art. VIII, 4

## Section 4. Named Fiduciary

The Finance Committee of the Corporation's Board of Directors shall be the named fiduciary with respect to the Plan. The Finance Committee may delegate to various officers, employes and committees of the Corporation authority to carry out such of its responsibilities as it deems proper to the extent permitted by the Employee Retirement Income Security Act of 1974.

## Section 5. Limitation of Benefits

No benefits paid from this Plan will exceed the limits of Section 415 of the Internal Revenue Code.

## ARTICLE IX
## AMENDMENT AND TERMINATION

## Section 1. Amendment

The Corporation reserves the right to amend, modify, suspend or terminate the Plan by action of its Board of Directors, provided; however, that no such action shall alter the Plan or its operation, except as may be required by the Internal Revenue Service for the purpose of meeting the conditions for qualification and tax deduction under Sections 401, 404, and 501(a) of the Internal Revenue Code, in respect of employes who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement pertaining to pension benefits and supplements as long as any such agreement, is in effect. Except as provided in Article V, Section 3, no such action shall operate to recapture for the Corporation any contributions previously made to the

60

trustee or insurance company under the Plan, nor, except to the extent necessary to meet the requirements of the Internal Revenue Service or any other governmental authority, to affect adversely the pensions or supplements of employes already retired or the trust fund or insured fund their securing such pensions and supplements.

## Section 2. Termination of Plan

(a) If the Corporation, in accordance with Section 1 of this Article IX, or the Pension Benefit Guaranty Corporation terminates the Plan, the amount of the assets, which are available to provide benefits, and which are held by the trustee as of the termination date, shall be allocated, after deducting expenses for administration or liquidation, in the following manner and order to the extent of the sufficiency of such assets:

(1) First, in the case of benefits payable as an annuity:

(i) in the case of the benefit of a participant or beneficiary which was in pay status as of the beginning of the 3-year period ending on the termination date of the Plan, to each such benefit, based on the provisions of the Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least;

(ii) in the case of a participant's or beneficiary's benefit (other than a benefit described in subsection (a)(1)(i)) which would have been in pay status as of the beginning of such 3-year period if the participant had retired prior to the beginning of the 3-year period and if his benefits had commenced (in the normal form of annuity under the Plan) as of the

61

Art. IX, 1

beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

(2) Second, to all other benefits (if any) of individuals under the Plan which are guaranteed under the plan termination insurance provisions of the Employee Retirement Income Security Act of 1974 determined without regard to Section 4022B(a) of said Act.

(3) Third, to all other nonforfeitable benefits under the Plan.

(4) Fourth, to all other benefits under the Plan.

(b)(1) The amount allocated under any of the preceding subsections of this Section 2 with respect to any benefit shall be properly adjusted for any allocation of assets with respect to that benefit under a prior subsection of this Section 2.

(2) If the assets available for allocation under subsections (a)(1) and (a)(2) are insufficient to satisfy in full the benefits of all individuals which are described in such subsections, the assets shall be allocated pro rata among such individuals on the basis of the present value (as of the termination date) of their respective benefits described in such subsections.

(3) If the assets available for allocation under subsection (a)(3) are not sufficient to satisfy in full the benefits of individuals described therein,

(i) Except as provided in subsection (b)(3)(ii), the assets shall be allocated to the benefits of individuals described in subsection (a)(3) on the basis of the benefits of individuals which would have been described in subsection (a)(3) under the Plan as in effect at the beginning of the 5-year period ending on the date of the Plan's termination.

(ii) If the assets available for allocation under subsection (b)(3)(i) are sufficient to satisfy in full the benefits described therein (without regard to this subsection (b)(3)(ii)), then for purposes of subsection (b)(3)(i), benefits of individuals described therein shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such 5-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in subsection (b)(3)(i) and any assets remaining to be allocated under such subsection shall be allocated under subsection (b)(3)(i) on the basis of the Plan as amended by the next succeeding Plan amendment effective during such period.

(c) If the Secretary of the Treasury determines that the allocation made pursuant to this Section 2 results in discrimination prohibited by Section 401(a)(4) of the Internal Revenue Code of 1986, or as may be subsequently amended, then, if required to prevent the disqualification of the Plan (or any trust under the plan) under Section 401(a) or 403(a) of such Code, the assets allocated shall be reallocated to the extent necessary to avoid such discrimination.

(d) In the event of termination or partial termination of the Plan, the right of all affected employees to benefits accrued to the date of such termination, partial termination or discontinuance, to the extent funded as of such date, are nonforfeitable.

Art. IX. 2(e)

(e) Anything in the Plan to the contrary notwithstanding it shall not be possible at any time prior to the satisfaction of all liabilities with respect to employes under the plan for any part of the corpus or income of the Pension Fund to be used for, or diverted to purposes other than the exclusive benefit of employes. After satisfaction of all liabilities to participants and beneficiaries under the Plan, any residual assets of the Pension Fund will be distributed to the Corporation if the distribution does not contravene any applicable provision of law.

**Section 3. Merger or Consolidation**

In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan after September 2, 1974, each participant in the Plan would, if the Plan then terminated, receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

# ARTICLE X
# DEFINITIONS

**1. Employe**

(a) Any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owned domestic subsidiary in accordance with I.R.C. Section 414(b), (c), and (m) thereof, including:

(1) hourly-rate persons employed on a full time basis;

(2) hourly-rate persons on incentive pay plans;

(3) students from educational institutions who are enrolled in cooperative training courses on hourly rate;

64

Art. X. 1(a)(4)

(4) part-time hourly-rate employes who, on a regular and continuing basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular work week, provided such employes work one-half or more of the employing unit's regular work week;

(5) hourly-rate employes of Delco Electronics Corporation (DEC).

(b) The term "employe" shall not include:

(1) temporary employes;

(2) part-time employes, who work less than one-half of the employing unit's work week;

(3) employes represented by a labor organization which has not signed an agreement making this Plan applicable to such employes;

(4) employes of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation acquired or formed by the Corporation on or after January 1, 1984;

(5) leased employes as defined under Section 414(n) of the Internal Revenue Code;

(6) employes of Saturn Corporation.

**2. Trustee or Insurance Company**
The bank or banks, trust or insurance company or companies or any combination thereof designated by a "trust agreement" or "contract" as the "medium" for financing the Plan.

65

Art. X, 3

### 3. Seniority

Seniority means the period following the most recent date of hire by the Corporation, and subsequent to which there has been no loss of credited service (as loss of credited service is defined in the Plan), or if the employe is represented under a collective bargaining agreement seniority will be as defined in such agreement. An employe who is retired on or after October 1, 1984, and thereby has his pension reinstated, shall be deemed, solely to satisfy purposes of The General Motors Hourly-Rate Employes Pension Plan, to have seniority while so employed.

### 4. Federal Social Security Benefit

A Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age means a benefit determined and payable under Title II of the Federal Social Security Act, as now in effect or as hereafter amended, without any reduction being made therefrom based on the age of the recipient.

### 5. Trust Fund; Pension Fund; Insured Fund

The General Motors Hourly-Rate Employes Pension Plan fund established by payments made by the Corporation in accordance with Article V herein. Such fund (herein called the trust fund) shall be comprised of either a pension fund or insured fund, or a combination thereof.

### 6. Base Hourly Rate

For the purpose referred to in Section 6(g) of Article II of this Plan only, Base Hourly Rate shall be the higher of:

(a) the employe's highest straight-time hourly rate, or

Art. X, 6(b)

(b) for an employe who worked on incentive or piece work in at least 4 pay periods, the employe's average earned straight-time hourly rate for the first 4 pay periods (or, if higher, for the last 4 pay periods) for which he had any incentive earnings (provided, however, that if he worked in less than 4 pay periods but during each such pay period worked he worked on incentive or piece work, his average earned straight-time hourly rate for such pay periods worked shall be used)

during the last 13 consecutive pay periods ending with the pay period which includes his last day worked, plus any cost-of-living allowance in effect with respect to the employe's last day worked for the Corporation.

### 7. Basic Benefit

The monthly benefit payable under the Plan for the lifetime of a retired or separated employe, including a benefit reduced by a percentage because of early retirement. The term "basic benefit" shall not include any temporary benefit, special benefit, or supplement payable under the Plan.

### 8. Age 62 and One Month

"Age 62 and one month" means age 62 and one month except that for purposes of determining the month for which the temporary benefit provided in Article II, Section 4 and the early retirement and interim supplements provided in Article II, Section 6 shall cease and the month for which the basic benefit is redetermined in accordance with Article II, Section 4, it shall mean age 62 if both a temporary benefit, early retirement supplement, or interim supplement under the Plan and a benefit under the Federal Social Security Act could otherwise be payable.

Art. X, 9

**9. Actuarial Value**

The actuarial value as of any determination date shall be calculated on the basis of the UP-84 mortality table and the applicable interest rate used by the Pension Benefit Guaranty Corporation (PBGC) as of the first day of the plan year preceding the determination date.

68

Appendix A

## APPENDIX A

### (HOURLY-RATE EMPLOYES PENSION PLAN)

A Benefit Class Code for the sole purpose of this Plan is hereby established for each job classification in effect on September 17, 1990 on the basis of the maximum base hourly rate (which term as used herein shall include incentive earnings unless otherwise noted) applicable to the job classification on that date, as follows:

| For Job Classifications Having a Maximum Base Hourly Rate of | | Benefit Class Code |
|---|---|---|
| On or after September 17, 1990 but prior to October 1, 1990 | Less than $14.48 | A |
| | $14.48 but less than $14.70 | B |
| | $14.70 but less than $15.63 | C |
| | $15.63 and over | D |
| On or after October 1, 1990 | Less than $16.16 | A |
| | $16.16 but less than $16.38 | B |
| | $16.38 but less than $17.31 | C |
| | $17.31 and over | D |

(1) The Benefit Class Code applicable to an employe is the Benefit Class Code for the job classification held by the employe for the greatest number of calendar days during the 24 consecutive months immediately preceding his last day worked.

(2) The Benefit Class Code to be established for any new job classification put into effect after September 17, 1990 shall be whichever Benefit Class Code is applicable to other job classifications having the same maximum base hourly rate on the date that such new job classification is put into effect. With respect to a job classification that was obsolete as of September 17, 1990 a hypothetical maximum base hourly rate applicable thereto shall be determined by increasing the maximum base hourly rate for that job

69

Appendix A(2)

classification at the time of its discontinuance to the extent necessary so as to give effect to general wage increases (including cost-of-living allowance transfers) that have occurred since such discontinuance, and the Benefit Class Code for such classification so derived shall be "whichever Benefit Class Code herein is applicable" to other job classifications having the same maximum base hourly rate on that date.

(3) For purposes hereof, the maximum base hourly rate of a job classification paid on a day-work basis at any plant or facility shall be the maximum straight-time hourly rate for that job classification at such plant or facility (excluding any cost-of-living allowance and premiums).

(4) The maximum base hourly rate of a job classification in effect on September 6, 1967 and paid under an "incentive method of pay at any plant or facility shall be the average straight-time hourly earned rate (including incentive earnings and any wage increases and cost-of-living allowance transfers which, as of September 6, 1967, were not factored in the base rate of the job classification but excluding any cost-of-living allowance and premiums) for all hours worked by all employes in that job classification at such plant or facility for the period beginning September 5, 1966, and ending September 3, 1967, plus any wage increases and cost-of-living allowance transfers effective for that job classification subsequent to September 6, 1967.

In the event an employee is transferred to a job which results in a lower basic benefit rate, such employee's vested pension benefit, if any, shall not be less than the amount of his accrued pension benefit on the date of such transfer to such job.

70

Appendix B

# APPENDIX B

For the sole purpose of Article III, Section 5 of the Plan, all approved job classifications set forth in the Local Wage Agreements as of September 14, 1973 of the Central Foundry Plant, Danville, Illinois, the Central Foundry Plant, Defiance, Ohio, the Central Foundry Malleable Iron Plant, Saginaw, Michigan, and the Central Foundry Grey Iron Plant, Saginaw, Michigan, are designated foundry jobs at the respective plant locations listed herein for each such respective plant location. No other job classifications shall be designated foundry jobs.

## Central Foundry Plant, Danville, Illinois

Bulldozer Operator
Bus Boy
Cashier
Cook
Crane Operator, Locomotive
Crane Operator - Yard & Bridge
Driver - Licensed Trucks - Tractor & Trailer
End Loader Operator
Kardex Clerk
Kitchen Help
Pattern & Maintenance Clerk
Pattern Storage and Transport
Salvage Reclaimer
Scrap Cutter - Torch
Shipping Clerk
Sprue Crane, Hook Up
Stock Room Clerk
Stock Room and Receiving
Warehouse Attendant
Window Washer
Yard Labor
Yard Switchman

71

Appendix B

**Central Foundry Plant,
Danville, Illinois (Cont'd.)**

Garage Mechanic
Machinist
Pattern Maker, Wood & Metal
Power House Operator.

**Central Foundry Plant, Defiance, Ohio**

Bus Boy
Cashier
Clerk - Pattern and/or Maintenance
Cook
Crane Operator - Locomotive
Dispatcher - Materials
Driver - Licensed Trucks - Tractor
   and Trailer - Semi
Heavy Equipment Operator
Inspection Department - Inspection
   (Special Assignment)
Kitchen Help
Locomotive Operator
Safety Equipment Repair
Salvage Reclaimer
(2)Shipping Clerk
Yard Labor

Blacksmith
Casting Layout
(3)Garage Mechanic
(1)Machinist
Pattern Maker - Leader
Pattern Maker - Wood & Metal
Shift Operating Engineer
Tool Grinder

(1)Designated as a foundry job only for those
employes so classified who work in Plant 2,
816 Department.

72

Appendix B

**Central Foundry Plant,
Defiance, Ohio (Cont'd.)**

(2)Designated as a foundry job only for those
employes so classified who work in
Plant #1, 539 Department.

(3)Designated as a foundry job only for those
employes so classified who work in Plant #2,
816 Department, Battery Charge Area.

**Central Foundry Malleable Iron Plant,
Saginaw, Michigan**

Bull Dozer Operator
Bus Boy
Cashier
Clerk - Pattern and Maintenance
Cook
Crane Operators - Locomotive
Driver-Licensed Trucks, Tractor,
   and Trailer
Kitchen Help
Salvage Reclaimer
Stock Room and Receiving
Yard Labor

Blacksmith
Core and/or Mold Maker - Experimental -
   Bench & Floor
Garage Mechanic
Inspector - Layout
Machinist - Maintenance
Machinist - Miscellaneous
(1)Machinist - Pattern
Pattern Maker - Leader
Pattern Maker - Wood and Metal
Power House Operator

(1)Designated as a foundry job only for those
employes so classified who work in
Department 16.

73

Appendix B

## Central Foundry Grey Iron Plant, Saginaw, Michigan

(1)Attendant - Pattern Storage
Attendant - Pattern Storage - Leader
Clerks - Receiving - (Includes Inspectors)
Crane Hooker or Signal Man
Crane Operator - Locomotive
Crib Attendant - Maintenance
Crib Attendant - Pattern Shop
Drill Press Operator
Driver - Licensed Passenger Cars
Drivers - Licensed Trucks - Receiving & Yard
(1)Equipment Operator - Special (Including Bay, City Shovel, Bull Dozer, Pay Loader Shovel Operator)
Field Sand Gasoline Locomotive Operator
Flask Repair - Metal Flask
Flask Repair - Metal Flask - Leader
Gardener
Laborer - Yard - Maintenance Leader
Labor - Yard - Maintenance - Railroad Track Repair
Locker Room Attendant
Milling Machine Operator - Driers
(2)Oiler - Machinery, Equipment and Motors
Power House Attendant
Receiving Department - Leader
Salvage - Flask Cutter
Crane Repairman - (Also Operates Crane)
Crane Repairman - Leader
Die Repair
Flask Welder

-74-

## Central Foundry Grey Iron Plant, Saginaw, Michigan (Cont'd.)

Grinder - Cutter
Grinder Operator - Blanchard
Inspector - Layout
Machine Repair - Machinist
Maintenance - Leader
Machine Repair - Machinist
Maintenance
Machine Repair - Machinist
Pattern Shop
Power House - Engineer - Class "B"
Power House - Fireman
Power House - Repairman
Power House - Repairman - Leader
Truck Repair - Gas
Truck Repair - Gas - Leader
Truck Repairman - Gas and Electric
(3)Welder - Maintenance - Gas & Arc
Welder - Tool and Die

(1)Designated a foundry job only for credited service accrued on and after July 27, 1987.

(2)Not designated as a foundry job for those employees so classified who work in Department 32.

(3)Not designated as a foundry job for those employees so classified who work in Department 30.

75

Appendix B

## Appendix B

Any job classification in effect at a plant specified in Appendix B that was discontinued at such plant prior to September 14, 1973 shall be designated a foundry job if the work that was performed by employes on such discontinued job, classification shall conform substantially to work performed at the same plant by employes on a job classification, designated as a foundry job for such plant.

76

## APPENDIX C.

For the sole purpose of Article III, Section 7 of the Plan, only those job classifications specifically listed herein, which are set forth in the Local Wage Agreement in effect as of October 1, 1979 at Delco Moraine Division, Dayton, Ohio, may be designated asbestos jobs. Such designation as an asbestos job will apply only to these classifications at the above-specified plant location under the conditions specifically set forth herein. No other job classifications shall be designated asbestos jobs.

### Delco, Moraine Division, Dayton, Ohio

The following job classifications involved in the blending and processing of raw asbestos are designated asbestos jobs for employes so classified who are assigned to Departments 73M, 515, 523, and 530.

Experimental Lining
Extruding Machine Operator
Janitors
Job Setter
Lining Grinder
Machine Cleaners
Preform of Disc Brake Linings
Production Heat Treat Linings
Protective Coating Operator
Sensor Riveters
Stock Handler
Weigh and Mix Materials

77

Appendix B

Appendix C

Standards

# STANDARDS FOR APPLICATION OF PROVISIONS REGARDING RETIREMENT UNDER MUTUALLY SATISFACTORY CONDITIONS

## GENERAL MOTORS HOURLY-RATE EMPLOYES PENSION PLAN

Article II, Section 2(b) and (c) of the General Motors Hourly-Rate Employes Pension Plan provides that an employe may be retired early under mutually satisfactory conditions providing he is otherwise eligible. The following standards have been adopted by the Corporation as a guide in the application of this provision.

### Standards

A. An employe who is unable to work efficiently by reason of permanent disability:

The retirement must be in the best interest of the Corporation. It is also intended to benefit employes who are unable to work efficiently by reason of permanent disability. It contemplates that the efficiency of operation will be improved by reason of the retirement which may be the case in any of the following situations:

(1) The employe is no longer physically or mentally capable of performing his work in an efficient and satisfactory manner.

(2) The employe, though still capable of performing his work satisfactorily, is prevented by chronic physical illness or physical disability (less than total) from working regularly to the extent that efficiency of operation is interfered with.

(3) The employe's condition, based on medical evidence satisfactory to the Corporation, is such that,

Standards

although able to perform the duties of his job efficiently and satisfactorily, he would thereby be jeopardizing his health or that of fellow employes.

(4) The employe is on disability leave or is laid off because he is unable to do the work offered by the Corporation efficiently and satisfactorily although able to perform efficiently, and, satisfactorily other work in the plant to which he would have been entitled if he had had sufficient seniority, and his condition, based on medical evidence satisfactory to the Corporation, is expected to be continuous until his normal retirement age.

B. An employe who is laid off.

Retirement under mutually satisfactory conditions will be available to an employe who is laid off

(i) as a result of a plant closing or discontinuance of operations, or

(ii) whose layoff appears to be permanent, and in either case has not been offered suitable work by the Corporation in the same labor market area.

Misc. (Benefit Plan Provisions)

## STATEMENT OF INTENT

Notwithstanding the provisions of Exhibit A, Section 3(e) of The General Motors Hourly-Rate Employes Pension Plan; Exhibit B, Items Agreed To of the General Motors Life and Disability Benefits Program For Hourly Employes; Exhibit C, Items Agreed To of the General Motors Health Care Program For Hourly Employes; Exhibit D, Articles V and VI of the Supplemental Unemployment Benefit Plan, and the Items Agreed to by GM-UAW SUB Board of Administration; and Exhibit E, Section 6(a) of the Guaranteed Income Stream Benefit Program, which deal with local union representatives for each of these benefit plan areas, the Corporation and the Union, agree, as follows:

### 1. Appointment of Local Union Benefit Representatives

(a) Local union benefit representative(s) and alternate(s) shall be appointed or removed by the GM Department of the International Union.

(b) Temporary replacement appointments may be made by the local union President for a minimum of one week and a maximum of four weeks. Replacement appointments for any absence in excess of four weeks also shall be made by the GM Department of the International Union. Replacement appointments in situations when the benefit representative(s) and alternate(s) are both absent but for less than one week and are on a leave of absence pursuant to the provisions of Paragraph 109 of the GM-UAW National Agreement may be made by the local union President. Any problems that may arise under this procedure may be discussed by the Corporation with the GM Department of the International Union.

80

Misc. (Benefit Plan Provisions)

(c) A local union benefit representative shall be an employe of the Corporation having at least one year of seniority, and working at the plant where, and at the time when, he/she is to serve as such representative or alternate. No such representative or alternate shall function until written notice has been given. In the case of temporary appointments, the notice should be given to local Management with additional copies forwarded to the GM Department of the International Union and the Corporation.

### 2. Number of Local Union Benefit Representatives

(a) In plants having a total of less than 600 employes, there may be one local union benefit representative and one alternate.

(b) In plants having a total of 600 but less than 1,200 employes, there may be two local union benefit representatives and two alternates.

(c) In plants having a total of 1,200 but less than 2,000 employes, there may be three local union benefit representatives and three alternates.

(d) In plants having a total of 2,000 but less than 5,000 employes, there may be four local union benefit representatives and three alternates. If such plants have a total of 1,400 or more employes on the second and third shifts combined, there may be five local union benefit representatives and two alternates.

(e) In plants having a total of 5,000 but less than 8,000 employes, there may be five local union benefit representatives and two alternates.

(f) In plants having a total of 8,000 but less than 10,000 employes, there may be six local union benefit representatives and two alternates.

(g) In plants having a total of 10,000 or more employes, there may be seven local union benefit representatives and two alternates.

81

Misc. (Benefit Plan Provisions)

6. Any local union benefit representative may function as the member of the local Pension Committee, as the member of the local Supplemental Unemployment Benefit Committee, as a member of the Guaranteed Income Stream Benefit Committee or handle benefit problems under the Life and Disability Benefits Program and the Health Care Program with respect to employes in his/her Benefit Plan district. An alternate may function in the absence of a local union benefit representative.

7. The time available to a local union benefit representative and alternate with respect to a Benefit Plan district may not exceed eight (8) regular working hours of available time in a day.

(a) On his/her regular shift and without loss of pay, a local union benefit representative(s) may accompany the management benefit representative for a mutually agreeable joint off-site visit to a local hospital, an impartial medical opinion clinic or a health maintenance organization, or other similar type joint ventures, with respect to benefit plan matters.

(b) A local union benefit representative attending a scheduled Management-Union Benefit Plan meeting on a shift other than his/her regular shift will be paid for the time spent in such meeting.

(c) One local union benefit representative attending the local union retiree chapter meeting will be paid for time spent in such meeting.

(d) The time spent in such local union retiree chapter meetings, off-site visits or Management-Union Benefit Plan meetings will not result in additional hours which exceed regularly scheduled shift hours, overtime premiums or an increase in representation time being furnished as a result of the representative(s) not working a full shift on his/her regular shift.

Misc. (Benefit Plan Provisions)

The number of employes as used herein, shall include active employes, employes on sick leave of absence, and employes on temporary layoff.

3. Of the total number of local union benefit representatives and alternates otherwise available, one or more representatives and alternates may be assigned to the second shift or third shift so long as the total number of representatives and alternates set forth in Paragraph 2. above is not exceeded.

4. When plant population changes occur which would increase or decrease the number of local benefit plan representatives, such population changes must be in effect for a period of six consecutive months before such adjustment is made in the number of representatives, unless such population change results from the discontinuance or addition of a shift or the opening or closing of a plant. In the event of a cessation of operations, the Corporation, at the request of the UAW-General Motors Department of the International Union, will provide for the continuance of Benefit Representation. Other situations involving a sudden significant change in the number of employes at a location may be discussed by the Corporation and the GM Department of the International Union.

5. Benefit Plan districts will be established by local mutual agreement. Only one local union benefit representative will function in a benefit district, and will handle specified benefit plan problems raised by employes within that district pertaining to the Pension Plan, Life and Disability Benefits Program, Health Care Program, Supplemental Unemployment Benefit Plan, and Guaranteed Income Stream Benefit Program agreements. An alternate will be permitted to function in the absence of a local benefit plan representative on his/her shift.

Misc. (Benefit Plan Provisions)

8. The local union benefit representative shall be retained on the shift to which he/she was assigned when appointed as such representative regardless of seniority, provided there is a job that is operating on his/her assigned shift which he/she is able to perform.

9. The Benefit Plans — Health and Safety office may be used by local union benefit representatives during their regular working hours:

(a) To confer with retirees, beneficiaries, and surviving spouses who ask to see a local union benefit representative with respect to legitimate benefit problems under the Pension, Life and Disability Benefits Program and Health Care Program Agreements.

(b) If the matter cannot be handled appropriately in or near the employe's work area, to confer with employes who, during their regular working hours, ask to see a local union benefit representative with respect to legitimate benefit problems under the Pension, Life and Disability Benefits, Health Care, SUB, and GIS Agreements.

(c) To confer with employes who are absent from, or not at work on, their regular shift and, who ask to see a local union benefit representative with respect to legitimate benefit problems under the Pension, Life and Disability Benefits, Health Care, SUB, and GIS Agreements.

(d) To write position statements and to complete necessary forms with respect to a case being appealed to the Pension, SUB, or GIS Boards by an employe in his/her Benefit Plan district, and to write appeals with respect to denied life, health, care, and disability claims involving employes within his/her Benefit Plan district.

(e) To file, material with respect to the Pension, Life and Disability Benefits, Health Care, SUB and GIS Agreements.

84

Misc. (Benefit Plan Provisions)

(f) To make telephone calls with respect to legitimate benefit problems raised by employes under the Pension, Life and Disability Benefits, Health Care, SUB, and GIS Agreements.

85

86

87

**LETTER
AGREEMENTS**

Workers Compensation

# GENERAL MOTORS CORPORATION.

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

This letter of agreement constitutes an amendment to the 1990 GM-UAW Pension Plan and shall be construed and applied as if it were herein incorporated.

Pursuant to Subsection 354(14) of the Michigan Workers Compensation Act, as amended, until termination or earlier amendment of the 1990 Collective Bargaining Agreement, workers compensation for employee shall not be reduced by disability retirement benefits payable under the Hourly-Rate Employee Pension Plan.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW.

By: Stephen P. Yokich

89

- 88

Lump-Sum Payment

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW.
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

During these negotiations the parties agreed upon certain lump-sum payments to be made to eligible retirees and surviving spouses.

Lump-sum payments would be made, on the basis described below, by Corporation check or draft paid directly to retired employees and surviving spouses.

1. The following persons will be eligible for lump-sum payments:

(a) employees who retired prior to October 1, 1990 under the terms of Article II, Sections 1, 2 or 3 of the Plan and who are receiving benefits from the Plan as of the first of the month for which a lump-sum payment would be made.

(b) eligible surviving spouses of employes who retired under the terms of Article II, Sections 1, 2 or 3 of the Plan prior to October 1, 1990, or surviving spouses eligible for a benefit prior to September 17, 1990 pursuant to Article II, Section 5(g) of the Plan (excluding surviving spouses of former employes who broke seniority and who are eligible (or a deferred pension), or surviving spouses eligible for a benefit under Article II, Section 8(d) and who are eligible for a pension benefit from the Plan as of the first of the month for which a lump-sum payment would be made.

90

Lump-Sum Payment

2. Amount of Benefit:

(a) a maximum payment of $630 will be made to retired employees with thirty or more years of credited service. The payment to pensioners with less than thirty years of credited service will be $21 per year of credited service (with a proportional amount for fractional years) or a minimum payment of $210.

(b) eligible surviving spouses will receive 60% of the amount that would have been payable to the retired employee under (a) above.

3. Dates of Payment: December 1991 and December 1992.

Please indicate your concurrence in the proposed lump-sum payments arrangement and other provisions of this letter.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

91

Mutually Satisfactory Retirement

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

During these negotiations the parties agreed to provide mutually satisfactory retirements, commencing as early as age 50, and solely during the period November 1, 1990, through May 1, 1991, inclusive, to up to 5,213 hourly employes, in selected GM locations, who had attained age 50 with 10 or more years of credited service as of October 1, 1990, all as set forth in detail in Document 9 attached to the 1990 GM-UAW Collective Bargaining Agreement.

Solely to implement the agreement described immediately above, this letter of agreement constitutes an amendment to the 1990 GM-UAW Pension Plan and shall be construed and applied as if it were therein incorporated.

In that regard, Article II, Section 2(b) of the GM-UAW Pension Plan, and the "Standards" attached to such Plan, shall be deemed to provide eligibility for mutually satisfactory retirement as early as age 50, solely for the otherwise eligible employes set forth in such Document 9, only during the period described therein, and only under the specific circumstances described therein.

92

Mutually Satisfactory Retirement

In conjunction therewith, the attached guidelines are applicable, and must be satisfied with respect to certain such employes retired under Attachment B of the GM-UAW Collective Bargaining Agreement.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Attach.

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

ATTACHMENT

An employe with seniority:

Retirement under mutually satisfactory conditions will be available to an employe who on or after October 1, 1990

(i) is in a JOBS Bank, or

(ii) will be replaced by

(aa) an employe in a JOBS Bank, or

(bb) a laid off GIS eligible employe with seniority whose layoff appears to be permanent,

and in any such case, only to any such employe who at the date of his retirement satisfies the conditions for such retirement as stipulated under Attachment B of the JOBS Program.

93

Special Benefit and Placement Plan

# GENERAL MOTORS CORPORATION

September 17, 1990

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214

Attention: Mr. Stephen P. Yokich
Vice President and Director
General Motors Department

Gentlemen:

During these negotiations the parties agreed to provide mutually satisfactory retirements, commencing as early as age 50, and solely during the period November 1, 1990, through May 1, 1991, inclusive, to (1) active employees, (2) laid off seniority employees, and (3) laid off employees with 64(e) rehire rights, only at BOC - Lansing, CPC - Flint, CPC - Framingham, and CPC - Lakewood, who have attained age 50 with 10 or more years of credited service as of October 1, 1990, as set forth in detail in the new "Special Benefit and Placement Plan Document", which is attached to the 1990 GM-UAW Collective Bargaining Agreement.

Solely to implement the agreement described immediately above, this letter of agreement constitutes an amendment to the 1990 GM-UAW Pension Plan and shall be construed and applied as if it were therein incorporated.

In that regard, Article II, Section 2(b) of the GM-UAW Pension Plan, and the "Standards" attached to such Plan, shall be deemed to provide eligibility for mutually satisfactory retirement as early as age 50, solely for the otherwise eligible employees set forth in the above described Document, only during the period described therein, and only under the specific circumstances described therein.

94

---

Special Benefit and Placement Plan

Notwithstanding the preceding, the parties further agreed to provide mutually satisfactory retirement eligibility, only to certain employees at the four locations listed earlier herein, each of whom has (a) attained age 48, but not age 50, and (b) 10 or more years of credited service, as of October 1, 1990. Each such retirement granted hereunder will become effective on the first day of the month immediately following each such eligible employe's attainment of age 50.

Very truly yours,

GENERAL MOTORS CORPORATION

Alfred S. Warren, Jr.
Vice President

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Stephen P. Yokich

95

5-14-07



**GM Benefits & Services Center**
gmbenefits.com
1-800-489-4646
**International Access**
Dial AT&T Direct® Service Access Code, then 877-833-9900
**TDD Service for the Hearing Impaired**
1-877-347-5225

WALTER J LAWRENCE
#162, 3101 SW 34TH AVE. #905                                      May 14, 2007
OCALA, FL 34474-0000

**Re: Recalculation of Pension Benefits**

Dear WALTER J LAWRENCE:

This is a revised statement of your Pension Benefits from General Motors. The revision and reason for the Pension Benefit Recalculation is:

- Benefits were not adjusted by the Tax Levy Amount of $1,099.50
- Pension Overpayment

|  | Current Benefit Amount | New Benefit Amount as of 07/01/2007 |
|---|---|---|
| Benefit to Participant: | $1,045.50 | $0.00 |

Our records indicate you have received an overpayment of retirement benefits from 01/01/2005 through 06/01/2007, a total of 30 month(s). The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund.

Please make your check or money order payable to General Motors Corporation and send it to the Benefit Service Center in the self addressed envelope enclosed for your convenience. On the check or money order, indicate that this is to repay an overpayment, clearly print your full name and include your Social Security number.



**Additional Information**

If you have any questions. please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m.. Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world. access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings. please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,


**GM Benefits & Services Center**

**Additional Information**

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,


**GM Benefits & Services Center**



**GM Benefits & Services Center**
gmbenefits.com
1-800-489-4646
**International Access**
Dial AT&T Direct® Service Access Code, then 877-833-9900
**TDD Service for the Hearing Impaired**
1-877-347-5225

WALTER J LAWRENCE
#162, 3101 SW 34TH AVE. #905
OCALA. FL 34474-0000

September 5, 2007

**Re: Recalculation of Pension Benefits**

Dear WALTER J LAWRENCE:

This is a revised statement of your Pension Benefits from General Motors. The revision and reason for the Pension Benefit Recalculation is:

- Tax Levy Amended to $208 as per IRS Guidelines
- Pension Overpayment

| | Current Benefit Amount | New Benefit Amount as of 10/01/2007 |
|---|---|---|
| Benefit to Participant: | $0.00 | $837.50 |

Our records indicate you have received an overpayment of retirement benefits. The total amount of the overpayment is $32,985.00. Because the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund.

Please make your check or money order payable to FIIOC "Fidelity Investments Institutional Operating Company" and send it to the Benefit Service Center in the self addressed envelope enclosed for your convenience. On the check or money order, indicate that this is to repay an overpayment, clearly print your full name and include your Social Security number.

If the payment in a lump sum is not received, beginning 10/01/2007, your monthly benefit will be reduced by 50% until the total amount of the overpayment has been recovered. This means that your gross monthly benefit will be $418.75 until 03/01/2014. On 04/01/2014, you will receive $515.00 completing the recovery of your overpayment of $32,985.00. Thereafter, your gross monthly benefit of $837.50 will be restored.

D

**Additional Information**

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m., Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

To ensure you receive future mailings, please contact the GM Benefits & Services Center any time your mailing address changes.

Sincerely,

**GM Benefits & Services Center**