# Supplemental Agreement

Covering

## PENSION PLAN

Exhibit A

to

AGREEMENT

between

GENERAL MOTORS CORPORATION

and

UAW

dated

September 17, 1990



## TABLE OF CONTENTS

Page No.

Index to Exhibit A and Exhibit A-1 ............ (ii)

Exhibit A    — Supplemental Agreement
              Between General Motors
              Corporation and the UAW
              (Pension Plan) ............ (1)

Exhibit A-1 — The General Motors
              Hourly-Rate Employes
              Pension Plan ............ 1

(i)

## INDEX TO

EXHIBIT A — Supplemental Agreement Between General Motors Corporation and the UAW (Pension Plan)

EXHIBIT A-1 — The General Motors Hourly-Rate Employes Pension Plan

**Page No.**

Actuary:
Appointment of .................................................. (3)
Certification by ................................................ (3)
Administration, General ................................. (11), 50
Amendment, Provision for ............................... (2), 60
Appendix A — Benefit Class Codes ..................... 69-70
Appendix B — Foundry Jobs ............................... 71-76
Appendix C — Asbestos Jobs ................................ 77
Approval of Plan (See "Plan, Approval of")
Asbestos Jobs:
Definition of .................................................... 77
Asbestos Service, Credited Service for ................ 46
Base Hourly Rate ........................................... 66-67
Basic Benefit ..................................................... 67
Basic Benefit Applicable to:
Benefits Commencing Prior to October 1, 1990 ... 19-28
Deferred Pensions ........................................ 53-57
Early Retirement ............................................. 6-9
ERISA Minimum ................................................. 8
Normal Retirement ............................................. 6
Total and Permanent Disability Retirement ........... 6
Benefit Class Code ......................................... 69-70

## INDEX — Cont'd.

**Page No.**

Board of Administration:
Applicability of 3(c) Agreement ................. (10)-(11)
Appointment of Members ............................... (5)
Functions .............................................. (9)-(11)
Information Furnished by Corporation ............ (6)-(9)
Liability ................................................. (11)
Pay and Expenses of Members ........................... (6)
Retroactive Adjustments ................................. (9)
Time of Meeting .......................................... (6)
Voting .................................................... (6)
Chairman, Impartial:
Appointment of .......................................... (10)
Compensation of ......................................... (10)
Term of Office ........................................... (10)
Voting ................................................... (10)
Contributions:
General Provisions ........................... (3)-(5),48-49
Service, Current ...................................... (3)-(4)
Service, Prior ........................................... (4)
Time of Payment ...................................... (3)-(5)
Credited Service, Subsequent to Effective Date of Plan:
Computation ........................................... 34-39
During Layoff or Disability Leave ....... 35-36, 38-39
Limitation of ............................................. 39
Military Service .......................................... 37
Occupational Disability Absences ...................... 36
Prior Service as Salaried Employe ..................... 36
Reinstatement of ......................................... 40
Credited Service, Asbestos ............................. 46
Credited Service, Credit Union ....................... (12)
Credited Service, Equal to Seniority ................... 39
Credited Service, Foreign Subsidiary .............. 40-41

INDEX — Cont'd.

| | Page No. |
|---|---|
| Credited Service, Foundry | (14), 41-43 |
| Credited Service, Loss of | 40 |
| Credited Service, Reinstatement of | 40 |
| Credited Service, Union Leaves of Absence | (12) |
| Deduction For: | |
| Benefit Plan(s) Overpayments | 58 |
| Dependent Life Insurance | 58 |
| Income Tax | 58 |
| Medical Expense Coverage | 57-58 |
| Optional Life Insurance | 58 |
| Union Dues | (13)-(14) |
| Deferred Pension: | |
| Benefits, Determination of | 53-57 |
| Eligibility | 53-54 |
| If Reemployed | 55 |
| Minimum Vesting Standards-ERISA | 43-46 |
| Definitions | 64-68 |
| Dependent Life Insurance | 58 |
| Discharged Employe | 9, 13 |
| Disciplinary Action (See "Employment Rights") | |
| Duration of Agreement | (14)-(15) |
| Employe, Definition of | 64-65 |
| Employment Rights | (12)-(13), 59 |
| Establishment of Fund | (3) |
| Establishment of Plan (See "Plan, Establishment of") | |
| Federal Social Security Benefit: | |
| Definition of | 66 |
| Fiduciary, Named-ERISA | 60 |

(iv)

INDEX — Cont'd.

| | Page No. |
|---|---|
| Financing | (3)-(5), 48-49 |
| Foundry Jobs: | |
| Designation of | 71-76 |
| Foundry Service, Credited Service for | 41-43 |
| Guaranteed Income Stream Benefits | 53 |
| Grievance Procedure: | |
| Non-Applicability of | (11)-(12) |
| Income Tax (See "Plan, Approval of: Internal Revenue Service") | |
| Insurance Company or Trustee: | |
| Definition of | 65 |
| Designation of | (3) |
| Insured Fund, Definition of | 66 |
| Layoff or Disability Absence: | |
| Credited Service During | 35-36, 38-39 |
| Leaves of Absence: | |
| Union | (12) |
| Military Service | 37 |
| Letter Agreements | 87-96 |
| Liability of Corporation | (5), 48-49 |
| Limitation of Benefits | 60 |
| Lump-Sum Payment | 90-91 |
| Medical Expense Benefit Coverages | 57-58 |
| Merger or Consolidation-ERISA | 64 |
| Military Service, Credited Service for | 37 |
| Modification, Provision for | (1)-(2), 60-61 |
| Optional Life Insurance | 58 |
| Pension Fund, Definition of | 66 |

(v)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| **Pension Payments:** | |
| General Provisions | 50-53 |
| Non-Alienation of | 57-58 |
| To Persons Other Than Pensioners | 52 |
| **Plan, Approval of:** | |
| Board of Directors | (1)-(3), 60 |
| Internal Revenue Service | (1)-(2), 59 |
| Plan, Duration of | (14)-(15) |
| Plan, Establishment of | (1)-(3), 3 |
| Plan, Termination of | 61-64 |
| **Pre-Retirement Survivor Coverage-REA:** | |
| Duration | 32-33 |
| Effective Date | 32 |
| Eligibility | 31-34 |
| Payment | 32-33 |
| Qualified Domestic Relations Order-REA | 9, 26, 33, 57 |
| Reemployment | (13), 40, 52, 66 |
| **Retirement, Early:** | |
| Benefit Options | 4 |
| Benefits, Determination of | 6-9 |
| Benefits, Payment of | 50-53 |
| Benefits, Redetermination of | 7 |
| Eligibility | 4 |
| Mutual Retirement Standards | 78-79 |
| Reduction for Age | 7 |
| Retirement, General | (12)-(18) |
| **Retirement, Normal:** | |
| Benefits, Determination of | 6 |
| Benefits, Payment of | 50-53 |
| Eligibility | 4 |
| **Retirement, Total and Permanent Disability:** | |
| Benefits, Determination of | 6 |
| Benefits, Payment of | 50-53 |

(vi)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Disability, Determination of | 5 |
| Eligibility | 5, 51, 56 |
| Recovery From | (12)-(13), 5, 17, 52 |
| Seniority (See "Credited Service") | |
| Seniority, Definition of | 66 |
| Seniority, Equal to Credited Service | 39 |
| **Social Security Benefits:** | |
| Redetermination for | 46-47 |
| Special Benefit | 18-19 |
| **Standards for Application of Provisions** | |
| for Mutually Satisfactory Retirement | 78-79 |
| Statement of Intent-Representation | 80-85 |
| **Supplement, Early Retirement:** | |
| **Benefits Commencing Prior to** | |
| October 1, 1990 | 24-25 |
| Benefits, Determination of | 13-14, 16-17 |
| Earnings Limitation | 17 |
| Eligibility | (13), 13-14 |
| Limitation of 70% of Final Pay | 17-18 |
| Payment of | 14, 50-53 |
| Penalty Against | 16-17 |
| Recovery if Overpaid | 17 |
| **Redetermination if Commenced** | |
| Prior to October 1, 1990 | 25 |
| Waiver of Earnings Limitation | 17 |
| Mutual Retirement | 17 |
| **Supplement, Interim:** | |
| Benefits, Determination of | 14-15 |
| Earnings Limitation | 17 |
| Eligibility | (13), 13-14 |
| Limitation of 70% of Final Pay | 17-18 |
| Payment of | 15, 50-54 |
| Penalty Against | 16-17 |
| Recovery if Overpaid | 17 |

(vii)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| **Supplemental Pension Agreement:** | |
| Conflicts With Plan | (1) |
| Date of | (1) |
| Duration of | (14)-(15) |
| Parties to | (16)-(17) |
| **Surviving Spouse Benefits:** | |
| After Employe's Retirement | 9-13 |
| Before Employe's Retirement | 12-13 |
| Cancellation Because of Death or Divorce | 9-10, 26 |
| Effective Date | 10-11 |
| Election to Receive Full Amount of Future Increases | 26-27 |
| Joint and Survivor-ERISA | 28-31 |
| Reduction of Basic Benefit | 11-12 |
| Rejection of Coverage | 10-11, 29 |
| Special Survivor Option | 25-26 |
| Spouse Consent | 10-11, 29 |
| Upon Marriage or Remarriage After Retirement | 27 |
| **Temporary Benefit Applicable to:** | |
| Benefits Commencing Prior to October 1, 1990 | 22-24 |
| Early Retirement | 8-9 |
| Total and Permanent Disability Retirement | 8 |
| **Termination of Plan** (See "Plan, Termination of") | |
| **Trust Fund:** | |
| Definition of | 66 |
| Establishment of | (3), 48 |
| Irrevocability of | 49 |
| Trustee, Duties of | (3) |
| **Trustee or Insurance Company:** | |
| Definition of | 65 |
| Designation of | (3) |

(xiii)

## INDEX — Cont'd.

| | Page No. |
|---|---|
| Union Dues, Deduction of | (14) |
| Vesting (See "Deferred Pension") | |
| Wage Inequity Adjustments | 21 |
| Widow's Benefits (See "Surviving Spouse Benefits") | |
| **Workers Compensation:** | |
| Deductions for Receipt of | 47-48, 89 |

(ix)

EXHIBIT A

SUPPLEMENTAL
AGREEMENT
(Pension Plan)

A. Sec. 1

## SUPPLEMENTAL AGREEMENT
### (PENSION PLAN)

On this 17th day of September, 1990, General Motors Corporation, hereinafter referred to as the Corporation, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, hereinafter referred to as the Union, on behalf of the employes covered by the collective bargaining agreement of which this Supplemental Agreement becomes a part, agree as follows:

### Section 1. Establishment of Plan

Subject to the approval of its Board of Directors, the Corporation will establish an amended pension plan, hereinafter referred to as the "Plan", a copy of which is attached hereto as Exhibit A-1 and made a part of this agreement to the extent applicable to the employes represented by the Union and covered by this agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this agreement, the provisions of this agreement will supersede the provisions of the Plan, to the extent necessary to eliminate such conflict.

The Plan, as set forth in Exhibit A-1, and the Plan as it may be modified and supplemented by superseding provisions of this agreement, as above provided, are both contingent upon and subject to obtaining and retaining such approval of the Commissioner of Internal Revenue as the Corporation may find necessary to establish the deductibility under Section 404 of the Internal Revenue Code for income tax purposes of any and all contributions made by the Corporation to both plans and to establish the plans and related trust as being qualified and tax-exempt.

(1)

A. Sec. 1

under Sections 401 and 501(a), or other applicable provisions of the Internal Revenue Code. Any modification or amendment of either the Plan, or the Plan as modified and supplemented by this agreement, may be made retroactively by the Corporation with the consent of the Union, if necessary or appropriate, to qualify or maintain the Plan as a plan and trust meeting the requirements of Sections 401 and 501(a) of the Internal Revenue Code, as now in effect or hereafter amended, or any other applicable provisions of the federal tax laws, as now in effect or hereafter amended or adopted, and the regulations issued thereunder, provided that pension benefits under the Plan are not diminished.

Until the Plan is approved by the Corporation's Board of Directors and by the Commissioner of Internal Revenue, all as hereinbefore provided, the benefits payable shall be only those determined under the Plan as constituted prior to October 1, 1990; provided, however, that following approval by its Board of Directors and its receipt of the favorable ruling from the Commissioner of Internal Revenue as set forth above, the Corporation or the trustee will pay to retired employes and surviving spouses any excess amounts equal to the difference between the monthly pension calculated in accordance with the terms of the Plan, attached hereto as Exhibit A-1, and the monthly pension paid or payable in accordance with the terms of the Pension Plan, which was attached as Exhibit A-1 to the Supplemental Agreement (Pension Plan) between the Parties dated October 8, 1987. Any such excess amounts payable for months prior to the receipt of the aforementioned Board of Directors and the Commissioner of Internal Revenue approvals, shall be payable the first of the month following the date, upon which the last of these two approvals is received by the Corporation, and any such amounts payable thereafter shall be paid on the first of the month at the same time as the related pension is paid.

(2)

A. Sec. 1

In the event that the Plan is disapproved by the Board of Directors of the Corporation, the Corporation within thirty days after any such disapproval will give written notice thereof to the Union and this agreement shall thereupon have no force or effect. In that event the matters covered by this agreement shall be the subject of further negotiation between the Corporation and the Union.

Section 2. Financing

(a) A trustee or an insurance company, or both, shall be designated by the Corporation, and a trust agreement or contract, or both, executed between the Corporation and such trustee or insurance company, or both, under the terms of which a pension fund or insured fund, shall be established to receive and hold contributions payable by the Corporation, interest, and other income, and to pay the pensions and supplements provided by the Plan.

(b) The Corporation agrees to pay over irrevocably to the trustee or insurance company during the period of this agreement, contributions or payments for the Plan equal to the sum of (i) and (ii) below as determined and certified as of each anniversary of the effective date of the Plan by one or more actuaries chosen by, but independent of, the Corporation, and qualified through Fellowship in the Society of Actuaries and enrollment with the Joint Board for Enrollment of Actuaries (hereinafter referred to as the actuary). Such contributions or payments for any year may be made not later than the date on which such contributions are required by law to be made for the purpose of crediting such contributions to such year under the minimum funding standards of the Employee Retirement Income Security Act of 1974:

(i) the "annual" "current service" or "normal cost" contribution attributable to a year's cost accruals

(3)

A. Sect. 2(b)(ii)

in respect of assumed continuous service after each such anniversary date, and

(ii) the "prior service contribution" computed as that part of the "present value" at each such anniversary date, of the prospective pensions payable under the Plan for employes, pensioners and former employes who are entitled to a deferred pension then covered by the Plan which is in excess of:

(aa) the value of the trust fund, as then comprised of any contracts and total other assets, invested and uninvested, such total assets being valued on a basis at least equal to the total cost thereof, plus

(bb) the then present value of the prospective "current service" or "normal cost" contributions determined by the actuary in accordance with (i) above,

such excess, part being amortized according to the following schedule:

(1) in respect of the portion of such excess part attributable to the level of benefits in effect prior to October 1, 1979 — the fifty-ninth anniversary of the Corporation's pension plan (October 1, 2009); and

(2) in respect of the portion of such excess part attributable to the increase in the level of benefits established by amendments to the Corporation's pension plan effective on or after October 1, 1979 — the thirtieth anniversary of the date on which such increase in the level of benefits becomes effective.

(c) The Corporation may contribute or pay additional amounts to the trusteed or insurance company, or both, under (b) above in any year without such additional amounts being construed to reduce any thirty-year period for the completion of the "prior service contributions" of subsection (b)(ii) above. If the Corporation has contributed any such additional amounts prior to any anniversary date of the

(4)

A. Sect. 2(e)

Corporation's pension plan or shall contribute any such additional amounts prior to any anniversary date of the Plan falling within the duration of this agreement, the Corporation may as of such anniversary contribute a lesser amount than otherwise determined by (b) above for such anniversary, provided that the value of any contracts and total other assets as valued in accordance with (b)(ii)(aa) above at such anniversary shall not be less than the amount estimated by the actuary to be the value as if contributions and payments up to and including such anniversary date had been made as provided in (b) above and no additional amounts had been contributed or paid prior to such anniversary.

(d) The Corporation by payment of the contributions or amounts as hereinbefore provided in this section shall be relieved of any further liability, and pensions and supplements shall be payable only from the trust fund or the insured fund or both.

Section 3. Administration

(a) Board of Administration

(1) There shall be established a central Board of Administration hereinafter referred to as the Board, composed of six members, three appointed by the Corporation and three by the Union. Each member of the Board shall have an alternate. In the event a member is absent from a meeting of the Board, his alternate may attend and when in attendance shall exercise the duties of the member. Either the Corporation or the Union at any time may remove a member or alternate appointed by it and may appoint a member or alternate to fill any vacancy among members or alternates appointed by it.

No person shall act as a member of the Board of Administration or as an alternate for such member unless notice of his appointment has been given in

(5)

A. Sect. 3(a)(1)

writing by the party making the appointment to the other party.

(2) The Board shall meet at such times and for such periods for the transaction of necessary business as may be mutually agreed upon by its members.

(3) To constitute a quorum for the transaction of business, the presence of four members of the Board shall be required. At all meetings of the Board the member or members present appointed by the Corporation shall have in the aggregate a total of one vote to be cast on behalf of the Corporation, and the member or members present appointed by the Union shall have in the aggregate a total of one vote to be cast on behalf of the Union.

(4) The compensation and expenses of the Corporation members will be paid by the Corporation and the compensation and expenses of the Union members will be paid by the Union and no part of such compensation or expenses will be paid from the trust fund.

(5) The Corporation shall cause to be furnished to the Board of Administration annually:

(i) A statement as of each anniversary date of the Plan showing in summary form the value of the assets which comprise such fund by general categories of investment, such value being determined on a basis at least equal to the total cost thereof for each such category.

(ii) Such information as to age, sex and service of hourly-rate employes of the Corporation as a whole in the United States and as to the number of pensioners and amount of pensions and supplements by age groups, as the Board may reasonably require, but in no event shall the Corporation be required to furnish the Board with any data not furnished by the Corporation to the actuary.

(6)

A. Sect. 3(a)(5)(iii)

(iii) A report, prepared by the actuary, in respect of each year's actuarial valuation of the Plan, setting out the following:

(a) the amount of the normal cost contribution and the amount of the payment toward amortization of the actuarial deficiency required in accordance with Section 2(b) hereof.

(b) a statement of the method and the assumptions, such as the interest rate, mortality rates, withdrawal rates, retirement rates, average benefit unit and assumptions used with respect to the survivor benefit, adopted for the valuation for the purposes of Section 2(b) hereof.

(c) the amount, as of each anniversary date, of the gross actuarial deficiency, determined in accordance with Section 2(b) hereof as the present value of the prospective pensions payable under the Plan less the then present value of the prospective normal cost contributions, if any, for (1) retired employes, (2) employes who have separated with retention of deferred pensions, (3) non-retired and non-separated employes, and (4) total.

(d) the amount of assets used in the actuarial valuation, together with a reconciliation of the amount of such assets with the amount used in the preceding valuation.

(e) the amount of the net (unfunded) actuarial deficiency.

(f) the amount by which the value of the trust fund exceeded the amount then required by Section 2(b) hereof to be in such fund.

(g) the extent to which the trust fund assets as of the valuation date would be sufficient to cover the pension liabilities, as determined in accordance with SFAS 87.

(7)

A-Sec. 3(a)(5)(iv)

(iv) A statement, certified by the actuary, that the amount of the trust fund is or is not less than the amount then required by Section 2(b) hereof, to be in such fund.

(v) A statement setting forth:

(aa) The value of the trust fund computed on the basis of market value as of the previous anniversary date of the Plan.

(bb) Additions during Plan year.

(i) payments by General Motors into the fund

(ii) interest and dividends received by the fund

(iii) net investment gains, and

(iv) total additions.

(cc) Pension payments and supplements to retired employees and surviving spouses during Plan year.

(dd) The value of the trust fund computed on the basis of market value as of the anniversary date of the Plan for the year for which the statement is being submitted.

(vi) A schedule setting forth as of March 31 of each year:

(aa) the amount of investment of the pension fund in residential real estate mortgages, by type, in communities with General Motors plants and in other communities.

(bb) the amount invested in such residential real estate mortgages during the preceding year in comparison with total new money investments during that year, and

(8)

A. Sect. 3(a)(5)(vi)(cc)

(cc) a description of such residential mortgages in which funds were invested during the preceding year, by type, separately by plant city areas and in total for other areas.

(vii) A copy of Form 5500 reports and attendant schedules for the Plan will be furnished as soon as practicable after General Motors has filed such report with the Internal Revenue Service.

(6). The Board of Administration shall have no power to add to, or subtract from or modify any of the terms of this agreement or the Plan, nor to change or add to any benefit provided by said agreement or Plan, nor to waive or fail to apply any requirement of eligibility for a benefit under said agreement or Plan.

(7) Any case referred to the Board of Administration on which it has no power to rule shall be referred back to the parties without ruling.

(8) No ruling or decision of the Board of Administration in one case shall create a basis for a retroactive adjustment in any other case prior to the date of written filing of each such specific claim.

(9) There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union and its members, the employe or employes involved, and on the Corporation.

The Union will discourage any attempt of its members and will not encourage or cooperate with any of its members, in any appeal to any Court or Administrative Board or Agency from a ruling of the Board of Administration.

(b) Impartial Chairman.

(1). The Corporation and the Union shall mutually agree upon, and select an Impartial

(9)

A. Sect. 3(b)(1)

Chairman, who shall serve until requested in writing to resign by three Board members.

(2) The Impartial Chairman will not be counted for the purpose of a quorum, and will vote only in case of a failure of the Corporation and the Union by vote, through their representatives, on the Board, to agree upon a matter which is properly before the Board and within the Board's authority to determine; provided that the Impartial Chairman may vote only on matters involving the processing of individual cases, not on the development of procedures.

(3) The fees and expenses of the Impartial Chairman will be paid one-half by the Corporation and one-half by the Union.

(c) As soon as possible after the effective date of this agreement, the Union and Corporation members of the Board of Administration shall work out matters such as but not limited to: (1) procedures for establishing Local Pension Committees at the Divisions or plants involved; (2) the authority and duties of such Local Pension Committees; (3) the procedures for reviewing applications for pensions; (4) the handling of complaints regarding the determination of age, service credits, and computation of benefits; (5) procedures for making appeals to the Board; (6) means of verifying service credits to which employes are entitled under the Plan; (7) methods of furnishing information to employes regarding past and future service credits; (8) the amount of time the Union members of the local committees may be permitted to leave their work to attend meetings of the Local Pension Committees; (9) how disputes over total and permanent disability claims will be handled, including disputes, if any, with respect to whether a disabled pensioner engages in gainful employment; (10) the review of pertinent information about the Plan for dissemination to employes; (11) how pension payments will be authorized by the Board. All such

(10)

matters shall be consistent with all other provisions of the Plan and this agreement. The working out of the procedures outlined in this section shall be the responsibility of the Corporation and Union members of the Board; and the Impartial Chairman shall have no power to decide any question with respect thereto.

The provisions of Agreement Implementing Section 3(c) of the Supplemental Agreement, Pension Plan, dated October 14, 1988 which were established by the Board pursuant to the foregoing are incorporated herein by reference and are a part hereof and effective with respect to the administration of the Plan as fully as if set out herein at length.

(d) Except as provided otherwise in this agreement, the general administration of the provisions of the Plan shall be the responsibility of the Corporation.

(e) The Board and any member of the Board, or the Local Pension Committees or any member of the Local Pension Committees, shall be entitled to rely upon the correctness of any information furnished by the Union or the Corporation. Neither the Board nor any of its members, nor the Local Pension Committees nor any of its members, nor the Union nor any officer or other representative of the Union, nor the Corporation nor any officer or other representative of the Corporation shall be liable because of any act, or failure to act, on the part of the Board or any of its members, or the Local Pension Committees or any of its members or any person, except that nothing herein shall be deemed to relieve any such individual from any liability for his own fraud or bad faith.

(f) No matter respecting the Plan as modified and supplemented by this agreement or any difference arising thereunder shall be subject to the grievance procedure established in the collective bargaining agreement between the Corporation and the Union,

(11)

A. Sect. 3(c)

A. Sec. 3(f)

except as expressly provided in Paragraph (46) of such collective bargaining agreement.

(g) Credited service shall be granted an employe who is absent from his work, pursuant to Paragraph 24 of the National Agreement, or on a leave of absence under Paragraph 109 of the National Agreement if the leave was granted for the purpose of permitting the employe to engage in the business of or to work for the Local Union, or if the leave was granted under Paragraph 109(a) of the National Agreement for the purpose of permitting the employe to engage in the business of or to work for the International Union while on such leave (in employe on leave under the National Agreement solely to permit the employe to be Manager of the credit union sponsored by the Local Union shall be included hereunder) but only with respect to any period while serving in such capacity while on such leave).

An employe eligible for credited service under this section shall be credited with up to 40 hours for each calendar week since October 1, 1950 while he is on such leave; including compensated hours, provided he meets the requirements of the leave; but in no event shall the employe be credited with more than 1700 hours, including compensated hours, in any calendar year.

Section 4. Effect of Retirement on Employment Status and Seniority

(a) An employe who retires or is retired under the terms of the Plan shall cease to be an employe and shall have his seniority canceled.

(b) An employe who has been retired on a total and permanent disability pension and who thereby has broken his seniority in accordance with subsection (a) above, but who recovers and has his pension discontinued, shall have his seniority reinstated, as

(12)

A. Sec. 4(b)

though he had been on a sick leave of absence during the period of his disability retirement, provided however, if the period of his disability retirement was for a period longer than the seniority he had at the date of retirement, he shall, upon the discontinuance of his disability pension, be given seniority equal to the amount of seniority he had at the date of such retirement.

(c) If an employe retired for reasons other than total and permanent disability, who has lost seniority in accordance with subsection (a) above, is rehired, such employe will have the status of a new employe.

Section 5. Supplements.

Notwithstanding any other provisions of the Plan, an employe who retires with benefits payable commencing on or after October 1, 1990 while on an approved leave of absence requested by the International Union to permit him to engage in the business of or to work for the International Union, shall not be prevented from receiving benefits under Section 6 of Article II of the Plan solely because the last day he worked for the Corporation was not within five years of the date his pension benefits commence.

Section 6. Deduction of Union Dues

(a) Notwithstanding any other provisions of the Plan, any retired employe entitled to receive a pension or supplement may, pursuant to the retired employe's written authorization and direction acceptable to the Corporation, authorize the deduction of monthly Union dues from any monthly pension or supplement otherwise payable to him and direct that such dues be remitted to the Union.

(b) An authorization to deduct said monthly Union dues shall become effective as of the first of the second month following the month in which the Corporation

(13)

A, Sect. 6(b)

receives such authorization from the Union, and shall remain in full force and effect until revoked by the retired employe's written notice given to the Corporation, except that during any period when there is not in effect a written collective bargaining agreement or supplement thereto between the Corporation and the Union which permits or provides for the deduction of Union dues from monthly pension benefits payable to a retired employe, such assignment, authorization and direction, if otherwise in effect, shall automatically be suspended for the duration of such period only.

(c) The Union shall indemnify and hold harmless the Corporation against any and all liability, including reasonable attorney's fees, that may arise by reason of the Corporation's compliance with this Section 6.

(d) This Section 6 shall be of no force or effect during any month for which less than one thousand such authorizations are in effect.

### Section 7. Foundry Jobs

Any job classification put into effect after September 14, 1973, at a plant identified in Appendix B of the Plan, shall be designated by written agreement between the parties as a foundry job if such classification (a) supersedes or replaces a job classification previously designated as a foundry job for such plant and (b) becomes, applicable to employes who perform substantially the same work as had been performed by employes while on a job classification previously designated as a foundry job for such plant.

(14)

A, Sect. 8

### Section 8. Duration of Agreement

This agreement and Plan shall continue in effect until the termination of the collective bargaining agreement of which this is a part.

In witness hereof, the parties hereto have caused this agreement to be executed the day and year first above written.

(15)

A. Sect. 8

## GENERAL MOTORS CORPORATION

CARLTON V. MATZELLE
TERRY J. McDOUGALL
MILTON H. OSBORN, JR.
GARY N. PHELEY
BERNARD J. QUICK
JAY C. WILBER
GERALD J. WINTER
W. GARY BRYANT
CAROLE G. DAVEY
JENNIE F. HART
BETTY SUE JONES
JAMES W. LaLONDE
SANDRA POPE THOMPKINS
BERNARD G. WEBER

## INTERNATIONAL UNION, UAW

RUFUS COLEMAN
JERRY COVILLE
HAROLD COX
DICK DANSIN
BOB FARLEY
EARL FARRELL
JERRY FAULKNER
MARK FIELDER
RAY GIBSON
ROY GOFORTH
LARRY GONTKO
MOSES GREEN
CECIL HAMPTON
LINDA HOALCRAFT
JIM HOWE
LARRY JOLLY
DICK JONES
CHRIS MANNING
GEORGE MAPES
BUD MILLER
CLAYTON MOLL
RON MURRAY
WILBERT NEAL
HERSCHEL NIX
BILL RENO
TOM RICHARDSON
JOE SAWYER
ELLA MAE SCHULTZ
JIM SHROAT
DAN SMITH
WILLIAM SMITH
JOE SPRING
LARRY STEVENS
CINDY SUBANICK
KARLA SWIFT
KEN TERRY
JIM TITSWORTH
TOM WALSH
DICK WEEDEN
JIM WESTNESS
JIM WHEATLEY
WILLIE WILLIAMS
ED YONAN

(17)

A. Sect. 8

## INTERNATIONAL UNION, UAW

OWEN BIEBER
STEPHEN P. YOKICH
DONALD J. DAVIS
DARREL NEWBERRY
CALVIN T. RAPSON
TED MILLER
TOM PASCO
HENDERSON SLAUGHTER
TOM WEEKLEY
RICHARD SHOEMAKER
LEON BLACKWELL
GEORGE BROEBUR
LESTER BRYAN
L. E. BUNCH
MIKE GRACEY
RICHARD HOALCRAFT
JAMES JACKSON
RICK LYONS
DICK MONCZKA
JUDY MURPHY
PEGGY PERSON
GARY WATSON
RICHARD SWIM
HAROLD SHELTON
J. D. DALTON
VINCE DEMME, JR.
SAM ISAAC
KEN LAUBERT
CARL PEDERSEN, JR.
ROGER RATLIFF
TOM ROBINSON
DON SARKISIAN
LEWIS W. SCHULTZ
NORM ACORD
ROGER ANCLAM
BILL APPLE
JIM BEARDSLEY
AL BERGMANN
CHARLES BEST
JACK BROWN
BENNE BURGESS
BILL CARSHAW
JIM CARSON

## GENERAL MOTORS CORPORATION

ROBERT C. STEMPEL
LLOYD E. REUSS
F. ALAN SMITH
CHARLES KATKO
ALFRED S. WARREN, JR.
RICHARD F. O'BRIEN
JOHN D. BUTLER
HOWARD C. CARLSON
DONALD G. GARDNER
RICHARD K. McMILLAN
THOMAS J. MORR
ROBERT G. WIENCEK, M.D.
RALPH E. HANDLEY
JAMES E. PRYCE
KENNETH J. McCORMICK
THOMAS E. UTTER
ARTHUR R. SCHWARTZ
CHARLES E. RYAN
ALAN S. DAWES
ROBERT W. HENDRY
H. EUGENE BROWN
EDWARD D. DeCHARME
FRED G. HAUBOLD
RICHARD L. HUBER
GERALD A. KNECHTEL
ROBERT D. LEE
ANTHONY L. MARCHIO
MICHAEL V. TIERNEY
JAMES R. WIEMELS
BETTY R. ANDERSON
JOHN B. BERRY, III
E. PRESTON BOLDEN
RICHARD D. BREWER
SAMUEL L. COLE, JR.
WILLIAM L. COWELL
RALPH E. DIIHS, JR.
H. STEPHEN DOYLE
JOHN J. FLAHARTY
MARK R. FLORA
JOHN P. FURMAN
THOMAS A. GAWEL
STEVEN L. GEBBIA
BEACH B. HALL

(16)

EXHIBIT A-1

THE GENERAL MOTORS
HOURLY-RATE EMPLOYES
PENSION PLAN

1

Art. I

# ARTICLE I

## ESTABLISHMENT OF THE PLAN

General Motors Corporation on behalf of itself and its Divisions and as agent for certain of its directly or indirectly wholly-owned and substantially wholly-owned domestic subsidiaries in accordance with I.R.C. Section 414(b), (c), and (m) will establish, subject to the approval of its Board of Directors, a pension fund either by a trust agreement with a trustee or trustees or by contract with an insurance company or insurance companies, or both, and with respect thereto shall make such payments or contributions as will be sufficient to maintain the fund on a sound actuarial basis as well as to pay expenses incident to the operation and management of the Plan.

Except as expressly provided in Sections 6, 7, and 8 of Article II and as provided in Article VII and Article IX, the provisions set forth in this Plan are applicable only to employs with seniority on or after October 1, 1990. Employes retired with benefits commencing prior to such date, or separated prior to such date, or eligible surviving spouses of such employes, shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date.

Notwithstanding the paragraph immediately above, employes who retired with benefits commencing after September 17, 1990 and prior to October 1, 1990 pursuant to the provisions of Article II of the Plan, shall be considered for purposes of Article II herein as having retired with benefits payable commencing on or after October 1, 1990; the surviving spouse of any employe who died after September 17, 1990 and prior to October 1, 1990, who is otherwise eligible for monthly benefits under the Plan, shall be considered entitled to monthly benefits pursuant to Section 5 of Article II herein; and any such employes

2

3

Art. I

shall be considered eligible for credited service under Article III herein.

## ARTICLE II

## ELIGIBILITY FOR RETIREMENT AND AMOUNT OF PENSIONS

### Section 1. Normal Retirement

Any employe who shall have attained the age of 65, shall have completed one or more years of credited service as provided in Article III and shall cease active service, shall be entitled to receive a pension.

### Section 2. Early Retirement

(a)(1) An employe who has attained age 60 but not age 65, and who has 10 or more years of credited service, may retire at the option of the employe.

(2) An employe who has attained age 55 but not age 60, and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, may retire at the option of the employe.

(3) An employe who has 30 or more years of credited service may retire at the option of the employe.

(b) An employe who has attained age 55 (age 50 for an employe who is laid off on or after October 1, 1984 as a result of a plant closing where no other General Motors plants are in the same geographical area) but not age 65 and who has 10 or more years of credited service may be retired under mutually satisfactory conditions as set forth hereinafter in the Standards applicable to such retirement.

4

Art. II, 3

### Section 3. Total and Permanent Disability Retirement

(a) An employe who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension as hereinafter provided.

(b) An employe shall be deemed to be totally and permanently disabled only if he is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employe is found to be wholly and permanently prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where he has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or nonoccupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employe becomes totally and permanently disabled after he has accumulated at least 5 years of seniority following his separation from service in the armed forces.

(c) Any disability pensioner may be required to submit to medical examination at any time during retirement prior to age 65, but not more often than semi-annually, to determine whether the pensioner is eligible for continuance of the disability pension. If on the basis of such examination it is found that the pensioner is no longer disabled or if the pensioner engages in gainful employment, except for purposes of rehabilitation as determined by the Corporation, the pensioner will be deemed recovered and his disability pension will cease. In the event the disability pensioner refuses to submit to medical examination the pension will be discontinued until the pensioner is examined.

5

Art. II, 4

## Section 4. Amount of Pensions

(a). (1) The monthly pension payable to an employe retired pursuant to the provisions of Sections 1, 2, or 3 of this Article II with benefits payable commencing on or after October 1, 1990 shall be a basic benefit for each year of credited service that the employe had at the date of his retirement, determined by his Benefit Class Code and based on the month for which payment is being made as set forth in the table immediately following:

| Retirement With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing | | |
|---|---|---|---|---|
| | | 10-1-90 through 9-1-91 | 10-1-91 through 9-1-92 | 10-1-92 and After |
| | | $ | $ | $ |
| October 1, 1990 and After | A | 28.35 | 29.50 | 30.70 |
| | B | 28.60 | 29.75 | 30.95 |
| | C | 28.85 | 30.00 | 31.20 |
| | D | 29.10 | 30.25 | 31.45 |

(2) The monthly pension benefit payable to an employe who retires at his option at a date selected by the employe shall be multiplied by a percentage as set forth in the following table:

6.

Art. II, 4(a)(2)

| Age When Pension Commences | Percentage* |
|---|---|
| 42 | 21.0% |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employe is under the age he will attain at his next birthday.

If an employe:

(i) with 30 or more years of credited service retires at his option, or

(ii) whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more retires at his option,

the monthly basic benefits otherwise payable to him after age 62 and one month shall be redetermined without any such reduction.

7.

Art. II, 4(a)(3)

(3) The basic benefit payable in any month will not be reduced below an amount which results in the early retirement supplement paid to a participant in such month, under Article II, Section 6 (a) (1), exceeding the old age insurance benefits, payable on account of age, payable under Title II of the Social Security Act, as amended.

(b) A temporary benefit for each year of credited service up to 30 shall be payable in addition to the monthly basic pension payable to an employe retired under mutually satisfactory conditions, or totally and permanently disabled pursuant to Section 2 (b) or Section 3 above, as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount | |
| --- | --- | --- |
| | Per Year of Credited Service $ | Maximum $ |
| October 1, 1990 through September 1, 1991 | 25.00 | 750.00 |
| October 1, 1991 through September 1, 1992 | 27.20 | 816.00 |
| October 1, 1992 and After | 29.30 | 879.00 |

(c) The monthly temporary benefit determined in (b) above shall be payable until age 62 and one month, or until the age at which the employe becomes or could have become eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age. At such age the temporary benefit shall cease to be payable.

8

Art. II, 4(d)

(d) An employe discharged for cause after such employe is eligible to retire at his option under Section 2 (a) of this Article II shall be entitled to the benefits provided under Section 4 (a) of this Article II as though he had retired at his option.

(e) The amount of any monthly pension benefit otherwise payable to the employe at retirement, or earlier commencement, will be reduced by the value of any past and future benefits paid or payable to any alternate payee(s) under a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).

The actuarial value will be used to determine, any amount to be paid to any such payee(s), if applicable, and the remaining benefit entitlement of the employe.

Section 5. Pension Benefits to Employe's Surviving Spouse

(a) In lieu of the monthly basic benefit otherwise payable, an employe who retires or is retired pursuant to the normal, early or total and permanent disability retirement provisions of this Article II, or who breaks seniority and is eligible for a deferred pension pursuant to the provisions of Section 2 of Article VII hereof, shall be deemed to have elected automatically a reduced amount of monthly basic benefit to provide that, if his designated spouse shall be living at his death after such election shall have become effective, a survivor benefit shall be payable to such spouse during the spouse's further lifetime. In the event such spouse predeceases such employe, or they are divorced by court decree and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such employe may cancel the survivor benefit election and have his monthly basic pension benefit restored to the amount payable without such election, effective the first day of the third month following the month in

9

Art. II, 5(a)

.which the Corporation receives (i) evidence satisfactory to the Corporation of the spouse's death, ot (ii) such employe's written revocation of the election because of divorce; on a form approved by the Corporation and accompanied by evidence satisfactory to the Corporation of a final decree of divorce.

The automatic election provided in this subsection (a) shall become effective on the later of (i) the commencement date of the employe's monthly pension benefit, (ii) the first day of the month following the month in which the employe attains age 55 (except that this item (ii) shall not apply to an employe with 30 or more years of credited service or to an employe who retires with benefits payable prior to age 55 pursuant to Section 2 (b) of this Article II, or (iii) the first day of the month following the month in which the employe has been married one year if he is married when the election would otherwise become effective but such marriage has been in effect less than one year at that date.

An employe may prevent the automatic election provided in this subsection (a); (i) at the time of application for retirement benefits, or (ii) if later, during the month, prior to, that in which he attains age 55 (except that this item (ii) shall not apply to an employe with 30 or more years of credited service or to an employe who retires with benefits payable prior to age 55 pursuant to Section 2 (b) of this Article II) by executing a specific written rejection of such election, which includes the written consent of his spouse witnessed by the plan representative or a notary public, on a form approved by the Corporation, and filing it with the Corporation.

Information regarding this coverage is included in the summary plan description, which will be provided to each employe. Within a reasonable period prior to the annuity starting date, each participant shall be

10

Art. II, 5(a)

provided a written explanation of: (i) the terms and conditions of the surviving spouse coverage; (ii) the participant's right to make and the effect of an election to waive the surviving spouse coverage; (iii) the rights of the participant's spouse; and (iv) the right to make and the effect of revocation of a previous selection to waive the surviving spouse coverage.

(b) The beneficiary of a survivor benefit election shall be only the person who is the employe's spouse at such time and who has been his spouse for at least one year immediately prior to the effective date of such election.

(c) A survivor benefit election shall be revoked automatically upon the death of the employe or his designated spouse, or both, prior to the effective date of the election.

(d) A survivor benefit election shall be irrevocable at and after its effective date if the employe and his designated spouse shall be living at such date, except as otherwise provided in Section 5 (a) of this Article II.

(e) For an employe who makes a survivor benefit election or who is deemed to have made such election under this Section 5, the reduced amount of his monthly basic benefit referred to in (a) above shall be equal to an amount determined by multiplying the monthly basic benefit otherwise payable to the employe by 95% if the employe's age and his eligible spouse's age are the same; except that, in the case of an employe whose basic benefit are subject to redetermination at age 62 and one month the amount of reduction in his monthly basic benefit before such age for the survivor benefit election shall be based on the monthly basic benefit payable to such employe after age 62 and one/month. Such percentage shall be increased by one-half of one percent (1/2%) (up to a maximum of 100%) for each 12 months in excess of

11

Art. II, 5(e)

five (5) years that the spouse's age exceeds the employe's age and shall be decreased by one-half of one percent (1/2%) for each 12 months in excess of five (5) years that the spouse's age is less than the employe's age.

(f) The survivor benefit payable to the surviving spouse of a retired employe who has completed an election or who is deemed to have made an election under this Section 5, and who dies after such election becomes effective, shall be a monthly benefit for the further lifetime of such surviving spouse equal to 60% of the reduced amount of such employe's monthly basic benefit as determined in (e) above, except that the survivor benefit payable to the surviving spouse of an employe whose basic benefits are subject to redetermination at age 62 and one month pursuant to Section 4 (a) of this Article II, shall be based on the monthly basic benefit payable to such employe after age 62 and one month.

(g) The surviving spouse of an employe

(i) who dies on or after attaining age 65, or on or after attaining age 55 and after the employe is eligible to retire at his option under Section 2 (a) (1) or 2 (a) (2) of this Article II, or at any age with 30 or more years of credited service, but before the first day of the month following the date on which the employe retires or before the commencement date of the employe's monthly pension in the case of an employe who retires at his option and defers the receipt of his monthly pension, and

(ii) who, if he had retired at the date of his death, would have been eligible for the election under subsection (a) of this Section 5,

shall be entitled to a monthly benefit during the spouse's lifetime, terminating with the last monthly payment before the spouse's death. The monthly

12

Art. II, 5(g)(ii)

benefit payable to the surviving spouse shall be the amount such spouse would have been entitled to receive under subsection (f) of this Section 5, if the employe had retired on the date of his death under Sections 1, 2 (a) (1), 2 (a) (2) or 2 (a) (3), whichever is applicable, of this Article II with benefits commencing the first of the following month and had effectively made the election under subsection (a) of this Section 5.

(h) The death of an otherwise eligible employe who has retired under Section 3 of this Article II, occurring on or after his attaining age 55, but before the first day of the month following the date on which he dies, shall not disqualify an otherwise eligible surviving spouse from receiving a benefit hereunder.

Section 6. Supplements

(a) An employe who retires under Section 2 (other than an employe referred to in Section 4 (d) of this Article II, unless the Corporation or an Impartial Umpire under an applicable collective bargaining agreement determines his discharge should not result in his being ineligible for benefits under this Section 6), or 3 of this Article II, and who files his application for a pension within five years of the last day he worked for the Corporation and who agrees to restrict his participation in the work force before age 62 and one month as provided in (e) below will receive, in addition to his pension, certain supplements as set forth below:

(1) If the employe retires under Section 2 or 3 of this Article II with 30 or more years of credited service at the date of his retirement, he shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to his monthly pension under this Plan will equal the amount of total monthly benefit applicable to him as

13

Art. II, 6(a)(1)

provided in the table set forth below, subject to subsequent provisions of this Section 6;

| Retirement With Benefits Payable Commencing | Total Monthly Benefit Rate For Determining Monthly Early Retirement Supplement Prior to Age 62, and One Month | | |
| | For Retirements With 30 or More Years of Credited Service | | |
| | 10-1-90 through 9-1-91 | 10-1-91 through 9-1-92 | 10-1-92 and After |
| --- | --- | --- | --- |
| | $ | $ | $ |
| October 1, 1990 and After | 1,600 | 1,700 | 1,800 |

(2) If the employe retires at his option after attaining age 55 with benefits payable commencing on or after October 1, 1990 with less than 30 years of credited service, he shall be entitled to a monthly interim supplement until he attains age 62 and one month equal to the amount applicable to him as provided immediately below for each year of credited service that he had at the date of his retirement, subject to the provisions of (b), (c) and (g) of this Section 6:

14

Art. II, 6(a)(2)

| Age at Retirement | Monthly Amount* and Effective Date of Interim Supplement Payable Prior to Age 62 and One Month for Each Year of Credited Service | | |
| | Retired With Benefits Payable Commencing on or After October 1, 1990 | | |
| | 10-1-90 | 10-1-91 | 10-1-92 |
| --- | --- | --- | --- |
| | $ | $ | $ |
| 55 | 11.00 | 12.00 | 12.90 |
| 56 | 12.95 | 14.10 | 15.20 |
| 57 | 15.70 | 17.05 | 18.40 |
| 58 | 18.40 | 20.00 | 21.55 |
| 59 | 20.55 | 22.40 | 24.10 |
| 60 | 23.75 | 25.85 | 27.85 |
| 61 | 23.75 | 25.85 | 27.85 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employe is under the age he will attain at his next birthday.

(b) The early retirement supplement under provision (a)(1) of this Section 6 for an employe who retires at his option shall be calculated assuming that his basic pension commences immediately after retirement; and such early retirement supplements and the interim supplement under provision (a)(2) of this Section 6 shall be reduced, for any month prior to age 62 and one month, for which he becomes or could have become eligible for a Federal Social Security benefit, by an amount equal to the amount of the temporary benefit to which he would have been entitled if he had retired under Section 2 (b) of this Article II.

15

Art. II, 6(c)

(c) The early retirement supplement under provision (a) (1) of this Section 6 for an employe who retires under Section 2 (b) or Section 3 of this Article II shall be calculated on the assumption that he will receive a temporary benefit until age 62 and one month, even if such temporary benefit is not received by the employe until such age because of his entitlement to Social Security Benefits.

(d) The early retirement supplement under provision (a) (1) of this Section 6 for an employe who does not prevent the automatic election of the surviving spouse coverage provided under Section 5 of this Article II shall be calculated on the basis of the monthly pension he would have received if he had prevented such automatic election.

(e) Any of the supplements to which an employe is entitled shall commence on the first day of the month following the date on which the employe retires and shall be payable monthly thereafter until and including the first day of the month in which he dies, or his pension ceases for any other reason, or he is reemployed by the Corporation, or he attains age 62 and one month, whichever occurs first, provided, however, that if an employe entitled to receive a supplement has earnings after retirement in excess of the following annual earnings limitation in any calendar year before he attains age 62 and one month, such earnings being defined for this purpose as the type counted for the earnings test under the Federal Social Security Act or the corresponding type in any future Federal legislation amending, superseding, supplementing, or incorporating the Federal Social Security Act a penalty equal to double the amount by which such earnings exceed the amount permitted shall be charged against each succeeding monthly supplement which he would otherwise be entitled to receive until the full amount of such penalty is

16

Art. II, 6(e)

satisfied, it being understood that penalties and charges herein shall be cumulative if appropriate:

| Calendar Year | Annual Earnings Limitation Amount |
|---|---|
|  | $ |
| 1990 | 10,000 |
| 1991 | 15,000 |
| 1992 | 15,000 |
| 1993 | 15,000 |

An employe receiving a monthly early retirement supplement or interim supplement may be required to certify whether his earnings have been in excess of the permitted amount and to furnish verification of the amount of his earnings. Unless repaid by the employe in a lump sum, any overpayments of a supplement made after an employe incurred a penalty because of excess earnings in accordance with the preceding paragraph shall be deducted from future monthly benefits payable to him under this Pension Plan.

The annual earnings limitation provisions of this subsection (e) shall not be applicable to any mutually satisfactory retirement with benefits payable commencing on or after October 1, 1990 and prior to September 14, 1993.

(f) If a retired employe has been receiving a pension under Section 3 of this Article II and has been receiving a supplement and on the basis of medical evidence satisfactory to the Corporation, it is found that he is no longer totally and permanently disabled and his seniority is restored, or if he is reemployed by the Corporation, he shall not thereby forfeit any right he may thereafter have to receive a supplement if he thereafter retires under this Pension Plan.

(g) If the total of the employe's monthly pension under this Pension Plan and his monthly early

17

Art. II, 6(a)

retirement supplement or interim supplement receivable as computed, above would not exceed 70% of his final base pay, his monthly supplement (but not his monthly pension) shall be reduced to the extent required so that such monthly pension, plus his supplement will equal 70% of his final base pay. For this purpose, an employe's final base pay shall mean 173 1/3 times his Base Hourly Rate as defined in Article X.

**Section 7. Special Benefit**

(a) A retired employer or a surviving spouse, (i) age 65 or older, or (ii) under age 65 and enrolled in the voluntary "Medicare" coverage that is available under the Federal Social Security Act by making contributions (in either case excluding the spouse of a former employe who received a deferred vested pension benefit under Article VII of the Plan), who is receiving a monthly benefit under Article II of the Plan which commenced prior to October 1, 1979, subject to (d) below, shall receive a monthly special benefit equal to:

(i) the lesser of $28.00, or, the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1990.

(ii) the lesser of $31.00, or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1991.

(iii) the lesser of $34.00 or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1992.

(iv) the lesser of $38.50 or the generally applicable "Medicare" Part B premium for months commencing on or after January 1, 1993.

(b) In no event shall such payment commence prior to the first day of the month following the earlier of (i) the month during which age 65 is attained, or

18

Art. II, 7(b)

(ii) for enrollments effective prior to October 1, 1990 receipt by the Corporation of application or a form provided for this purpose from an otherwise eligible individual under age 65; except that, with respect to an otherwise eligible individual under age 65, payment shall commence with the first month of such enrollment; but in no event prior to October 1, 1979.

(c) Not more than one such payment shall be made to any individual for any one month. No such payment shall be made to any individual under age 65 for any month such individual is not enrolled for such voluntary "Medicare" coverage. No such payment shall be made, under this Plan to any individual who retires with benefits payable commencing on or after October 1, 1979.

(d) Effective January 1, 1991, the special benefit payable to, an individual who is not enrolled in "Medicare" Part B as of October 1, 1990, but who was receiving a special benefit, will be limited to $28.00 per month. Such an individual will become entitled to the schedule of payments in subsection (a) above, upon proof of enrollment in "Medicare" Part B. Thereafter, continued receipt of a special benefit will be contingent on maintenance of "Medicare" Part B enrollment.

(e) For an individual enrolled in "Medicare" Part B as of October 1, 1990, or who first becomes eligible for "Medicare" Part B on or after October 1, 1990, receipt of a special benefit off and after January 1, 1991 is contingent upon continued enrollment in "Medicare" Part B.

**Section 8. Benefits for Employes Who Retired With Benefits Payable Commencing Prior to October 1, 1990.**

An employe who retired under Article II of the Plan with benefits payable commencing prior to October 1, 1990, or the eligible surviving spouse of

19

Art. II, 8

such an employe, shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date, except that

(p) (1) Benefits payable to such retired employes or surviving spouses shall be increased to the extent necessary to provide monthly benefits equal to the basic benefits which would have been payable had the basic pension benefits payable to the employe after age 65 been based on the following table:

| Retirement With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing October 1, 1990 and After $ |
|---|---|---|
| Prior to October 1, 1979 | N/A | 20.00* |
| October 1, 1979 through September 1, 1980 | A B C D | 21.25 21.50 21.75 22.00 |
| October 1, 1980 through September 1, 1981 | A B C D | 21.35 21.60 21.85 22.10 |
| October 1, 1981, through, September 1, 1984 | A B C D | 21.45 21.70 21.95 22.20 |
| October 1, 1984 through September 1, 1985 | A B C D | 24.10 24.35 24.60 24.85 |

*Including, if applicable, $1.00 waived for election of a special survivor option.

(Continued On Next Page.)

(Continued From Preceding Page)

Art. II, 8(a)(1)

| Retirement With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing October 1, 1990 and After $ |
|---|---|---|
| October 1, 1985 through September 1, 1986 | A B C D | 24.20 24.45 24.70 24.95 |
| October 1, 1986 through September 1, 1987 | A B C D | 24.30 24.55 24.80 25.05 |
| October 1, 1987 through September 1, 1988 | A B C D | 27.30 27.55 27.80 28.05 |
| October 1, 1988 through September 1, 1989 | A B C D | 27.40 27.65 27.90 28.15 |
| October 1, 1989 and prior to October 1, 1990 | A B C D | 27.50 27.75 28.00 28.25 |

(2) Benefits payable to employes retired on and after October 1, 1973, shall be based on the Benefit Class Code applicable to the employe, determined as though the maximum base hourly rate of the employe's job classification had included the amount of any wage inequity adjustment made applicable to such job classification on or after September 14, 1973, and prior to the employe's loss of seniority.

Art. II, 8(a)3

(3) If an employe, whose monthly basic benefit otherwise would have been redetermined at age 62 attains age 62 on or after March 1, 1982, such redetermination shall be effective at age 62 and one month.

(b) Any temporary benefits payable to such retired employes until age 65 if retired with benefits payable commencing before March 1, 1974, or age 62 if retired with benefits payable commencing on or after March 1, 1974 or age 62 and one month for a retired employe who attains age 62 on or after March 1, 1982, or, in any case, if earlier, until the age at which the employe becomes or could have become eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age shall be increased to the extent necessary to provide monthly temporary benefits equal to the temporary benefits which would have been payable had the temporary benefits payable to the employe prior to such age 65 (or age 62 or age 62 and one month) or earlier age been based on the following:

22

Art. II, 8(b)

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount* | |
|---|---|---|
| | Per Year of Credited Service $ | Maximum $ |
| Prior to September 1, 1964 | 11.50 | 300.00 |
| September 1, 1964 and prior to October 1, 1967 | 12.00 | 300.00 |
| October 1, 1967 and prior to October 1, 1970 | 12.25 | 306.25 |
| October 1, 1970 and prior to March 1, 1974 | 12.75 | 318.75 |
| March 1, 1974 and prior to October 1, 1976 | 13.75 | 343.75 |
| October 1, 1976 and prior to October 1, 1978 | 14.25 | 356.25 |
| October 1, 1978 and prior to October 1, 1979 | 15.25 | 381.25 |
| October 1, 1979 and prior to October 1, 1980 | 16.25 | 406.25 |
| October 1, 1980 and prior to October 1, 1981 | 17.25 | 431.25 |
| October 1, 1981 and prior to January 1, 1983 | 18.25 | 456.25 |
| January 1, 1983 and prior to October 1, 1985 | 18.25 | 547.50 |

*Benefit payable for months commencing October 1, 1990.

(Continued On Next Page)

23

Art. II, 8(b)

(Continued From Preceding Page)

| Retires With Benefits Payable Commencing | Monthly Temporary Benefits Benefit Amount* | |
|---|---|---|
| | Per Year of Credited Service $ | Maximum $ |
| October 1, 1985 and prior to October 1, 1986 | 19.25 | 577.50 |
| October 1, 1986 and prior to October 1, 1987 | 20.25 | 607.50 |
| October 1, 1987 and prior to October 1, 1988 | 20.45 | 613.50 |
| October 1, 1988 and prior to October 1, 1989 | 21.55 | 646.50 |
| October 1, 1989 and prior to October 1, 1990 | 22.65 | 679.50 |

*Benefit payable for months commencing October 1, 1990.

(c) (1) An employe who retired under Article II of this Plan with 30 or more years of credited service who is receiving a monthly supplement which commenced prior to October 1, 1990 shall receive an increase to such monthly supplement as follows:

| Effective Date of Increase | Amount of Increase* | |
|---|---|---|
| | Payable to Age 62 and One Month $ | Payable Between Ages 62 and One Month - 64 $ |
| October 1, 1990 | 75.00 | 37.50 |

*This increase will not result in a total monthly benefit of less than $1,100 for months prior to age 62 and one month, or $550 for months between ages 62 and one month and 64.

24

Art. II, 8(d)(1)

The amount of any monthly supplement payable to an employe who retired under Article II of the Plan with benefits commencing prior to October 1, 1990 shall be redetermined to the amount of supplement which would have been payable had the applicable benefit rates set forth in this Section 8 been in effect when such employe's benefits commenced. If such retired employe is entitled as of October 1, 1990 to receive Social Security benefits, and if he became so entitled before October 1, 1990 any increase in the rate of temporary pension provided in provision (b) of this Section 8 shall not be considered in redetermining his supplement until he ceases to be so entitled.

(2) An employe who retired under Article II of this Plan at his option after attaining age 55 with less than 30 years of credited service who is receiving an interim supplement which commenced prior to October 1, 1990 shall receive, for months commencing on and after October 1, 1990, an increase to such interim supplement, as follows:

| Age at Retirement | Monthly Increase Per Year of Credited Service $ |
|---|---|
| 55 | 0.55 |
| 56 | 0.65 |
| 57 | 0.80 |
| 58 | 0.95 |
| 59 | 1.05 |
| 60 | 1.20 |
| 61 | 1.20 |

(d) The survivor benefit payable to the surviving spouse of a retired employe who has completed an election of a special survivor option and who dies after such election becomes effective, shall be a monthly benefit for the further lifetime of such surviving spouse equal to:

25

Art. II, 8(d)(1)

(1) $7.00 for each year of credited service that such retired employe had at the date of his retirement, with respect to benefits payable for any month commencing October 1, 1990 through September 1, 1991.

(2) $8.00 for each year of credited service that such retired employe had at the date of his retirement, with respect to benefits payable for any month commencing October 1, 1991 through September 1, 1992, and

(3) $9.00 for each year of credited service that such retired employe had at the date of his retirement, with respect to benefits payable for any month commencing on or after October 1, 1992.

(e) An employe who retired under Article II of the Plan, or who is eligible for a deferred pension pursuant to the provisions of Section 2 of Article VII of the Plan, and who has surviving spouse coverage in effect but whose designated spouse predeceases him, may have his monthly basic pension benefit restored to the amount payable without such coverage, effective the first day of the third month following the month in which the Corporation receives evidence satisfactory to the Corporation of the spouse's death.

(f) In lieu of receiving a reduced amount of any increase in benefits otherwise payable to him under this Section 8 on or after April 1, 1971 in order to provide an increase in the amount of survivor benefit otherwise payable, an employe who retired under Article II of the Plan with benefits payable commencing prior to November 23, 1970, who is divorced by court decree, and for whom the terms of a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p), to, not expressly prohibit cancellation of the survivor annuity, from his designated spouse for whom he has a survivor benefit

26

Art. II, 8(d)

coverage in effect, may elect to receive the full amount of such increase. To make such election he must complete a form approved by the Corporation and file it with the Corporation, accompanied by evidence satisfactory to the Corporation of a final decree of divorce, in which case such election shall become effective with respect to benefits falling due for months commencing on the first day of the third month following the month in which the Corporation receives such completed election form and final decree of divorce.

(g) An employe who retired or retires under Article II of the Plan with benefits payable commencing on or after January 1, 1962, who marries, or remarries, subsequent to the earliest date a survivor benefit coverage was in effect, or was not in effect on such date solely because the retired employe was not then married, may elect, or re-elect, a survivor benefit coverage. Any such coverage, and the benefits thereunder, shall be provided under the terms and conditions of the Plan in effect at the time of the employe's retirement. Such coverage shall become effective on the first day of the third month following the month in which the Corporation receives a completed election form, but in no event before the first day of the month following the month in which the retired employe has been married one year.

No election provided hereunder shall become effective under any circumstance for any retired employe whose completed election form is received by the Corporation after the first day of the month in which the retired employe has been married one year.

This subsection (g) also shall be applicable to an employe retired with benefits payable commencing on or after October 1, 1990.

27

Art. II, 8(h)

(h) Monthly benefits payable under this Section 8 on and after October 1, 1990 shall not be limited by the 70% benefit limitation in Section 6(g) of this Article II.

(i) The monthly amount of any lifetime supplement payable to an employe retired with benefits payable commencing on or after March 1, 1974 with 30 or more years of credited service shall be $35.00.

Section 9. Employes Not Actively at Work

The absence of an employe from active work at the time such employe would become eligible to retire under the Plan shall not preclude the employe's retirement without return to active work.

Section 10. Joint and Survivor Coverage

(a) In lieu of the monthly basic benefit otherwise payable, an employe who retires pursuant to the provisions of Section 3 of this Article II who is under age 55 and has less than 30 years of credited service shall be deemed to have elected automatically a reduced amount of monthly basic benefit, up to and including the month in which he dies or attains age 55, whichever occurs first, and a monthly survivor's benefit, beginning on the first day of the month after the retired employe would have reached age 55 if he dies before the first day of the month after he would have reached age 55, shall be payable to his designated spouse during the further lifetime of the spouse.

(b) This automatic election shall be deemed to have been made at the time the employe shall apply or shall have applied for a disability pension benefit (with the election being effective the first day of the month for which his first benefit under the Plan is payable).

28

Art. II, 10(c)

(c) The automatic election provided in this Section 10 shall be applicable only with respect to a spouse to whom the employe is married on the date of such election and only if the retired employe and his spouse shall have been married throughout the one-year period ending on the date of the retired employe's death.

(d) An employe may prevent the automatic election provided in this Section 10 at the time such election would otherwise be deemed to have been made, as set forth in subsection (b) of this Section 10, by specific written rejection which includes the written consent of his spouse witnessed by the plan representative or a notary public on a form approved by the Corporation.

(e) In any event, the election shall automatically be canceled:

(i) if the employe's disability retirement status terminates other than by death prior to the first day of the month after the retired employe attains age 55; or

(ii) if the retired employe survives on a disability retirement status until the first day of the month after he attains age 55, at which time the coverage described in Section 5 of this Article II becomes applicable.

(f) The amount of the monthly basic benefit payable to an employe deemed to have made the election provided hereunder shall be determined by reducing actuarially the amount of such benefit for the cost of the survivor benefit payable in the event of the retired employe's death before the first of the month following the attainment of age 55. The actuarial reduction shall be based on the age of the retired employe and his spouse (the age of each being

29

Art. II, 100j

determined as the age at his or her birthday nearer the date on which the benefits commence) and shall reflect the higher mortality associated with being disabled. Reduction factors at selected ages for disability survivor coverage before age 55 are set forth in the following table:

| Age of Employe When Benefits Commence | Age Difference Between Disabled Employe and Spouse Spouse Is: | | | | |
|---|---|---|---|---|---|
| | 10 Years Younger | 5 Years Younger | Same Age | 5 Years Older | 10 Years Older |
| | % | % | % | % | % |
| 30 | 8.6 | 8.1 | 7.5 | 6.7 | 5.9 |
| 35 | 10.4 | 9.9 | 9.2 | 8.3 | 7.2 |
| 40 | 12.5 | 11.8 | 11.0 | 10.0 | 8.8 |
| 45 | 14.3 | 13.5 | 12.7 | 11.6 | 10.3 |
| 50 | 13.9 | 13.2 | 12.4 | 11.4 | 10.2 |
| 51 | 13.1 | 12.5 | 11.7 | 10.8 | 9.7 |
| 52 | 10.4 | 9.9 | 9.3 | 8.6 | 7.7 |
| 53 | 3.4 | 3.2 | 3.0 | 2.8 | 2.5 |
| 54 | 3.4 | 3.3 | 3.1 | 2.8 | 2.5 |

NOTE: *Actuarial reduction factors for ages not shown will be calculated on the same basis as the factors shown.*

(g) The amount of the monthly benefit payable to the surviving spouse of a retired employe deemed to have made the election specified hereunder shall be 50% of the amount of the monthly basic benefit payable to the retired employe after the reduction provided in subsection (f) of this Section 10.

(h) Anything in the Plan to the contrary notwithstanding, if the designated spouse of a retired employe deemed to have made the election provided

30

Art. II, 100h

hereunder shall predecease, such retired employe, or they are divorced by court decree and a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) does not provide to the contrary, such retired employe shall have his monthly basic benefit restored to the amount payable without such election, effective the first day of the third month following the month in which the Corporation receives evidence satisfactory to the Corporation of the spouse's death or divorce.

(i) No benefit shall be payable under this Section 10 for any month for which benefits are payable under Article II, Section 5(b) or Section 11 of this Plan.

(j) Information regarding this coverage is included in the summary plan description, which will be provided to each employe. Within a reasonable period prior to the annuity starting date, each participant shall be provided a written explanation of: (i) the terms and conditions of the surviving spouse coverage; (ii) the participant's right to make and the effect of an election to waive the surviving spouse coverage; (iii) the rights of the participant's spouse; and (iv) the right to make and the effect of a revocation of a previous selection to waive the surviving spouse coverage.

Section 11. Pre-Retirement Survivor Coverage to Comply With the Retirement Equity Act of 1984.

(a) An employe who:

(i) has either 5 or more years of credited service, or 5 years of "service" as provided under Article III, Section 6, or

(ii) "breaks seniority on or after October 1, 1990 and who is eligible for a deferred pension under Article VII, Section 2,

31

Art. II, 116(iii)

and in either case is not eligible for the survivor benefit coverage provided under Section 5 of this Article II, shall have the pre-retirement survivor coverage described herein.

Such coverage shall remain in full force and effect until the date on which the employe or former employe becomes eligible for, the survivor benefit coverage provided under Article II, Section 5, at which time the pre-retirement survivor coverage described herein shall cease to be effective.

In the event the employe or former employe predeceases the designated spouse while the pre-retirement survivor coverage provided hereunder is in effect, the designated spouse shall be eligible, during the further lifetime of such spouse, for a monthly benefit commencing on the first of the month following the month in which the employe or former employe would have become eligible, except for the fact that he died, to retire at the option of the employe.

The amount of any such monthly survivor benefit shall be determined by the basic benefit rate in effect for the employe on the date of death of such employe, or the date seniority broke for a former employe.

(b) The survivor coverage provided hereunder for an employe or former employe shall be effective on the date the employe or former employe attains 5 years of credited service or "service" as provided under Article III, Section 6.

(c) The survivor coverage provided hereunder shall be effective with respect to a spouse to whom the employe or former employe is married, but only if the couple shall have been married throughout the one-year period ending on the date of the employe's or former employe's death.

32

Art. II, 116(d)

(d) Subsections (b) and (c) notwithstanding, if an employe or former employe marries or remarries, such coverage shall be in effect in favor of his spouse upon such marriage or remarriage, unless, in the case of remarriage, a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) requires such coverage to remain in effect for the former spouse. The effective date of any such coverage shall be in accordance with subsection (c) of this Section 11.

(e) In the event of divorce, the employe or former employe can revoke the coverage provided hereunder without spousal consent, unless a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p) provides to the contrary.

(f) The coverage provided hereunder shall be canceled automatically on the date when any employe or former employe becomes eligible for the survivor coverage provided under the provisions of Article II, Section 5 of the Plan.

(g) The monthly benefit amount payable hereunder to any eligible surviving spouse shall be 50% of the monthly amount of the basic benefit as determined in Article VII, Section 2(b) otherwise payable at the (i) date of death to the employe, or (ii) date seniority broke for a former employe, after any reduction provided in Section 2(c) of Article VII.

(ii) No benefit shall be payable under this Section 11 for any month for which benefits are payable under Article II, Section 5 or Section 10 of this Plan.

(f) Information regarding the coverage provided hereunder is included in the summary plan description, which will be provided to each employe covered by the Pension Plan, in accordance with The Employee Retirement Income Security Act (ERISA).

33

Art. II, 11(j)

(j) The pre-retirement survivor coverage provided hereunder will apply to eligible employes and former employes separated from service:

(1) whose last day worked for the Corporation was on or after October 1, 1976, and

(2) who have entitlement to but have not commenced receipt of deferred vested benefits; and

(3) who are alive as of August 23, 1984.

## ARTICLE III
## CREDITED SERVICE

**Section 1. Credited Service Subsequent to October 1, 1950 ...**

(a), (1) Credited service shall be computed for each calendar year for each employe, on the basis of total hours compensated by any plant or Division of the Corporation during such calendar year while the employe has unbroken seniority. Employment while covered under The GM Special Pension Plan shall not be credited hereunder, except for an employe with seniority on March 1, 1988, who has not received a cash payment representing his accrued benefit under The GM Special Pension Plan. Any calendar year in which the employe has 1700 or more compensated hours shall be counted a full calendar year. Where the employe's total hours compensated during a calendar year are less than 1700 hours, a proportionate credit shall be given to the nearest 1/10 of a year.

(2) For the purpose of computing credited service, hours of pay at premium rate shall be computed as straight time hours.

(b) For the purpose of computing compensated hours under subsection (a) of this Section 1:

34

Art. II, 11(b)(1)

(f) An employe with seniority on or after January 1, 1968 who is absent from work during any calendar year thereafter because of layoff or while on a Corporation approved sick leave, shall be credited with 40 hours for each complete calendar week of such absence during such year in addition to any other hours credited provided that such employe shall have received pay from the Corporation during that year for at least 170 hours, and provided further, that if such absence commences in calendar year 1970, or later, and such layoff or sick leave continues into the following year he shall be credited with 40 hours for each complete calendar week of absence in the following year, not to exceed 1530 hours of credit for all such absence related to receipt of such pay from the Corporation in the first year.

An employe who is recalled from permanent layoff and returns to work on or after October 1, 1990 shall become eligible for the 1530 hours of credit hereunder, applicable during a sick leave or layoff, on the later of: (1) receipt of pay from the Corporation for at least 170 hours, or (2) the day next following the 12th week of pay from one or more GM plants within a calendar year. If the employe receives pay from the Corporation for 170, or more, hours prior to the 12th week in (2) immediately above, the employe shall become eligible for "bank" hours equal to the number of hours worked since recall, plus any "bank" hours to which he was entitled immediately before such return to work, but in no case to exceed 1530 hours.

An employe who returns to work on or after October 1, 1979 and receives pay for a period of less than 170 hours and who thereafter returns to such layoff or sick leave, shall not be disqualified, solely because of the receipt of such pay, from receiving any such credit for which he otherwise would be eligible hereunder. For the purposes of this subsection only, an employe who is laid off subsequent to

35

Art. III, 1(b)(11)

October 1, 1979 and whose first day of absence due to such layoff is the first regularly scheduled work day in the January next following his last day worked shall be deemed to have been laid off on December 31 of the year in which he last worked. A part-time employe shall be credited for any week of such absence in the same percentage relationship as such employe's regular part-time schedule is to 40 hours.

An employe who (i) is at work on or after October 1, 1990, (ii) has 10 or more years of seniority at time of layoff commencing on or after October 1, 1990; (iii) while, on such layoff has received the maximum of 1530 hours of credit for periods of absence due to layoff or Corporation approved sick leave in accordance with the preceding paragraph of this Section 1(b)(1); and (iv) continues thereafter to be absent due to such layoff shall be credited with 40 hours for each complete calendar week of absence due to such layoff up to a maximum of 1700 hours of credit.

(2) An employe who is absent from work because of occupational injury or disease incurred in the course of such employe's employment with the Corporation, and on account of such absence receives Workers' Compensation while on Corporation approved leave of absence shall be credited with 40 hours for each complete calendar week of such absence after September 1, 1961.

(c) Any salaried employe transferred to an hourly-rate job who thereby becomes an employe covered by the Plan shall have credited to the nearest 1/10 year any credited service the employe had as of the date of such transfer under any Corporation retirement plan for salaried employes.

(d) If an employe who retired is retired, such employe may accumulate additional credited service by reason of such reemployment.

36

---

Art. III, 1(e)

(e) For the purpose of computing compensated hours under subsection (a) of this Section 1:

(i) An employe who after October 1, 1950 and prior to June 1, 1955 was absent from work because he entered into active service in the armed forces of the United States and who was given a Corporation approved leave of absence for such period shall be credited with the number of hours that the employe would have been scheduled to work during such absence.

(2) An employe, who on or after June 1, 1955 was or is absent from work to enter into (or remain in) active service in the armed forces of the United States and for that reason was or is given a Corporation approved leave of absence, shall be credited with 40 hours for each complete calendar week that he is on such leave, provided, however, that credited service based on such hours shall not exceed four years (including credited service, if any, granted under subsection (e)(1) of this Section 1), or such longer period during which he has reemployment rights pursuant to any Federal law, and provided, further, that the employe is reemployed in accordance with the terms of such leave of absence or, if reemployed by the Corporation at a location other than the location from which the leave was granted, within 90 days from the date of his discharge from the armed forces.

(f) Any employe hired on an hourly-rate job by a plant or Division of the Corporation, who has credited service under any Corporation retirement plan for salaried employes or who has lost credited service under any such plan, shall, upon making proper application, have such service credited to the nearest 1/10 year; provided that the employe acquires or acquired seniority following the loss of such credited service.

37

Art. III, 1(g)

(g) If a former salaried employe who is entitled to a deferred retirement benefit under Part A of the General Motors Retirement Program for Salaried Employes is reemployed by the Corporation and acquires seniority prior to the commencement of such deferred retirement benefit, such employe shall, upon making proper application, have reinstated, in lieu of the deferred retirement benefit, the credited service lost at the time the employe became entitled to such deferred retirement benefit.

(h) An employe with at least five years of seniority:

(1) on January 1, 1968 who was absent from work because of layoff during any calendar year after December 31, 1955 and before January 1, 1963, or

(2) on December 10, 1973 who was absent from work because of layoff during any calendar year after December 31, 1950 and before January 1, 1956, or

(3) on October 1, 1979 who was absent from work because of layoff during any calendar year after December 31, 1962 and before January 1, 1968, or

(4) on October 1, 1984 who was absent from work because of layoff during any calendar year after December 31, 1978 and before January 1, 1984

shall be credited with 40 hours for each complete calendar week of such absence, not previously credited under this Section 1, during which he had seniority multiplied by a percentage as set forth in the following table:

38

---

Art. III, 1(h)(4)

| Employe's Seniority on January 1, 1968 in the Case of (1) Above or December 10, 1973 in the Case of (2) Above or October 1, 1979 in the Case of (3) Above or October 1, 1984 in the Case of (4) Above | % |
| --- | --- |
| 20 years or more | 100 |
| 15 years but less than 20 years | 75 |
| 10 years but less than 15 years | 50 |
| 5 years but less than 10 years | 25 |

provided that the employe makes proper application.

(i) In no event shall any employe be credited with more than 1700 hours, including compensated hours, in any calendar year. No employe shall be credited with any service after retirement. There shall be no duplication of credited service under the Plan. Not more than one year of credited service shall be credited to any employe in any calendar year, except as otherwise provided in Section 5 of this Article III with respect to foundry service.

(j) Notwithstanding any other Section of this Article III, in the case of an employe who shall retire on or after October 1, 1990, the employe's credited service for the period before January 1, 1966 shall not be less than the employe's seniority as of December 31, 1965, as determined under the Collective Bargaining Agreement.

39

Art. III, 2

## Section 2. Loss of Credited Service

An employe will lose all credited service for purposes of this Plan:

(a) if the employe quits,

(b) if the employe is discharged or released,

(c) if the employe's seniority is broken for any other reason.

## Section 3. Reinstatement of Credited Service

(a) Any employe with seniority on or after October 1, 1990 who breaks seniority and thereby loses or has lost credited service under Section 2 of this Article III and then is or was later reemployed by any plan or Division of the Corporation shall, upon making proper application, have such credited service reinstated provided the employe subsequently acquires or acquired seniority.

(b) Any employe retired under the provisions of this Plan who subsequently has seniority reinstated, will have credited service at the time of retirement reinstated.

## Section 4. Service With a Foreign Subsidiary

An employe with seniority on or after October 1, 1990 whose employment as an hourly or salaried employe with a directly or indirectly wholly-owned or substantially wholly-owned foreign subsidiary of General Motors Corporation has been terminated other than by retirement, shall be granted credited service under this Plan for any periods of active service with such foreign subsidiary or, if greater, the amount of service credited to such employe under any pension or retirement plan of the foreign subsidiary at the time of his termination, provided such service was prior to

40

Art. III, 4

his most recent period of active service credited under this Plan.

Any monthly benefits payable under this Plan to a retired employe who has received credited service under this Section 4 will be reduced by an amount equivalent to the total of any monthly benefits that could be payable to such employe under any retirement plan to which the foreign subsidiary has contributed, excluding, however, any such plan or any portion of any such plan providing retirement benefits purchased solely by voluntary employe contributions. Any survivor's benefits payable under this Plan to a survivor of such an employe shall be subject to similar reduction by monthly survivor's benefits payable under any plan to which the foreign subsidiary has contributed.

## Section 5. Foundry Service

An employe with seniority on or after October 1, 1990 who at retirement has over 10 years of credited service which he accrued while employed on certain foundry job classifications as set forth in Appendix B, shall receive additional credited service related thereto. Total credited service for any such employe who retires with benefits payable commencing on or after October 1, 1975 shall be the sum of (i) credited service otherwise credited to him, and (ii) any such additional credited service which shall be credited to him in accordance with the following table:

| Years of Credited Service Credited on Foundry Jobs | Additional Credited Service |
| --- | --- |
| For years 1 through 10 | 0 |
| For years 10.1 through 25 | 33-1/3% |
| For years over 25 | 20% |

41

Art. III, 5

If any such employe is continuously employed exclusively on such foundry jobs in a calendar year such additional credited service shall apply to any credited service otherwise credited to him for such year. If any such employe (i) is not continuously employed in a calendar year, or (ii) is employed on other than such foundry jobs in such year, such additional credited service shall apply to any credited service otherwise credited to him for such year in accordance with the following table:

| If Credited Service Otherwise Credited to Employe For Calendar Year is | Additional Credited Service Applies to Such Year Only if Employe Spent Following Minimum Number of Complete Calendar Weeks on Foundry Jobs During Such Year |
| --- | --- |
| 1.0 (year) | 26 |
| .9 | 23 |
| .8 | 21 |
| .7 | 18 |
| .6 | 16 |
| .5 | 13 |
| .4 | 10 |
| .3 | 8 |
| .2 | 5 |
| .1 | 3 |

No additional credited service shall be granted for any calendar year in which any such employe spends less than the minimum required number of complete calendar weeks on such foundry jobs, as indicated above.

If any such employe is on such foundry job at the time he goes on layoff or approved leave of absence, such additional credited service, shall apply to any

42

Art. III, 5

credited service otherwise credited to him while on such layoff or approved leave of absence.

Section 6: Hours, Years and Breaks in Service to Comply With The Employe Retirement Income Security Act of 1974

(a) An employe who breaks seniority on or after October 1, 1976 who would be eligible for a deferred pension under Article VII, Section 2, except solely for the fact that he does not have at least 5 years of credited service under the foregoing Sections of this Article III, shall be eligible for a deferred pension under the provisions of Article VII, Section 2 if, at the time the employe breaks seniority, he has 5 years of service as determined under this Section 6.

(b) The monthly amount of any such deferred pension shall be based solely on the credited service that the employe had under the foregoing Sections of this Article III when he broke seniority.

(c) No employe shall be eligible to be covered under this Section 6 until he (i) attains age 21, or (ii) completes 1 year of service under this Section 6, whichever is later. Retired employes shall participate immediately.

(d) An employe shall complete 1 year of service when he completes 750 hours of service in the 12 consecutive month period beginning with his employment commencement date. If an employe fails to complete 750 hours of service in such period, he shall complete 1 year of service in the first 12 consecutive month period thereafter in which he completes 750 hours of service, measured from each succeeding anniversary of his employment commencement date. Thereafter, an employe shall complete 1 year of service during each 12 consecutive month period in which he completes 750 hours of

43

Art. III, 6(d)

service, measured from the anniversary of his employment commencement date. A year of service under this Section 6 shall include service (i) with affiliated group members accrued subsequent to acquisition, (ii) rendered to the Corporation as a former leased employe (but only upon employe application, supported by substantiation satisfactory to the Corporation of such service), and (iii) rendered to the Corporation as a salaried employe in accordance with I.R.C. Section 414(b), (c), (m), (n), and (o).

(e) An employe who satisfies the eligibility requirements of this Section 6, and who is otherwise entitled to participate in the Plan, shall commence participation under this Section 6 if he satisfies such requirements (i) between April 1 and September 30, on the first day of the plan year beginning after the date on which such requirements are satisfied, or (ii) between October 1 and March 31, on the first day of the plan year that includes the date such requirements are satisfied, but in no event shall any employe participate hereunder if the breaks seniority prior to such commencement date.

(f) An employe shall complete an hour of service under this Section 6 for each hour for which he is paid by the Corporation for working or for which he is paid by the Corporation for having been entitled to work. Any hours for which an employe receives pay for having been entitled to work, irrespective of mitigation of damages, shall be credited to the period or periods he was so entitled, rather than to the period in which he receives such pay. There shall be no duplication of any hours of service under this Section 6.

(g) Solely for purposes of determining years of service for vesting under this Section 6, all of the employe's years of service shall be taken into account except the following: (i) years of service before age 18

44

Art. III, 6(g)

(age 22 prior to October 1, 1985); (ii) years of service before January 1, 1971, unless the employe has at least 3 years of service after December 31, 1970; (iii) years of service prior to any 1-year break in service as defined herein, until the employe completes a year of service after such break; (iv) for non-vested participants under this section, years of service prior to any 1-year break in service if the number of such consecutive breaks equals or exceeds the aggregate number of years of service prior to such break; for a non-vested participant at work on or after October 1, 1985, years of service prior to any 1-year break in service if the number of such consecutive breaks equals or exceeds the greater of 5, or the aggregate number of years of service prior to such break (such aggregate number of years of service before such break shall not include any years of service not required to be taken into account under this Section 6 by reason of any prior break in service); (v) years of service before October 1, 1976, if such service would have been disregarded under rules of the Plan as in effect on October 1, 1976, regarding breaks in service; and (vi) any year in which the employe completes less than 750 hours of service.

(h) An employe shall incur a 1-year break in service under this Section 6 in any 12 consecutive month period during which he does not complete more than 375 hours of service, measured from the anniversary of his employment commencement date. Solely for purposes of determining whether an employe has incurred such 1-year break in service, in addition to, hours worked which are paid by the Corporation, any hours which an employe does not work but for which he is paid by the Corporation for vacation, sickness or disability, or is entitled to be so paid, directly or indirectly, shall be taken into consideration. For any absence from work commencing on and after October 1, 1985 by reason of pregnancy of the individual, childbirth, placement

45

Art. III, 6(b)

of a child related to an adoption, or for child care purposes, immediately following such birth or placement, the employe shall be credited with the hours of work for which he otherwise would have been scheduled or, if unable to determine such scheduled hours, 8 hours for each work day of such absence, not to exceed at 50? hours for any such absence. Such hours shall be credited in the year in which the absence commences if necessary to prevent incurring a 1-year break in service, otherwise such hours shall be credited in the immediately following year.

### Section 7. Asbestos Service

An employe with seniority on or after October 1, 1990 whose retirement has over 10 years of credited service which was accrued while employed on certain asbestos job classifications as set forth in Appendix C, shall receive additional credited service related thereto in the same manner as set forth in Section 5 of this Article III.

## ARTICLE IV

## REDETERMINATIONS ON ACCOUNT OF SOCIAL LEGISLATION

### Section 1. Redeterminations for Federal Social Security Benefits for Age or Disability

(a) The benefits payable for age or disability under the Federal Social Security Act, as amended, as now in effect, or as hereafter amended, which are referred to in the determination of pensions under Article II shall be included in such determination even though the employe either does not apply for, or loses part or all of such payments through delay in applying for them, by entering into covered employment, or otherwise.

46

Art. IV, 1(b)

(b) Old age benefit payments or disability benefit payments, other than those payable on a basis of "need" or because of military service, under any future federal legislation, amending, superseding, supplementing, or incorporating the Federal Social Security Act, as amended, or benefits provided therein, shall be considered as benefits for age or disability under the Federal Social Security Act for the purposes of the Plan.

(c) If an employe is eligible for a Federal Social Security benefit or an unreduced Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age at the time of retirement or thereafter, such employe shall provide the Corporation with evidence of the effective date of entitlement to such benefit.

### Section 2. Deductions for Workers Compensation

In determining the monthly benefits payable under this Plan, a deduction shall be made unless prohibited by law, equivalent to all or any part of Workers' Compensation (including compromise or redemption settlements) payable to such employe by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workers' Compensation has been provided by premiums, taxes or other payments paid by, or at the expense of the Corporation, except that no deduction shall be made for the following:

(a) Workers' Compensation payments specifically allocated for hospitalization or medical expense, fixed statutory payments for the loss of any bodily member, or 100% loss of use of any bodily member, or payments for loss of industrial vision.

(b) Compromise or redemption settlements payable prior to the date monthly pension benefits first become payable.

47

Art. IV, 2(c)

(c) Workers Compensation payments paid under a claim filed not later than two years after the breaking of seniority.

## ARTICLE V

## FINANCING

### Section 1: Trust Fund

The Corporation shall execute a trust agreement with a trustee or trustees selected by the Corporation to manage and operate the pension fund and to receive, hold and disburse, such contributions, interest and other income as may be necessary to pay such of the pensions and supplements or portions thereof under this Plan as are not provided for by an insured fund. The Corporation may establish an insured fund with such insurance company or companies as it may select for the payment of such of the pension and supplements or portions thereof under this Plan as are not provided for in a trusteed fund.

The Corporation will determine the form and terms of any such trust agreement which may authorize the inclusion of obligations and stock (common and preferred) of the Corporation, and its wholly-owned subsidiaries, among the investments of the pension fund provided for by such trust agreement, may utilize any investment manager as defined under the Employee Retirement Income Security Act of 1974 or regulations thereunder; may modify any such trust agreement from time to time to accomplish the purposes of this Plan; may remove any trustee, and select any successor trustee; and select and change insurance companies.

### Section 2. Contributions

(a) The Corporation, subject to Article IX, Section 1, shall make such contributions to the trustee

48

or pay such premiums under any insured contract for the purposes of providing pensions and supplements under the Plan as shall be required under accepted actuarial principles and Title I of the Employee Retirement Income Security Act of 1974 to maintain the Plan and pension or insured fund in a sound condition; and shall pay for expenses incident to the operation and management of the Plan.

(b) The Corporation may charge to the fund expenses necessary for the proper administration of the Plan and investment of the funds, including the direct cost of benefit administration performed by, or on behalf of, the Corporation for the Plan, and Pension Benefit Guaranty Corporation premiums for participants.

(c) No employe shall be required to make any contributions to the Plan.

### Section 3. Irrevocability

(a) The Corporation shall have no right, title or interest in the contributions made by it to the trustee and no part of the pension or insured fund shall revert to the Corporation, except that after satisfaction of all liabilities of the Plan as set forth in Article IX, such contributions as may have been made by the Corporation as the result of overpayments may revert to the Corporation.

(b) The pension benefits and supplements of the Plan shall be only such as can be provided by the assets of the pension fund or by any insured fund and there shall be no liability or obligation on the part of the Corporation to make any further contributions to the Corporation to make any further contributions to the trustee or insurance company in event of termination of the Plan. No liability for the payment of pension benefits or supplements under the Plan shall be imposed upon the Corporation, the Officers, Directors or Stockholders of the Corporation, except as otherwise may be required by the Employee Retirement Income Security Act of 1974.

49

Art. V, 2(c)