UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
**GENERAL MOTORS CORP.**, *et al.*, :    09-50026 (REG)
                                    :
                    Debtors.        :    (Jointly Administered)
                                    :
———————————————————————x

### LIMITED OBJECTION TO THE MOTION BY GM TO ASSUME CERTAIN REINSURANCE CONTRACTS ISSUED BY ASPEN INSURANCE UK LIMITED TO GENERAL INTERNATIONAL LIMITED

Nixon Peabody LLP represents Aspen Insurance UK Limited ("Aspen") and files this limited objection to the motion of General Motors Corporation ("GM") to assume certain reinsurance contracts issued by Aspen to General International Limited ("GIL"), a Bermuda based non-debtor affiliate of GM, in 2007 and 2008. Aspen is a company organized and existing under English law.

### Objection

On the GM website two reinsurance policies issued by Aspen to GIL under ID #5716-01227088 and #5716-01227089 are listed as executory contracts which GM intends to assume in this bankruptcy action. They are mistakenly referred to as GM "Excess Liability Insurance" policies. (A copy of the website page and Reinsurance Agreement are annexed as Exhibit A.)

However, these policies, which are reinsurance policies, are not subject to assumption since the counterparty to these reinsurance policies is GIL, a non-debtor GM affiliate. . As set forth in the reinsurance documents , Aspen (as a reinsurer) only entered into the reinsurance contracts with GIL (its reinsured). Also, as referenced in the reinsurance contracts, GM has its own separate insurance policies with GIL. According to the express terms of the contracts, they

12736178.1

cannot be assumed by GM, since GIL is the reinsurance policy owner. It was simply a mistake to refer to the reinsurance contracts as excess liability insurance policies of GM and to otherwise include them in the list of executory contracts GM intends to assume in the bankruptcy action.

For all the above reasons,, Aspen would object to any attempt by GM to assume these reinsurance policies and they should be removed from the executory contract website and that the court grant such other and further to Aspen as may be just and appropriate..

Dated:   October 8, 2009

NIXON PEABODY LLP

By: _____
Dennis Drebsky
Attorneys for Aspen
437 Madison Avenue
New York NY  10022
Tel.: (212) 940-3091



Exhibit A

## ASPEN
ASPEN INSURANCE

### FACULTATIVE REINSURANCE FORM

### REINSURING AGREEMENT

Whereas the Reinsured has issued a Policy to the Original Insured named in Item 5 of the Reinsurance Declarations and in consideration of the premium stated in Item 15 of the Reinsurance Declarations, this Contract of reinsurance (hereinafter referred to as "Reinsurance") reinsures the interests of the Reinsured in the Original Policy, . referred to in Item 4 of the Reinsurance Declarations

Subject otherwise to the statements contained in the Reinsurance Declarations and any other limitation or condition set forth herein (or as may be endorsed hereto), this Reinsurance is subject to the same terms, clauses and conditions of the Original Policy referred to in Item 4 of the Reinsurance Declarations. Any changes agreed by the Reinsured after the inception date of this Policy are to be agreed by the Reinsurers. Subject in all respects, other than as amended hereon in this Reinsurance Agreement, to the same terms, clauses and conditions as the Original Policy (attached herein), Reinsurer(s) agree to indemnify the Reinsured in respect of all covered losses arising out of and in connection with the Original Policy issued to the Original Insured.

The Reinsurers shall bear their respective proportion of any expenses incurred, whether legal or otherwise, in the investigation and defense of any claim hereunder. Such respective proportion of any expenses incurred shall be payable on the same basis as the Original Policy and may therefore be included within the Limit(s) of Liability stated in Item 11 of the Reinsurance Declarations.

### CONDITIONS

**1.    CURRENCY**

All premiums shall be paid in the currency stated in Item 16 of the Reinsurance Declarations. All losses shall be paid in the currency stated in Item 16 of the Reinsurance Declarations, however, if specifically requested by the Reinsured, payment will be made in any equivalent currency at the rate of exchange prevailing on the date of settlement.

**2.    CANCELLATION**

In the event of non-payment of premium, this Reinsurance may only be cancelled by the Reinsurer pro-rata. The Reinsurer must mail (registered mail or other such like means) or deliver to the Reinsured not less than fifteen (15) days advance notice stating when the cancellation is to take effect.

**3.    SUBROGATION**

The Reinsurers will be paid or credited by the Reinsured with their proportion of the subrogation, i.e. reimbursement obtained or recovery made by the Reinsured, less the actual cost (excluding the salaries and office expenses of the Reinsured) of obtaining such reimbursement or making such recovery. Salvage shall be applied in the inverse order in which liability attaches.

**4.    INSOLVENCY**

In the event of the insolvency of the Reinsured, this reinsurance shall be payable





directly to the Reinsured, or its liquidator, receiver, conservator, or statutory successor immediately upon demand on the basis of the liability of the Reinsured without diminution because of the insolvency of the Reinsured or because the liquidator, receiver, conservator, or statutory successor of the Reinsured has failed to pay all or a portion of any claim.

It is agreed, however, that the liquidator, receiver, conservator, or statutory successor of the Reinsured shall give written notice to the Reinsurer of the pendency of a claim against the Reinsured which would involve a possible liability on the part of the Reinsurer, , within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership. It is further agreed that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses that it may deem available to the Reinsured or its liquidator, receiver, conservator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to approval of the Court, against the Reinsured as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Reinsured solely as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in this reinsurance and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Reinsurance as though such expense had been incurred by the Reinsured.

The reinsurance shall be payable by the Reinsurer to the Reinsured or to its liquidator, receiver, conservator, or statutory successor, except: (a) where this reinsurance specifically provides another payee of such reinsurance in the event of the insolvency of the Reinsured; (b) where the Reinsurer with the consent of the direct insured or insureds has voluntarily assumed such original policy obligations of the Reinsured as direct obligations of the Reinsurer to the payees under the Policy reinsured and in substitution for the obligations of the Reinsured to the payees; or (c) where provided otherwise under applicable law. Then, with the prior approval of the applicable regulatory authority, if required, the Reinsured is entirely released from its obligation and the Reinsurer shall pay any loss directly to payees under the Policy reinsured.

### Cut Through Provision

It is understood and agreed that Reinsurers will, if requested by the Original Insured, pay directly to the Original Insured the amount due by Reinsurers under this Reinsurance Agreement in respect of a claim under the Original Policy, subject to the terms, conditions and exceptions of the Original Policy, this Reinsurance Agreement and provided always that all of the following conditions are fulfilled:-

(a) The Reinsured is unable to effect payment by reason of insolvency or liquidation and payment by Reinsurers has not already been paid or credited to the Reinsured;

(b) The Reinsured is liable for the claims in question both as to liability and quantum in accordance with the terms and conditions of the Original Policy and this Reinsurance Agreement or has been required to make payment in accordance with any arbitration clause appearing therein;

(c) The Reinsured by its receiver or liquidator instructs the Reinsurers in writing to make a direct payment to the Original Insured. Such instructions shall be expressly irrevocable and shall provide that any payment made directly to the Original Insured relieves Reinsurers of any and all further liability towards the Ceding Company or its receiver or liquidator with respect to such quantum of the claim in question paid by



ASPEN
ASPEN INSURANCE

Reinsurers;

(d) The Reinsured by its liquidator or receiver proves to Reinsurers' satisfaction that a direct payment to the Original Insured:

   (i) does not violate contradict or subvert any applicable currency or exchange regulations or any insolvency laws;

   (ii) does not expose Reinsurers to any possibility of further or double liability in respect of the same claim under the Original Policy.

Before making a direct payment to the Original Insured hereunder, Reinsurers shall have the right to deduct from such payment any overdue premiums relating to the said insurance policy owed by the Reinsured to Reinsurers.

5. **GOVERNING LAW**

This Reinsurance shall be governed by and construed in accordance with the laws of England and Wales, and shall not be subject to the provisions of the Law of Construction and Interpretation condition in the Original Policy.

6. **ARBITRATION**

(a) Any dispute, controversy or claim arising out of or relating to this Reinsurance Agreement, or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1996 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party may, in the event of such a dispute, controversy or claim, notify the other party or parties to such dispute, controversy or claim of its desire to arbitrate the matter, and at the time of such notification to the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. The other party who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, either of the parties within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment of said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Arbitration Condition shall be given in accordance with any Notice Condition in this



# ASPEN
ASPEN INSURANCE

Reinsurance.

(b) The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto.

(c) Any order as to the costs of arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

7. **ASSISTANCE AND CO-OPERATION**

1) **Notice to Reinsurers:** The Reinsured shall, as a condition precedent to its right to any indemnity under this Reinsurance, give the Reinsurer written notice of occurrences, losses and claims as required herein.

2) **Occurrences, Losses and Claims Requiring Notice:**

   All Occurrences, losses and claims which are reserved by the Adjuster (as defined in the attached Original Policy Wording) for USD 25,000,000 or greater shall be notified to the Reinsurer by the Reinsured within thirty (30) calendar days. For all such Occurrences, losses or claims notified, the Reinsured shall report, within ninety (90) calendar days, any changes in loss reserves or other significant developments which may affect the final disposition or amount of a settlement.

3) **Reinsurer's Right of Inspection:** The Reinsured shall, at all reasonable times, place at the disposal of the Reinsurer or its authorized representatives for inspection and copying at the Reinsurer's expense all books, records and papers recorded in any form by the Reinsured. The Reinsurer's right of inspection shall exist after termination of the Policy Period as long as one of the parties hereto has a claim arising under this Reinsurance against the other.

4) **Right to Associate:** The Reinsurer shall not be called upon to assume charge of the investigation, evaluation, settlement, defense or control of the handling of, any loss, claim or legal action, arbitration or other proceeding commenced against the Original Insured. The Reinsurer shall be afforded the opportunity to associate with the investigation, evaluation, settlement, defense and/or handling of any such loss, claim or proceeding, that has been reserved by the Adjuster for USD 25,000,000 or greater. This association shall consist of regular (not less than quarterly) conference calls, conducted by the Original Insured, with the legal staff of the Original Insured, during which the Reinsurer or its representatives may discuss any loss, claim or proceeding which may affect the Reinsurer's liability under this Reinsurance, and during which the Reinsurer may comment and advise on the investigation, evaluation, settlement, defense and/or handling of such losses, claims or proceedings.

   At the Reinsurer's request, the Original Insured and the Reinsured shall arrange additional conference calls or meetings with the legal staff of the Original Insured, to respond to queries upon reasonable notice, regarding any loss, claim or proceeding which may affect the Reinsurer's liability under this Reinsurance, and to receive the Reinsurer's advice, comments and



## ASPEN
ASPEN INSURANCE

suggestions regarding such loss, claim or proceeding.

The Reinsurer's opportunity to associate with the investigation, evaluation, settlement, defense, and/or handling of any loss, claim or proceeding shall remain subject to the provisions of the Original Policy, including Insuring Agreement V. B., "Control of Defense". It is a condition precedent, notwithstanding the above, that no settlement and/or compromise in connection with a loss, claim or proceeding involving this layer of Reinsurance shall be made by the Reinsured or Original Insured, nor any liability admitted by the Reinsured or Original Insured, without the prior written approval of the Reinsurer.

5) **Recoveries:** Recoveries or payments recovered or received subsequent to loss settlement by the Reinsured shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall be made by the Reinsured and the Reinsurer.

## 8  OFF SET

Both Parties, each at its option, may offset any balance or balances whether on account of premium, claims and losses, loss expenses or salvages due from one party to the other under this Reinsurance Agreement; provided, however, that in the event of insolvency of a party hereto, offset shall only be allowed in accordance with applicable insolvency statutes and regulation

## 9  THIRD PARTY RIGHTS

Except to the extent set forth in this Reinsurance Agreement, A person who is not a party to this Agreement has no right under the Contract (Rights of Third Parties) Act 1999 to enforce any term of this Agreement but this does not affect any right or remedy of a third party which exists or is available apart from that Act.

## 10  AMENDMENTS

No variation in this Reinsurance Agreement shall be effective unless evidenced in writing and duly signed on behalf of both parties. Variations sent by instantaneous means of communication are also effective provided they are capable of being shown by means of permanent or retrievable record to have been agreed by both parties.



# ASPEN
ASPEN INSURANCE

**11    REINSURANCE DECLARATIONS**

| | |
|---|---|
| Item 1 | **Policy No.**   K0A065C08A0FQ |
| Item 2 | **Reinsured:** |
| | General International Limited |
| Item 3 | **Address of the Reinsured:** |
| | General International Limited<br>29 Richmond Road  HM08<br>Hamilton HM, BERMUDA |
| Item 4 | **Original Policy/ies No.(s):** |
| | GIL 08-375. |
| Item 5 | **Original Insured:** |
| | General Motors Corporation, and as more fully set forth in the Original Policy. |
| Item 6 | **Address of the Original Insured:** |
| | General Motors Corporation<br>Corporate Risk Management<br>MC482-C19-C36<br>300 Renaissance Center,<br>Detroit,<br>Michigan 48265-3000<br>United States of America. |
| Item 7 | **Original Hazards and/or Exposures and/or Perils and/or Interests:** |
| | Excess Comprehensive Third Party Liability Insurance, including Workers' Compensation Act and Employers' Liability.  Coverage in respect of Automobile Liability, Workers' Compensation Act and Employers' Liability shall apply on an "Occurrence" basis while all other coverages apply on a "Claims Made" or "losses reported" basis. |
| Item 8 | **Reinsured Hazards and/or Exposures and/or Perils and/or Interests:** |
| | As stated in Item 7. above. |
| Item 9 | **Original Limit(s) of Liability:** |
| | As more fully set forth in Item 2. of the Declarations of the Original Policy |
| Item 10 | **Maximum Retention as applicable to 9. above:** |
| | As more fully set forth in Item 3. of the Declarations of the Original Policy. |



# ASPEN
ASPEN INSURANCE

**Item 11**     **Limits(s) of Liability hereunder:**

a) USD 50,000,000 part of USD 75,000,000 each and every Occurrence / Claim as applicable

b) USD 50,000,000 part of USD 75,000,000 annual aggregate in respect of all coverages combined

IN EXCESS OF:

a) USD 245,000,000 each and every Occurrence / claim as applicable

b) USD 245,000,000 annual aggregate in respect of all coverages combined

EXCESS OF THE FOLLOWING UNDERLYING AMOUNTS (WHETHER INSURED OR SELF INSURED IN PART OR WHOLE) WHICH ARE EITHER THE GREATER OF:

A) The Underlying Policy Limits expressed as the difference between:

USD 55,000,000 each and every Occurrence and the underlying retentions listed below

(The Underlying Retentions as listed below apply before the 'Difference between' limits of liability stated above)

<u>Underlying Retentions (which include Defense Costs):</u>

USD 35,000,000 each and every Occurrence in respect of Products Liability and Completed Operations Liability combined for Claims made or suits brought within the U.S.A.

USD 25,000,000 each and every Occurrence in respect of General Liability for Claims made or suits brought within the U.S.A.

USD 25,000,000 each and every Occurrence in respect of Automobile Liability (Corporate - U.S.A., and Leasing / Rental Programs) for Claims made or suits brought within the U.S.A.

USD 25,000,000 each and every Occurrence in respect of Pollution Liability (Worldwide)

USD 25,000,000 each and every Occurrence in respect of Excess Workers' Compensation (Self-Insured States and Entities) and Employers' Liability combined, for Claims made or suits brought within the U.S.A.

USD 25,000,000 each and every Occurrence in respect of Foreign Liability (includes Products Liability, General Liability, Automobile Liability, Employers' Liability and Automobile Leasing) - for Claims made or suits brought outside the U.S.A.



# ASPEN
ASPEN INSURANCE

However, the Limits of Liability of the Policy are subject to the following annual Aggregates:

1) USD 40,000,000    in respect of Products Liability and Completed Operations Liability combined for Claims made or suits brought in the U.S.A.

2) USD 60,000,000    All other coverages except Automobile Liability

Maximum Retention as applicable to A) above (All amounts include defense costs):

(a) Per Occurrence

   (i) USD    35,000,000   each and every Occurrence in respect of Products Liability and Completed Operations Liability combined for claims made or suits brought in the U.S.A.

   (ii) USD    25,000,000 each and every Occurrence in respect of all other coverages combined.

Should an Occurrence involve more than one retention as stated above, the maximum retention would be USD 35,000,000 per Occurrence.

(b) Annual Aggregate

Not applicable

OR

B)    The Underlying Insurance as per Schedule B of the Insured's Application.

**Item 12 Interest:**

As the original Policy

**Item 13 Territorial Limits:**

Worldwide

**Item 14 Period of this Reinsurance:**

From: 1st September, 2008 to: 1st September, 2009

commencing and expiring at the time of day expressed in the Original Policy/ies.

**Item 15 Premium:**

USD 650,000    Gross part of USD 975,000
USD 617,500    Net part of USD926,250 Net (100% Annual)





# ASPEN
ASPEN INSURANCE

**Item 16 Currency:**

United States Dollars

**Item 17 Notice of Loss to:**

Aon Risk Services Inc of Michigan
3000 Town Center,
Suite 3000,
Southfield,
Michigan 48075,
United States of America.

AND

Claims Manager,
Aspen Insurance UK Limited
Dublin Claims
Plantation Place
30 Fenchurch Street
London EC3M 3BD
dublinclaims@aspeninsurance.ie

### SEVERAL LIABILITY NOTICE

The subscribing reinsurers' obligations under contracts of reinsurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing reinsurers are not responsible for the subscription of any co-subscribing reinsurer who for any reason does not satisfy all or part of its obligations.

LSW 1001 (Reinsurance) 08/94

*Sean O'Rohan*
SENIOR UNDERWRITER.



**Reinsured:** General International Limited
**Original Insured:** General Motors Corporation
**Policy Number:** K0A065C08A0F
**Addendum No:** 1
**Effective Date:** September 1, 2008

---

### KNOWN OCCURRENCE OR CLAIM EXCLUSION
### RETROACTIVE ENDORSEMENT

It is acknowledged and agreed that notwithstanding the retroactive coverage afforded to the Original Insured under the Original Policy or any other provision of the Original Policy or this reinsurance, the retroactive cover afforded by this Reinsurance is limited to the dates set forth below. The reinsurers hereon shall have no liability with respect to any loss recoverable under the Original Policy by reason of its specified retroactive date or dates being earlier than those set out below.

Furthermore, it is hereby understood and agreed that there shall be no liability under this Reinsurance in respect of any Occurrence or Claim of which the Original Insured was aware prior to 1st September 2008, irrespective of whether or not the Original Insured was aware that such Occurrence or Claim was likely to involve the Original Policy and irrespective of whether the Original Policy has provided coverage to the Original Insured.

For the purposes of coverage under this Reinsurance, the Original Insured shall be deemed to have been aware of an Occurrence or Claim if any executive officer, manager or equivalent level employee of its corporate risk management, insurance or law department was aware of such Occurrence or Claim.

Notwithstanding anything contained herein to the contrary, it is understood and agreed that the Original Insured's failure or omission to disclose all known occurrences within the laundry list submitted to the Reinsured and held on file by the reinsurer for the Policy year expiring 1st September, 2008 shall not give rise to any right to avoid or rescind this Reinsurance provided such failure or omission is not intentional.

Retroactive Date:    1st January 1986, except in respect of SAAB Automobile AB where Retroactive Date is 1st March 1990.


ALL OTHER TERMS AND CONDITIONS OF THIS REINSURANCE REMAIN UNCHANGED.


**Aspen Insurance UK Limited**

**By:** _Sean O'Regan_

**Title:** Senior Underwriter

**Date** January 15, 2009



**Reinsured:** General International Limited
**Original Insured:** General Motors Corporation
**Policy Number:** K0A065C08A0F
**Addendum No:** 2
**Effective Date:** September 1, 2008

## PREMIUM PAYMENT CLAUSE

The Reinsured undertakes that premium will be paid in full to the Reinsurer within forty-five (45) days of inception of this Reinsurance (or, in respect of instalment premiums, when due).

If the premium due under this Reinsurance has not been so paid to the Reinsurer by the forty-fifth (45th) day from the inception of this Reinsurance (and, in respect of installment premiums, by the date they are due) the Reinsurer shall have the right to cancel this Reinsurance by notifying the Reinsured via the broker in writing. In the event of cancellation, premium is due to the Reinsurer on a pro rata basis for the period that the Reinsurer are on risk but the full premium shall be payable to the Reinsurer in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this Reinsurance.

It is agreed that the Reinsurer shall give not less than fifteen (15) days prior notice of cancellation to the Reinsured via the broker. If premium due is paid in full to the Reinsurer before the notice period expires, notice of cancellation shall automatically be revoked. If not, this Reinsurance shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Reinsurer (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all the Companies participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

ALL OTHER TERMS AND CONDITIONS OF THIS REINSURANCE REMAIN UNCHANGED.

**Aspen Insurance UK Limited**

**By:** Sean O'Regan

**Title:** Senior Underwriter

**Date** January 15, 2009



**Reinsured:** General International Limited
**Original Insured:** General Motors Corporation
**Policy Number:** K0A065C08A0F
**Addendum No:** 3
**Effective Date:** September 1, 2008

---

### MINIMUM EARNED PREMIUM ENDORSEMENT

It is understood and agreed that in the event of cancellation of this Policy by or at the direction of the Reinsured, the Reinsurer shall retain a Minimum Earned Premium of USD 227,500 this being 35% of USD 650,000.

It is further agreed that the provision regarding cancellation by the Reinsured is amended to read:

"If the Reinsured cancels this policy, earned premium will be computed in accordance with the customary pro-rata rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater."

All other terms, conditions and exclusions of the Policy remain unchanged.

**Aspen Insurance UK Limited**

**By:** Sean O'Regan

**Title:** Senior Underwriter

**Date** January 15, 2009

