1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


GENERAL MOTORS CORPORATION/MOTORS LIQUIDATION COMPANY F/K/A

GENERAL MOTORS CORP., et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                October 15, 2009

                2:03 PM




B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1    HEARING re Commencement of Chapter 11 Cases and First Day

2    Hearing

3

4    HEARING re Motion of Debtors for Entry of an Order Pursuant to

5    11 U.S.C. Section 105(a) Directing that Certain Orders in the

6    Chapter 11 Cases of Motors Liquidation Company, et al, f/k/a

7    General Motors Corp., et al. be Made Applicable to Subsequent

8    Debtors

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Sharona Shapiro

25

3

1

2  A P P E A R A N C E S :

3  WEIL, GOTSHAL & MANGES LLP

4      Attorneys for Debtor

5      767 Fifth Avenue

6      New York, NY 10153

7

8  BY:   RONIT J. BERKOVICH, ESQ.

9      STEPHEN KAROTKIN, ESQ.

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12      Attorneys for Official Committee of Unsecured Creditors

13      1177 Avenue of the Americas

14      New York, NY 10036

15

16  BY:   GREGORY GENNADY PLOTKO, ESQ.

17

18  UNITED STATES DEPARTMENT OF JUSTICE

19      United States Attorney's Office

20      Southern District of New York

21      86 Chambers Street

22      New York, NY 10007

23

24  BY:   MATTHEW L. SCHWARTZ, AUSA

25

4

1                    P R O C E E D I N G S

2        THE COURT:  Okay, GM.  Who's going to take the lead?

3        MS. BERKOVICH:  Good afternoon, Your Honor, Ronit

4   Berkovich, Weil Gotshal for the debtors, Motors Liquidation

5   Company, for Remediation and Liability Management Company and

6   Environmental Corporate Remediation Company.

7        On October 9th, the Remediation and Liability

8   Management Company, Inc. and Environmental Corporate

9   Remediation Company, Inc., that we refer to as REALM and

10  ENCORE, filed Chapter 11 petitions.  These are both direct

11  subsidiaries of the main debtor in the case, Motors Liquidation

12  Company.  These two entities were formed by General Motors in

13  the 1980s to manage General Motors environmental remediation

14  liabilities and they also own several properties that were

15  formerly owned by General Motors.

16       Motors Liquidation Company has been working with

17  environmental regulators, local communities and other

18  stakeholders to find a solution to its remediation obligations

19  and it believes that by filing Chapter 11 petitions for REALM

20  and ENCORE they can manage the process and more efficiently

21  deal with all of those entities' environmental remediation

22  obligations.

23       There's one motion on for today.  That's the motion to

24  have the orders that were entered in Motors Liquidation Chap --

25  certain relevant orders that were entered in the MLC Chapter 11

5

1    cases also apply in the REALM and ENCORE Chapter 11 cases,

2    including the joint administration order.

3         We did receive one objection to the motion.  That

4    objection was filed by the U.S. Attorney's Office.  And the

5    concern in that objection is that we would seek to have the bar

6    date order that was entered in the MLC Chapter 11 cases also

7    apply in the REALM and ENCORE Chapter 11 cases.  We did confer

8    subsequently with the U.S. Attorney's Office and we informed

9    them that it is not our intention to have the bar date order

10   from the MLC Chapter 11 cases apply in the REALM and ENCORE

11   Chapter 11 cases and that we would make that representation on

12   the record.  And we understand that based on that

13   representation that the U.S. Attorney's Office objection is

14   resolved.

15        THE COURT:  Um-hum.  Mr. Schwartz, you satisfied with

16   that?

17        MR. SCHWARTZ:  I am, thank you.

18        THE COURT:  Okay.

19        MS. BERKOVICH:  I would like to bring up, though, the

20   topic of the bar date for REALM and ENCORE.  We are planning on

21   filing a bar date motion for those two entities.  We have

22   discussed this with the U.S. Attorney's Office, the creditors'

23   committee and the U.S. Trustee's Office.

24        What we would like to do is follow the procedure

25   that's set forth in General Order M-350 that permits a debtor

6

1    to file a bar date motion without notice and seek to present it

2    to the Court and have it entered as long as there's a

3    representation that the form of order has been approved by the

4    secured lenders as well as the creditors' committee.

5        If we were to have the bar date motion entered this

6    week or early next week, we would be able to keep the same bar

7    date, November 30th, that exists in the MLC case.  We would

8    have that general bar date also apply in the REALM and ENCORE

9    Chapter 11 cases and still provide creditors in those cases

10    with at least thirty-five days' notice of the bar date, which

11    is consistent with the guidelines.

12        THE COURT:  Thirty-five days?

13        MS. BERKOVICH:  That would be the amount of time that

14    we would propose would be sufficient for those debtors.  There

15    are not very many creditors of those debtors.  We filed

16    schedules to those debtors around noon today, and we don't

17    believe there are any foreign creditors.

18        THE COURT:  Tell me more about the creditor base you

19    have and the nature of the debtors' business.  Are these

20    people -- are these debtors debtors that have created their own

21    mess and have their own environmental issues?

22        MS. BERKOVICH:  There's really two sets of liabilities

23    that these debtors would have.  The primary liabilities are on

24    the properties that they own.  These properties were

25    transferred from General Motors to REALM and ENCORE and --

7

1        THE COURT:  So whenever GM has a property that's an

2    environmental mess it passes it on to one of these debtors?

3        MS. BERKOVICH:  Not whenever; certain instances.

4    There are about -- I want to say about fourteen to twenty

5    parcels of property that REALM and ENCORE own.  Although

6    they're technically owned by REALM and ENCORE, for all

7    practical purposes General Motors has treated these properties

8    as owned by General Motors or MLC.  And indeed, on the initial

9    schedules that we filed for MLC, most of these properties were

10   listed as MLC properties and only when we subsequently became

11   clear from our review of the records that these properties do

12   not belong to MLC but belong to REALM and ENCORE, we amended

13   the MLC schedules, and they're now set forth in the REALM and

14   ENCORE schedules.  So the liabilities consist of these

15   particular properties but they also consist of contracts.

16   REALM and ENCORE essentially acted as the contracting party for

17   General Motors with respect to contracts with environmental

18   remediation companies.

19        THE COURT:  Um-hum.

20        MS. BERKOVICH:  So it was managed.  These entities

21   were really managing the environmental remediation process for

22   General Motors.  So the other set of creditors, in addition to

23   the environmental regulators, would be the contract

24   counterparties.

25        THE COURT:  If there were ongoing remediation efforts

8

1    with environmental companies, I would have thought that there

2    would be executory contracts with those companies under which

3    those companies would have obligations to these new debtors,

4    and presumably the debtors would have a duty to pay them.

5            MS. BERKOVICH:  That's correct that these are under

6    contract and the general contract principles would apply so

7    that the debtors have an obligation to perform going forward,

8    to pay to the extent they receive environmental remediation

9    services, and they have to make a decision whether to assume or

10   reject the contract.

11           THE COURT:  How are these debtors going to be able to

12   meet their obligations to those counterparties if they assume?

13           MS. BERKOVICH:  Under the existing DIP order, MLC is

14   permitted to and has historically always funded these debtors.

15   And that's how these debtors would satisfy their remediation

16   obligations.

17           We've discussed the filing of these entities with our

18   primary constituents, including the creditors' committee and

19   the U.S. Treasury, and they understand the way that these

20   debtors will be funded as well as the obligations and

21   liabilities of these debtors.

22           THE COURT:  Now, what's your game plan for who you're

23   going to provide notice to?

24           MS. BERKOVICH:  The notice of the bar date will go to

25   all known creditors of REALM and ENCORE as well as anyone who's

9

1   requested notice in the MLC Chapter 11 cases.

2         THE COURT:  I guess what I'm having trouble getting my

3   arms around is how you define "known creditors".  Do you

4   include, by way of example, the folks who live around the

5   properties?

6         MS. BERKOVICH:  Those were not on our intended notice

7   list.  We do not know of any environmental obligations that

8   these debtors owe to those neighbors.  We were also planning on

9   publishing the bar date notice in the Wall Street Journal and

10  the New York Times.

11        THE COURT:  If somebody lives next door to your

12  property you don't think that they have any basis for an

13  environmental claim against the debtor?

14        MS. BERKOVICH:  Well, one thing to keep in mind with

15  these debtors is again, no one knows who REALM and ENCORE are.

16  Essentially those properties have always been associated with

17  General Motors.  And so the very expensive notice that we

18  provided in the MLC Chapter 11 cases, which was actually

19  published today in newspapers throughout the country and the

20  world, would in my view serve as sufficient notice that there

21  is a bar date that relates to these properties.  And if we

22  publish the bar date notice for REALM and ENCORE in two widely

23  read publications, that is the New York Times and the Wall

24  Street Journal, that would be sufficient notice.  I'm not sure

25  how we would notice --

10

```
 1          THE COURT:  Ms. Berkovich, I fully understand that

 2    you're carrying the ball for partners who told you a game plan

 3    here.  But I've got to tell you that I have big time problems

 4    with only thirty-five days' notice of environmental claims.  I

 5    have problems with this kind of notice to people in the

 6    surrounding areas around the affected properties.  The notion

 7    of sending notice by the Wall Street Journal or some national

 8    method as compared and contrasted to the local newspaper in the

 9    town where the properties are listed, all of course apart from

10    anybody who's made claims, is a matter of great concern to me.

11    I need to think about this a little more, which I'll try to do

12    now.

13          Mr. Schwartz, you've got multiple hats in this.  Are

14    you still representing the EPA in addition to the buyers of Old

15    GM?

16          MR. SCHWARTZ:  I am.  And, you know, my client at the

17    end of the day is the United States of America.  But that

18    entails all of the governments' hats as creditors, so the

19    taxing authorities, the secured lenders, the environmental

20    regulators, contract counterparties, a number of different

21    roles.

22          THE COURT:  I assume the EPA is capable of taking care

23    of itself, but --

24          MR. SCHWARTZ:  Well, I --

25          THE COURT:  -- do you have -- do you sense my
```

11

1    uncertainty about whether we've gotten our arms around

2    potential environmental claims?  Environmental claims are some

3    of the most difficult to flesh out of all the claims we have.

4    And I certainly am not proposing today to decide what's an

5    admin claim and what's a prepetition claim and what's a

6    continuing duty claim that may not be dischargeable and what

7    can be answered to in the way of damages, but we have a

8    potentially more complex matter than I think we've dealt with

9    here.

10           MR. SCHWARTZ:  I do hear those concerns.  From the

11   perspective of the EPA and the other environmental regulators,

12   I think two things:  One, we've been working with these debtors

13   since obviously before they filed, since before the lead

14   debtors filed, to have an understanding not only of the

15   business but also of the legacy environmental liabilities.  I

16   do think that far before these debtors filed, the EPA has

17   been -- and the DOJ has been dealing with the environmental

18   liabilities of the REALM and ENCORE and were told, by the

19   debtors at least, that the sites that we've been talking about

20   under the rubric of GM include all of the liabilities of REALM

21   and ENCORE.  So I do believe that we've been having that

22   discussion, one.

23           Two, I want to make very clear that as far as the bar

24   date is concerned, the government still reserves all of the

25   rights that are set out --

12

1       THE COURT:  The government probably can take care of

2   itself, in any event it's got the benefit of the hundred-day --

3   eighty-day statutory provision.

4       MR. SCHWARTZ:  So what we're really talking about, I

5   guess, is potential tort claimants who had environmental type

6   claims or third party environmental claimants like claims for a

7   contribution.  I honestly don't have a handle on what those

8   claims look like with respect to these debtors.  I don't even

9   know, standing here today, which of the GM properties are REALM

10  and ENCORE as opposed to MLC properties; that's how intertwined

11  they've been.

12      THE COURT:  Well, I don't either.  And that's one of

13  the reasons why I don't want to commit judicial malpractice.

14  And I think that anybody who's read that John Grisham book

15  knows that people can foul the community around them and injure

16  the folks who live nearby.  Now, I'm sure the EPA is going to

17  bat for them, or at least will try, but I don't think that is

18  fully sufficient to deal with my concerns.

19      Do you have any further thoughts for me on this, Ms.

20  Berkovich, before I rule?

21      MS. BERKOVICH:  The only thing I would say is that, as

22  Mr. Schwartz says, the people in these communities don't know

23  REALM and don't know ENCORE, and if we issue a bar date notice

24  saying if you have a claim against REALM and ENCORE and we give

25  them --

13

1      THE COURT:  No, but it's been known to use d/b/a's in

2  the past and to tell somebody that the company is called REALM

3  and ENCORE but you may have thought that it was GM.

4      MS. BERKOVICH:  Right, well -- okay.  It's the -- I

5  think these parties would file claims against -- probably

6  against MLC, against Motors Liquidation Company, formerly known

7  as General Motors Corporation, if they believe they have claims

8  relating to that property.  And so --

9      THE COURT:  And what's your game plan if they file

10  against the wrong debtor?

11      MS. BERKOVICH:  Because the property happens to owned

12  by REALM and ENCORE and they file --

13      THE COURT:  Um-hum.

14      MS. BERKOVICH:  I think that we would have to deal

15  with them on a case by case situation, but I don't believe,

16  standing here today, that we would seek to deny them a claim

17  because it was technically filed against the wrong debtor based

18  on the --

19      THE COURT:  That would be wise, because if you argued

20  to the contrary you'd be running into a buzz saw up on this

21  bench.

22      MR. KAROTKIN:  Your Honor, can I interject?

23      THE COURT:  I think you better, Mr. Karotkin, because

24  somehow I think she's carrying your baggage on this, and I've

25  got concerns.

14

1      MR. KAROTKIN:  I think, as was explained, these

2  properties really were always known to be General Motors

3  properties.  And General Motors itself, or MLC as it is now

4  called, is not trying to get out of that liability.  It is not

5  taking the position that because those properties were

6  transferred to REALM and ENCORE that it, MLC, doesn't have the

7  environmental liability.  That is clearly not the case.  So in

8  terms of the buzz saw that you were alluding to, I don't think

9  anyone --

10      THE COURT:  Well, yeah, but that's probably the

11  easiest of all the things that I've got to worry about.

12      MR. KAROTKIN:  So to the extent that people believe

13  they have claims -- again, these properties are fairly well

14  known and notorious -- to the extent that people believe that

15  they have claims relating to environmental contamination

16  because they live near the property, they certainly will file

17  claims or ought to be filing claims in the General Motors MLC

18  Chapter 11 cases.  We will not take the position that that's

19  the wrong debtor and those claims will be addressed.

20      And as alluded to earlier, in connection, Your Honor,

21  with the budget that was formulated with respect to the MLC

22  wind-down budget, as you recall, there was a certain amount of

23  money allocated to the cleanup of the various sites --

24      THE COURT:  Well, those are postpetition dollars,

25  right?

15

1        MR. KAROTKIN:  Well, those are dollars allocated under

2   the DIP loan to address the sites.

3        THE COURT:  To fix the mess.

4        MR. KAROTKIN:  To fix the mess, correct.  And in

5   coming up with those numbers, each of these sites that are

6   owned by REALM and ENCORE were included.  So no one is trying

7   to take the position that we're trying to push these

8   liabilities off to these companies that have really no assets

9   or funding.  So all of this was taken into account in

10  formulating the wind-down budget.  All of this is being taken

11  into account in addressing with Mr. Schwartz's clients, with

12  the EPA, with the states, an ongoing effort now as to what is

13  going to be done to remediate these sites.

14       THE COURT:  I'm with you on all of that, Mr. Karotkin,

15  and it sounds to me that in cooperation with the government and

16  the creditors' committee and having set up that wind-down

17  budget -- and this is one of the reasons, if I recall, why the

18  creditors' committee wanted to increase the amount of money

19  they got as part of the wind-down process, you're going to do

20  everything you can to clean up the existing mess and to make

21  sure that these sites are as minimal problem going forward as

22  possible.

23       MR. KAROTKIN:  We are going --

24       THE COURT:  But what we're talking about on a bar date

25  is people filing prepetition claims for things that have

16

1   already been suffered, separate and apart from you taking the

2   steps you just described to clean up the mess going forward.

3             MR. KAROTKIN:  And again, Your Honor, those people

4   know those properties to be General Motors properties, and in

5   connection with the General Motors bar date, again, which was

6   noticed over the last couple of weeks, they will be presumably,

7   to the extent they believe they have claims, they will be

8   filing claims in the General Motors case.  And again, if they

9   want to file claims in the REALM and ENCORE they of course

10  could do that as well.  But we certainly would not take the

11  position, again, that they filed against the wrong debtor.

12            THE COURT:  All right.

13            MR. KAROTKIN:  That would not be fair.

14            THE COURT:  Now, how would the estate be prejudiced if

15  I ordered a sixty-day bar date notice period instead of the

16  thirty that you're asking for?

17            MR. KAROTKIN:  I think that's fine.

18            THE COURT:  How would the estate be prejudiced, other

19  than by a bunch of additional stamps, if I required you to send

20  notice to any of the neighbors who you can identify?

21            MR. KAROTKIN:  I don't know the answer to that

22  question.  I don't know -- I don't know enough about the

23  properties to have an idea of how many neighbors are involved.

24  For example, I know -- I think I've seen photographs, some

25  aerial photographs of some of them.  I know there's one up in

17

1      the state of New York, up in --

2              THE COURT:  If this is the one that the Indian tribe

3      complained about, I think it's a matter of substantial concern

4      to them.

5              MR. KAROTKIN:  Yes, and the Indian tribe is well aware

6      of the Chapter 11, and I am sure, Your Honor, well aware of the

7      fact that they would have to file a claim.

8              THE COURT:  And I think the New York AG cares about it

9      too --

10             MR. KAROTKIN:  And the New York AG --

11             THE COURT:  -- if I remember her argument.

12             MR. KAROTKIN:  Correct, and the New York AGG is in

13     communication with us all the time and is well aware of what is

14     going on up there, and obviously we'll be involved with their

15     views as what has to be done with respect to that site to

16     protect the area as well as people who live in the area.  I

17     just, frankly, don't know what's involved in going through the

18     neighborhoods and trying to find out who lives there and

19     whether that's really easily done or not done.

20             But I think, Your Honor, again, these are well known

21     General Motors sites, and the wide publication of the bar date

22     in -- it's fairly well known that General Motors filed a

23     Chapter 11 case and that to the extent people have claims they

24     ought to be filing claims.  And again, we will be addressing

25     these claims -- I'm sorry, we will be addressing these sites

18

1    with the various federal and state authorities.

2         THE COURT:  Okay.

3         MR. KAROTKIN:  But I'm happy -- I mean, I'm not going

4    to stand up here and tell Your Honor that a sixty day bar date

5    is going to make a difference.

6         THE COURT:  Okay.

7         MR. KAROTKIN:  It's certainly not.

8         THE COURT:  Any other thoughts from anyone before I

9    rule?

10        Okay, folks, here's what we're going to do.  First of

11   all, the debtors' motion, other than to the extent that it

12   purports to deal with the bar date, is approved.

13        On the bar date, it will be approved, subject to the

14   following modifications that will be deemed to be applicable to

15   these two new debtors.  First, it will provide, in baby talk,

16   for the extension that was agreed upon by the debtors and the

17   U.S. Attorney acting on behalf of the EPA and any other

18   environmental authorities for whom it acts.

19        Mr. Schwartz, when you negotiated that deal, were you

20   also acting for state governmental authorities that might have

21   those same 180 day rights?

22        MR. SCHWARTZ:  I'm not sure exactly what you're

23   characterizing as "the deal" as I --

24        THE COURT:  Well, I thought you said you would

25   withdraw your objection if the debtors made clear that you had

19

1    180 days.

2          MR. SCHWARTZ:  No, I think -- yeah, that's not a deal,

3    that's the statute, I guess.

4          THE COURT:  That's the debtors acknowledging what the

5    statute requires.

6          MR. SCHWARTZ:  That's right.  And I don't speak on

7    behalf of any other governmental units, state or municipal --

8          THE COURT:  Well, it seems to me, by way of example,

9    that if the state of New York wishes to enforce that statute,

10   they have no less rights to do it than the federal EPA does.

11         MR. SCHWARTZ:  That's right, and I would think that

12   the 180 days by statute needs to apply to all governmental

13   units.

14         THE COURT:  Yeah, so do I.

15         MR. SCHWARTZ:  And --

16         THE COURT:  Am I missing something, Mr. Karotkin?

17         MR. KAROTKIN:  No, sir.

18         MR. SCHWARTZ:  I confess --

19         MR. KAROTKIN:  If I could just clarify something.  I

20   think what we said at the outset, and -- or maybe I

21   misunderstood, but we were not asking you today to make a

22   ruling that the existing bar date order apply to these cases.

23   We were merely --

24         THE COURT:  Wait, if you're not doing that then why

25   did the government feel that it needed to object?

20

1          MR. KAROTKIN:  Because originally we were -- I guess

2     the implication was we were trying to do that and therefore the

3     government objected, and I think as we advised your chambers

4     earlier today, we said we had resolved it with Mr. Schwartz in

5     saying that we are not asking you to approve any relief today

6     with respect to a bar date.  And then Ms. Berkovich was just

7     advising you that the manner in which we would like to proceed

8     would be in accordance with the local rule where we would

9     submit an order, hopefully consented to by both the committee

10    and the secured lender as to how a separate bar date order for

11    these two entities would work.

12          THE COURT:  I see.  Well --

13          MR. KAROTKIN:  And to the extent --

14          THE COURT:  You can do that, but let me tell you what

15    that order is going to have in it if it's going to pass muster

16    by me --

17          MR. KAROTKIN:  Okay.

18          THE COURT:  -- and get signed by me.  First of all,

19    it's going to give everybody sixty days rather than the thirty

20    that was originally mentioned, even if that means a later bar

21    date for these two debtors than for the remainder of the

22    debtors.

23          Secondly, it's going to say, in baby talk, something

24    like d/b/a as General Motors or words to that effect.  And make

25    it clear in baby talk that some of these properties may have

21

1    had a GM name of them, and if you think you have a claim with

2    respect to these properties you should file it.

3         Third, you don't have to waste your money on

4    publication in the Wall Street Journal or a national paper but

5    you will be required to print in the local newspaper for each

6    of the towns in which any of these properties is located.  And

7    to the extent you know the addresses of neighbors, you've got

8    to give actual notice and you can't rely on published notice.

9         And you've got to provide in baby talk in the

10   subsequent bar date order that any claims -- in essence to

11   paper what you just told me, which is fine, but you've got to

12   paper it -- that claims that were previously filed against GM

13   which turn out to be more appropriately asserted against these

14   two new debtors will be deemed to be asserted against the two

15   new debtors without prejudice to anybody's rights, if it

16   matters, to contend that the original debtors are liable and

17   your right to oppose that, or the creditors' committee's right

18   to oppose that if you think that's not appropriate.

19        So with those clarifications, your motion's granted.

20        If any governmental authority wants the order to

21   provide explicitly for its 180 day rights, you've got to put

22   that in.  As Mr. Schwartz properly observed, it's part of the

23   statute, so it's there whether or not it's in my order, but I

24   want you to comply with it.

25        Okay.  Do we have anything else?

22

1          MR. KAROTKIN:  No, sir.

2          THE COURT:  All right.  Have a good day.

3          MR. KAROTKIN:  Thank you.

4          THE COURT:  We're adjourned.

5     (Proceedings concluded at 2:29 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

I N D E X

R U L I N G S

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Debtors' motion is approved | 21 | 19 |
| subject to clarifications | | |
| made on the record | | |

24

1

2                        C E R T I F I C A T I O N

3

4     I, Sharona Shapiro, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7     _____

8     Sharona Shapiro

9     AAERT Certified Electronic Transcriber (CET**D-492)

10

11    Veritext LLC

12    200 Old Country Road

13    Suite 580

14    Mineola, NY 11501

15

16    Date: October 19, 2009

17

18

19

20

21

22

23

24

25