**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* **f/k/a General Motors Corp.,** *et al.*, | Case No. **09-50026 (REG)** |
| | (Jointly Administered) |
| Debtors. | Hon. Robert E. Gerber |

**STIPULATION AND AGREED ORDER BETWEEN DEBTORS AND CISCO SYSTEMS CAPITAL CORPORATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF PERSONAL PROPERTY AND CURE AMOUNTS RELATED THERETO**

Motors Liquidation Company (f/k/a General Motors Corporation) and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**GM**"), General Motors Company ("**New GM**") and Cisco Systems Capital Corporation ("**Cisco Capital**" and together with the Debtors and New GM, the "**Parties**"), hereby enter into this Stipulation and Agreed Order (the "**Stipulated Order**") and stipulate as follows:

**RECITALS**

A. On June 1, 2009 (the "**Commencement Date**"), the Debtors commenced voluntary cases under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") (collectively, the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On or about June 3, 2009, an Official Committee of Unsecured Creditors was appointed in the Chapter 11 Cases.

1

B.  On June 1, 2009, the Debtors also filed a motion requesting joint administration of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. Pursuant to this Court's Order in respect thereto, the Chapter 11 Cases are now being jointly administered.

C.  Prior to the Commencement Date of the Chapter 11 Cases, Cisco Capital entered into various equipment leases and related executory contracts (collectively, the "**Cisco Contracts**") as described more particularity on Debtors' Contract Notice Website and listed on Exhibit "A" attached hereto and incorporated by reference as if fully set forth herein, including that certain *Master Lease Agreement Between Cisco Systems Capital Corporation and General Motors Corporation*, effective as of February 28, 2006, *No. 5617* and all equipment schedules thereto (each an "**Equipment Schedule**" and, collectively, "**Equipment Schedules**") (hereinafter collectively referred to as "**MLA No. 5617**"). Pursuant to the Cisco Contracts, Cisco Capital leased certain equipment (the "**Leased Equipment**") to the Debtors and, in turn, the Debtors became obligated to pay certain monthly lease payments to Cisco Capital.

D.  On June 1, 2009, the Debtors filed their Sale and Assumption Motion[1] and sought entry of an order authorizing and approving, among other things, (i) the sale of the Debtors' assets pursuant to the proposed Master Sale and Purchase Agreement and related Agreements (the "**MPA**") among the Debtors and NGMCO, Inc. (n/k/a

---

[1] *See* the *Debtor's Motion Pursuant To 11 U.S.C. §§ 105, 363, And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006 To (I) Approve (A) The Sale Pursuant To Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser; Free and Clear of Liens, Claims, Encumbrances And Other Interests; (B) The Assumption And Assignment Of Certain Executory Contracts and Unexpired Leases; And (C) Other Relief; And (II) Schedule Sale Approval Hearing* (the "**Sale & Assumption Motion**") [Dkt. No. 92].

2

General Motors Company), free and clear of liens, claims, encumbrances, and other interests (the "**363 Transaction**") and (ii) the assumption and assignment of certain executory contracts and unexpired leases by the Debtors and their assignment to New GM.

E.    On June 2, 2009, this Court entered the Sale and Assumption Procedures Order[2], which sets forth, in pertinent part, certain procedures (the "**Assumption and Assignment Procedures**") that govern the assumption and assignment of executory contracts to New GM.  Pursuant thereto, the Debtors created a schedule of executory contracts and leases that New GM has designated as "Assumable Executory Contracts" and a secure website (the "**Contract Notice Website**") that lists the Assumable Executory Contracts.  The Debtors, after the designation of certain Cisco Contracts as Assumable Executory Contracts, served their *Notice Of (I) Debtors' Intent To Assume And Assign Certain Executory Contracts, Unexpired Leases Of Personal Property, And (II) Cure Amounts Related Thereto* (the "**Notice of Intent**") on Cisco Capital.

F.    On June 15, 2009, Cisco Capital filed its *Objection And Reservation Of Rights Of Cisco Systems Capital Corp. To Notice Of (I) Debtors' Intent To Assume And Assign Certain Executory Contracts, Unexpired Leases Of Personal Property, And (II) Cure Amounts Related Thereto* (the "**Objection and Reservation of Rights**") to (a) the proposed monetary cure amount that the Debtor contends it must pay to Cisco Capital as a

---

[2] *See Order Pursuant To 11 U.S.C. §§ 105, 363, And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006 (I) Approving Procedures For Sale Of Debtors' Assets Pursuant To Master Sale And Purchase Agreement With Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline And Sale Hearing Date; (III) Establishing Assumption And Assignment Procedures; And (IV) Fixing Notice Procedures And Approving Form Of Notice* (the "**Sale & Assumption Procedure Order**") [Dkt. No. 274]**.**  Unless specifically provided otherwise in the Stipulation, all terms shall have the meaning set forth in the Sale and Assumption Order.

3

condition to the assumption of the Cisco Contracts and (b) the assignment of these executory contracts to any third party (whether or not such third party is New GM). Cisco Capital, by the Objection and Reservation of Rights, contends that the monetary cure amount that must be paid in connection with the assumption and assignment of the Cisco Contracts (a) is, as of June 1, 2009, not less than $271,358.03, and (b) that such amount may be increased (i) in the event that the Debtors identify any additional executory contracts that it intends to assume and assign or (ii) after Cisco Capital completes its final review of its books and records.

      G.      On July 10, 2009, the 363 Transaction closed.

      H.      Pursuant to the Sale and Assumption Procedures Order, the Parties have entered into negotiations concerning various issues related to the assumption and assignment of the Cisco Contracts, the payment of monetary cure amounts related to the Cisco Contracts, and the possibility of the subsequent closing or resizing of certain facilities by New GM. This Stipulated Order evidences and memorializes the Parties' resolution of the issues set forth herein.

## **STIPULATION**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:

      1.      <u>Retained Jurisdiction</u>. The Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulated Order.

      2.      <u>Court Approval Required</u>. This Stipulated Order shall be effective only upon (a) entry of an order of the Court approving this Stipulated Order and (b) payment of the monetary cure amounts as set forth hereinafter. If this Stipulated Order is not approved by

4

the Court, this Stipulated Order shall be deemed null and void, and shall not be referred to or used for any purpose by any of the Parties in either the Chapter 11 Cases or in any other forum. New GM shall provide the Debtors with prompt notice of the effective date of this Stipulated Order.

3.   <u>Assumption and Assignment of the Cisco Contracts</u>.  The Debtors agree to assume all Cisco Contracts (as identified on the Contract Notice Website) and to assign all such executory contracts and unexpired leases to New GM pursuant to section 365 of the Bankruptcy Code, and Cisco Capital consents to such assumption and assignment upon satisfaction of the terms and conditions of this Stipulated Order including, without limitation, payment of the Cisco Capital Cure Amount (defined below) as set forth herein.

4.   <u>Payment of Cisco Capital Cure Amount</u>.  Not later than five (5) business days after entry of the Stipulated Order, to the extent not already paid in the ordinary course of business by the Debtors or otherwise, New GM shall pay US **$379,236.00** (the "**Cisco Capital Cure Amount**") in satisfaction of the monetary cure amount due as of July 15, 2009.  Failure to make timely payment, in full, of the Cisco Capital Cure Amount shall be a material breach of this Stipulated Order.

5.   <u>Rights and Duties Subsequent to Assumption And Assignment</u>.  From and after the effective date of the assumption of the Cisco Contracts and assignment to New GM (the "**Assumption Date**"), (i) New GM shall be responsible for all obligations and duties thereunder, including payment of all monies and charges due pursuant to the Cisco Contracts (according to the terms of such contracts), (ii) the Debtors will have no further obligations under the Cisco Contracts and (iii) Cisco will have no remaining claims

5

against the Debtors regarding the Cisco Contracts in the Chapter 11 Cases. Except as specifically modified by this Stipulated Order, Cisco Capital's and New GM's respective rights and obligations shall continue from and after the Assumption Date according to the terms of the Cisco Contracts.

      6.     <u>Return of Equipment And Termination of Schedules</u>.

          a.     The Parties acknowledge that the Debtors and New GM have determined that, after the Cisco Contracts are assumed and assigned, certain facilities may be closed or resized (each a "**Modified Facility**" and together the "**Modified Facilities**") such that New GM may not need certain of the Leased Equipment. The Debtors and New GM have identified the Modified Facilities and created a list identifying the Modified Facilities and, to the extent known, the projected facility closing date (the "**Modified Facilities List**"), which is attached hereto as Exhibit "B"**.**

          b.     Cisco Capital acknowledges that New GM may, from time to time and in its reasonable business judgment, amend the Modified Facilities List to add up to two additional facilities to the Modified Facilities List, and to the extent Exhibit "B" does not list all Equipment Schedules and Cisco Contracts associated with the additional modified facilities, this Stipulated Order applies to all Equipment Schedules and Cisco Contracts associated with the additional modified facilities as if they were included in the Modified Facilities List.

          c.     Subject to the terms set forth herein, Cisco Capital acknowledges that New GM, from time to time and in its reasonable business judgment, may determine that a Modified Facility listed on Exhibit "B" shall not be closed or

6

resized and, instead, that a facility not listed on Exhibit "B" should be closed or resized instead of the identified Modified Facility.  In such an event, New GM may amend the Modified Facilities List to remove a previously identified Modified Facility from Exhibit "B" and substitute a closing or resizing facility not previously listed on Exhibit "B" (a "**Substituted Modified Facility**" and, collectively, the "**Substituted Modified Facilities**") in place of the previously identified Modified Facility provided that (i) the Leased Equipment to be returned by New GM with respect to the Substituted Modified Facility has a reasonably equivalent value to the Leased Equipment that would have been returned with respect to Modified Facility being substituted and (ii) to the extent Exhibit "B" does not list all Equipment Schedules and Cisco Contracts associated with the Additional Modified Facilities, this Stipulated Order applies to all Equipment Schedules and Cisco Contracts associated with the Additional Modified Facilities as if they were included in the Modified Facilities List.

7. Partial Return of Equipment.

(a) Upon closing or resizing a Modified Facility, New GM shall have the right, at any time, to return less than all of the Leased Equipment (the "**Returned Equipment**") located at the applicable Modified Facility which is subject to an Equipment Schedule, and, New GM shall have no further liability or obligations to Cisco Capital after providing the Returned Equipment Termination Notice (defined below), and Cisco Capital waives and releases all claims under the Cisco Contracts, Equipment Schedules, or otherwise, for (i) the periodic rental amounts that would otherwise accrue thereafter with respect to the Returned

Equipment and (ii) any early termination fee or similar charge that otherwise would be applicable pursuant to the specific Equipment Schedule. For clarity, provided New GM returns the Returned Equipment to Cisco Capital within the sixty (60) days after providing the Returned Equipment Termination Notice, New GM shall not be required to make rent payments for the Returned Equipment during such sixty (60) day period (the "**Returned Equipment Grace Period**").

(b) New GM must, however, (x) provide Cisco Capital thirty (30) days written notice via email, facsimile, or mail, identifying the Modified Facility and the specific Equipment Schedule under which the Returned Equipment has been leased (the "**Returned Equipment Termination Notice**") and (b) at its own cost and expense and according to Cisco Capital's commercially reasonable directions, deliver the Returned Equipment to Cisco Capital within sixty (60) days after transmittal of the Returned Equipment Termination Notice. Returned Equipment shall be deemed returned to Cisco Capital upon GM's delivery of the equipment to Cisco Capital.

(c) If New GM fails to (i) satisfy the conditions set forth in paragraph 7(b) above or (ii) does not provide the Returned Equipment Termination Notice for a given Modified Facility to CISCO Capital on or before December 31, 2011, Cisco shall retain its claim for damages against New GM for the early termination of the applicable Equipment Schedule and rent during the Returned Equipment Grace Period and Cisco Capital may exercise its rights with regard to such claim as permitted by the applicable Cisco Contract, Equipment Schedule, or applicable law.

8. <u>Termination Of Assigned Contracts And Leases</u>.

(a) If New GM closes a Modified Facility, it shall have the right to return all Leased Equipment located at the applicable Modified Facility which is subject to an Equipment Schedule (the "**Terminated Equipment**"), and, New GM shall have no further liability or obligation to Cisco Capital after providing the Termination Notice (defined below), and Cisco Capital waives and releases all claims under the Cisco Contracts, Equipment Schedules, or otherwise, for (i) the periodic rental amounts that would otherwise accrue thereafter with respect to the Terminated Equipment and (ii) any early termination fee or similar charge that otherwise would applicable pursuant to the applicable Equipment Schedules.  For clarity, provided New GM returns the Terminated Equipment to Cisco Capital within the sixty (60) days after providing the Termination Notice, New GM shall not be required to make rent payments for the Terminated Equipment during such sixty (60) day period (the "**Terminated Equipment Grace Period**").

(b) New GM must, however, (x) provide Cisco Capital thirty (30) days written notice via email, facsimile, or mail identifying the Modified Facility and the specific Equipment Schedules under which the Terminated Equipment has been leased (the "**Termination Notice**") and (b) at its own cost and expense and according to Cisco Capital's commercially reasonable directions, deliver the Terminated Equipment to Cisco Capital within sixty (60) days after transmittal of the Termination Notice.  New GM shall return not less than 90% of all Terminated Equipment listed on the Equipment Schedule(s) being terminated.

(c) If New GM (i) fails to satisfy the conditions set forth in paragraph 8(b) above or (ii) does not provide the Termination Notice for a given Modified Facility to CISCO Capital on or before December 31, 2011, Cisco Capital shall retain its claim for damages against New GM for the early termination of the applicable Equipment Schedule(s) and rent during the Terminated Equipment Grace Period and Cisco Capital may exercise its rights with regard to such claim as permitted by the applicable Cisco Contract, Equipment Schedule, or applicable law; provided, however, that to the extent Cisco Capital's claim relates to New GM's failure to return 90% of the Terminated Equipment due under a given Equipment Schedule (the "**Required Equipment**"), Cisco Capital's claim shall be limited to the amounts owing for the unreturned Required Equipment.  For example, if New GM returns 75% of the Terminated Equipment covered by an Equipment Schedule, Cisco Capital's claim shall be limited to a claim for amounts owing with respect to the 15% of the Terminated Equipment not returned by New GM. Terminated Equipment shall be deemed returned to Cisco Capital upon New GM's delivery of the equipment to Cisco Capital.

9. <u>Withdrawal of Objection and Reservation of Rights</u>.  Upon entry of the Stipulated Order, the Objection and Reservation of Rights will be deemed withdrawn with prejudice and Cisco Capital will takes all necessary steps to remove the Objection and Reservation of Rights from the Court's docket.

10. <u>No Violation of Any Court Order Or Third Party Consents Required</u>.  The Debtors warrant that neither the Parties' stipulation, the Stipulated Order nor any order related to the Stipulated Order violates any court order pertaining to, or provision of, any debtor-in-possession financing stipulations or orders entered in these Chapter 11 Cases,

10

and that the consent of a non-debtor person or party is not required for the Debtors to perform the terms and conditions of the Stipulated Order.

      11.       <u>Miscellaneous</u>.

      (a)       <u>Notices</u>. From and after the Assumption Date, any notice permitted or required to be sent pursuant to any of the Cisco Contracts shall be sent to New GM as provided in such contract.

      (b)       <u>Entire Stipulation</u>. This Stipulated Order sets forth the entire understanding of the Parties hereto and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court.

      (c)       <u>Execution of Stipulation</u>. This Stipulated Order may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Stipulated Order may be executed by facsimile or PDF signatures, and such facsimile or PDF signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or mail, although it is the Parties' intention to deliver original signatures after delivery of facsimile signatures.

      (d)       <u>Independent Investigation</u>. Each Party independently has verified all facts and/or circumstances that each Party has determined is necessary to their decision to enter into this Stipulated Order, and neither Party has relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or circumstances.

(e) <u>Binding on Successors and Assigns</u>.  This Stipulated Order shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, agents, and attorneys of the Parties to the extent provided by law, including without limitation, any subsequently appointed trustee.

(f) <u>Waiver, Modification and Amendment</u>.  The Parties may not waive any provision of this Stipulated Order except by a written agreement that all of the Parties have signed.  A waiver of any provision of this Stipulated Order will not constitute a waiver of any other provision.  The Parties may modify or amend this Stipulated Order only by a written agreement that all of the Parties have signed.

(g) <u>Titles and Captions</u>.  The Parties have inserted the paragraph and section titles in this Stipulated Order only as a matter of convenience and for reference, and the paragraph titles in no way define, limit, extend, or describe the scope of this Stipulated Order or the intent of the Parties in including any particular provision in this Stipulated Order.

(h) <u>Execution of Additional Documents</u>.  The Parties agree to execute and deliver any and all additional papers, documents, instruments, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the Parties.

(i) <u>No Admissions.</u>  Nothing herein shall be construed as an admission by any Party of any liability of any kind to any other Party.  All recitations referencing documents are for the purposes of summarizing only and the documents speak for themselves.  In the event of an ambiguity in or controversy or claim arising out of, or

relating to, the interpretation, application, or enforcement of this Stipulated Order, the Parties agree that no one will resolve any ambiguity in, or controversy or claim arising out of, or relating to, interpretation, application, or enforcement of, this Stipulated Order by any rule providing for interpretation against the draftsperson.

Dated: September 29, 2009

| Cisco Systems Capital Corporation | Motors Liquidation Company (f/k/a General Motors Corporation) |
|---|---|
| Wayne Super | David Head |
| By: /s/ Wayne Super | By: /s/ David Head |
| Its: Chief Risk Officer | Its: Vice President |
| General Motors Company | |
| By: /s/ Susanna Wesser | |
| Its: /s/ Executive Director | |

So Ordered this **_23rd_** day of October, 2009

***s/ Robert E. Gerber***
United States Bankruptcy Judge