


**COURT OF COMMON PLEAS
PORTAGE COUNTY, OHIO**

FILED
PORTAGE COUNTY
COMMON PLEAS COURT

2009 SEP 21 AM 9:08

| | |
|---|---|
| RICHARD TURK, et al | CASE NO. 2007 CV 1356 |
| Plaintiffs | JUDGE JOHN A. ENLOW |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY and MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| SERPENTINI CHEVROLET, INC., et al | |
| Defendants | |

Clarification: Plaintiffs do NOT seek to lift the stay ordered by the U.S. Bankruptcy Court of the Southern District of New York for claims against General Motors Corporation (Old GM). Plaintiffs ask this Court to:

- Lift the stay which this Court ordered on claims against Serpentini Chevrolet, Inc.

- Grant Plaintiffs leave to Amend the Complaint to add the New GM (General Motors Company, fka NGMCO, Inc.,) and to assert only a claim under the express written 3-year/36,000 mile warranty, an obligation which was expressly assumed by New GM in the purchase.

- Dismiss Old GM and all claims not assumed by New GM.

## ARGUMENT

1. **The Court should lift the stay as to all claims except those against General Motors Corporation.**

    a. **The stay of claims against Serpentini was ordered by this Court; This Court can lift that stay.**

   As pointed out by counsel for General Motors Corporation, n/k/a Motors Liquidation Company,[1] the automatic stay due to bankruptcy does not apply to Defendant Serpentini Chevrolet, Inc. Serpentini implicitly concedes this, by arguing only on behalf of General Motors.

---

[1] Letter dated 9/14/09 from Shana O. See to Hon. Judge John A. Enlow. (The letter was received 9/17/09 by undersigned counsel.)

The automatic bankruptcy stay is to protect the petitioner in bankruptcy from collection activities outside the proceedings of the Bankruptcy Court. 11 U.S.C. § 362.[2] Ohio and Federal Courts hold that a bankruptcy stay applies <u>only to the petitioner</u> in bankruptcy. See, *Parry v. Mohawk Motors of Michigan, Inc.*, (6th Cir. 2000), 236 F.3d 299, 314-315, rehearing denied, certiorari denied 533 U.S. 951; *Patton v. Bearden* (6th Cir.1993), 8 F.3d 343, 349. Ohio Courts have repeatedly held that a civil case should proceed against solvent defendants notwithstanding an automatic stay imposed by the bankruptcy filing of one or more defendants. See, for example, *Cardinal Federal S. & L. Assn. v. Flugum* (9th Dist. 1983), 10 Ohio App.3d 243, 245; *Ayad v. Russo*, (8th Dist.) 2008-Ohio-5881, 2008 WL 4885058, ¶1; *Waco Scaffolding & Equipment Co. v. Schaffer and Sons* (5th Dist.), 2003-Ohio-6775, 2003 WL 22949006, ¶¶20-22; *Carpet Gallery of Akron, Inc. v. Bloniarz* (9th Dist.), 2002-Ohio-3737, 2002 WL 1625863, ¶¶7-10. The fact that all of the claims arise out of the same subject matter does not constitute "unusual circumstances" to prevent the claims from proceeding against the non-bankrupt defendant. *Carpet Gallery of Akron*, ¶10. Nor does a contractual agency relationship between Defendants. *Cardinal Federal S. & L. Assn.* 10 Ohio App.3d at 245.

To the extent that this Court chose to stay all proceedings, beyond the claims against the petitioner in bankruptcy, this Court can lift that stay.

### b.    This Court should lift the stay on claims against Serpentini.

The primary conduct in this case was that of Serpentini Chevrolet. It was Serpentini which took back the 2004 Aveo from its previous owner after multiple warranty problems, and then immediately returned the problem vehicle to commerce. It was Serpentini and its employees and agents who misrepresented and concealed the condition and history of the vehicle. It was

---

[2]Section 362(a), Title 11, U.S. Code provides in part:
Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of-
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding **against the debtor** that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

2

Serpentini and its employees and agents who replaced the engine in a manner which caused the vehicle to burst into flames. Serpentini's liability is not dependent on General Motors.

Plaintiffs ask the Court to lift the stay against Serpentini.

2.  **This Court should allow Plaintiffs to amend the complaint to add New GM and dismiss claims against Old GM.**

   a.  **Plaintiffs wishes to dismiss all claims not assumed by New GM.**

Plaintiffs recognize that all claims not assumed by New GM must be pursued, if at all, in the U.S. Bankruptcy Court of the Southern District of New York. Plaintiffs choose not to pursue those claims.

   b.  **Plaintiffs seek leave to amend the Complaint to add the New GM and assert a claim under the express written warranty.**

The proposed Second Amended Complaint is submitted with this Reply brief.

The Sale Order and the Master Sale and Purchase Agreement are clear: New GM assumed claims under the "express written warranties" (as well as "lemon law" claims) for new and used GM cars sold before or after the sale.[3] Before the bankruptcy, Old GM agreed that the Chevy Aveo purchased by Jeanette and Richard Turk was still subject to the express written new vehicle warranty: "When purchasing the vehicle, plaintiffs were provided with the remainder of General Motors' 3-year/36,000 mile New Vehicle Limited Warranty." (General Motors Motion for Summary Judgment, 2/10/09, at 8). After the sale, the new General Motors Company[4] (New GM) has assumed all liability under this express written warranty.

Plaintiffs understand that New GM will contest whether the facts of this case are sufficient to impose liability under the express warranty. New GM has the right to assert its defenses – in this court.

---

[3] *In Re General Motors Corporation,* Case No. 09-50026 (REG), U.S. Bankruptcy Court, S.D. N.Y. Docket No. 2968 is the Sale Order and the Amended and Restated Master Sale and Purchase Agreement, available at http://docs.motorsliquidationdocket.com/pdflib/2968_50026.pdf. The relevant sections [Sale Order at ¶56 and MSPA, Section 2.3 (a)] are attached as Exhibit 1.

[4] Although the named purchaser was NGMCO, Inc., the name was immediately changed to General Motors Company. See Ohio Certificate of Amendment, Exhibit 2.

3

## CONCLUSION

Plaintiffs ask this Court to act only within its jurisdiction. Plaintiffs ask the Court to dismiss the claims which are subject to the petition in bankruptcy and restore the remainder of the case to the active docket. Plaintiffs further ask the Court to grant leave to file the Second Amended Complaint to assert an express warranty claim against General Motors Company, which assumed liability for such claims when it purchased the assets of the old General Motors Corporation.

Respectfully submitted,

*/s/ Nancy Grim*

LAURA McDOWALL (#0038072)
McDowall Co., LPA
503 Canton Road P.O. Box 6600
Akron, OH 44312
PH: 330.784.9999
FX: 330.784.9994
LM@YoungMcDowall.com

NANCY GRIM (0014376)
237 East Main Street
Kent, OH 44240-2526
330-678-6595 / Fax 330-678-6517
nancy.grim@nancygrimlaw.net
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

This document was served by U.S. mail this 21st day of September 2009 to:

Harry A. Tipping
Stark & Knoll Co., LPA
3475 Ridgewood Rd.
Akron, OH 44333

Daniel R. Mordarski
5 East Long Street, Suite 1100
Columbus, OH 43215

Shana O. See
Carpenter & Lipps LLP
280 Plaza, Suite 1300
180 N. High St.
Columbus, OH 43215

*/s/ Nancy Grim*

NANCY GRIM

4

*Exhibit 1*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
GENERAL MOTORS CORP., *et al.*,             :    09-50026 (REG)
                                            :
                    Debtors.                :    (Jointly Administered)
                                            :
-----------------------------------------------------------x

ORDER (I) AUTHORIZING SALE OF ASSETS PURSUANT
TO AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT
WITH NGMCO, INC., A U.S. TREASURY-SPONSORED PURCHASER;
(II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION
WITH THE SALE; AND (III) GRANTING RELATED RELIEF

Upon the motion, dated June 1, 2009 (the "**Motion**"), of General Motors Corporation ("**GM**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105, 363, and 365 of title 11, United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for, among other things, entry of an order authorizing and approving (A) that certain Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, by and among GM and its Debtor subsidiaries (collectively, the "**Sellers**") and NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (the "**Purchaser**"), a purchaser sponsored by the United States Department of the Treasury (the "**U.S. Treasury**"), together with all related documents and agreements as well as all exhibits, schedules, and addenda thereto (as amended, the "**MPA**"), a copy of which is annexed hereto as Exhibit "A" (excluding the exhibits and schedules thereto); (B) the sale of the Purchased Assets[1] to the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion or the MPA.

54. Any amounts that become payable by the Sellers to the Purchaser pursuant to the MPA (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under Section 8.2(b) of the MPA) shall (a) constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by the Debtors in the time and manner provided for in the MPA without further Court order.

55. The transactions contemplated by the MPA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the 363 Transaction shall not affect the validity of the 363 Transaction (including the assumption and assignment of any of the Assumable Executory Contracts and the UAW Collective Bargaining Agreement), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and the Purchaser and its agents, officials, personnel, representatives, and advisors are entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

56. The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials. Notwithstanding the foregoing, the Purchaser has assumed the

Sellers' obligations under state "lemon law" statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes.

57. Subject to further Court order and consistent with the terms of the MPA and the Transition Services Agreement, the Debtors and the Purchaser are authorized to, and shall, take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan for the Debtors, (a) the books, records, and any other documentation, including tapes or other audio or digital recordings and data in, or retrievable from, computers or servers relating to or reflecting the records held by the Debtors or their affiliates relating to the Debtors' business, and (b) the cash management system maintained by the Debtors prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtors' estates.

58. The Debtors are authorized to take any and all actions that are contemplated by or in furtherance of the MPA, including transferring assets between subsidiaries and transferring direct and indirect subsidiaries between entities in the corporate structure, with the consent of the Purchaser.

59. Upon the Closing, the Purchaser shall assume all liabilities of the Debtors arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Debtor, except for workers' compensation claims against the Debtors with respect to Employees residing in or employed in, as the case may be as defined by applicable law, the states of Alabama, Georgia, New Jersey, and Oklahoma.

60. During the week after Closing, the Purchaser shall send an e-mail to the Debtors' customers for whom the Debtors have usable e-mail addresses in their database, which will provide information about the Purchaser and procedures for consumers to opt out of being

**EXECUTION COPY**

# AMENDED AND RESTATED

# MASTER SALE AND PURCHASE AGREEMENT

# BY AND AMONG

# GENERAL MOTORS CORPORATION,

# SATURN LLC,

# SATURN DISTRIBUTION CORPORATION

# AND

# CHEVROLET-SATURN OF HARLEM, INC.,

*as Sellers*

# AND

# NGMCO, INC.,

*as Purchaser*

# DATED AS OF

# JUNE 26, 2009

(xii)    all credits, deferred charges, prepaid expenses, deposits and advances, warranties, rights, guarantees, surety bonds, letters of credit, trust arrangements and other similar financial arrangements, in each case, relating exclusively to the Excluded Assets or Retained Liabilities;

(xiii)    all insurance policies identified on Section 2.2(b)(xiii) of the Sellers' Disclosure Schedule and the rights to proceeds thereof (collectively, the "Excluded Insurance Policies"), other than any rights to proceeds to the extent such proceeds relate to any Purchased Asset or Assumed Liability;

(xiv)    all Permits, to the extent that they relate exclusively to the Excluded Assets or Retained Liabilities;

(xv)    all Retained Plans; and

(xvi)    those assets identified on Section 2.2(b)(xvi) of the Sellers' Disclosure Schedule.

*Section 2.3    Assumed and Retained Liabilities.*

(a)    The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers:

(i)    $7,072,488,605 of Indebtedness incurred under the DIP Facility, to be restructured pursuant to the terms of **Section 6.9** (the "Purchaser Assumed Debt");

(ii)    all Liabilities under each Purchased Contract;

(iii)    all Intercompany Obligations owed or due, directly or indirectly, by Sellers to (A) any Purchased Subsidiary or (B) any joint venture or other entity in which a Seller or a Purchased Subsidiary has any Equity Interest (other than an Excluded Entity);

(iv)    all Cure Amounts under each Assumable Executory Contract that becomes a Purchased Contract;

(v)    all Liabilities of Sellers (A) arising in the Ordinary Course of Business during the Bankruptcy Case through and including the Closing Date, to the extent such Liabilities are administrative expenses of Sellers' estates pursuant to Section 503(b) of the Bankruptcy Code and (B) arising prior to the commencement of the Bankruptcy Cases to the extent approved by the Bankruptcy Court for payment by Sellers pursuant to a Final Order (and for the avoidance of doubt, Sellers' Liabilities in clauses (A) and (B) above include Sellers' Liabilities for personal property Taxes, real estate and/or other ad valorem Taxes, use Taxes, sales Taxes, franchise Taxes, income Taxes, gross receipt Taxes, excise Taxes, Michigan Business Taxes and Michigan Single Business Taxes), in each case, other than (1) Liabilities of the type described in

-28-

**Section 2.3(b)(iv)**, **Section 2.3(b)(vi)** and **Section 2.3(b)(ix)**, (2) Liabilities arising under any dealer sales and service Contract and any Contract related thereto, to the extent such Contract has been designated as a Rejectable Executory Contract, and (3) Liabilities otherwise assumed in this **Section 2.3(a)**;

(vi)    all Transfer Taxes payable in connection with the sale, transfer, assignment, conveyance and delivery of the Purchased Assets pursuant to the terms of this Agreement;

(vii)    (A) <u>all Liabilities arising under express written warranties</u> of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) <u>manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws</u>;    ✶

(viii)    all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in **Section 2.3(b)(iv)**, (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing;

(ix)    all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "<u>Product Liabilities</u>"), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs);

(x)    all Liabilities of Sellers arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Seller, except for Retained Workers' Compensation Claims;

(xi)    all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing;

(xii)    all Liabilities (A) specifically assumed by Purchaser pursuant to **Section 6.17** and (B) arising out of, relating to or in connection with the salaries and/or wages and vacation of all Transferred Employees that are accrued and unpaid (or with respect to vacation, unused) as of the Closing Date;

-29-

Doc ID --> 200919100758



Exhibit 2

| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 07/10/2009 | 200919100758 | FOREIGN/AMENDMENT (FAM) | 50.00 | 300.00 | .00 | .00 | .00 |

**Receipt**
This is not a bill. Please do not remit payment.

CT CORPORATION SYSTEM
4400 EASTON COMMONS WAY, SUITE 125
ATTN: TIMOTHY ROBERSON
COLUMBUS, OH 43219

# STATE OF OHIO
## CERTIFICATE
Ohio Secretary of State, Jennifer Brunner

**1865916**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**GENERAL MOTORS COMPANY**

and, that said business records show the filing and recording of:

Document(s)  
**FOREIGN/AMENDMENT**

Document No(s):  
**200919100758**

United States of America  
State of Ohio  
Office of the Secretary of State

Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 10th day of July, A.D. 2009.

*Jennifer Brunner*

Ohio Secretary of State

Page 1

Doc ID --> 200919100758




Prescribed by:
The Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.sos.state.oh.us
e-mail: busserv@sos.state.oh.us

Expedite this Form: (Select One)

PO Box 1390
● Expedite
Columbus, OH 43216
*** Requires an additional fee of $100 ***

PO Box 1329
○ Non Expedite
Columbus, OH 43216

## CERTIFICATE OF AMENDMENT TO FOREIGN CORPORATION APPLICATION FOR LICENSE
*(For Foreign, Profit or Nonprofit)*
Filing Fee $50.00

(1) ☒ Foreign for Profit
License No. 1865916
(179-FAM)

(2) ☐ Foreign Nonprofit
License No. _____
(179-FAM)

**Complete the following information in this section if box (1) or (2) is checked.**

NGMCO, Inc.
*Name of Corporation - Including Assumed Name If Applicable*

Sadiq Malik, Vice President
*Authorized Officer and Title*
, does hereby certify that the above named Foreign

Corporation formed in the state of Delaware
has modified the information set forth in the original Application for License or any Amendment thereto with the following:

The name of the corporation has been amended to
General Motors Company

The corporation's principal office shall be located in
300 Renaissance Center
*Street Address*    *NOTE: P.O. Box Addresses are NOT acceptable.*

Detroit                                                    MI        48265-3000
*City, Township, or Village*                                *State*     *Zip Code*

The corporation's state of formation shall be    Delaware

The corporation's principal office within Ohio shall be located in    ☒ Check box if there is no Ohio Location

_____
*Street Address*    *NOTE: P.O. Box Addresses are NOT acceptable.*

_____    _____, Ohio    _____
*City, Township, or Village*    *County*              *Zip Code*

585  OH1/6 - 11/29/2006 C T System Online    Page 1 of 3    Last Revised: 9/29/2006

Page 2

| Complete the following information in this section if box (1) or (2) is checked Cont. |
|---|
| The corporation will exercise the following corporate purpose(s) in Ohio: |
| Manufacturer and sale of motor vehicles |

This certificate of amendment supersedes the information currently on file with the Secretary of State of Ohio.

This Certificate of Amendment to the Foreign Corporation Application for License has been adopted in accordance with the laws of the state of domestication.

**REQUIRED**
Must be authenticated (signed) by an authorized representative

_[signature]_
Authorized Representative
SADIQ MALIK, VP

July 10, 2009
Date

555  OH L06 - 11/29/2008 CT System Online                Page 2 of 3                Last Revised: 9/29/2008