**HEARING DATE & TIME:** November 6, 2009 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                                  :   **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY,** *et al.*,  :   **09-50026 (REG)**
     f/k/a General Motors Corp., *et al.*  :
                                                             :
                        **Debtors.**        :   (Jointly Administered)
                                                             :
-------------------------------------------------------------x

## DEBTORS' OPPOSITION TO THE APPLICATION OF FEDERAL REPUBLIC OF GERMANY FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 2004 AUTHORIZING AND DIRECTING (A) THE PRODUCTION OF DOCUMENTS AND (B) THE ORAL EXAMINATION OF INDIVIDUALS DESIGNATED BY THE DEBTORS AND BELIEVED TO HAVE KNOWLEDGE OF THE RELEVANT MATTERS

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), hereby submit this opposition to the *Application of Federal Republic of Germany* ("**FRG**") *for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing and Directing (A) The Production of Documents and (B) The Oral Examination of Individuals Designated by the*

*Debtors and Believed to Have Knowledge of the Relevant Matters* [Docket No. 3520] (the "**Motion**" or "**Rule 2004 Application**"). In support hereof, the Debtors respectfully represent:

## PRELIMINARY STATEMENT

1.  FRG seeks an examination of the Debtors and the production of documents relating to Debtors' product liability insurance coverage relating to an automobile accident involving a German Army officer. FRG holds no direct financial stake in the outcome of these chapter 11 cases. It is not a party in the underlying products liability action, nor is it in privity with the Debtors. The Motion asserts without offering any support that the determination of the underlying products liability claims will impact whether FRG might be able to stop paying the medical and related expenses of the injured officer. FRG has failed to establish how a finding for the injured officer in the products liability case would transform FRG into a creditor of the Debtors.

2.  Notwithstanding FRG's failure to establish its status as a party in interest in these cases, the Debtors have sought to provide FRG with reasonable information in order to understand the Debtors' insurance coverage. At the request of counsel, the Debtors provided a sworn declaration demonstrating that the Debtors are self-insured up to $35 million on products liability claims. Debtors have worked diligently to provide FRG with information in response to its requests and to facilitate the exchange of information outside of Debtors' possession. Given the Debtors' self-insured retention, there are no insurance policies applicable to the officers' underlying product liability claims at this time. Further, the Debtors are not in a position to provide FRG with the any additional documentation or testimony it seeks because the Debtors are not in possession, custody, or control of the insurance documents FRG seeks.

3.  FRG has failed to meet its burden to establish standing and good cause for the Rule 2004 examination. Even if FRG could establish standing and good cause for the

2

examination, the burden the requested examination would place on the Debtors and their estates far outweighs any speculative benefit to FRG. Accordingly, the Court should deny the Rule 2004 Application.

## BACKGROUND

4. On June 1, 2009, the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On July 10, 2009, the Debtors consummated the sale of substantially all of their assets to NGMCO, Inc. (n/k/a General Motors, LLC) ("**NGMCO**" or "**General Motors, LLC**") pursuant to that certain Amended and Restated Master Sale and Purchase Agreement, dated June 26, 2009, as amended and an order of this Court dated July 5, 2009 [Docket No. 2968] ("**MPA**").

5. On July 29, 2009, FRG filed with this Court the instant Application pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure seeking documents and oral testimony relating to the Debtors' product liability insurance coverage.

6. FRG alleges in its motion that it is responsible for the medical expenses of Florian Hinrichs, a German army officer who was injured in a prepetition automobile accident while riding in an automobile manufactured by MLC. Mot. ¶ 3. Mr. Hinrichs commenced a prepetition lawsuit against the Debtors in Alabama state court (the "**Alabama State Case**") seeking "damages personal to him." Mot. ¶ 2.

7. FRG is not a party to the Alabama State Case, nor has it filed a proof of claim in the Debtors' bankruptcy proceedings. It does not claim to be a direct creditor of the Debtors. FRG, however, asserts that "at a minimum, FRG is entitled to determine whether insurance benefits exist as part of the Debtors' bankruptcy assets, either through private policies or through a self-insured program that could apply to Hinrich's claims in the Alabama State Case." Mot. ¶ 4. FRG would like to determine what insurance proceeds Hinrichs may receive so

3

that it can determine whether it "might be able to stop paying Hinrichs pursuant to its current obligation under German law." *Id.*

8.  The Debtors have already provided FRG with the insurance information it seeks. On July 30, 2009, the Debtors' bankruptcy counsel informed FRG's counsel that the Debtors are self-insured up to $35 million on products liability claims, meaning that the Debtors themselves are responsible at least the first $35 million of any liability imposed for a single claim. On July 31, 2009, the Debtors' bankruptcy counsel reaffirmed this position in an email to FRG's counsel. On September 3, 2009, the Debtors provided FRG's counsel with a sworn explanation of the same in a declaration of Howard Chu, a former claims manager for MLC, with knowledge of the insurance policies maintained by the Debtors prior to the sale to NGMCO. *See Declaration of Howard Chu in Response to the Application of Federal Republic of Germany Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* ("**Chu Declaration**" attached hereto as "**Exhibit A**").

9.  As indicated in the Chu Declaration, the Debtors are self-insured with respect to products liability claims with a self-insured retention in the amount of $35 million per occurrence. (Ex. A ¶ 2). Thus, the Debtors would be directly responsible for satisfying any judgment entered in the Alabama State Case up to $35 million including legal defense expenses. (Id.). Because of the self-insured retention, there are no insurance policies directly relevant the Alabama State Case at this time (Ex. A ¶ 35).

10. Notwithstanding FRG's failure to demonstrate any claim over $35 million, in an effort to resolve the Motion, on October 27, 2009 the Debtors and General Motors, LLC offered to provide evidence of the Debtors' insurance coverage above the $35 million self-insured retention if FRG's would agree to withdraw the Motion. Despite the Debtors' good-faith

4

efforts to cooperate with FRG and satisfy any legitimate need for information, FRG has refused to withdraw its Motion.

11. The Debtors cannot provide FRG with the further documentation or testimony it seeks because, as has been explained to FRG's counsel, the Debtors are not in possession, custody or control of the insurance documents FRG seeks. Under the MPA, General Motors, LLC purchased all of the Debtors' assets, including insurance policies, except those policies specifically excluded. The only insurance policies excluded under the MPA or otherwise retained by the Debtors are not relevant to FRG's requests. *See* "Excluded Insurance Policies," Section 2.2(b)(xiii), Sellers' Disclosure Schedule to the MPA, *Certain Schedules and Exhibits to the Master Sale and Purchase Agreement* [Docket No. 2649].

12. FRG further requests authority to issue a subpoena to individuals "within the control of the Debtors." Mot. ¶ 17. The parties with possession, ownership and control of the requested insurance information are not within the control of the Debtors.

## ARGUMENT

13. A request for discovery under Rule 2004 is committed to the sound discretion of the bankruptcy court. *See In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) ("Rule 2004 provides that the Court 'may' order disclosure thereunder, giving the Court significant discretion."). The Court should exercise its discretion to deny FRG's Rule 2004 Application because (i) FRG lacks standing to bring a 2004 motion and (ii) FRG has failed to satisfy its burdens under Rule 2004.

### A. FRG Lacks Standing to Seek a Rule 2004 Examination

14. Only a "party in interest" has standing to bring a motion for a Rule 2004 examination. *See In re Lifeco Investment Group, Inc.*, 173 B.R. 478, 481 (Bankr. D. Del. 1994)

5

(finding that ancillary receiver was not "a party in interest" and therefore lacked standing to bring a Rule 2004 motion); Fed. R. Bankr. P. 2004(a) ("on motion of any party in interest").

15. Although the Bankruptcy Code does not specifically define the term "party in interest," section 1109 provides that "parties in interest, including the debtor, the trustee, a creditors' committee, and equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a [chapter 11 case.]" *See* 11 U.S.C. 1109(b). The Bankruptcy Code's use of "party of interest" in section 1109 is based on the theory "that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." 7 Collier on Bankruptcy ¶ 1109.01 (Lawrence P. King ed., 15th ed. 2000).

16. The term "party in interest is broadly interpreted, [but it is] not infinitely expansive." *S. Blvd. v. Martin Paint Stores* (*In re Martin Paint Stores*), 207 B.R. 57, 61 (Bankr. S.D.N.Y. 1997) (citing Collier on Bankruptcy P. 1109.03). Only those parties "sufficiently affected by a Chapter 11 proceeding should be able to appear before it and be heard." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (*citing In re Amatex*, 755 F.2d 1034, 1042-43 (3d Cir. 1985).

17. A "party claiming to be a 'party in interest' must still satisfy the general requirements of the standing doctrine." *Southern Blvd.*, 207 B.R. at 61. "Courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *In re Texaco, Inc.*, 81 B.R. 820, 828 (Bankr. S.D.N.Y. 1988) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985); *see also In re Johns-Manville Corp.*, 36 B.R. 743, 747 (Bankr. S.D.N.Y. 1984) (holding that the meaning of

6

the term party in interest "must be determined on an 'ad hoc' basis."). In determining an entity's party in interest status, the court must "take care not to be so liberal in granting such applications as to over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue . . . [t]he test for whether a party is "affected" by the proceedings must be interpreted in light of this requisite balancing[.]" *In re Pub. Serv. Co.*, 88 B.R. 546, 554 (Bankr. D.N.H. 1988).

18.     The Second Circuit has held that a creditor of one of the debtor's creditors is not a "party in interest." *The Roslyn Sav. Bank v. Comcoach Corp.* (*In re Comcoach Corp.*), 698 F.2d 571, 573 (2d Cir. 1983) (finding that bank holding a mortgage for premises leased by debtor from mortgagee had (i) no right to payment from the debtor and (ii) no right to equitable relief against the debtor and was therefore not a "party in interest"). FRG rests its claim to "party in interest" standing on the assertion that it "will clearly be affected by . . . the determination whether Hinrichs' potential future liability judgment against Debtors will be paid." Mot. ¶ 12. FRG argues that the determination of Hinrichs' proof of claim "will impact whether FRG might be able to stop paying Hinrichs pursuant to its current obligation under German law." Mot. ¶ 12. FRG is no different than a creditor of one of the Debtors' potential creditors. FRG has not filed a proof of claim and fails to establish any basis for its hypothetical indemnification claim against the Debtors for Hinrichs' medical and related expenses. As such FRG lacks a sufficient stake in the proceedings and is not a "party in interest" to this case. *See Ionosphere Clubs*, 101 B.R. at 850 (holding "[t]o allow [the movant] party in interest standing based on such a tenuous connection to this bankruptcy proceeding is unfounded. [Movant] will not be affected by this reorganization and thus is not a party in interest.").

> **B.    Because FRG Fails to Demonstrate Necessity, FRG Fails to Meet Its Burden to Establish Good Cause for the Rule 2004 Examination**

19.     While Rule 2004 is admittedly broad, it is precisely because of that breadth that courts have recognized the need to impose limits and safeguards to keep the rule from being abused.  It is well-established that a party in interest seeking authority to use Bankruptcy Rule 2004 bears the burden to establish "good cause" for the relief requested.  *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("[t]he one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.")(quoting *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)); *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (holding that "the examiner has the burden of establishing that 'good cause' exists for the taking of the [Rule 2004] examination"); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (holding that just because "documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.").

20.     "The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents."  *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).  Instead, good cause only exists where the "examination sought is *necessary* to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner *undue hardship or injustice*."  *In re Express One Int'l*, 217 B.R. at 217 (citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D. Cal. 1993)) (emphasis added).

21.     The sole premise of the Rule 2004 Application is FRG's desire to assess the Debtors' product liability insurance coverage pertaining to the Alabama State Case.  The Debtors have already undertaken good-faith efforts to provide information to FRG.  The

8

Debtors' counsel informed FRG's counsel shortly after the 2004 Application was filed that the Debtors are self-insured up to $35 million on products liability claims. Counsel has since reaffirmed this information through correspondence and a sworn statement. Moreover, as noted above, the Debtors are not in the possession, custody or control of the insurance documents sought by the Rule 2004 Application. FRG has failed to demonstrate the requisite necessity, and by extension has failed to establish good cause sufficient to justify the discovery requested. *See In re Express One Int'l*, 217 B.R. at 217 (requiring showing of necessity to establish good cause for a Rule 2004 examination).

22.     Moreover, FRG's request for information regarding the Debtors' product liability insurance coverage is premature. FRG seeks a Rule 2004 examination based upon "Hinrichs' potential future liability judgment against the Debtors" and concedes that Hinrichs must first prevail in his case against GM before FRG could even conceivably be a "creditor" with a "claim" against Debtors. Mot. ¶¶ 12-13. It is not even clear how a finding for Hinrichs in the Alabama State case would transform FRG into a creditor of the Debtors as FRG has no privity with the Debtors. Even assuming arguendo that FRG could have a claim against the Debtors, the documents and information sought are not necessary to such a claim. Until Hinrichs' claim against Debtors is resolved and the "potential future liability judgment against Debtors" is determined, FRG cannot establish the necessity of the examination requested.

23.     Bankruptcy courts have denied or limited discovery under Rule 2004 when it appears that the examiner is seeking information regarding "pending litigation outside of the bankruptcy court." *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002). "Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal." *In re Coffee Cupboard, Inc.*, 128 B.R. at 516.

9

Until there is a determination of "Hinrichs' potential future liability judgment against the Debtors" and some showing that FRG holds a claim against the Debtors, FRG's request for a 2004 examination pertains solely to the Alabama State Case and does not relate to "any matter which may affect the administration of debtor's estate."

24.     FRG has not demonstrated that the documents and information it seeks are necessary or that denial of its requests would cause undue hardship or injustice. Accordingly, the Rule 2004 Application fails to demonstrate good cause and should be denied.

### C.    The Requested Rule 2004 Examination Would Unduly Burden the Debtors' Administration of the Estates

25.     The Court should exercise its discretion to deny FRG's Rule 2004 Application not only because FRG lacks standing and has failed to satisfy its burdens under Rule 2004, but also because FRG has failed to demonstrate that the benefit in allowing such discovery outweighs the burden to the Debtors and their estates. In determining whether to grant a Rule 2004 examination, the Court must balance the movant's interest against the Debtors' and the estate's interest in avoiding the cost and burden of discovery. *See Hammond*, 140 B.R. at 201; *Eagle-Picher*, 169 B.R. at 134; *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712 (requiring a "balanc[ing] [of] the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination").

26.     Under such a balancing test, the substantial burdens the requested examinations would place on the Debtors and their estates far outweigh any speculative benefits to FRG. "[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *In re Express One Int'l*, 217 B.R. at 217. The burden on the Debtors and their professionals to respond to the examination requested in the Rule 2004 Application outweigh any benefits to FRG. The Debtors

10

are parties to thousands of litigations that need to be liquidated in these cases. It would be untenable to require the Debtors to sit through examinations and be subject to discovery in each of those matters whenever a request is made by the adversary, let alone third party that could somehow be affected by an adverse or positive outcome. The Debtors should not be required to divert limited resources and expend estate funds to provide non-party discovery. Given the cost and disruption to the Debtors and their professionals that would be caused by granting FRG's requests, the attendant burdens would outweigh any possible benefit to FRG.

WHEREFORE the Debtors respectfully request entry of an order denying the 2004 Application and grant the relief requested herein.

Dated: October 30, 2009
      New York, New York

                    /s/ Joseph H. Smolinsky
                    Harvey R. Miller
                    Stephen Karotkin
                    Joseph H. Smolinsky

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession