**Hearing Date: November 6, 2009, 9:45 a.m. (prevailing Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :    **09-50026 (REG)**
                                                            :    **(Jointly Administered)**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                   :
     **f/k/a General Motors Corp.,** *et al.*               :
                                                            :
           **Debtors.**                                     :
------------------------------------------------------------x

**DEBTORS' OPPOSITION TO THE MOTION OF WALTER J. LAWRENCE FOR
ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY
PURSUANT TO 11 U.S.C. § 362(d)(1)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 3

ARGUMENT ................................................................................................................................. 5

    A.    The Automatic Stay is Fundamental to the Reorganization Process ........ 5

    B.    Plaintiff Fails to Meet His Burden of Establishing Cause to Modify the Automatic Stay ...................................................................................... 6

        1.    Plaintiff is Not Entitled to Relief from the Automatic Stay Based Upon a Lack of Adequate Protection ................................. 7

        2.    The Sonnax Factors Weigh Against Lifting the Automatic Stay ........................................................................................................ 8

            a.    It is Premature at This Stage in the Bankruptcy Proceedings to Lift the Automatic Stay and Doing so Would Burden the Estate ............................................. 11

            b.    Allowing the District Court Action to Proceed Will Expose the Debtors to a Flood of Lift Stay Motions Which Will Threaten Judicial Economy ........................... 13

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
    117 B.R. 789 (Bankr. S.D.N.Y. 1990) ................................................................................. 6

*In re Bally Total Fitness of Greater New York, Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009) ............................................................................... 14

*In re Celotex Corp.*,
    140 B.R. 912 (Bankr. M.D. Fla. 1992) ............................................................................. 14

*In re Drexel Burnham Lambert Group, Inc.*,
    113 B.R. 830 (Bankr. S.D.N.Y. 1990) ................................................................................. 5

*In re Eclair Bakery Ltd.*,
    255 B.R. 121 (Bankr. S.D.N.Y. 2000) ................................................................................. 6

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*,
    550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977) ........................................ 6

*LNC Inv., Inc. v. First Fid. Bank*,
    247 B.R. 38 (S.D.N.Y. 2000) .............................................................................................. 8

*Mazzeo v. Lenhart (In re Mazzeo)*,
    167 F.3d 139 (2d Cir. 1999) ............................................................................................... 8

*In re Mego Int'l, Inc.*,
    28 B.R. 324 (Bankr. S.D.N.Y. 1983) ................................................................................. 7

*Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*,
    474 U.S. 494 (1986) ........................................................................................................... 5

*Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.*,
    38 B.R. 987 (S.D.N.Y. 1984) ............................................................................................. 9

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*,
    351 F.3d 86 (2d Cir. 2003) ............................................................................................. 7, 8

*In re Northwest Airlines Corp.*,
    2006 WL 687163 (Bankr. S.D.N.Y. Mar. 10, 2006) ........................................................ 14

*Official Committee of Unsecured Creditors v. PSS Steamship Co.*,
    114 B.R. 27 (Bankr. S.D.N.Y. 1989) ...................................................................................8

*In re Pioneer Commercial Funding Corp.*,
    114 B.R. 45 (Bankr. S.D.N.Y. 1990) ...................................................................................7

*In re Sonnax Industries, Inc.*,
    907 F.2d 1280 (2d Cir. 1990) ..................................................................................... passim

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986) ...................................................................................................6

*In re Touloumis*,
    170 B.R. 825 (Bankr. S.D.N.Y. 1994) .................................................................................9

*United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc.*,
    484 U.S. 365 (1988) .............................................................................................................8

**STATUTES**

11 U.S.C. § 362(d)(1) .............................................................................................................passim

H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297 .......................7

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company, (f/k/a General Motors Corporation) ("**MLC**"), and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby submit this opposition to the Motion of Walter J. Lawrence for Entry of an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) [Docket No. 4202] (the "**Motion**"). In support hereof, the Debtors respectfully represent:

### PRELIMINARY STATEMENT

1. Movant Walter J. Lawrence ("**Plaintiff**") seeks to modify the automatic stay to proceed with his prepetition action pending in the Middle District of Florida styled *Walter J. Lawrence v. General Motors Hourly-Rate Employee Pension Plan and General Motors Corporation*, 5:07-cv-00408-WTH-GRJ (the "**District Court Action**"). Plaintiff, however, cannot satisfy his burden of establishing cause sufficient to truncate the statutorily imposed breathing spell to which the Debtors are entitled under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Plaintiff's case is just one of thousands of cases pending against the Debtors across the country and Plaintiff has not articulated any special facts or circumstances warranting relief from the stay to allow him to proceed with his case at this time.

2. Allowing the Plaintiff relief from the automatic stay at this juncture would expose the Debtors to countless other lift stay motions, which would impose a burden on the Debtors and their estates at a time when their limited remaining resources should be devoted to other immediate tasks. The Debtors' resources *should be*

dedicated to determining how to dispose of their remaining assets in an orderly and value-maximizing manner and proceeding with an organized chapter 11 claims process. Through the claims process, which may involve settlement or alternative dispute resolution procedures, the Debtors will be able to address all prepetition claims efficiently and fairly, including Plaintiff's claim, in a centralized fashion rather than being forced to litigate such claims in a piecemeal, *ad hoc* manner in courts across the country. To this end, the Debtors are currently working with the Unsecured Creditors Committee to establish procedures for resolving a large number of unliquidated claims in these cases.

3. Further, the burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend against the Plaintiff's case in the District Court far outweighs any potential gain to the Plaintiff in proceeding with his lawsuit against the Debtors at this time. At best, any judgment the Plaintiff may receive in his lawsuit would entitle him to a general unsecured claim to be paid proportionally with the thousands of other such claims years in the future. There is no reason the Plaintiff must liquidate his general unsecured claim ahead of the thousands of similarly-situated creditors. Meanwhile, the Plaintiff may sever MLC from the District Court Action and proceed with his lawsuit against the General Motors Hourly-Rate Employees Pension Plan, the primary defendant that presumably could satisfy any judgment fully, and thus the Plaintiff is not prejudiced by preservation of the automatic stay at this time. Accordingly, the Debtors respectfully request that this Court deny the Motion.

# BACKGROUND

### The District Court Action

4.     Plaintiff is a former MLC hourly employee who, upon his retirement from MLC in 1993, began receiving a monthly pension benefit. On October 9, 2007, Plaintiff commenced a *pro se* lawsuit in the United States District Court for the Middle District of Florida against MLC and the General Motors Hourly-Rate Employees Pension Plan (the "**Plan**"). The District Court Action alleges that 1) MLC and the Plan violated the Employee Retirement Income Security Act ("**ERISA**") by 1) remitting Plaintiff's pension benefits to the Internal Revenue Service ("**IRS**") and 2) reducing his pension by 50% to reimburse the Plan for previous overpayments it had made to Plaintiff. MLC is not the Plan fiduciary; the fiduciary is the Investment Committee of the Board of Directors.

5.     It is the Debtors' understanding that the Plan remitted Plaintiff's pension benefits to the IRS in response to an IRS notice of deficiency and levy against Plaintiff's pension benefits stating that Plaintiff had failed to pay his income taxes in eleven different years. Upon receipt of the levy, the Plan was obligated to remit Plaintiff's pension benefits to the IRS to satisfy his tax levy.

6.     Since commencing the District Court Action, Plaintiff has filed no fewer than 23 motions in the District Court Action, including two motions for summary judgment dated February 12, 2008, and April 28, 2008, respectively. Defendants cross-moved for summary judgment on March 7, 2008.

7. The District Court has not ruled on the motions and cross-motion for summary judgment, nor has any discovery been completed, or properly initiated, in the District Court Action.[1]

**The Bankruptcy Case**

8. On June 1, 2009, MLC commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The commencement of this chapter 11 case triggered the automatic stay of all litigation pending against the Debtors pursuant to section 362 of the Bankruptcy Code.

9. On July 10, 2009, the Debtors consummated the sale of substantially all of their assets to NGMCO, Inc. (n/k/a General Motors, LLC) pursuant to that certain Amended and Restated Master Sale and Purchase Agreement ("**MPA**"). Simultaneous with closing on the MPA, Debtor General Motors Corporation changed its name to Motors Liquidation Company.

10. On October 5, 2009, Plaintiff filed the instant Motion seeking relief from the automatic stay to "enable Movant's Motion for Summary Judgment and other pending motions to be heard" in the District Court Action. (Mot. p.1.) The Motion alleges, that "cause for relief from the stay may be found based on Movant's desire to proceed to completion in the United States District Court, Middle District of Florida and on a lack of adequate protection." (Mot. p. 35, ¶ 17.) As discussed further below, such relief from the automatic stay is not warranted.

---

[1] Plaintiff has issued discovery requests to Defendants, however, the District Court granted Defendants' motion to quash. Defendants have not yet issued any discovery requests.

# ARGUMENT

## A. The Automatic Stay is Fundamental to the Reorganization Process

11. Section 362(a) of the Bankruptcy Code provides in pertinent part that

> (a) . . . . [A] petition filed under section 301, 302 or 303 of this title . . . operates as a stay, applicable to all entities, of –
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a). The automatic stay affords a debtor fundamental protections under the Bankruptcy Code. *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code … has been described as one of the fundamental debtor protections provided by the bankruptcy laws.") (citations and internal quotations omitted); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 836 (Bankr. S.D.N.Y. 1990) ("The automatic stay imposed by section 362(a) of the Bankruptcy Code is one of the most fundamental debtor protections provided by the bankruptcy laws.") (citations and internal quotations omitted).

12. The broad protection of the automatic stay extends to all matters that may have an effect on a debtor's estate and is designed to relieve "the financial pressures that drove [the debtors] into bankruptcy." H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297; *Official Committee of Unsecured Creditors v. PSS Steamship Co.* (*In re Prudential Lines*, *Inc.*), 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). The automatic stay provides the debtor a "breathing spell" after the commencement of a

chapter 11 case, shielding the debtor from creditor harassment at a time when the debtor's personnel should be focusing on restructuring.  *See Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract … debtor's attention from its primary goal of reorganizing"); *AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The purpose of the protection provided by chapter 11 is to give the debtor a breathing spell, an opportunity to rehabilitate its business and to enable the debtor to generate revenue.").

14. 13. The automatic stay "is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization."  *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case) (citations and internal quotations omitted), *cert. denied*, 429 U.S. 1093 (1977).  Further, "[t]he automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding."  *AP Indus.*, 117 B.R. at 798.

B. **Plaintiff Fails to Meet His Burden of Establishing Cause to Modify the Automatic Stay**

14. Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances.  11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).  Specifically, relief from the stay will be granted only where the party seeking relief demonstrates "cause":

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).[2] The statute does not define "cause," however, courts in this Circuit have determined that in examining whether cause exists they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

### 1. Plaintiff is Not Entitled to Relief from the Automatic Stay Based Upon a Lack of Adequate Protection

15. Plaintiff asserts that he is entitled to relief from the stay based "on a lack of adequate protection." (Mot. p.35, ¶ 17.) Unsecured creditors, however, are not entitled to adequate protection under section 361 of the Bankruptcy Code. *See New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 90 (2d Cir. 2003) (citing *Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y. 1993) ("There is no express statutory requirement that the holders of unsecured claims be provided the 'adequate protection' of section 361."); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) ("[T]he concepts of adequate protection of an interest in property and the existence of an equity interest in property do not apply to unsecured claims.").

---

[2] Sections 362(d)(2) – (4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to a request for relief from the stay to pursue a litigation claim.

16. Only secured creditors may claim a lack of adequate protection under 11 U.S.C. § 362(d)(1) as a cause for relief from the automatic stay. *See Dairy Mart Convenience Stores*, 351 F.3d at 91 (finding the "[creditor] itself is an unsecured creditor . . . and is therefore ineligible to receive adequate protection. . . . [a]s a result, [creditor] is not entitled to relief from the automatic stay"); *see also United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988) ("Section 362(d)(1) is . . . one of a series of provisions in the Bankruptcy Code dealing with the rights of *secured* creditors.") (emphasis added); *LNC Inv., Inc. v. First Fid. Bank*, 247 B.R. 38, 45 (S.D.N.Y. 2000) (explaining a *secured* creditor may invoke his interest under 11 U.S.C. § 362(d)(1)) (emphasis added). Because Plaintiff is an unsecured creditor he is not entitled to relief from the automatic stay based on a lack of adequate protection and thus his Motion should be denied.

    2. <u>The *Sonnax* Factors Weigh Against Lifting the Automatic Stay</u>

17. In determining whether there is cause to lift the automatic stay, courts in the Second Circuit follow the seminal decision of *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990). *See, e.g.*, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the *Sonnax* factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate."). In *Sonnax*, the court outlined twelve factors to be considered when deciding whether to lift the automatic stay:

  (1) whether relief would result in a partial or complete resolution of the issues;
  (2) lack of any connection with or interference with the bankruptcy case;
  (3) whether the other proceeding involves the debtor as a fiduciary;
  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
  (5) whether the debtor's insurer has assumed full responsibility for defending it;
  (6) whether the action primarily involves third parties;
  (7) whether litigation in another forum would prejudice the interests of other creditors;
  (8) whether the judgment claim arising from the other action is subject to equitable subordination;
  (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
  (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
  (11) whether the parties are ready for trial in the other proceeding; and
  (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  Only those factors relevant to a particular case need be considered and the court need not assign them equal weight.  *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

  18.  As Plaintiff correctly notes in his Motion, the moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors.  907 F.2d at 1285; (*See* Mot. p. 35, ¶ 18.)  If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.  907 F.2d at 1285; (*See* Mot. p. 35, ¶ 18.)  Further, the cause demonstrated must be "good cause."  *Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.*, 38 B.R. 987, 998 (S.D.N.Y. 1984) ("Cause shown to avoid the proscription of section 362 must [be] . . . good cause.").  Plaintiff has failed to meet his burden to establish good cause for lifting the automatic stay.  Accordingly, the Court should deny relief from the automatic stay.

19. Because Plaintiff cannot meet his burden to establish cause to lift the stay, the burden does not shift to the Debtors to affirmatively demonstrate that relief from the stay is inappropriate. 907 F.2d at 1285. However, the *Sonnax* factors relevant to this case nevertheless weigh against lifting the automatic stay to allow the District Court Action to proceed at this juncture. As discussed further below, the second and seventh factors weigh against lifting the automatic stay because allowing the District Court Action to proceed would interfere with the bankruptcy case and prejudice the interests of other creditors by forcing the Debtors to expend scarce resources litigating the District Court Action and the onslaught of similar lift stay motions that would be likely to ensue. The third factor does not support relief from the stay because the District Court Action does not involve the Debtors as fiduciaries given that the Plan fiduciary was the Investment Committee of the Board of Directors. The fifth factor does not support relief from the stay because the Debtors do not possess insurance coverage over the Plaintiff's claims. The tenth factor militates toward preserving the stay because the interest of judicial economy and the expeditious and economical resolution of litigation would be best served by allowing the stay to remain in place at least until the Debtors have the opportunity to review and object to Plaintiff's proof of claim and litigating the merits of the claim becomes necessary or until the Debtors have the opportunity to establish a more efficient alternative than proceeding to judgment in all litigation claims in a piecemeal fashion. The eleventh factor weighs in favor of preserving the stay because there is no pending trial and indeed, even discovery has not occurred in the District Court Action. The twelfth factor justifies maintaining the stay because lifting the stay would severely harm the Debtors' estates whereas preserving the

stay would not harm the Plaintiff given that his likelihood of any relief against the Debtors is fractional at best and such relief can be attained with greater efficiency and reduced costs through the claims process. Moreover, Plaintiff may sever or dismiss MLC from the District Court Action and proceed against the Plan, and thus, the automatic stay does not negatively impact the Plaintiff's right to seek recovery in the District Court Action.

        a.    <u>It is Premature at This Stage in the Bankruptcy Proceedings to Lift the Automatic Stay and Doing so Would Burden the Estate</u>

20.    Allowing the District Court Action to proceed would interfere with the bankruptcy proceedings at a crucial stage in the chapter 11 process. The Debtors' bankruptcy cases constitute the second largest industrial bankruptcy in history. The cases have been active for just five months and during the first few months of the case, the Debtors' resources were consumed by executing a massive sale of assets to General Motors, LLC. Given the complexity and high stakes of the sale, the bankruptcy case is still in the early stages of the claims process. The bar date is still several weeks away and the Debtors have not yet begun to resolve the ever-increasing number of claims stemming from prepetition litigation against the Debtors. The Debtors are currently working with the Unsecured Creditors Committee to formulate an approach to resolve the large number of unliquidated claims.

21.    This process is made even more difficult given that, with the closing of the MPA, the Debtors no longer have the employees, resources, and funding of an active business. Following the sale of the Debtors' assets to General Motors, LLC the Debtors have no remaining legal staff, no longer employ the individuals whose conduct may be

implicated in the District Court Action, and do not now physically possess the other records and documents necessary to defend the District Court Action.  As such, lifting the automatic stay to allow the District Court Action to proceed at this juncture without a global and systematic approach to resolve all litigation claims would impose a significant burden on the small team of managers remaining who are focused on maximizing recovery for the estate's creditors and moving the Debtors efficiently through the chapter 11 process (*See Sonnax* factors 2 and 12).

22.   Contrary to Plaintiff's claims that "the District Court . . . stands at the door step of ruling on the pending motion but for the automatic stay" (Mot. p. 36), there is nothing indicating that the District Court will immediately rule upon the summary judgment motions if the stay is lifted.  The District Court has not ruled on the summary judgment motions for over a year-and-a-half and, given Plaintiff's history of filing a plethora of motions in the District Court Action, it is likely that Plaintiff would continue filing motions, seeking discovery, and initiating other actions necessitating a response from the Debtors while the parties await a ruling on summary judgment.  Indeed, Plaintiff states that if the stay is lifted he may once again seek a Writ of Mandamus from the Eleventh Circuit Court of Appeals.  (Mot. p. 33, ¶ 11.)   Further, summary judgment may require oral argument, which would further expend the Debtors' resources.  Finally, if summary judgment were not granted for either party in the District Court Action, the  Debtors would be required to engage in discovery, pre-trial requirements, and ultimately trial.  All such actions would take significant time and resources from the Debtors (*See Sonnax* factor 11).

23.     Given the estate's limited resources, the balance of harms favors preserving the automatic stay. (*See Sonnax* factor 12). The Debtors should not be compelled to use their scarce remaining resources to litigate prepetition general unsecured claims in courts across the country which claims are likely to receive less than a full recovery. This is particularly true where, as here, the Plaintiff is better suited to proceed against a non-debtor codefendant, the Plan. Because the Plan is not a debtor, the automatic stay does not bar proceedings against the Plan. Moreover, because MLC was not the Plan fiduciary, the Plaintiff's lawsuit against MLC has a low likelihood of success on the merits. Finally, the Plaintiff's claims are not covered by insurance, nor has Plaintiff alleged that his claims are so covered. (*See Sonnax* factor 5). In light of these circumstances, lifting the automatic stay at this time would severely burden the Debtors and may not benefit the Plaintiff at all.

        b.    <u>Allowing the District Court Action to Proceed Will Expose the Debtors to a Flood of Lift Stay Motions Which Will Threaten Judicial Economy</u>

24.     Allowing the District Court Action to proceed would set a negative precedent harmful to the Debtors' estates and to judicial economy. The District Court Action is just one of thousands of cases pending against the Debtors across the country. Plaintiff does not distinguish his case from the thousands of other cases pending against the Debtors in courts across the country nor does he provide any reason or special circumstances why his case should be allowed to burden the estate by proceeding outside of the established claims process. As stated above, Plaintiff's contention that the District Court is on the eve of resolving all issues in the case, is undermined by the fact that there is no guaranty that the District Court will either timely rule on the

pending motions in this case, or resolve the entire case with its rulings. Nor does Plaintiff's contention justify the Debtors having to continue to expend time, money, and other resources in connection with the District Court Action. If the Plaintiff is granted relief from the automatic stay under these circumstances, it would expose the Debtors to a flood of similar motions seeking to lift the stay in other cases across the country. Litigating the motions alone, much less litigating the underlying lawsuits, would substantially drain the estate's assets and harm the recovery prospects of all creditors (*See Sonnax* factors 2, 7, and 12). Meanwhile, the Debtors are not sitting on their hands, they are working diligently to establish procedures for addressing a large number of unliquidated claims as these cases move into the claims reconciliation period.

25. In similar circumstances courts have held that lifting the automatic stay is not warranted. *See, e.g.*, *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"); *In re Northwest Airlines Corp.* 2006 WL 687163, at *2 (Bankr. S.D.N.Y. Mar. 10, 2006) (upholding the automatic stay because "lifting the automatic stay . . . would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11"); *Matter of Celotex Corp.*, 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992) (preserving automatic stay where lifting stay would yield an "avalanche of litigation."). Given the thousands of lawsuits pending against the Debtors across the country and the flood of litigation likely to ensue if relief from the stay is granted, this Court too should preserve the automatic stay.

26.   Plaintiff argues that judicial economy would be served by lifting the stay by asserting that "the District Court judge and the Magistrate judge that is [*sic*] thoroughly informed of the facts and issues in this case." (Mot. p. 36).  Contrary to Plaintiff's assertion, however, the District Court has not made any substantive rulings in the case to date and nothing in the record indicates that the District Court has even read the parties' cross-motions for summary judgment or the accompanying exhibits.  Under these circumstances, the Bankruptcy Court can just as easily ascertain and adjudicate the issues in the case in exercising its core jurisdiction to allow or disallow claims against the estate.  *See* 28 U.S.C. § 157(b)(2)(B).

28.   In sum, the Debtors need the breathing spell provided by the automatic stay to resolve thousands of claims through the claims process.  To deprive the Debtors of the protections afforded by the automatic stay at this juncture would negatively impact the Debtors by interfering with the bankruptcy process which in turn prejudices other creditors (*See Sonnax* factors 2, 7, and 12).

*[Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE the Debtors respectfully request that the Court deny the Motion and the relief requested therein.

Dated: October 30, 2009
      New York, New York

    /s / Joseph H. Smolinsky_____
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession