Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                              :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF**
**DEBTORS TO ASSUME AND ASSIGN CERTAIN UNEXPIRED**
**LEASES OF EQUIPMENT AND RELATED EXECUTORY CONTRACTS**

           PLEASE TAKE NOTICE that upon the annexed motion, dated October 30, 2009

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors in possession (the "**Debtors**"), for an order authorizing the

assumption and assignment of certain unexpired leases of equipment and related executory

contracts, as more fully set forth in the Motion, a hearing will be held before the Honorable

Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on **November 12, 2009 at 2:00 p.m. (Eastern Time),** or as soon thereafter as

counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 300 Renaissance Center, Detroit, Michigan

48265 (Attn:  Ted Stenger); (iii) General Motors Company, 300 Renaissance Center, Detroit,

Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft

LLP, attorneys for the United States Department of the Treasury, One World Financial Center,

New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of

the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, DC 20220 (Attn:

Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633

Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and

Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory

committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036

(Attn:  Adam C. Rogoff, Esq., Robert T. Schmidt, Esq., and Amy Caton, Esq.); (xii) the Office

of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st

Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); and (xiii) the U.S. Attorney's

Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S.

Jones, Esq. and Matthew L. Schwartz, Esq.), so as to be received no later than **November 6**,

**2009, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

        PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated:  New York, New York  
       October 30, 2009

                      /s/ Joseph H. Smolinsky_____  
                      Harvey R. Miller  
                      Stephen Karotkin  
                      Joseph H. Smolinsky

                      WEIL, GOTSHAL & MANGES LLP  
                      767 Fifth Avenue  
                      New York, New York 10153  
                      Telephone: (212) 310-8000  
                      Facsimile: (212) 310-8007

                      Attorneys for Debtors  
                      and Debtors in Possession

**HEARING DATE AND TIME: November 12, 2009 at 2:00 p.m. (Eastern Time)**
**OBJECTION DATE AND TIME:  November 6, 2009 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :        **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                   :        **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*            :
                                                            :
                              **Debtors.**                  :        **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**DEBTORS' MOTION TO ASSUME AND ASSIGN CERTAIN UNEXPIRED LEASES OF**
**EQUIPMENT AND RELATED EXECUTORY CONTRACTS**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), respectfully represent:

**Relief Requested**

1.      Pursuant to section 365(a) and (f) of title 11, United States Code (the

"**Bankruptcy Code**") and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), the Debtors request authorization to (i) assume certain unexpired

leveraged leases (collectively, the "**Leveraged Leases**") of equipment and related executory

contracts identified on **Exhibit A** attached hereto (collectively with the Leveraged Leases, the

"**Lessee Leveraged Lease Documents**"), and assign those Lessee Leveraged Lease Documents

to General Motors LLC (f/k/a General Motors Company), a Delaware limited liability company

("**New GM**"), which pursuant to a recently completed sale, is the owner of the North American

automobile manufacturing business acquired from the Debtors pursuant to Section 363 of the

Bankruptcy Code; and (ii) assume certain unexpired single investor leases (collectively, the

"**Single Investor Leases**") of equipment and related executory contracts identified on **Exhibit B**

attached hereto (collectively with the Single Investor Leases, the "**Lessee Single Investor Lease**

**Documents**," and, together with the Lessee Leveraged Lease Documents, the "**Lessee Lease**

**Documents**"), and assign those Lessee Single Investor Lease Documents to New GM.  A

proposed order (the "**Proposed Order**") is attached hereto as **Exhibit C**.

### Jurisdiction

2.          This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3.          Prior to the date on which the Debtors filed their petitions for relief in the

above captioned chapter 11 cases (the "**Commencement Date**"), MLC (in the case of the Lessee

Leveraged Lease Documents for the transactions designated GM 2000A-1, GM 2001A-3, GM

2001A-4, and GM 2001A-5), and Saturn, LLC (n/k/a MLCS, LLC,) as successor in interest to

Saturn Corporation (in the case of the Lessee Leveraged Lease Documents for the transaction

designated GM 1991A-3) (collectively, the "**Lessees**" and each, a "**Lessee**") entered into a series

of leveraged lease transactions including the Leveraged Leases.  Each Leveraged Lease

transaction is distinct from each other Leveraged Lease transaction.

4.      Each Leveraged Lease transaction consists of a sale-leaseback financing under which (i) a separate trust (each, an "**Owner Trust**") was established pursuant to a trust agreement between a trustee (each, an "**Owner Trustee**") and an equity investor (each, an "**Owner Participant**"), (ii) the Owner Trustee received an equity investment from the Owner Participant, and concurrently issued equipment notes (the "**Equipment Notes**") to a variety of investors (collectively, the "**Note Purchasers**") to evidence loans made by such Note Purchasers to the Owner Trustee, (iii) the Equipment Notes issued to such Note Purchasers were issued under a trust indenture and security agreement (each, an "**Indenture**") between the respective Owner Trustee and a trustee (each, an "**Indenture Trustee**") for the Note Purchasers,[1] (iv) the proceeds received by the respective Owner Trustee from the respective Owner Participant and Note Purchasers were used to purchase one or more discrete units (or, in the cases of GM 2001A-3 and GM 2001A-4, undivided interests therein) of automobile manufacturing equipment (the "**Equipment**") from the respective Lessee.   Concurrently with its purchase of the Equipment from the Lessee, the Owner Trustee (i) entered into a lease with such Lessee, as lessee, (ii) assigned the lease for collateral security purposes to the Indenture Trustee pursuant to the Indenture, and (iii) granted a security interest in the Equipment to the Indenture Trustee pursuant to the Indenture to secure the Equipment Notes.

5.      Each Leveraged Lease transaction was consummated pursuant to a "participation agreement" (each, a "**Participation Agreement**") which, among other things (i) specifies certain ongoing rights and obligations of the various parties to the Leveraged Lease

---

[1]      In the case of the GM 1991A-3 and GM 2000A-1 Leveraged Lease transactions, there is one additional step in the transaction.  The Equipment Notes issued under the Indentures in those transactions are issued to a "Pass Through Trustee" under a "Pass Through Trust Agreement" rather than to the ultimate Note Purchasers directly. Instead, the Pass Through Trustee issues certificates in the Pass Through Trust to the ultimate economic holders. For convenience, references to the Note Purchasers herein should be read to include these certificate holders under the GM 1991 A-3 and GM 2000A-1 Leveraged Lease transactions.

transaction, (ii) includes closing conditions for the debt and equity investments, and (iii) includes various representations and warranties, covenants, indemnities and miscellaneous additional provisions.  Further, for each Leveraged Lease transaction, the respective Lessee entered into an agreement to indemnify the Owner Participant against certain tax consequences (the "**Tax Indemnity Agreement**").  The diagram below describes generally how the Leveraged Lease transactions operate:



6.    In addition, prior to the Commencement Date, MLC entered into a series of single investor lease transactions, including the two Single Investor Lease transactions, GM 2002A-1, and GM 2002A-2, with structures substantially similar to that of the Leveraged Lease transactions, except that the "leverage" component, i.e., the Indenture Trustee and the Note

Purchasers, was absent.  The diagram below generally describes how the Single Investor Lease transactions operate:



7.      Each transaction described in the Lessee Lease Documents covers certain manufacturing Equipment used in the manufacture of automobiles.  Most of the Equipment consists of either stamping presses or engine assembly line equipment, and all of the Equipment is located at facilities owned by New GM.  The Equipment is all very large, highly sophisticated and automated (and in some cases only usable to manufacture to GM patented designs), and very expensive to disassemble and move.  Moreover, to the extent it is re-usable, re-leaseable, or re-saleable at all, in the current economic environment, prices for such Equipment are severely depressed.  Indeed, in many cases, it is less expensive to purchase the Equipment new than to disassemble and move such Equipment for resale. As a result, it is highly likely that the only viable use of the Equipment is with New GM.

8.      The Debtors no longer manufacture automobiles and therefore have no use for the Equipment or business justification to continue to perform under the Lessee Lease Documents.  New GM, however, has a continuing need for use of the Equipment and has negotiated with affiliates of the Owner Participants to the Lessee Lease Documents (the "**Counterparties**") regarding the terms and conditions under which New GM would be willing to take assignment of the Lessee Lease Documents.  Those negotiations have resulted in certain

letter agreements (the "**Letter Agreements**") between New GM and one of the "Counterparties",

which provide for the terms and conditions under which New GM will accept assignment of the

Lessee Lease Documents. The Letter Agreements have been executed and delivered and will

become fully effective upon the assumption and assignment of the Lessee Lease Documents to

New GM.  In each Letter Agreement, New GM has agreed to take assignment of the Lessee

Lease Documents effective upon the granting of the relief requested in this Motion, provided that

(unless the parties to each Letter Agreement have waived such requirement) such relief shall

have become final and non-appealable.

       9.      If the Lessee Lease Documents are not assigned to New GM, the Debtors

will likely seek the rejection of the Lessee Lease Documents, which would saddle their estates

with significant rejection damages claims.  Accordingly, the Debtors seek authorization to

assume each of the Lessee Lease Documents and assign them to New GM pursuant to the terms

and conditions of the Proposed Order.

**<u>Argument</u>**

**A.**      **<u>Assumption and Assignment of the Lessee Lease Documents is a Sound
Exercise of the Debtors' Business Judgment.</u>**

      10.     The Lessee Lease Documents identified on **<u>Exhibit A</u>** and **<u>Exhibit B</u>** are

executory contracts and/or unexpired leases.  Section 365(a) of the Bankruptcy Code provides, in

part, that a debtor in possession, "subject to the court's approval, may assume or reject any

executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  *See also NLRB v.*

*Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997).

"[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit

the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to

and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994).

11.      Section 365(b)(1) of the Bankruptcy Code requires that, if there has been a default under a debtor's executory contract or unexpired lease, such executory contract or unexpired lease may not be assumed unless, at the time of the assumption, (i) such default is cured or there is adequate assurance that such default will be cured, (ii) compensation or adequate assurance of compensation is provided for any actual pecuniary loss resulting from such default and (iii) adequate assurance of future performance under the executory contract or unexpired lease is provided.  11 U.S.C. § 365(b)(1)(A)-(C).

12.      Courts defer to a debtor's business judgment in assuming and assigning an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve the assumption and assignment under section 365(a) of the Bankruptcy Code.  *See  Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (stating that a debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment").

13.      The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkum*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *Committee of Asbestos-Related Litigants v.Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612

(Bankr. S.D.N.Y. 1986) (where the debtor articulates a reasonable basis for its business decisions, courts will generally not entertain objections to the debtor's conduct); *see also In re Integrated Res.*, 147 B.R. at 656 (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11, especially where the debtor is a Delaware corporation) (quotations omitted).

14. In this case, assumption and assignment of the Lessee Lease Documents to New GM is in the best interests of the Debtors' estates, and a reasonable exercise of the Debtors' business judgment. The Debtors' no longer manufacture automobiles and therefore have no continuing use or need for the Equipment. New GM, however, has a continuing need for the use of the Equipment and has agreed to take assignment of the Lessee Lease Documents pursuant to the terms and conditions of the Proposed Order. The assumption and assignment of the Lessee Lease Documents to New GM will benefit the Debtors' estates by relieving them of potentially significant rejection damages claims. New GM has agreed to pay the amounts necessary to cure all defaults by the Debtors under each of the Lessee Lease Documents (the "**Cure Amounts**") listed on **Exhibit A** and **Exhibit B**, as well as other amounts payable as described herein, and upon assumption and assignment, New GM will become the Lessee under the Lessee Lease Documents. Simply put, because the obligations secured by the Equipment under the Lessee Lease Documents substantially exceed the value of the Equipment and New GM is uniquely positioned to utilize the Equipment, there is no prospect of the Debtors realizing any value for the Equipment in any other scenario.

15. In light of the foregoing, the Debtors respectfully request that the Court approve the assumption and assignment of the Lessee Lease Documents to New GM under

section 365(a) of the Bankruptcy Code in the manner requested herein as a sound exercise of the

Debtors' business judgment.

> **B.      The Proposed Cure Amounts, Together with New GM's Undertaking to
> Satisfy Any Ultimately Valid Fee and Expense Indemnification Obligations,
> Satisfies the Requirements of § 365(b)(1)(A)-(C), and the Court
> Should Find that Such Cures Cure or Remedy All Defaults
> <u>and Events of Default.</u>**

16.      The Debtors, New GM and the Owner Participants have calculated all due

but unpaid rents and other charges under the Lessee Lease Documents through October 15, 2009

(except for indemnifiable fees and expenses of parties to the Lessee Lease Documents other than

the Owner Participants) and incorporated such amounts into the proposed Cure Amounts on

Exhibits A and B.  With the exception of (i) any legal fees and expenses of parties to the Lessee

Lease Documents which are indemnifiable under the terms thereof, and (ii) amounts coming due

under the Lessee Lease Documents after October 15, 2009 but prior to or contemporaneous with

the effectiveness of the assumptions and assignments contemplated hereby (collectively, the

"**Additional Cure Amounts**"), the Court should find that payment of the Cure Amounts

scheduled on **<u>Exhibit A</u>** and **<u>Exhibit B</u>** together with the undertaking by New GM to pay the

Additional Cure Amounts satisfies the requirements of § 365(b)(1)(A)-(C), and cures all defaults

or events of default arising prior to, as of, or as a result of the assumptions and assignments

contemplated hereby.  Without limiting the generality of the foregoing, the Court should find that

no Make Whole-Premium (as defined in the Lessee Lease Documents) or other penalty or

premium related to any prepayment or acceleration of the Equipment Notes as a result of the

Debtors' Chapter 11 cases or other events of default occurring prior to or resulting proximately

from the assumption and assignment of the Lessee Lease Documents to New GM is or shall

hereafter be due and payable to any party to the Lessee Lease Documents or their respective

successors, assigns or transferees.

17.     To the extent any party to the Lessee Lease Documents asserts any right to

Additional Cure Amounts, the Debtors do not seek to bar the assertion of such a claims, and New

GM has agreed to accept liability for any such amounts which either (i) New GM agrees are

indemnifiable or payable under the Lessee Lease Documents or (ii) the Court later determines to

be indemnifiable or payable under the Lessee Lease Documents.  In addition, the Debtors do not

seek to bar any party to the Lessee Lease Documents from asserting a claim for indemnification

for the Michigan Business Tax and New GM has agreed to accept liability for any such Michigan

Business Tax to the extent of the Lessee's liability for such tax under the Lessee Lease

Documents.

> **C.     The Court Should Find That The Financial Statements New GM Will
> Provide Are Substantially Equivalent to the Financial Statements Required
> by Sections 13 and 15(D) of the Securities and Exchange Act or,
> Alternatively, that the Requirement to Provide Any Additional Financial
> Statements is Unenforceable Under Section 365(F) of the Bankruptcy Code.**

18.     Certain provisions of the Lessee Lease Documents require that the Lessee

deliver to the other parties to the Lessee Lease Documents either (i) the quarterly or annual

reports which the Lessee is required to file pursuant to Sections 13 or 15(d) of the Securities

Exchange Act of 1934, or (ii) if the Lessee is no longer subject to such reporting requirements,

quarterly and annual financial statements substantially equivalent to them.

19.     New GM is not presently subject to such reporting requirements and

moreover, New GM, unlike MLC, has been reorganized into a holding company structure such

that New GM is an indirect subsidiary of General Motors Company (f/k/a General Motors

Holding Company) ("**GM Holdco**").  As such, it is GM Holdco, not New GM, that will be

subject to any SEC reporting requirements going forward.  In addition, the fact that both the sale

of substantially all of the assets of MLC to New GM, and the restructuring of New GM into a

holding company structure, were not month end or quarter end events, has complicated New

GM's reporting for 2009.

        20.      Nonetheless, if the assumptions and assignments contemplated hereby

become effective, New GM intends to provide to all parties due financial reporting under the

Lessee Lease Documents with the following:   (A) within ten (10) days after GM Holdco, has

filed the same with the SEC, copies of quarterly and annual reports and of the information,

documents and other reports (or copies of such portions of any of the foregoing as the SEC may

from time to time by rules and regulations prescribe) which GM Holdco filed or files with the

SEC pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934; or, if

Holdco is not required to file information, documents or reports pursuant to either of such

sections, then, within ten (10) days after Holdco has filed the same with the SEC, copies of the

supplementary and periodic information, documents and reports which Holdco filed or files with

the SEC and which may be required by Section 13 of the Securities Exchange Act of 1934 in

respect of a security listed and registered on a national securities exchange as the SEC may from

time to time by rules and regulations prescribe (it being understood and agreed that the quarterly

and annual reports, information, documents and other reports that GM Holdco files with the SEC

via the EDGAR filing system (or any successor system thereto) or otherwise makes widely

available via electronic means within ten (10) days after the date that GM Holdco files the same

with the SEC shall be deemed to be deemed delivered; and (B) as soon as available, but in any

event not later than 55 days after the end of the third fiscal quarter of the Lessee's 2009 fiscal

year, the unaudited managerial balance sheet of the Lessee and its consolidated subsidiaries as at

1783513.7

the end of such quarter and the related unaudited consolidated managerial statements of

operations and managerial statement of cash flows for such quarter and the portion of the fiscal

year through the end of such quarter, setting forth in each case in comparative form the figures as

of the end of and for the corresponding period in the previous year, certified by the Lessee as

being fairly stated in all material respects (subject to the absence of footnotes and to normal year-

end audit adjustments); provided, that with respect to the Lessee's quarterly financial statements

to be provided for the third fiscal quarter of 2009, such financial statements shall be provided on

a modified basis within 55 days after the end of such third fiscal quarter, with GAAP-compliant

versions of such financial statements to be provided within 90 days after the end of its 2009

fiscal year (collectively, the "**Proposed Reporting**").

      21.     The Debtors and New GM submit, and ask the Court to find, that the

provision of such reporting is, under the circumstances, substantially equivalent to the

requirement to provide quarterly and annual financial statements pursuant to Sections 13 and

15(d) of the Securities Exchange Act of 1934.

      22.     Alternatively, the Court should order that the requirement to provide

reporting beyond the Proposed Reporting is a *de facto* anti-assignment requirement that is

unenforceable under Section 365(f) of the Bankruptcy Code.  Section 365(f) provides, in

pertinent part

      (1)  [N]otwithstanding a provision in an executory contract or unexpired lease of
the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of
such contract or lease, the trustee may assign such contract or lease . . . .

      (3)  [N]otwithstanding a provision in an executory contract or unexpired lease of
the debtor, or in applicable law that terminates or modifies, or permits a party other than
the debtor to terminate or modify, such contract or lease or a right obligation under such
contract or lease on account of an assignment of such contract or lease, such contract,
lease, right, or obligation may not be terminated or modified under such provision
because of the assumption or assignment of such contract or lease by the trustee.

23.    In other contexts, this Court has recognized that the determination of what constitutes a prohibited anti-assignment provision depends on the facts and circumstances of the case, *In re Adelphia Communications Corp.*, 359 B.R. 65, 86 (Bankr. S.D.N.Y. 2007), and like most things in this case, the facts and circumstances here are unusual.  There really are only two viable options for the Equipment subject to the Lessee Lease Documents.  Either New GM takes assignment of the Equipment pursuant to the relief requested herein, or it is rejected by the Debtors and eventually scrapped.  All of it is massive in size, presently located in New GM facilities, and prohibitively expensive even to disassemble.  Moreover, much of it is sufficiently customized that it cannot practically be converted to produce anything other than parts on which New GM holds the patent.  And finally, economic conditions generally, and in the auto industry specifically, have depressed any secondary market that might feasibly exist for the Equipment.  As a result, assumption and assignment to New GM, which will save the Debtors tens of millions of dollars in rejection damages and tax indemnity claims, is far and away the best result for the Debtors.  At the same time, it is understandable that New GM has no interest in taking on the Lessee Lease Documents with unresolved ambiguity over whether the differences between its corporate structure and status as a non-public company, and pre-petition General Motors Corporation's corporate structure and status as a public company, will put potentially hostile counterparties in a position to immediately begin asserting defaults under the Lessee Lease Documents post-assignment.  Thus, the failure to resolve any ambiguity over New GM's reporting obligations has the practical effect of making the Lessee Lease Documents unassignable.

24.    For the foregoing reasons, and because New GM has made provision to provide substantially equivalent reporting to the other parties to the Lessee Lease Documents, the

Court should find that any requirement to provide reporting beyond the Proposed Reporting is unenforceable under Section 365(f).

### Notice

25.     Notice of this Motion has been provided to (i) the counterparties to the Lessee Lease Documents listed on **Exhibit A** and **Exhibit B**, and (ii) parties in interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No. 3629]..  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein, and such other and further relief as is just.

Dated: New York, New York
       October 30, 2009

Respectfully submitted,

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (312) 310-8007

Attorneys for the Debtors
and Debtors in Possession

1783513.7

**Exhibit A**
**Leveraged Lease Transactions**

|   | Lease Number | Lessee Lease Documents Assumed | Cure Amount |
|---|---|---|---|
| 1 | GM 1991A-3 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement<br>Pass Through Trust Agreement 1991A-1<br>Pass Through Trust Agreement 1991A-2<br>Purchase Option Agency Agreement<br>County Lease Rights Assignment | $21,504,025.54 |
| 2 | GM 2000A-1 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement<br>Pass Through Trust Agreement | $2,154,802.36 |
| 3 | GM 2001A-3 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $226,752.80 |
| 4 | GM 2001A-4 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $161,422 |
| 5 | GM 2001A-5 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $3,570,510.87 |

**<u>Exhibit B</u>**
**<u>Single Investor Lease Transactions</u>**

| | Lease Number | Lessee Lease Documents Assumed | Cure Amount |
|---|---|---|---|
| 1 | GM 2002A-1 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $59,788.73 |
| 2 | GM 2002A-2 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $73,844.44 |

**<u>Exhibit C</u>**
**<u>Proposed Order</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                      :
In re                     :         **Chapter 11 Case No.**
                      :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :     **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*  :
                      :
            **Debtors.**     :      **(Jointly Administered)**
                      :
-------------------------------------------------------------x

### ORDER AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN UNEXPIRED LEASES OF EQUIPMENT AND RELATED EXECUTORY CONTRACTS

Upon the motion, dated October 30, 2009 (the "**Motion**")[1], of Motors Liquidation

Company and certain of its affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 365(a) of title 11 of the United

States Code (the "**Bankruptcy Code**") and Rules 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") to assume and assign certain unexpired leases

of equipment and related executory contracts (the "**Lessee Lease Documents**") listed on

**Exhibits I and II** hereto, all as more fully described in the Motion; and due and proper notice of

the Motion having been provided, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the Motion is in

the best interests of the Debtors, their estates, creditors, and all parties in interest and that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

---

[1] All capitalized terms not defined herein shall be ascribed the meaning given to them in the Motion.

1783513.7

ORDERED that pursuant to section 365(a) and (f) of the Bankruptcy Code and

Bankruptcy Rules 6006 and 9014, the Debtors are authorized to assume and assign the Lessee

Lease Documents, listed on **Exhibits I and II** attached hereto, to New GM, and any provisions

in any Lessee Lease Document that terminates, recaptures, imposes a penalty with respect to,

imposes a condition under, conditions renewal or extension of, results in a default or event of

default under, or modifies any term or condition of the Lessee Lease Documents or any

document executed in connection therewith upon or as a result of the assignment of such Lessee

Lease Document constitutes an unenforceable anti-assignment provision which is void and of no

force and effect as against any parties to such agreements including without limitation the

Debtors and New GM or their successors, assigns and transferees, in connection with the

transactions authorized hereby; and it is further

ORDERED that without limiting the generality of the foregoing, any requirement

in the Lessee Lease Documents requiring New GM to provide financial statement reporting in

excess of the Proposed Reporting, as defined in the Motion, is an unenforceable anti-assignment

provision; and it is further

ORDERED that provision of the Proposed Reporting, as defined in the Motion,

shall be deemed substantially equivalent to any obligation of New GM to provide quarterly or

annual financial statements substantially equivalent to those required by Section 13 and 15(d) of

the Securities Exchange Act; and it is further

ORDERED that concurrently with the consummation and performance of the

transactions described in this Order, the requirements of § 365(b)(1) of the Bankruptcy Code

with respect to the assumptions and assignments authorized hereby are deemed satisfied; and it is

further

1783513.7

2

ORDERED that upon the effectiveness of the assumptions and assignments contemplated hereby, the Lessee Lease Documents shall remain in full force and effect for the benefit of New GM, notwithstanding any provision in any such Lessee Lease Document (including those of the type described in §§ 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer; and it is further

ORDERED that upon the assumption by the Debtors and assignment to New GM of the Lessee Lease Documents, and the payment of the Cure Amounts in full by New GM, all defaults or events of default under the Lessee Lease Documents shall be deemed to have been cured and, except for the request for payment of Additional Cure Amounts, as defined in the Motion, any counterparty to any such Lessee Lease Document, its successors, assigns or transferees, shall be prohibited from exercising any rights or remedies against any Debtor or non-Debtor party (including without limitation New GM) to such Lessee Lease Document based on an asserted default or event of default that occurred on, prior to, or as a proximate result of the assumption and assignment, including the types of default specified in § 365(b)(1)(A); and it is further

ORDERED that payment of the Cure Amounts listed in **Exhibits I and II**, together with the undertaking by New GM to pay any Additional Cure Amounts, are sufficient to cure and remedy all defaults or events of default under the Lessee Lease Documents and related agreements and no person or entity, including without limitation New GM, shall have any liability for any Make-Whole Premium (as defined in the respective Lessee Lease Documents) or any other penalty or premium related to the acceleration or prepayment of the Equipment Notes or any other pre-assumption default or event of default including, without limitation, any lease event of default arising from the Debtors' Chapter 11 petitions; and it is further

ORDERED that except for (i) the payment of the Cure Amounts, (ii) the payment of any Additional Cure Amounts, each non-Debtor party to a Lessee Lease Document is forever barred, estopped and permanently enjoined from (a) asserting against the Debtors or New GM, their successors or assigns, or their respective property, any default or event of default, or any claim on account of any default or event of default, which default or event of default arose prior to, exists as of the date of, or arises as a proximate consequence of, the assumptions and assignments authorized hereby, (b) asserting against New GM any counterclaim, defense or setoff, or (c) imposing or charging against the Debtors, New GM, or their affiliates any accelerations, assignment fees, increases or other fees as a result of any pre-existing default or event of default or the assumptions and assignments authorized hereby

ORDERED that all of the assumptions and assignments authorized hereby shall occur simultaneously and the effectiveness of each shall be contingent on the effectiveness of all; and it is further

ORDERED that the assumptions and assignments authorized hereby shall not be effective until this Order has become final and non-appealable; provided, however, that New GM and the respective Counterparties may elect to waive the condition that this Order has become final and non-appealable; and it is further

ORDERED that if this Order shall not be appealed, the assumptions and assignments authorized hereby shall become effective on the eleventh day following the entry of this Order (or such earlier day as New GM and the Counterparties may elect); and it is further

ORDERED that upon the effectiveness of the assumptions and assignments authorized hereby, the Debtors shall forever be released from any and all liability and claims under the Lessee Lease Documents; and it is further

ORDERED that the payment of the Cure Amounts, and any Additional Cure Amounts shall be obligations of New GM; and it is further

ORDERED that upon the effectiveness of the assumptions and assignments authorized hereby, the Letter Agreements shall be fully effective and binding obligations of the parties thereto; and it is further

ORDERED that notwithstanding the foregoing, (i) any party (other than the Owner Participants) claiming the right under any of the Lessee Lease Documents to indemnity for legal fees and expenses incurred prior to the date the assumptions and assignments become effective as an Additional Cure Amount, and (ii) any party claiming the right to payment for any amounts coming due after October 15, 2009 but prior to the date the assumptions and assignments contemplated hereby become effective as an Additional Cure Amount, shall be entitled to request such indemnification from New GM in writing on or before the later of December 15, 2009 or the date which is 30 days after this Order becomes final and non-appealable.  If and to the extent New GM fails to honor any such request within ten (10) business days, such party may seek by motion an order of this Court authorizing payment of any such Additional Cure Amounts as against New GM; and it is further

ORDERED that New GM shall be responsible for any Additional Cure Amounts so authorized as provided herein; and it is further

ORDERED that regardless of whether such tax has accrued prior to or after the date on which the assumptions contemplated hereby become effective, nothing herein shall prohibit any party to the Lessee Lease Documents from seeking indemnification for the Michigan Business Tax from New GM, and New GM shall be liable for such indemnification to

the extent the Lessee under the Lessee Lease Documents is liable for such indemnification under

the terms of the Lessee Lease Documents; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: _____, 2009
         New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit I</u>**

|   | Lease Number | Lessee Lease Documents Assumed | Cure Amount |
|---|---|---|---|
| 1 | GM 1991A-3 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement<br>Pass Through Trust Agreement 1991A-1<br>Pass Through Trust Agreement 1991A-2<br>Purchase Option Agency Agreement<br>County Lease Rights Assignment | $21,504,025.54 |
| 2 | GM 2000A-1 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement<br>Pass Through Trust Agreement | $2,154,802.36 |
|   | GM 2001A-3 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $226,752.80 |
|   | GM 2001A-4 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $161,422 |
|   | GM 2001A-5 | Participation Agreement<br>Lease (together with Lease Supplement)<br>Tax Indemnity Agreement | $3,570,510.87 |

**Exhibit II**

| | Lease Number | Lessee Lease Documents Assumed | Cure Amount |
|---|---|---|---|
| 1 | GM 2002A-1 | Participation Agreement Lease (together with Lease Supplement) Tax Indemnity Agreement | $59,788.73 |
| 2 | GM 2002A-2 | Participation Agreement Lease (together with Lease Supplement) Tax Indemnity Agreement | $73,844.44 |