# LIMITED OBJECTION OF
# LINDEN DEVELOPMENT, LLC

# EXHIBIT F

THIS INSTRUMENT PREPARED BY:

Lowe, Fell & Skogg, LLC
370 Seventeenth Street
Suite 4900
Denver, Colorado 80202
By: [signature]
Name: DAVID FELL

**DEED**

STATE OF NEW JERSEY )
) ss. KNOW ALL PERSONS BY THESE PRESENTS:
COUNTY OF UNION )

THIS DEED ("Deed"), is made on December 19, 2008, between GENERAL MOTORS CORPORATION, a Delaware corporation, whose address is c/o Worldwide Real Estate, 200 Renaissance Center, Mail Code: 482-B38-C96, P.O. Box 200, Detroit, Michigan 48265-2000, referred to as the "Grantor", and LINDEN DEVELOPMENT, LLC, a New Jersey limited liability company, whose address is c/o Duke Realty Corporation, 5600 Blazer Parkway, Suite 100, Dublin, Ohio 43017, referred to as the "Grantee."

**Transfer of Ownership.** Grantor grants and conveys (transfers ownership of) the property ("Property"), described below to Grantee. This transfer is made for the sum of One Million Five Hundred Thousand and No/100 ($1,500,000.00). The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15.1) City of Linden, County of Union, Block 470, Lot 7.1.

**Property.** The Property consists of the land and all the buildings and structures on the land in the City of Linden, County of Union and State of New Jersey. The legal description for the Property is attached hereto as Exhibit A.

**Promises by Grantor.** Grantor promises that Grantor has done no act to encumber the Property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that Grantor has not allowed anyone else to obtain any legal rights that affect the Property (such as by making a mortgage or allowing a judgment to be entered against Grantor).

**Deed Restriction.** Notwithstanding anything to the contrary, Grantee takes the Property subject to the following restrictions, which restrictions shall run with the Property and bind Grantee, its successors and assigns:

(i) Grantee acknowledges and agrees that Grantee shall, at all times, comply with any and all applicable federal, state, or local environmental laws, regulations, ordinances, codes,

guidelines, or administrative orders, including any and all permits, licenses, or authorizations issued thereunder, including, but not limited to, any and all due care requirements under New Jersey law and all Federal and State requirements/guidelines (collectively "Environmental Laws"), in connection with or related to the use, operations, development, excavation, (including off-site disposal of site soils and the mitigation of vapor intrusion with respect to the remediation/redevelopment of the Property) grading, construction, or demolition, at, in, on, or below the Property. Grantee, its successors and assigns shall be solely responsible and liable for any and all issues related to the migration of water within the Property and off of the Property. Grantee, its successors and assigns shall be solely responsible and liable for any and all alleged or actual violations of any applicable Environmental Laws concerning or related to the Property.

(ii) Grantee acknowledges and agrees that use of groundwater at, in, or under the Property by any person or entity for any purpose, including potable and non-potable uses, shall be strictly prohibited.

(iii) Grantee represents, acknowledges, and agrees that, at Closing, the Property may contain various discarded materials, including, but not limited to, building materials from demolition activities; domestic and industrial trash; tires; automotive parts; used containers which held materials such as paint, antifreeze, gasoline, and other chemical substances; materials painted with lead-based paints or otherwise, wood, concrete, brick, and floorblock; and building materials which may contain asbestos-containing materials, and roof shingles (these discarded materials are herein collectively referred to as "Debris"). Grantee acknowledges and agrees that Grantee, and not Grantor, shall be solely liable and responsible for such Debris and all matters relating thereto, including the proper management and disposal of such Debris. By way of example, but not limitation, Grantee shall comply with all guidance/policy directives of the New Jersey Department of Environmental Protection ("NJDEP") regarding the recycling/re-use of concrete waste generated by demolition of buildings located on the property. Grantee further represents, acknowledges, and agrees that any and all soil and/or Debris management and surface water and/or groundwater management required or necessary under applicable laws or regulations or because of excavation, demolition, or soil disturbance related to the use, operations, development, excavation, grading, construction, or demolition, at, in, on, or below the Property is the sole obligation and liability of Grantee. Such soil and/or Debris management and surface water and/or groundwater management may include in-place management, excavation, sediment and erosion control, and disposal or other soil and Debris management options which are allowed or required under applicable Environmental Laws.

(iv) Grantee covenants and agrees that it shall not "treat," "store" or "dispose" of any "hazardous substances," "hazardous wastes" or "toxic substances" as those terms are defined under CERCLA, 42 U.S.C. 9601 et. seq., RCRA, 42 U.S.C. 6901 et. seq., or TSCA, 15 U.S.C. 2601 et. seq., or under similar New Jersey law, statute, or regulation, on, at, or below the Property, and shall maintain generator-only status; provided, however, that Grantee may (A) accumulate such substances or wastes as allowed under applicable Environmental Laws for off-site treatment, off-site storage, or off-site disposal, and (B) use and/or store commercial products on-site which may contain such substances.

(v) Grantee acknowledges and agrees that the Property may only be used by Grantee, its successors, assigns, and tenants for industrial and commercial uses except as otherwise permitted in subparagraph (viii) below. Such prohibited uses include, but are not limited to, residential uses, day care centers, schools, hospitals, and long-term care facilities or other similar uses that would typically require cleanup to unrestricted use standards under applicable New Jersey law. Grantee further acknowledges and agrees that any site modifications or

redevelopment limitations required at, in, on, or below the Property or modification to building design or construction to accommodate allowable industrial and commercial uses (and residential uses if permitted by Grantor) hereunder consistent with Environmental Laws, remedial systems on the Property of any kind, or otherwise, is the sole obligation and liability of Grantee (or the owner of the Property at the time of such activities) and will be conducted at Grantee's sole expense.

(vi) Grantee acknowledges and agrees that, at Closing, the Property may contain underground process or utility lines or piping, including, without limitation, sanitary or storm sewers and gas, water, electrical, fire protection and septic systems, and any other similar utility lines or piping which may be present at or below the Property (herein collectively referred to as "Utility Lines"). Grantee further acknowledges and agrees that Grantee, and not Grantor, shall be solely liable and responsible for such Utility Lines and all matters relating thereto. Further, Grantee acknowledges and agrees that any and all management, including, but not limited to, maintenance, removal, repair, or associated cleanup of the environment, of or due to any such Utility Lines that may be required or necessary: (a) under applicable Environmental Laws or other laws or regulations, (b) to properly maintain the Property, or (c) because of excavation, demolition, or soil disturbance related to future use, development, or construction at or of the Property, is the sole obligation and liability of Grantee or the owner of the Property at the time of such activities.

(vii) In the event (a) Grantor is notified by United States Environmental Protection Agency (the "USEPA"), NJDEP, any other local, state or federal agency or governmental entity or any other third party (that has a right or standing under applicable law to compel or seek any action) that Grantee has failed (or Grantor becomes aware of any such failure) to complete any Response Activities (as defined below) with respect to the Property in accordance with the foregoing, the Orders (as defined below) or any applicable law, and (b) Grantor is required by USEPA, NJDEP, any other local, state or federal agency or governmental entity or any other third party (that has a right or standing under the applicable law to compel or seek any action) to take any Response Activities with respect to the Property in accordance with this Deed, and (c) Grantee fails, within sixty (60) days (or such shorter time period as required by USEPA, NJDEP, any other local, state or federal agency or governmental entity or such other third party) after the date Grantee receives a default notice from Grantor or USEPA, NJDEP, or otherwise, to either complete such Response Activities in accordance with this Deed, the Orders or any applicable law, or notify Grantor and USEPA, NJDEP, or other state agency that Grantee is contesting such default notice, Grantor shall be entitled to, but shall not be obligated to, complete such Response Activities at Grantee's sole cost and expense. Notwithstanding the foregoing, if Grantee elects to contest such default notice, Grantee shall promptly provide Grantor with reasonable evidence of the basis for such objection and shall indemnify, defend (with counsel reasonably acceptable to Grantor) and hold Grantor, each affiliate of Grantor, and their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors and assigns harmless from and against any and all claims, including without limitation, any and all costs, liability, damages, penalties, causes of action, judgments and expenses, including, without limitation, reasonable attorneys' fees and costs, arising out of or related to Grantee's contest. Grantee shall deliver to Grantor all default notices received by Grantee from USEPA, NJDEP, or any other local, state or federal agency or governmental entity relating to any remediation action with respect to the Property in accordance with this Deed, the Orders or any applicable law. If, following the procedures set forth above, (a) Grantor is required to take such action to cure Grantee's failure as described above, or (b) the USEPA, NJDEP, or any other local, state or federal agency or governmental entity requires Grantor to reimburse USEPA, NJDEP, or any other local, state or federal agency or governmental entity for any

amounts relating to Grantee's operations at or remediation of the Property, Grantee shall, within ten (10) business days after receipt of an invoice from Grantor, reimburse Grantor for all costs and expenses or other payments incurred by Grantor, by wire transfer to an account designated by Grantor. Grantor hereby reserves unto itself, its representatives, contractors, and assigns, the right of access to, and an easement to and over, the Property to enter the Property with persons and such equipment as determined necessary in Grantor's sole discretion and judgment to complete Grantee's obligations under this Deed, the Orders or any applicable law, and to implement the remediation and corrective actions required thereunder, subject to the terms of subparagraph (vi) above. For purposes of this subparagraph (vii), (a) "Response Activities" shall mean Purchaser's agreement to undertake cleanup, remediation, investigation, sampling, monitoring, inspection, evaluation, construction, installation, operation and maintenance of any remedial systems installed at, in, on, or in connection with the Property, and make all filings associated therewith (including but not limited to Deed Notices and Classification Exception Areas) and undertake periodic assessments and/or certifications regarding the continued protectiveness of the environmental remediation required to be taken by Purchaser relating to the environmental conditions on, under, in, or migrating from the Property pursuant to and in accordance with all Environmental Laws, the Orders, and any other corrective action agreement entered into by Purchaser and USEPA, NJDEP or any other governmental agency, and any subsequent agreements or orders entered into with or issued by USEPA, NJDEP or other governmental agencies related to the Property, at Purchaser's sole cost and expense; and (b) "Order" shall mean any agreement to complete the Response Activities with respect to the Property.

**(Signature page follows)**

**Signatures**. This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page.

ATTESTED BY:

GENERAL MOTORS COPORATION, a Delaware corporation

By: [signature]
Name: FRED ZEHNDER
Title: SENIOR PROJECT MANAGER

By: [signature]
Name: DEBRA HOMIC HOGE
Title: DIRECTOR
WORLDWIDE REAL ESTATE

STATE OF MICHIGAN )
) ss.
COUNTY OF WAYNE )

I CERTIFY that on December 16th 2008, Debra H Hoge personally came before me and stated to my satisfaction that this person

(a) was the maker of the attached Deed;

(b) was authorized to and did execute this deed as DiRector-WRE of General Motors Corporation the entity named in this Deed; and

(c) made this Deed for $ 1,500,000.00 as the full and actual consideration paid or to be paid for the transfer of title (such consideration is defined in N.J.S.A. 46:15-5); and

(d) executed this instrument as the act of the entity named in this Deed.

Signed and sworn to before me on December 16th, 2008.

[signature]
NOTARY PUBLIC

MICHELLE LEE MANETTA
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Sep 11, 2014
ACTING IN COUNTY OF Wayne

WHEN RECORDED RETURN TO:

Elizabeth C. Belden, Esq.
Vice President, Corporate Counsel
& Assistant Secretary
Linden Development, LLC, a New Jersey limited liability company
3950 Shackleford Road, Suite 300
Duluth, Georgia 30096

SEND SUBSEQUENT TAX BILL TO:

Real Estate Tax Advisors LLC, P. O. Box 40509, Indianapolis, IN 46240

**EXHIBIT A TO DEED**

**LEGAL DESCRIPTION**

BEGINNING at a point in the southwesterly sideline of Pleasant Street (60 feet wide), where said sideline is intersected by the common boundary line between said Lot 7.1 in block 470 and Lot 6, Block 470, said point also being South 45 degrees 35 minutes 45 seconds East, 66.00 feet along said sideline from its intersection with the northwesterly sideline of Linden Avenue (66 feet wide); thence

1. Along said common boundary line between Lot 7.1 and 6 in Block 470, South 38 degrees 08 minutes 00 seconds West, 263.39 feet to a point on the common boundary line of said Lot 62 in Block 470; thence
2. Along the common boundary line between said lots 7.1 and 62 in Block 470, along an arc curving to the left having a radius of 453.34 feet and a chord bearing of South 36 degrees 10 minutes 18 seconds East, 245.27 feet, an arc length of 248.37 feet to a point in same; thence
3. Still along the said common boundary line between Lots 7.1 and 62 in Block 470, South 51 degrees 52 minutes 00 seconds East, 109.38 feet to a point on the common boundary line of said Lots 7.1 and 62 in Block 470 and Lot 7.2 in Block 470; thence
4. Along the common boundary line between said Lots 7.1 and 7.2 in Block 470, North 38 degrees 08 minutes 00 seconds East 329.75 feet to a point in the aforementioned southwesterly sideline of Pleasant Street; thence
5. Along said southwesterly sideline of Pleasant Street, North 51 degrees 52 minutes 00 seconds West, 345.51 feet to the POINT AND PLACE OF BEGINNING.

**EXHIBIT B TO DEED**
**Permitted Exceptions**

1. 2009 taxes, a lien not yet due and payable.

2. Slope and Drainage Rights to the State of New Jersey as set forth in Deed Book 1186, page 75; affect, if any.

3. Reservation and reversionary rights as set forth in Deed Book 1330, page 005.

4. Terms, conditions, restrictions and other provisions as recorded in Deed Book 1292, page 196; which said terms, conditions, restrictions and other provisions were modified by Agreement as recorded in Deed Book 1328, page 482; and further modified by Agreement as recorded in Deed Book 1835, page 321; and further modified by Agreement as recorded in Deed Book 2269, page 55; and further modified by Agreement as recorded in Deed Book 2416, page 288.

5. Terms and conditions of Agreement for a 36' water line easement as recorded in Deed Book 2259, page 231; as shown on survey prepared by U.S. Surveyor, PLS, dated September 20, 2007, revised on February 29, 2008.

6. Easement for a 15' wide Gas Line as recorded in Deed Book 4731, page 209; as shown on survey prepared by U.S. Surveyor, PLS, dated September 20, 2007, revised on February 29, 2008.

7. Rights of utility companies in and to poles located on and wires crossing subject premises; as shown on survey prepared by U.S. Surveyor, PLS, dated September 20, 2007, revised on February 29, 2008.

8. Terms and conditions of Remediation Agreement set forth in Deed Book 5692, page 634.

9. Deed Notice dated June 16, 2008, recorded June 23, 2008 in the Union County Clerk's Office in Book 5717, page 267, Instrument # 196189; and re-recorded on July 1, 2008 in Book 5719, page 310, Instrument #196530.

10. Easement to Elizabethtown Gas Company as set forth in Deed Book 4862, page 237 and Deed Book 4884, page 259.

11. Restrictions as set forth in Deed Book 4563 page 31 and re-recorded in Deed Book 4595, page 13.