1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


MOTORS LIQUIDATION COMPANY, et al.,

f/k/a General Motors Corp., et al.,


          Debtors.


- - - - - - - - - - - - - - - - - - - - -x


              U.S. Bankruptcy Court

              One Bowling Green

              New York, New York


              October 28, 2009

              9:50 AM


B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1

2      Hearing re:  Application for an Order Pursuant to Sections

3      327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule

4      2014(a) Authorizing the Employment and Retention of Evercore

5      Group L.L.C. as Investment Banker and Financial Advisor for the

6      Debtors Nunc Pro Tunc to the Petition Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Transcribed By:  Hana Copperman

25

```
                                                            3
 1

 2    A P P E A R A N C E S :

 3    WEIL, GOTSHAL & MANGES LLP

 4          Attorneys for Debtors

 5          767 Fifth Avenue

 6          New York, NY 10153

 7

 8    BY:   STEPHEN KAROTKIN, ESQ.

 9

10

11    EVERCORE PARTNERS

12    EVERCORE GROUP L.L.C.

13          55 East 52nd Street

14          New York, NY 10055

15

16    BY:   WILLIAM C. REPKO

17

18

19    KRAMER LEVIN NAFTALIS & FRANKEL LLP

20          Attorneys for Official Unsecured Creditors Committee

21          1177 Avenue of the Americas

22          New York, NY 10036

23

24    BY:   THOMAS MOERS MAYER, ESQ.

25
```

4

1

2    UNITED STATES DEPARTMENT OF JUSTICE

3         Office of the United States Trustee

4         33 Whitehall Street

5         21st Floor

6         New York, NY 10004

7

8    BY:   BRIAN S. MASUMOTO, ESQ.

9

10

11   UNITED STATES DEPARTMENT OF JUSTICE

12        U.S. Attorney's Office

13        86 Chambers Street

14        New York, NY 10007

15

16   BY:   DAVID S. JONES, AUSA

17

18

19

20

21

22

23

24

25

5

1                    P R O C E E D I N G S

2            THE COURT:  GM.  I think I know everybody.  I'm not

3    going to take up the time for appearances.  Mr. Karotkin,

4    you're going to take the lead?

5            MR. KAROTKIN:  Yes, sir.

6            THE COURT:  Good.

7            MR. KAROTKIN:  Good morning, sir.  Stephen Karotkin,

8    Weil, Gotshal & Manges, for Motors Liquidation Company and its

9    affiliated debtors.  Your Honor, there's only one matter on the

10   calendar this morning, and that is the adjourned hearing with

11   respect to the debtors' application to retain and employ

12   Evercore Group as investment banker and financial advisor.

13           Originally, Your Honor, there were four objections

14   filed to the application, one of which has since been

15   withdrawn.  And, as the Court is aware, this matter has been

16   adjourned from time to time, during which period, Your Honor,

17   the debtors have had various meetings with the representatives

18   of the unsecured creditors' committee, as well as with the

19   Office of the United States Trustee, in an effort to resolve

20   the objections which they asserted.

21           I'm pleased to say, Your Honor, that these efforts

22   have resulted in a resolution of the objections, which have

23   been embodied in a proposed order which we have filed and which

24   has been consented to by all of the objecting parties.  And on

25   October 8th, Your Honor, we served a notice of the proposed

6

1    order, the resolution, and that a hearing would be held today

2    before Your Honor to consider that proposed order and the

3    resolution of the objections.  And a copy of the proposed

4    order, Your Honor, was served on all interested parties

5    together with that notice, and, as I mentioned, notice of the

6    hearing to be held today.

7         The proposed order is self-explanatory, but if you

8    would like I can quickly summarize the pertinent provisions for

9    the record.

10        THE COURT:  Please do that.

11        MR. KAROTKIN:  First, Your Honor, the retention of

12   Evercore is authorized as of the date of the commencement of

13   these cases, which was June 1, 2009.  And notwithstanding the

14   terms of compensation set forth in Evercore's retention letter,

15   what is called the 363 transaction fee as defined in the

16   application and their retention, payable to Evercore, shall be

17   paid in accordance with the terms set forth in the order rather

18   than in the terms of the engagement letter.  And that is, Your

19   Honor, that two thirds of that amount or 8,667,000 dollars

20   would be payable on entry of the proposed order, with the

21   balance of 4.33 million dollars payable on confirmation of a

22   plan of reorganization in the Chapter 11 case of Motors

23   Liquidation Company, which plan provides that holders of

24   allowed unsecured claims will receive the stock and warrants of

25   New General Motors, New GM, paid in connection with the 363

7

1   sale, and further provides, Your Honor, that there are

2   sufficient assets to pay allowed administrative and priority

3   claims under the plan without the necessity of selling or

4   affecting the stock and warrants which would otherwise be

5   distributable to the unsecured creditors.  The obvious intent

6   being, Your Honor, that the balance would not be payable unless

7   it was clear that the stock and warrants would not have to be

8   invaded to pay that amount.

9        Evercore, the order further provides, shall be paid

10  its debtor-in-possession structuring fee and monthly retention

11  fees, aggregating approximately, for both of those items,

12  3,329,000 dollars (3.3 million 29,000 dollars), and that would

13  be paid on entry of the proposed order.  And the order also

14  expressly states that the U.S. Trustee retains all rights to

15  object to Evercore's final fee application on all grounds,

16  including the reasonableness standard set forth in Section 330

17  of the Bankruptcy Code, notwithstanding, Your Honor, that the

18  retention is under Section 328(a).

19       As I stated, the order has been signed off on by both

20  the Office of the United States Trustee, by the unsecured

21  creditors' committee's counsel, and the other objecting party,

22  Your Honor, the ad hoc committee of personal injury claimants,

23  also has agreed to the express terms set forth in the proposed

24  order which we have filed.

25       I would like to note for the record, Your Honor,

8

1     unless you have any other questions, I'd just like to briefly

2     summarize the services rendered by Evercore.

3          THE COURT:  Continue, please, Mr. Karotkin.

4          MR. KAROTKIN:  Thank you, sir.  There were a number of

5     critical services that were performed by Evercore over the

6     period that Evercore was retained by the debtors, which we

7     believe justifies the compensation set forth in the proposed

8     order.  The 363 transaction, Your Honor, which, as you yourself

9     noted, was key to preserving value for these estates and the

10    enterprise and for the communities in which General Motors

11    operated, was really the culmination of a twelve month effort.

12    It was not something that occurred in two months.  It, really,

13    the process began back a year before the filing of the Chapter

14    11 cases, in June of 2008, when Evercore was first retained.

15    So the retention of Evercore really did last over an entire

16    period of a year, commencing in June, 2008, at which time

17    Evercore dedicated a substantial core group of professionals to

18    the exercising -- in fact, over the twelve month period twelve

19    senior professionals at Evercore devoted virtually all of their

20    time to representing the interests of the debtors in connection

21    with their various efforts at restructuring, trying to find new

22    capital, determining whether there were other strategic

23    transactions, advising the board, interfacing with the

24    government and really engaging in many other activities on

25    behalf of the debtors.

9

1          I will say, Your Honor, that when Evercore first

2     started its engagement it did a comprehensive analysis of the

3     debtors' financial condition, its capital structure and its

4     strategic alternatives, and, beginning in June of 2008 when the

5     retention ensued, Evercore initially advised the debtors on

6     their liquidity situation, the seriousness of that situation,

7     and the potential access to the public markets, at that time,

8     to address that situation, which, of course, was not available.

9          In July, 2008, Your Honor, Evercore explored with the

10    debtors the potential of doing a secured financing transaction,

11    analyzed the capital structure, what would be available to

12    pledge as collateral in connection with that type of

13    transaction and what could support that type of financing, and,

14    of course, reached the conclusion that that alternative was not

15    available in sufficient amount to generate the capital and

16    financing necessary to support the company going forward.

17         In the fall of 2008, Your Honor, Evercore played a key

18    role in managing the process as to whether there could be a

19    potential M&A transaction with either Chrysler or another OEM,

20    an original equipment manufacturer, in evaluating other

21    strategic alternatives.  And, of course, as you know, none of

22    those potential transactions was able to be effected within the

23    time period necessary.

24         Also beginning in the fall of 2008 Evercore played a

25    critical role on behalf of the company in interfacing with the

10

1    federal government.  Evercore had a vital role in the

2    submissions to the government of what were known as the

3    viability plans and was critical, Your Honor, in the ability of

4    the debtors in December of 2008 to secure approximately 13.4

5    billion dollars in a bridge loan when the debtors were

6    virtually out of cash.  That financing was by no means assured.

7    It was not a fait accompli.  And securing that financing, in

8    which Evercore played a critical role, was key to enabling the

9    company to survive past December 31, 2008 into 2009, and,

10   really, bridge to what ultimately came to the 363 transaction

11   approved in early July of this year.

12         In fact, Evercore's financial model, which it helped

13   General Motors develop, update, bring into the twentieth

14   century, was really the foundation for all of the viability

15   plans moving forward with the government and the projections

16   that were the foundation for all of the financial analysis that

17   was done in 2008 and 2009 and, again, which was instrumental in

18   achieving this 363 transaction, sizing the loan, sizing the DIP

19   loan as well as the other TARP loans that were made in 2008.

20         During the first three or four months of 2009 Evercore

21   had an expanded role in the review and submission of the

22   viability plans to the U.S. Treasury and advised the company on

23   the structuring, the negotiation and documentation of the

24   exchange offer which was made to the bondholders in April and

25   May of 2009.  And in addition to that, Your Honor, as you may

11

1   recall there was an ad hoc committee of bondholders that formed

2   in connection with the restructuring of General Motors which

3   retained its own professionals, including the Paul, Weiss firm

4   as well as Houlihan Lokey.  Evercore interfaced with the

5   Houlihan firm, updating them on the financial condition of the

6   company, providing them with the information necessary to help

7   the bondholders make their own analysis of what was appropriate

8   for the restructuring of this company, and, ultimately, working

9   with Houlihan and providing them the analysis and information

10  which led to Houlihan and that ad hoc committee reaching a

11  consensus with both the company and the United States

12  government which led to the successful 363 transaction.  And

13  Evercore was key and critical in that due diligence effort

14  which enabled and helped the ad hoc committee of bondholders

15  reach the conclusion which facilitated the 363 sale.

16          I would also add that during this period Evercore

17  again played a critical role with respect to the debtors'

18  operations in Canada and the other international operations,

19  both in Europe as well as in Asia and the Pacific region.

20  Again, dealing with the issues that arose in connection with

21  the same type of financial problems that they had and, more

22  importantly, Your Honor, dealing with the United States

23  government in helping them analyze those issues, understand the

24  operations in Europe and Asia and understanding the importance

25  of those operations to the viability of the United States

12

1    operations in terms of the technological support that came from

2    overseas and why it was critical to sustain those operations as

3    well.

4         Evercore advised the board of directors of General

5    Motors on a regular basis during the entire process with

6    respect to various strategic alternatives, what could be

7    achievable, what could not be achievable, and, of course, as

8    Your Honor well knows, provided the board with a fairness

9    opinion with respect to the 363 transaction, enabling and

10   helping them to reach the decisions that they did in approving

11   the transaction and preserving the value for the various

12   stakeholders in this case.

13        Your Honor also, I am sure, recalls that Evercore

14   testified at the 363 hearing with respect to those activities

15   as well as its activities in connection with seeking debtor-in-

16   possession financing, sizing the debtor-in-possession

17   financing, formulating the terms, and dealing with the United

18   States government on the budget for that financing, the size of

19   that financing and also negotiating with the company the terms

20   and provisions of that financing.

21        Despite what a lot of people think, Your Honor, the

22   363 transaction with the government was not a foregone

23   conclusion either in the spring of 2009 or when this company

24   had entered Chapter 11 on June 1st of 2009.  An enormous amount

25   of work was done in the months preceding the commencement of

13

1    these cases to help the government understand the business,

2    understand the operations, understand the financial condition

3    and the financial need.  The government, like any other

4    purchaser, has to do due diligence in connection with this

5    proposed transaction to purchase the enterprise of General

6    Motors.  And, more importantly, Your Honor, that had to be done

7    under a very, very accelerated time frame, and without the

8    support and involvement of Evercore in dealing with the

9    government, helping them in their due diligence effort,

10   providing the financial information and helping the government

11   understand the vast worldwide operations, in our view that

12   transaction would have never occurred in the timely manner that

13   it did occur and thereby avoiding the value erosion, the

14   revenue erosion that would have otherwise occurred had this

15   been -- again, as you noted yourself, Your Honor, in your

16   opinion, a protracted Chapter 11 case.  And we believe that

17   Evercore's services over that entire twelve-month period

18   facilitated the expeditious conclusion of the 363 sale, which

19   preserved enormous value for the benefit of stakeholders.

20         And on that basis we believe that the compensation

21   provided for in the order is appropriate.  I would point out,

22   Your Honor, that their services were not duplicative of the

23   services rendered by AlixPartners.  AlixPartners, as we've

24   indicated in various pleadings, was involved more on the

25   operational side, the cost-saving side, helping the company run

14

1    the business, and, of course, during their Chapter 11 running

2    Motors Liquidation, the liquidation of the remaining assets,

3    and, again, importantly, Your Honor, the fee structure that was

4    provided for in the Evercore retention letter was agreed to and

5    negotiated with the United States government, the DIP

6    financing, the provider of the DIP financing, and, of course,

7    is contemplated in the wind down budget.

8           And, again, on that basis and, particularly, in view

9    of the fact, Your Honor, that the objections have been resolved

10   and the objecting parties have consented to this order, we

11   would request that the Court approve it.

12          THE COURT:  All right.  Thank you.  I'll permit the

13   creditors' committee, the U.S. Attorney's Office and the U.S.

14   Trustee to be heard if any wishes to.

15          MR. JONES:  Thank you, Your Honor.  David Jones from

16   the U.S. Attorney's Office, Southern District of New York, for

17   the United States.  I won't speak in any length, but I do want

18   just to confirm for the record that the United States has no

19   objection to the retention as described by Mr. Karotkin.

20          THE COURT:  Fair enough.  Mr. Mayer?

21          MR. MAYER:  Thank you, Your Honor.  As Mr. Karotkin

22   indicated, the committee originally filed an objection to the

23   Evercore fees, and we come here today having withdrawn that

24   objection.  We helped to negotiate a settlement after a

25   considerable process that included numerous rounds of

1    negotiations with Evercore, a presentation by Evercore on

2    September 2 to the committee in which Evercore went into the

3    work that it had done, an analysis by the committee's financial

4    advisor, FTI, of the Evercore fees in comparison to fees by

5    other investment bankers.

6         And the committee comes to the point where it

7    withdraws its objection on the following grounds.  First, as we

8    are repeatedly told, to the extent there is cash left over in

9    this estate it does not go to unsecured creditors.  It goes

10   back to the government.  Therefore, our sole objective with

11   respect to this and other matters that come before the Court

12   involving the payment of monies is to make sure, to the extent

13   we can, that the budget that has been provided for the funding

14   of these estates is sufficient to pay all administrative

15   expense and priority claims such that the equity securities of

16   New GM that have been deposited with Old GM remain available

17   for distribution to unsecured creditors.  That is the essence

18   of the deal that Evercore helped the debtors negotiate with the

19   ad hoc committee of bondholders.

20        I pause for the moment to make sure the record is very

21   clear.  There are a lot of different bondholder committees that

22   come before this Court.  There was a committee of small

23   bondholders that showed up to contest the sale.  That's not the

24   committee we're talking about.  We're talking about a committee

25   that did not, I believe, appear in the bankruptcy case, but,

16

1    nonetheless --

2         THE COURT:  But that was represented by Paul, Weiss.

3         MR. MAYER:  That's correct.  The Paul, Weiss committee

4    was the one that cut this deal, and we are stewards at the

5    official committee.  We are stewards of the deal that Paul,

6    Weiss cut.  And that deal is very simple.  We get the

7    securities.  The government gets the cash.  Now, there is

8    supposed to be enough cash in the estate to pay for the

9    expenses so that unsecured creditors get the securities they've

10   been promised.  And we believe that the accommodations reached

11   with Evercore accomplish that goal, and we take some comfort in

12   the U.S. Trustee's ability to reexamine the fees if it turns

13   out that any of these assumptions have proved unwarranted, and

14   on that basis we have withdrawn our objection.

15        THE COURT:  Very well.  Thank you.  Mr. Masumoto?

16        MR. MASUMOTO:  Good morning, Your Honor.  Brian

17   Masumoto for the Office of the United States Trustee.  Your

18   Honor, as indicated by the private counsel this deal was

19   heavily negotiated by various constituencies.  Our office had a

20   number of discussions, both with the committee and with the

21   debtor and Evercore, regarding the current modifications to the

22   original retention order, and based upon those modifications we

23   have no objection to the current proposed order.

24        THE COURT:  Very well.  Folks, I'm ratifying and

25   approving the settlement vis-à-vis the terms of the Evercore

17

1    retention, and, accordingly, approving the underlying retention

2    and the disbursements in accordance with the understanding you

3    all reached.  And the following are the bases for the exercise

4    of my discretion in this regard.

5         Obviously we are talking about a lot of money here,

6    and for that reason I welcomed the dialogue that took place

7    amongst all of you to engage in the due diligence necessary to

8    assure that Evercore provided services commensurate with the

9    fees it would receive and to ensure that unsecured creditors

10   got the benefit of the bargain they had struck, which was to

11   give the estate the administrative solvency it would need to

12   confirm a plan and to give the unsecured creditor community the

13   stock that was such an important element of its entitlement in

14   this case.

15        I had communicated informally with the parties, asking

16   that the services be fleshed out so that I, and the world, if

17   you will, would understand exactly that which was done, and

18   after hearing Mr. Karotkin I feel that my request was taken

19   seriously, was satisfied, and that he provided what I needed to

20   give me comfort that the money was, and would be, duly earned.

21        I also think that the terms that were negotiated by

22   the creditors' committee and by the U.S. Trustee's Office went

23   very far to give me the comfort I needed to ensure that

24   appropriate protections were put in place for the protection of

25   both creditors and the system.  And with parties having worked

18

1   to address my needs and concerns I am now, after what I

2   consider to be appropriate due diligence on my part, in a

3   position to approve the retention, as I said.  And I'm going to

4   ask you, Mr. Karotkin, to take the lead with appropriate

5   consultation with the creditors' committee, U.S. Attorney's

6   Office and U.S. Trustee's Office, to the extent that it hasn't

7   already been done, to give me an order in accordance with the

8   understanding that had been struck.

9         MR. KAROTKIN:  If Your Honor, please, the order that

10   we have submitted with the notice has been agreed to precisely

11   by the parties and it has.  And I have --

12         THE COURT:  It has already been --

13         MR. KAROTKIN:  Yes, sir.

14         THE COURT: -- fully vetted?

15         MR. KAROTKIN:  Fully vetted.  We did not submit it

16   until it was fully -- it was not noticed until it was fully

17   vetted and agreed to.

18         THE COURT:  Fair enough.  Then under those

19   circumstances you or your designee can drop it off in my

20   chambers across the hall as soon as we're done today.

21         MR. KAROTKIN:  I have it with me and I will do so.

22   Thank you, sir.

23         THE COURT:  All right.  Am I correct that we have no

24   further business today?

25         MR. KAROTKIN:  That is correct.

19

1          THE COURT:  All right.  We're adjourned.  Thank you

2    very much.

3          MR. KAROTKIN:  Thank you, sir.

4          MR. MAYER:  Thank you, Your Honor.

5       (Proceedings concluded at 10:12 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20

1

2                          I N D E X

3

4                          RULINGS

5                              Page      Line

6   Granting of Motion         16         24

7   Authorizing the Employment

8   and Retention of Evercore

9   Group L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21

1

2                          C E R T I F I C A T I O N

3

4        I, Hana Copperman, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        HANA COPPERMAN

9        AAERT Certified Electronic Transcriber (CET**D-487)

10

11       Veritext LLC

12       200 Old Country Road

13       Suite 580

14       Mineola, NY 11501

15

16       Date: October 29, 2009

17

18

19

20

21

22

23

24

25