Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :        09-50026 (REG)
      f/k/a General Motors Corp., et al.  :
                                    :
                    Debtors.        :        (Jointly Administered)
                                    :
------------------------------------------------------------x
```

### NOTICE OF HEARING ON MOTION OF DEBTORS
### FOR ENTRY OF ORDER PURSUANT TO FED. R. BANKR. P. 9019
### <u>APPROVING SETTLEMENT AGREEMENT AND COMPROMISE</u>

PLEASE TAKE NOTICE that upon the annexed Motion, dated November 3,

2009 (the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and

its affiliated debtors, as debtors in possession (the "**Debtors**"), for an order, pursuant to Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving the

settlement agreement (the "**Settlement Agreement**"), attached to the Motion as **Exhibit "A**,"

between MLC, GMAC Inc. ("**GMAC**"), General Motors, LLC (f/k/a General Motors Company)

("**New GM**"), and Bill Heard Enterprises Inc. and its twenty-three affiliates (collectively, the

"**Heard Debtors**"), as more fully set forth in the Motion, a hearing will be held before the

Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on **November 24**, **2009 at 9:45 a.m. (Eastern Time),** or as soon thereafter as

counsel may be heard.

          PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Detroit, Michigan

48265 (Attn:  Ted Stenger); (iii) General Motors, LLC, 300 Renaissance Center, Detroit,

Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft

LLP, attorneys for the United States Department of the Treasury, One World Financial Center,

New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of

the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, DC 20220 (Attn:

Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633

Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and

Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory

committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036

(Attn:  Adam C. Rogoff, Esq., Robert T. Schmidt, Esq., and Amy Caton, Esq.); (xii) the Office

of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st

Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); and (xiii) the U.S. Attorney's

Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S.

Jones, Esq. and Matthew L. Schwartz, Esq.), so as to be received no later than **November 17,**

**2009, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
      November 3, 2009

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                              :
**In re**                                      :         **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.*,      :         **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*   :
                                              :
           **Debtors.**          :         **(Jointly Administered)**
                                              :
------------------------------------------------------------------x

**MOTION OF DEBTORS FOR ENTRY**
**OF ORDER PURSUANT TO FED. R. BANKR. P. 9019**
**APPROVING SETTLEMENT AGREEMENT AND COMPROMISE**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

      Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

**Relief Requested**

      1.      Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), the Debtors request entry of an order (the " **Settlement Agreement**

**Order**") approving and ratifying that certain compromise and settlement agreement (the

"**Settlement Agreement**") between MLC, GMAC, Inc. ("**GMAC**"), General Motors, LLC (f/k/a

General Motors Company) ("**New GM**") and the Liquidating Trustee for Bill Heard Enterprises

Inc. and its twenty-three affiliates (collectively, the "**Heard Debtors**", and together with MLC,

GMAC and New GM, the "**Parties**").  The Settlement Agreement is attached hereto as **Exhibit**

**"A"** and the Settlement Agreement Order is attached hereto as **Exhibit "B"**.

       2.      Among other things, the Settlement Agreement sets forth the proposed

settlement and release of claims regarding the Heard Adversary Proceedings and the Escrow

Account Claims (all as defined and described below), and will result in a substantial recovery of

$1,875,000.00 for the Debtors and their estates.  The Settlement Agreement is a result of a

collaborative effort between the Debtors and the Unsecured Creditors Committee (the "**UCC**") in

these chapter 11 cases and is submitted to the Court for approval with the UCC's support and

consent.

## Jurisdiction

       3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

      A.      The Heard Bankruptcy Cases and Adversary Proceedings

       4.      On September 28, 2008, Bill Heard Enterprises, Inc., and it's twenty-

three affiliates filed a voluntary petition for relief under chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**") in the Unites States Bankruptcy Court for the Northern District

of Alabama, Northern Division (the "**Heard Bankruptcy Court**")[1].  Prior to the commencement

of their chapter 11 cases, the Heard Debtors owned and operated fourteen automobile dealerships

---

[1] *In re Bill Heard Enterprises, Inc. et al.*, Case No. 08-83029 (Bankr. N.D. Ala.) (JAC-11) (the "**Heard
Bankruptcy Cases**").

in seven states and were one of the largest General Motors Corporation ("**GM**") Chevrolet brand

dealers in the United States based upon the volume of GM vehicles sold.  Beginning in mid-

2007, the performance of the Heard Debtors' dealerships began to suffer and, ultimately, for a

variety of reasons, the Heard Debtors ceased operations at the dealerships on September 24,

2008.  The Heard Debtors are in the process of an orderly liquidation of their businesses, and

confirmed a plan of liquidation on October 14, 2009 (the "**Heard Plan**").  The distribution of

funds to MLC, New GM and GMAC pursuant to the terms of the Settlement Agreement is

contemplated as a component of the Heard Plan.[2]

   5.  On January 15, 2009, in connection with the Heard Bankruptcy Cases,

GMAC commenced an adversary proceeding styled *GMAC LLC v. Falcon Financial II, et al.*,

Adversary Proceeding No. 09-80009 (the "**Heard Main Adversary Proceeding**") in the Heard

Bankruptcy Court.  The Heard Main Adversary Proceeding was commenced to establish that

GMAC's security interest in the assets of the Heard Debtors is superior to any lien, security

interest or claim of various parties claiming a superior lien or security interest in such assets.

   6.  On May 2, 2009, in connection with the Heard Bankruptcy Cases,

GMAC commenced an adversary proceeding styled *GMAC LLC v General Motors Corporation*,

Adversary Proceeding No. 09-80055 (the "**GMAC Adversary Proceeding**") in the Heard

Bankruptcy Court.  The GMAC Adversary Proceeding was commenced to obtain: (1) turnover to

GMAC of specific funds held in escrow, consisting of the Parts' Proceeds (as defined below) and

other GMAC collateral, and (2) an injunction permanently enjoining GM from further debiting

---

[2] The Heard Debtors filed a similar 9019 motion (the "**Heard 9019 Motion**") seeking an order (the "**Heard Settlement Agreement Order**") approving and ratifying the Settlement Agreement in their chapter 11 cases, which is scheduled to be heard by the Heard Bankruptcy Court on November 4, 2009 (the "**Heard 9019 Hearing**").  The Heard Debtors do not expect opposition to the Heard 9019 Motion and anticipate the Heard Bankruptcy Court entering the Heard Settlement Agreement Order at the Heard 9019 Hearing.  The Debtors will fully update the Court on the Heard 9019 Hearing at the November 24, 2009 hearing to approve the Settlement Agreement.

or charging the dealership accounts of the Heard Debtors (the "**Heard Debtors' Open Accounts**") without first submitting appropriate documentation substantiating such debits and/or charges and obtaining authority from the Heard Bankruptcy Court.

7.      On May 22, 2009, in connection with the Heard Bankruptcy Cases, the Heard Debtors commenced an adversary proceeding styled *Bill Heard Chevrolet, Inc. – Scottsdale v General Motors Corporation,* Adversary Proceeding No. 09-80065 (the "**Heard Debtors Adversary Proceeding**", and together with the Heard Main Adversary Proceeding and the GMAC Adversary Proceeding, the "**Heard Adversary Proceedings"**) in the Heard Bankruptcy Court.  The Heard Debtors' Adversary Proceeding was commenced to obtain: (1) turnover of funds controlled by GM in the Heard Debtors' Open Accounts, (2) a finding that GM has wrongfully converted the funds in the Heard Debtors' Open Accounts, (3) a finding that GM has breached its Dealership Sales and Services Agreements (the "**Heard Dealer Agreements**") with the Heard Debtors and is responsible for damages calculated by the total amount of parts and accessories (collectively, the "**Parts' Proceeds**") that have been returned to GM and that GM has failed to reimburse the Heard Debtors pursuant to the Dealer Agreements, and (4) the Debtors are entitled to injunctive relief, enjoining GM from further charging or debiting the Heard Debtors' Open Accounts and requiring GM to reverse any and all post-petition charges or debits effected since the commencement of the Heard Bankruptcy Cases.

B.      The Escrow Account

8.      In connection with the Heard Adversary Proceedings (and prior to the commencement of MLC's chapter 11 cases), the Heard Bankruptcy Court ordered MLC to deposit into escrow the Parts Proceeds and certain Heard Open Accounts funds (the "**Escrow Account**").  The Heard Bankruptcy Court appointed the law firm of Adorno & Yoss LLP as escrow agent ("**A&Y**").  MLC deposited a total of $7,988,846.99 into the Escrow Account.

4

Pursuant to an Order of the Heard Bankruptcy Court, A&Y disbursed $2,138,604.36 of this

amount to Columbus Bank and Trust Company.  As of the date hereof, $5,850,242.63 plus

accrued interest remains in the Escrow Account.

9.      New GM, MLC, and GMAC each claim an interest in certain of the

funds in the Escrow Account (the "**Escrow Account Claims**").  MLC claims that some of the

funds transferred into the Escrow Account prior to the commencement of these chapter 11 cases

may be avoided pursuant to section 547 of the Bankruptcy Code.  On the other hand, GMAC

claims that any funds deposited in the Escrow Account by MLC were pursuant to an order by the

Heard Bankruptcy Court and are therefore not avoidable.[3]  New GM contends that the funds in

the Escrow Account, to the extent belonging to MLC, were purchased by New GM and are not

subject to a proper preference action that would have excluded such funds from the pool of

purchased assets.

C.      The Settlement Agreement

10.      Without any admission of liability by any party, the Parties have entered

into the Settlement Agreement, which fully disposes of all pending claims, cross-claims, and

counterclaims as well as any unasserted claims in the Heard Adversary Proceedings and provides

for certain distributions to MLC, New GM and GMAC in settlement of the Escrow Account

Claims.  Other confidential agreements between GMAC and New GM, which are part of the

Settlement Agreement, are represented by a separate letter agreement between those parties.

---

[3] In response to MLC's assertions, on October 5, 2009, GMAC filed an adversary proceeding styled *GMAC, Inc. v Motors Liquidation Company et. al.*, Adversary Proceeding No. 09-80120 (the "**GMAC/GM Adversary Proceeding**") against MLC and New GM in the Heard Bankruptcy Court.  The GMAC/GM Adversary Proceeding seeks a declaration by the Heard Bankruptcy Court that transfers made by MLC into the Escrow Account within 90 days of the commencement of their chapter 11 cases were pursuant to court order, and should therefore not be considered a voidable preference under section 547(b) of the Bankruptcy Code.  As discussed below, the GMAC/GM Adversary Proceeding will be voluntarily dismissed by GMAC pursuant to the terms of the Settlement Agreement.

11.     More specifically, the salient provisions of the Settlement Agreement are summarized as follows:

a.      In full and final satisfaction of any and all claims of MLC and New GM collectively arising under or related to the Heard Bankruptcy Cases, MLC and New GM will collectively receive a distribution in the amount of $2,500,000.00 to be paid from the Escrow Account (the "**GM Settlement Amount**").  The GM Settlement Amount will be divided between MLC and New GM, with MLC receiving $1,875,000.00 and New GM receiving $625,000.00.  The GM Settlement Amount will be disbursed to MLC and New GM upon the entry of the Heard Settlement Agreement Order, subject to possible disgorgement if this Court does not approve the Settlement Agreement Order.

b.      In full and final satisfaction of any and all claims of GMAC arising under or related to the Heard Bankruptcy Cases, GMAC will receive a distribution in the amount of $2,200,000.00 to be paid from the Escrow Account (the "**GMAC Settlement Amount**").  From the GMAC Settlement Amount, immediately after receipt, GMAC will remit to the Heard Debtors $246,000.00 in satisfaction of obligations under previously entered orders in the Heard Bankruptcy Cases.

c.      Any remaining funds held in the Escrow Account (including all accrued interest), after the payment of the GM Settlement Amount and the GMAC Settlement Amount, will be turned over to the Liquidating Trustee for the benefit of the Heard Debtors, to be held for distribution in accordance with the Heard Plan.

d.    The Settlement Agreement is not intended, and does not release in any

way any claims of New GM or MLC against the Heard Debtors and their estates

to the extent that they are necessary to pursue or defend any claims against BMW

Financial Services, NA LLC (d/b/a Alphera Financial Services) with respect to

certain other escrowed monies, including monies that may have been deposited by

New GM or MLC.  Except with respect to this exception and subject to entry of

the Heard Settlement Agreement Order and the Settlement Agreement Order, the

transmission of the GMAC Settlement Amount and the GM Settlement Amount,

and performance of the ongoing obligations contained in the Settlement

Agreement, the Parties each agree to release and discharge each other from any

and all past and present causes of action, claims (including counter-claims),

damages, losses, and demands, in each case of any nature whatsoever, whether

known or unknown, at law or in equity, relating in any way to the Parts Proceeds,

the Heard Debtors' Open Accounts, and/or any other matters arising out of or

related to the Heard Bankruptcy Cases that any of them have or may have against

any of the others.

e.    The Parties agree to the voluntary dismissal of the Heard Adversary

Proceedings involving MLC and New GM and the GMAC/GM Adversary

Proceeding.

12.    The Debtors believe that the Settlement Agreement represents a fair and

reasonable settlement and compromise of the matters addressed therein. The Settlement

Agreement will result in an immediate and substantial recovery to the Debtors and their estates,

while at the same time alleviating the financial burden, time and uncertainly associated with

continued litigation of the issues resolved under the Settlement Agreement.  Accordingly, the

Debtors, with the full support of the UCC, respectfully request the entry of the proposed

Settlement Agreement Order.

## The Relief Requested Should Be Approved by the Court

13.    Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the

[debtor-in-possession] and after notice and a hearing, the court may approve a compromise or

settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve

settlements "if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert

Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)* 134 B.R. 499, 505 (Bankr. S.D.N.Y.

1991).  A decision to accept or reject a compromise or settlement is within the sound discretion

of the Court.  *Id.*; *see also* 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001).  The

settlement need not result in the best possible outcome for the debtor but must not "fall below the

lowest point in the range of reasonableness."  *Drexel Burnham Lambert Group*, 134 B.R. at 505.

14.    Relying on the guiding language of *Protective Committee for

Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968),

courts in this Circuit have set forth the following factors regarding the reasonableness of such

settlements:

> (1)  the probability of success in the litigation;
>
> (2)  the difficulties associated with collection;
>
> (3)  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
>
> (4)  the paramount interests of the creditors.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Iridium

Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414,

428 (S.D.N.Y. 1993); *In re Purofied Down Products Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

8

The decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. *Machinery Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963). It is the responsibility of the court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *In re Dow Corning*, 198 B.R. 214, 222 (Bankr. E.D. Mich. 1996). For the reasons set forth below, the Debtors respectfully submit that the Settlement Agreement meets this standard.

15.     The Settlement Agreement falls within the range of reasonableness, as it is fair and equitable and in the paramount interest of the Debtors' and their creditors. While the Parties dispute factual and legal issues relevant to the disposition of some or all of each other's claims, and, therefore, dispute the probability of success, the agreed-upon settlement is a fair compromise. Settlement at this stage avoids the expense, inconvenience, uncertainty and delay that would be caused by litigating any potential preference action regarding the Escrow Account Claims.

16.     Further, the Settlement Agreement provides for the prompt and efficient resolution of the Heard Adversary Proceedings with relief to MLC, thereby extinguishing possible claims and litigation against the Debtors.

17.     The Debtors believe that the Compromise falls well within the range of reasonableness, is in the best interests of the Debtors' estates and their creditors and should be approved as a sound exercise of the Debtors' business judgment.

### Notice

18.     Notice of this Motion has been provided to (i) Burr & Forman LLP, attorneys for the Heard Debtors, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203 (Attn: Derek F. Meek); (ii) Adorno & Yoss LLP, attorneys for GMAC Inc., 350 East Los Olas Boulevard, Suite 1700, Ft. Lauderdale, Florida 33301 (Attn: Charles M. Tatelbaum); (iii)

Kilpatrick Stockton LLP, attorneys for the Liquidating Trustee of Bill Heard Enterprises, Inc., *et al.*, 1100 Peachtree Street, Suite 2800, Atlanta, Georgia 30309-4530 (Attn: John W. Mills, III and Mark Fink); and (iv) parties in interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No. 3629]. The Debtors submit that such notice is sufficient and no other or further notice need be provided.

19.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        November 3, 2009

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>Exhibit A</u>**

**<u>Settlement Agreement</u>**

SUPPLEMENTAL SETTLEMENT AGREEMENT

THIS SUPPLEMENTAL SETTLEMENT AGREEMENT ("Agreement") is made by and
between GMAC Inc. ("GMAC"), General Motors Company ("New GM"), Motors Liquidation
Company (f/k/a General Motors Corporation) ("MLC") and William Perkins in his capacity as
Liquidating Trustee of the estates of Bill Heard Enterprises *et al.* (the "Trustee", and together
with GMAC, New GM and MLC, the "Parties").

RECITALS

A.      On January 15, 2009, in connection with the jointly administered bankruptcy
cases styled *In re Bill Heard Enterprises, Inc. et al,* Chapter 11 Case No. 08-83029-JAC-11
(collectively, the "Heard Bankruptcy Cases") of Bill Heard Enterprises, Inc., and its twenty-three
affiliates (collectively, the "Heard Debtors") in the United States Bankruptcy Court for the
Northern District of Alabama, Northern Division (the "Heard Bankruptcy Court"), GMAC
commenced an adversary proceeding styled *GMAC LLC v. Falcon Financial II, et al.,* Adversary
Proceeding No. 09-80009 (the "Heard Main Adversary Proceeding").

B.      On May 2, 2009, in connection with the Heard Bankruptcy Cases, GMAC
commenced an adversary proceeding styled *GMAC LLC v General Motors Corporation,*
Adversary Proceeding No. 09-80055 (the "GMAC Adversary Proceeding").

C.      On May 22, 2009, in connection with the Heard Bankruptcy Cases, the Heard
Debtors commenced an adversary proceeding styled *Bill Heard Chevrolet, Inc. – Scottsdale v
General Motors Corporation,* Adversary Proceeding No. 09-80065 (the "Heard Debtors
Adversary Proceeding").

D.      On June 1, 2009, MLC and its affiliated debtors, as debtors-in-possession, filed a
voluntary petition for relief (the "MLC Bankruptcy Proceeding") under Chapter 11 of title 11,

United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "MLC Bankruptcy Court"). In the MLC Bankruptcy Proceeding, certain assets of MLC were sold to New GM pursuant to section 363 of the Bankruptcy Code (the "MLC 363 Transaction"). Under the terms of the MLC 363 Transaction, MLC retained the proceeds from any recoveries on avoidance actions.

E.    GMAC has a first-priority perfected security interest in substantially all assets of certain Heard Debtors, including without limitation, (1) the parts and accessories inventories and all proceeds thereof (collectively "Parts Proceeds") and (2) accounts owed to each of them by New GM and/or MLC and all proceeds thereof (collectively "Open Accounts").

F.    Through several Orders entered in the Heard Bankruptcy Cases prior to the commencement of the MLC Bankruptcy Proceeding, the Heard Bankruptcy Court ordered MLC to turn over to Adorno & Yoss LLP, as escrow agent ("A&Y"), the Parts Proceeds and Open Accounts funds, and A&Y maintains the escrow account into which such funds have been deposited and are being held subject to further order of the Heard Bankruptcy Court (the "Escrow Account").

G.    Prior to the commencement of the MLC Bankruptcy Proceeding, MLC deposited a total of $7,988,846.99 into the Escrow Account.  Pursuant to an Order of the Heard Bankruptcy Court, A&Y disbursed $2,138,604.36 of this amount to Columbus Bank and Trust Company. $5,850,242.63 plus accrued interest remains in the Escrow Account as of the date of execution of this Agreement.  Parties other than MLC have deposited additional funds into the Escrow Account that are not affected by this Agreement.

H.    New GM, MLC and GMAC each claim an interest in the funds in the Escrow Account.  MLC claims that some of the funds transferred into the Escrow Account by MLC may

be avoided pursuant to Chapter 5 of the Bankruptcy Code. The Parties hereto have reached an agreement with respect to these claims, which is memorialized in this Agreement.   Other confidential agreements between GMAC and New GM, which are part of this settlement, are represented by a separate letter agreement.

I.        On September 23, 2009, the Heard Bankruptcy Court entered an Order approving a compromise between GMAC, New GM, the Official Committee of Unsecured Creditors of the Heard Debtors (the "Heard Committee"), and the Heard Debtors [C.P. #2315] which approved that certain Settlement Agreement entered into between those parties. Subsequent thereto, MLC asserted that it may have certain claims related to the avoidance and recovery of funds in the Escrow Account transferred by MLC. The Settlement Agreement was subject to certain conditions, which were not met, and therefore, GMAC exercised its contractual right to declare it void and of no effect.

J.        The Heard Debtors' Chapter 11 plan has now been confirmed (the "Plan"). The Plan provides for, among other things, the appointment of the Trustee as of the Plan's effective date. The Trustee is vested with sole authority to exercise any of the Heard Debtors' powers and duties.

K.        This Agreement is being entered into and executed by and among the Parties in order to memorialize the modified and subsequent agreement that has been reached.

L.        The Escrow Account also contains proceeds from the liquidation of assets other than the Open Accounts funds and the Parts Proceeds, which proceeds are unrelated to the claims of MLC and New GM, and this Agreement does not affect or resolve any claim of any other claimant to such other funds held in the Escrow Account.

AGREEMENT

In consideration of the foregoing premises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      In full and final satisfaction of any and all claims of MLC and New GM (on an individual and a collective basis) in each case arising under or related to the Heard Bankruptcy Cases, MLC and New GM will collectively receive a distribution in the amount of $2,500,000.00 to be paid from the Escrow Account (the "GM Settlement Amount"). New GM and MLC agree that with respect to the allocation of the GM Settlement Amount, MLC will receive $1,875,000.00 and New GM will receive $625,000.00 (the "GM Settlement Amount Allocation"). The GM Settlement Amount Allocation will be disbursed by A&Y directly to MLC and New GM pursuant to the terms of this Agreement.

2.      In full and final satisfaction of any and all claims of GMAC related to New GM or MLC and the Heard Debtors' collateral and assets in each case and arising under or related to the Heard Bankruptcy Cases, GMAC will receive a distribution in the amount of $2,200,000.00 to be paid from the Escrow Account (the "GMAC Settlement Amount"). GMAC will apply these funds to satisfy any and all indebtedness of the Heard Debtors owed to GMAC, and then remit $246,000 to the Trustee as part of the debtor-in-possession financing order and underlying agreement—such amount is exclusive of the remainder of the Escrow Funds to be turned over to the Trustee as detailed in paragraph 8 herein. The GM Settlement Amount and GMAC Settlement Amount are collectively referred to hereinafter as the "Settlement Amounts."

3.      GMAC and the Trustee will jointly and promptly move the Heard Bankruptcy Court to enter an order pursuant to Bankruptcy Rule 9019 approving this Agreement and

authorizing A&Y to disburse the Escrow Account funds in accordance with this Agreement ("Disbursal Order").  Said motion will also seek to have the Disbursal Order provide that the disbursements in accordance with this Agreement may be made immediately upon the entry of the Disbursal Order. As soon as it is legally permissible for it to do so, A&Y will disburse the Settlement Amounts and other funds contemplated by this Agreement by wire transfer to the respective accounts designated by MLC, New GM, GMAC, and the Trustee.  The form of the Disbursal Order must be reasonably acceptable to MLC, New GM, the Trustee and GMAC.

4.    If necessary as determined in the sole discretion of MLC, MLC shall promptly move the MLC Bankruptcy Court to enter an order pursuant to Bankruptcy Rule 9019 approving this Agreement and the GM Settlement Amount and authorizing A&Y to disburse the Escrow Account funds in accordance with this Agreement (the "MLC Disbursal Order").   The form of the MLC Disbursal Order, if necessary, shall be substantially similar to the form of the Disbursal Order.  If MLC determines to seek the MLC Disbursal Order from the MLC Bankruptcy Court, it will file the necessary motion within seven business days after the filing of the Trustee's motion seeking entry of the Disbursal Order in the Heard Bankruptcy Cases.  If no such motion is timely filed by MLC, then the disbursement contemplated herein may be made upon the entry of the Disbursal Order directly to MLC and New GM pursuant to the GM Settlement Amount Allocation.

5.    Effective upon entry of the Disbursal Order, GMAC will move the Heard Bankruptcy Court to enter an order dismissing the GMAC Adversary Proceeding and vacating the Order on GMAC LLC's Motion for Preliminary Injunction (Docket No. 14) and the Supplemental Order on GMAC LLC's Motion for Preliminary Injunction (Docket No. 16) in same adversary proceeding.

6.      Effective upon entry of the Disbursal Order, GMAC will move the Heard Bankruptcy Court to enter an order dismissing an adversary proceeding commenced by GMAC on October 5, 2009 against MLC and New GM (Adv. #09-80120) (the "GMAC/GM Adversary Proceeding"). The Defendants' time to answer or otherwise move with respect to the GMAC/GM Adversary Proceeding shall be tolled for a period equal to thirty (30) days after the Bankruptcy Court enters an order approving or denying the Disbursal Order, during which time GMAC shall seek an order dismissing the GMAC/GM Adversary Proceeding as set forth in the preceding sentence.

7.      Effective upon entry of the Disbursal Order, the Trustee will move the Heard Bankruptcy Court to enter an order dismissing the Heard Debtors Adversary Proceeding and vacating the Supplemental Order on Motion of Bill Heard Chevrolet, Inc. – Scottsdale to Require General Motors Corporation to Deposit Disputed Funds Into Escrow (Docket No. 8) in same adversary proceeding.

8.      The remaining funds held in the Escrow Account (including all accrued interest) after the payment of the GM Settlement Amount and the GMAC Settlement Amount will be turned over by A&Y to the Trustee to be held for distribution in accordance with the confirmed Plan of the Heard Debtors.

9.      This Agreement is not intended to, and does not, release in any way any claims of New GM or MLC against the Heard Debtors and their estates to the extent that they are necessary to pursue or defend any claims against BMW Financial Services, NA LLC (d/b/a Alphera Financial Services). Notwithstanding this exception and the scope of these releases, and subject to the Disbursal Order and the MLC Disbursal Order (if necessary), MLC and New GM

covenant that they will refrain from commencing any action or suit, prosecuting any pending action or suit, or participating or assisting in any manner in the commencement or prosecution of any action or suit, in law or in equity against the Heard Debtors and their estates, jointly or severally, in account of any action, causes of action, suits, choses in action, contracts, claims, sums of money, executions, damages, demands and rights whatsoever, in law or in equity now existing or which may hereafter accrue against Heard Debtors and their estates relating in any way to the Parts Proceeds, Open Account Proceeds, and/or any other matters arising out of or related to the Heard Bankruptcy Cases by reason of any facts existing as of the date hereof.

10.    Subject to entry of the Disbursal Order, the MLC Disbursal Order (if necessary), the transmission of the Settlement Amounts, and performance of the ongoing obligations contained herein:

(a)    GMAC hereby releases and discharges MLC, New GM, the Heard Debtors, and the Trustee from any and all past and present causes of action, claims (including counter-claims), damages, losses, and demands, in each case of any nature whatsoever, whether known or unknown, at law or in equity, relating in any way to the Parts Proceeds, Open Account Proceeds, and/or any other matters arising out of or related to the Heard Bankruptcy Cases that it may have had or currently has;

(b)    MLC hereby releases and discharges GMAC, the Heard Debtors, New GM, and the Trustee, from any and all past and present causes of action, claims (including counter-claims), damages, losses, and demands, in each case of any nature whatsoever, whether known or unknown, at law or in equity, relating in any way to the Parts Proceeds, Open Account Proceeds, and/or any other matters arising out of or related to the Heard Bankruptcy Cases that it may have had or currently has;

(c)     New GM hereby releases and discharges GMAC, the Heard Debtors, MLC, and the Trustee, from any and all past and present causes of action, claims (including counter-claims), damages, losses, and demands, in each case of any nature whatsoever, whether known or unknown, at law or in equity, relating in any way to the Parts Proceeds, Open Account Proceeds, and/or any other matters arising out of or related to the Heard Bankruptcy Cases that it may have had or currently has;

(d)     The Trustee hereby releases and discharges GMAC, New GM and MLC from any and all past and present causes of action, claims (including counter-claims), damages, losses, and demands, in each case of any nature whatsoever, whether known or unknown, at law or in equity, relating in any way to the Parts Proceeds, Open Account Proceeds, and/or any other matters arising out of or related to the Heard Bankruptcy Cases that he may have had or currently has;

11.     The Disbursal Order must contain the releases contemplated by this Agreement and must make them binding on all subsequent successors and/or assigns of the parties hereto.

12.     The execution of and performance under this Agreement, and the settlement contemplated by it, do not constitute, and are not to be construed as:

(a)     an admission on the part of either GMAC, New GM, MLC, or the Trustee of any wrongdoing or liability whatsoever, any such liability or wrongdoing being hereby expressly denied, or

(b)     the validity of New GM's, GMAC's, MLC's and the Trustee's respective legal, equitable, or factual positions regarding any of their claims against each other raised and/or litigated in the Heard Bankruptcy Cases, the Main Adversary Proceeding, the GMAC Adversary Proceeding, the GMAC/GM Adversary Proceeding or the Heard Debtors Adversary Proceeding.

13.     Each party has had the full benefit of legal counsel and representation in the negotiation, preparation, drafting, and execution of this Agreement.

14.     As counsel for each party has participated in the drafting of this Agreement, any ambiguity in this Agreement will not be construed against any other party.

15.     If any provision of this Agreement is held to be illegal, invalid, or unenforceable, the remainder of this Agreement continues in full force and effect.

16.     MLC represents and warrants that it has the consent of the Unsecured Creditors' Committee in the MLC Bankruptcy Proceeding to enter into this Agreement.

17.     This Agreement:

(a)     Binds and inures to the benefit of each party's respective successors and assigns.

(b)     Unless as expressly provided herein, may not be amended or terminated without each party's prior written consent.

(c)     Is neither made nor intended for the benefit of any third party and does not create or give to any third party any right, claim, benefit, defense, or cause of action against GMAC, New GM, MLC, or the Trustee.

(d)     May be executed in multiple counterparts on separate signature pages, each of which constitutes an original and all of which together constitute one and the same instrument.

(e)     Is governed by and construed, interpreted, and enforced in accordance with, the laws of the State of Alabama without reference to any choice or conflict of law provisions, except to the extent that the issues arise under or are related to the Bankruptcy Code and Bankruptcy Rules in which case the Bankruptcy Code and Bankruptcy Rules shall apply. Notwithstanding anything in this Agreement, the Parties agree that venue for any action between MLC and New GM relating to the apportionment of the GM Settlement Amount (a "GM

Settlement Amount Action") lies in the MLC Bankruptcy Court, and the MLC Bankruptcy Court shall have jurisdiction to enforce the terms of the Agreement as it relates to a GM Settlement Amount Action.

(f)    Except otherwise stated herein, this Agreement constitutes the entire agreement between the parties with respect to its subject matter.

18.    Any notices given for purposes of this Agreement, including without limitation the Escrow Notice, must be in writing, addressed and delivered as follows:

a. If to New GM:

Lawrence J. Lines, Esq.
400 Renaissance Center
PO Box 400
Detroit, MI  48265
E-mail:  lawrence.j.lines@gm.com
Fax:  1-313-267-4338

with a copy to:

Adam L. Kochenderfer, Esq.
Honigman Miller Schwartz and Cohn LLP
660 Woodward Ave. Suite 2290
Detroit, Michigan  48226
Email:  akochenderfer@honigman.com
Fax:  1-313-465-7563


b. If to GMAC:

Charles M. Tatelbaum, Esq.
Adorno & Yoss
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida   33301
Email:  ctatelbaum@adorno.com
Fax:  1-866-621-4198

    c.   If to the Trustee:
John W. Mills, Esq.
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309
Email: jmills@kilpatrickstockton.com
Fax:  1-404-541-3236


    d.   If to MLC:
Joseph H. Smolinsky, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Email: joseph.smolinsky@weil.com
Fax:  1-212-310-8007

and

Adam C. Rogoff, Esq.
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
Email: arogoff@kramerlevin.com
Fax: 1-212-715-8265


Notice must be delivered by email or facsimile or by overnight commercial service.  Any party may change the address at which it is to receive notices or the name of the person(s) to receive notices by furnishing the other parties notice of any such change.

IN WITNESS WHEREOF, GMAC, New GM, the Trustee and MLC have caused their duly authorized officers, agents or attorneys to execute this Agreement effective as of October ___, 2009.

GMAC Inc.


By: _____

General Motors Company

By:_____


Motors Liquidation Company

By:_____


_____
William Perkins, Trustee

## Exhibit B

## Settlement Agreement Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                    :

In re                            :        **Chapter 11 Case No.**
                                      :

**MOTORS LIQUIDATION COMPANY,** *et al.*, :        **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.* :

                                    :

                   **Debtors.**     :        **(Jointly Administered)**
                                      :
---------------------------------------------------------------x

### ORDER PURSUANT TO FED. R. BANKR. P. 9019
### APPROVING SETTLEMENT AGREEMENT AND COMPROMISE

Upon the Motion, dated November 3, 2009 (the "**Motion**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in

possession (collectively, the "**Debtors**"), pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order approving and ratifying

the settlement agreement (the **"Settlement Agreement"**), attached to the Motion as **Exhibit**

**"A"**, between Motors Liquidation Company ("**MLC**"), GMAC Inc. ("**GMAC**"), General

Motors, LLC (f/k/a General Motors Company) ("**New GM**"), and Bill Heard Enterprises Inc. and

its twenty-three affiliates (collectively, the "**Heard Debtors**"), all as more fully described in the

Motion; and due and proper notice of the Motion having been provided, and it appearing that no

other or further notice need be provided; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefore,

it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED that the Debtors entry into the Settlement Agreement is in the best interests of the Debtors and their estates; and it is further

ORDERED that the settlements and compromise embodied in the Settlement Agreement are within the range of reasonableness; and it is further

ORDERED that the Debtors entry into the Settlement Agreement is authorized, ratified and directed; and it is further

ORDERED that upon entry of this Order, all terms and conditions of the Settlement Agreement shall become effective; and it is further

ORDERED that notwithstanding anything to the contrary in the Settlement Agreement or this Order, the Settlement Agreement and this Order do not release or discharge any claims, defenses or causes of action of BMW Financial Services, NA LLC (d/b/a Alphera Financial Services) ("**Alphera**") or Bill Heard Chevrolet, Ltd, Bill Heard Chevrolet, Inc. – Plant City, or Bill Heard Chevrolet, Inc. (collectively, the "**Alphera Floorplan Debtors**") or their estates against New GM or MLC and its estates (the "**Alphera Floorplan Debtor Claims**"); and notwithstanding anything to the contrary in the Settlement Agreement and/or this Order, the Settlement Agreement and/or this Order do not release or discharge any claims, defenses or causes of action of New GM or MLC and its estates against Alphera or the Alphera Floorplan Debtors, including without limitation, any counterclaims or defenses to the Alphera Floorplan Debtor Claims and any rights with respect to the assertion of the automatic stay, all of which are expressly retained; and it is further

ORDERED that to the extent any conflict exists between the terms and conditions of the Settlement Agreement and this Order, this Order shall control; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: New York, New York
[_____], 2009


_____
United States Bankruptcy Judge