Hearing Date: November 6, 1990
Hearing Time: 9:45 a.m. (prevailing eastern time)
Hearing Place: New York, N.Y.
Objection Deadline: October 30, 2009
At 4:00 p.m. (prevailing eastern time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

**CHAPTER 11**
**CASE NO. 09-50026(REG)**

**MOTORS LIQUIDATION COMPANY,** *et al.*,
**f/k/a General Motors Corp.,** *et al.*

(Jointly Administered)

**Debtors.**

RECEIVED
NOV - 4 2009

**MOVANT'S SUR-REPLY TO DEBTOR'S OPPOSITION TO MOTION OF MOVANT
IN THE ACTION ENTITLED *WALTER J. LAWRENCE V. GENERAL MOTORS
HOURLY RATE EMPLOYEE PENSION, AND GENERAL MOTORS CORPORATION*,
5:07-CV-408 OC, UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF
FLORIDA FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1).**

### REPLY TO PRELIMINARY STATEMENT

1.      Movant has established "good cause" sufficient for this Court to lift the automatic

stay in order that the District Court action can proceed to judgment by having presented facts and

circumstances warranting relief from the stay to allow Movant to proceed with the District Court

action.

In the case of *In re Bogdanovich*, 292 F.3d 106 (CA2, 2002), the Second Circuit held that:

the term "for cause" is not defined in the bankruptcy code, we have adopted 12
factors to consider when deciding whether or not to lift a stay in order that litigation may
continue to completion in another tribunal. *Sonnax Indus., Inc. v. Tri Component Prods.
Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1285-86 (2d Cir.1990). These factors are set
forth in the margin.[1]. Not every one of these factors will be relevant in every case. *In re
Mazzeo*, 167 F.3d at 143. The ultimate determination whether to lift a stay depends upon the
facts underlying a given motion. *See In re Sonnax*, 907 F.2d at 1286. *Sonnax* factors (1), (10)

Page 1 of 46

and (12) are relevant to the facts of this case. These factors are: "(1) whether relief would result in a partial or complete resolution of the issues; ... (10) the interests of judicial economy and the expeditious and economical resolution of litigation; ... and (12)[the] impact of the stay on the parties and the balance of harms." *Id.*

See attached hereto as exhibit "A" an " OPINION AND ORDER GRANTING MOTION TO VACATE AUTOMATIC STAY," in the case of In re Linda Cicale, Case No. 05-14462 (AJG) signed on June 27, 2007, citing *In re Bogdanovich*, id.

2. . This case constitutes an ongoing criminal conspiracy between the I.R.S. and General Motors Corporation. Starting with May 19, 1999, the issuance and service date of the IRS Notice of Levy, the Debtor joined with the I.R.S. vis-a-vis the IRS May 19, 1999, Notice of Levy in a "seizure. When the ongoing and continuous criminal seizure commenced on or near May 19, 1999, this criminal conspiracy continued each month. It is this criminal act of conspiracy of "seizure" that created a "custodial relationship" of the GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments. *Chevron, U.S.A. Inc., United States*, 705 F.2d 1487 (CA9, 1983) ( "In Phelps v. United States [75-1 USTC § 9467], 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), the Supreme Court ruled that a tax levy creates a 'custodial relationship' between [General Motors Corporation] and the United States, reducing the property to the 'constructive possession' of the government. Id, at 334, 95 S.Ct. At 1731. The Court declared that 'notice of levy and demand [on May 19, 1999] are equivalent to seizure.' Id, at 337, 95 S.Ct. At 1732; see Matter of Pittsburgh Penquins partners 598 F.2d 1299, 1302 (3d. Cir., 1979); American Acceptance Corp. V. Glendora Better Builders, Inc., 550 F.2d 1220, 1222 (9th cir. 1977).

The Debtor has clearly violated 29 U.S.C. § 1202( c ), the Notice of Levy of May 19, 1999, -----------------, transferred the unfettered command and control of the "income-producing activity",- the GM/UAW ERISA and IRC qualified pension plan payments income - to the IRS in violation

of the applicable provisions of the Debtor provided for in the Notice of Levy of May 19, 1999.,
violated section 6331 by making the GM/UAW ERISA and IRC qualified pension plan payments
income where the IRS provided the instructions within the Notice of Levy of May 19, 1999., that the
Notice of Levy does not apply to the GM/UAW ERISA and IRC qualified pension plan payments
income. Given that the fiduciary is **"MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a
General Motors Corp., *et al.*"** and that GM/UAW pension plan is between General Motors Corp,
f/k/a **MOTORS LIQUIDATION COMPANY** and given that General Motors Corp, f/k/a
**MOTORS LIQUIDATION COMPANY** qualifies as "...any person who exercises authority or
control respecting the management or disposition of such underlying assets, and any person who
provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of
the investing plan," 29 C.F.R. § 2510.3-101(a)(2), it is clear that Debtor who is General Motors
Corp, f/k/a **MOTORS LIQUIDATION COMPANY** violated its fiduciary duty as provided for in
the terms of the plan

     The Second Circuit held in Sonnax Industries, 907 F.2d 1280 (CA2, 1990), that:
"...proceedings in which the debtor is a fiduciary or which involve the post petition activities of the
debtor need not be stayed since they bear no real relationship to the purpose of the stay which is to
protect the debtor and the estate from creditors." Here, the debtor is involved in
"...proceedings...which involve the post petition activities of the debtor..." those "post petition
activities" are the continuing seizure by Debtor of Movant's GM/UAW ERISA and IRC qualified
pension plan payments income based on Debtors' erroneous interpretation and application of that
seizure device, the pre-petition Notice of Levy dated May 19, 1999, that is being enforce post-
petition. Given that "...debtor is a fiduciary or which involve the post petition activities of the

debtor...", the District Court action "... need not be stayed since [the District Court action] bear[s] no real relationship to the purpose of the stay which is to protect the debtor and the estate from creditors." *Sonnax, id.* Accordingly, under the third factor of Sonnax -"whether the other proceeding involves the debtor as a fiduciary;" - does not stand as an impediment to lifting the stay and allowing the District Court Action to proceed to final judgment.

Section 6331 provides that the restrictive seizure instrument, the May 19, 1999, Notice and Demand - the Notice of Levy - cannot constitute a lawful unfettered actual command and control over the GM/UAW ERISA and IRC qualified pension plan payments income since 29 U.S.C. § 1202( c ) bars the levy on the GM/UAW ERISA and IRC qualified pension plan payments and social security payments income.

Further, the Internal Revenue Service never intended that the Notice of Levy of May 19, 1999, was or is applicable to the GM/UAW ERISA and IRC qualified pension plan payments income. For example, as provided for in 26 U.S.C. § 6331(d)(4)(B) the May 19, 1999, Notice of Levy had to contain "...the procedures applicable to the [ May 19, 1999, Notice of Levy]..." . In accordance with the provisions of 26 U.S.C. § 6331(d)(4)(B), the May 19, 1999, Notice of Levy provides the following applicable procedures:

**THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS RETIREMENT PLANS OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED BY THE BLOCK TO THE RIGHT."**

The May 19, 1999, Notice of Levy is not signed in "the block to the right." Thus, the May

19, 1999, Notice of Levy conforms to  26 U.S.C. § 6331(d)(4)(B). Yet, even though the May 19,

1999, Notice of Levy does not conform to the provisions of  26 U.S.C. § 6331(d)(4)(B) and 29

U.S.C. § 1202( c ) and thus the  levy on the GM/UAW ERISA and IRC qualified pension plan

payments income, Debtor launched ahead to it's own peril  thereby resulting in the General motors

Corporation exercising  unfettered actual and constructive receipt, command and control over the

GM/UAW ERISA and IRC qualified pension plan payments income. Thus, the GM/UAW ERISA

and IRC qualified pension plan payments income was made "subject to the levy." However, even

though the May 19, 1999, Notice of Levy  conforms to the provisions of 26 U.S.C. § 6331(d)(4)(B),

Debtor decided to exercise unfettered command and control over the  GM/UAW ERISA and IRC

qualified pension plan payments income by seizure of that property and then  forwarding that

property on to the IRS.

Service of the May 19, 1999, Notice of Levy in effect constitutes seizure of the GM/UAW

ERISA and IRC qualified pension plan payments and social security payments income. Phelps v.

United States,421 U.S. 330, 95 S.Ct. 1728 (1975) ("notice of levy and demand are equivalent to

seizure," ), citing Sims v. United States, 359 U.S. 108, 79 S.Ct. 641; Brewer v, United States, 1991

WL 338331 (S.D.N.Y. 1991) (" Notice of levy and demand are equivalent to seizure,"), citing

Phelps, id;.

Here, it is  the issuance of the Notice of Levy that transferred ownership of those funds to the IRS.

When the IRS "...collects on the property of the taxpayer." (" ,,,the IRS ordinarily does  not take title

to a levied upon property until the government reaps the proceeds of a tax sale *or otherwise collects*

*on the property of the taxpayer.* Id *In re Challenge Air Int'l, Inc.*, 952 F.2d 384, 386-87 (11th Cir.

1992). This framework applies to cash and cash equivalents. See id. at 387; see also Citizens Bank

of Md. v. Strumpf, 516 U.S. 16, 21, 133 L. Ed. 2d 258, 116 S. Ct. 286 (1995)."). Here, each and

every month when  General Motors Corporation actually levied on Petitioner's interest in the

GM/UAW Supplemental Hourly Pension Plan agreement payments ownership of those ERISA

qualified pension plan payments those continuing payments were transferred to the IRS, thereby

denying to petitioner and granting to Commissioner all ownership rights to the  GM/UAW ERISA

and IRC qualified pension plan payments and social security payments.

Similarly, in *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed. 833 and it's

progeny, the James Court held that:

> The starting point in all cases dealing with question of the scope of what is included
> in 'gross income' begins with the basic premise that the purpose of congress was 'to use the
> full measure of its taxing power. * * * And the Court has given a liberal construction to the
> broad phraseology of the 'gross income' definition statues in recognition of the intention of
> Congress to tax all gains except those specifically exempted. * * * The language of § 22(a)
> of the 1939 code, gains or profits and income derived from any source whatever,' and the
> more simplified language of § 61(a) of the 1954 Code, 'all income from whatever source
> derived.' have been held to encompass all 'accessions to wealth, clearly realized, and over
> which the taxpayer have complete dominion.' * * * A gain 'constitutes taxable income when
> its recipient has such control over it that, as a practical matter, he derives readily realizable
> economic value from it.' ( Citations omitted.) * * *'

Here, the it is the GM/UAW ERISA and IRC  qualified pension plan payments that

encompass all "accessions to wealth, clearly realized, and over which the [Commissioner has]

complete dominion," and over which the Commissioner/Respondent/Secretary has guaranteed that

these funds can never be attributable to petitioner as "accessions to wealth, clearly realized, and over

which the [ IRS has] complete dominion." Thus, the Debtor has  erred in its determination that

Movant  had "accessions to wealth, clearly realized, and over which the [ Movant  has] complete

dominion,"

Similarly, in a case citing James, id, the Court in C.I.R. v. Banks, 543 U.S. 426 (2005),  held

that:

In an ordinary case attribution of income is resolved by asking whether a taxpayer exercises complete dominion over the income in question. Glenshaw Glass Co., supra, at 431, 99 L. Ed. 2d 483, 75 S. Ct. 473; see also Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 209, 107 L. Ed. 2d 591, 110 S. Ct. 589 (1990);  Commissioner v. First Security Bank of Utah, N. A., 405 U.S. 394, 403, 31 L. Ed. 2d 318, 92 S. Ct. 1085 (1972).

In the context of assignment by levy , in this case the IRS May 19, 1999, Notice of Levy

assigning "constructive receipt" of the GM/UAW ERISA and IRC qualified pension plan payments

to the IRS prior to June 1, 2009, the Debtor's voluntary petition date , neither the Debtor nor Movant

had the complete dominion and control over the income at the moment of service of the  Notice of

Levy dated May 19, 1999. . In that instance the question becomes whether the Respondent  retains

dominion over the GM/UAW ERISA and IRC qualified pension plan payments  , because the

recipient of the GM/UAW ERISA and IRC qualified pension plan payments - the IRS - is the entity

"who owns or controls the source of the income, also controls the disposition of that which he could

have received himself and diverts the payment from himself to others as the means of procuring the

satisfaction of his wants." Horst, supra, at 116-117, 85 L. Ed. 75, 61 S. Ct. 144. See also Lucas,

supra, at 114-115, 74 L. Ed. 731, 50 S. Ct. 241; Helvering v. Eubank, 311 U.S. 122, 124-125, 85 L.

Ed. 81, 61 S. Ct. 149, 1940-2 C.B. 209 (1940); Sunnen, supra, at 604, 92 L. Ed. 898, 68 S. Ct. 715.

Looking to control over the income-generating asset, then, preserves the principle that income should

be taxed to the party who earns the income and enjoys the consequent benefits. Baum v. United

States, 1975 WL 601 (S.D.N.Y. 1975) ("Upon service of a notice of levy the 'effects a seizure that

is tantamount to a transfer of ownership' citing U.S. v. Pittman, 449 F.2d 623, 626 (CA7, 1971)

("The levy therefore gave the United States full legal right to the [property] levied upon as against

the claim of the petitioner receiver.' *Phelps v. United States*, 421 U.S. 330.").

Similarly, in *Brewer v. United States*, 1991 WL 338331 (S.D.N.Y., 1991), the Court held that :The government contends, however, that title to intangible property such as cash or cash equivalents passes when the notice of levy is served. "Notice of levy and demand are equivalent to seizure." Phelps v. United States [75-1 USTC § 9467], 421 U.S. 330, 337 (1975). Under the Government's scenario, because the levy was made on Mr. Brewer's benefits held by the Union on February 21, 1990, title passed to the Government at that time. We agree with the Government's position. "In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian...give the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and [the] IRS so that the property comes into the constructive possession of the Government." *United States v. National Bank of Commerce* [85-2 USTC § 94821, 472 U.S. 713, 720 (1985) (citations omitted). Here, the government acquired the right to the funds held for Mr Brewer's benefit at the Iron Workers' Union prior to the filing of the complaint. *In re Reese* 14 B.R. 113 (Bkrtcy., N.Y. 1981) (" A levy effects a seizure of the delinquent taxpayer's property, *United States v. Sullivan*, (3rd.) 333 F.2d 100. Having seized the property prior to the filing of the taxpayer's petition fo relief under Chapter 7, the United States acquired full legal right to the funds as against the trustee in bankruptcy. *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201. The $2,173.74 in question should be turned over to the United States and it is so ordered."). Same *Chevron, U.S.A., Inc. V. United States*, 705 F.2d 1487 (CA9, 1983)."). Here, upon the service of the section 6331 levy on Debtor on May 19, 1999, or soon thereafter, which of course was long before June 1, 2009, the date of the debtor's voluntary petition, the unfettered command and control of GM/UAW ERISA and IRC qualified pension plan payments was removed from the property of the

estate and the IRS gained constructive receipt of the GM/UAW ERISA and IRC qualified pension plan payments .

Similarly, in American Acceptance Corp v. Glendora, 550 F. 2d 1220 (CA9, 1977) the Ninth circuit held that:

> The Supreme Court recently analyzed the effect of a notice of levy in *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). When faced with competing claims of the IRS and a receiver in bankruptcy, it held that the IRS's notice of levy served before bankruptcy gave the IRS' full legal right' to the money as against the receiver's claim. Id. at 337, 95 S.Ct. 1728. It further held that 'actual possession' of the money was not necessary because 'Historically, service of notice has been sufficient to seize a debt, and notice of levy and demand are equivalent to seizure.' Id. at 336-37, 95 S.Ct. At 1732 (citations omitted). Accord, United States v. Pittman, 449 F.2d 623, 627 )7 cir. 1971); United States v. Eiland, 223 F.2d 118, 123-24 (4 Cir. 1955).

Here, the Notice of Levy was served on the General Motors Corporation immediately after its issuance on May 19, 1999. ERISA's non-alien ability provisions prevent both voluntary and involuntary encroachments on vested benefits being a part of the GM/UAW Supplemental Pension. Plan. *In re Moore*, 907 F.2d 1476 (CA4, 1990) (" ERISA's non-alien ability provisions prevent both voluntary and involuntary encroachments on vested benefits. General Motors Corp. v. Buha, 623 F.2d 455, 460 (6th Cir.1980). Thus, neither plan participants nor general creditors may reach benefits under an ERISA-qualified profit-sharing and pension fund. See *Smith v. Mirman*, 749 F.2d at 183 (with narrow exceptions not relevant here, "an employees's accrued benefits under a qualified plan may not be reached by judicial process in aid of a third party creditor"); see also *Tenneco, Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688, 689-90 (4th Cir.1983); Seiden, supra, 61 Am.Bankr.L.J. at 242 ("ERISA-required plan provisions prohibiting assignment and alienation are enforceable under nonbankruptcy law against participants and their creditors."). Appellant's position

would provide creditors with a means to circumvent this restriction on their access. We see no evidence that Congress intended to invite a creditor to push a debtor into involuntary bankruptcy in order to reach his ERISA funds."). Accordingly, the Commissioner erred in determining that petitioner received an immediate economic benefit at the time the funds were levied equal to the amount of petitioner's tax liabilities within the meaning of I.R.C. § 61.

Debtor has argued in the District Court litigation that the GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments levied on by Debtor based on the IRS May 19, 1999, is "subject to levy" as provided for in 26 U.S.C. § 6332(a), (d), and (e) where the phrase "subject to levy" is clearly provided for.26 U.S.C. § 6332(a) provides that;

> (a) Requirement
> Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property *subject to levy* upon which a levy has been made shall, upon demand of the Secretary, *surrender such property or rights (or discharge such obligation) to the Secretary,* except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

It is only when the property is not "subject to levy," as is the case here, that Sections 6331, 6332 do not apply. 26 U.S.C. § 6332(d) provides that the only time that Debtor becomes liable is when that entity "... fails or refuses to surrender any property or rights to property, *subject to levy,* upon demand by the Secretary," 26 U.S.C. § 6332(d) in its entirety provides that:

> Any person who *fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary,* shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited

against the tax liability for the collection of which such levy was made. (Bold and italics added).

Thus, given that the GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments is not "subject to levy" as provided in as provided for in 29 U.S.C. § 1202( c), that property is not "subject to levy" under 26 C.F.R. 1.401(a)-13(b)(1). 29 U.S.C. § 1144(d) provides that:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

According to the clear and unambiguous language chosen by Congress in  29 U.S.C. § 1144(d), that section applies exclusively to title 29, chapter 18, subchapter I of ERISA. Subchapter I of chapter 18 of title 29 consists of exclusively to "subchapter I." Chapter 18 of title 29 consists of subchapters I, II, and III. Subchapter I, in turn, consists of subtitles A, B. Subtitle A consists of sections 1001-1003, subtitle B consists of parts 1 -6 which consists of sections 1021-1031, 1051-1061, 1081-1085, 1101-1114, 1131-1148, 1161-1169. Part 7 consists of Subparts A, B,   and C being sections 1181-1183, 1185-1185b, and 1191-1191c. Section 1202( c ) is contained in title 29, chapter 18 but section 12029 c) is explicitly excluded from "Subchapter I." Thus given that Section 1202( c ) is  explicitly excluded from "Subchapter I.", the provisions of section 1144(d) is inapplicable to Section 1202( c ) of ERISA Accordingly, given that Section 1202( c ) is  explicitly excluded from "Subchapter I.", the provisions of section 1144(d) are not violated where Section 1202( c ) by its very clear and unambiguous language excludes 26 U.S.C. § 401 and 26 C.F.R. 1.401(a)-13(b)(1) from the provisions of  Section 1202( c ). From this it logically follows that given that  section 1144(d) applies exclusivley to "subchapter I,'and  Section 1202( c ) is in "subchapter

II, as is clearly and unambiguously in section 1144(d), and given that sections 26 U.S.C. § 401 and 26 C.F.R. 1.401(a)-13(b)(1) are excluded from the provisions of Section 1202( c ), alienation of GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments is not "subject to levy," Thus, to levy on GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments violates ERISA, as provided for herein constitutes an ongoing and continuous and multiple act of criminal conspiracy.

While this proposition on the part of Debtor making certain property "subject to levy:" might be true outside of some property, it is not true here since the GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments is excluded from the levy provisions of 26 C.F.R. 1.401(a)-13(b)(1) as provided for in 29 U.S.C. § 1202( c). For example, starting with the language, as is required in the interpretation of all statutory language, 26 U.S.C. § 6331 is limited to property that is "subject to levy." Thus, given that 26 U.S.C. § 6331 is limited din it's scope to property that is "subject to levy" and that 29 U.S.C. § 1202( c).specifically excludes ERISA qualified property from levy under the provisions of 26 C.F.R. 1.401(a)-13(b)(1), neither the Debtor, here General Motors Corporation, nor the Government has legal standing to levy on Movant's interest in the GM/UAW ERISA qualified Supplemental Hourly Pension Plan agreement payments,

Debtor has admitted that it was served with IRS Notice of Levy immediateley following it's issuance by the IRS on May 19, 1999. For example, in "DEFENDANTS' MOTION AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT." District Court docket entry #51, Debtor states at page #3 that;

In 1999 GM received from the Internal Revenue Service ("IRS") that Plaintiff had

failed to pay his income taxes in 11 different years. Plaintiff's failure to pay his income taxes resulted in a tax liability and penalties of over $267,000.00 (Ex A). The IRS' notice included a levy against Plaintiff's pension benefits. Based on the levy, GM remitted Plaintiff's monthly pension benefits to the IRS, thereby reducing Plaintiff's monthly benefits to $0.00.

First, the May 19, 1999, does not state that "The IRS' notice included a levy against Plaintiff's pension benefits." Rather the Notice of Levy states that: **"THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS RETIREMENT PLANS OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED BY THE BLOCK TO THE RIGHT."** The May 19, 1999, Notice of Levy is not signed in the block to the right. Thus, the IRS stated to Debtor in unequivaclly that the Notice of Levy cannot be executed against Movant's GM/UAW ERISA and IRS qualified Pension Plan Agreement payments. Thus, Debtor's statement that "The IRS' notice included a levy against Plaintiff's pension benefits," is false and, therefore, the execution of the Notice of Levy was never intended by the IRS to be a levy on Movant's GM/UAW ERISA and IRS qualified Pension Plan Agreement payments.

The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law. In re Prudential Lines, Inc. 928 F.2d 565 (CA2, 1991) (" The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law. Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1101 (2 Cir.1990); Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2 Cir.1989). Whether that interest is included in the property of the debtor's estate is determined by bankruptcy law. In re Crysen/Montenay, supra, 902 F.2d at 1101; Coben v. Lebrun

Page 13 of 46

(In re Golden Plan of California, Inc.), 37 B.R. 167, 169 (Bankr.E.D.Cal.1984). ").

The Department of Labors's regulation, 29 C.F.R. 2530.200a-2, supports and bolsters Movant's

argument that 26 U.S.C. 401 and 26 C.F.R. 1.401(a)-13(b)(1), (2) do not apply to an IRS levy under

Section 6331 to the GM/UAW Supplemental Hourly Pension Plan agreement. This regulation

provides that:

> Regulations prescribed by the Secretary of the Treasury or his delegate under sections 410
> and 411 of the Code (relating to minimum standards for participation and vesting) shall apply
> for purposes of sections 202 through 204 of the Act. Thus, except for those provisions (such
> as the definition of an hour of service or a year of service) for which authority to prescribe
> regulations is specifically delegated to the Secretary of Labor, regulations prescribed by the
> Secretary of the Treasury shall also be used to implement the related provisions contained
> in the Act. Those regulations specify the credit that must be given to an employee for years
> of service and years of participation completed by the employee. The allocation of regulatory
> jurisdiction between the Secretary of Treasury or his delegate and the Secretary of Labor is
> governed by titles I through III of the Act. *See* section 3002 of the Act (88 Stat. 996).

When Debtor levied on Movant's interest in the GM/UAW Supplemental Hourly Pension

Plan agreement, those funds had to first be "...subject to the   [May 19, 1999 notice of ] levy..".

I.R.C. 63399(a) only requires the possessor of the property [that is] subject to the levy to surrender

it to the IRS....." LaRosa International v. United States, 499 F.3d 1324 (-----------). Cert denied. 2008

U.S. LEXIS 4564 (June 2, 2008).

Given that the 29 U.S.C. § 1202(a) clearly and unambiguously excludes 26 U.S.C. § 401 and

26 .C.F.R. § 1.401(a)-13(b) (1), (2), and given that 29 C.F.R. 2530.200a-2 likewise excludes 26

U.S.C. § 401 and 26 .C.F.R. § 1,401(a)-13(b) (1), (2) and given that the May 19, 1999 Notice of

Levy provides that the Notice of Levy does not apply to the GM/UAW Supplemental Hourly Pension

Plan agreement, it necessarily follows from this that 26 U.S.C. § 6332(a) cannot serve as legal

authority for Debtor to "...surrender such property or rights (or discharge such obligation) to the

Secretary....". 26 U.S.C. § 6332(a) provides that;

> (a) Requirement
> Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property *subject to levy* upon which a levy has been made shall, upon demand of the Secretary, *surrender such property or rights (or discharge such obligation) to the Secretary,* except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

The issue here then is whether 26 U.S.C. § 401 and 26 .C.F.R. § 1.401(a)-13(b) (1), a

regulation that was promulgated under 26 U.S.C. § 401 is enforceable in regards to a levy under 26

U.S.C. § 6331.

Congress did not intend that 26 U.S.C. § 401 be applicable to the GM/UAW Supplemental

Hourly Pension Plan, a plan that is a qualified plan under. ERISA. In *Reklau v. Merchants National*

*Corporation*, 808 F.2d 628 (CA7, 1986) explained that:

> There is no basis, under §1202( c ) or elsewhere in ERISA, to find that the provisions of IRC § 401 - which relates solely to the criteria for tax qualification under the Internal Revenue Code - are imposed on pension plans by the substantive terms of ERISA.

The Seventh Circuit in *Reklau*, id went on to hold "...that had congress intended that § 401

of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language as

it did in 29 U.S.C. § 1202( c ) with §§ 410(a), 411 and 412 of the I.R.C. We thus refuse to read   §

401 as applicable to ERISA."

At fn9 of Reklau, id, the Seventh Circuit stated, in quoting 29 U.S.C. § 1202( c ), that:

As we previously noted, Title 29 , . § 1202( c ) Clearly states that §§ 410(a), 411 and 412 of
Title 26 are applicable to ERISA:
>> Regulations prescribed by the Secretary of Treasury under sections §§ 410(a), 411

and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards respectively) shall also apply to the Minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter.

Bilello v. J.P. Morgan Retirement Plan, 2009 WL 1108576, (U.S.D.C.S.D. of New York) ("Stamper and Reklau both noted that 'had Congress intended that § 401 [ and thus, 26 .C.F.R. § 1.401(a)-13(b) (1), (2) given that this regulation is promulgated under § 401] of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language, as it did in ERISA § 3003©), 29 U.S.C. § 1202( c ), with §§ 410(a0, 411 and 412 of I.R.C..' Rekalu, 808 F.2d at 631; Stamper, 188 F.3d at 1238 (quoting Reklau.")," citing Stamper v. Total Petroleum, Inc., 188 F.3d 1233, 1238 (CA10, 1999) ("There is no basis, under . . . ERISA, to find that the provisions of [26 U.S.C.] § 401--which relate solely to the criteria for tax qualification under the Internal Revenue Code--are imposed on pension plans by the substantive terms of ERISA. We are convinced that had Congress intended that § 401 of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language as it did in 29 U.S.C. § 1202© with §§ 410(a), 411 and 412 of the I.R.C. We thus refuse to read § 401(a) of the I.R.C. as applicable to ERISA. Reklau v. Merchants Nat'l Corp., 808 F.2d 628, 631 (7th Cir. 1986) (internal citation, quotation, and footnote omitted); see also West v. Clarke Murphy, Jr. Self Employed Pension Plan, 99 F.3d 166, 169 (4th Cir. 1996) (discussing Reklau with approval and observing that § 401 of the Internal Revenue Code does not modify ERISA)."); Eaton v. Onan Corp, 116 F.Supp. 2d 812 (S.D.Ind. 2000) ("Defendants rely on the seventh Circuit's holding in *Reklau v. Merchants National Corporation*, 808 F.2d 628 (CA7, 1986) , in which the court found that 26 U.S.C. § 401and the Treasury Regulations promulgated [under 26 U.S.C. § 401] were not

enforceable by plan participants through ERISA. The court recognized that Treasury Regulations promulgated under 26 U.S.C. §§ 410(a), 411 and 412 relating to minimum participation, vesting, and funding standards are enforceable through ERISA pursuant to 29 U.S.C. . § 1202( c ). However, the rejected the plaintiff's argument that, because § 401(a)(4) was 'coordinated' with § 411(d)(1), it and the Treasury Regulations promulgated thereudner shoudl also be enforceable through ERISA. The Court explained that " had congress intended that § 401 of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language as it did in 29 U.S.C. § 1202( c ) with §§ 410(a), 411 and 412 of the I.R.C.." The court also upheld the district court's finding 'that § 401 of the I.R.c. does not create substantive rights under ERISA that can be enforced by an individual in a private cause of action as a participant under a tax qualified pension plan,'Id. "). Thus, the issue here becomes one of whether  26 U.S.C. § 401 and 26 .C.F.R. § 1.401(a)-13(b) (1), a regulation that was promulgated under 26 U.S.C. § 401 is enforceable in regards to a levy under 26 U.S.C. § 6331. See General Motors Corporation v. Buha, 623 F.2d 455 (CA6, 1980), relying on 29 U.S.C. § 1202( c ).

Congress did not intend that 26 U.S.C. § 401 and the regulation promulgated under that section being 26 .C.F.R. § 1.401(a)-13(b) (1) is applicable to execute and enforce a levy on Movant's interest in the GM/UAW Supplemental Hourly Pension Plan agreement. Quoting again from Reklau, id that " had congress intended that § 401 of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language as it did in 29 U.S.C. § 1202( c ) with §§ 410(a), 411 and 412 of the I.R.C.." Thus, given that § 6332(a) of the I.R.C. only "requires the possessor of the property [that is allegedly] subject to the levy to surrender it to the Internal Revenue Service,"

Page 17 of 46

LaRosa's Inter., v. United States, 499 F.3d 1324 (------------------) cert denied 2008 U.S. LEXIS 4564

(June 2, 2008), and given that the ERISA qualified GM/UAW Supplemental Hourly Pension Plan

agreement .is not subject to the IRS May 19, 1999, Notice of Levy based on the instructions to the

Debtor, instructions that contained within the four (4) corners of that Notice of levy and given that

Congress expressed it's intent in 29 U.S.C. . § 1202( c ) that 26 U.S.C. § 401, and thus 26 .C.F.R.

§ 1.401(a)-13(b) (1) since that regulation was promulgated under 26 U.SC. § 401,  26 .C.F.R. §

1.401(a)-13(b) (1) cannot stand for the Internal Revenue Service and Debtor to levy on Movant's

interest in the GM/UAW Supplemental Hourly Pension Plan agreement. Thus, given all of the above,

it is clear that the agents and/or employees of the I.R.C. have joined hands and minds with Debtor

and the IRS in a criminal conspiracy to violate Movant's Constitutional right under the Taking-

Without-Just-Compensation Clause of the Fifth Amendment


Moreover, in the course of I.R.C. having joined hands and minds with Debtor and the IRS

in a criminal conspiracy to violate Movant's Constitutional right under the Taking-For-public use-

Without-Just-Compensation Clause of the Fifth Amendment vis-a-vis the illegal levy on Movant's

interest in the GM/UAW Supplemental Hourly Pension Plan agreement, Debtor and the I.R.S. have

exercised completely unfettered dominion and control for over ten (10) years. It is this  completely

unfettered dominion and control for over ten (10) years of the illegal levy on Movant's interest in

the GM/UAW Supplemental Hourly Pension Plan agreement that has resulted in no income to

Movant.

He who possess "attributes of ownership" - such as is the case here - such as "control" is the

owner of the income and it is the owner of this income that incurs the tax liability on that income.

For example, in the case of Paster v. Commissioner, 245 F.2d 381 (CA8, 1957), the Supreme Court

held that:

> In view of the rules in the preceding paragraph and of the very broad scope given, in
> the various revenue acts (here section 22(a) of the 1936 Act, 26 U.S.C.A. Int. Rev. Code §
> 22(a), to the definition of gross income subject to taxation, the Supreme Court has stated
> general criterion there has to do with possession of attributes of ownership by the taxpayer -
> such as control by (Harrison v. Schaffner, 312 U.S. 579, 580, 61 S.Ct. 759, 85 L.Ed. 1055:
> Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 95 L.Ed. 75, 131 A.L.r. 655; Helvering
> v.Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788' corliss v. Bosers, 281 .S. 376, 378,
> 50 S.Ct. 336, 74 L.Ed. 916) or benefits to him (Helvering v. Horst, 311 U.S. 112, 119, 61
> S.Ct. 144, 85 L.Ed. 75, 131 A.L.r. 655; Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80
> L.Ed. 3, 101 A.L.R. 391.***

Here, given that Movant never had any control over the GM/UAW Supplemental Hourly

Pension Plan agreement payments and that these payments went straight to the IRS while they were

in a pay out status, and given that the IRS May 19, 1999, Notice of Levy placed a restriction on that

property resulting in the interception of those from Debtor directly to the I.R.S.., that property - the

GM/UAW Supplemental Hourly Pension Plan agreement payments - not only never became property

of the estate under applicable ERISA provisions, that property never became income to Movant since

none of the indices of income accrued to Movant. While granted that the property might not arguably

have been owned by Debtor, it most certainly was owned by the IRS. The monthly statements of

Fidelity Investments shows the levying of this property and the IRS's Individual Master Files shows

the IRS's receipt of this property.

In summary, event though Debtor violated the "...procedures a

3.    All other items in this reply are incorporated herein by reference as though fully stated.

4.    Debtor alleges at item #4. Page 3 that:"MLC is not the plan fiduciary; the fiduciary is the

Investment Committee of the Board of Directors.

There is no question that the Debtor is a "fiduciary" of the GM/UAW Pension Plan as

defined by the Department of Labor. 29 C.F.R. § 2510.3-101(a)(2) ( "...any person who exercises

authority or control respecting the management or disposition of such underlying assets, and any

person who provides investment advice with respect to such assets for a fee (direct or indirect), is

a fiduciary of the investing plan.")

5.    Debtor states at page #3, item #5, in part that:

> It is the debtor's understanding that the Plan remitted Plaintiff's pension benefits to te IRS
> in response to an IRS notice of deficiency and levy against Plaintiff's pension benefits
> starting that Plaintiff had failed to pay his income taxes in eleven different years.
> Upon receipt of the [May 19, 1999, Notice] of the levy, the Plan was obligated to remit
> Plaintiff's pension benefits to the IRS to satisfy his tax levy."

First, the Debtor is incorrect in alleging that the ". IRS [issued a ] notice of deficiency..." It

was

not a Notice of Deficiency that was issued to debtor. Rather, it was a Notice of Levy.

The case of *Stone v. Commissioner*, T.C. Memo, 1984-187 (T.C. 1984), is so close to

standing on all fours with this case that it is almost a mirror image of this case. In *Stone, id* this

Court held that"

> In the case before us, respondent's levies caused the income from Stone's escrowed
> securities to be accumulated and withheld from him. While the income was segregated in a
> special account, or 'set apart.' it was not set apart for or made available to Stone so that he
> could draw on it.
> Respondent's revenue officers had instructed the Trust Company to withhold payment of the
> interest income from Stone and others. Indeed, while the Trust Company had a fixed
> contractual obligation to pay the income from the escrowed securities to Stone as it was
> earned. The Eighth Circuit specifically found that the IRS 'seize[d] that right.' St. Louis
> Trust Company v. United States,[617 F.2d 1293], supra at 1302. Thus, Stone had no
> unfettered command over the interest. Quite the contrary, for in the words of the regulations,
> his 'control of its receipt [was] subject to substantial limitations or restrictions.' and that
> interest cannot be taxable t him during the years in issue. See *Corliss v. Bowers*, [281 U.S.
> 376 (1930) ], supra. A review of the herculean efforts Stone made to acquire access to the
> money makes it clear that 'command' is the wrong word to describe Stone's relationship to

Page 20 of 46

this income, and that any command he had was heavily fettered.

In the case before this Court , respondent's levies caused the income from petitioner's GM/UAW ERISA and IRC qualified pension plan payments and social security payments to be seized, accumulated and withheld from him. While the income - GM/UAW ERISA and IRC qualified pension plan payments income - was seized, segregated , or 'set apart.' it was not set apart for or made available to petitioner so that he could draw on it for his own "economic benefit.".

The IRS's revenue officers had instructed the General Motors Corporation not to withhold the GM/UAW ERISA and IRC qualified pension plan payments by way of the Notice of Levy form instruction. Yet, even though the Commissioner instructed General Motors Corporation not to withhold payment of the GM/UAW ERISA and IRC qualified pension plan payments income from petitioner, General Motors Corporation flew in the face of these Notice of Levy form instructions. Indeed, while the General Motors Corporation had a fixed contractual obligation to pay the GM/UAW ERISA and IRC qualified pension plan payments income to petitioner as those payments matured each month, the Eighth Circuit specifically found that the IRS 'seize[d] that right.' St. Louis Trust Company v. United States,[617 F.2d 1293], supra at 1302. Thus, Movant had no unfettered command over the GM/UAW ERISA and IRC qualified pension plan payments. Quite the contrary, for in the words of the regulations, Movant's 'control of its receipt [was] subject to substantial limitations or restrictions.' and that GM/UAW ERISA and IRC qualified pension plan payments income cannot be taxable t him during the years in issue - 2003, 2004, and 2005. See Corliss v. Bowers, [281 U.S. 376 (1930) ], supra. A review of the herculean efforts petitioner made to acquire access to the money makes it clear that 'command' is the wrong word to describe petitioner's relationship to this income, and that any command he had was heavily fettered. It was fettered by the

Commissioner/Respondent/Secretary, the entity who had the " undeniable accessions to wealth, clearly realized and over which [ petitioner] has complete dominion," who had unfettered command and control and that unfettered command and control was absolute. Thus, the GM/UAW ERISA and IRC qualified pension plan payments income is attributable exclusively to Commissioner/Respondent/Secretary based on the foregoing.

Petitioner cites a number of cases dealing with constructive receipt of an " undeniable accessions to wealth, clearly realized and over which [ petitioner] has complete dominion," but relies primarily on the Stone v. Commissioner, T.C. Memo, 1984-187, which petitioner contends is nearly indinguishable from the instant case. In the Stone case, id, the Court held that the " undeniable accessions to wealth, clearly realized and over which [ petitioner] has complete dominion," - the Glenshaw Glass definition of income - and therefore no liability on that " undeniable accessions to wealth, clearly realized and over which [ petitioner] has complete dominion," where revenue officers, after serving the notices of levy, caused the " undeniable accessions to wealth, clearly realized and over which [ petitioner] has complete dominion," that was attributed to petitioner by Commissioner/Respondent/Secretary to be restricted from any "economic benefit' to petitioner. Thus, if this Court denies petitioner an opportunity to assign error to Commissioner/Respondent/Secretary for the alleged liability, this would be in violation of Tax Court Rule 34(b) and would allow Commissioner/Respondent/Secretary to meet its "minimal" burden of proof. Green v. C.I.R. T.C. Memo, 2008-180, 2008 WL 2065187, fn #20 ("But for the levy [in Stone v. Comm, id], the [petitioner] would have an unfettered right to the money.'); Zapara v. Comm, 124 T.C. Memo 223 (T.C. 20050 ("...a notice of levy gives the Commissioner the right to all property levied upon and creates a custodial relationship between the third party and the I.R.S. s that the

[levied] property comes into the constructive possession of the Government. United States v. Nat'l

Bank of Commerce, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)").

In each of the case cited in *Zapara v. Comm,* , id, this Court held that "...the Commissioner

went well beyond mer service of a notice of levy on the property exercising powers over the property

essentially consistent with ownership.".; *United States v. Barlows, Inc,* 767 F.2d 1098 (CA$, 1985).

Service of the May 19, 1999, Notice of Levy which resulted in the levy, constitutes seizure

of the GM/UAW ERISA and IRC qualified pension plan payments income. Phelps v United States,

421 U.S. 330, 95 S.Ct. 1728 (1975):

> Here we are concerned not with priority of tax liens but with the effect of a tax levy.
> Historically, service of notice has been sufficient to seize a debt, Miller v. United States, 11
> Wall. 268, 297 (1871), and notice of levy and demand are equivalent to seizure. See, e.g.,
> Sims v. United States, 359 U.S. 108 (1959). The levy, therefore, gave the United States full
> legal right to the $ 38,000 levied upon as against the claim of the petitioner receiver.

Similarly, here ths Court is concerned with "the effect of a tax levy." The service of this

Notice - the Notice of evy - "...are equivalent to a seizure." of the GM/UAW ERISA and IRC

qualified pension plan payments and social security payments. "The [ May 19, 1999, Notice of]

levy, therefore, gave the United States full legal right to the [GM/UAW ERISA and IRC qualified

pension plan payments and social security payments]. levied upon as against the claim of the

petitioner," id.; Brewer v. United States, 1991 WL 338331 (S.D.N.Y, 1991) ( "Notice of Levy and

demand are equivalent to seizure,"), citing *Phelps*, id.

In *Dunne Trucking Co. V. IRS (In re Dunne Trucking Co.* (FN60), 32 B.R. 182 (Bankr, N.D.

Iowa, 1983, the United States Bankruptcy Court for the Northern District of Iowa decided the

consequences of an IRS levy on a debtor's checking account, Id at 185. . Less that one day after the

IRS issued its notice of levy against the bank account, the debtor corporation filed for chapter 11,

thus freezing its assets in accordance with the automatic stay provisions of § 362 of the Bankruptcy
Code id.. Later that same day, the bank complied wit the levy, issuing a check to the IRS for the
entire balance of the debtor's account. Id. . The effect of the IRS's notice of levy was a crucial issue
for the court. See id. at 186. After examining the applicable provisions of the Internal Revenue Code,
the court concluded that the IRS's levy against the bank account was incomplete, and it held that the
notice of levy was not by itself sufficient to transfer the bank funds to the government. Id. at 190..
The court thought the additional step of serving a notice of seizure under § 6331(a) of the I.R.C. was
required. Id at 188.  It has been established that the trustee's turnover power can bring into the estate
property that a creditor seized and continued to possess prior to bankruptcy, Whiting Pools 462 U.S.
at 206. In *Dunne Trucking,* the court concluded that the IRS never had possession of the property
prior to bankruptcy, because its levy procedures had not been completed. *Dunne Trucking,* 32 B.R.
at 190.. Consequently, wresting the property away from the IRS that it held prepetition was not an
issue; the debtor controlled the property when it filed for bankruptcy. As a result, the automatic stay
prevented any creditor from obtaining possession by means of nonbankruptcy procedures. Id at 193.
. According to the court, the debtor therefore retained all of its rights in the property and the funds
were subject to turnover under § 542 Id at 190. Subsequent courts have supported Dunne Trucking's
argument. See, e.g. Rouse v. United States, (In re Suppliers, Inc.), 41 B.R. 520, 521-23 (Bankr. E.D.
Ky. 1984); Rose v. Commercial Nt'l Bank (In re Rose), 112 B.R. 12 (Bankr, E.D. Tex. 1989);
professional technical Servs, v. IRS (In re Professional Technical Servs. 71 B.R. 946 (Bankr. E.D.
Mo), Aff'd in part No. 87-780C (2), 1987 WL 47833 (E.D. Mo. Oct. 15, 1987).

. Obviously, this payment must come before the June 1, 2009, commencement of the Debtor's
bankruptcy case or it violates the automatic stay. See 11 U.S.C. § 362.. Property that the debtor

clearly has unfettered command and control over, and constructive receipt at the time the bankruptcy petition is filed is frozen in the estate by operation of the automatic stay. See .11 U.S.C. § 362, 541.

In *Phelps v. United States, 421* U.S. 330, 95 S.Ct. 1728 (1975), the court considered the effect of tax levy: "Historically, service of the notice has been sufficient to seize a debt,,,and notice of levy and demand are equivalent to seizure." 421 U.S. 330, 337 (1975), citing *Sims v. United States,* 359 U.S. 108, 79 S.Ct. 641; *Brewer v, United States*, 1991 WL 338331 (S.D.N.Y. 1991) (" Notice of levy and demand are equivalent to seizure,"), citing *Phelps*.

Neverless, these pronouncements have been largely ignored by courts that insist that actual payment to the IRS is required to transfer possession of property. The rationale for this rejection of *Phelps* is the Supreme Court decided Phelps under the pre-1978 Bankruptcy Code, and it is therefore no longer seen as good law. The holding in Phelps concerned the difference between summary and plenary jurisdiction, concept that did not rely on the summary-plenary distinction; See e.g., *DiFlorio v United States*, 30 B.R. 815, 817-18 (N.D.N.Y, 1983. The Court's point in *Phelps* is just as applicable to the new Code as it was to the old. Moreover, the Supreme Court reiterated its belief that notice of levy gives the IRS constructive possession over property in *G.M. Leasing,* a non-bankruptcy case decided three years after *Phelps*.

In this case, in contrast to the *Dunne Trucking,* case, the Notice of Levy was served on Debtor pre-petition. Thus, the IRS had unfettered command and control of the GM/UAW ERISA and IRC qualified pension plan payments, if and only if this District Court determines that the GM/UAW ERISA and IRC qualified pension plan payments since the only subject matter jurisdiction that this Court has it to determine if it does or not have jurisdiction. Even, in the event

Page 25 of 46

that this Court does have subject matter jurisdiction, the fact that Debtor exercised unfettered common and control both pre-petition and post-petition does not result in a legal exercise of command and control given that the "procedures applicable" to the May 19, 1999, Notice of Levy were given to Debtor within the four (4) corners of that seizure document. Even if somehow it is determined that where the IRS determined that omission of the signature in the Notice of Levy is an error, the IRS has not come forward with such a declaration even though the IRS has been given an opportunity to be heard on this motion since the IRS was served with a copy of Movant's Motion.

6.      All other items are incorporated herein by reference as though fully stated.

7.      Debtor addresses himself to the subject of "discovery" at items #7, 19, and 22. In the interest of brevity Movant will address himself to all three items in this item. At item #7 Debtor states that: "nor has any discovery been completed, or properly initiated , in the District Court Action."

        At item # 19, Debtor states that; "...discovery has not occurred in the District Court Action." Third line from bottom at page 10 of debtor's reply. At item #22, Debtor alleges that Movant will '...continue... seeking discovery." Page #12.

8, 9, 10, 11,12, 13, and 14.    All other items are incorporated herein by reference as though fully stated..

15, 16, and 17.    Debtor is incorrect in its assertion that Movant is an unsecured creditor.  Movant

was an employee of Debtor for 31 years, On March 1, 1993, Movant became a former employee of

Debtor. Under the terms of the GM/UAW ERISA and IRC qualified pension plan, Movant had

equity in the plan based on his 31 years as a former employee and retiree/participant under ERISA

law and the terms of the plan. There is no dispute between Debtor and Movant. See item #4 of

Debtor's reply. .

    There are two (3) documents which supports Movant's contention that Debtor has had no

equity in the pension plan payments starting with May 19, 1999: (1) the May 19, 1999, Notice of

Levy; (3) and the U.S. Bankruptcy Court order dated May 8, 2001.

> THIS LEVY WON'T ATTACH FUNDS IN IRAS, SELF-EMPLOYED
> INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT
> PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IS SIGNED IN THE
> BLOCK TO THE RIGHT."

Th he Notice of Levy, attached **Exhibit "B"**is not signed "...IN THE BLOCK TO THE

RIGHT." Accordingly, this Notice of Levy cannot be used by Debtor to seizure Movant's interest

in the GM/UAW pension plan payments. Yet, it was used by Debtor even though the Notice of Levy

was in compliance with "nonbankruptcy law," 26 U.S.C. § 6331(d)(4)(B).:

The Bankruptcy Court order of May 8, 2001, (exhibit "C"),  provides that:

"THIS CASE is before the Court on the debtor's Motion to Strike the United States
Objections to Debtor's Claimed exemptions ( docket entry #20). The United States of
America did not object to the Debtor's claimed exemptions. See Docket Entry #17, page 3,
lines 16-17 and page 4, lines 2-3. **The Debtor's exemptions claimed in Schedule C of his
petition were automatically granted when there was no objection to those claimed
exemptions within thirty days of the completion of the 341 meeting of the creditors**.
(emp added by Lawrence). Therefore, it is hereby

ORDERED AND ADJUDGED that the Debtor's motion to strike objections to his claimed
exemptions is MOOT, and therefore is DENIED.

DONE AND ORDERED at Tallahassee, Florida this 8th day of May, 2001.

(Signed)

Lewis M. Killian, Jr."

Exhibit "C". Schedule referred to in the above order is exhibit "D". .

:Up until May 19, 1999, the date that the Government served its Notice of Levy on Debtor, Debtor had unfettered command and control over the pension plan payments attributable to Movant. The service of the this Notice of Levy on Debtor stripped debtor of the unfettered command and control of the pension plan payments held in trust by debtor and concurrently shifted the unfettered command and control over the pension plan payments

18.    Movant has brought his motion pursuant to  11 U.S.C.  § 362(d). 11 U.S.C.  § 362(g)(1), (2) provides that:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
> > **(1)** the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> > **(2)** the party opposing such relief has the burden of proof on all other issues.

Debtor has no equity in the GM/UAW ERISA and IRC qualified pension plan payments. 11 U.S.C.  § 362(d)(1) "...authorizes the court to grant relief from the automatic stay for 'cause', and where "...the debtor lacks equity in that portion of the [GM/UAW ERISA and IRC qualified pension plan payments ] property and the property is not necessary for an effective reorganization. The subsections of section 362(d0 are disjunctive, and the movant need only satisfy only one of the two to obtain relief" *In re Touloumis* 170 B.R. 825, 827 (Bankr. S.D.N.Y, 1994). Thus, Movant has the burden in this proceeding "...of proof on the issue of the debtor's equity in [the GM/UAW ERISA and IRC qualified pension plan payments] property." id. All equity in the GM/UAW ERISA and IRC

Page 28 of 46

qualified pension plan payments property was constructively received the Government on May 19, 1999, when the pre June 1, 2009, Notice of Levy was served on the Debtor. *Chevron, U.S.A. Inc., United States*, 705 F.2d 1487 (CA9, 1983) ( "In Phelps v. United States [75-1 USTC § 9467], 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), the Supreme Court ruled that a tax levy creates a 'custodial relationship' between [General Motors Corporation] and the United States, reducing the property to the 'constructive possession' of the government. Id, at 334, 95 S.Ct. At 1731. The Court declared that 'notice of levy and demand [on May 19, 1999] are equivalent to seizure.' Id, at 337, 95 S.Ct. At 1732; see Matter of Pittsburgh Penquins partners 598 F.2d 1299, 1302 (3d. Cir., 1979); American Acceptance Corp. V. Glendora Better Builders, Inc., 550 F.2d 1220, 1222 (9th cir. 1977). Thus, given that the Governments' May 19, 1999, Notice of Levy was served on Debtor pre-voluntary petition date, this "seizure" gave the Government "constructive receipt of the equity in the GM/UAW ERISA and IRC qualified pension plan payments property. Movant has met his burden of proof and has done so by a quantum of admissible credible evidence that has not been disputed by Debtor. As such, Debtor now "...has the burden of proof on all other issues." 11 U.S.C. § 362(g)(2).

Under these circumstances, the Movant "...has made a *prima facie* showing that cause exists under Section 362(d)(1) of the Bankruptcy code to grant relief from the stay to permit...". Touloumis, id to permit the United States District Court to continue its pre-petition litigation against the Debtor. The GM/UAW ERISA and IRC qualified pension plan payments property which the Government gained constructive receipt of when it "seized" that property on May 19, 1999, vis-a-vis the Notice of Levy. The constructive receipt of GM/UAW ERISA and IRC qualified pension plan payments property that was constructively seized by the Government lacks any connection with Debtor's

bankruptcy case the litigation in District Court will have no prejudice on or affect the interest of the

Debtor or any other entity who has standing in this action. See e.g. Sonnax Industries, 907 F.2d at

1286.

The Debtor's argument presupposes that the seizure of the   GM/UAW ERISA and IRC

qualified pension plan payments  property that was constructively receipted by the Government is

still by some as unexplained manner still property of the estate of the Debtor. If this is Debtor's

litigation position, then let Debtor come forward with admissible credible evidence to support its

burden of proof as provided for 11 U.S.C.  § 362(g)(2),

a.    **It is Not premature at This Stage in the Bankruptcy Proceedings to Lift the
Automatic Stay and Doing so Would NOT Burden the Estate**

19.    Allowing the District Court Action to proceed would not interfere with Bankruptcy

proceeding s given that as is more fully developed in the below article  - **Subject Matter
Jurisdiction of the Bankruptcy Court.**.

Article III of the Constitution restricts the jurisdiction of all federal courts; the court may

adjudicate only actual, ongoing cases or controversies. U.S.Const., art. III, § 2, cl. 1; Mills v. Green,

159 U.S. 651, 653, 16 S.Ct. 132, 132-33, 40 L.Ed. 293 (1895). Article III precludes the court from

deciding "questions that cannot affect the rights of litigants in the case before them," and limits the

court to resolving "real and substantial controversies admitting of specific relief through a decree of

a conclusive character, as distinguished from an opinion advising what the law would be upon a

hypothetical state of facts." Lewis v. Continental Bank Corp, 494 U.S. 472, 477, 110 S.Ct. 1249,

1253, 108 L.Ed. 2d 400 (1990). "This case or controversy requirement subsists through all stages

of federal judicial proceedings[;]...[t]o sustain....jurisdiction," [t]he parties must continue to have a

"personal stake in the outcome," Id, at 477-78, 110 S.Ct. At 1253-54. "To sustain [appellate] jurisdiction in the present case, it is not enough that a dispute was very much alive when the suit was filed, or when review was obtained," id at 477, 110 S.Ct. At 1253. Put another way, "[t]he case must be 'live' at every stage of the proceedings, including appeal." U.S. v. Munsingwear, Inc. 340 U.S. 36, 39, 71 S.Ct. 104, 106-07, 95 L.Ed. 36 (1950).

Movant argues that the estate will not be burdened of the court permits the District Court litigation to proceed because the imposition of a constructive trust, here the GM/UAW ERISA and IRC qualified pension plan agreement is not property of the estate of debtor and thus, would not interfere with the Debtor's Chapter 11 case at any time. However, while the stay must be lifted to enable the District Court to determine the pending facts and issues in that action, this Court will determine whether a constructive trust is involved here, it is for this Court, in the first instance, what is property of the estate. *See In re Continental Airlines,* 138 B.R. 442, 445 (the determination of what constitutes property of the debtor's estate is one of the core proceedings arising under title 11 and is inherently an issue to be determined by the Bankruptcy court. As explained in *In re Flanigan,* 503 F.3d 171, 180-11 (CA2, 2007):

> The effect of a constructive trust in bankruptcy is profound. While the bankrupt estate is defined very broadly under § 541(a)(1) of the Bankruptcy Code to [*18] include all legal or equitable interests of the debtor, any property that the debtor holds in constructive trust for another is excluded from the estate pursuant to § 541(d), which states
> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but      not to the extent of any equitable interest in such property that the debtor      does not hold. 11 U.S.C. § 541(a)(1), (d); see also Sanyo Elec., Inc. v.      Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88,      93 (2d Cir. 1989). A constructive trust thus places its beneficiary ahead of      other creditors with respect to the trust *res.*

11 U.S.C. §541(a)(1), (d); see also Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989). A constructive trust thus places its beneficiary ahead of other creditors with respect to the trust *res*.

Granting Movant stay relief will not result in the imposition of a constructive trust and, therefore, neither Debtor nor the estate will be prejudiced.. Debtor has failed to meet it's initial burden of proving that the GM/UAW ERISA and IRC qualified pension plan payments income is not in the constructive possession of the Government; why the seizure of Movant's interest in GM/UAW ERISA and IRC qualified pension plan payments income is not in violation of the May 19, 1999, Notice of Levy (exhibit "B") and the Bankruptcy Court Order of May 8, 2001 and how Debtor has not violated the provisions of 29 U.S.C. § 1202( c ) as alleged by Movant; how Debtor has not violated the provisions 26 C.F.R. 1.401(a)-13(b)(1). 29 U.S.C. § 1144(d), how Debtor has not violated 26 U.S.C. § 401 and 26 C.F.R. 1.401(a)-13(b)(1); and how Debtor has not violated the terms of the plan which specifically forbids alienation in the absence of written authorization.

Plaintiff filed an Amended Complaint in the above referred to litigation. Defendants' have answered. Plaintiff's allegations at item #18, 19 and defendants' reply to the same (D.E. #55) ( "D") provides that:

18.    Plaintiff and Defendant have never entered into any agreement or arrangement thereby authorizing Defendants to extract, alienate or reduce any amount of the pension plan payments that Defendant is obligated to pay to Plaintiff under the GM/UAW Pension Plan Agreement.
18.    Omitted
19.    Defendant voluntarily elected to pay to the Internal Revenue Service the amount of $32,985.00, the same amount that Defendant is now alienating under Plaintiff's rights under General Motors/United Auto Workers ("GM/UAW") Pension Plan Agreement

19    Omitted

For purposes of Fed. R. Civ. P, Rule 8(a), these replies constitutes an admission on the part

of defendants'. Defendants' have now admitted that there never was any written authorization under

the terms of the plan authorizing the alienation that is now and has been ongoing on. Facts admitted

in an answer are judicial admissions that bind debtor throughout this litigation. Gibbs ex rel Estate

of Gibbs v. Cigna, 440 F.3f 571 (CA2, 2006), citing Bellefonte v. Argonaut, 757 F.2d 523, 528

(CA2, 1985); see also Western World v. Stack Oil 922 F.2d 118, 121-22 (CA2, 1990). Thus. In view

of the fact that debtor has admitted that Movant has never signed any written authorization as

provided for  of 29 U.S.C. § 1056(d)(2) , 26 U.S.C. § 401(a)(13(A) and  26 C.F.R. § 1.401(a)-

13(d)(1)( i ), (ii),  the anti-alienation provisions of  Article VII, Section 3(e) ( **Administrative**

**Record, page #47-48)** of the GM/UAW  Pension Plan Agreement and  Section 3(a)(9) of the plan,

coupled with the fact that debtor continues this unlawful taking and based on each of the two (2)

dated May 14, 2007, and September 5, 2007,.

Movant has documented admissible evidence that Movant has made a prima facie case of

cause and inadequate protection for this Court to lift the stay in order that the District Court in the

litigation can rule on Debtor's and Movant's pending motions for Summary Judgment and the other

pending motions..

The debtors' bears the burden to show that an exclusion applies to deny benefits. *Horton v.*

*Reliance Standard Life Ins., Co.,* 141 F.3d 1038 (CA11, 1998).  For example, the debtors' here bear

the burden to show that in the absence of any "written authorization" debtors' have the authority

under ERISA and the terms of the plan to exercise authority to alienate defendants' pension plan

payments.

### A.      The Ten Percent Provision of 26 U.S.C. § 401(a)(13(A).

This statute, 26 U.S.C. § 401(a)(13(A),  provides that:

(13) Assignment and alienation.—

(A) In general.— A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, *there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan* unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975 (d)(1). This paragraph shall take effect on January 1, 1976 and shall not apply to assignments which were irrevocable on September 2, 1974.

**B.    The Ten Percent provisions of 26 C.F.R. § 1.401(a)-13(d)(1)( i ), (ii)**

Buttressing, and reinforcing  29 U.S.C. § 1056(d)(2) and 26 U.S.C. § 401(a)(13(A) is

26 C.F.R. § 1.401(a)-13(d)(1)( i ), (ii), this regulation provides that:

(d) Exceptions to general rule prohibiting assignments or alienations–(1) Certain voluntary and revocable assignments or alienations. Not withstanding paragraph (b)(1) of this section, a plan may provide that once a participant or beneficiary begins receiving benefits under the plan, the participant or beneficiary may assign or alienate the right to future benefit payments *provided that the provision is limited to assignments or alienations which-- (i) Are voluntary and revocable; (ii) Do not in the aggregate exceed 10 percent of any benefit payment*

**C    Debtors ' Have Developed a Pattern of Behavior Here That Has Denied to**

**Plaintiff Procedural Due Process and Alienation of Plaintiff's Pension Plan Payments.**

That pattern of behavior not only violates the anti-alienation  provisions of 29 U.S.C. §

1056(d)(2) , 26 U.S.C. § 401(a)(13(A) and  26 C.F.R. § 1.401(a)-13(d)(1)( i ), (ii), but also violates

the anti-alienation provisions of  Article VII, Section 3(e) **( Administrative Record, page #47-48)**

of the GM/UAW  Pension Plan Agreement and  Section 3(a)(9) of the plan in the context of the

"authority" of the "Board".

Page 34 of  46

The lifting of the stay by this Court will result in either a partial or complete resolution of the issues in the United States District Court, Middle District of Florida. Movant respectfully submits that staying Movant's pending action against Debtor in the United States District Court in the Middle District of Florida., case number **5:O7-CV-408 OC** will deprive Movant of his ability to pursue his meritorious claims as is more fully set forth in Movant's Amended Complaint. By order of the Court, Movant filed and served his Amended Complaint. on February 29, 2008 , Docket entry # 47. This Amended Complaint is incorporated herein by reference as though fully set forth herein. Without relief from the automatic stay, Movant stands to forfeit those claims and there is no adequate, substitute relief available to Movant. See the Eleventh Circuit's order entered on May 26, 2009, holding, in part, that "[L]awrence has the adequate alternative remedy of moving the district court to rule."

In regards to *Sonnax* factor twelve, Movant has carried his initial burden and the Debtor has failed to carry the necessary burden to warrant continuation of the automatic stay. . In the case of *In re Bogdanovich*, 292 F.3d 106 (CA2, 2002), the Second Circuit held that:

> the term "for cause" is not defined in the bankruptcy code, we have adopted 12 factors to consider when deciding whether or not to lift a stay in order that litigation may continue to completion in another tribunal. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.),* 907 F.2d 1280, 1285-86 (2d Cir.1990). These factors are set forth in the margin.[1]. Not every one of these factors will be relevant in every case. *In re Mazzeo,* 167 F.3d at 143. The ultimate determination whether to lift a stay depends upon the facts underlying a given motion. *See In re Sonnax,* 907 F.2d at 1286. *Sonnax* factors (1), (10) and (12) are relevant to the facts of this case. These factors are: "(1) whether relief would result in a partial or complete resolution of the issues; ... (10) the interests of judicial economy and the expeditious and economical resolution of litigation; ... and (12)[the] impact of the stay on the parties and the balance of harms." *Id.*

Debtor alleges at item #19 pages 10-11 that: "The twelfth [Sonnax] factor justifies maintaining the stay because lifting the stay would severely harm the Debtor's estate whereas

preserving the estate would not harm the Plaintiff [sic] given that his likelihood of any relief against the Debtors is fractional at best and such relief can be obtained with greater efficiency and reduced costs through the claims process." Yet, Debtor has failed to come forward with any credible evidence or any evidence at all as to how "...lifting the stay would severely harm the Debtor's estate...". Nor has Debtor come forward with any evidence to support it's contention that Movant's "... likelihood of any relief against the Debtors is fractional at best and such relief can be obtained with greater efficiency and reduced costs through the claims process." Yet, again the Debtor has failed its initial burden under 11 U.S.C. § 362(g)(1). Without any evidence as to how "...lifting the stay would severely harm the Debtor's estate..." or any evidence as to how the "... likelihood of any relief against the Debtors is fractional at best and such relief can be obtained with greater efficiency and reduced costs through the claims process,," Movant has no duty under 11 U.S.C. § 362()g)(2) to meet the "...burden of proof on all other issues."

In regards to the twelfth Sonnax factor - "[the] impact of the stay on the parties and the balance of harms." *Id, ",* the Second Circuit held in *In re Bogdanovich,* id, that:


Debtor alleges that "[T]he eleventh [Sonnax] factor weighs in favor of preserving the stay because there is not pending trial and indeed, even discovery has not occurred in the District Court Action." The eleventh [Sonnax] factor does not weighs in favor of preserving the stay. For example, given that both parties in the District Court Action have filed competing motions for summary judgment the District Court Action will require far less the would take place if Debtor is required to proceed with the proceedings before this Court regarding the issues currently pending before the District Court. Therefore, it is Movant's contention that this Sonnax factor favors Movant.


Page 36 of 46

On May 12, 2008, the District Court entered an Order (Exhibit "E"). This order provides, in part, that:

> Because this involves the rather simple and straight forward issues of whether GM could reduce Plaintiff's pension benefits to recover the overpayments to the IRS - and not whether Plaintiff was qualified for pension benefits or whether Plaintiff was eligible for certain pension benefits - none of the limited circumstances some courts have recognized may entitle a party to discovery have any relevance in this case. Accordingly, Plaintiff is not entitled to any further discovery outside of the administrative record.

At footnote #12 of the Order of May 12, 2008, the Court stated that "[P]laintiff has filed the full administrative record (Docs. 57 & 59 and thus Planitiff has access to all of the documents relevant to the decision of the Boar[sic] of Administration." Thus, until Debtor can come forward and meet it's initial burden of showing to the satisfaction of this Court that Debtor would be prejudiced by any further discovery in the District Court and how this Court is not bound by that order of May 12, 2008, given that the issue of any further discovery has been injucted by that order, the balance falls in favor of lifting the stay in order that the District Court can finally resolve that action.

20, 21. 22. 23. 24 and . 25. Debtor, in the interest of brevity and the limited judicial and administrative resources of this Court and that of Debtor incorporate herein be reference that reply set forth in all other items of this reply.

### Subject Matter Jurisdiction of the Bankruptcy Court

By authors Wendell H. Adair, Jr., Kristopher M. Hanse, Kenneth P Psquale, Claude g. Szyfer,

dated Dec 1, 2000

Movant is not the author of the below article. The authors are those named above. While

Page 37 of 46

admittedly this proceeding is not a class action, the same jurisdictional arguments set forth below apply to this proceeding. The article follows.

The jurisdiction of the bankruptcy court, like that of any other federal court, is limited by statute. Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." [1] The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11...to the bankruptcy judges for the district." [2]

Section 157 does not provide the bankruptcy courts with the full authority over all matters as to which a district court may exercise jurisdiction under Section 1334.[3] Section 157 differentiates between "core" and "non-core" proceedings. Pursuant to 28 U.S.C. §157(b)(1), a bankruptcy judge "may hear and determine all...core proceedings arising under title 11...and may enter appropriate orders and judgments, subject to review [under 28 U.S.C. § 158]." Section 157(b)(2) contains a non-exclusive list of "core proceedings." [4] To determine whether a proceeding is core, a court must examine whether "the nature of th[e] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." [5] In other words, a core proceeding, "for bankruptcy jurisdictional purposes, is [an] action that has as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment." [6]

Bankruptcy courts may exercise subject matter jurisdiction over core claims that "arise under" or "arise in" a bankruptcy case. A bankruptcy court will also have subject matter jurisdiction over those non-core proceedings that "relate to" a bankruptcy case. [7] A civil proceeding is "related to" a bankruptcy case, for jurisdictional purposes, when the action between the parties affects how much

Page 38 of 46

property is available for distribution to creditors of the bankruptcy estate or allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities. [8] "Related to" jurisdiction is limited, and bankruptcy courts lack jurisdiction over matters which will have no effect upon the debtor's estate. [9]

One of the first cases to apply these basic jurisdictional tenets to determine whether jurisdiction exists to hear a debtor's class action was Aiello v. Providian Financial Corp. (In re Aiello), 231 B.R. 693 (Bankr. E.D.Ill. 1999), in which the bankruptcy court held that subject matter jurisdiction existed over the debtor's nationwide class allegations. There, the bankruptcy court held that jurisdiction existed because the named debtor's claim for violation of the automatic stay constituted a "core matter" under the Bankruptcy Code. [10] The Aiello court held that the debtor's class claims were core and thus rejected the defendants' argument that the bankruptcy court's jurisdiction was dependent upon whether the class action could have an effect upon the named debtor's estate. To the court, that test was relevant only to a determination whether the court had jurisdiction to hear a non-core, "related to" matter:

By its very definition, 'related-to' jurisdiction only applies in non-core matters as an alternative basis of jurisdiction. It assumes that the matter does not 'arise in' the case at hand and therefore it requires some other nexus vis-a-vis the estate involved. Such a nexus, however, is not required when the Court is interpreting fundamental provisions of the Bankruptcy Code as to all of the class members. There is no basis for artificially limiting core jurisdiction in debtor class actions to "related-to' situations. [11]

In *Williams v. Sears, Roebuck & Co.*, 244 B.R. 858 (Bankr. S.D. Ga. 2000), the bankruptcy court rejected the rationale of Aiello in determining whether it had jurisdiction to determine a debtor's

proposed nationwide class action against Sears that alleged violations of the discharge and automatic

stay provisions of the Bankruptcy Code, as well as violating the Truth in Lending Act, 15 U.S.C. §

1601 et seq. Although recognizing that, "[a]t first blush, it would appear that the class action is the

perfect procedural device to remedy systematic, widespread violations of law by a single defendant,

especially where the damage resulting from such illegal conduct is presumably dispersed over a large

number of individuals, thereby reducing the incentives that any individual plaintiff might have to

bring suit against the wrongdoer," the *Williams* court also acknowledged that the distinguishing fact

is that "here the class is comprised of debtors, each of whom has his own unique bankruptcy case."

[12]

The Williams court cited to the handful of cases that previously addressed the jurisdictional

issue and found that the courts were "reticent to exercise jurisdiction over a claim seeking relief on

behalf of a class of debtors in bankruptcy against a single creditor." [13] Holding that the named

plaintiff's claims before it were plainly core and that, just as plainly, the claims would have no effect

upon that plaintiff's estate, the court narrowed the issue to "whether bankruptcy jurisdiction over the

claims asserted by Plaintiff on behalf of the putative class of debtors exists simply because the claims

'arise under' the Bankruptcy Code, although the claims clearly do not 'relate to' Plaintiff's bankruptcy

case." [14] The court rejected the holding in Aiello, noting that:

The statutory definition of 'core proceeding' clearly implicates matters concerning the estate of

a bankrupt. The drafters of § 157 would probably be surprised to hear of a court that deemed a

proceeding to be a 'core bankruptcy proceeding' without, at the same time, finding that the

proceeding related to the bankruptcy estate of the debtor. [15]

Surprisingly, the Williams court concluded that although it lacked subject matter jurisdiction to

determine claims on behalf of a nationwide class of debtors, it did have jurisdiction to hear the claims

of that portion of the class that were debtors in cases within the district in which the court sat. [16]

That holding, however, is inconsistent with the court's own analysis and holding that a claim raised

in a bankruptcy court must have some effect upon the named debtor's bankruptcy estate in order for

the bankruptcy court to have jurisdiction over that claim. Indeed, if the action does not involve

property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely

beyond the bankruptcy court's subject matter jurisdiction. This can be gleaned from a general

principle of bankruptcy law: if the resolution of litigation cannot affect the administration of the

estate, the bankruptcy court does not have jurisdiction to decide it. [17]

Thus, whether or not the absent class members are debtors in bankruptcy cases within the same

district, the exercise of jurisdiction upon the claims of absent class members cannot involve the

administration or property of the named debtor's estate and, therefore, subject matter jurisdiction is

entirely lacking.

The bankruptcy court in Noletto [18] engaged in a thorough discussion of statutory

interpretation and legislative history in holding that it had jurisdiction over a case involving a putative

nationwide debtor's class action that asserted claims for alleged violations of the bankruptcy laws.

Defendants argued that both the bankruptcy court and the district court lacked jurisdiction over the

class claims. [19] The Noletto court found that the claims were core because they related only to the

bankruptcy laws and accordingly, like the Aiello court before it, rejected defendants' contention that

jurisdiction was lacking because the claims did not "relate to" the bankruptcy cases of other debtors.

The court also found that although § 157(b)(2) uses the singular terms "estate" and "a case," that

statute does not provide an exclusive list of core proceedings, and that a claim could be core under

§ 28 U.S.C. § 157(b)(2) so long as it concerned the administration of a debtor's estate, not necessarily the estate of the debtor asserting the class claims. [20] The court conceded that it "found no evidence that debtor class actions were envisioned by the drafters," but dismissed that point because "the jurisdictional statutes were written in a manner to cover even those actions." [21]

Other bankruptcy courts have expressly recognized their limited jurisdiction in holding that they lack jurisdiction over a debtor's class action because the claims of the absent class members cannot affect the property of the named debtor's bankruptcy case. For example, the court in Knox[22] dismissed a class action complaint brought by a Chapter 13 debtor who alleged that the creditor-defendant's practice of submitting inflated secured claims in Chapter 13 cases violated both state and federal law. The plaintiff in Knox asserted claims on behalf of putative class members alleged to be similarly situated debtors in other bankruptcy cases, both in the forum district as well as all other judicial districts. The bankruptcy court held that no core jurisdiction "lies in this bankruptcy case over such claims. Moreover, class claims for monetary recovery could only benefit the class members, but could not affect the amount of property available for distribution in Knox's case and thus could not affect allocation of property among Knox's creditors. This Court is not a forum for recovery of money that cannot be part of the bankruptcy estate of this Debtor." [23] The Knox court also held that "related to" jurisdiction did not lie for the asserted class claims because the resolution of the class claims could have absolutely no effect on the amount of property available for the class representative's estate or to be distributed to the class representative's creditors. [24]

Similarly, in Lenior v. GE Capital Corp. (In re Lenior), [25] the bankruptcy court held that it lacked subject matter jurisdiction over the Chapter 13 debtor's class claims that GE Capital Corp. had improperly filed inflated proofs of claim, thus violating Section 105 of the Bankruptcy Code and New

York General Business Law § 345. Conducting the same analysis as the court in Knox, the Lenior court concluded that it did not have subject matter jurisdiction over the class claims because those claims would not affect the amount of property available for distribution in the Plaintiff's estate. [26]

### Conclusion

The decisions in cases like Aiello expand the jurisdictional scope of the bankruptcy courts beyond that which Congress authorized. The issue is not whether the test for "related to" jurisdiction must be satisfied even when the claims at issue are core, but rather whether a debtor's putative class claims, even those which are solely core, must have a conceivable effect upon the named debtor's estate. To answer that question in the negative ignores the fact that absent some effect upon the estate of the debtor, there is no bankruptcy issue at stake at all in that case and no reason for the bankruptcy court to hear the issue. If a debtor is damaged by a particular defendant's actions, the remedy is to assert an individual claim in that debtor's bankruptcy case that will, by definition, have a potential effect upon the estate. Asserting that claim as a class claim does nothing to advance the purposes of the bankruptcy law.

[1] 28 U.S.C. §1334(b) (1999).

1. [2] 28 U.S.C. § 157(a) (1999).

[3] See Knox v. Sunstar Acceptance Corp. (In re Knox), 237 B.R. 687, 693 (Bankr. N.D. Ill. 1999); Sturman v. Southeast Partners Corp. (In re Sturman), 222 B.R. 694, 716-17 (Bankr. S.D.N.Y. 1998).

[4] 28 U.S.C. § 157(b)(2) (1999).

[5] In re Manville Forest Products Corp., 896 F.2d 1384 (2d Cir. 1990); In re Shea & Gould, 198 B.R. 861, 866 (Bankr. S.D.N.Y. 1996).

[6] Geron v. Schulman (In re Manshul Constr. Corp.), 225 B.R. 41, 45 (S.D.N.Y. 1998).

[7] Geron, 225 B.R. at 45.

[8] Id.; Knox, 237 B.R. at 693 .

[9] Geron, 225 B.R. at 45 .

[10] Id. at 703-04. Although the Aiello court held that it had jurisdiction over the class issues, it also concluded that the debtor's proposed class could not be certified pursuant to Fed. R. Civ. P. 23 and Fed. R. Bank. P. 7023 because the plaintiff could not satisfy the numerosity, commonality and typicality requirements of the statute.

[11] Id. at 705 (citation omitted). The Aiello court distinguished a number of cases that held that jurisdiction was lacking over a debtor's class action, because each of those cases involved state law claims, and thus the bankruptcy court's non-core "related to" jurisdiction. The Aiello court seemed to concede that the bankruptcy court would lack jurisdiction over state law class allegations asserted on behalf of a proposed debtor's class. Id. at 704-05. See also Noletto v. Nationsbanc Mortgage Corp. (In re Noletto), 244 B.R. 845 (Bankr. S.D. Ala. 2000) (holding that bankruptcy jurisdiction exists over claims of a putative nationwide class because the claims asserted were core, and thus the test for "related to" jurisdiction was inapplicable).

[12] Id. at 862.

[13] Id. at 862-63.

[14] Id. at 865 .

[15] Id. at 865, n.8.

[16] Id. at 868.

[17] Gallucci v. Grant (In re Gallucci), 931 F.2d 738, 742 (11th Cir. 1991) (notwithstanding that turnover proceedings were "ordinarily...core proceedings within the jurisdiction of a bankruptcy court," the Bankruptcy Court and District Court had both erred in exercising jurisdiction over the proceeding because the turnover did not involve property of the debtor's estate); Gordon v. Shirley Duke Assocs., A.P.I. (In re Shirley Duke Assocs.,), 611 F.2d 15, 18 (2d Cir. 1979) (same); In re S & S 31 Flavors, Inc., 118 B.R. 202, 204 (Bankr. E.D.N.Y. 1990) (same).

[18] 244 B.R. 845.

[19] The argument that the district court lacked jurisdiction is faulty. The jurisdictional issue arises in the bankruptcy court because of the limitations upon that court's jurisdiction; to the contrary, the district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. §1334(b) (1999). Accordingly, a district court can hear any and all bankruptcy claims, but a bankruptcy court's jurisdiction is limited to those that "arise in," "arise under" and "relate to" a bankruptcy case.

[20] Id. at 856.

[21] Id. at 850; see also Tate v. NationsBanc Mortgage Corporation (In re Tate), Nos. 97-32126,

Page 44 of 46

97-3725, 97-32344, 97-3724, 2000 WL 1520758 (Bankr. W.D.N.C. Oct, 2, 2000) (following Noletto and Williams in holding that the bankruptcy court has jurisdiction over a class of debtors with bankruptcy cases within the district in which the court sits). The Tate court opined that Fed. R. Bank. P. 7023 would be rendered meaningless if a bankruptcy court lacked jurisdiction over a debtor's class action. 2000 WL 1520758 at *8. However, there is no question that "Rule 23 F. R. Civ. P. applies in adversary proceedings" because creditor class actions may be properly certified without raising any of the jurisdictional questions. Indeed, such class actions, in which creditors have filed class proofs of claim or class actions against the debtor's estate, will plainly affect the administration of the debtor's estate and the property available for distribution to the creditors. See Certified Class in the Charter Securities Litigation v. Charter Co. (In re The Charter Co.), 876 F.2d 866 (11th Cir. 1989) (class proof of claim filed by creditors); In re American Reserve Corp., 840 F.2d 487 (7th Cir. 1988) (class proof of claim filed by creditors); Stoner v. LTV Corp. (In re Chateaugay Corp.), 140 B.R. 64 (S.D.N.Y. 1992), vacated on other grounds, 153 B.R. 409 (S.D.N.Y. 1993) (class of non-union retirees alleging violation of ERISA filed against debtors' estate); Lambert Group, Inc. v. Drexel Burnham Lambert, Inc. (In re The Drexel Burnham Lambert Group, Inc.), 130 B.R. 910 (S.D.N.Y. 1991), aff'd, 960 F.2d 285 (2d Cir. 1992) (class of claimants alleging securities fraud claims against debtor's estate).

[22] 237 B.R. 687.

[23] Knox, 237 B. R. at 693-94 (citation omitted); see also, Simmons v. Ford Motor Credit Co., (In re Simmons), 224 B.R. 879, 886 (Bankr. N.D. Ill. 1998) (same); Fisher v. Federal Nat'l Mortgage Ass'n, 151 B.R. 895, 897 (Bankr. N.D. Ill. 1993) (same).

[24] Id. at 694.

[25] 231 B.R. 662, 667-68 (Bankr. N.D. Ill. 1999).

[26] Id. at 668 .

[27] Williams, 244 B.R. at 86

## MOVANT'S CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Movant respectfully requests that this Court enter an order, substantially in the form annexed hereto as exhibit "A" modifying the automatic stay to enable Movant to proceed with the action in the United States District Court in the Middle District of Florida and to allow the District Court to fully rule on any and all proceedings in the District Court case number 5:07-CV-408 OC  and any other tribunal  should the need arise.

Page 45 of 46

Dated:  November 3, 2009

_Walter J. Lawrence_

Walter J. Lawrence, Movant in pro per

## CERTIFICATE OF SERVICE

This is to certify that on November 3, 2009, Walter J. Lawrence did place the above

document in a U.S. mal receptacle with postage first fully paid for first class delivery with the address

of:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Not For Publication

|  |  |  |
|---|---|---|
| In re | : | Chapter 7 |
| LINDA CICALE, | : | Case No. 05-14462 (AJG) |
| Debtor. | : |  |

## OPINION AND ORDER GRANTING MOTION
## TO VACATE AUTOMATIC STAY

Before the Court is the motion of Wachovia, N.A., ("Wachovia") to vacate the

automatic stay under section 362(d)(2) of title 11 of the United States Code (the

"Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001(a).

### I. Background

On March 16, 2002, Madeline Cicale ("Madeline") executed a deed conveying the

real property known as 1834 Mulford Avenue, Bronx, New York (the "Real Property") to

herself and Linda Ciacle ("Linda"). Based upon the conveyance, each owned one-half of

the Real Property as tenants-in-common. Madeline and Linda executed an Open-End

Mortgage in favor of Wachovia in the original principal amount of $100,000.00 (the

"Wachovia Mortgage") and a Clerical Error Authorization and Notice of Right to Cancel.

In addition, Linda executed a Prime Equity Line of Credit Agreement & Disclosure

Statement (the "Line of Credit"). Linda used the proceeds of the Wachovia Mortgage to

write a check in the sum of $100,000.00. From June 2002 through may 2005,

approximately 29 payments were made on account of interest and other charges accruing

under the Wachovia Mortgage and the Line of Credit. Linda conveyed her one-half

interest in the Real Property back to Madeline by deed dated September 30, 2002.

*Exhibit A*

On June 21, 2005, Linda (hereinafter referred to as the "Debtor") filed a Chapter 7

petition. The balance due and outstanding on the Wachovia Mortgage as of June 21,

2005 was $103,385.90. On September 1, 2005, Wachovia moved for relief from the

automatic stay under section 362(d)(2) of the Bankruptcy Code. The Trustee had no

objection to Wachovia's requested relief, however, on September 15, 2005, Wachovia

withdrew its motion for relief from the automatic stay. On October 14, 2005, Wachovia

filed a complaint, Adversary Proceeding 05-02862, alleging that the sums due under the

Wachovia Mortgage are non-dischargeable under section 523(a)(2)(A) of the Bankruptcy

Code and that claim was based upon an affidavit by Madeline swearing that the Debtor

forged Madeline's signature on the Wachovia Mortgage.

On January 6, 2006, Madeline filed a complaint against the Debtor, Adversary

Proceeding 06-01004, alleging that the Debtor forged Madeline's signature on the

Wachovia Mortgage. In May of 2006, Madeline moved for a default judgment against

the Debtor and submitted an affidavit which repeated and elaborated on her allegations of

wrongdoing and fraud by the Debtor.

In October 2006, Madeline sued Wachovia in Supreme Court, State of New York,

Bronx County, *Madeline Cicale v. Wachovia Bank*, Index No. 28099/06, seeking to

invalidate and nullify the Wachovia Mortgage (the "State Court Action").

On February 20, 2007, Wachovia moved for an order adding Madeline as a co-

defendant in its adversary proceeding. Wachovia also requested, by letter dated February

26, 2007, that the Court schedule a pre-motion conference under Local Bankruptcy Rule

7056-1 as a preliminary step to moving for summary judgment. On March 14, 2007, the

Debtor moved to compel Madeline to comply with outstanding discovery demands. On

March 14, 2007, Madeline moved to withdraw her adversary proceeding against the

2

Debtor. On April 18, 2007, the Court granted the Motion to Withdraw with prejudice.
On May 4, 2007, Wachovia filed the instant motion.

## II. Discussion

Wachovia moves under section 362(d)(2) of the Bankruptcy Code to vacate the
automatic stay to the extent that would permit Wachovia to commence a third-party
action against the Debtor in the State Court Action (the "Third-Party Action"). (The
Third-Party Action would also be commenced against Madeline.) Section 362(d)(2) of
the Bankruptcy Code provides that the bankruptcy court shall grant relief from the stay,
with respect to a stay of an act against property, if the debtor does not have equity in such
property, and such property is not necessary to an effective reorganization. Section
362(a)(1) of the Bankruptcy Code provides that filing a petition in bankruptcy stays the
commencement or continuation of any action or proceedings against the Debtor.

The Court finds that section 362(d)(2) is not applicable to the instant matter
because the Debtor does not have, or assert, any interest, either legal or equitable, in the
Real Property, and therefore, since the Real Property is not property of the estate, it does
not come within the reach of the automatic stay.

Although relief from the automatic stay is not warranted under section 362(d)(2),
section 362(d)(1) of the Bankruptcy Code provides that the bankruptcy court shall grant
relief from the automatic stay "for cause."[1] The Bankruptcy Code does not define the
meaning of the phrase "for cause." E.g., *Schneiderman v. Bogdanovich (In re
Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002). In determining whether sufficient cause

---

[1] The Debtor responds to the relief sought by arguing that the Sonnax analysis is the appropriate analysis
because the relevant subsection is (d)(1) and not (d)(2). The Debtor does not raise the issue of a lack of
notice as to the appropriate basis of the relief sought. Under the circumstances of this case with the
numerous status conferences and the discussions regarding the procedural posture of the case, it is
understandable that the Debtor, although not given specific notice of the basis of the relief by the motion,
was well aware of the issues and the factors that would be considered by the Court, responded accordingly,
and therefore did not raise a lack of notice issue.

3

exists to grant relief from the automatic stay, a court in this circuit should examine the

factors set forth in *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax*

*Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990), to determine whether relief from the

automatic stay is warranted.

These factors are

(1) whether relief would result in a partial or complete resolution of the issues,
(2) lack of any connection with or interference with the bankruptcy case,
(3) whether the other proceeding involves the debtor as a fiduciary,
(4) whether a specialized tribunal with the necessary expertise has been
established to hear the cause of action,
(5) whether the debtor's insurer has assumed full responsibility for defending it,
(6) whether the action primarily involves third parties,
(7) whether litigation in another forum would prejudice the interests of other
creditors,
(8) whether the judgment claim arising from the other action is subject to
equitable subordination,
(9) whether movant's success in the other proceeding would result in a judicial
lien avoidable by the debtor,
(10) the interests of judicial economy and the expeditious and economical
resolution of litigation,
(11) whether the parties are ready for trial in the other proceeding, and
(12) impact of the stay on the parties and the balance of harms.

*Id.* (citing *In re Curtis,* 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (hereafter known as

the "Sonnax Factor(s)")).

All twelve Sonnax Factors will not be relevant in every case,[2] *Mazzeo v. Lenhart*

*(In re Mazzeo),* 167 F.3d 139, 143 (2d Cir. 1999), nor will a court accord equal weight to

each element.[3] *Burger Boys, Inc. v. South St. Seaport Ltd. P'Ship (In re Burger Boys,*

---

[2]      The Court notes that Sonnax Factors 3, 5, 7, 8, and 9 are not relevant to the instant matter, leaving
seven factors for the Court to consider.
[3]      The Court notes that neither party addresses factors 4 and 6. With respect to Sonnax Factor 4, the
Court notes that the state court is not a specialized tribunal; and further, no such specialized tribunal has
been established to adjudicate the liability of the Wachovia Mortgage and thus, this factor weighs in favor
of the Debtor. With respect to Sonnax Factor 6, the Court notes that although the State Court Action
involves third parties, it cannot be said to primarily involve third parties because Wachovia must join the
Debtor in any proceeding to foreclose its mortgage against the Real Property in order to obtain complete
relief, irrespective of the fact that the Debtor has no economic interest in the Real Property, and thus, this
Sonnax Factor favors the Debtor. In reviewing these two factors, the Court finds that they have a *de*

4

*Inc.*), 183 B.R. 682, 688 (S.D.N.Y. 1994); *In re New York Medical Group, P.C.*, 265 B.R.

408, 413 (Bankr. S.D.N.Y. 2001).

The burden of proof on a motion to modify the automatic stay is a shifting one. *In*

*re Sonnax Indus., Inc.*, 907 F.2d at 1285. The initial burden rests on the movant to show

cause to modify the stay. *In re Bogdanovich*, 292 F.3d at 110; *In re Mazzeo*, 167 F.3d at

142; *In re Sonnax Indus., Inc.*, 907 F.2d at 1285. Only if the movant makes an initial

showing of cause does the burden then shift to the party opposing the relief. *In re*

*Mazzeo*, 167 F.3d at 142. Once a legally sufficient basis, or cause, is demonstrated by the

movant, the party opposing the relief must prove that it is entitled to the continuing

protections of the automatic stay. *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590 (Bankr.

S.D.N.Y. 1993). If the movant fails to meet its initial burden of demonstrating cause,

relief from the automatic stay should be denied. *In re Bogdanovich*, 292 F.3d at 110; *In*

*re Mazzeo*, 167 F.3d at 142; *In re Sonnax Indus., Inc.*, 907 F.2d at 1285. The

determination whether to modify the automatic stay depends upon the facts of each

motion. *In re Bogdanovich*, 292 F.3d at 110.

### a. Sonnax Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the Issues

Wachovia argues that the Third-Party Action would result in the complete

resolution of all state court issues, and Wachovia would only return to the Court if the

issue of fraud, on the part of the Debtor, arises in connection with a finding by the state

court that the Wachovia Mortgage was invalid. However, the Debtor argues that the

relief Wachovia has requested will not result in a complete resolution of the issues in this

---

*minimus* impact when considered with the other factors present in the instant matter and would not alter the
Court's conclusion.

5

bankruptcy case and will only delay the issue of dischargeability, which cannot be resolved in the Third-Party Action.

The Court finds that Wachovia seeks relief from the automatic stay for the purpose of resolving the issue of the validity of the Wachovia Mortgage, which may resolve the subsequent issue of the dischargeability of the Debtor's liability under the Wachovia Mortgage. Although the Debtor argues that allowing the requested relief will not result in a complete resolution of all issues, the Court has determined that Wachovia should not be forced to resolve the issue of dischargeability, one raised solely in response to Madeline's challenge to the validity of the Wachovia Mortgage, prior to a determination of the validity of the Wachovia Mortgage in the state court. The issues regarding the validity of the Wachovia Mortgage are relevant issues to consider under this factor.

Therefore, the Court finds that allowing Wachovia to proceed with the Third-Party Action will result in a complete resolution of issues regarding the validity of the Wachovia Mortgage, and thus, this Sonnax Factor favors Wachovia.

### b. Sonnax Factor 2: Lack of Any Connection With or Interference With the Bankruptcy Case

The Debtor argues that granting Wachovia's requested relief will delay the Debtor's discharge and severely interfere with the bankruptcy case. However, the Court finds that although the issue of dischargeability may be delayed, any delay experienced in the Third-Party Action will also occur if the validity of the Wachovia Mortgage was adjudicated in the bankruptcy court. Furthermore, the Court finds that the connection between the Third-Party Action and the dischargeability proceeding is that the litigation in the Third-Party Action will address issues that may be relevant to the dischargeability proceeding.

Therefore, the Court finds that although the Third-Party Action will delay the

prosecution of the discharge action, any delay will not unnecessarily interfere with the

bankruptcy case. That is because if Wachovia does not commence the Third-Party

Action, similar litigation would go forward in the discharge action, and thus, this Sonnax

Factor weighs in favor of Wachovia. Further, the Court notes that the Third-Party Action

ultimately may, in fact, expedite the resolution of any remaining issues in the bankruptcy

court.

### c. Sonnax Factor 10: The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation

Wachovia argues that it is in the interests of both judicial economy and the

expeditions and economical resolution of litigation to allow Wachovia to commence the

Third-Party Action because it would resolve the issue of the validity of the Wachovia

Mortgage, which may, in turn, resolve Wachovia's objection to the dischargeability. The

Debtor argues that if the Court were to lift the automatic stay, the adversary proceeding

regarding Wachovia's objection to the dischargeability of the Debtor's liability under the

Wachovia Mortgage will be unreasonably delayed, while a continuation of the stay is in

the interests of judicial economy because a continuation will lead to the prompt resolution

of the dischargeability of claims under the Wachovia Mortgage and simplify the issues

that must be decided in the Third-Party Action.

The Court finds, in the interests of judicial economy, that allowing Wachovia to

proceed with the Third-Party Action will not result in any unreasonable or unforeseeable

delay. Furthermore, the Court finds that allowing Wachovia proceed with the Third-Party

Action will provide the most efficient and economical resolution of the litigation because

the Third-Party Action may alleviate the need for any further proceedings in the

bankruptcy court. Thus, this Sonnax Factor weighs in favor of Wachovia.

7

*d. Sonnax Factor 11: Whether the Parties Are Ready for Trial in the Other Proceeding*

The other proceeding has yet to be commenced but it appears from the record of the various status conferences that any state court proceeding regarding the foreclosure is a relatively straight forward proceeding that will not require a great deal of trial preparation. Further, the Court is convinced that the any state court foreclosure proceeding will require far less trial preparation that would take place if Wachovia is required to proceed with the proceeding before the Court regarding the dischargeability action. Therefore, the Court finds that this Sonnax Factor favors Wachovia.

*e. Sonnax Factor 12: Impact of the Stay on the Parties and the Balance of Harms*

Wachovia argues that a continuation of the automatic stay would require it to argue the issue of dischargeability, which would be unreasonably burdensome, since the issue of the validity of the Wachovia Mortgage has not yet been determined.

The Debtor argues that if the stay is lifted, she will suffer substantial prejudice on the basis that the Debtor will have to participate in the Third-Party Action, "for an unknown period of time, at her own expense and without the security from future liability that a final discharge order would provide." The Court notes that although the Debtor has been able to procure *pro bono* counsel for the instant matter, her counsel argues that she would not be represented in state court because of her financial status." The Court implies from the Debtor's current *pro bono* counsel that they would be unable to represent her in the Third-Party Action if relief from the stay was granted. However, the Court finds that this fact is not a basis on which the Court should prevent Wachovia from proceeding with its foreclosure action in the state court.

Therefore, the Court finds that although the Debtor may not be able to procure counsel in the Third-Party Action, that does not outweigh the harm that Wachovia would

8

encounter if the automatic stay continued to prevent Wachovia from proceeding with the commencement of the Third-Party Action. Wachovia objected to the dischargeability based upon the affidavit of Madeline. To require Wachovia to litigate the issue of fraud prior to a determination of the validity of the Wachovia Mortgage would be unduly prejudicial to Wachovia, and thus, the Court finds that this Sonnax Factor weighs in favor of Wachovia.

### III. Conclusion

After considering the relevant the Sonnax Factors, the Court finds that Wachovia has satisfied its initial burden and the Debtor has failed to carry the necessary burden to warrant the continuation of the automatic stay. Further, the adversary proceeding with respect to dischargeability will be suspended, unless otherwise ordered by the Court, until the conclusion of the Third-Party Action.

Accordingly, for the reasons set forth herein it is hereby

ORDERED, that the Motion to Vacate the Automatic Stay is granted.

Dated: New York, New York
June 29, 2007

s/Arthur J. Gonzalez
UNITED STATES BANKRUPTCY JUDGE

9

DATE: 04/19/1999

DISTRICT: Michigan

REPLY TO:
INTERNAL REVENUE SERVICE
GARY R. SNYDER   38-04082
GROUP 26
22500 HALL RD. - STE 102
CLINTON TWP, MI 48036

TELEPHONE NUMBER
OF IRS OFFICE:          (810)493-4540

NAME AND ADDRESS OF TAXPAYER:

WALTER J LAWRENCE
23205 GRATIOT APT 188
EASTPOINTE, MI 48021-1641

TO:
GENERAL MOTORS CORPORATION
NBD BANK TRUSTEE
P.O. BOX 330222
DETROIT, MI 48232-6222

IDENTIFYING NUMBER(S):   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

LAWR

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/1980 | 21199.79 | 14107.64 | 35307.43 |
| 1040 | 12/31/1981 | 38726.27 | 25903.66 | 64629.93 |
| 1040 | 12/31/1982 | 24736.99 | 2570.63 | 27307.62 |
| 1040 | 12/31/1983 | 62684.71 | 12640.20 | 75324.91 |
| 1040 | 12/31/1988 | 3933.44 | 3320.84 | 7254.28 |
| 1040 | 12/31/1989 | 3448.37 | 4862.96 | 8311.33 |
| 1040 | 12/31/1990 | 7109.23 | 8133.12 | 15242.35 |
| 1040 | 12/31/1991 | 5954.81 | 1384.82 | 7339.63 |
| 1040 | 12/31/1992 | 7808.55 | 1874.66 | 9683.21 |
| 1040 | 12/31/1993 | 6489.26 | 1603.95 | 8093.21 |
| 1040 | 12/31/1994 | 7515.38 | 1919.63 | 9435.01 |

THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ————————————————

Total Amount Due ▶

267928.91

We figured the interest and late payment penalty to ————— 05-19-1999

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have (or are already obligated for) when they would have paid you.

If you decide to pay the amount you owe now, please bring a guaranteed payment (cash, cashier's check, certified check, or money order) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

Signature of Service Representative   GARY R SNYDER   38-04082        Title   REVENUE OFFICER

Part 2 - FOR TAXPAYER                                          FORM 668-A(c) (DO) (Rev. 9-97)   1570

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

IN RE:

WALTER J. LAWRENCE,                                    CASE NO.:   01-70047-TLH4

     Debtor

_____/

### ORDER DENYING DEBTORS MOTION TO STRIKE THE
### UNITED STATES' OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS

THIS CASE is before the Court on the Debtor's Motion to Strike the United States' Objections to Debtor's Claimed Exemptions (Docket Entry #20). The United States of America did not object to the Debtor's claimed exemptions. *See* Docket Entry #17, page 3, lines 16-17 and page 4, lines 2-3. The Debtor's exemptions claimed in Schedule C of his petition were automatically granted when there was no objection to those claimed exemptions within thirty days of the completion of the section 341 meeting of the creditors. Therefore, it is hereby

ORDERED AND ADJUDGED that the Debtor's motion to strike objections to his claimed exemptions is MOOT, and therefore is DENIED.

DONE AND ORDERED at Tallahassee, Florida this _____8TH_____ day of May, 2001.

Lewis M. Killian, Jr.
United States Bankruptcy Judge

CLERK
BANKRUPTCY COURT

01 MAY -8  AM 8: 11

FILED

U.S. BANKRUPTCY COURT
Northern District of Florida
DATE ENTERED ON DOCKET
5/8/01

*Docket entry #7*

FORM 96C (600)

In re __WALTER J. LAWRENCE   S.S.#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__                   Case No. 01-70047TLHE  *4  w/Jl*
              Debtor                                                    (If known)

## SECOND AMENDED

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:
(Check one box)
o  11U.S.C. § 522(b)(1): Exemptions provided in 11 U.S.C. § 522(d). Note: These exemptions are available only in certain states.
o  11U.S.C. § 522(b)(2): Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has
            been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day
            period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the
            interest is exempt from process under applicable nonbankruptcy law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| 1992 Chevrolet Van | F.S #222.25(1) ($1,000.00) plus Florida Constitution Article X, Sec 4(A)(2) ($1,000.00) = | $2,000.00 | $2,000.00 |
| Debtor's interest in GM/UAW ERISA Qualified Pension Plan payments | 29 USC 1144(D) 11 USC 522 (d)(10)(E) F.S. 222.201 F.S. 222.21(2)(a) F.S. 222.20 | undetermined | " |

Debtor's interest is excluded from property of the estate pursuant to 11 USC 541(a)(1), ( c ) (2).

| Social Security Payments | 11 USC 522 (d)(10)(A) | " | " |

Debtor's interest is excluded from property of the estate pursuant to 11 USC 541(a)(1), ( c ) (2).

| 32' Travel Trailer | F.S. 222.25 F.S. 222.20 Fla. Const. Article X Section 4(a)(1) F.S. 222.05 F.S. 222.01 | $4,000.00 | $4,000.00 |
| Life Insurance | F.S. 222.13 | $150,000.00 | $150,000.00 |

*I declare that this document of one (1) sheet is true + correct ... under the Penalties of perjury.*

*Walter J. Law...*

*D*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WALTER J. LAWRENCE,

              Plaintiff,

v.                                   Case No.  5:07-cv-408-Oc-10GRJ

GENERAL MOTORS HOURLY-RATE
EMPLOYEES PENSION PLAN, GENERAL
MOTORS CORPORATION,

              Defendants.

---

## <u>ORDER</u>

Pending before the Court are: (1) Defendants' Motion To Quash Plaintiff's Interrogatories, Requests For Production Of Documents And Requests For Admissions (Doc. 34); (2) Defendants' Amended Motion To Quash Plaintiff's Interrogatories, Requests For Production Of Documents And Requests For Admissions (Doc. 42); and (3) Plaintiff's Motion For Continuance And For Discovery. (Doc. 54.)The parties have filed responses in opposition to each motion. (Docs. 39, 46, & 58.)

## I. <u>BACKGROUND AND FACTS</u>

This is an action for wrongful denial of benefits, breach of fiduciary duties and liquidated damages under 29 U.S.C. §§ 1001, *et seq*, the Employee Retirement Income Security Act ("ERISA") for payments made to the Internal Revenue Service (IRS) by Defendants which Plaintiff contends were in violation of the General Motors/United Auto Workers Pension Plan Agreement (the "pension agreement"). Specifically, Plaintiff argues that Defendants voluntarily elected to pay the IRS the sum of $32,985.00 out of Plaintiff's pension in violation of the pension agreement.



The pension agreement vests discretion in the members of the Board of Administration to formulate procedures for resolving disputes.[1] Under the agreement, the parties have agreed that decisions of the Board of Administration are final and binding on the Union and its members, the employee or employees involved, and on General Motors. Specifically, the plan provides that:

> (9) There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union, its members, the employee or employees involved, and on the Corporation, subject only to the arbitrary and capricious standard of judicial review.

(Doc. 45, Ex. A, pp. 9-10.)

As the case progressed through the deadline required for the parties to meet for a case management conference, it became apparent to the Court that the parties required direction regarding the case management deadlines and discovery procedures.[2] The Court held a telephonic hearing on February 13, 2008 to discuss and establish case management deadlines. During that hearing the parties expressed different views as to whether Plaintiff is entitled to take discovery outside of the administrative record or whether the Plaintiff is limited to the administrative record.

---

[1] Administrative Record, Volume I, GM-UAW Supplemental Agreement Covering Pension Plan dated September 18, 2003, p. 10. The Summary Plan Description, provides that "The Employee Benefits Plans Committee (EBPC) has been delegated authority to construe, interpret, and administer the employee benefit plans. Decisions of the EBPC are final and binding." *Id.* at p. 155.

[2] On January 31, 2008, Defendants filed motions regarding issues that are required to be addressed at a Case Management Conference. (Docs. 29 and 30.) On February 22, 2008, Defendants filed their original Motion to Quash Plaintiff's Interrogatories, Requests for Production and Requests for Admissions. (Doc. 42.)

Resolution of this issue is contingent upon the standard of review which will be applicable to this case. Accordingly, to resolve the issue concerning discovery, the Court required the parties to file briefs on the appropriate standard of review applicable to this case and how the standard of review impacts the right to engage in discovery outside of the administrative record. (Doc. 37.)  The parties filed briefs (docs. 45 & 50) addressing these issues. Plaintiff argues that the appropriate standard of review is *de novo* and, therefore, he is entitled to conduct discovery. Defendants contend that the Court should utilize the arbitrary and capricious standard of review under ERISA and, therefore, the Plaintiff is not entitled to discovery outside of the record that has been filed with the Clerk of the Court.

## II. DISCUSSION

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132 (a)(1)(B) provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan.[3] In *Firestone Fire & Rubber Co. v. Bruch*, the Supreme Court discussed the appropriate standard of review under this statute.[4] The *Bruch* court held that review under the arbitrary and capricious standard is appropriate where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[5] If a benefit plan gives discretion to an administrator who is operating under a conflict of interest, a heightened arbitrary and

---

[3] <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 4, 53-54 (1987).

[4] 489 U.S. 101 (1989).

[5] *Id*. at 115.

3

capricious standard of review is applied.[6] A plan that makes no provision for discretionary authority is reviewed *de novo*.[7]

A strikingly similar benefit plan was addressed by the Court in *Hawkins-Dunn v. General Motors Corp.*[8] The Court there concluded that the appropriate standard of review was the arbitrary and capricious standard because the pension plan "gives the plan administrator authority to construe the terms of the plan [and thus] courts will only overturn the administrator's decision if it is arbitrary and capricious.[9]

The pension agreement in this case vests full discretion in the Board of Administration to administer the plan benefits. There is no issue as to whether the Board of Administration was conflicted. Therefore, the appropriate standard of review in this case will be arbitrary and capricious.

Under the arbitrary and capricious standard of review, the Court must look only to the facts known to the administrator at the time of the decision.[10] As such, discovery outside of the administrative record normally is not permitted in an ERISA case, other than in the following limited circumstances: (1) to determine the exact nature of the information considered by the fiduciary in making the decision; (2) whether the fiduciary was competent to evaluate the information in the administrative record; (3) how the fiduciary reached its decision; (4) whether, given the nature of the information in the

---

[6] Adams v. Thiokol Corp., 231 F.3d 837, 842 (11th Cir. 2000).

[7] Moon v. American Home Assurance Co., 888 F.2d 86, 89 (11th Cir, 1989).

[8] 225 Fed. Appx. 358, 360 (6th Cir. 2007.)

[9] *Id*.

[10] Levison v. Reliance Standard Life Insurance Company, 245 F.3d 1321 (11th Cir. 2001); Jett v. Blue Cross and Blue Shield of Alabama, 890 F. 2d 1137 (11th Cir. 1989).

4

record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim; and (5) to determine whether a conflict of interest existed.[11]

Because this case involves the rather simple and straight forward issue of whether GM could reduce Plaintiff's pension benefits to recover the overpayments to the IRS - and not about whether Plaintiff was qualified for pension benefits or whether Plaintiff was eligible for certain pension benefits - none of the limited circumstances some courts have recognized may entitle a party to discovery have any relevance in this case. Accordingly, Plaintiff is not entitled to any further discovery outside of the administrative record.[12]

### III. CONCLUSION

Accordingly, for the reasons discussed above, Defendants Motion To Quash Plaintiff's Interrogatories, Requests For Production Of Documents And Requests For Admissions (Doc. 34) and Defendants' Amended Motion To Quash Plaintiff's Interrogatories, Requests For Production Of Documents And Requests For Admissions (Doc. 42) are due to be **GRANTED** because the Plaintiff is not entitled to discovery

---

[11] Cerrito v. Liberty Life Assurance Company of Boston, 209 F.R.D. 663, 664 (M.D. Fla. 2002).

[12] Plaintiff has filed the full administrative record (Docs. 57 & 59) and thus Plaintiff has access to all of the documents relevant to the decision of the Boar of Administration.

outside of the administrative record. Furthermore, for the same reasons, Plaintiff's

Motion For Continuance And For Discovery (Doc. 54) is due to be **DENIED**.[13]

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on May 12, 2008.

GARY R. JONES
**United States Magistrate Judge**

Copies to:
All Counsel
*Pro Se* Plaintiff

---

[13] Plaintiff's Motion To Withdraw Plaintiff's Motion To Strike And Vacate Plaintiff's Response To Defendants Response To Plaintiff's Motion And For Rule 11 Sanctions (Doc. 64) is due to be **GRANTED** and therefore Plaintiff's Motion To Strike And Vacate Defendant's Response To Plaintiff's Motion For Continuance And Discovery And For Rule #11 Sanctions (Doc. 62) is due to be **terminated**.

6