**Hearing Date: November 12, 2009, 2:00 p.m. (prevailing eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
David R. Berz
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
|  | : |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : | 09-50026 (REG) |
|  | : | (Jointly Administered) |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : |  |
| **f/k/a General Motors Corp.,** *et al.* | : |  |
|  | : |  |
| **Debtors.** | : |  |

---------------------------------------------------------------x

**DEBTORS' OPPOSITION TO THE MOTION OF BROOKE ALEXIS LOVE, A MINOR,**
**BY AND THROUGH HER GUARDIAN AD LITEM, SHARON BUTLER, FOR RELIEF**
<u>**FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 3

BACKGROUND ......................................................................................................... 5

    The State Court Action............................................................................................. 5

    The Bankruptcy Case .............................................................................................. 6

    Plaintiff's Requests to Proceed Against Insurance ............................................. 7

ARGUMENT............................................................................................................... 8

    A.    The Automatic Stay is Fundamental to the Reorganization Process ... 8

    B.    Plaintiff Fails to Meet Her Burden of Establishing Cause to Modify
         the Automatic Stay.................................................................................. 10

         1.    The Debtors are Self-Insured in the State Court Action ............... 13

         2.    It is Premature at This Stage in the Bankruptcy Proceedings to Lift
            the Automatic Stay and Doing so Would Burden the Estate ........ 15

         3.    Allowing the State Court Action to Proceed Will Expose the
            Debtors to a Flood of Lift Stay Motions Which Will Threaten
            Judicial Economy........................................................................ 16

    C.    Plaintiff's Request for Abstention is Unnecessary and Premature .... 18

    D.    Plaintiff's Request for Sanctions is Inappropriate and Should be
         Denied..................................................................................................... 18

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
117 B.R. 789 (Bankr. S.D.N.Y. 1990) ................................................................8

*In re Bally Total Fitness of Greater New York, Inc.*,
402 B.R. 616 (Bankr. S.D.N.Y. 2009) ..............................................................16

*Matter of Celotex Corp.*,
140 B.R. 912 (Bankr. M.D. Fla. 1992) .............................................................16

*In re Columbia Gas Transmission Corp.*,
219 B.R. 716 (Bankr. S.D. W. Va. 1998) .........................................................13

*DePippo v. Kmart Corp.*,
335 B.R. 290 (S.D.N.Y. 2005) ...............................................................12, 13,
17

*In re Drexel Burnham Lambert Group, Inc.*,
113 B.R. 830 (Bankr. S.D.N.Y. 1990) ...............................................................7

*In re Eclair Bakery Ltd.*,
255 B.R. 121 (Bankr. S.D.N.Y. 2000) ................................................................9

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*,
550 F.2d 47 (2d Cir. 1976 .................................................................................8

*Houston v. Edgeworth*,
993 F.2d 51 (5th Cir. 1993) ............................................................................13

*In re Jet Fla. Sys., Inc.*,
883 F.2d 970 (11th Cir. 1989) ........................................................................13

*Klein v. Spear, Leeds & Kellogg*,
309 F. Supp. 341 (S.D.N.Y. 1970) ..................................................................18

*Mazzeo v. Lenhart (In re Mazzeo)*,
167 F.3d 139 (2d Cir. 1999) ..............................................................................9

*In re Mego Int'l, Inc.*,
28 B.R. 324 (Bankr. S.D.N.Y. 1983) .................................................................9

*Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*,
  474 U.S. 494 (1986)..................................................................................................7

*Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.*,
  38 B.R. 987 (S.D.N.Y. 1984).................................................................................10

*In re Northwest Airlines Corp.*,
  2006 WL 687163 (Bankr. S.D.N.Y. Mar. 10, 2006) .........................................16

*Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*,
  114 B.R. 27 (Bankr. S.D.N.Y. 1989).......................................................................8

*Royal Ins. Co. of Am. v. McCrory Corp.*,
  1996 U.S. Dist. LEXIS 5552 (Bankr. S.D.N.Y. Apr. 25, 1996).........................13

*In re Sonnax Industries, Inc.*,
  907 F.2d 1280 (2d Cir. 1990).........................................................................9, 10,
                                                                                                                   11, 13,
                                                                                                                   15, 16

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
  803 F.2d 61 (2d Cir. 1986)........................................................................................8

*In re Touloumis*,
  170 B.R. 825 (Bankr. S.D.N.Y. 1994)...................................................................10

*In re Worldcom, Inc.*,
  352 B.R. 369 (Bankr. S.D.N.Y. 2006)...................................................................19

**STATUTES**

11 U.S.C. § 362(d)(1) ........................................................................................1, 2,
                                                                                                                   7, 9

H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297 ......................8

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company, (f/k/a General Motors Corporation)

("**MLC**"), and certain of its subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby submit this

opposition to the Motion of Brooke Alexis Love, a Minor, by and Through her Guardian

ad Litem, Sharon Butler, for Relief from the Automatic Stay Pursuant to 11 U.S.C.

§ 362(d)(1) [Docket No. 4306] (the "**Motion**").  In support hereof, the Debtors

respectfully represent:

### PRELIMINARY STATEMENT

1.      Brooke Alexis Love, a minor, by and through her Guardian ad Litem,

Sharon Butler ("**Plaintiff**") seeks to modify the automatic stay to proceed with her

prepetition action pending in the Los Angeles County Superior Court styled *Brooke*

*Alexis Love, a minor, by and through her Guardian ad Litem, Sharon Butler v. Olga*

*Edgar Purington and General Motors Corporation*, YC059488 (the "**State Court**

**Action**").  Plaintiff, however, cannot satisfy her burden of establishing cause sufficient

to truncate the statutorily imposed breathing spell to which the Debtors are entitled

under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**").

Plaintiff primarily seeks to lift the stay to proceed against insurance, however, as has

been explained to Plaintiff's counsel on multiple occasions, the Debtors are self-insured

up to $25 million in the State Court Action and thus the Debtors themselves would be

responsible for paying for their defense and any judgment in the action.

2.      Allowing Plaintiff relief from the automatic stay at this juncture would expose the Debtors to countless other lift stay motions, which would impose a burden on the Debtors and their estates at a time when their limited remaining resources should be devoted to other immediate tasks, including developing procedures for responding to the thousands of claims being filed against the Debtors and maximizing recovery for these creditors.  The burden imposed on the Debtors in terms of the time, financial resources, and attention necessary to defend against Plaintiff's case in the District Court far outweighs any potential gain to Plaintiff in proceeding with her lawsuit against the Debtors at this time.  The Debtors are self-insured in this case, any judgment the Plaintiff may receive in the State Court Action as to MLC would at best entitle Plaintiff to a general unsecured claim to be paid proportionally with the thousands of other such claims years in the future, and Plaintiff can proceed with her lawsuit against a non-debtor co-defendant who is being defended by General Motors, LLC.  In sum, Plaintiff is not prejudiced by the preservation of the automatic stay as to MLC at this time and has failed to demonstrate cause why she must liquidate her general unsecured claim ahead of the thousands of similarly-situated creditors.

3.      Additionally, Plaintiff's requests for abstention and for sanctions should be denied.  Plaintiff's request for abstention is unnecessary and premature given that Plaintiff has not yet even filed a proof of claim and the Debtors are not seeking to remove or litigate her case at this time.  Plaintiff's request for sanctions should be denied because she cannot establish that the Debtors' counsel failed to satisfy the requirements of  rule 9011 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Plaintiff's motion for sanctions does not satisfy the

procedural requirements of Bankruptcy Rule 9011(c)(1)(A).  Accordingly, Plaintiff's

Motion should be denied in its entirety.

## BACKGROUND

### The State Court Action

4.     Plaintiff commenced the State Court Action on April 8, 2009, alleging

that on January 16, 2008, former-MLC employee, Olga Edgar Purington, struck Ms.

Love while Ms. Purington was driving a vehicle owned by MLC and while Ms. Love

was crossing the street.  The Complaint alleges negligence on the part of Ms. Purington

and alleges negligent entrustment and products liability based on strict liability,

negligence, and breach of warranty on the part of MLC.[1]  MLC's investigation,

however, suggests that Ms. Love is solely responsible for her own injuries as she walked

into heavy traffic in a location clearly marked as a no crossing zone while wearing a

hooded sweatshirt and  headphones and Ms. Purington could not have done anything to

avoid hitting Ms. Love.

5.     In response to Plaintiff's Interrogatories, Ms. Purington stated that at the

time of the accident she was covered by a liability insurance policy written by National

Union Fire Insurance Company of Pittsburgh, Pennsylvania, providing liability

coverage up to $300,000 and excess coverage up to $9,700,000 (the "**National Union**

**Policy**").

---

[1] In communications with MLC's counsel in the State Court Action, Plaintiff's counsel indicated that
Plaintiff's sole purpose for alleging the second cause of action against MLC is to safeguard Plaintiff from
the possibility that Ms. Purington might assert a defense based on an alleged product defect.  Ms.
Puringrton has stated she has no intention of asserting such a defense and was willing to sign a stipulation
to that effect just before MLC commenced these chapter 11 cases.

6.      MLC had purchased the National Union Policy so that drivers of MLC-owned automobiles could provide proof of insurance where required by state law.  The self-insured retention on the National Union Policy is equivalent to the policy limits, meaning that MLC itself would pay for the first $10 million of any liability imposed for a single claim.  Additionally, MLC has another layer of self-insurance for $15 million meaning that MLC is self-insured, in total, for the first $25 million of any liability imposed for a single claim arising out of an employee automobile accident.   Defense costs are also within the self-insured retention.

**The Bankruptcy Case**

7.      On June 1, 2009, MLC commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The commencement of this chapter 11 case triggered the automatic stay of all litigation pending against the Debtors pursuant to section 362 of the Bankruptcy Code.

8.      On July 10, 2009, the Debtors consummated the sale of substantially all of their assets to NGMCO, Inc. (n/k/a General Motors, LLC) pursuant to that certain Amended and Restated Master Sale and Purchase Agreement ("**MPA**").  Simultaneous with closing on the MPA, Debtor General Motors Corporation changed its name to Motors Liquidation Company.

9.      Pursuant to sections 2.3 and 6.17 of the MPA, General Motors, LLC is providing the defense of Ms. Purington in the State Court Action.  Contrary to Plaintiff's assertion, neither MLC, General Motors, LLC, nor Ms. Purington tendered their defense to National Union Fire Insurance Company.  (*See* Mot. ¶ 5.)

7

**Plaintiff's Requests to Proceed Against Insurance**

10. On or about August 28, 2009, Plaintiff's counsel asked MLC's counsel in the State Court Action if it would stipulate to lift the automatic stay to allow Plaintiff to proceed against MLC's insurance. On September 15, 2009, MLC's counsel in the State Court Action faxed Plaintiff's counsel a letter stating that MLC was self-insured for the loss in the State Court Action and thus MLC would not agree to lift the stay.

11. Notwithstanding MLC's September 15th letter, on or about October 16, 2009, Plaintiff's counsel sent MLC's counsel in the State Court Action a proposed stipulation to lift the automatic stay to proceed against insurance. On October 22, 2009, MLC's bankruptcy counsel faxed a letter to Plaintiff's counsel again advising that MLC is self-insured in the State Court Action and thus could not stipulate to lift the automatic stay at this time. On Friday, October 23, 2009, at 5:18 p.m. Eastern Standard Time, Plaintiff's counsel called MLC's bankruptcy counsel and MLC's bankruptcy counsel again explained that MLC is self-insured in the State Court Action. MLC's bankruptcy counsel agreed to provide Plaintiff's counsel with further documentation establishing the self-insured retention.

12. That same day, Plaintiff served the instant Motion on MLC's counsel and on Monday, October 26, 2009, Plaintiff filed the instant Motion seeking relief from the automatic stay to proceed against insurance and seeking sanctions for the costs and attorney's fees she incurred in researching and filing the lift stay motion.

13. On October 30, 2009, after communications with Plaintiff's counsel, MLC's bankruptcy counsel, and counsel for General Motors, LLC, MLC's outside counsel provided Plaintiff's counsel with copies of declaration pages from the National

Union Policy stating that MLC's self-insured retention is equivalent to the policy coverage. Those declaration pages are attached hereto as Exhibit 1. As discussed further below, neither relief from the automatic stay nor the imposition of sanctions is warranted under these circumstances.

## ARGUMENT

**A.**     **The Automatic Stay is Fundamental to the Reorganization Process**

14.     Section 362(a) of the Bankruptcy Code provides in pertinent part that

> (a) . . . . [A] petition filed under section 301, 302 or 303 of this title . . . operates as a stay, applicable to all entities, of –
>
>       (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a). The automatic stay affords a debtor fundamental protections under the Bankruptcy Code. *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code … has been described as one of the fundamental debtor protections provided by the bankruptcy laws.") (citations and internal quotations omitted); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 836 (Bankr. S.D.N.Y. 1990) ("The automatic stay imposed by section 362(a) of the Bankruptcy Code is one of the most fundamental debtor protections provided by the bankruptcy laws.") (citations and internal quotations omitted).

15.     The broad protection of the automatic stay extends to all matters that may have an effect on a debtor's estate and is designed to relieve "the financial pressures that

drove [the debtors] into bankruptcy." H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6297; *Official Committee of Unsecured Creditors v. PSS Steamship Co.* (*In re Prudential Lines*, *Inc.*), 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). The automatic stay provides the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding the debtor from creditor harassment at a time when the debtor's personnel should be focusing on restructuring. *See Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract … debtor's attention from its primary goal of reorganizing"); *AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The purpose of the protection provided by chapter 11 is to give the debtor a breathing spell, an opportunity to rehabilitate its business and to enable the debtor to generate revenue.").

16.    The automatic stay "is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization." *Fidelity Mortgage Investors v. Camelia Builders*, *Inc.*, 550 F.2d 47, 53 (2d Cir. 1976) (Bankruptcy Act case) (citations and internal quotations omitted), *cert. denied*, 429 U.S. 1093 (1977). Further, "[t]he automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." *AP Indus.*, 117 B.R. at 798.

**B.**     **Plaintiff Fails to Meet Her Burden of Establishing Cause to Modify the Automatic Stay**

17.     Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances.  11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000). Specifically, relief from the stay will be granted only where the party seeking relief demonstrates "cause":

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
>     (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).[2]  The statute does not define "cause," however, courts in this Circuit have determined that in examining whether cause exists they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate."  *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).

18.     In determining whether there is cause to lift the automatic stay, courts in the Second Circuit follow the seminal decision of *In re Sonnax Industries, Inc*., 907 F.2d 1280 (2d Cir. 1990).  *See, e.g.*, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the *Sonnax* factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and

---

[2] Sections 362(d)(2) – (4) of the Bankruptcy Code provide grounds for relief from the stay that are not applicable to a request for relief from the stay to pursue a litigation claim.

circumstances specific to the present case the court believed made relief from the automatic stay appropriate."). In *Sonnax*, the court outlined twelve factors to be considered when deciding whether to lift the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. Only those factors relevant to a particular case need be considered and the court need not assign them equal weight. *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

19.    The moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors. 907 F.2d at 1285. If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. 907 F.2d at 1285. Further, the cause demonstrated must be "good cause." *Morgan Guar. Trust Co. of New York v. Hellenic Lines, Ltd.*, 38 B.R. 987, 998 (S.D.N.Y. 1984) ("Cause shown to avoid the proscription of section 362 must [be] . . . good cause."). Plaintiff does not

12

even mention *Sonnax* in her Motion, let alone meet her burden to establish good cause for lifting the automatic stay under the *Sonnax* factors. Accordingly, the Court should deny relief from the automatic stay.

20.    Because Plaintiff cannot meet her burden to establish cause to lift the stay, the burden does not shift to the Debtors to affirmatively demonstrate that relief from the stay is inappropriate. 907 F.2d at 1285. However, as discussed further below, the *Sonnax* factors relevant to this case nevertheless weigh against lifting the automatic stay to allow the State Court Action to proceed at this juncture. Most relevant to Plaintiff's Motion, the fifth *Sonnax* factor does not support relief from the stay because the Debtors are self-insured with respect to Plaintiff's claims. The second and seventh factors weigh against lifting the automatic stay as well because allowing the State Court Action to proceed would interfere with the bankruptcy case and prejudice the interests of other creditors by forcing the Debtors to expend scarce resources litigating the State Court Action and the onslaught of similar lift stay motions that would be likely to ensue. The tenth factor militates toward preserving the stay because the interest of judicial economy and the expeditious and economical resolution of litigation would be best served by allowing the stay to remain in place at least until the Plaintiff files a proof of claim and litigating the merits of the claim becomes necessary and until the Debtors have the opportunity to establish a more efficient alternative than proceeding to judgment in all litigation claims in a piecemeal fashion. The eleventh factor weighs in favor of preserving the stay because there is no pending trial as the State Court Action was filed less than two months before the automatic stay went into effect. The twelfth factor justifies maintaining the stay because lifting the stay would severely harm the

Debtors' estates whereas preserving the stay would not harm the Plaintiff given that her

likelihood of any relief against the Debtors is fractional at best and such relief can be

attained with greater efficiency and reduced costs through the claims process. To this

end, the sixth factor also weighs in favor of preserving the stay as the State Court Action

is still proceeding as to co-defendant Olga Edgar Purington and thus the automatic stay

does not negatively impact the Plaintiff's right to seek recovery in the State Court

Action.

1.    The Debtors are Self-Insured in the State Court Action

21.    Contrary to Plaintiff's assertion that "[t]here is no dispute that available

insurance exists to satisfy any claim" (*See* Mot. ¶ 10) the self-insured retention on the

National Union Policy is equivalent to the policy limits, meaning that MLC itself would

pay for the first $10 million of any liability imposed for a single claim. (*See* Ex. 1.)

Plaintiff's Motion states that "Defendant's insurance is sufficient to compensate Movant

for her severe injuries and damages" (Mot. ¶ 6) thus any coverage above the $10 million

self-insured retention is likely not relevant to Plaintiff's claims, however, even if it were

relevant, MLC has another layer of self-insurance for $15 million meaning that MLC is

self-insured, in total, for the first $25 million of any liability imposed for a single claim

arising out of an employee automobile accident. Further, MLC's defense costs are

included in the self-insured retention and as such, MLC would face significant out of

pocket expenses if it were to defend the State Court Action.

22.    In cases in which plaintiffs have sought to proceed against a debtor's

insurer, courts have noted the expense self-insured retention policies impose on a

debtor's estate. *See, e.g.*, *DePippo v. Kmart Corp.*, 335 B.R. 290, 292 (S.D.N.Y. 2005)

(finding no assets available to cover a plaintiff's claim against debtor Kmart where

Kmart's "only insurance provided coverage above a two-million self-insured retention");

*Royal Ins. Co. of Am. v. McCrory Corp.*, 1996 U.S. Dist. LEXIS 5552 at *7 (Bankr.

S.D.N.Y. Apr. 25, 1996) (stating that only if the bankruptcy court determined there

would be no burden on the estate should the stay be lifted so that appellants may

prosecute their claims against debtor's insurer);  *In re Columbia Gas Transmission Corp.*,

219 B.R. 716 (Bankr. S.D. W. Va. 1998) (holding that there is no insurance to cover the

plaintiffs' claim where debtor had an initial $250,000 self-insured retention).

23.    Courts also hold that where the debtor will bear the costs of litigation, the

case should not be allowed to proceed against a debtor's insurer.  *See, e.g., Kmart Corp.*,

335 B.R. at 298 (noting that the fact that Kmart would have had to pay its own litigation

costs further militated against allowing the action against its insurer); *Houston v.

Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993) (allowing suit only "as long as the costs of

the defense are borne by the insurer"); *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 976 (11th

Cir. 1989) ("to allow suits of this nature to go forward could possibly have the effect of

draining funds that would more properly be used in the revitalization of the reorganized

corporation"); *Columbia Gas*, 219 B.R. at 716 (prohibiting plaintiff from proceeding with

suit against debtor for limited purpose of establishing debtor's liability and recovering

from debtor's insurer where debtor was primarily liable for expense of defending the

suit).  Plaintiff's claims and Debtors' costs of defending such claims will not be paid for

by third-party insurance unless and until they exceed $25 million – an unlikely

contingency that will expose the Debtors to direct expenses  (*See Sonnax* factor 5).  As

such, allowing such claims to proceed would impose a significant burden on the

resources of the Debtor and thus the automatic stay should not be lifted to allow the State

Court Action to proceed against MLC at this juncture.

> 2.     It is Premature at This Stage in the Bankruptcy Proceedings to Lift
> the Automatic Stay and Doing so Would Burden the Estate

24.     Allowing the State Court Action to proceed would interfere with the

bankruptcy proceedings at a crucial stage in the chapter 11 process.  The Debtors'

bankruptcy cases constitute the second largest industrial bankruptcy in history.  The

cases have been active for just five months and during the first few months of the case,

the Debtors' resources were consumed by executing a massive sale of assets to General

Motors, LLC.  Given the complexity and high stakes of the sale, the bankruptcy case is

still in the early stages of the claims process.  The bar date is still weeks away and the

Debtors have not yet begun to resolve the ever-increasing number of claims stemming

from prepetition litigation against the Debtors.  Plaintiff has not yet even filed a proof of

claim in these cases.  The Debtors are currently working with the Unsecured Creditors

Committee to formulate an approach to resolve the large number of unliquidated claims.

25.     This process is made even more difficult given that, with the closing of

the MPA, the Debtors no longer have the employees, resources, and funding of an active

business.  Following the sale of the Debtors' assets to General Motors, LLC, the

Debtors have no remaining legal staff, no longer employ the individuals whose conduct

may be implicated in the State Court Action, and do not now physically possess the

other records and documents necessary to defend the State Court Action.  As such,

lifting the automatic stay to allow the State Court Action to proceed at this juncture

without a global and systematic approach to resolve all litigation claims would impose a

significant burden on the small team of managers remaining who are focused on

maximizing recovery for the estate's creditors and moving the Debtors efficiently

through the chapter 11 process (*See Sonnax* factors 2 and 12).

26.     Given the estate's limited resources, the balance of harms favors

preserving the automatic stay.  (*See Sonnax* factor 12).  The Debtors should not be

compelled to use their scarce remaining resources to litigate prepetition general

unsecured claims in courts across the country which claims are likely to receive less

than a full recovery.  This is particularly true where, as here, the Plaintiff is better suited

to proceed against a non-debtor codefendant, Ms. Purington (*See Sonnax* factor 6).

Indeed, Plaintiff acknowledges in her Motion that "the State Court Action continues as

to Defendant GM's agent/employee, Olga Edgar Purington."  (*See* Mot. ¶ 9.)  In light of

these circumstances, lifting the automatic stay at this time would severely burden the

Debtors and may not benefit the Plaintiff at all.

   3. <u>Allowing the State Court Action to Proceed Will Expose the
    Debtors to a Flood of Lift Stay Motions Which Will Threaten
    Judicial Economy</u>

27.     Allowing the State Court Action to proceed would set a negative

precedent harmful to the Debtors' estates and to judicial economy.  The State Court

Action is just one of thousands of cases pending against the Debtors across the country.

Plaintiff does not distinguish her case from the thousands of other cases pending against

the Debtors in courts across the country nor does she provide any reason or special

circumstances why her case should be allowed to burden the estate by proceeding

outside of the established claims process.  As stated above, Plaintiff's contention that

her claims are covered by insurance is undermined by the fact that the self-insured

17

retention on the National Union Policy is equivalent to the policy limits.  If the Plaintiff is granted relief from the automatic stay under these circumstances, it would expose the Debtors to a flood of similar motions seeking to lift the stay in other cases across the country.  Litigating the motions alone, much less litigating the underlying lawsuits, would substantially drain the estate's assets and harm the recovery prospects of all creditors  (*See Sonnax* factors 2, 7, and 12).  Meanwhile, the Debtors are not sitting on their hands, they are working diligently to establish procedures for addressing a large number of unliquidated claims as these cases move into the claims reconciliation period.

28.    In similar circumstances courts have held that lifting the automatic stay is not warranted.  *See, e.g.*, *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"); *In re Northwest Airlines Corp.* 2006 WL 687163, at *2 (Bankr. S.D.N.Y. Mar. 10, 2006) (upholding the automatic stay because "lifting the automatic stay . . . would open the floodgates for similar motions and cause the Debtors to refocus their energies on litigation before other courts rather than emergence from Chapter 11"); *Matter of Celotex Corp.*, 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992) (preserving automatic stay where lifting stay would yield an "avalanche of litigation.").  Given the thousands of lawsuits pending against the Debtors across the country and the flood of litigation likely to ensue if relief from the stay is granted, this Court too should preserve the automatic stay.

**C.**    **Plaintiff's Request for Abstention is Unnecessary and Premature**

29.    Plaintiff's Motion states that this Court should "abstain from hearing the issues raised in the State Court Action pursuant to 28 U.S.C. section 1334." (*See* Mot. ¶ 22.)  Plaintiff's request for abstention is premature and unnecessary at this time.  The Debtors are not currently seeking to remove the State Court Action to the Southern District of New York, nor are the Debtors seeking to proceed with the State Court Action at all at this juncture.  The State Court Action should remain stayed unless and until Plaintiff files a proof of claim and litigating the merits of that claim becomes necessary.  At that time, the Debtors will consider which court – the Los Angeles County Superior Court or the Bankruptcy Court, should decide the merits of the underlying action and will petition this Court accordingly.

**D.**    **Plaintiff's Request for Sanctions is Inappropriate and Should be Denied**

30.    Plaintiff's Motion "requests the Court, <u>sua sponte,</u> pursuant to Rule 9011(c)(1)(B)" impose sanctions in the amount of $1,650 in attorney's fees and costs "[b]ecause of Debtor's counsel's refusal to stipulate and refusal to diligently inquire as to the existing insurance." (*See* Mot. ¶ 28.)  Plaintiff's request for sanctions is inappropriate and should be denied for several reasons.  First, Plaintiff cannot point to any requirement that a debtor must stipulate to lift the automatic stay, particularly where, as here, the Debtors are self-insured and thus the estate would bear both the costs of defending an action and any potential judgment in the action.  *See, e.g.*, *Kmart Corp.*, 335 B.R. at 292 (finding no assets available to cover a plaintiff's claim against debtor Kmart where Kmart's "only insurance provided coverage above a two-million self-

insured retention" and finding that Kmart would have had to pay its own litigation costs

further militated against allowing the action against its insurer).  To require a debtor to

stipulate to lift the automatic stay runs counter to common sense and Congressional

intent as it would contravene Congress's purposes of making the stay *automatic*.

31.     Second, Debtors' counsel did "diligently inquire as to the existing

insurance." (*See* Mot. ¶ 28.)  Immediately upon being advised of Plaintiff's initial

request to lift the stay to proceed against insurance, Debtors' counsel engaged in several

telephone conversations and e-mails with MLC's outside counsel and with counsel for

General Motors, LLC, who are familiar with the applicable insurance policies.  MLC's

outside counsel and Debtors' counsel advised Plaintiff's counsel at least three different

times that the self-insured retention was equivalent to the policy limits and in a

telephone conversation on the very day that Plaintiff filed the instant Motion, Debtors'

counsel advised Plaintiff's counsel that she would seek to provide additional

confirmation of the self-insured retention.  Without even waiting a full business day or

awaiting further documentation of the self-insured retention, Plaintiff filed the instant

motion.  Thus, it is Plaintiff's or Plaintiff's counsel's own rash behavior that

necessitated the costs associated with "drafting and researching the instant Motion" (*See*

Pl.'s Mot. Ex. A, ¶ 9).[3]  Moreover, on October 30, 2009, Plaintiff's counsel was

---

[3] The Debtors note that although Plaintiff filed the motion in propria persona and she only discloses
counsel "in her civil action" (*See* Mot. ¶ 2), she seeks attorney's fees for her counsel's work "drafting and
researching the instant Motion and time which will be required to assist [Movant] with appearance for the
instant motion." (*See* Pl.'s Mot. Ex. A, ¶ 9).  Ethics opinions and case law have negatively critiqued the
practice of a lawyer drafting pleadings for a client to be filed pro se.  *See, e.g.* New York City Bar Ass'n
Formal Op. 1987-2 ("Non-disclosure by a pro se litigant that he is, in fact, receiving legal assistance, may,
in certain circumstances, be a misrepresentation to the court and to adversary counsel where the assistance
is active and substantial or includes the drafting of pleadings.  A lawyer's involvement or assistance in such
misrepresentation would violate DR-1-102(A)(4).");  *Klein v. Spear, Leeds & Kellogg*, 309 F. Supp. 341,
343 (S.D.N.Y. 1970) (noting that where pro se litigant files pleadings prepared by an undisclosed attorney,

provided with the declaration pages from the National Union Policy showing the cumulative self-insured retention of $10 million, the policy limit.  (*See* Ex. 1.)

32.      Third, the text of Bankruptcy Rule 9011 expressly applies to representations made to a court.  *See* Fed. R. Bankr. P. 9011.  Rule 9011 mandates that "[b]y *presenting to the court* (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion or other paper" an attorney is certifying that he or she has complied with various enumerated requirements of good faith, honesty, and diligence.  *Id.* (emphasis added).  In *In re Worldcom, Inc.*, 352 B.R. 369, 378 (Bankr. S.D.N.Y. 2006)  this Court noted that Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 are nearly identical and Rule 11 applies only to the initial signing of a pleading, motion, or other paper.  Thus this Court denied a movant's request for sanctions where the movant had "not identified any specific 'pleading, motion, or other paper' to trigger application of Rule 9011, but [movant] refers to the Debtors' overall conduct of litigation."  *Id.* at 378-79.  Likewise in this case, Plaintiff's request for sanctions was filed before Debtors' counsel ever filed a single document with this Court regarding the automatic stay of the State Court Action or the insurance coverage applicable thereto.  Thus, Debtors' counsel could not possibly have violated the requirements of Rule 9011 and sanctions should not be imposed.

33.      Finally, a motion for sanctions under Bankruptcy Rule 9011 is to "be made separately from other motions or requests" and cannot be filed "unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention,

---

it "enables an attorney to launch an attack, even against another member of the Bar . . . without showing his face.  This smacks of the gross unfairness that characterizes hit-and-run tactics.  If this is the situation here, we vigorously condemn it.").

allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Bankr. P.

9011(c)(1)(A). Plaintiff did not comply with either of these requirements as her request

for sanctions is imbedded in her Motion seeking relief from the automatic stay and she

did not give Debtors' counsel 21 days advance notice of the request for sanctions.

Although Plaintiff purports to seek a *sua sponte* motion for sanctions, it is unclear how

she can expressly ask the Court to "grant Movant sanctions" (*See* Mot. ¶ 28) and assert

that the sanctions would be *sua sponte*. Accordingly, Plaintiff's request for sanctions is

inappropriate and should be denied.

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court deny the

Motion and the relief requested therein and award Debtors' attorney's fees under Rule

9011(c)(1)(A) for the costs incurred in opposing Plaintiff's request for sanctions.

Dated:  November 5, 2009
    New York, New York

                              /s / David R. Berz____
                              Harvey R. Miller
                              Stephen Karotkin
                              Joseph H. Smolinsky
                              David R. Berz

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone:  (212) 310-8000
                              Facsimile:  (212) 310-8007

                              Attorneys for Debtors and
                              Debtors in Possession