UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY CASTILLO, NICHOLE BROWN,
BRENDA ALEXIS DIGIANDOMENICO,
VALERIE EVANS, BARBARA ALLEN,
STANLEY OZAROWSKI, and DONNA
SANTI,

Plaintiffs,

v.

GENERAL MOTORS COMPANY, f/k/a NEW
GENERAL MOTORS COMPANY, INC.,

Defendant.

Case No. 09-cv-09011(SAS)

ECF Filing

**PLAINTIFFS' RESPONSE IN OPPOSITION TO NEW GM'S MOTION UNDER FED. R.
CIV. 12(b)(6) TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE
<u>A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

S. Alyssa Young
Michael J. Tiffany
**LEADER & BERKON LLP**
New York, New York 10017
630 Third Avenue
Phone (212) 486-2400
Fax (212) 486-3099

Robert W. Schmieder II
Mark L. Brown
**LAKIN CHAPMAN, LLC**
300 Evans Avenue, P.O. Box 229
Phone (618) 254-1127
Fax (618) 254-0193

Attorneys for Plaintiffs

Dated: November 4, 2009

09-50026-mg   Doc 4409-2   Filed 11/09/09   Entered 11/09/09 15:25:16   doc 2   Pg
2 of 40
Case 1:09-cv-09017-SAS   Document 2   Filed 11/09/2009   Page 2 of 40

# TABLE OF CONTENTS

**ARGUMENT** ................................................................................................................1

I.    **New GM's Motion To Dismiss Addresses The Ultimate Interpretation Of The
ARMSPA Rather Than The Sufficiency Of The Pleadings** ............................................2

II.   **Count II Of Plaintiff's Complaint, For Implied Assumption Of Liability, States A
Claim Sufficient To Survive Defendant's Motion To Dismiss** ....................................2

III.  **Whether This Action Is Subject To Injunction Is Completely Dependent On The
Ultimate Issue Raised Herein, Namely, Whether The Settlement And Final
Judgment Are Assumed Liabilities Under The ARMSPA** ............................................6

**CONCLUSION** ............................................................................................................7

**Proposed Motion for Summary Judgment**.................................................APPENDIX A

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 .doc 2 Pg
Case 1:09-cv-09017-SAS Document 2 Filed 11/09/2009 Page 3 of 40
3 of 40

## TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................1

*Berlinger v. Lisi*, 288 A.D.2d 523, 525, 731 N.Y.S.2d 916 (N.Y. App. Div. 2001) ......................3

*Clean Harbors v. Arkema, Inc. (In re Safety-Kleen)*, 331 B.R. 605 (Bankr. D. Del. 2005)........6, 7

*Frank May Associates Inc. v. Boughton*, 281 A.D.2d 673 (N.Y. App. Div. 2001) ........................5

*Matter of Boice*, 226 A.D.2d 908 (N.Y. App. Div. 1996) ..............................................................3

*Pache v. Aviation Volunteer Fire Co.*, 20 A.D.3d 731 (N.Y. App. Div. 2005)...............................3

*Riedman Corp. v. Gallager*, 48 A.D.3d 1188 (N.Y. App. Div. 2008)............................................5

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .............................................................................1

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).......................................................................1

*XO Communications, LLC v. Level 3 Communications, Inc.*, 948 A.2d 1111 (Del. Ch. 2007) ......2

**Statutes**

28 U.S.C.A. § 2201 (West).............................................................................................................2

**Rules**

Fed. R. Civ. P. 12(d)......................................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................................................1

Fed. R. Civ. P. 56..........................................................................................................................1

Fed. R. Civ. P. 57..........................................................................................................................2

# ARGUMENT

A motion to dismiss for failure to state a claim will be granted only where the plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  On a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint are accepted as true. <u>See</u> <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). While a court normally examines only these allegations on a motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).

However, according to Fed. R. Civ. P. 12(d), if a motion under Rule 12(b)(6) presents matters outside the pleadings, and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  New GM relies extensively on the sale order, which was not part of the pleadings.  If it is to be considered, then the motion "must be" taken as one for summary judgment pursuant to Rule 56.

Further, New GM's motion has requested a determination on the merits.  Although couched as a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, New GM actually attacks the plaintiffs' interpretation of the sale documents.  New GM's Motion to Dismiss and Plaintiffs' Motion for Partial Summary Judgment (when it is allowed to be filed under the Local Rules) are, in effect, flip sides of the same coin.  Both parties are asking the Court to determine whether the liability under the class action settlement agreement and judgment is an "Assumed Liability" as defined in the ARMSPA.

I. **New GM's Motion To Dismiss Addresses The Ultimate Interpretation Of The ARMSPA Rather Than The Sufficiency Of The Pleadings.**

New GM's Motion to Dismiss raises no issue as to whether an actual controversy exists, nor does it question whether plaintiffs have pleaded the proper elements of their cause of action. Plaintiffs' complaint requests declaratory judgment under Delaware's Declaratory Judgment Act:

> Four elements must be met for the court to consider a controversy suitable for declaratory judgment: (1) the controversy must involve a claim of right or other legal interest of the party seeking declaratory relief; (2) the claim of right or other legal interest must be asserted against one who has an interest in contesting the claim; (3) the conflicting interest must be real and adverse; and (4) the issue must be ripe for judicial determination.

XO Communications, LLC v. Level 3 Communications, Inc., 948 A.2d 1111, 1117 (Del. Ch. 2007); See, e.g., Fed. R. Civ. P. 57; 28 U.S.C.A. § 2201 (West). That the plaintiffs have met the requisite elements is self-evident from the complaint, and New GM does not claim otherwise.

Rather, New GM argues that plaintiffs' claims fail on the merits according to New GM's flawed interpretation of the ARMSPA. Plaintiffs also believe that interpretation of the ARMSPA is an issue of law and ripe for decision at this time. To that end, plaintiffs will seek permission to file a Motion for Summary Judgment as to Count I as soon as possible. In light of the local rules, plaintiffs will not file their Motion for Summary Judgment until an appropriate pre-motion conference can be had. Rather than repeat these arguments, plaintiffs attach their anticipated Memorandum in Support of Motion for Partial Summary Judgment, as to Count I Only, for Express Assumption of Liability to this pleading as Appendix A. In response to New GM's arguments on the merits regarding express assumption of liability under the ARMSPA, plaintiffs incorporate by reference the arguments set forth fully that memorandum.

II. **Count II Of Plaintiff's Complaint, For Implied Assumption Of Liability, States A Claim Sufficient To Survive Defendant's Motion To Dismiss.**

Initially, plaintiffs note that a ruling in their favor on Count I for express assumption of

liability would render Count II of their complaint superfluous, and, therefore, respectfully suggest that a declaration of rights as to the merits of Count I is appropriate prior to taking up Count II. Ultimately, because plaintiffs have adequately stated a claim for a declaration that New GM impliedly assumed the liability at issue, the Motion to Dismiss must be denied as to Count II.

While Count I presents an issue of law to be determined by the Court, Count II is a different matter in that it asserts an implied contract based on the conduct of New GM. While further discovery must be done prior to a determination on the merits as to Count II, plaintiffs' complaint adequately states a claim such that the present Motion to Dismiss must be denied.

New GM describes Count II of plaintiffs' complaint as "an apparent afterthought" and requests dismissal absent citation to legal authority. There is no doubt, however, that a contract may be implied under the laws of New York. "It is well established that a contract may be implied in fact where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct." Pache v. Aviation Volunteer Fire Co., 20 A.D.3d 731, 732, 800 N.Y.S.2d 228, 229 (N.Y. App. Div. 2005). "Thus, an agreement by conduct does not differ from an express agreement except in the manner by which its existence is established." Matter of Boice, 226 A.D.2d 908, 910, 640 N.Y.S.2d 681, 682 (N.Y. App. Div. 1996). For example, the performance and acceptance of services can give rise to the inference of an implied contract. Berlinger v. Lisi, 288 A.D.2d 523, 525, 731 N.Y.S.2d 916 (N.Y. App. Div. 2001).

In this case, it is clear that New GM did assume responsibility for the settlement and judgment *expressly* by virtue of the ARMSPA. The ARMSPA, however, is not the only source of responsibility for the settlement and judgment. As alleged in the complaint, the outward

manifestations of intent to the class were such that New GM has impliedly accepted

responsibility for the settlement and final judgment even in the absence of express language in

the ARMSPA. Per the allegations of the complaint, Old GM began honoring the settlement

shortly after preliminary approval and months prior to bankruptcy. *Complaint, ¶42.* Following

notice of the settlement to the class, *Complaint, ¶30,* class members began submitting claims to

Old GM and Old GM paid them under the terms of the settlement. *Complaint, ¶42.* The class

reimbursements were clearly made pursuant to the settlement in that they were made according

to the percentages of reimbursement required by the settlement. *Complaint, ¶¶ 44, 46, 48.*

When Old GM or New GM paid for these repairs, the repairs were characterized as made

under "warranty." *See, e.g., Complaint, ¶¶44, 46, 48 and Exs. P, O, and Q.* The repairs

continued to be made and characterized as "warranty" after Old GM filed for bankruptcy, during

the time customers or class members could have objected to the 363 sale, and following the 363

sale while it could have been appealed. Id. Meanwhile, Old GM and New GM wrote directly to

customers, including class members, discussing the customers' "trust," "confidence," and

"loyalty" to the brand, and advising those class members that warranty coverage would continue

unchanged. *Complaint, ¶¶50, and Exs. R and S.* Having courted the class members' trust and

loyalty with promises of continued warranty coverage, New GM now claims to have

"discontinued [its] voluntary continuation of MLC's customer satisfaction program." *New GM's*

*Motion to Dismiss, p. 13-14.*

New GM's assertion that an implied contract is without consideration under these

circumstances is completely inconsistent with the law and inconsistent with Old GM's arguments

to the bankruptcy court. Of course, New GM has provided no authority to support its assertion

that additional consideration is required under the circumstances. Even so, the continuing

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 doc 2 Pg
Case 1:09-cv-09017-BAS Document 2 Filed 11/09/2015 Page 8 of 40
8 of 40

goodwill of the class members, who are its customers, among other possible sources of consideration, is by itself sufficient to support the agreement.

New York recognizes customer goodwill as an asset that can be bought and sold like any other. Riedman Corp. v. Gallager, 48 A.D.3d 1188, 1190, 852 N.Y.S.2d 510 (N.Y. App. Div. 2008)("Neither the HFC agreement nor any of the documents relating to it refers to the purchase of assets from HFC, such as customer accounts, customer lists or goodwill"); Frank May Associates Inc. v. Boughton, 281 A.D.2d 673, 674, 721 N.Y.S.2d 154 (N.Y. App. Div. 2001))(covenant not to compete part of consideration for sale of business with its goodwill). In the bankruptcy proceeding itself, when Old GM sought permission to continue warranty coverage during the bankruptcy proceeding, its customers were described as the "lifeblood of the business," and continued warranty service was deemed "absolutely essential to maintaining customer loyalty." *Complaint, ¶35.* For New GM to suggest in its Motion to Dismiss that it got nothing in return for reimbursing class members for the repairs at issue is absurd.

New GM's other claimed legal grounds for dismissal of Count II, expressed under Part C of its brief in only two sentences, are so undeveloped as to be impossible to address with any specificity. New GM repeats its mantra that Old GM "never admitted liability" and quotes six words from the sale order without explaining what relationship either bear to an implied contract based, in large part, on New GM's post 363 sale conduct. Absent a more complete explanation of how New GM's arguments addressed to Count II differ from those asserted against Count I, plaintiffs direct the Court to the arguments set forth in its Memorandum in Support of Motion for Summary Judgment, previously incorporated herein.

**III.    Whether This Action Is Subject To Injunction Is Completely Dependent On The
Ultimate Issue Raised Herein, Namely, Whether The Settlement And Final
Judgment Are Assumed Liabilities Under The ARMSPA.**

In its Motion to Dismiss, New GM is at pains to repeatedly accuse plaintiffs of violating

injunctions set forth in paragraphs 8 and 47 of the sale order.  New GM's rhetoric fails to

acknowledge that its accusation is dependent entirely upon a decision on the merits of the case:

namely, whether the settlement and final judgment that resolved the Class Action is an Assumed

Liability pursuant to the terms of the ARMSPA.  In the simplest terms, one major purpose of the

sale order and the ARMSPA was to make New GM responsible for the Assumed Liabilities.

To that end, enforcement of the Assumed Liabilities is an exception to each injunction

relied upon by New GM.  Paragraph 8 of the sale order, for example, bars claims against New

GM based on liabilities of Old GM "[e]xcept as expressly permitted or otherwise specifically

provided by the MPA or this Order."[1]  The ARMSPA, which the sale order refers to as the

"MPA," expressly states that New GM will be responsible for the Assumed Liabilities in Section

2.1.  Moreover, the sale order, itself, repeatedly exempts Assumed Liabilities from those

obligations for which New GM was not responsible.  Id.  ¶¶ *AA, DD, 7, 9, 10, 46, 47, 48*.

Paragraph 47, also relied by New GM, excludes pursuit of Assumed Liabilities from any

injunction protecting New GM:  persons are prohibited from commencing any action against

New GM "with respect to any (i) claim against the Debtors other than Assumed Liabilities. . ."

The sale order itself contemplates disputes requiring interpretation of the ARMSPA.  See,

e.g., ¶ *71.*  Surely an action, for declaratory judgment as to the scope of Assumed Liabilities as

defined by the ARMSPA, is the appropriate vehicle to resolve such a dispute so that New GM's

histrionic request for sanctions in its prayer for relief is without merit.  See, e.g., Clean Harbors

---

[1] In an exercise in creative editing, New GM chose to omit the pertinent exception in the block quote it
provided for the Court's benefit in its Memorandum supporting its Motion to Dismiss.

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 dec 2 Pg
10 of 40
Case 1:09-cv-09019-SAS Document 2 Filed 11/09/2009 Page 10 of 40

v. Arkema, Inc. (In re Safety-Kleen), 331 B.R. 605 (Bankr. D. Del. 2005)(refusing to sanction

claimant for declaratory judgment action seeking interpretation "Assumed Liabilities" as defined

by 363 sale agreement).

## **Conclusion**

For all of the foregoing reasons, the Court should deny New GM's Motion to Dismiss for

Failure to State a Claim.

Dated: New York, New York          LEADER & BERKON LLP
      November 4, 2009

                              S. Alyssa Young, Esq. (SY 6105)
                              Michael J, Tiffany, Esq. (MT 9367)
                              630 Third Avenue
                              New York, NY 10017
                              (212) 486-2400
                              (212) 486-3099 fax

                                   -and-

                              Robert W. Schmieder II
                              Mark L. Brown
                              LAKINCHAPMAN LLC
                              300 Evans Avenue, P.O. Box 229
                              Wood River, Illinois 62095-0229
                              Phone : (618) 254-1127
                              Fax :    (618) 254-0193

                              *Attorneys for*
                              *Plaintiffs*

# APPENDIX A

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 dec 2 Pg
12 of 40
Case 1:09-cv-09010-SAS Document 2 Filed 14/09/2009 Page 12 of 40

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re MOTORS LIQUIDATION COMPANY,
f/k/a GENERAL MOTORS CORP., *et al.*,

                                Debtors,

KELLY CASTILLO, NICHOLE BROWN,
BRENDA ALEXIS DIGIANDOMENICO,
VALERIE EVANS, BARBARA ALLEN,
STANLEY OZAROWSKI, and DONNA
SANTI,

                                Plaintiffs,

                v.

GENERAL MOTORS COMPANY, f/k/a NEW
GENERAL MOTORS COMPANY, INC.,

                                Defendant.

Chapter 11
09-50026 (REG)
Jointly Administered

Adv. Proc. No. _____

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT
### AS TO COUNT I, ONLY, FOR EXPRESS ASSUMPTION OF LIABILITY

Robert W. Schmieder II
Mark L. Brown
**LakinChapman LLC**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095-0229
Phone : (618) 254-1127
Fax :     (618) 254-0193

**LEADER & BERKON LLP**
630 Third Avenue
New York, New York 10017
Phone (212) 486-2400
Fax (212) 486-3099

*Attorneys for Plaintiffs*

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    dec 2    Pg
13 of 40
Case 1:09-cv-09043-AS    Document 2    Filed 11/09/2009    Page 13 of 40

## Summary of Argument

Under the Amended and Restated Master Sale and Purchase Agreement ("ARMSPA"),
General Motors Corp. n/k/a Motors Liquidation ("Old GM") sold certain assets **and liabilities** to
General Motors Company f/k/a New General Motors Company, Inc. ("New GM").  *Ex. C.*[1]
Indeed, the liabilities assumed by New GM formed part of the purchase price.  *Id., § 3.2(a)(iv), p.
34*.  As of the date of the Closing, New GM agreed to "assume and thereafter pay or perform as
and when due, or otherwise discharge, all of the Assumed Liabilities."  *Ex. C, § 2.1(b), p. 23*.

The ARMSPA defines "Liabilities" as broadly as possible—including "any and all
liabilities and obligations of every kind and description whatsoever … and those arising under any
Law, Claim, Order, Contract or otherwise."  *Ex. C, § 1.1 (definition of "Liabilities"), p. 11*.
Thereafter, Liabilities[2] fall into two categories—Assumed Liabilities or Retained Liabilities.   In
fact, the ARMSPA defines Retained Liabilities as anything "other than the Assumed Liabilities"
and "in all cases with the exception of the Assumed Liabilities …."  *Ex. C, § 2.3(b), p.30*.   So
long as a Liability falls within the definition of an Assumed Liability, it, by definition, is not a
Retained Liability.  Id.

Under the ARMSPA, New GM agreed to assume "the following Liabilities of [Old GM]:"

> all Liabilities arising under express written warranties of Sellers that
> are specifically identified as warranties and delivered in connection
> with the sale of a new, certified used or pre-owned vehicles or new
> or remanufactured motor vehicle parts and equipment (including
> service parts, accessories, engines and transmissions) manufactured
> or sold by Sellers or Purchaser prior to or after the Closing ….

---

[1]  Exhibits A through S were attached to Plaintiffs' verified Complaint for Declaratory Judgment and, to
avoid a second filing of voluminous exhibits, have not been attached to this pleading.   Exhibits T through
V, which were not previously part of the Court's file, are attached to this pleading.

[2]  Throughout the ARMSPA, the use of a defined term is indicated by the use a capital letter rather than
quotation marks.   Due to the frequency of these terms in this memorandum and to be consistent with the
ARMSPA, plaintiffs have adopted the same convention in this pleading.

*Ex. C, § 2.3(a)(vii)(A), p. 29.*   The claims asserted in the Saturn VTi class action, the subsequent

class settlement, and the resulting class judgment (collectively "Class Judgment") are Liabilities

"arising under" the express written warranties of Old GM.   As a result, New GM assumed

responsibility for the Class Judgment.

## Statement Of Undisputed Facts

1.       On October 10, 2007, Plaintiffs on behalf of a class brought claims against Old GM

relating to the Saturn VTi transmission problems for, among other things, breach of the express

written warranties.   *Ex. D.*

2.       The complaint contained a count for "Breach of Express Warranties" *(Ex. D, pp.

14-16)*, alleging that Old GM breached the express written warranty delivered in connection with

the sale of the Saturn vehicles at issue:

> 71.    ***GM expressly warranted the vehicles*** at issue to be free of
> defects in factory materials and workmanship at the time of sale and
> for a period of ***three years or 36,000 miles*** and, further, that GM
> would, at no cost, correct any vehicle defect related to materials or
> workmanship during the warranty period.   ***Such warranties are
> express warranties*** within the meaning of Section 2-313 of the
> Uniform Commercial Code (UCC) in each of the Class States at
> issue in the class action and are further governed by the
> Magnuson-Moss Warranty Act. 15 U.S.C. §§ 2301, *et seq.*
>                     *   *   *
> 72.    More specifically, ***GM's 'New Car Limited Warranty'***
> promises that GM 'will provide for repairs to the vehicle' during the
> warranty period and that '[t]his warranty covers repairs to correct
> any vehicle defect related to materials or workmanship occurring'
> during the warranty period.
>
>                     *   *   *
> 77.    At the time of sale and forward, GM has ***breached these
> express warranties*** by selling to Plaintiffs and the Class vehicles
> equipped with defective VTi transmissions that are, by design,
> unsafe, subject to extreme premature wearing and failure, and likely
> to cause serious injury to Plaintiffs and Class members – if the
> vehicles are even operable at all—and/or by refusing to adequately

2

repair or replace their transmissions.

* * *

78.    As a direct and proximate cause of **GM's breach of express
warranties**, Plaintiffs and the Class have suffered actual damages
and are threatened with irreparable harm by virtue of an elevated
and unreasonable risk of serious bodily injury.

* * *

79.    Any **limitation on the duration of GM's express warranties**
is unconscionable within the meaning of Section 2-302 of the UCC,
and therefore is unenforceable in that, among other things, vehicles
with VTi transmissions contain a latent defect of which GM was
actually or constructively aware at the time of sale, and purchasers
lacked a meaningful choice with respect to the terms of the warranty
due to unequal bargaining power and a lack of warranty
competition.

* * *

81.    Any attempt by GM to repair a defective VTi transmission
or to replace one defectively designed VTi transmission with
another defectively designed VTi transmission within the warranty
period could not satisfy **GM's obligation to correct defects under
the warranty**.   The design defect in the VTi transmission – which
unreasonably elevates the risk of premature failure, immobility
and/or dangerous loss of operability of the vehicle – cannot be
remedied through the continued use of a defective VTi transmission.

*Ex. D, pp. 14-22* (emphasis added).

3.    The original complaint referenced express warranties in twelve (12) separate

paragraphs.  *Ex. D, ¶¶ 7, 24, 25, 30, 53, 71, 72, 75, 77, 78, 79, 80*.

4.    On January 4, 2008, Old GM filed its motion to dismiss, which characterized

plaintiffs' claim as based on the Saturn Express Limited Warranty provided with the sale of a new

vehicle, specifically:

> Contrary to Plaintiffs' allegations (Complaint, ¶¶ 30, 71), the
> **Limited New Vehicle Warranty for the 2003 Saturn VUE** *did not*
> warrant a 'defect-free' vehicle.
> * * *
> Plaintiffs have chosen not to attach **the Saturn warranty** to their
> complaint.   In ruling on the motion, however, the Court may

3

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    dec 2    Pg
16 of 40
Case 1:09-cv-00491-SAS    Document 2    Filed 11/09/2009    Page 16 of 40

> judicially notice and consider this warranty *because the complaint
> refers to and relies upon this document* and it is indisputably
> authentic."

*Ex. H, p. 2* (emphasis added).

5.       In fact, Old GM filed a declaration averring that the express warranty was, indeed,

the Saturn Express Limited Warranty. *Ex. G.*   Under oath, a representative of Old GM stated that

"[a]ttached hereto is a true and correct copy of the Saturn Express Limited Warranty Booklet for

the 2003 VUE to which plaintiffs refer in their complaint."   *Id.*

6.       In more than six (6) pages of its memorandum, Old GM presented arguments

regarding the breach of express warranty count.   *Ex. H, pp.   11-12, 23-28.*

7.       On February 19, 2008, plaintiffs filed their opposition, which, once again,

addressed the express warranty claims against Old GM:

> Plaintiffs' Complaint alleges that *GM provided an express
> warranty*, states the terms of the warranty, alleges that GM breached
> it, and claims that Plaintiffs suffered damages.
>                              *   *   *
> GM's express warranty covers the defects the Plaintiffs allege.   . . .
> Any ambiguity in the scope of the warranty should be construed
> against *GM as the drafter of the written warranty* and as the party
> with superior bargaining power.

*Ex. I, pp. 5, 29* (emphasis added).   *See also pp. 36-43.*

8.       The subsequent amended complaints continued to contain counts for "Breach of

Express Warranties" with numerous references to the express written warranties. *Ex. E, ¶¶ 7, 24,

25, 30, 66, 84, 85, 88, 90, 91, 92, 93; Ex. F, ¶¶ 7, 24, 25, 30, 66, 82, 83, 85, 87, 88, 89, 90.*

9.       Thereafter, discovery in the matter continued, the parties engaged in mediation, and

a settlement between the parties was reached. *Ex. B.*

10.       According to the class settlement agreement:

> The Agreement is intended to fully, finally and forever resolve,

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    dec 2    Pg
17 of 40
Case 1:09-cv-09015-SAS    Document 2    Filed 11/09/2009    Page 17 of 20

discharge and settle *the lawsuit* styled Kelly Castillo, et al. v.
General Motors Corporation, Case No. 2:07-CV-02142
WBS-GGH, pending in the United States District Court for the
Eastern District of California (the "Action") *and all matters raised
or that could have been raised therein*, subject to the terms and
conditions hereof and approval by the Court.

*Ex. B, p.2 Opening para.* (emphasis added).

11.    Immediately thereafter, Old GM expressly acknowledged that the complaint that

precipitated the settlement agreement asserted a claim for breach of warranty: "[plaintiffs] claim

that GM is liable to alleged class members for damages under state consumer protection statutes

and *on breach of warranty* and unjust enrichment theories." *Ex. B, ¶I.2* (emphasis added).

12.    Indeed, Old GM decided to settle "because it will (i) fully resolve all claims that

were or could have been raised in the Action …." *Ex. B, ¶I.5.*

13.    As a result, the definition of "Released Claims" included any claims based upon

"the factual allegations and legal claims that were made or could have been made in the Action."

*Ex. B, ¶ II.14.*

14.    On September 8, 2008, the district court preliminarily approved the settlement

agreement and ordered that GM issue notice to the class members. *Ex. J.*

15.    In its order, the district court specifically noted that the complaint was alleging

"breach of express warranties." *Ex. J, p.3.*

16.    In early January 2009, the notice was mailed to the class members. *Ex. K.*

17.    Under the heading "DESCRIPTION OF THE LAWSUIT," the notice advised the

class members that the lawsuit alleged that Old GM had, among other things, "breached express . .

. warranties." *Ex. K.*

18.    On April 14, 2009, the district court signed an order—the final judgment—granting

final approval of the settlement and certifying the class. *Ex. A.*

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    doc 2    Pg
18 of 40
Case 1:09-cv-09049-SAS    Document 2    Filed 11/09/2009    Page 18 of 40

19.     The final judgment incorporated the settlement agreement by reference.  *Ex. A.*

20.     In the final judgment, the district court made the following findings:

> (a) the settlement … has been entered into in good faith and was
> concluded after Class Counsel had conducted an extensive
> investigation **concerning the issues raised by Plaintiffs' claims**; …
> (c) the settlement delivers benefits to the Class in a timely manner
> while **resolving complex issues** that would require expensive and
> long-lasting litigation; (d) the Agreement was the result of extensive
> arms' length negotiations among highly experienced counsel, **with
> full knowledge of the risks inherent in this litigation**; … (g) **the
> case raised complex and vigorously contested issues of law and
> fact** that would result in complex, expensive, and lengthy litigation;
> … (i) the release is tailored to address **the allegations in the case**.

*Ex. A,    ¶3* (emphasis added).

21.     The district court then enjoined class members from filing any lawsuit based on

"the claims and causes of action asserted or that could have been asserted …."  *Ex. A, ¶10.*

22.     Pursuant to the final judgment, Old GM was required to mail final notice and claim

forms to the class on June 2, 2009.  *Ex. A.*

23.     On June 1, 2009, Old GM filed for bankruptcy protection under chapter 11 of the

Bankruptcy Code.  *Ex. C, p. 1.*

24.     In conjunction with its bankruptcy, Old GM filed a motion seeking leave to

continue warranty service during the bankruptcy.  *Ex. M.*

25.     As part of the bankruptcy proceedings, Old GM ultimately sold certain assets and

liabilities to General Motors Company, then known as New General Motors Company, Inc.,

("New GM") pursuant to the Amended and Restated Master Sale and Purchase Agreement[3]

---

[3] On June 1, 2009, the day it filed for bankruptcy protection, Old GM filed a Master Sale and Purchase
Agreement ("MSA") between Old GM and New GM.   Section 2.3(a)(vii) of the original MSA provided
that the Assumed Liabilities included:

> (A)  all Liabilities arising under express written emission and limited new vehicle
> warranties, certified used vehicle warranties and pre-owned vehicle warranties delivered in

("ARMSPA").  *Ex. C.*

26.    Via the ARMSPA, New GM accepted responsibility for certain various liabilities
of Old GM defined by the ARMSPA as the Assumed Liabilities.  *Ex. C.*

27.    Following preliminary approval of the class action settlement, first Old GM and
then, following the 363 sale, New GM began honoring the settlement as to fresh failures
experienced by class members, as reflected by the invoices attached as exemplars.  *Exs. O, P, Q
and T.*

28.    Before the class action was filed in California, Old GM adopted Special Policy
04020.  *Ex. V.*

29.    After the present declaratory judgment was filed, New GM ceased honoring the
settlement consistent with the experience of Mr. Dan Richardson. *Ex. U.*

**Standard**

The ARMSPA contains a choice of law provision specifying that the Bankruptcy Code and
New York law govern the interpretation of the contract.  *Ex. C, § 9.12, p. 99.*  Under New York
law, the interpretation of a contract is "a question of law for the court to be made without resort to
extrinsic evidence." Ruttenberg v. Davidge Data Systems Corp., 215 A.D.2d 191, 192 (N.Y. App.
Div. 1995).  As a result, a court need not look further than "the four corners of the instrument" and
determine if it is "clear and unambiguous on its face…according to the plain meaning of its terms."

---

connection with the sale of new, certified used or pre-owned vehicles manufactured or sold
by Seller or Purchaser prior to or after the Closing and (B) all Liabilities arising under
express written emission and limited warranties and warranties with respect to new or
remanufactured motor vehicle parts and equipment (including service parts, accessories,
engines and transmissions), manufactured or sold by Sellers or Purchaser.

On June 26, 2009, Old GM filed the ARMSPA that was subsequently approved and executed.   On June 30,
2009, Old GM filed the First Amendment to the ARMSPA, which did not modify Section 2.3(a)(vii).   On
July 5, 2009, Old GM filed the Second Amendment to the ARMSPA, which also did not affect Section
2.3(a)(vii).

09-50026-mrg   Doc 4409-2   Filed 11/09/09   Entered 11/09/09 15:25:16   doc 2   Pg
20 of 40
Case 1:09-cv-09019-SAS   Document 2   Filed 11/09/2009   Page 20 of 40

Ruttenberg, 215 A.D.2d at 193 (N.Y. App. Div. 1995); Riverside South Planning Corp. v.

CRP/Extell Riverside, L.P., 60 A.D.3d 61, 66 and 68 (N.Y. App. Div. 2008).   "Words and phrases

are given their plain meaning."   American Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275,

277 (N.Y. App. Div. 1990).   Unless the contract defines a term, "it is common practice…to refer

to the dictionary to determine the plain and ordinary meaning of words to a contract." Mazzola v.

County of Suffolk, 143 A.D.2d 734, 735 (N.Y. App. Div. 1988).   Under the guise of interpreting

the contract, a court may not rewrite the contract, distort the meaning of words, or "adopt an

interpretation which will operate to leave a provision of a contract without force and effect."

Ruttenberg, 215 A.D.2d at 196-97;   Riverside South Planning Corp., 60 A.D.3d at 66; Papa

Gino's of America, Inc. v. Plaza at Latham Assoc., 170 A.D.2d 869, 870 (N.Y. App. Div. 1991).

## ARGUMENT

In the ARMSPA, Old GM and New GM devoted approximately twenty (20) pages to

define 250 individual contract terms.   Under New York law, the definitions in a contract control.

Mionis v. Bank Julius Baer & Co., Ltd., 301 A.D.2d 104, 749 N.Y.S.2d 497, 502 (N.Y. A.D.

2002).

According to the ARMSPA, "'Assumed Liabilities' has the meaning set forth in **Section

2.3(a)**." *Ex. C, § 1.1 (definition of "Assumed Liabilities"), p.3* (emphasis original). In Section

2.3(a), the ARMSPA provides:

> The "Assumed Liabilities" shall consist only of the following
> *Liabilities* of [Old GM]:
> …
> (vii)   (A) all *Liabilities* arising under express written warranties of
> [Old GM] that are specifically identified as warranties and delivered
> in connection with the sale of new, certified used or pre-owned
> vehicles or new or remanufactured motor vehicle parts and
> equipment (including service parts, accessories, engines and
> transmissions) manufactured or sold by [Old GM] or [New GM]
> prior to or after the Closing ….

Id., § 2.3(a), p. 28 (emphasis added).   The ARMSPA then defines the term "Liabilities."   To

qualify as an Assumed Liability, the Class Judgment must (1) fall within the definition of

Liabilities, and (2) "arise under" the original express written warranty.   It does both.

## I.    THE CLASS JUDGMENT FALLS WITHIN THE DEFINITION OF "LIABILITIES" UNDER THE ARMSPA.

Because ARMSPA divides Liabilities into either Assumed Liabilities or Retained

Liabilities, Liabilities is obviously defined in extraordinarily broad terms.   The ARMSPA

provides:

> "Liabilities" means *any and all liabilities and obligations of every kind and description whatsoever*, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undetermined, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those *arising under any Law, Claim, Order, Contract or otherwise.*

Ex. C, § 1.1, p. 29 (emphasis added).   Initially, Liabilities covers "all liabilities and obligations of

every kind and description whatsoever …."   Id.   By itself, this broad language includes every

possible variety of liability and obligation.   Nonetheless, the definition expressly includes the

defined sub-terms of "Law,[4] Claim,[5] Order,[6] Contract[7] or otherwise." Id.

---

[4] Per the ARMSPA, Law means "any and all applicable United States or non-United States federal, national, provincial, state or local laws, rules, regulations, directives, decrees, treaties, statutes, provisions of any constitution and principles (including principles of common law) of any Governmental Authority, as well as any applicable Final Order."   Exhibit C, Section 1.1, p. 11.

[5] Per the ARMSPA, Claims means "all rights, claims (including any cross-claim or counterclaim), investigations, causes of action, choses in action, suits, defenses, demands, damages, defaults, assessments, rights of recovery, rights of set-off, rights of recoupment, litigation, third party actions, arbitral proceedings or proceedings by or before any Governmental Authority or any other Person, of any kind or nature, whether known or unknown, accrued, fixed, absolute, contingent or matured, liquidated or unliquidated, due or to become due, and all rights and remedies with respect thereto."   Exhibit C, Section 1.1, p. 4.

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    doc 2    Pg
22 of 40
Case 1:09-cv-09059-AS    Document 2    Filed 11/09/2009    Page 22 of 40

There is no dispute that the Class Judgment falls within the definition of Liabilities.   Apart from falling within the generic opening language of the definition of Liabilities, the Class Judgment falls within each and every one of the defined sub-terms Law, Claim, Order, Contract, or otherwise.   For example, the underlying class claims for breach of express warranty involved section 2-313 of the Uniform Commercial Code and the Magnuson-Moss Warranty Act such that they arose under Law.   *Ex. D.*   The underlying class complaint likewise asserted these theories as "causes of action" in a "suit" seeking "damages" via "litigation" to qualify as a Claim.   *Ex. D.* Furthermore, the underlying class claims resulted in a final judgment entered by the district court to fall within the definition of Order.   *Ex. A.*   In fact, the underlying class claims resulted in the written settlement agreement submitted to the district court for final approval, which is an obligation via Contract.   *Ex. B.*   Because the Class Judgment falls within so many meanings and other defined terms within the definition of Liabilities, there is no need to even analyze the term "otherwise."

The ARMSPA not only defines Liabilities broadly, but expressly provides that Liabilities include different levels of maturity and quality.   Liabilities may be "unmatured, … fixed, contingent, … determined or undeterminable …."   *Ex. C, § 1.1, p. 11.*   Indeed, the sub-definitions of Claims and Order confirm that Liabilities may be "contingent or matured," "due or to become due," "rights and remedies," or even "temporary."   *Ex. C, § 1.1, pp. 4, 12.*   The definition of Liabilities is all-encompassing.

---

[6]Per the ARMSPA, Order means "any writ, judgment, decree, stipulation, agreement, award, injunction or similar order of any Governmental Authority, whether temporary, preliminary or permanent."   Exhibit C, Section 1.1, p. 12.

[7] Per the ARMSPA, Contract means "all…product warranty or services agreements and other binding commitments, agreements, contracts, arrangements, obligations and undertakings of any nature (whether written or oral, and whether express or implied)."   Exhibit C, Section 1.1, p. 5.

Due to its breadth, Liabilities fall into two categories—Assumed Liabilities or Retained

Liabilities.   The ARMSPA defines Retained Liabilities as anything "other than the Assumed

Liabilities" and "in all cases with the exception of the Assumed Liabilities …."   *Ex. C, § 2.3(b),*

*p.30.*   Once a Liability is an Assumed Liability, it, by definition, is not a Retained Liability.   Id.

Under the ARMSPA, Assumed Liabilities shall consist of "the following ***Liabilities*** of

[Old GM]:   ... all ***Liabilities*** arising under express written warranties …."   *Ex. C, § 2.3(a), p. 28*

(emphasis added).   By substituting the definition of Liabilities within the ARMSPA, it reads:

> all <u>… liabilities and obligations of every kind and description
> whatsoever, whether such liabilities or obligations are known or
> unknown, disclosed or undisclosed, matured or unmatured, accrued,
> fixed, absolute, contingent, determined or undetermined, on or
> off-balance sheet or otherwise, or due or to become due, including
> Indebtedness and those **arising under** any Law, Claim, Order,
> Contract or otherwise **arising under**</u> express written warranties of
> Sellers that are specifically identified as warranties and delivered in
> connection with the sale of new, certified used or pre-owned
> vehicles or new or remanufactured motor vehicle parts and
> equipment (including service parts, accessories, engines and
> transmissions) manufactured or sold by Sellers or Purchaser prior to
> or after the Closing ….

Id., *§ 2.3(a)(vii)(A)*(emphasis added).   Accordingly, the Assumed Liabilities include liabilities

and obligations "arising under" any Law, Claim, Order, Contract or otherwise "arising under"

express written warranties.   Id.

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    dec 2    Pg
24 of 40
Case 1:09-cv-09109-AS    Document 2    Filed 11/09/2009    Page 24 of 40

## II.    THE CLASS JUDGMENT IS A LIABILITY "ARISING UNDER" THE EXPRESS WRITTEN WARRANTIES OF THE SATURN VEHICLES.

In Section 2.3(a)(vii), the ARMSPA did not limit the scope of Assumed Liabilities to the terms of the express warranties themselves.   Instead, it used the all-encompassing term Liabilities followed by the expansive phrase "arising under" to capture everything originating from the express warranties.   Like Liabilities, the phrase "arising under" is extraordinarily broad.   See, e.g., In re Cone Mills Corp., 90 A.D.2d 31 (N.Y. App. Div. 1982); Intermar Overseas, Inc. v. Argocean S.A., 117 A.D.2d 492, 503 N.Y.2d 736 (N.Y. App. Div. 1986) (referencing a "broad" arbitration clause subjecting all "dispute[s] arising under this Agreement" to arbitration); Hodom v. Stearns, 32 A.D.2d 234, 301 N.Y.S.2d 146 (N.Y. App. Div. 1969) (distinguishing "actions commenced under the agreement" from the broader "any dispute arising under the contract" in fraudulent inducement action). The word "arise" means "to originate from a source." *Webster's Ninth New Coll. Dict.* (1989).[8]   Hence, "arising under" written warranty includes those matters having their origin under written warranty.

In In re Cone Mills Corp., a court applying New York law reviewed two separate judgments staying the arbitration of breach of warranty claims.   There, two clothing manufacturers entered into sale contracts with two different suppliers requiring arbitration for "any controversy arising under, or in relation to this contract." 90 A.D.2d at 32 (N.Y. App. Div. 1982).   The court broadly construed the arbitration clause, finding that "[h]ad there been no contract there would now be no dispute to arbitrate. Thus, the dispute arises under the contract within the contemplation of the arbitration clause." Id. at 33.   Construing "arising under," the United States Supreme Court has likewise recognized its expansive function.   See Verlinden B.V.

---

[8]   See Mazzola v. County of Suffolk, 143 A.D.2d 734, 735 (N.Y. App. Div. 1988) ("it is common practice … to refer to the dictionary to determine the plain and ordinary meaning of words to a contract.").

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 dec 2 Pg
Case 1:09-cv-09109-SAS Document 2 Filed 11/09/2009 Page 25 of 40
25 of 40

v. Central Bank of Nigeria, 461 U.S. 480, 492-94 (1983) (describing it as broad); American Nat.
Red Cross v. S.G., 505 U.S. 247, 264 (1992) (same); United States Dept. of Energy v. Ohio, 503
U.S. 607, 626 (1992) (describing it as a broad and "expansive phrase"); Aetna Health, Inc. v.
Davila, 542 U.S. 200, 207 (2004) (stating that "arising under" jurisdiction "must be determined
from what necessarily appears in the plaintiff's statement of his own claim").

The Class Judgment is a Liability "arising under" the express written warranties. The
express written warranty booklet suggests that owners contact the Saturn Customer Assistance
Center as outlined "on page 25 of this booklet" in the event that a warranty matter "is not resolved"
or "not handled to your satisfaction." *Ex. G, pp. 5, 15*. Beginning on page 25 of the warranty
booklet, Old GM offers a number of methods to resolve warranty disputes, including non-binding
arbitration:

> We encourage you to use this program before, or instead of,
> resorting to ***legal action***. We believe it offers advantages over
> ***legal avenues*** in most jurisdictions because it is fast, free of charge,
> and informal (lawyers are not usually present, although you may
> retain one at your expense if you choose). If you wish to pursue
> ***legal action***, however, we do not require that you first file a claim
> with BBB Auto Line unless state law provides otherwise.
>
> Whatever your preference may be, remember that if you are
> unhappy with the results of BBB Auto Line, you can still pursue
> ***legal action*** because an arbitrator's decision is binding on Saturn
> but not on you unless you accept it.

*Ex. G, p.17* (emphasis added). In other words, the express written warranty states the obvious—a
legal action involving the warranty "arises under" the warranty. See, e.g., Vine Street, LLC v.
Keeling, 460 F. Supp.2d 728 (E.D. Tex. 2006) (holding that a contractual assumption of warranty
liabilities depends upon whether there was a theory of recovery based upon warranty). The
underlying complaint was exactly that—a legal action for, among others, breach of the express
warranties. *Ex. D.*

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 dec 2 Pg
26 of 40
Case 1:09-cv-09405-SAS Document 2 Filed 11/09/2009 Page 26 of 40

On October 10, 2007, the plaintiffs on behalf of the class filed a complaint containing a
count for "**Breach of Express Warranties**." *Ex. D, pp. 14-16* (emphasis added).   Throughout the
underlying complaint, there are repeated references that the claims asserted originate in the
express warranties:   "GM expressly warranted the vehicles . . . for a period of three years or
36,000 miles," *Ex. D, ¶71*, "GM's 'New Car Limited Warranty,'" *id. ¶72*, "GM has breached these
express warranties," *id. ¶77*, "GM's breach of express warranties," *id. ¶78*, "GM's express
warranties," *id. ¶79*; see also, e.g., *Ex.D., ¶¶ 7, 24, 25, 30, 53, 75, 80; Ex. E, ¶¶ 7, 24, 25, 30, 66,
84, 85, 88, 90, 91, 92, 93; Ex. F, ¶¶ 7, 24, 25, 30, 66, 82, 83, 85, 87, 88, 89, 90*.   In fact, the claims
under the Uniform Commercial Code ("UCC") and the Magnuson-Moss Warranty Act necessarily
require an express warranty.   See 15 U.S.C. §2301(6) (defining "written warranty" as a written
promise made in connection with the sale of consumer goods).   In response, Old GM filed a
declaration attaching the "Saturn Express Limited Warranty Booklet" referenced in the underlying
complaint.   *Ex. G.*   In fact, Old GM argued that:

> Contrary to Plaintiffs' allegations (Complaint, ¶¶ 30, 71), the
> **Limited New Vehicle Warranty for the 2003 Saturn VUE** did not
> warrant a 'defect-free' vehicle.
> *   *   *
> Plaintiffs have chosen not to attach **the Saturn warranty** to their
> complaint.   In ruling on the motion, however, the Court may
> judicially notice and consider this warranty **because the complaint
> refers to and relies upon this document** and it is indisputably
> authentic.

*Ex. H, p. 2* (emphasis added).   In response, the plaintiffs continued to discuss the claim as arising
under the written warranty provided with the purchase of the Saturn vehicles:

> Plaintiffs' Complaint alleges that **GM provided an express
> warranty**, states the terms of the warranty, alleges that GM breached
> it, and claims that Plaintiffs suffered damages.
> *   *   *
> GM's express warranty covers the defects the Plaintiffs allege.   . . .
> Any ambiguity in the scope of the warranty should be construed

14

against **GM as the drafter of the written warranty** and as the party
with superior bargaining power.

*Ex. I, p. 5, 29* (emphasis added).    Thereafter, the parties engaged in discovery and reached a class

settlement.

Within the class settlement agreement, Old GM expressly acknowledged that the

underlying class action asserted a claim for breach of warranty: "[plaintiffs] claim that GM is

liable to alleged class members ... **on breach of warranty** ... theories."    *Ex. B, p. 2, ¶2* (emphasis

added).    In the court-approved notice under the heading DESCRIPTION OF THE LAWSUIT,

class members were advised that the claims alleged that Old GM had, among other things,

"breached express . . .   warranties."    *Ex. K.*

While a similar breach of warranty claim on behalf of an individual would also be an

Assumed Liability, the Class Judgment necessarily "arises under" the express warranties due to

the procedural requirements governing class actions.    "The claims ... of a certified class may be

settled ... or compromised only with the court's approval."    Fed. R. Civ. P. 23(e).    A class action

settlement simply cannot exist outside the parameters of Rule 23.[9]    For example, the approval of

the settlement required a finding that the settlement was "fair, reasonable, and adequate."    Fed. R.

Civ. P. 23(e)(2).    "Reasonableness depends on an analysis of **the class allegations and claims** and

the responsiveness of the settlement to those claims."    Manual for Complex Litigation, § 21.62 at

468 (4th ed. 2008) (emphasis added).    Accordingly, the district court analyzed a number of factors

_____

[9]  The Federal Rules of Civil Procedure govern procedures in all civil actions in the United States district
courts.  FRCP 1.  Therefore, Rule 23 applied to the underlying complaint.    Pursuant to the rules, a civil
action is commenced by filing a complaint, FRCP 3, and the complaint must contain a short and plain
statement of the claim, FRCP 8(a).    In the underlying class action, the class filed a complaint and asserted
claims arising under the express written warranties.  *Ex. D.*  Moreover, the class settlement was approved
under Rule 23(e) resulting in a judgment.  "Every ... final judgment should grant the relief to which each
party is entitled, even if the party has not demanded that relief in its pleadings."  FRCP 54(c).

including the strength of plaintiffs' case, which involved an analysis of the express warranty

claim. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). As the district court

found, "the release is tailored to address the allegations in the case." Ex. A, ¶3(i). As a result, the

Class Judgment became a Liability that originated from the express warranties.

When determining the scope of "assumed liabilities" in 363 sale contracts, bankruptcy

courts have recognized that neither settlement agreements nor court orders exist without an

originating claim and have held that these claims are liabilities arising under that which initiates

them. See, e.g., In re Safety-Kleen Corp., 380 B.R. 716 (D. Del. 2008). There, an adversary

proceeding required the bankruptcy court to determine whether certain settlement agreements and

consent decrees were within the meaning of "assumed liabilities" in the 363 sale agreement

because they "arose under" environmental laws. The purchaser argued that the liabilities, having

been reduced to settlement agreements and consent decrees, were mere contractual liabilities. Id.

at 724. The court rejected this argument, finding that the settlements and consent decrees merely

"quantified those liabilities to the government entities":

> The Consent Decrees and the Settlement Agreements evidence
> obligations *arising under* CERCLA and the Spill Act, and settle
> direct and third-party claims *arising under* or with respect to such
> statutes. As such, they are "liabilities and obligations . . . *arising
> under* Environmental Laws (or other Laws) that relate to violations
> of Environmental Laws. . ."

Id. at 736 (emphasis added).

When New GM assumed "all Liabilities arising under express written warranties," there

was no exclusion for obligations under settlements or court orders. To the contrary, the definition

of Liabilities expressly includes obligations arising under Contracts, Orders, and much more. *Ex.

C § 1.1, p.11.* Regardless, it is impossible to divorce a class settlement from the underlying

claims.

16

09-50026-mg   Doc 4409-2   Filed 11/09/09   Entered 11/09/09 15:25:16   doc 2   Pg
29 of 40
Case 1:09-cv-00504-SAS   Document 2   Filed 11/09/2009   Page 29 of 40

A review of the ARMSPA's Section 2.3(a)(vii) as a whole confirms that the Class
Judgment is an Assumed Liability.   The use of different language within the same
subsection—Section 2.3(a)(vii)—reveals that subpart (A) is much broader than subpart (B).

In subpart (A), the ARMSPA states "all **_Liabilities_** arising under express written warranties
…." *Ex. C, § 2.3(a)(vii)(A)* (emphasis added).   In subpart (B), the ARMSPA states "all
**_obligations_** under Lemon Laws …." *Ex. C, § 2.3(a)(vii)(B)* (emphasis added).   While subpart
(A) uses the broadly-defined term Liabilities, subpart (B) employs just the word obligations—a
mere subset of Liabilities under the ARMSPA. *See Ex. C, § 1.1, p.11*.   This deliberate choice by
the drafters of the ARMSPA evinces a specific intent to expand all obligations relating to the
express written warranties.

Just as the ARMSPA used the broader term Liabilities in subpart (A) versus "obligations"
in subpart (B), it followed Liabilities with a broader phrase—"arising under"—as well.   In
subpart (A), the ARMSPA includes "all Liabilities **_arising under_** express written warranties …."
*Ex. C, § 2.3(a)(vii)(A)* (emphasis added).   In subpart (B), the ARMSPA includes only "all
obligations **_under_** Lemon Laws." *Ex. C, § 2.3(a)(vii)(B)* (emphasis added).   Subpart (B) omits
the word "arising" and only utilizes the term "under."   In that the word "arise" means "to originate
from a source," the omission of the word "arising" is significant.   While a Liability may originate
from the express written warranty to qualify as an Assumed Liability under subpart (A), the
Lemon Laws themselves limit the obligations under subpart (B).   Again, the Class Judgment need
only originate from the express written warranties to be an Assumed Liability.

If New GM had wanted to limit its liability to the terms of the express written warranties
alone, then the ARMSPA would have (at a minimum) defined Assumed Liabilities as including:

> (vii)   (A) all ~~Liabilities arising~~ <u>obligations</u> under express written
> warranties of Sellers that are specifically identified as warranties

> and delivered in connection with the sale of new, certified used or
> pre-owned vehicles or new or remanufactured motor vehicle parts
> and equipment (including service parts, accessories, engines and
> transmissions) manufactured or sold by Sellers or Purchaser prior to
> or after the Closing and (B) all obligations under Lemon Laws; . . .

*Ex. C, § 2.3(a), pp. 28-29* (redline added).

There is no genuine issue that the underlying complaint asserted claims "arising under" the express warranty provided by Old GM in connection with the sale of the Saturn vehicles. The warranty booklet itself recognizes that legal action is necessary to enforce rights under the express written warranty. *Ex. G, p.17.* The plaintiffs on behalf of the class asserted claims for breach of the express warranties. *Ex. D ¶¶ 7, 24, 25, 30, 53, 71, 72, 75, 77, 78, 79, 80; Ex. E, ¶¶ 7, 24, 25, 30, 66, 84, 85, 88, 90, 91, 92, 93; Ex. F, ¶¶ 7, 24, 25, 30, 66, 82, 83, 85, 87, 88, 89, 90.* Old GM entered into the class settlement to resolve the underlying complaint and "all claims that were made" or "all matters raised … therein." *Ex. B, Opening para., ¶I.5.* The procedural rules required the district court to analyze the settlement against the class claims and the district court found that "the release is tailored to address the allegations in the case." *Ex. A, ¶3(i).* It is clear that the origin of the claim is within the rights provided by the new car warranty such that it is a claim arising under express written warranties of Old GM within the meaning of Section 2.3(a)(vii) of the ARMSPA.

### III. NEW GM'S POST CLOSING CONDUCT IS CONSISTENT WITH PLAINTIFFS' INTERPRETATION AND COMPLETELY AT ODDS WITH NEW GM'S DENIAL OF RESPONSIBILITY.

The terms of the ARMSPA, without more, show that the Class Judgment is among the Assumed Liabilities for which New GM is responsible. In addition, New GM's post-Closing practice of paying for class members' transmission repairs pursuant to the precise and unique terms of the Class Judgment confirms as much. Despite the expiration of time and mileage limitations under the warranty as originally provided, and contrary to the position it takes

18

09-50026-mg    Doc 4409-2    Filed 11/09/09    Entered 11/09/09 15:25:16    doc 2    Pg
Case 1:09-cv-09019-SAS    Document 2    Filed 11/09/2009    Page 3 of 40
31 of 40

regarding whether the Class Judgment is an Assumed Liability, New GM routinely paid for class members' transmission repairs pursuant to the matrix for qualification and reimbursement set forth the in the Class Judgment . . . until this lawsuit was filed.

Among the Assumed Liabilities, those arising under written warranty are given special status under the ARMSPA, with New GM having promised not only to assume them, but to undertake this responsibility "[f]rom and after the Closing." *Ex. C, §6.15(b), p. 69.*   The urgency of this mandate coincides with the special relief requested by Old GM – take care of the customers. The language of Section 6.15(b) essentially restates the Assumed Liabilities outlined in Section 2.3(a)(vii) with added focus on the urgency of the timing and the administration and managerial responsibilities required to fulfill duties arising under Old GM's warranties.   According to the ARMSPA:

> *From and after the Closing*, Purchaser shall be responsible for the *administration, management and payment* of all Liabilities arising under (i) express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing ….

*Ex. C, § 6.15(b)(emphasis added).*   The Closing occurred on July 10, 2009.   *See Doc. 1, ¶ 3, Notice of Removal.*   From that date, New GM was responsible for "the administration, management and payment" of the Assumed Liabilities set forth in Section 2.3(a)(vii), including the Class Judgment.   In accordance with that responsibility, New GM did in fact undertake the administration, management and payment of responsibilities under the Class Judgment.

The addition of the prefatory language "the administration, management and payment," is significant because a word or phrase "gathers meaning from the words around it."   Jones v. United States, 527 U.S. 373, 386-87 (1999).   "Words are not pebbles in alien juxtaposition; they

have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used ...." King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991). In addition, a court must interpret a contract to provide meaning to each word or phrase to avoid rendering language meaningless. Ruttenberg, 215 A.D.2d at 196 (N.Y. App. Div. 1995). The addition of the prefatory language results in only one interpretation—the Class Judgment is an Assumed Liability.

Every class recovery requires "the administration, management, and payment" of the class relief. Here, the Class Judgment required just that—they mandated Old GM to administer, manage, and pay for the class relief. *Exs. A-B.* Indeed, the Class Judgment obliged Old GM to issue a second notice with a claim form, issue a dealer notification, and *pay* class members the appropriate relief. *Ex. A, p. 3-4; Ex. B, pp. 10-11.* The Class Judgment also required Old GM to pay the specified benefits. *Ex. A, p. 3; Ex. B, p. 7-12.* The addition of the prefatory language is not coincidental.

In accordance with its responsibilities under Section 2.3(a)(vii) and Section 6.15(b), New GM has already (partially) performed its responsibility for "the administration, management, and payment" of the Class Judgment. After the Closing, New GM has provided information regarding the Class Judgment through GM Customer Assistance, has accepted claims under the terms of the Class Judgment, and has paid class members consistent with the terms of the Class Judgment.[10] *Ex. T.* In particular, the invoices attached at *Ex. T1* through *T-14* each show instances where, after the Closing, New GM paid 100%, 75%, or 30% of a class member's transmission repair or replacement cost according to the age and mileage of the vehicle and

---

[10] Plaintiffs anticipate additional discovery to uncover the full extent of New GM's "administration, management, and payment" under the Agreement and Final Judgment after the Closing.

09-50026-mg   Doc 4409-2   Filed 11/09/09   Entered 11/09/09 15:25:16   dec 2   Pg
Case 1:09-cv-09092-SAS   Document 2   Filed 11/09/2009   Page 33 of 40
33 of 40

whether the owner purchased it new or second hand.   Id., Ex. A, Ex. B.[11]   Tellingly, the invoices uniformly describe New GM's payment as one made under "warranty."   Ex. T.   Even New GM understood that the Class Judgment was an Assumed Liability under Section 2.3(a)(vii), and an urgent obligation under Section 6.15(b).

It was only after this lawsuit was filed that New GM modified its "administration, management, and payment" procedures regarding the Class Judgment, advising customers that while Old GM and New GM had previously honored the Class Judgment, that policy was to be discontinued.   Ex. U.   The VTi transmission in class member Dan Richardson's Saturn was being repaired on the very day this lawsuit was filed.   Id.   Because of the vehicle's age and mileage, he only qualified for warranty coverage under the terms of the Class Judgment.   Prior to the lawsuit (but post-Closing), New GM's customer service representatives advised Mr. Richardson that he would be compensated according to the terms of the Class Judgment. When Mr. Richardson sought compensation under the Class Judgment, Mr. Richardson was advised by New GM's customer service representative on August 27, 2009 that New GM was no longer honoring the Class Judgment.   Ex. U.   Instead, New GM was reverting back to its pre-lawsuit policy, Special Policy 04020,[12] regarding the VTi transmissions.   Ex. U.   The very existence of those procedures concedes the battle.

---

[11] Note specifically the following excerpts of Ex. T: "cust to pay 25% of total," 7/17/09, T4; "customer to pay 25% of repair second owner under 100,000 miles," 7/20/09, T7; "customer to pay 70% . . . Saturn to pay remainder," 7/23/09, T11.

[12] Like the Class Judgment, Old GM's pre-lawsuit policy was an extension of the original warranty to 5 year/75,000 miles to cover defects in the VTi transmissions.   This policy is known as Special Policy 04020.   A copy of the Service Bulletin describing Special Policy 04020 is attached as Exhibit V.   The Service Bulletin includes a copy of the form letter mailed to customers in 2004 describing Special Policy 02040.   Id.

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 dec 2 Pg
Case 1:09-cv-09019-SAS Document 2 Filed 11/09/2009 Page 34 of 40
34 of 40

## IV. THE SALE ORDER DOES NOT RELIEVE NEW GM OF ITS ASSUMED LIABILITIES BECAUSE THE SALE ORDER DID NOT MODIFY THE PERTINENT TERMS OF THE ARMSPA.

New GM argues that this Court changed the status of the Class Judgment as an Assumed Liability. The sale order dated July 5, 2009, however, did not modify the ARMSPA. The ARMSPA "may not be amended, modified or supplemented except upon the execution and delivery of a written agreement executed by a duly authorized representative or officer of each of the Parties." *Ex. C, § 9.6, p. 98.* According to the ARMSPA, Parties "means Sellers and Purchaser together …." Id., section 1.1, p.14. Neither definition as drafted by Sellers or Purchaser identifies the bankruptcy court. Id. Despite two amendments to the ARMSPA including one dated July 5, 2009, the Parties did not modify section 2.3(a)(vii).

Although the Parties did not alter Section 2.3(a)(vii) of the ARMSPA in either amendment, New GM argues that the bankruptcy court rewrote that very section *sua sponte* in paragraph 56 of the sale order dated July 5, 2009. That argument not only suggests that an activist bankruptcy court unilaterally rewrote the ARMSPA, but also that the bankruptcy court independently decided to *reduce* the purchase price by at least $60 million—thereby plummeting the value of the remaining bankruptcy estate. After all, the Assumed Liabilities formed part of the purchase price. *Ex. C, §3.2(a)(iv), p.34.* A review of the sale order, however, reveals no such conduct by the bankruptcy court.

The sale order dated July 5, 2009 is entitled "Order (I) Authorizing Sale of Assets *Pursuant* to Amended and Restated Master Sale and Purchase Agreement …." In re Motors Liquidation Company, *Doc. 2968 (emphasis added).* The bankruptcy court then noted that capitalized terms in the order shall have the meanings ascribed in the ARMSPA. Id*, n.1.* Before issuing its order, the bankruptcy court made a number of findings and determinations. Id., *pp. 3-19.* On page 5 of the order, the bankruptcy court determined that "the consideration *provided*

*for in the* [ARMSPA] constitutes the highest or otherwise best offer for the Purchased Assets and provides fair and reasonable consideration for the Purchased Assets ...." Id., ¶ *F(c) (emphasis added)*. On page 6 of the order, the bankruptcy court found that approval of the ARMSPA "is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest." Id., ¶ *I*. Again, the bankruptcy court found that the "consideration provided by the Purchaser *pursuant to the* [ARMSPA] is (i) fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, and (iii) will provide a greater recovery to the Debtors' estates than would be provided by an other available alternative ...." Id., ¶ *K (emphasis added)*. New GM's argument that the bankruptcy court, after making specific findings about the value of the purchase price, subsequently gave it at least a $60 million discount by unilaterally modifying the ARMSPA is absurd.

The bankruptcy court found that the Parties negotiated, proposed, and entered into the ARMSPA "without collusion, in good faith, and from arm's-length bargaining positions." Id., ¶ *Q*. In addition, the bankruptcy court found that the Parties entered into the ARMSPA without any intent of "defrauding the Debtors' present or future creditors." Id., ¶ *M*. Yet, the argument by New GM would require a finding that the bankruptcy court defrauded those same creditors by reducing the purchase price through its purported narrowing of the Assumed Liabilities. Of course, the bankruptcy court noted that the value of the transaction was the product of arm's-length negotiations "between the Debtors, the Purchaser, the U.S. Treasury, and their respective representatives and advisors"—NOT the bankruptcy court. Id., ¶ *U*. "The purpose of a § 363(b) sale is to maximize the benefit to the debtor's entire estate." In re Trans World Airlines, Inc., 2001 WL 1820326, at *11 (D. Del. 2001).

Contrary to New GM's position, the bankruptcy court granted the motion "and entry into and performance **under**, **and in respect of**, the [ARMSPA] and the 363 Transaction is approved."   *Doc. 2968, para. 1 (emphasis added)*.   New GM focuses on language where the bankruptcy court stated that the "[ARMSPA], all transactions contemplated thereby, and all terms and conditions thereof (subject to any modifications contained herein) are approved." Id., ¶ *3*.   Yet, the bankruptcy court nowhere stated that paragraph 56 was a modification of the ARMSPA.   To the contrary, the bankruptcy court stated:

> The failure to specifically include any particular provisions of the [ARMSPA] in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the [ARMSPA] be authorized and approved in its entirety, except as modified herein.

Id., ¶ *67*.   The bankruptcy court then declared that the ARMSPA may be modified by the parties "provided that any such modification … does not have a material adverse effect on the Debtors' estates."   Id., ¶ *68*.   The bankruptcy court certainly would not do what it prohibited the parties from doing—materially reduce Old GM's estate.

Apart from the express language of paragraph 67, the order itself uses the term Assumed Liabilities at least 16 times.   *Doc. 2968, ¶¶ AA, BB, DD, 7, 9, 10, 18, 23, 26, 46, 47, 48, 52, 64*.   Nowhere did the bankruptcy court redefine that term under the ARMSPA.   Moreover, the bankruptcy court repeatedly exempts Assumed Liabilities from those obligations for which New GM was not responsible.   Id., ¶ *AA* (title vested free and clear "except for the Assumed Liabilities")*, ¶ DD* (not liable for transferee liability "other than, in each case, the Assumed Liabilities"), ¶ *7* (assets free and clear "[e]xcept for the Assumed Liabilities"), ¶ *9* (no claims assertable against Purchaser "other than Assumed Liabilities"), ¶ *10* (transfer valid and free and clear "other than the Assumed Liabilities"), ¶ *46* (no liability "[e]xcept for the Assumed Liabilities expressly set forth in the MPA", *47* (enjoined from continuing claims "other than Assumed

Liabilities"), ¶ *48* ("Except for the Assumed Liabilities" Purchaser shall have no liability), ¶ *52*

("except for the Assumed Liabilities" all claims have been released), ¶ *64* (Debtor to comply with

tax obligations "except to the extent that such obligations are Assumed Liabilities").

In addition to all of the above, paragraph 56 of the order does not even "conflict" with or

"modify" the ARMSPA.   The first sentence of paragraph 56 of the sale order, relied upon by New

GM, is *inclusive* rather than exclusive:

> The Purchaser *is assuming* the obligations of the Sellers pursuant to and
> subject to conditions and limitations contained in their express written
> warranties, which were delivered in connection with the sale of vehicles and
> vehicle components prior to the Closing of the 363 Transaction and
> specifically identified as a "warranty."

Id.   The phrase declares that New GM will be responsible for a certain obligation and then

describes that obligation – without purporting to exclude any other obligations.   The inclusive

nature of the first sentence of paragraph 56 cannot be denied when contrasted against the very next

sentence: "[t]he Purchaser *is not assuming* responsibility [for certain other specified liabilities]."

When the sale order sought to describe liabilities as assumed or not assumed, it did so expressly

and not by implication.

Indeed, New GM's own inability to articulate the meaning it ascribes to paragraph 56

without *materially* changing the language shows that their position is without support in the

language of the sale order.   In its pleadings, New GM summarizes its argument with what can

loosely be called paraphrase and a creatively edited quote:

> Under paragraph 56 of the Sale Approval Order, GM assumed *only*
> assumed [sic] express warranty liability "subject to the conditions and
> limitations contained in" the express warranties.

*New GM's Brief In Support Of Motion Under FRCP 12(b)(6) To Dismiss, Summary of Argument,*

¶ *2, Doc. 7* (emphasis added).   New GM's paraphrase omits the inclusive phrase "is assuming"

and replaces it with the limiting phrase "assumed only." The limiting language that is the crux of

New GM's argument is completely absent from the Court's order.

When paragraph 56 is read with the entirety of the sale order and the ARMSPA, the

purpose and meaning of paragraph 56 is plain but more limited than New GM would have it.

Paragraph 56 does not attempt, in three sentences, to categorize all Liabilities as assumed or

retained.[13] Indeed, the first sentence addresses only "obligations" while the second uses the

defined term Liabilities. Entirely consistent with Section 2.3(a)(vii) of the ARMSPA, the first

sentence merely describes one type of obligation, among many, that New GM "is assuming," and

the second sentence describes another type obligation that New GM "is not assuming." Further,

the description of the particular warranty obligations as assumed in paragraph 56 is significant

because it meant that Old GM's bankruptcy estate was no longer responsible for normally

occurring warranty obligations, previously described by Old GM as totaling $273 million per

month in 2008. *Ex. M, p. 15, ¶ 39.*

### Conclusion

For all of the foregoing reasons, as to Count I of the plaintiffs' Complaint for Declaratory

Judgment addressing express assumption of liability, there is no genuine issue of material fact, and

as matter of law, plaintiffs are entitled to declaratory judgment in their favor.

WHEREFORE, plaintiffs request that the Court grant their Motion for Summary Judgment

as to Count I, only, and order the following relief:

A.    A declaration that the Agreement and Final Judgment are "Assumed Liabilities"

       under the ARMSPA; and

---

[13] This is in stark contrast to the ARMSPA which defines Retained Liabilities as anything "other than the
Assumed Liabilities" and "in all cases with the exception of the Assumed Liabilities …." *Ex. C, § 2.3(b),
p.30.*

B. Such other and further relief as the Court deems appropriate under the
circumstances

Respectfully submitted,

By: _____

  Robert W. Schmieder II
  Mark L. Brown
  **LakinChapman LLC**
  300 Evans Avenue, P.O. Box 229
  Wood River, Illinois 62095-0229
  Phone : (618) 254-1127
  Fax :    (618) 254-0193

  **LEADER & BERKON LLP**
  630 Third Avenue
  New York, New York 10017
  Phone (212) 486-2400
  Fax (212) 486-3099

    **Attorneys for Plaintiffs**

09-50026-mg Doc 4409-2 Filed 11/09/09 Entered 11/09/09 15:25:16 doc 2 Pg
40 of 40
Case 1:09-cv-09019-SAS Document 2 Filed 11/09/2009 Page 40 of 40

## CERTIFICATE OF SERVICE

I, Michael J. Tiffany, hereby certify that on the 4th of November, 2009, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO NEW GM'S MOTION UNDER FED. R. CIV. 12(b)(6)TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** was electronically filed and served on the following party via U.S. Mail:

Lisa A. Schmidt
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Gregory R. Oxford
Isaacs, Clouse, Crose & Oxford LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, CA 90503

*Attorneys for Defendant*

By: _____
Michael J. Tiffany (MT 9367)