GREENBERG TRAURIG, LLP                           Hearing Date: November 20, 2009
Counsel for Aurelius Capital Management, LP, *et al*.   Hearing Time: 9:45 am
200 Park Avenue
New York, New York 10166
(212) 801-9200 (Tel)
(212) 801-6400 (Fax)
Bruce R. Zirinsky, Esq.
Nancy A. Mitchell, Esq.
Allen G. Kadish, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al*.,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>Jointly Administered |

**MOTION OF CERTAIN NOTEHOLDERS FOR AN ORDER
MODIFYING THE BAR DATE ORDER TO PROVIDE THAT NO PROOFS OF CLAIM
NEED BE FILED RELATED TO CERTAIN GUARANTEE CLAIMS AGAINST
MOTORS LIQUIDATION COMPANY OR, IN THE ALTERNATIVE, DEEMING THIS
MOTION A PROOF OF CLAIM AS TO SUCH CLAIMS, AND FOR RELATED RELIEF**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Aurelius Capital Management, LP; Drawbridge Special Opportunities Advisors, LLC; Fortress Credit Opportunities Advisors LLC; Appaloosa Management L.P.; Elliot Associates, LP; Perry Partners, L.P.; and Perry Partners International, Inc. (collectively, the "**Moving Parties**") on behalf of all of the holders (the "**Noteholders**") of the £350,000,000 8.375% Guaranteed Notes due December 7, 2015 (the "**2015 Notes**") and the £250,000,000 8.875% Guaranteed Notes due July 10, 2023 (the "**2023 Notes**" and, collectively with the 2015 Notes, the "**Notes**") issued by General Motors Nova Scotia Finance Company ("**Finance**") and fully and unconditionally guaranteed by Motors Liquidation Company f/k/a General Motors Corporation (the "**Debtor**"), by and through their undersigned counsel, as and for their Motion for an Order modifying the bar date order to provide that no proofs of claim need be filed with

NY 239,912,409 v1

regard to the guarantee claims against the Debtor related to the Notes or, in the alternative, deeming this Motion a proof of claim with regard to such claims, and for certain related relief, respectfully represent:

## INTRODUCTION

1. Each series of Notes was issued by Finance and unconditionally guaranteed by the Debtor. The Noteholders have a valid Guarantee Claim (as defined below) against the Debtor which was acknowledged by the Debtor in a Lock-Up Agreement (as defined below) pursuant to which the Debtor agreed that it would support the Guarantee Claim in this Chapter 11 proceeding.

2. The amount of the Guarantee Claim related to the 2015 Notes (the "**2015 Guarantee Claim**") is $615,903,887.20 (comprised of $575,505,000 in principal amount with the balance representing accrued and unpaid interest)[1]. The amount of the Guarantee Claim related to the 2023 Notes (the "**2023 Guarantee Claim**" and, together with the 2015 Guarantee Claim, the "**Guarantee Claim**") is $456,653,644.52 (comprised of $411,075,000 in principal amount with the balance representing accrued and unpaid interest)[2]. In addition, the Guarantee Claim for each series of Notes may include certain unliquidated amounts for fees, interest (including post-petition interest), charges and other amounts owing under the Fiscal and Paying Agency Agreement.

3. Consistent with the Debtor's representations in the Lock-Up Agreement, the Guarantee Claim should have been scheduled by the Debtor as a non-contingent, non-

---

[1] The interest on the 2015 Guarantee Claim is calculated through October 8, 2009 which is the date Finance commenced its insolvency proceeding in Canada. The 2015 Notes are denominated in British pounds. However, for purposes of calculating the amount of the 2015 Guarantee Claim, the amount has been converted to US dollars using the exchange rate of 1.6443 which was the exchange rate on June 1, 2009.

[2] The interest on the 2023 Guarantee Claim is calculated through October 8, 2009 which is the date Finance commenced its insolvency proceeding in Canada. The 2023 Notes are denominated in British pounds. However, for purposes of calculating the amount of the 2023 Guarantee Claim, the amount has been converted to US dollars using the exchange rate of 1.6443 which was the exchange rate on June 1, 2009.

disputed claim against the Debtor.  However, the Debtor's schedules instead show the Guarantee Claim as "contingent" and "unliquidated."

4.  Because of the structure of the Notes, there is no indenture trustee or similar fiduciary to file the proofs of claim with respect to the Guarantee Claim.  As a result, without the relief requested in this Motion, the Noteholders will be required to file individual claims which is inefficient, leaves open the possibility of inconsistent and duplicate claims being filed by various Noteholders and makes it likely that certain Noteholders will be deprived of their claims.  Moreover, the uncertainty around which holders of Notes have actually filed proofs of claim and which have not, may negatively impact the trading of the Notes.

**STATUS OF THE CASE, JURISDICTION AND STATUTORY PREDICATES**

5.  On June 1, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in this Court.  Although a number of the Debtor's subsidiaries filed petitions as well, the Debtor's Canadian operations were excluded from such filings.

6.  The Debtor has continued in possession of its properties and has continued to operate and maintain its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion presents a core matter pursuant to 28 U.S.C. § 157(b)(2)(B).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

8.  The statutory predicates for the relief sought herein are Section 501 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 3003.

**FACTUAL BACKGROUND**

*The Notes*

9. The Notes were issued in two series by Finance pursuant to that certain Fiscal and Paying Agency Agreement, dated as of July 10, 2003, among Finance, the Debtor, Deutsche Bank Luxembourg S.A., as fiscal agent, and Banque Général du Luxembourg S.A., as paying agent (the "**Fiscal and Paying Agency Agreement**"). Pursuant to Section 5 of Schedule 1 to the Fiscal and Paying Agency Agreement, the Debtor fully and unconditionally guaranteed each series of the Notes (the "**Guarantee**"). The Fiscal and Paying Agency Agreement is annexed as Exhibit "A" hereto.[3]

10. The Noteholders of 2015 Notes are entitled to a 2015 Guarantee Claim in the amount of $615,903,887.20. The Noteholders of 2023 Notes are entitled to a 2023 Guarantee Claim in the amount of $456,653,644.52. In addition, the Guarantee Claim for each series of Notes may include certain unliquidated amounts for fees, interest (including post-petition interest), charges and other amounts owing under the Fiscal and Paying Agency Agreement.

11. The Fiscal and Paying Agency Agreement does not provide for an indenture trustee or similar fiduciary to act for the Noteholders. Because of the structure of the Fiscal Paying and Agency Agreement, there is not a single fiduciary that is in a position to file the proofs of claim necessary to assert the Guarantee Claim.

*The Lock-Up Agreement*

---

[3] The Notes also benefit from a claim that Finance has against the Debtor which arises because Finance is an unlimited liability company organized under the laws of Nova Scotia (a "**ULC**") and a wholly-owned subsidiary of the Debtor. Since Finance is a ULC, the Debtor, its sole member, has obligations under Section 135 of the *Companies Act (Nova Scotia)* to make contributions to Finance in amounts sufficient to satisfy all debts and liabilities of Finance including, without limitation, claims against Finance related to the Notes (the "**Deficiency Claim**"). This Motion does not request any relief with regard to the Deficiency Claim because Finance filed for insolvency proceedings under the Bankruptcy and Insolvency Act (Canada) on October 8, 2009. The Trustee in that proceeding, Green Hunt Wedlake Inc., is in a position to file the proofs of claim necessary to protect the Deficiency Claim.

12. The Debtor and certain of its subsidiaries including Finance entered into a Lock-Up Agreement, dated as of June 1, 2009 (the "<u>Lock-Up Agreement</u>"), with certain of the Noteholders. The Lock-Up Agreement is annexed as Exhibit "B" hereto.

13. The Debtor's wholly-owned subsidiary, Finance, solicited votes from the Noteholders after the Debtor's petition date in connection with the Lock-Up Agreement. That solicitation was pursuant to certain solicitation materials (the "**Solicitation Materials**") in which the Guarantee Claim was again acknowledged. The Solicitation Materials are annexed as Exhibit "C" hereto.

14. Pursuant to the Lock-Up Agreement, the Debtor agreed, among other things, that the Noteholders would be entitled to a valid and enforceable, allowed, general unsecured claim in the bankruptcy proceedings of the Debtor for the Guarantee Claim. *See* Sections 6(b)(ii) of the Lock-Up Agreement.

15. In addition, pursuant to the Lock-Up Agreement, the Debtor agreed and covenanted that "it will not take any action or assert any position inconsistent with this Section 6 and, if called upon by the [Note]Holders, will confirm its agreement with the positions confirmed herein in writing or at a Court hearing as reasonably requested by the [Note]Holders." *See* Section 6(b)(vii) of the Lock-Up Agreement.

16. The Debtor received substantial benefits from the Lock-Up Agreement. Most importantly, as a direct result of the entry into the Lock-Up Agreement, the Debtor was able to avoid a filing of its Canadian operations in an insolvency proceeding, which enabled the subsequent sale of the Canadian operations.

*The Bar Date*

17. This Court issued an Order dated September 16, 2009 (the "**Bar Date Order**") establishing November 30, 2009 (the "**Bar Date**") as the last date to file proofs of claim in the Debtor's case. A true copy of the Bar Date Order is annexed as Exhibit "D" hereto.

18. The Bar Date Order provides that each person or entity (including, without limitation, each individual, partnership, joint venture, limited liability company, corporation, estate, trust or governmental unit) asserting a claim against the Debtor shall be required to file a separate proof of claim against the Debtor so as to be actually received on or before the Bar Date by the Court-approved claims agent.

19. The Bar Date Order provides that certain persons or entities are **not required** to file proofs of claims, including "any person or entity whose Claim is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor…."

20. The Fiscal and Paying Agency Agreement is listed as a Debt Instrument in the Bar Date Order and the Guarantee Claim constitutes a Debt Claim under the Bar Date Order. However, there is no indenture trustee or fiduciary to file the proofs of claim related to the Guarantee Claim as is required by the Bar Date Order.

21. Pursuant to the Bar Date Order and Bankruptcy Rule 3003(c)(2), any person or entity that is required to file a timely proof of claim and that fails to do so on or before the Bar Date associated with such claim: (i) shall be forever barred, estopped and enjoined from asserting such claim against the Debtor or thereafter filing a proof of claim with respect thereto in the

Debtor's chapter 11 case; (ii) shall not, with respect to such claim, be treated as a creditor of the Debtor for the purpose of voting upon any plan of reorganization in these proceedings; and (iii) shall not receive or be entitled to receive any payment or distribution of property from the Debtor or its successors or assigns with respect to such claim.

*The Issues*

22. Because the Debtor did not correctly schedule the Guarantee Claim and the Fiscal and Paying Agency Agreement does not provide for an indenture trustee or similar fiduciary for the Noteholders, the Moving Parties are concerned that the Guarantee Claim may not be fully preserved.

23. In order to address this issue, certain of the Moving Parties contacted the Debtor asking that the Debtor stipulate to the Guarantee Claim in a manner consistent with the Lock-Up Agreement. The Debtor has to date refused to enter into such stipulation.

24. Certain of the Moving Parties also contacted the Fiscal Agent under the Fiscal Paying and Agency Agreement to see if the Fiscal Agent - although not a fiduciary - would agree to file the proof of claim with respect to the Guarantee Claim. The Fiscal Agent indicated that it is unwilling to file one proof of claim in respect of the Guarantee Claim. A copy of that notification, dated October 13, 2009, is annexed as Exhibit "E" hereto.

25. The individual Noteholders can file proofs of claim with respect to their respective portions of the Guarantee Claim. However, the Notes are widely traded and, as a result, it is inevitable that certain holders of the Notes may fail to file a proof of claim. Moreover, the proofs of claim that are filed are likely to be inconsistent and duplicative which creates inefficiency and confusion for the proceeding. The filing of individual proofs of claim

may also create trading issues for the Notes because of the difficulties involved in tracking which Notes are the subject of timely filed claims and which are not.

## RELIEF REQUESTED

26. The Moving Parties seek an Order modifying the Bar Date Order to provide that no proof of claim need be filed by any Noteholders pursuant to the Bar Date Order in order to assert and recover on the Guarantee Claim related to each of the two series of Notes.

27. In the alternative, the Moving Parties seek an Order deeming this Motion as a proof of claim with regard to the Guarantee Claim of all Noteholders related to each of the two series of Notes.

## LEGAL AUTHORITY

28. To some extent, the relief sought hereunder is as much practical as legal. Based on the Debtor's acknowledgements in the Lock-Up Agreement and the subsequent Solicitation Materials, there is clearly no dispute with regard to the existence of the Guarantee Claim. In fact, the need for this Motion could have been easily avoided had the Debtor simply scheduled the Guarantee Claim in a manner consistent with the Lock-Up Agreement.

29. However, because of the way the Guarantee Claim was scheduled and the structure of the Fiscal and Paying Agency Agreement, there is a significant risk that certain Noteholders will be deprived of their Guarantee Claim absent the relief requested in this Motion. This risk is exacerbated because many Noteholders will not be sensitive to the need to file their own proofs of claim because they were relying on the Debtor's representations in the Lock-Up Agreement.

30. The requirement that separate proofs of claim be filed for the Guarantee Claim also means that the Noteholders will have to incur significant costs because the Notes are widely traded. Moreover, Noteholders may file inconsistent and duplicative claims, which

creates inefficiency and confusion for the proceeding. Additionally, there may be trading issues for the Notes because of the difficulties involved in tracking which Notes are the subject of timely-filed claims and which are not.

31. The right answer for the Debtor and the Noteholders is simply to recognize the Guarantee Claim without the requirement for a proof of claim since this merely gives effect to the Debtor's obligations under the Lock-Up Agreement and does not prejudice anyone's rights to object to the Guarantee Claim during the claims process.

32. Moreover, in respect of the Noteholders' alternative request, there is ample authority for the Court to deem this Motion a proof of claim. A motion may qualify as a proof of claim under the equitable informal proof of claim line of cases. To qualify as an informal proof of claim, there must be some writing filed with the court prior to the bar date which is an assertion by the creditor of its claim against the debtor's estate. *In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22, 26-27 (Bankr. S.D.N.Y. 1991); *In re W.T. Grant Co.,* 53 B.R. 417, 421 (Bankr. S.D.N.Y. 1985). The writing or pleading must make the court aware of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim. *W.T. Grant*, 53 B.R. at 421 (*citing Biscayne 21 Condominium Assoc., Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.*), 767 F.2d 814, 819 (11th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986)).

33. Clearly, this Motion and the Lock-Up Agreement annexed hereto meet the tests set forth in these cases. This Motion sets forth the existence, nature and amount of the Guarantee Claim, and exhibits an intent to hold the Debtor liable therefor; this is a public filing with the Court. All facts and circumstances of the obligations and liabilities under the Guarantee

Claim are set forth herein and in the exhibits annexed hereto. Filing additional documents would provide no more information to the Court or the Debtor, or the other creditors of the Debtor for that matter, than is set forth herein and in the exhibits annexed hereto.

## CONCLUSION

WHEREFORE, the Noteholders hereby seek an Order of this Court modifying the bar date order to provide that no proof of claim need be filed with respect to the Guarantee Claim or, in the alternative, deeming this Motion a proof of claim; and granting such other and further relief as is just and proper.

Dated:  New York, New York  
        November 9, 2009

GREENBERG TAURIG, LLP

By: /s/ Allen G. Kadish  
    Bruce R. Zirinsky  
    Nancy A. Mitchell  
    Allen G. Kadish  
200 Park Avenue  
New York, New York 10166  
(212) 801-9200 (Tel)  
(212) 801-6400 (Fax)

Counsel for Aurelius Capital Management, LP; Drawbridge Special Opportunities Advisors, LLC; Fortress Credit Opportunities Advisors LLC; Appaloosa Management L.P.; Elliot Associates, LP; Perry Partners, L.P.; and Perry Partners International, Inc.

## Index to Exhibits

Exhibit A - Fiscal Paying and Agency Agreement

Exhibit B - Lock-Up Agreement

Exhibit C - Solicitation Materials

Exhibit D - Bar Date Order

Exhibit E - Notification from Fiscal Agent