1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


MOTORS LIQUIDATION COMPANY, ET AL.,

      f/k/a General Motors Corp, et al.


     Debtors.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        November 5, 2009

        9:50 AM


B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1    HEARING re Motion for order approving assumption of agreement

2    for engine Maintenance services for Gulfstream 350 aircraft.

3

4    HEARING re Motion for entry of order authorizing rejection of

5    agreement for engine maintenance services for Gulfstream V

6    aircraft.

7

8    HEARING re Motion of the Bank of New York Trust Company, N.A.,

9    as resigning indenture trustee, for entry of an order

10   appointing Manufacturers and Traders Trust Company as successor

11   indenture trustee

12

13   HEARING re Motion for relief from stay filed by Walter J.

14   Lawrence.

15

16   HEARING re Motion for relief from stay pursuant to 11 USC

17   Section 362 re: Bonnie J. Reynolds and Garland Reynolds, Jr.

18

19   HEARING on Limited contract objections.

20

21   HEARING re Debtors' eighth omnibus motion pursuant to 11 USC

22   Section 365 to reject certain executory contracts and unexpired

23   leases of nonresidential real property.

24

25   Transcribed by:  Penina Wolicki

3

```
 1

 2     A P P E A R A N C E S :

 3     WEIL, GOTSHAL & MANGES LLP

 4          Attorneys for Debtors

 5          1300 Eye Street, N.W.

 6          Suite 900

 7          Washington, DC 20005

 8

 9     BY:   EVAN LEDERMAN, ESQ.

10           BRIANNA N. BENFIELD, ESQ.

11

12     WEIL, GOTSHAL & MANGES LLP

13          Attorneys for Debtors

14          767 Fifth Avenue

15          New York, NY 10153

16

17     BY:   STEPHEN KAROTKIN, ESQ.

18

19     HONIGMAN MILLER SCHWARTZ & COHN

20          Attorneys for Debtors

21          2290 First National Building

22          660 Woodward Avenue

23          Detroit, MI 48226

24

25     BY:   JUDY B. CALTON, ESQ. (TELEPHONICALLY)
```

4

1

2    KRAMER LEVIN NAFTALIS & FRANKEL LLP

3         Attorneys for Official Committee of Unsecured Creditors

4         1177 Avenue of the Americas

5         New York, NY 10036

6

7    BY:   GREGORY GENNADY PLOTKO, ESQ.

8

9    U.S. DEPARTMENT OF JUSTICE

10        U.S. Attorney's Office

11        86 Chambers Street

12        New York, NY 10007

13

14   BY:   DAVID S. JONES, AUSA

15

16

17   TEITELBAUM & BASKIN, LLP

18        Attorneys for Johann Hay GmbH & Co. KG

19        42 West 38th Street

20        Suite 701

21        New York, NY 10018

22

23   BY:   KENNETH M. LEWIS, ESQ.

24

25

5

1

2     CARSON FISCHER PLC

3          Attorneys for Karmann

4          4111 Andover Road West

5          Second Floor

6          Bloomfield Hills, MI 48302

7

8     BY:   PATRICK J. KUKLA, ESQ. (TELEPHONICALLY)

9

10

11    WALTER J. LAWRENCE

12          Appearing Pro Se (TELEPHONICALLY)

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1              P R O C E E D I N G S

2        MR. LEDERMAN:  Good morning, Your Honor.  Evan

3    Lederman, Weil, Gotshal & Manges for the debtors.

4        THE COURT:  Good morning, Mr. Lederman.

5        MR. LEDERMAN:  Good morning, Your Honor.  If I may

6    approach, I'd like to hand Your Honor a chart that outlines the

7    status of our cure objection resolutions and also an agenda for

8    this matter, so that Your Honor, to the extent you don't have

9    one in front of you, can follow along.

10        THE COURT:  Sure.  I had an agenda, and since I

11    misplaced it, I'd appreciate that, Mr. Lederman.  Thank you.

12    Okay.

13        MR. LEDERMAN:  Your Honor, if it pleases the Court,

14    I'm going to go ahead and deal with the first matter which is

15    not a contested matter, but rather we're just going to provide

16    you with a brief status update on our progress resolving

17    outstanding cure objections.  After that I propose to run

18    through quickly the uncontested matters and those matters where

19    we have agreed to stipulations with the other parties.

20    Following that, Mr. Karotkin will handle the contested matter

21    regarding the lifting of the automatic stay.

22        THE COURT:  Sure.  Before you begin, Mr. Karotkin,

23    I'll have a couple of comments to help focus the discussion.

24    But why don't you proceed for now, Mr. Lederman.

25        MR. LEDERMAN:  Thank you, Your Honor.  Again, the

7

1     first matter on the agenda regards our cure objection

2     resolution process.  And we appeared before Your Honor before

3     and updated you on our progress.  As Your Honor is aware, cure

4     objections filed prior to June 30th numbered well over 600.

5     Since that time the debtors have worked very hard and

6     expeditiously with the objectors to try and resolve those on a

7     consensual basis.

8          We're happy to report at this time we are down to

9     thirteen remaining cure objections before the Court.  Of those

10    thirteen, ten we have an agreement in principle.  We're just

11    waiting on final documentation.  And three others, we're still

12    in the process of trying to reach a consensual resolution, and

13    we're hopeful that we'll be able to do so.  We propose, at this

14    point, adjourning those objections that are still on file with

15    the Court to a future hearing date while we try and finish up

16    our resolution of these objections.

17         THE COURT:  So without you making any promises, Mr.

18    Lederman, I can be reasonably confident that we're down to

19    about three?

20         MR. LEDERMAN:  That's correct, Your Honor.  With

21    respect to the ten where we have an agreement in hand, some of

22    those parties have been a bit unresponsive in getting us the

23    final papers and also officially filing a notice of withdrawal

24    to officially remove their objections from the docket.  If we

25    cannot get in touch with those parties and get those papers, we

8

1    may file in the coming weeks, a proposed order, on notice, of

2    course --

3           THE COURT:  Of course, they want to get money from

4    you, right, on these cure objections?

5           MR. LEDERMAN:  They've already -- the cure amount has

6    already been paid.  So we're literally just waiting for the

7    final documentation and --

8           THE COURT:  Oh, just to paper the amount that was paid

9    is the proper amount?

10          MR. LEDERMAN:  Exactly, exactly.  And then have them

11   officially withdraw their objection to clear the docket.  If we

12   can't get those agreements in hand, we'll file a proposed order

13   on notice to all those parties asking Your Honor to overrule

14   the remaining objections so that we can have a clear docket and

15   a written order resolving those objections.

16          THE COURT:  Okay.

17          MR. LEDERMAN:  Thank you, Your Honor.

18          MR. LEWIS:  Your Honor, may I be heard?

19          THE COURT:  Sure.

20          MR. LEWIS:  Good morning, Your Honor.  Kenneth Lewis,

21   Teitelbaum & Baskin.  We're attorneys for Johann Hay GmbH & Co.

22   KG, which is one of the cure amount objectors.  I guess we're

23   one of the thirteen that is remaining.  The reason I'm here --

24          THE COURT:  One of the thirteen but not one of the

25   last three?

9

1        MR. LEWIS:  I believe that --

2        MR. LEDERMAN:  Not one of the last three.

3        MR. LEWIS:  -- not one of the last three.  Okay.  The

4    reason I'm here this morning, Your Honor, although the parties,

5    I think, have agreed all along with respect to the cure

6    amounts, with respect to, I believe, it's seven agreements that

7    have actually been assumed, the problem that we ran into was

8    that the debtor was seeking to effectuate a setoff or an offset

9    of, I believe, approximately 254,000, either dollars or euros,

10    with respect to an agreement that was not actually being

11    assumed.  It was an agreement that was already expired.

12        Putting aside whether or not they can even do that, my

13    client had provided documentation to the debtor a while back

14    with respect to that offset, if you will, in essence proving up

15    our claim, and in essence demonstrating to the debtor that, in

16    fact, they owe us money as opposed to my client owing the

17    debtor money.  We have had numerous discussions and

18    communications with Mr. Lederman as well as Mr. Adams.  We

19    believe that we were very close to getting the offset removed

20    and so, in essence, we could get paid, which is really the

21    bottom line here.

22        We thought in mid-October it was going to get

23    resolved.  It still wasn't.  And in fact, as of last night it

24    still wasn't resolved, and that negative number was still

25    appearing on the web page.  I'm pleased to report that on my

10

1   way in this morning, I received an e-mail from Mr. Adams

2   indicating that his client has now finally agreed to remove

3   that offset.  But again, I'm here because it's still not done.

4   I just want to keep this on a short leash, because obviously,

5   until it's done, the client doesn't get paid.

6           THE COURT:  So you're asking me to do just what for

7   today?

8           MR. LEWIS:  I'm not asking for any relief, I just --

9   since it's a status report as to where we are, I just wanted to

10  make sure that it does get kept on a short leash.  This way, if

11  in fact, in thirty days from now it's still not done and we

12  still haven't been paid there will be a hearing because

13  we're --

14          THE COURT:  Well, continue your dialogue with Mr.

15  Lederman.  If you wish, you and Mr. Lederman can go across the

16  hall with Ms. Blum, my courtroom deputy, to get another date as

17  a holding date at which you can either report to me or we can

18  figure out what we should do next, if you guys agree to

19  disagree.

20          MR. LEWIS:  That would be great.  And as I said, I'm

21  confident that it will finally be resolved, but we --

22          THE COURT:  Well, nothing would please me more if you

23  can resolve it.  And if you can't resolve it, we'll add it to

24  the pile of the things that I'll do.

25          MR. LEWIS:  Thank you very much, Your Honor.

11

1          THE COURT:  Okay.

2          MR. LEDERMAN:  The debtors will certainly continue to

3    work with Mr. Lewis to resolve his objection.  And as he

4    reported, we think we are in the final stages.  And of course,

5    we'll go after the hearing to schedule a holding date to the

6    extent we can't finalize documentation.

7          THE COURT:  Okay.

8          MR. LEDERMAN:  Moving along, Your Honor.  The next

9    item on the agenda as far as uncontested matters are two

10   motions:  one regarding the assumption of a Gulfstream V

11   aircraft, and the other regarding the rejection of a G-350

12   aircraft.  These both relate to agreements regarding the

13   turnback of engine maintenance services regarding aircraft that

14   were rejected at the beginning of the case.  We're happy to

15   report that we have an agreement and a stipulated order that

16   we've entered into with the counterparty, Jet Service

17   Maintenance Corporation, which we will hand up and present to

18   Your Honor.  So these have both been consensually resolved on a

19   joint order.

20         THE COURT:  Time out, Mr. Lederman.

21         MR. LEDERMAN:  Sure.

22         THE COURT:  And I have to confess to you that I didn't

23   focus on stuff that was unopposed.  I thought that the company

24   got rid of all of its corporate aircraft.  And I would have

25   thought that to the extent that any corporate aircraft were

12

1    needed, they'd be needed by New GM and not by Motors

2    Liquidation.

3        MR. LEDERMAN:  That's exactly correct, Your Honor.

4    This has to do with contracts for the maintenance of those

5    aircrafts.  So the one that is being assumed and assigned over

6    to New GM --

7        THE COURT:  Oh, it's assumed and assigned?

8        MR. LEDERMAN:  -- exactly.  There were two separate

9    agreements for maintenance services, one of which is being

10   assumed and assigned over to New General Motors, the second of

11   which will remain and is being rejected by the debtors for

12   exactly that reason.  We have no use for the contract anymore,

13   because we no longer have any corporate aircraft.  And so --

14       THE COURT:  It's none of my business, but why does New

15   GM require maintenance services for private aircraft?

16       MR. LEDERMAN:  I believe that they may still have some

17   aircraft, or there was offsets that were entered into based

18   upon the timing of when the jets were returned.  Because this

19   was for service and maintenance relating to those jets, and I

20   believe there may be some positive treatment and money that is

21   going to be paid over to New GM under that contract.

22       THE COURT:  But the important thing from my

23   perspective with Motors Liquidation being on my watch is that's

24   what's been assumed and assigned, it's neutral to this estate?

25       MR. LEDERMAN:  It is neutral to this estate.  And in

13

1    fact, Your Honor, with respect to the rejection, part of the

2    agreement is that there will be no rejection damages claims

3    brought against the estate.  And that's part of the order.

4            THE COURT:  Sure.  Good.  Okay.

5            MR. LEDERMAN:  So it's a clean rejection.

6            THE COURT:  That's fine.  So you can just continue.

7            MR. LEDERMAN:  Thank you, Your Honor.

8            THE COURT:  Pause, please, Mr. Lederman.

9            MR. LEDERMAN:  Sure.

10           MR. PLOTKO:  This is Gregory Plotko on behalf of the

11   official committee of unsecured creditors.

12           THE COURT:  Forgive me, your name again?

13           MR. PLOTKO:  Plotko, Gregory.

14           THE COURT:  Okay.  Your last name is Paco?

15           MR. PLOTKO:  Plotko, P-L-O --

16           THE COURT:  Oh, P-L-O.  Okay.

17           MR. PLOTKO:  -- T-K-O.

18           THE COURT:  Okay.

19           MR. PLOTKO:  Just for the record, we've reviewed both

20   the rejection motions and the assumption motion as well, and we

21   were comfortable with the stipulations.

22           THE COURT:  Fair enough.  I appreciate that, Mr.

23   Plotko, thank you.

24           MR. LEDERMAN:  And I should have added, we worked with

25   the creditors' committee on this resolution, and we appreciate

14

1    their assistance and help.

2         Moving on, Your Honor, the next item on the

3    uncontested matters is the motion of Bonnie Reynolds and

4    Garland Reynolds for relief from the automatic stay.  We have

5    also reached a stipulated order with those parties.  If Your

6    Honor would like us to run through the stipulated order, I have

7    my colleague Ms. Benfield here who negotiated such order and

8    she can present it to you.  If not, we can hand it up after

9    court.

10         THE COURT:  Ms. Benfield, briefly, it would be very

11   helpful.

12         MS. BENFIELD:  Thank you, Your Honor.  Brianna

13   Benfield from Weil, Gotshal & Manges on behalf of the debtors.

14   The Reynolds filed a motion to lift the automatic stay to

15   proceed with an appeal pending before the Eleventh Circuit.

16   General Motors Corporation MLC commenced the appeal to appeal a

17   judgment entered against them in a products liability action

18   for 3.5 million dollars.  In commencing the appeal they had to

19   post a supersedeas bond of 4.5 million that was backed by

20   Travelers' Casualty and Surety Company.

21         The debtors have agreed to stipulate to lift the stay

22   because if they prevail in the appeal and the judgment is

23   overturned, there is no loss to the estate and the estate may

24   regain the 4.5 million dollars in collateral backing the bond.

25   If the debtors do not prevail in the appeal, the bond is

15

1    already fully collateralized, and there will be no loss to the

2    estate.

3            THE COURT:  And the reason why relief from the stay

4    makes sense under the facts of your case is because you guys

5    had to post a supersedeas bond tying up collateral of this

6    estate?

7            MS. BENFIELD:  That's correct.

8            THE COURT:  I understand.  That's fine.  And that's a

9    sufficient explanation for me.  I appreciate that.

10           MS. BENFIELD:  Thank you.

11           THE COURT:  Thank you.

12           MR. LEDERMAN:  Moving along, Your Honor, the sixth

13   item on the agenda under uncontested matters is the debtors'

14   eighth omnibus motion to reject certain executory contracts and

15   unexpired leases of nonresidential real property.  Your Honor

16   there were three objections filed.  At the current time we have

17   adjourned those objections and are working with those parties

18   to resolve them.  We believe we'll be able to in the next

19   coming days.  If we cannot, we will set a mutually agreed upon

20   time to have a hearing on those objections at a future date.

21           Regarding the rejections that remain, they relate to

22   mobile equipment leases, certain office park space that was

23   leased by the debtors that is no longer needed in the wind-down

24   of their operations, and also a warehouse lease that is also no

25   longer needed in the continuation of the debtors' business and

16

1    their wind-down.

2         THE COURT:  Fair enough.

3         MR. LEDERMAN:  We would ask for Your Honor to approve

4    that order with respect to the nonobjecting counterparties'

5    executory contracts --

6         THE COURT:  Sure.

7         MR. LEDERMAN:  -- and nonresidential real property

8    leases.

9         THE COURT:  You got it.

10        MR. LEDERMAN:  Thank you, Your Honor.  There is one

11   other item that I'd like to bring up to the Court that is not

12   on the agenda.  It has to do with Karmann, in which we had

13   filed an assumption and rejection motion.  It was heard and

14   argued, it was on a contested basis before Your Honor on August

15   3rd.  You may remember --

16        THE COURT:  I remember that, and I think I dictated a

17   decision on that.

18        MR. LEDERMAN:  That's right, Your Honor.  You ordered

19   the rejection, but as far as the assumption, Your Honor was not

20   sure at that point, without hearing more evidentiary evidence

21   and a hearing, if the contract was indeed assumable and was

22   executory in nature.  We're happy to report --

23        THE COURT:  Pause, please, for a second, Mr. Lederman.

24   I see Mr. Kukla on my phone list.  Are you on the line, Mr.

25   Kukla?

17

1          MR. KUKLA:  Yes, I am, Your Honor.

2          THE COURT:  Okay.  Thank you.  Continue, please, Mr.

3     Lederman.

4          MR. LEDERMAN:  Sure.  We're happy to report -- Your

5     Honor said either the parties should work to reach an agreement

6     and work it out or else we'd have to set a hearing date to go

7     through with the trial regarding the assumption.  We're happy

8     to report that since the weeks of that hearing, we've been able

9     to work with Mr. Kukla to resolve both the assumption and

10    rejection, and we have a stipulated agreement and order that

11    we'll hand up to Your Honor after the hearing.  If Your Honor

12    would like to know the resolution, I'm happy to quickly walk

13    you through it.  If not, Mr. Kukla --

14         THE COURT:  If you have a stip, I don't think you even

15    need to do that.  But I will, since he's on the phone, give Mr.

16    Kukla a chance to be heard if he wants to be.

17         MR. KUKLA:  No.  That's fine, Your Honor.

18         THE COURT:  Okay.  Very good.  All right.  If you and

19    Mr. Kukla have reached the understanding that's now papered in

20    a stip, I can't imagine why I wouldn't approve it.

21         MR. LEDERMAN:  Thank you, Your Honor.  With that, that

22    concludes my presentation.  I'll now turn over the podium to

23    Mr. Karotkin.

24         THE COURT:  Okay.  Mr. Karotkin, come up to the main

25    lectern.  But as I understand it you're on defense, and the

18

1    movant is Mr. Lawrence.  Are you on the phone, Mr. Lawrence?

2         MR. LAWRENCE:  Yes, I am, Your Honor.

3         THE COURT:  Okay.  I'm going to wait for Mr. Karotkin

4    to get up to the lectern here.  And I just have a couple of

5    preliminary comments, because while I've reviewed your papers,

6    Mr. Lawrence, it seems to me that you've spent an awful lot of

7    time arguing the merits in matters that are not particularly

8    relevant to the narrow issues that a bankruptcy judge would

9    decide.

10        I want both sides to focus on the Second Circuit

11   Sonnax factors.  And except for the minimal amount necessary to

12   understand the issues that are up for determination, in either

13   the Middle District of Florida or before me, I don't want

14   discussion of the merits of the controversy.  Subject to your

15   rights to be heard, Mr. Lawrence, it looks like this is a

16   classic core matter of allowance of a claim.  And I want you

17   folks to address that in the context of the other Sonnax

18   factors discussion that we're talking about.

19        Mr. Lawrence, I'll hear from you first, and then I'll

20   give Mr. Karotkin a chance to respond.  I'll give you a brief

21   opportunity, after Mr. Karotkin's heard, to reply.  And I'm

22   going to give Mr. Karotkin a brief opportunity to surreply.  So

23   Mr. Lawrence, go ahead.

24        MR. LAWRENCE:  Thank you, Your Honor.  May I start out

25   with what my obligation is with the burden of proof under 11

19

1    USC 362?

2        THE COURT:  I know the law, Mr. Lawrence.  What I

3    really need for you to do is to talk about how the facts

4    attempt or have the effect on my exercise of discretion in a

5    matter of this character.  Mr. Lawrence, of course, you don't

6    appear before me all the time, for that matter, neither does

7    Mr. Karotkin, but the fact is that I get motions for relief

8    from the stay to continue litigation in other forums pretty

9    frequently, like three or four a month.  So I understand the

10   law in this area.

11       MR. LAWRENCE:  Yes, Your Honor.  There's one thing

12   that I don't understand based on the contentions of the debtor.

13   Their contention is that they need the GM/UAW pension plan

14   income to be used by them to effectuate its effective

15   reorganization of the corporation or of the debtors.  Now, the

16   debtor has no equity in the GM/UAW pension plan.  Now, while

17   the debtor may want to include within the zone of equity that

18   which can be used to effectuate an effective reorganization, it

19   can only use the equity that it has, an unfettered guarantee of

20   command and control, and has admitted that -- and I'd direct

21   the Court's attention to item number 5 of their reply which is

22   at page 3, they have admitted that -- to paraphrase it, I'm not

23   reading the whole thing in the interest of brevity -- they have

24   admitted there that they took these funds and assigned them to

25   the IRS, to the government.

20

1       It's hard for me to see how that which they have no

2   control and command over, because as they alleged, they

3   transferred these monies over to the government, how these

4   funds can be used by the debtor to effectuate an effective

5   reorganization of the debtor, when they have relinquished

6   unfettered command and control of these monies over to the

7   government.

8       So based on that, my burden, as I understand it under

9   11 USC 362, is limited to the equity.  And since they have no

10  equity in the plan, because they have transferred it, number

11  one, and number two, I would direct the Court to this Court's

12  case of In re Handel (ph.) 300 B.R. 421, where Judge Drain

13  stated in 2003 that -- and I quote very briefly:  "In Patterson

14  v. Shumate the Supreme Court resolved a conflict between the

15  circuits over which a debtor's interest in a corporate pension

16  plan that satisfied all applicable requirements of ERISA and

17  qualified for favorable tax treatment under the Internal

18  Revenue Code, was excluded from his estate under 541(c)(2) of

19  the Bankruptcy Code.  The Court noted that" -- and this is the

20  Court still speaking here, "The Court noted that 29 USC

21  1056(d)(1) requires that each pension plan shall provide that

22  benefits provided under the plan may not be assigned or

23  alienated."

24      The GM pension plan, notwithstanding the notice of

25  levy, is not property of the estate.  It cannot be used,

21

1   therefore, as equity for an effective reorganization of the

2   debtor.  Because it can't be used and it's not equity, and I

3   believe that I've presented my contention to show how and why

4   under applicable bankruptcy law that it is not equity that can

5   be used, then all other issues under 11 USC 362, the burden of

6   proof is on the debtor to prove that.

7        Now, I can go into a whole litany of cases, but I, in

8   the interest of brevity of time, I'll not do that.  But I'd

9   like to add one other thing, too.  In their motion, they have

10  characterized -- in their reply, excuse me -- the debtor has

11  characterized me as an unsecured creditor.  On October the 5th

12  2009, I filed a secured proof of claim by sending it to Garden

13  City Group at 5151 Glacier Parkway, Suite A, Dublin, Ohio.  And

14  it has the claim number of 5569.  Somehow it was duplicated

15  again on October the 4th, 2009, with a claim number of 8909.  I

16  have -- according to the rules, Bankruptcy Rules, I attached to

17  that a secured proof of claim a copy of the GM UAW pension plan

18  agreement, which is the contract that I based -- used as the

19  legal basis for my secured claim against General Motors.  So

20  for whatever that's worth, I just wanted to bring that to the

21  attention of the Court.

22       And one other thing, too.  I made a mistake when I

23  mailed out my documents.  And under the Court's case management

24  order I failed to include the disks with the two documents that

25  I had filed.  And I so what I did was tried to take care of

22

1   this oversight and accident on my part, yesterday, I mailed out

2   a copy of the disk which includes my motion and my surreply.

3   So I apologize if this caused the Court any inconvenience.

4         THE COURT:  No apology is necessary.  I have at least

5   one disk in my file, and if that disk relates to an earlier

6   filing, I'm sure the other one will come in.  Just please

7   continue, Mr. Lawrence.

8         MR. LAWRENCE:  Okay.  So based on the fact that they

9   have no equity in that, and based on the fact that that GM UAW

10   pension plan is a qualified plan and the debtor has received

11   favorable tax treatment because they have included within the

12   terms of the plan the anti-alienation clause, they have no

13   equity in that GM pension plan payments.  And therefore,

14   because they have no equity, the burden, under 11 USC 362 now

15   shifts to the debtor on all other issues.  So I'm just trying

16   to be as brief as I can, in the interest of brevity.  And I'll

17   just rely on my documents that I filed with the Court.

18         And also, I believe you asked me to address myself to

19   Sonnax factors.  I think the most important Sonnax factor that

20   I've addressed myself to, and if I'm repeating what was in

21   there, then I apologize.  But I'm not going to read to the

22   Court, I'm just going to go off the top of my head of what I

23   believe that I set forth in that document.  The most important

24   thing is, is this.  This Court is burdened with the largest

25   bankruptcy case in this country, as I understand it.

23

1      THE COURT:  I think it's the largest industrial

2   bankruptcy case in this country.  I think there's one or two

3   others that may be ahead of it.  But I take your point.

4      MR. LAWRENCE:  Okay.  So given that, whether it is

5   first, second or third, this Court -- in the district court

6   case -- I'm not going to argue the merits there -- like you

7   said, you told me -- instructed me not to argue, and I'm not

8   going to argue the merits.  I'm not even going to come near it.

9         But procedurally, for purposes of the Sonnax factors,

10  there have been pro hac vice motions filed in the district

11  court by the attorneys out of Michigan.  There have been

12  attorneys that have made appearances out of Tampa, Florida

13  coming to Ocala to represent the debtor in that case.  I

14  checked the dockets in this case.  There are many, many motions

15  for pro hac vice attorneys.  I don't think, Your Honor, that

16  you need any more.  Because if this case is retained and the

17  stay isn't lifted for the exclusive purpose of continuation to

18  judgment in the district court case, this case is going to be

19  further burdened by more motions for pro hac vice attorneys to

20  come in here and try to hear issues before this Court that have

21  already been heard by the district court judge in Ocala,

22  Florida, the magistrate judge in Ocala, Florida, the attorneys

23  out of Michigan, the attorneys out of Tampa and myself.  For

24  them to come back into this Court now, and I'm sure you've

25  heard this argument many, many times, but you instructed me

24

1   follow the Sonnax factors, and I believe that my study and

2   review of the case law suggests to me that this is the most

3   important factor.

4       Because it would be much easier on this Court if it

5   would be -- if you would limit and lift the stay, modify the

6   stay to allow this case to proceed to judgment in the district

7   court.  I understand -- I could understand and be empathetic.

8   There are a lot of attorneys out there that might want to make

9   money off this case.  And maybe rightly so.  It's not for me to

10  say.  But I think in the interests of the limited judicial

11  resources and administrative resources of this Court, I think

12  it would be much easier on this Court if you were to lift the

13  stay strictly on a limited basis.

14      Now, number two, I've attached a copy of an order.

15  They suggested -- stated in their motion -- the debtor has,

16  that if this case were to go back to the district court that it

17  would take more discovery and more time.  Not true.  The

18  magistrate judge entered an order that I am not entitled to any

19  further discovery.  For me to fly in the face of that court

20  order would place me subject to criminal liability under 18 USC

21  401.  And that, I am not going to do.  I'm going to abide by

22  that order, I would expect the debtor to do the same.  That

23  issue is res judicata.  Both parties were there.  The plaintiff

24  and the defendant in that case, here -- although I carry

25  another name, movant rather than plaintiff, and General Motors

25

1   carries the name of debtor instead of defendant.  The parties

2   are still the same.

3         No discovery can be had.  So that -- and if this case

4   were to proceed here, then the possibility could exist for more

5   discovery.  That I don't know.  There's maybe an adversary

6   proceeding.  That I don't know yet.  But to get back there,

7   right on this doorstep, the district judge is right on the

8   doorstep of resolving this case.  Okay?  And I filed -- and it

9   was lingering there.  And because it was lingering, it denied

10  me access to the courts.  And I filed a writ of mandamus with

11  the Eleventh Circuit.  The Eleventh Circuit came back and said

12  the relief that I'm seeking could be obtained from the district

13  court.  And I think although I'm most -- surely, this Court is

14  quite intellectually and legally capable of handling all these

15  issues, it would be much easier on this Court if the stay was

16  lifted only on a limited basis, given that General Motors has

17  no equity in the GM pension plan; and given that it's not

18  property of the estate, it would be better off -- and therefore

19  the Court doesn't have subject matter jurisdiction over here,

20  as I've argued in there.  I think it would be much easier on

21  the Court if you were to send this case back to the district

22  court by lifting the stay.  Thank you, Your Honor.

23        THE COURT:  Okay.  Thank you.  Mr. Karotkin?

24        MR. KAROTKIN:  Thank you, sir.  Steven Karotkin, Weil,

25  Gotshal & Manges for Motors Liquidation Corporation.

26

1        I think, Your Honor, that in your opening remarks, you

2   put your finger on this.  This is a classic core matter dealing

3   with the allowance of claims.  With all due deference to the

4   moving party, Mr. Lawrence, I understand he's pro se, and may

5   not have all of the familiarity with the statutes and how the

6   automatic stay works.  But I think that his argument with

7   respect to equity in the assets of the pension fund really is

8   not relevant for this discussion.  It has to do with a creditor

9   asserting a secured claim.

10       Although I haven't seen the claim that he filed, I

11  don't think that there is any basis for a secured claim.  What

12  he has is some claim against the General Motors pension fund,

13  and not a secured claim against the estate of Motors

14  Liquidation Corporation.  So all of his arguments with respect

15  to equity in the collateral are irrelevant, and he has simply

16  not carried his burden.

17       The simple fact is, Your Honor, that this is a garden-

18  variety prepetition litigation claim against the debtor.  And

19  the fact that there are summary judgment motions pending does

20  not change the analysis, particularly where the plaintiff has

21  indicated in his pleadings and the record in the district court

22  action demonstrates, that despite the fact that he was enjoined

23  from proceeding further pending the disposition of the motions

24  for summary judgment, he's filed, as I understand it, no less

25  than six motions since that time.  And we can certainly expect

27

 1    that if the stay is modified, the debtors will be back in court

 2    addressing more motions, having to appear, having to spend

 3    money, having to incur costs, exactly what the automatic stay

 4    is designed to protect against.

 5         And I think, Your Honor, the key point here -- and I

 6    will address the other Sonnax factors as well -- the key point

 7    here, Your Honor is that there is a simple resolution for Mr.

 8    Lawrence.  All he has to do is sever Motors Liquidation

 9    Corporation from the district court action, address whatever

10    claims he has against the debtors in this court -- he already

11    has filed a proof of claim -- and pursue whatever rights he has

12    against the pension fund.  That's the real party-in-interest.

13         THE COURT:  Your point being that he doesn't lose any

14    substantive rights, he just litigates one of them in one place

15    and one of them in the other?

16         MR. KAROTKIN:  I believe that's correct.  Really, what

17    he's asserting is that -- as I understand it -- is that the

18    pension fund inappropriately recognized a garnishment of the

19    IRS and that monies were paid to the IRS.  Monies that were

20    otherwise payable to him from the pension fund assets on

21    account of his pension rights, were paid to the IRS, and that

22    that was inappropriate.  Let him chase the pension fund for

23    that.  He hasn't.  He has a remedy.  And he can sever, as I

24    said, Motors Liquidation from the lawsuit, and proceed.

25         Your Honor indicated that you see three or four

28

1    motions to modify a stay every month.

2         THE COURT:   Oh, I see many more than that.  I see

3    three or four motions to modify the stay to allow litigation to

4    proceed in another forum that frequently.  I'm not counting the

5    usual motions for relief from the stay to repossess a car or to

6    take somebody's apartment or house or something like that.  But

7    Sonnax motions are not an uncommon type of motion in this

8    Court.

9         MR. KAROTKIN:   No.  And I think, Your Honor, following

10   through on that, if you were to grant the relief that Mr.

11   Lawrence is requesting here, rather than seeing three or four

12   of those a month, I think you're going to see three or four a

13   day in this case.  I think that will open the floodgates.

14   There are thousands of litigation claims that are going to be

15   filed in this case.  And to grant the relief requested here

16   will open the floodgates and will again, totally obviate the

17   purpose of the automatic stay.  And as we've indicated in our

18   responsive pleadings, courts in this district have recognized

19   that as a basis to deny the relief.

20        Turning to the Sonnax factors, Your Honor, and we have

21   listed them on page 9 of our responsive pleading, the first

22   factor, whether relief would result in a partial or complete

23   resolution of the issues, clearly not.  There are motions for

24   summary judgment pending, as I indicated.  We are quite certain

25   that Mr. Lawrence will be filing other motions.  If those

29

1   motions are not disposed of favorably to the debtor, we will be

2   involved in ongoing litigation with Mr. Lawrence.  You can be

3   sure of that.  And moreover, Your Honor, the motions for

4   summary judgment have been sitting for a year and a half before

5   the district court.  So who knows how long it will take the

6   district court to decide those motions if the stay were

7   modified.  And again, during that period, there is no doubt we

8   will be required to appear -- or counsel for Motors Liquidation

9   will be required to appear and expend monies in the district

10  court action.

11      The lack of any connection with or interference with

12  the bankruptcy case, I've already alluded to.  It will cost

13  money.  It will divert resources.  And as we've indicated in

14  our responsive pleading, Your Honor, these debtors are in a

15  liquidation mode and have limited resources to address what

16  they are doing going forward.  This is not New GM.  This is Old

17  GM, with a limited staff.

18      This does not involve the debtor as a fiduciary.

19  There is no specialized tribunal involved with any particular

20  expertise to hear the cause of action in the district court.

21  In fact, there is nothing to indicate in the district court

22  action that they have any additional familiarity with the case

23  or any special expertise that you, Your Honor, do not have.  I

24  think, as Mr. Lawrence indicated, you are more than capable of

25  adjudicating in the claims resolution context whatever claims

30

1    he asserts against the debtors.

2         There is no insurance involved here.  The action, to

3    some extent, does involve third parties.  And as I've said the

4    proper -- I think the proper approach for Mr. Lawrence is to

5    sever the debtors and proceed against the pension plan.  The

6    litigation --

7         THE COURT:  Am I correct, Mr. Karotkin, that if there

8    was a wrongful turnover of funds to the IRS when the IRS levies

9    were honored, the money was paid out of the GM pension plan

10   rather than what is now Motors Liquidation?

11        MR. KAROTKIN:  That's my understanding, sir.

12        THE COURT:  Okay.

13        MR. KAROTKIN:  Continuing.  The issue of equitable

14   subordination is really not applicable here.  The ninth factor

15   as to whether a judicial lien avoidable by the debtor would

16   arise, is not applicable here.  The interest of judicial

17   economy and the expeditious economical resolution of

18   litigation, really is not applicable here, as I've addressed,

19   because there's no indication as to when the summary judgment

20   motions would be addressed, and again, we are sure there would

21   be ongoing litigation, despite those motions.

22        The parties -- not much has proceeded in the district

23   court action, Your Honor.  There really has not been any

24   discovery.  It's not ready for trial, again, addressing the

25   eleventh Sonnax factor.  And I think I've already addressed the

31

1    impact of the stay on the parties and the balancing of harms.

2    The balance of harms here clearly weighs in favor of

3    maintaining the imposition of the automatic stay, Your Honor.

4    As I said, Mr. Lawrence can feel free to pursue the pension

5    plan, the other defendants, and I believe that would be more

6    than an adequate remedy for him.

7          And on that basis, we don't believe, Your Honor, that

8    he has sustained his burden.  He has not even sustained his

9    burden of going forward.  And in addition to that, applying the

10   Sonnax factors, we believe, militates clearly in favor of

11   denying the motion and continuing the stay.

12         THE COURT:  Very well.  Thank you.  Mr. Lawrence,

13   reply?

14         MR. LAWRENCE:  Thank you, Your Honor.  Counsel states

15   that equity is not relevant here.  Under 11 USC 362(g)(1),

16   equity is relevant, because I, as a party that is requesting

17   the relief, I have the burden of proof on the issue of debtors'

18   equity in property.  And so I believe I have met that by

19   showing that once -- notwithstanding the fact that the issue of

20   the proof of levy contains the applicable -- procedures

21   applicable to that levy, and it does not apply to the GM

22   pension plan, and notwithstanding the fact that the GM pension

23   plan is not property of the estate, it's hard to see how they

24   can say that it's equity that would be effective to their

25   reorganization, when they have absolutely no control -- command

32

1     or control, or no guarantee of any command or control, over the

2     GM pension plan payments that could be used to effectuate an

3     effective reorganization.

4          As far as the number of motions that may arise out of

5     or arise from this particular motion, if the Court were to

6     either grant or deny it, that's pure speculation, Your Honor.

7     And this Court doesn't have subject matter jurisdiction to rule

8     on speculative matters.  So I think that the debtor's off base

9     on that point.

10         And not only that, if this motion were denied, it's my

11    understanding of the law that this Court would be further

12    inundated with more papers, because I'm most assuredly going to

13    take an interlocutory appeal to the Second Circuit if the

14    motion is denied.  And I have a right to do that.

15         And they stated that General Motors, the debtor, is

16    not a fiduciary.  Under the Secretary of Labor's definition of

17    fiduciary set forth in the regulations that I've cited in my

18    documents, any person who exercised control or demand over

19    these funds is considered a fiduciary.  So given that debtor

20    has either, whether it's lawful or unlawful, exercised

21    authority over these funds, they are a fiduciary.

22         But the most important factor is, if I came in here

23    before this Court and the stay is denied and I do what the

24    debtors suggested, proceedings to sever, imagine how much more

25    time it's going to take up by this Court.  Let make me go

1    straight back to the district court and let the district court

2    rule on that motion.  I am not trying to state a claim right

3    here, as stated in my paperwork.  They may want to try to

4    characterize it as that, but -- you may too -- but that's not

5    what my intention is here to state a claim.

6        I'm here to do one thing and primarily one thing, and

7    that's to meet the Sonnax factor test and to show -- meet my

8    burden of proof that the debtor has no equity.  And where --

9    showing that the debtor has no equity, which I believe I have

10    done.  And I believe that the stay should e lifted and allow me

11    to go back into the district court and pursue this matter.

12        And I'm not going to repeat all the other time that's

13    going to be necessary, taken up with this Court with other

14    matters and -- you know, I know -- I've been at these

15    procedures, and I know, that given -- and I don't intend to

16    dispute this with Your Honor, not at all.  I would never do

17    anything to be disrespectful.  But I know that attorneys in

18    general do not like pro se litigants.  I know that.  But that's

19    beside the point.  I have an opportunity to be heard.  You've

20    given me that opportunity.  I've tried to make the most of it

21    and tried to respond with all the evidence -- admissible,

22    credible evidence to support my position.  And I would ask that

23    the Court grant my motion on a limited basis, as I set forth in

24    my proposed order that I attached to my motion for lifting the

25    stay and allow this matter to proceed in the district court.

34

1   Thank you, Your Honor.

2       THE COURT:  Very well.  Thank you.  Mr. Karotkin, any

3   surreply?

4       MR. KAROTKIN:  No, sir.

5       THE COURT:  All right.  Everybody sit in place for a

6   moment.

7    (Pause)

8       THE COURT:  All right.  Ladies and gentlemen, movant

9   Walter Lawrence moves -- Section 362(d)(1) of the Bankruptcy

10   Code for an order modifying the automatic stay to permit Mr.

11   Lawrence's motion for summary judgment and other motions that

12   he has pending in the Middle District of Florida, which covers

13   the Tampa and Ocala, Florida vicinity so that those motions may

14   be determined.

15      Mr. Lawrence's motion is denied and the following are

16   my findings of fact, conclusions of law and bases for the

17   exercise of my discretion in connection with this

18   determination.

19      As facts, I find that Mr. Lawrence is a former

20   employee of General Motors, now called Motors Liquidation

21   Corporation or Company, who had rights to recover a pension and

22   to receive pension payments from a qualified pension plan that

23   had been set up by General Motors.  The way a qualified pension

24   plans work is that a separate entity, kind of like a trust,

25   exists to pay those benefits and that the funds in the trust

35

1    are managed by a plan administrator.  There may be an issue of

2    fact as to who the proper plan administrator is or was and to

3    what extent GM had the responsibility for that or a separate

4    entity or a subcommittee of its board or others, but that's

5    ultimately not relevant to this controversy.

6         The underlying dispute arises because the GM pension

7    trust honored some levies by the IRS which then resulted in Mr.

8    Lawrence not receiving pension payments that he contends that

9    he was entitled to.  The debtor states that the plan sent

10   his -- sent these payments to the IRS in response to an IRS

11   notice of deficiency in levy against Mr. Lawrence's pension

12   payments because allegedly Mr. Lawrence had failed to pay his

13   income taxes in eleven different years.  And that the plan was

14   obligated to give the IRS -- benefits to the IRS to satisfy the

15   tax levy because that's what's required under law.  That too I

16   don't decide on the merits but state merely to describe the

17   nature of the controversy that is now pending in the Middle

18   District of Florida.

19        Other facts that are relevant to the exercise of my

20   discretion I'll deal with when I get into the legal discussion

21   and bases for the exercise of my discretion so I don't need to

22   repeat them twice.

23        Now turning to the applicable law, because the issue

24   of subject matter jurisdiction was raised first, I'll address

25   it first.  The subject matter jurisdiction of this Court comes

36

1    from 28 USC 1334, which is one of the several sections of the

2    Judicial Code, not the Bankruptcy Code the Judicial Code, Title

3    28 that govern the subject matter jurisdiction of the federal

4    courts.

5         1334 follows the more commonly referred to other

6    subject matter jurisdiction provisions, such as 1331 and 1332

7    which deal with a federal question jurisdiction and its

8    diversity jurisdiction, it's another kind.  And bankruptcy

9    courts have jurisdiction, in addition to cases like the Motors

10   Liquidation case, proceedings which arise under the Bankruptcy

11   Code arise in cases under the Bankruptcy Code or are related to

12   cases under the Bankruptcy Code.

13        Ultimately what we're talking about here is a claim

14   against the estate.  A claim against the estate is one of those

15   relatively rare cases where there is subject matter

16   jurisdiction under each one of the three provisions because a

17   creditor has an expressed right to file a claim against the

18   estate, a claim arises in connection with -- excuse me, arises

19   in a case under the code because there would be no occasion to

20   file a claim if there weren't the related bankruptcy and it

21   also invokes related to jurisdiction because it has an effect

22   upon the bankruptcy estate.

23        So there can be no serious question that there is

24   subject matter jurisdiction over Mr. Lawrence's claim.  By the

25   same token, the Court also has subject matter jurisdiction vis-

37

1    a-vis efforts to enforce the automatic stay or to seek relief

2    from the automatic stay, that's a federal right under 362 of

3    the Code.  And there would be no occasion to invoke the stay

4    unless there were a case under the Code and it also invokes the

5    related to jurisdiction.

6           Now a separate matter that's sometimes discussed in

7    connection with bankruptcy jurisdiction is an analytically

8    distinct matter which involves the power of a bankruptcy judge,

9    as contrasted to a district judge, to decide matters that arise

10   before the bankruptcy judge, matters that are governed by a

11   separate section of the Judicial Code, Section 157.  Now that

12   isn't, strictly speaking, the subject matter jurisdiction

13   provision.  It is rather, as I said, a provision that deals

14   with the power of a bankruptcy judge as contrasted to a

15   district judge to decide certain kinds of controversies.

16          In this case the matter of a claim is what we call a

17   core matter that a bankruptcy judge can decide because under

18   the Judicial Code, 157, under (b)(2)(B), matters involving the

19   allowance or disallowance of claims against the estate are a

20   core matter.  Additionally, to the extent it's relevant, under

21   (b)(2)(G), motions to terminate or annul the automatic stay are

22   likewise core matters.  So this matter is properly before me

23   and likewise so is the claim properly before me and a core

24   matter as well.

25          These are very, very fundamental aspects of bankruptcy

38

1    law but since the movant is pro se and since he's expressed a

2    desire to take any adverse decision up on appeal, a matter that

3    I note parenthetically would, if and to the extent it's proper

4    will all go to the district court rather than the Second

5    Circuit, at least in the first instance, I say these things

6    merely as a matter of introduction or as a primer to bankruptcy

7    subject matter juris prudence.

8         Now turning to the apparent difference in perspective

9    between the movant and the estate vis-a-vis the standards that

10   one applies on a 362(d)(1) motion.  Matters for relief from the

11   stay can be of different types because the automatic stay

12   applies to different kinds of things.

13        The automatic stay applies to people's efforts to

14   assert interests in debtor property, most commonly by

15   attempting to enforce security interests or to grab assets of

16   the debtor's property.  When the effort is to go after debtor

17   property then the debtor's equity in its property or its

18   ownership of the property can, and often does, make the

19   critical difference.  But the automatic stay applies in

20   addition to efforts to enforce debt or to collect on alleged

21   debts, matters that don't involve property to the same extent

22   and, as relevant here, to continue with litigation against the

23   estate.

24        And when you're talking about requests to continue

25   litigation against the estate, that doesn't invoke the same

39

1    considerations as efforts to grab debtor property do.  Instead,

2    it invokes what we call in the Second Circuit the Sonnax

3    factors, named after a decision of the Second Circuit, which

4    lay out standards by which we bankruptcy judges determine, in

5    the exercise of our discretion, whether that litigation should

6    be allowed to proceed or not.

7          Now as nobody can seriously dispute the Sonnax

8    decision lays out twelve factors or standards to assist a

9    bankruptcy judge in the exercise of his or her discretion on

10   whether or not to allow litigation against the estate to

11   proceed.

12         So again, as to not be duplicative, I'm going to deal

13   with the various Sonnax factors and the facts related to them

14   in a single discussion, without laying out all of those factors

15   and then coming back to repeat them to talk about how they

16   apply or don't apply.  The Sonnax factors can be found at 907

17   F.2d 1286 and these are factors that we bankruptcy judges use

18   over and over again in deciding motions of this character.

19         The Sonnax factors are not exclusive but most of the

20   time, by relying solely on the Sonnax factors, using the listed

21   factors are sufficient to skin the cat.  Whenever you have

22   listed factors that are applicable to a broad array of

23   circumstances it's common that they apply in greater or lesser

24   degrees, and I will deal with them as we go forward.

25         In my experience the most important of the factors, as

40

1    a general rule, are factors 2, 7 and 12.  Number 7 is whether

2    litigation in another forum would prejudice the interests of

3    other creditors.  That is important because when managing a

4    bankruptcy case a bankruptcy judge has to consider everybody I

5    the case, including the universe of unsecured creditors and

6    where applicable secured creditors, and has to address the

7    needs and concerns of the movant in the context of the needs of

8    all of the other creditors in this case.

9         As the debtor has properly recognized, allowing

10   litigation in the Middle District of Florida to proceed and to

11   require the debtor to have to devote the resources to address

12   that litigation, would require the debtor to write out checks

13   in postpetition dollars for the lawyers and other defense costs

14   associated with the defense of that case, which would raise the

15   risk, if not the certainty, of taking money out of all of the

16   other members of the unsecured creditor community who have an

17   understandable desire that the estate shepherd its resources to

18   the maximum extent possible to deal with the claims against the

19   estate in the most economical fashion available.

20        Likewise when we talk about factor 2, lack of any

21   connection with or interference with the bankruptcy case, the

22   estate's use of its resources to defend litigation in the least

23   economical fashion, again, interferes with the case.  I do not

24   suggest that we're talking about asset grabbing of the estate

25   by the movant.  In essence what the movant is asking me to do

41

1    is to permit his claim to be liquidated in another forum.  But

2    it has the consequences of requiring the estate to defend the

3    claim in an inefficient fashion.

4          In my experience, impact of the stay on the parties

5    and the balance of harms, factor number 12, is one of the most

6    important.  Here nobody is going to be depriving Mr. Lawrence

7    of his day in court.  The issue, rather, is which court will

8    decide the issues.

9          As we've now established I have subject matter

10   jurisdiction to decide a routine matter of claims allowance and

11   to address all of Mr. Lawrence's needs and concerns insofar as

12   he's looking for relief from this debtor.  Frankly, based upon

13   my understanding of the nonbankruptcy law, if and to the extent

14   he has claims, they're more likely to exist against the

15   separate defendant, the trust, rather than this debtor but I'll

16   give him a fair day in court to decide these issues if he

17   wishes to proceed with them in the claims context.

18         Bankruptcy litigation is typically as efficient or

19   more efficient than litigation in the district courts in

20   connection with plenary litigation.  And the very reason that

21   we have a claims allowance process is to deal with these

22   matters, subject to rights of appeal of course, in the most

23   economical way possible.

24         Conversely, if the estate has to go through the burden

25   of litigation elsewhere and the estate is paying full

42

1    administrative expense, one hundred cent dollars, to defend a

2    claim that may be satisfied in the range of ten cents on the

3    dollar, that is something that is harmful to the estate and to

4    the remainder of the creditor community.

5         Now I'm going to talk about the other factors, just to

6    touch the bases.  Factor number 1 is whether relief would

7    result in a partial or complete resolution of the issues.  It

8    is theoretically possible that Mr. Lawrence could win on

9    plaintiff's summary judgment on this matter.  But it is more

10   likely that he will either lose on summary judgment and not --

11   and have summary judgment entered against him.  Or, perhaps,

12   the most likely of all the facts being that the Middle District

13   of Florida court, if it got around to deciding this, at such

14   time as it could it having its own burdens, would merely find

15   that they're issues of fact.  The chances that this motion is

16   going to result in partial -- complete resolution of the issues

17   is remote.  So that's not likely to happen and if it does, of

18   course, is merely going to liquidate the claim for allowance

19   back here.

20        Factor number 3, is whether the other proceeding

21   involves the debtor as a fiduciary.  Here there is a double

22   entendre.  If a debtor is merely holding property as a

23   fiduciary and it doesn't have an effect on creditors, in those

24   relatively uncommon cases that is an argument for relief from

25   the stay because it doesn't impact the remainder of the

43

1    creditors in the case.  But that, of course, is not the

2    suggestion here.  If and to the extent the properties being

3    held by a fiduciary in that sense its being held by the trust

4    which is not the debtor.  Whether or not the debtor has

5    fiduciary duties in connection with its having an influence on

6    the activities of the trust is a different kind of fiduciary

7    relationship and is not a meaningful factor in this

8    determination.

9         Factor 4 is whether a specialized tribunal, with the

10   necessary expertise, has been established to hear the cause of

11   action.  The middle -- that factor, when it exists, militates

12   in favor of relief from the stay but it's not applicable here

13   because the district court in the Middle District of Florida

14   has no particular expertise in that regard that I don't have.

15        Factor number 5, whether the debtor's insurer has

16   assumed full responsibility for defending it is a factor that

17   when present we weigh to grant relief from the stay because

18   it's no harm no foul on the debtor's estate or more importantly

19   on the interests of the other creditors.  But here that factor

20   doesn't warrant relief from the stay so it's either a negative

21   factor or at best a wash and a factor that's neutral.

22        Whether the action primarily involves third parties,

23   involves the consideration of whether the third parties are

24   going to be the principal focus of the litigation and the

25   debtor can participate merely as a hanger-on.  Or conversely,

44

1    whether you have the option, which is plainly present here, of

2    allowing the litigation to proceed against the third parties,

3    against whom it's primarily asserted.  And it's no big deal to

4    allow the debtor to be severed and to allow the litigation to

5    proceed in the other forum against the remaining parties.

6        Here I still think that having the debtor participate

7    would have the burdens that I articulated previously.  And the

8    second way of looking at it favors opposition to the

9    debtor's -- excuse me -- Mr. Lawrence's motion.  His principal

10    target should be, if it's anybody, the trust.  But if he wants

11    to proceed against the debtor, that's his right.  But what he

12    should do is simply continue his litigation against the trust

13    and if he wishes to proceed with his claim here.

14        Whether the judgment claim arising from the other

15    section is subject to equitable subordination is factor 8, it's

16    simply inapplicable here.

17        Factor 9, whether movant's success in other proceeding

18    would result in a judicial lien avoidable by the debtor isn't

19    applicable here.

20        Factor 10, the interest of judicial economy and the

21    expeditious and economical resolution of litigation warrants

22    and weighs in favor of denial of the motion Mr. Lawrence

23    brought here.  The economical way of doing it is dealing with

24    it by the claims allowance process, as all of the other

25    thousands of claims against this estate are.  And in this

45

1    connection, in connection with several of the factors, I do

2    have to note that if I were ever to allow relief from the stay

3    on a garden variety claim of this type there would indeed be

4    the risk, if not the certainty, that every other party who

5    thinks he or she has a good claim against the estate pending in

6    another jurisdiction would be asking me to defend -- to provide

7    relief from the stay and require the debtors to be litigating

8    claims of this character all over the country.  The floodgates

9    concern that the estate articulated is indeed a very serious

10   one.

11        So for the foregoing reasons the motion is denied.

12   The debtors are to settle an order in accordance with the

13   foregoing.  The order should not attempt to encapsulate

14   everything I said in this lengthy, dictated decision.  It

15   should merely provide that for the reasons set forth in this

16   decision the motion is denied.

17        Not by way of reargument, do we have anything that I

18   failed to address?  Mr. Lawrence?

19        MR. LAWRENCE:  Yes, Your Honor.

20        THE COURT:  I can't allow you to reargue the motion or

21   to debate my decision except by taking it up on appeal, but I

22   will allow you to tell me if you think I have any business that

23   I didn't address today.

24        MR. LAWRENCE:  Any what, sir?

25        THE COURT:  Business.

46

1          MR. LAWRENCE:  Any what?

2          THE COURT:  Business.

3          MR. LAWRENCE:  I don't understand your question.

4          THE COURT:  All right.  Well, frankly, I think that I

5     determined the issues that are before me and I know you'll

6     likely disagree with that decision.  I dealt with your motion,

7     am I correct?

8          MR. LAWRENCE:  I don't believe -- I think you missed

9     the point of the equity part.

10         THE COURT:  Well, with respect sir, that goes to the

11    merits.  And if you think I misunderstood the distinction

12    between a Sonnax type of motion and a motion to proceed against

13    property, that's something that you'll need to deal with on

14    appeal.

15         Mr. Karotkin, did I cover what I need to cover?

16         MR. KAROTKIN:  I believe so, Your Honor.  If I just

17    may point out one thing.  I think you missed item 11 in the

18    Sonnax factors.

19         THE COURT:  Oh yes, you're quite right.  I did indeed.

20    Factor number 11 is whether the parties are ready for trial in

21    the other proceeding.  And that factor, when present, militates

22    in favor of relief from the stay but it doesn't do so here

23    because this case is in the earliest stages.

24         MR. KAROTKIN:  Thank you, sir.

25         THE COURT:  All right.  Very good.  All right.  Folks,

47

1   were adjourned.  Have a good day.

2           MR. KAROTKIN:  No, I'm sorry.  Before --

3           MR. LAWRENCE:  Thank you for your time, Your Honor.

4           THE COURT:  I'm sorry; Mr. Karotkin?

5           MR. KAROTKIN:  Not relating to Lawrence, but can I

6   raise another matter?

7           THE COURT:  Yes.  Mr. Lawrence, you may either stay on

8   the line or hang up, as you prefer.

9           MR. LAWRENCE:  I will get off the line.  Thank you for

10  your time, sir.

11          THE COURT:  Okay.  Very good.  Mr. Karotkin.

12          MR. KAROTKIN:  Thank you, sir.  This relates to the

13  bar date, which is November 30th, in the Motors Liquidation

14  case.  And really by way of housekeeping, and I won't impose on

15  the Court.  A few of the issues of bonds issued by the former

16  General Motors are bearer bonds and held widely in Europe by

17  individual retail holders.  There is not an indentured trustee

18  for those bonds to file the proof of claim.  Various financial

19  institutions overseas, through their counsel in the United

20  States, have reached out to us and we have agreed to

21  stipulations which would allow global proofs of claims to be

22  filed on behalf of customers by certain financial institutions

23  who will be acting for them.  And we would like to accommodate

24  them, we certainly don't want to impose on the individuals.

25  And we would propose to submit -- right now we have two

48

1    proposed stipulations which we would like to submit to the

2    Court.  It's very administrative, its' not substantive.  But it

3    does act to preserve the rights of those people who obviously

4    are concerned about their ability to file proofs of claim.  And

5    I think that form the estate's perspective and the Court's

6    perspective it is an administrative convenience for everybody.

7         What we would propose to do, Your Honor, if it's okay

8    with you, is run those stipulations by the creditors' committee

9    rather than notice them for hearing, if we could just submit

10   them to the Court with the consent of the creditors' committee.

11   THE COURT:  My tentative, subject to people's rights

12   to be heard, that is if I've got a no object from the

13   creditors' committee that I should do that.  Can I get the

14   creditors' committee perspective?

15        MR. PLOTKO:  Our perspective is we agree with that

16   proposed procedure.  We would take a look at it and I think we

17   would accommodate it.  We also get numerous telephone calls

18   from European bondholders with similar questions.

19        THE COURT:  I take it, then, on a matter like bonds

20   the last thing you want to do is shut the door on bondholders.

21        MR. PLOTKO:  Absolutely, sir.

22        MR. KAROTKIN:  Exactly.

23        THE COURT:  I agree with both of you.

24        MR. KAROTKIN:  Thank you.

25        THE COURT:  Just give me a letter transmittal

49

1    confirming that, with a copy to the creditors' committee --

2          MR. KAROTKIN:  Uh-huh.

3          THE COURT:  -- that you've run it by the creditors'

4    committee and they've authorized you to say that they don't

5    object or anything stronger in support and I'll sign the order

6    without further hearing or notice.

7          MR. KAROTKIN:  thank you, sir.  I appreciate it.

8          THE COURT:  Okay.  Very good.  Have a good day, folks.

9    We're adjourned.

10         (Proceedings Concluded at 11:04 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

50

1

2                                I N D E X

3

4                                 RULINGS

5                                    Page      Line

6    Motion for relief from    15        8

7    stay re: Bonnie

8    J. Reynolds and Garland

9    Reynolds, Jr. granted

10   Debtors' eighth omnibus   16        6

11   motion to reject certain

12   executory contracts and

13   unexpired leases granted

14   Mr. Lawrence's Motion for 34        15

15   Relief from Stay, Denied

16

17

18

19

20

21

22

23

24

25

51

1

2                              C E R T I F I C A T I O N

3

4        I, Penina Wolicki, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        Penina Wolicki

9

10       Veritext

11       200 Old Country Road

12       Suite 580

13       Mineola, NY 11501

14

15

16       Date:  November 6, 2009

17

18

19

20

21

22

23

24

25