**Hearing Date and Time: December 16, 2009 at 2:00 p.m. (Eastern Time)**
**Objection Date and Time:  December 10, 2009 at 4:00 p.m. (Eastern Time)**

Robert B. Weiss
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Telephone: (313) 465-7596
Facsimile:  (313) 465-7597

*Special Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                      :

**In Re**                          :          Chapter 11
                                     :

**MOTORS LIQUIDATION COMPANY** (f/k/a  :        Case No. 09-50026 (REG)
General Motors Corp.), et al.,           :        (Jointly Administered)
                                     :

     Debtors.                    :         Hon. Robert E. Gerber
                                     :

-------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATION FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. SECTION 330**

**FIRST INTERIM FEE APPLICATION**

| | |
|---|---|
| **NAME OF APPLICANT:** | Honigman Miller Schwartz and Cohn LLP |
| **TIME PERIOD:** | June 1, 2009 through and including September 30, 2009 |
| **ROLE IN THE CASE:** | Special Counsel for the Debtors and Debtors in Possession |
| **CURRENT APPLICATION:** | Total Fees Requested:        $2,297,160.00 |
| | Total Expenses Requested:    $16,799.46 |
| **PRIOR APPLICATIONS:** | None |

**PRIOR APPLICATIONS**

| Date Application Filed | Docket No. | Compensation Period | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed | Hold-Back If any |
|---|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

## SUMMARY OF FIRST INTERIM FEE APPLICATION OF HONIGMAN MILLER SCHWARTZ AND COHN LLP FOR SERVICES RENDERED FOR THE PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009

| NAME OF PROFESSIONAL: PARTNERS | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Abel, Jason R. | Litigation | 2001 | $300.00 | 14.80 | $4,440.00 |
| Ankers, Norman | Litigation | 1979 | 530.00 | 0.40 | 212.00 |
| Appledorn, Thomas J. | Corporate | 2004 | 260.00 | 25.90 | 6,734.00 |
| Baty Jr., Donald F. | Commercial Law, Bankruptcy, and Reorganization | 1985 | 475.00 | 248.10 | 117,847.50 |
| Beitner, Norman | Corporate | 1979 | 465.00 | 125.50 | 58,357.50 |
| Binkow, Maurice S | Real Estate | 1958 | 455.00 | 27.90 | 12,694.50 |
| Calton, Judy | Commercial Law, Bankruptcy, and Reorganization | 1986 | 475.00 | 115.10 | 54,672.50 |
| Coppola, Joseph Sr. | Corporate | 1988 | 390.00 | 2.30 | 897.00 |
| Crotty, Sean F. | Labor | 2002 | 290.00 | 35.00 | 10,150.00 |
| Forster II, Thomas William | Real Estate | 2000 | 320.00 | 3.30 | 1,056.00 |
| Friedman, Michael J. | Corporate | 1991 | 375.00 | 5.20 | 1,950.00 |
| Gold, Kenneth C. | Environmental | 1987 | 360.00 | 1.80 | 648.00 |
| Gorman, Frank L. | Commercial Law, Bankruptcy, and Reorganization | 1998 | 370.00 | 265.50 | 98,235.00 |

| | | | | | |
|---|---|---|---|---|---|
| Greene, Margaret E. | Real Estate | 1980 | $370.00 | 6.70 | $2,479.00 |
| Haas, June Summers | Tax Appeals | 1986 | 455.00 | 35.10 | 15,970.50 |
| Hochkammer, Karl A. | Corporate | 1992 | 435.00 | 168.80 | 73,428.00 |
| Jackson, Robert M. | Litigation | 1984 | 455.00 | 30.90 | 14,059.50 |
| Johnson, S. Lee | Environmental | 1993 | 330.00 | 17.40 | 5,742.00 |
| Kanan, John P. | Corporate | 1993 | 375.00 | 123.20 | 46,200.00 |
| Kaye, Barbara A. | Corporate | 1985 | 440.00 | 22.80 | 10,032.00 |
| Krueger, Robert J. | Corporate | 1983 | 465.00 | 0.50 | 232.50 |
| Krugel, Joel M. | Real Estate | 1992 | 355.00 | 44.70 | 15,868.50 |
| Kuras, Jeffrey H. | Corporate | 2003 | 255.00 | 22.60 | 5,763.00 |
| Langridge, Melissa A. | Corporate | 2004 | 250.00 | 32.80 | 8,200.00 |
| Lisi, Michael A. | Corporate | 1986 | 390.00 | 13.60 | 5,304.00 |
| Mali, H. Roger | Real Estate | 2002 | 285.00 | 130.30 | 37,135.50 |
| Mandell, Stewart L. | Tax Appeals | 1981 | 465.00 | 15.10 | 7,021.50 |
| Maxwell, A'Jene' M. | Real Estate | 2004 | 250.00 | 128.90 | 32,225.00 |
| McLaughlin, Lawrence | Real Estate | 1977 | 515.00 | 29.30 | 15,089.50 |
| Meadows, H. Kirk | Environmental | 2001 | 280.00 | 107.80 | 30,184.00 |
| Meisner, Mitchell | Estate | 1984 | 375.00 | 94.80 | 35,550.00 |
| Moscow, Cyril | Corporate | 1957 | 540.00 | 0.50 | 270.00 |
| Murphy, Lawrence | Litigation | 1992 | 370.00 | 20.60 | 7,622.00 |
| Negele, Brian J. | Environmental | 1985 | 325.00 | 54.30 | 17,647.50 |
| Nida, Charles | Trusts and Estates | 1969 | 520.00 | 0.30 | 156.00 |
| Opperer, Joshua F. | Corporate | 1995 | 400.00 | 0.40 | 160.00 |
| Parsigian, David N. | Corporate | 1985 | 465.00 | 29.10 | 13,531.50 |
| Phillip, Lara Fetsco | Litigation | 1995 | 370.00 | 1.70 | 629.00 |
| Pirich, John D. | Litigation | 1973 | 490.00 | 23.90 | 11,711.00 |

| | | | | | |
|---|---|---|---|---|---|
| Pitts, Stanley | Labor | 1981 | $320.00 | 27.30 | $8,736.00 |
| Polito, Joseph | Environmental | 1975 | 495.00 | 17.30 | 8,563.50 |
| Przybylski, Thomas E. | Corporate | 2002 | 280.00 | 134.40 | 37,632.00 |
| Rozof, Phyllis G. | Real Estate | 1977 | 385.00 | 58.30 | 22,445.50 |
| Salle, Alan J. | Real Estate | 1987 | 405.00 | 25.70 | 10,408.50 |
| Schermerhorn, Gregory R. | Corporate | 1990 | 340.00 | 15.20 | 5,168.00 |
| Sherick, Tricia A. | Commercial Law, Bankruptcy, and Reorganization | 1997 | 370.00 | 432.10 | 159,877.00 |
| Silver, Aaron M. | Commercial Law, Bankruptcy, and Reorganization | 2002 | 285.00 | 279.80 | 79,743.00 |
| Soble, Richard S. | Tax | 1980 | 520.00 | 0.30 | 156.00 |
| Stanley, Daniel L. | Tax Appeals | 1997 | 340.00 | 0.50 | 170.00 |
| Stern, Mark A. | Litigation | 1984 | 455.00 | 3.30 | 1,501.50 |
| Taigman, Michelle | Commercial Law, Bankruptcy, and Reorganization | 1993 | 370.00 | 225.70 | 83,509.00 |
| Valade, Alan M. | Tax | 1977 | 440.00 | 135.80 | 59,752.00 |
| Weiss, Robert B. | Commercial Law, Bankruptcy, and Reorganization | 1975 | 565.00 | 309.00 | 174,585.00 |
| Wessel, Kenneth J. | Real Estate | 2004 | 250.00 | 90.90 | 22,725.00 |
| Boyce, Marcia Bennett | Commercial Law, Bankruptcy, and Reorganization | 2000 | 310.00 | 31.40 | 9,734.00 |
| Frank, Frederick J. | Real Estate | 1980 | 365.00 | 32.40 | 11,826.00 |
| | | | | | |
| **TOTAL** | | | | **3,846.30** | **$1,476,637.50** |

| NAME OF PROFESSIONAL: ASSOCIATES | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Adams, Daniel N. | Commercial Law, Bankruptcy, and Reorganization | 2007 | $195.00 | 290.50 | $56,647.50 |
| Anderson-Williams, Shanta S. | Labor | 2007 | 195.00 | 44.00 | 8,580.00 |
| Bednarz, Kenton M. | Corporate | 2008 | 195.00 | 1.00 | 195.00 |
| Bradley-Lipsey, Andrea J. | Litigation | 2006 | 210.00 | 1.00 | 210.00 |
| Dixit, Naeha | Environmental | 2007 | 205.00 | 184.70 | 37,863.50 |
| Douglas, Stephanie A. | Labor | 2006 | 225.00 | 39.90 | 8,977.50 |
| Drucker, Seth A. | Commercial Law, Bankruptcy, and Reorganization | 2004 | 240.00 | 364.60 | 87,504.00 |
| Grimm, David E. | Commercial Law, Bankruptcy, and Reorganization | 2007 | 195.00 | 277.20 | 54,054.00 |
| Holmes, Karissa M.W. | Corporate | 2008 | 195.00 | 60.50 | 11,797.50 |
| Keith, Adam K. | Commercial Law, Bankruptcy, and Reorganization | 2007 | 210.00 | 195.70 | 41,097.00 |
| Keuten, Matthew | Health Care | 2006 | 220.00 | 59.50 | 13,090.00 |
| Kochenderfer, Adam L. | Litigation | 2004 | 265.00 | 122.00 | 32,330.00 |
| Kuriakuz , John P. | Commercial Law, Bankruptcy, and Reorganization | 2006 | 210.00 | 143.50 | 30,135.00 |
| Leibhan, Evan J. | Corporate | 2007 | 210.00 | 42.00 | 8,820.00 |
| Linna Jr., Daniel W. | Commercial Law, Bankruptcy, and Reorganization | 2004 | 265.00 | 157.10 | 41,631.50 |

| | | | | | |
|---|---|---|---|---|---|
| Michalsky, Abby | Real Estate | 2007 | $210.00 | 100.30 | $21,063.00 |
| Quinn, Brian T. | Litigation | 2003 | 250.00 | 5.30 | 1,325.00 |
| Sgroi, Joseph R. | Commercial Law, Bankruptcy, and Reorganization | 2005 | 240.00 | 428.80 | 102,912.00 |
| Spencer, Khalilah V. | Litigation | 2001 | 250.00 | 1.30 | 325.00 |
| Stoll, Nosson C. | Tax | 2008 | 195.00 | 37.00 | 7,215.00 |
| Tayter, Sarah Slosberg | Health Care | 2006 | 225.00 | 25.30 | 5,692.50 |
| Thomas, Ryan J. | Real Estate | 2008 | 195.00 | 95.00 | 18,525.00 |
| Tobias, Erika L. | Corporate | 2002 | 210.00 | 221.00 | 46,410.00 |
| Walker, Wendy E. | Real Estate | 2005 | 230.00 | 135.40 | 31,142.00 |
| Yourchock, Kimberly A. | Commercial Law, Bankruptcy, and Reorganization | 2008 | 195.00 | 329.00 | 64,155.00 |
| Zaidi, Ali | Corporate | 2004 | 210.00 | 169.50 | 35,595.00 |
| | | | | | |
| **TOTAL** | | | | **3,531.10** | **$767,292.00** |

| NAME OF PROFESSIONAL: PARALEGALS, CLERKS, LIBRARY STAFF AND NON-LEGAL STAFF | TITLE | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Barringer, Ron | Paralegal | Real Estate | $215.00 | 36.80 | $7,912.00 |
| Giddings, M. Lucile | Paralegal | Real Estate | 170.00 | 1.80 | 306.00 |
| Hammers, Katherine L. | Paralegal | Environmental | 175.00 | 1.50 | 262.50 |
| Laforgia, Kathleen | Paralegal | Litigation/Corporate | 170.00 | 5.80 | 986.00 |
| Lundberg, Brenda E. | Paralegal | Commercial Law, Bankruptcy, and Reorganization | 170.00 | 175.20 | 29,784.00 |

| | | | | | |
|---|---|---|---|---|---|
| Provenzano, Lee Ann | Paralegal | Commercial Law, Bankruptcy, and Reorganization | $170.00 | 4.70 | $799.00 |
| Underwood, Janice S. | Paralegal | Litigation | 180.00 | 1.50 | 270.00 |
| Zacny, Marie | Paralegal | Corporate | 180.00 | 1.50 | 270.00 |
| Gable, Kineret A. | Librarian | Library | 185.00 | 2.50 | 462.50 |
| Webster, Patricia | Librarian | Library | 185.00 | 5.50 | 1,017.50 |
| Fales, Aaron M. | Specialist | Tax Appeals | 300.00 | 1.00 | 300.00 |
| Hilpert, Mark A. | Tax Consultant | Tax Appeals | 365.00 | 1.00 | 365.00 |
| Marchant, Melanie K. | Clerk | Corporate | 115.00 | .60 | 69.00 |
| Keller, Robert H. | Summer Associate | | 165.00 | 6.30 | 1,039.50 |
| Seymour, Clara L. | Summer Associate | | 165.00 | 12.90 | 2,128.50 |
| Van Antwerp, Melanie | Summer Associate | | 170.00 | 42.70 | 7,259.00 |
| | | | | | |
| **TOTAL** | | | | **301.30** | **$53,230.50** |

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $384.00 | 3,846.30 | $1,476,637.50 |
| Associates | 217.00 | 3,531.10 | 767,292.00 |
| Paraprofessionals | 177.00 | 301.30 | 53,230.50 |
| | | | |
| **TOTAL** | **$299.00** | **7,678.70** | **$2,297,160.00** |

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Special Counsel for Debtors

Dated:  November 16, 2009          By: _____/s/ Robert B. Weiss_____
                                        Robert B. Weiss (Michigan Bar No. P28249)
                                   2290 First National Building
                                   660 Woodward Avenue
                                   Detroit, MI 48226
                                   Telephone: (313) 465-7596
                                   Facsimile:  (313) 465-7597
                                   Email: rweiss@hongiman.com

DETROIT.3874379.1

**Hearing Date and Time: December 16, 2009 at 2:00 p.m. (Eastern Time)**
**Objection Deadline:  December 10, 2009 at 4:00 p.m. (Eastern Time)**

Robert B. Weiss
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Telephone: (313) 465-7596
Facsimile: (313) 465-7597

*Special Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
**In Re**                                          :          Chapter 11
:
**MOTORS LIQUIDATION COMPANY** (f/k/a   :          Case No. 09-50026 (REG)
General Motors Corp.), et al.,               :          (Jointly Administered)
:
     Debtors.                                 :          Hon. Robert E. Gerber
:
----------------------------------------------------------------x

**FIRST APPLICATION OF HONIGMAN MILLER SCHWARTZ AND COHN LLP**
**AS SPECIAL COUNSEL FOR THE DEBTORS, FOR INTERIM ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Honigman Miller Schwartz and Cohn LLP (**"Honigman"**), special counsel for Motors
Liquidation Corporation f/k/a General Motors Corp., et al. (**"MLC" or "Debtors"**), for its first
application (the **"Application"**), pursuant to Section 330(a) and 331 of Title 11 of the United
States Code (the **"Bankruptcy Code"**) and Rule 2016 of the Federal Rules of Bankruptcy
Procedure (the **"Bankruptcy Rules"**), for the interim allowance of compensation for
professional services performed by Honigman for the period commencing June 1, 2009 through
and including September 30, 2009 (the **"Compensation Period"**) and for reimbursement of its
actual and necessary expenses incurred during the Compensation Period, respectfully represents:

## Relief Requested

1.      Honigman is seeking an award of $2,297,160.00 in professional fees and reimbursement of $16,799.46 for expenses incurred for the period from June 1, 2009, the commencement of the Debtors' cases, through September 30, 2009, the end of the Compensation Period.

## Background

2.      On June 1, 2009 (the **"Commencement Date"**), the Debtors each commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On June 12, 2009, the Debtors filed the Application under 11 U.S.C. §§ 327(e) and 328 Authorizing Debtors to Employ and Retain Honigman Miller Schwartz and Cohn LLP as Special Counsel For the Debtors, *Nunc Pro Tunc* to the Petition Date and the supporting Declaration of Robert B. Weiss and Disclosure Statement In Support of the Application Under 11 U.S.C. §§ 327(e) and 328(a) to Employ and Retain Honigman Miller Schwartz and Cohn LLP as Special Counsel For the Debtors, *Nunc Pro Tunc* to the Petition Date (Docket No. 951).

4.      No objections were filed to Honigman's retention, so pursuant to the Order Under 11 U.S.C. §§ 327(e) and 328(a) Authorizing the Employment and Retention of Honigman Miller Schwartz and Cohn LLP as Special Counsel to The Debtors, *Nunc Pro Tunc* To The Petition Date (Docket No. 2548), the Debtors were authorized to retain Honigman as its special counsel to render legal services in the prosecution of their Chapter 11 cases.

5.      On June 3, 2009, pursuant to Section 1102 of the Bankruptcy Code, the Office of the United States Trustee for the Southern District of New York (the **"U.S. Trustee"**) appointed the Official Committee of Unsecured Creditors (the **"Committee"**).

2

6.     The Debtors have advised Honigman that, to date, all quarterly fees due to the U.S. Trustee have been paid.

## Summary Of Professional Compensation
## And Reimbursement Of Expenses Requested

7.     This Application has been prepared in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (together the **"Local Guidelines"**), the United Stated Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the **"UST Guidelines"**), and the Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (Docket No. 3711) (the **"Administrative Order,"** and together with the Local Guidelines and the UST Guidelines, the **"Guidelines"**).  Pursuant to the UST Guidelines, the Debtors have reviewed and approved this Application and support interim allowance of the amounts requested by Honigman for professional services performed and expenses incurred during the Compensation Period.

8.     Honigman seeks allowance of interim compensation for professional services performed during the Compensation Period in the amount of $2,297,160.00, and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $16,799.46 During the Compensation Period, Honigman attorneys and paraprofessionals expended a total of 7,678.70 hours in connection with the necessary services performed.

3

9.      In accordance with the Administrative Order, Honigman received payments totaling $1,806,772.82 for the Compensation Period, which consist of $1,792,828.80 representing 80% of the fees invoiced in Monthly Statements for the periods June 1, 2009 through July 9, 2009 and $13,944.02 representing 100% of the expenses invoiced for the periods June 1, 2009 through July 9, 2009.  Honigman now seeks payment by the Debtors of (a) all amounts allowed but previously held back pursuant to the Administrative Order, (b) certain additional limited amounts not included in Monthly Statements, but (c) minus application of the Retainer (defined below).

10.     Honigman consistently monitors its charges and expenses before and after the submission of monthly fee statements for potential errors or charges that might be inappropriate, or otherwise should be reduced.  As a result, during the Compensation Period, Honigman reduced its charges by $113.00 and its expenses by $9,396.27, for a total of $9,509.27 in reductions.  Further, Honigman's special discounted rates for the Debtors represented an additional $120,960.75 in reduction of charges.  Honigman will continue to diligently monitor its charges and expenses and, where appropriate, make reductions.

11.     There is no agreement or understanding between Honigman and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

12.     As of the Commencement Date, Honigman held a fund in the amount of $583,394.66, which fund has earned $1,467.18 in interest, so that, as of November 5, 2009 the fund balance was $584,861.84, which fund constitutes a retainer (the "**Retainer**").  Honigman has since reconciled the estimated charges for professional services to be performed and expenses to be incurred in the days immediately before the Commencement Date with the actual

charges for professional services performed and expenses incurred which were billed by Honigman, and determined those fees not paid by prepetition application of retainer were $9,598.97. Honigman is requesting authority to apply the Retainer to pay these $9,598.97 in outstanding prepetition fees. After that application of the Retainer, the balance of the Retainer would be $575,262.87. The Retainer exceeds Honigman's unpaid fees and costs for the Compensation Period. Honigman is seeking leave to pay its awarded but unpaid fees and costs for the Compensation Period and its $9,598.97 in unpaid prepetition fees from the Retainer, and to deliver the remainder of the Retainer to MLC.

13.    The fees charged by Honigman in these cases are billed at a discounted rate of ninety-five percent (95%) of Honigman's 2009 standard hourly rates. Such standard fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy and bankruptcy cases in a competitive national legal market, rendering the discounted fees even more reasonable.

14.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Honigman reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

15.    Annexed hereto as **Exhibit A** is a certification regarding compliance with the Guidelines.

16.    Annexed hereto as **Exhibit B**, pursuant to the UST Guidelines, is a schedule of (a) Honigman professionals and paraprofessionals who have performed services for the Debtors during the Compensation Period, (b) the capacities in which each such individual is employed by Honigman, (c) the department in which each individual practices, (d) the hourly billing rate

5

charged by Honigman for services performed by such individuals, (e) the year in which each professional was first licensed to practice law, and (f) the aggregate number of hours expended in this matter and fees billed therefor.

17.     Annexed hereto as **Exhibit C** is a schedule specifying the categories of expenses for which Honigman is seeking reimbursement and the total amount for such expense category. An itemized schedule of all such expenses has been provided to the Debtors, the Court, the attorneys for Committee, and the U.S. Trustee.

18.     Annexed hereto as **Exhibit D**, pursuant to the UST Guidelines, is a summary of Honigman's time records billed during the Compensation Period using the project categories described below.  Honigman maintains computerized records of the time spent by all Honigman attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter 11 cases.  Copies of these computerized records are being furnished to the Debtors, the Court, the attorneys for Committee, and the U.S. Trustee in the format specified by the UST Guidelines. Due to the size of such computerized records, they are not attached to this application but are available upon request.

**Summary Of Services Performed By
Honigman During The Compensation Period**

19.     Honigman represented MLC for nearly 20 years prepetition with respect to purchasing issues, supplier and customer financial distress, insolvencies and bankruptcies, and certain other discrete areas.  In connection with the MLC case, Honigman was retained to counsel MLC in connection with all aspects of management of MLC's supply chain and the bankruptcy issues attendant thereto, and to continue representing MLC in the types of matters it had represented MCL prepetition.  For example, during the Compensation Period, Honigman represented MLC in a number of Chapter 11 cases, including Delphi, Cadence, Visteon,

6

Metaldyne and Chrysler.  Through the closing of the sale of substantially all of MLC's assets (the **"363 Transaction"**) to NGMCO, Inc. n/k/a as General Motors LLC (**"GM LLC"**), Honigman rendered substantial professional services in furtherance of the Debtors' chapter 11 cases.  Among other tasks, Honigman worked at the direction of Ms. Susanna Webber, Executive Director Global Logistics and Supply Chain (**"GPSC"**), and Christopher F. Dubay, Esq., Group Counsel for Global Purchasing and Supply Chain, in order to develop, implement and execute a supplier call center to address all of the purchasing-related aspects of the bankruptcy, including identifying Essential Vendors, negotiating Trade Agreements and establishing cure costs and managing the assumption and assignment of executory contracts from MLC to GM.

Following the consummation of the 363 Transaction, Honigman had discussions with both MLC and GM LLC, and it was agreed that Honigman's representation of MLC would be limited primarily to the resolution of certain equipment lease, utility contract and executory contract matters involving General Electric Capital Corporation (**"GECC Matters"**), but that Honigman's fees and expenses in connection with the GECC Matters would be billed to and paid by GM LLC.

20.    Services rendered by Honigman during the Compensation Period have been grouped into different project categories or task codes.  The number of hours and total compensation requested for each task code during the Compensation Period are set forth below.

a.    **Asset Analysis and Recovery - Aggregate Hours 28.00 - Total Compensation requested: $7,081.00**

- Assisted client in analyzing rights in various assets and developing and executing strategies to deal with asset.

b.    **Asset Disposition - Aggregate Hours 36.50 - Total Compensation requested: $17,219.50**

- Assisted in sale process as requested by client and general bankruptcy counsel.

7

- Handled issues with respect to GECC relating to the 363 Transaction, including resolving GECC objections to the sale.

- Assisted in Michigan law issues relating to the sale.

- Reviewed and conducted research regarding various real estate issues and consequences of transaction.

- Participated in court hearings to obtain approval of sale procedures including assumption and assignment of executory contracts and to approve sale relating to assignment and assumption of contracts.

c. **Business Operations - Aggregate Hours 1.50 - Total Compensation requested $360.00**

- answer MLC employees' questions about bankruptcy.

d. **Case Administration - Aggregate Hours 29.00 - Total Compensation requested $11,950.50**

- assist in First Day Motion hearings

- general monitoring of case

- work with client on compliance with cash management order

e. **Essential Vendor Program - Total Hours 1,755.10 - Total Compensation requested $408,617.50**

- Assisted MLC in developing and implementing its essential vendor protocol.

- Worked with MLC GPSC personnel to develop a protocol to manage GM's direct and indirect supply base, including classification and treatment of those vendors in the bankruptcy proceedings. Recognizing early on the importance of maintaining supply and the inherent fragility of the MLC supply base due to the unprecedented economic conditions that preceded MLC's filing, MLC made a decision to treat its direct material suppliers as essential and pay the pre-petition claims of those vendors in consideration of the vendors entering into Essential Vendor Trade Agreements.

- The Essential Vendor Trade Agreements served two primary functions: (1) obtaining the essential vendor's written commitment to supply GM during the pendency of MLC's bankruptcy proceeding; and (2) returning the vendors to "normalized" supply terms following the commencement of the bankruptcy.

8

- Shortly after obtaining approval of the Essential Vendor Motion from the Bankruptcy Court, MLC began in earnest the process of communicating with its supply base concerning the Essential Vendor protocol. Honigman attorneys assisted MLC with this effort in two primary areas: (1) Honigman attorneys manned the MLC call center to answer any and all questions concerning MLC's essential vendor program, including, how to obtain a trade agreement and general questions concerning completing the trade agreement process; and (2) Honigman attorneys worked with the business contacts and attorneys for over 3800 eligible direct material suppliers to MLC to finalize Trade Agreements with those suppliers as appropriate.

- Each Trade Agreement submitted to MLC was reviewed for any changes proposed by the supplier and then referred to the business team for further processing. Honigman attorneys worked closely with the involved MLC functional business leads to negotiate and finalize the Trade Agreements.

- Ultimately, MLC entered into 1,494 Trade Agreements with the assistance of Honigman attorneys.

- The importance of MLC's Essential Vendor Program to maintaining uninterrupted supply cannot be overstated. During the period from the Commencement Date through the conclusion of the 363 Transaction, MLC did not lose a single parts shipment from a direct material supplier nor did MLC prosecute before the Bankruptcy Court a single motion to show cause a supplier to compel performance in accordance with the terms of a contract. These two facts alone underscore the successful implementation of MLC's Essential Vendor protocol in which Honigman played a primary role.

- Assisted MLC in operating a supplier call center that commenced operations on the Petition Date and operated thereafter for 24 hours a day, seven days a week for the first three weeks of MLC's bankruptcy proceeding. The call center was a critical tool for MLC to communicate with its global supply base on all issues concerning Old MLC's bankruptcy proceeding, including maintaining uninterrupted supply to MLC's vehicle assembly, powertrain and stamping plants, certain of which operated on a full time basis during bankruptcy proceeding.

- The call centers were staffed with approximately 60 MLC GPSC personnel and two Honigman attorneys working in approximately three eight hour or two 12-hour shifts per day. At the inception of the bankruptcy, the call center's primary purpose was to manage all "stop ship" threats from suppliers and provide general information

concerning the bankruptcy and the bankruptcy's implications on the suppliers' obligations to MLC.

- The call center attorneys assisted the MLC business personnel in answering questions concerning the implications of the automatic stay and the requirement to continue to perform in accordance with existing contracts so as to maintain uninterrupted supply.

- The call center also answered questions concerning the bankruptcy generally, including, without limitation, where to access information concerning the bankruptcy and what to expect in terms of the bankruptcy continuing.

- During the early days of the MLC bankruptcy proceeding, the call center processed on average 300 calls per day, including answering inquiries from MLC's suppliers around the world as to the implications of the MLC bankruptcy proceeding on their obligations to MLC. By June 24, 2009, the call center had logged over 6,200 calls.

f.    **Fee/Employment Applications - Total Hours 260.30 - Total Compensation requested $83,933.50**

- Prepare and file application and disclosure to be retained, plus supplemental disclosures.

- Provide additional information requested by office of U.S. Trustee, including relating to parties objecting to 363 Transaction, receipt of prepetition retainers and prepetition transfers.

- Train professionals to comply with bankruptcy requirements.

- Prepare monthly statements consistent with requirements.

- Monitor court orders on fee procedures.

- Commence preparation of first interim fee application.

g.    **Financing - Aggregate Hours 252.90 - Total Compensation requested $97,992.00**

- Opinion letters for financing, including review of documentation as needed to render legal opinions, negotiated and finalized legal opinions with counsel to the lenders.

- Reviewed and commented on various mortgages, assignments of leases and rents given by borrowers and guarantors.

- Prepared officers' backup certificates for the opinions.

10

- Evaluation of background, development of strategy and advice regarding resolution of GE Capital financing issues.

- Research and analysis on Michigan tax law, statutory tax liens, related to financing objections from Michigan taxing authorities.

- Attention to drafting and negotiating legal opinions in connection with DIP financing and continuing loan obligations, including review of related financing, security and organizational documents, affecting either Michigan property or borrower subsidiaries incorporated in Michigan.

- Review impact of financing arrangements on various third party leases and joint ventures.

h.    **Purchasing - Aggregate Hours 75.50 - Total Compensation requested $22,868.00**

- Assist MLC in addressing a variety of purchasing issues.

i.    **Representing GM in Other Bankruptcy Cases - Aggregate Hours 52.20 - Total Compensation requested $13,500.00**

- This category included representing MLC in the Chrysler bankruptcy case, including analyzing and establishing cure amounts.

- Lear was another bankruptcy case in this category.

j.    **Executory Contracts - Total Hours 1,986.60 - Total Compensation requested $545,428.50**

- Assisted MLC in the development and refinement of the Sales Procedures governing the rejection or assumption and assignment of some 700,000 executory contracts to which MLC was a party.

- Following entry of the Sales Procedures Order, Honigman attorneys worked closely with GPSC attorneys to execute the notice procedures for executory contract assumption and assignment. In order to streamline the noticing process, MLC established an electronic contracts database and contracts website, in each case, with legal support from Honigman, in order for suppliers to access the website and obtain information concerning the (1) contracts that MLC proposed to assume and assign to GM LLC and (2) the "cure amounts" associated with the contracts.

- Following the website's launch, Honigman assisted GPSC personnel by fielding supplier questions from the call center to address the

11

myriad of issues that suppliers raised in connection with the executory contract assumption and assignment process. The questions ranged from issues concerning identification of the contracts proposed to be assumed, why certain contracts were listed and certain contracts omitted and, finally, the computation of the "cure amounts" relating thereto.

- Honigman attorneys also managed the processing of over 500 objections filed by parties to executory contracts who alleged cure disputes. In connection with dealing with these objections, Honigman organized a process to reach out to each of the objector's attorneys individually and attempt to address the issues on a business and legal level short of proceeding to a hearing on the issue at the Sale Hearing.

- Honigman also was actively involved in the process of managing the resolution of the cure objections and the execution of cure resolution agreements to formally resolve the objection and elicit withdrawal of the objection on the docket.

k.    **Delphi - Aggregate Hours 579.90 - Total Compensation requested $189,042.50**

- Negotiating and drafting of agreements between MLC, Delphi, Delphi's DIP Lenders and Platinum Equity Partners relating to GM LLC's (as successor to MLC) acquisition of Delphi's UAW "keep sites" and Delphi's global steering business.  This was done to protect GM LLC's continued supply of Delphi's component parts and assemblies.

- Negotiation and drafting of agreements between MLC and Delphi's DIP "C" tranche lenders with respect to the commercial arrangements between the parties post-effectiveness of Delphi's plan of reorganization.

- Counsel MLC with respect to executory contracts with Delphi and strategy in the Delphi bankruptcy case in general, and the ongoing business relationship between MLC and Delphi as a troubled supplier.

l.    **Tax Appeals - Total Hours 17.60 - Total Compensation requested $7,856.50**

- Prior to the Commencement Date, Honigman filed property tax appeals involving a number of jurisdictions including:  Detroit, Flint, Grand Blanc Township, Lansing, Lansing Township, Livonia, Orion Township, Pontiac, Romulus, Warren, and Ypsilanti Township.

- All of the 2006 and most of the 2007 appeals have been settled. In each jurisdiction where there have been settlements, the settlements resulted in tax reductions.

- There are a number of 2008 appeals pending as well as the numerous appeals recently filed in May of 2009.

- During the Compensation Period, Honigman continued work on resolving the pending appeals.

m.   **Real Estate - Total Hours 68.90 - Total Compensation requested $28,479.50**

- Review of principal real estate documents affecting the downtown Detroit Renaissance Center and related properties, including Renaissance Center Phase I, Renaissance Center Phase II, Millender Center, Beaubien Deck, Marriott Hotel and Marriott Courtyard, to evaluate possible restrictions on transfers, needs for third party consents and approvals, master leasing of Renaissance Center and structural issues, and preparation, negotiation of certain consents and amendments.

- Develop proposals and advice regarding lessening impact of Michigan transfer tax obligations in the course of Michigan property transfers.

- Complete conveyance of surplus properties in New Center area.

- Work on disposition of Arizona assets, including water rights, leases in Yuma, Mesa.

- Work on relocation of a dealership in Manhattan.

- General coordination of real estate dispositions in Michigan and certain other leasing matters.

- Advice regarding Saturn of Harlem lease, Harlem bonds.

n.   **Litigation - Total Hours 129.80 - Total Compensation requested $38,763.50**

- Prepetition, Honigman represented MLC and affiliates in litigation in Michigan and around the country. Honigman filed notices of automatic stay where applicable and assisted in analysis of which actions should be or would be continued despite the automatic stay.

- Honigman analyzed whether certain actions should be removed.

13

- Honigman evaluated the applicability of the automatic stay as it relates to Weber's counterclaim against MLC and the merits of Weber's counterclaim against MLC.

- Honigman researched jurisdiction over MLC and GM Mexico in the Weber litigation in the event that the automatic stay applied or MLC was dismissed

- Litigation in the Bill Heard's bankruptcy cases in the United States Bankruptcy Court in the Northern District of Alabama continued over, among other issues, MLC's rights in escrow accounts established prepetition, assertions MLC held funds in constructive trust and the applicability of the MLC automatic stay.

o.    **Tax - Aggregate Hours 263.00 - Total Compensation requested $104,054.50**

- Work on Michigan Department of Treasury's sales and use tax audit.

- Work on damages phase and appellate issues in use tax refund litigation against Michigan Department of Treasury.

- Advise regarding Michigan sales and use tax consequences from 363 Transaction.

- Appeal of adverse Michigan Court of Claims decision in sales tax bad debt refund litigation.

p.    **Environmental - Aggregate Hours 12.90 - Total Compensation requested $5,281.50**

- Assembling documents related to the ultimate closure of the Windiate Park/Pengelly Road site, preparing reports on the status of the matter with respect to the positions of the City of Flint and the Michigan Department of Environmental Quality.

- Conference with the client concerning the status of the Terrells' replacement trailer installation, communication from the Assistant Attorney General for the State of Indiana regarding the status of the Bedford natural resource damages proposed settlement with the State of Indiana natural resource trustees and the United States Department of Interior.

q.    **Saturn - Aggregate Hours 91.80 - Total Compensation requested $35,251.50**

14

- Negotiation and drafting of various agreements in connection with the a proposed sale of the Saturn brand, including the proposed Master Agreement, Vehicle Supply Agreement, Transition Services Agreement, Service Parts Agreement, Spring Hill Lease Agreement, and related exhibits, schedules and other documentation.

r.    **Hummer - Total Hours 472.60 - Total Compensation requested $180,443.50**

- The negotiation and drafting of transaction documents for the proposed sale of certain Hummer assets, including:

  - Assisting with due diligence activities.

  - Structuring the terms upon which GM would supply H2 and H3 vehicles to the purchaser.

  - Structuring and documenting the various services to be provided by GM under the Transition Services Agreement

  - Preparation and drafting of the Master Agreement, H2 Supply Agreement, H3 Assembly Agreement, After Sales Service Parts Supply Agreement, and Transition Services Agreement with the purchaser, and related exhibits and schedules.

s.    **Troubled Suppliers - Total Hours 1,564.60 – Total Compensation Requested $499,036.50**

- Honigman represented MLC in all aspects of its relationships with financially distressed suppliers, which included the following: developing and implementing legal strategies to protect MLC's interests; participation in bankruptcy proceedings involving suppliers where it was necessary for MLC to provide financial accommodations to insure an uninterrupted supply of goods and services; negotiation and documentation of supply protections for MLC should the insolvent suppliers be unable to meet their obligations to MLC; addressing disputes regarding tooling ownership; negotiating the purchase of inventory, equipment and intellectual property necessary for MLC production; and the negotiation and preparation of commercial agreements with alternate suppliers.

- Selected specific Troubled Supplier Matters are described below to demonstrate the type of work performed.  The matters described below are included in the overall Troubled Supplier totals above:

  (i)    Fort Wayne Foundry - matter hours 86.20 - matter compensation requested $26,443.50

15

- Negotiate terms and plan of reorganization with Fort Wayne Foundry and treatment of MLC's secured claim.

(ii)    BBI Enterprises, LP - matter hours 37.30 - matter compensation requested $10,912.50

- Negotiate and draft wind-down agreement.

(iii)    Metaldyne - matter hours 62.70 - matter compensation requested $19,159.00

- Represent MLC in Metaldyne's bankruptcy, including negotiating and drafting financing documents

(iv)    Henze Stamping & Manufacturing, Inc. - matter hours 29.20 - matter compensation requested $8,629.50

- Representation throughout MLC's exit from the supplier, including preparation for litigation to obtain possession of MLC's tooling.

(v)    Checker Motor - matter hours 14.90 - matter compensation requested $4,246.50

- Represent MLC in Checker's bankruptcy, including negotiating and drafting wind-down agreement.

(vi)    ImagePoint, Inc. - matter hours 41.90 - matter compensation requested $14,202.50

- Representation in connection with the cessation of operations by dealer sign supplier to MLC (and through MLC, to MLC's dealers), including removal of MLC-owned property necessary for MLC's sign leasing arrangements with dealers.

- Participation in the supplier's bankruptcy proceedings.

- Worked to resolve several hundred claims (including lien claims) asserted against MLC property and/or the assets of MLC dealers by unpaid subcontractors.

(vii)    EDSCHA, A.G. - matters hours 28.00 - matter compensation requested $9,871.50

- Representation in connection with agreements and arrangements to assure that this insolvent supplier (with operations in the U.S., Canada and Mexico) could continue production until GM's new sources could assume production.

16

(viii)   Noble International – matter hours 83.10 – matter compensation requested $34,694.00.

- MLC and other customers were required to provide pre-petition and thereafter DIP financing to insure continued production by this supplier.

- The supplier ultimately sold some of its operations and liquidated the balance, requiring significant MLC involvement to assure that MLC's supply of component parts was uninterrupted.

- Negotiated accommodation agreement.

(ix)   James Group Ohio LLC – matter hours 21.20 - matter compensation requested $5,387.00.

- Lengthy workout discussion.

(x)   Visteon Corporation – matter hours 493.80 – matter compensation requested $151,422.00.

- The resolution of certain commercial disputes between MLC and Visteon;

- Negotiation of the terms of an orderly resourcing of certain MLC business from Visteon to other suppliers;

- Negotiation of the terms pursuant to which Visteon would continue production for MLC in North America, including the accommodations that MLC would provide to Visteon in connection with such continued production;

- The drafting of an accommodation agreement and access and security agreement among MLC, Visteon and certain of Visteon's non-debtor subsidiaries and/or affiliates;

- Negotiation of the terms of a debtor-in-possession financing arrangement to be provided to Visteon in its chapter 11 case, although same was not ultimately provided; and

- The general representation of MLC in Visteon's chapter 11 case.

(xi)   American Axle – matter hours 142.40 – matter compensation requested $53,839.50.

- Represented MLC in connection with negotiations between representatives of MLC and American Axle and Manufacturing,

17

Inc. ("AAM") in connection with the resolution of certain commercial disputes between MLC and AAM.

Also represented MLC in negotiations concerning the terms and conditions under which MLC agreed to provide a package of financial support for AAM, as well as the accommodations that MLC would be granted in consideration of extending such support to AAM.

21.     The professional services performed by Honigman on behalf of the Debtors during the Compensation Period required an aggregate expenditure of approximately 7,678.70 recorded hours by Honigman's partners, associates, and paraprofessionals.  Of the aggregate time expended, 3,846.30 recorded hours were expended by partners, 3,531.10 recorded hours were expended by associates, and 301.30 recorded hours were expended by paraprofessionals.

22.     During the Compensation Period, Honigman billed the Debtors for time expended by attorneys based on hourly rates ranging from $195 to $565 per hour.   Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $304 (based on 7,377.40 recorded hours for attorneys at Honigman's discounted billing rates in effect at the time of the performance of services).

23.     Exhibit B sets forth each Honigman professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by Honigman for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

24.     As set forth in Exhibit D hereto, Honigman disbursed $16,799.46 as expenses. Prepetition Debtors established policies for the reimbursement of expenses which Honigman followed post-petition.   These policies are consistent with the Guidelines for bankruptcy professionals.  These policies include:

(a)    reimbursement for reasonable and actual out-of-pocket payments made to third-party vendors, with no mark-up or surcharges added (with inside photocopy charges limited to seven cents per page);

(b)    no reimbursement for the following:

- Word processing
- Overtime charges
- Secretarial/clerical charges
- Fax communications (except long distance telephone charges)
- Local personal transportation (taxi/limousine to/from home)
- Local telephone charges
- Local meals
- Books, subscriptions
- Membership fees
- Office supplies
- Storage charges; and

(c)    The Firm does not bill for long distance telephone charges other than for conference calls using an outside vendor.

## The Requested Compensation Should Be Allowed

25.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.* § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of , a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

26.     In the instant case, Honigman respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the Debtors' orderly administration of their estates.

27.     Additionally, Honigman's combined activities were largely aimed at maintaining the operation of Debtors' business to preserve its value for the sale of assets to GM LLC and the sale of assets such as Debtors' Hummer and Saturn businesses, Debtors' acquisition of assets from Delphi, the representation of Debtors in other bankruptcy cases, and litigation to recover assets, such as tax litigation.

28.     Honigman further submits the compensation requested herein is commensurate with the complexity, importance and nature of the problems, issues, and tasks involved. The professional services were performed efficiently and in an intense expedited basis. Whenever possible, Honigman sought to minimize the costs of its services to the Debtors by staffing talented junior attorneys and paraprofessionals to handle the more routine aspects of case administration.

29.     In sum, the services rendered by Honigman were necessary and beneficial to the Debtors' estates, were consistently performed in a timely manner, and reasonable in light of the

value of such services to the Debtors, their estates, and all parties in interest.  Therefore, approval

of the compensation for professional services and reimbursement of expenses sought herein is

warranted.

30.     No agreement or understanding exists between Honigman and any other person or

firm for the division of any compensation requested in this matter other than agreements or

understandings relating to the division of compensation among the partners of Honigman.

Wherefore, Honigman requests that the Court enter an order:

(i)     approving and allowing fees in the amount of $2,297,160.00 and authorizing

reimbursement of expenses in the amount of $16,799.46 for services rendered by Honigman as

Special Counsel to the Debtors, for a total interim amount of $2,313,959.46;

(ii)    authorizing Honigman to apply $9,598.97 of the Retainer to pay Honigman's

outstanding prepetition fees which were reconciled postpetition.

(iii)   authorizing and directing the Debtors to pay Honigman the full balance due of all

amounts awarded herein, after credit for any interim payments received and Retainer applied;

(iv)    authorizing Honigman to apply its remaining Retainer for payment of the awards,

and deliver the balance of the Retainer to MLC; and

(v)     granting such additional relief as is just and equitable.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Special Counsel for Debtors

Dated:  November 16, 2009          By: _____/s/ Robert B. Weiss_____
                                        Robert B. Weiss (Michigan Bar No. P28249)
                                   2290 First National Building
                                   660 Woodward Avenue
                                   Detroit, MI 48226
                                   Telephone: (313) 465-7596
                                   Facsimile:  (313) 465-7597
                                   Email: rweiss@hongiman.com

21

## DECLARATION

Robert B. Weiss declares that he is a partner of the law firm of Honigman Miller Schwartz and Cohn LLP, special counsel to the Debtors, that he has read the foregoing Application for compensation by him subscribed for and on behalf of said firm, he is authorized to do so, he knows the contents thereof, and that the same is true to the best of his knowledge and belief.

Declarant further states that the law firm of Honigman Miller Schwartz and Cohn LLP has no agreement with any person for a division of the fees requested in the application other than in accordance with the Partnership Agreement existing by and between the partners of his law firm.

I declare under penalty of perjury that the foregoing is true and correct.

ROBERT B. WEISS

Executed at Dearborn, Michigan, on November 16, 2009.

DETROIT.3862420.5