UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

## SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

### FIRST INTERIM FEE APPLICATION

| | |
|---|---|
| Name of Applicant: | **Butzel Long, a professional corporation** |
| Time Period: | June 10, 2009 through and including September 30, 2009 |
| Role in the Case: | Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation |
| Current Application: | Total Fees Requested: $237,775.50<br>Total Expenses Requested: $21,265.87 |
| Prior Applications: | N/A |

SUMMARY OF FIRST INTERIM FEE APPLICATION
OF BUTZEL LONG FOR SERVICES RENDERED FOR
THE PERIOD JUNE 10, 2009 THROUGH SEPTEMBER 30, 2009

| NAME OF PROFESSIONAL SHAREHOLDERS AND OF COUNSEL | DEPARTMENT[1] | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Eric Fisher | LIT, BK | 1996 | $525.00 | 116.4 | $61,110.00 |
| Thomas B. Radom | BK | 1974 | $475.00 | 3.1 | $1,472.50 |
| Barry N. Seidel | BK | 1978 | $725.00 | 101.1 | $73,297.50 |
| E. Dale Wilson | RE | 1999 | $285.00 | 6.6 | $1,881.00 |
| Robert Sidorsky | LIT, BK | 1983 | $535.00 | 5.0 | $2,675.00 |
| Total Shareholders and Of Counsel: | | | | 232.2 | $140,436.00 |

| NAME OF PROFESSIONAL SENIOR ATTORNEYS AND ASSOCIATES | DEPARTMENT | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| William J. Kohler | CORP | 1986 | $410.00 | 7.9 | $3,239.00 |
| Katie L. Cooperman | CORP | 2006 | $385.00 | 44.8 | $17,248.00 |
| Katie L. Cooperman | CORP | 2006 | $350.00[2] | 138.2 | $48,370.00 |
| Orlee Goldfeld | LIT | 1999 | $360.00 | 37.2 | $13,392.00 |
| Andre Garron | SA | * | $175.00 | 5.3 | $927.50 |
| Max Heuer | SA | * | $175.00 | 1.0 | $175.00 |
| Total Senior Attorney and Associates: | | | | 234.4 | $83,351.50 |

---

[1] BK – Bankruptcy, CORP – Corporate, LIT – Litigation, RE – Real Estate, SA – Summer Associate, * Not yet admitted to the bar.

[2] Butzel Long mistakenly billed various professionals at reduced rates for the June 10, 2009 – July 31, 2009 period (whereby Butzel Long provided an unintended benefit of $7,139 to the Debtors' estates). As of the period beginning September 1, 2009, Butzel Long has corrected this mistake and billed such professionals at the rates approved in connection with Butzel Long's Retention Application.

| NAME OF PROFESSIONAL PARALEGALS | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Frederick Capria | LIT | $235.00 | 52.4 | $12,314.00 |
| Deanna Mejia | LIT | $140.00 | 6.2 | $868.00 |
| Michelle Ann Pleban | LIT | $155.00 | 5.2 | $806.00 |
| **Total Paralegals:** | | | 63.8 | $13,988.00 |

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Shareholders and Of Counsel | $604.81 | 232.2 | $140,436.00 |
| Senior Attorneys and Associates | $350.89 | 234.4 | $82,249.00 |
| Paralegals | $219.25 | 63.8 | $13,988.00 |
| **Total Fees Incurred** | | 530.4 | $237,775.50 |
| **Blended Attorney Rate** | $477.25 | | |
| | | | |
| **Total Fees Requested** | | 530.4 | $237,775.50 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>　　MOTORS LIQUIDATION COMPANY, *et al.*,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 09-50026<br>(REG)<br><br>(Jointly Administered) |

**APPLICATION OF BUTZEL LONG, A PROFESSIONAL COPORATION,
AS SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY,
f/k/a GENERAL MOTORS CORPORATION, FOR INTERIM ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FROM JUNE 10, 2009 THROUGH SEPTEMBER 30, 2009**

　　　　Butzel Long, a professional corporation ("BL"), Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation (the "Committee"), for its first application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for interim allowance of compensation for professional services performed by BL for the period commencing June 10, 2009, through and including September 30, 2009 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period, respectfully represents:

**PRELIMINARY STATEMENT**

　　　　1.　　BL's reputation as a leading law firm in the automotive industry is well-suited to its representation of the Committee. As Special Counsel to the Committee, BL renders its services on an "as-needed" basis. In connection with its representation of the Committee during

the Compensation Period, BL rendered significant advice to the Committee concerning automotive supplier issues and commenced an adversary proceeding on the Committee's behalf.

2.   BL's efforts to advise and represent the Committee during the Compensation Period, and the professional services performed and expenses incurred in connection therewith, were actual and necessary to preserve and protect the interests of the unsecured creditors of Motors Liquidation Company, f/k/a General Motors Corporation (the "Debtors"). BL's charges for professional services performed and expenses incurred are reasonable under the applicable standards. BL respectfully asks that the Court grant the Application and allow interim compensation for professional services performed and reimbursement of expenses as requested.

## BACKGROUND

3.   The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of New York.

4.   On June 3, 2009, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee, pursuant to Section 1102 of the Bankruptcy Code.

5.   On June 30, 2009, the Committee filed an application (the "Retention Application") with this Court pursuant to Section 1103(a) of Title 11 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules for entry of an order authorizing the employment of BL as Special Counsel to the Committee, nunc pro tunc to June 10, 2009, all as more fully described in the Retention Application (Docket No. 2847).

6.   No objections were filed to BL's retention and, on July 13, 2009, this Court entered an order authorizing the employment of BL as Special Counsel to the Committee (Docket No. 3124). The Court's Order went on to state:

2

> Butzel Long shall be compensated for Special Counsel Services performed as of June 10, 2009, and expenses incurred in connection therewith, subject to the approval of this Court and compliance with Section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of this Court, the United States Trustee's Guidelines for Fees and Disbursements issued by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court, for professional services rendered and expenses incurred by Butzel Long;

A copy of the above order is attached hereto as Exhibit A and is incorporated herein by reference.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

7. This Application has been prepared in accordance with the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and this Court's Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, entered August 7, 2009 (Docket No. 3711) (the "Administrative Order," and together with the Local Guidelines and the UST Guidelines, the "Guidelines"). A copy of the Administrative Order is attached hereto as Exhibit B, and incorporated herein by reference.

3

8. Pursuant to the procedures outlined in the Administrative Order, BL has served a statement of its fees and disbursements accrued for its professional services in the above-captioned matter for the period commencing June 10, 2009 through and including August 31, 2009 (the "First Monthly Statement") and for the period commencing September 1, 2009 through and including September 30, 2009 (the "September Monthly Statement" and together with the First Monthly Statement, the "BL Monthly Statements") upon the U.S. Trustee, the Debtors, the attorneys for the Debtors and the attorneys for the Committee (collectively, the "Notice Parties"). The Administrative Order provides that the Notice Parties shall have at least 15 days after receipt of a monthly statement to review it, and shall serve any objections to the monthly statement no later than 45 days following the month for which compensation is sought. As of the filing of this Application, BL has received no notice of objection to either of the BL Monthly Statements from any of the Notice Parties in the manner prescribed by the Administrative Order.[1]

9. BL seeks allowance of interim compensation for professional services performed during the Compensation Period in the amount of $237,775.50 and for expenses incurred in the rendition of such services in the amount of $21,265.87. During the Compensation Period, BL professionals and paraprofessionals expended a total of 530.4 hours in connection with the necessary services performed.

10. As of the date of this Application, BL has not received any payments for services rendered and expenses incurred during the Compensation Period. Accordingly, BL now seeks payment from the Debtors' estates of all amounts allowed pursuant to the Administrative Order.

---

[1] A representative of AlixPartners LLP, on behalf of the Debtors' estates, has requested an explanation from BL as to why its charges relating to BL retention issues exceed ten percent (10%) of the First Monthly Statement. BL has advised AlixPartners LLP that the ten percent (10%) level was exceeded because it was important to the Committee that BL be retained to undertake matters for which Kramer Levin Naftalis & Frankel LLP had a conflict and, once retained, BL was, during the period covered by the First Monthly Statement, primarily tasked with supplier issues which did not require BL to expend many hours of legal time.

4

11.    There is no agreement or understanding between BL and any other person, other than members of BL, for the sharing of compensation to be received for services rendered in these cases. During the Compensation Period, BL has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

12.    The fees charged by BL in these cases are billed in accordance with BL's existing billing rates and procedures in effect during the Compensation Period.[2] The rates BL charges for the services rendered by its professionals and paraprofessionals in these cases are the same rates BL charges for professional and paraprofessional services rendered in comparable bankruptcy and nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and nonbankruptcy cases in a competitive national legal market.

13.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, BL reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

14.    Annexed hereto as Exhibit C is a certification regarding compliance with the Guidelines. As of the time this Application was filed, the chair of the Committee was unable to review this Application.

15.    Annexed hereto as Exhibit D, pursuant to the UST Guidelines, is a schedule of BL professionals and paraprofessionals who have performed services for the Committee during the

---

[2] BL mistakenly billed various professionals at reduced rates for the period covered by the First Monthly Statement (whereby BL provided an unintended benefit of $7,139 to the Debtors' estates). BL reserves its right to seek recovery of this amount at a later date. As of the September Monthly Statement, BL has corrected this mistake and billed such professionals at the rates approved in connection with the Retention Application.

5

Compensation Period, the capacities in which each individual is employed by BL, the department in which each practices, the hourly billing rate charged by BL for the services performed by such individuals, the year in which each professional was first licensed to practice law, and the aggregate number of hours expended in these matters and the fees billed therefor.

16. Annexed hereto as Exhibit E is a schedule specifying the categories of expenses for which BL is seeking reimbursement and the total amount for each such expense category. An itemized schedule of all such expenses has been provided to the Debtors, the Court, the attorneys for the Committee and the U.S. Trustee.

17. Annexed hereto as Exhibit F, pursuant to the UST Guidelines, is a summary of BL's time records relating to the charges for services rendered during the Compensation Period using project categories hereinafter described. BL maintains computerized records of the time spent by all BL attorneys and paraprofessionals in connection with its engagement by the Committee.

18. Copies of these computerized records, annexed hereto as Exhibit G, have been furnished to the Debtors, the attorneys for the Debtors, the attorneys for the Committee, the Court and the U.S. Trustee in the format specified by the UST Guidelines.

### SUMMARY OF SERVICES PERFORMED BY BL DURING THE COMPENSATION PERIOD

19. The following is a summary of the significant professional services rendered by BL during the Compensation Period, organized in accordance with BL's internal system of project codes. As previously noted, BL's services are requested on an "as-needed" basis which, as of the date of this Application, has been generally infrequent.

    a.     Retention of BL. The conflict check process performed by BL in connection with the Retention Application was extensive and complex. In particular, BL

6

was asked to perform a conflict check with regard to more than 2,200 different entities. Because this process required great care and coordination in order to ensure that there were no disabling conflict issues with regard to the hundreds of automotive suppliers that are existing clients of BL, BL spent a significant amount of time preparing the Retention Application.

   b.  Supplier Issues. BL participated in many conference calls concerning automotive supplier issues, such as supplier contracts and assumption matters.

   c.  JPMorgan Avoidance Complaint. On July 31, 2009, the Committee commenced an adversary proceeding (the "Adversary Proceeding") challenging, *inter alia*, the security interest of more than 400 lenders (the "Defendants") to a certain term loan agreement, dated as of November 29, 2006, as amended by that certain first amendment dated as of March 4, 2009 (as amended, the "Term Loan Agreement"), and sought to recover in excess of $1.4 billion from each of the Defendants consistent with its percentage interest in the loan made under the Term Loan Agreement. BL participated in conference calls with the Committee concerning the Adversary Proceeding and drafted memoranda to the Committee in connection therewith. In addition, BL and JPMorgan Chase Bank, N.A., administrative agent and a lender under the Term Loan Agreement, have begun discovery.

  20.  The professional services performed by the professionals and paraprofessionals of BL were rendered by the Bankruptcy, Corporate and Litigation Departments in numerous offices. The professional services performed by BL on behalf of the Committee during the Compensation Period required an aggregate expenditure of 530.4 recorded hours by BL's professionals and paraprofessionals. Of the aggregate time expended, 232.2 recorded hours were

7

expended by shareholders and counsel of BL, 228.1 recorded hours were expended by senior attorneys and associates of BL, 6.3 recorded hours were expended by summer associates of BL and 63.8 recorded hours were expended by paraprofessionals of BL.

21.     During the Compensation Period, BL billed the Committee for time expended by attorneys based on hourly rates ranging from $285 to $725 per hour.

## ACTUAL AND NECESSARY DISBURSEMENTS OF BL

22.     As set forth in Exhibit E hereto, BL has disbursed $21,318.21 as expenses incurred in providing professional services during the Compensation Period. These expenses are actual, reasonable and necessary in light of the size and importance of the issues faced by the Committee.

23.     The time constraints facing the Committee, particularly in connection with the Adversary Proceeding, have required BL's attorneys and other employees to devote time during the evenings and on weekends to perform legal services on behalf of the Committee. Such services were essential to meet deadlines.

24.     Consistent with firm policy, attorneys and other employees of BL who worked late into the evenings were reimbursed for their reasonable meal costs and their cost for transportation from the office to home. BL has not charged the Committee for any meal or transportation costs incurred while working on weekends. The reimbursement amounts do not exceed those set forth in the UST Guidelines.

25.     With respect to photocopying expenses, BL charges all of its clients $.18 per page. Overtime expenses totaled less than $90 for 1.5 hours of necessary secretarial services after normal closing hours. Each of these categories of expenses does not exceed the maximum rate set forth in the UST Guidelines. The actual expenses incurred in providing professional

8

services were necessary, reasonable and justified under the circumstances to serve the needs of the Committee and the other unsecured creditors of the Debtors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

26.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." Id. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

27.     In the instant case, BL respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application

9

were necessary for, and beneficial to, the preservation, protection and prosecution of the Committee's rights and claims under this chapter 11 proceeding. Such services and expenditures were necessary to and in the best interests of the Committee. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

28. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, BL sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys, summer associates and paraprofessionals to handle more routine aspects of case administration. Groups of the same BL attorneys were utilized for similar tasks in these cases to minimize the costs of intra-BL communication and education about the Committee's circumstances.

29. In sum, the services rendered by BL were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## CONCLUSION

30. BL respectfully requests the Court enter an Order authorizing (i) an interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred during the Compensation Period in the amount of $259,041.37, consisting of $237,775.50, representing 100% of fees incurred during the Compensation Period, and reimbursement of $21,265.87 representing 100% of actual and necessary expenses incurred

10

during the Compensation Period; and (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to BL's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application.

WHEREFORE, BL respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
November 16, 2009

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: _____
Barry N. Seidel
Eric B. Fisher
380 Madison Avenue
New York, NY 10017
(212) 818-1110 Telephone
(212) 818-0494 Fax