**Hearing Date: December 16, 2009**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Joseph P. Gromacki (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Special Counsel for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11 Case No.
                                                    :
MOTORS LIQUIDATION COMPANY, *et al.*,               :        09-50026 (REG)
                                                    :
                               Debtors.             :        (Jointly Administered)
------------------------------------------------------------------------x

## FIRST INTERIM FEE APPLICATION OF
## JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION
## FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicant: | Jenner & Block LLP |
| Period for which Compensation and Reimbursement is Sought: | June 1, 2009 to September 30, 2009 |
| Role in the Case: | Attorneys for Debtors and Debtors in Possession |
| Date of Retention (Jenner & Block): | June 26, 2009, *nunc pro tunc* June 1, 2009 |

| Amount of Compensation and Expense Reimbursement Sought As Actual, Reasonable and Necessary: | Fees Requested: | $4,950,322.95[1] |
| | Expenses Requested: | $270,439.26 |
| Prior Amounts Requested: | Fees Previously Requested: | $0.00 |
| | Fees Previously Awarded: | $0.00 |
| | Expenses Previously Requested: | $0.00 |
| | Expenses Previously Awarded: | $0.00 |

---

[1] This reflects the standard pre-petition billing rate which Jenner & Block charged General Motors Corporation. This total also reflects Jenner & Block's voluntary reduction of half its non-working travel time, as well as other time that it has voluntarily written off or not billed.

Summary of Time Recorded in Connection With Rendering
Services to the Debtors for June 1, 2009 - September 30, 2009

ATTORNEYS

| Position | Name | Admitted to Practice | Rate | Time | Amount |
|---|---|---|---|---|---|
| Partner | Catherine Abbott | 2003 | 450 | 139.3 | 62,685.00 |
| Partner | Donald E. Batterson | 1994 | 575 | 143.0 | 82,225.00 |
| Partner | Brain R. Boch | 1995 | 548 | 274.1 | 150,206.80 |
| Partner | John F. Cox | 1995 | 500 | 144.3 | 72,150.00 |
| Partner | Geoffrey M. Davis | 1992 | 520 | 140.2 | 72,904.00 |
| Partner | W. Jay DeVecchio | 1978 | 602 | 0.8 | 481.60 |
| Partner | Christopher Dickinson | 1988 | 600 | 1.0 | 600.00 |
| Partner | Larry P. Ellsworth | 1973 | 560 | 5.6 | 3,136.00 |
| Partner | Bill S. Forcade | 1976 | 493 | 18.7 | 9,219.10 |
| Partner | Peter M. Gaines | 1975 | 675 | 30.8 | 20,790.00 |
| Partner | Robert L. Graham | 1972 | 675 | 180.7 | 121,972.50 |
| Partner | E. Lynn Grayson | 1986 | 580 | 164.4 | 95,352.00 |
| Partner | David M. Greenwald | 1986 | 540 | 4.9 | 2,646.00 |
| Partner | Joseph P. Gromacki | 1992 | 712 | 578.3 | 411,749.60 |
| Partner | David A. Handzo | 1981 | 625 | 14.5 | 9,062.50 |
| Partner | Philip L. Harris | 1983 | 438 | 77.5 | 33,945.00 |
| Partner | Donald S. Horvath | 1984 | 500 | 227.1 | 113,550.00 |
| Partner | Keri Holleb Hotaling | 2000 | 465 | 1.6 | 744.00 |
| Partner | Edward Jackson | 1988 | 493 | 4.5 | 2,218.50 |
| Partner | Paul F. Jock | 1970 | 763 | 1.0 | 763.00 |
| Partner | Christian E. Kimball | 1983 | 723 | 30.0 | 21,690.00 |
| Partner | Vincent E. Lazar | 1990 | 550 | 0.5 | 275.00 |
| Partner | S. Tony Ling | 1996 | 548 | 157.3 | 86,200.40 |
| Partner | Michael K. Lowman | 1993 | 520 | 0.8 | 416.00 |
| Partner | John H. Mathias, Jr | 1972 | 700 | 0.8 | 560.00 |
| Partner | Heather D. McArn | 1992 | 525 | 28.3 | 14,857.50 |
| Partner | Steven R. Meier | 1998 | 520 | 3.1 | 1,612.00 |
| Partner | Thomas A. Monson | 1985 | 550 | 31.5 | 17,325.00 |
| Partner | Gail H. Morse | 1982 | 550 | 1.2 | 660.00 |
| Partner | Daniel R. Murray | 1970 | 767 | 267.0 | 204,789.00 |
| Partner | Thomas C. Newkirk | 1966 | 728 | 16.5 | 12,012.00 |
| Partner | Farhad K. Patel | 1997 | 520 | 27.0 | 14,040.00 |
| Partner | Adam Petravicius | 1995 | 520 | 53.3 | 27,716.00 |

| Position | Name | Admitted to Practice | Rate | Time | Amount |
|---|---|---|---|---|---|
| Partner | Edward G. Quinlisk | 2000 | 465 | 379.2 | 176,328.00 |
| Partner | Matthew J. Renaud | 1992 | 575 | 143.7 | 82,627.50 |
| Partner | Donald I. Resnick | 1975 | 675 | 222.5 | 150,187.50 |
| Partner | William L. Scogland | 1975 | 767 | 21.6 | 16,567.20 |
| Partner | Raymond D. Sinnapan | 1997 | 465 | 23.6 | 10,974.00 |
| Partner | Robert R. Stauffer | 1986 | 575 | 42.8 | 24,610.00 |
| Partner | Joanne H. Sweeney | 1999 | 425 | 29.0 | 12,325.00 |
| Partner | Michael S. Terrien | 1992 | 575 | 228.6 | 131,445.00 |
| Partner | William L. Tolbert | 1989 | 712 | 436.1 | 310,503.20 |
| Partner | Patrick J. Trostle | 1992 | 700 | 39.7 | 27,790.00 |
| Partner | Anton R. Valukas | 1968 | 813 | 13.0 | 10,569.00 |
| Partner | Michael T. Wolf | 1998 | 520 | 291.2 | 151,424.00 |
| Partner | Elaine Wolff | 1979 | 625 | 168.7 | 105,437.50 |
| **Partner Total** | | | | **4,809.3** | **2,879,341.40** |
| Associate | David K. Anna | 2007 | 274 | 446.6 | 122,368.40 |
| Associate | Kristen M. Boike | 2006 | 274 | 35.8 | 9,809.20 |
| Associate | Patricia L. Boye-Williams | 2003 | 383 | 128.8 | 49,330.40 |
| Associate | Herbert C. Brown, Jr. | 2008 | 274 | 20.3 | 5,562.20 |
| Associate | Christine L. Childers | 2002 | 411 | 38.4 | 15,782.40 |
| Associate | Robert H. Clarke | 2003 | 383 | 46.1 | 17,656.30 |
| Associate | Jonathan D. Conley | 2008 | 274 | 15.9 | 4,356.60 |
| Associate | Erik R. Daly | 2007 | 274 | 100.2 | 27,454.80 |
| Associate | Michael L. DeMarino | 2009 | 274 | 257.0 | 70,418.00 |
| Associate | Jennifer L. Dlugosz | 2006 | 274 | 16.8 | 4,603.20 |
| Associate | Brandon J. Dodgen | 2008 | 274 | 138.0 | 37,812.00 |
| Associate | Alexandra E. Dowling | 2006 | 274 | 23.9 | 6,548.60 |
| Associate | Elizabeth A. Edmondson | 2009 | 274 | 5.5 | 1,507.00 |
| Associate | Frank J. Eichenlaub, IV | 2002 | 411 | 344.3 | 141,507.30 |
| Associate | Thomas R. Failor | 2002 | 411 | 53.1 | 21,824.10 |
| Associate | Melissa C. Fogerty | 2005 | 285 | 38.7 | 11,029.50 |
| Associate | Ilya Fradkin | 2006 | 274 | 66.0 | 18,084.00 |
| Associate | Casey T. Grabenstein | 2006 | 274 | 19.3 | 5,288.20 |
| Associate | L. Taylor Hall | 2007 | 274 | 105.4 | 28,879.60 |
| Associate | Ryan K. Harding | 2001 | 383 | 13.9 | 5,323.70 |
| Associate | Marc E. Harrison | 2006 | 274 | 132.5 | 36,305.00 |
| Associate | Matthew Hersh | 1999 | 438 | 38.6 | 16,906.80 |
| Associate | Derek A. Higginbotham | 2008 | 274 | 252.0 | 69,048.00 |

| Position | Name | Admitted to Practice | Rate | Time | Amount |
|---|---|---|---|---|---|
| Associate | Carletta F. Higginson | 2004 | 383 | 1.2 | 459.60 |
| Associate | Mercedes M. Hill | 2005 | 285 | 302.3 | 86,155.50 |
| Associate | Melissa M. Hinds | 2003 | 383 | 18.4 | 7,047.20 |
| Associate | Nancy C. Jacobson | 2007 | 274 | 0.8 | 219.20 |
| Associate | Erik M. Jarmusz | 2008 | 274 | 204.5 | 56,033.00 |
| Associate | Michael J. Kelly | 2006 | 274 | 3.0 | 822.00 |
| Associate | Joseph D. Kline | 2008 | 274 | 55.1 | 15,097.40 |
| Associate | Gregory S. Knudsen | 2008 | 274 | 376.3 | 103,106.20 |
| Associate | Matthew R. Kopp | 2008 | 274 | 174.0 | 47,676.00 |
| Associate | Jeffrey D. Larson | 2006 | 274 | 21.8 | 5,973.20 |
| Associate | Anna W. Margasinska | 2008 | 274 | 13.7 | 3,753.80 |
| Associate | Kara E. Martin | 2008 | 274 | 18.5 | 5,069.00 |
| Associate | Galen R. Mason | 2002 | 411 | 2.7 | 1,109.70 |
| Associate | Sarah R. McNally | 2008 | 274 | 61.7 | 16,905.80 |
| Associate | Andrew F. Merrick | 2006 | 274 | 3.5 | 959.00 |
| Associate | Brian L. Mikulencak | 2007 | 274 | 4.1 | 1,123.40 |
| Associate | Deanne B. Millison | 2008 | 274 | 125.8 | 34,469.20 |
| Associate | Thalia Myrianthopoulos | 2001 | 438 | 23.6 | 10,336.80 |
| Associate | Andrew S. Nicoll | 2004 | 339 | 8.5 | 2,881.50 |
| Associate | Andrew J. Olejnik | 2004 | 339 | 27.1 | 9,186.90 |
| Associate | Andrea C. Otto-Classon | 2008 | 274 | 175.8 | 48,169.20 |
| Associate | Vito M. Pacione | 2003 | 383 | 282.0 | 108,006.00 |
| Associate | Melissa A. Resslar | 2003 | 383 | 364.3 | 139,526.90 |
| Associate | Peter H. Rosenbaum | 2005 | 285 | 284.2 | 80,997.00 |
| Associate | Trevor F. Schrage | 2008 | 274 | 60.9 | 16,686.60 |
| Associate | Jeffrey R. Shuman | 2003 | 383 | 243.3 | 93,183.90 |
| Associate | Valery K. Slosman | 2008 | 274 | 173.3 | 47,484.20 |
| Associate | Michael R. Strong | 2007 | 274 | 27.1 | 7,425.40 |
| Associate | Daniel B. Tehrani | 2006 | 285 | 3.4 | 969.00 |
| Associate | Allison A. Torrence | 2006 | 274 | 97.8 | 26,797.20 |
| Associate | Richard M. Wallace | 2008 | 274 | 238.1 | 65,239.40 |
| Associate | Julie A. Wenell | 2008 | 274 | 103.1 | 28,249.40 |
| Associate | Benjamin P. Wieck | 2006 | 274 | 16.9 | 4,630.60 |
| **Associate Total** | | | | **5,853.9** | **1,803,154.50** |
| **Total Attorney Time** | | | | **10,663.20** | **4,682,495.90** |

PARAPROFESSIONALS

| Position | Name | Rate | Time | Amount |
|---|---|---|---|---|
| Senior Paralegal | Debra E. Abelson | 260 | 3.8 | 988.00 |
| Senior Paralegal | Neil H. Berger | 260 | 341.6 | 88,816.00 |
| Senior Paralegal | Kevin M. Doolan | 260 | 22.8 | 5,928.00 |
| Senior Paralegal | Toi D. Hooker | 260 | 0.3 | 78.00 |
| Senior Paralegal | Michael H. Matlock | 260 | 40.8 | 10,608.00 |
| Senior Paralegal | Michael L. Whitchurch | 260 | 112.4 | 29,224.00 |
| Senior Paralegal | Lowell T. Yap | 260 | 0.9 | 234.00 |
| Paralegal | Daniel R. Gross | 245 | 107.8 | 26,411.00 |
| Paralegal | Micah B. Horan | 260 | 53.2 | 13,832.00 |
| Paralegal | Mary F. Patston | 260 | 2.0 | 520.00 |
| Paralegal | Eileen J. Robertson | 220 | 22.8 | 5,016.00 |
| Paralegal | Mark R. Scholl | 260 | 0.6 | 156.00 |
| Paralegal | Julie H. Shaw | 245 | 18.1 | 4,434.50 |
| Paralegal | Cassandra D. Smith | 260 | 2.0 | 520.00 |
| Reference Librarian | Tricia J. Peavler | 260 | 0.3 | 78.00 |
| Research Librarian | Paul S. Ramonas | 260 | 0.5 | 130.00 |
| Research Librarian | Mary E. Ruddy | 260 | 0.8 | 208.00 |
| Law Clerk | Ian N. Bushner | 150 | 6.1 | 915.00 |
| Law Clerk | Jeremy A. Casper | 150 | 57.1 | 8,565.00 |
| Law Clerk | Levicy Crawford | 150 | 21.0 | 3,150.00 |
| Law Clerk | Roxana A. Davis | 150 | 18.3 | 2,745.00 |
| Law Clerk | Adam M. Huffine | 150 | 54.0 | 8,100.00 |
| Law Clerk | Charles F. Kinzer | 150 | 14.1 | 2,115.00 |
| Law Clerk | Lauren H. Sylvester | 150 | 25.8 | 3,870.00 |
| Project Assistant | Carolyn T. Baynes | 145 | 30.2 | 4,379.00 |
| Project Assistant | Catherine L. Chu | 150 | 36.0 | 5,400.00 |
| Project Assistant | Cynthia K. Clark | 160 | 11.0 | 1,760.00 |
| Project Assistant | Daniel O. Garcia | 150 | 332.9 | 49,935.00 |
| Project Assistant | Robert T. Gianneschi | 160 | 82.7 | 13,232.00 |
| Project Assistant | Johathan Hollis | 150 | 9.5 | 1,425.00 |
| Project Assistant | Lauren R. Prather | 150 | 2.3 | 345.00 |
| Project Assistant | Zachary L. Sorman | 150 | 134.7 | 20,205.00 |
| Project Assistant | Jonathan W. Striegel | 125 | 69.2 | 8,650.00 |
| Project Assistant | Adrienne P. Thacher | 150 | 14.5 | 2,175.00 |
| **Total Paraprofessional Time** | | | **1,650.1** | **324,147.50** |

SUMMARY

| Description | Amount |
|---|---|
| **Total Amount for Services Rendered (Attorneys and Paraprofessionals)** | **$5,006,643.40** |
| **Less 50% Non-Working Travel Time** | **($56,320.45)** |
| **Total Amount of Fees Requested for Services Rendered (June 1, 2009 - September 30, 2009)** | **$4,950,322.95** |

**Hearing Date: December 16, 2009**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Joseph P. Gromacki (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Special Counsel for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
                                                :

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | 09-50026 (REG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------------x

**FIRST INTERIM FEE APPLICATION OF**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

**TO THE HONORABLE ROBERT E GERBER**
**UNITED STATES BANKRUPTCY JUDGE**

       Jenner & Block LLP ("**Jenner & Block**"), special counsel to Motors Liquidation

Company and its affiliate debtors (collectively, the "**Debtors**"),[2] by this first interim fee

_____

[2] The Debtors are: Motors Liquidation Company (Case No. 09-50026), Chevrolet-Saturn of Harlem, Inc. (Case No. 09-13558), Saturn, LLC (Case No. 09-50027), and Saturn Distribution Corporation (Case No. 09-50028).

application (the "**First Interim Application**") pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seek (i) interim allowance and payment of reasonable compensation for actual and necessary professional services performed by Jenner & Block in the aggregate amount of $4,950,322.95 for the period from June 1, 2009 through and including September 30, 2009 (the "**Compensation Period**"); and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $270,439.26 incurred during the Compensation Period.

To aid this Court in analyzing the First Interim Application, Jenner & Block has divided it into four parts. Part I provides a brief background of the Debtors' cases. Part II provides an overview of the First Interim Application. Part III provides a description of the work performed by Jenner & Block during the Compensation Period, by category, as well as how Jenner & Block calculated this compensation request. Finally, Part IV explains why this compensation request should be allowed.

## I. Background of the Filing and the Retention of Jenner & Block

1.      Commencing on June 1, 2009, (the "**Commencement Date**"), the Debtors filed with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      On June 12, 2009, the Debtors filed an Application of the Debtors Pursuant to Section 327(e) of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jenner & Block LLP as

Attorneys for the Debtors, *Nunc Pro Tunc* to the Commencement Date (the "**Retention Application**").  Pursuant to an order dated June 26, 2009, the Debtors were authorized to retain Jenner & Block as their attorneys to render legal services in the prosecution of their chapter 11 cases.

3.    On June 3, 2009, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") filed the Appointment of Committee of Unsecured Creditors (the "**Creditors' Committee**").

## II.  First Interim Application

4.    Jenner & Block has prepared this First Interim Application in accordance with the Administrative Order Re: Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated June 20, 1991 (the "**Original SDNY Guidelines**"), the Administrative Order Re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated April 19, 1995 (the "**Amended SDNY Guidelines**," and collectively the "**Local Guidelines**"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice dated January 30, 1996 (the "**UST Guidelines**"), and the Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711] (the "**Administrative Order**," and collectively with the Local Guidelines and UST Guidelines, the "**Guidelines**").  Pursuant to the Amended SDNY Guidelines, a certification regarding compliance with such guidelines is attached hereto as Exhibit A.

5.    Jenner & Block seeks interim allowance herein of reasonable compensation for actual and necessary professional services rendered during the Compensation Period in the

aggregate amount of $4,950,322.95 and for reimbursement of actual, reasonable and necessary expenses incurred during the Compensation Period in connection with the rendition of such services in the aggregate amount of $270,439.26.

6.      The fees sought by this First Interim Application reflect an aggregate of 12,313.3 hours of attorney and paraprofessional time spent and recorded in performing services for the Debtors during the Compensation Period.  This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Debtors' bankruptcy.  Of the aggregate time expended during the Compensation Period, 4,809.3 recorded hours were expended by partners, 5,853.9 recorded hours were expended by associates, and 1,650.1 recorded hours were expended by paraprofessionals.  During the Compensation Period, Jenner & Block's hourly billing rates for attorneys working on these matters ranged from $813.00 to $274.00 per hour.  Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $439.13.

7.      Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

8.      In accordance with the Administrative Order, to date, Jenner & Block has received payments totaling $4,055,516.50 for the Compensation Period, consisting of $3,795,112.70, representing 80% of the fees, and $261,403.77, representing 100% of the expenses, invoiced for June and July.  Jenner & Block has not yet received payment for either the fees or expenses invoiced for August or September 2009.

9.      Pursuant to the Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services for the

Debtors during the Compensation Period for which Jenner & Block is seeking reimbursement, the position in which each such individual is employed by Jenner & Block, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefore, and as to attorneys, the year in which each professional was first licensed to practice law.

10.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is a summary by project matter of the fees generated by the services performed during the Compensation Period and, for each separate project matter, a list of each person providing services on the project, a statement of the number of hours spent and the amount of compensation requested for each person on the project.

11.    Annexed hereto as <u>Exhibit D</u> is a schedule specifying the categories of expenses for which Jenner & Block is seeking reimbursement and the total amount for each such expense category; <u>Exhibit E</u> contains a detailed list of all expenses for which Jenner & Block seeks reimbursement.  This schedule has been adjusted for and does not reflect certain expenses incurred by Jenner & Block for which it will not be seeking reimbursement.

12.    Jenner & Block maintains detailed records of the time spent by all attorneys and paraprofessionals and the expenses incurred by, and in connection with the representation of, the Debtors.  Copies of the detailed time records are annexed hereto as <u>Exhibit F</u>.

13.    The fees charged by Jenner & Block in these cases reflect those rates applied to General Motors Corporation pre-petition.  The fees are otherwise billed in accordance with Jenner & Block's general procedures in effect during the Compensation Period.  The rates Jenner & Block charges for the services rendered by its professionals and paraprofessionals to the Debtors are reasonable based on the customary compensation charged by comparably

skilled practitioners in a competitive national legal market in cases other than cases under title 11.

14.    All of the services for which interim compensation is sought were rendered to the Debtors solely in furtherance of bankruptcy and not on behalf of any individual creditor or other entity.

15.    Jenner & Block has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

16.    Jenner & Block has not shared, nor agreed to share (a) any compensation they have received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by Jenner & Block as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

17.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this First Interim Application, Jenner & Block reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### III.  Summary of Professional Compensation and Reimbursement of Expenses Requested

18.    As noted above, Exhibit C is a summary by project matters of the fees generated during the Compensation Period.  The following are descriptions of the project matters and their necessity and benefit to the estate.  The descriptions include a statement of the aggregate number of hours spent and fees charged for each matter.  The persons providing services on each project matter are listed on Exhibit C.

A.    363 Sale

**Background of the 363 Transaction**

19.    On June 1, 2009, a motion was filed by the Debtors seeking entry of an order authorizing and approving the sale of assets to NGMCO, Inc., a U.S. Treasury-sponsored purchaser, pursuant to the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, together with all related documents and agreements as well as all exhibits, schedules and addenda thereto (as amended, the "**MPA**") [Docket No. 92].

20.    On July 5, 2009, this Court entered its Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief (the "**Sale Order**") [Docket No. 2698].

21.    On July 9, 2009, NGMCO, Inc. filed the required documentation to change its name to General Motors Company.

22.    On July 10, 2009, pursuant to the MPA and the Sale Order, General Motors Company acquired substantially all of the assets of the Debtors (the "363 Transaction").

**Jenner & Block's Role in the 363 Transaction**

23.     The Retention Application described the role of Jenner & Block as advising the

Debtors regarding, *inter alia,* "[t]ransactional and bankruptcy issues related to the MPA and

the 363 Transaction, including implementation thereof." Retention Application, ¶ 16(b).

24.     A critical part of the Debtors' bankruptcy process was the execution of the 363

Transaction.  During the Compensation Period, attorneys involved in this matter worked

tirelessly to (i) negotiate the terms of the MPA, (ii) prepare and finalize the MPA,

(iii) coordinate and complete the related disclosure schedules, and (iv) negotiate and finalize all

necessary ancillary documents.  Among these ancillary documents were the Transition

Services Agreement, the Subdivision Master Lease, the Equity Registration Rights Agreement,

the Master Lease Agreement and the Certificate of Designation of Purchaser for Preferred

Stock.  Given the size and complexity of General Motors Corporation's pre-petition holdings, a

large number of attorneys from Jenner & Block's corporate, real estate, commercial law,

employee benefits, environmental, tax and litigation departments were involved in these

efforts.

25.     Jenner & Block expended 9,072.1 hours at an aggregate charge of $3,545,165.40

on matters related to the 363 Transaction during the Compensation Period.

       B.     Corporate/Securities

26.     The Retention Application described the role of Jenner & Block as advising the

Debtors regarding, *inter alia*, "[c]orporate and securities matters." Retention Application,

¶ 16(c).

27.     Jenner & Block attorneys who worked on this matter were involved in general

securities issues relating to Motors Liquidation Company, including preparation of a Motors

Liquidation Company SEC no-action letter regarding modified Exchange Act reporting as well

as Forms 8-K relating to the (i) bankruptcy, 363 Transaction, delisting of stock and new capital

structure, (ii) warranty program and agreement with respect to Nova Scotia debt, (iii)

amendments to the MPA, and (iv) closing of the 363 Transaction.

28.     During the Compensation Period, Jenner & Block expended 943.1 hours, at an

aggregate charge of $548,983.60, on matters relating to corporate and securities.

C.      SEC Matters - Delphi

29.     The Retention Application described the role of Jenner & Block as advising the

Debtors regarding, *inter alia*, "[c]ertain litigation matters, including issues arising

from…securities investigations and litigation…and such litigation disputes as may arise from

any of the foregoing." Retention Application, ¶ 16(d).

30.     This matter includes all time spent by Jenner & Block attorneys in representing

Motors Liquidation Company in connection with interviews and depositions related to the case

*U.S. Securities and Exchange Commission v. Delphi Corp., et. al.*, No. 2:06-cv-14891-AC-

SDP (E.D. Mich.).

31.     During the Compensation Period, Jenner & Block expended 81.0 hours, at an

aggregate charge of $39,879.60, in connection with this representation.

D.      SEC Matters - Pension OPEB

32.     The Retention Application described the role of Jenner & Block as advising the

Debtors regarding, *inter alia,* "[c]ertain litigation matters, including issues arising

from…securities investigations and litigation…and such litigation disputes as may arise from

any of the foregoing." Retention Application, ¶ 16(d).

33.     During the Compensation Period, attorneys involved in this matter prepared for

potential SEC inquiries concerning possible liability of certain employees in connection with

pension-OPEB matters.  In connection with this matter, Jenner & Block advised on, for

9

example, required litigation holds, mandatory disclosures in SEC filings and the effects of

consent orders against the company, directors, and employees.

34.    Jenner & Block expended 2.3 hours, at an aggregate charge of $1,288.00, on

issues related to pension-OPEB matters.

> E.    SEC Matters - Foreign Exchange and Commodities

35.    The Retention Application described the role of Jenner & Block as advising the

Debtors regarding, *inter alia,* "[c]ertain litigation matters, including issues arising

from…securities investigations and litigation…and such litigation disputes as may arise from

any of the foregoing." Retention Application, ¶ 16(d).

36.    Entries related to this matter involve work done by Jenner & Block attorneys to

prepare for potential SEC inquiries regarding possible liability of certain employees in

connection with accounting treatment of certain foreign exchange and commodities

transactions.

37.    Jenner & Block expended 1.6 hours, at an aggregate charge of $946.40, on

matters relating to foreign exchange and commodities.

> F.    Equipment Leasing Disputes

38.    The Retention Application described the role of Jenner & Block as advising the

Debtors regarding, *inter alia,* "[c]ertain litigation matters, including issues arising

from…equipment leasing disputes…and such litigation disputes as may arise from any of the

foregoing." Retention Application, ¶ 16(d).

39.    Jenner & Block attorneys working on this matter were involved in (i) the review,

analysis and renegotiation of fixed equipment leases, (ii) the review, analysis and renegotiation

of mobile equipment leases, and (iii) advising the Debtors about their rights under the

Bankruptcy Code and the Uniform Commercial Code in connection therewith.

40.    Jenner & Block expended 729.7 hours, at an aggregate charge of $282,192.80 on issues related to equipment leasing disputes.

G.    Products Liability

41.    The Retention Application described the role of Jenner & Block as advising the Debtors regarding, *inter alia*, "[c]ertain litigation matters, including issues arising from…product liability suits…, and such litigation disputes as may arise from any of the foregoing." Retention Application, ¶ 16(d).

42.    During the Compensation Period, attorneys who have worked on this matter were involved in the representation of Motors Liquidation Company against various suits related to products liability.  Such representation included analysis of the effect of the bankruptcy filing on these cases, multiple conferences with opposing counsel regarding the same and motions to stay proceedings.

43.    Jenner & Block spent 165.1 hours, at an aggregate charge of $65,495.10, on products liability matters.

H.    Court Hearings

44.    This matter includes all time spent by Jenner & Block attorneys in attending hearings before the Court, including the first day hearing, hearings regarding approval of the 363 Transaction, omnibus hearings and hearings regarding the rejection of certain promotional agreements.

45.    During the Compensation Period, Jenner & Block expended 168.2 hours, at an aggregate charge of $98,835.40, attending Court hearings.

I.    Non-Working Travel Time

46.    This matter includes time entries related to non-working travel time spent by Jenner & Block attorneys for trips including travel to New York to work with counsel on

11

finalizing the MPA, travel to New York to attend multiple Court hearings and travel to Detroit, Michigan to work directly with the Debtors on matters such as equipment leasing disputes.

47.    During the Compensation Period, Jenner & Block expended 263.2 hours, at an aggregate charge of $112,640.90, for non-working traveling time.  Jenner & Block is seeking compensation only for one-half of its travel time, or $56,320.45.  Jenner & Block is voluntarily reducing its bill for the balance.

J.    Jenner Retention/Billing/Fee Applications

48.    This matter includes time entries related to preparing and filing the Retention Application and accompanying affidavit as well as preparation of the monthly fee statements in compliance with the Guidelines.  Due to the size and complexity of the Debtors' pre-petition holdings, certain efforts involved in preparing the Retention Application and accompanying affidavit, such as ensuring Jenner & Block's disinterestedness in light of the substantial connections of the Debtors as is required by the Bankruptcy Code, involved a large number of Jenner & Block professionals.

49.    During the Compensation Period, Jenner & Block expended 810.40 hours, at an aggregate charge of $270,923.70 on retention and billing matters.  Of this aggregate charge, $106,917.60 is related to the preparation of the monthly fee statements in compliance with the Guidelines.  The balance of this amount relates to efforts involved in connection with the preparation and filing of the Retention Application and accompanying affidavit.

K.    Case Administration

50.    Work related to the case administration matter involved preparing various documents for filing with the court, reviewing motions such as the case management and interim compensation motions, reviewing and monitoring the court docket as well as drafting and reviewing supplemental affidavits regarding the disinterestedness of Jenner & Block.

12

51.    During the Compensation Period, Jenner & Block expended 76.6 hours, at an
aggregate charge of $40,292.50, with respect to case management.

### IV.  The Requested Compensation Should Be Allowed

52.    The foregoing professional services performed by Jenner & Block were necessary
and appropriate in the above-referenced chapter 11 cases and were in the best interests of the
Debtors.  Compensation for the foregoing services as requested is commensurate with the
complexity, importance, and nature of the problems, issues, or tasks involved.  Jenner & Block
has taken significant efforts to ensure that the professional services were performed with
expedience, in an efficient manner, and without duplication of effort.

53.    In preparing this First Interim Application, Jenner & Block calculated the amount
of time spent by each attorney and paraprofessional in performing actual and necessary legal
services for the Debtors.  That data came directly from computerized records that are kept for
each Jenner & Block client.  Individual time entries are maintained on written daily logs,
personal computer hard drives or input directly into the firm's central client accounting and
billing system.  All time entries and expenses are uploaded into the billing system, which then
produces draft client billing memoranda and invoices.  Jenner & Block attorneys have
reviewed and edited the draft invoices and billing memoranda for errors prior to their
submission.

54.    The rates used in this First Interim Application are the customary and usual pre-
petition rates which Jenner & Block charged General Motors Corporation.  In addition, the
disbursements for which Jenner & Block seeks reimbursement are the customary and usual
expenses for which Jenner & Block seeks reimbursement from its clients.  Jenner & Block
charges 9 cents per page for duplicating.  Jenner & Block does not charge its clients for
facsimiles, domestic and long distance telephone (other than while traveling), and certain

overtime expenses, and takes those expenses into account in its overhead.  Jenner & Block

does not include charges for postage, messenger services, duplicating and computerized legal

research in its overhead because it is fairer to clients who use less of these services to have

these expenses billed separately.  According to its outside auditors, these charges fairly

approximate the firm's actual costs and do not result in undue revenue for the firm.  The firm's

hourly rates used for this First Interim Application do not compensate the firm for such

expenses.

55.    Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation

for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."

11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such

compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court
> should consider the nature, the extent, and the value of such services, taking into
> account all relevant factors, including
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
>        of, or beneficial at the time at which the service was
>        rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
>        amount of time commensurate with the complexity,
>        importance, and nature of the problem, issue, or task
>        addressed;

      (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

      (F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

56.    In the instant case, Jenner & Block respectfully submits that the services for which they seek compensation in this First Interim Application were, at the time rendered, believed to be necessary for and beneficial to the Debtors.  Jenner & Block further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Debtors.

57.    The services rendered by Jenner & Block were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the interim compensation sought herein for the Compensation Period is warranted.

58.    This First Interim Application includes citations to the applicable authorities and does not raise any novel issues of law.  Jenner & Block reserves the right to file a brief in reply to any objection to this First Interim Application.

59.    To the extent applicable, Jenner & Block further requests that the Court waive for cause shown any Guideline requirement not met by this First Interim Application.

60.    No previous motion for the relief sought herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE Jenner & Block respectfully requests: (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount

of $4,950,322.95; and (ii) reimbursement for actual and necessary expenses Jenner & Block

incurred during the Compensation Period in the amount of $270,439.26; and (iii) that the Court

grant Jenner & Block such other and further relief as is just.

Dated: November 16, 2009
Chicago, Illinois

Respectfully submitted,


By: /s/ *Daniel R. Murray*
    Daniel R. Murray

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Joseph P. Gromacki (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Special Counsel for Debtors and
Debtors in Possession