**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                    :           Chapter 11 Case No.

                          :

**MOTORS LIQUIDATION COMPANY, et al.,** :    **09-50026 (REG)**
    **f/k/a General Motors Corp., et al.** : 

                         :      **(Jointly Administered)**

           **Debtors.**     :

-------------------------------------------------------------x

## FIRST AND FINAL APPLICATION OF EVERCORE GROUP L.L.C. FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Name of Applicant:       Evercore Group L.L.C.

Authorized to Provide Professional Services to:    Motors Liquidation Company, f/k/a General Motors Corp., et al.

Date of Retention:       June 1, 2009 (nunc pro tunc)

Period for which compensation and reimbursement are sought:       June 1, 2009 through July 10, 2009

Amount of compensation sought as actual, reasonable, and necessary:       $16,029,032 ($4,333,000 of which is payable upon fulfillment of certain conditions described below)

Amount of expense reimbursement sought as actual, reasonable, and necessary:       $2,920.62

This is a(n)      _____ Monthly    \_\_\_\_\_ Interim    X   Final Application

If this is not the first application filed, disclose the following for prior applications:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|------------|----------------|----------------|--------------------|---------------|-------------------|
| NA | NA | NA | NA | NA | NA |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                      :

In re:                              :                    Chapter 11 Case No.
                                        :

MOTORS LIQUIDATION COMPANY, et al., :       09-50026 (REG)
        f/k/a General Motors Corp., et al.  :

                                 :                 (Jointly Administered)
                 Debtors.    :

-------------------------------------------------------------------x

### FIRST AND FINAL APPLICATION OF EVERCORE GROUP L.L.C. FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Evercore Group L.L.C. ("**Evercore**"), formerly financial advisor and investment banker for Motors Liquidation Company, f/k/a General Motors Corp., and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession (collectively, the "**Debtors**" and each, a "**Debtor**"), makes this first and final application for compensation and reimbursement of expenses, and in support thereof respectfully represents:

     1.      This application is made pursuant to (i) Section 330 of Title 11 of the United States Code (the "**Bankruptcy Code**"), (ii) Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (iii) Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "**Amended Guidelines**"), (iv) the Order of this Court, dated August 7, 2009, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, and (v) the Order Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc *Pro Tunc* to the Petition Date, dated October 28, 2009 (the "**Retention Order**"). A copy of the Retention Order is attached hereto as Exhibit A.

## BACKGROUND

2.      On June 1, 2009 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      An amended and restated letter agreement dated May 29, 2009 (as modified by the Retention Order, the "**GM Engagement Letter**") formalized the arrangement between the Debtors and Evercore regarding the retention of Evercore by the Debtors as a financial advisor in connection with a possible restructuring.  A copy of the GM Engagement Letter is attached hereto as Exhibit B.

4.      The Debtors selected Evercore as their investment banker and financial advisor because of its extensive general experience and knowledge in the restructuring advisory field, and for its deep knowledge of the Debtors and of the automotive industry.  Evercore respectfully refers this court to the GM Engagement Letter for a full recitation of its terms.  In summary, Evercore was retained by the Debtors to provide the following services:

a)      Reviewing and analyzing the Debtors' businesses, operations, and financial projections;

b)      Advising and assisting the Debtors in a restructuring, financing and/or sale transaction, if the Debtors determined to undertake such a transaction;

c)      Providing financial advice in developing and implementing a restructuring, which would include:

    i)      Assisting the Debtors in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code;

    ii)     Advising the Debtors on tactics and strategies for negotiating with various stakeholders regarding the plan;

2

    iii)     Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Debtors in any proceedings under the Bankruptcy Code that are pending before this Court; and

    iv)     Providing the Debtors with other financial restructuring advice as Evercore and the Debtors may deem appropriate.

    d)     Assisting the Debtors with financing (including but not limited to DIP financing and other financing), including:

       i)     Structuring and effecting a financing;

      ii)     Identifying potential investors and, at the Debtors' request, contacting such investors; and,

    iii)     Working with the Debtors in negotiating with potential investors.

    e)     If the Debtors pursued a sale, assisting the Debtors with:

       i)     Structuring and effecting a sale;

      ii)     Identifying interested parties and/or potential acquirers and at the Debtors' request, contacting such interested parties and/or potential acquirers; and

    iii)     Advising the Debtors in connection with negotiations with potential interested parties and/or acquirers and aiding in the consummation of a sale transaction.

    f)     Rendering an opinion to the Board of Directors of the Debtors as to the fairness, from a financial point of view, of the consideration to be paid or received by the Debtors in connection with a Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, which would provide for a sale of certain of the Debtors' assets, pursuant to authorization that would be sought under Section 363 of the Bankruptcy Code (the "**NewCo Transaction**").

5.     Pursuant to the terms of the GM Engagement Letter, Evercore's engagement by

the Debtors terminated on July 10, 2009 upon the consummation of the NewCo Transaction.

## COMPENSATION

6.     Pursuant to the GM Engagement Letter, as amended by and as more fully set forth

in the Retention Order, in consideration for the services provided to the Debtors, the Debtors

agreed to pay Evercore the following amounts, pursuant to Section 328(a) of the Bankruptcy

Code, and subject to the final approval of this Court:

    a)    The NewCo Transaction Fee equal to, after the deduction of applicable credits, $13,000,000, payable as follows:

        i)    $8,667,000 upon entry of the Retention Order; and

        ii)    $4,333,000 upon entry of an order confirming a plan of reorganization with respect to Motors Liquidation Company (the "**Chapter 11 Plan**") which provides that (x) holders of allowed general unsecured claims will receive the stock and warrants of General Motors Company (the "**New GM Securities**") paid to the Debtors' estates in connection with the consummation of the sale under Section 363 of the Bankruptcy Code authorized and approved by Order of this Court, dated July 5, 2009, and (y) there are sufficient funds and other assets in the Debtors' estates to pay all allowed priority and allowed administrative expense claims under the Chapter 11 Plan without the necessity of selling or otherwise affecting the New GM Securities;

    b)    The DIP Structuring Fee in the amount of $2,500,000;

    c)    Monthly fees for the period June 1, 2009 through July 10, 2009 (the "**Engagement Period**") in the aggregate amount of $529,032; and

    d)    Documented, reasonable expenses and other fees and expenses in the aggregate amount of $2,920.62.[1]

## RELIEF REQUESTED

7.    By this Application, Evercore seeks an Order (i) granting final allowance and

approval of compensation for services rendered during the period June 1, 2009 through and

including July 10, 2009, consisting of $16,029,032 of fees, plus the reimbursement of reasonable

and necessary expenses incurred by Evercore during the Engagement Period in the amount of

$2,920.62, for a total of $16,031,952.62, (ii) authorizing and directing the Debtors to make

---

[1] As of the Petition Date, the Debtors had advanced to Evercore $5,634 in excess of the pre-petition fees and expenses incurred by Evercore. Upon this Court's approval of this Application, these excess funds will be applied toward the expenses and fees requested by Evercore.

payment in respect of $11,698,952.62 of such fees and expenses, less amounts paid previously;

(iii) authorizing and directing the Debtors to make payment in respect of $4,333,000 of such fees

on entry of an order confirming the Chapter 11 Plan consistent with the requirements specified

above.

8.      All services for which compensation is sought were performed for and on behalf

of the Debtors.  Evercore has not entered into any agreement, express or implied, with any party

in interest for the purpose of fixing or sharing fees or other compensation to be paid for

professional services rendered in these cases.

9.      Annexed hereto as Exhibit C are invoices for the total compensation and expenses

sought by Evercore for the Engagement Period and a breakdown of Evercore's expenses incurred

and daily time logs detailing the activities and services performed by Evercore on behalf of the

Debtors during the Engagement Period.  Information regarding the experience and qualifications

of key professionals of Evercore providing services to the Debtors is attached as Exhibit D.

## LEGAL BASIS FOR REQUESTED COMPENSATION

10.      Evercore is entitled to receive the fees it has requested in accordance with the

express terms of the GM Engagement Letter and the provisions of Section 328(a) of the

Bankruptcy Code.  Section 330 of the Bankruptcy Code provides for the award of compensation

to professionals.  *See* 11 U.S.C. § 330.  Section 330, by its terms, is "subject to" the provisions of

Section 328 of the Bankruptcy Code.  *Id.*  Section 328(a) permits a debtor, with the Court's

approval, to employ a professional person "on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on

a contingent fee basis." *See* 11 U.S.C. § 328(a).

11.    Section 328 represents a departure from the practice that prevailed prior to the

enactment of the Bankruptcy Code in 1978.  The purpose of Section 328 was to permit the pre-

approval of compensation arrangements as a method of insuring that the most competent

professionals would be available to provide services in bankruptcy cases.  *See In re Westbrooks*,

202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the

Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum");

*In re Olympia Holding Corp.*, 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994).

12.    Once the terms of a professional's retention have been approved under Section

328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have

been improvident in light of developments not capable of being anticipated at the time of the

fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also In re Smart World*

*Technologies, LLC*, 552 F.3d 228, 232-33 (2d Cir. 2009) (no question that bankruptcy court may

not conduct a Section 330 inquiry into reasonableness of fees and benefit to estate);  *In re*

*Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under Section

328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a

"reasonableness" review under Section 330); *In re National Gypsum Company*, 123 F.3d 861

(5th Cir. 1997) (same); *In re Olympia Holding Corp.*, 176 B.R. at 964 (same).  As the Court

explained in *National Gypsum*:

> If the most competent professionals are to be available for complicated capital
> restructuring and the development of successful corporate reorganization, they
> must know what they will receive for their expertise and commitment.  Courts
> must protect those agreements and expectations, once found to be acceptable.

13.    Pursuant to the Retention Order, this Court approved the retention of Evercore

under the terms of the GM Engagement Letter (as modified by the Retention Order), subject to

the rights of the United States Trustee to object to Evercore's final fee application on all grounds,

including, but not limited to, the reasonableness standard set forth in Section 330 of the Bankruptcy Code. *See* Retention Order at 3.

14.     The compensation for services rendered during the Engagement Period has been earned and is due and payable in full (subject to fulfillment of certain conditions with respect to the payment of $4,333,000 of the NewCo Transaction Fee) under the terms of the GM Engagement Letter.  Evercore submits that there have been no developments since the entry of the Retention Order that were "not capable of being anticipated" and that would justify any modification to the terms of Evercore's retention. *See Smart World*, 552 F.3d at 235 (not-capable-of-being-anticipated standard is a "high hurdle to clear").  Accordingly, Evercore submits that the fees and expense reimbursements sought herein should be allowed and approved by this Court pursuant to Sections 328(a) and 330 of the Bankruptcy Code.

15.     Senior-level professionals with extensive experience in the area of investment banking and bankruptcy services directed Evercore's team.  The investment banking services set forth above were led by Roger C. Altman, Chairman of the Board of Directors of Evercore, William C. Repko, Senior Managing Director, William Hiltz, Senior Managing Director, J. Stephen Worth, Managing Director, Stephen Sieh, Managing Director, as well as other professionals and paraprofessionals, as needed.  Evercore's general staffing policy is to assign senior bankers, experienced junior bankers, and financial analysts to each restructuring assignment.  Evercore's senior bankers advised the Debtors' senior management and its Board of Directors on all aspects of the Debtors' reorganization and of the sale of the Debtor's assets pursuant to Section 363 of the Bankruptcy Code.

16.     Evercore's advisory activities, from the beginning of its retention, included but were not limited to the analysis and structuring of private and public market financing

7

alternatives, the government financing process, including the submission of the company's

Viability Plans, merger advisory, extensive financial modeling support that resulted in the

Debtors' adoption of significant portions of Evercore's model construct as its corporate-finance

model, multiple valuation analyses, the structuring of and execution strategy for an exchange

offer for unsecured bondholders, an analysis of bankruptcy alternatives, including the analysis of

what liabilities could be compromised under various in-court scenarios, extensive work on

evaluating a parallel Canadian bankruptcy process, sizing and structuring of the debtor-in-

possession financing in these cases, and ultimately advisory services on the Newco Transaction,

including Evercore's rendering a fairness opinion to the board of directors of the Debtor (on

which the Court relied, in part, in approving the NewCo Transaction), providing expert

testimony in writing and from the witness stand, and coordinating due diligence for the Official

Committee of Unsecured Creditors (the "**Creditors' Committee**").

17.     The amount of fees and expenses sought in this application and Evercore's billing

processes are consistent with market practices for investment banking firms both in and out of a

bankruptcy context.  Evercore's policy for all engagements, in or out of bankruptcy, is to

dedicate the appropriate number of professionals to the assignment to complete the work as

efficiently as possible.

18.     Evercore does not bill its clients based on the number of hours expended by its

professionals.  It bills clients on a retainer basis (generally monthly), plus a transaction fee or

fees based upon completion.  Accordingly, Evercore does not have hourly rates for its

professionals and Evercore's professionals generally do not maintain time records for the work

performed for its clients.  Consistent with the terms of the Retention Order, however, Evercore

has maintained a daily time log detailing the activities and services it has performed on behalf of

8

the Debtors, in half-hour increments, during the Engagement Period.  A copy of these records is attached hereto as Exhibit C.

19.    Given the size and complexity of this case, the complicated corporate and financial structure of the Debtors, the degree of activity, and the high level of services rendered by Evercore to the Debtors, Evercore believes that the compensation sought is fair and reasonable.

## SUMMARY OF SERVICES RENDERED

20.    Evercore's involvement with the Debtors started in June 2008 and included advising the Debtors with respect to (i) potential secured or unsecured financings; (ii) strategic transactions with other original equipment manufacturers, (iii) asset dispositions, including assets in Europe, (iv) review of the Debtors' several viability plan(s), including submissions to the United States Congress, also known as VP1 and VP2, (v) possible out-of-court restructurings and bond exchanges, and (vi) in-court restructurings, including via a sale under Section 363 of the Bankruptcy Code or otherwise. All services rendered by Evercore were performed at the request or direction of the Debtors or legal professionals of Weil, Gothsal & Manges LLP.

21.    Evercore, as financial advisor to the Debtors, was in a regular dialogue, on the Debtors' behalf or along with the Debtors, with the United States Treasury, its related entities and representatives (the "**Government**"), and the Government's advisors on an extensive variety of topics.  Evercore was involved in all financial aspects of the Debtors' financing needs, the consideration of strategic transactions, and their preparation for a bankruptcy filing, communicating both directly and indirectly with the Government and preparing the Debtors for meetings with the Government.

22.    Evercore was an integral part of the structuring, sizing, and negotiations of the terms of the Government's loans to the Debtors under the TARP program, in a process that started in the winter of 2008-09.

23.    Evercore also was intimately involved with the Debtors' obtaining DIP financing from the Government, including due diligence, structuring, loan sizing, and detailed negotiations of terms and covenants, which took place over several weeks preceding the Petition Date.

24.    Evercore provided substantial advice and services to the Debtors with respect to the NewCo Transaction. Evercore was closely involved in virtually every aspect of planning, structuring, analyzing and executing the NewCo Transaction, including direct and indirect negotiations with the Government and its advisors. Evercore also facilitated discussions with the Government and its advisors in their analyses of the Debtors' VP4 plan and integrated financial models. Evercore acted as an interface between the Debtors and the Creditors' Committee and its professionals in assisting the Creditors' Committee to understand the Debtors' assets and capital structure, and to facilitate the Creditors' Committee's review of the NewCo Transaction. In addition, Evercore had substantial interactions with the Canadian and Ontario governments and their respective advisors on a large number of matters relating to the Debtors' Canadian operations, the DIP financing, the NewCo Transaction, and related matters.

25.    Evercore respectfully submits that the compensation requested for services rendered by Evercore to the Debtors is fully justified and reasonable based on the following: (a) the degree of activity and the high level of services rendered by Evercore to the Debtors, (b) the complexity of the issues presented, (c) the skills necessary to perform the investment-banking services properly, (d) the preclusion of other employment, (e) customary fees charged in non-bankruptcy situations for similar services rendered, (f) time constraints required by the

10

exigencies of the case, and (g) the experience, reputation and ability of the professionals rendering services.

26.     Evercore respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interest of the Debtors and their estates and have furthered the goals of all parties in interest.  Such services were substantial, highly professional, and facilitated the chapter 11 proceedings.  They were reasonable and necessary to the Debtors' performance of their duties.

## EXPENSES INCURRED DURING THE ENGAGEMENT PERIOD

27.     Evercore incurred reasonable and necessary out-of-pocket expenses aggregating $2,920.62 during the Engagement Period.  Details of the expenses incurred during the Engagement Period are also provided in Exhibit C.  Evercore submits that all such expenses were necessarily incurred, are reasonable in amount, and represent only the actual costs incurred.

28.     Out-of-pocket expenses incurred by Evercore are charged to a client if said expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client.  Evercore does not factor general overhead expenses into disbursements charged to its clients in connection with chapter 11 cases.  Evercore has followed its general internal policies with respect to expenses billed to the Debtors as set forth below, with any exceptions explained:

   Air Travel:  Evercore's general travel policy is that non-Senior Managing Directors must fly coach, except on flights of five hours or more where business class is permitted.  Senior Managing Directors may not fly first class if business class is available.  Further, Evercore does not bill its clients in chapter 11 bankruptcy proceedings any first-class airfares.  All domestic airfare charges billed to the Debtors have been based on coach-fare rates.

   Copies & Shipping:  Evercore bills photocopying charges at the rate of $0.15 per page for black and white copies, $0.75 per page for color copies, and $4.00 per binding.  Messengers and couriers are used by Evercore to deliver hard-copy documents relating to a client matter, which require receipt on an expedited basis; otherwise, Evercore uses the

11

regular postal system.  Any charges for either messengers or couriers are billed to the client at cost.

General:  General expense types include charges for miscellaneous items incurred by Evercore employees locally or while traveling on client-related matters that would not have been normally incurred had the professional not been traveling.

Legal:  This expense category includes attorneys' fees incurred by Evercore on client-related matters.  Invoices and supporting time records have been included pursuant to the Retention Order.

Lodging:  This category includes hotel and other lodging charges incurred while traveling.  Evercore employees often stay at hotels recommended by clients and/or convenient to the meeting location.

Local Ground Transportation:  Evercore's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client-related matter, for which the client is charged.  Further, employees are permitted to charge to a client the cost of transportation if an employee is required to work past 9:00 p.m. or during weekends on client-specific matters.

Meals:  Evercore's general policy permits its employees to charge in-office lunch or dinner meals to a client during such mealtime due to extreme time constraints.  Evercore's employees are permitted to charge dinners in the office if Evercore's employee is required to work after 8:00 p.m. and lunches on weekends or holidays.  Each in-office meal included herein has been capped at $20.

Research:  Evercore utilizes various news and data services for research related to the client matter.  All charges for such services are billed to the client at cost.

Telecom:  Evercore does not allocate office facsimile and telephone charges, including long-distance charges.  Evercore customarily bills its clients for actual conference-call charges incurred.

Travel/Meeting Meals:  This expense category includes charges for meals while Evercore employees are traveling on client-related matters or conducting business locally on behalf of its clients.  This includes catering charges for meetings at Evercore's offices as well as business meals attended by the client and/or other interested parties.

Word Processing/Presentation Support:  Evercore utilizes temporary employment services to efficiently staff the word processing and presentation support department on an as-needed basis when full-time staff is unavailable or cannot efficiently complete the projects in demand (presentations, memoranda, etc.) due to various time constraints of any given client matter.  Evercore does not bill for the time of full-time staff employed in word processing, as such costs are absorbed as overhead.  Evercore bills only for the temporary employment wages attributed to specific client matters, with no markup added.

## CONCLUSION

29.    The services summarized by this application and rendered by Evercore to the

Debtors were substantial, highly professional, and instrumental to Debtors in furtherance of their

restructuring efforts.  Evercore respectfully submits that the compensation requested by this

application is reasonable in light of the nature and value of such services.

\* \* \*

WHEREFORE, Evercore respectfully requests that this Court enter an order (i) granting

final allowance and approval of compensation for services rendered during the period June 1,

2009 through and including July 10, 2009, consisting of $16,029,032 of fees, plus the

reimbursement of reasonable and necessary expenses incurred by Evercore during the

Engagement Period in the amount of $2,920.62, for a total of $16,031,952.62, (ii) authorizing

and directing the Debtors to make payment in respect of $11,698,952.62 of such fees and

expenses, less amounts paid previously; (iii) authorizing and directing the Debtors to make

payment in respect of $4,333,000 of such fees on entry of an order confirming the Chapter 11

Plan consistent with the requirements specified above; and (iv) granting such other and further

relief as this Court deems just and proper.

Dated:  New York, New York
        November  11 , 2009

EVERCORE GROUP L.L.C.

By: _____
        William C. Repko
        Senior Managing Director

13

## **Exhibit A**

Retention Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                  :

In re                                 :         Chapter 11 Case No.
                                  :

**MOTORS LIQUIDATION COMPANY**, *et al.*,  :        09-50026 (REG)
     f/k/a **General Motors Corp.**, *et al.*  :
                                  :

                  **Debtors.**       :         (Jointly Administered)
                                  :
------------------------------------------------------------x

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EVERCORE GROUP L.L.C. AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS NUNC *PRO TUNC* TO THE PETITION DATE

       Upon the Application (the "**Application**")[1] of General Motors Corporation and certain of its subsidiaries and affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and each, a "**Debtor**"), for an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing and approving the employment and retention of Evercore Group L.L.C. ("**Evercore**") as their investment banker and financial advisor in the above-captioned chapter 11 cases, pursuant to the terms set forth in the Application; and upon the Declaration of William C. Repko, a Senior Managing Director of Evercore, filed in support of the Application, annexed to the Application as Exhibit B (the "**Repko Declaration**"), and the Court being satisfied, based on the representations made in the Application and in the Repko Declaration, that Evercore is a "disinterested person" as such term is defined in section 101(14)

---

[1] Capitalized terms used herein and not otherwise defined herein have the meanings ascribed to such terms in the Application.

of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither represents nor holds an interest adverse to the Debtors and their estates; and the Court having jurisdiction to consider the Application and the relief requested therein; and due and proper notice of the Application having been provided; and a hearing (the **"Hearing"**) having been held with respect to the Application on October 28, 2009; and the Objections of the Unsecured Creditors' Committee, the United States Trustee, and the Ad Hoc Committee of Personal Injury Asbestos Claimants having been resolved as reflected in this Order, and the other objection to the Application having been withdrawn; and upon the record of the Hearing; and the Court being satisfied that just cause has been presented for the relief requested in the Application; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain Evercore as their investment banker and financial advisor, nunc pro tunc to the Petition Date, on the terms set forth in the Application and the GM Engagement Letter, as hereinafter modified; and it is further

**ORDERED** that the terms of the GM Engagement Letter are reasonable terms and conditions of employment and are approved, as hereinafter modified; and it is further

**ORDERED** that Evercore shall be compensated in accordance with the terms of the GM Engagement Letter (as hereinafter modified) pursuant to the standard of review under section 328(a) of the Bankruptcy Code and not subject to review under section 330(a) of the Bankruptcy Code (except as to the United States Trustee, as set forth below); provided, however, that Evercore (a) shall only be required to maintain time records for services rendered

postpetition, in half-hour increments and (b) shall not be required to provide or conform to any

schedule of hourly rates; and it is further

**ORDERED** that, notwithstanding anything contained herein, in the Application,

or in the GM Engagement Letter to the contrary, the Newco Transaction Fee which has a balance

payable in the amount of $13 million, shall be paid to Evercore as follows:

(i)      $8,667,000 shall be payable upon entry of this Order; and

(ii)     the balance of $4,333,000 shall be payable on entry of an order confirming a plan of reorganization (the **"Plan"**) with respect to Motors Liquidation Company which provides that (x) holders of allowed general unsecured claims will receive the stock and warrants of General Motors Company (the **"New GM Securities"**) paid to the Debtors' estates in connection with the consummation of the sale under section 363 of the Bankruptcy Code authorized and approved by Order of this Court, dated July 5, 2009, and (y) there are sufficient funds and other assets in the Debtors' estates to pay all allowed priority and allowed administrative expense claims under the Plan without the necessity of selling or otherwise affecting the New GM Securities;

and it is further

**ORDERED** that upon entry of this Order, the Debtors are authorized to and shall

pay to Evercore the DIP Structuring Fee in the amount of $2,500,000 and Evercore's monthly

fees for the period June 1, 2009 through July 10, 2009 in the aggregate amount of $529,032, plus

documented, reasonable reimbursable expenses in an amount not to exceed $20,000; and it is

further

**ORDERED** that, notwithstanding anything to the contrary set forth above, the

United States Trustee retains all rights to object to Evercore's final fee application (including

expense reimbursement) on all grounds, including, but not limited to, the reasonableness

standard set forth in section 330 of the Bankruptcy Code; and it is further

**ORDERED** that all requests of Evercore for payment of indemnity pursuant to

the GM Engagement Letter shall be made by means of an application (interim or final, as the

case may be) and shall be subject to approval by the Court, after notice and a hearing, <u>provided</u>, <u>however</u>, that in no event shall Evercore be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

**ORDERED** that in no event shall Evercore be indemnified if the Debtors or a representative of their estates asserts a claim for, and a court determines by final order that such claim arose out of, Evercore's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

**ORDERED** that, except as set forth above, no additional fees or expenses shall be payable by the Debtors to Evercore in connection with the Application; and it is further

**ORDERED** that this Court will retain jurisdiction to construe and enforce the terms of the Application, the GM Engagement Letter, and this Order.

Dated:     New York, New York
           October _28_, 2009

                                   _s/ Robert E. Gerber_
                                   UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

GM Engagement Letter

# EVERCORE GROUP L.L.C

September 5, 2008

Mr. Walter G. Borst
Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Walter:

This engagement letter (this "Agreement") formalizes the arrangement between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein.

Under the terms of this Agreement, Evercore will provide financial advisory services to the Company in connection with its strategic planning process, capital markets activities, and evaluation of strategic alternatives. Evercore will provide financial advisory services as customarily may be required in connection with engagements of this type.

As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore a monthly retainer fee of $500,000, payable in arrears, beginning June 23, 2008. In the event Evercore is subsequently retained as financial advisor during the next 6 months on any strategic and financial alternatives involving a merger, sale of all or part of the equity, business or assets of the Company or other significant corporate transaction (a "Transaction"), the monthly retainer fees would be creditable against any success fee payable under the separate engagement, in whole or in part as determined solely by the Company after consultation with Evercore. The company also agrees to reimburse Evercore for its reasonable and customary expenses (including legal and other professional fees, expenses and disbursements) incurred in connection with its engagement.

The Company recognizes and consents to the fact that (a) Evercore will use and rely on the accuracy and completeness of public reports and other information provided by others, including information provided by the Company, other parties and their respective officers, employees, auditors, attorneys or other agents in performing the services contemplated by this Agreement, and (b) Evercore does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information.

The Company will provide to Evercore all information and data requested by Evercore that the Company reasonably deems appropriate in connection with Evercore's engagement. The Company will use its reasonable best efforts to ensure that any information heretofore or hereafter furnished to Evercore is and will be true and correct in all material respects and does not and will not omit any material fact required to make the

Letter to Mr. Walter Borst
General Motors Corporation
September 5, 2008
Page 2

information given to Evercore not misleading. The Company will use its reasonable best efforts to notify Evercore promptly of any material change or correction in information regarding the business or financial condition of the Company that it has provided to Evercore when it becomes aware of such material change or of an error necessitating such correction.

The Company agrees that any information or advice rendered by Evercore under this engagement shall be kept confidential by the management and Board of Directors of the Company, is solely for the use of the management and Board of Directors of the Company and may not be provided to, or relied upon by, others without the consent of Evercore. Evercore understands that the Company may need to share Evercore's information and advice with its attorneys, auditors or other advisers, and Evercore hereby consents to any such sharing, provided however, that no such third party may rely on such information or advice without the written consent of Evercore.

Evercore's engagement hereunder may be terminated by the Company or by Evercore at any time upon written notice and without liability or continuing obligation to the Company or to Evercore (except for any compensation earned and expenses incurred by Evercore prior to the date of termination and as specified below); provided that the Indemnification Agreement attached hereto as Schedule I will remain operative regardless of any such termination.

Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in the Indemnification Agreement, the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture, or partnership. Evercore shall at all times be and be deemed to be an independent contractor. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

This Agreement (including the Indemnification Agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

Letter to Mr.Walter Borst
General Motors Corporation
September 5, 2008
Page 3

The Company acknowledges that Evercore's affiliates engage in the private equity business, asset management business and related activities (collectively, "Non-Broker Dealer Businesses"). In the ordinary course of our Non-Broker Dealer Businesses, Evercore's affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of their customers, in debt or equity securities or senior loans of the Company or any other company that may be involved in a transaction with the Company.  Evercore represents and warrants that it has reasonable policies and procedures in place to prevent its affiliates from using material, non-public information in Evercore's possession.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

The parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in New York County over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court.  The parties irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above.  The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of *forum non conveniens.*

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

*[Signature page follows]*

Letter to Mr.Walter Borst
General Motors Corporation
September 5, 2008
Page 4

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

EVERCORE GROUP L.L.C.

By: _____
[Name] William O. Hiltz
[Title] Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By: _____
[Name] Walter G. Borst
[Title] Treasurer

<u>Schedule I</u>

**Indemnification Agreement**

September 5, 2008

Mr. Walter G. Borst
Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Walter:

In connection with the engagement of Evercore Group L.L.C. ("Evercore") to render financial advisory services to General Motors Corporation (the "Company") pursuant to the engagement letter, dated September 5, 2008, the Company and Evercore are entering into this Indemnification Agreement (this "Agreement"). It is understood and agreed that in the event that Evercore or any of its members, partners, officers, directors, advisors, representatives, employees, agents, affiliates or controlling persons, if any (each of the foregoing, including Evercore, an "Indemnified Person"), become involved in any capacity in any claim, action, proceeding or investigation brought or threatened by or against any person, including the Company's stockholders, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, the Company will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses (including the reasonable out of pocket cost of any investigation and preparation) as and when they are incurred in connection therewith, provided that such reimbursement may be remitted to the Company as provided below.

The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, whether or not any pending or threatened claim, action, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any claim, action, proceeding or investigation in which the Company or an Indemnified Person is a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment to have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct.

The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of or in connection with Evercore's engagement, Evercore's performance of any service in connection therewith or any transaction contemplated thereby, except to the extent that any loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment to have resulted primarily from such Indemnified Person's gross negligence, bad faith or

Indemnification Agreement
General Motors Corporation
September 5, 2008
Page 2

willful misconduct. Each Indemnified Person shall promptly remit to the Company any amounts paid to such Indemnified Person under this Agreement in respect of losses, claims, damages, liabilities or expense that resulted from such Indemnified Person's gross negligence, bad faith or willful misconduct.

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is unavailable or insufficient in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company and its security holders on the one hand and the party entitled to contribution on the other hand in the matters contemplated by Evercore's engagement as well as relative fault of the Company and such party with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. To the extent permitted by applicable law, in no event shall Evercore or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Evercore for such financial advisory services. The Company and Evercore agree that it would not be just and equitable if contribution hereunder were determined by pro rata allocation or by any other method that does not take into account the equitable considerations referred to herein. The Company's reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights Evercore or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Evercore, and any other Indemnified Persons.

If any claim, action, proceeding or investigation shall be brought, threatened or asserted against an Indemnified Person in respect of which indemnity may be sought against the Company, Evercore shall promptly notify the Company in writing, and the Company shall be entitled, at its expense, and upon delivery of written notice to Evercore, to assume the defense thereof with counsel reasonably satisfactory to Evercore. Such Indemnified Person shall have the right to employ separate counsel in any such claim, action, proceeding or investigation and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Company has agreed in writing to pay such fees and expenses, (ii) the Company has failed to assume the defense, pursue the defense diligently or to employ counsel in a timely manner or (iii) counsel has advised such Indemnified Person that in such action, claim, suit, proceeding or investigation there is a conflict of interest between the Company's position and the position of the Indemnified Person. It is understood, however, that in the situation in which an Indemnified Person is entitled to retain separate counsel pursuant to the preceding sentence, the Company shall, in connection with any one such claim, action, proceeding, investigation or separate but substantially similar or related claims, actions, proceedings or investigations in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all such Indemnified Persons, which firm shall be designated in writing by Evercore. The Company shall not be liable for any settlement or compromise of any claim, action, proceeding or investigation (or for any related

Indemnification Agreement
General Motors Corporation
September 5, 2008
Page 3

losses, claims, damages, liabilities or expenses) if such settlement or compromise is effected without the Company's prior written consent (which will not be unreasonably withheld).

The Company agrees that, without Evercore's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution is reasonably likely to be sought hereunder (whether or not Evercore or any other Indemnified Person is an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release from the settling, compromising or consenting party of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation.

No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

This Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York.

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

Indemnification Agreement
General Motors Corporation
September 5, 2008
Page 4

This Agreement shall remain in effect indefinitely, notwithstanding any termination of Evercore's engagement.

Very truly yours,

EVERCORE GROUP L.L.C.

By: _W. O. Hiltz_____
[Name] William O. Hiltz
[Title] Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By: _____
[Name] Walter G. Borst
[Title] Treasurer

DEC 23 2008 17:35  FR ASST TREASURER         3695 TO 912482674595         P.01/04

December 23, 2008

Mr. Adil Mistry
Assistant Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Adil:

This letter (this "Amendment") amends that certain engagement letter entered into between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (the "Company") dated September 5, 2008 (the "Agreement"), regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth therein.

Unless otherwise noted, all defined terms set forth in this Amendment shall have the same meaning as set forth in the Agreement. The Agreement shall continue in full force and effect in accordance with the provisions thereof, except that, effective as of the date hereof, the following sections of the Agreement are amended as follows:

1. The second full paragraph on page 1 of the Agreement is deleted in its entirety and replaced with the following:

   "Under the terms of this Agreement, Evercore will provide financial advisory services to the Company in connection with its strategic planning process, capital markets activities, and evaluation of strategic and financial alternatives, including the possibility of a debt exchange, reorganization, merger, sale or other significant transaction. Evercore will provide financial advisory services as customarily may be required in connection with engagements of this type. In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring or Other Transaction (both as defined below). Evercore shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice."

2. The third full paragraph on page 1 of the Agreement is deleted in its entirety and replaced with the following:

   "As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore, upon execution of this Amendment, the following fees in cash as and when set forth below:

Engagement Letter Amendment
General Motors Corporation
December 23, 2008
Page 2

1) Commencing on January 1, 2009, the Company agrees to pay Evercore a monthly retainer fee in the amount of $1,000,000, payable in advance, until termination of this Agreement (the "New Monthly Retainer Fee"). For the avoidance of doubt, the $500,000 monthly retainer payments due to Evercore under the original agreement dated September 5, 2008 (the "Old Monthly Retainer Fee") shall cease upon payment of the December 2008 Old Monthly Retainer Fee. The New Monthly Retainer Fees would be creditable against any Restructuring Fee as determined solely by the Company after consultation with Evercore, but in no case shall the amount creditable be greater than $4,000,000.; and

2) A restructuring fee (a "Restructuring Fee"), payable upon the consummation of any Restructuring (as defined below) according to the following schedule:

   a) 0.15% of the face value of Existing Obligations (as defined below) restructured for amounts up to $10,000,000,000;

   b) 0.10% of the face value of Existing Obligations restructured for amounts from $10,000,000,000 up to $20,000,000; and

   c) An additional $5,000,000 for any amount of the face value of Existing Obligations restructured above $20,000,000.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization including without limitation, cancellation, forgiveness, satisfaction, retirement, purchase and/or a material modification or amendment to the terms of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension liabilities, lease obligations, partnership interests and other liabilities (collectively, the "Existing Obligations") including pursuant to a sale, repurchase or an exchange transaction, a plan, or a solicitation of consents, waivers, acceptances or authorizations. For the avoidance of doubt, the term "Existing Obligations" shall exclude any amounts relating to the VEBA that the UAW may agree to restructure.

In the event that the Company undertakes any other significant transaction, such as a reorganization, restructuring, merger, sale of all or part of the equity, business or assets of the Company or other significant corporate transaction (an "Other Transaction"), the Company agrees that it will pay to Evercore a reasonable and customary Transaction fee, with the exact amount to be mutually agreed. Evercore understands that the Company is likely to work with more than one financial advisor in connection with an Other Transaction, with Evercore to receive not less than half of the total financial advisory fees paid by the Company in connection with such Other Transaction. The company also agrees to reimburse Evercore for its reasonable and customary expenses (including legal and other professional fees, expenses and disbursements) incurred in connection with its engagement."

Engagement Letter Amendment
General Motors Corporation
December 23, 2008
Page 3

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

*[signature page follows]*

Engagement Letter Amendment
General Motors Corporation
December 23, 2008
Page 4


Very truly yours,

EVERCORE GROUP L.L.C.

By:

William Repko
Senior Managing Director


Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By:

Adil Mistry
Assistant Treasurer

# EVERCORE GROUP L.L.C.

April 28, 2009

Mr. Adil Mistry
Assistant Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Dear Adil:

This letter (the "Second Amendment") amends the engagement letter entered into between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (the "Company") dated September 5, 2008 (the "Agreement") and the letter amendment dated December 23, 2009 to the Agreement (the "Amendment"), regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth therein.

Because of the substantial work performed by Evercore in pursuit of a Transaction (as defined in the Agreement), including the evaluation and analysis of the Company's alternatives for financial restructuring and debt reduction, assistance in drafting the exchange offer prospectus, providing tactical advice in the structure of the exchange offer, providing extensive support with respect to submissions to the U.S. Treasury and assistance in due diligence performed by the U.S. Treasury and their advisors, assistance in negotiations with and due diligence performed by lenders and their advisors, assistance in due diligence performed by the UAW and its advisors, the evaluation of strategic alternatives for the Company and preparation for a potential bankruptcy filing, we have agreed that certain modifications to the compensation payable to Evercore are appropriate at this time.

Unless otherwise noted, all defined terms set forth in this Second Amendment shall have the same meaning as set forth in the Agreement. The Agreement shall continue in full force and effect in accordance with the provisions thereof, as previously amended by the Amendment, except that, effective as of the date hereof, the Agreement (as amended) is amended as follows:

GM agrees to pay Evercore two non-refundable cash fees as follows: (a) $5,000,000 on April 29, 2009; and (b) $5,000,000 upon the filing with the Securities and Exchange Commission of the first amendment to the Registration Statement with respect to the pending exchange offers or May 11, 2009, whichever occurs first. Such fees shall each be deemed an advance, and shall each be fully creditable, against any Restructuring Fee payable pursuant to the Agreement, as amended. For the avoidance of doubt, New Monthly Retainer Fees shall also be credited against any Restructuring Fee as contemplated by and subject to the cap included in the Amendment.

In no event shall the Company be required to pay more than $30,000,000 in the aggregate for Restructuring Fees (such maximum amount shall be prior to any and all amounts offset against Restructuring Fees pursuant to this Agreement, as amended,

including the non-refundable cash fees set forth above and any creditable New Monthly Retainer Fees).

The paragraphs on page 2 of the Amendment (which addressed the definition of "Restructuring" and the compensation payable to Evercore if an "Other Transaction" is consummated) are deleted in their entirety and replaced with the following:

> "As used in this Agreement, the term "Restructuring" shall mean, collectively, (a) any restructuring, reorganization and/or recapitalization that involves cancellation, forgiveness, satisfaction, retirement and/or purchase of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), unfunded pension liabilities including pursuant to a sale, repurchase or an exchange transaction (collectively, the "Existing Obligations") or (b) any merger, consolidation or other such sale of the Company or the sale of all or substantially all of its assets. The Company also agrees to reimburse Evercore for its reasonable and customary out-of-pocket expenses (including legal and other professional fees, expenses and disbursements) incurred in connection with its engagement."

Each party has all necessary corporate or limited liability company, as applicable, power and authority to enter into this Agreement. All corporate or limited liability company, as applicable, action has been taken by each party necessary for the authorization, execution, delivery of, and the performance of all obligations of each of the parties under the Agreement, and each signatory below is duly authorized to sign this Agreement on behalf of the party it represents.

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Company, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

*[signature page follows]*

Very truly yours,

EVERCORE GROUP L.L.C.

By:

William Repko
Senior Managing Director

Agreed to and Accepted as of the Date
First Written Above:

GENERAL MOTORS CORPORATION

By:

Adil Mistry
Assistant Treasurer

May 29, 2009

Mr. Adil Mistry
Assistant Treasurer
General Motors Corporation
767 Fifth Avenue
New York, NY 10153

Gentlemen:

This amended and restated engagement letter (this "Agreement"), executed as of the date above, is to formalize the arrangement between Evercore Group L.L.C. ("Evercore") and General Motors Corporation (together with any direct or indirect subsidiaries, the "Company") regarding the retention of Evercore by the Company as a financial advisor for the purposes set forth herein.

This Agreement amends and restates the engagement letter dated September 5, 2008 between the parties, as amended (the "Original Engagement Letter"); provided, however, the Company's obligations to indemnify Evercore pursuant to the Indemnification Agreement, between the parties effective as of September 5, 2008 (the "Indemnification Agreement"), shall remain unaltered.

Pursuant to the Second Amendment, dated as of April 28, 2009, to the Original Engagement Letter and in connection with the services provided by Evercore, the Company (x) agreed to pay and paid to Evercore a portion of the Restructuring Fee (as defined below) equal to $5 million on April 29, 2009 and (y) agreed to pay and paid to Evercore another $5 million portion of the Restructuring Fee on May 14, 2009 (such fees, the "Forward Restructuring Fees").

Pursuant to the Original Engagement Letter and in connection with the services provided by Evercore, the Company agreed to pay and has paid to Evercore monthly retainer fees (such fees, the "Advisory Fees").

**Assignment Scope:**

The Company hereby retains Evercore as its financial advisor to provide the Company with general investment banking advice and to advise it in connection with any Restructuring, Financing and/or Sale transactions (each defined below) on the terms and conditions set forth herein.

As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization and/or recapitalization (including, but not limited to, a Restructuring pursuant to 11 U.S.C. §101 *et seq.*, as from time to time amended, and any other current or future federal statute or regulation that may be applicable to a Restructuring of the Company (11 U.S.C. §101 *et seq.* and those other statutes and regulations are referred to herein generically as the "Bankruptcy Code")) that involves cancellation, forgiveness, satisfaction, retirement and/or purchase of the Company's outstanding indebtedness (including bank debt, bond debt, preferred

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 2

stock, and other on and off balance sheet indebtedness), leases (both on and off balance sheet) and unfunded pension liabilities (collectively, the "Existing Obligations") or (b) any merger, consolidation, or other such sale of the Company or the sale of all or substantially all of its assets. For the avoidance of doubt, the term "Existing Obligations" shall exclude any amounts relating to the VEBA that the UAW may agree to restructure.

## Description of Services:

1. Evercore agrees, in consideration of the compensation provided in Section 2 below, to perform the following services, to the extent it deems such services necessary, appropriate and feasible:

   a. Reviewing and analyzing the Company's business, operations and financial projections;

   b. Advising and assisting the Company in a Restructuring, Financing and/or Sale transaction, if the Company determines to undertake such a transaction;

   c. Providing financial advice in developing and implementing a Restructuring, which would include:

      i. Assisting the Company in developing a restructuring plan or plan of reorganization, including a plan of reorganization pursuant to the Bankruptcy Code (any such plans are referred to generically herein as the "Plan");

      ii. Advising the Company on tactics and strategies for negotiating with various stakeholders regarding the Plan;

      iii. Providing testimony, as necessary, with respect to matters on which Evercore has been engaged to advise the Company in any proceedings under the Bankruptcy Code that are pending before a court (generically referred to herein as the "Bankruptcy Court") exercising jurisdiction over the Company as a debtor; and,

      iv. Providing the Company with other financial restructuring advice as Evercore and the Company may deem appropriate.

   d. If the Company pursues a Financing, assisting the Company in:

      i. Structuring and effecting a Financing;

      ii. Identifying potential Investors (as defined below) and, at the Company's request, contacting such Investors; and,

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 3

    iii.  Working with the Company in negotiating with potential Investors.

As used in this agreement, the term "Financing" shall mean a private issuance, sale or placement of newly issued or treasury equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "Investor"), including any "debtor-in-possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or a rights offering or any loan or other financing or obligation, except to the extent issued to existing Investors of the Company in exchange for their existing securities.

It is understood that nothing contained herein shall constitute an express or implied commitment by Evercore to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment, if any, shall be set forth in a separate underwriting placement or other appropriate agreement relating to a Financing.

e.  If the Company pursues a Sale, assisting the Company in:

    i.  Structuring and effecting a Sale;

    ii.  Identifying interested parties and/or potential acquirors and, at the Company's request, contacting such interested parties and/or potential acquirors; and

    iii.  Advising the Company in connection with negotiations with potential interested parties and/or acquirors and aiding in the consummation of a Sale transaction.

As used in this agreement, the term "Sale" shall mean, whether or not in one transaction, or a series of related transactions, (a) the disposition to one or more third parties whether or not pursuant to the Bankruptcy Code of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the Company by the existing security holders of the Company; or (b) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to the Bankruptcy Code, of which all or a portion of the business, assets or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction or ordinary course sales of inventory); or (c) an acquisition, merger, consolidation, sale, including a sale pursuant to the Bankruptcy Code, or other business combination pursuant to a successful "credit bid" of any securities by existing securities holders; or (d) the formation of a joint venture, partnership or similar entity, or any similar sale transaction.

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 4

    f.  Rendering an opinion (a "Fairness Opinion") to the Board of Directors of the Company as to the fairness, from a financial point of view, of the consideration to be paid or received by the Company in connection with a Master Sale and Purchase Agreement (the "MSPA") with Auto Acquisition LLC ("NewCo") and the other parties named therein, which will provide for a sale of the Purchased Assets (the "Purchased Assets"), as defined in the MSPA, pursuant to authorization that will be sought under section 363 of the Bankruptcy Code (11 U.S.C. §101, et seq.) (the "NewCo Transaction"). It is understood that the Opinion shall be in such form and with such assumptions and qualifications as determined appropriate by Evercore. It is further understood that Evercore will express no view, and assume no liability, as to the future distribution of the purchase price to holders of any securities of the Company or to any creditor or interest holder of the Company or to any class of creditors or interest holders of the Company; nor will Evercore evaluate or express any opinion as to the recovery that might be available to the holders of any securities of the Company or to any creditor or interest holder of the Company or to any class of creditors or interest holders of the Company in a bankruptcy proceeding or other restructuring, whether or not the Company proceeds with the NewCo Transaction. In rendering its services to the Company hereunder, Evercore is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction.

Evercore shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for design or implementation of operating, organizational, administrative, cash management or liquidity improvements; nor shall Evercore be responsible for providing any tax, legal or other specialist advice. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

**Fees:**

2.  As compensation for the services rendered by Evercore hereunder, the Company agrees to pay Evercore the following fees in cash as and when set forth below:

    a.  A monthly fee of $400,000 (a "Monthly Fee"), payable on the 1st day of each month of our engagement hereunder, for a period of 24 months, commencing June 1, 2009 through (and including) May 1, 2011 and then decreasing to $250,000 per month thereafter until the earlier of effectiveness of a Plan or termination pursuant to Section 5.

    b.  A fee (a "Fairness Opinion Fee") in an amount of $6 million, payable in cash on May 29, 2009. 50% of the Fairness Opinion Fee (the "Opinion Fee Credit") shall be creditable against the NewCo Transaction Fee (as defined below).

    c.  Restructuring and Sale Fees:

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 5

    i.    A fee (a "Restructuring Fee") equal to $30,000,000 payable upon the consummation of any Restructuring (as defined above). The full amount of the Forward Restructuring Fees (the "Forward Restructuring Fee Credit") shall be creditable (without duplication) against the Restructuring Fee on a dollar-for-dollar basis. $4,000,000 of the Advisory Fees (the "Advisory Fee Credit") shall be creditable (without duplication) against the Restructuring Fee on a dollar-for-dollar basis. The Financing Fee Credit (as defined below) shall be creditable against the Restructuring Fee (without duplication) on a dollar-for-dollar basis.

    ii.    A fee (a "Sale Fee"), payable upon consummation of any Sale (other than described in clause (d)(i) below), equal to the product of (a) the Aggregate Consideration (as defined below) of a Sale as set forth in Annex 1 and (b) applicable percentage, as set forth in Annex 1. The table attached as Annex 1 represents the applicable percentage as a fee for Aggregate Consideration received in connection with the Sale (for the avoidance of doubt, Aggregate Consideration of $5 billion would equate to a Sale Fee of $17.5 million (before taking into account any applicable credits).

           As used in this Agreement, the term "Aggregate Consideration" shall mean the total fair market value (determined at the time of the closing of a Sale by the Company and Evercore in good faith) of all consideration paid or payable to, or received by, directly or indirectly, the Company, its Bankruptcy estate, its creditors and/or the security holders of the Company in connection with a Sale including all (i) cash, securities (equity or otherwise) and other property, (ii) Company indebtedness assumed, satisfied, or paid by a purchaser (including, without limitation, the amount of any indebtedness, securities or other property "credit bid" in any Sale) and any other indebtedness and obligations, including tax claims that will actually be paid, satisfied, or assumed by a purchaser from the Company or the security holders of the Company and (iii) amounts placed in escrow and deferred, contingent and installment payments.

    iii.    50% of any Sale Fee (a "Sale Fee Credit") shall be creditable against any Restructuring Fee; provided, such Sale Fee credit shall be creditable only after the credit of the Forward Restructuring Fee Credit and the Advisory Fee Credit against the Restructuring Fee.

d.    A fee (the "NewCo Transaction Fee") equal to $30,000,000, payable upon consummation of the NewCo Transaction. The Forward Restructuring Fee Credit, the Advisory Fee Credit and the Opinion Fee Credit shall be creditable, in each case on a dollar-for-dollar basis, against the NewCo Transaction Fee. The NewCo Transaction Fee shall be payable upon closing of the transaction proposed by the Company as the NewCo Transaction, regardless of whether the buyer approved by the bankruptcy court shall be NewCo or another bidder that has made a higher or otherwise better offer.

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 6

    e.  A fee or fees (collectively, a "Financing Fee"), payable upon consummation of any Financing and incremental to any Restructuring Fee or Sale Fee as follows:

         i.  A fee in the amount of $2,500,000 for assisting the Company in the structuring and implementation of debtor-in-possession ("DIP") Financing under the Bankruptcy Code (the "DIP Structuring Fee").

        ii.  For any Financing other than a DIP Financing provided by the United States Government (the "Other Financing" and the corresponding fee, the "Other Financing Fee"), a 3% fee of the gross proceeds provided by such financing.

        iii.  For the avoidance of doubt, no Financing Fee (other than the DIP Structuring Fee) shall be payable in connection with the NewCo Transaction.

    50% of any Financing Fee, but excluding any DIP Structuring Fee, (the "Financing Fee Credit") shall be credited (without duplication) on a dollar-for-dollar basis against the Restructuring Fee.

    f.  In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, the Company shall promptly reimburse to Evercore (a) all reasonable out-of-pocket expenses (including reasonable travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (b) reasonable fees and expenses of legal counsel, if any, in each case incurred by Evercore in connection with the services provided hereunder. Notwithstanding the foregoing, the Company's reimbursement of all reasonable fees and expenses of legal counsel shall be subject to the Company's Legal Staff Disbursement Guidelines. Evercore agrees to provide, in a timely manner, such detailed documentation of expenses as may be reasonably requested by the Company. The Company has previously advanced $100,000 for the expenses and fees of legal counsel to Evercore.

    g.  A fee ( the "Delphi Fee") in the amount of $2 million for advisory services relating to Delphi Corporation ("Delphi"), payable upon (i) consummation of any plan of reorganization of Delphi Corporation or (ii) the sale or other transfer of all or substantially all of the assets or business of Delphi in a single transaction or series of related transactions. For avoidance of doubt, the Delphi Fee is not creditable against any fee.

    h.  If Evercore provides services to the Company for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Company and Evercore will agree upon a fee for such services based upon good faith negotiations.

    i.  Notwithstanding anything to the contrary in this Agreement, Evercore shall not be obligated to credit any fee against any other fee earned under this Agreement unless the Bankruptcy Court approves this Agreement and allows all fees provided for hereunder in their entirety; provided, however, that nothing herein shall permit Evercore to collect:

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 7

> 1. in connection with the NewCo Transaction, aggregate fees in excess of the aggregate of the NewCo Transaction Fee, DIP Structuring Fee, Fairness Opinion Fee and Monthly Fees, in each case to the extent earned by Evercore and payable by the Company, if the Bankruptcy Court were to allow all such fees and the full amount of the Advisory Fee Credit, Forward Restructuring Fee Credit and Opinion Fee Credit were applied to such fees; or
>
> 2. in connection with a Restructuring and/or Sale (other than the NewCo Transaction), aggregate fees in excess of the Restructuring Fee, Financing Fee, Sale Fees, Fairness Opinion Fee and Monthly Fees, in each case to the extent earned by Evercore and payable by the Company, if the Bankruptcy Court were to allow all such fees and the full amount of the Advisory Fee Credit, Forward Restructuring Fee Credit, Financing Fee Credit and Sale Fee Credit were applied to such fees.

j.  All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

k.  In addition, the Company and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(c), 2(d), 2(e) 2(g) and/or 2(h) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore. Notwithstanding the foregoing, the Company and Evercore acknowledge and agree that Evercore shall only be entitled to either (a) the NewCo Transaction Fee or (b) a Restructuring Fee and/or a Sale Fee, and not both (a) and (b). For the avoidance of doubt, if Evercore is entitled to the NewCo Transaction Fee, Evercore shall not be entitled to any Restructuring Fee or Sale Fee.

## Retention in Bankruptcy Code Proceedings:

3.  In the event of the commencement of Chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Evercore on the terms and conditions set forth in this Agreement under the provisions of 11 U.S.C. §§ 327 and 328 subject to the standard of review provided in Section 328(a), and not subject to the standard of review under 11 U.S.C. § 330 or any other standard of review. Subject to being so retained, Evercore agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Evercore with a draft of the application and proposed retention order authorizing Evercore's retention sufficiently in advance of the filing of such application and proposed order to enable Evercore and its counsel to review and comment thereon. Evercore shall be under no obligation to provide any services under this agreement in the event that the

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 8

Company becomes a debtor under the Bankruptcy Code unless Evercore's retention under the terms of this Agreement is approved under Section 328(a) by final order of the Bankruptcy Court, not subject to appeal, which order is acceptable to Evercore. In so agreeing to seek Evercore's retention under Section 328(a), the Company acknowledges that it believes that Evercore's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale and/or Financing, that the value to the Company of Evercore's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable under the standard set forth in Section 328(a), regardless of the number of hours to be expended by Evercore's professionals in the performance of the services to be provided hereunder. No fee payable to any other person, by the Company or any other party, shall reduce or otherwise affect any fee payable hereunder to Evercore.

## Other:

4.  Evercore's engagement hereunder is premised on the assumption that the Company will make available or cause to make available to Evercore all information and data that Evercore reasonably deems appropriate in connection with its activities (the "Information") on the Company's behalf and will not omit or withhold any material information unless required by applicable law. The Company will use its reasonable best efforts to ensure that any Information heretofore and hereafter furnished to Evercore is and will be true and correct in all material respects and does not and will not omit any material fact required to make Information not misleading. The Company will use its reasonable best efforts to notify Evercore promptly of any material change or correction in Information regarding the business or financial condition of the Company that it has provided to Evercore when it becomes aware of such material change or of an error necessitating such correction. The Company recognizes and consents to the fact that (a) Evercore will use and primarily rely on the Information and information available from generally recognized public sources in performing services contemplated by this Agreement without have independent verification of same and (b) Evercore does not assume responsibility for the accuracy and completeness of the Information or any such information. It is also understood that the Fairness Opinion may state that Evercore has not verified and can rely on any such information described in Section 4, including the Liquidation Analysis prepared by Alix Partners.

5.  Evercore's engagement hereunder may be terminated by the Company or Evercore at any time without liability or continuing obligation to the Company or Evercore, except that following such termination of this Agreement, (a) Evercore shall remain entitled to any fees accrued and payable pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination and (b) in the case of termination by the Company, Evercore shall remain entitled to payment of all fees contemplated by Section 2 (subject to the terms and conditions therein, including application of any credits) hereof in respect to any Restructuring, Sale

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 9

and/or Financing announced or occurring during the period from the date hereof until 12 months following such termination. Notwithstanding the foregoing, other than the NewCo Transaction, nothing in this Agreement shall preclude the Company from engaging another firm to advise the Company regarding any Sale, and in such case, Evercore shall not be entitled to a Sale Fee in connection with such transaction. Upon the consummation of the NewCo Transaction, Evercore's engagement shall be terminated.

6. Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in accordance with the Indemnification Agreement , the Indemnified Persons (as defined in the Indemnification Agreement), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Company acknowledges that Evercore is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. Evercore shall at all times be and be deemed to be an independent contractor. Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Company or its Board of Directors. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

7. As part of the compensation payable to Evercore hereunder, the Company agrees to indemnify Evercore and certain related persons in accordance with the Indemnification Agreement. Such indemnification provisions are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. Such indemnification provisions shall survive any termination or completion of Evercore's engagement hereunder.

8. The Company agrees that it is solely responsible for any decision regarding a transaction, regardless of the advice provided by Evercore with respect to such a transaction. The Company acknowledges that the Company's appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee the closing of a transaction and that Evercore is not in a position to guarantee the achievement or closing of a transaction.

9. The Company recognizes that Evercore has been engaged only by the Company and that the Company's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company, is

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 10

authorized to rely upon the Company's engagement of Evercore or any statements, advice, opinions or conduct by Evercore. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or senior management in the course of the Company's engagement of Evercore are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring, Sale, Financing or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with a transaction. Any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore; except as may be required pursuant to a subpoena, order, requirement or request of a court of competent jurisdiction or by a judicial or administrative or legislative body or committee (including disclosure obligations of the Company under applicable securities laws); provided that, the Company shall have promptly notified Evercore of the receipt or existence of any such subpoena, order, requirement or request. Notwithstanding the foregoing, the terms of this letter agreement may be disclosed (a) in any proceeding filed by or against it under title 11 of the Code or (b) to the United States Department of the Treasury.

10. In order to coordinate Evercore's efforts on behalf of the Company during the period of Evercore's engagement hereunder, the Company will promptly inform Evercore of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement.

11. This Agreement (including the Indemnification Agreement) between Evercore and the Company, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

12. In the event that, as a result of or in connection with Evercore's engagement for the Company, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Evercore for the reasonable fees and expenses of its counsel incurred in responding to such a request, subject to the Company's Legal Staff Disbursement Guidelines. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the Indemnification Agreement.

13. The Company agrees that Evercore shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 11

hereunder; provided, however, Evercore shall have obtained the Company's written consent prior to the placement or publication of any such advertisement.

14. The Company acknowledges that Evercore's affiliates engage in the private equity business, asset management business and related activities (collectively, "Non-Broker Dealer Businesses"). Subject to the maintenance of an appropriate "wall" between those persons working on transactional matters related to this Agreement and those persons connected with the Non-Broker Dealer Businesses, and any other appropriate precautions, in the ordinary course of Evercore's Non-Broker Dealer Businesses, Evercore's affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of customers, in debt or equity securities or senior loans of the Company or any other company that may be involved in a transaction with the Company.

15. The Company agrees to provide and procure all corporate, financial and other information regarding the Company and control persons, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act.

16. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile transmission shall constitute valid sufficient delivery thereof.

17. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan of the City of New York over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such New York State or federal court. The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles). The parties further waive any objection to venue in the State of New York and any objection to any action or proceeding in such state on the basis of forum non conveniens.

*[Signature page to follow]*

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 12

If the foregoing correctly sets forth the understanding and agreement between Evercore and the
Company, please so indicate in the space provided below, whereupon this letter shall constitute a
binding agreement as of the date hereof.

                                        Very truly yours,

                                        Evercore Group L.L.C.

                        By: _____
                                        William C. Repko
                                        Senior Managing Director


Agreed to and Accepted as of the Date
May 29, 2009:

General Motors Corporation

By: _____
        Adil Mistry
        Assistant Treasurer

Mr. Adil Mistry
General Motors Corporation
May 29, 2009
Page 13

Annex 1
Asset Sale Fee Schedule

Asset Sale Fee Schedule representing the applicable percentage(s) as a fee for Aggregate Consideration received in connection with a Sale:

$30 billion and above - 0.12%
$25 billion - 0.14%
$20 billion - 0.17%
$15 billion - 0.20%
$12.5 billion - 0.23%
$10 billion - 0.25%
$7.5 billion - 0.30%
$5 billion - 0.35%
$3 billion - 0.45%
$2.5 billion - 0.50%
$1.6 billion - 0.60%
$800 million - 0.80%
$500 million - 0.90%
$250 million - 1.40%

If the amount of Aggregate Consideration obtained in a Sale falls between any two of the dollar amounts listed above, then the applicable percentage shall be interpolated on a straight-line basis between such two dollar amounts.

**<u>Exhibit C</u>**

Invoices for Fees and Expenses and Time Logs

# EVERCORE GROUP L.L.C.

November 11, 2009


Motors Liquidation Company
767 Fifth Avenue
New York, NY  10153

Attention:      Jesus Tamez
                GM Treasurer's Office – Capital Planning


## I N V O I C E

---

Evercore Fee(s) pursuant to the Engagement Letter dated September 5, 2008 and Amended and Restated
Letter dated May 29, 2009:

Fees Unpaid :
    Retainer Fee

| | |
|---|---:|
|         June 1, 2009 through June 30, 2009 | $400,000.00 |
|         July 1, 2009 through July 10, 2009 | 129,032.00 |
|     Restructuring Fee due upon confirmation of the Plan of Reorganization | <u>4,333,000.00</u> |
| Total Unpaid Fees: | 4,862,032.00 |
| | |
| Out-of-Pocket Expenses – June and July: | |
|     Travel and Travel-related: | 1,453.00 |
|     Professional, Research and Other | <u>1,467.62</u> |
| Total Out-of-Pocket Expenses: | 2,920.62 |
| | |
| Fees Paid: | |
|     Restructuring Fee paid upon entry of the Retention Order | 8,667,000.00 |
|     DIP Structuring Fee | <u>2,500,000.00</u> |
| Total Fees Paid: | 11,167,000.00 |
| | |
| Less:    Advance in excess of pre-petition expenses | (5,634.00) |
| | |
| **Total post-petition Fees and Expenses** | **<u>$16,026,318.62</u>** |

---

**General Motors**
**Summary of Expenses Incurred by Evercore**
**June 1, 2009 through July 10, 2009**

|                                          | Total Expenses |
|------------------------------------------|---------------:|
| Copies & Shipping                        | 465.72         |
| Local Ground Transportation              | 892.65         |
| Meals                                    | 560.35         |
| Research                                 | 105.34         |
| Telecom                                  | 790.00         |
| Word Processing/Presentation Support     | 106.56         |
|                                          | **2,920.62**   |

General Motors
Expense Detial
6/1/2009 - 7/10/2009

| Expense Type | Date | Professional | Description | Expense |
|---|---|---|---|---|
| **Copies & Shipping** | | | | |
| | | | Reproduction Requested On 6/2/2009 | 38.65 |
| | | | FedEx Inv.9-235-91003 - Summary 6/22/09 | 194.49 |
| | | | Reproduction Requested On 7/6/2009 | 54.45 |
| | | | Production Charges 6/09-Oce Inv 706376 | 178.13 |
| | | | | 465.72 |
| **Local Ground Transport** | | | | |
| | 6/1/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 10.81 |
| | 6/1/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 8.80 |
| | 6/1/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | 6/2/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 12.60 |
| | 6/2/2009 | Christensen, Gus | NYC Taxi - Office To GM Client Meeting | 11.64 |
| | 6/2/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 9.80 |
| | 6/4/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 7.44 |
| | 6/5/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 16.33 |
| | 6/5/2009 | Lim, Carlo | Late Night Taxi From Work To Home | 7.92 |
| | 6/8/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 7.59 |
| | 6/8/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 10.30 |
| | 6/8/2009 | Lim, Carlo | Late Night Taxi From Work To Home | 7.44 |
| | 6/9/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 8.15 |
| | 6/10/2009 | Berk, Ryan | NYC Taxi Latenight Weeknight Office To Home | 10.35 |
| | 6/10/2009 | Christensen, Gus | NYC Taxi - Office To GM Client Meeting | 12.60 |
| | 6/11/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 11.25 |
| | 6/11/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 9.90 |
| | 6/11/2009 | Lim, Carlo | Late Night Taxi From Work To Home | 7.44 |
| | 6/12/2009 | Alster, Dan | NYC Taxi Latenight Weeknight Office To Home | 8.05 |
| | 6/12/2009 | Lim, Carlo | Late Night Taxi From Work To Home | 15.60 |
| | 6/12/2009 | Strelcova, Jelena | NYC Taxi Latenight Weeknight Office To Home | 10.00 |
| | 6/15/2009 | Lim, Carlo | Late Night Taxi From Work To Home | 7.80 |
| | 6/15/2009 | Mendez, Gerardo | NY Taxi: Weekday From Evercore To Meeting | 15.00 |
| | 6/15/2009 | Sieh, Stephen | Late Night Taxi | 8.00 |
| | 6/16/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | 6/16/2009 | Mendez, Gerardo | NY Taxi: Latenight From Evercore To Home | 6.00 |
| | 6/17/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 10.32 |
| | 6/17/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 8.50 |
| | 6/17/2009 | Mendez, Gerardo | NY Taxi: Latenight From Evercore To Home | 6.00 |
| | 6/17/2009 | Alster, Dan | Utog Inv. 457272 | 51.00 |
| | 6/18/2009 | Christensen, Gus | NYC Taxi - Office To GM Client Meeting | 10.00 |
| | 6/18/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 6.96 |
| | 6/18/2009 | Sieh, Stephen | Late Night Taxi | 10.00 |
| | 6/19/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 9.55 |
| | 6/22/2009 | Mendez, Gerardo | NY Taxi: Latenight From Evercore To Home | 8.00 |
| | 6/22/2009 | Sieh, Stephen | Late Night Taxi | 9.00 |
| | 6/23/2009 | Sieh, Stephen | Late Night Taxi | 8.00 |
| | 6/24/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | 6/24/2009 | Mendez, Gerardo | NY Taxi: Weekday From Evercore To Meeting | 11.00 |
| | 6/25/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 13.20 |
| | 6/25/2009 | Christensen, Gus | NYC Taxi - GM Court Hearing To Office | 23.60 |
| | 6/25/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 7.70 |
| | 6/25/2009 | Christensen, Gus | NYC Taxi - Office To GM Court Hearing | 12.10 |
| | 6/25/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | 6/26/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 8.00 |
| | 6/27/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | 6/27/2009 | Mendez, Gerardo | NY Taxi: Weekend From Home To Evercore | 5.00 |
| | 6/27/2009 | Mendez, Gerardo | NY Taxi: Weekend From Evercore To Home | 6.00 |
| | 6/28/2009 | Mendez, Gerardo | NY Taxi: Weekend From Home To Evercore | 6.00 |
| | 6/28/2009 | Mendez, Gerardo | NY Taxi: Weekend From Evercore To Home | 7.00 |
| | 6/29/2009 | Mendez, Gerardo | NY Taxi: Latenight From Evercore To Home | 6.00 |
| | 6/29/2009 | Yadav, Nitesh | NYC Taxi - Office To Client Meeting | 6.35 |

General Motors
Expense Detial
6/1/2009 - 7/10/2009

| Expense Type | Date | Professional | Description | Expense |
|---|---|---|---|---|
| | 6/30/2009 | Alster, Dan | NYC Taxi Latenight Weeknight Office To Home | 8.97 |
| | 6/30/2009 | Barenbaum, Alexandra | Utog Inv.458978 | 34.68 |
| | 6/30/2009 | Christensen, Gus | NYC Taxi - Office To GM Client Meeting | 11.05 |
| | 6/30/2009 | Mendez, Gerardo | NY Taxi: Latenight From Evercore to Home | 6.00 |
| | 6/30/2009 | Repko, William | Taxi To Court | 20.00 |
| | 6/30/2009 | Repko, William | Taxi To Office From Court | 20.00 |
| | 6/30/2009 | Worth, J. Stephen | Taxi From Hearing | 25.68 |
| | 7/1/2009 | Alster, Dan | NYC Taxi Latenight Weeknight Prior Day | 10.50 |
| | 7/1/2009 | Berk, Ryan | NYC Taxi Business Meeting To Court | 14.70 |
| | 7/1/2009 | Berk, Ryan | NYC Taxi Business Meeting To Court | 15.70 |
| | 7/1/2009 | Mendez, Gerardo | NY Taxi: Latenight From Evercore To Home | 8.00 |
| | 7/1/2009 | Repko, William | Taxi To Court | 20.00 |
| | 7/1/2009 | Repko, William | Taxi To Office From Court | 20.00 |
| | 7/7/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 12.60 |
| | 7/7/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 12.24 |
| | 7/8/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | 7/9/2009 | Alster, Dan | NYC Taxi Latenight Weeknight Office To Home | 10.81 |
| | 7/9/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 10.32 |
| | 7/9/2009 | Christensen, Gus | NYC Taxi - Office To Home - Weekday Late | 9.36 |
| | 7/9/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 7.00 |
| | 7/10/2009 | Celentano, Daniel | Skyline Inv.591790 | 82.95 |
| | 7/10/2009 | Mendez, Gerardo | NY Taxi: Latenight Prior From Evercore To Home | 6.00 |
| | | | | 892.65 |
| Meals | | | | |
| | 6/5/2009 | Berk, Ryan | Tony's Di Napoli; 118326555 | 20.00 |
| | 6/5/2009 | Lim, Carlo | PJ Clarkes; 118343417 | 20.00 |
| | 6/5/2009 | Strelcova, Jelena | Smorgas Chef - Midtown; 118343124 | 20.00 |
| | 6/10/2009 | Berk, Ryan | Little Thai Kitchen (53rd/2nd); 118731132 | 20.00 |
| | 6/9/2009 | Berk, Ryan | Salmon River; 118614465 | 20.00 |
| | 6/8/2009 | Berk, Ryan | Haru (Min 12% Tip); 118500831 | 20.00 |
| | 6/10/2009 | Christensen, Gus | Joe's Shanghai; 118755315 | 14.92 |
| | 6/8/2009 | Christensen, Gus | Joe's Shanghai; 118504890 | 14.92 |
| | 6/8/2009 | Lim, Carlo | Energy Kitchen (2nd Ave); 118500792 | 20.00 |
| | 6/12/2009 | Strelcova, Jelena | Scarlatto Restaurant; 118944390 | 20.00 |
| | 6/17/2009 | Christensen, Gus | Joe's Shanghai; 119364720 | 14.92 |
| | 6/15/2009 | Lim, Carlo | Energy Kitchen (2nd Ave); 119155203 | 20.00 |
| | 6/16/2009 | Mendez, Gerardo | Haru (Min 12% Tip); 119236878 | 20.00 |
| | 6/18/2009 | Mendez, Gerardo | Just Salad (Park Avenue); 119484510 | 20.00 |
| | 6/15/2009 | Mendez, Gerardo | Just Salad (Park Avenue); 119152074 | 20.00 |
| | 6/15/2009 | Strelcova, Jelena | Smorgas Chef - Midtown; 119115282 | 20.00 |
| | 6/24/2009 | Christensen, Gus | Joe's Shanghai; 120003546 | 14.92 |
| | 6/26/2009 | Mendez, Gerardo | Just Salad (Park Avenue); 120202650 | 20.00 |
| | 6/27/2009 | Mendez, Gerardo | Chopt (56th & Park); 120235569 | 15.41 |
| | 6/22/2009 | Mendez, Gerardo | Just Salad (Park Avenue); 119776386 | 20.00 |
| | 6/24/2009 | Mendez, Gerardo | Busan; 120022023 | 20.00 |
| | 6/25/2009 | Mendez, Gerardo | Smorgas Chef - Midtown; 120126021 | 20.00 |
| | 6/28/2009 | Mendez, Gerardo | Smorgas Chef - Midtown; 120277845 | 20.00 |
| | 6/29/2009 | Christensen, Gus | Joe's Shanghai; 120416346 | 14.92 |
| | 6/29/2009 | Mendez, Gerardo | Just Salad (Park Avenue); 120383391 | 20.00 |
| | 6/29/2009 | Strelcova, Jelena | Marrakesh; 120400743 | 20.00 |
| | 6/30/2009 | Strelcova, Jelena | Scarlatto Restaurant; 120530451 | 20.00 |
| | 7/8/2009 | Christensen, Gus | Joe's Shanghai; 121145814 | 14.92 |
| | 7/9/2009 | Mendez, Gerardo | Pump Energy Food; 121215159 | 20.00 |
| | 7/15/2009 | Christensen, Gus | Joe's Shanghai; 121741554 | 15.42 |
| | | | | 560.35 |
| Research Fees | | | | |
| | | | Capital IQ Inv.34720292 | 27.97 |
| | | | Factset Inv.13720907 | 57.39 |
| | | | Capital IQ Inv.34722312 - 7/09 | 14.34 |

General Motors
Expense Detial
6/1/2009 - 7/10/2009

| Expense Type | Date | Professional | Description | Expense |
|---|---|---|---|---|
| | | | Capital IQ Inv.34722312 - 7/09 | 5.64 |
| | | | | 105.34 |
| **Telecom** | | | | |
| BL Exp: Telecom | 7/1/2009 | Alster, Dan | Court Call for GM #2921037 | 303.00 |
| BL Exp: Telecom | 6/30/2009 | Alster, Dan | Court Call for GM ID# 2918264 | 289.00 |
| BL Exp: Telecom | 7/9/2009 | Worth, J. Stephen | Telephone Court Appearances | 198.00 |
| | | | | 790.00 |
| **Word Processing** | | | | |
| | | | Olympic Cr Fund Inv.EP329B - WP Charges | 14.70 |
| | | | Tiger Inv. 626873 - WP Charges | 19.35 |
| | | | Larsen Inv. 3369 | 12.90 |
| | | | Olympic Cr. Fund Inv.EP332A | 59.61 |
| | | | | 106.56 |
| **Grand Total** | | | | |
| | | | | 2,920.62 |

**General Motors**
Evercore Partners
June 1, 2009 - July 10, 2009

**Summary of Services Rendered by Project:**

| Project Code | Project Description | June 1 - July 10 |
|---|---|---|
| 1 | General Case Administration | 303.0 |
| 2 | Due Diligence | 271.0 |
| 3 | Business Plan and Strategy | 132.5 |
| 4 | Capital Structure Review and Analysis | 67.0 |
| 5 | Financing | 128.5 |
| 6 | Asset Sales and Other M&A Activity | 46.5 |
| 7 | Valuation/Recoveries | 31.0 |
| 8 | Plan of Reorganization | - |
| 9 | Board Communication | 2.5 |
| 10 | Creditor/Vendor Communication | 4.5 |
| 11 | Employee Severance and Compensation | - |
| 12 | Expert Testimony | 138.5 |
| 13 | Travel | 11.0 |
| 14 | Evercore Retention | 111.5 |
| **TOTAL** | | **1,247.5** |

**Summary of Services Rendered by Professional:**

| Name | June 1 - July 10 |
|---|---|
| Roger Altman, Chairman | 12.0 |
| William Repko, Senior Managing Director | 113.5 |
| Patricia Caffrey, Managing Director | 47.0 |
| Stephen Sieh, Managing Director | 88.0 |
| Stephen Worth, Managing Director | 92.0 |
| Dan Alster, Vice President | 153.5 |
| Gus Christensen, Vice President | 139.5 |
| Gerardo Mendez, Associate | 230.0 |
| Purvish Shah, Associate | 123.5 |
| Jelena Strelcova, Associate | 93.0 |
| Ryan Berk, Analyst | 72.0 |
| Carlo Lim, Analyst | 63.5 |
| Nitesh Yadav, Analyst | 20.0 |
| **TOTAL** | **1,247.5** |

**General Motors**
Time Detail
Evercore Partners
Roger Altman - Chairman

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/3/09 | GM senior management conference call | 0.5 | 3 |
| 6/5/09 | GM senior management update call | 1.0 | 1 |
| 6/10/09 | GM senior management update call | 1.0 | 1 |
| 6/12/09 | GM senior management update call | 1.0 | 1 |
| 6/15/09 | GM senior management update call | 1.0 | 1 |
| 6/17/09 | GM call re revolver update | 0.5 | 1 |
| 6/17/09 | GM meeting at their offices reIPO | 1.0 | 5 |
| 6/19/09 | GM senior management update call | 1.5 | 1 |
| 6/22/09 | GM senior management update call | 1.0 | 1 |
| 6/24/09 | GM senior management update call | 1.5 | 1 |
| 6/26/09 | GM senior management update call | 1.0 | 1 |
| 6/29/09 | GM senior management update call | 1.0 | 1 |
| | **June Hours** | **12.0** | |

**General Motors**
Time Detail
Evercore Partners
William Repko - Senior Managing Director

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/1/09 | Attend Bankruptcy Court hearing re: First Day Motions | 3.5 | 12 |
| 6/1/09 | Travel to Court (round trip) | 1.0 | 12 |
| 6/1/09 | Preparation for testimony | 4.5 | 12 |
| 6/2/09 | Due diligence, review documents | 2.0 | 2 |
| 6/2/09 | Case Management; discussions with parties | 2.0 | 1 |
| 6/4/09 | Case Management; discussions with parties | 1.5 | 1 |
| 6/5/09 | General Case Administration; update calls | 2.0 | 1 |
| 6/6/09 | Case Management | 1.5 | 1 |
| 6/7/09 | Review documents | 2.5 | 1 |
| 6/9/09 | Review documents | 1.0 | 1 |
| 6/10/09 | Meeting with UCC; update call; review documents; discuss financing | 4.5 | 1 |
| 6/11/09 | Discussions, analysis of newco revolver and debt instruments | 2.5 | 4 |
| 6/12/09 | Discussion regarding capital structure | 2.5 | 4 |
| 6/12/09 | Update call | 1.5 | 1 |
| 6/13/09 | Review documents, conversations | 1.0 | 1 |
| 6/14/09 | Case management | 0.5 | 1 |
| 6/15/09 | Document review | 2.0 | 4 |
| 6/15/09 | Update call, case management | 2.0 | 1 |
| 6/15/09 | DIP/exit financing discussions | 1.0 | 5 |
| 6/16/09 | Case management, documents | 3.0 | 1 |
| 6/16/09 | Capital structure | 1.0 | 4 |
| 6/16/09 | Financing discussions | 0.5 | 5 |
| 6/17/09 | Case management | 1.0 | 1 |
| 6/17/09 | Capital structure | 1.5 | 4 |
| 6/17/09 | Diligence Materials | 1.0 | 2 |
| 6/18/09 | Prepare for FTI meeting, attend meeting, follow up | 7.0 | 1 |
| 6/19/09 | Capital structure review and discussion | 2.0 | 4 |
| 6/19/09 | Diligence | 1.0 | 2 |
| 6/20/09 | Capital structure | 0.5 | 4 |
| 6/20/09 | Diligence | 0.5 | 2 |
| 6/22/09 | Update call | 1.0 | 1 |
| 6/22/09 | Capital structure discussions | 4.0 | 4 |
| 6/23/09 | Case administration | 2.0 | 1 |
| 6/23/09 | Retention discussions | 1.0 | 14 |
| 6/24/09 | Case administration, document review | 3.0 | 1 |
| 6/24/09 | Preparation for court | 1.0 | 12 |
| 6/25/09 | Attend hearing | 3.5 | 12 |
| 6/25/09 | Capital structure | 1.0 | 4 |
| 6/25/09 | Corporate organization | 2.5 | 1 |
| 6/28/09 | Update Calls, preparation for hearing, document review | 3.0 | 1 |
| 6/29/09 | Preparation for testimony | 5.0 | 12 |
| 6/30/09 | Attend court, testimony | 12.0 | 12 |
| 6/30/09 | Case management | 1.0 | 1 |
| | **June Hours** | **98.0** | |
| | | | |
| 7/1/09 | Court hearings | 10.0 | 12 |
| 7/2/09 | Court hearings; update calls, case management | 4.5 | 1 |
| 7/6/09 | Update, case management | 1.0 | 1 |
| | **July Hours** | **15.5** | |

**General Motors**

Time Detail
Evercore Partners
Patricia Caffrey - Managing Director

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/1/09 | Finalizing DIP credit agreement with GM, Weil and UST | 1.5 | 5 |
| 6/3/09 | Review changes to the DIP agreement | 0.3 | 5 |
| 6/5/09 | Outline reporting requirements under the DIP agreement for reference | 0.5 | 5 |
| 6/5/09 | GM senior management call | 2.0 | 1 |
| 6/8/09 | GM senior management update call | 1.0 | 1 |
| 6/8/09 | Call with FTI | 1.0 | 1 |
| 6/8/09 | GM call preparation for UCC meeting | 0.5 | 1 |
| 6/10/09 | GM senior management update call | 1.0 | 1 |
| 6/10/09 | Discussion of exit facility | 0.5 | 5 |
| 6/11/09 | Discussion of exit facility with GM | 1.0 | 5 |
| 6/11/09 | GM senior management call | 2.0 | 1 |
| 6/12/09 | GM exit financing discussion | 1.0 | 5 |
| 6/12/09 | GM management update call | 2.0 | 1 |
| 6/12/09 | GM NewCo structure | 1.5 | 3 |
| 6/15/09 | GM management update call | 2.0 | 1 |
| 6/16/09 | Bond market discussions related to exit financing | 0.3 | 5 |
| 6/16/09 | GM exit financing discussion | 0.5 | 5 |
| 6/18/09 | FTI meeting at GM | 3.0 | 10 |
| 6/19/09 | Discussion of Holdco structure | 1.0 | 3 |
| 6/21/09 | Discussion of Holdco structure | 1.5 | 3 |
| 6/24/09 | GM NewCo structure call | 1.0 | 3 |
| 6/25/09 | GM exit financing discussion | 1.5 | 5 |
| 6/25/09 | GM exit financing discussion | 2.0 | 5 |
| 6/26/09 | GM NewCo exit financing | 1.0 | 5 |
| 6/26/09 | GM Canadian exit facility | 1.0 | 5 |
| 6/26/09 | GM NewCo exit financing | 2.5 | 5 |
| 6/29/09 | GM exit financing discussion (Canada) | 3.5 | 5 |
| 6/30/09 | GM exit financing discussion (Canada) | 1.0 | 5 |
| | **June Hours** | **37.5** | |
| | | | |
| 7/2/09 | GM management call | 1.0 | 1 |
| 7/2/09 | Review exit financing documents | 2.0 | 5 |
| 7/5/09 | Review exit financing documents | 1.0 | 5 |
| 7/6/09 | Conference call Canadian exit financing | 3.0 | 5 |
| 7/8/09 | Review exit financing documents | 1.0 | 5 |
| 7/9/09 | Review exit financing documents | 0.5 | 5 |
| 7/9/09 | Review closing documents | 0.5 | 5 |
| 7/10/09 | Closing | 0.5 | 5 |
| | **July Hours** | **9.5** | |

**General Motors**
Time Detail
Evercore Partners
Stephen Sieh - Managing Director

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/1/09 | Case Management | 2.0 | 1 |
| 6/2/09 | Due diligence document review | 4.0 | 2 |
| 6/2/09 | Case Management; discussions with parties | 2.0 | 1 |
| 6/4/09 | Case Management; discussions with parties | 1.5 | 1 |
| 6/5/09 | Update calls with management | 1.0 | 1 |
| 6/5/09 | General Case Administration | 1.0 | 1 |
| 6/6/09 | Case Management | 1.5 | 1 |
| 6/7/09 | Review documents | 5.0 | 1 |
| 6/9/09 | Review documents | 4.0 | 1 |
| 6/10/09 | Meeting with UCC | 1.0 | 1 |
| 6/10/09 | Update call with management | 1.0 | 1 |
| 6/10/09 | Document review | 1.0 | 1 |
| 6/10/09 | Financing discussions | 1.0 | 5 |
| 6/11/09 | Discussions about analysis of newco revolver and debt instruments | 4.0 | 4 |
| 6/12/09 | Update call with management | 1.5 | 1 |
| 6/12/09 | Discussion regarding capital structure | 1.5 | 4 |
| 6/13/09 | Review documents, conversations | 5.0 | 1 |
| 6/15/09 | Case management | 1.5 | 1 |
| 6/15/09 | Update calls with various parties | 2.0 | 1 |
| 6/15/09 | DIP/exit financg discussions | 3.5 | 5 |
| 6/16/09 | Financing discussions | 2.0 | 5 |
| 6/16/09 | Capital structure review and discussion | 1.0 | 4 |
| 6/17/09 | Case Management | 1.0 | 1 |
| 6/17/09 | Capital structure review and discussion | 1.5 | 4 |
| 6/17/09 | Due diligence document review | 1.5 | 2 |
| 6/18/09 | Prepare for, attend and follow up for meeting with FTI | 10.0 | 2 |
| 6/19/09 | Capital structure review and discussion | 4.0 | 4 |
| 6/22/09 | Update call with various parties | 2.5 | 1 |
| 6/22/09 | Capital structure review and discussion | 2.5 | 4 |
| 6/23/09 | General Case Administration | 1.5 | 1 |
| 6/23/09 | Retention discussions | 3.5 | 14 |
| 6/25/09 | Attend hearing | 2.0 | 12 |
| 6/25/09 | Capital structure review and discussion | 1.0 | 4 |
| 6/30/09 | Evercore retention work | 4.0 | 12 |
| | **June Hours** | **83.0** | |
| 7/1/09 | Case Management | 1.5 | 1 |
| 7/1/09 | Update calls with various parties | 1.5 | 12 |
| 7/2/09 | Update calls with various parties | 1.0 | 1 |
| 7/6/09 | Case Management | 1.0 | 1 |
| | **July Hours** | **5.0** | |

**General Motors**

Time Detail

Evercore Partners

J. Stephen Worth - Managing Director

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/1/09 | Press conference | 1.5 | 1 |
| 6/1/09 | Internal organization | 2.0 | 1 |
| 6/1/09 | Meeting with GMTO | 1.0 | 3 |
| 6/2/09 | Discussions with Weil on next steps | 1.0 | 1 |
| 6/2/09 | 8K drafting | 1.0 | 1 |
| 6/2/09 | UST conference call | 1.0 | 6 |
| 6/2/09 | AP - data room | 0.5 | 6 |
| 6/2/09 | APA adjustments (various calls) | 3.0 | 6 |
| 6/2/09 | GM expense policy meeting | 1.0 | 14 |
| 6/3/09 | GM team update | 1.0 | 1 |
| 6/3/09 | UST supplier program conference call | 0.5 | 1 |
| 6/3/09 | Weil status discussion | 0.5 | 1 |
| 6/3/09 | Unsolicited inquiry | 1.0 | 6 |
| 6/3/09 | Delphi/Alix Partners/Weil | 0.5 | 1 |
| 6/4/09 | GM internal organization | 0.5 | 1 |
| 6/5/09 | GM team update | 2.0 | 1 |
| 6/5/09 | Delphi liquidation analysis | 0.5 | 6 |
| 6/8/09 | GM team update | 2.0 | 1 |
| 6/8/09 | Valuation due diligence | 1.0 | 2 |
| 6/10/09 | GM team update | 1.0 | 1 |
| 6/10/09 | UCC meeting | 4.0 | 2 |
| 6/10/09 | Investor inquiry | 0.5 | 6 |
| 6/10/09 | Delphi due diligence | 1.0 | 6 |
| 6/12/09 | GM team update | 2.0 | 1 |
| 6/12/09 | Valuation call with FTI | 1.0 | 2 |
| 6/12/09 | IPO planning call | 0.5 | 5 |
| 6/12/09 | Review feedback to the SPA | 1.0 | 5 |
| 6/15/09 | GM team update | 2.0 | 1 |
| 6/17/09 | GM team update | 1.0 | 1 |
| 6/17/09 | IPO conference call | 1.0 | 5 |
| 6/19/09 | GM team update | 1.5 | 1 |
| 6/20/09 | NewCo financing conference call | 1.0 | 5 |
| 6/22/09 | GM team update | 1.0 | 1 |
| 6/23/09 | GM/ objections to fees | 1.0 | 1 |
| 6/24/09 | GM team update | 1.5 | 1 |
| 6/24/09 | FTI due diligence | 1.0 | 2 |
| 6/24/09 | Valuations preparation | 1.0 | 12 |
| 6/25/09 | FTI due diligence | 1.0 | 2 |
| 6/25/09 | Valuations preparation | 1.0 | 12 |
| 6/26/09 | GM team update | 1.0 | 1 |
| 6/26/09 | FTI due diligence | 1.0 | 2 |
| 6/26/09 | Financing (credit agreement discussion) | 1.5 | 5 |
| 6/26/09 | Canadian Facilities | 1.0 | 5 |
| 6/26/09 | GM fairness opinion committee | 1.0 | 6 |
| 6/26/09 | GM Board meeting | 0.5 | 9 |
| 6/29/09 | GM team update | 1.0 | 1 |
| 6/29/09 | Testimony preparation | 2.5 | 12 |
| 6/30/09 | 363 Sales Hearing | 14.0 | 12 |
| | **June Hours** | **70.0** | |
| | | | |
| 7/1/09 | GM team status discussion | 1.0 | 1 |
| 7/1/09 | 363 Sales Hearing | 11.5 | 12 |
| 7/2/09 | GM team update | 1.0 | 1 |
| 7/2/09 | 363 Sales Hearing | 2.0 | 12 |
| 7/6/09 | GM team meeting | 0.5 | 1 |
| 7/6/09 | GM team update | 1.0 | 1 |
| 7/7/09 | Compensation | 1.0 | 7 |
| 7/7/09 | Supplemental Affidavit | 2.5 | 12 |
| 7/8/09 | GM Board of Directors | 1.5 | 9 |
| | **July Hours** | **22.0** | |

**General Motors**

Time Detail

Evercore Partners

Dan Alster - Vice President

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/1/09 | Finalizing loan documents with GM, Weil and other advisors | 3.0 | 5 |
| 6/8/09 | Team update call | 1.0 | 1 |
| 6/8/09 | Retention process work | 1.5 | 14 |
| 6/8/09 | Calls with client on diligence process | 1.0 | 1 |
| 6/8/09 | Call with advisors to UCC | 1.5 | 2 |
| 6/8/09 | Call with client to discuss UCC advisors diligence process | 2.0 | 2 |
| 6/9/09 | Calls and preparations for UCC diligence | 1.0 | 2 |
| 6/9/09 | Retention related work | 1.0 | 14 |
| 6/10/09 | UCC meeting | 3.0 | 2 |
| 6/10/09 | Team update call | 1.0 | 1 |
| 6/10/09 | Financing related work (exit structuring considerations) | 4.0 | 5 |
| 6/10/09 | Diligence process call | 2.0 | 2 |
| 6/11/09 | Financing related work (structuring exit facilities, syndicating a new revolver) | 4.0 | 5 |
| 6/11/09 | Retention work | 1.0 | 14 |
| 6/12/09 | Financing call with Company and preparation | 4.0 | 5 |
| 6/12/09 | Team update call | 1.5 | 1 |
| 6/12/09 | Call with FTI | 1.0 | 2 |
| 6/12/09 | Call on document discovery | 1.0 | 12 |
| 6/13/09 | Document retention work for legal discovery | 3.0 | 1 |
| 6/15/09 | Financing related work (structuring the exit Term Loan) | 2.0 | 5 |
| 6/15/09 | Team update call | 2.0 | 1 |
| 6/15/09 | Document discovery work | 2.0 | 12 |
| 6/16/09 | Financing related work (bond market update as relate to potential exit facility) | 1.5 | 5 |
| 6/16/09 | Document discovery work | 3.0 | 12 |
| 6/16/09 | 13-week cash flow model discussion with FTI | 1.0 | 2 |
| 6/16/09 | Retention related work | 1.5 | 14 |
| 6/17/09 | Retention related work | 1.5 | 14 |
| 6/17/09 | Document retention work for legal discovery | 1.0 | 12 |
| 6/17/09 | Team meeting | 0.5 | 1 |
| 6/17/09 | Financing meetings (internal, on R/C, HoldCo, Exit structure) | 2.0 | 5 |
| 6/18/09 | Diligence with UCC on VP4 | 6.0 | 2 |
| 6/18/09 | Document retention work for legal discovery | 1.0 | 12 |
| 6/18/09 | Financing related work (on new R/C, HoldCo structure) | 1.0 | 5 |
| 6/19/09 | Team update call | 1.5 | 1 |
| 6/19/09 | Structuring call (HoldCo, potential new R/C, exit TL implications) | 1.5 | 5 |
| 6/20/09 | Financing calls with company (HoldCo, NewCo R/C) | 2.0 | 5 |
| 6/21/09 | Call to discuss HoldCo structure | 2.0 | 5 |
| 6/21/09 | Retention related work | 2.0 | 14 |
| 6/22/09 | Team update call | 1.0 | 1 |
| 6/22/09 | Retention related work | 2.0 | 14 |
| 6/22/09 | Call to discuss HoldCo structure | 2.0 | 5 |
| 6/23/09 | Retention related work | 3.0 | 14 |
| 6/23/09 | Diligence with FTI | 2.0 | 2 |
| 6/24/09 | Retention related work | 3.0 | 14 |
| 6/24/09 | Team update call | 1.5 | 1 |
| 6/24/09 | Diligence related matters - responding to FTI requests | 4.0 | 2 |
| 6/24/09 | Team meeting | 0.5 | 1 |
| 6/25/09 | Court hearings | 2.0 | 1 |
| 6/25/09 | Financing calls (NewCo Exit Facility) | 2.0 | 5 |
| 6/25/09 | Diligence related matters - responding to FTI requests | 3.0 | 2 |
| 6/26/09 | Financing calls (NewCo Exit Facility) | 2.0 | 5 |
| 6/26/09 | Financing calls (Canadian Exit facility) | 3.0 | 5 |
| 6/26/09 | Team update call | 1.0 | 1 |
| 6/26/09 | Diligence related matters - responding to FTI requests | 3.0 | 2 |
| 6/27/09 | Financing related work - Canadian facilities discussion | 2.0 | 5 |
| 6/28/09 | Diligence related matters - responding to FTI requests | 3.0 | 2 |
| 6/29/09 | Diligence related matters - responding to FTI requests | 1.0 | 2 |
| 6/29/09 | Financing related work (exit - Canada) | 2.0 | 5 |
| 6/30/09 | 363 Sale Hearing | 6.0 | 1 |
| 6/30/09 | Financing related work (exit - Canada) | 2.0 | 5 |
| | **June Hours** | **123.5** | |

**General Motors**
Time Detail
Evercore Partners
Dan Alster - Vice President

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 7/1/09 | 363 Sale Hearing | 6.0 | 1 |
| 7/1/09 | Team meeting | 1.0 | 1 |
| 7/2/09 | Financing related work (exit financing documents review) | 3.0 | 5 |
| 7/4/09 | Financing related work (exit financing documents review) | 2.0 | 5 |
| 7/4/09 | Diligence related matters - responding to FTI requests | 1.0 | 2 |
| 7/5/09 | Financing related work (exit financing documents review) | 2.0 | 5 |
| 7/6/09 | Diligence related matters - responding to FTI requests | 1.0 | 2 |
| 7/6/09 | Financing related work (Canadian financing documents review) | 2.0 | 5 |
| 7/7/09 | Diligence related matters - responding to FTI requests | 0.5 | 2 |
| 7/7/09 | Financing related work (exit financing documents review, NewCo and Canada) | 4.0 | 5 |
| 7/8/09 | Diligence related matters - responding to FTI requests | 1.0 | 2 |
| 7/8/09 | Financing related work (exit financing documents review, NewCo and Canada, closing matters) | 2.0 | 5 |
| 7/9/09 | Financing related - review of documents and preparations to close | 3.0 | 5 |
| 7/10/09 | Closing related matters | 1.5 | 5 |
| | **July Hours** | **30.0** | |

**General Motors**

Time Detail

Evercore Partners

Gus Christensen - Vice President

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/1/09 | Preparing for and attending bankruptcy court proceeding | 5.0 | 1 |
| 6/1/09 | Preparation of supporting financial analyses | 3.0 | 3 |
| 6/1/09 | Work regarding affidavit amendments | 1.0 | 12 |
| 6/2/09 | Auto Task Force conference call | 1.0 | 1 |
| 6/2/09 | Oversight of model preparation for UST and for Creditor due diligence (data room model) | 1.0 | 2 |
| 6/2/09 | Work regarding expense tracking and time sheet plans | 3.0 | 14 |
| 6/3/09 | Oversight of model preparation for UST and for Creditor due diligence (data room model) | 1.0 | 2 |
| 6/3/09 | Conference call and analysis with KPMG regarding valuation for purchase accounting adjustments | 1.0 | 3 |
| 6/3/09 | GM senior management conference call | 1.5 | 3 |
| 6/4/09 | Oversight of model preparation for UST and for Creditor due diligence (data room model) | 1.5 | 3 |
| 6/4/09 | Data and billing management for GM | 1.0 | 14 |
| 6/5/09 | Oversight of model preparation for Creditor due diligence (data room model) | 2.0 | 2 |
| 6/5/09 | GM senior management conference call | 2.0 | 3 |
| 6/6/09 | GM valuation analysis related work | 2.0 | 7 |
| 6/7/09 | GM valuation analysis related work | 2.0 | 7 |
| 6/8/09 | UCC due diligence related work | 4.5 | 2 |
| 6/8/09 | GM management discussions | 2.0 | 3 |
| 6/8/09 | Valuation-related work (Mexico and other) | 1.0 | 7 |
| 6/10/09 | UCC due diligence related work | 7.0 | 2 |
| 6/10/09 | Valuation and modeling analysis-related work | 1.5 | 7 |
| 6/11/09 | UCC due diligence related work | 2.0 | 2 |
| 6/11/09 | Valuation-related work (Mexico and other, including meeting at GMTO to go through valuation presentation) | 4.0 | 7 |
| 6/12/09 | UCC due diligence related work | 2.0 | 2 |
| 6/12/09 | Working with Bryan Cave on response to discovery request | 1.0 | 12 |
| 6/15/09 | GM management discussions | 2.0 | 3 |
| 6/15/09 | Valuation discussions | 1.0 | 7 |
| 6/15/09 | Working with Bryan Cave on response to discovery request | 2.0 | 12 |
| 6/16/09 | Due diligence work with FTI and related activity | 1.0 | 2 |
| 6/16/09 | Valuation discussions (KPMG, tax with Terenzi, etc) | 4.0 | 7 |
| 6/16/09 | Working with Bryan Cave on response to discovery request | 2.0 | 12 |
| 6/17/09 | Update fairness opinion letter and discuss with Company counsel | 1.0 | 1 |
| 6/17/09 | Internal team weekly meeting and updates | 1.0 | 1 |
| 6/17/09 | Discussion with the UST and related prep (SAAR sensitivity, etc) | 2.5 | 3 |
| 6/17/09 | Working with Bryan Cave on response to discovery request | 1.0 | 12 |
| 6/18/09 | FTI due diligence session at GM building | 6.0 | 2 |
| 6/18/09 | Valuation discussions | 1.0 | 7 |
| 6/18/09 | Worth Affidavit Supplement work (valuation possible change, etc) | 1.0 | 12 |
| 6/19/09 | Review of Rothschild due diligence request responses | 0.5 | 2 |
| 6/19/09 | GM management discussions | 2.0 | 3 |
| 6/19/09 | HoldCo Org Structure discussions | 1.0 | 5 |
| 6/19/09 | Worth Affidavit Supplement work (valuation possible change, etc) | 1.0 | 12 |
| 6/19/09 | Working with Bryan Cave on response to discovery request | 2.0 | 12 |
| 6/22/09 | GM Management discussions | 1.5 | 3 |
| 6/22/09 | Valuation usage discussions with Bryan Cave, incl. internal discussions & risk analysis | 3.0 | 7 |
| 6/23/09 | Aftermath of response to discovery request | 0.5 | 1 |
| 6/23/09 | FTI due diligence-related work | 1.5 | 2 |
| 6/23/09 | Retention discussions with Bryan Cave and related work | 1.0 | 14 |
| 6/24/09 | FTI due diligence calls and preparation | 2.0 | 2 |
| 6/24/09 | GM Management discussions | 1.5 | 3 |
| 6/24/09 | Work with Citi on model for their financing proposals | 1.5 | 5 |
| 6/24/09 | Valuation discussions | 1.0 | 7 |
| 6/24/09 | Preparation for Worth testimony | 2.0 | 12 |
| 6/24/09 | Retention discussions with Bryan Cave and related work | 1.0 | 14 |
| 6/25/09 | FTI due diligence calls and preparation | 1.0 | 2 |
| 6/25/09 | Attend Bankruptcy court hearings | 2.0 | 12 |
| 6/25/09 | Preparation for Worth testimony | 2.0 | 12 |
| 6/25/09 | Preparation of analyses relating to Evercore retention | 1.0 | 14 |
| 6/25/09 | Preparation for fairness committee circle up (MSPA revisions) | 1.0 | 6 |
| 6/26/09 | GM Management discussions | 1.0 | 3 |
| 6/26/09 | Long-term financing plans discussions with RCA | 1.0 | 5 |
| 6/26/09 | Preparation of analyses relating to Evercore retention | 1.0 | 14 |

**General Motors**

Time Detail

Evercore Partners

Gus Christensen - Vice President

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/26/09 | Fairness committee circle up (MSPA revisions) | 0.5 | 6 |
| 6/27/09 | FTI due diligence calls and preparation | 2.0 | 2 |
| 6/27/09 | IFM update and review | 1.0 | 3 |
| 6/27/09 | Preparation of analyses relating to Evercore retention | 0.5 | 14 |
| 6/28/09 | FTI due diligence calls and preparation | 2.0 | 2 |
| 6/28/09 | IFM update and review | 1.0 | 3 |
| 6/28/09 | Preparation of analyses relating to Evercore retention | 0.5 | 14 |
| 6/29/09 | FTI due diligence (European transactions situation with Rico, etc) | 1.0 | 2 |
| 6/29/09 | GM Management discussions | 1.5 | 3 |
| 6/30/09 | preparing valuation language for draft sale order | 1.0 | 1 |
| 6/30/09 | Attending court hearings related to 363 Sale | 6.0 | 12 |
| | **June Hours** | **128.5** | |
| | | | |
| 7/1/09 | Internal team meetings | 1.0 | 1 |
| 7/2/09 | 363 Sale Hearing | 4.0 | 1 |
| 7/5/09 | Received final revised MSPA | 0.5 | 1 |
| 7/2/09 | GM Management discussions | 1.5 | 3 |
| 7/1/09 | 363 Sale Hearing, including Repko testimony | 4.0 | 12 |
| | **July Hours** | **11.0** | |

**General Motors**
Time Detail
*Evercore Partners*
Gerardo Mendez - Associate

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/1/09 | Bridges and analysis of cash flows / DIP budget | 3.0 | 5 |
| 6/1/09 | Preparation of expert witness and attendance of court proceedings | 5.0 | 12 |
| 6/1/09 | Travel to court proceedings | 1.0 | 13 |
| 6/2/09 | Review of press release, financial analysis and draft SEC documents | 2.5 | 3 |
| 6/2/09 | Analysis of credit bid and creation of supporting materials | 0.5 | 3 |
| 6/2/09 | Recovery analysis | 1.0 | 7 |
| 6/2/09 | Calls with creditors and financial advisors to creditors | 1.0 | 10 |
| 6/2/09 | Preparation and review of materials for creditors | 0.5 | 10 |
| 6/2/09 | Preparation of retention materials | 0.5 | 14 |
| 6/3/09 | Preparation of supporting schedules on government draw schedule | 1.0 | 3 |
| 6/3/09 | Conversations with GMTO on updates to cash flows | 1.5 | 3 |
| 6/3/09 | Telephonic meeting with KPMG accountants on information requirements for opening balance sheet | 1.0 | 3 |
| 6/3/09 | Telephonic conversations with GM tax personnel on warrants and CODI | 0.5 | 3 |
| 6/3/09 | Preparation of retention materials | 0.5 | 14 |
| 6/4/09 | Internal meeting on project planning | 0.5 | 1 |
| 6/4/09 | Reviewed redacted GM Model for due diligence | 2.0 | 3 |
| 6/4/09 | Preparation of retention materials | 0.5 | 14 |
| 6/15/09 | Preparation and review of materials to respond to due diligence requests | 1.5 | 2 |
| 6/15/09 | Sensitivity analysis on financial model | 1.5 | 3 |
| 6/15/09 | Preparation and review of valuation / credit bid / purchase price | 1.5 | 7 |
| 6/15/09 | Review of potential supporting board materials | 0.5 | 9 |
| 6/15/09 | Meetings with external counsel / preparation for document discovery | 4.5 | 12 |
| 6/15/09 | Preparation of retention materials | 0.5 | 14 |
| 6/16/09 | Conference call with KPMG | 1.5 | 1 |
| 6/16/09 | Preparation and review of materials for unsecured creditors committee | 5.0 | 2 |
| 6/16/09 | Financial analysis and preparation of presentation materials | 1.5 | 3 |
| 6/16/09 | Conference call with GM tax department | 1.0 | 7 |
| 6/16/09 | Meetings with external counsel / preparation for document discovery | 1.0 | 12 |
| 6/16/09 | Preparation of retention materials | 0.5 | 14 |
| 6/17/09 | Internal meeting on project planning | 1.0 | 1 |
| 6/17/09 | Call with GMTO on projections and budgeting process | 0.5 | 1 |
| 6/17/09 | Preparation and review of materials for unsecured creditors committee | 3.0 | 2 |
| 6/17/09 | Conference call with GMNA and UST on sensitivities | 2.0 | 2 |
| 6/17/09 | Development of materials for UCC diligence requests | 0.5 | 2 |
| 6/17/09 | Preparation of retention materials | 0.5 | 14 |
| 6/18/09 | Conference call with KPMG | 0.5 | 1 |
| 6/18/09 | Preparation of executives for meeting with UCC advisors | 1.5 | 2 |
| 6/18/09 | Development of materials for UCC diligence requests | 0.5 | 2 |
| 6/18/09 | Conference call with UCC advisors | 5.0 | 2 |
| 6/18/09 | Preparation of retention materials | 0.5 | 14 |
| 6/19/09 | Management Call | 2.5 | 1 |
| 6/19/09 | Development of materials for UCC diligence requests | 2.5 | 2 |
| 6/19/09 | Conference call with UST and Debtor regarding additional due diligence requests by the UST | 1.0 | 2 |
| 6/19/09 | Review and coordination of materials requested by the UST | 1.5 | 2 |
| 6/19/09 | Preparation of retention materials | 0.5 | 14 |
| 6/22/09 | Management Call | 2.0 | 1 |
| 6/22/09 | Telephone calls with Debtors to discuss due diligence request | 2.0 | 1 |
| 6/22/09 | Telephone call with GMTO on projections and budgeting process | 1.0 | 1 |
| 6/22/09 | Development of materials for UCC diligence requests | 1.5 | 2 |
| 6/22/09 | Preparation of retention materials | 0.5 | 14 |
| 6/23/09 | Internal meeting on project planning | 2.0 | 1 |
| 6/23/09 | Telephone call with GMTO on projections and budgeting process | 1.5 | 1 |
| 6/23/09 | Telephone calls with Debtors' legal counsel | 1.0 | 2 |
| 6/23/09 | Arranging and moderating due diligence calls with UCC advisors | 6.0 | 2 |
| 6/23/09 | Preparation of due diligence materials for UCC | 3.0 | 2 |
| 6/23/09 | Call with UCC financial advisors | 1.0 | 2 |
| 6/23/09 | Telephone call with Company on projections and due diligence requests | 0.5 | 2 |
| 6/23/09 | Coordination between GMTO and UST on additional due diligence requests | 0.5 | 2 |
| 6/23/09 | Preparation of retention materials | 0.5 | 14 |
| 6/24/09 | Arranging and moderating due diligence calls with UCC advisors | 7.0 | 2 |
| 6/24/09 | Review and analysis of company projections | 2.0 | 3 |

**General Motors**

Time Detail

Evercore Partners

Gerardo Mendez - Associate

| Date | Description of Work | Hours | Code |
|------|--------------------|-------|------|
| 6/24/09 | Preparation of deposition supporting materials | 1.0 | 12 |
| 6/24/09 | Preparation of retention materials | 0.5 | 14 |
| 6/25/09 | Arranging and moderating due diligence calls with UCC advisors | 10.0 | 2 |
| 6/25/09 | Preparation of retention materials | 0.5 | 14 |
| 6/26/09 | Arranging and moderating due diligence calls with UCC advisors | 8.0 | 2 |
| 6/26/09 | Preparation of materials with UST Projections | 7.0 | 3 |
| 6/26/09 | Preparation of retention materials | 0.5 | 14 |
| 6/27/09 | Preparation of materials with UST Projections | 10.0 | 3 |
| 6/27/09 | Preparation of retention materials | 0.5 | 14 |
| 6/28/09 | Arranging and moderating due diligence calls with UCC advisors | 1.5 | 2 |
| 6/28/09 | Preparation of materials with UST Projections | 7.0 | 3 |
| 6/28/09 | Preparation of retention materials | 0.5 | 14 |
| 6/29/09 | Arranging and moderating due diligence calls with UCC advisors | 8.0 | 2 |
| 6/29/09 | Preparation of due diligence materials for UCC | 1.5 | 2 |
| 6/29/09 | Preparation of retention materials | 0.5 | 14 |
| 6/30/09 | Conference call on court proceedings | 4.0 | 1 |
| 6/30/09 | Preparation of due diligence materials for UCC | 1.0 | 2 |
| 6/30/09 | Coordinating due diligence request from UCC advisors | 3.0 | 2 |
| 6/30/09 | Preparation of retention materials | 0.5 | 14 |
| | **June Hours** | **164.0** | |
| 7/1/09 | Internal meeting regarding case management | 1.0 | 1 |
| 7/1/09 | Preparation of due diligence materials for UCC | 1.5 | 2 |
| 7/1/09 | Coordinating due diligence request from UCC advisors | 3.0 | 2 |
| 7/1/09 | Preparation of retention materials | 0.5 | 14 |
| 7/2/09 | Conference call on court proceedings | 2.0 | 1 |
| 7/2/09 | Preparation and analysis industry and related trends | 2.0 | 1 |
| 7/2/09 | Coordinating due diligence request from UCC advisors | 3.0 | 2 |
| 7/2/09 | Preparation of retention materials | 0.5 | 14 |
| 7/2/09 | Coordination with co-advisors on pending transactions | 1.0 | 6 |
| 7/3/09 | Coordinating due diligence request from UCC advisors | 2.0 | 2 |
| 7/3/09 | Preparation of retention materials | 0.5 | 14 |
| 7/4/09 | Preparation of retention materials | 0.5 | 14 |
| 7/4/09 | Conference calls on pending transactions | 1.0 | 6 |
| 7/5/09 | Conversations with UST on closing documents | 0.5 | 1 |
| 7/5/09 | Preparation of retention materials | 0.5 | 14 |
| 7/6/09 | Coordinating due diligence request from UCC advisors | 3.0 | 2 |
| 7/6/09 | Preparation of due diligence materials for UCC | 2.0 | 2 |
| 7/6/09 | Discussion with GMTO on lender due diligence | 2.0 | 2 |
| 7/6/09 | Discussion with UST financial advisor on diligence requests | 1.0 | 2 |
| 7/6/09 | Preparation of retention materials | 0.5 | 14 |
| 7/6/09 | Coordination with co-advisors on pending transactions | 2.0 | 6 |
| 7/7/09 | Preparation of Worth supplemental affidavit | 3.0 | 1 |
| 7/7/09 | Conference calls with Debtors tax advisors | 1.0 | 2 |
| 7/7/09 | Coordinating due diligence request from UCC advisors | 3.0 | 2 |
| 7/7/09 | Discussion with UST financial advisor on diligence requests | 0.5 | 2 |
| 7/7/09 | Financial analysis on warrant valuation | 2.0 | 3 |
| 7/7/09 | Preparation of retention materials | 0.5 | 14 |
| 7/8/09 | Conference calls with Debtors on preparation of press release and related materials | 2.0 | 1 |
| 7/8/09 | Conference calls with UCC financial advisors | 2.0 | 2 |
| 7/8/09 | Preparation of due diligence materials for UCC | 2.0 | 2 |
| 7/8/09 | Preparation of retention materials | 0.5 | 14 |
| 7/8/09 | Coordination with co-advisors on pending transactions | 5.0 | 6 |
| 7/9/09 | Preparation and support of GMTO on closing materials | 1.5 | 1 |
| 7/9/09 | Financial analysis on warrant valuation | 2.0 | 3 |
| 7/9/09 | Preparation of retention materials | 0.5 | 14 |
| 7/9/09 | Coordination with co-advisors on pending transactions | 4.0 | 6 |
| 7/10/09 | Preparation and support of GMTO on closing | 2.0 | 1 |
| 7/10/09 | Preparation of retention materials | 0.5 | 14 |
| 7/10/09 | Coordination with co-advisors on pending transactions | 4.0 | 6 |
| | **July Hours** | **66.0** | |

**General Motors**
Time Detail
Evercore Partners
Purvish Shah - Analyst

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/2/09 | Reviewed credit bid in valuation analysis | 1.5 | 6 |
| 6/8/09 | Participated on GM management call | 1.0 | 1 |
| 6/8/09 | Call with Company on GM Mexico revolver / valuation | 0.5 | 1 |
| 6/10/09 | Participated on GM management call | 1.0 | 1 |
| 6/11/09 | Call with Company on GM Mexico revolver / valuation | 0.5 | 1 |
| 6/11/09 | Reviewed Board of Directors presentation/fairness opinion and GM IFM with GMTO | 3.0 | 1 |
| 6/12/09 | Participated on GM management call | 2.0 | 1 |
| 6/12/09 | Call with Company on preliminary IPO valuation | 0.5 | 1 |
| 6/15/09 | Participated on GM management call | 2.0 | 1 |
| 6/16/09 | Call with KPMG on valuation and fresh-start accounting work thread | 1.0 | 1 |
| 6/18/09 | Conference call with KPMG | 0.5 | 1 |
| 6/8/09 | Call with creditor advisor on due diligence questions | 1.5 | 2 |
| 6/8/09 | Call with Company on due diligence process | 0.5 | 2 |
| 6/12/09 | Call with creditor advisor on due diligence questions | 1.0 | 2 |
| 6/15/09 | Prepared diligence materials for creditor advisor | 1.0 | 2 |
| 6/16/09 | Call with Company regarding creditor due diligence materials | 0.5 | 2 |
| 6/16/09 | Prepared diligence materials for creditor advisor | 1.5 | 2 |
| 6/17/09 | Call with GMTO with UST on due diligence structuring | 0.5 | 2 |
| 6/17/09 | Call with Company GMNA capital planning and UST on SAAR sensitivity | 0.5 | 2 |
| 6/17/09 | Call with Company GMNA capital planning and UST on due diligence structuring | 0.5 | 2 |
| 6/18/09 | Preparation of executives for meeting with UCC | 1.5 | 2 |
| 6/18/09 | Development of materials for UCC diligence requests | 0.5 | 2 |
| 6/18/09 | Conference call with UCC | 5.0 | 2 |
| 6/24/09 | Arranging and moderating due diligence calls with UCC advisors | 7.0 | 2 |
| 6/25/09 | Arranging and moderating due diligence calls with UCC advisors | 10.0 | 2 |
| 6/26/09 | Arranging and moderating due diligence calls with UCC advisors | 8.0 | 2 |
| 6/28/09 | Arranging and moderating due diligence calls with UCC advisors | 1.5 | 2 |
| 6/2/09 | Reviewed redacted GM model for due diligence | 2.0 | 3 |
| 6/3/09 | Conversations with GMTO on updates to cash flows | 1.5 | 3 |
| 6/3/09 | Telephonic meeting with KPMG accountants on information requirements for opening balance sheet | 1.0 | 3 |
| 6/3/09 | Telephonic conversations with GM tax personnel on warrants and CODI | 0.5 | 3 |
| 6/4/09 | Call with Company to review and diligence Balance Sheet in GM Model | 1.0 | 3 |
| 6/4/09 | Reviewed GM Model for due diligence | 2.0 | 3 |
| 6/8/09 | Reviewed redacted GM Model for due diligence | 1.0 | 3 |
| 6/9/09 | Reviewed redacted GM Model for due diligence | 2.5 | 3 |
| 6/12/09 | Reviewed business plan assumptions | 1.0 | 3 |
| 6/15/09 | Reviewed business plan assumptions | 2.0 | 3 |
| 6/24/09 | Review and analysis of company projections | 2.0 | 3 |
| 6/26/09 | Preparation of materials with UST projections | 7.0 | 3 |
| 6/27/09 | Preparation of materials with UST projections | 10.0 | 3 |
| 6/28/09 | Preparation of materials with UST projections | 7.0 | 3 |
| 6/1/09 | Reviewed DIP sizing and backup analysis | 3.0 | 5 |
| 6/15/09 | Analyzed alternative warrant valuation methodology | 2.5 | 7 |
| 6/16/09 | Call with Company on updated/revised treatment of DTA for NOL valuation | 0.5 | 7 |
| 6/1/09 | Travel time to and from expert testimony hearing | 1.0 | 12 |
| 6/24/09 | Preparation of deposition supporting materials | 1.0 | 12 |
| 6/1/09 | Prepared and attended expert testimony hearing | 5.0 | 13 |
| 6/2/09 | Meeting of interim fee application | 0.5 | 14 |
| 6/19/09 | Preparation of retention materials | 0.5 | 14 |
| 6/22/09 | Preparation of retention materials | 0.5 | 14 |
| 6/23/09 | Preparation of retention materials | 0.5 | 14 |
| 6/24/09 | Preparation of retention materials | 0.5 | 14 |
| 6/25/09 | Preparation of retention materials | 0.5 | 14 |
| 6/26/09 | Preparation of retention materials | 0.5 | 14 |
| 6/27/09 | Preparation of retention materials | 0.5 | 14 |
| 6/28/09 | Preparation of retention materials | 0.5 | 14 |
| 6/29/09 | Preparation of retention materials | 0.5 | 14 |
| **June Hours** | | **113.0** | |

**General Motors**
Time Detail
Evercore Partners
Purvish Shah - Analyst

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 7/1/09 | Preparation of due diligence materials for UCC | 1.5 | 2 |
| 7/1/09 | Coordinating due diligence request from UCC advisors | 3.0 | 2 |
| 7/1/09 | Coordination with co-advisors on pending transactions | 3.0 | 1 |
| 7/1/09 | Preparation of retention materials | 0.5 | 14 |
| 7/2/09 | Preparation of retention materials | 0.5 | 14 |
| 7/3/09 | Preparation of retention materials | 0.5 | 14 |
| 7/4/09 | Preparation of retention materials | 0.5 | 14 |
| 7/5/09 | Preparation of retention materials | 0.5 | 14 |
| 7/6/09 | Preparation of retention materials | 0.5 | 14 |
| **July Hours** | | **10.5** | |

**General Motors**

Time Detail

Evercore Partners

Jelena Strelcova - Associate

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/1/09 | Review court filings | 3.0 | 1 |
| 6/2/09 | Team meeting regarding case management | 0.5 | 1 |
| 6/3/09 | Prepare supplemental declarations | 1.0 | 1 |
| 6/3/09 | Prepare retention application and conflicts check | 2.0 | 14 |
| 6/4/09 | Prepare supplemental declarations | 1.0 | 1 |
| 6/4/09 | Prepare retention application and conflicts check | 2.0 | 14 |
| 6/5/09 | Prepare supplemental declarations | 3.0 | 1 |
| 6/5/09 | Prepare retention application and conflicts check | 2.0 | 14 |
| 6/8/09 | Diligence process call | 0.5 | 2 |
| 6/8/09 | Prepare retention application and conflicts check, calls with legal counsel | 4.0 | 14 |
| 6/9/09 | Prepare retention application and conflicts check | 3.0 | 14 |
| 6/10/09 | Diligence process call | 0.5 | 2 |
| 6/10/09 | Prepare retention application and conflicts check | 2.0 | 14 |
| 6/11/09 | Diligence process call | 0.5 | 2 |
| 6/11/09 | Prepare retention application and conflicts check, calls with legal counsel | 3.0 | 14 |
| 6/11/09 | Review of DIP Reporting Documents | 1.0 | 4 |
| 6/12/09 | Diligence process call | 0.5 | 2 |
| 6/12/09 | Prepare retention application | 4.0 | 14 |
| 6/12/09 | Call with GM regarding Exit Financing | 1.0 | 5 |
| 6/14/09 | Review of DIP draw projections | 2.0 | 5 |
| 6/15/09 | Diligence process call | 0.5 | 2 |
| 6/15/09 | Discussion and preparation of discovery materials | 3.0 | 12 |
| 6/15/09 | Review and discussion of DIP draw projections | 2.0 | 5 |
| 6/16/09 | Discussion and preparation of discovery materials | 3.0 | 12 |
| 6/16/09 | Diligence process call | 0.5 | 2 |
| 6/17/09 | Diligence process call | 0.5 | 2 |
| 6/17/09 | Call with legal counsel regarding retention | 0.5 | 14 |
| 6/17/09 | Team meeting regarding case management | 0.5 | 1 |
| 6/18/09 | Diligence process call | 0.5 | 2 |
| 6/18/09 | Preparation of retention documentation and related analyses | 2.0 | 14 |
| 6/19/09 | Diligence process call | 0.5 | 2 |
| 6/19/09 | Call with GM and its legal advisers regarding legal structure of NewCo | 1.0 | 5 |
| 6/19/09 | Review of Evercore retention objections | 1.0 | 14 |
| 6/20/09 | Preparation of retention documentation and related analyses | 2.0 | 14 |
| 6/22/09 | GM management call | 1.0 | 3 |
| 6/22/09 | Preparation of retention documentation | 2.0 | 14 |
| 6/23/09 | Review of Evercore retention objections | 1.0 | 14 |
| 6/23/09 | Call with legal counsel regarding retention | 1.0 | 14 |
| 6/24/09 | Call with legal counsel regarding retention | 1.0 | 14 |
| 6/24/09 | Review of DIP Reporting Documents and amended credit agreement | 2.0 | 4 |
| 6/25/09 | Due diligence calls with FTI | 1.0 | 2 |
| 6/25/09 | Review of exit financing credit agreements | 2.0 | 5 |
| 6/26/09 | Call with GM and its legal advisers regarding exit financing credit agreements | 3.0 | 5 |
| 6/26/09 | Preparation of retention documentation | 0.5 | 14 |
| 6/27/09 | Review of 363 Sale related documentation | 2.0 | 6 |
| 6/28/09 | Review of exit financing related documentation | 2.0 | 6 |
| 6/29/09 | Review of court documents | 3.0 | 1 |
| 6/30/09 | Court hearings regarding DIP financing | 3.0 | 1 |
| 6/30/09 | Preparation of retention documentation | 0.5 | 14 |
| | **June Hours** | **79.0** | |
| | | | |
| 7/1/09 | Review of DIP Reporting Documents | 1.0 | 4 |
| 7/1/09 | Conference call on court proceedings | 2.0 | 1 |
| 7/2/09 | Conference call on court proceedings | 2.0 | 1 |
| 7/2/09 | Review of exit financing related documentation | 1.0 | 6 |
| 7/6/09 | Review of court filings related to 363 transaction | 2.0 | 1 |
| 7/7/09 | Review of court filings related to 363 transaction | 2.0 | 1 |
| 7/8/09 | Review Exit Financing Documents | 1.0 | 5 |
| 7/9/09 | Review Exit Financing Documents | 0.5 | 5 |
| 7/9/09 | Review Closing Documents | 0.5 | 5 |

**General Motors**

Time Detail

Evercore Partners

Jelena Strelcova - Associate

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 7/10/09 | Preparation of retention documentation | 2.0 | 14 |
| | **July Hours** | **14.0** | |

**General Motors**

Time Detail

Evercore Partners

Ryan Berk - Analyst

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/1/09 | Worked with GMTO on interest projection model | 3.0 | 4 |
| 6/1/09 | Updated Evercore conflicts check | 3.0 | 14 |
| 6/2/09 | Worked with GMTO on interest projection model | 4.5 | 4 |
| 6/2/09 | Call with Bryan Cave regarding retention application | 1.0 | 14 |
| 6/3/09 | Worked with GMTO on interest projection model | 4.5 | 4 |
| 6/4/09 | Worked with GMTO on interest projection model | 5.0 | 4 |
| 6/4/09 | Worked on retention application | 2.0 | 14 |
| 6/5/09 | Worked with GMTO on interest projection model | 5.5 | 4 |
| 6/5/09 | Worked on retention application | 1.5 | 14 |
| 6/8/09 | Worked with GMTO on interest projection model | 3.5 | 4 |
| 6/8/09 | Updated Evercore conflicts check | 2.0 | 14 |
| 6/8/09 | Call with Company regarding diligence | 0.5 | 2 |
| 6/9/09 | Worked with GMTO on interest projection model | 2.5 | 4 |
| 6/9/09 | Updated Evercore conflicts check | 2.5 | 14 |
| 6/10/09 | Meeting with internal counsel regarding Evercore conflicts check | 1.0 | 14 |
| 6/10/09 | Call with Company regarding diligence | 0.5 | 2 |
| 6/10/09 | Updated Evercore conflicts check | 3.5 | 14 |
| 6/11/09 | Internal meeting regarding conflicts check | 2.0 | 14 |
| 6/15/09 | Document retention work for legal discovery | 0.5 | 12 |
| 6/16/09 | Call with FTI regarding cash flow diligence | 2.5 | 2 |
| 6/22/09 | Bankruptcy fee comparability work | 1.5 | 14 |
| 6/23/09 | Bankruptcy fee comparability work | 3.0 | 14 |
| 6/24/09 | Put together book of documents regarding Evercore involvement in GM | 1.0 | 1 |
| 6/25/09 | Travelled to and attended DIP order hearing | 1.5 | 1 |
| 6/30/09 | Travelled, attended and teleconferenced in to 363 order hearing | 9.0 | 1 |
| | **June Hours** | **67.0** | |
| 7/1/09 | Attended 363 order hearing | 1.0 | 1 |
| 7/1/09 | Teleconferenced into 363 order hearing | 3.0 | 1 |
| 7/1/09 | Internal Evercore meeting regarding 363 order hearing | 1.0 | 1 |
| | **July Hours** | **5.0** | |

**General Motors**

Time Detail

Evercore Partners

Carlo Lim - Analyst

| Date | Description of Work | Hours | Code |
|---|---|---|---|
| 6/1/09 | Reviewed DIP sizing and backup analysis | 3.0 | 5 |
| 6/1/09 | Prepared and attended expert testimony hearing | 5.0 | 13 |
| 6/1/09 | Travel time to and from expert testimony hearing | 1.0 | 12 |
| 6/2/09 | Reviewed credit bid in valuation analysis | 1.5 | 6 |
| 6/2/09 | Meeting of Interim Fee Application | 0.5 | 14 |
| 6/2/09 | Reviewed redacted GM Model for due diligence | 2.0 | 3 |
| 6/3/09 | Conversations with GMTO on updates to cash flows | 1.5 | 3 |
| 6/3/09 | Telephonic meeting with KPMG accountants on information requirements for opening balance sheet | 1.0 | 3 |
| 6/3/09 | Telephonic conversations with GM tax personnel on warrants and CODI | 0.5 | 3 |
| 6/4/09 | Call with Company to review and diligence balance sheet in GM Model | 1.0 | 3 |
| 6/4/09 | Reviewed redacted GM Model for due diligence | 2.0 | 3 |
| 6/4/09 | Call with Company management regarding Project Beam status | 0.5 | 6 |
| 6/5/09 | Reviewed redacted GM Model for due diligence | 2.0 | 3 |
| 6/5/09 | Prepared summary financial statements for creditor due diligence | 2.0 | 3 |
| 6/5/09 | Call with Company management regarding Project Beam diligence | 1.0 | 6 |
| 6/5/09 | Preparation of backup projection variance analysis related to Project Beam | 1.0 | 6 |
| 6/8/09 | Reviewed redacted GM Model for due diligence | 1.0 | 3 |
| 6/8/09 | Participated on GM management call | 1.0 | 1 |
| 6/8/09 | Call with creditor advisor on due diligence questions | 1.5 | 2 |
| 6/8/09 | Call with Company on due diligence process | 1.0 | 2 |
| 6/8/09 | Call with Company on GM Mexico revolver / valuation | 0.5 | 1 |
| 6/9/09 | Reviewed redacted GM Model for due diligence | 2.5 | 3 |
| 6/10/09 | Call with Company on Project Beam - RHJI/government discussion | 1.0 | 6 |
| 6/10/09 | Call with Company on Project Beam - valuation | 0.5 | 6 |
| 6/10/09 | Call with Company advisors on Project Beam - scope and perimeter | 0.5 | 6 |
| 6/10/09 | Participated on GM management call | 1.0 | 1 |
| 6/10/09 | Call with Company on Project Beam - RHJI draft key terms | 0.5 | 6 |
| 6/11/09 | Call with Company advisors on Project Beam - scope and perimeter | 0.5 | 6 |
| 6/11/09 | Call with Company on GM Mexico revolver / valuation | 0.5 | 1 |
| 6/11/09 | Call with Company on GME financing | 1.0 | 6 |
| 6/11/09 | Reviewed Board of Directors presentation/fairness opinion and GM IFM with GMTO | 3.0 | 1 |
| 6/11/09 | Call with Company advisors on Project Beam - shareholder agreements | 2.0 | 6 |
| 6/12/09 | Call with creditor advisor on due diligence questions | 1.0 | 2 |
| 6/12/09 | Participated on GM management call | 2.0 | 1 |
| 6/12/09 | Reviewed business plan assumptions | 1.0 | 3 |
| 6/12/09 | Call with Company on Project Beam - valuation | 1.0 | 6 |
| 6/12/09 | Call with Company advisors on Project Beam - scope and perimeter | 1.0 | 6 |
| 6/12/09 | Call with Company on Project Beam - Magna SPA | 1.0 | 6 |
| 6/12/09 | Call with Company on preliminary IPO valuation | 0.5 | 1 |
| 6/15/09 | Participated on GM management call | 2.0 | 1 |
| 6/15/09 | Reviewed business plan assumptions | 2.0 | 3 |
| 6/15/09 | Prepared diligence materials for creditor advisor | 1.0 | 2 |
| 6/15/09 | Analyzed alternative warrant valuation methodology | 2.5 | 7 |
| 6/16/09 | Call with Company regarding creditor due diligence materials | 0.5 | 2 |
| 6/16/09 | Call with KPMG on valuation and fresh-start accounting work thread | 1.0 | 1 |
| 6/16/09 | Call with Company on updated/revised treatment of DTA for NOL valuation | 0.5 | 7 |
| 6/16/09 | Prepared diligence materials for creditor advisor | 1.5 | 2 |
| 6/17/09 | Call with GMTO with UST on due diligence structuring | 0.5 | 2 |
| 6/17/09 | Call with Company GMNA Capital Planning and UST on SAAR sensitivity | 0.5 | 2 |
| 6/17/09 | Call with Company GMNA Capital Planning and UST on due diligence structuring | 0.5 | 2 |
| | **June Hours** | **63.5** | |

**General Motors**
Time Detail
Evercore Partners
Nitesh Yadav - Analyst

| Date | Description of Work | Hours | Code |
|------|---------------------|-------|------|
| 6/27/09 | Conducted analysis of capital structure and historical debt pricing levels | 2.0 | 4 |
| 6/30/09 | Teleconferenced in to 363 order hearing | 9.0 | 1 |
| | **June Hours** | **11.0** | |
| 7/1/09 | Teleconferenced in to 363 order hearing | 9.0 | 1 |
| | **July Hours** | **9.0** | |

**Exhibit D**

| | Evercore Group L.L.C. General Motors (n/k/a Motors Liquidation Company) Restructuring Team | | | |
|---|---|---|---|---|
| **Name** | **Highest Degree, Date** | **Licenses** | **Title** | **Years of Business Experience** |
| Roger Altman | M.B.A., University of Chicago, 1969 | Series 7, 24 | Chairman | 40 |
| William Hiltz | M.B.A., The Wharton School at the University of Pennsylvania, 1976 | Series 7, 24, 63 | Senior Managing Director | 33 |
| William Repko | B.S., Lehigh University, 1973 | Series 7, 24, 63 | Senior Managing Director | 36 |
| Patricia Caffrey | M.B.A., Columbia University Graduate School of Business, 1979 | Series 7, 24, 63 | Managing Director | 30 |
| Stephen Sieh | M.B.A., Columbia University Graduate School of Business, 1998 | Series 7, 63, C.P.A. | Managing Director | 13 |
| Stephen Worth | B.A., Wesleyan University, 1988 | Series 7, 63 | Managing Director | 21 |
| Dan Alster | M.B.A., Graduate School of Management at Boston University, 2002 | Series 7, 63 | Vice President | 9 |
| Gus Christensen | M.B.A., The Wharton School at the University of Pennsylvania, 2003 | Series 7, 63 | Vice President | 13 |
| Gerardo Mendez | M.B.A., Harvard Business School, 2007 | Series 7, 63 | Associate | 9 |
| Purvish Shah | B.S., Lehigh University, 2006 | - | Associate | 4 |
| Jelena Strelcova | M.B.A., Leonard N. Stern School of Business at New York University, 2005 | Series 7, 63 | Associate | 6 |

| Ryan Berk | B.B.A., McCombs School of Business at The University of Texas at Austin, 2008 | - | Analyst | 1 |
| Carlo Lim | B.S., Leonard N. Stern School of Business at New York University, 2007 | - | Analyst | 2 |
| Nitesh Yadav | B.S., University of Virginia, 2008 | - | Analyst | 1 |

## CERTIFICATION

WILLIAM C. REPKO, under penalty of perjury, certifies and says:

1.    I am a Senior Managing Director with the applicant firm, Evercore Group L.L.C. ("**Evercore**"), which firm maintains offices for providing financial advisory and investment banking services at 55 East 52nd Street, New York, NY 10055.  Evercore has acted as financial advisor and investment banker to and rendered professional services on behalf of Motors Liquidation Company (f/k/a General Motors Corp.) and its affiliated debtors and debtors in possession (the "**Debtors**").

2.    This certification is submitted in support of Evercore's First and Final Application for Compensation and Reimbursement of Expenses (the "**Application**"), pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure and Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "**Amended Guidelines**").

3.    I hereby certify that:

(a)    I have read the Application.

(b)    To the best of my knowledge, information and belief formed after a reasonable inquiry, and except as specifically noted in this Certification and in the Application, the fees and disbursements sought in the Application fall within the Amended Guidelines and the guidelines promulgated by the Office of the United States Trustee applicable to the Application (the "**UST Guidelines**"), as modified by the order authorizing the retention of Evercore in these cases and any other applicable administrative orders entered herein.

(c)    The fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Evercore and generally accepted by Evercore's clients.

4.    Subject to the terms of applicable procedural orders of this Court and any order or orders of this Court approving the retention of Evercore, this Application is being served upon

this Court, the U.S. Trustee, the Debtor and counsel to the Creditors' Committee appointed in the

Debtors' Chapter 11 cases.

    I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
    November _11_ , 2009

_____
William C. Repko
Senior Managing Director

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                    :

                                          :        Chapter 11 Case No.

                                          :

MOTORS LIQUIDATION COMPANY, et al.,       :        09-50026 (REG)

        f/k/a General Motors Corp., et al.  :

                                          :        (Jointly Administered)

                Debtors.                  :

                                          :

------------------------------------------------------------x

## ORDER GRANTING FIRST AND FINAL APPLICATION OF EVERCORE GROUP L.L.C. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Upon consideration of the First and Final Application (the "**Application**") of Evercore Group, L.L.C. for Compensation and Reimbursement of Expenses, for the period from June 1, 2009 through and including July 10, 2009, filed by Evercore Group L.L.C. ("**Evercore**"); and due and adequate notice of the Application having been given under the circumstances; and capitalized terms used but not defined herein being used with their defined meanings as set forth in the Application; and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

ORDERED, that the Application be, and it hereby is, granted in its entirety; and it is further

ORDERED, that there shall be allowed to Evercore, on a final basis, (i) compensation for its professional services rendered as investment banker and financial advisor to the Debtors in the amount of $16,029,032 and (ii) reimbursement of actual, reasonable and necessary expenses incurred in the amount of $2,920.62; and it is further

ORDERED, that the Debtors are authorized and directed to make payment in respect of $11,698,952.62 of such fees and expenses, less amounts paid previously; and it is further

ORDERED, that the Debtors are authorized and ordered to make payment in respect of $4,333,000 of such fees upon entry of an order confirming the plan of reorganization with respect to Motors Liquidation Company (the "**Chapter 11 Plan**") which provides that (i) holders of allowed general unsecured claims will receive the New GM Securities paid to the Debtors' estates in connection with the consummation of the sale under Section 363 of the Bankruptcy Code authorized and approved by Order of this Court, dated July 5, 2009, and (ii) there are sufficient funds and other assets in the Debtors' estates to pay all allowed priority and allowed administrative expense claims under the Chapter 11 Plan without the necessity of selling or otherwise affecting the New GM Securities; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
       December __, 2009

_____
Hon. Robert E. Gerber
United States Bankruptcy Judge

2