Baker & McKenzie LLP
One Prudential Plaza, Suite 3500
130 East Randolph Street
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
David F. Heroy
Andrew P.R. McDermott

*Special Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**MOTORS LIQUIDATION COMPANY**, *et al.*,<br>f/k/a General Motors Corp., *et al.*<br><br>Debtors. | **Chapter 11 Case No.**<br><br>**09-50026 (REG)**<br><br>(Jointly Administered) |

**FIRST INTERIM APPLICATION OF BAKER & MCKENZIE
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
SERVICES RENDERED AS SPECIAL COUNSEL FOR THE DEBTORS
FOR THE PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

| | |
|---|---|
| Name of Applicant: | Baker & McKenzie |
| Authorized to Provide Services to: | Debtors |
| Date of Retention: | June 1, 2009 |
| Date of Entry of Retention Order: | August 3, 2009 [Docket No. 3634] |
| Interim Fee Period for Which Compensation and Reimbursement is Sought: | June 1, 2009 through September 30, 2009 |
| Compensation Requested: | $1,262,789.76 |
| Expense Reimbursement Requested: | $21,619.20 |
| Total Request: | $1,284,408.96 |
| This Is: | Interim Fee Application |
| Blended Rate of All Billers | $480.40 |
| Blended Rate of Professionals | $507.61 |

* No prior interim applications have been filed by Baker & McKenzie.

CHIDMS1/2743138.9

Baker & McKenzie LLP
One Prudential Plaza, Suite 3500
130 East Randolph Street
Chicago, IL  60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
David F. Heroy
Andrew P.R. McDermott

*Special Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.,*<br>**f/k/a General Motors Corp.,** *et al.*<br><br>Debtors. | **Chapter 11 Case No.**<br><br>09-50026 (REG)<br><br><br>(Jointly Administered) |

**FIRST INTERIM APPLICATION OF BAKER & MCKENZIE
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
SERVICES RENDERED AS SPECIAL COUNSEL FOR THE DEBTORS
FOR THE PERIOD JUNE 1, 2009 THROUGH SEPTEMBER 30, 2009**

Baker & McKenzie ("**Baker**"), special counsel to the above-captioned debtors (the "**Debtors**"), hereby applies (this "**Application**") for entry of an order allowing (a) fees in the amount of $1,262,789.76 for the reasonable and necessary legal services Baker has rendered to the Debtors, and (b) the actual and necessary expenses that Baker incurred in the amount of $21,619.20, for the period from June 1, 2009, through September 30, 2009 (the "**Fee Period**"), pursuant to sections 330 and 331 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Retention Order (as defined below), the

CHIDMS1/2743138.9

United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "**Trustee Guidelines**") and the Order Granting Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711] (the "**Interim Compensation Order**"). In support of this Application, Baker respectfully states as follows:

## BACKGROUND

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  This Application has been prepared by Baker in accordance with the Amended Guideline for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "**Local Guidelines**"), the Trustee Guidelines and the Interim Compensation Order. Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as <u>Exhibit A</u>. Pursuant to the Trustee Guidelines, the Debtors have reviewed this Application and approved of the entire amount requested by Baker for services performed and expenses incurred during the Fee Period.

3.  On June 1, 2009 (the "**Commencement Date**"), the Debtors filed voluntary petitions for relief commencing cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

4.  On July 5, 2009, the Court approved the sale of substantially all of the Debtors'

assets to Vehicle Acquisition Holdings LLC (its successor, "**New GM**") pursuant to its Order (I) Authorizing Sale Of Assets Pursuant To Amended And Restated Master Sale And Purchase Agreement With NGMCO, Inc., A U.S. Treasury Sponsored Purchase; (II) Authorizing Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale; And (III) Granting Related Relief [Docket No. 2968] and the approved sale was consummated as of July 10, 2009 (the "**Sale Date**").

### BAKER'S RETENTION & CONTINUING DISINTERESTEDNESS

5. On July 22, 2009, the Debtors filed their Application For Entry Of Order Pursuant To 11 U.S.C. §§ 327(e) And Fed. R. Bankr. P. 2014 Authorizing Retention And Employment of Baker & McKenzie As Special Counsel, *Nunc Pro Tunc* To The Commencement Date (the "**Retention Application**") [Docket No. 3283]. In support thereof, on July 31, 2009, the Debtors filed the Amended And Restated Declaration Of A. Duane Webber And Disclosure Statement Of Baker & McKenzie Pursuant To Sections 327(e), 329 And 504 Of The Bankruptcy Code And Rule 2014(a) Of The Federal Rules Of Bankruptcy Procedure (the "**Webber Declaration**") [Docket No. 3597].

6. By this Court's order dated August 3, 2009 [Docket No. 3634] (the "**Retention Order**"), the Debtors were authorized to retain Baker as special counsel, *nunc pro tunc* to the Commencement Date, with regard to tax and international matters relating primarily to the Debtors' post-petition financing, the tax implications of the Debtors' Chapter 11 Cases and the negotiation and sale of substantially all of the Debtors' assets. The Retention Order authorizes the Debtors to compensate Baker at Baker's hourly rates charged for services of this type and to reimburse Baker for Baker's actual and necessary out-of-pocket expenses incurred, as more fully set forth therein.

7.  As disclosed in the Webber Declaration, Baker does not hold any adverse interest to the Debtors or their estates with respect to the matters on which Baker has been employed. As further set forth in the Webber Declaration, Baker may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the Chapter 11 Cases. In the Webber Declaration, Baker disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts. Baker has and will continue to update the Webber Declaration if and when necessary and appropriate.

### SERVICES RENDERED BY BAKER

8.  Since the Commencement Date, Baker has performed legal services for the Debtors with respect to four distinct major projects which have made near full use of Baker's international reach:

   (a) **"Project Beam,"** the proposed sale of (or investment in) the Debtors' (and New GM, on and after the Sale Date) stake in Adam Opel GmbH, has been led by Baker's Berlin and London offices, with support from offices in Munich and Frankfurt;

   (b) **"Delphi Steering Acquisition,"** the proposed acquisition by the Debtors (and New GM, on and after the Sale Date) of the steering and half shafts business of Delphi Corporation, has been managed from Baker's London office, with services worldwide from offices in Amsterdam, Beijing, Berlin, Frankfurt, Madrid, Melbourne, Mexico City, Milan, Monterrey (Mexico), Moscow, Paris, Porto Alegre (Brazil), Rome, San Francisco and Sao Paulo;

(c) **"Project Two,"** support for the Debtors' (and New GM's, on and after the Sale Date) restructuring and contingency planning efforts throughout the Asia-Pacific region, including regulatory compliance and review of material contracts, utilizing Baker's offices and affiliated lawyers in Bangkok, Beijing, Ho Chi Minh City, Jakarta, Kuala Lumpur, Manila, Melbourne, Shanghai, Singapore, Sydney and Tokyo, as well as Baker's contacts with law firms in countries such as India, that do not permit foreign firms; and

(d) **"U.S. Tax Liability,"** the resolution of disputed tax liabilities of the Debtors and related claims filed in the Chapter 11 Cases serviced by Baker's Chicago, New York and Washington, D.C. offices.

9. In addition to the foregoing, Baker has provided services relating to its retention and fee applications in the Chapter 11 Cases (**"Retention & Fee Applications"**) and minor follow up services relating to a previous matter that has wound-down (**"Technology Company"**).

## FEES BILLED BY BAKER

10. The attached Exhibit B provides information regarding Baker's billing attorneys and paraprofessionals and a summary of the hours of service rendered by each attorney and paraprofessional and the hourly rate of each individual during the Fee Period. The rates described are Baker's hourly rates for services of this type provided during the Fee Period. Based on these rates and the services performed by each individual, the total reasonable value of such services rendered during the Fee Period is $1,262,789.76. The Baker attorneys and paraprofessionals expended a total of 2,628.6 hours during the Fee Period. In accordance with

the factors enumerated in Bankruptcy Code § 330, the amount of fees requested is fair and reasonable given: (a) the complexity of the Chapter 11 Cases; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the costs of comparable services other than in a case under the Bankruptcy Code. See, e.g., In re Moss, 320 B.R. 143, 156-57 (Bankr. E.D. Mich. 2005); In re Ray, 314 B.R. 643, 662-63 (Bankr. M.D. Tenn. 2004); In re Chary, 201 B.R. 783, 787-88 (Bankr. W.D. Tenn. 1996).

11.     The itemized invoices attached as Exhibit C (a) identify the attorneys and paraprofessionals who rendered services in each subject matter set forth therein; (b) describe each activity or service that each individual performed; and (c) state the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.

12.     The professional services that Baker rendered during the Fee Period are grouped into the following numbered and titled categories:

Project Beam

Fees: $434,306.88; Expenses $10,104.21: $; Hours: 726.2.

This subject matter describes Baker's services performed in connection with the intended sale of the Debtors' stake in Adam Opel GmbH ("**Opel**") to a third party investor. Baker acted as outside lead counsel for the Debtors in the transaction. The assignment included the provision of all necessary legal support during the entire bidding procedure as well as in the specific negotiations with the consortium of the Austrian/Canadian automotive supplier Magna and the Russian Sberbank as well as the financial investor RHJ International. The services provided included the drafting and negotiation of the principal purchase contract and extended to all aspects regarding the future cooperation of Opel's shareholder, although the transaction ultimately was canceled.

As of the Sale Date, Baker was advised that all billings on this matter should be directed by New GM, who would be responsible for payment, and the representation of the Debtors has concluded as to this matter.

Delphi Steering Acquisition

Fees: $380,897.40; Expenses $5,599.19: $; Hours: 917.3.

This subject matter describes Baker's services performed in connection with the Debtors' (and subsequently New GM's) acquisition of the steering and half shafts business of Delphi Corporation. Baker has been responsible for nearly all non-domestic aspects of the transaction, which covers thirteen countries on five different continents. During the Fee Period, Baker assisted in finalizing all local transfer documents, including local asset transfer agreements, employee transfer notices, and other asset specific transfer documents such as property transfer deeds and lease assignments. Further, Baker provided support and legal advice to complete all the relevant employee and/or union consultations taking place in the various countries; assisting New GM in identifying what other licenses and/or permits it may need in each country to operate the business and providing assistance in making the related applications; attending to all necessary corporate approvals for the acquiring entities, including local transfer documents, and coordinating execution of all relevant documents for the closing of the transaction.

As of the Sale Date, Baker was advised that all billings on this matter should be directed by New GM, who would be responsible for payment, and the representation of the Debtors has concluded as to this matter. Baker submitted an invoice in connection with its Monthly Statement (defined below) for July that incorrectly contained fees billed on July 10. Baker has updated this invoice and seeks approval in this Application only for time and expenses

through July 9, 2009.

### Project Two

Fees: $248,217.16; Expenses $5,575.38: $; Hours: 595.7

This subject matter describes Baker's services performed in connection with the Debtors' Asia-Pacific subsidiaries. The legal advice provided by Baker addressed the regulatory and contractual impacts of the restructuring in relation to the Debtors' corporate, marketing, finance pension, employment, solvency, and supplier activities in the Asia-Pacific region. Baker's offices in the region provided guidance on specific local legal issues which affected the interpretation of material contracts and regulatory requirements. In the three jurisdictions where Baker did not itself have an office, Baker instructed and coordinated leading local firms. Prior to the Chapter 11 Cases and sale to New GM, Baker had prepared action plans for the Asian subsidiaries to deal with regulatory and material contract consent and waiver issues. Baker then assisted the Debtors (where required) in negotiations with regulators and counterparties. Baker performed multiple detailed reviews of the regional regulatory and material contracts that would be impacted by the Chapter 11 Cases, the sale and related contingencies. This review process was expedited and greatly assisted by the creation of Baker's Client Extranet, which contained the Debtors' (and New GM's) Asia-Pacific material contracts. Baker's advice in this initial phase was re-cut and revisited to take into account changes to restructuring strategy and ongoing operation of the business, including negotiation of new material contracts. Leading up to the closing of the sale to New GM, Baker prepared the local law documents required to effect transfers for the final restructures and coordinated these and internal and external approvals across the affected jurisdictions. Once the closing documents had been prepared and submitted, Baker obtained remaining post-completion regulatory or other approvals.

As of the Sale Date, Baker was advised that all billings on this matter should be directed by New GM, who would be responsible for payment. After submitting invoices to New GM for the continuation of Project Two (and the newly entitled Project Three), however, Baker was advised by New GM in early October that an invoice sent to New GM for services billed from July 10 through July 31, in fact, remained the responsibility of the Debtors. In addition, in early November, it was determined that a "Project Three" invoice for September initially sent to New GM was the Debtors' responsibility. As a result of this miscommunication, these two invoices were not included in Baker's Monthly Statements (defined below) for July and September.

U.S. Tax Liability

Fees: $74,656.00; Expenses $169.40: $; Hours: 147.3

This subject matter describes Baker's services performed in connection with the compilation of a central database sorting all proofs of claim filed by creditors with respect to potential disputed tax matters and providing legal advice regarding resolution of these claims. Baker has also been providing legal advice on how to resolve pre-petition tax disputes of the Debtors that have not yet been raised in the Chapter 11 Cases. Based on its familiarity with state and local tax laws and tax controversy processes and fora, Baker has been working with the Debtors (and New GM) to assess and quantify such claims, identify potential methods to efficiently settle or resolve them, and determine the appropriate litigation strategy for tax claims that remain disputed.

As of the Sale Date, Baker was not given immediate direction as to whether billings on this matter should be directed and paid by New GM (whom Baker has been advised acquired the tax liabilities that are the subject of the representation). As a result, Baker included

a U.S. Tax Liability invoice in its Monthly Statement (defined below) for July that included the entire month. After consultation with the Debtors and New GM, Baker re-issued an invoice (i) to the Debtors for the period of July 1 through July 9 and (ii) to New GM for the period of July 10 through July 31. Baker has submitted all subsequent invoices on this matter to New GM and seeks approval in this Application only for fees and expenses through July 9, 2009.

Retention & Fee Applications

Fees: $122,222.32; Expenses $169.68: $; Hours: 239.0.

This subject matter describes Baker's services performed in connection with its obligations as a retained professional in the Chapter 11 Cases, including assisting Debtors' counsel with preparation of the Retention Application and drafting the supporting Webber Declaration. Significant time was spent by Baker insolvency attorneys in the first month of the case to coordinate the required conflicts checks among the thirty (30) Baker offices actively working for the Debtors. In addition, Baker insolvency attorneys spent significant time advising Baker offices of the requirements of professionals in U.S. bankruptcy cases and coordinating billing to comply with bankruptcy guidelines. The effort expended reflects the fact that Baker was being retained on four distinct matters involving twenty-six (26) international offices, the majority of which are located in non-English speaking countries and which offices are not typically retained in U.S. bankruptcy proceedings. Further complicating matters, Baker was initially slated by the Debtors to be retained as ordinary course counsel, perhaps reflecting confusion over whether Baker was retained by non-debtor subsidiaries. Baker worked with Debtors' counsel to resolve these and other issues and ultimately was retained as special counsel, as its fees were in excess of the limits for ordinary course professionals. In addition, Baker billed fees to this matter assisting the Debtors in the retention of "ordinary course professionals,"

in foreign jurisdictions. Baker also billed fees beginning in August to the preparation of the Monthly Statements discussed below. The review and editing of invoices aggregated from Baker's numerous offices for compliance with bankruptcy guidelines necessarily required a greater amount of work in the beginning stages of the case, however, fees billed to this matter have been reduced as the Chapter 11 Cases have progressed.

<u>Technology Company</u>

Fees: $2,490.00; Expenses $1.34: $; Hours: 3.1.

This subject matter describes Baker's services performed winding down a previous representation in support of negotiation of an agreement between U.S. and foreign tax authorities regarding the GM's tax liability arising from certain transactions.

### ACTUAL & NECESSARY EXPENSES

13. Attached hereto as <u>Exhibit D</u> is a summary of the expenses incurred during the Fee Period for which reimbursement is sought. These disbursements comprise the requested sum for Baker's out-of-pocket expenses, totaling $21,619.20.

14. It is Baker's policy to charge its clients in all areas of practice the amounts incurred by Baker for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. Examples of such expenses are postage, overnight mail, courier delivery, computer assisted legal research, photocopying, out-going facsimile transmissions, local transportation and secretarial overtime.

### MONTHLY STATEMENTS

15. Baker has served monthly fee statements (collectively, the "**Monthly Statements**") on the applicable Notice Parties (as defined in the Interim Compensation Order),

for the periods listed below. No objections to any Monthly Statement have been filed in the Chapter 11 Cases or received by Baker. As discussed above, due to uncertainty regarding the transition of representation and payment responsibilities from the Debtors to New GM, the invoices submitted in connection with this Application vary from those that were included in the Monthly Statements. The following is a summary of these changes:

(a) Monthly Statement for June and July 2009;

- The July invoice for the U.S. Tax Liability matter included as Exhibit E-2 to the Monthly Statement has been replaced by the invoice included in Exhibit C hereto, with time billed on and after July 10, 2009 removed.

- The July invoice for the Delphi Steering Acquisition matter included as Exhibit E-6 to the Monthly Statement has been replaced by the invoice included in Exhibit C hereto, with time billed on July 10, 2009 removed.

(b) Monthly Statement for August 2009;

- The August invoice for the U.S. Tax Liability matter included in the Monthly Statement is not included in Exhibit C hereto.

(c) Monthly Statement for September 2009

(d) Two invoices not previously submitted are included in Exhibit C hereto

i. Project Two invoice for July 10 through July 31, 2009;

ii. Project Two invoice for September 2009 (states "Project Three," however, Baker has been advised that this should be billed to the Debtors, not New GM).

16. On October 20, 2009, Baker received wire transfers of (a) $365,294.83, which amount was applied in satisfaction of 80% of Baker's fees and all of Baker's expenses for the Project Beam matter from June 1 through July 9, 2009; (b) $310,294.44, which amount was applied in satisfaction of 80% of Baker's fees and all of Baker's expenses for the Delphi Steering Acquisition matter from June 1 through July 9, 2009; (c) $176,873.93, which amount was applied in satisfaction of 80% of Baker's fees and all of Baker's expenses for the Project Two matter from June 1 through July 9, 2009; and (d) $110,545.19, which amount was applied in satisfaction of 80% of Baker's fees and all of Baker's expenses for the U.S. Tax Liability and Technology Company matters, from June 1 through July 9, 2009, and for the Retention & Fee Applications matter from June 1 through July 31, 2009.

17. None of the foregoing payments have been shared by Baker with any other party, nor are these or any other payments subject to a sharing agreement between Jones Day and any third party. Baker did not receive payments or promises of payments during the Fee Period from any source for services rendered or to be rendered in connection with these Chapter 11 Cases.

## CONCLUSION

18. Pursuant to the Interim Compensation Order, at four-month intervals, a Professional (as defined in the Interim Compensation Order) may apply to the Court for interim allowance of the compensation and reimbursement of expenses sought by such Professional in its monthly statements pursuant to section 331 of the Bankruptcy Code.

19. By this Application, Baker requests interim allowance and payment of fees and expenses in the total amount of $1,284,408.96 consisting of: (a) $1,262,789.76 for the actual, reasonable and necessary professional services rendered by Baker on behalf of the Debtors; and (b) $21,619.20 for actual and necessary costs and expenses. This is the first interim fee

application that Baker has submitted in the Chapter 11 Cases.

## NOTICE

20. Notice of this Application has been provided to all parties required to receive notice of this Application. In light of the nature of the relief requested, Baker submits that no further notice is required.

WHEREFORE, Baker respectfully requests the entry of an order (a) allowing an administrative expense claim for Baker's compensation and reimbursement for its fees and expenses incurred during the Fee Period, (b) authorizing and directing payment of such amounts and (c) granting such other and further relief as is just and proper.

Dated: November 16, 2009

/s/ David F. Heroy
David F. Heroy
Baker & McKenzie LLP
One Prudential Plaza, Suite 3500
130 East Randolph Street
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899