**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
In re                                         :          Chapter 11 Case No.
:
**MOTORS LIQUIDATION COMPANY, et al.,**       :          **09-50026 (REG)**
    **f/k/a General Motors Corp., et al.**        :
:
        **Debtors.**                 :          **(Jointly Administered)**
:
-------------------------------------------------------------------x

**FINAL APPLICATION OF ALAN CHAPELL, CONSUMER PRIVACY OMBUDSMAN,**
**APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY CODE FOR**
**FINAL APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES**
**RENDERED DURING THE PERIOD FROM**
**JUNE 8, 2009 THROUGH AND INCLUDING OCTOBER 4, 2009**

Name of Applicant:                            <u>Alan Chapell</u>

Authorized to Provide                         United States Bankruptcy Court for the Southern
Professional Services to:                     District of New York

Date of Retention:                            June 10, 2009

Period for which compensation
is sought:                                    June 8, 20009 – October 4, 2009

Amount of Compensation
requested:                                    $72,900.00

Amount of Expense
reimbursement requested:                      $ 0.00

This is a: _____ interim _____x_____ final application
The total time expended for the preparation of this application is approximately <u>2.5</u> hours and
the corresponding compensation requested is approximately $ 1,500.00 (which amount is
included in this final fee application). Although fees for the preparation of this application were
incurred outside of the fee period, the remainder of this fee application characterizes them as
having been incurred within the fee period in light of the final nature of this application.

This is the final fee application filed by Alan Chapell in these cases.

FINAL FEE APPLICATION OF ALAN CHAPELL, CONSUMER PRIVACY OMBUDSMAN,
(JUNE 8, 20009 – OCTOBER 4, 2009)

| NAME | POSITION; EXPERIENCE | HOURLY RATE | TOTAL HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Alan Chapell | President, Chapell & Associates, LLC; admitted to practice in NY in 2002; certified as an Information Privacy Professional in 2005 | $600.00 | 121.50 | $72,900.00 |
| Alan Chapell | Total Paid by Debtor pursuant to *order pursuant to 11 U.S.C. §§ 105(a) AND 331 establishing procedures for interim compensation and reimbursement of expenses of professionals* entered August 7, 2009, (docket number 639) | $600.00 | | ($57,120.00) |
| **Alan Chapell** | **Total Payment Requested** | **$600.00** | | **$15,780.00** |

SUMMARY TABLE OF SERVICES RENDERED DURING
ALAN CHAPELL'S COMPENSATION PERIOD
(JUNE 8, 20009 – OCTOBER 4, 2009)

| ACTIVITY | HOURS | FEES |
|---|---|---|
| Information Gathering, Drafting Consumer Privacy Ombudsman's Report to the Court | 53.70 | $32,220.00 |
| Review of Policies of Wind Down Dealerships | 53.10 | $31,860.00 |
| Time waiting to appear in Court, Court preparation, appearance in Court | 12.20 | $ 7,320.00 |
| Preparation of Fee Application | 2.50 | $ 1,500.00 |
| Sub-Total | 121.50 | $72,900.00 |

| ACTIVITY | HOURS | FEES |
|---|---|---|
| July Monthly Statement | PAID | ($47,280.00) |
| August Monthly Statement | PAID | ($ 9,840.00) |
| Total Paid by Debtor pursuant to the interim order | PAID | ($57,120.00) |
| **Total Payment Requested** | | **$15,780.00** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                        :

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY, et al.,** | : | **09-50026 (REG)** |
| f/k/a General Motors Corp., et al. | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**FINAL APPLICATION OF ALAN CHAPELL, CONSUMER PRIVACY OMBUDSMAN,
APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY CODE FOR
FINAL APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED DURING THE PERIOD FROM
<u>JUNE 8, 2009 THROUGH AND INCLUDING OCTOBER 4, 2009</u>**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

      Alan Chapell, Consumer Privacy Ombudsman ("<u>Ombudsman</u>"), appointed pursuant to

Section 332 of the Bankruptcy Code, hereby submits his application (the "<u>Application</u>") pursuant

to 11 U.S.C. § 330, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

<u>Rules</u>"), the *Guidelines for Fees and Disbursements for Professionals in Southern District of*

*New York Bankruptcy Cases*, adopted by the Court on June 24, 1991, and amended April 21,

1995 (together, the "<u>Local Guidelines</u>"), the *United States Trustee Guidelines for Reviewing*

*applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*,

effective January 30, 1996 (the "<u>United States Trustee Guidelines</u>") and the *Final Order Under*

*11 U.S.C. §§ 105 and 331, Establishing Procedures for Interim Compensation and*

*Reimbursement of Expenses of Professional*, dated December 13, 2005 (the "<u>Interim</u>

<u>Compensation Order</u>") for the allowance of final compensation for professional services

rendered from June 8, 2009 through and including October 4, 2009 (the "Compensation Period"),

and in support thereof, respectfully represents as follows:

# I.  INTRODUCTION

1. <u>Bankruptcy Filing</u>.   On April 30, 2009 (the "Petition Date"), General Motors Corp.,

*et al* ("Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code,

11 U.S.C. §§ 101 *et seq*. (as amended, the "Bankruptcy Code").

2. <u>Consumer Privacy Ombudsman</u>.  The Consumer Privacy Ombudsman was appointed

by the United States Trustee on June 10, 2009, pursuant to the *Ex Parte Order Under 11 U.S.C.*

*§§ 332 and 363(b)(1) Appointing Consumer Privacy Ombudsman*, entered June 10, 2009,

(docket number 565) attached hereto as Exhibit "A." On July 1, 2009, the Ombudsman filed his

Report, issued pursuant to 11 U.S.C. §332(b). The Ombudsman appeared at the hearing from

June 30, 2009 to and including July 1, 2009, and on July 1, 2009, responded directly to the

Court's inquiries as they related to the facts, circumstances and conditions of the Debtors'

proposed sale of "personally identifiable information," as defined under 11 U.S.C.

§ 363(b)(1)(B).

3. <u>Jurisdiction</u>.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334. Venue of the Debtors' chapter 11 cases (the "Chapter 11 Cases") is proper pursuant to 28

U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The

statutory predicate for the relief sought herein is section 330 of the Bankruptcy Code. Pursuant to

the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached

hereto as Exhibit "B."

# II.  APPLICATION

4. The Ombudsman makes this final application for approval and allowance of

compensation pursuant to section 330 of the Bankruptcy Code. In particular, he seeks approval

of $ 72,900.00 for legal services rendered in his capacity as Consumer Privacy Ombudsman. Of

the $72,900.00 requested, $57,120.00 has already been requested and received pursuant to the

*order pursuant to 11 U.S.C. §§ 105(a) AND 331 establishing procedures for interim*

*compensation and reimbursement of expenses of professionals* entered August 7, 2009, (docket

number 639) attached hereto as Exhibit "C." Of the $57,120.00 received, $47,280.00 was

requested and received pursuant to June Monthly Statement attached hereto as Exhibit "D" and

$9,840.00 was requested and received pursuant to the July Monthly Statement attached hereto as

Exhibit "E."

5.    The Ombudsman has not entered into any agreement, express or implied, with any

other party for the purpose of fixing or sharing fees or other compensation to be paid for

professional services rendered in these cases.

6.    No promises have been received by the Ombudsman or any member of Chapell &

Associates, LLC ("C&A"), his privacy consulting firm, as to compensation in connection with

these cases other than in accordance with the provisions of the Bankruptcy Code.

7.    The fees sought by this Application reflect an aggregate of 121.50 hours of time spent

by the Ombudsman and recorded in performing his duties as Ombudsman at an hourly rate of

$600.00. The Ombudsman has taken all possible measures to reduce his fees in these cases,

given the overall amount of professional fees incurred.

8.    The Ombudsman rendered all services for which compensation is sought solely in

connection with these cases, in furtherance of his duties and functions as Ombudsman.

9.    C&A maintains computerized records of the time expended in the rendering of

professional services required by Mr. Chapell's responsibilities as Ombudsman. These records

are maintained in the ordinary course of C&A's practice. For the convenience of the Court and

parties in interest, a billing summary for the period from June 8, 2009 to October 4, 2009 is

attached as part of the cover sheet, showing that it is the work of only Mr. Chapell for which

compensation is sought. The compensation requested herein is based on the customary

compensation charged by the Ombudsman for similar services and by comparably skilled practitioners in his field.

10. Attached hereto as Exhibit "F" are total time entry records broken down in tenths of an hour, based upon the United States Trustee Guidelines, setting forth a detailed description of services performed by Mr. Chapell in his capacity as Ombudsman.

11. C&A also maintains computerized records of all expenses incurred in connection with the performance of professional services. However, no such expenses were incurred in the performance with the professional services performed in this matter.

### III.   <u>SUMMARY OF PROFESSIONAL SERVICES RENDERED</u>

14. The Ombudsman has performed services related only to the carrying out of his duties as Consumer Privacy Ombudsman.

15. In his capacity as Ombudsman, Mr. Chapell reviewed the asset purchase agreement and the privacy policies of General Motors provided by the attorneys for the Debtors. Mr. Chapell also reviewed the privacy policies of Debtor's Saturn of Harlem Dealership, and several additional privacy documents provided to him by the attorneys for the Debtors, and reviewed over two thousand privacy policies of independent dealerships that were subject to wind down agreements with Debtor. Mr. Chapell further sought and obtained additional information about the nature and origin of the personally identifiable information contained in the assets that the Debtors wished to sell; reviewed relevant U.S. and foreign laws relating to the collection and use of personal data; and drafted the report for the Court containing information pertinent to the facts, circumstances and conditions of the proposed sale by the Debtors of the asset consisting of personally identifiable information. The Ombudsman also appeared at the hearing from June 30, 2009 to and including July 1, 2009, and on July 1, 2009, responded directly to the Court's inquiries.

## IV.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

16. The factors to be considered in awarding attorneys' fees as enumerated in *In re: First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been adopted by most courts.[1] The Ombudsman respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

(A) <u>The Time and Labor Required</u>. The Ombudsman was appointed on June 11, 2009, and had less than three (3) weeks to familiarize himself with the facts and circumstances of the case, and research the possible data protection law issues. The situation required a high degree of professional competence and expertise in order for the report to be completed in time for the hearing.

(B) <u>The Novelty and Difficulty of Questions</u>. The Debtor is a large organization, and obtaining the relevant information proved challenging given the limited time frame. Moreover, Debtor's business involves the transfer of consumer information to a myriad of independent dealerships, providers of financial services and others. Consequently, understanding the basic flows of consumer data into and outside of Debtor also proved to be challenging.

(C) <u>The Skill Requisite to Perform the Legal Services Properly</u>. In addition to his background of more than six (6) years in privacy, the Ombudsman is certified as an Information Privacy Professional by the International Association of Privacy Professionals ("IAPP").[2] Given the very brief time

---

[1] *In Re: Nine Assoc., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987). The Factors Embraced By The Fifth Circuit In *First Colonial* Were Adopted By The Fifth Circuit's Decision In *Johnson V. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), Except That *First Colonial* Also Included The "Spirit Of Economy" As A Factor, Which Was Expressly Rejected By Congress In Enacting Section 330 Of The Bankruptcy Code. *Stroock & Stroock & Lavan V. Hillsborough Holdings Corp. (In Re: Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997). The Remaining *First Colonial* Factors Continue To Apply To Determine The Reasonableness Of Fees Awarded Under The Bankruptcy Code. 3 COLLIER ON BANKRUPTCY ¶ 330.04(3)(C) (Lawrence P. King, *Et Al.*, Editors, 15th Ed. 1997). In Addition, A Majority Of The *First Colonial* Factors Are Now Codified In 11 U.S.C. § 330(A)(3). *Id.*
[2] Certification As An Information Privacy Professional Requires Passing An Exam That Covers The "Definitions, Concepts And Applications Of U.S. And International Privacy Laws And Information Management Practices As

period available in which to research and prepare a report, only someone with significant familiarity with privacy laws and data protection schemes would have been able to complete the report.

(D)  <u>The Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Because of the short time period in which the Ombudsman's report had to be prepared, Mr. Chapell had to focus solely on this matter to the exclusion of other employment.

(E)  <u>The Customary Fee</u>. The compensation sought herein is based upon Mr. Chapell's normal hourly rates for privacy consulting services.

(F)  <u>Whether the Fee Is Fixed or Contingent</u>. C&A charges customary hourly rates for the time expended by its members, and its fees are not outcome-dependent.

(G)  <u>Time Limitations Imposed by Client or Other Circumstances</u>. The Ombudsman had less than two weeks to obtain and review the documents, research and identify the relevant privacy policies for websites that were no longer operating, research and determine the relevant privacy and data protection laws, and prepare his report. This required him to work evenings and at night – including through the Memorial Day weekend.

(H)  <u>The Amount Involved and Results Obtained</u>. The United States Bankruptcy Court for the Southern District of New York approved the sale of Debtor's assets to New GM.

---

Well As The Privacy Implications Of Emerging Technologies. This Includes HIPAA, COPPA, GLBA, APEC Principles, OECD Guidelines, EU Directive, Employee Records Management, Workplace Monitoring, Contingency Planning, Incident Handling, … And Other Key Items." *See* Https://Www.Privacyassociation.Org/Index.Php?Option=Com_Content&Task=View&Id=36&Itemid=223. Once Certified, A Minimum Of Thirty (30) Credits Over A Three (3) Year Period Of Qualifying Continuing Privacy Education ("CPE") Training Are Required To Maintain Certification. *See* Https://Www.Privacyassociation.Org/Index.Php?Option=Com_Content&Task=View&Id=18&Itemid=88.

(I)    <u>The Experience, Reputation and Ability of the Professional</u>. As previously
noted, Mr. Chapell has more than six (6) years' experience in practicing
privacy, and is a Certified Information Privacy Professional. He serves as
New York City Chapter Chair for the IAPP, the largest association of
privacy professionals in the world, and the only credentialing authority for
privacy practitioners. He is recognized widely as a thought leader on issues
of privacy and interactive marketing, is a highly sought after speaker on
issues of privacy, and has published articles on subjects relating to privacy
and data protection law. Mr. Chapell's experience and expertise enabled him
to complete his report in time for the scheduled hearing.

(J)    <u>The "Undesirability" of the Case</u>. This appointment was not undesirable.

(K)    <u>Nature and Length of Professional Relationship</u>. The statute requires the
Consumer Privacy Ombudsman to be "a disinterested person"[3] to ensure an
objective and unbiased report be provided to the Court. The Ombudsman has
rendered and filed an objective, unbiased report with the Court.

## V. <u>ALLOWANCE OF COMPENSATION</u>

17.    The professional services rendered by the Ombudsman required a high degree of
professional competence and expertise to address, with skill and dispatch, the complex issues
that arose in these cases. The Ombudsman respectfully submits that the services rendered to the
Court were performed efficiently, effectively and economically.

18.    The allowance of compensation for the services rendered in bankruptcy cases by a
Consumer Privacy Ombudsman is expressly provided for in section 330(a)(1) of the Bankruptcy
Code.

---

[3] 11 U.S.C. § 332(A).

19. With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy

Code provides, in pertinent part, that the Court may award to a consumer privacy ombudsman,

"reasonable compensation for actual, necessary services rendered." Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)   the time spent on such services;
> (B)   the rates charged for such services;
> (C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
> (F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

20. The congressional policy expressed above provides for adequate compensation in

order to continue to attract qualified and competent professionals, including Consumer Privacy

Ombudsmen, to bankruptcy cases.[4]

21. The total time spent by the Ombudsman during the period of June 8, 2009 through

and including October 4, 2009, was 121.50 hours and has a fair market value of $72,900.00. Of

this time, 2.5 hours (with a fair market value of $1,500.00) were spent preparing this fee

---

[4] *In Re: Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress Rather Clearly Intended To Provide Sufficient Economic Incentive To Lure Competent Bankruptcy Specialists To Practice In The Bankruptcy Courts." [Citation And Internal Quotation Marks Omitted]); *In Re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' Objective On Requiring That The Market, Not The Court, Establish Attorneys' Rates Was To Ensure That Bankruptcy Cases Were Staffed By Appropriate Legal Specialists.")

application. As shown by this Application and supporting exhibits, the Ombudsman's services were rendered economically and without unnecessary duplication of efforts.

## VI.    EXPENSES

22.    The expenses incurred during this period and relating to these matters are in the nature of "nonreimbursable overhead," as defined in the Guidelines. Consequently, no reimbursement for expenses is sought.

## VII.    WAIVER OF MEMORANDUM OF LAW

23.    Based upon the supporting authorities contained herein, and because this Application presents no novel issues of law, the Ombudsman respectfully requests that the Court waive the requirement of Local Bankruptcy Rule 9013-1(b) of filing a separate memorandum of law in support of this Application.

## VIII.    NOTICE

24.    The Ombudsman has given notice of this Application to (a) counsel for the Debtors, and (b) the Office of the United States Trustee. The Ombudsman understands other parties in interest will receive notice separately.

## IX.    <u>CONCLUSION</u>

WHEREFORE, the Ombudsman respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit "G," (a) allowing Alan Chapell final compensation for professional services rendered as Consumer Privacy Ombudsman for the period June 8, 2009 through and including October 4, 2009 in the amount of $15,780.00 and (b) such other and further relief as is just.

Dated:  November 16, 2009
        New York, New York

/s/ *Alan Chapell*
Alan Chapell
Chapell & Associates, LLC
297 Driggs Avenue
Suite 3A
Brooklyn NY 11222
achapell@chapellassociates.com
Consumer Privacy Ombudsman

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| In re: | : |
| | :     **Case No. 09-50026 (REG)** |
| **GENERAL MOTORS CORP, et al.,** | : |
| | :     **(Jointly Administered)** |
| | : |
| Debtors. | :       **Chapter 11** |

-----------------------------------------------------------x

### NOTICE OF APPOINTMENT OF CONSUMER PRIVACY OMBUDSMAN

Diana G. Adams, the United States Trustee for Region 2 (the "United States Trustee"),

pursuant to the *Order Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed.R.Bankr.P. 2002,*

*6004 and 6006, (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale*

*and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored*

*Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date, (III) Establishing Assumption*

*and Assignment Procedures, and (IV) Fixing Notice Procedures and Approving Form of Notice*

(the "Bid Procedures Order," Docket No. 274, ¶ 13, at 13), hereby appoints Alan Chapell, CIPP,

as Consumer Privacy Ombudsman.  The offices of Mr. Chapell are at Chapell & Associates,

LLC, 297 Driggs Avenue, Suite 3A, Brooklyn, NY 11222.

//

//

//

The United States Trustee has delivered the Bid Procedures Order to Mr. Chapell, which

Bid Procedures Order sets forth the date and time of the hearing seeking approval of the sale

transaction contemplated by the Bid Procedures Order.  Bid Procedures Order, ¶ 7, at 6.

Dated: New York, New York　　　　　　Respectfully Submitted,
　　　　June 10, 2009

　　　　　　　　　　　　　　　　　　　DIANA G. ADAMS
　　　　　　　　　　　　　　　　　　　UNITED STATES TRUSTEE

　　　　　　　　　　　**By:**　　***/s/ Andrew D. Velez-Rivera***　　　
　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　33 Whitehall Street, 21st Floor
　　　　　　　　　　　　　　New York, New York 10004
　　　　　　　　　　　　　　Tel. No. (212) 510-0500
　　　　　　　　　　　　　　Fax No. (212) 268-2255

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                             :

In re                         :          Chapter 11 Case No.
                             :

MOTORS LIQUIDATION COMPANY, et al.,  :          09-50026 (REG)
     f/k/a General Motors Corp., et al.   :

                             :

          Debtors.             :          (Jointly Administered)
                             :
---------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES FOR PROFESSIONALS IN
RESPECT OF FINAL APPLICATION OF ALAN CHAPELL, CONSUMER PRIVACY
OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY
CODE FOR FINAL APPROVAL AND ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED DURING THE PERIOD FROM
JUNE 8, 2009 THROUGH AND INCLUDING OCTOBER 4, 2009**

Pursuant to the Guidelines for Fees and Disbursements for Professionals in Southern

District of New York Bankruptcy Cases, adopted by the Court on June 24, 1991, and amended

April 19, 1995 (together, the "Local Guidelines"), and the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. 330, adopted on January 30, 1996 (the "UST Guidelines"), and, together with the Local

Guidelines (the "Guidelines"), the undersigned, an attorney and Certified Information Privacy

Professional ("CIPP"), a member of the privacy consulting firm of Chapell & Associates, LLC

("C&A"), appointed the Consumer Privacy Ombudsman ("Ombudsman") in the matter of

General Motors Corp., *et al* debtors (the "Debtors") in the matter of the transfer of customer lists

to New GM ("New GM"), hereby certifies with respect to his final application for allowance of

compensation for services rendered dated October 4, 2009 (the "Application"), for the period of

June 8, 2009 through and including October 4, 2009 (the "Compensation Period") as follows:

1.  I am the professional designated in respect of compliance with the Guidelines.

2.  I make this certification in support of the Application for final compensation for the Compensation Period, in accordance with the Local Guidelines.

3.  In respect of section B.1 of the Local Guidelines, I certify that:

    a.   I have read the Application.

    b.  To the best of my knowledge, information and belief formed after reasonable inquiry, the fees sought fall within the Guidelines.

    c.  Except to the extent that fees or disbursements are prohibited by the Guidelines, the fees and disbursements sought are billed at rates in accordance with practices customarily employed by C&A and generally accepted by C&A's clients.

    d.  In providing reimbursable service, C&A does not make a profit on that service, whether the service is performed by C&A in-house or through a third-party.

4.  In respect of section B.2 of the Local Guidelines, I certify that the services for which compensation is sought were part of a discrete project that was started and completed in June of 2009 (with exceptions noted) and that the monthly statements described in section B.2 of the Local Guidelines are inapplicable to the instant Application.

5.  In respect of section B.3 of the Local Guidelines, I certify that copies of the Application are being provided to (a) the Office of the United States Trustee and (b) counsel for the Debtors.

Dated: New York, New York
       November 16, 2009

                                       /s/     *Alan Chapell*
                                        Alan Chapell

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                :

In re                             :             **Chapter 11 Case No.**
                                :

**MOTORS LIQUIDATION COMPANY,** *et al.,* :           **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*  :
                                :

                     **Debtors.**         :            **(Jointly Administered)**
                                :
-------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 331 ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

Upon the Motion, dated July 21, 2009 (the "**Motion**"),[1] of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**") and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the **Bankruptcy Rules**"), for entry of an order authorizing the establishment of certain procedures for interim compensation and reimbursement of professionals, all as more fully described in the Motion; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and upon the objection of the St. Regis Mohawk Tribe (the "**Tribe Objection**") and the State of New York on behalf of the New York State Department of Environmental Conservation (the "**State Objection,**" and together with the Tribe Objection, the "**Objections**") to the Motion; and upon the reply (the "**Reply**") of Debtors to the Objections; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and all of the proceedings had before the Court;

---

[1]      Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that, for the reasons set forth on the record of the Hearing, the Motion

is granted as provided herein; and it is further

ORDERED that the Objections are hereby overruled in their entirety; provided,

however, that the Debtors shall provide the St. Regis Mohawk Tribe (the "**Tribe**") and the New

York State Department of Environmental Conservation (the "**NYSDEC**") with the Monthly

Letter (as defined below); and it is further

ORDERED that except as may otherwise be provided in Court orders authorizing

the retention of specific professionals, all professionals in this case may seek interim

compensation in accordance with the following procedure:

(a)    Except as provided in paragraph (b) below, on or before the **30th day** of each month following the month for which compensation is sought, each professional seeking compensation will serve a monthly statement (the "**Monthly Statement**"), by hand or overnight delivery, on (i) the Debtors, Motors Liquidation Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Ted Stenger); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Joseph Smolinsky, Esq.); (iii) the attorneys for the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq. and Robert Schmidt, Esq.); and (iv) the Office of the United States Trustee, 33 Whitehall Street, 22nd Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.) (collectively, the "**Notice Parties**").

(b)    Each professional shall serve the Monthly Statement for the month of June 2009 on or before August 14, 2009.

(c)    The Monthly Statement shall not be filed with the Court and a courtesy copy need not be delivered to Chambers because this Motion is not intended to alter the fee application requirements outlined in sections 330

and 331 of the Bankruptcy Code.  Professionals are still required to serve and file interim and final applications for approval of fees and expenses in accordance with the relevant provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of New York.

(d)     Each Monthly Statement must contain a list of the individuals and their respective titles (e.g., attorney, paralegal, etc.) who provided services during the period covered by the Monthly Statement, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred (no professional should seek reimbursement of an expense that would otherwise not be allowed pursuant to the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 dated January 30, 1996), and contemporaneously maintained time entries for each individual in increments of **tenths (1/10) of an hour** or as close thereto as practicable.[2]

(e)     Except as provided for in paragraph (f) below, each Notice Party shall have at least **15 days** after receipt of a Monthly Statement to review it and, if such party has an objection to the compensation or reimbursement sought in a particular Monthly Statement (an "**Objection**"), such party shall, by no later than the **45th day** following the month for which compensation is sought (the "**Objection Deadline**"), serve upon the professional whose Monthly Statement is objected to, and the other persons designated to receive statements in paragraph (a) above, a written "Notice of Objection to Fee Statement," setting forth the nature of the Objection and the amount of fees or expenses at issue.

(f)     Each Notice Party shall have at least **15 days** after receipt of the Monthly Statement for June 2009 to review it and, if such party has an Objection, such party shall, by no later than the **60th day** following the end of the month of June 2009, serve upon the professional whose Monthly Statement is objected to, and the other persons designated to receive statements in paragraph (a) above, a written "Notice of Objection to Fee Statement," setting forth the nature of the Objection and the amount of fees or expenses at issue.

(g)     At the expiration of the Objection Deadline, the Debtors shall promptly pay **80%** of the fees and **100%** of the expenses identified in each Monthly Statement to which no Objection has been served in accordance with paragraphs (e) and (f) above.

---

[2]     The Debtors may seek to modify this requirement in the retention application of certain professionals.

(h)     If the Debtors receive an Objection to a particular Monthly Statement, they shall withhold payment of that portion of the Monthly Statement to which the Objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph (g) above.

(i)     If an Objection is resolved and if the party whose Monthly Statement was the subject of the Objection serves on all Notice Parties a statement indicating that the Objection has been withdrawn and describing in detail the terms of the resolution, then the Debtors shall promptly pay, in accordance with paragraph (g) above, that portion of the Monthly Statement that was withheld is no longer subject to the Objection.

(j)     All Objections that are not resolved by the parties shall be preserved and presented to the Court at the next interim or final fee application hearing to be heard by the Court in accordance with paragraph (l) below.

(k)     The service of an Objection in accordance with paragraph (f) above shall not prejudice the objecting party's right to object to any fee application made to the Court in accordance with the Bankruptcy Code on any ground, whether raised in the Objection or not.  Furthermore, the decision by any party not to object to a Monthly Statement shall not be a waiver of any kind or prejudice that party's right to object to any fee application subsequently made to the Court in accordance with the Bankruptcy Code.

(l)     Commencing with the period ending September 30, 2009, and at four-month intervals thereafter (the "**Interim Fee Period**"), each of the retained professionals as set forth in paragraphs 3 and 4 herein (the "**Retained Professionals**") shall file with the Court an application (an "**Interim Fee Application**") for interim Court approval and allowance, pursuant to sections 330 and 331 of the Bankruptcy Code (as the case may be) of the compensation and reimbursement of expenses requested in the Monthly Statements served during such Interim Fee Period.  Each Retained Professional shall file its Interim Fee Application no later than **45 days** after the end of the Interim Fee Period.

(m)     The Debtors' attorneys shall obtain a date from the Court for the hearing to consider Interim Fee Applications for all Retained Professionals (the "**Interim Fee Hearing**").  At least **30 days** prior to the Interim Fee Hearing, the Debtors' attorneys shall file a notice with the Court, with service upon the U.S. Trustee and all Retained Professionals, setting forth the time, date, and location of the Interim Fee Hearing, the period covered by the Interim Fee Applications, and the Objection Deadline.  Any Retained Professional unable to file its own Interim Fee Application with the Court shall deliver to the Debtors' attorneys a fully executed copy with original signatures, along with service copies, three business days before the filing deadline.  The Debtors' attorneys shall file and serve such Interim Fee Application.

(n)     Any Retained Professional who fails to timely file an Interim Fee Application seeking approval of compensation and expenses previously paid pursuant to a Monthly Statement shall be ineligible to receive further monthly payments of fees or reimbursement of expenses as provided herein until such Interim Fee Application is filed.

(o)     The pendency of an Interim Fee Application or a Court order that payment of compensation or reimbursement of expenses was improper as to a particular Monthly Statement shall not disqualify a Retained Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by the Court.

(p)     Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any Retained Professionals.

(q)     The attorneys for the Creditors' Committee may, in accordance with the foregoing procedure for monthly compensation and reimbursement of professionals, collect and submit statements of expenses, with supporting vouchers, from members of the Creditors' Committee; *provided*, *however*, that these reimbursement requests must comply with this Court's Administrative Orders dated June 24, 1991 and April 21, 1995; and it is further

(r)     On or before the **30th day** of each month following the month for which compensation is sought, the Debtors will transmit a letter (the "**Monthly Letter**") to (i) the attorneys for the Tribe, McNamee, Lochner, Titus & Williams, P.C., 677 Broadway, Albany, New York 12207 (Attn: John J. Privitera Esq. and Jacob F. Lamme, Esq.) and (ii) the attorneys for the State of New York on behalf of the NYSDEC, New York State Department of Law Environmental Protection Bureau, The Capitol, Albany, New York 12224 (Attn: Maureen F. Leary, Assistant Attorney General) setting forth the aggregate fees and aggregate expenses for the period covered by the Monthly Letter for all retained professionals submitting Monthly Fee Statements.  The Tribe and NYSDEC shall have no right to object to or otherwise challenge the Monthly Statements.  The Monthly Letter is being provided for informational purposes only.

ORDERED that the Debtors shall include all payments to Retained Professionals on their monthly operating reports, detailed so as to state the amount paid to each Retained Professional; provided however, that amounts paid to Ordinary Course Professionals may be stated in the aggregate on any monthly operating reports; and it is further

ORDERED that all time periods set forth in this Order shall be calculated in accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure; and it is further

ORDERED that any and all other and further notice of the relief requested in the Motion shall be, and hereby is, dispensed with and waived; _provided_, _however_, that the Debtors shall serve a copy of this Order on each of the Retained Professionals; and it is further

ORDERED that notice of hearings to consider Interim Fee Applications and final fee applications shall be limited to the Notice Parties and any party who files a notice of appearance and requests notice in these chapter 11 cases; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:  New York, New York
  _**August 7, 2009**_


  _**s/ Robert E. Gerber**_
  United States Bankruptcy Judge

# EXHIBIT D

Alan Chapell
CHAPELL & ASSOCIATES, LLC
297 Driggs Avenue
Suite 3a
Brooklyn NY 11222
Telephone (917) 318-8440

Privacy Ombudsman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

In re:                                                  :   Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,                     :   Case No.: 09-50026 (REG)

    f/k/a General Motors Corp., et al.                  :   (Jointly Administered)

    Debtors.                                            :

-------------------------------------------------------------------

**MONTHLY FEE STATEMENT OF ALAN CHAPELL, CONSUMER PRIVACY
OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY
CODE FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED DURING THE PERIOD FROM
<u>JUNE 8, 2009 THROUGH AND INCLUDING JUNE 30, 2009</u>**

| | |
|---|---|
| Name of Applicant: | <u>Alan Chapell</u> |
| Authorized to Provide Professional Services to: | United States Bankruptcy Court for the Southern District of New York |
| Date of Retention: | June 10, 2009 |
| Period for which compensation is sought: | June 8, 20009 – June 30, 2009 |
| Amount of Compensation requested: | 80% of $ 59,100.00 – or, $47,280.00 |
| Amount of Expense reimbursement requested: | $ 0.00 |

**MONTHLY FEE STATEMENT OF ALAN CHAPELL, CONSUMER PRIVACY OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY CODE FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED DURING THE PERIOD FROM <u>JUNE 8, 2009 THROUGH AND INCLUDING JUNE 30, 2009</u>**

| NAME | POSITION; EXPERIENCE | HOURLY RATE | TOTAL HOURS | TOTAL COMPENSATION |
|------|---------------------|-------------|-------------|--------------------|
| Alan Chapell | President, Chapell & Associates, LLC; admitted to practice in NY in 2002; certified as an Information Privacy Professional in 2005 | $600.00 | 98.50 | $59,100.00 |

Alan Chapell, Consumer Privacy Ombudsman ("<u>Ombudsman</u>"), appointed pursuant to Section 332 of the Bankruptcy Code, hereby submits his monthly statement (the "<u>Monthly Statement</u>") pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "<u>Interim Compensation Order</u>") for professional services rendered from June 8, 2009 through and including June 30, 2009 (the "<u>Compensation Period</u>"), and in support thereof, respectfully represents as follows:

## I. <u>INTRODUCTION</u>

1. <u>Bankruptcy Filing</u>.   On April 30, 2009 (the "<u>Petition Date</u>"), General Motors Corp., *et al* ("Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "<u>Bankruptcy Code</u>").

2. <u>Consumer Privacy Ombudsman</u>.  The Consumer Privacy Ombudsman was appointed by the United States Trustee on June 10, 2009, pursuant to the *Ex Parte Order Under 11 U.S.C. §§ 332 and 363(b)(1) Appointing Consumer Privacy Ombudsman*, entered June 10, 2009, (docket number 565). On July 1, 2009, the Ombudsman filed his Report, issued pursuant to 11 U.S.C. §332(b). The Ombudsman appeared at the hearing from June 30, 2009 to and including July 1, 2009, and on July 1, 2009, responded directly to the Court's inquiries as they related to

the facts, circumstances and conditions of the Debtors' proposed sale of "personally identifiable information," as defined under 11 U.S.C. § 363(b)(1)(B).

## II. <u>ALLOWANCE OF COMPENSATION</u>

17. A listing of time entries for the Ombudsman is attached hereto as **Exhibit "A."**

18. The professional services rendered by the Ombudsman required a high degree of professional competence and expertise to address, with skill and dispatch, the complex issues that arose in these cases. The Ombudsman respectfully submits that the services rendered to the Court were performed efficiently, effectively and economically.

19. The allowance of compensation for the services rendered in bankruptcy cases by a Consumer Privacy Ombudsman is expressly provided for in section 330(a)(1) of the Bankruptcy Code.

20. With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a consumer privacy ombudsman, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

21. The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals, including Consumer Privacy Ombudsmen, to bankruptcy cases.[1]

22. The total time spent by the Ombudsman during the period of June 8, 2009 through and including June 30, 2009, was 98.50 hours and has a fair market value of $51,110.00.

## III.  **EXPENSES**

23.   The expenses incurred during this period and relating to these matters are in the nature of "nonreimbursable overhead," as defined in the Guidelines. Consequently, no reimbursement for expenses is sought.

## IV.  **NOTICE**

24.   The Ombudsman has given notice of this Application to (a) the Debtors, (b) counsel for the Debtors, (c) the attorneys for the Creditors' Committee, and (d) the Office of the United States Trustee.

X

X

X

X

X

---

[1] *In Re: Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress Rather Clearly Intended To Provide Sufficient Economic Incentive To Lure Competent Bankruptcy Specialists To Practice In The Bankruptcy Courts." [Citation And Internal Quotation Marks Omitted]); *In Re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' Objective On Requiring That The Market, Not The Court, Establish Attorneys' Rates Was To Ensure That Bankruptcy Cases Were Staffed By Appropriate Legal Specialists.")

# V. <u>CONCLUSION</u>

WHEREFORE, the Ombudsman respectfully requests that Debtor's counsel process

payment to Alan Chapell for professional services rendered as Consumer Privacy Ombudsman

for the period June 8, 2009 through and including June 30, 2009 in the amount of 80% of

$59,100.00; or, $47,280.00.


Dated: August 11, 2009
New York, New York




/s/ *Alan Chapell*
Alan Chapell
Chapell & Associates, LLC
297 Driggs Avenue
Suite 3A
Brooklyn NY 11222
achapell@chapellassociates.com
Consumer Privacy Ombudsman

**TIME RECORDS**

**GM Consumer Privacy Ombudsmanship**

### ACTIVITY CODE CATEGORY: Case Administration

| Date | Project | Activity | Comments | Hours |
|---|---|---|---|---|
| 6/8/09 | Verified Declaration, initial information request | Reviewed initial Conflicts Document | | 1.40 |
| 6/9/09 | Verified | Drafted Declaration of Disinterest, forwarded to Andy Velez Rivera | | 1.50 |
| 6/10/09 | Verified Declaration | Updated Declaration of Disinterest and forwarded to Andy | Forwarded both formats to Andy Velez-Rivera | 0.50 |
| 6/10/09 | Verified Declaration | Finalized Declaration of Disinterest, call with Andy. | | 0.30 |
| 6/11/09 | Preliminaries | Initial Call with Harsh Pais and Ronit Berkovich from Weil, Gotshal & Manges | | 0.50 |
| 6/12/09 | Preliminaries | Craft initial set of questions (1.4) and send to Weil. (.10) | | 1.50 |
| 6/12/09 | Preliminaries | Review Master Sale Agreement | | 5.40 |
| 6/15/09 | Initial Questions | Received Answers back (via Harsh Pais @ Weil) of preliminary questions. Reviewd those docs | | 3.30 |
| 6/15/09 | GM Websites | Check archive.org for earlier versions of website privacy policies | | 1.80 |
| 6/16/09 | Review | Review list of Websites provided by Debtor in anticipation of Thursday's call to ensure consistency. | | 2.40 |
| 6/16/09 | | Email exchange with Karen Cordroy, Bankruptcy Counsel for NAAG | | 0.20 |
| 6/18/09 | Review | Call with GM's privacy team and counsel - and prep for call. | | 1.40 |
| 6/18/09 | Review | Received and reviewed form of sale order | | 2.30 |
| 6/18/09 | Research | Researching relevant state data breach notification laws, and telemarketing statutes. | | 5.50 |
| 6/19/09 | Review | Review Harlem Dealership docs, (1.1) review responses from Debtor's counsel. (.20) | | 1.30 |
| 6/20/09 | Report | Outlining / drafting report | | 1.70 |
| 6/23/09 | Review | Email exchange with Debtor, debtor's counsel re: security issues for Harlem dealership. | | 0.30 |
| 6/24/09 | Review | Craft additional email regarding security of data transfer via Harlmen Dealership and data transfer re: wind down dealerships, (.60) receive email from Debtor's counsel, (.10) respond to same via email. (.10) | | 0.80 |
| 6/24/09 | | Receive and read email from Karen Cordroy. | | 0.30 |
| 6/25/09 | Review | Call with GM's privacy team and counsel ((1.10) - and prep for call (.20) | Potential Issue's around data transfer and the "Wind Down Dealerships" | 1.30 |
| 6/25/09 | Review | Review docs delivered in response to questions about wind down dealerships (1.0), and think about potential work arounds pertaining to Debtor's confidentiality concerns. (.90) | | 1.90 |
| 6/26/09 | Review | Call with GM re: wind down dealerships. (1.20) Issue with confidentiality was addressed. Reviewed and executed confidentiality agreements (.50) | | 1.70 |
| 6/26/09 | Wind Down Dealerships | Begin reviewing policies for wind down dealerships | | 7.70 |
| 6/27/09 | Wind Down Dealerships | Continue Reviewing policies for wind down dealerships | | 12.30 |
| 6/27/09 | Report | Continue drafting report | | 3.70 |
| 6/28/09 | Rerpot | Continue Drafting report | | 6.20 |
| 6/28/09 | Wind Down Dealerships | Continue Reviewing policies for wind down dealerships | | 8.50 |
| 6/29/09 | Hearing | Hearing Prep | | 2.40 |
| 6/29/09 | Report | Compiled top line findings and sent to Debtor's attorney | | 0.70 |
| 6/29/09 | Report | Drafting Report | | 5.80 |
| 6/29/09 | Wind Down Dealerships | Continue review of wind down dealerships | | 7.40 |
| 6/30/09 | Report | Finalizing report | | 1.80 |
| 6/30/09 | Hearing | Attending the hearing | | 4.70 |
| | | | **Total Hours June** | 98.50 |

**Fees for June 2009**   $  59,100.00

**Hourly rate = $600/hr**

# EXHIBIT E

Alan Chapell
CHAPELL & ASSOCIATES, LLC
297 Driggs Avenue
Suite 3a
Brooklyn NY 11222
Telephone (917) 318-8440

Privacy Ombudsman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., et al. | (Jointly Administered) |
| Debtors. | |

-------------------------------------------------------------------

**MONTHLY FEE STATEMENT OF ALAN CHAPELL, CONSUMER PRIVACY
OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY
CODE FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED DURING THE PERIOD FROM
JULY 1, 2009 THROUGH AND INCLUDING JULY 6, 2009**

| | |
|---|---|
| Name of Applicant: | <u>Alan Chapell</u> |
| Authorized to Provide Professional Services to: | United States Bankruptcy Court for the Southern District of New York |
| Date of Retention: | June 10, 2009 |
| Period for which compensation is sought: | July 1, 2009 – July 6, 2009 |
| Amount of Compensation requested: | 80% of $12,300.00; or, $9,840.00 |
| Amount of Expense reimbursement requested: | $ 0.00 |

**MONTHLY FEE STATEMENT OF ALAN CHAPELL, CONSUMER PRIVACY
OMBUDSMAN, APPOINTED PURSUANT TO SECTION 332 OF THE BANKRUPTCY
CODE FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED DURING THE PERIOD FROM
<u>JULY 1, 2009 THROUGH AND INCLUDING JULY 6, 2009</u>**

| NAME | POSITION; EXPERIENCE | HOURLY RATE | TOTAL HOURS | TOTAL COMPENSATION |
|------|---------------------|-------------|-------------|---------------------|
| Alan Chapell | President, Chapell & Associates, LLC; admitted to practice in NY in 2002; certified as an Information Privacy Professional in 2005 | $600.00 | 20.50 | $12,300.00 |

Alan Chapell, Consumer Privacy Ombudsman ("<u>Ombudsman</u>"), appointed pursuant to

Section 332 of the Bankruptcy Code, hereby submits his monthly statement (the "<u>Monthly</u>

<u>Statement</u>") pursuant to the Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals (the "<u>Interim Compensation Order</u>") for

professional services rendered from July 1, 2009 through and including July 6, 2009 (the

"<u>Compensation Period</u>"), and in support thereof, respectfully represents as follows:

## I. <u>INTRODUCTION</u>

1.  <u>Bankruptcy Filing</u>.    On April 30, 2009 (the "<u>Petition Date</u>"), General Motors Corp.,

*et al* ("Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code,

11 U.S.C. §§ 101 *et seq*. (as amended, the "<u>Bankruptcy Code</u>").

2.  <u>Consumer Privacy Ombudsman</u>.  The Consumer Privacy Ombudsman was appointed

by the United States Trustee on June 10, 2009, pursuant to the *Ex Parte Order Under 11 U.S.C.*

*§§ 332 and 363(b)(1) Appointing Consumer Privacy Ombudsman*, entered June 10, 2009,

(docket number 565). On July 1, 2009, the Ombudsman filed his Report, issued pursuant to 11

U.S.C. §332(b). The Ombudsman appeared at the hearing from June 30, 2009 to and including

July 1, 2009, and on July 1, 2009, responded directly to the Court's inquiries as they related to

the facts, circumstances and conditions of the Debtors' proposed sale of "personally identifiable information," as defined under 11 U.S.C. § 363(b)(1)(B).

## II. ALLOWANCE OF COMPENSATION

17. A listing of time entries for the Ombudsman is attached hereto as **Exhibit "A."**

18. The professional services rendered by the Ombudsman required a high degree of professional competence and expertise to address, with skill and dispatch, the complex issues that arose in these cases. The Ombudsman respectfully submits that the services rendered to the Court were performed efficiently, effectively and economically.

19. The allowance of compensation for the services rendered in bankruptcy cases by a Consumer Privacy Ombudsman is expressly provided for in section 330(a)(1) of the Bankruptcy Code.

20. With respect to the level of compensation, section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a consumer privacy ombudsman, "reasonable compensation for actual, necessary services rendered." Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)  the time spent on such services;
> (B)  the rates charged for such services;
> (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
> (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

21. The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals, including Consumer Privacy Ombudsmen, to bankruptcy cases.[1]

22. The total time spent by the Ombudsman during the period of July 1, 2009 through and including July 6, 2009, was 20.50 hours and has a fair market value of $12,300.00.

## III.  **EXPENSES**

23.    The expenses incurred during this period and relating to these matters are in the nature of "nonreimbursable overhead," as defined in the Guidelines. Consequently, no reimbursement for expenses is sought.

## IV.  **NOTICE**

24.    The Ombudsman has given notice of this Application to (a) the Debtors, (b) counsel for the Debtors, (c) the attorneys for the Creditors' Committee, and (d) the Office of the United States Trustee.

X

X

X

X

X

---

[1] *In Re: Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress Rather Clearly Intended To Provide Sufficient Economic Incentive To Lure Competent Bankruptcy Specialists To Practice In The Bankruptcy Courts." [Citation And Internal Quotation Marks Omitted]); *In Re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' Objective On Requiring That The Market, Not The Court, Establish Attorneys' Rates Was To Ensure That Bankruptcy Cases Were Staffed By Appropriate Legal Specialists.")

# V. **CONCLUSION**

WHEREFORE, the Ombudsman respectfully requests that Debtor's counsel process

payment to Alan Chapell for professional services rendered as Consumer Privacy Ombudsman

for the period July 1, 2009 through and including July 6, 2009 in the amount of 80% of

$12,300.00; or, $9,840.00.


Dated: September 9, 2009
　　　　New York, New York




　　　　　　　　　　　　　　　　　　　　　　/s/ *Alan Chapell*　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　Alan Chapell
　　　　　　　　　　　　　　　　　　　　　　Chapell & Associates, LLC
　　　　　　　　　　　　　　　　　　　　　　297 Driggs Avenue
　　　　　　　　　　　　　　　　　　　　　　Suite 3A
　　　　　　　　　　　　　　　　　　　　　　Brooklyn NY 11222
　　　　　　　　　　　　　　　　　　　　　　achapell@chapellassociates.com
　　　　　　　　　　　　　　　　　　　　　　Consumer Privacy Ombudsman

**TIME RECORDS**

**GM Consumer Privacy Ombudsmanship**

| Date | Project | Activity | Comments | Hours |
|------|---------|----------|----------|-------|
| 7/1/09 | Hearing | Attending the Hearing - providing report to judge | | 3.30 |
| 7/2/09 | Wind Down Dealerships | Continue review of wind down dealerhips' privacy statements | | 4.70 |
| 7/5/09 | Wind Down Dealerships | Continue review of wind down dealerhips' privacy statements | | 5.20 |
| 7/6/09 | Wind Down Dealerships | Finalized review of wind down dealership privacy statements (7.2) and sent to debtors counsel (.1) | | 7.30 |

**Total Hours (not including fee app)** 20.50

**Fees not including fee app** $ 12,300.00

# EXHIBIT F

**TIME RECORDS**
**GM Consumer Privacy Ombudsmanship**

| Date | Project | Activity | Comments | Hours |
|---|---|---|---|---|
| 6/8/09 | Verified Declaration, initial information request | Reviewed initial Conflicts Document | | 1.40 |
| 6/9/09 | Verified | Drafted Declaration of Disinterest, forwarded to Andy Velez Rivera | | 1.50 |
| 6/10/09 | Verified Declaration | Updated Declaration of Disinterest and forwarded to Andy | Forwarded both formats to Andy Velez-Rivera | 0.50 |
| 6/10/09 | Verified Declaration | Finalized Declaration of Disinterest, call with Andy. | | 0.30 |
| 6/11/09 | Preliminaries | Initial Call with Harsh Pais and Ronit Berkovich from Weil, Gotshal & Manges | | 0.50 |
| 6/12/09 | Preliminaries | Craft initial set of questions (1.4) and send to Weil. (.10) | | 1.50 |
| 6/12/09 | Preliminaries | Review Master Sale Agreement | | 5.40 |
| 6/15/09 | Initial Questions | Received Answers back (via Harsh Pais @ Weil) of preliminary questions. Reviewd those docs | | 3.30 |
| 6/15/09 | GM Websites | Check archive.org for earlier versions of website privacy policies | | 1.80 |
| 6/16/09 | Revew | Review list of Websites provided by Debtor in anticipation of Thursday's call to ensure consistency. | | 2.40 |
| 6/16/09 | | Email exchange with Karen Cordroy, Bankruptcy Counsel for NAAG | | 0.20 |
| 6/18/09 | Review | Call with GM's privacy team and counsel - and prep for call. | | 1.40 |
| 6/18/09 | Review | Received and reviewed form of sale order | | 2.30 |
| 6/18/09 | Research | Researching relevant state data breach notification laws, and telemarketing statutes. | | 5.50 |
| 6/19/09 | Review | Review Harlem Dealership docs, (1.1) review responses from Debtor's counsel. (.20) | | 1.30 |
| 6/20/09 | Report | Outlining / drafting report | | 1.70 |
| 6/23/09 | Review | Email exchange with Debtor, debtor's counsel re: security issues for Harlem dealership. | | 0.30 |
| 6/24/09 | Review | Craft additional email regarding security of data transfer via Harlmen Dealership and data transfer re: wind down dealerships, (.60) receive email from Debtor's counsel, (.10) respond to same via email. (.10) | | 0.80 |
| 6/24/09 | | Receive and read email from Karen Cordroy. | | 0.30 |
| 6/25/09 | Review | Call with GM's privacy team and counsel ((1.10) - and prep for call (.20) | Potential Issue's around data transfer and the "Wind Down Dealerships" | 1.30 |
| 6/25/09 | Review | Review docs delivered in response to questions about wind down dealerships (1.0), and think about potential work arounds pertaining to Debtor's confidentiality concerns. (.90) | | 1.90 |
| 6/26/09 | Review | Call with GM re: wind down dealerships. (1.20)  Issue with confidentiality was addressed. Reviewed and executed confidentiality agreements (.50) | | 1.70 |
| 6/26/09 | Wind Down Dealerships | Begin reviewing policies for wind down dealerships | | 7.70 |
| 6/27/09 | Wind Down Dealerships | Continue Reviewing policies for wind down dealerships | | 12.30 |
| 6/27/09 | Report | Continue drafting report | | 3.70 |
| 6/28/09 | Rerpot | Continue Drafting report | | 6.20 |
| 6/28/09 | Wind Down Dealerships | Continue Reviewing policies for wind down dealerships | | 8.50 |
| 6/29/09 | Hearing | Hearing Prep | | 2.40 |
| 6/29/09 | Report | Compiled top line findings and sent to Debtor's attorney | | 0.70 |
| 6/29/09 | Report | Drafting Report | | 5.80 |
| 6/29/09 | Wind Down Dealerships | Continue review of wind down dealerhips | | 7.40 |
| 6/30/09 | Report | Finalizing report | | 1.80 |
| 6/30/09 | Hearing | Attending the hearing | | 4.70 |
| 7/1/09 | Hearing | Attending the Hearing - providing report to judge | | 3.30 |
| 7/2/09 | Wind Down Dealerships | Continue review of wind down dealerhips' privacy statements | | 4.70 |
| 7/5/09 | Wind Down Dealerships | Continue review of wind down dealerhips' privacy statements | | 5.20 |
| 7/6/09 | Wind Down Dealerships | Finalized review of wind down dealership privacy statements (7.2) and sent to debtors counsel (.1) | | 7.30 |
| | | | **Total Hours June & July** | 119.00 |

**Hourly rate = $600/hr**                    **Fees for June & July 2009**  $  71,400.00

# EXHIBIT G

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                              :
In re                                         :       **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY, et al.,**       :       **09-50026 (REG)**
      **f/k/a General Motors Corp., et al.**  :
                                              :
            **Debtors.**                      :       **(Jointly Administered)**
                                              :
-------------------------------------------------------------------x


**ORDER, UNDER 11 U.S.C. §§330, GRANTING THE FINAL APPLICATION OF ALAN
CHAPELL, CONSUMER PRIVACY OMBUDSMAN, APPOINTED PURSUANT TO
SECTION 332 OF THE BANKRUPTCY CODE, ALLOWING FINAL COMPENSATION
FOR SERVICES RENDERED DURING THE PERIOD FROM <u>JUNE 8, 2009 THROUGH
AND INCLUDING OCTOBER 4, 2009</u>**


        Alan Chapell, Esq., Consumer Privacy Ombudsman appointed pursuant to section

332 of the Bankruptcy Code in the above-captioned cases, having applied on November 16, 2009

(the "<u>Application</u>")[5] for entry of an order (a) allowing final compensation for professional

services rendered Alan Chapell in the above-captioned cases, during the period from June 8,

2009 through and including October 4, 2009 (the "<u>Compensation Period</u>"), in the amount of

$72,900.00; and (b) authorizing and directing the Debtors to pay Alan Chapell the outstanding

$15,780.00 for services rendered during the Compensation Period; the Court having reviewed the

Application and having heard the statements of counsel in support of the relief requested in the

Application at a hearing before the Court (the "<u>Hearing</u>"); the Court finding that (i) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding

---

[5]      Unless otherwise defined herein, all capitalized terms have the meanings given to them in the Application.

pursuant to 28 U.S.C. § 157(b)(2); (iii) notice of the Application and the Hearing was sufficient

under the circumstances; (iv) the compensation requested in the Application is reasonable and

for actual and necessary services rendered by Alan Chapell during the Compensation Period; (v)

the Application fully complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules

for the United States Bankruptcy Court of the Southern District of New York, the Interim

Compensation Order, the Local Guidelines and the United States Trustee Guidelines; and (vi)

cause exists for the granting of the relief requested in the Application, it is hereby

ORDERED, that the Application be, and hereby is, granted as set forth herein; and it

is further

ORDERED that Alan Chapell is awarded, on a final basis, compensation for

professional services rendered during the Compensation Period in the total amount of

$72,900.00; and it is further

ORDERED that the Debtors are hereby authorized and directed to pay promptly to

Alan Chapell the remaining $15,780.00, to the extent such amount has not previously been paid.

Dated:     New York, New York
           _____, 2009


                                             _____
                                             Robert E. Gerber
                                             United States Bankruptcy Judge

2