1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


MOTORS LIQUIDATION COMPANY, et al.,

f/k/a General Motors Corp., et al.,


       Debtors.


- - - - - - - - - - - - - - - - - - - - -x


        U.S. Bankruptcy Court

        One Bowling Green

        New York, New York


        November 12, 2009

        2:02 PM


B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

Hearing re:   Debtors Motion Pursuant to Sections 363(b) and 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a) for Approval of Settlement Agreement with Certain Labor Unions

Hearing re:   Motion for Relief from Stay filed by Nancy Grim on behalf of Richard & Jeanette Turk

Hearing re:   Motion for Relief from Stay re: Brooke Alexis Love

Transcribed By:   Hana Copperman

```
                                                              3
 1
 2    A P P E A R A N C E S :
 3    WEIL, GOTSHAL & MANGES LLP
 4         Attorneys for Debtors
 5         767 Fifth Avenue
 6         New York, NY 10153
 7
 8    BY:  STEPHEN KAROTKIN, ESQ.
 9         EVAN S. LEDERMAN, ESQ.
10
11
12    KRAMER LEVIN NAFTALIS & FRANKEL LLP
13         Attorneys for Official Unsecured Creditors Committee
14         1177 Avenue of the Americas
15         New York, NY 10036
16
17    BY:  AMY D. CATON, ESQ.
18         JENNIFER SHARRET, ESQ.
19
20
21
22
23
24
25
```

```
                                                              4
 1
 2        LEVY RATNER, P.C.
 3             Attorneys for USW
 4             80 8th Avenue
 5             8th Floor
 6             New York, NY 10011
 7
 8        BY:    SUZANNE HEPNER, ESQ.
 9
10
11        UNITED STEELWORKERS OF AMERICA
12             Five Gateway Center
13             Pittsburgh, PA 15222
14
15        BY:    DAVID JURY, ESQ.
16
17
18        UNITED STATES DEPARTMENT OF JUSTICE
19             U.S. Attorney's Office
20             86 Chambers Street
21             New York, NY 10007
22
23        BY:    JOSEPH N. CORDARO, AUSA
24
25
```

5

THE LAW OFFICES OF GARY RAND AND SUZANNE E. RAND-LEWIS PLC

    Attorneys for Brooke Alexis Love

    5900 Sepulveda Boulevard

    Suite #330

    Van Nuys, CA 91411


BY:   SUZANNE E. RAND-LEWIS, ESQ.

    (TELEPHONICALLY)

    GARY RAND, ESQ.

    (TELEPHONICALLY)


KENNEDY JENNIK AND MURRAY PC

    Attorneys for of IUE-CWA

    113 University Place

    New York, NY 10003


BY:   THOMAS M. KENNEDY, ESQ.

6

P R O C E E D I N G S

THE COURT: Good afternoon. General Motors, Motors Liquidation Company. Mr. Lederman?

MR. LEDERMAN: Thank you, Your Honor. Good afternoon. Evan Lederman, Weil, Gotshal & Manges, for Motors Liquidation Company. Your Honor, we have a light agenda today. We have three items before Your Honor. Two are contested and one is uncontested. The first matter is a motion to approve a settlement with certain labor unions. The second is a lift stay motion brought on behalf of Ms. Love, and the third is a lift stay motion brought on behalf of Ms. Turk. If it pleases the Court I'd like to present the uncontested matter, to which the debtors and the movant have reached a stipulation, and then I'll turn over the podium to Mr. Karotkin who will handle the other two matters.

THE COURT: Sure. Go ahead.

MR. LEDERMAN: With respect to the lift stay motion filed on behalf of Ms. Turk the debtors have reached an agreement, which has been papered in the form of a stipulation that we will present to the Court following the hearing, in which the debtors have agreed to lift the automatic stay. In this action, it's a state court action brought in Ohio for breach of an express warranty issued by GM, the movants are seeking to lift the automatic stay so that they can actually dismiss the debtors, dismiss MLC from the state court action,

7

1   and, instead, proceed against New GM.  As Your Honor is aware,
2   under the 363 transaction New GM assumed all express warranties
3   and claims that are brought thereunder.  However, the Court in
4   Ohio will not allow the action to proceed forward unless there
5   is a formal order from this Court lifting the automatic stay.
6   So for those express purposes we've agreed to lift the stay.
7           THE COURT:  That's fine.
8           MR. LEDERMAN:  Thank you, Your Honor.  That's all I
9   have.  I'll now turn the podium over to Mr. Karotkin.
10          THE COURT:  Okay.  Mr. Karotkin?
11          MR. KAROTKIN:  Good afternoon, Your Honor.  Stephen
12  Karotkin, Weil, Gotshal & Manges, for Motors Liquidation
13  Company and its affiliated debtors.  If Your Honor please,
14  would you like to do the Love motion first?
15          THE COURT:  I understand that counsel for Ms. Love is
16  on the phone.  Am I correct?
17          MS. RAND-LEWIS:  That's correct, Your Honor.  Suzanne
18  Rand-Lewis representing Ms. Love and --
19          THE COURT:  Okay, Ms. Rand-Lewis.
20          MS. RAND-LEWIS:  -- her guardian ad litem in the
21  virtual interaction.  I also have the proffer present, and we
22  did receive a call from Brianna Benfield, who I understand is
23  from the firm, represented by counsel, who's also president,
24  indicating that we'd reached a stipulation.
25          THE COURT:  Okay.  Now, somehow I thought this was in

1  the contested category, Mr. Karotkin.  But it sounds to me like
2  you have an understanding.
3          MR. KAROTKIN:  Yes, Your Honor, I believe we do.  I
4  notified your chambers this morning that we are prepared to
5  enter into a stipulation with counsel to modify the automatic
6  stay to the extent that there is available insurance.
7  Originally, Your Honor, it was our understanding there was not
8  insurance, that this was totally self-insured.  After a lot of
9  digging, a lot of investigation, speaking with New GM, we
10 determined late yesterday that there is insurance with respect
11 to this particular claim, and we are prepared to enter into,
12 with counsel, the traditional type of stipulation which would
13 modify the automatic stay to permit them to proceed to the
14 extent there is insurance coverage and limit the recovery to
15 that.  We apologize that it took so long to get there, but we
16 did get there, and, as I said, it did require a fair amount of
17 investigation, and to the extent that counsel was
18 inconvenienced by that we do apologize.
19         THE COURT:  Okay.  Ms. Rand-Lewis, you wish to be
20 heard?
21         MS. RAND-LEWIS:  Thank you.  My position, Your Honor,
22 is this stipulation that's represented by counsel on the record
23 verbally is sufficient, so we've submitted an order correcting
24 the motion.  The order could be modified by the Court, simply
25 eliminating the sanctions requested in number 5 and the order

9

1   should issue forthwith.
2        THE COURT: Well, you got very technical in what you
3   said, and you can work with the debtor in coming up with a
4   mutually agreeable stip or consent order. If it provides for
5   your lawsuit to proceed with you going against the insurance
6   policy alone that is, as Mr. Karotkin said, a very traditional
7   way of resolving these in this Court and is perfectly fine with
8   me.
9        So why don't you folks paper that, and then I think
10  everybody's needs and concerns will be addressed.
11       MS. RAND-LEWIS: Your Honor, we submitted a
12  stipulation months ago to counsel with those written in. We
13  did a written stipulation, and the stipulation is essentially
14  in exactly the same terms as the submitted order.
15       THE COURT: Well, forgive me for interrupting you, Ms.
16  Rand-Lewis. With the kinds of things that I have on my plate I
17  can't get into the details to the extent of focusing on
18  documents of that character, especially those that may have
19  been submitted days or weeks ago. So --
20       MS. RAND-LEWIS: Our --
21       THE COURT: -- forgive me, please.
22       MS. RAND-LEWIS: We --
23       THE COURT: Work out an order with the debtors. Get
24  both sides to sign it, and I will so order it.
25       MS. RAND-LEWIS: I --

10

1    THE COURT: You're getting what you're looking for.
2    Is there some reason why I'm having difficulty here?
3    MS. RAND-LEWIS: Not at all, Your Honor. I just
4    wanted to clarify what I was saying. We didn't submit the
5    stipulation to the Court weeks ago. We submitted it to counsel
6    weeks ago. It wasn't implying the Court this happened,
7    stipulation from --
8    THE COURT: Okay.
9    MS. RAND-LEWIS: And that you should have reviewed it.
10    THE COURT: Mr. Karotkin, detail an associate to get
11    this thing done.
12    MR. KAROTKIN: Yes, sir. We will do it right away.
13    THE COURT: Thank you.
14    MS. RAND-LEWIS: Can we get the respective, sort of,
15    return date or date that the matter should be ordered to be
16    completed?
17    THE COURT: Ms. Rand-Lewis, I have rarely, in the nine
18    years and change that I've been a judge or nearly forty years
19    that I've been doing this, that I've had to order parties in my
20    Court to do stuff like that. Unless you have a trial date in
21    the next week I am not of a mind to start now. Mr. Karotkin,
22    get it done as quickly as you can. That's a request, not an
23    order.
24    MR. KAROTKIN: Yes, sir. We will.
25    MS. RAND-LEWIS: Thank you, Your Honor.

11

1   THE COURT: All right. Have a good day.

2   MS. RAND-LEWIS: Good-bye.

3   THE COURT: Ms. Rand-Lewis, you can leave if you wish. Okay. Go ahead, Mr. Karotkin.

5   MR. KAROTKIN: Your Honor, the next item on the calendar is the motion to approve a settlement with certain labor unions. We noticed this settlement, I believe, as indicated in our papers, to approximately 60,000 of the union retirees who would be affected by this settlement, and we have received one responsive pleading from the IUE which, of course, supports it, since they're a party to the settlement agreement, and we received two letters. I don't know if Your Honor received those letters or not.

14  THE COURT: I think I did.

15  MR. KAROTKIN: They are in the binder, and I really don't know how to address the letters other than these people are just not happy with the settlement. And we understand their unhappiness. However, we don't believe that whatever they have said rises to the level of any basis to deny the relief we're seeking today.

21  I will point out, Your Honor, that the settlement agreement with the IUE and the USW did provide that other, what we call splinter labor unions, could elect to sign on and participate in the unsecured claim, and if Your Honor has the settlement agreement which is annexed to the motion on page 6

1  there is a list of those other splinter unions.  And I'm
2  pleased to say that five of the eight splinter unions listed on
3  that page -- if you'd like I can bring it up.
4          THE COURT:  No, I have it.  I guess I was scratching
5  my head.  That means that three of them still aren't availing
6  themselves of this?
7          MR. KAROTKIN:  That is correct.
8          THE COURT:  Okay.
9          MR. KAROTKIN:  Three representing about four and a
10 half percent of the entire splinter union population.  Round
11 figures.  So we do have about ninety-five percent who have
12 signed up.  And I will say, Your Honor, that what's called the
13 IAM, which is the first --
14         THE COURT:  The machinists?
15         MR. KAROTKIN:  Yes.  It's the first one on page 6.
16 They, back in July, signed a settlement agreement with the
17 debtors resolving their health benefits for the retirees, and
18 you entered an order approving that.  That was done in
19 connection with the closing of the sale.  So they don't have
20 any -- there is no ongoing 1114 issue with these folks who are
21 in the IAM or represented by the IAM.
22         The IAM, along with a couple of others who had also
23 signed similar settlement agreements back in July, were offered
24 the opportunity to participate in this settlement and
25 participate in the claim.  For reasons that we don't understand

1    the IAM elected not to do that.  However, the IAM has told me
2    yesterday that they somehow would like to participate in the
3    claim.  And we're still discussing that.
4         THE COURT:  So the train hasn't left the station in
5    terms of them being able to climb on this?
6         MR. KAROTKIN:  The train has not totally left the
7    station.  It is still possible for these other folks to sign on
8    and participate in the claim.  And the way the proposed order
9    is drafted it would permit that to happen.  The order also does
10   provide, and it's different from what we submitted, after
11   discussions with counsel for the USW and some of the other
12   folks here today, the order does provide that if the others do
13   not sign on by what is called the initial distribution date
14   under a plan in the MLC Chapter 11 case then the un-allocable
15   portion of the billion dollar unsecured claim, which would be
16   attributable to those who didn't sign on, would be reallocated
17   to those who did sign on.
18        So at the end of the day there would be a total of a
19   billion dollar unsecured claim allowed whether or not these
20   three other unions sign on.  But, again, it's four and a half
21   percent.
22        THE COURT:  So, it being four and a half percent, it
23   won't have a huge dilutive effect upon those who are already
24   with the program.
25        MR. KAROTKIN:  Correct.

14

1  THE COURT: But it would enable them to share --

2  MR. KAROTKIN: Correct.

3  THE COURT: -- if they were to sign up for it.

4  MR. KAROTKIN: Yes, sir. Yes.

5  THE COURT: I understand.

6  MR. KAROTKIN: And, as I understand it, counsel for

7  those people who have signed on, we circulated the proposed

8  order to them over the last couple of days and everyone is on

9  board.

10  THE COURT: Okay. At this point, Mr. Karotkin, I'd

11  like to give Mr. Kennedy or any of the other folks representing

12  union workers the chance to be heard, if you wish. You don't

13  have to be, Mr. Kennedy, but if you'd like to I'll certainly

14  hear what you have to say.

15  MR. KENNEDY: Just, Your Honor, we submitted a

16  statement in support of the settlement. It represents a

17  difficult balancing of a lot of different issues, and a lot of

18  people contributed, and we appreciate the participation by

19  everyone. We did have to deal with that issue about the four

20  and a half percent, and once we secured the recognition that it

21  would be ratably redistributed in the event that there is no

22  participation by the other unions so that the full billion

23  dollars is available for those post-65 employees who do

24  participate in the settlement we're comfortable with the order

25  as drafted.

15

1    MR. KAROTKIN:  If I could just mention something, Your
2    Honor?
3    THE COURT:  You bet.  Go ahead.
4    MR. KAROTKIN:  The billion dollars is not a
5    distribution of a billion dollars, just so --
6    MR. KENNEDY:  No, we -- it's a claim.  We understand.
7    THE COURT:  It's an allowed claim in that amount.
8    Yes.
9    MR. KAROTKIN:  It's an allowed claim.
10   MR. KENNEDY:  Yes.  We --
11   MR. KAROTKIN:  Yes.  Allowed prepetition unsecured
12   claim.
13   THE COURT:  I understand that.  I understand.
14   MR. KAROTKIN:  Okay.
15   THE COURT:  Mr. Kennedy, anything further?
16   MR. KENNEDY:  No, Your Honor.
17   THE COURT:  Any of the other counsel wish to be heard?
18   MR. JURY:  Your Honor, David Jury, Associate General
19   Counsel, United Steelworkers.  For the very same reasons that
20   Mr. Kennedy set forth in his statement on behalf of the IUE the
21   Steelworkers urges this Court to approve this settlement, which
22   is the product of many months of difficult negotiations.  Thank
23   you.
24   THE COURT:  Okay.  Fair enough.  Anyone else?
25   MS. CATON:  Your Honor, Amy Caton from Kramer Levin on

1  behalf of the creditors' committee.  In case there is any doubt
2  in your mind, the committee clearly supports the settlement and
3  we ask for its approval
4          THE COURT:  Very good.  I'm not going to make lengthy
5  findings, but I just want to make a couple.  One of the most,
6  not necessarily analytically difficult but painful issues I
7  dealt with were those articulated by the IUE and by Mr.
8  Kennedy, on his own union's behalf and on behalf of the other
9  unions similarly situated.  And I guess I'm speaking mainly to
10 the few folks who are union members who objected, because their
11 contention was, in essence, the mirror image of those that we
12 bankruptcy judges normally see.  Their implication was that
13 this was too good for the estate, whereas most people who
14 object to settlements are contending that it isn't good enough
15 for the estate.
16         I read all of those affidavits by employees before the
17 363 hearing, and I well understood what folks in the unions are
18 going through.  By the same token, as a matter of law I
19 couldn't then honor or uphold the union's objection.
20         Under those circumstances I not only find this
21 settlement reasonable in the best interests of the estate, but
22 to the extent it's an issue that I'm allowed to consider I also
23 consider it totally reasonable on behalf of the unions.  From a
24 position where they didn't have as strong a legal position as
25 union members might have had, they, nevertheless, got what I

17

1   think was as good a deal as could be hoped for under the
2   circumstances.  And this is a very easy settlement for me to
3   approve from both sides.  And for that reason I do.
4           So, Mr. Karotkin, I'll ask you to have one of your
5   folks present an order approving the settlement.  Has it
6   already been vetted with the unions and so forth?
7           MR. KAROTKIN:  Yes, sir.  I believe everybody has
8   signed off on the form of proposed order, and we do have it
9   with us today and we can just give it to your office.
10          THE COURT:  And it will be entered today or tomorrow.
11          MR. KAROTKIN:  Very well.  Thank you, sir.
12          THE COURT:  Thank you.  To what extent do we have
13  other business?
14          MR. KAROTKIN:  We do not.
15          THE COURT:  Okay.  Thank you very much, folks.
16          MR. KAROTKIN:  Thank you, sir.
17          THE COURT:  Have a good day.
18          (Proceedings concluded at 2:18 PM)

```
                                                               18
 1
 2                           I N D E X
 3
 4                           RULINGS
 5                      Page      Line
 6    Granting of Motion to    7         7
 7    Lift the Automatic Stay
 8    of Ms. Turk
 9
10    Granting of Motion to   17         3
11    Approve a Settlement
12    with Certain Labor Unions
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                  19

 1
 2                      C E R T I F I C A T I O N
 3
 4    I, Hana Copperman, certify that the foregoing transcript is a
 5    true and accurate record of the proceedings.
 6
 7    _____
 8    HANA COPPERMAN
 9    AAERT Certified Electronic Transcriber (CET**D-487)
10
11    Veritext
12    200 Old Country Road
13    Suite 580
14    Mineola, NY 11501
15
16    Date: November 15, 2009
17
18
19
20
21
22
23
24
25
```