Hearing Date and Time:  January 20, 2010 at 9:45 a.m. (Eastern Time)
Objection Deadline:  January 15, 2010 at 4:00 p.m. (Eastern Time)

Thomas R. Slome, Esq.
Jil Mazer-Marino, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706


        and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone:  (804) 749-8861
Facsimile:  (804) 749-8862

*Co-Counsel for Shreveport Red River Utilities, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No. 09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.*, | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x


**MOTION OF SHREVEPORT RED RIVER UTILITIES, LLC FOR ALLOWANCE AND
PAYMENT OF POST-PETITION CLAIM AND MOTION TO ENFORCE ADEQUATE
ASSURANCE OF PAYMENT AGREEMENT PURSUANT TO 11 U.S.C. § 366(c)**

**TABLE OF CONTENTS**

**Page**

1.    Introduction …………………………………………………………….. 3

2.    Facts …………………………………………………………………. 4

3.    Procedural Facts…………………………………………………........ 4

4.    Facts Concerning the Settlement Agreement……………………….……8

5.    Joint Venture Utilities……………………………………………………...10

6.    Facts Concerning the SRRU Agreement………………………………...11

7.    Facts Concerning the Invoices..…………………………………………12

8.    Discussion…………………………………………………………..15

   A.  THE COURT SHOULD ENTER AN ORDER TO COMPEL THE
       DEBTORS' IMMEDIATE PAYMENT OF THE INVOICES ………..….…15

**TO THE HONORABLE JUDGE ROBERT GERBER,**
**UNITED STATES BANKRUPTCY JUDGE:**

Shreveport Red River Utilities, LLC ("**SRRU**"), by counsel, hereby files this *Motion For*

*Allowance And Payment Of A Post-Petition Claim  And Motion To Enforce Adequate Assurance*

*Of Payment Agreement Pursuant To 11 U.S.C. § 366(c)* (the "**Motion**"), and sets forth the

following:

### Introduction

On November 15, 2000, SRRU and General Motors Corporation entered into an

agreement for the provision of utility services more formally identified as the *Utility Services*

*Agreement Between Shreveport Red River Utilities, LLC And General Motors Corporation -*

*Worldwide Facilities Group, GMTG – Shreveport* (the "**SRRU Agreement**").  Under the SRRU

Agreement, SRRU provided pre-petition and post-petition utility goods and/or services, as further

defined under the SRRU Agreement, to the vehicle assembly facility located in Shreveport,

Louisiana (the "**Shreveport Facility**").[1]  Despite the Debtors' repeated representations to the

contrary as: (a) evidenced by certain pleadings filed with this Court; (b) conveyed to counsel for

SRRU during numerous telephone conversations and e-mail correspondence; and, (c) confirmed

by the Parties' settlement agreement concerning the Debtors' provision of adequate assurance to

SRRU, two (2) invoices issued by SRRU in accordance with the billing schedule of the SRRU

---

[1] On July 5, 2009, the Court entered the *Order (I) Authorizing Sale Of Assets Pursuant Amended And Restated Master Sale And Purchase Agreement With NGMCO, Inc., A U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale; And (III) Granting Related Relief* (the "**Sale Order**").  Following the entry of the Sale Order, NGMCO, Inc. has continued to receive the utility goods and/or services required under the SRRU Agreement at the Shreveport Facility.

Agreement remain unpaid (the "**Invoices**").[2]  Accordingly and based upon the foregoing and for

the reasons further set forth herein, SRRU files this Motion seeking entry of an order from the

Court to compel the Debtors' immediate payment of the Invoices.

**Facts**

**Procedural Facts**

1.      On June 1, 2009 (the "**Petition Date**"), General Motors Corporation and certain

of its subsidiaries (the "**Debtors**") commenced their cases (the "**Bankruptcy Cases**") that are

now pending in this Court by filing voluntary petitions for relief under Chapter 11 of Title 11 of

the United States Code, 11 U.S.C §§ 101 *et seq*. (the "**Bankruptcy Code**").

2.      On the Petition Date, Debtors filed the *Motion Of Debtors For Entry Of Order*

*Pursuant To 11 U.S.C. §§ 105, 363, And 364 Authorizing Debtors To (I) Pay Prepetition Claims*

*Of Certain Essential Suppliers, Vendors And Service Providers; (II) Continue Troubled Supplier*

*Assistance Program; And (III) Continue Participation In The United States Treasury Auto*

*Supplier Support Program* (the "**Critical Vendors Motion**") [Docket No. 76].  Under the

Critical Vendor Motion, the Debtors sought entry of an order from the Court authorizing, but not

directing, the Debtors to pay prepetition claims of certain critical vendors whose supplies, goods

and/or services are essential to the Debtors' operations and for maintaining the going concern

value of the Debtors' business enterprise.  Critical Vendors Motion at ¶ 30.  Debtors further

stated: (a) that the [Critical] Vendors are the only source for a particular part, supply, or service,

or obtaining a replacement source would entail substantial delay or significantly increased costs;

---

[2] The two unpaid invoices are for prepetition and postpetition utility goods and/or services provided to the Debtors at the Shreveport Facility during May 2009 and June 2009.  A true and correct copy of the May 2009 Invoice is attached hereto as **Exhibit A** (the "**May Invoice**"), and a true and correct copy of the June 2009 Invoice is attached hereto as **Exhibit B** (the "**June Invoice**").  The May Invoice contains exclusively prepetition charges of the Debtors at the Shreveport Facility, and the June Invoice contains prepetition and postpetition charges.

4

(b) that many of the [Critical] Vendors will not be able to sustain their own operations unless their

outstanding prepetition obligations are paid; and, (c) that the failure of the [Critical] Vendors

would result in the Debtors losing the ability to obtain parts and supplies in a manner necessary to

operate their facilities or to effectuate the proposed 363 Transaction in an orderly and efficient

manner. *See id*.

       3.      Also on the Petition Date, Debtors filed the *Motion Of Debtors For Entry Of*

*Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of*

*Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By*

*Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing*

*Service* (the "**Utility Motion**") [Docket No. 58].  Under the Utility Motion, the Debtors made the

following representations:

    A.    To the best of the Debtors' knowledge, there are few, if any,
defaults or arrearages of any significance with respect to the
Debtors' undisputed invoices for prepetition Utility Services, other
than payment interruptions that may be caused by the
commencement of these chapter 11 cases. Utility Motion at ¶ 31.

    B.    [T]he uninterrupted supply of Utility Services [is] critical to the
operations of the Debtors' businesses. Utility Motion at ¶ 33.

    C.    The Debtors intend to pay all postpetition obligations owed to the
Utility Companies in a timely manner and anticipate sufficient funds
available to permit them to do so. Utility Motion at ¶ 34.

    D.    [T]he Debtors propose to provide adequate assurance of payment
to each Utility Company, pursuant to section 366 of the Bankruptcy
Code, in the form of a cash deposit. The Debtors propose to
provide a deposit to any requesting Utility Company no more than
seven (7) business days after the receipt of such request, which
deposit will be equal to two (2) weeks of Utility Services,

calculated based on the historical average over the past 12 months (the "**Adequate Assurance Deposit**").  Utility Motion at ¶ 35.[3]

E.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitute adequate assurance to the Utility Companies as contemplated by section 366 of the Bankruptcy Code.  Utility Motion at ¶ 37.

4.    On the Petition Date, the Court held a First-Day Hearing on the Critical Vendors Motion and on the Utility Motion and thereafter entered the *Interim Order Pursuant To 11 U.S.C. §§ 105, 363, And 364 Authorizing Debtors To (I) Pay Prepetition Claims Of Certain Essential Suppliers, Vendors, And Service Providers, (II) Continue Troubled Supplier Assistance Program, And (III) Continue Participation In The United States Treasury Auto Supplier Support Program* (the "**Interim Critical Vendors Order**") and the *Order Pursuant To 11 U.S.C. §§ 105(a) And 366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II) Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service* (the "**Interim Utility Order**") [Docket Nos. 175 & 173, respectively].[4]

5.    In the Interim Critical Vendors Order, the Court, *inter alia*, authorized, but not directed, the Debtors to pay all or a portion of the Critical Vendors' prepetition claims.

---

[3] In the Utility Motion, the Debtors limited their offer to provide the Adequate Assurance Deposit upon the following conditions: (a) [a request for the Adequate Assurance Deposit must be] made in accordance with the procedures set forth [in the Utility Motion]; (b) the requesting Utility Company does not already hold a deposit equal to or greater than two (2) weeks of Utility Services; and (c) the requesting Utility Company is not currently paid in advance for its Utility Services.  Utility Motion at ¶ 35.  None of these conditions are applicable to SRRU.

[4] On June 25, 2009, the Court entered the *Final Order Pursuant To 11 U.S.C. §§ 105, 363, And 364 Authorizing Debtors To (I) Pay Prepetition Claims Of Certain Essential Suppliers, Vendors, And Service Providers, (II) Continue Troubled Supplier Assistance Program, And (III) Continue Participation In The United States Treasury Auto Supplier Support Program* (the "**Final Critical Vendors Order**") (wherein the Court made final the relief provided to the Debtors under the Interim Critical Vendors Order); upon information and belief, the Interim Utility Order later served as the Court's final order on the Utility Motion.

6.      In the Interim Utility Order, the Court, *inter alia*: (a) granted the Utility Motion on

an interim basis; and, (b) set an objection deadline to the Utility Motion of June 15, 2009, at 4:00

p.m. and scheduled a Final Hearing on the Utility Motion on June 25, 2009, at 9:45 a.m.

7.      On June 12, 2009, SRRU, along with several other utilities (SRRU and other

utilities are collectively referred to herein as the "**Utilities**"), filed the *Objection Of Certain Utility*

*Companies To Motion Of Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105(a) And*

*366 (I) Approving Debtors' Proposed Form Of Adequate Assurance Of Payment, (II)*

*Establishing Procedures For Resolving Objections By Utility Companies, And (III) Prohibiting*

*Utilities From Altering, Refusing, Or Discontinuing Service* (the "**Objection**") [Docket No.

915]. In the Objection, the Utilities set forth a comprehensive legal analysis and explanation as to

why the relief sought by the Debtors in the Utility Motion as well as the actual filing of the Utility

Motion run afoul of the Debtors' obligations and the Utilities' rights concerning adequate

assurance of payment under the express provisions of Section 366(c) of the Bankruptcy Code.

Accordingly and for the reasons further set forth therein, under the Objection, SRRU sought a

two-month cash deposit from Debtors as adequate assurance of payment for the SRRU

Agreement.  Objection at ¶ 43.

8.      In the Objection, SRRU further represented as follows:

> The Debtors have indicated to [SRRU] that the Debtors intend to assume
> and assign the [SRRU Agreement]. . . . Accordingly, and for purposes of
> resolving [its request] for adequate assurance from the Debtors, [SRRU]:
> (a) [needs] to confirm the certainty of Debtors' intention to assume [the
> SRRU Agreement]; and, (b) a date certain by which Debtors shall pay the
> cure [amount] to [SRRU] pursuant to Section 365(b)(1)(A) of the
> Bankruptcy Code.  Moreover, upon receipt of the cure payment from the
> Debtors, . . . [SRRU] shall forego [its] deposit [request] for adequate
> assurance of payment under Section 366(c) and agree that the assumption
> of [the SRRU Agreement] and receipt of the applicable cure payment,

along with payment in full of their post-petition invoices shall constitute adequate assurance of payment . . . pursuant to Section 366(c) of the Bankruptcy Code.  Objection at ¶ 51.

9.      Following the filing of the Objection, counsel for the Debtors and counsel for SRRU engaged in telephone discussions and exchanged written correspondence concerning the Utility Motion and the Objection.  Through these efforts, the Debtors and the Utilities eventually reached a settlement agreement concerning the Debtors' provision of adequate assurance of payment.

### Facts Concerning The Settlement Agreement

10.     On June 17, 2009, counsel for the Utilities contacted counsel for the Debtors by telephone to discuss Debtors' position regarding the Objection.  Thereafter, the parties engaged in several follow-up telephone calls during which counsel for the Debtors represented his intention to confirm an offer from the Debtors to provide a one-month cash deposit as adequate assurance of payment to the Utilities in order to resolve the Objection.

11.     Following the receipt of this tentative settlement offer from the Debtors, undersigned counsel confirmed the Utilities', including SRRU's, willingness to a one-month cash deposit payment from the Debtors as adequate assurance of payment.

12.     Based upon the responses provided by the Utilities, counsel for the Utilities sent counsel for the Debtors a settlement letter via e-mail attachment on June 22, 2009, wherein, *inter alia*, SRRU offered to settle its two-month cash deposit demand for adequate assurance of payment in exchange for payment by the Debtors of a one-month cash deposit in the amount of $719,640.00 (the "**Settlement Offer**").

13. When counsel for the Debtors did not immediately respond to the Settlement

Offer, counsel for SRRU contacted counsel for Debtors via e-mail on June 23, 2009, at 1:59 p.m.

requesting information concerning Debtors' response to the Settlement Offer.  In particular,

counsel for SRRU was trying to determine as soon as possible and prior to the Final Hearing on

June 25, 2009, whether the parties were going to reach settlement concerning the Utility Motion

and the Objection.  Within a few minutes, counsel for Debtors responded to this e-mail and stated

that they were still waiting for Debtors' response to the Settlement Offer and that they would do

their best to follow-up later that day.

14. At approximately 8:45 p.m. on June 23, 2009, counsel for Debtors and counsel for

SRRU engaged in a telephone conversation concerning the Settlement Offer.  During this

conversation, Debtors rejected the Settlement Offer as to SRRU and instead offered to treat

SRRU as a Critical Vendor and issue payment to SRRU for the outstanding prepetition debt and

for their post-petition invoices in the ordinary course of business pursuant to the Debtors'

authority under the Interim Critical Vendors Order (the "**Settlement Agreement**").  Thereafter,

the parties confirmed their agreement to adjourn the Final Hearing on the Utility Motion

scheduled for June 25, 2009, until June 30, 2009, so that the parties could finalize the details and

documentation concerning the Settlement Offer in relation to the other Utilities.

15. On June 24, 2009, at approximately 10:30 a.m., counsel for the Debtors, counsel

for SRRU and business representatives of the Debtors engaged in a telephone call to further

discuss the details of the Settlement Offer.  During this telephone call, both counsel for the

Debtors and the Debtors' business representatives confirmed the Settlement Agreement regarding

SRRU by making the following representations:

A.      In lieu of rendering a post-petition deposit as adequate assurance of

payment, the Debtors are going to treat SRRU as a critical vendor;

B.      The Debtors have received SRRU's unpaid prepetition invoice; and,

C.      The amount of SRRU's unpaid prepetition invoice has been entered in the

Debtors' accounts payable database; and,

D.      SRRU's prepetition invoice has been approved for payment by the due date

on the invoice.[5]

16.      On June 26, 2009, counsel for the Utilities sent a settlement letter via e-mail to

counsel for the Debtors confirming the terms of the Settlement Agreement discussed during the

telephone conversation described in the preceding paragraph (the "**Settlement Letter**").  A true

and correct copy of the Settlement Letter is attached hereto as **Exhibit C**.

17.      In the Settlement Letter and in relation to SRRU, counsel for the Utilities

confirmed the terms of the Settlement Agreement as follows:

### IV.      JOINT VENTURE UTILITIES

During previous settlement negotiations, Debtors expressed their intentions
to treat the Joint Venture Utilities as Essential Vendors pursuant to the *Motion Of
Debtors For Entry Of Order Pursuant To 11 U.S.C. §§ 105, 363, And 364
Authorizing Debtors To (I) Pay Prepetition Claims Of Certain Essential
Suppliers, Vendors And Service Providers; (II) Continue Troubled Supplier
Assistance Program; And (III) Continue Participation In The United States
Treasury Auto Supplier Support Program* (the "**Critical Vendor Motion**")
[Docket No. 76].  Accordingly, and pursuant to the Debtors' authority as granted
by the Court under the *Interim Order Pursuant To 11 U.S.C. §§ 105, 363, And
364 Authorizing Debtors To (I) Pay Prepetition Claims Of Certain Essential
Suppliers, Vendors And Service Providers, (II) Continue Troubled Supplier
Assistance Program, And (III) Continue Participation In The United States
Treasury Auto Supplier Support Program* (the "**Interim Critical Vendor Order**")
[Docket No. 175], the Debtors, in lieu of providing the Joint Venture Utilities with

---

[5] As shown by **Exhibit A** attached hereto, the due date on the May Invoice was July 2, 2009.

the postpetition deposits requested by the Joint Venture Utilities in the Objection, shall, pursuant to their authority under the Interim Critical Vendor Order:

- A.    Pay all prepetition invoices issued by the Joint Venture Utilities in the ordinary course of business;

- B.    Debtors shall send their payments of the Joint Venture Utilities' prepetition invoices to the person and at the address set forth on each invoice and in the following amounts:

    . . .
    - 4.    Shreveport Red River Utilities, LLC -- $804,164.44

- C.    Pay all postpetition invoices issued by the Joint Venture Utilities in the ordinary course of business to the person and at the address set forth on each invoice.

18.    On June 30, 2009, counsel for the Debtors sent two e-mails to undersigned counsel for SRRU confirming Debtors' acceptance and agreement as to the terms of the Settlement Agreement set forth in the Settlement Letter including the settlement terms relating to SRRU.[6]

19.    As a result of the Settlement Agreement, the Utilities, including SRRU, withdrew the Objection as settled.

### Facts Concerning The SRRU Agreement

20.    Under the billing cycle of the SRRU Agreement, the Debtors received approximately one month of utility goods and/or services before SRRU issued a bill for such charges. Once SRRU issued the bill, the Debtors had approximately 60 days to pay all undisputed amounts of the invoice. Further, the Debtors had the right to raise a good-faith dispute

---

[6] Attached hereto as **Exhibit D** is a true and correct copy of e-mail correspondence between SRRU's representative, Kevin Hooker, and Debtors' representative, Robert Threlkeld, wherein Mr. Threlkeld acknowledges and confirms Debtors' treatment of SRRU as a critical vendor. Further, Mr. Threlkeld indicated that all of SRRU's post-petition invoices will be paid in the ordinary course of business. The date of this correspondence is July 15, 2009, two weeks after the July 2, 2009, due date of the May Invoice.

concerning any amount of a bill and withhold payment equal to that amount.  For any amounts

that are subsequently determined by the parties to be due and payable following the resolution of

a good-faith dispute, the Debtors were to remit payment within ten (10) business days together

with applicable interest.  Accordingly, under the billing cycle of the SRRU Agreement, the

Debtors could receive at least three (3) or more months of unpaid charges before SRRU could

cease the supply of goods and/or services for payment default.

21.      SRRU is a special service entity created exclusively for the purpose of providing

utility goods and/or services to the Debtors at the Shreveport Facility pursuant to the SRRU

Agreement.  The facility from and through which SRRU provides these utility goods and/or

service is separate from the Shreveport Facility.  At one time, the Debtors owned this separate

facility but then sold it to SRRU.  SRRU has no other assets or revenue stream other than the

monthly payments that it receives from the Debtors for the provision of utility goods and/or

services to the Shreveport Facility.  SRRU financed the purchase of this facility through GE

Capital.  Due to its repayment obligations to GE Capital, SRRU only retains a portion of the

Debtors' invoice payments each month for operating revenue.

**Facts Concerning The Invoices**

22.      As indicated by **Exhibit A** attached hereto, SRRU issued the May Invoice to the

Debtors on May 31, 2009, comprised of the following charges:

|   |   |   |
|---|---|---|
| A. | System Capacity Fee: | $328,384.81 |
| B. | System Operating Fee: | $135,517.00 |
| C. | Seller Capacity Fee: | $192,611.77 |
| D. | Variable Operating Fee: | $12,872.53 |

| | | | |
|---|---|---|---|
| E. | Expense Reimbursement: | | $1,578.52 |
| F. | GM Adjustments: | | ($69,654.44) |
| G. | Additional Capacity Fee: | | $92,156.00 |
| H. | RO Membrane Past Due Amount: | | $54,000.00 |
| | **Total Amount Due**: | | $747,466.19 |

23.     Debtors have never raised a dispute with SRRU concerning the above charges

listed on the May Invoice.  Pursuant to the Settlement Agreement and the Final Critical Vendors

Order, Debtors were to remit payment of this invoice in full by the due date, July 2, 2009.[7]

24.     To date, Debtors have remitted payment to SRRU only for a portion of the May

Invoice.  Specifically, Debtors have paid GE Captial's servicer, Capmark, the System Capacity

Fee listed on the May Invoice in the amount of $328,384.81, which is the monthly amount SRRU

owed to GE Capital under the applicable loan.  All other charges listed on the May Invoice,

however, totaling $419,081.38, remain unpaid by the Debtors.

25.     As indicated by **Exhibit B** attached hereto, SRRU issued the June Invoice to the

Debtors on June 30, 2009, comprised of the following charges:

| | | |
|---|---|---|
| A. | System Capacity Fee: | $328,384.81 |
| B. | System Operating Fee: | $135,517.00 |
| C. | Seller Capacity Fee: | $192,611.77 |
| D. | Variable Operating Fee: | $16,593.83 |
| E. | Expense Reimbursement: | $2,862.64 |

---

7 It had been the Debtors' customary business practice to pay SRRU for its invoices via wire transfer.

F.      GM Adjustments:                    ($69,654.44)

G.      Additional Capacity Fee:           $92,156.00

H.      RO Membrane Past Due Amount:       $54,000.00

   **Total Amount Due**:                   $752,471.61

26.     As set forth herein, the June Invoice contains both prepetition and postpetition

charges of the Debtors at the Shreveport Facility. Specifically, the charges set forth above in

paragraph 25A), 25(B) and 25(C) represent the portion of the June Invoice for Debtors'

postpetition charges totaling $656,513.58. Debtors have paid SRRU $614,829.94 of the total

amount due for the postpetition charges set forth on the June Invoice. Accordingly, the amount

of Debtors' unpaid postpetition charges concerning the June Invoice is $41,683.64.

27.     The charges set forth above in paragraph 25(D), 25(E), 25(G) and 25(H) represent

the unpaid portion of the June Invoice for Debtors' prepetition charges totaling $95,958.03

($165,612.47 - $69,654.44 credit in paragraph 25(F)), which includes the $54,000 RO Membrane

Past Due Amount that remained unpaid from the May Invoice.

28.     Debtors have never raised a dispute with SRRU concerning the above charges

listed on the June Invoice. Pursuant to the Settlement Agreement, the Final Critical Vendors

Order and the representations of the Debtors in the Utility Motion as approved by the Court in the

Interim Utility Order, Debtors were to remit payment of this invoice in full by the due date,

August 2, 2009.

29.     Based upon the foregoing, the total amount due and owing from the Debtors to

SRRU concerning the Invoices is $502,723.05, comprised of the following amounts:

A.      Unpaid prepetition charges of the May Invoice totaling $419,081.38;

        B.       Unpaid postpetition charges of the June Invoice totaling $41,683.64; and,

        C.       Unpaid prepetition charges of the June Invoice totaling $41,958.03.

($419,081.38 + $41,683.64 + $41,958.03 = $502,723.05).

## Discussion

**A.     THE COURT SHOULD ENTER AN ORDER TO COMPEL THE DEBTORS' IMMEDIATE PAYMENT OF THE INVOICES.**

As set forth in the Final Critical Vendors Order, the Debtors became authorized by the Court to issue payment for prepetition invoices of certain critical vendors. As part of the good-faith settlement negotiations between the Debtors and SRRU prior to the June 25, 2009 Final Hearing on the Utility Motion, the Debtors, after rejecting SRRU's offer to accept a one-month cash deposit, presented SRRU with a counter-offer wherein in lieu of paying a cash deposit as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code, the Debtors would instead treat SRRU as a critical vendor. Accordingly, Debtors offered to issue payment of the May Invoice for prepetition utility goods and/or services provided by SRRU to the Shreveport Facility no later than July 2, 2009, the date in which payment of that invoice became due in the ordinary course of business between the Parties and as set forth under the billing cycle of the SRRU Agreement. Despite Debtors' repeated representations to the contrary and the repeated efforts by SRRU to provide Debtors with information concerning the outstanding amount due, Debtors, in breach of the Settlement Agreement and in violation of the Debtors' obligations under the Final Critical Vendors Order, have refused to issue payment to SRRU for the May Invoice.

Concerning the June Invoice, which is the first invoice issued by SRRU for the provision of post-petition utility goods and/or services by SRRU to the Shreveport Facility, Debtors are also without any legitimate excuse for refusing to pay this invoice by the due date of August 2, 2009. As indicated herein,

15

in paragraph 34 of the Utility Motion, Debtors represented to the Court as follows: (a) that the Debtors

intended to pay all postpetition obligations owed to their utilities in a timely manner; and, (b) that the

Debtors anticipate having sufficient funds available in which to pay these invoices.  As further detailed

herein, Debtors' representatives and counsel for the Debtors have made repeated representations to

SRRU that the June Invoice would be paid.  Despite these representations, Debtors have failed to remit

payment for the June Invoice.

       **WHEREFORE** and for the foregoing reasons, SRRU respectfully requests that this

Court enter an order:

1.     Enforcing the terms of the Settlement Agreement and Debtors' obligations under the Final Critical Vendors Order by requiring the Debtors to issue, via wire transfer, an immediate payment to SRRU for the unpaid prepetition portion of the May Invoice in the amount of $419,081.38;

2.     Enforcing the terms of the Settlement Agreement and Debtors' obligations under the Final Critical Vendors Order by requiring the Debtors to issue, via wire transfer, an immediate payment to SRRU for the unpaid prepetition portion of the June Invoice in the amount of $41,958.03;

3.     Enforcing the terms of the Settlement Agreement and Debtors' obligations under the Interim Utility Order by requiring the Debtors to issue, via wire transfer, an immediate payment to SRRU for the unpaid postpetition portion of the June Invoice in the amount of $41,683.64;

4.     Awarding SRRU all of its incurred costs and expenses, including all reasonable attorneys' fees, related to the filing this Motion; and,

5.      Providing SRRU with such other and further relief as the Court deems just

and appropriate.

Dated: Garden City, New York
        November 24, 2009

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:      /s/ Jil Mazer-Marino
         Thomas R. Slome (TS-0957)
         Jil Mazer-Marino (JM-6470)
         990 Stewart Avenue
Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706

And

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
LAW FIRM OF RUSSELL R. JOHNSON III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
*Co-Counsel for Shreveport Red River Utilities, LLC*

742958v.2