**Hearing Date and Time: January 20, 2010 at 9:45 a.m.**
**Objection Deadline: January 5, 2010 at 5:00 p.m.**
**Reply Deadline: January 14, 2010 at 5:00 p.m.**

BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 705-7000
Facsimile: (212) 752-5378
Robert M. Dombroff
Jeffrey S. Sabin
Jared R. Clark

Attorneys for Deutsche Bank AG

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.,* | : | Case No. 09-50026 (REG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

# DEUTSCHE BANK AG'S MOTION FOR RELIEF
# FROM AUTOMATIC STAY TO EFFECT SETOFF

A/73182422.7

# TABLE OF CONTENTS

                                                                                                                                    Page

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

        Deutsche Bank's Interest Rate Swap Debts to GM ............................................................ 2

        Deutsche Bank's Claims Against GM ............................................................................... 3

        Deutsche Bank's Request that GM Stipulate to Stay Relief .............................................. 4

JURISDICTION ............................................................................................................................. 4

RELIEF REQUESTED AND BASIS FOR RELIEF ..................................................................... 4

    I.    Deutsche Bank Has a Valid Right of Setoff Under
New York Law and the Bankruptcy Code ............................................................ 5

    II.    Deutsche Bank's Valid Right of Setoff Constitutes
Cause for Stay Relief Under Section 362(d)(1) .................................................... 8

    III.    Section 362(d)(2) Permits Setoff Because GM Lacks
Equity in Its Claims Against Deutsche Bank and Those
Claims Are Not Necessary for GM's Reorganization .......................................... 9

NOTICE ........................................................................................................................................ 10

CERTIFICATION ........................................................................................................................ 10

A/73182422.7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*,
No. 95 Civ. 4856 (SS), 1997 WL 53172 (S.D.N.Y. Feb. 10, 1997) ..........................................6

*Bohack Corp. v. Borden, Inc.*,
599 F.2d 1160 (2d Cir. 1979) ...............................................................................................5, 8

*Boston Ins. Co. v. Nogg (In re Yale Express Sys., Inc.)*,
362 F.2d 111 (2d Cir. 1966) .......................................................................................................5

*In re Alibrandi*,
Case No. 87-00384, 1990 Bankr. LEXIS 1002 (Bankr. N.D.N.Y. Apr. 25, 1990) ...................9

*In re Chateaugay Corp.*,
53 F.3d 478 (2d Cir.), *cert. denied*, 516 U.S. 913 (1995)...........................................................7

*In re Ealy*,
392 B.R. 408 (Bankr. E.D. Ark.),
*appeal dismissed*, 396 B.R. 20 (B.A.P. 8th Cir. 2008) ...............................................................9

*In re Gould*,
401 B.R. 415 (B.A.P. 9th Cir. 2009)...........................................................................................9

*In re Kaplan Breslaw Ash, LLC*,
264 B.R. 309 (Bankr. S.D.N.Y. 2001).........................................................................................9

*In re Lehigh & Hudson R. Ry. Co.*,
468 F.2d 430 (2d Cir. 1972) .......................................................................................................8

*In re Whitaker*,
173 B.R. 359 (Bankr. S.D. Ohio 1994).......................................................................................9

*North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.*,
152 U.S. 596 (1894).....................................................................................................................5

*Official Comm. Of Unsecured Creditors v. Mfrs. and Traders Trust Corp. (In re Bennett Funding Group, Inc.)*,
146 F.3d 136 (2d Cir. 1998) ..............................................................................................5, 6, 8

*Official Comm. Of Unsecured Creditors v. Mfrs. and Traders Trust Corp. (In re Bennett Funding Group, Inc.)*,
212 B.R. 206 (B.A.P. 2d Cir. 1997)............................................................................................5

*One Times Square Assocs. Ltd. P'ship v. Banque Nationale de Paris (In re One Times Square Assocs. Ltd. P'ship)*,
   165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994),
   *cert. denied*, 513 U.S. 1153 (1995) ..........................................................................10

*Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*,
   101 F.3d 882 (2d Cir. 1996) ........................................................................................10

*RJE Corp. v. Northville Indus. Corp.*,
   329 F.3d 310 (2d Cir. 2003) ..........................................................................................6

*United States v. Gerth*,
   991 F.2d 1428 (8th Cir. 1993) .......................................................................................7

*United States v. Orlinski (In re Orlinski)*,
   140 B.R. 600 (Bankr. S.D. Ga. 1991) ........................................................................ 8-9

*Westinghouse Credit Corp. v. D'Urso*,
   278 F.3d 138 (2d Cir. 2002), *on subsequent appeal*, 371 F.3d 96 (2d Cir. 2004) .................7, 8

**STATUTES**

11 U.S.C. § 101 ......................................................................................................................1

11 U.S.C. § 362(a)(7) .............................................................................................................5

11 U.S.C. § 362(b)(17) ..........................................................................................................1

11 U.S.C. § 362(d) ............................................................................................................1, 4

11 U.S.C. § 362(d)(1) .........................................................................................1, 4, 8, 9, 11

11 U.S.C. § 362(d)(2) .........................................................................................1, 4, 5, 9, 11

11 U.S.C. § 362(g) ..................................................................................................................9

11 U.S.C. § 506(a)(1) ..........................................................................................................5, 9

11 U.S.C. § 553(a) ...........................................................................................................5, 6, 7

28 U.S.C. § 157 .......................................................................................................................4

28 U.S.C. § 157(b)(2) .............................................................................................................4

28 U.S.C. § 1334 .....................................................................................................................4

28 U.S.C. § 1408 .....................................................................................................................4

28 U.S.C. § 1409 .....................................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 4001 ................................................................................................................1, 4

5 Collier on Bankruptcy ¶ 553.01[1] (15 ed. 2004) ........................................................................7

5 Collier on Bankruptcy ¶ 553.03[1][b] (15 ed. 2004) ...................................................................7

N.Y. Debt. & Cred. Law § 151 (McKinney 2006) .........................................................................6

A/73182422.7

Plaintiff Deutsche Bank AG ("**Deutsche Bank**"), by its undersigned attorneys, submits this motion (the "**Motion**") under section 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure, for entry of an order relieving Deutsche Bank from the automatic stay so that it can effect a setoff of amounts General Motors Corporation ("**GM**") owes it on certain GM bonds against amounts Deutsche Bank owes GM on two interest rate swaps.

## PRELIMINARY STATEMENT

1. Deutsche Bank owes GM a debt of approximately $24 million on interest rate swaps entered into in 2004 and 2005 under the 1992 International Swap Dealers Master Agreement (the "**Master Agreement**"). GM owes Deutsche Bank a debt of approximately $24 million on GM bonds that Deutsche Bank acquired between November 2004 and January 2006. Under New York law, Deutsche Bank has valid and enforceable contractual, statutory and common-law rights to offset those debts.[1]

2. Under these circumstances, the Bankruptcy Code gives Deutsche Bank the right to relief from the automatic stay to effect a setoff for two independently sufficient reasons. Under Bankruptcy Code section 362(d)(1), the simple fact of Deutsche Bank's setoff right constitutes cause to relieve Deutsche Bank from the stay. In addition, under section 362(d)(2), the stay should be lifted because GM has no equity in its claims against Deutsche Bank and those claims are not necessary for GM's reorganization. The Court should grant Deutsche Bank's motion to lift the stay and permit it to effect a setoff accordingly.

---

[1] The automatic stay also specifically provides an exception for a "swap participant . . . under any security agreement . . . related to any swap agreement . . . to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements . . . ." 11 U.S.C. § 362(b)(17).

**BACKGROUND**

*Deutsche Bank's Interest Rate Swap Debts to GM*

3.  Deutsche Bank and GM entered into the Master Agreement, dated September 19, 2002, and the Schedule to the Master Agreement (the "**Schedule**"), also dated September 19, 2002. True and correct copies of the Master Agreement and the Schedule are annexed to the Declaration of Matthew Tilove in Support of the Motion (the "**Tilove Decl.**") as Exhibits A and B, respectively. The Master Agreement and the Schedule both contain New York choice of law clauses. *See* Tilove Decl., Ex. A, § 13(a); Ex. B, Part 4(h).

4.  GM's June 1, 2009 bankruptcy filing constituted an Event of Default, as defined in Section 5 of the Master Agreement. Tilove Decl., Ex. A, § 5(a)(vii). Section 6(a) of the Master Agreement provides that, if one party defaults under Section 5, the other party may terminate the Master Agreement. *Id.* at § 6(a). Section 6(e) further provides that any amount owing after such a termination "will be subject to any Set-off." *Id.* at § 6(e). Part 5(1) of the Schedule contains the definition of "Set Off" and defines that right broadly. Tilove Decl., Ex. B, Part 5(1). It provides that, after a termination based on one party's default, the other party has the right to reduce the amount it (or any of its affiliates) owes the defaulting party under the Master Agreement "by setting off against such amounts any or all amounts" the defaulting party owed it (or any of its affiliates). *Id.* Part 5(1) of the Schedule also provides that, at the time of setoff, the amounts to be offset need not be "then due." *Id.*

5.  Under the Master Agreement, Deutsche Bank and GM entered into two interest rate swap transactions, one on April 23, 2004 (maturing July 3, 2013) and the other on March 9, 2005 (maturing April 15, 2016). Tilove Decl., ¶ 6. On June 1, 2009, because GM had defaulted under Section 5 of the Agreement, Deutsche Bank sent GM a notice of termination (the

"**Termination Notice**").  A true and correct copy of the Termination Notice is annexed to the Tilove Declaration as Exhibit C.  Deutsche Bank determined that it owed GM $24,040,404 (the "**Settlement Amount**") — $17 million for the 2004 transaction and $7 million for the 2005 transaction.  Tilove Decl., ¶ 9.

6.      On June 10, 2009, Deutsche Bank sent GM a letter (the "**Valuation Letter**") that calculated a settlement amount for the interest rate swap arrangement.  A true and correct copy of the Valuation Letter is annexed to the Tilove Declaration as Exhibit D.  In the Valuation Letter, Deutsche Bank expressed its belief that it could offset the Settlement Amount against other amounts GM owed it.  Tilove Decl., Ex. D.

### *Deutsche Bank's Claims Against GM*

7.      Between November 2004 and January 2006, Deutsche Bank purchased certain of the following GM bonds:

| Description[2] | CUSIP/ISIN | Trade Dates[3] |
|---|---|---|
| 9.4% $300,000,000 unsecured bonds, maturing July 15, 2021 | 370442AN5 | November 15, 2004 |
| 9.45% $48,175,000 unsecured bonds, maturing November 1, 2011 | 37045EAS7 | June 13, 2005 |
| 7.25% €1,000,000,000 unsecured bonds, maturing July 3, 2013 | XS0171942757 | June 10, 2005; January 9, 2006 |

Tilove Decl., ¶ 11.

8.      As of GM's June 1, 2009 bankruptcy filing, the total face amount of those purchased bonds was $24,073,200 (the "**Bond Amount**") — $3,900,000 for the 9.4% bonds;

---

[2] The description of the bonds shown in this table has been revised to reflect the correct aggregate issuance amounts of the 9.45% bonds and the 7.25% bonds, which should have been presented in the Setoff Notice as $48,175,000 and €1,000,000,000, respectively.

[3] The Setoff Notice dated August 20, 2009 referenced the purchase dates reflected in Deutsche Bank's records. Paragraph 11 reflects each actual trade date.

-3-

A/73182422.7

$8,850,000 for the 9.45% bonds; and $11,323,200 for the 7.25% bonds. Deutsche Bank continues to hold the bonds. Tilove Decl., ¶ 12-13.

*Deutsche Bank's Request that GM Stipulate to Stay Relief*

9. By a letter dated August 20, 2009, Deutsche Bank notified GM (the "**Setoff Notice**") of its intent to effect a setoff of the Bond Amount (Deutsche Bank's $24,073,200 claim against GM) against the Settlement Amount (the $24,040,404 Deutsche Bank owes GM). A true and correct copy of the Setoff Notice is annexed to the Tilove Declaration as Exhibit E. To avoid the necessity of motion practice, in the Setoff Notice, Deutsche Bank requested that GM stipulate to relief from the automatic stay. *Id.* GM failed to respond. Tilove Decl., ¶ 15.[4]

## JURISDICTION

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 362(d)(1) and (2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED AND BASIS FOR RELIEF

11. Under Bankruptcy Code section 362(d) and Bankruptcy Rule 4001, Deutsche Bank seeks an order lifting the automatic stay so that it can offset the claim it has against GM for the Bond Amount against the Settlement Amount it owes GM.

12. Two provisions of the Bankruptcy Code entitle Deutsche Bank to relief. A court "shall grant relief from" an automatic stay:

    a. "for cause" (11 U.S.C. § 362(d)(1)) and,

---

[4] Also in the Setoff Notice, Deutsche Bank expressly reserved its right to file, after setoff, a general unsecured claim for $32,797, the amount by which the Bond Amount exceeds the Settlement Amount. Tilove Decl., Ex. E.

-4-

A/73182422.7

    b. for actions against property, "if - (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization" (11 U.S.C. § 362(d)(2)).

## I. Deutsche Bank Has a Valid Right of Setoff Under New York Law and the Bankruptcy Code.

13. As the Supreme Court has explained: "[t]he adjustment of demands by . . . set-off . . . is favored and encouraged by the law, to avoid circuity of action and injustice." *North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co.*, 152 U.S. 596, 615-16 (1894). "This Circuit . . . [has] made clear the favored position of setoff and that that position extends to bankruptcy." *Official Comm. Of Unsecured Creditors v. Mfrs. and Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 139 (2d Cir. 1998) (affirming setoff); *see also Official Comm. of Unsecured Creditors v. Mfrs. and Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997) ("[S]etoff 'occupies a favored position in our history of jurisprudence,' a position with which the courts should interfere 'only under the most compelling circumstances.'") (citations omitted) (affirming setoff); *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979).

14. By law, a valid setoff right preserved under Section 553 is secured. *See* 11 U.S.C. § 506(a)(1). Indeed, a valid setoff right is "security of the most perfect kind." *Boston Ins. Co. v. Nogg (In re Yale Express Sys., Inc.)*, 362 F.2d 111, 114 (2d Cir. 1966). Except for the automatic stay (*see* Bankruptcy Code section 362(a)(7)) and discrete circumstances not present here, the Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . ." *See* 11 U.S.C. § 553(a).

15.     New York common law, statutory law and contract law all supply Deutsche Bank with a clear setoff right.[5]  "There is also no question that New York has long recognized a common law right of setoff.  New York also has codified the right to setoff." *In re Bennett Funding*, 146 F.3d at 139 (citations omitted).  New York contract law expands the right: "if a contractual right exists between the parties to setoff . . . such contractual right will be enforced by the courts, even if statutory and common law do not provide for the setoff . . . ." *See Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, No. 95 Civ. 4856 (SS), 1997 WL 53172, at *4 (S.D.N.Y. Feb. 10, 1997).

16.     Deutsche Bank's contractual setoff rights are broad.  Because Deutsche Bank is the nondefaulting party, the Schedule to the Master Agreement provides that Deutsche Bank "may reduce any or all amounts owing to [GM] under this Agreement or any other transactions between [GM] and [Deutsche Bank] or any Affiliate of [Deutsche Bank] (whether or not then due) by setting off against such amounts any or all amounts to [Deutsche Bank] of any Affiliate of [Deutsche Bank] by [GM] (whether or not then due)."  Tilove Decl., Ex. B, Part 5(1).

17.     Bankruptcy Code section 553(a) preserves nonbankruptcy setoff rights when four conditions are met:

> a.  The creditor must hold a claim against the debtor that arose before the commencement of the bankruptcy case.
>
> b.  The creditor must owe a debt to the debtor that also arose before commencement.
>
> c.  The claim and debt must be mutual.

---

[5] Under the New York choice-of-law clauses in the Master Agreement and the Schedule (Tilove Decl., Ex. A, § 13(a), Ex. B., Part 4(h)), New York supplies the nonbankruptcy law applicable to Deutsche Bank's setoff right. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) ("It is the general policy of New York courts to enforce choice of law provisions, and we therefore apply New York contract law . . . ."). New York Debtor and Creditor Law provides, upon the filing of a bankruptcy petition that a creditor may "set off and apply

-6-

    d. The claim and debt each must be valid and enforceable.

*See* 11 U.S.C. § 553(a); *see also* 5 Collier on Bankruptcy ¶ 553.01[1] (15 ed. 2004).

  18. All of the claims to be offset — Deutsche Bank's claim against GM for the Bond Amount and GM's claim against Deutsche Bank for the Settlement Amount under the Master Agreement — arose before commencement of GM's bankruptcy case because all arose from pre-petition contracts. GM's debts arose when it issued the underlying bonds, which Deutsche Bank acquired between November 2004 and January 2006 (Tilove Decl., ¶ 11) — several years before GM filed its bankruptcy petition. Similarly, Deutsche Bank's debts arose either in 2002 (when it entered into the Master Agreement) or during the 2004 and 2005 transactions under the Master Agreement — in either case also years before GM petitioned for bankruptcy. *See In re Chateaugay Corp.*, 53 F.3d 478, 497 (2d Cir.), *cert. denied*, 516 U.S. 913 (1995) ("A claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts . . . ."); *see also United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993) ("For setoff purposes, a debt arises when all transactions necessary for liability occur . . . ."); 5 Collier on Bankruptcy ¶ 553.03[1][b] (15 ed. 2004) ("In general, a claim is considered to have arisen before the commencement of the case if all of the elements of liability arose before the petition date.").

  19. Deutsche Bank's debts to GM and its claims against GM are mutual. Under New York law, offsetting debts are mutual when they are due to and from the same parties in the same capacity. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002), *on subsequent appeal*, 371 F.3d 96 (2d Cir. 2004) (citing New York law). The Bond Amount and

---

against any indebtedness . . . any amount owing from such debtor to such creditor." N.Y. DEBT. & CRED. LAW § 151 (McKinney 2006).

-7-

Settlement Amount are both owed between the same parties -- Deutsche Bank and GM.[6] Mutuality exists with respect to Deutsche Bank's debts to GM on the interest rate swaps arrangement and GM's debts to Deutsche Bank on the bonds because the parties owe those debts to one another in the same capacity. *Compare id.* at 149-150 (contrasting contractual claims, which are mutual and may be offset against each other, with claims by a beneficiary against a trustee, which may not be offset).

20.     Finally, Deutsche Bank's claim for the Bond amount and GM's claim for the Settlement Amount are both enforceable. Accordingly, under New York law and the Bankruptcy Code, the Settlement Amount and the Bond Amount may be offset against each other.

## II.     Deutsche Bank's Valid Right of Setoff Constitutes Cause for Stay Relief Under Section 362(d)(1).

21.     An injunction against the favored right of setoff is "strong medicine." *In re Lehigh & Hudson R. Ry. Co.*, 468 F.2d 430, 434 (2d Cir. 1972). Thus, absent "compelling circumstances," once a party establishes a right of setoff, that party has also demonstrated cause for lifting the automatic stay. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1160 (2d Cir. 1979) ("The statutory remedy of setoff should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole."); *see also In re Bennett Funding*, 146 F.3d at 139 (2d Cir. 1998) ( "[c]ases under the prior Bankruptcy Act required 'compelling circumstances' to disregard state sanctioned setoff rights" and the Bankruptcy Code "is fully in accord with the prior Second Circuit jurisprudence"). In other words, a valid right of setoff is "a prima facie showing of 'cause' for relief from stay. . . ." *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D.

---

[6] In addition, the Schedule clearly provides that the Master Agreement's right of offset encompasses the claims and debts of affiliates of the parties to the Agreement. Tilove Decl., Ex. B, Part 5(1).

Ga. 1991); *see also In re Alibrandi,* Case No. 87-00384, 1990 Bankr. LEXIS 1002, at *8 (Bankr. N.D.N.Y. Apr. 25, 1990); *In re Gould,* 401 B.R. 415, 426 (B.A.P. 9th Cir. 2009); *In re Ealy,* 392 B.R. 408, 414 (Bankr. E.D. Ark.), *appeal dismissed,* 396 B.R. 20 (B.A.P. 8th Cir. 2008); *In re Whitaker,* 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994).

22. As a result, a valid, nonbankruptcy setoff right by itself constitutes cause for lifting the automatic stay under Section 362(d)(1). By demonstrating its valid setoff right, Deutsche Bank has shown cause for this Court to lift the automatic stay.

### III. Section 362(d)(2) Permits Setoff Because GM Lacks Equity in its Claims Against Deutsche Bank and Those Claims Are Not Necessary for GM's Reorganization.

23. To have the automatic stay lifted under Bankruptcy Code section 362(d)(2), Deutsche Bank need show only that GM has no equity in its claims against Deutsche Bank. *See* 11 U.S.C. § 362(g); *see also In re Kaplan Breslaw Ash, LLC,* 264 B.R. 309, 321-322 (Bankr. S.D.N.Y. 2001). In particular, Deutsche Bank "must show (1) the amount of its claim; (2) that its claim is secured by a valid, perfected lien in property of the estate; and (3) that the debtor lacks equity in the property." *Id.* at 322.

24. GM lacks equity in its claims against Deutsche Bank, as follows. First, Deutsche Bank has shown that it is owed $24,073,200 on the GM bonds it holds. Second, those claims are secured by GM's property, *i.e.*, GM's claims under the interest rate swaps. *See* 11 U.S.C. § 506(a)(1). And finally, GM has no equity in its claims on the swaps because they are worth only $24,040,404 — $32,797 less than the value of Deutsche Bank's claims. *See In re Kaplan Breslaw Ash,* 264 B.R. at 322 ("equity" means the difference between the value of the debtor's property and the total value of the claims it secures).

25.  GM also cannot carry its burden of establishing that its claims against Deutsche Bank are necessary for an "effective reorganization" of its estate. To demonstrate necessity, GM must "show that 'the property is essential for an effective reorganization that is in prospect' and that there is a 'reasonable possibility of a successful reorganization within a reasonable time.'" *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 886 (2d Cir. 1996) (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988)); *see also One Times Square Assocs. Ltd. P'ship v. Banque Nationale de Paris (In re One Times Square Assocs. Ltd. P'ship)*, 165 B.R. 773, 775 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994), *cert. denied*, 513 U.S. 1153 (1995). Given the overall size of GM's bankruptcy proceedings, GM's relatively insignificant claims against Deutsche Bank are hardly necessary for, or essential to, its reorganization, *i.e.*, GM cannot show that, without its $24 million claim against Deutsche Bank (which claim is subject to offset in full), its reorganization plan will fail.

## NOTICE

26.  Notice of this Motion will be provided to the U.S. Trustee and all parties that have filed a Notice of Appearance in the bankruptcy proceeding. Because that notice is sufficient under the circumstances, the Court should find that no other or further notice of the relief Deutsche Bank requests is required.

## CERTIFICATION

27.  By letter dated August 20, 2009, Deutsche Bank asked GM to consent to its request to lift the automatic stay. Deutsche Bank followed up the letter request with a phone call on or about September 10, 2009. GM did not respond.

28.  By phone conversation and email dated November 17, 2009, and follow up on November 18, 2009, Deutsche Bank informed GM of its intention to file this motion for relief

-10-

A/73182422.7

from the automatic stay. Deutsche Bank asked that GM consent to the relief requested. GM declined to consent and advised Deutsche Bank to file the Motion. GM consented to the briefing schedule set forth herein.

29.     Deutsche Bank has made no other request for the relief it seeks in this Motion.

**WHEREFORE**, Deutsche Bank moves this Court pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2) for an order: (i) granting Deutsche Bank relief from the provisions of the automatic stay to effect setoff up to the Settlement Amount of $24,040,404; and (ii) granting such other relief as the Court deems just and proper.

Dated: New York, New York
       November 24, 2009

                        BINGHAM McCUTCHEN LLP

                        By:  /s/ Robert M. Dombroff
                            Robert M. Dombroff
                            Jeffrey S. Sabin
                            Jared R. Clark
                            399 Park Avenue
                            New York, NY 10022
                            (212) 705-7000

                        Attorneys for Deutsche Bank AG