Michael S. Kogan (California SBN 128500)
*Pro Hac Vice Application Pending*
Peter F. Jazayeri (California SBN 199626)
*Admitted Pro Hac Vice*
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone (310) 273-6333
Facsimile (310) 859-2325

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>MOTORS LIQUIDATION COMPANY (fka General Motors Corporation), *et al.*,<br><br>Debtors. | Case No. 09-50026 (REG)<br>(Jointly Administered)<br><br>Chapter 11 |

### REQUEST FOR PAYMENT OF ADMINISTRATIVE CLAIM

1.  Salas Automotive Group, Inc. ("Salas") is a party to a Dealer Sales and Services Agreement with General Motors Corporation ("GM") dated October 18, 2005 (the "Dealer Agreement"). A true and correct copy of the Dealer Agreement is attached hereto as Exhibit "A". Pursuant to the Dealer Agreement, Salas agreed, among other things, to sell and service vehicles and parts for GM in exchange for monetary compensation. Salas has performed its obligations under the Dealer Agreement. Moreover, Salas' postpetition transactions with GM have benefitted GM's bankruptcy estate. To date, Salas is owed approximately $585,000 in post-petition payments in its open account from GM under the Dealer Agreement.

2.  Salas is also a party to a Wind-Down Agreement (the "Wind-Down Agreement") with GM dated June 1, 2009. A true and correct copy of the Wind-Down Agreement is attached hereto as Exhibit "B". Pursuant to the Wind-Down Agreement, Salas agreed, among other things, to terminate its Dealer Agreement in exchange for a payment of $723,572. Salas has performed its obligations under the Wind-Down Agreement, and Salas' performance has benefitted GM's bankruptcy estate. To date, Salas is owed approximately $723,572 under the Wind-Down

Agreement.

**WHEREFORE,**

Pursuant to 11 U.S.C. § 503, Salas hereby requests that this Court enter an order granting Salas an administrative claim in the amount of $1,308,572 and that Salas be paid such amount within 10 days of such order.

DATED: November 24, 2009                    Respectfully submitted,


/s/ Peter F. Jazayeri
Peter F. Jazayeri (CA Bar #199626)
*Admitted Pro Hac Vice*
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325
pjazayeri@ecjlaw.com

Attorneys for Salas Automotive Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing **Request for Payment of Administrative Claim** was served on this 25th day of November, 2009, via the Court's ECF system on those parties registered to receive notice.

/s/ Christina O'Meara
Christina O'Meara

# EXHIBIT "A"

10/23/2008 12:48 FAX 858748        POWAY CHEVROLET        ☒002

GMMS 1012
USA 11/2004

# GENERAL MOTORS CORPORATION
## Dealer Sales And Service Agreement(s)

Effective November 1, 2005, General Motors Corporation, a Delaware Corporation, separately on behalf of its Division(s) identified in the specific Motor Vehicle Addendum(s) for ☒ Chevrolet Passenger Vehicles and Light Duty Trucks, ☐ Chevrolet Medium Duty Trucks, ☐ Pontiac Motor Vehicles, ☐ GMC Light Duty Trucks, ☐ GMC Medium Duty Trucks, ☐ Buick Motor Vehicles, ☐ Cadillac Motor Vehicles, and ☐ HUMMER Motor Vehicles, ("General Motors") and SALAS AUTOMOTIVE GROUP, INC., ☐ a proprietorship, ☐ a partnership, or ☒ a CALIFORNIA corporation, ☐ a limited liability company, or ☐ other business entity, doing business as POWAY CHEVROLET and located at 13742 POWAY RD, POWAY, CALIFORNIA, 92064, ("Dealer"), hereby enter into separate Agreement(s) for each Motor Vehicle Line-Make(s) included in the Motor Vehicle Addendum(s) incorporated into this Agreement, and only for the Line-Make(s) included in the Motor Vehicle Addendum(s). The Agreement for each Line-Make is independent and separately enforceable by each party, and the use of this common form is intended solely to simplify execution of the Agreement(s). The parties agree as follows:

**FIRST: TERM OF AGREEMENT(S)**

This Agreement(s) shall expire on October 31, 2010 unless earlier terminated. Dealer is assured of an opportunity to enter into a new Agreement(s) at the expiration date if General Motors determines that Dealer has fulfilled its obligations under this Agreement(s).

**SECOND: STANDARD PROVISIONS AND RELATED ADDENDA**

The Standard Provisions and all of the related Addenda are hereby incorporated as part of this Agreement. The Dealer acknowledges that these documents have been brought to its attention, and Dealer accepts their form, content and amendments thereto, in the prescribed manner, from time to time.

**THIRD: DEALER OPERATOR AND DEALER OWNER**

Dealer agrees that the following Dealer Operator will provide personal services in accordance with Article 2 of the Standard Provisions:
MICHAEL A. SALAS

The following Dealer Owner(s) agree that they will comply in all respects with Article 3 of the Standard Provisions:
N/A

**FOURTH: EXECUTION OF AGREEMENT(S) AND RELATED DOCUMENT(S)**

This Agreement(s) and related agreement(s) are valid only if signed:
  (a) on behalf of Dealer by its duly authorized representative, and in the case of this Agreement(s), by its Dealer Operator; and
  (b) this Agreement(s) as set forth below on behalf of General Motors by the Regional General Manager and his authorized representative. All related agreements will be signed by the Regional General Manager or his authorized representative.

**FIFTH: ADDITIONAL AGREEMENTS AND UNDERSTANDINGS**
The following agreement(s) are hereby incorporated by reference into this Agreement(s):

SALAS AUTOMOTIVE GROUP, INC.
dba POWAY CHEVROLET
Dealer Firm Name

By: _____ 10/8/05
Dealer Operator and Date

GENERAL MOTORS CORPORATION

By: _____
Regional General Manager

By: _____ 10-18-05
Authorized Representative and Date

PAGE 2/22 * RCVD AT 10/23/2008 12:48:49 PM [Pacific Daylight Time] * SVR:ECJFAX/3 * DNIS:6887 * CSID:8587486724 * DURATION (mm-ss):11-16

0003
EXHIBIT A

# EXHIBIT "B"

## WIND-DOWN AGREEMENT

THIS WIND-DOWN AGREEMENT (this "Agreement") is made and entered into as of the 1st day of June, 2009, by and between Salas Automotive Group, Inc. ("Dealer"), and GENERAL MOTORS CORPORATION ("GM").

### RECITALS

A. Dealer and GM are the parties to Dealer Sales and Service Agreement (the "Dealer Agreement") for Chevrolet motor vehicles (the "Existing Model Line"). Capitalized terms not otherwise defined in this Agreement shall have the definitions set forth for such terms in the Dealer Agreement.

B. GM is the debtor and debtor-in-possession in a bankruptcy case (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), having filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). No trustee has been appointed and GM is operating its business as debtor-in-possession.

C. GM intends to sell, convey, assign and otherwise transfer certain of its assets (the "363 Assets") to a purchaser (the "363 Acquirer") pursuant to Section 363 of the Bankruptcy Code (the "363 Sale"), subject to approval by and order of the Bankruptcy Court.

D. GM has considered moving and may, at its option, move to reject the Dealer Agreement in the Bankruptcy Case, as permitted under the Bankruptcy Code, unless Dealer executes and delivers this Agreement to GM on or before June 12, 2009.

E. In return for the payments set forth herein and GM's willingness not to pursue the immediate rejection of the Dealer Agreement in the Bankruptcy Case, Dealer desires to enter into this Agreement, (i) to allow Dealer, among other things, to wind down its Dealership Operations in an orderly fashion (specifically including the sale of all of Dealer's new Motor Vehicles), (ii) to provide for Dealer's voluntary termination of the Dealer Agreement, GM's payment of certain monetary consideration to Dealer, and Dealer's covenants regarding its continuing Dealership Operations under the Dealer Agreement, as supplemented by the terms of this Agreement (the "Subject Dealership Operations"), and (iii) to provide for Dealer's release of GM and its related parties from any and all liability arising out of or connected with the Dealer Agreement, any predecessor agreement(s) thereto, and the relationship between GM and Dealer relating to the Dealer Agreement, and any predecessor agreement(s) thereto, all on the terms and conditions set forth herein.

### COVENANTS

NOW, THEREFORE, in consideration of the foregoing recitals and the premises and covenants contained herein, Dealer and GM hereby agree (subject to any required Bankruptcy Court approvals) as follows:

1. **Assignment-363 Sale.** Dealer acknowledges and agrees that GM has the right, but not the obligation, to seek to assign the Dealer Agreement and this Agreement in the Bankruptcy Case to the 363 Acquirer. As part of the 363 Sale, provided such sale closes, GM may, in its sole discretion, assign the Dealer Agreement and this Agreement to the 363 Acquirer. If GM elects to exercise its option to assign the Dealer Agreement and this Agreement, Dealer specifically agrees to such assignment and agrees not to object to or protest any such assignment.

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593

PAGE 3/17 * RCVD AT 6/3/2009 11:06:28 AM [Pacific Daylight Time] * SVR:ECJFAX/2 * DNIS:6887 * CSID:9498887374 * DURATION (mm-ss):10-14

0004



EXHIBIT B

2. <u>Termination of Dealer Agreement.</u> Subject to the terms of Section 1 above:

(a) Dealer hereby covenants and agrees to conduct the Subject Dealership Operations until the effective date of termination of the Dealer Agreement, which shall not occur earlier than January 1, 2010 or later than October 31, 2010, under and in accordance with the terms of the Dealer Agreement, as supplemented by the terms of this Agreement. Accordingly, Dealer hereby terminates the Dealer Agreement by written agreement in accordance with Section 14.2 thereof, such termination to be effective on October 31, 2010. Notwithstanding the foregoing, either party may, at its option, elect to cause the effective date of termination of the Dealer Agreement to occur (if not terminated earlier as provided herein) on any date after December 31, 2009, and prior to October 31, 2010, upon thirty (30) days written notice to the other party. In addition, and notwithstanding the foregoing, if Dealer has sold of all of its new Motor Vehicle inventory on or before December 31, 2009 and wishes to terminate the Dealer Agreement prior to January 1, 2010, Dealer may request GM or the 363 Acquirer, as applicable, approve such termination and, absent other limiting circumstances, GM or the 363 Acquirer, as applicable, shall not unreasonably withhold its consent to such termination request, subject to the terms of this Agreement.

(b) Concurrently with its termination of the Dealer Agreement, Dealer hereby conveys to GM or the 363 Acquirer, as applicable, a non-exclusive right to use Dealer's customer lists and service records for the Subject Dealership Operations, and within ten (10) days following GM's or the 363 Acquirer's, as applicable, written request, Dealer shall deliver to GM or the 363 Acquirer, as applicable, digital computer files containing copies of such lists and records. Such right of use shall include without limitation the right to communicate with and solicit business and information from customers identified in such lists and records and to assign such non-exclusive right to third parties without thereby relinquishing its own right of use.

3. <u>Payment to Dealer</u>.

(a) Subject to Sections 1 and 2 above, in consideration of (i) Dealer's execution and delivery to GM of this Agreement, (ii) Dealer's agreement to sell its new Motor Vehicle inventory as set forth below, and (iii) the termination of the Dealer Agreement by written agreement in accordance with Section 14.2 thereof (as set forth in Section 2 of this Agreement), GM or the 363 Acquirer, as applicable, shall pay, or cause to be paid, to Dealer the sum of $723,572 (the "<u>Wind-Down Payment Amount</u>"), subject to the terms herein. This payment is consideration solely for Dealer's covenants, releases and waivers set forth herein, and Dealer's transfer to GM or the 363 Acquirer, as applicable, of a non-exclusive right to use the customer lists and service records.

(b) GM shall pay twenty-five percent (25%) of the Wind-Down Payment Amount (the "<u>Initial Payment Amount</u>") to Dealer by crediting Dealer's open account maintained by GM on the GM Dealer Payment System (the "<u>Open Account</u>"), in accordance with GM's standard practices, within ten (10) business days following the later of (i) GM's receipt of any required Bankruptcy Court approvals, or (ii) full execution and delivery of this Agreement. GM or the 363 Acquirer, as applicable, shall pay the balance of the Wind-Down Payment Amount (the "<u>Final Payment Amount</u>") to Dealer, subject to the terms of this Agreement, by crediting Dealer's Open Account in accordance with its standard practices, within ten (10) business days after all of the following have occurred: (i) Dealer has sold all of its new Motor Vehicle inventory for the Existing Model Line prior to the termination of the Dealer Agreement, (ii) Dealer's compliance with all applicable bulk transfer, sales tax transfer or similar laws and the expiration of all time

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593



PAGE 4/17 * RCVD AT 6/3/2009 11:06:28 AM [Pacific Daylight Time] * SVR:ECJFAX/2 * DNIS:6887 * CSID:9498887374 * DURATION (mm-ss):10-14

0005

EXHIBIT B

periods provided therein, (iii) Dealer's delivery to GM or the 363 Acquirer, as applicable, of certificates of applicable taxing authorities that Dealer has paid all sales, use, and other taxes or evidence reasonably satisfactory to GM or the 363 Acquirer, as applicable, that GM or the 363 Acquirer, as applicable, will have no liability or obligation to pay any such taxes that may remain unpaid, (iv) the effective date of termination of the Dealer Agreement in accordance with Section 2(a) above, (v) Dealer's compliance with the terms of Section 4(c) below, (vi) GM's or the 363 Acquirer's receipt of the fully executed Supplemental Wind-Down Agreement in substantially the form attached hereto as <u>Exhibit A</u> (subject to inclusion of information specific to Dealer's Dealership Operations), and (vii) GM's or the 363 Acquirer's, as applicable, receipt of any required Bankruptcy Court approvals. GM or the 363 Acquirer, as applicable, may, in its sole discretion, waive in writing any of the conditions for payment set forth in the preceding sentence.

(c) In addition to any other setoff rights under the Dealer Agreement, payment of all or any part of the Wind-Down Payment Amount may, in GM's or the 363 Acquirer's, as applicable, reasonable discretion, be (i) reduced by any amount owed by Dealer to GM or the 363 Acquirer, as applicable, or their Affiliates (as defined below), and/or (ii) delayed in the event GM or the 363 Acquirer, as applicable, has a reasonable basis to believe that any party has or claims any interest in the assets or properties of Dealer relating to the Subject Dealership Operations including, but not limited to, all or any part of the Wind-Down Payment Amount (each, a "<u>Competing Claim</u>"), in which event GM or the 363 Acquirer, as applicable, may delay payment of all or any part of the Wind-Down Payment Amount until GM or the 363 Acquirer, as applicable, has received evidence in form and substance reasonably acceptable to it that all Competing Claims have been fully and finally resolved.

4. <u>Complete Waiver of All Termination Assistance Rights</u>. In consideration of the agreements by GM hereunder, upon the termination of the Dealer Agreement, as provided in this Agreement, and cessation of the Subject Dealership Operations, the following terms shall apply in lieu of Dealer's rights to receive termination assistance, whether under the Dealer Agreement or applicable laws, all of which rights Dealer hereby waives:

(a) Neither GM nor the 363 Acquirer, as applicable, shall have any obligation to repurchase from Dealer any Motor Vehicles whatsoever.

(b) Neither GM nor the 363 Acquirer, as applicable, shall have any obligation to repurchase from Dealer any Parts or Accessories or Special Tools whatsoever.

(c) Dealer shall eliminate or remove from the Dealership Premises all Dealer-owned signs (freestanding or not) for the Subject Dealership Operations within thirty (30) days following the effective date of termination at no cost to the either GM or the 363 Acquirer, as applicable. Dealer understands and agrees that neither GM nor the 363 Acquirer, as applicable, will purchase any Dealer-owned signs used in connection with the Subject Dealership Operations. Dealer hereby waives any rights it may have to require either GM or the 363 Acquirer, as applicable, to purchase any signs used or useful in connection with the Subject Dealership Operations. Dealer shall provide, or shall cause the owner of the Dealership Premises to provide, GMDI access to the Dealership Premises in order for GMDI to remove all GM signs leased to Dealer by GMDI. Dealer understands and agrees that the Wind-Down Payment Amount was determined by GM in part based on Dealer's agreement that it will timely remove all signs for the Subject Dealership Operations and will not require or attempt to require GM or the 363 Acquirer, as applicable, to purchase any or all of such signs pursuant to the provisions of the Dealer Agreement or any applicable statutes, regulations, or other laws.

3

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593



0006

**EXHIBIT B**

(d) Dealer expressly agrees that the provisions of Article 15 of the Dealer Agreement do not, by their terms, apply to this termination.

(e) Dealer expressly agrees that all termination rights of Dealer are set forth herein and expressly agrees that any termination assistance otherwise available to Dealer as set forth in the Dealer Agreement or any state statute or regulation shall not apply to Dealer's termination of the Dealer Agreement.

(f) The terms of this Section 4 shall survive the termination of this Agreement.

5. <u>Release; Covenant Not to Sue; Indemnity</u>.

(a) Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the "<u>Dealer Parties</u>"), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreement), whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("<u>Claims</u>"), which Dealer or anyone claiming through or under Dealer may have as of the date of the execution of this Agreement against GM, the 363 Acquirer, their Affiliates or any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns (collectively, the "<u>GM Parties</u>"), arising out of or relating to (i) the Dealer Agreement or this Agreement, (ii) any predecessor agreement(s), (iii) the operation of the dealership for the Existing Model Line, (iv) any facilities agreements, including without limitation, any claims related to or arising out of dealership facilities, locations or requirements, Standards for Excellence ("<u>SFE</u>") related payments or bonuses (except that GM shall pay any SFE payments due Dealer for the second (2nd) quarter of 2009 and neither GM nor the 363 Acquirer, as applicable, shall collect any further SFE related payments from Dealer for the third (3rd) quarter of 2009 or thereafter), and any representations regarding motor vehicle sales or profits associated with Dealership Operations under the Dealer Agreement, or (v) any other events, transactions, claims, discussions or circumstances of any kind arising in whole or in part prior to the effective date of this Agreement, provided, however, that the foregoing release shall not extend to (x) reimbursement to Dealer of unpaid warranty claims if the transactions giving rise to such claims occurred within ninety (90) days prior the date of this Agreement, (y) the payment to Dealer of any incentives currently owing to Dealer or any amounts currently owing to Dealer in its Open Account, or (z) any claims of Dealer pursuant to Section 17.4 of the Dealer Agreement, all of which amounts described in (x) - (z) above of this sentence shall be subject to setoff by GM or the 363 Acquirer, as applicable, of any amounts due or to become due to either or any of its Affiliates. GM or the 363 Acquirer, as applicable, shall not charge back to Dealer any warranty claims approved and paid by GM or the 363 Acquirer, as applicable, prior to the effective date of termination and cancellation, as described in Section 2 above, after the later to occur of (A) the date six (6) months following payment, or (B) the effective date of termination and cancellation, except that GM or the 363 Acquirer, as applicable, may make charge-backs for false, fraudulent or unsubstantiated claims within two (2) years of payment.

(b) Dealer hereby acknowledges, understands and agrees that the foregoing release extends to, and is expressly intended by Dealer to extend to, all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected. In this regard, Dealer hereby

4

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593



PAGE 6/17 * RCVD AT 6/3/2009 11:06:28 AM [Pacific Daylight Time] * SVR:ECJFAX/2 * DNIS:6887 * CSID:9498887374 * DURATION (mm-ss):10-14

0007

EXHIBIT B

expressly waives the benefit, if any, to Dealer of Section 1542 of the California Civil Code, which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Dealer expressly assumes the risk that after the execution and delivery of this Agreement by Dealer, Dealer may discover facts which are different from those facts which Dealer believed to be in existence on the date hereof. Any such discovery by Dealer shall not affect the validity or effectiveness of the release contained herein.

(c) As set forth above, GM reaffirms the indemnification provisions of Section 17.4 of the Dealer Agreement and specifically agrees that such provisions apply to all new Motor Vehicles sold by Dealer.

(d) Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert (i) any Claim that is covered by the release provision in subparagraph (a) above or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreement or this Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement. As a result of the foregoing, any such breach shall absolutely entitle GM or the 363 Acquirer, as applicable, to an immediate and permanent injunction to be issued by any court of competent jurisdiction, precluding Dealer from contesting GM's or the 363 Acquirer's, as applicable, application for injunctive relief and prohibiting any further act by Dealer in violation of this Section 7. In addition, GM or the 363 Acquirer, as applicable, shall have all other equitable rights in connection with a breach of this Section 7 by Dealer, including, without limitation, the right to specific performance.

(e) Dealer shall indemnify, defend and hold the GM Parties harmless, from and against any and all claims, demands, fines, penalties, suits, causes of action, liabilities, losses, damages, costs, and expenses (including, without limitation, reasonable attorneys' fees and costs) which may be imposed upon or incurred by the GM Parties, or any of them, arising from, relating to, or caused by Dealer's (or any other Dealer Party's) breach of this Agreement or Dealer's execution or delivery of or performance under this Agreement. "Affiliate" means, with respect to any Person (as defined below), any Person that controls, is controlled by or is under common control with such Person, together with its and their respective partners, venturers, directors, officers, stockholders, agents, employees and spouses. "Person" means an individual, partnership, limited liability company, association, corporation or other entity. A Person shall be presumed to have control when it possesses the power, directly or indirectly, to direct, or cause the direction of, the management or policies of another Person, whether through ownership of voting securities, by contract, or otherwise.

(f) The terms of this Section 5 shall survive the termination of this Agreement.

5

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593



0008

**EXHIBIT B**

6. <u>Subject Dealership Operations.</u>  From the effective date of this Agreement until the effective date of termination of the Dealer Agreement (which shall not occur prior to January 1, 2010, subject to Section 2(a) above):

(a) Dealer shall not, and shall have no right to, purchase Motor Vehicles from GM or the 363 Acquirer, as applicable, which rights Dealer hereby waives.

(b) Dealer shall have the right to purchase service parts from GM or the 363 Acquirer, as applicable, to perform warranty service and other normal service operations at the Dealership Premises during the term of this Agreement. Dealer shall have no obligation, however, to follow the recommendations of GM's service parts operations' retail inventory management ("<u>RIM</u>") process, which recommendations are provided for guidance purposes only. Dealer's future orders of service parts of any kind (as well as service parts currently on hand and those acquired in the future from a source other than GM or the 363 Acquirer, as applicable), including but not limited to RIM-recommended orders, shall not be eligible for return.

(c) Dealer shall not, and shall have no right to, propose to GM or the 363 Acquirer, as applicable, (under Section 12.2 of the Dealer Agreement or otherwise) or consummate a change in Dealer Operator, a change in ownership, or, subject to GM's or the 363 Acquirer's, as applicable, option, a transfer of the dealership business or its principal assets to any Person; provided, however, that GM or the 363 Acquirer, as applicable, shall honor the terms of Section 12.1 of the Dealer Agreement upon the death or incapacity of the Dealer Operator, except that the term of any new dealer agreement under Subsection 12.1.5 shall expire on October 31, 2010, subject to the terms of this Agreement. Accordingly, neither GM nor the 363 Acquirer, as applicable, shall have any obligation (under Section 12.2 of the Dealer Agreement or otherwise) to review, process, respond to, or approve any application or proposal to accomplish any such change, except as expressly otherwise provided in the preceding sentence.

(d) In addition to all other matters set forth herein, the following portions of the Dealer Agreement shall not apply: Sections 6.1 and 6.3.1 (concerning ordering of new Motor Vehicles), Article 8 (Training), Article 9 (Review of Dealer's Performance), Sections 12.2 and 12.3 (Changes in Management and Ownership), Article 15 (Termination Assistance), and Article 16 (Dispute Resolution).

(e) Except as expressly otherwise set forth herein, the terms of the Dealer Agreement, shall remain unmodified and in full force and effect.

7. <u>No Protest.</u>

(a)  GM or the 363 Acquirer, as applicable, may desire to relocate or establish representation for the sale and service of the Existing Model Line in the vicinity of Dealer's Dealership Premises identified in the Dealer Agreement. In consideration of GM's and the 363 Acquirer's, as applicable, covenants and obligations herein, Dealer covenants and agrees that it will not commence, maintain, or prosecute, or cause, encourage, or advise to be commenced, maintained, or prosecuted, or assist in the prosecution of any action, arbitration, mediation, suit, proceeding, or claim of any kind, before any court, administrative agency, or other tribunal or dispute resolution process, whether federal, state, or otherwise, to challenge, protest, prevent, impede, or delay, directly or indirectly, any establishment or relocation whatsoever of a motor vehicle dealership for the Existing Model Line.

6

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593

PAGE 8/17 * RCVD AT 6/3/2009 11:06:28 AM [Pacific Daylight Time] * SVR:ECJFAX/2 * DNIS:6887 * CSID:9498887374 * DURATION (mm-ss):10-14

0009
EXHIBIT B

(b) Dealer, for itself and for each and all of the other Dealer Parties, hereby releases and forever discharges the GM Parties, from any and all past, present, and future claims, demands, rights, causes of action, judgments, executions, damages, liabilities, costs, or expenses (including, without limitation, attorneys' fees) which they or any of them have or might have or acquire, whether known or unknown, actual or contingent, which arise from, are related to, or are associated in any way with, directly or indirectly, the establishment or relocation of such Existing Model Line.

(c) Dealer hereby acknowledges, understands and agrees that the foregoing release extends to, and is expressly intended by Dealer to extend to, all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected. In this regard, Dealer hereby expressly waives the benefit, if any, to Dealer of Section 1542 of the California Civil Code, which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Dealer expressly assumes the risk that after the execution and delivery of this Agreement by Dealer, Dealer may discover facts which are different from those facts which Dealer believed to be in existence on the date hereof. Any such discovery by Dealer shall not affect the validity or effectiveness of the release contained herein..

(d) Dealer recognizes that it may have some claim, demand, or cause of action of which it is unaware and unsuspecting which it is giving up pursuant to this Section 7. Dealer further recognizes that it may have some loss or damage now known that could have consequences or results not now known or suspected, which it is giving up pursuant to this Section 7. Dealer expressly intends that it shall be forever deprived of any such claim, demand, cause of action, loss, or damage and understands that it shall be prevented and precluded from asserting any such claim, demand, cause of action, loss, or damage.

(e) Dealer acknowledges that, upon a breach of this Section 7 by Dealer, the determination of the exact amount of damages would be difficult or impossible and would not restore GM or the 363 Acquirer, as applicable, to the same position it would occupy in the absence of breach. As a result of the foregoing, any such breach shall absolutely entitle GM or the 363 Acquirer, as applicable, to an immediate and permanent injunction to be issued by any court of competent jurisdiction, precluding Dealer from contesting GM's or the 363 Acquirer's, as applicable, application for injunctive relief and prohibiting any further act by Dealer in violation of this Section 7. In addition, GM or the 363 Acquirer, as applicable, shall have all other equitable rights in connection with a breach of this Section 7 by Dealer, including, without limitation, the right to specific performance.

8. <u>Due Authority</u>. Dealer and the individual(s) executing this Agreement on behalf of Dealer hereby jointly and severally represent and warrant to GM that this Agreement has been duly authorized by Dealer and that all necessary corporate action has been taken and all necessary corporate approvals have been obtained in connection with the execution and delivery of and performance under this Agreement.

7

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593



0010

EXHIBIT B

9. <u>Confidentiality</u>. Dealer hereby agrees that, without the prior written consent of GM or the 363 Acquirer, as applicable, it shall not, except as required by law, disclose to any person (other than its agents or employees having a need to know such information in the conduct of their duties for Dealer, which agents or employees shall be bound by a similar undertaking of confidentiality) the terms or conditions of this Agreement or any facts relating hereto or to the underlying transactions.

10. <u>Informed and Voluntary Acts</u>. Dealer has reviewed this Agreement with its legal, tax, or other advisors, and is fully aware of all of its rights and alternatives. In executing this Agreement, Dealer acknowledges that its decisions and actions are entirely voluntary and free from any duress.

11. <u>Binding Effect</u>. This Agreement shall benefit and be binding upon the parties hereto and their respective successors or assigns. Without limiting the generality of the foregoing, after the 363 Sale occurs and provided that GM assigns the Dealer Agreement and this Agreement to the 363 Acquirer, this Agreement shall benefit and bind the 363 Acquirer.

12. <u>Effectiveness</u>. This Agreement shall be deemed withdrawn and shall be null and void and of no further force or effect unless this Agreement is executed fully and properly by Dealer and is received by GM on or before **June 12, 2009**.

13. <u>Continuing Jurisdiction</u>. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto. The terms of this Section 13 shall survive the termination of this Agreement.

14. <u>Other Agreements</u>.

(a) Dealer shall continue to comply with all of its obligations under Channel Agreements (as defined below) between GM and Dealer, provided that GM or the 363 Acquirer, as applicable, and Dealer shall enter into any amendment or modification to the Channel Agreements required as a result of GM's restructuring plan, in a form reasonably satisfactory to GM or the 363 Acquirer, as applicable. In the event of any conflict between the terms of the Channel Agreements and this Agreement, the terms and conditions of this Agreement shall control.

(b) The term "<u>Channel Agreements</u>" shall mean any agreement (other than the Dealer Agreement) between GM and Dealer imposing on Dealer obligations with respect to its Dealership Operations under the Dealer Agreement, including, without limitation, obligations to relocate Dealership Operations, to construct or renovate facilities, not to protest establishment or relocation of other dealerships, to conduct exclusive Dealership Operations under the Dealer Agreement, or to meet certain sales performance standards (as a condition of receiving or retaining payments from GM or the 363 Acquirer, as applicable, or otherwise). Channel Agreements may be entitled, without limitation, "Summary Agreement," "Agreement and Business Plan," "Exclusive Use Agreement," "Performance Agreement," "No-Protest Agreement," or "Declaration of Use Restriction, Right of First Refusal, and Option to Purchase." Notwithstanding the foregoing, the term "Channel Agreement" shall not mean or refer to (i) any termination agreement of any kind with respect to the Dealer Agreement between Dealer and GM (each a "<u>Termination Agreement</u>"), (ii) any performance agreement of any kind between Dealer and GM (each a "<u>Performance Agreement</u>"), or (iii) any agreement between Dealer (or any Affiliate of Dealer) and Argonaut Holdings, Inc., a Delaware corporation and wholly-owned subsidiary of GM ("<u>AHI</u>"), including, without limitation, any agreement entitled "Master Lease Agreement," "Prime Lease," or "Dealership Sublease" (and Dealer shall comply with all of the

8

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593



0011

EXHIBIT B

PAGE 10/17 * RCVD AT 6/3/2009 11:06:28 AM [Pacific Daylight Time] * SVR:ECJFAX/2 * DNIS:6887 * CSID:9498887374 * DURATION (mm-ss):10-14

Jun 03 2009 6:03PM    HP LASERJET FAX    9498887374    p.11

terms of such agreements with AHI). Dealer acknowledges that GM shall be entitled, at its option, to move to reject any currently outstanding Termination Agreements or Performance Agreements in the Bankruptcy Case. By executing this letter agreement, Dealer agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert any objection or protest of any kind with respect to GM's rejection of such Termination Agreements or Performance Agreements.

(c) All of the Channel Agreements shall automatically terminate and be of no further force or effect on the effective date of termination of the Dealer Agreement, except that those provisions that, by their terms, expressly survive termination of the Channel Agreements shall survive the termination contemplated under this Agreement. Following the effective date of termination of the Dealer Agreement, Dealer and GM shall execute and deliver documents in recordable form reasonably satisfactory to GM or the 363 Acquirer, as applicable, confirming the termination of any Channel Agreements affecting title to real property owned or leased by Dealer or Dealer's Affiliates.

15. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.

16. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which when signed by all of the parties hereto shall be deemed an original, but all of which when taken together shall constitute one agreement.

17. <u>Breach</u>. In the event of a breach of this Agreement by Dealer, GM and the 363 Acquirer shall each have all of its remedies at law and in equity, including, without limitation, the right to specific performance.

18. <u>Complete Agreement of the Parties</u>. This Agreement, the Dealer Agreement, and the schedules, exhibits, and attachments to such agreements (i) contain the entire understanding of the parties relating to the subject matter of this Agreement, and (ii) supersede all prior statements, representations and agreements relating to the subject matter of this Agreement. The parties represent and agree that, in entering into this Agreement, they have not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. No waiver, modification, amendment or addition to this Agreement is effective unless evidenced by a written instrument signed by an authorized representative of the parties, and each party acknowledges that no individual will be authorized to orally waive, modify, amend or expand this Agreement. The parties expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express provision requiring a writing signed by the parties.

*[Signature Page Follows]*

9

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593

0012

PAGE 11/17 * RCVD AT 6/3/2009 11:06:28 AM [Pacific Daylight Time] * SVR:ECJFAX/2 * DNIS:6887 * CSID:9498887374 * DURATION (mm-ss):10-14

**EXHIBIT B**

Jun 03 2009 6:04PM    HP LASERJET FAX    9498887374    p.12

IN WITNESS WHEREOF, Dealer and GM have executed this Agreement as of the day and year first above written.

Salas Automotive Group, Inc.

By: _____

Name: _____
Title: _____

**GENERAL MOTORS CORPORATION**

By _____

Authorized Representative

**THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009, OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN.**

10

13 THIS DOCUMENT SHALL BE NULL AND VOID IF NOT EXECUTED BY DEALER AND RECEIVED BY GM ON OR BEFORE JUNE 12, 2009 OR IF DEALER CHANGES ANY TERM OR PROVISION HEREIN

4035_13_217593

0013

**EXHIBIT B**

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

Michael S. Kogan (SBN 128500)
Peter F. Jazayeri (SBN 199626)
Ervin, Cohen & Jessup LLP
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212
(310) 281-6317; (310) 859-2325 FAX
Attorneys for Debtor

Order Entered on
June 24, 2009
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

**SALAS AUTOMOTIVE GROUP, INC. dba POWAY CHEVROLET,**

Debtor

| | |
|---|---|
| BANKRUPTCY NO. | 08-09311-JM11 |
| Date of Hearing: | June 17, 2009 |
| Time of Hearing: | 2:30 p.m. |
| Name of Judge: | James W. Meyers |

## ORDER ON

### *EMERGENCY* MOTION TO ENTER INTO WIND DOWN AGREEMENT WITH GENERAL MOTORS CORPORATION

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __2__ with exhibits, if any, for a total of __2__ pages, is granted. Motion/Application Docket Entry No. **254**

//

//

//

//

//

//

DATED: June 23, 2009

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

_____Ervin, Cohen & Jessup LLP_____
(Firm name)

By:____/s/ Michael S. Kogan_____
   Attorney for ☒ Movant ☐ Respondent
CSD 1001A

IDOCS:13230.1:874904.1

0014
**EXHIBIT B**

CSD 1001A [11/15/04]  (Page 2)                                  CASE NO. 08-09311-JM11
ORDER ON **EMERGENCY MOTION TO ENTER INTO WIND DOWN AGREEMENT WITH GENERAL MOTORS CORPORATION**
DEBTOR:   SALAS AUTOMOTIVE GROUP, INC. dba POWAY CHEVROLET

The motion of Debtor-In-Possession, Salas Automotive Group, Inc. dba Poway Chevrolet (the "Debtor") **EMERGENCY MOTION TO ENTER INTO WIND DOWN AGREEMENT WITH GENERAL MOTORS CORPORATION** (the "Motion") came before the Court. Pursuant to the Motion, the Debtor, moved the Court to approve the termination of its Dealer Sales and Service Agreement (the "Dealer Agreement"), and allowing General Motors Corporation ("GM") to assume and assign the Dealer Agreement in its own bankruptcy case, and pay the Debtor in installments the amount of $723,572.00 (the "GM Payments") for the wind down of the Debtors dealer operations for GM (the "Wind Down Agreement"), which is attached to the Motion as Exhibit "A" and incorporated herein by this reference. The Debtor did not receive any pleadings in opposition to the Motion..

The Court having read and considered the Motion, the Agreement, the declarations and evidence in support thereof, and there being no opposition filed in response to the Motion other than comments on the record of the hearing, and finding that notice and service of the Motion was proper, and for good cause appearing therefor,

IT IS ORDERED that:

1. The Motion is granted.

2. The Debtor is authorized to enter into the Wind Down Agreement, which is approved in all respects.

3. The Debtor is authorized to undertake any and all actions as are necessary to carry out the terms of this order and to perform all obligations under the Wind Down Agreement.

4. All payments received pursuant to the Wind Down Agreement from GM, shall be deposited into the Debtor's attorneys, Ervin Cohen & Jessup LLP's ("ECJ") client trust account, to be distributed by ECJ either pursuant to previous orders of the Court, or any orders entered by the Court subsequent to this order.

IDOCS:13230.1:874904.1

**0015**
**EXHIBIT B**

*Signed by Judge James W. Meyers June 23, 2009*