1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


MOTORS LIQUIDATION COMPANY, et al.,

f/k/a General Motors Corp., et al.,


       Debtors.


- - - - - - - - - - - - - - - - - - - -x


          U.S. Bankruptcy Court

          One Bowling Green

          New York, New York


          November 20, 2009

          9:50 AM


B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

2

1

2    Hearing re:  Motion of Certain Noteholders for an Order

3    Modifying the Bar Date Order to Provide that no Proofs of Claim

4    Need be Filed Related to Certain Guarantee Claims against

5    Motors Liquidation Company or, in the Alternative, Deeming this

6    Motion a Proof of Claim as to Such Claims, and for Related

7    Relief

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Hana Copperman

25

3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Debtors

5          767 Fifth Avenue

6          New York, NY 10153

7

8    BY:   STEPHEN KAROTKIN, ESQ.

9          RONIT J. BERKOVICH, ESQ.

10

11

12   KRAMER LEVIN NAFTALIS & FRANKEL LLP

13          Attorneys for Official Committee of Unsecured Creditors

14          1177 Avenue of the Americas

15          New York, NY 10036

16

17   BY:   LAUREN M. MACKSOUD, ESQ.

18

19   GREENBERG TRAURIG, LLP

20          Attorneys for Aurelius Capital Management, LP, et al.

21          MetLife Building

22          200 Park Avenue

23          New York, NY 10166

24

25   BY:   BRUCE R. ZIRINSKY, ESQ.

4

1

2     AURELIUS CAPITAL MANAGEMENT, LP

3          535 Madison Avenue

4          22nd Floor

5          New York, NY 10022

6

7     BY:   DENNIS A. PRIETO, ESQ.

8          (TELEPHONICALLY)

9

10    ONEX CREDIT PARTNERS

11         Creditor, Bondholder

12         910 Sylvan Avenue

13         Englewood Cliffs, NJ 07632

14

15    BY:   STUART R. KOVENSKY, CO-CHIEF INVESTMENT OFFICER

16         (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

5

P R O C E E D I N G S

1

2       THE COURT:  Have seats, please.  All right.  We have

3  GM and the motion of the seven entities for an order modifying

4  the bar date order.  Somebody communicated to my chambers that

5  there was some kind of settlement.

6       MR. KAROTKIN:  Yes, Your Honor.

7       THE COURT:  Whether or not I approve the settlement is

8  going to depend on the extent to which it gives the creditors'

9  committee substantially everything the creditors' committee was

10  looking for in its objection.  So I'll hear what you propose,

11  but I may need to hear this motion on the merits anyway.  Who's

12  here on behalf of the creditors' committee?

13       MS. MACKSOUD:  Good morning, Your Honor.  Lauren

14  Macksoud from Kramer Levin on --

15       THE COURT:  Your name again, please?

16       MS. MACKSOUD:  Lauren Macksoud

17       THE COURT:  Matsou?

18       MS. MACKSOUD:  Macksoud.  That's M-A-C-K-S-O-U-D.

19       THE COURT:  Forgive me.  Could you slow down and come

20  to a microphone.  I'm having trouble hearing you.

21       MS. MACKSOUD:  Good morning, Your Honor.  Lauren

22  Macksoud, M-A-C-K-S-O-U-D.

23       THE COURT:  I am sorry, Ms. Macksoud.

24       MS. MACKSOUD:  That's all right.

25       THE COURT:  Thank you.  All right.  I have a bunch of

6

1    questions, both about the motion, this settlement, and the 2019

2    that your firm filed, Mr. Zirinsky.  But why don't one of you

3    tell me what you want me to approve?

4        MR. ZIRINSKY:  Thank you, Your Honor.  Bruce Zirinsky,

5    Greenberg --

6        THE COURT:  Main lectern, please.

7        MR. ZIRINSKY:  Good morning, Your Honor.  Bruce

8    Zirinsky, Greenberg Traurig, on behalf of a number of

9    noteholders, including Aurelius Capital Management, L.P.,

10   Drawbridge Special Opportunities Advisors, LLC,

11   Fortress Credit Opportunities Advisors LLC, Appaloosa

12   Management L.P., Elliot Associates, LP, Perry Partners, L.P.,

13   and Perry Partners International, Inc.

14       Your Honor, I represent this group of holders of two

15   series of bonds issued by a subsidiary of General Motors, a

16   Nova Scotia subsidiary.  The notes are guaranteed by General

17   Motors Corporation, and we are here asking the Court, and, I

18   believe, we resolved the matter, but we are here asking the

19   Court to authorize a global proof of claim to be filed on

20   behalf of all noteholders on these two series of notes, based

21   upon the guarantees.  The reason for that is that unlike most

22   public notes there is no indenture trustee for these notes and

23   so there is no party or fiduciary who is authorized under the

24   indenture or required by law to file a global or a blanket

25   proof of claim on behalf of all holders.  The clients I

7

1    represent hold approximately two-thirds, perhaps more, in

2    amount.

3         THE COURT:  I counted three-quarters, Mr. Zirinsky.

4    Seventy-three and seventy-four percent, respectively.

5         MR. ZIRINSKY:  Okay.  In excess of two-thirds, Your

6    Honor.  The numbers Your Honor is reciting are correct.

7         Obviously we can file individual proofs of claim and

8    that's not why we're here.  Why we're here is that when we

9    contacted the paying agent for the bonds and requested that a

10   claim, a proof of claim, or proofs of claim be filed, the

11   response was that they were not authorized to do so.  They

12   would not file a proof of claim.

13        Obviously that creates an issue in that these notes

14   trade.  There is a market for these notes.  If some noteholders

15   file proofs of claim and others don't file proofs of claim it

16   creates an anomaly in the marketplace, because people won't

17   necessarily know which notes have actually attendant proofs of

18   claim that have been filed.

19        We also believe that based on the tenor, as we read

20   the Court's bar date order, the bar date order certainly does

21   provide room for situations of this type to be addressed

22   through a global proof of claim.  There is language in the bar

23   date order that does make reference to claims being filed by

24   indenture trustees, fiduciaries, or other parties on behalf of

25   holders of a series of debt similar to this.  We are also aware

8

1    that the Court has approved certain stipulations authorizing

2    one or more entities to file a global proof of claim on behalf

3    of numerous other creditors who may or may not have received

4    notice of the bar date.

5         Another reason we believe it's important for this type

6    of relief to be granted is that there is, or there may be,

7    confusion in the marketplace as to whether or not individual

8    noteholders need to file claims.  It is somewhat unusual where

9    noteholders do actually have to file individual proofs of claim

10   in order for those claims to be deemed timely filed.  In this

11   particular case there was an agreement, known as the lock-up

12   agreement, which was signed at the time GM was filing for

13   bankruptcy which provided for certain treatment of these

14   claims, both in terms of payments from the Canadian issuer

15   settlement of claims and to company claims as between the

16   Canadian issuer and GM Canada.  And there was a consent

17   solicitation conducted by public notice in London, I believe,

18   on June 21st or June 25th of this year in which notice was

19   given that the claims against GM would be deemed allowed claims

20   pursuant to the terms of that lock-up agreement.

21        THE COURT:  How did the notice go to the bondholders

22   other than those who are represented by your firm?

23        MR. ZIRINSKY:  It was sent out by the paying agent.

24        THE COURT:  Paying agent knew who the bondholders

25   were?

9

1        MR. ZIRINSKY:  Yes, they did.

2        THE COURT:  Do they still?

3        MR. ZIRINSKY:  I don't know.

4        THE COURT:  Go on.

5        MR. ZIRINSKY:  In any event, the only relief that

6   we're requesting, and I read the committee's objections, and

7   there are a number of issues that they raise which may or may

8   not be issues that are, at some point in time, going to have to

9   be heard by the Court.  But the only relief that we're

10  requesting in this motion is to have a proof of claim filed, or

11  deemed filed, for purposes of filing the claim and satisfying

12  the requirements of bar date.  We're not asking the Court to

13  rule on the allowance or the merits of the claims.  Indeed,

14  we've had discussions with counsel for the debtors and have

15  worked out an agreement whereby the moving parties would be

16  authorized, subject to the Court's approval, of course, whereby

17  the moving parties would be authorized to file global proofs of

18  claim for each of the two issues.  All parties, I understand

19  that the creditors' committee is satisfied and that's

20  acceptable to the creditors' committee, that the proofs of

21  claim would be filed.  Everybody would reserve all of their

22  rights as to any objections or claims with respect to those

23  claims filed on behalf of the noteholders.  But at least we

24  would satisfy the requirements that a proof of claim or proofs

25  of claim on behalf of noteholders actually be filed on a timely

10

1    basis in accordance with the Court's bar date order.

2        THE COURT:  Mr. Zirinsky, what's the standing that you

3    have to represent people who aren't your clients?

4        MR. ZIRINSKY:  I only represent my clients.  I don't

5    have standing to represent other clients.  I do believe,

6    however, that it is appropriate, as parties in interest, for my

7    clients to bring to the Court's attention the fact that there

8    are public noteholders who may not be aware of the need that

9    they have to file individual proofs of claim.

10       THE COURT:  If I heard you correctly, a notice was

11   given to them on or about the 25th of June providing them with

12   an opportunity to be heard.  I don't know the details as well

13   as you do vis-à-vis whatever had happened before.  I assume, if

14   I heard you right, that the bondholders were known at that

15   point in time.

16       MR. ZIRINSKY:  The bondholders are known, either

17   directly or by record holder named.  The individual bondholders

18   may or may not be known.

19       THE COURT:  Right.

20       MR. ZIRINSKY:  And we do not know to what extent

21   notice of the bar date has been disseminated to the noteholder

22   body at large.  We have no way of knowing that.

23       THE COURT:  How long would it have taken you to do a

24   proof of claim for each of the seven entities that you

25   represent?

11

1         MR. ZIRINSKY:  For us to do a proof of claim for the

2  seven entities, we can timely file proofs of claim for the

3  seven entities.  That's not the issue.

4         THE COURT:  So you're here on behalf of people you

5  don't represent?

6         MR. ZIRINSKY:  I'm here on behalf of a class of notes

7  that I don't represent.  That's correct.  But I'm also here to

8  bring to the Court's attention that there is a potential

9  inequitable result here where parties who may believe that they

10  have no need to file a proof of claim may be in a position

11  where their claims would be prejudiced as a result of the bar

12  date order, because there has not been clarity, as far as we

13  can tell, to the marketplace, that noteholders have to file

14  proofs of claim.

15         THE COURT:  You filed your motion on November 10th, if

16  I read the date correctly.  How long did it take you to prepare

17  the motion?

18         MR. ZIRINSKY:  Not very long.

19         THE COURT:  Day?

20         MR. ZIRINSKY:  A matter of --

21         THE COURT:  I'm not looking for the number --

22         MR. ZIRINSKY:  A matter of hours.

23         THE COURT:  A number of hours?

24         MR. ZIRINSKY:  A matter of hours.

25         There's another issue here, Judge, and that is that

12

1    the lock-up agreement, which was disseminated as part of the

2    materials for the June meeting in London, did provide, among

3    other things, that General Motors acknowledged the validity and

4    enforceability of the claims against GM on the guarantees of

5    these notes.

6         We had assumed, ourselves, that when GM filed

7    schedules that they would schedule the guarantee claims against

8    GM as undisputed.  In fact, the claims were scheduled as

9    contingent claims.  Not disputed, but contingent.  And, as a

10   consequence, that would require individual claims to be filed.

11   That would not be a deemed filing of the claims.  And it's

12   another reason why we're concerned about confusion.  There

13   could very well be individual holders who are just simply not

14   aware that they need to file individual proofs of claim, who

15   may be relying upon previous public statements by GM that these

16   claims are deemed allowed claims and valid claims in the

17   Chapter 11 case.  And so there is room for doubt in terms of

18   whether or not there has been sufficient clarity given to those

19   noteholders to file a claim, of the need to file a claim.

20        THE COURT:  And, Mr. Zirinsky, you were acting for

21   your clients in connection with that lock-up agreement.  Am I

22   correct?

23        MR. ZIRINSKY:  Yes, sir.

24        THE COURT:  Why does your 2019 then say that as of the

25   date of this statement, statement being dated November 9, your

13

1    firm was retained by each of the entities set forth on your

2    list?

3        (Pause)

4        MR. ZIRINSKY:  I'm sorry, Your Honor.  Which paragraph

5    are you referring to?

6        THE COURT:  One.

7        MR. ZIRINSKY:  I don't think it's intended to state

8    that we were retained as of that date.  It means that we were,

9    as of the date of the statement, we are retained.  It was not

10   intended to mean that that was the first time we were retained.

11   And if Your Honor were to read on --

12       THE COURT:  Mr. Zirinsky, it says "As of this date of

13   this statement GT was retained by each of the entities set

14   forth on Exhibits A and B".

15       MR. ZIRINSKY:  Correct.

16       THE COURT:  Doesn't it?

17       MR. ZIRINSKY:  Hum?

18       THE COURT:  And you're saying --

19       MR. ZIRINSKY:  Well, as of the date --

20       THE COURT:  You're saying that a reader, such as the

21   Court, of that statement should read that as saying that as of

22   the time you felt like filing the statement you were then a

23   counsel for your clients?

24       MR. ZIRINSKY:  No, I think, Your Honor, what it was

25   intended to state was that since this is the first time we've

14

1    appeared in this case on behalf of these clients, that's why

2    it's phrased the way it was.  We have been representing a

3    number of these clients since before the filing of the

4    bankruptcy.  Certain additional clients we were not retained

5    for until subsequent to the bankruptcy.  But we have been

6    representing certain of these clients since May of 2009.

7              THE COURT:  Leading to my next question.  Why wasn't

8    your 2019 filed on June 1st or June 2nd?

9              MR. ZIRINSKY:  We did not make an appearance in the

10   case at that time.

11             THE COURT:  Is that the way you read 2019, that when

12   you're acting for parties but you're not making a motion before

13   the Court or making an appearance that you're excused from the

14   requirements of 2019?

15             MR. ZIRINSKY:  My recollection of 2019, Your Honor, is

16   that it requires that any attorney appearing in a matter of

17   behalf of more than one client is required to file a 2019.

18             THE COURT:  Um-hum.

19             MR. ZIRINSKY:  This is our first appearance in this

20   case.

21             THE COURT:  Paragraph 4 of your 2019 says "The

22   specific nature and amounts of the claims held by the entities

23   will be determined and set forth and proofs of claim filed

24   against the debtors' estates".  Are you now asking to be

25   relieved from what you said in paragraph 4?

15

1          MR. ZIRINSKY:  No.

2          THE COURT:  And your 2019 doesn't disclose the

3    holdings of each of the entities in Exhibits A and B nor, of

4    course, the dates that they purchased their investments and the

5    prices at which they paid.  Were you monitoring the case when I

6    issued a ruling on exactly this subject vis-à-vis Mr. Richman's

7    clients?

8          MR. ZIRINSKY:  No, I was not, Your Honor.

9          THE COURT:  You and your firm were not monitoring this

10   case between the date you entered the lock-up and the date that

11   I held the 363 hearing?

12         MR. ZIRINSKY:  We have monitored certain aspects of

13   the case, Your Honor, but I'm not aware of the matter involving

14   Mr. Richman's clients.

15         THE COURT:  You're not aware of the fact that I

16   required Mr. Richman to comply with 2019 the way it was written

17   and that he ultimately did comply?

18         MR. ZIRINSKY:  Your Honor, we will certainly amend our

19   2019 to comply with whatever requirements the Court requires.

20   There's no intention here to hide any information from the

21   Court.  I think the holdings of each of our clients can readily

22   be set forth.  I think they're set forth in the motion, at

23   least in the aggregate, and we can certainly provide an

24   amendment to the 2019 to break down those amounts separately by

25   client.

16

1          THE COURT:  Do any of your clients have derivatives or

2     have short positions?

3          MR. ZIRINSKY:  Not to my knowledge.

4          THE COURT:  What's the deal you want me to approve?

5          MR. ZIRINSKY:  I would like Your Honor to enter an

6     order authorizing one or more of the movants to file a global

7     proof of claim in support of, or on behalf of, all holders of

8     the notes for both series of claims, just so that there is a

9     proof of claim on file with the Court, or two proofs of claim.

10    There are two series of notes.  That there are two proofs of

11    claim on file with the Court in the total amount of the debt

12    outstanding under the indenture.

13         THE COURT:  What knowledge do you have vis-à-vis the

14    approximately twenty-five percent of each issue that's not

15    represented by your firm?

16         MR. ZIRINSKY:  I have episodic knowledge that since we

17    filed this motion we've had telephone calls from two or three

18    other holders, from people who have purported to be other

19    holders, asking us about the motion and whether or not they

20    need to file proofs of claim individually.  We have told them

21    that we're not representing them but that depending on the

22    outcome of the hearing before the Court today and the Court's

23    ultimate determination on the motion they either will or will

24    not have to file individual proofs of claim in order to protect

25    themselves vis-à-vis the bar date order.

17

1    THE COURT:  I'll hear from other parties, starting

2    with the creditors' committee.

3    MS. MACKSOUD:  Good morning, Your Honor.  Lauren

4    Macksoud from Kramer Levin Naftalis & Frankel on behalf of the

5    creditors' committee.  Your Honor, we have originally put our

6    objection on file because we felt the noteholders' motion was

7    ambiguous with respect to whether they were seeking an allowed

8    proof of claim through the form of order.  The committee

9    outlined in the objection certain issues that had arisen

10   related to the lock-up agreement, and it simply stated the

11   committee was looking for additional time to investigate.  The

12   committee asked that the movants be required to file a proof of

13   claim in the ordinary course and that the committee be given

14   time during the claim process to object to any claim ultimately

15   filed.  Subject to reviewing the form of order that will be

16   entered between the debtors and the movants the committee has

17   no objection to entering into a stipulation allowing a global

18   proof of claim as described.

19   THE COURT:  Anything else?

20   MS. MACKSOUD:  That's all, Your Honor.

21   THE COURT:  All right.  Mr. Karotkin, I would like to

22   hear from you, but in addition to what you want to tell me I've

23   got a couple of questions for you.

24   MR. KAROTKIN:  Good morning, Your Honor.  Stephen

25   Karotkin, Weil, Gotshal & Manges, for the debtors.

18

1        THE COURT:  Mr. Karotkin, you know that I've got a

2   case management order in this case, don't you?

3        MR. KAROTKIN:  Yes, sir.

4        THE COURT:  Is there a reason why five and a half

5   months into the case I can't get compliance by your firm with

6   the case management order on matters as fundamental as putting

7   the return date on tops of motions, not starting a pleading

8   with five paragraphs of the history of the case, the case

9   management order having been drafted for the express purpose of

10  telling people that pleadings presented to me are not to be

11  done the Weil way, and they still seem to be done the Weil way.

12       MR. KAROTKIN:  Your Honor, I apologize for that, and

13  there is no excuse for that.  And I will see that it doesn't

14  happen again.

15       THE COURT:  Thank you.  Now speak to the merits.

16       MR. KAROTKIN:  Yes, Your Honor.  When we saw the

17  motion filed by Mr. Zirinsky's office we had some communication

18  with him as well as with the committee, and we told them, Mr.

19  Zirinsky, that we were not prepared to consent to all of the

20  relief requested, but we had no objection to allowing an

21  appropriate entity to file a global proof of claim on behalf of

22  all the noteholders because the fiscal agent, different from an

23  indenture trustee, as I'm sure you know, in the United States

24  the fiscal paying agent is an agent of the issuer of the notes

25  not an agent of the holder of the notes.  So rather than trying

19

1    to really, almost, result in tricking someone into not filing a

2    claim we had no objection to a claim being filed.  We know

3    those claims exist.  They were scheduled, as Mr. Zirinsky said,

4    as contingent, and we thought it was fair and appropriate to

5    allow the claim to be filed as long as all rights were reserved

6    on behalf of all parties in interest, including the creditors'

7    committee, to object to those claims.  And we did speak with

8    the creditors' committee at length about this after the motion

9    had been filed, and we were, of course, well aware of the fact

10   that they wanted to conduct an investigation, and, of course,

11   any proposed order that would be agreed to by the debtors would

12   also have to be agreed to by the creditors' committee.  And, of

13   course, a proposed order was circulated so that all parties

14   were happy with what would be presented to Your Honor for your

15   consideration.

16        So as far as we are concerned this is purely

17   administrative.  There really is no substantive right, and all

18   rights of the creditors' committee, as well as the debtors, are

19   reserved to file and prosecute any objections to these claims.

20        THE COURT:  All right.  Anybody who hasn't had a

21   chance to be heard the first time who wants to weigh in on

22   this?

23        MR. KAROTKIN:  Oh, may I say one other thing just

24   to --

25        THE COURT:  Yes.

20

1          MR. KAROTKIN:  I'm sorry, Your Honor.  There is a

2     statement in the pleading filed by the creditors' committee

3     that monies were transferred by General Motors, the debtors,

4     post-petition, in connection with these notes.  That is not the

5     case.  Any monies that were transferred up to Canada in

6     connection with these notes were transferred prior to the

7     filing date.

8          THE COURT:  So if there is a complaint it's a

9     preference or fraudulent conveyance of a pre-petition nature,

10    as contrasted to a 549 issue?

11         MR. KAROTKIN:  Well, there's certainly not a 549

12    issue.  Whatever else may exist may exist.

13         THE COURT:  An issue which will be determined with

14    full opportunity for people to be heard.

15         MR. KAROTKIN:  Absolutely, sir.

16         THE COURT:  All right.  Any reply?  Mr. Zirinsky?

17         MR. ZIRINSKY:  Your Honor, just for the record, I just

18    wanted to make it clear that it was never our intention on this

19    type of a motion to seek anything other than permission to have

20    a binded or global proof of claim filed.

21         As to issues that may be raised by the committee or

22    other parties with respect to the claims, I just want to make

23    it clear for the record that we obviously preserve all of our

24    rights.  We don't believe that there were any preferential

25    transfers or fraudulent transfers made by the GM estate.  Just

21

1    so Your Honor is aware, and, obviously, this is not an

2    evidentiary hearing, but the monies that were paid were paid

3    from GM Canada through the Nova Scotia entity and were done

4    with the full knowledge of the debtors, were actually observed

5    by the representatives of the Canadian government, and that

6    those transactions, at least in part, were responsible for

7    enabling General Motors Canada to avoid the necessity for

8    filing CCAA proceedings in Canada.

9           THE COURT:  All right.  Everybody had a chance to be

10   heard?  We're going to take a recess.  I want everybody back in

11   the courtroom at 10:30.

12          (Recess from 10:17 a.m. to 10:35 a.m.)

13          THE COURT:  Ladies and gentlemen, the motion is

14   granted in part and denied in part, to the extent and in the

15   manner described below.

16          It is granted, as set forth more below, for the

17   bondholders who are not represented by Greenberg Traurig, and

18   is denied as to the seven entities represented by Greenberg

19   Traurig and those entities who identified themselves to

20   Greenberg Traurig and who, thus, now can be identified.

21          I don't know the extent, if any, to which there are

22   any substantive issues here, and I'm going to say more than

23   once that I express no views as to those now, and I would be

24   the first to acknowledge that I don't know the relevant facts

25   with respect to the matters that were the expression of concern

22

1    by the creditors' committee.

2        But the requirement that a proof of claim be filed,

3    except where liability on the claim is acknowledged in both

4    concept and amount, is fundamental.  And because of the

5    potential 502(d) issues here and the possibility, and it may be

6    nothing more than a possibility, of other issues that I'm

7    unaware of, I think we need to do this by the book.  And that

8    includes, among other things, each claimant, to the extent the

9    claimant is known, providing all of the information that a

10    proof of claim form, Official Form 10, requires and satisfying

11    the requirements of Rule 9011 and other applicable law.

12        Mr. Zirinsky told me today that his clients certainly

13    can file proofs of claim, and in his 2019, at paragraph 4, he

14    told me the same thing, and, in fact, said that his clients

15    would lay out that information in proofs of claim.  I'm

16    paraphrasing it.  The exact language is in there, but I'm

17    confident that that's close enough.  So he can, and will, do

18    what he said.

19        There has not been any discussion orally, though I

20    read the papers, on the contention that their motion be

21    regarded as an informal proof of claim.  I have reviewed the

22    papers, and I consider contentions of that character

23    groundless.  As the creditors' committee observed in its

24    objection, an informal proof of claim can't be premeditated or

25    used as a knowing substitute for a proper one.  And it's

23

1    inconceivable to me that I, or any other bankruptcy judge,

2    would recognize an informal proof of claim knowing that the

3    claimant had chosen not to file a proper proof of claim.

4         So the seven entities represented by Greenberg Traurig

5    will file proofs of claim, and so will whatever entities

6    communicated with Greenberg Traurig and who, obviously, became

7    aware of the issue.  Greenberg Traurig will, however, be

8    authorized to file a group proof of claim, in form and

9    substance reasonably satisfactory to the creditors' committee,

10   for the unknown bondholders, which group proof of claim may be

11   on information and belief and with blanks where necessary with

12   due account for the fact that some information as to the absent

13   bondholders may be unknown.

14        The bar date will be extended for a period of twenty

15   days, subject to extension for another twenty days for cause,

16   to allow the supplemental mechanics to be implemented for the

17   absent bondholders.  The existing proof of claim deadline will

18   remain for those who are already known, including, most

19   obviously, the seven entities represented by Greenberg Traurig.

20   For the avoidance of doubt, when I say already known, because

21   you have to know for each person which we're talking about, I'm

22   talking about the seven entities listed on the 2019 and on the

23   motion, I think they're the same, plus the, I think the

24   expression I heard was one or two called us.  Whatever the

25   number who called were, they'll have to meet the existing

24

1    deadline as well.

2         MR. ZIRINSKY:  They do not have to.

3         THE COURT:  I beg your pardon?

4         MR. ZIRINSKY:  They will have an extension?

5         THE COURT:  No.  They can meet your extension, your

6    deadline.

7         MR. ZIRINSKY:  Your Honor, if I just may?  I don't

8    want to interrupt, Your Honor.  I don't represent those

9    entities.  I haven't taken on any representation of them, so I

10   have to reach out to them, and I would ask the Court to include

11   them in the extension.

12        THE COURT:  Fair enough, Mr. Zirinsky.  Give them the

13   extended period as well.

14        MR. ZIRINSKY:  Thank you.

15        THE COURT:  All right.  Lastly, Greenberg Traurig is

16   ordered to file a new 2019 within five business days, providing

17   all of the information for itself and each of the seven

18   entities it represents, individually by entity.  It's to be

19   modeled on the 2019 that was submitted by Mr. Richman or his

20   firm before the 363 hearing, when we dealt with this exact

21   issue before.  And the same rules that were held against Mr.

22   Richman or applied to Mr. Richman, I guess I should say, will

23   be applied here.

24        The revised 2019 is to include any information

25   necessary to make statements made therein not misleading.  I'm

25

1   going to look to the 2019 to be subject to the same types of

2   standards that we apply 10(b)(5) to, and I don't want ambiguous

3   language in there or language that suggests, by way of example,

4   that as of November 9, 2009 Greenberg Traurig was retained by

5   each of the entities set forth on those exhibits.

6        I will say once more that this is not an expression in

7   any way of any views on the merits of the underlying claims

8   allowance process.

9        I am so ordering the record because it may take a few

10  days to paper this ruling.  The creditors' committee is

11  authorized and directed to settle an order in accordance with

12  the foregone.  Two business days notice.  Am I correct that we

13  have no further business today in GM?

14       MR. KAROTKIN:  Yes, sir.

15       THE COURT:  All right.  We're adjourned.

16       (Proceedings concluded at 10:44 AM)

17

18

19

20

21

22

23

24

25

1

2                           I N D E X

3

4                            RULINGS

5                                Page        Line

6   Partial Granting and        21          14

7   Partial Denying of

8   Request to Modify the

9   Bar Date Order and to

10  not Require Filing of

11  Proofs of Claim

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1

2                        C E R T I F I C A T I O N

3

4      I, Hana Copperman, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      _____

8      HANA COPPERMAN

9      AAERT Certified Electronic Transcriber (CET**D-487)

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date: November 23, 2009

17

18

19

20

21

22

23

24

25