## IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS

| | | |
|---|---|---|
| BOYD BRYANT, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| PLAINTIFFS; | § § § | |
| VS. | § § | NO. CV-2005-51-2 |
| GENERAL MOTORS CORPORATION D/BA/ CHEVROLET, GMC, CADILLAC, BUICK AND OLDSMOBILE, | § § § § | |
| DEFENDANT. | § § | |

### FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW BOYD BRYANT, Plaintiff, on behalf of himself and all others similarly situated, and files his First Amended Class Action Complaint against General Motors Corporation, Defendant, and respectfully alleges the following:

### I.

### Introduction

1.    Plaintiff seeks certification of this action as a class action under Ark. R. Civ. P. 23.

2.    Defendant General Motors Corporation ("GM") sold nearly 4,000,000 model year 1999 through 2002 pickup trucks and sport utility vehicles. These vehicles contain parking brakes whose linings, due to a defectively designed high force spring clip, do not adequately float inside the parking brake drums. This failure, alone, is problematic and harms Plaintiff and Class members. But inadequate lining float, by GM's own admission, also causes the parking brakes to "self-energize" and experience excessive lining wear after only 2,500 to 6,000 miles in use. GM discovered this defect in late 2000 and redesigned the defective spring clip in October 2001. GM withheld from dealers admission of responsibility for the defect until January 28,

2003. This permitted GM to avoid paying millions of dollars in warranty claims. In 2005 GM

recalled 1999-2002 manual-transmission trucks with the defective parking brakes. The recall,

however, was premised on an illusory distinction between manual and automatic-transmission

vehicles, only involved about 60,000 manual-transmission trucks, and did not cover the nearly

4,000,000 automatic-transmission vehicles owned by Plaintiff and class members.

3.    The purpose of this action, once certified as a class action, is to right these wrongs GM

has done to Plaintiff Boyd Bryant ("Plaintiff"), a resident of Fouke, Arkansas, and millions of

American truck and sport-utility owners just like him.

## II.

### Class Description

4.    Under Ark. R. Civ. P. 23 Plaintiff seeks certification of the following class of GM

vehicle owners ("the Class members" or "the Class"):

> *Any "owner" or "subsequent owner" of 1999-2002 1500 Series pickups and*
> *utilities originally equipped with an automatic transmission and a PBR 210x30*
> *Drum-in-Hat parking brake system utilizing a high-force spring clip retainer[1],*
> *that registered his vehicle in any state in the United States.*

Excluded from the Class are the following individuals or entities:

>    a.    Individuals or entities, if any, who timely opt out of this proceeding using
> the correct protocol for opting out that will be formally established by the Court;

---

[1]    In each and every class definition in this document, the term "1999-2002 1500 Series pickups and utilities originally equipped with an automatic transmission and a PBR 210x30 Drum-in-Hat parking brake system utilizing a high-force spring clip retainer" is referring to the following GM model-year and model-coded vehicles equipped with automatic transmissions:

| | |
|---|---|
| 1500 Series Pickup: | C-K15703 (MY 99-02) |
| | C-K15753 (MY 99-02) |
| | C-K15903 (MY 99-02) |
| | C-K15953 (MY 99-02) |
| 1500 Series Utility: | C-K15706 (MY 00-02) |
| | C-K15906 (MY 00-02) |
| | C-K15936 (MY 02 only) |

b.      Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

c.      Any currently sitting Arkansas state court judge or justice in the current style and/or any persons within the third degree of consanguinity to such judge or justice;

d.      Any person who has given notice to GM, by service of litigation papers or otherwise, and alleged he or she has suffered personal injury or collateral property damage due to an alleged defect in any braking component, including the parking brake, in 1999-2002 1500 Series pickups and utilities originally equipped with an automatic transmission and a PBR 210x30 Drum-in-Hat parking brake system utilizing a high-force spring clip retainer;

e.      Any person, "owner", or "subsequent owner" whose GM vehicle was included in GM's July 2005 recall bulletin No. 05042, or any supplements or amended versions of that bulletin issued during 2005.

5.      In the unlikely event the Court determines it is not appropriate to certify classes or subclasses that include citizens of states other than Arkansas as class members, Plaintiff alternatively seeks certification of an Arkansas-only class.

### III.

### Parties

6.      The named Plaintiff, Mr. Boyd Bryant ("Plaintiff"), is a resident of the State of Arkansas, residing in Miller County, Arkansas at all times relevant to this action.

7.      Defendant General Motors Corporation ("Defendant" or "GM") is a Delaware corporation licensed to do business in the State of Arkansas and who may be served with process through its registered agent, The Corporation Company, 425 West Capitol Ave., Suite 1700, Little Rock, Arkansas 72201.  GM has answered and made an appearance herein such that no additional service is necessary or requested.

## IV.

### Jurisdiction and Venue

8.     This Court has jurisdiction over this action and venue is proper because GM does business and markets its products within Miller County, Arkansas; Mr. Bryant, the named Plaintiff, is a resident of Miller County, Arkansas; and Mr. Bryant sustained the damages and harm as alleged herein in Miller County, Arkansas.

9.     **NOTICE OF NON-REMOVABILITY:**   There is no basis for federal-question jurisdiction.  Plaintiff specifically excludes any cause of action which would create federal question jurisdiction and make this case removable on that basis.  The amount in controversy as to each Plaintiff and each member of the class is less than $75,000.00, exclusive of interest and costs.  Accordingly, this matter is not removable on the basis of complete diversity.  Neither is this matter removable on the basis of the Class Action Fairness Act of 2005 ("CAFA"), for it was clearly "commenced" before CAFA's February 18, 2005 "date of enactment".  *Plubell v. Merck & Co.*, 434 F.3d 1070 (8ᵗʰ Cir. 2006) (holding that amended pleading did not "commence" a new action for the purposes of CAFA because the claims were exactly the same in both pleadings and the replacement representative was a member of the putative class in the original pleading);  *Weekley v. Guidant Corp.*, 392 F. Supp. 2d 1066 (E. D. Ark. 2005)("A civil action, viewed as the whole case, the whole proceeding, can only be commenced once."); *Hot Spring County Solid Waste Auth. v. UnitedHealth Group*, Civil No. 05-6065, 2006 U.S. Dist. LEXIS 10028 (January 13, 2006, E.D. Ark.) (citing *Weekley* with approval).

       Any attempt by GM to remove this case would be frivolous and will force Plaintiff to seek sanctions and costs.

## V.

### General Factual Allegations

10.    GM manufactured and sold through dealers in Arkansas and throughout the United States 3,905,481 of the following model-year and model-coded 1999-2002 pickup trucks and sport-utility vehicles, which GM collectively describes as "1500 Series pickups and utilities"[2]:

| 1500 Series Pickup: | C-K15703 (MY 99-02) |
| | C-K15753 (MY 99-02) |
| | C-K15903 (MY 99-02) |
| | C-K15953 (MY 99-02) |
| | |
| 1500 Series Utility: | C-K15706 (MY 00-02) |
| | C-K15906 (MY 00-02) |
| | C-K15936 (MY 02 only) |

11.    The parking brakes originally installed on 1999-2002 1500 Series pickups and utilities are defectively designed in that they utilize high force spring clip retainers which prevent the parking brake linings from adequately floating inside the parking brake drums. The inability of the linings to adequately float is harmful to Plaintiff and Class members, and is something that occurs or manifests itself each time GM's 1500 Series pickups and utilities are operated.

12.    By GM's own admission, the inability of the brake linings to adequately float can further lead to a condition whereby the parking brake "self-energizes." This, in turn, creates lining-wear-out and/or loss of parking brake hill-hold capability at excessively low mileage levels.

13.    GM has admitted defect-related lining wear occurs at a mere 2,500 to 6,000 miles in use. The component manufacturer of the parking brake has noticed that at 10,048 miles the defective parking brakes need a first adjustment and that at 27,273 miles their linings wear to steel. It has also estimated the lining life of the defective parking brakes to be 30,000 to 35,000 miles, which

---

[2]        Plaintiff will refer to these vehicles, which are the class vehicles, as "1999-2002 1500 Series pickups and utilities" throughout this amended complaint.

is only 1/5 of the expected life of 1999-2002 1500 Series pickups and utilities, and before

expiration of the identically-worded 36,000 mile written limited warranty provided by GM to all

purchasers of 1999-2002 1500 Series pickups and utilities.

14.    GM does not list parking brake linings as "wear out items" in their vehicle technical

specifications.

15.    GM had actual notice, or at the very least constructive notice, of the parking brake

defects in Class vehicles as early as late 2000, well before this lawsuit was filed. Plaintiff and

Class members provided additional notice of their defective parking brakes to GM by filing this

lawsuit, or by complaining to GM directly, or to GM dealer-warranty repair agents, that their

parking brakes are defective and need repair. Plaintiff and Class members have otherwise fully

complied with and satisfied all conditions precedent, if any, to maintaining this action against

GM.

16.    GM implemented a production fix for the defect – a "reduced force spring clip retainer"

– on or about October 19, 2001. This fix was incorporated into the design of model-year 2003

1500 Series pickups and utilities.

17.    For existing 1999-2002 1500 Series pickups and utilities with the parking brake defects,

however, GM delayed another year -- until September 17, 2002 -- to release a repair kit

containing, among other things, a "reduced force spring clip retainer".

18.    In the technical service bulletin documenting the release of that kit, GM noted, ""[a] rear

parking brake retaining spring clip kit has been released for service." Significantly, however, it

also cautioned "Important – The spring clip kits mentioned in this bulletin do not address any

parking brake concerns." This, of course, was code for "GM doesn't want to pay for these

spring clip kits under its warranty, so don't tell your customers GM thinks it may be responsible for these parking brake failures."

19.     On January 28, 2003 – some two years after receiving notice of the parking brake defect – GM published technical service bulletin 02-05-26-002A and sent it to dealers.  It was in this bulletin that GM first acknowledged to outside entities such as dealers its responsibility for the defect, noting the scraping noise from the rear of vehicles "may [sic] due to the parking brake shoe contacting the drum in hat rotor without the parking brake being applied, causing premature wear on the shoe lining."

20.     After another two years went by GM, in July 2005, conducted a recall related to the defective parking brake.  The recall, however, was suspiciously narrow in scope, involving only 63,497 model year 1999-2002 1500 Series pickups and utilities equipped with manual transmissions.

21.     The 3,905,481 automatic transmission versions of those vehicles – the subject of this class action – have been and are still ignored by GM.  To this day GM refuses to acknowledge any problem in 1999-2002 1500 Series pickups and utilities equipped with automatic transmissions.

22.     GM's spin, it seems, is that functional parking brakes aren't really necessary to operate automatic-transmission vehicles. However, Federal Motor Vehicle Safety Standards (FMVSS) require functional parking brakes on all types of vehicles.

23.     In addition, applicable GM owners' manuals are rife with warnings that parking brakes be used to supplement the hill-holding capabilities of the vehicles' automatic transmission.

24.     In fact, GM's own technical specifications for 1999-2002 1500 Series pickups and utilities specify the park brake *shall* hold the vehicle stationary at Gross Vehicle Weight (GVW)

with the transmission in neutral; that the parking brake must enable and endure a total of 20 simulated police style U-turns without loss of function; and that the parking brake must enable and endure four (4) dynamic stops at 60 mph without loss of function.

25.     Despite GM's orchestrated spin that parking brakes aren't really necessary in class vehicles, it is obvious that they are.

## VI.

### Factual Allegations: Plaintiff Boyd Bryant

26.     On April 4, 2002 Plaintiff purchased and took delivery of a new 2002 Chevrolet Tahoe Z-71, VIN 1GNEK13282R268414 ("the Bryant vehicle") from Tom Morrick Chevrolet, Inc. in Ashdown, Arkansas. Plaintiff still owns the Bryant vehicle.

27.     During his ownership of the Bryant vehicle Plaintiff used the parking brake a relatively few number of times.

28.     The Bryant vehicle is a class vehicle in that it falls within the description of 1999 through 2002 model year 1500 Series pickups and utilities equipped with automatic transmissions.

29.     The Bryant vehicle was originally equipped with a PBR 210x30 Drum-in-Hat park brake system utilizing the defective high-force spring clip retainers. The Bryant vehicle is still equipped with a PBR 210x30 Drum-in-Hat park brake system utilizing the defective high-force spring clip retainers.

30.     The parking brake lining thickness on the Bryant vehicle, in at least one place on the passenger side, is less than 1.5 millimeters (.06 inches).

31.    In addition, the parking brake on the Bryant vehicle has been tested for hill hold capability.  With the parking brake fully depressed and the transmission in neutral, the Bryant vehicle rolls on both steep and nominal hills or grades.

32.    The parking brake on the Bryant vehicle is defectively designed, does not permit adequate lining float each time Mr. Bryant uses his vehicle, and exhibits additional characteristics of the parking brake defect referenced throughout this complaint.

## VII.

### Causes of Action: Plaintiff Boyd Bryant and the Class

**a.    Breach of Express Warranty.**

33.    The allegations set forth in paragraphs 1-32 herein are incorporated into this section by reference as if set forth verbatim.

34.    Plaintiff owns the Bryant vehicle and has since April 4, 2002.   The Bryant vehicle is registered in Arkansas and is operated in the United States.  The Class members each own 1999-2002 1500 Series pickups and utilities equipped with automatic transmissions.  They have registered those vehicles in various states throughout the United States.

35.    Plaintiff is the recipient of a bumper-to-bumper express warranty from GM that has a warranty coverage period of 3 years or 36,000 miles, whichever occurs first.  The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty coverage period.  With their vehicle purchases the Class members all received identical bumper-to-bumper express warranties from GM.

36.    This express warranty became part of the basis of the bargain in the course of Plaintiff purchasing the Bryant vehicle, and in the course of Class members purchasing 1999-2002 1500 Series pickups and utilities.

37.    At the time of purchase and delivery the Bryant vehicle had a defective parking brake. The defect is still present and manifests itself each time the Bryant vehicle is driven.  At the time of purchase and delivery the parking brakes in 1999-2002 1500 Series pickups and utilities owned by Class members were all defective.  The parking brake defects are still present and manifest themselves each time Class members drive their vehicles.

38.    The defect in the Bryant vehicle's parking brake – the lack of adequate lining float caused by the improperly designed high-force spring clip – has also resulted in the parking brake losing hill hold capability during the 3 year or 36,000 mile warranty coverage period.  To this day the parking brake will not hold on a hill or grade.  The defect in the parking brakes in 1999-2002 1500 Series pickups and utilities owned by Class members has also caused many of them to lose hill hold capability during the 3 year or 36,000 mile warranty coverage periods applicable to them.

39.    The defective parking brakes obligated GM to provide warranty remedies under the terms of the bumper-to-bumper express warranty from GM that Plaintiff and Class members acquired upon purchase of their vehicles.

40.    GM has breached the bumper-to-bumper express warranty from GM by not making repairs as it is obligated to do.

41.    The circumstances – among others, GM's intentional delay and withholding information regarding the parking brake defect from its dealers and Plaintiff – have caused any exclusive or limited remedy in the GM bumper-to-bumper limited warranty document to fail of its essential purpose.

42.    GM's breach of the bumper-to-bumper express warranty caused or proximately caused damages to Plaintiff and the Class members as set forth below.

**b.    Breach of Implied Warranty of Merchantability.**

43.    The allegations set forth in paragraphs 1-42 herein are incorporated into this section by reference as if set forth verbatim.

44.    Plaintiff owns the Bryant vehicle and has since April 2, 2002.    The Bryant vehicle is registered in Arkansas and is operated in the United States.  Plaintiff, its purchaser and owner, is someone that would reasonably be expected to use the Bryant vehicle.  Class members own 1999-2002 1500 Series pickups and utilities.    These vehicles are all operated in the United States.  Class members are individuals or entities that would reasonably be expected to use these vehicles.

45.    Plaintiff, upon purchase and delivery of the Bryant vehicle, received an implied warranty of merchantability from GM that the Bryant vehicle is fit for the ordinary purposes for which it is used.  Likewise, Class members, upon purchase and delivery of their 1999-2002 1500 Series pickups and utilities, received an implied warranty of merchantability from GM that their vehicles would be fit for the ordinary purposes for which they are used.

46.    At the time of purchase and delivery the Bryant vehicle had a defective parking brake. The defect is still present and manifests itself each time the Bryant vehicle is driven.  At the time of purchase and delivery the parking brakes in 1999-2002 1500 Series pickups and utilities owned by Class members were all defective.  The parking brake defects are still present and manifest themselves each time Class members drive their vehicles.

47.    The defect in the Bryant vehicle's parking brake – the lack of adequate lining float caused by the improperly designed high-force spring clip – has also resulted in the parking brake losing hill hold capability during the 3 year or 36,000 mile warranty coverage period.  To this day the parking brake will not hold on a hill or grade.  The defect in the parking brakes in

1999-2002 1500 Series pickups and utilities owned by Class members has also caused many of them to lose hill hold capability during the 3 year or 36,000 mile warranty coverage periods applicable to them.

48.    The defective parking brakes obligated GM to provide warranty remedies under the terms of the implied warranty of merchantability from GM that Plaintiff and Class members acquired upon purchase of their vehicles.

49.    The defect in the parking brake renders the Bryant vehicle and vehicles owned by Class members unfit for the ordinary purposes for which they are used. GM thus has breached its implied warranty of merchantability to Plaintiff and Class members.

50.    The circumstances – among others, GM's intentional delay and withholding information regarding the parking brake defect from its dealers, Plaintiff and Class members – have caused any exclusive or limited remedy in the GM bumper-to-bumper limited warranty document to fail of its essential purpose.

51.    GM's breach of the implied warranty of merchantability caused or proximately caused damages to Plaintiff and the Class members as set forth below.

**c.    Violation of Magnuson-Moss Warranty Act ("MMWA") – 15 U.S.C. §2301 *et seq.***

52.    The allegations set forth in paragraphs 1-51 herein are incorporated into this section by reference as if set forth verbatim.

53.    Plaintiff and Class members are "buyer[s]" and/or "consumer[s]" as those terms are defined in 15 U.S.C. §2301(3) in that they purchased other than for purposes of resale consumer products: the Bryant vehicle and/or 1999-2002 1500 Series pickups and utilities.

54.    GM is both a "supplier" and/or "warrantor" of the Bryant vehicle and/or 1999-2002 1500 Series pickups and utilities as those terms are defined in 15 U.S.C. §2301(4) and (5), and 15 U.S.C. §2310(f).

55.    GM issued a "written warranty" (as defined in 15 U.S.C. §2301(6)) to Plaintiff and Class members in connection with their vehicle purchases.  This written warranty became part of the basis of the bargain with respect to Plaintiff's purchase of the Bryant vehicle, and Class members' purchases of 1999-2002 1500 Series pickups and utilities.

56.    GM provided Plaintiff an "implied warranty" (as defined in 15 U.S.C. §2301(7)) in connection with Plaintiff's purchase of the Bryant vehicle and Class members' purchases of 1999-2002 1500 Series pickups and utilities.

57.    At the time of purchase and delivery the Bryant vehicle had a defective parking brake.  The defect is still present and manifests itself each time the Bryant vehicle is driven.  At the time of purchase and delivery the parking brakes in 1999-2002 1500 Series pickups and utilities owned by Class members were all defective.  The parking brake defects are still present and manifest themselves each time Class members drive their vehicles.

58.    The defect in the Bryant vehicle's parking brake – the lack of adequate lining float caused by the improperly designed high-force spring clip – has also resulted in the parking brake losing hill hold capability during the 3 year or 36,000 mile warranty coverage period.  To this day the parking brake will not hold on a hill or grade.  The defect in the parking brakes in 1999-2002 1500 Series pickups and utilities owned by Class members has also caused many of them to lose hill hold capability during the 3 year or 36,000 mile warranty coverage periods applicable to them.

59.    Because of these defective parking brakes, GM has failed to comply with both its written warranty and implied warranty to Plaintiff and Class members. These failures to comply create MMWA causes of action in favor of Plaintiff and Class members under 15 U.S.C. §2310(d).

60.    Because GM has issued a written warranty warranting a consumer product to Plaintiff and Class members, it has further obligated itself to comply with the Federal minimum standards for warranty set forth in 15 U.S.C. §2304. Compliance would include, but is not limited to: "remedy[ing] such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty." 15 U.S.C. §2304(a)(1).

61.    Due to the defective parking brake, and GM not having remedied it within a reasonable time, GM has not complied with Federal minimum standards for warranty under 15 U.S.C. §2304(a)(1). This failure to comply creates a cause of action in favor of Plaintiff and Class members under 15 U.S.C. §2310(d).

62.    GM's failures to comply with a written warranty, with an implied warranty, and with Federal minimum standards for warranty under 15 U.S.C. §2304(a)(1) all caused or proximately caused damages to Plaintiff and the Class members as set forth below, thereby entitling Plaintiff and Class members to, without limitation, both compensatory damages and recovery of reasonable attorney fees.

**d.    Unjust Enrichment.**

63.    The allegations set forth in paragraphs 1-62 herein are incorporated into this section by reference as if set forth verbatim.

64.    By concealing the defective parking brake and responsibility for it from vehicle owners, dealers, and prospective vehicle purchasers until January 28, 2003, at the earliest, GM unjustly

enriched itself at the expense of Plaintiff and Class members, all of whom, under those warranties, were entitled to have the defective parking brake repaired or otherwise remedied.

65.     Because of this unjust enrichment, GM should be disgorged of amounts wrongfully retained and/or required to make restitution to Plaintiff and Class members of benefits received, retained or appropriated.

66.     Such restitution of benefits received, retained or appropriated would be just and equitable.

67.     Pleading in the alternative, Plaintiff and Class members have no adequate remedy at law, thus making his assertion of unjust enrichment all the more appropriate.

**e.      Fraudulent Concealment/Failure to Disclose.**

68.     The allegations set forth in paragraphs 1-67 herein are incorporated into this section by reference as if set forth verbatim.

69.     GM concealed the defective parking brake and responsibility for it from vehicle owners, dealers, and prospective vehicle purchasers until January 28, 2003, at the earliest.

70.     Given the circumstances, GM owed a duty to Plaintiff and Class members to speak and fully inform them of the nature of the parking brake defect, and GM's responsibility for it under both express and implied warranties Plaintiff and Class members had acquired in conjunction with purchasing the Bryant vehicle and/or 1999-2002 1500 Series pickups and utilities.

71.     GM's failure to speak to Plaintiff and Class members is equivalent to a fraudulent concealment and amounts to fraud just as much as an affirmative falsehood.

72.     GM's fraudulent concealment caused or proximately caused damages to Plaintiff and Class members as set forth below.

73.    GM's fraudulent concealment also operates to equitably toll the limitations period applicable to all causes of action asserted by Plaintiff and Class members herein.

## VIII.

### Class Action Allegations

74.    The allegations set forth in paragraphs 1-73 herein are incorporated into this section by reference as if set forth verbatim.

75.    The class as defined herein – involving owners of 3,905,481 automatic transmission vehicles -- is so numerous that joinder of all members is impracticable.  Ark. R. Civ. P. 23(a)(1).

76.    There are questions of law or fact common to the class, such as, but without limitation:

**BREACH OF EXPRESS WARRANTY:** Whether, based on the terms of GM's written limited warranty, the design flaw in the parking brakes in class vehicles constitutes a "vehicle defect related to materials or workmanship occurring during the Warranty Period."

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY:** Whether the design flaw in the parking brakes on class vehicles has rendered those vehicles "not fit for [their] ordinary purpose."

**MAGNUSON-MOSS WARRANTY ACT:** Whether GM, by virtue of the parking brake's defective design, has failed to comply with its own "written warranty" or an "implied warranty."

**UNJUST ENRICHMENT:** Whether GM, by defectively designing the parking brake and concealing the defect to avoid paying warranty claims, has unjustly retained benefits that it should restore to Plaintiff and Class members.

**FRAUDULENT CONCEALMENT:** Whether GM, once it acquired knowledge of the parking brake's defect in late 2000, was clothed with a duty to speak to existing owners of class vehicles so they could obtain warranty relief.  In addition, whether GM, once it acquired knowledge of the parking brake's defect in late 2000, owed a duty to speak to prospective purchasers of class vehicles, alerting them to the existence of the defect.

**DAMAGES:** Whether Plaintiff and Class members have suffered and are entitled to damages.

**RESTITUTION:**    Whether Plaintiff and Class members are entitled to restitution based on, without limitation, GM's unjust-enrichment-related misconduct and/or having previously paid for repairs to the defective parking brakes.

Accordingly, the commonality requirement is satisfied.  Ark. R. Civ. P. 23(a)(2).

77.    The claims and defenses of the representative party, Plaintiff Boyd Bryant, are typical of the claims or defenses of Class members.  Ark. R. Civ. P. 23(a)(3).

78.    Plaintiff Boyd Bryant will fairly and adequately protect the interests of Class members. Ark. R. Civ. P. 23(a)(4).  Representative counsel are qualified, experienced and can generally conduct this class-action litigation.  There is no evidence of collusion or conflicting interest between Plaintiff Boyd Bryant and the Class members.  Finally, Plaintiff has reviewed the original and amended pleadings in this matter, and understands the allegations against GM. Plaintiff has also educated himself on a general level concerning GM's business and engineering practices that are the subject of this litigation.  Plaintiff is very much interested in obtaining relief for himself and class members both in Arkansas and throughout the United States.  He has stayed in touch with representative counsel during this litigation, understands his duties as a class representative, and is willing to comply with them.  He is not at all reluctant to assist with discovery requests, participate in oral discovery, and generally assist representative counsel with the decisions that need to be made during the course of this litigation.

79.    Questions of law or fact common to Class members predominate over any questions affecting only individual members.  Ark. R. Civ. P. 23(b).  A common, overarching factual or legal inquiry, especially one centered on the defendant's breach of a uniform obligation to class members or its fraudulent conduct affecting the class, will satisfy Rule 23(b)'s predominance requirement.  Moreover, an overarching factual or legal inquiry creates predominance, even

though individual issues concerning matters such as class-member knowledge, detrimental reliance or damages may exist.

80.    GM's defectively-designed parking brake and subsequent cover-up to avoid paying warranty claims, all as alleged herein, is precisely the type of overarching factual and legal inquiry or matter that satisfies the Rule 23(b) predominance requirement under Arkansas class action procedure.

81.    A class action is superior to other available methods for the fair and efficient adjudication of GM acts and omissions in connection with the defective parking brake. Ark. R. Civ. P. 23.

82.    The Court possesses wide discretion to find superiority. Moreover, the relief sought by Plaintiff and Class members is relatively small if sought on an individual basis. Accordingly, it is not economically feasible for Class members to pursue GM individually. Further, the possibility of multiple trials supplying inconsistent results and wasting judicial resources favors class action superiority, as does the fact numerous meritorious claims might go unaddressed absent class certification. Finally, this class action presents no problems from a manageability standpoint.

## IX.

### Damages/Disgorgement/Restitution

83.    The allegations set forth in paragraphs 1-82 herein are incorporated into this section by reference as if set forth verbatim.

84.    Plaintiff and Class members seek appropriate money damages in an amount necessary to remedy the defective parking brakes in the Bryant vehicle and in each of the 1999-2002 1500 Series pickups and utilities owned by Class members. Plaintiff and Class members, in terms of

obtaining "benefit of the bargain" type relief, allege this amount will restore their vehicles to the "as warranted" or "as represented" status or values. *See e.g.* UCC §2-714(b).

85.    Alternatively, for Class members that have previously paid out of their own pocket for repairs to their defective parking brakes, without reimbursement from GM, Plaintiff seeks out-of-pocket money damages in the amounts each such Class member has actually paid.

86.    Alternatively, based on GM having been unjustly enriched Plaintiff and Class members seek disgorgement and restitution from GM in an amount necessary to remedy the defective parking brakes in the Bryant vehicle and in each of the 1999-2002 1500 Series pickups and utilities owned by Class members.

87.    Plaintiff and Class members seek recovery of their reasonable and necessary attorney fees and costs.

88.    Plaintiff and Class members seek recovery of any available pre and post judgment interest.

89.    Plaintiff and Class members seek such other and further relief, both at law and in equity, as the Court determines fair, reasonable, appropriate and/or deems just.

90.    Plaintiff and Class members are, in all cases, seeking less than $75,000.00 total recovery per Plaintiff or per Class member in this action.  No individual or collective allegation in this pleading or in any other document on file should be construed as a request for damages equaling or exceeding $75,000.00 per Plaintiff or Class member.

## X.

### Prayer

91.    WHEREFORE, PREMISES CONSIDERED, Plaintiff and Class members respectfully pray that the Court:

a)  Certify this action as a class action as permitted by Ark. Civ. P. 23, appoint

Plaintiff class representative, and Plaintiff's counsel class representative counsel;

b)  Conduct a trial on the merits and, thereafter, enter judgment against GM in favor

of Plaintiff and Class members consistent with the damages amounts, restitution and/or other

relief requested herein.

c)  Grant Plaintiff and Class members such other and further relief, both at law and

in equity, as the Court determines fair, reasonable, appropriate and/or deems just.

Respectfully submitted,

PATTON, ROBERTS, MCWILLIAMS
& CAPSHAW, L.L.P.
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
(903) 334-7000 (office)
(903) 334-7007 (facsimile)

By: _____
James C. Wyly
Arkansas Bar No. 90158
Sean F. Rommel
Arkansas Bar No. 94158

David W. Crowe
Tx. State Bar No. 05164250
John W. Arnold
Ark. Bar No. 94163
BAILEY/CROWE & KUGLER, L.L.P.
6550 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
Telephone: (214) 231-0555
Facsimile: (214) 231-0556

**COUNSEL FOR PLAINTIFF BOYD
BRYANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to Mr. Darby V. Doan, Haltom & Doan, L.L.P., Post Office Box 6227, Texarkana, Texas 75505-6227, via hand delivery on this 5th day of September, 2006.

JAMES C. WYLY