# BUY SELL AGREEMENT

This agreement is between Eddie McGinnis (BUYER) and Forrest Cleburne Properties, L.P. (SELLER).

## I.
### Agreement to Purchase

BUYER agrees to purchase the real property generally described as land which Forrest Pontiac-Buick-GMC Trucks, Inc. (FORREST PONTIAC) occupies and which is more specifically identified in the attached survey (PROPERTY), which is incorporated fully by reference. The PURCHASE PRICE for the PROPERTY is THREE MILLION DOLLARS ($3,000,000). The PURCHASE PRICE does not include FORREST PONTIAC nor any of its assets or inventory. The PURCHASE PRICE does not include any mineral interests.

## II.
### Promissory Note

Upon execution of this agreement, SELLER will execute a PROMISSORY NOTE in favor of BUYER in the amount of ONE MILLION DOLLARS ($1,000,000), which will bear interest at nine percent (9%) per annum from the date of execution until closing documents are executed and the deed of trust is transferred. Upon execution of said PROMMISORY NOTE by SELLER, BUYER will wire transfer ONE MILLION DOLLARS ($1,000,000) to an account designated by SELLER. Upon closing of the purchase set out in Paragraph I above, said ONE MILLION DOLLARS ($1,000,000) will be applied towards the PURCHASE PRICE for the PROPERTY and interest will cease to accrue.

## III.
### Leaseback

Upon closing of the purchase set out in Paragraph I above, the PROPERTY will be leased back to SELLER by BUYER on a triple net lease basis for twenty seven thousand, five hundred dollars ($27,500) per month, which must be paid on or before the first day of each month, through the closing date of the ultimate sale of FORREST PONTIAC. Any partial month occupancy will be pro-rated on a daily basis. If and when FORREST PONTIAC or any of its affiliated entities cease to operate a Pontiac-Buick-GMC Trucks franchise on the PROPERTY, BUYER may renegotiate lease terms with any entity that takes over the operations of FORREST PONTIAC on a management contract or with any new lessee.

1

## IV.
### Agreement to Resell

The purpose of this agreement is to provide operating capital to SELLER and its affiliated entities to facilitate the ultimate sale of Forrest Chevrolet-Cadillac, Inc. (FORREST CHEVROLET) and FORREST PONTIAC (collectively the DEALERSHIPS). BUYER agrees to resell the PROPERTY contemporaneously with the sale of the DEALERSHIPS at a price which is reasonable in order to accommodate the sale of the DEALERSHIPS. BUYER and SELLER will share in the NET PROFIT from the sale of the PROPERTY as set out herein. The BASIS in the PROPERTY is THREE MILLION DOLLARS ($3,000,000). NET PROFIT is defined as the amount remaining from the sale of the PROPERTY by BUYER less BASIS and expenses. Expenses shall include a three percent (3%) commission of the final sale price of the PROPERTY and closing costs. BUYER and SELLER will share in the NET PROFIT under the following terms and conditions.

1) If the sale price of the PROPERTY is less than THREE MILLION DOLLARS ($3,000,000), SELLER shall pay to BUYER the amount necessary to recoup the PURCHASE PRICE plus ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000); or

2) If the sale price of the PROPERTY is more than THREE MILLION DOLLARS ($3,000,000), SELLER shall receive SIXTY THREE PERCENT (63%) of the NET PROFIT and BUYER shall receive THIRTY SEVEN PERCENT (37%) of the NET PROFIT.

The following hypothetical example is for illustration purposes only. For purposes of this hypothetical example, assume the PROPERTY sells for $4,600,000.

| | |
|---|---|
| Sales Price: | $4,600,000 |
| Less Basis: | $3,000,000 |
| Gross Profit: | $1,600,000 |
| Less Commission (3%): | -$138,000 |
| Less Closing Costs (estimate): | -$10,000 |
| Less Miscellaneous Fees (estimate): | -$5,000 |
| NET PROFIT: | $1,447,000 |

**Amount Due BUYER:**                    $535,390
(11.63% of Sales Price and 17.84% Return on Investment)

**Amount Due SELLER:**                    $911,610
(19.81% of Sales Price)

2

## V.

### Lease Contract Associated with Sale of the Dealerships

In the event that FORREST PONTIAC elects to enter into a sale agreement with a third party whereby the PROPERTY is to be leased by a third party, SELLER or its affiliated entities have the option to repurchase the PROPERTY for THREE MILLION, ONE HUNDRED FIFTY THOUSAND DOLLARS ($3,150,000). In the event that SELLER or any of its affiliated entities do not exercise their option to repurchase the PROPERTY under the terms of this Paragraph, BUYER is entitled to all lease payments until PROPERTY is ultimately sold by BUYER. Upon the ultimate sale of the PROPERTY by BUYER, BUYER and SELLER will share in the NET PROFIT under the same terms set forth in Paragraph IV.

## VI.

### Miscellaneous

This agreement has been prepared by the joint efforts of the respective parties. If any provision of this agreement is or may be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way. This agreement shall be governed and construed in accordance with laws of the State of Texas, and jurisdiction and venue for any dispute arising from this agreement shall solely lie in Dallas County, Texas.

THE PARTIES EXPRESSLY WARRANT THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND ALL EXHIBITS ATTACHED TO THE AGREEMENT, THEY HAVE HAD THE OPPORTUNITY TO OBTAIN ADVICE FROM THEIR COUNSEL CONCERNING THIS AGREEMENT, THEY UNDERSTAND ITS CONTENTS AND SIGN THE AGREEMENT AS THEIR OWN FREE ACT.

Forrest Cleburne Properties, L.P.

By: _Martha Forrest_

Martha Forrest in her capacity as President of Forrest Property Management, Inc., its General Partner

Eddie G. McGinnis

By: _Eddie G. McGinnis_

Eddie G. McGinnis

Dated this _29th_, of July, 2008.

3









| | |
|---|---|
| BOL. | BOLLARD |
| CI | CURVE IDENTIFIED IN CURVE TABLE |
| CM | CONTROLLING MONUMENT |
| CMP | CORRUGATED METAL STORM DRAIN PIPE |
| CONC. | CONCRETE |
| CPD | CABLE PEDESTAL |
| EAP | EDGE OF ASPHALT PAVEMENT |
| FH ✧ | FIRE HYDRANT |
| FLP | FLAGPOLE |
| FO | FIBER OPTIC CABLE |
| GM △ | GAS METER |
| GMH | GAS MANHOLE |
| GTS | GAS TEST STATION |
| GUY ⌣ | GUY WIRE |
| HDWL. | CONCRETE HEADWALL |
| ICV ☐ | IRRIGATION CONTROL VALVE |
| IRF | IRON ROD FOUND |
| IRS | IRON ROD SET |
| LI | LINE IDENTIFIED IN LINE TABLE |
| LP ✧ | LIGHT POLE |
| MB | MAILBOX |
| PP | POWER POLE |
| RCP | CONCRETE STORM DRAIN PIPE |
| SDMH | STORM DRAIN MANHOLE |
| SHD | SPRINKLER HEAD |
| SN ☊ | SIGN |
| SSMH ● | SANITARY SEWER MANHOLE |
| SSCO ○ | SANITARY SEWER CLEANOUT |
| SWBT | SOUTH WESTERN BELL TELEPHONE |
| TPD ☒ | TELEPHONE PEDESTAL |
| TSB | TRAFFIC SIGNAL BOX |
| TSP | TRAFFIC SIGNAL POLE |
| WM ☐ | WATER METER |
| WV ⋈ | WATER VALVE |
| — OE — | OVERHEAD ELECTRIC LINE |
| — W — | WATER LINE |
| — SS — | SANITARY SEWER LINE |
| — FO — | FIBER OPTIC LINE |
| — UT — | UNDERGROUND TELEPHONE |
| — OT — | OVERHEAD TELEPHONE |
| — G — | UNDERGROUND GAS |

CHAINLINK FENCI
:TY LINE

PIPE FENCE
:TY LINE

3. THE UNDERGROUND UTILITIES SHOWN HEREON
UTILITY LOCATORS, VISIBLE IMPROVEMENTS ANI
UNDERGROUND UTILITIES SHOWN COMPRISE ALL S
SURVEYOR FURTHER DOES NOT WARRANT THAT
INDICATED. THIS SURVEYOR HAS NOT PHYSICALL

4. ALL 1/2" IRON RODS SET WITH CAP STAMPE

5. ALL BEARINGS CORRELATED TO THE EAST L
VOL. 2734, PG. 319, D.R.J.C.T.

6. THIS SURVEY WAS PREPARED WITHOUT THE E

SURVEYORS STATEMENT

ON THE BASIS OF MY KNOWLEDGE, INFORM
THAT AS A RESULT OF A SURVEY MADE ' ON TI
PROFESSIONAL LAND SURVEYORS PRACTICING IN
PROPERTY ARE AS INDICATED ON THIS MAP, TH
SHOWN, THE IMPROVEMENTS ARE SET BACK FR
VISIBLE ENCROACHMENTS OR VISIBLE EVIDENCE.

SURVEYED ON THE GROUND
DECEMBER 28, 2005

GREGG A. MADSEN, R.P.L.S.
STATE OF TEXAS No. 5798

PARKING STALLS

585 TOTAL STALLS
- 10 HANDICAP STALLS
575 REGULAR STALLS

0    40    80    120    160

STUDIED OR ADDRESSED AS PART OF THE NFIP

HAVE BEEN LOCATED FROM FIELD SURVEY INFORMATION MARKED BY
EXISTING DRAWINGS. THIS SURVEYOR MAKES NO GUARANTEE THAT THE
UCH UTILITIES IN THE AREA, EITHER IN SERVICE OR ABANDONED. THIS
THE UNDERGROUND UTILITIES SHOWN HEREON ARE IN THE EXACT LOCATION
Y LOCATED THE UNDERGROUND UTILITIES.

) "WIER & ASSOC., INC.", UNLESS OTHERWISE NOTED.

VE OF FORREST CLEBURNE PROPERTIES, L.P., PER DEED RECORDED IN

ENEFIT OF A CURRENT COPY OF COMMITMENT FOR TITLE INSURANCE

TION AND BELIEF, I STATE TO FORREST CLEBURNE PROPERTIES, LP,
GROUND' TO THE NORMAL STANDARD OF CARE OF REGISTERED
HE STATE OF TEXAS, I FIND THAT THE LINES AND DIMENSIONS OF THE
SIZE, LOCATION, AND TYPE OF BUILDING IMPROVEMENTS ARE AS
M THE PROPERTY LINES THE DISTANCES INDICATED, AND THERE ARE NO
F EASEMENTS EXCEPT AS INDICATED.



REVISIONS

BOUNDARY SURVEY

7.500 ACRES OF LAND

LOCATED IN THE ALFRED McBRAYER SURVEY, ABSTRACT No. 596.
CITY OF CLEBURNE, JOHNSON COUNTY, TEXAS.

COPYRIGHT ©
WIER & ASSOCIATES, INC.
LAST SHEET EDIT
DATE 01-12-2006
WA# 05127

SHEET NO.
1

LEGAL DESCRIPTION

BEING A TRACT OF LAND LOCATED IN THE ALFRED McBRAYER SURVEY, ABSTRACT No.
DESCRIBED IN A DEED TO FORREST CLEBURNE PROPERTIES, L.P., RECORDED IN VOLUM
(D.R.J.C.T.), AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS

BEGINNING AT A 1/2" IRON ROD FOUND BEING THE MOST SOUTHERLY SOUTHWEST CORNE

THENCE N 02°48'00" E, 29.93 FEET TO A 1/2" IRON ROD FOUND;

THENCE N 37°57'50" W, 119.74 FEET TO A TEXAS DEPARTMENT OF TRANSPORTATIO
    RIGHT-OF-WAY LINE OF STATE HIGHWAY No. 174;

THENCE N 14°29'37" E ALONG THE SOUTHEAST RIGHT-OF-WAY LINE OF SAID STATE H
    STAMPED "WIER & ASSOC. INC.";

THENCE S 82°09'43" E LEAVING THE SOUTHEAST LINE OF SAID STATE HIGHWAY No. 1
    ASSOC. INC.";

THENCE S 03°24'58" W, 163.37 FEET TO A 1/2" IRON ROD SET WITH A CAP STAMPE

THENCE S 87°59'06" E, 29.73 FEET TO A 1/2" IRON ROD SET WITH A CAP STAMPEL

THENCE S 00°59'02" W, 549.12 FEET TO A PK NAIL SET, BEING IN THE SOUTH LINE

THENCE N 88°59'23" W ALONG THE SOUTH LINE OF SAID FORREST TRACT, 446.31 FE
    SQUARE FEET) OF LAND.

9'06" E
.73'

:c

* N O T E S *

1. ACCORDING TO SURVEYOR'S INTERPRETAT
(NFIP) "FLOOD INSURANCE RATE MAP" (FIRM
1991, NO PORTION OF THIS PROPERTY LIES W
FLOOD" ZONE AS DEFINED BY THE U.S. DEP
ADMINISTRATION, OR THE FEDERAL EMERGEN

2. THE ABOVE REFERENCED "FIRM" MAP IS
ALL AREAS SUBJECT TO FLOODING, PARTICU
SEVERE, CONCENTRATED RAINFALL COUPLE
STREAMS, CREEKS, LOW AREAS, DRAINAGE
NEAR THE SUBJECT PROPERTY WHICH ARE NO

3. THE UNDERGROUND UTILITIES SHOWN HERE
UTILITY LOCATORS, VISIBLE IMPROVEMENTS
UNDERGROUND UTILITIES SHOWN COMPRISE AL
SURVEYOR FURTHER DOES NOT WARRANT TH
INDICATED. THIS SURVEYOR HAS NOT PHYSIC

4. ALL 1/2" IRON RODS SET WITH CAP STA

5. ALL BEARINGS CORRELATED TO THE EAS
VOL. 2734, PG. 319, D.R.J.C.T.

6. THIS SURVEY WAS PREPARED WITHOUT T

* L E G E N D *

| | |
|---|---|
| AP | ASPHALT PAVEMENT |
| B/B | BACK OF CURB TO BACK OF CURB DIMENSION |
| B/C | DIMENSION TO BACK OF CURB |
| BOL | BOLLARD |
| CI | CURVE IDENTIFIED IN CURVE TABLE |
| CM | CONTROLLING MONUMENT |
| CMP | CORRUGATED METAL STORM DRAIN PIPE |
| CONC. | CONCRETE |
| CPD | CABLE PEDESTAL |
| EAP | EDGE OF ASPHALT PAVEMENT |
| FH ⬦ | FIRE HYDRANT |
| FLP | FLAGPOLE |
| FO | FIBER OPTIC CABLE |
| GM △ | GAS METER |
| GMH | GAS MANHOLE |
| GTS | GAS TEST STATION |
| GUY ⌄ | GUY WIRE |
| HDWL. | CONCRETE HEADWALL |
| ICV □ | IRRIGATION CONTROL VALVE |
| IRF | IRON ROD FOUND |
| IRS | IRON ROD SET |
| LI | LINE IDENTIFIED IN LINE TABLE |
| LP ⬦ | LIGHT POLE |
| MB | MAILBOX |
| PP | POWER POLE |
| RCP | CONCRETE STORM DRAIN PIPE |
| SDMH | STORM DRAIN MANHOLE |
| SHD | SPRINKLER HEAD |
| SN ⊙ | SIGN |
| SSMH ⊛ | SANITARY SEWER MANHOLE |

OM CHAINLINK FENCI
PERTY LINE

OM PIPE FENCE
PERTY LINE

\;, JOHNSON COUNTY, TEXAS, BEING A PORTION OF A TRACT OF LAND
734, PAGE 319, DEED RECORDS, JOHNSON COUNTY, TEXAS
LOWS\;

\;F SAID FORREST TRACT AND BEING IN COUNTY ROAD 700,

\;GHWAY MONUMENT FOUND (BROKEN), BEING IN THE SOUTHEAST

\;WAY No. 174, 649.19 FEET TO A 1/2" IRON ROD SET WITH A CAP

\;348.68 FEET TO A 1/2" IRON ROD SET WITH A CAP STAMPED "WIER 8

\;WIER 8 ASSOC. INC.",

\;IER 8 ASSOC. INC.",

\;SAID FORREST TRACT AND IN COUNTY ROAD 700,

\;TO THE PLACE OF BEGINNING AND CONTAINING 7.500 ACRES (326,700

\;OF INFORMATION SHOWN ON THE NATIONAL FLOOD INSURANCE PROGRAM
\;COMMUNITY PANEL No. 48251C0111 F, MAP REVISED SEPTEMBER 27,
\;A "SPECIAL FLOOD HAZARD AREA (SFHA) INUNDATED BY 100-YEAR
\;MENT OF HOUSING AND URBAN DEVELOPMENT, FEDERAL INSURANCE
\;MANAGEMENT AGENCY.

\;USE IN ADMINISTERING THE "NFIP", IT DOES NOT NECESSARILY SHOW
\;LY FROM LOCAL SOURCES OF SMALL SIZE, WHICH COULD BE FLOODED BY
\;H INADEQUATE LOCAL DRAINAGE SYSTEMS. THERE MAY BE OTHER
\;TEMS OR OTHER SURFACE OR SUBSURFACE CONDITIONS EXISTING ON OR
\;TUDIED OR ADDRESSED AS PART OF THE "NFIP".

\;HAVE BEEN LOCATED FROM FIELD SURVEY INFORMATION MARKED BY
\;EXISTING DRAWINGS. THIS SURVEYOR MAKES NO GUARANTEE THAT THE
\;ICH UTILITIES IN THE AREA, EITHER IN SERVICE OR ABANDONED. THIS
\;THE UNDERGROUND UTILITIES SHOWN HEREON ARE IN THE EXACT LOCATION
\;Y LOCATED THE UNDERGROUND UTILITIES.

\;"WIER 8 ASSOC., INC.", UNLESS OTHERWISE NOTED.

\;IE OF FORREST CLEBURNE PROPERTIES, L.P., PER DEED RECORDED IN

\;ENEFIT OF A CURRENT COPY OF COMMITMENT FOR TITLE INSURANCE

PREPARED BY:

**WIER & ASSOCIATES, INC.**
ENGINEERS    SURVEYORS    LAND PLANNERS
4300 BELTWAY PLACE SUITE 130 ARLINGTON, TEXAS 76018 METRO (817)467-7700
1380 U.S. HIGHWAY 287 N. SUITE 101 MANSFIELD, TEXAS 76063 METRO (817)477-8700
6949 ELM STREET FRISCO, TEXAS 75034 METRO (214)387-8000
www.Wierassociates.com

DATE BY

REVISIONS

LAND

EY, ABSTRACT No. 596,

UNTY, TEXAS.

## PROMISSORY NOTE

DATE: July 29, 2008

MAKER: Forrest Cleburne Properties, L.P.

MAKER'S MAILING ADDRESS (INCLUDING COUNTY): 2400 North Main Street, Cleburne, Johnson County, Texas

PAYEE: Eddie McGinnis

PLACE FOR PAYMENT (INCLUDING COUNTY): 1521 River Crest Court, Fort Worth, Tarrant County, Texas

PRINCIPAL AMOUNT: One Million Dollars and No Cents ($1,000,000.00)

ANNUAL INTEREST RATE ON UNPAID PRINCIPAL FROM DATE: Nine percent (9%)

ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS: Nine percent (9%)

TIME FOR PAYMENT: Interest shall be paid on the date of closing for the sale of the real property generally described as land which Forrest Pontiac-Buick-GMC Trucks, Inc. occupies and more specifically set forth in the Buy Sell Agreement between Maker and Payee ("Property"). The Principal Amount shall be applied towards the purchase price for the Property as set forth in the Buy Sell Agreement between Maker and Payee.

TERMS OF PAYMENT (PRINCIPAL AND INTEREST):

Maker promises to pay to the order of Payee at the place for payment and according to the terms of the time for payment the principal amount plus interest at the rates stated above.

If Maker defaults in the payment of this note, and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If this note is given to an attorney for collection, or if suit is brought for collection, or if it is collected through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee all costs of collection, including reasonable attorney's fees and court costs, in addition to other amounts due.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has

been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

Forrest Cleburne Properties, L.P.

By:     *Martha Forrest*

Martha Forrest in her capacity as President of
Forrest Property Management, Inc., it's
General Partner

RTC GF#08-03351-JAR:mh

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## GENERAL WARRANTY DEED WITH VENDOR'S LIEN

Date:   August 19, 2008

Grantor:   FORREST CLEBURNE PROPERTIES, L.P., a Texas limited partnership

Grantor's Mailing Address (including county):

>     2406 N. Main Street
>     Cleburne, Texas 76033
>     In the County of Johnson

Grantee:   EDDIE MCGINNIS

Grantee's Mailing Address (including county):

>     _1521 River Crest Court_
>     _Fort Worth  Texas  76107_
>     In the County of _Tarrant_

Consideration:

TEN AND NO/100 ($10.00) DOLLARS, and other good and valuable consideration paid and secured to be paid to Grantor herein by Grantees herein, as follows:

Cash paid, the receipt of which is hereby acknowledged, and the further sum of **$2,000,000.00**, the receipt of which is hereby acknowledged, advanced at the special instance and request of Grantee as a part of the purchase price of the property, and to evidence which, Grantee has this day executed and delivered one note of even date herewith, payable to the order of **CITIZENS BANK**, in the principal sum of **$2,000,000.00**, bearing interest and due and payable as therein provided, said note secured by Vendor's Lien and Superior Title retained herein, and additionally secured by Deed of Trust to **BLAKE BOYD**, as Trustee for the benefit of **CITIZENS BANK**.

The Vendor's Lien and Superior Title herein retained, to the extent same are securing said first lien note, are hereby transferred, assigned, sold and conveyed to **CITIZENS BANK**, its successors and assigns, the Payee named in said Note.

Property (including any improvements):

Being a 7.5 acre tract of land out of the ALFRED McBRAYER SURVEY, Abstract No. 596, Johnson County, Texas, and being more particularly described by metes and bounds on Exhibit "A" attached hereto for all purposes.

## Reservations from and Exceptions to Conveyance and Warranty:

SAVE AND EXCEPT, and there is hereby reserved unto Grantors, their heirs and assigns, all of the oil, gas and other minerals in and under and that may be produced from the above described property. The mineral interest reserved herein by Grantor shall include the right to any lease bonuses, rentals, the right to execute oil, gas and other mineral leases or the right to develop.

This conveyance is further made and accepted subject to the following matters, to the extent same are in effect at this time, relating to the hereinabove described property: Restrictions of record, if any, Reservations of mineral and/or royalty interests of record, if any, Easements of record, if any, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any.

Grantee assumes all taxes for the year 2008 and subsequent years.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, GRANTS, SELLS and CONVEYS to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, TO HAVE AND HOLD it to Grantee, Grantee's heirs, executors, administrators, successors and assigns, forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to WARRANT AND FOREVER DEFEND all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, except as to the reservations from and exceptions to warranty.

The vendor's lien against and superior title to the property are retained until the note described is fully paid according to its terms, at which time this deed shall become absolute.

When the context requires, singular nouns and pronouns include the plural.

FORREST CLEBURNE PROPERTIES, L.P., a Texas limited partnership

By:  FORREST PROPERTY MANAGEMENT, INC., a Texas corporation, its general partner

By: *Martha Forrest*
MARTHA FORREST, President

STATE OF TEXAS          §
                        §
COUNTY OF TARRANT       §

THIS INSTRUMENT was acknowledged before me on this ___20___ day of August, 2008, by MARTHA FORREST, President of FORREST PROPERTY MANAGEMENT, INC., a Texas corporation, as the general partner of FORREST CLEBURNE PROPERTIES, L.P., a Texas limited partnership, on behalf of said partnership.

JEFFREY A. BATTIKIN
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 9-21-2012

Notary Public, State of Texas

AFTER RECORDING, RETURN TO:

EDDIE McGINNIS
1521 River Crest Court
Fort Worth, Texas 76107

## Exhibit "A"

Being a tract of land located in the Alfred McBrayer Survey, Abstract No. 596, Johnson County, Texas, being a portion of a tract of land described in a deed to Forrest Cleburne Properties, L.P., recorded in Volume 2734, Page 319, Deed Records, Johnson County, Texas (D.R.J.C.T.), and being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod being the most Southerly Southwest corner of said Forrest tract and being in County Road 700;

THENCE North 02 degrees 48 minutes 00 seconds East, 29.93 feet to a 1/2 inch iron rod found;

THENCE North 37 degrees 57 minutes 50 seconds West, 119.74 feet to a Texas Department of Transportation Highway Monument found (broken), being in the Southeast right-of-way line of State Highway No. 174;

THENCE North 14 degrees 29 minutes 37 seconds East along the Southeast right-of-way line of said State Highway No. 174, 649.19 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc.";

THENCE South 82 degrees 09 minutes 43 seconds East leaving the Southeast line of said State Highway No. 174, 348.66 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc.";

THENCE South 03 degrees 24 minutes 58 seconds West, 163.37 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc";

THENCE South 87 degrees 59 minutes 06 seconds East, 29.73 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc.";

THENCE South 00 degrees 59 minutes 02 seconds West, 549.12 feet to a PK nail set, being in the South line of said Forrest tract and in County Road 700;

THENCE North 88 degrees 59 minutes 23 seconds West along the South line of said Forrest tract, 446.31 feet to the PLACE OF BEGINNING and containing 7.500 acres (326,700 square feet) of land.

NOTE: THE COMPANY DOES NOT REPRESENT THAT THE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

NOTE:    THE COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

# PARTIAL RELEASE OF LIEN

**Date:**        **August 18, 2008**

**Note:**

    Date:    October 05, 2001

    Original Principal:    $2,145,000.00

    Maker: Forrest Cleburne Properties, L.P., a Texas limited partnership

    Payee: Forrest Chevrolet-Oldsmobile-Cadillac, Inc., a Texas corporation

**Holder of Note and lien: Forrest Chevrolet-Oldsmobile-Cadillac, Inc., a Texas Corporation**

**Holder's Mailing Address (including county):**

    2400 N. Main Street
    Cleburne, Texas 76031
    **Johnson County**

**Note and Lien Are Described in the Following Documents, Recorded In:**

    Deed of Trust recorded in Volume 2734, Page 325, Real Property Records of
    Johnson County, Texas.

    Subordination Agreement by and between Forrest Cleburne Properties, L.P., a
    Texas limited partnership and Forrest Chevrolet-Oldsmobile-Cadillac, Inc.,
    recorded in Volume 3764, Page 528, Real Property Records of Johnson County,
    Texas.

**Property (including any improvements) to Be Released From Lien:**

    Being a 7.5 acre tract of land out of the ALFRED McBRAYER SURVEY,
    Abstract No. 596, Johnson County, Texas, and being more particularly
    described by metes and bunds on Exhibit "A" attached hereto for all purposes.

Holder of the note acknowledges its **PARTIAL** release **ONLY THE ABOVE DESCRIBED** property
from the lien(s).

**THIS IS A PARTIAL RELEASE**, intended to release the lien existing upon the above described property
only, and nothing herein contained shall be construed as releasing or in any manner affecting the value of
the lien existing upon the remainder of the property described in said Deed of Trust, not heretofore
released.

When the context requires, singular nouns and pronouns include the plural.

Forrest Chevrolet-Oldsmobile-Cadillac, Inc.

By: _Martha Forrest_

Martha Forrest, President

(Acknowledgment)

THE STATE OF TEXAS    §
                      §
COUNTY OF _____  §

This instrument was acknowledged before me this 20 day of August 2008, by Martha Forrest, President of **Forrest Chevrolet-Oldsmobile-Cadillac, Inc.**, a Texas corporation, on behalf of said corporation.

JEFFREY A. RATTIKIN
NOTARY PUBLIC
STATE OF TEXAS

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Rattikin Title
5020 Collinwood Ave., Suite 400
Fort Worth, TX 76107

Attn: Stephanie Fuller

## Exhibit "A"

Being a tract of land located in the Alfred McBrayer Survey, Abstract No. 596, Johnson County, Texas, being a portion of a tract of land described in a deed to Forrest Cleburne Properties, L.P., recorded in Volume 2734, Page 319, Deed Records, Johnson County, Texas (D.R.J.C.T.), and being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod being the most Southerly Southwest corner of said Forrest tract and being in County Road 700;

THENCE North 02 degrees 48 minutes 00 seconds East, 29.93 feet to a 1/2 inch iron rod found;

THENCE North 37 degrees 57 minutes 50 seconds West, 119.74 feet to a Texas Department of Transportation Highway Monument found (broken), being in the Southeast right-of-way line of State Highway No. 174;

THENCE North 14 degrees 29 minutes 37 seconds East along the Southeast right-of-way line of said State Highway No. 174, 549.19 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc.";

THENCE South 82 degrees 09 minutes 43 seconds East leaving the Southeast line of said State Highway No. 174, 348.66 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc.";

THENCE South 03 degrees 24 minutes 58 seconds West, 163.37 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc, Inc";

THENCE South 67 degrees 59 minutes 06 seconds East, 29.73 feet to a 1/2 inch iron rod set with a cap stamped "Wier & Assoc. Inc.";

THENCE South 00 degrees 59 minutes 02 seconds West, 549.12 feet to a PK nail set, being in the South line of said Forrest tract and in County Road 700;

THENCE North 88 degrees 59 minutes 23 seconds West along the South line of said Forrest tract, 446.31 feet to the PLACE OF BEGINNING and containing 7.500 acres (326,700 square feet) of land.

NOTE: THE COMPANY DOES NOT REPRESENT THAT THE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

NOTE:    THE COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

# COMMERCIAL LEASE AGREEMENT

In consideration of the sum of ten dollars and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, Eddie McGinnis, individually, Lessor, Forrest Pontiac – Buick – GMC Trucks, Inc., Lessee, agree as follows:

**LOCATION OF SUBJECT PROPERTY:** The subject property is located at 2406 North Main, in the city of Cleburne, Johnson County, Texas.

**LEGAL DESCRIPTION:** The subject property is legally described as 7.5 acres of land located in the Alfre McBrayer survey, abstract number 596, city of Cleburne, Johnson County, Texas. Being a portion of a tract of land described in a deed to Forrest Cleburne Properties, L.P., recorded in volume 2734, page 319, deed records, Johnson County, Texas.

**Term:** The term of this Lease shall be for one (1) year or until the Forrest Pontiac – Buick – GMC Trucks franchise is sold, which ever comes first. The lease shall commence on the date the lease is signed (the effective date of the lease) and ending on the same date in 2009. The term also includes any renewals or extensions as described herein.

**Rental:** Rental to be paid by Lessee to Lessor during the term of the Lease shall be $27,500 each month, payable in advance on the 1st day of each month, with the first rental installment being due and payable upon the commencement date of the Lease. One installment shall be due and payable on or before the 1st day of each month thereafter during the terms of the Lease.

**Renewal Option:** Upon the expiration of the original term of this Lease, Lessee is granted an option to renew and extend this Lease for a term of one (1) year upon the same terms and conditions as the original term. The renewal option shall be exercised by the Lessee giving written notice to the Lessors of its intent to exercise such options at lease ninety (90) days prior to the end of the original term.

**Taxes:** Lessee shall pay all ad valorem taxes assessed against the Leased premises on or before the date such taxes become delinquent, and Lessee shall provide to the Lessors proof of payment of such taxes.

**Casualty Insurance:** During the term of this Lease, or any extended term, Lessee shall maintain fire and extended coverage insurance covering all improvements on the Leased Premises at 100% or replacement cost with Lessors being named as an additional insured on such coverage. The insurance companies providing coverage shall be approved by the Lessors, and Lessee shall promptly deliver to Lessors a certificate providing for a cancellation provision in favor of Lessors and nonrenewal or notice of non-payment of premiums provision. In the event of a casualty loss covered by insurance, the proceeds of insurance shall be applied to the restoration or repair of the damage to the Leased Premises, and Lessee shall be responsible for any deficiency between the cost of repair and the insurance proceeds.

1

**Indemnity – Liability Insurance:** Lessee agrees to indemnify and hold the Lessors harmless from any loss, cost, damage or expense arising out of, or from, any accident or other occurrence on or about the Leased Premises, causing injury to any person or property whomsoever or whatsoever. Lessee, at all times, shall maintain general liability insurance naming the Lessors as additional insured with liability limits of $1,000,000 combined single limit. Such liability insurance shall be in a form, and through an insurance company, satisfactory to Lessors, and lessee shall provide proof of coverage to the Lessors at all times during the term of this Lease or any extension thereof.

**Maintenance and Repair:** The Lessors shall deliver the leased premises in good repair, reasonable wear and tear excepted. The Lessee shall, at its own expense, throughout the term of this Lease, or any extension thereof, keep and maintain all portions of the building, facilities, and improvements, which are a part of the Leased premises, in good repair, reasonable wear and tear and damage from a casualty loss covered by insurance excepted, and, further, Lessee shall maintain all paving and other appurtenances to the Lease premises in a good state of repair. Lessee shall also maintain all machinery, equipment and fixtures, which are a part of Leased premises, in good repair.

**Triple Net Lease:** It is intended that this lease shall be a "triple net" lease to the Lessors, and all rental payments are to be paid to the Lessors without deduction for any expense, it being intended that Lessee shall be solely responsible for all expenses incident to the maintenance and occupancy of the Leased Premises during the term of this Lease, or any extension thereof.

**Use of Premises:** During the term of this Lease, or any extension thereof, the Lessee shall use the Leased Premises only for the operation of an automobile dealership, or dealerships, and uses incident to such businesses and not otherwise, except with the prior written consent of the Lessors.

**Alterations and Improvements:** Lessee shall not make any alterations or additions in or to existing buildings or improvements on the Leased Premises, without the prior written consent of Lessors, which shall not be unreasonably withheld.

**Assignment and Subletting:** Lessee shall not assign, sublet or otherwise grant permission to any third party to possess any part of the Leased Premises without the express written consent of the Lessors, which consent shall not be unreasonably withheld; provided, Lessee may assign, sublet or otherwise grant permission to any third party to possess any part of the Leased Premises without the express written consent of the Lessors if the third party is approved as dealer-operator under a Sales and Service Agreement with a manufacturer or new motor vehicles. With respect to any assignment or subletting, Lessee shall continue to be responsible for and guarantee the obligations imposed upon the Lessee and such assignees in this lease.

**Consent of Lessors to Enter:** Lessors shall have the right, at all reasonable times, to enter the Leased Premises to inspect the premises and verify the condition thereof.

**Surrender of Premises at the Expiration of Term:** At the expiration of the original term, or any extension thereof, the Lessee shall peaceably surrender the Leased Premises to the Lessors in good repair in all respects, reasonable wear and damage by fire and insured casualties excepted, as the same were at the commencement of the Lease.

2

**Lessee's Obligation and Warranties:** During the Term (including any renewals or extensions) of this lease, Lessee shall have the following obligations:

a. **Taxes.** Lessee will pay before penalty attaches all taxes, assessments and governmental charges levied, assessed or imposed on the leased premises except to the extent contested in good faith.

b. **Information.** Upon request, Lessee will furnish Lessors, with reasonable promptness, the latest financial statements of Lessee made to or delivered to Lessee's primary lender (or any replacement or successor lender, or as may be reasonable requested by Lessors).

c. **Litigation.** Lessee will furnish Lessors promptly with summaries or copies of pleadings of any litigation or administrative proceeding in which Lessee or its parent company or direct affiliates or any of its officers or directors are involved which may have a material effect upon the leased premises.

d. **Compliance.** Lessee at all times will comply in all material respects with its contracts and leases and its obligations to its lenders, including without limitation the performance of any financial covenants required by its lenders.

**Events of Default:** Lessee shall be in default in the performance of this Lease upon the occurrence of any of the following events:

a. the failure of Lessee to pay any rental payment upon its due date, if such default continues for a period of ten (10) days after the due date;

b. the failure of Lessee to cure any non-rent obligation after thirty (30) days written notice by Lessors to Lessee, specifying such default, provided, however, that if Lessee has proceeded diligently and in good faith to cure any default, except non-payment of rent, then Lessee will have an additional thirty (30) days to cure the failure to perform such non-rental payment default. In no event will Lessee have more than 60 days after notice to cure any failure to perform a non-rental payment obligation, except with the prior written consent of Lessors;

c. a levy against the property of any execution, attachment, sequestration, or other writ, which is not released within thirty (30) days after notice thereof is delivered to Lessors;

d. the appointment of a receiver of any part of the property of, assignment for the benefit of the creditors by, or the commencement of any proceedings under any bankruptcy or insolvency laws by or against Lessee or guarantor, which is not dismissed within sixty (60) days; or

**Remedies Upon Default:** Upon default, Lessors may exercise one or more, or all, of the following remedies without waiver of any other remedy provided by applicable law.

3

a.  Lessors may enter into and upon the Leased Premises, or any part thereof, and repossess the same, with or without terminating this Lease and without prejudice to any of its remedies for rent or breach of covenant, and, at the option of Lessors, Lessors may terminate said Lease by giving written notice of Lessors' election to do so, and in such event, Lessee shall by liable for Lessors' damages as measured by applicable law, or

b.  Lessors may, at Lessors' option, let the Leased Premises, or any part thereof, as the agent of Lessee, to a third party for the account of Lessee and continue the Lease in effect, with Lessee being liable for any deficiency.

The foregoing right and remedies given to Lessors are, and shall be deemed to be cumulative, and shall be in addition to Lessors Rights and remedies under the landlord's lien and security interest granted to the Lessors hereunder.  The exercise of one remedy shall not be deemed to be an election excluding the exercise by Lessors at any other of different time of a different or inconsistent remedy, and any exercise of one remedy, or failure to exercise a given remedy, shall not constitute a waiver of the right of Lessors to subsequently exercise any other remedy provided in this Lease or under applicable law, in the event of default of the Lessee.

**Applicable Law:**  It is understood and agreed that this Lease shall be interpreted under the laws of the State of Texas, and the law of the State of Texas shall govern the enforcement of, and remedies available, under this Lease.

**Notices:**  All notices, or other communications which are required or permitted hereunder, will be in writing and will be delivered either personally or by registered or certified mail (postage prepaid and return receipt requested) or by express courier or delivery service, addressed as follows;

**If to Lessor:**
Eddie McGinnis
1521 River Crest Court
Fort Worth, Texas 76107

**If to Lessee:**
Martha J. Forrest
% Forrest Pontiac – Buick – GMC Trucks, Inc.
P.O. Box 37
Cleburne, Texas 76033

~~Guaranty:  For value received, each of the Guarantors, hereby personally guarantees payment and performance of all obligations of Lessee under the terms of this Lease.  It is agreed by each Guarantor that no waiver by Lessors of any default or breach of any term, condition, or covenant of this Lease, shall relieve the guarantor of any liability hereunder for any subsequent default or breach of any term, condition or covenant of said Lease by Lessee.  The failure of Lessors to hold each Guarantor liable~~

MF
EM

4

for any default or breach by Lessee shall not be deemed to be a waiver of Lessors' right to payment by such Guarantor for any subsequent sums owed by Lessee. Each Guarantor's liability hereunder is joint, several, direct, immediate, absolute, continuing, unconditional and unlimited. Lessors shall not be required to pursue any remedies it may have against the Lessee or against any security interest, or other collateral, as a condition to enforcement of this guaranty. Each Guarantor shall not be discharged or release by reason of any discharge or release of Lessee for any reason, including a discharge in bankruptcy, receivership, or other proceedings, a disaffirmation or rejection hereof by a trustee, custodian or other representative in bankruptcy, a stay or other enforcement restriction, or any other deduction, modification, impairment or limitation or the liability of Lessee, as to any remedy of Lessors. Each Guarantor assumes all responsibility for being and keeping himself informed of Lessee's financial condition and assets, and of all other circumstances bearing upon the risk of non-performance by Lessee hereunder.

**Binding Effect**: This Lease shall be binding on the parties hereto, their legal representatives, successors and assigns.

Effective Date of Lease *August 20*          , 2008

5

LESSOR:  EDDIE MCGINNIS

_Eddie McGinnis_
Individually


## ACKNOWLEDGMENT

STATE OF TEXAS           §
                         §
COUNTY OF JOHNSON        §

This instrument was acknowledged before me on the _____ day of _____, 2008, by Eddie McGinnis.


_____
Notary Public – State of Texas

My Commission Expires: _____

6

LESSEE: FORREST PONTIAC-BUICK-GMC TRUCKS, Inc.

By: Martha J. Forrest, President

_____
Martha J. Forrest

## ACKNOWLEDGMENT

STATE OF TEXAS            §
                         §
COUNTY OF JOHNSON         §

This instrument was acknowledged before me on the ____ day of _____, 2008, by Martha J. Forrest, President of Forrest Pontiac-Buick & GMC Trucks, Inc.

_____
Notary Public – State of Texas

My Commission Expires: _____

7