**Hearing Date and Time:  December 16, 2009.  2:00 p.m.EST**
**Objection Deadline:  December 9, 2009.  4:00 p.m. EST**

Ropers Majeski Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:    (415) 543-4800
Facsimile:    (415) 972-6301
Email: kstrickland@rmkb.com
N. Kathleen Strickland, Esq. (*Pro Hac Vice Admission Granted*)

Ropers Majeski Kohn & Bentley
17 State Street, Suite 2400
New York, NY 10004
Telephone:    (212) 668-5927
Facsimile:    (212) 668-5929
Email: gheineman@rmkb.com
Geoffrey W. Heineman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------ x
                                     :    Chapter 11
In re                                :
                                     :    Case No. 09-50026(REG)
MOTORS LIQUIDATION COMPANY, et al.,  :
                                     :    (Jointly Administered)
          Debtors.                   :
                                     :
------------------------------------ x
```

**OBJECTION OF REMY INTERNATIONAL, INC. TO DEBTORS'
TENTH OMNIBUS MOTION PURSUANT TO 11 U.S.C. § 365 TO
REJECT CERTAIN EXECUTORY CONTRACTS**

## TABLE OF CONTENTS

**Page**

I.      BACKGROUND ....................................................................................................... 1

II.     THE APA IS NOT AN EXECUTORY CONTRACT TO  WHICH SECTION 365
        OF THE BANKRUPTCY CODE APPLIES ................................................................. 4

III.    DEBTORS HAVE MADE NO SHOWING THAT REJECTION OF THE APA
        WILL BENEFIT THE DEBTORS' ESTATE ............................................................. 10

IV.     CONCLUSION....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re Ames Department Store*, 1995 U.S. Dist. LEXIS 6704 (S.D.N.Y) .......................... 8

*In re Anglo Energy*, 41 B.R. 337 (Bankr. S.D.N.Y. 1984) ............................................. 11

*In re Chateaugay Corp.*, 102 B.R. 335 (Bankr. S.D.N.Y. 1989) ..........................5, 6, 7, 8

*In re Chi-Feng Huang*, 23 B.R. 798 (9th Cir. BAP 1982) .............................................. 11

*In re Chipwich Inc.*, 54 B.R. 427 (Bankr. S.D.N.Y. 1985) ............................................. 7

*In re: E.J. Preston*, 53 B.R. 589 (Bankr. M.D. Tenn. 1985)............................................. 9

*In re Firearms Import & Export Corp.,* 131 Bankr. 1009 (Bankr. S.D. Fla. 1991) ........... 8

*In re Federal Press Co.,* 104 Bankr. 56 (Bankr. N.D. Ind. 1989).).................................. 8

*In re Government Securities Corp.*, 101 Bankr. 343 (Bankr. S.D. Fla. 1989) *aff'd*,
111 Bankr. 1007 (S.D. Fla. 1990) .................................................................................. 6

*In re Preston, supra*, 53 B.R. at 592 .............................................................................. 9

*Heartline Farms v. Daly*, 128 B.R., 246 (D.Neb. 1990)................................................. 10

*In re Helm*, 335 B.R. 528 (Bankr. S.D.N.Y. 2006) ......................................................... 6

*In re J .M. Fields Inc.*, 22 B.R. 861 (Bankr. S.D.N.Y. 1982) ......................................... 5

*In re Jolly*, 574 F.2d 349 (6th Cir.), *cert. denied*, 439 U.S. 929, 99 S. Ct. 316, 58
L. Ed. 2d 322 (1978) ...................................................................................................... 6

*In re Leonard Bluman*, 125 B.R. 359 (E.D.N.Y. 1990)................................................... 6

*Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc.*, 419 F. Supp. 778
(S.D. Calif. 1976), *aff'd.*, 613  F.2d 210 (9th Cir. 1980).......................................... 10

*Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043 (4th Cir. 1985).......... 7

*Matter of Minges*, 602 F.2d 38 (2d Cir. 1979) .............................................................. 10

*In re Monument Record Corp.*, 61 B.R. 866 (Bankr. M.D. Tenn. 1986).......................... 7

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Norwood Chevrolet Co.*, 143 B.R. 804 (Bankr. D.R.I. 1992)................................ 10

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd Cir. 1993), cert denied 114 S.Ct.
   1418........................................................................................................................ 11

*In re Pacific Exp. Inc.*, 780 F.2d 1482 (9th Cir. 1986) .................................................. 10

*In re Riodizio*, 204 B.R. 417 (Bankr. S.D.N.Y. 1997) ................................................. 6, 7

*In re Safety-Kleen Corp.*, 410 B.R. 164 (Bankr. D.  Del. 2009) ...................................... 5

*Sharon Steel Corp. v, National Fuel Gas Distribution Corp.*, 872 F.2d 36 (3rd
   Cir. 1989)................................................................................................................ 11

*In re Spectrum Information Technologies, Inc.*, 190 B.R. 741 (Bankr. E.D.N.Y.
   1996).............................................................................................................5, 6, 7, 8, 9

*In re Stable Mews Associates, Inc.*, 41 B.R. 594 (Bankr. S.D.N.Y. 1984) ................10, 11

*In re Stein & Day, Inc.*, 81 B.R. 263 (Bankr. S.D.N.Y. 1988)......................................... 7

*In re Sudbury, Inc.* 153 Bankr. 776 (Bankr. N.D.Ohio 1993))...................................... 8

*In re THC Finance Corp.*, 686 F.2d 799 (9th Cir. 1982)............................................. 8, 9

*In re Teligent, Inc.*, 268 B.R. 723 (Bankr. S.D.N.Y. 2001) ......................................... 5, 6

*In re Texaco*, 73 B.R. 960 (Bankr. S.D. N. Y. 1987)....................................................... 7

*In re. Texscan Corp.*, 976 F.2d 1269 (9th Cir. 1992) ..................................................... 8

## STATE CASES

*Penn Traffic Company v. COR Route 5 Company, LLC*, 2005 WL 2276879
   (S.D.N.Y. September 16, 2005)................................................................................. 5

*Shoppers World Community Center v. Bradlees Stores, Inc. (In re Bradlees Store,
   Inc.)*, 2001 WL 1112308 (S.D.N.Y. September 20, 2001).......................................... 5

*In re Bradlees Stores*, 2001 WL 1112308....................................................................... 7

## TABLE OF AUTHORITIES
(continued)

**Page**

## FEDERAL STATUTES

11 U.S.C. § 365.................................................................................................1, 4, 6, 13

11 U.S.C. § 365(g) ...................................................................................... 6

H.R. No. 95-596, 95th Cong., 1st Sess., 347 (1977) ........................................................ 7

11 U.S.C. § 365............................................................................................ 1

Remy International, Inc. ("Remy"), by and through its undersigned counsel, hereby files

this Objection ("Objection") to Debtors' Tenth Omnibus Motion Pursuant to 11 U.S.C. § 365 to

Reject Certain Executory Contracts, filed November 16, 2009 ("Motion"), specifically as to item

5 of Exhibit A attached thereto, which contract is listed as an Asset Purchase Agreement

("APA") with DRA, Inc., DR International, Inc. ( "Remy") as the contract counterparty with

General Motors Corporation, dated May 13, 1994. Item 5 lists the contract date of May 13, 1994

and the proposed rejection date as December 3, 2009.

Remy requests the Court sustain Remy's objection to Debtors' motion to reject the APA

because the APA is legally and factually not an executory contract. Remy also requests the Court

sustain its objection because the Debtors have not shown that rejection of the APA would benefit

the Debtors' estate. Remy also requests production of all insurance policies transferred from

Debtor to General Motors Company ("New GM"), excess and primary, under which Remy was

named as an additional insured plus all policies under which Debtors have defended and

indemnified Remy pursuant to the Asset Purchase Agreement. Finally, to the extent Debtors

characterize the APA as containing "certain continuing environmental obligations" Remy

requests that these obligations be assumed by New GM as part of the 363 Sale Agreement under

which certain environmental obligations were transferred from Debtor to New GM.   In support

of this Objection, Remy states as follows:

## I.
## BACKGROUND

1.      Delco Remy was a division of debtor Motors Liquidation Company f/k/a General

Motors Corporation ("GM" or "Debtor" ) until 1994, when substantially all of the assets of that

division, including its name, were sold to DRA, Inc., a Delaware corporation created in 1993 by

1

a group of private investors.[1]  That sale was accomplished through the Asset Purchase

Agreement By and Among DR International, Inc., DRA and General Motors Corporation (the

"APA") dated July 13, 1994.  Prior to its purchase of the assets of GM's Delco Remy division,

DRA, Inc. did not manufacture, distribute or sell any products – it was merely a shell corporation

incorporated to carry out the asset purchase under the APA.[2]

2.      Under the terms of the APA, Remy did not assume any responsibility for GM

products manufactured prior to the close of the APA on July 13, 1994, nor did it assume

responsibility for any real property or premises owned or occupied by GM prior to that date.  To

the contrary, GM retained any and all liability for products manufactured prior to the close of the

APA as well as for all GM owned/leased premises leased to Remy. In addition to assuming

liability for the above products and premises, GM also agreed to indemnify Remy for damages

and expenses arising out of products manufactured prior to the close of the APA, as well as for

damages and expenses arising from GM's owned/leased premises leased to Remy.  There is

agreement  that since July 13, 1994 GM and Remy have performed under the terms of this

Agreement, both parties executing their responsibilities arising therefrom, and that GM has

defended and indemnified Remy in all lawsuits arising from the above products and premises in

accordance with the terms of that contract.

3.      Since the 1994 asset purchase and through the present, Remy f/k/a Delco Remy

has been named in lawsuits claiming injury from Debtors' (specifically GM's) products,

specifically alleging exposure to asbestos. Remy has tendered those lawsuits to GM for defense

and indemnity pursuant to the APA, and GM has consistently accepted those tenders.  On July

---

[1] In 2004, DRA, Inc. changed its name to Remy International, Inc.  Thus, DRA, Inc. and Remy are the same
corporate entity.

[2] The assets purchased pertained to alternators and starters.

2

16, 2009, post GM's bankruptcy filing, Remy was informed by GM that GM would no longer

abide by the APA due to GM's bankruptcy filing, but the filing of this Motion is the first notice

Remy has received from Debtors' of their position that the APA is an executory contract.  Of

course, the filing of this Motion clearly shows that the APA is currently, and has been since July

13, 1994, a binding and valid contract.

4.      Since GM's bankruptcy filing on June 1, 2009 and since the notice from Debtors

to Remy on July 16, 2009 of Debtors' breach of the APA, two new asbestos cases have been

filed against Remy and a case previously tendered was returned by GM (post-bankruptcy filing)

to Remy to defend before trial.  In the latter case, *Lewis*, Remy obtained a dismissal after

expenditure of approximately $18,000 in defense costs.  In the two newly filed cases, *Nangle* and

*Riggins,* Remy has requested dismissals and has been promised a dismissal in *Nangle* and has

just received a dismissal in *Riggins*. There are also four other active cases in which GM has

accepted Remy's tender and has been defending Remy under the APA  Two of those cases,

*Wydra* and *Phillips*, are currently stayed by the court.  In another case, *Bynum*, Remy is

expecting a dismissal after it obtained information showing that Remy never owned or occupied

the plant in which the plaintiff alleges exposure to asbestos.  Finally, a dismissal of Remy is

pending in the *Cawlfield* case.[3]

5.      Since the June 1, 2009 bankruptcy filing and the July 16, 2009 email notice from

GM of GM's breach of the APA, Remy has been forced to expend attorney fees to both procure

information from GM as to the active cases, such as defense status, history and product

information, and also to defend itself in those cases despite the Debtors' obligation to defend and

---

[3] The limited number of asbestos cases filed against Remy have been filed because of name confusion; plaintiffs'
counsel believe that Remy is the same as Delco, the after-market outlet for brakes. When the name confusion is
"cleared up," Remy is dismissed from the cases. Remy is also dismissed because its products, alternators and
starters, do not contain asbestos.

3

indemnify Remy under the APA. Of course, as admitted by Debtors through its filing of the Motion, the APA has been in full force and effect since July 13, 1994, and Debtors have not established that any additional performance is required by Remy.

6.      Remy seeks to have this Court deny Debtors' motion as to item 5, as the APA is not an executory contract which can be rejected by Debtors.  Remy also seeks access to GM insurance policies under which Remy, as Delco Remy a division of GM, would have been a named insured under said policies and should be covered for the claims which GM is obligated under the APA to defend and indemnify Remy.   To the extent those policies have been transferred and/or assigned from Debtors to New GM, Remy requests this Court order New GM to provide to Remy all insurance policies, both primary and excess, which would cover/insure GM for product and premises liability coverage. To the extent that GM, as owner of the leased properties, has maintained environmental liabilities for these leased properties, Remy requests that these liabilities for these GM owned properties were transferred to New GM as part of the sale and should be assumed by New GM.

## II.
## THE APA IS NOT AN EXECUTORY CONTRACT TO
## WHICH SECTION 365 OF THE BANKRUPTCY CODE APPLIES

7.      In this Omnibus Motion**,** Debtor seeks an order rejecting five allegedly executory contracts pursuant to 11 U.S.C. § 365.  Four of the items sought to be rejected are Class Action settlement agreements with contract dates of 2008 and 2009. The fifth item, the Asset Purchase Agreement was entered into between Debtors and Remy on July 13, 1994.  It is not an executory contract.  Remy's objection to Debtor's motion should be sustained because the APA is not an executory contract and is therefore not subject to rejection by the Debtor.  The APA is a contract that has been fully executed by Remy; the only continuing obligations under that contract are on one side, with the Debtor. Since 1994, GM and Remy have both been bound by and operating

4

under the terms of the APA.  Merely because the APA has one-sided continuing obligations of

defense and indemnity owed by GM to Remy does not convert this contract into an executory

contract. The law is clear on this point.  Because the APA is not an executory contract, it may not

be rejected because Debtors have no authority to reject a contract which is not executory.

8.      The definition of executory contracts given by Vern Countryman in *Executory*

*Contract in Bankruptcy: Part 1*, 57 Minn. L. Rev. 439, 460 (1973) is widely cited as the

controlling test in the context of assumption or rejection of contracts under Section 365 of the

Bankruptcy Code.  An executory contract is:

> [a] contract under which the obligation of both the bankrupt and
> the other party to the contract are so far unperformed that the
> failure of either to complete the performance would constitute a
> material breach excusing the performance of the other.
> (Countryman, *Executory Contracts in Bankruptcy: Part I*, 57
> Minn. L. Rev. 439, 460 (1973).)Most courts have adopted the
> definition proposed by Professor Vern Countryman, describing an
> executory contract as one that is not so fully performed that a
> breach by either side would constitute a material breach of the
> contract. *Penn Traffic Company v. COR Route 5 Company, LLC*
> 2005 WL 2276879 at 2 (S.D.N.Y. September 16, 2005); see also
> *Shoppers World Community Center v. Bradlees Stores, Inc. (In re
> Bradlees Store, Inc*.) 2001 WL 1112308 at 6 (S.D.N.Y. September
> 20, 2001); *In re Teligent, Inc.,* 268 B.R. 723, 730 (Bankr. S.D.N.Y.
> 2001).

The Countryman definition of executory contract excludes from the purview of § 365 of

the [Bankruptcy] Code those contracts where one party has completed performance. *See In re*

*Chateaugay Corp*., 102 B.R. 335, 345 (Bankr. S.D.N.Y. 1989) (holding that the Countryman

definition "clearly requires that material future performance obligations remain on both sides of

a contract in order for the contract to be executory"), citing *In re J .M. Fields Inc*., 22 B.R. 861,

864 (Bankr. S.D.N.Y. 1982); *see also, In re Spectrum Info. Technologies, Inc*., 190 B.R. 741,

747 (Bankr. E.D.N.Y. 1996) ("contracts where one party has completed performance are

excluded from the ambit of section 365"); *In re Safety-Kleen Corp*., 410 B.R. 164 (Bankr. D.

5

Del. 2009) (holding that "[i]f one party has fully performed its obligations, the contract should not be thought of as executory," and that "a contract is executory if both parties have unperformed obligations that, if not completed, would result in a material breach").) The Countryman definition clearly requires that material future performance obligations remain on both sides of a contract in order for the contract to be executory under §365 of the Code. (*In re Chateaugay, supra*, 102 B.R. at 345; *In re Leonard Bluman* 125 B.R. 359 (E.D.N.Y. 1990).)

9.      Other courts have utilized a "functional" analysis to determine whether a contract is executory by the benefits of assumption or rejection to the estate.  (*See*, *In re Riodizio*, 204 B.R. 417, 422 (Bankr. S.D.N.Y. 1997).)  When a Court utilizes a functional analysis for executory contracts:

> [I]t is necessary to work backward, proceeding from an examination of the goals rejection is expected to accomplish. . . . If those purposes have already been accomplished or if they cannot be accomplished through rejection, then the contract is not executory within the meaning of the [Bankruptcy] Code.  *In re Bluman*, 125 Bankr. at 363 (quoting *In re Government Securities Corp.*, 101 Bankr. 343, 349 (Bankr. S.D. Fla. 1989) *aff'd*, 111 Bankr. 1007 (S.D. Fla. 1990) (citing *In re Jolly*, 574 F.2d 349, 351 (6th Cir.), *cert. denied*, 439 U.S. 929, 99 S. Ct. 316, 58 L. Ed. 2d 322 (1978)).  (*In re Spectrum, supra*, 190 B.R. at 747.)

The Countryman definition is generally accepted as the most stringent test, *In re Teligent, Inc.* 268 B.R. 723, 730(Bankr S.D.N.Y. 2001) and thus if a contract is executory under that standard the contract is necessarily executory under the functional approach. (*In re Helm,* 335 B.R. 528 (Bankr. S.D.N.Y. 2006).) Because rejection of an executory contract results in a claim against the debtor's estate (*see*, 11 U.S.C. § 365(g)), and because a party who has fully performed a contract also has a claim against the estate if the debtor fails to perform, "a contract is not executory if the bargained for benefits were received by the debtor pre-petition. . . ."  (*In re Chateaugay, supra*, 102 B.R. at 345 n.11.) A contract is not executory within the meaning of 11

6

U.S.C. §365 (a) unless it is executory as to both parties. (*Lubrizol Enterprises v. Richmond Metal Finishers* 756 F.2d 1043 (4th Cir. 1985); *In re Texaco* 73 B.R. 960 (Bankr. S.D. N. Y. 1987); *In re Monument Record Corp.,* 61 B.R. 866 (Bankr. M.D. Tenn. 1986); *In re Chipwich Inc.,* 54 B.R. 427 (Bankr. S.D.N.Y. 1985); *In re Stein & Day, Inc.* 81 B.R. 263 (Bankr. S.D.N.Y. 1988).)

10.    The Second Circuit has not formally adopted either the Countryman test or the functional approach test.  (*In re Bradlees Stores*, 2001 WL 1112308 at 7.) Nevertheless, many courts have relied on the Countryman test to determine the meaning of "executory contract" under §365.  (*Id.*)  Some district courts therein have used both the Countryman and functional analysis tests at various times.  (*See*, *In re Spectrum, supra*, 190 B.R. at 752; *see also*, *In re Riodizio, supra*, 204 B.R. at 424 n.5, *citing In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 998-999 (2d Cir. 1996).)  Under either test, a contract cannot be considered executory "where the only performance that remains is the payment of money" by the debtor.  (*See, In re Chateaugay*, *supra*, 102 B.R. at 345; citing H.R. No. 95-596, 95th Cong., 1st Sess., 347 (1977); *see also*, *In re Spectrum, supra*, 190 B.R. at 747.) [4]

11.    Under the Countryman definition, contracts where one party has completed performance are "excluded from the ambit of section 365. (*See, In re Chateaugay Corp.,* 102 B.R. 335, 345 (Bankr. S.D.N.Y. 1989) (Countryman definition requires that material future performance obligations remain on both sides of a contract), citing *In re. J.M. Fields, Inc.,* 22 B.R. 861, 864 (Bankr. S.D. N.Y. 1982); *see also, In re Spectrum Info. Technologies* 190 B.R. 741, 747 (Bankr. E.D.N.Y. 1996) ("contracts where one party has completed performance are excluded from the ambit of section 365").) Long ago, Remy performed under the APA when it paid GM money for certain assets and obtained a promise from GM to defend and indemnify

---

[4] If the only unperformed contractual obligation is the debtor's obligation to pay money (e.g., a promissory note), the contract is not considered executory. (see H.R. No. 95-596, 95th Cong., 1st Sess., p. 347 (1977)]

7

Remy in lawsuits filed within the parameters of the APA.  Remy's performance is over,

executed. There is no further material obligations for Remy to perform. Remy paid consideration

under the APA for the continuing indemnity and defense obligations of GM thereunder. Any

remaining obligation of Remy's tender of lawsuits to GM per the APA is a deminimus /

ministerial / administrative task. GM's performance is ongoing, continuing[5]. GM has been

performing under the APA since 1994 by defending and indemnifying Remy in lawsuits coming

within the parameters of the APA, demonstrating the continuing nature of its obligations under

the APA, despite the fact that there are no performance obligations and have been no

performance obligations for Remy since 1994.  In short, Remy purchased the assets, paid the

money and in exchange was provided indemnity and defense by GM since 1994.  Remy's

performance was complete in 1994. GM's obligation to perform under the contract continues. It

is clear, both factually and legally, that the APA is not an executory contract, and based thereon

this Court must sustain Remy's objection filed herein.

12.    New York district courts have specifically held that a contract containing an

indemnity provision is not executory if the indemnitee has fully performed the contract.  "Here,

an obligation by Debtors to defend and indemnify alone without any other material remaining

obligations is insufficient to characterize these [] Agreements as executory."  (*In re Chateaugay,

supra*, 102 B.R. at 348; citing *In re THC Fin. Corp.*, 686 F.2d 799, 804 (9th Cir. 1982); *see also,

In re Spectrum, supra*, 190 B.R. at 748-752 (holding, under both the Countryman and functional

analysis definitions, that several contracts containing continuing indemnity obligations on the

---

[5] Courts considering insurance policies in which the policy periods have expired and the initial premiums have been
paid routinely find that they are not executory contracts despite continuing obligations on the part of the insured.
(See *In re. Texscan Corp.*, 976 F.2d 1269, 1271-73 (9th Cir. 1992); *In re Sudbury, Inc.* 153 Bankr. 776, 778-780
(Bankr. N.D. Ohio 1993); *In re Firearms Import & Export Corp.*, 131 Bankr. 1009, 1013-14(Bankr. S.D. Fla. 1991);
*In re Federal Press Co.*, 104 Bankr. 56 (Bankr. N.D. Ind. 1989).) These courts have reasoned that the failure of the
insured to perform those continuing obligations would not excuse the insurer from being required to perform and,

part of the debtor were not executory contracts despite also containing continuing confidentiality, non-interference, restrictive covenants, and/or consulting obligations on the part of the other parties to the contracts).)

13.    Courts outside of New York have also held that a contract containing an indemnity provision is not executory if the indemnitee has fully performed the contract.  In *THC, supra*, the Ninth Circuit held that a debtor's "agreement to indemnify ERS contains only one obligation: [debtor] is obligated to pay ERS if ERS incurs any loss as a result of the attornment agreement. The consideration for the indemnification . . . has long since been fulfilled. We therefore conclude that the agreement was not executory." (*In re THC, supra*, 686 F.2d at 804.) Then in *In re: E.J. Preston*, 53 B.R. 589 (Bankr. M.D. Tenn. 1985), the court held that "[t]o be executory, it is necessary that performance remain for both parties.  An indemnity agreement would not be considered an executory contract where the indemnitee has fully performed under the contract, leaving the indemnitor's promise as the only remaining obligation." (*In re Preston, supra*, 53 B.R. at 592 (finding an indemnity contract to be executory because the indemnitee had continuing obligations under the contract to supply the debtor/indemnitor with automobiles).) Based on the above cases, it is clear that the APA is not an executory contract subject to Section 365 of the Bankruptcy Code, and Debtors' motion as to Remy must be denied.

14.    While Debtors have not identified any continuing obligations on the part of Remy in the Motion, even if they did, the fact would remain that the APA is not an executory contract. Courts have indicated that even if some bilateral contractual obligations remain, a contract that has been substantially performed is not executory.  (*See, In re Spectrum, supra*, 190 B.R. at 748-752 (finding that contracts were not executory because continuing confidentiality, non-

---

consequently, that the Countryman definition of an executory contract not be satisfied. (*In re Ames Dept. Store* 1995 U.S. Dist. Lexis 6704 (S.D.N.Y.).)

RC1/5434189.9/KNS

interference, restrictive covenants, and/or consulting obligations on the part of the non-debtors did "not rise to a level of material future performance"); *In re Norwood Chevrolet Co.,* 143 B.R. 804 (Bankr. D.R.I. 1992) (substantial performance by both parties precluded rejection of contract); *Heartline Farms v. Daly*, 128 B.R, 246, 250 (D.Neb. 1990) ("mere formality" remaining for performance "does not represent the kind of significant legal obligation that would render a contract executory"); *In re Pacific Exp. Inc.*, 780 F.2d 1482, 1487 (9th Cir. 1986) (holding that an "installment sale no longer involves an executory contract when the seller has already delivered the thing sold").)  Remy's obligations under the APA have been performed since 1994; Remy is entitled to a complete defense and indemnity obligation from GM under the contract. The Asset Purchase Agreement is not an executory contract subject to this motion by the Debtors, and thus Remy's objection to Debtors' motion to reject the APA must be denied.

## III.
## DEBTORS HAVE MADE NO SHOWING THAT REJECTION OF THE APA WILL BENEFIT THE DEBTORS' ESTATE

15.    Because the APA is not an executory contract the Debtors' Motion should be denied as to Remy. *Assuming arguendo* that even if the Court were to find that the APA is an executory contract, which it is not, the Motion should nevertheless be denied because the Debtors have failed to make any factual showing that rejection of the APA will benefit in the Debtors' estate.

16.    Whether a debtor should be permitted to assume or reject an executory contract is governed by the business judgment test.  However, the Debtors fail to note that under the business judgment test the debtor bears the burden to "demonstrate that rejection of the executory contract will benefit the estate." (*In re Stable Mews Associates, Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984), citing *Matter of Minges*, 602 F.2d 38 (2d Cir. 1979); *Local Joint Executive Board, AFL-CIO v. Hotel Circle, Inc.*, 419 F.Supp. 778 (S.D. Calif. 1976), *aff'd.*, 613

10

F.2d 210 (9th Cir. 1980).)  "The primary element of such a showing is the extent to which a rejection will benefit the general unsecured creditors of the estate." (*In re Stable Mews*, *supra*, 41 B.R. at 596.)  It is in this required showing that the Debtors' Motion fails utterly.

17.    As stated above, there must be a showing made in the Motion that the Debtors' decision to reject the purported executory contract will benefit the Debtors' estate and is an exercise of sound business judgment.  (*See*, *In re Anglo Energy*, 41 B.R. 337, 340 (Bankr. S.D.N.Y. 1984) (holding that "the courts appl[y] a 'business judgment' test whereby the debtor [is] required to demonstrate that the assumption or rejection would benefit the estate"); *see also*, *Sharon Steel Corp. v, National Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3rd Cir. 1989) (noting that the debtor or trustee must demonstrate that rejection of the contract in question will benefit the debtor's estate); *In re Chi-Feng Huang,* 23 BR 798, 800-802 (9th Cir. BAP 1982); *In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd Cir. 1993), cert denied 114 S.Ct. 1418; *In re Anglo Energy*, 41 B.R. 337 (Bankr. S.D.N.Y. 1984).)  Here, the Debtors have made no factual showing in the Motion whatsoever as to the alleged benefits that will inure to the estate if the APA is rejected.[6] Instead, Debtors provide only the most flimsy and conclusory statements that the contracts that are the subject of the Motion are "not necessary for Debtors' continuing business operations" and "would impose unnecessary costs and burdens on the Debtors' estates."  (Motion at ¶¶ 8, 12.)  Because the Debtors have failed to carry their burden to show that the rejection of the Asset Purchase Agreement will benefit the bankruptcy estate in this instance, the Remy's objection to Debtor's motion should be sustained.

---

[6] The product line Remy purchased from GM, starters and alternators, according to GM never contained asbestos. Remy never made brakes and since Remy changed its name from Delco Remy to Remy, the name confusion with the after market Delco brakes entity of GM, has been reduced and is gradually being eliminated. Today, Remy continues to supply New GM LLC with starters and alternators for new GM cars. Debtors have failed to meet their burden, evening assuming that APA were an executory contract (which it factually and legally is not) that the APA is a burden on the estate.

11

18.     It is interesting that on page 4 of Debtors' motion, in their description of the executory contracts sought to be rejected, Debtors' describe Remy's contract as: "(2) a purchase and sale agreement with DR International, Inc., which contains certain continuing environmental indemnity obligations." Remy is unaware of any continuing environmental indemnity obligations, which Debtor cites in its motion as the reason for their rejection of the APA. Pursuant to the APA, GM owned their plants and leased some of these facilities to Remy. It is clear from the APA that GM maintained and kept all environmental obligations with the property/facilities that it owned and leased to Remy. Remy objects to any attempt to now shift GM's environmental liabilities onto Remy, which are clearly contrary to the provisions of the APA. Also, according to the 363 Sale documents, some outstanding environmental obligations of Old GM/Debtors were to be transferred to and assumed by New GM. Thus, to the extent that Debtors have any continuing environmental obligations to Remy, of which Remy is currently unaware because GM has been defending and indemnifying Remy, Remy requests confirmation that these obligations have been transferred upon the sale from Old GM/Debtors to New GM.

19.     If GM has "continuing environmental obligations," those obligations were transferred and assumed by New GM. These continuing environmental obligations arose from premises which GM always owned. There is no basis now for these obligations to be assumed by Remy, as Remy never owned these facilities and Remy is unaware what environmental obligations GM has assumed., because Remy has not been involved with any of these environmental obligations.

20.     Therefore, to the extent these obligations exist, Remy requests this court confirm that New GM is required to continue to defend and indemnify Remy for these environmental obligations. Otherwise, if Debtors' basis to reject the APA with Remy is inaccurate, then such

12

inaccuracy only further exemplifies that Debtors have failed to show any reason for rejection of this executed contract.

## IV.
## CONCLUSION

Based on the foregoing, Remy respectfully requests that the Court sustain the Objection of Remy International, Inc. to Debtors' Tenth Omnibus Motion Pursuant to 11 U.S.C. § 365 to Reject Certain Executory Contracts, and direct both Debtors and New GM to provide to Remy copies of all insurance policies, primary and excess, under which Remy, as Delco Remy was a named insured as well as to those policies applicable to the actions for which Debtors have provided indemnity and defense to Remy since 1994. Finally, to the extent that GM has environmental obligations, Remy requests the transfer of these obligations to New GM be confirmed.

Dated: December 9, 2009
      San Francisco, CA

Respectfully submitted,

ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ N. Kathleen Strickland
    N. KATHLEEN STRICKLAND, Esq.
    Ropers Majeski Kohn & Bentley
    201 Spear Street, Suite 1000
    San Francisco, CA 94105
    Telephone:(415) 543-4800
    Facsimile: (415) 972-6301
    Email:    kstrickland@rmkb.com

    GEOFFREY W. HEINEMAN, Esq.
    Ropers Majeski Kohn & Bentley
    17 State Street, Suite 2400
    New York, NY 10004
    Telephone:(212) 668-5927
    Facsimile: (212) 668-5929
    Email:    gheineman@rmkb.com

    Attorneys for Creditor
    REMY INTERNATIONAL, INC.

13