**Presentment Date & Time: December 16, 2009 at 2:00 p.m. (ET)**
**Objection Deadline: December 9, 2009 at 5:00 p.m. (ET)**

KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 972-3000

*Counsel for Florian Hinrichs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
In re                                                     :
                                                          :   Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                       :
f/k/a GENERAL MOTORS CORP., et al.,                       :   Case No. 09-50026 (REG)
                                                          :
Debtors.                                                  :   (Jointly Administered)
                                                          :
----------------------------------------------------------x

**REPLY TO DEBTORS' OPPOSITION TO THE APPLICATION OF FLORIAN HINRICHS FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING AND DIRECTING (A) THE PRODUCTION OF DOCUMENTS AND (B) THE ORAL EXAMINATION OF INDIVIDUALS DESIGNATED BY THE DEBTORS AND BELIEVED TO HAVE KNOWLEDGE OF THE RELEVANT MATTERS**

TO: THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE

Florian Hinrichs ("Hinrichs"), by his counsel, hereby submits this reply ("Reply") to Debtors' opposition ("Opposition") to the application of Hinrichs for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") directing (A) the production of documents, and (B) the oral examination of individuals designated by the Debtors and believed to have knowledge of the relevant matters (the "Application"). In support of its Reply, Hinrichs respectfully represents as follows:

## BACKGROUND

1.      In 2007, an uninsured drunk motorist rammed a GM truck in which Hinrichs, then a 27-year old German Army officer, was a passenger. At the time, Hinrichs was stationed at Ft. Rucker, Alabama for training. During the accident, Hinrichs' vehicle rolled over, crushing his neck, rendering him a paraplegic for life. Hinrichs is currently in Germany under extensive care.

2.      Hinrichs commenced an action against GM asserting, *inter alia*, certain product liability causes of action (including defective roof and seat belt systems), the main action entitled: *Florian Hinrichs* v. *General Motors Corp., et al.,* Circuit Court for Geneva County, Alabama, Case No. CV-2008-900009 ("Alabama State Case"). In the Alabama State Case, Hinrichs seeks damages personal to him for, *inter alia*, pain and suffering, payment of medical expenses, loss of wages and income, and transportation and other expenses. Hinrichs has asserted damages in an amount not less than $25 million as a result of these injuries and expenses.

3.      Additionally, pursuant to German Law, the Federal Republic of Germany ("FRG") has paid and continues to pay Hinrichs' medical and related expenses, and as a result FRG has asserted a subrogation claim against GM for reimbursement of such expenses.

4.      In addition to the instant Application, FRG also filed its own Rule 2004 application on July 29, 2009, seeking the same information as in the instant Application in that its claims are inter-related to those of Hinrichs ("FRG's 2004 Application").

5.      Not unexpectedly as a result of the severe injuries sustained by him, Hinrichs, as well as FRG in its Rule 2004 application, has sought all information relative to any insurance policy providing coverage to GM with respect to Hinrichs' accident, including any

excess coverage, reinsurance coverage, self-insured retention and self-insured policy in effect, and any reserves set by the Debtors for payment of any damage award to Hinrichs. This information should be readily available to GM, or at the very least could be easily obtainable by GM without much effort.

6. However, despite four months of attempting to obtain such information, GM has refused to provide the necessary insurance information, instead only providing the following (i) a declaration of Howard Chu ("Mr. Chu's Declaration"), purportedly a former claims manager for old GM and a current claims manager for New GM, and (ii) a redacted declaration page from the underlying policy.

7. Mr. Chu's Declaration stated that "Debtor would be directly responsible for satisfying any judgment entered in this case up to $35,000,000" and that "[b]ecause of the self-insured retention, there are no insurance policies directly relevant to the Alabama State Case at this time." We have requested an opportunity to depose Mr. Chu regarding the unanswered questions, but this request has been denied. The Debtors have refused to turn over any other documents or even provide a sworn declaration to substantiate the representations by Debtors' counsel regarding many still unanswered questions set forth in the Application.

8. Consequently, GM has indicated that it would turn over a copy of the *unredacted* declaration page of the applicable insurance ***only*** upon Hinrichs and FRG agreeing to withdraw their Rule 2004 applications ***with prejudice***.[1] It was explained to Debtors that Hinrichs could not agree to such a condition for several reasons, such as if the declaration page does not provide the requisite information and thus more information is necessary. The question is *why* do the Debtors continue to refuse to provide a copy of the applicable insurance policy in

---

[1] At the eleventh hour (the Friday before the hearing to be exact) this condition was dropped but Debtors still refused to provide the complete policy and other relevant documents.

its entirety? In light of the magnitude of Mr. Hinrichs Injuries, and by extension his claim and that of FRG, it does not take a lot of effort to understand that the insurance policy, as well as any excess coverage, is necessary to permit Hinrichs to protect his interests in this matter.

9.  By their Opposition, the Debtors have argued that (i) good cause does not exist for the requests set forth in Hinrichs' 2004 Application, (ii) Hinrichs is attempting to gain discovery outside of the bankruptcy claims process, and (iii) responding to the 2004 Application would unduly burden the Debtors estate. It is respectfully submitted that the Debtors have failed to provide support for each of these arguments and the Application must be granted in all respects.

**I. Good Cause Exists for the 2004 Application and Denial Of Request Will Cause Hinrichs Undue Hardship And Injustice**

10.  As a result of the accident, Hinrichs sustained permanent and severe injuries, and has asserted a claim against the Debtors as a result of these injuries and damages. As a result of the bankruptcy, the Alabama State Action has been stayed as to the Debtor.

11.  By his Application, Hinrichs is solely trying to understand the insurance coverage available to cover this accident and the resultant damages. Such information is necessary to allow for Hinrichs to protect his interests in this matter. If there is coverage, then Hinrichs should have a right to assert a claim against the insurance policy outside of the bankruptcy case. Any insurance coverage will allow Hinrichs to move forward with his claim, as any delay is prejudicial and damaging to him as a result of his current injuries.

12.  Many questions remain unanswered, and in fact, the Opposition admits that Mr. Chu's Declaration only responds to "request numbers 4, 5, and 8 of the Document Subpoena" (Debtors' Hinrichs Obj ¶ 9). In fact, Debtors still have not formally responded to, among others, the following document requests in any meaningful way:

**Request No. 6:** All documents related to GM's calculation of the amount needed to be set aside in order to self-insure the Alabama State Case, including but not limited to, actuarial information, risk analysis, and general insurance information.

**Request No. 7:** Identify all policies of insurance, and the limits of coverage for each, that could apply to the claims made against the Debtors named in the Alabama State Case. Include self-insured, private, and umbrella policies. For each policy, state the policy number, the dates of coverage, and the company issuing the policy. Provide a complete copy of the declarations and policy for each.

**Request No. 9**: For any self-insured program relevant to the Alabama State Case, identify the State(s) and/or Insurance Commission under which self-insured status was obtained, provide documentation establishing the Debtors' self-insured status, provide documentation establishing the amount of self-insurance coverage, and provide the dates of self-insured status. Provide all documentation establishing the Debtors' compliance with the terms of the self-insured program. Identify the financial institution, with applicable account numbers, that maintained the Debtors' funds for the self-insured program(s); and provide a balance statement for those accounts from 2007 through the present.

13. With respect to Request No. 7, Debtors' claim that the policy's declaration page should be sufficient to satisfy any questions related to the insurance coverage as set forth in Request No. 7; however, this is not accurate. First, Hinrichs believes that he has a right to review the entire policy, not just the declaration page, and has requested same. The Opposition does not provide any reasoning for not providing the policy itself.[2] Second, Debtors' insistence that the excess or umbrella policy (amount over $35 Million) is not relevant to the Alabama State Case because Hinrichs filed a proof of claim for only $25,000,000 is misplaced. The proof of claim estimated the amount of Hinrichs' claim, which was not less than $25 million, and in fact, any damage award could exceed any self-insured retention that Debtors claim to have under the applicable policy. Thus, the excess policy is relevant to the Alabama State Case. For this reason alone, it is important to review and understand the specific terms under any applicable insurance agreement, especially as a result of the bankruptcy case.

---

[2] Hinrichs and FRG have offered to enter into an appropriate confidentiality agreement with respect to the entire policy, but the Debtors have refused this solution.

14. With respect to Request No. 9 and No. 6, Debtors responded informally by email that either no such information exists and/or all such information is privileged. Unfortunately there is a history of the Debtors refusing to provide necessary information in product liability cases.[3] As a result, we believe that it is necessary that the Debtors' provide us with responses only through a sworn declaration, as well as outline the specific privileges that they claim to assert to such information. To date, we have no further explanation for either.

15. As a result of certain ambiguities with his declaration, we had asked the Debtors to make Mr. Chu available *by telephone* to answer a few questions regarding the statements he made about the relevant insurance policies; however, again, they refused to do so.

16. Hinrichs also seeks information regarding any reserves that may have been set, and thus possibly available, to satisfy any damage award in the Alabama State Action. To date, the Debtors have refused to provide such information, stating only that it is privileged without further explanation.

## II. **The 2004 Application does not seek restricted discovery.**

17. Hinrichs is solely seeking information regarding insurance coverage which may be applicable to his accident and injuries. To the extent any insurance coverage is available, the Debtors have no justification for not providing such information. Other than stating the boilerplate language in their Opposition, the Debtors have failed to provide any evidence that Hinrichs is seeking improper discovery outside the claims process.

18. Hinrichs is not seeking to liquidate its claim at this time, it only seeks limited information regarding coverage possibilities. As noted above, it is essential that

---

[3] Among other reasons, Hinrichs insistence on having responses to his inquiries substantiated by sworn testimony is a direct and unfortunate result of the Debtors' history of not turning over documents that they knew they had in their possession. In numerous cases, GM has been sanctioned as a result of such actions.

Hinrichs' counsel receive such full and complete information so as to determine how to proceed with the Alabama State Action. Time is of the essence as a result of Hinrichs' severe injuries.

### III. There is no burden to the Debtors in responding to the 2004 Application.

19. Time and again, the Debtors have asserted that they are not in possession of the insurance policy information. However their actions and statements make this statement unbelievable. First, the Debtors have asserted that there are thousands of similar claims that have been against GM, and thus it only makes sense that they are in possession of such insurance policies covering these claims. Second, the Debtors are apparently still named as the secondary insured party on such policy, which alone should give them the requisite control of the necessary documents. Third, Debtors have produced the *unredacted* declaration page[4]. If they have the declaration page, it only makes sense that they have the entire policy as well. Finally, the Debtors have produced a declaration from Mr. Chu, who they assert is familiar with the insurance coverage and policy. Clearly Mr. Chu can be made available to respond to a few questions by these movants. Further, it is more burdensome to draft and produce Mr. Chu's declaration than to just provide a copy of the policy. Also, if they have access to Mr. Chu, then it is not inconceivable that they can just ask him to obtain and provide the requisite insurance policy. Based upon the nature of this bankruptcy case, it would be hard to believe that documents are not exchanged between Old GM and New GM as necessary.[5] A balancing of burdens and harms clearly weighs in favor of Hinrichs.

20. The Debtors have failed to provide *any* evidence that responding to the 2004 application would create an undue burden to their estates. The fact of the matter is that it is

---

[4] The *unredacted* declaration page was finally produced on the Friday before the hearing was set, only two days before this Reply was due.

[5] There should also be a document sharing arrangement between the parties because a claim filed against New GM today involving an old GM vehicle would require that New GM produce documents that are in the possession, custody or control of the Debtors, the existence of a reciprocal arrangement is not difficult to imagine.

not, and providing the insurance coverage information can only benefit the estate at the end of the day.

21. By contrast, the harms to Hinrichs could be substantial if he is not permitted to obtain information regarding possible coverage for any damage award as a result of his life-altering injuries.

## REQUEST FOR RELIEF

WHEREFORE, it is respectfully requested that this Court enter judgment:

(a) granting the relief requested in the Application;

(b) directing the Debtors to produce, in unredacted form and in full and complete copies of each, each of the respective documents described in the Document Request Subpoena as Exhibit A to the attached proposed order;

(c) authorizing Hinrichs to issue a subpoena directing certain individuals of Debtors' choosing believed to have knowledge of the relevant matters to submit to oral examination, pursuant to Rule 2004(c) of the Bankruptcy Rules and Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7030, concerning the matters set forth in Exhibit A to the attached proposed order; and

(d) granting Hinrichs such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 13, 2009

KLESTADT & WINTERS, LLP

By: _/s/ Samir P. Gebrael_____
Tracy L. Klestadt
Samir P. Gebrael
292 Madison Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 972-3000

-   and   -

BEASLEY ALLEN
Rick Morrison
218 Commerce Street
Post Office Box 4160
Montgomery, AL 36104
Telephone: (800) 898-2034

*Co-Counsel for Florian Hinrichs*