# EXHIBIT   B

# WOLFF & SAMSON PC

COUNSELLORS AT LAW

THE OFFICES AT CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NEW JERSEY 07052
973-325-1500
TELECOPIER: 973-325-1501

NEW YORK OFFICE:
140 BROADWAY
FORTY-SIXTH FLOOR
NEW YORK, NEW YORK 10005
212-973-0572

WWW.WOLFFSAMSON.COM

WRITER'S E-MAIL:
JMcKinney@WolffSamson.com

WRITER'S DIRECT DIAL:
973-530-2036

WRITER'S TELECOPIER:
973-530-2236

DAVID SAMSON
ARTHUR S. GOLDSTEIN*
ARMEN SHAHINIAN*
THOMAS R. O'BRIEN*
GAGE ANDRETTA*
DANIEL A. SCHWARTZ*
KAREN N. GILMAN
KENNETH N. LAPTOOK*
FREDRIC P. LAVINTHAL
DAVID M. HYMAN*
DAVID L. SCHLOSSBERG
ROGER J. BREENE
DAVID N. RAVIN*
BERNARD S. DAVIS
HOWARD J. SCHWARTZ*
PAUL M. COLWELL
ROBERT E. NIES
MORRIS BIENENFELD*
DENNIS M. TOFT
GEORGE A. SPADORO*
JEFFREY M. GUSSOFF*
JOHN F. CASEY
JAMES D. McKINNEY, JR.
JOHN A. McKINNEY, JR.

STEPHEN L. FERSZT*
LAURENCE M. SMITH
WILLIAM E. GOYDAN*
DARRYL WEISSMAN*
PETER E. NUSSBAUM
LORI GRIFA*
MICHELLE A. SCHAAP
ADAM K. DERMAN
JEFFREY M. WEINICK*
ADAM P. FRIEDMAN*
MITCHELL S. BERKEY*
CATHERINE P. WELLS
JONATHAN BONDY*
SEAN M. AYLWARD
ROBERT H. CRESPI*
JUNIE HAHN*
JOSEPH TRIPODI*
JEFFREY S. CHIESA
JILL D. ROSENBERG*
JOHN O. LUKANSKI*
ROXANNA E. HAMMETT
BARBARA B. MANAHAN
RONALD L. ISRAEL*
RHONDA CARNIOL*
MARGARET O'ROURKE WOOD*

AARON D. BASSAN
JOSEPH ZAWILA
HOWARD K. UNIMAN
STEVEN S. KATZ*
JUNE S. MELLER*
ANDREW S. KENT*
ERIC J. LEVINE*
DORIT F. KRESSEL*
JOSEPH MONAGHAN
STEPHEN G. CORDARO*
WARREN BARROWS*
LAURIE J. SANDS*
DONNA M. EREM
LEE D. HENIG-ELONA*
JOHN P. MALONEY*
MARC R. LEPELSTAT*
TRICIA M. GASPARINE

CARL B. LEVY
ANDREW D. ELLIS
STEPHEN A. KISKER*
LAUREN M. O'SULLIVAN

JOSEPH A. DICKSON
BRUCE D. ETTMAN*
CARLOS G. MANALANSAN*
JONATHAN A. TYLER*
MYRNA BLUME
BRIAN E. HENNESSEY*
DANIEL D. BARNES*
WILLIAM R. FINZIO
DIANA L. BUONGIORNO
THOMAS J. TRAUTNER
JOSHUA M. LEE
TODD W. TERHUNE
SHANNON L. KEIM

MARK A. FORAND*
DENISE J. PIPERSBURGH*
RUSSEL D. FRANCISCO*
NICOLE F. DiMARIA
DANIEL T. McKILLOP
FARAH N. HOMSI*
DAVID M. DUGAN*
ELISA M. PAGANO
KIRAN V. SOMASHEKARA*
RACHEL C. SANTARLAS*
XAVIER M. BAILLIARD*
KEYANA C. LAWS*
STEVEN M. DIPASQUO*
MELISSA A. SALIMBENE*
NICOLE K. MARTIN
ERIC YUN*
NANCY A. DEL PIZZO*
DARREN GRZYB
BETH J. ROTENBERG*
BRIAN KANTAR*
KEVIN J. BEACH*
ELIZABETH C. YOO*
PETER D. SIMON
JOSHUA M. LEVY*
PATRICIA D. CLEARY*
GRAHAM H. CLAYBROOK*
MAULIK M. SANGHAVI*
RAYMOND A. BRANDES*
WILLIAM J. CANNICI, JR. *
LAUREN R. DEMAURO*
CRISTINA MARTINEZ*
PATRICK B. O'REILLY*
LINDSAY A. SMITH
JOSEPH G. FENSKE*

COUNSEL

OF COUNSEL

BRYMER H. CHIN
PATENT AGENT

*MEMBER NJ AND NY BARS
†MEMBER NY BAR ONLY
‡REGISTERED PATENT ATTORNEY

MARTIN L. WIENER (1942 - 2002)

PLEASE REPLY TO WEST ORANGE

November 25, 2009

***Via Federal Express***
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

In re: **Motors Liquidation Company (f/k/a General Motors Corp., et al.)**
        **Case No: 09-50026(REG)**

Dear Claims Manager:

Enclosed for filing with the United States Bankruptcy Court for the Southern District of New York are an original and two (2) copies of Proof of Claim on behalf of Advanced Environmental Technology Corporation in the above referenced matter.

If same meets with your approval, kindly file same and return a "filed" stamped copy to the undersigned in the envelope provided.

**WOLFF & SAMSON** PC

The Garden City Group, Inc.
November 25, 2009
Page 2

Thank you for your courtesy and cooperation in this regard.

Very truly yours,

John A. McKinney, Jr.

DLB:dlb
Enclosures

1209321.1

**B 10 (Official Form 10) (12/08)**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor: **Motors Liquidation Company (f/k/a General Motors Corp., et al)** | Case Number **09-50026 (REG)** |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): **Advanced Environmental Technology Corporation** | ☐ Check this box to indicate that this claim amends a previously filed claim |
| Name and address where notices should be sent: **John A. McKinney, Jr. Wolff & Samson PC The Offices at Crystal Lake One Boland Drive West Orange, New Jersey 07052-3698** Telephone: **(973) 530-2036** | Court Claim Number:_____ *(If known)* Filed on:_____ |
| Name and address where payment should be sent (if different from above): **Same As Above** | ☒ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. **SEE ATTACHED RIDER** ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:   SEE ATTACHED RIDER**<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:   SEE ATTACHED RIDER** (See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §207(a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:**_____<br><br>3a. Debtor may have scheduled account as: (See instruction #3a on reverse side) | ☐ Contributions to an employee benefit plan -11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7). |
| **4. Secured Claim (See instruction #4 on reverse side.)** Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐Other Describe: Value of Property: $_____  Annual Interest Rate _____% Amount of arrearage and other charges as of time case filed included in secured claim, if any: **None**  Basis for perfection:_____ Amount of Secured Claim: $_____  Amount Unsecured: **Balance** | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority: None** |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) **SEE ATTACHED RIDER** DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAYBE DESTROYED AFTER SCANNING<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* **SEE ATTACHED RIDER** |

| | |
|---|---|
| DATE: **November 25, 2009** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>John A. McKinney, Jr., Attorney for  Advanced Environmental Technology Corporation | FOR COURT USE ONLY<br><br>THE GARDEN CITY GROUP, INC.<br>DEC 1 2009 |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

WS\1209183.1

**INSTRUCTIONS FOR PROOF OF CLAIM FORM** *The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1.   Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2.   Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3.   Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4.   Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of Lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5.   Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6.   Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7.   Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001 (c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### _____DEFINITIONS_____         INFORMATION

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §l0 I (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (*www.pacer.psc.uscourts.gov*) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

## RIDER TO MOTORS LIQUIDATION COMPANY PROOF OF CLAIM
## BY ADVANCED ENVIRONMENTAL TECHNOLOGY CORPORATION

This Proof of Claim is being submitted on behalf of Advanced Environmental Technology Corporation ("AETC"), by and through its defense counsel, Wolff & Samson PC, in connection with claims arising out of the Atlantic Resources Superfund Site located in Sayerville, New Jersey (the "ARC Site"). By separate submission dated November 23, 2009, the ARC Site Participating Parties Group ("Participating Parties Group"), of which AETC is a member, filed a Proof of Claim arising from the same facts and circumstances. This Proof of claim is not intended to modify, supersede, replace or alter the Proof of Claim submitted by the Participating Parties Group.

On June 15, 2007, the Participating Parties Group including, but not limited to, General Motors Corporation ("GM") and AETC, entered into a Consent Decree with the United States Environmental Protection Agency ("USEPA") covering Remedial Design/Remedial Action activities relating to Operable Unit 2 ("OU-2 Consent Decree") at the ARC Site. Pursuant to the OU-2 Consent Decree, which was entered pursuant to the applicable provisions of the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. § 9601 et. seq. ("CERCLA"), the Participating Parties Group, including GM, assumed responsibility for remedial design and remedial action activities at the ARC Site. The participating Parties Group also agreed to perform the remedial design activities at the Horseshoe Road Drum Dump ("HRDD"), which is part of the adjacent Horseshoe Road Superfund Site. A true and correct copy of the OU-2 Consent Decree is attached hereto as Exhibit A.

In addition to the OU-2 Consent Decree, certain members of the Participating Parties Group, including GM, entered into Administrative Orders on Consent with the USEPA relating

to other removal/remediation actions and investigatory activities at the ARC Site and the HRDD. Pursuant to these Administrative Orders on Consent, the members of the Performing Parties Group, including GM, agreed to fund certain remedial design, remedial action and investigatory activities at the ARC and HRDD Sites. GM also entered into the ARC Site Performing Parties Group Agreements,[1] under which it also agreed to pay response costs incurred under the OU-2 Consent Decree, and other related costs.

Documents, records and other information collected by USEPA indicate that GM disposed, or arranged for the disposal of, hazardous substances at the ARC Site. These records establish that GM may be liable for response and/or remediation costs which may be incurred in the future, in order to clean up the Sites under Section 107(a) of CERCLA. Section 113 (f) of CERCLA provides that potentially responsible parties, such as AETC, may seek contribution from other potentially responsible parties for response costs incurred or which may be incurred in connection with a site.

Therefore, AETC seeks any and all such future costs that GM may be responsible for as a component of this Proof of Claim. The exact amount of this claim is currently unknown, but is estimated to be $226,800.00, which includes the remaining costs for Operable Unit 2, as well as future costs that may be required as a result of the recent entry of a Record of Decision for Operable Unit 3. In addition to the claim for $226,800.00, there may be future unknown costs, such as natural resources damages, oversight costs, torts, or other alleged damages and costs by the USEPA, the NJDEP or other government agencies and private parties, for which GM is also obligated.

---

[1] In accordance with the confidentiality provisions of the ARC Site Performing Parties Group Agreement, the ARC Site Performing Parties Group has not submitted copies of the Agreements as an exhibit to this Proof of Claim. GM, as a party to the Agreements, is in possession of its own copies and is familiar with their terms.

AETC believes that any "claim" that it may have against GM for future response costs may not have arisen before the bankruptcy petition at issue was filed. To the extent that any such cause(s) of action accrued and/or will accrue post-petition and/or after confirmation of a Plan of Reorganization in these bankruptcy proceedings, AETC asserts that its rights against GM, any and all of the Debtors, or any "Reorganized Debtor" will survive confirmation, including the discharge injunction of 11 U.S.C. § 1141(d) (*see Avellino & Bienes v. M. Frenville Co., Inc. (In re Frenville)*, 744 F.2d 332 (3rd Cir. 1984) and its progeny). Accordingly, AETC does not waive and expressly reserves and preserves, the right to: (1) bring an action before this Court or another court of competent jurisdiction seeking a declaratory judgment that some of the AETC's cause(s) of action against GM and/or any of the Debtors did not arise pre-petition; (2) bring an action before this Court or another court of competent jurisdiction seeking a declaration of the date or dates upon which any such causes of action, or part thereof, arose or will arise; and (3) assert any and/or all claims against GM, any of the Debtors, and/or against any Reorganized Debtor, within or outside these bankruptcy proceedings, for any claims for response and or remediation costs incurred or which may be incurred in connection with the ARC Site and/or HRDD.

Notwithstanding the within claims, AETC reserves all rights to file an administrative claim and/or file claims against third-parties that may be deemed responsible for GM's share of the investigation and remediation costs associated with the ARC and HRDD Sites.

# EXHIBIT   A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

Plaintiff,

v.

Johnson & Johnson; Permacel, Inc.;
3M Company; Novartis
Pharmaceuticals Corporation; Essex
Chemical Corporation; General
Motors Corporation; Chevron
Environmental Management
Company, for itself and on behalf of
Kewanee Industries, Inc.; Union
Carbide Corporation; Advanced
Environmental Technology
Corporation; Lionetti Oil Recovery,
Inc., and Fry's Metals, Inc.,

Defendants.

CIVIL ACTION NO. 06-6077

RD/RA CONSENT DECREE

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 11 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 2 of 91

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 4 |
| III. | PARTIES BOUND | 5 |
| IV. | DEFINITIONS | 6 |
| V. | GENERAL PROVISIONS | 12 |
| VI. | PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS | 14 |
| VII. | REMEDY REVIEW | 21 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 22 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 25 |
| X. | REPORTING REQUIREMENTS | 32 |
| XI. | EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS | 34 |
| XII. | PROJECT COORDINATORS | 36 |
| XIII. | PERFORMANCE GUARANTEE | 38 |
| XIV. | CERTIFICATION OF COMPLETION | 44 |
| XV. | EMERGENCY RESPONSE | 47 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 48 |
| XVII. | INDEMNIFICATION AND INSURANCE | 56 |
| XVIII | FORCE MAJEURE | 59 |
| XIX. | DISPUTE RESOLUTION | 61 |
| XX. | STIPULATED PENALTIES | 65 |
| XXI. | COVENANTS BY PLAINTIFF | 71 |
| XXII. | COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCY | 75 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION | 78 |
| XXIV. | ACCESS TO INFORMATION | 79 |
| XXV. | RETENTION OF RECORDS | 81 |
| XXVI. | NOTICES AND SUBMISSIONS | 83 |
| XXVII. | EFFECTIVE DATE | 85 |
| XXVIII. | RETENTION OF JURISDICTION | 85 |
| XXIX. | APPENDICES | 85 |
| XXX. | COMMUNITY RELATIONS | 86 |
| XXXI. | MODIFICATION | 86 |
| XXXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 87 |
| XXXIII. | SIGNATORIES/SERVICE | 88 |
| XXXIV. | FINAL JUDGMENT | 89 |

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 12 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 3 of 91

## I. **Background**

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.    The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Atlantic Resources Corporation Superfund Site ("ARC") and Horseshoe Road Drum Dump portion of the Horseshoe Road Superfund Site in Sayreville, New Jersey, together with accrued interest; and (2) performance of studies and response work by the defendants at the Sites (as hereinafter defined) consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"). The defendants have indicated that they have a claim in contribution under Section 113(f)(1), 42 U.S.C. § 113(f)(1), against the Settling Federal Agency.

C.    In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of New Jersey (the "State") on August 4, 2005, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Sites, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Department of Commerce and the U.S. Fish and Wildlife Service on August 1, 2005, of negotiations with potentially responsible parties regarding the release of hazardous

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 13 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 4 of 91

substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.     The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Sites constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Federal Agency does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by the Settling Defendants.

F.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Sites on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 29, 1995, 60 Fed. Reg. 50435, for the Horseshoe Road Site, and on September 13, 2001, 62 Fed. Reg. 15571, for the ARC Site.

G.     In response to a release or a substantial threat of a release of hazardous substances at or from the Sites, on September 23, 1996, EPA commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Sites pursuant to 40 C.F.R. § 300.430.

H.     Response Actions at the Sites are being coordinated under three operable units. Operable Unit One at the ARC Site, demolition of buildings and structures, was completed by certain of the Settling Defendants pursuant to Administrative Order on Consent, Index Number II CERCLA-02-2001-2021 in July 2003. Operable Unit Two relates to contamination of groundwater and soils at the ARC and Horseshoe Road Sites. EPA completed a Remedial Investigation ("RI") Report on May 12, 1999, and EPA completed a Feasibility Study ("FS")

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 14 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 5 of 91

Report for the second operable unit on September 17, 2002. EPA issued separate addenda to the FS Report on July 23, 2003 and January 6, 2004. Operable Unit Three consists of surface water and sediments in the marsh and Raritan River adjacent to the Sites. Certain of the Settling Defendants are currently performing work in connection with Operable Unit Three, including a Baseline Ecological Risk Assessment and Feasibility Study for surface water and sediments in the adjacent marsh and Raritan River, pursuant to Administrative Order on Consent, Index Number CERCLA-02-2003-2033.

I.     This Consent Decree is intended to resolve liability by and between the Settling Defendants and the United States for the Work, and for Past and Future Response Costs. This Consent Decree also resolves the threatened claim for contribution under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), against the Settling Federal Agency's liability for Settling Defendants' Operable Unit One Past Response Costs as defined herein.

J.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 28, 2004, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

K.     The decision by EPA on the remedial action to be implemented at the Sites is embodied in a final Record of Decision ("ROD"), executed on September 30, 2004, on which the State had a reasonable opportunity to review and comment and on which the State has given its concurrence. The ROD includes EPA's explanation for any significant differences between the

3

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 15 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 6 of 91

final plan and the proposed plan as well as a responsiveness summary to the public comments.
Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

L.    Based on the information presently available to EPA, EPA believes that the Work
will be properly and promptly conducted by the Settling Defendants if conducted in accordance
with the requirements of this Consent Decree and its appendices.

M.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action
selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a
response action taken or ordered by the President.

N.    The Parties recognize, and the Court by entering this Consent Decree finds, that
this Consent Decree has been negotiated by the Parties in good faith and implementation of this
Consent Decree will expedite the cleanup of the Sites and will avoid prolonged and complicated
litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public
interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. *Jurisdiction*

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has
personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent
Decree and the underlying complaint, Settling Defendants waive all objections and defenses that
they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall

4

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 16 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 7 of 91

not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  *Parties Bound*

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Sites or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 17 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 8 of 91

## IV. *Definitions*

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"ARC Site" shall mean the Atlantic Resources Corporation Superfund Site located at Horseshoe Road, in the City of Sayreville, Middlesex County, New Jersey designated as Block 256, Lot 2.03 on the Municipal Tax Map of the Borough of Sayreville and any areas where hazardous substances have migrated therefrom and shown generally on the map attached as Appendix C.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX).  In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 18 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 9 of 91

period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 106.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs from and after the date of lodging of the Consent Decree in reviewing or developing plans, reports, and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred by the United States for the ARC Site pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation);for both the ARC and HRDD sites pursuant to Section XV (Emergency Response), and Paragraph 87 of Section XXI (Work Takeover); and costs incurred by the United States, (including, but not limited to, the cost of attorney time and any monies paid) to secure access to the HRDD Site as necessary to undertake Remedial Design. Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from October 31, 2004 to the date of entry of this Consent Decree.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 19 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 10 of 91

"HRDD Site" shall mean the Horseshoe Road Drum Dump portion of the Horseshoe Road Superfund Site adjacent to the ARC Site as depicted on the map attached as Appendix C.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the ARC and HRDD Sites between October 31, 2004 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NJDEP" shall mean the New Jersey Department of Environmental Protection and any successor departments or agencies of the State.

"Operable Unit One" shall mean those response actions taken by certain of Settling Defendants to remove buildings and structures at the ARC Site pursuant to Administrative Order on Consent, Index Number II CERCLA-02-2001-2021.

"Operable Unit Two" shall mean those response actions pertaining to soils and groundwater at the Sites.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 20 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 11 of 91

"Operable Unit Three" shall mean those response actions pertaining to surface water and sediments in the marsh and Raritan River adjacent to the Sites.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the ARC Site through October 31, 2004, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date. This definition of "Past Response Costs" does not include past response costs incurred at the HRDD Site.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in The Remedial Action Objectives Section of the ROD and Section II of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to Operable Unit 2 at the Sites signed on September 30, 2004, by the Regional Administrator, EPA Region 2, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

9

"Remedial Action" shall mean those activities to be undertaken by the Settling Defendants at the ARC Site to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action at the ARC Site as defined herein and a remedial action for the HRDD Site pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix D.

"Settling Defendants' Operable Unit One Response Costs" shall mean all Response Costs incurred by Settling Defendants for performance of Operable Unit One at the ARC Site, which work was completed by certain of the Settling Defendants pursuant to Administrative Order on Consent, Index Number II CERCLA-02-2001-2021 in July of 2003.

"Settling Defendants' Operable Unit Two Response Costs" shall mean all Response Costs incurred by Settling Defendants after the date of lodging of this Consent Decree for performance

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)   Pg 22 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 13 of 91

of Work under this Consent Decree, including without limitation the payment hereunder of

Future Response Costs and any response actions taken pursuant to Section VII.

"Settling Federal Agency" shall mean the United States Department of Defense, including

all of its departments, offices, agencies, activities, commands, and instrumentalities, including

without limitation, the United States Defense Logistics Agency, which is resolving any claims

which have been or could be asserted against it with regard to the Sites as provided in this

Consent Decree

"Sites" shall mean the Atlantic Resources Corporation Superfund Site and the Horseshoe

Road Drum Dump Portion of the Horseshoe Road Superfund Site, which together encompass

approximately 7 acres, located along Horseshoe Road in Sayreville, Middlesex County, New

Jersey, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of New Jersey.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of

the Remedial Design at the Sites, and Remedial Action at the ARC Site, as set forth in Appendix

B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling

Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Trust Fund" shall mean the ARC/HRDD RD/RA Trust Fund established pursuant to the

Declaration of Trust attached as Appendix F.

11

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal Agency and any federal natural resources trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records). This definition of "Work" does not include remedial action at the HRDD Site.

## V.  *General Provisions*

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Sites by the design and implementation of response actions at the Sites by the Settling Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants and the claims of the Settling Defendants which have been or could have been asserted against the United States with regard to the Sites as provided in this Consent Decree.

6.    Commitments by Settling Defendants and Settling Federal Agency.

        a.      Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards,

12

09-50026-mg   Doc 4664-4   Filed 12/14/09   Entered 12/14/09 17:47:27   Exhibit B
(part one)   Pg 24 of 57
Case 2:06-cv-06077-FSH-PS   Document 5   Filed 06/15/2007   Page 15 of 91

specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree. Settling Defendants shall also reimburse the United States for Future Response Costs as provided in this Consent Decree. The United States, on behalf of the Settling Federal Agency shall reimburse the EPA Hazardous Substance Superfund for Past Response Costs and the Settling Defendants for an allocated share of their response costs, as provided in this Consent Decree.

      b.    The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more of the Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

      7.    <u>Compliance With Applicable Law</u>. All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

      8.    <u>Permits</u>.

      a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (<u>i.e.</u>, within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site

09-50026-mg   Doc 4664-4   Filed 12/14/09   Entered 12/14/09 17:47:27   Exhibit B
(part one)   Pg 25 of 57
Case 2:06-cv-06077-FSH-PS   Document 5   Filed 06/15/2007   Page 16 of 91

requires a federal or state permit or approval, Settling Defendants shall submit timely and

complete applications and take all other actions necessary to obtain all such permits or approvals.

     b.    The Settling Defendants may seek relief under the provisions of Section

XIX (Force Majeure) of this Consent Decree for any delay in the performance of the Work

resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

     c.    This Consent Decree is not, and shall not be construed to be, a permit

issued pursuant to any federal or state statute or regulation.

## VI. _PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS_

9.    Selection of Supervising Contractor.

     a.    All aspects of the Work to be performed by Settling Defendants pursuant

to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII

(Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this

Consent Decree shall be under the direction and supervision of the Supervising Contractor, the

selection of which shall be subject to disapproval by EPA. Within 20 days after the lodging of

this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and

qualifications of any contractor proposed to be the Supervising Contractor. With respect to any

contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the

proposed contractor has a quality system that complies with ANSI/ASQC E4-1994,

"Specifications and Guidelines for Quality Systems for Environmental Data Collection and

Environmental Technology Programs," (American National Standard, January 5, 1995), by

submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP

should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA, and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.    If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 27 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 18 of 91

10.    Remedial Design.

a.    Within sixty (60) days of the date on which Settling Defendants receive

written notification from EPA of the approval of the Supervising Contractor, Settling Defendants

shall submit to EPA and the State a work plan for the design of the Remedial Action at the Sites

("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall

provide for design of the remedy set forth in the ROD, in accordance with the SOW and for

achievement of the Performance Standards and other requirements set forth in the ROD, this

Consent Decree and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan

shall be incorporated into and become enforceable under this Consent Decree. Settling

Defendants shall submit to EPA and the State a Health and Safety Plan for field design activities

which conforms to the applicable Occupational Safety and Health Administration and EPA

requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.    The Remedial Design Work Plan shall include plans and schedules for

implementation of all remedial design tasks identified in the SOW, including, but not limited to,

plans and schedules for the completion of: (1) design sampling and analysis plan (including, but

not limited to, a Remedial Design Quality Assurance Project Plan (RD QAPP) in accordance

with Section VIII (Quality Assurance, Sampling and Data Analysis)); and (2) a Health and

Safety Contingency Plan (HSCP); and may also include schedules for the completion of: (1) a

preliminary design submittal; (2) a pre-final design submittal; and (3) a final design submittal.

In addition, the Remedial Design Work Plan shall include a schedule for completion of the

Remedial Action Work Plan. Upon approval of the Remedial Design Work Plan by EPA, after a

reasonable opportunity for review and comment by the State, and submittal of the Health and

Safety Plan for all field activities to EPA and the State, Settling Defendants shall implement the

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 28 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 19 of 91

Remedial Design Work Plan. The Settling Defendants shall submit to EPA and the State all

plans, submittals and other deliverables required under the approved Remedial Design Work

Plan in accordance with the approved schedule for review and approval pursuant to Section XI

(EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling

Defendants shall not commence further Remedial Design activities at the Sites prior to approval

of the Remedial Design Work Plan.

      c.     The preliminary, pre-final and final design submittals shall include, at a

minimum, those items specified in Section VII of the SOW.

    11.    <u>Remedial Action</u>.

      a.     Within 60 days after award of the Remedial Action contract as specified in

the SOW, Settling Defendants shall submit to EPA and the State a work plan for the performance

of the Remedial Action at the ARC Site ("Remedial Action Work Plan"). The Remedial Action

Work Plan shall provide for construction and implementation of the remedy set forth in the ROD

and achievement of the Performance Standards, in accordance with this Consent Decree, the

ROD, the SOW, and the design plans and specifications developed in accordance with the

Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial

Action Work Plan shall be incorporated into and become enforceable under this Consent Decree.

At the same time as they submit the Remedial Action Work Plan, Settling Defendants shall

submit to EPA and the State a Health and Safety Plan for field activities required by the

Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health

Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 29 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 20 of 91

b.    The Remedial Action Work Plan shall include those items listed in Section IX of the SOW. The Remedial Action Work Plan also shall include the methodology for implementation of the Construction Quality Assurance Plan and a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of the Settling Defendants' Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

c.    Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, but in no event prior to entry of this Consent Decree, Settling Defendants shall implement the activities required under the Remedial Action Work Plan. The Settling Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the ARC Site prior to approval of the Remedial Action Work Plan.

12.    The Settling Defendants shall continue to implement the Remedial Action, including long-term monitoring as provided in the SOW, until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

13.    Modification of the SOW or Related Work Plans.

a.    If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in

18

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 30 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 21 of 91

the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.    For the purposes of this Paragraph 13 and Paragraph 51 only, the "scope of the remedy selected in the ROD" is to:

reduce or eliminate the direct contact threat associated with contaminated soil to levels protective of a commercial or industrial use, and protective of the environment by remediation of such soils to the cleanup goals established in the ROD;

prevent public exposure to contaminated groundwater that presents a significant risk to human health and the environment;

minimize or eliminate contaminant migration to the groundwater and surface waters; and

minimize or eliminate organic vapor migration from groundwater into future indoor environments that may be built on the sites.

c.    If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 70 (record review).  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

19

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 31 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 22 of 91

c.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.    Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15.    a.    Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Sites to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)    The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)    The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction.

20

09-50026-mg   Doc 4664-4   Filed 12/14/09   Entered 12/14/09 17:47:27   Exhibit B
(part one)   Pg 32 of 57
Case 2:06-cv-06077-FSH-PS   Document 5   Filed 06/15/2007   Page 23 of 91

The Settling Defendants shall provide the information required by Paragraph 15.a. as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

      b.    Before shipping any hazardous substances, pollutants, or contaminants from the Sites to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. Section 300.440. Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Sites to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. *Remedy Review*

    16.    Periodic Review. Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action for the ARC Site is protective of human health and the environment at least every five years from commencement of physical Remedial Action activities at the ARC Site as required by Section 121(c) of CERCLA and any applicable regulations.

    17.    EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action for the ARC Site is not protective of human health and the environment, EPA may select further response actions for the ARC Site in accordance with the requirements of CERCLA and the NCP.

    18.    Opportunity To Comment. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 33 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 24 of 91

Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.    Settling Defendants' Obligation To Perform Further Response Actions. If EPA selects further response actions for the ARC Site based on a determination that the Remedial Action is not protective of human health or the environment, the Settling Defendants shall undertake such further response actions. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the Remedial Action is not protective of human health and the environment, or (2) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 70 (record review).

20.    Submissions of Plans. If Settling Defendants are required to perform the further response actions pursuant to Paragraph 19, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. Quality Assurance, Sampling, and Data Analysis

21.    Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003,

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 34 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 25 of 91

March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018,

February 1998), and subsequent amendments to such guidelines upon notification by EPA to

Settling Defendants of such amendment. Amended guidelines shall apply only to procedures

conducted after such notification. Prior to the commencement of any monitoring project under

this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable

opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP")

that is consistent with the SOW, the NCP and applicable guidance documents. If relevant to the

proceeding, the Parties agree that validated sampling data generated in accordance with the

QAPP(s) reviewed and approved by EPA shall be admissible as evidence, without objection,

in any proceeding under this Decree. Settling Defendants shall ensure that EPA personnel and

its authorized representatives are allowed access at reasonable times to all laboratories utilized

by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants

shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the

QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories

they utilize for the analysis of samples taken pursuant to this Decree perform all analyses

according to accepted EPA methods. Accepted EPA methods consist of those methods which

are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and

the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and

any amendments made thereto during the course of the implementation of this Decree; however,

upon approval by EPA, after opportunity for review and comment by the State, the Settling

Defendants may use other analytical methods which are as stringent as or more stringent than the

CLP- approved methods. Settling Defendants shall ensure that all laboratories they use for

analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 35 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 26 of 91

equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.    Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendants shall notify EPA not less than 10 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

23.    Settling Defendants shall submit to EPA 3 copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Sites in the implementation of this Consent Decree unless EPA agrees otherwise.

24.    Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including

24

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 36 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 27 of 91

enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. Access and Institutional Controls

25.    If the Sites, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.    commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Sites, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the United States;

(3)    Conducting investigations relating to contamination at or near the Sites;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response actions at or near the Sites;

(6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

25

(7)    Implementing the Work pursuant to the conditions set forth in Paragraph 87 of this Consent Decree;

(8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)    Assessing Settling Defendants' compliance with this Consent Decree; and

(10)    Determining whether the Sites or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

b.    commencing on the date of lodging of this Consent Decree, refrain from using the Sites, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to, well installation and groundwater use restrictions; and as to the ARC Site, execution of a deed notice; and

c.    upon request by EPA, execute and record in the County Clerk's Office of Middlesex County, State of New Jersey, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure

26

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 38 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 29 of 91

non-interference with, or ensure the protectiveness of the remedial measures to be performed

pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the

rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its

representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their

representatives, and/or (iv) other appropriate grantees. Such Settling Defendants shall, within 45

days of the request by EPA, submit to EPA for review and approval with respect to such

property:

(1)    A draft easement, in substantially the form attached hereto as

Appendix E, that is enforceable under the laws of the State of New Jersey, and

(2)    a current title insurance commitment or some other evidence of

title acceptable to EPA, which shows title to the land described in the easement to be free

and clear of all prior liens and encumbrances (except when those liens or encumbrances

are approved by EPA or when, despite best efforts, Settling Defendants are unable to

obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, such

Settling Defendants shall update the title search and, if it is determined that nothing has occurred

since the effective date of the commitment to affect the title adversely, record the easement with

the Middlesex County Clerk's Office. Within 30 days of recording the easement, such Settling

Defendants shall provide EPA with a final title insurance policy, or other final evidence of title

acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's

recording stamps. If the easement is to be conveyed to the United States, the easement and title

evidence (including final title evidence) shall be prepared in accordance with the U.S.

27

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 39 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 30 of 91

Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

26.    If the Sites, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.    an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree;

b.    an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the ARC Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to, well installation and groundwater use restrictions at the ARC Site and, as to the ARC Site, execution of a deed notice. Notwithstanding the above, this Consent Decree does not obligate Settling Defendants to undertake remedial action at the HRDD Site; and

c.    if requested by EPA, the execution and recordation in the Middlesex County Clerk's Office of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a and 26.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25.b and 26.b of this Consent

28

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 40 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 31 of 91

Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Within 45 days of request by EPA, Settling Defendants shall submit to EPA for review and approval with respect to such property:

> (1)    A draft easement, in substantially the form attached hereto as Appendix E, that is enforceable under the laws of the State of New Jersey, and a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except any liens or encumbrances existing as of the Effective Date which are hereby approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of any other liens or encumbrances)

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Middlesex County Clerk's Office. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S.

Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

27.    For purposes of Paragraphs 25 and 26 of this Consent Decree, "best efforts" regarding Jack Kaplan, Clover Chemical Co., Inc. or Musa Shihadeh/Atlantic Development Corporation, shall mean a written request that he/it unconditionally provide the components of access enumerated in Paragraphs 25 and 26. "Kaplan" shall include Mr. Kaplan, Atlantic Resources Corporation, and/or any other person or entity in which Mr. Kaplan or any of his successors, assigns or heirs has an interest. Kaplan shall also include any insurer which claims any interest or right in any property through Kaplan. There shall be no requirement that Settling Defendants pay any compensation to Kaplan, Clover Chemical Co., Inc., or Musa Shihadeh/Atlantic Development Corporation. For any other landowners, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance. EPA agrees to designate Settling Defendants as its authorized representatives under Section 104(e) of CERCLA for purposes of the Consent to Access agreement dated May 5, 2005 and executed by First Connecticut Holding Group and to advise First Connecticut Holding Group in writing of that decision. If First Connecticut Holding Group revokes or otherwise repudiates the Consent to Access agreement dated May 5, 2005, Settling Defendants shall attempt to obtain access by the means provided in and in accordance with this Section IX. If (a) any access or land/water use restriction agreements required by Paragraphs 26.a or 26.b of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, (b) or any access easements or restrictive easements required by Paragraph 26.c of this Consent Decree are not submitted to EPA in draft form within 45 days of the due date

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 42 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 33 of 91

under this Consent Decree, or (c) Settling Defendants are unable to obtain an agreement pursuant

to Paragraph 25.c.(1) or Paragraph 26.c.(1) from the holder of a prior lien or encumbrance to

release or subordinate such lien or encumbrance to the easement being created pursuant to this

Consent Decree within 45 days of the due date under this Consent Decree, Settling Defendants

shall promptly notify the United States in writing, and shall include in that notification a

summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph

25 or 26 of this Consent Decree. The United States may, as it deems appropriate, assist Settling

Defendants in obtaining access or land/water use restrictions, either in the form of contractual

agreements or in the form of easements running with the land, or in obtaining the release or

subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United

States in accordance with the procedures in Section XVI (Payment of Response Costs), for all

costs incurred, direct or indirect, by the United States in obtaining such access, land/water use

restrictions, and/or the release/subordination of prior liens or encumbrances including, but not

limited to, the cost of attorney time and the amount of monetary consideration paid or just

compensation.

28.    If EPA determines that land/water use restrictions in the form of state or local

laws, regulations, ordinances or other governmental controls are needed to implement the

remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-

interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such

governmental controls.

29.    Notwithstanding any provision of this Consent Decree, the United States retains

all of its access authorities and rights, as well as all of its rights to require land/water use

31

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 43 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 34 of 91

restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any
other applicable statute or regulations.

## X. _Reporting Requirements_

30.    In addition to any other requirement of this Consent Decree, Settling Defendants
shall submit to EPA and the State 3 copies of written monthly progress reports that: (a) describe
the actions which have been taken toward achieving compliance with this Consent Decree during
the previous month; (b) include a summary of all results of sampling and tests and all other data
received or generated by Settling Defendants or their contractors or agents in the previous
month; (c) identify all work plans, plans and other deliverables required by this Consent Decree
completed and submitted during the previous month; (d) describe all actions, including, but not
limited to, data collection and implementation of work plans, which are scheduled for the next
six weeks and provide other information relating to the progress of construction, including, but
not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information
regarding percentage of completion, unresolved delays encountered or anticipated that may
affect the future schedule for implementation of the Work, and a description of efforts made to
mitigate those delays or anticipated delays; (f) include any modifications to the work plans or
other schedules that Settling Defendants have proposed to EPA or that have been approved by
EPA; and (g) describe all activities undertaken in support of the Community Relations Plan
during the previous month and those to be undertaken in the next six weeks. Settling Defendants
shall submit these progress reports to EPA and the State by the tenth day of every month
following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant
to Paragraph 51.b of Section XIV (Certification of Completion). If requested by EPA, Settling
Defendants shall also provide briefings for EPA to discuss the progress of the Work.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 44 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 35 of 91

31.    The Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

32.    Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or, in the event that the EPA Project Coordinator is not available, the Emergency Response Section, Region 2, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

33.    Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiff a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

34.    Settling Defendants shall submit 8 copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendants shall simultaneously submit 3 copies of all such plans, reports and data to the State. Upon request by EPA Settling Defendants shall submit in electronic form all portions of any

33

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 45 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 36 of 91

report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

35.    All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI.  *EPA Approval of Plans and Other Submissions*

36.    After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (c) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 14 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 36(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their

34

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 46 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 37 of 91

right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 36(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

38.    <u>Resubmission of Plans</u>.

d.    Upon receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 14-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 39 and 40.

e.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

39.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item

35

as modified or developed by EPA, subject only to their right to invoke the procedures set forth in

Section XIX (Dispute Resolution).

40.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA

due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan,

report, or item timely and adequately unless the Settling Defendants invoke the dispute

resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is

overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and

Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and

payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or

modification is upheld, stipulated penalties shall accrue for such violation from the date on

which the initial submission was originally required, as provided in Section XX.

41.    All plans, reports, and other items required to be submitted to EPA under this

Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent

Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required

to be submitted to EPA under this Consent Decree, the approved or modified portion shall be

enforceable under this Consent Decree.

## XII. *Project Coordinators*

42.    Within 20 days of lodging this Consent Decree, Settling Defendants and EPA will

notify each other, in writing, of the name, address and telephone number of their respective

designated Project Coordinators. If a Project Coordinator initially designated is changed, the

identity of the successor will be given to the other Parties at least 5 working days before the

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 48 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 39 of 91

changes occur, unless impracticable, but in no event later than the actual day the change is made.

The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall

have the technical expertise sufficient to adequately oversee all aspects of the Work. The

Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling

Defendants in this matter. He or she may assign other representatives, including other

contractors, to serve as a Sites representative for oversight of performance of daily operations

during remedial activities.

     43.     Plaintiff may designate other representatives, including, but not limited to, EPA

employees, and federal contractors and consultants, to observe and monitor the progress of any

activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator shall have the

authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator

("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project

Coordinator shall have authority, consistent with the National Contingency Plan, to halt any

Work required by this Consent Decree and to take any necessary response action when s/he

determines that conditions at the Sites constitute an emergency situation or may present an

immediate threat to public health or welfare or the environment due to release or threatened

release of Waste Material.

     44.     EPA's Project Coordinator and the Settling Defendants' Project Coordinator will

meet, at a minimum, on a monthly basis.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 49 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 40 of 91

### XIII. Performance Guarantee

45.    In order to ensure the full and final completion of the Work, Settling Defendants

shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of

**$4,300,000** (hereinafter "Estimated Cost of the Work") in one or more of the following forms,

which must be satisfactory in form and substance to EPA:

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work

that is issued by a surety company among those listed as acceptable sureties on Federal bonds as

set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is

issued by one or more financial institution(s) (i) that has the authority to issue letters of credit

and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State

agency;

c.    A trust fund established for the benefit of EPA that is administered by a trustee (i) that

has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by

a U.S. Federal or State agency;

d.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary

thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance

policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and

examined by a State agency;

e.    A demonstration by one or more Settling Defendants that each such Settling

Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the

38

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 50 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 41 of 91

Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are

satisfied; or

       f.  A written guarantee to fund or perform the Work executed in favor of EPA by one or

more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a

company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h))

with at least one Settling Defendant; provided, however, that any company providing such a

guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test

requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it

proposes to guarantee hereunder.

      46.  If at any time during the effective period of this Consent Decree, the Settling

Defendants provide a Performance Guarantee for completion of the Work by means of a

demonstration or guarantee pursuant to Paragraph 45(e) or Paragraph 45(f) above, Settling

Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40

C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise

provided in this Consent Decree, including but not limited to (i) the initial submission of required

financial reports and statements from the relevant entity's chief financial officer and independent

certified public accountant; (ii) the annual re-submission of such reports and statements within

ninety days after the close of each such entity's fiscal year; and (iii) the notification of EPA

within ninety days after the close of any fiscal year in which such entity no longer satisfies the

financial test requirements set forth at 40 C.F.R. § 264.143(f)(1).  For purposes of the

Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264,

Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to

refer to the Work required under this Consent Decree, and the terms "current closure cost

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 51 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 42 of 91

estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

47.    In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within thirty days of receipt of notice of EPA's determination or, as the case may be, within thirty days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 45 of this Consent Decree that satisfies all requirements set forth in this Section XIII.    In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 49(b)(ii) of this Consent Decree.    Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms hereof.

48.    The commencement of any Work Takeover pursuant to Paragraph 87 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 45(a), (b), (c), (d), or (f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 52 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 43 of 91

kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.

If for any reason EPA is unable to promptly secure the resources guaranteed under any such

Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the

Work assumed by EPA under the Work Takeover, or in the event that the Performance

Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to

Paragraph 45(c), Settling Defendants shall immediately upon written demand from EPA deposit

into an account specified by EPA, in immediately available funds and without setoff,

counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost

of the remaining Work to be performed as of such date, as determined by EPA.

49. Modification of Amount and/or Form of Performance Guarantee.

a. Reduction of Amount of Performance Guarantee. If Settling Defendants

believe that the estimated cost to complete the remaining Work has diminished below the amount

set forth in Paragraph 45 above, Settling Defendants may, on any anniversary date of entry of

this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to

request a reduction in the amount of the Performance Guarantee provided pursuant to this

Section so that the amount of the Performance Guarantee is equal to the estimated cost of the

remaining Work to be performed. Settling Defendants shall submit a written proposal for such

reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be

performed and the basis upon which such cost was calculated. In seeking approval for a revised

or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures

set forth in Paragraph 49(b)(ii) of this Consent Decree. If EPA decides to accept such a

proposal, EPA shall notify the petitioning Settling Defendants of such decision in writing. After

41

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 53 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 44 of 91

receiving EPA's written acceptance, Settling Defendants may reduce the amount of the

Performance Guarantee in accordance with and to the extent permitted by such written

acceptance. In the event of a dispute, Settling Defendants may reduce the amount of the

Performance Guarantee required hereunder only in accordance with a final administrative or

judicial decision resolving such dispute. No change to the form or terms of any Performance

Guarantee provided under this Section, other than a reduction in amount, is authorized except as

provided in Paragraphs 47 or 49(b) of this Consent Decree.

   b. <u>Change of Form of Performance Guarantee.</u>

   (i) If, after entry of this Consent Decree, Settling Defendants desire to change

the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling

Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time

agreed to by the Parties, petition EPA in writing to request a change in the form of the

Performance Guarantee provided hereunder. The submission of such proposed revised or

alternative form of Performance Guarantee shall be as provided in Paragraph 49(b)(ii) of this

Consent Decree. Any decision made by EPA on a petition submitted under this subparagraph

(b)(i) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be

subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this

Consent Decree or in any other forum.

   (ii) Settling Defendants shall submit a written proposal for a revised or

alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the

estimated cost of the remaining Work to be performed, the basis upon which such cost was

42

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 54 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 45 of 91

calculated, and the proposed revised form of Performance Guarantee, including all proposed

instruments or other documents required in order to make the proposed Performance Guarantee

legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy

all requirements set forth or incorporated by reference in this Section. Settling Defendants shall

submit such proposed revised or alternative form of Performance Guarantee to the EPA

Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of

this Consent Decree. EPA shall notify Settling Defendants in writing of its decision to accept or

reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph.

Within ten days after receiving a written decision approving the proposed revised or alternative

Performance Guarantee, Settling Defendants shall execute and/or otherwise finalize all

instruments or other documents required in order to make the selected Performance Guarantee(s)

legally binding in a form substantially identical to the documents submitted to EPA as part of the

proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling

Defendants shall submit all executed and/or otherwise finalized instruments or other documents

required in order to make the selected Performance Guarantee(s) legally binding to the EPA

Financial Management Officer within thirty days of receiving a written decision approving the

proposed revised or alternative Performance Guarantee in accordance with Section XXVI

("Notices and Submissions") of this Consent Decree and to the United States and EPA as

specified in Section XXVI.

    c.  Release of Performance Guarantee. If Settling Defendants receive written

notice from EPA in accordance with Paragraph 51 hereof that the Work has been fully and

finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so

notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 55 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 46 of 91

discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Defendants

shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this

Section except as provided in this subparagraph. In the event of a dispute, Settling Defendants

may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in

accordance with a final administrative or judicial decision resolving such dispute.

## XIV. *Certification of Completion*

50.    Completion of Construction Certification

a.    Within 30 days after Settling Defendants believe they have completed the

construction of all components of the Remedial Action, they shall notify EPA and the State in

writing. Settling Defendants shall schedule and conduct a pre-certification inspection to be

attended by Settling Defendants, EPA and the State to determine whether the Remedial Action

has been constructed in accordance with the ROD, the Remedial Design, this Consent Decree,

the SOW, any construction contract specifications established pursuant thereto, and any

modifications thereto.

b.    Based on the pre-certification inspection, EPA and the State shall submit

in writing to the Settling Defendants comments regarding whether construction has been

completed in accordance with this Consent Decree. If, after taking all action in response to the

written comments by EPA and the State, the Settling Defendants believe construction is

complete, subject to a punch list of minor items, Settling Defendants shall submit the Final

Remedial Construction Report prepared by a professional engineer registered in New Jersey

stating that all components of the Remedial Action have been constructed in accordance with the

ROD, the Remedial Design, this Consent Decree, the SOW, any construction contract

44

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 56 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 47 of 91

specifications established pursuant thereto, and any modifications thereto. The Final Remedial

Construction Report shall contain the punch list of minor items to be completed. The Final

Remedial Construction Report shall contain the following statement, signed by a responsible

corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

If, after the pre-certification inspection and review of the Final Remedial Construction Report,

and upon completion of all punch list items by the Settling Defendants, EPA, after a reasonable

opportunity for review and comment by the State, determines that construction has been

completed, EPA will so notify the Settling Defendants in writing.

If, after the pre-certification inspection and the review of the Final Remedial

Construction Report, EPA, after a reasonable opportunity for review and comment by the State,

determines that any portion of the construction has not been completed, EPA will notify Settling

Defendants of the activities that must be undertaken to complete construction. Settling

Defendants shall undertake all activities described in the notice, in accordance with the

specifications and schedules established therein, subject to their right to invoke the dispute

resolution procedures set forth in Section XIX (Dispute Resolution). Upon a finding by EPA,

after a reasonable opportunity for review and comment by the State, that the work described in

the notice has been completed, EPA will so notify the Settling Defendants in writing.

09-50026-mg    Doc 4664-4    Filed 12/14/09    Entered 12/14/09 17:47:27    Exhibit B
(part one)    Pg 57 of 57
Case 2:06-cv-06077-FSH-PS    Document 5    Filed 06/15/2007    Page 48 of 91

51.    <u>Completion of the Work</u>.

a. Within 90 days after Settling Defendants conclude that all phases of the Work have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules

46