HEARING DATE AND TIME: January 20, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: January 13, 2010 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                 :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|     **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
|            **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x

## NOTICE OF HEARING ON SECOND MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING PERIODS IN WHICH DEBTORS MAY FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

PLEASE TAKE NOTICE that upon the annexed Motion, dated January 6, 2010

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors (the "**Debtors**"), for an order, pursuant to section 1121(d) of title

11, United States Code extending the Debtors' exclusive periods in which to file a chapter 11

plan and solicit acceptances thereof, as more fully set forth in the Motion, a hearing will be held

before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **January 20, 2010 at 9:45 a.m. (Eastern Time),** or as soon

thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on(i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit,

Michigan 48243 (Attn:  Ted Stenger); (iii) General Motors, LLC, 300 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, DC

20220 (Attn:  Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Amy Caton, Esq., Adam C. Rogoff, Esq., and

Gregory G. Plotko, Esq.); (viii) the Office of the United States Trustee for the Southern District

of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G.

Adams, Esq.); and (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor,

New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), so as

to be received no later than **January 13, 2010, at 4:00 p.m. (Eastern Time)** (the "**Objection**

**Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
      January 6, 2010

                    /s/ Joseph H. Smolinsky
                    Harvey R. Miller
                    Stephen Karotkin
                    Joseph H. Smolinsky

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :    09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                    :
                 Debtors.           :    (Jointly Administered)
                                    :
------------------------------------------------------------x
```

**SECOND MOTION OF DEBTORS FOR ENTRY OF ORDER**
**PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING**
**EXCLUSIVE PERIODS IN WHICH DEBTORS MAY FILE**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................. i

Summary of Relief Requested ............................................................................................ 1

Jurisdiction .......................................................................................................................... 4

Basis for Relief Requested ................................................................................................. 4

    A.  The Debtors' Cases Are Large and Complex ............................................... 6

    B.  Substantial Good Faith Progress Has Been Demonstrated ......................... 8

    C.  The Debtors Are Not Seeking to Use Exclusivity to Pressure Creditors to
        Submit to the Debtors' Demands ................................................................. 9

    D.  Important Contingencies Must Be Resolved by the Debtors ..................... 11

    E.  The Debtors Are Making Required Postpetition Payments As They Come Due
        and Have the Ability to Continue to Do So ............................................... 13

Conclusion ......................................................................................................................... 14

Notice ................................................................................................................................. 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adelphia Commc'ns Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006) ...........5, 6, 11, 13

*In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich 1997) ....................................5

*In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996) ..............................5, 6

*In re McLean Indus., Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987) ....................................5, 6

*In re Texaco, Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987).........................................7, 10, 13

*In re United Press Int'l, Inc.,* 60 B.R. 265 (Bankr. D.C. 1986)...........................................6

## STATUTES

11 U.S.C. § 363................................................................................................................7

11 U.S.C. § 1121.........................................................................................................4, 13

11 U.S.C. § 1121(d) ...............................................................................................1, 4, 5

11 U.S.C. § 1121(d)(2) .....................................................................................................4

28 U.S.C. § 157.................................................................................................................4

28 U.S.C. § 157(b) ...........................................................................................................4

28 U.S.C. § 1334...............................................................................................................4

## MISCELLANEOUS

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ...........................5, 7

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors (collectively, the "**Debtors**"), respectfully represent:

## Summary of Relief Requested

1.      By order dated September 15, 2009, this Court granted four of the Debtors

(the "**Initial Debtors**")[1] a four-month extension of the initial period during which they have the

exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and the period to obtain

acceptances of such plan (the "**Solicitation Period**," and together with the Exclusive Filing

Period, the "**Exclusive Periods**") through and including January 27, 2010 and March 29, 2010,

respectively (the "**Initial Debtors' First Extended Exclusive Periods**"), pursuant to section

1121(d) of title 11, United States Code (the "**Bankruptcy Code**").  Because two additional

Debtors (the "**Realm/Encore Debtors**")[2] commenced voluntary chapter 11 cases on October 9,

2009, the Realm/Encore Debtors' initial Exclusive Filing Period and Exclusive Solicitation

Period are currently set to expire on February 5, 2010 and April 7, 2010, respectively (the

"**Realm/Encore Exclusive Periods**").

2.      By this Motion, the Debtors request an extension of the Initial Debtors'

First Extended Exclusive Periods and the Realm/Encore Exclusive Periods to and including May

27, 2010 and July 27, 2010, respectively, pursuant to section 1121(d) of the Bankruptcy Code,

without prejudice to the Debtors' right to seek additional extensions thereof.

---

[1]      The Initial Debtors are comprised of (i) Motors Liquidation Company (f/k/a/ General Motors Corporation); (ii) MLCS, LLC (f/k/a Saturn, LLC); (iii) MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation); and (iv) MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.).

[2]      The Realm/Encore Debtors are comprised of (i) Remediation and Liability Management Company, Inc., and (ii) Environmental Corporate Remediation Company, Inc.

3.      Since these historic cases were commenced, the Debtors have made

substantial progress, in cooperation with their creditors, particularly the statutory committee of

unsecured creditors (the "**Creditors' Committee**"), on maximizing value for their stakeholders.

The Debtors have continued to move expeditiously towards the formulation of a chapter 11 plan,

primarily in the development of strategies necessary to complete the chapter 11 plan process.

However, additional time is required to prepare a confirmable chapter 11 plan.

4.      During the last six months, the Debtors have successfully (i) completed

the 363 Transaction (as defined below) in a 39-day time frame to NGMCO, Inc. (n/k/a General

Motors LLC) ("**New GM**"); (ii) filed their schedules of assets and liabilities and statements of

financial affairs (collectively, the "**Schedules**"), which were amended to provide a greater level

of accuracy and disclosure; (iii) obtained authorization to set a claims bar date for (a) the Initial

Debtors (the "**Initial Debtors' General Bar Date**"),[3] which was then supplemented to allow

entities residing adjacent to or in the proximity of certain Initial Debtors' properties to file a

proof of claim with respect to their person or real property arising from being located adjacent to

or in the proximity of certain Initial Debtors' properties (the "**Initial Debtors' Property Bar

Date**")[4] and (b) the Realm/Encore Debtors (the "**Realm/Encore Debtors' Bar Date**,"[5] and

together with the Initial Debtors' Bar Date and the Initial Debtors' Property Bar Date, the "**Bar

---

[3]      On September 16, 2009, this Court entered an order [Docket No. 4079] establishing November 30, 2009 as the deadline for each person or entity, including governmental units, to file a proof of claim against the Initial Debtors.

[4]      On December 18, 2009, this court entered an order [Docket No. 4681] establishing February 10, 2010 as the deadline for entities residing adjacent to or in the proximity of certain Initial Debtors' properties to file a proof of claim with respect to their person or real property arising from being located adjacent to or in the proximity of such properties.

[5]      On December 2, 2009, this Court entered an order [Docket No. 4586] establishing (i) February 1, 2010 as the deadline for each person or entity to file a proof of claim against the Realm/Encore Debtors and (ii) June 1, 2010 as the deadline for governmental units to file a proof of claim against the Realm/Encore Debtors.

**Dates**"); and (iv) begun to evaluate, reconcile, and address the billions of dollars in claims that have been asserted.

5.       Notwithstanding the significant progress the Debtors have made thus far, ongoing analyses of the assets and liabilities of the Debtors must be completed before a confirmable chapter 11 plan can be proposed and fully negotiated with the Debtors' constituents. Extending the Exclusive Periods will allow for the completion of these tasks without the distraction and delay that would inevitably result were competing plans to be filed.  While the Debtors desire to complete the chapter 11 plan process as quickly and efficiently as possible, in these circumstances, the requested extension will facilitate, rather than delay, the confirmation of workable plans.

6.       As discussed more fully below, ample cause exists to further extend the Exclusive Periods because, inter alia, (i) the Debtors' cases are large and complex; (ii) substantial good faith progress has been demonstrated; (iii) the Debtors are not seeking to use exclusivity to pressure creditors into accepting a plan they find unacceptable; (iv) important contingencies must be resolved; and (v) the Debtors have been paying their postpetition obligations as they become due.  Courts well recognize the benefits and practical necessities of extending a debtor's exclusive periods in large, complex cases, particularly when there is no indication the debtor is abusing the chapter 11 process through such extensions.  Here, the Debtors and the Creditors' Committee have worked, and continue to work, constructively and have had several meeting to discuss plan structure and gating issues.  The vital components underlying a chapter 11 plan are being developed as rapidly as possible.  Further, the relief requested will allow the Debtors to continue their efforts to wind down their estates in an

orderly, efficient, and cost-effective manner and, most importantly, afford the Debtors a full and

fair opportunity to negotiate, propose, and seek acceptances of a confirmable chapter 11 plan.

### Jurisdiction

7.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Basis for Relief Requested

8.     Section 1121(d) of the Bankruptcy Code permits the court to extend the

Debtors' Exclusive Periods upon a demonstration of cause:

> [O]n request of a party in interest made within the respective
> periods specified in subsections (b) and (c) of this section and after
> notice and a hearing, the court may for cause reduce or increase the
> 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).  However, the 120-day period "may not be extended beyond a date that is

18 months after the [commencement] date" and the 180-day period "may not be extended

beyond a date that is 20 months after the [commencement] date." *Id.* § 1121(d)(2).  As described

below, the Debtors submit ample cause exists to extend their Exclusive Periods.

9.     The Exclusive Periods provided by Congress were incorporated in the

Bankruptcy Code to afford a debtor a full and fair opportunity to propose a consensual plan and

solicit acceptances of such plan without the deterioration and disruption of a debtor's business

that might be caused by the filing of competing plans by non-debtor parties.  Indeed, the primary

objective of a chapter 11 case is the formulation, confirmation, and consummation of a

consensual chapter 11 plan, and it is the intention of the Debtors to achieve this objective.  To

terminate the Exclusive Periods in these chapter 11 cases before the process of plan negotiation

has been completed is to defeat the very purpose of section 1121 of the Bankruptcy Code.

10.     Where the exclusive periods provided for in the Bankruptcy Code prove to be an unrealistic time frame, section 1121(d) of the Bankruptcy Code allows the bankruptcy court to extend a debtor's exclusive periods for cause.

11.     The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension.  The legislative history indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

12.     In determining whether cause exists to extend the Exclusive Periods, a court may consider a variety of factors to assess the totality of circumstances in each case.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying "objective factors which courts historically have considered in making determinations as" to whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  Those factors include, without limitation:

> (a) the size and complexity of the debtor's case;
>
> (b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
>
> (c) the existence of good faith progress towards reorganization;
>
> (d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with its creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(f) whether an unresolved contingency exists.

*In re Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *See also In re McLean Indus., Inc.*, 87 B.R. at 834; *accord In re Express One Int'l, Inc.*, 194 B.R. at 100 (identifying all of the nine above-quoted factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of above-quoted factors).

13. Application of the aforementioned standards to the facts of these chapter 11 cases demonstrates sufficient "cause" to grant the Debtors' requested extension of the Exclusive Periods for a second time so that they may have a full and fair opportunity to propose a consensual plan and solicit acceptances thereof.

### A. The Debtors' Cases Are Large and Complex

14. Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of the Exclusive Filing Period. "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an

agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.  In *In*

*re Texaco Inc.*, the court stated:

> The large size of a debtor and the consequent difficulty in
> formulating a plan . . . for a huge debtor with a complex financial
> structure are important factors which generally constitute cause for
> extending the exclusivity periods.

76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

15.     The size and complexity of these cases warrant an extension of the

Exclusive Periods.  These chapter 11 cases are among the largest and most complex ever filed in

the United States.  Over six months ago, the Debtors were the largest Original Equipment

Manufacturer (OEM) of automobiles in the U.S. and the second largest in the world, employed

approximately 235,000 employees worldwide, and had, as of March 31, 2009, consolidated

reported global assets and liabilities of approximately $82,290,000,000 and $172,810,000,000,

respectively.

16.     Now, after having implemented the *only* available means to preserve and

maximize the value, viability, and continuation of their business and enhance the interests of

their economic stakeholders through the sale of substantially all of their assets pursuant to

section 363 of the Bankruptcy Code (the "**363 Transaction**"), the Debtors have identified in

their Schedules assets having a book value totaling approximately, $2,363,743,106 (exclusive of

the value of securities in New GM received in connection with the 363 Transaction) and

liabilities totaling approximately $29,824,203,390.  More than 68,000 proofs of claim in the

aggregate amount of approximately $217 billion have been filed against the Initial Debtors alone.

Notably, the Initial Debtors' Property Bar Date as well as the Realm/Encore Debtors' Bar Date

have not yet expired.  By any reasonable measure, the Debtors' chapter 11 cases remain among the large and more complex chapter 11 cases.

17.     In cases of this size and complexity, the current Exclusive Periods is simply inadequate to analyze and reconcile the claims asserted against the estates and prepare a disclosure statement containing adequate information.  Thus, as with other large and complex reorganization cases, the Debtors' Exclusive Periods do not provide adequate time to develop a chapter 11 plan in these cases.  The Debtors' chapter 11 cases are indisputably of the size and complexity that Congress and courts have recognized warrant extensions of the Exclusive Periods.

### B.  Substantial Good Faith Progress Has Been Demonstrated

18.     It is unquestionable that the Debtors have made substantial progress in these chapter 11 cases.  In only six months, the Debtors have, among other things:

- completed the sale of substantially all of their assets to New GM pursuant to the 363 Transaction that resulted in substantial recoveries to the estates and preservation of employment for approximately 235,000 employees worldwide, including 91,000 domestic employees, after a three-day trial;

- responded to several appeals of the order approving the 363 Transaction;

- analyzed more than 780,000 contracts in connection with the assumption and assignment to New GM, and, to date, filed 10 omnibus motions to reject more than 315 executory contracts and unexpired leases of nonresidential real property;

- conducted a comprehensive, objective, and quantitative evaluation of each of the Debtors' approximate 6,000 dealerships, negotiated with each of them, and rejected approximately 38 dealerships in total;

- established global procedures for asset sales and began the process of selling certain de minimis assets;

- established the Initial Debtors' General Bar Date, the Initial Debtors' Property Bar Date, and the Realm/Encore Debtors' Bar Date;

- begun analyzing the more than 68,000 proofs of claim filed in an aggregate amount of approximately $217 billion that the Initial Debtors

have received thus far, of which over 30,000 are unliquidated,
approximately 27,272 are asbestos-related, and 318 are environmental-
related;

- negotiated settlements with certain equipment lessors resulting in
modifications to lease agreements and assumption and assignment to New
GM of such modified leases, resulting in the reduction or elimination of
hundreds of millions of dollars in rejection damages;

- begun preparation of a term sheet for a chapter 11 plan; and

- responded to countless inquiries related to the status of these cases and
specific contract counterparty demands.

19.    As the foregoing list demonstrates, the Debtors have made considerable
progress towards developing a chapter 11 plan by, inter alia, filing the Schedules, establishing
the Bar Dates, and formulating a term sheet for a chapter 11 plan.  The process to reconcile
thousands of unliquidated and litigation claims has now commenced and is vital to
implementation of a chapter 11 plan.  As noted, however, as the Initial Debtors' Property Bar
Date and the Realm/Encore Debtors' Bar Date have not yet expired, analysis of the entire
universe of claims asserted against the Debtors' estates remains incomplete.  Moreover, the
Debtors are finalizing a term sheet for a proposed chapter 11 plan so that it can be presented to
the Creditors' Committee and other constituencies.  In this regard, the Debtors intend to work
with the Creditors' Committee and other parties to build consensus for a consensual chapter 11
plan.

20.    The Debtors' progress on these critical issues in this short period of time
justifies the requested extension.

**C.  The Debtors Are Not Seeking to Use Exclusivity to
Pressure Creditors to Submit to the Debtors' Demands**

21.    This is the Debtors' second request for an extension of the Exclusive
Periods.  The requested extension is reasonable given the Debtors' progress to date and the

9

current posture of these chapter 11 cases.  The Debtors are not seeking this extension to delay the liquidation of these estates for some speculative event or to pressure creditors to accede to a plan unsatisfactory to them.

22.    Courts have denied extensions of the Exclusive Periods where plan negotiations among parties in interest have broken down and the continuation of exclusivity would merely give the debtors unfair bargaining leverage over other parties in interest.  *See In re Texaco Inc*., 76 B.R. at 345.  The Debtors' chapter 11 cases are proceeding at a fast pace, and their relationship with the Creditors' Committee and its professionals are cordial and constructive.  Only six months have passed since the Debtors commenced their chapter 11 cases. The Debtors' request for an extension of the Exclusive Periods is not a negotiation tactic, but merely a reflection of the fact that these cases are not yet ripe for the formulation and confirmation of a viable chapter 11 plan.

23.    Moreover, the Debtors submit that the requested extension of the Exclusive Periods will not harm the Debtors' creditors or other parties in interest and will be used for a proper purpose – to develop and build consensus for a chapter 11 plan.  In connection with their wind-down efforts, the Debtors have been working closely with their key constituencies to address the issues critical to developing and implementing a chapter 11 plan. As such, the Debtors submit that neither the creditors nor any other party in interest would be harmed by the requested extension of the Exclusive Periods.  The relief requested herein will not result in a delay of the plan process; rather it will permit the wind-down process to move forward in an orderly and expeditious fashion.

24.    Furthermore, the Debtors have kept sight of the need to deal with all parties in interest in these cases.  The Debtors and their professionals, including the professionals

at AlixPartners, who have taken the lead in compiling information related to the Debtors'

business and administering the estates, have consistently conferred with key constituencies on all

major substantive and administrative matters in these cases. The Debtors have no intention of

discontinuing this dialogue if this Motion is granted.

### D.  **Important Contingencies Must Be Resolved by the Debtors**

25.    Courts have recognized, as a justification for extending the Exclusive

Periods, the need to resolve an important contingency. *See, e.g., Adelphia Commc'ns*, 352 B.R.

at 587.  As indicated above, the Debtors have made substantial progress in the prosecution of

their chapter 11 cases.  They do, however, require additional time in which to propose a

confirmable chapter 11 plan as the Debtors continue to address a number of key issues, including

(a) the refinement and completion of their wind-down plan in consultation with their key

constituencies; (b) the efforts to divest the remaining estate assets as part of their wind-down

efforts; and (c) the analysis of the universe of claims asserted against the Debtors' estates upon

the passing of the respective Bar Dates.

26.    Litigation Claims  With the recent passage of the November 30, 2009 bar

date for the filing of claims against the Initial Debtors, the Debtors now face over 68,000 proofs

of claim, a large number of which are either unliquidated or have an excessive claim amount.

These factors undermine the Debtors' ability to distribute meaningful value to their creditors in

an acceptable time-frame.  As a result, the Debtors have consulted with the Creditors' Committee

and with certain plaintiff's attorneys and have determined to file a motion to implement

alternative dispute resolution procedures to facilitate the efficient resolution of a large number of

litigation and other unliquidated claims filed against the estates.  Consistent with the Debtors'

goal of building consensus, the Debtors are in the process of vetting their proposed procedures with certain key constituencies.

27.    <u>Asbestos Claims</u>  Although these chapter 11 cases clearly are not asbestos cases, the Debtors historically have incurred some liability with respect to asbestos-related claims.  With respect to the Initial Debtors alone, approximately 27,272 asbestos-related proofs of claim have been filed to date, which claims do not account for the asbestos-related claims that may yet be filed against the Realm/Encore Debtors or the potential asbestos claims that may be asserted against the Debtors in the future.  The Debtors, in conjunction with the Creditors' Committee, are in the process of analyzing and addressing the treatment of asbestos-related liabilities in a chapter 11 plan and need additional time to do so.

28.    <u>Environmental Obligations</u>  An appropriate resolution of environmental issues with respect to the Debtors' owned properties is critical to the administration of these estates and the formulation and consummation of a chapter 11 plan.  Like any other major industrial company, the Debtors were, and continue to be, subject to a wide range of environmental protection laws that govern emissions in the air; discharges in water; the generation, handling, storage, transportation, treatment, and disposal of waste materials; and the remediation of contaminated properties.  Since the commencement of these cases, the Debtors have interacted with governmental entities, including, regulators, attorneys general, and other parties in interest to discuss environmental-remediation obligations at the properties now under the Debtors' control and have focused on the manner in which such obligations should be addressed in a way that protects public health and the environment while being consistent with the interests of creditors.  In that respect, the Debtors and their professionals are continuing to analyze the environmental liabilities at owned sites, superfund sites, and other third-party owned

12

sites, estimating potential environmental liabilities, as well as potential remediation costs.  The

Debtors are focused on achieving the most efficient and prudent manner to address these issues

in the context of a chapter 11 plan.  In that regard, the Debtors are working cooperatively with

the Creditors' Committee and other parties to address these issues in a chapter 11 plan.

29.     The need to resolve these important contingencies *alone* would likely

preclude the Debtors, or any other party in interest in these cases for that matter, from filing a

confirmable chapter 11 plan at this time.  It is undisputed that any meaningful chapter 11 plan

must consider the nature and extent of all claims and interests asserted against the Debtors.

Accordingly, the extensions of the Exclusive Periods as requested herein will not prejudice any

party in interest, but rather will avert the premature filing of an unconfirmable plan and afford

the Debtors an opportunity to propose a realistic and viable chapter 11 plan in a reasonable

timeframe.  Failure to extend the Exclusive Periods as requested herein would defeat the very

purpose of section 1121 of the Bankruptcy Code, i.e., to afford the debtor a meaningful and

reasonable opportunity to negotiate with creditors and propose a confirmable chapter 11 plan.

The termination of the Exclusive Periods and the threat of multiple plans would likely lead to

unnecessary adversarial situations, confrontations and increased costs that would cause a

deterioration in the Debtors' remaining assets.

### E.   The Debtors Are Making Required Postpetition Payments
### As They Come Due and Have the Ability to Continue to Do So

30.     Courts considering an extension of exclusivity may also assess a debtor's

liquidity and solvency.  *See Adelphia Commc'ns*, 352 B.R. at 587; *In re Texaco Inc.*, 76 B.R. at

322.  Here, the Debtors have sufficient liquidity and are paying their bills as they come due.

This is unlikely to change given this Court's approval of the Debtors' $1.175 billion postpetition

Wind-Down Facility on July 5, 2009.  *See* Order Pursuant to Bankruptcy Code Sections 105(a),

361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (a) Approving

Amendment to DIP Credit Facility to Provide for Debtors' Post-Petition Wind-Down Financing

[Docket No. 2969].

## Conclusion

31.    In sum, the Debtors have responded to the exigent demands of these

chapter 11 cases and have worked diligently with the Creditors' Committee to advance the wind-

down process.  The Debtors should be afforded a full and fair opportunity to negotiate, propose,

and seek acceptance of a chapter 11 plan.  The Debtors believe the requested extension of their

Exclusive Periods is warranted and appropriate under the circumstances.  The Debtors submit the

requested extension is realistic and necessary, will not prejudice the legitimate interest of

creditors and other parties in interest, and will afford them a meaningful opportunity to pursue a

feasible and consensual chapter 11 plan, all as contemplated by chapter 11 of the Bankruptcy

Code.

32.    An extension of the Exclusive Periods will enable the Debtors to

harmonize the diverse and competing interests that exist and seek to resolve conflicts in a

reasoned and balanced manner.  This neutral and independent role is precisely what Congress

envisioned for the debtor in possession in the chapter 11 process.  Based on the foregoing, the

Debtors submit the Motion should be granted.

## Notice

33.    Notice of this Motion has been provided to parties in interest in

accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and

9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No.

14

3629].  The Debtors submit that such notice is sufficient and no other or further notice need be

provided.  No previous request for the relief sought herein has been made by the Debtors to this

or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated:  New York, New York
      January 6, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|     f/k/a **General Motors Corp.**, *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

## ORDER GRANTING DEBTORS' SECOND MOTION PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING EXCLUSIVE PERIODS IN WHICH DEBTORS MAY FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the Motion, dated January 6, 2010 (the "**Motion**"),[1] of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors (collectively, the "**Debtors**"), pursuant to section 1121(d) of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order extending the Initial Debtors' and the Realm/Encore Debtors' respective exclusive periods in which to file a chapter 11 (the "**Exclusive Filing Period**") and solicit acceptances thereof (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusive Periods**"), as more fully set forth in the Motion; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtor's Exclusive Filing Period in which to file a chapter 11 plan is extended to and including May 27, 2010; and it is further.

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Solicitation Period in which to solicit acceptances of their chapter 11 plan is extended to and including July 27, 2010; and it is further

ORDERED that the extensions of the Exclusive Periods granted herein are without prejudice to such further requests that may be made pursuant to section 1121(d) of the Bankruptcy Code by the Debtors or any party in interest, for cause shown, upon notice and a hearing; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2010

_____
United States Bankruptcy Judge