# EXHIBIT A

Mark F. Anderson (SBN 44787)
KEMNITZER, ANDERSON, BARRON, OGILVIE & BREWER, LLP
445 Bush St, 6th Floor
San Francisco, CA 94108
Telephone: (415) 623 3784
Fax: (415) 861 3151
Email: mark@kabolaw.com

Attorneys for Plaintiff

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID B. SIDNER, on behalf of himself, and all others similarly situated, | : | Case No. 2:07-cv-892-FCD-GGH |
| | : | **FIRST AMENDED COMPLAINT** |
| | : | |
| Plaintiff, | : | Class Action |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS CORPORATION, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

Plaintiff, David B. Sidner, on behalf of himself and all others similarly situated, alleges,

upon information and belief, except as to his own actions, the investigation of counsel, and the

facts that are a matter of public record, as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

1.     This class action is brought against Defendant, General Motors Corporation

("GM" or "Defendant"), for the benefit and protection of all current and former owners and

lessees of model year 2004, 2005, and 2006 Pontiac GTOs ("Vehicles" or "GTOs") purchased or

leased in the United States, excluding the States of Florida and California, to obtain damages and

restitution and injunctive and other relief.

2.     The tires on each of the Vehicles wear unevenly and prematurely and

are prone to failure because the suspension system and alignment settings (and specifically the

camber settings) are improperly designed, assembled, and/or installed, causing, inter alia, uneven

and premature tire wear and tire failure, as well as causing the inside front tires to graze the

1  struts during normal operation and use.

2      3.    The Vehicles are built on the same platform as their Australian counterpart, the

3  Holden Monaro ("Monaro"), which was manufactured and sold in Australia by GM Holden

4  Limited ("Holden"), a manufacturer and GM subsidiary based in Melbourne, Australia. When

5  GM, through its subsidiary, Holden, sold the Monaro vehicles in Australia, the vehicles were

6  equipped with 17" wheels and 235 mm wide tires.  When GM marketed and sold the GTOs in

7  the United States, however, GM distributed the Vehicles with 17" wheels and 245 mm wide

8  tires, which were larger than the tires that had been placed on the Monaro vehicles.

9      4.    As set forth below, GM: (1) marketed and sold expensive automobiles to Plaintiff

10  and thousands of other consumers when it knew that a critical component in the automobiles, the

11  suspension system and alignment setting (and specifically the camber settings), was defective

12  and would cause premature and uneven wear of the Vehicles' tires; (2) never disclosed the fact

13  that the Vehicles had this critical problem despite its knowledge of the issue prior to the sale of

14  the first GTO; (3) actively concealed the fact that the suspension system and alignment setting

15  (and specifically the camber settings) was defective and would cause premature and uneven wear

16  of the vehicle's tires; (4) refused to honor its warranty to repair the defect or provide full

17  reimbursement for damages caused by the defect; and (5) continued to sell the Vehicles despite

18  that it received, and continues to receive, numerous complaints from Vehicle owners and lessees.

19      5.    GM further concealed material facts regarding the GTO alignment problems by

20  affirmatively misrepresenting the purported attributes of the GTO.  As a result of GM's conduct,

21  including its omissions, acts of concealment and misrepresentations, Plaintiff and Class members

22  have been and will continue to be harmed and subjected to premature tire wear, and unnecessary

23  repair and replacement costs.  If these material facts had been disclosed by GM, Plaintiff and

24  Class members would not have purchased or leased, or would have paid significantly less, for

25  their GTO Vehicles.

26      6.    Defendant has or should have the capability of fixing the suspension system and

27  alignment settings on the Vehicles so that they can operate safely with proper suspension and

28  alignment settings and tires that have a normal useful life. Instead of taking this responsible

First Amended Complaint - *Sidner v. General Motors*                                                    2

1  action to remedy its unlawful actions and misconduct, Defendant has chosen to disclaim

2  responsibility for its misconduct and, instead, has sought to shift the economic burden of its

3  development, manufacturing, marketing, distribution and/or sale of the Vehicles with the

4  inherently defective suspension system and alignment settings to Plaintiff and Class members.

5  **PARTIES**

6      7.    Plaintiff is a citizen of the State of Ohio, and resides and has resided in Grove

7  City, Ohio at all pertinent times.  On or about April 4, 2006, Sidner purchased a new 2006

8  Pontiac GTO for his personal and family use from H & K Motor Sales, Inc., an authorized GM

9  dealership located in Continental, Ohio.  Sidner paid $29,200 for the Vehicle, including tax and

10  license fees.

11      8.    GM, is a Delaware corporation that does business throughout this judicial district.

12  **JURISDICTION AND VENUE**

13      9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

14  because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

15  interest and costs, and this is a class action in which the Class members and Defendant are

16  citizens of different states.

17      10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

18  Defendant engages in business activities throughout this judicial district, and there are two

19  related and consolidated actions, *O'Connor v. General Motors Corporation*, Case No.

20  2:07-cv-00892-FCD-GGH ("*O'Connor*") and *Paikai v. General Motors Corporation*, Case No.

21  2:07-cv-02469-FCD-GGH ("*Paikai*"), pending in this District.

22      11.    By this action, Plaintiff seeks relief under the Magnuson-Moss Warranty Act

23  ("MMWA"), 15 U.S.C. §§ 2301 *et seq*, and in particular 15 U.S.C. § 2310(d)(1) and (3) and

24  under Ohio law, which is the state in which Plaintiff resides, contracted, purchased, and

25  attempted to service his vehicle, for violations of the Ohio Consumer Sales Practices Act, Ohio

26  Rev. Code § 1345.01 *et seq*. ("OCSPA"), breach of express warranty and unjust enrichment.

27      12.    All jurisdictional prerequisites to suit have been satisfied.

28

1

## FACTS

2      13.    This class action is brought on behalf of all current and former owners and lessees

3 of Pontiac GTO Vehicles manufactured by GM (with the exception of those sold or leased in

4 California and Florida) with respect to the claims asserted in this action.

5      14.    The Vehicles at issue, which had a suggested retail price of approximately

6 $30,000, were manufactured, marketed and sold by GM (and its Holden division), through its

7 established network of licensed dealers and distributors throughout the United States, including

8 throughout Ohio.

9      15.    The GTO was engineered and assembled in Australia, by engineers that did not

10 have expertise equivalent to GM's engineers in North America.  The Vehicles were to be built

11 on the same platform as their Australian counterpart, the Holden Monaro, although the GTO was

12 a heavier vehicle and used a different, larger tire and wheel combination than was used on the

13 Monaro.

14      16.    According to GM press releases, changes in tire and wheel components

15 necessitate changes in suspension system and alignment settings.

16      17.    However, the design and engineering work for the GTO was done on a shortened

17 and extremely aggressive schedule, which proved to be too optimistic and did not allow for time

18 to correct all problems and make the necessary changes with respect to the suspension system

19 and alignment settings in the Vehicle.

20      18.    Before the Vehicle was sold to the public, GM was aware of the problems with

21 the suspension and alignment settings in the GTO Vehicles.  Several modifications were made to

22 the camber (a component of the suspension/alignment) setting fixture to try to (unsuccessfully)

23 correct the faulty alignment settings from the factory.

24      19.    Defendant had exclusive knowledge of the fact that the suspension and alignment

25 settings were improper and that these defects could lead to premature tire wear.  Defendant was

26 further made aware of this fact as a result of the numerous complaints it received about problems

27 with the GTO tires from their customers (as described below) and dealers.

28      20.    Defendant provided Plaintiff and each owner and lessee of the Vehicles with the

same uniform 3 year, 36,000 mile bumper-to-bumper factory warranty. Defendant's express

warranty, in pertinent part, provides:

> The warranty covers repairs to correct any vehicle defect related to
> materials or workmanship occurring during the warranty period.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> Warranty repairs, including towing, parts, and labor, will be made
> at no charge.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> The tires supplied with your vehicle are covered against defects in
> material or workmanship under the Bumper-to-Bumper coverage.
> Any tire replaced will continue to be warranted for the remaining
> portion of the Bumper-to-Bumper coverage period.

Under this warranty, Defendant was obligated, *inter alia*, (1) to replace Plaintiff's prematurely

worn tires at no charge; (2) to repair and adjust the improper suspension and alignment settings

which was necessitated by the defect at no charge; and (3) to repair the defect at no charge.

Defendant has these same obligations with respect to Plaintiff and all Class members, but has

failed to satisfy these obligations.

21. GM also included misleading and deceptive information in the warranty

information provided to Plaintiff and Class members, by its (false) promise that the factory

alignment was sufficient for the vehicle. According to the 2004 GTO owner manual: "The

wheels on your vehicle were aligned and balanced carefully at the factory to give you the longest

tire life and best overall performance. Scheduled wheel alignment and wheel balancing are not

needed. However, if you notice unusual tire wear or your vehicle pulling one way or the other,

the alignment may need to be reset. If you notice your vehicle vibrating when driving on a

smooth road, your wheels may need to be rebalanced." Despite these obligations, GM denied

warranty coverage to Plaintiff and Class members.

22. Throughout the period during which GM offered GTO Vehicles, GM engaged in

a uniform marketing and sales campaign, in which it consistently misrepresented and/or

concealed material facts in its advertisements, sales and marketing materials, warranties, and

through its sales representatives and dealers, by concealing from, failing to disclose and/or

misrepresenting to Plaintiffs and the Class material information regarding the Vehicles,

including, but not limited to the fact that: (1) a critical component in the automobiles, the

1    suspension system and alignment setting (and specifically the camber settings), was defective;

2    (2) the defect in the suspension system and alignment setting (and specifically the camber

3    settings) would cause premature and uneven wear of the Vehicle's tires; (3) GM would not

4    honor its warranty to repair the defect or provide full reimbursement for damages caused by the

5    defect. GM's misrepresentations and omissions regarding the Vehicles are consistent and

6    uniform.

7        23.    The fact that a critical component in the automobiles, the suspension system and

8    alignment setting (and specifically the camber settings), was defective and that the defect in the

9    suspension system and alignment setting (and specifically the camber settings) would cause

10    premature and uneven wear of the Vehicle's tires, rendering the GTO tires with a markedly

11    reduced useful life is a material fact, which a reasonable person would consider important in

12    deciding whether or not to purchase (or to pay the same price for) a GTO Vehicle. Plaintiff and

13    Class members would not have purchased, or would have paid substantially less for, their

14    Vehicles had they been informed that the suspension system and alignment setting (and

15    specifically the camber settings), was defective and that the defect in the suspension system and

16    alignment setting (and specifically the camber settings) would cause premature and uneven wear

17    of the Vehicle's tires. Furthermore, Plaintiff and Class members reasonably expected that GM

18    would not sell them Vehicles containing a known defect.

19        24.    Defendant had exclusive knowledge of the defect and the reduced useful life of

20    the tires that resulted. In fact, Defendant had access to relevant data regarding the defect, and

21    had knowledge as a result of the numerous complaints it received from consumers regarding

22    their need to replace these tires much sooner than they expected or is reasonable.

23        25.    Defendant has been on notice of the defect in the Vehicles and that it did not

24    comport with the representations made in the advertising, marketing and sale of the Vehicles

25    from, *inter alia*, customer complaints, warranty claims and field technicians. However,

26    Defendant concealed this knowledge from Plaintiff and the Class.

27        26.    Defendant knew or should have known of the defect at the time of the marketing,

28    sale and distribution of the Vehicles. In light of Defendant's knowledge regarding the defect and

1  problems detailed above, including the reduced expected life of the tires, the provision of a

2  limited warranty with respect to the Vehicles under all of these circumstances, constitutes an

3  unlawful, unfair and fraudulent business practice, and, under all of the circumstances, the limited

4  warranties accompanying the Vehicles are unconscionable.

5  **Plaintiff's Experiences With His GTO**

6      27.    On April 4, 2006, Plaintiff purchased a new 2006 Pontiac GTO, VIN

7  6G2VX12495L425978 from H & K Motor Sales, Inc., Continental Ohio, an authorized Pontiac

8  GTO dealer.  The Vehicle was purchased pursuant to a written contract of sale, under which

9  Sidner paid $29,200 including tax and license.  Plaintiff purchased the vehicle for his personal

10  and family use.

11      28.    On February 10, 2007, Haydocy Pontiac GMC Buick ("Haydocy"), an authorized

12  Pontiac dealer located in Columbus, Ohio, rotated the tires on Plaintiff's Vehicle at odometer

13  reading 6,549.

14      29.    On December 20, 2007, with the odometer reading 12,166 miles, Plaintiff noticed

15  the left front tire on his GTO had picked up nail.  Plaintiff took the GTO to National Tire and

16  Battery in Columbus, Ohio where, upon inspection, a technician found the nail.  During the

17  inspection, the technician also saw that the inside of the left front tire was shredded.  Plaintiff

18  paid the tire retailer $260.61 to replace the tire, which was in immediate need of replacement.

19      30.    Within a month of having to replace the left front tire, Plaintiff noticed that the

20  right rear tire, which had been on the front of the Vehicle prior to the tires being rotated, was

21  worn on the outside edge of the tire.  Prior to rotation, the outside edge had previously been on

22  the inside edge when the tire was on the left front of the Vehicle.

23      31.    In early January 2008, Plaintiff telephoned Haydocy's service department and

24  explained that he had a tire that was damaged, having apparently hit the front struts of the

25  Vehicle.  Although Plaintiff presented the issue to Haydocy, at a time which Defendant was

26  clearly aware of the defect, Plaintiff was told by the Haydocy representative that he should not

27  bring his Vehicle in because the tire wear would not be covered by any warranty.  In denying

28  warranty coverage, the representative incorrectly stated that the tire problem was likely due to

1    road hazard (as opposed to the known defect).

2        32.    Plaintiff next called GM's customer service number and complained about the

3    Haydocy's refusal to replace the tire under warranty. The GM representative told Plaintiff return

4    to the dealer and failed to disclose the fact that the know defect was responsible for the type of

5    wear described by the Plaintiff. Plaintiff complied with the directive and took the car back to

6    Haydocy, at which time the service writer again reaffirmed that the tire would not be covered by

7    warranty. Rather than acknowledging that the tire wear was caused by the known defect, the

8    service writer incorrectly stated that the wear could have been caused "by anything."

9        33.    Having presented the Vehicle for warranty coverage, and having wrongly been

10    denied such coverage by GM, Plaintiff took his Vehicle to a Firestone store in Columbus, Ohio

11    on or about January 26, 2008. After examining the Bridgestone/Firestone Potenza tires on

12    Plaintiff's Vehicle, the technician wrote on the repair order that the tire was not eligible for the

13    Firestone warranty because the tire was "rubbing on the strut." Plaintiff was required to pay

14    Firestone $304 for a replacement tire.

15    **Class Members' Experiences with the GTO**

16        34.    Plaintiff's experience with his GTO mirrors those of the thousands of other

17    Vehicle owners and lessees. The Internet is replete with thousands of references to the common

18    and profound problems that consumers have experienced with the GTO's suspension and

19    alignment, all leading to severely premature tire wear, including, but not limited to, the following

20    small sample of representative complaints appearing at gtoforum.com (as monitored and

21    collected by GM), LS1GTO.com/forums, and LS2GTO.com/forums:

22              I had strut rub and chewed up the factory tires within 16,000 miles.
          I tried going through GM and was ready to get an attorney. I
23              threw in the towel and bought some 18 inch stock rims on eBay.
          Plenty of clearance now. The dealerships act like they have never
24              heard of such a problem but off the record my service rep told me
          GM is well aware of the problem. I just didn't have the energy to
25              bicker back and forth with them. Now that I don't have to worry
          about strut rub I can have some fun with my car!
26    
          *     *     *     *     *     *     *
27    
28              Strut rub should be covered under warranty. I was told by a GM
          rep (who owns a GTO) that there is, in his words a "hidden recall"
          on this issue, since it is safety related. He told me to go directly to

1   the service manager. If you have no luck there, ask to contact the
2   zone rep. They are supposed to correct the camber problem but
   that's all they will do.

3          *    *    *    *    *    *    *

4   It's about damn time a report like this has been made. I know of a
   couple of GTOs with this problem that have been taken to dealers
5   near me and they won't do crap saying that all it needs is a new
   alignment and is not covered under warranty, even though one of
6   the tires I saw was down to the belts and only had like 8,000 miles
   on it.
7

8          *    *    *    *    *    *    *

9   You ever figured that out (why the huge range of coverage from
   total to zero); make sure you buy a lottery ticket too....

10   I'm $360 out of pocket for a new tire and a 4-wheel alignment to
   crank the camber out from the struts so they'll stop rubbing.
11   Awesome. I always wanted to know what it would be like to have
   a GTO that corners like a Malibu or Taurus - now I know.
12

13   Tip of the iceberg for me. Mileage 11,300. Right front tire:
   replaced. Radius rod bushes: shot. Upper strut bushes: shot.
   Number of dealers involved: two. Number of parts replaced under
14   warranty:  ZERO Thanks GM - you've made my next car purchase
   decision crystal-clear, and it does not involve buying any of your
15   crap cars.

16          *    *    *    *    *    *    *

17   Been hearing about this issue here. Didn't think I had it until I just
   checked my front tires. Wow, wore down to the belts! It has
18   21,000 miles and the tires are wore out anyway, but I don't want to
   get new tires and have this problem!
19

20   Just talked to the dealer, he heard of it on one other car and said an
   alignment will solve it. Said he knows it is a tight fit but it should
   never rub unless there are other problems. He seemed cool about it
21   and said he will make sure GM has no bulletins on it. Guess that is
   where I am at for now.
22

23          *    *    *    *    *    *    *

24   GM is ignoring the problem because they probably think that this
   is something they inherited from Holden [even though they own
25   it]. By sending out notices to all GTO owners advising them of the
   potential problem and offering free alignments they would be
   admitting fault. They're also dealing with only 40,000 or so units
26   that are not even in production anymore. If these were ford pintos
   with exploding gas tanks and a million sold there would be a
27   national crisis.  They are just weathering the storm now knowing
   that a big chunk of the GTOs have 18" 235 tires and are not a
28   problem and the rest of the 17" owners will take care of their own
   situation. A couple of owners who are oblivious will have fatal

accidents and they'll just settle the lawsuits. A lot cheaper than retrofitting 40,000 out of production cars with a new suspension.

\*       \*       \*       \*       \*       \*       \*

I bought mine in January and my dealer replaced my struts (March build date) before the car was even delivered to me. Apparently, GM sent out a bulletin to all dealers authorizing replacement of correct struts for existing inventory still on the lots.

GM is aware of this problem, trust me. Don't let the dealer give you any mumbo jumbo. If your car is affected, they owe you new struts.

Happy motoring.

\*       \*       \*       \*       \*       \*       \*

I have a blue 2004 and my left front wheel is rubbing on the strut. You can visibly see on the tire where it is wearing. I only have 19,000 miles on the car. I can't believe it. Thanks for all your research...I am taking it in A.S.A.P.

\*       \*       \*       \*       \*       \*       \*

I just followed up on this discussion because I lost 1 tire on the freeway - tread peeled off but did not deflate. After getting home I find the other front tire is peeling - just no fully separated yet!!!!

Damage both on the inner tire edge and I had been checking periodically for damage - I had notice uneven wear but I did not thing it was strut rub - now I think it was.

Should I still complain to GM dealer about this with the NHTSA investigation closed.

\*       \*       \*       \*       \*       \*       \*

Ok, here's my story, I'd appreciate any advice as to what to talk with the dealer about. I have an 05 A4, with stock 17" rims and tires, that just turned 28K miles. I do not drive my car hard. I guess an old age has calmed me down. I've done maybe 10 full power launches.

I've gone through 2 sets of tires. Each time the inside of the rear tires wear MUCH faster than the rest of the tire. The last time the rears went, the outside of the tire had 50% tread left while the inside edge of the tire separated from the sidewall. Of course, the dealer said this was normal, but recommended I have the car aligned (which I did 3 weeks ago). I have some strut rub up front on both sides. Not enough to wear through the pain on the struts but enough to leave very noticeable marks. Also have marks on the front on the right fender well were the tire has rubbed during turns.

\*       \*       \*       \*       \*       \*       \*

First Amended Complaint - *Sidner v. General Motors*                    10

I submitted the form on-line & was contacted by an investigator (Derek Rinehardt). I supplied him with pictures and a short write upper his request

It is/was the dealer arrogance (on top of the money & time I had to spend to fix it myself) that really bothered me. I tried to give him information off this board and he would not even look @ it. I asked him about checking the strut bushings & ride height, neither of which he did. His answer was an alignment & selling me 4 tires and "see what happens". I explained I felt that was a band-aid approach and I was not going to pay for an $80 alignment when I was fairly sure there were failed suspension components. Ultimately, he stated I did not want to participate in the repair process.

If I can get the proper dimensions on a new GM bushing I can take that info long with my old ones and pursue reimbursement. Additionally when I repaired the front with the new bushings it became obvious the rear springs were also shot. I replaced them with King's. I had worse tire wear on the rear that the front when all was said and done!!

*       *       *       *       *       *       *

35.    Having received numerous complaints, on February 16, 2007, The United States Department of Transportation, National Highway Traffic Safety Administration ("NHTSA") opened an investigation into complaints of front tire failures due to front strut to tire interference on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control. In connection with that investigation, GM provided documents and information to NHTSA. Although NHTSA did not identify a safety-related defect trend, the NHTSA Failure Report Summary stated that "excessive negative camber is an apparent issue." Also according to the NHTSA investigation, "approximately 90% of the final factory camber settings available for complaint and warranty claim vehicles GM provided ... had right wheel camber settings that were out of specifications."

36.    Indeed, GM was aware (and had exclusive knowledge) of the defect and has acknowledged (although not to Plaintiff and Class members) that premature front tire wear in the Vehicles was caused by improper alignment, specifically by out of specification negative camber, and that out of specification negative camber could be caused by improper factory alignment settings.

# CLASS ACTION ALLEGATIONS

37.    Plaintiff requests that this Court certify the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

    a.    **48 State Class**: All current and former owners and lessees of model year 2004, 2005 and 2006 Pontiac GTOs purchased or leased in the United States, excluding California and Florida, who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO warranty in connection with premature or uneven inner should tire wear or for struts hitting the tires (the "48 State Class").

    b.    **Ohio Sub-Class**: All current and former owners and lessees of model year 2004, 2005 and 2006 Pontiac GTOs purchased or leased in the State of Ohio (the "Ohio Sub-Class").

    c.    **Ohio Warranty Class**: Ohio Sub-Class members who sought warranty coverage for or otherwise presented a claim for repair or reimbursement under the terms of the Pontiac GTO warranty in connection with premature or uneven inner should tire wear or for struts hitting the tires (the "Ohio Warranty Class")(collectively "Class").

Excluded from the Class and Sub-Class definitions are officers and employees of GM, its subsidiaries and its dealers, anyone sustaining personal injuries as a result of the defect alleged herein, as well as any judge to whom this action is assigned. Plaintiff reserves the right to amend these class definitions if discovery and further investigation reveals that the proposed classes should be expanded or otherwise modified.

38.    This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Rules of Civil Procedure. This action satisfies the requirements of numerosity, typicality, adequacy, predominance and superiority.

39.    <u>Numerosity</u>. On information and belief, the members of the 48 State Class number in at least the thousands and the members of the Sub-Classes number in at least the hundreds. As a result, the 48 State Class and Sub-Classes are so numerous that joinder of all members in a single action is impracticable. The members of the Class are readily identifiable from information and records in Defendant's possession, custody or control. The disposition of these claims will provide substantial benefits to the Class.

40.    <u>Commonality and Predominance</u>. There is a well-defined community of interest among the members of the Class. Common questions of law and fact predominate over any

1    questions affecting only individual members of the Class.  These common legal and factual

2    questions do not vary among members of the Class and may be determined without reference to

3    the individual circumstances of the individual members.  These common questions include, but

4    are not limited to, the following:

5            a.     Whether the Vehicles are defective;

6            b.     Whether GM's conduct violated the MMWA;

7            c.     Whether GM's conduct violated the OCSPA;

8            d.     Whether GM breached its express warranty;

9            e.     Whether GM concealed the defect from Plaintiff and Class members;

10           f.     Whether, by its conduct, GM has been unjustly enriched; and

11           g.     Whether, as a result of GM's misconduct, Plaintiff and the Class members

12                    are entitled to damages, restitution, and equitable relief, and/or other

13                    damages or relief, and, if so, the amount and nature of such relief.

14       41.    _Typicality_.  The representative Plaintiff's claims are typical of the claims of the

15   Class because Plaintiff and all members of the Class were injured by the same wrongful practices

16   in which GM engaged and are based on the same legal theories.  The only differences may be the

17   amount of damages sustained by each member of the Class, which can be determined readily,

18   and does not bar class certification.

19       42.    _Adequacy of Representation_.  Plaintiff will fairly and adequately represent the

20   Class.  Plaintiff understands the nature of the claims herein, as well as his role in the

21   proceedings, and will vigorously represent the interests of the Class.  Plaintiff has retained Class

22   counsel who are experienced and qualified in prosecuting class actions and other forms of

23   complex litigation.  Neither Plaintiff nor his attorneys have interests that are contrary to or

24   conflict with those of the Class.

25       43.    _Superiority/Manageability_.  A class action is superior to all other available

26   methods for the fair and efficient adjudication of this lawsuit because individual litigation of the

27   claims of the members of the Class would be economically unfeasible and procedurally

28   impracticable.  While the aggregate damages sustained by the Class are likely millions of dollars,

1  the individual damages incurred by each member resulting from GM's wrongful conduct are too

2  small to warrant the expense of individual lawsuits. The likelihood of individual members of the

3  Class prosecuting separate claims is remote and, even if every person could afford individual

4  litigation, the court system would be unduly burdened by individual litigation of such cases.

5  Individual members of the Class do not have significant interest in individually controlling the

6  prosecution of separate actions, and individualized litigation would also present the potential for

7  varying, inconsistent, or contradictory judgments. Plaintiff knows of no difficulty to be

8  encountered in the management of this action that would preclude its maintenance as a class

9  action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the

10  Class would be proper.

11     44.    Defendant has or had access to address information for the Class members, which

12  may be used for the purpose of providing notice of the pendency of this action.

### TOLLING OF THE STATUTE OF LIMITATIONS

14     45.    The causes of action alleged herein accrued upon discovery of the latently

15  defective nature of the Vehicles. Because the defect and limitations alleged herein are latent and

16  because Defendant took steps to conceal the true character, nature and quality of the Vehicles,

17  among other reasons, Plaintiff and members of the Class did not discover and could not have

18  discovered the problems and defects alleged herein through the exercise of reasonable diligence.

19     46.    Any applicable statutes of limitations have been tolled by Defendant's knowing

20  and active concealment and denial of the facts as alleged herein. Plaintiff and the Class have

21  been kept ignorant of vital information essential to the pursuit of these claims, without any fault

22  or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have

23  discovered the defects and problems alleged herein because of Defendant's fraudulent

24  concealment. In addition, Defendant continued to sell Vehicles without disclosing the defects

25  and problems.

26     47.    Defendant was and is under a continuous duty to disclose to Plaintiff and the

27  Class the true character, quality, and nature of the Vehicles. Defendant knowingly,

28  affirmatively, and/or actively concealed, and continue to conceal, the true character, quality and

1  nature of the Vehicles at issue. Defendant also continued to sell Vehicles and replacement tires

2  while concealing the defects and true character, quality and nature of the Vehicles.

3      48.    Defendant knew or should have known that Plaintiff and the Class would

4  reasonably rely upon Defendant's knowing, affirmative, and/or active concealment. Based on the

5  foregoing, Defendant is estopped from relying on any statutes of limitation in defense of this

6  action.

7      49.    Plaintiff has been damaged and suffered injury in fact as a result of Defendant's

8  conduct, including, but not limited to, having to pay for replacement tires and alignments due to

9  the defect in the Vehicle, and by purchasing a Vehicle that has lost value as a result of the defect.

10 The other owners and lessees of the Vehicles have, or will, suffer the same or substantially

11 similar damages as a result of Defendant's conduct.

12                          **FIRST CLAIM FOR RELIEF**
                  **(Violation Of Magnuson-Moss Warranty Act - Breach Of**
13                  **Written Warranty - On Behalf Of The 48 State Class)**

14     50.    Plaintiff realleges and incorporates the above allegations by reference.

15     51.    The Vehicles are "consumer products" as that term is defined by 15 U.S.C. §

16 2301(1).

17     52.    Plaintiff and members of the 48 State Class are "consumers" as that term is

18 defined by 15 U.S.C. § 2301(3).

19     53.    Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C.

20 § 2301(4) and (5).

21     54.    Defendant provided Plaintiff and members of the 48 State Class with "written

22 warranties" as that term is defined by 15 U.S.C. § 2301(6).

23     55.    In its capacity as a warrantor, and by the conduct described herein, any attempts

24 by Defendant to limit the express warranties in a manner that would exclude coverage of the

25 defective Vehicles is unconscionable and any such effort to disclaim, or otherwise limit, liability

26 for the defective Vehicles is null and void.

27     56.    All jurisdictional prerequisites have been satisfied.

28     57.    As set forth herein, GM's express warranty covered the Vehicles and, under the

First Amended Complaint - *Sidner v. General Motors*                                    15

1    circumstances described herein, its tires, struts, cambers and related systems.

2        58.    The written warranty was provided to Plaintiff and members of the 48 State Class

3    by GM and specifically extends to original purchasers and subsequent owners for the period of

4    warranty coverage.

5        59.    GM warranted all of GTOs against defects in material or workmanship at a time

6    when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to

7    market and sell the Vehicles with the written warranty to Plaintiff and members of the 48 State

8    Class.

9        60.    GM is obligated under the terms of its written warranty to repair and/or replace

10    the defective suspension and alignment systems, and under the circumstances described herein,

11    its tires, struts, alignment, camber and related systems, sold to Plaintiff and members of the 48

12    State Class. GM is further obligated to cover the costs of tires that are prematurely worn as a

13    result of the defect, as well as all related an ancillary costs involved in replacing said tires.

14        61.    Based on the conduct described herein, GM breached the written warranty that it

15    provided to Plaintiff and members of the 48 State Class.

16        62.    As set forth above, GM's warranty fails in its essential purpose and, accordingly,

17    Plaintiff and members of the 48 State Class cannot and should not be limited to the remedies set

18    forth in GM's written warranty and, instead, should be permitted to recover other appropriate

19    relief, including damages and injunctive relief.

20        63.    GM knew of its obligations under its warranty to pay to replace the prematurely

21    worn tires and to repair and adjust the improper alignment, which resulted from the defect

22    described herein. GM, however, willfully refused to pay for the new tires or alignment as

23    required under the warranty.

24        64.    GM knew of its obligations under its warranty to repair the defective Vehicles as

25    described herein. GM, however, has refused to remedy the defect.

26        65.    Plaintiff and members of the 48 State Class have performed each and every duty

27    required of them under the terms of the warranties, except as may have been excused or

28    prevented by the conduct of Defendant or by operation of law in light of Defendant's

1 unconscionable conduct.

2    66.    GM has received sufficient and timely notice of the breaches of warranty alleged

3 herein. Despite this notice and GM's knowledge of the defect in the suspension and alignment

4 systems, which in turn cause premature tire wear, GM has failed and refused to honor its

5 warranty, even though it knows of the inherent defect.

6    67.    GM has received, upon information and belief, thousands of complaints and other

7 notices from its customers nationwide advising it of the defects in suspension and alignment

8 systems.

9    68.    Plaintiff has given GM a reasonable opportunity to cure its failures with respect to

10 its warranty, and Defendant has failed to do so.

11    69.    GM has failed to provide to Plaintiff or the members of the 48 State Class, as a

12 warranty replacement, a product that conforms to the qualities and characteristics that GM

13 expressly warranted when it sold the Vehicles to Plaintiff and members of the 48 State Class.

14    70.    As a result of GM's breach of warranty, Plaintiff and the 48 State Class have

15 suffered damages in an amount to be determined at trial and are entitled to, and seek, all relief

16 available under the MMWA.

17    **SECOND CLAIM FOR RELIEF**
    **(Violation Of The Ohio Consumer Sales Practices Act -**
18    **On Behalf Of The Ohio Sub-Class)**

19    71.    Plaintiff realleges and incorporates the above allegations by reference.

20    72.    Plaintiff and the members of the Ohio Sub-Class are consumers within the

21 meaning of the OCSPA, and the Vehicles are consumer goods within the meaning of the OCSPA

22 Ohio Rev. Code § 1345.01(A).

23    73.    The purchase and lease of the Vehicles by Plaintiff and members of the Ohio Sub-

24 class as described herein constitute "consumer transactions" within the meaning of § 1345.01(A)

25 of the OCSPA.

26    74.    The OCSPA prohibits unfair, deceptive and unconsionable practices in consumer

27 sales transactions and provides consumers with private rights to action to redress such conduct.

28 Ohio Rev. Code §§ 1345.02, 1345.09

75.     GM's business acts and practices alleged herein constitute unfair methods of competition, unconscionable acts or practices and/or deceptive acts or practices under the OCSPA.

76.     Defendant acted in the face of prior notice that its conduct was deceptive, unfair and unconscionable. It is well established in OCSPA jurisprudence that material omissions and misrepresentations regarding a product constitute violations of the OCSPA. *Delahunt* v. *Cytodyne Technologies, et al.*, 241 F. Supp.2d 827, 838 (2003)  (plaintiff stated claim for violation of OCSPA where label affixed to products sold by defendant contained misstatements and omitted material information); *Amato v. General Motors Corp.*, 463 N.E.2d 625, 633-33 (Ohio Ct. App. 1982) (plaintiff's claims fell within the OCSPA in a suit involving misrepresentations and omissions in advertising relating to the sale of motor vehicles); *Andrews v. Scott Pontiac Cadillac GMC, Inc.*, 594 N.E.2d 1127, 1130, 1132 (Ohio Ct. App. 1991) (holding that "a supplier commits an unfair or deceptive act or practice when it has actual knowledge of the previous defect and/or damage to a new motor vehicle and fails to disclose the defect and/or extent of the previous damage" and violates the CSPA by failing to disclose); *Fisher v. Rose Chevrolet, Inc.*, 612 N.E.2d 782, 786 (Ohio Ct. App. 1992) (holding that omission that induced sale of vehicle was actionable under the CSPA); *Howard v. Norman's Auto Sales*, No. 02AP-1001, 2003 WL 21267261, *5 (Ohio App. 10th Dist. Jun. 3, 2003) (OCSPA violation where car salesman falsely represented that vehicle was in good condition and would not require repair for six to eight months).  These decisions existed at the time of the wrongful conduct by GM, such that GM was on sufficient notice because each of the decisions cited above were publicly available when the alleged violation by GM occurred. *See e.g.*, *Nessle v. Whirlpool Corp.*, 2008 WL 2967703 No. 1:07CV3009 (N.D. Ohio, July 25, 2008) (holding that list of enumerated wrongful acts under the OCSPA was by "no means exclusive," and plaintiff's citation to several published cases with similar facts was more than sufficient to support a finding that Whirlpool was on notice that its conduct was wrongful).

77.     It also is a deceptive act or practice for a supplier to make representations, claims or assertions of fact in the absence of a reasonable basis in fact. Ohio Admin. Code §§

1   109.4-3-10(A).

2          78.    GM's practices violate the OCSPA for, *inter alia*, one or more of the following

3   reasons: (a) GM represented that its services (specifically, its warranty and related services) have

4   characteristics, uses and benefits that they do not have; (b) GM failed to disclose material facts

5   concerning the defect(s) in the Vehicles and omitted material facts relating to the defect(s) in its

6   marketing and sale of the Vehicles, (c) GM acted in the face of prior notice regarding the

7   defect(s), thereby rendering its conduct unconscionable under all the circumstances; and (d) GM

8   (by and through its dealers) and by its acts and omissions misrepresented and omitted material

9   facts regarding the Vehicles and tires on the Vehicles, its warranty obligations to consumers, and

10   other rights, remedies or obligations.

11          79.    The representations and omissions by Defendant were likely to deceive

12   reasonable consumers and a reasonable consumer would have relied on these representations and

13   omissions.

14          80.    Had Defendant disclosed all material information regarding the Vehicles to

15   Plaintiff and other members of the Ohio Sub-Class, they would not have purchased or leased the

16   Vehicles.

17          81.    As a direct and proximate result of Defendant's violations of the OCSPA,

18   Plaintiff and members of the Ohio Sub-Class have suffered injury in fact and/or actual damage,

19   in that they purchased or leased Vehicles with suspension and alignment defects that cause

20   premature tire failure.  Had Defendant disclosed the true quality, nature and drawbacks of the

21   Vehicles, Plaintiff and members of the Ohio Sub-Class would not have purchased, or would have

22   paid significantly less, for the Vehicles.  Plaintiff and the members of the Ohio Sub-Class have

23   suffered further harm in that: the tires wear prematurely from the time the Vehicles are first

24   driven; they have paid or will be required to pay to repair or replace the tires more than has been

25   reasonably anticipated and represented as well as to pay for related services (such as

26   alignments); and they have lost use of their Vehicles and have suffered diminution of value, and

27   the Plaintiff and the other members of the Class are entitled to recover such damages, together

28   with appropriate exemplary damages, attorneys' fees and costs of suit.

### THIRD CLAIM FOR RELIEF
#### (Breach Of Written Warranty, Ohio Rev. Code § 1302.26 -
#### On Behalf Of The Ohio Warranty Class)

82.    Plaintiff realleges and incorporates the above allegations by reference.

83.    Plaintiff seeks to recover for GM's breach of its written warranty, which was breached by Sears as a result of the conduct described herein.

84.    As set forth herein, GM uniformly warranted all of GTOs against defects in material or workmanship at a time when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to market and sell the Vehicles with the written warranty to Plaintiff and members of the Ohio Warranty Class.

85.    GM is obligated under the terms of its written warranty to repair and/or replace the defective suspension and alignment systems, and under the circumstances described herein, its tires, struts, alignment, camber and related systems, sold to Plaintiff and members of the Ohio Warranty Class. GM is further obligated to cover the costs of tires that are prematurely worn as a result of the defect, as well as all related an ancillary costs involved in replacing said tires.

86.    GM, by the conduct described herein, has breached its written warranty obligations by supplying the Vehicles in a condition which does not meet the warranty obligations undertaken by GM, and by failing to repair or replace the defect and/or defective parts, including the tires that wore unevenly and prematurely as a result of the defect.

87.    As set forth above, GM's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Ohio Warrant Class can not and should not be limited to the remedies set forth in GM's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

88.    Plaintiff and members of the Ohio Warranty Class have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

89.    GM has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and GM's knowledge of the defect in the suspension and alignment

1  systems, which in turn cause premature tire wear, GM has failed and refused to honor its

2  warranty, even though it knows of the inherent defect.

3        90.    GM has received, upon information and belief, thousands of complaints and other

4  notices from its customers nationwide advising it of the defects in suspension and alignment

5  systems.

6        91.    Plaintiff has given GM a reasonable opportunity to cure its failures with respect to

7  its warranty, and Defendant has failed to do so.

8        92.    GM has failed to provide to Plaintiff or the members of the class, as a warranty

9  replacement, a product that conforms to the qualities and characteristics that GM expressly

10  warranted when it sold the Vehicles to Plaintiff and members of the Ohio Warranty Class.

11        93.    As a result of GM's breach of warranty, Plaintiff and the members of the Ohio

12  Warranty Class have suffered damages in an amount to be determined at trial.

13  **FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment On Behalf Of The Ohio Sub-Class)**

14

15        94.    Plaintiff incorporates by reference the allegations contained in the preceding

16  paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Court.

17        95.    This claim is asserted in the alternative on behalf of Plaintiff and the members of

18  the Ohio Sub-Class, to the extent that any contracts do not govern the entirety of the subject

19  matter of the disputes with the Defendant.

20        96.    Plaintiff and the Ohio Sub-Class conferred a benefit on GM, of which benefit GM

21  had knowledge. By its wrongful acts and omissions described herein, including selling the

22  Vehicles, GM was unjustly enriched at the expense of Plaintiff and the Ohio Sub-Class. It would

23  be inequitable for GM to retain the profits, benefits, and other compensation obtained from its

24  wrongful conduct as described herein in connection with selling the Vehicles.

25        97.    Plaintiff, on behalf of himself and the Ohio Sub-Class, seeks restitution from GM

26  and an order of this Court proportionally disgorging all profits, benefits, and other compensation

27  obtained by GM from its wrongful conduct.

28

First Amended Complaint - *Sidner v. General Motors*            21

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant providing the following relief:

A.    An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.    Restitution and disgorgement to the extent permitted by applicable law, together with interest thereon from the date of payment, to the victims of such violations;

C.    Actual damages for injuries suffered by Plaintiff, the Class;

D.    Civil penalties to the extent permitted by applicable law;

E.    To the extent that GM has continued to market and sell the Vehicles in the manner challenged in this action, an order requiring GM to immediately cease its wrongful conduct as set forth above, as well as enjoining GM from continuing to conduct business via the unlawful and unfair business acts and practices complained of herein; an order requiring GM to engage in a corrective notice campaign; and an order requiring GM to refund to Plaintiffs and all members of the Class the funds paid to GM for the defective product;

F.    Reasonable attorneys' fees and the costs of prosecuting this action;

G.    Statutory pre-judgment and post-judgment interest; and

H.    Such other and additional relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: February 20, 2009    By:    */s/Mark F. Anderson*
                                    Mark F Anderson (SBN 44787)
                                    KEMNITZER, ANDERSON, BARRON,
                                    OGILVIE & BREWER, LLP
                                    445 Bush Street, 6th Floor
                                    San Francisco, CA  94108
                                    Telephone:  (415) 861-2265
                                    Email: mark@kabolaw.com
                                    Email: matthew@kabolaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James E. Miller
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Email: jmiller@sfmslaw.com
Email: kleser@sfmslaw.com

James C. Shah (SBN 260435)
Natalie Finkelman Bennett
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Email: jshah@sfmslaw.com

Attorneys for Plaintiff