# EXHIBIT A

1  Mark F. Anderson (SBN 44787)
   KEMNITZER, ANDERSON, BARRON, OGILVIE & BREWER LLP
2  445 Bush St, 6th Floor
   San Francisco, CA 94108
3  Telephone: (415) 623-3784
   Fax: (415) 861-3151
4  Email: mark@kabolaw.com

5  Attorneys for Plaintiff

6  [Additional Counsel Listed on Signature Page]

7                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
8

9  JOHN PAIKAI,                          :
10 On Behalf Of Himself And              :    Case No. 2:07-cv-892--FCD-GGH
   All Others Similarly Situated,        :
11                                        :    Class Action
              Plaintiff,                  :
12                                        :    THIRD AMENDED
   v                                      :    CLASS ACTION COMPLAINT
13                                        :
   GENERAL MOTORS CORPORATION,           :    JURY TRIAL DEMANDED
14                                        :
              Defendant.                  :
15 _____   :

16
         Plaintiff, John Paikai ("Paikai" or "Plaintiff"), on behalf of himself and all others
17
   similarly situated, alleges, upon information and belief, except as to his own actions, the
18
   investigation of counsel, and the facts that are a matter of public record, as follows:
19
                   **INTRODUCTION AND FACTUAL BACKGROUND**
20
         1.      This class action is brought against Defendant, General Motors Corporation
21
   ("GM" or "Defendant"), for the benefit and protection of all current and former owners and
22
   lessees of model year 2004, 2005, and 2006 Pontiac GTOs ("Vehicles" or "GTOs") purchased or
23
   leased in the State of Florida, to obtain damages and restitution and injunctive and other relief.
24
         2.      The tires on each of the Vehicles wear unevenly and prematurely and are prone to
25
   failure because the suspension system and alignment settings (and specifically the camber
26
   settings) are improperly designed, assembled, and/or installed, causing, *inter alia*, uneven and
27
   premature tire wear and tire failure, as well as causing the inside front tires to graze the struts
28

1  during normal operation and use.

2        3.     The Vehicles are built on the same platform as their Australian counterpart, the

3  Holden Monaro ("Monaro"), which was manufactured and sold in Australia by GM Holden

4  Limited ("Holden"), a manufacturer and GM subsidiary based in Melbourne, Australia. When

5  GM, through its subsidiary, Holden, sold the Monaro vehicles in Australia, the vehicles were

6  equipped with 17" wheels and 235 mm wide tires. When GM marketed and sold the GTOs in

7  the United States, however, GM distributed the Vehicles with 17" wheels and 245 mm wide

8  tires, which were larger than the tires that had been placed on the Monaro vehicles.

9        4.     As set forth below, GM: (1) marketed and sold expensive automobiles to Plaintiff

10  and thousands of other consumers when it knew that a critical component in the automobiles, the

11  suspension system and alignment setting (and specifically the camber settings), was defective

12  and would cause premature and uneven wear of the vehicle's tires; (2) never disclosed the fact

13  that the Vehicles had this critical problem despite its knowledge of the issue prior to the sale of

14  the first GTO; (3) actively concealed the fact that the suspension system and alignment setting

15  (and specifically the camber settings) was defective and would cause premature and uneven wear

16  of the vehicle's tires; (4) refused to honor its warranty to repair the defect or provide full

17  reimbursement for damages caused by the defect; and (5) continued to sell the Vehicles despite

18  the fact that it received, and continues to receive, numerous complaints from Vehicle owners and

19  lessees.

20        5.     GM further concealed material facts regarding the GTO alignment problems by

21  affirmatively misrepresenting the purported attributes of the GTO. As a result of GM's conduct,

22  including its omissions, acts of concealment and misrepresentations, Plaintiff and Class members

23  have been and will continue to be harmed and subjected to premature tire wear, and unnecessary

24  repair and replacement costs. If these material facts had been disclosed by GM, Plaintiff and

25  Class members would not have purchased or leased, or would have paid significantly less, for

26  their GTO Vehicles.

27        6.     Defendant has or should have the capability of fixing the suspension system and

28  alignment settings on the Vehicles so that they can operate safely with proper suspension and

1  alignment settings and tires that have a normal useful life.  Instead of taking this responsible

2  action to remedy its unlawful actions and misconduct, Defendant has chosen to disclaim

3  responsibility for its misconduct and, instead, has sought to shift the economic burden of its

4  development, manufacturing, marketing, distribution and/or sale of the inherently defective

5  suspension system and alignment settings to Plaintiff and Class members.

6  **PARTIES**

7         7.     Paikai is a citizen of the State of Florida, and resides and has resided in Lake

8  Placid, Florida at all pertinent times.  On or about September 20, 2005, Paikai purchased a 2005

9  Pontiac GTO for his personal and family use from Allen J. Pontiac ("Allen Pontiac"), an

10  authorized GM dealership in Seebring, Florida.  Paikai paid approximately $36,000.00 for the

11  Vehicle.

12        8.     Defendant, GM, is a Delaware corporation that does business throughout this

13  judicial district.

14  **JURISDICTION AND VENUE**

15        9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

16  because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

17  interest and costs, and this is a class action in which the Class members and Defendant are

18  citizens of different states.

19        10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

20  Defendant engages in business activities throughout this judicial district, and there is a related

21  action, *O'Connor v. General Motors Corporation,* Case No. 2:07-cv-00892-FCD-GGH

22  ("*O'Connor*") pending in this District.

23        11.    By this action, Plaintiff seeks relief under the law of Florida, where the Plaintiff

24  resides, contracted, purchased, and attempted to service the vehicle, pursuant to the Florida

25  Deceptive and Unfair Trade Practices Act ("FDUTPA") F.S. § 501.201 *et seq.*, and also asserts

26  claims pursuant to Florida law for breach of express warranty and for unjust enrichment.

27        12.    All jurisdictional prerequisites to suit have been satisfied.

28

# **FACTS**

13.    This class action is brought on behalf of all current and former owners and lessees of Pontiac GTO Vehicles manufactured by GM with respect to the claims asserted in this action.

14.    The Vehicles at issue, which had a suggested retail price in excess of $35,000, are manufactured, marketed and sold by GM (and its Holden division), through its established network of licensed dealers and distributors throughout the United States, including Florida.

15.    The GTO was engineered and assembled in Australia, by engineers that did not have expertise equivalent to GM's engineers in North America. The Vehicles were built on the same platform as their Australian counterpart, the Holden Monaro, although the GTO was a heavier vehicle and used a different, larger tire and wheel combination than was used on the Monaro.

16.    According to GM press releases, changes in tire and wheel components necessitate changes in suspension system and alignment settings.

17.    However, the design and engineering work for the GTO was done on a shortened and extremely aggressive schedule, which proved to be too optimistic and did not allow for time to correct all problems and make the necessary changes with respect to the suspension system and alignment settings in the Vehicle.

18.    Before the Vehicle was sold to the public, GM was aware of problems with the suspension and alignment settings in the GTO Vehicles. Several modifications were made to the camber (a component of the suspension/alignment) setting fixture to try to (unsuccessfully) correct the faulty alignment settings from the factory.

19.    Defendant had exclusive knowledge of the fact that the suspension and alignment settings were improper and that these defects could lead to premature tire wear. Defendant was further made aware of this fact as a result of the numerous complaints it received about problems with the GTO tires from their customers (as described below) and dealers.

20.    Defendant provided Plaintiff and each owner and lessee of the Vehicles with the same uniform 3 year, 36,000 mile bumper-to-bumper factory warranty. Defendant's express warranty, in pertinent part, provides:

1

2

> The warranty covers repairs to correct any vehicle defect related to
> materials or workmanship occurring during the warranty period.

3

> *    *    *    *    *    *    *
> Warranty repairs, including towing, parts, and labor, will be made
> at no charge.

4

5

> *    *    *    *    *    *    *
> The tires supplied with your vehicle are covered against defects in
> material or workmanship under the Bumper-to-Bumper coverage.
> Any tire replaced will continue to be warranted for the remaining
> portion of the Bumper-to-Bumper coverage period.

6

7

Under this warranty, Defendant was obligated, *inter alia*, (1) to replace Plaintiff's prematurely

8

worn tires at no charge; (2) to repair and adjust the improper suspension and alignment settings,

9

which was necessitated by the defect, at no charge; and (3) to repair the defect at no charge.

10

Defendant has these same obligations with respect to Plaintiff and all Class members, but has

11

failed to satisfy these obligations.

12

13

     21.    GM also included misleading and deceptive information in the warranty

14

information provided to Plaintiff and Class members, by its (false) promise that the factory

15

alignment was sufficient for the vehicle. According to the GTO owner manual: "The wheels on

16

your vehicle were aligned and balanced carefully at the factory to give you the longest tire life

17

and best overall performance. Scheduled wheel alignment and wheel balancing are not needed.

18

However, if you notice unusual tire wear or your vehicle pulling one way or the other, the

19

alignment may need to be reset. If you notice your vehicle vibrating when driving on a smooth

20

road, your wheels may need to be rebalanced." Despite these promises and obligations, GM

21

denied warranty coverage to Plaintiff and Class members.

22

     22.    Throughout the period during which GM offered GTO Vehicles, GM engaged in

23

a uniform marketing and sales campaign, in which it consistently misrepresented and/or

24

concealed material facts in its advertisements, sales and marketing materials, warranties, and

25

through its sales representatives and dealers, by concealing from, failing to disclose and/or

26

misrepresenting to Plaintiffs and the Class material information regarding the Vehicles,

27

including, but not limited to the fact that: (1) a critical component in the automobiles, the

28

suspension system and alignment setting (and specifically the camber settings), was defective;

1   (2) the defect in the suspension system and alignment setting (and specifically the camber

2   settings) would cause premature and uneven wear of the vehicle's tires; and (3) GM would not

3   honor its warranty to repair the defect or provide full reimbursement for damages caused by the

4   defect. GM's misrepresentations and omissions regarding the Vehicles are consistent and

5   uniform.

6         23.     The fact that a critical component in the automobiles, the suspension system and

7   alignment setting (and specifically the camber settings), was defective and that the defect in the

8   suspension system and alignment setting (and specifically the camber settings) would cause

9   premature and uneven wear of the vehicle's tires, rendering the GTO tires with a markedly

10   reduced useful life is a material fact, which a reasonable person would consider important in

11   deciding whether or not to purchase (or to pay the same price for) a GTO Vehicle. Plaintiff and

12   Class members would not have purchased, or would have paid substantially less for, their

13   Vehicles had they been informed that the suspension system and alignment setting (and

14   specifically the camber settings), was defective and that the defect in the suspension system and

15   alignment setting (and specifically the camber settings) would cause premature and uneven wear

16   of the vehicle's tires. Furthermore, Plaintiff and Class members reasonably expected that GM

17   would not sell them Vehicles containing a known defect.

18         24.     Defendant had exclusive knowledge of the defects and the reduced useful life of

19   the tires that resulted. Indeed, Defendant had access to relevant data regarding the defect, and

20   had knowledge as a result of the numerous complaints it received from consumers regarding

21   their need to replace these tires much sooner than they expected or is reasonable.

22         25.     Defendant has been on notice of the defect in the Vehicles and that it did not

23   comport with the representations made in the advertising, marketing and sale of the Vehicles

24   from, *inter alia*, internal testing, customer complaints, warranty claims, field technicians, and

25   demand for replacement tires. However, Defendant concealed this knowledge from Plaintiff and

26   the Class.

27         26.     Defendant knew or should have known of the defects at the time of the marketing,

28   sale and distribution of the Vehicles. In light of Defendant's knowledge regarding the defects

1  and problems detailed above, including the reduced expected life of the tires, the provision of a

2  limited warranty with respect to the Vehicles under all of these circumstances, constitutes an

3  unlawful, unfair and fraudulent business practice, and, under all of the circumstances, the limited

4  warranties accompanying the Vehicles are unconscionable.

5  **Plaintiff's Experiences with the GTO**

6      27.    On September 20, 2005, Plaintiff Paikai purchased a 2005 Pontiac GTO,

7  VIN6G2VX12415L396749 from Allen Pontiac.  The vehicle had approximately 5000 miles and

8  was a GM certified pre-owned vehicle.  Paikai's GTO had standard 17" wheels and BF Goodrich

9  tires, The vehicle was purchased pursuant to a written contract of sale, under which Paikai

10  agreed to pay $36,248.01 for the vehicle, including tax and license.

11      28.    Prior to Paikai purchasing his Vehicle, GTO promoted the Vehicle in their

12  advertising and marketing materials.  GM failed to disclose the defects in the suspension and

13  alignment settings that result in a markedly reduced useful life of the tires.  If Paikai had known

14  about these facts, he would not have purchased the Vehicle.

15      29.    After purchasing the Vehicle, Paikai read the manuals accompanying the vehicle

16  and rotated the tires pursuant to the schedule provided by GM.

17      30.    On April 20, 2006, with the odometer only reading 12,003 miles, Plaintiff Paikai

18  found that the front tires were significantly worn on the inside shoulder and took his GTO to

19  Yarbrough Tire in Lake Placid where it was determined that the tires needed to be replaced.

20  This premature and uneven tire wear was the result of, *inter alia*, improperly designed,

21  assembled, and/or installed suspension system and alignment settings.  Paikai paid Yarbrough

22  Tire $1895.14 for four new (18") wheels and P235/40XR18 tires.

23      31.    Paikai learned that others were experiencing similar defects with the suspension

24  and alignment settings leading to premature tire wear on internet sites, including

25  www.LS1GTO.com, a website for GTO devotees.

26      32.    In August 2007, Paikai took his GTO to Allen Pontiac due to problems with

27  premature tire wear and transmission issues.  He asked about the strut rubbing issue and

28  premature tire wear and asked if there were any technical service bulletins dealing with the

1   problem. He was told there was no applicable bulletins. Paikai also discussed the tire and strut

2   problems with another dealership, but was told they too had no information on the problem.

3        33.    Paikai was also told that his GTO had inner tire shoulder wear by a technician at

4   Precision Motorsports of Florida, to which he took his Vehicle.

5        34.    In November 2007, Paikai took his GTO to Allen Pontiac because he thought it

6   was pulling to the right. After examining his GTO, and finding the alignment to be out of

7   specification, the dealership realigned the vehicle. The dealership charged Paikai for the

8   alignment and did not offer to align the vehicle under the warranty.

9        35.    By December 17, 2007, all four of the tires on Plaintiff's Vehicle had inner

10  shoulder wear and needed replacement. At that time, Plaintiff's odometer reading was 32,372

11  (with only 20,369 miles on the tires). Moreover, Plaintiffs had previously rotated the tires and

12  had the Vehicle realigned at a GM dealership. Plaintiff had the tires replaced at Yarbrough Tire

13  and paid $568.13 for four new tires.

14       36.    After he purchased the new tires, and given the recurring problems, Plaintiff

15  returned to the dealership for another check of the alignment.

16       37.    Plaintiff has been damaged and suffered injury in fact as a result of Defendant's

17  conduct, including, but not limited to, having to pay for replacement tires and alignments due to

18  the defect with the Vehicle, and by purchasing a Vehicle that has lost value as a result of the

19  defect. The other owners of the Vehicles have, or will, suffer the same or substantially similar

20  damages as a result of Defendant's conduct.

21  **Class Members' Experiences With The GTO**

22       38.    The experiences of Plaintiff mirror those of the thousands of other Vehicle

23  owners and lessees. The internet is replete with thousands of references to the common and

24  profound problems that consumers have experienced with the GTO's suspension and alignment,

25  all leading to severely premature tire wear, including, but not limited to, the following small

26  sample of representative complaints appearing at gtoforum.com (as monitored and collected by

27  GM), LS1GTO.com/forums, LS2GTO.com/forums:

28            I had strut rub and chewed up the factory tires within 16,000 miles.

Third Amended Class Action Complaint - *Paikai v. General Motors Corporation*                    8

1
2
3
4

I tried going through GM and was ready to get an attorney. I threw in the towel and bought some 18 inch stock rims on ebay. Plenty of clearance now. The dealerships act like they have never heard of such a problem but off the record my service rep told me GM is well aware of the problem. I jut didn't have the energy to bicker back and forth with them. Now that I don't have to worry about strut rub I can have some fun with my car!

5

\*    \*    \*    \*    \*    \*    \*

6
7
8
9

Strut rub should be covered under warranty. I was told by a GM rep (who owns a GTO) that there is, in his words a "hidden recall" on this issue, since it is safety related. He told me to go directly to the service manager. If you have no luck there, ask to contact the zone rep. They are supposed to correct the camber problem but thats all they will do.

10

\*    \*    \*    \*    \*    \*    \*

11
12
13

Its about damn time a report like this has been made. I know of a couple of GTOs with this problem that have been taken to dealers near me and they won't do crap saying that all it needs is a new alignment and is not covered under warranty, even though one of the tires I saw was down to the belts and only had like 8,000 miles on it.

14

\*    \*    \*    \*    \*    \*    \*

15
16

You ever figured that out (why the huge range of coverage from total to zero), make sure you buy a lottery ticket too....

17
18

I'm $360 out of pocket for a new tire and a 4-wheel alignment to crank the camber out from the struts so they'll stop rubbing. Awesome. I always wanted to know what it would be like to have a GTO that corners like a Malibu or Taurus – now I know.

19
20
21

Tip of the iceberg for me. Mileage 11,300. Right front tire: replaced. Radius rod bushes: shot. Upper strut bushes: shot. Number of dealers involved: two. Number of parts replaced under warranty:    **ZERO** Thanks GM – you've made my next car purchase decision crystal-clear, and it does **not** involve buying any of your crap cars.

22

\*    \*    \*    \*    \*    \*    \*

23
24
25

Been hearing about this issue here. Didn't think I had it until I just checked my front tires. Wow, wore down to the belts! It has 21,000 miles and the tires are wore out anyway, but I don't want to get new tires and have this problem!

26
27
28

Just talked to the dealer, he heard of it on one other car and said an alignment will solve it. Said he knows it is a tight fit but it should never rub unless there are other problems. He seemed cool about it and said he will make sure GM has no bullitens on it. Guess that is where I am at for now.

1

\*      \*      \*      \*      \*      \*      \*

2  GM is ignoring the problem because they probably think that this
3  is something they inherited from holden [even though they own it].
   By sending out notices to all GTO owners advising them of the
   potential problem and offering free alignments they would be
4  admitting fault.  They're also dealing with only 40,000 or so units
   that are not even in production anymore.  If these were ford pintos
5  with exploding gas tanks and a million sold there would be a
   national crisis.  They are just weathering the storm now knowing
6  that a big chunk of the GTOs have 18" 235 tires and are not a
   problem and the rest of the 17" owners will take care of their own
7  situation.  A couple of owners who are oblivious will have fatal
   accidents and they'll just settle the lawsuits.  A lot cheaper than
8  retrofitting 40,000 out of production cars with a new suspension.

9

\*      \*      \*      \*      \*      \*      \*

10  I bought mine in January and my dealer replaced my struts (March
    build date) before the car was even delivered to me.  Apparently,
11  GM sent out a bulletin to all dealers authorizing replacement of
    correct struts for existing inventory still on the lots.

12

13  GM is aware of this problem, trust me.  Don't let the dealer give
    you any mumbo jumbo.  If your car is affected, they owe you new
14  struts.

15  Happy motoring.

16

\*      \*      \*      \*      \*      \*      \*

17  I have a blue 2004 and my left front wheel is rubbing on the strut.
    You can visibly see on the tire where it is wearing.  I only have
18  19,000 miles on the car.  I can't believe it.  Thanks for all your
    research...I am taking it in A.S.A.P.

19

\*      \*      \*      \*      \*      \*      \*

20  I just followed up on this discussion because I lost 1 tire on the
    freeway – tread peeled off but did not deflate.  After getting home
21  I find the other front tire is peeling – just no fully separated yet!!!!

22  Damage both on the inner tire edge and I had been checking
    periodically for damage – I had notice uneven wear but I did not
23  thing it was strut rub – now I think it was.

24  Should Is till complain to GM dealer about this with the NHTSA
    investigation closed.

25

\*      \*      \*      \*      \*      \*      \*

26  Ok, here's my story, I'd appreciate any advice as to what to talk
27  with the dealer about.  I have an 05 A4, with stock 17" rims and
    tires, that just turned 28K miles.  I do not drive my car hard.  I
28  guess an old age has calmed me down.  I've done maybe 10 full

1    power launches.

2    I've gone through 2 sets of tires. Each time the inside of the rear
tires wear MUCH faster than the rest of the tire. The last time the
3    rears went, the outside of the tire had 50% tread left while the
inside edge of the tire separated from the sidewall. Of course, the
4    dealer said this was normal, but recommended I have the car
aligned (which I did 3 weeks ago). I have some strut rub up front
5    on both sides. Not enough to wear through the pain on the struts
but enough to leave very noticable marks. Also have marks on the
6    front on the right fender well were the tire has rubbed during turns.

7          *      *      *      *      *      *      *
    I submitted the form on-line & was contacted by an investigator
8    (Derek Rinehardt). I supplied him with pictures and a short write
up per his request
9
    It is/was the dealer arrogance (on top of the money & time I had to
10    spend to fix it myself) that really bothered me. I tried to give him
information off this board and he would not even look @ it. I
11    asked him about checking the strut bushings & ride height, neither
of which he did. His answer was an alignment & selling me 4 tires
12    and "see what happens". I explained I felt that was a band-aid
approach and I was not going to pay for an $80 alignment when I
13    was fairly sure there were failed suspension components.
Ultimately, he stated I did not want to participate in the repair
14    process.

15    If I can get the proper dimensions on a new GM bushing I can take
that info long with my old ones and pursue reimbursement.
16    Additionally when I repaired the front with the new bushings it
became obvious the rear springs were also shot. I replaced them
17    with King's. I had worse tire wear on the rear that the front when
all was said and done!!
18
          *      *      *      *      *      *      *
19    39.      Having received numerous complaints, on February 16, 2007, The United States

20    Department of Transportation, National Highway Traffic Safety Administration (NHTSA)

21    opened an investigation into complaints of front tire failures due to front strut to tire interference

22    on the 2004-2006 model year Pontiac GTOs, possibly causing a loss of vehicle control. In

23    connection with that investigation, GM provided documents and information to NHTSA.

24    Although NHTSA did not identify a safety-related defect trend, the NHTSA Failure Report

25    Summary stated that "excessive negative camber is an apparent issue." Also according to the

26    NHTSA investigation, "approximately 90% of the final factory camber settings available for

27    complaint and warranty claim vehicles GM provided ... had right wheel camber settings that

28    were out of specifications."

1    40.    Indeed, GM was aware (and had exclusive knowledge) of these problems and has

2  acknowledged (although not to Plaintiff and Class members) that premature front tire wear in the

3  Vehicles was caused by improper alignment, specifically by out of specification negative

4  camber, and that out of specification negative camber could be caused by improper factory

5  alignment settings.

6                              **CLASS ACTION ALLEGATIONS**

7    41.    Plaintiff requests that this Court certify the following classes pursuant to Rule 23

8  of the Federal Rules of Civil Procedure:

9    a.    **FUDTPA and Unjust Enrichment Class**: All current and former
          owners and lessees of model year 2004, 2005 and 2006 Pontiac
10         GTOs purchased or leased in the State of Florida (the "Class").

11   b.    **Warranty Class**: All Class members who sought warranty coverage for or
          otherwise presented a claim for repair or reimbursement under the terms of the
12         Pontiac GTO warranty in connection with premature or uneven inner shoulder tire
          wear or for struts hitting the tires (the "Warranty Class") (collectively the
13         "Classes").

14  Excluded from the Class definitions are officers and employees of GM, its subsidiaries and its

15  dealers, anyone sustaining personal injuries as a result of the defect alleged herein, as well as any

16  judge to whom this action is assigned.  Plaintiff reserves the right to amend these class

17  definitions if discovery and further investigation reveals that the proposed classes should be

18  expanded or otherwise modified.

19   42.    This action is brought and may properly be maintained as a class action pursuant

20  to Rule 23 of the Rules of Civil Procedure.  This action satisfies the requirements of numerosity,

21  typicality, adequacy, predominance and superiority.

22   43.    Numerosity.  On information and belief, the members of the Class and Warranty

23  Class number in at least the thousands.  As a result, the Class and Warranty Class are so

24  numerous that joinder of all members in a single action is impracticable.  The members of the

25  Classes are readily identifiable from information and records in Defendant's possession, custody

26  or control.  The disposition of these claims will provide substantial benefits to the members of

27  the Classes.

28

1    44.    Commonality and Predominance. There is a well-defined community of interest

2    among the members of the Classes. Common questions of law and fact predominate over any

3    questions affecting only individual members of the Classes. These common legal and factual

4    questions do not vary among members of the Classes and may be determined without reference

5    to the individual circumstances of the members of the Classes. These common questions

6    include, but are not limited to, the following:

7             a.    Whether the Vehicles are defective;

8             b.    Whether GM's conduct violated the FDUTPA;

9             c.    Whether GM breached its express warranty;

10             d.    Whether GM concealed the defect from Plaintiff and Class members; and

11             e.    Whether, as a result of GM's misconduct, Plaintiff and the Class members
        are entitled to damages, restitution, and equitable relief, and/or other

12                   damages or relief, and, if so, the amount and nature of such relief.

13    45.    Typicality. The representative Plaintiff's claims are typical of the claims of the

14    Class and Warranty Class because Plaintiff and all members of the Classes were injured by the

15    same wrongful practices in which GM engaged and are based on the same legal theories. The

16    only differences may be the amount of damages sustained by each member of the Class and

17    Warranty Class, which can be determined readily, and does not bar class certification.

18    46.    Adequacy of Representation. Plaintiff will fairly and adequately represent the

19    Classes. Plaintiff understands the nature of the claims herein, as well his role in the proceedings,

20    and will vigorously represent the interests of the Class. Plaintiff has retained counsel who are

21    experienced and qualified in prosecuting class actions and other forms of complex litigation.

22    Neither Plaintiff nor his attorneys have interests that are contrary to or conflict with those of the

23    Classes.

24    47.    Superiority/Manageability. A class action is superior to all other available

25    methods for the fair and efficient adjudication of this lawsuit because individual litigation of the

26    claims of the members of the Classes would be economically unfeasible and procedurally

27    impracticable. While the aggregate damages sustained by the Classes are likely millions of

28    dollars, the individual damages incurred by each member resulting from GM's wrongful conduct

1  are too small to warrant the expense of individual lawsuits. The likelihood of individual

2  members of the Classes prosecuting separate claims is remote and, even if every person could

3  afford individual litigation, the court system would be unduly burdened by individual litigation

4  of such cases. Individual members of the Classes do not have significant interest in individually

5  controlling the prosecution of separate actions, and individualized litigation would also present

6  the potential for varying, inconsistent, or contradictory judgments. Plaintiff knows of no

7  difficulty to be encountered in the management of this action that would preclude its

8  maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged

9  and with respect to the Classes would be proper.

10      48.    Defendant has or had access to address information for the members of the

11  Classes, which may be used for the purpose of providing notice of the pendency of this action.

12                    **TOLLING OF THE STATUTE OF LIMITATIONS**

13      49.    The causes of action alleged herein accrued upon discovery of the latently

14  defective nature of the Vehicles. Because the defect and limitations alleged herein are latent and

15  because Defendant took steps to conceal the true character, nature and quality of the Vehicles,

16  among other reasons, Plaintiff and members of the Classes did not discover and could not have

17  discovered the problems and defects alleged herein through the exercise of reasonable diligence.

18      50.    Any applicable statutes of limitations have been tolled by Defendant's knowing

19  and active concealment and denial of the facts as alleged herein. Plaintiff and members of the

20  Classes have been kept ignorant of vital information essential to the pursuit of these claims,

21  without any fault or lack of diligence on their part. Plaintiff and members of the Classes could

22  not reasonably have discovered the defects and problems alleged herein because of Defendant's

23  fraudulent concealment. In addition, Defendant continued to sell Vehicles without disclosing the

24  defects and problems.

25      51.    Defendant was and is under a continuous duty to disclose to Plaintiff and

26  members of the Classes the true character, quality, and nature of the Vehicles. Defendant

27  knowingly, affirmatively, and/or actively concealed, and continue to conceal, the true character,

28  quality and nature of the Vehicles at issue. Defendant also continued to sell Vehicles and

1    replacement tires while concealing the defects and true character, quality and nature of the

2    Vehicles.

3          52.    Defendant knew or should have known that Plaintiff and members of the Classes

4    would reasonably rely upon Defendant's knowing, affirmative, and/or active concealment.

5    Based on the foregoing, Defendant is estopped from relying on any statutes of limitation in

6    defense of this action.

7    **FIRST CAUSE OF ACTION**
(Violations Of FDUTPA – Brought On Behalf Of The Class)

8          53.    Plaintiff realleges and incorporates the above allegations by reference.

9          54.    Plaintiff resides and bought his Vehicle in Florida, and under the specific

10    circumstances herein it is appropriate to apply the law of Florida to his claims.

11          55.    Plaintiff and the Class members are consumers within the meaning of FDUTPA.

12          56.    Defendant, through its conduct, is engaged in trade and/or commerce within the

13    meaning of FDUTPA.

14          57.    The purchase or lease of GTO Vehicles by Plaintiff and Class as described herein

15    constitute consumer transactions within the meaning of FDUTPA.

16          58.    The practices of Defendant violate the FDUTPA for, *inter alia*, one or more of

17    the following reasons:

18          a.    Defendant omitted and concealed material facts from its communications and

19              disclosures to Plaintiff and the Class regarding the known defects inherent in the
Vehicles;

20          b.    Defendant made false and/or misleading statements of material fact regarding the

21              Vehicles, which statements were likely to deceive the public; and

22          c.    Defendant knew, or was reckless in not knowing, that its statements about the

23              Vehicles and defects therein were false and/or misleading.

24          59.    By the conduct described herein, Defendant has engaged in unfair methods of

25    competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

26    conduct of trade or commerce.

27          60.    The representations and omissions by Defendant were likely to deceive

28    reasonable consumers and a reasonable consumer would have relied on these representations and

1  omissions.

2       61.    Had Defendant disclosed all material information regarding the Vehicles to

3  Plaintiff and other members of the Class, they would not have purchased or leased the Vehicles.

4       62.    As a direct and proximate result of Defendant's violations of FDUTPA, Plaintiff

5  and the Class have suffered injury in fact and/or actual damage, in that they purchased or leased

6  Vehicles with suspension and alignment defects that cause premature tire failure. Had

7  Defendant disclosed the true quality, nature and drawbacks of the Vehicles, Plaintiff and the

8  Class would not have purchased, or would have paid significantly less, for the Vehicles.

9  Plaintiff and the Class have suffered further harm in that: the tires wear prematurely from the

10  time the Vehicles are first driven; they have paid or will be required to pay to repair or replace

11  the tires more than has been reasonably anticipated and represented as well as to pay for related

12  services (such as alignments); and they have lost use of their Vehicles and have suffered

13  diminution of value, and the Plaintiff and the other members of the Class are entitled to recover

14  such damages, together with other appropriate damages, attorneys' fees and costs of suit.

15

16  **SECOND CAUSE OF ACTION**
**(Breach of Express Warranty – Brought On Behalf Of The Warranty Class)**

17       63.    Plaintiff realleges and incorporates the above allegations by reference.

18       64.    As set forth herein, Defendant's express warranties covered the Vehicles and,

19  under the circumstances described herein, its tires, struts, cambers and related systems.

20       65.    The express warranty was provided to Plaintiff and members of the Warranty

21  Class by GM and specifically extends to original purchasers and subsequent owners for the

22  period of warranty coverage.

23       66.    Based on the conduct described in this Complaint, GM breached the written

24  warranty that it provided to Plaintiff and members of the Warranty Class.

25       67.    GM warranted all of GTOs against defects in material or workmanship at a time

26  when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to

27  market the Vehicles to Plaintiff and members of the Warranty Class and sell the GTO with this

28  express warranty.

68.    GM is obligated under the terms of its written warranty to repair and/or replace the defective suspension and alignment systems, and under the circumstances described herein, its tires, struts, alignment, camber and related systems, sold to Plaintiff and members of the Warranty Class.

69.    GM has breached its written warranty, as set forth above, by supplying the suspension and alignment systems in a condition which does not meet the warranty obligations undertaken by GM, and by failing to repair or replace the defect and/or defective parts inherent in the suspension and alignment systems, including the prematurely worn tires and alignment settlings.

70.    As set forth above, GM's warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Warranty Class can not and should not be limited to the remedies set forth in GM's written warranty and, instead, should be permitted to recover other appropriate relief, including damages and injunctive relief.

71.    GM knew of its obligations under its warranty to pay to replace the prematurely worn tires and to repair and adjust the improper alignment, which resulted from the defect described herein. GM, however, willfully refused to pay for the new tires or alignment as required under the warranty.

72.    GM knew of its obligations under its warranty to repair the defect to the Vehicles as described herein, however, GM has refused to remedy the defect.

73.    Plaintiff has performed each and every duty required of him under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

74.    GM has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and GM's knowledge of the defect in the suspension and alignment systems, which in turn cause premature tire wear, GM has failed and refuses to honor its warranty, even though it knows of the inherent defect.

75.    GM has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in suspension and alignment

1  systems.

2      76.    Indeed, Plaintiffs in the *O'Connor* action were also denied warranty coverage and

3  forced to pay for repairs to their GTO. They complained to the GM service department at their

4  dealership about the premature and uneven tire wear. Although the tires needed to be, and were,

5  replaced at that time, GM, after being contacted by the dealership, refused to pay for the cost of

6  replacing the four tires. Ultimately, the dealership offered to pay $147.50, which amounted to

7  half of the cost of the new tire and alignment.

8      77.    Plaintiff has given GM a reasonable opportunity to cure its failures with respect to

9  its warranty, and Defendant has failed to do so.

10     78.    GM has failed to provide to Plaintiff or the members of the Warranty Class, as a

11 warranty replacement, a product that conforms to the qualities and characteristics that GM

12 expressly warranted when it sold the GTO Vehicles to Plaintiff and members of the Warranty

13 Class.

14     79.    As a result of GM's breach of warranty, Plaintiff and members of the Warranty

15 Class have suffered damages in an amount to be determined at trial.

16
                          **THIRD CAUSE OF ACTION**
17                  **(Unjust Enrichment – Brought On Behalf Of The Class)**

18     80.    Plaintiff incorporates by reference the allegations contained in the preceding

19 paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Count.

20     81.    This claim is asserted in the alternative on behalf of Plaintiff and the members of

21 the Class to the extent that any contracts do not govern the entirety of the subject matter of the

22 disputes with Defendant.

23     82.    As a direct and proximate result of Defendant's misconduct as set forth above,

24 Defendant has been unjustly enriched.

25     83.    Specifically, by its misconduct described herein, GM has accepted a benefit

26 (monies paid by Plaintiff and Class members).

27     84.    As a result of Defendant's misconduct described here, the retention of that benefit

28 (the monies) by GM would be inequitable.

1        85.    Plaintiff on behalf of himself and all others similarly situated, seeks restitution

2    from Defendant, and an order of this Court proportionally disgorging all profits, benefits, and

3    other compensation obtained by Defendant from the wrongful conduct.

4    **<u>PRAYER FOR RELIEF</u>**

5        WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for

6    judgment against Defendant providing the following relief:

7        A.    An order certifying this case as a class action and appointing Plaintiff and his

8    counsel to represent the Class and Warranty Class;

9        B.    Restitution and disgorgement to the extent permitted by applicable law, together

10    with interest thereon from the date of payment, to the victims of such violations;

11        C.    Actual damages for injuries suffered by Plaintiff and members of the Class and

12    Warranty Class;

13        D.    Civil penalties  to the extent permitted by applicable law;

14        E.    An order enjoining GM from continuing to conduct business via the unlawful and

15    unfair business acts and practices complained of herein; an order requiring GM to engage in a

16    corrective notice campaign; and an order requiring GM to refund to Plaintiff and all members of

17    the Class and Warranty Class, the funds paid to GM for, or as a result of, the defective product;

18        F.    Reasonable attorneys' fees and the costs of prosecuting this action;

19        G.    Statutory pre-judgment and post-judgment interest; and

20        H.    Such other and additional relief as this Court may deem just and proper.

21

22

23

24

25

26

27

28

1
2

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

3    Dated: February 23, 2009

4

5                              By:    /s/Mark F. Anderson
                                      Mark F Anderson (SBN 44787)
6                                     KEMNITZER, ANDERSON, BARRON,
                                      OGILVIE & BREWER, LLP
7                                     445 Bush Street, 6th Floor
                                      San Francisco, CA  94108
8                                     Telephone:  (415) 861-2265
                                      Email: mark@kabolaw.com
9                                     Email: matthew@kabolaw.com

10
11                                    James E. Miller
                                      Karen M. Leser (SBN 231189)
12                                    SHEPHERD, FINKELMAN, MILLER
                                      & SHAH, LLP
13                                    65 Main Street
                                      Chester, CT 06412
14                                    Telephone: (860) 526-1100
                                      Email: jmiller@sfmslaw.com
15                                    Email: kleser@sfmslaw.com

16
17                                    James C. Shah (SBN 260435)
                                      Natalie Finkelman Bennett
18                                    Nathan C. Zipperian
                                      SHEPHERD, FINKELMAN, MILLER
19                                    & SHAH, LLP
                                      35 E. State Street
20                                    Media, PA 19063
                                      Telephone: (610) 891-9880
21                                    Email: jshah@sfmslaw.com

22                                    Attorneys for Plaintiff
23
24
25
26
27
28