Mark Browning
Assistant Attorney General
Bankruptcy & Collection Division
P. O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 475-4883

ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :    CHAPTER 11
                                                            :
In re:                                                      :    Case No. 09-50026-REG
                                                            :
MOTORS LIQUIDATION COMPANY, *et al.,*                       :
        f/k/a General Motors Corp., *et al.*                :    (Jointly Administered)
                                                            :
           Debtors                                          :
------------------------------------------------------------x

## TEXAS COMPTROLLER'S RESPONSE TO DEBTORS' MOTION
## REGARDING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

The Texas Comptroller of Public Accounts ("Texas Comptroller"), appearing through the

Texas Attorney General's Office, responds as follows to the Motion of Debtors for Entry of Order

Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative

Dispute Resolution Procedures, Including Mandatory Mediation (the "Claims Procedures Motion"):

1.  The Texas Comptroller has filed tax claims exceeding $62 million in this case. Such

claims are based primarily on state tax audits that are in various stages of completion.

2.  While the Texas Comptroller is not opposed to mediation of its claims under proper

circumstances, the Claims Procedures Motion does not comply in several respects with federal and

state law governing tax audits in bankruptcy. Either the process proposed by the Claims Procedures

Motion needs to modified with respect to tax audit claims or tax audit claims need to be carved out

of claims subject to the Motion.

3.   Pursuant to 11 U.S.C. § 362(b)(9), tax audits are not stayed when a taxpayer files bankruptcy. *See also* <u>H & H Beverage Distributors v. Department of Revenue of Pennsylvania</u>, 850 F.2d 165 (3d Cir. 1988)(tax audits and assessments of liabilities assessed in such audits may proceed while bankruptcy case is pending).

4.  Pursuant to 28 U.S.C. §§ 959(b) and 960, bankruptcy debtors are required to comply with applicable state laws, including specifically tax laws, in operating their businesses.

5.  Similarly to many states' tax laws, Tex. Tax Code §§ 111.004 *et seq.* require taxpayers, including bankruptcy debtors, to cooperate with tax audits, including maintaining and providing to auditors business records necessary to conduct such audits.

6.  Pursuant to such state and federal laws, the Texas Comptroller has requested Motors Liquidation Company f/k/a General Motors Corporation ("the Debtor") to provide documents required to complete pending sales and use tax audits.  Those audits cover prepetition state sales tax and use tax.  Another uncompleted franchise tax audit was in process as of the petition date.  Since filing bankruptcy, the Debtor has not provided requested documents or otherwise proceeded to respond to audit-related requests, rendering it impossible for the Texas Comptroller to complete the audits.

7. The Claims Procedures Motion would reverse the statutory requirements for completing tax audits.  Instead of being required, pursuant to 11 U.S.C. §§ 362(b)(9), 28 U.S.C. §§ 959(b) and 960, and applicable state laws governing audit procedures, to provide necessary documents to tax auditors, the Debtor could instead designate tax audit claims as being among claims subject to mandatory mediation and place upon the tax authorities the initial burden of submitting documentation to support their claims in mediation.  The tax authorities cannot meet that burden,

because the documentation to support their claims *is in the Debtor's possession*, and the Debtor has not provided it, contrary to statutory requirements.

8.    While mediation of tax audit claims may well be appropriate at some point in the process for addressing those claims, such claims are not presently ripe for mediation due to the Debtor's own failures to provide requested documents.  Either (a) uncompleted tax audit claims should be carved out of the claims that may be designated for mediation, or (b) the Debtor should not be allowed to invoke mediation procedures until after the Debtor has complied with its statutory duties to provide required documents to tax auditors.  Section 105(a)'s general equitable powers cannot override more specific statutory  provisions that require bankruptcy debtors to comply with tax audits.

9.    An additional procedural issue with respect to pending tax audits is presented by the Debtor having requested administrative redetermination proceedings with respect to assessed tax audits.  Like all taxpayers, the Debtor has the right under Texas law to contest audit assessments in administrative proceedings before an administrative law judge, with the further right to appeal any final order entered in such proceedings to state courts.  The Debtor has invoked its administrative redetermination rights under Texas law, though (pursuant to the Texas Comptroller's standard procedures for bankrupt taxpayers) such proceedings are temporarily on hold pending the Debtor's choice of forum in which to resolve contested claims and the resolution of any potential stay issues. The process outlined in the Claims Procedures Motion conflicts with the Debtor's existing redetermination requests.  If the Debtor has decided it wishes to resolve the Texas Comptroller's claims in federal court, either through the bankruptcy court claims process or through mediation at an appropriate time, the Debtor should withdraw its pending administrative redetermination requests.

10.    Another key aspect of the tax audit process is jeopardized by the Claims Procedures

Motion.  An important part of tax audits is the "give and take" that normally occurs between auditors and a taxpayer's tax professionals as audits are being conducted.  In the Debtor's case, the Debtor had even requested that it be allowed to proceed with "managed audits" whereby outside accountants retained by the Debtor perform much of the initial audit work, subject to review by the Texas Comptroller's auditors.  In that process, possible tax assessments are usually discussed among the parties' representatives (generally tax accountants, not lawyers) in an out-of-court context, with some assessments either not made or reduced if the taxpayer's representative are able to convince auditors (often through detailed review of extensive documents or data) either that items are not taxable or that the amount of tax due should be calculated in a certain way.  Steering the Texas Comptroller's tax audits into a mandatory mediation process, with relatively short deadlines for presentation of positions and supporting documents, is likely to eliminate or severely curtail the normal "give and take" aspects of the audit process.  That would be to neither the Debtor's nor the Texas Comptroller's advantage.

11.  Finally, state tax audits, particularly for large taxpayers such as the Debtor, often involve huge amounts of documents and data and frequently present complex issues of state tax law.  Even a mediator experienced in dealing with federal court litigation is unlikely to have the requisite tax background or staff necessary to digest difficult state tax issues and sort through large volumes of documents and data.  Paying to educate a mediator and hire expert staff so that the mediator would have a firm grasp of the substantive tax issues and be able to evaluate the strengths and weaknesses of the parties' positions could be prohibitively expensive.  The Texas Comptroller, as a taxpayer-funded entity that can only operate under a legislatively-approved budget, does not have funds available to pay a large amount of mediation costs, fees and expenses.  Texas, like many states, is

experiencing severe budget shortfalls, and tax funds simply do not exist to pay even one-half of large

mediation costs and fees. If mediation is to be ordered at some point, it would best be done after the

normal audit process has been completed, with the number of potential issues narrowed and some

tax amounts resolved during the audit, thereby limiting the scope and expense of mediation.

12.   Counsel for the Texas Comptroller attempted, prior to filing this response, to discuss

with Debtor's counsel the unique aspects of tax audit claims that do not square with the Claims

Procedures Motion. Debtor's counsel did not respond to the request to discuss such issues.

Wherefore, the Texas Comptroller requests that (i) tax audit claims be carved out of the types

of "designated claims" proposed in the Claims Procedures Motion, (ii) alternatively, implementation

of mandatory mediation of tax audit claims be deferred until after the Debtors have complied with

statutory requirements to provide documentation to auditors, (iii) if, contrary to the Texas

Comptroller's position, mandatory mediation is ordered, the Debtors be required to withdraw their

pending administrative redetermination requests under state law, and (iv) the Texas Comptroller

have such other relief to which it may be entitled.

Respectfully submitted,

> GREG ABBOTT
> Attorney General of Texas
>
> C. ANDREW WEBER
> First Assistant Attorney General
>
> DAVID S. MORALES
> Deputy Attorney General for Civil Litigation
>
> RONALD R. DEL VENTO
> Assistant Attorney General
> Chief, Bankruptcy & Collections Division

*/s/ Mark Browning*
MARK BROWNING
Assistant Attorney General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, TX  78711-2548
Telephone:  (512) 475-4883

ATTORNEYS FOR THE TEXAS
COMPTROLLER OF PUBLIC ACCOUNTS