Hearing Date and Time:  March 2, 2010 at 11:00 a.m. (Eastern Time)
Objection Date and Time:  February 25, 2010 at 4:00 p.m. (Eastern Time)

Robert B. Weiss
Joseph R. Sgroi
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Telephone: (313) 465-7570
Facsimile: (313) 465-7571

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| **In Re** | : | Chapter 11 |
| | : | |
| **MOTORS LIQUIDATION COMPANY** (f/k/a | : | Case No. 09-50026 (REG) |
| General Motors Corp.), et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Hon. Robert E. Gerber |
| | : | |
-----------------------------------------------------------------x

**NOTICE OF GENERAL MOTORS LLC'S MOTION (I) FOR DECLARATORY RELIEF REGARDING THE STATUS OF A CERTAIN SUBLEASE OR, IN THE ALTERNATIVE, RELIEF FROM THE ASSUMPTION AND ASSIGNMENT OF A CERTAIN SUBLEASE TO GM PURSUANT TO RULE 60(b) AND (II) TO RESCIND THE AGREEMENT TO RESOLVE OBJECTION TO CURE NOTICE BETWEEN GM AND KNOWLEDGE LEARNING CORPORATION DATED AUGUST 14, 2009**

**PLEASE TAKE NOTICE THAT:**

Upon the annexed motion, dated January 28, 2010, General Motors LLC ("**GM**"), filed

its Motion (I) for Declaratory Relief Regarding the Status of a Certain Sublease or, in the

Alternative, Relief from the Assumption and Assignment of a Certain Sublease to GM Pursuant

to Rule 60(b) and (II) to Rescind the Agreement to Resolve Objection to Cure Notice Between

GM and Knowledge Learning Corporation Dated August 14, 2009 (the "**Motion**").

The Motion seeks an order from the Court determining that a certain sublease relating to real property between Knowledge Learning Corporation and the Debtors was not assumed by the Debtors and assigned to GM.  Alternatively, if the Court determines that the sublease was assumed by the Debtors and assigned to GM, GM requests relief from such assignment under Federal Rule of Civil Procedure 60, as incorporated by Federal Rule of Bankruptcy Procedure 9024.  In conjunction with these requests for relief, GM moves that the Court rescind the related cure settlement agreement between GM and KLC on the basis of mutual mistake of fact.  A hearing on the Motion will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, Room 621 of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, on **March 2, 2010 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

A copy of the Motion may be obtained by (a) contacting the attorneys for GM, Honigman Miller Schwartz and Cohn LLP, 660 Woodward Avenue, 2290 First National Building, Detroit, Michigan  48226 (Attn. Robert B. Weiss, Esq. and Joseph R. Sgroi, Esq.), Telephone: (313) 465-7000; (b) accessing the Court's website at http://www.nysb.uscourts.gov (please note that a PACER password is needed to access documents on the Court's website); (c) viewing the docket of these cases at the Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004; or (d) accessing the public website maintained by the Debtors' court-appointed claims and noticing agent in these cases at: **www.motorsliquidationdocket.com**

The deadline to file any objections and responses to the Motion is **February 25, 2010** at **4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

Objections and responses, if any, to the Motion must be in writing and must (a) conform to the Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the Southern District of New York, and any case management orders in these chapter 11 cases, (b) set forth the name of the objecting party, the nature and amount of claims or interests held or asserted by the objecting party against the Debtors' estates or property, and (c) set forth the basis for the objection and the specific grounds therefore.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Honigman Miller Schwartz and Cohn LLP, Attn: Robert B. Weiss and Joseph R. Sgroi, 660 Woodward Avenue, 2290 First National Building, Detroit Michigan 48226; (ii) General Motors LLC, 300 Renaissance Center, Detroit, Michigan 48226 (Attn: Lawrence S. Buonomo, Esq.); (iii) the Debtors, Motors Liquidation Company f/k/a General Motors Corp. et al., AlixPartners, LLP, 2000 Town Center, Suite 2400, Southfield, Michigan 48075 (Attn: Michelle Smith) and Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Evan S. Lederman, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi,

Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue, NW, Room 2312, Washington. D.C. 20020, (Attn: Matthew Feldman, Esq.); (vi) Vedder Price, attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the Committee of Unsecured Creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Kenneth H. Eckstein, Esq., Thomas Moers Mayer, Esq., Adam C. Rogoff, Esq., and Gordon Z. Novod, Esq.); (viii) the attorneys for the International Union, United Automobile, Aerospace and Agriculture Implement Workers of America ("**UAW**"), 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel W. Sherrick, Esq.); (ix) Cleary Gottlieb Steen & Hamilton LLP, attorneys for the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (x) Cohen, Weiss and Simon LLP, attorneys for the UAW, 330 W. 42nd Street, New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (xi) the Office of the United States Trustee for the Southern District of New York (Attn: Diana G. Adams, Esq.), 33 Whitehall Street, 21st Floor, New York, New York 10004; (xii) Knowledge Learning Corporation, 650 NE Holladay Street, Portland, OR 97232 (Attn: Darrell Lyons); (xiii) KinderCare Learning Centers, Inc., 650 NE Holladay Street, Portland, OR 97232 (Attn: Real Estate Assets); (xiv) Bradley Arant Boult Cummings LLP, attorneys for Knowledge Learning Corporation, 1600 Division Street, Suite 700, P.O. Box 340025, Nashville, TN 37203 (Attn: Austin L. McMullen); and (xv) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.), so as to be **received** no later than the **Objection Deadline.**

4

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing.  Failure to appear at the Hearing may result in relief being granted or denied upon

default.

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for General Motors LLC

Dated:  January 28, 2010                 By:   /s/ Joseph R. Sgroi
                                                      Robert B. Weiss (Michigan Bar No. P28249)
                                                      Joseph R. Sgroi (Michigan Bar No. P68666)
                                              2290 First National Building
                                              660 Woodward Avenue
                                              Detroit, MI  48226
                                              Telephone:  (313) 465-7570
                                              Facsimile:  (313) 465-7571
                                              Email:  jsgroi@honigman.com

DETROIT.4044633.2

**Hearing Date and Time:  March 2, 2010 at 11:00 a.m. (Eastern Time)**
**Objection Date and Time:  February 25, 2010 at 4:00 p.m. (Eastern Time)**

Robert B. Weiss
Joseph R. Sgroi
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Ave.
Detroit, Michigan 48226
Telephone: (313) 465-7570
Facsimile: (313) 465-7571

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  |  |
|---|---|
| **In Re** : | Chapter 11 |
| : | |
| **MOTORS LIQUIDATION COMPANY** (f/k/a : | Case No. 09-50026 (REG) |
| General Motors Corp.), et al., : | (Jointly Administered) |
| : | |
| Debtors. : | Hon. Robert E. Gerber |
| : | |

-----------------------------------------------------------------x

**GENERAL MOTORS LLC'S MOTION (I) FOR DECLARATORY RELIEF REGARDING
THE STATUS OF A CERTAIN SUBLEASE OR, IN THE ALTERNATIVE,
RELIEF FROM THE ASSUMPTION AND ASSIGNMENT OF A CERTAIN SUBLEASE
TO GM PURSUANT TO RULE 60(b) AND (II) TO RESCIND THE AGREEMENT TO
RESOLVE OBJECTION TO CURE NOTICE BETWEEN GM AND KNOWLEDGE
<u>LEARNING CORPORATION DATED AUGUST 14, 2009</u>**

# TABLE OF CONTENTS

Introduction.........................................................................................................................................1

Jurisdiction and Venue.......................................................................................................................2

The GM Sale Procedures ...................................................................................................................2

Assumption of the CAP Agreement ..................................................................................................2

GM Elects to Negotiate a Cure Settlement with KLC ......................................................................2

The Sublease is Designated as a Rejectable Executory Contract .....................................................2

The Sublease Was Not Assumed and Assigned to GM.....................................................................2

Alternatively, GM is Entitled to Relief Under Rule 60(b)(1)
On the Basis of Mutual Mistake or Excusable Neglect .....................................................................2

The Cure Agreement Should Be Rescinded on the Basis of Mutual Mistake of Fact.....................2

Notice ................................................................................................................................................2

Conclusion .........................................................................................................................................2

# TABLE OF AUTHORITIES

**CASES**

*D'Antoni v. Goff,*
   383 N.Y.S.2d 117 (N.Y. App. Div. 1976) ............................................................................14

*In re UAL Corp.,*
   411 F.3d 818 (7th Cir. 2005) ...............................................................................................13

*Kotlicky v. U.S. Fidelity & Guaranty Co.,*
   817 F.2d 6 (2nd Cir. 1987)...................................................................................................11

*Sec. Pac. Mortgage and Real Estate Servs., Inc. v. Herald Ctr. Ltd.,*
   731 F. Supp. 605 (S.D.N.Y. 1990) .......................................................................................11

**STATUTES**

11 U.S.C. § 105(a) ........................................................................................................................16

11 U.S.C. § 365..........................................................................................................................7, 9

28 U.S.C. § 157 .............................................................................................................................2

28 U.S.C. § 1334...........................................................................................................................2

28 U.S.C. § 1409...........................................................................................................................2

28 U.S.C. § 2201...........................................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 1015(c) ...........................................................................................................15

Fed. R. Bankr. P.9007..................................................................................................................15

Fed. R. Bankr. P. 9024..................................................................................................................2

Fed. R. Bankr. P. 7001..................................................................................................................2

Fed. R. Civ. P. 57.........................................................................................................................2

Fed. R. Civ. P. 60(b) ...........................................................................................................2, 11, 13

Restatement (Second) of Contracts § 152 (1981) ..................................................................13, 14

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("**GM**"),[1] for its Motion (I) for Declaratory Relief Regarding the Status of a Certain Sublease or, in the Alternative, Relief from the Assumption and Assignment of a Certain Sublease to GM Pursuant to Rule 60(b) and (II) to Rescind the Agreement to Resolve Objection to Cure Notice Between GM and Knowledge Learning Corporation Dated August 14, 2009 (the "**Motion**"), respectfully represents:

## INTRODUCTION

In connection with the sale to GM of substantially all of the assets of Motors Liquidation Company f/k/a General Motors Corporation ("**MLC**"), GM designated a fleet purchase agreement between the Debtors and Knowledge Learning Corporation ("**KLC**") for assumption and assignment. The Debtors assumed and assigned the fleet purchase agreement to GM on or about July 10, 2009. GM subsequently designated a sublease between the Debtors and KLC as rejectable by the Debtors, and the Debtors moved to reject the sublease. KLC recently filed an objection to the Debtors' motion to reject the sublease, claiming that the Debtors assumed and assigned the sublease to GM instead of the fleet purchase agreement.

Under the assumption and assignment procedures approved by the Court, the Debtors did not assume and assign the sublease to GM. GM files this Motion seeking an order from the Court determining that only the fleet purchase agreement was assumed by the Debtors and assigned to GM. Alternatively, if the Court determines that the sublease was assumed and

---

[1] General Motors Company (formerly NGMCO, Inc.) was the successor-in-interest to Vehicle Acquisition Holdings LLC, the purchaser of substantially all of MLC's assets pursuant to a sale consummated under section 363 of the Bankruptcy Code. Since the closing of the sale, General Motors Company has converted to a Delaware limited liability company and changed its name to General Motors LLC.

assigned to GM, GM requests relief from such assignment under Federal Rule of Civil Procedure 60 (as incorporated by Federal Rule of Bankruptcy Procedure 9024, "**Rule 60**").  In conjunction with these requests for relief, GM moves that the Court rescind the related cure settlement agreement between GM and KLC on the basis of mutual mistake of fact.

## JURISDICTION AND VENUE

1.    The action for declaratory relief is made pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure (the "**Federal Rules**").[2]  The alternative action for relief from the assumption and assignment is made pursuant to Rule 60.

2.    This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

3.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § 1409.[3]

## BACKGROUND

### *The Contracts between the Debtors and KLC*

4.    Prior to the Petition Date (defined below), KLC operated a child care and learning facility that provided subsidized child care services to the unionized workforce at Saturn's

---

[2] GM's action for declaratory relief relating to the alleged assumption and assignment of the Sublease (as defined below) is not one of the enumerated causes of action required to be brought as an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure.

[3] The Court expressly retained jurisdiction to resolve this action in paragraph 15 of Sale Procedures Order (as defined below) and paragraph 71 of the Sale Order (as defined below).

Spring Hill manufacturing operation.  KLC subleased property from Saturn, LLC under an Amended and Restated Sublease Agreement (the "**Sublease**").[4]

5.      Additionally, MLC and KLC were parties to a 2010 Model Year Competitive Assistance Program Agreement (the "**CAP Agreement**").  Subject to certain conditions, the CAP Agreement provides that KLC will receive discounts on GM-brand vehicles during the 2010 model year.  A copy of the CAP Agreement is attached as Exhibit 1.

## *The GM Sale Procedures*

6.      On June 1, 2009 (the "**Petition Date**"), MLC, MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) (collectively the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      On June 2, 2009, the Court entered its Order (I) Approving Procedures for Sale of Debtors' Assets Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures and Fixing Notice Procedures; and (IV) Approving Form of Notice (Docket No. 274) (the "**Sale Procedure Order**"), which governed "all bids and sale procedures relating to the Purchased Assets."[5]  Sale Procedure Order ¶ 3.

---

[4]  The primary lease is between the Industrial Development Board of Maury County, Tennessee and Saturn Corporation.  Both the Sublease and the primary lease are voluminous, and are therefore not attached to this Motion. A copy of either document will be provided on request.

[5]  Unless otherwise defined, capitalized terms have the meaning assigned in the Sale Procedures Order.

8.    The Sale Procedures Order provided the exclusive procedures for the assumption and assignment of designated executory contracts and unexpired leases from the Debtors to the Purchaser (the "**Assumption and Assignment Procedures**").   Sale Procedures Order ¶ 10 (stating that the Assumption and Assignment Procedures "shall govern the assumption and assignment of the Assumable Executory Contracts in connection with the sale of the Purchased Assets to the Purchaser").

9.    In connection with the Assumption and Assignment Procedures, the Debtors maintained a secure website (the "**Contract Website**") that listed each executory contract and unexpired lease that the Purchaser had designated as an Assumable Executory Contract.   The applicable non-Debtor counterparty could access the Contract Website to view current information regarding the status of its contracts or leases with the Debtors and the proposed cure amount associated with such contracts or leases.   *Id.*

10.    As required by the Assumption and Assignment Procedures, the Debtors also maintained a separate schedule of Assumable Executory Contracts (the "**Schedule**").   *Id.*   The Assumption and Assignment Procedures provide for the assumption and assignment of the Assumable Executory Contracts on the Schedule to the Purchaser as part of the contemplated sale of MLC's assets under section 363 of the Bankruptcy Code.   *Id.*   The Assumption and Assignment Procedures make no provision for the assumption and assignment of contracts or leases not listed on the Schedule.   *See id.* (providing that, if the Purchaser removed a contract or lease from the Schedule, such contract or lease "shall cease to be an Assumable Executory Contract").

4

11.    If the Purchaser designated a contract or lease as an Assumable Executory Contract, the Assumption and Assignment Procedures obligated the Debtors to notify applicable contract counterparties with "instructions for accessing the information on the Contract Website relating to such Non-Debtor Counterparty's Assumable Executory Contract and (ii) the procedures for objecting to the proposed assumption and assignment of the Assumable Executory Contract." *Id.* Contract counterparties had ten days from the date of the notice to file an objection to the assumption and assignment. *Id.*

### Assumption of the CAP Agreement

12.    The Debtors' Schedule and KLC's Contract Website listed the CAP Agreement as an Assumable Executory Contract.[6]    Accordingly, on June 5, 2009, the Debtors sent KLC a notice of intent to assume the CAP Agreement (the "**Notice**").   The Notice was addressed to the KLC employee at the address identified by the CAP Agreement.   A copy of the Notice is attached as Exhibit 2.

13.    The Contract Website identified the CAP Agreement as an "Agreement" with GM Contract ID 2744, and provided a proposed cure amount of $0.   *See* Schedule Listing for Contract 5716-00749080 and Contract Website Listing for Contract 5716-00749080 attached as

---

[6] As part of the sale process, the CAP Agreement and the Sublease were identified internally by their individual identification numbers.  The CAP Agreement was contract 5716-00749080.  The Sublease was  contract 5716-00019334.

Exhibits 3 and 4, respectively.[7]   In accordance with the Sale Procedures Order, the deadline to object to the assumption and assignment of the CAP Agreement was June 15, 2009.

14.    On July 5, 2009, the Court approved the sale of substantially all of the Debtors' assets to GM in the Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief (Docket No. 2968) (the "**Sale Order**").

15.    On July 7, 2009, KLC tardily filed an assumption and assignment objection (Docket No. 3030) (the "**First Objection**").[8]   Incorrectly assuming that GM designated the Sublease for assumption and assignment, KLC objected to GM's proposed cure amount, asserting that the correct cure amount was $123,316.60.  First Objection ¶¶ 3, 8.  On information and belief, this represents the amounts owed under the Sublease.

16.    Because KLC objected only to GM's proposed cure amount, and not to the assumption and assignment generally,[9] the Debtors were authorized by the Sale Procedures Order and the Sale Order to assume and assign the CAP Agreement to GM on the closing date.[10]

---

[7] On or about August 2, 2009, as part of a larger effort to provide contract counterparties with additional detail regarding the contracts designated for assumption, GM modified the Contract Website by providing the name of the agreement on the Contract Website as "(CAP)" and further describing the agreement as "(One Model Year)."

[8] In the First Objection, KLC contends that its ability to object by the deadline was "materially impaired" because, while "the Debtors sent an Assumption Notice to KLC," the Cure Notice was not "addressed as required" under the Sublease.  First Objection ¶ 6.  The Cure Notice was sent to: Knowledge Learning Corporation, Darrell Lyons, 650 NE Holladay St., Portland, Oregon, 97232.  This is the address provided on the header of the CAP Agreement—the agreement that the Debtors intended to assume and assign to GM.

[9] First Objection ¶ 8 ("KLC does not object to the assumption and assignment of the Agreement.").

[10] Sale Procedures Order and the Sale Order authorized the Debtors to assume and assign the contracts and leases listed on the Schedule that were subject to an outstanding objection, so long as that objection was limited to

On July 10, 2009, the sale closed and the Debtors assumed the CAP Agreement and assigned it to GM.

### GM Elects to Negotiate a Cure Settlement with KLC

17.    Notwithstanding KLC's failure to file a timely objection to the cure amount proposed by GM on the Contract Website, GM elected to reconcile the cure amount with KLC through its standard cure reconciliation process, and attempt to negotiate a consensual resolution to KLC's cure objection.

18.    The GM Command Center in Warren, Michigan (the "**Command Center**") managed the assumption and assignment process and the cure dispute resolution process for GM. The Command Center assigned specific GM employees to manage, negotiate, and resolve many of the contract assumption and cure objections filed in the bankruptcy case.  Because of the size and complexity of the transfer of contracts and leases from the Debtors to GM, the Command Center relied heavily on the negotiators to effectively manage the reconciliation of cure amounts and resolve contract assumption objections.

19.    On July 23, 2009, in accordance with GM's standard cure reconciliation process, the GM negotiator assigned to KLC's objection provided KLC with a cure reconciliation template, and instructed KLC to explain their alleged cure amount in detail and provide the documentation supporting such cure amount.  On July 24, 2009, KLC sent the GM negotiator the completed template, which listed a cure amount of $128,307.60.  On information and belief, this represents the amounts owed under the Sublease.

---

the amount needed to cure contract defaults under 11 U.S.C. § 365.  *See* Sale Procedures Order ¶ 10; Sale Order ¶ 23.

20.      Apparently proceeding on the false assumption that the Sublease was the contract designated for assumption,[11] the GM negotiator, after briefly investigating the veracity of documents submitted by KLC and the amounts owing under the Sublease, advised the Command Center that KLC was in fact owed a cure payment of $123,313.  After further negotiations with KLC, the GM negotiator requested and received approval from the Command Center to increase this amount to $128,307.60.

21.      On or about August 14, 2009, KLC executed GM's standard letter agreement resolving its cure objection (the "**Cure Agreement**").  The Cure Agreement provided, in pertinent part, that the executory contracts and unexpired leases that GM identified in the Notice would be assumed and assigned to GM, and that GM would pay $128,307.60 (the "**Cure Amount**") to KLC in satisfaction of its cure obligations.  A copy of the Cure Agreement is attached as Exhibit 5.

### *The Sublease is Designated as a Rejectable Executory Contract*

22.      As of June 15, 2009, the Sublease was on a list of contracts that, pending final confirmation from GM, would be rejected by the Debtors.  A redacted copy of the rejection schedule is attached as Exhibit 6.

23.      On June 19, 2009, the GM employee responsible for determining whether to assume or reject the Sublease informed the real estate assumption and assignment team that the

---

[11] For reasons unrelated to this error, the negotiator is no longer employed by GM.  Accordingly, her rationale for proceeding on this assumption and failing to consult the Contract Website or Schedule to determine the identity of the contract noticed for assumption is unknown.

Sublease would not be designated for assumption and assignment to GM and, therefore, could be designated for immediate rejection by the Debtors.[12]

24.     On October 23, 2009, the Debtors filed their Eighth Omnibus Motion Pursuant to 11 U.S.C § 365 to Reject Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property (Docket No. 4291) (the "**Rejection Motion**").  One of the leases designated for rejection was the Sublease.  Rejection Motion Ex. A.

25.     On November 2, 2009, KLC objected to the Debtors' rejection of the Sublease (Docket No. 4338) (the "**Second Objection**").  KLC alleges in the Second Objection that the Debtors assumed and assigned the Sublease to GM, and therefore cannot reject it.

## ARGUMENT

### I(A).    The Sublease Was Not Assumed and Assigned to GM

26.     GM is entitled to a declaratory judgment that the CAP Agreement—not the Sublease—was assumed and assigned to GM.  GM intended to assume the CAP Agreement, and has performed every action required by the Sale Procedures Order, the Sale Order, and the MSPA to assume and assign the CAP Agreement.  GM sent the Notice to the individual at the address identified in the CAP Agreement, and designated the CAP Agreement for assumption by listing it on the Schedule and the Contract Website.  According to the Schedule and the Contract Website, the CAP Agreement was assigned to GM on July 10, 2009, approximately one month before GM executed the Cure Agreement with KLC.

---

[12] The GM real estate assumption and assignment team and certain of the Debtors' representatives conducted additional discussions concerning whether rejection of the Sublease by the Debtors would be the most appropriate and beneficial option, and on September 4, 2009, GM ultimately expressed its position that the Sublease should be rejected.  On information and belief, GM did not indicate during these discussions, or at any other time, that it would designate the Sublease for assumption and assignment.

27.     Conversely, GM <u>did not</u> intend to assume the Sublease, and outside of the inexplicable decision by the GM negotiator to agree to pay KLC the cure amount owing under the Sublease, has not performed any of the actions required by Sale Procedures Order, the Sale Order, or the MSPA to assume and assign the Sublease.  The Sublease was not identified in the Notice, nor was it ever noticed for assumption and assignment pursuant to the Assumption and Assignment Procedures. The Sublease is not listed on KLC's Contract Website or on the Schedule as an Assumable Executory Contract, and GM has no reason to believe that the Sublease was ever on the Contract Website or the Schedule.

28.     Further, shortly after the Petition Date, the GM real estate team identified the Sublease as a lease that would not be designated for assumption and assignment and could be rejected by the Debtors.  On October 23, 2009, the Debtors filed a motion to reject the Sublease. GM did not oppose the rejection, or exercise its option to designate the Sublease for assumption.

29.     It is not clear whether the GM negotiator expressly represented to KLC that the contract listed on the Contract Website was the Sublease.  But such representations, even if made, could not effectuate an assumption and assignment of the Sublease under the Assumption and Assignment Procedures.

30.     Similarly, GM's execution of the Cure Agreement did not effectuate an assumption and assignment of the Sublease.  The Cure Agreement only references the contracts identified on the Notice.  The contract identified by the Notice and listed on the Contract Website is the CAP Agreement.

10

31.      The Assumption and Assignment Procedures ensured that one of the single largest transfers of assets in U.S. history was properly recorded in a single authoritative record. Deviating from these procedures and modifying the record based on an erroneous cure payment would inject a significant measure of uncertainty into the finality of the MLC sale.

**I(B).      ALTERNATIVELY, GM is Entitled to Relief Under Rule 60(b)(1)
On the Basis of Mutual Mistake or Excusable Neglect**

32.      Even if the Court determines that GM's execution of the Cure Agreement effectuated an implicit assumption of the Sublease, GM is nevertheless entitled to relief from the assumption and assignment of the Sublease under Rule 60(b)(1).  Rule 60(b)(1) permits a party to obtain relief from "a final judgment, order, or proceeding" on the basis of "mistake, inadvertence, surprise, or excusable neglect."  FED. R. CIV. P. 60(b)(1).

33.      In deciding a motion for relief under Rule 60(b), a court "must balance the policy in favor of serving the ends of justice against the policy in favor of finality."  *Sec. Pac. Mortgage and Real Estate Servs., Inc. v. Herald Ctr. Ltd.*, 731 F. Supp. 605, 610 (S.D.N.Y. 1990).  *See also Kotlicky v. U.S. Fidelity & Guaranty Co.*, 817 F.2d 6, 9 (2nd Cir. 1987).

34.      Courts in the Second Circuit emphasize three factors in analyzing a motion for relief under Rule 60(b):

    a.      the evidence in support of the motion is "highly convincing";

    b.      the moving party shows good cause for its failure to act sooner; and

    c.      no undue hardship is imposed on other parties.

*See Kotlicky*, 817 F.2d at 9; *Sec. Pac. Mortgage,* 731 F. Supp. at 610.

35.     Justice favors granting GM relief from any implied assumption and assignment. GM implemented robust assumption and assignment procedures to ensure an accurate transfer of assets to GM.  Beginning well before the Petition Date, GM dedicated hundreds of employees and third-party professionals to the task of shepherding assets from MLC to GM, created – at significant expense – a secure database to disseminate information to negotiation teams and contract counterparties, and obtained Court approval for its various proposed sale procedures. Pursuant to these procedures, GM properly noticed and took the steps necessary to assume the CAP Agreement, not the Sublease.

36.     The execution of the Cure Agreement with an incorrect cure amount was not due to an institutional lack of diligence.  Responsible for negotiating and resolving approximately 590 contract assumption and assignment objections, which collectively implicated tens of thousands of production, service, real estate, equipment, and tooling contracts and leases, the Command Center could not reasonably engage in a detailed review of each contract designated for assignment.

37.     GM acted as soon as reasonably possible under the circumstances.  The Cure Agreement was signed on or about August 14, 2009.  Until November 2, 2009, the date of the Second Objection, GM had no reason to know of the dispute.  And because the GM negotiator who negotiated the Cure Agreement with KLC left GM on or about October 1, 2009, it took several weeks to work backwards through the Cure Agreement, Schedule, Contract Website, Notice, and other critical documents to determine the source of the dispute.

38.     KLC will suffer no undue hardship if the assumption is undone.  Absent the mutual mistake of fact regarding the contract on the Schedule, the Sublease would have been rejected, and KLC would have a potential rejection claim and a potential administrative expense claim against the Debtors' estates.  If the assumption is reversed, KLC will be left with the same potential rejection damages and administrative expense claims, plus a potential claim for several additional months of administrative expenses that GM may be required to fund pursuant to the terms of the MSPA.  Further, overturning the assumption will not require the Court to claw back the Cure Amount, because the Cure Amount has not been paid by GM.  "When an innocent mistake can be rectified without harm to anyone (loss of a windfall is not the kind of harm that a court should endeavor to avert), it should be."  *In re UAL Corp.*, 411 F.3d 818, 823-24 (7th Cir. 2005) (Posner, J.) (affirming bankruptcy court's order that vacated earlier order approving debtor's decision to retain airplane leases under Rule 60(b)).

39.     GM, on the other hand, will suffer significant hardship.  With finished vehicle production at the Spring Hill facility currently idled for the foreseeable future, GM has no immediate or long-term need for child care services at this location.  If the sublease is assigned to GM, GM will be forced to either continue to pay KLC substantial service and/or enrollment subsidies for services it does not require, or terminate the Sublease and pay a significant penalty under the applicable lease termination provision.

## II.     The Cure Agreement Should Be Rescinded on the Basis of Mutual Mistake of Fact

40.     In conjunction with GM's requests for relief with respect to the assumption and assignment of the CAP Agreement, GM also requests that the Court rescind the Cure Agreement

on the basis of mutual mistake of fact.  The Restatement (Second) of Contracts provides a useful and oft-cited test for mutual mistake:

> Where mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981).

41.     The mistake here was to a basic assumption in the Cure Agreement.  The purpose of the Cure Agreement was to resolve a dispute regarding the cure amount owing under the contract designated for assumption.  KLC and the GM negotiator mistakenly believed that the contract designated for assumption was the Sublease, when in fact it was the CAP Agreement. "Where the mistake is both mutual and substantial, as herein, there is absence of the requisite 'meeting of the minds' to contract."  *D'Antoni v. Goff*, 383 N.Y.S.2d 117 (N.Y. App. Div. 1976) (reversing lower court ruling where parties to a sale of land contract mutually mistaken regarding the amount of land in a particular plot).

42.     This mistake had a material effect on the agreed exchange of performances.  GM had no outstanding cure obligations under the CAP Agreement, but is obligated to pay KLC $128,307.60 under the Sublease.

43.     Neither party bears the risk of mistake.  Section 154 of the Restatement provides that a party bears the risk of mistake where:

    a.    the risk is allocated to him by agreement of the parties;

    b.    he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient;

c.     the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

44.     In this case, the Cure Agreement does not allocate risk to either GM or KLC. Neither party operated under the belief that it had only limited knowledge as to the identity of the contract being assumed and assigned to GM. There is no basis to allocate risk to GM, as both GM and KLC acknowledged in the Cure Agreement that they are sophisticated parties, and at the time the Cure Agreement was executed, both the GM negotiator and KLC had access to information that would have corrected their mutual mistake.[13]

## NOTICE

45.     GM has provided notice of this Motion to parties-in-interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 (Docket No. 3629). GM submits that such notice is sufficient and further notice need be provided. No previous request for the relief sought in this Motion has been made by GM to this or any other court.

## CONCLUSION

**Accordingly**, GM respectfully requests that the Court enter an order, substantially in the form of the attached Exhibit 7, (i) determining that the Debtors did not assume and assign the Sublease to GM or, alternatively, granting GM relief from the assumption and assignment of the Sublease under Rule 60(b); (ii) ordering that the Cure Agreement is rescinded on the basis of mutual mistake of fact; and (iii) granting GM such other relief as the Court deems just and equitable.

---

[13] As the exhibit attached to KLC's Second Objection reflects, at the time the Cure Agreement was executed, the Contract Website described the designated contract as "(CAP) (One Model Year)."

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for General Motors LLC

Dated:  January 28, 2010

By:  /s/ Joseph R. Sgroi
    Robert B. Weiss (Michigan Bar No. P28249)
    Joseph R. Sgroi (Michigan Bar No. P68666)
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226
Telephone:  (313) 465-7570
Facsimile:  (313) 465-7571
Email:  jsgroi@honigman.com

DETROIT.4018357.8