Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :        **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                   :        **09-50026 (REG)**
          **f/k/a General Motors Corp.,** *et al.*          :
                                                            :
                                     **Debtors.**           :        **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

## NOTICE OF HEARING
## ON DEBTORS' OBJECTION TO
## PROOFS OF CLAIM NOS. 02109 & 14938
## <u>FILED BY LAFONZA EARL WASHINGTON</u>

**PLEASE TAKE NOTICE** that upon the annexed Objection, dated January 29,

2010, of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of Proofs of

Claim Nos. 02109 and 14938 (together, the "**Claims**") filed by Lafonza Earl Washington, all as

more fully set forth in the Objection, a hearing will be held before the Honorable Robert E.

Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, New York, New York 10004, on

**March 2, 2010 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format (with a hard copy delivered directly to Chambers), in

accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and

served in accordance with General Order M-242, and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn:  Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit, Michigan 48243

(Attn:  Ted Stenger); (iii) General Motors, LLC, 300 Renaissance Center, Detroit, Michigan

48265 (Attn:  Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP,

attorneys for the United States Department of the Treasury, One World Financial Center, New

York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the

Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, DC 20220 (Attn:  Joseph

Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633

Broadway, 47th Floor, New York, New York 10019 (Attn:  Michael J. Edelman, Esq. and

Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory

committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036

(Attn:  Thomas Moers Mayer, Esq., Amy Caton, Esq., Adam C. Rogoff, Esq., and Gregory G.

Plotko, Esq.); (viii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Diana G. Adams,

Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York,

New York 10007 (Attn: David S. Jones, Esq. and Matthew L. Schwartz, Esq.); (x) all entities

that requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and (xi) Lafonza

Earl Washington, 77010 Cranwood Drive, Flint, Michigan 48505-5425, so as to be received no

later than **February 23, 2010 at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
      January 29, 2010

                        /s/ Joseph H. Smolinsky
                        Harvey R. Miller
                        Stephen Karotkin
                        Joseph H. Smolinsky

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtors
                        and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :    09-50026 (REG)
    f/k/a General Motors Corp., et al.  :
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
-------------------------------------------------------------x
```

## DEBTORS' OBJECTION TO PROOFS OF CLAIM
## NOS. 02109 & 14938 FILED BY LAFONZA EARL WASHINGTON

# TABLE OF CONTENTS

**Page**

Relief Requested ................................................................................................ 1

Jurisdiction ....................................................................................................... 2

The Relief Requested Should Be Approved by the Court ................................ 2

I.    At a Minimum, Claim 2 Should Be  Disallowed and Expunged as
      Duplicative of Claim 1 ........................................................................... 2

II.   Mr. Washington's Claims Should Be Disallowed and Expunged  Because
      They Are Incomprehensible, Are Unsupported by Facts,  and Are Merely
      Part of a Pattern of Disallowed Filings by This Claimant ..................... 4

      A.    Mr. Washington's Prior Unsuccessful Involvement in this
            Bankruptcy .................................................................................... 4

      B.    Mr. Washington Is a Serial Filer ................................................... 6

      C.    Mr. Washington's Allegations Here  Do Not Form the
            Basis of a Cognizable Claim ......................................................... 8

      D.    Mr. Washington Has Failed to  Show Prima Facie
            Entitlement to Relief .................................................................. 10

      E.    The Claims Fail to Comply with the Bar Date Order ................. 13

Reservation of Rights ..................................................................................... 13

Notice ............................................................................................................ 13

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004) ......................................................................12

*Butner v. United States*, 440 U.S. 48 (1979)..............................................................12

*In re Chain*, 255 B.R. 278 (Bankr. D. Conn. 2000)....................................................12

*In re Diary Mart Convenience Stores, Inc.*, 351 F.3d 86, 90 (2d Cir. 2003)...............11

*In re Marino*, 90 B.R. 25 (Bankr. D. Conn. 1988)..................................................10, 12

*In re Martin-Triaona*, 737 F.2d 1254 (2d Cir. 1984), *remanded to* 592 F. Supp. 1566 (1984), *aff'd*, 763 F.2d 140 (1985), *cert. denied*, 474 US 1061 (1986)......................................................................................................................9, 10

*Pacesetter Commc'ns Corp. v. Solin & Breindel, P.C.*, 150 A.D.2d 232 (N.Y. App. Div. 1989), *appeal dismissed*, 74 N.Y.2d 892 (1989) ...................12

*In re R & G Props., Inc.*, Case No. 08-10876, 2009 WL 2043875 (Bankr. D.VT July 6, 2009) ........................................................................................11

## <u>Statutes</u>

11 U.S.C. § 361(1) ......................................................................................................2, 10

11 U.S.C. § 502(b) ..........................................................................................................12

11 U.S.C. § 503.............................................................................................................2, 11

11 U.S.C. § 507.............................................................................................................2, 11

28 U.S.C. § 157..................................................................................................................2

28 U.S.C. § 1334................................................................................................................2

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation)

("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**")

respectfully represent:

### **Relief Requested**

1.      The Debtors file this objection pursuant to section 502 of title 11,

United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's Order Pursuant to

Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing

the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code

Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and

Manner of Notice Thereof (the "**Bar Date Order**") [Docket No. 4079] seeking entry of

an order disallowing and expunging Proofs of Claim Nos. 02109 ("**Claim 1**") and 14938

("**Claim 2**," and together with Claim 1, the "**Claims**") filed by Lafonza Earl Washington

("**Mr. Washington**").  Copies of the Claims are annexed hereto as **Exhibits "A"** and

"**B**," respectively.

2.      The Debtors have examined the Claims and have attempted to

ascertain the nature and validity of the Claims.  Mr. Washington is a proven serial filer

who has repeatedly filed false and vexatious lawsuits in a variety of jurisdictions.  His

Claims here are no different.  They contain no supportable legal or factual basis, and the

Debtors request the entry of an order disallowing and expunging the Claims from the

Debtors' claims register in their entirety and preserving the Debtors' right to later object

to any surviving Claims on any other basis.

### Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### The Relief Requested Should Be Approved by the Court

**I.      At a Minimum, Claim 2 Should Be
Disallowed and Expunged as Duplicative of Claim 1**

4.      On September 16, 2009, this Court entered the Bar Date Order

which, among other things, established November 30, 2009, as the Bar Date and set forth

procedures for filing proofs of claim.  The Bar Date Order requires, among other things,

that a proof of claim must "set forth with specificity" the legal and factual basis for the

alleged claim and include supporting documentation or an explanation as to why such

documentation is not available.  (Bar Date Order at 2.)

5.      On or about October 1, 2009, Mr. Washington filed Claim 1

against certain of the Debtors.  Claim 1 seeks an amount exceeding $1.6 billion for what

Mr. Washington describes as follows:

(1)     Prescribed adequate protection under 11 USC § 361(1) and
(3) requiring the trustee to make this lump sum cash
payment.

(2)     11 USC §§ 507(a)(1)(C) – the administrative expenses of
the trustee ALLOWED under paragraphs (1)(A), (2) and
(6) of section 503(B) and hereunder involved trustee is
BOUND, by law, to administer these demanded monetary
assets that ARE AVAILABLE for the payment of Lafonza
Earl Washington's claims or interests.

(3)     Monopolies and combinations engaged in by GM etc.,
long-termed and continuing have and are causing

> substantial injuries to this party's person, property, and
> multi-billion dollar business interest start up since February
> of 2003 which are PROHIBITED by antitrust laws and
> provides damages "THREEFOLD" for recovery.

(Ex. A at 3, emphasis in original.)

6.    Without describing their relevance or how they relate to his claim, Mr. Washington attached to Claim 1:

(1)    pages 1-4 and 27-30 of the Court's June 25, 2009 Final Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving a DIP Credit Facility and Authorizing the Debtors to Obtain Post-Petition Financing Pursuant Thereto, (B) Granting Related Liens and Super-Priority Status, (C) Authorizing the Use of Cash Collateral and (D) Granting Adequate Protection to Certain Pre-Petition Secured Parties;

(2)    certain definition pages of an unidentified agreement;

(3)    the docket sheet entry for docket entries 3656 and 2477 in the bankruptcy proceedings;

(4)    a Notice of Amended Motion Application by Lafonza Earl Washington that was filed on June 19, 2009, in the bankruptcy proceedings; and

(5)    Affidavit of Uniform Declaratory Judgment Act Entitled Applicant/Petitioner Lafonza Earl Washington Showing Cause for Need for Timely Issuance of Execution – To Avoid Statutorily Preventable Loss, filed in the bankruptcy proceedings, dated June 15, 2009.

7.    Additionally, on or about October 19, 2009, Mr. Washington filed Claim 2.  The form pages of Claim 2 appear to be identical to Claim 1.  The only apparent difference between Claim 1 and Claim 2 is Claim 2's exclusion of the exhibits that were attached to Claim 1.

8.      The Debtors object to Claim 2 because Claim 2 is nothing more than a duplicate of Claim 1 without the supporting documents.  The proofs of claim submitted are identical.  Both allege the same basis for the claim, and both assert the same claim amount – $1,623,107,920.00 plus an additional 15% annual interest.  To prevent the possibility of double recovery, the Debtors request that only Claim 1, which contains the supporting documentation, be permitted to be considered in the claim reconciliation process.  Mr. Washington will not be prejudiced by such a ruling, as Claim 1 is more complete than his duplicative Claim 2.

9.      In the event that these proofs of claim are not treated as a single claim in accordance with this Objection, the Debtors reserve their right to object to each Claim on other grounds at a later date.

## II.   Mr. Washington's Claims Should Be Disallowed and Expunged Because They Are Incomprehensible, Are Unsupported by Facts, <u>and Are Merely Part of a Pattern of Disallowed Filings by This Claimant</u>

### A.    <u>Mr. Washington's Prior Unsuccessful Involvement in this Bankruptcy</u>

10.     Claims 1 and 2 are not Mr. Washington's first foray into the instant chapter 11 cases.  Mr. Washington made a similar claim against the Debtors in response to the original filing of the Debtors' 363 Motion[1] on July 27, 2009.  (*See* Washington's

---

[1] Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, And 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing [Docket No. 92] (the "**363 Motion**").

Application for Ex Parte Relief[2] [Docket No. 3656], a copy of which is annexed hereto as

**Exhibit "C."**)  In this prior filing, Mr. Washington sought "$1,588,577,640.00 at 15%

annual interest or at $556,940.00 per day."  (Ex. C at 3.)

11.     On July 30, 2009, the Debtors responded to and rejected Mr.

Washington's inquiry concerning the Application for Ex Parte Relief, stating that the

"application is without merit, substance or foundation" and failed to comply with the

Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules.  (*See* July 30, 2009

Letter from H. Miller to L. Washington re: Motors Liquidation Company LLC/General

Motors Corp., a copy of which is annexed hereto as **Exhibit "D."**)

12.     In spite of this communication, Mr. Washington filed an

Application for Issuance of Writ of Execution Against Debtor General Motors

Corporation After Grant of Money Judgment/Order in Favor of Judgment Creditor

Lafonza Earl Washington and As a Final Remedy – by Law, [Docket No. 3967] (an

endorsed order [Docket No. 3999][3] denying the relief sought in the filing is annexed

---

[2] Application for Ex Pare Relief Entry-Nunc Pro Tunc-To Debtors Unnoticed Amended
Sales Order Approval (I) Authorizing Sale of Assets Pursuant to Amended and Restated
Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored
Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts
and Unexpired Leases in Connection with Sale; and (III) Granting Related Relief that
Includes the Amended Motion Application of Applicant/Petitioner Lafonza Earl
Washington Pursuant to the Federal Rules of Bankruptcy Procedures Rules 4001(d)(3)
and (4) Including the Federal Rules of Civil Procedure Rules 70, 77, 79, and Title 11
U.S.C. §§ 363 and 541 [Docket No. 3656] ("**Application for Ex Parte Relief**").

[3] Although this Objection contains citations to orders that have been entered in other
cases, these orders are cited for the sole purpose of establishing factual background rather
than as precedential authority.  Therefore, the Debtors submit that the additional
information required under paragraph 32 of the Case Management Order # 1 [Docket No.
157] is inapplicable.  To the extent the Court desires additional information with respect
to these orders, however, the Debtors stand ready to provide such information.

hereto as **Exhibit "E"**), asserting that he was owed "$1,604,171,960.00 at 15% annual

interest or at the rate of $556,940.00 per day . . . ."  (Ex. E at 1.)  Not surprisingly, ***this***

***Court rejected this claim because*** – just as here – ***it failed to*** "***show a prima-facie***

***entitlement to relief.***"  (Ex. E at 1.)  Thus, this Court has already rejected claims by Mr.

Washington in the instant case.

> **B.      Mr. Washington Is a Serial Filer**

13.      Mr. Washington's fondness for litigation—including litigation

against General Motors Corporation—is not limited to this bankruptcy.  Indeed, Mr.

Washington has a long history as a serial filer, and he has repeatedly been ordered not to

file papers absent leave of court.

14.      Mr. Washington filed *pro se* complaints in two cases styled

*Washington v. General Motors*, Case Nos. 00-75209 and 01-70659 (E.D. Mich.).  Despite

the fact that both cases had been dismissed and were closed, and despite the fact that Mr.

Washington had been ordered not to file additional papers in Case No. 01-CV-70659, Mr.

Washington continued to file pleadings without leave of court.  This prompted the

Eastern District of Michigan to enter a *second* order[4] barring Mr. Washington from filing

additional pleadings, a copy of which is annexed hereto as **Exhibit "F."**  In so ordering,

the court noted that Washington had "shown a history of filing unsubstantiated and

vexatious lawsuits."  (Ex. F at 2.)

---

[4] Order Enjoining Plaintiff from Filing Further Papers in the Above Cases and Precluding
the Filing of Future Complaints Without Leave of Court, Case No. 01-70659 (E.D.
Mich., Feb. 28, 2002) [Docket No. 52], *appeal dismissed*, No. 02-1452 (7th. Cir., June
18, 2002) (order dismissing appeal for lack of prosecution).

15.    Mr. Washington also filed a pro se complaint in *Washington v. Citizens Bank*, Case No. 01-CV-74022-DT (E.D. Mich.).  Again, Mr. Washington was ordered[5] not to file additional papers with the court, a copy of which is annexed hereto as **Exhibit "G."**  In so ordering, the court noted that Mr. Washington was an experienced pro se litigant who had filed 15 lawsuits in the Eastern District of Michigan alone.  (*See* Ex. G at 2.)  The Court there discussed the striking similarity of the broad array of his filings, i.e., "motions for mandamus relief, protective orders, preliminary injunctions, temporary restraining orders, clerk's entry of default, default judgment, joinder of claims/remedies, attorney's fees, preferential setting, grand jury investigation, recusal/disqualification of judges, etc." (*Id.*)  *Despite the court's order*, the docket, a copy of which is annexed hereto as **Exhibit "H,"** reflects that Mr. Washington *continued* filing papers in that case.

16.    Mr. Washington's serial litigation practices were also present in *In re Delphi Corp.*, Ch. 11 Case No. 05-44481 (RDD) (Bankr. S.D.N.Y).  There, Mr. Washington filed Claim Nos. 257, 264, 288, 297, 1271, 1272, and 1334.  In his pleadings in that case, Mr. Washington claimed, among other things, that he was a 33-year employee whose rights had been denied by the "GM Buick City permanent plant closing." (*See, e.g.,* Ex Parte Application by Mr. Washington at 5, which is attached to the letter from Mr. Washington dated June 4, 2006, to Clerk of Court for the United States Bankruptcy Court for the Southern District of New York, the United States Department of Justice, the Treasurer of the United States, the National Labor Relations

---

[5] Order Enjoining Plaintiff from Filing Further Papers, Case No. 01-CV-74022-DT (E.D. Mich., May 10, 2002) [Docket No. 90].

Board, the United States Secretary of Labor, the United States Secretary of Health &

Human Services, and the Department of the Treasury annexed hereto as **Exhibit "I."**).

He also made numerous wild allegations, including that he sought to escape further slave

labor, involuntary servitude, and murder-for-hire contracts on his life.  He provided no

comprehensible support for these serious allegations.  (*Id*. at 12.)

17.    The Delphi debtors filed objections[6] to his claims, annexed hereto

as **Exhibits "J"** and **"K,"** specifically noting that Mr. Washington not only was not

entitled to his claim, but also had *never* been employed by the Delphi debtors, the entire

basis of his claim.[7]  (*See* Ex. K at 4.)  According to the www.delphidocket.com website

maintained by the Bankruptcy Court appointed claims agent in the Delphi cases, the

relevant portion of which is annexed hereto as **Exhibit "L,"** all of Mr. Washington's

claims in *In re Delphi* were ultimately expunged.

**C.    Mr. Washington's Allegations Here
Do Not Form the Basis of a Cognizable Claim**

18.    The Debtors have done their best to cobble together the various

statements made in the Claims in an attempt to understand whether any cognizable claim

---

[6] Debtors' Response to Lafonza Earl Washington Demand for Immediate Distribution, Ch. 11 Case No. 05-44481 (RDD) (Bankr. S.D.N.Y., July 12, 2006) [Docket No. 4535] and Debtors' Supplement Reply to the Response of Lafonza Earl Washington to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(B) and Fed. R. Bankr. P. 3007 to Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated by Debtors' Books and Records, and (c) Claims Subject to Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c), Ch. 11 Case No. 05-44481 (RDD) (Bankr. S.D.N.Y., January 2, 2007) [Docket No. 6374].

[7] Mr. Lafonza was hired by General Motors Corporation on October 7, 1976, and began service on February 23, 1977.  He has been on leave of absence since September 7, 1999.  He is not a current employee of MLC.

exists against the Debtors, but to no avail.  Mr. Washington's case here is much like those

before it.  He has made wild allegations that have no factual or legal support.  The

primary facts that appear to form the basis of Mr. Washington's claim in these chapter 11

cases are laid out in an affidavit from another proceeding (attached as the last four

unnumbered pages of Claim 1).  The affidavit asserts that he is the "implied" judgment

creditor based on the Order and Final Judgment[8] in *International Union v. General

Motors Corp.*, Case No. 07-CV-14074-DT (E.D. Mich., July 31, 2008) [Docket No. 66],

a copy of which is annexed hereto as **Exhibit "M"**.[9]

          19.     Ironically, the facts in the *International Union* matter are decidedly

irrelevant to any claim Mr. Washington could assert here.  Indeed, in the very class-

action case Mr. Washington insists supports his claim, the court not only *did not* permit

his claim, but also entered an order[10] precluding Mr. Washington from filing additional

pleadings, a copy of which is annexed hereto as **Exhibit "O."**  Importantly, the court

specifically noted that Mr. Washington was *not an objector or a party in interest* in the

lawsuit.  The court continued by noting that "Washington has developed a history of

habitually refusing to obey the directives of the judges of this court."  (Ex. O at 1.)

Citing *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984), *remanded to* 592 F.

---

[8] The judgment in *International Union* was in the amount of $1 billion.  It is possible that
Mr. Washington's derives his $1,623,107,920.00 claim here from the $1 billion judgment
with interest added.  However, as discussed herein, Mr. Washington was not a party in
interest in *International Union*.

[9] Mr. Washington also references the "unauthorized" Findings of Facts and Conclusions
of Law  that he claims were prohibited by the Federal Rules of Civil Procedure, which is
annexed hereto as **Exhibit "N."**

[10] Order Precluding Lafonza Washington from Filing Papers, Case No. 07-CV-14074-DT
(E.D. Mich., Sept. 5, 2008) [Docket No. 69].

Supp. 1566 (1984), *aff'd,* 763 F.2d 140 (1985), *cert. denied*, 474 US 1061 (1986), the

court held that it would prohibit Washington from making future filings to protect its

jurisdiction from vexatious litigants abusing the judicial process.  (*Id.* at 2.)

**D.    Mr. Washington Has Failed to
Show Prima Facie Entitlement to Relief**

20.    Although the factual support for the Claims appears to come

primarily from Mr. Washington's affidavit and the *International Union* matter, he has

also enumerated three legal theories that he alleges justify his Claims.  However, these

are without merit or support and thus fail to show a *prima facie* entitlement to relief.  In

order to be deemed *prima facie* valid, a proof of claim must "set forth facts necessary to

support the claim."  *See In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).  None of

the three bases for his Claims are factually or legally supportable.

21.    First, Mr. Washington claims that he is entitled to "[p]rescribed

adequate protection under 11 USC § 361(1) and (3) requiring the trustee to make this

lump sum cash payment."  (Ex. A at 3.)  The Second Circuit has described the context in

which a creditor may seek adequate protection:

> The filing of a Chapter 11 bankruptcy petition triggers an
> automatic stay of any judicial proceeding or other act
> against the property of the estate that was or could have
> been commenced before the filing of the petition.  When
> the automatic stay endangers "an interest of an entity in
> property" of the estate, that entity may receive
> "adequate protection" in the form of cash payments, a lien,
> or "such other relief . . . as will result in the realization by
> such entity of the indubitable equivalent of such entity's
> interest in such property." . . . The adequate protection
> provision of 11 U.S.C. § 361 ***protects only secured
> creditors***.

*In re R & G Props., Inc.*, Ch. 11 Case No. 08-10876, 2009 WL 2043875, at *4 (Bankr. D.

VT July 6, 2009) (emphasis added) (quoting *In re Diary Mart Convenience Stores, Inc.*,

351 F.3d 86, 90 (2d Cir. 2003)).  Mr. Washington has not put forth any fact that

establishes him as a secured creditor, and his assertion has no merit.  Indeed, in the case

that Mr. Washington cites to in support of his claim, the court found that he was neither

an objector nor party in interest.  Additionally, the Debtors' books and records do not

identify Mr. Washington as a creditor, secured or otherwise.

22.     Second, Mr. Washington states that he is entitled to his claim

because of "11 USC §§ 507(a)(1)(C) – the administrative expenses of the trustee

ALLOWED under paragraphs (1)(A), (2) and (6) of section 503(B) and hereunder the

involved trustee is BOUND, by law, to administer these demanded monetary assets that

ARE AVAILABLE for the payment of Lafonza Earl Washington's claims or interests."

(Ex. A at 3, emphasis original.)  Mr. Washington is not a trustee of the Debtors' estates or

any property of the estates.

23.     Third, Mr. Washington asserts that he is entitled to recover because

"[m]onopolies and combinations engaged in by GM etc., long-termed and continuing

have and are causing substantial injuries to this party's person, property, and multi-billion

dollar business interest start up since February of 2003 which are PROHIBITED by

antitrust laws and provides damages "THREEFOLD" for recovery."  (Ex. A at 3.)

24.     There is no description of what alleged antitrust violation is at

issue, how the Debtors' actions could have possibly amounted to a violation of a specific

antitrust law, how standing to assert such a claim is conferred upon Mr. Washington,

and/or how that violation injured Mr. Washington in any fashion.  This failure to assert

any facts supporting an alleged violation of antitrust law demonstrates that the Claims are insufficient. *See Marino*, 90 B.R. at 28.[11]

26. An analysis of whether a proof of claim has provided the necessary support "is a substantive question to be determined by reference to applicable state law." *See In re Chain*, 255 B.R. 278, 280 (Bankr. D. Conn. 2000) (citing *Butner v. United States*, 440 U.S. 48 (1979) ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims.")). In analyzing the substance of an antitrust or monopoly-based claim, New York courts are guided by federal antitrust laws. *See Pacesetter Commc'ns Corp. v. Solin & Breindel, P.C.*, 150 A.D.2d 232, 235 (N.Y. App. Div. 1989), *appeal dismissed*, 74 N.Y.2d 892 (1989).

26. While it is impossible to determine what Mr. Washington is alleging, a private cause of action for an antitrust violation under the Clayton Act requires proof that the plaintiff "(1) suffered an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the [antitrust] statute." *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004). Washington makes no factual allegations that would satisfy any of these factors. Therefore, the Claims should be disallowed and expunged for failure to state a claim. *See* 11 U.S.C. § 502(b).

27. Mr. Washington has provided nothing that would support recovery under any of the three theories he has cited. Moreover, his own affidavit cites to a case where the court not only found Mr. Washington was not an objector or party in interest,

---

[11] Mr. Washington also made similar antitrust allegations in *In re Delphi*, but as noted above, those claims were expunged.

but also barred him from making additional filings with the court.  The Claims, as filed, fail to satisfy the facial requirements of the Bankruptcy Rules and should be disallowed and expunged.

  **E.**  **The Claims Fail to Comply with the Bar Date Order**

  28.  As a further basis for disallowance, the Claims fail to comply with the Bar Date Order.  The Bar Date Order dictates, among other things, that "Proofs of Claim must . . . set forth with specificity the legal and factual basis for the alleged Claim. . ." (Bar Date Order at 2.)  The Claims do neither.  Mr. Washington provides no supportable basis for why he is entitled to a claim of over $1.6 billion and, therefore, the Claims should be disallowed and expunged.

      **Reservation of Rights**

  29.  This Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the right of the Debtors or any other interested party to object to the Claims on any other ground whatsoever, and the Debtors expressly reserve all further substantive and/or procedural objections they may have.

      **Notice**

  30.  Notice of this Motion has been provided to Mr. Washington and to the parties in interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No. 3629].  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

  31.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting

the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        January 29, 2010

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# Exhibit  A

01914768
APS0611273631




| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

**Name of Debtor (Check Only One)**

| | Case No |
|---|---|
| ☒ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc) | 09-13558 (REG) |

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case  but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

**Your Claim is Scheduled As Follows.**

11 USC § 502(a)
"allowed"
eligible for payment

3003(c)(4)
superseded scheduling

Name of Creditor (the person or other entity to whom the debtor owes money or property)   WASHINGTON LAFONZA EARL

Name and address where notices should be sent

WASHINGTON  LAFONZA EARL
7010 CRANWOOD DRIVE
FLINT, MI 48505-5425

FILED - 02109

MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number._____
*(If known)*

Filed on  June 19, 2009

Telephone number  810.922.0308
Email Address

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount )  If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file it again

Name and address where payment should be sent (if different from above)

JPMorgan Chase Bank N.A.
6481 W. Pierson Road
Flushing, Michigan  48433
* Checking Acct #:...6090
Routing              #:072000326
Telephone number  810 659 4986

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

**1  Amount of Claim as of Date Case Filed, June 1, 2009**   $ 1,623,107,920.00

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is secured pursuant to 11 U S C § 503(b)(9), complete item 5

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim**  PLEASE SEE ATTACHMENT
(See instruction #2 on reverse side )

**3  Last four digits of any number by which creditor identifies debtor:** ...2515

3a  Debtor may have scheduled account as.  nonscheduled/nonschedulable
(See instruction #3a on reverse side )

**4  Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☒ Other
Describe:  monetary property or cash

Value of Property $_____  Annual Interest Rate 15% Amount: $1,623,107,920.00

Amount of arrearage and other charges as of time case filed included in secured claim, if any $ 1,623,107,920

Basis for perfection  PLEASE SEE ATTACHMENT

Amount of Secured Claim $_____   Amount Unsecured $ 1,623,107,920.00

**6  Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  *(See instruction 7 and definition of "redacted" on reverse side )*

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5  Amount of Claim Entitled to Priority under 11 U S C § 507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount**

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☒ Other – Specify applicable paragraph of 11 U S C § 507(a)(1) (C) .

**Amount entitled to priority:**

$ 1,623,107,920.00

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Date.
Sept. 29, 2009

**Signature** The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

*[signature]*

**FOR COURT USE ONLY**

*[stamp: THE GARDEN CITY GROUP, INC.  OCT 1 2009]*

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc., are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS  IF BY MAIL  THE GARDEN CITY GROUP, INC , ATTN  MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P O  BOX 9386, DUBLIN, OH 43017-4286  IF BY HAND OR OVERNIGHT COURIER  THE GARDEN CITY GROUP, INC , ATTN  MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017  PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004  ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

**THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 PM   (PREVAILING EASTERN TIME)**

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on  June 1, 2009  You should select the debtor against which you are asserting your claim
A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case  Please provide us with a valid email address  A separate space is provided for the payment address if it differs from the notice address  The creditor has a continuing obligation to keep the court informed of its current address  See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing  Follow the instructions concerning whether to complete items 4 and 5  Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card  If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information  You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured  Skip this section if the claim is entirely unsecured (See DEFINITIONS, below ) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below )  A claim may be partly priority and partly non-priority  For example, in some of the categories  the law limits the amount entitled to priority

For claims pursuant to 11 U S C  § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below)  Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt  You may also attach a summary  You must also attach copies of documents that evidence perfection of any security interest  You may also attach a summary  FRBP 3001(c) and (d)  If the claim is based on the delivery of health care goods or services, see instruction 2  Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it  FRBP 9011  If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature  Print the name and title, if any, of the creditor or other person authorized to file this claim  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices  Attach a complete copy of any power of attorney  Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company | |
| (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC | |
| (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation | |
| (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc | |
| (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing  See 11 U S C § 101(5)  A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing  The creditor must file the form with The Garden City Group  Inc  as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor  The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors  The amount of the secured claim cannot exceed the value of the property  Any amount owed to the creditor in excess of the value of the property is an unsecured claim  Examples of liens on property include a mortgage on real estate or a security interest in a car  A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding  In some states, a court judgment is a lien  A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim  A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information  A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims  One or more of these entities may contact the creditor and offer to purchase the claim  Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor  These entities do not represent the bankruptcy court or the debtor  The creditor has no obligation to sell its claim  However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

### INFORMATION

## *ATTACHMENT*

2.  (i)  Prescribed adequate protection under 11 USC § 361 (1) and (3)
         requiring the trustee to make this lump sum cash payment.

    (ii) 11 USC §§ 507 (a) (1) (C) - the administrative expenses of the
         trustee ALLOWED under paragraphs (1) (A), (2) and (6) of
         section 503 (B) and hereunder the involved trustee is BOUND,
         by law, to administer these demanded monetary assets that ARE
         AVAILABLE for the payment of Lafonza Earl Washington's claims
         or interests.

    (iii) Monopolies and combinations engaged in by GM etc., long-termed
         and continuing have and are causing substantial injuries to
         this party's person, property, and multi-billion dollar
         business interest start up since February of 2003 which are
         PROHIBITED by antitrust laws and provides damages "THREEFOLD"
         for recovery.

4.  Basis for perfection:
    FINAL ORDER including §§ 361, 507 priority bankruptcy Rule, 4001
    ex part relief...1104 trustee administrative expenses; (eliminates
    any/all 3007 objections).

Dated: September 29, 2009

BY: Lafonza Earl Washington
CREDITOR
P.O. Box 966
Grand Blanc, MI 48480
Tel: 810.922.0308

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In re·                                                  ··    Chapter 11
;                                                       ··    Case No. 09-50026 (REG)
General Motors Corporation, *et al*,                    ·
                                                        :    (Jointly Administered)
                                   Debtors              ·
-------------------------------------------------------------- x

## FINAL ORDER PURSUANT TO BANKRUPTCY
CODE SECTIONS 105(a), 361, 362, 363, 364 AND 507 AND BANKRUPTCY
RULES 2002, 4001 AND 6004 (A) APPROVING A DIP CREDIT FACILITY
AND AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING
PURSUANT THERETO, (B) GRANTING RELATED LIENS AND SUPER-PRIORITY
STATUS, (C) AUTHORIZING THE USE OF CASH COLLATERAL AND (D)
GRANTING ADEQUATE PROTECTION TO CERTAIN
<u>PRE-PETITION SECURED PARTIES</u>

THIS MATTER having come before this Court by the motion dated June 1, 2009

(the "<u>Motion</u>") of General Motors Corporation ("<u>GM</u>") and its affiliated debtors in the above-

captioned cases, as debtors and debtors-in-possession (collectively with GM, the "<u>Debtors</u>"),[1]

seeking, among other things, entry of a final order (the "<u>Final Order</u>").

(i)      Authorizing the Debtors, pursuant to sections 105, 362, 363 and 364 of

title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 6004

of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001

of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local</u>

<u>Bankruptcy Rules</u>"), to enter into the Secured Superpriority Debtor-in-Possession

Credit Agreement by and among GM, as borrower, and The United States Department of

the Treasury ("<u>U.S. Treasury</u>") and Export Development Canada ("<u>EDC</u>"), as lenders

---

[1]     The Debtors in these cases include: GM, Saturn, LLC, Saturn Distribution Corporation, and
Chevrolet-Saturn of Harlem, Inc

(together, the "**DIP Lenders**"), in substantially the form annexed hereto as Exhibit 1 (as

the same may be amended, supplemented, restated or otherwise modified from time to

time, and together with all related agreements and documents, the "**DIP Credit**

**Facility**"), and to obtain post-petition financing on a secured and super-priority basis

pursuant to the terms and conditions thereof, up to a maximum aggregate amount of

$33.3 billion (the "**Commitment**");

     (ii)    Authorizing the Debtors to execute and deliver the DIP Credit Facility and

to perform such other acts as may be reasonably necessary or desirable in order to give

effect to the provisions of the DIP Credit Facility, including the unconditional, joint and

several guaranty of the obligations of GM under the DIP Credit Facility by each other

Debtor (each, a "**Guarantor**", and collectively, the "**Guarantors**");

     (iii)    Providing, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy

Code, that all obligations owing to the DIP Lenders under the DIP Credit Facility shall be

accorded administrative expense status in each of these cases, and shall, subject only to

the Carve-Out (as defined below), have priority over any and all other administrative

expenses arising in these cases, _provided, however,_ that subsequent to the closing of the

Related Section 363 Transactions (as defined in the DIP Credit Facility), claims against

the Debtors' estates that have priority under Sections 503(b) or 507(a) of the Bankruptcy

Code, including costs and expenses of administration that are attendant to the formulation

and confirmation of a liquidating chapter 11 plan, whether incurred prior or subsequent

to the consummation of the Related Section 363 Transactions (the "**Old GM**

**Administrative and Priority Claims**") shall have priority over such obligations (up to

the aggregate amount of $950,000,000; _provided, however,_ that any greater amount shall

be subject to approval by the DIP Lenders) owing to the DIP Lenders under the DIP
Credit Facility, and

(iv)    Granting the DIP Lenders security interests in and liens on (the "**DIP
Liens**") all property and assets of each of the Debtors, of every kind or type whatsoever,
including tangible, intangible, real, personal or mixed, whether now owned or hereafter
acquired or arising, wherever located, all property of the estates of each of the Debtors
within the meaning of section 541 of the Bankruptcy Code and all proceeds, rents and
products of the foregoing, (including all avoidance actions arising under chapter 5 of the
Bankruptcy Code and applicable state law except avoidance actions against the
Prepetition Senior Facilities Secured Parties (as defined below)) with the exception of (a)
any stocks, warrants, options or other equity interests issued to or held by any Debtor
pursuant to the Related Section 363 Transactions (the "**New GM Equity Interests**"), (b)
any leasehold interest of the Debtors in (i) the real property located at and commonly
known as 301 Freedom Drive, City of Roanoke, Denton County, Texas or (ii) the real
property located at and commonly known as 475 Brannan Street, City and County of San
Francisco, California; and (c) certain Excluded Collateral (as defined in the DIP Credit
Facility) (collectively, "**Property**") as follows

(A)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, perfected,
first-priority security interests in and liens on all Property that is not
subject to non-avoidable, valid and perfected liens in existence as of the
Petition Date (as defined herein) (or to non-avoidable valid liens in
existence as of the Petition Date that are subsequently perfected as
permitted by section 546(b) of the Bankruptcy Code), in each case subject

only to (1) the Permitted Liens (as defined in the DIP Credit Facility), (2)
the Carve-Out, (3) the adequate protection liens granted in connection
with the Prepetition Revolving Credit Agreement pursuant to paragraph
6(b)(1)(x) of the Interim Order (the "**Prepetition Revolving Credit
Agreement Order**") Under 11 U S.C. §§ 105, 361, 362, 363 and FED. R.
BANKR P 2002, 4001 And 9014 (I) Authorizing Debtors to Use Cash
Collateral, (II) Granting Adequate Protection to Prepetition Revolver
Secured Parties and (III) Scheduling a Final Hearing Pursuant to
Bankruptcy Rule 4001(B) (the "**Prepetition Revolving Credit
Agreement Adequate Protection Liens**"), and (4) the adequate
protection liens granted in connection with the Prepetition Term Loan
Agreement pursuant to paragraph 5(b)(i) of the Interim Order (the
"**Prepetition Term Loan Facility Order**", and together with the
Prepetition Revolving Credit Agreement Order, the "**Prepetition
Revolving And Term Loan Orders**") Under 11 U S.C §§ 105, 361, 362,
363 and FED. R. BANKR P 2002, 4001 and 9014 (I) Granting Adequate
Protection to Term Loan Secured Parties and (II) Scheduling a Final
Hearing Pursuant to Bankruptcy Rule 4001(B) (the "**Prepetition Term
Loan Adequate Protection Liens**", and together with the Prepetition
Revolving Credit Agreement Adequate Protection Liens, the "**Prepetition
Revolving And Term Adequate Protection Liens**");

(B)     pursuant to section 364(c)(3) of the Bankruptcy Code, valid, perfected
junior security interests in and liens on all Property that is subject to non-

investments to any person not a Borrower or Guarantor other than for certain permitted exceptions set forth in the DIP Credit Facility

21.    On or substantially contemporaneous with the closing of the Related Section 363 Transactions, the Tranche C Term Loan (as such term is defined in the DIP Credit Facility) in an amount not less than $950,000,000 shall be provided to the Borrower in accordance with section 2 14 of the DIP Credit Facility to fund the wind-down of the Debtors (the "**Wind-Down Facility**")    The funding of the Wind-Down Facility shall be subject to an appropriate amendment to the DIP Credit Facility, acceptable to the Debtors and the DIP Lenders, which amendment shall be subject to approval by this Court on three days notice after the filing of a motion seeking approval of the Wind-Down Facility    The Committee shall be copied on all drafts of the credit agreement related to the Wind-Down Facility and the Wind-Down Budget (as defined in the DIP Credit Facility) that are circulated between the Debtors and the DIP Lenders and shall be included in all substantive negotiations of the Wind-Down Facility and the Wind-Down Budget between the Debtors and the DIP Lenders

22    In the event of any inconsistency between the terms and conditions of the DIP Credit Facility or the Interim Order and this Final Order, the terms and conditions of this Final Order shall control

23    The parties to the DIP Credit Facility may, from time to time, enter into waivers or consents with respect thereto without further order of this Court    In addition, the parties to the DIP Credit Facility may, from time to time, enter into amendments with respect thereto without further order of this Court, provided, that, (A) the DIP Credit Facility, as amended, is not materially different from the form approved by this Final Order, (B) notice of all amendments is filed with this Court, and (C) notice of all amendments (other than those that are

ministerial or technical and do not adversely affect the Debtors) are provided in advance to counsel for the Committee and any other statutory committee, all parties requesting notice in these cases and the United States Trustee  For purposes hereof, a "material" difference from the form approved by this Final Order shall mean any difference resulting from a modification that operates to (1) shorten the maturity of the extensions of credit under the DIP Credit Facility or otherwise require more rapid principal amortization than is currently required under the DIP Credit Facility, (2) increase the aggregate amount of any of the commitments thereunder, (3) increase the rate of interest or any other fees or charges payable thereunder (other than to the extent contemplated in the DIP Credit Facility as in effect on the date of this Final Order), (4) add specific new Events of Default (as defined in the DIP Credit Facility) or shorten the notice or grace period in respect to any Default (as defined in the DIP Credit Facility) or Event of Default currently in the DIP Credit Facility, (5) enlarge the nature and extent of default remedies available to the DIP Lenders or agents under the DIP Credit Facility following the occurrence and during the continuance of an Event of Default, (6) add additional financial covenants or make any financial covenant or other negative or affirmative covenant or representation and warranty more restrictive on the Debtors, or (7) otherwise modify the DIP Credit Facility in a manner materially less favorable to the Debtors and their estates.

24.     This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, and shall be deemed effective and enforceable immediately upon its entry and nunc pro tunc to the Petition Date.

25.     The rights, benefits, and privileges granted pursuant to this Final Order (including, without limitation, the DIP Liens, the Super-priority Claim, the Adequate Protection

Liens and the Adequate Protection Claim granted herein) shall attach and be enforceable against the bankruptcy estate of any direct or indirect subsidiary of the Debtors that is a party to the DIP Credit Facility and which hereafter becomes a debtor in these procedurally consolidated cases automatically and without further court order on a final basis  Except as may be provided in this Final Order, such subsidiary shall be deemed a "Debtor" hereunder effective as of the date such subsidiary files a petition and becomes a debtor in these cases

26.    Except as otherwise provided in this Final Order, the provisions of the DIP Credit Facility and the provisions of this Final Order, including all findings of fact and conclusions of law set forth herein, shall, immediately upon entry of this Final Order in these cases, become valid and binding upon the Debtors, the DIP Lenders, the Existing UST Secured Parties, all other creditors of the Debtors, the Committee, any other statutory committee and all other parties in interest in these cases and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of any Debtor's estate in these cases or in any subsequent chapter 7 case.  In no event shall the DIP Lenders, whether in connection with the exercise of any rights or remedies under the DIP Credit Facility, hereunder or otherwise, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Lenders do not constitute, within the meaning of 42 U.S C  § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response,

Compensation and Liability Act, sections 9601 et seq of title 42, United States Code, as amended, or any similar federal or state statute)

27    The Committee shall receive the same reports provided by the Debtors to the DIP Lenders under section 5.2 of the DIP Credit Facility.

28    The Debtors have provided adequate and sufficient notice of the Final Hearing and this Final Order as required under section 364 of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules and Rule 4001-2 of the Local Bankruptcy Rules

29.    The Final Hearing was held pursuant to Rule 4001 of the Bankruptcy Rules.

30.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the DIP Credit Facility, the Interim Order and this Final Order in all respects, provided, however, that in the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

Dated, **June 25, 2009**
New York, New York

**/s/ Robert E. Gerber**
HON ROBERT E GERBER
UNITED STATES BANKRUPTCY JUDGE

day of such change in the Prime Rate, the Federal Funds Effective Rate or the three month Eurodollar Rate, respectively.

"ABR Loans".  Loans the rate of interest applicable to which is based upon the ABR

"Additional Guarantor"·  as defined in Section 5 23

"Administrative/Priority Claim Payment Amount".  any positive amount equal to the difference between $200,000,000 and the aggregate amount paid or payable (or specifically reserved for payment as such) to satisfy all of the administrative and priority claims comprising the Administrative/ Priority Claim Tranche

"Administrative/ Priority Claim Payment Date".  the first Business Day after which the administrative and priority claims that comprise the Administrative/ Priority Claim Tranche are satisfied in full or otherwise finalized so that no such claims remain outstanding and unsatisfied, but in no case later than the date on which a liquidation plan with respect to the Debtors is approved by the Bankruptcy Court and declared effective

"Administrative/Priority Claim Tranche".  an amount under the Wind-Down Budget up to $200,000,000 that was allocated as of the Effective Date to cover anticipated (i) administrative claims related to contract rejections by the Debtors and (ii) priority claims against the Debtors, each as further described in the Wind-Down Budget.  The description of the administrative and priority claims that are to be set forth in the Wind-Down Budget shall reflect such categories, provisions and assumptions such that a good faith estimate, as of the Effective Date, of the sum of the obligations arising from the claims referenced in clauses (i) and (ii) above shall be at least equal to $200,000,000

"Affiliate".  with respect to any Person, any other Person which, directly or indirectly, controls, is controlled by, or is under common control with, such Person  For purposes of this Agreement, "control" (together with the correlative meanings of "controlled by" and "under common control with") means possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by contract, or otherwise  For the avoidance of doubt, pension plans of a Person and entities holdings the assets of such plans, shall not be deemed to be Affiliates of such Person

"Aggregate Exposure Percentage"  with respect to any Lender at any time, the ratio (expressed as a percentage) of such Lender's aggregate but unpaid principal amount of such Lender's Loans at such time to the sum of the aggregate but unpaid principal amount of all Lenders' Loans at such time

"Agreement"  as defined in the preamble hereto

"Anti-Money Laundering Laws": as defined in Section 3 18(d)

"Applicable Law".  as to any Person, all laws (including common law), statutes, regulations, ordinances, treaties, judgments, decrees, injunctions, writs and orders of any court,

governmental agency or authority and rules, regulations, orders, directives, licenses and permits of any Governmental Authority applicable to such Person or its property or in respect of its operations

"Applicable Margin"    (A) 2 0% per annum in the case of ABR Loans and (B) 3 0% per annum in the case of Eurodollar Loans

"Assignee": as defined in Section 8 6(b).

"Assignment and Assumption": an Assignment and Assumption, substantially in the form of Exhibit C.

"Bankruptcy Code".  the United States Bankruptcy Code, 11 U.S.C. Section 101 *et seq*

"Bankruptcy Court".  the United States Bankruptcy Court for the Southern District of New York (together with the District Court for the Southern District of New York, where applicable)

"Bankruptcy Exceptions"  limitations on, or exceptions to, the enforceability of an agreement against a Person due to applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally or the application of general equitable principles, regardless of whether such enforceability is considered in a proceeding at law or in equity.

"Bankruptcy Rules":  the Federal Rules of Bankruptcy Procedure and local rules of the Bankruptcy Court, each as amended, and applicable to the Cases.

"Benefitted Lender":  as defined in Section 8.7(a)

"Board":  the Board of Governors of the Federal Reserve System of the United States (or any successor).

"Borrower".  as defined in the recitals.

"Business Day".  any day other than a Saturday, Sunday or other day on which banks in New York City or Ottawa, Ontario, Canada are permitted to close; provided, however, that when used in connection with a Eurodollar Loan, the term "Business Day" shall also exclude any day on which banks are not open for dealings in Dollar deposits in the London Interbank market

"Canadian Lender":  Export Development Canada, a corporation established pursuant to the laws of Canada, and its successors and assigns.

"Canadian Lender Consortium Members":  each of the Export Development Canada, the Government of Canada and the Government of Ontario.

"Canadian Post-Sale Facility": the Amended and Restated Loan Agreement, dated as of the [Effective Date], by and among General Motors of Canada Limited, as borrower, the other loan parties thereto, and the Canadian Lender

"Canadian PV Loan Agreement": the Loan Agreement, dated as of the [Effective Date], by and among New CarCo, as borrower, the other loan parties thereto, and the Canadian Lender

"Capital Lease Obligations" for any Person, all obligations of such Person to pay rent or other amounts under a lease of (or other agreement conveying the right to use) Property to the extent such obligations are required to be classified and accounted for as a capital lease on a balance sheet of such Person under GAAP, and, for purposes of this Agreement, the amount of such obligations shall be the capitalized amount thereof, determined in accordance with GAAP

"Capital Stock": any and all equity interests, including any shares of stock, membership or partnership interests, participations or other equivalents whether certificated or uncertificated (however designated) of a corporation, limited liability company, partnership or any other entity, and any and all similar ownership interests in a Person and any and all warrants or options to purchase any of the foregoing.

"Carve-Out". as defined in the Orders.

"Cases": the Initial Cases and each other case of a Debtor filed with the Bankruptcy Court and joined with the Initial Cases.

"Cash Equivalents" , shall mean (a) Dollars, or money in other currencies received in the ordinary course of business, (b) securities with maturities of one (1) year or less from the date of acquisition issued or fully guaranteed or insured by the United States or Canadian government or any agency thereof, (c) securities with maturities of one (1) year or less from the date of acquisition issued or fully guaranteed by any state, province, commonwealth or territory of the United States or Canada, by any political subdivision or taxing authority of any such state, commonwealth or territory or by any foreign government, the securities of which state, commonwealth, territory, political subdivision, taxing authority or foreign government (as the case may be) are rated at least "A" by S&P or "A" by Moody's or equivalent rating, (d) demand deposit, certificates of deposit and time deposits with maturities of one (1) year or less from the date of acquisition and overnight bank deposits of any commercial bank, supranational bank or trust company having capital and surplus in excess of $500,000,000, (e) repurchase obligations with respect to securities of the types (but not necessarily maturity) described in clauses (b) and (c) above, having a term of not more than 90 days, of banks (or bank holding companies) or subsidiaries of such banks (or bank holding companies) and non-bank broker-dealers listed on the Federal Reserve Bank of New York's list of primary and other reporting dealers ("Repo Counterparties"), which Repo Counterparties have capital, surplus and undivided profits aggregating in excess of $500,000,000 (or the foreign equivalent thereof) and which Repo Counterparties or their parents (if the Repo Counterparties are not rated) will at the time of the transaction be rated "A-1" by S&P (or such similar equivalent rating) or higher by at least one nationally recognized statistical rating organization, (f) commercial paper rated at least A-1 or the equivalent thereof by S&P or P-1 or the equivalent thereof by Moody's and in either

Search Documents

Docket Date                          (mm/dd/yyyy) To (optional)
                    (mm/dd/yyyy)

Docket No..    3656    To (optional)·

Search Description for·

Search Within Results

[ Search ]      [ Clear Search Results ]

## Court Documents

United States Bankruptcy Court Southern District of New York
*In re Motors Liquidation Company*
Case No. 09-50026

### 1 Results Found

*The docket is currently displayed in reverse chronological order  To display the docket in chronological order, please click here*

| Date | Court Docket Number | Description |
|------|--------------------|-------------|
| 07/30/2009 | 3656 | Application for Ex Parte Relief Entry - Nunc Pro Tunc - To Debtors' Unnoticed Amended sales Order Approval (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc. a U S  Treasury Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale· and (III) Granting Related Relief that Includes the Amended Motion Application of Applicant/Petitioner LaFonza Earl Washington Pursuant to the Federal Rules of Bankruptcy |

· Home

Procedure Rules 4001(d)(3) and (4) Including the Federal · Case
Rules of Civil Procedure Rules 70, 77, 79, and Title 11
U S.C section 363 and 541 filed by LaFonza Earl
Washington (Ho, Amanda) (Entered 08/04/2009)

Information
* Key Documents
* First Day Motions
  and Orders
* 363 Transaction Pleadings
* UAW-Related Court Documents
* Stock Trading Order and Related Information
* Court Documents
* Scheduled Hearings
* Claims Register

© 2009 The Garden City Group, Inc. - All Rights Reserved

Search Documents

Docket Date.                    (mm/dd/yyyy) To (optional):
(mm/dd/yyyy)

Docket No · 2477        To (optional):

Search Description for

    Search Within Results

[ Search ]    [ Clear Search Results ]

## Court Documents

United States Bankruptcy Court Southern District of New York
*In re Motors Liquidation Company*
Case No. 09-50026

### 1 Results Found

*The docket is currently displayed in reverse chronological order. To display the docket in chronological order, please click here*

| Date | Court Docket Number | Description |
|------|------|------|
| 06/19/2009 | 2477 | Objection to Debtors' Motion filed by LaFonza Earl Washington. (Ho, Amanda) (Entered: 06/25/2009) |

- Home
- Case Information
- Key Documents
- First Day Motions and Orders
- 363 Transaction Pleadings
- UAW-Related Court Documents
- Stock Trading Order and Related Information
- Court Documents
- Scheduled Hearings
- Claims Register

Lafonza Earl Washington
Applicant/Petitioner
7010 Cranwood Drive
Flint, MI  48505
Tel:  810.922.0308

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------X

IN RE                               :   Chapter 11
                                    :
GENERAL MOTORS CORP., et al.,       :   Case No. 09-50026 (REG)
                                    :
            Debtors.                :   (JOINTLY ADMINISTERED)
                                    :
-------------------------------------X   JURY TRIAL (DEMAND) *PRESERVED*

## NOTICE

OF "AMENDED MOTION APPLICATION" BY LAFONZA EARL
WASHINGTON TO BE IMMEDIATELY GRANTED ON THE SAME
DATE AS DEBTORS' NOTICE OF SALE HEARING TO SELL
SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO
MASTER SALE AND PURCHASE AGREEMENT WITH VEHICLE
ACQUISITION HOLDING LLC, A U.S. TREASURY-SPONSORED
PURCHASER WITH RESPONSE AND PETITION TO COMPEL
PAYMENT IN THE NATURE OF A PEREMPTORY WRIT OF
MANDAMUS INVOLVING RES ADJUDICATA AND COLLATERAL
ESSTOPPEL ISSUES PREVIOUSLY DISPOSED OF IN DEFENDANT
GENERAL MOTORS CLASS ACTION'S ORDER, FINAL JUDGMENT
AND OUT OF COURT SETTLEMENT AGREEMENT IN CASE NO.
07-CV-14074 IN THE U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION
(DETROIT) PURSUANT TO THE BELOW-CITED SECTIONS OF
TITLES 11, 28, AND 31 of the UNITED STATES CODE
                    OR
IF THIS "OWNER'S" MONEY IS NOT PAID IMMEDIATELY
DEMANDED "WITHDRAWAL" OF THIS ENTIRE PROCEEDING
BASED ON 28 U.S.C. §§ 157(d), 1334 (e) ETC.,
MOTION IS FILED-PETITIONER WASHINGTON DOES NOT
"CONSENT" TO THE BANKRUPTCY JUDGE/COURT DETERMINING
THAT RESOLUTION OF THESE QUESTIONABLE PROCEEDINGS
REQUIRES CONSIDERATION OF BOTH TITLE 11 AND OTHER
LAWS OF THE UNITED STATES REGULATING ORGANIZATIONS
OR ACTIVITIES AFFECTING INTERSTATE COMMERCE AND
DEMANDS A JURY TO FIND ALL FACTS IN THE PROPER
VENUED U.S. DISTRICT COURT

- 2 -

TO:  United States Bankruptcy Court
     Vito Geena, Clerk
                and
     WEIL, GOTSHAL & MANGES LLP
     Attorneys for the Debtors
     Attn:  Harvey R. Miller, Esq.
            Stephen Karotkin, Esq.
            Joseph H. Smolinsky, Esq.
                and
     U.S. Attorney's Office
     Southern District of New York
     Attn:  David S. Jones, Esq.
            Matthew L. Schwartz, Esq.
                and
     CADWALADER, WICKERSHAM & TAFT LLP
     Attorneys for the Purchaser
     Attn:  John J. Rapisardi, Esq.
                and
     CLEARY, GOTTLIEB, STEEN & HAMILTON LLP
     Attorneys for the UAW
     Attn:  James L. Bromley, Esq.
                and
     COHEN, WEISS & SIMON LLP
     Attorneys for the UAW
     Attn:  Babette Ceccotti, Esq.
                and
     VEDDER PRICE, P.C.
     Attorneys for Export Development Canada
     Attn:  Michael J. Edelman, Esq.
            Michael L. Schein, Esq.
                and
     Office of the U.S. Trustee for the
     Southern District of New York
     Attn:  Diana G. Adams, Esq.
                and
     Eric Holder
     United States Attorney General
                and
     Barack H. Obama, President
     United States of America
                and
     Frederick A. Henderson
     President and Chief executive Office

     and a Proper Officer of the
     Board of Directors of the
     General Motors Corporation


     PLEASE TAKE NOTICE that on June 19, 2009, pursuant to the

Federal Rules of Civil Procedure (FRCP), Rules 11(a) and 12(f),

the pleadings filed by the Debtors' attorney are MOTIONED to be

- 3 -

"striken" in its entirety based on the absence of a bankruptcy
petition preparer which violates 11 U.S.C. § 110 requirements,
the absence of the required Affidavit taken under oath before an
officer of the Court or a notary public or other person who has
been duly authorized to so act and frauding of the deadline of a
response or objection by this Petitioner due to these proceedings
NOT being adversarial. Or in the alternative...

PLEASE TAKE FURTHER NOTICE that according to F.R.C.P. Rule
78, the Court is Petitioned to expedite this business of this
Petitioner and finalize this Motion for Amendment to pay the out-
of-court settlement owed, res adjudicata and collateral estopple
matters exist by fact and law, based on (Defendant) GM did NOT
dispute, deny nor decline this party's claims filed in the class
action BEFORE the U.S. District Court for the Eastern District of
Michigan located in Detroit, issued its Order and Final Judgment
on July 31, 2008, proving that res adjudicata and collateral
estoppel bars GM from relitigating the same issues in "3" plus
proceedings including this above-numbered bankruptcy proceeding.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 2041
"All moneys paid into any Court of the United States or received
by the officers thereof, in ANY case pending or adjudicated in
such Court, SHALL BE FORTHWITH deposited with the TREASURER of
the United States or a designated depositary, in the name and to
the credit of such court", which this Petitioner demands finding
of fact by the JURY as to whether or NOT both civil and criminal
offenses against the laws of the United States have been engaged
in by the false and fraudulent pretenses of a U.S. Treasury
sponsored Purchaser having purchased substantially all of the

- 4 -

assets of GM, when according to § 2041 a deposit was OWED to the
U.S. Treasury in the first instance.

PLEASE TAKE FURTHER NOTICE that under 28 U.S.C. § 2041,
"This section 'SHALL NOT' prevent the delivery of ANY SUCH money
to the rightful 'OWNERS' upon security, according to agreement of
the parties, udner the direction of the Court", and the Voluntary
Petition provides relief to the Debtor based on the debt owed to
this OWNER has voluntarily been agreed to be paid NOT relitigated,
as well as the Court having been statutorily directed for the
district court, which this bankruptcy court is only a unit of, in
which GM's case under Title 11 is commenced or is pending SHALL
have EXCLUSIVE JURISDICTION of ALL of the property, wherever
located, of GM as debtor as of the commencement of this case on
June 1, 2009, and of property of the estate in compliance with 28
U.S.C. § 1334(e) that this Court is required BY LAW to deposit
with the Treasurer of the United States.

PLEASE TAKE FURTHER NOTICE that under Title 31 U.S.C. §§
9304 thru 9308, the Secretary of the Treasury is required to
enforce power of Attorney obligations against GM which does NOT
authorize this Attorney or resident agent to deny assuming GM's
liability to Petitioner Washington and this liability has been
owed to this "OWNER" since July 31, 2008, which assets no longer
belong to GM by fact and law as a result of Defendant GM's out
of court settlement agreement, Order and Final Judgment in the
class action in the U.S. District Court for the Eastern District
of Michigan which EXHIBITS are enclosed.

PLEASE TAKE FURTHER NOTICE that a JURY TRIAL is demanded to

- 5 -

find the facts concerning whether or NOT the selling substantially
of all GM's assets concealed under a master sale and purchase
agreement violates the U.S. Treasurer's duties, that in turn
continues to repeatedly violate Petitioner Washington to be
immediately delivered money he is the rightful OWNER of since
July 31, 2008, or in the alternative this Application be granted
and paid immediately without a hearing, in the sum of
$1,564,629,220.00 at 15% annual interest or at $556,940.00 per day
calculated thru Monday, June 15, 2009.


Date:  Flint, Michigan
       June 14, 2009

By:    Lafonza Earl Washington
       Applicant / Petitioner

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
IN RE                               :    Chapter 11
                                    :
GENERAL MOTORS CORP., et al.,       :    Case No. 09-50026(REG)
                                    :
            Debtors.                :    (Jointly Administered)
                                    :
------------------------------------X    JURY TRIAL RIGHT PRESERVED


                        AFFIDAVIT
        OF UNIFORM DECLARATORY JUDGMENT ACT ENTITLED APPLICANT/
        PETITIONER LAFONZA EARL WASHINGTON SHOWING CAUSE FOR
        NEED FOR TIMELY ISSUANCE OF EXECUTION - TO AVOID
        STATUTORILY PREVENTALE LOSS


        I, Lafonza Earl Washington, hereby state under penalty
        of perjury that,


        1.  He is the "IMPLIED" judgment creditor based on an Order,

Final Judgment, and Out-Of-Court Settlement dated July 31, 2008,

against Defendant General Motors Corporation witnessed to by the

"Notice To Debtors' Retirees Represented By The International

Union, United Automobile, Aerospace and Agricultural Implement

Workers Of America Of Sale Of Debtors' Assets And Approval Of

UAW Retiree Settlement Agreement" testifying of, '"the 2008

Settlement Agreement" approved by the United States District

Court for the Eastern District of Michigan in the class action

styled Int'l Union UAW, et al. v. General Motors Corporation,

Civil Action No. 07-14074 (E.D. Mich. filed Sept. 9, 2007)

(final order entered July 31, 2008)', on Page 2 of this Notice.


        2.  On July 31, 2008, final order for Attorney Fees and

Expenses and the unauthorized 'Findings of Facts and Conclusions

- 2 -

of Law' prohibited by the Federal Rules of Civil Procedure were
made as witnessed to by Attorney (? no bar # cited or filed) Steve
Karotkin, Harvey R. Miller, Joseph H. Smolinsky of WEIL, GOTSHAL &
MANGES LLP, and testimony made on Page 4 of the Notice To Debtors'
Retirees Represented By...", the UAW.

3.    The Defendant in the Michigan class action who is the
Debtor in this above-numbered action, the General Motors Corpora-
tion, was NOT an "_adverse_" party to this Petitioner/Applicant, a
timely Claimant in the Michigan class action, whereby the "IMPLIED"
agreement upon this Petitioner's demanded rights and GM's obliga-
tions that was NOT controverted by GM eliminated the necessity of
a judicial resolution of the out-of-court settlement owed and
demanded by this party in the sum of $1,564,629,220.00 at 15%
annual interest or at $556,940.00 per day calculated thru Monday,
June 15, 2009.

4.    No part of the Uniform declaratory Judgment Act remedy
or "IMPLIED" agreement to the out-of-court settlement entitlement
and demand has been paid, and the whole of such debt is now due
and remains unsatisfied.

5.    This SWORN party is in danger of losing the amount of
his constitutionally and Federal Laws protected (monetary)
property "OWNERSHIP" rights payment by prohibited delay in
issuing execution on money required to be deposited in the U.S.
Treasury or a designated depositary.

6.    This SWORN party declares that he is justified in his
belief in the danger arising from such delay by the following

- 3 -

facts and circumstances:

(i)  Title 11 U.S.C. § 363 prohibits such a sale by
GM based on ONLY the trustee 'MAY' use, sell, or
lease, other than in the ordinary course of business,
property of the estate NOT Debtor GM, regardless of
VOID, nonenforceable resolved resolution frauds etc.,
by GM's Board of Directors.

(ii)  However, § 363 (b)(1)(B)(ii) prohibits a
Trustee, who has NOT been appointed in this case,
in the first instance due to clear facts proving that
applicable and cited "NONBANKRUPTCY" laws, multiple
of them have been violated which divest the trustee
also from such use, sale, or lease of GM's assets.

(iii)  The U.S. District Court for the Southern
District of New York, which this bankruptcy court is
only a unit of, is required to have EXCLUSIVE
jurisdiction of Debtor GM's assets beginning June 1,
2009, under Title 28's NONBANKRUPTCY law, yet GM's
Notice Of Sale Hearing frauds a purchaser sponsored
by the U.S. Treasury has purchased substantially
all of Debtor GM's assets free and clear of all
liens, claims, encumbrances and other interests
 · directly threatens the ownership and will
cause the losses.

(iv)  The immediate direction of the Court to
deliver the demanded sum to this rightful "OWNER"

- 4 -

is the only act that will prevent these losses
and until the Direction from the Court to comply
with statutory delivery of this money prohibited
losses will repeatedly continue; BY LAW this Court
has the duty to administrate justice and the
immediate delivery, if deprived the losses and
deliberate causing of financial hardship will
continue with the Courts having full knowledge of
these civil and criminal activities by natural
persons abusing unauthorized corporate processes
which EQUITY of justice always is required to enjoin.

"I DECLARE THAT THE STATEMENTS ABOVE ARE
TRUE TO THE BEST OF MY INFORMATION
KNOWLEDGE AND BELIEF."

Dated:   June 15, 2009

By:   Lafonza Earl Washington
      Applicant/Petitioner
      7010 Cranwood Drive
      Flint, MI  48505
      Tel:  810.922.0308

# Exhibit  B



01914768

APS0611273631

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|



**Name of Debtor (Check Only One)**

☒ Motors Liquidation Company (f/k/a General Motors Corporation)    Case No. 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (REG)
☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.)    09-13558 (REG)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C § 503(b)(9) (see Item # 3). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C § 503

**Name of Creditor** (the person or other entity to whom the debtor owes money or property)   WASHINGTON, LAFONZA EARL

Your Claim is Scheduled As Follows.

11 USC § 502(a) "allowed" eligible for payment

3003(c)(4) superseded schedul-ing

**Name and address where notices should be sent**

WASHINGTON LAFONZA EARL
7010 CRANWOOD DRIVE
FLINT, MI 48505-5425

FILED - 14938
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

THE GARDEN CITY GROUP, INC.
FILED
OCT 19 2009

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on: June 19, 2009

Telephone number: 810.922.0308
Email Address

**Name and address where payment should be sent (if different from above)**

JPMorgan Chase Bank N.A.
6481 W. Pierson Road
Flushing, Michigan 48433
❋ Checking Acct #:..6090
Routing #:072000326
Telephone number: 810.659.4986

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If the amount is scheduled above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an entitlement to a priority scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1. Amount of Claim as of Date Case Filed, June 1, 2009**   $ 1,623,107,920.00

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 U.S.C § 503(b)(9), complete item 5

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2. Basis for Claim** PLEASE SEE ATTACHMENT
(See instruction #2 on reverse side)

**3. Last four digits of any number by which creditor identifies debtor** _ _ _ 2515

3a Debtor may have scheduled account as: nonscheduled/nonschedulable
(See instruction #3a on reverse side)

**4. Secured Claim** (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☒ Other
Describe: monetary property or cash

Value of Property $ _____ Annual Interest Rate 15%   Amount: $1,623,107,920.00

Amount of arrearage and other charges as of time case filed included in secured claim, if any $1,623,107,920

Basis for perfection PLEASE SEE ATTACHMENT

Amount of Secured Claim $ _____ Amount Unsecured $ 1,623,107,920.00

**6 Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of "redacted" on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5 Amount of Claim Entitled to Priority under 11 U.S.C § 507(a)**
If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U.S.C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U.S.C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case 11 U.S.C § 503(b)(9) (§ 507(a)(2))

☒ Other – Specify applicable paragraph of 11 U.S.C § 507(a)(__).

Amount entitled to priority $ 1,623,107,920.00

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

RECEIVED
US BANKRUPTCY COURT

**FOR COURT USE ONLY**

**Signature** The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney, if any

Date: Sept. 29, 2009

Lafonza E. Washington

Penalty for presenting fraudulent claim Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U.S.C §§ 152 and 3571
Modified B10 (GCG) (12/08)

# *ATTACHMENT*

2. (ı)  Prescribed adequate protection under 11 USC § 361 (1) and (3)
        requiring the trustee to make this lump sum cash payment.

   (ıı)  11 USC §§ 507 (a) (1) (C) - the administrative expenses of the
         trustee ALLOWED under paragraphs (1) (A), (2) and (6) of
         section 503 (B) and hereunder the involved trustee is BOUND,
         by law, to administer these demanded monetary assets that ARE
         AVAILABLE for the payment of Lafonza Earl Washington's claims
         or interests.

   (ııı) Monopolies and combinations engaged in by GM etc., long-termed
         and continuing have and are causing substantial injuries to
         this party's person, property, and multi-billion dollar
         business interest start up since February of 2003 which are
         PROHIBITED by antitrust laws and provides damages "THREEFOLD"
         for recovery.

4.  Basis for perfection:
    FINAL ORDER including §§ 361, 507 priority bankruptcy Rule, 4001
    ex part relief...1104 trustee administrative expenses; (eliminates
    any/all 3007 objections).

Dated: September 29, 2009

BY: *Lafonza Earl Washington*
    *Creditor*
    *P.O. Box 966*
    *Grand Blanc, MI 48480*
    *Tel: 810.922.0308*

# Exhibit  C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X
                            :    Chapter 11

In re                        :    Case No. 09-50026 (REG)
                            :

GENERAL MOTORS CORP., et al.,   :    (Jointly Administered)
                            :

          Debtors.       :
---------------------------------------X

## APPLICATION

FOR EX PARTE RELIEF ENTRY-NUNC PRO TUNC – TO
DEBTORS UNNOTICED AMENDED SALES ORDER APPROVAL
(I) AUTHORIZING SALE OF ASSETS PURSUANT TO
AMENDED AND RESTATED MASTER SALE AND PURCHASE
AGREEMENT WITH NGMCO, INC., A U.S. TREASURY-
SPONSORED PURCHASER; (II) AUTHORIZING ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES IN CONNECTION WITH SALE:
AND (III) GRANTING RELATED RELIEF THAT INCLUDES
THE AMENDED MOTION APPLICATION OF APPLICANT/
PETITIONER LAFONZA EARL WASHINGTON PURSUANT TO THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE RULES 4001
(d)(3) and (4) INCLUDING THE FEDERAL RULES OF CIVIL
PROCEDURE RULES 70, 77, 79, AND TITLE 11 U.S.C.
§§ 363 AND 541

The Motion of Debtors the General Motors Corporation et al.,
in the above-entitled matter for an Order 'Approving the Sell of
‡Substantially ALL of Debtors Assets Pursuant To Master Sale and
Purchase Agreement With Vehicle Acquisition Holdings LLC a U.S.
Treasury Sponsored Purchaser' before this Court on June 30, 2009,
but on June 26, 2009, a certain Amended and Restated Master Sale
and Purchase Agreement that was UNNOTICED to this Applicant/
Petitioner was given the Order.  Harvey R. Miller, Stephen
Karotkin, Joseph H. Smolinsky and WEIL, GOTSHAL & MANGES LLP
appeared for Debtors et al., GM and 28 U.S.C. § 1654 authorized
the personal filings of this Applicant/Petitioner.

- 2 -

Assertedly this Title 11 reorganization process is NOT a
Title 28 judicial or judiciary action that authorize this
Bankruptcy unit's findings and with specificity such findings
were divested due to the 'JURY TRIAL RIGHT DEMAND PRESERVED'
for the authorized jury to make findings and cause is shown for
this immediate payment and final settlement based on proof of
immediate and irreparable injury, loss, and damages repeatedly
being caused to be suffered, as follows:

1.  'The Order (I) Authorizing sale of assets pursuant to
amended and related master sale and purchase agreement with
NGMCO, Inc., a U.S. Treasury sponsored purchaser... (III) GRANT-
ING RELATED RELIEF', was Ordered and approved by this Court.

2.  This above-named Applicant/Petitioner's 'AMENDED MOTION
APPLICATION' docket #2477 qualifies and satisfies the related
relief granted as demanded based on the filed Applications,
Affidavits, and Exhibits 'CONDITIONING' the use, sale, or lease
of the Debtors property pursuant to 11 U.S.C. § 363 due to
applicable nonbankruptcy law NOT permitting this sale etc., of
Debtor GM's property free and clear of such interests by the
Debtor or any trustee.

3.  This Court was/is required to - 'as is necessary' -
provide adequate protection of this Applicant's interest
according to 11 U.S.C. § 363(e).

4.  Title 11 U.S.C. § 363(e), assertedly incorporates the
Federal Rules of Bankruptcy Procedure, Rule 4001(a)(2) 'EX PARTE
RELIEF' demands which may be granted without prior notice based
on the Affidavits and verified Motion/Notices filed on June 19,

- 3 -

2009, clearly shows that immediate, irreparable injury, loss and
damages will continue to repeatedly or continuously result; due to
no contest or objection nor denial being made, to this entity's
'AMENDED MOTION APPLICATION' Notice the Debtor and its attorneys
are prohibited by law from being adverse parties and to ANY/ALL
adversary proceedings.

5.    According to bankruptcy rules Oral Notice is being given
to the trustee or the debtor in possession and to the debtor and
copies of the amended Order are being transmitted to these named
entities or reference of the Order dated June 26, 2009, Authorizing
Sale of Assets Pursuant To Amended and Restated Master Sale and
Purchase Agreement With NGMCO, INC., granting this entity's related
relief based on, 'Entry of an Order authorizing and approving...
ALL related documents, and agreements, as well as ALL exhibits...'
provided in the amended Order that necessarily includes this entity's
documents and exhibits filed at docket #2477.

Good cause appearing,

IT IS HEREBY ORDERED THAT monetary relief in the sum of
$1,588,577,640.00 at 15% annual interest or at $556,940.00 per day
calculated thru Monday, July 27, 2009, be paid to the order of
Applicant/Petitioner Lafonza Earl Washington, without delay by
certified U.S. Treasury check cashable at any Treasury controlled
financial institution by, Debtors and Debtors in Possession
attorneys WEIL, GOTSHAL & MANGES LLP, including Harvey R. Miller,
Stephen Karotkin and Joseph H. Smolinsky.

IT IS FURTHER ORDERED THAT if any delay more than 24 hours

- 4 -

or next day delivery is caused by WEIL, GOTSHAL & MANGES LLP and
its Attorneys Harvey R. Miller, Stephen Karotkin and Joseph H.
Smolinsky that this Application is directed to this Court's clerk
for assistance and/or writ of execution to complete the delivery
of possession at the cost of the disobedient entity.

IT IS FURTHER ORDERED THAT next day delivery of this payment
is directed to be "signed" for ONLY by Lafonza Earl Washington
between 8:00 AM and 2:00 PM at the address on the Certificate of
Service.

Dated:   July 27, 2009

_____
Lafonza Earl Washington
Applicant/Petitioner


_____
WEIL, GOTSHAL & MANGES LLP
Debtor and Debtors in Possession Attorneys


_____
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

In re                                           : Chapter 11

                                                : Case No. 09-50026 (REG,

GENERAL MOTORS CORP., et al.,                   :

                        Debtors.                : (Jointly Administered,

----------------------------------------X

JUL 30 2009

### CERTIFICATE OF SERVICE

        I CERTIFY that on July 27, 2009, I caused the "APPLICATION
FOR EX PARTE RELIEF ENTRY – NUNC PRO TUNC – TO DEBTORS UNNOTICED
AMENDED SALES ORDER APPROVAL (I) AUTHORIZING SALE OF ASSETS
PURSUANT TO AMENDED AND RESTATED MASTER SALE AND PURCHASE
AGREEMENT WITH NGMCO, INC., A U.S. TREASURY-SPONSORED PURCHASER;
(II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE; AND
(III) GRANTING RELATED RELIEF THAT INCLUDES THE AMENDED MOTION
APPLICATION OF APPLICANT/PETITIONER LAFONZA EARL WASHINGTON
PURSUANT TO THE FED.R.BK.P. RULES 4001(d)(3) AND (4) INCLUDING
THE FED.R.CIV.P. RULES 70, 77, 79, AND TITLE 11 U.S.C. §§ 363
AND 541" and mailed to the Debtors at:

        General Motors Corporation
        Frederick A. Henderson
        President and Chief Executive Officer
        300 Renaissance Center
        Detroit, MI   48265-3000

                and

* *   Location of Principal assets of Business Debtor

        WEIL, GOTSHAL & MANGES LLP
        Harvey R. Miller
        Stephen Karotkin
        Joseph H. Smolinsky
        767 Fifth Avenue
        New York, New York   10153
        Tel: 212.310.8000
        Fax: 212.310.8007

- 2 -

United States Bankruptcy Court.
Clerk of the Bankruptcy Court
Vito Genna
One Bowling Green
New York, New York   10004


    I CERTIFY that the foregoing statements made by me are true
to the best of my information, knowledge and belief, under penalty
of perjury.


Dated:    Flint, Michigan
           July 26, 2009

By:   Lafonza Earl Washington
      Applicant/Petitioner
      7010 Cranwood Drive
      Flint, MI  48505
      Tel:  810.922.0308

# Exhibit  D

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE

NEW YORK, NY 10153

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

July 30, 2009

HARVEY R. MILLER
DIRECT LINE (212) 310-8500
E-MAIL: harvey.miller@weil.com

Mr. Lafonza Earl Washington
7010 Cranwood Drive
Flint, Michigan 48505

        **Re:**    **Motors Liquidation Company LLC / General Motors Corp.**

Dear Mr. Washington:

      In response to your inquiry concerning the "Application" for "Ex Parte Relief," etc., which appears to have been forwarded on July 27, 2009, please be advised that the Application does not comply with the applicable Rules of Bankruptcy Procedure and the local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. Further, the application is without merit, substance or foundation. Each of the assertions made by you are rejected by Motors Liquidation Company, f/k/a General Motors Corp. and it would object to the entry of any order based upon the application, if presented to the Bankruptcy Court.

      With regard to your specific inquiry, there is no intention at this time to take any action with respect to the application.

      Kindly be governed accordingly.

              Very truly yours,

              Harvey R. Miller

cc:    Stephen Karotkin, Esq.
       Joseph H. Smolinsky, Esq.

HRM/jp

# Exhibit E

ENDORSED ORDER

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

DENIED, FOR FAILURE TO
SHOW A PRIMAFACIE ENTITLEMENT
TO RELIEF

SO ORDERED
S/ Robert E. Gerber    9/10/2009

————————————————————X
:
In Re                                    :    Chapter 11
:
GENERAL MOTORS CORP., et al.,            :    Case No. 09-50026(REG)
:
Debtors.               :    (Jointly Administered)
:
————————————————————X

APPLICATION FOR ISSUANCE OF WRIT OF EXECUTION
AGAINST DEBTOR GENERAL MOTORS CORPORATION AFTER
GRANT OF MONEY JUDGMENT/ORDER IN FAVOR OF
JUDGMENT CREDITOR LAFONZA EARL WASHINGTON AND
AS A FINAL REMEDY - BY LAW

To:  The Clerk of the United States Bankruptcy Court For the Southern
     District of New York.

     1.  On June 1, 2009, this Court made and entered its judgment/Order
in the above - entitled and numbered action.

     2.  The judgment/order was in favor of this Applicant and against
the Debtors' in the sum of $1,604,171,960.00 at 15% annual interest or
at the rate of $556,940.00 per day and is calculated thru Thursday,
August 27, 2009  and is recorded at docket number 3656.

     3.  No part of the judgment/order "GRANTING RELATED RELIEF" has
ever been satisfied that was granted on June 30, 2009, though due
demand for satisfaction has been made on Debtors' et al.

     4.  There is due and owing to this entity from the Debtors' the
sum of $1,604,171,960.00 and demanded interest is 15% annually and is
computed thru Thrusday, August 27, 2009.

     WHEREFORE, this Applicant requests that the Court issue a Writ of
Execution against Debtors' General Motors Corporation et al., on the
grant of relief entered for Creditor Lafonza Earl Washington at
docket number 3656 in this action and be "DIRECTED" to the levying
officer or United States Marshal's office for the Southern District of
New York in and for this Federal District and to any registered process
server, including the CT Corporation Systems and Order or Command the
levying officer to make a Return of the Writ specifying what was done
to comply with the Writ and to file and serve the Return on or before
Monday, August 31, 2009.

     "I DECLARE THAT THE STATEMENTS ABOVE ARE TRUE TO THE BEST
     OF MY INFORMATION, KNOWLEDGE, AND BELIEF. "

- 2 -

"I DECLARE THAT THE STATEMENTS ABOVE ARE TRUE TO THE
BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF."

Dated:    August 27, 2009

BY: Lafonza Earl Washington
    Judgment Creditor
    7010 Cranwood Drive
    Flint, MI  48505
    Tel: 810.922.0308

# EXHIBITS

**Search Documents**

Docket Date:                    (mm/dd/yyyy) To (optional):
                (mm/dd/yyyy)

Docket No.:    3656    To (optional):

Search Description for:

☐ Search Within Results

| Search | | Clear Search Results |

## Court Documents

United States Bankruptcy Court Southern District of New York
*In re Motors Liquidation Company*
Case No. 09-50026

**1 Results Found**

*The docket is currently displayed in reverse chronological order. To display the docket in chronological order, please* click here.

| Date | Court Docket Number | Description | • Home |
|------|---------------------|-------------|--------|
| 07/30/2009 | 3656 | Application for Ex Parte Relief Entry - Nunc Pro Tunc - To Debtors' Unnoticed Amended sales Order Approval (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc. a U.S. Treasury Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale: and (III) Granting Related Relief that Includes the Amended Motion Application of Applicant/Petitioner LaFonza Earl Washington Pursuant to the Federal Rules of Bankruptcy | |

Procedure Rules 4001(d)(3) and (4) Including the Federal • Case
Rules of Civil Procedure Rules 70, 77, 79, and Title 11
U.S.C. section 363 and 541 filed by LaFonza Earl
Washington. (Ho, Amanda) (Entered: 08/04/2009)

Information
- Key Documents
- First Day Motions
  and Orders
- 363 Transaction Pleadings
- UAW-Related Court Documents
- Stock Trading Order and Related Information
- Court Documents
- Scheduled Hearings
- Claims Register

© 2009 The Garden City Group, Inc. – All Rights Reserved

Page 1 of 2

Search Documents

Docket Date:                    (mm/dd/yyyy) To (optional):
(mm/dd/yyyy)

Docket No.: 2477        To (optional):

Search Description for:

    Search Within Results

[ Search ]    [ Clear Search Results ]


# Court Documents

United States Bankruptcy Court Southern District of New York
*In re Motors Liquidation Company*
Case No. 09-50026

**1 Results Found**

*The docket is currently displayed in reverse chronological order. To display the docket in chronological order, please click here.*

| Date | Court Docket Number | Description |
|---|---|---|
| 06/19/2009 | 2477 | Objection to Debtors' Motion filed by LaFonza Earl Washington. (Ho, Amanda) (Entered: 06/25/2009) |

- Home
- Case Information
- Key Documents
- First Day Motions and Orders
- 363 Transaction Pleadings
- UAW-Related Court Documents
- Stock Trading Order and Related Information
- Court Documents
- Scheduled Hearings
- Claims Register

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
                                      :
In Re                                 :   Chapter 11
                                      :
GENERAL MOTORS CORP., et al.,         :   Case No. 09-50026(REG)
                                      :
             Debtors.                 :   (Jointly Administered)
                                      :
--------------------------------------x

### CERTIFICATE OF SERVICE

I, Lafonza Earl Washington, certify that on Thursday, August 27, 2009, I caused the documents identified below to be mailed to the below-named offices, postage prepaid via UPS Next Day Air and United States Postal Service first class mail as follows:

1.  Application For Issuance Of Writ Of Execution Against Debtor General Motors Corporation After Grant Of Money Judgment/Order In Favor Of Judgment Creditor Lafonza Earl Washington And As A Final Remedy - By Law

2.  Directions To Execution Officer To Levy On Monetary Property Granted To Judgment/Order Creditor Lafonza Earl Washington Dated June 30, 2009 and July 30, 2009 Against Debtors' General Motors Corporation Assets Located In This Federal District *AND EXHIBITS*

Please process according to law.  Thank you.

                                    _____
                                    By:  Lafonza Earl Washington
                                         Judgment Creditor
                                         7010 Cranwood Drive
                                         Flint, MI  48505
                                         Tel:  810.922.0308

Mailed To:

     United States Bankruptcy Court
     Vito Genna, Clerk
     One Bowling Green
     New York, New York   10004
     Tel:  212.668.2870

RECEIVED
SEP 1
U.S. BANKRUPTCY COURT, SDNY

- 2 -

United States Marshal's Office
Southern District of New York
Executions Division
500 Pearl Street    Suite 400
New York, New York  10007
Tel:  212.331.7200

General Motors Corporation
c/o CT Corporation Systems
111 8th Avenue    13th Floor
New York, New York  10011
Tel:  212.894.8940

Acting Treasurer of the United States
President Barack H. Obama
1600 Pennsylvania Avenue, N.W.
Washington, D.C.  20220

Department of Justice
United States Attorney General
Eric Holder U.S. Attorney General
950 Pennsylvania Avenue, NW
Washington, D.C.  20530

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
In Re                               :    Chapter 11

GENERAL MOTORS CORP., et al.,       :    Case No. 09-50026(REG)

                        Debtors.    :    (Jointly Administered)
                                    :
-------------------------------------x

<u>DIRECTIONS</u>
TO EXECUTION OFFICER TO LEVY ON MONETARY PROPERTY
GRANTED TO JUDGMENT/ORDER CREDITOR LAFONZA EARL
WASHINGTON DATED JUNE 30, 2009 AND JULY 30, 2009
AGAINST DEBTORS' GENERAL MOTORS CORPORATION
ASSETS LOCATED IN THIS FEDERAL DISTRICT

TO:  The United States Marshal's Office for the Southern District
     of New York and the CT Corporation Systems.

     By virtue of the attached Writs of Execution, you are hereby

instructed to levy on $1,604,171,960.00 of Debtors' General Motors

Corporation which assets are located at 767 Fifth Avenue, New York,

New York, at WEIL, GOTSHAL & MANGES LLP, telephone 212.310.8000.

     Please file with the above-named Court the required return

and deliver the Certified check to Lafonza Earl Washington at

7010 Cranwood Drive, Flint, Michigan, by next day delivery which

expense is to be paid by this creditor, by August 31, 2009.

Dated:   August 27, 2009

                                    By:  Lafonza Earl Washington
                                         Creditor
                                         7010 Cranwood Drive
                                         Flint, MI  48505
                                         Tel:  810.922.0308

# Exhibit  F

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

'02  FEB. 28  74 50

LAFONZA EARL WASHINGTON, SR.
           Plaintiff,

Case No. 01-70659

vs.

HON. AVERN COHN

GENERAL MOTORS CORP., et al.
           Defendants.

_____/

and

LAFONZA EARL WASHINGTON, SR.
           Plaintiff,

Case No. 00-75209

vs.

HON. AVERN COHN

SECRETARY OF STATE OF MICHIGAN,
et al.,
           Defendants

_____/

### ORDER ENJOINING PLAINTIFF FROM FILING FURTHER PAPERS IN THE ABOVE CASES AND
### PRECLUDING THE FILING OF FUTURE COMPLAINTS WITHOUT LEAVE OF COURT

    Plaintiff Lafonza Earl Washington, Sr. filed pro se complaints in the above cases.

Both cases were dismissed.  Case no. 00-CV-70659, against General Motors and

others, was dismissed on May 15, 2001 on the motion of defendants.  The Court of

Appeals for the Sixth Circuit affirmed the dismissal on September 17, 2001.

    Case no. 01-CV-70659, against the Michigan Secretary of State and others, was

dismissed on January 12, 2001 for lack of subject matter jurisdiction.  Plaintiff, however,



continued to file motions and other papers, and the Court ordered that plaintiff be barred from filing further papers in this case. See Order filed April 6, 2001. Plaintiff also appealed the dismissal of his case to the Sixth Circuit, who dismissed his appeal on June 25, 2001.

Despite the fact that both cases have been dismissed and are closed, and despite an order barring him from filing papers in case no. 01-CV-70659, plaintiff continues to inundate the Court with various motions and other papers in both cases.

The Court is entitled to protect its jurisdiction from vexatious litigants abusing the judicial process. See In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984). The Court of Appeals for the Sixth Circuit has specifically approved a district court's power to limit the filing of lawsuits by vexatious litigants. Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987).

Plaintiff has shown a history of filing unsubstantiated and vexatious lawsuits.[1] Because the Court's time and resources are scarce, it is necessary to prevent future similar abuses by plaintiff.

Accordingly, plaintiff is ENJOINED from filing any additional papers, other than a notice of appeal of this order, in case nos. 01-CV-70659 and 00-CV-75209. These matters are closed and the appeals dismissed. Should plaintiff defy this Order, the Clerk of Court is directed to reject plaintiff's submissions if filed in person or discard them if attempted by mail.

---

[1]In addition to the two lawsuits before this Court, plaintiff has filed at least nine other lawsuits in this district.

2

Plaintiff is further PRECLUDED from filing any future actions in this Court without first obtaining leave. The Clerk is directed to not accept any filings without leave of Court.

The Court also CERTIFIES under 28 U.S.C. § 1913(a)(3) that any appeal from this Order would be frivolous and not taken in good faith. As such, plaintiff may not proceed in forma pauperis on appeal.

SO ORDERED.

AVERN COHN
UNITED STATES DISTRICT JUDGE

DATED: **FEB 28 2002**
Detroit, Michigan

3

# Exhibit  G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAFONZA WASHINGTON, SR.,

        Plaintiff,               CIVIL ACTION NO.: 01-CV-74022-DT

vs.                         HON. GEORGE E. WOODS
                             MAG. JUDGE WALLACE CAPEL, JR.

CITIZENS BANK, et. al.,

        Defendants.

_____/

## ORDER ENJOINING PLAINTIFF FROM FILING FURTHER PAPERS

    This cause is before the court on plaintiff's *pro se* Complaint filed on October 23,

2001 [Docket No. 1]; defendants Trott & Trott, P.C., Fair Debt Collection Clerk, Fair Debt

Collection Clerk-Jaguars Trott & Trott, P.C., Robert Trott, and Steven Alpert's "motion for

more definite statement and motion to strike[,]" filed on November 9, 2001 [Docket No. 12];

defendant Nomas Corporation's "motion to dismiss, or in the alternative, to strike the

complaint, or in the alternative, for a more definite statement[,]" filed on November 13,

2001 [Docket No. 14]; defendants Citizens Bank, Citizens Bank Loan Adjustment

Department, Robert Vitito, John Tucker, David Lawson, and Winegarden, Shedd, Haley,

Lindholm & Robertson, P.L.C.'s "motion for more definite statement or to strike [the]

complaint[,]" filed on November 13, 2001 [Docket No. 18]; the court's "notice and order for

plaintiff to show cause [for failure to respond to the defendants' motions and to appear in

court as directed on May 2, 2002][,]" issued on May 3, 2002 [Docket No. 83]; and,



defendant Nomas Corporation's "affidavit of [counsel] Patrick G. Kruse [for] attorney fees and costs [due to plaintiff's failure to appear in court on] May 2, 2002.

On May 9, 2002, this court held a hearing to address the above outstanding motions and order to show cause. Both the plaintiff and the defendant's representatives were present before the court. Plaintiff was given the opportunity to address and/or state his position(s) with regard to the defendants' motions and the court's order to show cause. He effectively declined to do so, ultimately citing the court's purported bias, unfairness, and lack of jurisdiction over the instant lawsuit. As such, due to the plaintiff's willful and repeated failure to obey the court's directives, i.e., to meaningfully and truthfully address the court's questions, etc., the hearing was closed and he was ordered not to file any papers until the above motions and order to show cause are resolved.

Plaintiff is an experienced *pro se* litigant. Dating back to 1982, he has filed fifteen lawsuits in this district.[1] Many of them have been summarily dismissed, yet, all of them show a striking pattern of motion filings, i.e., motions for mandamus relief, protective orders, preliminary injunctions, temporary restraining orders, clerk's entry of default, default judgment, joinder of claims/remedies, attorney's fees, preferential setting, grand jury investigation, recusal/disqualification of judges, etc. Surprisingly, he was only recently precluded from filing future lawsuits in this district, and, despite warnings to the contrary, he has inundated the court with frivolous motions in this case. Hence, the Clerk of Court is to take notice that, other than filing objections to this Order, plaintiff is ENJOINED from filing any papers pending resolution of the above motions and order to show cause. In the

---

[1] Plaintiff's wife, Joan, has also filed two pro se lawsuits in this district.

2

interim, should plaintiff defy this order, the Clerk of Court is to reject and/or discard his

submissions.

**IT IS SO ORDERED.**

The parties are hereby informed that any objection to this order must be filed with

the district court within ten days (10) after being served with a copy thereof, pursuant to

Fed.R.Civ.P. 72(a).


**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


DATED:  MAY 1 0 2002

3

## CERTIFICATION OF SERVICE

**UNITED STATES OF AMERICA )**            **CASE NO.: 01-CV-74022-DT**

                                   ) ss

**EASTERN DISTRICT OF MICHIGAN**    )

I, the undersigned, hereby certify that I have on the 10th day of May 2002, mailed

copies of the "Order Enjoining Plaintiff From Filing Further Papers," in the foregoing cause,

pursuant to Rule 77(Davenport), Fed.R.Civ.P., to the following parties:

Honorable George E. Woods                LaFonza Washington, Sr.
United States District Judge             6602 Martin Luther King Avenue
231 W. Lafayette, Room 277               Flint, Michigan 48505
Detroit, Michigan 48226


L. David Lawson                          Lisa Martinuzzi
G-9460 S. Saginaw Street, Suite A        30400 Telegraph Road, Suite 200
Grand Blanc, Michigan 48439              Bingham Farms, Michigan 48025
**ATTORNEY FOR:**                        **ATTORNEY FOR:**
Citizens Bank                            Trott and Trott, P.C.
Citizens Bank Loan Adjustment Dept.      Fair Debt Collection Clerk, and
Robert Vitito                              Fair Debt Collection Clerk-Jaguars
John R. Tucker                           Robert A. Trott
L. David Lawson                          Steven I. Alpert
Winegarden, Shedd, Haley, Lindholm and
  Robertson, P.L.C.


David M. Hayes
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226-3435
**ATTORNEY FOR:**
Nomas Corporation


Marsha Heinonen
Deputy Clerk

# Exhibit  H

CLOSED, WC

## U.S. District Court
## Eastern District of Michigan (Detroit)
## CIVIL DOCKET FOR CASE #: 2:01-cv-74022-GEW-WC

Washington v. Citizens Bank, et al
Assigned to: Honorable George E Woods - INACTIVE
Referred to: Honorable Wallace Capel - INACTIVE
Demand: $110,000,000

Date Filed: 10/23/2001
Date Terminated: 06/24/2002
Jury Demand: None
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Federal Question

**Plaintiff**

**Lafonza Earl Washington, Sr.**                 represented by **Lafonza Earl Washington, Sr.**
6602 Martin Luther King Avenue
Flint, MI 48505
Fax: 810-789-6242
PRO SE

V.

**Defendant**

**Citizens Bank**                                represented by **L. David Lawson**
Winegarden, Haley,
G-9460 S. Saginaw Street
Suite A
Grand Blanc , MI 48439
810-579-3600
Email: dlawson@winegarden-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Citizens Bank Loan Adjustment**               represented by **L. David Lawson**
**Department**                                  (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trott and Trott, P. C.**                       represented by **Lisa Martinuzzi**
Trott & Trott
30400 Telegraph Road
Suite 200
Bingham Farms , MI 48025
248-642-2515

Fax: 248-642-2515
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Fair Debt Collection Clerk and Fair**          represented by **Lisa Martinuzzi**
**Debt Collection Clerk-Jaguars**                               (See above for address)
*of Trott and Trott, P. C.*                                     *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Robert A. Trott**

**Defendant**

**Steven I. Alpert**

**Defendant**

**Nomas Corporation**                           represented by **David M. Hayes**
*formerly known as*                                            Clark Hill (Detroit)
Lomas Mortgage USA, Incorporated                               500 Woodward Avenue
                                                               Suite 3500
                                                               Detroit , MI 48226-3435
                                                               313-965-8300
                                                               Email: dhayes@clarkhill.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Patrick G. Kruse**
                                                               Flood, Lanctot,
                                                               1200 W. Eleven Mile Road
                                                               Royal Oak , MI 48067
                                                               248-547-1032
                                                               Fax: 248-547-0140
                                                               Email: pkruse@sbcglobal.net
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Vitito**                                represented by **L. David Lawson**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**John R. Tucker**                               represented by **L. David Lawson**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

L. David Lawson                             represented by  **L. David Lawson**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Winegarden, Shedd, Haley, Lindholm      represented by  **L. David Lawson**
and Robertson, P. L. C.**                                  (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Melvin P. McCree**

**Defendant**

**Robert Pickel**

**Defendant**

**James R. Blankenship**

**Defendant**

**Dennis Allen**

**Defendant**

**Dennis Allen, Incorporated**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 10/23/2001 | 1 | COMPLAINT - Receipt # 46035-FL - Date Fee Received: 10/23/01 (cm) (Entered: 10/30/2001) |
| 10/23/2001 | 2 | PETITION by Lafonza Earl Washington Sr. for writ of mandamus (cm) (Entered: 10/30/2001) |
| 10/23/2001 | 3 | PETITION by Lafonza Earl Washington Sr. for preliminary injunction (cm) (Entered: 10/30/2001) |
| 11/05/2001 | 4 | PROOF of mailing by plaintiff of summons and complaint as to Dennis Allen Inc; Dennis Allen and James R. Blankenship (kg) (Entered: 11/09/2001) |
| 11/05/2001 | 5 | PROOF of mailing by plaintiff of summons and complaint as to Robert J. Pickel, Melvin P. McCree and Winegarden Shedd (kg) (Entered: 11/09/2001) |
| 11/05/2001 | 6 | PROOF of mailing by plaintiff of summons and complaint as to L. David Lawson, John R. Tucker and Robert Vitito (kg) (Entered: 11/09/2001) |
| 11/05/2001 | 7 | PROOF of mailing by plaintiff of summons and complaint as to Lomas Mortgage USA, Steven I. Alpert and Robert A. Trott (kg) (Entered: 11/09/2001) |
| 11/05/2001 | 8 | PROOF of mailing by plaintiff of summons and complaint as to Fair Debt |

| | | Collection, Trott & Trott, Citizens Bank Loan and Citizens Bank (kg) (Entered: 11/09/2001) |
|---|---|---|
| 11/09/2001 | 9 | APPEARANCE for defendants Trott & Trott and Fair Debt Collection of attorney Lisa Martinuzzi (lg) (Entered: 11/13/2001) |
| 11/09/2001 | 10 | RESPONSE by Trott Trott P C, Fair Debt Coll Clk to petition for preliminary injunction by Lafonza Earl Washington Sr. [3-1] with brief (lg) (Entered: 11/13/2001) |
| 11/09/2001 | 11 | RESPONSE by Trott Trott P C, Fair Debt Coll Clk to petition for writ of mandamus by Lafonza Earl Washington Sr. [2-1] with brief (lg) (Entered: 11/13/2001) |
| 11/09/2001 | 12 | MOTION by Trott Trott P C, Fair Debt Coll Clk for more definite statement and to strike with brief (lg) (Entered: 11/13/2001) |
| 11/09/2001 | 13 | PROOF of mailing of pleading #'s 9-12 (lg) (Entered: 11/13/2001) |
| 11/09/2001 | 16 | STATEMENT of disclosure of corporate affiliations and financial interests by Citizens Bank (lg) (Entered: 11/14/2001) |
| 11/09/2001 | 17 | PROOF of mailing of motion of defendants Citizens Bank, Citizens Bank etc. . . (lg) (Entered: 11/14/2001) |
| 11/09/2001 | 19 | APPEARANCE for Citizens Bank, Citizens Bank Loan, Robert Vitito, John R. Tucker, L. David Lawson, Winegarden Shedd of attorney L. David Lawson (lg) (Entered: 11/15/2001) |
| 11/13/2001 | 14 | MOTION by Nomas Corp to dismiss or in the alternative to strike the complaint or in the alternative for more definite statement of claims, in any, against Nomas Corp with brief and attachments (lg) (Entered: 11/14/2001) |
| 11/13/2001 | 15 | PROOF of mailing of Nomas Corp's motion to dismiss (lg) (Entered: 11/14/2001) |
| 11/13/2001 | 18 | MOTION by Citizens Bank, Citizens Bank Loan, Robert Vitito, John R. Tucker, L. David Lawson, Winegarden Shedd for more definite statement or to strike plaintiff's complaint with brief (lg) (Entered: 11/15/2001) |
| 11/13/2001 | 20 | RESPONSE (brief) by Citizens Bank, Citizens Bank Loan, Robert Vitito, John R. Tucker, L. David Lawson, Winegarden Shedd to petition for preliminary injunction by Lafonza Earl Washington Sr. with brief [3-1] (lg) Modified on 11/15/2001 (Entered: 11/15/2001) |
| 11/13/2001 | 21 | RESPONSE by Citizens Bank, Citizens Bank Loan, Robert Vitito, John R. Tucker, L. David Lawson, Winegarden Shedd to petition for writ of mandamus by Lafonza Earl Washington Sr. [2-1] with brief (lg) (Entered: 11/15/2001) |
| 11/13/2001 | 22 | AFFIDAVIT of Mary T. Townley (lg) (Entered: 11/15/2001) |
| 11/13/2001 | 23 | AFFIDAVIT of John R. Tucker (lg) (Entered: 11/15/2001) |
| 11/13/2001 | 24 | PROOF of mailing of pleading #'s 18-23 (lg) (Entered: 11/15/2001) |

| 11/14/2001 | 25 | ORDER by Judge George E. Woods denying petition for writ of mandamus by Lafonza Earl Washington Sr. [2-1] [EOD Date 11/15/01] (lg) (Entered: 11/15/2001) |
|---|---|---|
| 11/14/2001 | 26 | ORDER by Judge George E. Woods denying petition for preliminary injunction by Lafonza Earl Washington Sr. [3-1] [EOD Date 11/16/01] (lg) (Entered: 11/16/2001) |
| 11/15/2001 | 27 | NOTICE by defendant Nomas Corp of setting hearing on motion to dismiss by Nomas Corp [14-1] for <date not set>, motion to strike the complaint by Nomas Corp [14-2] for <date not set>, motion for more definite statement of claims, in any, against Nomas Corp by Nomas Corp [14-3] for <date not set> before Judge Woods. (cf) (Entered: 11/16/2001) |
| 11/15/2001 | 28 | CONCURRENCE by Nomas Corp. in responses of defendants Citizens Bank, et al with proof of mailing. (cf) (Entered: 11/16/2001) |
| 11/15/2001 | 29 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Citizens Bank Loan with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 30 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Trott Trott P C with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 31 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Fair Debt Coll Clk with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 32 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Citizens Bank with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 33 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Robert A. Trott with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 34 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Steven I. Alpert with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 35 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Nomas Corp with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 36 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Robert Vitito with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 37 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant John R. Tucker with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 38 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant L. David Lawson with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 39 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Melvin P. McCree with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 40 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Robert Pickel with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 41 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Winegarden Shedd with brief (nh) (Entered: 11/21/2001) |

| 11/15/2001 | 42 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant James R. Blankenship with brief (nh) (Entered: 11/21/2001) |
|---|---|---|
| 11/15/2001 | 43 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Dennis Allen with brief (nh) (Entered: 11/21/2001) |
| 11/15/2001 | 44 | MOTION by plaintiff Lafonza Earl Washington Sr. for default judgment as to defendant Dennis Allen Inc with brief (nh) (Entered: 11/21/2001) |
| 11/30/2001 | 45 | MOTION by plaintiff for clerk's entry of default as to Dennis Allen Inc, Dennis Allen, James R. Blankenship, Robert Pickel, Melvin P. McCree, Winegarden Shedd, L. David Lawson, John R. Tucker, Robert Vitito, Nomas Corp, Steven I. Alpert, Robert A. Trott, Fair Debt Coll Clk, Trott Trott P C, Citizens Bank Loan, Citizens Bank with affidavit and proof of mailing (cm) (Entered: 12/11/2001) |
| 12/11/2001 | 46 | NOTICE of denial of request for Clerk's entry of default as to Citizens Bank; Citizens Bank Loan Adjustment; Robert Vitito; John R. Tucker; L. David Lawson and Winegarden, Shedd, Haley, Lindholm and Robertson (cm) (Entered: 12/11/2001) |
| 12/11/2001 | 47 | NOTICE of denial of request for Clerk's entry of default as to Trott & Tross; Fair Debt Collection; Robert A. Trott and Steven I. Alpert (cm) (Entered: 12/11/2001) |
| 12/11/2001 | 48 | NOTICE of denial of request for Clerk's entry of default as to Lomas Mortgage USA, d/b/a Nomas Corp (cm) (Entered: 12/11/2001) |
| 12/12/2001 | 49 | CLERK'S entry of default as to Dennis Allen Inc, Dennis Allen, James R. Blankenship, Robert Pickel, Melvin P. McCree (cm) Modified on 12/12/2001 (Entered: 12/12/2001) |
| 12/12/2001 | 50 | ORDER by Judge George E. Woods, referring all pretrial proceedings to Magistrate Judge Wallace Capel Jr. [EOD Date 12/13/01] (lg) (Entered: 12/13/2001) |
| 12/17/2001 | 52 | PETITION by plaintiff, Lafonza Earl Washington Sr., for correction of clerical mistakes and omissions on clerk's/court's own initiative pursuant to FRCP 60(a) (jg) (Entered: 12/27/2001) |
| 12/17/2001 | 53 | APPLICATION by plaintiff, Lafonza Earl Washington Sr., for interim attorney fees (jg) (Entered: 12/27/2001) |
| 12/17/2001 | 54 | PROOF of mailing by plaintiff, Lafonza Earl Washington Sr., of documents 52 and 53 (jg) (Entered: 12/27/2001) |
| 12/18/2001 | 51 | COPY of order [50-2] mailed to Dennis Allen Inc and returned as undeliverable (jg) (Entered: 12/20/2001) |
| 12/27/2001 | 55 | MOTION by Lafonza Earl Washington Sr. for trial by jury (lg) (Entered: 01/04/2002) |
| 12/27/2001 | 56 | MOTION by Lafonza Earl Washington Sr. for joinder of claims and remedies, joinder of persons needed for just adjudication, permissive joiner of party defendant David J. Weaver (lg) (Entered: 01/04/2002) |

| | | |
|---|---|---|
| 12/27/2001 | 57 | MOTION by Lafonza Earl Washington Sr. for removal to another district (lg) (Entered: 01/04/2002) |
| 12/27/2001 | 58 | MOTION by Lafonza Earl Washington Sr. for the awarding of interim attorney fees for expert testimony (lg) (Entered: 01/04/2002) |
| 12/27/2001 | 59 | OBJECTIONS by Lafonza Earl Washington Sr. to order referring all pretrial proceedings to Magistrate Judge Wallace Capel Jr. [50-1] (lg) Modified on 01/04/2002 (Entered: 01/04/2002) |
| 12/27/2001 | 60 | DOMESTIC terrorisms on real properly oweners by Federal Public Officials neglect and suppressions of bringing - RICO corporate reacketeers etc. . . (lg) Modified on 01/04/2002 (Entered: 01/04/2002) |
| 12/27/2001 | 61 | NOTICE by Lafonza Earl Washington Sr. of hearing on application for interim attorney fees, judgment by default, petition for correctionof clerical mistakes and ommissions, objections to order of reference, motion for trial, motion for trial, motion for joinder of cliams, motion for removal and motion for the awarding of interim attorney fees (lg) (Entered: 01/04/2002) |
| 12/27/2001 | 62 | PROOF of mailing of pleading #'s 55-61 (lg) (Entered: 01/04/2002) |
| 01/02/2002 | 63 | MOTION by plaintiff to compel ministerial and statutory duties with notice of hearing and proof of mailing (cm) (Entered: 01/04/2002) |
| 01/11/2002 | 64 | MOTION by plaintiff Lafonza Earl Washington Sr. for order to correct clerical omissions (Nunc Pro Tunc) (jg) (Entered: 01/14/2002) |
| 01/11/2002 | 65 | MOTION by plaintiff Lafonza Earl Washington Sr. for preferential setting (jg) (Entered: 01/14/2002) |
| 01/14/2002 | 66 | PROOF of mailing by plaintiff, Lafonza Earl Washington Sr., of documents 64 and 65 (jg) (Entered: 01/14/2002) |
| 01/14/2002 | 67 | PETITION by plaintiff, Lafonza Earl Washington Sr., for execution and enforcement of statutory final judgment with disbursement of awards (jg) (Entered: 01/15/2002) |
| 01/14/2002 | 68 | MOTION by plaintiff, Lafonza Earl Washington Sr., for preferential setting regarding statutory judgment STRICKEN FROM COURT RECORD (jg) Modified on 01/30/2002 (Entered: 01/15/2002) |
| 01/14/2002 | 69 | PROOF of mailing by plaintiff, Lafonza Earl Washington Sr., of documents 67 and 68 (jg) (Entered: 01/15/2002) |
| 01/17/2002 | 70 | LETTER by plaintiff addressed to Congressman Kildee, dated 1/11/02 STRICKEN FROM COURT RECORD (cm) Modified on 01/30/2002 (Entered: 01/22/2002) |
| 01/28/2002 | 71 | REQUEST by plaintiff Lafonza Earl Washington Sr. for senate and house investigations with proof of mailing (kg) (Entered: 01/29/2002) |
| 01/28/2002 | 72 | ORDER by Magistrate Judge Wallace Capel Jr. striking motion for preferential setting regarding statutory by Lafonza Earl Washington Sr. [68-1] [EOD Date 1/30/02] (kg) (Entered: 01/30/2002) |

| 01/28/2002 | 73 | ORDER by Magistrate Judge Wallace Capel Jr. striking letter by Lafonza Earl Washington Sr. [70-1] [EOD Date 1/30/02] (kg) (Entered: 01/30/2002) |
| 02/14/2002 | 74 | MOTION by plaintiff Lafonza Earl Washington Sr. for correction of the records and errors and omission of continuously repeated clerical mistakes and for emergency hearing of miscellaneous matters (kg) (Entered: 02/20/2002) |
| 02/19/2002 | 75 | PETITION by plaintiff Lafonza Earl Washington Sr. for preliminary injunction without notice - delay in issuing preliminary injunction will cause irreparable injuries (kg) (Entered: 02/20/2002) |
| 02/19/2002 | 76 | APPLICATION by plaintiff Lafonza Earl Washington Sr. to individual justice (kg) (Entered: 02/20/2002) |
| 02/19/2002 | 77 | PROOF of service by Lafonza Earl Washington Sr. of [76-1], [75-1], [74-1] by mail (kg) (Entered: 02/20/2002) |
| 04/01/2002 | 78 | MOTION by Lafonza Earl Washington Sr. and demand for judgment with proof of mailing (lg) (Entered: 04/03/2002) |
| 04/09/2002 | 80 | LETTER by plaintiff Lafonza Earl Washington Sr., with attachments (nh) (Entered: 04/23/2002) |
| 04/18/2002 | 79 | NOTICE by the court of setting hearing on motion for more definite statement of claims, in any, against Nomas Corp by Nomas Corp [14-3] and motion for more definite statement by Trott Trott P C, Fair Debt Coll Clk [12-1] for 11:00 5/2/02 with proof of mailing (nh) (Entered: 04/22/2002) |
| 04/22/2002 | 81 | ORDER by Judge George E. Woods holding in abeyance the following: motion and demand for judgment [78-1], motion for correction of the records and errors and omission of continuously repeated clerical mistakes and for emergency hearing of miscellaneous matters [74-1], motion to compel ministerial and statutory duties [63-1], motion for clerk's entry of default as to Dennis Allen Inc, Dennis Allen, James R. Blankenship, Robert Pickel, Melvin McCree, Winegarden Shedd, L. David Lawson, John R. Tucker, Robert Vitito, Nomas Corp, Steven I. Alpert, Robert A. Trott, Fair Debt Coll Clk, Trott Trott P C, Citizens Bank Loan, Citizens Bank [45-1], motion for default judgment as to defendant Dennis Allen Inc [44-1], motion for default judgment as to defendant Dennis Allen [43-1], motion for default judgment as to defendant James R. Blankenship [42-1], motion for default judgment as to defendant Winegarden Shedd [41-1], motion for default judgment as to defendant Robert Pickel [40-1], motion for default judgment as to defendant Melvin P. McCree [39-1], motion for default judgment as to defendant L. David Lawson [38-1], taking motion for default judgment as to defendant John R. Tucker [37-1], motion for default judgment as to defendant Robert Vitito [36-1], motion for default judgment as to defendant Nomas Corp [35-1], motion for default judgment as to defendant Steven I. Alpert [34-1], motion for default judgment as to defendant Robert A. Trott [33-1], motion for default judgment as to defendant Citizens Bank [32-1], motion for default judgment as to defendant Fair Debt Coll Clk [31-1], motion for default judgment as to defendant Trott Trott P C [30-1], and motion for default judgment as to defendant Citizens Bank Loan [29-1] By LaFonza Washington, Sr. setting deadline for answer to order to show to be filed within fourteen days of the date of this order with |

| | | proof of mailing [EOD Date 4/26/02] (nh) (Entered: 04/26/2002) |
|---|---|---|
| 04/22/2002 | 82 | ORDER by Judge George E. Woods denying application for interim attorney fees [53-1] denying motion for the awarding of interim attorney fees expert testimony [58-1] denying motion for trial by jury [55-1] denying motion for joinder of claims and remedies, joinder of persons needed for just adjudication, permissive joiner of party defendant David J. Weaver [56-1] denying motion for removal to another district [57-1] and denying request for senate and house investigations by LaFonza Washington, Sr. [71-1] with proof of mailing [EOD Date 4/26/02] (nh) (Entered: 04/26/2002) |
| 05/02/2002 | | MOTION hearing held and continued on motion for more definite statement by defendantsssss [18-1] to 2:30 5/9/02, motion to strike plaintiff's complaint by defendantsssss [18-2] to 2:20 5/9/02, motion to dismiss by Nomas Corp [14-1] to 2:30 5/9/02, motion to strike the complaint by Nomas Corp [14-2] to 2:30 5/9/02, motion for more definite statement of claims, in any, against Nomas Corp by Nomas Corp [14-3] to 2:30 5/9/02, motion for more definite statement by Trott Trott P C, Fair Debt Coll Clk [12-1] to 2:30 5/9/02, motion to strike by Trott Trott P C, Fair Debt Coll Clk [12-2] to 2:30 5/9/02 - Magistrate Judge Wallace Capel Jr. - Court Reporter: cv tape 02-17 (pp) (Entered: 05/03/2002) |
| 05/03/2002 | 83 | ORDER and notice by Magistrate Judge Wallace Capel Jr., setting show cause hearing for 2:30 5/9/02 [EOD Date 5/7/02] (nh) (Entered: 05/07/2002) |
| 05/06/2002 | 84 | PETITION by plaintiff Lafonza Earl Washington Sr. for writ of mandamus (nh) (Entered: 05/08/2002) |
| 05/06/2002 | 85 | MOTION by plaintiff Lafonza Earl Washington Sr. to vacate and set aside "Order re: Plaintiff's outstanding motions" (nh) (Entered: 05/08/2002) |
| 05/06/2002 | 86 | MOTION by plaintiff Lafonza Earl Washington Sr. to vacate and set aside notice of hearing or in the alternative, grant plaintiff his timely demand for judgments and his disbursement of awards as a purely ministerial function and duty (nh) (Entered: 05/08/2002) |
| 05/06/2002 | 87 | MOTION by plaintiff Lafonza Earl Washington Sr. to vacate and set aside show case order re: Plaintiff's service of summons and complaint (nh) (Entered: 05/08/2002) |
| 05/06/2002 | 88 | PROOF of service by plaintiff Lafonza Earl Washington Sr. of [84-1], [85-1], [86-1], [87-1] (nh) (Entered: 05/08/2002) |
| 05/07/2002 | 89 | AFFIDAVIT of Patrick G. Kreuse regarding attorney fees and costs for 5/2/02 hearing for which plaintiff failed to appear (nh) (Entered: 05/09/2002) |
| 05/09/2002 | | SHOW cause hearing on order setting show cause hearing for 2:30 5/9/02 [83-1] held regarding plaintiff's failure to appear at hearing on 5/2/02. Plaintiff appeared and record made as to his failure to appear and to adequately prosecute his case. - Magistrate Judge Wallace Capel Jr. -Court Reporter: cv tape 02-18 (pp) (Entered: 05/10/2002) |
| 05/09/2002 | | MOTION hearing held on motion for more definite statement by defendants [18-1], motion to strike plaintiff's complaint by defendants [18-2], motion to |

| | | dismiss by Nomas Corp [14-1], motion to strike the complaint by Nomas Corp [14-2], motion for more definite statement of claims, in any, against Nomas Corp by Nomas Corp [14-3], motion for more definite statement by Trott Trott P C, Fair Debt Coll Clk [12-1], motion to strike by Trott Trott P C, Fair Debt Coll Clk [12-2] - disposition: UNDER ADVISEMENT - Magistrate Judge Wallace Capel Jr. - Court Reporter: cv tape 02-18 (pp) (Entered: 05/10/2002) |
|---|---|---|
| 05/10/2002 | 90 | ORDER by Magistrate Judge Wallace Capel Jr., enjoining plaintiff from filing further papers [EOD Date 5/14/02] (lg) (Entered: 05/14/2002) |
| 05/13/2002 | 91 | TRANSCRIPT taken on 5/9/02 of motion hearing (lg) (Entered: 05/16/2002) |
| 05/14/2002 | 92 | ORDER by Magistrate Judge Wallace Capel Jr. denying motion to vacate and set aside show case order re: Plaintiff's service of summons and complaint by Lafonza Earl Washington Sr. [87-1], denying motion to vacate and set aside notice of hearing or in the alternative, grant plaintiff his timely demand for judgments and his disbursement of awards as a purely ministerial function and duty by Lafonza Earl Washington Sr. [86-1], denying motion to vacate and set aside "Order re: Plaintiff's outstanding motions" by Lafonza Earl Washington Sr. [85-1] [EOD Date 5/16/02] (lg) (Entered: 05/16/2002) |
| 05/15/2002 | 93 | REPORT and recommendation by Magistrate Judge Wallace Capel Jr. that the petition for writ of mandamus by Lafonza Earl Washington Sr. [84-1] be denied [EOD Date: 5/21/02] (lg) (Entered: 05/21/2002) |
| 05/20/2002 | 94 | REPORT and recommendation by Magistrate Judge Wallace Capel Jr. that plaintiff pay Nomas Corp attorney's fee in the amount of $887.46 for his failure to appear before the court on 5/2/02 [EOD Date: 5/22/02] (lg) (Entered: 05/22/2002) |
| 05/20/2002 | 95 | PROOF of service of affidavit re mailing "notice and order for plaintiff to show cause (lg) (Entered: 05/22/2002) |
| 05/31/2002 | 96 | REPORT and recommendation by Magistrate Judge Wallace Capel Jr. that the complaint [1-1] be dismissed with attachment A [EOD 6/4/02] (lg) (Entered: 06/04/2002) |
| 05/31/2002 | 97 | ORDER by Judge George E. Woods denying petition for writ of mandamus by Lafonza Earl Washington Sr. [84-1], denying petition for preliminary injunction without notice - delay in issuing preliminary injunction will cause irreparable injuries by Lafonza Earl Washington Sr. [75-1] adopting report & recommendation [93-1] [EOD Date 6/4/02] (lg) (Entered: 06/04/2002) |
| 06/11/2002 | 98 | EXPARTE motion and brief by plaintiff Lafonza Earl Washington Sr. for temporary, mandatory and permanent injunction with affidavit, notice of hearing and proof of service (kg) (Entered: 06/12/2002) |
| 06/11/2002 | 99 | PETITION by plaintiff Lafonza Earl Washington Sr. for order adopting unopposed report and recommendation (kg) (Entered: 06/12/2002) |
| 06/12/2002 | 100 | ORDER by Judge George E. Woods accepting report & recommendation [96-1] and imposing attorney fees for failure to appear, with proof of service [EOD Date 6/12/02] (kg) (Entered: 06/12/2002) |
| | | |

| 06/24/2002 | 101 | ORDER by Judge George E. Woods denying petition for order adopting unopposed report and recommendation by Lafonza Washington Sr. [99-1] with proof of service [EOD Date 6/25/02] (kg) (Entered: 06/25/2002) |
| 06/24/2002 | 102 | JUDGMENT entered by Judge George E. Woods for defendants [EOD Date: 6/25/02] (kg) (Entered: 06/25/2002) |
| 06/24/2002 | 103 | ORDER by Judge George E. Woods dismissing complaint [1-1] with proof of service [EOD Date 6/25/02] (kg) (Entered: 06/25/2002) |
| 06/24/2002 | 104 | RESPONSE by Winegarden Shedd, L. David Lawson, John R. Tucker, Robert Vitito, Citizens Bank Loan, Citizens Bank to motion for temporary, mandatory and permanent injunction by Lafonza Earl Washington Sr. [98-1] with exhibit A (kg) (Entered: 06/26/2002) |
| 06/24/2002 | 105 | RESPONSE by Winegarden Shedd, L. David Lawson, John R. Tucker, Robert Vitito, Citizens Bank Loan, Citizens Bank to petition for order adopting unopposed report and recommendation by Lafonza Earl Washington Sr. [99-1] with exhibit A (kg) (Entered: 06/26/2002) |
| 06/24/2002 | 106 | PROOF of service by Winegarden Shedd, L. David Lawson, John R. Tucker, Robert Vitito, Citizens Bank Loan, Citizens Bank of [105-1], [104-1] (kg) (Entered: 06/26/2002) |
| 06/27/2002 | 107 | SUPPLEMENTAL by plaintiff Lafonza Earl Washington Sr. to complaint [1-1] with declaration of homestead, abstract of judgment, notice of hering and proof of service (kg) (Entered: 06/28/2002) |
| 06/27/2002 | 108 | DECLARATION by plaintiff Lafonza Earl Washington Sr. to initiate contempt proceedings, failure to obey constitutional and statutory enforcement and execution ministerial duties by the clerk of the court, with brief (kg) (Entered: 06/28/2002) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 01/13/2010 12:04:45 | | | |
| **PACER Login:** | wg0006 | **Client Code:** | 72240.0639-4158 |
| **Description:** | Docket Report | **Search Criteria:** | 2:01-cv-74022-GEW-WC |
| **Billable Pages:** | 8 | **Cost:** | 0.64 |

# Exhibit  I

Lafonza Earl Washington
7010 Cranwood Drive
Flint, MI   48505
Tel:  810.787.3150
Cell: 810.922.0308


June 4, 2006


TO:   Clerk of the Court
      United States Bankruptcy Court
      Southern District of New York
      Kathleen Farrell-Willoughby or
      current clerk
      One Bowling Green
      New York, N.Y.  10004

            - and -

      United States Department of Justice
      Alberto Gonzalez, U.S. Attorney General
      950 Pennsylvania Avenue, N.W.
      Washington, D.C.  20530-0001

            - and -

      Treasurer of the United States
      Anna Escobedo Cabral
      1500 Pennsylvania Avenue, N.W.
      Washington, D.C.  20220

            - and -

      National Labor Relations Board
      Robert J. Battista, Chairman of the Board
      1099 14th Street, N.W.
      Washington, D.C.  20570-0001

            - and -

      United States Secretary of Labor
      Elaine Chao
      200 Constitution Avenue, N.W.
      Washington, D.C.  20210

            - and -

      United States Secretary of Health & Human Services
      Michael O. Leavitt
      200 Independence Avenue, S.W., Room 615F
      Washington, D.C.  20201

            - and -



RECEIVED
JUN 1 3 2006

Department of the Treasury
Judgment Fund Section
Financial Management Service
3700 East-West Highway, Room 6F03
Hyattsville, MD 20782

        Re:  In re Delphi Corporation et al, Debtors
            Case No. 05-44481 (RDD)

Greetings Clerk, Federal Officers and Office:

    Enclosed you will find:

1.   Ex Parte Application Filed By Judgment/Order
    Creditor and "Plaintiff" Lafonza Earl Washington
    seeking Preliminary, Mandatory and Permanent
    Injunctions Without Notice Against "Defendants",
    the United States Attorney General Alberto
    Gonzalez, Clerk of the Above-Named Court
    Kathleen Farrell-Willoughby, Treasurer of the
    United States Anna Escobedo Cabral, the U.S.
    Department of the Treasury - Judgment Fund
    Section - Financial Management Service, the
    National Labor Relations Board Chairman
    Robert J. Battista, the United States
    Secretary of Labor Elaine Chao and the United
    States Secretary of Health and Human Services
    Michael O. Leavitt, "DELAY" In Issuing the
    Injunction "IS" Causing "7" Years Continuous
    and Repeated Human Rights, Personal Rights,
    Property Rights As Well As Any/All Other
    Citizenship Rights Etc., Irreparable Injuries
    Prohibited By Federally Guaranteed Protections,
    Being Directly Caused By Prohibited Corporate
    Acts That Are "ENTIRELY" Without Authority and
    "EQUITY" Always Enjoins Such Acts.

2.   Proof of Service.

    Please file according to recording duties legally owed pursuant
to the Federal Rules of Bankruptcy Procedure, Rule 5005 (a) (1).
Thank you.

                In Truth, Justice & Peace,

                *Earl Washington*

                Earl Washington

                *Earl Washington*

Department of Justice > USAM > Title 4 > Civil Resource Manual
prev | next

# 226 FMS Form 194 -- Judgment Fund Payment Request

**FMS Form 194**
**Department of the Treasury**                                **AUTHORIZED FOR LOCAL REPRODUCTION**

# FMS

**Judgment Fund**
**Payment Request**
**(Litigative Award)**

| **FOR FMS USE ONLY: Z-** | *General Instruction*: Use this form to transmit to FMS a request to certify a litigative award against the United States for payment from the Judgment Fund, under 31 U.S.C. § 1304. |
|---|---|

Date:  __June 4, 2006__

Judgment Fund Section
Financial Management Service
Department of the Treasury
Room 6F03
3700 East-West Highway
Hyattsville, Maryland 20782
(Telephone: (202) 874-6664)

Matter of: __In re Delphi Corp., et al, debtors__
__Claim No.'s 257; 264; 288; and 297__

Dear Sir or Madam:

I am the authorized representative of the United States in the captioned matter. As described in the enclosed documentation, I certify all of the pertinent criteria required by law for the approval of the claim(s) has been satisfied. I believe the award made in the enclosed judgment or settlement is payable by the United States. The United States will seek no further judicial review of this award, and I have obtained all approvals necessary for its referral for payment.

I believe that this award qualifies for payment pursuant to 31 U.S.C. § 1304. Accordingly, I request that you certify this award for payment from the Judgment Fund established by that law. Enclosed are completed copies of FMS Form 196: Judgment Fund Award Data Sheet; FMS Form 197 or FMS Form 197A: Voucher for Payment; the judgment or settlement agreement; and any other enclosures required by FMS regulations. Unless payment by electronic funds transfer is indicated on FMS Form 196, please have the check sent to the agency contact shown in item 5(c) of FMS Form 196.

Signature

Name (printed or typed)

Title and Agency

Enclosures: FMS Form 196, FMS Form 197 or 197A, and FMS Form 198.

# Judgment Fund Award Data Sheet

| ITEMIZATION OF AMOUNT PAYABLE FROM THE JUDGMENT FUND | AMOUNT TO BE PAID | CITATION TO LEGAL AUTHORITY |
|---|---|---|
| 1. Principal | $120,000,000.00 | Title:31 USC §§ 1304(a)(1); 1305(2),(3) and (5);1512-1515; Title:11 USC § 502(a); Fed.R of Bankr.P 2019(b)(2); 3001(f); 3003(c)(4) etc. |
| 2. Attorney Fees | N/A | |
| 3. Costs | $30,000,000.00 plus for "30" years | Title:31 USC §§ 1304(a); 1305(2); 1512-1515; Title 11 USC § 502(a) etc. |
| 4. Interest | $157,500,000.00 * 15% APR | Id. |
| Starting and Ending Dates for Interest Accrual | Start Date 9/6/1999 | End Date when paid in full |
| 5. Total Amount Payable from the Judgment Fund | $307,500,000.00 | |

| **COMPLETE ONLY IF DEDUCTIONS ARE TO BE MADE FROM THE AMOUNT PAYABLE FROM THE JUDGMENT FUND *** | | |
|---|---|---|
| 6. Agency Name and Agency Location Code (ALC) to Receive Offset | Amount to be Deducted | Reason(s) for Deduction(s) and Entity to Receive Deduction(s) |
| | a. | |
| | b. | |
| | c. | |
| 7. Total Amount to be Deducted | | |
| 8. Net Amount Payable to Claimant | | |

If amount for fees, costs, or interest was included in the principal amount (stated on line 1) as part of a "lump sum award," enter "INCLUDED ABOVE" on lines 2 through 4. Enter "NONE" for any of those items (principal, fees, costs, or interest) for which no amount was awarded/included.

1. Enter the principal amount payable (excluding attorney fees, costs, and interest) and cite the legal authority for that award (for instance, "FTCA, 28 U.S.C. 2672"or "5th Amendment Taking").
2. Enter attorney fees payable (if any) and cite legal authority for that award [for instance, "Freedom of Information Act, 5 U.S.C. 552(a)(4)(E)"].
3. Enter the costs payable (if any) and cite legal authority for that award [for instance, " 28 U.S.C. 2412(a)"].
4. If the interest was calculated by the submitting agency, enter the total amount and cite the legal authority for that award [for instance, "Back Pay Act, 5 U.S.C. 5596(b)(2)"]. If the Judgment Fund is to calculate the interest, list only the dates that interest accrual starts.
5. Total amounts shown in lines 1 through 4 and enter.
6. Enter any deductions specified in the judgment or settlement agreement, or debts to be setoff under 31 U.S.C. 3728. Indicate the reason for the deduction (for instance, "FTCA withholding" or "debt setoff pursuant to 31 U.S.C. 3728") and the payee agency's name and ALC. If this deduction is a "debt setoff" pursuant to 31 U.S.C. 3728, you must attach a copy of the judgment or the plaintiff's agreement to the debt setoff. Otherwise, FMS must seek the claimant's consent to the setoff and may only withhold from payment an amount sufficient to pay the debt plus the costs of litigation. Litigation will be required to effect the setoff if there is no judgment of debt or if the claimant declines consent to the setoff. If there are more than three deductions, attach additional copies of this form. If there are no deductions, enter "NONE."
   * Administrative debts that have been certified to the Secretary of the Treasury through the Treasury Offset Program will be setoff automatically.
7. Total amounts shown in all columns of line 6 (a, b and c) and enter.
8. Subtract the amount in line 7 from that in line 5. If greater than zero, enter the difference. If the difference is zero or less, enter "NONE."



## Judgment Fund Voucher for Payment

1.  **Total Amount:** $307,500,000.00

2.  **Submitting Agency Contact Name:** Alberto Gonzalez
    Telephone Number: 202 - 353- 4641

3.  **Electronic Funds Transfer (EFT) Information:**
    a) Payee Account Name: Lafonza Earl Washington
    b) American Banking Association (ABA) Routing Number (9 digits): 07 20003 26
    c) Payee Account Number: 721357689
    d) Checking: ☒ Savings: ☐
    e) Financial Institution Name, City, State: JPMorgan Chase Bank, N.A.  Flint, Michigan

4.  **Interagency Payment System Information:**
    a) Agency Name:
    b) Agency Location Code (ALC ) Number (8 digits):
    c) Standard General Ledger (SGL) Number (4 digits):
    d) Treasury Account Symbol (TAS)

5.  **Mailing Address for Check:** *(Payee name not to exceed 32 characters.)*  N/A
    a) Payee Name:
    b) Payee Name:
    c) Address Line 1:
    d) Address Line 2:
    e) City: _____ State: _____ Zip Code: _____

6.  **Taxpayer Identification Number (s):**
    a) 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                    b)

7.  **Reimbursement Information for Contract Disputes Act, No FEAR Act and Firefighters Fund:** N/A
    a) Agency Name:
    b) Contact Name:
    c) Contract Number (CDA cases):
    d) Telephone Number: ____-____-_____
    e) Address:
    f) City: _____ State: _____ Zip Code: _____

8.  **If payment will be made in a Foreign Currency, please provide the following information:** N/A
    Country: _____ Currency: _____

9.  **FOR USE BY JUDGMENT FUND BRANCH ONLY:**
    Z Number: _____ J/D Number: _____ GLOWS Code/Agency: _____

    _____
    Claim Analyst *Signature and Date*                    Amount to Pay          Appropriation Code

    _____
    Claims Reviewer *Initials and Date*

# Judgment Fund Transmittal

**Date:** June 4, 2006
Department of the Treasury
Financial Management Service
Judgment Fund Branch
3700 East-West Highway, Room 6E15
Hyattsville, Maryland 20782
Telephone: (202) 874-6664

**Claimant/Plaintiff Name:** Lafonza Earl Washington

**Address:** 7010 Cranwood Drive  Flint, MI  48505

**Claimant/Plaintiff Counsel's Name:** N/A

**Telephone Number:** ___ ___ ___ - ___ ___ ___ - ___ ___ ___ ___

**Name of Agency Subject to Claim:** Department of Justice & Attorney General

**E-mail Address (required for electronic payment confirmation):** _____

**Telephone Number:** ___ ___ ___ - ___ ___ ___ - ___ ___ ___ ___

**Brief Description of Facts Giving Rise to Claim:** (see attachment)

## Check One If Applicable:

❑ Contract Disputes Act           ❑ No FEAR Act           ❑ Firefighters Fund

Dear Sir or Madam:

I am an authorized representative of the United States in the above captioned matter. As described in the enclosed documentation, I certify that all pertinent criteria required by law for the approval of this claim have been satisfied. If an administrative claim, the settlement was made with the United States in this matter and any portions of the agreement required to be paid from the agency funds will be or have been paid from those funds. If a litigative claim, the award made in the enclosed judgment or settlement is payable by the United States and any portions of the award required to be paid from other parties or sources will be or have been paid from those parties or sources. The United States will not seek further judicial review of this award and I have obtained all approvals necessary for its referral for payment.

I believe that this award qualifies for payment pursuant to 31 U.S.C. § 1304. Accordingly, I request that you certify this award for payment from the Judgment Fund established by that law. Enclosed are completed copies of FMS Form 196: *Judgment Fund Award Data Sheet*; FMS Form 197: *Judgment Fund Voucher for Payment*; the judgment or settlement agreement; and any other enclosures required by FMS. Unless payment by electronic funds transfer is indicated, please have the check sent to the check address provided on FMS Form 197.

_____
Submitting Agency Authorized Signature

_____
Name and Title (*print or type*)

_____
Submitting Agency E-mail Address (*required for electronic payment confirmation*)

_____
Agency File Number

_____
Street Address

_____
City, State and Zip Code

**General Instructions:** Use this form, FMS 194, to transmit a request to certify an administrative or litigative award against the United States for payment from the Judgment Fund under 31 U.S.C. § 1304.
**Enclosures:** FMS Form 196 and FMS Form 197. *Incomplete submissions will be returned to the submitter without action.*

**FMS FORM 194** (PREVIOUS EDITIONS ARE OBSOLETE)
11-03

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE

<u>JUDGMENT FUND TRANSMITTAL</u> (Attachment)


Brief Dexcription of Facts Giving Rise to Claim:

"<u>100%</u>" deprivations of "ANY/ALL" employment related accumulated
compensations, benefits to survive or live on for "<u>7</u>" years and
continuing, bankruptcy frauds, bank frauds, extortions under
color of law to seize "Nonforfeitable", "Vested", Retirement
benefits, human rights denials to buy food, clothes, homestead,
transportation, medical care, enjoyments of life etc., yet
legally owed after "<u>7</u>" years but "NOT" paid even after "33"
years service!

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
                                     :
   IN RE                             :    CHAPTER 11
                                     :
   DELPHI CORPORATION et al.,        :    CASE NO. 05-44481 (RDD)
                                     :
                    Debtors.         :    (JOINTLY ADMINISTERED)
                                     :
------------------------------------x
```

EX PARTE APPLICATION
FILED BY JUDGMENT/ORDER CREDITOR AND "PLAINTIFF"
LAFONZA EARL WASHINGTON SEEKING PRELIMINARY,
MANDATORY AND PERMANENT INJUNCTIONS WITHOUT NOTICE
AGAINST "DEFENDANTS", THE UNITED STATES ATTORNEY
GENERAL ALBERTO GONZALEZ, CLERK OF THE ABOVE-NAMED
COURT KATHLEEN FARRELL-WILLOUGHBY, TREASURER OF
THE UNITED STATES ANNA ESCOBEDO CABRAL, THE U.S.
DEPARTMENT OF THE TREASURY-JUDGMENT FUND SECTION-
FINANCIAL MANAGEMENT SERVICE, THE NATIONAL LABOR
RELATIONS BOARD CHAIRMAN ROBERT J. BATTISTA, THE
UNITED STATES SECRETARY OF LABOR ELAINE CHAO AND
THE UNITED STATES SECRETARY OF HEALTH AND HUMAN
SERVICES MICHAEL O. LEAVITT, "DELAY" IN ISSUING
THE INJUNCTION "IS" CAUSING "7" YEARS CONTINUOUS
AND REPEATED HUMAN RIGHTS, PERSONAL RIGHTS,
PROPERTY RIGHTS AS WELL AS ANY/ALL OTHER CITIZEN-
SHIP RIGHTS ETC., IRREPARABLE INJURIES PROHIBITED
BY FEDERALLY GUARANTEED PROTECTIONS BEING
DIRECTLY CAUSED BY PROHIBITED CORPORATE ACTS THAT
ARE "ENTIRELY" WITHOUT AUTHORITY AND "EQUITY"
ALWAYS ENJOINS SUCH ACTS


TO:   The Clerk of the United States Bankruptcy Court
      for the Southern District of New York Kathleen
      Farrell-Willoughby or current clerk;

                    - and -

      The United States Attorney General
      Alberto Gonzalez;

                    - and -

      The Treasurer of the United States
      Anna Escobedo Cabral, in "JOINDER" with
      The Department of the Treasury
      Judgment Fund Section
      Financial Management Service



- 2 -

- and -

The National Labor Relations Board
Robert J. Battista, Chairman

- and -

The United States Secretary of Labor
Elaine Chao

- and -

The U.S. Secretary of Health and Human Services
Michael O. Leavitt

I

Lafonza Earl Washington the Judgment/Order Creditor and Plaintiff herein this demand for statutory Ex Parte Application issuance without delay, is now and at all times mentioned was a resident of the City of Flint, County of Genesee, State of Michigan.

II

Defendant, Kathleen Farrell-Willoughby is or was the Clerk of the United States Bankruptcy Court for Southern District of New York, located at One Bowling Green, New York, New York, 10004-1408.

III

Defendant, Alberto Gonzalez is the Attorney General of the United States and head executive of the United States Department of Justice headquartered in the District of Columbia in Washington,D.C.

IV

Defendant, Anna Escobedo Cabral is the Treasurer of the United States Treasury headquartered in the District of Columbia in Washington, D.C.

V

Defendant, Department of the Treasury – Judgment Fund Section – Financial Management Service is a final payment executive agency located in Hyattsville, Maryland.

VI

Defendant, Robert J. Battista is the Chairman of the National Labor Relations Board located in the District of Columbia in Washington, D.C.

VII

Defendant, Elaine Chao is the U.S. Secretary of Labor located in the District of Columbia in Washington, D.C.

VIII

Defendant, Michael O. Leavitt is the U.S. Secretary of Health and Human Services located in the District of Columbia in Washington, D.C.

IX

That if the above-named Plaintiff and Judgment/Order Creditor be required to give (each) above-named Defendant Notice of this Ex Parte Application for Preliminary, Mandatory, and Permanent Injunctions it would cause a delay in issuance of the injunctions of one (1) to five (5) days, and by reason of this delay, Mr. Washington and family will suffer deliberate "HUMAN RIGHTS", "PERSONAL RIGHTS", "PROPERTY RIGHTS", "CITIZENSHIP RIGHTS", violations..., causing "7" years of repeated and continuous irreparable damages for the reasons that:

1. The monopoly and combinations of monopolies controlled or operated under the guiles or artful deceptions and duplicities of

- 4 -

the General Motors Corporation, the Delphi Corporation et al, names,
are illegally seizing "ANY/ALL" rights, titles, interests, posses-
sions, occupancies, etc., to "ANY/ALL" real and personal properties
accumulated as the fruits of labor since legal hire-in to GM on
June 13, 1973, depriving Mr. Washington of 100% of the "INHERENT"
natural rights to provide the necessities of money, credit, food,
clothes, transportation, health care, benefits of retirement compen-
sations, pension compensations, automatic and statutory worker's
compensations, including damages for intentional torts as well as
demanded Redemption Agreement, plant closing distributions, et al.

2.  The GM, Delphi et al, monopolies and combinations of
monopolies are continuously causing irreparable injuries against
Mr. Washington and family by their seditious and subversive
activities of overthrowing the bankruptcy laws of the United States
in this U.S. Bankruptcy Court for the Southern District of New York
which had "NO" territorial jurisdiction over the Oakland County,
Michigan, headquartered Delphi Corporation; nor does the public
records evidence that an affiliates of Delphi Corp., had any case
pending on October 8, 2005, as frauded to attempt to justify the
New York court's prohibited jurisdiction.

3.  The GM, Delphi, International UAW et al, is conspiring and
colluding to overthrow the United States bankruptcy laws by "NOT"
paying Lafonza Earl Washington who filed a Proof of Claim on
October 28, 2005, nunc pro tunc or now for then against Delphi's
October 8, 2005, Voluntary Petition filing.

4.  According to Title 11 U.S.C. § 502 (a), the Delphi
Corporation was "BOUND" to pay the allowable claim that is valid

and is protected by law from being scheduled or being held up by any
vote for reorganization under the Federal Rules of Bankruptcy
Procedure, Rule 3001 (f) and 3003 (c) (4), yet "9" months after this
Court entered Orders for 'HUMAN CAPITAL OBLIGATIONS' and 'CASH
MANAGEMENT' payment of claims the Delphi, GM, International UAW et al,
are compounding the "7" previous years of illegally inflicting
deliberate human rights, etc., violations of seizing 100% of "ALL"
moneys and compensations since September of 1999 when GM wrongfully
attempted to force this employee to the Delphi Corp., without any
application having been made to transfer!

5.   As retaliation for rightfully objecting to be forced to
transfer to Delphi, these corporate monopolies and combinations of
monopolies have caused 100% losses of "ALL" moneys, benefits,
compensations, credit with banks and credit unions to be deprived
and denied this "33" year employee whose wife is also employed with
the Flint educational system for "20" plus years, yet, 100% of "ALL"
of this family's citizenship rights continues to be deprived since
the GM Buick City permanent plant closing.  Retirement was
deprived, as well as all other non-collective bargained compensa-
tions as part of the illegal retaliations.

6.   GM, Delphi et al, offenses against the laws of the United
States against Mr. Washington and family caused illegal evictions
from the family's "EXEMPT" homestead on August 11, 2005, which had
been paid for "3-1/3" times during "15" years of the "30" year FHA
guaranteed mortgage "BOUND" by law to be cancelled under Title 12
USC §§ 1701 et seq., 1735 c (c) of the banks and banking require-
ments under the National Housing Act; yet, since August 11, 2005,
the Washington family is forced by these monopolistic corporate

- 6 -

acts to remain "HOMELESS" and living from relative to relative's
house, inhumanely!

7. Notwithstanding, that since Mr. Washington's legal hire-in
date with GM on June 13, 1973, more than "3,000,000" plus motor
vehicles and parts have been contributed to being produced, yet,
"NOT" one (1) time in "33" years has the monopolistic corporate
combination activities approved the financing of even one (1) motor
vehicle in Mr. Washington's "OWN" name and only "4" motor vehicles
have been financed in both husband and wife's name during this same
period of time.

8. Lafonza Earl Washington and his legal wife of "26" years
Joan A. Washington, have a combined employment service of "65"
years in the same city of Flint, Michigan, yet, the monopolistic
combinations of GM, Delphi, the International UAW et al, have re-
peatedly and continuously seized 100% of "ALL" rights, titles,
interests, possession, ownership, holding, right to trade, buy or
sell "ANY/ALL" real and personal properties illegally without a
valid Court's Order, without just cause whatsoever that can be
evidenced and proved according to fact and law!

9. Notwithstanding, that the human rights sufferings of
Mr. Washington and family are caused by GM's, Delphi's et al,
monopolistic corporate acts the rules of injunctions enjoining
only irreparable injuries has no application to corporate acts,
which are entirely without authority and for which there is no
adequate remedy at law. Equity always enjoins such acts!

10. As a public agency, the Department of Justice is authoriz-
ed to seek an injunction against the uncontested, nonobjected to

claims based on the above-cited injuries colluded in by the Delphi,
GM, International UAW et al, human rights hol ocaustic activities
against fellow citizens without just cause.  As an agency under the
Executive Branch of Government, Mr. Washington and family have the
legal standing to petition the Government for an immediate redress
of the grievances cited herein under Amendment One of the Bill of
Rights to the United States Constitution and the DOJ Agency.

11.   According to the Bankruptcy Reform Act of 1978 under Title
11 U.S.C. § 101 et seq., and the U.S. Attorney General's duty to
appoint U.S. Trustees and Assistant U.S.  Trustees under 28 U.S.C. §
586 or Sections 28 U.S.C. §§ 581-589, these injunctions are demanded
to be enforced against the United States Trustees for the Southern
District of New York the Manhattan Office, as well as Roberta
DeAngelis out of the Executive Office for the U.S. Trustees in
Washington, D.C. who obstructed justice, is engaging in the multi-
billion dollar bankruptcy and bank frauds with the corporations,
assertedly, by repeatedly "NOT" enforcing § 502 (a) nor the Fed.R. of
Bankr. P. Rules 3001 (f) nor 3003 (c) (4) nor the Federal judicial
districts territorial limitations that prohibited the Oakland
County, Michigan, headquartered corporation from forum shopping in
New York based on being "BOUND" to file its petition in the U.S.
Bankruptcy Court for the Eastern District of Michigan...See Title
11 U.S.C. § 101 et seq.; Title 28 U.S.C. §§ 581-589a.

12.   Lafonza Earl Washington and family have – BY THE GRACE OF
GOD – perse vered these "SEVEN" plus years of holocaustic,
inhumane seizings of 100% of United States Citizens economic and
financial entitlements being racketeered, extorted, and bankruptcy
and bank frauded, etc., involving "CONSTITUTIONAL QUESTIONS" of

- 8 -

"ALL" property and other rights caused to be lossed by monopolistic
corporate acts that is, assertedly, a sufficient showing of the
inadequacy of the prescribed administrative relief trusted to be
distributed by the bankruptcy court, bankruptcy judge, including the
U.S. Trustees office, etc.!

13. Pursuant to Title 28 USCA § 509, the U.S. Attorney General
is vested with all functions of other officers, agencies, and
employees of the Department of Justice and is demanded to seek this
public interest, public policy authorized injunctive relief that
Judgment/Order Creditor Mr. Washington have specific remedies under.

14. Plaintiff Washington, as well as the 113,000 hourly GM
employees and 24,000 Delphi hourly employees, are entitled to
injunctive relief against this court's manifest wrongs and injustices
of entering an Order for the Special Attrition Program (SAP) on
March 22, 2006, based on this foreign New York court consummating
GM's, Delphi's, the International UAW's et al, bankruptcy frauds and
bank frauds engagements of falsely pretending to be offering Mr.
Washington an immediate retirement package, yet, using the third-
party operations of Fidelity Investments to put 'FLAGS' or delays on
any prompt payment that has no set date whether 60 or 90 days or
even "6" months, illegally!

15. This foreign New York bankruptcy Court does "NOT" have
jurisdiction over the Delphi Corp., nor the subject matter of the
SAP, yet, in 100% violations of Section 8 of the National Labor
Relations Act (NLRA) under Title 29 U.S.C. §§ 141-187, benefits that
have been accumulated since June 13, 1973, are being publicly
racketeered, extorted, frauded, etc., that are compounding the

"7" year losses of 100% of "ALL" moneys to live on, including the
SAP payment and the allowed valid claims that have "NOT" been paid
for "9" months which requires the interposition of the Government of
the duties vested in the Department of Justice to prevent continued
manifest wrongs and injustices based on this foreign court's condon-
ing the corporations bankruptcy frauds, bank frauds, gross wrongs
and oppressions against Plaintiff Washington and family.  See
GUGGENHEIM -V- WAHL, 203 N.Y. 390, 96 N.E. 726 (1911); E. B.
LATHAM & CO. -V- MAYFLOWER INDUSTRIES, 278 A.D. 90, 103 N.Y.S. 2d
279 (1st Dep't 1951) distinguished by AGHNIDES -V- AGHNIDES, 150
N.Y.S. 2d 371 (Sup. Ct. 1956).

16.   According to Orders resolved in other Federal matters, the
'PUBLIC OFFICIALS' whose duty it is to effectuate or carry out
'PUBLIC LAWS' or regulations "MUST BE" made defendants in any suit to
enjoin or command their enforcement.  See SKAGIT COUNTY -V- NORTHERN
PAC. RY. CO., 61 F.2d 638, 86 A.L.R. 1012 (C.C.A. 9th Cir. 1932).

17.   This Plaintiff agrees to dismiss any further actions for
damages, severally and separately, against each named "PUBLIC
OFFICIAL" named herein who has the constitutional duties of 'OATH'
and 'AFFIRMATION' of office to protect citizens such as the
Washingtons' against the well-known and publicized Delphi, GM,
International UAW et al, bankruptcy frauds, bank frauds, human right
to economically survive etc., violations used as color of law
activities to inflict slavery conditions on this family for "7"
plus years which are clearly evidenced offenses against the laws of
the United States, including the U.S. Constitution "BINDING" upon
the AG et al, to "PROSECUTE" and support the immediate redressings
of to Lafonza Earl Washington and family.

- 10 -

18.  Yet, the AG nor any of the other named executive agency officers has performed its office statutory, non-discretionary duties to enforce the criminal bankruptcy frauds, bank frauds etc., to avoid obstructing justice by the nonenforcement of these crimes as well as civil deprivations which are also offenses against laws of the United States and are asserted "<u>PENAL FELONIES</u>".

19.  According to Guaranteed Loan Agreements with JPMorgan Chase Bank, N.A., Citigroup USA Inc., and other lenders more than $6.5 billion in credit facilities and debtor-in-possession financing received on October 8, 2005, this Plaintiff's case was guaranteed to be paid, yet the 100% deprivations of "<u>ALL</u>" moneys to live on is continuing to be nondisbursed although repeated Applications have been presented to the court and clerk, Delphi, GM, the International UAW, etc.!

X

For all the reasons cited above and below, this Plaintiff has no adequate remedy at law, compounded by and if Defendants, Alberto Gonzalez the U.S. Attorney General, Kathleen Farrell-Willoughby Clerk of the U.S. Bankruptcy Court for the Southern District of New York, Anna Escobedo Cabral Treasurer of the United States, the Department of the Treasury - Judgment Fund Sections - Financial Management Service, the National Labor Relations Board Chairman Robert J. Battista, the U.S. Secretary of Labor Elaine Chao, and the U.S. Secretary of Health and Human Services Michael O. Leavitt is allowed to continue condoning such illegal appropriation delay that is discriminating against the disbursements of Lafonza Earl Washington's statutorily allowed valid payment of the claims that payment was first due on October 8, 2005, according to Delphi's petition requirements.  This Plaintiff is therefore restricted to this action for injunctive relief.

- 11 -

WHEREFORE, Plaintiff requests that:

1.  The Court direct and command its Clerk to immediately disburse a total of $235,714,285.72 with interest computed thru May 4, 2006, at 15% APR,   under Fed.R. of Bankr.P. Rules 2019 (b) (2), 3001 (f), 3003 (c)(4), Title 11 U.S.C. § 502(a), Title 31 U.S.C. §§ 1512, 1515 (b) (1) (B) etc.; or

2.  The Court direct the U.S. Attorney General (AG) Alberto Gonzalez to obtain injunctive relief from the Court commanding the Clerk to immediately disburse a total of $235,714,285.73 with interest computed thru May 4, 2006, at 15% APR, pursuant to the AG's authority under 28 U.S.C.A. § 509, to exercise "VESTED" functions of other officers, agencies, and employees of the Department of Justice, including, the conducting of official matters that are prima facie without the need of investigation, time nor expense self-evidencing the United States Trustees negligence in performing statutory duties to enforce the cited bankruptcy laws according to 28 USCA §§ 533, 581-589 and with specificity § 586; or including Plaintiff's First Amendment Right to petition the Government for a redress of these just grievances; or

3.  In the alternative, the U.S. Attorney General Alberto Gonzalez "CERTIFY" to the Judgment Fund Section, Financial Management Service of the Department of the Treasury the enclosed Forms 194 thru 197 for the immediate payment of the justly claimed $235,714,285.72 and redressing of the compounding of violations by this administrative agency of the New York bankruptcy court abusing its statutory Federal district jurisdiction limitations to consummate and condone the Oakland County, Michigan, headquartered Corporation of Delphi to accomplice the fraudulent filing of the bankruptcy petitions outlawed by Title 28 of the United States Code; or pursuant to Title 31 U.S.C. §

1304 (a) (1); § 1305(2), (3),(4) and (5); §§ 1512 and 1515(b)(1)(B) etc.

4.   In compliance with Title 31 U.S.C. §§ 1512 and 1515 (b) (1) (B) an "EMERGENCY" appropriation disbursement of the $235,714,285.72 is "DEMANDED" to be a necessity apportionment authorized to be immediately paid by the AG involving:

(i)   The safety of the Washington family's "HUMAN LIVES" based on;

A.   The struggle and resistance to escape further slave labor and involuntary servitude after "33" years of service, that is being retaliated against using increased and widespread "MURDER FOR HIRE CONTRACTS" on Lafonza Earl Washington's life locally, statewide, in New York, Detroit etc., where bankruptcy frauds and bank frauds proceedings are being misrepresented and "PUBLISHED" by every media's broadcast or mass distribution of news brainwashing hundreds of thousands of victimized hourly employees and the "PUBLIC" all over this nation with the story of a lawful Delphi bankruptcy story that on "ANY" factual and legal bases are 100% illegal!

B.   Groups and individual "HIRED MURDERERS" are using the same activities to threaten Lafonza Earl Washington openly in the City of Flint and Genesee County every day!

C.   Every step the Washingtons' take we are being "STALKED" by plainclothes individual(s) and uniform city, county or state police engagement in drills of "RELAY BATON HAND-OFFS" used to follow these citizens; the plainclothes operators uses the same game where the driver is always in 100% cell phone conversation seeming to be receiving instructions and the passenger side individual goes under the seats to retrieve a weapon or firearm, opently!

D.   For "7" years and continuing 100% of "ALL" employment related entitlements or moneys have been "FLAGGED" or seized without due process depriving Plaintiff of deliberate economic and

- 13 -

financial stability causing direct conditions of "<u>POVERTY</u>" and
"<u>ENSLAVEMENT</u>" 100%, regardless of Plaintiff having served the
wealthiest motor vehicle manufacturer in the world for "<u>33</u>" years.

E. It is asserted that between July of 2004 and December of
2005, GM, Delphi, the UAW et al, monopolistic combinations seized 50%
to 60% of Plaintiff's wife earnings to compound the financial hard-
ships and disrespect for "<u>HUMAN LIFE</u>" of having enough money to
survive on especially "<u>AFTER</u>" satisfying every lawful requirement to
do so.

F. It is asserted that these corporations monopolistic
combinations violated Federal Housing Administration laws under the
National Housing Act of Title 12 U.S.C. §§ 1701 et seq., 1735c (c) et
seq., to illegally have Plaintiff and family evicted from their
"<u>EXEMPT</u>" homestead purchased thru an FHA "<u>30</u>" year mortgage in
January of 1991, fifteen years ago! Notwithstanding having paid the
purchase price "<u>3-1/3</u>" times, under color of law the corporations
monopolistic combinations evicted this family under the "<u>FALSE
PRETENSES</u>" that their "<u>30 YEAR MORTGAGE</u>" was a landlord tenant
lease! Plaintiff's family remains "<u>HOMELESS</u>" since August 11, 2005,
while subsistance even healthcare and products for "<u>FOUR LEGGED</u>"
animals have increased! or

5. Defendant, Elaine Chao the U.S. Secretary of Labor be
"<u>directed</u>" to authorize the "<u>EMERGENCY</u>" funds of $235,714,285.72
based on the cited safety of human life and the protection of these
citizens (Plaintiff and family) "<u>INHERENT</u>" Natural Rights to real
and personal property especially after Plaintiff and wife of twenty-
six years have a combined service and seniority of "<u>65</u>" years in

the City of Flint serving GM, Delphi, the Flint School District etc., according to Title 31 U.S.C. §§ 1512, 1515 (b) (1) (B) etc.! or,

6.  Defendant, Robert J. Battista Chairman of the National Labor Relations Board be "DIRECTED" to authorize the "EMERGENCY" funds of $235,714,285.72 based on the cited safety of human life and the protection of the Washington family's "INHERENT" natural rights as human beings to hold and have real and personal property as a permanent and inseparable right, pursuant to Title 31 U.S.C. §§ 1512, 1515 (b) (1) (B) etc.! or,

7.  Defendant, Michael O. Leavitt the U.S. Secretary of Health and Human Services be "DIRECTED" to authorize the "EMERGENCY" funds of $235,714,285.72 based on the cited safety of human lives and the protection of the Washington family's "INHERENT" natural rights as human beings to hold and to have real and personal property as a permanent and inseparable right, pursuant to Title 31 U.S.C. §§ 1512, 1515 (b) (1) (B) etc.! or,

8.  Defendant, Alberto Gonzalez the U.S. Attorney General be "DIRECTED" to authorize the "EMERGENCY" funds of $235,714,285.72 based on the cited safety of human lives and the protection of the Washington family's "INHERENT" natural rights as human beings to hold and to have real and personal property as a permanent and inseparable right especially "AFTER" satisfying every lawful requirement to do so, pursuant to Title 31 U.S.C. §§ 1512, 1515 (b) (1) (B) etc., Fed.R. of Bankr.P. Rules 2019 (b) (2), 3001 (f), 3003 (c) (4), Title 11 U.S.C. § 502 (a) etc.

9.  The Government be "DIRECTED" to make "PERMANENT INDEFINITE APPROPRIATION" for the payment of the Judgment/Order that was

entered by the Court on October 8, 2005, for "<u>HUMAN CAPITAL OBLIGA-</u>
<u>TIONS</u>" and "<u>CASH MANAGEMENT</u>" repeatedly demanded by proper Applica-
tion, yet, payment of the claims illegally delayed, denied and
deprived – nunc pro tunc – or now for then, due to and caused
directly by the Government's neglect to protect Plaintiff's as well
as "<u>137,000</u>" hourly employees who are being violated similarly, but
"<u>NOT</u>" the "<u>SAME</u>" as Plaintiff and family's human rights are.

(i)  Pursuant to Title 31 U.S.C. § 1304 "<u>PERMANENT INDEFINITE</u>
<u>APPROPRIATION</u>" was/is "<u>AVAILABLE</u>" and Plaintiff's "<u>DELAY</u>" in receiv-
ing payment was and is continuing to be caused by the "<u>GOVERNMENT'S</u>"
unsuccessful performance of enforcements against prima facie bankruptcy
frauds, bank frauds, racketeerings, as well as other crimes and civil
violations redress and protection legally owed.  See 1980, 59 Comp.
Gen. 259.

(ii)  Plaintiff's unconstitutional and unstatutory "<u>DELAY</u>"
of payments are wrongfully being caused by the Governmental Agencies
named herein negligence in performing its office duties in the
Delphi proceeding that was/is "<u>NOT</u>" contested, contestable, objected
to or is objectionable, nor any grounds for a trial exist on the
merits that in turn outlaws any successful appeal rights by any
party with any legal standing based on the "<u>ORDER FOR RELIEF</u>" being
statutorily provided under Title 11 U.S.C. §§ 301, 502 (a) etc.

10.  Plaintiff has "<u>NOT</u>" received any valid "<u>NOTICE</u>" from the
executive branch that the legally owed funds have been impounded
and no political question for resolution by political branches of
government exists; release and disbursement of the claimed appro-
priated Federal funds is "<u>justiciable</u>" even under the "<u>POLICE</u>

- 16 -

POWER" of the state authorized by Amendment Ten of the Bill of
Rights to the U.S. Constitution and with specificity is "justiciable"
under Federal law.   See Title 31 U.S.C. § 1304 (a) (1); STATE OF
LA. -V- WEINBERGER, D.C. La, 1973, 369 F.Supp.856.

11.   These United States citizens suit to compel the executive
branch of the Federal Government to release "NON-IMPOUNDED" Federal
funds on the ground that such disbursements were specially required
by Congress which appropriated such funds for necessary amounts to
pay final judgments/orders, awards, compromise settlements, and
interest and costs specified in the judgments/orders or otherwise
authorized by law when - (1) payment is "NOT" otherwise provided for
etc., and according to law a citizen exercising citizenship rights
to petition the government for the redress of "EMERGENCY" grievances
involving the saving of the Washington family's human lives and
protection of the necessity of "EXEMPT" homestead property is "NOT"
barred by sovereign immunity.   See Title 31 U.S.C. § 1304 (a) (1);
STATE OF LA. -V- WEINBERGER supra.

12.   Plaintiff be awarded such further relief, at law or in
equity - which is recognized as one - that the court deems proper.


                    "I DECLARE THAT THE STATEMENTS ABOVE ARE
                    TRUE TO THE BEST OF MY INFORMATION,
                    KNOWLEDGE, AND BELIEF."


                    BY: Lafonza Earl Washington
                        Plaintiff & Judgment/Order Creditor

            DATE: June 4, 2006

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
                                    :
IN RE                               :   CHAPTER 11
                                    :
DELPHI CORPORATION et al.,          :   CASE NO. 05-44481 (RDD)
                                    :
              Debtors.              :   (JOINTLY ADMINISTERED)
                                    :
------------------------------------x
```

### PROOF OF SERVICE

STATE OF MICHIGAN)
                 )
COUNTY OF GENESEE)


I, Lafonza Earl Washington deposes, states:

That on June 5, 2006, he did serve by United States Postal Service
mail, postage prepaid, the below-identified documents upon the
below-named persons:

1.  Ex Parte Application Filed By Judgment/Order
    Creditor and "Plaintiff" Lafonza Earl
    Washington seeking Preliminary, Mandatory
    and Permanent Injunctions Without Notice
    Against "Defendants", the United States
    Attorney General Alberto Gonzalez, Clerk of
    the Above-Named Court Kathleen Farrell-
    Willoughby, Treasurer of the United States
    Anna Escobedo Cabral, the U.S. Department
    of the Treasury - Judgment Fund Section -
    Financial Management Service, the National
    Labor Relations Board Chairman Robert J.
    Battista, the United States Secretary of
    Labor Elaine Chao and the United States
    Secretary of Health and Human Services
    Michael O. Leavitt, "DELAY" In Issuing the
    Injunction "IS" Causing "7" Years Continuous
    and Repeated Human Rights, Personal Rights,
    Property Rights As Well As Any/All Other
    Citizenship Rights Etc., Irreparable Injuries
    Prohibited By Federally Guaranteed Protec-
    tions, Being Directly Caused By Prohibited
    Corporate Acts That Are "ENTIRELY" Without
    Authority and "EQUITY" Always Enjoins Such
    Acts.

Please file according to Fed.R. of Bankruptcy P., Rule 5005 (a).
Thank you.

_[signature]_

BY: Lafonza Earl Washington
Judgment/Order Creditor

Mailed to:

Clerk of the Court
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, N.Y.  10004

UNITED STATES DEPARTMENT OF JUSTICE
Alberto Gonzalez
U.S. Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

TREASURER OF THE UNITED STATES
Anna Escobedo Cabral
1500 Pennsylvania Avenue, N.W.
Washington, D.C.  20220
Fax: 202.622.6415

NATIONAL LABOR RELATIONS BOARD
Robert J. Battista
Chairman of the Board
1099 14th Street, N.W.
Washington, D.C.  20570-0001
Tel: 1.866.667.6572

UNITED STATES SECRETARY OF LABOR
Elaine Chao
200 Constitution Avenue, N.W.
Washington, D.C.  20210
Tel: 1.866.487.2365

UNITED STATES SECRETARY OF HEALTH & HUMAN SERVICES
Michael O. Leavitt
200 Independence Avenue, S.W., Room 615F
Washington, D.C.  20201
Tel: 1.877.696.6775
Fax: 1.202.690.7203

DEPARTMENT OF THE TREASURY
JUDGMENT FUND SECTION
FINANCIAL MANAGEMENT SERVICE
3700 East-West highway, Room 6F03
Hyattsville, MD  20782
Tel: 1.202.874.6664

# Case Information

Below is pertinent case information regarding Delphi's chapter 11 filing.

| | |
|---|---|
| **Debtors** | Delphi Corp. |
| **Filing Date** | October 8, 2005 |
| **Case Number** | 05-44481 |
| **Where Filed** | United States Bankruptcy Court for the Southern District of New York |
| **Judge** | Robert D. Drain |
| **Court Filed Documents** | www.delphidocket.com |
| **Bankruptcy Court Website** | www.nysb.uscourts.gov |
| **DIP Financing** | $4.5 billion in credit facilities, including a new $2 billion debtor-in-possession (DIP) financing facility. |
| **Legal Advisors** | John Wm. Butler, Jr. John K Lyons Ron E. Meisler Skadden, Arps, Slate, Meagher & Flom LLP 333 West Wacker Drive Chicago, Illinois 60606 Kayalyn A Marafioti Thomas J. Matz Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, New York 10036 |
| **Notice and Claims Agent** | Kurtzman, Carson Consultants 12910 Culver Blvd., Suite 1 Los Angeles, California 90066 +1 310.823.9000 | www.delphidocket.com |
| **Reorganization Information Hotline** | U.S. +1 866.688.8740 | International: +1 248.812.2601 |
| **Supplier Hotline** | U.S. +1 866.688.8679 | International: +1 248.813.2602 |

# UNITED STATES BANKRUPTCY COURT

*SOUTHERN DISTRICT OF NEW YORK*
*ONE BOWLING GREEN*
*NEW YORK, NY 10004-1408*

KATHLEEN FARRELL-WILLOUGHBY
CLERK OF COURT
TELEPHONE: (212) 668-2870

December 13, 2005

Mr. LaFonza Earl Washington
7010 Cranwood Drive
Flint, MI 48505

Re:    Delphi Corporation - 05-44481(RDD)

Dear Mr. Washington:

We are in receipt of four claims each in the amount of $30,000,000 and filed in the above-referenced bankruptcy matter.  Each claim is recorded separately in the consolidated case and noted on the claims register as follows:

Claim No. 257 filed on October 31, 2005 in Delphi Corporation
Claim No. 264 filed on November 1, 2005 in Delphi Corporation
Claim No. 288 filed on November 2, 2005 in Delphi Automotive Systems (Holding), Inc.
Claim No. 297 filed on November 3, 2005 in Delphi Automotive Systems (Holding), Inc.

As I explained to you telephonically today, I cannot issue an order to pay any of these claims. The decision whether to enter any orders in this case can be made only by the Bankruptcy Judge assigned to the case or the particular proceeding.  If you would like to present a motion to the Judge to request relief, you must, pursuant to Local Rule of Bankruptcy Procedure 5070-1:

"Unless the Court orders otherwise, prior to serving a motion, cross-motion, or application, the moving party or applicant shall obtain a return date from the assigned Judge's chambers."

Local Rule of Bankruptcy Procedure 9004-2(b) states:

"The return date obtained under this rule shall be included in the upper right-hand corner of the caption of the motion or application."

I have included a copy of this Court's  Local Rule of Bankruptcy Procedure 9013-1 which addresses the requirements for filing a motion.  Also enclosed is a copy of Local Bankruptcy Rule 9078-1, which addresses the need for a Certificate of Service.  The motion or application must be served on all parties affected by the motion or application requesting relief.

Mr. LaFonza Earl Washington
Page 2 – December 13, 2005

    This letter and enclosures in no way constitutes all of the information needed to seek relief from the court.  If you require additional assistance, you may want to seek the advice of counsel. The Clerk's Office is prohibited from providing legal advice.

Sincerely,

Kathleen Farrell-Willoughby
Clerk of Court



**U.S. Department of Justice**

Executive Office for United States Trustees

Office of the General Counsel

20 Massachusetts Avenue, NW, Suite 8100          Voice - (202) 307-1399
Washington, D.C. 20530                           Fax - (202) 307-2397

February 23, 2006

Lafonza Earl Washington
7010 Cranwood Drive
Flint, MI 48505

Re: *In re Delphi Corporation,* Case No. 05-44481(RDD)

Dear Mr. Washington:

This responds to your correspondence and telephone calls to the Office of General
Counsel, Executive Office for United States Trustees concerning the bankruptcy case of the
Delphi Corporation ("Debtor"). Based on your letter dated January 31, 2006, other
correspondence you filed with the Bankruptcy Court for the Southern District of New York and
representations made by you during telephone calls to this office, you appear to request that the
United States Trustee Program expedite payment of a proof of claim you allege you have filed
against the Debtor.

The United States Trustee Program is the component of the Department of Justice
responsible for supervising the administration of bankruptcy cases and private trustees under title
11 of the United States Code. In order to respond to your inquiry, we contacted the Office of the
United States Trustee that is responsible for the administration of the Debtor's bankruptcy case
and we reviewed your submissions, the docket, the claims register and a number of orders entered
in the Debtor's case.

Although you allege that you filed a proof of claim, our review of the claims register in the
Debtor's case discloses no such claim filed on your behalf. A copy of the claims register is
enclosed for your convenience. For questions about the procedures to be followed in filing a
proof of claim, you may wish to consult with a personal attorney. As employees of the United
States Department of Justice, we cannot provide legal advice to private citizens. We understand
that you may feel frustration with the situation, in light of the effort you have expended in this
bankruptcy proceeding. However, we regret that we can not assist you further.

Sincerely,

Roberta DeAngelis
Acting General Counsel

Enclosure

# Exhibit  J

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' RESPONSE TO LAFONZA EARL WASHINGTON
DEMAND FOR IMMEDIATE DISTRIBUTION

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,
debtors and debtors-in-possession in the above-captioned cases (collectively, the
"Debtors"), hereby submit this Response (this "Response") to the Demand For Immediate
Distribution filed by Lafonza Earl Washington, dated November 10, 2005 (the "Demand")
(Docket No. 1187), and respectfully represent as follows:

Preliminary Statement

1.    On October 28, 2005, Lafonza Earl Washington (the "Claimant"),
who has no known relationship to any of the Debtors, filed four proofs of claim, claim nos.
00257, 00264, 00288, and 00297 (individually, a "Proof of Claim" and, collectively, the
"Proofs of Claim") against Delphi Automotive Systems (Holding), Inc. Each Proof of
Claim asserts that the Claimant is entitled to a $30 million unsecured priority claim on the
basis of, inter alia, involuntary servitude, six years of deprivation of General Motors-
related income, and severance pay due to the Claimant based on the July 2, 1999 closing of
the Buick City General Motors Corporation ("GM") plant. (Supporting Documents
appended to Claimant's Proofs of Claim ¶¶ (v)(a), (vii), and (viii)). In the Demand, the
Claimant requested that the United States Trustee immediately distribute $30 million to
him. Without providing a definitive calculation, the amount of the Proofs of Claim
purports to be comprised of compensation due to the Claimant for worker's compensation
benefits, deprivation of certain property rights, and payment of certain fees and expenses
incurred by the Claimant over a period of more than 33 years, from June 13, 1973 through
the present.

2.    Subsequently, the Claimant has filed numerous other pleadings in
these cases in which he has asserted a host of claims and allegations. To date, the

2

Claimant has filed twenty pleadings, totaling hundreds of pages, in which he directs his

grievances and allegations not only at the Debtors, but also at various United States

Trustees, this Court, and multiple other parties. The Claimant appears to have attempted to

summarize his claims in his June 23rd pleading (Docket No. 4444) in which he requested a

hearing date.[1]

3.      The Debtors respectfully submit that because neither the Claimant

nor his spouse was ever an employee of the Debtors, the Claimant was never and is not

now entitled to any employment-related compensation or severance pay from the Debtors.

In addition, the Debtors deny all of the bases for relief asserted by the Claimant and submit

that the Claimant has articulated no grounds for relief from the Debtors. Thus, the

Claimant is not entitled to any distribution of payment from the Debtors.

4.      To the extent that the Claimant has a rightful claim against the

Debtors, it would be premature to adjudicate it now. Pursuant to the provisions of the Bar

Date Order, dated April 12, 2006 (Docket No. 3206), the date by which any claim against

the Debtors must be received is July 31, 2006. All claims filed will thereafter be dealt with

in the claims administration process. Therefore, to the extent that the Claimant has a

legitimate claim against the Debtors, it will be addressed as part of that process and need

not be heard on an expedited basis.[2]

---

[1] On July 5, 2006, the Claimant filed four pleadings, one of which was a withdrawal of his request for a hearing on his claims (Docket No. 4455).

[2] Perhaps the Claimant's withdrawal of his request for a hearing (Docket No. 4455) is an acknowledgement on his part that his demands are premature.

<u>Argument</u>

A.    The Claimant Was Never An
      <u>Employee Of The Debtors</u>

5.    Neither the Claimant nor his spouse has ever been an employee of
the Debtors.  In fact, in no pleading filed by the Claimant does he ever even assert or offer
proof that he was ever an employee of the Debtors.  Further, the Claimant has referenced
an employment history that relates only to GM: the Claimant states that he was "hired into
the General Motors Corp. (GM) on 6-13-73 at the age of 18" and "perform[ed]. . . labor for
it 32 years after initial hire".  The one reference to possible employment by Delphi that the
Claimant asserts is that "GM attempted to force this Claimant to '<u>involuntarily</u>' transfer to
Delphi in Saginaw, Michigan after it permanently closed the Buick City plant."
(Supporting Documents appended to Claimant's Proofs of Claim ¶¶ (A)(i), (v)(a), and
(v)(b)) (emphasis in original).  The Claimant must never have accepted this transfer
because to the best of Delphi's knowledge, the Claimant was never an employee of any of
the Debtors.  The Debtors' files show no record of the Claimant's ever having been their
employee.

6.    Because the only plausible basis for the Claimant to assert a claim
for employment-related back pay or compensation would rest entirely on the basis of the
Claimant's currently being, or having been, an employee of the Debtors, any such claim
must fail for the simple reason that neither the Claimant nor his spouse was ever employed
by the Debtors.  Therefore, the Claimant has raised no legitimate basis for relief from the
Debtors.

B.    The Claimant's Allegations Are
Prematurely Before The Court

7.    The Claimant has asserted a variety of other allegations that extend

not only to the Debtors, but also to a multitude of other parties.  Among other things, the

Claimant has stated that parties to these cases are involved in the attempted "seditions and

subversive overthrow of the United States Bankruptcy system" (Docket No. 2807, ¶ 5),

that "the stockholders of the [sic] Delphi, GM, and International UAW corporations. . . is

[sic] behind the[se] holocaustic human rights violations" (Docket No. 4456, ¶7), that the

United Nations and the United States Trustees have deliberately compounded Claimant's

wrongs and injuries in violation of his human rights (Docket No. 2474, ¶8), and that the

Debtors, GM, the UAW, this Court, JPMorgan Chase, et al., have conspired and colluded

to deny the Claimant relief (Docket No. 4001, Section II, ¶1).  For his injuries, the

Claimant currently demands more than $300 million, including interest, penalties, and

other charges.

8.    The Claimant's allegations are quite extensive and are equally broad

in their reach in terms of blame and responsibility.  These allegations, insofar as they are

directed at the Debtors, are wholly-unfounded and unsubstantiated.

9.    To the extent that the Claimant has made a claim against the

Debtors, however, that claim will be dealt with during the claims administration process.

Because that process has not yet even begun, the Claimant's demand for relief from the

Debtors is premature.

5

Conclusion

10.    Neither the Claimant nor his spouse has ever been an employee of the Debtors. Therefore, the Claimant is not entitled to any employment-related relief from the Debtors.

11.    To the extent that there are general claims that the Claimant has against the Debtors' estates that are timely filed in accordance with the provisions of the Bar Date Order, those claims will be dealt with as part of the claims administration process.

12.    Based on the foregoing, the Claimant's demand for relief and immediate distribution from the Debtors should be denied. The Claimant has failed to assert any valid or legitimate basis to support his claims against the Debtors. To the extent that the Claimant has a valid claim for compensation or work-related pay, the Debtors lack knowledge or information sufficient to form a belief as to whether such a grievance may be valid against some other entity, but such claims against the Debtors have no basis, and the Claimant has not asserted any. To the extent that the Claimant asserts non-employment-related claims against the Debtors, such claims will be dealt with during the claims administration process. The Claimant's allegations should not be litigated at this time.

Notice

13.    Notice of this Response has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006

(Docket No. 3824).  In light of the nature of the relief requested, the Debtors submit that

no other or further notice is necessary.

<u>Memorandum Of Law</u>

14.    Because the legal points and authorities upon which this Response

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District

of New York be deemed satisfied.

7

WHEREFORE the Debtors respectfully request that the Court enter an

order (i) denying the Demand and (ii) granting the Debtors such other and further relief as

is just.

Dated: New York, New York
       July 12, 2006


                                        SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP


                                        By: /s/ John Wm. Butler, Jr.
                                            John Wm. Butler, Jr. (JB 4711)
                                            John K. Lyons (JL 4951)
                                            Ron E. Meisler (RM 3026)
                                            333 West Wacker Drive, Suite 2100
                                            Chicago, Illinois  60606
                                            (312) 407-0700


                                            - and -


                                        By: /s/ Kayalyn A. Marafioti
                                            Kayalyn A. Marafioti (KM 9632)
                                            Thomas J. Matz (TM 5986)
                                            Four Times Square
                                            New York, New York 10036
                                            (212) 735-3000


                                        Attorneys for Delphi Corporation, et al.,
                                            Debtors and Debtors-in-Possession

# Exhibit  K

**Hearing Date and Time: January 12, 2007 at 10:00 a.m.**
**Supplemental Response Date and Time: January 10, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x
                  :
      In re           :    Chapter 11
                  :
DELPHI CORPORATION, et al.,  :    Case No. 05-44481 (RDD)
                  :
                  :    (Jointly Administered)
         Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' SUPPLEMENTAL REPLY TO THE RESPONSE OF LAFONZA
WASHINGTON TO THE DEBTORS' (I) THIRD OMNIBUS OBJECTION
(SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(B) AND FED. R. BANKR. P.
3007 TO CERTAIN (a) CLAIMS WITH INSUFFICIENT DOCUMENTATION, (b)
CLAIMS UNSUBSTANTIATED BY DEBTORS' BOOKS AND RECORDS, AND (c)
CLAIMS SUBJECT TO MODIFICATION AND (II) MOTION TO ESTIMATE
CONTINGENT AND UNLIQUIDATED CLAIMS PURSUANT TO 11 U.S.C. § 502(c)**

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit its Supplemental Reply to the Response of Lafonza Washington to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (this "Supplemental Reply"), and respectfully represent as follows:

<u>Preliminary Statement</u>

1.      On October 28, 2005, claimant Lafonza Washington (the "Claimant"), who has no known relationship to any of the Debtors, filed four proofs of claim, claim nos. 257, 264, 288, and 297 (individually, an "October 2005 Proof of Claim" and, collectively, the "October 2005 Proofs of Claim") against the Debtors.  Claim nos. 257 and 264 were filed against Delphi Corporation, and claim nos. 288 and 297 will filed against Delphi Automotive Systems (Holding), Inc..  Each October 2005 Proof of Claim asserts that the Claimant is entitled to a $30 million unsecured priority claim on the basis of, <u>inter alia</u>, involuntary servitude, six years of deprivation of General Motors-related income, and severance pay due to the Claimant based on the July 2, 1999 closing of the Buick City plant owned and operated by General Motors Corporation ("GM").  (Supporting Documents appended to each of Claimant's October 2005 Proof of Claim ¶¶ (v)(a), (vii), and (viii)).  Without providing any calculation or explanation, the amount of the October 2005 Proofs of Claim purports to be comprised of compensation due to the Claimant for worker's compensation benefits, deprivation of certain property rights, and

2

payment of certain fees and expenses incurred by the Claimant over a period of more than 33

years, from June 13, 1973 through the present.

2.      On December 27, 2005, the Claimant filed three documents purporting to

be proofs of claim, claim nos. 1271, 1272, and 1334 (individually, a "December 2005 Proof of

Claim" and, collectively, the "December 2005 Proofs of Claim" and, together with the October

2005 Proofs of Claim, the "Proofs of Claim"). The December 2005 Proofs of Claim contain

various pleadings previously filed by the Claimant. None of these documents provide any

rational explanation, documentation, evidence, or support for any of the claims asserted in the

Proofs of Claim.

3.      On October 31, 2006, the Debtors filed the Debtors' (I) Third Omnibus

Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain

(A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and

Records, and (C) Claims Subject to Modification and (II) Motion to Estimate Contingent and

Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus

Claims Objection"). In the Third Omnibus Claims Objection the Debtors objected to, and sought

an order disallowing and expunging, inter alia, each of the Proofs of Claim. (Docket No. 5452, ¶

19, Ex. C-1).

4.      On November 27, 2006,[1] the Claimant filed documents with the Court that

the Debtors assume were intended to be a response to the Third Omnibus Claims Objection,

despite such documents neither being styled as such, nor containing the information required to

be included in a proper response (Docket No. 5863) (the "Response"). In the Response, the

---

[1]   The deadline to file a response to the Third Omnibus Claims Objection was November 24, 2006 at 4:00 p.m.
(Prevailing Eastern Time).   See Third Omnibus Claims Objection, ¶ 46.

3

Claimant asserts a number of baseless allegations against, inter alia, the Debtors, GM, JPMorgan

Chase Bank, and the UAW, and requests that the Court "strike" the Third Omnibus Claims

Objection.

     5.    On December 11, 2006, the Debtors provided the Claimant, and filed with

the Court, a Notice of Hearing With Respect to Debtors Objection to Proof of Claim Nos. 257,

264, 288, 297, 1271, 1272, and 1334 (Docket No. 6110) in which the Debtors provided notice

that Debtors' Third Omnibus Claims Objection with respect to the Proofs of Claim will be heard

at a Sufficiency Hearing on January 12, 2007.

     6.    The Debtors respectfully submit that because neither the Claimant nor his

spouse was ever an employee of the Debtors, the Claimant was never and is not now entitled to

any employment-related compensation or severance pay from the Debtors. The Claimant simply

has not set forth any allegations that, even if true, would establish a claim against the Debtors.

Accordingly, the Third Omnibus Claims Objection should be sustained with respect to the Proofs

of Claim, and the Proofs of Claim should be disallowed and expunged.

<u>Argument</u>

     7.    The Claimant asserts that Delphi owes him $30 million[2] because in

September of 1999, after thirty-two years of employment with GM, the Claimant was given the

option to transfer to the Debtors' manufacturing facility in Saginaw, Michigan (the "Saginaw

Facility"). (Supporting Documents appended to the October 2005 Proofs of Claim, ¶¶ (A)(i) and

(v)). This option to transfer to the Saginaw Facility, which he apparently declined, is the

Claimant's <u>only</u> connection to the Debtors. However, the mere fact that the Claimant was

---

[2]  Since the filing of the Proofs of Claim, the Claimant has filed numerous documents with the Court asserting that
his claims exceed $1 billion as a result of accrued interest and other asserted claims. The Claimant has never,
however, amended his Proofs of Claim to assert these larger amounts.

offered a position at the Debtors <u>by GM</u> does not establish a claim against the Debtors because the Claimant does not assert or offer proof that the Claimant was ever actually an employee of the Debtors.  Indeed, the Claimant has failed to establish any causal connection between an apparently unaccepted offer to transfer to the Saginaw Facility and a claim for $30 million.

8.      The Claimant states that he was "hired into the General Motors Corp. (GM) on 6-13-73 at the age of 18" and "perform[ed] . . . labor for it '<u>32</u>' years after initial hirein (sic)."  (Id.) (emphasis in original).  The only reference to possible employment by any of the Debtors that the Claimant asserts is that "GM attempted to force this Claimant to '<u>INVOLUNTARILY</u>' transfer to Delphi in Saginaw, Michigan, after it permanently closed the Buick City plant."  (Id., ¶ (A)(v)(b)) (emphasis in original).  However, the Claimant apparently did not accept the transfer because, to the best of the Debtors' knowledge, the Claimant was never an employee of any of the Debtors.  Because the Claimant was never an employee of the Debtors, and because he has failed to assert alternate grounds upon which he could conceivable base a valid claim, the Debtors assert that they are not, and were not ever, liable to the Claimant.

9.      The burden of proof to establish a claim against an estate rests on the claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is not entitled to a presumption of <u>prima facie</u> validity pursuant to Bankruptcy Rule 3001(f) .  <u>In re WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); <u>see also</u> <u>In re Allegheny Intern., Inc.</u>, 954 F.2d 167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to support claim); <u>In re Chiro Plus, Inc.</u> 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing facts to support legal liability); <u>In re</u>

5

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make prima facie case).

10.    The Debtors believe that the standard, at the Sufficiency Hearing stage, for the Court to determine whether the Claimant has met his initial burden of proof to establish a claim should be similar to the standard employed by courts in deciding a motion to dismiss under Federal Rule 12(b)(6) and Bankruptcy Rule 7012.  Pursuant to that standard, a motion to dismiss should be granted "if it plainly appears that the non-movant 'can prove no set of facts in support of his claim which would entitle him to relief.'" In re Lopes, 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Here, the Claimant has not proved, and cannot prove, any set of facts that support a right to payment from the Debtors.

11.    Because the only plausible basis for the Claimant to assert a claim rests entirely on the Claimant's past or present employment with the Debtors, the claimant has not met his burden of proof, and cannot prove facts supporting his claim, for the simple reason that the Claimant has not alleged that he was ever employed by the Debtors.  Further, neither the Proofs of Claim nor the Response assert any other valid basis upon which the Claimant could base a claim.  Accordingly, the Third Omnibus Claims Objection should be sustained as to the Proofs of Claim; and the Proofs of Claim should be disallowed and expunged.

Memorandum of Law

12.    Because the legal points and authorities upon which this Reply relies are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request the Court enter an order (i) sustaining the Third Omnibus Claims Objection as to the Proofs of Claim, (ii) disallowing and expunging the Proofs of Claim, and (iii) granting such further and other relief the Court deems just and proper.

Dated: New York, New York
      January 2, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

# Exhibit  L

> Adversary
  Proceedings

> Case Management
  Orders

> Court Documents

> Creditors' Committee

> Delphi-GM
  Settlement

> Disclosure
  Statement

> Equity Security
  Holders' Committee

> First Day Motions

> First Day Orders

> GSA and MRA
  Amendment Motion

> Investor Information

> Monthly/Quarterly
  Operating Reports

> Notice Lists

> Omnibus Hearing
  Dates

> Omnibus Hearing
  Orders

> Pension Program
  Modification Order

> Plan Modification
  Approval Motion
  Materials

> Plan of
  Reorganization

> Presentations: First
  Day, Organizational,
  341

> Press Releases

> Schedules/
  Statements

> Voluntary Petitions

Home    Bankruptcy Industry Links    Proof Of Claim Form    Claim/Creditor Search    Submit an Inquiry

## DPH Holdings Corporation Search Results
## Creditor Name: Begins With "lafonza"

| Date Claim Filed | Claim No. | Schedule | Nature | Name | Amount | C* | U* | D* | Debtor |
|---|---|---|---|---|---|---|---|---|---|
| 10/31/2005 | 257 | | Priority | Lafonza E Washington Sr | EXPUNGED | | | | Delphi Corporation |
| 11/1/2005 | 264 | | Priority | Lafonza E Washington Sr | EXPUNGED | | | | Delphi Corporation |
| 11/2/2005 | 288 | | Priority | Lafonza E Washington Sr | EXPUNGED | | | | Delphi Automotive Systems (Holding), Inc. |
| 11/3/2005 | 297 | | Priority | Lafonza E Washington Sr | EXPUNGED | | | | Delphi Automotive Systems (Holding), Inc. |
| 12/27/2005 | 1271 | | General Unsecured | Lafonza Earl Washington | EXPUNGED | | | | Delphi Corporation |
| 12/27/2005 | 1272 | | General Unsecured | Lafonza Earl Washington | EXPUNGED | | | | Delphi Corporation |
| 12/27/2005 | 1334 | | General Unsecured | Lafonza Earl Washington | EXPUNGED | | | | Delphi Corporation |

*C=Contingent, U=Unliquidated, D=Disputed

# Exhibit  M

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA and EARL L. HENRY, BONNIE J.
LAURIA, RAYMOND B. BAILEY, THEODORE
J. GENCO, MARVIN C. MARLOW, CHARLES
R. MILLER, LAVERNE M. SORIANO and JOHN
HUBER, on behalf of themselves and all other
persons similarly situated,

        Plaintiffs,

v.                                 Case No. 07-CV-14074-DT

GENERAL MOTORS CORPORATION,

        Defendant.

_____/

### ORDER AND FINAL JUDGMENT

Based on the "Findings of Facts and Conclusions of Law" filed on this date, and

all of the files, records and proceedings herein, the court enters the following order and

final judgment, which is binding upon and inures to the benefit of all of the following

parties: General Motors Corporation ("GM"), the International Union, United Automobile,

Aerospace, and Agricultural Implement Workers of America ("UAW"), Earl L. Henry,

Bonnie J. Lauria, Raymond B. Bailey, Theodore J. Genco, Marvin C. Marlow, Charles

R. Miller, Laverne M. Soriano, John Huber and the class described in paragraph 1.

      1.     The following class is certified pursuant to Federal Rule of Civil Procedure

23(b)(2):

(i)    all GM-UAW Represented Employees who, as of October 15, 2007, were retired from GM with eligibility for retiree Medical Benefits under the GM Plan, and their eligible spouses, surviving spouses and dependents;

(ii)    all surviving spouses and dependents of any GM-UAW Represented Employees who attained seniority and died on or prior to October 15, 2007 under circumstances where such employee's surviving spouse and/or dependents are eligible to receive Retiree Medical Benefits from GM and/or under the GM Plan;

(iii)    all UAW retirees of Delphi Corporation ("Delphi") who as of October 15, 2007 were retired and as of that date were entitled to or thereafter become entitled to Retiree Medical Benefits from GM and/or the GM Plan under the terms of the UAW-Delphi-GM Memorandum of Understanding Delphi Restructuring dated June 22, 2007, Attachment B to the UAW-Delphi-GM Memorandum of Understanding Delphi Restructuring dated June 22, 2007 (without regard to whether any of the conditions described in Section K.2 of such Memorandum of Understanding or Section 2 of such Attachment B occur), or the Benefit Guarantee agreement between GM and the UAW dated September 30, 1999, and their eligible spouses, surviving spouses and dependents of all such retirees;

(iv)    all surviving spouses and dependents of any UAW-represented employee of Delphi who attained seniority and died on or prior to October 15, 2007 under circumstances where such employee's surviving spouse and/or dependents are eligible to receive Retiree Medical Benefits from GM

2

and/or the GM Plan under the terms of the UAW-Delphi-GM Memorandum

of Understanding Delphi Restructuring dated June 22, 2007, Attachment B

to the UAW-Delphi-GM Memorandum of Understanding Delphi

Restructuring dated June 22, 2007 (without regard to whether any of the

conditions described in Section K.2 of such Memorandum of

Understanding or Section 2 of such Attachment B occur), or the Benefit

Guarantee agreement between GM and the UAW dated September 30,

1999;

(v)    all GM-UAW Represented Employees or former UAW-represented

employees who, as of October 15, 2007, were retired from any previously

sold, closed, divested or spun-off GM business unit (other than Delphi)

with eligibility to receive Retiree Medical Benefits from GM and/or the GM

Plan by virtue of any other agreement(s) between GM and the UAW, and

their eligible spouses, surviving spouses and dependents; and

(vi)    all surviving spouses and dependents of any GM-UAW Represented

Employee or any UAW-represented employee of a previously sold, closed,

divested or spun-off GM business unit (other than Delphi), who attained

seniority and died on or prior to October 15, 2007 under circumstances

where such employee's surviving spouse and/or dependents are eligible to

receive Retiree Medical Benefits from GM and/or the GM Plan.[1]

---

[1]All capitalized terms in this Order and Final Judgment have the same meaning as in the
*Henry II* Settlement Agreement.

3

2.    The parties' proposed Settlement Agreement dated February 21, 2008 (the "*Henry II* Settlement Agreement") is approved in its entirety as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

3.    The court approves the New Plan and the New VEBA, including the Trust Agreement, in all respects. The New Plan and the New VEBA, both subject to ERISA, shall be administered by the Committee. The initial public members of the Committee, as set forth in Exhibit E to the Trust Agreement, are designated as Robert Naftaly, Olena Berg-Lacey, David Baker Lewis, Teresa Ghilarducci, Marian Udow-Phillips and Ed Welch.

4.    As of the date of this Order and Final Judgment:

(i)    GM shall no longer be required to make deposits of the wage and COLA deferrals under the settlement agreement and final judgment in *UAW v. General Motors Corp.*, No. 05-73991 (the "*Henry I* Settlement Agreement and Judgment") into the Existing External VEBA.

(ii)    The Wages/COLA Amount paid by GM pursuant to the *Henry II* Settlement Agreement shall be in full satisfaction of any and all of GM's obligations under Section 13.C and any other provisions of the *Henry I* Settlement Agreement and Judgment regarding wage and COLA deferrals, and GM shall have no further obligations as to such payments or contributions to the Existing External VEBA.

(iii)    The wage and COLA deferrals under the *Henry I* Settlement Agreement and Judgment shall inure hereafter solely to the benefit of GM and

4

continue in perpetuity increasing at $0.02 per hour per quarter as described in Section 13.C of the *Henry I* Settlement Agreement.

(iv)    Any obligation of GM related to the amounts called for in the "Benefit Change Profits" or the "Incremental Amount," as set forth and defined in Section 13.B of the *Henry I* Settlement Agreement, shall cease.

5.    GM shall be financially responsible for the payment of reasonable costs associated with the transition of coverage for the Class and the Covered Group to the New Plan and New VEBA, as provided for in Section 20.A of the *Henry II* Settlement Agreement.

6.    GM's final cash payment of $1 billion provided for in Section 13.A of the *Henry I* Settlement Agreement will continue to be payable by GM as set forth in the *Henry I* Settlement Agreement and Judgment; however, such payment will be made to the New VEBA, rather than the Existing External VEBA, if the payment is payable after the Implementation Date.

7.    If the aggregate amount of the payments related to "Increase in Stock Value" and "Dividends" as set forth in Section 13.D and 13.E of the *Henry I* Settlement Agreement is less than $240 million, then GM will pay to the New VEBA on September 1, 2009 the amounts set forth in Section 7.D(iii) of the *Henry II* Settlement Agreement.

8.    All obligations of GM and all provisions of the GM Plan in any way related to Retiree Medical Benefits for the Class and/or the Covered Group, and all provisions of applicable collective bargaining agreements, contracts, letters and understandings in any way related to Retiree Medical Benefits for the Class and the Covered Group shall terminate on the Implementation Date, or are otherwise amended so as to be consistent

5

with the *Henry II* Settlement Agreement and the fundamental understanding that all GM obligations regarding Retiree Medical Benefits for the Class and the Covered Group for claims incurred on or after the Implementation Date are terminated as set forth in the *Henry II* Settlement Agreement.

9.      Within 10 business days after the Implementation Date, GM shall direct the trustee of the Existing Internal VEBA to transfer to the New VEBA the UAW Related Account's share of assets in the Existing Internal VEBA. Upon such transfer, the Existing Internal VEBA shall be deemed to be amended to terminate participation and coverage regarding Retiree Medical Benefits for the Class and the Covered Group, effective as of the Implementation Date.

10.    Within 15 days after the Implementation Date, the committee and the trustee of the Existing External VEBA shall transfer all assets and liabilities of the Existing External VEBA into the New VEBA and terminate the Existing External VEBA. In accordance with the terms of the *Henry II* Settlement Agreement, the New VEBA shall accept the tender of assets from and shall assume the liabilities of the Existing External VEBA.

11.    The court finds reasonable and approves the indemnification provisions of Section 23 of the *Henry II* Settlement Agreement in all respects.

12.    The court approves the reimbursement by GM of the UAW's and Class Counsel's reasonable attorney and professional fees and expenses as provided for under Section 24.A of the *Henry II* Settlement Agreement, with the amounts of such fees and expenses to be approved by the court as set forth in paragraph 13.

13.     Pursuant to Fed. R. Civ. P. 54(d)(2)(A) and (B), a supplemental

application for attorney and professional fees and expenses shall be filed by Class

Counsel within 14 days of this order. The supplemental application shall detail fees and

expenses attributable to the time spent through the date of this order. Class Counsel

may later submit supplemental applications for fees and expenses for legal work on

behalf of the Class attributable to the time spent after date of this order. In accordance

with the terms of the Settlement Agreement herein approved by the court, the UAW may

submit application for attorney and professional fees and expenses within a reasonable

time of the date of this order.

14.     The *Henry II* Settlement Agreement, including all terms and conditions, is

incorporated into and made part of this order in all respects. The citation to or reference

of certain provisions of the *Henry II* Settlement Agreement, but not others, in this order

does not exclude the incorporation herein of all terms and conditions of the *Henry II*

Settlement Agreement.

15.     This order satisfies the *Henry I* Judgment in all respects.

16.     This litigation is dismissed with prejudice, except as otherwise provided

herein and in the *Henry II* Settlement Agreement.

17.     The court retains exclusive jurisdiction, pursuant to Section 32.B of the

*Henry II* Settlement Agreement, to resolve any disputes relating to or arising out of or in

connection with the enforcement, interpretation or implementation of the *Henry II*

Settlement Agreement.

7

LET JUDGMENT BE ENTERED ACCORDINGLY.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 31, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

# Exhibit  N

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA and EARL L. HENRY, BONNIE J.
LAURIA, RAYMOND B. BAILEY, THEODORE
J. GENCO, MARVIN C. MARLOW, CHARLES
R. MILLER, LAVERNE M. SORIANO and JOHN
HUBER, on behalf of themselves and all other
persons similarly situated,

        Plaintiffs,

v.                                                         Case No. 07-CV-14074-DT

GENERAL MOTORS CORPORATION,

        Defendant.

                             /

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the court is this health care benefits class action in which the contesting

parties have presented to the court a proposed global settlement agreement. The court

received written objections from members of the class, who were also permitted to

orally object during a June 3, 2008 fairness hearing. After the hearing, the parties

submitted joint proposed findings of fact and conclusions of law in support of final

approval of the class action settlement, which the court has thoroughly examined. A

majority of the proposed findings and conclusions are uncontested and the court has

adopted them in large measure and rejects all objections inconsistent with these

findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. The Parties

1.    The individual named Plaintiffs in this action are Earl L. Henry, Bonnie J. Lauria, Raymond B. Bailey, Theodore J. Genco, Marvin C. Marlow, Charles R. Miller, Laverne M. Soriano, and John Huber ("Class Representatives").

2.    The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") also is a plaintiff in this action.

3.    The Defendant is General Motors Corporation ("GM").

4.    The UAW and GM are parties to a series of collective bargaining agreements ("CBAs") under which GM provides health care benefits to qualifying retirees and their spouses, surviving spouses, and dependents.  The Class Representatives represent a class of these retirees, spouses, and dependents.

5.    Plaintiff Henry was employed by GM in Flint, Michigan, and was a member of the bargaining unit represented by the UAW until his retirement in 1988.  (Decl. of Earl L. Henry, Dkt. # 26-17.)  After his retirement from GM, Mr. Henry was elected by fellow retirees as the Chairperson of the UAW retired workers council covering the Michigan counties of Otsego, Cheboygan, Antrim and Charlevoix.  *Id.*

6.    Plaintiff Lauria was employed by GM in Bay City, Michigan, and was a member of the bargaining unit represented by the UAW until her retirement in 2000.  (Decl. of Bonnie J. Lauria, Dkt. # 26-18.)  After her retirement from GM, Mrs. Lauria was elected by fellow retirees as the Chairperson of the UAW retired workers council covering the Michigan counties of Clare, Crawford, Missaukee, Ogemaw and Roscommon.  *Id.*

2

7.      Plaintiff Bailey was employed by GM in Willow Run, Michigan, and was a member of a bargaining unit represented by the UAW until his retirement in 1993. (Decl. of Raymond B. Bailey, Dkt. # 26-19.) Following his retirement, Mr. Bailey was elected by his fellow retirees as the chairperson of the UAW retired workers chapter covering GM retirees from his local union. *Id.*

8.      Plaintiff Genco was employed by GM in Fredericksburg, Virginia, where he was a member of a bargaining unit represented by the UAW. (Decl. of Theodore J. Genco, Dkt. # 20-20.) After his retirement in 2002, Mr. Genco was elected by his fellow retirees as the chairperson of the UAW retired workers chapter covering GM retirees from his local union. *Id.*

9.      Plaintiff Marlow was employed by GM at its Lakewood Plant in Atlanta, Georgia, and was a member of a bargaining unit represented by the UAW. (Decl. of Marvin C. Marlow, Dkt. # 26-21.) After his retirement in 1991, Mr. Marlow was elected by his fellow retirees as the chairperson of the UAW retired workers chapter covering GM retirees from his local union, and was also elected to the regional UAW retired workers council. *Id.*

10.     Plaintiff Miller was employed by GM in Baltimore, Maryland, and was a member of a bargaining unit represented by the UAW. (Decl. of Charles R. Miller, Dkt. # 26-22.) After his retirement in 2002, Mr. Miller was elected by fellow retirees to serve on the executive board of his local union. *Id.*

11.     Plaintiff Soriano is the surviving spouse of Jack Soriano, who was employed by GM in Lordstown, Ohio until his retirement in 1985. (Decl. of Laverne M.

3

Soriano, Dkt. # 26-23.)  Mrs. Soriano has served on the executive board of the UAW

retired workers chapter covering GM retirees from Mr. Soriano's local union.  *Id.*

12.    Plaintiff Huber was employed by Delphi Corporation ("Delphi") in

Rochester, New York, and was a member of a bargaining unit represented by the UAW.

(Decl. of John Huber, Dkt. # 26-24.)  Mr. Huber retired from Delphi in 2007.  *Id.*

Pursuant to collective bargaining agreements between GM, Delphi and the UAW, Mr.

Huber is deemed to be a retiree of GM.  (Am. Compl. at ¶ 13, Dkt. # 33; Answer to Am.

Compl. at ¶ 13, Dkt. # 36.)

### B. The Certified Class

13.    The court has certified a class ("Class") comprising all persons who are:

(i)    GM-UAW Represented Employees who, as of October 15, 2007,
were retired from GM with eligibility for Retiree Medical Benefits
under the GM Plan, and their eligible spouses, surviving spouses
and dependents;

(ii)    surviving spouses and dependents of any GM-UAW Represented
Employees who attained seniority and died on or prior to October
15, 2007 under circumstances where such employee's surviving
spouse and/or dependents are eligible to receive Retiree Medical
Benefits from GM and/or under the GM Plan;

(iii)    UAW retirees of Delphi Corporation ("Delphi") who as of October
15, 2007 were retired and as of that date were entitled to or
thereafter become entitled to Retiree Medical Benefits from GM
and/or the GM Plan under the terms of the UAW-Delphi-GM
Memorandum of Understanding Delphi Restructuring dated June
22, 2007, Attachment B to the UAW-Delphi-GM Memorandum of
Understanding Delphi Restructuring dated June 22, 2007 (without
regard to whether any of the conditions described in Section K.2 of
such Memorandum of Understanding or Section 2 of such
Attachment B occur), or the Benefit Guarantee agreement between
GM and the UAW dated September 30, 1999, and their eligible
spouses, surviving spouses and dependents of all such retirees;

4

    (iv)    surviving spouses and dependents of any UAW-represented employee of Delphi who attained seniority and died on or prior to October 15, 2007 under circumstances where such employee's surviving spouse and/or dependents are eligible to receive Retiree Medical Benefits from GM and/or the GM Plan under the terms of the UAW-Delphi-GM Memorandum of Understanding Delphi Restructuring dated June 22, 2007, Attachment B to the UAW-Delphi-GM Memorandum of Understanding Delphi Restructuring dated June 22, 2007 (without regard to whether any of the conditions described in Section K.2 of such Memorandum of Understanding or Section 2 of such Attachment B occur), or the Benefit Guarantee agreement between GM and the UAW dated September 30, 1999;

    (v)    GM-UAW Represented Employees or former UAW-represented employees who, as of October 15, 2007, were retired from any previously sold, closed, divested or spun-off GM business unit (other than Delphi) with eligibility to receive Retiree Medical Benefits from GM and/or the GM Plan by virtue of any other agreement(s) between GM and the UAW, and their eligible spouses, surviving spouses, and dependents; and

    (vi)    surviving spouses and dependents of any GM-UAW Represented Employee or any UAW-represented employee of a previously sold, closed, divested or spun-off GM business unit (other than Delphi), who attained seniority and died on or prior to October 15, 2007 under circumstances where such employee's surviving spouse and/or dependents are eligible to receive Retiree Medical Benefits from GM and/or the GM Plan.

(Order Granting Class Representatives' Motion for Class Certification at ¶ 8, Dkt. # 34.)

14.    Members of the Class ("Class Members") and the Class Representatives are represented in this proceeding by William T. Payne, John Stember, Edward J. Feinstein, Ellen Doyle, Pamina Ewing and Stephen Pincus (collectively, "Class Counsel") of Stember Feinstein Doyle & Payne, LLC.

### C. The *Henry I* Litigation

15.    In 2005, GM was providing retiree health care benefits to a class of approximately 470,000 retirees, spouses and dependents. (2/21/08 Decl. of William T. Payne at ¶ 1, Dkt. # 26-03.)

16.    In June 2005, GM announced that it would implement unilateral reductions in health care benefits provided to GM's UAW retirees. (*Id.* at ¶ 2.)

17.    In response, the UAW and individual plaintiffs sued GM in this court in Civil Action No. 05-73991 ("*Henry I*"). (*See* Am. Compl. in No. 5-73991, Dkt. # 5.)

18.    The parties in *Henry I* entered into a settlement agreement (the "*Henry I* Settlement Agreement") compromising their legal dispute, at least through September 14, 2011. The court certified a class of GM-UAW retirees, spouses and dependents and approved the parties' *Henry I* Settlement Agreement. *See UAW v. GM*, No. 05-73991, 2006 WL 891151 (the "*Henry I* Class").

19.    The Sixth Circuit affirmed this court's decision in *UAW v. GM*, 497 F.3d 615 (6th Cir. 2007).

20.    The *Henry I* settlement preserved for the *Henry I* Class a quality health care program through at least September 14, 2011, the date upon which either GM or the UAW could terminate the agreement and restore the parties to their respective legal positions asserted before the Settlement. Thus, the *Henry I* settlement did not permanently resolve the parties' dispute concerning whether GM may unilaterally reduce or terminate retiree health care benefits. The *Henry I* Settlement Agreement provides that if the Agreement is terminated, the class would be free to bring suit to reinstate benefits as they existed before implementation of the settlement, and GM

6

would be free to reassert its claim that it has the right to reduce or terminate those

benefits.

21.    The *Henry I* Settlement Agreement provided for the amendment of GM's

health care program and the establishment of a Defined Contribution Voluntary

Employees' Beneficiary Association trust (referred to as the "DC-VEBA" or "Existing

External VEBA") for the purpose of funding costs that would otherwise be borne by

retirees under the amended plan.  *Henry I*, 2006 WL 891151, at *4.  Under the terms of

the *Henry I* Settlement, GM remained responsible for providing retiree health care

coverage.  *Id.* at *6.

### D. GM's Continuing Financial Struggle

22.    Despite GM's efforts to improve its financial performance overall and

specifically in North America, its largest and most significant market, and

notwithstanding savings associated with the *Henry I* Settlement Agreement, GM has

continued to experience considerable losses and declining market share.  (*See, e.g.,*

Decl. of David W. Meline ("Meline Decl.") at ¶¶ 3, 8, Dkt. # 51-2; Decl. of Michael

Raleigh ("Raleigh Decl.") at ¶ 6, Dkt. # 51-3.

23.    In 2005, GM's North American operations (GMNA) reported a loss, before

taxes, of more than $11 billion, with GM reporting an overall consolidated net loss of

$10.4 billion.  In 2006, while overall GM lost $1.98 billion, its North American operations

lost more than $7.5 billion.  And in 2007, GM's North American operations generated

another $3.3 billion loss, with the company reporting a consolidated net loss of $38.7

billion.  (Meline Decl. at ¶ 4.)  The evidence shows that GM and specifically its North

7

American operations continue to generate substantial losses that cannot be sustained if GM is to achieve long-term success. (*Id.*)

24.    GM's financial and competitive problems have adversely affected the value of its business, which has continued to decline dramatically. (*Id.* at ¶ 6.) The evidence shows that, in this decade alone, GM's market capitalization – a measure of the company's value as determined by the market price of its outstanding shares of stock – has fallen more than 80 percent, from $66 billion in May 2000 to less than $12 billion currently. (*Id.*) GM's stock price has dropped sharply, from more than $90.00 per share in April 2000 to less than $20.19 as of May 14, 2008. (*Id.* at ¶ 8.)

25.    GM's credit rating has also declined as a result of its financial difficulties. (*Id.* at ¶ 7.) In 1985, GM's credit rating was "AA+", within what is regarded as "investment grade." By March 2005, GM's credit rating had been downgraded to non-investment grade or "junk" bond status. Today GM's credit rating remains several levels below investment grade, at either a "B" or "B-". (*Id.*) This significant and sustained deterioration in the company's credit rating, which has continued since the date the court approved the *Henry I* Settlement Agreement, has exacerbated GM's deteriorating financial condition by limiting its access to the capital required to fund its businesses and, where capital is available, by making it significantly more costly. (*Id.*)

26.    GM's continuing financial troubles reflect a long downward business trend. In general, GM's position in the United States market has significantly declined over the last two decades. (*Id.* at ¶ 5.) From 1971 to 1985, GM occupied more than 40 percent of the United States automobile market. Since then, with the entrance of numerous new

8

vehicle brands in North America, GM's United States market share has steadily eroded to 23.5 percent in 2007.  (*Id.*)

### E. The Role Of Retiree Health Care Costs In GM's Financial Struggle

27.    Even after the *Henry I* Settlement Agreement, GM's health care costs have had a significant negative effect on its business and financial condition.  (Raleigh Decl. at ¶¶ 3-5.)  GM's future financial responsibility for coverage under a defined benefit plan is reflected on the company's balance sheet in the form of Other Post Employment Benefit or "OPEB" obligation,  the largest portion of which is attributable to retiree health care for former hourly employees.  (*Id.*)

28.    The evidence shows that GM's OPEB obligation extends far into the future and numerous different variables influence its calculation – including mortality rates, health care inflation rates and asset return rates.  Because of these variables, there is substantial uncertainty surrounding an assessment or appraisal of the actual costs of this obligation, which adversely affects lending institutions' assessment of the company's creditworthiness.  (*Id.*)

29.    GM's OPEB obligation and health care costs continue to adversely impact its financial health and ability to compete.  The evidence also demonstrates that GM's uncertain but substantial OPEB liability affects lenders' evaluation of risk, limiting GM's access to capital for business operations.  (*Id.* at ¶ 6; Meline Decl. at ¶ 7.)

30.    Similarly, as widely reported in the press, GM's health care costs have been a significant factor in weakening investor confidence in GM's financial condition. As one prominent national newspaper reported last fall, "[i]nvestors are also wary of unknown and growing liabilities, like long-term health care costs.  G.M.'s burden is one

9

reason its stock price, more than $90 a share in 2000, has languished." (Meline Decl. at

¶ 8 (quoting Micheline Maynard, *With U.A.W. Accord, G.M. Looks to a New Detroit*, N.Y.

Times, Sept. 27, 2007).)

31.     In addition, because many foreign competitors lack the health care legacy

expenses of long-established companies such as GM, these foreign companies

continue to have a significant pricing and competitive advantage. (*Id.* at ¶ 5.) The

evidence shows that in 2007, for example, GM's total labor cost per hour was

approximately $25 to $30 greater than the estimated total labor cost per hour for

Japanese auto manufacturers (*e.g.,* Toyota, Honda, Nissan). (*Id.*) A key driver of this

labor cost disparity is health care cost, the large majority of which is retiree health care.

Indeed, the disparity is so large that last year (as in prior years), GM's United States

health care expense on a per vehicle basis was greater than the amount spent by GM

per vehicle for steel. (*Id.*; *see also* Decl. of Michael Raleigh at ¶ 4, *Henry I* Dkt. # 1360.)

32.     The record shows that GM's health care obligation has a negative impact

on its business in two fundamental respects. First, it diverts resources from business

operations. Second, it erodes investor confidence, thereby increasing the cost of the

resources needed to fuel those operations. (Meline Decl. at ¶ 9.) Thus, at a critical

time when significant investment is needed to meet emerging Corporate Average Fuel

Economy ("CAFE") requirements, GM's retiree health care obligation has restricted its

ability to invest in new plant machinery and equipment, as well as in alternative

propulsion technologies, on a scale equivalent to GM's key competitors. (*Id.*)

33.     Although GM's health care costs are projected to improve somewhat as a

result of the *Henry I* Settlement Agreement, GM expects that its OPEB obligation will

continue to limit its access to unsecured capital resources, eroding its already
precarious financial condition. (Raleigh Decl. at ¶¶ 6, 10; Meline Decl. at ¶¶ 10-11.)
Without access to unsecured debt markets, GM will need to resort to asset sales or
secured debt funding, which greatly diminishes its flexibility, increases its costs, and
reduces its ability to withstand weaker periods of the business cycle. (Raleigh Decl. at
¶ 6.)

34.    GM submitted evidence of its continued efforts to address its financial
condition through significant operational changes, intended to both reduce costs and
improve its market share. (*Id.* at ¶ 9.) For example, GM has reduced structural costs
by $9 billion annually. (*Id.*) In addition, GM has introduced several new vehicle models
in the past two years and is actively pursuing the next generation of alternative fuel
technology, such as the plug-in Volt concept electric vehicle, fuel cells and bio-fuels.
(*Id.*)

**F. GM's Business And Its Impact On Michigan And Other Communities**

35.    Despite its struggles, GM remains one of America's largest employers.
Either directly or indirectly, more than 750,000 Americans earn their living building,
marketing and selling GM cars and trucks; almost half a million retirees and surviving
spouses receive a pension from GM; and more than 700,000 salaried and hourly
retirees and their dependents receive health care from GM. (Meline Decl. at ¶ 13; *see
also* Raleigh Decl. at ¶ 3.)

36.    Given its size, GM is vital to the economies of southeast Michigan, the
State of Michigan as a whole and other United States communities. The evidence
shows that, as Michigan's largest employer, the company operates from more than 50

11

locations statewide, directly employing over 61,000 Michigan residents with an annual payroll of $7.8 billion. (Raleigh Decl. at ¶ 13; *see also* Meline Decl. at ¶ 13.) Almost three times that number of individuals (167,000) are GM retirees residing in Michigan. (Raleigh Decl. at ¶ 13.) GM's North America manufacturing operations spend considerable amounts in supply and materials purchases, with the vast majority from a base of about 4,000 United States suppliers. (Decl. of Leigh J. Dushane ("Dushane Decl.") at ¶ 2, Dkt. # 51-4.) More than 1,000 of GM's United States suppliers are located in Michigan. (*Id.* at ¶ 3.)

37.    Beyond Michigan, GM operates vehicle assembly plants in 13 states and maintains other operations, such as service parts warehousing facilities, throughout the country. (Meline Decl. at ¶ 13.) In the past five years alone, GM has made capital investments totaling more than $20 billion in the United States, and purchased hundreds of billions of dollars in parts and supplies. GM spends more than $6 billion annually in research and development, and in 2007 alone spent more than $8 billion. (*Id.* at ¶ 14.)

### G. Events Leading To Henry II

38.    In 2007, GM announced that it would terminate the *Henry I* Settlement Agreement according to its terms at the end of 2011 and unilaterally reduce retirees' health care benefits at that time. (Payne Decl. at ¶ 10.)

39.    During negotiations between GM and the UAW during August and September 2007, the UAW and GM discussed the prospect of establishing a new VEBA, completely independent of GM, with increased funding that would assume total responsibility for providing retiree health care. (*Id.*)

12

40.    Class Counsel actively followed these negotiations, and continued to

maintain contact with both the UAW and the *Henry I* Class Representatives throughout

the course of the negotiations.  (*Id.* at ¶ 11.)

41.    The GM/UAW discussions resulted in a tentative agreement that had the

following basic features:

(a)    Assuming that Class Representatives, Class Counsel and the Court
approved the settlement, a new VEBA would be funded with an amount
likely totaling (on a present value basis as of January 2008) at least $33
billion, and the new VEBA would assume responsibility for providing
retiree health benefits for retirees starting in 2010.

(b)    Assuming approval, GM would also continue to pay all benefits before the
VEBA took over in 2010 at an estimated cost of $5.4 billion on a present
value basis.

(c)    Under the tentative agreement, the *Henry I* program and all benefits of the
*Henry I* settlement would continue without change at least through 2011.
Whether benefits or participant contributions would have to be adjusted or
other actions taken by the VEBA committee thereafter would depend on
many factors to be considered by a committee focused upon maintaining
substantial health care benefits as its guiding priority, including whether
GM remains financially viable so it can make the required payments and
whether new or existing government health care programs are
implemented or improved (which could actually result in benefits being
improved).

(Payne Decl. at ¶ 11.)

42.    The *Henry I* class representatives objected to GM's announcement that it

would terminate the *Henry I* Settlement Agreement in 2011 and thereafter unilaterally

reduce retirees' health care benefits.  They authorized Class Counsel to bring a second

lawsuit contending that their retiree benefits are vested and that any unilateral reduction

of benefits would violate the relevant CBAs.  (*Id.* at ¶ 12.)  The *Henry I* Class

Representatives also authorized Class Counsel Payne to seek to re-open *Henry I*.  (*Id.*)

13

43.    Plaintiff John Huber (a 2007 Delphi retiree) authorized Class Counsel to add him as an additional plaintiff in the new litigation. (*Id.* at ¶ 13.)

### H. Plaintiffs' Claims And GM's Response

44.    The Class Representatives, together with the UAW as a co-Plaintiff, filed this action ("Henry II") on September 26, 2007. (Compl., Dkt. # 1.)

45.    Plaintiffs brought Count I of the Amended Complaint under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking a declaration that retiree health care benefits cannot be unilaterally terminated or modified by GM, and a permanent injunction prohibiting such termination or modification. (Am. Compl. at ¶ 3, Dkt. # 33.)

46.    In Count II, the Class Representatives asserted a claim under § 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), seeking the same declaratory and injunctive relief as Count I. (*Id.* at ¶ 4.)

47.    GM filed its Answer and Affirmative Defenses to the Amended Complaint on March 6, 2008. In its Answer, GM denied that the retiree health care benefits it provides are vested benefits that GM cannot unilaterally modify or terminate. GM also asserted affirmative defenses, including that the plaintiffs' claims are barred by the terms of the CBAs, as well as by acquiescence, waiver, ratification and/or estoppel. (Answer and Affirmative Defenses at ¶¶ 1-9, Dkt. # 39.)

### I. The Parties' Negotiations

48.    In connection with the 2007 negotiations, GM provided the UAW with extensive information about its financial condition and health care expenditures,

14

including confidential and proprietary financial information and analysis. (*See* 2008

Settlement Agreement at § 3, Dkt. # 27-3.) This information was reviewed by the UAW

and its advisors, including leading investment bankers, actuaries and legal experts, who

assessed GM's financial condition and analyzed the benefits of the proposed

arrangement and created financial and cash-flow models to determine the funds that

would be needed to provide ongoing retiree health care benefits under the Settlement

Agreement. (*Id.*) Representatives of the UAW and its team of advisors also met with

GM officials, who answered questions and provided further detail, as requested. (*Id.*)

49.    On September 26, 2007, the UAW and GM entered into a memorandum

of understanding ("MOU") that provisionally resolved their dispute. (MOU, Dkt. # 26-

15.) The MOU established a framework for a full and complete settlement of their

dispute concerning retiree health care. (*See id.*)

50.    Active GM-UAW employees ratified the MOU on October 10, 2007. (Decl.

of Andrew B. Bloomer at Tab A, Dkt. # 27-12.)

51.    The proposed framework for settlement was contingent on approval by

Class Counsel following Class Counsel's independent investigation.

52.    Even after Class Counsel completed their investigation and approved the

framework, many details remained to be negotiated among the parties. (Payne Decl.

¶ 34.)

53.    Class Counsel, the UAW and GM did in fact negotiate a detailed,

comprehensive agreement, the February 21, 2008 Settlement Agreement presented to

this court with the Joint Motion for Preliminary Approval of Class Action Settlement

Agreement and Proposed Class Notice. (*See* Settlement Agreement, Dkt. # 27-03.)

15

54.    Class Counsel was an active participant and negotiated matters in addition to or different from what was in the MOU, including changes in the conversion price or "strike" price associated with the Convertible Note and standards for investment management once the VEBA is established. Payne Decl. ¶ 34. The final agreement is referred to herein as the "2008 Settlement Agreement."

### J. Investigation By UAW And Class Counsel Of The Likelihood Of A GM Default In The Future And Adequacy Of Proposed Funding Of The New VEBA

55.    Before entering into the MOU, the UAW retained experts to advise the union about the risk of a future GM default and the impact of a default on retiree health obligations.

56.    The UAW retained Lazard Frères & Co., LLC ("Lazard") to perform the financial analysis and Milliman to perform the actuarial analysis. Each company is among the leaders in its respective field.

57.    The evidence showed that GM gave the Class, the UAW and their advisors access to a large quantity of confidential and actuarial information. For example, GM gave Lazard access to relevant financial information, including confidential projections and business plans. (Decl. of Jim Millstein ("Millstein Decl.") at ¶¶ 7-9, Dkt. # 53.)

58.    GM's actuaries, Watson Wyatt, provided Milliman with its own model for projecting health care benefit costs in the future, along with historical plan costs and demographic information about the individuals who would be entitled to benefits under the proposed settlement. Lazard and Milliman developed independent cash flow and financial models to analyze the funding requirements and adequacy of the proposed

VEBA. (Decl. of Suzanne Taranto ("Taranto Decl.") at ¶ 7, Dkt. # 54; Millstein Decl. at
¶ 15.)

59.    Lazard concluded that GM's financial position remains precarious and
recommended to the UAW that it explore the establishment of a funded VEBA to protect
retirees from the adverse impact that further deterioration in GM's financial position and
credit quality could have on its ability to meet its health care obligations to UAW
retirees. (Millstein Decl. at ¶¶ 12-13.)

60.    After concluding that GM's financial condition justified negotiating a funded
VEBA that would assume the responsibility for providing retiree health benefits to the
UAW retirees, UAW set out to negotiate for funding at a level that was projected to be
adequate to continue providing benefits for the lives of all the retirees and dependents
eligible for retiree health benefits under UAW collective bargaining agreements, without
any material modifications to existing coverages and without requiring any material
increase in the retirees' share of the cost. (*Id.* at ¶ 14.) Lazard assisted the UAW in
negotiating with GM for higher valued VEBA contributions than GM originally offered
and provided estimates of the valuation of the Convertible Note that GM would provide
to the new VEBA as part of the proposed settlement. (*Id.* at ¶¶ 14-20.)

61.    Milliman examined the assumptions that were used in the negotiations
between GM and UAW. (*See, e.g.,* Taranto Decl. at ¶¶ 4-6.) With respect to the
assumption that the VEBA assets would earn 9 percent annually on investments,
Milliman tested some sample expected hypothetical investment portfolios to determine
the likelihood of achieving a 9 percent long-term investment return. Milliman reported:

17

> Based on a weighted average payment duration of approximately 12 years, and a "traditional" 60% equity 40% fixed income portfolio, we determined that a 9% return represents just under the 75[th] percentile of expected returns (i.e., the hypothetical portfolios would achieve a compounded annual long-term return of 9% or greater over their lifetime about 25% of the time). More significantly, we reviewed other hypothetical investment portfolios with investment policies comparable to those of very large pension funds (which would more closely approximate our expectation for an investment policy appropriate for a trust of this size), and found that the 9% return represented just over the 50[th] percentile of returns (i.e., the hypothetical portfolios would achieve a compounded annual long-term return of 9% or greater over their lifetime about 50% of the time).

(*Id.* at ¶ 8.) Milliman concluded that the other assumptions about future experience, including life expectancy and future medical cost inflation, were also within a reasonable range. (*Id.* at ¶ 6 and App. A.) After modeling the future solvency of the VEBA under various proposals and assumptions, Milliman advised the UAW that, using the negotiators' assumptions, "the VEBA is projected to have sufficient assets to provide the benefits anticipated in the current settlement agreement over the lifetime of the covered group of current and future retirees." (*Id.* at ¶ 15.)[1]

62.    Lazard similarly concluded that "[b]ased on the assumptions in the VEBA model (including the convertible note and derivative instrument valuation) and the settlement terms agreed to by the UAW and GM, the VEBA model forecasted solvency throughout the lives of all covered employees with no modifications to benefits and only a slight increase in the cap on escalation of retiree contributions, deductibles and out-of-

---

[1] For purposes of modeling the solvency of the VEBA, the negotiators' assumptions included an assumed total value with respect to the convertible note. (*See* Taranto Decl. at ¶ 17.) A portion of that assumed value was attributable to the conversion feature in the note, coupled with derivative contracts included as Exhibit H of the 2008 Settlement Agreement. Milliman did not verify or offer any conclusion with respect to the assumed value of the convertible note, including the conversion feature or the derivative. (*Id.*)

pocket maximums from 3% annually to 4% annually starting in 2016." (Millstein Decl. at
¶ 20.)

63.     Independent of the UAW, Class Counsel also thoroughly reviewed the
fairness, reasonableness and adequacy of the proposed settlement. To facilitate this
review, the UAW and GM granted Class Counsel access to all relevant financial and
actuarial materials, including proprietary and confidential financial information and
analyses, and to all documents that Class Counsel requested relating to UAW health
care. (Payne Decl. at ¶ 38.) Class Counsel again considered applicable law and
engaged in extensive discussions with UAW experts and GM representatives. (Id.) In
addition, Class Counsel retained their own experts, reviewed material concerning GM's
health care costs, and analyzed relevant health care documents and collective
bargaining agreements. (Id.) Class Counsel's experts also conferred with UAW's
experts about issues of concern to them. (Id.)

64.     Based on Class Counsel's investigation in Henry I, Class Counsel had
concluded that GM faced ongoing and very serious financial difficulties. The further
analysis Class Counsel conducted in Henry II showed that these difficulties remained
and would continue. (Id. at ¶ 39.) Class Counsel has stated that GM's financial
condition was a compelling factor in Class Counsel's decision to approve the basic
concept set forth in the MOU and negotiate the terms of the 2008 Settlement
Agreement. (Id.) As Class Counsel concluded, no matter how strong the legal claim is
on the merits, Class Members would still be vulnerable if there is a significant risk that
GM might become insolvent and unable to pay the level of benefits that the Class
Members anticipate receiving over their projected life expectancy. (Id.)

19

65.    To analyze GM's financial prospects in connection with Henry II, Class

Counsel retained John D. Finnerty, Ph.D., Managing Principal of Finnerty Economic

Consulting, LLC and Professor of Finance and Director of the MS in Finance Program at

Fordham University in New York. (*See* Decl. of William T. Payne in Support of Mot. for

Final Approval ("Payne Final Approval Decl.") at ¶ 2, Dkt. # 52-2.) Dr. Finnerty's Expert

Report ("Finnerty Report"), and exhibits and appendices showing his qualifications and

listing the materials he considered, are found in the record at docket numbers 52-4 to

52-8. Using several different metrics, Dr. Finnerty concluded that there is a substantial

possibility that GM will default on its senior debt obligations when examined over a

relatively short (3-7 year) time horizon and a higher likelihood of default over a longer

time horizon. (Finnerty Report, Dkt. # 52-4.)

66.    Based on Dr. Finnerty's assessment of GM's risk of default, Class

Counsel concluded that a discounted settlement worth less than the "full value" that

Plaintiffs might win through a court determination would be justified here. (Payne Decl.

at ¶ 43.) As Class Counsel explained, they are familiar with cases, including ones

where they served as class counsel, where retirees achieved victories that later became

"hollow" because the losing company then filed for bankruptcy. (*Id.* at ¶ 24.)

67.    In addition, Class Counsel concluded that a discounted settlement worth

less than "full value" also was justified due to the risks of their ultimately losing the

litigation. (*Id.* at ¶ 44.) Class Counsel has extensive experience litigating retiree

welfare benefit cases, which often result in years of litigation. (*Id.* at ¶¶ 16-26.) At

times, Class Counsel has litigated cases for years and prevailed in the lower court on

summary judgment or at trial, only to have the Court of Appeals announce what seemed

20

to be a new standard in reversing judgment and finding for the employer. (*Id.* at ¶ 23.)

Class Counsel notes that they also are familiar with cases where courts, including those

in the Sixth Circuit, have ruled that health benefits for certain groups of union retirees

are not vested and may be unilaterally altered by their former employers. *See, e.g.,*

*Maurer v. Joy Technologies, Inc.*, 212 F.3d 907 (6th Cir. 2000); *Bittinger v. Tecumseh*

*Products Co.*, 83 F. Supp. 2d 851 (E.D. Mich. 1998); *Int'l Union v. Cleveland Gear*

*Corp.*, No. C83-947, 1983 WL 2174 (N.D. Ohio Oct. 20, 1983).

     68.    In addition to considering the prospects of a GM default and of losing the

lawsuit on the merits, Class Counsel also considered (1) the range of likely payments

into the VEBA and (2) the range of anticipated *Henry I* benefits that the VEBA would

likely be able to provide starting in 2012. (Payne Decl. at ¶ 45; Payne Final Approval

Decl. at ¶ 3.) For these estimates and analysis, Class Counsel relied on the expert

advice of consulting health care actuary Adam Reese, FSA, EA, MAAA, and the Hay

Group, where Mr. Reese is a Senior Consultant. (*Id.*) A redacted version of the final

Hay Group Report, dated February 14, 2008, is found in the record at docket number

52-3.

     69.    Hay Group personnel had full access to the actuarial data available to

Milliman and Lazard, as well as to published reports and cash flow projections of

Watson Wyatt, an actuarial firm retained by GM. (Payne Decl. at ¶ 46.) The Hay Group

independently evaluated the actuarial assumptions that were used in the UAW/GM

negotiations and independently examined the value of the agreed contributions to the

VEBA. The Hay Group concluded that the actuarial assumptions were within the range

of reasonable assumptions for such future experience. (Hay Group Report at 7-8.) And

21

with respect to the agreed contributions, the Hay Group assigned different, and somewhat lower, values to some of the expected contributions than had Lazard and Milliman in their analyses. (*Id.* at 3, 9-10.) Finally, the Hay Group developed its own cash flow and financial model to test whether the VEBA assets would be sufficient to provide benefits for as long as the covered retirees and eligible dependents may live. (*Id.*)

70.    According to the Hay Group, because of the new VEBA's extended life, it is difficult to project forward with certainty whether the amounts to be paid into the VEBA will be enough to pay all anticipated benefits for all future years without adding more retiree contributions or reducing benefits. This is because the VEBA's funds and expenditures are inherently uncertain due to such factors as:

- future investment returns and volatility of returns,
- variation of annual cost changes,
- changes in Medicare,
- the possibility of government-paid national health benefits,
- mortality experience of the retirees,
- unpredictability of GM stock price, and
- possible GM bankruptcy.

(*Id.* at 16.) Considering that uncertainty, the Hay Group estimated how variations in the primary factors would affect the VEBA's ability to continue providing benefits at the level provided for in the *Henry I* Settlement Agreement. Under certain plausible conditions, the VEBA would be expected to continue providing those benefits for as long as the retirees and dependents are alive to receive them. Under other conditions, the Hay

22

Group projected that the VEBA Committee would have to reduce benefits at some point in the future in order to continue providing substantial benefits for as long as they will be needed.  (*Id.* at 11-16.)

71.    The Hay Group Report expressed an opinion as to what types of benefit levels could be provided, given various reasonable assumptions about investment return and medical inflation, if (as expected) the VEBA is funded with at least $33 billion (present value as of January 2008).

72.    After considering the Hay Group Report, the Finnerty Report, and their own research and experience, Class Counsel concluded that given the serious risk of a future GM default on retiree health obligations, Class Members would be well served if the settlement resulted in their securing enough immediate funding for the VEBA to provide for substantial lifetime health care benefits, even if future reductions in benefit levels may become necessary.  Class Counsel determined that such a settlement would be preferable to Class Members' bearing the continued risk of a default in which they could receive little or nothing.

### K. Class Counsel's Conclusion

73.    Based on Class Counsel's professional experience and judgment, Class Counsel concluded that the possibility that the VEBA may not have all the funding needed to provide *Henry I* benefits at anticipated levels for the lifetime of all Class Members must be viewed in light of the particular risks inherent in this litigation (e.g., possible GM bankruptcy, chances of losing on the merits), as well as the risks inherent in all class action litigation.  (Payne Decl. at ¶ 50.)

74.    Class Counsel reached these conclusions based upon analyses of the CBA provisions and the laws applicable to the claims alleged in the Complaint, the burdens and expense of litigation, including the risks and uncertainties associated with protracted trials and appeals, the risks and uncertainties arising from GM's financial condition and the certainty and cost-efficiencies provided by the payments and plan modifications set forth in the 2008 Settlement Agreement.  (*Id.* at ¶ 51.)

75.    Class Representatives and Class Counsel concluded that the proposed settlement is fair, reasonable, adequate, and in the best interests of the Class.  (*Id.* at ¶ 22.)  They accordingly joined in the negotiation of the final settlement agreement, filed a motion for class certification and joined with GM and UAW in a motion for preliminary approval of the proposed settlement.

### L. Key Terms Of The 2008 Settlement

76.    The 2008 Settlement Agreement provides that an 11-member independent Committee, acting on behalf of an "Employees Beneficiary Association" ("EBA") organized for the purpose of establishing and maintaining a new health care plan ("New Plan"), shall implement the New Plan for the purpose of providing retiree health care benefits to the Class and to a covered group of individuals ("Covered Group"), including current active employees, who themselves are not members of the Class but who may become entitled to benefits by reason of retirement (or death after becoming eligible for retirement) after October 2007.  (2008 Settlement Agreement at 4-5 and § 4.A.-B.)  The EBA will be the plan sponsor.

77.    The Committee will serve as named fiduciary and plan administrator of the New Plan.  (*Id.* at 4 and Ex. E.)  The Committee will have both a fiduciary responsibility

24

and the authority to manage assets and to adjust future benefits after 2011 as necessary for the purpose of continuing to provide substantial lifetime benefits to the entire group of covered retirees and dependents. (*See id.* at ¶ 5.B.)

78.    Once the 2008 Settlement Agreement is finally approved, which approval the court grants herein, it will satisfy, supersede and replace the *Henry I* Settlement Agreement in its entirety. (*Id.* at 1.)

79.    Under the terms of the 2008 Settlement, GM will continue to provide the same level and scope of retiree health care benefits for Class Members in accordance with the *Henry I* Settlement until the date when all legal challenges and appeals regarding the 2008 Settlement Agreement have been resolved or exhausted or, if later, January 1, 2010 (the "Implementation Date"). (*Id.* at § 5.A.) Benefits will thereafter be provided and funded under the New Plan and a new VEBA ("New VEBA"). (*Id.* at § 5.B.)

80.    Under the 2008 Settlement Agreement, benefit levels will remain the same until at least December 31, 2011 (when GM's unilateral termination of the *Henry I* Settlement Agreement would be effective), except that the New Plan will assess an additional, non-escalating monthly contribution of $51.67 to Class Members who currently receive monthly GM pension benefits. (*Id.* at §§ 5.B, 15; *see* Raleigh Decl. at ¶ 11.) This additional contribution will be offset by a monthly special lifetime pension benefit of $66.70 paid by GM. (2008 Settlement Agreement at § 15.)

81.    In *Henry I*, the court previously considered and approved a plan of retiree medical benefits that will continue under the 2008 Settlement Agreement through at least December 31, 2011. Specifically, the court therein held that "the Modified Plan

25

[under the *Henry I* Settlement Agreement] provides a range of benefits for retirees that substantially exceeds the benefits generally available to most other retirees with employer-sponsored retiree health care plans, and at a cost that is substantially less than the cost most other retirees pay." *Henry I*, 2006 WL 891151, at *17 ("[T]he benefits provided to the plaintiffs – continued comprehensive health care benefits with only a modest increase in cost – are fair, reasonable, and adequate...").

82.    The evidence shows that this plan remains one of the most comprehensive and, to its participants, least costly employer-sponsored retiree health plans in the United States. (Decl. of Sylvester J. Schieber, Ph.D ("Schieber Decl.") at ¶ 10, Dkt. # 51-5.) Benefits include coverage for a broad range of inpatient and outpatient services, generic and branded drugs and appropriate medical devices for preventive and acute care needs. (*Id.*) The evidence further shows that in virtually every cost category, the medical and prescription drug benefits to be continued under the 2008 Settlement Agreement are provided to participants at costs significantly below those required by typical retiree plans offered by employers and the Plan remains one of the most desirable plans nationally. (*Id.* at ¶ 11.)[2]

---

[2] The court notes that these benefits stand in stark contrast to GM's health care benefit plan for its salaried retirees and employees, which requires significant cost contribution. (*See* Raleigh Decl. at ¶ 12.) For example, GM salaried employees employed after 1993 do not receive any health care in retirement. Those salaried retirees and employees who are eligible for health care currently pay a monthly premium of $100 (single) or $200 (family), with ten percent coinsurance on covered services. (*Id.*) Moreover, their annual deductible in the Enhanced PPO Plan ($750-$1,500) is at least twice as high as the current deductible for hourly retirees under the settlement and their annual out-of-pocket maximum is four times higher than for hourly retirees ($2,000-$4,000). (*Id.*) In addition, salaried workers and retirees pay higher prescription drug co-payments than do hourly retirees and are responsible for one hundred percent of increases in health care costs after 2006. (*Id.*)

83.    Under the 2008 Settlement Agreement, the Committee will be solely
responsible for establishing the scope and level of post-retirement medical benefits
available to Class Members as of January 1, 2012, and will have the discretion to raise
or lower the level of such benefits. (2008 Settlement Agreement at § 5.B; *see also*
3/4/08 Trans. at 10, 12, Dkt. # 41.) Consistent with its fiduciary responsibilities, the
Committee will have authority to, in its sole discretion, enter into agreements and take
all actions that it deems desirable for the administration of the Trust or Plan. (2008
Settlement Agreement at § 10.13.)

84.    As of the Implementation Date, the New VEBA will be the exclusive
source of funds to pay for retiree medical benefits for Class Members and, on the same
basis, members of the Covered Group. (*Id.* at §§ 2, 5.B.)

85.    Under the 2008 Settlement Agreement, GM's payment obligations with
respect to the New Plan and the New VEBA are fixed and capped. (*Id.* at §§ 5.B, 8.)
Subject to certain express conditions, those payments (including assets to be
transferred from the Existing External VEBA established under the *Henry I* settlement)
are currently worth an estimated $33 billion at a minimum. The exact amount and value
of all of GM's payments to the new VEBA will depend on a variety of factors and future
events, and conditions set forth in the 2008 Settlement Agreement. (*See, e.g., id.* at
§§ 7.C, 7.D, 8.C, 8.D, 8.G, 10, 12.F.) In addition, GM is not responsible for and does
not guarantee: (1) the level or scope of retiree medical benefits to Class Members
under the New Plan; (2) the asset returns on the funds in the UAW Related Account, the
Temporary Asset Account (established under the 2008 Settlement Agreement to hold
certain GM payments as described in that Agreement) or the New VEBA; or (3) whether

27

there will be sufficient assets in the New VEBA to fund the current scope and level of benefits indefinitely. (*Id.* at §§ 6, 7.F; see also *id.* at 2.)

86.    Including the $5.4 billion that GM is estimated to spend on retiree medical benefits between January 1, 2008 and January 1, 2010, the total value dedicated to funding retiree medical benefits for Class Members and the Covered Group measured in today's dollars will be an estimated $38.4775 billion. This consists of at least $33.0775 billion using the face value for the Convertible Note ($4.3725) and $0.165 billion representing just one Shortfall Payment, plus the $5.4 billion GM is estimated to spend on *Henry I* retiree medical benefits between January 1, 2008 and January 1, 2010. (*Id.* at § 8; Payne Decl. at ¶ 36; 3/4/08 Tr. at 8-10.)

87.    The goal of both the UAW and Class Counsel in reaching agreement with GM on the amounts to be contributed to the New VEBA was that there be sufficient assets to continue providing the *Henry I* level of benefits for the lifetime of all retirees and dependents who will be eligible for those benefits under the settlement, a period of time assumed to be approximately 80 years. Because the sufficiency of those assets depends on the future experience of the new VEBA, including the rate of investment return on VEBA assets, future rates of inflation in medical costs and how long covered retirees and dependents live, it is difficult to predict whether VEBA assets will be sufficient to achieve the goal.

88.    All assets that GM pays or transfers to the New VEBA must be used for the exclusive purpose of providing retiree medical benefits to the participants of the New Plan and their eligible beneficiaries and to defray the reasonable expenses of administering the New Plan. (2008 Settlement Agreement at § 2; 3/4/08 Tr. at 12-13.)

89.    Finally, other than the 2008 Settlement Agreement, there are no
agreements that were "made in connection with the proposal," Fed. R. Civ. P. 23(e)(3),
other than an agreement between the parties and the United States Department of
Labor as described in the joint filings of the UAW and Class in support of final approval
of the Settlement Agreement.

### M. The 2008 Settlement Is Vital To GM's Turnaround Plan

90.    In entering into the 2008 Settlement, GM determined that a final
negotiated resolution of the parties' dispute and GM's retiree health care obligation was
critical to its turnaround plan and the long term success and profitability of its business.
(Meline Decl. at ¶ 11.)  In particular, the 2008 Settlement Agreement resolves, once and
for all, the parties' ongoing dispute over retiree health care and provides a full, complete
and permanent resolution of all claims among the parties regarding retiree health care
benefits.  (2008 Settlement Agreement at 1; Meline Decl. at ¶ 11.)  The 2008 Settlement
will substantially improve GM's opportunity for success by converting GM's OPEB
health care obligation from an uncertain defined benefit plan to one that is fixed and
capped and by freeing up capital for GM to invest in its core business and new product
development.  (Meline Decl. at ¶ 9.)

91.    Similarly, GM predicts that the Settlement will significantly limit its
exposure to unexpected short-term inflationary spikes in health costs at critical junctures
that could frustrate the company's competitive initiatives.  (Raleigh Decl. at ¶ 10.)
According to GM, the Settlement will enable it to utilize surplus pension resources for
retiree health care that would otherwise be inaccessible for such purposes.  (*Id.*; 2008
Settlement Agreement at § 15.)

29

92.    The 2008 Settlement Agreement also removes the substantial burden to
GM of administering retiree health care benefits and provides the certainty of a cap and
limit on GM's obligation to pay for such benefits. (Meline Decl. at ¶ 11.) This benefits
GM's business planning, and GM anticipates that it will be viewed favorably by
investors, lenders and credit rating agencies. (Id.) Together with other aspects of GM's
turnaround plan, the Settlement is intended to eventually produce an upgrade in GM's
credit rating, giving the company greater access to capital markets, improved cash flow
and investment flexibility and is also intended to positively impact its stock value – all of
which are essential to the company's long-term success. (Raleigh Decl. at ¶ 10.)

93.    The parties reasonably concluded that, in the absence of a permanent
negotiated resolution, GM will continue to bear the significant competitive, fiscal and
litigation challenges associated with its OPEB obligation and retiree health care costs.
(Meline Decl. at ¶ 10.) GM asserted that, without the 2008 Settlement Agreement, GM
would terminate the Henry I Settlement Agreement in 2011 according to its terms and
take unilateral action to modify retiree health care costs. (Id. at ¶ 12.) The UAW and
the Class would oppose any such action, and the inevitable result would be prolonged
and expensive litigation. While GM believes that it would prevail in any such case, GM
might not. Moreover, even if GM were ultimately successful in litigation, the delay in
obtaining a final resolution of GM's retiree health care obligation, which very likely would
take several years, could thwart the company's ability to address its financial difficulties,
further eroding the confidence of creditors, investors, GM shareholders, financial and
credit markets, car buyers and the press. (Id.) The parties concluded that the 2008

30

Settlement avoids these problems by addressing and permanently resolving the most

significant obligation facing GM's future. (*Id.* at ¶ 15.)

### N. The Class Notice

94.    On February 28, 2008, following the filing of the parties' Joint Motion for

Preliminary Approval of the 2008 Settlement Agreement, GM issued a notice of

proposed class settlement to the federal and state attorneys general as required under

the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b). (Fraga Decl. at ¶¶ 11-14 &

Ex. E thereto.) It also provided notice to the Class by mailing Class Notice packets via

First Class Mail to each of the 521,979 Class Members. (*Id.* at ¶¶ 4-7.)

95.    The Class Notice informed Class Members that they could object to the

2008 Settlement Agreement and that those Class Members who are also members of

the *Henry I* class could object to the "Joint Motion for Relief from Judgment" in the

*Henry I* case. (Class Notice at ¶¶ 1-2, 9, 12-13; Publication Class Notice, Dkt. # 27-18;

*see also* Joint Motion for Relief from Judgment Under Rule 60(b)(5) or (6), Dkt. # 1443

in *Henry I.*)

96.    In addition to the mailed notices, GM also provided notice by publication in

the March 29, 2008 weekend edition of the *Detroit News & Free Press* and the March

28, 2008 edition of *USA Today*. (Fraga Decl. at ¶¶ 4, 15.)

97.    Each notice described the terms of the 2008 Settlement Agreement,

informed Class Members of their right to object and the date of the fairness hearing and

(in the case of mailed notice) included a copy of the entire 2008 Settlement Agreement

with exhibits (excluding Exhibit B ("Convertible Note"), Exhibit F ("Registration Rights

Agreement") and Exhibit H ("Master Terms and Conditions for Capped Convertible

31

Bond Hedging Transactions"), which were deemed too large and impractical for direct mail delivery). (Class Notice at ¶¶ 6, 17; Publication Class Notice.)

98.    The Class Notice further informed Class Members that a complete copy of the 2008 Settlement Agreement, including all exhibits thereto: (1) was available on the Internet; (2) could be obtained by calling a toll-free number; and (3) could be inspected during business hours in the Office of the Clerk of the Court, as well as at Class Counsel's and UAW's offices. (Class Notice at ¶ 17; Publication Class Notice; Fraga Decl. at ¶ 4.)

99.    The Class Notice mailing was performed by using a master list maintained for GM by Fidelity Investment Management Research Corporation, the record keeper for GM employee benefit plans, including the GM Hourly Health Care Plan covering hourly retirees, spouses, dependents and surviving spouses. (Decl. of Mark Shepherd ("Shepherd Decl.") at ¶¶ 3-4 & Ex. F hereto, Dkt. # 51-6; Fraga Decl. at ¶¶ 5-7.)

### O. Objections

100.    Neither the Attorney General of the United States, nor the Attorney General of any State, has filed any objection to the 2008 Settlement Agreement in response to the Class Action Fairness Notice sent to them on February 28, 2008.

101.    Only 42 Class Members – or about eight thousandths of one percent of the entire Class – submitted timely objections.[3] (See Objections, Dkt. # 45.)

---

[3] An untimely 43rd objection from Peter Beltran was received one day before the Fairness Hearing. The court has reviewed this objection and finds it does not raise a ground to disapprove of the 2008 Settlement, even if it had been timely submitted.

102.    Twenty-three Class Members objected to the 2008 Settlement Agreement only; three Class Members objected to the Joint Motion for Relief from Judgment in *Henry I* only; and sixteen Class Members objected to both.

### P. Fairness Hearing

103.    The court held a Fairness Hearing on June 3, 2008. Only three Class Members appeared at the Hearing. Two objected to the proposed settlement. One raised a "concern" about the amount to be paid to the VEBA, but said it was not an objection. (*See* Fairness Hearing Tr. at 35-54, Dkt. # 58.)

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

1.    The court has jurisdiction in this action under Section 301 of the LMRA, 29 U.S.C. § 185, and Section 502(e)(1) and (f) of ERISA, 29 U.S.C. § 1132(e)(1) and (f).

### B. Class Certification

2.    For a class to be certified, the proposed group of litigants must satisfy the four requirements of Rule 23(a) and fall within one of the three subdivisions of Rule 23(b). *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1992). Based on the record after the fairness hearing, the court concludes that these requirements are met.

3.    **Numerosity**. There are approximately 522,000 individuals in the plaintiff class, amply satisfying the Rule 23(a)(1) requirement that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Henry I, 497 F.3d at 625* (class consisting of 476,676 retirees and dependents was "undoubtedly 'so numerous that joinder of all members is impracticable'" (citation omitted)); *see also, e.g., Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (finding

33

that an objection to numerosity requirement in 1,000-member class was "frivolous");
*Reese v. CNH Am. LLC*, 227 F.R.D. 483, 486 (E.D. Mich. 2005) (certifying claims of
1,400 retirees); *Rankin v. Rots*, 220 F.R.D. 511, 517 (E.D. Mich. 2004) (certifying
ERISA claims for class alleged to be in the "thousands").

4.    **Commonality**. The Rule 23(a)(2) requirement of commonality "'simply
requires a common question of law or fact.'" *Reese*, 227 F.R.D. at 487 (quoting
*Bittinger*, 123 F.3d at 884). "The interests and claims of the various plaintiffs need not
be identical. Rather, the commonality test is met when there is at least one issue
whose resolution will affect all or a significant number of the putative class members."
*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998).

5.    Whether GM has a unilateral right to modify retiree benefits is a question
of law common to the Class. *See Henry I*, 497 F.3d at 625 ("because the claims of all
retirees stem[med] from the collective bargaining agreements negotiated between GM
and the UAW, they share[d] 'common' 'questions of law or fact'" (citation omitted));
*Bittinger*, 123 F.3d at 879, 884 (finding commonality where retirees sought guaranteed
lifetime, fully-funded benefits, even though a series of different CBAs governed those
benefits); *Reese*, 227 F.R.D. at 487 (commonality established even though plaintiffs
retired at different times and under different CBAs); *Fuller v. Fruehauf Trailer Corp.*, 168
F.R.D. 588, 596 (E.D. Mich. 1996) (evaluation of effect of defendants' reservation of
rights provides common question satisfying Rule 23(a)(2)).

6.    **Typicality**. A "'plaintiff's claim is typical if it arises from the same event or
practice or course of conduct that gives rise to the claims of other class members, and if
his or her claims are based on the same legal theory.'" *In re Am. Med. Sys.*, 75 F.3d

1069, 1082 (6th Cir. 1996) (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on

Class Actions, § 3-13, at 3-76). As with commonality, the typicality requirement is not

an onerous one; so long as there is a strong similarity of legal theories, the requirement

is met "even if substantial factual distinctions exist between the named and unnamed

class members." Rankin, 220 F.R.D. at 518; see also Bittinger, 123 F.3d at 884-85;

Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993).

7.    Here, Plaintiffs claim that GM's planned unilateral modifications to retiree

health care benefits violate its obligations under ERISA and its contractual obligations

under the collective bargaining agreements. That claim satisfies the typicality

requirement, notwithstanding any possible factual variations with respect to individual

class members. Henry I, 497 F.3d at 625 ("the claims of the class representatives –

that the retirees' healthcare benefits are vested under ERISA and the LMRA – generally

are 'typical' of the claims of every other member of the class" (citation omitted));

Bittinger, 123 F.3d at 884 (claim that defendant "originally planned to provide lifetime,

fully-funded benefits to retirees" satisfies typicality); see also Reese, 227 F.R.D. at 487;

Rankin, 220 F.R.D. at 518.

8.    **Adequacy Of Class Representatives**. The Sixth Circuit has identified

two criteria for determining whether class representatives are adequate: "1) [t]he

representative must have common interests with unnamed members of the class, and

2) it must appear that the representatives will vigorously prosecute interests of the class

through qualified counsel." Senter v. Gen. Motors Corp., 532 F.2d 511, 525 (6th Cir.

1976). Here, Class Representatives have the same common interest as the unnamed

members of the class in protecting retiree health care benefits, and there is nothing to

35

suggest that they would not vigorously protect the interests of the Class. *See Amchem*, 521 U.S. at 625-26 (stating that class members must "'possess the same interest and suffer the same injury'" to meet the Rule 23(a)(4) adequacy requirement); *Henry I*, 497 F.3d at 626 (absent class members would be adequately represented when the named representatives were "part" of each class and all class members shared a common claim so that their legal interests paralleled the named representatives' interests).

9.    There are no potential intra-class conflicts that would jeopardize adequate representation or prevent class certification. In this regard, "it is well settled that only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Georgia State Conference of Branches of NAACP v. Georgia*, 99 F.R.D. 16, 34-35 (S.D. Ga. 1983) (citing Federal Practice and Procedure ("Fed. Prac. & Proc.") § 1768; *see also Mueller v. CBS, Inc.*, 200 F.R.D. 227, 238 (W.D. Pa. 2001). Hence, mere "differences in the interests of the class representatives and the other class members are not dispositive under Rule 23(a)(4). The key question is whether the interests are antagonistic." *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 610 (W.D. Pa. 1983) (emphasis in original); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999) ("Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (determining that factual variations among class members do not defeat adequacy where they are united in seeking relief on behalf of the class).

36

10.     In evaluating the adequacy of potential class counsel, Rule 23(g)(1)(I) requires that the court consider: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law and (4) the resources counsel will commit to representing the class.

11.     Class Counsel in this case are well qualified, more than adequate to the task, and have the resources to commit to representing the Class. *See Henry I*, 497 F.3d at 626 (finding Attorney Payne competent, qualified, and prepared to prosecute). Class Counsel have extensive knowledge of the law relating to retiree benefits litigation and have years of experience litigating dozens of actions of this kind. As set forth in footnote one of the Payne Declaration, some of these cases include the following: *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991); *Asarco, Inc. v. United Steel Workers of Am.*, No. 03-1297, 2005 U.S. Dist. LEXIS 20873 (D. Ariz. July 26, 2005); *Bower v. Bunker Hill Co.*, 725 F.2d 1221 (9th Cir. 1984), *on remand*, 114 F.R.D. 587, 675 F. Supp. 1254 (E.D. Wash. 1986); *Crown Cork & Seal v. United Steelworkers of Am.*, 32 E.B.C. 1950 (W.D. Pa. 2004); *Keffer v. H. K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989) (affirming 110 CCH Lab. Cases ¶10,878 (S.D.W.V., April 19, 1988)); *Mamula v. Satralloy*, 578 F. Supp. 563 (S.D. Ohio 1983); *Mioni v. Bessemer Cement Co.*, 4 E.B.C. 2390 (W.D. Pa. 1983); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir. 1985); *Rexam, Inc. v. United Steelworkers of Am.*, 31 E.B.C. 2562 (D. Minn. 2003); *Senn v. United Dominion*, 951 F.2d 806 (7th Cir. 1992); *Shultz v. Teledyne*, 657 F. Supp. 289 (W.D. Pa. 1987); *Smith v. ABS Industries*, 890 F.2d 841 (6th Cir. 1989); *Steelworkers v.*

37

*Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988); *Steelworkers v. Textron, Inc.*, 836

F.2d 6 (1st Cir. 1987).

12.    **Rule 23(b)(2).**  Finally, the Class may be certified under Rule 23(b)(2) in

that "the party opposing the class has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P.

23(b)(2).  The requirements of this subsection are met when "the common claim is

susceptible to a single proof and subject to a single injunctive relief." *Senter*, 532 F.2d

at 525.  Courts routinely certify claims challenging an employer's modification of health

care benefits under Rule 23(b)(2), holding that, in such cases, the employer's alleged

conduct is directed at the class as a whole and hence class-wide injunctive or

declaratory relief is appropriate.  *See Henry I*, 497 F.3d at 625 ("GM has threatened to

modify all retiree healthcare benefits unilaterally, 'thereby making appropriate final

injunctive relief or corresponding declaratory relief with respect to the class as a whole.'"

(citation omitted)); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 665 (E.D. Mich.

1995) ("[I]t is abundantly clear that the...decision by [the defendant] with regard to the

then-existing health care benefits affected the entire proposed class, thus making the

issue of a permanent injunction and corresponding declaratory relief facially

appropriate."); *Halford*, 161 F.R.D. at 20 (certifying claim that the defendant has a

contractual obligation to provide lifetime health care benefits to retirees and eligible

spouses). Plaintiffs' claims in this case are all based on the contested question of

whether GM may unilaterally modify retirees' health care benefits – claims that are

38

"susceptible to a single proof and subject to a single injunctive remedy," and hence are properly certified under Rule 23(b)(2). *Senter*, 532 F.2d at 525.

13.    Accordingly, the court will grant certification of the Class, as defined in paragraph thirteen of the court's findings of fact.

### C. Final Approval of the Class Action Settlement

14.    The court evaluates the proposed settlement in light of the general federal policy favoring the settlement of class actions. *Henry I*, 497 F.3d at 632; *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) (per curiam); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated and modified on other grounds by* 670 F.2d 71 (6th Cir. 1982); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *Berry v. Sch. Dist.*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).

15.    Given this well-settled policy, "a district court's role in evaluating a private consensual agreement 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Clark Equip. Co.*, 803 F.2d at 880 (quoting *Officers For Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Berry*, 184 F.R.D. at 97 ("The court's role...'is properly limited to the minimum necessary to protect the interests of the class and the public'"); *Bronson v. Board of Educ.*, 604 F. Supp. 68, 78 (S.D. Ohio 1984); Fed. R. Civ. P. 23(e)(1)(C) (stating that court may approve class settlement "on finding that it is fair, reasonable, and adequate").

16.    Because the very point of compromise is to avoid determining contested issues and to avoid the expense and uncertainty of litigation, the court should not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981); *Henry I*, 497 F.3d at 631 (inquiry into fairness of settlement "understandably does not require us to 'decide the merits of the case or resolve unsettled legal questions'" (citation omitted)); *Clark Equip. Co.*, 803 F.2d at 880 (a court should not examine "the factual or legal disputes which underlie the merits of the dispute").

17.    Nor should the court engage in the "'detailed and thorough investigation that it would undertake if it were actually trying the case.'" *Berry*, 184 F.R.D. at 98; Fed. Prac. & Proc. § 1797.5 ("The court may not try disputed issues in the case since the whole purpose behind a compromise is to avoid a trial. Rather the judge is restricted to determining whether the terms proposed are fair and reasonable.").

18.    In evaluating a proposed class settlement, the court "may limit the fairness hearing 'to whatever is necessary to aid it in reaching an informed, just and reasoned decision.'" *Tenn. Ass'n of Health Maint. Orgs.*, 262 F.3d 559, 567 (6th Cir. 2001); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1976); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("[e]ven when the Court becomes aware of one or more objecting parties, the Court is not 'required to open to question and debate every provision of the proposed compromise.'"); 4 Newberg § 11:57 ("The court, in its discretion, may limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement.").

40

19.    Courts have fashioned a series of factors to assist in weighing the

potential risks and rewards inherent in going forward with litigation against the certainty

of a compromise solution:

(i)    the likelihood of success on the merits weighed against the amount
and form of the relief offered in the settlement;

(ii)    the risks, expense, and delay of further litigation;

(iii)    the judgment of experienced counsel who have competently
evaluated the strength of their proofs;

(iv)    the amount of discovery completed and the character of the
evidence uncovered;

(v)    whether the settlement is fair to the unnamed class members;

(vi)    objections raised by class members;

(vii)    whether the settlement is the product of arm's length negotiations
as opposed to collusive bargaining; and

(viii)    whether the settlement is consistent with the public interest.

*In re Cardizem*, 218 F.R.D. at 522; *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203,

1205 (6th Cir. 1992).

20.    The court may choose to consider only those factors that are actually

relevant to the settlement at hand, and may weigh particular factors according to the

demands of the case.  *Id.* at 1205-06.

### D.  The Relevant Factors

### 1. The Likelihood Of Success On The Merits

21.    A significant factor in the court's evaluation of a proposed settlement is the

likelihood of success on the merits weighed against the relief offered in the settlement.

*General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984).

41

22.    Although this factor requires "'some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *Berry*, 184 F.R.D. at 98. The ultimate question is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem*, 218 F.R.D. at 522; *see also Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 WL 1318607, at *2 ("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable").

23.    In assessing the relative risk and benefits of the settlement, the court must not "'decide the merits of the case or resolve unsettled legal questions.'" *Henry I*, 497 F.3d at 631 (quoting *Carson*, 450 U.S. at 88 n.14). "The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632.

24.    Here, Plaintiffs' claims rest on the same question as in *Henry I*: Do the collective bargaining agreements vest former union workers with their health care benefits upon retirement? Plaintiffs' Amended Complaint makes the same basic claims as in *Henry I*, and seeks to enjoin the same conduct by GM, i.e., GM's unilateral modification of retiree health care benefits. (*See* Am. Compl., Dkt. # 33.) Plaintiffs likewise rely on the same GM / UAW collective bargaining agreements considered in *Henry I*. It is Plaintiffs' view in both cases that these CBAs demonstrate the parties' intent that retiree benefits be vested. (*See id.* at ¶¶ 24-26; *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983). It is GM's view, here as in *Henry I*, that

42

retiree health care benefits are not vested. According to GM, the company

unambiguously reserved its right to modify those benefits. (Ans. to Am. Compl. at ¶¶ 6-

13, 24, Dkt. # 36; see also Sprague v. Gen. Motors Corp., 133 F.3d 388, 400 (6th Cir.

1998).

25.    In short, the parties' claims and defenses in this case turn on the same

question as in Henry I: "Do the collective-bargaining agreements vest former union

workers with their healthcare benefits upon retirement?" Henry I, 497 F.3d at 631. As

in Henry I, the parties' fundamental disagreement on the answer to that question is a

"legitimate legal and factual disagreement" appropriate for settlement. 497 F.3d at 632;

Henry I, 2006 WL 891151, at *15 ("The ultimate issue in this case is whether retiree

health care benefits are vested, an issue upon which the plaintiffs and defendant have

historically been, and remain, deeply divided.").

26.    In its order affirming this court's final approval of the settlement in Henry I,

the Sixth Circuit summarized the parties' competing answers to this question as follows:

> The retirees and the UAW point to the Yard-Man line of cases as support
> for their position that the retirees' healthcare benefits vested upon
> retirement. See Int'l Union, United Auto., Aerospace & Agric. Implement
> Workers of Am. v. Yard-Man, Inc., 716 F.2d 1476, 1482 (6th Cir. 1983)
> (holding that there was "sufficient evidence" of intent to vest retirees with
> benefits "in the language of [the] agreement itself"); see also Int'l Union,
> United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR
> Liquidating, Inc., 190 F.3d 768, 773-74 (6th Cir. 1999); Smith v. ABS
> Indus., Inc., 890 F.2d 841, 846 (6th Cir. 1989). Consistent with these
> cases, they argue, both collective bargaining agreements contain the
> requisite vesting language: "The health care coverages an employee has
> at the time of retirement...shall be continued." GM JA 785.
>
> GM and Ford invoke the Sprague line of cases-to the effect that "an
> employer's commitment to vest" must be stated "in clear and express
> language" in the plan documents. Sprague v. Gen. Motors Corp., 133
> F.3d 388, 400 (6th Cir. 1998) (en banc) (internal quotation marks omitted).

> Consistent with these cases, they argue, a reservation of rights to modify
> retiree healthcare benefits is inconsistent with the claim that those benefits
> have irreversibly vested, *see Maurer v. Joy Techs., Inc.*, 212 F.3d 907,
> 919 (6th Cir. 2000); *BVR Liquidating*, 190 F.3d at 773, and note that the
> two companies' retiree healthcare plans contain such a reservation, *see*
> GM JA 550 ("Any rate of payment by the enrollee and any other terms and
> conditions of the Program may be changed at any time by the
> Corporation").

*Henry I*, 497 F.3d at 631 (some citations omitted).[4]

27.    In sum, the court's task "is not to decide whether one side is right or even
whether one side has the better of these arguments." *Id.* at 632. Otherwise, the court
would "be compelled to defeat the purpose of a settlement in order to approve a
settlement." *Id.* Rather, the court should determine whether the parties are using
settlement to resolve a legitimate legal and factual disagreement. That is indeed the
case now as in *Henry I*.

28.    Plaintiffs have concluded that risk of loss, even if unlikely, would produce
consequences so grave that they are worth avoiding through a settlement that
continues comprehensive health care benefits for the Class.[5] *See Enter. Energy Corp.*

---

[4] The Sixth Circuit's recent opinion in *Noe v. PolyOne Corp.*, does not resolve the
legal dispute. 520 F.3d 548, 2008 U.S. App. LEXIS 5763, at *5-6 (6th Cir. 2008).
Indeed, each party argues that *Noe* supports its position.

[5] As the Sixth Circuit concluded in *Henry I*:

What makes these settlements particularly sensible, moreover, is that,
even if this merits question favored one party over the other, the retirees
still would have had ample reason to control the resolution of this dispute
through negotiation today rather than litigation tomorrow. If we decided for
the sake of argument that the retirees were likely to lose the *Yard-
Man/Sprague* debate, little would stand in the way of the car companies'
reducing or even eliminating the retirees' healthcare benefits in the future.
If we decided for the sake of argument that the retirees were likely to win
the debate, any such victory would run the risk of being a Pyrrhic one
because the cost of insisting on irreversible healthcare benefits might well

44

v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("'[C]lass

counsel and the class representatives may compromise their demand for relief in order

to obtain substantial assured relief for the plaintiffs' class.'"); Priddy v. Edelman, 883

F.2d 438, 447 (6th Cir. 1989) ("The fact that the plaintiff might have received more if the

case had been fully litigated is no reason not to approve the settlement."); In re Rent-

Way Sec. Litig., 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("As is true in any case, the

---

> be – and indeed almost certainly would be – the continuing downward
> spiral of the companies' financial position. If GM's automotive divisions
> lost $11.4 billion in 2005 while spending $3.7 billion to pay retiree
> healthcare benefits (and Ford's division lost $3.9 billion while spending
> $2.4 billion on retirees), it takes little imagination to picture the future
> financial toll this burden would place on the two companies. While we
> need not embellish the point by raising the prospect of bankruptcy, it is
> well to remember that the Federal Government's Pension Benefit
> Guaranty Corporation, which provides pension guarantees for the
> employees and retirees of financially distressed companies, has no sister
> agency that provides the same guarantees for retiree healthcare benefits.
>
> In view of the risks the retirees faced from losing and winning the Yard-
> Man/Sprague debate, it is no wonder that Payne recommended settlement
> to the class representatives; no wonder that the named representatives
> consented to each settlement; no wonder that less than one half of one
> percent of class members objected to either settlement, ...; and no wonder
> that both district courts thought that the settlement was a fair way of
> handling the risks of litigation, see GM JA 140 ("[C]ost increases entailed
> by the settlement are modest...[and] [t]he potential loss of all benefits, due
> to either GM's financial collapse or GM's prevailing on the merits, would
> be far more harsh for Class Members."). And in view of the other factors
> we must consider-the federal policy favoring settlement of class actions, In
> re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004), the
> signal importance of GM and Ford to the economies of Michigan and the
> country, and the extensive information-sharing between the companies,
> the UAW, the class representatives and even McKnight and Bronson that
> preceded the settlements, it is no wonder that both district courts
> approved the final settlements as "fair, reasonable, and adequate" under
> Rule 23(e)(1)(C). We see it the same way.

Id. at 632-33 (some citations omitted).

45

proposed Settlement 'represents a compromise in which the highest hopes for recovery

are yielded in exchange for certainty and resolution.") (citation omitted); *Schaefer v.*

*Tannian*, 895 F. Supp. 175, 178 (E.D. Mich. 1995) ("The court need not disapprove the

settlement because a plaintiff might have received more if the case had been fully

litigated."); *Brown v. Steinberg*, Nos. 84-4654, 84-4665 and 84-8001, 1990 WL 145151

(S.D.N.Y. Sept. 22, 1990) (holding that class settlements may be approved though they

are only a fraction of the potential recovery, collecting cases).

29.    Courts routinely recognize that settlements do not equal the full value of

the loss claimed by the plaintiffs. "In fact there is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a

single percent of the potential recovery." *Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d

Cir. 1982) (approving class settlement where "recovery will be only a negligible

percentage of the losses suffered by the class"); *Lazy Oil Co. v. Witco Corp.*, 95 F.

Supp. 2d 290, 339 (W.D. Pa. 1997) (collecting cases where courts approved class

action settlements providing from 0.2 percent to 16 percent of potential recovery), *aff'd*,

166 F.3d 581 (3rd Cir. 1999).

30.    Moreover, "[a] just result is often no more than an arbitrary point between

competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*,

659 F.2d 1322, 1325 (5th Cir. 1981); *see also Lazy Oil Co.*, 95 F. Supp. 2d at 338.

Thus, in assessing the settlement, the court must determine "whether it falls within the

'range of reasonableness,' not whether it is the most favorable possible result in the

litigation." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga.

1993).

46

31.    Here, the court concludes that the proposed settlement falls well within

this range of reasonableness and that the benefits to the Class from the Settlement are

substantial.

32.    All of the experts who have provided evidence of their efforts to model the

sufficiency of the negotiated funding of the VEBA agree that it is not possible to predict

with certainty whether the funding for the new VEBA will be sufficient to accomplish the

UAW's objective in negotiating the terms for this settlement, namely, to provide benefits

at the current levels (except for an assumed increase in the cap on annual increases in

retiree cost from 3 to 4 percent in 2016) for the lifetimes of the entire class and the

covered group.  Different assumptions and different models produced different

projections, but all of the experts agreed that the principal actuarial assumptions  (not

including the value of the convertible note and derivative instrument, as described in

footnote 1 of the Findings of Fact) that were used in negotiating the VEBA funding were

within a range of reasonableness.  Only future experience will tell which of those

assumptions are realized.

33.    The court has given careful consideration, in accordance with the urging of

the United States Department of Labor (as the parties reported in their memoranda

supporting the motion for final approval), to the report of Adam Reese.  His report states

that under certain plausible conditions, the VEBA would be expected to continue

providing benefits at the current levels for as long as the Class Members are alive to

receive them.  Under other plausible conditions, his report projects that the VEBA

Committee would have to reduce benefits at some point in the future in order to

continue providing substantial benefits for as long as they will be needed.  If benefit

47

reductions of any magnitude prove to be necessary in the future, those reductions

would undoubtedly create some hardship for class members, but the court has

concluded that in the absence of the settlement, the class faces greater risks of future

benefit reductions or even termination of those benefits. Under these circumstances,

the court concludes that the settlement is fair, reasonable and adequate for the class.

### 2. The Risks, Expense, And Delay Of Further Litigation

34.     Complex litigation of the sort involved here is costly and time-consuming,

as demonstrated by previous cases in this circuit involving modifications to retiree

benefits. For example, GM salaried workers and retirees commenced litigation in 1989,

challenging the modification of their health care benefits. The case was not resolved

until nine years later, after a trial and hearing (and rehearing) in the Sixth Circuit. *See*

*Sprague*, 133 F.3d 388. Similarly, seven years of litigation were required for the parties

in *Yard-Man* to achieve finality. *Yard-Man, Inc.*, 716 F.2d at 1482. The obvious costs

and uncertainty of such lengthy and complex litigation weigh in favor of settlement. *See*

*In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) ("[T]he court has no

doubt that the trial of this class action would be a long, arduous process requiring great

expenditures of time and money on behalf of both the parties and the court. . . . The

prospect of such a massive undertaking clearly counsels in favor of settlement.")

(internal quotation marks and citations omitted); *Robinson v. Ford Motor Co.*, No. 04-

00844, 2005 WL 5253339 (S.D. Ohio June 15, 2005).

35.     Given GM's current financial struggle, the delay necessary to litigate the

dispute would benefit no one. For GM, success at litigation may come too late to effect

the turnaround essential to GM's continued viability. For the Class, the parties

48

recognize that absent this settlement, GM may be unable to continue to provide retiree health care benefits to the Class.

36.    In short, success at litigation (for either side) may prove illusory, a prospect that makes settlement a reasonable course of action. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *13 (E.D. Mich. Dec. 20, 1996) ("[A] victory by Plaintiffs at trial, given Defendants' limited funds, would be pyrrhic."); *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in the hand instead of a prospective flock in the bush.'").

### 3. The Judgment Of Experienced Counsel

37.    Class Counsel here fully support the proposed settlement. The endorsement of the parties' counsel is entitled to significant weight and supports the fairness of the class settlement. It is "well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs." *Mich. Hosp. Ass'n v. Babcock*, No. 89-00070, 1991 U.S. Dist. LEXIS 2058, at *6 (W.D. Mich. Feb. 11, 1991); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (11th Cir. 1977) ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties"); *Berry*, 184 F.R.D. at 104 ("[T]he court generally will give deference to plaintiffs' counsel's determination to settle a case").

38.    Where, as here, counsel are reputable practitioners and experienced in complex class action litigation, their collective judgment in favor of the settlement is

49

entitled to considerable weight. *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 ("[T]he

Court must rely upon the judgment of experienced counsel and, absent fraud, 'should

be hesitant to substitute its own judgment for that of counsel.'").

### 4. The Amount of Discovery Completed and the Nature
### of the Evidence Uncovered

39.    In considering whether there has been sufficient discovery to permit the

plaintiffs to make an informed evaluation of the merits of a possible settlement, the court

should take account not only of court-refereed discovery but also informal discovery in

which parties engaged both before and after litigation commenced. *Levell v. Monsanto,*

191 F.R.D. 543, 557 (S.D. Ohio 2000) (although little formal discovery was conducted,

class counsel retained experts and conducted informal discovery before negotiating the

settlement agreement).

40.    Thus, the absence of formal discovery is not unusual or problematic, so

long as the parties and the court have adequate information in order to evaluate the

relative positions of the parties. *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir.

2004) ("'Formal discovery [is not] a necessary ticket to the bargaining table.'"); *Cotton,*

559 F.2d at 1332 (upholding settlement despite fact that little formal discovery had been

conducted and noting that, "[b]eing an extra judicial process, informality in the discovery

of information is desired"); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)

("[D]ocuments filed by plaintiffs and evidence obtained through informal discovery

yielded sufficient undisputed facts" to evaluate the settlement); *Robinson*, 2005 WL

5253339 (approving settlement without formal discovery).

50

41.    The court need not possess sufficient "evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." Newberg § 11:45; *In re Rio Hair Naturalizer*, 1996 WL 780512, at *13. Instead, this court need only have "'sufficient facts before him to intelligently approve or disapprove the settlement.'" *Epstein v. Wittig*, No. 03-4081, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005); *Gen. Tire & Rubber*, 726 F.2d at 1084 n.6. Here, the court has substantial familiarity not only with the claims of the parties and the facts and arguments underlying their respective positions, but also with the nature and conduct of the settlement negotiations and the parties' informal but comprehensive exchange of information.

42.    The evidence demonstrates that there was full disclosure in this case by GM to the Class and UAW of GM's business and financial condition, GM's health care liability and the relevant CBAs and health care plan documents. Both UAW and the Class selected experts and undertook independent analyses of GM's financial condition and legal position. There was significant information available to the parties to negotiate their compromise, and there is more than an adequate basis and evidentiary record on which the court can assess the parties' agreement.

### 5. The Settlement is Fair to the Unnamed Class Members

43.    Courts may scrutinize settlements to determine whether absent class members have lost out in favor of attorneys and named class members. In this case, the Class is cohesive and the 2008 Settlement Agreement affects all similarly-situated Class Members in the same manner. No preference is granted to the Class Representatives under the settlement and, because all Class Members have a unitary interest in seeking the best possible benefits for retirees, there is no risk of an undue

51

burden on absent Class Members. *Heit v. Van Ochten*, 126 F. Supp. 2d 487, 490-91

(W.D. Mich. 2001); 5-23 Moore's Federal Practice § 23.164.

### 6. The Number of Objections Raised by Class Members Supports Approval of the Settlement

44.    "A court should not withhold approval of a settlement merely because

some class members object." *Mich. Hosp. Ass'n*, 1991 U.S. Dist. LEXIS 2058, at *10;

*see also Robinson*, 2005 WL 5253339, at *16; Fed. Prac. & Proc. § 1797. 1 ("[T]he fact

that there is opposition does not necessitate disapproval of the settlement.").

45.    In this case, GM provided notice to the Class by First Class Mail and by

publication. The Notice was easily understood, succinctly and accurately summarized

the terms of the Settlement Agreement, and informed Class Members of their rights –

including their right to object to the Henry II 2008 Settlement Agreement and (for those

Class Members who are also members of the *Henry I* class) to the "Joint Motion for

Relief from Judgment" in the *Henry I* case. This notice was the best practicable under

the circumstances and fully satisfied the requirements of Federal Rule of Civil

Procedure 23 and the requirements of due process. After receiving this notice, only

forty-three out of approximately 521,979 Class Members (0.008 percent) have

submitted an objection to the 2008 Settlement Agreement. This level of opposition is

considerably lower – about 32 times so – than even the level of opposition in *Henry I*,

where less than three tenths of one percent (0.27 percent) of the class objected.

46.    The court notes the proponents' argument that an overwhelming degree of

silence on the part of other members of the class could indicate support for the 2008

Settlement, but finds that an inference to that effect is weak. Silence could also

variously indicate apathy, confusion, disorganization, literacy problems, timidity or a

number of other things. The silence experienced here indicates to the court not the

presence of approval, but simply the absence of concerted opposition. Such a

substantial absence of opposition is one additional indicator favoring approval of the

2008 Settlement. *See Robinson*, 2005 WL 5253339, at *17 ("[A] relatively small number

of class members who object is an indication of a settlement's fairness") (citing

Newberg § 11.48). The specific content of the filed objections is discussed below.

### E. The Settlement Was The Product Of Arm's-Length Negotiations

47.    Courts presume the absence of fraud or collusion unless there is evidence

to the contrary. *In re Rio Hair Naturalizer*, 1996 WL 780512, at *14 ("Courts respect the

integrity of and presume good faith in the absence of fraud or collusion in settlement

negotiations, unless someone offers evidence to the contrary."); *Granada Invs., Inc.*,

962 F.2d at 1205 ("Absent evidence of fraud or collusion, such settlements are not to be

trifled with."); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D.

Cal. 2004); Newberg (4th) § 11.51. Here, there have not even been any allegations of

fraud or collusion.

48.    To the contrary, there is an ongoing adversarial relationship between the

Class and UAW, on the one hand, and GM, on the other hand, with respect to the

question of GM's asserted right to unilaterally change, modify or terminate health care

benefits, and the parties are in fundamental and irreconcilable disagreement on this

issue. Further, if the settlement agreement itself is fair, reasonable and adequate, then

the court may assume that the negotiations were proper and free of collusion. *Bowling

v. Pfizer, Inc.*, 143 F.R.D. 141, 152 (S.D. Ohio 1992) ("In essence, under this test, if the

53

terms of the proposed settlement are fair, then the court may assume the negotiations were proper.").

### F. The Public Interest

49.    The evidence submitted by GM amply catalogues the impact of GM's continued viability on the economy of southeast Michigan, the State as a whole and the nation. The delay and risks of litigation have an impact not only on GM, the UAW and the Class, but also on the families, businesses, and communities that depend on GM's continued competitiveness and viability. The court concludes that those interests are advanced by the 2008 Settlement Agreement. The 2008 Settlement Agreement serves the public interest also by conserving the resources of the parties and the court, and by promoting the "strong public interest in encouraging settlement of complex litigation and class action suits." *In re Cardizem*, 218 F.R.D. at 530. Furthermore, absent this settlement, in the event that GM goes bankrupt, it is possible that the over 500,000 class members would be left without any company-provided retiree medical benefits.

### G. Objections To The Settlement

50.    As noted, out of the approximately 522,000 Class Members who were sent notice, forty-three individuals – or .008 percent – submitted Objections. (Objections, Dkt. # 45.) Only about one out of every 12,500 Class Members objected.

51.    Of the forty-three Objections submitted, seventeen fail to state any specific grounds or simply assert that the settlement was "unfair" or too complicated. (*Id.* at Objections ## 1-3, 6-9, 16-19, 25, 30-31, 37 and 40-41.) An additional five Objections do not address the settlement apart from expressing dissatisfaction about the existing

level of health care benefits retirees are already receiving. (*Id.* at Objections ## 4-5 and 22-24.)

52.    Other Objections maintain that retiree health benefits had been provided in written documents that could not be altered and/or that these benefits had been promised for life. (*Id.* at Objections ## 10, 12-15, 32, 36 and 38.)

53.    Six Objections claim that the Class Representatives and/or Class Counsel were ineffective and/or did not represent their interests. (*Id.* at Objections ## 11, 19, 27-29 and 42.)

54.    Other Objections argue that this case should not be certified as a class action and/or that Class Members should be permitted to opt out, (*id.* at Objections ## 11, 19 and 27-29), or that they should have been permitted to vote on the agreement, (*id.* at Objections ## 27 and 28). One objector asserts that the UAW did not have the right to negotiate on behalf of retired employees. (*Id.* at Objection # 29.)

55.    Other Objections allege faults in the design, funding and management of the VEBA. (*Id.* at Objections ## 11-12, 20-21, 26 and 33-35.)

56.    One Objector states the settlement should not apply to him due to his workers' compensation settlement, which he alleges provides for a certain level of retiree health benefits. (*Id.* at Objection # 39.)

57.    Objector Leroy McKnight filed an objection incorporating the objections he filed in *Henry I.* (*Id.* at Objection # 29.)

58.    One Objector states that Class Counsel should not receive attorneys' fees for their work on this case. (*Id.*)

55

59.    None of these objections, singly or together, provides a basis for disapproving the parties' settlement. As discussed below and as shown throughout the submissions of the Class, the UAW and GM, the settlement is fair, reasonable and adequate. Accordingly, final approval is warranted.

### 1. Objections Stating No Specific Grounds or Asserting Only the General "Unfairness" of the Settlement

60.    With respect to objections stating no specific grounds or asserting only the general "unfairness" of the settlement, because "there is no way for the court to determine the basis for these objections or whether any such objections have merit, they are of little use." *In re Rio Hair Naturalizer*, 1996 WL 780512, at *14; *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, No. 71-1335, 1973 WL 778, at *6 (S.D.N.Y. Feb. 20, 1973) (rejecting objections based on "conclusory allegations"); Fed. Prac. & Proc. § 1797.1 ("Only clearly presented objections...will be considered.").

61.    In sum, the objections that do not specify any grounds beyond general unfairness provide no basis for rejecting the settlement.

### 2. Benefits are Vested and / or that GM Told Employees Benefits Were for Life

62.    Some Class Members assert that benefits are vested and can never change. Class Counsel also concluded that there are strong arguments to be made that the retiree medical benefits at issue are vested. However, Class Counsel also recognize that there are countervailing arguments, and should this case proceed to litigation, there is no doubt that GM would argue vigorously that benefits are not vested. If the case were to proceed and the Class were to lose, GM would be free to sharply curtail or even eliminate benefits altogether after the *Henry I* settlement expired.

56

63.    Furthermore, as this court held in *Henry I*, a disagreement over the merits of the parties' dispute is not a basis for disapproving the settlement. *Henry I*, 2006 WL 891151, at *22-23 ("the law provides for settlement of even so-called 'meritorious' claims, reflecting the fact that settlements are generally based on several different considerations"); *see Laskey v. UAW*, 638 F.2d 954, 956 (6th Cir. 1981) ("[T]he objections made indicated these employees did not want to compromise at all but wanted full benefits, rather than making any complaint directed to the adequacy of their legal representation."); *In re Wash. Pub. Power Supply*, 720 F. Supp. at 1394 (finding that objections based on "fallacious" assumption that "the case assured certain victory for Plaintiffs").

64.    Some objectors have asserted that they were told by GM or UAW representatives that their benefits were for life. In analyzing the Class's legal claims, Class Counsel assumed that such representations were made, i.e., that extrinsic evidence would support the claim of vesting (Payne Final Approval Decl. at ¶ 5), and still concluded that the settlement was fair and reasonable.

65.    Moreover, while extrinsic evidence is relevant if the controlling documents are ambiguous, it is not dispositive. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 654 (6th Cir. 1996). In other words, the fact that retirees were told that benefits were for life does not establish that these benefits are vested. *McCoy v. Meridian Automotive Sys., Inc.*, 390 F.3d 417, 422 (6th Cir. 2004) ("When ambiguities exist..., the court may examine extrinsic evidence of the parties' intent."). Accordingly, the existence of extrinsic evidence supporting the Class's case on the merits does not render settlement of that case unfair or unreasonable.

57

### 3. Class Representatives and / or Class Counsel are Inadequate

66.     None of the objections includes any specific discussion of, or complaints about, the performance of Class Counsel or the Class Representatives, other than a general dislike for the terms of the settlement.  Moreover, Mr. Leroy McKnight simply attempts to incorporate his entire objection from *Henry I* without any explanation of how or in what particulars those objections, already once rejected, are relevant to this case or warrant a different conclusion.  As noted above, the court has concluded that representation was adequate, and these objections do not offer any grounds for rejecting the settlement.[6]

---

[6] Indeed, the Sixth Circuit singled out Attorney Payne as being particularly well qualified to represent the Class:

> Payne has practiced labor law for almost 24 years, has litigated almost 50 retiree healthcare class actions at the trial and appellate levels, has authored numerous articles on the law of retirement benefits, has contributed to BNA's treatise on employee benefits and heads the American Bar Association's Subcommittee for Benefit Claims and Individual Rights.  In view of Payne's background, both classes would have been hard pressed to find someone with greater "experience in handling class actions...and claims of the type asserted in the action" or an attorney with more "knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(C)(i).  Not only was Payne qualified, he also was prepared, if need be, to prosecute these cases:  He had six attorneys plus substantial support staff ready to assist him; he retrieved and reviewed "boxes of materials" from GM and Ford, including all of the financial information the two companies shared with the UAW, GM JA 256; Ford JA 274; he hired an independent financial consultant to analyze the fiscal health of the companies; and by all appearances he thoroughly investigated the potential claims of both classes under ERISA and the LMRA.  Payne, in brief, was willing to, and indeed did, commit substantial "resources...to representing the class[es]." Fed. R. Civ. P. 23(g)(1)(C)(i).

*Henry I*, 497 F.3d at 62-27.

67.    Finally, this court found that Mr. McKnight's objections in *Henry I* did not provide a ground for disapproving that settlement, and the Court of Appeals affirmed that ruling. There is no reason to reach a different conclusion now on the identical objections reasserted by Mr. McKnight in this case.

### 4. Objection that Retirees Should be Permitted to Opt-Out of the Class Action

68.    In *Henry I*, the court previously considered and rejected objections claiming that retirees should be permitted to opt-out of the class action:

> the Class here has a "common claim" – i.e., that their benefits are vested – which "is susceptible to a single proof and subject to a single injunctive remedy," and no possible claim for money damages. *Senter*, 532 F.2d at 525; *Coleman v. GMAC*, 220 F.R.D. 64 (M.D. Tenn. 2004); *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 391 (S.D. Ohio 2001) (where "the putative class seeks a judgment 'settling the legality of the behavior with respect to the class as a whole,'" Rule 23(b)(2) certification is proper) (quoting Fed.R.Civ.P. 23 advisory committee's note).

> Permitting class members to opt out from this homogenous and unified class would necessarily mean that different retirees could have different rights under the same GM health care plan, making effective declaratory or injunctive relief – as well as administration of benefits under the Settlement – impossible. *See Van Gemert v. Boeing Co.*, 590 F.2d 433, 439 (2d Cir. 1978); *Day v. NLO*, 851 F. Supp. 869, 885 (S.D. Ohio 1994) ("Opting out is generally not reasonable because plaintiff-by-plaintiff injunctive relief is not practical."). It would also "'permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication,'" undermining the efficacy of any settlement. *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 393 (3d Cir. 1981) (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252-53 (3d Cir. 1975)); *Ass'n for Disabled Ams., Inc.*, 211 F.R.D. at 473 (same).

> In the absence of individual claims for monetary relief, allowing opt outs is not only unnecessary, but would destroy the very basis of the Class' claims and requested relief, as well as the purpose of any class treatment. *Stewart v. Rubin*, 948 F. Supp. 1077, 1090 (D.D.C. 1996) (Rule 23(b)(2) is "designed specifically to avoid the risks of inconsistency, prejudice, or inequity that would result to persons similarly situated in the absence of a unitary adjudication of their common claims."); *Heit v. Van Ochten*, 2001

U.S. Dist. LEXIS 532, at *4 (W.D. Mich. 2001); *see Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1240 (9th Cir. 1998) (holding that class counsel was not inadequate for failing to insist on opt-out rights where claims were predominantly for monetary relief).

*Henry I*, 2006 WL 891151, at *31-32.

## 5. The Parties Should not be Relieved of the Obligations of the *Henry I* Judgment

69.    The *Henry I* judgment specified the particular benefit program and premiums, co-pays, deductibles and out-of-pocket maximums that are to remain in place through September 14, 2011, but it did not finally resolve disputed issues concerning continuation and design of the Plan after that date. Instead, the *Henry I* judgment provided that either GM or the UAW *could* terminate the judgment after September 14, 2011. As discussed above, GM has announced that it will exercise its right to do so.

70.    Under the 2008 Settlement Agreement, the plan design and other benefits of the *Henry I* judgment will remain unchanged through at least December 31, 2011. Thus, the relief that was secured in *Henry I* has been made a part of the relief to the Class in this case. In these circumstances, the court has concluded that it is in the best interest of the Class to approve the 2008 Settlement Agreement, which both preserves the relief that the Class obtained through the settlement in *Henry I* and provides additional relief into the indefinite future for the purpose of continuing to provide their retiree health benefits for life, if possible, under the new VEBA.

## 6. Retirees Should Have Been Allowed to Vote on the Settlement

71.    Federal Rule of Civil Procedure 23 does not require that proposed class action settlements be submitted to class members for a vote or ratification or that Class

Counsel seek class approval. *Henry I*, 2006 WL 891151, at *23 (discussing the claimed right to vote on the settlement and finding that there was no such right under law or the UAW Constitution); *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004, 1023 (E.D. Wis. 1984) (rejecting objections based on lack of class-wide ratification vote and noting that there will always be, dissent within a class); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2nd Cir. 1987) (collecting cases wherein courts approved settlements notwithstanding objections ranging from 20 percent to 56 percent of the Class).

72.    Moreover, Class Members who disapprove of the settlement have the opportunity to submit objections and to also participate in the fairness hearing.

### 7. Objection that the UAW did not Have the Right to Negotiate for the Retirees

73.    One objector, citing *Allied Chem. Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 174 (1971), asserted that the UAW did not have the authority to negotiate on behalf of its retirees. The court reviewed and rejected this Objection in *Henry I*:

> In *Pittsburgh Plate Glass*, the Supreme Court held only that retirees were not "employees" within the meaning of the National Labor Relations Act, and that an employer therefore had no legal duty to bargain with the union over the benefits of workers who were already retired. *Pittsburgh Plate Glass* does not hold that a union cannot adequately represent a class of retirees in a class action. Moreover, even as to collective bargaining, the Court emphasized that, if the employer agreed, a union could bargain on behalf of its retirees. *Id.* at 181 n. 20.
>
> The Sixth Circuit and other courts have since held that a union may negotiate for, and assert rights on behalf of, retirees. *E.g., Yard-Man, Inc.*, 716 F.2d at 1486; *Communications Workers v. Mich. Bell Tel. Co.*, 820 F.2d 189, 192 (6th Cir. 1987) ("[T]he union had standing to assert the retirees' rights under the [CBA] to which it was a party."); *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 540 (7th Cir. 1997); *United Steelworkers v. Canron, Inc.*, 580 F.2d 77, 80-81 (3d Cir. 1978); *UAW v. Acme Precision Prods., Inc.*, 515 F. Supp. 537, 540 (E.D. Mich. 1981).

61

UAW has historically taken the position that it can represent retirees and
has, in fact, done so.

*Henry I*, 2006 WL 891151, at *24; *aff'd* 497 F.3d at 627.

74.    In any event, the Class has been represented throughout this matter by
independent Class Counsel. *Id.* at *25-27. That representation has included
negotiating final settlement documents, analyzing and evaluating the merits and GM's
financial health, and assuring the interests of the Class in maintaining quality retiree
healthcare have been protected.

### 8. The Design, Funding and Management of the VEBA

75.    Objectors also allege faults in the design, funding and management of the
VEBA, including: (1) that the VEBA should apply only to current employees  (Objections
## 20-21, 26 and 33-35); (2) GM should control the VEBA and put more money in later
if funds run out (Objections ## 20-21, 26 and 33-35); (3) the identity of all members of
the VEBA Committee should have been provided (Objection # 11); (4) the VEBA
Committee should not be able to change the scope of benefits in the future (Objection #
11); (5) the Agreement should have articulated who will control the VEBA's assets
(Objection # 11); and (6) the funding of the VEBA should not depend on a promissory
note tied to GM stock with an unknown value (Objection # 12).[7] As in *Henry I*, these

_____

[7]Objection #12 by Alexander Ellis also states that "[t]he funding of the VEBA is greatly
based on a promissory note of GM stock with an unknown value. I question the
obligation and rule of law under both ERISA and the Securities and Exchange
Commission to fully inform and apprise all members on pertinent financial data on
Company's Finances and stock value, before voting to accept an agreement funded by
GM Stock as the main financial instrument of funding. Such mandated information
under the law was not given to members who were asked to ratify the agreement." This
objection misapprehends the transaction. First, the Convertible Note does not itself
constitute "GM Stock." Rather, it is an instrument of indebtedness, redeemable at
maturity at its face value ($4.3725 billion) plus interest. Under certain circumstances,

objectors "have provided no analysis or evidence to support their suggested

concern[s]." 2006 WL 891151, at *35. Moreover, like any investment, the performance

of the VEBA is subject to numerous factors that cannot be predicted with certainty.

Although there is a risk that the assets of the VEBA may not be sufficient to fund

benefits at the existing level for the lives of all participants, the parties – in fashioning a

compromise – are entitled to allocate the risk of investment performance among

themselves. *Id.* Moreover, the court has found that there is a substantial risk that the

class would lose all of their medical benefits if the settlement were not approved. The

court has also found that Class Counsel reasonably concluded that the class is better

off with the risk inherent in the settlement than with the current risk of losing their

benefits entirely. Because that conclusion was reasonable, the court concludes that the

objection that the VEBA might have insufficient assets to maintain existing levels of

benefits does not require disapproval of the settlement.

76.    Objections asserting that the settlement should apply only to active

employees misconstrue the nature of this litigation and the purpose of the settlement,

which is to resolve once and for all the parties' dispute regarding GM's role in providing

health care benefits *to retirees.* Whether and under what circumstances GM and the

UAW should structure an alternative health care mechanism for active employees is

beyond the scope of this proceeding. In addition, GM's active employees have

contributed and will contribute substantially to the funding for the VEBA.

---

the note is optionally convertible to GM stock. Second, contrary to Mr. Ellis' statement,
the stock component of the note is only small fraction of the total VEBA funding under
the settlement. And finally, even assuming some disclosure obligation had been
triggered, there is no indication whatsoever that GM's public filings or the detailed
financial information provided to the UAW and the Class were somehow lacking.

77.    As for the objections that the VEBA committee members have not been
identified, these also are without merit.  The six Independent Members were in fact
identified and their biographies were included, along with detailed procedures for their
replacement over time.  (Notice to Class at 125-26, Fraga Decl. Ex. A, Dkt. # 51-7.)
Because the other five are to be appointed and may be removed at any time by the
UAW, and because they constitute a minority, the court has concluded that it was not
necessary for them to be named in advance and communicated to the Class in the
Notice.

78.    The objection that the VEBA Committee should not be able to change the
scope of benefits in the future also is without merit. The Committee is charged with
providing quality health care for all members of the Class, with the objective of
maintaining substantial benefits throughout the lifetimes of all members of the Class and
the Covered Group.  (Trust Agreement at §§ 10.2(a) and (b), Dkt. # 43-6.)  The
Committee has been vested with discretion to make changes in order to do so.  The
Committee has a fiduciary obligation under ERISA and the controlling documents to act
in the best interests of the Class.  (*See id.* at § 10.11; 29 U.S.C. § 1104(a)(1).)  Any
provision restricting the Committee's ability to fulfill these obligations would detract from,
not enhance, the fairness of the settlement.

### 9. Worker's Compensation Settlement Guaranteed a Certain Scope and Cost of Benefits

79.    One objector (Eugene Szopa, Jr.) objects to the Settlement on the ground
that he has an "agreement" with GM arising from a workers compensation claim he filed
several years ago.  (Objection # 39.)  GM has provided evidence that there is no

64

agreement with Mr. Szopa. Rather, Mr. Szopa has been receiving workers compensation benefits from GM, including certain medical coverage, since 1991. (Decl. of Kelley Shultz at ¶ 3, Dkt. # 51-11.) Mr. Szopa's entitlement to such benefits is governed by Michigan's Worker's Disability Compensation Act, MCL § 418.101, *et seq*. The Worker's Disability Act provides coverage only for injuries and illnesses arising out of work related activities; it does not provide coverage for medical expenses related to other causes. Because any medical coverage provided by a State's workers compensation statute is unaffected by this settlement, this objection is not a basis upon which to reject the settlement agreement.

### 10. Objector McKnight's Incorporation of His *Henry I* Objections

80.    Leroy McKnight has filed an objection incorporating his objections to the *Henry I* lawsuit — although he did not articulate the relevance or connection of those objections to the 2008 Settlement Agreement. Each of Mr. McKnight's objections were thoroughly considered and rejected by this court in a ruling that was subsequently affirmed by the Sixth Circuit. To the extent those objections may have relevance here, Mr. McKnight has provided no basis for reaching a different conclusion in this case and the court again rejects those objections.

### 11. Payment Of Fees To Class Counsel

81.    One objector states that Class Counsel should not be paid for their work in this case but fails to provide any explanation for this objection.

82.    GM has agreed to pay Class Counsel's fees based on hours of work performed at reasonable market rates. This payment will neither affect nor reduce the relief provided to the Class.

65

83.      ERISA authorizes payment of attorneys' fees by a defendant to class

counsel.  *See* 29 U.S.C. § 1132(g)(1).  The court approved a payment of fees to Class

Counsel in *Henry I* and Class Representatives have previously articulated why Class

Counsel are entitled to attorneys' fees (Mot. for Attorneys Fees and Expenses, Dkt. #

42).

### III. CONCLUSION

For the reasons stated above, the court finds that the parties' 2008 Settlement

Agreement is reasonable, fair and adequate, and the court APPROVES the parties' 2008

Settlement Agreement in all respects and as to all parties.


s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 31, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 31, 2008, by electronic and/or ordinary mail.


s/Lisa G. Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522

# Exhibit  O

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA and EARL L. HENRY, BONNIE J.
LAURIA, RAYMOND B. BAILEY, THEODORE
J. GENCO, MARVIN C. MARLOW, CHARLES
R. MILLER, LAVERNE M. SORIANO and JOHN
HUBER, on behalf of themselves and all other
persons similarly situated,

        Plaintiffs,

v.                              Case No. 07-CV-14074-DT

GENERAL MOTORS CORPORATION,

        Defendant.

_____/

### ORDER PRECLUDING LAFONZA WASHINGTON FROM FILING PAPERS

On or about August 29, 2008, and at other times, Lafonza Washington has presented papers for filing on the docket of this closed case, purporting that he is either an objector or in some other way a party in interest. He is neither.

Washington has developed a history of habitually refusing to obey the directives of the judges of this court, *e.g.,* to meaningfully and truthfully address questions and to desist from filing papers. *See Washington v. Citizens Bank, et. al.,* 01-74022 (Woods, D.J.) In that case the court noted that "Plaintiff is an experienced *pro se* litigant. Dating back to 1982, he has filed fifteen lawsuits in this district. Many of them have been summarily dismissed . . . ." *Id.,* May 10, 2002 Order; *see also Washington v. General Motors Corp., et al.,* 01-70659 (Cohn, D.J.). The cases "show a striking pattern of

motion filings, e.g., motions for mandamus relief, protective orders, preliminary

injunctions, temporary restraining orders, clerk's entry of default, default judgment,

joinder of claims/remedies, attorney's fees, preferential setting, grand jury investigation,

recusal or disqualification of judges, etc." *Citizens Bank*, 01-74022, May 10, 2002

Order.

The pattern continues in this case. The papers submitted for filing present

Washington as "Petitioner" and a host of other parties including the Clerk of this court as

"Respondents." The papers purport to be petitions and other requests related to

mandamus relief all connected to the substance of this closed case 07-14074. Several

previous papers presented for filing have been in the nature of claims for relief by an

objector to the class settlement, and all have been forwarded to class counsel for

disposition.

The court notes that Washington has been "precluded from filing any future

actions in this Court without first obtaining leave," and that the Clerk has been "directed

to not accept any filings without leave of Court." *Washington v. General Motors Corp.,

et al.,* 01-70659, February 28, 2002 Order. There has been no showing that the

preclusion has been lifted, and the court will not construe these papers as any

independent litigation.

As to Washington's repetitious presentation of papers for filing in the present

case, the court adopts the findings of Judge Cohn in *General Motors:*

> The Court is entitled to protect its jurisdiction from vexatious litigants abusing the
> judicial process. See *In re Martin-Triaona*, 737 F.2d 1254, 1261 (2d Cir. 1984).
> The Court of Appeals for the Sixth Circuit has specifically approved a district
> court's power to limit the filing of lawsuits by vexatious litigants. *Filipas v.
> Lemons,* 835 F.2d 1145, 1146 (6th. Cir. 1987). Plaintiff has shown a history of

filing unsubstantiated and vexatious lawsuits.' Because the Court's time and
resources are scarce, it is necessary to prevent future similar abuses by plaintiff.

*Id.* Accordingly,

IT IS ORDERED that the Clerk of Court take notice that Lafonza Washington is

PRECLUDED from filing any papers in the captioned case.  Should Washington defy

this order, the Clerk of Court is directed to refuse to file his submissions, and to discard

them.

IT IS FURTHER ORDERED that the United States Marshal take notice that any

papers tendered to the Marshal for service by Lafonza Washington are spurious and

may be discarded if they are not accompanied by an order authorizing service signed by

a United States District Judge.


s/ Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated: September 5, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 5, 2008, by electronic and/or ordinary mail.


s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522


S:\Cleland\JUDGE'S DESK\C1 ORDERS\07-14074.UAW.LafonzaWashington.Order.Precluding.Filing.wpd

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                        :

In re                     :          Chapter 11 Case No.
                        :

MOTORS LIQUIDATION COMPANY, *et al.*,  :       09-50026 (REG)
     f/k/a General Motors Corp., *et al.*  :

              Debtors.    :        (Jointly Administered)
                        :
---------------------------------------------------------------x

## ORDER GRANTING DEBTORS' OBJECTION TO PROOFS OF CLAIM NOS. 02109 & 14938 FILED BY LAFONZA EARL WASHINGTON

Upon the objection dated January 29, 2010 (the "**Objection**") to Proofs of

Claim Nos. 02109 and 14938 filed by Lafonza Earl Washington (the "**Claims**") of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as

debtors in possession (collectively, the "**Debtors**"), pursuant to section 502(b) of title 11,

United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's Order Pursuant to

Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing

the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code

Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and

Manner of Notice Thereof [Docket No. 4079], seeking entry of an order disallowing and

expunging claim numbers 02109 and 14938 on the grounds that such claims are

duplicative and fail to allege facts sufficient to support a claim, all as more fully

described in the Objection; and due and proper notice of the Objection having been

provided, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Objection is in the best interests

of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Objection establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted as

provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the

Claims are disallowed and expunged in their entirety; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to this Order.

Dated: New York, New York
_____, 2010

_____
United States Bankruptcy Judge