Paul A. Rachmuth (pr1566)
**GERSTEN SAVAGE LLP**
600 Lexington Avenue
New York , New York 10022
Telephone: (212) 752-9700
Facsimile: (212) 980-5192
prachmuth@gerstensavage.com

- and -

Eric H. Gibbs
A. J. De Bartolomeo
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

- and –

P. John Brady
**POLSINELLI SHUGHART P.C.**
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105
Telephone:  (816) 421-3355
Facsimile:  (816) 374-0509

*Class Counsel in General Motors Dex-Cool/Gasket Cases
and General Motors Cases, Anderson v. General Motors*

HEARING DATE : February 10, 2010
9:45 am (Eastern Time)

OBJECTION DEADLINE: February 3, 2010
4:00 pm (Eastern Time)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF THE DEX-COOL AND ANDERSON CLASS CLAIMANTS
TO MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. § 105(A) AND GENERAL ORDER M-390 AUTHORIZING
IMPLEMENTATION OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES,
<u>INCLUDING MANDATORY MEDIATION (DOCKET # 4780)</u>**

COMES NOW Class Counsel for and on behalf of the class members of the GM Class Actions, defined below (the "Class Members"), and in response to the Motion of Debtors For Entry of Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (Docket # 4780) ("Motion") state as follows for their Limited Objection to such Motion:

**Introduction And History of the Dex-Cool and Anderson Class Actions**

1. The Motion seeks, *inter alia*, to establish mandatory mediation and other ADR procedures for claims based on liquidated judgments and settlements reached in three class action litigations involving the Class Members. The first is General Motors Dex-Cool/Gasket Cases, Superior Court of the State of California, for the County of Alameda, Judicial Council Coordination Proceeding No. 4495, Case No. HG03093843 (filed April 29, 2003) and the second is Gutzler v. General Motors Corp. Case No. 03CV208786 (Mo. Cir. Ct., Jackson County) (jointly referred to herein as the "Dex-Cool Class Action"). The Dex-Cool Class Action was in the settlement payment phase as of the June 1, 2009 Commencement Date. The third action is General Motors Cases, Anderson v. General Motors, Superior Court of the State of California, County of Los Angeles, Central Civil West Courthouse, Judicial Proceeding No. 4396, Orange County Case No. 04CC00554 (filed May 18, 2004) (the "Anderson Class Action", and collectively with Dex-Cool Class Action, the "GM Class Actions."). The Anderson Class Action was in the claims administration phase (with General Motors acting as the claims administrator) as of the June 1, 2009 Commencement Date.

2. Class Counsel files this Limited Objection to the relief sought in the Debtors' Motion as the GM Class Actions were settled pre-petition, were granted final approval by their respective courts pre-petition, and each judgment had reached finality pre-petition, thus the settlement terms – including the claims administration processes – were agreed to by the pre-petition Debtors. As part of both settlements, either the Debtors or an independent third party settlement administrator, was to complete the claims administration process (e.g. evaluate and

review the claims submitted by class members, provide class members with notice and opportunity to cure deficient claims) and to submit valid claims to the Debtor for payment.

3.  In the Dex-Cool Class Action settlement, the claims administration process and settlement recovery distribution were substantially complete on the Commencement Date, with General Motors having funded over $6.1 million in settlement claims to class members for reimbursement of repair expenditures. For the Anderson Class Action settlement, the claims administration process was ongoing as of the Commencement Date. Thus, the Debtor has recognized the validity of the overall claims represented in the GM Class Action settlements and all that remains is for either a third party administrator or the Debtors to evaluate the remaining individual claims submitted.

4.  Class Counsel and the Class Claimants should not have to submit to this expensive ADR procedure contemplated in the Motion for claims that are agreed to, but just have to be reviewed and processed. As detailed herein, Class Counsel suggests that the funds that would be spent in this ADR process instead be put toward finishing what has already been substantially started: the review of the remaining individual claims submitted in GM Class Actions.

**The Dex-Cool Action**

5.  In April 2003, class action cases were filed against General Motors Inc. ("GM") in federal and state courts around the country alleging that Dex-Cool engine coolant failed to protect engines as promised and instead caused various problems, including failure of lower intake manifold gaskets in certain GM vehicles. Consumer classes were certified in a Missouri state court action entitled Gutzler v. General Motors, (the "Gutzler Class Action") and later in a California state court coordinated proceeding entitled General Motors Dex-Cool/Gasket Cases, (the "Sadowski Class Action"). The two actions are referred to jointly here as the "Dex-Cool Class Actions." In 2008, the litigation eventually settled with GM's agreement to pay class members cash reimbursements ranging from $50 to $800 for Dex-Cool related repairs. On September 5, 2008, the Gutzler court approved the parties' settlement agreement and entered a

final judgment incorporating its terms with respect to a Missouri-only class. The California court presiding over the Sadowski Class Action then approved the parties' settlement agreement and on October 23, 2008, the court entered a final judgment incorporating its terms with respect to the remaining 49-state class (collectively the "Dex-Cool Settlement Agreement"). In the Dex-Cool Class Actions, the parties retained the Garden City Group, Inc. ("GCG") as the claims administrator. GCG is also the claims administrator in the GM bankruptcy proceeding.

6.   Prior to the Commencement Date, as defined herein, in the Dex-Cool Class Actions, GCG had substantially completed the claims administration and GM had funded over $6.1 million in valid class claims. However, certain additional valid claims in the Dex-Cool Class Actions had not yet been resolved pursuant to the terms of the Dex-Cool Settlement Agreement (the "Unresolved Dex-Cool Claims"). The Unresolved Dex-Cool Claims were comprised of a group of class members, whose original claims were deficient but had since cured those deficiencies pursuant to the terms of the settlement agreements and judgments, and who had not yet been paid. Specifically, on May 8, 2009, the claims administrator submitted to GM a request for funding in the amount of $1,325,568.60 for payment of valid approved claims. GM did not fund that request at the time of the June 1, 2009 Commencement Date. Additionally, as of the June 1, 2009 Commencement Date, the claims administrator had not yet completed its review of all valid claims that cured their deficiency, particularly those that filed claims for multiple repairs arising from the Dex-Cool coolant. The administrator estimated that the value under the Dex-Cool settlement of the remaining valid claims is between $850,000 and $1.3 million. On November 25, 2009, Class Counsel submitted a class-wide Proof of Claims in this proceeding on behalf of the Unresolved Dex Cool Claims as described below.

**The Silverado Piston Slap Class Action**

7.   In May 2004, the Anderson Class Action litigation was filed in California state court and later coordinated in Los Angeles Superior Court. The Anderson Class Action alleged that GM violated California's "secret warranty" law by offering special benefits to some but not all California consumers whose Chevy Silverados suffered from an abnormal engine knock or

piston pin noise condition, often referred to as "piston slap." A state-wide class of Chevy Silverado owners was certified in November 2006, and later settled with GM for free repairs and cash reimbursements to those who had piston-slap repair expenses or purchased a GM Protection Plan to address their piston slap. The Anderson Class Action court approved the settlement and incorporated its terms into a final judgment on March 5, 2009. ("Anderson Settlement Agreement") Under the settlement and judgment, class members submitted claims directly to GM. Prior to the Commencement Date, the administration of the Anderson Settlement Agreement had been initiated. However, certain claims in connection with the Anderson Class Action had not yet been fully resolved pursuant to the terms of the Anderson Settlement Agreement (the "Unresolved Anderson Claims"). In light of the GM bankruptcy action, on November 25, 2009, Class Counsel filed a class-wide Proof of Claim on behalf of the Unresolved Anderson Claims in this proceeding, as described below.

8. Collectively, the Unresolved Dex-Cool Claims and the Unresolved Anderson Claims are referred to herein as the "Unresolved Class Claims").

**The Class Action Proofs of Claim**

9. On June 1, 2009 (the "Commencement Date"), the Debtor commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On or about June 3, 2009, an Official Committee of Unsecured Creditors was appointed in the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

10. On December 1, 2009, the Court approved a stipulation (Docket # 4575) between the Debtor, Motors Liquidation Company (f/k/a General Motors Corporation) ("MLC") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" or "MLC") and the holders of Unresolved Dex-Cool Claims, and the holders of Unresolved Anderson Claims, whereby Class Counsel could file class proofs

of claim on behalf of the Unresolved <u>Dex-Cool</u> and <u>Anderson</u> Class Claimants pursuant to Rule 3001 of the Rules of Bankruptcy Procedure and the Code.

11. On November 25, 2009, Class Counsel filed a Proof of Claim on behalf of the Unresolved Dex-Cool Claims in the amount of $3,000,000.00 as Claim Number 51095 (the "<u>Dex-Cool Claim</u>") and a Proof of Claim on behalf of the Unresolved Anderson Claims in the amount of $10,000,000.00 as Claim Number 51093 (the "<u>Anderson Proof of Claim</u>", and collectively with the <u>Dex-Cool</u> Claim, the "<u>Class Proofs of Claim</u>").

**Relief Requested By Limited Objection**

12. Class Counsel requests that: (1) the Court deny Debtors' Motion as it relates to the Class Proofs of Claim; (2) the Debtor and Class Counsel agree to use the funds that would be spent in litigation or mediation of those claims towards funding GCG, another third party administrator, or the Debtor to complete its review of the Unresolved Dex-Cool Claims (the cost of that review is estimated at between $25,000 and $40,000) and the Unresolved Anderson Claims, which will be liquidated pursuant to their respective Settlement Agreements; and (3) that upon such liquidation by the claims administrator as expressly contemplated by the Settlement Agreements, that Class Proofs of Claim be deemed allowed in whatever final amount any third party administrator determines.

**The Unresolved Class Claimants Should Not Be Subject To An Expensive and Time Consuming Process to Finalize the Amounts of the Remaining Unresolved Claims, Where Judgments and Settlement Agreements Have Already Established the Process to Liquidate the Unresolved Claims**

13. Debtors' Motion to implement ADR procedures is a wholesale attempt for the Debtors to deal with numerous and large claims. However, when applied to the Class Proofs of Claim, the rationale for this procedure falls apart.

14. As explained in detail above, the Class Proofs of Claim are based on pre-petition settlements and consent judgments from separate class action lawsuits against the Debtor. Under these Settlement Agreements, <u>the Debtor was responsible for the costs of reviewing and</u>

approving claims submitted by class members. In the Dex-Cool Class Actions, the parties selected GCG to review and analyze those claims. GCG had reviewed and analyzed over 80% of the claims submitted. The Debtor had paid over $6.1 million on those claims before the Commencement Date and another $1.3 million in valid claims were waiting funding for payment. Only multiple repair claims remain to be administered on the Dex-Cool Settlements, and it is estimated that the review of these claims can be completed for between $25,000 and $40,000.

15.   In an effort to put this concept into action, Class Counsel is willing to advance $10,000.00 to GCG to share the cost of the final determination of the Unresolved Dex-Cool Claims if: (1) Debtors agree to put forth the remaining cost or obtain GCG's consent to complete the review; (2) Debtors agree that the amount determined by GCG of the Unresolved Dex-Cool Claims be allowed as an allowed unsecured proof of claim; and (3) Class Counsel be allowed to file amended class proofs of claim in the amounts determined by GCG (or another independent administrator), which under the Dex-Cool Settlement are the sole responsibility of the Debtor.[1]

16.   As to the Unresolved Anderson Claims, the administration and review of those claims is the responsibility of the Debtor under the terms of the Anderson Settlement Agreement. Again, rather than submit to a lengthy and expensive process, the parties time and funds would be better spent by the Debtor completing its review of the Unresolved Anderson Claims so that the final claim can be specifically determined. At a minimum, Class Counsel requests that the Debtor provide them with copies of the claims submitted so that they can direct a review and assessment of the validity and value of those claims.

17.   Debtors move for this relief under Section 105 of the bankruptcy code, under the Courts equitable powers. The Second Circuit states that "The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise

---

[1] This is subject to a signed stipulation of the terms between the parties.

to do the right thing." In re Dairy Mart Convenience Stores, Inc., 351 F.3d 86, 92 (2nd Cir. 2003). The Second Circuit has also stated that a bankruptcy court "may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing it may adopt that remedy which it deems most appropriate under the circumstances." In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2nd Cir. 1994).

18. As it relates to the Unresolved Class Claims, Debtors' Motion will not result in quicker and more efficient administration, but increased cost and complexity that needlessly muddy the waters as it regards the Unresolved Class Claims. As they are already agreed upon in principal with a specific and purposeful methodology for obtaining a final and specific amount, it seems arbitrary to now cast that methodology away when the parties already agreed upon it. Clearly it is not in the interest of efficiency or fairness to do so.

19. The Debtors Motion tries to create a large overarching procedure for dealing with a number of large and varied claims, which is understandable. However, as it regards the Unresolved Class Claims, which are the subject of pre-petition settlement agreements and judgments, some of which are substantially complete, Debtors intended procedure does not make sense. As suggested herein, Class Counsel is willing to engage with the Debtors in resolution of the Unresolved Class Claims that result in completion of the review of the submitted claims, but given the status of these Claims, Debtors' Motion is not appropriate.

20. The Dex-Cool and Anderson Settlement Agreements have been rejected by the Debtors as executory contracts. This rejection, however does not entitle the Debtor to renegotiate these settlements. Rather, it acts as a breach of the agreement entitling the Class Claimants to claims for the damages sustained. 11 U.S.C. §365(g). In this instance, the damages are the amounts of the Dex-Cool and Anderson Settlements.

21. Even assuming, arguendo, that the amounts of the Dex-Cool and Anderson Settlements could be challenged at all, these challenges should be done in the most efficient, economical manner for both sides. Class Counsel submits that the ADR procedures requested in

the Debtors' Motion are not the most efficient or economical process to challenge the class claims.

WHEREFORE, on behalf of the Class Claimants, Class Counsel asks that the Court grant Class Counsel's limited objection that <u>it not be subject to</u> the relief sought in the Debtors' Motion and such other relief as the Court deems just and proper.

[Signature Page Follows]

DATED:      New York, New York
            February 3, 2010

Respectfully submitted,

**GERSTEN SAVAGE LLP**

By:    /s/
       Paul Rachmuth (pr1566)
600 Lexington Avenue
New York , New York  10022
Telephone: (212) 752-9700
Facsimile:  (212) 980-5192
prachmuth@gerstensavage.com

- and -

Eric H. Gibbs
A. J. De Bartolomeo
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

- and –

P. John Brady
**POLSINELLI SHUGHART P.C.**
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105
Telephone:  (816) 421-3355
Facsimile:  (816) 374-0509

*Class Counsel in General Motors Dex-
Cool/Gasket Cases and General Motors Cases,
Anderson v. General Motors*