**HEARING DATE AND TIME: Feb. 10, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: Feb. 3, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------x | | |
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| ------------------------------------------------------------x | | |

**RESPONSE OF DEBTORS TO REQUEST**
**BY WILLIAM HARDEE FOR PAYMENT OF ADMINISTRATIVE EXPENSES**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement .................................................................................................... 1

Relevant Background .................................................................................................... 1

The Request Should Be Denied .................................................................................... 2

    A.  Hardee's Claim Is Not an Administrative Expense ....................................... 2

    B.  Administrative Expenses Need Not Be Paid Immediately ............................. 8

# TABLE OF AUTHORITIES

**Cases**                                                                                           Page

*Alabama Surface Mining Comm'n v. N.P. Mining Co.*
  *(In re N.P. Mining Co.)*,
  963 F.2d 1449 (11th Cir. 1992) ........................................................................7

*In re Ames Dep't Stores, Inc.*,
  306 B.R. 43, 54 (Bankr. S.D.N.Y. 2004)...........................................................3

*Dutcher v. Reorganized Pettibone Corp.*,
  193 B.R. 667 (S.D.N.Y. 1996)............................................................................6

*Emons Indus., Inc. v. Allen (In re Emons Indus., Inc.)*,
  220 B.R. 182, 193 (Bankr. S.D.N.Y. 1998).......................................................5

*Epstein v. Official Committee of Unsecured Creditors*
  *(In re Piper Aircraft Corp.)*,
  58 F.3d 1573, 1577 (11th Cir. 1995) ................................................................6

*Grady v. A.H. Robins Co.*,
  839 F.2d 198 (4th Cir. 1988) ............................................................................5

*In re King*,
  392 B.R. 62, 67-68 (Bankr. S.D.N.Y. 2008)......................................................8

*Local 144 Hosp. Welfare Fund v. Baptist Med. Ctr. of N.Y., Inc.*
  *(In re Baptist Med. Ctr. of N.Y., Inc.)*,
  52 B.R. 417, 421 (E.D.N.Y. 1985),
  *aff'd*, 781 F.2d 972 (2d Cir. 1986).....................................................................8

*LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*,
  53 F.3d 478, 497 (2d Cir. 1995)........................................................................4

*In re Modern Metal Prods. Co.*,
  Ch. 11 Case No. 08 B 739082009 WL
  1362632 at *3 (Bankr. N.D. Ill. May 13, 2009)................................................8

*Nathanson v. NLRB*,
  344 U.S. 25 (1952)..............................................................................................3

*In re Old Carco LLC*,
  Ch. 11 Case No. 09 B 50002, 2010 WL 22426 ..........................................2, 7

# TABLE OF CONTENTS
## (continued)

Page

*Reading Co. v. Brown*,
    391 U.S. 471 (1968) ................................................................................................. 7

*Riverwood Int'l Corp. v. Olin Corp.*
    *(In re Manville Forest Prods. Corp.)*,
    225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) ........................................................ 4

*Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*,
    789 F.2d 98, 100 (2d Cir. 1986) .................................................................... 2-3

*West v. WorldCom, Inc.*,
    No. 06 Civ. 0748, 2007 U.S. Dist. LEXIS
    83924, at *6-7 (S.D.N.Y. Nov. 14, 2007) ........................................................... 4

**Statutes**

11 U.S.C. § 101(5) ....................................................................................................... 3-4, 6

11 U.S.C. § 363(b) ............................................................................................................. 1

11 U.S.C. § 503(b) ............................................................................................................. 2

11 U.S.C. § 503(b)(1)(A) ................................................................................................... 3

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), as and for their Response to the Request by William Hardee ("**Hardee**") for Payment of Administrative Expenses, dated November 24, 2009 (the "**Request**") [Docket No. 4539], respectfully represent:

### Preliminary Statement

1. The Request should be denied because (i) the personal injury claim is a prepetition claim, not an administrative expense; and (ii) even if the claim were an administrative expense, the Debtors are not required to immediately pay such claim prior to the effective date of a chapter 11 plan.

### Relevant Background

2. On July 5, 2009, the Court entered an order approving the sale of substantially all the assets of General Motors Corporation ("**GM**") and its affiliated debtors pursuant to section 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") (the "**363 Transaction**") to NGMCO, Inc., a U.S Treasury-sponsored purchaser (the "**Purchaser**" or "**New GM**") pursuant to the Amended and Restated Master Sale and Purchase Agreement (the "**MPA**"). [Docket No. 2968]. The 363 Transaction closed on July 10, 2009 (the "**Closing Date**").

3. While the Purchaser expressly assumed all Products Liabilities (as defined in the MPA) "which arise directly out of death, personal injury or other injury . . . caused by accidents or incidents first occurring on or after the Closing Date" arising from

the operation or performance of GM vehicles pursuant to Section 2.3(a)(ix) of the MPA, the Purchaser did not assume "all Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date" pursuant to Section 2.3(b)(ix) of the MPA.

4.  In his Request, Hardee asserts that he sustained injuries in an accident that occurred on June 11, 2009, which was subsequent to the date on which the Debtors commenced these chapter 11 cases (the "**Commencement Date**") but before the Closing Date, and, therefore, he asserts that he has an administrative expense pursuant to section 503(b) of the Bankruptcy Code that should be allowed by the Court and paid by the Debtors upon liquidation of the claim.

## The Request Should Be Denied

A.  Hardee's Claim Is Not an Administrative Expense

5.  Hardee cannot establish that his claim rises to administrative expense priority. Statutory priorities, such as administrative expenses, are narrowly construed in the Second Circuit because of the fundamental bankruptcy goal of an orderly and equal distribution among creditors. *See generally Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed."); *In re Old Carco LLC*, Ch. 11 Case No. 09 B 50002, 2010 WL 22426 at *6 (Bankr. S.D.N.Y. Jan. 5, 2010) ("Strictly construing the terms 'actual' and 'necessary' minimizes administrative expense claims, thereby preserving the estate for the benefit of all creditors. If claims not intended to have priority were afforded such, the value of the priority for those creditors Congress

intended to prefer would be diluted.") (citations omitted); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 54 (Bankr. S.D.N.Y. 2004) (observing basic principles in Second Circuit that "grants of administrative expense priority cut against the general goal in bankruptcy law to distribute limited debtor assets equally among similarly situated creditors" and that "statutory priorities, such as those resulting from administrative expense treatment, are narrowly construed") (citing *McFarlin's*).

6. Consistent with these well-established principles, priority status may be awarded only if the creditor's claim is firmly based on a clear statutory purpose and the creditor has satisfied its burden of proof that its claim should override claims of similarly situated creditors. *See Nathanson v. NLRB*, 344 U.S. 25 (1952) (if one claimant is to be preferred over others, purpose should be clear from statute); *McFarlin's*, 789 F.2d at 101 (same). Hardee has not and cannot satisfy his burden.

7. The relevant statute is section 503(b)(1)(A) of the Bankruptcy Code, which provides that administrative expenses are the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Two elements must be satisfied for a debt to be given administrative expense status: (i) the expense must arise out of a transaction between the creditor and the debtor in possession and (ii) the creditor's consideration for the expense must be both supplied to and beneficial to the debtor in possession in the operation of the business. *McFarlin's*, 789 F.2d at 101; *Ames*, 306 B.R. at 55. Neither element exists here.

8. With respect to product liability claims, the main issue is at what point did the claim arise. Section 101(5) of the Bankruptcy Code defines "claim" as

3

        (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

        (B) right to an equitable remedy for breach of performance if such breach gives rise to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

        9.      Hardee asserts that he has an administrative expense based on Georgia law, which he further asserts obliged the Debtors to a duty to warn Hardee of defective design that continued postpetition. (Hardee Motion ¶¶ 6-8). But while the existence of a claim is governed by nonbankruptcy law, the determination of when a claim arises is governed by the Bankruptcy Code. *See, e.g., Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) (citing *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995)). Most courts have embraced the rule that a claim arises when the conduct giving rise to the claim occurs, though sometimes with the caveat that the debtor and the creditor must have some kind of prepetition relationship.

        10.      In the Second Circuit, a claim will be deemed to have arisen prepetition when it arises out of a prepetition relationship recognized in the law of contracts or torts. *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995) ("A claim will be deemed pre-petition when it arises out of a relationship recognized in . . . the law of contracts or torts."); *West v. WorldCom, Inc.*, No. 06 Civ. 0748, 2007 U.S. Dist. LEXIS 83924, at *6-7 (S.D.N.Y. Nov. 14, 2007)

("Claims arise before a petition when the parties are engaged in a pre-petition relationship recognized in contract or tort law.").

11.  If a relationship exists prepetition, but the liability does not materialize until postpetition, the claim is not transmogrified from a prepetition claim to an administrative expense. Courts within this Circuit have concluded that a "prepetition 'claim' may well encompass a cause of action that, under state law, was not cognizable until after the bankruptcy petition was filed." *In re Johns-Manville Corp.*, 57 B.R. 680, 690 (Bankr. S.D.N.Y. 1986)). Under this "conduct test," as it is often referred, a claim exists at the "time when the acts giving rise to the alleged liability were performed." *Id.* In other words, if a debtor's conduct forming the basis of liability occurred prepetition, a claim arises when the conduct occurred, even though the injury resulting from the conduct is not manifest at the commencement of the bankruptcy case. This test was adopted by the United States Court of Appeals for the Fourth Circuit in *Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988) (claimant who had Dalkon Shield inserted prepetition held claim that arose prepetition) and has been followed by courts within this Circuit. *See, e.g., Emons Indus., Inc. v. Allen (In re Emons Indus., Inc.)*, 220 B.R. 182, 193 (Bankr. S.D.N.Y. 1998) ("Tort victims injured by the debtor's pre-petition conduct are 'creditors' who have pre-petition claims.") (citing *A.H. Robins*).

12.  Because the conduct test by itself may define claims too broadly in certain circumstances, some courts use this test in conjunction with the prepetition relationship test, particularly in the context of product liability claims against a debtor manufacturer. For example, the United States Court of Appeals for the Eleventh Circuit,

5

in *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft Corp.)*, established what is known as the *Piper* test:

> An individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct.

58 F.3d 1573, 1577 (11th Cir. 1995).

13.  Under this test, where, as here, an allegedly defective product was manufactured prepetition and a creditor purchased the allegedly defective product prepetition, a claim for damages suffered by the creditor postpetition would be a prepetition claim, rather than an administrative expense, because (i) the debtor's conduct (i.e., manufacturing the allegedly defective product) occurred prepetition and (ii) the relationship between the debtor and the creditor was created prepetition (i.e., when the creditor purchased the allegedly defective product). *Cf. Dutcher v. Reorganized Pettibone Corp.*, 193 B.R. 667 (S.D.N.Y. 1996) (manufacturer of forklift was not liable for injury to plaintiff three years after confirmation of manufacturer's plan of reorganization because confirmation discharged manufacturer of any responsibilities).

14.  Based on the foregoing, the alleged claim Hardee has against the Debtors arising out of his prepetition purchase of a GM vehicle is a prepetition claim, not an administrative expense. Hardee had a prepetition relationship with the Debtors because he purchased the GM vehicle prior to the Commencement Date; the Debtors'

6

conduct in designing, manufacturing, and selling the vehicle occurred prior to the Commencement Date. That the accident occurred after the Commencement Date does not convert this contingent prepetition claim to administrative expense priority.[1]

15. Finally, Hardee's reliance on *Reading Co. v. Brown*, 391 U.S. 471 (1968) misses the mark. *Reading* held that if a party were injured by negligence in the operation of an "insolvent business thrust upon it by operation of law," it was "fairer" to compensate the injured party upon whom the arrangement had been imposed before compensating those for whose benefit the arrangement was being effected, and, therefore, a tort arising during the arrangement was treated as an actual and necessary expense of the estate. *Id.* at 478-79, 482. These circumstances do not exist here.[2] Any alleged injury to Hardee was not thrust upon him by the debtor in possession, nor was it caused by the operation of the business by the debtor in possession. Indeed, under the circumstances which exist here, to grant Hardee's claim administrative expense status would result in an unjustifiable and purely fortuitous windfall to Hardee.

---

[1] In the event Hardee ultimately is able to demonstrate liability under Georgia law based on the Debtors' alleged failure to warn postpetition during the initial ten-day period the Debtors were in chapter 11, the Debtors reserve their rights with respect to this issue at that time.

[2] Notably, last month, the Bankruptcy Court in the *Chrysler* chapter 11 cases (n/k/a Old Carco) concluded that "once business operations ceased, the language employed in *Reading* no longer applied" because the debtor is no longer "operating" the estate. *Old Carco* at *7 (discussing *Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.)*, 963 F.2d 1449 (11th Cir. 1992), which accorded administrative priority to certain claims to further goal of environmental protection). As Judge Gonzalez stated, the "Debtors ceased production and operations as an automobile manufacturer upon filing the petitions. The Debtors directed their efforts to maintaining the status quo until the conclusion of a sale of substantially all of the assets to a purchaser, which occurred within several weeks of the filing." *Id.* at *10.

7

B.   <u>Administrative Expenses Need Not Be Paid Immediately</u>

16.   Even assuming, arguendo, that Hardee's claim is entitled to administrative expense priority, the Debtors object to that portion of the Request pertaining to payment of any amount that may be subsequently determined to be due and owing as an administrative expense prior to the effective date of a plan.  Applicable law does not require that an administrative expense be paid immediately, particularly for an administrative expense based on damages for products liability.

17.   The determination of the timing of payment of administrative expenses is a matter within the discretion of the Bankruptcy Court.  *See, e.g., Local 144 Hosp. Welfare Fund v. Baptist Med. Ctr. of N.Y., Inc. (In re Baptist Med. Ctr. of N.Y., Inc.)*, 52 B.R. 417, 421 (E.D.N.Y. 1985), *aff'd*, 781 F.2d 972 (2d Cir. 1986); *In re Modern Metal Prods. Co.*, Ch. 11 Case No. 08 B 73908, 2009 WL 1362632 at *3 (Bankr. N.D. Ill. May 13, 2009) ("The timing of the payment of this allowed administrative expense claim . . . is within the Court's discretion."); *In re King*, 392 B.R. 62, 67-68 (Bankr. S.D.N.Y. 2008) ("The timing of distributions for administrative expense payments, other than at the close of the case, is within the discretion of the Court.").

18.   In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to the debtor's assets.  *Baptist*, 52 B.R. at 426.  Other factors include the particular needs of each administrative claimant and the length and expense of the case's administration.

19.   At this juncture, any claim Hardee has is contingent and unliquidated as there has been no determination of the Debtors' liability with respect to

8

such claim. In any event, if it ultimately is determined that Hardee has an administrative expense, any decision as to the timing of payment thereof should be deferred until such time as the claim is liquidated.

       WHEREFORE the Debtors respectfully request that the Request be denied and that the Debtors be granted such other and further relief as is just.

Dated: New York, New York
       February 3, 2010

    /s/ Stephen Karotkin
    Harvey R. Miller
    Stephen Karotkin
    Joseph H. Smolinsky

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors
    and Debtors in Possession

9