**Hearing Date and Time: February 10, 2010 at 9:45 a.m.**

GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
3516 Granite Circle
Toledo, OH 43617
Telephone: (419) 843-2001
Facsimile: (419) 841-2608
Jonathan M. Ashton, Esq.
Attorney for Plaintiff-Claimant, Douglas Groch
[Motion for admission to practice *pro hac vice* presently pending]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:                                          Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,             Case No. 09-50026 (REG)
      f/k/a General Motors Corp., et al.,

                        Debtors.


-------------------------------------------------------------x

### RESPONSE OF PLAINTIFF-CLAIMANT DOUGLAS GROCH TO THE
### NOTICE OF DEBTORS' EIGHTH OMNIBUS OBJECTION TO CLAIMS
### (Claims with Insufficient Documentation)

Now comes the Plaintiff-Claimant Douglas Groch, by and through counsel Jonathan M.

Ashton, Esq. and Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., and hereby provides the

following documents in response to the Notice of Debtors' Eighth Omnibus Objection to Claims

(Claims with Insufficient Documentation).

   A. Plaintiffs' Complaint with Jury Demand Endorsed Herein

   B. Plaintiffs' First Amended Complaint with Jury Demand Endorsed Herein

   C. Affidavit and Curriculum Vitae of Gerald Rennell, Plaintiffs' expert witness on machine
      guarding and safety

   D. List of providers and medical bills for Plaintiff-Claimant Douglas Groch

   E. GM Powertrain Safety Incident Report

F.  GM/Securitas Incident Report

G.  GM Powertrain Pro-Act Safety Bulletin

H.  Eggenton memo dated 3/4/05

I.  First Draft Version Report (Bates stamped GM-GR 00013)

J.  State of Ohio Bureau of Workers' Compensation Safety Violations Investigation Unit
Report of Investigation dated 6/12/07

K.  State of Ohio Bureau of Workers' Compensation Safety Violations Investigation Unit
Affidavit of Douglas Groch dated 3/15/07

L.  Statement of GM employee Rick Kirk dated 2/3/08

M.  Statement of GM employee Randy Pudvan

This supporting documentation sets forth, with as much specificity as is possible without full

discovery (as this case has been stayed due to GM's bankruptcy), the legal and factual bases for

Douglas Groch's claim against General Motors.

According to the Ohio Supreme Court[1], in order to establish an intentional tort of an

employer, proof beyond that required to prove negligence and beyond that to prove recklessness

must be established. Where the employer acts despite his knowledge of some risk, his conduct may

be negligence. As the probability increases that particular consequences may follow, then the

employer's conduct may be characterized as recklessness. As the probability that the consequences

will follow further increases, and the employer knows that injuries to employees are certain or

substantially certain to result from the process, procedure or condition and he still proceeds, he is

treated by the law as if he had in fact desired to produce the result. However, the mere knowledge

and appreciation of a risk—something short of substantial certainty—is not intent. *Blankenship v.*

---

[1] The Ohio General Assembly legislatively clarified *Fyffe et al.* with the enactment of Ohio Revised Code § 2745.01.
R.C. § 2745.01 does not apply to Mr. Groch's claim, though, as it became effective on April 7, 2005. The incident
involving Mr. Groch occurred on March 3, 2005.

2

*Cincinnati Milacron Chemicals, Inc.*, (1982), 69 Ohio St.2d 608; *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90; *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St. 3d 115, 118.

Here, Plaintiffs' evidence demonstrates a *prima facie* case for an employment intentional tort under Ohio law in compliance with the Bankruptcy Rules. *In re Chain*, 255 B.R. 278, 208 (Bankr. D. Conn. 2000) (internal quotation omitted); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).

Plaintiffs' expert witness, Gerald Rennell, inspected the hydraulic press which had unexpectedly cycled, resulting in a severe injury to Mr. Groch's right wrist. According to the limited record developed in discovery, General Motors knew the subject press was defective (Rennell Affidavit ¶ 2) based on the testimony of other GM workers. Furthermore, General Motors knew that employees, such as Mr. Groch, reached into the machine to remove parts and scrap and GM did not offer training or instruction against such a practice (Rennell Affidavit ¶ 3). Finally, General Motors knew that the timing sequence on the subject press was improper and failed to test the press to ensure employee safety (Rennell Affidavit ¶¶ 4, 5). Under the circumstances created entirely by General Motors, the precise injury suffered by Mr. Groch was substantially certain to occur. Therefore, there is *prima facie* case for an employment intentional tort under Ohio law.

In addition to the depositions reviewed by Plaintiffs' expert, the investigation conducted by the State of Ohio Bureau of Workers' Compensation Safety Violations Investigation Unit demonstrates that the subject press was not properly guarded to prevent Mr. Groch's injury.

Therefore, Plaintiff-Claimant Douglas Groch requests that this Court overrule the Eighth Omnibus Objection to Claims (Claims with Insufficient Documentation) with respect to his claim as there is *prima facie* case for an employment intentional tort under Ohio law.

Respectfully submitted,
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.

By _____
          Jonathan M. Ashton

## CONTACT INFORMATION

GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
3516 Granite Circle
Toledo, OH 43617
Telephone: (419) 843-2001
Facsimile: (419) 841-2608
Jonathan M. Ashton, Esq.
Attorney for Plaintiff-Claimant, Douglas Groch
Email: jashton@gallonlaw.com, atafelsk@gallonlaw.com

## CERTIFICATION

This is to certify that a copy of the foregoing **RESPONSE** was sent via ordinary U.S. Mail,
postage pre-paid, this 2nd day of February, 2010, to:

Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H Smolinsky, Esq.
Weil, Gotshal & Manges
767 Fifth Avenue
New York, NY 10153
Attorneys for the Debtors

Motors Liquidation Company
Attn: Ted Stenger
500 Renaissance Center
Suite 1400
Detroit, MI 48242
Debtors

Lawrence S. Buonomo, Esq.
General Motors LLC
300 Renaissance Center
Detroit, MI 48265

4

John J. Rapisardi, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Attorneys for the United States Department of the Treasury

United States Department of the Treasury
Attn: Joseph Samarias, Esq.
1500 Pennsylvania Avenue NW
Room 2312
Washington, DC 20220

Michael J. Edelman, Esq.
Michael L. Schein, Esq.
Vedder Price, P.C.
1633 Broadway, 47th Floor
New York, NY 10019
Attorneys for Export Development Canada

Thomas Moers Mayer, Esq.
Amy Caton, Esq.
Adam C. Rogoff, Esq.
Gregory G. Plotko, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attorneys for the statutory committee of unsecured creditors

Diana G. Adams, Esq.
Office of the United States Trustee
for the Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004

David S. Jones, Esq.
Matthew L. Schwartz, Esq.
U.S. Attorney's Office
S.D.N.Y.
86 Chambers Street, Third Floor
New York, NY 10007

_____
Jonathan M. Ashton

FILED
LUCAS COUNTY

2006 JUN -2 A 11: 54

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO

| | | |
|---|---|---|
| **DOUGLAS GROCH** | * | Case No. CI 0 2 0 0 6 0 3 8 2 4 |
| 526 Sioux Trail | | |
| Rossford, OH 43460 | * | JUDGE ASSIGNED TO JUDGE WITTENBERG |
| | | |
| and | * | **COMPLAINT WITH JURY DEMAND** |
| | | **ENDORSED HEREIN** |
| | * | |
| **CHLOE GROCH**, a minor by and through | * | |
| her father and next friend, Douglas Groch | | **Kevin J. Boissoneault (#0040180)** |
| 526 Sioux Trail | * | **Bonnie E. Haims (#0072465)** |
| Rossford, OH 43460 | | **Russell W. Gerney (#0080186)** |
| | * | **GALLON, TAKACS, BOISSONEAULT** |
| Plaintiffs, | * | **& SCHAFFER CO, L.P.A.** |
| | | PIattys@gallonlaw.com |
| vs. | * | 3516 Granite Circle |
| | | Toledo, Ohio 43617-1172 |
| **GENERAL MOTORS CORPORATION** | * | Phone: (419) 843-2001 |
| c/o CT Corporation System, | | Fax: (419) 841-2608 |
| 1300 East Ninth Street | * | Attorneys for Plaintiffs |
| Cleveland, OH 44114 | | |
| | * | |
| and, | * | |
| | | |
| **KARD CORPORATION** | * | |
| s/a Richard Haupt | | |
| 2750 E. Regal Park Drive | * | |
| Anaheim, CA 92806 | | |
| | * | |
| and, | | |

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.

THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

**A**

| | |
|---|---|
| **RACINE FEDERATED, INC.,** | * |
| **National/Kard division** | |
| s/a Glenn R. Coates | * |
| 2200 South Street | |
| Racine, WI 53404-1326 | * |
| | |
| and, | * |
| | |
| **JOHN DOES NUMBER ONE** | * |
| **THROUGH THREE** | |
| Whose present name and address | * |
| is unknown | |
| | * |
| Defendants. | |
| * | * |

Now come Plaintiffs, by and through counsel Kevin J. Boissoneault, Esq., Bonnie E. Haims, Esq., Russell W. Gerney, Esq., and Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A. and for their Complaint state and avers as follows:

## GENERAL ALLEGATIONS

1.     At all relevant times, Plaintiff Douglas Groch was a resident of Rossford, Wood County Ohio, and was an employee of Defendant General Motors and/or John Doe Number One.

2.     At all relevant times, Chloe Groch, a minor by and through her father and next friend Douglas Groch, resided in Rossford, Wood County, Ohio.

3.     At all relevant times, Defendant General Motors Corporation ("General Motors") and/or John Doe Number One is a Delaware corporation, duly licensed and doing business in the State of Ohio, at the Powertrain Plant on West Alexis Road in Toledo, Lucas County, Ohio.  Any reference to Defendant General Motors and/or John Doe Number One will include reference to its owners, agents, servants, and employees who at all pertinent times

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

2

were acting within the course and scope of their employment and/or agency with Defendant General Motors and/or John Doe Number One. Said Defendant was also a self-insured Employer for Ohio Workers' Compensation purposes.

4.    At all times material hereto, Defendant Kard Corporation and/or John Doe Number Two was a corporation, duly authorized and licensed to do business in the State of Ohio and designed and/or manufactured and/or marketed and/or supplied and/or distributed and/or sold for use in the State of Ohio the trim press at issue in this case and its component parts. Any reference to Defendant Kard Corporation and/or John Doe Number Two will include references to its owners, agents, servants, and employees who, at all pertinent times thereto, were acting within the course and scope of their employment and/or agency with Defendant.

5.    At all times material hereto, Defendant Racine Federated, Inc., National/Kard divisions, (hereafter "Racine") and/or John Doe Number Three was a corporation, duly authorized and licensed to do business in the State of Ohio and assumed the liabilities of Kard Corporation and/or John Doe Number Two and/or designed and/or manufactured and/or marketed and/or supplied and/or distributed and/or sold for use in the State of Ohio the Kard hydraulic trim press at issue in this case and its component parts. Any reference to Defendant Racine and/or John Doe Number Three will include references to its owners, agents, servants, and employees who, at all pertinent times thereto, were acting within the course and scope of their employment and/or agency with Defendant.

6.    At all times material hereto, Defendant John Does Numbers One through Three, whose present names and addresses remain unknown despite Plaintiffs' best and reasonable

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

3

efforts to ascertain same, were corporations and/or other legal entities that conducted

business in Toledo, Lucas County, Ohio.

7.  At all relevant times, pursuant to Ohio Revised Code Sections 4123.93 and

4123.931, Defendant General Motors claims a right of subrogation as a self-insured

statutory subrogee in the within action.

8.  On or about March 3, 2005, Plaintiff Douglas Groch was acting in the course and scope

of his employment with Defendant General Motors Co. and/or John Doe Number One.

9.  On or about March 3, 2005, Plaintiff Douglas Groch was seriously injured while operating

a trim press machine when, despite the alleged safety features, the trim die on the press

came down on his right forearm and wrist.

## COUNT ONE

10. Plaintiffs reallege and incorporates by reference the above paragraph as if same were fully

set forth herein.

11. The subject trim press was at all relevant times owned by and/or under the control of

Defendant General Motors Co. and/or John Doe Number One.

12. On or about March 3, 2005, Defendant General Motors Co. and/or John Doe Number One,

and/or their agents, and/or their servants, and/or their employees intentionally,

purposefully, knowingly, and with substantial certainty that they would cause severe injury

to Plaintiff or others similarly situated, did the following acts, including but not limited

to:

    a.  Knowingly required Plaintiff Douglas Groch to operate the subject trim
        press machine which was not equipped with proper safety devices to
        prevent the press from coming down on his arm and wrist;

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

4

b.    Knowingly failed to properly install, replace, repair, or inspect safety devices designed to prevent the trim press machine from causing severe injury;

c.    Knowingly and improperly programmed the safety controls of the machine guarding system designed to prevent the trim press machine from causing severe injury;

d.    Knowingly failed to warn employees, including Plaintiff Douglas Groch, that the aforementioned trim press machine exposed them to danger of serious injuries, despite knowing the tendency of the machine to malfunction;

e.    Knowing failed to remove or eliminate an unreasonably dangerous process and/or procedure and/or defective condition in the press, despite knowing the certainty of the trim press machine to injure its employees;

f.    Knowingly operating the subject trim press machine without proper safety equipment in violation of government and/or industry safety regulations and standards;

g.    Knowingly required Plaintiff Douglas Groch to work as set forth herein above despite knowing the danger of serious injuries to operators of the subject trim press machine was substantially certain to occur under the circumstances as set forth herein above;

h.    Knowingly failed to train and/or adequately train Plaintiff Douglas Groch regarding safe ways to operate and work with the subject trim press machine; and,

i.    Knowingly ignored several malfunctions of the machine that occurred on the same day as the injury to Plaintiff, exposing Plaintiff Douglas Groch and other operators to a risk of serious bodily harm attendant to circumstances as described herein.

13.    All of the foregoing actions and inactions on the part of Defendant General Motors Co. and/or John Doe Number One demonstrate, at a minimum, their knowledge of a dangerous process, procedure and condition with inadequately equipped trim press machines,

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

5

inadequate safety training, and knowledge of the dangerous condition of the subject trim press machine.

14.     All of the foregoing demonstrates Defendant General Motors Co. and/or John Doe Number One's knowledge, at a minimum, that serious injury was substantially certain to occur as the subject trim press machine was inadequately equipped to protect any operators and Plaintiff Douglas Groch was told to operate the trim press machine by his employer, General Motors Co. and/or John Doe Number One.

15.     Finally, at a minimum, Defendant General Motors Co. and/or John Doe Number One required Plaintiff Douglas Groch to be exposed to all of the foregoing as part of his employment at the time of the subject incident.

16.     The intentional and purposeful acts of Defendant General Motors Co. and/or John Doe Number One directly and proximately caused Plaintiff Douglas Groch to sustain injuries and damages, including, but not limited to, the following:

   a.     Severe and permanent injuries, scarring, and disfigurement to his arm and leg;
   b.     Medical expenses, past and future;
   c.     Pain and suffering, past and future;
   d.     Loss of earnings and earning capacity, past and future; and,
   e.     Disruption of lifestyle and enjoyment of life.

## COUNT TWO

17.     Plaintiffs reallege and incorporate by reference the aforementioned paragraphs as if the same were fully set forth herein.

18.     Defendant Kard Corporation and/or John Doe Number Two owed a duty to Plaintiff and others similarly situated to provide a product reasonably safe for all reasonable,

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.

THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

foreseeable and intended uses of the product.

19.    Defendant Kard Corporation and/or John Doe Number Two failed to provide the trim

press and its component parts at issue in this case in a reasonably safe condition for all

reasonable, foreseeable, and intended uses in one or more of the following respects:

a.    Defectively designing the trim press and/or its component parts in
an unreasonably unsafe manner;

b.    Defectively manufacturing the trim press and/or its component
parts in an unreasonably unsafe manner;

c.    Failing to adequately warn and/or instruct Plaintiff or others
similarly situated of the hazards, risks, and dangers Plaintiff faced
when the trim press and/or its component parts is/are used;

d.    Breaching express and implied warranties made to Plaintiff or
others similarly situated regarding the trim press and/or its
component parts;

e.    Failing to instruct and/or warn users regarding the proper use of the
trim press and/or its component parts;

f.    Defectively designing the trim press and/or its component parts
without proper safety features;

g.    Defectively manufacturing the trim press and/or its component
parts without proper safety features; and,

20.    As a direct and proximate result of Defendant Kard Corporation and/or John Doe

Number Two's failure as set forth above, Douglas Groch sustained severe, permanent

and disabling injuries including, but not limited to, the following:

a.    Severe and permanent injuries, scarring, and disfigurement to his arm
and leg;
b.    Medical expenses, past and future;
c.    Pain and suffering, past and future;
d.    Loss of earnings and earning capacity, past and future; and,
e.    Disruption of lifestyle and enjoyment of life.

7

LAW OFFICES OF
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172



21.  Pursuant to Ohio Revised Code § 2307.71, et seq., and Ohio common law, Defendant
Kard Corporation and/or John Doe Number Two are strictly liable to Plaintiffs for the
injuries and losses they suffered.

22.  Defendant Kard Corporation and/or John Doe Number Two's action in providing a
unreasonably dangerous trim press and its component parts directly and proximately
caused Plaintiff Douglas Groch's injuries during his use and under facts and
circumstances that were foreseeable to Defendant Kard Corporation of the trim press.

## COUNT THREE

23.  Plaintiffs reallege and incorporate by reference the aforementioned paragraphs as if the
same were fully set forth herein.

24.  Defendant Kard Corporation and/or John Doe Number Two owed a duty to Plaintiff
and others similarly situated to provide a product reasonably safe for all reasonable,
foreseeable and intended uses of the product.

25.  Defendant Kard Corporation and/or John Doe Number Two breached that duty when
they failed to provide a trim press and/or its component parts at issue in this case in a
reasonably safe condition for all reasonable, foreseeable, and intended uses in one or
more of the following respects:

    a.  Negligently designing the trim press and/or its component parts at
issue in this case in an unreasonably unsafe manner;

    b.  Negligently manufacturing the trim press and/or its component
parts at issue in this case in an unreasonably unsafe manner;

    c.  Negligently failing to adequately warn and/or instruct Plaintiff or
others similarly situated of the hazards, risks, and dangers Plaintiff

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.

THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

8

faced when using the subject trim press and/or its component parts; and/or

    d.    Negligently breaching express and implied warranties made to Plaintiff or others similarly situated regarding the trim press and/or its component parts at issue in this case.

26.    As a direct and proximate result of Defendant Kard Corporation and/or John Doe Number Two's breach as set forth above, Plaintiff Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to,

    a.    Severe and permanent injuries, scarring, and disfigurement to his arm and leg;
    b.    Medical expenses, past and future;
    c.    Pain and suffering, past and future;
    d.    Loss of earnings and earning capacity, past and future; and,
    e.    Disruption of lifestyle and enjoyment of life.

27.    Defendant Kard Corporation and/or John Doe Number Two's action in providing a unreasonably dangerous trim press and its component parts directly and proximately caused Plaintiff Douglas Groch's injuries during his use and under facts and circumstances that were foreseeable to Defendant Kard Corporation of the trim press.

## COUNT FOUR

28.    Plaintiffs reallege and incorporate by reference the aforementioned paragraphs as if the same were fully set forth herein.

29.    Defendant Racine and/or John Doe Number Three owed a duty to Plaintiff and others similarly situated to provide a product reasonably safe for all reasonable, foreseeable and intended uses of the product.

30.    Defendant Racine and/or John Doe Number Three failed to provide the trim press and its component parts at issue in this case in a reasonably safe condition for all

LAW OFFICES OF
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

9

reasonable, foreseeable, and intended uses in one or more of the following respects:

    a.    Defectively designing the trim press and/or its component parts in an unreasonably unsafe manner;

    b.    Defectively manufacturing the trim press and/or its component parts in an unreasonably unsafe manner;

    c.    Failing to adequately warn and/or instruct Plaintiff or others similarly situated of the hazards, risks, and dangers Plaintiff faced when the trim press and/or its component parts is/are used;

    d.    Breaching express and implied warranties made to Plaintiff or others similarly situated regarding the trim press and/or its component parts;

    e.    Failing to instruct and/or warn users regarding the proper use of the trim press and/or its component parts;

    f.    Defectively designing the trim press and/or its component parts without proper safety features;

    g.    Defectively manufacturing the trim press and/or its component parts without proper safety features; and,

31.    As a direct and proximate result of Defendant Racine and/or John Doe Number Three's failure as set forth above, Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to, the following:

    a.    Severe and permanent injuries, scarring, and disfigurement to his arm and leg;
    b.    Medical expenses, past and future;
    c.    Pain and suffering, past and future;
    d.    Loss of earnings and earning capacity, past and future; and,
    e.    Disruption of lifestyle and enjoyment of life.

32.    Pursuant to Ohio Revised Code § 2307.71, et seq., and Ohio common law, Defendant Racine and/or John Doe Number Three are strictly liable to Plaintiffs for the injuries

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.

THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

and losses they suffered.

33.     Defendant Racine and/or John Doe Number Three's action in providing an

unreasonably dangerous trim press and its component parts directly and proximately

caused Plaintiff Douglas Groch's injuries during his use and under facts and

circumstances that were foreseeable to Defendant Racine and/or John Doe Number

Three of the trim press.

## COUNT FIVE

34.     Plaintiffs reallege and incorporate by reference the aforementioned paragraphs as if the

same were fully set forth herein.

35.     Defendant Racine and/or John Doe Number Three owed a duty to Plaintiff Groch and

others similarly situated to provide a product reasonably safe for all reasonable,

foreseeable and intended uses of the product.

36.     Defendant Racine and/or John Doe Number Three breached that duty when they failed

to provide a trim press and/or its component parts at issue in this case in a reasonably

safe condition for all reasonable, foreseeable, and intended uses in one or more of the

following respects:

        a.      Negligently designing the trim press and/or its component parts at
                issue in this case in an unreasonably unsafe manner;

        b.      Negligently manufacturing the trim press and/or its component
                parts at issue in this case in an unreasonably unsafe manner;

        c.      Negligently failing to adequately warn and/or instruct Plaintiff or
                others similarly situated of the hazards, risks, and dangers Plaintiff
                faced when using the subject trim press and/or its component parts;
                and/or

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

11

          d.     Negligently breaching express and implied warranties made to Plaintiff or others similarly situated regarding the trim press and/or its component parts at issue in this case.

37.    As a direct and proximate result of Defendant Racine and/or John Doe Number Three's breach as set forth above, Plaintiff Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to,

        a.    Severe and permanent injuries, scarring, and disfigurement to his arm and leg;
        b.    Medical expenses, past and future;
        c.    Pain and suffering, past and future;
        d.    Loss of earnings and earning capacity, past and future; and,
        e.    Disruption of lifestyle and enjoyment of life.

38.    Defendant Racine and/or John Doe Number Three's action in providing a unreasonably dangerous trim press and its component parts directly and proximately caused Plaintiff Douglas Groch's injuries during his use and under facts and circumstances that were foreseeable to Defendant Racine of the trim press.

## COUNT SIX

39.    Plaintiffs reallege and incorporate by reference the aforementioned paragraphs as if the same were fully set forth herein.

40.    At all relevant times, Plaintiff Chloe Groch was the daughter of Plaintiff Douglas Groch.

41.    As a direct and proximate result of Defendants' actions or inactions, Plaintiff Chloe Groch sustained a loss of consortium of her father, Douglas Groch.

## COUNT SEVEN

42.    Plaintiff realleges and reincorporates by reference the aforementioned paragraphs as if

LAW OFFICES OF
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

12

the same were fully set forth herein.

43.    To the extent that Ohio Revised Code Sections 4123.93 and 4123.931 and its

provisions apply to this cause of action, said provisions are unconstitutional in whole

and/or in part.

**WHEREFORE,** Plaintiffs respectfully pray for judgment on the above mentioned

Counts against Defendant General Motors Co., Kard Corporation, Racine, and/or John Does

Number One through Three for an award of damages in any sum of money in excess of

Twenty-Five Thousand Dollars ($25,000.00), adequate to compensate Plaintiffs for their

damages, plus costs and expenses incurred herein, prejudgment interest at the highest statutory

rate allowed by law from the date the Plaintiffs' cause of action accrued, court costs, and such

other relief as the Court deems just and equitable.

**WHEREFORE,** Plaintiffs further pray for a declaration that Ohio Revised Code

Sections 4123.93 and 4123.931 are unconstitutional in whole and are unenforceable.

Respectfully submitted,

**GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.**

By: _____
    Kevin J. Boissoneault
    Bonnie E. Haims
    Russell W. Gerney
    Attorneys for Plaintiffs

Law Offices Of
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.
THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

13

## JURY DEMAND

Plaintiffs herein demand a trial by jury on all issues so triable in this action.

Respectfully submitted,

**GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.**

By: _____

       Kevin J. Boissoneault
       Bonnie E. Haims
       Russell W. Gerney
       Attorneys for Plaintiffs

S:\Personal Injury\COMPLAIN\COMP\Groch.cmp.wpd

LAW OFFICES OF
GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO., L.P.A.

THE JACK GALLON BUILDING
3516 GRANITE CIRCLE
TOLEDO, OHIO 43617-1172

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DOUGLAS GROCH**
526 Sioux Trail
Rossford, OH 43460

and

**CHLOE GROCH**, a minor by and through
her next friend Douglas Groch
526 Sioux Trail
Rossford, OH 43460

Plaintiffs,

v.

**GENERAL MOTORS CORPORATION**
℅ Kimberly Donovan, Esq.
KERGER & ASSOCIATES
33 S. Michigan Street, Suite 100
Toledo, OH 43604

and

**KARD CORPORATION**
℅ Robert H. Eddy, Esq. and
Anna S. Fister, Esq.
GALLAGHER SHARP
420 Madison Avenue, Suite 1250
Toledo, OH 43604

and

\* Case No. 3:06-CV-1604

\* Judge JAMES G. CARR

\* **FIRST AMENDED COMPLAINT**
**WITH JURY DEMAND**
\* **ENDORSED HEREIN**

\* **Kevin J. Boissoneault (#0040180)**
**Bonnie E. Haims (#0072465)**
\* **Russell Gerney (#0080186)**
**GALLON, TAKACS, BOISSONEAULT**
\* **& SCHAFFER CO. L.P.A.**
Plattys@gallonlaw.com
\* 3516 Granite Circle
Toledo, OH 43617-1172
\* Phone: (419) 843-2001
Fax: (419) 841-2608
\* Attorneys for Plaintiffs

\*

\*

\*

\*

\*

\*

\*

B

RACINE FEDERATED, INC.                    *
National/Kard Division
% Robert H. Eddy, Esq. and                *
Anna S. Fister, Esq.
GALLAGHER SHARP                           *
420 Madison Avenue, Suite 1250
Toledo, OH 43604                          *

        and                               *
JOHN DOES NUMBER ONE
THROUGH THREE                             *
Whose present names and addresses are
unknown at this time                      *

Now come Plaintiffs, by and through counsel Kevin J. Boissoneault, Esq., Bonnie E.

Haims, Esq., Russell W. Gerney, Esq., and Gallon, Takacs, Boissoneault & Schaffer Co.,

L.P.A. and for their Complaint state and avers as follows:

## GENERAL ALLEGATIONS

1.      At all relevant times, Plaintiff Douglas Groch was a resident of Rossford, Wood

        County Ohio, and was an employee of Defendant General Motors and/or John Doe

        Number One.

2.      At all relevant times, Chloe Groch, a minor by and through her father and next friend

        Douglas Groch, resided in Rossford, Wood County, Ohio.

3.      At all relevant times, Defendant General Motors Corporation ("General Motors")

        and/or John Doe Number One is a Delaware corporation, duly licensed and doing

        business in the State of Ohio, at the Powertrain Plant on West Alexis Road in Toledo,

        Lucas County, Ohio.  Any reference to Defendant General Motors and/or John Doe

        Number One will include reference to its owners, agents, servants, and employees who

        at all pertinent times were acting within the course and scope of their employment

        and/or agency with Defendant General Motors and/or John Doe Number One.  Said

2

Defendant was also a self-insured Employer for Ohio Workers' Compensation purposes.

4.      At all times material hereto, Defendant Kard Corporation and/or John Doe Number Two  was a corporation, duly authorized and licensed to do business in the State of Ohio and designed and/or manufactured and/or marketed and/or supplied and/or distributed and/or sold for use in the State of Ohio the trim press at issue in this case and its component parts.  Any reference to Defendant Kard Corporation and/or John Doe Number Two will include references to its owners, agents, servants, and employees who, at all pertinent times thereto, were acting within the course and scope of their employment and/or agency with Defendant.

5.      At all times material hereto, Defendant Racine Federated, Inc., National/Kard divisions, (hereafter "Racine") and/or John Doe Number Three  was a corporation, duly authorized and licensed to do business in the State of Ohio and assumed the liabilities of Kard Corporation and/or John Doe Number Two and/or designed and/or manufactured and/or marketed and/or supplied and/or distributed and/or sold for use in the State of Ohio the Kard hydraulic trim press at issue in this case and its component parts.  Any reference to Defendant Racine and/or John Doe Number Three will include references to its owners, agents, servants, and employees who, at all pertinent times thereto, were acting within the course and scope of their employment and/or agency with Defendant.

6.      At all times material hereto, Defendant John Does Numbers One through Three, whose present names and addresses remain unknown despite Plaintiffs' best and

3

reasonable efforts to ascertain same, were corporations and/or other legal entities that

conducted business in Toledo, Lucas County, Ohio.

7.    At all relevant times, pursuant to Ohio Revised Code Sections 4123.93 and

4123.931, Defendant General Motors claims a right of subrogation as a self-insured

statutory subrogee in the within action.

8.    On or about March 3, 2005, Plaintiff Douglas Groch was acting in the course and

scope of his employment with Defendant General Motors Co. and/or John Doe

Number One.

9.    On or about March 3, 2005, Plaintiff Douglas Groch was seriously injured while

operating a trim press machine when, despite the alleged safety features, the trim die

on the press came down on his right forearm and wrist.


## COUNT ONE

10.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one

through nine inclusive as if set forth in full.

11.    The subject trim press was at all relevant times owned by and/or under the control of

Defendant General Motors Co. and/or John Doe Number One.

12.    On or about March 3, 2005, Defendant General Motors Co. and/or John Doe Number

One, and/or their agents, and/or their servants, and/or their employees intentionally,

purposefully, knowingly, and with substantial certainty that they would cause severe

injury to Plaintiff or others similarly situated, did the following acts, including but not

limited to:

a.    Knowingly required Plaintiff Douglas Groch to operate the subject trim press machine which was not equipped with proper safety devices to prevent the press from coming down on his arm and wrist;

b.    Knowingly failed to properly install, replace, repair, or inspect safety devices designed to prevent the trim press machine from causing severe injury;

c.    Knowingly and improperly programmed the safety controls of the machine guarding system designed to prevent the trim press machine from causing severe injury;

d.    Knowingly failed to warn employees, including Plaintiff Douglas Groch, that the aforementioned trim press machine exposed them to danger of serious injuries, despite knowing the tendency of the machine to malfunction;

e.    Knowing failed to remove or eliminate an unreasonably dangerous process and/or procedure and/or defective condition in the press, despite knowing the certainty of the trim press machine to injure its employees;

f.    Knowingly operating the subject trim press machine without proper safety equipment in violation of government and/or industry safety regulations and standards;

g.    Knowingly required Plaintiff Douglas Groch to work as set forth herein above despite knowing the danger of serious injuries to operators of the subject trim press machine was substantially certain to occur under the circumstances as set forth herein above;

5

h.  Knowingly failed to train and/or adequately train Plaintiff Douglas Groch regarding safe ways to operate and work with the subject trim press machine; and,

i.  Knowingly ignored several malfunctions of the machine that occurred on the same day as the injury to Plaintiff, exposing Plaintiff Douglas Groch and other operators to a risk of serious bodily harm attendant to circumstances as described herein.

13.  All of the foregoing actions and inactions on the part of Defendant General Motors Co. and/or John Doe Number One demonstrate, at a minimum, their knowledge of a dangerous process, procedure and condition with inadequately equipped trim press machines, inadequate safety training, and knowledge of the dangerous condition of the subject trim press machine.

14.  All of the foregoing demonstrates Defendant General Motors Co. and/or John Doe Number One's knowledge, at a minimum, that serious injury was substantially certain to occur as the subject trim press machine was inadequately equipped to protect any operators and Plaintiff Douglas Groch was told to operate the trim press machine by his employer, General Motors Co. and/or John Doe Number One.

15.  Finally, at a minimum, Defendant General Motors Co. and/or John Doe Number One required Plaintiff Douglas Groch to be exposed to all of the foregoing as part of his employment at the time of the subject incident.

16.  The intentional and purposeful acts of Defendant General Motors Co. and/or John Doe Number One directly and proximately caused Plaintiff Douglas Groch to sustain injuries and damages, including, but not limited to, the following:

6

a.    Severe and permanent injuries, scarring, and disfigurement to his arm and leg;

b.    Medical expenses, past and future;

c.    Pain and suffering, past and future;

d.    Loss of earnings and earning capacity, past and future; and,

e.    Disruption of lifestyle and enjoyment of life.

## COUNT TWO

17.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one through sixteen inclusive as if set forth in full.

18.    Defendant Kard Corporation and/or John Doe Number Two owed a duty to Plaintiff and others similarly situated to provide a product reasonably safe for all reasonable, foreseeable and intended uses of the product.

19.    Defendant Kard Corporation and/or John Doe Number Two failed to provide the trim press and its component parts at issue in this case in a reasonably safe condition for all reasonable, foreseeable, and intended uses in one or more of the following respects:

a.    Defectively designing the trim press and/or its component parts in an unreasonably unsafe manner;

b.    Defectively manufacturing the trim press and/or its component parts in an unreasonably unsafe manner;

c.    Failing to adequately warn and/or instruct Plaintiff or others similarly situated of the hazards, risks, and dangers Plaintiff faced when the trim press and/or its component parts is/are used;

7

    d.      Breaching express and implied warranties made to Plaintiff or others similarly situated regarding the trim press and/or its component parts;

    e.      Failing to instruct and/or warn users regarding the proper use of the trim press and/or its component parts;

    f.      Defectively designing the trim press and/or its component parts without proper safety features;

    g.      Defectively manufacturing the trim press and/or its component parts without proper safety features; and,

20.    As a direct and proximate result of Defendant Kard Corporation and/or John Doe Number Two's failure as set forth above, Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to, the following:

    a.      Severe and permanent injuries, scarring, and disfigurement to his arm and leg;

    b.      Medical expenses, past and future;

    c.      Pain and suffering, past and future;

    d.      Loss of earnings and earning capacity, past and future; and,

    e.      Disruption of lifestyle and enjoyment of life.

21.    Pursuant to Ohio Revised Code § 2307.71, et seq., and Ohio common law, Defendant Kard Corporation and/or John Doe Number Two are strictly liable to Plaintiffs for the injuries and losses they suffered.

22.    Defendant Kard Corporation and/or John Doe Number Two's action in providing a unreasonably dangerous trim press and its component parts directly and proximately caused Plaintiff Douglas Groch's injuries during his use and under facts and circumstances that were foreseeable to Defendant Kard Corporation of the trim press.

## COUNT THREE

23.  Plaintiffs incorporate by reference the allegations and averments of paragraphs one

through twe4nty-two inclusive as if set forth in full.

24.  Defendant Kard Corporation and/or John Doe Number Two owed a duty to Plaintiff

and others similarly situated to provide a product reasonably safe for all reasonable,

foreseeable and intended uses of the product.

25.  Defendant Kard Corporation and/or John Doe Number Two breached that duty when t

they failed to provide a trim press and/or its component parts at issue in this case in a

reasonably safe condition for all reasonable, foreseeable, and intended uses in one or

more of the following respects:

a.  Negligently designing the trim press and/or its component parts at issue in this

case in an unreasonably unsafe manner;


b.  Negligently manufacturing the trim press and/or its component parts at issue in

this case in an unreasonably unsafe manner;

c.  Negligently failing to adequately warn and/or instruct Plaintiff or others

similarly situated of the hazards, risks, and dangers Plaintiff faced when using

the subject trim press and/or its component parts; and/or

d.  Negligently breaching express and implied warranties made to Plaintiff or

others similarly situated regarding the trim press and/or its component parts at

issue in this case.

26.    As a direct and proximate result of Defendant Kard Corporation and/or John Doe Number Two's breach as set forth above, Plaintiff Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to,

    a.    Severe and permanent injuries, scarring, and disfigurement to his arm and leg;

    b.    Medical expenses, past and future;

    c.    Pain and suffering, past and future;

    d.    Loss of earnings and earning capacity, past and future; and,

    e.    Disruption of lifestyle and enjoyment of life.

27.    Defendant Kard Corporation and/or John Doe Number Two's action in providing a unreasonably dangerous trim press and its component parts directly and proximately caused Plaintiff Douglas Groch's injuries during his use and under facts and circumstances that were foreseeable to Defendant Kard Corporation of the trim press.


## COUNT FOUR

28.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one through twenty-seven inclusive as if set forth in full.

29.    Defendant Racine and/or John Doe Number Three owed a duty to Plaintiff and others similarly situated to provide a product reasonably safe for all reasonable, foreseeable and intended uses of the product.

30.    Defendant Racine and/or John Doe Number Three failed to provide the trim press and its component parts at issue in this case in a reasonably safe condition for all reasonable, foreseeable, and intended uses in one or more of the following respects:

10

    a.    Defectively designing the trim press and/or its component parts in an unreasonably unsafe manner;

    b.    Defectively manufacturing the trim press and/or its component parts in an unreasonably unsafe manner;

    c.    Failing to adequately warn and/or instruct Plaintiff or others similarly situated of the hazards, risks, and dangers Plaintiff faced when the trim press and/or its component parts is/are used;

    d.    Breaching express and implied warranties made to Plaintiff or others similarly situated regarding the trim press and/or its component parts;

    e.    Failing to instruct and/or warn users regarding the proper use of the trim press and/or its component parts;

    f.    Defectively designing the trim press and/or its component parts without proper safety features;

    g.    Defectively manufacturing the trim press and/or its component parts without proper safety features; and,

31.    As a direct and proximate result of Defendant Racine and/or John Doe Number Three's failure as set forth above, Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to, the following:

    a.    Severe and permanent injuries, scarring, and disfigurement to his arm and leg;

    b.    Medical expenses, past and future;

    c.    Pain and suffering, past and future;

    d.    Loss of earnings and earning capacity, past and future; and,

11

    e.       Disruption of lifestyle and enjoyment of life.

32.    Pursuant to Ohio Revised Code § 2307.71, et seq., and Ohio common law, Defendant Racine and/or John Doe Number Three are strictly liable to Plaintiffs for the injuries and losses they suffered.

33.    Defendant Racine and/or John Doe Number Three's action in providing an unreasonably dangerous trim press and its component parts directly and proximately caused Plaintiff Douglas Groch's injuries during his use and under facts and circumstances that were foreseeable to Defendant Racine and/or John Doe Number Three of the trim press.

## COUNT FIVE

34.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one through thirty-three inclusive as if set forth in full.

35.    Defendant Racine and/or John Doe Number Three owed a duty to Plaintiff Groch and others similarly situated to provide a product reasonably safe for all reasonable, foreseeable and intended uses of the product.

36.    Defendant Racine and/or John Doe Number Three breached that duty when they failed to provide a trim press and/or its component parts at issue in this case in a reasonably safe condition for all reasonable, foreseeable, and intended uses in one or more of the following respects:

    a.       Negligently designing the trim press and/or its component parts at issue in this case in an unreasonably unsafe manner;

12

b.   Negligently manufacturing the trim press and/or its component parts at issue in this case in an unreasonably unsafe manner;

c.   Negligently failing to adequately warn and/or instruct Plaintiff or others similarly situated of the hazards, risks, and dangers Plaintiff faced when using the subject trim press and/or its component parts; and/or

d.   Negligently breaching express and implied warranties made to Plaintiff or others similarly situated regarding the trim press and/or its component parts at issue in this case.

37.   As a direct and proximate result of Defendant Racine and/or John Doe Number Three's breach as set forth above, Plaintiff Douglas Groch sustained severe, permanent and disabling injuries including, but not limited to,

a.   Severe and permanent injuries, scarring, and disfigurement to his arm and leg;

b.   Medical expenses, past and future;

c.   Pain and suffering, past and future;

d.   Loss of earnings and earning capacity, past and future; and,

e.   Disruption of lifestyle and enjoyment of life.

38.   Defendant Racine and/or John Doe Number Three's action in providing a unreasonably dangerous trim press and its component parts directly and proximately caused Plaintiff Douglas Groch's injuries during his use and under facts and circumstances that were foreseeable to Defendant Racine of the trim press.

## COUNT SIX

39.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one through thirty-eight inclusive as if set forth in full.

40.    At all relevant times, Plaintiff Chloe Groch was the daughter of Plaintiff Douglas Groch.

41.    As a direct and proximate result of Defendants' actions or inactions, Plaintiff Chloe Groch sustained a loss of consortium of her father, Douglas Groch.

## COUNT SEVEN

42.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one through forty-one inclusive as if set forth in full.

43.    To the extent that Ohio Revised Code Sections 4123.93 and 4123.931 and its provisions apply to this cause of action, said provisions are unconstitutional in whole and/or in part.

## COUNT EIGHT

44.    Plaintiffs incorporate by reference the allegations and averments of paragraphs one through forty-three inclusive as if set forth in full.

45.    On all relevant dates, Ohio Revised Code Section 2305.10 (O.R.C. § 2305.10) provided for a statute of repose in products liability cases.

46.    O.R.C. § 2305.10 was amended by Senate Bill 80 (S.B. 80) which was passed by the 125th General Assembly and signed by the Governor on January 6, 2005.

14

47.    To the extent that the provisions contained within O.R.C. § 2305.10 as amended by

S.B. 80, apply to this action the statute violates the constitution of the State of Ohio.

WHEREFORE, Plaintiffs respectfully pray for judgment on the above mentioned

Counts against Defendant General Motors Co., Kard Corporation, Racine, and/or John Does

Number One through Three for an award of damages in any sum of money in excess of

Twenty-Five Thousand Dollars ($25,000.00), adequate to compensate Plaintiffs for their

damages, plus costs and expenses incurred herein, prejudgment interest at the highest

statutory rate allowed by law from the date the Plaintiffs' cause of action accrued, court costs,

and such other relief as the Court deems just and equitable.


WHEREFORE, Plaintiffs further pray for a declaration that Ohio Revised Code

Sections 4123.93, 4123.931 and 2305.10 are unconstitutional in whole and/or pertinent part

and are unenforceable.

                        Respectfully submitted

                        GALLON, TAKACS, BOISSONEAULT
                        & SCHAFFER CO. L.P.A.


                        /s/ Kevin J. Boissoneault
                              Kevin J. Boissoneault
                              Bonnie E. Haims
                              Russell Gerney

Case 3:06-cv-00 __ 44-JGC    Document 243    Filed 08/06/2006    Page 16 of 16

## JURY DEMAND

Plaintiffs herein demand a trial by jury on all issues so triable in this action.

Respectfully submitted

GALLON, TAKACS, BOISSONEAULT
& SCHAFFER CO. L.P.A.


/s/ Kevin J. Boissoneault
　　　Kevin J. Boissoneault
　　　Bonnie E. Haims
　　　Russell Gerney

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS GROCH, et al., | * | Case No.: 3:06-CV-1604 |
| Plaintiffs, | * | Judge: James G. Carr |
| -vs- | * | <u>AFFIDAVIT OF GERALD RENNELL</u> |
| GENERAL MOTORS | * | |
| CORPORATION, et al., | | Kevin J. Boissoneault |
| | * | Jonathan M. Ashton |
| Defendant. | | GALLON, TAKACS, |
| | * | BOISSONEAULT & SCHAFFER |
| | | CO., L.P.A. |
| | * | 3516 Granite Circle |
| | | Toledo, Ohio 43617 |
| | * | Phone: (419) 843-2001 |
| | * | Fax: (419) 841-2608 |
| | | Attorneys for Plaintiff |
| | * | |

STATE OF MICHIGAN  )
                              )  ss
COUNTY OF OAKLAND  )

Gerald Rennell, being first duly cautioned and sworn, states and deposes as follows:

1. That I have inspected the hydraulic Kard die cast trim press and reviewed the accident reports and depositions of Rick Kirk, Randy Pudvan and Cal Hiser and the affidavit of Mr. Douglas Groch.

2. That General Motors Powertrain Division knew that the Kard press was defective and that it had made un-actuated cycles prior to the un-actuated cycle that injured Mr. Douglas Groch. This is based on the testimony of Mr. Kirk and Mr. Pudvan.

3. That General Motors knew employees were reaching in between the dies to remove parts and scrap. This was known because General Motors did not train or instruct Mr. Kirk, Mr. Pudvan or Mr. Groch not to reach between the dies.

4. That General Motors failed to test the actuating controls to determine the two hand control co-incident touch time which in this instance was six or seven seconds.

C

The maximum time should have been less than one second.

5.     That General Motors knew that such a test was necessary for the protection of their operating employees.

6.     That the combination of hands in between the dies, previous un-actuated machine cycles and failure to properly test the controls created a substantial certainty of injury that General Motors was aware of and yet failed to guard against the danger and failed to warn Mr. Grouch that he should not place his hands between the dies. This clearly shows a total disregard for the safety of its employees

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gerald C. Rennell

Sworn to before me and subscribed in my presence on this _1st_ day of
February_____, 2010

_____
Notary Public

PEGGIE L. ROEBUCK
NOTARY PUBLIC, STATE OF MI
COUNTY OF SAGINAW
MY COMMISSION EXPIRES Dec 10, 2011
ACTING IN COUNTY OF _OAKLAND_

2

Technical Safety Associates    Phone  (248) 922-3400
6988 Cranberry Lake Road    Fax    (248) 922-3401
Clarkston, Michigan 48348-4416    tech-safety@comcast.net

# GERALD C. RENNELL
### (Machine Guarding)

---

**EDUCATION:**

General Motors Institute
- Safety Engineers Training

Oakland Community College
- General Academic

Detroit Institute of Technology
- Occupational Safety

**WORK EXPERIENCE:**

General Motors – Pontiac Motors Division – 1969-1971
- Safety Engineer.
- Identification - Hazard, Risk Potential.
- Examine and Analyze potential injury producing situations.
- Accident Investigations.
- Machine Guarding Systems.

Michigan Mutual Insurance Co. – 1972-1977
- Safety Consultant.
- Identification - Hazard, Risk Potential.
- Accident Investigation.
- Evaluate products hazards for manufacturers.

McCarthy Robinson/Technical Safety Associates – 1977-Current
- Safety Consultant.
- Machine and Equipment Safeguarding Systems.
- Accident Investigation.

**ACTIVITIES:**
- Field investigation to identify hazards, evaluate risk and eliminate danger.
- Accident Reconstruction - Machinery.
- Lecture - Principles and Techniques of Machine Guarding throughout the United States.

**TEACHING EXPERIENCE:**

Safety Subjects
- Oakland Community College.
- Lansing Community College.
- Detroit Institute of Technology.

**PROFESSIONAL ORGANIZATIONS:**
- Member of the American Society of Safety Engineers.
- Member of the National Safety Council.

## VERIFYING MATERIALS FOR
## DOUGLAS GROCH
## DATE OF ACCIDENT: 3/3/05

1. Lucas County EMS
   Run Report (3/3/05)

2. Toledo Hospital
   Statement (3/3/05-3/8/05)                    $    56,071.00
   Medical Records

3. Emergency Physicians of NW Ohio
   Statement (3/3/05)                           $       251.00

4. Toledo Radiological
   Statement (3/3/05)                           $        73.00

5. Anestheisology Consultants of Toledo
   Statement (3/3/05)                           $     1,798.00

6. Dr. James Hunyadi
   Statement (3/3/05- 8/14/08)                  $    12,022.00
   Medical Records

7. St. Anne's Hospital (surgery)
   Statement (4/4/05)                           $    11,501.88
   Medical Records

8. Riverside Anesthesia Services
   Statement (4/4/05)                           $       473.00

9. Toledo Hospital (surgery - nerve graft)
   Statement (6/13/05)                          $    25,789.00
   Medical Records

10. Anesthesiology Consultants of Toledo
    Statement (6/13/05)                         $     1,860.00

11. Total Rehab
    Statement (5/2/05-1/27/06)                  $     5,946.00
    Medical Records

12.  Dr. Robert Hartwig
     Statement (5/4/05 & 1/31/06)                    $        639.00
     Medical Records

13.  Prescriptions                                   $         56.89


**TOTAL MEDICALS**                                   **$   116,480.77**

LOST WAGES:  GM Powertrain
3/4/05-4/17/05 = 31 days
$207.52/day x 31 days = $6,433.12

6/13/05-7/17/05 = 25 days
$207.52/day x 25 days = $5,188.00

$6,433.12 + $5,188.00 = $11,621.12 total lost wages

**GM POWERTRAIN**                                        **Toledo Transmission Plant**

| | Near Miss | | | |
|---|---|---|---|---|
| | Recordable Incident 2005 | 21349 | **SAFETY INCIDENT REPORT** | x | Preliminary |
| x | Lost Workday Case | | (Please Print or Type) | | Final |

| Name: | Douglas S. Groch | Age: | 39 | Sex: | M | | 1611 | Badge: | 5776 |
|---|---|---|---|---|---|---|---|---|---|

Regular Job Classification: Die Cast Machine Operator   Sen. 2/11/85   Supervisor: G. Ziliak

Incident Date: 3/3/2005   Time: 11:33          Plt 2 F-1 Die Cast Machine

Injury/Illness: Amputation of Ulna head          Refer to Ergonomics: Y or N?   N

Treated by: Emergency room   Treated at: Toledo Hospital   Lost Work Days: ____

Restricted Days: ____

**Describe the Assigned Task:**

Employee was assigned to operate F-1 die cast machine. The work is to operate the die cast machine, remove the casting with attached gate and runners, load it to the trim die and activate the trim press, cycle the trim press and dispose of the parts down the chute

**Describe the Incident:**

The employee had loaded a casting into the trim die of the trim press. He then pulled on the two safety arms to activate the trim press. While doing this he noticed something wrong in the die. He reached in with his right hand while continuing to hold on to the left safety arm and somehow activated the right safety arm. The trim die continued down and caught the employee's right forearm between the right front die alignment post and the bushing in the upper half of the die. Possible contributing factors being investigated are 1) possible malfunction of the right safety arm switch or anti-tie down circuit; 2) the air hose hanging on the right hand safety arm holding the srm on the switch; 3) weak springs on the safety arm; 4) intermittent loss of power to the hydraulic system.

**Detail the Contributing Factors: (e.g.: 5 Why's, Root Cause Analysis, etc.)**
**WHY DID INCIDENT OCCUR?**

1) Why? employee noticed something wrong in the die

2) Why? employee reached into the die

3) Why? employee's hand was pinched between the lower trim die post and upper trim die bushing

4) Why? The trim press cycled with employees hand in the trim die

5) Why? Employee somehow reactivated the rt hand safety arm while continuing to hold on to the left safety arm

Date of Latest Safety Contact: 2/28/2005   Subject: Take shelter   Given by: G. Ziliak

How Long has this Person been Performing this Task: 5 years

Are Written/Standard Procedures Developed for this Task:   Yes x   No ____

Latest Date these Procedures were Reviewed with this Person: 4/28/2004   By Whom: R. North

If Recordable, Describe the Reason:
amputation

If a Lost Workday Case, Describe the Reason:
Employee in hospital for reconstructive surgery

If a Lost Workday Case, Is Suitable Alternate Work Assignment Available:   Yes ____   No ____

Has Alternate Work Assignment been Offered:   Yes ____   No ____

*"Safety is the Overriding Priority"*          *"All Incidents Can Be Prevented"*

E

**POSSIBLE ALTERNATIVES AND CORRECTIVE ACTIONS**

NAME: | Douglas S. Groch

Alternatives and corrective actions should be based upon the "Hierarchy of Health & Safety Controls." The single most important outcome that can result from an incident is the implementation of effective, high safety controls to prevent or significantly reduce the chance of the incident reoccuring. The Hierarchy is defined by 5 levels of safety controls. The top 2 levels, "Elimination/Substitution" and "Engineering" controls are by far the most effective in preventing or reducing the reoccurrence of an incident because they rely much less on human behavior, are more difficult to defeat, and require much less continuing human effort than lower level controls. As alternatives are developed and corrective actions planned, every effort should be made to implement the top 2 levels (Elimination/Substitution and Engineering) of controls.

**Hierarchy of Health & Safety Controls**

**Most Effective**

1) Elimination/Substitution
2) Engineering Controls
3) Warnings
4) Training & Procedures
5) Personal Protective Equipment

**Least Effective**

| Alternative | Action to be Taken | Who is Responsible | Target Date |
|---|---|---|---|
| **1) Elimination/Substitution:** | | | |
| Eliminate pinch point between post and bushing | Extend length of busing so always engaged with the pin | M. Venia | 3/24/2005 |
| **2) Engineering Controls:** | | | |
| Check electrical system function | 1. Check safety arm swithes and circuit for proper function - OK 3-3-05 | L. Young | 3/3/2005 |
| Proper Safety Arm operation | 2. Move location of stop switch | L. Young | 3/9/2005 |
| | 3. Reset timer to .5 sec on anti tie down | L. Young | 3/3/2005 |
| | 4. Install air hose hanger bracket | C. Smith | 3/3/2005 |
| | 5. Replace safety arm return springs | C. Smith | 3/3/2005 |
| | 6. Check proper operation of safety on all machines | L. Young | 3/3/2005 |
| Improve safety system | 7. Investigate light screens | D. Bastian | 3/9/2005 |
| | 8. Redesign and install safety system similar to F-2 with dual swithes to activate rear mounted air disengaged safety bars | M. Venia | 6/4/2005 |
| | 9. Shorten grip arm length on safety arms | L. Young | 3/4/2005 |
| | 10. Investigate slowing downward motion of trim die | M. Venia | 3/9/2005 |
| **3) Warnings:** | | | |
| Proper safety arm operation | Hang sign stating " Do not hang air hose from safety bar | L. Young | 3/4/2005 |
| | Hang sign stating "Release both safety arms before reaching into the die | L. Young | 3/4/2005 |
| **4) Training/Procedures:** | | | |
| Daily check of safety system | Add a daily check of safety system functionality to JES | M. Laming | 3/9/2005 |
| PM safety system | Set-up PM card to change springs on schedule | M. Kuzak | 3/9/2005 |
| **5) Personal Protective Equipment:** | | | |
| | | | |

**Disposition, Notes and Comments on this Incident:**
Steve Betz the E-4 operator has noticed that the injured employee has a habit of hanging on to the left safety ba
continuously while cleaning out the trim die with his right hand

| Prepared by: | J. Finkler | | |
|---|---|---|---|
| Title: | Business Team Manager | Dept: | BT 600 |
| | | Date: | 3/3/2005 |

GM-GR 00002

| | | |
|---|---|---|
| Supervisor's Signature: | G. Ziliak | Date: _____ |
| Business Team Manager: | J. Finkler | Date: _____ |
| Safety Supervisor: | _____ | Date: _____ |
| Plant Manager: | _____ | Date: _____ |

**LOST WORKDAY CASE REPORTS MUST BE SUBMITTED TO THE FOLLOWING WITHIN 48 HOURS:**
Group Manufacturing Director, Group Safety Director, Center for Health & Safety

GM-GR 00003



**G.R.I.T.** Global Reporting & Investigations Tool

## GM/SECURITAS Incident Report

---

**Section 1**

Incident ID: 17527

Region: GM North America

Facility/Building/Plant: GMPT Toledo

Address: 1455 West Alexis Road

State/Province: Ohio

Country: USA

Telephone Number: 419-470-5149

Group/Division: Powertrain

Floor:

City: Toledo

Zip/Postal Code: 43612

Location Description: Plant #2 Procuction Office F-2

Contract/Account Number: 120894

---

**Section 2**

Type of Report: Final

Production Shutdown: Yes

Date & Time of Incident: 03/03/2005 11:33

Estimated Time/Hours: 23

Estimated Value Loss(in Dollars): $0.00

---

**Section 3**

Incident Type(s):  Medical Assistance

---

**Section 4**

Miscellaneous/Other Description:

---

**Section 5**

Person Reporting Incident

First Name:                    M.I:                    Last Name: UNK

Department/Telephone No.:                    Type: Hourly

---

**Section 6**

Description of Incident:

On 3/3/05 at 11:33 am S/O Crouch received a call at the Eastgate reporting a medical run at Plant #2 Production Office. S/O Crouch toned out the Rescue Team and notified SGT Lesher and S/O Brown (Patrol Officer). SGT Lesher arrived on the scene at 11:36 am with two members of the Rescue Team. Upon entering the Production Office SGT Lesher observed GM Hourly Employee Doug Groch (1611) lying on his back and holding what appeared to be a large heat resistant glove, that is used in Plant 2, on his right foreman. It was discovered that Mr. Groch had been severely cut, and had lost a considerable amount of blood. SGT Lesher attempted to notify the Plant Medical Dept. to advise them of the severity of the injury. The Medical Dept. did not acknowledge SGT Lesher's attempt.

At 11:38 am SGT Lesher contacted Eastgate and requested that 911 be called for outside assistance. At approximately11:40am S/O Brown arrived on the scene with the Plant Ambulance. Mr. Groch was loaded onto the strecher and was transported to Medical at 11:45 am. At11:47 am the ambulance arrived in Medical where members

---

GM-GR  00004

F

**GM POWERTRAIN**

No.:    GMPT 2005 -02
03/06/2005

# PRO-ACT SAFETY BULLETIN

## SERIOUS INJURY – TOLEDO TRANSMISSION

On Thursday, March 3rd, a 39 year old machine operator was seriously injured while operating a hydraulic trim press used to remove excess material from newly formed aluminum castings. The operation separates 4 small parts held together by runners which are formed when the molten aluminum is injected into a die cast machine on a previous operation. The operator observes that the material is properly placed in the die area of the hydraulic press, and then by pulling back two overhead horizontal bars, the hydraulic cylinder comes down cutting the excess material away from the parts. After the cylinder retracts, the operator uses a metal hook to push away any remaining excess material.

Just prior to the incident, the operator heard a noise and presumed the hook had fallen in the die area. He moved forward in front of the actuator bars and reached into the die area in an attempt to retrieve the hook. In doing so, he had his left hand already on the upper left actuator bar and reached in with his right hand. He was unable to locate the hook, but as he started to move back, his right shoulder apparently nudged the upper right actuator bar now behind his shoulder, and the cylinder came down. His right arm was crushed and nearly severed about 5" above the wrist. Quick emergency response at the plant and attention at a local hospital resulted in a successful surgical repair for the majority of the damage. Rehabilitation should result in movement of the wrist, thumb and at least two forefingers. The right ring finger and little finger are attached; however there is very little feeling in those fingers at this time.



Actuator Bars

The investigation revealed that an air hose used to assist in clearing the die area was hung over the right actuator bar. The return springs for the actuator bars were weaker than designed and the control system allowed for a lengthy delay in the simultaneous activation of the two hand controls.

This hydraulic trim press and other similar equipment have been examined by the qualified electricians, machine repairmen and control engineers at the Toledo plant. All return springs have been checked for proper tension and replaced as needed. The horizontal lengths of the actuator bars have been shortened. A safe work procedure has been refined to notify employees not to hang anything on the bars during operation and requiring a 'two hand' pre-operation safety check prior to the work shift. The cycle initiation delay has been replaced with a pre-set, non adjustable timer with less than a ½ second setting. Installation of more conventional two hand controls is the preferred improvement and is already in development for installation upon design approval. Installation is expected within the next several days.

While this equipment is very unique to the Toledo plant, all GMPT plants are to review operations, processes and equipment using two hand control or similar safeguards. At a minimum, these devices and safeguards are to be evaluated for conformance to appropriate anti-repeat and anti-tie down specifications. All such operations shall include a safe work procedure to include a pre-operation safety check before each work shift.

Published By:          GM Powertrain Health & Safety          Phone: 248-857-0106
777 Joslyn Road          Fax: 248-857-0051
Pontiac, MI 48340-2925

GM-GR  00006

G

To: Tom Kinman
From: Dana Eggenton
Date: 3/4/05
Subject: Serious Hand Injury

*LANA'S WRITE-UP*

Division: Powertrain

Local Union # 14

Employee's Name: Douglas Groch

Date of Birth: 5/26/66

Soc. Sec. No: 288-08- 2767

Date of Incident: 3/3/05

Time Approx. 11:33am

Seniority Date: 2/11/85

Department: 611 Die Cast

**This is a description of the incident as of 3/4/05.** On Thursday 3/3/05 Mr. Groch started to work @ 7:00am in his regular department and reported to his regular job to find out that Die Cast Machine F-4, was down for a Die change, His supervisor Gary Ziliak @ 8:30am told him to go and run Die Cast Machine F-1 which is located three machines to the west on the same aisle. At 11:00am Doug came to his supervisor Gary, and told him that his Trim press that he was running lost power and Doug did not know how to restart it. Gary went over to the machine with Doug and showed him how to restart it. Gary told him to follow these steps to restart the machine. First turn the switch to the left which reads "Start- set-up" and then push the button that reads "Start Motor" then turn the switch from "Start-setup" to the right that reads "Run-Auto", then the machine started and I walked away.

Mike Sperling, runs the Die Cast Machine F-2, which is the machine located right next to the machine that Doug was running, Mike said, Doug came over to him about 11:15am and told him that his machine lost power again and he could not remember how to get it started. Mike told him to turn the switch left that reads "Start-setup" and then push the green button, after you push the green button turn the switch from the "Start-setup" to the right to "Run-Auto". Mike followed him back to his machine, as I stood out in the aisle I watched him to make sure he got the machine restarted. As I was still in the aisle, I watched him restart the machine and run it for a couple of minutes to make sure everything was OK, then I walked back to my machine.

GM-GR 00008

H

Howard Raker which is a Alloy Melter Die Cast, was in the production office filling out his vacation papers when Doug walked in and said, I got my hand caught in the die and I'm hurt really bad and I need an Ambulance to come and get me. Howard looked up and saw that Doug was bleeding really badly. At that time Howard picked up the phone and called 911, our in plant rescue team. After he hung up the phone he grabbed a welders coat that was sitting on the desk and wrapped it around the top of Doug's right arm as tight as he could and told Doug to sit down right there on the floor. Howard then applied pressure around the top of the arm as tight as he could until fellow worker Don Felker walked in to help. Don and Howard switched back and forth applying pressure to Doug's arm as tight as they could until the rescue team arrived.

These are the findings as I know them as of this time. The Die Cast Machine was locked out immediately, and skilled trades employees Ronald Napierala, an Electrician, and Dale Bastian, a Tool Maker were assigned to inspect the trim press. The only thing that the electrician could find was a cover that off of a limit switch, which he said would not make the machine malfunction and a anti-tie down switch that is located inside the electrical panel that was set at 7 seconds. Dave Thorp from Powertrain Safety said that this switch should be set at 1 second not 7. That was the only electrical or mechanical issues that were found with the trim press at this time.

If any further information is needed please call.

Dana Eggenton
UAW Health & Safety Rep.
Local # 14
419-470-5046

GM-GR 00009

# FIRST DRAFT VERSION

Douglas S. Groch

Age:          38 years old
S.S.          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

Sen. Date     2/11/1985

F-1 die cast machine B.T. number on trim press is 4406 at Bay F2

Operator on the small parts line for (8) months. Normally runs the F-4 die cast machine.

Operator Doug Groch usually runs the F-4 die cast machine on the small parts line. At 8:30 this morning his machine went down for repairs and he was moved to the F-1 machine.
At approximately 10:00 a.m. the F-1trim press had dropped out of cycle. Mr. Groch was shown how to reset the trim press and return to automatic cycle by Michael Sperling fellow die cast operator, who runs the machine next to him. The procedure entailed turning the cycle selector switch the left which reads (Start-Set-Up), then push the (Start Motor) button, followed by turning the switch from (Start-Set-Up) to (Run –Auto). This restores the trim press to run another cycle.
At approximately 11:10 the machine dropped out of cycle again. Mr. Sperling again reviewed with Mr. Groch how to reset the machine and walked away after watching him cycle the trim press successfullyl.

At approximately 11:30 Mr. Groch experienced a severe crushing injury to his right hand when the trim press came down upon his wrist. The operator suffered an injury to his right wrist being caught by the punch die. The punch die punctured his wrist, leaving a portion of his small wrist bone in the die. The operator walked to the production office on his own, and upon seeing his injuries a fellow employee notified the emergency response team through Plant Security.

Initial investigation is unclear as to how the trim press activated with Mr. Groch's hand inside the die area. It is not clear if the operator was reaching into the trim press to brush out the flash that was present, and upon attempting to back out of the machine brushed against both safety bars, pulling them back to make the limit switches causing the trim press to cycle.

Another hypothesis is that the operator had his left hand on the left safety bar, and may have stepped on the air line causing the right hand safety bar to be pulled back, causing the trim press to cycle. The operator had the air blow-off nozzle with air hose attached hanging on the right hand safety bar.

GM–GR  00013

Electricians and the electrical controls engineer evaluated the machine controls following the incident. The electricians checked the complete cycle function, all limit switches and safety bars to determine correct operation. Two machines, F-1 and F-4 have Allen Bradley timer control that regulate the safety bars. The timing of this relay upon investigation late this afternoon indicated that the relay was set at 7 seconds. This has been corrected, and reset at less than 1 second.

Two employees assisted Mr. Groch, Don Felker and Howard Raker. Upon seeing his injuries, they grabbed a coat, wrapped his arm and layed him down on the floor until the emergency response team showed up.

Details will be forwarded when a complete investigation is conducted.

GM-GR  00014

# State of Ohio
# Bureau of Workers' Compensation
# Safety Violations Investigation Unit

## REPORT OF INVESTIGATION

### JUNE 12, 2007

### TO THE INDUSTRIAL COMMISSION OF OHIO:

**THIS CLAIM HAS BEEN INVESTIGATED TO DETERMINE WHETHER THE OCCUPATIONAL INJURY, DISEASE, OR DEATH OF THE CLAIMANT WAS CAUSED BY THE EMPLOYER'S VIOLATION OF A SPECIFIC SAFETY REQUIREMENT**

### CLAIM NUMBER: 05-817844

**CLAIMANT:**
DOUGLAS S. GROCH
526 SIOUX TRAIL
ROSSFORD, OH 43460-1530

**CLAIMANT'S REPRESENTATIVE:**
GALLON & TAKACS
ATTN: THEODORE A. BOWMAN
3516 GRANITE CIRCLE
TOLEDO, OH 43617-1172

UAW LOCAL 14
ATTN: J. CHAPMAN
2669 LATONIA BOULEVARD
TOLEDO, OH 43606-3621

**EMPLOYER:**
GENERAL MOTORS CORPORATION
POWERTRAIN DIVISION
1455 W. ALEXIS ROAD
TOLEDO, OH 43612-4044

GENERAL MOTORS POWERTRAIN DIV.
GM NATIONAL BENEFIT CENTER
P.O. BOX 69
SOUTHFIELD, MI 48037-0069

**EMPLOYER'S REPRESENTATIVE:**
BUGBEE & CONKLE
ATTN: GREGORY B. DENNY
405 MADISON AVENUE, SUITE 1300
TOLEDO, OH 43604-1226

### CODES CITED:

4123:1-5-11 (E) (1) – (6)

J

CLAIM NO. : 05-817844
CLAIMANT : DOUGLAS S. GROCH
EMPLOYER : GENERAL MOTORS CORPORATION

## DISCUSSION:

1. The on-site investigation was performed at General Motors Corporation Powertrain Division, 1455 W. Alexis Road, Toledo, Ohio on May 22, 2007. This Investigator met with Gregory B. Denny, employer's representative, who was present during the entire on-site investigation. This Investigator also met with General Motors Corporation employees Pat Gallagher, human resources assistant manager, and Bob Wise, die casting business team manager. The employer submitted the available requested information to this Investigator at the time of the on-site investigation.

2. According to the information obtained during the investigation of this VSSR claim, Injured Worker Douglas S. Groch was employed as a die cast machine operator and the injury of record occurred on March 3, 2005. Mr. Groch was injured when a trim press cycled and closed on his right arm while he was manually removing scrap from the press.

3. The employer stated the machine involved in the injury of record was a Kard 50-ton trim press with Serial Number 77K-4389-1. The employer continued the involved trim press was purchased on April 1, 1978 and was internally labeled as the F-1 die cast machine. The employer further indicated the involved machine was hydraulically powered with secondary pneumatic operations. The employer indicated the involved machine was removed from service in June 2006 and was sold to a company called ICG Castings located in Michigan. The employer further stated the involved machine was located in plant #2 and was taken out of service when plant #2 was renovated. Therefore, this Investigator was unable to obtain photographs of the involved Kard trim press. The employer submitted black and white photographs of the involved machine for consideration, see Exhibit #8.

4. The employer stated the involved Kard trim press was equipped with dual safety arms that required simultaneous actuation to trip the press. The employer further stated the operator of the trim press had to maintain a constant pulling force on both safety arms during the cycling of the press. The employer indicated the design of the dual safety arms prevented an operator from reaching into the press while the press was in motion.

5. The employer stated their internal investigation of the incident of record did not produce a determining factor of the cause of the incident. It is indicated on the Safety Incident Report submitted by the employer that "Possible contributing factors being investigated are 1) possible malfunction of the right safety arm switch or anti-tie down circuit; 2) the air hose hanging on the right hand safety arm holding the arm on the switch; 3) weak springs on the safety arm; 4) intermittent loss of power to the hydraulic system." The employer indicated modifications were made to the involved press after the incident of record and are described in the Safety Incident Report, see Exhibit #2.

6. On March 15, 2007 this Investigator met with Injured Worker Douglas S. Groch and obtained an affidavit. Mr. Groch stated he began his employment with General Motors Corporation on February 11, 1985 and he was employed as a DCMO (die caster machine operator) at the time of his injury. He further stated his job duties as a DCMO involved operating the pneumatically/hydraulically-powered die and trim presses located in Department 611.

7. Injured Worker Douglas S. Groch stated that on March 3, 2005 he was assigned to work on an alternative die and trim press because his normal die and trim press were down for repairs. Mr. Groch continued the trim press was actuated by pulling back on two metal handles located on each side of the opening of the press. He further stated he would remove excess material (gates and flashing) from the trim press and throw the material in a gondola hopper. Injured Worker Douglas S. Groch indicated there were four completed parts coming from the trim press after each cycle of the machine.

8. Injured Worker Douglas S. Groch stated the trim press lost power on the day of his injury at approximately 11:00 a.m. Mr. Groch continued he reported the problem to Gary Zilliak, supervisor, and Mr. Zilliak reset the power to the machine. He further stated the press lost power again at approximately 11:20 a.m. and Jeff Spurling, coworker, reset the power to the machine. Injured Worker Douglas S. Groch indicated that at approximately 11:30 a.m. he was

CLAIM NO. : 05-817844
CLAIMANT : DOUGLAS S. GROCH
EMPLOYER : GENERAL MOTORS CORPORATION

in the process of removing flashing from the trim press when the trim press cycled and closed on his right forearm, wrist, and hand.

9. Injured Worker Douglas S. Groch stated he was performing his job duty at the time of his injury. Mr. Groch continued it was part of his job duty to remove excess material from the trim press and this is what he was doing when the press closed on his hand. He further stated he was not pulling on the metal handles of the trim press at the time of his injury.

10. Injured Worker Douglas S. Groch stated the trim press he was injured on was not equipped with safety guards to prevent entry of his hands inside the press while it was in operation. Mr. Groch continued the trim press did not have pullback guards or any other safety guards to prevent entry of his hands inside the press while it was in operation. He further stated the trim press was not equipped with an electronic eye or presence sensing device.

## EXHIBITS:

1. Affidavit of Injured Worker Douglas S. Groch. 2 pages.

2. Copy of Safety Incident Report submitted by employer. 2 pages.

3. Copy of GM/SECURITAS Incident Report submitted by employer.

4. Manufacturer, model, serial number, and purchase date of the involved trim press submitted by employer.

5. Copies of maintenance records for the involved trim press submitted by employer. 18 pages.

6. List of personal protective equipment furnished by the employer. Document submitted by employer.

7. Copy of Training History Report for Injured Worker Douglas S. Groch submitted by employer.

8. Copies of black and white photographs depicting the involved Kard trim press submitted by employer. 8 pages.

9. Information Request.

10. Copies of four – (4) color photographs depicting the involved Kard trim press submitted by Theodore A. Bowman, Injured Worker's representative. 4 pages.

## SVIU VIDEO CLIPS:

If digital video clips are available, a CD-ROM disc will accompany this Report of Investigation. Insert the CD into any computer loaded with Microsoft Word/Office 97, 2000, or XP. Go to "My Computer", and then open the CD-ROM drive. Locate and open the Report of Investigation (ROI) and double-click on the video clip(s) displayed below to play the video. **If the videos do not play inside of the report they can be accessed directly on the CD.**

No digital video clips available.

Respectfully submitted,

*Fred M. Freeman*

Fred M. Freeman
Special Investigator

Supervisor's Initials _____

STATE OF OHIO
BUREAU OF WORKERS' COMPENSATION
SAFETY VIOLATIONS INVESTIGATION UNIT

In the Matter of the Claim of:                                    Claim Number: 05-817844

DOUGLAS S. GROCH

v.

GENERAL MOTORS CORPORATION

## Affidavit of Douglas S. Groch

State of Ohio
County of Lucas

**Name: Douglas S. Groch**                                        **Age: 40**
**Home Address: 526 Sioux Trail Rossford, Ohio 43460**
**Location Affidavit Taken: 3516 Granite Circle, Toledo, Ohio 43617**

I, Douglas S. Groch, upon my oath, depose and state that the following statement is the truth to the best of my knowledge:

1. I am the Injured Worker in the matter of this VSSR claim.

2. I began my employment with General Motors Corporation on February 11, 1985. I was hired to perform the job of assembler at the Powertrain Plant on Alexis Road in Toledo, Ohio. I was employed as DCMO (die caster machine operator) at the time of my injury. My job duties as a DCMO involved operating the pneumatically/hydraulically-powered die and trim presses located in Department 611. I received initial on-the-job training for my job duties as a DCMO.

3. On March 3, 2005 I was assigned to work on an alternative die and trim press because my normal die and trim press were down for repairs. I reported to the die and trim press I was assigned to and performed seven warm up shots on the die cast machine. After the die cast machine was ready I started production. I would transfer recently poured parts from the die cast machine to the trim press so the excess material could be trimmed from the parts. The trim press was actuated by pulling back on two metal handles located on each side of the opening of the press. I would remove excess material (gates and flashing) from the trim press and throw the material in a gondola hopper. I would then repeat the process. There were four completed parts coming form the trim press after each cycle of the machine.

4. On the day of my injury at approximately 11:00 a.m., the trim press lost power. I reported the problem to my immediate supervisor, Gary Zilliak, and he reset the power to the machine. At approximately 11:20 a.m. the trim press lost power again so I sought assistance from Jeff Spurling, coworker, and he came over and reset the power to the machine. At approximately 11: 30 a.m., I was in the process of removing flashing from the trim press when the trim press cycled and closed on my right forearm, wrist, and hand.

_____
Douglas S. Groch, Affiant

Sworn to and subscribed before me this March 15, 2007

_____
Fred M. Freeman, Special Investigator

K

5. I was performing my job duty at the time of my injury. It was part of my job duty to remove excess material from the trim press and this is what I was doing when the press closed on my hand. I was not pulling on the metal handles of the trim press at the time of my injury.

6. The trim press I was injured on was not equipped with safety guards to prevent entry of my hands inside the press while it was in operation. The trim press did not have pullback guards or any other safety guards to prevent entry of my hands inside the press while it was in operation. The trim press was not equipped with an electronic eye or presence sensing device.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Douglas S. Groch, Affiant

Sworn to and subscribed before me this March 15, 2007

_____
Fred M. Freeman, Special Investigator

2/3/08

Rick Kirk

102 Browne Dr.

Haskins, Ohio 43525


To whom it may concern:

In regards to the industrial accident suffered by Doug Groch in March of 2005 at the Toledo Powertrain plant, I would like to comment. At the time of this accident I was the operator of the same machine on a different shift. We had been having ongoing problems with the trim press attached to this machine. The springs which return the safety bars to the home position were loose and worn out. This piece of equipment was not being maintained properly. I had on one occasion witnessed the press come down on its own; luckily I was standing back from the machine.

Although the maintenance of the machine in question (F-1) was lacking, we were continually told to go ahead and run it. Repeated requests for the press to be repaired went unanswered. I had been a die cast machine operator for 15 years at the time of Doug's accident, and was quite familiar with all of the machinery. Simple preventive maintenance could have avoided this whole situation. Doug is lucky he did not lose his hand or even die.


Feel free to contact me if you need to as I am willing to sign a sworn statement to all of the above.


Ricky D Kirk

(419)823-6025

To Whom it may concern:

My name is Randy Pudvan, I hold a committee job at Powertrain.  I am writing this letter to explain what had happened to me on F-4 in plant 2, pryer to the incident that had happened to Doug.  I had this same machine cycle on its own, and refused to run this job.  Management had this job down for a day and a half.  I was told by management that the spring had been changed in the cycle arm to fix the problem. In behalf of Doug, I do believe this machine had failed.  I am sorry I do not have any dates.

Thank you
Randy (Puddy) Pudvan

Randal J Pudvan
(419) 343-3445