**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------

**In re**

**MOTORS LIQUIDATION COMPANY, et al**
**f/k/a General Motors Corp., et al,**

**Debtors.**

**Chapter 11 Case No.**
**09-50026 (REG)**

**(Jointly Administered)**

--------------------------------------------

### OBJECTION OF DESIGNATED CLAIMANT
### TO MOTION OF DEBTORS FOR ENTRY OF ORDER
### PURSUANT TO 11 U.S.C. 105(a) AND GENERAL ORDER
### M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE
### RESOLUTION PROCEDURES, INCLUDING MANDATORY MEDIATION

Comes now Jake W. Rodd, a Designated Claimant, and enters this

Objection to MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11

U.S.C. 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTAT-

ION OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES, INCLUDING

MANDATORY MEDIATION, and as reason therefore says as follows:

1.  I request a review by the Bankruptcy Judge of my Claim against

General Motors in the matter of the Notice of Hearing to be held before your

Honor on February 10, 2010, and do not consent to Binding Arbitration of

my Claim.

2.  Please note the attached labeled exhibits.

A.  "Exhibit A" is correspondence with Lisa Cudworth, Claims

Administrator for ESIS/GM Central Claims Unit, dated January 3, 2008, and

January 9, 2008, attempting to resolve my claim with General Motors. In

Exhibit A, as well as a copy of the envelope sent to Mr. G. Richard Wagoner,

Jr., GM Chairman and CEO. I did not receive a response to my letter, and

Ms. Cudworth stated "I don't have to talk to you about this". GM never

contacted me again; therefore, I requested the assistance of the United

States Bankruptcy Court Southern District of New York in resolving my claim

against General Motors.

B. "Exhibit B" outlines the procedure done in his Operative

Procedure to stabilize my neck after my injuries, done by Dr. Javier Garcia-

Bengochea, M.D. at St. Vincent's Medical Center, Jacksonville, Florida on

April 15, 2005.

C. "Exhibit C" contains two Reports from the Northside Imaging

Center, Jacksonville, Florida, dated November 15, 2005, performed by Dr.

Daniel Wardrop, Radiologist, which speak to the result of the injury to my

spinal cord, which I will have to live with for the rest of my life. The Reports

contain outlined medical findings.

D. "Exhibit D" contains Dr. Thomas Abbey's Narrative Report,

dated December 14, 2005, outlining my diagnosis and prognosis. Dr.

Abbey, of the North Florida Medical Associates, Inc., Jacksonville, Florida,

has given me a 30-32% impairment rating according to the American

Medical Association's "Guide To the Evaluation of Permanent Impairment."

Also contained in Exhibit D is Dr. Javier Garcia-Bengochea's opinion that I may have suffered an aggravation as a result of my fall at the tailgate of my truck, and his Permanent Impairment rating of twelve percent based on the Florida Impairment Rating guide. He further states "This is permanent."

E. "Exhibit E" contains Attending Physician's Report for Auto-owners Insurance Company, Lansing, Michigan, dated April 27, 2005, outlining examination dates for my injury, which are signed by Dr. Thomas E. Abbey.

F. "Exhibit F" is a copy of repairs done on my 2002 Chevrolet Avalanche Truck by Nimnicht Chevrolet Body Shop, Jacksonville, Florida, on August 13, 2004, after the tailgate collapsed because the straps broke. The dealership did repairs to the cables, hinges, and moldings at no cost because of the defective straps. However, GM again did not resolve my personal claim, only repaired my truck at the time.

G. "Exhibit G" is a Witness Statement dated September 1, 2006, by Mr. Michael W. Williams of Jacksonville, Florida, who was also on the back of the truck when the straps of the tailgate broke and the tailgate collapsed.

H. "Exhibit H" is an X-ray dated June14, 2005, of the neck fusion done to my neck by Dr. Javier Garcia-Bengochea.

WHEREFORE, I ask the Court as follows:

1. In Lieu of General Motors actions in the matter of my claim, I

request a review of enclosed documents by the Honorable Robert E. Gerber,

United States Bankruptcy Court Judge, in Room 621, of the United States

Bankruptcy Court for the Southern District Court of New York, in resolving

the matter of my claim;

    2.  To exempt my claim from Binding Arbitration;

    3.  Such other and further relief as the Court deems just and equitable

in the premises.

JAKE W. RODD
111 E. 1st St. #26
Jacksonville, Florida 32206
(904) 418-1907

STATE OF FLORIDA )

COUNTY OF DUVAL )

    BEFORE ME this day personally appeared JAKE W. RODD, who
produced identification in the form of _Fla. Dr. Lic._ and after having
been duly sworn, says that the above is true and correct to the best of his
knowledge and belief.

NOTARY PUBLIC

NORMA E. LYON
NOTARY
MY COMM. EXPIRES
DEC. 5, 2011
No. DD 724942
PUBLIC
STATE OF FLORIDA

    I HEREBY CERTIFY that a copy of the foregoing has been furnished to
HONORABLE ROBERT E. GERBER, United States Bankruptcy Judge, Room
621, United States Bankruptcy Court Southern District N.Y., One Bowling
Green, New York, New York, 10004, by Overnight delivery of 3.5 inch disk as
well as hard copy delivered to Chambers, and to WEIL, GOTSHAL & MANGES

LLP, Attorneys for Debtors, 767 Fifth Avenue, New York, New York, 10153, (Attn: Joseph H. Smolinsky, Esq.), Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit, Michigan, 48243 (Attn: Ted Stenger), General Motors, LLC, 300 Renaissance Center, Detroit Michigan, 48265 (Attn: Lawrence S. Buonomo, Esq.), Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York, 10281 (Attn: John J. Rapisardi, Esq.), United States Department of the Treasure, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D. C. 20220, (Attn: Joseph Samarias, Esq.), Vedder Price, P. C., 1633 Broadway, 47th Floor, New York, New York, 10019 (Attn: Michael J. Edelman, Esq.), Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, (Attn: Thomas Moers Mayer, Esq.), Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.) And U. S. Attorney's Office, S. D. N. Y., 86 Chambers Street, Third Floor, New York, New York, 10007 (Attn: David S. Jones, Esq.) by United States Mail Delivery, this ___1___ day of ~~January~~, February, 2010, A. D.

Jake W. Rodd
111 East 1st St. #26
Jacksonville, Florida 32206

111 E. 1st Street
Unit #26
Jacksonville, FL 32206

General Motors Corporation
Mr. G. Richard Wagoner, Jr.
GM Chairman and CEO
100 Renaissance Centre
Detroit, MI 48243

"EXHIBIT A"



**esis**

ESIS/GM Central Claims Unit
P.O. Box 300
Mail Code 482 C20 D71
Detroit, MI 48265-3000

800.888.0164 *tel*
313.665.0911 *fax*

**Lisa Cudworth**
Claims Administrator

January 3, 2008

Jake Rodd
111 E 1st Street #26
Jacksonville, FL 32206

RE:    Claimant:     Jake Rodd
          Our File No.:  496287
          Our Client:    General Motors Corporation
          Date/Event:   July 14, 2004
          Vehicle:      2002 Chevrolet Avalanche
          VIN:          3GNEK13T02G200250

Dear Mr. Rodd:

ESIS provides administrative claims handling services to General Motors (GM) in connection with product liability claims against GM. I received the enclosed letter from Attorney Dexter Van Davis advising that he no longer represents you regarding the above matter.

Please contact me at 800.888.0164 extension 53388 Monday through Friday 8:00 am to 4:30 pm EST.  If I do not hear from you within 30 days, I will assume you are no longer interested in pursuing this claim and close my file.

Sincerely,

Lisa Cudworth

Enclosure

" EXHIBIT A "

January 9, 2008

Lids Cudworth
Claims Administrator
ESIS/GM Central Claims Unit
P.O. Box 300
Mail Code 482 C20 D71
Detroit, MI 48265-3000

Claim File: 496287

Dear Ms. Cudworth

Please note that I have been waiting for a response from GM. I am prepared to negotiate the mater of my claim with you. I called after receiving your letter on Jan 8, 2008. I'm currently waiting to hear from you. I'm available at two telephone numbers (904) 359-5040 or (904) 566-1124.

Mr. Davis provided information to you about my cast that I provided to him. In the amount of time that has gone by, I hope that you may have reviewed the material provided by Mr. Davis. Mr. Davis is no longer my attorney, and I would like to resolve this matter in an equitable manner.

Sincerely Yours,

Jake W. Rodd

" EXHIBIT A "

**St. Vincent's Medical Center**
The information contained in this document is **confidential**.

Operative Procedure                    RODD, JAKE W - 1462004

## * Preliminary Report *

**60**
ST. VINCENT'S                    Jacksonville, Florida

          OPERATIVE/PROCEDURE REPORT


Adm Date:   04/15/2005   Patient:  RODD, JAKE W
Dschg Date:              MMI Num:  01462004
                         DOB/Age/Sex:  05/13/1957 47 YRS M
                         Fin Num:  14883143
                         Attnd Phys:  Javier Garcia-Bengochea, M.D.

DATE OF OPERATION/PROCEDURE:  04/15/2005

PREOPERATIVE DIAGNOSIS:

Severe cervical spondylosis C4-C5, C5-C6, and C6-C7 with large C6-C7 disc
herniation on the left and a large spondylitic spur at C5-C6 on the
right.

POSTOPERATIVE DIAGNOSIS:
Severe cervical spondylosis C4-C5, C5-C6, and C6-C7 with large C6-C7 disc
herniation on the left and a large spondylitic spur at C5-C6 on the
right.

OPERATION/PROCEDURE PERFORMED:
1.   Anterior cervical diskectomy at C4-C5, C5-C6, C6-C7 with spinal cord
     and spinal canal decompression using microsurgical techniques.
2.   Anterior cervical fusion at C4-C5, C5-C6, C6-C7 using microsurgical
     techniques with cancellous and cortical allograft and element bone
     substitute.
3.   Anterior cervical plate stabilization using Spinal Concepts Ant-Cer
     plate at four vertebral levels.

SURGEON:  Javier Garcia-Bengochea, M.D.

ASSISTANT:  Ann Marie H. McCurdy, P. A.-C.

ANESTHESIA:  General endotracheal anesthesia.

RATIONALE FOR PROCEDURE:  The patient is a 47 year-old gentleman with
severe neck pain with some left arm weakness who was found to have severe
cervical spondylosis at C4-C5, C5-C6, and C6-C7 on MRI with a large C6-C7
disc herniation on the left producing spinal cord compression with a
spondylitic spur at C4-C5 and C5-C6 on the right producing spinal cord
compression.  She is taken to the operating room today for anterior
cervical decompression and fusion with stabilization at C4-C5, C5-C6, and
C6-C7.

TECHNIQUE AND FINDINGS:  After induction of adequate general endotracheal
anesthesia and after institution of the appropriate intravenous lines,
the patient's pressure points were padded and he was placed supine on the
operating table on an interscapular role.  The anterior cervical region
was then shaven, cleaned with alcohol, prepped with Betadine scrub and
painted with Betadine solution and benzoin.  A sterile field was

"EXHIBIT B"

**St. Vincent's Medical Center**

The information contained in this document is **confidential**.

Operative Procedure                                                    RODD, JAKE W - 1462004

established with the iodine-impregnated Vi-Drape. A preoperative localizing x-ray was performed. An incision was then made over the C5-C6 interspace. The skin was infiltrated with 0.25% Marcaine with 1:100,000 concentration of epinephrine. The dissection was then carried down through the platysma and between the trachea and esophagus medially and the carotid and jugular vessels laterally. The anterior cervical spine was identified. An intraoperative x-ray was performed to confirm the appropriate interspaces. The longus colli muscles reflected laterally and trimline self-retaining retractors were placed. The discs at C4-C5, C5-C6, C6-C7 were incised with a 15 blade and removed with the pituitary rongeurs and the curets. Anterior osteophytes were removed with the Anspach drill and the Adson rongeurs. Distraction pins were placed in the bodies of C6 and C7 and then the microscope was draped and brought into the field. Using microsurgical techniques, the disc was removed with a 15 blade and the pituitary rongeurs and the curets. The vertebral endplates and posterior osteophytes at C6-C7 were then removed with the Anspach drill and the 2 mm Kerrison. Several large herniated disc fragments were then removed from the ventral epidural space on the left side. A foraminotomy was performed on the left. Once the decompression was completed. The endplates were curetted down to punctate bleeding bone and an 8 mm cortical and cancellous allograft was then placed in the interspace and countersunk several millimeters. Gelfoam was placed over the exposed nerve roots. Element bone substitute was then placed around the bone graft. The distraction pin at C7 was removed and this hole filled with wax. A pin was then placed at C5 and distraction was applied across the C5-C6 interspace. In a similar fashion, the vertebral endplates and posterior osteophytes were then removed with the Anspach drill and the 2 mm Kerrison. Bilateral foraminotomies were performed at C5-C6. The posterior longitudinal ligament was removed. Once the decompression was completed and after the Caspar curet was used to remove any remaining osteophytes, another cortical and cancellous allograft was then placed in the interspace and countersunk several millimeters. Gelfoam was placed around the graft as was Element bone substitute. The distraction pin at C6 was removed and its hole was filled with wax. A pin was then placed at C4 and distraction was applied across the interspace. Again, the vertebral endplates and posterior osteophytes were then removed with the angled curets, the Anspach drill and the 2 mm Kerrison. A foraminotomy was performed bilaterally. A spondylitic spur was removed from the right side. Another cortical and cancellous allograft was then countersunk several millimeters into the disc space and Element and Gelfoam were placed around the bone graft. At this point, the distraction pins were removed and the hole was filled with wax. The bone grafts were all lordotic. At this point, a 62 mm Spinal Concepts Ant-Cer plate was placed on the anterior spine. The distraction pin holes at C5 and C6 were used to anchor the plate with segmental fixation. Two pilot holes were made in the body of C4 and two pilot holes were made in the body of C7. An intraoperative x-ray was performed to confirm the appropriate size of the plate and subsequently the appropriate position of the grafts and instrumentation. At this point, the 14 mm self-tapping screws were used to secure the plate to the anterior spine. Hemostasis was then meticulously achieved with the bipolar. Since the patient has a history of hepatitis C, a medium Hemovac prevertebral drain was placed. The wound was copiously irrigated with bacitracin antibiotic solution and closed in anatomic layers with Vicryl sutures. Steri-Strips were applied to the skin edges and a sterile Telfa and gauze dressing was applied to the wound. The patient was transported to the recovery room in satisfactory condition with sponge and needle counts correct times two. The estimated blood loss was

**NORTHSIDE IMAGING CENTER**
**1215-4 DUNN AVE**
**JACKSONVILLE, FL  32218**
**(904) 696-8400**

JAVIER GARCIA, MD                              DOS: 11/15/05
2151 RIVERSIDE AVE
JACKSONVILLE, FL 32204

IN RE:   **RODD, JAKE**                        M
Acct :   117328.0                              DOB:    05/13/57
DOS# :   11/15/05                              AUTH:
Location: NORTHSIDE IMG CTR                    Film N Fax Y Del N

CERVICAL SPINE:

Clinical data: Right shoulder pain

Frontal, lateral, bilateral oblique and Den's view of the cervical
spine.

FINDINGS:  There are vertebral body screws with an anterior plate
from C4, C5, C6 and C7. The alignment is normal. The oblique views
shows moderate neural foramen narrowing bilaterally from C3 through
C7.

IMPRESSION:
ANTERIOR FUSION OF C4 THROUGH C7 WITH BILATERAL NEURAL FORAMEN
NARROWING FROM C3 THROUGH C7.

Thank you for allowing me to assist in the care of your patient.

DW/AR
November 15, 2005                    DANIEL WARDROP MD
                                     RADIOLOGIST
                                     Document Signed electronically

*****The words "Document signed electronically" have been added prior to review by
the radiologist.  If the words "Draft only" appear above the radiologist's name, the
document may not have been reviewed and approved prior to this printing.*****

"EXHIBIT C"

**NORTHSIDE IMAGING CENTER**
**1215-4 DUNN AVE**
**JACKSONVILLE, FL   32218**
**(904) 696-8400**

page 2 of 2

IN RE:   RODD, JAKE
Acct :   117328.0

At the C7-T1 level there is a mild amount of disc and bone material
ventrally causing overall mild spinal canal narrowing. The neural
foramen is mildly narrowed bilaterally.

IMPRESSION:
FUSION OF C4 THROUGH C7 WITH MULTIPLE LEVELS OF MODERATE SPINAL
CANAL NARROWING WHICH FLATTENS THE VENTRAL ASPECT OF THE CORD AND
MULTIPLE LEVELS OF MODERATE NEURAL FORAMEN NARROWING WHICH MAY
IMPACT NERVE ROOTS

Thank you for allowing me to assist in the care of your patient.

DW/AR
November 15, 2005                     DANIEL WARDROP MD
                                      RADIOLOGIST
                                      Document signed electronically

*****The words "Document signed electronically" have been added prior to review by
the radiologist. If the words "Draft only" appear above the radiologist's name, the
document may not have been reviewed and approved prior to this printing.*****

"EXHIBIT C"



JAVIER GARCIA, MD                          DOS: 11/15/05
2151 RIVERSIDE AVE
JACKSONVILLE, FL 32204

IN RE:   **RODD, JAKE**                     M
Acct :    117328.0                         DOB:     05/13/57
DOS# :    11/15/05                         AUTH:
Location: NORTHSIDE IMG CTR                Film N Fax Y Del N

CERVICAL SPINE:

Clinical data: Right shoulder pain

Frontal, lateral, bilateral oblique and Den's view of the cervical
spine.

FINDINGS:  There are vertebral body screws with an anterior plate
from C4, C5, C6 and C7. The alignment is normal. The oblique views
shows moderate neural foramen narrowing bilaterally from C3 through
C7.

IMPRESSION:
ANTERIOR FUSION OF C4 THROUGH C7 WITH BILATERAL NEURAL FORAMEN
NARROWING FROM C3 THROUGH C7.


Thank you for allowing me to assist in the care of your patient.

DW/AR
November 15, 2005                    DANIEL WARDROP MD
                                     RADIOLOGIST
                                     Document signed electronically

*****The words "Document signed electronically" have been added prior to review by
the radiologist. If the words "Draft only" appear above the radiologist's name, the
document may not have been reviewed and approved prior to this printing.*****

" EXHIBIT C "

**NORTHSIDE IMAGING CENTER**
**1215-4 DUNN AVE**
**JACKSONVILLE, FL  32218**
**(904) 696-8400**

page 2 of 2

IN RE:    RODD, JAKE        *Bone Spur*
Acct :    117328.0

At the C7-T1 level there is a mild amount of disc and bone material ventrally causing overall mild spinal canal narrowing. The neural foramen is mildly narrowed bilaterally.

IMPRESSION:
FUSION OF C4 THROUGH C7 WITH MULTIPLE LEVELS OF MODERATE SPINAL CANAL NARROWING WHICH FLATTENS THE VENTRAL ASPECT OF THE CORD AND MULTIPLE LEVELS OF MODERATE NEURAL FORAMEN NARROWING WHICH MAY IMPACT NERVE ROOTS.

Thank you for allowing me to assist in the care of your patient.

DW/AR
November 15, 2005            DANIEL WARDROP MD
                             RADIOLOGIST
                             Document signed electronically

*****The words "Document signed electronically" have been added prior to review by the radiologist. If the words "Draft only" appear above the radiologist's name, the document may not have been reviewed and approved prior to this printing.*****

"EXHIBIT C"

**NORTHSIDE IMAGING CENTER**
**1215-4 DUNN AVE**
**JACKSONVILLE, FL  32218**
**(904) 696-8400**

JAVIER GARCIA, MD
2151 RIVERSIDE AVE
JACKSONVILLE, FL 32204

DOS: 11/15/05

IN RE:    **RODD, JAKE**
Acct :    117328.0                                    M
DOS# :    11/15/05                                    DOB:     05/13/57
Location: NORTHSIDE IMG CTR                           AUTH:
                                                      Film N Fax Y Del N

MRI OF THE CERVICAL SPINE:

Clinical data: Right shoulder pain after fusion.

TECHNIQUE: Sagittal T1, sagittal T2 and axial gradient ECHO imaging
was performed through the cervical spine.

FINDINGS:  There are anterior vertebral body screws with anterior
plate providing fusion to the C4 through C7 vertebral bodies. The
cervical spine has normal alignment. There is some abnormal signal
in the vertebral bodies, particularly at C6 and C7. However, some
of this may represent artifact due to metal susceptibility artifact
from the hardware. The spinal cord has normal signal throughout the
cervical spine.

The C2-3 level is normal.

At the C3-4 level there is a mild amount of disc and bone material
ventrally causing overall mild spinal canal narrowing. The neural
foramen is moderately narrowed bilaterally.

At the C4-5 level there is a mild amount of disc and bone material
ventrally causing overall mild spinal canal narrowing. The neural
foramen is moderately narrowed on the right and mild to moderately
narrowed on the left.

At the C5-6 level there is a moderate amount of disc and bone
material ventrally, more so on the right than the left which
flattens the right ventral aspect of the spinal cord. The neural
foramen on the right is moderately narrowed and the neural foramen
on the left is moderately narrowed.

At the C6-7 level there is a moderate amount of disc and bone
material ventrally, more so on the right than on the left. This
flattens the right aspect of the spinal cord. The neural foramen is
moderately narrowed on the right and mild to moderately narrowed on
the left.
page 1 of 2

" EXHIBIT C "

Rodd, Jake
01-03-05 / Page 2...

Intraoperative findings demonstrated a combination of herniated disk fragments and spondylitic spurs. It cannot be determined at what time these herniated disk fragments occurred. Mr. Rodd's final diagnosis is cervical spondylosis with superimposed disk herniation. The etiology of the spondylosis and/or the disk herniation is uncertain. He may have suffered an aggravation as a result of his fall in July or August of 2004 at the tailgate of his truck.

Mr. Rodd may return to work with no lifting more than fifteen pounds and no work at or above the level of his shoulders on a regular basis. He should have an ergonomically modified work station for his neck. His permanent impairment rating is twelve percent based on the Florida Impairment Rating Guide. This is permanent. I am uncertain as to any future medical expenses, but it is likely Mr. Rodd would likely require an MRI annually for the next five years. He will likely need intermittent pain medications, anti-inflammatories and muscle relaxers. He will likely need three to five rounds of physical therapy over the next five years. The likelihood that he would require surgery for the adjacent segment at C3-4, for example, would be approximately thirty to fifty percent over the next ten years.

Enclosed is an itemized statement of our charges to date for Mr. Rodd. If you have any further questions regarding Mr. Rodd, please do not hesitate to contact our office.

Sincerely,

Javier Garcia-Bengochea, M.D.

JGB/cp

"EXHIBIT D"

# NORTH FLORIDA MEDICAL ASSOCIATES, INC.

December 14, 2005

Dexter van Davis, esquire
255 N. Liberty St. Suite #4
Jacksonville Fl. 32202

Re Jake Rodd
D.O.B. 5-13-1957
D/A 7-14-2004

Mr. Rodd has been a patient in my care since 1994. On 14-2004 he sustained injuries to his neck and buttocks when strap o a tailgate failed with the weight of the descending tailgate causing him to fall forcefully his buttocks jamming his spine and hips.

He received medical treatment including neurosurgery his cervical spine.

Since that time he has under gone physical rehab treatment. However, pain and other symptoms have persisted. When last examined on 12-13-2005, Mr. Rodd has constant neck pain with radiation the upper extremities and moderate paresthesia of the hands interrupted by use. Lifting greater than 5 pounds causes marked increase in pain intensity.

There is also bilateral hip pain with limited abduction, flexion, and extension of the joints. Gait is slightly altered and tires with increasing hip pain when walking greater than 100 feet. Standing in place causes marked increase in hip pain after 3-5 minutes. Standing also increases neck pain radiating to shoulders and left scapular musculature.

There is also a depression component secondary to his pain and limits on activity secondary to the trauma received from the accident.

Our diagnosis is degenerative joint disease of the cervical spine and hips. Paresthesias of the hands and fingers. Chronic pain syndrome secondary

"EXHIBIT D"

to the neck and hip injury. Depression reaction secondary to accident and injuries. He has required neurosurgery to his neck, physical therapy, analgesics and muscle relaxants plus strengthening exerc...

At this time it is difficult to determine if any future surgery would benefit the patient and also the future cost of medical management.

It is my opinion Mr. Rodd has a permanent disability of 30-32% impairment rating according to the American medical assoc. "guides to the evaluation of permanent impairment."

Very truly you...

Thomas E. Abbey D.O.

"EXHIBIT D"

*(handwritten top right: Treatment Dates Primary Care)*

# ATTENDING PHYSICIANS'S REPORT
## AUTO-OWNERS INSURANCE COMPANY
### LANSING, MICHIGAN
### FLORIDA

| DATE 04/27/2005 | POLICYHOLDER JAKE RODD & WINIFRED RODD | DATE OF ACCIDENT 08/01/2004 | FILE NUMBER 042-0002076-200 |
|---|---|---|---|

TO ASSIST US IN DETERMINING BENEFITS DUE UNDER THE FLORIDA NO FAULT LAW, THE ATTENDING PHYSICIAN SHOULD COMPLETE THIS REPORT AND RETURN IT DIRECTLY

TO  PAMELA T MCLEAN
_____
CLAIM DEPT.

AUTO-OWNERS INSURANCE COMPANY
BRANCH CLAIM OFFICE

P O BOX 3200
OCALA, FL  34478-9851

FOLD ON FOLD LINE AND INSERT IN THE ENCLOSED ENVELOPE SO THE RETURN ADDRESS SHOWS

1. PATIENT'S NAME AND ADDRESS
JAKE RODD

2. AGE 48    3. SEX M    4. OCCUPATION (IF KNOWN) Retired

5. HISTORY OF OCCURRENCE AS DESCRIBED BY PATIENT
Standing on tailgate of vehicle - Support straps collapsed

6. DIAGNOSIS AND CONCURRENT OR CONTRIBUTING CONDITIONS*
HNP C4 THRU C7 ē RADICULOPATHY TO EXTREMITIES

7. WHEN DID SYMPTOMS FIRST APPEAR?
DATE: 7-28-2004

8. WHEN DID PATIENT FIRST CONSULT YOU FOR THIS CONDITION
DATE: 7-14-2004

9. HAS PATIENT EVER HAD SAME OR SIMILAR CONDITION?
YES ☐    NO ☑    IF "YES" STATE WHEN AND DESCRIBE *

10. IS CONDITION SOLELY A RESULT OF THIS ACCIDENT?
YES ☑ NO ☐    IF "NO", EXPLAIN *

IS CONDITION DUE TO INJURY OR SICKNESS ARISING OUT OF PATIENT'S EMPLOYMENT?
11. YES ☐ NO ☑

12. WILL INJURY RESULT IN PERMANENT DISFIGUREMENT OR DISABILITY?
YES ☑ NO ☐    IF "YES", DESCRIBE   Cannot lift objects > 25 pounds
Constant Recurring Cervical Pain & Neuropathy

13. WAS PATIENT HOSPITALIZED AS A RESULT OF THIS INJURY?
Yes ☑   No ☐   If "YES", where

14. PATIENT WAS DISABLED (Unable to work)
FROM: 7-14-04    THROUGH: Present

15. IF STILL DISABLED, DATE PATIENT SHOULD BE ABLE TO RE TO WORK: No

16. REPORT OF SERVICES

| DATE OF SERVICE | PLACE OF SERVICE | DESCRIPTION OF SURGICAL OR MEDICAL SERVICE RENDERED | CHARGES |
|---|---|---|---|
| 7-14-04 | O | EXAM OF NECK PAIN | $ |
| 2-9-05 | O | EXAM INJECTION STEROIDS OF SHOULDER | $ |
| 3-1-05 | O | RE EXAM R/L's | $ |
| 3-22-05 | O | EXAM + REFERRAL | $ |
| | | TOTAL CHARGE TO DATE | $ |

17. IS PATIENT STILL UNDER YOUR CARE FOR THIS CONDITION?
YES ☐   NO ☑

ESTIMATED FUTURE CHARGES  $

Pursuant to Florida Statute 627.736(6), I declare that the treatment or services rendered to the patient named in this report, with respect to the bodily injury sustained, v reasonable and necessary, and that the charges for said treatment or services were incurred as a result of such bodily injury.  I declare that I have read the foregoing, the facts alleged are true to the best of my knowledge and belief.

5-3-05    Thomas E Abbey DO.    Thomas E. Abbey DO    591617094

DATE    PHYSICIAN'S NAME (PRINT)    RS/TIN IDENTIFICATION

**North Florida Medical Assoc., Inc.**

NO.    4131 University Blvd. S., #6
Jacksonville, FL 32216

"EXHIBIT E"

ZIP CO

* USE REVERSE SIDE IF ADDITIONAL SPACE IS NEEDED



# NIMNICHT BODY SHOP
EXPERT PAINT & COLLISION CENTER
SERVICE ENTRANCE OFF PARK ST.
1550 CASSAT AVE.
JACKSONVILLE, FLORIDA 32210
BODY SHOP HOURS   M-F 7:00 A.M. - 5:30 P.M.
(904) 387-4055

www.nimnichtchevy.com



MOTOR VEHICLE REPAIR
REGISTRATION NUMBER
MV 01284

| CUSTOMER NO. | 51311 | ADVISOR CHRIS NEWMES | 2015 | TAG NO. 6714 | INVOICE DATE 08/13/04 | INVOICE NO. CTCB442634 |
|---|---|---|---|---|---|---|

JAKE RODD
111 E 1ST ST
APT 26
JACKSONVILLE, FL 32206-5045

| LABOR RATE | LICENSE NO. | MILEAGE 47,994 | COLOR / | STOCK NO. |
|---|---|---|---|---|

YEAR / MAKE / MODEL  02/CHEVROLET TRUCK/AVALANCHE/UT
VEHICLE I.D. NO.  3 G N E K 1 3 T 0 2 G 2 0 0 2 5 0
F.T.E. NO.              P.O. NO.

DELIVERY DATE 11/21/01     DELIVERY MILES
SELLING DEALER NO.         PRODUCTION DATE
R.O. DATE 08/02/04

| RESIDENCE PHONE 904-359-5040 | BUSINESS PHONE 904-476-3590 | COMMENTS |
|---|---|---|

MO: 47994

LABOR & PARTS
J# 1 70CTZTAIL         TAILGATE         UNITS: 4.20 TECH(S) 2082/2980          WARRANTY
TAILGATE STRAPS BROKE DAMAGING TAILGATE
WARRANTY<VB> BROKEN TAILGATE STRAPS

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|
| JOB # 1 | 1 | 88980510 | CBL-E/GAT 17.202 | WARRANTY |
| JOB # 1 | 1 | 88980509 | CBL-E/GAT 17.202 | WARRANTY |
| JOB # 1 | 1 | 88936997 | MOLDING 17.190 | WARRANTY |
| JOB # 1 | 1 | 15080226 | HINGE 17.208 | WARRANTY |
| JOB # 1 | 1 | 15080227 | HINGE 17.208 | WARRANTY |
| JOB # 1 | 1 | 88936998 | MOLDING 17.215 | WARRANTY |
| JOB # 1 | 1 | 15082064 | MOLDING 17.507 | WARRANTY |
| JOB # 1 | 1 | 15082065 | MOLDING 17.507 | WARRANTY |

JOB # 1 TOTAL PARTS          0.00

JOB # 1 TOTAL LABOR & PARTS          0.00

J# 2 80CTZMECH         BODY MECHANICAL         UNITS: 0.50 TECH(S) 2991          35.50
Added Operation  (BODY @ 08/06/2004 15:17)
LT DAY LIGHT SOCKET BURNED
UNK
REPLACED SOCKET PER ESTIMATE

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|

JOB # 2 TOTAL PARTS          0.00

JOB # 2 TOTAL LABOR & PARTS          35.50

SUBLET    PO#      VEND INV# INV.DATE-DESCRIPTION
JOB # 1    707605              08/11/04 RENTAL                          WARRANTY

TOTAL - SUBLET          0.00

COMMENTS
WARRANTY <VB> DAMAGE TO TAILGATE FROM BROKEN STRAPS

Chev Ass #Chevron
1-30227704 53

" EXHIBIT F "

Any controversy or claim arising out of or relating to this transaction shall be mediated and, if the parties are unable to reach a settlement at mediation, shall be settled by binding arbitration under the laws of the State of Florida, in accordance with the rules then in force of the American Arbitration Association, and any judgment upon the award rendered may be entered in any court having jurisdiction thereof.

GM Parts are warranted by General Motors for 12 months or 12,000 Miles, whichever comes first for Parts and Labor. Some parts have longer warranties - see your service representative for further details. Goodwrench Service Plus (GSP) parts have a limited lifetime guarantee. Part designated with an asterisk (*) indicates lifetime guarantee applies for customer-pay repairs.

DISCLAIMER OF WARRANTIES - The seller hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products.

To our customers:
We have found it is not practical to itemize the many miscellaneous supplies and materials used on each repair job. To do so would considerably add to our costs and labor charges. A standard charge for Shop Supplies is made on each repair order. There may be an additional Environmental Fee for Hazardous waste removal, when applicable.

This charge represents costs and profits to the motor repair facility for miscellaneous shop supplies or waste disposal.[s.559.904(4)]

The state of Florida requires a $1.00 fee to be collected for each new tire sold in the state.[s.403.718]. and a $1.50 fee to be collected for each new and remanufactured battery sold in the state.[s.403.7185]

We are not responsible for theft, damage or vandalism. Remove any valuables.

September 1, 2006

TO:    Attorney Luster & Davis
       255 Liberty Street
       Jacksonville FL

From:  Michael Williams


Dear Sirs,

This letter is to inform you that I *Michael Williams* was present when Jake Rodd
       Michael Williams
   was on the back of his truck and the tail gate collapsed. In fact we both were on the back
of the truck when it collapsed.

   If any additional information is need please contact me.


Sincerely

*Michael N. Williams*
Michael Williams

"EXHIBIT G"

