Timothy F. Nixon
Katherine Stadler (Admitted *Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re                                                      :
                                                           :  Chapter 11 Case No.
MOTORS LIQUIDATION COMPANY, *et al.,*                      :
       f/k/a General Motors Corp., *et al.,*               :  09-50026 (REG)
                                                           :
                           Debtors.                        :  (Jointly Administered)
                                                           :
---------------------------------------------------------- x

# FEE EXAMINER'S FIRST STATUS REPORT AND ADVISORY

      The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company) submits this *First Status Report and Advisory* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**"). The Fee Examiner Order appointed the Fee Examiner to review applications from the professionals eligible for compensation under the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Compensation Order**") [Docket No. 3711] and to assist the Court in addressing fee applications as well as to help provide transparency and accountability in the administration of the chapter 11 cases.

This is the Fee Examiner's first report. It reflects an initial review, though not yet in detail or to specific conclusions, of the fee applications pending as of February 16, 2010. This initial report also incorporates observations, based on that review, that should prove helpful to professionals preparing their second 120-day interim applications (October 2009 – January 2010) or other compensation submissions. In a number of instances, the applications on file do not comply with the standards that govern them.

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.      On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102.

3.      On July 2, 2010, this Court appointed AP Services, LLC to perform crisis management services, with a requirement that AP Services, LLC shall file quarterly reports of compensation, pursuant to the *Amended Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date* [Docket 2949] (the "**Quarterly Reporting Order**").

4.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the

above-captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

5.    Through February 16, 2010, the professionals approved for retention in this case have submitted a total of 14 applications for compensation. The most recent was filed by Weil, Gotshal & Manges on January 13, 2010. Each application covers a defined period between June 1 and September 30, 2009. In the aggregate, they total approximately 5,050 pages and request a combined total of $54,716,379.96. (A summary of the applications accompanies this status report and advisory as **Exhibit A**.)

6.    In addition, through February 16, 2010, two quarterly reports have been filed pursuant to the Quarterly Reporting Order, covering the periods of June 1 through August 31, 2009 and September 1 through November 30, 2009, respectively. These quarterly reports request a combined total of $35,745,130.59, as itemized on the attached **Exhibit A**.

7.    On January 5, 2010, the Fee Examiner submitted an *Application for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

8.    With the Fee Examiner, Godfrey & Kahn is reviewing the fee applications and quarterly reports for compliance with the applicable statutes, rules, guidelines and orders. The law firm is assisting the Fee Examiner with the legal issues raised by inquiries to and from professional service providers, with the preparation of periodic reports, and in the development of appropriate standards, reports, recommendations and, if warranted, objections.

9. As part of that process, the Fee Examiner has met—either in person or through telephone conferences—with representatives of a number of the professionals, and he will continue to do that.

10. The Fee Examiner also has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010.* [Docket No. 4910.] Stuart Maue will work with the Fee Examiner and counsel in reviewing the first interim fee and expense requests of Jenner and Block, LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and, The Claro Group, LLC (the "**Selected Case Professionals**")—in part, to evaluate Stuart Maue's services for subsequent work on other applications.

11. No objections were filed to the Application for Appointment of Stuart Maue by the applicable objection deadline, February 11, 2010.

12. The Fee Examiner and his counsel have performed a preliminary review of each of the first interim fee applications and quarterly reports submitted to date pursuant to the Compensation Order and the Quarterly Reporting Order, and he is identifying specific instances of apparent non-compliance with applicable statutes, rules, guidelines, and orders and, in particular, the Compensation Order.

   A. In this regard, the Fee Examiner anticipates presenting a report to the Court, with any related objections that may be necessary, at the next appropriate hearing, now scheduled for April 8, 2010. That report will address, in whole or in part, at least some of the pending applications.

B.  However, the Fee Examiner is requesting an alternative date for that hearing because, as trial counsel, he has a two-day trial scheduled in another court on April 8 and 9, 2010.

13. The Fee Examiner has contemporaneously filed a Statement of No Objection in response to the *Final Application of Alan Chappell, Consumer Privacy Ombudsman, Appointed Pursuant to Section 332 of the Bankruptcy Code for Final Approval and Allowance of Compensation for Services Rendered During the Period from June 8, 2009 Through and Including October 4, 2009* [Docket No. 4456].

### APPLICABLE STANDARDS AND GUIDELINES

The preliminary review of the applications suggests that, in ways both minor and major, at least some of the initial interim applications and quarterly reports, in whole or in part, do not meet statutory and administrative guidelines.

14. To facilitate the Fee Examiner's report to the Court, and the Court's ultimate determination under the Bankruptcy Code, all fee applications and quarterly reports should comply with the letter of the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), with the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under U.S.C. § 330*, 28 C.F.R., Part 58, Appendix (the "**UST Guidelines**"), as well as with this Court's Compensation Order and Quarterly Reporting Order—except to the extent that variation has been expressly permitted by order.

15. Based upon these criteria and upon the preliminary review of those applications and quarterly reports on file, it is appropriate to note that the fee applications and quarterly reports should disclose, at a minimum, the following:

5

- Whether the applicant is seeking compensation under 11 U.S.C. § 330 or another provision of the Code;

- A summary of the terms and conditions of the professional's employment and compensation;

- Identification of all professionals who billed time, including each professional's billing rates, year of bar admission (if applicable), and a statement that the compensation is no more than the customary compensation charged by comparably skilled professionals in cases other than those under Title 11;

- The precise time period covered by the application or quarterly report;

- Time and service entries identifying participants, activities, and subject matters, arranged by specific project categories, including narrative summaries of each project, its necessity and benefit to the estate (non-working travel time should be a specific project category);

- Time entries, in tenths of an hour, without "lumping" services together unless the aggregate amount of time spent for those "lumped services" does not exceed 0.5 hours;

- Explanations of tasks involving multiple individuals and the contributions of each individual;

- A detailed itemization of actual, necessary expenses; and,

- For any professional seeking reimbursement of charges for computerized research services, a copy of the professional's agreement with the research service provider.

16. Applications and quarterly reports should also include the professional's certification required by the Local Guidelines, attesting that:

- The professional has read the application or quarterly report;

- The fees and disbursements fall within the Local Guidelines and the UST Guidelines, to the best of the professional's knowledge, information and belief after a reasonable inquiry;

- The fees and disbursements (if they are permitted by the Local Guidelines and the UST Guidelines) are in accordance with the practices customarily employed by the professional and generally accepted by the professional's clients;

- The professional is not making a profit on any reimbursable service; and

6

- Any request for a fee enhancement over, or any voluntary reduction of fees to reduce, the hourly rate multiplied by the hours expended in the performance of services is specifically noted.

17. The UST Guidelines and Local Guidelines provide the following criteria for reimbursement of actual and necessary expenses—some of which are not reflected in the interim compensation requests and quarterly reports to date:

   A. Photocopying fees are reimbursable at the lesser of $0.10 per page or actual cost;

   B. Long-distance out-going facsimile charges are reimbursable at the lower of the toll charge or, if the toll charge is not readily determinable, at $1.25 per page for domestic and $2.50 per page for international transmissions;

   C. In-coming facsimile charges are not reimbursable;

   D. Routine charges for the use of cellular telephones are not acceptable;

   E. Overtime expenses for a professional required to work after 8:00 p.m. are reimbursable, provided that if the professional dines before 8:00 p.m., the professional returns to the office to work for at least one and one-half hours;

   F. After hours transportation charges must be accompanied by a statement of the project-related need for the expense; and,

   G. Meal expenses may not exceed $20 per individual, and daytime meals are reimbursable only if the individual is participating in a necessary meeting during the meal.

18. In addition to the foregoing, the Fee Examiner will evaluate the reasonableness of a fee request or quarterly report utilizing additional statutory criteria including, but not limited to, the value of the services provided and, in that regard, will do the following:

    A.    <u>Hourly Rates</u>

-- Ensure that billing rates for each professional are the rates approved in the applicable retention order or supplement;

-- Evaluate reasonableness of rates and the time spent in relation to the nature and character of the work;

-- Calculate blended rates;

-- Evaluate multiple rates billed to particular projects; and,

-- Evaluate rates and services provided by attorneys not yet admitted to the bar and by law students.

    B.    <u>Billing Hours</u>

-- Evaluate hours billed against any limitations in the retention order;

-- Analyze average billable hours each day and identify extended periods of above-average billing days;

-- Calculate fees or billable hours for preparation of firm retention documents and fee applications as a percentage of total fees and hours;

-- Evaluate legal research to determine whether it is being conducted appropriately and at the lowest appropriate rate; and

-- Review clerical and administrative tasks to determine either the propriety of the billing rate to the task or whether the task is non-compensable.

19.    All applications for the retention of professionals *nunc pro tunc* should contain an explanation for the passage of time between the initial provision of services by the professional and the retention application—if more than 21 days have elapsed between them.

## PROCEDURE

*Filings by Retained Professionals*

20.    Retained professionals, pursuant to Paragraph 5 of the Fee Examiner Order, should provide to the Fee Examiner a budget for the particular month beginning with the month of February, 2010. Not all have done so. The budget should set forth an estimate of the

projected fees and expenses for such month, a general description of the categories of services that may be performed, and an explanation for any significant increase over the previous month's fees.

21.    Pursuant to the Compensation Order, monthly statements should be served on the United States Trustee, the Fee Examiner, and all required parties on or before the 30th day of each month following the month for which compensation is sought.  Interim Fee Applications usually should be filed no later than 45 days after the end of the 120-day Interim Fee Period.

   A.    The latest interim fee period ended on January 30, 2010 and, accordingly, the second interim fee applications would be due on or about March 15, 2010.

   B.    Copies of monthly statements and complete Interim Fee Applications (each as defined in the Compensation Order), accompanied by all supporting documentation (including those not filed publicly), should be served on the Fee Examiner through his counsel, Godfrey & Kahn.

22.    Professionals should submit their Interim Fee Applications or quarterly reports and supporting documentation in a fashion that will facilitate the most efficient review by the Fee Examiner.  In that regard, the Fee Examiner respectfully requests the following:

   A.    Simultaneously with the submission of any Interim Fee Application or quarterly report, and to the extent reasonably practicable, professionals also should serve on the Fee Examiner electronic versions of any billing information in both PDF and LEDES™ (Legal Electronic Data Exchange Standard) file formats.

   B.    In the event that any documentation accompanying an Interim Fee Application or quarterly report contains internal codes, the meaning of which would assist the Fee Examiner in interpreting aspects of the Interim Fee Application (such as

9

codes for fee, project or expense categories), the professional should submit a definition of the codes and an explanation of how the codes relate to any fee, project or expense categories.

      C.    When submitting a summary or cover sheet of all individuals who billed time submitted in the Interim Fee Application or quarterly report, the summary should list the individuals alphabetically by last name within their particular category (*e.g.*, all partners should be listed alphabetically).

      D.    To the extent that any expenses apply to multiple individuals (*e.g.*, in the case of a meal) or cover multiple days (*e.g.*, for a hotel room), the retained professional should submit itemization information reflecting that detail.

*Actions to be Taken by the Fee Examiner*

23.    The Fee Examiner will continue to consult, as necessary, with each retained professional regarding budgets provided to the Fee Examiner.

24.    The Fee Examiner will inform each retained professional of any issue relating to that professional's quarterly report, application for compensation or expenses prior to filing a report with the Court, so that each retained professional has a reasonable opportunity to respond to the Fee Examiner for the purpose of addressing the issues identified by the Fee Examiner— either before or at any hearing.

25.    The Fee Examiner will file his report (and any related objection) on any professional's quarterly report, application for compensation or expenses prior to the hearing date set by the Court to hear and approve such application.

26.    This report is intended to advise the Court, the professionals, and the U.S. Trustee of the preliminary criteria the Fee Examiner is applying as he continues a comprehensive and

detailed review of applications.  It is not intended to be an exhaustive or exclusive list of the factors used in the assessment the Fee Examiner will undertake, nor is it intended to single out any particular professional's compliance or non-compliance with the applicable standards.

Dated: Madison, Wisconsin
February 16, 2010.

                              GODFREY & KAHN, S.C.

By:    /s/ *Katherine Stadler*
       Katherine Stadler (KS 6831)
       Timothy F. Nixon (TN 2644)

       GODFREY & KAHN, S.C.
       780 North Water Street
       Milwaukee, Wisconsin 53202
       Telephone: (414) 273-3500
       Facsimile: (414) 273-5198
       E-mail: tnixon@gklaw.com
              kstadler@gklaw.com

*Attorneys for Fee Examiner*

4652211_5