BARNES & THORNBURG LLP
171 Monroe Avenue, NW, Suite 1000
Grand Rapids, Michigan  49503
Telephone:  (616) 742-3930
Facsimile:  (616) 742-3999

John T. Gregg (Admitted Pro Hac Vice)
Telephone:  (616) 742-3930
Email:  jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a GENERAL MOTORS CORP, *et al.*, | Case No.  09-50026 (REG) |
| Debtors. | Jointly Administered |

### MOTION OF DMS MOVING SYSTEMS FOR ENTRY OF ORDER AWARDING ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. § 503(b)(1)(A)

DMS Moving Systems ("DMS"), by and through its undersigned attorneys, hereby files this motion (the "Motion") for the entry of an order awarding an administrative expense pursuant to 11 U.S.C. §503(b)(1)(A).  In support of the Motion, DMS respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. The statutory predicate for the relief requested herein is section 503 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3. DMS is an entity that provides relocation services. DMS is located at 7441 Haggerty Road, Canton, Michigan 48187-0130. [Johnson Affidavit, ¶4].

4. On or about May 14, 2009, DMS agreed to provide certain relocation services to General Motors Corporation, EDES Worldwide Real Estate ("GM"). [Johnson Affidavit, ¶5]. True and correct copies of the e-mail between representatives of DMS and GM confirming the agreement, the invoice, and the bill of lading are attached hereto as <u>Exhibit A</u> and is incorporated herein as if fully set forth at length.

5. As set forth in the Affidavit executed by the Controller for DMS, Scott Johnson, DMS provided the initial portion of the relocation services on May 28, 2009 and May 29, 2009. [Johnson Affidavit, ¶6].

6. The expenses associated with these services amount to $5,901.51. [Johnson Affidavit, ¶7].

7. DMS rendered the remaining relocation services on the afternoon of June 1, 2009. [Johnson Affidavit, ¶8].

8. The expenses associated with these services amount to $14,083.40. [Johnson Affidavit, ¶9].

9. On the morning of June 1, 2009, prior to DMS providing the remaining relocation services, GM filed for protection under Chapter 11 of the Bankruptcy Code. [Johnson Affidavit, ¶10].

10. DMS rendered services to GM after the commencement of the GM bankruptcy case. [Johnson Affidavit, ¶11]. Thus the expenses associated with these services are post-petition expenses pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

**RELIEF REQUESTED**

11. By this Motion, DMS respectfully requests that this Court award an administrative expense to DMS under section 503(b)(1)(A) of the Bankruptcy Code for the services rendered.

**BASIS FOR RELIEF REQUESTED**

12. Section 503 of the Bankruptcy Code provides, in pertinent part, that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including -
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . .

11 U.S.C. § 503(b)(1)(A). The purpose of section 503(b)(1)(A) is to encourage third parties to provide the debtor in possession with goods and services essential to the rehabilitation of the debtor's business. *In re Patient Education Media, Inc.*, 221 B.R. 97, 101 (S.D.N.Y. 1998) (citation omitted).

13. The Southern District of New York Bankruptcy Court applies the "benefit to the estate test" in order to determine what qualifies as an "actual, necessary" administrative expense. *In re CIS Corp.,* 142 B.R. 640, 643 (S.D.N.Y. 1992) (citing *In re Amfesco Indus., Inc*., 81 B.R. 777, 785 (Bankr.E.D.N.Y.1988)). Under this test, a claimant must demonstrate that (i) the claim arose from a transaction with or on account of consideration furnished to the debtor-in-possession, and (ii) the transaction or consideration directly benefited the debtor-in-possession. *In re Patient Education Media, Inc.* at 101. (citation omitted).

14. Under the present circumstances, after GM filed for bankruptcy, DMS rendered relocation services, which was a transaction that directly benefited GM.

15. In addition, the services provided by DMS to GM pursuant to the agreement between the two parties facilitated GM's continued operation and preservation of GM's businesses as they attempted to rehabilitate in bankruptcy.

16. As such, DMS conferred a direct benefit that was actually used by GM post-petition in the ordinary course of GM's business.

17. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, GM is required to pay administrative expenses that it incurs for the actual and necessary costs of preserving its estate, which would clearly include the expenses incurred for services rendered by DMS pursuant to an agreement between GM and DMS. Accordingly, DMS respectfully requests that this Court award DMS an administrative expense in the amount of $14,083.40.

18. DMS expressly reserves all rights and remedies that it has or may have against GM or any of its affiliates with respect to the services rendered or any other claim.

WHEREFORE, DMS respectfully requests that this Court award an administrative expense claim to DMS under section 503(b)(1)(A) of the Bankruptcy Code for the services rendered by DMS on June 1, 2009, and (ii) granting such other relief as is just and appropriate under the circumstances.

Dated: February 16, 2010

                BARNES & THORNBURG LLP
                Counsel to DMS Moving Systems


                By:  /s/John T. Gregg
                    John T. Gregg
                Business Address:
                171 Monroe Avenue, NW
                Suite 1000
                Grand Rapids, Michigan  49503
                (616) 742-3930

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing **Motion of DMS Moving System for Entry of Order Awarding Administrative Claim for Post-Petition Expenses Pursuant to 11 U.S.C. § 503(b)(1)(A)**, was served on this 16th day of February, 2010, via the Court's ECF system on those parties registered to receive notice and via the United States Mail, first class, postage prepaid upon the following:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
*Attorneys for Debtors*

Kramer Levin Naftalis & Frankel LLP
Attn: Thomas Moers Mayer, Esq., Amy Caton, Esq.,
Adam C. Rogoff, Esq., and Gregory G. Plotko, Esq.
1177 Avenue of the Americas
New York, New York 10036
*Attorneys for the Committee of Unsecured Creditors*

    /s/John T. Gregg
    John T. Gregg

396493v1

# EXHIBIT A

**Julie Johnson**

**From:** michael.hilfinger@gm.com
**Sent:** Thursday, May 14, 2009 10:50 AM
**To:** Julie Johnson
**Subject:** Re: Gary Grondin Relocation Services

GM approves the move. The address is correct.

Thanks

Michael L. Hilfinger
General Motors Corporation
EDES Worldwide Real Estate
200 Renaissance Center
Mail Code: 482-B38-C96
Detroit, MI 48265

313-665-6603
313-665-6745 (fax)

Julie Johnson <Jjohnson@dmsmoving.com>

05/14/2009 10:23 AM

To "michael.hilfinger@gm.com" <michael.hilfinger@gm.com>
cc
Subject Gary Grondin Relocation Services

Good Morning Mr. Hilfinger
We have booked a move for Mr. Gary Grondin as part of the Milford Project. We will be moving him from 1831 Grondinwood Court in Milford to 11479 Clyde Rd. in Fenton, MI. I wanted to make sure he is eligible for a direct bill and to make sure we use the correct billing address on this.

We have on file: Edes Worldwide Real Estaste
200 Renaissance Center
Mail Code 482-B38-C96
Detroit, I 48265

*Julie Johnson*
Relocation Services Manager
DMS Moving Systems
800-521-5225
Monday-Friday 8am-5pm EST



Atlas Van Lines Agent



**DMS MOVING SYSTEMS**

7441 Haggerty Road
Canton, Michigan 48187-0130
Phone (734) 207-8200 · FAX (734) 207-8209

*Remit Payments To:*
P.O. Box 87130
Canton, Michigan 48187-0130

TO      EDES WORLDWIDE REAL ESTATE
        ATTN: MICHAEL HILFINGER/GM
        200 RENAISSANCE CENTER
        MAIL CODE: 482-B38-C96
        DETROIT, MI  48265

INVOICE NUMBER
I3277-001
INVOICE DATE
6/02/09
P.O.
MILFORD PROJ
CUSTOMER NUMBER
MILFORD

ORDER NUMBER: I3277

GRONDIN GARY        MILFORD        MI  FENTON        MI        7

```
         GARY GRONDIN - MILFORD PROJECT
         MILFORD, MI   TO   FENTON, MI
         35,680 LBS   -    25 MILES

    TRANSPORTATION                                                  6,946.90
    FUEL SURCHARGE                   25.00         0.60EA              15.00
    ADDITIONAL TRANS. ORIGIN         35,680        1.45CW             517.36
    CONTAINERS                                                       3,536.40
    PACKING                                                          4,734.15
    UNPACKING                                                           21.20
    THIRD PARTY ORI & DEST                                           1,300.00
    BULKY: RIDING MOWER              1             77.40EA              77.40
    BULKY: GRAND PIANO               1             87.10EA              87.10
    LONG CARRY - DESTINATION         35,680        1.75CW             624.40
    VALUATION                        170,000       1.25CW           2,125.00
```

TOTAL DUE
PLEASE PAY THIS AMOUNT →  19,984.91

**COMBINATION UNIFORM HOUSEHOLD GOODS BILL OF LADING AND FREIGHT BILL**

SHIPPER'S NO. 13277    ORIGINAL -- NOT NEGOTIABLE    CARRIER'S NO. L-1819

CARRIER: DMS Moving Systems    ADDRESS: 245 561 1991    TELEPHONE NO.

SHIPPER: GRONDIN GARY    CONSIGNEE: GRONDIN GARY
ADDRESS: 1831 Grondinwood Court    ADDRESS: 11179 Clyde Rd.
CITY: MILFORD    STATE: MI    ZIP: 48380    CITY: FENTON    STATE: MI    ZIP: 48430

IN CASE OF NEED, CONTACT: 248-684-7822 cell    248-684-7822
AGREED PICK-UP DATE/PER. OF TIME: 5/26/09 - 5/27/09    ACTUAL PICK-UP DATE
AGREED DELIVERY DATE/PER. OF TIME: 5/28/09 - 5/29/09    ACTUAL DELIVERY DATE

BILL TO: CBRE WORLDWIDE REAL ESTATE    ESTIMATED COST
ADDRESS: 200 RENAISSANCE CENTER    MAX. AMT. REQUIRED (EST. +10%)    BALANCE DUE IN 30 DAYS
CITY: DETROIT    TO BE PAID ON DELIVERY $
STATE: MI    ZIP: 48265    MIN. CHARGE    METHOD OF PAYMENT

|  | ORIGINAL | REWEIGH | DRIVER: |
|---|---|---|---|
| GROSS | 55500 | 49020 | VEHICLE NO. |
| TARE | 34260 | 34580 | CARRIER'S FILE NO. |
| NET | 21240 | 14440 | TOTAL 35680 | TARIFF M.P.S.C. NO. |

| CHARGED FOR MATERIAL PACKING AND UNPACKING | CONTAINERS QTY | RATE | CHARGE | PACKING QTY | RATE | CHARGE | UNPACKING QTY | RATE | CHARGE |
|---|---|---|---|---|---|---|---|---|---|
| Barrel, Dish-pack Ofcrt | 49 | 10.25 | 502.25 | 49 | 26.90 | 1318.10 | | | |
| Cartons, 1½ cubic feet | 119 | 2.95 | 351.05 | 119 | 7.25 | 862.75 | | | |
| 3 cubic feet | 78 | 3.75 | 292.50 | 78 | 10.70 | 834.60 | | | |
| 4½ cubic feet | 69 | 4.95 | 341.55 | 69 | 11.85 | 817.65 | | | |
| 6 cubic feet | 14 | 5.20 | 72.80 | 14 | 13.85 | 191.10 | | | |
| Wardrobe Carton | 32 | 25.60 | 801.60 | 32 | 3.10 | 99.20 | | | |
| Crib Mattress Carton | | | | | | | | | |
| Mattress Cartons: Twin Bed Size | 4 | 12.75 | 51.00 | 4 | 6.40 | 125.60 | 4 | 2.30 | 9.2 |
| Double Bed Size | | | | | | | | | |
| King or Queen Size | 3 | 24.10 | 72.30 | 3 | 10.15 | 30.45 | 3 | 4.00 | 2.0 |
| Mat. Covers Paper/Plastic: Twin Size | | | | | | | | | |
| Double Bed Size | | | | | | | | | |
| King or Queen Size | | | | | | | | | |
| Card. Cart. Spec. Designed for Mirrors | 43 | 24.45 | 1051.35 | 43 | 12.90 | 554.70 | | | |
| Wooden Boxes or Crates | XXXX | XXXXX | XXXXXX | | | | XXXX | XXXXX | XXXXX |
| TOTALS | | | 3536.40 | | | 4734.15 | | | 21. |

| TRANSPORTATION CHARGES | RATE | AMOUNT |
|---|---|---|
| RULE 8(A)(1) ACTUAL WEIGHT 35680    MILES 25 | 19.47 | 6946.90 |
| RATE PER HUNDRED, 10,000 LBS. OR MORE $ .60/MILE FUEL | | 15.00 |
| RULE 8(A)(2) CONSTRUCTIVE WEIGHT (Min.)    cu. ft. x 6    LBS. | | |
| RULE 8(G) & (H) CONSTRUCTIVE WEIGHT (No. miles)    cu. ft. x 7 | | |
| WEIGHT ADDITIVE (Describe) | | |
| TOTAL CONTAINER, PACKING AND UNPACKING | | 8291.75 |
| XXXXXXXXXXXXXXX RIDING MOWER BULKY | | 77.40 |
| EXCESSIVE CARRY 100' ORIG    ELEVATOR    STAIRS | 1.75 | 624.40 |
| CARTAGE TO OR FROM WAREHOUSE    MILES | | |
| TRANSIT STORAGE: FROM    TO: | | |
| S.I.T. VALUATION CHARGE (ADDTL. LIABILITY 10% OF BASE STORAGE RATE) | | |
| XXXXXXXXXXXXX GRAND PIANO | | 87.10 |
| APPLIANCE SERVICES - ORIGIN    THIRD PARTY ORIGIN & DEST | | 1300.00 |
| APPLIANCE SERVICES - DESTINATION | | |
| ADDTL. TRANSPORTATION CHARGE COUNTY    OAKLAND | 1.45 | 517.36 |
| ADDTL. LIABILITY CHARGE 1.25 CENTS PER $100 OF DECLARED VALUE $ 170,000 | | 2125.00 |
| ADDTL. LABOR    MEN FOR    HOURS | | |
| BULKY ARTICLE: (Describe) | | |
| ADVANCED CHARGES | | |
| TOTAL | | 19984.91 |
| PAID TO APPLY | | |
| BALANCE DUE | | |

It is hereby acknowledged and agreed that this shipment is moving under Rule 10:
Vehicle Space Engaged by Shipper:    cu. ft. X 7    lbs.
Shipment moving at Minimum Weight of ___ lbs.
Actual Weight ___ lbs.
X ___ Consignor, Shipper or Agent

UNLESS THE SHIPPER EXPRESSLY RELEASES THE SHIPMENT TO A VALUE OF 60 CENTS PER POUND, PER ARTICLE, THE CARRIER'S MAXIMUM LIABILITY FOR LOSS AND DAMAGE SHALL BE EITHER THE LUMP SUM VALUE DECLARED BY THE SHIPPER OR AN AMOUNT EQUAL TO $1.50 FOR EACH POUND OF WEIGHT IN THE SHIPMENT WHICHEVER IS GREATER. SHIPPER HEREBY RELEASES THE ENTIRE SHIPMENT TO A VALUE NOT EXCEEDING

$ ___ (To be completed by person signing below)

NOTICE: THE SHIPPER SIGNING THIS CONTRACT MUST INSERT IN THE SPACE ABOVE, IN HIS OWN HANDWRITING, EITHER HIS DECLARATION OF THE ACTUAL VALUE OF THE SHIPMENT OR THE WORDS "60 CENTS PER POUND PER ARTICLE." OTHERWISE, THE SHIPMENT WILL BE DEEMED RELEASED TO A MAXIMUM VALUE EQUAL TO $1.50 TIMES THE WEIGHT OF THE SHIPMENT IN POUNDS.

SHIPPER REQUESTS REPLACEMENT VALUE PROTECTION AND UNDERSTANDS THAT THE DECLARED OR RELEASED VALUE OF THE SHIPMENT MUST BE A MINIMUM VALUATION OF $3.50 PER POUND TIMES THE ACTUAL NET WEIGHT OF THE SHIPMENT. SHIPPER HEREBY RELEASES THE ENTIRE SHIPMENT TO A VALUE NOT EXCEEDING

$ ___ PER LB. OR $ ___ TOTAL VALUATION
SHIPPER HEREBY ELECTS:
[ ] OPTION A - NO DEDUCTIBLE
[ ] OPTION B - $300 DEDUCTIBLE

THE SHIPMENT WILL MOVE SUBJECT TO THE RULES AND CONDITIONS OF THE CARRIER'S TARIFF.
SHIPPER X ___
DATE 5/28/09

CARRIER AGREES TO TRANSPORT THE GOODS AND EFFECTS TENDERED BY THE SHIPPER SUBJECT TO THE PRECEDING TERMS AND CONDITIONS.
X ___ CARRIER OR AUTHORIZED AGENT

PREPAYMENT $ ___    RECEIVED BY ___    DATE ___
BALANCE $ ___    RECEIVED BY ___    DATE ___
CONSIGNEE OR AGENT OF CONSIGNEE ___    DATE ___

## CONTRACT TERMS AND CONDITIONS OF MICHIGAN INTRASTATE COMBINATION UNIFORM HOUSEHOLD GOODS BILL OF LADING

This contract is subject to all the rules, regulations, rates and charges in carrier's currently effective applicable tariff on file with the Michigan Public Service Commission including, but not limited to, the following terms and conditions:

SECTION 1. The carrier shall be liable for physical loss or damage to any articles from external cause while being carried or held in storage-in-transit EXCEPT for condition or flavor of perishable articles, and EXCEPT documents, currency, money, jewelry, watches, precious stones or articles of extraordinary value which are not specifically listed on the bill of lading, and EXCEPT loss or damage caused by or resulting:

(a) From an act, omission or order of shipper;
(b) From insects, moth, vermin and ordinary wear and tear;
(c) From defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein;
(d) From ( 1 ) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack ( A ) by any government or sovereign power, or by any authority maintaining or using military, naval or air forces, or ( B ) by military, naval or air forces; or ( C ) by an agent of any such government power, authority or forces; ( 2 ) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; ( 3 ) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscations by order of any government or public authority, or risks of contraband or illegal transportation or trade;
(e) From strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder;
(f) From Acts of God when the shipper releases the value of each article in the shipment to a value not exceeding 60 cents per pound per article; or
(g) From breakage of china, glassware, bric-a-brac or similar articles of a brittle or fragile nature unless packed by the carrier or unless such breakage results from negligence of the carrier when the shipper has released the value of each article in the shipment to a value not exceeding 60 cents per pound per article;
(h) From breakage of linoleum, clay heating elements, gas or electric heaters or for failure of the mechanical functions of pianos, radios, ranges, phonographs, televisions, clocks, refrigerators or other instruments or appliances when the shipper releases the entire shipment to a value not exceeding 60 cents per pound per article.

SUBJECT, in addition to the foregoing, to the further following limitations on the carrier's liability:

The carrier's maximum liability shall be either:

(1) The amount of the actual loss or damage not exceeding $1.50 times the actual weight (in pounds) of the shipment, or the lump sum declared value, whichever is greater; or
(2) The actual loss or damage not exceeding sixty (60) cents per pound of the weight of any lost or damaged article when the shipper has released the shipment to carrier in writing, with liability limited to sixty (60) cents per pound per article.

SECTION 2. The carrier shall not be liable for delay caused by highway obstruction, or faulty or impassable highways, or lack of capacity of any highway, bridge or ferry, or caused by breakdown or mechanical defect of vehicles or equipment, or from any cause other than negligence of the carrier, nor shall the carrier be bound to transport by any particular schedule, means, vehicle or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and the point of destination.

SECTION 3. Shipper shall:

(a) Be liable for any and all charges applicable under carrier's tariffs, and pay therefore as provided in said tariffs; and
(b) Indemnify carrier against loss or damage caused by inclusion in the shipment of explosives or dangerous articles or goods.

SECTION 4. If for any reason other than the fault of carrier, delivery cannot be made at address shown on the face hereof, or at any changed address of which carrier has been notified, carrier, at its option, may cause articles contained in shipment to be stored in a warehouse selected by it at the point of delivery or at other available points, and there held without liability on the part of the carrier, at the cost of the owner, and subject to a lien for all accrued tariff and other lawful charges.

SECTION 5. If shipment is refused by consignee at destination, or if shipper, consignee or owner of property fails to receive or claim it within fifteen ( 15 ) days after written notice by United States mail addressed to shipper and consignee at post office addresses shown on the face hereof, or if shipper fails or refuses to pay lawfully applicable charges in accordance with carrier's applicable tariff, carrier may sell the property at its option, upon notice to all persons known to claim an interest in the property, in any manner authorized by the laws of the State of Michigan. The proceeds of any sale shall be applied toward payment of lawful charges applicable to shipment and toward expenses of notice, advertising and sale of storing, caring for and maintaining property prior to sale, and the balance, if any, shall be held for delivery, on demand, to any person to whom carrier would have been bound to deliver the goods.

SECTION 6. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within 30 days after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine ( 9 ) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two ( 2 ) years and one ( 1 ) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

# Brookfield Global Relocation Services

## Origin & Destination Load Report

Customer's Name __Grandin, Gary__

Registration # __I3277__

ORIGIN:                     Verification of Loading

I confirm that I have walked through the house and all items I have requested to be moved have been loaded on the van.

X __Terese M. Grandin__                                      __5/28/09__
Customer's Signature                                               Date

__[signature]__                                                       __5/28/09__
Driver's Signature                                                  Date

I confirm that I have inspected my origin residence and real estate and am releasing the carrier of any liability, except as listed below:

__Terese M. Grandin__                                        __5/28/09__
Customer's Signature                                              Date

X __[signature]__                                                    __5/28/09__
Driver's Signature                                                  Date

DESTINATION:                Verification of Delivery

I confirm that all items I have requested to be loaded on the van have been moved and delivered.

__Terese M. Grandin__                                       __6/1/09__
Customer's Signature                                             Date

__[signature]__                                                       ____
Driver's Signature                                                  Date

I confirm that I have inspected my destination residence and real estate and am releasing the carrier of any liability, except as listed below:

X __Terese M. Grandin__                                   __6-1-09__
Customer's Signature                                             Date

__[signature] 2600__                                          __6-1-09__
Driver's Signature                                                  Date

QF-066 Rev. 4/23/09

BARNES & THORNBURG LLP
171 Monroe Avenue, NW, Suite 1000
Grand Rapids, Michigan 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999

John T. Gregg
Telephone: (616) 742-3930
Email: jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a GENERAL MOTORS CORP, et al., | Case No. 09-50026 (REG) |
| Debtors. | Jointly Administered |

### AFFIDAVIT IN SUPPORT OF THE MOTION OF DMS MOVING SYSTEMS FOR ENTRY OF ORDER AWARDING ADMINISTRATIVE CLAIM FOR POST-PETITION EXPENSES PURSUANT TO 11 U.S.C. § 503(b)(1)(A)

Under the penalties of perjury, I, Scott Johnson, affirm that the following representations are true:

1. I am a Controller for DMS Moving Systems.

2. I am at least twenty-one years of age and mentally competent to make this affidavit.

3. I reviewed the facts alleged in the Motion of DMS Moving Systems for Entry of Order Awarding Administrative Claim for Post-Petition Expenses Pursuant to 11 U.S.C. § 503(b)(1)(A) filed contemporaneously herewith, and I am familiar with its contents.

4. DMS Moving Systems is an entity that provides relocation services. DMS Moving Systems is located at 7441 Haggerty Road, Canton, Michigan 48187-0130.

5. On or about May 14, 2009, DMS Moving Systems agreed to provide certain relocation services to General Motors Corporation, EDES Worldwide Real Estate ("GM").

6. DMS Moving Systems provided the initial portion of the relocation services on May 28, 2009 and May 29, 2009.

7. The expenses associated with these services amount to $5,901.51.

8. DMS Moving Systems rendered the remaining relocation services on the morning and afternoon of June 1, 2009.

9. The expenses associated with these services amount to $14,083.40.

10. On the morning of June 1, 2009, prior to DMS Moving Systems providing the remaining relocation services, GM filed for protection under Chapter 11 of the Bankruptcy Code.

11. DMS Moving Systems rendered services to GM after the commencement of the GM bankruptcy case.

**Further Affiant Sayeth Naught.**

*Scott Johnson*
Scott Johnson, Controller, DMS Moving Systems

STATE OF MICHIGAN    )
                     )  SS:
COUNTY OF WAYNE      )

Before me, a Notary Public in and for said County and State, personally appeared Scott Johnson, Controller for DMS Moving Systems, who acknowledged the execution of the foregoing Affidavit, and who, having been duly sworn states that any representations contained therein are true to the best of his knowledge, information and belief.

Witness my hand and Notarial Seal this 12TH day of February, 2010.

Notary Signature *Susan J Brannan*
Notary, Printed  SUSAN J. BRANNAN

My Commission Expires: 09/24/2010    County of Residence: WAYNE

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing **Affidavit in Support of the Motion of DMS Moving Systems for Entry of Order Awarding Administrative Claim for Post-Petition Expenses Pursuant to 11 U.S.C. § 503(b)(1)(A)**, was served on this 16th day of February, 2010, via the Court's ECF system on those parties registered to receive notice.

/s/John T. Gregg
John T. Gregg

INDS01 DCUNNINGHAM 1180925v1