# Michael Levinson

1681 NW 103rd Avenue
Plantation, Florida 33322-6627
Tel: 954-370-8283   Cell: 954-990-3000
Email: *talonholco@aol.com*

January 10, 2010

Honorable Judge Robert E. Gerber
U.S. District Court – Southern District of New York
One Bowling Green, Courtroom 621
New York, NY 10004-1408

Dear Judge Gerber:

I do not make it a practice of writing to a judge regarding an active case, but I honestly believe you may be the last best hope that we Saab enthusiasts may have to save our beloved company.

For a brief moment, I would ask that you please reflect on these decisive words, to wit:

*Here the consequences, <u>by reason of the loss of liquidity and the loss of consumer confidence, would be disastrous. We're not talking about delaying distributions to creditors for a little longer. We're talking about the death of a company.</u> If I or any other court were to grant the requested stay, GM would soon have to liquidate.*
*Last, while hardly least, we must consider the public interest. <u>While there is undoubtedly a public interest in giving litigants the ability to appeal, there are here huge contrary public interests, which is why the U.S., Canadian and Ontario governments are so involved in this case.</u> This case involves not just the ability of GM creditors to recover on their claims. As I found in my Findings of Fact in the Decision, and which nobody has suggested will be challenged on appeal, <u>it involves the interests of 225,000 employees (91,000 in the U.S. alone); an estimated 500,000 retirees; 6,000 dealers and 11,500 suppliers. If GM were to have to liquidate, the injury to the public would be staggering. If GM goes under, the number of supplier bankruptcies that we already have, in this District and elsewhere—another filed for bankruptcy in this district today—is likely to multiply exponentially. If employees lose their paychecks or their healthcare benefits, they will suffer great hardship. And states and municipalities would lose the tax revenues they get from GM and the people employed by GM, and the Government would be paying out more in unemployment insurance and other hardship benefits.</u>*
*…but here, <u>with the death of GM on the line, the damage to the public interest would be irreparable. It would be incalculable. Here the public interest does not favor a stay; it compels the denial of one.</u>*
[underscore added for emphasis]

Your honor wisely wrote this passage in an opinion brief as justification to halt a stay that might impede GM from continuing its operations, noting the severe damage to the public interest. Now, here we are six months hence, and another auto maker is in the same dire predicament—but, unlike GM, it does not have to be this way.

The reason that I am writing to you today is because, as you know, the New GM became the beneficiary of the assets of Old GM (DIP, n.k.a. Motors Liquidation) under a rapid *sub rosa* sale pursuant to Sec. 363(b). Among the many assets that were bundled together in this foregoing sale, was an offshore subsidiary known as Saab Automobile AB ("Saab"), which at the time of the sale was a going concern that was greatly incapacitated at the hands of GM for at least a year prior to petitioning for Chapter 11. This is quite significant in my view because Saab became tremendously undervalued in the aforementioned transfer of assets to the extent that I personally believe it should be considered a fraudulent transfer.

The New GM, upon receiving the assets from Old GM, had initially signaled its intention to sell Saab, as a going concern, and indeed solicited various commitments to do just that. As time progressed, New GM's actions contradicted this intention to sell this asset by placing roadblocks at various stages of the sale and otherwise making it impossible to close. As of the writing of this letter, New GM claims it is still reviewing bids from several viable purchasers, while at the same time it seeks to engage the services of yet another party to whom it will pay to close down the operations of Saab.

Judge Gerber, I write to you today as an interested individual and a taxpayer of the U.S. with a vested interest in seeing New GM succeed. For the life of me I cannot see how closing down Saab benefits anyone, as opposed to selling it to bona-fide purchaser. Had this particular asset remained with Old GM (DIP), it would have ultimately been sold some time ago for the benefit of the creditors—something I believe should have taken place. I have a problem with New GM's possession and actions with Saab; first, adequate consideration was never paid by New GM for this asset (remember it was grossly devalued prior to the *sub rosa* sale; and, second, should New GM proceed to expend funds to close down Saab, we will lose a valuable asset that will create devastating damage to the public interest both here and abroad that would be irreparable. Once again, I direct you to your own thoughts about the death of an automaker...the same argument that applied to GM also applies to Saab. Closing this company will also result in great job losses both here and abroad. There may be as many as 2,000 dealers closing in the U.S., with the loss of workers there and the taxes they generate. I don't believe your stated philosophy is being remotely considered by New GM, despite that it was the essential argument that saved *them* from liquidation.

In conclusion, I know I don't have standing to raise these issues in the GM case that is before you; but if I did, I would assert that there was a fraudulent transfer of Saab and seek that your court move to set it aside so that Saab could be properly sold as a going concern to the highest bidder for payment to the creditors. If Saab is allowed to be closed down by New GM, it will benefit only the few parties involved in the liquidation. As a going concern, it has far greater value in terms of both its current and potential revenues as well as those vital human interests. We seek your assistance in this matter as soon as possible.

Yours sincerely,

Michael Levinson