HEARING DATE AND TIME: April 8, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: April 7, 2010 at 4:00 p.m. (Eastern Time)

Keith N. Costa (KC-1213)
Martin Domb (MD-4109)
AKERMAN SENTERFITT LLP
335 Madison Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
*Attorneys for Zinn Companies, Inc*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                                                    Chapter 11

MOTORS LIQUIDATION COMPANY, *et al.*,     Case No. 09-50026 (REG)
(f/k/a General Motors Corp., *et al.*)

                Debtors.                                  (Jointly Administered)
---------------------------------------------------------------x

**MOTION OF ZINN COMPANY, INC. FOR AN ORDER COMPELLING
DEBTORS AND THEIR SUCCESSOR TO COMPLY WITH THEIR
PAYMENT OBLIGATION UNDER WIND-DOWN AGREEMENT**

TO THE HONORABLE ROBERT E. GERBER,
UNITES STATES BANKRUPTCY JUDGE:

      Zinn Company, Inc. ("Zinn") respectfully represents:

**Summary of Relief Requested**

      1.    Zinn is a former GM dealer which was terminated in November 2009 pursuant to written agreements between General Motors Corporation ("**GM**")[1] and Zinn. Under those agreements, GM agreed to pay Zinn a total "wind-down" amount of $903,671, in two payments: 25% of the total amount within ten business days after the

---

[1] As used herein, "GM" includes the debtors as well as its successor entity to which it sold certain of its assets, General Motors LLC, pursuant to order of this Court.

{NY094518;1}

signing of the agreements (and Bankruptcy Court approval, if needed), and the remaining 75% within ten business days after the satisfaction of various conditions stated in the agreement.

2. Zinn has satisfied all of those conditions, as GM has acknowledged in writing. GM nevertheless refused to make the final payment, in the amount of $677,753, unless Zinn first signed and delivered to GM a waiver of Zinn's right to arbitrate so as to be reinstated as GM dealer, pursuant to certain provisions (the "**Federal Dealer Legislation**") contained in the Consolidated Appropriations Act, 2010, which was enacted in December 2009 (Public Law 111-117, 123 Stat. 3034, Dec. 16, 2009).

3. Waiver of the right to arbitrate under the Federal Dealer Legislation was not a condition of the wind-down agreements. The deadline for GM to make the final payment to Zinn passed on or about December 28, 2009.

4. Further, GM recently has claimed that its obligation to make the $677,753 payment to Zinn is subject to an alleged charge-back in the amount of $556,671, resulting from a GM audit of Zinn's dealership that occurred in March 2009, and which Zinn supposedly is not entitled to challenge. That alleged charge-back is illegal, unfounded, and at minimum grossly excessive.

5. Accordingly, by this motion Zinn seeks an order compelling GM to pay $677,753 to Zinn immediately, free of the claimed charge-back or any other set-off or reduction, or alternatively, compelling such payment and, to the extent that GM thereafter pursues such charge-back against Zinn, providing that Zinn may assert all appropriate defenses against the alleged charge-back in any appropriate forum.

**Jurisdiction**

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. In addition, the Wind-Down Agreement that is the basis for this motion (described in ¶¶ 9-14 below; *see also* Exhibit A hereto) provides, in paragraph 13, that this Court "shall retain full, complete and exclusive jurisdiction to interpret, enforce and adjudicate disputes concerning the terms of this Agreement and any other matter elated thereto."

**Background**

8. Zinn operated a GM dealership in southern Florida for the Pontiac, Buick and GMC brands since the 1990's.

9. On or about June 1, 2009, the day on which GM filed its petition in this case, GM sent certain of its dealers, including Zinn, a proposed "**Wind-Down Agreement**" dated as of June 1, 2009. The proposed agreement provided in essence that Zinn would be terminated as a GM dealer in exchange for certain wind-down payments, in accordance with terms stated in the proposed agreement. A legend on the bottom of each page of the proposed agreement provided that the agreement would be null and void "if not executed by dealer and received by GM before June 12, 2009 or if dealer changes any term or provision herein."

10. Zinn signed and returned the proposed Wind-Down Agreement to GM before June 12, 2009. GM in turn also signed the agreement and returned to Zinn a fully executed copy of it along with a cover memo dated August 7, 2009. A copy of the

August 7 cover memo and the fully executed Wind-Down Agreement is attached hereto as **Exhibit A**.

11.     Under section 3(a) of the Wind-Down Agreement, GM[2] agreed to pay Zinn a total "Wind-Down Payment Amount" of $903,671.  Under section 3(b) of that agreement, GM agreed to pay Zinn:

(a)     an "Initial Payment Amount" equal to 25% of the Wind-Down Payment Amount "within ten (10) business days following the later of (i) GM's receipt of any required Bankruptcy Court approvals, or (ii) full execution and delivery of this Agreement"; and

(b)     a "Final Payment Amount" equal to 75% of the Wind-Down Payment Amount (*i.e.*, $677,753) "within ten (10) business days after all of the following have occurred:  [listing seven numbered conditions – *see* ¶ 13 below]."

12.     GM paid Zinn the Initial Payment Amount ($225,918) on or about July 30, 2009.

13.     The seven conditions to GM's payment of the Final Payment Amount, as stated in section 3(b) of the Wind-Down Agreement, were as follows (paraphrasing):

(i)     Zinn has sold all of its GM inventory,

(ii)    Zinn has complied with all applicable bulk transfer and sales transfer tax laws,

(iii)   Zinn has delivered to GM certificates of applicable taxing authorities or other reasonable evidence confirming compliance with condition (ii), such that GM will have no liability therefor,

---

[2]  The Wind-Down Agreement bound GM or a purchaser (the "**363 Acquirer**") to which, as the Wind-Down Agreement recited, GM intended to "sell, convey and otherwise transfer certain of its assets."  *See*, *e.g.*, Wind-Down Agreement, Recital C; *id.*, section 3(b).  As noted at footnote 1 above, references herein to GM are deemed to refer to the 363 Acquirer, to the extent applicable.

  (iv) the effective date of termination of Zinn's GM dealership agreements, as provided in section 2(a) of the Wind-Down Agreement, has occurred,

  (v) Zinn has complied with section 4(c) of the Wind-Down Agreement (which required Zinn to remove or allow GM to remove all GM signs from Zinn's dealership premises and to waive all rights with respect to such signs),

  (vi) Zinn has signed and delivered to GM the Supplemental Wind-Down Agreement in substantially the form attached to the Wind-Down Agreement, and

  (vii) GM has received any required Bankruptcy Court approvals.

14. Zinn complied with all conditions stated in section 3(b) of the Wind-Down Agreement by December 11, 2009.

15. By cover letter dated October 22, 2009, Zinn sent to GM (a) the Supplemental Wind-Down Agreement, in substantially the form attached to the Wind-Down Agreement, dated as of November 10, 2009, and duly signed by Zinn, (b) a Post-Termination Notification, on a form provided by GM, duly completed by Zinn, and (c) a Dealer Counsel Authorization, also on a form provided by GM, duly signed by and on behalf of Zinn and its counsel. A copy of the October 22, 2009 cover letter and its three attachments described above is attached hereto as **Exhibit B**.

16. On November 20, 2009, GM sent to Zinn a letter by which GM (a) acknowledged receipt of Zinn's Supplemental Wind-Down Agreement dated as of November 10, 2009, (b) informed Zinn that the termination date for Zinn's GM dealership has been extended to November 20, 2009, with all other terms and conditions of the Supplemental Wind-Down Agreement remaining in full force and effect, and (c) asked Zinn to sign and return a copy of GM's November 20 letter to confirm Zinn's agreement with its terms. Zinn signed and returned to GM a copy of the letter on

November 30, 2009.  A copy of the November 20, 2009 letter including Zinn's signature thereon is attached hereto as **Exhibit C**.

17. Thus, Zinn's GM dealership was terminated effective November 20, 2009, in accordance with the terms of the Wind-Down Agreement and the Supplemental Wind-Down Agreement – both of which consisted of non-negotiable terms demanded by GM. By December 11, 2009, Zinn had complied with all conditions to GM's payment of the Final Payment Amount, in the amount of $677,753.

18. On December 16, 2009, after GM became obligated to pay Zinn the Final Payment Amount, Public Law 111-117, including the Federal Dealer Legislation, became law.  A copy of the Federal Dealer Legislation, concerning terminated dealers' right to seek reinstatement through arbitration (section 747(a) through (g) of the act) is attached hereto as **Exhibit D**.

19. On January 5, 2009, GM acknowledged in writing that Zinn "has completed all requirements of his wind down to be paid his 75%."  However, referring to "the new arbitration legislation," GM demanded that Zinn waive its rights under that legislation "before we will terminate or make the final payment."  A copy of a series of e-mails to that effect – consisting of internal GM e-mails on January 5, 2010, and an e-mail from GM to Zinn on January 6, 2010 – is attached hereto as **Exhibit E** (*see* bracketed text at p. 2).

20. With its January 6, 2010 e-mail to Zinn, GM attached a copy of a proposed letter dated January 5, 2010, which bore the following reference: "Waiver of Rights with Respect to Recently Enacted Federal Dealer Legislation."  A copy of that proposed waiver letter is attached hereto as **Exhibit F**.

21. On January 7, 2010, Zinn sent GM a letter entitled "Notice of Material Breach of Wind-Down Agreement and Demand for Payment." The notice stated that waiver of rights under the Federal Dealer Legislation was not required under the Wind-Down Agreement or the Supplemental Wind-Down Agreement, and that more than ten business days had passed since Zinn had satisfied all conditions, under those agreements, to GM's obligation to pay the Final Payment Amount. Zinn therefore demanded immediate payment of the Final Payment Amount. A copy of the notice is attached hereto as **Exhibit G**.

22. On January 18, 2010, Zinn, exercising its rights under the Federal Dealer Legislation, duly commenced an arbitration under that legislation, seeking to be reinstated as a GM dealer. A copy of Zinn's demand for arbitration, including its cover letter to the American Arbitration Association dated January 18, 2010, is attached hereto as **Exhibit H**.

23. On February 23, 2010, Zinn received a memorandum from GM, dated February 22, 2010, and on February 24, 2010, Zinn received a corrected copy of the same memorandum, now dated February 23, 2010. Copies of both memos (jointly, the "**Charge-Back Memo**") are attached as **Exhibit I**.

24. In the Charge-Back Memo, GM claimed that, as a result of a GM audit of the Zinn dealership that occurred on March 6, 2009, (a) GM is entitled to charge Zinn the amount of "55,6671.79" (sic, intended to be $556,671.79), (b) under the Wind-Down

Agreement, Zinn supposedly waived the right to challenge this alleged charge-back, and (c) GM intended to process this "debit" on March 11, 2010.[3]

25.  On February 26, 2010, Zinn received from GM an account statement, for the period 02/13/10 to 02/19/10, showing a credit to Zinn for the Final Payment Amount of $677,753 (in addition to other credits of nearly $63,000 unrelated to this motion). A copy of this account statements is attached as **Exhibit J**.

26.  However, GM has not paid the $677,753 to Zinn and, as GM stated in its Charge-Back memo, it intends to debit (*i.e.*, set off) $556,671 before making that payment.

27.  The key facts relating to the alleged $556,671 charge back are as follows:

(a)  On March 6, 2009, GM sent Zinn a letter, dated March 6, 2009, asserting two debits: (a) one for "documentation not received" in the amount of $27,081.79, and (b) another for "CSI intervention" in an amount to be determined ("TBD"). A copy of this letter (without its attachments) is attached as **Exhibit K**.

(b)  On April 3, 2009, Zinn requested mediation under the GM dispute resolution process (**Exhibit L**). By this request, Zinn raised factual and legal challenges to the audit.

(c)  Also on April 3, 2009, Zinn wrote to GM informing it of its challenge to the audit results and enclosing some of the documents that demonstrate the impropriety of the $27,081.79 charge-back. A copy of this letter (without its enclosures) is attached as **Exhibit M**.

---

[3] The initial Charge-Back Memo stated that the debit would be processed on March 11, 2011; the corrected memo changed the date to March 11, 2010. This was the only correction to the Charge-Back Memo; *see* Exhibit I.

{NY094518;1}                                    - 8 -

(d) On April 8, 2009, the mediation service (Mediation Works Incorporated) acknowledged receipt of Zinn's request for mediation (**Exhibit N**). Its letter stated that, pursuant to the parties' agreed mediation process, pending the outcome of the mediation the parties were required to "withhold implementation" of any contested decision and to stay proceedings in any other venue.

(e) By fax dated April 23, 2009 (**Exhibit O** [without its exhibits]), GM sent Zinn a revised version of the March 6, 2009 letter (still dated March 6, 2009), in which the amount previously "to be determined" was now filled in: $531,400. The total alleged charge-back was shown as $556,671. GM sent Zinn this notice – which was the first notice Zinn received of the amount of the alleged charge-back with respect to the CSI investigation – more than six weeks after completion of GM's audit and after Zinn commenced the mediation.

(f) On May 20, 2009, Zinn sent GM a letter (**Exhibit P**) challenging the alleged charge-back of $556,671 on several grounds (as summarized in the following section, at ¶¶ 33(a) through (f)).

(g) On June 22, 2009, the mediation service wrote to Zinn (**Exhibit Q**) stating that it had received a letter from GM informing the mediation service that, as a result of the bankruptcy filing in this case on June 1, 2009, the automatic stay applied to "claims such as these," and accordingly the mediation would not proceed.

(h) In the Wind-Down Agreement, paragraph 5, GM stipulated that it would not make any charge-backs more than two years after payment. However, in its Charge-Back Memo, GM apparently asserts charge-backs against Zinn for

warranty claims as much as four years after payment, thus ignoring the two-year limitation set forth in the Wind-Down Agreement.

### Basis for Relief Requested

28. The basis for the relief requested hereby is Zinn's contractual rights under the Wind-Down Agreement and the Supplemental Wind-Down Agreement. As shown above, GM became obligated to pay Zinn the Final Payment Amount ($677,753) on or about December 28, 2009 (*i.e.*, ten business days after Zinn satisfied all conditions to such payment, which occurred by December 11, 2009). The payment thus is more than two months overdue.

29. The Federal Dealer Legislation did not affect GM's obligation to make the payment or Zinn's right to receive it. <u>First</u>, the legislation became effective on December 16, 2009, *after* Zinn had satisfied all of the Wind-Down Agreement conditions and after the effective date of termination of Zinn's GM dealership.

30. <u>Second</u>, there is no condition or other term in the Wind-Down Agreement or the Supplemental Wind-Down Agreement that conditions payment on Zinn's waiver of rights under any statute.

31. <u>Third</u>, the Federal Dealer Legislation grants terminated dealers the right to pursue reinstatement through arbitration even if they have received wind-down payments in connection with their termination. The statute provides that, if the dealer prevails in the arbitration, and therefore is reinstated as a dealer, it must return any such wind-down payments to the manufacturer. The relevant statute's language is as follows:

> If the arbitrator finds in favor of a covered dealership, the covered manufacturer shall as soon as practicable, but not later than 7 business days after receipt of the arbitrator's determination, provide the dealer a customary and usual letter of intent to enter into a sales

>and service agreement. After executing the sales and service agreement and successfully completing the operational prerequisites set forth therein, <u>a covered dealership shall return to the covered manufacturer any financial compensation provided by the covered manufacturer in consideration of the covered manufacturer's initial determination to terminate, not renew, not assign or not assume the covered dealership's applicable franchise agreement</u>.

Federal Dealer Legislation, § 747(e) (emphasis added).

32. Thus, GM's demand that Zinn sign a waiver of its rights under the Federal Dealer Legislation was not only a breach of the Wind-Down Agreement and the Supplemental Wind-Down Agreement, but was also a blatant and improper attempt to deprive Zinn of its rights, and to avoid GM's obligations, under a federal statute.

33. Equally improper is GM's latest effort to avoid or reduce its obligation to pay Zinn the Final Payment Amount of $677,753, by alleging an improper $556,671 charge-back. That charge-back is illegal, unfounded, violates the limitations period set forth in paragraph 5 of the Wind-Down Agreement, and at minimum grossly excessive, for the following main reasons:

>(a) GM's audit covers a period that is more than 18 months prior to the dates on which the questioned incentives were paid, in violation of Florida Statutes, § 320.64(25).[4]

---

[4] A copy of Florida Statutes, § 320.64(25), is attached as **Exhibit R** (that section was amended effective May 28, 2009, while the events at issue were occurring; we attach in Exhibit R copies of the section before and after the amendment). GM should be prohibited from ignoring the Florida State law protections governing warranty audits. Further, assuming arguendo that GM could ignore the 18-month audit restriction imposed by Florida law, it should not be allowed to ignore the two-year limitation set forth in paragraph 5 of the Wind-Down Agreement. If GM were to follow the terms of its own agreement, the amount of charge-back at issue would be reduced from $556,671 to approximately $112,400.

(b) GM's April 23, 2009, correspondence does not provide a legitimate explanation for the very large proposed charge-back relating to the CSI incentives, as required by § 320.64(25).

(c) GM's proposed debit amount bears no apparent relationship to the percent of CSI interference it alleged. For example, in the fourth quarter of 2004, GM asserted that the Zinn dealership interfered with 7.4% of the total eligible surveys, but GM claimed a charge back for 100% of the total bonuses it paid ($80,000). GM failed to explain why GM is attempting to debit 100% rather than 7.4% of the bonuses paid.

(d) GM failed to inform Zinn at the in-person meeting required by Florida Statutes, § 320.64(25), or within a reasonable period of time following completion of the audit, as to the amount of the proposed charge-back relating to the CSI incentives.

(e) GM improperly relied on the automatic stay to suspend the mediation at which Zinn would have been able to challenge GM's improper charge-back, and now wrongly claims that Zinn waived its right to challenge the charge-back by entering into the Wind-Down Agreement.

(f) Contrary to GM's assertion in its February 22-23, 2010 Charge-Back Memo (Exhibit I), Zinn did not waive its right to challenge the charge-back by signing the Wind-Down agreement. Paragraph 5 of the Wind-Down Agreement, on which GM relies,[5] is clearly a waiver of any claims which a dealer (*e.g.*, Zinn) has "**against the GM parties**" (emphasis added). It is not a waiver of

---

[5] In its Charge-Back Memo, GM cites paragraph 6, but quotes from paragraph 5 (compare Exhibit I with Exhibit A, p. 4). The correct citation is to paragraph 5.

{NY094518;1}                                    - 12 -

Zinn's right to challenge an improper charge-back alleged **by GM** against a dealer.

### Conclusion

34. For the foregoing reasons, including the exhibits hereto, the Court should grant this motion and compel GM to pay Zinn immediately the sum of $677,753, plus interest at the rate applicable to federal judgments since December 28, 2009, and without any reduction or set-off by reason of GM's claimed charge-back. Alternatively, the Court should order such immediate payment to Zinn and provide that, in the event GM wishes to pursue the charge-back, Zinn shall be entitled to assert all appropriate defenses thereto, whether in mediation or any other appropriate proceeding. In addition, the Court should award Zinn its reasonable attorneys' fees and costs in connection with this motion, and such other and further relief as is just and proper.

[Intentionally left blank.]

**Notice**

35.     Notice of this motion has been provided to parties in interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No. 3629].  Zinn submits that such notice is sufficient and no other or further notice need be provided.  No previous request for the relief sought herein has been made by Zinn to this or any other Court.

WHEREFORE, Zinn respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just and proper.

Dated:  New York, New York
        March 2, 2010

                                                   s/ *Keith N. Costa*

                                                  Keith N. Costa (KC-1213)
                                                  Martin Domb (MD-4109)
                                                  AKERMAN SENTERFITT LLP
                                                  335 Madison Avenue, 26th Floor
                                                  New York, New York 1017
                                                  Telephone: (212) 880-3800
                                                  Facsimile: (212) 880-8965

                                                  *Attorneys for Zinn Companies, Inc.*