# EXHIBIT B

09-50026-mg   Doc 5104-4   Filed 03/02/10   Entered 03/02/10 17:30:30   Exhibit B
Pg 2 of 8



**CRAIG ZINN**
AUTOMOTIVE GROUP

Corporate Offices

2300 North State Road 7
Hollywood, Florida 33021
954.967.4111
Fax 954.985.3844

Alan N. Jockers, Esq.
In-House General Counsel
Direct No. (954) 967-4110
Direct Fax (954) 985-7117
ajockers@czag.net

October 22, 2009

<u>VIA OVERNIGHT MAIL</u>

Jeff Bennett
General Motors
100 Renaissance Center, Mail Code 482-A06-C66
Detroit MI 48265-1000

RE:   Zinn Companies, Inc. d/b/a Pines Pontiac-GMC-Buick

Dear Mr. Bennett:

In accordance with the instructions in Greg Ross' October 16, 2009 letter, enclosed is the Supplemental Wind-Down Agreement with Mr. Zinn's original signature, the original Post Termination Notification, and the original Dealer Counsel Authorization. The other required documentation will follow to your attention upon completion.

Sincerely yours,

*[signature]*
Alan N. Jockers, Esq.

Encls.

            

## SUPPLEMENTAL WIND-DOWN AGREEMENT

THIS SUPPLEMENTAL WIND-DOWN AGREEMENT (this "Agreement") is made and entered into as of the 10th day of November, 2009, by ZINN COMPANIES, INC. ("Dealer"), for the use and benefit of MOTORS LIQUIDATION COMPANY, f/k/a General Motors Corporation ("GM"), and GENERAL MOTORS COMPANY ("363 Acquirer").

### RECITALS

A. Dealer and GM are parties to Dealer Sales and Service Agreements for Pontiac, Buick, and GMC Truck motor vehicles (the "Dealer Agreements"). Dealer's dealership operations are located in Pembroke Pines, Florida.

B. Dealer and GM are parties to that certain Wind-Down Agreement dated June 1, 2009 (the "Original Wind-Down Agreement"). All initially capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Original Wind-Down Agreement.

C. GM assigned all of its right, title and interest in the Dealer Agreements and the Original Wind-Down Agreement to the 363 Acquirer.

D. Pursuant to the Original Wind-Down Agreement, Dealer agreed to terminate and cancel the Dealer Agreements and all rights and continuing interests therein by written agreement and to release GM and its related parties from any and all liability arising out of or connected with the Dealer Agreements, any predecessor agreement(s) thereto, and the relationship between GM or the 363 Acquirer and Dealer relating to the Dealer Agreement, and any predecessor agreement(s) thereto, on the terms and conditions set forth herein, intending to be bound by the terms and conditions of this Agreement.

E. Dealer executes this Agreement in accordance with Section 3 of the Original Wind-Down Agreement.

### COVENANTS

NOW, THEREFORE, in consideration of the foregoing recitals and the premises and covenants contained herein, Dealer hereby agrees as follows:

1. Termination of Dealer Agreements.

    (a) Dealer hereby terminates the Dealer Agreements by written agreement in accordance with Section 14.2 thereof. The effective date of such termination shall be November 10, 2009.

    (b) Dealer shall timely pay all sales taxes, other taxes and any other amounts due to creditors, arising out of the operations of Dealer.

    (c) Dealer shall be entitled to receive the Final Payment Amount in accordance with the terms of the Original Wind-Down Agreement.

2. Release; Covenant Not to Sue; Indemnity.

    (a) Dealer, for itself, its Affiliates and any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors, and assigns (collectively, the "Dealer Parties"), hereby releases, settles, cancels, discharges, and acknowledges to be fully satisfied any and all claims, demands, damages, debts,

{00864260.1 BAC-130566 10/14/2009 3:40:12 PM }

liabilities, obligations, costs, expenses, liens, actions, and causes of action of every kind and nature whatsoever (specifically including any claims which are pending in any court, administrative agency or board or under the mediation process of the Dealer Agreements), whether known or unknown, foreseen or unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone claiming through or under Dealer may have as of the date of the execution of this Agreement against GM, the 363 Acquirer, their Affiliates or any of their respective members, partners, venturers, stockholders, officers, directors, employees, agents, spouses, legal representatives, successors or assigns (collectively, the "GM Parties"), arising out of or relating to (i) the Dealer Agreements or this Agreement, (ii) any predecessor agreement(s), (iii) the operation of the dealership for the Existing Model Lines, (iv) any facilities agreements, including without limitation, any claims related to or arising out of dealership facilities, locations or requirements, Standards for Excellence ("SFE") related payments or bonuses (except that the 363 Acquirer shall pay any SFE payments due Dealer for the second (2nd) quarter of 2009 and the 363 Acquirer shall not collect any further SFE related payments from Dealer for the third (3rd) quarter of 2009 or thereafter), and any representations regarding motor vehicle sales or profits associated with Dealership Operations under the Dealer Agreements, or (v) any other events, transactions, claims, discussions or circumstances of any kind arising in whole or in part prior to the effective date of this Agreement, provided, however, that the foregoing release shall not extend to (x) reimbursement to Dealer of unpaid warranty claims if the transactions giving rise to such claims occurred within ninety (90) days prior to the date of this Agreement, (y) the payment to Dealer of any incentives currently owing to Dealer or any amounts currently owing to Dealer in its Open Account, or (z) any claims of Dealer pursuant to Section 17.4 of the Dealer Agreements, all of which amounts described in (x) - (z) above of this sentence shall be subject to setoff by GM or the 363 Acquirer, as applicable, of any amounts due or to become due to GM or the 363 Acquirer, or any of their Affiliates. Neither GM nor the 363 Acquirer shall charge back to Dealer any warranty claims approved and paid by GM or the 363 Acquirer prior to the effective date of termination, as described in Section 1 above, after the later to occur of (A) the date six (6) months following payment, or (B) the effective date of termination, except that GM and the 363 Acquirer may make charge-backs for false, fraudulent or unsubstantiated claims within two (2) years of payment.

(b) Dealer, for itself, and the other Dealer Parties, hereby agrees not to, at any time, sue, protest, institute or assist in instituting any proceeding in any court or administrative proceeding, or otherwise assert (i) any Claim that is covered by the release provision in subparagraph (a) above or (ii) any claim that is based upon, related to, arising from, or otherwise connected with the assignment of the Dealer Agreements or the Original Wind-Down Agreement by GM to the 363 Acquirer in the 363 Sale, if any, or an allegation that such assignment is void, voidable, otherwise unenforceable, violates any applicable law or contravenes any agreement. Notwithstanding anything to the contrary, Dealer acknowledges and agrees that GM and the 363 Acquirer will suffer irreparable harm from the breach by any Dealer Party of this covenant not to sue and therefore agrees that GM and the 363 Acquirer shall be entitled to any equitable remedies available to them, including, without limitation, injunctive relief, upon the breach of such covenant not to sue by any Dealer Party.

(c) Dealer shall indemnify, defend and hold the GM Parties harmless, from and against any and all claims, demands, fines, penalties, suits, causes of action, liabilities, losses, damages, costs of settlement, and expenses (including, without limitation, reasonable attorneys' fees and costs) which may be imposed upon or incurred by the GM Parties, or any of them, arising from, relating to, or caused by Dealer's (or any other Dealer Parties') breach of this Agreement or Dealer's execution or delivery of or performance under this Agreement. "Affiliate" means, with respect to any Person (as defined below), any Person that controls, is controlled by or is under

common control with such Person, together with its and their respective partners, venturers, directors, officers, stockholders, agents, employees and spouses. "Person" means an individual, partnership, limited liability company, association, corporation or other entity. A Person shall be presumed to have control when it possesses the power, directly or indirectly, to direct, or cause the direction of, the management or policies of another Person, whether through ownership of voting securities, by contract, or otherwise.

3. Due Authority. Dealer and the individual(s) executing this Agreement on behalf of Dealer hereby jointly and severally represent and warrant to GM and the 363 Acquirer that this Agreement has been duly authorized by Dealer and that all necessary corporate action has been taken and all necessary corporate approvals have been obtained in connection with the execution and delivery of and performance under this Agreement.

4. Confidentiality. Dealer hereby agrees that, without the prior written consent of both GM and the 363 Acquirer, it shall not, except as required by law, disclose to any person (other than its agents or employees having a need to know such information in the conduct of their duties for Dealer, which agents or employees shall be bound by a similar undertaking of confidentiality), the terms or conditions of this Agreement or any facts relating hereto or to the underlying transactions.

5. Informed and Voluntary Acts. Dealer has reviewed this Agreement with its legal, tax, or other advisors, and is fully aware of all of its rights and alternatives. In executing this Agreement, Dealer acknowledges that its decisions and actions are entirely voluntary and free from any duress.

6. Binding Effect. This Agreement shall be binding upon any replacement or successor dealer as referred to in the Dealer Agreements and any successors or assigns, and shall benefit any of GM's and the 363 Acquirer's successors or assigns.

7. Continuing Jurisdiction. By executing this Agreement, Dealer hereby consents and agrees that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto. The terms of this Section 7 shall survive the termination of this Agreement.

8. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.

9. No Reliance. Dealer represents and agrees that, in delivering this Agreement, it has not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. No waiver, modification, amendment or addition to this Agreement is effective unless evidenced by a written instrument signed by an authorized representative of the parties, and each party acknowledges that no individual will be authorized to orally waive, modify, amend or expand this Agreement. The parties hereto expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express provision requiring a writing signed by the parties.

*[Signature Page Follows]*

{00864260.1 BAC-130566 10/14/2009 3:40:12 PM }                3

IN WITNESS WHEREOF, Dealer has executed this Agreement through its duly authorized representative as of the day and year first above written.

ZINN COMPANIES, INC.

By: _____
Name: Craig M. Zinn
Title: President

 General Motors

### POST TERMINATION NOTIFICATION

**Terminating Dealer Company Information**

Dealership Name: Pines Pontiac-GMC-Buick    BAC: 130566

Physical Street Address: 16100 Pines Blvd.

City: Pembroke Pines    State: FL    Zip: 33027

Phone Number: (954) 967-4111

---

**Terminating Dealer Operator Contact Information**

(Please provide contact information where GM can reach the terminating Dealer Operator and an Alternate Contact for the foreseeable future)

Dealer Operator Name: Craig M. Zinn

Contact street address same as the dealership address shown above? ☐ Y ☒ N

Street Address: 1841 North State Road 7

City: Hollywood    State: FL    Zip: 33021

Contact phone number same as the dealership phone number shown above? ☒ Y ☐ N

Phone Number: _____    Alternate Phone: (954) 967-4110

Email Address: c/o ajockers@czag.net

Is Dealer Company currently represented by counsel? ☒ Yes ☐ No

If represented by counsel, Attorney's Name: Alan N. Jockers, Esq.

If Dealer Company is currently represented by counsel, does Dealer Company prefer LFS discuss bulk sales compliance and tax clearance directly with representatives of the Dealer Company or Dealer Company's attorney? ☒ Dealer Company ☐ Attorney

*(If Dealer Company prefers LFS discuss directly with Dealer Company, please complete the Dealer Counsel Authorization attached and fax to LFS.)*

Firm: Patrica Parke, Controller

Street Address: 1841 North State Road 7

City: Hollywood    State: FL    ZIP: 33021

Phone Number: (954) 967-4111    Alternate Phone: (954) 967-4109

Email Address: pparke@czag.net

**DEALER:** *Fax to your Dealer Business Planning Analyst in the GM Dealer Business Planning Group at 313-667-5461/5462 and LFS at 720-359-8201*

## DEALER COUNSEL AUTHORIZATION

THIS DEALER COUNSEL AUTHORIZATION (this "Authorization") is made as of October 21, 2009, by Alan N. Jockers ("Attorney") and Zinn Companies, Inc. ("Dealer"), for the benefit of LOWE, FELL & SKOGG, LLC ("LFS") and GENERAL MOTORS COMPANY ("GM").

### RECITALS

A. Pursuant to ABA Model Rules of Professional Conduct Rule 4.2, "A lawyer shall not communicate about the subject of the representation with a person a lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order."

B. Pursuant to that certain Post-Termination Notification delivered by Dealer to GM (the "Notification"), to which a form of this Authorization is attached, Dealer indicated that it is represented by Attorney in certain matters related to its GM dealership operations.

C. Dealer stated in the Notification that it prefers that LFS communicate directly with representatives of Dealer other than Attorney with regard to bulk-sales-compliance and tax-clearance matters arising in connection with that certain Wind-Down Agreement (the "Wind-Down Agreement") between Dealer and GM ( and executed by General Motors Corporation, GM's predecessor in interest thereunder). Such matters constitute conditions precedent to GM's obligation to disburse the Final Payment Amount (as defined in the Wind-Down Agreement) to Dealer.

D. Attorney desires to provide written authorization for LFS to conduct such communication.

### CONSENT

1. Representation. Attorney and Dealer hereby acknowledge and agree that Attorney currently represents Dealer in certain matters related to Dealer's dealership operations. Dealer represents that no attorney other than Attorney represents Dealer with respect to the Wind-Down Agreement or the subject matters comprehended thereby.

2. Consent. Dealer and Attorney hereby authorize LFS to communicate directly with representatives of Dealer other than Attorney with regard to any and all matters related to GM's or Dealer's compliance with applicable bulk sales laws and obtaining certificates or other evidence necessary or desirable in confirming that, following the effective date of termination of the Dealer Agreements (as defined in the Wind-Down Agreement), GM will have no liability to pay any tax or imposition levied against Dealer under applicable laws or any amount assessed as a result of Dealer's failure to pay any such tax or imposition.

IN WITNESS WHEREOF, Dealer and Attorney have executed and delivered this Authorization as of the date first mentioned above.

ATTORNEY:

By: _____
Name: Alan N. Jockers, Esq.
Title: In-House General Counsel

DEALER:

By: _____
Name: Craig M. Zinn
Title: President

*Please fax executed Authorization to LFS at 720-359-8201*