BUTZEL LONG, a professional corporation
Barry N. Seidel
Eric B. Fisher
380 Madison Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
seidel@butzel.com
fishere@butzel.com

Special Counsel to the Official Committee of Unsecured
Creditors of Motors Liquidation Company f/k/a General
Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Case No. 09-50026 (REG)** |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, **f/k/a General Motors Corp.,** *et al.* | **Chapter 11** |
| | **(Jointly Administered)** |
| **Debtors.** | |

**SECOND SUPPLEMENTAL DECLARATION AND
DISCLOSURE STATEMENT OF BARRY N. SEIDEL RELATING
TO THE EMPLOYMENT OF BUTZEL LONG AS SPECIAL COUNSEL
TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Barry N. Seidel declares as follows:

1. I am an attorney admitted to practice in the State of New York and the United States Bankruptcy Court for the Southern District of New York. I am a shareholder of the law firm of Butzel Long, a professional corporation ("Butzel Long"), which maintains an office at 380 Madison Avenue, New York, New York 10017.

2. I submit this second supplemental declaration ("Second Supplemental Declaration") in connection with the application dated June 30, 2009 (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors

(collectively, the "Debtors") for the entry of an order authorizing the Committee's retention of Butzel Long as Special Counsel to the Committee in these cases pursuant to Section 1103 of Title 11, United States Code (the "Bankruptcy Code"), and to provide the disclosures required under Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. Unless otherwise stated in this Second Supplemental Declaration, I have personal knowledge of the facts hereinafter set forth. To the extent that any information disclosed herein requires subsequent amendment or modification upon Butzel Long's completion of further analysis or as additional creditor information becomes available, one or more supplemental declarations will be submitted to the Court reflecting the same.

4. This Second Supplemental Declaration supplements (a) my declaration sworn to on June 30, 2009 (the "Original Declaration"), and (b) my declaration sworn to on November 30, 2009 (the "First Supplemental Declaration" and together with the Original Declaration, the "BNS Declarations"), each submitted in support of the Application.

5. On July 31, 2009, the Committee commenced an adversary proceeding (the "Adversary Proceeding") challenging, *inter alia*, the security interest of more than 400 lenders (collectively, the "Defendants" or "Term Lenders") to a certain term loan agreement, dated as of November 29, 2006, as amended by that certain first amendment dated as of March 4, 2009, and sought to recover each Defendant's ratable share of more than $1.4 billion paid by the Debtors to the Defendants, in the aggregate. Butzel Long represents the Committee in the Adversary Proceeding.

6. JP Morgan Chase Bank, N.A. ("JPM") serves as the administrative agent for the Term Lenders and is itself one of the Defendants named in the Adversary Proceeding.

2

7. On or about January 21, 2010, I became aware that Regan Dahle, a shareholder of Butzel Long whose office is in Ann Arbor, Michigan, filed a "Declaration of Disinterestedness" in connection with Butzel Long being retained as an "ordinary course professional" in the Cooper-Standard chapter 11 case, which is pending in the United States Bankruptcy Court for the District of Delaware (the "C-S Declaration"). The C-S Declaration identified "JPMorgan Chase" as a "current client" of Butzel Long. Inasmuch as I knew that: (a) the name "JP Morgan Chase" had been processed through Butzel Long's conflict database in connection with the preparation of my Original Declaration, and (b) neither my Original Declaration nor my First Supplemental Declaration disclosed my firm's representation of any JP Morgan Chase entity, I immediately made inquiry of Ms. Dahle and other representatives of Butzel Long who are responsible for maintaining the firm's conflict records, to explain the apparent inconsistency between the C-S Declaration and the BNS Declarations.

8. After diligent review of all of the facts related to this matter, I make the following additional disclosures related to Butzel Long's historical and current relationship with JPM:

   (a) One of the areas of Butzel Long's legal expertise is trust and estates matters (collectively "T&E Matters"). For more than fifty (50) years, the firm has represented, among others, individuals with respect to estate planning matters.

   (b) When an individual for whom Butzel Long has provided estate planning services, dies, often the firm is called upon, by the estate administrator, personal representative or trustee, to provide legal services in connection with the administration of the decedent's estate.

3

(c) Often a trust department at a bank or other financial institution is named in a decedent's will as the trustee or personal representative of the decedent's estate. National Bank of Detroit ("NBD") and Bank One are two of the financial institutions which served as personal representative or trustee of estates created upon the deaths of certain Butzel Long clients. Neither NBD nor Bank One are in existence today.

(d) Butzel Long has not had a uniform view as to whether the client, in T&E Matters, was the decedent's estate or the trustee (or other estate fiduciary). Accordingly, Butzel Long's conflict database has been inconsistently maintained; in some cases the firm's client is listed as the decedent or his estate, while in other cases the trustee or personal representative is listed. Since I have identified the apparent inconsistency between the C-S Declaration and the BNS Declarations, Butzel Long has undertaken to update its conflict database to reflect that, in T&E Matters, the firm's client is the applicable estate fiduciary.

(e) When Butzel Long undertook any T&E Matter in which NBD or Bank One was involved, it was based upon the understanding and agreement by NBD or Bank One, as the case may be, that such representation would not preclude Butzel Long from representing clients with interests adverse to NBD or Bank One in any commercial matter, but such financial institutions would not agree to grant Butzel Long an advance waiver for any prospective representation by Butzel Long of a party with an adverse

4

        interest in any T&E Matter.[1]  This waiver allowed Butzel Long to sue NBD or Bank One on behalf of clients in various commercial matters but precluded Butzel Long from accepting the representation of any potential client with respect to a matter which would be adverse to NBD's or Bank One's trust department.[2]

(f)       In 1995, NBD was merged with The First National Bank of Chicago and the resulting entity, First Chicago NBD, was acquired by Bank One in 1998.

(g)      In July, 2004, Bank One was merged with and into JP Morgan Chase & Co. (the "Merger").

(h)      After the Merger, Butzel Long continued to be involved in T&E Matters in which JPM has served as trustee or personal representative, as successor to Bank One.  However, Butzel Long has not been engaged by JPM with respect to any new T&E Matter since the Merger.

---

[1] The American College of Trust and Estate Counsel has opined that:

"A lawyer who is asked to represent a corporate fiduciary in connection with a fiduciary estate should consider discussing with the fiduciary the extent to which the representation might preclude the lawyer from representing an adverse party in an unrelated matter.  In the absence of a contrary agreement, a lawyer who represents a corporate fiduciary in connection with the administration of a fiduciary estate should not be treated as representing the fiduciary generally for purposes of applying [Model Rule of Professional Conduct] 1.7 with regard to a wholly unrelated matter.  In particular, the representation of a corporate fiduciary in a representative capacity should not preclude the lawyer from representing a party adverse to the corporate fiduciary in connection with a wholly unrelated matter, such as a real estate transaction, labor negotiation, or another estate or trust administration."  THE AMERICAN COLLEGE OF TRUST AND ESTATE COUNSEL FOUNDATION, COMMENTARIES ON THE MODEL RULES OF PROFESSIONAL CONDUCT 93 (4th ed. 2006).

[2] Butzel Long was free to seek a specific waiver from Bank One or NBD if the firm wished to represent a party with interests adverse to NBD or Bank One in any T&E Matter.

gm second supplement to seidel affidavit re_ waiver bns 030410 (3).doc

(i) When the results of the conflict check I originally requested were reviewed, Butzel Long's conflict managers determined that the firm's client (and the real party in interest) in the T&E Matters was the decedent's estate, and was not the trustee, and I was so informed. When I read the C-S Declaration, I asked my firm's conflict and ethics experts to re-examine the conflict issue. While I understand that the issue is not free from doubt, Butzel Long now recognizes the possibility that JPM may be Butzel Long's client in those T&E Matters where it is acting as personal representative of the decedent's estate.[3] If JPM is in fact a current Butzel Long client (even in JPM's fiduciary capacity), it is necessary and appropriate that the following additional disclosures be made to the Court, the United States Trustee and all other parties in interest:

i. At certain times, prior to the petition date, Butzel Long represented JPM in both its fiduciary and individual capacities. However on and after the petition date (through the date hereof), Butzel Long has only represented JPM in its fiduciary capacity. Butzel Long currently represents four (4) estates where JPM is serving in its fiduciary capacity as personal representative (collectively, the "JPM T&E Matters"). Butzel Long does not currently represent JPM in any matter other than the JPM T&E Matters.

---

[3] Butzel Long's ability to represent the Committee in connection with the Adversary Proceeding is not impaired as the firm has a waiver to be adverse to JPM (as successor to NBD and Bank One) in any commercial matter (i.e., any matter which is not a T&E Matter).

6

      ii.      The aggregate legal fees paid to Butzel Long with respect to all JPM T&E Matters in 2007, 2008 and 2009 was $1,155, $2,745 and $21,732, respectively. The aggregate legal fees paid to Butzel Long by JPM with respect to matters other than JPM T&E Matters in 2007, 2008 and 2009 was $74, $101,958 and $337, respectively. In each of the last three years (2007, 2008 and 2009), the fees paid by JPM to Butzel Long (with respect to both JPM T&E Matters and other JPM matters collectively) represent less than 0.12% of Butzel Long's revenues in each such year.

      iii.      Consistent with the existing waiver, Butzel Long has represented, and continues to represent, clients with interests directly adverse to JPM. In addition to the representation of the Committee in the Adversary Proceeding, Butzel Long's records reflect that it is currently representing more than ten (10) clients in commercial matters where JPM is an adverse party.

9.      In sum, insofar as I have been able to ascertain based upon our analysis and review of all facts and circumstances, Butzel Long remains a "disinterested person" as defined in 11 U.S.C. § 101(14), and does not represent any entity having an adverse interest in this case within the meaning of 11 U.S.C. § 1103(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
March 4, 2010

/s/Barry N. Seidel
Barry N. Seidel