Deborah Kovsky-Apap
Matthew J. Lund (*pro hac vice pending*)
PEPPER HAMILTON LLP
Suite 3600
100 Renaissance Center
Detroit, Michigan 48243
Telephone:  313.259.7110
Facsimile:  313.259.7926
*Ordinary Course Professionals  for Motors Liquidation Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 Case No. |
|  | 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, *et al.*, |  |
| f/k/a General Motors Corp., *et al.*, | (Jointly Administered) |
|  |  |
| Debtors. |  |
|  |  |
| MOTORS LIQUIDATION COMPANY, |  |
|  |  |
| Plaintiff, |  |
|  | Adv. Pro. No. 10-_____ |
| v. |  |
|  |  |
| MCM Management Corp., |  |
|  |  |
| Defendant. |  |

**COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT, AVOIDANCE OF
PREFERENTIAL TRANSFER, DECLARATORY JUDGMENT AND
<u>OBJECTING TO CLAIM NO. 371 FILED BY MCM MANAGEMENT CORP.</u>**

Motors Liquidation Company, f/k/a General Motors Corp. ("<u>MLC</u>" or "<u>Plaintiff</u>"), through its undersigned counsel, hereby objects to the proof of claim filed by MCM Management Corp. ("<u>MCM</u>" or "<u>Defendant</u>") in MLC's Chapter 11 case, which was assigned Claim No. 371. MLC also asserts counterclaims against Defendant as stated herein. For its objection to claim and for its counterclaim, MLC states the following:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff MLC is a Delaware corporation with its principal place of business in Detroit, Michigan. MLC is a debtor in bankruptcy whose Chapter 11 case is jointly administered under the above-captioned case.

2. Upon information and belief, Defendant MCM is a Michigan corporation with its principal place of business in Bloomfield Hills, Michigan.

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Defendant filed a claim against MLC. In doing so, Defendant submitted to the jurisdiction of this Court.

## GENERAL ALLEGATIONS

5. Prior to its bankruptcy filing on June 1, 2009 (the "Petition Date"), MLC awarded several demolition contracts (the "Demolition Contracts") through competitive bid to Defendant.

6. The Demolition Contracts involved the demolition of several former General Motors manufacturing sites, known as Muncie Manual Transmission, Pontiac Validation Center, Lansing Plants 1 and 6, Lansing Plants 2 and 3 and Building 70, and Grand Blanc (collectively, the "Demolition Sites").

7. Each of the Demolition Contracts consists of a "Demolition Package" describing the scope of the work to be performed, the Construction General Conditions GM 1638 (05/2005) (the "Terms & Conditions"), and a purchase order incorporating by reference the

Demolition Package and Terms & Conditions. Upon information and belief, copies of the Demolition Contracts are in Defendant's possession.

8. In addition to the Demolition Contracts, MLC and Defendant entered into agreements (the "Building Contracts") whereby Defendant would pay to purchase from MLC the buildings (the "Buildings"), but not the underlying land, at the Demolition Sites.

9. Each of the Building Contracts required Defendant to dispose of all machinery, fixtures, attachments and structures located within the designated area in accordance with the Demolition Contracts.

10. The intent of the Demolition Contracts and Building Contracts, taken together, was that Defendant would be paid for its demolition work through the proceeds of the material harvested from the Buildings. Specifically, Defendant was to make an upfront payment to MLC, after which it was to free to dismantle and demolish the Buildings. Defendant would recoup its upfront payment and realize profit on the projects through stripping out and selling steel and other valuable scrap materials from the Demolition Sites.

11. With respect to all of the Demolition Sites other than Muncie Manual Transmission, Defendant was also obligated to share with MLC any scrap material revenue above a certain threshold point.

12. With respect to the Grand Blanc site, the applicable Demolition Contract required Defendant to share with MLC the revenue from the sale of certain stamping dies.

13. Defendant has failed to make payment in full for the Buildings. Specifically, Defendant has failed to pay and owes MLC $3,500,000 for Lansing Plants 2 and 3 and $3,597,000 for Grand Blanc.

14. Defendant has failed to share any scrap material or stamping die revenue with MLC. Upon information and belief, Defendant owes MLC a substantial amount of shared revenue under the Demolition Contracts.

15. Defendant has refused to make payment in full for the Buildings or to share scrap or stamping die revenue with MLC.

16. Upon information and belief, Defendant claims that it is owed money by MLC for additional work performed outside the scope of the Demolition Contracts and for delay damages, including lost profits.

17. On May 28, 2009, just four days before the Petition Date, Defendant recorded construction and/or mechanic's liens on the underlying real estate at the Demolition Sites (collectively, the "Liens"). Defendant alleged in its Lien claims that it is owed a total of $22,476,106.00 by MLC.

18. Also on May 28, 2009, Defendant recorded its purported interest in the Buildings.

19. On June 26, 2009, Defendant filed a proof of claim in MLC's Chapter 11 case, asserting that it has a secured claim in the amount of $22,476,106.00 (the "Claim").

20. Defendant has no valid basis for its Claim that MLC owes it $22,476,106.00.

21. MLC did not cause undue delays of work under any of the Demolition Contracts.

22. Furthermore, Section 7.3.2.2 of the Terms & Conditions expressly limits damages for any delay caused by MLC to "the direct, unavoidable net expenses (without mark-

up for overhead or profit) incurred by [Defendant] which shall, in all cases, exclude lost profits and consequential damages."

23. Upon information and belief, some or all of the additional scope of work included in Defendant's Claim has either been paid already, or was not approved by MLC pursuant to the Demolition Contracts and is therefore not entitled to payment.

24. During the period leading up to the filing of this complaint, Defendant had effectively stopped working on the Demolition Sites.

25. Section 2.5 of the Terms & Conditions provides that, if a contractor fails to complete the work or to perform any other obligation under a contract, MLC has the right to rectify the situation to its satisfaction, including completion of the work through separate contracts with other parties, and the breaching contractor shall be responsible for paying MLC's costs in doing so.

26. Additionally, Defendant obtained a water discharge permit to discharge accumulated ground water at the Grand Blanc Demolition Site (the "<u>Discharge Permit</u>").

27. Pursuant to §§ 1.2 and 3.10 of the Terms & Conditions, Defendant is responsible to pay the cost of all permits (other than a general building permit) required in order to complete the work under the Demolition Contracts.

28. Defendant incurred a total bill of $218,561.86 in principal under the Discharge Permit, not including interest, fees or penalties. Defendant defaulted on payment of this debt. As a result, Genesee County has recorded a lien against MLC's real property at Grand Blanc.

## COUNT I
## <u>OBJECTION TO CLAIM NO. 371</u>

29. MLC incorporates by reference all prior allegations of this Complaint.

30. MLC objects to Claim No. 371 filed by Defendant in the amount of $22,476,106 because MLC does not owe that sum to Defendant.

31. Defendant's Claim amount is based in part upon damages for delay, but MLC did not cause undue delays of work under the Demolition Contracts.

32. Defendant's Claim amount is based in part upon damages for delay that exceed the scope of permissible delay damages to which Defendant agreed under the Demolition Contracts.

33. Defendant's claim seeks damages that are not recoverable under applicable law.

34. Defendant's Claim amount is based in part upon additional scope of work that has been paid already, or was not approved by MLC pursuant to the Demolition Contracts.

35. Defendant's Claim amount does not take into consideration the amount that Defendant owes MLC under the Building Contracts and Demolition Contracts.

36. When the amounts owed by Defendant to MLC and the corrected amount of Defendant's Claim are taken into consideration in the reconciliation of Defendant's Claim, the allowable amount of Defendant's Claim is far less than $22,476,106 and may be zero.

37. MLC further objects to Defendant's Claim because Defendant filed its Claim as a secured claim based upon the Liens.

38. Upon information and belief, the properties upon which the Liens were recorded were already fully encumbered. Accordingly, the allowable amount of MLC's Claim, if any, is wholly unsecured.

WHEREFORE, by reason of the foregoing, MLC respectfully requests that the Court disallow Defendant's Claim in the secured amount asserted and allow such Claim only in an unsecured amount, if any, to be determined at trial.

## COUNT II
## COUNTERCLAIM TO RECOVER MONEY DAMAGES
## FOR BREACH OF CONTRACT

39. MLC incorporates by reference all prior allegations of this Complaint.

40. Defendant has breached the Building Contracts by failing and refusing to make payment in full for the Buildings.

41. Defendant has breached the Demolition Contracts by failing and refusing to share scrap material and stamping die revenue with MLC.

42. Defendant has breached the Demolition Contracts by failing and refusing to complete work at the Demolition Sites in accordance with the Demolition Contracts.

43. Defendant has breached the Demolition Contracts by failing and refusing to pay the fees incurred under the Discharge Permit.

44. MLC has suffered damages due to Defendant's breaches of the Building Contracts and the Demolition Contracts.

45. MLC anticipates that it will suffer further damages due to Defendant's breaches of the Demolition Contracts because MLC will be forced to incur significant costs to complete the necessary work at the Demolition Sites, and to expend time and resources to attempt to clear title to the Grand Blanc property.

WHEREFORE, by reason of the foregoing, MLC respectfully requests that the Court award MLC damages for Defendant's breaches of contract in an amount to be determined at trial.

## COUNT III
## AVOIDANCE OF PREFERENTIAL TRANSFER UNDER 11 U.S.C. § 547

46. MLC incorporates by reference all prior allegations of this Complaint.

47. Within 90 days before the Petition Date, Defendant recorded its purported interest in the Buildings (the "Preferential Transfers").

48. The Preferential Transfers to Defendant were to or for the benefit of Defendant as a creditor.

49. The Preferential Transfers to Defendant were for or on account of an antecedent debt allegedly owed by MLC before such transfers were made.

50. The Preferential Transfers to Defendant were made while MLC was insolvent.

51. The Preferential Transfers to Defendant were made on or within 90 days before the Petition Date.

52. The Preferential Transfers enabled Defendant to receive more than Defendant would receive if (a) MLC's case were a case under Chapter 7 under Title 11 of the United States Code, (b) the transfers had not been made, and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

WHEREFORE, by reason of the foregoing, MLC respectfully requests that the Court avoid the Preferential Transfers.

## COUNT IV
## DECLARATORY JUDGMENT

53. MLC incorporates by reference all prior allegations of this Complaint.

54. MLC has the contractual right under the Demolition Contracts (incorporated by reference in the Building Contracts), among other things, to complete the work

-8-

at the Demolition Sites through separate contracts with other parties (the "Completion Rights"), with all expenses incurred by MLC in doing so to be reimbursed by Defendant.

55. MLC's Completion Rights include the right to demolish and dispose of the Buildings.

56. MLC's Completion Rights are not dependent upon ownership of the Buildings or upon any property interest that Defendant may assert with respect to the Buildings.

57. Under the Declaratory Judgment Act, this Court may, "[i]n the case of actual controversy within its jurisdiction, […] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought or could be sought." 28 U.S.C. §2201(a).

58. This Complaint presents an actual controversy, within the meaning of 28 U.S. C. §2201(a), concerning MLC's Completion Rights, and Defendant's obligation to reimburse MLC for the completion of work at the Demolition Sites.

WHEREFORE, by reason of the foregoing, MLC respectfully requests that the Court declare the rights and liabilities of the parties, including a declaration that MLC is entitled to exercise its Completion Rights irrespective of any property interest that Defendant may assert with respect to any of the Buildings.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Motors Liquidation Company, respectfully requests that this Court enter judgment against Defendant in the following manner:

1. An order disallowing Defendant's claim in the secured amount asserted, and allowing such Claim only in an unsecured amount, if any, to be determined at trial;
2. A money judgment in an amount to be determined at trial, as well as pre-judgment and post-judgment interest and costs;
3. A judgment avoiding the Preferential Transfers;

4. A declaratory judgment that MLC is entitled to exercise its Completion Rights irrespective of any property interest that Defendant may assert with respect to any of the Buildings; and

5. An award of MLC's costs, attorneys' fees and whatever further relief this Court may deem appropriate.

Dated:  March 5, 2010

Respectfully submitted,

PEPPER HAMILTON LLP

/s/  Deborah Kovsky-Apap
Deborah Kovsky-Apap
Matthew J. Lund (*pro hac vice pending*)
Suite 3600
100 Renaissance Center
Detroit, Michigan 48243
Telephone:  313.259.7110
Facsimile:  313.259.7926

*Ordinary Course Professionals for Motors Liquidation Company*