**PRESENTMENT DATE AND TIME: March 31, 2010 at 12:00 noon (Eastern Time)**
**OBJECTION DEADLINE: March 31, 2010 at 11:30 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :    09-50026 (REG)
      f/k/a General Motors Corp., et al.  :
                                          :
                      Debtors.            :    (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

## NOTICE OF PRESENTMENT OF
## ORDER PURSUANT TO 11 U.S.C. § 327(a)
## AND FED R. BANKR. P. 2014 AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF PLANTE & MORAN, PLLC AS
## ACCOUNTANTS AND CONSULTANTS *NUNC PRO TUNC* TO OCTOBER 9, 2009

PLEASE TAKE NOTICE that upon the annexed Application, dated March 17,

2010 (the "**Application**"), of Motors Liquidation Company (f/k/a General Motors Corporation)

("**MLC**") as debtor in possession, for an order, pursuant to section 327(a) of title 11, United

States Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "**Local Rules**") authorizing the retention and employment of Plante & Moran, PLLC

("**P&M**") to perform certain accounting and consulting services, *nunc pro tunc* to October 9,

2009, all as more fully set forth in the Application, MLC will present the attached proposed order

to the Honorable Robert E. Gerber, United States Bankruptcy Judge, for signature on **March 31, 2010 at 12:00 noon (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the proposed order must be in writing, shall conform to the Bankruptcy Rules and the Local Rules, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit, Michigan 48243 (Attn: Ted Stenger); (iii) General Motors, LLC, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, DC 20220 (Attn:  Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Amy Caton, Esq.,

Lauren Macksound, Esq., and Jennifer Sharret, Esq.); (xii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Diana G. Adams, Esq.); (xiii) the U.S. Attorney's Office, S.D.N.Y., 86

Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and

Natalie Kuehler, Esq.); and (xiv) Plante & Moran, PLLC, 27400 Northwestern Highway, P.O.

Box 307, Southfield, Michigan 48037 (Attn: Michael A. Colella), so as to be received no later

than **March 31**, **2010, at 11:30 a.m. (Eastern Time)** (the "**Objection Deadline**").  Unless

objections are received by the Objection Deadline, the order may be signed.

Dated: New York, New York
        March 17, 2010

         /s/ Stephen Karotkin
         Harvey R. Miller
         Stephen Karotkin
         Joseph H. Smolinsky

         WEIL, GOTSHAL & MANGES LLP
         767 Fifth Avenue
         New York, New York 10153
         Telephone: (212) 310-8000
         Facsimile: (212) 310-8007

         Attorneys for Debtors
         and Debtors in Possession

**PRESENTMENT DATE AND TIME: March 31, 2010 at 12:00 noon (Eastern Time)**
**OBJECTION DEADLINE: March 31, 2010 at 11:30 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                         :
In re                                    :        Chapter 11 Case No.
                                         :
MOTORS LIQUIDATION COMPANY, et al.,      :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                         :
                Debtors.                 :        (Jointly Administered)
                                         :
------------------------------------------------------------x
```

**APPLICATION OF MOTORS LIQUIDATION**
**COMPANY FOR ENTRY OF ORDER PURSUANT**
**TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014 AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF PLANTE & MORAN, PLLC AS**
**ACCOUNTANTS AND CONSULTANTS *NUNC PRO TUNC* TO OCTOBER 9, 2009**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation), as debtor in

possession ("**MLC**") respectfully represents:

**Relief Requested**

1.      Pursuant to section 327(a) of title 11, United States Code (the

"**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), MLC seeks entry of an order authorizing the retention and employment of Plante & Moran, PLLC ("**P&M**") to perform certain accounting and consulting services, including tax compliance and tax consulting services, assessing and assisting in the implementation of and monitoring of MLC's system of internal accounting control, and other related accounting and consulting services on an as requested basis (collectively, the "**Accounting Services**") pursuant to the engagement letter between P&M and MLC, dated March 17, 2010, a copy of which is annexed hereto as **Exhibit "A"** (the "**Engagement Letter**"), *nunc pro tunc* to October 9, 2009.

### Jurisdiction

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

3.      In connection with the ongoing administration of their estates in chapter 11, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), are preparing tax returns, financial reports and implementing a system of internal accounting procedures and financial reporting controls. In order for the Debtors to properly engage in these activities and tasks, they believe the Accounting Services of P&M are necessary and appropriate. The provision of these services is consistent with and typical of services provided by P&M to other clients, both in and outside of bankruptcy.

4.      Pursuant to the Transition Services Agreement, dated as of July 10, 2009 (the "**TSA**") between the Debtors and General Motors LLC (f/k/a/ NGMCO, Inc.) ("**New GM**"),

the Debtors have been using the services of New GM to prepare certain tax returns.  As of

January 31, 2010, MLC has ceased using New GM's services in the preparation of tax returns

and, thus, requires the Accounting Services of P&M with respect to the preparation of tax returns

on an ongoing basis.  In addition, certain other accounting services provided to the Debtors by

New GM will be terminating, thereby requiring the Debtors to obtain the services of P&M as

provided in the Engagement Letter.

## The Engagement Letter

5.      In furtherance of the foregoing, and subject to the approval of this Court,

MLC is seeking authority to retain P&M to render the Accounting Services as provided in the

Engagement Letter.  The salient terms of the Engagement Letter are as follows:[1]

(a)      Tax Related Services.  P&M will provide various tax services for MLC,

including preparing tax returns and providing tax planning and consulting services

relating to the transition of tax filing responsibilities from New GM to MLC and relating

to ongoing operations and transitions.

(b)      Financial Reporting and Internal Controls.  P&M will provide consulting

and other services relating to MLC's internal controls, including evaluation of the

current system, and implementing procedures to test the effectiveness of such controls.

---

[1] The description of the Engagement Letter contained herein is intended to be a summary for the convenience of the
Court and parties in interest and is not intended to modify any of the terms of the Engagement Letter.  As such, the
description of the Engagement Letter in this Application is qualified in all respects by the terms of the Engagement
Letter.  In the event of any conflict between the text of this Application and the Engagement Letter, the Engagement
Letter shall govern.

(c)      MLC may engage P&M to provide other financial, tax, and related

assistance, which services may range from financial staffing assistance to information

technology assistance.  P&M will not formally audit any of the Debtors.

(e)      P&M will be compensated based on the amount of professional time

required at the following hourly rates, which rates represent the customary hourly rates

charged by P&M with respect to retentions of this nature:

| Professional | Hourly Compensation |
|---|---|
| Partner | $300 - 450 |
| Associate | $150 - 350 |
| Staff | $80 - 200 |
| Paraprofessional & Admin. | $75 - 125 |

(f)      In addition to the rates set forth above, the Debtors shall reimburse P&M

for any travel expenses and out-of-pocket costs expenses incurred in connection with the

performance of the Accounting Services.

6.      P&M's hourly rates are revised semi-annually in the ordinary course of

business.  If a rate change is effective during the course of P&M's retention by MLC, P&M shall

advise MLC of such new rates.

7.      MLC shall indemnify and hold harmless P&M, and all of its partners and

staff, from any losses, claims, damages, or liabilities, to which P&M may become subject in

connection with the provision of the Accounting Services, unless a court having jurisdiction shall

have determined in a final judgment that such loss, claim, damage, or liability resulted primarily

from the negligence of P&M, or one of its partners or staff.  This includes the agreement to

reimburse P&M for any legal or other expenses incurred by P&M, as incurred, in connection

with investigating or defending any such losses, claims, damages, or liabilities.

## Disinterestedness of P&M

8.       To the best of MLC's knowledge, information, and belief, and based upon

the Declaration of Michael A. Colella, a partner at P&M, annexed hereto as **Exhibit** "**B**" (the

"**Colella Declaration**"), neither P&M nor any professional employee of P&M has any

connection with or any interest adverse to the Debtors, their creditors, or any other party in

interest, or their respective attorneys and accountants, except as may be set forth in the Colella

Declaration.

9.       Based upon the Colella Declaration, MLC believes that P&M is a

"disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as

modified by section 1107(b) of the Bankruptcy Code.  MLC has been informed that P&M will

conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if

any new relevant facts or relationships are discovered, P&M will supplement its disclosure to the

Court.

## The Relief Requested Should Be Approved by the Court

10.      Section 327(a) of the Bankruptcy Code provides, in relevant part, that

MLC "with the court's approval, may employ one or more attorneys, accountants, appraisers,

auctioneers, or other professional persons, that do not hold or represent an interest adverse to the

estate, and that are disinterested persons, to represent or assist" MLC in carrying out its duties

under the Bankruptcy Code.

11.      P&M is a well respected and experienced professional accounting firm.

MLC believes that P&M possesses extensive accounting, tax, and consulting expertise useful in

these cases and that P&M is well-qualified to perform the Accounting Services as provided in

the Engagement Letter.

12.     Furthermore, P&M has indicated a desire and willingness to act in these chapter 11 cases and render the necessary Accounting Services for MLC on the terms set forth in the Engagement Letter and described herein.  MLC believes that the services to be rendered by P&M are necessary and appropriate for the proper, economic, and efficient administration of these chapter 11 cases and that the fees proposed to be charged by P&M are fair and reasonable under the circumstances.

13.     Further, *nunc pro tunc* retention is appropriate to allow P&M to be compensated for the Accounting Services performed on behalf of the Debtors since October 9, 2009, but prior to the submission of this Application.  In view of the transition of various services from New GM to MLC since the sale of substantially all of the Debtors' assets, the actual scope of services to be provided by P&M and to be included in the Engagement Letter took some time to finalize.  Because the Debtors needed the services of P&M to commence in October, P&M agreed to commence rendering services well prior to the time all of the terms of its Engagement Letter had been finalized.  The Debtors submit that in view of the value of the services rendered by P&M since October, and the fact that this Application was delayed through no fault of P&M, *nunc pro tunc* retention as requested herein is appropriate.

14.     Accordingly, MLC submits that the retention of P&M on the terms and conditions set forth in the Engagement Letter is necessary and appropriate, is in the best interests of their estates, creditors, and all other parties in interest, and should be granted in all respects.

**Fee Applications**

15.     P&M will file interim and final fee applications for allowance of its compensation and expenses with respect to its Accounting Services in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy

Rules, Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such

other procedures as may be fixed by order of this Court, including but not limited to the Court's

Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals, dated August 7, 2009 [Docket No. 3711].

### **Notice**

16.    Notice of this Application has been provided to P&M and parties in

interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P.

1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009

[Docket No. 3629].  MLC submits that such notice is sufficient and no other or further notice

need be provided

17.    No previous request for the relief sought herein has been made by MLC to

this or any other Court.

WHEREFORE MLC respectfully requests entry of an order granting the relief

requested herein and such other and further relief as is just.


Dated: New York, New York
       March 17, 2010

                              /s/ Stephen Karotkin
                              Harvey R. Miller
                              Stephen Karotkin
                              Joseph H. Smolinsky

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007

                              Attorneys for Debtors
                              and Debtors in Possession

## Exhibit A

## Engagement Letter



Plante & Moran, PLLC
27400 Northwestern Highway
PO Box 307
Southfield MI 48037-0307
Tel 248 352 2500
Fax 248 352 0018
plantemoran.com

March 17, 2010

Mr. James Selzer
Vice President and Treasurer
Motors Liquidation Company
GM Global Headquarters
300 Renaissance Center
Detroit, MI 48265

Dear Mr. Selzer:

We are complimented by your selection of our firm to assist you. We are sending this letter and the accompanying Professional Services Agreement, which is hereby incorporated as part of this engagement letter, to confirm our understanding of the nature and limitations of the services Plante & Moran, PLLC (P&M) will provide and the terms of our engagement with Motors Liquidation Company ("MLC" or "Debtor") to provide these services *nunc pro tunc* to October 9, 2009.

**Scope of Services** – We have been engaged to assist MLC with the following general areas:

- Tax compliance and tax consulting services
- Periodic verification/testing procedures on amounts financially reported
- Assess, assist in implementing and periodic monitoring of MLC system of internal control
- Other accounting and consulting services on an as requested basis

The above services will be coordinated directly with MLC's financial management team and/or Board of Directors to determine specifics regarding timing, extent and level of reporting requirements required for the various services. The Board of Directors may also retain P&M directly as it deems appropriate to assist it in fulfilling its duties.

Outlined below are specific activities and approaches we will execute relating to the above identified services.

*Tax*

We will prepare MLC tax returns for periods commencing with the effective date (expected to be January 31, 2010) MLC ceases using General Motors Company ("GM") for such services under its Transition Services Agreement ("TSA"). The tax returns to be prepared will be determined collectively with MLC's Chief Tax Officer based on a joint review of MLC's continuing requirements for tax filings with taxing authorities, including federal, state, local and foreign authorities. It is currently expected to also include the income tax returns for the period from July 10, 2009 ("363 sale date") through December 31, 2009 ("B Period Returns").



Mr. James Selzer
Motors Liquidation Company                           2                                  March 17, 2010

We will also provide tax planning and consulting services in connection with the January 2010 transition of tax filing responsibilities from GM to MLC, as well as tax planning and consulting services related to ongoing operations and transactions.

*Transition tax planning and consulting will include:*

- Assistance with corporate reorganization plans to reduce accounting and tax compliance burden
- Assistance with tax planning related to sale of assets
- Assistance with tax implications arising from the discharge of indebtedness for MLC and related entities
- Assistance with withdrawals from state and local tax jurisdictions for liquidated or merged subsidiaries
- Identification, if any, of tax incentives, grants or credits that were retained by MLC

*Tax compliance services will include the preparation of:*

- Federal income tax returns
- State and local Income and franchise tax returns
- Sales, use, and gross receipts (excise) tax returns
- Personal property tax returns
- Quarterly estimated tax
- Reports associated with retained tax incentives, grants or credits

*Ongoing tax planning and consultation services could include:*

- Assistance in structuring liquidations and mergers
- Tax planning around timing of gain or loss recognition in sale of properties
- Analysis of tax issues arising from the Chapter 11 Bankruptcy
- Planning for tax implications concerning sale or distribution of General Motors company stock
- Assistance with federal, state and local tax audits and controversies
- Review of sales or seller's use tax exemptions related to liquidation/sale of assets
- Assistance with personal property tax reductions related to idle or obsolete property
- Assistance with real property tax appeals
- Tax planning for utilization of foreign tax credits
- Tax planning associated with repatriation of earnings from foreign operations

The consulting services will be determined collectively with MLC's Chief Tax Officer based on a joint review of MLC's continuing requirements and agreement with MLC with regard to the nature, timing and extent of the services that we will provide.

### Financial Reporting and Internal Controls

We will provide consulting and other services related to MLC's internal controls, including evaluation of the current and assistance in the future design and implementation of MLC's accounting procedures and controls, procedures to test the implementation and operating effectiveness of those procedures and controls, and procedures to validate cash receipts and cash disbursement transactions.



Mr. James Selzer
Motors Liquidation Company                         3                         March 17, 2010

These services will include the following:

1. Initial planning and strengthening of controls
   - Review and evaluate the design of the procedures and controls of MLC
   - Identifying potential deficiencies to MLC's management
   - Assist in the development of appropriate corporate governance documents
   - Assist in the development and implementation of accounting policies and procedures
   - Confirm that the planned procedures and controls have been placed in operation
   - Provide assistance to management in identifying and prioritizing significant accounts, transactions, and compliance requirements for specific testing
   - Evaluate and recommend improvements to accounting systems security and controls

2. Periodic testing of transactions reported and internal controls
   - Confirm procedures and controls are present and implemented as intended
   - Perform tests of cash receipts, cash disbursements and cash balances agreed-upon
   - Provide a report outlining the procedures performed, results and recommendations

The internal control and financial reporting services provided will be determined based on review of MCL reporting and operational needs and agreement with MLC management and Board of Directors with regard to the nature and extent of the services required.

**Other Services**

We will be available to provide other financial, tax and related assistance to MLC on an as requested basis during the course of our engagement for the above services.

These services could range from financial staffing assistance to IT accounting system implementation assistance.

In the event that these other services are not detailed in a separate engagement letter, the terms and provisions of this agreement will apply to all such services.

**Fees and Payment Terms**

Our fee for this engagement, subject to the terms and conditions of the accompanying Professional Services Agreement, will be based on the actual time staff expend at our standard hourly rates for the individuals involved plus related travel and out-of pocket costs we incur.

Our standard billing rates, which are reviewed and adjusted on a semi-annual basis, are generally as follows:

| Professional | Hourly Compensation |
|---|---|
| Partner | $300-450 |
| Associate | 150-350 |
| Staff | 80-200 |
| Paraprofessional & Admin | 75-125 |



Mr. James Selzer
Motors Liquidation Company                    4                              March 17, 2010

The partner billing rate level includes professionals functioning as partners but are not legally partners, such as prior partners with a change in legal status (i.e., mandatory retirement but allowed to continue to work at the option of the firm, changing from full-time to part-time that prevents them from remaining as a legal partner under partnership agreement).

Non-working travel time will be billed at 50% of regular rate.

P&M's standard billing rate practice is to invoice administrative staff time performed directly for bankruptcy and non-bankruptcy clients based on standard hourly rates.  P&M does not invoice as expense for photocopies, facsimiles, cellular phone or overtime expenses for any personnel.

Expense reimbursements will be passed through at actual cost incurred without a markup or profit on the service to P&M, including limited use of other professional firms (i.e., international tax – Nova Scotia) for support services that are approval in advance by the CFO or CTO.

In the event P&M seeks reimbursement for any professional fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such professional shall be included in P&M's own application for compensation, and such invoices and time records shall be subject to the United States Trustee's and the Court's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code.

Our invoices will be prepared and rendered in accordance with the requirements of the bankruptcy court for retained professionals.

For your convenience, payments can be made via domestic wire or ACH to the following account:

| Domestic Wire | | ACH | |
|---|---|---|---|
| Bank of America | | Bank of America | |
| 100 West 33rd Street | | 100 West 33rd Street | |
| New York, NY 10001 | | New York, NY 10001 | |
| Account No. | 9890996003 | Account No. | 9890996003 |
| Routing/ABA No. | 026009593 | Routing/ABA No. | 071000039 |
| Account Name: | Plante & Moran, PLLC | Account Name: | Plante & Moran, PLLC |
| Account Address: | 27400 Northwestern Hwy. Southfield, MI 48034 | Account Address | 27400 Northwestern Hwy. Southfield, MI 48034 |

If you are in agreement with our understanding of this engagement, as set forth in this engagement letter and the accompanying Professional Services Agreement, please sign the enclosed copy of this letter and return it to us with the accompanying Professional Services Agreement.

Thank you for the opportunity to serve you.

Very truly yours,
PLANTE & MORAN, PLLC

Michael A. Colella, Partner



Mr. James Selzer
Motors Liquidation Company                          5                          March 17, 2010

**Agreed and Accepted**

We accept this engagement letter and the accompanying Professional Services Agreement, which sets forth the entire agreement between Motors Liquidation Company and Plante & Moran, PLLC with respect to the services specified in the "Scope of Services" section of this engagement letter. This agreement may be amended by written agreement between Plante & Moran, PLLC and Motors Liquidation Company.

Motors Liquidation Company

_____          3·17·10
Mr. James Selzer                                         Date
Vice President and Treasurer



## Professional Services Agreement
## Addendum to Plante & Moran, PLLC Engagement Letter Dated March 17, 2010

This Professional Services Agreement is part of the engagement letter for our consulting services dated March 17, 2010 between Plante & Moran, PLLC (referred to herein as "P&M", "we", "our" or "us") and Motors Liquidation Company (referred to herein as "MLC", "you" and "your").

1. **Management Responsibilities** – The services we will provide are inherently advisory in nature. We have no responsibility for any management decisions or management functions in connection with our engagement to provide these services. Further, you acknowledge that MLC is responsible for all such management decisions and management functions; for evaluating the adequacy and results of the services we will provide and accepting responsibility for the results of those services; and for establishing and maintaining internal controls, including monitoring ongoing activities, in connection with our engagement. You are designated to oversee the services we will provide.

2. **Tax Return Preparation** – The MLC tax returns we will prepare are the responsibility of Motors Liquidation Company. Our responsibility is to prepare the returns from information you provide. We will not prepare any tax returns or filings other than those you and we agree upon. You agree that the nature and extent of the tax return preparation services that we will provide, as outlined in this paragraph, are sufficient for your purposes.

   MCL is solely responsible for all management decisions and management functions required for the preparation of its tax returns. We will not make any management decisions. We may advise you about possible tax positions or elections, but all final decisions about such matters are your responsibility. You have designated Rick Zablocki to oversee the tax preparation services we will provide. MLC recognizes and acknowledges that it has the final responsibility for its tax returns, and accordingly, MLC agrees it will review them carefully before filing to determine that the returns are, to the best of your knowledge and belief, true, correct and complete.

   Tax laws require that uncertain tax positions be disclosed unless there is substantial authority for such positions. We will include disclosures that, in our professional judgment, are required by the tax laws when preparing your tax returns.

3. **Internal Control and Financial Reporting Services** – The internal control and financial reporting procedures we will perform will not constitute an examination or audit of any MLC financial statements or any other items, including MLC's internal controls. If you require financial statements or other financial information for third-party use, a separate engagement letter will be required. Accordingly, you agree not to associate or make reference to P&M in connection with any financial statements or other financial information of MLC. In addition, our engagement is not designed and cannot be relied upon to disclose errors, fraud or illegal acts that may exist. However, we will inform you of any such matters that come to our attention.

4. **Tax Records** – MLC's management is responsible for establishing and maintaining appropriate documentation and substantiation of deductions and tax positions in accordance with the requirements of applicable taxing authorities. You acknowledge and agree that taxing authorities may impose additional tax, interest, or penalties if MLC fails to establish and maintain required documentation and that we assume no responsibility for any such assessments or penalties.

   For example, and not by way of limitation, MLC's management is responsible for substantiating documentation required by:

   - Internal Revenue Code Sections 274 and 170 regarding deductions for travel and entertainment and charitable contributions
   - Internal Revenue Code Sections 482, 6662, 994, and similar sections regarding determination of intercompany and related-party transfer prices whether applicable to foreign or domestic matters
   - Internal Revenue Code Section 199 regarding the domestic producer's deduction
   - Internal Revenue Code Sections 41 and 174 regarding determination of qualified research expenditures for research credits
   - Internal Revenue Code Section 263A regarding determination of certain adjustments to inventory
   - Internal Revenue Code and U.S. Treasury regulations regarding determination of classification and lives for acquired real and personal property

   At the end of our tax return preparation services, we will return all of your original tax records to you. You should retain all documents and other data that form the basis of income and deductions. This documentation may be necessary to prove the accuracy and completeness of your tax returns in the event that they are selected for an examination by a taxing authority.

## Professional Services Agreement
## Addendum to Plante & Moran, PLLC Engagement Letter Dated March 17, 2010

5. **Taxing Authority Audits** – MLC's tax returns and filings may be subject to audit by applicable taxing authorities. We provide no guarantee, express or implied, of the outcome of any audit or any other determination by a taxing authority with respect to the tax returns listed in the accompanying engagement letter. In the event that such tax returns are selected for examination by a taxing authority, we are available to represent MLC in such an examination at an additional charge. Our fee for the tax return preparation services covered by this agreement does not include representation in any examination or responding to other inquiries by taxing authorities.

6. **Use of Reports** – At the conclusion of certain of our project activities, we will provide you with a written report as an agreed-upon element of our services. Our report will be restricted solely to use by management of MLC and its board of directors, and you agree that our report will not be distributed to any outside parties for any purpose other than to carry out legal responsibilities of MLC. We will have no responsibility to update our reports for any events or circumstances that occur or become known subsequent to the date of those reports.

7. **Confidentiality, Ownership and Retention of Workpapers** – During the course of this engagement, P&M and P&M staff may have access to proprietary information of MLC, including, but not limited to, information regarding trade secrets, business methods, plans, or projects. We acknowledge that such information, regardless of its form, is confidential and proprietary to MLC, and we will not use such information for any purpose other than our consulting engagement or disclose such information to any other person or entity without the prior written consent of MLC.

   In some circumstances, we may use local or international third-party service providers or P&M affiliates to assist us with our engagement. In order to enable these service providers to assist us in this capacity, we must disclose information to these service providers that is relevant to the services they provide. Disclosure of such information shall not constitute a breach of the provisions of this agreement.
   In the interest of facilitating our services to you, we may communicate or exchange data by internet, e-mail, facsimile transmission or other methods. While we use our best efforts to keep such communications and transmissions secure in accordance with our obligations under applicable laws and professional standards, you recognize and accept that we have no control over the unauthorized interception of these communications or transmissions once they have been sent, and consent to our use of these electronic devices during this engagement.
   Professional standards require that we create and retain certain workpapers for engagements of this nature. All workpapers created in the course of this engagement are and shall remain the property of P&M. We will maintain the confidentiality of all such workpapers as long as they remain in our possession.
   Both MLC and P&M acknowledge, however, that we may be required to make our workpapers available to regulatory authorities or by court order or subpoena. Disclosure of confidential information in accordance with requirements of regulatory authorities or pursuant to court order or subpoena shall not constitute a breach of the provisions of this agreement. In the event that a request for any confidential information or workpapers covered by this agreement is made by regulatory authorities or pursuant to a court order or subpoena, we agree to inform MLC in a timely manner of such request and to cooperate with MLC should you attempt, at your cost, to limit such access. This provision will survive the termination of this agreement.
   We reserve the right to destroy, and it is understood that we will destroy, workpapers created in the course of this engagement in accordance with our record retention and destruction policies, which are designed to meet all relevant regulatory requirements for retention of workpapers. P&M has no obligation to maintain workpapers other than for its own purposes or to meet those regulatory requirements.
   Upon MLC's written request, we may, at our sole discretion, allow others to view any workpapers remaining in our possession if there is a specific business purpose for such a review. We will evaluate each written request independently. You acknowledge and agree that we will have no obligation to provide such access or to provide copies of our workpapers, without regard to whether access had been granted with respect to any prior requests.

8. **Fee Estimates** – In any circumstance where we have provided estimated fees, fixed fees or not to exceed fees, these estimated, fixed or not-to-exceed fees are based on MLC personnel providing P&M staff the assistance necessary to satisfy MLC responsibilities under the scope of services. This assistance includes availability and cooperation of those MLC personnel relevant to our project activities and providing needed information to us in a timely and orderly manner. In the event that undisclosed or unforeseeable facts regarding these matters causes the actual work required for this engagement to vary from our estimates, our estimated fees will be adjusted for the additional time we incur as a result.

   In any circumstance where our work is rescheduled, we offer no guarantee, expressed or implied, that we will be able to meet any previously established deadline related to the completion of our work. Because rescheduling our work imposes additional costs on us, in any circumstance where we have provided estimated fees, those estimated fees may be adjusted for additional time we incur as a result of rescheduling our work. Any fee adjustments will be determined in accordance with the Fee Adjustments provision of this agreement.

## Professional Services Agreement
## Addendum to Plante & Moran, PLLC Engagement Letter Dated March 17, 2010

9.  **Payment Terms** – Our invoices for professional services are due upon receipt unless otherwise specified in our engagement letter. In the event any of our invoices are not paid in accordance with the terms of this agreement, we may elect, at our sole discretion, to suspend work until we receive payment in full for all amounts due or terminate this engagement. In the event that work is suspended, for nonpayment or other reasons, and subsequently resumed, we offer no guarantee, express or implied, that we will be able to meet any previously established deadlines related to the completion of our consulting work or issuance of our consulting report upon resumption of our work.

10. **Fee Adjustments** – Any fee adjustments for reasons described in this agreement will be determined based on the actual time that P&M staff expend at our standard hourly rates, plus all reasonable and necessary travel and out-of-pocket costs incurred, and included as an adjustment to our invoices related to this engagement. You acknowledge and agree that payment for all such fee adjustments will be made in accordance with the payment terms provided in this agreement.

11. **Termination of Engagement** –This agreement may be terminated by either party upon 30 day written notice. Upon notification of termination and the expiration of the notice period, our services will cease and our engagement will be deemed to have been completed. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination of this engagement. If MLC is unable to compensate P&M during the notice period, the notice period will not apply.

12. **Hold Harmless and Indemnification** - As a condition of this engagement, Motors Liquidation Company agrees to hold P&M, and all of its partners and staff, harmless against any losses, claims, damages, or liabilities, to which P&M may become subject in connection with services performed in the engagement, unless a court having jurisdiction shall have determined in a final judgment that such loss, claim, damage, or liability resulted primarily from the negligence of P&M, or one of its partners or staff. This hold harmless includes the agreement to reimburse P&M for any legal or other expenses incurred by P&M, as incurred, in connection with investigating or defending any such losses, claims, damages, or liabilities. This provision shall survive any termination of this engagement.

13. **Conflicts of Interest** - Our engagement acceptance procedures include a check as to whether any conflicts of interest exists that would prevent our acceptance of this engagement. No such conflicts have been identified. You understand and acknowledge that P&M may be engaged to provide professional services, now or in the future, unrelated to this engagement to parties whose interests may not be consistent with yours.

14. **Agreement Not to Influence** – MLC and P&M each agree that each respective organization and its employees will not endeavor to influence the other's employees to seek any employment or other contractual arrangement with it, during this engagement or for a period of one year after termination of the engagement. MLC agrees that P&M employees are not "contract for hire." P&M may release MLC from these restrictions if MLC agrees to reimburse P&M for its recruiting, training, and administrative investment in the applicable employee. In such event, the reimbursement amount shall be equal to two hundred hours of billings at the standard hourly rate for the P&M employee.

15. **Governing Law** – This agreement shall be governed by and construed in accordance with the laws of the State of New York.

## End of Professional Services Agreement

**<u>Exhibit B</u>**

**<u>Declaration of Michael A. Colella</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re                                          :        Chapter 11 Case No.
                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,          :        09-50026 (REG)
        f/k/a General Motors Corp., *et al.*   :
                                               :
                    Debtors.                   :        (Jointly Administered)
                                               :

------------------------------------------------------------------x


**AFFIDAVIT AND DISCLOSURE STATEMENT
OF MICHAEL A. COLELLA IN SUPPORT OF MOTORS
LIQUIDATION COMPANY'S APPLICATION PURSUANT TO
11 U.S.C. §327(a) AND FED. R. BANKR. P. 2014 FOR ENTRY OF
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF PLANTE & MORAN, PLLC AS ACCOUNTANTS TO MOTORS
LIQUIDATION COMPANY *NUNC PRO TUNC* TO OCTOBER 9, 2009**


STATE OF MICHIGAN      )
                       )       ss:
COUNTY OF OAKLAND      )

    Michael A. Colella, being duly sworn, deposes and says:

    1.      I am member ("**partner**") of Plante & Moran, PLLC[1] ("**P&M**"), a privately

owned, accounting and management consulting firm, which maintains its corporate headquarters

at 27400 Northwestern Hwy., Southfield, MI 48037-0307.


    2.      I submit this affidavit (the "**Colella Affidavit**") in support of the application dated

March 17, 2010 (the "**Application**") of Motors Liquidation Company (f/k/a General Motors

---

[1] The term "member" is used in a technical sense in that the structure of the entity providing the services currently is a professional limited liability company. As such, for legal purposes, it does not have "partners." However, the term "partner" is still used in this affidavit in lieu of principal and in the fee application as a job classification/ description for comparable individuals recognized as such in the routine operation of the applicant.

1

Corporation) as debtor in possession in the above-captioned Chapter 11 cases ("**MLC**"), for

authorization to employ and retain P&M as accountants *nunc pro tunc* to October 9, 2009 (the

"**Hiring Date**"), pursuant to the terms and conditions set forth in the engagement letter entered

into by P&M and MLC dated March 17, 2010 (the "**Engagement Letter**").  Unless otherwise

stated in this Colella Affidavit, I have personal knowledge of the facts set forth herein.

## P&M's Qualifications

3.      P&M is a professional services company providing accounting, tax and consulting

services with over 1,500 professionals located in eighteen offices throughout the United States

and two overseas offices. P&M was formed in 1926 in Detroit, Michigan and has grown to the

12th largest CPA firm in the U.S.

4.      P&M provides accounting, tax and consulting services to thousands of clients

annually and P&M has developed relevant experience and expertise regarding the services MLC

requires that will assist P&M in providing efficient and effective services in these Chapter 11

cases.

## P&M's Disinterestedness

5.      P&M researched its client databases and conducted an internal query of its

professionals to determine whether it has any connections with potential parties in interest that

might cause it not to be disinterested or to represent an interest adverse to MLC.  Counsel for the

Debtors provided P&M with a list of potential parties in interest (the "**Potential Parties in

Interest**"), and the categories of Potential Parties in Interest are set forth in Exhibit 1 annexed

hereto.

6.    To the best of my knowledge, information, and belief, neither I nor any other professional employed by P&M has any connection with or holds any interest adverse to the Debtors, their estates, their creditors, the United States Trustee or any other party in interest herein or their respective attorneys in the matters for which P&M is proposed to be retained, except as disclosed in Exhibit "2" annexed hereto.

7.    P&M also may have rendered services to or used the services of, and may continue to render services to or use the services of, certain of the Debtors' creditors, professionals, or other parties in interest, or interests adverse to such creditors, professionals, or parties in interest, in matters wholly unrelated to these cases.[2]  Similarly, P&M's employees may have business associations with certain of the Debtors' creditors or other parties in interest in these Chapter 11 cases, or interests adverse to such creditors or parties in interest, which associations have no connection with these cases.

8.    To the best of my knowledge, P&M has not been retained to assist any entity or person other than MLC on matters relating to, or in connection with, the MLC's Chapter 11 cases.

9.    No outstanding amounts for prepetition services are owed to P&M by MLC. Therefore, P&M is not a creditor of MLC.

10.    P&M did not receive any payments from the debtors within the 90 days prior to the filing of the petition (June 1, 2009).

11.    P&M did not have any creditors or parties in interest (from the master retention checklist) with billings are over 1% of the annual revenue for P&M.

---

[2] There may be additional representations which are confidential in nature but in matters wholly unrelated to these cases and not adverse to the Debtors.

3

12.    Accordingly, I have determined that P&M does not hold or represent an interest that is adverse to the Debtors' estates, and P&M is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. If any new relevant facts or relationships are discovered or arise, P&M will promptly supplemental its disclosure to this Court.

### Scope of Services

13.    Pursuant to the Engagement Letter, P&M has agreed to provide MLC with the following services (collectively, the "**Services**")[3] in connection therewith:

(a)    Preparation of required tax returns under federal, state, local and foreign jurisdictions for tax periods after December 31, 2009, that are not to be done by New GM under its Transition Services Agreement, including the income tax returns for the period from July 10, 2009 ("**363 sale date**") through December 31, 2009 ("**B Period Returns**"), as determined by MLC (and NewGM) in January 2010;

(b)    Consulting on the transition of tax preparation responsibilities to MLC;

(c)    Tax planning related to consummated and potential future transactions, particularly involving the sale of assets and the plan of liquidation;

(d)    Evaluation and testing of the design and effectiveness of cash and non-cash internal controls;

(e)    Testing of cash receipts, cash disbursements, financial reporting and other matters as directed by management and the MLC Board of Directors; and

---

[3] The following is only a summary of the services set forth in the Engagement Letter and should not be construed to modify or amend such letter. The actual terms of the Engagement Letter govern the scope of services to be provided to the Debtors by P&M.

(f)    Consulting on other accounting, tax and other matters, as requested.

**<u>Compensation</u>**

14.    Subject to Court approval, the Debtors will compensate P&M in accordance with the terms and conditions of the Engagement Letter. Pursuant to the Engagement Letter, P&M intends to charge MLC for Services rendered in these Chapter 11 cases, based on its hourly rates for such Services, which as of the hiring date are generally as follows:

| Professional | Hourly Compensation |
|---|---|
| Partner | $300 - 450 |
| Associate | 150 - 350 |
| Staff | 80 - 200 |
| Paraprofessional & Admin | 75 - 125 |

P&M's hourly rates are revised semi-annually in the ordinary course of its business. MLC understands that, if a rate change is effective during the course of P&M's engagement with MLC, P&M will advise MLC of such new rates.

15.    In addition to the rates set forth above, MLC shall reimburse P&M for any direct expenses incurred in connection with P&M's retention in these Chapter 11 cases and the performance of the Services set forth in the Engagement Letter. P&M's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses specifically related to this engagement (including any fees or reasonable expenses of P&M's legal counsel, but not any such legal fees or expenses related to P&M's efforts to be retained or to P&M's fee applications in these Chapter 11 cases).

16.     The compensation arrangement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by P&M and other accounting and consulting firms with respect to rendering comparable services for clients similar to the Debtors, both in and outside of bankruptcy.

17.     P&M has not shared or agreed to share any of its compensation in connection with this matter with any other person, as permitted by section 504 of the Bankruptcy Code.

18.     P&M will file interim and final fee applications beginning with the period ended January 31, 2010 for allowance of its compensation and expenses, with respect to its Services, and P&M will seek compensation and reimbursement of expenses, as specified in the Engagement Letter, with the payment of such fees and expenses to be approved in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court.

By: _____

Sworn to and subscribed before me, a notary public for the State of Michigan, County of Oakland, this day of March 17, 2010.

_____
Deborah Jean Strehl

DEBORAH JEAN STREHL
Notary Public, State of Michigan
County of Livingston
My Commission Expires Feb. 5, 2013
Acting in the County of Oakland

March 17, 2010
Date

6

## EXHIBIT 1 - Categories of Potential Parties In Interest

- Current Members of Board of Directors for General Motors Corporation

- Former Members of Board of Directors of General Motors Corporation (past 3 years)

- Affiliations of Current Members of Board of Directors of General Motors Corporation

- Current Officers of General Motors Corporation

- Former Officers of General Motors Corporation (past 3 years)

- Other Key Executives and Professionals of Affiliates

- Current Significant Shareholders (top 5%)

- Top 25 Shareholders

- Other names each of the Debtor entities are known as (including trade names and aliases (up to 8 years) (a/k/a, d/b/a. f/k/a))

- Largest 50 Bondholders

- Top 100 Unsecured Creditors as of May 29, 2009 (other than individual bondholders)

- Utility Companies

- Insurance Providers

- Counterparties to Major Contracts (financing agreements, executory contracts, leases, and other agreements)

- Taxing Authorities

- Investments as a Limited Partnership

- Joint Venture Parties

- Former GM Entities

- Indenture Trustees (including any parties to GM municipal bond financing arrangements)

- Underwriting Investment Banks for GM's securities (for all securities issued or outstanding and for the prior 3 years, including investment banks used in private placement transactions) Governmental and State Regulatory Agencies

- Secured Creditors Other Than Major Secured Lenders

- Major Secured Lenders

- Professionals Employed

- Retention Applicants

- Major Customers

- Top 100 Suppliers

- Counterparties to Equipment Financing Agreements

- Strategic Alliances

- Unions/Non-Debtor Parties to Collective Bargaining Agreements

- Major Litigation Claimants

- Professionals Retained by Significant Creditor Groups

- Entities in which GM owns an equity interest

- Judges for the United States Bankruptcy Court for the Southern District of New York

- United States Trustees for the Southern District of New York

- Current Members of Board of Directors of Saturn, LLC

- Affiliations of Current Members of Board of Directors of Saturn, LLC

- Former Members of Board of Directors of Saturn, LLC (past 3 years)

- Current Officers of Saturn, LLC

- Former Officers of Saturn, LLC (past 3 years)

- Current Members of Board of Directors of Saturn Distribution Corporation

- Affiliations of Current Members of Board of Directors of Saturn Distribution Corporation

- Former Members of Board of Directors of Saturn Distribution Corporation (past 3 years)

- Current Officers of Saturn Distribution Corporation

- Former Officers of Saturn Distribution Corporation (past 3 years)

- Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.

- Affiliations of Current Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc.

- Former Members of Board of Directors of Chevrolet-Saturn of Harlem, Inc. (past 3 years)

- Current Officers of Chevrolet-Saturn of Harlem, Inc.

- Former Officers of Chevrolet-Saturn of Harlem, Inc.

**EXHIBIT 2 - Plante & Moran, PLLC Disclosure List**

Plante & Moran, PLLC (P&M), currently performs assurance and/or tax and/or management consulting services to the following entities, professionals and/or subsidiaries/affiliates of potential parties in interest, which services are wholly unrelated to Debtors:

- Alix Partners
- Android Industries, LLC (including AI-Shreveport, LLC
- AON Risk Services, Inc.
- Arthur Andersen
- ArvinMeritor
- Bank of America
- Birmingham , City Of
- Blue Care Network Of Michigan
- Blue Cross Blue Shield
- BNY Mellon Wealth Management
- Bridgewater Interiors, LLC
- Brighton, City Of
- Burton, City of
- Charlotte, City of
- Chrysler, LLC
- Cleveland, City of
- Concord International Inc.
- Detroit Investment Fund
- Emcon Technologies, LLC
- Fannie Mae
- Federal Mogul Corporation
- Flex-N-Gate Corp.
- Flint, City of
- Ford Motor Company
- GKN, PLLC
- Grand Blanc Charter Twp
- Grand Blanc, City of
- Hayes Lemmerz International, Inc.
- Henniges Automotive Holding, Inc.
- Honigman Miller Schwartz and Cohn, LLP
- International Automotive Systems
- Inteva Products, LLC
- JCIM U.S., LLC
- JP Morgan Chase
- L & W Engineering Co., Inc
- Lansing Board of Water & Light
- Linamar Corp.
- Livonia Water & Sewer, City of
- Martinrea International, Inc.
- Mesa, City of
- Mold Masters Co.
- Montrose , City Of
- Morgan Stanley and Co.
- Orion, Charter Township of
- Penske Automotive Group, Inc.
- Pilkington NA Holdings Inc,
- Pontiac, City of
- Romulus, City of
- Saginaw, City of
- Swartz Creek, City of
- Takata (TK Holdings)
- TI Automotive, Ltd.
- Toyota Motor Corporation
- UAW – Retirees of Dana
- Van Buren Charter Township
- Wachovia Corporation/Securities
- Waterford Twp Water & Sewer
- Wayne, County of
- Wixom, City of
- Yorozu Automotive Tennessee

In addition to the above entities, P&M currently provides audit and tax services related to GMAC Retirement Plans, and previously provided health care consulting and tax services to GMAC.

Lastly, P&M provides personal tax return preparation and tax advice services to the following:

- Al Koch, Alix Partners
- Frederick A. Henderson, General Motors
- Tom Morrow, Alix Partners
- Ted Stenger, Alix Partners

Plante & Moran, PLLC, previously provided assurance and/or tax and/or management consulting services to the following entities, professionals and/or subsidiaries/affiliates of potential parties in interest, which services are wholly unrelated to Debtors:

- Allianz
- American Axle & Manufacturing
- ANR Pipeline Co
- AT&T Corp.
- Bay City, City of
- Chubb
- Ddh Investment North Texas, Inc
- Ddh Investment South Texas, Inc.
- DTE Energy
- Faurecia Automotive
- Gas Recovery Systems, Inc.
- Granger Electric Company
- Great American
- Grupo Antolin Irausa SA
- Health Alliance Plan
- HealthPlus of Michigan, Inc.
- Hilite International Inc
- Inergy Automotive Systems
- Johnson Controls LP
- Lear Corporation
- Lehman Brothers Asset Management Inc .
- Merrill Lynch & Co. Inc.
- Michigan Department Of Treasury
- Morgan Stanley & Co. Incorporated
- NICOR Gas
- Noble International Ltd.
- Northern Trust Investments, N.A.
- Northwest Natural Gas
- Panasonic Corporation
- Pfizer
- Shape Corp.
- Troy, City of
- TRW Vehicle Safety Systems
- UBS Securities, LLC
- UAW – Ford Legal Services
- Valeo
- Verizon
- Verizon Business
- Verizon Communications
- Warren, City of
- Whitebox Advisors, LLC

In addition to the above entities, prior to March, 2008, P&M provided accounting and consulting services to General Motors related to a Purchasing Department project and one GM dealership.

11

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In re                                                        :        Chapter 11 Case No.
                                                             :
MOTORS LIQUIDATION COMPANY, et al.,                          :        09-50026 (REG)
          f/k/a General Motors Corp., et al.                 :
                                                             :
                                      Debtors.               :        (Jointly Administered)
                                                             :
-------------------------------------------------------------x
```

**ORDER PURSUANT TO 11 U.S.C. § 327(a)**
**AND FED. R. BANKR. P. 2014 AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF PLANTE & MORAN, PLLC AS**
**ACCOUNTANTS AND CONSULTANTS *NUNC PRO TUNC* TO OCTOBER 9, 2009**

Upon the Application, dated March 17, 2010 (the "**Application**")[1], of Motors

Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), as debtor in possession,

pursuant to section 327(a) of title 11, United States Code ("**Bankruptcy Code**"), Rule 2014 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") for entry of

an order authorizing the retention and employment of Plante & Moran, PLLC ("**P&M** ") to

perform certain accounting and consulting services (collectively, the "**Accounting Services**"),

pursuant to that certain Engagement Letter, dated March 17, 2010 (the "**Engagement Letter**"),

*nunc pro tunc* to October 9, 2009, as more fully described in the Application; and due and proper

notice of the Application having been provided, and it appearing that no other or further notice

need be provided; and the Court having found and determined that the relief sought in the

Application is in the best interests of the Debtors, their estates and creditors, and all parties in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

interest and that the legal and factual bases set forth in the Application establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that, pursuant to section 327(a) of the Bankruptcy Code, MLC is

authorized to retain and employ P&M to perform the Accounting Services, *nunc pro tunc* to

October 9, 2009, on the terms and conditions set forth in the Engagement Letter; and it is further

ORDERED that P&M shall file with the Court interim and final fee applications

in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code,

applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines established by

the U.S. Trustee, and such other procedures as may be fixed by order of this Court, including but

not limited to the Court's Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket

No. 3711]; and it is further

ORDERED that all requests of P&M for payment of indemnity pursuant to the

Engagement Letter shall be made by means of an application (interim or final as the case may

be) and shall be subject to review by the Court to ensure that payment of such indemnity

conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances

of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that in

no event shall P&M be indemnified in the case of its own bad-faith, self-dealing, breach of

fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event P&M seeks reimbursement for attorneys' fees

pursuant to the terms of the Engagement Letter, the invoices and supporting time records from

such attorneys shall be included in P&M's own application, and such invoices and time records

shall be subject to the United States Trustee's and the Court's guidelines for compensation and

reimbursement of expenses and the approval of the Bankruptcy Court under the standards of

sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that to the extent this Order is inconsistent with the Engagement

Letter, this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
       March ___, 2010

_____
United States Bankruptcy Judge