Hearing Date and Time:  April 29, 2010 at 9:45 a.m. (Eastern Time)
Objection Date and Time:  April 22, 2010 at 4:00 p.m. (Eastern Time)

Harvey R. Milller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
MOTORS LIQUIDATION COMPANY, et al.,        :    09-50026 (REG)
       f/k/a General Motors Corp., et al.  :
                                           :
                       Debtors.            :    (Jointly Administered)
                                           :
------------------------------------------------------------x
```

## SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

### SECOND INTERIM FEE APPLICATION

| | |
|---|---|
| Name of Applicant: | **Weil, Gotshal & Manges LLP** |
| Time Period: | October 1, 2009 through and including January 31, 2010 |
| Role in the Case: | Attorneys for the Debtors and Debtors in Possession |
| Current Application: | Total Fees Requested:  $5,903,901.25<br>Total Expenses Requested:  $398,725.81 |
| Prior Applications: | First Interim Fee Application, filed January 13, 2010 [Docket No. 4803], for the period from June 1, 2009 through and including September 30, 2009<br>    Total Fees & Expenses Requested:  $18,506,169.92<br>    Total Fees & Expenses Allowed:  To Be Determined |

## SUMMARY OF SECOND INTERIM FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP FOR SERVICES RENDERED FOR THE PERIOD OCTOBER 1, 2009 THROUGH JANUARY 31, 2010

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED[1] Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE[2] | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| **PARTNERS & COUNSELS:** | | | | | |
| Miller, Harvey R. | BFR | 1958 | $990.00[3] | 7.30 | $    7,227.00 |
| Miller, Harvey R. | BFR | 1958 | $950.00 | 118.60 | $  112,670.00 |
| Berz, David R. | LR | 1973 | $900.00 | 177.20 | $  159,480.00 |
| Berz, David R. | LR | 1973 | $860.00 | 512.30 | $  439,933.00 |
| Warren, Irwin H. | LR | 1975 | $990.00 | 1.90 | $    1,881.00 |
| Warren, Irwin H. | LR | 1975 | $950.00 | 76.50 | $   72,675.00 |
| Guy, Ray T. | LR | 1976 | $885.00 | 8.10 | $    7,168.50 |
| Guy, Ray T. | LR | 1976 | $850.00 | 13.60 | $   11,560.00 |
| Karotkin, Stephen | BFR | 1977 | $990.00 | 39.20 | $   38,808.00 |
| Karotkin, Stephen | BFR | 1977 | $950.00 | 283.70 | $  262,295.00 |
| Hird, David B. | LR | 1977 | $845.00 | 1.20 | $    1,014.00 |
| Hird, David B. | LR | 1977 | $790.00 | 31.20 | $   24,648.00 |
| Dixon, Catherine T. | CORP | 1982 | $990.00 | 4.60 | $    4,554.00 |
| Dixon, Catherine T. | CORP | 1982 | $950.00 | 10.80 | $   10,260.00 |
| Gietz, Raymond O. | CORP | 1982 | $990.00 | 3.00 | $    2,970.00 |
| Gietz, Raymond O. | CORP | 1982 | $900.00 | 36.50 | $   30,870.00 |
| Goldring, Stuart J. | TAX | 1984 | $990.00 | 17.10 | $   16,929.00 |
| Goldring, Stuart J. | TAX | 1984 | $900.00 | 61.00 | $   54,900.00 |
| Zalenski, Walter E. | LR | 1985 | $790.00 | 11.10 | $    8,769.00 |
| Gregory, Holly J. | CORP | 1987 | $885.00 | 14.40 | $   12,744.00 |

[1] BFR- Business Finance & Restructuring,  CORP – Corporate,  LR – Litigation/Regulatory,  TAX – Tax,  S – Securitization,  LS – Litigation Support,  SA – Summer Associate,  * Not yet admitted to the bar.

[2] The conversion date used for determining billing rates in U.S. dollars for our European offices was the first day of the month for each billing period.

[3] Billing rates customarily are adjusted at the beginning of each calendar year.

| Gregory, Holly J. | CORP | 1987 | 810.00 | 2.20 | $ | 1,782.00 |
|---|---|---|---|---|---|---|
| Kam, Michael K. | TAX | 1987 | $900.00 | 1.00 | $ | 900.00 |
| Kam, Michael K. | TAX | 1987 | $875.00 | 10.10 | $ | 8,837.50 |
| Bernstein, Steven K. | LR | 1991 | $865.00 | 22.30 | $ | 19,289.50 |
| Beagles, Vance L. | LR | 1993 | $845.00 | 85.00 | $ | 71,825.00 |
| Beagles, Vance L. | LR | 1993 | $790.00 | 62.30 | $ | 49,217.00 |
| Smolinsky, Joseph H. | BFR | 1989 | $900.00 | 73.20 | $ | 65,655.00 |
| Smolinsky, Joseph H. | BFR | 1989 | $825.00 | 248.00 | $ | 204,600.00 |
| Boerst, Juergen (Frankfurt Office) | CORP | 1991 | $805.00 | 21.60 | $ | 17,388.00 |
| Grauke, Stephan K. (Frankfurt Office) | CORP | 1991 | $805.00 | 44.30 | $ | 35,661.50 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $945.00 | 13.40 | $ | 12,663.00 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $910.00 | 14.00 | $ | 12,740.00 |
| Osterman, Jeffrey D. | CORP | 1996 | 845.00 | 3.70 | $ | 3,126.50 |
| Osterman, Jeffrey D. | CORP | 1996 | $790.00 | 64.20 | $ | 50,718.00 |
| Neuwirth, John A. | LR | 1997 | $760.00 | 21.90 | $ | 16,644.00 |
| Zambrano, Angela C. | LR | 1997 | $780.00 | 23.20 | $ | 18,096.00 |
| Zambrano, Angela C. | LR | 1997 | $725.00 | 36.90 | $ | 26,752.50 |
| Berkovich, Ronit J. | BFR | 2002 | $725.00 | 29.00 | $ | 21,025.00 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $720.00 | 1.00 | $ | 720.00 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $700.00 | 14.70 | $ | 10,290.00 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $700.00 | 152.40 | $ | 106,680.00 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $650.00 | 436.80 | $ | 283,920.00 |
| Other Partners and Counsel (fewer than 10 hours per person) | | | $650.00 - $1,000.00 | 27.5 | $ | 23,570.00 |
| **Total Partners and Counsel** | | | | **2,838.00** | **$** | **2,343,456.00** |

| NAME OF PROFESSIONAL PERSON<br><br>ASSOCIATES: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| Fortin, Isabelle (Paris Office) | LR | 1989 | $630.00 | 15.60 | $ 9,828.00 |
| Fortin, Isabelle (Paris Office) | LR | 1989 | $580.00 | 3.00 | $ 1,740.00 |
| Smith, Leslie S. | CORP | 1995 | $695.00 | 20.00 | $ 13,900.00 |

| Smith, Leslie S. | CORP | 1995 | $640.00 | 93.00 | $ | 59,520.00 |
|---|---|---|---|---|---|---|
| Parker, Christopher M. | T&R | 1996 | $695.00 | 18.20 | $ | 12,649.00 |
| Dummer, David W. | LR | 1999 | $695.00 | 28.10 | $ | 19,529.50 |
| Dummer, David W. | LR | 1999 | $640.00 | 99.20 | $ | 63,488.00 |
| Shiffman, Jonathan | LR | 2000 | $640.00 | 17.90 | $ | 11,456.00 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $700.00 | 30.00 | $ | 21,000.00 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $690.00 | 25.50 | $ | 17,595.00 |
| Perheentupa, Ilkka I. | CORP | 2001 | $580.00 | 15.30 | $ | 8,874.00 |
| Amsel, Joshua S. | LR | 2001 | $640.00 | 100.30 | $ | 64,192.00 |
| Morton, Matthew D. | LR | 2001 | $665.00 | 94.80 | $ | 63,042.00 |
| Morton, Matthew D. | LR | 2001 | $580.00 | 181.40 | $ | 105,212.00 |
| Petherbridge, Vaughan | CORP | 2001 | $665.00 | 4.60 | $ | 3,059.00 |
| Petherbridge, Vaughan | CORP | 2001 | $580.00 | 113.70 | $ | 65,946.00 |
| Auchterlonie, Sarah J. | LR | 2002 | $685.00 | 25.60 | $ | 17,536.00 |
| Auchterlonie, Sarah J. | LR | 2002 | $610.00 | 2.60 | $ | 1,586.00 |
| Berkovich, Ronit J. | BFR | 2002 | $630.00 | 220.20 | $ | 138,253.50 |
| Gandhi, Ashish D. | LR | 2002 | $630.00 | 37.30 | $ | 23,499.00 |
| Hahn, Arlene A. | CORP | 2002 | $695.00 | 6.20 | $ | 4,309.00 |
| Hahn, Arlene A. | CORP | 2002 | $640.00 | 49.70 | $ | 31,808.00 |
| Kohl, Michael (Frankfurt Office) | CORP | 2002 | $655.00 | .50 | $ | 327.50 |
| Kohl, Michael (Frankfurt Office) | CORP | 2002 | $630.00 | 25.00 | $ | 15,750.00 |
| Eckols, Erin D. | LR | 2003 | $665.00 | 29.70 | $ | 19,750.50 |
| Eckols, Erin D. | LR | 2003 | $580.00 | 55.90 | $ | 32,422.00 |
| Goslin, Thomas D. | LR | 2003 | $595.00 | 88.10 | $ | 52,419.50 |
| Goslin, Thomas D. | LR | 2003 | $500.00 | 233.30 | $ | 116,650.00 |
| Mapes, Justin G. | CORP | 2003 | $665.00 | 2.10 | $ | 1,396.50 |
| Mapes, Justin G. | CORP | 2003 | $580.00 | 50.20 | $ | 29,116.00 |
| Allen, Margaret H. | LR | 2004 | $630.00 | 98.00 | $ | 61,740.00 |
| Allen, Margaret H. | LR | 2004 | $540.00 | 75.70 | $ | 40,878.00 |
| Delaney, Edwin M. | LR | 2004 | $540.00 | 33.60 | $ | 18,144.00 |

| Empting, Tobias (Frankfurt Office) | CORP | 2004 | $420.00 | 46.20 | $ | 19,404.00 |
|---|---|---|---|---|---|---|
| Goodman, Max A. | TAX | 2004 | $665.00 | 32.40 | $ | 21,546.00 |
| Goodman, Max A. | TAX | 2004 | $580.00 | 80.80 | $ | 46,864.00 |
| Schroeder, Friederike (Frankfurt Office) | CORP | 2004 | $400.00 | .20 | $ | 80.00 |
| Schroeder, Friederike (Frankfurt Office) | CORP | 2004 | $385.00 | 29.60 | $ | 11,396.00 |
| Stewart, Benjamin | LR | 2004 | $595.00 | 7.80 | $ | 4,641.00 |
| Stewart, Benjamin | LR | 2004 | $500.00 | 31.70 | $ | 15,850.00 |
| Blanchard, Aimee N. | LR | 2005 | $500.00 | 11.30 | $ | 5,650.00 |
| Godhard, Peter | CORP | 2005 | $550.00 | 6.20 | $ | 3,410.00 |
| Godhard, Peter | CORP | 2005 | $465.00 | 48.60 | $ | 22,599.00 |
| Lederman, Evan S. | BFR | 2005 | $595.00 | 96.00 | $ | 57,120.00 |
| Lederman, Evan S. | BFR | 2005 | $500.00 | 581.60 | $ | 290,800.00 |
| Kulawik, Tomasz | CORP | 2006 | $455.00 | 1.60 | $ | 728.00 |
| Kulawik, Tomasz | CORP | 2006 | $355.00 | 25.70 | $ | 9,123.50 |
| Noury, Anne-Sophie (Paris Office) | BFR | 2006 | $615.00 | 20.80 | $ | 12,792.00 |
| Noury, Anne-Sophie (Paris Office) | BFR | 2006 | $525.00 | 68.40 | $ | 35,910.00 |
| Christensen, Evert J. | LR | 2007 | $415.00 | 103.10 | $ | 42,786.50 |
| Rosen, Marc B. | CORP | 2007 | $550.00 | 11.60 | $ | 6,380.00 |
| Rosen, Marc B. | CORP | 2007 | $465.00 | 49.50 | $ | 23,017.50 |
| Decker, Sarah M. | LR | 2007 | $550.00 | 6.20 | $ | 3,410.00 |
| Decker, Sarah M. | LR | 2007 | $465.00 | 72.90 | $ | 33,898.50 |
| O'Connor, John T. | LR | 2007 | $515.00 | 15.90 | $ | 8,188.50 |
| O'Connor, John T. | LR | 2007 | $415.00 | 76.50 | $ | 31,747.50 |
| Wine, Jennifer L. | LR | 2007 | $550.00 | 12.30 | $ | 6,765.00 |
| Wine, Jennifer L. | LR | 2007 | $465.00 | 128.30 | $ | 58,729.50 |
| Benfield, Brianna N. | LR | 2008 | $455.00 | 99.30 | $ | 45,181.50 |
| Benfield, Brianna N. | LR | 2008 | $355.00 | 383.80 | $ | 135,361.50 |
| Bronder, Vigdis | CORP | 2008 | $515.00 | 5.60 | $ | 2,884.00 |
| Bronder, Vigdis | CORP | 2008 | $415.00 | 48.60 | $ | 20,169.00 |
| Burns, Gregory C. | TAX | 2008 | $550.00 | 3.10 | $ | 1,705.00 |

| Burns, Gregory C. | TAX | 2008 | $465.00 | 25.60 | $ | 11,904.00 |
|---|---|---|---|---|---|---|
| Forlenza, Justin | CORP | 2008 | $515.00 | 1.80 | $ | 927.00 |
| Forlenza, Justin | CORP | 2008 | $415.00 | 13.10 | $ | 5,436.50 |
| Hines, Nichole | LR | 2008 | $415.00 | 15.70 | $ | 6,515.50 |
| Laken, Lacey | BFR | 2008 | $515.00 | 21.40 | $ | 11,021.00 |
| Laken, Lacey | BFR | 2008 | $415.00 | 172.20 | $ | 71,463.00 |
| Pae, Joonbeom | TAX | 2008 | $515.00 | 6.40 | $ | 3,296.00 |
| Pae, Joonbeom | TAX | 2008 | $415.00 | 140.20 | $ | 58,183.00 |
| Arons, Andrew | CORP | 2009 | $455.00 | 30.00 | $ | 13,650.00 |
| Arons, Andrew | CORP | 2009 | $355.00 | 256.20 | $ | 90,951.00 |
| Cutting, Dionne | CORP | 2009 | $515.00 | .70 | $ | 360.50 |
| Cutting, Dionne | CORP | 2009 | $415.00 | 13.70 | $ | 5,685.50 |
| Falabella, Pablo | BFR | 2009 | $515.00 | 90.80 | $ | 46,762.00 |
| Falabella, Pablo | BFR | 2009 | $415.00 | 525.60 | $ | 218,124.00 |
| Hatcher, R. Todd T. | TAX | 2009 | $455.00 | 11.40 | $ | 5,187.00 |
| Hatcher, R. Todd T. | TAX | 2009 | $355.00 | 71.80 | $ | 25,489.00 |
| Bruck, Rolf (Frankfurt Office) | CORP | 2009 | $350.00 | 18.20 | $ | 6,370.00 |
| Lottmann, Annelies | LR | 2009 | $355.00 | 14.90 | $ | 5,289.50 |
| Yates, Erin K. | LR | 2009 | $455.00 | 14.30 | $ | 6,506.50 |
| Yates, Erin K. | LR | 2009 | $355.00 | 31.60 | $ | 11,218.00 |
| Yung, Kevin | CORP | 2009 | $355.00 | 11.10 | $ | 3,940.50 |
| Bergman, Matthew D. | CORP | 2009 | $355.00 | 22.10 | $ | 7,845.50 |
| Brooks, Russell | BFR | 2010 | $455.00 | 212.40 | $ | 96,528.25 |
| Brooks, Russell | BFR | 2010 | $355.00 | 529.10 | $ | 187,830.50 |
| Esposito, Michael J. | CORP | 2010 | $455.00 | .70 | $ | 318.50 |
| Esposito, Michael J. | CORP | 2010 | $355.00 | 28.00 | $ | 9,940.00 |
| Rosen, Chelsea | BFR | 2010 | $395.00 | 10.20 | $ | 4,029.00 |
| Other Associates (fewer than 10 hours per person) | | | $355.00-$765.00 | 91.70 | $ | 42,970.00 |
| **Total Associates** | | | | **6,380.80** | $ | **3,082,494.75** |

| NAME OF PROFESSIONAL PERSON<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise<br><br>**LAW CLERKS**: | DEPARTMENT AND YEAR ADMITTED | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Maussion, Jean-Baptiste de (Paris Office) | BFR – N/A | $175.00 | 7.00 | $ 1,225.00 |
| Klemm, Mira (Paris Office) | BFR – N/A | $175.00 | 62.70 | $ 10,972.50 |
| Hannotin, Gabriel (Paris Office) | BFR – N/A | $175.00 | 31.00 | $ 5,425.00 |
| Menez, Benoit (Paris Office) | BFR – N/A | $175.00 | 32.00 | $ 5,600.00 |
| Brogi, Alice (Paris Office) | BFR – N/A | $180.00 | 15.00 | $ 2,700.00 |
| Rapp, Alexis (Paris Office) | BFR – N/A | $180.00 | 3.00 | $ 540.00 |
| Rosen, Chelsea | BFR – N/A | $225.00 | 159.60 | $ 35,910.00 |
| **Total Law Clerks** | | | **310.30** | **$ 62,372.50** |

| NAME OF PROFESSIONAL<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise<br><br>**Paralegals, Clerks, Library Staff and Other Non-Legal Staff:** | DEPARTMENT AND YEAR ADMITTED | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Lee, Kathleen | BFR – N/A | $275.00 | 9.20 | $ 2,530.00 |
| Lee, Kathleen | BFR – N/A | $245.00 | 55.50 | $ 13,597.50 |
| Shrestha, Christine | CORP – N/A | $275.00 | 21.00 | $ 5,775.00 |
| Shrestha, Christine | CORP – N/A | $245.00 | 85.30 | $ 20,898.50 |
| Hausman, Jeffrie | LR – N/A | $260.00 | 38.80 | $ 10,088.00 |
| Hausman, Jeffrie | LR – N/A | $230.00 | 124.00 | $ 28,520.00 |
| Fuller, Deidre E. | LR – N/A | $260.00 | 7.80 | $ 2,028.00 |
| Fuller, Deidre E. | LR – N/A | $230.00 | 12.30 | $ 2,829.00 |
| Burns, Jo N. | LR – N/A | $260.00 | 19.50 | $ 5,070.00 |
| Jones, Peggy | CORP – N/A | $260.00 | 14.00 | $ 3,640.00 |
| Jones, Peggy | CORP – N/A | $230.00 | 72.80 | $ 16,744.00 |
| Cade, Nancy P. | LR – N/A | $250.00 | 1.90 | $ 475.00 |
| Cade, Nancy P. | LR – N/A | $210.00 | 10.80 | $ 2,268.00 |

| Flinn, Deborah C. | LR – N/A | $240.00 | 5.00 | $ | 1,200.00 |
|---|---|---|---|---|---|
| Flinn, Deborah C. | LR – N/A | $210.00 | 19.20 | $ | 4,032.00 |
| Kerley, Peggy N. | LR – N/A | $250.00 | 2.50 | $ | 625.00 |
| Kerley, Peggy N. | LR – N/A | $210.00 | 9.60 | $ | 2,016.00 |
| Phillips, Lesley | LR – N/A | $210.00 | 25.90 | $ | 5,439.00 |
| George, Camille A. | BFR – N/A | $240.00 | 24.80 | $ | 5,952.00 |
| George, Camille A. | BFR – N/A | $210.00 | 92.40 | $ | 19,404.00 |
| Siebel, Peter A. | BFR – N/A | $210.00 | 26.80 | $ | 5,628.00 |
| Schell, Peter | CORP – N/A | $225.00 | 9.50 | $ | 2,137.50 |
| Schell, Peter | CORP – N/A | $205.00 | 137.50 | $ | 28,187.50 |
| Maravilla, Mel C. | CORP – N/A | $225.00 | 8.40 | $ | 1,890.00 |
| Maravilla, Mel C. | CORP – N/A | $200.00 | 42.70 | $ | 8,540.00 |
| Oh, Doe Y. | CORP – N/A | $215.00 | 4.80 | $ | 1,032.00 |
| Oh, Doe Y. | CORP – N/A | $195.00 | 17.50 | $ | 3,412.50 |
| Chettri, Anupama | LR – N/A | $200.00 | 3.30 | $ | 660.00 |
| Chettri, Anupama | LR – N/A | $180.00 | 9.70 | $ | 1,746.00 |
| Potter, Lougran | LR – N/A | $200.00 | 2.90 | $ | 580.00 |
| Potter, Lougran | LR – N/A | $180.00 | 15.80 | $ | 2,844.00 |
| Prindle, Kaitlin C. | BFR – N/A | $200.00 | 15.60 | $ | 3,120.00 |
| Prindle, Kaitlin C. | BFR – N/A | $180.00 | 45.50 | $ | 8,190.00 |
| Rodriguez, Ilusion | BFR – N/A | $200.00 | 101.80 | $ | 20,360.00 |
| Rodriguez, Ilusion | BFR – N/A | $180.00 | 459.90 | $ | 82,782.00 |
| Perkari, Harish | CORP – N/A | $190.00 | 10.00 | $ | 1,900.00 |
| Perkari, Harish | CORP – N/A | $170.00 | 63.10 | $ | 10,727.00 |
| Etienne, Donald | BFR – N/A | $180.00 | .70 | $ | 63.00 |
| Etienne, Donald | BFR – N/A | $160.00 | 17.50 | $ | 2,800.00 |
| Mehta, Mona V. | LR – N/A | $180.00 | 14.50 | $ | 2,610.00 |
| Mehta, Mona V. | LR – N/A | $160.00 | 68.00 | $ | 10,880.00 |
| Shapiro, Rachel | BFR – N/A | $160.00 | 100.90 | $ | 16,144.00 |
| Swaney, Nicole | LR – N/A | $160.00 | .60 | $ | 96.00 |
| Bailey, Gregory | Managing Clerk | $170.00 | 25.90 | $ | 4,403.00 |
| Pasion, Luis L. | Managing Clerk | $140.00 | 28.50 | $ | 3,990.00 |
| Burdette, Leslie A. | Managing Clerk | $140.00 | 49.90 | $ | 6,986.00 |

| Sam, Mili | Litigation Support | $235.00 | 11.00 | $ | 2,585.00 |
|---|---|---|---|---|---|
| Robin, Artur | Litigation Support | $215.00 | 19.30 | $ | 4,149.50 |
| Nudelman, Peter | Litigation Support | $215.00 | 16.00 | $ | 3,440.00 |
| Other Paraprofessionals and Other Staff (fewer than 10 hours per person) | | $85.00 - $275.00 | 109.30 | $ | 20,564.00 |
| **Total Paraprofessionals and Other Staff** | | | **2,089.20** | **$** | **415,578.00** |

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| **TOTALS:** | | | |
| Partners and Counsel | $825.74 | 2,838.00 | $    2,343,456.00 |
| Associates | $483.10 | 6,380.80 | $    3,082,494.75 |
| Law Clerks | $201.00 | 310.30 | $         62,372.50 |
| Paraprofessionals and Other Staff | $198.92 | 2,089.20 | $       415,578.00 |
| **Total Fees Incurred** | | **11,618.30** | **$    5,903,901.25** |
| **Blended Attorney Rate (excluding summer associates and law clerks)** | **$588.57** | | |
| | | | |
| **Grand Total Fees Requested** | | **11,618.30** | **$    5,903,901.25** |

Hearing Date and Time:  April 29, 2010 at 9:45 a.m. (Eastern Time)
Objection Date and Time:  April 22, 2010 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                         :
In re                                    :      **Chapter 11 Case No.**
                                         :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :      **09-50026 (REG)**
       **f/k/a General Motors Corp.,** *et al.* :
                                         :
              **Debtors.**               :      **(Jointly Administered)**
                                         :
------------------------------------------------------------x

**SECOND APPLICATION OF WEIL, GOTSHAL & MANGES LLP, AS
ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FROM OCTOBER 1 2009, THROUGH JANUARY 31, 2010**

# TABLE OF CONTENTS

**Page**

Preliminary Statement................................................................................................... 1

Background .................................................................................................................... 4

Summary of Professional Compensation and Reimbursement of Expenses Requested................ 4

Summary of Services Performed by WGM During the Second Compensation Period ................ 8

Actual and Necessary Disbursements of WGM ........................................................ 24

The Requested Compensation Should Be Allowed .................................................. 26

Notice ......................................................................................................................... 28

Conclusion .................................................................................................................. 28

# TABLE OF AUTHORITIES

**Statutes & Rules**                                                     **Page**

11 U.S.C. § 327 ................................................................................................... 26

11 U.S.C. § 330 ................................................................................................... 26

11 U.S.C. § 330(a) ............................................................................................... 1

11 U.S.C. § 330(a)(1) .......................................................................................... 26

11 U.S.C. § 330(a)(3) .......................................................................................... 27

11 U.S.C. § 331 ............................................................................................... 1, 26

11 U.S.C. § 363(b) ............................................................................................... 2

Fed. R. Bank. P. 1015(c) ..................................................................................... 28

Fed. R. Bank. P. 2016 ........................................................................................... 1

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("**WGM**"), attorneys for Motors Liquidation

Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors in these chapter

11 cases, as debtors and debtors in possession (together with MLC, the "**Debtors**"), for its

second application (the "**Application**"), pursuant to sections 330(a) and 331 of title 11, United

States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), for the interim allowance of compensation for

professional services performed by WGM for the period commencing October 1, 2009 through

and including January 31, 2010 (the "**Second Compensation Period**"), and for reimbursement

of its actual and necessary expenses incurred during the Second Compensation Period,

respectfully represents:

<u>**Preliminary Statement**</u>

1.      Through WGM's efforts during the Second Compensation Period, the

Debtors have made substantial progress implementing strategies and procedures to efficiently

resolve these cases, address the approximately 68,000 proofs of claim that have been filed, and

maximize recoveries to creditors. Specifically, WGM's advice and services were critical in

enabling the Debtors to obtain numerous forms of relief important to the administration of these

cases, including several significant achievements, such as:

- an order establishing deadline to file proofs of claim against MLC, MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) (the "**First Filed Debtors**");

- an order establishing deadline to file proofs of claim against the First Filed Debtors with respect to residences located adjacent to certain material manufacturing properties;

1

09-50026-mg   Doc 5295   Filed 03/17/10   Entered 03/17/10 18:18:10   Main Document
Pg 15 of 59

- an order establishing deadline to file proofs of claim against two new additional debtor entities, Remediation and Liability Management Company, Inc. ("**REALM**") and Environmental Corporate Remediation Company, Inc. ("**ENCORE**");

- an order authorizing the Debtors to file omnibus claims objections and establishing procedures for settling certain claims;

- orders granting nine omnibus objections to claims, expunging approximately 840 proofs of claim, aggregating approximately $8.06 billion;

- an order authorizing alternative dispute resolution procedures ("**ADR Procedures**") for the Debtors to efficiently and economically address the approximately 30,000 litigation-related proofs of claim which have been filed; and

- an order extending the Debtors' exclusive periods to file and solicit acceptances of chapter 11 plans through and including May 27, 2010.

These critical achievements and others will permit the Debtors to continue to make significant progress in the administration of these cases at minimized costs to the estates and will facilitate the Debtors' exit from chapter 11 as soon as possible with maximum recoveries to creditors.

2.      During the Second Compensation Period, WGM also considered and evaluated various scenarios and strategies in conjunction with AP Services, LLC ("**APS**"), the Debtors' interim managers and restructuring experts, regarding the formulation of a chapter 11 plan for the Debtors.  In that regard, WGM expended substantial resources researching, investigating, and counseling the Debtors on issues that will have a significant impact on the Debtors' chapter 11 plan and how it will be developed and formulated.

3.      In addition to these significant accomplishments, during the Second Compensation Period, WGM was required to prepare, review, or respond to the more than 760 motions, notices, applications, objections, briefs, orders, and other pleadings in the Debtors' chapter 11 cases, including several appeals of the order approving the sale of substantially all the Debtors' assets pursuant to section 363(b) of the Bankruptcy Code to NGMCO, Inc. (n/k/a

General Motors, LLC), a purchaser sponsored by the United States Department of the Treasury

(the "**U.S. Treasury**") (the "**363 Transaction**") to ensure that the interests of the Debtors were

adequately represented.  Further, during the Compensation Period, WGM participated in 11 court

hearings.  Certain of the pleadings addressed or filed by the Debtors included:

- one adversary proceeding was filed against the Debtors and the Debtors filed an adversary proceeding against Bayerische Motoren Werke Aktiengesellschaft ("**BMW**");

- 12 motions for relief from the automatic stay, including motions seeking to exercise asserted rights of setoff, were filed against the Debtors and the Debtors filed 3 responses to motions for relief from the automatic stay;

- the Debtors filed 9 omnibus objections to claims;

- the Debtors filed 3 omnibus motions to reject executory contracts and unexpired leases of nonresidential real property.

Each of the filings in the Debtors' chapter 11 cases required careful consideration and substantial

resources from WGM to protect the interests of the Debtors.

4.      Because regular and open communication with creditors is a fundamental

goal of the Debtors, throughout the Second Compensation Period, WGM continued to represent

the Debtors in their formal and informal meetings and conferences with the U.S. Trustee, the

statutory committee of general unsecured creditors (the "**Committee**"), and their respective

professionals and in numerous meetings or communications with individual claimants and parties

in interest.  Additionally, the Debtors and WGM have continued to make every effort to keep such

entities informed of developments in these cases on a real-time basis through their published

websites, www.motorsliquidation.com and www.motorsliquidationdocket.com.  Further, together

with the chief executive officer, Al Koch, and other APS temporary employees, WGM has

continued to respond to direct inquiries from various creditors, many of which have been received

through a hotline WGM established for MLC-related inquiries.

5.      WGM's efforts to advise and represent the Debtors in all facets of these unprecedented cases and with respect to the affairs of the entire MLC enterprise during the Second Compensation Period were necessary and of substantial benefit to the administration of the chapter 11 estates.  The professional services performed and expenses incurred were actual and necessary to preserve and protect the value of the Debtors' assets.  In the perspective of the complexity and scale of these cases, WGM's charges for professional services performed and expenses incurred are reasonable under the applicable standards.  WGM respectfully asks that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

### Background

6.      On June 12, 2009, the Debtors filed an application to employ WGM as their attorneys [Docket No. 949].  No objections were filed to WGM's retention, and, pursuant to an order, dated June 25, 2009, the Debtors were authorized to retain WGM as their attorneys to render legal services in the prosecution of their chapter 11 cases [Docket No. 2546].

7.      On December 23, 2009, the Court appointed Brady C. Williamson as the Fee Examiner, pursuant to the Stipulation and Order with Respect to Appointment of a Fee Examiner [Docket No. 4708].

8.      The Debtors have advised WGM that, to date, all quarterly fees due to the U.S. Trustee have been paid.

9.      The Debtors have advised WGM that, to date, all monthly operating reports have been filed.

## Summary of Professional Compensation
## and Reimbursement of Expenses Requested

10.     WGM seeks allowance of interim compensation for professional services

performed during the Second Compensation Period in the amount of $5,903,901.25, and for

reimbursement of expenses incurred in connection with the rendition of such services in the

amount of $398,725.81.  During the Second Compensation Period, WGM attorneys and

paraprofessionals expended a total of approximately 11,600 hours in connection with the

necessary services performed.

11.     This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on November 25, 2009 (the "**Local Guidelines**"), the

U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "**UST Guidelines**"), and

the Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711] (the

"**Administrative Order**," and together with the Local Guidelines and the UST Guidelines, the

"**Guidelines**").  Pursuant to the UST Guidelines, the Debtors have been provided with a copy of

the Application for their review and will have completed their review of the same prior to the

hearing on the Application.

12.     In accordance with the Administrative Order, WGM received payments

totaling $1,600,470.32 for the Second Compensation Period, consisting of $1,501,731.60,

representing 80% of the fees, and $98,738.72, representing 100% of the expenses, invoiced for

October 2009.  WGM now seeks payment[1] by the Debtors of all amounts allowed but previously held back pursuant to the Administrative Order.  WGM has not yet received payment for either the fees or the expenses invoiced for November 2009, December 2009, or January 2010.

13.    WGM regularly monitors its charges and expenses before and after the submission of monthly fee statements for potential errors or charges that might be inappropriate or otherwise should be reduced.  As a result, during the Second Compensation Period, WGM credited the Debtors' account for an additional $2,967.77[2] mistakenly charged to the Debtors for expenses incurred during the period commencing June 1, 2009 through and including September 30, 2009 (the "**First Compensation Period**") and the Second Compensation Period.  WGM will continue to diligently monitor its charges and expenses and, where appropriate, make appropriate adjustments.  As of the date hereof, WGM has voluntarily reduced its fees and expenses by $38,624 for fees, and $2,359.18 for expenses in the aggregate since the Commencement Date.

14.    There is no agreement or understanding between WGM and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.  Except as explained in the following paragraph, during the Second Compensation Period, other than pursuant to the Administrative Order, WGM has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

---

[1] New GM agreed to pay 50% of the fees and expenses associated with the services rendered by WGM in connection with the appeals of this Court's order approving the 363 Transaction (the "**Appeals**").  Although the full amount of WGM's fees and expenses for services rendered in connection with the Appeals have been and continue to be billed to the Debtors, New GM will reimburse the Debtors for 50% of such fees and expenses paid by the Debtors to WGM.  Total fees and expenses for services rendered in connection with the Appeals during the Compensation Period are approximately $456,491.00 and $30,701.08, respectively.  Therefore, New GM will reimburse the Debtors 50% of such amounts (i.e., approximately $228,245.50 in fees and $15,350.54 in expenses).

[2] Certain expenses related to Duplication in the amounts of $2,964.57 and $3.20, totaling $2,967.77, were mistakenly charged to the Debtors during the First Compensation Period and the Second Compensation Period, respectively.  These amounts are reflected as credits in the Expenses Summary table.

15.    Prior to the commencement of these chapter 11 cases, General Motors Corporation ("**GM**," now know as Motors Liquidation Company) paid WGM an aggregate amount of approximately $54 million in respect of professional services rendered and as retainers for services to be rendered and for disbursements incurred and expenses advanced for disbursements to be incurred in connection with (i) GM's efforts prior to the commencement of these chapter 11 cases to restructure its obligations out of court, (ii) the preparation for GM's chapter 11 cases, and (iii) certain other related matters.  As of the Commencement Date, WGM had a retainer balance in the amount of approximately $5.9 million that may be applied against payment for services to be rendered and expenses to be incurred.  WGM will file further disclosures to the extent reconciliation of time and expenses incurred prior to the Commencement Date results in further charges.

16.    The fees charged by WGM in these cases are billed in accordance with WGM's existing billing rates and procedures in effect during the Second Compensation Period. The rates WGM charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates WGM charges for professional and paraprofessional services rendered in comparable bankruptcy and nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and nonbankruptcy cases in a competitive national legal market.

17.    Annexed hereto as **Exhibit "A"** is a certification regarding compliance with the Guidelines.

18.    Annexed hereto as **Exhibit "B,"** pursuant to the UST Guidelines, is a schedule of WGM professionals and paraprofessionals who have performed services for the Debtors during the Second Compensation Period, the capacities in which each such individual is

7

employed by WGM, the department in which each individual practices, the hourly billing rate

charged by WGM for services performed by such individuals, the year in which each professional

was first licensed to practice law, and the aggregate number of hours expended in this matter and

fees billed therefor.

19.     Annexed hereto as **Exhibit "C"** is a schedule specifying the categories of

expenses for which WGM is seeking reimbursement and the total amount for each such expense

category.  An itemized schedule of all such expenses has been provided to the Debtors, the Court,

the attorneys for the Committee, and the U.S. Trustee.

20.     Annexed hereto as **Exhibit "D,"** pursuant to the UST Guidelines, is a

summary of WGM's time records billed during the Second Compensation Period using project

categories hereinafter described.  WGM maintains computerized records of the time spent by all

WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter

11 cases.  Copies of these computerized records have been furnished to the Debtors and, subject to

redaction or modification for the attorney-client privilege where necessary to protect the Debtors'

estates, the Court, the attorneys for the Committee, the Fee Examiner, and the U.S. Trustee in the

format specified by the UST Guidelines.

21.     To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Second Compensation Period, but were not processed prior to

the preparation of this Application, WGM reserves the right to request additional compensation

for such services and reimbursement of such expenses in a future application.

**Summary of Services Performed by**
**WGM During the Second Compensation Period**

22.     As described above, during the Second Compensation Period, WGM

continued to render an extraordinary level of professional services in order to efficiently and

economically administer the Debtors' chapter 11 cases, address the approximately 68,000 proofs

of claim that have been filed, support the Debtors' administration of their properties and of these

estates, coordinate activities to protect the value of the Debtors' assets, and assist the Debtors in

their ongoing efforts to wind down their estates.  During this period, WGM was required to render

a substantial amount of professional services, very frequently under extraordinary time

constraints, to deal with various critical issues.  The following are descriptions of some of the

most significant tasks performed by WGM.

23.    Wind-Down Process.  WGM continued to assist the Debtors in conducting

an orderly liquidation and wind-down of the Debtors' remaining assets and properties.  This

process is ongoing and, in addition to the physical assets owned by the Debtors, has involved

analyzing the assets and obligations of MLC's numerous remaining subsidiaries to determine the

most appropriate means of liquidating each subsidiary.  This has included reviewing and

analyzing (i) the corporate and organizational documents of MLC's subsidiaries and (ii)

agreements such as promissory notes, dealership agreements, and other agreements to which MLC

or its subsidiaries are a party to determine the correct procedure for properly liquidating the stock

and/or assets of such subsidiaries.

24.    Claims Reconciliation.  As of the date on which these chapter 11 cases

were commenced, the Debtors had approximately 2,500,000 creditors and equity security holders

and were parties to more than 700,000 executory contracts (many of which were assumed and

assigned to New GM).  Streamlined procedures for reconciling claims remains a critical aspect of

the administration of these estates, and WGM, during the Second Compensation Period,

developed and refined its work plan for addressing various claims issues.  During the Second

Compensation Period, WGM successfully established a claims bar date for the First Filed Debtors,

a claims bar date for the First Filed Debtors with respect to residences located adjacent to certain

material manufacturing properties, and a claims bar date for REALM and ENCORE.  WGM also

developed a comprehensive alternative dispute resolution procedure to facilitate the expeditious

and economic resolution of more than 30,000 litigation-related proofs of claim filed to date.  This

effort is critical to the chapter 11 plan process and a necessary prerequisite to any ability to make

distributions to holders of prepetiton unsecured claims.  In addition, WGM completed nine

omnibus objections to claims, expunging 840 proofs of claim, aggregating approximately $8.06

billion.

          25.     <u>Dealership Matters.</u>  The Debtors had approximately 6,000 dealerships in

their network at the commencement of these chapter 11 cases.  During the Second Compensation

Period, WGM continued to work with the Debtors to further the implementation of a

comprehensive dealer rationalization program and thousands of participation and wind-down

agreements enabling successful dealerships to continue with New GM while providing

underperforming dealerships with significant economic support to wind down their businesses.  In

addition, WGM continued to prosecute and defend the rejection of multiple dealership

agreements, including engaging in settlement negotiations and extensive discovery.  WGM also

continued to respond to substantive inquires from dealers, reviewed and analyzed dealer-related

agreements and documents and worked with the Debtors to evaluate numerous proofs of claim

filed by dealers.

          26.     <u>Executory Contracts and Unexpired Leases.</u>  As of the Commencement

Date, the Debtors were parties to in excess of 700,000 executory contracts and unexpired leases of

real and personal property.  WGM has continued to play a pivotal role in the assumption and

assignment process, which was critical to the 363 Transaction and the continuation of the GM

enterprise.  During the Second Compensation Period, WGM continued to work with the Debtors

to evaluate numerous remaining executory contracts and unexpired leases to determine the

appropriate disposition of them in the context of the ongoing wind-down of the Debtors.  To this

end, WGM prepared three omnibus motions to reject certain executory contracts and unexpired

leases of nonresidential real property.  In addition, WGM negotiated various settlement

agreements with contract counterparties relating to contract rejection claims, including engaging

in ongoing negotiations regarding two global omnibus settlement agreements with lessors, owner

participants, indenture trustees, and New GM resolving over $1 billion in fixed and mobile

equipment leases.  In addition, WGM also continued to draft and review assumption and

assignment agreements in conjunction with counsel for New GM and in furtherance of the 363

Transaction.

       27.    <u>Environmental Issues</u>.  An appropriate resolution of environmental issues

with respect to the Debtors' owned properties continues to be critical to the administration of

these estates and the formulation and consummation of a chapter 11 plan.  Accordingly, during the

Second Compensation Period, WGM continued to assist the Debtors in their interactions with

appropriate Federal and State governmental entities, regulators, and other parties in interest to

discuss environmental-remediation obligations at the properties now under the Debtors' control

and the manner in which such obligations should be addressed in a way that protects public health

and the environment while being consistent with the interests of creditors in these chapter 11 cases

and the Debtors' responsibilities and rights as debtors in possession under the Bankruptcy Code.

To this end, on October 9, 2009, WGM assisted the Debtors in commencing chapter 11 cases for

two new additional entities, REALM and ENCORE.  WGM has also continued to assist the

Debtors and their other retained professionals in analyzing environmental liabilities at owned

sites, superfund sites, and other third-party owned sites, and worked extensively with

environmental consultants on estimating potential environmental liabilities, including reviewing

site reports and studies to project remediation costs.  WGM has continued to assist the Debtors in

various discussions with governmental regulators and U.S. Treasury officials regarding estimates

and approaches for resolving environmental claims and liabilities.  WGM also participated in the

preparation of presentations to Federal and State officials regarding environmental obligations and

appropriate methods for resolution, including the United States Environmental Protection Agency,

the United States Department of Justice (the "**USDOJ**"), and State officials from New York, New

Jersey, Ohio, Michigan, and Indiana.  Throughout all of this, WGM has focused on achieving the

most efficient and prudent manner to address these issues in the context of a chapter 11 plan and

consistent with the Debtors' obligations and responsibilities under the Bankruptcy Code.

28.    <u>Retention of Ordinary Course and Other Professionals</u>.  WGM continued to

assist the Debtors in their interactions with the retained professionals and the ordinary course

professionals.  WGM devoted a significant amount of time to working with and preparing

applications for these professionals' retention, assisting retained professionals in the fee

application process, as well as reviewing monthly statements of retained professionals.  WGM has

continued to work with the U.S. Trustee to ensure that the requisite disclosures and retention

applications were adequate and appropriate.

29.    <u>Asset Sales Other than the 363 Transaction</u>.  During the Second

Compensation Period WGM assisted MLC in the completion of de minimis asset sales.  WGM

also continued to review and revise agreements relating to General Motors Strasbourg S.A.S.

("**GM Strasbourg**"), with respect to product supply, technology licensing, and engineering

services.  In addition, WGM assisted the Debtors in evaluating alternative uses for various parcels

of real estate.  WGM assisted the Debtors in selling various plants and facilities.  It also assisted

the Debtors in engaging a marketing and sales agent, Hilco Industrial LLC and Maynards

Industries (1991) Inc. ("**Hilco/Maynards**"), in connection with certain assets to be sold, as well as

engaging a proposed appraiser for various assets.

30.    Additional Services.  During the Second Compensation Period, WGM

rendered professional services in furtherance of the foregoing activities and others, including,

among other things, (i) meeting and discussing numerous issues and matters with the Committee;

(ii) responding to the myriad of creditor inquiries concerning these chapter 11 cases; (iii)

conferences and negotiations with the U.S. Treasury, Export Development Canada, and the

Committee regarding the Debtors' ongoing efforts to wind down and dispose of their properties

with the goal of formulating and confirming a liquidating plan; and (iv) addressing, on behalf of

the Debtors, the various motions and disputed matters initiated by third parties.  In this regard,

during the Second Compensation Period, WGM prepared, assisted in the filing of, and/or filed, on

behalf of the Debtors, numerous motions, applications, stipulations, and related court pleadings.

31.    Summary of Services.  The following is a summary of the significant

professional services rendered by WGM during the Second Compensation Period, organized in

accordance with WGM's internal system of project or work codes.

a.    Case Administration Issues

(i)    General Case Administration

- prepared and filed chapter 11 petitions and related documents, including a corporate ownership statement and board resolutions, for REALM and ENCORE;
- coordinated and supervised service of notice of commencement of cases and first day pleadings for REALM and ENCORE;
- filed and prosecuted motion, order, and additional notice applying certain prior Court orders to REALM and ENCORE;
- conducted internal team meetings, conferences, and teleconferences with the Debtors, their professionals, the Committee, and other parties

in interest regarding case administration, status of chapter 11 cases, and various business issues;

- responded to numerous requests for information from parties in interest;
- coordinated with Garden City Group, Inc. ("**GCG**"), the Debtors' noticing and claims agent, to maintain and update master service list;
- conducted document review in connection with assets and liabilities of the Debtors and their affiliates, and ongoing and potential litigations;
- prepared and maintained various corporate structure charts for the Debtors and their respective subsidiaries;
- assisted APS and GCG in establishing and maintaining websites containing information regarding the Debtors, their professionals and management, meetings of creditors, and copies of relevant documents, including proofs of claim;
- engaged in various e-mail and telephone communications with the Debtors, the Committee, and the U.S. Trustee;
- maintained case calendar; and
- organized and participated in weekly meetings and conference calls with WGM professionals and client to promote efficiency in the administration of the chapter 11 cases.

(ii)    Hearings and Court Matters

- prepared for and attended 11 court hearings;
- coordinated with the Court regarding hearings and agenda items;
- prepared agenda letters;
- revised case management order for notice and other hearing procedures; and
- monitored dockets for main cases, adversary proceedings, and various state and federal court dockets for Debtor-related matters.

(iii)   U.S. Trustee

- conferred on a regular basis with U.S. Trustee regarding all case matters, including retention issues, employee matters, hearing items, and schedules and statements;
- ensured compliance with U.S. Trustee Guidelines; and
- assisted the Debtors in preparation and filing of monthly operating reports and reports pursuant to Bankruptcy Rule 2015.3.

b.    Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- prepared for and participated in meetings and teleconferences with the Committee and its retained professionals regarding the status and administration of the cases, the development and formulation of the structure of a chapter 11 plan, and various other issues;

- prepared for and participated in the continued meeting of unsecured creditors pursuant to section 341 of the Bankruptcy Code on October 5, 2009;
- prepared for and participated in a meeting of unsecured creditors on January 7, 2010; and
- continued to respond to telephone and e-mail inquiries from foreign and domestic creditors regarding the chapter 11 cases and the 363 Transaction.

c.      Secured Creditors Issues/Meetings/Communications

- negotiated agreements and stipulations with swap counterparties regarding disposition of collateral;
- negotiated agreements with U.S. Treasury and the Voluntary Employee Benefit Association regarding collateral security interests and releases; and
- assisted in preparation of intellectual property schedules and deliverables due under such agreements.

d.      Schedules/Statements of Financial Affairs

- prepared and filed an amendment to the schedules of MLC;
- reviewed drafts of and participated in conferences and teleconferences with APS regarding preparation of amendment to schedules of MLC;
- prepared and filed schedules and statements of financial affairs required in connection with REALM and ENCORE's chapter 11 petitions;
- reviewed drafts of and participated in teleconferences with APS regarding preparation of schedules and statements of financial affairs of REALM and ENCORE.

e.      Corporate Governance/Corporate/Securities

- dissolved various corporate entities and prepared and maintained dissolution tracking charts tracking the execution and filing of board resolutions and certificates of dissolution, and conducted related research;
- analyzed alternatives for wind-down and dissolution of certain non-Debtor subsidiaries;
- conducted lien searches and analyzed results;
- prepared corporate resolutions and consents required for REALM and ENCORE chapter 11 petitions;
- prepared for and attended meetings of the Debtors' and the non-Debtors' subsidiaries' boards of directors and drafted resolutions, minutes, and consents for same;
- researched various corporate governance issues;

- prepared various documents, including Forms 8-K and S-3, for filing with the Securities and Exchange Commission;
- established document retention policy for MLC;
- advised the Debtors with respect to their joint venture arrangements;
- prepared for and attended meetings with the Debtors and APS regarding reporting, compliance, organizational, and related matters and conducted research regarding same;
- reviewed and revised various corporate organization charts;
- reviewed documents related to numerous transactions with respect to the Debtors' businesses and investments and provided related advice;
- advised the Debtors with respect to strategic alternatives in connection with certain subsidiaries; and
- researched issues related to SEC no-action relief.

f.    Financing

(i)    Debtor in Possession ("**DIP**") Financing/Cash Collateral

- prepared documentation and researched issues related to lien release in connection with Export Development Canada;
- reviewed documentation and issues related to releasing liens, and coordinated execution of lien releases for MLC and various subsidiaries;
- prepared amended and restated wind-down schedules;
- negotiated and revised terms of amendment to DIP post-closing letter;
- coordinated compliance with reporting requirements under DIP financing agreement;
- drafted, revised and reviewed documentation related to amendments to DIP facility; and
- drafted documents and researched issues related to the assignment of promissory notes.

(ii)    General Business Operations

- assisted the Debtors with respect to the possible sale of GM Strasbourg assets, including reviewing and revising related engagement letters, agreements and contracts, and various conferences with APS and the Committee;
- reviewed and analyzed various issues and documents related to New United Motor Manufacturing, Inc. ("**NUMMI**"); and
- analyzed issues and assisted the Debtors with respect to various industrial revenue bonds.

g.      Employee/ERISA/Benefits

- analyzed workers' compensation liabilities in various states and issues related to surety bonds, and advised Debtors with respect to state workers' compensation bureaus;
- assisted in responding to requests for information on workers' compensation benefits by the U.S. Department of Health and Human Services and assisted in fulfilling such requests;
- assisted in responding to employee benefit claims and challenges to the automatic stay;
- advised the Debtors (and their Board of Directors) with respect to Troubled Asset Relief Program ("**TARP**") executive compensation requirements, including drafting clawback and excessive and luxury expenditures policies, CEO and board certifications, and an application to the TARP Special Master to approve compensation to Debtors' 20 most highly compensated employees; and
- advised Debtors on payment of multiemployer plan pension withdrawal liabilities in connection with winddown of car dealerships.

h.      Asset Dispositions/Section 363

(i)      363 Transaction

- assisted the Debtors in completing requirements and satisfying obligations under the Master Sale and Purchase Agreement ("**MSPA**"); and
- researched, monitored dockets, and prepared briefs in response to the various appeals of the order approving the 363 Transaction filed by (1) the Individual Accident Litigants, (2) Radha R.M. Narumanchi, and (3) Oliver Addison Parker.

(ii)      Sales of Assets Other than the 363 Transaction

- coordinated with MLC on the execution of de minimis asset sales, including drafting and negotiating sale agreements, and potential sales of shares in subsidiary dealerships;
- assisted the Debtors in establishing the terms of their engagement of Hilco/Maynards as exclusive marketing and sales agent with respect to certain assets;
- reviewed and revised agreements relating to GM Strasbourg, with respect to product supply, technology licensing, and engineering services, and reviewed and commented on documents relating to the marketing of GM Strasbourg;
- assisted the Debtors in establishing the terms of the engagement of Merrill Lynch to provide services in connection with the marketing of GM Strasbourg; and
- evaluated alternative uses for real estate.

i.      Executory Contracts/365 Issues/Contracts/Leases/Real Property

- reviewed and analyzed numerous of executory contracts and unexpired leases of nonresidential real property regarding various issues related to the assumption and assignment or rejection of such contracts and leases;
- drafted three omnibus motions to reject executory contracts and unexpired leases of nonresidential real property, and reviewed and responded to related objections;
- negotiated and drafted stipulations and settlement agreements regarding the rejection and/or assumption and assignment of executory contracts and unexpired leases of nonresidential real property;
- researched issues and drafted memorandum regarding various contract assumption and rejection issues;
- reviewed and revised various sale agreements for certain real property of the Debtors;
- reviewed and summarized the termination and setoff provisions of various swap agreements and facilitated resolution of various issues regarding same;
- provided detailed analyses regarding potential rejection damages claims;
- negotiated and entered into various settlement agreements with lessors, owner participants, indenture trustees, and New GM resolving over $1 billion in fixed and mobile equipment leases, including analysis and legal research related to the settlement agreements; and
- responded to and negotiated consensual resolutions with various creditors regarding objections to cure amounts and rejection damages claims

j.      Bar Date and Claims Reconciliation

(i)     Claims Objection Litigation

- drafted, filed, and prosecuted motion authorizing the Debtors to file omnibus claims objections and establishing procedures for settling certain claims;
- drafted, filed, and prosecuted objection to proofs of claim filed by Lafonza Washington with a total claim value of $1.6 billion;
- drafted, filed, and prosecuted objection to proofs of claim filed by Theresa L. Marchbanks with a total claim value of $2.5 billion;
- drafted, filed, and prosecuted objection to proof of claim filed by Susan B. Angell and Prudence Reid on behalf of two putative nationwide classes, with a total claim value of $615 million;
- drafted filed, and prosecuted 9 omnibus objections to claims; and
- conducted research regarding class actions and class proofs of claim in bankruptcy.

(ii)    Bar Date Motion and General Claims Reconciliation

- researched and drafted memoranda regarding standards for filing and objecting to claims, amending claims, informal proofs of claim, and excusable neglect for filing late claims;
- drafted, filed, and prosecuted motion to establish bar dates for REALM and ENCORE;
- drafted, filed, and prosecuted motion to establish bar date for the First Filed Debtors with respect to residences located adjacent to certain material manufacturing properties;
- responded to inquiries regarding the filing of proofs of claim and bar dates;
- worked with GCG to establish and maintain a claims reconciliation process;
- drafted, filed, and successfully prosecuted motion to establish ADR Procedures, including an omnibus reply to 14 filed objections, and multiple discussions with various informal objectors;
- created nationwide panels of dozens of mediators for the ADR Procedures;
- established procedures through the American Arbitration Association to administer the ADR Procedures;
- drafted, filed, and prosecuted motion to establish separate bar date for certain MLC properties;
- researched issues relating to the appointment of a legal representative for future asbestos personal injury claimants;
- assisted the Debtors in the ongoing process to resolve various individual claims, including issues related to a motion to allow a class proof of claim filed by Boyd Bryant; and
- engaged in discussions with the fiscal paying agent of Nova Scotia notes and Euro bonds regarding claims process and communications with note holders through Euroclear and Clearstream.

(iii)    Reclamation and 503(b)(9)

- filed and prosecuted objections to 503(b)(9) claims;
- filed and prosecuted objections to reclamation claims;
- drafted a reclamation notice which objected to various reclamation claims; and
- analyzed and continued to resolve remaining 503(b)(9) and reclamation claims.

(iv)    Administrative Expenses

- reviewed and responded to motion for payment of administrative expenses from William Hardee and conducted related legal research; and

- reviewed motions for payment of administrative expenses filed by Salas Automotive Group, Inc. and Napleton Investment Partnership LP.

k.    Automatic Stay

- reviewed and analyzed numerous motions seeking relief from automatic stay, and researched and drafted objections to and/or stipulations resolving certain of such motions;
- researched and drafted memorandum regarding applicability of automatic stay to various litigation issues, and advised the Debtors and outside counsel accordingly;
- drafted and sent hundreds of letters to prepetition and postpetition plaintiffs advising of automatic stay of litigation; and
- responded to numerous questions from plaintiffs and outside counsel regarding effect of automatic stay on litigation and possible stipulations to modify the automatic stay.

l.    Plan and Disclosure Statement

- drafted, filed, and prosecuted motion to obtain and subsequently obtained a second extension of the Debtors' exclusive period to file chapter 11 plans and solicit acceptances thereof;
- researched various issues regarding structure of the Debtors' chapter 11 plan and related disclosure statement; and
- began process of drafting proposed chapter 11 plan and disclosure statement.

m.    Tax

- assisted in responding to state taxing authorities with respect to certain of the Debtors' state tax liabilities;
- analyzed certain property tax issues and prepetition tax issues;
- analyzed tax issues in connection with the liquidation of the Debtors' estates;
- analyzed and researched plan-related tax considerations; and
- conferred with tax counsel to the Committee regarding plan-related considerations.

n.    Insurance

- evaluated various insurance programs and policies for insurance coverage of certain liabilities;
- participated in discussions and meetings with the Committee regarding available coverage for certain claimants;
- participated in discussions and meetings with New GM counsel with respect to insurance coverage issues; and

- participated in discussions and meetings with the Debtors regarding the availability of insurance to cover certain claims.

o.  Customer/Vendor/Supplier/Dealer

- reviewed and filed monthly critical vendor payment reports submitted to the U.S. Trustee;
- revised form of critical vendor trade agreement;
- assisted New GM with various issues relating to the wind down of certain dealerships;
- negotiated settlement agreement and drafted 9019 motion resulting in the recovery of more than $1 million in escrowed funds in the Bill Heard chapter 11 case and appeared telephonically at multiple hearings in the United States Bankruptcy Court for the District of Alabama;
- conducted extensive discovery regarding the pending rejection of certain dealership franchise agreements and engaged in extensive settlement negotiations regarding same;
- drafted and revised stock purchase agreements with respect to sale of shares in certain part-owned dealerships;
- addressed issues and responded to substantive inquiries from customers, vendors, suppliers and dealers; and
- coordinated the termination of dealership franchise agreements with several bankrupt dealerships.

p.  Utilities

- assisted the Debtors in maintaining utility services for each of their respective properties; and
- prepared for litigation and advised in settlement negotiations in connection with Shreveport Red River Utilities, LLC's motion to enforce adequate assurance of payment.

q.  Litigation

- drafted reply to Narumanchi's motion seeking access to certain documents filed under seal;
- drafted and filed a statement of issues in the Narumanchi adversary proceeding;
- monitored and researched issues related to Narumanchi's appeal of the order dismissing his complaint alleging breach of fiduciary duty and deepening insolvency;
- filed adversary proceeding against BMW and researched related legal issues;
- reviewed and responded to non-bankruptcy litigation claims, class action issues, and discovery requests;

- coordinated with various state courts regarding non-bankruptcy litigation;
- responded to document requests, motions, and applications pursuant to Bankruptcy Rule 2004 filed by Remy International; Federal Republic of Germany; David and Julie Brittingham; The Schaefer Group Inc.; the Ad Hoc Committee of Personal Injury Asbestos Claimants; and the Florian Hinrichs; and
- coordinated document collection and investigation matters with New GM, and communicated with parties in attempting to resolve Bankruptcy Rule 2004 motions consensually.

r.    International

- researched issues related to reorganization plans, shares, shareholder lists, payoff letters, bond issues, and bond certificates for European subsidiaries, including GM Auslandsprojekte GMBH;
- researched corporate governance and dividend distribution issues under French law;
- reviewed and researched various issues related to the status of GM Strasbourg, and drafted related agreements such as intellectual property and licensing agreements;
- continued assisting in the ongoing marketing and sale activities for GM Strasbourg, including reviewing and revising contracts and agreements;
- reviewed potential members for boards of directors for European subsidiaries;
- researched various issues relating to BMW;
- reviewed and analyzed various documents and agreements relating to deliveries, developments, licensing, engineering, environmental servicing and other business operations;
- reviewed and addressed issues relating to various interests in connection with the 363 Transaction;
- reviewed and analyzed various issues and drafted memorandum relating to General Motors Nova Scotia Finance Company's ("**GM Nova Scotia**") bankruptcy filing in Canada; and
- conferred with the Debtors and the Committee regarding various issues relating to GM Nova Scotia.

s.    Environmental

- drafted strategy memoranda and conducted legal research regarding the environmental claims in bankruptcy cases;
- analyzed environmental liabilities at owned sites, superfund sites, and other third-party owned sites;
- worked with environmental consultants on analysis of environmental liabilities, including review of site reports and studies to project environmental liabilities;

- attended meetings with governmental regulators and U.S. Treasury officials regarding budget for resolving environmental claims and liabilities;
- assisted in the preparation of presentations to Federal and State officials regarding environmental issues; and
- interviewed and attended meetings with environmental staff and attorneys regarding environmental liabilities.

t.      WGM Retention/Billing/Fee Applications

- prepared and filed supplemental affidavit and disclosure statement;
- prepared WGM's first interim fee application;
- maintained and updated list of parties in interest for conflicts purposes for WGM and other retained professionals; and
- reviewed monthly billing summary report and prepared monthly fee statements in compliance with the Guidelines.

u.      Retention of Professionals

(i)      Ordinary Course Professionals

- conferred with the Debtors and ordinary course professionals regarding retention procedures and conflicts issues;
- assisted the Debtors in negotiating engagement letters with ordinary course professionals and reviewed historic payment terms;
- assisted the Debtors in retaining ordinary course professionals and the preparation of the retention questionnaire and form declaration;
- conferred with U.S. Trustee regarding ordinary course professional issues and confirmed compliance with the Guidelines; and
- conferred with ordinary course professionals regarding impact of the 363 Transaction on engagement.

(ii)      Other Professionals

- participated in discussions with the U.S. Trustee regarding the appointment of a fee examiner;
- drafted the Debtors' applications to retain a marketing and sales agent (Hilco/Maynards) and an appraiser;
- prepared WGM monthly fee statements;
- reviewed retention applications for professionals retained by the Committee;
- conferred with various applicants regarding scope of retention, terms of compensation, and related issues;
- conferred with U.S. Trustee regarding various retention issues; and
- reviewed monthly fee statements of various professionals.

32.     The foregoing professional services performed by WGM were actual, necessary, and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by WGM were in the best interests of the Debtors and other parties in interest.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

33.     The professional services performed by members and associates of WGM were rendered by the Business Finance & Restructuring, Corporate, Litigation, and Tax Departments in several offices.  WGM has a preeminent Business Finance & Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations, restructurings of troubled entities, and chapter 11 cases, with approximately 115 attorneys that specialize in this area of law.

34.     The professional services performed by WGM on behalf of the Debtors during the Second Compensation Period required an aggregate expenditure of 11,618.30 recorded hours by WGM's members, counsel, associates, law clerks, and paraprofessionals.  Of the aggregate time expended, 2,838 recorded hours were expended by partners and counsel of WGM, 6,380.80 recorded hours were expended by associates, 310.30 recorded hours were expended by law clerks, and 2,089.20 recorded hours were expended by paraprofessionals of WGM.

35.     During the Second Compensation Period, WGM billed the Debtors for time expended by attorneys based on hourly rates ranging from $355 to $990 per hour for domestic attorneys and $350 to $1,000 for foreign attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $588.57 (based on

9,218.80 recorded hours for attorneys at WGM's regular billing rates in effect at the time of the

performance of services).

**Actual and Necessary Disbursements of WGM**

36.    As set forth in Exhibit C hereto, WGM has disbursed $398,725.81 as

expenses incurred in providing professional services during the Second Compensation Period.

These expenses are reasonable and necessary in light of the size and complexity of the Debtors'

cases.  For example, the novel legal issues involved by reason of the scope of the Debtors'

businesses and the need to proceed expeditiously to maximize value, required WGM attorneys to

work long hours, engage in numerous long distance and international communications, and

perform considerable computerized research in order to effectively prosecute the Debtors' chapter

11 cases.

37.    The time constraints facing the Debtors, along with the sheer magnitude of

tasks generated by these cases, have required WGM's attorneys and other employees to devote

significant time during the evenings and on weekends to perform legal services on behalf of the

Debtors.  Such services were essential to maximize value, timely respond to motions and

objections, and to address the extraordinary demands involved in the winddown of the Debtors'

affairs and the administration of these complex chapter 11 cases.

38.    While WGM has not charged the Debtors for any overtime expenses,

consistent with firm policy, attorneys and other employees of WGM who worked late into the

evenings or on weekends were reimbursed for their reasonable meal costs and their cost for

transportation from the office to home.  WGM's regular practice is not to include components for

those charges in overhead when establishing billing rates and to charge its clients for these and all

other out-of-pocket disbursements incurred during the regular course of the rendition of services.

The reimbursement amounts do not exceed those set forth in the UST Guidelines.

39.     With respect to photocopying expenses, WGM charges all of its clients $.10 per page.  With respect to facsimile expenses, in compliance with the UST Guidelines, WGM does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the UST Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the UST Guidelines.  These charges are intended to cover WGM's direct operating costs, which costs are not incorporated into the WGM hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit B are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow WGM to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

40.     In addition, because of the global scope of the Debtors' affairs, frequent long distance and international telephone calls were required.  On many occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in WGM's overhead for the purpose of setting billing rates.  WGM has made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

## The Requested Compensation Should Be Allowed

41.      Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.*

§ 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and

reimbursement:

> In determining the amount of reasonable compensation to be
> awarded to [a] professional person, the court shall consider the nature, the
> extent, and the value of such services, taking into account all relevant
> factors, including –
>
> (A)      the time spent on such services;
>
> (B)      the rates charged for such services;
>
> (C)      whether the services were necessary to the
> administration of, or beneficial at the time at which the
> service was rendered toward the completion of, a case
> under this title;
>
> (D)      whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem, issue,
> or task addressed; and
>
> (E)      with respect to a professional person, whether the
> person is board certified or otherwise has demonstrated
> skill and experience in the bankruptcy field; and
>
> (F)      whether the compensation is reasonable based on
> the customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

42.      In the instant case, WGM submits that the services for which it seeks

compensation and the expenditures for which it seeks reimbursement in this Application were

necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' chapter 11 estates. WGM has worked assiduously to anticipate or respond to the issues that have arisen and has played and continues to play a critical role in assuring that the Debtors' chapter 11 cases are administered expeditiously and economically. Such services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors. The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

43.    Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration. Groups of the same WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM communication and education about the Debtors' circumstances.

44.    In sum, the services rendered by WGM were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

### Notice

45.    Notice of this Application has been provided to parties in interest in accordance with the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated August 3, 2009 [Docket No. 3629]. The Debtors submit that such notice is sufficient and no other or further notice need be provided.

46.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

### Conclusion

47.    WGM respectfully requests the Court enter an Order authorizing (i) an interim allowance of compensation for professional services rendered during the Second Compensation Period in the aggregate amount of $6,302,627.06, consisting of $5,903,901.25, representing 100% of fees incurred during the Second Compensation Period, and reimbursement of $398,725.81, representing 100% of actual and necessary expenses incurred during the Second Compensation Period; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Second Compensation Period, which were not processed at the time of this Application; (iii) directing payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order; and (iv) such other and further relief as is just.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: New York, New York
      March 17, 2010

                        /s/ Stephen Karotkin
                        Harvey R. Miller
                        Stephen Karotkin
                        Joseph H. Smolinsky

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtors
                        and Debtors in Possession

**<u>Exhibit A</u>**

**<u>Certification</u>**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
MOTORS LIQUIDATION COMPANY, et al.,           :        09-50026 (REG)
        f/k/a General Motors Corp., et al.    :
                                              :
                        Debtors.              :        (Jointly Administered)
                                              :
                                              :
-------------------------------------------------------------x
```

### CERTIFICATION UNDER GUIDELINES FOR FEES
### AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT
### OF SECOND APPLICATION OF WEIL, GOTSHAL & MANGES LLP
### FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Stephen Karotkin, hereby certify that:

I am a partner with the applicant firm, Weil, Gotshal & Manges LLP ("**WGM**"),

with responsibility for the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors

Corporation) ("**MLC**") and its affiliated debtors, as debtors and debtors in possession in the

above-captioned cases (collectively with MLC, the "**Debtors**"), in respect of compliance with the

Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New

York Bankruptcy Cases adopted by the Court on November 25, 2009 (the "**Local Guidelines**"),

the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "**UST Guidelines**") and

the Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711] (the

"**Administrative Order**," and together with the Local Guidelines and the UST Guidelines, the

"**Guidelines**").

       48.     This certification is made in respect of WGM's application, dated March

17, 2010 (the "**Application**"), for interim compensation and reimbursement of expenses for the

period commencing October 1, 2009 through and including January 31, 2010 (the "**Second**

**Compensation Period**") in accordance with the Guidelines.

       49.     In respect of section B.1 of the Local Guidelines, I certify that:

    a.     I have read the Application;

    b.     to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

    c.     the fees and disbursements sought are billed at rates in accordance with those customarily charged by WGM and generally accepted by WGM's clients; and

    d.     in providing a reimbursable service, WGM does not make a profit on that service, whether the service is performed by WGM in-house or through a third party.

       50.     In respect of section A.2 of the Local Guidelines and as required by the

Administrative Order, I certify that WGM has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"**Committee**") and the Debtors, with a statement of WGM's fees and disbursements accrued

during the previous month, although, due to the exigencies of these cases, such statements were

not always provided within the exact timetables set forth in the Administrative Order.

51.     In respect of section A.3 of the Local Guidelines, I certify that the Debtors,

attorneys for the Committee, and the United States Trustee for the Southern District of New York

are each being provided with a copy of the Application.

Dated: New York, New York
        March 17, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit B**

**Summary of Second Interim Fee Application of
Weil, Gotshal & Manges LLP for Services Rendered
for the Period October 1, 2009 Through January 31, 2010**

| NAME OF PROFESSIONAL PERSON | DEPARTMENT AND YEAR ADMITTED[1] Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | | HOURLY BILLING RATE[2] | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| **PARTNERS & COUNSELS:** | | | | | |
| Miller, Harvey R. | BFR | 1958 | $990.00[3] | 7.30 | $ 7,227.00 |
| Miller, Harvey R. | BFR | 1958 | $950.00 | 118.60 | $ 112,670.00 |
| Berz, David R. | LR | 1973 | $900.00 | 177.20 | $ 159,480.00 |
| Berz, David R. | LR | 1973 | $860.00 | 512.30 | $ 439,933.00 |
| Warren, Irwin H. | LR | 1975 | $990.00 | 1.90 | $ 1,881.00 |
| Warren, Irwin H. | LR | 1975 | $950.00 | 76.50 | $ 72,675.00 |
| Guy, Ray T. | LR | 1976 | $885.00 | 8.10 | $ 7,168.50 |
| Guy, Ray T. | LR | 1976 | $850.00 | 13.60 | $ 11,560.00 |
| Karotkin, Stephen | BFR | 1977 | $990.00 | 39.20 | $ 38,808.00 |
| Karotkin, Stephen | BFR | 1977 | $950.00 | 283.70 | $ 262,295.00 |
| Hird, David B. | LR | 1977 | $845.00 | 1.20 | $ 1,014.00 |
| Hird, David B. | LR | 1977 | $790.00 | 31.20 | $ 24,648.00 |
| Dixon, Catherine T. | CORP | 1982 | $990.00 | 4.60 | $ 4,554.00 |
| Dixon, Catherine T. | CORP | 1982 | $950.00 | 10.80 | $ 10,260.00 |
| Gietz, Raymond O. | CORP | 1982 | $990.00 | 3.00 | $ 2,970.00 |
| Gietz, Raymond O. | CORP | 1982 | $900.00 | 36.50 | $ 30,870.00 |
| Goldring, Stuart J. | TAX | 1984 | $990.00 | 17.10 | $ 16,929.00 |
| Goldring, Stuart J. | TAX | 1984 | $900.00 | 61.00 | $ 54,900.00 |

[1] BFR- Business Finance & Restructuring, CORP – Corporate, LR – Litigation/Regulatory, TAX – Tax, S – Securitization, LS – Litigation Support, SA – Summer Associate, * Not yet admitted to the bar.

[2] The conversion date used for determining billing rates in U.S. dollars for our European offices was the first day of the month for each billing period.

[3] Billing rates customarily are adjusted at the beginning of each calendar year.

| Zalenski, Walter E. | LR | 1985 | $790.00 | 11.10 | $ | 8,769.00 |
|---|---|---|---|---|---|---|
| Gregory, Holly J. | CORP | 1987 | $885.00 | 14.40 | $ | 12,744.00 |
| Gregory, Holly J. | CORP | 1987 | 810.00 | 2.20 | $ | 1,782.00 |
| Kam, Michael K. | TAX | 1987 | $900.00 | 1.00 | $ | 900.00 |
| Kam, Michael K. | TAX | 1987 | $875.00 | 10.10 | $ | 8,837.50 |
| Bernstein, Steven K. | LR | 1991 | $865.00 | 22.30 | $ | 19,289.50 |
| Beagles, Vance L. | LR | 1993 | $845.00 | 85.00 | $ | 71,825.00 |
| Beagles, Vance L. | LR | 1993 | $790.00 | 62.30 | $ | 49,217.00 |
| Smolinsky, Joseph H. | BFR | 1989 | $900.00 | 73.20 | $ | 65,655.00 |
| Smolinsky, Joseph H. | BFR | 1989 | $825.00 | 248.00 | $ | 204,600.00 |
| Boerst, Juergen (Frankfurt Office) | CORP | 1991 | $805.00 | 21.60 | $ | 17,388.00 |
| Grauke, Stephan K. (Frankfurt Office) | CORP | 1991 | $805.00 | 44.30 | $ | 35,661.50 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $945.00 | 13.40 | $ | 12,663.00 |
| Druon, Philippe (Paris Office) | BFR | 1996 | $910.00 | 14.00 | $ | 12,740.00 |
| Osterman, Jeffrey D. | CORP | 1996 | 845.00 | 3.70 | $ | 3,126.50 |
| Osterman, Jeffrey D. | CORP | 1996 | $790.00 | 64.20 | $ | 50,718.00 |
| Neuwirth, John A. | LR | 1997 | $760.00 | 21.90 | $ | 16,644.00 |
| Zambrano, Angela C. | LR | 1997 | $780.00 | 23.20 | $ | 18,096.00 |
| Zambrano, Angela C. | LR | 1997 | $725.00 | 36.90 | $ | 26,752.50 |
| Berkovich, Ronit J. | BFR | 2002 | $725.00 | 29.00 | $ | 21,025.00 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $720.00 | 1.00 | $ | 720.00 |
| Baer, Lawrence J. (Counsel) | LR | 1984 | $700.00 | 14.70 | $ | 10,290.00 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $700.00 | 152.40 | $ | 106,680.00 |
| Meises, Michele J. (Counsel) | BFR | 1992 | $650.00 | 436.80 | $ | 283,920.00 |
| Other Partners and Counsel (fewer than 10 hours per person) | | | $650.00 - $1,000.00 | 27.5 | $ | 23,570.00 |
| **Total Partners and Counsel** | | | | **2,838.00** | **$** | **2,343,456.00** |

| NAME OF PROFESSIONAL PERSON<br><br>ASSOCIATES: | DEPARTMENT AND YEAR ADMITTED<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | | |
|---|---|---|---|---|---|---|
| Fortin, Isabelle (Paris Office) | LR | 1989 | $630.00 | 15.60 | $ | 9,828.00 |

| Fortin, Isabelle (Paris Office) | LR | 1989 | $580.00 | 3.00 | $ | 1,740.00 |
|---|---|---|---|---|---|---|
| Smith, Leslie S. | CORP | 1995 | $695.00 | 20.00 | $ | 13,900.00 |
| Smith, Leslie S. | CORP | 1995 | $640.00 | 93.00 | $ | 59,520.00 |
| Parker, Christopher M. | T&R | 1996 | $695.00 | 18.20 | $ | 12,649.00 |
| Dummer, David W. | LR | 1999 | $695.00 | 28.10 | $ | 19,529.50 |
| Dummer, David W. | LR | 1999 | $640.00 | 99.20 | $ | 63,488.00 |
| Shiffman, Jonathan | LR | 2000 | $640.00 | 17.90 | $ | 11,456.00 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $700.00 | 30.00 | $ | 21,000.00 |
| Spizzichino, Lionel (Paris Office) | BFR | 2000 | $690.00 | 25.50 | $ | 17,595.00 |
| Perheentupa, Ilkka I. | CORP | 2001 | $580.00 | 15.30 | $ | 8,874.00 |
| Amsel, Joshua S. | LR | 2001 | $640.00 | 100.30 | $ | 64,192.00 |
| Morton, Matthew D. | LR | 2001 | $665.00 | 94.80 | $ | 63,042.00 |
| Morton, Matthew D. | LR | 2001 | $580.00 | 181.40 | $ | 105,212.00 |
| Petherbridge, Vaughan | CORP | 2001 | $665.00 | 4.60 | $ | 3,059.00 |
| Petherbridge, Vaughan | CORP | 2001 | $580.00 | 113.70 | $ | 65,946.00 |
| Auchterlonie, Sarah J. | LR | 2002 | $685.00 | 25.60 | $ | 17,536.00 |
| Auchterlonie, Sarah J. | LR | 2002 | $610.00 | 2.60 | $ | 1,586.00 |
| Berkovich, Ronit J. | BFR | 2002 | $630.00 | 220.20 | $ | 138,253.50 |
| Gandhi, Ashish D. | LR | 2002 | $630.00 | 37.30 | $ | 23,499.00 |
| Hahn, Arlene A. | CORP | 2002 | $695.00 | 6.20 | $ | 4,309.00 |
| Hahn, Arlene A. | CORP | 2002 | $640.00 | 49.70 | $ | 31,808.00 |
| Kohl, Michael (Frankfurt Office) | CORP | 2002 | $655.00 | .50 | $ | 327.50 |
| Kohl, Michael (Frankfurt Office) | CORP | 2002 | $630.00 | 25.00 | $ | 15,750.00 |
| Eckols, Erin D. | LR | 2003 | $665.00 | 29.70 | $ | 19,750.50 |
| Eckols, Erin D. | LR | 2003 | $580.00 | 55.90 | $ | 32,422.00 |
| Goslin, Thomas D. | LR | 2003 | $595.00 | 88.10 | $ | 52,419.50 |
| Goslin, Thomas D. | LR | 2003 | $500.00 | 233.30 | $ | 116,650.00 |
| Mapes, Justin G. | CORP | 2003 | $665.00 | 2.10 | $ | 1,396.50 |
| Mapes, Justin G. | CORP | 2003 | $580.00 | 50.20 | $ | 29,116.00 |
| Allen, Margaret H. | LR | 2004 | $630.00 | 98.00 | $ | 61,740.00 |

| Allen, Margaret H. | LR | 2004 | $540.00 | 75.70 | $ | 40,878.00 |
|---|---|---|---|---|---|---|
| Delaney, Edwin M. | LR | 2004 | $540.00 | 33.60 | $ | 18,144.00 |
| Empting, Tobias (Frankfurt Office) | CORP | 2004 | $420.00 | 46.20 | $ | 19,404.00 |
| Goodman, Max A. | TAX | 2004 | $665.00 | 32.40 | $ | 21,546.00 |
| Goodman, Max A. | TAX | 2004 | $580.00 | 80.80 | $ | 46,864.00 |
| Schroeder, Friederike (Frankfurt Office) | CORP | 2004 | $400.00 | .20 | $ | 80.00 |
| Schroeder, Friederike (Frankfurt Office) | CORP | 2004 | $385.00 | 29.60 | $ | 11,396.00 |
| Stewart, Benjamin | LR | 2004 | $595.00 | 7.80 | $ | 4,641.00 |
| Stewart, Benjamin | LR | 2004 | $500.00 | 31.70 | $ | 15,850.00 |
| Blanchard, Aimee N. | LR | 2005 | $500.00 | 11.30 | $ | 5,650.00 |
| Godhard, Peter | CORP | 2005 | $550.00 | 6.20 | $ | 3,410.00 |
| Godhard, Peter | CORP | 2005 | $465.00 | 48.60 | $ | 22,599.00 |
| Lederman, Evan S. | BFR | 2005 | $595.00 | 96.00 | $ | 57,120.00 |
| Lederman, Evan S. | BFR | 2005 | $500.00 | 581.60 | $ | 290,800.00 |
| Kulawik, Tomasz | CORP | 2006 | $455.00 | 1.60 | $ | 728.00 |
| Kulawik, Tomasz | CORP | 2006 | $355.00 | 25.70 | $ | 9,123.50 |
| Noury, Anne-Sophie (Paris Office) | BFR | 2006 | $615.00 | 20.80 | $ | 12,792.00 |
| Noury, Anne-Sophie (Paris Office) | BFR | 2006 | $525.00 | 68.40 | $ | 35,910.00 |
| Christensen, Evert J. | LR | 2007 | $415.00 | 103.10 | $ | 42,786.50 |
| Rosen, Marc B. | CORP | 2007 | $550.00 | 11.60 | $ | 6,380.00 |
| Rosen, Marc B. | CORP | 2007 | $465.00 | 49.50 | $ | 23,017.50 |
| Decker, Sarah M. | LR | 2007 | $550.00 | 6.20 | $ | 3,410.00 |
| Decker, Sarah M. | LR | 2007 | $465.00 | 72.90 | $ | 33,898.50 |
| O'Connor, John T. | LR | 2007 | $515.00 | 15.90 | $ | 8,188.50 |
| O'Connor, John T. | LR | 2007 | $415.00 | 76.50 | $ | 31,747.50 |
| Wine, Jennifer L. | LR | 2007 | $550.00 | 12.30 | $ | 6,765.00 |
| Wine, Jennifer L. | LR | 2007 | $465.00 | 128.30 | $ | 58,729.50 |
| Benfield, Brianna N. | LR | 2008 | $455.00 | 99.30 | $ | 45,181.50 |
| Benfield, Brianna N. | LR | 2008 | $355.00 | 383.80 | $ | 135,361.50 |
| Bronder, Vigdis | CORP | 2008 | $515.00 | 5.60 | $ | 2,884.00 |

| Bronder, Vigdis | CORP | 2008 | $415.00 | 48.60 | $ | 20,169.00 |
|---|---|---|---|---|---|---|
| Burns, Gregory C. | TAX | 2008 | $550.00 | 3.10 | $ | 1,705.00 |
| Burns, Gregory C. | TAX | 2008 | $465.00 | 25.60 | $ | 11,904.00 |
| Forlenza, Justin | CORP | 2008 | $515.00 | 1.80 | $ | 927.00 |
| Forlenza, Justin | CORP | 2008 | $415.00 | 13.10 | $ | 5,436.50 |
| Hines, Nichole | LR | 2008 | $415.00 | 15.70 | $ | 6,515.50 |
| Laken, Lacey | BFR | 2008 | $515.00 | 21.40 | $ | 11,021.00 |
| Laken, Lacey | BFR | 2008 | $415.00 | 172.20 | $ | 71,463.00 |
| Pae, Joonbeom | TAX | 2008 | $515.00 | 6.40 | $ | 3,296.00 |
| Pae, Joonbeom | TAX | 2008 | $415.00 | 140.20 | $ | 58,183.00 |
| Arons, Andrew | CORP | 2009 | $455.00 | 30.00 | $ | 13,650.00 |
| Arons, Andrew | CORP | 2009 | $355.00 | 256.20 | $ | 90,951.00 |
| Cutting, Dionne | CORP | 2009 | $515.00 | .70 | $ | 360.50 |
| Cutting, Dionne | CORP | 2009 | $415.00 | 13.70 | $ | 5,685.50 |
| Falabella, Pablo | BFR | 2009 | $515.00 | 90.80 | $ | 46,762.00 |
| Falabella, Pablo | BFR | 2009 | $415.00 | 525.60 | $ | 218,124.00 |
| Hatcher, R. Todd T. | TAX | 2009 | $455.00 | 11.40 | $ | 5,187.00 |
| Hatcher, R. Todd T. | TAX | 2009 | $355.00 | 71.80 | $ | 25,489.00 |
| Bruck, Rolf (Frankfurt Office) | CORP | 2009 | $350.00 | 18.20 | $ | 6,370.00 |
| Lottmann, Annelies | LR | 2009 | $355.00 | 14.90 | $ | 5,289.50 |
| Yates, Erin K. | LR | 2009 | $455.00 | 14.30 | $ | 6,506.50 |
| Yates, Erin K. | LR | 2009 | $355.00 | 31.60 | $ | 11,218.00 |
| Yung, Kevin | CORP | 2009 | $355.00 | 11.10 | $ | 3,940.50 |
| Bergman, Matthew D. | CORP | 2009 | $355.00 | 22.10 | $ | 7,845.50 |
| Brooks, Russell | BFR | 2010 | $455.00 | 212.40 | $ | 96,528.25 |
| Brooks, Russell | BFR | 2010 | $355.00 | 529.10 | $ | 187,830.50 |
| Esposito, Michael J. | CORP | 2010 | $455.00 | .70 | $ | 318.50 |
| Esposito, Michael J. | CORP | 2010 | $355.00 | 28.00 | $ | 9,940.00 |
| Rosen, Chelsea | BFR | 2010 | $395.00 | 10.20 | $ | 4,029.00 |
| Other Associates (fewer than 10 hours per person) | | | $355.00-$765.00 | 91.70 | $ | 42,970.00 |
| **Total Associates** | | | | **6,380.80** | **$** | **3,082,494.75** |

| NAME OF PROFESSIONAL PERSON<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise<br><br>LAW CLERKS: | DEPARTMENT AND YEAR ADMITTED | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| Maussion, Jean-Baptiste de (Paris Office) | BFR – N/A | $175.00 | 7.00 | $ | 1,225.00 |
| Klemm, Mira (Paris Office) | BFR – N/A | $175.00 | 62.70 | $ | 10,972.50 |
| Hannotin, Gabriel (Paris Office) | BFR – N/A | $175.00 | 31.00 | $ | 5,425.00 |
| Menez, Benoit (Paris Office) | BFR – N/A | $175.00 | 32.00 | $ | 5,600.00 |
| Brogi, Alice (Paris Office) | BFR – N/A | $180.00 | 15.00 | $ | 2,700.00 |
| Rapp, Alexis (Paris Office) | BFR – N/A | $180.00 | 3.00 | $ | 540.00 |
| Rosen, Chelsea | BFR – N/A | $225.00 | 159.60 | $ | 35,910.00 |
| **Total Law Clerks** | | | **310.30** | **$** | **62,372.50** |

| NAME OF PROFESSIONAL<br><br>Position of the Applicant, Year of Obtaining License to Practice, Area of Expertise<br><br>Paralegals, Clerks, Library Staff and Other Non-Legal Staff: | DEPARTMENT AND YEAR ADMITTED | HOURLY BILLING RATE | TOTAL BILLED HOURS | TOTAL COMPENSATION | |
|---|---|---|---|---|---|
| Lee, Kathleen | BFR – N/A | $275.00 | 9.20 | $ | 2,530.00 |
| Lee, Kathleen | BFR – N/A | $245.00 | 55.50 | $ | 13,597.50 |
| Shrestha, Christine | CORP – N/A | $275.00 | 21.00 | $ | 5,775.00 |
| Shrestha, Christine | CORP – N/A | $245.00 | 85.30 | $ | 20,898.50 |
| Hausman, Jeffrie | LR – N/A | $260.00 | 38.80 | $ | 10,088.00 |
| Hausman, Jeffrie | LR – N/A | $230.00 | 124.00 | $ | 28,520.00 |
| Fuller, Deidre E. | LR – N/A | $260.00 | 7.80 | $ | 2,028.00 |
| Fuller, Deidre E. | LR – N/A | $230.00 | 12.30 | $ | 2,829.00 |
| Burns, Jo N. | LR – N/A | $260.00 | 19.50 | $ | 5,070.00 |
| Jones, Peggy | CORP – N/A | $260.00 | 14.00 | $ | 3,640.00 |
| Jones, Peggy | CORP – N/A | $230.00 | 72.80 | $ | 16,744.00 |
| Cade, Nancy P. | LR – N/A | $250.00 | 1.90 | $ | 475.00 |
| Cade, Nancy P. | LR – N/A | $210.00 | 10.80 | $ | 2,268.00 |

| Flinn, Deborah C. | LR – N/A | $240.00 | 5.00 | $ | 1,200.00 |
|---|---|---|---|---|---|
| Flinn, Deborah C. | LR – N/A | $210.00 | 19.20 | $ | 4,032.00 |
| Kerley, Peggy N. | LR – N/A | $250.00 | 2.50 | $ | 625.00 |
| Kerley, Peggy N. | LR – N/A | $210.00 | 9.60 | $ | 2,016.00 |
| Phillips, Lesley | LR – N/A | $210.00 | 25.90 | $ | 5,439.00 |
| George, Camille A. | BFR – N/A | $240.00 | 24.80 | $ | 5,952.00 |
| George, Camille A. | BFR – N/A | $210.00 | 92.40 | $ | 19,404.00 |
| Siebel, Peter A. | BFR – N/A | $210.00 | 26.80 | $ | 5,628.00 |
| Schell, Peter | CORP – N/A | $225.00 | 9.50 | $ | 2,137.50 |
| Schell, Peter | CORP – N/A | $205.00 | 137.50 | $ | 28,187.50 |
| Maravilla, Mel C. | CORP – N/A | $225.00 | 8.40 | $ | 1,890.00 |
| Maravilla, Mel C. | CORP – N/A | $200.00 | 42.70 | $ | 8,540.00 |
| Oh, Doe Y. | CORP – N/A | $215.00 | 4.80 | $ | 1,032.00 |
| Oh, Doe Y. | CORP – N/A | $195.00 | 17.50 | $ | 3,412.50 |
| Chettri, Anupama | LR – N/A | $200.00 | 3.30 | $ | 660.00 |
| Chettri, Anupama | LR – N/A | $180.00 | 9.70 | $ | 1,746.00 |
| Potter, Lougran | LR – N/A | $200.00 | 2.90 | $ | 580.00 |
| Potter, Lougran | LR – N/A | $180.00 | 15.80 | $ | 2,844.00 |
| Prindle, Kaitlin C. | BFR – N/A | $200.00 | 15.60 | $ | 3,120.00 |
| Prindle, Kaitlin C. | BFR – N/A | $180.00 | 45.50 | $ | 8,190.00 |
| Rodriguez, Ilusion | BFR – N/A | $200.00 | 101.80 | $ | 20,360.00 |
| Rodriguez, Ilusion | BFR – N/A | $180.00 | 459.90 | $ | 82,782.00 |
| Perkari, Harish | CORP – N/A | $190.00 | 10.00 | $ | 1,900.00 |
| Perkari, Harish | CORP – N/A | $170.00 | 63.10 | $ | 10,727.00 |
| Etienne, Donald | BFR – N/A | $180.00 | .70 | $ | 63.00 |
| Etienne, Donald | BFR – N/A | $160.00 | 17.50 | $ | 2,800.00 |
| Mehta, Mona V. | LR – N/A | $180.00 | 14.50 | $ | 2,610.00 |
| Mehta, Mona V. | LR – N/A | $160.00 | 68.00 | $ | 10,880.00 |
| Shapiro, Rachel | BFR – N/A | $160.00 | 100.90 | $ | 16,144.00 |
| Swaney, Nicole | LR – N/A | $160.00 | .60 | $ | 96.00 |
| Bailey, Gregory | Managing Clerk | $170.00 | 25.90 | $ | 4,403.00 |
| Pasion, Luis L. | Managing Clerk | $140.00 | 28.50 | $ | 3,990.00 |
| Burdette, Leslie A. | Managing Clerk | $140.00 | 49.90 | $ | 6,986.00 |

| Sam, Mili | Litigation Support | $235.00 | 11.00 | $ | 2,585.00 |
|---|---|---|---|---|---|
| Robin, Artur | Litigation Support | $215.00 | 19.30 | $ | 4,149.50 |
| Nudelman, Peter | Litigation Support | $215.00 | 16.00 | $ | 3,440.00 |
| Other Paraprofessionals and Other Staff (fewer than 10 hours per person) | | $85.00 - $275.00 | 109.30 | $ | 20,564.00 |
| **Total Paraprofessionals and Other Staff** | | | **2,089.20** | $ | **415,578.00** |

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| **TOTALS:** | | | |
| Partners and Counsel | $825.74 | 2,838.00 | $    2,343,456.00 |
| Associates | $483.10 | 6,380.80 | $    3,082,494.75 |
| Law Clerks | $201.00 | 310.30 | $    62,372.50 |
| Paraprofessionals and Other Staff | $198.92 | 2,089.20 | $    415,578.00 |
| **Total Fees Incurred** | | **11,618.30** | **$    5,903,901.25** |
| **Blended Attorney Rate (excluding summer associates and law clerks)** | **$588.57** | | |
| | | | |
| **Grand Total Fees Requested** | | **11,618.30** | **$    5,903,901.25** |

**Exhibit C**

**Expense Summary by Weil, Gotshal & Manges LLP**
**for the Period October 1, 2009 Through January 31, 2010**

| EXPENSES | AMOUNTS |
|---|---|
| Local Transportation | $ 15,789.22 |
| Domestic Travel/Domestic Travel Meals | $ 29,039.20 |
| Meals | $ 6,223.71 |
| Postage | $ 130.90 |
| Telecommunications | $ 809.88 |
| Facsimile – (Outside) | $ 973.00 |
| Duplicating – Firm | $ 16,103.17 |
| Duplicating – External | $ 29,882.75 |
| Air Courier/Express Mail/UPS | $ 4,367.80 |
| Computerized Research | $ 74,664.41 |
| E-Discovery Services | $ 154.92 |
| Filing Fees | $ 2,445.15 |
| Court Reporting | $ 34,338.53 |
| Outside Temps- Paralegals | $ 402.50 |
| Outside Document Service Bureau | $ 176.00 |
| Other Client Charges: Moving and Storage | $ 2,369.00 |
| Edgar Filings | $ 2,500.00 |
| Clipping Service/SEC Watch | $ 1,020.00 |
| Corporation Services | $ 175,822.69 |
| Business Meals | $ 1,042.63 |
| Meetings and Conference Meals | $ 3,438.12 |
| Credit for expenses relating to Duplicating during First Compensation Period | $ (2,964.57) |
| Credit for expenses relating to Duplicating during Second Compensation Period | $ (3.20) |
| **Total Expenses Requested:** | **$ 398,725.81** |

**Exhibit D**

**Compensation by Work Task Code for Services
Rendered by Weil, Gotshal & Manges LLP for the
Period October 1, 2009 Through January 31, 2010**

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 010 | Case Administration | 433.30 | $ 144,522.50 |
| 020 | Unsecured Creditors Issues/Meetings/Communications | 238.80 | $ 93,103.00 |
| 030 | Secured Creditors Issues/Meetings/Communications | 4.50 | $ 2,438.00 |
| 040 | General Case Strategy | 252.40 | $ 145,753.50 |
| 050 | Hearings and Court Matters | 342.90 | $ 126,176.50 |
| 060 | WG&M Retention/Billing/Fee Applications | 932.60 | $ 269,122.50 |
| 070 | Retention/Fee Application: Ordinary Course Professionals | 30.70 | $ 11,625.00 |
| 080 | Retention/Fee Application: Other Professionals | 220.50 | $ 108,890.50 |
| 090 | Schedules/Statement of Financial Affairs | 105.20 | $ 43,532.50 |
| 100 | US Trustee Issues/Meetings/Communications | 35.70 | $ 19,108.00 |
| 110 | Corporate Governance | 337.10 | $ 142,823.50 |
| 120 | DIP Financing / Cash Collateral | 44.90 | $ 19,557.00 |
| 130 | Exit Financing | 0.00 | $ 0.00 |
| 140 | Insurance Issues | 122.90 | $ 92,095.50 |
| 150 | Employee/ERISA/Benefits Issues | 138.10 | $ 90,983.50 |
| 160 | 363 Transaction (MPA, sale of substantially all assets) | 949.70 | $ 556,193.50 |
| 161 | Other asset sales | 254.50 | $ 125,532.50 |
| 170 | 365/Executory Contracts/ Leases/ Real Property | 678.90 | $ 325,289.50 |
| 190 | Adversary Proceedings | 182.20 | $ 89,303.00 |
| 200 | Claims Objection Litigation | 958.40 | $ 564,242.00 |
| 210 | Bar Date Motion and Claims Reconciliation Issues | 852.10 | $ 458,685.50 |
| 220 | Automatic Stay | 226.50 | $ 102,675.50 |
| 230 | Business Plan | 143.10 | $ 99,836.00 |
| 240 | Disclosure Statement/Solicitation/Voting | 31.70 | $ 17,389.00 |
| 250 | Exclusivity | 55.80 | $ 26,949.00 |
| 260 | Plan of Reorganization/Plan Confirmation | 324.70 | $ 219,338.50 |
| 270 | Tax Issues | 398.60 | $ 203,644.50 |

| PROJECT CODE | PROJECT DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 280 | Delphi Chapter 11 Case | 20.30 | $ 13,182.00 |
| 290 | Customer/Vendor/Supplier/Dealer Issues | 150.70 | $ 83,750.00 |
| 300 | Utility Issues | 41.90 | $ 18,646.00 |
| 310 | Reclamation & 503(b)(9) Issues | 45.70 | $ 18,229.50 |
| 320 | Corporate/Securities | 284.70 | $ 115,138.00 |
| 330 | Non-Bankruptcy Litigation | 566.80 | $ 219,528.50 |
| 340 | Non-Working Travel | 31.90 | $ 12,032.75 |
| 350 | Communication with Client | 19.70 | $ 14,560.50 |
| 360 | Administrative Claims | 81.50 | $ 32,726.50 |
| 380 | Europe | 533.30 | $ 270,821.00 |
| 390 | Asia Pacific | 0.00 | $ 0.00 |
| 400 | Mexico | 0.00 | $ 0.00 |
| 410 | LAAM | 0.00 | $ 0.00 |
| 420 | Canada | 46.20 | $ 26,306.00 |
| 430 | Environmental Issues | 1,273.40 | $ 879,883.50 |
| 440 | 2004 Examinations/Other Investigatory Matters | 226.40 | $ 100,287.00 |
| **TOTAL** | | **11,618.30** | **5,903,901.25** |