Elihu Inselbuch
Rita C. Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, New York 10152-3500
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755

Trevor W. Swett III
Kevin C. Maclay
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W., Suite 1100
Washington, D.C. 20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301

*Proposed Attorneys for Movant Official Committee*
 *of Unsecured Creditors Holding Asbestos-Related Claims*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re | : |
| MOTORS LIQUIDATION COMPANY, *et al.*, | :    Chapter 11 Case No. |
| f/k/a General Motors Corp., *et al.* | : |
| | :    09-50026 (REG) |
| | : |
| | :    (Jointly Administered) |
| | : |
| | : |

---------------------------------------------------------------x

**DECLARATION OF MARK A. PETERSON UNDER RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 328 OF THE U.S. BANKRUPTCY CODE IN SUPPORT OF THE APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF LEGAL ANALYSIS SYSTEMS, INC. *NUNC PRO TUNC* TO MARCH 15, 2010 AS CONSULTANT ON THE VALUATION OF ASBESTOS LIABILITIES TO THE OFFICIAL COMMITTEE OF <u>UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS</u>**

347653

Pursuant to Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure, Mark A. Peterson deposes and says as follows:

1. I am the principal of Legal Analysis Systems ("LAS"), a firm providing expert and consultant services in complex litigation that maintains offices at 970 Calle Arroyo, Thousand Oaks, California 91360, (805) 499-3572. I submit this declaration in support of the application ("Application") of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "Asbestos Claimants Committee" or "ACC") in the above-captioned Chapter 11 proceeding for an order authorizing the Committee to retain LAS, *nunc pro tunc* as of March 15, 2010, as its asbestos liability consultant.

2. LAS has a wealth of experience in providing expert consultation and advice regarding estimating liabilities for present and future asbestos claims in asbestos-related reorganization proceedings and has an excellent reputation for the services it has rendered in other Chapter 11 asbestos-related cases throughout the country. LAS has been retained as an expert in 44 asbestos-related cases. LAS is noted for its expertise and experience in providing expert consultation and advice regarding the identification and treatment of asbestos bodily injury claimants, providing such services as the collection and analysis of information regarding asbestos-related bodily injury claimants, analysis of issues relating to bar dates and notice, development of notice procedures, and other services. Included among the matters in which I provided or am currently providing consulting and expert testimony services are the bankruptcies of the Babcock & Wilcox Company, Owens Corning Corporation, Pittsburgh Corning Corporation, Armstrong World Industries, Inc., Burns & Roe Enterprises, Inc., G-I Holdings Inc., W.R. Grace & Company, United States Gypsum Corporation, Dow Corning,

Raytech Corporation, Full-Austin Insulation Company, H.K. Porter Company, Inc. and numerous additional Chapter 11 restructurings.

      3.      In addition, I have provided consultant services to 26 asbestos trusts, including the Manville Trust, UNR Asbestos Disease Claimants Trust, National Gypsum Trust, Fibreboard Interim Trust, Eagle-Picher Asbestos Trust, Celotex and Carey Canada Trust, H. K. Porter Trust, Fuller-Austin Settlement Trust, Keene Asbestos Claimants Trust, Raytech Trust, E.J Bartels Trust, Wallace and Gale Trust, Shook and Fletcher Trust, Western Asbestos Trust (MacArthur), Porter Hayden Trust, Combustion Engineering Trust, C. E. Thurston Trust, J. T. Thorpe Trust, ARTRA Trust, and API Trust.

## Scope of Service

      4.      As set forth in the Application, the services that LAS will perform for the ACC include but are not limited to the following:

    a.    development of oversight methods and procedures so as to enable the ACC to fulfill its responsibilities of reviewing and analyzing any proposed Disclosure Statement, Plan, and other similar documents in this reorganization proceeding;

    b.    review and analyses of the Debtors' asbestos claims database and review and analysis of the Debtors' resolution of various Asbestos Claims;

    c.    estimation of the Debtors' liability for Asbestos Claims that are pending at the present time as well as those that will be filed in the future;

    d.    quantitative analyses of alternative claims resolution procedures including estimation of payments that would be made to various types of claims under those alternatives and development of cash flow analysis of an asbestos compensation trust under alternative procedures;

    e.    evaluation of reports and opinions of experts and consultants retained by other parties to these bankruptcy proceedings;

    f.    evaluations and analyses of proposed proofs of claims and bar dates and analyses of data from proofs of claim for asbestos claims;

    g.    quantitative analyses of other matters related to the Asbestos Claims as may be requested by the ACC; and

    h.    testimony on such matters as is required by the ACC.

### **Compensation**

5.    Subject to Court approval and in accordance with § 330(a) of the Bankruptcy Code, compensation will be paid to LAS as stated in the Application, on an hourly basis to be paid by the Debtors, as follows:

| | |
|---|---|
| Mark A. Peterson | $800 |
| Daniel Relles (Statistician) | $475 |

This listing is not exclusive, and other professionals at LAS may also perform services for the ACC. LAS's hourly rates are subject to periodic adjustment.

6.    In connection with the reimbursement of actual, necessary expenses, it is LAS's policy to charge its clients for direct expenses incurred in connection with providing client services, including expenses for travel, photocopying, postage, vendor charges, long distance telephone charges, delivery service and other out-of-pocket expenses incurred in providing professional services.

### **Connection With Creditors and Other Parties in Interest**

7.    To the best of my knowledge and belief after due inquiry, neither LAS nor I have any relationship with any such entity which would be adverse to the ACC or the Debtors' asbestos creditors. Further, neither I nor any other employee of LAS is a creditor, former employee, equity security holder, or an insider (as such term is defined in § 101(31) of the

Bankruptcy Code) of the Debtors, or has an interest adverse to that of the Debtors' estate or of any class of creditors or equity security holders.

8.  LAS has reviewed its files to ensure that no conflicts or other disqualifying circumstances exist. If any such matters are discovered in the future, LAS will supplement its disclosures to the Court.

9.  Accordingly, I believe that LAS is a "disinterested party" as such term is defined in § 101(14) of the Bankruptcy Code and as required by § 327(a) and referenced by § 328(c) of the Bankruptcy Code.

10. No promises have been received by LAS as to compensation in connection with these cases other than in accordance with the Bankruptcy Code. LAS has no agreement with any other entity to share with such entity any compensation to be received by LAS.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 18, 2010.

/s/ Mark A. Peterson
Mark A. Peterson