**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
:
**In re**                                                              :     **Chapter 11 Case No.**
                                                                       :
**MOTORS LIQUIDATION COMPANY,** *et al.*,         :     **09-50026 (REG)**
         f/k/a General Motors Corp., *et al.*                 :
                                                                       :
                              **Debtors.**                      :     **(Jointly Administered)**
                                                                       :
----------------------------------------------------------------x

**ORDER PURSUANT TO FED. R. BANKR. P. 9019**
**APPROVING GLOBAL SETTLEMENT AGREEMENT AND COMPROMISE**

Upon the Motion, dated March 4, 2010 (the "**Motion**"),[1] of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order approving and ratifying, among other things, the settlement agreement (the **"Global Settlement Agreement"**), attached to the Motion as **Exhibit "A"**, between (i) General Motors LLC ("**New GM**"), (ii) MLC, (iii) MLCS, LLC (f/k/a Saturn, LLC), (iv) Saturn County Bond Corporation, (v) HNB Investment Corp., (vi) General Foods Credit Corporation, (vii) General Foods Credit Investors No. 2 Corporation, (viii) Philip-Morris Capital Corporation, (ix) General Electric Capital Corporation, (x) U.S. Bank, National Association, as owner trustee under certain lease arrangements, (xi) The Bank of New York Mellon, as indenture trustee, pass through trustee or purchase option agent under certain lease arrangements, (xii) Manufacturers and Traders Trust Company, as indenture trustee, pass through trustee or purchase option agent under certain lease arrangements, and (xiii) Wells Fargo Bank Northwest, National Association, as indenture trustee under certain lease arrangements, all as more fully described in the Motion; and due and proper notice of the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1834162.5

Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is ordered that:

1. The Debtors' entry into the Global Settlement Agreement is in the best interests of the Debtors and their estates;

2. The settlements and compromises embodied in the Global Settlement Agreement are within the range of reasonableness;

3. The Debtors' entry into the Global Settlement Agreement is authorized, ratified and directed and the Debtors and all parties to the Global Settlement Agreement are authorized to take all steps necessary and appropriate to consummate and otherwise effectuate the terms of the Global Settlement Agreement without further order of this Court;

4. Upon entry of this Order, all terms and conditions of the Settlement Agreement shall become effective;

5. This Order is the order referenced in paragraph 3(b) of this Court's December 16, 2009 "Order Authorizing Rejection of Certain Personal Property Agreements and/or Abandonment of Equipment" [Docket No. 4671];

6. The automatic stay is lifted to the extent necessary to consummate the sales of the Equipment subject to the Subject Leveraged Lease Transactions known as GM 2000 A-3, GM 2001 A-1, GM 2001 A-2, GM 2001 A-6, GM 2001 A-7 and GM 2001 A-8 as contemplated by the Global Settlement Agreement;

7. Upon the closing of the sales of the Equipment subject to the Subject Leveraged Lease Transactions known as GM 2000 A-3, 2001 A-1, GM 2001 A-2, GM 2001 A-6, GM 2001 A-7

and GM 2001 A-8, all other parties to such Subject Leveraged Lease Transactions shall be permanently enjoined from asserting any claims against New GM on account of such Equipment or such Subject Leveraged Lease Transactions, or otherwise interfering with New GM's use and quiet enjoyment of such Equipment;

8.  The Indenture Trustees are authorized to distribute the proceeds of such sales to the Noteholders and Certificateholders (each, as defined in the Global Settlement Agreement) in accordance with the terms of the Global Settlement Agreement;

9.  As set forth in the Global Settlement Agreement, there shall be allowed pre-petition general unsecured rejection damages claims (the "**Allowed Prepetition Rejection Damages Claims**") in favor of the Indenture Trustees with respect to the Subject Leveraged Lease Transactions as follows:

| Rejected Lease Transaction | Amount of Claim | Recipient |
|---|---|---|
| 2000 A-3 Participation Agreement and other 2000 A-3 Operative Documents | $44,412,510.92 | M&TT, as 2000 A-3 Indenture Trustee |
| 2001 A-1 Participation Agreement and other 2001 A-1 Operative Documents | $141,305,874.37 | Wells Fargo, as 2001 A-1 Indenture Trustee |
| 2001 A-2 Participation Agreement and other 2001 A-2 Operative Documents | $142,197,253.40 | Wells Fargo, as 2001 A-2 Indenture Trustee |
| 2001 A-6 Participation Agreement and other 2001 A-6 Operative Documents | $45,835,565.21 | Wells Fargo, as 2001 A-6 Indenture Trustee |
| 2001 A-7 Participation Agreement and other 2001 A-7 Operative Documents | $6,753,243.28 | Wells Fargo, as 2001 A-7 Indenture Trustee |
| 2001 A-8 Participation Agreement and other 2001 A-8 Operative Documents | $6,789,209.82 | Wells Fargo, as 2001 A-8 Indenture Trustee |

3

10. As set forth in the Global Settlement Agreement, there shall be allowed pre-petition general unsecured tax indemnity claims (the "**Allowed Prepetition TIA Claims**") in favor of the Owner Participants on account of the rejection of the Tax Indemnity Agreements as follows:

| Rejected Lease Transaction | Amount of Claim | Recipient |
| --- | --- | --- |
| 2001 A-1 Participation Agreement and Tax Indemnity Agreement | $22,400,000 | General Foods No. 2, as 2001 A-1 Owner Participant |
| 2001 A-7 Participation Agreement and Tax Indemnity Agreement | $1,600,000 | General Foods No. 2, as 2001 A-7 Owner Participant |

11. The Allowed Prepetition TIA Claims constitute "Excepted Property," as defined in the Participation Agreements with respect to the Subject Leveraged Lease Transactions known as GM 2001 A-1 and GM 2001 A-7;

12. In full and final settlement and satisfaction of any obligation of (x) MLC, MLCS or any of their Affiliates or (y) New GM or any of its Affiliates, to make payment in connection with any administrative or other claim arising under Section 365, 503 or 507 of the Bankruptcy Code relating to the use or possession of the "Equipment" subject to any of the Subject Leveraged Lease Transactions identified in the table below during the period from the Petition Date to the Closing Date, the Indenture Trustees identified below shall have the allowed administrative claims (the "**Allowed Administrative Claims**") specified below, which shall be paid on the Closing Date by New GM (to the extent such payments have not been previously made), which payments shall be applied in accordance with the respective agreement governing the respective Subject Leveraged Lease Transactions:

4

| Rejected Lease Transaction | Amount of Payment | Recipient |
|---|---|---|
| 2000 A-3 Participation Agreement and other 2000 A-3 Operative Documents | $334,425 | M&TT, as 2000 A-3 Indenture Trustee |
| 2001 A-1 Participation Agreement and other 2001 A-1 Operative Documents | $17,459 | Wells Fargo, as 2001 A-1 Indenture Trustee |
| 2001 A-2 Participation Agreement and other 2001 A-2 Operative Documents | $13,720 | Wells Fargo, as 2001 A-2 Indenture Trustee |
| 2001 A-6 Participation Agreement and other 2001 A-6 Operative Documents | $242,198 | Wells Fargo, as 2001 A-6 Indenture Trustee |
| 2001 A-7 Participation Agreement and other 2001 A-7 Operative Documents | $111,665 | Wells Fargo, as 2001 A-7 Indenture Trustee |
| 2001 A-8 Participation Agreement and other 2001 A-8 Operative Documents | $276,445 | Wells Fargo, as 2001 A-8 Indenture Trustee |

12.     The mutual releases provided in Section 7 of the Global Settlement Agreement shall be effective and binding on all parties thereto, subject to the limitations as set forth in Section 7(g) of the Global Settlement Agreement;

13.     The Allowed Prepetition Rejection Damage Claims shall be in full and final satisfaction of any claims that might be asserted by any Noteholder or Certificateholder (each, as defined in the Global Settlement Agreement) under or in connection with the Subject Leveraged Lease Transactions known as GM 2000 A-3, GM 2001 A-1, GM 2001 A-2, GM 2001 A-6, GM 2001 A-7 and GM 2001 A-8, and that any such claims separately asserted by any Noteholder or Certificateholder under such Subject Leveraged Lease Transactions is hereby disallowed;

14.     Except with respect to Allowed Prepetition TIA Claims, any and all claims against MLC for damages for or on account of the rejection and/or breach by MLC of the agreements

5

underlying the Leveraged Lease Transactions known as GM 2001 A-1, GM 2001 A-2, GM 2001 A-6, GM 2001 A-7, and GM 2001 A-8, and any and all related claims, shall, on the Agreement Effective Date (as defined in the Global Settlement Agreement) be assigned, outright and unconditionally, as part of the transactions contemplated thereby, to the relevant Indenture Trustee for the sole benefit of the relevant Noteholders and the relevant Certificateholders (each, as defined in the Global Settlement Agreement) and the amount of such claims shall not be reduced or otherwise affected by reason of any contract or other agreement between the relevant Owner Participant, the relevant Owner Trustee, MLC or any other person; provided that, (i) with respect to any of the Subject Leveraged Lease Transactions designated GM 2000 A-3, 2001 A-1, GM 2001 A-2, GM 2001 A-6, GM 2001 A-7 and GM 2001 A-8, upon the payment in full of all amounts owing to the relevant Indenture Trustee, the relevant Noteholders and the relevant Certificateholders (including the payment in full of all of the relevant Equipment Notes, including all principal, interest (including default interest), Make-Whole Premium and other amounts), the relevant Indenture Trustee shall pay any remaining amounts (if any) to the relevant Owner Trustee for distribution pursuant to the terms of the relevant Subject Leveraged Lease Transaction agreements and (ii) no consent or approval of any Owner Trustee or any Owner Participant shall be required for any Indenture Trustee (or any Noteholder or Certificateholder) to take any action in respect of the aforementioned assigned claims;

15. To the extent any of the parties to the Global Settlement Agreement have filed proofs of claims in the Debtors' chapter 11 cases which have been settled pursuant to the terms of the Global Settlement Agreement, such parties shall promptly withdraw (or amend, as appropriate) any such proofs of claims;

16. To the extent any conflict exists between the terms and conditions of the Global Settlement Agreement and this Order, this Order shall control; and

17. This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation and/or enforcement of this Order.

Dated: **_March 19, 2010_**
      New York, New York

                                  **_s/ Robert E. Gerber_**
                                  UNITED STATES BANKRUPTCY JUDGE