# United States Bankruptcy Court

## Southern District of New York
Case No. 09-50026(REG)

**Re:**    **Northern District of Mississippi**
**Case No. 06-12118-DWH**

### Adversary Hearing No. 09-1197-DWH

Attached is a motion to lift the automatic stay, and the time is of the utmost importance. Please, Your Honor, so that this court here may determine fault, responsibility, and liability, since GMAC will be tried here, please allow this case to be tried in accord with its former co-owner, GMC, now renamed "Motors Liquidation Company". And for the record, the defendant's attorneys have offices all over the world, including Dallas, TX, which is only a few hundred miles, so they can transfer this file there, and answer this immediate complaint here as well for the Honorable Judge Houston could adjudicate, and separate who is at fault and to what degree, and damages or remedies if so ordered. Thank You.

Very Respectfully,

Rev. Guy A. Leonard, II

✱ a copy of the initial complaint is enclosed.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 09-50026 (REG)
CHAPTER 11

In RE:                              Case No. 06-12118-DWH
Guy Leonard                                  Chapter 7
    Debtor,


GUY LEONARD                     Adversary Proceeding No. 09-1197

     Plaintiff,

V,

GENERAL MOTORS CORPORATION,
AND GENERAL MOTORS
ACCEPTANCE CORPORATION,

    Defendants.

---

### MOTION OF RELIEF OF AUTOMATIC STAY

In Accordance with U.S. Federal Bankruptcy Code Title 11 Chapter 3 Subchapter IV
Section 362(*d*), a **secured** creditor may seek relief from the Automatic Stay by filing a
written Motion for Relief. Such motions are common in Chapter 11 cases due to the
typical delay between the filing of the Chapter 11 petition and the confirmation of the
Chapter 11 plan.

There are specific standards for relief of the Automatic Stay, which can be summarized
as "for cause." This may mean that property **is depreciating in value, or the creditor's
interest in the property has not been adequately protected.**

Because the issues raised are usually quite urgent, the Bankruptcy Code provides that the bankruptcy court must hold a preliminary hearing on a Motion for Relief within 30 days after its filing, and then a final hearing must be commenced in another 30 days.

Most bankruptcy courts have their own local rules as to the procedure to be adopted and followed in connection with Motions for Relief. It is this reason I urgently ask that the Honorable Judge E. Gerber grant my expedited request with a simple signature, so that the Federal Court of Bankruptcy may combine the 2 complaints into one and the Federal Judge here can determine adjudication, **15 U.S.C. Section 1681(p).**

Honorable Robert E. Gerber is it with great necessity and just causes that this *automatic stay* be lifted for the possible collision reasons, and the other sub-standard equipment reasons used on this vehicle, that is being used, with great care, but GMC dealers having acknowledged these warranty parts, GMC, or GMAC or whoever won't pay to get it done, even when I am getting email, and mailing in the mail to bring my vehicle IN for service. The mailings guarantee repairs under 36/36 Bumper-to-Bumper Warranty. More than 3-4 times they refuse to repair, **I am to be refunded, or given a new car, under Federal Consumer Protection Laws**, namely, the "National Lemon Law". But my car is not safe to drive, and with only 16,000 miles now, I need a new set of tires, which I needed 4000 miles ago. Judge Gerber, I can pull one case from their own files that would condemn them and I will subpoena it first of picking and choosing which cars they will repair and which ones they won't, for fear of a recall of any sort, small or large---My own brother blows up a motor in a 2008 Chevrolet Corvette racing it, car altered; brought in the shop that way; wrote all in the owner's manual about altering the car would void the warranty. GMC told him "no" on the motor, yet, some time later, he gets a free $25,000 motor. Now you know why I desperately seek and pray for the granting of this motion. Attached is a copy that both defendants have and now you have, and all GM and its affiliates have certainly left a sour taste in my mouth and the mouths of the American Public with their lies to Congress, and to U.S.

All I want, Your Honor, is my vehicle, or the money to repair it right, (whether any one else gets theirs fixed or not is not my concern, unless GMC doesn't want to live up to their contractual agreement especially warranty on vehicles and substandard parts on cars just cannot be tolerated under any circumstances, or **any** order of stay.

Very Respectfully Submitted,

Rev. Guy A. Leonard, II     pro se

Cc:  Weil, Gotshal, & Manges, LLP, attorneys for the Debtor

Cc:  Northern District Court of Mississippi, Adversary Hearing # 09-1197-DWH

## CERTIFICATION OF SERVICE

I, _Rev. Guy A. Leonard, II_ , certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was made on _March 17, 2010_ by:

☒ Mail service: Regular, first class United States mail, postage fully pre-paid addressed to:

_Weil, Gotshal & Manges LLP_
_1300 I Street, N.W._                    ) _ATTORNEYS FOR DEBTOR_
_Suite 900_                              ) _(DEFENDANT)_
_Washington, D.C. 20005_

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Publication: The defendant was served as follows: (Describe briefly)

☐ State Law: The defendant was served pursuant to the laws of the State of
_____ , as follows: (Describe briefly)

Under penalty of perjury, I declare that the foregoing is true and correct.

_3/17/2010_                              _Rev. Guy A. Leonard_
Date                                     Signature

Print Name _Rev. Guy A. Leonard, II_

Business Address _P.O. Box 146_

City _Nesbit_          State _MS_     Zip _38651_

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>*Rev. Guy A. Leonard, II* | DEFENDANTS<br>*General Motors Corp. &*<br>*GMAC (General Motors Acceptance Corp.)* |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>*Pro Se... P.O. Box 146*<br>*Nesbit, MS 38651 (662) 404-1170* | ATTORNEYS (If Known)<br>*UNKNOWN* |

| PARTY (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor(s)  ☐ Other<br>☐ Trustee |
|---|---|

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*See attached papers*

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☑ 11-Recovery of money/property - §542 turnover of property *(1)* | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☑ 13-Recovery of money/property - §548 fraudulent transfer *(4)* | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☐ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation |
| | (other than domestic support) |
| FRBP 7001(2) – Validity, Priority or Extent of Lien | ☐ 65-Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | |
| | FRBP 7001(7) – Injunctive Relief |
| FRBP 7001(3) – Approval of Sale of Property | ☑ 71-Injunctive relief – imposition of stay *(6)* |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 72-Injunctive relief – other |
| | |
| FRBP 7001(4) – Objection/Revocation of Discharge | FRBP 7001(8) Subordination of Claim or Interest |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | ☐ 81-Subordination of claim or interest |
| | |
| FRBP 7001(5) – Revocation of Confirmation | FRBP 7001(9) Declaratory Judgment |
| ☑ 51-Revocation of confirmation *(5)* | ☑ 91-Declaratory judgment *(3)* |
| | |
| FRBP 7001(6) – Dischargeability | FRBP 7001(10) Determination of Removed Action |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | ☐ 01-Determination of removed claim or cause |
| ☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud *(2)* | Other |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq. |
| | ☐ 02-Other (e.g. other actions that would have been brought in state court |
| (continued next column) | if unrelated to bankruptcy case) |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ *25 MILLION DOLLARS* |

Other Relief Sought *Clear title to 2006 Pontiac GTO*
*VIN # 6G2VX12U96L541148 (Compensatory Damages)*

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR *Rev. Guy A. Leonard, II* | BANKRUPTCY CASE NO. *06 - 12118* | |
| DISTRICT IN WHICH CASE IS PENDING *Northern Mississippi* | DIVISION OFFICE *Oxford, MS* | NAME OF JUDGE *DAVID W. HOUSTON III* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF *Rev. Guy A. Leonard* | DEFENDANT *General Motors Corp.* | ADVERSARY PROCEEDING NO. *09-1197-DWA* |
| DISTRICT IN WHICH ADVERSARY IS PENDING *NORTHERN DIST. OF MISSISSIPPI* | DIVISION OFFICE | NAME OF JUDGE *HON. DAVID W. HOUSTON, III* |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *PRO-SE* *Rev. [signature]* | | |
| DATE *6/8/2009* | PRINT NAME OF ATTORNEY (OR PLAINTIFF) *Rev. Guy A. Leonard* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# COMPLAINT

(Continued)

## I.    Definitions.

A. Plaintiff---Debtor, Rev. Guy A. Leonard
B. Defendant---Creditor, General Motors Corporation
C. FTC---Federal Trade Commission
D. Freedom of Information Act
E. CCPA---Consumer Credit Protection Act
F. Federal Right to "Honest Services" under 18 U.S.C. Section 1346.
G. Emergency Economic Stabilization Act of 2008 (Act)
H. FDCRA---Fair Debt Collections Practices Act
I.  Magnuson-Moss Warranty Act

\*   It is noteworthy to the Court that **ALL** the crimes and violations listed in this complaint happened **BEFORE** GM became insolvent; changed their name; split from GMAC, (General Motors Acceptance Corporation); or filed for bankruptcy protection.

\*   It is a matter of fact, which cannot be disputed, for it common knowledge that GMAC was the financial arm of GM Corporation. GMAC owned the cars for GM; and ALL the dealerships were NOT creditors but merely brokers for GMAC and the cars they owned. If any person wanted to finance any car through GMAC,

then GMAC had the final say as to approving the deal, NOT the dealerships. Since GM was broke, and operating in the red for at least the last 7 years, GMAC and all of its financial affiliates approved or disapproved any repairs for vehicles under warranty. It is also a know fact that the Federal Government gave GMAC permission to continue operating, separately from GM, and also allowed GMAC to open its financial doors to Chrysler Corp. so they may finance their cars as well. I **will** be able to establish that GM and/or GMAC "cherry-picked" which cars they would honor under the 36/36 Bumper-To-Bumper Factory Warranty.

## PLAINTIFF'S   STATEMENT

On July 25, 2007, the defendant, (Rev. Guy A. Leonard), did purchase one (1) 2006 Pontiac GTO, VIN # 6G2VX12U96L541148, a GM car, ( manufactured by Holden Motor LTD, Melbourne, Australia in November, 2005, ) from Grisanti Rebel Motors, Oxford, MS, 38655, a GM dealership, financed with GMAC, only 7 (seven) months after Chapter 7 Bankruptcy protection adjudication. I also purchased an extended warranty, (5-year, 75,000 mile), and GAP insurance which covers the car against a complete collision that totals the car value in which GMAC will pay off the remaining payments. I paid $ 2,500.00 for the extended warranty and $ 600.00 for the GAP insurance, and $ 29,557.45 for the car, and $ 5.00 for a state inspection sticker, which brings to a grand total of $ 32, 667.45, **ALL** of which is financed by GMAC, which is owned 100% by the Federal Government. Along with GMAC, ( which is no longer a finance company owned by GM, but a **BANK, and MUST be operated by Federal Banking Regulations, and the FDIC )**, the Federal Government gave GM, TARP ( Troubled Asset Relief Program ), money December 29, 2008 in three (3) increments,

which produced the Federal Government's **OWNERSHIP of GM.** GMAC has now received **$ 12.5 billion dollars in bailout money the Federal Government calls " Investment Guarantees"** in order to produce **consumer purchasing of new vehicles** to a bankrupt, spoiled by upper-management, out-of-control business, which **never** mentions in the slightest way **REPAIRING ANY VEHICLE under the FACTORY WARRANTY, which would have to be paid by GM, or in this case, the FEDERAL GOVERNMENT.**

As a 100% Disabled American Veteran, with a limited income, I purchase new cars, and put very few miles on them, for I only travel to places that is absolutely necessary, and I am no longer able to work on my own cars, nor can I afford to pay for repairs while I am making payments on the same car. The last car I owned was a Pontiac Grand Prix GTP Supercharged V-6 I traded for the 2006 Pontiac GTO I now own, which had only 40,000 miles on it after driving it for 48 months. The Pontiac 2006 GTO I am driving now, as of today has less than 13,000 miles registered on the odometer. It had 192 miles on it at the time of purchase in July 2007; however, the car was delivered to me to my home in Southaven, MS after I was approved by GMAC and financed by GMAC for 72 months @ 0 % where I took delivery and signed all the papers.

Before becoming disabled, I worked in the automotive and finance industry for over 20 years. My father owned his own auto body business for over 45 years, and I worked in his shop nearly every day from age 11-18 until I joined the Navy in 1978. After leaving the Navy in 1980 while looking for a permanent job, I went to work for AAMCO Transmissions, Inc. as a service manager for 15 years. In the middle of that 15 year stint, I took a job for Goodyear Tire & Rubber Co. for about a year. I am ASE Certified in brake repairs, Service Management, Transmission R & R, Transmission Management, and Customer Service. I have ALWAYS read the owner's manual on EVERY car I bought new. I have my own tools, and do my own rotating of tires according to the tire code tread wear rating on the side of the tire, NOT the

owner's manual. This particular owner's manual recommends
rotating and balancing the tires---BF Goodrich  P245/45/ZR17 (
10/32" depth of tread new ), with a tread wear rating of 400, which
means that this tire, under the BEST conditions will only get about
20-25,000 miles, i.e. 3 rotations and the tires are worn out and
must purchase a new set of tires. However, I check ALL 3 of my
GM vehicles air pressure at least once per week with my own air
gauge and air pump. I use my own jack and jack stands to rotate
the tires. On my last car, I had high performance "HR" rates speed
rated Michelin tires with a tread wear rating of 720 and rotated
those tires every 5000 miles; never had a flat; and only needed to
add air periodically, but never more than 5 lbs. p.s.i. When I turned
the car in, (the Pontiac GTP), the depth of the tread on all 4 tires
were at least 8/32" and the tires looked brand new. On my 2006
GTO, I checked the air pressure every week, and I looked in the
owner's manual and noticed that it recommended **30 p.s.i.;** then I
looked on the sticker on the driver's side door panel and it states
**35 p.s.i.;** then I looked on the sidewall of the tire, and it states **44
p.s.i. So, with 3 different opinions, which one is correct?** On
page **5-61** of the **owner's manual** it states to rotate the tires every
**5000-8000 miles.** In all actuality, tire rotation and balance, ( if
necessary ), **must be performed for "ZR" rated tires every
3000-3500 miles, maximum, according to Goodyear Tire &
Rubber Co., the maker of the "ZR" tire, especially high speed
tires for high speed cars, ( just look at what is used on the
NASCAR Circuit).** I kept a check on the tire pressure as usual,
and a visual check along with a tread depth check tool to assure
even tire wear. However, with the GTO being a high performance
car with extra wide "45/ZR" tires, it was nearly impossible to see
the inner most part of the tires, front or rear, unless you put your
face to the ground with a flashlight, or have the car up on a rack.
In December 2008, I pulled my car too far to one side in the garage
and had to back up and move over for my wife's **2008 GM
Saturn,** and by doing so, I had the steering wheel turned **all the
way over to the right**, and turned the engine off, and went inside.
The next day when I went to the garage to retrieve a cold drink

from the refrigerator, I noticed the **"right front inner portion of the tire, for the first time, seeing that the first 2 ½" inches were completely bald, no tread whatsoever, and beginning to "cup" every where else causing "tire separation".** I took pictures, and I immediately called Truitt Davis, and explained that I needed a tire rotation and balance. He explained to me that I need to bring the GTO next Thursday. However, the next day I called Truitt Davis, and explained about the uneven tire wear, and that is was because the RF tire was worn out, and that I needed to bring in the vehicle, the GTO, to have the tires inspected. I removed the right front tire and sure enough, the tire was worn out. I contacted Truitt Davis, the service manager @ Sunrise Pontiac, GMC, on Covington in Memphis, TN, with a list of problems. It wasn't until April 29, 2009 that I could get Sunrise to inspect the struts rubbing against the strut collar, for just before Christmas of 2008, my Mother, 75 years old, had a severe stroke. I had to go to Alabama to see here, twice, but not before I had the tires rotated and balanced, and the alignment checked. The alignment was in specifications according to factory specifications. There was no time for me to take my vehicle to any GM dealership, however, a **qualified repair facility with a "BEAR ACE" state-of –the-art alignment machine checked my a alignment, and the tires were rotated AND balanced because of the UNEVEN TIRE WEAR caused by DEFECTIVE MATERIAL & FAULTY WORKMANSHIP on the part of GM during shipping.** I have documented proof and expert witnesses ready to go to trial if necessary. It was in early April 2009 that my Mother passed away, (for she never recovered from the stroke and never knew who or where she was from the time she had the stroke until she died), and when I returned from a 3rd trip to Alabama to bury my Mother, I called Truitt Davis, the Sunrise Pontiac Service manager, to get this suspension problem looked after, and have the necessary repairs completed, UNDER THE 36month/36,000 mile Bumper-to-Bumper warranty. I took pictures of the problem of the suspension; problems with the alignment of the front bumper that the body shop repair man at Southaven Pontiac looked at and stated that THIS VEHICLE, THE

PONTIAC 2006 GTO had been damaged and/or replaced; and the radiator cover under the hood was missing 3 clips w/the far left clip hole being completely broken so that NO clip could keep the cover on properly. Also, the Body shop man, and the Service manager saw that there was "over-spray" paint on the factory sticker stuck to the inside of the right front fender. He also noticed that the front bumper was uneven on both sides where it bolts to the front fenders, the drivers' side missing dark colored screws and replaced with silver colored screws.

I took this vehicle to 3, (three) other GM dealerships, and they all agreed that there is a problem, but when they called GM Hdqts. to get authorization for the necessary repairs to be performed, Pontiac **emphatically refused to authorize** the much needed and necessary repairs, these problems, **much less, recognize they even exist;** and my 36 months factory warranty will be gone **July 25, 2010,** long before the mileage goes over 36,000 miles. And since Pontiac has become an insolvent subsidiary of GM, the probabilities of getting replacement parts in the future are **nil,** especially considering that the Pontiac 2006 GTO were **ALL** made in Australia, and Holden Motors, LTD no longer makes the GTO, or the comparable Monaro. Pedders USA, LLC has the high performance **REPLACEMENT PARTS** available to correct the suspension problem, even though the demand for them is so high, they are on back-order. Over 90% of the GTO's made by Holden Motors, LTD have this complete suspension problem and are having difficulty getting GM to pay for these repairs under the factory warranty. It is also noteworthy on page 24 of the "Warranty & Owner Assistance Information Booklet" included with the owner's manual CLEARLY states that housings, mounting hardware, sealing devices springs and tubes **ARE** covered under the 36month/36,000 mile factory warranty, yet GM has forced me to take my case to the courts, and because **this vehicle SHOULD HAVE been included in a reaffirmation agreement when my bankruptcy case was re-opened during an adversary hearing procedure (07-01227-DWH, dated 12/12/2007)** for I bought this Pontiac 2006 GTO July 25, 2007. However, considering the

circumstances that are before the court now, I am pleading with the Court for an Adversary Hearing at the Court's earliest convenience, so that I may receive **a righteous judgment against the defendant** not only for **compensatory damages** that are listed on the Cover Page of this complaint, but **punitive damages** <u>not to exceed the "demand"</u> <u>but no less than 10 (ten) percent of the "demand".</u>

## II.    <u>List of Violations</u>

**A.**   The plaintiff strongly alleges that the defendant violated the defendant's 14th (Fourteenth) Amendment right under the U. S. Constitution, Section 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or **property, without due process of law; <u>nor deny to any person within its jurisdiction the equal protection of the laws.</u>** <u>The defendant blatantly committed this violation by "picking and choosing" at their discretion, to repair suspension problems similar, or exactly as mine at GM authorized dealers, (now owned by the Federal Government as a direct result of TARP taxpayer bailout money), under the Bumper-to-Bumper 36 months/36,000 mile factory.</u> ***Along with this TARP "bailout" money, GMAC,***

*meanwhile, the Federal Deposit Insurance Corp. said it would guarantee up to $7.4 billion in GMAC debt in a program to back bank debt, called the Temporary Liquidity Guarantee Program. The FDIC had previously resisted allowing GMAC to have debt guarantees, considering it to be too great a financial risk.* A subpoena of repair orders and formal complaints to GM of ALL GM Pontiac GTO's assembled in Melbourne Australia from 2004 to the last year created, 2006, with, but not excluding any other warranty repairs, any, and all suspension/struts/bushings, and tire defects from manufacturing defects, workmanship, and shipping, that were repaired under the factory warranty at NO CHARGE, and which complaints were turned down, such as my own, *will* defend these allegations, and a motion for the same shall be forthcoming.

**B.** The plaintiff strongly alleges that the defendant violated the Freedom of Information Act, 5 U.S.C. 1002, paragraph 2, to wit: the American people firmly believe that our system of government must itself be governed by a presumption of openness; paragraph 3, to wit: the Freedom of Information Act establishes a 'strong presumption in favor of disclosure' as noted by the United States Supreme Court in United States Department of State v. Ray (502 U.S. 164 (1991), a presumption that applies to all agencies governed by that Act; ( Federal Agencies includes, but not limited to the FTC, Federal Trade Commission guidelines concerning interstate commerce and trade ); paragraph 4, to wit: 'disclosure, not secrecy, is the dominant objective of the Act,' as noted by the United States Supreme Court in Department of Air Force v. Rose (425 U.S. 352 (1976). This violation of the FOIA is applicable in its deepest spirit of the law because several things were done to the defendant(s)'s GM Pontiac 2006 GTO prior to sale and delivery of said vehicle, but not disclosed to the defendant:

**1.) Steering column replacement 04/19/2007 @ 144 miles by the GM franchise, Grisanti Rebel Motors, 1801 Jackson Ave. W., Oxford, MS 38655; parts and labor retailed valued @ approximately $ 1800.00---repair order # 022034.**

**(2.) Powertrain Control Module replacement also dated 04/19/2007 @ 144 miles by the same GM franchise on the same repair order, 022034, retail valued claim approximately $ 500.00. The total of these repairs exceed the 5 % ceiling of the retail value, (in this case the vehicle retailed for $ 29,577.45), of "non-disclosure" under FTC guidelines, and /or GM policies and procedures.**

## (3.) CAS Calls for NHTSA Investigation of Pontiac GTO Tire Failures
## Submitted by Helvet on Wed, 02/14/2007

**Pontiac.** The Center for Auto Safety (CAS) today called on the National Highway Traffic Safety Administration (NHTSA) to open an investigation into tire failures and front suspension problems that occur on the 2004-2006 GTO.

The agency has received over 1400 complaints involving tires on the 2005-2006 GTO, involving 8 blowouts and one crash. Many of these complaints cite tire wear caused by contact with struts as the source of the failures. The problem seems to occur early in the lifespan of the vehicle, as a number of complaints cite mileages of less than 10,000 at the time of the failure, a great many of these cars with less than 5,000 miles. The 2004-2006 GTO was manufactured by GM subsidiary Holden in Australia based on the Holden Monaro platform. The Australian version came equipped with tires of 235mm in width, however the GTO sold in the United States was equipped with wider tires of 245mm width. The larger width of the GTO tire results in **contact with the struts, wearing the tire and creating a risk of tire failures that can result in loss**

**of vehicle control.** Additionally, many GTO owners **are forced to replace worn tires and damaged struts at their own expense.** The 2006 Pontiac GTO was manufactured with redesigned front struts that **seem** to have eliminated the tire wear problem. But this was not the case. However, NHTSA has received more than 1400 complaints of front strut failure in the 2006 model, with over 90% having premature right front tire wear, and this issue was **first** brought up by Pontiac 2005-2006 GTO owners as early as the first 6 months of production, and when I purchased my GM Pontiac 2006 GTO July 25, 2007, this crucial information, according to FTC guidelines and the U.S. Congress this pertinent information was supposed to be **legally disclosed to the consumer,** namely, me. The NHTSA opened these complaints Feb. 2007, and closed by the NHTSA ALL those legitimate cases ( complaints ) within 18 months with these conclusions stated in Federal Court: "

Summary:
Note: The complaint and warranty counts given in the failure report summary of this resume include **all records** related to tire wear and wheel alignment and are not limited to tire-strut contact. General motors (GM) identified two contributors to premature front tire wear in the subject vehicles. One of the contributors causing the premature tire wear was out of specification negative camber. GM stated that excessive negative camber could be caused by improper camber settings from the factory or bending of the front strut assemblies due to sharp road impact (I.E., severe pot holes).To improve camber settings from the factory, GM stated that from February of 2005 through may of 2006 several modifications were made to the camber setting fixture. GM also noted that excessive negative camber could result in front tire to strut contact, which could also be caused by use of non-original equipment (o.e.) tires and/or wheels. GM stated that contact of the front tire and front strut assembly can cause a polishing on the tire sidewall and/or strut assembly; however, this does not cause a sudden loss of air. General motors provided ODI with the final factory front camber settings where available for complaint and

warranty claim vehicles. Approximately 90 percent of these vehicles had right wheel camber settings that were out of design specification. Four percent of the vehicles had left wheel camber settings that were out of specification. In a review of consumer complaints, most noted excessive tire wear to varying degrees to both front tires. For complaints indicating excessive wear to a single front tire, **90 percent** involved the right side. _**Although in some cases there are indications of tire contact with front strut assemblies in the subject vehicles,**_ analysis of tire wear patterns in photographs shows the greatest wear occurring on the inboard tread surface from road wear and not on _**the area of the tire on the upper shoulder that contacts the strut.**_ This is consistent with the known tire wear patterns associated with excessive negative camber, with or without strut contact. This is most apparent in some pictures, which show minor tire-strut contact while exhibiting significant wear of the inner tread surface of the tires. Based on data reviewed during the investigation, while excessive negative camber is an apparent issue, the premature tire wear appears to be primarily caused by tire to road surface contact _**as opposed to contact of the front tires to the front strut**_ assemblies. ODI reviewed approximately 1,400 total complaints and warranty claims potentially related to the alleged defect. _**Virtually all of the reports relate to uneven/excessive tire wear or some awareness of the tire-strut contact issue.**_ ODI was able to identify 9 tire air loss incidents alleged to be caused by tire-strut contact, with 5 of these describing a slow air loss. While there was evidence of tire-strut contact in some of these vehicles, ODI's analysis did not find that this contact was the cause of the air loss but rather a secondary symptom of the excessive negative camber condition that results in rapid road wear on the inboard tread surface. ODI is aware of one crash alleged to be caused by contact of the front strut to front tire. However, analysis of the information provided by the consumer, GM and a third party investigator does not indicate that tire-strut contact was a factor in the crash. ODI is unaware of any injuries or fatalities attributed to the alleged defect. ODI has not identified a

safety related defect trend in the subject vehicles. Accordingly, this investigation is closed. The closing of this investigation does not constitute a finding by NHTSA that a safety-related defect does not exist. The agency will continue to monitor complaints and other information relating to the alleged defect in the subject vehicles and take further action in the future if warranted:

| NHTSA Action Number:PE07010 | Date Opened: February 16, 2007 | Date Closed: August 8, 2007 |
|---|---|---|
| Recall Campaign Number: n/a | Subject: Front strut to tire interference | Component: Tires: Sidewall |

Results: **NONE, NO ACTION TAKEN**

However, in **any** of these complaints, the NHTSA did **NOT** give **ANY specifics** to fix/repair the suspension and premature tire wear, nor brake problems; only that GM made **so-called "modifications".** These "modifications" NEVER addresses the problems in SHIPPING **ALL** the Australian GM owned company of Holden Motors LTD, LLC Pontiac GTOs, which is the main culprit of the suspension problems, tying the vehicles down too tight for rough seas, the roughest seas in the world, an 8,000 mile trek,  which would require **a massive recall** on the part of GM by replacing the sub-standard suspension parts, ( struts, shocks, sway

bars, bushings---rubber & fluid-filled rubber, and a complete new set of tires, etc., ), or else the same problems will keep occurring over and over again. It is evident that **ALL GM dealerships, under GM franchise agreements, are required to disclose** this type of information **PRIOR** to purchasing the vehicle for two reasons. First, so the customer has all the pertinent information to make a sound business decision with no hidden disclosures. Secondly, that the dealership conforms to all Federal and State laws, statutes, and ordinances, and franchise agreements. And regardless of this ruling, the NHTSA never answered the issue of the "evidence" showing on the bottom of the strut collar, nor the "evidence" of not enough clearance between the strut and the tires when the car was made, nor the "evidence" of the right front tires were wearing badly on the inside of the tire, even though the alignment is nearly perfect, well within tolerances. The 90% of the 1400 cars that had uneven tire wear and allegedly negative camber, was created when the vehicles were tied down to "pad-eyes" to keep the vehicles moving around in high seas, and they were tied down TOO HARD. This fact and 8000 miles of the roughest seas in the World put 8000 miles on the shocks and struts, and all the bushings were squashed way beyond their tolerances because of the material they are made of, rubber, and rubber filled with fluid, ineffective, insufficient material instead of the preferred **POLYEURETHANE BUSHINGS.** Fact is, the recall for this would cost GM over 3 billion dollars to fix them all, but had they put the right, good stuff in the GTO in the first place, charge more for the car, and the profitability is still the same, except, you have a PROPERLY built car, one that an owner can be proud of, instead of worrying about whether any of my vehicles are going to be repaired under factory warranty, but the U.S. Government wants to give the "Big Three" money to keep them afloat. This is a violation of interstate commerce.

### *The Definitive Explanation of GTO Suspension Concerns and Permanent Resolution Part One*

This document was prepared to give the novice GTO owner a list of concerns common to the GTO suspension, and offer solutions to each problem.

## FRONT SUSPENSION ISSUES

1. STRUT RUB
2. INSIDE TIRE WEAR AND CUPPING
3. NOISES
4. RIDE HEIGHT CONCERNS
5. BRAKING ISSUES
6 EXCESS SUSPENSION TRAVEL
7. EXCESS BODY ROLL
8. INSUFFICIENT NEGATIVE FRONT CAMBERS
9. POOR STRAIGHT LINE STABILITY
10. LOOSE STEERING FEEL
11. FRONT END NOT CENTERED TO THE BODY

## REAR SUSPENSION ISSUES

1. INNER TIRE WEAR AND CUPPING
2. RIDE HEIGHT CONCERNS
3. POOR LAUNCHING AND EXCESS SUSPENSION TRAVEL
4. EXCESS WHEEL HOP
5. EXCESS TOE AND CAMBER CHANGE
6. EXCESS LATERAL SUSPENSION MOVEMENT

## FRONT SUSPENSION SOLUTIONS

*1. STRUT RUB*. There are 2 kinds of strut rub on the GTO. When the GTO first came out, it was common to have strut rub, (tire to strut contact). In 2004 and early 2005, this was due to aggressive alignment settings for negative camber. Why was this an issue in the USA and not in Australia? Simple, GM added approximately 400lbs of structural support to the GTO so it would meet Federal criteria. Due to this, GM needed a larger capacity tire than the 235/45R17 used in Australia. To try and increase tire life, GM

went to a 245/45R17 tire which has a larger capacity rating, but is 10mm wider. The 235 has a load range of 1433lbs @ 44psi, and the 245 has a load range of 1521 @ 44psi.We, meaning I and other consumers who purchased a GTO from 2004-2006 **initially saw strut to tire contact at the first rotation. GM was/is aware of this problem since the beginning but did not publish anything.** If you called GM Technical assistance, they would tell you to put the front cambers to the positive end of specs, .2 camber. This strut rub would only cause a cosmetic issue, and is/was not constructive, but rather destructive. This fixes the first style of strut contact, but severely reduced the handling. GM came up with a general spec. to go negative on the cambers to the -.3 to -.4 range. At this range, you should be able to have at least a pencil width clearance between the tire and the strut. With that said, it is also CRITICAL to have your tire pressures at 35 psi cold! This fixes the first kind of strut rub, at least temporarily.

How many of you had not issues at the first tire rotation at 6,000 miles and the second one at 12,000 miles, but at the 3rd rotation at 18,000 miles the inner tire tread is destroyed, and there was evidence of strut to tire contact? You took it to the dealer and they said you must have hit something and knocked the front end out of alignment? Does this ring a bell to many of the GTO customers? Now it is true that you could have whacked something and knocked the front end out of alignment. But you also could have driven the GTO like a little old grandma going to Sunday school, and never hit a leaf in the road, and will still have the problem. **Why? The strut bushing is damaged the moment it gets off the boat.** To protect the front end, Holden installed front coil spacers to eliminate all front coil movement. **Then they chained and cinched the car down really tight. The GTO was this way for over a month. This collapses the front strut bushing.** But collapsing strut bushings is just the first issue, and by itself, is not that severe of a problem. But when collapsed, it

weakens the rubber, and therefore the center of the bushing cannot stay centered in the bushing. **This causes 2 issues:** First, it causes the strut shaft to migrate towards the engine compartment seriously increasing negative camber, as well as it will cause the camber to seriously change. The center of the strut bush, thus the strut shaft, will move all over the place, causing serious camber change, which ultimately causes serious toe change, which **always** screws up the tires. Now for some controversy: when the strut shaft moves in and out with respect to the engine, this movement is rapid. It will also cause the tires to have excess sidewall flex. Add the normal sidewall flex of turning, and you now have a lot of sidewall movement, enough sidewall movement to **cause the tires to "kiss the strut".** I have seen and documented a severely worn strut bush, causing major inner tire wear, and strut contact, with 1/2 inch clearance from the strut to the tire. **The strut contact issue, however, is again primarily destructive. The tire wear however, is severe and is often interpreted as contact wear from the strut.**

So the primary fix will be to replace the strut bush, and bearing, which will most likely come apart once the strut is disassembled, then re-align the front end to get -.3 to -.4 negative camber. This usually will give you the pencil thickness clearance.

All of us have seen the really serious strut rub that destroys tires. It is my opinion that this strut rub is only caused by major impacts and bent parts.

*2. INSIDE TIRE WEAR AND CUPPING.* The primary reason for inside tire wear is wear as a direct result of the strut bushing as previously mentioned. But there is another concern. You can see it by driving your GTO 7-8mph then seriously jam on the brakes. Observe the front wheels. It is not uncommon to see the front wheels kick back 2 inches. What this movement does is reduce braking action and brake pedal feel, but mostly causes major caster change, which again causes toe change. Toe gets toed out a lot.

This again causes major tire wear, primarily on the inside and is a major contributor to tire cupping, which again is a major problem with the GTO. The cause of the excess movement is primarily the front OEM radius rod bushings that are fluid filled and often leaks, thus increasing the movement. The rear radius rod bushing also gets damaged and the washers bent due to the excess movement caused by the front radius rod bushing. **The fix is to replace the front radius rod bushing with a firm urethane bushing like the Pedders EP9166.** The other advantage using this bushing is your ability to get an addition 1.25 degrees caster, more on this later. The Pedders EP9019 inner radius rod bushing will add serious support for reducing caster and toe change, and reducing tire wear. There are other benefits that will be discussed later.

*3.NOISES*. There have been a number of noise issues found on the GTO. Here is a list of things that I have seen at least 10 times or more:

a. Front coil contact on parking lot maneuvers creating a clicking noise. The repair to this is to reverse the OEM coils. There is a bulletin on this.

b. Sway bar end link bushings and links get torn and bent easily. End links bend very easily with aftermarket sway bars. Replacing them with Pedders HD end links is a practical way of fixing this concern. The OEM bushings wear extremely rapidly. If it is just the bushings and the end link is not bent, then the end link bushes can be replaced. Note that the end link washers are dished, and the dish, if you will always goes away from the bushing. This is different than most vehicles.

c. Torn strut bushings, especially when the ferrule delaminates to the bush, can cause a knocking noise, on top of all kinds of other tire wear.

d. Strut bearings can get lumpy and create a popping noise.

e. 95% of all GTOs on the road that have OEM suspension have damaged front bump stops. They get torn due to excess suspension travel. This can create a knocking noise on a heavy jounce (compression of suspension)

f. Loose tie rod ends. The OEM tie rod ends are very prone to wear and can knock.

g. Loose lower control arm bushing nuts and torn lower control arm bushings can easily cause a knocking or clicking type noise in the front.

h. Front tires contacting the inner fender wells, especially the right front. You can either remove the portion of the inner fender well, or drill a couple of holes and use a large nylon tie strap and pull the fender well forward.

**4. RIDE HEIGHT CONCERNS**. It is normal to have the front end 10 to 15mm low. This is primarily a function of collapsed and damaged strut bushings, and collapsing, under-sprung coils. Our Pedders coils are designed for performance and still maintain a very fine ride quality. Our coils, on average, have a 50% increase in sprung weight. Plus each is bench tested to 2MM tolerance. Also the GTO is an old body design and the acceptable tolerances of the body are significant. It is not uncommon to have as much as 1/2 inch height variation in the body totally due to the assembly and tolerance variations in the body. 5mm variations are more common and there is little you can do unless you have adjustable coil covers.

**5. BRAKING ISSUES.** With the exception of the 2004 brakes, the 05-06 work pretty well. However, there seems to be a detectable lag time in the brake application. To understand the solution, you need to understand the cause. When you jam on the brakes, if there is any looseness or softness in the suspension, before you actually stop, the looseness must be absorbed first. This is primarily an excessively loose or soft bushing concern. Replacing the radius rod bushings seriously reduces the fore/aft suspension travel, thus causing the brakes to react faster. Also the coils are way too soft. Jam on the brakes hard, the front suspension collapses and the rear suspension grows, this reduces the effectiveness of the rear brakes and adds additional weight and stress to the front brakes. Adding upgraded coils and dampers seriously reduces this affect.

***6. EXCESS SUSPENSION TRAVEL***. This is a function of collapsed and damaged coils, and weak shocks, especially the front oil only struts. Going with a Pedders coil and any one of the 6 or so damper options that Pedders offers will control this concern. The rear is the biggest concern. Watch an OEM GTO take off. Notice how the back end collapses, this also seriously increases negative camber, thus promoting tire wear as well as other negative handling issues.

One of the other issues with excess suspension travel is movement of the strut bushing, even on a new one. A great way to improve the control of the strut bushing is to install a Pedders strut tower brace. Putting on the animal strut tower brace does little but improve "impression ratio". So how and why is the Pedders unit special and different? Pick up your GTO and look at the strut plate to see what it does. It moves down approximately 1/4 to 1/2 inch depending on the condition of the strut bush. The Pedders strut tower brace eliminates this movement by the positioning of the mounting plate. It goes between the strut mount plate and the inner fender well, thus eliminating the gap, and eliminating the movement. This makes the spring/strut more responsive and adds life to the strut mount bushing.

***7. EXCESS BODY ROLE***. Once shocks and coils and critical bushes are updated the sway bars are still under-rated. Now by replacing the sway bar end link bushes, and mounting bushes with the Pedders polyurethane bushes, will add approximately 10-15% improvements to the OEM controls. This is due to the polyurethane bushings being more responsive. But also Pedders offers a very HD front and rear multi-adjustable sway bar assembly that comes with HD end links and rear end link bushes. No other sway bar kit, like Hotchkis, comes with these components. The Pedders HD sway bar kit will offer more control improvement than all the other sway bar kits on the market.

***8. INSUFFICIENT NEGATIVE FRONT CAMBERS.*** This is a function of not having sufficient tire clearances and tires being very close to the strut. There are several ways to resolve or reduce this concern. One is to install the soon to be available eXtreme Xa Monotube 30 way adjustable coil covers, install upper strut adjustable mount bushings, or relocate the lower control arm, decrease wheel offsets. Pedders has tested and elected not to have an adjustable strut mount bushing due to what they feel is serious reliability issues especially in the strut upper shock seal. There is a serious increase in strut seal leakages due to this style of strut mount. Pedders has come up with an adjustable lower control arm bushing that can add approximately .75 to 1 degree of additional negative camber without getting the tire any closer to the strut. Changes in offset wheels really add a lot of strut to tire clearances. There are very few wheels actually made for the GTO. ***Most are designed for a BMW and relabeled for a GTO.***

***9. POOR STRAIGHT LINE STABILITY.*** There is lots of looseness in the OEM front end, but eliminating the looseness, and increasing spring and dampening rates is not enough. Increasing caster is required. Installing the Pedders EP9166 front radius rod bushing not only seriously reduces the caster/toe change by keeping the tire from kicking back to the rear, but it also allows you to add up to 1.25 degrees of positive caster. You can get the front caster to the 10.5 to 11.5 range. The GTO can handle this without any negative affects, as long as your power steering is functioning. Adding caster seriously adds straight line stability and adds steering feel to the driver.

***10. LOOSE STEERING FEEL.*** Once all the excess looseness is eliminated by bushings, springs/dampers, and making sure the tie rods are OK, which are a real pattern failing component, the steering can still feel loose, slow, and lacking feel. Adding front caster improves the feel, but may not be enough for all performance drivers. The OEM gear has a 3 turn lock to lock ratio

for the GTO. The Z06 has a 2.6 turn ratio. Pedders offers a very limited supply fast ratio steering gear that has a 2.4 turning ratio. That is more than a 1/2 turning difference from the OEM gear. This also gives you substantial feel improvements. It is most noticeable during aggressive mountain type driving.

***11. FRONT END NOT CENTERED TO THE BODY.*** The Monaro in AU requires a front and rear cradle alignment process and supply their Holden dealers with alignment fixtures. In the USA for the GTO, **Pontiac only** supplies its dealers with a rear cradle alignment tool **and does not supply, like Holden, a front alignment tool. Pedders dealers are the *only ones* that have a front cradle tool. Pedders dealers also align the trans. mount to have all 3 cradles perfectly in line.**

## *REAR SUSPENSION PART 2*

1. INNER TIRE WEAR AND CUPPING
2. RIDE HEIGHT CONCERNS
3. POOR LAUNCHING AND EXCESS SUSPENSION TRAVEL
4. EXCESS WHEEL HOP
5. EXCESS TOE AND CAMBER CHANGE
6. EXCESS LATERAL SUSPENSION MOVEMENT

## *REAR SUSPENSION SOLUTIONS*

***1. INNER TIRE WEAR AND CUPPING.*** This concern has multiple causes and resolutions for each cause. They are as follows:

a. Collapsed rear coil springs as a direct result of the shipping process. I checked 30 brand new GTOs on the lot one day and literally had 100% of them showing collapsed rear springs. In fact, the best way to tell a GTO if it has OEM suspension or not is to

look and see if the rear is lower than the front. Once the GTOs left the USA port in Benicia, Ca. to the dealers, all the rear springs were collapsed. When the GTO left Australia, the back end was higher than the front. It is very normal to have the rear coils collapsed 1 inch. When the coils collapse, negative camber increases. So with a low coil which has lost its rate, when you take off, you literally can bottom out the back end if you have some sticky tires. This causes 2 wears: inside tire wear due to excess negative cambers; and cupping, caused by excessive changes in camber, which changes toe, which causes inner tire wear and cupping.

b. Excessive rear control arm bushing looseness. The outer lower control arm bushings are solid rubber bushings and can be improved, but are not a problem. It is the inner control arm bushing that is the problem. The void is in the bushing. Look at the left rear inner bushing. The majority of the OEM bushings have a problem with the left inner. Look at the bushing and you will see the bolt is not in the center of the bushing. This means that the bushing is so weak it cannot keep the bolt in the center of the bushing. Plus, when in a torque situation, it will allow the inner bushing to move back and forth, thus changing camber again, which will again cause changing toe and thus potential tire cupping and inner tire wear again. These bushes are also a major contributor to wheel hop; more on that later.

c. Rear shocks are far better than the fronts but still have barely enough control for the weak, and severely under-sprung and damaged OEM rear coils. Even our entry level Pedders comfort Gas rear shocks are light years ahead of the OEM rear shocks. The OEM rear shocks again allow way too much suspension travel for a lot of GTOs. Excess suspension travel causes excess changes in camber, which causes excess changes in toe, which causes inner tire wear and cupping.

*2. RIDE HEIGHT CONCERNS.* This was covered in the review of tire wear in 1.a. But again the rear coils are damaged in shipment. The coils are made out of a lightweight alloy, and once

collapsed they lose a serious amount of spring weight capability.
99% of all GTOs in the USA with OEM suspension will have
collapsed coils. If your back end is lower than your front, then your
rear coils are collapsed

**3. POOR LAUNCHING AND EXCESS SUSPENSION
TRAVEL.** This is a big concern for a lot of GTOs in OEM
configuration. The solutions are covered in the above with the
reasons in depth. The poor launching and high 60 foot times is a
result of lack of ability to transfer torque. There is a lot of time
wasted in "loading up" all the suspension components first, before
torque can get transferred to the rear wheels. Weak rear coils and
dampers, and the weak and excess moving lower control arm
bushings really add to a lot of wasted energy and delayed transfer
of torque. But there are 2 other components that add to this. The
OEM rear cradle or X-member bushings allow a lot of movement
in the rear cradle that supports the rear cradle assembly, which
supports the entire rear suspension. The rear differential mount is
the 3rd of 3 mounts that support and transfer torque to the body.
The mount is bolted to the rear differential and the body itself. The
issue with this bushing is the massive amount of voids in this
bushing. Having excess movement and weak 3 part contact
bushings, transferring torque is slow and lots of torque is lost.

The repair for the rear cradle is simple. PEDDERS and some other
Au companies offer much harder dura-solid bushings for the rear
cradle or Xmember bushings. Pedders on some other AU
companies offer inserts that press into the massive voids of the rear
differential mount, seriously increasing the strength of this
bushing.

So to summarize, update weak bushings, improve the damping,
and increase the spring rates.

There are 2 other issues and potential concerns that can be
addressed. Due to irregularities in body tolerances we can have a

large variance in rear camber and tracking. Rear camber is not adjustable on the GTO. **But installing our Pedders 5403 or some other Australian bushings in the outer rear lower control arm bushing will allow you an approximate +/- .7 degrees camber change.** Also the rear cradle can be mispostioned into the body. There is a cradle alignment procedure for the rear cradle to body, that is extremely sensitive. <u>**A fixture that attaches to 4 datum holes, 2 in the control arms and 2 in the body, when all are attached to the rear to the cradle fixture tool, will guarantee extreme accuracy of the rear cradle to the body.**</u>

**4. EXCESS WHEEL HOP.** Again, partially covered. But wheel hop is caused by looseness and a frequency generated in the chassis. The fix is to either remove the looseness and/or adding dampening. The looseness is improved by updating the rear cradle mount bushing, rear differential mount insert bushing, replacing lower control arm bushings, especially the inner, adding more rear damper control, increasing rear spring rate. These are the common areas to improve looseness. For 100hp at the wheel increases you may have to eliminate the 2 piece driveshaft to reduce flutter in the driveshaft by installing a 1 piece driveshaft. Other ways of reducing wheel hop is to add air bags in the coils. This does not eliminate any looseness but acts as a damper. There are negative effects of air bags. Traditionally they are connected to a single air supply port. Adding air to the bag, will lift the back end, dampen the wheel hop movement, but also will act as a reverse sway bar in the rear. Not a good thing to have when going thru the twisters.

**5. EXCESS TOE AND CAMBER CHANGE.** Already covered, but a problem nonetheless. Excess toe and camber change is a function of weak and collapsed coils, under controlling dampers, and excess movement in the lower control arm bushings.

*6. EXCESS LATERAL SUSPENSION MOVEMENT.* What this
means is the body moves a certain amount when turning, but the
rear suspension moves laterally even more than the body. This is a
function of the cradle moving separately from the body. To repeat,
there are 3 contact areas that mount the rear cradle to the body.
There are 2 front cradle mount bushings, and a rear differential
mount bushing. The OEM bushings allow a very large amount of
movement laterally up and down. **Installing Pedders or other
aftermarket cradle bushings will seriously improve this
movement. Adding a Pedders differential insert bush is the 3rd
part of a 3 part fixture that seriously supports the rear cradle
in all directions.**

**C.** The plaintiff strongly alleges that the defendant violated the
Consumer Credit Protection Act to wit: 15 U.S.C. 1601, Section
112, paragraph 1, **Criminal liability for willful and knowing
violation;** whoever willfully and knowingly (1) gives false or
inaccurate information **or fails to provide information which he
is required to disclose under the provisions of this title** or any
regulation issued there under. The reasons I accuse the defendant(s)
of this violation are for the same reasons listed in Section "A & B"
and in the Plaintiff's Statement above. The Law demands **FULL
disclosure** concerning any business transaction, especially those
that include interstate commerce, such as this case. Companies
who operate across state lines, and in this case internationally aw
well for this automobile was made in Australia, are to be held to a
higher standard according to Federal Law.

**D.** The plaintiff strongly accuses and alleges that the defendant
willfully violated the Federal Right to "Honest Services" under 18
U.S.C. Section 1346 to wit: The defendant never revealed **ANY**
problems, whether it was factory related, (in which case this it is),
or related through a bulletin, watch list, nothing, even though when

it was first brought to the dealership, the service manager 100% refused to do any warranty work on my car, even though the parts in question were covered according to the contract, and the owner's manual. It is a known fact, that the dealership, and the leadership at Covington Pike Pontiac, Buick, GMC, Memphis, TN, Terry Sullivan the General Manager, and Truitt Davis, the Service Manager knew before I ever brought my vehicle to get looked at after noticing the first time there was a problem, that they themselves knew of the factory problems of the 2004-2006 GTO, yet they refused to do the work. That's when I directly started dealing with Pontiac and GM customer service, and without even telling me to have it checked, they refused repairs on my car with about 7700 miles on it; certainly within the parameters of the warranty period and covered parts. I have prima-facie evidence that proves that GM, GMAC, Covington Pike Pontiac, Buick, GMC all conspired to violate my federal right to Honest Services. Even though this is a civil complaint, 18 U.S.C. 1346 doesn't necessarily have to be criminal in order to raise a presumption of a fact. However, if the presiding Judge feels the need, by the basis of all the facts declares any criminal misdeeds by the defendant, so be it! I am all about Justice, but personally, I am not looking for revenge, but the guilty party to do their job, period, which is simply put, honor the contract and the warranty therein. Now, it is at this time I would like the Court to consider that at the time I was made aware of a problem with my 2006 Pontiac GTO in November/December of 2008 that neither I nor most Americans could even fathom that the "Big Three" automakers were broke and that GMAC was also out of money and broke as well; billions and billions of tax-payer dollars to bail out these "Big Three". So it only makes sense that if a company(s) doesn't pay out any money, nor lend out for purchases of new cars, especially the "0%" financing for 60-72 months. The fact is, after the altercation at Covington Pike Pontiac, Buick, GMC, I needed to trade cars for my daughter, and I went back to the same dealership in January, 2009 and bought a 2009 Pontiac G6 for the fuel mileage, and because the other car was getting close to a hundred thousand

miles. As a former national franchise major auto repair facility
manager, and technician, I know that things start going wrong and
breaking down at the 100K mile line. But, not only could I not get
my GTO repaired under warranty, but GMAC would not give me a
rate  under 12.9%, when I the GTO was financed @ 0% for 72
months; before that, a 2004 Pontiac Gran Prix GTP financed @
5%. And I just traded my 2004 Buick Ranier for a 2008 Saturn
Outlook SUV (Diamond White costs $1500 more just for the
paint), all of which done while the "Big Three" are begging for
money, and now the Federal Government, yes, this Court, has the
power to enforce the binding contract for the Federal Government
holds ownership of GM, and the "bank", not finance company,
GMAC BANK is majority owned by the Federal Government. and
it is within the Court's discretion to rule on this matter as well.

**E.**    The plaintiff strongly alleges that the defendant, violated
 The Emergency Economic Stabilization Act of 2008 (Act), which
created the TARP money given to the defendant to bail them out of
the financial mess they themselves created by acts such as the ones
listed in this complaint. GM & GMAC along with ALL their
franchise dealerships in all places they sell and finance vehicles
through GMAC, whether new or used, for GMAC finances both,
along with whatever make or model. However, in this section of
the complaint against the defendant(s), they (the defendants, GM
Corp., GMAC, Sunrise Pontiac GMC in Memphis Tennessee,
along with ALL automobile franchises that finance their sales
through GMAC were ALL aware of the rules and lifting of tight
credit score credentials in order for the public be given incentives
to purchase a new car to help these "bailed out" incompetent,
greed-filled companies/defendant(s). The rule was that anyone
with a 620 (six hundred twenty) credit score, (which GMAC
stated, and I quote):
"December 31st, 2008: **Yesterday the U.S. Treasury announced
it would be backing GMAC with $6 billion in total funding,
and today both the car finance company and General Motors,
which gets 85% of its customer loans from GMAC, announced**

**a wave of new incentives and programs to drive up sales.
GMAC announced it would be dropping its minimum credit
rating floor from 700 points to 620 points, which is about the
national average. The previous 700-point floor was hurting
dealers who couldn't find financing for many of their potential
customers, according to Mark LaNeve, GM's vice president of
sales and marketing. "The actions of the federal government to
support GMAC are having an immediate and meaningful
effect on our ability to provide credit to automotive
customers," said GMAC President Bill Muir. "We will
continue to employ responsible credit standards, but will be
able to relax the constraints we put in place a few months ago
due to the credit crisis. We will immediately put our renewed
access to capital to use to facilitate the purchase of cars and
trucks in the U.S."** The new floors will open financing to a very
large segment of the population, and taken in combination with
GM's newly announced offers, could - in theory - translate into a
burst of new sales. Chief among GM's incentives is a 0% loan
option on the Chevrolet Trailblazer, Saab 9-7X and GMC Envoy,
all of which are discontinued, reports Automotive News. Pushing
such undesirables with 0% financing may still be tough, however,
given the market's ongoing abandonment of SUVs. The Saab 9-3
and 9-5 sedans are also included in the offer, which only lasts
through next Monday, January 5th. **Other GM offers include
stackable bonus cash and/or dealer cash ranging from $500 to
$4,250 on many 2008 and 2009 vehicles. The goal with the
offers isn't so much about sheer volume - reaching large sales
numbers in the current market is unrealistic. But maintaining
or expanding market share is possible, especially with the re-
energized ability to approach middle-level consumers with
attractive deals. "Six hundred twenty is not a sub-prime
score," said LaNeve. "That's a very creditworthy buyer.
Hopefully, we'll have access to more of the market that is out
there." "Anytime you can make credit available to a wider
spread of buyers, that's a good thing. Not everyone has perfect
credit. It brings a lot more customers into play for us."**

**F.**   The plaintiff strongly alleges that the defendant, violated the
FDCPA, (Fair Debt Credit Protections Act) to wit: under 15 U.S.C.
1692f, subsection 808, paragraph 1 which states that the collection
of any amount (including any interest, fee, charge, or expense
incidental to the **PRINCIPAL OBLIGATION**) unless such
amount is expressly authorized by the agreement creating the debt
or permitted by law. In this case, payments were being made, on
time in succession, yet when it was time for the defendant to hold
up their end of the contractual agreement under the terms of the
warranty and warranty repairs, GM and all GM authorized
dealerships refused to perform the necessary repairs, **KNOWING**
they needed to be done, for GMAC **would not authorize
necessary and covered repairs.**


**G.**   The plaintiff strongly alleges that the defendant, violated the
Magnuson-Moss Warranty Act to wit: lemon laws differentiate
from State to State, but this act covers "Federal Lemon Laws",
mainly---Warranty, Claims, Abuses, Factory built cars with
defective material and workmanship, and the coverage, or as in this
case the lack of coverage, and the full and conspicuous, or
inconspicuous disclosure of terms and conditions as to the
warranty, at which time GM refuses to honor. In the Act the
defendant has violated the following Sections and paragraphs of
the Act: Section 2302 paragraph a. #'s **3,4,8,9,10,11,12,13**;
paragraph b. # 1 A,B, and # 3; Section 2303 paragraph a. # 1;
paragraph d.; Section 2304 to wit: (a) Remedies under written
warranty; duration of implied warranty; exclusion or limitation on
consequential damages for breach of written or implied warranty;
election of refund or replacement. In order for a warrantor
warranting a consumer product by means of a written warranty to
meet the Federal minimum standards for warranty - (1) such
warrantor must as a minimum remedy such consumer product
within a reasonable time and without charge, in the case of a
defect, malfunction, or failure to conform with such written

warranty; (2) notwithstanding section 2308(b) of this title. such warrantor may not impose any limitation on the duration of any implied warranty on the product; (3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and (4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be). The Commission may by rule specify for purposes of this paragraph, what constitutes a reasonable number of attempts to remedy particular kinds of defects or malfunctions under different circumstances. If the warrantor replaces a component part of a consumer product, such replacement shall include installing the part in the product without charge.    The defendant has failed to live up to its expressed, advertised warranty under Section 2304 of this Act miserably. I have 2 other GM vehicles under "factory warranty". What am I to expect when they need warranty work. If it cost anything more than a $100.00, I have no doubt that any work will be performed. Therefore I have no alternative but to seek relief not only for the GTO, but my other 2 new cars as well.
**Section 2306. Service contracts; rules for full, clear and conspicuous disclosure of terms and conditions; addition to or in lieu of written warranty-** (a) The Commission may prescribe by rule the manner and form in which the terms and conditions of service contracts shall be fully, clearly, and conspicuously disclosed. (b) Nothing in this chapter shall be construed to prevent a supplier or warrantor from entering into a service contract with the consumer in addition to or in lieu of a written warranty if such contract fully, clearly, and conspicuously discloses its terms and conditions in simple and readily understood language.

Section 2310 states the following for violations of this Act:
(b) Prohibited acts It shall be a violation of section 45(a)(1)

of this title for any person to fail to comply with any
requirement imposed on such person by this chapter (or a
rule thereunder) or to violate any prohibition contained in this
chapter (or a rule thereunder). (c) Injunction proceedings by
Attorney General or Commission for deceptive warranty,
noncompliance with requirements, or violating prohibitions;
procedures; definitions-(1) The district courts of the United
States shall have jurisdiction of any action brought by the
Attorney General (in his capacity as such), or by the
Commission by any of its attorneys designated by it for such
purpose, to restrain-- (A) any warrantor from making a
deceptive warranty with respect to a consumer product, or
(B) any person from failing to comply with any requirement
imposed on such person by or pursuant to this chapter or
from violating any prohibition contained in this chapter.
Upon proper showing that, weighing the equities and
considering the Commission's or Attorney General's
likelihood of ultimate success, such action would be in the
public interest and after notice to the defendant, a temporary
restraining order or preliminary injunction may be granted
without bond. In the case of an action brought by the
Commission, if a complaint under section 45 of this title is
not filed within such period (not exceeding 10 days) as may
be specified by the court after the issuance of the temporary
restraining order or preliminary injunction, the order or
injunction shall be dissolved by the court and be of no further
force and effect. Any suit shall be brought in the district in
which such person resides or transacts business. Whenever it
appears to the court that the ends of justice require that other
persons should be parties in the action, the court may cause
them to be summoned whether or not they reside in the
district in which the court is held, and to that end process
may be served in any district. (2) For the purposes of this
subsection, the term "deceptive warranty" means
    (A) a written warranty which (i) contains an
    affirmation, promise, description, or representation

which is either false or fraudulent, or which, in light of all of the circumstances, would mislead a reasonable individual exercising due care; or (ii) fails to contain information which is necessary in light of all of the circumstances, to make the warranty not misleading to a reasonable individual exercising due care; or

(B) a written warranty created by the use of such terms as "guaranty" or "warranty", if the terms and conditions of such warranty so limit its scope and application as to deceive a reasonable individual. **The defendant clearly violated both A & B above.**

(d) Civil action by consumer for damages, etc.; jurisdiction; recovery of costs and expenses; cognizable claims

(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief -

(A) in any court of competent jurisdiction in any State or the District of Columbia; or

(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection -

    (A) if the amount in controversy of any individual claim is less than the sum or value of $25;

    (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

    (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

(e) Class actions; conditions; procedures applicable
No action (other than a class action or an action respecting a warranty to which subsection (a)(3) of this section applies) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action (other than a class action respecting a warranty to which subsection (a)(3) of this section applies) brought under subsection (d) of this section for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class. In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure.

(f) Warrantors subject to enforcement of remedies---
For purposes of this section, only the warrantor **actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person.** Section 2311: Applicability to other laws---(a) Federal Trade Commission Act; (1) Nothing contained in this chapter shall be construed to repeal, invalidate, or supersede the Federal Trade Commission Act (15 U.S.C. 41 et seq.) or any statute defined therein as an Antitrust Act. (b) Rights, remedies, and liabilities; (1) Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law. (2) Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury.

**H.**   The plaintiff strongly alleges that the defendant violated the U.C.C. (Uniform Commercial Code) to wit: the defendant violated **Subsection 1-304 Obligation of Good Faith.** Every contract or duty within [the Uniform Commercial Code] **imposes an obligation of good faith in its performance and enforcement**. I held up my end of the agreement, and contract, and the defendant has me driving a sub-standard car that is neither safe nor roadworthy whereby this vehicle was made to perform. I don't have the $15,000.00 to pay out of pocket either for I am a Disabled American Veteran with limited resources, but I paid for a vehicle with a warranty. I can't help that the defendant made poor choices by attempting to make a muscle car using a Chevrolet Corvette LS2 408 HP motor and transmission in a Holden Monaro made for Australians to begin with, and classified

as a 2-door coupe, period. The original motor from 2001-2005 was either a 3.8L V-6 or a 5.7L V-8, neither of which were in the GTO versions, for these motors had much less horse power and torque; not to mention the terrain in Australia is relatively flat, unlike the U.S. and Canada where you may go from below sea level to 7-8000 feet above sea level and below zero temperatures, and every kind of terrain there is. However, the GTO was advertised, and "supposedly" built as a **"MUSCLE CAR".**

## CONCLUSION

The plaintiff comes before this Honorable Court with much prayer and fasting to plead my case and honor the demand as set forth in the complaint if I prove the things that I accuse the defendants. It is noteworthy to the Court that failing to disclose information about GMAC **not lending any money to any dealerships for a period of 3 or 4 months,** the same months that the "Big Three" revealed the massive indebtedness, but the months leading up to the money actually changing hands from the "TAXPAYERS" to the "Big Three" and took complete control of the finance company GMAC, and renamed it General Motors

Bank, also owned by the "TAXPAYERS". Your Honor, it is your job, your responsibility, given to you by Congress to oversee the money given to companies who have received TARP money, and recognize when company giants like GM, and GMAC, (and others, but not limited to CHASE MANHATTAN, MORGAN-STANLEY, BANK of AMERICA, CITIGROUP INC., WELLS FARGO & CO.. etc.), are **NOT exploiting** the program for themselves so that they get paid,(which is why President Obama fired the CEO of GM), and their dealerships do everything they can to get financed and get paid. Just look at the "Cars for Clunkers" program. Within a few weeks, less than a month, after I bought the 2009 Pontiac G6, the Federal Government gives away almost $5000 per person for **every clunker** that is brought in. Multiply that by 700,000 cars **SOLD** under the program and you get $3,500,000,000.00 **(3 & ½  billion dollars)** when it was supposed to be only **$2 billion dollars.** And then I see these GM corporate CEOs and on Capitol Hill in Washington, D.C. pooch-mouthing about, "Why ain't I getting paid? I've sent in the paperwork ***but you owe me money*** under the program." Your Honor, I was always told to repair that which was bought first, then take care of the new customer's needs. Well, not only I, but you will see when I receive the subpoenaed paperwork from GM and GMAC concerning ALL Australian made Pontiac GTO's, (2004-2006), and their warranty claims and denials, that this is not the case with GM, and their authorized dealers on an interstate commerce basis, for GMAC, the cost operation of GM is not authorizing any repairs of any kind, under factory warranty, even though they send me letters in the mail saying, "Not to worry, all warranties will be honored," knowing, that repairs need to be done, and either the dealer refuses to honor the factory warranty according to their franchise agreements with GM, and GMAC, or the manufacturer. GM will not authorize **ANY** repairs, **whatsoever.** This is definitely the case with the Pontiac Division of GM, which is no longer viable and a thing in people's minds now; however, it is still a GM car, and GMAC is still responsible for ANY and ALL NECESSARY factory repairs. This is totally

unacceptable. And if there is a clear pattern of wrong doing or violations of the FTC that I have quoted. then I would ask that the Honorable Judge to submit a formal inquiry with the FTC to investigate into the hands-on-working conditions at GM, and GMAC, for it is clear that there is not enough oversight manpower by Congress to see every deal. However, after 20 years in the automotive workplace I have realized one thing: any company who operates in more than one state is under the scrutiny of the federal regulations, statutes, and laws of the FTC, and to my knowledge, they've never lost a case. What is simply happening here is the old "Bait & Switch" trickery and cunning craftiness, (U.S. Government vs. Aamco Transmission, 1987, 14-State settlement). I ought to know, for I have first hand knowledge of watching the entire showdown unfold, for I first went to work for Aamco Transmission in 1982, and there were several shops that I refused to work for, because those owners wanted me to be a crook like them, and I refused and moved to another franchise, and worked for over 60 Aamco franchises in 18 years.

I would also like the Court to know that I have presented this claim for repairs to Pontiac/GM in writing and with at least 2 dozen phone calls, to no avail. I would also like the Court to know, as a matter of fact from GM themselves, that they offered **NO assistance or remedy** whatsoever, and that I merely wanted my vehicle repaired, not just back to factory conditions, because it is evident that the vehicle in question cannot, and will not perform to the quality of a performance car that GM **advertised** when the vehicle was made. much less a "muscle" car that it was built and performed to do. This was simply an Australian car, called the "Monaro" and GM simply put a Corvette motor, 6.0 liter, 403 HP, bigger than the 5.7 liter with only 350 HP. So by adding more power and more torque to a vehicle's suspension and chassis, along with the cheapest tires a car manufacturer can put on a "muscle, fast" car, even though GM put the top of the line Goodyear ZR rated tires on the Chevy Corvette, and the Pontiac Solstice, and the Chevy Camaro, and also last but not least, the Chevy Monte Carlo. All of these cars will not go faster than my car

the 2006 Pontiac GTO, except the Corvette. which has the same identical drive train as my car.

Therefore, the plaintiff prays and urgently request relief from the Court as time is of the essence. While, GM negates warranty work, they demand more money from TARP, and for the "Clunker Program", which was a big joke considering GMAC, GM and their dealers. processed $3.5 Billion dollars in claims, when only $2 Billion dollars was allotted for the program in the first place. This is how the "Big 3" automakers got into this mess to begin with, getting in over their head with spending. I will be offering evidence of letters sent to me from GM saying they would honor ALL factory warranties, and this they have not, and refused to do. The defendant(s) say one thing, and do another, just the opposite. This is unacceptable, and since this vehicle needs to be included in my bankruptcy as a reaffirmation, along with my 2009 Pontiac G6, before this happens, we must address the above mentioned complaints; but under no circumstances is a GM dealership going to touch my vehicles for there are **NO QUALIFIED ASE CERTIFIED** mechanics at a GM dealership within 100 miles of my residence AND has the proper alignment machine to correct the "CRADLE" problem in the suspension and alignment. However, there is one auto service center that is authorized to order the "correct replacement parts", and perform the work, and has the right alignment machine and ASE certified mechanics to perform the work. Anything less than what is in the "demand" portion of the complaint would be rewarding bad behavior and a complete disgrace if evil triumphs over good and righteousness. As it says in the Law, "...the love of mammon (**money** in this case), is the root of ALL evil. The defendant(s) **must** be held accountable and **punished severely enough** for them **to stop** these illegal practices and lower the "bar" for consumer protection rights. The FTC has more laws to **protect the CONSUMER** from the creditor, **not** visa-versa. Please understand, Your Honor. that GMAC is still the financial "arm" for GM cars, now Chrysler cars also, real estate, and they are in the banking business, too. While GM is under Chapter 11 Bankruptcy Reorganization, and it may be

that the Court would **stay** the complaint until such time it may be addressed at the proper venue, GMAC is **NOT** under Chapter 11 and can and may be pursued in this adversary hearing. It is also very possible that a remedy to address all the alleged violations in this complaint be adjudicated so that I may get on with my life and my calling in this life which is preaching the Gospel, not dragging people into court because some people or companies run by people will not do what is responsible and righteous.

Very Respectfully Submitted,

Rev. Guy A. Leonard, II      Plaintiff
P.O Box 146
Nesbit, MS   38651   (662) 404-1177

*Note: I am still claiming indigent as did I during the first adversary hearing because I am still under Chapter 7 Bankruptcy Protection.  Thank You.

# WEIL, GOTSHAL & MANGES LLP

1300 I STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20005
(202) 682-7000
FAX: (202) 857-0940

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW

DAVID R. BERZ
PARTNER
DIRECT LINE (202) 682-7190
david.berz@weil.com

February 25, 2010

**BY FEDERAL EXPRESS**

USBC Northern District Mississippi
Attn: Amanda Howell
Thomas G. Abernathy Federal Building
301 W. Commerce St.
Aberdeen, MS 39730

Re:    Case No. 06-12118 DWH, Adversary Proceeding
No. 09-1197-DWH

Dear Ms. Howell:

Enclosed please find a Notice of Bankruptcy of Motors Liquidation Company (f/k/a General Motors Corporation) ("Debtor") a defendant in the above-captioned case. As indicated in the Notice, on June 1, 2009, Debtor filed a voluntary petition seeking bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. The chapter 11 case bears case no. 09-50026 (REG). Under section 362 of the Bankruptcy Code, all actions pending against the Debtor are automatically stayed.

If you have any questions with respect to the foregoing, please do not hesitate to call me.

Respectfully submitted,

David Berg / BB

David R. Berz

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:**<br>**GUY LEONARD**<br><br>      **Debtor,** | **Case No. 06-12118-DWH**<br>**Chapter 7** |

| | |
|---|---|
| **GUY LEONARD,**<br><br>      **Plaintiff,**<br>**v.**<br><br>**GENERAL MOTORS CORPORATION**<br>**and GENERAL MOTORS**<br>**ACCEPTANCE CORPORATION,**<br><br>      **Defendants.** | **Adversary Proceeding No. 09-1197** |

### NOTICE OF BANKRUPTCY

PLEASE TAKE NOTICE that, on June 1, 2009, (the "Commencement Date"),
Motors Liquidation Company (f/k/a/ General Motors Corporation) ("MLC") filed a
voluntary petition seeking bankruptcy protection under chapter 11 of title 11 of the
United States Code (11 U.S.C. § 101 *et seq.*) ( "Bankruptcy Code") in the United States
Bankruptcy Court for the Southern District of New York ( "Bankruptcy Court"). The
bankruptcy case has been assigned Case No. 09-50026 (REG). A copy of MLC's chapter
11 petition is attached hereto as Exhibit A.

PLEASE BE ADVISED that, as of the Commencement Date, any new or further
action against MLC is stayed pursuant to section 362 of the Bankruptcy Code (the
"Automatic Stay"), which provides that the filing of the petition, among other things,

"operates as a stay, applicable to all entities, of ...the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ...." and of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1) & 362(a)(3).

PLEASE BE FURTHER ADVISED that any action taken against MLC without obtaining relief from the Automatic Stay from the Bankruptcy Court may be void ab initio and may result in a finding of contempt against Plaintiffs. MLC reserves and retains its statutory right to seek relief in the Bankruptcy Court from any judgment, order, or ruling entered in violation of the Automatic Stay.

Dated: February 25, 2010

By: _David Berz/BB_

David Berz
WEIL, GOTSHAL & MANGES, LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 682-7000

*Bankruptcy Counsel for Motors Liquidation Company (f/k/a General Motors Corporation)*