**Hearing Date: April 8, 2010 (9:45 a.m.)**
**Objections: April 1, 2010 (4:00 p.m.)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** | : | **Case No. 09-50026 (REG)** |
| ***et al.*, f/k/a/ General Motors Corp., *et al.*,** | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

**UNITED STATES TRUSTEE'S OBJECTIONS TO APPLICATION FOR RETENTION AND EMPLOYMENT OF CAPLIN & DRYSDALE, CHARTERED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS *NUNC PRO TUNC* TO OCTOBER 6, 2009**

# TABLE OF CONTENTS


I. Summary Statement 1

II. Background 3

A. General 3

B. The Caplin & Drysdale Application 5

III. The Applicable Statutes, Rules and Legal Standards 6

A. The Laws Governing the Employment of Committee Counsels 6

B. The Standards Governing Retroactive Employment Applications 7

IV. Discussion 8

A. The Court Should Not Enter a Retroactive Retention Order 8

B. Caplin & Drysdale has Failed to Prove Extraordinary Circumstances and the Necessity of a Retroactive Employment Order 12

V. Conclusion 14

## TABLE OF AUTHORITIES

### Reported Decisions

In re Adamo, 619 F.2d 216 (2d Cir. 1980) 11

Fulbright & Jaworski v. Sunbeam-Oster Co., Inc. (In re Allegheny Int'l, Inc.), 139 B.R. 336 (W.D. Pa. 1992) 9

In re Buran, 363 B.R. 358 (Bankr. W.D.N.Y. 2007) 9

In re Caldor, Inc. NY, 193 B.R. 165 (Bankr. S.D.N.Y. 1996) 7

Official Comm. v. ABC Capital Markets Group (In re Capitol Metals Co., Inc.), 228 B.R. 724 (Bankr. 9th Cir. 1998) 7

In re Drexel Burnhman Lambert Group, Inc., 138 B.R. 717 (Bankr. S.D.N.Y. 1992) 7

In re Fibermark, Inc., 349 B.R. 385 (Bankr. D. Vt. 2006) 7

Matter of Levy, 54 B.R. 804 (Bankr. S.D.N.Y. 1985) 7

In re Keren Ltd. P'ship, 225 B.R. 303 (S.D.N.Y. 1998), *aff'd*, 189 F.3d 86 (2d Cir. 1999) 7-8, 12

Milavetz, Gallop v. United States, __ U.S. __, __ S. Ct. __, 2010 WL 757616, (U.S., March 8, 2010) 11

Norwest Bank Worthington v. Ahlers, 485 U.S. 197 (1988) 12

In re Rogers-Pyatt Shellac Co., 51 F.2d 988 (2d Cir. 1931) 7

In re Singson, 41 F.3d 316 (7th Cir. 1994) 6

Comm. of Unsecured Creditors v. Liantonio (In re Standard Steel Sections, Inc.), 200 B.R. 511 (S.D.N.Y. 1996) 12

Matter of Tifford, 514 N.Y.S. 2d 745 (1987) 9

Fanelli v. Hensley (In re Triangle Chemicals, Inc.), 697 F.2d 1280 (5th Cir. 1983) 6

U.S. EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276 (7th Cir. 1995) 11

**TABLE OF AUTHORITIES (cont.)**

**Statutes**

11 U.S.C. § 101 et seq., the "Bankruptcy Code"

11 U.S.C. § 1103(a) 1-2, 6-9, 11-12
11 U.S.C. § 1107(a) 3
11 U.S.C. § 1108 3

**Rules**

Federal Rule of Bankruptcy Procedure 2014(a) 2, 7-8, 12-14

**Treatises**

7 Collier on Bankruptcy, ¶ 1103.03[1], at 1103-8 (16th ed. 2009) 9

# UNITED STATES TRUSTEE'S OBJECTIONS TO APPLICATION FOR RETENTION AND EMPLOYMENT OF CAPLIN & DRYSDALE, CHARTERED AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS *NUNC PRO TUNC* TO OCTOBER 6, 2009

Diana G. Adams, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby respectfully files her objections (**"Objections"**) to the Application to Retain and Employ Caplin & Drysdale, Chartered as Counsel to the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims *Nunc Pro Tunc* to October 6, 2009 (the **"Application"**). Docket No. 5302. In support of her Objections, the United States Trustee represents and submits as follows:

## I. SUMMARY STATEMENT

The Committee of Unsecured Creditors Holding Asbestos Related Claims (the **"Asbestos Committee"**) seeks to retain Caplin & Drysdale, Chartered (**"Caplin & Drysdale"** or the **"Firm"**), on a *nunc pro tunc* basis, effective as of October 6, 2009. That is a date five months before the appointment of the Asbestos Committee. The Firm allegedly began providing legal services at that time to an unofficial subcommittee (the **"Subcommittee"**) of the Official Committee of Unsecured Creditors (the **"Creditors' Committee"**). While the United States Trustee has no objection to the retention of Caplin & Drysdale as of the date of its selection by the Asbestos Committee, the Court should not enter a retention order effective as of any date prior thereto.

There is no authority in the Bankruptcy Code allowing an official committee's counsel to be retained as of a date prior to its actual selection by its client, here the Asbestos Committee. Section 1103(a) clearly and unambiguously provides that counsel to an official committee cannot

be selected on any date earlier than the date upon which such committee meets and makes such selection. 11 U.S.C. § 1103(a). Moreover, there simply is no legal authority countenancing the retention of the Firm as of a date before its client came into existence.

Authorizing the retention of the Firm as of October 6, 2009 would lead to several "absurd results," which this Court respectfully should avoid. Among those results, permitting the retention of Caplin & Drysdale as of a date prior to the appointment of the Asbestos Committee would mean that the retention of the Firm would be authorized (1) as of a date before its client actually existed; (2) as of a date before its attorney-client relationship with the Asbestos Committee actually began; and (3) in a manner permitting the Firm to have simultaneously represented two entities with potentially conflicting views in these "pot plan" cases – *i.e.*, the Asbestos Committee and the Subcommittee.

Furthermore, the Application fails to prove the extraordinary circumstances required for the issuance of a *nunc pro tunc* employment order, and fails to demonstrate that the services rendered by the Firm prior to the existence of the Asbestos Committee were "necessary" within the meaning of Federal Rule of Bankruptcy Procedure (**"Rule"**) 2014(a). The Asbestos Committee was appointed for the purpose of representing the holders of present asbestos personal injury claimants in the plan process. But, the legal representative of future asbestos personal injury claimants, with whom the Asbestos Committee must negotiate in the plan process, was not appointed within the five-month, October 2009 - March 2010 period at issue. Neither the Asbestos Committee nor the legal representative existed before March 2010. Thus, the United States Trustee is not aware of any plan negotiations that necessarily involved Caplin & Drysdale before March 2010, and the Firm's services on behalf of the Asbestos Committee

before its appointment were not necessary within the meaning of Rule 2014(a).

For these reasons, the Court should not enter a retention order effective as of any date prior to the selection of Caplin & Drysdale by the Asbestos Committee.

## II. BACKGROUND

### A. General

1. On June 1, 2009 (the **"Petition Date"**), General Motors Corp. (k/n/a Motors Liquidation Company) and certain subsidiary debtors (collectively, the **"Debtors"**) filed voluntary cases under Chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate and manage their business and properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3. On June 3, 2009, the United States Trustee appointed the Creditors' Committee. Docket No. 356. On November 30, 2009, the United States Trustee filed the First Amended Appointment of Official Committee of Unsecured Creditors. Docket No. 4552.

4. On June 1, 2009, the Debtors filed a motion seeking the entry of an order authorizing and approving the sale of substantially all of their assets to NGMCO, Inc., a U.S. Treasury-sponsored purchaser, pursuant to the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, together with all documents and agreements as well as all exhibits, schedules and addenda thereto (as amended, the **"MPA"**). Docket No. 92.

5. On July 5, 2009, the Court entered an Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting

Related Relief was entered (the **"Sale Order"**). Docket No. 2968.

6. On July 9, 2009, NGMCO, Inc. filed the required documentation to change its name to General Motors Company ("**GMCo.**").

7. On July 10, 2009, pursuant to the MPA and this Court's Sale Order, GMCo. acquired substantially all of the assets of the Debtors.

8. According to the Application, in October 2009, counsel to Mark Butitta, who at the time was the sole holder of an asbestos-related claim appointed to the Creditors' Committee, was approached by counsels to the Debtors and the Creditors' Committee to serve as the sole member of the Subcommittee. Application, ¶ 6, at 3.

9. On or about January 11, 2010, in conjunction with discussions with counsels to the Debtors and the Creditors' Committee, the United States Trustee began considering the advisability of appointing an additional committee for the purpose of enabling the representation of the interests of current asbestos personal injury claims-holders in the Debtors' plan processes.

10. On March 5, 2010, the United States Trustee appointed the Asbestos Committee. Docket No. 5206. The Asbestos Committee consists of three members, one of whom is Mr. Butitta. In conjunction with that appointment, on March 5, 2010, the United States Trustee also filed the Second Amended Appointment of Official Committee of Unsecured Creditors, to reflect Mr. Butitta's move from the Creditors' Committee to the newly-formed Asbestos Committee. Docket No. 5201.

11. In connection with the formulation, negotiation and confirmation of a contemplated Chapter 11 plan, on March 8, 2010, the Debtors filed a motion for an order appointing Dean M. Trafelet as legal representative for future asbestos personal injury claimants

in these cases (the **"Trafelet Motion"**). Docket No. 5214.

**B. The Caplin & Drysdale Application**

12. On March 18, 2010, the Asbestos Committee filed the Application seeking to retain Caplin & Drysdale as its counsel. Docket No. 5302. This was the first time that the United States Trustee became aware of the involvement of the Firm on behalf of present asbestos personal injury claimants.

13. The Application is accompanied by the Declaration of Elihu Inselbuch in Support of the Application (the **"Inselbuch Decl."**) *See id.*

14. The Application seeks a retention order effective as of (or *nunc pro tunc* to) October 6, 2009. *See* Application, at ¶¶ 6-7. According to the Inselbuch Decl.:

> 12. In October 2009, counsel for the Debtors and counsel for the [Creditors' Committee] proposed to Mr. Cooney that he (as counsel to Mr. Butitta) serve as a subcommittee of the [Creditors' Committee] for the purpose of representing the interests of the constituency of creditors holding asbestos-related personal injury or wrongful death claims against the Debtors, and that the approval of the United States Trustee and of this Court be sought for the formation of such subcommittee and for its retention of separate counsel. Counsel for the Debtors and counsel for the [Creditors' Committee] advised that they would promptly seek the appointment of a representative for unknown future asbestos personal injury claimants. Mr. Cooney asked Caplin & Drysdale to serve as the subcommittee's counsel on the understanding that approval of its retention would be sought *nunc pro tunc.* With the knowledge and encouragement of counsel for the Debtors and counsel for the [Creditors' Committee], Caplin & Drysdale began to work in that capacity immediately, because, in their view, time was of the essence and certain matters bearing on the interests of the proposed subcommittee's constituency required immediate attention. The United States Trustee decided, after consideration, not to appoint the subcommittee, but instead to constitute the ACC which now seeks to retain Caplin & Drysdale with the approval of the Court.

Inselbuch Decl., ¶ 12, at 5-6; *see also* Application, ¶ 6, at 2-3.

15. According to the Firm, from October 6, 2009 through its selection by the Asbestos Committee as counsel, it "accrued time charges of approximately $100,000, and approximately $3,500 of disbursements and other charges, in performing legal services on behalf of the then-proposed subcommittee." Inselbuch Decl., ¶ 14, at 6; *see also* Application, ¶ 7, at 3.

**III. THE APPLICABLE STATUTES, RULES, AND LEGAL STANDARDS**

The Court should deny the Application, because there are no legal or factual grounds justifying the employment of Caplin & Drysdale as counsel to the Asbestos Committee, effective as of a date five months prior to the appointment of the Asbestos Committee.

**A. The Laws Governing the Employment of Committee Counsel**

Section 1103(a) of the Bankruptcy Code governs an official committee's employment of professionals, including attorneys and accountants. More specifically, the statute provides:

> (a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which the majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

11 U.S.C. § 1103(a).

Court approval is required to ensure that the professional providing services is not an "officious intermeddler or a gratuitous volunteer." Fanelli v. Hensley (In re Triangle Chemicals, Inc.), 697 F.2d 1280, 1285 (5th Cir. 1983). The approval by the Court also "wards off 'volunteers' attracted to the kitty, and avoids duplication of effort." In re Singson, 41 F.3d 316, 319 (7th Cir. 1994).

In order to implement section 1103(a) and its principles, Rule 2014 dictates the manner in which a professional is to be retained under section 1103(a), and requires that the application state, among other things, the specific facts showing the necessity for the employment, the reasons for the selection, and any connections with parties in interest. *See* Fed.R.Bankr.P. 2014. Accordingly, it is an applicant's burden to prove that all applicable retention standards have been met. Official Comm. v. ABC Capital Markets Group (In re Capitol Metals Co., Inc.), 228 B.R. 724, 727 (Bankr. 9th Cir. 1998); In re Keren Ltd. P'ship, 225 B.R. 303, 306 (S.D.N.Y. 1998) (applicants must "first demonstrate relevant qualifications, including competence, disinterested-ness, efficiency, and document the need for the service"), *aff'd* 189 F.3d 86 (2d Cir. 1999). Services rendered prior to the retention date established by the Court are not compensable from the estate under section 330. In re Fibermark, Inc., 349 B.R. 385, 394 n.3 (Bankr. D. Vt. 2006).

The Asbestos Committee represents the holders of current claims against the Debtors based on asbestos-related exposures, not individually, but as a whole. In re Drexel Burnhman Lambert Group, Inc., 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992). Accordingly, this Court has held that counsel for an unsecured creditors' committee owes a fiduciary duty to the entire class of creditors represented by the committee. *Id.*; *see also* Matter of Levy, 54 B.R. 804, 807 (Bankr. S.D.N.Y. 1985); In re Caldor, Inc. NY, 193 B.R. 165, 170 (Bankr. S.D.N.Y. 1996).

**B. The Standards Governing Retroactive Employment Applications**

In Keren Limited Partnership, the Second Circuit held that "*nunc pro tunc* approval should only be granted in narrow situations," and grounded upon proven "extraordinary circumstances." In re Keren Ltd. P'ship, 189 F.3d 86, 87-88 (2d Cir. 1999); In re Rogers-Pyatt Shellac Co., 51 F.2d 988, 991 (2d Cir. 1931) (*nunc pro tunc* retention based upon applicant's

hardship disallowed where hardship was of applicant's own making). In determining whether "extraordinary circumstances" exist, a court should consider (i) whether the applicant or some other person bore the responsibility for applying for approval, (ii) whether the applicant was under time pressure to begin service without approval, (iii) the amount of delay, (iv) the extent of delay to which compensation will prejudice innocent third parties, and (v) other relevant factors. In re Keren Ltd. P'ship, 225 B.R. 303, 306 (S.D.N.Y. 1998), *aff'd*, 189 F.3d 86 (2d Cir. 1999).

## IV. DISCUSSION

### A. The Court Should Not Enter a Retroactive Retention Order

As an initial and dispositive matter, there appears to be no statutory, regulatory or decisional authority for the retention of Caplin & Drysdale effective as of a date preceding its selection by its client, the Asbestos Committee. The Bankruptcy Code is void of statutory provisions permitting judicial approval of an official committee's retention of counsel, effective prior to the date such counsel was selected. *See* 11 U.S.C. § 101 *et seq*. Because section 1103(a) clearly and unambiguously provides that an official committee's counsel cannot be selected any earlier than the time at which the committee convenes the meeting at which the selection is made, the Court cannot enter a retention order as of an earlier date. *See* 11 U.S.C. § 1103(a).

Here, as set forth above, the Asbestos Committee carries the burden of proving that its requested retention fulfills the edicts of section 1103(a) and Rule 2014, but its Application fails to state any legal grounds supporting its requested retroactive retention order. In this regard, the members of the Asbestos Committee are bound by clear directives expressly contained in section 1103(a). *See* 11 U.S.C. § 1103(a). The first of such directives sets forth the procedures that an official committee must follow for its retention of attorneys, which often is the first matter

undertaken by a committee. 7 Collier on Bankruptcy, ¶ 1103.03[1], at 1103-8 (16th ed. 2009). The statutory instructions of section 1103(a) are clear and unambiguous: to the extent a committee chooses to select counsel, such selection must occur at a scheduled committee meeting at which a majority of committee members are present. *See id*. and 11 U.S.C. § 1103(a).

At the core of its Application, Caplin & Drysdale is asking for two things. First, the Firm is asking that the Court approve its retroactive employment as of October 6, 2009. However, the source of a bankruptcy court's authority to approve the *nunc pro tunc* retention of a professional, where the entity retaining the professional had not even come into existence at that earlier time, is unknown. *See* In re Buran, 363 B.R. 358, 361 (Bankr. W.D.N.Y. 2007) ("Upon the appointment of the committee, 11 U.S.C. § 1103(a) authorizes the employment of counsel.") Caplin & Drysdale's client, and the entity to which it owes a fiduciary duty – *i.e.*, the Asbestos Committee – simply did not exist or itself have any fiduciary duties prior to its appointment by the United States Trustee on March 5, 2010. The Firm also did not have an attorney-client relationship with the Asbestos Committee prior to the March 5, 2010 appointment date. Matter of Tifford, 514 N.Y.S. 2d 745 (1987) ("The attorney-client relationship begins when the client agrees to have the attorney act in his behalf and the attorney agrees to represent the client.") For the Firm to be retained as of a date five months before it and its client had any fiduciary duties, and five months before it had an attorney-client relationship with the client, is simply illogical.

In addition, Caplin & Drysdale is also asking that the Court approve its retention before it was selected by the Asbestos Committee – *i.e.*, a period in which, by the Firm's own admission, it was serving as counsel for a different entity – *i.e.*, the Subcommittee. Inselbuch Decl., ¶ 12, at 6; Application, ¶ 6, 3. Prior to its selection by the Asbestos Committee, the Subcommittee –

which consisted of only one member – had no official imprimatur in these bankruptcy cases. Specifically, the "Subcommittee" was not appointed or consented to by United States Trustee, or otherwise appointed by the Court.

Prior to the formation of the Asbestos Committee, Caplin & Drysdale was not cloaked with any official authority, and its involvement in these bankruptcy cases was unknown to the United States Trustee. Though sometimes created voluntarily by official committees in large reorganization cases for the purposes of exercising internal managerial efficiency and spreading the workload, subcommittees are authorized and governed by only the internal by-laws of their larger committees. There is, however, no authority in the Bankruptcy Code, the Rules or decisional law for the official appointment or standing of subcommittees, much less their retention of separate counsel. Fulbright & Jaworski v. Sunbeam-Oster Co., Inc. (In re Allegheny Int'l, Inc.), 139 B.R. 336, 346 (W.D. Pa. 1992) (affirming disallowance of fees incurred by counsel to subcommittee of official equity committee in proxy litigation, due to unauthorized nature of subcommittee).

As the Court is aware, following the entry of the Sale Order and the closing of the sale to GMCo. in July 2009, these bankruptcy cases promptly entered into the liquidation phase in which they still remain. The plan of reorganization to be proposed by the Debtors generally will be a "pot plan" that will necessarily require the division of a common fund of assets and/or cash. Specifically, with respect to asbestos claimants, "the plan will provide for a trust to be established for present and future asbestos-related personal injury claims," which trust will receive a ratable share of consideration to be distributed to allowed unsecured claim-holders. Trafelet Motion, ¶ 5, at 3. In furtherance of plan negotiations, the Debtors openly contemplate

that the Asbestos Committee and the legal representative of future asbestos claimants will "**interface** and negotiate with the Debtors." *Id.*, ¶ 6, at 3 (bold added).

The division of the common fund known as the bankruptcy estate, and the specific calculations of the ratable shares of consideration to be distributed to current and future asbestos claimants, raises the potential of substantive differences – if not outright conflicts – between current and future asbestos claimants. Yet, Caplin & Drysdale is asking that the Court expand section 1103(a) to permit its retroactive, simultaneous service to both the Subcommittee of the Creditors' Committee and the Asbestos Committee – *i.e.*, entirely different entities with potentially opposing views. In essence, the Firm wants the Court to bless its services and its divided ethical and fiduciary duties to two potentially opposing masters, even if only fictional.

The Supreme Court and the Second Circuit have repeatedly admonished against interpretations of the Bankruptcy Code that lead to "absurd results." *See* Milavetz, Gallop v. United States, __ U.S. __, __ S. Ct. __, 2010 WL 757616, at * 13 (U.S., March 8, 2010); In re Adamo, 619 F.2d 216, 219 (2d Cir. 1980). This Court should decline the impermissible constructions of section 1103(a) urged by Caplin & Drysdale, and the obvious absurd results to which it would lead. Instead, as a matter of statutory construction and of fulfilling the commands of section 1103(a), the Court should promote the clear and unambiguous terms of the statute, and abide by its inherent temporal logic. *See, e.g.,* U.S. EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995) (holding that a socially remedial employment discrimination statute may be interpreted liberally, but not by trumping the narrow focused conclusions drawn

from the structure and logic of the statute).[1]

### B. Caplin & Drysdale Has Failed to Prove Extraordinary Circumstances and the Necessity of a Retroactive Employment Order

As set forth above, seminal retroactive employment law in this Judicial Circuit requires that an applicant prove the existence of "extraordinary circumstances" to justify a *nunc pro tunc* retention order. Keren, 189 F.3d at 87-88. Also, Rule 2014 requires that an applicant prove "the necessity for the employment," among other requirements. Fed.R.Bankr.P. 2014(a). The District Court has ruled that "the test of 'necessity' is whether the committee seeking appointment of counsel under § 1103(a) has demonstrated a distinct and potentially conflicting interest in the disposition of the assets of the estate that requires separate legal representation." Comm. of Unsecured Creditors v. Liantonio (In re Standard Steel Sections, Inc.), 200 B.R. 511, 513 (S.D.N.Y. 1996).

In its Application, the Asbestos Committee in essence alleges that extraordinary circumstances compelled the employment of Caplin & Drysdale, and that such employment was necessary, between October 6, 2009 (*i.e.*, the date the Firm began serving for the Subcommittee), and March 2010, when it selected the Firm. Inselbuch Decl., ¶ 12, at 5-6; *see also* Application, ¶ 6, at 2-3.[2] The Court, however, should give these allegations no weight. Because the Asbestos

---

[1] To the extent the Application seeks the Asbestos Committee's retroactive employment of the Firm based on the equitable powers of the Court derived from section 105(a), the Application should also be denied. "The short answer to these arguments is that whatever equitable powers remain in the bankruptcy courts [they] must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206-07 (1988).

[2] The Application does not set forth the exact date on which the Asbestos Committee convened a meeting and selected Caplin & Drysdale as counsel, as section 1103(a) requires. That date, however, presumptively lies between March 5, 2010, (*i.e.*, the date of the appointment

Committee did not exist before its appointment date (*i.e.*, March 5, 2010), it simply cannot make the showing of extraordinary circumstances required by Keren, or the showing of necessity commanded by Rule 2014(a), for any period prior to that date.

In any event, putting the foregoing impossibilities aside for the sake of argument, the Application fails to "document the need for service" prior to the appointment of the Asbestos Committee (Keren, 225 B.R. at 306), or prove that extraordinary circumstances were present, or prove that the Firm's retention was necessary, between October 6, 2009 and March 2010.[3] According to the Application, in October 2009:

> [w]ith the knowledge and encouragement of counsel for the Debtors and counsel for the [Creditors' Committee], Caplin & Drysdale began to work [as counsel to the subcommittee] immediately, because, in their view, time was of the essence and certain matters bearing on the interests of the proposed subcommittee's constituency required immediate attention.

Inselbuch Decl., ¶ 12, at 6; Application, ¶ 6, 3.

But, the Application fails to identify the circumstances that caused "time [to be] of the essence," exactly what matters "required immediate attention," what services the Firm actually performed prior to its selection as counsel to the Asbestos Committee,[4] or what prejudice would result to innocent third parties if the Application is not granted. *See id*. There is no indication that any substantive plan discussions or negotiations were underway prior to the Asbestos' Committee's selection of the Firm. Indeed, because the Debtors did not file their motion seeking

---

of the Asbestos Committee), and March 18, 2010 (*i.e.*, the date of the filing of the Application).

[3] *See* note 2.

[4] The Firm has not filed time records for the period prior to its selection by the Asbestos Committee.

the appointment of Dean M. Trafelet as the legal representative for future asbestos personal injury claimants until very recently – *i.e.*, March 8, 2010 (Docket No. 5214) – it appears that one vital party with whom the Firm must negotiate any meaningful plan terms also did not exist prior to the Firm's selection by the Asbestos Committee. For these reasons, Caplin & Drysdale cannot show that its services on behalf of the Asbestos Committee before the appointment of the Asbestos Committee were necessary within the meaning of Rule 2014(a).

## V. CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that the Court sustain her Objections, deny the Application, and grant such other and further relief as is just and proper.

Dated: New York, New York
April 1, 2010

DIANA G. ADAMS
UNITED STATES TRUSTEE

***By:*** ***/s/ Andrew D. Velez-Rivera***
Trial Attorney
33 Whitehall Street, 21st Floor
New York, New York 10004
Tel. No. (212) 510-0500
Fax No. (212) 668-2255