PRODUCT RESPONSIBILITY AGREEMENT

by and among

TOYOTA MOTOR CORPORATION,

GENERAL MOTORS CORPORATION

and

NEW UNITED MOTOR MANUFACTURING, INC.

# TABLE OF CONTENTS

Page

I.    DEFINITIONS ·········································  1

      Section 1.1.    Terms Defined in Shareholders'
                  Agreement ·······························  1

II.   PURPOSE ·············································  3

      Section 2.1.    Purpose ·······························  3

III.  SURVIVAL ············································  3

      Section 3.1.    Dissolution of the JV Company ·········  3
      Section 3.2.    Effect of Expiration of
                  Other Agreements ·······················  4

IV.   PRODUCT DEFECTS ·····································  4

      Section 4.1.    New Vehicle Warranty, Etc. ············  4
      Section 4.2.    Product Liability ·····················  5
      Section 4.3.    Recall and Notification Campaigns ·····  9
      Section 4.4.    Off Warranty ·························  14
      Section 4.5.    Indemnities, Etc. ·····················  16

V.    GENERAL ·············································  16

      Section 5.1.    Treatment of Information, Etc. ·········  16
      Section 5.2.    Limitation of Liability ···············  18
      Section 5.3.    Suppliers ····························  18

VI.   GENERAL PROVISIONS ··································  18

      Section 6.1.    Assignability ························  18
      Section 6.2.    Persons Authorized to Act
                  for the Parties ·······················  18
      Section 6.3.    Notices ·······························  19
      Section 6.4.    Third Persons ·························  20
      Section 6.5.    Governing Language ····················  20
      Section 6.6.    Choice of Law ·························  20
      Section 6.7.    Entire Agreement, Etc. ················  20
      Section 6.8.    Enforcement of this Agreement ·········  21

ANNEX A:  Section D(a) of Article VII of GM's form of Dealer
          Sales and Service Agreement
ANNEX B:  Section of GM's Service Policies and Procedures Manual
          under the caption "Indemnification"

## PRODUCT RESPONSIBILITY AGREEMENT

This PRODUCT RESPONSIBILITY AGREEMENT (this
"Agreement") is made and entered into on and as of the 21st day
of February, 1984, by and among Toyota Motor Corporation
("Toyota"), a corporation organized and existing under the laws
of Japan, General Motors Corporation ("GM"), a corporation
organized and existing under the laws of the State of Delaware,
and New United Motor Manufacturing, Inc. (the "JV Company"), a
close corporation organized and existing under the laws of the
State of California;

### WITNESSETH:

WHEREAS, the JV Company, which is under the joint con-
trol of, but is separate and distinct from, GM and Toyota, was
formed for the limited purpose of manufacturing in the United
States a specific automotive vehicle not heretofore manufac-
tured and certain components related thereto;

NOW, THEREFORE, the parties hereto agree as follows:

## I.   DEFINITIONS

1.1.   Terms Defined in Shareholders' Agreement:   In
addition to the terms which have been previously, or are here-

after, defined herein, terms used herein which are defined in Section 1.1 of the Shareholders' Agreement (the "Shareholders' Agreement"), dated the date hereof, among the parties hereto, are used herein as so defined (except that as used herein the "Other Agreements" defined in Section 1.1(f) of the Shareholders' Agreement shall not include this Agreement when used herein) unless otherwise defined in this Agreement.  In addition, the following terms shall have the following meanings when used herein with initial capital letters:

    (a)  "EPA" means the United States Environmental Protection Agency or any successor administrative agency.

    (b)  "NHTSA" means the United States National Highway Traffic Safety Administration of the Department of Transportation or any successor administrative agency.

    (c)  "Product" means any Vehicle (except pilot vehicles) supplied by the JV Company and purchased by GM during the period that the JV Company is jointly and equally owned by the GM Group and the Toyota Group pursuant to the Vehicle Agreement and any element of such Vehicle at the time of such supply and purchase.

    (d)  "PL Products" shall have the meaning set forth in Section 4.2(a) hereof.

    (e)  "Recall Products" shall have the meaning set forth in Section 4.3(a) hereof.

- 2 -

## II.   PURPOSE

2.1.   <u>Purpose</u>:  The purpose of this Agreement is to provide for the allocation of responsibilities among the parties hereto with respect to defects and alleged defects in the Products and certain incidental matters.

## III.   SURVIVAL

3.1.   <u>Dissolution of the JV Company</u>:  In the event that, as contemplated by the Shareholders' Agreement, the JV Company is dissolved or the Toyota Group or the GM Group purchases all of the shares of the JV Company held by the other group:

(a)   The respective rights and obligations of GM and Toyota set forth herein shall remain effective;

(b)   Unless otherwise agreed, costs and expenses which, but for such dissolution or purchase, would be paid by the JV Company, shall be apportioned 50% to GM and 50% to Toyota or, if GM and Toyota so agree, to an entity in which each of GM and Toyota has a 50% participation; and

(c)   The powers and responsibilities which, but for such dissolution or purchase, would be held by the JV Company shall be reviewed and new administration procedures shall be agreed upon by GM and Toyota consistent with the practices established before such dissolution or purchase,

- 3 -

which may include the assumption of such powers and
responsibilities by an entity referred to in Section 3.1(b)
hereof.

   3.2.   <u>Effect of Expiration of Other Agreements</u>:   The
termination or expiration of the Corporate Term (as that term
is defined in Section 2.1 of the Shareholders' Agreement) or of
any of the Other Agreements, the Shareholders' Agreement, the
agreements to be executed pursuant to the letter agreement con-
templated by Section 6.3 of the Shareholders' Agreement or any
other agreement or instrument executed by the parties hereto or
any of them shall not affect any of the obligations of any of
the parties under this Agreement.


                    IV.   <u>PRODUCT DEFECTS</u>

   4.1.   <u>New Vehicle Warranty, Etc.</u>:   GM shall, except as
otherwise contemplated by the following sentence, warrant the
Products to retail purchasers in accordance with and subject to
GM's standard new vehicle warranty policy, shall be responsible
for all costs, expenses and administration relating to such
warranty, and shall defend and hold Toyota and the JV Company
harmless from and against any action or proceeding allegedly
based on such warranty regardless of the merits of such action or
proceeding.   If permitted by the EPA, GM's obligations under the
immediately preceding sentence shall apply to the emissions
control system in the Vehicles.   If the EPA does not give such
permission, such emissions control system warranty shall be given

in the name of the JV Company in accordance with and subject to GM's standard emission control systems warranty policy, but in any event, as among the parties hereto, GM shall be solely responsible for all costs, expenses and administration relating to such emissions control system warranty and shall defend and hold Toyota and the JV Company harmless from and against any action or proceeding allegedly based on such emissions control system warranty or noncompliance with laws and regulations applicable to such emissions control system warranty. The indemnity provisions set forth in Section 4.5 hereof shall apply to any breach by GM of any such obligation.

4.2. <u>Product Liability</u>: (a) As used in this Agreement, the term "PL Products" means, collectively, all (i) Products, (ii) accessories installed by GM in any of the Products, and (iii) parts sold or distributed by GM and installed by any person or entity in any of the Products.

(b) The JV Company shall purchase, at its sole expense, product liability insurance for the benefit of each of the parties to this Agreement, which insurance shall cover the PL Products and all costs, expenses and liabilities associated with any actual, potential or threatened claim, action or proceeding allegedly based on product liability relating to any PL Product. Such insurance shall be placed with such insurance carrier or carriers, insure such other persons or entities and contain such other provisions as may be determined by the JV Company.

- 5 -

(c)  With respect to any actual, potential or threat-
ened claim, action or proceeding allegedly based on product
liability relating to any PL Product, each of the parties to
this Agreement shall (i) communicate and cooperate with the
other parties and, if necessary, the appropriate insurance car-
rier, to the fullest extent reasonably possible in investiga-
tion of the facts and circumstances surrounding the claim and
in litigation of the claim, (ii) refrain from taking any posi-
tion adverse to the interests of any other party to this
Agreement, and (iii) not, except in enforcement of the rights
under Section 4.2(e) hereof, institute any claim, action or
proceeding, whether by cross-complaint, third party complaint,
interpleader or otherwise, against any other party to this
Agreement.

(d)  The JV Company shall, as among the parties
hereto, have the right and obligation to control the defense of
any claim, action or proceeding referred to in Section 4.2(c)
hereof.

(e)  With respect to any claim, action or proceeding
or related liability, cost and expense under this Section 4.2,
(i) any settlement payment or payment to satisfy an adverse
judgment of any claim, action or proceeding referred to in
Section 4.2(c) hereof which is uninsured, uninsurable or in
excess of the limit of liability of any applicable insurance
policy purchased by the JV Company shall be apportioned 60% to
Toyota and 40% to GM, (ii) GM and Toyota shall bear their

- 6 -

respective costs and expenses incurred in connection with cooperation in investigation and litigation pursuant to Section 4.2(c) hereof which are not covered by any applicable insurance policy purchased by the JV Company, including those incurred for the production of documents and answering of interrogatories but specifically excluding those incurred at the JV Company's request for (A) a dispatch of engineers, (B) a reconstruction test, (C) sample parts and (D) interpreters and/or experts, (iii) any costs and expenses, if any, including without limitation judgments and other payments, within retained deductible limits of any product liability insurance purchased by the JV Company, except those borne by Toyota or GM under Sections 4.2(e)(i)-(ii) hereof, shall be borne solely by the JV Company, and (iv) the parties shall be bound by any final determination in any action or proceeding pursued in accordance with Section 4.2(d) hereof whether or not they individually or collectively concur with such determination.

(f)    In the event that a product liability action or proceeding is brought against GM or Toyota relating to any PL Product, GM or Toyota, as the case may be, shall as promptly as practicable in the circumstances forward to the JV Company every summons and complaint and every other court document received by either of them and in no event shall GM or Toyota take any action for defense or settlement without the JV Company's consent.

(g)    Nothing in this Agreement, the Shareholders' Agreement or any of the Other Agreements shall affect the right of GM or any of its Affiliates (as that term is defined in

- 7 -

Section 3.6 of the Shareholders' Agreement) to defend or to
prosecute at its expense and risk any claim, action or proceeding
relating to or arising out of any product which is an automotive
vehicle or an element of an automotive vehicle other than (i) any
automotive vehicle manufactured by the JV Company or manufactured
or distributed by Toyota, members of the Toyota Group or inde-
pendent distributors of Toyota automotive vehicles and (ii) any
element thereof.

(h)   Upon and subject to the terms and conditions set
forth in Section D(a) of Article VII of GM's form of Dealer Sales
and Service Agreement (the "Dealer Agreement"), a copy of which
is attached hereto as Annex A, and in the section of GM's Service
Policies and Procedures Manual under the caption "Indemnifi-
cation" (the "Dealer Manual"), a copy of which captioned section
is attached hereto as Annex B, GM has agreed to assume the
defense of its dealers and to indemnify its dealers against any
judgment for monetary damages, less any offset recovered by GM's
dealers, in any action, suit or proceeding naming any such dealer
as a defendant in which bodily injury or property damage is
claimed to have been caused solely by a defect in the design or
manufacture of certain products.  GM shall transfer to the JV
Company any such defense and/or indemnification obligation
arising under any Dealer Agreement and relating to any PL
Product, and the JV Company, through GM, shall assume such
defense and/or indemnify such dealer to the extent provided in
any Dealer Agreement and relating to any PL Product, provided

- 8 -

that such transfer of defense and/or indemnification shall be
made in a timely manner so that the JV Company may properly
defend such action, suit or proceeding.  Except as otherwise
provided in this Agreement, the JV Compny shall not be
responsible for any other liability that GM may assume under any
Dealer Agreement.  If the relevant indemnification provisions of
the Dealer Agreement or the Dealer Manual are substantially
changed by GM without the prior written consent of the JV
Company, the JV Company may reject such defense and indemnifi-
cation.

     4.3.  <u>Recall and Notification Campaigns</u>:  (a)  As used
in this Agreement, the term "Recall Product" means, collec-
tively, any (i) Product and (ii) service part for use in the
repair, service or equipping of the Products which are listed in
the BUHINHYO (that is, parts list) as from time to time issued by
Toyota and which is approved by Toyota to be installed by GM
dealers in the Products.

     (b)  Toyota, directly or through a subsidiary of which
it is the owner of record of a majority of the issued and out-
standing shares of voting stock, shall, in consultation with GM
and the JV Company, represent the interests of the JV Company and
GM in connection with any request by NHTSA for any data or
information and any allegations or inquiries from NHTSA, the EPA
or any other federal, state or local government or governmental
agency, authority or instrumentality (collectively, "Government
Agency") concerning suspected or alleged safety defects or

- 9 -

noncompliance with any governmental safety standard or regulation or governmental emissions control standard or regulation relating to any of the Recall Products.

(c)   In the event of a finding by a Government Agency of any safety defect or noncompliance with any governmental safety standard or regulation or governmental emissions control standard or regulation relating to any of the Recall Products, (i) negotiations with the Government Agency regarding the amount of civil penalties, fines and other assessments to be paid, if any, and/or a recall or notification campaign and (ii) a decision on whether to challenge the findings of the Government Agency before such agency or in court, shall be conducted or made, as the case may be, by Toyota in consultation with GM and the JV Company.

(d)   In the event that a Government Agency requires a recall or notification campaign relating to any of the Recall Products, Toyota in consultation with GM and the JV Company shall decide whether to conduct such a recall or notification campaign. If Toyota decides to conduct such a campaign, Toyota shall after consultation with GM and the JV Company decide the nature of a corrective action to be taken and shall be authorized to cause relevant reports to be filed with the Government Agency.   GM shall issue required notification letters subject to Toyota's prior review and shall conduct a recall or notification campaign.

(e)   If, as a result of field experience, test data or otherwise, GM, Toyota or the JV Company, as the case may be,

determines that it is necessary to conduct a recall or notifi-
cation campaign relating to any of the Recall Products even
though no inquiry from or determination by any Government Agency
is made, GM, Toyota or the JV Company shall notify the other
parties hereto as promptly as practicable in the circumstances.
Upon such notice, Toyota after consultation with GM and the JV
Company shall decide whether to conduct a recall or notification
campaign.  If Toyota decides to conduct such a campaign, Toyota
shall after consultation with GM and the JV Company decide the
nature of a corrective action to be taken and shall be authorized
to cause the required reports to be filed with the Government
Agency.  GM shall issue notification letters subject to Toyota's
prior review and shall conduct a recall or notification campaign.

(f)  In the event that any penalty, fine or other
assessment is levied by any Government Agency for any suspected
or alleged safety defect or any noncompliance or alleged non-
compliance of any Recall Product with any governmental safety
standard or regulation or governmental emissions control stan-
dard or regulation and Toyota decides not to, or is unable to,
contest such penalty, fine or assessment further, or in the event
that a recall or notification campaign relating to any of the
Recall Products, whether mandatory or voluntary, is conducted,
the parties hereto shall discuss in good faith to determine the
responsible party, and the extent of each party's responsibility,
and (i) if the parties agree on the party or parties responsible
and the extent of each such party's responsibility, each

- 11 -

responsible party shall pay its agreed-upon portion of such penalty, fine or other assessment and the expenses, including without limitation, all costs and expenses of corrective actions, as agreed to have been reasonably incurred in conducting the recall or notification campaign and (ii) if the parties fail to agree, such penalty, fine or assessment and such costs and expenses shall be apportioned 50% to GM and 50% to Toyota.  It is understood that in such discussion the parties will take into account, among other things, that (A) Toyota shall have authority and responsibility for the development and design of all Recall Products, (B) the JV Company shall have authority and respon- sibility for the manufacture of the Vehicles and manufacture or procurement of optional equipment therefor, and (C) GM shall have authority and responsibility for furnishing (dependent in part upon information furnished to it by Toyota) to purchasers of the Vehicles legally required consumer information and for furnishing certain information to and otherwise cooperating with Toyota pursuant to Section 4.3(g) hereof.

(g)  GM shall, upon the written request of Toyota, collect and furnish to Toyota such information relating to the Recall Products, including without limitation field information, surveys, test reports (if any) and Recall Product warranty claim information, as may be reasonably required by Toyota so that Toyota may utilize such information in considering changes or improvements in any of the Recall Products or in evaluating any pending allegation of or inquiry from any Government Agency,

- 12 -

provided, however, that GM shall not be required to disclose any warranty cost or other information which in GM's opinion would be unlawful to disclose. GM shall otherwise cooperate with Toyota as reasonably requested by Toyota for such purpose, provided, however, that any contact which Toyota may wish to make with a GM dealer with respect to any Recall Product shall be made jointly by appropriate personnel of GM and Toyota with the service departments of such dealers.

(h) The JV Company shall, upon the written request of Toyota, collect and furnish to Toyota such information and data as may be reasonably required by Toyota so that Toyota may utilize such information in considering changes or improvements in any of the Recall Products or in evaluating any pending allegation of or inquiry from any Government Agency. The JV Company shall otherwise cooperate with Toyota as reasonably requested by Toyota for such purpose.

(i) In the event that the JV Company or GM receives any request by NHTSA for any data or information or an allegation or inquiry from any Government Agency concerning a suspected or alleged safety defect or noncompliance with any governmental safety standard or regulation or governmental emissions control standard or regulation relating to the Recall Products, the JV Company or GM, as the case may be, shall notify Toyota thereof as promptly as practicable in the circumstances and shall not make any response to or negotiate with such Government Agency without Toyota's prior written consent.

- 13 -

(j)  All costs and expenses incurred by Toyota in investigation and response to the inquiry from, negotiation with and appeal proceeding against the Government Agency relating to any of the Recall Products shall be paid by Toyota, and all costs and expenses incurred by GM or the JV Company in collecting and furnishing to Toyota such information and data as required by Toyota and in otherwise cooperating with Toyota shall be paid by GM or the JV Company, as the case may be, provided, however, that if a recall or notification campaign relating to any of the Recall Products is finally conducted or if the penalty, fine or other assessment relating to any of the Recall Products is finally levied, all such costs and expenses shall be subject to apportionment under Section 4.3(f) hereof, as the case may be.

(k)  Nothing in this Agreement, the Shareholders' Agreement or any of the Other Agreements shall affect the right of GM or any of its Affiliates (as that term is defined in Section 3.6 of the Shareholders' Agreement) to defend, to respond to or to make any decision (including without limitation whether or not to conduct a recall) in respect of any request, inquiry or allegation relating to any product which is an automotive vehicle or an element of an automotive vehicle other than (i) any automotive vehicle manufactured by the JV Company or manufactured or distributed by Toyota, members of the Toyota Group or independent distributors of Toyota automotive vehicles and (ii) any element thereof.

4.4.  Off Warranty:  All costs, expenses and liabili-

- 14 -

ties incurred in connection with any repair or replacement of any Product or element thereof undertaken or compensation paid directly or indirectly to any retail purchaser of any Product by GM or its designated marketing units (but specifically excluding, however, all costs and expenses of investigation, defense, attorney's fees, overhead and similar indirect expenses) arising out of any claim, action or proceeding allegedly based on any defect in any Product and brought by or on behalf of any retail purchaser of any Product or by any governmental agency which are not borne by any of the parties or otherwise paid pursuant to Sections 4.1, 4.2 or 4.3 hereof shall be apportioned 75% to the JV Company and 25% to GM (such voluntary repairs, replacements and compensation are called "Policy Adjustments"), provided, however, that Policy Adjustments relating to the Products shall be rejected or accepted by GM or its designated marketing units using substantially the same standard of discretion as used by GM or such marketing units in respect of other comparable automotive vehicles then sold by GM or such marketing units.  After the expiration of three years from the Production Commencement Date, fixed as provided in Section 2.1 of the Vehicle Agreement, the parties shall annually discuss whether the allocation of financial responsibility under this Section 4.4 shall be amended, based upon a review of all relevant records which may be lawfully furnished by one party to the others and other appropriate considerations.

- 15 -

disclosure to the other parties hereto as promptly as practicable in advance and, if so requested, furnish them with a copy of such information promptly thereafter.

(c) Subject to any mandatory law, regulation or requirement of any Government Agency or any mandatory court order to the contrary, and subject to Section 5.1(b) hereof, nothing herein contained shall be construed to release any party from its non-disclosure obligations under any of the Other Agreements.

(d) In the event that GM distributes any service parts which are not the Recall Products for use in repair, service or equipping of the Products and decides to conduct any recall or notification campaign relating to such other service parts, GM shall inform Toyota of the particulars in writing as promptly as practicable in advance.

(e) The JV Company hereby designates GM, and GM hereby agrees, to keep and maintain records of the name and address of the first retail purchaser of each Vehicle sold to GM and to keep and maintain records of the tire identification numbers on each Vehicle sold to GM. GM and the JV Company shall consult as to and agree upon the nature and content of any such records and the manner of furnishing to GM a list of Vehicle and tire identification numbers for the Vehicles. If a tire recall campaign is required, GM shall furnish to the appropriate tire supplier such information as may be required in order for such tire supplier to conduct any such recall campaign.

however, that Policy Adjustments relating to the Products shall be rejected or accepted by TMS or its designated marketing units using substantially the same standard of discretion as used by TMS or such marketing units in respect of other comparable automotive vehicles then sold by TMS or such marketing units. After the expiration of three years from the date of commencement by NUMMI of production of the Toyota-Specific Vehicles, the parties shall annually discuss whether the allocation of financial responsibility under this Section 4.4 shall be amended, based upon a review of all relevant records which may be lawfully furnished by one party to the others and other appropriate considerations.

4.5.  <u>Indemnities, Etc.</u>:  Each of the parties hereto shall indemnify the other parties hereto for any damage, cost and expense, including attorney's fees, suffered by any of the other parties due to any breach of any obligation contained in this Agreement.  Nothing contained in Section 4.2, 4.3 or 4.4 shall be construed so that GM, NUMMI or Toyota will be responsible for any claim made under the warranty referred to in Section 4.1 hereof.

V.  <u>GENERAL</u>

5.1.  <u>Treatment of Information, Etc.</u>:  (a) Subject to any mandatory law, regulation or requirement of any Government Agency or any mandatory court order to the contrary, in the event that any party receives any information from another

- 17 -

5.2.   <u>Limitation of Liability</u>:  Except as expressly provided in this Agreement or except to the extent, if any, provided in the Shareholders' Agreement, any of the Other Agreements or any agreement contemplated by the letter agreement referred to in Section 6.3 of the Shareholders' Agreement, in no event shall any party be liable to any other party for any claim, liability, suit, loss, damage, cost or expense which may arise in connection with any defect in any Product, any PL Product or any Recall Product.

5.3.   <u>Suppliers</u>:  It is understood that in no event shall any party be entitled to any recovery from any suppliers, other than, as to GM or Toyota only, any of its respective suppliers, and, as to the JV Company, any of its suppliers other than GM or Toyota, in connection with any financial liability suffered by it under this Agreement.

## VI.   <u>GENERAL PROVISIONS</u>

6.1.   <u>Assignability</u>:  Neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

6.2.   <u>Persons Authorized to Act for the Parties</u>:  Each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties.

- 18 -

6.3.   <u>Notices</u>:   In any case where any notice or other
communication is required or permitted to be given under this
Agreement (including without limitation any change in the
information set forth in this Section) such notice or communi-
cation shall be in writing and (i) personally delivered, (ii)
sent by postage prepaid registered airmail (which notice or other
communication shall be immediately confirmed by a telex marked
"Important"), or (iii) transmitted by electronic facsimile
transfer marked "Important" (which notice or other communication
shall be immediately confirmed by a telex marked "Important") as
follows:

If to Toyota, to:

> Toyota Motor Corporation
> 1, Toyota-Cho, Toyota
> Aichi 471 Japan
> Telex/Answerback:  4528371/TOYOTA J
> Facsimile Model:  UF 520 III
> Facsimile Call No.:  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
> Attention:  General Manager, Overseas Project Office

If to GM, to:

> Chevrolet Motor Division
> General Motors Corporation
> 30001 Van Dyke Avenue
> Warren, Michigan 48090 U.S.A.
> Telex/Answerback:  235547/CHEV CO WARN
> Facsimile Model:  Rapicom 1500
> Facsimile Call No.:  313-492-6842
> Attention:  General Manager

If to the JV Company, to:

> New United Motor Manufacturing, Inc.
> 45500 Fremont Boulevard
> Fremont, California 94537 U.S.A.
> Telex/Answerback:  (To be supplied)
> Facsimile Model:  (To be supplied)
> Facsimile Call No.:  (To be supplied)
> Attention:  Executive Vice President

- 19 -

All such notices or other communications shall be deemed to have
been given or received (i) upon receipt if personally delivered,
(ii) on the tenth business day following posting if by postage
prepaid registered airmail, and (iii) 24 hours following
confirmation by telex with confirmed answerback if notice is
given by electronic facsimile transfer.

6.4.  <u>Third Persons</u>:  Except as contemplated in this
Agreement as to the parties hereto, nothing in this Agreement is
intended or shall be construed to confer upon or to give any
person or entity any legal or equitable rights or remedies under
or by reason of this Agreement.

6.5.  <u>Governing Language</u>:  This Agreement and all
other agreements, instruments and notices that are referred to
herein or are supplementary hereto shall be prepared or fur-
nished in and governed and controlled by the English language.

6.6.  <u>Choice of Law</u>:  This Agreement shall be con-
strued and enforced in accordance with and governed by the laws
of the State of California, without giving effect to the prin-
ciples of conflict of laws thereof.

6.7.  <u>Entire Agreement, Etc.</u>:  This Agreement consti-
tutes the entire agreement of the parties hereto with respect to
the subject matter hereof.  To the extent that provisions in any
of the Prior Agreements (as that term is hereafter defined) are
inconsistent with any provision of this Agreement, this Agreement
supersedes all prior agreements and understandings, oral and
written, among the parties hereto with respect to the subject

matter hereof, including without limitation the Memorandum of Understanding (the "Memorandum"), dated February 17, 1983, as amended, between Toyota and GM and all letter agreements, minutes of meetings and similar documents dated prior to the date hereof to which GM, Toyota or any of their respective representatives are parties (the Memorandum and such letter agreements, minutes and similar documents being referred to herein as the "Prior Agreements").

6.8.  <u>Enforcement of this Agreement</u>:  Each party to this Agreement, solely in connection with any action or pro-ceeding brought by any other party to this Agreement (on its own behalf or on behalf of the JV Company) arising out of or related to this Agreement, hereby (i) agrees that any such action or proceeding shall be brought only in a federal or state court of competent subject matter jurisdiction in the State of California (and no such action or proceeding shall be brought in any other state or country) and (ii) consents to personal jurisdiction in any such court provided that service of process shall be duly made.  Each party hereby agrees that in any such action or proceeding process may be served upon it by any means authorized by applicable statutes, rules, treaties and/or conventions.  In this regard, if such service of process shall be duly made by any means as aforesaid, no party shall contest the same or the personal jurisdiction of any such California court in any court. The parties' obligations under this Section 6.8 shall survive the expiration or termination of this Agreement or the dissolution of

the JV Company.  Nothing herein shall be construed to mean that
any party to this Agreement has hereby submitted to the personal
jurisdiction of any such court in connection with any other
action or proceeding whatsoever.

IN WITNESS WHEREOF, each of the parties has caused
this Agreement to be duly executed on its behalf as of the day
and year first above written.

TOYOTA MOTOR CORPORATION

By _____
                     President

GENERAL MOTORS CORPORATION

By _____
              President
        CHAIRMAN OF THE BOARD

NEW UNITED MOTOR MANUFACTURING,
INC.

By _____
                     President

- 22 -

*Dealer Sales and Service Agreement Reference, Article VII, D*

"General Motors will assume the defense of Dealer and indemnify Dealer against any judgment for monetary damages, less any offset recovered by Dealer, in any lawsuit naming Dealer as a defendant relating to any Product that has not been altered by or for Dealer when the lawsuit concerns:

"(a) Breach of the General Motors warranty related to the Product, bodily injury or property damage claimed to have been caused solely by a defect in the design, manufacture or assembly of a Product by General Motors (other than a defect which should have been detected by Dealer in a reasonable inspection of the Product);

"(b) Failure of the Product to conform to the description set forth in advertisements or product brochures distributed by General Motors because of changes in standard equipment or material component parts unless Dealer received notice of the changes prior to retail delivery of the affected Product by Dealer; or

"(c) Any substantial damage to a Product purchased by Dealer from General Motors which has been repaired by General Motors unless Dealer has been notified of the repair in writing prior to retail delivery of the affected Product.

"If General Motors reasonably concludes that allegations other than those set forth in (a) through (c) above are being pursued in the lawsuit, General Motors shall have the right to decline to accept the defense or indemnify Dealer or, after accepting the defense, to transfer the defense back to Dealer and withdraw its agreement to indemnify Dealer.

"Procedures for requesting indemnification, administrative details, and limitations are contained in the Service Policies and Procedures Manual under 'Indemnification.' The obligations assumed by General Motors are limited to those specifically described in this Section and in the Service Policies and Procedures Manual and are conditioned upon compliance by Dealer with the procedures described in the Manual.

"This Section shall not affect any right either party may have to seek indemnification or contribution under any other contract or by law and such rights are hereby expressly preserved."

## A. PROCEDURE FOR REQUESTING DEFENSE AND INDEMNIFICATION

When Dealer is served with a complaint and believes it may qualify for indemnification, the Dealer shall:

1. Retain the originals for its own insurance company or attorney;

2. Forward copies of the pleadings and all documents in its files relating to the Product involved, together with a transmittal letter, immediately to the

   Office of the General Counsel

   General Motors Corporation

   3044 West Grand Boulevard

   Detroit, Michigan 48202

3. The transmittal letter shall be captioned "INDEMNIFICATION REQUEST," shall set forth the time, date and place of service only and need not set forth any additional facts, reasons or theories as to why General Motors should undertake the defense; and

4. A copy of the transmittal letter shall be forwarded to the Dealer's Zone Office; Attention: Zone Manager.

## B. RESPONSE TO INDEMNIFICATION REQUEST

The request to assume the defense and to indemnify shall be accepted or rejected by General Motors within thirty (30) days following its receipt.

1. Until a request is accepted and an appearance by counsel selected by General Motors to represent Dealer is entered, Dealer remains responsible for its defense in the lawsuit and agrees to take all appropriate action to preserve the defense.

2. If the request is denied or Dealer fails to preserve the defense, Dealer shall continue to be fully responsible for the defense and any judgment which may be rendered against Dealer.

3. If the request is accepted, Dealer shall be responsible for its costs and attorney fees incurred prior to acceptance and Dealer shall cooperate fully in the defense as General Motors may reasonably require.

4. If the request is accepted, Dealer authorizes General Motors to use counsel of its own choosing and to settle the lawsuit at any time at General Motors sole expense.

5. General Motors may, at its election, agree only to indemnify Dealer and require Dealer to conduct its own defense. In the event of such requirement, Dealer shall conduct its own defense and the liability of General Motors will be limited to the out-of-pocket costs of such defense, including reasonable attorneys' fees, together with the amount of any monetary judgment paid by Dealer (or the amount of final settlement paid by Dealer if such amount was approved in advance by General Motors) provided General Motors is promptly notified thereof. If Dealer fails to notify General Motors of such judgment or settlement within twenty (20) days of its entry, General Motors shall be liable only for the costs of the defense.

## C. LIMITATIONS ON OBLIGATION TO DEFEND AND INDEMNIFY

1. General Motors shall have no obligation to defend or indemnify Dealer whenever the lawsuit, in whole or in part, asserts a claim against Dealer based on:

   • Dealer's alleged failure to perform, or negligent performance of inspection, maintenance or repair service on Products or such other motor vehicles as may be sold or serviced by Dealer;

   • Dealer's alleged breach of any contract between Dealer and Dealer's customer;

   • Dealer's alleged misleading statements, misrepresentations, or unfair or deceptive practices; or

   • any other alleged wrongful action or inaction of Dealer.

   In such cases, Dealer shall remain solely responsible for its own defense, including costs and attorneys' fees, and for any judgment rendered against it in such lawsuit, unless otherwise agreed in writing.

2. General Motors shall have no obligation to defend or indemnify Dealer if Dealer fails to request indemnification within fifteen (15) days of service of a complaint or fails to take all reasonable steps to ensure the defense is in no way prejudiced.

3. If for any reason General Motors refuses to assume Dealer's defense and indemnify Dealer, the lawsuit shall be defended by Dealer. If Dealer establishes that General Motors refused to defend and indemnify Dealer when it was obligated to do so under Article VII(D) of the Dealers Sales and Service Agreement and Section I-Part XI of this Manual, then General Motors liability will be limited to the same extent as provided in subsection B(5).