# SECOND AMENDMENT TO
# PRODUCT RESPONSIBILITY AGREEMENT

Toyota Motor Corporation, a corporation organized and existing under the laws of Japan, General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware, and New United Motor Manufacturing, Inc., a corporation organized and existing under the laws of the State of California, hereby agree to amend the Product Responsibility Agreement, dated February 21, 1984, as amended on February 1, 1997 (the "Agreement"), as follows:

1. The following new Paragraph (f) is hereby added to Section 1.1 (Terms Defined in Shareholders' Agreement) of Article I (Definitions):

    "(f) 'OnStar System' means the component parts provided by GM, or suppliers designated by GM, for various services distributed by GM at an additional fee to the purchaser, including a navigation system, phone service, road assistance, emergency, stolen-vehicle tracking, remote door unlocking, and other such services. The OnStar System shall include Motorola Gen6 Module, Dearborn Group On-Star Interface Module, Donnelly On-Star Inner Rearview Mirror, Receptec Combination Antenna, and other parts as separately agreed upon among the parties hereto. GM shall retain any liability for the services provided through the use of the OnStar System."

2. Paragraph (c) of Section 1.1 of Article I of the Agreement is hereby deleted in its entirety and replaced by the following:

    "(c) 'Product' means (i) any Vehicle (except pilot vehicles) supplied by the JV Company and purchased by GM during the period that the JV Company is jointly and equally owned by the GM Group and the Toyota Group pursuant to the Vehicle Agreement and any element of such Vehicle at the time of such supply and purchase and (ii) the OnStar System with which the Vehicle is equipped."

3. The following sentence is hereby added to the end of Paragraph (b) of Section 4.2 (Product Liability) of Article IV (Product Defects) of the Agreement:

    "In the event that the JV Company experiences an increase in its product liability insurance costs due to equipping the Vehicle with the OnStar System, GM agrees to cooperate with the JV Company and make best efforts to develop countermeasures to eliminate such adverse insurance cost impact to the JV Company, including, but not limited to assuming that portion of the increased insurance cost attributable to the OnStar system."

4. Clause (i) of Paragraph (e) of Section 4.2 of Article IV of the Agreement is hereby deleted in its entirety and replaced by the following:

    "(i) any settlement payment or payment to satisfy an adverse judgment of any claim, action or proceeding referred to in Section 4.2(c) hereof which is uninsured, uninsurable or in excess of the limit of liability of any applicable insurance policy purchased by the JV Company shall be apportioned 60% to Toyota and 40% to GM, except that all or any portion of said payment for settlement or judgment, which the parties hereto agree is directly attributable to the OnStar System, or a finding of fact

by a court or jury shows is directly attributable to the OnStar System, shall be apportioned 100% to GM."

5. Clause (ii) of Paragraph (e) of Section 4.2 of Article IV of the Agreement is hereby deleted in its entirety and replaced by the following:

"(ii) GM and Toyota shall bear their respective costs and expenses incurred in connection with cooperation in investigation and litigation pursuant to Section 4.2(c) hereof ("Investigation") which are not covered by any applicable insurance policy purchased by the JV Company, including those incurred for the production of documents and answering of interrogatories but specifically excluding those incurred at the JV Company's request for (A) a dispatch of engineers, (B) a reconstruction test, (C) sample parts and (D) interpreters and/or experts, provided, however, that GM shall reimburse Toyota for costs and expenses incurred at GM's request or with GM's prior consent to reimburse cost and expenses for (A) a dispatch of engineers, (B) a reconstruction test, (C) sample parts and (D) interpreters and/or experts if the said costs and expenses are arising out of the Investigation."

6. The following sentence is hereby added at the end of Paragraph (b) of Section 4.3 (Recall and Notification Campaigns) of Article IV of the Agreement:

"Notwithstanding the foregoing, if such requests, allegations or inquiries relate to the OnStar System, GM shall, in consultation with Toyota and the JV Company, represent the interests of the JV Company and Toyota. In case that such requests, allegations or inquires relate to both the OnStar System and other portions of the Recall Products, the party who shall represent the interests of the other parties shall be separately agreed upon among the parties hereto."

7. The following sentence is hereby added at the end of Paragraph (c) of Section 4.3 of Article IV of the Agreement:

"Notwithstanding the foregoing, if findings by a Government Agency of any safety defect or noncompliance relate to the OnStar System, such negotiations with the Government Agency and any decision on whether to challenge the findings shall be conducted or made by GM in consultation with Toyota and the JV Company. In case that such findings of the safety defect or noncompliance relate to both the OnStar System and other portions of the Recall Product, the party who shall conduct or make such negotiations and decision shall be separately agreed upon among the parties hereto."

8. The following sentence is hereby added at the end of Paragraph (d) of Section 4.3 of Article IV of the Agreement:

"Notwithstanding the foregoing, if a Government Agency requires a recall or notification campaign relating to the OnStar System, GM in consultation with Toyota and the JV Company shall decide whether to conduct such a recall or notification campaign, shall decide the nature of the corrective action to be taken and shall file the relevant reports with the Government Agency. In case that such request for the recall or notification campaign relates to both the OnStar System and other portions of the Recall Products, the party who shall make such decision and filing shall be separately agreed upon among the parties hereto."

9. The following sentence is hereby added at the end of Paragraph (e) of Section 4.3 of Article IV of the Agreement:

"Notwithstanding the foregoing, if as a result of field experience, test data or otherwise, GM determines that it is necessary to conduct a recall or notification campaign relating to the OnStar System, GM in consultation with Toyota and the JV Company shall decide whether to conduct a recall or notification campaign related to the OnStar System and the nature thereof. If GM decides to conduct a recall or notification campaign, GM, after consultation with Toyota and the JV Company, shall also file relevant reports with the Government Agency and conduct a recall or notification campaign relating to the OnStar System. In case that the recall or notification campaign relates to both the OnStar System and other portions of the Recall Product, the party who shall make such decision and filing shall be separately agreed upon among the parties hereto."

10. The following sentence is hereby added at the end of Paragraph (f) of Section 4.3 of Article IV of the Agreement:

"Notwithstanding the foregoing, all costs of a recall or notification campaign directly attributable to the OnStar System, whether mandatory or voluntary, and all costs and expenses of such corrective actions, and any penalty, fine or other assessment, whether GM shall decide not to or is unable to contest, directly attributable to the OnStar System shall be apportioned 100% to GM."

11. The following sentence is hereby added at the end of Section 4.4 (Off Warranty) of Article IV of the Agreement:

"Notwithstanding the foregoing, all costs, expenses and liabilities incurred in connection with the Policy Adjustment directly attributable to the OnStar System shall be apportioned 100% to GM and such apportionment shall not be subject to the above annual review."

12. This Amendment shall be effective as of April 26, 2004. The parties hereto agree that such allocation of responsibilities relating to the OnStar System as agreed herein shall be discussed and reviewed by the parties hereto at every timing of full model change of the Vehicle if any party thinks it necessary to be reviewed.

3                                               CONFIDENTIAL FINAL

**IN WITNESS WHEREOF,** the parties have caused three copies of this Amendment to be executed by their duly authorized representatives.

**TOYOTA MOTOR CORPORATION**

By: _[signature]_
Name: _____
Title: _____

**GENERAL MOTORS CORPORATON**

By: _[signature]_
Name: _____
Title: _____

**NEW UNITED MOTOR MANUFACTURING, INC.**

By: _[signature]_
Name: _____
Title: _____

CONFIDENTIAL FINAL