## SERVICE PARTS SUPPLY AGREEMENT BETWEEN NEW UNITED MOTOR MANUFACTURING, INC. AND GM SERVICE PARTS OPERATIONS

This Agreement is entered into by and between New United Motor Manufacturing, Inc., a corporation organized and existing under the laws of the State of California (hereinafter referred to as ("NUMMI"), and General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware (hereinafter referred to as "GM", collectively "GM" and "NUMMI" will be hereinafter referred to as "The Parties"), the following articles being agreed upon, this __17__ day of June, 2008

### DEFINITIONS

1.1     Definitions:  When used in this agreement, each of the following terms shall have the meaning mentioned below.

(a) "Toyota" means Toyota Motor Corporation, a corporation organized and existing under the laws of Japan.

(b) "Vehicle(s)" means the automotive vehicle(s) including its optional equipment manufactured for sale to GM by NUMMI under license from Toyota.

(c) "Product(s)" and or "Part(s)" means the component(s) manufactured or assembled by NUMMI for use in the service, repair or equipping of the Vehicles as covered by the GM blanket purchase order which is agreed to by The Parties.

(d) "Shareholders' Agreement" means the Shareholders' Agreement, dated February 21, 1984, among Toyota, GM and NUMMI.

(e) "PRA" means the Product Responsibility Agreement, dated February 21, 1984, among Toyota, GM and NUMMI

(f) "Leases" means any lease of Machinery and Equipment between NUMMI and any third party concerning the tooling for the manufacture of products covered by this agreement

### II. SUPPLY AND PURCHASE ARRANGEMENTS

2.1     General Understanding: The general principles contained in this Article II will apply to supply and purchase arrangements under this Agreement.

2.2.    Annual Review: The Parties will review this Agreement and the Service Parts Purchase Manual on an annual basis prior to the 31st day of March of each fiscal year. Any material changes should be agreed to by the Parties in writing and memorialized in an amendment to this Agreement.

2.3     Supply and Purchase:

(a)     Except as provided in Section 2.3 (b), NUMMI shall, upon and subject to the terms and conditions of this Agreement, supply the Products required by GM for the service, repair or equipping of

the Vehicles during the term of this Agreement, provided that GM purchases all of its requirements of the Products solely from NUMMI.

(b)  When NUMMI discontinues or desires to discontinue the manufacture or procurement of any products during the term of this Agreement or when this Agreement terminates, NUMMI and GM shall, upon request of either party which shall be made within 30 days from NUMMI's notice of such discontinuance or desire to discontinue, negotiate;

(i) An assignment to GM of NUMMI's rights under the leases to use or purchase the tooling for the manufacture of the Products concerned,

(ii) A sale or transfer to GM or its designee, or TMC or its designee, the tooling then owned by NUMMI for the manufacture of the Products concerned. If GM pursues the purchase or transfer of the tooling for the manufacture of past model service parts, the sale or transfer price of the tooling will be negotiated between NUMMI and GMSPO (for example, a 5% of original tool asset cost plus 5% handling fee was mutually agreed upon for GM purchases of several 2008 Vibe build out tools),

(iii) A onetime purchase by GM of such Products to cover reasonable estimate of GM's further service requirements, or,

(iv) Such other arrangements as may be mutually agreed.

2.4   Part Numbers:   The part numbers to be used by the parties for the supply and purchase transactions hereunder shall be the part numbers which Toyota assigns for the purpose of such transactions. The conversion of said part numbers into those assigned by GM shall be made by GM on its own account.

### III. TERMS AND CONDITIONS OF SUPPLY AND PURCHASE

3.1   Order and Acceptance:
(a)   NUMMI will sell to GMSPO goods necessary for it to fulfill its current model service and replacement parts requirements for all GM/NUMMI vehicle programs during the required service period based on schedules provided by GMSPO. Generally, GMSPO makes replacement parts available for a period of 10 years following the vehicle's last production year. The 10-year period is impacted by many factors and is subject to GMSPO's Stop Buy and Removal Policy. GMSPO and NUMMI agree to periodically review the service parts supplied by NUMMI to determine which parts no longer have a service requirement

(b)   Transmission of order information from GMSPO

(i) GMSPO transmits all stock orders via EDI transmission weekly.  Actual transmission occurs on Saturday.

(ii) GMSPO transmits sixteen (16) weeks of order information including thirteen (13) weeks of firm orders and three (3) weeks of forecasted orders. The three (3) weeks of forecasted orders are for planning purposes only and should not be considered a firm order. Upon the request of NUMMI, GM agrees to provide an eighteen (18) month forecast and/or twenty-four (24) month sales history.

(iii) If an order is incorrectly transmitted by GMSPO, NUMMI should be contacted as soon as possible to request order cancellation or change. Contacting NUMMI should not be considered a guarantee of order cancellation/change, as change/cancellations are only available in rare exception situations.

(iv) GMSPO will communicate Emergency Orders (e.g. UCO's) to NUMMI's Production Control (PC) Group on a daily basis via e-mail upon review of inventory levels. The expectation is that NUMMI will fill orders as soon as possible based on availability. Orders will be given high priority within NUMMI system.

(v) GMSPO SPAC department will communicate VOR/SPAC Cases to the appropriate NUMMI Department via e-mail as indicated in the GMSPO/NUMMI Service Parts Purchase Manual Section 3.2. VOR/ SPAC are emergency orders for direct delivery to dealer. NUMMI will ship overnight via Fed Ex using the 3rd party billing account provided by GM.

(vi) GMSPO will place orders in standard pack quantities where mutually agreed upon by GMSPO and NUMMI.

3.2  **NUMMI Service Parts Purchase Manual:** NUMMI and GM may agree upon a purchase of procedures manual which shall set forth the specific manner of order and acceptance, pricing, delivery, packaging and other procedures relating to the supply and purchase of the Products (hereinafter referred to as the "Manual").

3.3  **Prices:** NUMMI shall establish and may from time to time change the prices of the Products which it sells to GM. Upon request of GM, NUMMI and GM shall negotiate mutually agreeable adjustments to such prices. Unless otherwise agreed, the prices shall be F.O.B. NUMMI, stated in United States dollars. In no event shall the prices for the Products exceed then current net dealer prices less 55% for comparable products sold by Toyota dealers in the United States, for the service, repair or equipping of the automotive vehicles manufactured or sold by Toyota.

3.4  **Packages:** For the supply and purchase transactions hereunder, the Products shall be packed in accordance with the specifications and other conditions set forth in the Packaging Requirements Section referenced in the Manual or as otherwise agreed to by the parties.

3.5  **Delivery of Products:** The Products shall be delivered to GM F.O.B. NUMMI; at which time title to and risk of loss shall pass from NUMMI to GM

3.6  **Payment:**

(a)  Payment for shipments into GMSPO warehouse facilities will be made base on the payment term of GM MNS-2 Date (Multilateral Netting System - 2nd day of the 2nd month on average) from date of receipt by GMSPO for all parts and accessories.

(b)  Payments shall be net of returns or corrections to invoices, under the terms and conditions as defined in the Manual or as otherwise agreed to by the parties.

(c)  NUMMI shall render invoices promptly after shipment of products. Invoices from NUMMI shall cover individual shipment of Products to GM in the form set forth in the Manual or as otherwise agreed to by the parties.

(d)    If any payment to NUMMI by GM under this Agreement is delayed, as a result of GM's fault or negligence, GM shall pay interest to NUMMI on each such delayed payment at the rate provided in Section 7.2 of the Shareholders' Agreement.

3.7    Declaration of Incorrect, Short, Surplus or Defective Item

(a)    If any incorrect, short, surplus or defective item is found in the Products delivered to GM, it shall be handled and settled within the scope of and in accordance with the Manual; provided that no claim shall be accepted by NUMMI unless made by GM within seventy five (75) days after delivery of the Products concerned.

(b)    If GM fails to make claims for any incorrect, short, surplus or defective items against NUMMI within the time limit stipulated in section 3.7 (a) hereof, any right of GM to make claims for any incorrect, short, surplus or defective items shall be forfeited.

(c)    Nothing in this Agreement shall affect the rights and obligations of the parties as provided under Section IV of the Products Responsibility Agreement (PRA).

3.8    Design and Specification Change: When Toyota in conjunction with NUMMI considers it necessary or appropriate to change and improve the design or specifications of the Products, NUMMI may, in accordance with the terms of the Part Engineering Change Manual or any other revision thereof agreed upon by NUMMI, Toyota and GM, discontinue producing the Products of existing design and specifications, or change and improve the design or specifications of the Products.

3.9    Confidentiality and Antitrust Protections: During the term of this Agreement, GM and NUMMI may disclose to each other confidential information. This confidential information may include, but is not limited to, information regarding past, present and future business activities (including proprietary information related to intellectual property, research, development, business plans, business operations, or internal systems), and may be contained on paper, computer disk or other electronic medium, or communicated orally. All Confidential Information is proprietary, and the parties shall:

(a) use Confidential Customer Information only in the performance of this Agreement;

(b) not make copies of any Confidential Information without consent of the other party;

(c) not use or disclose any Confidential Information to any third party without consent;

(d) limit dissemination of Confidential Information to employees and/or contractors as necessary to perform under this Agreement;

(e) not share any part specs, pricing or purchasing information or any Confidential information about vehicle programs, other than the specific parts developed for the NUMMI Joint Venture vehicle;

3.10    Intellectual Property: NUMMI represents and warrants that, to the knowledge of responsible officials of NUMMI to date, there is no reason to believe that the manufacture, use or sale of parts will ever be in violation of any third party patent. Should any patent infringement claim arise, the parties will mutually cooperate in any investigation and defense against such claim. In no event shall either party have any claim or right of action against the other party arising out of any such patent infringement claim except in the event of a breach of the representation and warranty set forth in the first sentence of this section 3.10.

3.11    Warranty and Indemnification:

(a) NUMMI warrants to GM that upon delivery of the products to GM, GM shall have good and marketable title to the Products delivered to GM.

(b) THE OBLIGATIONS OF NUMMI SET FORTH IN THE PRA AND SECTIONS 3.7 (A), 3.9 AND 3.10 (A) HEREOF ARE EXCLUSIVE AND IN Lieu of any other express or implied warranties, including without limitation, any implied warranty of merchantability or fitness for a particular purpose.

(c) All representations, warranties and indemnities, liabilities and disclaimers and limitations of the foregoing made, furnished or imposed herein or arising hereunder shall survive any termination of this Agreement.

## IV. GENERAL PROVISIONS

4.1    Assignability: Neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

4.2    Force Majeure: Any delay in or failure of the performance of either party hereunder shall be excused if and to the extent caused by occurrences beyond such party's control, governmental regulations, policies or actions; suspension of bank operations; any labor, material, transportation or utility shortage or curtailment; or any labor trouble in the manufacturing plants of NUMMI or any of its suppliers.

4.3    Limitations of Liability: Except as specifically provided in this Agreement or the PRA, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, WHETHER BASED UPON BREACH OF CONTRACT, BREACH OF EXPRESS OR IMPLIED WARRANTY, TORT, STRICT LIABILITY OR OTHERWISE.

4.4    Notices: Where any notice or other communication is required or permitted to be given under this Agreement, (including without limitation any change in the information set forth in this Section) such notice or communication shall be in writing and (i) personally delivered, (ii) sent by postage prepaid registered airmail (which notice or other communication shall be immediately confirmed by a telex marked "Important") or (iii) transmitted by electronic e-mail marked "important" (which notice or other communication shall be immediately confirmed by a response to original e-mail ("Important") as follows:

If NUMMI, to:

> New United Motor Manufacturing, Inc.
> 45500 Fremont, California 94538 U.S.A
> Attention: Linda McColgan
> Title: General Manager of General Affairs, IT, Purchasing and Corporate Planning
> Phone: (510) 498 - 5534
> Email: LMcColgan@nummi.com

If to GM, to:

    GMSPO World Headquarters
    General Motors Corporation
    6200 Grand Pointe Drive
    Grand Blanc, Michigan 48439 U.S.A.

    Attention: H.M. Ray
    Title: Director of Global Aftersales Supply Chain and Logistics
    Phone: (810) 606-2660
    Email:  h.m.ray@gm.com

All such notices or other communications shall be deemed to have been given or receive (i) upon receipt of personally delivered, (ii) on the tenth (10) business day following posting if by postage prepaid registered airmail, and (iii) twenty-four (24) hours following confirmation by e-mail with confirmed answerback if notice is given by electronic e-mail transfer.

    4.5    <u>Third Persons</u>: Except as contemplated in this Agreement as to the parties hereto, nothing in this Agreement is intended or shall be construed to confer upon or to give any person or entity any legal or equitable rights or remedies under or by reason of this Agreement.

    4.6    <u>Choice of Law</u>: This Agreement shall be construed and enforced in accordance with and governed by the laws of the state of California, without giving effect to the principles of conflict of laws thereof.

    4.7    <u>Entire Agreement, etc.</u>: This Agreement constitutes the entire agreement between the parties. To the extent that provisions in any of the prior Agreements (as that term is hereafter defined) are inconsistent with any provision of this Agreement, this Agreement supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof, including without limitation the Memorandum of Understanding (the "Memorandum "), dated February 17, 1983 as amended, between Toyota and GM and all agreements, letter agreements, minutes of meetings and similar documents to which NUMMI, GM Toyota or any of their respective representatives are parties (the Memorandum and such agreements, letter agreements, minutes and similar documents being referred to herein as the "Prior Agreements").

    4.8    <u>Persons Authorized to Act</u>: Each change, variation or modification of this Agreement shall be effective only when made in writing and signed by an authorized officer or representative of each of the parties.

    4.9    <u>Arbitration</u>: Any dispute arising between the parties hereto in connection with this Agreement shall be settled by arbitration. The arbitration shall be held in Fremont, California in accordance with the rules of the American Arbitration Association. The award rendered by the arbitrator shall be final. An action or proceeding to enforce such award may be brought in any court of competent jurisdiction. The costs of any such arbitration proceeding shall be allocated as the arbitrator decides.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

| NEW UNITED MOTOR MANUFACTURING, INC | GENERAL MOTORS CORPORATION |
|---|---|
| By: *(signature)* <br> L. McColgan <br> General Manager <br> General Affairs, IT, Purchasing and Corporate Planning | By: *(signature)* <br> H.M. Ray <br> GM Service and Parts Operations <br> Director of Global After Sales Supply Chain and Logistics |