SUBSCRIPTION AGREEMENT

by and among

NEW UNITED MOTOR MANUFACTURING, INC.,

TOYOTA MOTOR CORPORATION

and

GENERAL MOTORS CORPORATION

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | GM SUBSCRIPTION | | 2 |
| | Section 1.1. | GM Subscription for Series B Shares | 2 |
| | Section 1.2. | GM Deliveries, Etc. | 3 |
| | Section 1.3. | Issuance of Series B Shares | 3 |
| | Section 1.4. | Prorations | 4 |
| | Section 1.5. | Certain Representations, Warranties and Covenants Relating to the Fremont Property | 4 |
| | Section 1.6. | Title and Risk of Loss | 9 |
| II. | TOYOTA SUBSCRIPTION | | 9 |
| | Section 2.1. | Toyota Subscription for Series A Shares | 9 |
| | Section 2.2. | Issuance of Series A Shares | 10 |
| III. | CALLS ON SHARES | | 10 |
| | Section 3.1. | Legends | 10 |
| | Section 3.2. | Calls for Payment of Subscriptions | 11 |
| IV. | GENERAL PROVISIONS | | 12 |
| | Section 4.1. | Assignability | 12 |
| | Section 4.2. | Persons Authorized to Act for the Parties | 12 |
| | Section 4.3. | Notices | 12 |
| | Section 4.4. | Third Persons | 14 |
| | Section 4.5. | Governing Language | 14 |
| | Section 4.6. | Choice of Law | 14 |
| | Section 4.7. | Entire Agreement, Etc. | 14 |
| | Section 4.8. | Enforcement of this Agreement | 15 |
| LIST OF ANNEXES | | | 18 |

# SUBSCRIPTION AGREEMENT

This Subscription Agreement (this "Agreement") is made and entered into on and as of this 21st day of February, 1984 by and among New United Motor Manufacturing, Inc., a close corporation organized and existing under the laws of the State of California (the "JV Company"), Toyota Motor Corporation, a corporation organized and existing under the laws of Japan ("Toyota"), and General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware ("GM");

## WITNESSETH:

WHEREAS, the JV Company was organized as a close corporation pursuant to the General Corporation Law of California (the "GCL") on December 23, 1983; and

WHEREAS, the JV Company, which is under the joint control of, but is separate and distinct from, GM and Toyota, was formed for the limited purpose of manufacturing in the United States a specific automotive vehicle not heretofore manufactured and certain components related thereto;

NOW, THEREFORE, the parties hereto agree as follows:

- 1 -

I. GM SUBSCRIPTION

1.1. GM Subscription for Series B Shares: GM hereby subscribes for 10,000 Series B Shares of Common Stock, without par value (the "Series B Shares"), of the JV Company, which shares shall be paid for as hereafter provided by (a) cash payments of (U.S.) $11,000,000 in the aggregate and (b) the transfer (by contribution rather than sale) by GM to the JV Company of the real property (the "Fremont Property"), which is valued for purposes of this Agreement at (U.S.) $89,000,000, consisting of:

> (i) certain land and all existing appurtenant rights, privileges and easements belonging to said land (the "Fremont Land");
>
> (ii) the buildings and other improvements presently located on the Fremont Land (the "Fremont Buildings"); and
>
> (iii) certain new easements for use in connection with the Fremont Land and the Fremont Buildings;

all of which are identified in Annex A attached hereto. In connection with such subscription, GM hereby represents and warrants that it is purchasing such Series B Shares for its own account for investment and not with a view to or for sale in connection with any distribution thereof.

1.2. <u>GM Deliveries, Etc.</u>:  In order to effectuate the transfer of the Fremont Property, GM, at its expense, shall on or as soon as practicable after the date of this Agreement:

(a) Deliver to the JV Company the exclusive possession of the Fremont Property, subject to the exceptions contained in Section 1.5(f) hereof and in Schedule B of the form of title insurance policy referred to in Section 1.2(d) hereof;

(b) Deliver to the JV Company evidence that (i) the Corporation Quitclaim Deed in the form of Annex B attached hereto (the "Deed") has been recorded and (ii) the Easement Agreements in the forms attached hereto as Annex C have been recorded;

(c) Pay any applicable federal, state, county and local transfer and other taxes, fees and any other expenses due and payable by it in connection with the conveyance of the Fremont Property to the JV Company; and

(d) Deliver to the JV Company an ALTA (Form B-1970) owner's extended coverage policy of title insurance issued by Ticor Title Insurance Company of California in the form and in the amount of the pro forma title insurance policy attached hereto as Annex D.

1.3. <u>Issuance of Series B Shares</u>:  The JV Company shall issue to and in the name of GM 10,000 Series B Shares.

- 3 -

GM shall contribute to the JV Company the sum of (U.S.) $100.00 per share in cash (total (U.S.) $1,000,000.00) at the initial issuance of such Series B Shares to GM. Until fully paid for, such shares shall be subject to further call in the amount of (U.S.) $9,900.00 per share, (U.S.) $8,900.00 per share of which shall be paid pursuant to the consummation of the transactions set forth in Section 1.2 hereof. The JV Company shall certify the relevant share certificate that an additional (U.S.) $89,000,000 has been contributed promptly after the consummation of the transactions set forth in Section 1.2 hereof.

1.4. <u>Prorations</u>: All general and special real property taxes and assessments (including without limitation escape assessments assessed in the future) shall be prorated as of the date of the recording of the Deed between GM and the JV Company on an equitable basis as agreed to after the date hereof by GM and the JV Company.

1.5. <u>Certain Representations, Warranties and Covenants Relating to the Fremont Property</u>: (a) As provided in the letter agreement, dated the date hereof, among the JV Company, GM and Toyota, certain repairs and other work have been and shall be made and performed in respect of the Fremont Buildings at the cost and expense of the parties identified and otherwise on the terms provided therein. The JV Company has examined the Fremont Property and, except as provided in such

- 4 -

letter agreement as to repairs and other work, is satisfied with the condition of the same (including without limitation the Fremont Buildings and the electrical, plumbing, heating, sanitation, sewer, ventilation, mechanical, waste disposal, environmental control and similar systems therein or thereto) and accepts the conveyance of the Fremont Property in an "as is" condition as of the date of this Agreement.

(b)  GM represents and warrants to the JV Company that, to the knowledge of the responsible GM officials, there are no zoning or similar land use laws, regulations or governmental requirements applicable to the Fremont Property with which the Fremont Property is not in compliance in all material respects as of the date hereof.

(c)  GM represents and warrants to the JV Company that, to the knowledge of the responsible GM officials, GM's operation of the Fremont Property prior to the date hereof as a motor vehicle assembly plant was in compliance in all material respects with all laws, regulations or other requirements relating to the discharge of matter into the environment, the application of which, if GM had not been in such compliance, would have had a materially adverse effect upon GM's operation of the Fremont Property as a motor vehicle assembly plant, provided, however, that no representation or warranty is made by GM hereby with respect to the installation, operation or maintenance of, or

- 5 -

discharge of matter into, the waste holding (settling) pond located on the Fremont Property.

(d)  GM has transferred to the JV Company all governmental and other permits and licenses relating solely to the Fremont Property which GM has the legal right to transfer without the consent or approval of any other person, corporation or other entity or any government or governmental agency, authority or instrumentality (collectively, "Person") and without the payment of any charge or fee to any person therefor, and, at the request of and in conjunction with the JV Company, GM shall cooperate with the JV Company in obtaining any consent or approval required for the transfer of any other governmental or other permit or license relating solely to the Fremont Property to the JV Company and in obtaining any permits or licenses necessary for the intended use by the JV Company of the Fremont Property, provided, however, that GM shall have no obligation hereunder or otherwise to incur any financial expense or liability to any such Person in connection therewith.

(e)  The representations and warranties set forth in Sections 1.5(b), 1.5(c) and 1.5(d) hereof shall terminate without further action upon the expiration of one year following the start of production of vehicles to be manufactured by the JV Company for sale to GM ("Production Commencement Date").

(f)  GM represents and warrants to the JV Company that

- 6 -

GM has not previously conveyed the Fremont Property, or any right, title or interest therein, to any person or entity other than the JV Company and that the Fremont Property will be, at the time the Deed is recorded as contemplated by Section 1.2 hereof, free from encumbrances done, made or suffered by GM or any person or entity claiming under GM, provided, however, that the foregoing representations and warranties in this Section 1.5(f) are subject to the following:

    (i)  the lien of property taxes and assessments, both general and special, not now delinquent;

    (ii) easements, conditions, restrictions and other matters of record;

    (iii)  matters disclosed by the pro forma ALTA Survey Map (a copy of which is attached hereto as part of Annex D); and

    (iv)  mechanics' liens (inchoate or of record) on the Fremont Property, to the extent the same are covered by the policy of title insurance (or indorsements to it) referred to in Section 1.2(d) hereof.

GM has entered into or will enter into a certain agreement with the City of Fremont, California relating to alternative access for Parcel 3 of the Parcel Map attached hereto as Schedule A of Annex A. In this regard, GM hereby represents and warrants to the JV Company that said certain agreement has not been recorded

- 7 -

nor will be recorded before consummation of all recordations referred to in Section 1.2(b) hereof and that said certain agreement will in no way affect the JV Company.
The representations and warranties of GM in this Section 1.5(f) shall survive the consummation of the transactions set forth in Section 1.2 hereof and the expiration or other termination of this Agreement. They are for the benefit of and may be enforced solely by the JV Company and any member of the Toyota Group (as that term is defined in Section 1.1(m) of the Shareholders' Agreement, dated the date hereof, among the parties hereto) which is or becomes at any time hereafter the holder of any interest in all or any part of the Fremont Land.

(g) If requested in writing by the JV Company within one year following the Production Commencement Date, GM shall deliver to the JV Company such presently existing plans, drawings, specifications and operating and repair manuals relating to the Fremont Buildings and soil reports relating to the Fremont Land to the extent that the foregoing are located on the Fremont Property as of the date hereof or are locatable by GM without, in the sole discretion of GM, unreasonable effort or expense.

(h) It is understood that GM owns and is maintaining water pipeline servicing the Fremont Property in certain land described in Annex E attached hereto without express license by

- 8 -

the owner of said land. GM hereby quitclaims and forever releases to the JV Company all of GM's interest in said water pipeline and related appurtenances, and hereby agrees to obtain for the JV Company from the owner of said land a water pipeline license or easement to enable the JV Company to use and enjoy the benefits of such water pipeline.

1.6. <u>Title and Risk of Loss</u>: Title to and risk of loss of the Fremont Property shall pass to the JV Company upon the consummation of the transactions set forth in Section 1.2 hereof. Consequently, in the event that there occurs, after the date hereof but before said consummation, any material damage from fire or other casualty to the Fremont Property, GM shall repair the same at its expense as promptly as possible pursuant to plans prepared by GM and approved by the JV Company.

## II.   TOYOTA SUBSCRIPTION

2.1. <u>Toyota Subscription for Series A Shares</u>: Toyota hereby subscribes for 10,000 Series A Shares of Common Stock, without par value (the "Series A Shares"), of the JV Company, which shares shall be paid for as hereafter provided. In connection with such subscription, Toyota hereby represents and warrants that it is purchasing such Series A Shares for its own account for investment and not with a view to or for sale in connection with any distribution thereof.

2.2.  **Issuance of Series A Shares**:  The JV Company shall issue to and in the name of Toyota 10,000 Series A Shares. Toyota shall contribute to the JV Company the sum of (U.S.) $100.00 per share (total (U.S.) $1,000,000.00) at the initial issuance of such Series A Shares to Toyota.  Until fully paid for, such shares shall be subject to further call in the amount of (U.S.) $9,900.00 per share as provided in Section 3.2 hereof. Toyota's contribution hereunder or any part thereof may be made either in United States Dollars or in Japanese Yen.  If Toyota's contribution is made in Japanese Yen, Toyota shall provide sufficient funds in Japanese Yen such that, when converted into United States Dollars at the telegraphic transfer middle rate quoted by the head office of the Bank of Tokyo at 10:00 A.M. (Japan Time) on the date of any such contribution, the amounts in United States Dollars to be contributed shall be obtained.

### III.  CALLS ON SHARES

3.1.  **Legends**:  Until either the Series A Shares or the Series B Shares, as the case may be, are fully paid, each certificate representing any of such shares shall bear the legends required by law and legends referred to in Sections 417, 418(a) and 418(c), or any successor provisions, of the GCL, provided, however, that upon the receipt by the JV Company of each payment for such shares, the subscriber shall be entitled to

have its certificates representing such shares appropriately endorsed by the JV Company to reflect the aggregate amount paid on each share represented thereby and the extent, if any, to which each share remains liable to further call. At such time as either the Series A Shares or the Series B Shares, as the case may be, are fully paid, the holder thereof shall be entitled to receive from the JV Company in exchange for the previously issued certificates, a new certificate or certificates for such shares removing such legends and all references to such shares having been subject to further call.

    3.2. <u>Calls for Payment of Subscriptions</u>: The JV Company may, from time to time, by resolution of its Board of Directors, call for all or any part of the remainder of the consideration to be paid for each and any share in accordance with the following:

    (a) A call for contribution by GM of the Fremont Property shall be made contemporaneously with the issuance of Series B Shares in accordance with the first sentence of Section 1.3 hereof.

    (b) A call or calls for one or more cash contributions of (U.S.) $89,000,000 in the aggregate with respect to Series A Shares, being the total amount to be contributed by Toyota at call less (U.S.) $10,000,000 referred to in Section 3.2(c) below, shall be made after the consummation

- 11 -

of the transactions set forth in Section 1.2 hereof and upon the determination by the Board of Directors of the JV Company that any such one or more cash contributions is necessary to meet the cash requirements of the JV Company.

(c) After Toyota shall have contributed an aggregate of (U.S.) $89,000,000 with respect to Series A Shares pursuant to Section 3.2(b) hereof, calls for contributions by GM and Toyota of (U.S.) $1,000.00 per share on, respectively, the Series B Shares and the Series A Shares shall be made equally and ratably.

## IV. GENERAL PROVISIONS

4.1. <u>Assignability</u>: Except to the extent resulting from a permitted transfer of shares, neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

4.2. <u>Persons Authorized to Act for the Parties</u>: Each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties.

4.3. <u>Notices</u>: In any case where any notice or other communication is required or permitted to be given under this Agreement (including without limitation any change in the

information set forth in this Section) such notice or communication shall be in writing and (i) personally delivered, (ii) sent by postage prepaid registered airmail (which notice or other communication shall be immediately confirmed by a telex marked "Important"), or (iii) transmitted by electronic facsimile transfer marked "Important" (which notice or other communication shall be immediately confirmed by a telex marked "Important") as follows:

If to Toyota, to:

>   Toyota Motor Corporation
>   1, Toyota-Cho, Toyota
>   Aichi 471 Japan
>   Telex/Answerback:   4528371/TOYOTA J
>   Facsimile Model:    UF 520 III
>   Facsimile Call No.: 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
>   Attention:  President

If to GM, to:

>   General Motors Corporation
>   3044 West Grand Boulevard
>   Detroit, Michigan 48202 U.S.A.
>   Telex/Answerback:   425543/GM COMM DET
>   Facsimile Model:    RAPICOM 1500
>   Facsimile Call No.: 313-556-6188
>   Attention:  Chairman of the Board

If to the JV Company, to:

>   New United Motor Manufacturing, Inc.
>   45500 Fremont Boulevard
>   Fremont, California 94537 U.S.A.
>   Telex/Answerback:   (To be supplied)
>   Facsimile Model:    (To be supplied)
>   Facsimile Call No.: (To be supplied)
>   Attention:  President

- 13 -

All such notices or other communications shall be deemed to have been given or received (i) upon receipt if personally delivered, (ii) on the tenth business day following posting if by postage prepaid registered airmail, and (iii) 24 hours following confirmation by telex with confirmed answerback if notice is given by electronic facsimile transfer.

4.4. *Third Persons*: Except as contemplated in this Agreement as to the parties hereto and except as provided in Section 1.5(f) hereof, nothing in this Agreement is intended or shall be construed to confer upon or to give any person or entity any legal or equitable rights or remedies under or by reason of this Agreement.

4.5. *Governing Language*: This Agreement and all other agreements, instruments and notices that are referred to herein or are supplementary hereto shall be prepared or furnished in and governed and controlled by the English language.

4.6. *Choice of Law*: This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

4.7. *Entire Agreement, Etc.*: This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof. To the extent that provisions in any of the Prior Agreements (as that term is hereafter defined) are

- 14 -

inconsistent with any provision of this Agreement, this Agreement supersedes all prior agreements and understandings, oral and written, among the parties hereto with respect to the subject matter hereof, including without limitation the Memorandum of Understanding (the "Memorandum"), dated February 17, 1983, as amended, between Toyota and GM and all letter agreements, minutes of meetings and similar documents dated prior to the date hereof to which GM, Toyota or any of their respective representatives are parties (the Memorandum and such letter agreements, minutes and similar documents being referred to herein as the "Prior Agreements").

  4.8. <u>Enforcement of this Agreement</u>: Each party to this Agreement, solely in connection with any action or proceeding brought by any other party to this Agreement (on its own behalf or on behalf of the JV Company) arising out of or related to this Agreement, hereby (i) agrees that any such action or proceeding shall be brought only in a federal or state court of competent subject matter jurisdiction in the State of California (and no such action or proceeding shall be brought in any other state or country) and (ii) consents to personal jurisdiction in any such court provided that service of process shall be duly made. Each party hereby agrees that in any such action or proceeding process may be served upon it by any means authorized by applicable statutes, rules, treaties and/or

conventions. In this regard, if such service of process shall be made by any means as aforesaid, no party shall contest the same or the personal jurisdiction of such California court in any court. The parties' obligations under this Section 4.8 shall survive the expiration or termination of this Agreement or the dissolution of the JV Company. Nothing herein shall be construed to mean that any party to this Agreement has hereby submitted to the personal jurisdiction of any such court in connection with any other action or proceeding whatsoever.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be duly executed on its behalf as of the day and year first above written.

NEW UNITED MOTOR MANUFACTURING, INC.

By _____
            President

TOYOTA MOTOR CORPORATION

By _____
         Chairman of the Board

GENERAL MOTORS CORPORATION

By _____
         Chairman of the Board

List of Annexes

| | |
|---|---|
| Annex A | Description of the Fremont Property |
| | Schedule A — Copy of Parcel Map 4138, Filed January 24, 1984, in Book 141 of Parcel Maps at Pages 99 & 100, Official Records of Alameda County, California |
| | Schedule B — Legal Description of the Fremont Land |
| | Schedule C — Location Map and List of the Fremont Buildings |
| | Schedule D — Legal Description of Easement Areas (As Shown on ALTA Survey Map Included as Part of Form I of Annex D Below) |
| Annex B | Form of Corporation Quitclaim Deed |
| Annex C | Forms of Easement Agreements for the JV Company's Operation |
| | Schedule A — Easement Agreements for Roadway Access |
| | Schedule B — Easement Agreements for Water Pipeline |
| Annex D | Forms of Title Insurance Policy |
| | Form I — ALTA Owner's Extended Coverage Policy with Endorsements (Including ALTA Survey Map) |
| | Form II — Reinsurance Agreements |
| | Form III — Direct Access Agreements |
| Annex E | Description of Water Pipeline Area (Southern Pacific Company) |

- 18 -