GENERAL MOTORS COMPONENT SUPPLY AGREEMENT

Between

GENERAL MOTORS CORPORATION

and

NEW UNITED MOTOR MANUFACTURING, INC.

GENERAL MOTORS COMPONENT SUPPLY AGREEMENT

This Agreement is entered into by and between General Motors Corporation, a corporation organized and existing under the laws of the State of Delaware (hereinafter referred to as "GM"), and New United Motor Manufacturing, Inc., a corporation organized and existing under the laws of the State of California (hereinafter referred to as "NUMMI") this 24th day of October, 1988.

## I. DEFINITIONS

1.1. Definitions: In addition to the terms which have been previously, or are hereafter, defined herein, the following terms shall have the following meanings when used herein with initial capital letters:

(a) "Agreement Term" means the term of this Agreement as defined in Section 2.1 hereof.

(b) "Component(s)" means such items with respect to Vehicles and Optional Equipment as GM may agree to supply hereunder.

(c) "Optional Equipment" shall have the meaning set forth in Section 3.2 of the Vehicle Agreement.

(d) "PRA" shall mean the Product Responsibility Agreement, dated February 21, 1984, among Toyota Motor Corporation, GM and NUMMI and the Product Responsibility Agreement for Toyota Specific Vehicles dated March 31, 1986 among Toyota Motor Corporation, GM, NUMMI and Toyota Motor Sales, U.S.A., Inc.

(e) "Shareholders' Agreement" means the Shareholders' Agreement, dated February 21, 1984, among Toyota Motor Corporation, NUMMI and GM.

(f) "Vehicle" shall have the meaning set forth in Section 3.2 of the Vehicle Agreement.

(g) "Vehicle Agreement" means the Vehicle Supply Agreement dated February 21, 1984 as amended dated March 31, 1986 among Toyota Motor Corporation, NUMMI and GM.

- 2 -

(h) "Vehicle License Agreement" means the Vehicle License Agreement dated February 21, 1984 as amended dated March 31, 1986 among Toyota Motor Corporation, NUMMI and GM.

(i) "Vehicle Production Commencement Date" shall mean the date established pursuant to Section 2.1 of the Vehicle Agreement as the "Production Commencement Date" thereunder.

## II. TERM OF AGREEMENT

2.1. **Agreement Term**: This Agreement shall become effective upon its execution by the parties hereto and shall remain in effect either until the dissolution of NUMMI or until the disposition of all the shareholdings in NUMMI by GM (or its majority-owned subsidiaries) in accordance with Article 6 of the Articles of Incorporation of NUMMI or the applicable provisions of the Shareholders' Agreement, whichever occurs earlier (such period being referred to herein as the "Agreement Term").

## III. SUPPLY OF COMPONENTS

3.1 **Supply and Purchase**: Subject to the terms of this Agreement, if agreed to by NUMMI and GM, GM shall supply Components to NUMMI to enable NUMMI to meet its obligations to manufacture Vehicles and Optional Equipment and otherwise to satisfy its obligations pursuant to the terms of the Vehicle Agreement.

3.2 **Terms of Supply**: The specific terms of sale and delivery of Components supplied by GM to NUMMI, including without limitation price, payment, scheduling, product change, quality assurance, shipping and transportation terms and procedures, shall be as agreed to by GM and NUMMI in separate documents, provided, however, that:

(a) To the extent that any term or condition in any purchase order, contract or other instrument relating to any sale or purchase of Components is inconsistent with the terms of this Agreement, the PRA, or

- 3 -

the Vehicle Agreement, such term or condition shall be null and void; and

(b) The prices for all Components shall be negotiated by NUMMI and GM, and shall be agreed upon by NUMMI and GM prior to the Vehicle Production Commencement Date or as soon as practical thereafter. Such negotiations and agreements shall be guided by the feasibility study attached as Appendix A to the Vehicle Agreement. Component prices may thereafter be reviewed semiannually and new prices determined by negotiation between GM and NUMMI, provided, however, that if any of the parties hereto reasonably believes that the Component prices so negotiated would cause NUMMI to incur losses which could endanger its normal operation, NUMMI and GM shall negotiate further and take necessary measures pursuant to the letter agreement among Toyota Motor Corporation, NUMMI and GM dated February 21, 1984.

3.3 Delayed Payments: If any payment by NUMMI to GM under this Agreement is delayed due to the fault or negligence of NUMMI, NUMMI shall pay interest to GM on each such delayed payment at the rate provided in Section 7.2 of the Shareholders' Agreement.

3.4 Compliance with Applicable Laws and Regulations: Except as otherwise provided herein or in the PRA, each of GM and NUMMI shall be responsible for compliance with and for the obtaining of such approvals as may be required under such national, federal, state and local laws, rules, executive orders, regulations and ordinances as may be applicable to the performance of each of its responsibilities and obligations under this Agreement.

IV. REPRESENTATIONS AND WARRANTIES

4.1 Patents, Etc.: GM represents and warrants that, to the knowledge of responsible GM officials to date, there is no reason to believe that the manufacture, use or sale of the Components will

- 4 -

constitute an infringement of any patent held by any third party. Should any patent infringement claim arise, the parties will mutually cooperate in investigation and defense against such claim. In no event shall either party have any claim or right of action against the other party arising out of any such patent infringement claim except in the event of a breach of the representation and warranty set forth in the first sentence of this Section 4.1.

    4.2. <u>Limited Warranty and Sole Remedy</u>: (a) GM warrants to NUMMI that upon delivery of the Components to NUMMI, NUMMI shall have good and marketable title to the Components shipped to NUMMI.

    (b) THE OBLIGATIONS OF GM SET FORTH IN THE PRA AND SECTIONS 4.1, 4.2(a) AND 5.1(b) HEREOF ARE EXCLUSIVE AND IN LIEU OF ANY OTHER EXPRESS, STATUTORY OR IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OF FITNESS FOR PARTICULAR PURPOSE.

    (c) Nothing in this Agreement shall affect the rights and obligation of the parties as provided in the PRA.

## V.   GENERAL PROVISIONS

    5.1. <u>Delays</u>: (a) Except with respect to defaults of subcontractors, GM shall not be liable for delays or defaults in shipment due to causes beyond its control and without its fault or negligence. Any delay due to default of subcontractor will be excusable if beyond the control and without the fault or negligence of both GM and its subcontractor and if GM establishes that it could not obtain supplies or services from any other source in time to meet the shipping schedule.

    (b) If at any time GM has reason to believe that deliveries will not be made as scheduled, written notice setting forth the cause of the anticipated delay will be communicated immediately to NUMMI. Any oral communication shall be subsequently confirmed in writing. If GM's shipment is delayed, GM shall, at its cost (unless excused under Section 5.1(a)) send components at such time and in such manner as instructed by NUMMI.

5.2. <u>Limitations of Liability</u>: Except as specifically provided in this Agreement or the PRA, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, WHETHER BASED UPON BREACH OF CONTRACT, BREACH OF EXPRESS, STATUTORY OR IMPLIED WARRANTY, TORT, STRICT LIABILITY OR OTHERWISE.

5.3. <u>Survival</u>: All representations, warranties, remedies and indemnities, liabilities and disclaimers and limitations of the foregoing made, furnished or imposed herein or arising hereunder shall survive any termination of this Agreement or dissolution of NUMMI.

5.4. <u>Assignability</u>: Neither this Agreement nor any right (other than a right to receive the payment of money) or obligation hereunder may be assigned or delegated in whole or in part to any other person or entity.

5.5. <u>Persons Authorized to Act for the Parties</u>: Each change, variation or modification of this Agreement shall be effective only when made in writing signed by an authorized officer or representative of each of the parties. Any specifications, purchase orders and notices or letters furnished by one party to any other party under this Agreement may be signed on its behalf by any authorized employe of such party who need not be an officer of such party.

5.6. <u>Notices</u>: Unless otherwise provided, in any case where any notice or other communication is required or permitted to be given under this Agreement (including without limitation any change in the information set forth in this Section) such notice or communication shall be in writing and (i) personally delivered, (ii) sent by the postage prepaid registered airmail or (iii) transmitted by electronic facsimile transfer marked "Important" as follows:

If to GM, to:

    General Motors Corporation
    Chevrolet, Pontiac, Cadillac Group
    Headquarters
    30001 Van Dyke
    Warren, MI  48090-9020
    Facsimile Call No.:  (313) 492-6842
    Attention:  Director of International Programs

and to:

    General Motors Corporation
    3031 West Grand Boulevard
    Detroit, MI  48202
    Attention:  General Counsel

If to NUMMI, to:

    New United Motor Manufacturing, Inc.
    45500 Fremont Boulevard
    Fremont, California 94538, U.S.A.
    Facsimile Call No.:  415/498-1037
    Attention:  General Manager, Purchasing

All such notices or other communications shall be deemed to have been given or received (i) upon receipt if personally delivered, (ii) on the tenth business day following posting if by postage prepaid registered airmail, and (iii) upon receipt if notice is given by electronic facsimile transfer.

    5.7. <u>Third Persons</u>:  Except as contemplated in this Agreement as to the parties hereto, nothing in this Agreement is intended or shall be construed to confer upon or to give any person or entity any legal or equitable rights or remedies under or by reason of this Agreement.

    5.8. <u>Choice of Law</u>:  This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

5.9. <u>Interpretations and Unstipulated Matters</u>:  (a) In the case of there being any dispute between the parties hereto on the interpretation of any provision of this Agreement, the parties hereto shall classify the interpretation by mutual consultation.

(b) All matters not stipulated but pertinent to this Agreement shall be provided for, as occasion may demand, by mutual consultation between the parties hereto.  Also in the case of making alterations in the provisions of this Agreement, the same shall apply.

5.10. <u>Entire Agreement, Etc.</u>:  This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof.  To the extent that provisions in any of the Prior Agreements (as that term is hereafter defined) are inconsistent with any provision of this Agreement, this Agreement supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof, including without limitation the Memorandum of Understanding (the "Memorandum"), dated February 17, 1983, as amended, between Toyota and GM, letter agreements, minutes of meetings and similar documents dated prior to the date hereof to which NUMMI and GM, or any of their respective representatives are parties (the Memorandum and such agreements, letter agreements, minutes and similar documents being referred to herein as the "Prior Agreements").

5.11. <u>Arbitration</u>:  Any dispute arising between the parties hereto in connection with this Agreement shall be finally settled by arbitration.  If GM is the initiating party, the arbitration shall be held in San Francisco, California, United States of America, in accordance with the rules of the American Arbitration Association.  If NUMMI is the initiating party, the arbitration shall be held in Detroit, Michigan, United States of America, in accordance with the rules of the American Arbitration Association.  Any such arbitration proceedings shall be conducted in English.  The award rendered by the arbitrators shall be final.  An action or proceeding to enforce such award may be

brought in any court of competent jurisdiction. The costs of any such arbitration proceedings shall be allocated as the arbitrators shall decide.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

GENERAL MOTORS CORPORATION

By: _____

Title:   Vice President

NEW UNITED MOTOR
MANUFACTURING, INC.

By: _____

Title: General Manager Purchasing