HEARING DATE AND TIME: Apr. 8, 2010 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: Apr. 1, 2010 at 4:00 p.m. (Eastern Time)

Elihu Inselbuch
Rita C. Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, New York 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Trevor W. Swett III
Kevin C. Maclay
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Suite 1100
Washington, D.C. 20005-5802
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Proposed Attorneys for Movant Official Committee
of Unsecured Creditors Holding Asbestos-Related Claims*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,           :    Chapter 11 Case No.
    f/k/a General Motors Corp., *et al.*    :
                                                :    09-50026 (REG)
                                                :
                                                :    (Jointly Administered)
                                                :
                                                :
                                                :
---------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF ELIHU INSELBUCH IN FURTHER SUPPORT
OF APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF CAPLIN & DRYSDALE, CHARTERED, *NUNC PRO TUNC* TO
OCTOBER 6, 2009, AS COUNSEL TO THE OFFICIAL COMMITTEE OF
<u>UNSECURED CREDITORS HOLDING ASBESTOS-RELATED CLAIMS</u>**

DOC# 348794

Pursuant to Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure, Elihu Inselbuch deposes and says as follows:

1.  As a member in the law firm of Caplin & Drysdale, Chartered, I am authorized to make this Supplemental Declaration on its behalf. I make this Supplemental Declaration to attest to certain matters in response to the objection filed by the United States Trustee ("**UST**") on April 1, 2010 (the "**Objection**") with respect to the application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims (the "**Asbestos Claimants Committee**" or "**ACC**") to retain Caplin & Drysdale as its counsel, *nunc pro tunc* as of October 6, 2009 (the "**Application**"). The Objection does not oppose Caplin & Drysdale's retention as such, but takes exception to the ACC's request that the retention be made retroactive to October 6, 2009. The facts set forth in this Declaration are personally known to me and, if called as a witness, I would testify as follows.

2.  The Objection points out that "the Application does not set forth the exact date on which the Asbestos Committee convened a meeting and selected Caplin & Drysdale as counsel * * * ." Objection at 12 n.2. The ACC informed me of the firm's selection on March 5, 2010, after the UST issued notice of her appointment of that committee on the same day.

3.  The Objection asserts that the Application "fails to identify the circumstances that caused "'time [to be] of the essence,' exactly what matters 'required immediate attention,' what services the Firm actually performed prior to its selection as counsel to the Asbestos Committee, or what prejudice would result to innocent third parties if the Application is not granted." Objection at 13 & n.4 (record citation omitted). In setting

- 2 -

forth the ACC's request that the Court authorize the retention of its counsel retroactively, the Application and my initial Declaration in support thereof explained that on October 6, 2009, Caplin & Drysdale commenced to render legal services to a Subcommittee of the Official Committee of Unsecured Creditors (the "**UCC**"), formed at the urging of the Debtors and the UCC for the purpose of protecting the interests of holders of pending asbestos personal injury claims against the Debtors herein.[1]  *See* ¶ 12 of the Declaration of Elihu Inselbuch, sworn to on March 18, 2010 ("**Inselbuch Declaration**"); Application ¶ 6.  Caplin & Drysdale was under pressure to begin work for the benefit of such claim-holders because the Debtors had set a goal of confirming a plan of liquidation during April 2010.  The Debtors and the UCC both recognized that formulating such a plan would require estimation of the Debtors' liability for asbestos claims so that the parties and the Court could determine what portion of the estates' assets should be distributed to an asbestos trust.  Estimating asbestos liabilities is a complex process that in many bankruptcy cases has taken years.  In my experience, moreover, formulating a bankruptcy plan that deals with asbestos liabilities involves many issues affecting holders of pending asbestos claims besides the estimation itself.  Thus, the Debtors' stated goal for the timing of confirmation was highly ambitious and could only be met if the parties were prepared to act quickly.

4. The Objection notes that Caplin & Drysdale "has not filed time records for the period prior to its selection by the Asbestos Committee." Objection at 13 n.4.  The Application and the supporting Declaration alerted the Court and the parties that "[f]rom October 6, 2009, until its selection this month as counsel to the ACC, Caplin & Drysdale

---

[1] The Subcommittee had one member, John Cooney, the attorney for Mark Butitta.  Mr. Butitta was a member of the UCC until he was appointed to the ACC.

accrued time charges of approximately $100,000, and approximately $3,500 of disbursements and other charges, in performing legal services on behalf of the then-proposed subcommittee." Inselbuch Declaration ¶ 14; Application ¶ 7.  Those submissions also clearly stated that because the services rendered under the aegis of the Subcommittee

> will now inure to the benefit of the ACC and its constituency, it is Caplin & Drysdale's intention, with the approval of the ACC, to seek payment of those charges by the estate and authorization thereof by this Court as part of the normal fee application process in this case.

Inselbuch Declaration ¶ 14; Application ¶ 7.  Accordingly, there is no possibility that Caplin & Drysdale's time charges and disbursements for the proposed period of retroactive retention will be paid without the Court's review and disclosure to the parties under the procedures laid down for those purposes.  *See* Inselbuch Declaration ¶ 23, Application ¶ 29.

5. Without presuming to meld those fee-application procedures with the retention process itself, I would note that of the approximately $100,000 in time charges arising from Caplin & Drysdale's activities on behalf of the Subcommittee, about $8,000 pertains to the period from October 6 through December 31, 2009, while approximately $92,000 relates to the period between January 1 and March 5, 2010.  During the first of those periods, Caplin & Drysdale's efforts consisted chiefly of reviewing and commenting on the Debtors' proposed motion for the appointment of the Subcommittee and of a legal representative for future asbestos claimants ("**FCR**").  In January 2010, the UCC's counsel put forward for Caplin & Drysdale's consideration certain issues bearing on potential litigation and plan formulation.  These matters were both highly sensitive and potentially important to the

- 4 -

asbestos creditor constituency, and the UCC's counsel presented them as requiring prompt attention.

6. The Objection suggests that retroactive retention should not be approved because no FCR had been sought or appointed before the ACC selected Caplin & Drysdale as its counsel. *See* Objection at 11. The point seems to assume that the only function of a fiduciary for present asbestos claimants in this case is to participate with an FCR in determining the "ratable shares" of their respective constituencies in the consideration to be paid into an asbestos trust by the Debtors. *Id*. I respectfully submit that this assumption is misplaced. The constituency of present asbestos claimants has interests in the full range of matters that are implicated in the formulation of a liquidation plan under the complex circumstances of this case. It may be true that no such plan could be finalized in the absence of an FCR. But that certainly does not imply that there would have been any virtue in neglecting the needs of the constituency of present asbestos claimants during the months it has taken to bring the Debtors' application for appointment of an FCR before the Court for decision.

7. The Objection also suggests that the Subcommittee somehow purported to act both for present claimants and future claimants. *See* Objection at 11. It gives no factual basis for this contention, however, and there is none. Throughout the period when Caplin & Drysdale acted for present claimants through the Subcommittee, the Debtors were consulting Judge Trafalet and his representative about the proposal for him to serve as FCR, with the right to retain counsel, which proposal has now been formalized in unopposed motions that

await decision by the Court. Neither the Subcommittee nor Caplin & Drysdale ever presumed to speak for future claimants.

8. The Objection also contends that the *nunc pro tunc* retention of Caplin & Drysdale would somehow endorse "retroactive, simultaneous service to both the Subcommittee of the Creditors' Committee and the Asbestos Committee — *i.e.*, entirely different entities with potentially opposing views." Objection at 11. Here, the formalistic approach taken in the Objection leads to baffling absurdity. There is no question of anyone's serving "two masters," nor does the UST contend that any ethical barrier prevents Caplin & Drysdale's retention by the ACC.

9. In mid-January 2010, Caplin & Drysdale learned that the UST had voiced reservations about appointing the Subcommittee as an official fiduciary for asbestos claimants, taking the view that it would be preferable to constitute a full committee separate from the UCC for that purpose. But there was never any doubt that such a committee would represent the *same interest* that John Cooney had previously acted for in his capacity as the Subcommittee, that is, the interest of present asbestos claimants as a separate constituency. Events bore out this essential continuity when the UST appointed two of Mr. Cooney's clients to the three-person ACC, including his original client in this case, Mark Butitta, who promptly resigned from the UCC. Of course, the very idea for the Subcommittee, superseded now by the ACC, originated in the recognition that asbestos creditors and other kinds of unsecured creditors have a divergence of interests on some matters of importance to this case. The separate interests of non-asbestos creditors have been represented throughout by the UCC and its counsel, not by Mr. Cooney, Mr. Butitta, the Subcommittee, or the ACC.

10. Also puzzling is the assertion that Caplin & Drysdale's "involvement in these bankruptcy cases was unknown to the United States Trustee" before the ACC was formed. Objection at 10. *See id.* at ¶ 12 at 5. In this regard, the Objection is simply mistaken. Caplin & Drysdale attorneys assisted Mr. Cooney in obtaining Mr. Butitta's appointment to the UCC at the outset of these cases and communicated directly with the UST and her counsel in that effort, both orally and in writing. A Caplin & Drysdale attorney appeared and argued for Messrs. Cooney and Butitta, in their role as standard-bearers for asbestos personal injury victims, at the hearing on the Debtors' motion to sell substantially all of their assets to "New GM" under section 363 of the Bankruptcy Code. Of course, counsel for the UST also participated in that hearing. *See* D.I. 3062 at 5 & 8 (transcript of hearing of July 2, 2009) (noting the appearances of attorneys Davis and Masumoto for the Office of the United States Trustee and of Caplin & Drysdale attorneys Reinsel and Tobin on behalf of Mark Butitta).

11. In October 2009, when the Debtors and the UCC asked John Cooney to take on additional responsibilities for the asbestos personal injury constituency by serving as the Subcommittee, the task entailed a need for legal services within an expanded scope. The Debtor and the UCC recognized that it would be unfair to burden personally Mr. Cooney and his client, Mr. Butitta, with the expenses of those expanded services. Therefore, when Caplin & Drysdale was asked to serve as counsel for the Subcommittee, it did so on the understanding that its retention would be requested *nunc pro tunc* so that the estate would bear any approved fees and expenses incurred in the course of the assignment. The Subcommittee has been superseded by the ACC, at the direction of the UST and after delays for which Caplin & Drysdale bears no fault. But this does not alter the fact that Caplin & Drysdale's services throughout have been rendered for the benefit of the Debtors' asbestos personal injury claimants and pursuant to the goal shared by all parties of expediting the resolution of this case. I respectfully submit that the extraordinary circumstances described warrant the exercise of this Court's discretion to approve the ACC's retention of Caplin & Drysdale retroactively to October 6, 2009, whereas upholding the UST's Objection would penalize the law firm for no good reason.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on April 2, 2010.

                                      /s/ Elihu Inselbuch
                                      Elihu Inselbuch