FORM – sumprose (06/07)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Case No.: 2:09–bk–24899–RTB |
| **JOHN LEWIS MEALER** | Chapter: 7 |
| *Debtor(s)* | |

| | |
|---|---|
| **JOHN LEWIS MEALER** | Adversary No.: 2:10–ap–00503–RTB |
| *Plaintiff(s)* | |
| *v.* | |
| **GMAC Mortgage LLC.** et al. | |
| *Defendant(s)* | |

## SUMMONS IN AN ADVERSARY PROCEEDING

**YOU ARE SUMMONED** and required to submit a motion or answer to the complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days from the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

| Address of the Bankruptcy Clerk's Office | U.S. Bankruptcy Court, Arizona 230 North First Avenue, Suite 101 Phoenix, AZ 85003–1727 |
|---|---|

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney, or the plaintiff, if not represented by an attorney.

| Name and Address of Plaintiff's Attorney | JOHN LEWIS MEALER 6333 GARDENIA LANE SHOW LOW, AZ 85901 |
|---|---|

( Summons continued on next page )

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

**Date: March 30, 2010**

**Address of the Bankruptcy Clerk's Office:**
U.S. Bankruptcy Court, Arizona
230 North First Avenue, Suite 101
Phoenix, AZ 85003−1727
Telephone number:  (602) 682−4000
www.azb.uscourts.gov

Clerk of the Bankruptcy Court:

**Brian D. Karth**



UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

In re:                                          Case No.: 2:09–bk–24899–RTB

   JOHN LEWIS MEALER                            Chapter: 7
*Debtor(s)*

---

   JOHN LEWIS MEALER                            Adversary No.: 2:10–ap–00503–RTB
*Plaintiff(s)*

v.

   GMAC Mortgage LLC.
   et al.
*Defendant(s)*

---

## CERTIFICATE OF SERVICE

I, _John Bosworth_ certify that I am, and at all times during the service of process, was not less than 18 years of age. I further certify that the service of the summons and a copy of the complaint was made on _3-31-10_ by: _John Lewis Mealer_ _6333 Gardenia Lane, Show Low, Arizona (85901)_ _witnessed by - John Bosworth_

☑ Mail Service: Regular, first class United States mail, postage fully pre–paid, addressed to:
_" See: "Service List" P.2 "_

☐ Personal Sevice: By leaving the process with the defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☑ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:
_Thomas Marano CEO (Rescap) -_
_Michael Carpenter CEO (GMAC (FS))_

Service List

ORIGINAL

☑ US Bankruptcy Court, District of Arizona
Honorable Red field T. Baum
230 N. First Ave., Suite 101, Phx., Az. 85003

☐ COPIES: Lawrence J. Warfield Case Trustee #09.24899 RTB
c/o 230 N. First Ave, St. 204, Phx, Az. 85003

☑ US Bankruptcy Court, New York
Southern District of New York
Honorable Robert E. Garber
One Bowling Green   Ref: GM BK 09-50026 REG
NY, NY 10004-1408

☐ GMAC, GMAC (fs) in Care of:
PITE-DUNCAN, LLP
PO BOX 17933   San Diego, CA 92177-0933
(GMAC Attorney)

☐ Michael Carpenter, CEO, GMAC (fs) 5/09-current
200 Rennaissance Center, Detroit, MI 48265-2000

☐ Thomas Marano, CEO ("RESCAP")
Residential Capital LLC
ONE MERIDIAN CROSSINGS, MINNEAPOLIS, MINN. 55423

☐ Edward Whitacre, Jr, CEO "NEW GM"
300 Rennaissance Center, Detroit, MI 48265-3000 MD# 482-Z39-B10

☐ Frederick Henderson, CEO "OLD GM"
300 Rennaissance Center, Detroit, MI 48265-3000 MD# 482-Z39-B30

☐ Albert Koch, CRO GM (Motors Liquidation Co.)
c/o AP Services, LLC 2000 Town Center, St. 2400 Southfield, MI. 48075

☐ Kris J. Kordella
c/o General Motors Corp. 300 Rennaissance Center Detroit, MI 48265-3000

☐ Christy Garwood
c/o General Motors Corp. 300 Rennaissance Center Detroit, MI 48265-3000

2

☐ Publication: The defendant was served as follows: (Describe briefly)

☐ State Law: The defendant was served pursuant to the laws of the State of _____ as follows: (Describe briefly)

If service of process was made by personal service, residential service, or pursuant to state law, I further certify that I am not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date: _3-31-10_                    _John Bosworth_
                                   (Signature)

_John Bosworth_
(Print Name)
_1119 N Frito Ave._
(Business Address)
_Mesa AZ 85210_
(City, State, Zip Code)

3

1  John Lewis Mealer, Pro Per
   6333 Gardenia Lane
2  Show Low, Arizona 85901
   jlmealer@mealercompanies.com

RECEIVED

2010 MAR 30  AM 10: 47

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

3            UNITED STATES BANKRUPTCY COURT

4            DISTRICT OF ARIZONA – PHOENIX DIVISION

5
   In re                              )
6                                     )  Case No.: 2:09-BK-24899-RTB
                                      )
7  JOHN LEWIS MEALER,                 )  Chapter 7
        Debtor(s)                     )
8  _____        )  ADVERSARY COMPLAINT
                                      )
9  GMAC MORTGAGE LLC, GMACfs,         )  2: 10-2p-503
   GENERAL MOTORS CORP., GENERAL      )
10 MOTORS CO., MOTORS LIQUIDATION     )
   CO., RESIDENTIAL CAPTIAL LLC, KRIS J)
11 KORDELLA, CHRISTY GARWOOD, et al.  )
                                      )  ENJOINED MOTION FOR
12 (Creditor)     Defendants,         )
                                      )  EVIDENTIARY HEARING CONCERNING
13          vs.                       )
   JOHN LEWIS MEALER, (wife, sons,et al))  GROSS CREDITOR MISCONDUCT
14      (Debtor's/Injured)            )
   and LAWRENCE J. WARFIELD, Chapter 7)
15      Trustee,                      )
                                      )
16          Plaintiffs,               )

17 I.              JURISDICTION AND VENUE

18        **Comes Now** the Plaintiff, In Pro Per, by special appearance; Motioning adversary

19 proceeding pursuant 11 USC § 101 et seq., FRBP Part I, Rule 1018, Part VII Adversary

20 Proceedings, Rules 7001, 7056, 9014, Part III, IX, "General Provisions," 11 USC Appendix Rule

21 9027, 9029, F.R.Civ.P.8, 3 F.R.Civ.P., 12 F.R.Civ.P.(g)(1), Core Proceeding pursuant to 28

22 U.S.C § 1334(a)(b), 28 USC § 157(b)(2)(B)(C)(F)(G)(H)(5)(c)(1)(2)(1) et al., 11 USC § 101(5)

23 (B), § 303(a)(b)(2)(d)(f)(g)(h)(1)(1)(i), § 524(a)(2), 547(b) and 362(b)(20)(21) subsection (a),

24

25                                    *l*

(d)4, 11 U.S.C. § 523(a)(4)(a)(6) [per the Equal protection Clause], et al., Therefore, this US Arizona District Bankruptcy Court exercises jurisdiction on these matters.

**II.**                                    **CLAIM SUMMARY**

I, Plaintiff(s) hereby produce, verify and submit this CHAPTER 7 ADVERSARY COMPLAINT _2:10-ap-503_ enjoined MOTION FOR EVIDENTIARY HEARING CONCERNING GROSS CREDITOR MISCONDUCT against the Defendants listed above: This enjoined Complaint/Motion blocks, denies, argues Creditor Defendants' motion For Relief From Automatic Stay and seeks redress to initiate settlement for Defendants' flagrant, egregious, reprehensible prima facie torts and ongoing irreparable injuries fraudulently committed upon Plaintiff creating Breach of Fiduciary Duty, Breach of Contract, fraudulent activities and other injuries caused by Defendants' unrestrained, denigrating actions which intentionally instilled debtor's financial condition prior to and during this bankruptcy case under unusual and exigent circumstances, yet not beyond the scope of state and federal bankruptcy law, contract law, common law, jurisprudence, and judicial rule. A lift of automatic stay in this case will result in immediate and irreparable injury, ad infinitum, loss and damage to Plaintiffs in what appears would be thwarting due process, subservient to law and will defeat the ends of justice. Plaintiff does not enter this legal battle by choice, but *conditio sine qua non* justice.

**III.**          **DEFENDANTS' LACK OF AUTHORITY and PRECEDENCE**

Defendants' as Mortgage Holder/Creditor has no remedy or precedence to demand relief from the automatic stay per their original motion, which allows forum for this Plaintiff's adversary complaint. Defendant's original request and Motion to Lift Automatic Stay is without merit as Creditor/Movant/Defendants' have not made an effort to provide legal cause to move their claim to another court. The contractual evidence provided by Defendant acting ultra vires

2

against this Debtor by and through this instant case aberrant modus operandi further proves

Plaintiff's case.

> Pursuant to 11 USC § 362(d)(1) of the Bankruptcy Code, the automatic stay may only be lifted to permit a litigation to go forward in another court upon an initial showing of "cause" by the party seeking relief from the stay. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc), 907 F. 2d 1280, 1285 (2d Cir. 1990); In re New York Med Grp., P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y.2001).1

## IV.    CREDITORS BREACH OF DUTY TO PROTECT DEBTOR

Pursuant to laws of contract both parties have a mutual right to remedy. Defendants' who are also an FDIC approved banking institution and mortgage holder of the Plaintiffs have committed what appears to be collisional gross negligence in malicious assaults upon this Plaintiff while under a fiduciary duty to protect the Plaintiff, activity leaning precariously close to banking fraud. While it is understood that a debtor maintain insurance and generally protects creditor interests in lien property, it is common practice for the creditor to provide an effort of protection for debtor and exercise skill, care and diligence when acting on behalf of the debtor/client. Shared fiduciary responsibility is evident in this respect. Reciprocity certainly plays a part in the balance of rights and obligations of the parties, which may not be disturbed to the parties detriment contrary to the requirement of good faith. Creditor is prohibited from earmarking debtor's payments and mixing, combining or co mingling funds to pay for the very Internet Service Provider ("ISP") registration fees whereby the instrument is used to harass, attack, instill duress and control Debtor. Such action conspired by Defendants' is clearly fraudulent misappropriation of this Debtor's funds which originated as mortgage payments.

Direct tortious activity against any debtor is blatant abuse of creditor bank privileges, especially when that creditor bank shares fiduciary interest in a competitive company as that of the debtor. Under the Court's inherent authority to secure permanent injunctive relief and other

3

equitable relief for this Plaintiff, including restitution for unjust enrichment against the Defendant's for failing to maintain procedures ensuring compliance with contractual obligations, blatant collusive tortious violations, unfair business practices and other critical legal encroachments which culminate in multiple breach of contract violations causing serious irreparable injury, Plaintiff seeks remedy.

The Blatant tortious activity paid for with Debtor's mortgage payments proves further *errore calculi* of Plaintiff's account. Creditor participatory aiding and abetting to intentionally harm the debtor client is a gross breach of this shared fiduciary responsibility creating *exceptio non causa debti*. Defendants' willful neglect and gross breach of contractual obligations *conditio sine qua non* for Plaintiff's failure to maintain mortgage payments and this instant bankruptcy. Defendants' enforcement of this dishonored, breached, mortgage contract culminated in their Motion for Lift of Automatic Stay during Debtor/Plaintiff's ultimate economic failure as actual cause of Defendants inappropriate tortious M.O. creating the Plaintiff's inability to perform under the contract and subsequent bankruptcy, and thus qualifies as a voidable Motion under Title 11 USC § 303(a)(b)(2)(d)(f)(g)(h)(1)(1)(i), 547(b) and 362(b)(20)(21) subsection (a), (d)4.

Plaintiff contends and qualifies this codified line of reasoning taking legal action to seek damages due to Defendants' unconscionable actions that dishonored contractual obligations making a voidable fundamental breach both anticipatory and actual through what now appears to be defective paperwork by gross contract confusion and Plaintiff's pernicious belief of a provenly false security and reliance on the tantamount juristic act with Defendants. By and through Creditor's grossly breached contract, Defendants Motion to Lift Automatic Stay has become void. *"By strict definition that which is void is nugatory and of no effect and cannot be cured; that which is voidable may be either voided or cured."* Black's Law Dictionary.

4

This Court need not be lectured on contract law, the following basics are noted for benefit of the Defendants' and may also be found in the UCC: *(1).* Breach of duty (negligence) a failure to perform a duty owed to another or to society; a failure to exercise that care which a reasonable man would exercise under similar circumstances. In the absence of an express term governing the sequence of performance, and in the absence of circumstances that imply a sequence of performance, default rules supply the answer. Blyth v Birmingham Waterworks Co (1856) 11 Exch 781. *(2).* Breach of trust with fraudulent intent "a larceny after trust, which includes all of the elements of larceny except the unlawful taking in the beginning."State v. Owings, 205 S.C. 314, 316, 31 S.E.2d 906, 907 (1944). *(3).* Material breach is a breach that is substantial and operates to excuse further performance by the aggrieved party. A material breach destroys the value of the contract and gives rise to an action for breach of contract.

Defendants' have clearly acted unprofessionally in of breach of contract as detailed herein, and thus have violated their entire authority to claims against this debtor Plaintiff and are monetarily responsible for their illegal actions against this private Plaintiff.

## V.                 PREMISIS:  CAUSE OF ACTION

While Plaintiff maintains a registered automobile manufacturing company and is competitive to the interests of Defendants while also under mortgage contract with Creditor Defendant, the following incidents shine a beacon of light on multiple transgressions.

Defendants' agent Mr. Kris J Kordella, did on June 9th, 2009 at 10:56:50 AM enter Plaintiff's professional business website URL http://mealercompanies.com with intent to strategically sabotage, whether by and through direction of management or strictly through respondeat *superior contributory and comparative negligence originating while at work under General Motors Corporation roof yet subordinate to the GMAC/(fs)* owned Internet Service Provider's ("ISP") and by and through other legally responsible parties acting in concert with at

5

least two other fully documented, simultaneous invasions by additional GM-GMAC agents who

may or may not have been directed by superiors, did sign into and complete the required

personal and professional Blogger information at 11:29:31 AM in order to develop sophisticated

commentary about Plaintiff on Plaintiff's RSS feed, investor oriented website as coming from a

highly rated financial Blogger and engineering expert related to GM-GMAC under

"kris.j.kordella@gm.com" as "MONEY01" and did purposely write strategically worded, grossly

disparaging, humiliating, defamatory statements regarding JL Mealer and the Mealer Automobile

and did days later follow up the initial blackening comments about Plaintiff with direct emails to

multiple interested parties further defaming Plaintiff as a "fraud", compounding the humiliating

damage to Plaintiff and becoming a trespasser, ab anito: With unclean hands, Defendant acted in

concert with multiple employee agents, did willingly and knowingly trespass with malicious

intent to defile and harass Plaintiff's privacy and did unfairly proximate cause of immediate and

future financial loss through gross misconduct resulting in crippling financial constraints being

shackled upon Plaintiffs that maintain mortgage with Defendants who coincidentally have

equitable stake in a failing competitive-business, did attempt to hinder and restrain "Mealer

Automobiles" and other Mealer-products to be manufactured by Plaintiffs for international trade

from competing in the well-renowned General Motor's vast product sales market, by and through

pervasive monopolistic behavior, trade libel per se, did intentionally invade to inflict duress,

commit reckless and intentional tortious interference upon Plaintiffs, intentionally creating an

impossibility to perform under the mortgage contract, which did prevent Plaintiffs from

expanding a competitive-business, maintain their livelihood and did intentionally and unfairly

hinder prospective trade agreements through Defendants' far reaching libelous assault, abusive

and manipulative unfair business practices through direct unwarranted defamation of character,

6

the blackening of Plaintiffs' good name resulting in intentional, unreasonable restraint of trade per se by deliberately humiliating, embarrassing and distorting Plaintiffs' ability to conduct international and domestic trade through acts of purposefully defamatory laden tort designed to and accomplishing the induced abandonment of prospective and pending "B-Round Expansion Capital" funding contracts between private investors and Plaintiffs' growing business, thus perpetrating unfair business practices through combination; acting in concert and with corporate assistance, corporate management, corporate supervisors and other agent employees within the General Motors Corporation, General Motors Acceptance Corporation, General Motors Company, GMACfs, and other subsidiaries who benefited from this anti-competitive conduct which abrogated this Plaintiffs' right of unhindered contract and pursuit of a competitive-trade while Plaintiffs proceeded under duress and relied on an expectancy of Mortgage Holder Defendants' implied duty of good faith, that said Defendant would never violate this duty and resort to illegal misconduct that would ultimately cause hinder, delay and fraudulent obstruction to Debtor Plaintiffs' ability to maintain mortgage payments, which is Defendants' liability for intentional duress, malfeasance creditor misconduct with criminal and tortious intent, gross negligence, fraudulent inducement, intentional misrepresentation and breach of contract, breach of fiduciary duty and intentional interference with Plaintiff's prospective advantage.

The Mortgage propagated between parties further fails and dissolves *exceptio quod metus causa* thus; "Reverting to the defense raised by first defendant [Plaintiff], it is clear that a contract may be vitiated by duress **(metus)**, the *raison d'etre* of the rule apparently being that intimidation or improper pressure renders the consent of the party subjected to duress no true consent at all." *Arend and Another v Astra Furnishers (pty) ltd 1974 (1) SA 298 (C)*

7

**Maxim of law**; N*emo debet rem suam factor aut defectu suo amittere*. No one should lose his property without his act or negligence. Co. Litt. 263

This enjoined Complaint, Motion (argument), by law, can only regard the personal attacks on John Lewis Mealer and family in regards to Plaintiffs' ability to pursue business objectives and gather growth funding for Mealer Companies LLC, and not per se for claims made by the company itself. Mealer Companies LLC must remain witness at this time.

There can be no confusion as to the purpose of the Plaintiff's website and clearly, the Defendant acted in concert to restrict Plaintiff's rights. Defendants' planned, committed and achieved the intended consequences resulting from their defamatory blackening remarks about Plaintiffs' person, business goals and thus crippled Plaintiffs' ability to maintain debt payments.

Plaintiff's website details without equivocation the reason for the websites existence on page 2 entitled, "WHAT WE ARE REALLY ABOUT" and URL second page link to: "http://mealercompanies.com/?page_id=2" as follows within the first sentence and paragraph:

> "**Mealer Companies LLC** is gathering funding to begin full scale production of our automobile and 220v full power source (combined as one). We have the vehicle, the patents, the key personnel and are now simply procuring the key ingredient... *The remainder of our investment money*."

## VI.      DEFENDANTS' UNCLEAN HANDS, ANNOTATED EXHIBITS

GM-GMAC did on June 9th, 2009 enter Plaintiff's professional business website URL http://mealercompanies.com, signed into website to Blog via organization name, "General Motors Corporation" (Exh G-3) Registered by "GMC-20" at "GMAC(fs)" Corporate Headquarters"(Exh H) as "MONEY01" and wrote grossly disparaging and via the World Wide Web, globally visible and RSS fed comments about JL Mealer and privately held company Mealer Companies LLC and later followed up with emails to interested parties referring to non-

8

public figure JL Mealer as a fraud.  "It is apparent that under US corporate law, only gross negligence suffices to find a director liable to compensate for damage she or he causes." Smith v. Van Gorkom or the Trans Union case, 488 A.2d 858 (Supreme Court of Delaware, 1985). *"Culpa Lata Dolo Equiparator"* Gross negligence is held to be equivalent to intentional wrong.

**A.     Annotated Exhibit G-3**

Document detailing Internet Protocol "IP" address confirmation by official agencies located at: http://www.ipadress.com/whois/198.208.251.24 Defines Internet Protocol "IP" address, 198.208.251.24 is applied to Defendants' employee agent, Kris Kordella aka kris.j.kordella@gm.com identified and personally admitted as Blogger "MONEY01".

**B.     Annotated Exhibit G-1**

Document located at: http://www.ip-adress.com/whois/198.208.251.22 visitor identified under Internet Protocol "IP" address 198.208.251.22 which is applied to user Christy Garwood of christy.garwood@gm.com who is appears to be a professional public relations Blogger for Defendant GM-GMAC that was on Plaintiff's website in concert with Mr. Kris J. Kordella up to the point Mr. Kordella left the libelous and blackening attacks on JL Mealer on June 9th, 2009.

**C.     Annotated Exhibit G-1 NOTE:** Whois information lists "IP" 198.208.251.22, (#.23), (#.24) assigned to Defendants' confirms Internet Protocol ("IP") owner Organization Name as "General Motors Corporation", who's Corporate ID is known as "GMC-20" which is registered to address: "200 Renaissance Center, Detroit Michigan 48265, US."

**D.     Annotated Exhibit H**

**One of many GMAC(fs) Corporate created Documents;** FDIC filed, SEC registered, and also located at Defendants' website in their Corporate Documents, URL:

9

http://www.gmacfs.com/us/en/business/investing/demandnotes/Prospectus.html, was specifically written by Defendants' entitled, **"GMAC Financial Services Prospectus for Demand Notes"** which is available for download from their website on as of 3/17/2010. SEC, FTC and FDIC also have registered copies available upon request, wherein the Defendants' clearly state in multiple areas of the 24 page document that GMAC(fs) Headquarters and the "Principle Executive Offices of GMAC"address as: <u>"GMAC LLC 200 Rennaissance Center Detroit, Michigan 48265"</u>

GMAC, GMACfs Headquarters as documented on GMAC website clearly identifies the same address of the registered IP/Internet Service Provider "ISP" address above as belonging to the Defendants', clearly in connection to GMAC and GMACfs provides prima facie evidence of culpability and combined contributory gross negligence in the matters at hand.

## VII.    <u>DEFENDANTS' DEFAMATORY ASSAULT</u>

**Defamation:** "A statement which causes harm to reputation".

A statement is defamatory if it "tends to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation." <u>Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d 569, 573 (Minn. 1987)</u>. "When the defamatory meaning is not apparent on its face, the plaintiff has the burden of pleading and proving such extrinsic facts." <u>Anderson v. Kammeier, 262 N.W.2d 366, 371 (Minn. 1977)</u>. *"Actus non facit reum nisi sit rea,"* The acts is not guilty unless the mind is also guilty

The comments below ***"highlighted, italicized in quotes"***, and meanings "<u>underlined in quotes</u>", were in their entirety, published by Defendants' on June 9th, 2009 during the attack emailed via RSS feed to many highly interested qualified investors, future customers, engineering employees et al. who had signed up for automatic website updates from the privately owned Mealer Companies LLC, investor information based website, "mealercompanies.com";

**1a.** (Merriam Webster Dictionary), ...***"Mealer Automobiles? America's next major automobile company??"***

"<u>Question Marks and multiple usage of Question marks meaning: **a:** Something</u>

*1 0*

unknown,unknowable, or uncertain **b:** someone (as an athlete or an automaker) whose condition, talent, or potential for success is in doubt."

**1b.** (Collins English Dictionary), *"...HAH!!!!!!!!!!!!!!!!!!!!!!!!"...*

" HAH abbreviation of HA meaning an exclamation denoting surprise, joy or grief. Both uttered and as written, it expresses as great variety of emotions, determined by the tine or the context.When repeated,ha,ha, it is an expression of laughter, satisfaction, or triumph, sometimes derisive
laughter; or sometimes it is equivalent to "Well, it is so." Ha-has, and articulate hootings of satirical rebuke. Carlysle

**1c.** (Stuart Jeffries, "The Joy of Exclamation Marks!" The Guardian, Apr. 29, 2009)

"There is surely a point after which exclamation marks no longer express friendliness. In this post-literal time, exclamation marks become signs of sarcasm as witty correspondents rebel against their overuse. Hence: 'I loved your last email! OMG did I LOVE it!!!!!!' The point is they didn't. They were being IRONIC."

**1d.** *Use of multiple Exclamation Points with exclamation point defined as:* "as a symbol of factorial function, or (in logic) occurring with an existential quantifier"

**2.** (Cambridge Idiom Dictionary), *"...it's obvious you don't have one (a mind)..."*

[commonly referred to as *out of your mind*:]

"extremely stupid or mentally ill."

**3a.** (Meriam-Webster Dictionary), *"...self serving..."*

"Serving one's own interests often in disregard of the truth or the interests of others."

**3b.** (Merriam-Webster Dictionary), *"...pathetic..."*

"Pitifully inferior or adequate"

**3c.** (Merriam-Webster Dictionary), *"...MORON..."*

"1. a person affected with mild retardation.   2. a very stupid person."

*4.* (Merriam-Webster Dictionary), *"...CLOWN..."*

"2. rude ill-bred person.   3. A person who habitually jokes and plays the buffoon.

**5.** (Merriam Webster Dictionary), *"...real..."* used twice to explain that Mealer was not

"real"and Mealer Companies LLC was not connected to a "real" engineering firm, thus

*|}*

inflect that MONEY01 was in fact real, creating a reliance on MONEY01 Blogger's

engineering skills as well as financial opinions in regards to JL Mealer and Mealer

Companies LLC.

"1. Not artificial, fraudulent, or illusionary. 2. GENUINE. 3. Genuinely good or capable of success.

## VIII.    **BLATANT INTENTIONS OF DEFENDANT, *MENS REA***

"MONEY01" is a term often used when teaching of principles of economics, business investing, venture capital, stock market affairs and other finance related matters whereas, MONEY01 by the very name portrays the premiere and foremost authority over the cognitive and factual content is portrays. With "MONEY01" inferred as the leader of monetary matter, Defendant seemed to imply that they were the foremost authority on financial matters of Mealer Companies LLC to be detailed by and through following MONEY01 discussions of MEALER AUTOMOBILES and JL MEALER himself. The term and moniker "MONEY01" as used by GM-GMAC agent employees as the Blogger name during the intentional misrepresentation and grossly negligent attack on MEALER represents to the reader that Defendants' opinion and statements far exceed even the collegiate terminology for a prerequisite class usually followed with "101" such as "English101" or by comparative, "Money101" as fraudulently claiming to be the premium authority on investing matters.

This egregious misconduct is a complete breach under an implied duty of good faith by Defendants' mortgage holder by and through acts of fraud and misrepresentation with intent to destroy Plaintiffs' reputation and this debtor's ability to compete within a business that is in direct competition to Defendants' corporate affiliate and co-Defendant who, in bankruptcy and reformation of their new corporate identity have benefited from degrading this Plaintiff, and collisional tortious interference of Plaintiff's business activities, preventing Plaintiffs' from

12

gaining "B-Round" growth funding, expansion of Mealer Companies LLC business is an unconscionable breach of fiduciary duty resulting in both personal injury and lawfully repugnant commercial disparagement under unfair business practices. Mealer Companies LLC is per se registered as an alternative fuel automaker as of 09/19/2008, Arizona Corporation Commission No. L-1477212-5, Internal Revenue Service Employer ID No. 26-3359384. The extreme duress GM-GMAC exerts on Mealer's person, family and future business matters with the blackening of Plaintiff's good name hinders Mealer from garnering support for funding second round expansion of his automobile manufacturing enterprise and has defiled him from attaining high level work related to automobile manufacturing industry.

The intentions and results of contract corrupting actions by the Defendants speak for themselves. *"Ex antecedentibus et consequentibus fit optima interpretatio,"* The best interpretation is made from antecedents and consequents. 2 Co. Inst. 317. *"Culpa Lata Dolo Aequiparatur"* Gross negligence is equal to fraud.

## IX.                **ADMISSION OF GUILT BY GM-GMAC**

### *Defendants' Mea maxima culpa*

This Instant Case provides multiple violations of century old laws regulating business practices as professional conduct is concerned. This case proves the illegal anti-competitive schemes that Defendants' have already admitted to when they offered a private half-hearted, insolent apology to MEALER (Exh B-1), pleading in part due to the then current GM-GMAC issues of looming bankruptcy and restructuring the employees and management were panicked which is copied in part as:

> "... lose most of my pension, all medical benefits and on, and on. Basically a financial Armageddon for me and hundreds of my friends and family members that have relied on GM for the last 60 plus years."..."However, the bottom line is I shouldn't have resorted to the"knucklehead" name calling in my blog and inferring your auto company isn't

13

legit..."

The private and disappointing apology that Defendants' issued from their employed agent is direct admission of guilt providing incontrovertible prima facie evidence, providing legal causation for the entirety of Plaintiff's Motion against Defendants' original claims which are counterclaimed herein by Plaintiff. Not only does Defendants' fraud vitiate the mortgage contract, but creates a basis for claim of damages for the intentional malicious attack which created the need for Plaintiff's bankruptcy and subsequent loan default. "Most of the disputes in the world arise from words." Morgan v. Jones, Lofft 160, 176, 98 Eng. Rep. 587, 596 (K.B. 1773) (Murray, C.J.).

Defendant's series of carefully articulated, defamatory libel 'per se' through a series of words and phrases which were Blogged by Defendant on Plaintiff's website on the World Wide Web and then compounded through direct email with interested parties impugning the validity of and thus creating public and private doubt of Plaintiff has by an unmistakably clever intent, destroyed prospective capital B-Growth funds to be used for business expansion and Plaintiff's economic growth and ability to cover mortgage payments. Defendant acted to fraudulently transfer and convey title of Plaintiff's real property by blatant tortious acts.

"Fraud vitiates the most solemn contracts, documents and even judgments," *U.S. v. Throckmorton*, 98 U.S. 61. Defendants' admission per se of their deceptive acts prove intentional malicious intent and fraud ab initio; *"Qui adimit medium, dirimit finem."* **He who takes away the means, destroys the end.** Co. Litt. 161. Defendants' had unequivocally intended and expected the Plaintiff to fail by and through their fraudulent actions.

Therefore the Defendants' entire contractual lien claimed on Plaintiff's home fails on it's face to satisfy terms, under Slander of Title (Material Misrepresentation), Breach of Contract

14

creating an issue of Impossibility of Performance through Defendants' fraudulent scheme to collect and prevent mortgage payments by predatory loan servicing and egregious general fraud.

## X.                    **COMPENSATORY DAMAGES**

*Respondeat superior, Actus reus*

Defendants expected and pursued the consequences of their defamatory blackening remarks of Plaintiff and Plaintiff's business and Plaintiff's ability to maintain mortgage payments prior to the publishing of comments which destroyed Plaintiff's reputation and hindered the business goals of, by and sought by this Plaintiff. Plaintiff's website clearly details the reason for the websites existence on page 2 entitled, "WHAT WE ARE REALLY ABOUT" and URL link "http://mealercompanies.com/?page_id=2" as follows in the first sentence and paragraph:

> "**Mealer Companies LLC** is gathering funding to begin full scale production of our automobile and 220v full power source (combined as one). We have the vehicle, the patents, the key personnel and are now simply procuring the key ingredient… *The remainder of our investment money.*"

Plaintiff's damages are not limited to the actual loss of pending contracts and prospective advantage of B-Growth Funding from multiple qualified investors who were completing their due diligence investigations which abruptly ended when Defendant publicly humiliated the Plaintiff which are outlined on Page 8 in plaintiff's funding request documents as distributed to qualified investors, Venture Capital firms, Banks and other lending outlets which states very clearly Plaintiff's intention's for funding the growth of Mealer Companies LLC (emphasis and font existing) entitled, "MEALER COMPANIES, FUNDING REQUEST SUMMARY, CONFIDENTIAL DISCLOSURE, J.L. MEALER, Q2 JUNE 2009":

> " **Mealer seeks to raise start-up $95,000,000** in VC capital and lease-back agreements over the first three years for Phase I, not taking into account pre-and post-production sales. After two years, Mealer will require another $105,000,000 of either private capital or loans for Phase II secondary manufacturing purposes. The company will have one major manufacturing facility in either VA or TN and electronics research and developmental center and manufacturing center either in the same state or elsewhere. At least four other ideal manufacturing locations are

*15*

under review and remain highly attractive. The cost of a fund-to-suit conversion of existing facilities proves to be a fast, viable and cost-effective alternative to new site construction. And, since there are a growing number of such facilities coming to market, Mealer is sure to find the right facilities to meet our requirements. "

## XI.   MEMORANDUM AND DEFENDANTS' VIOLATIONS OF LAW, ACTUS REAS

*Res ipsa loguitur "the thing speaks for itself."*

Defendant having initiated their libelous attack and being responsible for Defamation per se against this Plaintiff, by and through their blackening attack, did inflict and intentionally commit gross violations of following laws against the Plaintiff and Plaintiff's expansion of trade.

**COUNT ONE.   Intentional Interference With Prospective Economic Advantage**

The elements of the tort of are:

**1.   an economic relationship between [the plaintiff and some third person] containing the probability of future economic benefit to the [plaintiff],**

JL Mealer, while discussing funding for "B-Round Business Expansion" of the Mealer Automobile as an alternative fuel powered vehicle manufacturing company known as Mealer Companies LLC, with multiple high level funding groups, private individuals, engineers, supply companies, fabrication companies, et al, was unfairly attacked and irreparably blackened, libeled, other wise made to lose these funding accounts by Defendants who later apologized for (admitted) the events.

**2.   knowledge by the defendant of the existence of the relationship,**

Defendants conspired with multiple agents who entered Mealer's investor oriented website, signing up as Blogger named "MONEY01" then proceeded to destroy and blacken Mealer's reputation, name, company value and over-all funding viability of Mealer Automobiles, projects, goodwill and business in whole with crudes remarks while also claiming to be a *"...real..."* engineer of *"...real automobiles..."* and then

/ 6

ending his grossly disparaging tirade with *"...I wish you All the worst the world can give a self serving pathetic MORON."*

**3.   intentional acts on the part of the defendant designed to disrupt the relationship,**

Defendants signing on as MONEY01 provides acknowledgement that "B-Round Expansion Capital" was the objective of Mealer's website, and the defamatory attack proves malicious intent in conjunction with the admission/apology.

**4.   actual disruption of the relationship, [and] (5) damages to the plaintiff proximately caused by the acts of the defendant.' (Buckaloo v. Johnson (1975) 14 Cal.3d 815, 827.)**

Mealer has lost all pending business and pending contractual "B-Round Expansion Capital" business and personal relationships due to the June 9th , 2009 attack originating from within Defendants' offices.

## COUNT TWO. DEFAMATION and other ENCROACHMENTS

By and through corporate Public Relations agents, supply side and engineering employees acting in what appears to be combined effort may have been used to unfairly prevent Plaintiff from maintaining mortgage payments and livelihood which ultimately resulted in Mealer going bankrupt and declaring Chapter 7 BK in Oct 2009 once the "pending-due-diligence" of investors fell through per the intentional and subsequent published personal, professional and character attacks against Mealer from the once successful, larger and more experienced automaker (GM). There is no legitimate or lawfully protected reason for Defendants to venture into the privacy of Plaintiff's public domain in order intentionally defile his name and future to create what amounts to a clear and present danger against Plaintiff's ability and right to life, liberty and pursuit of property, compounded by contractual obligation such as a mortgage debt and the obligate (Plaintiff) Constitutionally protected rights.

/ 7

Supreme Court Justice Oliver Wendell Holmes, Jr stated concisely in what has become a landmark ruling related to the First Amendment and criminal, seditious libel, "the words are used in such circumstances and of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent..." "...no court could regard them as protected by any constitutional right..." Albeit, GM-GMAC has not committed criminal and seditious libel against the United States, but the very *actus reus* in controlling a private man's ability to live freely and conduct a competitive-business simply due to corporate fear of losing revenue is unjust enrichment, tortious and fraudulent on it's face within contract between parties.

The following counts relate to the attacks as defined and explained within this document.

**COUNT TWO-1.   Title 15 USC § 1. Trusts, etc., in restraint of trade illegal; penalty**

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...."

**COUNT TWO-2.   Title 15 USC § 2. Monopolizing trade a felony; penalty**

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations..."

**COUNT TWO-3.   Title 15 USC § 5. Bringing in additional parties**

"Whenever it shall appear to the court... ...that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned... "

**COUNT TWO-4.   Title 15 USC, CH 22, SUB III, §1125(a)(1)(B)**

"(1) Any person who, on or in connection with any goods or services... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(B) ... or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

The gross violations noted above are merely outlines of the crimes committed upon this Plaintiff and should not be considered the limits of damages. Plaintiff reserves the right to amend these claims as the full brunt of this crippling attack settle in.

## XII.                    PLAINTIFF'S ARGUMENT

The following laws are in favor of the Plaintiff in regards to protection under the law for violations by the Defendants' against mortgage contract obligations revolving around Plaintiff's Real Property at 6333 Gardenia Lane, Show Low, Arizona, which is the main factor of Defendants' actions regarding their desire to Lift the Automatic Stay during Plaintiff's bankruptcy, AND the reason for Defendants' contractual lien against said Real Property.

**A.    Real Estate Settlement Procedures Act of 1971 ("RESPA")**
         **[Codified to 12 USC 2616]**

"This Act does not annul, alter or affect, or except any person subject to the provisions of this Act from complying with, the laws of any State with respect to settlement practices..."

**B.    Real Estate Settlement Procedures Act of 1974 ("RESPA")**
         **[Codified to 12 U.S.C. 2601 note]**

"To further the national housing goal of encouraging homeownership by regulating certain lending practices and closing settlement procedures in federally related mortgage transactions to the end that unnecessary costs and difficulties of purchasing are minimized, and for other purposes."

**C.    Section 19**

"(b) No provision of this Act or the laws of any State imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof..."

Contract law is very clear and concise in regards to fraudulent activities by either contractual obligate. There is nothing more blatantly unlawful than the tortious violations noted herein which created difficulty in settlement or the mortgage debt, explicitly Defendants'

flagrant, abusive violations and oppressive bad faith conduct upon the Plaintiff which resulted in

the creation of numerous incurable deficiencies that by all standards of law have reduced their

claim to Lift The Automatic Stay as completely nugatory.

D.    **FDIC LAW REGULATIONS AND ACTS** *6500 Consumer Protection,*
**Title VIII-DEBT COLLECTION PRACTICES**

**TITLE 15 USC 1692e,f**

**§ 806 HARRASSMENT OR ABUSE**

A debt collector may not engage in any conduct the natural consequences of
which is to harass, oppress, or abuse any person in connection with the collection
of a debt. Without limiting the general application of the foregoing, the following
conduct is a violation of this section

> (1)    The use or threat of use of violence or other criminal means to
> harm the physical person, reputation, or property of any person.

**§ 807 FALSE OR MISLEADING RESPRESENTATIONS**

A debt collector my not use any false, deceptive, or misleading representation or
means in connection with the collection of any debt. Without limiting the general
application of the foregoing, the following conducts is a violation of this section:

> (8)    Communicating or threatening to communicate to any person credit
> information which is known or which should be known to be false,
> including the failure to communicate that a disputed debt is disputed.

> (10)   The use of any false representation or deceptive means to collect or
> attempt to collect any debt or to obtain information concerning a consumer.

**(f)§ 808 UNFAIR PRACTICES**

A debt collector may not use unfair or unconscionable means to collect or attempt
to collect any debt. Without limiting the general application of the foregoing, the
following conduct is a violation of this section
> (6)   Taking or threatening to take nonjudicial action to effect
> dispossession or settlement of property if--
>> (A)  There is no right to possession of the property claimed as
>> collateral through an enforceable security interest;
>> (B)  there is no present intention to take possession of the property;
>> or the property is exempt by law from such dispossession or
>> disablement.

20

**E.**    **Title 11 USC, § 510(c) Bank Reform Act of 1978**

          (c)    Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--

(1)    under principles of equitable subordination 15, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2)    order that any lien securing such a subordinated claim be transferred to the estate.

**F.**    **Title 11 USC 362(b)(20) under subsection (a),** of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

**G.**    **Pursuant 11 USC § 362(d)(1)** of the Bankruptcy Code, the automatic stay may only be lifted to permit a litigation to go forward in another court upon an initial showing of "cause" by the party seeking relief from the stay. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc), 907 F. 2d 1280, 1285 (2d Cir. 1990); In re New York Med Grp., P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y.2001).1

**H.**    **Title 18 USC § 1346. Definition of "scheme or artifice to defraud"**
For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

**I.**    **Title 18 USC § 1348. Securities fraud**

Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud any person in connection with any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o (d)); or

Title 18 is has been noted to detail the fraud by actual code that will negate prior claims made by this Plaintiff against contract violations negating this instant mortgage on it's face.

21

Defendants' are registered as a banking institution with the FDIC and SEC and required to file

and report mortgages which have become reportable securities. Defendants' deal in Securities.

**XIII.**       **ENJOINED MOTION FOR EVIDENTIARY HEARING**

**CONCERNING GROSS CREDITOR MISCONDUCT**

For the reasons noted herein this enjoined document and by consenting rule for joined

motion under 12 F.R.Civ.P.(g)(1), and presenting this instant case under extraordinary, exigent

circumstances, Plaintiff Prays this court accept this Motion For Evidentiary Hearing Concerning

Gross Creditor Misconduct as *enjoined* within and without this Adversary Complaint for the

purpose of hearing the merits and accepting evidence of this case for final ruling due to an

emergency situation creating an unfair advantage for Defendant during this legal engagement

between parties, time is of the essence. Pursuant to common sense reasoning and a Plaintiff's

bona fide effort to allow the mortgage holder Defendant a chance to remedy the gregarious harm

caused and unaltered thus ongoing, by their agent through their corporately owned "ISP," this

Plaintiff has extended his hand to resolve this situation from day one immediately upon the

blackening, denigrating defamation which occurred on 6/9/09 and again from the moment an

actual disruption of this private businessman to investor relations was realized 30, 60, 90, 120

days later culminating in this bankruptcy, but Creditor has ignored this Debtor. Co-Defendant

General Motors Corp during to their corporate bail-out and renaming responded through special

Public Relations agent Christine Stein who contacted Plaintiff to resolve the situation and then

backed out of the problem solving when crimes were validated. Plaintiff relies on this honorable

court to push these proceedings into light, validate evidence, substantiate the breach of contract

and compel both parties to court on these matters. A complete stay of proceedings for Plaintiff's

22

bankruptcy and Defendants' future Motions in regards to foreclosure on Plaintiff's mortgage is

requested and Plaintiff Prays, court accepts the applicable laws noted herein to back this request.

**XIV.** <u>**CONCLUSION**</u>

Plaintiff hereby Prays this court rule in favor of Plaintiff requiring a case review

adjudicated on the merits and evidence herein and prepare for an evidentiary hearing, and allow

for discovery and disclosure proceedings for incidents and claims detailed within this enjoined

complaint/motion and to deny Defendants' (Originally listed as "Movants") MOTION TO LIFT

AUTOMATIC STAY for reasons described herein, AND to proceed with providing a legal

forum whereby this case may be negotiated and applied pursuant to applicable laws and

Plaintiff's Motion for Summary Judgment *subsequi* since Defendant's are entitled to a defense,

AND/OR to grant immediate equitable relief in the form of Plaintiff's mortgage converted to a

dischargeable debt, AND for just cause to eliminate the lien via permanent discharge injunction,

and/or deny, denounce and remove Defendants' interest in Real Property known as 6333

Gardenia Lane Show Low, Arizona (85901) for reasons and legal authority noted herein, AND

consequential, compensatory and punitive damages for defamation and libelous offenses per se

by Defendant causing pain and suffering on Plaintiff and Plaintiff's family as this court deem

proper, AND to Rule in favor of the Plaintiff in regards to allegations of Title 15 USC § 1 & 2;

for restraint of trade, attempt to monopolize, combination, conspiracy, for violations against

Plaintiff in accordance to Title 15 USC, CH 22, SUB III, §1125(a)(1)(B) false or misleading

description of fact, or false or misleading representation of fact in relation to Plaintiff's name and

business, for damages incurred by Defendants placing Plaintiff in false light, for fraudulent

inducement, for fraudulent obstruction, for combined contributory negligence, for impairment of

earning capacity, for intentional duress, for trespass with intent to commit harm, for trespass and

assault with intent to violate contractual obligations, for Breach of Contract, for Breach of Fiduciary Duty, for Breach of good will, for malfeasance creditor misconduct with criminal intent, for Intentional Interference With Plaintiff's Prospective Advantage to the fullest extent of the law, AND to provide the maximum in monetary damages as detailed herein trebled where applicable, plus fines AND to prohibit Defendants' from further blackening Plaintiff's name or business, AND a written legitimate public apology from all Defendants'.

"The requirements for the issuance of a permanent injunction are (1) the likelihood of substantial and immediate irreparable injury; and (2) the inadequacy of remedies at law." *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1010 (9th Cir. 2004). "In issuing an injunction, the Court must balance the equities between the parties and give due regard to the public interest." *High Sierra Hikers*, 390 F.3d at 642. District courts possess "broad discretionary power" to fashion equitable relief, *see Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973),

Plaintiff moving for this affirmative equitable remedy withing this bankruptcy due to breach of performance claims against Defendants' under 11 USC § 101(5)(B).

## XV.                    **AFFIDAVIT VERFICATION BY SIGNATURE**

I, the Plaintiff, John Lewis Mealer, hereby claim the allegations and other facts regarding this bankruptcy issue of this case and all related cause of issues and evidence or annotated evidence as detailed by myself to be true to the best of my knowledge, and do hereby certify this statement with my signature below:

DATED: _3/30/2010_

_____
John Lewis Mealer

24