UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, et al.,

f/k/a General Motors Corp., *et al.*

Debtors

------------------------------------------------------------x

Chapter 11

Case No.09-50026
(REG)

(Jointly
Administered)

**CLAIM NUMBER:** 50600, as
amended on 4/6/2010

## NOTICE OF TRANSFER OF CLAIM
## PURSUANT TO FRBP RULE 3001(e)(2)

TO:  **GENERAL FOODS CREDIT INVESTORS NO. 2
CORPORATION** ("Assignor")

General Foods Credit Investors No. 2 Corporation
c/o Philip Morris Capital Corporation
225 High Ridge Road
Suite 300 West
Stamford, CT  06905
Attention:     Alex Russo, Vice President
E-mail:  alex.rus so@us.pm.com

With a copy to:

C. Anthony Reale
Senior Assistant General Counsel
Altria Client Services Inc.
6603 W. Broad St.
P.O. Box 85088
Richmond, VA 23285
Facsimile No. (914) 272-4384
Email:   Anthony.Reale@altria.com

and

A copy of all communications to Assignor (which shall not constitute notice) shall be delivered to:

Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
Attention: Richard Smolev
Facsimile No. (212) 836-6583
E-mail: rsmolev@kayescholer.com

As of April 6, 2010, 100% of Assignor's Claim (Claim Number 50600, as amended on 4/6/2010) against Debtors has been transferred to the following Assignee:

**GOLDMAN SACHS LENDING PARTNERS LLC**
200 West Street
New York, NY 10282-2198
Telephone:    212-902-1040
Facsimile:    646-769-7700
Email: ficc-ny-closers@gs.com

The Evidence of Transfer of Claim is attached as Exhibit A and the Assignee's payment and delivery instructions are attached as Exhibit B. A copy of the Proof of Claim and amended Proof of Claim filed by Assignor is attached as Exhibit C. No action is required if you do not object to the transfer of your claim. However, IF YOU OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN TWENTY (20) DAYS OF THE DATE OF THIS NOTICE, YOU MUST FILE A WRITTEN OBJECTION TO THE TRANSFER:

| Mailing Address: | Physical Address: |
|---|---|
| U. S. Bankruptcy Court<br>Southern District of New York<br>Attn: Motors Liquidation Company Docketing Center<br>Bowling Green Station, P.O. Box 5175<br>New York, NY 10274-5175 | U. S. Bankruptcy Court<br>Southern District of New York<br>Attn: Motors Liquidation Company Docketing Center<br>One Bowling Green, Room 534<br>New York, NY 10004-1408 |

2

31964626_V10 (3).DOC

If you file an objection, a hearing will be scheduled.  IF YOUR OBJECTION IS NOT TIMELY FILED, THE ASSIGNEE WILL BE SUBSTITUTED FOR THE ASSIGNOR ON THE BANKRUPTCY COURT RECORDS AS A CLAIMANT IN THIS PROCEEDING.

Dated: April 6, 2010

### GOLDMAN SACHS LENDING PARTNERS LLC

By: _____
Name: _____
Title: _____
Nancy Y. Kwok
Authorized Signatory

3

<u>EXHIBIT A</u>

Evidence of Transfer of Claim

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

Chapter 11

<u>Motors liquidation Company, et al.,</u>
<u>f/k/a General Motors Corp. et al.</u>

Case No. 09-50026
(REG)

Debtors

(Jointly Administered)

**CLAIM NUMBER:** 50600, as
amended on 4/6/2010

------------------------------------------------------------x

### EVIDENCE OF TRANSFER OF CLAIM

**GENERAL FOODS CREDIT INVESTORS NO. 2 CORPORATION** (the "Assignor"), for
good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,
does hereby unconditionally and irrevocably sell, transfer and assign unto **GOLDMAN SACHS
LENDING PARTNERS LLC** (the "Assignee") 100% of all rights, title and interest of Assignor
in and to Claim Number 50600, as amended on 4/6/2010, plus, if any, all interest, fees and other
amounts related thereto (the "Claim") against Motors Liquidation Company, whose Chapter 11
bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of
New York (or any other court with jurisdiction over the bankruptcy proceedings) as <u>In re Motors
Liquidation Company, et al., f/k/a General Motors Corp. et al.</u>, Case No. 09-50026 (REG)
(Jointly Administered).


Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Federal
Rules of Bankruptcy Procedure, and stipulates that an order may be entered recognizing this
Evidence of Transfer as an unconditional assignment and the Assignee herein as the valid owner
of the Claim. You are hereby requested to make all future payments and distributions, and to
give all notices and other communications, in respect of the Claim (or any portion thereof) to
Assignee.


*[The remainder of this page is left blank intentionally. The signatures appear on the next page.]*

31964626_V10 (3).DOC

31964626_V10 (3).DOC

IN WITNESS WHEREOF, dated the _6_ day of _April_, 2010.

GOLDMAN SACHS LENDING
PARTNERS LLC,
as Assignee

By _____
Name:
Title:    Nancy Y. Kwok
              Signatory

Accepted and agreed to as of this _6_ day of
April, 2010

**GENERAL FOODS CREDIT INVESTORS
NO. 2 CORPORATION,**
as Assignor

By _____

Name:  Alex Russo
Title:    Vice President

2

31964626_V10.DOC

IN WITNESS WHEREOF, dated the 6 day of _April_, 2010.

GOLDMAN SACHS LENDING
PARTNERS LLC,
as Assignee

By _____
    Name:
    Title:

Accepted and agreed to as of this 6 day of
April, 2010

GENERAL FOODS CREDIT INVESTORS
NO. 2 CORPORATION,
as Assignor

By _____

    Name: Alex Russo
    Title:  Vice President

2

# EXHIBIT B

## Assignee's Payment and Delivery Instructions

**Notice:**

Goldman Sachs Lending Partners LLC
200 West Street
New York, NY 10282-2198
Telephone:    212-902-1040
Facsimile:    646-769-7700
Email:  ficc-ny-closers@gs.com

**Wire:**

CITIBANK, N.A.
399 Park Avenue
New York, NY 10043
ABA Routing No.:  021-000-089
Account Name:  Goldman Sachs Lending Partners LLC
Account No.:  30581483

## EXHIBIT C

Proof of Claim and Amended Proof of Claim

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor (Check Only One): | Case No. | Your Claim is Scheduled As Follows: |
|---|---|---|
| ☒Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) | |
| ☐MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) | |
| ☐MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) | |
| ☐MLC of Harlem, Inc. (f/k/a Chevrolet Saturn of Harlem, Inc.) | 09-13558 (REG) | |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.*

| | | |
|---|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):GENERAL FOODS CREDIT INVESTORS NO. 2 CORPORATION | ☐ Check this box to indicate that this claim amends a previously filed claim. | *If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.* |
| Name and address where notices should be sent: KAYE SCHOLER LLP 425 PARK AVENUE NEW YORK, NEW YORK 10022 ATTN: RICHARD G. SMOLEV, ESQ. | Court Claim Number:_____ (If known) | |
| Telephone number:212-836-8012 Email Address: rsmolev@kayescholer.com | Filed on:_____ | |
| Name and address where payment should be sent (if different from above): PHILLIP MORRIS CAPITAL CORPORATION 225 HIGH RIDGE ROAD, SUITE 300 WEST STAMFORD, CT 06905 ATTN: DOUGLAS B. LEVENE, ESQ. | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
| Telephone number: 203-708-8347 | ☐ Check this box if you are the debtor or trustee in this case. | |

| | | |
|---|---|---|
| 1. Amount of Claim as of Date Case Filed, June 1, 2009: $2,915,934.73 | | 5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5. ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | | Specify the priority of the claim. |
| 2. Basis for Claim: SEE ATTACHMENT (See instruction #2 on reverse side.) | | ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). |
| 3. Last four digits of any number by which creditor identifies debtor: _____ 3a. Debtor may have scheduled account as: _____ (See instruction #3a on reverse side.) | | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.) Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5). |
| Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Equipment ☐ Other Describe: | | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7). |
| Value of Property: $_____ Annual Interest Rate____% | | |
| Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____ | | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8). |
| Basis for perfection: _____ | | ☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2)). |
| Amount of Secured Claim: $_____ Amount Unsecured: $_____ | | |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | | ☒ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__). |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.) | | Amount entitled to priority: |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | | $ |
| If the documents are not available, please explain in an attachment. | | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | | |
|---|---|---|
| Date: 11/24/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *[signature]* ALEX RUSSO, VICE PRESIDENT | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/08)

**ATTACHMENT TO PROOF OF CLAIM OF GENERAL FOODS CREDIT INVESTORS
NO. 2 CORPORATION, AS OWNER PARTICIPANT, WITH RESPECT TO THE TAX
INDEMNITY AGREEMENT AND PARTICIPATION AGREEMENT MADE BY
DEBTOR MOTORS LIQUIDATION COMPANY (f/k/a GENERAL MOTORS CORP.)
AS LESSEE IN RESPECT OF CERTAIN AUTOMOBILE MANUFACTURING
EQUIPMENT (THE "EQUIPMENT")**

**(TIA 2001 A-7)**

General Foods Credit Investors No. 2 Corporation ("Owner Participant") submits this

attachment to its proof of claim (the "Proof of Claim") against debtor-in-possession Motors

Liquidation Company f/k/a General Motors Corporation (Tax ID # 38-0572515) (the "Lessee" or

the "Debtor") with respect to the Lessee's obligations to or for the benefit of Owner Participant

under (i) a Tax Indemnity Agreement dated as of December 18, 2001 (as amended, restated, and

supplemented from time to time, the "TIA"), (ii) a Participation Agreement dated as of

December 18, 2001 (as amended, restated, and supplemented from time to time, the

"Participation Agreement") and (iii) certain other agreements delivered in connection with the

GM 2001A-7 leveraged lease transaction of the Equipment (the "Leveraged Lease Transaction")

as set forth below.

**The Leveraged Lease Transaction**

1.    Owner Participant has claims against the Debtor for indemnification based on the

Lessee's agreement (i) to indemnify Owner Participant for certain tax liabilities pursuant to the

TIA, and (ii) to indemnify Owner Participant for certain other losses pursuant to general

indemnity agreements set forth in the Lease and/or in the Participation Agreement. Capitalized

terms used but not defined herein shall have the meanings ascribed to such terms in the Lease

Agreement dated as of December 18, 2001 (as amended, restated and supplemented from time to

time, the "Lease"). The aggregate amount of Owner Participant's claims exceeds $2,915,939.73,

as set out below. The Owner Participant is also asserting claims on behalf of the Owner Trustee

31911317_V1.DOC

and Indenture Trustee for a damages claim payable pursuant to the Lease which are set forth in a separate Proof of Claim.

2.    Owner Participant is the sole beneficial owner of the Equipment pursuant to that certain Trust Agreement dated as of December 18, 2001 between the Owner Trustee identified therein and the Owner Participant (as amended, restated, and supplemented from time to time, the "Trust Agreement"). The Trust Agreement created a trust for the Equipment, established an Owner Trustee for such Equipment, and vested beneficial ownership of such Equipment in the Owner Participant.

3.    Concurrently with Owner Participant's acquisition of the Equipment, the Owner Trustee leased the Equipment to the Lessee pursuant to the Lease.

4.    Owner Participant invested approximately 20% percent of the total purchase price of the Equipment. To finance the balance of the purchase price for the Equipment, Owner Participant caused the Owner Trustee to issue "Equipment Notes" under that certain trust indenture and security agreement dated as of December 18, 2001 (collectively, as amended, restated, and supplemented from time to time, the "Trust Indenture"), between the Owner Trustee and the Indenture Trustee. The Equipment Notes issued pursuant to the Trust Indenture are secured by liens granted by the Owner Trustee to the Indenture Trustee on the Equipment and the Owner Trustee's pledge of certain of its rights under, among other things, the Lease. Except as expressly provided herein, the claims asserted in this Proof of Claim belong solely to Owner Participant, are not part of the trust estate held by the Owner Trustee and have not been pledged to the Indenture Trustee.

5.    To induce Owner Participant to make its equity investment and to enter into the Leveraged Lease Transaction, the Lessee agreed, among other things, to indemnify Owner

Participant directly for the imposition of certain tax liabilities or the loss of certain tax benefits to which it is entitled as the beneficial owner of the Equipment. This indemnification obligation is set forth in the TIA. Specifically, pursuant to Section 5 of the TIA, if Owner Participant suffers an imposition of tax or a loss of tax benefits as the result of an act or omission on the part of Lessee, the Lessee is required to indemnify Owner Participant for such Loss of Deductions or Income Inclusion by making a payment to Owner Participant in an amount sufficient to cover the Owner Participant's Loss with respect thereto.

6.    In addition, the Lessee agreed to indemnify Owner Participant for certain other losses, including the costs and expenses incurred by Owner Participant as a result of the Lessee's failure to perform its obligations under the Operative Documents. This general indemnity obligation is set forth in Section 23 of the Lease and Section 8 of the Participation Agreement.

### The Owner Participant Has or Will Have Tax Indemnity Claims

7.    The Debtor's bankruptcy filing is an Event of Default under the Lease giving the Indenture Trustee the right to foreclose the Owner Participant's right, title and interest in and to the Equipment. A foreclosure or other event could occur following rejection of the Lease by the Lessee in its bankruptcy case or during the bankruptcy or after emergence following the Debtor's assumption of the Lease, that gives rise to the imposition of a tax against the Owner Participant or to the loss of the Owner Participant's tax benefits, in each case giving rise to the Lessee's indemnity obligations under the TIA. Owner Participant's experience in other chapter 11 bankruptcies suggests that if the foreclosure has not taken place prior to a debtor's emergence from bankruptcy it will take place shortly thereafter. Therefore, while the tax indemnity claim is contingent as of the filing of this Proof of Claim, there is a high likelihood that an event giving rise to a claim under the TIA will occur in the near term.

8.    The tax indemnity claim set forth in the Proof of Claim is calculated as of the petition date and will be adjusted to reflect the actual date of the event that triggers the claim under the TIA.  Owner Participant's claims under the general indemnity provisions of the Participation Agreement are calculated as of the date hereof.  Owner Participant will supplement and/or amend the Proof of Claim as necessary to take into account any other intervening events.

**The Tax Indemnity Claim**

9.    In Section 5 of the TIA, the Lessee agreed to indemnify Owner Participant for certain tax liabilities and the loss of any tax benefits to which it was entitled as owner of the Equipment, including any such loss which occurs as a result of Lessee.  The Lessee's failure to honor its obligations under the Lease and other Operative Documents, and the resulting foreclosure against the Equipment, will cause Owner Participant to suffer a loss of tax benefits. Such Loss, in turn, triggers the Lessee's contractual obligation to indemnify Owner Participant.

10.    The measure of the Lessee's tax indemnity liability to Owner Participant is specifically set out in the TIA.  The TIA requires the Lessee to make a payment to Owner Participant in an amount that is sufficient to cover the Owner Participant's Loss to be with respect to the tax liabilities that become payable as the result of an act or omission on the part of Lessee.  *See* TIA, § 5.  By tying the Lessee's indemnity obligation to Owner Participant's Loss, the parties agreed that Owner Participant would receive indemnification in an amount that, with respect to such tax liabilities, would be sufficient to maintain the "anticipated after-tax yield" and "aggregate after-tax cash flow" that Owner Participant was contractually entitled to receive on its investment in the Leveraged Lease Transaction.

11.    The methodology for computation of the Lessee's tax indemnity liability also is set forth in the TIA.  That methodology begins with the calculation of the Loss suffered by Owner Participant.  In this case, the loss is the tax liability that Owner Participant will incur as a

result of the failure of the Lessee to perform its obligations under the Operative Documents, and the resulting foreclosure against the Equipment. Upon such event, Owner Participant's tax liability is to be determined by multiplying Owner Participant's tax rate (calculated based on the assumptions specified in Section 2 of the TIA by the taxable income recognized by Owner Participant. The taxable income resulting from the foregoing foreclosure will equal the excess of (a) the sum of the amount of the non-recourse loans outstanding and all other amounts owing under the Trust Indenture over (b) any remaining tax basis in the Equipment.

12.    Furthermore, the TIA requires that the payment by the Lessee indemnify Owner Participant for such tax liability on an after-tax basis (utilizing the maximum marginal rate of taxation applicable to corporations at the time such indemnity payment is due, rather than the rate set forth in Section 2 of the TIA). *See* TIA, § 5.

### The Tax Indemnity Claim Belongs Solely to the Owner Participant

13.    The Tax Indemnity Claim belongs solely to Owner Participant. It has not been pledged to the Indenture Trustee or to the holders of the Equipment Notes to secure the obligations owed by the Owner Trustee under the Trust Indenture. Moreover, the TIA is a contract directly between the Lessee and Owner Participant. The Owner Trustee is not a party. Second, the TIA provides that all payments owed under the TIA shall be made directly by Lessee to Owner Participant. The TIA further states unequivocally that "no such payment shall constitute part of the corpus of the Trust Estate" and, under the Operative Documents, the Certificate holders have agreed that they are to be paid solely from income and proceeds of the Indenture Estate. *See* TIA, § 11. Third, under the Trust Indenture, the Owner Trustee pledges only certain of its own rights under the Indenture Documents, which do not include the TIA. Even if the Owner Trustee attempted to pledge the Tax Indemnity Claim, it could not do so because it is not party to the TIA and is, thus, without power to pledge rights under that

agreement.  Consequently, neither the Indenture Trustee nor any other party can assert, compromise or otherwise affect Owner Participant's tax indemnity claim.  In addition, the Operative Documents require that Stipulated Loss Value and Termination Value be reduced to reflect, among other things, obligations under the TIA.  The Operative Documents provide a mechanism to cause the scheduled amount of Stipulated Loss Value to be reduced by the amount of the Lessee's obligation to the Owner Participant under the TIA, and consequently, allows the Lessee to protect its estate from excessive claims being asserted by the Indenture Trustee.

### General Indemnity Claim

14.    In Section 23 of the Lease and Section 8 of the Participation Agreement, the Lessee agreed to indemnify Owner Participant for all expenses incurred by Owner Participant in any way "relating to or arising out of" the Operative Documents.  As a consequence of the Lessee's defaults under the Lease and other Operative Documents, Owner Participant has incurred and will continue to incur losses, including the fees and expenses of its attorneys and other professional advisors relating to, among other things, the Lessee's filing of its chapter 11 case and breach of the Operative Documents.  As with the tax indemnity claim, the below claims based on the general indemnity provisions of the Participation Agreement and the Lease belong solely to Owner Participant and have not been pledged to the Indenture Trustee or to the holders of the Equipment Notes.

15.    As a consequence of the Lessee's defaults under the Lease and other Operative Documents, Owner Participant has incurred and will continue to incur losses, including the fees and expenses of its attorneys and other professional advisors (including the fees and expense reimbursements owed to each of Kaye Scholer LLP, Harbour-Felax Group, and Independent Equipment Company) relating to, among other things, the Debtor's filing of its chapter 11 case and breach of the Operative Documents.  Also as a consequence of such defaults, the Owner

Participant has incurred out-of-pocket travel expenses for its personnel to inspect the Equipment and attend meetings called by the Debtor.

16.     Owner Participant's claim for payment and/or reimbursement of such fees and expenses in respect of the Leveraged Lease Transaction is in an amount not less than $131,814.37 consisting of the following amounts: (i) $86,315.05 owed to Kaye Scholer LLP; (ii) $17,949.04 owed to Harbour-Felax Group; (iii) $25,657.90 owed to Independent Equipment Company; and (iv) $1,892.38 in out-of-pocket travel expenses. These amounts has been calculated through a date shortly before the filing of the Proof of Claim and, accordingly, Owner Participant reserves the right to supplement the Proof of Claim to set forth additional losses covered by the Lessee's general indemnity obligations, including without limitation the amounts of fees and expenses incurred after such date.

17.     Pursuant to the terms of the Trust Agreement or Indenture, the Owner Participant or Owner Trustee may have an obligation to reimburse the Owner Trustee, the Indenture Trustee, and the Loan Participants for legal fees and expenses and other expenses incurred by them respectively. The Owner Participant demands reimbursement for any such amounts, which cannot be determined at this time.

18.     As a result of the commencement of Lessee's bankruptcy's case, the Owner Participant may suffer other losses, costs, and expenses, including without limitation losses to its anticipated economic return, that are indemnifiable by Lessee under the general indemnity and general tax indemnity or other provisions of the Participation Agreement, Lease or TIA.

**Total Claim Amount**

19.     As a result of the foregoing, the aggregate amount of Owner Participant's claim set forth herein as of the date of filing of the Proof of Claim is $2,915,939.73, consisting of: (i) $2,784,125.36 (which amount is Owner Participant's tax indemnity claim); and

(ii) $131,814.37 (which amount is Owner Participant's claim for indemnification of fees and expenses pursuant to the Participation Agreement and/or the Lease).

**Miscellaneous**

20.    The amount of all payments on the claims set forth in this Proof of Claim, including all prepetition payments made by the Lessee, has been credited and deducted for the purposes of making this Proof of Claim.

21.    No judgment has been rendered on the claims set forth in this Proof of Claim.

22.    To the best of Owner Participant's knowledge, the claims set forth in this Proof of Claim are not subject to any valid setoff or counterclaim by the Debtor; *provided, however,* Owner Participant expressly reserves and does not waive any setoff or recoupment rights that it may possess.

23.    This Proof of Claim is asserted as a general unsecured claim.

24.    The filing of this Proof of Claim is not intended to and does not submit the Owner Participant to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for any purpose.  Owner Participant is filing this Proof of Claim under compulsion of the November 30, 2009 Bar Date Order established by the Bankruptcy Court to protect itself from the forfeiture of its claims against the Debtor by reason of such Bar Date Order.

25.    This Proof of Claim is without prejudice to claims, if any, that Owner Participant has or may have for payment of any other administrative expense allowable under Section 503(b) of the Bankruptcy Code with respect to any transaction arising out of the Operative Documents, whether or not such amounts are included in this Proof of Claim, and Owner Participant expressly reserves its rights to file such claim or any similar claim at an appropriate time.

31911317_V1.DOC                                    8

26.    The Operative Documents are voluminous, and the Debtor has copies of them. Consequently none of the Operative Documents for the Leveraged Lease Transaction has been attached hereto.  Copies of the Operative Documents will be provided to the Debtor or its representatives and to other appropriate parties in interest upon request to Kaye Scholer LLP at the address for notices set forth below.

27.    Owner Participant expressly reserves its right to (i) amend, update, modify, supplement or otherwise revise this Proof of Claim in any respect at any time, including, without limitation, for the purpose of asserting additional amounts with respect to the claims described herein; and/or (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents.  This Proof of Claim is filed without prejudice to the filing by Owner Participant of additional proofs of claim with respect to any other liability or indebtedness of the Lessee.  Owner Participant does not waive any of its rights to any claims asserted herein by not ascribing a specific dollar amount thereto at this time.  Owner Participant specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Owner Participant by the Lessee or any other party in interest in these bankruptcy cases, or any other person or entity whatsoever.  In addition, Owner Participant reserves the right to withdraw this Proof of Claim with respect to any of the claims set forth herein for any reason whatsoever.

28.    All notices and distributions in respect of this claim should be forwarded to:

> Phillip Morris Capital Corporation
> 225 High Ridge Road, Suite 300 West
> Stamford, CT 06905
> Attn.: General Counsel

With a copy to:

Kaye Scholer LLP
425 Park Avenue
New York, New York  10022
Attn:   Richard G. Smolev, Esq.

29.    Filing of this Proof of Claim is not and should not be construed to be: (a) a waiver
or release of Owner Participant's rights against any other entity or person liable for all or party of
any claim described herein; (b) a waiver of the right to seek to have the reference withdrawn
with respect to the subject matter of these claims, any objection or other proceedings commences
with respect thereto, or any other proceedings commenced in this case against or otherwise
involving Owner Participant; (c) a waiver of any right to the subordination, in favor of Owner
Participant, of indebtedness or liens held by creditors of the Lessee or its affiliated debtors; or
(d) an election of remedy which waives or otherwise affects any other remedy of Owner
Participant.

B 10 (Official Form 10) (12/08)

| United States Bankruptcy Court   Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Motors Liquidation Company (f/k/a General Motors Corporation) | Case Number:<br>09-50026 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**General Foods Credit Investors No. 2 Corporation**

Name and address where notices should be sent:
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022 - Attn: Richard G. Smolev, Esq.

Telephone number:
(212) 836-8012      e-mail: rsmolev@kayescholer.com

Name and address where payment should be sent (if different from above):
Phillip Morris Capital Corporation
225 High Ridge Road, Suite 300 West
Stamord, CT 06905 -Attn: Alex Russo

Telephone number:
(203) 708-8204

☑ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: __50600__
(If known)

Filed on: __11/25/2009__

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**     $_____1,600,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**  __SEE ATTACHMENT__
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property:$_____  Annual Interest Rate_____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____  Basis for perfection: _____

Amount of Secured Claim: $_____  Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>4/6/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Alex Russo, Vice President | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



**ATTACHMENT TO AMENDED PROOF OF CLAIM OF GENERAL FOODS CREDIT
INVESTORS NO. 2 CORPORATION, AS OWNER PARTICIPANT, WITH RESPECT
TO THE TAX INDEMNITY AGREEMENT AND PARTICIPATION AGREEMENT
MADE BY DEBTOR MOTORS LIQUIDATION COMPANY (f/k/a GENERAL MOTORS
CORP.) AS LESSEE IN RESPECT OF CERTAIN AUTOMOBILE MANUFACTURING
EQUIPMENT (THE "EQUIPMENT")**

(TIA 2001 A-7)

On November 25, 2009, General Foods Credit Investors No. 2 Corporation ("Owner

Participant") submitted the Proof of Claim assigned claim number 50600 (the "Proof of Claim")

in the amount of $2,915,939.73. The Owner Participant entered into that certain Settlement

Agreement dated as of March 1, 2010 (the "Settlement Agreement") with debtor-in-possession

Motors Liquidation Company f/k/a General Motors Corporation (Tax ID # 38-0572515) (the

"Lessee" or the "Debtor") and certain other parties. Under the terms of Section 3(e) of the

Settlement Agreement, the Debtor and other parties to the Settlement Agreement agreed that the

claim represented by the Proof of Claim was to be allowed as a prepetition general unsecured

claim in the amount of $1,600,000. Upon Motion dated March 4, 2010 (ECF Docket No. 5185),

the Debtor and its affiliated debtors moved pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure for entry of an order approving and ratifying the Settlement Agreement.

Such order (the "Order") was issued March 19, 2010 (ECF Docket No. 5317). Therefore the

Owner Participant is submitting this Amended Proof of Claim to amend the Proof of Claim to

conform the claim amount to the allowed claim provided in the Settlement Agreement and

Order. The Owner Participant further asserts as follows:

The Owner Participant submits this attachment to its amended proof of claim (this

"Amended Proof of Claim") against Debtor with respect to the Lessee's obligations to or for the

benefit of Owner Participant under (i) a Tax Indemnity Agreement dated as of December 18, 2001 (as amended, restated, and supplemented from time to time, the "TIA"), (ii) a Participation Agreement dated as of December 18, 2001 (as amended, restated, and supplemented from time to time, the "Participation Agreement") and (iii) certain other agreements delivered in connection with the GM 2001A-7 leveraged lease transaction of the Equipment (the "Leveraged Lease Transaction") as set forth below.

### The Leveraged Lease Transaction

1.    Owner Participant has claims against the Debtor for indemnification based on the Lessee's agreement (i) to indemnify Owner Participant for certain tax liabilities pursuant to the TIA, and (ii) to indemnify Owner Participant for certain other losses pursuant to general indemnity agreements set forth in the Lease and/or in the Participation Agreement. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Lease Agreement dated as of December 18, 2001 (as amended, restated and supplemented from time to time, the "Lease"). The aggregate amount of Owner Participant's claims exceeds $2,915,939.73, as set out below, but has been allowed under the terms of the Order in the amount of $1,600,000. The Owner Participant also asserted claims on behalf of the Owner Trustee and Indenture Trustee for a damages claim payable pursuant to the Lease which are set forth in a separate proof of claim which, pursuant to the terms of the Settlement Agreement, is being withdrawn by the Owner Participant.

2.    Owner Participant is the sole beneficial owner of the Equipment pursuant to that certain Trust Agreement dated as of December 18, 2001 between the Owner Trustee identified therein and the Owner Participant (as amended, restated, and supplemented from time to time, the "Trust Agreement"). The Trust Agreement created a trust for the Equipment, established an

2

Owner Trustee for such Equipment, and vested beneficial ownership of such Equipment in the Owner Participant.

3.    Concurrently with Owner Participant's acquisition of the Equipment, the Owner Trustee leased the Equipment to the Lessee pursuant to the Lease.

4.    Owner Participant invested approximately 20% percent of the total purchase price of the Equipment.   To finance the balance of the purchase price for the Equipment, Owner Participant caused the Owner Trustee to issue "Equipment Notes" under that certain trust indenture and security agreement dated as of December 18, 2001 (collectively, as amended, restated, and supplemented from time to time, the "Trust Indenture"), between the Owner Trustee and the Indenture Trustee.  The Equipment Notes issued pursuant to the Trust Indenture are secured by liens granted by the Owner Trustee to the Indenture Trustee on the Equipment and the Owner Trustee's pledge of certain of its rights under, among other things, the Lease.  Except as expressly provided herein, the claims asserted in this Proof of Claim belong solely to Owner Participant, are not part of the trust estate held by the Owner Trustee and have not been pledged to the Indenture Trustee.

5.    To induce Owner Participant to make its equity investment and to enter into the Leveraged Lease Transaction, the Lessee agreed, among other things, to indemnify Owner Participant directly for the imposition of certain tax liabilities or the loss of certain tax benefits to which it is entitled as the beneficial owner of the Equipment.  This indemnification obligation is set forth in the TIA.  Specifically, pursuant to Section 5 of the TIA, if Owner Participant suffers an imposition of tax or a loss of tax benefits as the result of an act or omission on the part of Lessee, the Lessee is required to indemnify Owner Participant for such Loss of Deductions or

3

Income Inclusion by making a payment to Owner Participant in an amount sufficient to cover the Owner Participant's Loss with respect thereto.

6.    In addition, the Lessee agreed to indemnify Owner Participant for certain other losses, including the costs and expenses incurred by Owner Participant as a result of the Lessee's failure to perform its obligations under the Operative Documents. This general indemnity obligation is set forth in Section 23 of the Lease and Section 8 of the Participation Agreement.

### The Owner Participant Has or Will Have Tax Indemnity Claims

7.    The Debtor's bankruptcy filing is an Event of Default under the Lease giving the Indenture Trustee the right to foreclose the Owner Participant's right, title and interest in and to the Equipment. A foreclosure or other event could occur following rejection of the Lease by the Lessee in its bankruptcy case or during the bankruptcy or after emergence following the Debtor's assumption of the Lease, that gives rise to the imposition of a tax against the Owner Participant or to the loss of the Owner Participant's tax benefits, in each case giving rise to the Lessee's indemnity obligations under the TIA. Owner Participant's experience in other chapter 11 bankruptcies suggests that if the foreclosure has not taken place prior to a debtor's emergence from bankruptcy it will take place shortly thereafter. Therefore, while the tax indemnity claim is contingent as of the filing of this Proof of Claim, there is a high likelihood that an event giving rise to a claim under the TIA will occur in the near term.

8.    The tax indemnity claim set forth in the Proof of Claim is calculated as of the petition date and will be adjusted to reflect the actual date of the event that triggers the claim under the TIA. Owner Participant's claims under the general indemnity provisions of the Participation Agreement are calculated as of the date hereof. Owner Participant will supplement and/or amend the Proof of Claim as necessary to take into account any other intervening events.

4

**The Tax Indemnity Claim**

9.    In Section 5 of the TIA, the Lessee agreed to indemnify Owner Participant for certain tax liabilities and the loss of any tax benefits to which it was entitled as owner of the Equipment, including any such loss which occurs as a result of Lessee.  The Lessee's failure to honor its obligations under the Lease and other Operative Documents, and the resulting foreclosure against the Equipment, will cause Owner Participant to suffer a loss of tax benefits. Such Loss, in turn, triggers the Lessee's contractual obligation to indemnify Owner Participant.

10.    The measure of the Lessee's tax indemnity liability to Owner Participant is specifically set out in the TIA.  The TIA requires the Lessee to make a payment to Owner Participant in an amount that is sufficient to cover the Owner Participant's Loss to be with respect to the tax liabilities that become payable as the result of an act or omission on the part of Lessee.  *See* TIA, § 5.  By tying the Lessee's indemnity obligation to Owner Participant's Loss, the parties agreed that Owner Participant would receive indemnification in an amount that, with respect to such tax liabilities, would be sufficient to maintain the "anticipated after-tax yield" and "aggregate after-tax cash flow" that Owner Participant was contractually entitled to receive on its investment in the Leveraged Lease Transaction.

11.    The methodology for computation of the Lessee's tax indemnity liability also is set forth in the TIA.  That methodology begins with the calculation of the Loss suffered by Owner Participant.  In this case, the loss is the tax liability that Owner Participant will incur as a result of the failure of the Lessee to perform its obligations under the Operative Documents, and the resulting foreclosure against the Equipment.  Upon such event, Owner Participant's tax liability is to be determined by multiplying Owner Participant's tax rate (calculated based on the assumptions specified in Section 2 of the TIA by the taxable income recognized by Owner Participant.  The taxable income resulting from the foregoing foreclosure will equal the excess of

5

(a) the sum of the amount of the non-recourse loans outstanding and all other amounts owing under the Trust Indenture over (b) any remaining tax basis in the Equipment.

12.     Furthermore, the TIA requires that the payment by the Lessee indemnify Owner Participant for such tax liability on an after-tax basis (utilizing the maximum marginal rate of taxation applicable to corporations at the time such indemnity payment is due, rather than the rate set forth in Section 2 of the TIA). *See* TIA, § 5.

### The Tax Indemnity Claim Belongs Solely to the Owner Participant

13.     As confirmed by the terms of the Settlement Agreement and Order, the Tax Indemnity Claim belongs solely to Owner Participant. It has not been pledged to the Indenture Trustee or to the holders of the Equipment Notes to secure the obligations owed by the Owner Trustee under the Trust Indenture. Moreover, the TIA is a contract directly between the Lessee and Owner Participant. The Owner Trustee is not a party. Second, the TIA provides that all payments owed under the TIA shall be made directly by Lessee to Owner Participant. The TIA further states unequivocally that "no such payment shall constitute part of the corpus of the Trust Estate" and, under the Operative Documents, the Certificate holders have agreed that they are to be paid solely from income and proceeds of the Indenture Estate. *See* TIA, § 11. Third, under the Trust Indenture, the Owner Trustee pledges only certain of its own rights under the Indenture Documents, which do not include the TIA. Even if the Owner Trustee attempted to pledge the Tax Indemnity Claim, it could not do so because it is not party to the TIA and is, thus, without power to pledge rights under that agreement. Consequently, neither the Indenture Trustee nor any other party can assert, compromise or otherwise affect Owner Participant's tax indemnity claim. In addition, the Operative Documents require that Stipulated Loss Value and Termination Value be reduced to reflect, among other things, obligations under the TIA. The Operative Documents provide a mechanism to cause the scheduled amount of Stipulated Loss Value to be

6

reduced by the amount of the Lessee's obligation to the Owner Participant under the TIA, and consequently, allows the Lessee to protect its estate from excessive claims being asserted by the Indenture Trustee.

### General Indemnity Claim

14.    In Section 23 of the Lease and Section 8 of the Participation Agreement, the Lessee agreed to indemnify Owner Participant for all expenses incurred by Owner Participant in any way "relating to or arising out of" the Operative Documents. As a consequence of the Lessee's defaults under the Lease and other Operative Documents, Owner Participant has incurred and will continue to incur losses, including the fees and expenses of its attorneys and other professional advisors relating to, among other things, the Lessee's filing of its chapter 11 case and breach of the Operative Documents. As with the tax indemnity claim, the below claims based on the general indemnity provisions of the Participation Agreement and the Lease belong solely to Owner Participant and have not been pledged to the Indenture Trustee or to the holders of the Equipment Notes.

15.    As a consequence of the Lessee's defaults under the Lease and other Operative Documents, Owner Participant has incurred and will continue to incur losses, including the fees and expenses of its attorneys and other professional advisors (including the fees and expense reimbursements owed to each of Kaye Scholer LLP, Harbour-Felax Group, and Independent Equipment Company) relating to, among other things, the Debtor's filing of its chapter 11 case and breach of the Operative Documents. Also as a consequence of such defaults, the Owner Participant has incurred out-of-pocket travel expenses for its personnel to inspect the Equipment and attend meetings called by the Debtor.

16.    As set forth in the Proof of Claim, Owner Participant's claim for payment and/or reimbursement of such fees and expenses in respect of the Leveraged Lease Transaction was in

7

an amount not less than $131,814.37 consisting of the following amounts: (i) $86,315.05 owed to Kaye Scholer LLP; (ii) $17,949.04 owed to Harbour-Felax Group; (iii) $25,657.90 owed to Independent Equipment Company; and (iv) $1,892.38 in out-of-pocket travel expenses. These amounts were calculated through a date shortly before the filing of the Proof of Claim and, accordingly, Owner Participant reserved the right to supplement the Proof of Claim to set forth additional losses covered by the Lessee's general indemnity obligations, including without limitation the amounts of fees and expenses incurred after such date. However, the Owner Participant's claims asserted under this Amended Proof of Claim are limited to the agreed amount of $1,600,000.

17.    Pursuant to the terms of the Trust Agreement or Indenture, the Owner Participant or Owner Trustee may have an obligation to reimburse the Owner Trustee, the Indenture Trustee, and the Loan Participants for legal fees and expenses and other expenses incurred by them respectively. In the Proof of Claim, the Owner Participant demanded reimbursement for any such amounts, which cannot be determined at this time. However, the Owner Participant's claims asserted under this Amended Proof of Claim are limited to the allowed amount of $1,600,000.

18.    As a result of the commencement of Lessee's bankruptcy's case, the Owner Participant may suffer other losses, costs, and expenses, including without limitation losses to its anticipated economic return, that are indemnifiable by Lessee under the general indemnity and general tax indemnity or other provisions of the Participation Agreement, Lease or TIA. However, the Owner Participant's claims asserted under this Amended Proof of Claim are limited to the allowed amount of $1,600,000.

8

**Total Claim Amount**

19.    As a result of the foregoing, the aggregate amount of Owner Participant's claim set forth in the Proof of Claim as of the date of filing of the Proof of Claim is $2,915,939.73, consisting of: (i) $2,784,125.36 (which amount is Owner Participant's tax indemnity claim); and (ii) $131,814.37 (which amount is Owner Participant's claim for indemnification of fees and expenses pursuant to the Participation Agreement and/or the Lease).   However, the Owner Participant's claims asserted under this Amended Proof of Claim are limited to the allowed amount of $1,600,000.

**Miscellaneous**

20.    The amount of all payments on the claims set forth in this Amended Proof of Claim, including all prepetition payments made by the Lessee, has been credited and deducted for the purposes of making this Amended Proof of Claim.

21.    No judgment has been rendered on the claims set forth in this Amended Proof of Claim.

22.    To the best of Owner Participant's knowledge, the claims set forth in this Amended Proof of Claim are not subject to any valid setoff or counterclaim by the Debtor; *provided, however,* Owner Participant expressly reserves and does not waive any setoff or recoupment rights that it may possess.

23.    This Amended Proof of Claim is asserted as a general unsecured claim.

24.    The filing of this Amended Proof of Claim is not intended to and does not submit the Owner Participant to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for any purpose.  Owner Participant is filing this Amended Proof of Claim in furtherance of the terms of the Settlement Agreement and Order.

9

25.    The Proof of Claim provided that it was submitted without prejudice to claims, if any, that Owner Participant had or may have for payment of any other administrative expense allowable under Section 503(b) of the Bankruptcy Code with respect to any transaction arising out of the Operative Documents, whether or not such amounts were included in the Proof of Claim, and Owner Participant expressly reserved its rights to file such claim or any similar claim at an appropriate time.  In light of the Settlement Agreement, Owner Participant will not assert any such claim.

26.    The Operative Documents are voluminous, and the Debtor has copies of them. Consequently none of the Operative Documents for the Leveraged Lease Transaction has been attached hereto.  Copies of the Operative Documents will be provided to the Debtor or its representatives and to other appropriate parties in interest upon request to Kaye Scholer LLP at the address for notices set forth below.

27.    In the Proof of Claim, Owner Participant expressly reserved its right to (i) amend, update, modify, supplement or otherwise revise the Proof of Claim in any respect at any time, including, without limitation, for the purpose of asserting additional amounts with respect to the claims described herein; and/or (ii) file additional proofs of claim for additional claims which may be based on the same or additional documents.  In light of the Settlement Agreement, Owner Participant will not assert any such claim.  In the Proof of Claim, Owner Participant stated that it did not waive any of its rights to any claims asserted therein by not ascribing a specific dollar amount thereto at the time Owner Participant submitted the Proof of Claim.  In light of the Settlement Agreement, Owner Participant will not assert any such claim.  Owner Participant specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Owner Participant by the Lessee or any

10

other party in interest in these bankruptcy cases, or any other person or entity whatsoever.  In addition, Owner Participant reserves the right to withdraw this Amended Proof of Claim with respect to any of the claims set forth herein for any reason whatsoever.

28.    All notices and distributions in respect of this claim should be forwarded to:

> Philip Morris Capital Corporation
> 225 High Ridge Road, Suite 300 West
> Stamford, CT 06905
> Attn.: Vice President, Asset and Portfolio Administration

> With a copy to:

> Altria Client Services Inc.
> 6603 W. Broad Street
> P.O. Box 85088
> Richmond, Virginia 23285
> Attention:  C. Anthony Reale,
>                        Senior Assistant General Counsel

> With a copy to:

> Kaye Scholer LLP
> 425 Park Avenue
> New York, New York  10022
> Attn:   Richard G. Smolev, Esq.

29.    Filing of this Amended Proof of Claim is not and should not be construed to be: (a) a waiver or release of Owner Participant's rights against any other entity or person liable for all or party of any claim described herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims, any objection or other proceedings commences with respect thereto, or any other proceedings commenced in this case against or otherwise involving Owner Participant; (c) a waiver of any right to the subordination, in favor of Owner Participant, of indebtedness or liens held by creditors of the Lessee or its affiliated debtors; or (d) an election of remedy which waives or otherwise affects any other remedy of Owner Participant.