```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4 (3) 10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

In re

MOTORS LIQUIDATION COMPANY, et al.
(f/k/a General Motors Corp., et al.),

                    Debtors.
----------------------------------------X

CALLAN CAMPBELL, et al.,

                    Appellants,

          - against -

MOTORS LIQUIDATION COMPANY, et al.
(f/k/a General Motors Corporation, et al.),

                    Appellees.
----------------------------------------X

Chapter 11 No.
09 Bk 50026 (REG)

**MEMORANDUM & ORDER**

09 Civ. 6818 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

          On June 1, 2009, facing financial distress so severe that

liquidation of the company was an imminent threat, and following

extended negotiations with the United States Department of

Treasury regarding the financing and sale of the company's

assets, General Motors Corporation and certain of its affiliates

(collectively, "GM" or "Debtors") commenced cases under chapter

11 of the Bankruptcy Code in the United States Bankruptcy Court

for the Southern District of New York.  Simultaneously, GM moved

for approval of the sale of substantially all of its assets to a

United States Treasury-sponsored purchaser, NGMCO, Inc. (the

"Purchaser" or "New GM"), pursuant to section 363 of title 11,

United States Code (hereinafter, the "Bankruptcy Code"), (the "363 Motion" or "363 Transaction"). As the underlying transaction and instant appeal involve the interplay of certain provisions of the Bankruptcy Code, a brief sketch of this statutory landscape is warranted at the outset.

Section 363 of the Bankruptcy Code describes the rights and powers of the trustee or debtor-in-possession with respect to the use, sale or lease of property of the bankruptcy estate. See 3 COLLIER ON BANKRUPTCY ¶ 363.01 (15th ed. rev. 2009). Specifically, section 363(b) authorizes the sale of property of the estate other than in the ordinary course of business, subject to notice and hearing requirements. See id. at ¶ 363.02. Section 363(f) permits the sale of estate property "free and clear" of an interest in the property under certain circumstances. See id. at ¶ 363.06. Finally, section 363(m) limits the scope of appellate review of unstayed section 363 sale orders to the issue of the purchaser's good faith -- generally mooting appeals brought on other grounds and thus protecting good faith purchasers from the effects of reversal or modification on appeal once the sale has closed. See id. at ¶ 363.11.

Appellants here ("Appellants" or "Campbell Appellants") are five products liability claimants whose contingent claims arise from injuries sustained prior to Debtors' chapter 11 filing and

2

363 Motion.   These injuries allegedly involve GM vehicles.
Prepetition,   Appellants   had   each   commenced   litigation
proceedings against GM in various state and federal courts.
Appellees are the Debtors, including Motors Liquidation Company,
the Purchaser (collectively, "MLC"), and the United States on
behalf of the Department of Treasury ("USA," or, together with
MLC, "Appellees").   In the Bankruptcy Court, Appellants objected
to Debtors' 363 Motion, arguing (i) that section 363(f) of the
Bankruptcy Code does not authorize a sale "free and clear" of
potential post-Closing in personam products liability claims
against New GM and, further, (ii) that the Bankruptcy Court
lacked subject matter jurisdiction to enjoin post-Closing
disputes between, inter alia, products liability claimants and
New GM.[1]   On July 5, 2009, the Bankruptcy Court approved the 363
Transaction over the objections of Appellants and others.   That
Transaction has since closed and been consummated.

Presently before the Court is an appeal from the Bankruptcy
Court's Sale Order.   The appeal is directed specifically to the
provisions authorizing the sale of the Purchased Assets "free
and clear" of Appellants' existing products liability claims and
enjoining any successor liability claims they may have against

---

[1]     While Appellants' opening brief indicated that they had not filed
proofs of claim against Debtors in the Bankruptcy Court, Appellants Br. 1
n.1, Appellants' counsel clarified at oral argument that four of the five
Appellants have filed proofs of claim.   See Mar. 24, 2010 Oral Argument Tr.
("Tr.") 41:8-9.

3

New GM.  For the reasons discussed below, the appeal is denied

as moot, and the judgment of the Bankruptcy Court is affirmed.

## BACKGROUND[2]

To preserve the going-concern value of GM's assets and

business, and consistent with the over $19 billion in financing

provided by the Treasury, Debtors filed the 363 Motion to

approve the sale of substantially all of GM's assets, and the

assumption of certain contracts and leases and their assignment,

to the Treasury-sponsored Purchaser for over $90 billion in

consideration.  MLC Br. 8, Appellants Br. 7.  The Purchaser

would acquire the subject assets, assume certain specified

liabilities, and not assume other liabilities that were not

deemed "commercially necessary for the viability . . . [of] New

GM."  See, e.g., MLC CD-141 (July 1, 2009 Hr'g Tr. 135:16-20,

Dkt. No. 3205).

Specifically, the over $90 billion in consideration to GM

consisted of: a section 363(k) credit bid equal to the amount of

indebtedness owed to the Purchaser as of the closing under

---

[2]     The factual and procedural background of Debtors' underlying bankruptcy
petition and 363 Motion, and the 363 Transaction itself, is more fully set
forth in Bankruptcy Judge Gerber's thorough 87-page opinion approving the 363
Transaction, In re General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009)
("Sale Op."), familiarity with which is assumed.  Indeed, as one of our
colleagues has noted in connection with this bankruptcy case, "No sentient
American is unaware of the travails of the automobile industry in general and
of . . . [GM] in particular."  In re General Motors Corp., No. M-47 (LAK),
2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009) ("Dist. Stay Op.").
Accordingly, and given that the disposition of the instant appeal does not
turn on any material factual dispute among the parties, only certain aspects
of the transactional and procedural background need be summarized here.

4

certain credit facilities defined in the MPA (the UST Credit
Facilities and the DIP Facility) less the amount of indebtedness
under the DIP Facility; the cancellation of warrants issued by
GM to the Treasury; the issuance by the Purchaser to the Debtors
of 10% of the common stock of the Purchaser as of the closing;
the issuance by the Purchaser to the Debtors of warrants to
purchase up to an additional 15% of the shares of common stock
of the Purchaser; and the assumption by the Purchaser of certain
Assumed Liabilities (a defined term in the parties' agreement
and proposed Sale Order), which removed tens of billions of
dollars of claims against the Debtors from the chapter 11 cases.
Sale Op., 407 B.R. at 482.

       Following notice and hearing, numerous objections to the
363 Transaction were served and considered but no other offers
of any kind were received by GM, no alternative to the Sale was
proffered, nor was it argued that the sale was not in GM's best
interest.   Id. at 494.[3]   Indeed, the Bankruptcy Court found that
the only alternative to an immediate sale was liquidation.   Only
the United States Treasury was prepared to finance Debtors'
chapter 11 administration, and their DIP financing was expressly

---

[3]     The Bankruptcy Court found that the 363 Transaction was designed to
preserve the going concern value of those assets that the Treasury and the
Purchaser considered essential for New GM to be a competitive, economically
viable entity; avoid systemic failure related to the United States automobile
industry; permit the continued employment of hundreds of thousands of
workers; protect communities dependent upon the continuation of the business;
restore consumer confidence; and help establish an automotive manufacturing
business that would be viable, competitive, reliable, and a standard bearer
for United States industry.   See id. at 480.

5

conditioned upon GM's seeking and obtaining expedited approval

of the 363 Transaction. Id. at 480. As the Bankruptcy Court

found, liquidation would have been "a disastrous result for GM's

creditors, its employees, the suppliers who depend on GM for

their own existence, and the communities in which GM operates" -

- since, in the event of liquidation, creditors such as

Appellants and other objectors who were trying to increase their

incremental recoveries "would get nothing." Id. at 474.

Furthermore, the Bankruptcy Court found, and Appellants do

not dispute, that the 363 Transaction, as contemplated by the

Master Sale and Purchase Agreement and the Amended and Restated

Master Sale and Purchase Agreement (collectively, the "MPA"),

see Appellants Br., App. B, was the product of good-faith

negotiations between Debtors and their key stakeholders,

including the Treasury and the International Union, United

Automobile, Aerospace and Agricultural Implement Workers of

America (the "UAW"). Id. at 494-95; see also Tr. 33:17

(Appellants' counsel conceding that the Purchaser was a

purchaser in good faith).

The allocation of certain liabilities, such as contingent

products liability claims based on accidents or losses already

sustained (the "Existing Products Claims," which include those

of Appellants here) and potential products liability claims

based on accidents or losses not yet sustained but projected to

6

arise in the future (the "Future Products Claims"), was preliminarily determined during the initial rounds of negotiations. It was agreed that the assets would be sold free and clear of such liabilities, but that, should the Purchaser later agree to assume more of certain liabilities, including the products claims, there would be no downward adjustment in the consideration received by the Debtors. See Appellants Br. 5-7 (discussing "politically sensitive" liabilities). Negotiations continued following the filing of the 363 Motion and, prior to the Sale Hearing, the MPA was amended to provide that (i) New GM would indemnify GM's dealer network for any Existing or Future Products Claims successfully asserted against the dealers, Sale Op., 407 B.R. at 505 n.110, and (ii) New GM would assume liability for all Future Products Claims that arose post-Closing, regardless of whether the vehicle involved was manufactured pre-Closing. Id. at 481-82. However, the transfer of the Purchased Assets was to remain free and clear of any Existing Products Claims.

The agreement between the Debtors and the Purchaser, as embodied in the MPA and the Sale Order itself, made clear that the Purchaser would not pursue the 363 Transaction unless the assets were sold free and clear of those liabilities the Purchaser had not agreed to assume, including the Existing Products Claims of Appellants here:

7

> The Purchaser would not have entered into the MPA
> and would not consummate the 363 Transaction (i) if
> the sale of the Purchased Assets was not free and
> clear of all liens, claims, encumbrances, and other
> interests (other than Permitted Encumbrances),
> including rights or claims based on any successor or
> transferee liability or (ii) if the Purchaser would,
> or in the future could, be liable for any such
> liens, claims, encumbrances, and other interests,
> including rights or claims based on any successor or
> transferee liability . . . , other than, in each
> case, the Assumed Liabilities. The Purchaser will
> not consummate the 363 Transaction unless [the
> Bankruptcy Court] expressly orders that none of the
> Purchaser, . . . or the Purchased Assets will have
> any liability whatsoever with respect to . . . any
> liens, claims, encumbrances, and other interests,
> including rights or claims based on any successor or
> transferee liability, . . . other than as expressly
> provided herein or in agreements made by the Debtors
> and/or the Purchaser on the record at the Sale
> Hearing or in the MPA.

Appellants Br., App. B (Sale Order) ¶ DD (emphasis added).

Furthermore, section 7.1 of the MPA expressly provided:

> The respective obligations of Purchaser and
> Sellers to consummate the transactions
> contemplated by this Agreement are subject to the
> fulfillment or written waiver (to the extent
> permitted by Law), prior to or at the Closing, of
> each of the following conditions:
>
> (a) The Bankruptcy Court shall have entered the
> Sale Approval Order and Sale Procedures Order on
> terms acceptable to the Parties . . . .

Appellants Br., App. B (MPA) Art. VII § 7.1 (emphasis added).

8

Accordingly, the principal relevant provisions[4] of the Sale

Order, negotiated by the parties, authorized by the Bankruptcy

Court, and presently challenged on appeal, provided:

- Except for the Assumed Liabilities, pursuant to
  sections 105(a) and 363(f) of the Bankruptcy
  Code, the Purchased Assets shall be transferred
  to the Purchaser in accordance with the MPA, and,
  upon the Closing, shall be free and clear of all
  liens, claims, encumbrances, and other interests
  of any kind or nature whatsoever . . . including
  rights or claims based on any successor or
  transferee liability . . . [which] shall attach
  to the net proceeds of the 363 Transaction in the
  order of their priority . . . .

  Sale Order ¶ 7; see also id. ¶¶ AA, 10; Sale Op.,
  407 B.R. at 500 n.92 (citing Proposed Order).

- Purchaser shall not be deemed . . . to: (i) be a
  legal successor . . . to the Debtors . . . , (ii)
  have, de facto or otherwise, merged with or into
  the Debtors; or (iii) be a mere continuation or
  substantial continuation of the Debtors or the
  enterprise of the Debtors. . . . Purchaser shall
  not have any successor, transferee, derivative,
  or vicarious liabilities of any kind or character
  for any claims including, but not limited to,
  under any theory of successor or transferee
  liability, . . . and products or antitrust
  liability.

  Sale Order ¶ 46.

- [A]ll persons and entities, including but not
  limited to . . . litigation claimants . . .
  holding liens, claims, encumbrances, and other
  interests of any kind or nature whatsoever,
  including rights or claims based on any successor
  or transferee liability, against or in a Seller
  or the Purchased Assets (whether legal or

---

[4]      See also Appellants Br. 9 (citing Sale Order ¶¶ BB, DD, 6-8, 48 as
granting similar relief).

> equitable, secured or unsecured, matured or
> unmatured, contingent or noncontingent, senior or
> subordinated), arising under or out of, in
> connection with, or in any way relating to, the
> Sellers, the Purchased Assets, the operation of
> the Purchased Assets prior to the Closing, or the
> 363 Transaction, are forever barred, estopped,
> and permanently enjoined from asserting against
> the Purchaser, its successors or assigns, its
> property, or the Purchased Assets, such persons'
> or entities' liens, claims, encumbrances, and
> other interests, including rights or claims based
> on any successor or transferee liability.

> Sale Order ¶ 8; see also id. ¶ 47; Sale Op., 407
> B.R. at 500 n.92 (citing Proposed Order).

The Sale Order further provided that its provisions were
"nonseverable and mutually dependent on each other." Sale Order
¶ 69; see id. ¶ 47.[5]

On July 5, 2009, following a three-day evidentiary hearing
on the 363 Motion, the Bankruptcy Court entered the Sale Order
and Sale Opinion, authorizing the 363 Transaction free and clear
of claims and barring successor liability and other disputes
between, inter alia, products liability claimants and Purchaser
New GM as provided in the foregoing excerpts. While the
Bankruptcy Court's Sale Opinion did not expressly address the
jurisdictional objection of the Campbell Objectors-Appellants in
such terms, the court noted generally that "[b]ankruptcy courts

---

[5]     In addition, the Sale Order provided that the Bankruptcy Court retained
exclusive jurisdiction to interpret, implement, and enforce the Sale Order's
terms and provisions and to protect the Purchaser against any of the Retained
Liabilities -- i.e., those left with Old GM -- or the assertion of any lien,
claim, encumbrance, or other interest against the Purchased Assets.   Id. ¶
71.

10

have the power to authorize sales of assets at a time when there

is still value to preserve -- to prevent the death of the

patient on the operating table." Sale Op., 407 B.R. at 474.   In

determining the scope of the Bankruptcy Court's authority under

section 363(f) to authorize the sale "free and clear" of the

Existing Products Claims, and to authorize the injunctive

provisions barring any successor liability claims, the

Bankruptcy Court acknowledged the split among the circuits on

this statutory interpretation issue, and analyzed persuasive

(and, at that time, controlling) precedent, including the recent

decision of the bankruptcy court in In re Chrysler LLC, 405 B.R.

84 (Bankr. S.D.N.Y. 2009), which had been summarily affirmed by

the Second Circuit.[6]   See Sale Op., 407 B.R. at 499-506.   In

addition, the Bankruptcy Court noted that injunctions of the

character requested in the Proposed Order had been issued by the

bankruptcy courts in both Chrysler and In re Trans World

Airlines, Inc., 322 F.3d 283, 286-87 (3d Cir. 2003) ("TWA"), the

---

[6]       In Chrysler, after the Second Circuit reaffirmed in a full opinion its
earlier summary affirmance of the bankruptcy court's order authorizing a
section 363 sale of the assets of the former Chrysler LLC, 405 B.R. 84
(Bankr. S.D.N.Y. 2009), "for the reasons stated in the opinions of Bankruptcy
Judge Gonzalez," see 576 F.3d 108, 111 (2d Cir. 2009), the Indiana State
Pension Police Trust filed a petition for certiorari to the Supreme Court.
While that certiorari petition was pending, the section 363 sale of
Chrysler's assets was consummated.   On December 14, 2009, the Supreme Court
issued a summary order granting certiorari, vacating the judgment of the
Second Circuit, and remanding with instructions to dismiss the appeal as
moot.   Indiana State Police Pension Trust v. Chrysler LLC, 130 S. Ct. 1015,
1015 (2009), vacating 576 F.3d 108 (2d Cir. 2009); see also In re Chrysler
LLC, 592 F.3d 370, 370 (2d Cir. 2010) (per curiam) (dismissing the appeal on
remand).

11

latter being "the leading case on the [section 363(f)] issue." Sale Op., 407 B.R. at 504; see id. at 506 n.111 (citing In re Chrysler, No. 09-50002 (Bankr. S.D.N.Y. June 1, 2009) (Order Granting 363 Sale ¶¶ W-BB, 9-23), and TWA, 322 F.3d at 286-87).[7]

In approving the 363 Transaction and Sale Order, the Bankruptcy Court expressly found that the Purchaser was a good faith purchaser, both for sale approval purposes and "for the purpose of the protections section 363(m) provides." Sale Op., 407 B.R. at 494; see also Sale Order ¶ 55.[8]   The July 5, 2009 Sale Order provided for a four-day stay of its effectiveness to allow objectors to appeal, while authorizing Debtors and the Purchaser to close the 363 Transaction on or after Noon on July 9, 2009.   Sale Order ¶ 70.   The Sale Order also included a provision emphasizing that "[a]ny party objecting to this Order must exercise due diligence in filing any appeal and pursuing a stay or risk its appeal being foreclosed as moot in the event Purchaser and the Debtors elect to close prior to this Order becoming a Final Order." Id. at ¶ 70.

On July 6, 2009, Appellants and the Ad Hoc Asbestos Claimants' Committee ("Asbestos Committee") filed separate

---

[7]   In explaining the general principle that, if a buyer cannot obtain protection against successor liability, it may pay less for the assets because of the risk, the Bankruptcy Court noted parenthetically that "[w]hether the U.S. and Canadian Governments would have lent and ultimately bid a lesser amount here is doubtful, but this consideration provides the context for deciding [the] legal issues . . . ." Sale Op., 407 B.R. at 500 n.91.

[8]   See 11 U.S.C. § 363(m).   The significance of this undisputed finding for section 363(m) purposes is discussed further below.

motions under 28 U.S.C. § 158(d)(2) for certification of a
direct appeal of the Sale Order to the Second Circuit. See In
re General Motors Corp., 409 B.R. 24, 27 (Bankr. S.D.N.Y. 2009)
("Stay Op."). The Asbestos Committee -- but not Appellants here
-- also moved in the alternative for a stay of the Sale Order
pending appeal pursuant to Rule 8005 of the Federal Rules of
Bankruptcy Procedure. Id. at 29. The Bankruptcy Court denied
both motions in a July 7, 2009 decision. Id. at 35.[9]

The following day, on July 8, 2009, the Asbestos Committee
-- but, again, not Appellants here -- filed an emergency motion
in this Court for an expedited appeal and a stay of the Sale
Order pending appeal. On July 9, 2009, Judge Kaplan denied the
Asbestos Committee's motion for a stay in all respects. Dist.
Stay Op., 2009 WL 2033079 at *2. In reaching this conclusion,
Judge Kaplan noted, inter alia, that the terms of MPA
conditioned the purchaser's obligation to close upon the Sale
Order's not having been stayed and that even a brief stay would
constitute a default under the DIP Agreement. Id. at *1.
However, and notwithstanding "the significant possibility that
the appeal will be mooted by the consummation of the sale,"

---

[9]      In concluding its discussion of the factors relevant to the stay
motion, the Bankruptcy Court reasoned that staying the 363 Transaction and
risking the unraveling of the deal essentially for the sake of preserving
appellate arguments that could otherwise be mooted following closing was
unacceptable. In this connection, the Bankruptcy Court noted, "It comes as
no surprise to me the Individual Tort Litigants [i.e., Appellants here] did
not ask me for a stay." See id. at 34.

13

Judge Kaplan granted the Asbestos Committee's motion in the alternative for an expedited appeal in the District Court. Id. at *2.[10]

Although Appellants' counsel had observed the July 9 hearing before Judge Kaplan on the Asbestos Committee's motions, Appellants did not join in those motions or participate in the hearing. In addition, Appellants' counsel chose not to participate in the expedited briefing schedule set in the District Court's July 9, 2009 opinion, explaining by letter to Judge Kaplan that the Campbell Appellants instead planned to appeal pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure. USA Br., Ex. D (July 14, 2009 Jakubowski Letter). The appeal was timely filed in this Court and has since been fully briefed and supplemented with letters from Appellants and MLC Appellees regarding the Supreme Court's December 14, 2009 decision vacating the Second Circuit's judgment in Chrysler.[11] The Court heard oral argument on March 24, 2010, and has since received additional letters from Appellants and MLC Appellees.[12] Following extensive briefing, oral argument, and supplemental submissions, the appeal is ripe for decision.

---

[10]   It seems that, having pursued all avenues to preserve their litigation position by seeking a stay up to that point, the Asbestos Committee declined to seek a stay of the Sale Order in the Court of Appeals -- and ultimately withdrew their appeal of the Sale Order following the closing of the 363 Transaction.

[11]   See Dec. 16, 2009 Miller Letter; Dec. 21, 2009 Jakubowski Letter; Dec. 21, 2009 Miller Letter; Dec. 23, 2009 Jakubowski Letter.

[12]   See Mar. 25, 2010 Jakubowski Letter; Mar. 31, 2010 Miller Letter; Apr. 4, 2010 Jakubowski Letter.

14

## STANDARD OF REVIEW

District courts are vested with appellate jurisdiction over
bankruptcy court rulings pursuant to 28 U.S.C. § 158(a), and may
"affirm, modify, or reverse a bankruptcy judge's judgment, order
or decree."    Fed R. Bankr. P. 8013.    We review the legal
conclusions of the Bankruptcy Court de novo, and its findings of
fact under the clearly erroneous standard.    See Bay Harbour
Mgmt., L.C. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros.
Holdings, Inc.), 415 B.R. 77, 83 (S.D.N.Y. 2009) (citing
AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory
Corp.), 493 F.3d 82, 85 (2d Cir. 2007)).  The approval of a sale
of assets under section 363 of the Bankruptcy Code is generally
reviewed for abuse of discretion.    See In re Chrysler LLC, 576
F.3d at 119 (discussing the discretionary test of Comm. of
Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722
F.2d 1063 (2d Cir. 1983)).   A bankruptcy court abuses its
discretion when it arrives at "(i) a decision resting on an
error of law (such as application of the wrong legal principle)
or a clearly erroneous factual finding, or (ii) a decision that,
though not necessarily the product of a legal error or a clearly
erroneous factual finding, cannot be located within the range of
permissible decisions."    Schwartz v. Aquatic Dev. Group, Inc.
(In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 678 (2d Cir.
2003) (internal quotation and alteration marks omitted).

15

## DISCUSSION

On appeal, Appellants essentially press their objections to
the 363 Motion in the Bankruptcy Court, namely, that (i) section
363(f) does not authorize a sale free and clear of their in
personam products liability claims; and (ii) the bankruptcy
court lacked subject matter jurisdiction to bar or enjoin
disputes between the products liability claimants and New GM
based on successor liability or other theories. Appellants Br.
11-13. Appellants ask this Court to order the revision of the
Sale Order to modify or strike what they frame as its offending
provisions authorizing the sale of the Purchased Assets free and
clear of their contingent products liability claims and barring
Appellants from pursuing successor liability claims against New
GM. Appellants Br. 11, 20; Appellants Reply Br. 3.

While the issues of statutory interpretation underlying
these objections may be debatable, the response to Appellants'
objections on appeal is straightforward: we cannot grant the
requested relief because the appeal is moot. The law in this
context is clear and well settled. Because the Sale Order was
not stayed pending appeal, and the 363 Transaction has since
closed, the issues Appellants seek to raise on appeal are
statutorily moot under Section 363(m) of the Bankruptcy Code.
See 11 U.S.C. § 363(m). Moreover, the appeal is equitably moot
because Appellants have not made the requisite showing to

16

overcome the Second Circuit's presumption that an appeal of an unstayed, substantially consummated sale order is moot.   See Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 10 F.3d 944, 949-50, 952 (2d Cir. 1993) ("Chateaugay II").

Appellants struggle mightily to overcome the dispositive effect of Section 363(m) by advancing the argument that the Bankruptcy Court lacked "colorable" jurisdiction to enjoin their successor liability claims against New GM.   However, Appellants do not advance a colorable argument in support of their position.   Even taking Appellants' jurisdictional argument at face value, the contention that the Bankruptcy Court lacked "colorable" jurisdiction would fly in the face of persuasive historic and recent precedent.   Moreover, it is clear that Appellants' purported jurisdictional challenge is nothing more than the inverse of their merits arguments regarding the interpretation of section 363(f).

Second, Appellants' efforts to avoid equitable mootness fail for several reasons.   For example, the very nature of the requested relief, to the extent it could even be granted, would result in an inequitable rewriting of the Sale Order.   The ability to interlineate the Sale Order was never within the power of the Bankruptcy Court in the first instance.   At this stage, Appellants' requested revisions would unscramble the terms of the 363 Transaction, since, try as Appellants might,

17

the relief they seek based on alleged jurisdictional defects
could not be limited without creating an inequitable result.

As we are not persuaded by Appellants' arguments to
overcome the mootness of this appeal, we do not proceed to
further analysis of the merits of the Bankruptcy Court's
interpretation of section 363(f).

**I.   Section 363(m) Mootness**

**A.   General Limitation of Appellate Issues**

Section 363(m) of the Bankruptcy Code limits appellate
jurisdiction over an unstayed sale order issued by a bankruptcy
court to the narrow issue of whether the property was sold to a
good faith purchaser. 11 U.S.C. § 363(m); Contrarian Funds LLC
v. Aretex LLC (In re WestPoint Stevens, Inc.), No. 07-4772-bk,
2010 WL 1135448, at *12 (2d Cir. Mar. 26, 2010); Licensing by
Paolo, Inc. v. Sinatra (In re Gucci), 105 F.3d 837, 839 (2d
Cir.) ("Gucci I"), cert. denied, 520 U.S. 1196, 117 S. Ct. 1552,
1553 (1997); see also United States v. Salerno, 932 F.2d 117,
123 (2d Cir. 1991). Specifically, section 363(m) provides that

> [t]he reversal or modification on appeal of an
> authorization . . . of a sale or lease of property
> does not affect the validity of a sale or lease
> under such authorization to an entity that purchased
> or leased such property in good faith, whether or
> not such entity knew of the pendency of the appeal,
> unless such authorization and such sale or lease
> were stayed pending appeal.

18

11 U.S.C. § 363(m). The Second Circuit, like the majority of
other circuits, strictly enforces this so-called statutory
mootness rule of section 363(m), such that, "regardless of the
merit of an appellant's challenge to a sale order, [a reviewing
court] may neither reverse nor modify the judicially-authorized
sale if the entity that purchased or leased the property did so
in good faith and if no stay was granted." Gucci I, 105 F.3d at
840; see In re Lehman Bros., 415 B.R. at 85. The Court of
Appeals' recent decision in In re WestPoint Stevens, Inc.
emphasized that section 363(m) imposes a jurisdictional
limitation on appeals of unstayed section 363 sale orders. See
2010 WL 1135448 at *12 ("We adhere to our holding in Gucci I
that . . . we lack jurisdiction to review the entire Sale Order
-- not just the actual sale transaction.").[13]

    "This limitation of the issues on appeal generally is
warranted where an appellant did not seek a stay pending appeal
. . . and reflects the view that an appellant is rightly

---

[13]    While the Second Circuit had noted in Gucci I that it was unclear from
the text of section 363(m) why "an appellate court . . . could not order
some form of relief other than invalidation of the sale," its holdings in
both Gucci I and WestPoint Stevens underscored the jurisdictional effect of
statutory mootness.    See In re WestPoint Stevens, Inc., 2010 WL 1135448 at
*12 (citing cases including Gucci I, 105 F.3d at 838).

    Thus, to the extent Appellants would seek to frame their appeal as a
challenge only to particular provisions of the Sale Order and not to the
"validity" of the 363 Transaction itself, that would be a "specious
distinction."    In re Lehman Bros., 415 B.R. at 85; see In re WestPoint
Stevens, Inc., 2010 WL 1135448 at *12.    We cannot rewrite the terms of the
negotiated MPA and Sale Order, in which the "free and clear" provisions were
critical and nonseverable terms of the bargained-for transaction.    See, e.g.,
In re Lehman Bros., 415 B.R. at 85 ("As the bankruptcy court found, [the
purchaser] demanded that the sale be free and clear of liens, and without
that term no sale would have occurred.").

19

burdened with the risks associated with challenging a sale
authorization when that appellant did not first seek to stay the
sale." Gucci I, 105 F.3d at 840. Moreover, section 363(m)
applies even when a stay was denied by the district court after
a motion for a stay was timely made because statutory mootness
recognizes that a reviewing court "may be powerless to undo or
rewrite the terms of the consummated sale." Id. (citing
Salerno, 932 F.2d at 123). The rule thus furthers the policy of
finality in bankruptcy sales and assists the bankruptcy court to
secure the best price for the debtor's assets. In re WestPoint
Stevens, Inc., 2010 WL 1135448 at *13; Salerno, 932 F.2d at 123.

In this case, Appellants did not even seek a stay of the
Sale Order, and neither the Bankruptcy Court nor the District
Court granted the Asbestos Committee's application for a stay
pending appeal. The 363 Transaction closed in July 2009. Thus,
under section 363(m), this Court's review of the Sale Order is
limited to the sole issue of whether the Purchaser acted in good
faith. E.g., Gucci I, 105 F.3d at 840. Since Appellants do not
contest the Bankruptcy Court's finding that the Purchaser was
acting in good faith, see Tr. 33:17-18; see also Sale Op., 407
B.R. at 494; Sale Order ¶ 55, and this Court sees no indication
that the good-faith finding was erroneous, this appeal is moot.

20

## B. **Appellants' Jurisdictional Challenge**

Rather than challenging the good faith of the purchaser,
Appellants counter that the rule of section 363(m) applies only
to the extent that a bankruptcy court has acted within the scope
of its limited subject-matter jurisdiction, and argue that the
Bankruptcy Court lacked "colorable" authority "under its
'related to' jurisdiction to order a sale 'free and clear' of
Appellants' in personam products liability claims against New
GM." See Appellants Br. 14. However, a substantial body of
both historic and immediate precedent shows that Appellants'
jurisdictional arguments are meritless.

### 1. **Foreclosure of Jurisdictional Challenges by Section 363(m)**

As a threshold matter, while the Second Circuit has not
expressly decided the issue, other circuits have held that
section 363(m)'s strict limitation of issues on appeal of an
unstayed sale order does not distinguish between jurisdictional
and non-jurisdictional challenges. Pittsburgh Food & Bev., Inc.
v. Ranallo (In re Ranallo), 112 F.3d 645, 650 (3d Cir. 1997)
("[S]ection 363(m) does not distinguish between a challenge to
an order approving a sale predicated on jurisdictional grounds
and a challenge based on other grounds."); see also In re Sax,
796 F.2d 994, 997 (7th Cir. 1986) ("Section 363(m) does not say
that the sale must be proper under § 363(b); it says the sale

21

must be authorized under § 363(b)."); Parker v. Goodman (In re
Parker), 499 F.3d 616, 622-624 (6th Cir. 2007) (surveying case
law, including Sax and Ranallo, and rejecting jurisdictional
attack as moot); In re Wiebolt Stores, Inc., 92 B.R. 309, 311-12
(N.D. Ill. 1988) (applying Sax to find challenge to 363(f) "free
and clear" provision moot).    Moreover, the limitation of
jurisdictional challenges by section 363(m) is consistent with
existing Second Circuit authority emphasizing the importance of
finality in bankruptcy sales and recognizing a reviewing court's
"place in the statutory scheme."   In re WestPoint Stevens, Inc.,
2010 WL 1135448 at *12; cf. id. at *14 (distinguishing challenge
to an appealing party's standing from the issue of a reviewing
court's application of section 363(m), and rejecting the
purported standing challenge as moot); Salerno, 932 F.2d at 122
(rejecting challenge to propriety of section 363 sale
distribution as moot, and declining to address challenge to
appellate jurisdiction in light of section 363(m) mootness);
Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods.
Co.), 177 B.R. 791, 808 (S.D.N.Y. 1995) (dismissing
jurisdictional challenge as equitably moot under Chateaugay II).

     With respect to the interaction of section 363(m) and
jurisdictional challenges, the Seventh Circuit's reasoning in
Sax is instructive.   Appellant was a lien claimant on property
sold as an asset of the debtor's estate pursuant to section 363.

                                    22

The appellant argued that the subject property was not part of the debtor's estate and that the sale order therefore exceeded the bankruptcy court's jurisdiction. Sax, 796 F.2d at 996. The court of appeals held that the appeal was moot because the appellants failed to obtain a stay and the court "[could not] reach the question of whether the bankruptcy court had jurisdiction to order and approve the sale." Id. at 998. Noting that the bankruptcy court had jurisdiction to determine the issue of its own jurisdiction and that such a decision stands unless it is appealed properly, the Seventh Circuit reasoned that, "[d]espite the maxim that 'subject matter jurisdiction can be raised at any time,' valid procedural rules cannot be ignored just because the jurisdictional decision is being challenged rather than the decision on the merits." Id.

Appellants here likewise failed to appeal the Sale Order properly because they failed even to seek, much less obtain, a stay. Appellants' direct appeal of the Sale Order -- whether based on jurisdictional or other grounds -- is therefore moot. See id. To hold otherwise not only would "ignore valid procedural requirements," see id., but also would be inconsistent with the Second Circuit's clear policy of finality in bankruptcy sales and the reality, discussed further below, that this Court is powerless to rewrite the terms of the 363

23

Transaction.   See, e.g., Gucci I, 105 F.3d at 840; Salerno, 932
F.2d at 123.[14]

Second, this case does not fall within the potential narrow
exception to section 363(m) mootness suggested in the dicta of
Ranallo, the Third Circuit case upon which Appellants' seem to
premise their entire jurisdictional counterargument.   See 112
F.3d at 650.   In Ranallo, the court of appeals noted that "it
might be claimed that a bankruptcy court usurped power so that
even absent a stay, notwithstanding section 363(m), an order
reversing an order approving a sale permissibly could affect the
validity of the sale of assets" where "the bankruptcy court
approved the sale of assets not even colorably within its
jurisdiction."   Id.   Notwithstanding this statement, however,
the Ranallo Court actually held that the appeal before it was
moot under 363(m) because the bankruptcy court had at least
colorable jurisdiction over the assets, which the debtor-
appellant indirectly owned.   Id.; see also In re Parker, 499
F.3d at 624 (finding the potential exception recognized in
Ranallo inapplicable).

Since there is no argument on this appeal that the
Purchased Assets were not property of the Debtors' estate,[15] the

---

[14]   As none of the holdings in Salerno, Sax, or Ranallo depended on the
"absence of real harm of the objecting party," Appellants' attempt to
distinguish these authorities on that basis (or otherwise) is unpersuasive.
See Appellants Reply Br. 4-5.

24

theoretical distinction posited in the Ranallo dicta plainly does not apply here. Insofar as Appellants use Ranallo as the foundation for their "colorable jurisdiction" argument, that case becomes a one-legged stool: its dicta is inapposite; and its statutory mootness holding was basically the opposite of the outcome Appellants seek here -- notwithstanding that the purported jurisdictional challenge in Ranallo went to a more fundamental issue (namely, whether the assets sold were property of the estate) than the arguments advanced in this appeal. Moreover, Appellants have not cited, and this Court's research has not found, a single case that has applied or extended Ranallo's "colorable jurisdiction" dicta to hold that section 363(m) did not moot a jurisdictional challenge to an unstayed section 363 sale.[16]   As Appellants have not offered a persuasive reason to depart from precedent, we decline their invitation to do so here.

## 2.   The Bankruptcy Court's Authority to Issue the Challenged Provisions

Even assuming, arguendo, that Appellants' challenge to the Bankruptcy Court's authority is not itself mooted by section 363(m), their arguments regarding "colorable" jurisdiction

---

[15]   Rather, Appellants challenge the Bankruptcy Court's interpretation that "interests in property" under section 363(f) includes in personam choses in action arising under state law successor liability theories.   E.g., Appellants Br. 25 n.10, Appellants Reply Br. 10-11.
[16]   At oral argument, Appellants' counsel confirmed that he had not found any such authority.   Tr. 17:25.

nonetheless lack merit. "Colorable" means "appearing to be true, valid, or right." BLACK'S LAW DICTIONARY, colorable (8th ed. 2004); cf. Tr. 16:18-17:5 (colloquy regarding "colorable"). Appellants do not challenge the Bankruptcy Court's "inherent [or core] jurisdiction" to determine "whether the 'free and clear' provisions of the sale apply to in personam claims." Appellants Reply Br. 3 (citing Back v. LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633, 638 (S.D.N.Y. 1997)). Having conceded this point, as they must under well-settled law, see Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millennium Seacarriers, Inc.), 458 F.3d 92, 95 (2d Cir. 2006) ("'[O]rders approving the sale of property' constitute core proceedings [under] 28 U.S.C. § 157(b)(2)(N)"), Appellants' arguments focus instead on the Bankruptcy Court's alleged lack of "related to" jurisdiction over successor liability actions against the Purchaser. See Appellants Br. 17-18 (citing In re Chateaugay Corp., 213 B.R. at 639; Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1994); Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 162 (7th Cir. 1994)).

Appellees counter, and the Court agrees, that Appellants' focus on "related to" (that is, non-core) jurisdiction is misplaced.[17]   The jurisdictional issue here, if any, is the

---

[17]   Appellants' arguments with respect to "related to" jurisdiction rely principally on In re Chateaugay Corp. for the proposition that a bankruptcy court's "related to" jurisdiction does not encompass the power to enjoin

26

Bankruptcy Court's "core" or "arising under" jurisdiction to approve the 363 Transaction and issue the Sale Order. It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales, see 28 U.S.C. § 157(b)(2)(N) ("[C]ore proceedings include . . . orders approving the sale of property . . ."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. See 11 U.S.C. § 105(a); cf. also 28 U.S.C. § 1651 ("All Writs Act"). Moreover, courts have characterized the injunctive authority of bankruptcy courts as "core" when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of section 363(f). See In re Millennium Seacarriers, Inc., 458 F.3d at 95 (holding that an adversary action which turned on the

---

state successor liability actions against the Purchaser of the Debtors' assets in the absence of any articulated legal basis for an indemnity action or some other "conceivable effect" on the Debtors. See Appellants Br. 16-19; Appellants Reply Br. 3. Notably, however, In re Chateaugay Corp. involved not an objection to a section 363 sale order, but an adversary proceeding for declaratory and injunctive relief seeking to enjoin state court actions against a purchaser of assets years after consummation of a chapter 11 plan.

While Zerand-Bernal Group found that the bankruptcy court lacked authority to enjoin successor liability against a purchaser following a section 363 "free and clear" sale, the posture of that case was also that of an adversary proceeding commenced years after the winding up of the underlying bankruptcy. Thus, the Seventh Circuit's analysis of "related to" jurisdiction in Zerand-Bernal Group, like that of this Court in In re Chateaugay Corp., is distinguishable from this direct appeal of the Bankruptcy Court's ruling, because the issuance of the Sale Order and its disputed provisions plainly "arose under" the proceedings in the Bankruptcy Court and were not "tenuous" to that proceeding. Cf. Zerand-Bernal Group, 23 F.3d at 162. Furthermore, we note that courts in this District have declined to follow the more "restrictive" interpretation of section 363(f) evinced in Zerand-Bernal Group. See In re Portrait Corp. of America, Inc., 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (finding jurisdiction to enforce injunctive provisions in its "free and clear" sale order pursuant to section 363(f) and declining to follow Zerand-Bernal Group).

terms of a sale order was a core proceeding); Michigan
Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine
Radio Co.), 930 F.2d 1132, 1144-45 (6th Cir. 1991) (affirming
bankruptcy court's core jurisdiction to issue an order because,
inter alia, debtor-appellant and its successor-purchaser
asserted "free and clear" rights under section 363(f)); see also
TWA, 322 F.3d at 288-91 (successor liability claims against
purchaser were properly extinguished under section 363(f));
Smart World Techs. LLC v. Juno Online Servs., Inc. (In re Smart
World Techs., LLC), 423 F.3d 166, 169 n.3 (2d Cir. 2005)
("Section 363 permits sales of assets free and clear of claims
and interests.   It thus allows purchasers . . . to acquire
assets without any accompanying liabilities.") (emphasis added);
cf. MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 93 (2d
Cir. 1988) ("The injunctive orders issued by the Bankruptcy
Court were necessary to effectuate the Court's . . . authority .
. . to make sure that claims to [the debtor's] insurance
proceeds were . . . channeled to the settlement fund and could
not be asserted directly against the insurers.   The authority to
issue the injunction is thus a corollary to the power to dispose
of assets free and clear and to channel claims to the
proceeds."); id. at 94 (citing section 363(f) cases as support
for injunctive authority).   The injunctive provisions in the
Sale Order enjoining successor liability would thus be within

28

the Bankruptcy Court's core jurisdiction to authorize and effectuate the 363 Transaction "free and clear" of Appellants' claims under section 363(f).

Appellants challenge the Bankruptcy Court's "colorable" jurisdiction on the grounds that the Bankruptcy Court lacked authority to enjoin their in personam successor liability claims under section 363(f).[18] However, at the time the Sale Opinion and Order were issued, the Bankruptcy Court's interpretation and exercise of its authority under section 363(f) was consistent with the opinions of at least three Second Circuit judges --

---

[18] In supplemental letter briefing submitted after oral argument, Appellants cite the Second Circuit's recent decision in In re Johns-Manville Corp., Nos. 06-2103-bk, 06-2118-bk, 06-2186-bk, 2010 WL 1007832, at *14-*16 (2d Cir. Mar. 22, 2010) ("Manville IV"), on remand from Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (2009), to support their argument that section 363(f) did not authorize the Bankruptcy Court to transfer GM's assets free and clear of Appellants' in personam products liability claims. See Apr. 4, 2010 Jakubowski Letter, at 1. While Manville IV held that the bankruptcy court exceeded its in rem jurisdiction, that jurisdictional holding is inapposite.

The underlying settlement approval orders at issue in Manville III and Manville IV, the latest installments in the complex and decades-long bankruptcy saga of asbestos manufacturer Johns-Manville, channeled potential policy claims against the insurers of the company into a settlement trust. As we noted above, the Second Circuit had cited to the "free and clear" provision of section 363(f) as analogous authority when initially affirming the channeling injunctions, but noted that the Johns-Manville injunctions were distinct from the sort of free and clear injunctions typically authorized by 363(f). See MacArthur, 837 F.2d at 94; see also 11 U.S.C. § 524(g) (codifying a version of the bankruptcy court's channeling injunction in the Manville case); Manville IV, 2010 WL 1007832 at *15. In any event, the Court of Appeals' recent holding in Manville IV is distinguishable not only because a different source of injunctive authority was at issue, but also because that appeal involved the bankruptcy court's injunction of another liability insurer's third-party contribution and indemnity claims against a settling insurer based on the settling insurer's allegedly independent wrongdoing, where the non-derivative claim did not involve the res of the estate. Instead, the appellant-insurer sought to impose separate liability on the settling insurer. See 2010 WL 1007832 at *14. In addition, and in contrast to the instant case, the appellant-insurer in Manville IV lacked adequate notice of the underlying channeling and settlement orders such that due process concerns rendered mootness and res judicata doctrines inapplicable. Id. at *20.

29

whose ranks have since expanded to include a panel of three different judges who also affirmed the proposition that section 363(f) authorizes the sale of assets "free and clear" of successor tort liability,[19] another Bankruptcy Judge in this District, as well as panels of judges in other circuits including the Third and Fourth Circuits. Moreover, the subsequent vacatur of the Chrysler appeal -- an immediate precedent involving 363(f) "free and clear" provisions and injunctions against successor liability, see Sale Op., 407 B.R. at 506 & n.111 -- is instructive. In affirming the bankruptcy court's sale order in Chrysler, the Second Circuit's full opinion made clear, specifically with respect to successor liability claims of the existing products liability claimants, that "[b]ecause appellants' claims arose from Old Chrysler's

---

[19]    As discussed at oral argument, the Second Circuit recently issued a summary order emphasizing both the public policy and statutory bases for affirming a district court's dismissal of successor liability claims that were asserted against a purchaser in a section 363 sale. Douglas v. Stamco, No. 09-1390-cv, 2010 WL 337043, at *2 (2d Cir. Feb. 1, 2010). In Stamco, the Second Circuit cited TWA and reasoned that allowing successor tort claims to proceed directly against the purchaser would be inconsistent with the Bankruptcy Code's priority scheme. Id. at *2. The Court of Appeals further emphasized the importance of finality and respect for the bargains struck in section 363 sales:

> [T]o the extent that the "free and clear" nature of the sale (as provided for in the Asset Purchase Agreement ("APA") and § 363(f)) was a crucial inducement in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors.

Id. (citing Toibb v. Radloff, 501 U.S. 157, 163 (1991), In re Gucci, 126 F.3d at 387 (2d Cir. 1997) ("Gucci II")).

30

property, § 363(f) permitted the bankruptcy court to authorize
the [s]ale free and clear of appellants' interest in the
property." 576 F.3d at 126.[20] As noted above, following the
closing of the section 363 sale, the Supreme Court vacated the
Second Circuit's affirmance and remanded with instructions to
dismiss the appeal as moot. Indiana State Police Pension Trust,
130 S. Ct. at 1015.

Federal courts have an independent obligation to examine,
sua sponte, the presence or absence of subject matter
jurisdiction. E.g., Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir.
2006) (citing Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 328
(2d Cir. 2005)).[21] Given this fundamental principle, it was
implicit in the Supreme Court's instructions to dismiss the
Chrysler appeal as moot -- which left the bankruptcy court's
sale order intact -- that the bankruptcy court had jurisdiction
to enjoin existing claimants' successor liability claims against
the purchaser pursuant to section 363(f). See id. Of course,
the same implication flows from the Second Circuit's more recent
summary order in Stamco. See 2010 WL 337043 at *2.

---

[20]    While the Second Circuit expressly declined to define the scope of the
bankruptcy court's authority to extinguish the potential claims of future
claimants in Chrysler, such claims are not at issue on this appeal. See 576
F.3d at 127.
[21]    Indeed, it is precisely because of this obligation that we have
considered the Bankruptcy Court's jurisdiction more extensively in this
opinion -- notwithstanding the persuasive authority that section 363(m)
forecloses even this aspect of Appellants' appeal.

31

In light of the foregoing historic and immediate precedent finding bankruptcy courts possessed of such authority pursuant to section 363(f), it is clear that the Bankruptcy Court had more than "colorable" jurisdiction to issue the Sale Order's injunctive provisions providing that the Purchased Assets would be transferred "free and clear of all liens, claims, encumbrances, and other interests . . . including rights or claims based on any successor or transferee liability." Sale Order ¶ 7. Indeed, to contend otherwise is simply not a "colorable" argument.

Beyond the veil of Appellants' jurisdictional challenge, it is clear that Appellants are asking us to review whether the Bankruptcy Court interpreted section 363(f) correctly. Indeed, in their briefing and at oral argument, Appellants have essentially conceded that their jurisdictional argument is merely the inverse of their merits critique of the Bankruptcy Court's interpretation of section 363(f).[22] Appellants' argument that the Bankruptcy Court misinterpreted that provision of the Bankruptcy Code is thus addressing an alleged legal error -- which is fundamentally distinct from the question of whether the Bankruptcy Court had "colorable" authority to reach the statutory interpretation it did and to issue the Sale Order in

---

[22]   See Appellants Reply Br. 2-3; see also Tr. 16:7-11 ("THE COURT: But your jurisdictional argument is really just an inverse of a merits argument on statutory interpretation. MR. JAKUBOWSKI: That's absolutely true. That's absolutely true.").

accordance with that interpretation. See United Student Aid
Funds, Inc. v. Espinosa, No. 08-1134, 2010 WL 1027825, at *6
(U.S. Mar. 23, 2010).[23]   In any event, given the foregoing
authority, which confirms that the jurisdiction of the
Bankruptcy Court was more than colorable, and that the strict
limitation of section 363(m) applies on this appeal, any merits
analysis of Bankruptcy Court's application of section 363(f) is
beyond our power to review. In re WestPoint Stevens, Inc., 2010
WL 1135448 at *13-14; see also Gucci I, 105 F.3d at 840
("[R]egardless of the merit of an appellant's challenge . . . we
may neither reverse nor modify the judicially-authorized sale if
the entity that purchased or leased the property did so in good
faith and if no stay was granted.").[24]

---

[23]   In Espinosa, the Supreme Court rejected a Rule 60(b) challenge to a
bankruptcy court's confirmation order, notwithstanding the bankruptcy court's
legal error in not making a finding of "undue hardship" before confirming the
discharge of a portion of the debtor's student loan debt as required by
statute.   Id. at *8.   The unanimous Court noted the importance of finality
when litigants have failed to avail themselves of available procedures and
emphasized that "a judgment is not void [under Rule 60(b)] . . . simply
because it is or may have been erroneous." Id. at *6 (internal citations and
quotation marks omitted).   The Espinosa Court's reasoning is applicable here:
while not specifically presented with a jurisdictional challenge, the Supreme
Court noted that courts considering Rule 60(b)(4) motions based on a
jurisdictional defect "generally have reserved relief only for the
exceptional case in which the court that rendered judgment lacked even an
'arguable basis' for jurisdiction" since "total want of jurisdiction must be
distinguished from an error in the exercise of jurisdiction, and only rare
instances of a clear usurpation of power will render a judgment void." Id.
(internal citations and quotation and alteration marks omitted) (emphasis
added).   Cf., e.g., In re Sax, 796 F.2d at 997 (distinguishing between
propriety and authorization of a section 363 sale).
[24]   Without accepting Appellants' invitation to further analyze the merits,
we would note only that, as suggested by our foregoing discussion of
jurisdiction, Bankruptcy Judge Gerber's thorough analysis was consistent with
persuasive -- and then-controlling -- precedent in this District and Circuit
as well as the leading cases from other circuits with respect to the

## II. **Equitable Mootness**

As discussed above, section 363(m) is dispositive of this appeal, which is denied on that basis.[25]   For purposes of completeness, however, we emphasize that the appeal would also be equitably moot.

In the bankruptcy context, "[a]n appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." Chateaugay II, 10 F.3d at 949-950.   In order to overcome the "strong presumption" in this Circuit that an appeal of an unstayed, substantially consummated sale order is equitably moot, In re Delta Air Lines, Inc., 374 B.R. 516, 522 (S.D.N.Y. 2007), Appellants would have to establish the presence of all of the following five factors:

> (a) the court can still order some effective relief;
> (b) such relief will not affect the re-emergence of
> the debtor as a revitalized corporate entity; (c)
> such relief will not unravel intricate transactions
> so as to knock the props out from under the
> authorization for every transaction that has taken
> place and create an unmanageable, uncontrollable
> situation for the Bankruptcy Court; (d) the parties
> who would be adversely affected by the modification
> have notice of the appeal and an opportunity to
> participate in the proceedings; and (e) the
> appellant pursued with diligence all available
> remedies to obtain a stay of execution of the
> objectionable order if the failure to do so creates

interpretation of section 363(f).   Moreover, as we noted at oral argument, Appellants' granular interpretive critique would seem only to undermine their "colorable jurisdiction" claim. See, e.g., Tr. 24:23-24.
[25]   Appellants concede that section 363(m) is dispositive if it applies. Tr. 18:18-20; see In re WestPoint Stevens, Inc., 2010 WL 1135448 at *17.

> a situation rendering it inequitable to reverse the
> orders appealed from.

Chateaugay II, 10 F.3d at 952-53;[26] see ACC Bondholder Group v.
Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 367
B.R. 84, 92 & n.27 (S.D.N.Y. 2007).

We need not address Appellants' showing with respect to
each of the five Chateaugay II factors in turn because, as the
discussion below will demonstrate, Appellants have failed to
establish the presence of any of the requisite factors except
one,[27] and have thus failed to overcome the strong presumption of
mootness. See, e.g., In re Delta Air Lines, 374 B.R. at 522.
For example, it is clear that, inter alia, (i) this Court cannot
fashion effective relief without rewriting and unraveling the
integrated terms of this extensively negotiated transaction --
which would be beyond our power; and (ii) Appellants' failure to
pursue a stay with diligence has created a situation where it
would be inequitable to reverse or modify the Sale Order as
requested on this appeal.

---

[26]    As Chateaugay II involved an appeal from an order approving a plan of
reorganization, the threshold test includes asking whether "a reorganization
[has been] substantially consummated," and one of the five factors refers to
a debtors' "re-emergence" from bankruptcy.    However, the doctrine of
equitable mootness in general, and the Chateaugay II test in particular,
applies analogously in appeals from orders approving asset sales under
section 363. See In re Lehman Bros., 415 B.R. at 85 n.7.
[27]    The parties to this appeal do not dispute that "the parties who would
be adversely affected by the modification have notice of the appeal and an
opportunity to participate in the proceedings." See Chateaugay II, 10 F.3d
at 953.

35

With respect to both of these issues, Appellants essentially argue that their failure to seek a stay is "of no moment" in this case -- either because they sought an expedited appeal, while a stay was sought by another appellant (the Asbestos Committee), and both of those applications were denied, Appellants Br. 23, or because the "elective surgery" they now ask this Court to perform on the Sale Order involves "de minimis" amounts that would not unravel the 363 Transaction and therefore would not be inequitable. See, e.g., Appellants Reply Br. 7-8. These arguments are unavailing.

As a threshold matter, the requested remedy (characterized as "elective surgery" on the Sale Order to "carve out" its offending provisions) is beyond the power of this Court to grant. See In re Adelphia Commc'ns Corp., 367 B.R. at 97 (holding in equitable mootness analysis that the appellants' suggested "relief would rewrite the terms of the bargain, which is beyond the power of the Court"); see also Salerno, 932 F.2d at 123 (reasoning that "[i]t is . . . beyond the power of this Court to rewrite the terms of the trustee's sale of the assets" following consummation of the unstayed sale); In re Source Enterprises, 392 B.R. 541, 550 (S.D.N.Y. 2008) ("[C]ourts have found it difficult to sever one piece of a [p]lan, and have noted that such severance might ignore the tradeoff that allowed the parties to settle in the first instance and would treat a

36

non-severable provision of [their agreement] as dispensable.")
(internal quotation marks omitted).

    As the Bankruptcy Court found, and as discussed above, the
various terms of the Sale Order providing for the free and clear
sale of the Purchased Assets were of critical significance to
the 363 Transaction.   See, e.g., Sale Order ¶ DD.[28]   Following
the renegotiation of the agreements between Debtors and the
Purchaser providing that the Purchaser would assume the Future
Products Claims, the newly-expanded Assumed Liabilities still
did not include the Existing Products Claims.   See, e.g.,
Appellants Br. 7-8.   Moreover, the parties anticipated and
contracted against the sort of interlinear relief Appellants
request here.   See id. App. B (MPA) Art. VII § 7.1.   In other
words, the Bankruptcy Court could not have modified the Sale
Order without the parties' consent or written waiver.   Cf. Sale
Op., 407 B.R. at 517 ("This Court has found that the Purchaser
is entitled to a free and clear order.   The Court cannot create
exceptions to that by reason of this Court's notions of

---

[28]   Appellants' emphasis on Bankruptcy Judge Gerber's footnote that
"[w]hether the U.S. and Canadian Governments would have lent and ultimately
bid a lesser amount here is doubtful," and on the fact that the consideration
for the Purchased Assets did not change after the Purchaser agreed to assume
the Future Products Claims, is unavailing.   First, Bankruptcy Judge Gerber's
observation was clearly made in the context of his general explication of the
"free and clear" provision of section 363(f), and was not a conclusive
finding of fact.   Second, and more importantly, the Bankruptcy Court did find
that the express terms of the Sale Order and MPA made clear that the free and
clear provisions were indispensible and integrated terms of the 363
Transaction, without which the deal would not have been consummated.

equity.").[29]   This Court likewise lacks the power to rewrite the
Sale Order.

Focusing next on the fifth Chateaugay II factor, we find
that Appellants' deliberate failure to "pursue[] with diligence
all available remedies to obtain a stay of execution of the
objectionable order" has indeed "creat[ed] a situation rendering
it inequitable to reverse the orders appealed from."   See
Chateaugay II, 10 F.3d at 952-53.[30]   Assuming, arguendo, that

---

[29]   As we noted during oral argument, see Tr. 12:24-13:7, a judge's power
in this context is limited to an expression of disapproval and does not
extend to a rewriting of the negotiated agreement, as recent and well-
publicized cases in this District illustrate.   See SEC v. Bank of America
Corp., 653 F. Supp. 2d 507, 512 (S.D.N.Y. 2009) (Rakoff, J.) (rejecting a
proposed consent judgment as unfair, unreasonable, and inadequate and
directing parties to submit case management schedule for prompt trial); Mark
Hamblett, Judge's Rejection of 9/11 Settlement Raises Questions About His
Asserted "Power of Review", N.Y.L.J. (Mar. 24, 2010), at 1 (col. 3)
(discussing Judge Hellerstein's rejection of a proposed settlement on the
grounds that the settlement was inadequate).   A similar result would have
followed if the Bankruptcy Court (or this Court on appeal) had determined
that jurisdiction was lacking to approve the "free and clear" provisions of
the 363 Transaction: the Sale Order would have been rejected, not rewritten.
Cf. In re Source Enterprises, 392 B.R. at 550 (discussing bankruptcy court's
inability to rewrite a settlement agreement).
[30]   We emphasize that the Second Circuit has made it clear that an
appellant is obligated to protect its litigation position by seeking a stay –
– even where a stay may be unlikely to be granted.   See Deutsche Bank AG v.
Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416
F.3d 136, 144-45 (2d Cir. 2005) ("A chief consideration under Chateaugay II
is whether the appellant sought a stay . . . . We insist that a party seek a
stay even if it may seem highly unlikely that the bankruptcy court will issue
one . . . .   In the absence of any request for a stay, the question is not
solely whether we can provide relief without unraveling the Plan, but also
whether we should provide such relief in light of fairness concerns."); see
also In re Chateaugay Corp., 988 F.2d 322, 326 (2d Cir. 1993) ("Chateaugay
I") ("The party who appeals without seeking to avail himself of [the]
protection [of a stay] does so at his own risk.").
    In this connection, we are not persuaded by Appellants' argument that,
by seeking a stay (and arguing irreparable harm due to potential mootness),
they would have risked being judicially estopped from contesting mootness on
this appeal.   See Appellants Br. 24; Appellants Reply Br. 8. An appellant's
argument at a stay hearing regarding irreparable harm due to potential
mootness may well be used against them in appellate litigation if that stay
is denied.   See Stay Op., 409 B.R. at 31 ("This case, like most of those

38

this Court had accepted Appellants' jurisdictional argument,

found section 363(m) inapplicable, and further found that the

Bankruptcy Court lacked authority to enjoin successor products

liability claims against the Purchaser, our ruling and

consequent reversal of the Sale Order on jurisdictional grounds

would have to apply to all existing products liability

claimants, not merely the five Campbell Appellants before us on

this appeal.[31]  The "selective" jurisdictional relief requested

would be inequitable because, while courts strive to be neutral

and apply the law without favor to anyone, Appellants ask this

Court to favor them over other similarly situated products

---

addressing the issue, comes with both sides wanting to hedge their bets.");
In re Adelphia Commc'ns Corp., 367 B.R. at 93 (applying judicial estoppel).
Nonetheless, Appellants' choice was clear under governing law and by the
terms of the Sale Order itself: either seek a stay or face potential mootness
on appeal.  See Sale Order ¶ 70.  At oral argument, it became clear that
Appellants' counsel deliberately chose not to seek a stay because he was
confident that the appeal would not be equitably mooted.  This was an
audacious litigation strategy.  See Tr. 20:16-17.  Nonetheless, having not
sought the stay, Appellants are now faced with the consequences of that
choice.  See Chateaugay I, 988 F.2d at 326.  A known litigation risk did not
give Appellants license to flout well-settled procedural rules.  Accepting
appellants' argument to the contrary would both frustrate the policy of the
equitable mootness doctrine and undermine the doctrine itself.  Cf. In re
Parker, 499 F.3d at 622 & n.5 (rejecting as "absurd" the argument of an
appellant, a defendant in an adversary proceeding, who neither sought a stay
nor filed a direct appeal of the underlying bankruptcy order but claimed that
he had no obligation to appeal from a purportedly invalid and illegal order:
"The very nature of an appeal is to challenge perceived errors in a lower
court's rulings. To permit a party to circumvent proper procedures for review
in this manner would . . . cast asunder congressionally-enacted procedures
for review.").
[31]     In this connection, the Court agrees with Appellees that the requested
relief, based on an alleged jurisdictional defect in the Sale Order, would
"knock the props out" from the numerous transactions into which New GM has
entered since the 363 Transaction closed over eight months ago --
transactions which depended upon the terms of the Sale Order not being
disturbed.  See, e.g., USA Br. 23 (discussing transactions since the
closing); Tr. 34:18-21 (counsel discussing same).

39

liability claimants who did not pursue an appeal of the unstayed
Sale Order.[32]

Alternatively, and further assuming, arguendo, that this
Court were able to fashion broader relief applicable to all
Existing Products Claims or even just the selective relief
sought by the Appellants, rewriting the Sale Order to eliminate
the application of the "free and clear" or injunctive provisions
to these claimants would nonetheless unravel a fundamental
aspect of the integrated 363 Transaction and undermine the
subsequent transactions that have occurred since the Closing.
Appellants' request to reapportion their Existing Products
Claims to New GM cannot be considered "de minimis".[33]   Even

---

[32]   Appellants' counsel responded to this line of inquiry from the Court
during oral argument by saying that, because the other products liability
claimants did not file a direct appeal, they would be collaterally estopped
from arguing that any reversal and modification of the Sale Order should
apply to them.   See Tr. 41:18-42:4.   First, we are not persuaded by
Appellants' reliance on res judicata doctrines to suggest that the relief
they seek would not be inequitable or would not unravel the Sale Order.
Moreover, we note that this strict procedural rejoinder from Appellants'
counsel is somewhat ironic in light of Appellants' own choice not to comply
with well-established bankruptcy procedure to seek a stay and preserve their
litigation position here.   See, e.g., supra, note 30.

[33]   The cases cited by Appellants do not support their argument that
effective and equitable relief is available in this case because their claims
are "de minimis".   See Appellants Br. at 23.   For example, in LTV Corp. v.
Aetna Cas. & Sur. Co. (In re Chateaugay Corp.), 167 B.R. 776 (S.D.N.Y. 1994)
("Chateaugay III"), there was no showing that the deal involved financial
transactions that could not be unwound because the transaction only involved
a surety's payment to the debtor in return for a release of claims.   Id. at
778-79.   Appellants also cite In re Aurora Foods, Inc., No. 04-166(GMS), 2006
WL 3747306, at *4 (D. Del. 2006), but that case is easily distinguishable
because the district court was applying the Third Circuit's formulation of
the equitable mootness test, which seems to place the burden on appellees to
establish mootness under a differently formulated multi-factor test, rather
than requiring appellants to show the existence of this Circuit's five
Chateaugay II factors to overcome the presumption of mootness.   See id. at
*4.   What is more, the appellant in Aurora had actually sought a stay, which
was denied.   See id.

40

focusing solely on the products liability claims of the five
appellants before us, the punitive damages that could
potentially attach to those claims would greatly increase the
amounts at issue. See Tr. 28:15. Moreover, as counsel for MLC
Appellees explained at oral argument, there are approximately
$129 billion worth of claims against the Debtor relating to
pending litigation, the majority of which are products liability
claims. Tr. 32:5-8, 35:22-23.

Although, like the Bankruptcy Court, this Court is not
unsympathetic to the plight of the accident victims here, see
Appellants Reply Br. 9-10, we note that their position in the
bankruptcy appears to be neither better nor worse than that of
any other unsecured contingent creditor. Moreover, the relief
Appellants sought in the Bankruptcy Court and now seek from this
Court would unravel the 363 Transaction, the only alternative to
which was a liquidation in which they and other unsecured
creditors would have received nothing.

## CONCLUSION

For the foregoing reasons, the appeal is denied as moot, and the judgment of the Bankruptcy Court is AFFIRMED. We have carefully considered all of Appellants' arguments and, to the extent they are not explicitly addressed in this opinion, we have found them to be either moot or without merit.

**SO ORDERED.**

Dated:     New York, New York
           April 12, 2010

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

42

A copy of the foregoing Memorandum and Order has been mailed on
this date to the following:

Steve Jakubowski, Esq.
The Coleman Law Firm
77 West Wacker Drive, Suite 4800
Chicago, IL 60601

Harvey R. Miller, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Matthew L. Schwartz, AUSA
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007