Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                            :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | **09-50026 (REG)** |
| | : | **(Jointly Administered)** |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | |

------------------------------------------------------------x

**STIPULATION AND AGREED ORDER BETWEEN**
**THE DEBTORS, GENERAL MOTORS LLC, AND ACE**
**AMERICAN INSURANCE COMPANY PURSUANT TO 11 U.S.C.**
**§ 365 AUTHORIZING DEBTORS' ASSUMPTION AND ASSIGNMENT OF**
**CERTAIN INSURANCE POLICIES AND AGREEMENTS**

      Motors Liquidation Company (f/k/a General Motors Corporation)
("**MLC**") and certain of its subsidiaries, as debtors and debtors in possession in the
above-captioned chapter 11 cases (collectively with MLC, the "**Debtors**" and/or
"**Debtors/Assignors**"), General Motors, LLC (the "**Assignee**"), and ACE American
Insurance Company, on behalf of itself and its affiliated insurers and reinsurers

(collectively "**ACE**" and together with the Debtors, the "**Parties**"), hereby enter into this Stipulation and Agreed Order (the "**Stipulation**") and stipulate and agree as follows[1]:

**RECITALS**

A.    **WHEREAS**, ACE provides various forms of insurance and reinsurance to the Debtors (hereinafter, the "**ACE Policies**"), including but not limited to general liability, automobile liability, employer responsibility, officers and directors and umbrella/excess coverage; and

B.    **WHEREAS**, the ACE Policies include, but are not limited to, the policies listed on **Exhibit A** hereto.

C.    **WHEREAS**, in connection with and in addition to the ACE Policies, the Debtors and ACE have entered into numerous related agreements (hereinafter, the "**ACE Agreements**"), including but not limited to binders and a security agreement; and

D.    **WHEREAS**, the ACE Agreements include, but are not limited to, the agreements listed on **Exhibit B** hereto; and

E.    **WHEREAS**, the ACE Policies and ACE Agreements include documents comprising a Foreign Casualty Insurance Program under which ACE provides, among other things, general liability, employers responsibility liability, employee benefits liability, automobile liability, contingent automobile, and Defense Base Act insurance; and

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the ACE Policies and ACE Agreements (each as defined below) as applicable.

F.      **WHEREAS**, the Foreign Casualty Insurance Program involves a series of Master Policies issued by ACE to the Debtors, as well as a series of Local Policies issued by ACE and ACE partner companies to the Debtors and/or to their foreign subsidiaries and affiliates; and

G.      **WHEREAS**, the ACE Policies and ACE Agreements remain in effect to the extent required by their terms and conditions; and

H.      **WHEREAS**, the following are representative examples of some of the Debtors' obligations under the ACE Polices and ACE Agreements, although each obligation listed below is not necessarily due under each and every Ace Policy or ACE Agreement:

a.      Payment of premiums;

b.      Reimbursement of ACE for certain claims;

c.      Provision and maintenance of collateral security;

d.      Provision and maintenance of paid loss deposit funds and similar funds for payment of claims;

e.      Cooperation in the investigation, administration, and settlement of claims in accordance with the terms of the relevant policies;

f.      Defense of claims in accordance with the terms of the relevant policies; and

g.      Maintaining primary insurance coverage in accordance with the terms of the relevant policies; and

I.      **WHEREAS**, the following are representative examples of some of ACE's continuing obligations under the ACE Policies and ACE Agreements, although each

obligation listed below is not necessarily due under each and every Ace Policy or ACE Agreement:

        a.      Providing insurance coverage;

        b.      Paying covered claims in accordance with the terms of the relevant policies; and

        c.      Defending the insured(s) in accordance with the terms of the relevant policies; and

J.      **WHEREAS**, under the ACE Policies and ACE Agreements, ACE has on-going and material obligations to the Debtors, and the Debtors have on-going and material obligations to ACE; and

K.      **WHEREAS**, accordingly, the ACE Policies and ACE Agreements are executory contracts within the meaning of 11 U.S.C. § 365; and

L.      **WHEREAS**, on June 1, 2009, the Debtors commenced Chapter 11 bankruptcy cases (the "**Bankruptcy Cases**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and

M.      **WHEREAS**, also on June 1, 2009, the Debtors filed a Motion Pursuant to 11 U.S.C. §§363(b), 503(b) and 105(a) and Fed. R. Bank. P. 6003 and 6004 (I) Authorizing Debtors To (a) Continue Their Liability, Product, Property and Other Insurance Programs and (b) Pay All Obligations in Respect Thereof (the "**Insurance Motion**") [Docket No. 72]. In the Insurance Motion, the Debtors/Assignors stated among other things that the continuation of their Insurance Programs (as defined in the Insurance Motion) and the payment of all undisputed prepetition and postpetition

4

Insurance Obligations (as defined in the Insurance Motion) was essential to preserve the Debtors' business and preserve the value of the Debtors' estates for all creditors; and

N.      **WHEREAS**, on June 1, 2009, the Court issued a now-final order granting the Insurance Motion (the "**Insurance Order**") [Docket No. 172].  Among other things, the Insurance Order authorized and empowered the Debtors/Assignors to maintain their Insurance Programs without interruption and authorized the Debtors/Assignors to pay all undisputed Insurance Obligations, including those that were due and payable before commencement of the Bankruptcy Cases and those that are or become due and payable after the same.  The Insurance Order expressly provided that it did not constitute an assumption of any Insurance Programs; and

O.      **WHEREAS**, in connection with the Bankruptcy Cases, the Debtors/Assignors and the Assignee entered into an Amended and Restated Master Sale and Purchase Agreement, dated June 26, 2009 (the "**MSPA**").  The MSPA, among other things, effectuated the sale and transfer of substantially all of the assets of the Debtors/Assignors to the Assignee; and

P.      **WHEREAS**, on July 5, 2009, the Bankruptcy Court issued an Order (i) Authorizing Sale of Assets Pursuant to the MSPA, (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in connection with the Sale and (iii) Granting Related Relief (the "**Sale Order**") [Docket No. 2968]; and

Q.      **WHEREAS**, pursuant to the MSPA, the "Purchased Assets" include all the Debtors' insurance policies and the rights to proceeds thereof, other than certain identified policies that were specifically excluded from the sale.  (*See* MSPA at § 2.2(a)(xvii)); and

R.    **WHEREAS**, pursuant to the MSPA, the "Purchased Contracts" include all "Contracts" other than "Excluded Contracts."   For clarity, "Purchased Contracts" include any "Executory Contract" designated as an "Assumable Executory Contract" as of the applicable "Assumption Effective Date."  (*See* MSPA at § 2.2(a)(x)); and

S.    **WHEREAS**, the ACE Policies and ACE Agreements are "Purchased Assets" and/or "Purchased Contracts" under the MSPA; and

T.    **WHEREAS**, pursuant to the MSPA, as approved by the Sale Order, the Debtors are authorized to assume all executory contracts and assign them to the Assignee subject to resolution or overruling of any objections of the counterparties to such contracts  (*See* MSPA at §§ 2.2(a)(x); 2.2(b)(vii); 2.4; and 6.6)); and

U.    **WHEREAS**, in order to further effectuate and implement the transaction authorized by the Sale Order and memorialized in the MSPA, on or about September 8, 2009, the Debtors/Assignors, ACE, and Assignee entered into an Assumption and Assignment Agreement to facilitate the assumption and assignment of the ACE Policies and ACE Agreements on the terms and conditions contained therein, and with the consent of ACE; and

V.    **WHEREAS**, the Debtors/Assignors, ACE, and Assignee wish to amend and restate the terms of the Assumption and Assignment Agreement as set forth herein; and

W.    **WHEREAS**, it is the intention of the Parties that coverage available under the ACE Policies be allocated and responsive to liabilities in the manner and to the extent that such liabilities have been allocated by the Debtors/Assignors and the Assignee under the MSPA.  It is not the intention of the Parties to expand, increase, alter, or otherwise

modify the terms and conditions of any of the ACE Policies and/or the obligations of ACE under the ACE Policies and ACE Agreements; and

X.    **WHEREAS**, counsel to the Unsecured Creditors Committee in these Bankruptcy Cases has reviewed this Stipulation and does not object to its entry; and

Y.    **WHEREAS**, based on the foregoing, the Parties have determined to consensually resolve this matter by entering into this Stipulation.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED,** by and between the Parties that:

## AGREEMENT

1.    <u>Incorporation of Recitals.</u>  The foregoing Recitals are incorporated herein as if set forth in full.

2.    <u>Effective Date</u>.  This Stipulation shall be effective as of the date on which it becomes a final order that is not subject to appeal or stay (the "**Effective Date**"), unless otherwise mutually agreed to by the Parties.   The Stipulation shall be effective immediately upon entry and the requirements of Fed. R. Bankr. P. 6006(d) are waived.

3.    <u>Assumption of ACE Policies and ACE Agreements.</u>  Pursuant to 11 U.S.C. § 365 and the orders of the Bankruptcy Court, and to the extent one or more of them is a named insured, an additional insured, or an insured of any kind, the Debtors/Assignors, individually and collectively, subject to the terms of this Stipulation, hereby assume the ACE Policies and ACE Agreements in full as of the Effective Date. In order to effectuate this assumption, the Assignee shall cure the defaults listed on **Exhibit C** attached hereto by paying ACE the sum set forth on **Exhibit C** within five days after the Effective Date.

4.    <u>Assignment of ACE Policies and ACE Agreements</u>.    Pursuant to 11 U.S.C. § 365, and to the extent one or more of them is a named insured, an additional insured, or an insured of any kind, as of the Effective Date the Debtors/Assignors, individually and collectively, subject to the terms of this Stipulation, hereby assign and transfer the ACE Policies and ACE Agreements to the Assignee, and the Assignee hereby accepts the assignment of the ACE Policies and ACE Agreements.    Once this Stipulation becomes effective pursuant to the provisions of Paragraph 2 hereof, the Assignee may, upon notice to ACE and conditioned on ACE's consent, which consent shall not be unreasonably withheld, assign the ACE Policies and ACE Agreements, or any of them, to Assignee's parents, subsidiaries, or affiliates, and  ACE will cooperate with the Assignee to facilitate such assignments.

5.    <u>Allocation of Coverage and Proceeds under ACE Policies.</u>    The Debtors/Assignors and the Assignee, with the consent of ACE, hereby allocate coverage and proceeds otherwise available under the ACE Policies as follows:

a.    Insofar as the ACE Policies apply to the "Assumed Liabilities," as that term is defined in § 2.3(a) of the MSPA or a liability of one of Assignee's "Purchased Subsidiaries" as that term is defined in Article I of the MSPA, coverage and proceeds otherwise available under the ACE Polices shall be available to the Assignee or such covered Purchased Subsidiaries.

b.    Insofar as the ACE Policies apply to the "Retained Liabilities," as that term is defined in § 2.3(b) of the MSPA or a liability of one of the Assignor's "Retained Subsidiaries" as that term is defined in Article I of the MSPA, coverage and

proceeds otherwise available under the ACE Policies shall be available to the Debtors/Assignors or such covered Retained Subsidiary.

c.　　In order to facilitate the allocation of coverage and proceeds between the Debtors/Assignors and the Assignee, ACE shall, as necessary, issue policy endorsements in the form attached hereto as **Exhibit D**.

d.　　Except as expressly set forth herein, nothing in this Stipulation is intended to increase, expand, enhance, change, or otherwise alter the scope of coverage under the ACE Policies.  Except as expressly set forth herein, all the terms and conditions of the ACE Policies remain in full force and effect.  ACE shall be under no obligation whatsoever to determine the applicability of any ACE Policy, and/or the availability of coverage or proceeds thereunder, with respect to any underlying claim against the Assignors/Debtors, the Assignee, or both.  Such issues shall be determined solely by and between the Assignors/Debtors and the Assignee, at their sole cost and expense.  ACE shall in no event be responsible or liable for any allocation or alleged mis-allocation of coverage or proceeds.  The Debtors/Assignors and Assignee hereby release and hold ACE harmless from any responsibility or liability for any loss, cost, damage, or expense incurred by Debtors/Assignors or Assignee relating to such allocation or mis-allocation as between the Assignor and Assignee.

6.　　Performance of Obligations under the ACE Policies and ACE Agreements by the Assignee and Debtors/Assignors.   Upon and after the completion of the assumption and  assignment described herein:

a.　　Monetary Obligations.  The Assignee shall perform, observe, pay, satisfy, fulfill, and discharge any and all now existing and hereafter arising monetary

duties, requirements, terms, conditions, provisions, covenants, liabilities, and other obligations under the ACE Policies and ACE Agreements (individually and collectively, the "**Monetary Obligations**").  By way of example and not of limitation, the Assignee shall be solely responsible to perform all the Monetary Obligations under (i) the Security Agreement entered into by the Debtors/Assignors and ACE on or about April 28, 2009 (the "**Security Agreement**"), which is attached as **Exhibit E** hereto; (ii) the United Kingdom Employers Liability Policies (the "**UKEL Policies**") previously issued by ACE to the Debtors/Assignors, including the obligation thereunder to reimburse to ACE the first £100,000 (one hundred thousand pounds sterling) per claim; and (iii) all other ACE Policies and ACE Agreements.  The Debtors/Assignors shall have no liability for Monetary Obligations.

    b. <u>Non-Monetary Obligations.</u>  The Assignee shall perform, observe, satisfy, fulfill and discharge any and all now existing and hereafter arising non-monetary obligations under the ACE Policies and ACE Agreements to the extent such non-monetary obligations arise out of or relate to the Assumed Liabilities (as this term is defined in §2.3(a) of the MSPA) and/or to the ACE Foreign Casualty Insurance Program described in Paragraphs E and F of this Stipulation.  The Debtors/Assignors shall perform any and all non-monetary obligations under the ACE Policies and ACE Agreements to the extent that such non-monetary obligations arise out of or relate to the Retained Liabilities (as this term is defined in §2.3(b) of the MSPA); <u>provided</u>, <u>however</u>, that nothing in this Stipulation is intended to or should be construed to impose upon the Debtors/Assignors or ACE any obligations in excess of those that would have been imposed upon them by the Bankruptcy Code if the Debtors/Assignors <u>had</u> <u>not</u> assumed

the ACE Policies and ACE Agreements.  All of the rights of the Debtors and ACE under the Bankruptcy Code are expressly reserved as if the ACE Policies and ACE Agreements had not been assumed.

        c.    <u>Administration and Handling of Claims.</u>  The Assignee shall perform all administration and handling of claims (directly and/or through its third-party administrator) for claims that arise out of or relate to the Assumed Liabilities (as this term is defined in § 2.3(a) and the MSPA).  The Debtors/Assignors shall perform all administration and handling of claims (directly and/or through their third-party administrator) for claims that arise out of or relate to the Retained Liabilities (as this term is defined in § 2.3(b) and the MSPA); <u>provided</u>, <u>however</u>, that the Debtors/Assignors shall be deemed to have complied with this Paragraph 6.c. by administering all claims in accordance with their rights under the Bankruptcy Code, the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving Form and Manner of Notices Thereof  [Docket No. 4079], and the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b) Authorizing the Debtors to (I) File Omnibus Claims Objections and (II) Establishing Procedures for Settling Certain Claims [Docket No. 4180].  Any claims within the potential coverage of the ACE Policies shall be settled in accordance with the terms and conditions of such policies, including without limitation notice to and approval of the settlement by ACE if notice and/or approval are required by the terms of the applicable ACE Policy.  ACE shall be under no obligation whatsoever to determine whether administration or handling of an individual underlying claim is the

responsibility of the Debtors/Assignors or the Assignee.  Such issues shall be determined solely by and between the Debtors/Assignors and the Assignee, at their sole cost and expense.  ACE shall not be made a party to any proceeding relating to such issues.  The Debtors/Assignors and Assignee hereby release and hold ACE harmless from any responsibility or liability for any loss, cost, damage, or expense incurred by Debtors/Assignors or Assignee relating to such allocation or mis-allocation as between the Assignor and Assignee.

7.      Substitute Letter of Credit.  In further implementation of the MSPA, and as authorized by §§ 6.19 and 2.2(a)(xii) thereof, the Assignee shall furnish ACE with a clean, unconditional, irrevocable, automatically renewable, evergreen substitute Letter of Credit in a form and from a financial institution acceptable to ACE.  The replacement Letter of Credit shall be in the initial amount of $20,074,166.00.  Assignee shall deliver the replacement Letter of Credit within the time required by the August 31, 2009 Foreign Casualty Binder, but in no event later than September 30, 2009.  Unless and until ACE receives the satisfactory replacement Letter of Credit, ACE shall not be under any obligation to return any collateral currently being held by ACE.

8.      Addition of ACE Policies and ACE Agreements.  The Parties hereto acknowledge and agree that this Stipulation shall apply comprehensively to all ACE Policies and ACE Agreements identified in the future that the Parties agree should be assumed and assigned to Assignee and (i) any such newly identified Ace Policies or ACE Agreements shall be added to **Exhibit A** or **Exhibit B**, as applicable, (ii) Assignee shall promptly pay any valid cure amounts associated with such ACE Policies or ACE Agreements, and (iii) the Monetary Obligations, non-monetary obligations, and

administration and handing of the claims under any added ACE Policies or ACE Agreements will be allocated in accordance with the terms of this Stipulation regarding assumption and assignment of newly-identified policies and agreements pursuant to this paragraph shall not be unreasonably withheld.

9.      <u>Amendment of the ACE Policies and ACE Agreements.</u>   After this Stipulation is fully executed, entered by the Court and becomes final, and the Debtors/Assignors and the Assignee fully perform their obligations under this Stipulation, the ACE Policies shall be amended by issuance of Endorsements, as required, in the form attached as **<u>Exhibit D</u>** hereto and this Stipulation shall constitute an amendment to each of the ACE Agreements.

10.      <u>Non-Executory Contracts.</u>  In the event that any of the ACE Policies or the ACE Agreements are deemed by a court of law to be non-executory under 11 U.S.C. § 365, then, with the consent of ACE given pursuant to § 2.4(a) of the MSPA, each such ACE Policy or ACE Agreement is hereby assigned by the Debtors/Assignors to the Assignee pursuant to 11 U.S.C. § 363 and § 2.2(a)(x) of the MSPA, and the coverage and performance of the obligations thereunder is allocated by and between the Debtors/Assignors and the Assignee in accordance with the provisions in Paragraphs 5 and 6 above.

11.      <u>No Change in Contractual Rights.</u>  Except as expressly set forth herein, nothing in this Stipulation shall in any way directly or indirectly waive, impair, expand, or otherwise modify in any respect the legal, equitable, or contractual rights and defenses of the parties to the ACE Policies and ACE Agreements under applicable non-bankruptcy law.  By way of example and not of limitation, nothing in this Stipulation shall directly or

indirectly expand the scope of insurance coverage available under any ACE Policy or ACE Agreement, increase the amount of proceeds available under any ACE Policy or ACE Agreement, or increase the policy limits stated in any ACE Policy or ACE Agreement. The rights and obligations of the parties to the ACE Policies and ACE Agreements shall be determined solely by the terms and conditions of such policies and agreements, including any and all terms, conditions, limitations, exclusions, endorsements, and amendments thereof, which shall all remain in full force and effect as before the commencement of the Bankruptcy Cases and under applicable non-bankruptcy law.

12.   <u>Governing Law</u>.   This Stipulation shall be governed and construed in accordance with the laws of the State of New York.

13.   <u>No Third Party Beneficiaries</u>.   This Stipulation is for the sole benefit of the Parties thereto, namely the Debtors/Assignors, the Assignee, and ACE.  It is not intended to  benefit any third person or entity who is not a party hereto, and thus no third party shall be able to claim to be a beneficiary hereof.

14.   <u>No Modification</u>.   As of the Effective Date, this Stipulation shall be binding on the Debtors/Assignors, the Assignee and ACE, and shall not be modified by any plan of reorganization or liquidation entered in the Bankruptcy Cases.  This Stipulation may not be modified orally but only in a writing signed by all the Parties hereto and approved by the Court.

15.   <u>Construction</u>.   This Stipulation is a product of arms-length negotiations between the Parties who have been represented by counsel.  It shall not be construed in favor of or against any of the Parties hereto as the drafting party.

16.    <u>NMO Expenses</u>.  In the event that the Debtors/Assignors fail to perform their non-monetary obligations pursuant to the ACE Agreements or ACE Policies to the extent that such non-monetary obligations arise out of or relate to the Retained Liabilities (as this term is defined in §2.3(b) of the MSPA), and ACE incurs any damages, losses, fees, costs, or expenses as a result of such failure (individually and collectively, "**NMO Expenses**"), then ACE may submit a request for payment of the NMO Expenses to the Court and such request shall be resolved under Paragraph 17 below; <u>provided</u>, <u>however</u>, that nothing in this Stipulation is intended to or should be construed to impose upon the Debtors/Assignors or ACE any obligations in excess of those that would have been imposed upon them by the Bankruptcy Code and the applicable non-bankruptcy law if the Debtors/Assignors <u>had</u> <u>not</u> assumed the ACE Policies and ACE Agreements.

a.    Any request for NMO Expenses must include supporting documentation and be set for notice and a hearing in the Bankruptcy Cases.

b.    ACE reserves its right to assert that the NMO Expenses constitute administrative expenses of the Debtors' bankruptcy estates (the "**Estates**") under 11 U.S.C. §503, and the Debtors and other parties in interest reserve their rights to (A) oppose ACE's position and to deny that the NMO Expenses constitute administrative expenses of the Estates under 11 U.S.C. §503 and (B) oppose the validity of the NMO Expenses.

c.    The Debtors and ACE hereby agree that, solely for the purposes of determining whether the NMO Expenses constitute administrative expenses of the Estates under 11 U.S.C. § 503, the ACE Policies and ACE Agreements shall not be deemed assumed.

d.      ACE shall promptly notify Assignee in writing of all NMO Expense claims it asserts against the Debtors and provide Assignee with copies of all documentation in support of such claims.

e.      For the sake of clarity, "NMO Expenses," as defined in this Stipulation, do not include any sums that ACE may become obligated to pay pursuant to Paragraph 5.a. of this Stipulation; any costs, fees, or expenses ACE may incur in contesting coverage under any of the ACE Policies or ACE Agreements; or any amounts that the Assignee may become obligated to pay pursuant to Paragraph 6.a of the Stipulation.

17.     Procedure for Resolving NMO Expense Claims.

a.      To the extent the Court rules that claimed NMO Expenses are valid and constitute administrative expenses of the Debtors under 11 U.S.C. §503, ACE shall have an allowed administrative expense claim against the Debtors.

b.      To the extent the Court rules that claimed NMO Expenses are valid and constitute general unsecured claims against the Estates, ACE will have an allowed general unsecured claim against the Debtors (the "**NMO General Unsecured Claim**"). The Assignee shall pay to ACE the portion of each NMO General Unsecured Claim not paid by the Debtors to the extent the NMO General Unsecured Claims would have been paid if they were allowed administrative expense claims against the Debtors, pursuant to the following:

(i)      For purposes of this Paragraph 17(b), the term "$A" shall mean the amount that would have been paid to ACE by the Debtors had the Court ruled

that an NMO General Unsecured Claim constituted an administrative expense of the Estate under 11 U.S.C. §503.

(ii)    For the purposes of this Paragraph 17(b), the term "$D" shall mean the difference between $A and the amount actually collected by ACE from the Debtors on account of the NMO General Unsecured Claim.

(iii)    For the purposes of this Paragraph 17(b), the term "$P" shall mean the amount to be paid by the Assignee to ACE as compensation for the NMO Expenses.

(iv)    If $D is less than or equal to $150,000, then $P shall be equal to $D.

(v)    If $D is greater than $150,000, but is less than or equal to $300,000, then $P shall be equal to $150,000 + (($D-$150,000) x 0.8).

(vi)    If $D is greater than $300,000, but is less than or equal to $450,000, then $P shall be equal to $270,000 + (($D - $300,000) x 0.6).

(vii)    If $D is greater than $450,000, then $P shall be equal to $360,000 + (($D - $450,000) x 0.5), but no greater than $550,000.

c.    In the event that (x) either (i) the Estates are closed at the time that ACE incurs NMO Expenses, or (ii) no further distributions from the Estates are available, and (y) ACE notifies Assignee in writing of such NMO Expenses within five (5) years after the date of the Stipulation, ACE's claim for NMO Expenses shall be resolved as follows:

(i)    Upon ACE's written demand and within ten (10) business days thereof, ACE and the Assignee, through their authorized representatives, shall meet

17

and attempt, in good faith, to jointly determine the amount to be paid to ACE by the Assignee under the terms and conditions of this Stipulation, or as otherwise agreed to by Assignee and ACE.

(ii)    In the event that such a meeting does not result in an amicable resolution, then within ten (10) business days after such a meeting, ACE and the Assignee shall jointly appoint a neutral mediator.

(iii)    The mediator shall be a lawyer with experience in bankruptcy law.  The fees and expenses of the mediator shall be shared equally by ACE and the Assignee.

(iv)    Said mediator shall determine the amount, if any, of the claimed NMO Expenses that would have been allowed as administrative expenses of the Estates under 11 U.S.C. §503, assuming the Debtors had assumed the ACE Policies and ACE Agreements.

(v)    Said mediator shall further determine the amount, if any, of the claimed NMO Expenses to be paid to ACE by the Assignee using the formulas set forth in Paragraph 17(b) above.

(vi)    For the purposes of applying the formulas set forth in Paragraph 17(b) above where the Estates are closed, "$D" shall be the amount determined by the mediator pursuant to Paragraph 17(c)(iv) above.

(vii)    ACE and the Assignee hereby agree that the decision of the mediator shall be final and binding.

d.    Assignee's aggregate payment obligations to ACE under this Paragraph 17 in connection with the NMO Expenses shall not exceed $550,000.

e.    For the purposes of determining ACE's entitlement to reimbursement from Assignee of its NMO Expenses under the terms and conditions of Paragraph 17, ACE and the Assignee shall assume that the ACE Policies and ACE Agreements constitute executory contracts that have been assumed by the Debtors/Assignors notwithstanding the proviso clauses at the end of Paragraphs 6(b) and 16(c), and that the Debtors/Assignors have failed to perform their non-monetary obligations under the ACE Policies and ACE Agreements, but this assumption shall have no effect on the obligations of Debtors/Assignors under this Stipulation.

18.    <u>Notices.</u>    All written notices that are required under the terms of this Stipulation shall be delivered via facsimile or first-class mail addressed as follows:

| | |
|---|---|
| If to ACE, then to: | Legal Department<br>The ACE Group<br>436 Walnut Street, WA04K<br>Philadelphia, PA 19106<br>Facsimile No. 215-640-1417 |
| With a copy to | Jeffrey A. Less, Esq.<br>Helen Heifets, Esq.<br>Bazelon Less & Feldman, P.C.<br>1515 Market Street, Suite 700<br>Philadelphia, PA 19102<br>Facsimile No: 215-568-9319 |
| If to General Motors LLC, then to | Alan G. Gier<br>Director, Global Risk Financing &<br>Insurance<br>482-C19-D36<br>300 Renaissance Center, P.O. Box 300<br>Detroit, MI  48265-3000<br>Facsimile No.:  313-665-0985 |
| With a copy to | Robert B. Weiss, Esq.<br>Honigman Miller Schwartz and Cohn LLP<br>2290 First National Building<br>660 Woodward Avenue |

Detroit, MI  48226
Facsimile No.:  313-465-7597

If to Debtors, then to          Joseph H. Smolinsky, Esq.
Evan S. Lederman, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Facsimile No.:  212-310-8007

19.    <u>Withdrawal of Objection.</u>  Within ten (10) calendar days of the Effective

Date, ACE will withdraw its Limited Objection of ACE American Insurance Company to

Motion of Debtors, Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), (m), and 365 and Fed

R. Bankr. P. 2002, 6004 and 6006, to Approve (A) the Sale Pursuant to the Master Sale

and Purchase Agreement with Vehicle Acquisition Holdings, LLC, a U.S. Treasury-

Sponsored Purchaser, Free and Clear of Liens, Claims, and Encumbrances, and Other

Interests; (B) the Assumption and Assignment of Certain Executory Contracts and

Unexpired Leases; and (C) Other Relief [Docket No. 1999] and the Limited Objections of

ACE America Insurance Company and Affiliated Companies to Notice of (I) Debtors'

Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal

Property and Unexpired Leases of Non-Residential Real Property and (II) Cure Amounts

Related Thereto [Docket No. 3135]; and its July 13, 2009 Limited Objections [Docket

No. 3135] to Debtors' Notice of Intent To Assume and Assign Executory Contracts; and

its July 21, 2009 Motion To Compel Debtors To Assume or Reject Insurance Policies and

Related Agreements [Docket No. 3272].

20.    <u>ACE Non-NMO Claims.</u>  Except with respect to NMO Expenses that may

be asserted against the Debtors pursuant to Paragraph 16 of this Stipulation, any and all

claims held by ACE against the Debtors prior to the Effective Date related to the ACE Polices and ACE Agreements shall be deemed released and withdrawn.

21.    <u>Transfer</u>.  Notwithstanding any other provision of this Stipulation, ACE agrees that the rights of the Debtors/Assignors hereunder in the ACE Policies and ACE Agreements, and in any insurance coverage or proceeds thereunder, may be transferred to any trusts that may be subsequently established in the Bankruptcy Cases as successors to the Debtors/Assignors with respect to their insured liabilities, and that it will not object to any such transfer.

22.    <u>Jurisdiction.</u>  The Bankruptcy Court shall retain jurisdiction with regard to any dispute involving the Debtors arising out of this Stipulation (including, without limitation, the Debtors' liability for any NMO Expenses).

Stipulated and Agreed to on this 31st day of March 2010.

MOTORS LIQUIDATION COMPANY (formerly known as General Motors Corporation)

MLCS, LLC (formerly known as Saturn, LLC)

BY: /s/ David Head
Name: David Head
Title: Vice President

BY: /s/ David Head
Name: David Head
Title: Vice President

MLCS DISTRIBUTION CORPORATION (formerly known as Saturn Distribution Corporation)

MLC OF HARLEM, INC. (formerly known as Chevrolet-Saturn of Harlem, Inc.)

BY:  /s/ David Head
Name: David Head
Title: Vice President

BY: /s/ David Head
Name: David Head
Title: Vice President

GENERAL MOTORS LLC

ACE AMERICAN
INSURANCE COMPANY, on its own behalf and on behalf of its affiliated insurers and reinsurers

BY: /s/ Alan G. Gier
Name: Alan G. Gier
Title: Director, Global Risk Management & Insurance

BY: /s/ Clint Johnson
Name: Clint Johnson
Title: Executive Vice President

**SO ORDERED** this *15th* day *April* of 2010

*s/ Robert E. Gerber*
UNITED STATES BANKRUPTCY JUDGE