**Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: April 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
:
In re:                                                                        :     Chapter 11
:
MOTORS LIQUIDATION COMPANY, *et al.,*    :     Case No. 09-50026
   f/k/a General Motors Corp., *et al.,*              :     (Jointly Administered)
:
                               Debtors.        :
:     Honorable Robert E. Gerber
:
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO**
**THE FIRST INTERIM FEE APPLICATION OF**
**HONIGMAN MILLER SCHWARTZ & COHN LLP**

**TO:    THE HONORABLE ROBERT E. GERBER**
        **UNITED STATES BANKRUPTCY JUDGE**

       The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Application of Honigman Miller Schwartz and Cohn LLP as Special Counsel for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2009 Through September 30, 2009* [Docket No. 4446] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses

incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $17,272.09 in fees and expenses, from a total of $2,313,959.46 **requested** in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

### SUMMARY STATEMENT

A fee applicant bears the burden of proof on all elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred. A fee application must additionally comply with the format and content requirements in the applicable guidelines and bankruptcy rules.

In general, the Fee Application is substantively sound. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary observations with Honigman Miller Schwartz and Cohn LLP ("**Honigman Miller**") by letter dated April 2, 2010. On April 9 and 21, 2010, and in response to counsel's letter, Honigman Miller voluntarily agreed to reduce one-third of all of its travel time by half to be consistent with local practice. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $16,703.08 in fees and $569.01 in expenses for a total suggested reduction of $17,272.09.

### BACKGROUND

1.   Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors

2

are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3. On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above-captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4. On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010. [Docket No. 4833].

5. The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010.* [Docket No. 4910]. Without objection, the *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010 [Docket No. 5005], authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense request of Jenner & Block LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and, The Claro Group, LLC.

3

6. On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431]. On April 19, 2010 the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending first interim fee applications.

7. On June 12, 2009, the Debtors filed their *Application Under 11 U.S.C. §§ 327(e) and 328(a) Authorizing Debtors to Employ and Retain Honigman Miller Schwartz and Cohn LLP as Special Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* [Docket No. 951] (the "**Retention Application**"). There were no objections to the Retention Application, and Honigman Miller was appointed by this Court's *Order Under 11 U.S.C. § 327(e) Authorizing the Employment and Retention of Honigman Miller Schwartz and Cohn LLP as Special Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* [Docket No. 2548] (the "**Retention Order**").

8. On November 16, 2009, Honigman Miller filed the Fee Application, seeking fees in the amount of $2,297,160.00 and expenses in the amount of $16,799.46, for total requested compensation in the amount of $2,313,959.46 for the period from June 1, 2009 through September 30, 2009. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Honigman Miller has previously been paid $1,792,828.80 in fees and $13,944.02 in expenses for services provided and for expenses invoiced for the periods of June 1, 2009 through July 9, 2009, subject to Court review and approval, leaving $504,331.20 in fees and $2,855.44 in expenses unpaid. As of the

4

date of this report, Honigman Miller has not received any other interim payment of fees or reimbursement of expenses for any services, according to the Debtors' monthly operating reports.

9. The Fee Examiner has evaluated the Fee Application, the Retention Application, the Retention Order, the *Supplemental Declaration of Robert B. Weiss and Disclosure Statement in Support of the Application Under 11 U.S.C. § 327(e) to Employ and Retain Honigman Miller Schwartz and Cohn LLP as Special Counsel for the Debtors, Nunc Pro Tunc, to the Petition Date* [Docket 2254], and the *Second Supplemental Declaration of Robert B. Weiss in Connection with Debtors' Application to Retain Honigman Miller Schwartz and Cohn LLP* [Docket No. 4288].

10. By correspondence dated April 2, 2010, counsel to the Fee Examiner requested supplemental information from Honigman Miller as part of the review of specific matters relevant to the Fee Application. The supplemental information related to:

    A. Context of Work Performed;

    B. Scope of Work;

    C. Transition Issues;

    D. Billing Rates;

    E. Transient Billers;

    F. Non-Working Travel Time;

    G. Block Billing;

    H. Billing Increments;

    I. Billing and Retention Matters;

    J. Summer Clerk Time;

    K. Expenses; and,

      L.     Retainer Agreements.

The information Honigman Miller provided in response to this inquiry, on April 9 and 21, 2010, was also considered by the Fee Examiner.

    11.    On April 15, 2010, counsel for the Fee Examiner submitted a draft of this pleading to Honigman Miller, permitting additional opportunity for comment and discussion. The additional documentation from Honigman Miller, involving certain expense items, has been taken into account in this report.

## APPLICABLE STANDARDS

    12.    The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

    13.    **Transition Issues**.  The Fee Examiner noted in Honigman Miller's initial retention documents, in its supplemental declaration in support of retention, and in the fee application itself some uncertainty about the assignment of responsibility for the payment of Honigman Miller's bills.  Honigman Miller's work for the Debtors, after the closing of the

6

section 363 sale, apparently has been limited to the resolution of certain equipment lease, utility contract and executory contract matters involving General Electric Capital Corporation ("**GECC**").  NewGM appears, post-sale, to be responsible for payment of Honigman Miller's bills related to all other matters disclosed on the fee application, as well as responsibility for post-sale billings on the GECC matters.

14. This fee arrangement with NewGM raises questions about whether more of Honigman Miller's fee request might properly be payable by NewGM.  The Fee Examiner has directed an inquiry to the Debtors on the matter; however, this report does not reach any conclusion about the ultimate responsibility for those fees.  They may not be the Debtors' responsibility at all.

15. **Project Staffing**.  Services have been provided by two position titles for attorneys—partner and associate—and six position titles for non-attorneys.  The billing rate for partner-level attorneys ranges from $250 to $565, for associates from $195 to $265 and for paraprofessionals from $115 to $300.  These rates incorporate a five percent discount on Honigman Miller's standard billing rates.[1]  The overall blended rate for all services provided during the first interim fee period is $299.16.  Billing by partners accounted for 3,846.3 hours, or approximately 50.1 percent of all hours and 64.3 percent of all fees billed.

*Suggested disallowance for project staffing:  none.*

16. **Length, Frequency and Distribution of Long Billing Days**.  The Fee Examiner identified several Honigman Miller professionals who billed for frequent or consecutive long billing days but notes that many of these days were for staffing the supplier call center created to

---

[1] In response to the Fee Examiner's inquiries about the basis for the fee discount, Honigman Miller disclosed that it applied the discount for the benefit of the Debtors. The discount was the result of GM legal staff's request in recognition of GM's financial distress and the more than 20-year relationship between GM and Honigman Miller. Given the financial circumstances, Honigman Miller concluded that the Debtors' request was reasonable and agreed to it. The Fee Examiner notes that in light of the volume of legal work generated by the Debtors and the taxpayer-funded nature of the Debtor-in-Possession financing, discounted rate structures are particularly appropriate.

address all purchasing-related aspects of the bankruptcy, including identifying essential vendors, negotiating trade agreements, and establishing cure costs. *See* Fee Application, ¶ 19. The Fee Examiner understands that staffing the call center necessarily resulted in long billing days and other deviations from common billing practices and does not suggest any reduction in fees, except as specifically noted, on the basis of these deviations. The Fee Examiner's general willingness to accept, essentially at face value, billed and reported time of more than 12 hours a day carries an implicit assumption now made explicit: that the billing attorney spent all of her or his time that day working on this matter. It is the professional's responsibility to ensure that is the case and that the application warrants that.

> *Suggested disallowance for long billing days:  none.*

17. **Overcharges, Undercharges and Double Billing**. The Fee Examiner did not identify any billing discrepancies in the Fee Application.

> *Suggested disallowance for billing discrepancies:  none.*

18. **Transient Billers**. The Fee Examiner identified more than 20 Honigman Miller professionals who billed less than five hours total—out of the nearly one hundred professionals who provided services to the Debtors during the period in question—at a cost to the estate of approximately $12,000. While Honigman Miller did not address this matter in its response to the Fee Examiner's inquiry, it is a modest amount that does not warrant further review.

> *Suggested disallowance for transient billing:  none.*

19. **Law Clerks and Summer Associates**. Honigman Miller billed 61.9 hours, representing $10,427 in fees, for work performed by three summer associates ($165 to $170 an hour). After considering the rates Honigman Miller billed for each of these paraprofessionals' work and the tasks assigned to each, the Fee Examiner concludes that the fees are reasonable for necessary work performed.

8

20. Work performed by summer associates, or law students more generally, may be compensable, subject of course to the same reasonableness review as other professionals. *E.g.*, *In re Recycling Indus.*, 243 B.R. 396, 404-05 (Bankr. D. Colo. 2000) (recognizing that summer associates "can be valuable and worthy of billing clients at reasonable rates"); *cf. Missouri v. Jenkins*, 491 U.S. 274, 286-89 (1989) (non-bankruptcy context). Given this Court's disinclination to allow professionals to recoup summer associate fees through the section 330 process, however, the Court may disallow all fees associated with billing for such paraprofessionals' services in this case. *See*, *e.g.*, *In re Chemtura Corp.*, First Interim Fee Application Hr'g Tr. at 37-38, No. 09-11233 (Bankr. S.D.N.Y. Sept. 29, 2009).

*Suggested disallowance for summer associates: $10,427.*

21. **Internal Communications and Events**. The Fee Examiner reviewed Honigman Miller's use of internal communication and staffing of conferences and meetings. The staffing and use of internal communications appears to be appropriate.

*Suggested disallowance for internal communications events staffing: none.*

22. **Billing for Clerical and Administrative Tasks**. Some professionals billed time performing services that might have been properly assigned to a paralegal or support staff – for example, telephone conferences with the court's clerk regarding filing procedures. Given the limited number of such entries and the exigencies of the first few weeks of Honigman Miller's retention, no disallowance for billing for clerical or administrative tasks at professional rates is suggested.

*Suggested disallowance for clerical and administrative tasks: none.*

23. **Billing for Firm Retention and Compensation Matters**. Honigman Miller billed $83,933.50 on matters it identified as relating to Fee/Employment Application, or approximately 3.7 percent of Honigman Miller's total fees. The Fee Examiner also noted that

9

the proportion of time spent on fee applications increased significantly after July 9, 2009, when responsibility for most Honigman Miller's fees transferred to NewGM. Honigman Miller did not address this matter in its response to the Fee Examiner's inquiry.

24. The Fee Examiner also identified some time entries by Honigman Miller professionals describing tasks that generally should be considered part of the firm's overall administrative expenses, such as "train[ing] staff in record keeping requirements." The Fee Examiner notes that the line between compensable fee application and retention application activities and those that should be considered overhead is not clearly demarcated in the cases; however, professionals should make every effort to demonstrate in their fee applications that the tasks associated with their preparation are directly related to compliance with the Bankruptcy Code and not merely with every professional's ethical obligation to disclose the basis of fees charged. Given the relatively low number of objectionable time entries, the Fee Examiner does not recommend any disallowance.

*Suggested disallowance for billing on retention matters: none.*

25. **Block Billing**. Pursuant to the UST Guidelines, time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Fee Examiner identified some entries by two Honigman Miller professionals that appear to not comply with this guideline. In response to the Fee Examiner's inquiry, Honigman Miller clarified that these professionals' time entries related to these professionals' services at the call centers, which given the type and nature of the services, do not permit detailed incremental billing. In consideration of the explanation provided and the unique nature of staffing the call center, no disallowance is suggested.

*Suggested disallowance for block billing: none.*

26. **Unproductive Travel Time**.  Unproductive travel time is compensable at half the professional's hourly rate.  *In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) (non-bankruptcy context).  Honigman Miller did not discount any of its travel time.  In response to the Fee Examiner's inquiry, however, Honigman Miller explained that professionals staffing the call center routinely participated in telephone and conference calls related to the essential vendor and executory contract issues during their travels to and from the call center.

27. Noting that most of the travel time included in the Fee Application consists of travel to and from the call center, Honigman Miller voluntarily agreed to reduce its fees for unproductive travel time by half.  It estimates such time consisted of one-third of the total travel time included in the Fee Application.  Honigman Miller did not, however, quantify the reduction.

28. In the absence of a precise number of travel hours in the Fee Application, and in recognition of non-productive travel other than travel to and from the call center, the Fee Examiner has determined that an approximation is reasonable and appropriate.  The Fee Examiner additionally notes that certain Honigman Miller professionals did not segregate their travel time from the time providing legal services at the call centers, making impossible a quantification of travel time based only on the information contained in the Fee Application.

29. The supplier call center was staffed 24 hours a day, seven days a week for the first three post-petition weeks by two Honigman Miller attorneys working three 8-hour shifts or two 12-hour shifts a day.  *See* Fee Application at 9.  On some days, the Fee Examiner counted as many as five Honigman Miller staff present.  Honigman Miller's disclosed staffing represents approximately 84 to 126 trips to and from the call center ranging in time from approximately 0.5 to 1.0 hours.

11

*Suggested disallowance for unproductive travel time: $6,276.08 (calculated as 126 hours at Honigman Miller overall blended rate of $299.16 multiplied by 33.3 percent (the amount of unproductive travel time) and one-half (50 percent discount on unproductive travel time)).*

30. **Billing Increments**.  Several Honigman Miller timekeepers recorded a disproportionate amount of time in half hour or one hour increments.  In response to the Fee Examiner's inquiry, Honigman Miller explained that several of these professionals block billed their time at the call center and that other professionals blocked out time on their respective calendars to spend at least 30 minutes at a time devoted to specific assignments.  Other timekeepers worked full time on the Debtors' matters (working up to 16 and 18 hour days) such that the precise allocation of time by task was rendered more difficult.  In light of Honigman Miller's explanations, the exigencies of the early days of Honigman Miller's retention, and the unique nature of staffing the call centers, no disallowance is suggested.

*Suggested disallowance for billing increments:  none.*

31. **Vague Entries**.  Honigman Miller professionals consistently, although not invariably, described in detail the tasks they performed, including the participants to conferences and meetings and the subject matter of research conducted.

*Suggested disallowance for vague entries:  none.*

32. **Expenses**.  Honigman Miller requests reimbursement for $16,799.46 in expenses incurred during the period covered by the Fee Application.  Honigman Miller did not provide any documentation initially to support expenses it identifies as incurred or to support a claim that the expenses were necessary and reasonable.  In some cases, Honigman Miller failed to adequately describe the nature of the expense, such as whether airfare travel was by coach or first-class.

12

33. In response to the Fee Examiner's inquiry, Honigman Miller provided documentation and explanations for its travel expenses and photocopying charges in excess of $300 as well as itemized taxi receipts for almost all taxi charges. Honigman Miller also explained during a telephone conference on April 8, 2010 with counsel for the Fee Examiner that its professionals fly coach-class unless no seats in that class are available; only in those cases will the professional fly business or first-class. Upon review of Honigman Miller's documentation, the Fee Examiner identified several objectionable expenses:

| Date Incurred | Amount | Purpose |
| --- | --- | --- |
| 6/24/2009 to 6/26/2009 | $55.67 | Meals |
| 6/29/2009 to 7/2/2009 | $232.25 | Meals |
| 6/29/2009 to 7/2/2009 | $222.59 | Meals |
| 6/29/2009 to 7/2/2009 | $130.00 | Taxi |
| 7/15/2009 | $53.50 | Meals |

Honigman Miller's documentation does not provide sufficient detail to allow the Fee Examiner to determine the necessity for meals over $20 or for taxi charges over $45.

*Suggested disallowance for improper expenses: $569.01.*

34. **Billing Judgment and Disclosures**. Honigman Miller voluntarily wrote off $113 in fees and $9,396.27 in expenses before filing the fee request. Fee Application, ¶ 10. Honigman Miller's discounted rates to the Debtors have additionally resulted in approximately $121,000 in savings to the estate. *Id.*

35. **Pre-Petition Retainers**. As of the petition date, Honigman Miller held prepetition retainers totaling $583,394.66 from the Debtors. That fund has earned $1,467.18 in interest; the total amount Honigman Miller now holds in trust for the Debtors is $584,861.84. Fee Application, ¶ 12. Honigman Miller has identified $9,598.97 in pre-petition fees and

13

expenses that remain unpaid and for which Honigman Miller seeks Court approval to pay from the prepetition retainer, which would reduce the prepetition retainer to $575,262.87. Honigman Miller seeks authorization to apply the retainer to the fees and expenses approved by the Court for the first interim fee period. *Id.* Honigman Miller also seeks Court authorization to transfer the balance of the retainer after approval of such fees and expenses to MLC. After payment of the prepetition fees and expenses, and the fees and expenses requested and not objected to in this report, the balance of the retainer subject to return to the MLC or the Debtors would be $85,348.32. *Id.*

*Honigman Miller should apply the retainer against the unpaid prepetition fees and expenses, and the fees and expenses the Court approves for the first interim period. The Fee Examiner, however, suggests that the balance of the prepetition retainer be returned to the Debtors.*

*Total Fees Suggested for Disallowance: $16,703.08.*

*Total Expenses Suggested for Disallowance: $569.01.*

*Total Fees and Expenses Suggested for Disallowance: $17,272.09.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

14

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.

Dated: Madison, Wisconsin
April 22, 2010.

                        GODFREY & KAHN, S.C.

By:    /s/ *Katherine Stadler*
Katherine Stadler (KS 6831)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com
        tnixon@gklaw.com

*Attorneys for Fee Examiner*

4885611_1

15