Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time: April 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.*,                   :   Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,               :   (Jointly Administered)
                                                        :
                        Debtors.                        :   Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO
THE FIRST INTERIM FEE APPLICATION OF JENNER & BLOCK LLP**

**TO:    THE HONORABLE ROBERT E. GERBER
         UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Fee Application of Jenner & Block LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses* [Docket No. 4451] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to

provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $58,613.10 in fees and expenses, from the total of $5,220,762.21 **requested** in the Fee Application, that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must additionally comply with the format and content requirements in the applicable guidelines and bankruptcy rules.

In general, the Fee Application is substantively sound. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary observations with Jenner & Block LLP ("**Jenner**") by letter dated March 16, 2010. Jenner responded to each observation, in detail, by letter dated April 6, 2009, and also voluntarily agreed to reduce its fee request by $803.90 and its expense request by $5,466.08. Taking into account Jenner's responses, this *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of an additional suggested disallowance of $49,751.00 in fees (for a total of $50,554.90) and $2,592.12 in expenses (for a total of $8,058.20)for a total suggested reduction of $58,613.10

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors

2

are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2. On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3. On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above-captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4. On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

5. The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010.* [Docket No. 4910]. Without objection, the *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010, [Docket No. 5005] authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense request of Jenner & Block LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and The Claro Group, LLC.

3

6. On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431]. On April 19, 2010, the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending first interim fee applications.

7. On June 12, 2009, the Debtors filed their *Application of the Debtors Pursuant to Section 327(e) of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jenner & Block LLP as Attorneys for the Debtors, Nunc Pro Tunc to the Commencement Date* [Docket No. 950] (the "**Retention Application**"). There were no objections to the Retention Application, and Jenner was appointed by this Court's *Order Granting Application of the Debtors Pursuant to Section 327(e) of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jenner & Block LLP as Attorneys for the Debtors, Nunc Pro Tunc to the Commencement Date* [Docket No. 2608] (the "**Retention Order**").

8. On November 16, 2009, Jenner filed the Fee Application, seeking fees in the amount of $4,950,322.95 and expenses in the amount of $270,439.26, for total requested compensation in the amount of $5,220,762.21 for the period from June 1, 2009 to September 30, 2009. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Jenner has previously been paid $3,795,112.70 in fees

4

and $261,403.77 in expenses for services provided and expenses incurred during June and July, 2009, subject to Court review and approval. That left a combined request in the amount of $1,155,210.25 in fees and $9,035.49 in expenses for August and September, 2009. As of the date of this report, Jenner has received additional payments totaling approximately $183,000 as reflected in the Debtors' Monthly Operating Reports.

9. The Fee Examiner has evaluated the Fee Application, the Retention Application, the Retention Order, and *Supplemental Declaration of Daniel R. Murray in Connection with Debtors' Application to Retain Jenner & Block LLP* [Docket No. 2325] and the *Second Supplemental Declaration of Daniel R. Murray in Connection with Debtors' Application to Retain Jenner & Block LLP* [Docket No. 4289].

10. By correspondence dated March 16, 2010, counsel to the Fee Examiner requested supplemental information from Jenner as part of the review of specific matters in the Fee Application. The supplemental information involved:

    A. Potential overcharges and undercharges;

    B. Clerical and administrative tasks related to billing and retention matters;

    C. Legal research;

    D. Expenses;

    E. Vaguely described entries; and,

    F. Jenner's prepetition retainer.

The detailed information Jenner provided in response to this inquiry, by letter dated April 6, 2010 and its accompanying exhibits, was also considered by the Fee Examiner.

11. On April 15, 2010, counsel for the Fee Examiner submitted a draft of this pleading to Jenner & Block, permitting additional opportunity for comment and discussion. On

5

April 21, 2010, Jenner & Block notified counsel for the Fee Examiner that it had no further information it wished the Fee Examiner to consider.

## APPLICABLE STANDARDS

12. The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

13. **Project Staffing**. Services have been provided by two position titles for attorneys and six position titles for non-attorneys. The billing rate for partner-level attorneys ranges from $425 to $813 with a blended rate of $591.55 for all 46 partner-level attorneys in the time frame covered by the Fee Application. The billing rate for associate-level attorneys ranges from $274 to $438 with a blended rate of $304.55 for all 56 associate-level attorneys during the same period. The billing rate for the five titles of paraprofessionals ranges from $125 to $260.

14. Approximately 39.05 percent of the hours billed during the time frame were performed at partner-level rates. An additional 47.56 percent of the hours billed during the same period were performed at associate-level rates. The remaining 13.39 percent of the hours were

billed by paraprofessionals.  The overall blended rate for all billers during the time frame of the Fee Application is $402.02.

15. In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel.  Given the extraordinary circumstances surrounding the initial period of this engagement, however, no disallowance is suggested.

*Suggested disallowance for project staffing:  none.*

16. **Length, Frequency and Distribution of Long Billing Days**.  The rate at which services were provided by Jenner professionals was, understandably, highest during the second half of June through early July.  This time period roughly corresponds to the time period preceding the Court's section 363 sale order entered on July 5, 2009.  Jenner was retained, in large part, to aid the Debtors with this transaction.  *See* Retention Application at 5-6.

17. During this time period, some Jenner professionals reported frequent long billing days, including weekends.  These include days in which a single professional billed as many as 23.50 hours.  During the same time period, some Jenner professionals also document billing on consecutive days, including Saturdays and Sundays, for extended periods of time including a timekeeper who billed 480.1 hours to this case for forty-one consecutive days, including weekends, from June 1, 2009 to July 11, 2009.  The Fee Examiner's general willingness to accept, essentially at face value, billed and reported time of more than 12 hours a day carries an implicit assumption now made explicit:  that the billing attorney spent all of her or his time that day working on this matter.  It is the professional's internal responsibility to ensure that is the case and that the application warrants that fact.

7

18. Frequent long billing days by the same professional can raise questions about project staffing and efficiency and the credibility of the application process. In addition, long billing days that do not correspond to time periods of high activity in the case raise questions about the necessity of the services provided. The Fee Examiner encourages professionals to explain instances of frequent extended billing days in their fee applications. Given the extraordinary circumstances of the time period in question, however, no disallowance is suggested.

*Suggested disallowance for long billing days: none.*

19. **Overcharges and Undercharges**. The Fee Application contains some billing discrepancies. The total number of hours billed for a given timekeeper did not match the individual bracketed time entries for the timekeeper's billing day, resulting in a net underbilling to the estate of $223.

*Suggested disallowance for billing discrepancies: none.*

20. **Double Billing**. The Fee Examiner identified some overcharges as a result of double billing, totaling $803.90. The matter was addressed by Jenner, and it confirmed that such charges had been billed in error and voluntarily reduced its fee request by $803.90.

*Suggested disallowance for double billing: $803.90.*

21. **Transient Billers**. The Fee Examiner identified some Jenner professionals who billed limited hours to the case. It appears the transient billers in the matter worked on discrete projects and that the hours expended, though limited, were necessary and reasonable.

*Suggested disallowance for transient billers: none.*

22. **Administrative Staff and Law Clerks**. Jenner billed 921 hours, representing $135,709 in fees, for work performed by ten project assistants ($125-$160 an hour), seven law clerks ($150 an hour), and three reference and research librarians ($260 an hour). After

8

considering the rates Jenner billed for each of these paraprofessionals' work and the tasks assigned to each, the Fee Examiner concluded that the fees are reasonable for work necessarily performed.

23. Work performed by summer associates, or law students more generally, may be compensable, subject of course to the same reasonableness review as other professionals. *E.g.*, *In re Recycling Indus.*, 243 B.R. 396, 404-05 (Bankr. D. Colo. 2000) (recognizing that summer associates "can be valuable and worthy of billing clients at reasonable rates"); *cf. Missouri v. Jenkins*, 491 U.S. 274, 286-89 (1989) (non-bankruptcy context). Given the Court's disinclination to allow professionals to recoup summer associate fees through the section 330 process, however, the Court may disallow all fees associated with such paraprofessionals' services in this case. *See*, *e.g.*, *In re Chemtura Corp.*, First Interim Fee Application Hr'g Tr. at 37-38, No. 09-11233 (Bankr. S.D.N.Y. Sept. 29, 2009). The Fee Examiner is not recommending any reductions to the Fee Application for work performed by law clerks; this willingness to accept such fees carries with it the implicit assumption that Fee Applicants will voluntarily identify and reduce all fees associated with work performed by paraprofessionals who are functionally summer associates, even if they provide services under a different title. The law clerk fees in the Fee Application amount to $29,460.

*Suggested disallowance for administrative staff and law clerks: none.*

24. **Attendance at Internal Meetings**. Jenner professionals billed approximately $150,000.00 attributable to daily status calls. Calls lasting an hour or more attended by a dozen or more professionals were not unusual. Jenner has explained the nature of these calls:

> Because of the sheer complexity of causing so many moving pieces to operate in tandem to satisfy the Government's extremely tight time deadlines, the leadership of General Motors insisted upon close coordination among all parties and counsel. Thus, the daily status telephone calls you highlight on page one of your

9

letter were client-mandated "all hands" calls at 7 a.m. EDT each morning and involved key GM management and its attorneys, including Weil, Jenner and Honigman, as well as representatives of and counsel for the Government. These calls were set up to address all major open items on a daily basis to ensure that all critical-path tasks were accomplished in a timely manner so as not to delay approval of the sale by the Court and the ultimate closing of the transaction. As such, these daily calls proved invaluable in ensuring that the transaction was completed within the time frame mandated by the Government.

25. There are occasions when more than one person needs to participate in conference calls or internal meetings, particularly at the outset of any retention. Professionals should explain such circumstances in their fee applications. Given the extraordinary circumstances of the time period in question, and in light of the explanation subsequently provided, no disallowance is suggested.

*Suggested disallowance for internal meetings staffing: none.*

26. **Attendance at Events**. The Fee Examiner's review also focused on Jenner's practice of staffing events with multiple professionals. Such staffing can result in unnecessary charges for duplicative work being billed to the estate. Given the overall context of the services provided and the extraordinary circumstances of the time period in question, however, no disallowance is suggested.

*Suggested disallowance for event staffing: none.*

27. **Billing for Clerical and Administrative Tasks**. Jenner professionals billed nearly $250,000 in charges for tasks that may have been clerical or administrative in nature. Such tasks are part of a professional's overhead and should not be billed at professional rates to the estate. For example, the Fee Examiner identified one associate who billed 167.8 hours, representing $45,977.20 in fees. The task descriptions suggested that the majority of his work may have consisted of uncompensable administrative tasks. After the matter was raised with

10

Jenner, it explained that this particular associate, a first-year lawyer, was given primary responsibility for ensuring the compliance of monthly billings with UST Guidelines and that "[Jenner was] not comfortable delegating this responsibility to a paralegal or office assistant." Jenner also clarified that Jenner professionals are not permitted to bill for recording time entries. Upon consideration of the matter, the Fee Examiner does not suggest additional reductions on this basis, although the matter will be addressed further in ¶ 30 below and a partial disallowance recommended.

> *Suggested additional disallowance for administrative tasks: none.*

28.     **Billing for Conflicts Checks**. The Auditor examined Jenner's billing for working on conflicts checks for which Jenner billed approximately $80,000.00. Upon consideration of the matter, including the particular importance of full disclosure in a case with multiple interrelationships between interested parties, no disallowance is suggested.

> *Suggested disallowance for conflicts checks billing: none.*

29.     **Legal Research**. Jenner professionals billed approximately $250,000.00 for legal research, including 123.80 hours of legal research conducted by a partner at a billing rate of $625 an hour and 32.10 hours conducted by another partner at a billing rate of $712 an hour. The detail provided in the entries for those projects, such as research regarding disclosure duties and notice requirements, does not explain the necessity of staffing the projects with partner-level attorneys. In response to the Fee Examiner's inquiry, Jenner explained that the two partners in question are both former professionals with the U.S. Securities and Exchange Commission and, due to their specialized knowledge, research tasks requiring a nuanced understanding of securities law were more appropriately handled by them than delegated to associates without the appropriate securities background. In light of this explanation, the Fee Examiner does not suggest any reduction.

*Suggested disallowance for legal research: none.*

30. **Billing for Firm Retention and Compensation Matters**. Jenner billed $277,789.80—or approximately 5.6 percent of total fees billed—on matters identified as relating to Firm Retention and Compensation. Some of these entries, including those discussed above, are for tasks that should be considered a part of a professional's overhead, such as time spent creating monthly billing statements and the associated review and editing. The Fee Examiner notes that the line between compensable fee application and retention application activities and those that should be considered overhead is not clearly demarcated in the cases. However, professionals should make every effort to demonstrate in their fee applications that the tasks associated with their preparation are directly related to compliance with the Bankruptcy Code and not merely with every professional's ethical obligation to disclose the basis of fees charged. Upon consideration of the matter, the Fee Examiner does suggest a reduction in the amount of $24,751.00 (one half of one percent of the total overall professional fees requested).

*Suggested disallowance for excessive retention-related fees: $24,751.00.*

31. **Staffing: Attorneys Performing Paralegal Tasks**. The Auditor identified approximately $30,000.00 in fees for tasks performed by attorneys that might have been properly assigned to a paralegal at a lower cost to the estate. Given the timing of many of these entries and the circumstances of the time period in question, however, no disallowance is suggested.

*Suggested disallowance for attorneys performing paralegal tasks: none.*

32. **Block Billing**. Pursuant to the UST Guidelines, time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Auditor identified some entries by Jenner professionals that do not comply with this guideline. Due to the limited number of block-billed entries and the circumstances of the time period in question, however, no disallowance is suggested.

12

*Suggested disallowance for block billing: none.*

33. **Vague Entries**. The Auditor identified approximately $315,000.00 in vague communications and approximately $190,000.00 in vague tasks. The vague entries include, for example, $34,247 in fees for vaguely-described communication; $51,976 in fees for vaguely-described tasks by a partner-level attorney billing at $712 an hour and $22,680 in fees for vaguely-described communication; and $21,802 in fees for vaguely-described tasks by another partner-level attorney billing at $675 an hour. The Fee Examiner brought the matter to Jenner's attention and, in response, Jenner provided modified time entries for each of the four timekeepers, whose entries the Fee Examiner had highlighted, to provide more detail for the tasks performed. The edited time entries are largely compliant.

34. The Bankruptcy Code requires contemporaneous timekeeping, and the Fee Examiner necessarily questions the accuracy of both task descriptions and time segregation taking place more than six months after the work was completed. In light of the considerable expenditure of attorney time to ensure compliance with applicable billing requirements, *see* ¶ 27 above, the Fee Examiner believes that a small deduction for vague timekeeping is warranted. The Fee Examiner suggests a reduction of $25,000.00, or five percent, in the approximately $500,000.00 of vague time entries.

*Suggested disallowance for vague entries: $25,000.00.*

35. **Expenses**. Jenner requests reimbursement for $270,439.26 in expenses incurred during the time period covered by the Fee Application. In some instances, Jenner did not provide any documentation to support expenses it identifies as incurred or to support a claim that the expenses were necessary and reasonable. Counsel for the Fee Examiner requested further information about five expense categories: (1) License Fees and Corporate Filing/Retrieval Fees, totaling $158,703.44; (2) Photocopy and Network Printing, totaling $27,641.44; (3) Lexis

13

and Westlaw Charges, totaling $7,719.64; (4) Airfare, Cabs and Hotels; and (5) entries identified related to "Miscellaneous" travel-related expenses.

36. In response to the Fee Examiner's inquiry, Jenner provided a detailed itemization of all license and corporate retrieval fees, along with an explanation that those fees were required to obtain the necessary state regulatory approvals for the purchasing entity to operate in all locations immediately upon the closing of the section 363 sale and to file and process the corporate documents for the establishment of the purchasing entity. Upon consideration of Jenner's itemization, no disallowance for license and corporate retrieval fees is recommended.

37. With respect to photocopying and network printing, after the Fee Examiner's inquiry, Jenner provided an itemized list of each copy or network printing job in excess of $300. However, the listing did not contain the requisite level of detail for the Fee Examiner to determine the reasonableness and necessity of the expenditures. The U.S. Trustee guidelines require a "detailed itemization of all expenses." For copy or network printing expenses that exceed $300, the Fee Examiner considers that a "detailed itemization" would include the date of the project, a description of the project (for example, "copying and finishing 3 binders of material for 363 sale hearing") and the method of calculation of the expense (for example, actual per page cost). The Fee Examiner will recommend for disallowance all expense requests in subsequent fee applications that do not comply with this requirement.

38. In response to the Fee Examiner's inquiry, Jenner voluntarily reduced its expense request by $5,022.56 to adjust for improperly-charged first-class airfare and luxury hotel stays. The Fee Examiner recommends an additional $600 reduction for the luxury hotel charges (to bring the total to the $400 per night) and, in addition, recommends a $1,043.25 reduction of

14

luxury car service charges. Luxury travel and accommodations are not compensable. UST Guidelines, ¶ (b)(5)(i).

39. Jenner voluntarily reduced its "Miscellaneous" expense request by $13.16. In addition, the Fee Examiner recommends a deduction for $948.87 in laundry and other non-compensable charges. The Fee Examiner notes that the Fee Application discloses a considerable expenditure of attorney time to monitor compliance with billing guidelines and, in light of that expenditure, most expense overcharges should have been noted and removed from the fee application prior to submission.

*Suggested disallowance for improper expenses: $7,627.84.*

40. **Pre-retention Expenses**. The Auditor identified $430.36 in pre-retention expenses in the Fee Application. After counsel for the Fee Examiner raised the matter, Jenner confirmed that those expenses had been erroneously included in the Fee Application and voluntarily agreed to remove those fees from the fee request.

*Suggested disallowance for pre-retention expenses: $430.36.*

41. **Pre-Petition Retainers**. Jenner received prepetition retainers totaling $6,500,000 from the Debtors. Retention Application, ¶ 22. As of the filing of the Retention Application, Jenner disclosed that it continued to hold at least $384,906.47 in a post-petition retainer in trust for the Debtors. *Id.* In response to the Fee Examiner's inquiry, Jenner disclosed that it now holds $2,040,315.21 in post-petition retainers, subject to this Court's order. The Fee Examiner suggests the compensation due under Jenner's First Interim Fee Application, as allowed by the court, be paid from the post-petition retainer amount now held in trust at Jenner.

*Total fees suggested for disallowance: $50,554.90.*

*Total expenses suggested for disallowance: $8,058.20.*

15

*Total fees and expenses recommended for Disallowance:  $58,613.10.*

**CONCLUSION**

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fee Application.  It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on subsequent interim fee applications or on final fee applications.  All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding.  The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.


[The remainder of this page intentionally left blank.]

Dated: Madison, Wisconsin
April 22, 2010.

                                  GODFREY & KAHN, S.C.

By:    */s/ Katherine Stadler*
Katherine Stadler (KS 6831)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: kstadler@gklaw.com
        tnixon@gklaw.com

*Attorneys for Fee Examiner*

4885468_1

17