**Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: April 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,                  :    (Jointly Administered)
                                                           :
                                Debtors.                   :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF NO OBJECTION TO**
**THE FIRST INTERIM FEE APPLICATION OF JONES DAY**

**TO:    THE HONORABLE ROBERT E. GERBER**
**       UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of No Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Application of Jones Day, Special Counsel to the Debtors and Debtors-in-Possession, Seeking Allowance of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses for the Period from June 1, 2009 Through September 30, 2009* [Docket No. 4448] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses

incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of No Objection*, the Fee Examiner does not identify any fees and expenses requested in the Fee Application that are objectionable. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must additionally comply with the format and content requirements in the applicable guidelines and bankruptcy rules.

The Fee Examiner noted the care with which Jones Day prepared its Fee Application requesting $455,396.65 in fees and $4,359.53 in expenses. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary observations with Jones Day by letter dated March 30, 2010. On April 8 and 20, 2010, and in response to counsel's letter, Jones Day provided further detail to the Fee Examiner in support of Jones Day's application. This *Report and Statement of No Objection* summarizes the Fee Examiner's analysis in support of a recommendation that the Court allow in full the compensation and reimbursement sought by Jones Day.

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

2

jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.	On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.	On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above-captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.	On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

5.	The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010.* [Docket No. 4910].  Without objection, the *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010, [Docket No. 5005] authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense request of Jenner &

3

Block LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and The Claro Group, LLC.

6. On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431]. On April 19, 2010 the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending first interim fee applications.

7. On July 21, 2009, the Debtors filed their *Application Under 11 U.S.C. § 327(e) Authorizing Debtors to Employ and Retain Jones Day as Special Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* [Docket No. 3282] (the "**Retention Application**"). There were no objections to the Retention Application, and Jones Day was appointed by this Court's *Order Pursuant to 11 U.S.C. § 327(e) Authorizing the Employment and Retention of Jones Day as Special Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* [Docket No. 3633] (the "**Retention Order**").

8. On November 16, 2009, Jones Day filed the Fee Application, seeking fees in the amount of $455,396.65 and expenses in the amount of $4,359.53, for total requested compensation in the amount of $459,756.18 for the period from June 1, 2009 to September 30, 2009. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Jones Day has previously been paid $368,543.27 for services provided and expenses incurred during June and July 2009 leaving a combined request

4

of unpaid fees and expenses in the amount of $91,212.91.  Fee Application, ¶ 8.  Jones Day has voluntarily written off all fees and expenses incurred during the month of September 2009.[1]  *Id.* n.2.

9. The Fee Examiner has evaluated the Fee Application, the Retention Application, the Retention Order, the *Declaration of Andrew Kramer* [Docket No. 3282, Ex. B] and the *Supplemental Declaration of Andrew Kramer* [Docket No. 3598].

10. By correspondence dated March 30, 2010, counsel to the Fee Examiner provided Jones Day with a summary of his preliminary analysis of the fees requested in the Fee Application and invited Jones Day to supply any additional information it desired the Fee Examiner take into consideration.  The preliminary analysis included information related to:

    A.    Matters Descriptions/Scope of Work;

    B.    Billing Rates;

    C.    Billing Increments;

    D.    Retention Matters; and,

    E.    Expenses.

The information provided by Jones Day in response to this preliminary analysis, by letters dated April 8 and 20, 2010, were also considered by the Fee Examiner.

11. On April 15, 2010, counsel for the Fee Examiner submitted a draft of this pleading to Jones Day, permitting additional opportunity for comment and discussion.

---

[1] Given the reduced services Jones Day provided after September 2009, Jones Day, the Debtors and the United States Trustee have agreed to convert Jones Day's retention from the arrangement approved by the Court in the Retention Order to treatment as an ordinary course professional under the ordinary course professionals order [Docket No. 2900]. *Declaration of Disinterestedness and Disclosure Statement of J. Todd Kennard on Behalf of Jones Day as Ordinary Course Professional*, ¶ 5 [Docket No. 5283].

**APPLICABLE STANDARDS**

12.  The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

**COMMENTS**

13.  **Project Staffing**.  Jones Day's services have been provided by four position titles for attorneys and one position title for non-attorneys.  The billing rate for partner-level attorneys from $410 to $832.50 per hour, for of-counsel level attorneys range from $427.50 to $675 per hour, for associate-level attorneys from $205 to $495 per hour, and for staff attorneys from $225 to $270 per hour for attorneys providing services during the time period covered by the Fee Application.  *See* Fee Application, Billing summary page.  The billing rate for the one non-attorney providing services during the same time period, a law clerk, was $202.50.  *Id.*  These rates reflect the agreed-upon discounted rates between Jones Day and the Debtors and not Jones

6

Day's standard billing rates. *Declaration of Andrew Kramer* ¶ 3 [Docket No. 3282, Ex. B].[2] The overall blended rate for all billers during the time frame covered by the Fee Application is $495.78. *See* Fee Application, Ex. A. Billing by partners accounted for 471.8 hours or approximately 51.4 percent of the total number of hours billed during the time period covered by the Fee Application.

14. In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel. Given the circumstances surrounding the initial period of this engagement, the matters handled by Jones Day and the discounted billing rate, however, no disallowance is suggested.

*Suggested disallowance for project staffing: none.*

15. **Law Clerks**. Jones Day billed five hours, representing $1,012.50 in fees, for work performed by a law clerk billing at $202.50 an hour. After considering the rate and the tasks assigned to the law clerk, the Fee Examiner concluded that the fees are reasonable for work necessarily performed.

16. Work performed by summer associates, or law students more generally, may be compensable, subject of course to the same reasonableness review as other professionals. *E.g.*, *In re Recycling Indus.*, 243 B.R. 396, 404-05 (Bankr. D. Colo. 2000) (recognizing that summer associates "can be valuable and worthy of billing clients at reasonable rates"); *cf. Missouri v. Jenkins*, 491 U.S. 274, 286-89 (1989) (non-bankruptcy context). Given the Court's disinclination to allow professionals to recoup summer associate fees through the section 330

---

[2] In response to the Fee Examiner's inquiry to Jones Day about the basis for the fee discount, Jones Day disclosed it discounted its standard billing rates for the benefit of the Debtor as a result of the Debtor's request for such a discount for pre-petition legal services. Jones Day applied those same pre-petition discounted rates to work for the Debtors performed after the bankruptcy filing. The Fee Examiner notes that in light of the volume of legal work generated by the Debtors and the unusual taxpayer-funded nature of the Debtor-in-Possession financing, discounted rate structures are particularly appropriate.

7

process, however, the Court may disallow all fees associated with such paraprofessionals' services in this case. *In re Chemtura Corp.*, First Interim Fee Application Hrg. Tr. at 37-38, No. 09-11233 (Bankr. S.D.N.Y. Sept. 29, 2009). The Fee Examiner is not recommending any reductions to the Fee Application for work performed by law clerks; this willingness to accept such fees carries with it the implicit assumption that Fee Applicants will voluntarily identify and reduce all fees associated with work performed by paraprofessionals who are functionally summer associates, even if they provide services under a different title.

*Suggested disallowance for services provided by a law clerk: none.*

17. **Billing Increments**. Not all Jones Day professionals appear to have billed in tenth-of-an-hour increments as required under the UST Guidelines, 28 C.F.R. Part 58, Appendix A. The Fee Examiner's analysis of the substance of the tasks performed and recorded in half or full hour increments suggests that the time recorded was reasonable and necessary under the circumstances. Given that the professionals in question do not appear to have overbilled the estate for the tasks they performed, no disallowance is suggested.

*Suggested disallowance for billing increments: none.*

18. **Length, Frequency and Distribution of Long Billing Days**. Jones Day professionals did not record or request reimbursement for frequent long billing days. The Fee Examiner's general willingness to accept, essentially at face value, billed and reported time of more than 12 hours a day carries an implicit assumption now made explicit: that the billing attorney spent all of her or his time that day working on this matter. It is the professional's responsibility to ensure that is the case and that the application warrants that fact.

*Suggested disallowance for long billing days: none.*

19. **Overcharges, Undercharges and Double Billing**. The Fee Examiner did not identify any billing discrepancies.

8

*Suggested disallowance for billing discrepancies: none.*

20. **Transient Billers**. Nineteen of Jones Day's thirty-two professionals who provided services during the time period covered by the Fee Application billed a total of five hours or less to the estate. This total represents approximately 59.4 percent of all billers and includes more than half of the partner-level attorneys, all the of-counsel attorneys, and more than half of the associate-level attorneys. *See* Fee Application, billing summary page. Significant use of transient billers raises questions about the necessity and value of services those billers provided to the estate. However, given the limited financial cost of these billers to the estate, the discounted rates, and the time descriptions that suggest most if not all of these transient billers worked on discrete projects, no disallowance is suggested.

*Suggested disallowance for transient billers: none.*

21. **Communications**. Jones Day professionals appear to have staffed attendance at internal and external conferences and meetings appropriately.

*Suggested disallowance for communications staffing: none.*

22. **Billing for Clerical and Administrative Tasks**. Jones Day professionals do not appear to have billed for clerical or administrative tasks at professional rates. The Fee Examiner notes that Jones Day professionals either did not rely on paralegal assistance or that Jones Day did not bill for such services.

*Suggested disallowance for clerical and administrative billing: none.*

23. **Billing for Retention Matters**. Jones Day billed $30,354.50 for the preparation of its retention application and affidavits of disinterestedness, comprising approximately 6.7 percent of Jones Day's total billings. Counsel for the Fee Examiner raised this issue with Jones Day, noting also that Jones Day was required to disclose more than 85 pages of client relationships due to the scope of prepetition work for the Debtors. Upon consideration of the

matter and in light of the extensive disclosures required in Jones Day's retention documents, no disallowance is suggested.

*Suggested disallowance for retention-related billing: none.*

24. **Legal Research**. Jones Day staffing for research projects appears appropriate for the circumstances and reasonable as to the amount. In addition, Jones Day did not charge the estate for any Lexis or Westlaw research services. In response to the Fee Examiner's inquiry, Jones Day disclosed that "as part of Jones Day's agreement with Old GM, Jones Day attorneys used Lexis accounts that were billed directly to GM (In some cases, Jones Day agreed not to bill Lexis/Westlaw charges for accounts that were not directly billed to Old GM by Lexis pursuant to the agreement between Old GM and Lexis)."[3] Jones Day's arrangement to charge for legal research fees through a global contract with the Debtors rather than separately through law firm contracts is reasonable and appropriate, and the Fee Examiner recommends that other professionals pursue a similar approach in subsequent fee applications.

*Suggested disallowance for legal research fees: none.*

25. **Block Billing**. Pursuant to the UST Guidelines, time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. Jones Day professionals complied with this guideline consistently.

*Suggested disallowance for block billing: none.*

26. **Expenses**. Jones Day requests reimbursement for $4,359.53 in expenses. Jones Day did not provide any documentation to support the expenses it claims were actually incurred or to support a claim that the expenses were necessary and reasonable.

---

[3] The Fee Application contains charges for "Computerized Research Services," totaling $18.32. These are identified in the individual disbursement entries as PACER charges rather than Lexis or Westlaw charges.

10

27.     The Fee Examiner additionally notes that some of the expenses appear to be for legal fees, identified in the Fee Application as "Consultants and Agents Fees." Legal fees are generally not reimbursable as expenses because they allow a professional to circumvent the retention process. *See*, *e.g.*, *In re Midland Capital Corp.*, 82 B.R. 233, 241 (Bankr. S.D.N.Y. 1988). Jones Day seeks reimbursement for thirteen such consultant fees, individually ranging in amount from $19.11 to $565.70, for a total of $2,554.63.[4] Although there is no general order in place addressing sub-retentions by professionals, Jones Day's Retention Order specifically authorizes Jones Day to include the costs of legal counsel as itemized expenses on its fee applications. Retention Order at 3.

*Suggested disallowance for expenses: none.*

28.     **Vague Entries**. Jones Day professionals consistently described in detail the tasks they performed, including the participants in conferences and meetings and the subject matter of research conducted.

*Suggested disallowance for vague entries: none.*

29.     **Billing Judgment and Disclosures**. Jones Day has voluntarily written off all time and expenses incurred on behalf of the Debtors in September 2009. Fee Application, ¶ 8(c) n.2. Jones Day has also disclosed the firm's expense policies, *id.* at ¶ 18, the nature of the adjustments the firm voluntarily made to the Fee Application, *id.* at ¶ 19, and has thoroughly described the identification and description of the matters it handled for the Debtors during the period covered by the Fee Application, *id.* at ¶¶ 9-16. Jones Day has voluntarily written off a total of $16,067.00 in fees and $95.87 in expenses. *Id. at ¶ 19.*

---

[4] One such consultant was the Fee Examiner's law firm, Godfrey & Kahn, S.C., whose limited representation of the Debtor as a consultant to Jones Day was disclosed in the *Affidavit and Disclosure Statement on Behalf of Brady C. Williamson With Respect to Appointment of Fee Examiner and Counsel* [Docket No. 4707, Ex. A].

> *Total expenses suggested for disallowance: None.*
>
> *Total fees suggested for disallowance: None.*
>
> *Total fees and expenses recommended for Disallowance: None.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for the observations to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of No Objection* to the Fee Application.

Dated: Madison, Wisconsin
       April 22, 2010.

                                GODFREY & KAHN, S.C.

                    By:    /s/ *Katherine Stadler*
                            Katherine Stadler (KS 6831)
                            Timothy F. Nixon (TN 2644)

                            GODFREY & KAHN, S.C.
                            780 North Water Street
                            Milwaukee, Wisconsin 53202
                            Telephone: (414) 273-3500
                            Facsimile: (414) 273-5198
                            E-mail: kstadler@gklaw.com
                                          tnixon@gklaw.com

                            *Attorneys for Fee Examiner*

4885539_1

13