**Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: April 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
:
In re:                                              :    Chapter 11
:
MOTORS LIQUIDATION COMPANY, *et al.,*  :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*         :    (Jointly Administered)
:
                                     Debtors.     :    Honorable Robert E. Gerber
:
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION**
**TO THE FIRST INTERIM FEE APPLICATION OF**
**LOWE, FELL & SKOGG, LLC (NOW WITHDRAWN BY APPLICANT)**

**TO:**     **THE HONORABLE ROBERT E. GERBER**
           **UNITED STATES BANKRUPTCY JUDGE**

      The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Application of Lowe, Fell & Skogg, LLC as Attorneys for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2009, through July 10, 2009* [Docket No. 4474] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in

these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, notwithstanding the applicant's withdrawal of its application, the Fee Examiner identifies $104,252.78 in fees and $19,057.15 in expenses, from a total of $281,052.50 in requested fees and expenses in the Fee Application, that are not sustainable. The Fee Examiner respectfully represents:

### SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including establishing that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred. A fee application must additionally comply with the format and content requirements set forth in applicable guidelines and bankruptcy rules.

In general, the Fee Application fails to demonstrate a basis for the requested compensation. After initially reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary observations with Lowe, Fell & Skogg, LLC ("**LFS**") by letter dated March 5, 2010. On March 26, 2010, LFS voluntarily withdrew its Fee Application [Docket No. 5376].

By that point, the Fee Examiner and his counsel had done much of their analysis. They completed that analysis so that the Fee Application would be part of the survey of all of the professional applications on file to permit general conclusions about the process. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's suggested disallowance of $104,252.78 in fees and $19,057.15[1] in expenses for a total suggested reduction of $123,309.93.

---

[1] LFS has misstated the expenses listed on the Fee Application, Exhibit C, as $19,212.25.

2

**BACKGROUND**

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.      On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.      On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

5.      On July 22, 2009 Debtors' counsel filed its *Application of Debtors for Entry of Order Pursuant to 11 U.S.C. §327(e) and Fed. R. Bankr. P. 2014 Authorizing Retention and Employment of Lowe, Fell & Skogg, LLC as Legal Counsel Nunc Pro Tunc to the Commencement Date* [Docket No. 3284] (the "**Retention Application**"). There were no objections to the Retention Application, and LFS was appointed by this Court's *Order Pursuant*

3

*to 11 U.S.C. §327(e) and Fed. R. Bankr. P. 2014 Authorizing the Retention and Employment of Lowe, Fell & Skogg, LLC as Special Counsel to the Debtors, Nunc Pro Tunc to the Commencement Date* dated August 3, 2009 [Docket No. 3635] (the "**Retention Order**").

6. On November 18, 2009, the Fee Application was filed, seeking fees in the amount of $261,840.25 and expenses in the amount of $19,212.25, for total requested compensation in the amount of $281,052.50.

    A. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), LFS previously had been paid $209,472.20 in fees and $19,057.15 in expenses, subject to Court review and approval, leaving a combined request of unpaid fees in the amount of $52,368.05. Fee Application, ¶ 9.

    B. Debtors' representatives have advised counsel to the Fee Examiner that the Debtors have been reimbursed for all of the fees paid to LFS by the entity acquiring substantially all of the assets of the Debtors ("**New GM**") and that it is anticipated that New GM will pay any outstanding fees requested by LFS.

7. The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010* [Docket No. 4910]. Without objection, the *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010, authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense request of Jenner & Block

4

LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and The Claro Group, LLC.

8. On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431]. On April 19, 2010 the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending First Interim Fee Applications.

9. The Fee Examiner has evaluated the Fee Application, the Retention Application, the Retention Order, and the *Supplemental Declaration of David W. Fell in Support of the Application of Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 Authorizing Retention and Employment of Lowe, Fell & Skogg, LLC as Legal Counsel Nunc Pro Tunc to the Commencement Date* [Docket No. 3604] (the "**Supplemental Declaration**").[2]

10. By correspondence dated March 5, 2010, counsel to the Fee Examiner requested supplemental information from LFS as part of his review of specific matters relevant to the fees requested. The supplemental information was necessary to support the Fee Application and a further review to ensure compliance with the Advisories (defined below).

11. Counsel for the Fee Examiner has spoken with a representative of LFS, David Fell, on March 9 and April 20, 2010, regarding services performed by LFS and its billing practices.

---

[2] The Declaration is actually a declaration of Henry Lowe, miscaptioned.

5

12.     Mr. Fell contacted counsel for the Fee Examiner on March 9 to discuss the nature of the Fee Examiner's request and the requested documentation. On April 20, Mr. Fell again contacted counsel for the Fee Examiner, stating that LFS had not provided the supplemental information in response to the Fee Examiner's inquiry because LFS had received payment in full subsequent to the March 9 telephone conference. LFS believed any objections had been resolved or withdrawn.

13.     Mr. Fell also submitted a letter dated April 21, 2010 from a member of General Motors, LLC's legal staff, Joseph Lines. Mr. Lines indicated that GM reviewed the billing entries and expenses submitted by LFS and found them to be clear, reasonable, necessary and appropriate. Further, Mr. Lines stated that the flat fee rate provided by LFS has been competitive and a consistent and attractive alternative to hourly billing rates.

14.     Due to the short response time, the withdrawal of the Fee Application, and the fact that all requested fees reportedly have been paid by New GM, LFS will not be supplementing its Fee Application. Mr. Fell emphasized that he had only very recently been advised by Debtors' counsel that he should prepare a response to the Fee Examiner. Mr. Fell indicated that, should the Court request a supplemental response, notwithstanding the withdrawal of the Fee Application, LFS would request additional time to respond. The Fee Examiner will not oppose any such a request.

**APPLICABLE STANDARDS**

15.     The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local**

6

**Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

16. Prepetition, LFS had been counsel to the Debtors pursuant to at least two flat rate agreements and had also performed work at an hourly rate. The fee arrangement described in the Retention Application and approved by the Retention Order is not clear. However, the Supplemental Declaration states that the Fee Application seeks an award of fees pursuant to both monthly flat fee arrangements and that no hourly fees are being sought.

17. The flat fee structures provide:

   A. **January 12, 2009 flat rate letter (Motors Holding and Channel Strategy)**

   - This first letter agreement provides for a broad range of services in exchange for a flat fee, including dealership asset acquisitions and dispositions, real estate acquisitions and dispositions, exclusive use agreements, termination and release of dealers' sales and service agreements, and resolution of ERISA pension and employee benefit issues.

   - Excluded from this fee agreement are certain real estate transactions (Argonaut Holdings, Inc. or "AHI") and representation of GMAC or its subsidiaries.

   - The fee for included matters is a flat rate of $2.1 million a year, equating to $175,000 each month.

7

  B. **January 22, 2009 flat rate letter (Worldwide Real Estate Group matters)**

- This second letter agreement provides for a broad range of services at a flat fee, including dealership asset acquisitions and dispositions, real estate acquisitions and dispositions, leases and subleases with GM, GM suppliers, AHI and dealers. These services do include AHI, a party specifically excluded from the January 12 flat fee letter.

- Excluded matters are covered by a broad description—anything not included in the above description.

- The fee for included matters is a flat rate of $450,000 a year ($37,500 each month) for all matters that require up to 10 billable hours. All matters that require more than 10 billable hours would be billed at hourly rates.

  C. **Fee Calculation**

- Both fee letters provide that flat fee matters will be calculated as if such services were to be billed on an hourly basis at LFS' 2009 hourly rates. However, any services that LFS actually bills to GM on an hourly basis will be billed at LFS's 2003 rates.

The fees being sought under the Fee Application total $261,840.25.[3] This number constitutes the two monthly flat rate fees ($175,000 plus $37,500), totaling $212,500, plus a pro rata billing for the first ten (10) days of July, totaling $68,548.39.[4]

  18. **Project Staffing**. Legal services have been provided by three job titles: members - $275.00 $340.00; associates - $185.00 $220.00; and paralegals - $75.00 $160.00. As set forth on Exhibit B to the Fee Application, 790 hours or 74 percent of the hours were billed by members. In addition, only six percent of the hours billed were at paralegal rates. In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice

---

[3] The total of the itemized fees is $281,048.39, Fee Application, ¶ 17, but erroneously, this fee was not requested.

[4] Pursuant to the fee letters, LFS submitted time records in support of its fees at LFS's current hourly rates. However, if bills were submitted to the Debtors by LFS for work outside of the flat fee arrangement, the 2003 hourly rates would govern. If the billable work performed under the flat fee arrangement is calculated at the reduced hourly rate, the services would be billed at $234,862.20, a reduction of $26,978.05.

8

is for tasks to be managed by senior personnel with work principally performed at the lowest appropriate billing rate.

*The Fee Examiner recommends a 30 percent reduction in hours at the highest member rate ($80,580.00) and a reclassification of those hours to the highest associate rate ($46,794.00).*

*Suggested disallowance for project staffing: $33,786.00.*

19. **Block Billing**. Block billing is prohibited by the UST Guidelines. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Fee Examiner has identified some entries by LFS professionals that do not comply with this guideline.

*Although block billing is always of concern, no disallowance is suggested. Most of the offending entries are also vague, a more serious concern addressed in Paragraph 22 below.*

20. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The Fee Examiner's First Advisory has requested that travel time be itemized separately.

*Travel time has not been itemized separately, and the Fee Examiner is unable to determine if travel time has been reduced accordingly in the Fee Application.*

21. **Clerical and Administrative Charges**. Numerous billing entries describe clerical or administrative non-compensable services. These entries total $2,050.50.

*Suggested disallowance for non billable clerical and administrative tasks: $2,050.50.*

22. **Vague Tasks and Vague Communications**. The Fee Examiner has identified examples of billing entries that contain an insufficient description of a task and are, as a result, non-compensable. To be compensable, all time entries must be sufficiently detailed to allow a

9

party reviewing them to determine their compliance with applicable codes, rules, standards, and guidelines. "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." UST Guidelines at (b)(4)(v). "Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication," *id*., and—again—all time entries require sufficient detail to demonstrate compliance with the standards set forth in 11 U.S.C. § 330.

This issue is pervasive throughout the Fee Application. As an example, 95 percent of the hours billed by two timekeepers with the highest hourly rates are vaguely described. Due to LFS' withdrawal of its Fee Application, the Fee Examiner has suspended a more detailed calculation of fees recommended for disallowance based on this criteria. It is important to note, however, even in fee applications based on flat fee agreements, that vague descriptions of tasks and communications hamper the Court's ability to determine the scope of services provided, as well as the necessity and value of the professional's work.

David Fell contacted counsel for the Fee Examiner on April 20 to express concern that objections remained to the Fee Application even though LFS had not responded to the Fee Examiner. Mr. Fell described a 15-year relationship with Debtors and explained that the billing practices, while perhaps vague to the Fee Examiner, were customary between LFS and the Debtors. He satisfactorily explained those vague time entries identified by the Fee Examiner for services he performed.

*Suggested disallowance for vague tasks and vague communications (after suggested reduction pursuant to Paragraph 18) – 30 percent of total compensation:  $68,416.28*

23. **Expenses**. The Fee Application, Exhibit C, contains a Summary of Expenses. The detail of these expenses is insufficient for the expenses to be compensable. In response to the Fee Examiner's inquiry, Mr. Fell has provided detail in support of expenses. These

10

materials, while deficient, have not been fully evaluated by the Fee Examiner due to the withdrawal of the Fee Application.

    A.    Travel expenses totaling $18,025.22 have been requested in a summary form and could not be properly evaluated.

*Suggested disallowance for unsubstantiated travel expenses: $18,025.22.*

    B.    An itemized expense of "Outside Legal Counsel" has been submitted in summary form. This sub-retention is outside the scope of the Retention Order, and no determination has been made of the necessity of these services. "Outside Legal Counsel" does not appear to have disclosed conflicts or provided affidavits of disinterest, either publicly or otherwise. Further, expenses are not itemized as required by the UST Guidelines and have not been authorized by the Debtors or the Court.

*Suggested disallowance for unauthorized legal counsel expenses: $693.00.*

    C.    Federal Express charges are also requested in a summary form. No evaluation can be made concerning the propriety or necessity of these expenses.

*Suggested disallowance for non-itemized Federal Express charges: $183.83.*

    D.    An expense to the estate is identified as "CSC Diligenz Searches." The expense is not documented and does not disclose the service provided. As a result, the expense cannot be properly evaluated.

*Suggested disallowance for vaguely described expenses: $155.10.*

***Total fees suggested for disallowance: $104,252.78.***

***Total expenses suggested for disallowance: $19,057.15.***

***Total fees and expenses recommended for disallowance: $123,309.93.***

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* on the Fee Application.

Dated: Green Bay, Wisconsin
April 22, 2010.

GODFREY & KAHN, S.C.

By: /s/ *Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

4885990_1

12