Hearing Date and Time: **April 29, 2010 at 9:45 a.m.** (Prevailing Eastern Time)
Objection Date and Time: **April 22, 2010 at 4:00 p.m.** (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x
                                                            :
In re                                                       :   Chapter 11
                                                            :
MOTORS LIQUIDATION COMPANY *et al.*,                        :   Case No. 09-50026 (REG)
    f/k/a General Motors Corp. *et al.*,                    :   (Jointly Administered)
                                                            :
                    Debtors.                                :   Honorable Robert E. Gerber
                                                            :
----------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION**
**TO FIRST INTERIM FEE APPLICATION OF BUTZEL LONG**

**TO:   THE HONORABLE ROBERT E. GERBER**
       **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *Application of Butzel Long, a Professional Corporation, As Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From June 10, 2009 Through September 30, 2009* [Docket No. 4450] (the "**Fee Application**").  The Court appointed the Fee Examiner to monitor the fees and expenses

incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals.  With this *Report and Statement of Limited Objection,* the Fee Examiner identifies the fees and expenses requested in the Fee Application, which requests a total of $259,041.37, that are objectionable.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including establishing that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred.  A fee application must additionally comply with the format and content requirements in applicable guidelines and bankruptcy rules.

After reviewing the Fee Application, counsel for the Fee Examiner raised significant concerns about the application by letter dated March 31, 2010.  On April 13, 2010, and in response to counsel's letter, the firm addressed some of these concerns.  This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $46,105.81 in fees and expenses.

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.  On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.  On June 30, 2009, the Creditors' Committee filed its *Application of the Official Committee of Unsecured Creditors to Employ Butzel Long as Special Counsel Nunc Pro Tunc to June 10, 2009* [Docket No. 2847] (the "**Retention Application**"). There were no objections to the Retention Application, and Butzel Long ("**BL**") was appointed by this Court's *Order Authorizing Employment of Butzel Long as Special Counsel to the Official Committee of Unsecured Creditors Nunc Pro Tunc to June 10, 2009,* dated July 13, 2009 [Docket No. 3124] (the "**Retention Order**").

5.  On November 16, 2009, the Fee Application was filed, seeking fees in the amount of $237,775.50 and expenses in the amount of $21,265.87, for total requested compensation in the amount of $259,041.37. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), BL reports it has previously submitted monthly statements but, as of the date of the Fee Application had not yet received payment from the Debtors. *See* Fee Application, ¶ 10.[1]

---

[1] Records provided by AP Services, LLC indicate that BL was paid $211,538.61 on November 18, 2009, leaving a combined request of unpaid fees and expenses in the amount of $47,502.76.

3

6. The Fee Examiner has evaluated the Retention Application, the Retention Order, the Fee Application, the *Supplemental Declaration and Disclosure Statement of Barry N. Seidel Relating to the Employment of Butzel Long as Special Counsel to Official Committee of Unsecured Creditors,* dated November 30, 2009 [Docket No. 4559], and the *Second Supplemental Declaration and Disclosure Statement of Barry N. Seidel Relating to the Employment of Butzel Long as Special Counsel to the Official Committee of Unsecured Creditors,* dated March 4, 2010 [Docket No. 5182] (collectively, the "**Seidel Declarations**").

7. By correspondence dated March 31, 2010, counsel to the Fee Examiner provided BL with a summary of his preliminary analysis of the fees requested in the Fee Application, inviting BL to supply any additional information it desired the Fee Examiner take into account. The preliminary analysis included information related to:

    A.    Scope of work;

    B.    Specificity of billing entries;

    C.    Billing increments;

    D.    Legal research;

    E.    Retention matters; and,

    F.    Expenses.

BL provided information in response to this preliminary analysis by correspondence dated April 13, 2010.

8. On April 15, 2010, the Fee Examiner sent BL a draft of this *Report and Statement of Limited Objection* (the "**Draft Report**") containing a limited objection to BL's fees, offering a second opportunity for discussion. BL provided further information by correspondence dated

4

April 16 and 20, 2010. All of the information provided by BL was considered by the Fee Examiner.

## APPLICABLE STANDARDS

9. The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

10. **Project Staffing**. Services have been provided by five people in shareholder or of counsel positions, four attorneys or associates, two summer associates, and three paralegals. The billing rate for shareholder and of counsel-level attorneys ranges from $285.00 to $725.00 per hour, for associate level attorneys from $350.00 to $410.00 per hour, and for summer associates $175.00 per hour during the time period of the Fee Application. *See* Fee Application, Summary. The billing rate for paralegals during the same time period ranges from $140.00 to

5

$235.00. These rates reflect BL's standard billing rates. Retention Application, ¶ 13.[2] The overall blended rate is $477.25. Fee Application, Summary. Billing by partners accounted for 232.2 hours or approximately 43.8 percent of the total number of hours billed during the period. *See id*.

*In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel.*

*Suggested disallowance for project staffing: None.*

11. **Summer Associates**. BL billed 6.3 hours, representing $1,102.50 in fees, for work performed by two summer associates billing at $175.00 an hour. Work performed by summer associates, or law students more generally, may be compensable subject, of course, to the same reasonableness review as other professionals. *E.g., In re Recycling Indus.*, 243 B.R. 396, 404-05 (Bankr. D. Colo. 2000) (recognizing that summer associates "can be valuable and worthy of billing clients at reasonable rates"); *see also Missouri v. Jenkins,* 491 U.S. 274, 286-89 (1989) (non-bankruptcy context). Given the Court's disinclination to allow professionals to recoup summer associate fees through the section 330 process, however, the Court may disallow all fees associated with summer associate billing. *See*, *e.g.*, *In re Chemtura Corp.*, First Interim Fee Application Hr'g Tr. at 37-38, No. 09-11233 (Bankr. S.D.N.Y. Sept. 29, 2009).

*Suggested disallowance for services provided by summer associates: $1,102.50.*

12. **Scope of Work**. The Fee Examiner notes that project codes utilized by BL focused on supplier issues and the JPMorgan Avoidance Complaint – in addition to retention, conflict, and fee applications addressed in this *Report and Statement of Limited Objection*. BL's anticipated role, set forth in the Retention Application, was to act as conflicts counsel and to

---

[2] Some retained professionals considered the volume of legal work generated by the Debtors and the unusual nature of the debtor-in-possession financing and, accordingly, implemented discounted rate structures. BL did not.

6

provide advice on supplier issues. This scope of work did not appear to encompass the 5.2 hours spent by a senior partner between July 6 and July 8, 2009 participating in the selection of board members for Motors Liquidation Company. BL has responded to the inquiry about this by stating that this work was performed at the express request of the Creditors' Committee.

*The Fee Examiner will defer any evaluation of the expenditure of time in connection with the JPMorgan adversary proceeding until the results of the adversary proceeding are ascertainable.*

*Suggested disallowance: In light of the relatively nominal amount of the expenditure, no disallowance is recommended.*

13. **Length, Frequency and Distribution of Long Billing Days**. BL professionals did not record or request fee payment for frequent long billing days.

*Frequent long billing days by the same professional can raise questions about project staffing and efficiency and the credibility of the application process. In addition, long billing days that do not correspond to time periods of high activity in the case raise questions about the necessity of the services provided. Professionals should explain instances of frequent long billing days in their fee applications.*

*Suggested disallowance: None.*

14. **Transient Billers**. Three of the 14 BL professionals who provided services during the time period covered by the Fee Application billed a total of five hours or less to the estate. This total includes two partner-level attorneys and the summer associate. *See* Fee Application, Summary.

*Significant use of transient billers raise questions about the necessity and value of services those billers provided to the estate. Given the limited financial cost of these billers and the time descriptions that suggest most, if not all, of them worked on discrete projects, no disallowance is suggested.*

15. **Billing Rate Error**. The Fee Application suggests that a BL associate was erroneously billed at an hourly rate $35.00 per hour below the rate disclosed in the Retention Application. The error has been corrected as of September 1, 2009, and BL suggests that it may request payment of the unbilled amounts, totaling $7,139.00, in the future. Fee Application, at 5.

7

*Suggested disallowance: None. However, BL's decision not to pursue unbilled amounts during the first interim period may appropriately be treated as a discount.*

16. **Double Billing**.  Although the Fee Examiner questioned timekeeper entries that suggested an erroneous duplication of billing entries, BL has responded to this inquiry to the Fee Examiner's satisfaction.

*Suggested disallowance for double billing: None.*

17. **Travel Time**.  Non-working travel time will be compensated at 50 percent.  *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted).  The First and Second Advisories have requested that travel time be itemized separately.  *See* First Advisory, at 6, ¶ 15.  No travel time has been identified by BL in the Fee Application—although travel expenses have been submitted for reimbursement.  No deduction is noted for travel time, as required by the Second Advisory, at 13, and the Fee Examiner recognizes that travel time may have been billed in full at full hourly rates.  However, in light of the nominal travel expenses, indicating limited travel time, no disallowance is suggested.

*Suggested disallowance for travel time: None.*

18. **Clerical and Administrative Charges**.  Some billing entries describe clerical or administrative non-compensable services.  These entries total $3,422.00.  The Fee Examiner has reviewed BL's response on this issue; a disallowance is appropriate.  However, many of these charges are also included in the Retention and Compensation objection below.

*Suggested disallowance for non-billable clerical and administrative tasks: None.*

8

19.  **Billing for Retention and Compensation Matters**.  BL billed $40,543.00 for the preparation of its retention application and affidavits of disinterestedness, and an additional $15,628.50 for fee applications and billing for a total of $56,171.50, comprising approximately 23 percent of BL's total requested fees.  This is excessive.  Counsel for the Fee Examiner raised this issue with BL,[3] noting also that BL has disclosed nine pages of client relationships.  In contrast, Jones Day billed 54 percent of this amount, $30,354.50, or 6.7 percent of its billings, and disclosed more than 85 pages of client relationships.

*In response to the Draft Report, BL has conducted its own analysis of other legal retained professionals' billings related to retention and compensation and maintains that the suggested disallowance is arbitrary, unprecedented, and unwarranted.[4]  The Fee Examiner has considered BL's correspondence and has ensured that expenses related to retention matters are not included in calculations relating to retention and compensation.*

*Retention and billing matters have been calculated at five percent of total billings for the period covered by the Fee Application ($11,888.77).*

*Suggested disallowance:  $44,282.73.*

20.  **Legal Research**.  BL staffing for research projects appears appropriate for the circumstances and reasonable as to amount.  However, BL did charge the estate for Lexis or Westlaw research services, and the Fee Examiner has requested a copy of the contracts with legal research providers.[5]

*Suggested disallowance for legal research:  None.*

---

[3]  AP Services, LLC also raised this issue with BL, noting that retention issues account for more than 10 percent of the First Monthly Statement.  Fee Application, at 4 n.1.

[4]  A cap on billings for retention matters has been addressed in *In re Enron Corp., et al.*, No. 01-16034 (Bankr. S.D.N.Y. 2010), and a cap on ongoing billing matters has been raised recently in *In re Lehman Brothers Holdings Inc., et al.*, No. 08-13555 (Bankr. S.D.N.Y. 2010).

[5]  The Fee Examiner notes that Jones Day's arrangement to charge for legal research fees through a global contract with the Debtors, rather than separately through law firm contracts, is reasonable and appropriate.  The Fee Examiner recommends that other professionals pursue a similar approach in subsequent fee applications.

21.     **Vague Time Entries**. The Fee Examiner has identified specific billing entries, totaling $3,428.40, that contain an insufficient description of a task and are non-compensable.

*Suggested disallowance for vague time entries:  $514.26 (15 percent).*

22.     **Expenses**. The Fee Application, Exhibit E, contains an Expense Summary. Although the detail of these expenses was initially insufficient to be compensable, BL has produced documentation at the request of the Fee Examiner to substantiate most of these expenses. The remaining concerns are:

A.     Secretarial overtime:  This administrative fee is generally not a reimbursable expense under the UST Guidelines but in light of the nominal amount involved ($84.23), the Fee Examiner will not recommend a reduction.

*In response to the Fee Examiner's inquiry, BL maintains this expense is necessary.*

*Suggested disallowance for secretarial overtime:  None.*

B.     Travel:  The Fee Examiner has requested a statement of the date, description, name of person incurring the charge, method of computation, and purpose of each travel expense in an aggregate of $284.00.  These charges either do not identify the person or do not identify the type of expense.

*In response to the Fee Examiner's inquiry, BL has withdrawn a portion of its request in the amount of $63.00, and provided substantiation for the remaining travel expenses.*

*Suggested disallowance for unsubstantiated travel:  None.*

C.     Meals:  BL's application requests $97.54 in meals without identifying the person incurring the expense. The Local Guidelines permit in-house meal charges for "professionals required to work after 8:00 p.m. and for meals taken prior to 8:00 p.m. If

10

the professional returns to the office to work at least one-half hours." BL's Fee Application did not disclose enough detail to evaluate compliance with this guideline.

*In response to the Fee Examiner's request, BL has provided sufficient documentation of these meal expenses.*

*Suggested disallowance for meals: None.*

D.   Copies: BL has requested reimbursement for copies at $0.18 per page. Pursuant to the Fee Examiner's First Status Report and Advisory, at 7, ¶ 17, copies will be allowed at $0.10 per page.

*Suggested disallowance for copies: $206.32.*

23.   The Fee Application provides that all expenses from the First Interim Period in the Fee Application might not be included in the Fee Application due to delays caused by accounting or processing procedures, and BL reserves the right to make further application for expenses not included in the Fee Application. (Fee Application, at 8 n.2). BL has been invited to supplement its filing, but it has not requested further expense reimbursement.

*Total fees suggested for disallowance: $45,899.49.*

*Total expenses suggested for disallowance: $206.32.*

*Total fees and expenses recommended for disallowance: $46,105.81.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the limited basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to the Fee Examiner review should be aware, as well, that while the Fee

11

Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Butzel Long Fee Application.

Dated:  Green Bay, Wisconsin
April 22, 2010.

                                                GODFREY & KAHN, S.C.

By:   /s/ *Carla O. Andres*
Timothy F. Nixon (TN 2644)
Carla O. Andres (CA 3129)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: tnixon@gklaw.com
candres@gklaw.com

*Attorneys for Fee Examiner*

4885768_1