Hearing Date and Time: **April 29, 2010 at 9:45 a.m.** (Prevailing Eastern Time)
Objection Date and Time: **April 22, 2010 at 4:00 p.m.** (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,                  :    (Jointly Administered)
                                                           :
                        Debtors.                           :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO**
**THE FEE APPLICATION OF EVERCORE GROUP, L.L.C.**
**AND MOTION TO ADJOURN FEE APPLICATION HEARING**

**TO:    THE HONORABLE ROBERT E. GERBER**
         **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First and Final Application of Evercore Group L.L.C. for Compensation and Reimbursement of Expenses* [Docket No. 4453] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to

the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection*, the Fee Examiner identifies $1,042.34 in expenses requested in the Fee Application that are objectionable. More significantly, the Fee Examiner requests that the Court's consideration of this Fee Application, as a matter of final approval, pursuant to 11 U.S.C. § 330, be deferred. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including establishing that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred. A fee application must additionally comply with the format and content requirements set forth in applicable guidelines and bankruptcy rules.

The structure and nature of the compensation requested—including a "success fee" not fully payable until a confirmation order has been entered—make any substantive evaluation of the fees requested in the Fee Application premature. The Fee Examiner has reviewed the requested expenses. After an initial review, counsel for the Fee Examiner raised some preliminary observations with Evercore by letter dated April 1, 2010. Evercore has not provided any specific information in response, although Evercore's counsel has spoken with the Fee Examiner and his counsel. This *Report and Statement of Limited Objection* summarizes the Fee Examiner's suggested disallowance of $1,042.34 in expenses and the basis for a deferred fee analysis.

2

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.  On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.  On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. on January 19, 2010 [Docket No. 4833].

5.  On June 12, 2009 Debtors' counsel filed its *Application for an Order Pursuant to Sections 327(A) and 328(A) of the Bankruptcy Code and Bankruptcy Rule 2014(A) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 954] (the "**Retention Application**").

3

6. That Retention Application triggered a series of objections: by the Ad Hoc Committee of Consumer Victims of General Motors [Docket No. 1892], by the Ad Hoc Committee of Personal Injury Asbestos Claimants [Docket No. 1968], by the United States Trustee [Docket No. 2189] (the **"UST Objection"**), and by the Official Committee of Unsecured Creditors [Docket No. 2232] (the "**Committee Objection**") (collectively, the "**Objections**").

7. The Debtors subsequently filed a *First Supplemental Declaration of William C. Repko in Support of the Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 2435] (the "**Supplemental Repko Declaration**"); the *Response of Debtors to (I) Objection of Ad Hoc Committee of Consumer Victims of General Motors, (II) Objection of the Ad Hoc Committee of Personal Injury Asbestos Claimants, (III) Objection of the United States Trustee, and (IV) Limited Objection of the Official Committee of Unsecured Creditors to the Debtors' Application for an Order Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 2441] (the "**Debtors' Response**"); the *Second Supplemental Declaration of William C. Repko in Support of the Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Document No. 3756] (the "**Second Supplemental Repko Declaration**"); and, the *Declaration in Support of the Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C.*

4

*as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 3773 ] (the "**Borst Declaration**" and, together with the Supplemental Repko Declaration and the Second Supplemental Repko Declaration, the "**Declarations**").

8. Evercore Group L.L.C.'s ("**Evercore**") retention was authorized by this Court's *Order Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* dated October 28, 2009 [Docket No. 4304] (the "**Retention Order**").

9. The Evercore compensation structure is tiered:

   A. A pro-rated monthly fee of $400,000.00 from June 1, 2009 through July 10, 2009 (the "**Retention Period**");

   B. A restructuring fee (the "**Restructuring Fee**") in the amount of $30 million, payable upon the consummation of any restructuring, against which Evercore will credit up to $14 million in monthly and other fees paid to Evercore;

   C. A fee ("**NewCo Transaction Fee**") in the amount of $30 million payable upon completion of the NewCo Sale, against which Evercore will credit up to $17 million in monthly and other fees paid to Evercore;

   D. A fee in the amount of $2.5 million for assisting the Debtors in the structuring and implementation of debtor-in-possession ("**DIP**") Financing under the Bankruptcy Code (the "**DIP Structuring Fee**"); and,

   E. A fee (the "**Delphi Fee**") in the amount of $2 million for advisory services related to the Delphi bankruptcy proceeding, *In re DPH Holdings Corp., et al.,* No. 05-44481 (Bankr. S.D.N.Y. 2010), payable upon either consummation of any plan of reorganization of Delphi Corporation, or the sale or other transfer of all or substantially

5

all of the assets or business of Delphi in a single transaction or series of related transactions. The Delphi Fee cannot be credited against any previously-paid fee. These rates, assertedly, are comparable to compensation charged by investment banking and financial advisory firms of similar stature to Evercore, Retention Agreement, ¶ 15.[1]

10. Pursuant to the Retention Order, the NewCo Transaction Fee apparently had an outstanding balance of $13 million, expressly subject to the United States Trustee's right to object to Evercore's final fee application. The NewCo Transaction Fee was ordered to be paid as follows: (1) $8,667,000.00 due and payable upon entry of the Retention Order; and (2) the remaining balance of $4,333,000.00 payable upon entry of an order confirming a plan of reorganization. Subject to the application of the retainer (referenced in ¶ 12 n.3 below) Evercore holds 100 percent of the compensation payable at this time under the Retention Order.

11. On November 16, 2009, Evercore filed the Fee Application seeking approval of fees in the amount of $16,029,032.00 and expenses in the amount of $2,920.62, for total requested compensation in the amount of $16,031,952.62 for services rendered during the 40-day Retention Period.[2] As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Evercore had previously been paid $11,167,000.00 in fees, subject to Court review and approval, leaving a combined request of unpaid fees and expenses in the amount of $4,864,952.62, as of the date of the Fee Application. *See* Fee Application, ¶ 7.

---

[1] The Fee Examiner notes that in light of the volume of legal work generated by the Debtors and the unusual nature of the debtor-in-possession financing, several professionals discounted their hourly rate structures.

[2] Evercore correctly points out that while the Retention Agreement permits the Restructuring Fee and the Delphi Fee under particular circumstances, those circumstances did not come to pass and Evercore has not requested the Restructuring Fee or the Delphi Fee in its Fee Application.

12.     Subsequent to the date of the Fee Application, Evercore has been paid an additional $526,318.62 in fees and expenses, subject to Court review and approval, leaving an outstanding request for $4,338,634.00—$5,634.00 to be paid forthwith by application of a $5,634.00 retainer balance[3] and $4,333,000.00 to be paid on entry of an Order confirming a chapter 11 plan consistent with the Retention Order.

13.     The Fee Examiner has evaluated the Fee Application, the Retention Application, the Objections, the Debtors' Response, the Declarations, and the Retention Order.

14.     By correspondence dated April 1, 2010, counsel to the Fee Examiner requested supplemental information from Evercore as part of his review of specific matters. The supplemental information remains necessary to support the Fee Application and to permit a further review to ensure compliance with the First and Second Advisories (defined in ¶ 16, below). The information requested included:

   A.   Explanation of block billing and repetitive or vague task descriptions;

   B.   Retention matters;

   C.   Explanation of clerical and administrative services; and,

   D.   Documentation of expenses.

15.     On April 16, 2010, the Fee Examiner sent Evercore a draft of this *Report and Statement of Objection*, offering a second opportunity for discussion.

16.     Counsel for Evercore has spoken with the Fee Examiner and counsel for the Fee Examiner, and provided a written response to the Fee Examiner dated April 21, 2010.

---

[3] Evercore holds a retainer balance of $5,634.00, resulting from the Debtors' payment of an over-estimate of pre-petition fees prior to the filing of the chapter 11 cases.

7

**APPLICABLE STANDARDS**

17.  The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

**THE 363 SALE AND DIP FINANCING**

18.  At the commencement of the Debtors' chapter 11 cases, the United States Treasury (the "**Treasury**") had taken the lead in proposing and sponsoring the immediate restructuring plan for Debtors.  The Debtors proposed to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code to a government-sponsored and -funded purchaser (the "**Government-Funded Purchaser**").  To facilitate this sale (the **"363 Sale"**), the government provided approximately $50 billion in prepetition loans and debtor-in-possession financing.

19.  The Debtors proposed to consummate the 363 Sale within 30 days of the Petition Date.  The motion to approve the sale was scheduled for hearing on June 30, 2009, and the

8

Government-Funded Purchaser was the "stalking horse" bidder although, in this case, that term of art lacked its ordinary meaning.

20.     As more fully set forth in the Committee Objection, there was no reasonable likelihood that an alternative and comparable purchaser would emerge.  *See* Committee Objection, ¶ 11.  The Treasury pre-negotiated the Debtors' chapter 11 cases to ensure expeditious passage through the bankruptcy process—in large part because it was determined to be in the national interest.  Towards that end, and to prevent the Debtors' liquidation, the U.S. Treasury had already agreed to provide DIP Financing to the Debtors.

## COMMENTS

21.     **Prepetition Payments**.  Prepetition, beginning in June 2008, the Debtors already had paid Evercore $30,627,253.23 in connection with Evercore's restructuring efforts.[4]  *See* Supplemental Repko Declaration, ¶ 8(a).

22.     **Monthly Fees**.  Evercore contracted for a pro-rated monthly fee of $400,000.00.  During the period covered by the Fee Application, monthly fees totaled $529,032.00.  Evercore does not bill its clients based on the number of hours expended by its professionals.  *See* Fee Application, ¶ 18.  However, the arithmetic division of the monthly fee by the hours reported as expended (a total of 1,247.5 hours) yields an average rate of $424.00 per hour.  Notably, the division of post-petition total compensation (monthly fees plus transaction and other fees) requested by hours expended yields a rate of $12,848.92 per hour.

23.     The Fee Examiner acknowledges the extraordinary circumstances and the volume of work during the Retention Period.  Based on this and a review of the billing records, the Fee Examiner does not recommend disallowance of the monthly fee, *per se*, but sufficient detail has

---

[4] Counsel for Evercore, by letter dated April 21, 2010, has provided this figure, which exceeds the pre-petition payment stated in the Supplemental Repko Declaration by $96,885.07.  This discrepancy is under review.

9

not been provided to enable the Fee Examiner to evaluate the work performed. This level of detail is necessary not only to evaluate the reasonableness of the monthly fees but also to understand the scope of work supporting the NewCo Transaction Fee—especially in light of the pre-petition payments by General Motors to the applicant.[5]

24. **The NewCo Transaction Fee**. While the NewCo Transaction Fee was initially a "success fee" payable upon the closing of the 363 Sale, the Retention Order directs that approximately one-third of the NewCo Transaction Fee be withheld until a plan of reorganization containing specific criteria has been confirmed.

    A.     AP Services, LLC; FTI Consulting, Inc.; and Evercore all have entered into engagement agreements—albeit with differing terms—providing for substantial success fees based upon the closing of this same transaction and/or the confirmation of a plan of reorganization.

    B.     Until an order confirming the plan of reorganization has been entered, the Fee Examiner cannot evaluate the reasonableness of the fees requested. Further, any evaluation, particularly as it relates to a success fee or premium, should be deferred until final fee applications are submitted by all of the parties seeking success fees.

25. **Expenses**. The Fee Application, Exhibit C, contains a Summary of Expenses. The detail of these expenses is insufficient for the expenses to be compensable.

    A.     The Fee Application seeks $892.65 for local travel expenses. The Fee Examiner has asked for a statement of date, description, name of person incurring the expense, method of computation, and purpose of each such expense. Some transportation requests were vague or duplicative. At least seven requests for local transportation were

---

[5] The April 21, 2010 letter from Evercore's counsel, received via e-mail that evening, requests the Fee Examiner's consideration of additional matters in his evaluation of the reasonableness of the requested fees.

made by individuals that recorded no time working on this matter on the date the transportation expense was incurred.

*Suggested disallowance for travel expenses: $279.46.*

B.  The Fee Application requests $560.35 in reimbursement for meals. The Local Guidelines permit in-house meal charges for "professionals required to work after 8:00 p.m. and for meals taken prior to 8:00 p.m. If the professional returns to the office to work at least one and one-half hours." Evercore's fee application did not disclose enough detail to evaluate compliance with this guideline. However, in recognition of the circumstances surrounding the time of the 363 Sale, the Fee Examiner has only suggested disallowance for meals charged when less than four hours, or no time at all, was charged to this matter on the date the meal expense was incurred.

*Suggested disallowance for meals: $85.26.*

C.  Evercore's Fee Application requests $465.72 in reimbursement for copies and shipping. Some of the copying and shipping requests were vague or duplicative. The expense requests are not documented, do not evidence the necessity for the services, and cannot be properly evaluated.

*Suggested disallowance for copying and shipping expenses: $465.72.*

D.  The Fee Application seeks $105.34 for research expenses. These expense requests are vague, and the Fee Examiner is unable to evaluate the research performed or the nature of the expense requested.

*Suggested disallowance for research expenses: $105.34.*

E.  Certain expense requests are identified as "word processing/presentation support" fees in the amount of $106.56. These administrative fees and markups are not reimbursable expenses under the UST and Local Guidelines.

11

*Suggested disallowance for administrative fees: $106.56.*

*Evercore has indicated that, while it disagrees with the suggested expense disallowance, it does not intend to dispute any suggested disallowance in light of the nominal amount involved.*

*Total expenses suggested for disallowance: $1,042.34.*

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject to Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application and moves that the Court enter an order deferring the consideration of Evercore's Fee Application.

Dated:  Green Bay, Wisconsin
April 22, 2010.

              GODFREY & KAHN, S.C.

          By:   /s/ *Carla O. Andres*
              Carla O. Andres (CA 3129)
              Timothy F. Nixon (TN 2644)

              GODFREY & KAHN, S.C.
              780 North Water Street
              Milwaukee, Wisconsin 53202
              Telephone: (414) 273-3500
              Facsimile: (414) 273-5198
              E-mail: candres@gklaw.com
                  tnixon@gklaw.com

              *Attorneys for Fee Examiner*

4885806_1