Hearing Date and Time: **April 29, 2010 at 9:45 a.m.** (Prevailing Eastern Time)
Objection Date and Time: **April 22, 2010 at 4:00 p.m.** (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
MOTORS LIQUIDATION COMPANY, *et al.,*                        :   Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*              :   (Jointly Administered)
                                                             :
                                     Debtors.          :   Honorable Robert E. Gerber
                                                             :
------------------------------------------------------------ x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO THE
FIRST INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**

**TO:   THE HONORABLE ROBERT E. GERBER
        UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Report and Statement of Limited Objection* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period from June 3, 2009 through September 30, 2009* [Docket No. 4455] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports

to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Report and Statement of Limited Objection,* the Fee Examiner identifies the fees and expenses requested in the Fee Application that are objectionable. They total $191,972.53 of the $4,509,537.09 requested. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including establishing that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred. A fee application must additionally comply with the format and content requirements set forth in applicable guidelines and bankruptcy rules.

In general, the Fee Application appears substantively sound. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised some preliminary observations with FTI by letter dated March 1, 2010. On March 19, 2010, and in response to counsel's letter, FTI provided supplemental information. On April 2, 2010, in response to a separate request from the Fee Examiner, FTI provided additional time detail for the period of July 10 through September 30, 2010. On April 15, 2010, the Fee Examiner sent FTI a draft of this *Report and Statement of Limited Objection* containing a limited objection to certain of FTI's fees, offering a second opportunity for discussion. On April 20, 2010, FTI and counsel for the Fee Examiner had productive discussions about the issues raised**.** This *Report and Statement of Limited Objection* summarizes the Fee Examiner's analysis in support of a suggested disallowance of $188,831.46 in fees and $3,141.07 in expenses for a total suggested reduction of $191,972.53.

2

**BACKGROUND**

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.  On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.  On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. on January 19, 2010 [Docket No. 4833].

5.  On August 4, 2009, the Committee's counsel filed its *Application of Official Committee of Unsecured Creditors for Entry of Order Authorizing the Retention and Employment of FTI Consulting, Inc., as its Financial Advisor, Nunc Pro Tunc to June 3, 2009* [Docket No. 3659] (the "**Retention Application**"). There were no objections to the Retention Application, and FTI Consulting, Inc. ("**FTI**") was appointed by this Court's *Order Authorizing*

3

*the Employment and Retention of FTI Consulting, Inc., as Financial Advisor to the Official Committee of Unsecured Creditors, Effective as of June 3, 2009* [Docket No. 3829] (the "**Retention Order**").

6.  The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010.* [Docket No. 4910]. Without objection, the *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010, authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense requests of Jenner & Block LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and The Claro Group, LLC.

7.  On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431]. On April 19, 2010 the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending first interim fee applications. The Fee Examiner proposes to subject this Fee Application to a full audit if the extended retention of Stuart Maue is ultimately allowed and may recommend adjustments to the disallowances itemized in this *Report and Statement of Limited Objection* on the basis of the audit results.

8. On November 16, 2009, FTI filed the Fee Application, seeking fees in the amount of $4,435,036.25 and expenses in the amount of $74,500.84, for total requested compensation in the amount of $4,509,537.09. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), FTI has previously been paid $2,948,029.00 in fees and $61,614.31 in expenses, subject to Court review and approval, as of the date of the Fee Application. *See* Fee Application, Exhibit C. Subsequent to the date of the Fee Application, FTI has been paid an additional $612,886.53 in fees and expenses, leaving a combined request of unpaid fees and expenses in the amount of $887,007.25.

9. The Fee Examiner has evaluated the Fee Application, the Retention Application, and the Retention Order.

10. By correspondence dated March 1 and March 25, 2010, counsel to the Fee Examiner requested supplemental information from FTI as part of its review of specific matters in the Fee Application. The supplemental information requested included:

    A.    Hourly rates with associated titles and staff personnel;

    B.    Explanation of third party expenses;

    C.    Evercore fee model;

    D.    Scope of work;

    E.    Expense detail; and,

    F.    Billing detail.

The information provided in response to this inquiry on March 19 and April 2, 2010 was also considered by the Fee Examiner.

11. Counsel for the Fee Examiner has also spoken with representatives of FTI, as recently as April 20, 2010, regarding services performed by FTI, billing matters, and the scope of work.

## APPLICABLE STANDARDS

12. The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

## COMMENTS

13. **Compensation Structure**. FTI's compensation under the Retention Order has three parts:

    A. From the date of appointment through the date of the closing of the 363 Sale[1] (July 10, 2009), fees are to be paid on an hourly basis ("Hourly Compensation").

---

[1] Defined terms have the meanings assigned to them in the Retention Application, ¶¶ 16-21.

B. From the date of the 363 Sale forward, compensation is a fixed fee of $750,000 each month for three months, and $500,000 each month thereafter ("Monthly Fixed Fee"), until the effective date of the Plan of Reorganization or Liquidation.

C. FTI may receive a "Completion Fee" of $5 million upon the successful resolution of the Debtors' estates. The fee will be considered earned and payable in two parts: first, $2.5 million upon Confirmation of a Plan of Liquidation and, second, $2.5 million upon receipt by the unsecured creditors of not less than 70 percent of the equity and warrants received by the Debtors as proceeds from the 363 Sale.

During the Monthly Fixed Fee period, FTI is required to maintain time records only in half hour increments. In addition to the above fees, FTI will receive reimbursement of actual and necessary expenses.

14. The Retention Order provides that "the United States Trustee shall [have] the right to object to Hourly Compensation, Monthly Fixed Fee and the Completion Fee based on the reasonableness standard provided for in Bankruptcy Code section 330."

15. The Fee Application seeks an award of Hourly Compensation in the amount of $2,385,036.25; Monthly Fixed Fees aggregating $2,050,000.00; and expenses of $74,500.84.

16. **Billing Rates**. The Retention Application identifies ranges of hourly rates charged by particular job titles. However, specific individuals are not identified with titles or hourly rates. Similarly, the billing records supporting the Fee Application do not reflect hourly rates of the titles of the billing parties. Under the Compensation Order, a professional submitting a Monthly Statement to the Debtors for prepayment of all expenses and 80 percent of fees in advance of the professional's interim fee application to the Court must serve a monthly statement

on the Debtors, the Debtors' counsel, the Creditors' Committee counsel, and the U.S. Trustee that includes, among other things:

    A.    The list of individuals (with titles) who provided services during the period covered by the Monthly Statement;

    B.    Their respective billing rates; and,

    C.    The aggregate billing hours spent by each individual.

Compensation Order at ¶¶ (a), (d).

*In response to the Fee Examiner's request, a list of employees, by job classification and hourly rate, has been provided by FTI.* [2]

17.    **Project Staffing**. FTI's services have been provided by eight position titles. The billing rate for Senior Managing Directors and Managing Directors ranges from $490.00 to $855.00 and $625.00 to $685.00, respectively.

18.    Fully 52 percent of the hours billed during the time covered by the Fee Application were computed at Senior Managing Director and Managing Director rates. An additional 26 percent of the hours billed during the same time was at Consultant and Senior Consultant rates. The overall blended rate during the time frame covered by Hourly Compensation is approximately $588.26.

*In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with tasks performed at the lowest appropriate billing rate by less senior personnel. Given the extraordinary circumstances surrounding the initial period of this engagement, however, no disallowance is suggested.*

19.    **Scope of Work**. FTI is the financial consultant for the Creditors' Committee, and it has negotiated a Monthly Fixed Fee for the duration of its representation of the Creditors'

---

[2] The hourly rates are consistent with, or less than, the amounts stated in the Fee Application, with the exception of two international employees whose hourly rates fluctuate with currency conversion rates.

8

Committee. The Fee Examiner has concerns about the scope (not the quality) of the work to be performed by FTI, as financial consultant for the Creditors' Committee, in light of the Committee's defined statutory role and the unique nature of this proceeding.

20.    **Meetings**. In the Fee Application, 390.3 hours have been billed to Project Code 20, general meetings with debtors and debtors professionals; 411.2 hours have been billed to Project Code 21, general meetings with the Creditors' Committee and Creditors' Committee counsel; and, a remaining 44.1 hours have been billed to Project Code 22, meetings with other parties. These meetings aggregate 10 percent of the total hours expended. The Fee Examiner acknowledges that a significant portion of these meetings occurred in the early phases of the retention and does not suggest disallowance. However, FTI should provide explanations for multiple attendees at conferences or meetings on subsequent applications. The need for multiple participants in meetings and calls is not apparent from the time entries themselves. If a party participates in a call because a subject matter on the agenda is within the particular knowledge or expertise of that person, the time entries should reflect that purpose for attendance.

*Suggested disallowance: None.*

21.    **Analysis of Motions**. 356.6 hours were spent on the analysis of "other miscellaneous motions." Again, the majority of this time was during the first 40 days of the retention, but the Fee Examiner suggests that procedures be implemented to ensure that duplicate services are not being provided by FTI and by counsel for the Creditors' Committee.

*Suggested disallowance: None.*

22.    **Time Increment Analysis**. The Retention Order and the applicable guidelines require professionals to bill in increments of one-tenth of an hour. However, during periods covered by the Monthly Fixed Fee, FTI is required only to maintain time records in half hour increments. It did so.

9

23.    **Block Billing**.  Block billing is prohibited by the UST Guidelines.  Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task.  The Fee Examiner identified some entries by FTI professionals that do not comply with this guideline.  This is an area that may be subject to further audit.

24.    **Travel Time**.  Non-working travel time will be compensated at 50 percent.  *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (nonproductive travel time should be billed at one-half the professional's customary rate); *Wilder v. Bernstein,* 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted).  In accordance with the First and Second Advisories, FTI has itemized travel time separately and reduced travel time accordingly in the Fee Application.

*Suggested disallowance for travel time:  None.*

25.    **Billing for Firm Retention and Compensation Matters**.  FTI billed 271.5 hours on Project Code 23, firm retention, and 464.9 hours on Project Code 24, preparation of fee application between June 1 and September 30, 2009.  During the first 40 days, time was billed at an hourly rate.  Thereafter, the time spent was reported in FTI's records, but it was subject to the Monthly Fixed Fee.  Combined, the firm retention and fee application time entries aggregate nearly nine percent of the total hours for which FTI provided services.  While the majority of these hours are outside of the initial 40 day period, the fact remains that a significant amount of time has been spent on the retention and timekeeping process.  A monthly fixed fee, for any professional, does not immunize the professional from review.

26.    The line between compensable fee application and retention application activities and those that should be considered overhead is not clearly demarcated in the cases; however, professionals should make every effort to demonstrate in their fee applications that the tasks

associated with their preparation are directly related to compliance with the Bankruptcy Code and not merely with every professional's ethical obligation to disclose the basis of fees charged. Billing for firm retention and compensation is reasonably five percent of total billings in the absence of extraordinary circumstances.

*In response to the draft Report and Statement of Limited Objection, FTI maintains that any time records during the Monthly Fixed Fee period cannot provide a basis for disallowance. FTI asserts that a flat rate may inure to FTI's benefit or may result in a very low hourly rate for FTI's services – such is the nature of a flat rate estimate. The Retention Order authorizes the Fee Examiner to evaluate the Monthly Fixed Fee for reasonableness, pursuant to 11 U.S.C. § 330.*

*Suggested disallowance:  $188,831.46 (321 hours at blended rate of $588.26).*

27.     **Clerical and Administrative Charges**.  FTI professionals billed more than $96,000 in charges for tasks that may have been clerical or administrative in nature in connection with retention and billing alone.  This number is based upon hourly rates of individuals, but covers both the period of hourly retention and Monthly Fixed Fees.  These entries were evaluated within the firm retention and compensation categories, and no further disallowance is suggested.

*Suggested disallowance for non-billable clerical and administrative tasks:  None.*

28.     **Team Conferencing**.  Conference calls and meetings billed by FTI employees are described as "Team Meeting," "Participate in Discussion," "Team Update," "Coordination Call," "Meeting to Discuss," or "Call and Discussion."  There appears to be a lack of consistency among the employees concerning the identification of the call, the parties to the call, and the subject matter.  This practice impedes review.

*Teams should identify calls and meetings with uniformity (i.e., all participants identify the call or meeting in the same manner).*

*Suggested disallowance for team conferencing:  None.*

29.     **Expenses**.  The Fee Application, Exhibit F, contains a Summary of Expenses totaling $74,500.84.  The detail of these expenses initially was insufficient for the expenses to be

11

compensable. However, FTI has provided documentation in response to the request of the Fee Examiner, eliminating a substantial number of objections. The following concerns remain:

    A.    Ground transportation expenses totaling $15,395.42 have been submitted for reimbursement.

*The Fee Examiner suggests the following disallowance:*

*Ground transportation charged due to working late where time entries are either less than four hours or no time detail has been provided: $610.25*

*Transportation home on June 24, 2009 after working late on GM matters, both taxi and car service have been expensed: $105.00*

*After hours parking when working late on GM matters on June 30, 2009, charged twice: $24.50*

*Suggested disallowance: $739.75.*

    B.    FTI's Fee Application requests $4,309.51 in reimbursement for in-house meals. The Amended SDNY Guidelines permit in-house meal charges for "professionals required to work after 8:00 p.m. and for meals taken prior to 8:00 p.m. If the professional returns to the office to work at least one and one-half hours." FTI's fee application did not disclose enough detail to evaluate compliance with this guideline. Meal expenses are limited to $20.00 per individual per meal.

*The Fee Examiner suggests the following disallowance:*

*Amounts charged for meals beyond $20.00 per meal: $1,010.80*

*Amount for meals charged due to working late where time entries are either less than four hours or no time detail has been provided: $72.78*

*Amount for duplicate meal charges: $135.00*

*Suggested disallowance for meals: $1,218.58.*

12

  C. Expenses for cell phone charges totaling $17.55 have been requested in connection with the Fee Application. Charges for routine use of cellular telephones are not reimbursable under the Local Guidelines.

  *Suggested disallowance for cell phone charges: $17.55.*

  D. Expenses for lodging totaling $21,877.59 have been requested in connection with the Fee Application. Nine nights of accommodation have been requested at a rate in excess of $400.00 per night.

  *Suggested disallowance for lodging: $1,165.19.*

  E. FTI staffing for research projects appears appropriate for the circumstances and reasonable as to amount. However, FTI did charge the estate for Lexis or Westlaw research services, and the Fee Examiner has requested a copy of the contracts with legal research providers.[3]

  *Suggested disallowance for legal research: None.*

  ***Total amount of fees requested suggested for disallowance: $188,831.46.***

  ***Total expenses suggested for disallowance: $3,141.07.***

  ***Total fees and expenses recommended for disallowance: $191,972.53.***

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the basis for objections to the Fee Application. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on future interim fee applications or on final fee applications. All professionals subject

---

[3] The Fee Examiner notes that Jones Day's arrangement to charge for legal research fees through a global contract with the Debtors, rather than separately through law firm contracts, is reasonable and appropriate, and other professionals should pursue a similar approach in subsequent fee applications.

13

to Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon each professional's submission of its subsequent and final fee applications.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Fee Application.

Dated: Green Bay, Wisconsin
April 22, 2010.

GODFREY & KAHN, S.C.

By:    /s/ *Carla O. Andres*
Timothy F. Nixon (TN 2644)
Carla O. Andres (CA 3129)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: tnixon@gklaw.com
candres@gklaw.com

*Attorneys for Fee Examiner*

4885834_1