**Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: April 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.*,                   :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.*,      :    (Jointly Administered)
                                                        :
                       Debtors.          :    Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S PRELIMINARY REPORT ON THE**
**FIRST INTERIM FEE APPLICATION OF BROWNFIELD PARTNERS, LLC**

**TO:    THE HONORABLE ROBERT E. GERBER**
        **UNITED STATES BANKRUPTCY JUDGE**

       The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009, submits this *Preliminary Report* pursuant to the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") in connection with the *First Interim Application of Brownfield Partners, LLC as Environmental Consultants to the Debtors for Allowance of Compensation and Reimbursement of Expenses for the Period from June 1, 2009 through September 30, 2009* [Docket No. 4457] (the "**Fee Application**"). The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic

reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Preliminary Report*, the Fee Examiner summarizes his initial analysis of the Fee Application, which requests a total of $230,209.55, but makes no concurrent recommendations in light of his negotiations with Brownfield Partners, LLC ("**Brownfield**"). Instead, Brownfield has agreed the Fee Application will remain subject to review and recommendations by the Fee Examiner after Brownfield provides its supplemental reponse. The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including establishing that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred. A fee application must additionally comply with the format and content requirements set forth in applicable guidelines and bankruptcy rules.

In general, the Fee Application appears substantively sound. Nonetheless, after reviewing the Fee Application, counsel for the Fee Examiner raised preliminary observations with Brownfield by letter dated March 2, 2010. On March 15, 2010, and in response to counsel's letter, Brownfield voluntarily agreed to reduce its expense request by $1,481.35. On April 15, 2010, the Fee Examiner sent Brownfield a draft of the *Fee Examiner's Report and Statement to Limited Objection to the First Interim Fee Application of Brownfield Partners, LLC* ("**Draft Report**") containing a limited objection to Brownfield's fees, offering a second opportunity for discussion. On April 20, 2010, Brownfield and counsel for the Fee Examiner had additional discussions about the issues raised, and Brownfield noted that it needed additional time to compile supporting materials before the scheduled April 29, 2010 hearing on the Fee

2

Application. As such, Brownfield and the Fee Examiner agreed to a *Stipulation and Order for Adjournment of April 29, 2010 Hearing on First Interim Fee Application of Brownfield Partners, LLC* [Docket No. 5559] (the "**Stipulated Adjournment**").

## BACKGROUND

1.  Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.  On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.  On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.  On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. ("**Godfrey & Kahn**") on January 19, 2010 [Docket No. 4833].

5.  On July 21, 2009 Debtors' counsel filed its *Application of the Debtors for Entry of Order Pursuant to 11 U.S.C. §§327(a) and 328(a) and Fed. R. Bankr. P. 2014 Authorizing the*

3

*Retention and Employment of Brownfield Partners, LLC as Environmental Consultants to the Debtors Nunc Pro Tunc to the Commencement Date* [Docket No. 3280] (the "**Retention Application**"). There were no objections to the Retention Application, and Brownfield was appointed by this Court's *Order Pursuant to 11 U.S.C. §§327(a) and 330 and Fed. R. Bankr. P. 2014 Authorizing the Retention and Employment of Brownfield Partners, LLC as Environmental Consultants to the Debtors Nunc Pro Tunc to the Commencement Date* dated August 3, 2009 [Docket No. 3638] (the "**Retention Order**").

6. Subsequently, on September 2, 2009, Debtors filed the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement with Brownfield Partners, LLC* [Docket No. 3938] (the "**Motion to Amend**"). The Motion to Amend sought to increase the fee cap approved in the Retention Order from $100,000.00 to $200,000.00.

7. The Motion to Amend was granted in this Court's *Order Pursuant to 11 U.S.C. §§327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement with Brownfield Partners, LLC* dated September 15, 2009 [Docket No. 4052] (the "**Authorization to Amend**").

8. On November 16, 2009, the Fee Application was filed, seeking fees in the amount of $213,914.75 and expenses in the amount of $16,294.80, for total requested compensation in the amount of $230,209.55. As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Brownfield had previously been paid $126,497.00[1] in fees and $11,698.10 in expenses, subject to Court review and approval,

---

[1] This amount is based on the Debtors' records, although the Fee Application reflects a payment of $126,426.39 in fees prior to the date of the Fee Application.

4

leaving a combined request of unpaid fees and expenses in the amount of $92,085.06, as of the date of the Fee Application. Fee Application, ¶ 9. Subsequent to the date of the Fee Application, Brownfield has been paid an additional $43,534.80 in fees and $4,596.70 in expenses, subject to Court review and approval, leaving an outstanding request for $43,953.56.

9. The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010* [Docket No. 4910]. Without objection, the *Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010, authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense requests of Jenner and Block, LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and The Claro Group, LLC.

10. On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431]. On April 19, 2010 the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending first interim fee applications.

11. The Fee Examiner has evaluated the Fee Application, the Retention Application, the Retention Order, the Motion to Amend, the Authorization to Amend, and the *Supplemental Declaration and Disclosure Statement of Stewart L. Miner in Support of the Debtor's*

5

*Application Pursuant to 11 U.S.C. §§327(a) and 330 and Fed. R. Bankr. P. 2014 for Entry of an Order Authorizing the Retention and Employment of Brownfield Partners, LLC as Environmental Consultants to the Debtors Nunc Pro Tunc to the Commencement Date* [Docket No. 3622] (the "**Supplemental Affidavit**").

12. By correspondence dated March 2, 2010, counsel to the Fee Examiner requested supplemental information from Brownfield as part of its review of specific matters in the Fee Application. The supplemental information requested included:

    A. An executed copy of the Engagement Letter and exhibits;

    B. The Debtors' written authorization for Brownfield to exceed the $200,000.00 fee cap;

    C. Copies of the Creditors' Committee's and U.S. Trustee's notice of increased fee cap;

    D. An itemization of expenses; and,

    E. Authority for and documentation of the sub retention of D. McMurtry & Associates to provide environmental consulting services.

The information that the applicant provided in response to this inquiry on March 15, 2010 was also considered by the Fee Examiner.

13. On March 5, 2010, in apparent response to the Fee Examiner's letters, Debtors filed the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement With Brownfield Partners, LLC* [Docket No. 5207] (the "**Second Motion to Amend**"). This motion seeks approval for an increase in the $200,000 fee cap to $1,100,000, as well as a 20 percent increase in hourly rates for employees of Brownfield.

6

14. On March 19, 2010, the Court entered the *Order Pursuant to 11 U.S.C. §§ 327(a) and 330 Authorizing the Debtors to Amend the Terms of Their Engagement With Brownfield Partners, LLC* [Docket No. 5313], approving the fee cap increase and authorizing a status conference for (but not approving) the requested 20 percent rate increase.

15. On April 15, 2010, the Fee Examiner sent Brownfield the Draft Report containing a limited objection to Brownfield's fees, offering a second opportunity for discussion. On April 20, 2010, Brownfield and counsel for the Fee Examiner had additional discussions about the issues raised, and Brownfield noted that it needed additional time to compile supporting materials before the scheduled April 29, 2010 hearing on the Fee Application. As such, Brownfield and the Fee Examiner have agreed to the Stipulated Adjournment.

**APPLICABLE STANDARDS**

16. The Fee Application has been evaluated for compliance with the *Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-104 (Bankr. S.D.N.Y. June 20, 1991), and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-151 (Bankr. S.D.N.Y. Apr. 19, 1995) (collectively, the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order and Quarterly Reporting Order—including the extent, if any, that variation has been expressly permitted by order.

**COMMENTS**

17. **Engagement Letter**. The "**Engagement Letter**," as defined in the Retention Agreement, is a General Motors Corporation Environmental Consultant Retention Agreement. The Engagement Letter, as amended, provides for a scope of work to be completed at a cost not to exceed $200,000.00 in labor. Hourly rates of compensation are addressed in the Retention Application and the Affidavit in Support, but they are not in the Engagement Letter.

   A.  The Engagement Letter, attached to the Retention Application as Exhibit B, is unexecuted. The Confidentiality Agreement, also an exhibit to the Engagement Agreement, is not executed.

   *At the request of the Fee Examiner, a fully executed Engagement Letter and exhibits have now been provided by Brownfield.*

   B.  The Fee Application expressly refers to the Authorization to Amend, confirming the Engagement Letter's capping of the Brownfield fees at $200,000.00 unless otherwise approved in advance and in writing by a representative of the Debtors. It does not appear that this has occurred, and the Fee Application (dated November 16, 2009) simply states "Due to the massive nature of this project, Brownfield Partners has, pursuant to the Amended Order, alerted counsel for the Debtors that an additional amendment to increase the fee cap will be necessary and to which counsel to the Debtors have not objected." Fee Application, at 6-7, ¶ 19.

   *As a result of the Fee Examiner's request for additional information, the Debtors filed the Second Motion to Amend requesting a second amendment to the fee cap in the amount of $1,100,000.00 (along with increased hourly rates), retroactive to January 1, 2010.*

18. **Project Staffing**. Services provided by Brownfield have been provided by three job titles at three billing rates: Principal - $275.00; Partner - $250.00; and Planner - $165.00. Approximately 42.5 percent of the hours billed on this project were at the highest billing rate. In

8

addition, an additional 49.9 percent of the hours billed were at the Partner rate. As a result, 7.6 percent of the hours billed were billed at the Planner rate.[2] In the absence of extenuating circumstances brought to the attention of the Fee Examiner, the preferred practice is for tasks to be managed by senior personnel with work principally performed at the lowest appropriate billing rate.

*A 10 percent reduction in hours at each of the Principal and Partner rates ($20,438.50), and a reclassification of those hours to the Planner rate ($12,896.40) is appropriate.*

*Brownfield has not yet provided a substantive response.*

19.     **Landers' Error**.  The Fee Application seeks $1,375.00 not previously requested in the Monthly Fee Statements due to a stated "inadvertent error in the billing rate for Morgan Landers." Fee Application, at 4 n.1. The Fee Application states that Mr. Landers' standard hourly rate is $160 per hour and that he had been erroneously billed at $40 per hour in previous Monthly Fee Statements. However, Mr. Landers has in fact been billed at the hourly rate of $165.00 per hour in the Fee Application, the rate set forth in the Retention Application for an associate.

*Suggested disallowance for Landers' error: None, although a $5.00 an hour reduction would not be inappropriate.*

20.     **Time Increment Analysis**.  The Retention Order and the applicable guidelines require professionals to bill in increments of one-tenth of an hour. However, the Fee Examiner has determined that approximately 30-35 percent of the time increments billed in this matter were half hour increments.

*Suggested disallowance for time increment analysis: None; however, the significant percentage of half hour increments suggests that billing is not being contemporaneously maintained in the required one-tenth of an hour increments.*

---

[2] The Debtor's Second Motion to Amend provides that the original standard hourly rates for Brownfield range from $55.00 to $275.00, identifying senior associates ($220.00), staff associates ($145.00) and administrative/clerical ($55.00) as billing rates for persons that did not work on the project in the time frame covered by the Fee Application.

9

21. **Fee Discrepancies**. The Auditor has identified mathematical errors in calculating individual tasks and reporting as a total hourly billing.

*The Fee Application has resulted in a net underbilling to the estate of $137.50, although Brownfield may have substantive comments on these time entries.*

22. **Double Billing**. The Auditor has identified $825.00 in timekeeper entries that suggest a potential erroneous duplication of billing entries.

*Brownfield has not yet provided a substantive response.*

23. **Block Billing**. Block billing is prohibited by the UST Guidelines. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Auditor identified some entries by Brownfield professionals that do not comply with this guideline totaling $10,165.00.

*Brownfield has not yet provided a substantive response.*

24. **Travel Time**. Non-working travel time will be compensated at 50 percent. *See In re Fibermark, Inc.*, 349 B.R. 385, 406 (Bankr. D. Vt. 2006) (travel time should be billed at one half the professional's customary rate); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997) ("courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates") (citations omitted). The First and Second Advisories have requested that travel time be itemized separately. It appears that travel time has been reduced accordingly in the Fee Application.

25. **Clerical and Administrative Charges**. Numerous billing entries describe clerical or administrative non-compensable services. These entries total $1,842.50.

*Brownfield has not yet provided a substantive response.*

10

26.     **Multiple Participants in Conferences**.  The Fee Examiner has identified conferences and conference calls attended by more than one person.[3]  On multiple occasions, parties billed differing time increments for what appears to be the same telephone conference.  In these instances, the Fee Examiner suggests allowance of fees at the lowest time allocated to the specific task.  In addition, in the absence of an explanation of the necessity for multiple attendees at conferences, those conferences identified should be allowed for one person at the highest billing rate and a second person on 50 percent of the occasions at the mean billing rate charged to the task.

There obviously are occasions, perhaps often, when more than one person needs to participate – particularly at the outset of retention or a particular project, yet those occasions require more explanation.

*Brownfield has not yet provided a substantive response.*

27.     **Vague Tasks**.  The Fee Examiner has identified four specific billing entries that contain an insufficient description of a task and are non-compensable.

*Brownfield has not yet provided a substantive response.*

28.     **Team Conferencing**.  Conference calls billed by Brownfield employees lack consistency concerning the identification of the call, the subject matter, and the persons participating in the call.  Most of the calls, as identified, have only one participant.  This practice impedes review.

*Teams should identify calls with uniformity (i.e., all participants identify the call in the same manner).*

---

[3] The Fee Examiner recognizes the extraordinary circumstances relating to the retention of Brownfield and other environmental professionals.  Conferences and meetings in the initial phases of retention are not included in the conferences evaluated.

11

29.     **Expenses**.  The Fee Application, Exhibit C, contains a Summary of Expenses. The detail of these expenses is insufficient for the expenses to be compensable.

    A.     Travel expenses totaling $11,595.05 were requested in a summary form and could not be properly evaluated for compensation.

*At the request of the Fee Examiner, Brownfield has provided an itemization of these expenses by letter dated March 15, 2010.  Analysis of the documentation provided has reduced the suggested disallowance to the following:*

- *Fitness club charge:  $18.00*

- *Meal in excess of limitation:  $26.46*

*Brownfield has not yet provided a substantive response.*

    B.     Reimbursement of expenses has been requested for D. McMurtry & Associates ("**McMurtry**").  Brownfield apparently entered into an agreement with McMurtry to provide support to Brownfield in performing services.  This sub-retention is outside the scope of the Retention Order, and no determination has been made of the necessity of these services.  McMurtry does not appear to have disclosed conflicts or provided affidavits of disinterest, either publicly or otherwise.  It appears that a principal of Brownfield, David McMurtry, may be a principal of McMurtry.  David McMurtry's time, it appears, has been billed as an employee.

*In response to the Fee Examiner's inquiry, Brownfield correctly states that the Supplemental Affidavit indicated Brownfield's intention to subcontract with McMurtry. There has been no disclosure of the McMurtry retention, however, other than the requested McMurtry expenses.  The expenses have been documented in the amount of $2,451.42.*

*Brownfield will provide supplemental information.*

    C.     Multiple expense requests are identified as "administrative markup" or "10 percent administrative fee for out-of-pocket costs."  These administrative fees and mark ups total $1,481.35 and are not reimbursable expenses under the UST Guidelines.

12

    *Brownfield has withdrawn its request for these administrative fees.*

    D. A final expense to the estate is identified as "GM-RealQuest Professional Database - June 2009 thru July 14, 2009." The expense is documented, but does not disclose the service provided and, therefore, cannot be properly evaluated.

    *Brownfield has not yet provided a substantive response.*

    E. The Fee Application provides that all expenses from the first interim fee period in the Fee Application might not be included in the Fee Application due to delays caused by accounting or processing procedures, and Brownfield reserves the right to make further application for expenses not included in the Fee Application. Fee Application, at 8 n.2. Brownfield has been invited to supplement its filing and has not requested further expense reimbursement.

## CONCLUSION

This report is intended to advise the Court, the professionals, and the U.S. Trustee of the Fee Examiner's preliminary observations, subject to the supplemental detail provided by Brownfield. It is not intended to be an exhaustive or exclusive list of possible objections and does not preclude or limit the Fee Examiner's scope of review or objection on this or any subsequent interim fee applications or final fee applications. All professionals subject to Fee Examiner review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

As the fee review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The conclusions and recommendations in this report are, therefore, subject to further refinement upon receipt and review of the supporting detail from Brownfield.

WHEREFORE, the Fee Examiner respectfully submits this *Preliminary Report* on the Fee Application.

Dated: Green Bay, Wisconsin
April 22, 2010.

GODFREY & KAHN, S.C.

By: /s/ *Carla O. Andres*
Carla O. Andres (CA 3129)
Timothy F. Nixon (TN 2644)

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for Fee Examiner*

4884959_1

14