Hearing Date and Time:  April 29, 2010 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time:  April 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                                                          :
In re                                                     :    Chapter 11
                                                          :
MOTORS LIQUIDATION COMPANY, *et al.,*  :    Case No. 09-50026 (REG)
        f/k/a General Motors Corp., *et al.,*             :    (Jointly Administered)
                                                          :
                        Debtors.                          :    Honorable Robert E. Gerber
                                                          :
--------------------------------------------------------- x

**FEE EXAMINER'S STATEMENT CONCERNING**
**FEE APPLICATION OF AP SERVICES**

TO:    **THE HONORABLE ROBERT E. GERBER**
       **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

appointed on December 23, 2009, submits this *Statement* pursuant to the *Stipulation and Order*

*With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner**

**Order**") in connection with the *Report by AP Services, LLC of Compensation Earned and*

*Expenses Incurred for the Period From June 1, 2009 through August 31, 2009* [Docket

No. 4280] (the "**First AP Compensation Report**"), the *Report by AP Services, LLC of*

*Compensation Earned and Expenses Incurred for the Period From September 1, 2009 through*

*November 30, 2009* [Docket No. 4828] (the "**Second AP Compensation Report**"), and the

*Report by AP Services, LLC of Compensation Earned and Expenses Incurred for the Period from*

*December 1, 2009 through February 28, 2010* [Docket No. 5505] (the "**Third AP Compensation Report**") (collectively, the "**AP Compensation Reports**").  The Court appointed the Fee Examiner to monitor the fees and expenses incurred by professionals in these chapter 11 cases and to provide periodic reports to the Court, separately or in conjunction with applications submitted for approval by the professionals, with or without a filed objection.

With this *Statement*, the Fee Examiner tentatively concludes that the fees requested by AP Services, LLC ("**APS**") and reported in the AP Compensation Reports are appropriately subject to review by the Fee Examiner—not just on an interim or quarterly basis but in connection as well with APS' final fee application.  APS maintains that it is not subject to the Fee Examiner's review.  Recognizing, though not adopting, that position, the Fee Examiner will provide a more complete statement of position before the next application hearing.  The Fee Examiner respectfully represents:

## SUMMARY STATEMENT

A fee applicant bears the burden of proof on all of the elements of a fee application, including establishing that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable and actually incurred.  A fee application must additionally comply with the format and content requirements set forth in applicable guidelines and bankruptcy rules.

The Fee Examiner has neither audited nor filed an objection to the AP Compensation Reports but reserves the right to do so in connection with subsequent compensation reports and the final fee application.

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.      On June 3, 2009, Diana G. Adams, the United States Trustee for the Southern District of New York, appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner in the above captioned chapter 11 cases (the "**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment.

4.      The Fee Examiner Order provides that the Fee Examiner "shall review and assess all fee applications filed by Retained Professionals [as defined in the Compensation Order] in the chapter 11 cases for professional services performed subsequent to the Commencement Date, consistent with sections 330 and 331 of the Bankruptcy Code." Fee Examiner Order, ¶ 3.

5.      On January 5, 2010, the Fee Examiner submitted an *Application of the Fee Examiner for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn, S.C. on January 19, 2010 [Docket No. 4833].

6.      The Fee Examiner has filed the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010.* [Docket No. 4910]. Without objection, the *Order Pursuant to*

*Section 327(a) of the Bankruptcy Code Authorizing the Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner Nunc Pro Tunc as of January 22, 2010* was entered on February 17, 2010, authorizing Stuart Maue (the "**Auditor**") to work with the Fee Examiner and counsel in reviewing the first interim fee and expense requests of Jenner & Block LLP; Brownfield Partners, LLC; Kramer Levin Naftalis and Frankel, LLP; LFR, Inc.; and The Claro Group, LLC.

7.      On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5431].  On April 19, 2010 the Debtors filed the *Response of Debtors to Fee Examiner's Application to Authorize Extended Retention of the Stuart Maue Firm As Consultant to the Fee Examiner as of March 8, 2010* [Docket No. 5522]. The Application and Response will be scheduled for hearing on April 29, 2009, along with the pending first interim fee applications.  Subject to a resolution, consensual or not, of APS' position on the Fee Examiner's jurisdiction, he will subject this Fee Application to a full audit— if the extended retention of Stuart Maue is ultimately allowed—and may recommend disallowances of fees and expenses requested in the AP Compensation Reports.

8.      On June 12, 2009, the Debtors filed the *Motion of the Debtors Pursuant to 11 U.S.C. § 363 for an Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date* [Docket No. 952] (the "**Retention Application**").

9.      In response, the United States Trustee filed *The United States Trustee's Objection to the Debtors' Motion Pursuant to 11 U.S.C. § 363 for an Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as*

*Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date* [Docket No. 2188] and an

*Errata to Objection of the United States Trustee's Objection to the Debtors' Motion Pursuant to*

*11 U.S.C. § 363 for an Order Authorizing the Debtors to Employ and Retain AP Services, LLC*

*as Crisis Managers and to Designate Albert A. Koch as Chief Restructuring Officer, Nunc Pro*

*Tunc to the Petition Date* [Docket No. 2438] (collectively, the "**UST Objection**").

10.     The Debtors also filed the *Supplemental Declaration of Albert A. Koch of AP*

*Services, LLC as Crisis Managers and Chief Restructuring Officer to the Debtors and Debtors in*

*Possession* [Docket No. 2414].

11.     After a hearing on the Retention Application on June 25, 2009, an *Order*

*Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to*

*Designate Albert A. Koch as Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date*

[Docket No. 2534] (the "**Initial Retention Order**") was entered.  It provided for APS'

compensation on the following basis:

   A.     Hourly fees;

   B.     A Success Fee of $13 million to be paid upon closing of the [then]

contemplated 363 Sale; and,

   C.     A Discretionary Fee, at Debtors' sole discretion, based on extraordinarily

positive results and a demonstration that APS added significant value in achieving the

consummation of the transaction.

12.     On July 2, 2009, the Court entered an *Amended Order Authorizing the Debtors to*

*Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as*

*Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date* [Docket No. 2949] (the

"**Amended Retention Order**").  The Amended Retention Order provides that, in addition to

hourly compensation, one-half of a $13 million Success Fee[1] would be payable to APS at the

closing of the 363 Sale, subject to APS filing with the Court a supplemental affidavit

summarizing the services rendered by APS with respect to the Transaction. The balance of the

Success Fee would be payable on the first anniversary of the closing of the 363 Sale and any

Discretionary Fee (up to $10 million) would be addressed by a separate fee application.

13.    The Amended Retention Order also provides that "parties-in-interest in these

chapter 11 cases shall have the right to object to fees paid and expenses reimbursed to APS

subject to review under the reasonableness standards of sections 330 and 331 of the Bankruptcy

Code within twenty (20) days after APS files [quarterly compensation] reports."

14.    The Amended Retention Order provides as well that "the balance of the Success

Fee … and any Discretionary Fee shall be subject to review under the reasonableness standards

of §§ 330 and 331 of the Bankruptcy Code, including the filing of appropriate fee applications

(which shall include time records)." Amended Retention Order.

15.    On or about August 5, 2009, the Debtors filed a *Motion of Debtors for Entry of*

*Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their*

*Engagement Letter with AP Services, LLC* (the "**Motion for First Amendment**") proposing an

effective date of July 10, 2009. There were no objections filed to the Motion for First

Amendment. The proposed terms of the First Amendment to the Engagement Letter, which were

approved by the Court,[2] retroactive to July 10, made the following four changes to the approved

engagement letter:[3]

---

[1] All defined terms in the Amended Retention Order have the meanings assigned to them in the engagement letter. *See* Retention Application, Exhibit C.

[2] *Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC* dated August 18, 2009 [Docket No. 3831].

[3] All defined terms have the meanings assigned to them in the engagement letter. *See* Motion for First Amendment, Exhibit A (the "Amended Engagement Letter").

A.  <u>Hourly Fee Reductions</u>:  Hourly fees were reduced by 15 percent from the rates in the Retention Application, subject to further reduction of hourly billings exceeding $60 million.

B.  <u>Discretionary Fees</u>:  Specified amounts are tied to specific milestones:

(i)  <u>Total Unsecured Creditor Claims</u>.  In the event that the total unsecured claims pool (including bond claims) is less than $35 billion, APS would be entitled to a Discretionary Fee of $5 million.  In the event that the total unsecured claims pool (including bond claims) is equal to or greater than $35 billion but less than $42 billion, APS would be entitled to a Discretionary Fee of $2.5 million.  In the event that the total unsecured claims pool exceeds $42 billion, APS would not be entitled to any Discretionary Fee; and

(ii)  <u>Confirmation of a Plan</u>.  In the event that the Debtors confirm a plan and the plan is effective on or before May 28, 2010, APS would be entitled to a Discretionary Fee of $2.5 million; and

(iii)  <u>Distribution of Stock and Warrants</u>.  In the event that 70 percent or more of each of the common stock and warrants of the Purchaser, received by the Debtors in connection with the Sale, is distributed to unsecured creditors within sixty days of the effective date of a plan, APS would be entitled to a Discretionary Fee of $2.5 million.

C.  <u>Incentive Payments</u>:  Incentive Payments are incorporated as well into the compensation structure:

(i)  <u>Reduction of Priority Claims</u>.  In the event that allowed priority claims, estimated at $100 million, are reduced by at least $25 million, APS would

receive five percent of any reduction in excess of $25 million if and when any

excess monies are returned to the Lenders under the DIP Agreement, and

(ii)    <u>Reduction of All Other Net Costs of the Wind-Down</u>.  APS would

receive 15 percent of each dollar returned to the Lenders in respect of the DIP

Facility.[4]  For example, if $50 million is allocated for return to the Lenders, then

$42.5 million will be remitted to the Lenders and $7.5 million will be paid to

APS.

D.    <u>Termination Without Cause</u>.  Upon a termination without cause, APS

would be entitled to (i) immediate payment of the second half of the Success Fee; (ii) any

Incentive Payments or Discretionary Fees earned pursuant to the First Amendment, but in

no event less than $2.5 million if termination occurs within one year of the effective date

of the First Amendment and $5.0 million if it occurs after one year; (iii) all hourly fee

reductions, pursuant to subparagraph (A), above; and (iv) all other accrued but unpaid

fees and expenses.

Amended Engagement Letter.

16.    On August 7, 2009, the Court entered its *Order Pursuant to 11 U.S.C. §§ 105(a)*

*and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of*

*Professionals* [Docket No. 3711] (the "**Compensation Order**").

17.    On October 22, 2009, the First AP Compensation Report was filed reporting total

compensation and fees in the amount of $23,056,025.08, accompanied by a *Notice of Filing*

*Quarterly Report of AP Services, LLC for Compensation Earned and Expenses Incurred for the*

*Period From June 1, 2009 through August 31, 2009* stating that in the absence of filed objections

---

[4]  This provision is subject to certain exclusions and approvals in the Amended Engagement Letter.

within twenty days, APS' fees and expenses would be deemed reasonable under 11 U.S.C.

§§ 330 and 331.

18.     On January 16, 2010, the Second AP Compensation Report was filed reporting

total compensation and fees in the amount of $12,689,105.51.  No notice was filed in connection

with the Second AP Compensation Report.  On April 14, 2010, AP filed its Third AP

Compensation Report reporting total compensation and fees in the amount of $10,020,980.74.

No notice was filed in connection with the Third AP Compensation Report.[5]

19.     The AP Compensation Reports collectively request a total of $43,095,327.18 in

fees and $2,670,784.15 in expenses.  AP has received payment in the amount of $34,717,492.69

in the absence of any objections (in addition to a $6,500,000.00 Success Fee).

20.     The Compensation Reports disclose the name, total time spent, title and hourly

rate of each timekeeper as well as a summary of services provided but do not include specific

time entries detailing the tasks of each timekeeper.  The Staffing Reports filed monthly only

include a list of timekeepers, titles and hourly rates for the identified timekeepers.

21.     The very nature of AP's services—in effect, providing the Debtors' management

and staff—make them difficult to evaluate on a monthly or quarterly basis.

22.     Further, the Success Fees and Discretionary Fees relate to the closing of the sale

of the assets and the confirmation of a plan of reorganization.  Evercore Group, L.L.C. and FTI

Consulting, Inc. have requested, or will request, similar fees relating to these events.  Neither the

success of these proceedings, nor the compensation tied to it, can be evaluated fully prior to the

confirmation of a plan of reorganization, and final fee applications for those parties requesting

those payments are properly deferred.

---

[5] APS maintains that no notice is required.

9

## CONCLUSION

As the Fee Examiner's review and analysis continues, the Fee Examiner continues to develop a heightened sense of the complex landscape of this proceeding. The Fee Examiner has not yet filed a report on or an objection to the AP Compensation Reports, but he reserves the right to do so in connection with subsequent quarterly compensation reports or the final fee application. APS, for its part, reserves the right to continue to maintain that it is not subject to the Fee Examiner's review.

WHEREFORE, the Fee Examiner respectfully submits this *Statement*.

Dated: Green Bay, Wisconsin
      April 22, 2010.

GODFREY & KAHN, S.C.

By:      */s/ Carla O. Andres*
     Carla O. Andres (CA 3129)
     Timothy F. Nixon (TN 2644)

     GODFREY & KAHN, S.C.
     780 North Water Street
     Milwaukee, Wisconsin 53202
     Telephone: (414) 273-3500
     Facsimile: (414) 273-5198
     E-mail: tnixon@gklaw.com
             candres@gklaw.com

     *Attorneys for Fee Examiner*

4885736_1