**HEARING: April 29, 2010 (9:30 a.m.)**
**OBJECTIONS: April 22, 2010 (12:00 p.m.)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
In re:                                                   :
                                                         : Chapter 11
MOTORS LIQUIDATION COMPANY, *et al.*,                    :
*f/k/a* General Motors Corp., *et al.*,                  : Case No. 09-50026 (REG)
                                                         :
                                    Debtors.             : (Jointly Administered)
                                                         :
-------------------------------------------------------- x


# RESPONSE OF THE UNITED STATES TRUSTEE

# REGARDING FIRST INTERIM APPLICATIONS

# FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

**TABLE OF CONTENTS**

I.      Summary Statement                                                        1

II.     Jurisdiction, Venue and Statutory Predicates                             3

III.    Factual Background                                                       4

IV.     Legal Standards                                                          9

        A.      Reasonableness                                                   9

        B.      Interim Compensation                                           11

        C.      Actual and Necessary Expenses                                  13

V.      Statement                                                              14

        A.      General Statement Applicable to All Professionals             14

        B.      Statement Regarding the Individual Applications               16

VI.     Conclusion                                                             18

# TABLE OF AUTHORITIES

## Reported Decisions

In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002) — 12

In re American Preferred Prescription, Inc., 218 B.R. 680 (Bankr. E.D.N.Y. 1998) — 13

In re Bank of New England Corp., 134 B.R. 450 (Bankr. D. Mass. 1991),
    *affirmed*, 142 B.R. 584 (D. Mass. 1992) — 16

In re Barron, 73 B.R. 812 (Bankr. S.D. Cal. 1987) — 11-12

In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007) — 10

In re Bennett Funding Group, 213 B.R. 234 (Bankr. N.D.N.Y. 1997) — 10-11, 13

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988) — 11

In re Brouse, 370 B.R. 563 (Bankr. S.D.N.Y. 2007) — 4

In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994) — 11

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995) — 11-12, 16

Matter of Codesco, Inc., 15 B.R. 354 (Bankr. S.D.N.Y. 1981) — 12

In re Engel, 124 F.3d 567 (3d Cir. 1997) — 9

In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982) — 12

In re General Coffee Corp., 39 B.R. 7 (Bankr. S.D. Fla. 1984) — 13

In re Hillsborough Holdings Corp., 125 B.R. 837 (Bankr. M.D. Fla. 1991) — 13

Howard & Zukin Capital v. High River Ltd. P'ship,
    2007 WL 1217268 (S.D.N.Y., Apr. 24, 2007) — 10

Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.),
    210 B.R. 19 (Bankr. 2d Cir. 1997) — 10

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997) — 10-11

In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005) — 13

In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993)                           9

In re National Buy-Rite, Inc., 10 B.R. 380, 381 (Bankr. N.D. Ga. 1981)               13

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008)                  10

In re Spanjer Bros., Inc., 191 B.R. 738 (Bankr. N.D. Ill. 1996)                      11

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987)                         13

In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995)                               11

In re UNR Indus., Inc., 72 B.R. 796 (Bankr. N.D. Ill. 1987)                          13

Zolfo, Cooper & Co. v.Sunbeam-Oster Co., Inc., 50 F.3d 253 (3d Cir. 1995)            11

## **Statutes**

11 U.S.C. § 101 et seq., the "Bankruptcy Code"
    11 U.S.C. § 328                                                      9, 11
    11 U.S.C. § 330                                                   3, 9, 11
    11 U.S.C. § 330(a)(1)                                                      9
    11 U.S.C. § 330(a)(1)(A)                                                   9
    11 U.S.C. § 330(a)(1)(B)                                                9, 13
    11 U.S.C. § 330(a)(3)                                                   9, 10
    11 U.S.C. § 331                                                      3, 11-12
    11 U.S.C. § 1107(a)                                                        4
    11 U.S.C. § 1108                                                           4
28 U.S.C. § 157                                                                      3
28 U.S.C. § 157(b)                                                                   3
28 U.S.C. § 1334                                                                     3
28 U.S.C. § 1408                                                                     3

## **Federal Rules, Local Rules, Local Orders & Other Guidelines**

Federal Rule of Bankruptcy Procedure 2016                                         3, 10

Local Bankruptcy Rules for the Southern District of New York, Rule 2016-1            4

Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals in    4
Southern District of New York Bankruptcy Cases

United States Trustee Guidelines for Reviewing Applications for Compensation and          4
Reimbursement of Expenses Filed Under 11 U.S.C. § 330

**RESPONSE OF THE UNITED STATES TRUSTEE
REGARDING FIRST INTERIM APPLICATIONS
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

TO:   **THE HONORABLE ROBERT E. GERBER,
        UNITED STATES BANKRUPTCY JUDGE:**

Diana G. Adams, the United States Trustee for Region 2 (the **"United States Trustee"**),

has reviewed the first interim and certain final applications (the **"Applications"**) of the retained

professionals (the **"Retained Professionals"**), which seek awards of compensation and

reimbursement of out-of-pocket expenses for the period from June 1, 2009 through September

30, 2009 (the **"First Fee Period"**).

## I.  SUMMARY STATEMENT

As set forth in the table below, for services performed during the First Fee Period, the

Retained Professionals seek interim allowances of fees totaling $53,544,377.66, and

reimbursement of out-of-pocket expenses totaling $1,172,002.10, for total compensation of

$54,716,379.76.[1]

---

[1] In addition to the Retained Professionals, the Debtors' restructuring advisor, AP Services, LLC incurred fees of $26,273,091.15, plus expenses of $1,508,563.69 (for a total of $27,781,654.84) during the First Fee Period.

-1-

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Weil Gotshal & Manges, LLP Debtors' counsel | June 1, 2009 - Sept. 30, 2009 | $17,910,963.25 | $595,206.67 | 36,769.70 |
| Jenner & Block LLP, Debtors' special counsel | June 1, 2009 - Sept. 30, 2009 | $4,950,322.95 | $270,439.26 | 12,313.30 |
| Baker & McKenzie, Debtors' special counsel | June 1, 2009 - Sept. 30, 2009 | $1,262,789.76 | $21,619.20 | 2,628.60 |
| Jones Day, Debtors' special counsel | June 1, 2009 - Sept. 30, 2009 | $455,396.65 | $4,359.53 | 918.55 |
| Honigman Miller Schwartz & Cohn, LLP, Debtors' special counsel | June 1, 2009 - Sept. 30, 2009 | $2,297,160.00 | $16,799.46 | 7,678.70 |
| Lowe, Fell & Skogg, LLC, Debtors' special counsel | June 1, 2009 - July 10, 2009 | $261,840.25 | $19,212.25 | 1,063.00 |
| Evercore Group LLC, Debtors' investment banker & financial advisor | June 1, 2009 - July 10, 2009 | $16,029,032.00 | $2,920.62 | 1,247.50 |
| Brownfield Partners, Debtors' environmental consultant | June 1, 2009 - Sept. 30, 2009 | $213,914.75 | $16,294.80 | 845.40 |

| Applicant | Period | Fees | Expenses | Hours |
|---|---|---|---|---|
| Claro Group, LLC, Debtors' environmental consultant | June 1, 2009 - Sept. 30, 2009 | $189,563.00 | $888.05 | 594.65 |
| LFR, Inc., Debtors' environmental consultant | June 1, 2009 - Sept. 30, 2009 | $633,772.80 | $43,447.98 | 3,630.30 |
| Kramer Levin Naftalis & Frankel LLP, Committee's counsel | June 1, 2009 - Sept. 30, 2009 | $4,593,910.50 | $85,047.77 | 7,678.55 |
| Butzel Long, PC, Committee's special counsel | June 10, 2009 - Sept. 30, 2009 | $237,775.50 | $21,265.87 | 530.40 |
| FTI Consulting, Inc., Committee's financial advisor | June 3, 2009 - Sept. 30, 2009 | $4,435,036.25 | $74,500.84 | 8312.80 |
| Alan Chapell, Consumer Privacy Ombudsman | June 8, 2009 - Oct. 4, 2009 | $72,900.00 | $0.00 | 121.50 |

## II.  JURISDICTION, VENUE AND STATUTORY PREDICATES

1.      The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates for the relief sought in the Applications are sections 330

and 331 of title 11, United States Code (the **"Bankruptcy Code"**).  This matter was initiated

pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**),

-3-

Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the **"Local Rules"**), Administrative Order M-389, Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the **"Local Guidelines"**), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the **"UST Guidelines,"** together with the Local Guidelines, are referred to herein collectively as the **"Guidelines"**).[2]

### III.  FACTUAL BACKGROUND

3.      On June 1, 2009 (the **"Petition Date"**), General Motors Corp. (k/n/a Motors Liquidation Company) and certain subsidiary debtors (collectively, the **"Debtors"**) filed voluntary cases under Chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate and manage their business and properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5.      On June 3, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee").  Docket No. 356.  On November 30, 2009, the United States Trustee filed the First Amended Appointment of Official Committee of Unsecured Creditors.  Docket No. 4552.

6.      On March 5, 2010, the United States Trustee appointed the Committee of Unsecured Creditors Holding Asbestos Related Claims (the **"Asbestos Committee"**).  Docket No. 5206.

---

[2] The Bankruptcy Court for this judicial district has adopted the UST Guidelines.  *See* In re Brous, 370 B.R. 563, 569 at n.8. (Bankr. S.D.N.Y. 2007); and General Order M-389, at 1.

-4-

7.      On June 1, 2009, the Debtors filed a motion seeking the entry of an order authorizing and approving the sale of substantially all of their assets to NGMCO, Inc., a U.S. Treasury-sponsored purchaser, pursuant to the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, together with all documents and agreements as well as all exhibits, schedules and addenda thereto (as amended, the **"MPA"**).  Docket No. 92.

8.      On July 5, 2009, the Court entered an Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief was entered (the **"Sale Order"**).  Docket No. 2968.

9.      On July 9, 2009, NGMCO, Inc. filed the required documentation to change its name to General Motors Company ("**GMCo.**").

10.      On July 10, 2009, pursuant to the MPA and this Court's Sale Order, GMCo. acquired substantially all of the assets of the Debtors.

11.      Since then, under the jurisdiction and supervision of this Court, the Debtors have engaged in an orderly wind-down of their remaining assets and business affairs.

12.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee entered into a stipulation for the appointment of Brady C. Williamson as fee examiner (the **"Fee Examiner"**).  Docket No. 4707.  Pursuant to the Stipulation and Order With Respect to Appointment of a Fee Examiner (the **"Fee Examiner Order,"** entered December 23 2009), the Court approved the appointment.

13.     On February 16, 2010, under the Fee Examiner Order, the Fee Examiner filed his First Status Report and Advisory, which summarizes the applicable standards and guidelines for the Fee Examiner's review of applications to approve reasonable fees and reimburse reasonable costs in the Debtors' bankruptcy cases (the **"First Advisory"**).  Docket No. 5002.

14.     On April 8, 2010, the Fee Examiner filed his Second Status Report and Advisory (the **"Second Advisory"**), which broadens the First Advisory.  Docket No. 5463.

15.     On August 7, 2009, the Court entered its Order, Pursuant to §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the **"Interim Compensation Order"**).  Docket No. 3711.

16.     The Applications generally reflect that, pursuant to the Interim Compensation Order, the Retained Professionals have received payment of 80 percent of fees accrued during the First Fee Period.

17.     By notice filed June 10, 2009, the United States Trustee appointed Alan Chapell as Consumer Privacy Ombudsman.  Docket No. 565.

18.     By Orders entered June 25, 2009, the Debtors retained (i) Weil, Gotshal & Manges, LLP (**"Weil"**) as counsel; (ii) and Honigman Miller, Schwartz, & Cohn, LLP (**"Honigman"**), as special counsel.  Docket Nos. 2546 and 2548, respectively.

19.      By Order entered June 26, 2009, the Debtors retained Jenner & Block, LLP (**"Jenner"**) as special counsel.  Docket No. 2608.

20.     By Order entered July 1, 2009, the Committee retained Kramer Levin Naftalis & Frankel LLP (**"Kramer"**) as counsel.  Docket No. 2854.

21.     By Orders entered July 13, 2009, the Committee retained Butzel Long, PC

(**"Butzel"**) as special counsel.  Docket No. 3124.

22.     By Orders dated August 3, 2009, the Debtors retained: (i) Brownfield Partners

(**"Brownfield"**) as environmental consultant; (ii) Baker McKenzie (**"Baker"**), as special

counsel; (iii) Jones Day as special counsel; (iv) LFR Inc. (**"LFR"**) as environmental consultant;

(v) Lowe, Fell & Skogg, LLC (**"Lowe"**) as environmental consultant; and (vi) The Claro Group,

LLC (**"Claro"**) as environmental consultant.  Docket No. 3638, 3634, 3633, 3630, 3635, and

3632,  respectively.

23.     By Order dated August 18, 2009, the Committee retained FTI Consulting, Inc.

("**FTI**") as financial advisor.  Docket No. 3829.

24.     By Order dated October 28, 2009 the Debtors retained Evercore Group, LLC

(**"Evercore"**) as its investment banker and financial advisor.  Docket No. 4304.

25.     In connection with the formulation, negotiation and confirmation of a

contemplated Chapter 11 plan, on April 8, 2010, the Court entered its order appointing Dean M.

Trafelet as legal representative for future asbestos personal injury claimants in these cases (the

**"Legal Representative"**).  Docket No. 5459.

26.     The Legal Representative's retention of Stutzman, Bromberg, Esserman, & Plifka,

PC (**"Stutzman"**) was approved in an order entered on April 15, 2010.  Docket No. 5506.

27.     On April 2, 2010, the Legal Representative filed an application for approval of his

retention of Analysis, Research & Planning Corporation as Asbestos Claims Valuation

Consultants.  Docket No. 5413.

28.     At a hearing held on April 8, 2010, the Court approved an order approving the Asbestos Committee's retention of Caplin and Drysdale, Chartered, as of March 5, 2010.

29.     On April 12, 2010, the Creditors Committee' filed an application for approval of its employment of Bates White, LLC as its consultant on the valuation of asbestos liabilities. Docket No. 5480.

30.     On April 12, 2010, the Court entered an order approving the Debtors' retention of Deloitte Tax LLP to provide certain tax advisory services.  Docket No. 5477.

31.      The Debtors are current with the filing of their monthly operating reports, as of February 2010.  Docket No. 5402.  The "Condensed Combined Debtors-In-Possession Statement of Net Assets" (the **"Net Asset Sheet"**), which is contained in the Debtors' monthly operating report for the period ended February 28, 2010 (the **"February Operating Report"**), indicates "Cash and Cash Equivalents" of $991,590,000.00, and accrued professional fees of $38,597,000.00 as of February 28, 2010.  *Id*., at 5.

32.     The Net Asset Sheet also indicates that total assets of the combined estates are $1.24 billion.  *Id*.  However, excluding pre-petition liabilities of approximately $32.2 billion, the total liabilities of the estates were the greater figure of approximately $1.26 billion as of February 28, 2010.  *Id*.

33.     The Debtors have recently evaluated various scenarios and strategies regarding the formulation of a chapter 11 plan for the Debtors.  Weil Second Interim Application, ¶ 2, at 2.

34.     The Debtors are current with the payment of quarterly fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) through the fourth quarter of 2009.

-8-

## IV.  LEGAL STANDARDS

**A.**    <u>**Reasonableness**</u>

Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

As set forth above, section 330 focuses on reasonableness and benefit to the estate of the professionals' services.  <u>In re Lederman Enter., Inc.</u>, 997 F.2d 1321, 1323 (10th Cir. 1993).

Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and made a beneficial contribution to the estate or its creditors.  <u>In re Engel</u>, 124 F.3d 567, 573 (3d Cir. 1997).  To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount

of time commensurate with the complexity, importance, and nature of the
problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board
certified or otherwise has demonstrated skill and experience in the
bankruptcy field; and

(F) whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases other
than cases under this title.

11 U.S.C. § 330(a)(3).

Bankruptcy Rule 2016 implements the standards set forth in Section 330

of the Bankruptcy Code:

An entity seeking interim or final compensation for services, or
reimbursement of necessary expenses, from the estate shall file with the
court an application setting forth a detailed statement of (1) the services
rendered, the time expended and expenses incurred and (2) the amounts
requested.

Fed. R. Bankr. P. 2016(a).

Each applicant bears the burden of proof for its claim for compensation.  Howard &

Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2

(S.D.N.Y., Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210

B.R. 19, 24 (Bankr. 2d Cir. 1997); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr.

S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y.

1997).  To satisfy its burden under Bankruptcy Rule 2016, an applicant must justify its charges

with detailed, specific, itemized documentation.  In re Baker, 374 B.R. 489, 494 (Bankr.

E.D.N.Y. 2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). The

failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation

-10-

may result in the denial of the request for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365

(11th Cir. 1988).

      To ensure that fee determinations are "as fair as possible, the judiciary should retain

control of fees, given the sensitivities they generate and the need to promote public confidence in

the system."  In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).  Accordingly, the

Court has an independent burden to review fee applications "lest overreaching … professionals

drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors."

Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d

Cir. 1994)).  Further, the Bankruptcy Court has the authority to reduce fees or expenses when

they are disproportionate to the benefit to the estate, even if it already has approved the

professional's retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman

Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v.Sunbeam-Oster Co., Inc.,

50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts' denial of improperly documented

and inadequately detailed expenses).

**B.**      **Interim Compensation**

      Interim compensation to professionals, as reflected in section 331, finds its origins in the

equity powers of the bankruptcy court.  In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987).

Therefore, the bankruptcy court has broad discretion in the course of examining and awarding

interim fee applications.  Id.; see also In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D.

Ill. 1996) (interim fee awards are discretionary).

-11-

In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." *Id*. Because the pending Applications are interim in nature, the timing of any payments is also within the parameters of the Court's discretion. *Id*. Furthermore, the Court also has the discretion to defer ruling on any or all of the Applications, until the time for final applications is proper. In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation. *See* Bennett Funding, 213 B.R. at 244. At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award." Child World, 185 B.R. at 17. Bankruptcy Code section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation." *Id*. Thus, the statute "authorizes the award of interim compensation, but does not mandate it." In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); *see also* Barron, 73 B.R. at 814 (Congressional intent underlying section 331 "was only to give officers of the estate an *opportunity* to apply for reimbursement." Italics in orig.)

Historically, the solvency of a bankruptcy estate has also weighed heavily in the judiciary's exercise of discretion in fee matters. In particular, "where there are insufficient funds in the debtor's estate to pay interim allowances, these allowances may be deferred until a time when unencumbered funds become available for payment." First Hartford, 23 B.R. at 732 (due to lack of unencumbered assets, granting interim allowances, but deferring payment until confirmation of reorganization plan); Matter of Codesco, Inc., 15 B.R. 354, 356 (Bankr. S.D.N.Y. 1981) (payment deferred until unencumbered funds available for payment); In re

-12-

National Buy-Rite, Inc., 10 B.R. 380, 381 (Bankr. N.D. Ga. 1981) (where the amount of administrative claims exceeds the value of estate assets, professionals are not entitled to immediate payment of interim compensation).

Similarly, courts have denied interim compensation where professionals have "yet to produce any cognizable and tangible results." In re Hillsborough Holdings Corp., 125 B.R. 837, 840 (Bankr. M.D. Fla. 1991). Interim compensation has also been denied, and moratoriums on interim compensation imposed until, courts have been convinced the case is "moving towards a point of resolution." In re UNR Indus., Inc., 72 B.R. 796, 799 (Bankr. N.D. Ill. 1987); *see also* In re General Coffee Corp., 39 B.R. 7, 8 (Bankr. S.D. Fla. 1984) (denying all interim compensation on grounds that allowances would be premature pending the resolution of chapter 11 case).

**C.    Actual and Necessary Expenses**

Under section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (*quoting* In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation. Bennett Funding, 213 B.R. at 398. Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client." In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87 (Bankr. E.D.N.Y. 1998).

-13-

## V.  STATEMENT

### A.  General Statement Applicable to All Professionals

The United States Trustee respectfully requests a 10 percent deferral of payment, or

"holdback," of fees.[3]  The current circumstances of these cases – largely that confirmation of a

plan appears does not appear forthcoming in the immediate future, and that uncertainty still

prevails regarding the solvency of the bankruptcy estates – justify the deferrals of such

allowances.  As recently stated by the Debtors:

> The Debtors currently expect that (i) the Wind Down Facility and
> the proceeds they recover from their remaining assets will be
> sufficient to pay the administrative expenses of winding down their
> estates and administering a chapter 11 plan and (ii) the proceeds of
> such asset sales will not be sufficient to pay down the Wind Down
> Facility in full. Given the non-recourse nature of the Wind Down
> Facility, these two points together mean that **it is expected that the
> only assets that will be available for distribution (not including
> the DIP Lenders) are the New GM Equity Interests** and it is
> currently anticipated that all of the New GM Equity Interests will
> be available for distribution (not including the DIP Lenders).
> However, if the Wind Down Facility and the proceeds of the asset
> sales are insufficient to pay the administrative expenses of winding
> down the Debtors' estates and administering a chapter 11 plan, the
> Debtors will have to use the New GM Equity Interests to pay such
> expenses.

February Operating Report, Docket No. 5402, note 3, at 11 (bold in original).

As demonstrated by the economics and magnitude of these cases, by the $82.5 million of

the fees and expenses incurred during the First Fee Period (including AP Services), and by the

continuing proliferation of Retained Professionals, meaningful fee discipline and control is

---

[3]  The fees sought by Alan Chappell, however, should be allowed in full, and should not
be subject to a holdback.  Mr. Chappell, who performed the one-time function of Consumer
Privacy Ombudsman with respect to the sale to GMCo., is seeking a final allowance in the
relatively modest amount of $72,900.00.

critical here.  During the First Fee Period and thereafter, these reorganization cases were still

relatively young, as major constituencies such as the Asbestos Committee continued entering the

bankruptcy process.  The Asbestos Committee, for example, was appointed only recently, on

March 5, 2010.  Docket No. 5206.  During the First Fee Period, the financial solvency of the

estates was also in question, and that uncertainty is currently continuing.

As set forth above, 14 professionals have filed Applications for services performed during

the First Fee Period.  But several additional professionals were retained following the conclusion

of the First Fee Period on September 30, 2009, and more will follow.  For example, the

employment application of Plante & Moran PLLC, as accountants and consultants to the Debtors,

was approved on April 5, 2010.  Docket No. 5421.  More recently, on April 8, 2010, the Court

approved the retention of Caplin and Drysdale, Chartered as counsel to the Asbestos Committee,

and the Legal Representative's retention of Stutzman was approved by the Court in an order

entered on April 15, 2010.  *See* Docket No. 5506.  Furthermore, the Legal Representative and the

Committee have retained actuarial valuation consultants to assist them (Docket Nos. 5413 and

5480), and the Asbestos Committee is expected to follow suit.  The fees and services of these

professionals cannot be evaluated yet in terms of benefit to the estates.  Also unknown is the

impact on fees and expenses relating to the formulation of a plan that the newer retained

professionals will have in these cases.

The imposition of holdbacks in these cases is also warranted because no plan has been

filed, and the outcome of the confirmation process is unknown.  Even though the closing of the

sale to GMCo. has occurred, there are other significant determinative events that have yet to

occur.  Consequently, whether the Retained Professionals performed services during the First Fee

-15-

Period resulting in a benefit to the estates cannot be assessed at this time.

Whether a comprehensive plan can be negotiated and confirmed in these cases depends on many variables. Past efforts aside, the Debtors, along with their main constituents and their respective professionals, have some of the main matters of these cases ahead of them. Among other things, the Debtors' liquidating reorganization is predicated on future sales of several challenging properties. From the Debtors' sales and negotiations with the Government, the Creditors' Committee, the Asbestos Committee and the Legal Representative, disclosure statement and plan proposals are expected to follow.

In sum, the final outcome of these bankruptcy cases are an important factor in evaluating the results achieved by all applicants. Since those results still are unknown, and not close to being known, the imposition of a uniform interim percentage holdback is appropriate. Child World, 185 B.R. at 18 (holdbacks, while not mandated by statute, are commonly used by courts to moderate potentially excessive interim allowances and to offer an incentive for timely resolution of the case); *see also* In re Bank of New England Corp., 134 B.R. 450, 458-59 (Bankr D. Mass. 1991) (because of the difficulty in determining whether services were actual and necessary when reviewing interim applications, bankruptcy courts routinely require percentage reductions until the end of the case), *affirmed*, 142 B.R. 584 (D. Mass. 1992).

B.      **Statement Regarding the Individual Applications**

The United States Trustee has reviewed the Fee Examiner's First Advisory (Docket No. 5002), which sets forth minimum disclosure thresholds and certifications for the Applications (*id*., ¶¶ 15-16, at 5-6), the governing criteria for reimbursement of expenses (*id*., ¶ 17, at 7), and the grounds upon which the Fee Examiner has evaluated the reasonableness of the fees sought in

-16-

the Applications (*id*., ¶ 18, at 7-8). The First Advisory also sets forth guidance regarding the

service of monthly statements under the Interim Compensation Order (*id*., ¶ 21, at 9), and the

electronic transmission, service and filing of fee applications (and where applicable, quarterly

reports) (*id*., ¶ 22, at 9-10). The First Advisory also sets forth the procedures the Fee Examiner

has followed prior to the filing of his report and individual statements with respect to each

Application (*id*., ¶¶ 23-26).

The United States Trustee has also reviewed the Examiner's Second Advisory (Docket

No. 5463). The Second Advisory expands the First Advisory in narrative form, and collects the

relevant decisional law, plus the statutory and administrative requirements for his fee application

review and the Court's approval process. *See id*. Furthermore, the Second Advisory reflects the

Fee Examiner's general approach, and sets forth the context in which the Fee Examiner's review

takes place. *See id*.

At the request of the United States Trustee, the Retained Professionals have also

submitted the time records contained in the Applications to the United States Trustee in an

electronic format, to facilitate the fee review process. The Fee Examiner has also delivered to

the United States Trustee the individual draft Statements, which he also delivered to each of the

Retained Professionals for discussion purposes prior to their filing with the Court. Based on the

United States Trustee's review of the Applications, and of such draft Statements, the United

States Trustee generally concurs with the Fee Examiner's suggested fee and expense allowances

and disallowances.

-17-

## VI. CONCLUSION

**WHEREFORE,** the United States Trustee respectfully submits that the Court enter an

order (i) consistent with the Fee Examiner's recommendations, (ii) deferring payment of ten

percent of the resulting amounts sought, and (iii) granting such other relief as is just.

Dated: New York, New York
      April 22, 2010

                                      Respectfully submitted,
                                      DIANA G. ADAMS
                                      UNITED STATES TRUSTEE

*By:*    ***Andrew D. Velez-Rivera***
                                      Trial Attorney
                                      33 Whitehall Street, 21st Floor
                                      New York, New York 10004
                                      Tel. No. (212) 510-0500
                                      Fax No. (212) 668-2255