**HEARING DATE AND TIME: May 6, 2010, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: April 29, 2010 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## NOTICE OF HEARING ON APPLICATION OF
## DEBTORS FOR ENTRY OF ORDER PURSUANT TO
## 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014 AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF HAMILTON, RABINOVITZ &
## ASSOCIATES, INC. AS CONSULTANTS WITH RESPECT TO ASBESTOS CLAIMS

PLEASE TAKE NOTICE that upon the annexed Application, dated April 22,

2010 (the "**Application**"), of Motors Liquidation Company (f/k/a General Motors Corporation)

and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), for an order

pursuant to section 327(a) of title 11, United States Code, Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy

Rules for the Southern District of New York (the "**Local Rules**") authorizing the employment

and retention of Hamilton, Rabinovitz & Associates, Inc. as consultants to the Debtors with

respect to present and future asbestos claims asserted against the Debtors, all as more fully set

forth in the Application, a hearing will be held before the Honorable Robert E. Gerber, United

States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York 10004, on **May 6**, **2010 at**

**9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to this

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-242, and on (i) Weil,

Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York

10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.);

(ii) the Debtors, c/o Motors Liquidation Company, 500 Renaissance Center, Suite 1400, Detroit,

Michigan 48243 (Attn: Ted Stenger); (iii) General Motors, LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Amy Caton, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); and (xii) Hamilton, Rabinovitz & Associates, Inc., 26384 Carmel Rancho Lane, Suite 202, Carmel, California 93923 (Attn:  Francine F. Rabinovitz), so as to be received no later than **April 29, 2010**, **at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Application, the Debtors may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Application, which order may be entered with no further notice or opportunity to be heard

offered to any party.

Dated: New York, New York
       April 22, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
|   |   |   |
|---|---|---|
| | : | |
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

--------------------------------------------------------------x

**APPLICATION OF DEBTORS**
**FOR ENTRY OF AN ORDER PURSUANT**
**TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014 AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF HAMILTON, RABINOVITZ &**
**ASSOCIATES, INC. AS CONSULTANTS WITH RESPECT TO ASBESTOS CLAIMS**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

    Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), respectfully represent:

<u>**Relief Requested**</u>

    1.   By this Application (the "**Application**"), the Debtors seek entry of an

order pursuant to section 327(a) of title 11, United States Code (the "**Bankruptcy Code**"), Rule

2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1

of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**")

authorizing the employment and retention of Hamilton, Rabinovitz & Associates, Inc.

("**HR&A**") as their consultants with respect to present and future asbestos claims asserted or

which may be asserted against the Debtors.  HR&A will assist the Debtors in, *inter alia*,

analyzing and evaluating their potential liability with respect to present and future asbestos-

related personal injury claims and assist the Debtors in the chapter 11 process with respect to

such matters.  A proposed order granting the relief requested in this Application is annexed

hereto as **Exhibit "A**."

## Jurisdiction

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Asbestos-Related Claims

3.      As the Court is aware, although these cases clearly are not "asbestos

chapter 11 cases" and there is no current intention to seek an injunction under section 524(g) of

the Bankruptcy Code, MLC historically has incurred some liability with respect to asbestos-

related personal injury claims.  As of the date these cases were commenced, lawsuits asserting

approximately 29,000 asbestos-related personal injury claims were pending against MLC and, at

such time, MLC's consolidated books and records reflected a reserve in the amount of

approximately $660 million with respect to its liability for asbestos claims, both present and

future.

4.      As the Court is further aware, because of the nature of exposure to

asbestos-containing products, it can take several years before an asbestos-related disease may

manifest itself.  Accordingly, it is expected that, based on epidiemological studies, there are

certain people who have been exposed to asbestos-containing products, who have not yet

manifested a disease, but may do so in the future.  It is also expected that certain of these people may believe they have claims against the Debtors, but may not be in a position to assert them at this time.

5.      The Debtors intend to provide for treatment of present asbestos claims and "future" asbestos claims in their chapter 11 plan.  The Debtors currently contemplate that, although, as stated, the plan will not provide for an injunction under section 524(g), the plan will provide for a trust to be established for present and future asbestos-related personal injury claims, which trust will (i) receive its appropriate ratable share of the consideration to be distributed in respect of allowed prepetition unsecured claims, and (ii) have the sole responsibility to address and make distributions to holders of present and future asbestos-related claims, in full settlement, satisfaction, and discharge thereof, with no further liability or responsibility remaining with the Debtors or their successors.

6.      In connection with this process, the Debtors believe they require the services of an asbestos claims valuation expert to quantify the Debtors' potential liability for these claims and to assist the Debtors in interfacing and negotiating with the other constituencies in these cases with respect to the chapter 11 plan and the appropriate amount of the consideration to be distributed under the plan to the trust for the benefit of present and future asbestos claimants.

7.      The Debtors believe that HR&A is well-qualified and best suited for this role based on its expertise in this field.  Moreover, the Debtors believe that because of HR&A's prepetition experience with General Motors Corporation in evaluating its liability with respect to asbestos claims, it can render the necessary services to the Debtors in the most efficient, expeditious, and economical manner.

8.      Accordingly, as stated, pursuant to this Application, the Debtors seek authority to employ and retain HR&A as their consultant on the terms set forth in HR&A's engagement letter, a copy of which is annexed hereto as **Exhibit "B"** (the "**Engagement Letter**").

<u>**Scope of Services**</u>

9.      Pursuant to the Engagement Letter, it is intended that HR&A will render the following services on behalf of the Debtors:

(a)      estimate the number and value in total and by disease of present and future asbestos-related personal injury claims;

(b)      assist the Debtors in analyzing estimates prepared by other constituencies of present and future asbestos-related personal injury claims;

(c)      assist the Debtors in formulating and negotiating a chapter 11 plan as it relates to the treatment of present and future asbestos-related personal injury claims;

(d)      prepare and analyze expert reports and provide testimony, as necessary, in any hearings relating to the chapter 11 cases; and

(e)      provide such other services related to the foregoing as requested by the Debtors.

10.      The Debtors have determined to retain HR&A based on its extensive experience relating to asbestos-related claims.  As reflected in the Declaration of Francine Rabinovitz, president of HR&A, annexed hereto as **Exhibit "C"** (the "**Rabinovitz Declaration**"), HR&A has been involved in numerous bankruptcy cases as a consultant with respect to analyzing and estimating liabilities for asbestos and other types of mass tort claims. These cases include, among others, *Western Asbestos*, *J.T. Thorpe, Inc.*, *Celotex Corp.*, *A.H. Robins*, *Owens Corning*, and *W.R. Grace*.

11.      Moreover, prior to the commencement of these chapter 11 cases, HR&A was retained by General Motors Corporation in connection with analyzing and evaluating its

potential liability with respect to asbestos-related personal injury claims.  As a result, HR&A has

a great deal of familiarity with the data and other information relevant to the proposed retention

being sought pursuant to this Application and, as stated, should be in a position to render the

necessary services efficiently and expeditiously.

### Terms of Retention

12.     HR&A has indicated its willingness to serve as consultant for the Debtors

and to receive compensation and reimbursement in accordance with its standard billing practices,

the provisions of the Engagement Letter, and the provisions of sections 327(a), 330, and 331 of

the Bankruptcy Code, and as otherwise ordered by the Court.

13.     The Debtors believe that the hourly rates charged by HR&A are fair and

reasonable and, as set forth in the Engagement Letter, are as follows:

| POSITION | HOURLY RATE |
|---|---|
| Partners (Hamilton, Rabinovitz) | $650 |
| Managing Directors | 600 |
| Principals | 400 |
| Directors | 350 |
| Managers | 325 |
| Senior Analysts | 250 |
| Analysts | 200 |
| Research Associates | 100 |

HR&A's hourly billing rates are subject to periodic adjustments to reflect economic and other

conditions.

14.     HR&A also charges its clients for the expenses and disbursements

incurred in connection with its retention, including document processing, travel, long distance

phone calls, research and data gathering costs, duplicating charges, courier services, unusual

computer charges, postage, overtime meals, and transportation.

**HR&A's Disinterestedness**

15.      Based upon the Rabinovitz Declaration, to the best of the Debtors'
knowledge, except as stated in the Rabinovitz Declaration:  (i) HR&A is a "disinterested person"
within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b)
of the Bankruptcy Code; (ii) HR&A does not have any connection with the Debtors or any other
party in interest; and (iii) HR&A does not hold or represent any interest adverse to the Debtors in
the matters for which it is to be retained.

16.      To the extent that HR&A discovers any new relevant facts or relationships
bearing on the matters described herein during the period of its retention, it has indicated that it
will supplement the Rabinovitz Declaration.

**Notice**

17.      Notice of this Application has been provided to HR&A and parties in
interest in accordance with the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed.
R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated
March 19, 2010 [Docket No. 5308].  The Debtors submit that such notice is sufficient and no
other or further notice need be provided.

18.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order

(a) authorizing them to retain and employ HR&A on the terms set forth herein and in the

Engagement Letter; and (b) granting to the Debtors such other and further relief as is just and

proper.

Dated:  New York, New York
        April 22, 2010

                                    /s/ Stephen Karotkin
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

# EXHIBIT A

## Proposed Order

**HEARING DATE AND TIME: May 6, 2010, 2010 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: April 29, 2010 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | |
| Debtors. | **(Jointly Administered)** |

------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. § 327(a)**
**AND FED. R. BANKR. P. 2014 AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF HAMILTON, RABINOVITZ &**
**ASSOCIATES, INC. AS CONSULTANTS WITH RESPECT TO ASBESTOS CLAIMS**

Upon the Application, dated April 22, 2010 (the "**Application**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as

debtors in possession (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11, United

States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "**Local Rules**") for entry of an Order authorizing the Debtors to

employ and retain Hamilton, Rabinovitz & Associates, Inc. ("**HR&A**") as consultants with

respect to present and future asbestos claims, all as more fully described in the Application; and

due and proper notice of the Application having been provided, and it appearing that no other or

further notice need be given; and the Court having found and determined that the relief sought in

the Application is in the best interests of the Debtors, their estates, creditors, and all parties in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

interest and that the legal and factual bases set forth in the Application establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that pursuant to section 327(a) of the Bankruptcy Code, the Debtors

are authorized to employ and retain HR&A as their consultants with respect to present and future

asbestos claims; and it is further

ORDERED that HR&A shall file with the Court interim and final fee applications

in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code,

applicable Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern

District of New York, orders of the Court, guidelines established by the U.S. Trustee, and such

other procedures as may be fixed by order of this Court, including but not limited to the Court's

Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711]; and it is

further

ORDERED that all requests of HR&A for payment of indemnity pursuant to the

Engagement Letter shall be made by means of an application (interim or final as the case may

be) and shall be subject to review by the Court to ensure that payment of such indemnity

conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances

of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that in

no event shall HR&A be indemnified in the case of its own bad-faith, self-dealing, breach of

fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that to the extent this Order is inconsistent with the Engagement

Letter, this Order shall govern; and it is further

2

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: May ___, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Engagement Letter**

# HR&A

HAMILTON, RABINOVITZ & ASSOCIATES, INC.
*Policy, Financial & Management Consultants*

April 22, 2010

Motors Liquidation Company
500 Renaissance Center
Suite 1400
Detroit, Michigan  48243

Attention:  Ted Stenger

Dear Mr. Stenger:

The following constitutes the retention agreement between Motors Liquidation Company, as debtor in possession ("MLC"), and Hamilton, Rabinovitz & Associates, Inc. ("HR&A").

1.    Retention and Services.  MLC retains HR&A to, and HR&A agrees that it shall, provide the consulting services as set forth in Attachment A annexed hereto (the "Services").  It is further understood and accepted by HR&A that HR&A may be required to prepare to furnish and to furnish testimony in judicial proceedings and in depositions and otherwise assist MLC in judicial proceedings concerning the substance of the Services rendered pursuant to this Agreement.

2.    Access to Information.  MLC agrees to make available to HR&A on a timely basis such information as HR&A may reasonably require to perform the Services contemplated by this Agreement.

3.    Disclosure and Confidentiality.  HR&A agrees that all materials and information furnished by MLC under this Agreement shall be held in the strictest confidence, and shall not be furnished or disclosed by HR&A to any other persons or entities, unless pursuant to prior written permission of MLC, or by order of a competent tribunal.  In addition, MLC and HR&A agree that the conclusions expressed by HR&A in any form shall be used by MLC and its retained professionals only in connection with MLC's case currently pending under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and shall not be disclosed or used for any other purpose without HR&A's prior written consent, which consent shall not be unreasonably withheld.

US_ACTIVE:\43354717\04\43354717_4.DOC\72240.0639

4.      Fees and Expenses.  In consideration for the Services rendered by HR&A, MLC agrees to pay HR&A fees based on HR&A's customary hourly rates set forth in Attachment B, plus reasonable out of pocket expenses that are incurred by HR&A on MLC's behalf.  Out of pocket expenses shall include but not be limited to, all travel expenses, research related and or data gathering costs, duplicating charges, courier, unusual computer charges and long distance telephone calls.

5.      Methodology and Conclusions.  MLC and HR&A agree that conclusions expressed by HR&A shall be based on methods and techniques that HR&A considers appropriate under the circumstances and are consistent with commonly accepted professional standards.  MLC and HR&A further agree that payment of HR&A's fees shall in no way be contingent or dependent upon the content of, or conclusions contained in HR&A's analysis, or approval by MLC of such analysis.

6.      Bankruptcy Court Approval.  HR&A understands and agrees that this Agreement and HR&A's retention pursuant hereto are subject to the approval of the Bankruptcy Court.  HR&A further understands and agrees that payment of all compensation and reimbursement of expenses pursuant to this Agreement shall be subject to the terms of the order of the Bankruptcy Court approving HR&A's retention.

7.      Governing Law.  This Agreement shall be governed by the laws of the State of California and the parties hereby agree that exclusive jurisdiction to enforce any of the terms of this Agreement shall reside in the Bankruptcy Court.

8.      Termination.  This Agreement may be terminated by MLC or by HR&A at any time upon 30 days written notice and without liability or continuing obligation, provided that the obligations and liabilities of the parties under paragraph 4 as to payment of fees and expenses accrued to the date of termination shall survive the termination of this Agreement.

9.    <u>Indemnification</u>.  The terms and provisions of Attachment C hereto are hereby incorporated herein in full.

If the foregoing correctly states our agreement, please sign in the space below to acknowledge your acceptance of the terms herein and return the original of this letter to me.

Sincerely yours,

*Francine F. Rabinovitz* TB
_____
Hamilton, Rabinovitz & Associates, Inc.
By: Dr. Francine F. Rabinovitz

President

Accepted and Agreed to By:

MOTORS LIQUIDATION COMPANY

By: _____  DATED:  April __, 2010
        <u>Name</u>:
        <u>Title</u>:

9.    <u>Indemnification</u>.  The terms and provisions of Attachment C hereto are hereby incorporated herein in full.

If the foregoing correctly states our agreement, please sign in the space below to acknowledge your acceptance of the terms herein and return the original of this letter to me.

Sincerely yours,

_____
Hamilton, Rabinovitz & Associates, Inc.
By: Dr. Francine F. Rabinovitz

President

Accepted and Agreed to By:

MOTORS LIQUIDATION COMPANY

By:  <u>/s/ Ted Stenger</u>_____ DATED:  April 22, 2010
        <u>Name</u>:  Ted Stenger
        <u>Title</u>:    Executive Vice President

Attachment A
<u>Services</u>

- Estimate the number and value in total and by disease of present and future asbestos-related personal injury claims;

- assist MLC in analyzing estimates prepared by other constituencies of present and future asbestos-related personal injury claims;

- assist MLC in formulating and negotiating a chapter 11 plan as it relates to the treatment of present and future asbestos-related personal injury claims;

- prepare and analyze expert reports and provide testimony as necessary, in any hearings relating to MLC's chapter 11 case; and

- provide such other services related to the foregoing as requested by MLC.

Attachment B
# HR&A Hourly Rates

Hourly rates for the named individuals and other HR&A staff are as follows:

**Partners (Hamilton, Rabinovitz)**................................................................**$ 650**

**Managing Directors (Sims)** ...................................................................  **600**

**Principals** ............................................................................................  **400**

**Directors** .............................................................................................  **350**

**Managers** ...........................................................................................  **325**

**Senior Analysts** ...................................................................................  **250**

**Analysts** ..............................................................................................  **200**

**Research Associates** ...........................................................................  **100**

Attachment C
Indemnification

It is understood and agreed that in the event Hamilton, Rabinovitz & Associates, Inc. (HR&A), or any of its officers, employees, agents, or shareholders, if any (each of the foregoing, including HR&A, Inc., being an "Indemnified Person"), become involved in any capacity in any action, claim proceeding or investigation brought or threatened by or against any Indemnified Person, related to, arising out of, or in connection with our engagement, MLC will promptly reimburse each such Indemnified Person for its reasonable legal and other expenses incurred in connection therewith (including the cost of any investigation and preparation) as and when they are incurred. MLC will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of, or in connection with our engagement. Notwithstanding the foregoing, the preceding indemnification and reimbursement shall not be available with respect to any matters where it has been determined by a court of competent jurisdiction that HR&A or the Indemnified Person has acted in bad faith or has engaged in willful misconduct or gross negligence.

If for any reason the foregoing indemnification is held unenforceable (other than by reason of the last sentence of the immediately preceding paragraph), then MLC shall contribute to the loss, claim, damage, liability or expense in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by MLC, on the one hand, and, by HR&A, on the other hand, with respect to the engagement, or if such allocation is determined by a court of competent jurisdiction to be unavailable, in such proportion to reflect other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for amounts which, in the aggregate, are in excess of the amount of all fees actually received by HR&A from MLC in connection with the engagement. Relative benefits to MLC, on the one hand, and to HR&A, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by MLC and its security holders, as the case may be, pursuant to the transaction contemplated by the engagement bears to (ii) all fees actually received by HR&A in connection with the engagement.

MLC agrees that, without HR&A's prior written consent, which will not be unreasonably withheld, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action or proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action or proceeding or investigation. No indemnified Person seeking indemnification, reimbursement or contribution under this agreement will,

without MLC's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

MLC's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

## EXHIBIT C

**Declaration of Francine F. Rabinovitz**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                              :
**In re**                                      :          **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.*,      :          **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*  :
                                              :
                        **Debtors.**           :          **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

### DECLARATION OF FRANCINE F. RABINOVITZ IN SUPPORT OF THE APPLICATION OF DEBTORS PURSUANT TO SECTION 327 OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN HAMILTON, RABINOVITZ & ASSOCIATES, INC. AS CONSULTANTS WITH RESPECT TO ASBESTOS CLAIMS

I, Francine F. Rabinovitz, declare as follows:

1.       I am president of Hamilton, Rabinovitz & Associates, Inc. ("**HR&A**").  I submit this declaration in support of the application of the "**Debtors**"[1] to employ HR&A as consultants to the Debtors, filed contemporaneously herewith (the "**Application**").

2.       HR&A maintains an office in Carmel, California with an address of P.O. Box 222681, Carmel, CA  93922.

3.       HR&A is an expert consulting firm providing analytical services focused on the estimation of asbestos-related claims.  HR&A has assisted and advised numerous chapter 11 debtors and creditors in the estimation of the value and number of claims in asbestos and other "mass tort" reorganizations.  In particular, I, individually, and HR&A, as a firm, have provided services to court appointed professionals, debtors and creditors in numerous chapter 11 cases including, inter alia, *In re Western Asbestos,* cases jointly administered under Case No. 02-

---

[1] Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession.

46284-T pending in the United States Bankruptcy Court for the Northern District of California;

*In re J.T. Thorpe, Inc. et al,* jointly administered under Case No. LA-02-14216; *In re Celotex*

*Corp et al.*; *In Re A.H. Robins Co., Inc.*; *In re Silicone Gel Breast Implant Products Liability*

*Litigation; In re Owens Corning et al.*; and *In re W.R. Grace et al..*

    4.    HR&A will render professional services for the Debtors as needed,

including:

    (a)    estimate the number and value in total and by disease of present and future asbestos-related personal injury claims;

    (b)    assist the Debtors in analyzing estimates prepared by other constituencies of present and future asbestos-related personal injury claims;

    (c)    assist the Debtors in formulating and negotiating a chapter 11 plan as it relates to the treatment of present and future asbestos-related personal injury claims;

    (d)    prepare and analyze expert reports and provide testimony, as necessary, in any hearings relating to the chapter 11 cases;

    (e)    provide such other services related to the foregoing as requested by the Debtors.

**HR&A Is Disinterested**

    5.    HR&A is a "disinterested person," as defined in section 101(14) of the

title 11 of the United States Code (the "**Bankruptcy Code**") as modified by section 1107(b) of

the Bankruptcy Code.

    6.    I have caused a conflict check to be performed with respect to (a) the

Debtors, (b) the Debtors' affiliates and subsidiaries, and (c) the entities and persons listed on the

Master Retention Checklist provided by the Debtors.  Based upon that conflict check and after

due inquiry, to the best of my knowledge, information and belief, I have determined the members

and professionals of HR&A do not have or represent any interest materially adverse to the

interests of  the Debtors or their estates, and have no material connection to the Debtors except as

2

described in more detail below and in **Exhibit "A"** annexed hereto.

7.     HR&A and I have been retained in the past on behalf of a group of companies including General Motors Corporation to advise them on a confidential basis with respect to aspects of proposed asbestos related federal legislation.

8.     In addition, HR&A was retained by General Motors Corporation prior to the commencement of these cases to estimate its potential liability for pending and future asbestos-related personal injury claims.

9.     HR&A is providing or has provided services in or arising from the following chapter 11 cases, none of which is related to the Debtors, or the Debtors' chapter 11 cases:  *In re WR Grace, Inc.*, 01-1139 (JFK) (Bankr. D. Del. 2001) and *USG Corporation*, Case No. 01-2094 (JFK) (Bankr. D. Del. 2001) (consultants to the Official Committee of Asbestos Property Damage Claimants in each case); *In re Celotex Corp.*, Case No. 90-10016-8B1 (Bankr. M.D. Fla. 1990) (Expert for Futures Representative); *In re Fuller-Austin Insulation Company*, (No. 98-2028 (JJF) (Bankr. D. Del. 1998) (consultant to Fuller-Austin parent, DynCorp.); *In re North American Refractories Company*, Case No. 02-20198 (JFK) (Bankr. W.D. Pa. 2002) (valuation consultant to Honeywell); *In re Mid-Valley, Inc.*, Case No. 03-35592 (JFK) (Bankr. W.D. Pa. 2003) (consultant to the debtors in the valuation of asbestos claims against Dresser subsidiaries); *In re AC&S, Inc.*, Case No. 02-12687 (JFK) (Bankr. D. Del. 2002) (claims evaluation consultant to the Futures Representative); *In re Western Asbestos Company*, 02-46284 (LJT) (N.D. Ca. 2002) (expert for Futures Representative); *In re Pittsburgh Corning Corporation*, Case No. 00-22876 (JFK) (Bankr. W.D. Pa. 2003) (expert for shareholder PPG Industries, Inc.), *In re Johns-Manville Corporation*, Case No. 82-11656 (BRL) (Bankr. S.D.N.Y. 1982) (provided independent expert services to the Futures Representative in connection with the Manville Personal Injury Settlement Trust); *In re J.T. Thorpe, Inc. et al,* jointly administered under Case No. LA-02-14216 (expert consultant and witness for Proposed Futures Representative); *In re Quigley; In re Congoleum;* portions of *In re Federal Mogul; In re Owens*

3

*Corning* (provided independent expert services to the futures representative in connection with both the bankruptcy and in connection with the Owens Corning and Fibreboard Trusts)*; In re Lummus* (provided independent expert services to the futures representative in both the bankruptcy and in connection with the Lummus Personal Injury Settlement Trust)*; In re Asarco LLC; In re THAN (The Agriculture and Nutrition LLC),* Case No. 08-14692 (Bankr. S.D.N.Y) (provided independent expert services to the futures representative in connection with bankruptcy proceedings and the THAN Trust).

10.     To the best of my knowledge, members of HR&A have never testified on behalf of a current plaintiff, defendant or insurer in any litigation involving the Debtors. However, given the large number of parties in interest in all chapter 11 cases, there may have been parties in interest that have been indirectly assisted by HR&A.  While HR&A may have provided, or may in the future provide, services to parties in interest in these cases, none of those relationships or matters has or will have any connection with the Debtors' chapter 11 cases.

11.     HR&A is also providing or has provided asbestos estimation and valuation services for the following companies in the context of such companies' filings with the Securities Exchange Commission:  Ampco-Pittsburgh, Inc. Ashland, Inc.; Circor International, Crane Co. Halliburton Company; Honeywell International, Inc.; and Cabot Safety Corporation as well as in other confidential engagements.

12.     Additionally, HR&A and its principals are frequently involved in cases or with companies with which members of the Asbestos Committee and the Future Claimants Representative in these cases are representing the interests of asbestos personal injury claimants, and are similarly involved with the professionals retained by such entities and by the Unsecured Creditors' Committee.  Neither HR&A nor any of its principals are representing or acting on behalf of any such entities or retained professionals in these chapter 11 cases.

13.     HR&A will file supplemental affidavits regarding this retention if additional relevant information is obtained.

4

14.     Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe HR&A does not hold or represent an interest adverse to the Debtors' estates in the matters upon which HR&A is to be employed, and HR&A is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

### HR&A's Terms of Engagement

15.     HR&A's terms of employment are governed by an engagement letter, a true and correct copy of which is attached to the Debtors' Application.  The hourly rates to be charged by HR&A as set forth in such letter and which are subject to change from time to time, are as follows:

| POSITION | HOURLY RATE |
|---|---|
| Partners (Hamilton, Rabinovitz) | $650 |
| Managing Directors | 600 |
| Principals | 400 |
| Directors | 350 |
| Managers | 325 |
| Senior Analysts | 250 |
| Analysts | 200 |
| Research Associates | 100 |

16.     HR&A also charges its clients for the expenses and disbursements incurred in connection with its retention, including, document processing, travel, long distance phone calls, research and data gathering costs, duplicating charges, courier services, unusual computer charges, postage, overtime meals and transportation.

17.     No promises have been made to HR&A regarding compensation in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code and the Application for HR&A's employment.  HR&A has no agreement with any other entity to share any compensation received by HR&A in connection with these chapter 11 cases.

18.     I acknowledge that HR&A's compensation is subject to Court review and,

5

accordingly, HR&A intends to file fee applications as required by the Bankruptcy Code,
Bankruptcy Rules and all orders of this Court.

19.    I declare under penalty of perjury of the laws of the United States that the
foregoing is true and correct.

This declaration is executed at Carmel, California, this ___20th___ the day of April,
2010.

Francine F. Rabinovitz TB

FRANCINE F. RABINOVITZ

6

**EXHIBIT A**

| Matched Entity | Relationship to Debtors | Relationship to HR&A |
|---|---|---|
| PPG Industries | Affiliation of Board Member | PPG Industries is a client of HR&A in the Pittsburgh Corning Inc. asbestos related bankruptcy case where HR&A serves as its asbestos valuation expert. |
| Pfizer | Affiliation of Board Member | Pfizer is one party to the *In re Quigley* asbestos-related bankruptcy case, where HR&A is the expert for the Representative of Future Claimants. |
| Rand Corporation | Affiliation of Board Member | HR&A has been a consultant to the Rand Corporation with respect to the founding and early operation of the Institute for Civil Justice. |
| General Motors Corporation | Debtor | HR&A was the asbestos claims estimation expert for General Motors Corporation prior to the commencement of these chapter 11 cases. |
| DB Platinum Advisors | Largest 50 Bondholder | HR&A was an expert for Platinum Equity (here listed as DB Platinum Advisors) in *Rohn Industries, Inc. et. al. v. Platinum Equity LLC*. |
| Oak Hill Cr. Partners II, III, IV, and V Ltd. | Major Secured Lender – Term Loan Secured Lender | HR&A was a consultant to Oak Hill (here listed as Oak Hill Cr. Partners II, III, IV, and V LTD., so that it may be a different company) with respect to analyses of asbestos liability from publicly available materials. |
| Deloitte & Touche | Potential Retention Applicant | HR&A provides asbestos estimation services for reserving purposes for several companies for which Deloitte & Touche is the auditor. |
| PricewaterhouseCoopers | Potential Retention Applicant | HR&A provides asbestos estimation services for reserving purposes for Honeywell International Inc. for which PricewaterhouseCoopers is the auditor. |

| Matched Entity | Relationship to Debtors | Relationship to HR&A |
|---|---|---|
| Rothschild LLP | Professional Retained by Significant Creditor Group | HR&A is the expert for the Representative of Future Claimants with respect to the Owens Corning and Fibreboard Asbestos Trusts, for which Rothschild LLP is an advisor. |
| Morgan, Lewis & Bockius | Professional Retained by Significant Creditor Group | HR&A provides asbestos estimation services for reserving purposes for a company for which Morgan, Lewis & Bockius is national counsel. HR&A is also an expert for the plaintiffs in *Fernandez vs. Kelly Moore Inc.* in which Kelly Moore is represented by Morgan Lewis. |
| Chief Judge Stuart M. Bernstein | Judge for the United States Bankruptcy Court for the Southern District of New York | Dr. Francine F. Rabinovitz has testified before Chief Judge Stuart M. Bernstein in the *Quigley* litigation (noted above) in the United States Bankruptcy Court for the Southern District of New York. |
| Judge Burton R. Lifland | Judge for the United States Bankruptcy Court for the Southern District of New York | HR&A has for many years been the expert for the Representative of Future Claimants of the Manville Personal Injury Trust which is under the supervision of Judge Burton R. Lifland and Judge Jack B. Weinstein. |
| Claro Group, The | Professional Retained in These Chapter 11 Cases | HR&A has worked with the Claro Group where they are the insurance experts and HR&A is the asbestos estimation expert for companies in various reserving assignments and in the asbestos related bankruptcy of ASARCO Inc. Prior to the formation of the Claro Group after the dissolution of Arthur Anderson, HR&A had worked with individuals who later joined the Claro Group in marketing efforts. |
| FTI Consulting | Professional Retained in These Chapter 11 Cases | HR&A worked with FTI Consulting on an asbestos estimation assignment for one company with respect to asbestos related liabilities. |

| Matched Entity | Relationship to Debtors | Relationship to HR&A |
|---|---|---|
| Goldman Sachs | Major Secured Lender – Credit Revolver Secured Lender | HR&A worked with Goldman Sachs' representatives in the Dow Corning breast implant bankruptcy, on behalf of HR&A's client the Dow Chemical Co.  HR&A also worked with Goldman Sachs' representatives in the effort by major companies to seek formation of a national government-run asbestos trust, on behalf of the Dow Chemical Co. and also later on behalf of all members of the so-called "Asbestos Study Group" which also included General Motors Corporation and Pfizer, among others. |
| Kirkland & Ellis LLP | Professional Employed | HR&A was an expert for the Manville Personal Injury Trust in a case brought by it against the tobacco industry for "contribution" to payment of asbestos claims.  The tobacco industry was represented by Kirkland & Ellis LLP.  HR&A also worked with Kirkland & Ellis LLP in its representation of the Dow Corning Corp. in its breast implant bankruptcy.  The HR&A client in that case was the Dow Chemical Co. |
| KPMG | Potential Retention Applicant | HR&A worked with KPMG as expert for the Halliburton Co. in its SEC filing regarding asbestos related costs and later as an expert for Mid-Valley *et al.* in the Dresser bankruptcy. HR&A continues as a consultant to Halliburton with respect to the Silica Trust created in the Dresser bankruptcy. |