**Hearing Date and Time:  April 29, 2010 at 9:45 a.m. (Eastern Time)**
**Objection Date and Time:  April 5, 2010 at 4:00 p.m. (Eastern Time)**
**Reply Date and Time:  April 26, 2010 at 12:00 p.m. (Eastern Time)**

Robert B. Weiss
Joseph R. Sgroi
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Ave.
Detroit, Michigan 48226
Telephone: (313) 465-7570
Facsimile: (313) 465-7571

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                               :
**In Re**                                                      :       Chapter 11
                                                               :
**MOTORS LIQUIDATION COMPANY** (f/k/a                          :       Case No. 09-50026 (REG)
General Motors Corp.), et al.,                                 :       (Jointly Administered)
                                                               :
    Debtors.                                                   :       Hon. Robert E. Gerber
                                                               :
-----------------------------------------------------------x

**GENERAL MOTORS LLC'S REPLY TO OBJECTION OF KNOWLEDGE LEARNING
CORPORATION TO MOTION (I) FOR DECLARATORY RELIEF REGARDING
THE STATUS OF A CERTAIN SUBLEASE OR, IN THE ALTERNATIVE,
RELIEF FROM THE ASSUMPTION AND ASSIGNMENT OF A CERTAIN SUBLEASE
TO GM PURSUANT TO RULE 60(b) AND (II) TO RESCIND THE AGREEMENT TO
RESOLVE OBJECTION TO CURE NOTICE BETWEEN GM AND
<u>KNOWLEDGE LEARNING CORPORATION DATED AUGUST 14, 2009</u>**

## INTRODUCTION

1. General Motors LLC ("**GM**") filed its motion (the "**Motion**")[1] to clarify the status of two contracts between the Debtors and Knowledge Learning Corporation ("**KLC**"): the CAP Agreement and the Sublease.[2] The Motion asks the Court to determine that the Debtors assumed and assigned the CAP Agreement to GM. More importantly, the Motion asks the Court to determine that the Debtors **did not assume and assign the Sublease to GM**. GM's primary purpose in filing the Motion was to clear up any confusion regarding the status of the Sublease and to confirm that the Sublease was not assumed and assigned to GM.

2. On April 2, 2010, KLC filed its objection to the Motion (the "**Objection**").[3] KLC opposes the relief sought by GM on essentially two grounds: (1) that because the CAP Agreement could not be assumed and assigned to GM, the Sublease must have been assigned to GM; and (2) that GM has not met the standards for relief from an order under Rule 60. KLC's arguments are inconsistent with the Assumption and Assignment Procedures approved by this Court and with Second Circuit standards for Rule 60 relief. Therefore, for the reasons stated in the Motion and in this reply brief, GM respectfully requests that the Court enter an order granting GM the relief sought in the Motion.

---

[1] General Motors LLC's Motion (I) for Declaratory Relief Regarding the Status of a Certain Sublease or, in the Alternative, Relief from the Assumption and Assignment of a Certain Sublease to GM Pursuant to Rule 60(b) and (II) to Rescind the Agreement to Resolve Objection to Cure Notice Between GM and Knowledge Learning Corporation Dated August 14, 2009 [**Docket No. 4895**].

[2] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Motion.

[3] Objection of Knowledge Learning Corporation to General Motors LLC's Motion (I) for Declaratory Relief Regarding the Status of a Certain Sublease or, in the Alternative, Relief from the Assumption and Assignment of a Certain Sublease to GM Pursuant to Rule 60(b) and (II) to Rescind the Agreement to Resolve Objection to Cure Notice Between GM and Knowledge Learning Corporation Dated August 14, 2009 [**Docket No. 5405**].

# ARGUMENT

## I. KLC Cannot Establish That The Sublease Was Assigned to GM Under the Sale Procedures Order

3. The Assumption and Assignment Procedures approved by the Court were the exclusive mechanism for the Debtor to transfer executory contracts and unexpired leases to GM as part of the Sale. If these procedures were not satisfied with respect to the Sublease, the Debtors could not have assumed the Sublease and assigned it to GM.[4] GM's Motion conclusively establishes that the Debtors and GM did not satisfy Assumption and Assignment Procedures with respect to the Sublease. Therefore, the Sublease could not have been, and was not, assumed by the Debtors and assigned to GM. This is GM's principal argument in its Motion, and KLC has no answer for it.

4. Unable to present any evidence that the Sublease was assumed and assigned pursuant to the Court-approved Assumption and Assignment Procedures, KLC instead argues that the Sublease was assumed and assigned by implication: that if the Debtors assumed and assigned one contract with KLC to GM, and the Sublease was the only "executory contract or unexpired lease that existed during the relevant period," then Sublease must have been the agreement that the Debtors assumed and assigned to GM. Objection ¶ 48. This argument is logically invalid. Even if KLC's core premise is correct,[5] and the CAP Agreement could not be

---

[4] The only other alternative is the argument that the GM negotiator's actions constituted an implied assumption and assignment outside of the Court-approved procedures. KLC declines to go this far, perhaps because this Court has regularly repudiated the concept of implied assumption and assignment. *See, e.g., In re Enron Corp.*, 300 B.R. 201, (Bankr. S.D.N.Y. 2003) ("[A] debtor cannot assume a contract by implication."); *In re Tower Automotive, Inc.*, No. 05-10578, 2007 Bankr. LEXIS 2219, at *9 (Bankr. S.D.N.Y., June 29, 2007) ("It is not uncommon for litigants to assert that a debtor's postpetition acts constitute implied assumption of a contract. Courts have not favored this concept, as it would burden an estate with administrative claims that have never been brought to light and subjected to creditor scrutiny and judicial approval.").

[5] The CAP Agreement is an annual agreement that is renewed on a year-to-year basis. The 2010 version of the agreement was attached to GM's original Motion. The signature pages for the 2008 and 2009 versions of the

3

assumed and assigned to GM, only one conclusion logically follows: the Debtors did not assume the CAP Agreement and assign it to GM. Stated another way, whether the Debtors successfully assumed and assigned the CAP Agreement **has no bearing whatsoever** on whether the Debtors assumed and assigned the Sublease. Accordingly, even if the Court accepts KLC's argument that the CAP Agreement could not be assumed and assigned to GM, the Court should grant GM's request for a determination that the Sublease was not assumed by the Debtors and assigned to GM.

## II.    GM Did Not Intend to Designate the Sublease for Assumption and Assignment

5.    In the event that the Court determines that the Sublease was somehow assumed by the Debtors and assigned to GM, GM's Motion asks the Court for relief from such assumption and assignment under Rule 60(b) of the Federal Rules of Civil Procedure.

6.    KLC takes the position that GM is not entitled to Rule 60(b) relief because "no mistake occurred"—i.e., that GM intended to assume the Sublease all along. Objection ¶ 52. To accept KLC's argument, the Court would have to ignore or dismiss the following uncontroverted facts:

   a.    GM sent the assumption and assignment notice to the individual identified on the CAP Agreement and did not send a notice to the notice address identified on the Sublease;

   b.    The contract Schedule—the legally operative document under the Sale Procedures Order—lists and has always listed the CAP Agreement, not the Sublease, for assumption and assignment;

---

agreement are attached here as **Exhibit A**. Accordingly, KLC's contention that "the CAP Agreement was not even a legal contract on July 10, 2009" is manifestly false—a fact that KLC, as the other party to the agreement, would have readily discovered upon a reasonable investigation.

4

  c. As KLC correctly notes in paragraph 6 of its Objection, GM's original proposed cure amount for KLC's designated contracts was $0.00, which is the cure amount for the CAP Agreement;

  d. As of approximately August 2, 2009, the Contract Website—the primary mechanism for notifying contract counterparties of an assumption and assignment—described the contract as "CAP" and "One Model Year," which is a clear, unambiguous reference to the CAP Agreement;[6]

  e. The Contract Website never referenced the Sublease; and

  f. The Debtors later designated the Sublease for rejection, evidencing the fact that GM and the Debtors did not intend for the Sublease be assumed and assigned, did not believe that the Sublease was assumed and assigned and, moreover, intended that the Sublease would be rejected.

7. These facts not only establish that GM and the Debtors intended that the CAP Agreement—not the Sublease—would be assumed and assigned to GM, but also that the Debtors made a good faith effort, using the court-approved Assumption and Assignment Procedures, to inform KLC that the CAP Agreement—not the Sublease—was being assumed and assigned to GM.

---

[6] This fact controverts KLC's contention that "[t]here is no communication whatsoever in which the Debtors or GM indicated that the agreement to be assumed and assigned would be the CAP Agreement," and that GM's intention to assume and assign of the CAP Agreement was "undisclosed," "secret," and "private."

### III. Rule 60 Does Not Require A Showing Of Mutual Mistake

8. Alternatively, KLC contends that, if there was a mistake, it was a unilateral mistake by GM: "KLC certainly made no mistake because it intended that the [Sublease] was the operative agreement and, in fact, the communications by all parties are consistent with the [Sublease] being assumed and assigned." Objection ¶ 53. And unilateral mistakes, KLC argues, do not justify relief under Rule 60.[7]  *Id*. at ¶ 54.

9. But as outlined in GM's Motion, mutual mistake is not the standard for Rule 60 relief in the Second Circuit. Moreover, the cases cited by KLC on this point of law are not controlling authority and are easily distinguished. In *Brown*, a party moved to vacate a judgment entry incorporating a settlement agreement **and** to modify that settlement agreement under Rule 60(b). *See Brown v. County of Genesee*, 872 F.2d 169, 171 (6th Cir. 1988) ("[T]he appellee moved to vacate the judgment entry which incorporated the settlement agreement of July 9, 1985 and to modify the agreement . . . pursuant to Federal Rule of Civil Procedure 60(b)"). The Sixth Circuit held that "only the existence of fraud or mutual mistake can justify reopening an otherwise valid **settlement agreement**." *Id.* at 174 (emphasis added). Accordingly, *Brown* stands for the uncontroversial proposition—admitted and discussed at length in GM's Motion—that only mutual mistake justifies judicial rescission or modification of a contract. It does not support the proposition, as KLC argues, that mutual mistake is a prerequisite to GM's request for Rule 60(b) relief from any alleged assumption and assignment of the Sublease.

---

[7] In this regard, KLC appears to be conflating the standard for relief under Rule 60 and the standard for rescinding a contract on the basis of mistake under New York law. As discussed in this Reply, GM is requesting relief under Rule 60 **if** the Court determines that the Debtors did in fact assume and assign the Sublease to GM. Separately, GM is requesting that the Court rescind the Cure Agreement on the basis of mutual mistake. These are two different requests for relief that are subject to two different legal standards.

6

10. Similarly, in *Currier*, a party filed a Rule 60(b) motion requesting that the court set aside its order enforcing a memorandum of understanding and for the court to rescind that memorandum of understanding based on the moving party's unilateral mistake. *Federal Deposit Insurance Corp. v. Currier*, No. 98-2212, 1999 U.S. App. LEXIS 27916, at *4 (10th Cir., Oct. 28, 1999). The Tenth Circuit held that Rule 60(b) was reserved for "mistakes that occur in the judicial process" and was not applicable to mistakes made in the negotiation of a contract. *Id.* at *5. Here, however, GM is not using Rule 60(b) as a vehicle to attack a contract; rather, GM is seeking Rule 60 relief from any alleged assumption and assignment of the Sublease under the Sale Order. Separately, GM asks the Court to rescind the Cure Agreement on the basis of mutual mistake. These are two independent requests for relief—rescission of the Cure Agreement is not a prerequisite to relief from any assumption and assignment under Rule 60. While rescission of a contract requires a showing of mutual mistake, Rule 60 relief from an order does not, and KLC does not cite to a case that demonstrates otherwise.

11. But even if KLC were correct on this point of law—that mutual mistake is a prerequisite to Rule 60(b) relief—GM has satisfied that standard in this case. Mutual mistake occurs when "'[b]oth . . . parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent.'" *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2nd Cir. 1992) (applying New York law), *remanded to* No. 89-CV-1526E, 1994 U.S. Dist. LEXIS 6306 (W.D.N.Y., May 6, 1994).

12. Both elements are met in this case:

    a. <u>Element 1</u>. Both the GM negotiator and KLC shared the same erroneous belief: That GM had designated the Sublease for assumption and assignment, and that the agreement listed on the Contract Notices website

7

        was the Sublease. In fact, as discussed in the Motion, GM designated the CAP Agreement for assumption and assignment, and the agreement listed on the Contract Notices website was the CAP Agreement.

    b.    <u>Element 2</u>. The actions of the GM negotiator and KLC did not accomplish their mutual intent. Both the GM negotiator and KLC intended that Cure Agreement would obligate GM to effect an assumption and assignment of the Sublease. To that end, section 1 of Cure Agreement provided that the agreements listed on the Contract Website "shall be changed to reflect 'Assumed.'" The agreement listed on the Contract Website, however, was the CAP Agreement, not the Sublease. The Cure Agreement, therefore, only obligated GM to effect an assumption and assignment of the CAP Agreement, and did not accomplish the mutual intent of KLC and the GM negotiator. This is textbook mutual mistake.

13.    KLC also argues that GM is not entitled to Rule 60 relief because GM's entry into the Cure Agreement was a "counseled decision," referring to the involvement of GM's outside counsel and the GM Command Center in the negotiation of the Cure Agreement. Objection ¶ 61. While attorneys and other GM professionals were involved in the process of negotiating the Cure Agreement with KLC, these professionals were also involved (to a greater or lesser extent) in the negotiation and resolution of hundreds of other cure objections. As a consequence, their role in negotiating the Cure Agreement with KLC, and similar cure agreements with hundreds of other suppliers, was limited addressing legal issues associated with the assumption and assignment of the designated contracts. Moreover, as described in the Motion, the GM Command Center and the attorneys working with the Command Center relied on the individuals most familiar with the

8

contracts at issue—here, the lead GM negotiator—for direction on the identity of the contracts designated for assumption and assignment. Having no familiarity with the contracts between GM and KLC, neither the Command Center nor the attorneys working for the Command Center could have known that the GM negotiator was mistaken in her belief that the Sublease was designated for assumption.

### III.    GM Acted As Soon As Reasonably Possible Under The Circumstances

14.    KLC argues that GM failed to act as soon as reasonably possible because KLC "repeatedly" contacted GM regarding certain missing payments under the Sublease prior to GM bringing the Motion. Objection ¶ 56. In the first six months of the bankruptcy case, the Debtors and GM received thousands—perhaps hundreds of thousands—of similar requests for payment under contracts that were still under consideration for either assumption and assignment to GM or designation for rejection by the Debtors. Thus, even if KLC happened to contact an individual who was knowledgeable about the assumption and assignment process, a request for payment—without more—would not have alerted that individual that KLC mistakenly believed that the Sublease had been assumed and assigned to GM.

15.    As stated in the Motion, until November 2, 2009 (the date KLC filed its objection to the Debtors' motion to reject the Sublease), GM did not know of, and had no reason to know of, the dispute regarding the assignment of the Sublease. Further, given that the primary GM employee involved in the negotiation of the KLC cure objection had left GM on October 1, 2009, it took GM several weeks to determine the underlying reason for the dispute. GM acted as soon as reasonably possible under the circumstances in bringing the Motion.

**IV.    KLC Has Not Detrimentally Relied On GM's Mistake and Will Not Suffer Any Undue Hardship if the Assignment of the Sublease is Undone**

16.    KLC attempts to distinguish *In re UAL Corp.*, 411 F.3d 818 (7th Cir. 2005) on the basis that KLC detrimentally relied on GM's mistake by "continu[ing] to operate the Spring Hill Facility." Objection ¶ 59. Once again, KLC's position is wholly without merit, as KLC was independently obligated under the Bankruptcy Code to continue operating the day care facility unless and until the Sublease was rejected by the Debtors. Therefore, an order granting GM's request for relief from any implicit assumption and assignment of the Sublease does no "harm" to KLC, in that it puts KLC back in the **same position** that it would have been absent any alleged assumption and assignment of the Sublease: obligated to continue to perform under the Sublease until such time as the Debtors assume or reject the Sublease and potentially entitled to an administrative expense claim for amounts due to it under the Sublease post-petition through the effective date of rejection. Thus, KLC has not relied on any mistaken assignment of the Sublease to GM and certainly has not incurred any undue hardship as a result of such reliance.

**CONCLUSION**

**Accordingly**, GM respectfully requests that the Court enter an order, substantially in the form attached to the Motion, (i) determining that the Debtors did not assume and assign the Sublease to GM or, alternatively, granting GM relief from the assumption and assignment of the Sublease under Rule 60(b); (ii) ordering that the Cure Agreement is rescinded on the basis of mutual mistake of fact; and (iii) granting GM such other relief as the Court deems just and equitable.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for General Motors LLC

Dated: April 26, 2010

By:  /s/ Joseph R. Sgroi
Robert B. Weiss (Michigan Bar No. P28249)
Joseph R. Sgroi (Michigan Bar No. P68666)
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226
Telephone:  (313) 465-7570
Facsimile:  (313) 465-7571
Email:  jsgroi@honigman.com

DETROIT.4132494.7

# EXHIBIT A



**Fleet and Commercial**
IT ALL ADDS UP!

COMPETITIVE ASSISTANCE PROGRAM

## 2008 Model Year Competitive Assistance Program

| | | |
|---|---|---|
| **Knowledge Learning Corporation** | LOCATION: 650 NE Holladay St. Suite 1400 Portland, OR 97232 | APPROVED: April 25, 2008 VERSION: 4 |
| PROCESSING CODE: F6Q | CONTACT: David Lear | DEAL NUMBER: 2744 |
| FAN: 905196 | PHONE: 503-872-1651 | SUBMITTED BY: Paul Ryan |

**SIGNATURES**

This competitive assistance offer is valid for 15 days from the date approved and will expire on May 12, 2008 unless accepted in writing by Knowledge Learning Corporation and returned prior to the expiration date.

The foregoing competitive assistance offer has been accepted:

_[signature]_                      U.P. Corporate Procurement     5/5/08
Signature of Commercial Account Representative     Title                                Date

_[signature: Paul Ryan]_           Fleet Account Executive          April 24, 2008
Signature of GM FAE, Paul J. Ryan     Title                            Date

> PLEASE RETURN TO PAUL J. RYAN, YOUR FLEET ACCOUNT EXECUTIVE



**Fleet and Commercial**
IT ALL ADDS UP!

COMPETITIVE ASSISTANCE PROGRAM

# 2009 Model Year Competitive Assistance Program

| | | |
|---|---|---|
| **Knowledge Learning Corporation** | **LOCATION:** 650 NE Holladay St Suite 1400 Portland, OR 97232 | **APPROVED:** August 21, 2008 **VERSION:** 2 |
| **PROCESSING CODE:** F6Q | **CONTACT:** David Lear | **DEAL NUMBER:** 2744 |
| **FAN:** 905196 | **PHONE:** 503-872-1551 | **SUBMITTED BY:** Paul Ryan |

- It is mandatory that the Processing Code and FAN appear on every order request placed in the GM Vehicle Order Management System (VOMS).
- The FAN is required on all delivery reporting entries via the GM Customer Delivery Reporting (CDR) system.

## GENERAL PROVISIONS

**Agreement**
This Agreement (i) contains the entire understanding of the Parties relating to the subjects hereto, (ii) supersedes all prior statements, representations, and agreements, and (iii) cannot be amended except by written instruments signed by all parties. The Parties represent and agree that, in entering into this Agreement, they have not relied upon any oral or written agreements, representations, statements, or promises, express or implied, not specifically set forth in this Agreement. The Parties expressly waive application of any law, statute, or judicial decision allowing oral modifications, amendments, or additions to this Agreement notwithstanding this express written provision requiring a writing signed by the Parties.

**Choice of Law**
This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan as if entirely performed therein, without regard to the conflicts of law and principles thereof.

## SIGNATURES

This competitive assistance offer is valid for 60 days from the date approved and will expire on October 20, 2008 unless accepted in writing by Knowledge Learning Corporation and returned prior to the expiration date.

The foregoing competitive assistance offer has been accepted:

| | | |
|---|---|---|
| _[signature]_ | V.P. Corporate Procurement | 8/25/08 |
| Signature of Commercial Account Representative | Title | Date |
| _[signature: Paul Ryan]_ | Fleet Account Executive | August 21, 2008 |
| Signature of GM FAE, Paul J. Ryan | Title | Date |

**PLEASE RETURN TO PAUL J. RYAN, YOUR FLEET ACCOUNT EXECUTIVE**