**HEARING DATE AND TIME: April 29, 2010 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                      :
In re                                 :        Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :        09-50026 (REG)
        f/k/a General Motors Corp., et al. :
                                      :
                Debtors.              :        (Jointly Administered)
                                      :
------------------------------------------------------------x
```

**RESPONSE OF WEIL, GOTSHAL & MANGES LLP**
**TO FEE EXAMINER'S REPORT AND STATEMENT**
**OF LIMITED OBJECTION TO THE FIRST INTERIM**
**FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("**WG&M**" or "**Weil**"), attorneys for Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in

possession (collectively, the "**Debtors**"), hereby responds to the Fee Examiner's Report and

Statement of Limited Objection to the First Interim Fee Application of Weil, Gotshal & Manges

LLP, dated April 22, 2010 [Docket Nos. 5563, 5564] (the "**Report and Objection**").

## Preliminary Statement

1.     As plainly recognized by the Fee Examiner in his Report and Objection, the tasks confronted by WG&M during the period covered by its First Fee Application (defined below) (the "**Fee Period**") were "Herculean" and the "attorneys and staff at Weil worked hard when required but did not unnecessarily or inappropriately record time."  (Report and Objection at 2.)  As the Fee Examiner further recognized:  "Quite simply [WG&M] billed significant fees during the fee period because *extraordinary circumstances* required it to do so."  (Report and Objection at 3 (emphasis added).)

2.     Indeed, no one can legitimately dispute the enormity of the tasks and complex issues addressed and, more importantly, what was accomplished at the inception of these chapter 11 cases under unprecedented time constraints.  Most importantly, no one can question the value preserved and enhanced, and the benefit to the entire United States economy resulting from what was accomplished during the Fee Period.  As the Court expressed in its decision approving the sale of the Debtors' assets (the "**363 Transaction**") under section 363 of the Bankruptcy Code:

> As nobody can seriously dispute, the only alternative to an immediate sale is liquidation – a *disastrous* result for GM's creditors, its employees, the suppliers who depend on GM for their own existence, and the communities in which GM operates.
>
> \*   \*   \*
>
> The U.S. Government's fear – a fear this Court shares, if GM cannot be saved as a going concern – was of a systemic failure throughout the domestic automotive industry and the significant harm to the overall U.S. economy that would result from the loss of hundreds of thousands of jobs and the sequential shutdown of hundreds of ancillary businesses if GM had to cease operations.

*In re Gen. Motors Corp.*, 407 B.R. 463, 474, 477 (Bankr. S.D.N.Y. 2009) (emphasis added).

3.      It is in the context of these "Herculean" efforts and "extraordinary circumstances" that the Fee Examiner gratuitously suggests that a discount of nearly $900,000 to WG&M's fees "would be appropriate."

## The Fee Examiner's Report and Objection

4.      As the Report and Objection notes, WG&M has addressed most of the issues raised by the Fee Examiner in connection with his review of WG&M's First Fee Application.[1]  As the Fee Examiner states, only "[t]wo components – fees for summer associates/law clerks and a recommended discount – account for 87 percent" of the adjustments the Fee Examiner still seeks, with the Fee Examiner's "recommended discount" accounting for nearly 70 percent of this amount.

5.      The following addresses the items set forth in the Response and Objection that remain outstanding.

A.      <u>Prepetition Retainer</u>:  The Fee Examiner has suggested that the compensation remaining to be paid with respect to WG&M's First Fee Application be paid from the balance of the prepetition retainer WG&M received and is still holding.  WG&M has no objection to applying the retainer to such amount.

B.      <u>Billable Rates</u>:  As noted above, despite recognizing the extraordinary services rendered by WG&M under virtually unprecedented time constraints, the Fee Examiner nevertheless suggests that WG&M should discount its fees by 5% in the amount of $880,146.41.  WG&M submits that any such discount is neither appropriate nor warranted.

---

[1] First Application of Weil, Gotshal & Manges LLP, as Attorneys for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from June 1, 2009 Through September 30, 2009 [Docket No. 4803] (the "**First Fee Application**").

No one disputes that the fees incurred were reasonable and were rendered under virtually

unparalleled circumstances and time constraints.  The Bankruptcy Code does not contemplate

that retained professionals discount their rates, and the Fee Examiner has not presented any facts

whatsoever that would justify a discount.  The results achieved, value preserved, and benefits to

the U.S. economy arising directly from the services rendered by WG&M lead to the inescapable

conclusion that a discount is not only unwarranted, but also totally unjustifiable.

        C.      <u>Non-Working Travel Time</u>:  Due to an inadvertent error, these

entries were not billed to the project code for non-working travel in WG&M's billing system.

WG&M will reduce the amount of such charges to $13,761.25.

        D.      <u>Long Billing Days</u>:  The Response and Objection seeks to disallow

a portion of the fees charged by two WG&M attorneys with respect to services rendered in

closing the 363 Transaction.  The Fee Examiner does not "dispute that these attorneys worked

exceptionally long hours and made valuable contributions," (*Id.* at 16), but nevertheless seeks an

arbitrary 10% discount.  The reduction sought by the Fee Examiner is inappropriate.  As WG&M

has explained to the Fee Examiner, these two attorneys played a critical role in the closing and

consummation of the 363 Transaction.  They spearheaded the closing, the negotiation, and the

consummation of all financing transactions in connection therewith, and myriad other tasks.

They literally worked around the clock and were instrumental in the closing of one of the most

complex transactions in recent history within an incredibly short time frame.  As the Court is

well aware, the key to maintaining and enhancing value and minimizing disruption and

dislocation to the U.S. economy was an expeditious sale to extricate the General Motors business

enterprise from chapter 11.  Without the services of these two WG&M attorneys, that goal would

not have been achieved.  With all due respect to the Fee Examiner, he is not in a position to

4

properly assess or test the limits of the personal endurance of these attorneys.  Indeed, in view of the results achieved under extraordinary time constraints, the amounts charged by these two attorneys, particularly at their rates, were eminently reasonable.

   E. <u>Summer Associates and Law Clerks</u>:  WG&M has reviewed and is familiar with the Court's position with respect to billings by summer associates as set forth in *In re Chemtura Corp.*, Ch. 11 Case No. 09-11233 (First Interim Fee Application Hr'g Tr. at 37-38) (Bankr. S.D.N.Y. Sept. 29, 2009).  WG&M believes that the summer associates provided valuable services to the Debtors during the Fee Period at rates less than those charged by first year associates.  If the Court, nevertheless, does not view such charges as appropriate, WG&M certainly will deduct them.  Law clerks, however are not summer associates.  They generally consist of attorneys, most of whom are in WG&M's foreign offices, who have graduated from law school but have not yet been admitted to the bar.  WG&M believes that the services rendered by these individuals were beneficial to the estates and should be compensable.[2]

   F. <u>Vague Entries</u>:  The Fee Examiner seeks to disallow certain fees in the amount of $15,546.53 because of his belief that the time entries are "vague."  WG&M does not agree.  First, WG&M does not believe the time entries are vague.  Second, as explained to the Fee Examiner, many of these time entries relate to the early stages of these chapter 11 cases where the time pressure and number of matters that required immediate attention were extraordinary.  This included retention matters involving a very large number of professionals, responding to countless supplier, shareholder, and dealer inquiries, noticing, discovery in connection with the 363 Transaction, assumption and cure matters with respect to tens of

---

[2] One of the law clerks in WG&M's Warsaw office had not yet graduated from law school at the time she rendered services.  Amounts billed by such attorney aggregate $3,653.50.

thousands of executory contracts, and debtor in possession financing.  In this context, it is neither

practical nor efficient to record the details of every single contact or every single item addressed.

Indeed, the time involved to track and record that information during the period the 363

Transaction was being pursued and consummated would have been counterproductive and

detracted from the more critical goals that had to be achieved.  Under these circumstances, the

time entries are not vague and adequately describe the matters addressed.  The arbitrary 15%

discount sought by the Fee Examiner is not warranted.

> G.   <u>Airfare Expenses</u>:  The Fee Examiner has requested a 25%

reduction for airfare expenses in the amount of $2,686.87.  WG&M has reviewed the charges

and determined that certain first class travel charges were included inadvertently.  The

appropriate reduction to reflect coach class travel is not greater than $1,500.

> H.   <u>Hotel Expenses</u>:  It is not always easy to find convenient hotel

rooms in New York City for $400 or less per night.  WG&M believes the average nightly rate of

all lodging for which it seeks reimbursement is approximately $405.  This is not luxury lodging

but lodging convenient to WG&M's offices which provides its own economies and efficiencies.

Accordingly, WG&M believes its hotel expenses are within the guidelines and should be

reimbursed.

> I.   <u>Meal Expenses</u>:  In the Response and Objection, the Fee Examiner

seeks disallowance of $26,882.62 in meal expenses as being in excess of the $20 per meal limit.

Although many of these charges relate to business/conferences/meetings and are subject to a

reasonableness standard rather than a pure $20 cap, WG&M will make the requested adjustment.

> J.   <u>Local Transportation Expenses, Administrative Expenses and</u>

<u>Personal Expenses</u>:  The Fee Examiner seeks to disallow on a wholesale basis local

transportation charges incurred after the closing of the 363 Transaction on July 10, 2009.  Local

transportation is not an element of WG&M's overhead.  Clients are charged for these expenses

as the need dictates, and the requested charges are consistent with WG&M's guidelines.  The

fact that the Fee Examiner may disagree with this policy or that another firm outside of New

York City has a different policy does not justify the disallowance requested.  The same is true for

what the Fee Examiner characterizes as Administrative Expenses in the amount of $2,869.96.

Additionally, WG&M does not believe the laundry/dry cleaning reimbursement is

inappropriate where attorneys from out of town WG&M offices were required to stay in New

York for 9 or 10 days so that the exigencies of these cases could be properly addressed and the

363 Transaction consummated.

K.    Miscellaneous Expenses:  Lastly, the Fee Examiner seeks to

disallow (i) hotel charges on two different occasions aggregating $44,464.14, incurred at the

request of the Office of the United States Trustee (the "**U.S. Trustee**") for holding the

organizational meeting of creditors for purposes of appointing a creditors' committee and for the

section 341 meeting, and (ii) an invoice for electrical services in the amount of $8,607.43

incurred by WG&M, at the request of General Motors Corporation, for setting up the CEO's

press conference which was held in WG&M's offices on the day the chapter 11 cases were

commenced.

As stated and as the Fee Examiner has been advised, the hotel invoices were

incurred at the request of the Office of the United States Trustee for the purpose of meetings

called by the U.S. Trustee.  The invoices furnished to the Fee Examiner reflect how the hotel

bills for these meeting rooms and the only items ordered, other than certain audio equipment,

were coffee and soft drinks.  WG&M did not monitor what attendees drank nor, despite what the

Fee Examiner may think, does WG&M believe that would be an appropriate or efficient use of its time.

        With respect to the electrical bill, the Fee Examiner has requested that WG&M investigate and obtain an itemization of "labor hours or itemized material charges." (Response and Objectio at 27.) WG&M also does not believe this would be a productive use of its time or of any practical value. The charge was legitimately incurred at the request of General Motors Corporation in connection with what may have been the most important press conference in the company's history. Under these circumstances, it is appropriately reimburseable.

### The U.S. Trustee's Response

      6.     The response filed by the U.S. Trustee essentially is limited to one point – the Court should continue to impose a 10% holdback. WG&M objects and submits that this is neither necessary nor appropriate. As stated, the services rendered by WG&M were extremely beneficial and value enhancing. The Bankruptcy Code does not contemplate that retained professionals finance chapter 11 cases and there is no evidence or facts which suggest that these estates are even remotely in danger of administrative insolvency.

WHEREFORE WG&M respectfully requests that the compensation and reimbursement requested in its First Fee Application be allowed, subject to the adjustments WG&M has agreed to, and that it be granted such other and further relief as is just.

Dated: New York, New York
April 26, 2010

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession