Hearing Date and Time: April 29, 2010 at 9:45 a.m. (Eastern Time)
Reply Deadline: April 27, 2010 (extended by agreement of the parties)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
: 
In re:                                                      :  Chapter 11 Case No.:
                                                            :
GENERAL MOTORS CORP., et al.,                               :  09-50026 (REG)
                                                            :
                              Debtors.                      :  (Jointly Administered)
                                                            :
----------------------------------------------------------- X

### RESPONSE TO THE FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO THE FIRST INTERIM FEE APPLICATION OF FTI CONSULTING, INC.

TO:    THE HONORABLE ROBERT E. GERBER,
       UNITED STATES BANKRUPTCY JUDGE:

FTI Consulting, Inc. ("**FTI**"), financial advisors for the Official Committee of Unsecured Creditors of Motors Liquidation company (f/k/a General Motors Corporation), submits this response to the Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of FTI Consulting, Inc., dated April 22, 2010 (the "**Objection**").

### RESPONSE

1. **Compensation Structure.** FTI's compensation under the Retention Order has three parts:

    a.    From the date of appointment through the date of the closing of the 363 Sale (July 10, 2010), fees are to be paid on an hourly basis ("**Hourly Compensation**").

    b.    From the date of the 363 Sale forward, compensation is a fixed fee of $750,000 each month for three months, and $500,000 each month thereafter ("**Monthly Fixed Fee**"), until the effective date of the Plan of Reorganization or Liquidation.

KL2 2649062.1

c.  FTI will be entitled to a "Completion Fee" of $5 million upon the successful resolution of the Debtors' estates. The fee will be considered earned and payable in two parts: first, $2.5 million upon Confirmation of a Plan of Liquidation and, second, $2.5 million upon receipt by the unsecured creditors of not less than 70 percent of the equity and warrants received by the Debtors as proceeds from the 363 sale.

**Fee Examiner Objection to FTI Fees.**

2. The Fee Examiner is objecting to the amount of time FTI incurred on "Firm Retention and Compensation Matters" during the period in which FTI was billing on a "MONTHLY FIXED FEE" basis. While some time incurred for "Firm Retention and Compensation Matters" were charged during the "Hourly Fee Period", the vast majority of this time was spent during the monthly fixed fee period. In fact, the Fee Examiner objection states, "…. the majority of these hours are outside of the initial 40 day period (Hourly Fee Period)….". The Fee Examiner states that, "….the fact remains that a significant amount of time has been spent on the retention and timekeeping process.", and "A monthly fixed fee, for any professional, does not immunize the professional from review."

3. FTI fully agrees that a monthly fixed fee does not immunize any professional from review. However, that point is irrelevant to the Fee Examiner's objection. The Fee Examiner's rationale as stated in the objection is that "Billing for firm retention and compensation is reasonably five percent of total billings in the absence of extraordinary circumstances." The Fee Examiner has ignored the fact that when a firm is billing on a fixed fee basis, they are not "charging" the estate by the hour. **The Fee Examiner's specific objection contains no rational explanation for suggesting a disallowance to FTI's fees. In fact, the Fee Examiner appears to have ignored the reasonableness of FTI's fees charged to the estate given the many hours**

of work done for the Committee during the period across a broad range of issues. Under a fixed fee structure fees should not be arbitrarily disallowed on an hourly basis. In addition, FTI objects to the expense disallowance of $1,888.56 for reasons stated herein.

### The Fee Examiner's Objection is illogical and flawed.

4. The amount of time that FTI spent preparing its retention documents and bills during the fixed fee period is irrelevant. What is relevant is the amount of services that FTI provided during the period, which were vast. FTI spent over 4,300 hours of time during the fixed fee period. Of that time, almost 3,800 hours were recorded for services other than preparing retention documents and bills. The Fee Examiner calculated that during the entire fee period (June 3, 2009 to September 30, 2009) FTI incurred 736.4 hours preparing retention documents and bills. 528.5 of those hours were recorded during the fixed fee period. Then utilizing a limit of 5 percent of total hours, they calculated that FTI went over the 5 percent limit by 321 hours. The Fee Examiner then calculated the average hourly rate from the hourly fee period ($588.26) and computed a suggested reduction of $188,831.46. The following points clearly indicate why the Fee Examiner's objection is illogical and flawed:

a. FTI's average hourly rate charged during the hourly fee period was $588.26. If one was to take the total amount of FTI fees charged during the fixed fee period and divide it by the hours recorded during the same period, the average hourly rate would be $475.46. **That's more than $112 per hour lower than when FTI billed hourly.**

b. If FTI had not charged any hours for preparing its retention documents and bills during the fixed fee period, the average hourly rate computed would have been $541, **still lower than the average hourly rate FTI charged during the hourly fee period.**

c.  If FTI had not charged any time relating to retention and billing during the fixed fee period, it is reasonable to assume, given the stated basis of the objection as noted above, the Fee Examiner would not be objecting to FTI's fees during the period covered by the review. Therefore the specific number of hours that FTI spent preparing its' firm retention (which primarily encompassed an extensive and detailed connections check) and preparing its' monthly bills during this time period did not result in increased fees to the estate.

d.  Since FTI is under a fixed fee arrangement, if FTI had billed any additional hours during the period, FTI would not receive any more compensation. However, per the Fee Examiner's flawed and illogical calculation, for every additional hour FTI would have charged for preparing its retention documents and bills, the Fee Examiner would have proposed an additional $588.26 reduction using the flawed math outlined in the preamble above.

e.  Even if one was to agree with the Fee Examiner's flawed logic regarding a 5% cap on the time to be spent on billing and retention, it would make more sense to utilize the average cost per hour from the fixed fee period, to match with the hours being objected to, which was substantially lower. Additionally, the "heavy lifting" hours incurred preparing the firm retention documents and bills were performed by more junior FTI professionals (whose hourly rates are lower than the average hourly rates during the period), further reducing the average cost per hour.

**FTI's Fees are Reasonable and no amount should be deducted for time spent on Firm Retention and Compensation Matters.**

5. FTI's fees are reasonable based upon the services that FTI has provided to the Committee. Under a fixed fee structure, a professional firm should be able to spend as much

4

time as necessary to prepare retention documents, supplemental disclosures and monthly bills and fee documents, or indeed on any other issue that the client requests within the scope of its retention, without concern that the Fee Examiner will propose a reduction based upon such time.

**Fee Examiner Objection to FTI Expenses**.

6. The Fee Examiner has disallowed expenses totaling $3,141.07. Of this amount, FTI disagrees with the following disallowances totaling $1,888.56:

   a. In-house meals: Meals charged fall into one of two categories:

      i. Overtime meals, where staff are provided with a meal at the office when working late on client matters. FTI inadvertently failed to cap some of these meals at $20 per meal according to the UST Guidelines referenced by the Fee Examiner and agrees with the Fee Examiner's proposed adjustment to these meals.

      ii. Out of town meals, charged by client serving staff while travelling on client business. FTI has voluntarily capped these meals at $40 per head, which we believe to be a reasonable amount. The Fee Examiner appears to categorize these meals as Overtime meals and apply a cap at $20 per head. We dispute this characterization and as a result disagree with the proposed adjustments to these meals in the amount of $723.37

   b. Lodging: FTI incurred hotel charges in New York that in certain cases exceeded the $400 limit proposed by the Fee Examiner. Hotels in New York can be expensive depending on the time of the year and demand for a particular date, and it is not always easy to find rates (including taxes) below $400 per night. The average rate per night charged by FTI for stays in New York was approximately $373, which FTI

KL2 2649062 1

believes to be reasonable. Accordingly, FTI believes these lodging expenses should be reimbursed and disagrees with the proposed $1,165.19 reduction.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

KL2 2649062.1

## CONCLUSION

7. For all of the reasons set forth above, FTI respectfully requests that the compensation and reimbursement requested in its First Fee Application be allowed, and that it be granted such other and further relief as is just.

Dated: April 27, 2010
      New York, New York

                                       FTI Consulting, Inc.
                                       Financial Advisors to the Official Committee
                                       Of Unsecured Creditors

                                       By: _____

                                       Michael Eisenband
                                       Senior Managing Director
                                       Three Times Square
                                       New York, NY 10036
                                       (212) 499-3647

KL2 2649062.1